Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                           :
In re:                     :    Chapter 11
                           :
CIRCUIT CITY STORES, INC., :    Case No. 08- _____ (____)
et al.,                    :
                           :
            Debtors.       :    Jointly Administered
- - - - - - - - - - - - - - x
```

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 362(b), 363, 503(b), 506, 546(b), 1107(a)
AND 1108 AND BANKRUPTCY RULE 6003 AUTHORIZING PAYMENT OF
CERTAIN PREPETITION SHIPPING AND DELIVERY CHARGES**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors"),[1]

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,

*(cont'd)*

hereby move (the "Motion") for entry of an order,

pursuant to sections 105(a), 362(b)(3), 363(b), 503(b),

506, 546(b), 1107(a) and 1108 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 6003 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), authorizing the Debtors to pay certain

prepetition shipping and delivery charges and related

possessory liens.  In support of the Motion, the Debtors

rely upon and incorporate by reference the Declaration

of Bruce H. Besanko, Executive Vice President and Chief

Financial Officer of Circuit City Stores, Inc., in

Support of Chapter 11 Petitions and First Day Pleadings

(the "Besanko Declaration"), filed with the Court

concurrently herewith.  In further support of the Motion,

the Debtors respectfully represent:

---

*(cont'd from previous page)*
   Inc. (0875), Ventoux International, Inc. (1838), Circuit City
   Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
   Distribution Company of Virginia, Inc. (2821), Circuit City
   Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
   Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
   Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
   Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
   LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
   for Circuit City Stores West Coast, Inc. is 9250 Sheridan
   Boulevard, Westminster, Colorado 80031.  For all other Debtors,
   the address is 9950 Mayland Drive, Richmond, Virginia 23233.

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 362(b)(3), 363(b), 503(b), 506, 546(b), 1107(a) and 1108. Such relief is warranted pursuant to Bankruptcy Rule 6003.

**BACKGROUND**

3.    On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Besanko

Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

4.   The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.   No trustee or examiner has been appointed in these chapter 11 cases, and no committees have yet been appointed or designated.

## RELIEF REQUESTED

6.   By this Motion, the Debtors seek entry of an order authorizing, but not directing, them to pay any prepetition shipping and associated fees and expenses (the "Shipping Charges") to CTSI ("CTSI"), an auditing and payment company employed by the Debtors, and to any third party shippers, haulers, common carriers and other transporters (the "Carriers"), that the Debtors determine, in the exercise of their business judgment, are necessary or appropriate to obtain the release of goods in the possession of such parties and to satisfy the liens, if any, in respect of amounts owed to such

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Besanko Declaration.

parties.  The Debtors estimate that the prepetition

Shipping Charges owing as of the Petition Date are

collectively approximately $10 million.  Accordingly,

the Debtors request authorization to pay the prepetition

Shipping Charges in an amount not to exceed $10 million.

        7.    The Debtors propose that any payments

made pursuant to the Motion be subject to the following

conditions:

        (a)    The Debtors, in their sole discretion,
               shall determine which parties, if any,
               are entitled to payment under this Motion;
               and

        (b)    Prior to making a payment to a party
               under this Motion, the Debtors may, in
               their absolute discretion, settle all or
               some of the prepetition claims of such
               party for less than their face amount
               without further notice or hearing.

        8.    The Debtors also seek entry of an order

confirming that the Carriers will have administrative

expense priority claims under Bankruptcy Code section

503(b) for those undisputed obligations arising from

prepetition freight orders outstanding as of the

Petition Date relating to goods delivered, received and

accepted by the Debtors after the Petition Date,

including goods in transit on or after the Petition Date.

9.    The Debtors also request that all banks and other financial institutions on which checks to the Carriers or CTSI are drawn be authorized and directed to receive, process, honor and pay any and all such checks, whether presented prior to or after the Petition Date, upon each such bank receiving notice of such authorization.  In addition, the Debtors request authority to issue postpetition checks as necessary to replace any prepetition checks issued with respect to the Shipping Charges that may be dishonored.

### BASIS FOR RELIEF

10.    In the normal course of their businesses, the Debtors incur certain fees and charges to the Carriers to ship, transport, store and deliver goods through the Debtors' established distribution networks, as well as to CTSI for auditing and payment services in connection with the Shipping Charges.  At any given time, the Carriers are shipping goods to the Debtors' various distribution, repair and return facilities as well as shipping goods from those facilities to the Debtors' stores (the "Stores") and customers' homes.  The Debtors obtain certain of their merchandise from overseas and

use the Carriers to have those goods shipped to them.
In addition, the Debtors are required to pay customs
duties for goods delivered to them from overseas.

11.   The Debtors have contracts with all of
the Carriers for the transportation services provided.
The Carriers are generally not paid in advance but
rather invoice the Debtors for shipping services
previously rendered.  CTSI audits these invoices, and,
on a weekly basis, aggregates the invoices and sends the
Debtors a list with the total amount owed for the
shipping services for that week. The Debtors wire the
necessary funds to CTSI which, in turn, distributes
these amounts to the Carriers.

12.   The Debtors rely extensively on the
Carriers to distribute and transport merchandise from
the vendor to each of their eight (8) distribution
centers, located in Brandywine, MD, Bethlehem, PA,
Livermore, CA, Industry, CA, Ardmore, OK, Walnut, CA,
Marion, IL and Groveland, FL (collectively, the
"Distribution Centers") and from the Distribution

Centers to the Stores.[3]  The Stores also receive certain
merchandise – in particular, movies, music and video
games – through a distributor, Alliance Entertainment
Corporation ("AEC"), or directly from the vendor.  In
addition, the Debtors maintain seven (7) repair centers
(the "Repair Centers"), ten (10) home delivery locations
(the "Home Delivery Centers"), and six (6) product
return centers (the "Product Return Centers"), each of
which ships and receives merchandise.  The Debtors
further rely on the Carriers to return goods,
merchandise and products to the Debtors' vendors.  The
Debtors rely on CTSI to ensure that invoices received by
the Carriers are correct and that the Carriers timely
paid.

13.  The services provided by CTSI and the
Carriers are critical to the day-to-day operations of
the Debtors' retail business.  At any given time, the
Debtors are relying on the Carriers for the timely,
consistent delivery of goods from the vendors to the

---

[3]  The Debtors fill orders placed through their online store at six
(6) fulfillment centers located in six of the Distribution
Centers.

Distribution Centers, the Home Delivery Centers and the
Stores; from the Distribution Centers, AEC, and the
Repair Centers, to the Stores; from the Stores to the
Repair Centers; from the Home Delivery Centers to
customers' homes; and, finally, for goods returned to
the vendors, from the Stores, the Product Return Centers
and the Distribution Centers back to the vendors or AEC.

14.   As an example of the magnitude of the
Debtors' reliance on CTSI and the Carriers, during the
2008 fiscal year, the Debtors' Shipping Charges were
approximately $122 million.  The Debtors seek entry of
an order authorizing, but not directing, payment of any
outstanding prepetition shipping charges and customs
duties in an amount not to exceed $10 million in the
event that any such shipments are not ceased prior to
the Petition Date.

15.   Generally the cost of shipment of
merchandise from the vendor to the Distribution Centers
or other facilities is initially invoiced to CTSI, which
acts as middleman – providing the Debtors with an
aggregate request for the invoiced amounts, receiving
the funds from the Debtors, and distributing the funds

to the appropriate Carrier.  CTSI's fee for these
services is approximately $150,000 per year.  The
Debtors, however, pay the Carriers to transport goods
from overseas directly.  Because of the filing of these
chapter 11 cases, certain Carriers who hold goods for
delivery to or from the Debtors may refuse to release
such goods pending payment for their services, thereby
severely disrupting the Debtors' operations.  Similarly,
CTSI may refuse to continue providing auditing and
payment services to the Carriers on the Debtors' behalf
if it is not paid outstanding prepetition amounts.
Should CTSI refuse to perform such services, the
Debtors' distribution network will be severely disrupted
and the Debtors' may be unable to timely pay the
Carriers.  As a result, the Carriers may, again, refuse
to deliver goods in their possession, leading to
potentially devastating consequences for the Debtors'
business.

16.  As established in the Besanko Declaration,
the Debtors seek to pay the prepetition Shipping Charges
for several reasons.  First, if the prepetition Shipping
Charges are not paid, many of the Carriers may refuse to

perform additional services for the Debtors.  In such
event, the Debtors will incur additional expenses (such
as premium shipping costs) to replace the Carriers,
which amounts will likely exceed the amount of unpaid
prepetition Shipping Charges that the Debtors request
permission to pay hereunder.

17.  Second, because of the "hub and spoke"
method of distribution employed by the Debtors, as well
as space limitations, the Debtors' Distribution Centers
and the Stores hold only limited quantities of
merchandise at a given time.  As a result, the Debtors
must replenish their inventory frequently.
Approximately 60% of the Stores replenish their
merchandise twice per week.  The remainder receive
merchandise once per week.  Thus, if shipments from the
Distribution Centers to the stores are not made promptly
and regularly, the Debtors would risk having inadequate
in-store inventory, which would frustrate the
expectations of their customers, cause a loss of
customer goodwill, and potentially force a shutdown of
certain of the Stores.  Such an outcome could be
devastating to the Debtors' reorganization efforts.

18.   Finally, any delays in payment of Shipping Charges with respect to goods that are in the possession of the Carriers as of the Petition Date will likely result in the assertion, under applicable law, of possessory liens upon the Debtors' property in the possession of such parties.   For instance, California statutory law provides that "any carrier has a lien on freight in its possession for the total amount owed the carrier by the shipper for freightage, charges for services and advances due on freight previously delivered upon the promise of the shipper to pay freightage, charges and advances."   Cal. Civ. Code § 3051.5.   Thus, the Debtors will have no alternative but to pay the Shipping Charges in full in any event in order to effect the release of any liens securing payment of such charges.

## APPLICABLE AUTHORITY

**I.   PAYMENT OF THE SHIPPING CHARGES IS APPROPRIATE UNDER BANKRUPTCY CODE 363(b).**

19.   Bankruptcy Code section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the

ordinary course of business, property of the estate."
11 U.S.C. § 363(b)(1).  Under this section, a court may
authorize a debtor to pay certain prepetition
claims.  See In re Ionosphere Clubs, Inc., 98 B.R. 174,
175 (Bankr. S.D.N.Y. 1989); see, e.g., FV Steel and Wire
Co., Case No. 04-22421 (Bankr. E.D. Wis. Feb. 26, 2004);
In re UAL Corp., Case No. 02-48191 (Bankr. N.D. Ill. Dec.
11, 2002).  To do so, "the debtor must articulate some
business justification, other than mere appeasement of
major creditors."  Ionosphere Clubs, 98 B.R. at 175; In
re NVR L.P., 147 B.R. 126, 128 (Bankr. E.D. Va. 1992).

        20.  As discussed above, it is the Debtors'
business judgment that the failure to pay the Shipping
Charges could have a material adverse impact on the day-
to-day operations of their businesses and, thus, their
efforts to pursue restructuring alternatives.

## II.    PAYMENT OF THE SHIPPING CHARGES IS WARRANTED UNDER BANKRUPTCY CODE SECTIONS 362(b)(3) AND 546(b).

        21.  In addition, the Debtors believe that
their failure to pay the Shipping Charges may result in
the assertion of possessory liens by the respective
claimants under applicable state law with respect to any

goods in their possession (collectively, the "Liens").
Under Bankruptcy Code section 362(b)(3), the act of
perfecting such Liens, to the extent consistent with
Bankruptcy Code section 546(b)[4], is expressly excluded
from the automatic stay otherwise imposed by Bankruptcy
Code section 362(a).

22.   Moreover, to protect their asserted lien
rights, the Carriers may refuse to release goods in
their possession unless and until their prepetition
claims for services have been satisfied.  Therefore,
notwithstanding the automatic stay imposed by Bankruptcy
Code section 362, many of these parties: (a) may be
entitled to assert and perfect Liens against the
Debtors' property, which would entitle them to payment
ahead of other general unsecured creditors in any event;
and (b) may hold the property subject to the asserted
Liens pending payment, to the direct detriment of the
Debtors and their estates.

---

[4]   Under Bankruptcy Code section 546(b), a debtor's lien avoidance
      powers "are subject to any generally applicable law that . . .
      permits perfection of an interest in property to be effective
      against an entity that acquires rights in such property before
      the date of perfection."  11 U.S.C. § 546(b)(1)(A).

23.   Moreover, since the amount of Shipping Charges may be less than the value of any property securing those claims, any party holding lien rights arguably are fully secured creditors.  In general, under Bankruptcy Code section 506(b), fully secured creditors are entitled to receive: (a) payment in full of their prepetition claims under any confirmed plan or plans in these chapter 11 cases; and (b) the postpetition interest accruing on such claims to the extent that such claims are oversecured.  Consequently, payment of the Shipping Charges will: (a) give the Carriers no more than that to which they otherwise would be entitled under a plan; and (b) save the Debtors the interest costs that otherwise may accrue on the Shipping Charges during these chapter 11 cases.

### III. PAYMENT OF THE SHIPPING CHARGES IS AUTHORIZED UNDER BANKRUPTCY CODE SECTIONS 1107(a) AND 1108.

24.   The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value

justifies) equity owners." In re CoServ, L.L.C., 273
B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the
duties of a chapter 11 debtor in possession is the duty
"to protect and preserve the estate, including an
operating business's going-concern value."  Id.

     25.  Courts have noted that there are
instances in which a debtor in possession can fulfill
its fiduciary duty "only . . . by the preplan
satisfaction of a prepetition claim."  Id.  The CoServ
court specifically noted that preplan satisfaction of
prepetition claims would be a valid exercise of a
debtor's fiduciary duty when the payment "is the only
means to effect a substantial enhancement of the
estate," id. at 479, and also when the payment was to
"sole suppliers of a given product," id. at 498.  The
court provided a three-pronged test for determining
whether a preplan payment on account of a prepetition
claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor
> deal with the claimant.  Second, unless it
> deals with the claimant, the debtor risks the
> probability of harm, or, alternatively, loss
> of economic advantage to the estate or the
> debtor's going concern value, which is
> disproportionate to the amount of the

> claimant's prepetition claim.  Third, there is
> no practical or legal alternative by which the
> debtor can deal with the claimant other than
> by payment of the claim.

_Id._ at 498.

26.    Payment of the Shipping Charges meet each

element of the _CoServ_ court's standard.  First, as

described above, alternative providers would be

difficult, and in certain instances, nearly impossible

to find.  Any disruption in the Debtors' interdependent

transportation network would significantly disrupt the

Debtors' businesses.

27.    Second, the shutdown of the Debtors'

operations would cost the Debtors' estates millions of

dollars in lost revenues.  The harm and economic

disadvantage that would stem from the failure to pay any

of the Carriers is grossly disproportionate to the

amount of the prepetition claim that would have to be

paid.  This is particularly true given the approaching

the holiday season, an extremely high traffic time for

the Debtors.  For example, nearly one-third of all the

business that the Debtors do from their online store

occurs between Thanksgiving and Christmas.  Given the

accompanying high volume of transportation services required to support this high sales volume, it is especially important that the Debtors maintain positive relationships with their Carriers and CTSI and that the transportation network is not interrupted.

28.   Third, with respect to CTSI and each of the Carriers, the Debtors have examined other options short of paying the Shipping Charges and have determined that to avoid significant disruption of of the Debtor' business operations there exists no practical or legal alternative to payment of the Shipping Charges.

29.   Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108 by payment of the Shipping Charges.

## IV.   BANKRUPTCY CODE SECTION 105 AND THE DOCTRINE OF NECESSITY SUPPORT PAYMENT OF THE SHIPPING CHARGES.

30.   The Debtors' proposed payment of prepetition Shipping Charges should be authorized pursuant to Bankruptcy Code section 105 and under the "doctrine of necessity."

31.   Bankruptcy Code section 105 authorizes

this Court "to issue any order . . . necessary or

appropriate to carry out the provisions" of the

Bankruptcy Code.  11 U.S.C. § 105.  For the reasons set

forth herein, and in light of the critical need for the

Debtors to preserve the going concern value of their

businesses in order to effect a successful

reorganization through, among other things, continuing

the orderly day-to-day operation of the Debtors'

electronics retail business, payment of the Shipping

Charges as requested herein is proper in accordance with

Bankruptcy Code section 105.

32.   Payment of the Shipping Charges is

further supported by the doctrine of necessity.  The

doctrine of necessity is a well-settled doctrine that

permits a bankruptcy court to authorize payment of

certain prepetition claims prior to the completion of

the reorganization process where the payment of such

claims is necessary to the reorganization.  See In re

NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992)

("[T]he court can permit pre-plan payment of a pre-

petition obligation when essential to the continued

operation of the debtor[,]" and must show a "substantial necessity."); see also In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment).

33.    The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. See In re NVR L.P., 147 B.R. at 127 ("[T]he 'necessity of payment' rule is a narrow exception well-established in bankruptcy common law."); Just For Feet, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season).

34.    For the reasons discussed herein, it is evident that payment of the Shipping Charges is necessary to the Debtors' effective reorganization.  In particular, absent payment of the Shipping Charges, CTSI and the Carriers may refuse to continue doing business with the Debtors, thereby severely disrupting in the Debtors' interdependent transportation network, and in

turn, the Debtors' businesses.  The resulting shutdown

or reduction in the Debtors' operations would cost the

Debtors' estates millions of dollars in lost revenues.

Hence, this Court should exercise its equitable powers

to grant the relief requested in this Motion.

**V.    PAYMENT OF THE SHIPPING CHARGES IS WARRANTED UNDER
BANKRUPTCY RULE 6003.**

35.  Similarly, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary
> to avoid immediate and irreparable harm, the
> court shall not, within 20 days after the
> filing of the petition, grant relief regarding
> the following: . . . (b) a motion to use, sell,
> lease, or otherwise incur an obligation
> regarding property of the estate, including a
> motion to pay all or part of a claim that
> arose before the filing of the petition, but
> not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

36.  No court within the Fourth Circuit has

interpreted the "immediate and irreparable harm"

language in the context of Bankruptcy Rule 6003 in any

reported decision.[5]  However, the Fourth Circuit Court of

---

[5]   Although there is not direct authority concerning Bankruptcy Rule
6003 in the Fourth Circuit, at least one bankruptcy court,
applying Bankruptcy Rule 6003, concluded that first-day relief in
a similar context was warranted because such relief was necessary
to avoid irreparable harm.  See In re First NLC Fin. Servs., LLC,
382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule

*(cont'd)*

Appeals has interpreted the same language in the context of preliminary injunctions.  In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  See, e.g., Hughes Network Systems, Inc. v. Interdigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994).  Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  See, e.g., Scotts Co. v. United Industries Corp., 315 F.3d 264, 283, (4th Cir. 2002) (citing Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991)).

37.  If the Carriers halt the shipment of merchandise due to non-payment of the Shipping Charges, the Debtors will likely have inadequate in-store inventory, which would reduce sales, frustrate the expectations of the Debtors' customers, and cause a loss of customer goodwill.  Therefore, to the extent that the requirements of Bankruptcy Rule 6003 are applicable to

_____

*(cont'd from previous page)*
6003 permits entry of retention orders on an interim basis to avoid irreparable harm).

the relief requested in the Motion, the Debtors submit
that for the reasons already set forth herein, the
relief requested in this Motion is necessary to avoid
immediate and irreparable harm as defined by the Fourth
Circuit Court of Appeals.

38.   Accordingly, the Court should allow the
payment of the Shipping as requested herein.

39.   Courts in this Circuit and elsewhere have
authorized the payment of prepetition amounts due for
shipping costs in other chapter 11 cases.   See, e.g., In
re Movie Gallery, Inc., Case No. 07- 33849 (DOT)(Bankr.
E.D. Va. Oct. 17, 2007)(authorizing payment to certain
shippers, warehousemen and other lien claimants); In re
Boyds Collection, Ltd., Case No. 05-43793 (DWK)(Bankr. D.
Md. Oct. 24, 2005)(authorizing payment of prepetition
amounts owed to shippers); In re Tweeter Home
Entertainment Group, Inc., Case No. 07-10787 (PJW)(Bankr.
D. Del. Jun. 13, 2007); In re Radnor Holdings Corp.,
Case No. 06-10894 (PJW) (Bankr. D. Del. Aug. 23, 2006).

40.   Nothing in this Motion shall be construed
as a request for authority to assume any executory
contract under Bankruptcy Code section 365.

23

41.   Notwithstanding anything to the contrary herein, any payment to be made hereunder shall be subject to any cash collateral or postpetition financing documents or orders approved or entered in these cases.

## NOTICE

42.   Notice of this Motion will be given to: (i) the Office of the United States Trustee for the Eastern District of Virginia; (ii) counsel to the agent for Debtors' postpetition lenders; (iii) counsel to the agent for the Debtors' prepetition lenders; and (iv) the Debtors' top fifty (50) largest unsecured creditors on a consolidated basis.  The Debtors submit that, under the circumstances, no other or further notice of the Motion is required.

## WAIVER OF MEMORANDUM OF LAW

43.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

## NO PRIOR REQUEST

44.   No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 10, 2008
        Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and Debtors in Possession

Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. 08- _____ (___)
et al.,                    :
                           :
            Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363, 503(b), 506, 546, 1107(a) AND 1108 AND BANKRUPTCY RULE 6003 AUTHORIZING PAYMENT OF CERTAIN PREPETITION SHIPPING AND DELIVERY CHARGES**

Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, pursuant to Bankruptcy Code

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

sections 105, 363(b), 503(b), 506, 546, 1107(a) and 1108

and Bankruptcy Rule 6003, authorizing the Debtors to pay

certain prepetition shipping and delivery charges and

related possessory liens; and the Court having reviewed

the Motion and the Besanko Declaration; and the Court

having determined that the relief requested in the

Motion is in the best interests of the Debtors, their

estates, their creditors, and other parties in interest;

and it appearing that proper and adequate notice of the

Motion has been given and that no other or further

notice is necessary; and upon the record herein; and

after due deliberation thereon; and good and sufficient

cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.    The Motion is GRANTED.

2.    The Debtors are authorized, but not

directed, to make such payments to CTSI and the Carriers

as the Debtors determine, in the exercise of their

business judgment, are necessary or appropriate in order

to obtain release of goods held by the Carriers and the

Debtors may settle all or some of the prepetition claims

of the Carriers in order to obtain the release of goods.

2

Notwithstanding anything to the contrary in this Order, the prepetition Shipping Charges and customs duties to be paid pursuant to this Order shall not exceed $10 million in the aggregate (the "Shipping Cap").

3.    All payments on the Shipping Charges made under this Order shall be subject to the following conditions:

      (a)    The Debtors, in their sole discretion, shall determine which Carriers, if any, are entitled to payments; and

      (b)    Prior to making payment to a Carrier, the Debtors may, in their absolute discretion, settle all or some of the prepetition claims of the Contractor for less than their face amount without further notice or hearing.

4.    The Carriers shall have administrative expense claims with priority under Bankruptcy Code section 503(b) for those undisputed obligations arising from prepetition purchase orders outstanding as of the Petition Date and relating to goods delivered, received and accepted by the Debtors after the Petition Date, including goods in transit on or after the Petition Date, and the Debtors are authorized to pay such claims in the ordinary course of business.

5.    All applicable banks and other financial
institutions are hereby authorized and directed to
receive, process, honor and pay any and all checks
evidencing amounts paid by the Debtors pursuant to the
Motion, whether presented prior to or after the Petition
Date.

6.    The Debtors are authorized to issue
postpetition checks as necessary to replace any
prepetition checks that were issued with respect to the
Shipping Charges and may be dishonored and such reissued
checks shall reduce the Shipping Cap.

7.    The Court finds and determines that the
requirements of Bankruptcy Rule 6003 are satisfied and
that the relief requested is necessary to avoid
immediate and irreparable harm.

8.    Nothing herein shall be deemed an
assumption or an authorization to assume any contracts
or other agreements, including with any of the Carriers
or CTSI, pursuant to Bankruptcy Code section 365.

9.    The provisions contained herein shall not
be construed to limit, or in any way affect, the

4

Debtors' ability to contest any claims on any ground permitted by applicable law.

10.   Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

11.   The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

12.   This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Richmond, Virginia
        November 10, 2008


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

I hereby certify that notice of the Debtors' intent
to seek entry of the foregoing proposed order was
provided to the parties identified in the Motion and
copy of this proposed order was provided to the Office
of the United States Trustee for the Eastern District of
Virginia prior to submission to this Court.

/s/ Douglas M. Foley