Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                                :
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08- _____ (___)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a), 362(b), 506, 546(b), 1107(a), 1108 AND
1129 AND BANKRUPTCY RULE 6003 AUTHORIZING PAYMENT OF
CONTRACTORS IN SATISFACTION OF LIENS**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1]

_____

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
                                              (continued...)

hereby move for entry of an order, pursuant to sections
105(a), 362(b)(3), 506, 546(b), 1107(a), 1108 and 1129
of title 11 of the United States Code (the "Bankruptcy
Code") and Rule 6003 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), authorizing, but not
directing, the payment of contractors and service
providers in satisfaction of perfected or potential
mechanics', artisans', repairmen's, or other like liens
or interests in property (collectively, the "Liens") in
the ordinary course of business.  In support of the
Motion, the Debtors rely upon and incorporate by
reference the Declaration of Bruce H. Besanko, Executive
Vice President and Chief Financial Officer of Circuit
City Stores, Inc., in Support of Chapter 11 Petitions
and First Day Pleadings (the "Besanko Declaration"),

---

(…continued)
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky
Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

filed with the Court concurrently herewith.  In further support of the Motion, the Debtors respectfully represent:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 362(b)(3), 506, 546(b), 1107(a), 1108 and 1129.  Such relief is warranted pursuant to Bankruptcy Rule 6003.

### BACKGROUND

3.    On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Besanko

Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    No trustee or examiner has been appointed in these chapter 11 cases, and no committees have yet been appointed or designated.

## RELIEF REQUESTED

6.    By this Motion, the Debtors request that they be authorized, but not directed, to pay the prepetition claims of certain Contractors (as defined below), on a case-by-case basis and in their sole discretion for certain prepetition services in satisfaction of valid, perfected or potential Liens that may be asserted against the Debtors' property.  The Debtors estimate that the total amount of Contractor Claims (as defined below) is approximately $6.5 million. Accordingly, the Debtors are seeking entry of an order

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Besanko Declaration.

authorizing, but not directing, payment of the

Contractor Claims in an amount of up to $6.5 million.

7.   The Debtors propose that any payments

made pursuant to the Motion be subject to the following

conditions:

    (a)  The Debtors, in their sole discretion,
         shall determine which parties, if any,
         are entitled to payment under this Motion;
         and

    (b)  Prior to making a payment to a party
         under this Motion, the Debtors may, in
         their absolute discretion, settle all or
         some of the prepetition claims of such
         party for less than their face amount
         without further notice or hearing.

8.   The Debtors also request that all banks

and other financial institutions on which checks to the

Contractors are drawn be authorized and directed to

receive, process, honor and pay any and all such checks,

whether presented prior to or after the Petition Date,

upon each such bank receiving notice of such

authorization.  In addition, the Debtors request

authority to issue postpetition checks as necessary to

replace any prepetition checks issued with respect to

the Contractor Claims that may be dishonored.

**BASIS FOR RELIEF**

9.    The Debtors' stores, service centers,
distribution centers and other facilities require
significant ongoing construction, repair and maintenance
work.  In connection with these repair, remodeling, and
construction activities, the Debtors have employed
numerous third-party project managers, contractors and
maintenance companies (the "Contractors") who have
agreed, pursuant to contract or otherwise (the
"Agreements"), to render a services or supply materials
to the Debtors.

10.    Although the Debtors have generally made
timely payments to the Contractors, as of the Petition
Date, a substantial number of the Contractors may not
have been paid for certain prepetition services provided.
As a result, certain Contractors may refuse to perform
their ongoing obligations under the Agreements.  Absent
the Contractors' services, the physical condition of
certain of the Debtors' stores, service centers,
distribution centers and other facilities would
deteriorate and the Debtors would be unable to complete
their projects in a timely fashion.  The Contractors'

failure to provide ongoing services would adversely impact the Debtors' retail operations and hamper their reorganization efforts.

11.   Moreover, the Debtors' failure to pay the Contractors for prepetition services or materials may result in many of the Contractors having a right to assert Liens against the relevant store, service center, distribution center or other location of the Debtors, or the Debtors' goods, which Liens may be perfected notwithstanding the automatic stay established by Bankruptcy Code section 362.

12.   In many cases, failure to pay the Contractors in satisfaction of the Liens would result in defaults under the Debtors' leases or claims under the Debtors' outstanding indemnities.  Furthermore, the Contractors may also be able to assert Liens against the property of the Debtors' landlords at the various locations at which the Contractors provide services, thereby further jeopardizing the Debtors' relationships with their landlords.

13.   Therefore, to avoid undue delay and to facilitate the continued operation of the Debtors'

businesses, the maintenance of their stores,
distribution centers, repair centers, and other
facilities, and the completion of ongoing remodeling,
improvement and construction projects, the Debtors seek
entry of an order authorizing, but not directing, them
to pay and discharge, on a case-by-case basis and in
their sole discretion, the claims of all Contractors
that have given or could give rise to Liens against the
Debtors' goods, fixtures, stores, service centers,
distribution centers and/or other facilities, regardless
of whether such Contractors have already perfected their
interests (the "Contractor Claims"); provided, however,
that with respect to each Contractor Claim (i) the
Debtors shall not pay a Contractor Claim unless the
Contractor has perfected or, in the Debtors' judgment,
is capable of perfecting or may be capable of perfecting
in the future, one or more Liens in respect of such
claim; (ii) the payment of such claim shall be made with
a full reservation of rights regarding the extent,
validity, perfection or possible avoidance of any Liens;
and (iii) the Contractor agrees to promptly release any
Liens upon payment of such Contractor Claim.

## APPLICABLE AUTHORITY

**I.   PAYMENT OF THE CONTRACTOR CLAIMS IS APPROPRIATE UNDER BANKRUPTCY CODE SECTIONS 506 AND 1129.**

14.   Bankruptcy Code section 506 provides that an allowed claim of a creditor secured by a lien on property is a secured claim.  See 11 U.S.C. § 506.  As stated above, the Debtors' payment of any Contractor Claim would be limited to those cases in which the Debtors believe that such Contractors could assert and perfect a Lien, and, thus, hold a secured claim.

15.   If the Contractor Claims are secured claims, Bankruptcy Code section 1129(b)(2)(A) requires that they be satisfied through deferred cash payments totaling at least the allowed amount of each such claim, of a value as of the effective date of the plan equal to the value of the collateral securing the claim, with a continuation of the liens against the collateral; or if the collateral is to be sold, that the lien securing the claim attach to the proceeds of sale; or that the holder realize the indubitable equivalent of the claim.  See 11 U.S.C. § 1129(b)(2)(A).

16.    Thus, payment of the Contractor Claims in the ordinary course of business accelerates the time of payment of obligations that will have to be paid in any event, but avoids the interest and other costs incurred as a result of awaiting plan confirmation.[3]  Accordingly, the payment contemplated hereby will not diminish the assets of the Debtors' estates to the detriment of unsecured creditors and such payment is consistent with the priority of claims under the Bankruptcy Code.

**II.    PAYMENT OF THE CONTRACTOR CLAIMS IS APPROPRIATE UNDER BANKRUPTCY CODE SECTIONS 362(b)(3) AND 546(b).**

16.    Under Bankruptcy Code section 362(b)(3), the act of perfecting Liens, to the extent consistent with Bankruptcy Code section 546(b), is expressly excluded from the automatic stay.  Moreover, under Bankruptcy Code section 546(b), a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an

--------------------------------

[3]  The Debtors believe that the value of the property that secures the Contractor Claims exceeds the value of the Claims, and, thus, that the holders of Contractor Claims are entitled to interest. 11 U.S.C. § 506(b); see also United Sav. Assoc. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 372-73 (1988) (noting that interest may be paid to a secured creditor if such creditor maintains a "security cushion").

interest in property to be effective against an entity
that acquires rights in such property before the date of
perfection."   11 U.S.C. § 546(b)(1)(A).

17.   Therefore, payment of the Contractor
Claims pursuant to this Motion is appropriate, as the
Liens are capable of being perfected and asserted
against the Debtors' estates, notwithstanding the
automatic stay.

## III. PAYMENT OF THE CONTRACTOR CLAIMS IS APPROPRIATE UNDER SECTIONS 1107(a) AND 1108.

18.   The Debtors, operating their businesses
as debtors in possession under Bankruptcy Code sections
1107(a) and 1108, are fiduciaries "holding the
bankruptcy estate[s] and operating the business[es] for
the benefit of [their] creditors and (if the value
justifies) equity owners."   In re CoServ, L.L.C., 273
B.R. 487, 497 (Bankr. N.D. Tex. 2002).   Implicit in the
duties of a chapter 11 debtor in possession is the duty
"to protect and preserve the estate, including an
operating business's going-concern value."   Id.

19.   Courts have noted that there are
instances in which a debtor in possession can fulfill

its fiduciary duty "only . . . by the preplan
satisfaction of a prepetition claim." Id.  The CoServ
court specifically noted that preplan satisfaction of
prepetition claims would be a valid exercise of a
debtor's fiduciary duty when the payment "is the only
means to effect a substantial enhancement of the
estate," id. at 479, and also when the payment was to
"sole suppliers of a given product," id. at 498.  The
court provided a three-pronged test for determining
whether a preplan payment on account of a prepetition
claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor
> deal with the claimant.  Second, unless it
> deals with the claimant, the debtor risks the
> probability of harm, or, alternatively, loss
> of economic advantage to the estate or the
> debtor's going concern value, which is
> disproportionate to the amount of the
> claimant's prepetition claim.  Third, there is
> no practical or legal alternative by which the
> debtor can deal with the claimant other than
> by payment of the claim.

Id. at 498.

20.  Payment of the Contractor Claims meets
each element of the CoServ court's standard.  First, as
described above, the Contractors have asserted liens –
secured claims – against certain of the Debtors'

properties.   Failure to satisfy these Contractor Claims
would likely result in a Contractor refusing to continue
to do business with the Debtors, jeopardizing the
Debtors' ongoing construction, maintenance and repair
projects (the "Projects") and thereby severely
disrupting the Debtors operations.   Moreover,
satisfaction of the Contractor Claims is required by
most, if not all, of the Debtors' real property leases
and mortgages, and a failure to pay the Contractor
Claims would therefore jeopardize the Debtors' real
property interests.

21.   Second, the harm and economic
disadvantage that would stem from the failure to pay any
of the Contractor Claims is grossly disproportionate to
the amount of the prepetition claim that would have to
be paid.   Any disruption in the Debtors' Projects would
significantly disrupt the Debtors' businesses and would
cost the Debtors' estates millions of dollars in lost
revenues.

22.   Finally, with respect to each of the
Contractors, the Debtors have examined other options
short of paying the Contractor Claims and have

determined that to avoid significant disruption of the

Debtor' business operations there exists no practical or

legal alternative to payment of the Contractor Claims.

      23.    Therefore, the Debtors can only meet

their fiduciary duties as debtors in possession under

Bankruptcy Code sections 1107(a) and 1108 by payment of

the Contractor Claims.

## IV.    THE DOCTRINE OF NECESSITY AND BANKRUPTCY CODE SECTION 105 FURTHER SUPPORT PAYMENT OF THE CONTRACTOR CLAIMS.

      24.    Moreover, the Debtors' proposed payment

of the Contractor Claims should be authorized pursuant

to Bankruptcy Code section 105 and under the "doctrine

of necessity."

      25.    Bankruptcy Code section 105 authorizes

this Court "to issue any order . . . necessary or

appropriate to carry out the provisions" of the

Bankruptcy Code.   11 U.S.C. § 105.   For the reasons set

forth herein, and in light of the critical need for the

Debtors to preserve the going concern value of their

businesses in order to effect a successful

reorganization through, among other things, continuing

the orderly day-to-day operation of the Debtors'

electronics retail business, payment of the Contractor
Claims as requested herein is proper in accordance with
Bankruptcy Code section 105.

26.   Payment of the Contractor Claims is
further supported by the doctrine of necessity.  The
doctrine of necessity is a well-settled doctrine that
permits a bankruptcy court to authorize payment of
certain prepetition claims prior to the completion of
the reorganization process where the payment of such
claims is necessary to the reorganization.  See In re
NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992)
("[T]he court can permit pre-plan payment of a pre-
petition obligation when essential to the continued
operation of the debtor[,]" and must show a "substantial
necessity."); see also In re Just for Feet, Inc., 242
B.R. 821, 826 (D. Del. 1999) (stating that where the
debtor "cannot survive" absent payment of certain
prepetition claims, the doctrine of necessity should be
invoked to permit payment).

27.   The doctrine of necessity is a widely
accepted component of modern bankruptcy jurisprudence.
See In re NVR L.P., 147 B.R. at 127 ("[T]he 'necessity

of payment' rule is a narrow exception well-established

in bankruptcy common law."); <u>Just For Feet</u>, 242 B.R. at

826 (approving payment of key inventory suppliers'

prepetition claims when such suppliers could destroy

debtor's business by refusing to deliver new inventory

on eve of debtor's key sales season).

28.   For the reasons discussed herein, it is

evident that payment of the Contractor Claims is

necessary to the Debtors' effective reorganization.

Specifically, the Contractors provide services critical

to the preservation of the Debtors' estates and the

continued operation and maintenance of the Debtors'

retail stores, service and distribution centers and

other facilities.  Because certain of the Contractors

may not be party to enforceable agreements — and may be

unwilling to do business with the Debtors postpetition —

the Debtors request that the Court authorize the payment

of the Contractor Claims to ensure that these essential

services continue uninterrupted.

29.   Furthermore, the Debtors' creditors and

these estates clearly will be no worse off but rather

better off as a whole, if the Debtors are permitted to

honor the Contractor Claims in the ordinary course. The

amounts to be paid pursuant to this Motion are

reasonable compared with the importance and the

necessity of the Contractors and the losses that the

Debtors likely will suffer if these amounts are not paid.

The Debtors estimate that the total amount of all

outstanding Contractor Claims is approximately $6.5

million.  The value of the Debtors' enterprise — a value

that the Debtors are maintaining and maximizing for the

benefit of all creditors in furtherance of their

fiduciary duty to these estates — vastly exceeds this

amount.

30.  Hence, this Court should exercise its

equitable powers to grant the relief requested in this

Motion.

**V.    PAYMENT OF THE CONTRACTOR CLAIMS IS WARRANTED UNDER
BANKRUPTCY RULE 6003.**

31.  Similarly, Bankruptcy Rule 6003 provides:

Except to the extent that relief is necessary
to avoid immediate and irreparable harm, the
court shall not, within 20 days after the
filing of the petition, grant relief regarding
the following: . . . (b) a motion to use, sell,
lease, or otherwise incur an obligation
regarding property of the estate, including a
motion to pay all or part of a claim that

arose before the filing of the petition, but
not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

32. No court within the Fourth Circuit has
interpreted the "immediate and irreparable harm"
language in the context of Bankruptcy Rule 6003 in any
reported decision.[4] However, the Fourth Circuit Court of
Appeals has interpreted the same language in the context
of preliminary injunctions. In that context,
irreparable harm has been interpreted as a continuing
harm that cannot be adequately redressed by final relief
on the merits and for which money damages cannot provide
adequate compensation. See, e.g., Hughes Network
Systems, Inc. v. Interdigital Communications Corp., 17
F.3d 691, 694 (4th Cir. 1994). Further, the harm must
be shown to be actual and imminent, not speculative or
unsubstantiated. See, e.g., Scotts Co. v. United
Industries Corp., 315 F.3d 264, 283, (4th Cir. 2002)

---

[4] Although there is not direct authority concerning Bankruptcy Rule
6003 in the Fourth Circuit, at least one bankruptcy court,
applying Bankruptcy Rule 6003, concluded that first-day relief in
a similar context was warranted because such relief was necessary
to avoid irreparable harm. See In re First NLC Fin. Servs., LLC,
382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule
6003 permits entry of retention orders on an interim basis to
avoid irreparable harm).

(citing _Direx Israel, Ltd. v. Breakthrough Medical Corp._,
952 F.2d 802, 812 (4th Cir. 1991)).

33.    The Debtors' business and prospects of
reorganization will be seriously undermined if the
Contractors are not paid and if the Contractors, as a
consequence, assert Liens on the Debtors' property and
discontinue work at this critical juncture.  Indeed, the
vast majority of the Projects on which the Contractors
are working concern ongoing maintenance of the Debtors'
stores, service centers, distribution centers and other
facilities.  This maintenance is not optional, and if
the Contractors depart because they have not been paid,
the Debtors will be hard-pressed to find any other
comparably skilled persons willing to work for them.
The damage to the Debtors' prospects for rehabilitation,
and hence the costs to creditors as a whole, would be
immediate and irreparable.

34.    Accordingly, the Court should allow the
payment of the Contractor Claims as requested herein.

35.    Courts in this District and elsewhere
have granted the same or similar relief in other cases.
See, _e.g._, _In re Movie Gallery, Inc._, Case No. 07- 33849

(DOT)(Bankr. E.D. Va. Oct. 17, 2007)(authorizing payment to certain lien claimants); In re U.S. Airways, Inc., Case No. 04-12819 (SSM)(Bankr. E.D. Va. Sep. 14, 2004)(authorizing payment to certain prepetition maintenance providers, shippers and contractors); In re Tweeter Home Entm't Group, Inc., Case No. 07-10787 (PJW)(Bankr. D. Del. Jun. 13, 2007).

36.    Nothing in this Motion shall be construed as a request for authority to assume any executory contract under Bankruptcy Code section 365.

37.    The Debtors reserve their right to contest the amount of the Contractor Claims or the amount or existence of any of the Liens on any ground permitted by applicable law.  By this Motion, the Debtors do not waive any rights with respect to the Liens or the property securing the Liens.

38.    Notwithstanding anything to the contrary herein, any payment to be made hereunder shall be subject to any cash collateral or postpetition financing documents or orders approved or entered in these cases.

## NOTICE

39.  Notice of this Motion will be given to:
(i) the Office of the United States Trustee for the
Eastern District of Virginia; (ii) counsel to the agent
for Debtors' postpetition lenders; (iii) counsel to the
agent for the Debtors' prepetition lenders; and (iv) the
Debtors' top fifty (50) largest unsecured creditors on a
consolidated basis.  The Debtors submit that, under the
circumstances, no other or further notice of the Motion
is required.

## WAIVER OF MEMORANDUM OF LAW

18.  Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors request that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

## NO PRIOR REQUEST

19.  No previous request for the relief sought
herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 10, 2008
       Richmond, Virginia

                         SKADDEN, ARPS, SLATE, MEAGHER &
                         FLOM, LLP
                         Gregg M. Galardi, Esq.
                         Ian S. Fredericks, Esq.
                         P.O. Box 636
                         Wilmington, Delaware 19899-0636
                         (302) 651-3000

                              - and -

                         SKADDEN, ARPS, SLATE, MEAGHER &
                         FLOM, LLP
                         Chris L. Dickerson, Esq.
                         333 West Wacker Drive
                         Chicago, Illinois 60606
                         (312) 407-0700

                              - and -

                         MCGUIREWOODS LLP

                         /s/ Douglas M. Foley
                         Dion W. Hayes (VSB No. 34304)
                         Douglas M. Foley (VSB No. 34364)
                         One James Center
                         901 E. Cary Street
                         Richmond, Virginia 23219
                         (804) 775-1000

                         Proposed Counsel for Debtors and
                         Debtors in Possession

Gregg M. Galardi, Esq.               Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.              Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &      MCGUIREWOODS LLP
FLOM, LLP                            One James Center
One Rodney Square                    901 E. Cary Street
PO Box 636                           Richmond, Virginia 23219
Wilmington, Delaware 19899-0636      (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

        IN THE UNITED STATES BANKRUPTCY COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
                RICHMOND DIVISION

- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. 08- _____ (___)
et al.,                    :
                           :
            Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a),
362(b), 506, 546(b), 1107(a), 1108 AND 1129 AND
BANKRUPTCY RULE 6003 AUTHORIZING PAYMENT OF CONTRACTORS
IN SATISFACTION OF LIENS**

        Upon the motion (the "Motion")[1] of the Debtors

for an order, under Bankruptcy Code sections 105(a),

---

[1]  Capitalized terms used but not defined herein shall have the
     meanings ascribed to such terms in the Motion.

362(b)(3), 506, 546(b), 1107(a), 1108 and 1129 and
Bankruptcy Rule 6003 authorizing, but not directing, the
payment of contractors and service providers in
satisfaction of perfected or potential Liens in the
ordinary course of business; and the Court having
reviewed the Motion and the Besanko Declaration; and the
Court having determined that the relief requested in the
Motion is in the best interests of the Debtors, their
estates, their creditors, and other parties in interest;
and it appearing that proper and adequate notice of the
Motion has been given and that no other or further
notice is necessary; and upon the record herein; and
after due deliberation thereon; and good and sufficient
cause appearing therefor, it is hereby

       **ORDERED, ADJUDGED AND DECREED that:**

      1.    The Motion is GRANTED.

      2.    The Debtors are authorized, but not
directed, in their sole discretion to pay the Contractor
Claims in the ordinary course of the Debtors' businesses;
provided, however, that with respect to each Contractor
Claim, the Debtors are not authorized to pay a
Contractor Claim unless the Contractor has perfected or,

in the Debtors' judgment, is capable of perfecting or
may be capable of perfecting in the future, one or more
Liens in respect of such Claim.  Such payment shall not
be deemed to be a waiver of rights regarding the extent,
validity, perfection or possible avoidance of the
related Liens.

3.    Notwithstanding anything to the contrary
in this Order, the prepetition Contractor Claims to be
paid pursuant to this Order shall not exceed $6.5
million in the aggregate (the "Contractor Cap").

4.    All payments on the Liens made under this
Order shall be subject to the following conditions:

    (a)  The Debtors, in their sole discretion,
        shall determine which Contractors, if any,
        are entitled to payments; and

    (b)  Prior to making payment to a Contractor,
        the Debtors may, in their absolute
        discretion, settle all or some of the
        prepetition claims of the Contractor for
        less than their face amount without
        further notice or hearing.

5.    All applicable banks and other financial
institutions are authorized and directed to receive,
process, honor and pay any all checks drawn on the
Debtors' accounts to pay the Contractor Claims, whether

such checks were presented prior to or after the
Petition Date, provided that sufficient funds are
available in the applicable accounts to make such
payments.

6.    The Debtors are authorized to issue
postpetition checks as necessary to replace any
prepetition checks that were issued with respect to the
Contractor Claims and may be dishonored and such
reissued checks shall reduce the Contractor Cap.

7.    The Court finds and determines that the
requirements of Bankruptcy Rule 6003 are satisfied and
that the relief requested is necessary to avoid
immediate and irreparable harm.

8.    Nothing herein shall be deemed an
assumption or an authorization to assume any contracts
or other agreements with any of the Contractors pursuant
to Bankruptcy Code section 365.

9.    The provisions contained herein shall not
be construed to limit, or in any way affect, the
Debtors' ability to contest any claims on any ground
permitted by applicable law.

10.   Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

11.   The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

12.   This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Richmond, Virginia
        November 10, 2008

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

5

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

I hereby certify that notice of the Debtors' intent
to seek entry of the foregoing proposed order was
provided to the parties identified in the Motion and
copy of this proposed order was provided to the Office
of the United States Trustee for the Eastern District of
Virginia prior to submission to this Court.

/s/ Douglas M. Foley
—