Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

   - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
              :
In re:        :  Chapter 11
              :
CIRCUIT CITY STORES, INC., :  Case No. 08- _____ (___)
et al.,       :
              :  Jointly Administered
      Debtors.  :
- - - - - - - - - - - - - - x

**MOTION OF THE DEBTORS FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363, 364, 1107 AND 1108, AND BANKRUPTCY RULE 6003 (I) AUTHORIZING DEBTORS TO MAINTAIN INSURANCE POLICIES, PAY INSURANCE OBLIGATIONS, AND RENEW INSURANCE POLICIES; (II) AUTHORIZING INTERCOMPANY TRANSACTIONS; AND (III) GRANTING SUPERPRIORITY CLAIM STATUS TO POSTPETITION INTERCOMPANY CLAIMS**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1]

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City

*(cont'd)*

hereby move for entry of an order, pursuant to sections 105, 363, 364, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing, but not directing, the Debtors to maintain their existing insurance policies, pay all insurance obligations arising thereunder or in connection therewith, and to renew existing insurance policies, or enter into new insurance arrangements, as may be required as the annual terms of existing arrangements expire; (ii) authorizing, but not directing, intercompany transactions; and (iii) granting superpriority claim status to all postpetition intercompany claims.  In support of the Motion, the Debtors rely on and incorporate by reference the

---

*(cont'd from previous page)*
Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

Declaration of Bruce H. Besanko, Executive Vice President and Chief Financial Officer of Circuit City Stores, Inc., in Support of Chapter 11 Petitions and First Day Pleadings (the "Besanko Declaration"), filed with the Court concurrently herewith.  In further support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363, 364, 1107, and 1108.  Such relief is warranted pursuant to Bankruptcy Rule 6003.

### BACKGROUND

3.   On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including

3

their business operations, their capital and debt
structure, and the events leading to the filing of these
bankruptcy cases, is set forth in detail in the Besanko
Declaration, filed concurrently herewith and fully
incorporated herein by reference.[2]

4.    The Debtors continue to manage and
operate their businesses as debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

5.    No trustee or examiner has been appointed
in these chapter 11 cases, and no committees have yet
been appointed or designated.

**RELIEF REQUESTED**

6.    By this Motion, the Debtors seek entry of
an order authorizing, but not directing, the Debtors to
maintain their various insurance policies (collectively,
the "Insurance Policies") and to pay all premiums,
brokers' fees, administrations fees, and consulting fees,
(the "Insurance Obligations"), arising under or in
connection with the Insurance Policies which the Debtors
have obtained through several third-party insurance

---

2    Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to them in the Besanko Declaration.

carriers (collectively, the "Insurance Carriers"),
including any Insurance Obligations for prepetition
periods.[3]

7.   In addition, the Debtors request entry of
an order authorizing and directing the Debtors' banks to
receive, process, honor, and pay all of the Debtors'
prepetition checks and fund transfers on account of any
prepetition Insurance Obligations.

8.   The Debtors also seek entry of an order
authorizing, but not directing, the Debtors to renew
Insurance Policies, or enter into new insurance
arrangements as may be required as the annual terms of
existing arrangements expire, in the ordinary course of
business, without further order of the court.

9.   Finally, the Debtors seek entry of an
order authorizing, but not directing, intercompany
transactions among the Debtors, and granting
superpriority claim status to all postpetition
intercompany claims.

---

[3]   Attached hereto as Exhibit A is a list of the Insurance
Policies maintained by the Debtors.

5

**BASIS FOR RELIEF**

**A.    Insurance Policies and Obligations**

10.   In connection with the operation of their
businesses and management of their properties, the
Debtors maintain various Insurance Policies.  As set
forth in Exhibit A hereto, the Insurance Policies
include coverage for, among others, workers'
compensation claims, automobile claims, business
aircraft claims, fiduciary liability claims, claims for
losses due to crime, business travel and accident claims,
stock throughput claims, boiler and machinery claims,
certain general and excess liability claims, directors'
and officers' liability, employers' liability,  and
various property-related liabilities.  The third-party
claims that are covered by the Insurance Policies are
neither unusual in amount nor in number in relation to
the extent of the business operations conducted by the
Debtors.

11.   To the extent that any Insurance Policy
premiums may be attributed to prepetition insurance
coverage, the Debtors believe that payment of such
Insurance Policy premiums is necessary to ensure

continued coverage under such Insurance Policies and to maintain good relationships with the Debtors' insurers.[4] Similarly, the Debtors' believe that continued payment of Insurance Policy premiums as such premiums come due in the ordinary course of the Debtors' business is necessary.  The Debtors' maintenance of their relationships with their insurers is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage.

12.  The Debtors have been represented in their negotiations with their various insurance underwriters by Beecher Carlson Insurance Services, Inc., Aon, Marsh USA, Inc., Mercer Insurance Group, and Jardine Lloyd Thompson Canada (collectively, the "Insurance Brokers").  The employment of the Insurance Brokers has allowed the Debtors to obtain the insurance coverage necessary to operate their businesses in a reasonable and prudent manner, and to realize

---

[4]    The Debtors believe that they are current on all insurance premium obligations.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to make payments for any insurance premium obligations that may be attributed to prepetition insurance coverage.

considerable savings in the procurement of such policies.
The Debtors believe that it is in the best interests of
their creditors and estates to continue their business
relationships with the Insurance Brokers.  Accordingly,
the Debtors seek the entry of an order authorizing them
to continue their prepetition practice of paying fees to
the Insurance Brokers in connection with their
representation of the Debtors in various ongoing
negotiations with the Debtors' Insurance Carriers in an
amount up to $230,000.

13.   The Debtors have engaged Specialty Risk
Services ("SRS") to administer their general liability,
auto liability, and workers' compensation policies.  The
Debtors believe that the employment of SRS is the most
cost-effective way to handle the high volume of claims
that must be administered under these policies.  Because
the Debtors believe it is in the best interests of their
creditors and estates to continue their business
relationship with SRS, the Debtors seek entry of an
order authorizing, but not directing, payment of all
prepetition fees owed to SRS in an amount up to $160,000
and authorizing the continuation of the Debtors'

8

prepetition practice of paying fees to SRS in connection with their administration of the Debtors' general liability, auto liability, and workers compensation policies.

14.   The Debtors also employ The Travelers Company and Sedgwick Claims Management Services (collectively, the "Other Administrators") to administer various insurance policies.  As with the Debtors' employment of SRS, the Debtors believe that the employment of the Other Administrators is the most cost-effective way to handle the high volume of claims that must be administered under these policies.  Because the Debtors believe it is in the best interests of their creditors and estates to continue their business relationship with the Other Administrators, the Debtors seek entry of an order authorizing, but not directing, payment of all prepetition fees owed to the Other Administrators in an amount up to $15,000 and authorizing the Debtors to continue their prepetition practice of paying fees to the Other Administrators in connection with their administration of the Debtors' insurance policies.

15.  The Debtors are assisted by Navigant Consulting Inc. ("Navigant") in managing difficult claims with high liability exposure and the potential to interrupt the Debtors' ongoing business operations.  The Debtors engage Navigant to handle specific losses and enter into a new contract for each of these engagements. The Debtors make payments to Navigant on an interim basis and submit these charges by Navigant to the insurance carrier as part of the claim.  The Debtors are then reimbursed for all payments to Navigant when the insurance carrier processes the underlying claim. Because Navigant has expertise in handling high liability exposure claims and helps limit the interruption of the Debtors' ongoing business on account of these difficult claims, the Debtors believe that it is in the best interests of their creditors and estates to continue their business relationship with Navigant. Accordingly, the Debtors seek entry of an order authorizing, but not directing, payment of all prepetition fees to Navigant in an amount up to $5000 and authorizing the Debtors to continue their prepetition practice of paying fees to Navigant in

10

connection with their facilitation of the Debtors'
management of difficult claims.

16.   The Insurance Policies maintained by the
Debtors will all eventually expire under their annual
terms, beginning with policies due to expire in December
2008.   The Debtors believe that renewal of these
policies or entry into new insurance arrangements is
necessary to comply with the Unites States Trustee
Requirements and various state laws.   Therefore, the
Debtors request entry of an order authorizing them to
continue their prepetition practice of renewing the
Insurance Policies or entering into new insurance
arrangements in the ordinary course of business as the
annual terms of the Insurance Policies expire.

**B.    Intercompany Transactions**

17.   Many of the Debtors' Insurance Policies
cover both the Debtors and certain of the Debtors'
affiliates that are not Debtors in these cases (the
"Non-Filing Affiliates").   Other Insurance Policies
cover exclusively Non-Filing Affiliates.   In any case,
the parent company, Circuit City Stores, Inc. ("CCS"),
pays all of the Insurance Obligations and charges its

11

subsidiaries, including the Non-Filing Affiliates,
through journal entries to intercompany loan accounts,
allocating the premiums to the subsidiaries depending on
the particular type of insurance coverage (all such
intercompany transfers, the "Intercompany Transactions").
For example, premiums for property coverage are
allocated among subsidiaries based on the value of
properties held by the subsidiaries.  General liability
is allocated among subsidiaries based on sales volume.

18.   These Intercompany Transactions reduce
the Debtors' administrative costs, ensure that all
affiliates of the Debtors' maintain appropriate
insurance coverage, and, in certain cases, result in tax
benefits to the Debtors.  Because the Non-Filing
Affiliates are associated with the Debtors, the entirety
of the Intercompany Transactions among the Debtors and
the Non-Filing Affiliates remains within the spectrum of
the Debtors' control.  Accordingly, the Debtors' seek
entry of an order authorizing the continuation of
Intercompany Transactions.

19.   In addition to the foregoing, the Debtors
also engage in a series of Intercompany Transactions

with Northern National Insurance, Ltd. ("NNIL"), a wholly-owned subsidiary of CCS.  The Debtors' pay premiums to NNIL to insure a portion of their deductible under their workers' compensation policies.  The Debtors' believe that this arrangement provides certain risk-pooling advantages.  Consequently, the Debtors' seek authority to continue to pay these particular Insurance Obligations constituting an Intercompany Transaction.

20.  Moreover, to ensure that each individual Debtor will not fund the operations of another entity at the expenses of such Debtor's creditors, the Debtors request that all intercompany claims (the "Intercompany Claims") against a Debtor by another Debtor or by a Non-Filing Affiliate arising after the Petition Date as a result of Intercompany Transactions (the "Postpetition Intercompany Claims") be accorded superpriority status, subject and subordinate only to other valid liens in existence as of the Petition Date.

**APPLICABLE AUTHORITY**

**I.    INSURANCE POLICIES AND OBLIGATIONS**

**A.    Payment Of The Insurance Obligations And Renewal Of The Insurance Policies Is Necessary To Comply With United States Trustee Requirements.**

21.   Maintenance of insurance coverage under the various Insurance Policies is essential to the continued operation of the Debtors' businesses and is required under the United States Trustee's Operating Instructions and Reporting Requirements for Chapter 11 Cases (the "Operating Guidelines"), the laws of the various states in which the Debtors operate, and the Debtors' various financial agreements.  <u>See</u> U.S. Trustee's Operating Guidelines ¶ 4 (Apr. 13, 1998) (requiring maintenance of appropriate insurance coverage).  Thus, the Debtors submit that they should be authorized to continue to pay Insurance Policy premiums as such premiums come due in the ordinary course of the Debtors' business.

22.   The Debtors believe that the ordinary course maintenance of the Insurance Policies, including payment of all Insurance Policy premiums, without

14

further order of the Court, is necessary and essential
to the Debtors' operation of their businesses during
their reorganization, especially where, as here, the
Debtors' failure to pay their premium obligations to the
Insurance Carriers could have disastrous consequences
for the Debtors.

23.  Specifically, the Insurance Carriers may
cancel the insurance policies for nonpayment.  Because
the Debtors are required to maintain insurance coverage
during their chapter 11 cases, the cancellation of these
policies is particularly disastrous.

24.  Likewise, because the Insurance Policies
are all due to expire, the Debtors believe that the
ordinary course maintenance of insurance coverage,
including renewal of, or entry into, insurance
arrangements is necessary to the Debtors' effective
operation of their business and their reorganization.

25.  Finally, insofar as the employment of the
Insurance Brokers, SRS, the Other Administrators, and
Navigant is necessary for the ordinary course
maintenance of the Insurance Policies in the most
efficient, cost-effective manner, the Debtors believe

that they should be authorized to continue to pay the
Insurance Obligations to the Insurance Brokers, SRS, the
Other Administrators, and Navigant as these obligations
become due.

> **B.     Payment Of The Insurance Obligations Is
> Authorized Under Bankruptcy Code Sections
> 1107(a) And 1108.**

26.    The Debtors, operating their businesses as
debtors in possession under Bankruptcy Code sections
1107(a) and 1108, are fiduciaries "holding the
bankruptcy estate[s] and operating the business[es] for
the benefit of [their] creditors and (if the value
justifies) equity owners." In re CoServ, L.L.C., 273
B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the
duties of a chapter 11 debtor in possession is the duty
"to protect and preserve the estate, including an
operating business's going-concern value." Id.

27.    At least one court has noted that there
are instances in which a debtor in possession can
fulfill its fiduciary duty "only . . . by the preplan
satisfaction of a prepetition claim." See id.  The
CoServ court specifically noted that preplan
satisfaction of prepetition claims would be a valid

16

exercise of a debtor's fiduciary duty when the payment
"is the only means to effect a substantial enhancement
of the estate." Id. at 498.  The court provided a
three-pronged test for determining whether a preplan
payment on account of a prepetition claim was a valid
exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor
> deal with the claimant.  Second, unless it
> deals with the claimant, the debtor risks the
> probability of harm, or, alternatively, loss
> of economic advantage to the estate or the
> debtor's going concern value, which is
> disproportionate to the amount of the
> claimant's prepetition claim.  Third, there is
> no practical or legal alternative by which the
> debtor can deal with the claimant other than
> by payment of the claim.

Id. at 498.

28.  Payment of the Insurance Obligations and
renewal of the Insurance Policies, or entry into new
insurance arrangements meets each element of the CoServ
court's standard.  First, as described above, insurance
coverage is required by the Operating Guidelines.
Moreover, as a fiduciary for the bankruptcy estates, the
Debtors could be violating their duties if they
permitted any of the Insurance Policies to lapse.  In
addition, in the event that the Debtors were unable to

17

pay the brokers' fees, administration fees, and
consulting fees, it is likely that the Debtors would
lose the services of knowledgeable agents and be forced
to find other entities willing to serve as their
insurance brokers, administrators, and consultants.  The
Insurance Brokers, SRS, the Other Administrators, and
Navigant have a unique knowledge of the Debtors'
business and insurance needs that would be difficult if
not impossible to replace in the event that these
entities refused to continue as the Debtors' agents.

29.  Second, as described above, non-payment
of the Insurance Obligations could result in
cancellation of the Insurance Policies and disengagement
of the Insurance Brokers, SRS, the Other Administrators,
and Navigant, in which case the Debtors would not only
be in violation of the Operating Guidelines, the laws of
various states in which the Debtors operate, various
financial agreements, but also the Debtors may be unable
to find alternative insurance coverage, brokerage
services, administration services consulting services,
or find such alternatives only at a much higher cost
than Debtors currently incur.  Therefore, the potential

harm and economic disadvantage that would stem from the
cancellation of the Insurance Policies, disengagement of
the Insurance Brokers, SRS, the Other Administrators,
and Navigant, and failure to renew the Insurance
Policies or enter into new insurance arrangements are
grossly disproportionate to the amount of the Insurance
Obligations, and the costs of renewal or entry into new
insurance arrangements.

30.   Third, the Debtors have examined other
options short of payment of the Insurance Obligations
and renewal or entry into new insurance arrangements and
have determined that to there exists no practical or
legal alternative to payment of the Insurance
Obligations and renewal or entry into new insurance
arrangements.

31.   Accordingly, to meet their fiduciary
duties as debtors in possession under Bankruptcy Code
sections 1107(a) and 1108, the Debtors must be
authorized to pay the Insurance Obligations and renew
the existing Insurance Policies or enter into new
insurance arrangements.  The Debtors thus seek authority
to pay all Insurance Obligations that may become due

with respect to the Insurance Policies if such payment
is necessary in the Debtors' judgment in order to avoid
cancellation or interruption of insurance coverage,
brokerage services, administration services, or
consulting services.  In addition, the Debtors seek
authority to renew the existing Insurance Policies or
enter into new insurance arrangements, as has been the
Debtors' prepetition practice in the ordinary course of
business.

C.    **Payment Of The Insurance Obligations And
Renewal Of The Insurance Policies Is
Appropriate Under Bankruptcy Code 363(b).**

32.  Bankruptcy Code section 363(b) provides,
in relevant part, that "[t]he trustee, after notice and
a hearing, may use, sell or lease, other than in the
ordinary course of business, property of the estate."
11 U.S.C. § 363(b)(1).  Under this section, a court may
authorize a debtor to pay certain prepetition
claims.  See In re Ionosphere Clubs, Inc., 98 B.R. 174,
175 (Bankr. S.D.N.Y. 1989).  To do so, "the debtor must
articulate some business justification, other than mere
appeasement of major creditors."  Ionosphere Clubs, 98

B.R. at 175; see also In re NVR L.P., 147 B.R. 126, 128
(Bankr. E.D. Va. 1992).

33.   Although the Debtors have routinely
engaged in the payment of insurance policy premiums,
brokers' fees, administration fees and consulting fees,
and the renewal of insurance policies prior to the
Petition, out of an abundance of caution, the Debtors
seek the relief requested herein.   In the event Court
authority is necessary, it is the Debtors' business
judgment that, as discussed above, the failure to pay
the Insurance Obligations and failure to renew existing
Insurance Policies or enter into new insurance
arrangements could result in the cancellation of
Insurance Policies, the disengagement of the Insurance
Brokers, SRS, the Other Administrators, and Navigant,
violation of the Operating Guidelines, the laws of
various states in which the Debtors operate, various
financial agreements, and the fiduciary duties of the
debtors in possession.

34.   Accordingly, this Court should authorize
the payment of the Insurance Obligations and renewal of

existing Insurance Policies or entry into new insurance arrangements under Bankruptcy Code section 363(b).

**D.    The Bankruptcy Code Section 105 And The Doctrine Of Necessity Support Payment Of The Insurance Obligations.**

35.   The proposed payments of prepetition Insurance Obligations should be authorized pursuant to Bankruptcy Code section 105 and under the "doctrine of necessity."

36.   Bankruptcy Code section 105 authorizes this Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105.  For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the going concern value of their businesses in order to effect a successful reorganization through, among other things, maintenance of legally-mandated insurance coverage and good relationships with the Insurance Carriers, the Insurance Brokers, SRS, the Other Administrators, and Navigant, payment of prepetition Insurance Obligations as requested herein is proper in accordance with Bankruptcy Code section 105.

37.    Payment of the prepetition Insurance
Obligations is further supported by the doctrine of
necessity.  The doctrine of necessity is a well-settled
doctrine that permits a bankruptcy court to authorize
payment of certain prepetition claims prior to the
completion of the reorganization process where the
payment of such claims is necessary to the
reorganization.  See In re NVR L.P., 147 B.R. 126, 127
(Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan
payment of a pre-petition obligation when essential to
the continued operation of the debtor[,]" and must show
a "substantial necessity."); see also In re Just for
Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating
that where the debtor "cannot survive" absent payment of
certain prepetition claims, the doctrine of necessity
should be invoked to permit payment).

38.    The doctrine of necessity is a widely
accepted component of modern bankruptcy jurisprudence.
See In re NVR L.P., 147 B.R. at 127 ("[T]he 'necessity
of payment' rule is a narrow exception well-established
in bankruptcy common law."); see also Just For Feet, 242
B.R. at 826 (approving payment of key inventory

suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season).

39.  Here, for the discussed herein, it is evident that payment of prepetition Insurance Obligations is necessary to the Debtors' effective reorganization.  In particular, the Debtors believe that payment of prepetition Insurance Obligations is necessary to maintain insurance coverage as well as good relationships with the Debtors' insurers, brokers, administrators, and consultants thereby ensuring the continued availability of insurance coverage and reasonable pricing of such coverage.

**E.    Absent The Relief Requested The Debtors Will Suffer Immediate And Irreparable Harm.**

40.  Similarly, the relief requested is warranted under Bankruptcy Rule 6003, which provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

41.   No court within the Fourth Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision.[5]   However, the Fourth Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions.   In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.   See, e.g., Hughes Network Systems, Inc. v. Interdigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994).   Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.   See, e.g., Scotts Co. v. United Industries Corp., 315 F.3d 264, 283 (4th Cir. 2002).

---

[5]   Although there is not direct authority concerning Bankruptcy Rule 6003 in the Fourth Circuit, at least one bankruptcy court, applying Bankruptcy Rule 6003, concluded that first-day relief in a similar context was warranted because such relief was necessary to avoid irreparable harm.   See In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).

42.   To the extent that the requirements of
Bankruptcy Rule 6003 are applicable to the relief
requested in the Motion, the Debtors submit that for the
reasons set forth herein, the relief requested in this
Motion is necessary to avoid immediate and irreparable
harm as defined by the Fourth Circuit Court of Appeals.
While the Debtors believe that only a minimal amount of
the Insurance Obligations the Debtors seek to pay
pursuant to this Motion are prepetition claims,
nonetheless immediate and irreparable harm would result
absent the relief sought herein.  Specifically,
Insurance Obligations are soon to come due.  The Debtors
believe that if their Insurance Obligations are not paid
as soon as possible and on an expedited basis, the
Debtors' Insurance Carriers may seek to terminate the
Debtors' Insurance Policies.  The effect of potential
cancellation of the Insurance Policies -- or even
litigation regarding the same -- would be devastating to
the Debtors' estates, particularly at these early stages
of the chapter 11 cases.  Moreover, cancellation of the
Insurance Policies would render the Debtors' in

violation of the Operating Guidelines, various state
laws, and the Debtors' financing arrangements.

43.  Accordingly, the Court should allow the
payment of prepetition Insurance Obligations as
requested herein.

44.  This Court and other courts have granted
the same or similar relief in other large chapter 11
cases.  See, e.g., In re Movie Gallery, Inc., Case No.
07-33849 (DOT) (Bankr. E.D. Va. Oct. 16, 2007); In re
The Rowe Companies, Case No. 06-11142 (SSM) (Bankr. E.D.
Va. Sept. 20, 2006); see also In re Tweeter Home Entm't
Group, Inc., Case No. 07-10787 (PJW) (Bankr. D. Del.
June 13, 2007).

45.  To the extent that the Insurance Policies
or related agreements may be deemed executory contracts
within the meaning of Bankruptcy Code section 365, the
Debtors do not at this time seek authority to assume
such contracts.

## II.   INTERCOMPANY TRANSACTIONS

### A.   The Debtors Should Be Authorized To Continue Intercompany Transfers Of Funds.

46.   In the exercise of their reasonable business judgment, the Debtors believe that preservation of the going concern value of the Debtors and their Non-Filing Affiliates as a worldwide enterprise is absolutely essential to the success of any reorganization plan for the Debtors.  The relief requested herein is necessary because Intercompany Transactions among the Debtors and the Non-Filing Affiliates are integral to the maintenance of appropriate insurance coverage throughout the Debtors' corporate enterprise.  These Intercompany Transactions also reduce the Debtors' administrative costs, and, in certain cases, result in tax and risk-pooling benefits to the Debtors.  Consequently, the Debtors believe that continuation of the Intercompany Transactions, including payment of Insurance Policy premiums to NNIL, is necessary to maintain the value of the Debtors' estates.

47.    Accordingly, the Court should authorize
the Debtors to continue their prepetition intercompany
transactions practices.

48.    This Court and other courts have granted
the same or similar relief in other large chapter 11
cases.   See, e.g., In re Movie Gallery, Inc., et al.,
Case No. 07-33849 (SSM) (Bankr. E.D. Va. Oct. 17, 2007);
In re Storehouse, Inc., Case No. 06-11144 (SSM) (Bankr.
E.D. Va. Sept. 20, 2006); In re Rowe Furniture, Inc.,
Case No. 06-11143 (SSM) (Bankr. E.D. Va. Sept. 20, 2006);
In re The Rowe Cos., Case No. 06-11142 (SSM) (Bankr. E.D.
Va. Sept. 20, 2006).

**B.    Intercompany Claims Should Be Afforded
Superpriority Status Under Bankruptcy Code
Section 364(c)(1).**

49.    The Debtors' books and records reflect
various intercompany account balances among the Debtors
and the Non-Filing Affiliates as of the Petition Date.
On a going-forward basis, to ensure that each individual
Debtor will not fund the operations of another entity at
the expenses of such Debtor's creditors, the Debtors
request, pursuant to section 364(c)(1) of the Bankruptcy
Code, that all intercompany claims (the "Intercompany

29

Claims") against a Debtor by another Debtor or by a

Non-Filing Affiliate arising after the Petition Date as

a result of Intercompany Transactions (the "Postpetition

Intercompany Claims") be accorded superpriority status,

with priority over any and all administrative expenses

of the kind specified in sections 503(b) and 507(b) of

the Bankruptcy Code, subject and subordinate only to

other valid liens in existence as of the Petition Date

or granted pursuant to any debtor in possession

financing facility.  If Postpetition Intercompany Claims

are accorded superpriority status, each individual

Debtor on whose behalf another Debtor has utilized funds

or incurred expenses will continue to bear ultimate

repayment responsibility, thereby protecting the

interests of each Debtor's creditors.[6]

50.  Accordingly, the Court should grant

superpriority status to postpetition inter-debtor claims.

51.  This Court and other courts have granted

the same or similar relief in other large chapter 11

---

[6]     Nothing herein constitutes a request to validate the nature or
amount of any Intercompany Transaction or Intercompany Claim,
whether arising prepetition or postpetition.

30

cases.  See, e.g., In re Movie Gallery, Inc., et al.,

Case No. 07-33849 (SSM)(Bankr. E.D. Va. Oct. 17, 2007);

In re Dura Auto. Sys., Inc., No. 06-11202 (KJC) (Bankr.

D. Del. Nov. 20, 2006); In re J.L. French Auto. Castings,

Inc., Case No. 06 10119 (MRW) (Bankr. D. Del. Mar. 9,

2006).

### NOTICE

52.   Notice of this Motion will be given to:

(i) the Office of the United States Trustee for the

Eastern District of Virginia; (ii) counsel to the agent

for Debtors' postpetition lenders; (iii) counsel to the

agent for the Debtors' prepetition lenders; and (iv) the

Debtors' top fifty (50) largest unsecured creditors on a

consolidated basis.  The Debtors submit that, under the

circumstances, no other or further notice of the Motion

is required.

### WAIVER OF MEMORANDUM OF LAW

53.   Pursuant to Local Bankruptcy Rule 9013-

1(G), and because there are no novel issues of law

presented in the Motion and all applicable authority is

set forth in the Motion, the Debtors request that the

requirement that all motions be accompanied by a

separate memorandum of law be waived.

### NO PRIOR REQUEST

54.   No previous request for the relief sought

herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 10, 2008
      Richmond, Virginia

                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                    Gregg M. Galardi, Esq.
                    Ian S. Fredericks, Esq.
                    P.O. Box 636
                    Wilmington, Delaware 19899-0636
                    (302) 651-3000

                            - and -

                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                    Chris L. Dickerson, Esq.
                    333 West Wacker Drive
                    Chicago, Illinois 60606
                    (312) 407-0700

                            - and -

                    MCGUIREWOODS LLP

                    /s/ Douglas M. Foley
                    Dion W. Hayes (VSB No. 34304)
                    Douglas M. Foley (VSB No. 34364)
                    One James Center
                    901 E. Cary Street
                    Richmond, Virginia 23219
                    (804) 775-1000

                    Proposed Counsel for Debtors and Debtors in Possession

33

**EXHIBIT A**

**Schedule of Insurance Policies**

<u>**Exhibit A**</u>

**Schedule of Insurance Policies**

| Policy Type | Policy Number | Effective Date | Expiration Date | Carrier |
|---|---|---|---|---|
| Commercial General Liability | MWZY 58095 | 10/01/08 | 10/01/09 | Old Republic Insurance Company |
| Business Auto Liability Policy | MWYB 20081 | 10/01/08 | 10/01/09 | Old Republic Insurance Company |
| Employer Liability and Workers' Compensation | MWC 115699 00 | 10/01/08 | 10/01/09 | Old Republic Insurance Company |
| Aircraft Liability | 15000449 | 09/17/08 | 09/17/09 | Global Aerospace, Inc. |
| CGL/AL/EL/Aircraft Excess-Layer 1 | 2226973 | 10/01/08 | 10/01/09 | National Union Fire Insurance Company |
| CGL/AL/EL/Aircraft Excess-Layer 2 | 2213748 | 10/01/08 | 10/01/09 | Lexington Insurance Company |
| CGL/AL/EL/Aircraft Excess-Layer 3 | SHX00079595450 | 10/01/08 | 10/01/09 | Fireman's Fund Insurance Company |
| CGL/AL/EL/Aircraft Excess-Layer 4 | EXC 2195340 | 10/01/08 | 10/01/09 | Great American Assurance Company |
| CGL/AL/EL/Aircraft Excess-Layer 5 | QI06801704 | 10/01/08 | 10/01/09 | St. Paul Fire and Marine Insurance Company |
| CGL/AL/EL/Aircraft Excess-Layer 6 | ECO(09)52512196 | 10/01/08 | 10/01/09 | Ohio Casualty Insurance Company |
| Business Travel Accident | GTU 4847849 | 08/01/08 | 08/01/09 | Zurich American Insurance Company |
| D&O Excess-Layer 1 | 8209-3152 | 12/01/07 | 12/01/08 | Executive Risk Indemnity (Chubb) |
| D&O Excess-Layer 2 | DFX3911891 | 12/01/07 | 12/01/08 | Great American Insurance Companies |
| D&O Excess-Layer 3 | EC06800972 | 12/01/07 | 12/01/08 | St. Paul Travelers Insurance Company |
| D&O Excess-Layer 4 | RAN710840/01/2007 | 12/01/07 | 12/01/08 | Axis Reinsurance Company |
| D&O Excess-Layer 5 | HS627141 | 12/01/07 | 12/01/08 | RSUI Indemnity Company |
| D&O Excess-Layer 6 | DOX0023851-00 | 12/01/07 | 12/01/08 | Arch Insurance Group |
| Directors & Officers Side A (DIC) | ELU101502-07 | 12/01/08 | 12/01/08 | XL Specialty Insurance Co |
| Directors & Officers Side A (DIC) Excess-Layer 1 | 8209-3156 | 12/01/07 | 12/01/08 | Executive Risk Indemnity (Chubb) |
| Fiduciary Liability | 8119-7821 | 12/01/07 | 12/01/08 | Federal Insurance Company (Chubb) |
| Crime | 8119-7821 | 12/01/07 | 12/01/08 | Federal Insurance Company (Chubb) |
| Special (K&R) | 8119-7821 | 12/01/07 | 12/01/08 | Federal Insurance Company (Chubb) |
| Property | 8757424 | 8/15/08 | 8/15/09 | Lexington Insurance Company |
| Property | EAF734325-08 | 8/15/08 | 8/15/09 | Axis Surplus Insurance Company |
| Property | MAXN61M0002849 | 8/15/08 | 8/15/09 | State National Insurance Company |
| Property | WB0800968 | 8/15/08 | 8/15/09 | Lloyds of London |
| Property | MJ2L9L443896018 | 8/15/08 | 8/15/09 | Liberty Mutual Fire Insurance Company |

| Policy Type | Policy Number | Effective Date | Expiration Date | Carrier |
|---|---|---|---|---|
| Property | 78-A3-XP-0000144-01 | 8/15/08 | 8/15/09 | Princeton Excess & Surplus Lines Insurance Company |
| Property | 31-3-72223 | 8/15/08 | 8/15/09 | Industrial Risk Insurers |
| Property | WB0801063 | 8/15/08 | 8/15/09 | Lancashire Insurance Company (UK) Ltd |
| Property | WB0801064 | 8/15/08 | 8/15/09 | Glacier Insurance AG |
| Property | WB0801029 | 8/15/08 | 8/15/09 | Lloyds of London |
| Property | WB080162 | 8/15/08 | 8/15/09 | Lloyds of London |
| Property | LHD359228 | 8/15/08 | 8/15/09 | Landmark American Insurance Company |
| Property | GEP2189 | 8/15/08 | 8/15/09 | Global Excess Partners |
| Property | XIN25772 | 8/15/08 | 8/15/09 | Integon Specialty Insurance Company |
| Stock Throughput | 88644 | 12/2/07 | 12/2/08 | American Home Assurance Company |
| Stock Throughput | CBN00118 | 9/5/08 | 8/15/09 | National Liability and Fire Insurance Company |
| Boiler & Machinery | BM1098580896 | 12/2/07 | 12/2/08 | Continental Casualty (CNA) |
| Boiler & Machinery | BM3011090663 | 8/15/08 | 8/15/09 | Continental Casualty (CNA) |
| General Liability, Auto Liability, Workers' Compensation, & Employers Liability | Not yet received | 10/01/08 | 12/31/08 | Northern National Insurance Ltd. |
| Canadian General Liability | CZY58095 | 10/01/08 | 10/01/09 | Old Republic Insurance Company of Canada |
| Canadian Auto Liability | CTB20081 | 10/01/08 | 10/01/09 | Old Republic Insurance Company of Canada |
| Foreign Package (Hong Kong) | WR10004769 | 1/01/08 | 1/01/09 | National Union Fire Insurance Company |
| Foreign General Liability | 0300000268/000003 | 1/01/08 | 1/01/09 | AIG Insurance Company (Taiwan) |
| Foreign Workers' Compensation and Public Liability | 82608562 OFP | 10/01/08 | 10/01/09 | MSIG Insurance Ltd. (Hong Kong) |

2

```
Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                              :   Chapter 11
                              :
In re:                        :
                              :   Case No. 08-)
CIRCUIT CITY STORES, INC.,    :
et al.,                       :   Jointly Administered
                              :
          Debtors.            :
- - - - - - - - - - - - - - x
```

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363, 364, 1107, AND 1108, AND BANKRUPTCY RULE 6003 (I) AUTHORIZING DEBTORS TO MAINTAIN INSURANCE POLICIES, PAY INSURANCE OBLIGATIONS, AND RENEW INSURANCE POLICIES; (II) AUTHORIZING INTERCOMPANY TRANSACTIONS; AND (III) GRANTING SUPERPRIORITY CLAIM STATUS TO POSTPETITION INTERCOMPANY CLAIMS**

Upon the motion (the "Motion")[1] of the Debtors

for an order, pursuant to Bankruptcy Code sections 105,

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

363, 364, 1107, and 1108, and Bankruptcy Rule 6003

(i) authorizing, but not directing, the Debtors to

maintain their existing insurance policies, pay all

insurance obligations arising thereunder or in

connection therewith, and to renew existing insurance

policies, or enter into new insurance arrangements, as

may be required as the annual terms of existing

arrangements expire; (ii) authorizing, but not directing,

intercompany transactions; and (iii) granting

superpriority claim status to all postpetition

intercompany claims; and the Court having reviewed the

Motion and the Besanko Declaration; and the Court having

determined that the relief requested in the Motion is in

the best interests of the Debtors, their estates, their

creditors, and other parties in interest; and it

appearing that proper and adequate notice of the Motion

has been given and that no other or further notice is

necessary; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause

appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Motion is GRANTED.

2.    The Debtors are authorized, but not
directed, to continue their Insurance Policies, and to
pay the premiums and related charges arising under or in
connection with the Insurance Polices as such premiums
and charges become due.  For the avoidance of doubt,
this includes payment of all premiums attributable to
prepetition periods.

3.    The Debtors are authorized, but not
directed, to pay all brokers' fees arising under or in
connection with the Insurance Policies as they become
due, including, without limitation, all fees payable to
Beecher Carlson Insurance Services, Inc., Aon, Marsh USA,
Inc., Mercer Insurance Group, and Jardine Lloyd Thompson
Canada in an amount up to $230,000.  For the avoidance
of doubt, this includes payment of such fees that are
attributable to prepetition periods.

4.    The Debtors are authorized, but not
directed, to pay all administration fees arising under
or in connection with the Insurance Policies as they
become due, including, without limitation, all fees
payable to Specialty Risk Services in an amount up to

3

$160,000.  For the avoidance of doubt, this includes payment of such fees attributable to prepetition periods.

5.   The Debtors are authorized, but not directed, to pay all administration fees arising under or in connection with the Insurance Policies as they become due, including, without limitation, all fees payable to The Travelers Company and Sedgwick Claims Management Services in an amount up to 15,000.  For the avoidance of doubt, this includes payment of such fees attributable to prepetition periods.

6.   The Debtors are authorized, but not directed, to pay all consulting fees arising under or in connection with the Insurance Policies as they become due, including, without limitation, all fees payable to Navigant Consulting, Inc in an amount up to $5000.  For the avoidance of doubt, this includes payment of such fees attributable to prepetition periods.

7.   The Debtors' banks shall be and hereby are authorized and directed to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the prepetition insurance obligations that had not been honored and paid as of the

Petition Date, provided that sufficient funds are on
deposit in the applicable accounts to cover such
payments.

8.    Without further order of this or any
other Court, the Debtors are authorized to renew
existing Insurance Policies, or enter into new insurance
arrangements, in the ordinary course of business, as may
be required as the annual terms of existing arrangements
expire.

9.    The Debtors are authorized to continue to
engage in Intercompany Transactions, provided, however,
that the Debtors are directed to maintain strict records
of all transfers so that all transactions, including,
but not limited to, Intercompany Transactions, may be
readily ascertained, traced, and recorded properly on
applicable accounts.

10.    Pursuant to section 364(c)(1) of the
Bankruptcy Code all intercompany claims arising from
Intercompany Transactions between and among the Debtors
and the Non-Filing Affiliates after the Petition Date
shall be accorded priority over any and all
administrative expenses of the kind specified in

sections 503(b) and 507(b) of the Bankruptcy Code, subject and subordinate only to (i) other valid liens in existence as of the Petition Date or granted in connection with any post-petition debtor in possession financing granted by this Court and (ii) liens and superpriority administrative expenses granted to the prepetition lenders as adequate protection.

11.   Nothing in this Order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section 365.

12.   Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.

13.   The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

14.   The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

15.   The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Richmond, Virginia
        November __, 2008

_____

UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

I hereby certify that notice of the Debtors' intent to seek entry of the foregoing proposed order was provided to the parties identified in the Motion and copy of this proposed order was provided to the Office of the United States Trustee for the Eastern District of Virginia prior to submission to this Court.

/s/ Douglas M. Foley