Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

             IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION
- - - - - - - - - - - - - - x
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08- _____ (____)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**MOTION OF DEBTORS FOR ORDER PURSUANT TO 11 U.S.C.
§§ 105(a), 363 AND 364 AND FED. R. BANKR. P. 6003
(I) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS,
(II) AUTHORIZING USE OF EXISTING BUSINESS FORMS,
(III) AUTHORIZING USE OF EXISTING CASH MANAGEMENT SYSTEM,
(IV) AUTHORIZING INTERCOMPANY TRANSACTIONS AND (V)
GRANTING SUPERPRIORITY STATUS TO INTERCOMPANY CLAIMS**

          The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1]

--------------------------------

[1]      The Debtors and the last four digits of their respective

                                              *(cont'd)*

hereby move (the "Motion") for entry of an order (the

"Order"), pursuant to sections 105, 363 and 364 of title

11 of the United States Code (the "Bankruptcy Code") and

Rule 6003 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), (i) authorizing, but not

directing, continued maintenance of existing bank

accounts, and authorizing a waiver of certain operating

guidelines relating to bank accounts, (ii) authorizing,

but not directing, continued use of existing business

forms, (iii) authorizing, but not directing, continued

use of existing cash management system, (iv) authorizing,

but not directing, intercompany transactions among the

Debtors, and (v) granting superpriority administrative

claim status to all postpetition intercompany claims.

In support of the Motion, the Debtors rely upon and

_____

*(cont'd from previous page)*
taxpayer identification numbers are as follows: Circuit City
Stores, Inc. (3875), Circuit City Stores West Coast, Inc.
(0785), InterTAN, Inc. (0875), Ventoux International, Inc.
(1838), Circuit City Purchasing Company, LLC (5170), CC
Aviation, LLC (0841), CC Distribution Company of Virginia, Inc.
(2821), Circuit City Properties, LLC (3353), Kinzer Technology,
LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco
Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs,
Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116),
Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and
Circuit City Stores PR, LLC (5512).  The address for Circuit
City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the
address is 9950 Mayland Drive, Richmond, Virginia 23233.

fully incorporate by reference Declaration of Bruce H.
Besanko, Executive Vice President and Chief Financial
Officer of Circuit City Stores, Inc., in Support of
Chapter 11 Petitions and First Day Pleadings (the
"Besanko Declaration"), filed with the Court
concurrently herewith.  In further support of the Motion,
the Debtors respectfully represent:

## JURISDICTION AND VENUE

1.   This Court has jurisdiction to consider
this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This
is a core proceeding pursuant to 28 U.S.C. § 157(b).
Venue of these cases and this Motion in this district is
proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief
requested herein are Bankruptcy Code sections 105(a),
363 and 364.  Such relief is warranted pursuant to
Bankruptcy Rule 6003.

## BACKGROUND

3.   On the date hereof (the "Petition Date"),
the Debtors filed voluntary petitions in this Court for
relief under chapter 11 of the Bankruptcy Code.  The
factual background regarding the Debtors, including

their business operations, their capital and debt
structure, and the events leading to the filing of these
bankruptcy cases, is set forth in detail in the Besanko
Declaration, filed concurrently herewith and fully
incorporated herein by reference.[2]

4.    The Debtors continue to manage and
operate their businesses as debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

5.    No trustee or examiner has been appointed
in these chapter 11 cases, and no committees have yet
been appointed or designated.

**RELIEF REQUESTED**

6.    By this Motion, the Debtors seek entry of
an order, pursuant to Bankruptcy Code sections 105(a),
363 and 364 (a) authorizing, but not directing,
maintenance of existing bank accounts, and authorizing a
waiver of certain operating guidelines relating to bank
accounts set forth in the U.S. Department of Justice,
Office of the United States Trustee: Guidelines for
Debtors-in-Possession (the "U.S. Trustee Guidelines") as

---

[2]    Capitalized terms not otherwise defined herein shall have the
meanings ascribed to them in the Besanko Declaration.

adopted by the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee"), (b) authorizing, but not directing, continued use of existing business forms, (c) authorizing, but not directing, continued use of existing cash management system, (d) authorizing, but not directing, intercompany transactions among the Debtors, and (e) granting superpriority administrative claim status to all postpetition intercompany claims arising from intercompany transactions.

## BASIS FOR RELIEF

**A.    The Debtors Should Be Granted Authority To Maintain Their Existing Bank Accounts.**

7.    The U.S. Trustee has established the U.S. Trustee Guidelines for debtors in possession in order to supervise the administration of chapter 11 cases.  The U.S. Trustee Guidelines require chapter 11 debtors to, among other obligations, (a) close all existing bank accounts and open new debtor in possession bank accounts for which the signature cards shall indicate that the debtor is a "Chapter 11 Debtor-in-Possession"; (b) establish a new payroll account; and (c) maintain

any funds in excess of the amount required for current
operations in an interest-bearing account.  These
requirements are designed to draw a clear line of
demarcation between prepetition and postpetition
transactions and operations and prevent the inadvertent
postpetition payment of prepetition claims.  Pursuant to
Bankruptcy Code sections 105(a) and 363, the Debtors
seek a waiver of these requirements and authorization to
continue using their existing bank accounts.

8.   Prior to the commencement of these
chapter 11 cases, in the ordinary course of their
business, the Debtors maintained throughout the country
and Puerto Rico approximately forty-five (45) bank
accounts out of which they manage cash receipts and
disbursements (the "Bank Accounts").  A list of the Bank
Accounts is attached to the Order as Exhibit A.

9.   Additionally, the Debtors maintain eight
(8) investment accounts (the "Investment Accounts") to
maximize returns on unused cash assets by adhering to
the following four objectives:  (1) preserve principal;
(2) meet liquidity needs; (3) deliver a suitable return
in relation to the objectives and market conditions; and

10.  The Prepetition Credit Facility.  Prior
to the Petition Date, the Debtors entered into a credit
agreement and related documents (collectively the "Loan
Documents") with Bank of America, N.A., as agent (the
"Agent") for a revolving credit facility (the
"Prepetition Credit Facility"), which was secured by,
among other assets, the Debtors' inventory and accounts
and proceeds thereof.  Pursuant to the Prepetition
Credit Facility, absent certain circumstances, the
Debtors were authorized to use their Bank Accounts and
pay down the Prepetition Credit Facility in the ordinary
course of business.

11.  However, as a result of certain events
that occurred prior to the Petition Date, the Agent
exercised its authority under the Loan Documents and

took control over the Debtors' Bank Accounts.  In
furtherance of its rights, the Agent directed the
Debtors and their banks to implement procedures whereby
all funds held in the Debtors' Bank Accounts are swept
daily by the Agent and applied to outstanding amounts
under the Prepetition Credit Facility.  As a result of
these measures, the Debtors' prepetition cash management
system changed shortly before these cases were commenced.

12.  The Primary Concentration Accounts.  The
Debtors' United States cash management system is
centralized around two concentration Bank Accounts – one
at Wachovia Bank (the "Wachovia Concentration Account")
and one at Bank of America (the "Bank of America Funding
Concentration Account").  As discussed more fully herein,
nearly all income and expenses flow through these two
accounts.

13.  United States Store Bank Accounts.  Of
the Bank Accounts, approximately six (6) are
concentrated store deposit accounts into which cash and
check sale proceeds are deposited (the "Store Deposit
Accounts") from operations in all fifty United States.

14. <u>Credit Card Account</u>.  Additionally, the Debtors maintain one Bank Account into which certain credit card sale proceeds are deposited (the "Credit Card Account").  The Credit Card Account is maintained at Fifth Third Bank and receives credit card receipts from VISA, MasterCard and Discover transactions for processing.

15.  Additionally, the Debtors accept payment from their customers using AMEX, but receipts generated through AMEX transactions are not deposited into a separate bank account.  Instead, as discussed below, AMEX processes the transactions directly.

16.  Finally, the Debtors accept payment from their customers using two Circuit City labeled credit cards:  (1) a Circuit City private label credit card for use only at the Debtors stores, website and toll-free call center; and (2) a Circuit City VISA credit card for use with the Debtors, as well as at any other merchant that accepts VISA transactions (together, the "Circuit City Credit Cards").  All transactions with Debtors' for which payment is made using either Circuit City Credit Card are processed through Chase Bank, N.A.

(collectively with VISA, MasterCard, Discover and AMEX, the "Credit Card Processors").  Like AMEX transactions, receipts from Circuit City Credit Card transactions are not deposited in a separate bank account.

17.   <u>Remaining United States Bank Accounts</u>. The remaining Bank Accounts utilized by Debtors for the United States operations are either disbursement accounts (including employee benefits, trade, operating, bank fees, and payroll related accounts), concentration accounts, or other sales' receipts accounts.

18.   <u>Puerto Rico Accounts</u>.  Three (3) of the Bank Accounts serve to manage the Debtors' cash receipts and disbursements from their operations in Puerto Rico (the "PR Accounts").

19.   The Debtors believe that all of the Bank Accounts are in financially stable banking institutions. In addition, the Debtors believe that all of the Bank Accounts are in banking institutions with FDIC insurance (up to an applicable limit, if any, per Debtor per financial institution), except with respect to the Investment Accounts and the PR Accounts, which the Debtors believe are not subject to FDIC insurance.

20.   The Debtors seek a waiver of the U.S. Trustee's requirement that the prepetition Bank Accounts be closed and that new postpetition bank accounts be opened.  If enforced in these cases, such a requirement would cause enormous disruption in the Debtors' business and would impair the Debtors' efforts to reorganize and pursue other alternatives to maximize the value of their estates.  Indeed, as explained in more detail below, the Bank Accounts comprise an established cash management system that the Debtors need to maintain in order to ensure smooth collections and disbursements in the ordinary course.

21.   Accordingly, in order to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in the Debtors' efforts to complete these cases successfully and rapidly, the Debtors must be permitted to continue to maintain their existing Bank Accounts and, if necessary, open new and close existing accounts, wherever needed, whether or not such banks are designated depositories in the Eastern District of Virginia.

22.   In other cases of this size and nature, it has been recognized that the strict enforcement of bank account closing requirements does not serve the rehabilitative purposes of chapter 11.  Accordingly, this Court, and others, have waived such requirements and replaced them with alternative procedures that provide the same protections.  See, e.g., In re Movie Gallery, Inc., et al., Case No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007); In re Storehouse, Inc., Case No. 06-11144 (Bankr. E.D. Va. Sept. 20, 2006); In re Rowe Furniture, Inc., Case No. 06-11143 (Bankr. E.D. Va. Sept. 20, 2006); In re The Rowe Cos., Case No. 06-11142 (Bankr. E.D. Va. Sept. 20, 2006).

23.   In sum, subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtors request that the Bank Accounts and Investment Accounts be deemed to be debtor in possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period, be authorized.

24.  The Debtors represent that if the relief requested in this Motion is granted, they will not pay, and each of the banks at which the Bank Accounts are maintained will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

**B.    The Debtors Should Be Granted Authority To Continue To Use Existing Business Forms And Checks.**

25.  In order to minimize expenses to their estates, the Debtors also seek authorization to continue using all correspondence, business forms (including, without limitation, letterhead, purchase orders, and invoices), and checks existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.

26.  Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the notoriety of these cases, the press releases issued by the Debtors, and additional other press coverage.  Moreover, each of the Debtors' vendors will receive direct notice of the commencement of these cases.

27.    Changing correspondence and business forms would be expensive, unnecessary, and burdensome to the Debtors' estates and disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors.  For these reasons, the Debtors request that they be authorized to use existing checks and business forms without being required to place the label "Debtor In Possession" on each.

28.    This Court has routinely granted the same or similar relief to chapter 11 debtors.  See, e.g., In re Movie Gallery, Inc., et al., Case No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007); In re Storehouse, Inc., Case No. 06-11144 (Bankr. E.D. Va. Sept. 20, 2006); In re Rowe Furniture, Inc., Case No. 06-11143 (Bankr. E.D. Va. Sept. 20, 2006); In re The Rowe Cos., Case No. 06-11142 (Bankr. E.D. Va. Sept. 20, 2006).

**C.    The Debtors Should Be Authorized To Continue To Use The Existing Cash Management System.**

29.    The cash management procedures utilized by the Debtors constitute ordinary, usual, and essential business practices and are similar (and in some

instances more elaborate) to those used by other major
corporate retail enterprises.  The cash management
system facilitates cash forecasting and reporting,
monitors collection and disbursement of funds, reduces
administrative expenses by facilitating the movement of
funds and the development of more timely and accurate
balance and presentment information, and administers the
various bank accounts required to effect the collection,
disbursement, and movement of cash.

**(1)   The Cash Management System – Sales and
Receipts**

30.   <u>United States Sales and Receipts</u>.  The
Debtors' cash management system is funded primarily by
receipts received from the Debtors' retail stores, which
are deposited into various Store Deposit Accounts, wired
to the Wachovia Concentration Account, and, ultimately,
swept to the Agent for application against amounts
outstanding under the Prepetition Credit Facility.
Additional receipts are received from, among other
sources, the Debtors' website -- www.circuitcity.com,
the Debtors' toll-free call center -- 1-800-THE-CITY,
other third party websites, and real property sublessees.

All such additional receipts are ultimately transferred to the Wachovia Concentration Account and thereafter swept by the Agent.

31.   As discussed above, the Debtors maintain six (6) Store Deposit Accounts.  The Deposit Accounts are maintained at Wells Fargo Bank, Regions Bank, Chase Bank, American Savings Bank, Bank of America and Wachovia Bank and are funded with cash and check sale proceeds from the Debtors' stores.

32.   Upon receipt of cash and check sale proceeds, such proceeds are maintained and managed at each store pending transition to armored car services for subsequent delivery to the banks at which the Store Deposit Accounts are maintained or, in some instances, local vaults.  During the non-peak shopping season, the armored cars receive proceeds at least three (3) times per week.  During the peak shopping season, the frequency is increased to at least four (4) times per week.

33.   After the proceeds are deposited in the Store Deposit Accounts, funds in the Store Deposit Accounts are wired to the Wachovia Concentration Account

on a daily basis pursuant to standing wire instructions. At the end of each day, the Wachovia Concentration Account is swept by the Agent.

34. <u>Puerto Rico Sales and Receipts</u>. All store receipts in the form of cash and checks are deposited into one Bank Account with Banco Popular (the "PR Store Deposit Account"). The PR Store Deposit Account is a zero balance account; all funds in this account are swept daily into a second account -- a concentration account -- also with Banco Popular (the "PR Concentration Account"). In addition, all credit card receipts from all Credit Card Processors are deposited daily into the PR Concentration Account. Thereafter, also on a daily basis, the Agent sweeps the concentration account and applies all swept funds against amounts outstanding under the Prepetition Credit Facility.

35. <u>United States Credit Card Receipts</u>. The Debtors also generate sale proceeds through credit card transactions in-store, online and call center transactions. These transactions are processed by the Credit Card Processors on a daily basis. With respect

to Circuit City Credit Cards and AMEX transactions,
Chase and AMEX process their respective credit card
receipts and, on a daily basis, wire such proceeds to
the Wachovia Concentration Account, which amounts
deposited therein are in turn swept by the Agent daily.
With respect to all other Credit Card Processors, credit
card proceeds from United States operations are
processed and first deposited into an account at Fifth
Third Bank.  Thereafter, the proceeds are wired to the
Wachovia Concentration Account and, in turn, swept by
the Agent daily.

    36.  <u>Other Online Sales and Receipts</u>.  In
addition to store, online and call center sales, the
Debtors offer customers (i) certain products available
on third party websites and (ii) third party products
through links from the Debtors' website.  Proceeds from
sales offered over the internet are deposited directly
into one of three (3) Bank Accounts –- two with Wachovia
Bank and one with Fifth Third Bank.  The Fifth Third
account and one Wachovia account are zero balance
accounts; all funds deposited in the accounts are
automatically swept daily into the Wachovia

Concentration Account.  The other Wachovia account
functions much like a zero balance account, except that
because funds are not received in the account daily,
transfers are initiated by the Debtors only upon receipt
of funds.  In either instance, ultimately, the receipts
are swept by the Agent and applied to the Revolving
Credit Facility.

37.  <u>Other Receipts</u>.  The Debtors also receive
proceeds the following products and services: (1)
bounties -- commissions – from sales of certain products
offered by, among other third parties, DIRECT TV and
Verizon; (2) corporate bulk sales; (3) product repairs
on account of manufacturers' warrantees; (4) other third
party product repair services; (5) real property
subleases; and (5) other miscellaneous products and
services.  Proceeds from these products and services are
sent directly to one of four Bank Accounts with Wachovia
Bank.  Three of the accounts are zero balance accounts
from which receipts are swept daily into the Wachovia
Concentration Account.  The remaining account, which is
used for the receipt of sublessee rent payments, is
monitored for activity and funds are transferred to the

Wachovia Concentration Account as they are received.
Ultimately, all amounts are swept by the Agent and
applied against amounts due under the Revolving Credit
Facility.

     (2)  **The Debtors' Cash Management System -
Disbursements.**

     38.  <u>United States Disbursements</u>.  In addition
to the Bank Accounts discussed above, the Debtors
maintain two additional concentration accounts and
various disbursement accounts.  All of these accounts
are directly or indirectly funded from the Bank of
America Funding Concentration Account.  The Bank of
America Funding Concentration Account is funded daily by
the Agent after receipt from the Debtors' of the amount
necessary to fund obligations that will be presented to
the Banks where the disbursement accounts are located.

     39.  The Debtors' other concentration accounts
are maintained at (i) Bank of America (the "BofA Payroll
Concentration Account"), and (ii) Sun Trust Bank.

     40.  The BofA Payroll Concentration Account is
utilized to fund all payroll obligations.  This
concentration account is linked to a payroll

disbursement account.  Both the BofA Payroll
Concentration Account and the disbursement account are
zero balance accounts.  The BofA Payroll Concentration
Account is funded by wire transfer from the Bank of
America Funding Concentration Account.  Upon presentment
of payroll checks issued on or direct deposit transfers
initiated from the disbursement account, funds
sufficient to cover such checks or direct deposits are
automatically transferred from the BofA Payroll
Concentration Account to disbursement account and the
checks are paid or the direct deposits are funded.

     41.  The Debtors also maintain a concentration
account (the "Sun Trust Concentration Account") and
disbursement account at Sun Trust Bank to fund the
majority of general operating expense payables.  The Sun
Trust Concentration Account is funded by wire transfer
from the Bank of America Funding Concentration Account.
Upon presentment of checks issued on the disbursement
account, funds sufficient to cover such checks are
automatically transferred from the Sun Trust
Concentration Account to disbursement account and the
checks are paid.

42.   The Debtors also maintain an account with Citizens Bank for purposes of paying customers' rebates. The company's customer rebates are handled by a third party vendor, Parago.   This account is funded daily for the amount of checks that are presented for clearing.

43.   The Debtors' remaining disbursement accounts are utilized for a variety of purposes.

44.   In particular, the Debtors maintain four additional disbursement accounts at Bank of America. Through periodic wire transfers to these accounts, the Debtors fund payroll and ministerial expenses associated with their operations in Hong Kong, China and Taiwan.

45.   All other disbursement accounts are used for (i) payments to vendors for merchandise and merchandise parts, (ii) merchandise service through Firedog or otherwise, (iii) Empire Blue medical claims, (iv) payments to other benefits' providers, (v) supplies, including signage, bags and paper products, for stores and headquarters, (vi) general operations at their corporate headquarters, (vii) tax payments, (viii) corporate expenses, and (ix) other corporate expenses. In some instances, these accounts are funded through

wire transfers from the Bank of America Funding
Concentration Account and, if necessary, in the second
instance a sub-concentration account at Bank of America.
In all other instances, the accounts function like many
of the Debtors' other zero balance disbursement accounts
in that funds are transferred to these accounts in
amounts sufficient and at times necessary to satisfy
checks presented thereon.

46.  Puerto Rico Disbursements.  All
disbursements (other than payroll) related to the
Debtors' operations in Puerto Rico, including, without
limitation, supply and vendor disbursements, are drawn
on PR Concentration Account.  Payroll obligations are
drawn on separate account, also with Banco Popular.
This account is a zero balance account and functions
like many of the Debtors' other zero balance
disbursement accounts in that funds are automatically
transferred from the Bank of America Funding
Concentration Account to the disbursement account in
amounts sufficient and at times necessary to satisfy
checks presented thereon.

**(3)    The Debtors' cash management system is maintained in the ordinary course of business and is beneficial to the Debtors and their estates.**

47.    As detailed above, the Debtors' cash management system is highly automated and computerized. This allows the Debtors to manage centrally all of their cash flow needs and includes the necessary accounting controls to enable the Debtors, as well as creditors and the Court, to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable.  The Debtors will continue to maintain detailed records reflecting all transfers of funds.

48.    The cash management procedures that the Debtors use constitute ordinary, usual, and essential business practices and are similar to those used by other major corporate enterprises.  The cash management system benefits the Debtors in significant ways, including the ability to (i) control corporate funds centrally, (ii) ensure availability of funds when necessary, and (iii) reduce administrative expenses by facilitating the movement of funds and the development

of more timely and accurate balance and presentment
information.

49.   In furtherance of this goal, the Debtors
request that all banks at which the Bank Accounts are
maintained (the "Banks") be authorized and directed to
continue to administer the Bank Accounts as such
accounts were maintained prepetition, without
interruption and in the usual and ordinary course, and
to pay any and all checks, drafts, wires, or electronic
funds transfers presented, issued, or drawn on the Bank
Accounts on account of a claim arising on or after the
Petition Date so long as sufficient funds are in said
Bank Accounts.

50.   The Debtors further request that the
Banks be restrained from honoring any check, draft, wire,
or electronic funds transfer presented, issued, or drawn
on the Bank Accounts on account of a prepetition claim
unless (i) authorized in an order of this Court,
(ii) not otherwise prohibited by a "stop payment"
request received by the Banks from the Debtors, and
(iii) supported by sufficient funds in the Bank Account
in question.

51.   To effectuate the foregoing, the Debtors
request that the Banks be authorized and directed to
honor all representations from the Debtors as to which
checks should be honored or dishonored.  To the extent
that the Debtors have directed that any prepetition
checks be dishonored, they reserve the right to issue
replacement checks to pay the amounts related to such
dishonored checks consistent with the orders of this
Court.

52.   The operation of the Debtors' business
requires that the cash management system continue during
the pendency of these chapter 11 cases.  Requiring the
Debtors to adopt a new, segmented cash management system
at this early and critical stage of these cases would be
expensive, would create unnecessary administrative
problems, and would likely be much more disruptive than
productive.  Any such disruption could have an adverse
impact upon the Debtors' ability to reorganize.

53.   Moreover, pursuant to the Debtors'
prepetition credit facility, the Debtors' are required
to maintain their present cash management system to

secure significant components of the Agent's collateral
and allow the Agent to execute daily account sweeps.

54.   Allowing the Debtors to utilize their
prepetition cash management system is entirely
consistent with applicable provisions of the Bankruptcy
Code.

55.   In particular, this Court has the
authority to grant the requested relief pursuant to its
equitable powers under section 105(a) of the Bankruptcy
Code.   Section 105(a) provides, in relevant part, that
the Court may issue any order, process, or judgment that
is necessary or appropriate to carry out the provisions
of [the Bankruptcy Code]."   11 U.S.C. § 105(a).

56.   Indeed, bankruptcy courts routinely
permit chapter 11 debtors to continue using their
existing cash management system, generally treating
requests for such relief as a relatively "simple
matter."   In re Baldwin-United Corp., 79 B.R. 321, 327
(Bankr. S.D. Ohio 1987); see also In re Columbia Gas
Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992)
(recognizing that an integrated cash management system
"allows efficient utilization of cash resources and

recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash"), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993), cert. denied. sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp., 510 U.S. 1110 (1994).

57.   This Court has granted substantially similar relief in other large chapter 11 cases.  See, e.g., In re Movie Gallery, Inc., et al., Case No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007); In re Storehouse, Inc., Case No. 06-11144 (Bankr. E.D. Va. Sept. 20, 2006); In re Rowe Furniture, Inc., Case No. 06-11143 (Bankr. E.D. Va. Sept. 20, 2006); In re The Rowe Cos., Case No. 06-11142 (Bankr. E.D. Va. Sept. 20, 2006).  The Debtors respectfully submit that such relief should be granted here.

**D.   The Debtors Should Be Authorized To Continue Intercompany Transactions.**

58.   As described above, the Debtors' cash management system streamlines operations, creates efficiencies, enhances corporate controls, and saves the expense associated with running a separate cash

management system for each member of the corporate
enterprise.  In the ordinary course of the Debtors'
respective businesses, the Debtors and the Non-Debtor
Subsidiaries have provided a number of services to and
engaged in intercompany transactions with each other
(collectively, the "Intercompany Transactions").  The
Intercompany Transactions cover a variety of items,
depending on the entity, including (without limitation)
dividends and intercompany payables and/or receivables.
The Intercompany Transactions are reflected in the
individual entities' books.

59.  This Court may grant the relief requested
herein under sections 105(a) and 363(b) of the
Bankruptcy Code.  Section 105(a) grants broad authority
to bankruptcy courts to enforce the provisions of the
Bankruptcy Code under equitable common law doctrines,
providing, in relevant part, that "[t]he court may issue
any order, process or judgment that is necessary or
appropriate to carry out the provisions of this title."
11 U.S.C. § 105(a).  Section 363(b)(1) of the Bankruptcy
Code authorizes the trustee to use property of the

estate other than in the ordinary course of business
after notice and a hearing.   11 U.S.C. § 363(b)(1).

60.   Courts have held that "there must be some
articulated business justification" for using, selling,
or leasing property out of the ordinary course of
business "before the bankruptcy judge may order such
disposition under section 363(b)." Committee of Equity
Security Holders v. Lionel Corp. (In re Lionel Corp.),
722 F. 2d 1063, 1070 (2d. Cir. 1983); see also The Dai-
Ici Kangyo Bank Ltd. v. Montgomery Ward Holding Corp.
(In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153
(D. Del. 1999) ("In determining whether to authorize the
use, sale or lease of property of the estate . . .
courts require the debtor to show that a sound business
purpose justifies such actions").  In evaluating whether
a sound business purpose exists, "courts consider a
variety of factors which essentially represent a
business judgment test." Id. (internal quotations and
citations omitted).

61.   Although the Debtors and the Non-Debtor
Subsidiaries routinely engaged in Intercompany
Transactions prior to the Petition, out of an abundance

of caution, the Debtors seek the relief requested herein.

In the event Court authority is necessary, the Debtors

believe that continuing the Intercompany Transactions is

in their business judgment because, among other reasons

discussed herein, the Intercompany Transactions reduce

the Debtors' administrative costs and facilitate the

satisfaction of the Debtors' obligations and are

integral to the Debtors' and the Non-Debtor

Subsidiaries' daily operations.

62.  Accordingly, the Debtors request

authority to continue the Intercompany Transactions

postpetition[3] and submit that continuation of the

Intercompany Transactions is an exercise of their sound

business judgment and is in the best interests of the

Debtors' estates and their creditors.

63.  Courts frequently have authorized debtors

to continue their prepetition intercompany funding

---

[3]     Because the Debtors engaged in the Intercompany Transactions
        on a regular basis prior to the Petition Date and such
        transactions are common for enterprises such as the Debtors,
        the Debtors believe that such transactions are ordinary course
        within the meaning of Bankruptcy Code section 363(c)(1), and
        thus do not require the Court's approval.  Nonetheless, out of
        an abundance of caution, the Debtors are seeking express
        authority to engage in such transactions.

practices after commencement of chapter 11 cases.  <u>See</u>,

<u>e.g.</u>, <u>In re Movie Gallery, Inc., et al.</u>, Case No. 07-

33849 (Bankr. E.D. Va. Oct. 17, 2007); <u>In re Storehouse,

Inc.</u>, Case No. 06-11144 (Bankr. E.D. Va. Sept. 20, 2006);

<u>In re Rowe Furniture, Inc.</u>, Case No. 06-11143 (Bankr.

E.D. Va. Sept. 20, 2006); <u>In re The Rowe Cos.</u>, Case No.

06-11142 (Bankr. E.D. Va. Sept. 20, 2006).

**E.    Intercompany Claims Should Be Afforded
       Superpriority Status Under Bankruptcy Code Section
       364(c)(1).**

64.  To ensure that each individual Debtor

will not fund the operations of another entity at the

expenses of such Debtor's creditors, the Debtors request

that all claims arising from Intercompany Transactions

(the "Intercompany Claims") against a Debtor by another

Debtor arising after the Petition Date be accorded

superpriority administrative expense status, subject and

subordinate only to other valid liens in existence as of

the Petition Date or granted pursuant to a post-petition

debtor in possession financing facility.  If

Postpetition Intercompany Claims are accorded

superpriority status, pursuant to section 364(c)(1),

each individual Debtor on whose behalf another Debtor

has utilized funds or incurred expenses will continue to

bear ultimate repayment responsibility, thereby

protecting the interests of each Debtor's creditors.[4]

65.   Accordingly, the Court should grant

superpriority administrative expense status to the

Intercompany Claim.

66.   This Court and other courts have granted

the same or similar relief in other large chapter 11

cases.   See, e.g., In re Movie Gallery, Inc., et al.,

Case No. 07-33849 (SSM)(Bankr. E.D. Va. Oct. 17, 2007);

In re Dura Auto. Sys., Inc., No. 06-11202 (KJC) (Bankr.

D. Del. Nov. 20, 2006); In re J.L. French Auto. Castings,

Inc., Case No. 06 10119 (MRW) (Bankr. D. Del. Mar. 9,

2006).

**F.    The Debtors Will Incur Immediate and Irreparable
        Harm If They Are Not Permitted To Continue To Use
        Their Cash Management System and Continue
        Intercompany Transactions.**

67.   The relief requested is also warranted

under Bankruptcy Rule 6003, which provides:

---

[4]     Nothing herein constitutes a request to validate the nature or
        amount of any Intercompany Transaction or Intercompany Claim,
        whether arising prepetition or postpetition.

> Except to the extent that relief is necessary
> to avoid immediate and irreparable harm, the
> court shall not, within 20 days after the
> filing of the petition, grant relief regarding
> the following: . . . (b) a motion to use, sell,
> lease, or otherwise incur an obligation
> regarding property of the estate, including a
> motion to pay all or part of a claim that
> arose before the filing of the petition, but
> not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

68.   No court within the Fourth Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision.[5]   However, the Fourth Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions.   In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.   See, e.g., Hughes Network Systems, Inc. v. Interdigital Communications Corp., 17

---

[5]   Although there is not direct authority concerning Bankruptcy Rule 6003 in the Fourth Circuit, at least one bankruptcy court, applying Bankruptcy Rule 6003, concluded that first-day relief in a similar context was warranted because such relief was necessary to avoid irreparable harm.   See In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).

F.3d 691, 694 (4th Cir. 1994).  Further, the harm must

be shown to be actual and imminent, not speculative or

unsubstantiated.  See, e.g., Scotts Co. v. United

Industries Corp., 315 F.3d 264, 283, (4th Cir. 2002)

(citing Direx Israel, Ltd. v. Breakthrough Medical Corp.,

952 F.2d 802, 812 (4th Cir. 1991)).

69.  To the extent that the requirements of

Bankruptcy Rule 6003 are applicable to the relief

requested in the Motion, the Debtors submit that for the

reasons already set forth herein, the relief requested

in this Motion is necessary to avoid immediate and

irreparable harm as defined by the Fourth Circuit Court

of Appeals.

70.  Accordingly, the Court should allow the

for the continued use of the Debtors' cash management

system and Intercompany Transactions requested herein.

**NOTICE**

71.  Notice of this Motion will be given to:

(i) the Office of the United States Trustee for the

Eastern District of Virginia; (ii) counsel to the agent

for Debtors' postpetition lenders; (iii) counsel to the

agent for the Debtors' prepetition lenders; (iv) the

Debtors' top fifty (50) largest unsecured creditors on a consolidated basis; and (v) the Banks.  The Debtors submit that, under the circumstances, no other or further notice of the Motion is required.

### WAIVER OF MEMORANDUM OF LAW

72.  Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

73.  No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, granting the relief requested in the Motion and such further relief as may be just and proper.

Dated: November 10, 2008
　　　Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

                    - and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

                    - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and
Debtors in Possession

Gregg M. Galardi, Esq.           Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.          Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square                901 E. Cary Street
PO Box 636                       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

```
- - - - - - - - - - - - - - x
In re:                      :  Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :  Case No. 08-
et al.,                     :
                            :  Jointly Administered
            Debtors.        :
- - - - - - - - - - - - - - x
```

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 AND FED. R.
BANKR. P. 6003 (I) AUTHORIZING CONTINUED MAINTENANCE OF
EXISTING BANK ACCOUNTS, (II) AUTHORIZING CONTINUED USE
OF EXISTING BUSINESS FORMS, (III) AUTHORIZING CONTINUED
USE OF EXISTING CASH MANAGEMENT SYSTEM, (IV) AUTHORIZING
INTERCOMPANY TRANSACTIONS AND (V) GRANTING SUPERPRIORITY
CLAIM STATUS TO ALL POSTPETITION INTERCOMPANY CLAIMS**

Upon the motion (the "Motion")[1] of the Debtors

for an Order, pursuant to Bankruptcy Code sections 105

---

[1]    Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Motion.

and 363 and Bankruptcy Rule 6003, (i) authorizing, but
not directing, continued maintenance of existing bank
accounts, and authorizing a waiver of certain operating
guidelines relating to bank accounts, (ii) authorizing,
but not directing, continued use of existing business
forms, (iii) authorizing, but not directing, continued
use of existing cash management system, (iv) authorizing,
but not directing, intercompany transactions among the
Debtors, and (v) granting superpriority administrative
expense claim status to all postpetition intercompany
transactions; and upon the Besanko Declaration; and due
and sufficient notice of the Motion having been given
under the particular circumstances; and it appearing
that no other or further notice need be provided; and it
appearing that the relief requested by the Motion is in
the best interests of the Debtors, their estates, their
creditors, and other parties in interest; and after due
deliberation thereon and sufficient cause appearing
therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.   The Motion is GRANTED as provided herein.

**A.   Maintenance of Bank Accounts.**

2.   Pursuant to sections 105 and 363 of the
Bankruptcy Code, the Debtors are authorized and directed

2

to (i) designate, maintain, and continue to use any and all of their respective store depository, credit card depository, other depository, concentration, disbursement, payment, operating, and other accounts (collectively, the "Prepetition Bank Accounts") in existence as of the Petition Date, with the same account numbers, including the accounts identified in <u>Exhibit A</u> annexed hereto; (ii) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the Eastern District of Virginia (such new accounts, together with the Prepetition Bank Accounts, hereinafter the "Bank Accounts"); and (iii) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors in possession; <u>provided</u>, <u>however</u>, that the Debtors may only open new Bank Accounts with Banks that agree to be bound by the terms of this Order and, in particular, the Debtors' cash management system.

**B.    Use of Business Forms.**

3.    The Debtors are authorized to continue to use their existing business forms and checks without alteration or change and without the designation "Debtor in Possession" or a "debtor in possession case number"

3

imprinted upon them.  To the extent the Debtors open or
close bank accounts, they shall provide notice to the
United States Trustee and the pre- and post-petition
lenders.  Any new check stock used by the Debtors shall
contain the designation "Debtor in Possession".

**C.  Cash Management System.**

4.   The Debtors are authorized and directed
to continue to use their existing cash management system
and shall maintain through the use thereof detailed
records reflecting all transfers of funds under the
terms and conditions provided for by the existing
agreements with the institutions participating in the
Debtors' cash management system, except as modified by
this Order.  In connection with the ongoing utilization
of their cash management system, the Debtors shall
continue to maintain records with respect to all
transfers of cash so that all transactions may be
readily ascertained, traced, and recorded properly.

5.   After the Petition Date, and subject to
the terms of this Order, all Banks at which the Bank
Accounts are maintained are authorized and directed to
continue to administer the Bank Accounts as such
accounts were maintained prepetition, without

interruption and in the usual and ordinary course, and to pay any and all checks, wire transfers, electronic funds transfers, or other items presented, issued, or drawn on the Bank Accounts; provided, further, that the Bank Accounts shall be administered in accordance with the Debtors' obligations under debtor-in-possession financing facility (the "DIP Facility") such that, unless otherwise agreed to by the Debtors' postpetition lenders, all amounts shall be upstreamed daily to Bank of America for application against the Debtors' postpetition obligations under and in accordance with the DIP Facility; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored.

6.   Each Bank that maintains a disbursement account shall implement reasonable handling procedures designed to effectuate the terms of this Order.  No Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Order either (i) at the

direction of the Debtors to honor such prepetition check
or item, (ii) in the good-faith belief that the Court
has authorized such prepetition check or item to be
honored, or (iii) as a result of a good faith error made
despite implementation of such handling procedures,
shall be deemed to be liable to the Debtors or their
estates or otherwise in violation of this Order.

7.    Subject to the provisions of this Order,
the Banks are authorized and directed to honor all
representations from the Debtors as to which checks
should be honored or dishonored.

8.    To the extent applicable, the Court finds
and determines that the requirements of Bankruptcy Rule
6003 are satisfied and that the relief requested is
necessary to avoid immediate and irreparable harm.

**D.    Intercompany Transactions.**

9.    The Debtors and the Non-Debtor
Subsidiaries are authorized to continue to engage in
Intercompany Transactions necessary to execute the cash
management system and manage the day-to-day operations
of their businesses, and the Debtors and the Non-Debtor
Subsidiaries shall continue to maintain records with
respect to all transfers of cash (including pursuant to

10.    Pursuant to section 364(c)(1) of the
Bankruptcy Code all Intercompany Claims arising from
Intercompany Transactions between and among the Debtors
and the Non-Debtor Subsidiaries after the Petition Date
shall be accorded priority over any and all
administrative expenses of the kind specified in
sections 503(b) and 507(b) of the Bankruptcy Code,
subject and subordinate only to (i) other valid liens in
existence as of the Petition Date or granted in
connection with any post-petition debtor in possession
financing granted by this Court and (ii) liens and
superpriority administrative expenses granted to the
prepetiton lenders as adequate protection.

11.    The Debtors are hereby authorized to
execute any additional documents incident to the relief
granted pursuant to this Order.

12.    Notwithstanding Rule 6004 of the Federal
Rules of Bankruptcy Procedure (to the extent applicable),
this Order shall be effective and enforceable
immediately upon entry hereof.

7

13.   The Debtors shall serve a copy of this

Order on all of the Banks within five (5) business days

of the entry of this Order.

14.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

15.   This Court retains jurisdiction to hear

and determine all matters arising from or related to the

implementation interpretation of this Order.

Dated:  Richmond, Virginia
        November 10, 2008


_____

UNITED STATES BANKRUPTCY JUDGE

8

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

I hereby certify that notice of the Debtors' intent to seek entry of the foregoing proposed order was provided to the parties identified in the Motion and copy of this proposed order was provided to the Office of the United States Trustee for the Eastern District of Virginia prior to submission to this Court.

/s/ Douglas M. Foley

10

**EXHIBIT A**

**(List of Deposit Accounts)**

**Exhibit A**
List of Bank Accounts

| Bank | Debtor | Account Number | Purpose |
|---|---|---|---|
| American Savings Bank<br>**Attn:** Mel Yamamoto<br>677 Ala Noana Blvd.<br>Honolulu, HI  96813<br>Tel:    (808) 539-7811<br>Fax:  (808) 531-0277 | Circuit City Stores, Inc. | xxxxx6380 | Store Depository |
| AmSouth/Regions<br>**Attn:** Dawn Smith<br>1900 5th Avenue, North 23rd Floor<br>Birmingham, AL  35203<br>Tel:    (205) 264-5222<br>Fax:  (205) 307-4130 | Circuit City Stores, Inc. | xxxxx3210 | Store Depository |
| Banco Popular<br>**Attn:** Amarilis Ginnes<br>209 Ponce de Leon Ave.<br>Popular Center Building, Floor 6<br>Hato Rey, Puerto Rico  00917<br>Tel:    (787) 765-9800 (ext. 5800)<br>Fax: (787) 756-5055 | Circuit City Stores Puerto Rico LLC | xxxxx5139<br>xxxxx5120<br>xxxxx5147 | Operating Account<br>Depository Account<br>Payroll Account |
| Bank of America<br>**Attn:** Jay Norris<br>101 South Tryon Street<br>Charlotte, NC  28255<br>Tel:    (704) 387-3035<br><br>Circuit City Global Sourcing Accounts<br>Attn: Darlene Holtz<br>201 East Washington | Circuit City Stores, Inc. | xxxxx9967<br>xxxxx3301<br><br>xxxxx5447<br>xxxxxxx1020<br><br><br>xxxxxxx1012 | Store Depository<br>Credit Facility Funding Account (Z-line)<br>Sky Venture Account<br>Circuit City Global Sourcing U.S. Dollar Account<br>Circuit City Global Sourcing HK Dollar Account |

| Bank | Debtor | Account Number | Purpose |
|---|---|---|---|
| Collier Center, 22nd Fl<br>Phoenix, AZ 85004<br>Tel:    (602) 523-2141<br>Fax: (701) 388-0959 | | xxxxxxxx1038 | Circuit City Global Sourcing HK Dollar PC Account |
| | | xxxxxxxx2036 | Circuit City Global Sourcing TW Dollar Account |
| | Circuit City Stores West Coast, Inc. | xxxxxx0844 | Circuit City Datamailer (Payroll) |
| | | xxxxxx1029 | Concentration Account for Payroll Paychecks |
| | | xxxxxx1034 | Operating Account |
| | | xxxxxx7748 | Payroll Account (ZBA) |
| Chase<br>**Attn:** Christie Donahue<br>50 Rowes Wharf, 4th Floor<br>Boston, MA  02110<br>Tel:    (617) 310-0766 | Circuit City Stores, Inc. | xxxxx7244 | Store Depository |
| | | xxxxx0266 | Empire Blue Cross/Payment of Medical Claims |
| FifthThird Bank<br>**Attn:** Tom Galbo<br>114 Anderson Farm Ct.<br>Charlotte, NC  28117<br>Tel:    (704) 662-9490<br>Fax: (704) 892-1026 | Circuit City Stores, Inc. | xxxx6916 | Credit Card |
| Suntrust<br>**Attn:** Donna Smith<br>919 East Main St., 22nd Floor<br>Richmond, VA  23219<br>Tel:    (804) 782-7557<br>Fax: (804) 782-5566 | Circuit City Stores, Inc. | xxxxxx3706 | Concentration Account |
| | | xxxxxx6660 | E/P Disbursement |
| Wachovia<br>**Attn:** Parshant Dhiman<br>301 South Tryon Street, NC 5710<br>Charlotte, NC 28288-0013<br>Tel:    (704) 383-0803<br>Fax: (704) 805-7171 | Circuit City Stores, Inc. | xxxxxxxxx5100 | Store Depository |
| | | xxxxxxxxx9620 | American Express Credit Card |
| | | xxxxxxxxx4767 | Corporate Jet Account |
| | | xxxxxxxxx9993 | Deposit Account |
| | | xxxxxxxxx9858 | Tourmalet Corp. - LLC Tax Payments |
| | | xxxxxxxxx9528 | Ventoux International - Holding Company Tax Payments, Intercompany Interest |
| | | xxxxxxxxx0950 | Lockbox |

| Bank | Debtor | Account Number | Purpose |
|---|---|---|---|
| | | xxxxxxxxx4038 | Direct Deposit Payroll Settlement |
| | | xxxxxxxxx5191 | Empire Blue Cross |
| | | xxxxxxxxx7073 | Extended Service Contract Warranty Payments |
| | | xxxxxxxxx4528 | Fifth Third Bankcard |
| | | xxxxxxxxx3099 | Fifth Third Check Collection – gift card purchases over the web with gift cards |
| | | xxxxxxxxx8908 | HFC third party financing sales commissions |
| | | xxxxxxxxx1509 | Main Concentration/Operating Account |
| | | xxxxxxxxx6031 | Music Payables |
| | | xxxxxxxxx9175 | Purchasing Co., LLC Main Operating Account |
| | | xxxxxxxxx0992 | Purchase Co., LLC Purchase EP disbursement |
| | | xxxxxxxxx1107 | Reverse Affiliates Lockbox |
| | | xxxxxxxxx1048 | Sales Receivables Lockbox |
| | | xxxxxxxxxx6044 | Service Payables |
| | | xxxxxxxxx2189 | Payments from Sublease Tenants |
| | | xxxxxxxxx9133 | Trading Circuits – internet sales of merchandise not sold in stores |
| | | xxxxxxxxx6733 | Vendor Disbursements |
| Wells Fargo<br>**Attn:** Ryan Carlson<br>MAC N9305-052, 6th & Marquette<br>Minneapolis, MN  55479<br>Tel:     (612) 667-9566<br>Fax:  (612) 344-1001 | Circuit City Stores, Inc. | xxxxx4672 | Store Depository |

**EXHIBIT B**

List of Investment Accounts

| Bank | Debtor | Account Number |
|---|---|---|
| Bank of America/CRP Securities, LLC<br><br>**Attn:** Laura Bynum<br>600 Peachtree St. NE<br>4th Floor<br>Atlanta, GA  30308<br>Tel:     (404) 607-4943<br>Fax:     (404) 607-6624 | Circuit City Stores, Inc. | xx7458 |
| Fifth Third Securities, Inc.<br><br>**Attn:** J.B. Ward<br>38 Fountain Square Plaza<br>Cincinnati, OH  45263<br>Tel:     (513) 534-3072<br>Fax:  (513) 579-6246 | Circuit City Stores, Inc. | xxxxxx9774 |
| J.P. Morgan Securities, Inc.<br><br>**Attn:** James M. Griffin<br>270 Park Ave.<br>8th Floor<br>New York, NY  10117<br>Tel:     (212) 834-2300<br>Fax:  (212) 332-4617 | Circuit City Stores, Inc. | xx2526 |

| Bank | Debtor | Account Number |
|---|---|---|
| Merrill Lynch Global Institutional Advisory Division<br><br>**Attn:** Scott Dorsey<br>100 Jericho Quadrangle<br>P.O. Box 787<br>Jericho, NY  11753<br>Tel:     (516) 827-3283<br>Fax:    (516) 935-5330 | Circuit City Stores, Inc. | xxxx07Z07 |
| RBC Dain Rauscher<br><br>**Attn:** Paul Kitzinger<br>100 Second Ave. South<br>Suite 800<br>St. Petersburg, FL  33701<br>Tel:     (727) 502-3634 | Circuit City Stores, Inc. | xxxxxxxxx1817 |
| UBS Financial Services, Inc.<br><br>**Attn:** Steven Hayden<br>33 South 6th Street<br>Suite 3737<br>Minneapolis, MN  55402<br>Tel:     (612) 371-4129<br>Fax:    (612) 371-4117 | Circuit City Stores, Inc. | xxxx3160 |

| Bank | Debtor | Account Number |
|---|---|---|
| Wachovia Bank & Securities<br><br>**Attn:** Eddie Tugman<br>One Wachovia Center<br>NC 0602<br>Charlotte, NC  28288<br>Tel:     (704) 374-4164<br>Fax:    (704) 374-3375 | Circuit City Stores, Inc. | xxxx9008 |