Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08 -_____ (____)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**APPLICATION OF DEBTORS FOR ORDER UNDER 28 U.S.C. § 156(c)
AND BANKRUPTCY RULE 2002(f) APPROVING AGREEMENT WITH
KURTZMAN CARSON CONSULTANTS LLC AND APPOINTING AS CLAIMS,
NOTICING, AND BALLOTING AGENT**

          The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1]

-----------------------

[1]       The Debtors and the last four digits of their respective
          taxpayer identification numbers are as follows: Circuit City
          Stores, Inc. (3875), Circuit City Stores West Coast, Inc.

                                                        *(cont'd)*

hereby apply (the "Application") to this Court for entry of an order, under 28 U.S.C. § 156(c), as supplemented by Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Debtors' agreement with Kurtzman Carson Consultants LLC ("KCC") and appointing KCC as claims, noticing, and balloting agent.  In support of the Application, the Debtors rely upon and incorporate by reference the Declaration of Michael J. Frishberg, Director of Restructuring Services of KCC, annexed hereto as <u>Exhibit A</u> (the "Frishberg Declaration") and the Declaration of Bruce H. Besanko, Executive Vice President and Chief Financial Officer of Circuit City Stores, Inc., in Support of Chapter 11 Petitions and First Day Pleadings (the "Besanko Declaration"), filed concurrently herewith. In further support of the Application, the Debtors respectfully represent:

---

*(cont'd from previous page)*

(0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider
this Application under 28 U.S.C. §§ 157 and 1334.  This
is a core proceeding under 28 U.S.C. § 157(b).  Venue of
these cases and this Application in this district is
proper under 28 U.S.C. §§ 1408 and 1409.  The statutory
predicates for the relief requested herein is 28 U.S.C.
§ 157(c), as supplemented by Bankruptcy Rule 2002(f).

**BACKGROUND**

2.    On the date hereof (the "Petition Date"),
the Debtors filed voluntary petitions in this Court for
relief under chapter 11 of the Bankruptcy Code.  The
factual background regarding the Debtors, including
their business operations, their capital and debt
structure, and the events leading to the filing of these
bankruptcy cases, is set forth in detail in the Besanko
Declaration, filed concurrently herewith and fully
incorporated by reference.[2]

3.    The Debtors continue to manage and
operate their businesses as debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

---

[2]    Capitalized terms not otherwise defined herein shall have the
meanings ascribed to them in the Besanko Declaration.

4.    No trustee or examiner has been appointed in these chapter 11 cases, and no committees have yet been appointed or designated.

## RELIEF REQUESTED

5.    By this Application, the Debtors seek entry of an order authorizing them to retain and employ KCC as claims, noticing, and balloting agent (the "Claims, Noticing, and Balloting Agent") pursuant to the terms and conditions set forth in the agreement (the "KCC Agreement") attached hereto as <u>Exhibit B</u> to, among other tasks, (i) distribute required notices to parties-in-interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claims filed in these chapter 11 cases, (iii) tabulate acceptances and rejections of the Debtors' plan(s) of reorganization, and (iv) provide such other administrative services that the Debtors, the Clerk, or the Court may require.

## QUALIFICATIONS

6.    The Debtors have thousands of creditors, potential creditors, and parties in interest to whom certain notices, including notice of these chapter 11 cases, will be sent.  The size of the Debtors' creditor body makes it impracticable for the Clerk of the Court

4

(the "Clerk") to undertake, without assistance, the task of sending notices to creditors and other parties in interest.  In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors respectfully submit that appointment of KCC as the Claims, Noticing, and Balloting Agent is (i) the most effective and efficient manner by which to give notice and provide solicitation services in these cases and (ii) necessary and in the best interests of both the Debtors' estates and their creditors.  Authorizing the relief requested herein on an expedited basis is accordingly appropriate in these cases.

7.   KCC is a data processing firm that specializes in chapter 11 administration, consulting, and analysis, including noticing, claims processing, voting, and other administrative tasks in chapter 11 cases.  The Debtors wish to engage KCC to send out certain designated notices and to maintain claims files and a claims and voting register.  The Debtors believe that such assistance will expedite service of notices, streamline the claims administration process, and permit the Debtors to focus on their reorganization efforts.

8.    The Debtors believe that KCC is well qualified to provide such services, expertise, consultation, and assistance.  As set forth in the Frishberg Declaration, KCC has assisted and advised numerous chapter 11 debtors in connection with noticing, claims administration and reconciliation, and administration of plan votes.  KCC has provided identical or substantially similar services in other chapter 11 cases.  Most recently, KCC has provide services in the following cases: <u>In re Archway Cookies LLC, et al.</u>, Case No. 08-12323 (Bankr. D. Del. 2008); <u>In re Washington Mutual, Inc.</u>, et al., Case No. 08-12229 (Bankr. D. Del. 2008); <u>In re Motor Coach Industries International, Inc., et al.</u>, Case No. 08-12136  (Bankr. D. Del. 2008); <u>In re Boscov's, Inc., et al.</u>, Case No. 08-11637 (Bankr. D. Del. 2008); <u>In re Mervyn's Holdings, LLC, et al.</u>, Case No. 08-11586 (Bankr. D. Del. 2008); and <u>In re Linens Holding Co., et al.</u>, Case No. 08-10832 (CSS) (Bankr. D. Del. 2008).

## APPLICABLE AUTHORITY

9.    Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Under Bankruptcy Rule 2002(f), the Court may direct that some

person other than the Clerk give notice of the various

matters described below.

10.   Moreover, 28 U.S.C. § 156(c), which

governs the staffing and expenses of the Bankruptcy

Court, states in pertinent part:

> Any court may utilize facilities or services,
> either on or off the court's premises, which
> pertain to the provision of notices, dockets,
> calendars, and other administrative
> information to parties in cases filed under
> the provisions of title 11, United States Code,
> where the cost of such facilities or services
> are paid for out of the assets of the estate
> and are not charged to the United States.  The
> utilization of such facilities or services
> shall be subject to such conditions and
> limitations as the pertinent circuit council
> may prescribe.

28 U.S.C. § 156(c).

11.   The engagement of KCC as the Claims,

Noticing, and Balloting Agent is therefore expressly

authorized under Bankruptcy Rule 2002 and 28 U.S.C. §

156(c).

### KCC'S DISINTERESTEDNESS

12.   Although the Debtors do not propose to

retain KCC under section 327 of the Bankruptcy Code, to

the best of the Debtors' knowledge, and as disclosed in

the Frishberg Declaration, the members and employees of

KCC (i) do not have any adverse connection with the

Debtors, the Debtors' creditors or any other party in interest or their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, and (ii) do not hold or represent an interest adverse to the Debtors' estates in connection with any matter upon which KCC will be employed.

13.  To the best of the Debtors' knowledge, KCC is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), in that its members and employees

(a)     are not creditors, equity security holders or insiders of the Debtors;

(b)     are not and were not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtors; and

(c)     do not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

14.  KCC represents, among other points, that

(a)     KCC is not and will not be employed by the U.S. government or any federal agency (collectively, the "Government") and will

8

not seek any compensation from the
Government;

(b)     by accepting employment in these chapter
11 cases, KCC waives any right to receive
compensation from the Government;

(c)     KCC is not an agent of the Government and
is not acting on behalf of the
Government;

(d)     KCC will not knowingly misrepresent any
fact to the public; and

(e)     KCC will not employ any past or present
employees of the Debtors for work
involving these chapter 11 cases.

15.     Prior to the Petition Date, KCC performed
certain services for the Debtors.  The Debtors have made
an advance payment to KCC in the amount of $50,000 to be
applied to KCC's final invoice for services rendered and
expenses incurred in these chapter 11 cases (the
"Retainer"); provided, however, that if there remains
any outstanding amount due for services rendered and
expenses incurred by KCC before the filing of the
chapter 11 cases, KCC is entitled to apply the Retainer
to such outstanding amount and the Debtors are required
to replenish the Retainer by wire transfer in the same
amount thus set off.  Upon information and belief, the
Debtors do not owe KCC any amount for services performed
or expenses incurred prior to the Petition Date.

9

## SCOPE OF SERVICES

16.   The Debtors propose to retain KCC on the terms and conditions set forth in the KCC Agreement.

17.   As the Claims, Noticing, and Balloting Agent and at the request of the Debtors or the Clerk's Office, KCC will perform the services listed in the KCC Agreement, if necessary.  Such services include, but are not limited to, the following:

    (a)   Establishing and maintaining the creditor matrix;

    (b)   Serving required notices, including without limitation, (i) notice of the filing of the bankruptcy petitions and the § 341(a) meeting, (ii) notice of the bar date, (iii) notice of claims objections, (iv) notice of hearing of the disclosure statement and confirmation of a plan of reorganization, and (v) any other notices required by the Debtors or the Clerk;

    (c)   Filing with the Clerk an affidavit of service in conformance with Local Rule 5005-1 of the Local Bankruptcy Rules for the Eastern District of Virginia, which includes a copy of the applicable notice, an alphabetical list of persons to whom it was mailed, and the date and manner of service within five (5) business days of such service;

    (d)   Maintaining a copy of the schedules of assets and liabilities and statement of financial affairs that the Debtors filed with the Court (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto and providing assistance in preparing same if requested by the Debtors;

(e)   Notifying all potential creditors of the existence and amount of their respective claims as evidenced by the Schedules;

(f)   Docketing all claims received, maintaining the official claims registers (the "Claims Registers") for each Debtor on behalf of the Clerk, and providing the Clerk with certified duplicate, unofficial Claims Registers on a monthly basis, unless otherwise directed;

(g)   Specifying, in the applicable Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and, if applicable, the agent who filed the claim, (iv) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (v) the asserted amount of the claim, and (vi) the Debtor against which the claim is asserted;

(h)   Relocating all of the actual proofs of claim filed from this Court to KCC not less than weekly;

(i)   Recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001(e);

(j)   Making changes in the Claims Registers pursuant to orders of this Court;

(k)   Providing access to the public for examination of copies of the proofs of claim or proofs of interest filed in these cases without charge during regular business hours;

(l)   Maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon reasonable request by a party in interest or the Clerk;

(m)   Providing such other claims processing, noticing, and related administrative services as the Debtors may require;

11

(n)   Assisting with, among other things,
      solicitation and calculation of votes and
      distribution as required in furtherance of
      confirmation of plan(s) of reorganization;

(o)   Prior to the close of these chapter 11 cases,
      assisting the Debtors in submitting a proposed
      order terminating the services of KCC as the
      Claims, Noticing, and Balloting Agent upon
      completion of its duties and responsibilities
      and upon the closing of these cases; and

(p)   At the close of these cases, boxing and
      transporting all original documents, in proper
      format, as requested by the Clerk's Office.

18.   In addition to the foregoing, the Debtors seek to employ KCC to assist them by acting as solicitation and disbursing agent in connection with the chapter 11 plan process.

19.   The Debtors request authority to compensate and reimburse KCC in accordance with the payment terms, procedures, and conditions set forth in the KCC Agreement for services rendered and expenses incurred in connection with these cases.

20.   The Debtors request that the fees and expenses of KCC incurred in the performance of the above services be treated as an administrative expense of the Debtors' chapter 11 estates and be paid by the Debtors

in the ordinary course of business.[3]  If any dispute
arises between KCC and the Debtors with respect to fees
and expenses, such dispute shall be presented to the
Court for resolution.

21.  As part of the overall compensation
payable to KCC under the terms of the KCC Agreement, the
Debtors have agreed to certain limitations of liability
and indemnification obligations as described in
paragraph IX of the KCC Agreement.

22.  For all of the foregoing reasons, the
Debtors believe that the retention of KCC as the Claims,
Noticing, and Balloting Agent is appropriate and in the
best interests of the Debtors and their estates and
creditors.

## NOTICE

23.  Notice of this Motion will be given to:
(i) the Office of the United States Trustee for the
Eastern District of Virginia; (ii) counsel to the agent
for Debtors' postpetition lenders; (iii) counsel to the
agent for the Debtors' prepetition lenders; and (iv) the

---

[3]      As an administrative agent and an adjunct to the Court, the
Debtors do not believe that KCC is a "professional" whose
retention is subject to approval under Bankruptcy Code
section 327 or whose compensation is subject to approval of
the Court under Bankruptcy Code sections 330 and 331.

Debtors' top fifty (50) largest unsecured creditors on a consolidated basis.  The Debtors submit that, under the circumstances, no other or further notice of the Motion is required.

### WAIVER OF MEMORANDUM OF LAW

24.  Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

25.  No previous request for the relief sought in this Application has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that
the Court enter an order (i) authorizing the Debtors to
retain and employ KCC as the Claims, Noticing, and
Balloting Agent to perform the services described herein
and (ii) granting such other and further relief as is
just and proper.

Dated: November 10, 2008    CIRCUIT CITY STORES, INC., <u>et</u>
      Richmond, Virginia    <u>al.</u>, Debtors and Debtors in
                                   Possession

                                   <u>/s/ Bruce H. Besanko</u>
                                   BRUCE H. BESANKO
                                   Executive Vice President &
                                   Chief Financial Officer

**EXHIBIT A**

(Frishberg Declaration)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                                    :
In re:                              :    Chapter 11
                                    :
CIRCUIT CITY STORES, INC.,          :    Case No. 08 -_____ (____)
et al.,                             :
                                    :
              Debtors.              :    Jointly Administered
- - - - - - - - - - - - - - x

**DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT OF
APPLICATION FOR ORDER UNDER 28 U.S.C. § 156(c) AND
BANKRUPTCY RULE 2002(f) APPROVING AGREEMENT WITH
KURTZMAN CARSON CONSULTANTS LLC AND APPOINTING KURTZMAN
CARSON CONSULTANTS LLC AS CLAIMS, NOTICING, AND
BALLOTING AGENT**

STATE OF VIRGINIA    )
                     )    ss.:
COUNTY OF HENRICO    )

        Michael J. Frishberg makes this Declaration

pursuant to 28 U.S.C. § 1746 and states:

        1.    I am the Director of Restructuring

Services of Kurtzman Carson Consultants LLC ("KCC"),

which maintains an office at 2335 Alaska Avenue, El

Segundo, California, 90245, and I am authorized to

execute this declaration on behalf of KCC.  I submit

this declaration in support of the Application Of

Debtors For Order Under 28 U.S.C. § 156(c) And

Bankruptcy Rule 2002(f) Approving Agreement With KCC And

Appointing KCC As Claims, Noticing, And Balloting Agent

(the "Application"), filed contemporaneously herewith by

the debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors").  Except

as otherwise indicated, I have personal knowledge of the

matters set forth herein and, if called as a witness,

would testify competently thereto.[1]

2.   As agent and custodian of court records,

the services my firm proposes to render to the office of

the Clerk of the Bankruptcy Court for the Eastern

District of Virginia (the "Clerk's Office") and the

Debtors under the terms of the KCC Agreement include, if

necessary, the following:

(a)  Establishing and maintaining the creditor
     matrix;

(b)  Serving required notices, including without
     limitation, (i) notice of the filing of the
     bankruptcy petitions and the § 341(a) meeting,
     (ii) notice of the bar date, (iii) notice of
     claims objections, (iv) notice of hearing of
     the disclosure statement and confirmation of a
     plan of reorganization, and (v) any other
     notices required by the Debtors or the Clerk;

(c)  Filing with the Clerk an affidavit of service
     in conformance with Local Rule 5005-1 of the
     Local Bankruptcy Rules for the Eastern
     District of Virginia, which includes a copy of
     the applicable notice, an alphabetical list of

---

[1]  Certain of the disclosures herein relate to matters within the
     knowledge of other employees at KCC and are based on information
     from them.

2

persons to whom it was mailed, and the date
and manner of service within five (5) business
days of such service;

(d)  Maintaining a copy of the schedules of assets
and liabilities and statement of financial
affairs that the Debtors filed with the Court
(collectively, the "Schedules"), listing the
Debtors' known creditors and the amounts owed
thereto and providing assistance in preparing
same if requested by the Debtors;

(e)  Notifying all potential creditors of the
existence and amount of their respective
claims as evidenced by the Schedules;

(f)  Docketing all claims received, maintaining the
official claims registers (the "Claims
Registers") for each Debtor on behalf of the
Clerk, and providing the Clerk with certified
duplicate, unofficial Claims Registers on a
monthly basis, unless otherwise directed;

(g)  Specifying, in the applicable Claims Register,
the following information for each claim
docketed: (i) the claim number assigned, (ii)
the date received, (iii) the name and address
of the claimant and, if applicable, the agent
who filed the claim, (iv) the
classification(s) of the claim (e.g., secured,
unsecured, priority, etc.), (v) the asserted
amount of the claim, and (vi) the Debtor
against which the claim is asserted;

(h)  Relocating all of the actual proofs of claim
filed from this Court to KCC not less than
weekly;

(i)  Recording all transfers of claims and
providing any notices of such transfers
required by Bankruptcy Rule 3001(e);

(j)  Making changes in the Claims Registers
pursuant to orders of this Court;

(k)  Providing access to the public for examination
of copies of the proofs of claim or proofs of

3

interest filed in these cases without charge during regular business hours;

(l)  Maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon reasonable request by a party in interest or the Clerk;

(m)  Providing such other claims processing, noticing, and related administrative services as the Debtors may require;

(n)  Assisting with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan(s) of reorganization;

(o)  Prior to the close of these chapter 11 cases, assisting the Debtors in submitting a proposed order terminating the services of KCC as the Claims, Noticing, and Balloting Agent upon completion of its duties and responsibilities and upon the closing of these cases; and

(p)  At the close of these cases, boxing and transporting all original documents, in proper format, as requested by the Clerk's Office.

3.    In addition to the foregoing, KCC will assist the Debtors by acting as solicitation and disbursing agent in connection with the chapter 11 plan process.

4.    On behalf of KCC I hereby represent that:

(a)  KCC is not and will not be employed by the U.S. government or any federal agency (collectively, the "Government") and will not seek any compensation from the Government;

(b)  by accepting employment in these chapter 11 cases, KCC waives any right to receive compensation from the Government;

4

(c)   KCC is not an agent of the Government and is not acting on behalf of the Government;

(d)   KCC will not knowingly misrepresent any fact to the public; and

(e)   KCC will not employ any past or present employees of the Debtors for work involving these chapter 11 cases.

5.    KCC is a data processing firm that specializes in chapter 11 administration, consulting, and analysis, including noticing, claims processing, voting, and other administrative tasks in chapter 11 cases.  KCC has assisted and advised numerous chapter 11 debtors in connection with noticing, claims administration and reconciliation, and administration of plan votes.  KCC has provided identical or substantially similar services in other chapter 11 cases.  Most recently, KCC has provide services in the following cases: In re Archway Cookies LLC, et al., Case No. 08-12323 (Bankr. D. Del. 2008); In re Washington Mutual, Inc., et al., Case No. 08-12229 (Bankr. D. Del. 2008); In re Motor Coach Industries International, Inc., et al., Case No. 08-12136  (Bankr. D. Del. 2008); In re Boscov's, Inc., et al., Case No. 08-11637 (Bankr. D. Del. 2008); In re Mervyn's Holdings, LLC, et al., Case No. 08-11586

(Bankr. D. Del. 2008); and In re Linens Holding Co., et al., Case No. 08-10832 (CSS) (Bankr. D. Del. 2008).

6.    To the best of my knowledge, neither KCC nor any employee thereof has any adverse connection with the Debtors, their creditors, or any other party in interest herein.  To the best of my knowledge, neither KCC nor any employee thereof are or were, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtors.  To the best of my knowledge, neither KCC nor any employee thereof represents any interest adverse to the Debtors' estates with respect to the matters upon which KCC is to be engaged.

7.    In performing these services, KCC's rates are at least as favorable as the prices KCC charges in chapter 11 cases in which the firm has been retained to perform similar services.

8.    KCC will comply with all requests of the Clerk of the Court and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

I declare under penalty of perjury under the laws of the United States of America that, to the best

of my knowledge and after reasonable inquiry, the

foregoing is true and correct.

_____

Executed this 10th day of November 2008.

KURTZMAN CARSON CONSULTANTS LLC


_/s/ Michael J. Frishberg_____
Michael J. Frishberg

7

**EXHIBIT B**
(KCC Agreement)



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 4th day of November, 2008, between Circuit City (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.       SERVICES

A.       KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.       KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the KCC Fee Structure.

C.       Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.       The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.       The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

1



# KCC AGREEMENT FOR SERVICES

parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

II.     PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect on the day such services and/or supplies are provided to the Company, in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment.

B.      Company agrees to pay fees set by KCC related to transportation, lodging, meals, publications, printing, postage and other third-party charges, in addition to the hourly consulting fees set forth in the KCC Fee Structure.

C.      In addition to all fees for services and expenses hereunder, Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.      KCC agrees to submit its invoices to the Company monthly, provided, however, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment which will be due and payable upon demand and prior to the performance of services hereunder.  Company agrees that the amount invoiced is due and payable upon its receipt of the invoice.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, notice shall be given to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section



# KCC AGREEMENT FOR SERVICES

156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.       KCC shall receive a retainer in the amount of $50,000 for services to be performed and expenses to be incurred in this matter due upon execution of this Agreement. This shall be an "evergreen retainer;" invoices shall be drawn down from the retainer and Company's payments shall then be deposited into the retainer to return the retainer to its original $50,000.

III.     RIGHTS OF OWNERSHIP

A.       The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.       Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for Company's use during and in connection with the services provided by KCC under this Agreement.

IV.     NON-SOLICITATION

Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.      CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3



# KCC AGREEMENT FOR SERVICES

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined below).  As used herein, the term "Cause" means (i) gross negligence or wanton misconduct of KCC that causes serious and material harm to the Company's reorganization under Chapter 11 of the Bankruptcy Code or (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for an orderly transfer.  Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  KCC may dispose of the data or media, and be reimbursed for the expense of such disposition, after giving the Company thirty (30) days' notice if the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement, other than Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party.  The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to Company or any person claiming through or under Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to Company and actually paid to KCC for the services contemplated under the Agreement.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.    Company is responsible for the accuracy of the programs and data it or any Company Party submits for processing to KCC and for the output.  Company agrees to initiate and maintain backup files that would allow Company to regenerate or duplicate all programs and data submitted by Company to KCC.

D.    Company agrees that except as set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

5



# KCC AGREEMENT FOR SERVICES

X.      FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.     INDEPENDENT CONTRACTORS

Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC          Company
2335 Alaska Ave.                         Address
El Segundo, CA  90245                    City, ST Zip
Attn:  James Le                          Attn:
Tel: (310) 823-9000                      Tel:
Fax: (310) 823-9133                      Fax:

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or



# KCC AGREEMENT FOR SERVICES

law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of Company and an officer of KCC.

XV.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly owned subsidiary of KCC.

XVI.    ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof.  For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in the Los Angeles County, State of California.

XVII.   ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

_____
BY:                              DATE:
TITLE:


Company

_____
BY:                              DATE:
TITLE:

7



KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of Company and an officer of KCC.

XV.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly owned subsidiary of KCC.

XVI.    ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in the Los Angeles County, State of California.

XVII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: _Michael T. Frischberg_    DATE: 11/4/08
TITLE: _Director of Restructuring_

Company

BY: _Reggie Hedgebeth_    DATE: 10/30/08
TITLE: _SVO + GC_

7

Gregg M. Galardi, Esq.     Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.    Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                  One James Center
One Rodney Square        901 E. Cary Street
PO Box 636               Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

       - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                            :   Chapter 11
                            :
In re:                      :
                            :   Case No. 08-_____ (____)
                            :
CIRCUIT CITY STORES, INC.,  :
et al.,                     :
                            :   Jointly Administered
                            :
              Debtors.      :
- - - - - - - - - - - - - - x
```

**ORDER UNDER 28 U.S.C. § 156(c) AND BANKRUPTCY RULE
2002(f) APPROVING AGREEMENT WITH KURTZMAN CARSON
CONSULTANTS LLC AND APPOINTING KURTZMAN CARSON
CONSULTANTS LLC AS CLAIMS, NOTICING, AND BALLOTING AGENT**

Upon the application (the "Application") of

the Debtors[1] for an order, pursuant to 28 U.S.C. § 156(c)

---

[1]  The Debtors and the last four digits of their respective
taxpayer identification numbers are as follows: Circuit City
Stores, Inc. (3875), Circuit City Stores West Coast, Inc.

*(cont'd)*

and Bankruptcy Rule 2002(f,) approving agreement with

Kurtzman Carson Consultants LLC ("KCC") and appointing

KCC as claims, noticing, and balloting agent; and the

Court having reviewed the Declaration of Bruce H.

Besanko, Executive Vice President and Chief Financial

Officer of Circuit City Stores, Inc., in Support of

Chapter 11 Petitions and First Day Pleadings (the

"Besanko Declaration")[2] and Declaration of Michael J.

Frishberg in Support of Application for Order under 28

U.S.C. § 156(c) and Bankruptcy Rule 2002(f) approving

agreement with KCC and appointing KCC as claims,

noticing, and balloting agent (the "Frishberg

Declaration"); and the Court being satisfied with the

representations made in the Application and the

Frishberg Declaration that (i) neither KCC nor any

employee thereof has any connection with the Debtors,

---

*(cont'd from previous page)*

    (0785), InterTAN, Inc. (0875), Ventoux International, Inc.
(1838), Circuit City Purchasing Company, LLC (5170), CC
Aviation, LLC (0841), CC Distribution Company of Virginia, Inc.
(2821), Circuit City Properties, LLC (3353), Kinzer Technology,
LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco
Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs,
Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116),
Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and
Circuit City Stores PR, LLC (5512).  The address for Circuit
City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the
address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]    Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Application.

their creditors, or any other party in interest herein,

(ii) they are "disinterested persons," as that term is

defined in Bankruptcy Code section 101(14), as modified

by Bankruptcy Code section 1107(b), (iii) they do not

hold or represent any interest adverse to the Debtors'

estates, except as may be set forth herein and in the

Frishberg Declaration, and (iv) the employment of KCC is

necessary and is in the best interests of the Debtors,

their estates, their creditors, and other parties in

interest; and it appearing that proper and adequate

notice of the Application has been given and that no

other or further notice is necessary; and upon the

record herein; and after due deliberation thereon; and

good and sufficient cause appearing therefor, it is

hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Application is GRANTED as set forth

herein.

2.    KCC is appointed as the Claims, Noticing,

and Balloting Agent in these chapter 11 cases, pursuant

to 28 U.S.C. § 156(c), as supplemented by Bankruptcy

Rule 2002(f), and is authorized to perform the services

set forth in the Application as requested by the office

3

of the Clerk of the Bankruptcy Court for the Eastern District of Virginia or the Debtors on the terms and conditions of the KCC Agreement, attached to the Motion as Exhibit B.

3.    The terms of the KCC Agreement are approved.

4.    The fees and expenses of KCC incurred in the performance of services in accordance with the KCC Agreement shall be treated as administrative expenses of the Debtors' chapter 11 estates and be paid by the Debtors in the ordinary course of business in accordance with the terms of the KCC Agreement.

5.    The Debtors and KCC are hereby authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

6.    The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

7.    This Court retains jurisdiction to hear

and determine all matters arising from or related to the

implementation or interpretation of this Order.

Dated:  Richmond, Virginia
        November 10, 2008


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession

5

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

I hereby certify that notice of the Debtors' intent to seek entry of the foregoing proposed order was provided to the parties identified in the Motion and copy of this proposed order was provided to the Office of the United States Trustee for the Eastern District of Virginia prior to submission to this Court.

/s/ Douglas M. Foley