Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                             :
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-_____ (___)
et al.,                      :
                             :   Jointly Administered
            Debtors.         :
                             :
- - - - - - - - - - - - - - x

**MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND
FED. R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE,
HEARING, AND SELL-DOWN PROCEDURES FOR TRADING IN EQUITY
SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1]

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.

hereby move (the "Motion") for the entry of an order (the "Order"), substantially in the form attached hereto, under sections 105, 362 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001 and 3002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) establishing notice and hearing procedures that must be satisfied before certain transfers of equity securities in Circuit City Stores, Inc. ("Circuit City") or of any beneficial interest therein are deemed effective, (ii) establishing notice and sell-down procedures for trading in claims against the Debtors' estates, and (iii) allowing for a hearing with respect to the prospective application of such procedures if any official committee of unsecured creditors appointed in these cases (the "Creditors' Committee") raises a timely objection. In support of the

---

(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

Motion, the Debtors rely upon and incorporate by
reference the Declaration of Bruce H. Besanko, Executive
Vice President and Chief Financial Officer of Circuit
City Stores, Inc., in Support of Chapter 11 Petitions
and First Day Pleadings (the "Besanko Declaration"),
filed with the Court concurrently herewith. In further
support of the Motion, the Debtors respectfully
represent:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider
this Motion under 28 U.S.C. §§ 157 and 1334.  This is a
core proceeding under 28 U.S.C. § 157(b).  Venue of
these cases and this Motion in this district is proper
under 28 U.S.C. §§ 1408 and 1409.  The statutory
predicates for the relief requested herein are
Bankruptcy Code sections 105(a), 362 and 541.  Relief is
warranted under Bankruptcy Rule 3001.

### BACKGROUND

2.    On the date hereof (the "Petition Date"),
the Debtors filed voluntary petitions in this Court for
relief under chapter 11 of the Bankruptcy Code.  The
factual background regarding the Debtors, including

their business operations, their capital and debt
structure, and the events leading to the filing of these
bankruptcy cases, is set forth in detail in the Besanko
Declaration, which is fully incorporated herein by
reference.[2]

3.     The Debtors continue to manage and
operate their businesses as debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

4.     No trustee or examiner has been appointed
in these chapter 11 cases, and no committees have yet
been appointed or designated.

### THE DEBTORS' NET OPERATING LOSSES

5.     The Debtors have recently incurred, and
are currently incurring, significant net operating
losses ("NOLs"). By this Motion, the Debtors seek
authorization to protect and preserve their valuable tax
attributes, including, without limitation, current year
NOLs, NOL carryforwards, and built-in losses in excess
of $470 million (collectively, the "Tax Attributes") by
establishing, pursuant to sections 105(a), 362(a)(3) and

---

[2]   Capitalized terms not otherwise defined herein shall have the
      meanings ascribed to them in the Besanko Declaration.

541 of the Bankruptcy Code, notice and hearing procedures regarding the trading of Circuit City equity securities that must be complied with before such trades or transfers become effective. In addition, the Debtors seek to establish notice and sell-down procedures regarding claims of the Debtors. If no trading restrictions regarding equity securities and no sell-down procedures regarding claims are imposed by this Court, unrestricted trading or transfers of equity securities and claims could severely limit or even eliminate the Debtors' ability to use their Tax Attributes, a valuable asset of the Debtors' estates, and could have significant negative consequences for the Debtors, their estates and the overall reorganization process.

6.    The Tax Attributes are of significant value to the Debtors and their estates because the Debtors can carry forward their NOLs to offset their future taxable income for up to 20 taxable years,[3] thereby reducing their future aggregate tax obligations

---

[3]   See 26 U.S.C. § 172.

and freeing up funds to meet working capital

requirements and service debt. Such NOLs may also be

utilized by the Debtors to offset any taxable income

generated by transactions completed during the Chapter

11 Cases.

　　　　7.　　Specifically, unrestricted trading of

Circuit City claims and equity securities could

adversely affect the Debtors' Tax Attributes if:

> (a) too many 5% or greater blocks of
> equity securities are created or too many
> shares are added to or sold from such blocks,
> such that, together with previous trading by
> 5% shareholders during the preceding three-
> year period, an ownership change within the
> meaning of section 382 of the Internal Revenue
> Code of 1986, as amended ("I.R.C."), is
> triggered prior to consummation, and outside
> the context, of a confirmed chapter 11 plan,
> or

> (b) the beneficial ownership of claims
> against the Debtors that are currently held by
> "Qualified Creditors"[4] under the applicable tax
> regulations is transferred, prior to
> consummation of a plan, and those claims

---

[4]　It is possible that equity will be distributed to holders of
certain classes of claims under a future plan of reorganization.
As discussed below, if a sufficient percentage of the holders of
these claims are not Qualified Creditors (as defined below), then
the Debtors will fail to qualify for relief under the safe harbor
of I.R.C. § 382(l)(5), and the Debtors' ability to use their Tax
Attributes may be severely restricted. The monitoring of, and
possible restrictions on, claims trading proposed herein are
designed to ensure that the claimants who will or may be
receiving stock under the plan are Qualified Creditors.

(either alone or when accumulated with other claims currently held by nonqualified creditors) would be converted under a plan of reorganization into a 5% or greater block of the stock of the reorganized Debtors.[5]

**RELIEF REQUESTED**

8.    To preserve to the fullest extent possible the flexibility to craft a plan of reorganization that maximizes the use of the Tax Attributes, the Debtors seek limited relief that will enable them to closely monitor certain transfers of Circuit City equity securities and, if necessary, require a sell-down of claims, so as to be in a position to act expeditiously if necessary to preserve their Tax Attributes. Thus, the Debtors request that this Court enter an order immediately, thereby preserving the status quo in this regard, and, to the extent necessary, allow for a hearing with respect to the prospective application of such procedures if the Creditors' Committee raises a timely objection.

9.    The ability of a company to use its NOLs and certain other tax attributes to reduce future taxes

---

[5]   As described below, the relief requested herein has been narrowly tailored in order to comply with the Qualified Creditor de minimis rules of the Treasury Regulations.

is subject to certain limitations contained in 26 U.S.C. § 382 ("Section 382"). As a general matter, if a corporation undergoes a change of ownership, Section 382 limits the corporation's ability to use its NOLs and certain other tax attributes to offset future taxable income. Under Section 382, a change of ownership occurs where the percentage of a company's equity held by one or more 5% shareholders increases by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during a three-year rolling testing period.

10.   The general purpose of Section 382 is to prevent a company with taxable income from reducing its tax obligations by acquiring control of a company with built-in tax losses. To achieve this objective, Section 382 limits the amount of taxable income that can be offset by a pre-change loss to the long-term tax exempt bond rate (as published by the Treasury) as of the change-of-control date multiplied by the value of the stock of the loss corporation immediately before the ownership change. Built-in losses recognized during the

five-year period after the change date are subject to similar limitations.

11.   By establishing procedures for continuously monitoring equity-securities trading and for notice and sell-down of claims, the Debtors can preserve their ability to seek substantive relief at the appropriate time, particularly if it appears that trading of equity securities or claims may jeopardize the use of their Tax Attributes. Accordingly, the Debtors request that this Court enter an order establishing procedures for monitoring equity-securities trading and for notice and sell-down of claims and allow for a hearing with respect to the prospective application of such procedures if any Creditors' Committee appointed in these Chapter 11 Cases raises a timely objection.

## BASIS FOR RELIEF

## A.   The Significance Of The Debtors' Tax Attributes

12.   As a result of past and current operations, the Debtors presently have Tax Attributes of approximately $470 million, which amounts are likely to be substantially higher when the Debtors emerge from

Chapter 11. These Tax Attributes could translate into potential future tax savings for the Debtors of approximately $165 million, based on a federal income tax rate of 35%.

13.   Sections 39(a), 59(e), 172(b), and 904(c) of the I.R.C. permit corporations to carry forward Tax Attributes to offset future taxable income and tax liability, thereby significantly improving such corporations' cash position in the future. Thus, the Debtors' Tax Attributes are a valuable asset of the estates, and their availability will facilitate the Debtors' successful reorganization and serve to improve creditor recoveries. The Debtors' ability to use their Tax Attributes, however, could be severely limited under Section 382 as a result of the trading and accumulation of claims against, and equity securities in, the Debtors prior to consummation of a plan of reorganization.

**B.    The Provisions Of I.R.C. § 382**

14.   Section 382 of the I.R.C. limits the amount of taxable income that can be offset by a corporation's NOLs in taxable years (or portions thereof) following an ownership change. Generally, an "ownership

10

change" occurs if the percentage (by value) of the stock

of a corporation owned by one or more five-percent

shareholders has increased by more than 50 percentage

points over the lowest percentage of stock owned by such

shareholders at any time during the three-year testing

period ending on the date of the ownership change.[6]  For

example, an ownership change would occur in the

following situation:

> An individual ("A") owns 50.1% of the stock of
> corporation X ("X"). A sells his 50.1%
> interest to another individual ("B"), who owns
> 5%. Under I.R.C. § 382, an ownership change
> has occurred because B's interest in X has
> increased more than 50 percentage points (from
> 5% to 55.1%) during the testing period. The
> same result would follow even if B owned no X
> stock prior to the transaction with A because
> B both becomes a 5% shareholder and increases
> his ownership by more than 50% percentage
> points during the testing period.

---

[6]  In general, under I.R.C. § 382(g)(4)(A), all stockholders who
individually hold less than 5% of the stock of a company are
deemed to be a single 5% stockholder throughout the three-year
testing period, and transfers between such shareholders are
disregarded for purposes of determining whether an ownership
change has occurred (the "public group rule"). Thus, so long as
50% or more of the stock is owned by less than 5% stockholders
throughout the three-year testing period, there will be no change
of control under I.R.C. § 382. Accordingly, the Debtors do not
seek to impose the requested notice and hearing procedures on
trading by stockholders holding less than 4.75% of Circuit City's
stock; provided, however, that such stockholders do not have an
intent to accumulate a 4.75% or greater block of stock or add or
sell shares to or from such a block.

15.   When an ownership change occurs, I.R.C. §
382 limits the amount of a corporation's income that may
be offset by its "pre-change losses" to an annual amount
equal to the value of the equity of the corporation
prior to the ownership change multiplied by the long-
term tax-exempt rate. See I.R.C. § 382(b). "Pre-change
losses" would include (i) NOLs and (ii) any net
unrealized built-in loss (as defined in I.R.C. §
382(h)(3)). This formulaic limitation under I.R.C. § 382
can severely restrict the ability to use "pre-change
losses" because the value of the stock of a distressed
company may be quite low. By way of illustration, if the
Debtors were to undergo an ownership change today, they
would be permitted to offset with pre-change losses no
more than approximately $2 million of their income in
each post-change tax year, which amount is the current
market capitalization of Circuit City (approximately $42
million, as of November 7, 2008) multiplied by 4.94%
(the approximate long-term tax exempt rate for November
2008). Taxable income in excess of this amount would
generally be taxable to the debtors at a federal income
tax rate of approximately 35%.

16.  Based on the Debtors' current and projected financial condition, it is possible that a plan of reorganization will distribute a majority of the common stock of the reorganized Debtors to creditors of the Debtors in exchange for all or part of their claims. Accordingly, under any realistic plan scenario, the Debtors will likely experience an "ownership change" for purposes of I.R.C. § 382 because the percentage of stock that will be owned by creditors[7] will have increased by more than 50 points over the lowest percentage of the stock of Circuit City held by such persons during the three-year testing period.[8] I.R.C. § 382(g)(1). In such an event, as described more fully below, the Debtors may avail themselves of one of the special relief provisions applicable to an ownership change resulting from a confirmed chapter 11 plan. I.R.C. § 382(l)(5), (6).

---

[7]  As used herein, the term (i) "creditors" means "creditor" as defined in section 101(10) of the Bankruptcy Code, and (ii) "claims" means "claim" as defined in section 101(5) of the Bankruptcy Code.

[8]  The fact that a substantial number of creditors receiving stock pursuant to the plan may own less than 5% of the Debtors' stock upon consummation of a plan of reorganization does not provide relief from I.R.C. § 382; instead the "public group rule" (described above) will aggregate the ownership interests of all such creditor-shareholders and treat them as a new 5% shareholder.

Pursuant to these provisions, the Debtors anticipate that they will be exempt from the limitation set forth in I.R.C. § 382 or, alternatively, that they will benefit from a favorable valuation rule that will cause the amount of their annual limitation under I.R.C. § 382(b) to reflect the expected increase in the value of the Debtors resulting from any surrender or cancellation of creditors' claims in exchange for stock pursuant to the plan. Id.

17. The problem facing the Debtors, and the reason for this Motion, is that (i) if too many equity holders transfer their equity interests prior to the effective date of a plan of reorganization, such transfers may trigger an ownership change that would not fall within the ambit of these special bankruptcy provisions because such an ownership change would not occur pursuant to a confirmed bankruptcy plan and (ii) the Debtors may not qualify for the special "in bankruptcy" rules of I.R.C. § 382(l)(5) if too many claimholders transfer their claims prior to the effective date of any plan of reorganization. The Debtors need the ability to monitor, and possibly object

to, changes in ownership of equity securities in, and the ability to monitor, and possibly require a sell-down of claims against, the Debtors to preserve flexibility in crafting a plan of reorganization that qualifies for relief under one of the special bankruptcy provisions and, thus, maximizes the Debtors' ability to reduce federal income taxes by offsetting their income earned after reorganization with Tax Attributes.

**C.   Special Section 382 Bankruptcy Rules**

18.   The limitations imposed by I.R.C. § 382 in the context of a change in ownership pursuant to a confirmed chapter 11 plan are significantly more relaxed than those applicable outside chapter 11.

19.   A corporation that has not previously had an ownership change is not subject to the limitations imposed by I.R.C. § 382 with respect to an ownership change resulting from consummation of a chapter 11 plan, provided that under the plan, the debtor's pre-change shareholders (i.e., persons or entities who owned the debtor's stock immediately before the relevant ownership change) and/or Qualified Creditors emerge from the reorganization owning at least 50% of the total value

and voting power of the debtor's stock immediately after
the ownership change (the "I.R.C. § 382(l)(5) safe
harbor"). I.R.C. § 382(l)(5)(A).

20.   Under I.R.C. § 382(l)(5)(E) and Treas.
Reg. § 1.382-9, a creditor whose claim is exchanged for
stock under a chapter 11 plan is a "Qualified Creditor"
for I.R.C. § 382 purposes if such claim either (i) has
been owned by such creditor for 18 or more months prior
to the date of filing of the bankruptcy petition or (ii)
arose in the ordinary course of the Debtors' business
and was at all times beneficially owned by such creditor.
Creditors may also be classified as "Qualified
Creditors," despite not satisfying the continuous
ownership requirements under either (i) or (ii) of the
preceding sentence, if such creditors meet the criteria
set forth in the de minimis rule described below.

21.   Under Treas. Reg. § 1.382-9(d)(3) (the
"de minimis rule"), the debtor may, for purposes of the
I.R.C. § 382(l)(5) safe harbor, "treat indebtedness as
always having been owned by the beneficial owner of the
indebtedness immediately before the ownership change if
the beneficial owner is not, immediately after the

ownership change, either a five percent shareholder or
an entity through which a five percent shareholder owns
an indirect ownership interest" in the corporation. Such
a claimholder will always be regarded as a Qualifying
Creditor under the I.R.C. § 382(l)(5) safe harbor unless
the particular claim(s) that it holds both (a) did not
arise in the ordinary course of the Debtor's business
and (b) was not held by such creditor 18 months prior to
the filing of the bankruptcy petition.

22.   The requested relief has been narrowly
tailored to impose the notice and sell-down requirements
only on claimholders that own an amount of claims which
could be expected to fall outside of the de minimis rule
and, thus, could jeopardize the Debtors ability to
satisfy the requirements of the I.R.C. § 382(l)(5) safe
harbor.

23.   Although there can be no assurance that
the I.R.C. § 382(l)(5) safe harbor ultimately will be
available to the Debtors, it is important that the
Debtors preserve the ability to propose a plan of
reorganization that would take advantage of that safe
harbor. Because the determination of whether a creditor

is a Qualified Creditor depends on whether such creditor
has held its claim until the effective date of the plan
of reorganization, transfers of claims by creditors
before such date pose a threat to the Debtors' ability
to satisfy the requirements of the I.R.C. § 382(l)(5)
safe harbor. Likewise, because transfers of stock by or
into the hands of five percent shareholders before the
effective date of the plan of reorganization could
trigger an ownership change that would impose a severe
annual limitation on the Debtors' use of their Tax
Attributes, even if the Debtors later satisfied the
requirements of I.R.C. § 382(l)(5) in connection with a
second ownership change resulting from the plan of
reorganization, such transfers also pose a threat to the
value of their Tax Attributes. The requested relief will
ensure that the Debtors have maximum flexibility to
structure a plan of reorganization that meets the
requirements of I.R.C. § 382(l)(5), and thus preserves
their Tax Attributes to the fullest extent.

24.   Even if it is ultimately determined that
I.R.C. § 382(l)(5) is unavailable to the Debtors, it is
in the best interests of the Debtors and their estates

to restrict equity trading which could result in an

ownership change prior to consummation of a plan of

reorganization for at least two additional reasons.

        25.  First, an ownership change must occur

pursuant to consummation of the plan in order for the

Debtors to qualify for the other I.R.C. § 382 bankruptcy

relief provision – the favorable valuation rule of I.R.C.

§ 382(l)(6). Specifically, I.R.C. § 382(l)(6) provides

that if a corporation undergoes an ownership change

pursuant to a plan of reorganization in chapter 11 and

I.R.C. § 382(l)(5) does not apply (either because the

corporation elects out of that provision or because its

requirements are not satisfied), then under I.R.C. §

382(l)(6), the appropriate value of the Debtors for

purposes of calculating the I.R.C. § 382 limitation

shall reflect the increase in value of the Debtors

resulting from any surrender or cancellation of

creditors' claims in the transaction. Thus, assuming the

value of the Debtors increases as a result of the

reorganization, I.R.C. § 382(l)(6) will provide for a

higher annual limitation than would result under the

general rules of I.R.C. § 382 and preserve the Debtors'

ability to use a greater portion of their Tax Attributes
to offset any post-change income.

26.   Second, preventing an ownership change
prior to the effective date of a plan of reorganization
will also benefit the estates by ensuring that the
reorganized Debtors will have greater use of their Tax
Attributes to offset any income arising on or prior to
the effective date of the chapter 11 plan. Thus, in all
circumstances, it is in the best interests of the
Debtors and their estates to grant the requested relief
so as to prevent an ownership change prior to
consummation of a plan of reorganization.

**D.    The Requested Relief Is Narrowly Tailored**

27.   The requested relief does not bar all
trading of claims and stock of the Debtors. At this
early juncture, the Debtors seek to establish procedures
enabling them only to monitor those types of stock
trading and ownership of claims which pose a serious
risk under the I.R.C. § 382 ownership change test, so as
to preserve the Debtors' ability to seek substantive
relief if it appears that a proposed trade of equity
securities will jeopardize the use of their Tax

Attributes or a claimholder owns an amount of claims in
excess of the amount necessary to satisfy the _de minimis_
rule. The procedures requested by the Debtors in this
Motion would permit most stock and claims trading to
continue subject only to Bankruptcy Rules 3001(e) and
3002 and applicable securities, corporate, and other
laws.

**E.   The Requested Relief Is Necessary To Avoid
       Irreparable Harm To The Debtors**

28.   Once a Tax Attribute is limited under
I.R.C. § 382, its use is limited forever, and once a
claim or equity interest is transferred, it cannot be
undone. The relief sought herein is necessary to avoid
an irrevocable loss of the Tax Attributes and the
irreparable harm which would be caused by unrestricted
trading in claims and equity securities of the
Debtors and the Debtors' resulting inability to offset
taxable income freely with their Tax Attributes.

29.   Absent granting the relief requested
herein, the Debtors could be irreparably harmed by the
mere filing of this Motion. If the Debtors filed this
Motion in accordance with the usual notice procedures

set forth in the Bankruptcy Rules, the Debtors believe
it is likely that a flurry of trading in claims and
stock of the Debtors could immediately follow. Parties
holding such claims or stock might rush to transfer
their claims or stock before the restrictions on such
trading are imposed by this Court. Such trading would
put the Tax Attributes in jeopardy, as described above,
and would therefore be counterproductive to the Debtors'
objectives in seeking this relief. Accordingly, the
Debtors request that the procedures described herein be
approved and that a hearing be allowed with respect to
the prospective application of such procedures if any
Creditors' Committee appointed in these Chapter 11 Cases
raises a timely objection.

**F.    Provisions of the Proposed Order**

30.   Following entry of the Order, the Debtors
propose to send a notice in substantially the form
attached hereto as <u>Exhibit C</u> to the proposed Order (the
"Notice of Order") to (a) the Office of the United
States Trustee for the Eastern District of Virginia; (b)
the Securities and Exchange Commission; (c) the Internal
Revenue Service; (d) the United States Attorney's Office

for the Eastern District of Virginia; (e) counsel to the
Prepetition Lenders; (f) the parties included on the
Debtors' list of fifty (50) largest unsecured creditors;
(g) any statutory Committee appointed under Section 1102
of the Bankruptcy Code; and (h) the transfer agents for
any class of common stock of Circuit City ("Circuit City
Stock"). Upon receipt of the Notice of Order, any
transfer agent for any Circuit City Stock would be
required to send such Notice of Order to all holders of
such Circuit City Stock in excess of 4,000,000 shares
registered with such transfer agent; provided, however,
that, if any transfer agent provides the Debtors with
the name and addresses of all holders of such Circuit
City Stock, the Debtors would be required to deliver the
Notice of Order to such holders. Any such registered
holder would be required, in turn, to provide such
Notice of Order to any holder for whose account such
registered holder holds such Circuit City Stock in
excess of 4,000,000 shares, and so on down the chain of
ownership. Additionally, any person or entity or broker
or agent acting on their behalf who (i) sells claims
against the Debtors in the aggregate principal amount of

at least $3,340,000 or (ii) sells 2,000,000 shares of
Circuit City Stock (or an Option, as defined in the
Order, with respect thereto) to another person or entity
would be required to provide notification of the
existence of this Order or its contents to such
purchaser or any broker or agent acting on their behalf
of such claims or Circuit City Stock, to the extent
reasonably feasible. The Debtors shall also file a copy
of the Order as an exhibit to a report on Form 8-K filed
with the Securities and Exchange Commission.
Additionally, the Debtors will publish the Notice of
Order in the *Richmond Times-Dispatch*, *The Wall Street
Journal* and *The Financial Times* (U.S. edition).

    31.   The entry of the Order shall be final;
provided, however, that (a) within ten days after the
Creditors' Committee has been formed, the Creditors'
Committee may object (an "Objection") to the prospective
application of the Order from and after the date of such
Objection, and (b) pending such hearing, the Order shall
remain in full force and effect. If an Objection is
timely filed by the Creditors' Committee, (a) a hearing
will be held before this Court at the next regularly-

24

scheduled omnibus hearing in these cases, which will be at a date and time to be established by this Court and (b) further notice will be served on order of the Court; provided, however, that if an Objection is timely filed and such Objection is resolved prior to a hearing on such Objection in a manner that does not require a revision of the Order, then the Notice of Order will be sent as provided in paragraph 32 below.

32.   The Debtors propose that if no Objection is timely filed and served, or if an Objection is timely filed and such Objection is resolved prior to hearing on such Objection in a manner that does not require a revision of the Order, the Debtors will send the Notice of Order to (i) the Office of the United States Trustee for the Eastern District of Virginia; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Eastern District of Virginia; (v) counsel to the agent for Debtors' Prepetition Lenders; (vi) the parties included on the Debtors' list of fifty (50) largest unsecured creditors; (vii) any statutory committee appointed under section 1102 of the Bankruptcy

Code; (viii) the transfer agents for any Circuit City

Stock; (ix) all parties who file notices of transfers of

claims under Bankruptcy Rule 3001; and (x) all known

creditors. Upon receipt of the Notice of Order, any

transfer agent for any Circuit City Stock will be

required to send such Notice of Order to all holders of

such Circuit City Stock registered with such transfer

agent; provided, however, that if any transfer agent

provides the Debtors with the names and addresses of all

holders of such Circuit City Stock, the Debtors would be

required to deliver the Notice of Order to such holders.

Any such registered holder must, in turn, provide such

Notice of Order to any holder for whose account such

registered holder holds such Circuit City Stock, and so

on down the chain of ownership. Additionally, any person

or entity or broker or agent acting on their behalf who

(i) sells claims against the Debtors in the aggregate

principal amount of at least $3,340,000 or (ii) sells

2,000,000 shares of Circuit City Stock (or an Option

with respect thereto) to another person or entity must

provide a copy of the Notice of Order authorizing such

procedures to such purchaser, or any broker or agent

acting on their behalf, of such claims or Circuit City
Stock. The Debtors shall also file a copy of the Order
as an exhibit to a report on Form 8-K filed with the
Securities and Exchange Commission.

33. The foregoing notice procedures satisfy
due process and the strictures of Bankruptcy Rule 9014
by providing the counterparties with a notice and an
opportunity to object and attend a hearing. See, e.g.,
In re Colo. Mountain Cellars, Inc., 226 B.R. 244, 246 (D.
Colo. 1998) (noting that hearing is not required to
satisfy Bankruptcy Rule 9014). Furthermore, the proposed
notice procedures protect the due process rights of the
parties-in-interest without unnecessarily exposing the
Debtors' estates to unwanted administrative expenses.

**G.   NOLs Are Property Of A Debtor's Estate Entitled To
Court Protection**

34.   Courts have uniformly held that a
debtor's NOLs constitute property of the estate under
section 541 of the Bankruptcy Code and, as such, courts
have the authority to implement certain protective
measures to preserve the NOLs. The seminal case

articulating this rule is In re Prudential Lines, Inc.,

107 B.R. 832 (Bankr. S.D.N.Y. 1989), aff'd, 119 B.R. 430

(S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991),

cert. denied 502 U.S. 821 (1991). In Prudential Lines,

the Bankruptcy Court for the Southern District of New

York enjoined a parent corporation from taking a

worthless stock deduction with respect to its wholly-

owned debtor subsidiary on the grounds that allowing the

parent to take such a deduction would destroy its

debtor-subsidiary's NOLs. In issuing the injunction, the

court held that "debtor's potential ability to utilize

NOLs is property of an estate," 107 B.R. at 838, and

that "the taking of a worthless stock deduction is an

exercise of control over a debtor's NOLs," 107 B.R. at

842, and thus was properly subject to the automatic stay

of section 362 of the Bankruptcy Code. See also In re

White Metal Rolling & Stamping Corp., 222 B.R. 417, 424

(Bankr. S.D.N.Y. 1998) ("it is beyond peradventure that

NOL carrybacks and carryovers are property of the estate

of the loss corporation that generated them"); In re

Southeast Banking Corp., Case No. 91-14561 BKC PGH, 1994

WL 1893513, at *3 (Bankr. S.D. Fla. July 21, 1994)

(debtors' interest in their NOLs "constitutes property
of the estate within the scope of 11 U.S.C. Section
541(a)(1) and is entitled to the protection of the
automatic stay"). Since the Debtors' NOLs are property
of their estates, this Court has the authority under
section 362 of the Bankruptcy Code to enforce the
automatic stay by restricting the transfer of equity
securities in, and require a sell-down of claims against,
the Debtors that could jeopardize the existence of this
valuable asset.

**H.    Bankruptcy Courts Have Granted the Relief Requested
       in the Motion**

35.    Courts have routinely restricted or
enjoined transfers of claims or equity securities or
issued other injunctive relief to protect a debtor
against the possible loss of its NOL carryforwards. See,
e.g., In re US Airways, Inc., Case No. 04-13819 (SSM)
(Bankr. E.D. Va. Apr. 1, 2005) (approving notification
procedures and restrictions on certain transfers of
claims against and interests in debtors); In re Dana
Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Aug. 9,
2006) (approving notification and sell-down procedures

similar to the procedures requested herein); In re Delta
Air Lines, Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y.
Dec. 19, 2005) (approving notification procedures and
restrictions on certain transfers of claims against and
interests in the debtors); In re Northwest Airlines
Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Oct. 28,
2005) (approving notification procedures and
restrictions on certain transfers of claims against and
interests in the debtors); In re WHX Corp., Case No. 05-
11444 (ALG) (Bankr. S.D.N.Y. March 31, 2005) (debtor
provided 10 days to object to proposed transfers of
claims or equity securities by substantial claimholders
and shareholders); In re Calpine Corporation, Case No.
05 60200 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2005)
(approving notification procedures and restrictions on
certain transfers of equity securities in the debtor);
In re W.R. Grace & Co., Case No. 01-01139 (JKF) (Bankr.
D. Del. Jan. 24, 2005) (approving notification
procedures and restrictions on certain transfers of
equity interests in the debtors).

36.  For the reasons set forth above, the
Debtors respectfully submit that the Order will play an

integral role in the Debtors' success upon emergence
from these Chapter 11 Cases, and there is an immediate
need to establish the notice and hearing provisions
regarding trading in equity securities and the notice
and sell down procedures regarding trading in claims
of the Debtors. Accordingly, the Debtors respectfully
request that the Court grant the relief requested herein.

## NOTICE

37.  Notice of this Motion will be given to:
(i) the Office of the United States Trustee for the
Eastern District of Virginia; (ii) the Securities and
Exchange Commission; (iii) the Internal Revenue Service;
(iv) counsel to the agent for Debtors' postpetition
lenders; (v) counsel to the agent for the Debtors'
prepetition lenders; and (vi) the Debtors' top fifty (50)
largest unsecured creditors on a consolidated basis.
The Debtors submit that, under the circumstances, no
other or further notice of the Motion is required.

## WAIVER OF MEMORANDUM OF LAW

38.  Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is

set forth in the Motion, the Debtors request that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

### NO PRIOR REQUEST

39.  No previous request for the relief sought
herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 10, 2008
      Richmond, Virginia

           SKADDEN, ARPS, SLATE, MEAGHER &
           FLOM, LLP
           Gregg M. Galardi, Esq.
           Ian S. Fredericks, Esq.
           P.O. Box 636
           Wilmington, Delaware 19899-0636
           (302) 651-3000

                  - and -

           SKADDEN, ARPS, SLATE, MEAGHER &
           FLOM, LLP
           Chris L. Dickerson, Esq.
           333 West Wacker Drive
           Chicago, Illinois 60606
           (312) 407-0700

                  - and -

           MCGUIREWOODS LLP

           /s/ Douglas M. Foley
           Dion W. Hayes (VSB No. 34304)
           Douglas Foley (VSB No. 34364)
           One James Center
           901 E. Cary Street
           Richmond, Virginia 23219
           (804) 775-1000

           Proposed Counsel for Debtors and
           Debtors in Possession

Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - x
                                    :
In re:                              :   Chapter 11
                                    :
CIRCUIT CITY STORES, INC.,          :   Case No. 08 -_____ (____)
et al.,                             :
                                    :
              Debtors.              :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND FED. R.
BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE, HEARING,
AND SELL-DOWN PROCEDURES FOR TRADING IN EQUITY
SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES**


          Upon the motion of the debtors (the "Debtors")[1]

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City

                                                              *(cont'd)*

for an order under Bankruptcy Code 105 Sections 362 and 541 and Bankruptcy Rules 3001 and 3002 (i) establishing notification and hearing procedures for trading in equity securities and (ii) establishing the notice and sell-down procedures for trading in claims against the Debtors' estates; and the Court having reviewed the Motion[2] and the Besanko Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

_____

(cont'd from previous page)
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.   The Motion is GRANTED.

2.   Any purchase, sale, or other transfer of claims against, or equity securities in, the Debtors in violation of the procedures set forth herein (including the notice requirements set forth in Sections 3(a) and 4(a) and (c) below) shall be null and void ab initio as an act in violation of the automatic stay under U.S.C. §§ 362 and 105(a) of the Bankruptcy Code.

3.   The following procedures shall apply to trading in equity securities of Circuit City Stores, Inc. ("Circuit City"):

(a) Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 3) who currently is or becomes a Substantial Shareholder (as defined in Paragraph (e) below) shall file with this Court, and serve on counsel to the Debtors, a notice of such status, in the form attached hereto as Exhibit A-1, on or before the later of (A) twenty (20) calendar days after the effective date of the notice of entry of this Order or (B) ten (10) calendar days after becoming a Substantial Shareholder.

(b) At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities, as defined below) that would result in an increase in the amount of Circuit City Stock beneficially owned by a Substantial Shareholder or would result in a person or

3

entity becoming a Substantial Shareholder, such
Substantial Shareholder shall file with this Court, and
serve on counsel to the Debtors, advance written notice,
in the form attached hereto as Exhibit A-2, of the
intended transfer of equity securities.

(c) At least thirty (30) calendar days
prior to effectuating any transfer of equity securities
(including Options to acquire such securities) that
would result in a decrease in the amount of Circuit City
Stock beneficially owned by a Substantial Shareholder or
would result in a person or entity ceasing to be a
Substantial Shareholder, such Substantial Shareholder
shall file with this Court, and serve on counsel to the
Debtors, advance written notice, in the form attached
hereto as Exhibit A-3, of the intended transfer of
equity securities (the notices required to be filed and
served under Paragraph (b) and this Paragraph (c), each
a "Notice of Proposed Transfer").

(d) The Debtors shall have thirty (30)
calendar days after receipt of a Notice of Proposed
Transfer to file with this Court and serve on such
Substantial Shareholder an objection to any proposed
transfer of equity securities described in the Notice of
Proposed Transfer on the grounds that such transfer may
adversely affect the Debtors' ability to utilize their
Tax Attributes.  If the Debtors file an objection, such
transaction will not be effective unless approved by a
final and nonappealable order of this Court.  If the
Debtors do not object within such 30-day period, such
transaction may proceed solely as set forth in the
Notice of Proposed Transfer.  Further transactions
within the scope of this Paragraph must be the subject
of additional notices as set forth herein, with an
additional 30-day waiting period.

(e) For purposes of this Order, (A) a
"Substantial Shareholder" is any person or entity which
beneficially owns at least 7,848,226 shares
(representing approximately 4.75% of all issued and
outstanding shares) of the common stock of ("Circuit
City Stock"), and (B) "beneficial ownership" (or any
variation thereof of Circuit City Stock and Options to

acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.  For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire Circuit City Stock may be treated as the owner of such Circuit City Stock.

        4.  The following procedures shall apply to

trading in claims against the Debtors:


        (a) Notice of 382(l)(5) Plan and 382(l)(5) Disclosure Statement. The Debtors shall, upon filing a disclosure statement with respect to a 382(l)(5) Plan (a "382(l)(5) Disclosure Statement"), simultaneously file with the Court and further publish and serve in the manner specified in Paragraph (j) below a separate notice ("Disclosure Statement Notice") in substantially the form attached as Exhibit B-1. The Disclosure Statement Notice shall (i) state that a 382(l)(5) Plan has been filed with the Court, (ii) disclose the most current estimate of the Threshold Amount and (iii) set a record date, which shall be 5:00 p.m., Eastern Time, on the date set by the Court that is ten (10) business days prior to the date set for the hearing on the 382(l)(5) Disclosure Statement (the "Disclosure Statement Notice Record Date").  Each Beneficial Claimholder who holds

more than the Threshold Amount (each, a "Substantial
Claimholder") as of the Disclosure Statement Notice
Record Date is hereby ordered and directed to email and
fax to counsel to the Debtors a report in the form
attached hereto as <u>Exhibit B-2</u> (the "Initial Holdings
Report") identifying: (I) the nature and amount of
Claims held by such Beneficial Claimholder as of the
Disclosure Statement Notice Record Date (the "Initial
Holdings"); and (II) the Protected Amount that is in
excess of the Threshold Amount. The Initial Holdings
Report shall be subject to the confidentiality
provisions set forth in Paragraph (i) below and shall be
served in accordance with the preceding sentence no
later than three (3) business days prior to the first
date set by the Court for the hearing to consider the
382(l)(5) Disclosure Statement to the email addresses
and fax numbers identified on the attached <u>Exhibit B-2</u>.
In the event that the hearing to consider the 382(l)(5)
Disclosure Statement is adjourned or continued,
Substantial Claimholders shall not be required to amend
or update their Initial Holdings Reports unless, in the
event of an adjournment or continuance, the Debtors
establish a new Disclosure Statement Notice Record Date
and provides notice thereof, in which case the process
above will re-commence.

(b) <u>382(l)(5) Disclosure Statement</u>. The
382(l)(5) Disclosure Statement shall contain information
adequate to permit a party entitled to vote on a
382(l)(5) Plan to determine whether a 382(l)(5) Plan
provides greater value than possible alternatives and
shall include, without limitation, the following
disclosures: (i) the net present value of the projected
tax savings of the 382(l)(5) Plan as compared to a
382(l)(6) Plan based on the financial projections
included in the 382(l)(5) Disclosure Statement; (ii) a
description of the restrictions on trading with respect
to the common stock and any other securities of the
reorganized Debtors (the "<u>Affected Securities</u>") that
will be required or imposed under the 382(l)(5) Plan
after the Effective Date to preserve such tax savings;
(iii) the projected value of the Affected Securities in
the aggregate; and (iv) the projected tax savings of the

382(l)(5) Plan as a percentage of the aggregate value of
the Affected Securities. In addition, the Debtors shall
promptly (and in any event before the end of the hearing
on the 382(l)(5) Disclosure Statement) disclose on a
separate filing with the SEC on Form 8-K (i) the
aggregate amount of Initial Holdings (the "Total Initial
Holdings") and (ii) the estimated maximum amount and
percentage of the Total Initial Holdings in each class
that may be required to be sold down as provided below.
Such disclosures shall be included in the final 382(l)(5)
Disclosure Statement. The foregoing does not limit in
any way the right of any party in interest to object to
the adequacy of the information in the 382(l)(5)
Disclosure Statement.

          (c) Notice of Claimholder Acceptance of
382(l)(5) Plan.  The Debtor shall file with the Court
and further publish and serve in the manner specified in
Paragraph (j) below, not less than ten (10) days prior
to the commencement of the Confirmation Hearing, a
notice (the "Pre-Confirmation Notice") substantially in
the form attached hereto as Exhibit B-3, setting forth:
(i) a record date, which shall be 5:00 p.m., Eastern
Time, on a date that is ten (10) days prior to the first
date set by the Court for the Confirmation Hearing (the
"Pre-Confirmation Notice Record Date"); and (ii)
identifying the most current estimate of the Threshold
Amount (determined as of the Pre-Confirmation Notice
Record Date). Each Beneficial Claimholder who is a
Substantial Claimholder (as determined by the Threshold
Amount identified in the Pre-Confirmation Notice) as of
the Pre-Confirmation Notice Record Date is hereby
ordered and directed to deliver, via e-mail and fax, a
report in the form attached hereto as Exhibit B-4 (the
"Final Holdings Report") identifying the nature and
amount of claims held by such Beneficial Claimholder as
of the Pre-Confirmation Notice Record Date (the "Final
Holdings"). The Final Holdings Report shall be subject
to the confidentiality provisions set forth in Paragraph
(i) below and shall be served on counsel to the Debtors
no later than the date that is three (3) business days
prior to the first date set by the Court for the
Confirmation Hearing to the e-mail addresses and fax

numbers identified on the attached Exhibit B-2. For any
Substantial Claimholder who did not serve an Initial
Holdings Report, the Final Holdings Report shall also
contain such Substantial Claimholder's Protected Amount
that is in excess of the Threshold Amount.  In the event
that the Confirmation Hearing is adjourned or continued,
Substantial Claimholders shall not be required to amend
or update their Final Holdings Reports unless, in the
event of an adjournment or continuance, the Debtors
establish a new Pre-Confirmation Notice Record Date and
provides notice thereof, in which case the process above
will re-commence.

        (d) Sell-Down Notice.  If the Court
confirms the 382(l)(5) Plan, the Debtors shall serve a
notice substantially in the form attached hereto as
Exhibit B-5 (the "Sell-Down Notice") by overnight
delivery service within the United States upon each
Substantial Claimholder (as of the Pre-Confirmation
Notice Record Date) within five (5) business days after
the entry of the order confirming the 382(l)(5) Plan.
The Sell-Down Notice shall (i) state that the 382(l)(5)
Plan has been confirmed; (ii) contain the results of the
calculations described in Paragraph (f)(i) below,
including the calculation of the Maximum Amount and the
information used to perform all such calculations to the
extent that the Debtors are not required by this Order
or other confidentiality restrictions to keep such
information confidential; and (iii) provide notice that,
pursuant to this Order, each Substantial Claimholder is
ordered and directed to comply with the Sell-Down
Procedures (set forth in Paragraph (f) below) before the
Effective Date.

        (e) Effective Date.  The Effective Date of
any 382(l)(5) Plan shall not be earlier than thirty (30)
calendar days after the Confirmation Date.

        (f) Sell-Down Procedures.  If and only to
the extent that a 382(l)(5) Plan is confirmed by this
Court then, to the extent necessary to effectuate the
382(l)(5) Plan, each Beneficial Claimholder who is, as
of the Pre-Confirmation Notice Record Date, a
Substantial Claimholder (other than a Permitted

Substantial Claimholder whose Claims shall not be required to be sold as part of the Sell-Down pursuant to Paragraph (f)(ii) below), is hereby ordered and directed to comply with the following sell-down procedures (the "Sell-Down Procedures"):

(i)  The Maximum Amount. The Debtors shall calculate the maximum amount of claims that may be held, as of the Effective Date of the 382(l)(5) Plan, by a Substantial Claimholder that was a Substantial Claimholder as of the Pre-Confirmation Notice Record Date (the "Maximum Amount") as follows:

(1) Based upon the information provided by the Substantial Claimholders in the Final Holdings Reports, the Debtors shall calculate the total amount of claims that all Substantial Claimholders must sell to effectuate the 382(l)(5) Plan assuming that all Incremental Holdings will be sold prior to any Sell-Down of claims held by the Substantial Claimholders prior to the Disclosure Statement Notice Record Date and taking into account in its determination the portion of claims held by Substantial Claimholders that the Debtors reasonably conclude (based on evidence furnished by the Substantial Claimholders) have not existed since a date that was 18 months before the Petition Date and that are not "ordinary course" claims, within the meaning of Treasury Regulations Section 1.382-9(d)(2)(iv) (the "Sell-Down Amount").

(2) If the Sell-Down Amount is less than or equal to the Total Incremental Holdings, the Debtors shall calculate the amount of each Substantial Claimholder's *pro rata* share of the Sell-Down Amount (*i.e.*, the Sell-Down Amount multiplied by a fraction, the numerator of which is the Substantial Claimholder's Incremental Holdings and the

denominator of which is the Total Incremental Holdings);

(3) If the Sell-Down Amount exceeds Total Incremental Holdings, the Debtors shall calculate for each Substantial Claimholder the amount of such Substantial Claimholder's *pro rata* share of such excess (*i.e.*, the total amount of such excess multiplied by a fraction, the numerator of which is such Substantial Claimholder's Initial Holdings minus the Threshold Amount and the denominator of which is the Total Initial Holdings in excess of the Threshold Amount of all Substantial Claimholders) and add to that the amount of such Substantial Claimholder's Incremental Holdings; and

(4) For each Substantial Claimholder, the Debtors shall subtract from the total claims held by such Substantial Claimholder (as reported in the Final Holdings Report) such Substantial Claimholder's share of the Sell-Down Amount calculated in accordance with clauses (ii) or (iii) above, as applicable. The difference shall be the Maximum Amount.

(ii) <u>Sell-Down</u>.  Prior to the Effective Date, each Substantial Claimholder shall sell an amount of claims equal to its share of the Sell-Down Amount or such other amount necessary so that no Substantial Claimholder shall, as of the Effective Date, hold claims in excess of the Maximum Amount for such claimholder (the "<u>Sell-Down</u>"); <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary in this Order, no Beneficial Claimholder shall be required to sell any claims if such sale would result in such Beneficial Claimholder having Beneficial Ownership of an aggregate amount of Claims that is less than such Beneficial Claimholder's Protected Amount. Each

Substantial Claimholder shall sell or otherwise transfer its claims subject to the Sell-Down to unrelated Entities; provided further that the Substantial Claimholder shall not have a reasonable basis to believe that such Entity would own, immediately after the contemplated consummation of such transfer, an amount of claims in excess of the Maximum Amount for such Claimholder.

(iii)  Objections to Sell-Down Notices.  A Substantial Claimholder who has complied with the notice procedures contained in this Section 4 may, no later than ten (10) calendar days from service of the Sell-Down Notice, object to the manner in which the Maximum Amount or the Sell-Down Amount specified in a Sell-Down Notice were calculated or on the grounds that such notice contained a mathematical error that would result in requiring the Substantial Claimholder to reduce its ownership below the Maximum Amount or the Protected Amount for such Substantial Claimholder. In connection with any such objection, the Substantial Claimholder shall disclose its holdings to counsel to the Debtors as of the time of the filing of the objection and as of the time of any hearing on such objection. The Debtors may serve a new Sell-Down Notice by overnight delivery service within the United States correcting such errors; any Substantial Claimholder required to sell additional claims as a result of such correction shall have twenty (20) calendar days from service of any new Sell-Down Notice to effect the additional Sell-Down.

(iv)  Notice of Compliance.  A Substantial Claimholder subject to the Sell-Down shall, before the Effective Date and as a condition to receiving Affected Securities, deliver to counsel to the Debtors, a written

statement substantially in the form of Exhibit B-6 hereto that such Substantial Claimholder has complied with the terms and conditions set forth in Paragraph (f)(ii) and that such Substantial Claimholder will not hold claims, as of the Effective Date, in an amount in excess of the greater of the Maximum Amount or the Protected Amount (if any) for such Substantial Claimholder (the "Notice of Compliance"). Any Substantial Claimholder who fails to comply with this provision shall not receive Affected Securities with respect to any claims in excess of the greater of such claimholder's Protected Amount or the then current Threshold Amount.

(v) Applicable Authority. For the avoidance of doubt, Section 382 of the I.R.C., the Treasury Regulations promulgated thereunder and all relevant Internal Revenue Service and judicial authority shall apply in determining whether the claims of several persons and/or Entities must be aggregated when testing for Substantial Claimholder status. For these purposes and except as specifically provided with respect to claims ownership in the Treasury Regulations, the rules and authority identified in the preceding sentence shall be treated as if they applied to claims in the same manner as they apply to stock.

(vi) Subsequent Substantial Claimholders. To the extent that any Entity becomes a Substantial Claimholder after the date in which Final Holdings Reports are due, the Court shall retain jurisdiction so that the Debtors may seek equitable relief similar to the relief described in this Order in order to protect the Debtors' ability to apply Section 382(l)(5) of the I.R.C.

(g) Claimholder Participation. To permit reliance by the Debtors on Treasury Regulation Section

12

1.382-9(d)(3), any Beneficial Claimholder that
participates in formulating any chapter 11 plan of
reorganization of or on behalf of the Debtors (which
shall include, without limitation, making any
suggestions or proposals to the Debtors or their
advisors with regard to such a plan), shall not, and
shall not be asked to, disclose (or otherwise make
evident unless compelled to do so by an order of a court
of competent jurisdiction or some other applicable legal
requirement) to the Debtors that any claims in which
such Beneficial Claimholder has a beneficial ownership
are Newly Traded Claims (the "Participation
Restriction"). For this purpose, the Debtors acknowledge
and agree that the following activities shall not, where
in pursuing such activities the relevant Beneficial
Claimholder does not disclose (or otherwise make evident)
to the Debtors that such Beneficial Claimholder has
beneficial ownership of Newly Traded Claims, constitute
a violation of the Participation Restriction: (a) filing
an objection to a proposed disclosure statement or to
confirmation of a proposed plan of reorganization; (b)
negotiating the terms of, or voting to accept or reject,
a proposed plan of reorganization; (c) reviewing or
commenting on a proposed business plan; (d) membership
on the Creditors' Committee or other official or *ad hoc*
committee; (e) providing information other than with
respect to its claims to the Debtors on a confidential
basis; or (f) taking any action required by this Order.
Any claimholder found by the Court to have violated the
Participation Restriction, and who, as a result, would
prevent the Debtors from implementing a 382(l)(5) Plan,
shall be required to dispose of Newly Traded Claims of
which such Entity has Beneficial Ownership in the manner
specified in Paragraph (f)(ii) above and shall be
subject to the Forfeiture Remedy described in Paragraph
(h) below.

(h) Sanctions for Noncompliance. If any
Substantial Claimholder fails to comply with the Sell-
Down applicable to it, such Substantial Claimholder
shall not be entitled to receive Beneficial Ownership of
any Affected Securities in connection with the
implementation of the 382(l)(5) Plan with respect to any

13

claims required to be sold pursuant to a Sell-Down
Notice.  Any Substantial Claimholder that violates this
Order shall be required to forfeit the Affected
Securities (the "Forfeiture Remedy"). The Debtors may
seek to enforce the Forfeiture Remedy, on notice to the
Entity upon whom such sanctions are sought to be imposed,
on an expedited basis. The Debtors also reserve the
right to seek from this Court, on an expedited basis,
other sanctions or damages for a willful violation of
this Order, on notice to the Entity upon whom such
sanctions are sought to be imposed, including, but not
limited to damages for loss of any tax benefits caused
by such violation and any injunction or other relief
necessary or appropriate to remedy such violation. Any
distribution of Affected Securities pursuant to the
implementation of the 382(l)(5) Plan that is precluded
by an order enforcing the Forfeiture Remedy (the
"Forfeited Equity") shall be void *ab initio*. Any Entity
that receives Forfeited Equity shall, immediately upon
becoming aware of such fact, return the Forfeited Equity
to the reorganized Debtors or, if all of the shares
properly issued to such Entity and all or any portion of
such Forfeited Equity have been sold prior to the time
such Entity becomes aware of such fact, such Entity
shall return to the reorganized Debtors (a) any
Forfeited Equity still held by such Entity and (b) the
proceeds attributable to the sale of Forfeited Equity.
Any Entity that receives Forfeited Equity and fails to
comply with the preceding sentence shall be subject to
such additional sanctions as the Court may determine.
The reorganized Debtors shall distribute any Forfeited
Equity in accordance with the 382(l)(5) Plan.

(i) Confidentiality. The Initial Holdings
Report, the Final Holdings Report, the Sell-Down Notices
and the Notice of Compliance, and the information
contained therein, shall be treated as confidential
information and shall be available only to the Debtors
and counsel and financial or tax advisors to the Debtors.
Each recipient of any Initial Holdings Report, Final
Holdings Report, Sell-Down Notice and the Notice of
Compliance (or similar notices provided under the Order)
shall keep the information contained therein

confidential and shall not disclose such information to
any Entity (including, without limitation, any member of
the Creditors' Committee) unless required to produce it
in a legal proceeding or subject to further Court order.

(j) Notice. Any notices required to be
published under Section 4 of this Order shall be
published in the *Richmond Times-Dispatch*, *The Wall
Street Journal* and the *Financial Times*. All notices
required to be served shall be served on the following
parties via electronic mail if an e-mail address is
known, or by overnight mail if an e-mail address is not
known: (a) the Office of the United States Trustee for
the Eastern District of Virginia (which shall be sent by
overnight mail only); (b) the Securities and Exchange
Commission; (c) the Internal Revenue Service; (d) the
United States Attorney's Office for the Eastern District
of Virginia; (e) counsel to the Prepetition Lenders; (f)
the parties included on the Debtors' list of fifty (50)
largest unsecured creditors; (g) any statutory committee
appointed under Section 1102 of the Bankruptcy Code; and
(h) the transfer agents for any Circuit City Stock.

(k) The requirements set forth in this
Order are in addition to the requirements of Bankruptcy
Rule 3001(e) and applicable securities, corporate and
other laws, and do not excuse compliance therewith.

(l) The Court shall retain jurisdiction to
interpret, enforce, aid in the enforcement of and
resolve any disputes or matters related to any of the
provisions of this Order.

(m) For purposes of Section 4 of this
Order, the following definitions shall apply:

(i) "382(l)(5) Plan" means a
plan of reorganization for the Debtors under
chapter 11 of the Bankruptcy Code that
provides for or contemplates the use of net
operating loss carryforwards and other tax
attributes under Section 382(l)(5) of the
I.R.C. and that restricts transfers of
Beneficial Ownership of Affected Securities

15

for not less than two years after the
reorganization in order to avoid an "ownership
change," as such term is defined in the I.R.C.
and regulations promulgated thereunder.

(ii)    "382(l)(6) Plan" means a
plan of reorganization for the Debtors under
chapter 11 of the Bankruptcy Code that
provides for or contemplates the use of net
operating loss carryforwards and other tax
attributes under, and subject to the
limitations of, Section 382(l)(6) of the I.R.C.

(iii)    "Applicable Percentage"
means, if only one class of Affected
Securities is to be issued pursuant to the
terms of a 382(l)(5) Plan, 4.75% of the number
of such shares that the Debtors reasonably
estimate will be issued at the effective date
of such 382(l)(5) Plan. If more than one class
of Affected Securities is to be distributed
pursuant to the terms of a 382(l)(5) Plan, the
Applicable Percentage shall be determined by
the Debtors in their reasonable judgment in a
manner consistent with the estimated range of
values for the equity to be distributed
reflected in the valuation analysis set forth
in the 382(l)(5) Disclosure Statement, and
shall be expressed in a manner that makes
clear how many shares of common equity would
constitute the Applicable Percentage.

(iv)    "Beneficial Ownership" of
claims shall be determined in accordance with
applicable rules under Section 382 of the
I.R.C. and regulations promulgated thereunder,
as if such rules applied to claims in the same
manner as they apply to equity except to the
extent inconsistent with rules and regulations
specifically applicable to the ownership of
claims.

16

(v)  "<u>Beneficial Claimholders</u>" means those Entities that have Beneficial Ownership of claims.

(vi)  "<u>claim</u>" shall have the meaning ascribed to that term in Section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.

(vii)  "<u>Confirmation Date</u>" means the date on which the Court enters an order confirming a 382(l)(5) Plan.

(viii)  "<u>Confirmation Hearing</u>" means a hearing held before this Court on the confirmation of the 382(l)(5) Plan pursuant to Section 1129 of the Bankruptcy Code.

(ix)  "<u>382(l)(5) Disclosure Statement</u>" means a disclosure statement filed with the Court relating to a 382(l)(5) Plan.

(x)  "<u>Effective Date</u>" means the date on which the 382(l)(5) Plan becomes effective, but in no event less than thirty (30) calendar days from the Confirmation Date.

(xi)  "<u>Entity</u>" means a person or entity for purposes of the rules under Section 382 of the I.R.C.

(xii)  "<u>Incremental Holdings</u>" means the amount, if any, of Claims identified in each Substantial Claimholders' Final Holdings Report in excess of the greater of (i) the amount contained in each respective Substantial Claimholder's Initial Holdings Report and (ii) the Threshold Amount as of the Disclosure Statement Notice Record Date.

(xiii)  "<u>Newly Traded Claims</u>" means
claims (i) with respect to which an Entity
acquired beneficial ownership after the date
that was 18 months before the Petition Date;
and (b) that are not "ordinary course" claims,
within the meaning of Treasury Regulations
Section 1.382-9(d)(2)(iv), of which the same
Entity has always had beneficial ownership.

(xiv)  "<u>Permitted Substantial</u>
<u>Claimholder</u>" means a Substantial Claimholder
whom the Debtors reasonably conclude acquired
its claim in the ordinary course of the
Debtors' trade or business (within the meaning
of Treasury Regulations Section 1.382-
9(d)(2)(iv)) and has at all times since the
creation of such claim held the Beneficial
Ownership in that claim.

(xv)  "<u>Petition Date</u>" means
November 10, 2008.

(xvi)  "<u>Protected Amount</u>" means
the amount of claims of which a Beneficial
Claimholder had Beneficial Ownership on the
Petition Date, increased by the amount of
claims of which such Beneficial Claimholder
acquires Beneficial Ownership pursuant to
trades entered into before the Petition Date
that had not yet closed as of the Petition
Date minus the amount of claims that such
Beneficial Claimholder sells pursuant to
trades entered into before the Petition Date
that had not yet closed as of the Petition
Date.

(xvii)  "<u>Substantial Claimholder</u>"
means a Beneficial Claimholder who holds more
than the Threshold Amount as of the applicable
record date and time, as described in
Paragraphs 4(a) and 4(c) above.

(xviii)  "<u>Threshold Amount</u>" means
the amount of claims that are projected by the

Debtors to entitle the Beneficial Claimholder
thereof to become the Beneficial Claimholder
of the Applicable Percentage of Affected
Securities.

(xix) "Total Incremental
Holdings" means the aggregate amount of all of
each Substantial Claimholders' Incremental
Holdings.

5.   Any notice required by the Order to be
served by Substantial Claimholders, if effected prior to
the filing of a proof of claim by a Substantial
Claimholder, will not limit the right of a creditor to
assert any and all claims, whether or not such claims
are in addition to or differ from those listed on the
notice, in a proof of claim filed in accordance with any
future orders of this Court.

6.   The Debtors may waive, in writing and in
their sole and absolute discretion, any and all
restrictions, stays, and notification procedures
contained in this Order.

7.   The Debtors shall serve the Notice of
Order setting forth the procedures authorized herein
substantially in the form annexed hereto as Exhibit C on
(a) the Office of the United States Trustee for

19

the Eastern District of Virginia; (b) the Securities and
Exchange Commission; (c) the Internal Revenue Service;
(d) the United States Attorney's Office for the Eastern
District of Virginia; (e) counsel to the Prepetition
Lenders; (f) the parties included on the Debtors' list
of fifty (50) largest unsecured creditors; (g) any
statutory committee appointed under Section 1102 of the
Bankruptcy Code; and (h) the transfer agents for any
Circuit City Stock.  Notice served pursuant to the
preceding sentence shall be via first class mail,
postage prepaid.  The Debtors shall also file a copy of
this Order as an exhibit to a report on Form 8-K filed
with the Securities and Exchange Commission.
Additionally, the Debtors shall publish the Notice of
Order in *The Wall Street Journal* and *The Financial Times*
(U.S. edition).  No further notice of entry of this
Order need be served by the Debtors.

8.  Any transfer agent(s) for any Circuit City
Stock having notice hereof shall provide such Notice of
Order to all holders of such Circuit City Stock in
excess of 4,000,000 shares registered with such transfer

provided that, if any transfer agent provides the Debtors with the name and addresses of all holders of such Circuit City Stock, the Debtors shall deliver the Notice of Order to such holders.  Any such registered holder must, in turn, provide such Notice of Order to any holder for whose account such registered holder holds such Circuit City Stock in excess of 4,000,000 shares, and so on down the chain of ownership.

9.  Any person or entity or broker or agent acting on their behalf which sells claims against the Debtors in the aggregate principal amount of at least $3,340,000 to another person or entity shall provide notification of the existence of this Order or its contents to such purchaser of such claims or to any broker or agent acting on such purchaser's behalf, to the extent reasonably feasible.  Any person or entity or broker or agent acting on such person or entity's behalf who sells an aggregate amount of at least 2,000,000 shares of Circuit City Stock (or an Option with respect thereto) to another person or entity shall provide a copy of the Notice of Order to such purchaser of such

Circuit City Stock or to any broker or agent acting on
such purchaser's behalf.

10. The entry of this Order shall be final;
provided, however, that (a) within ten (10) days after
the Creditors' Committee has been formed, the Creditors'
Committee may object (an "Objection") to the prospective
application of this Order from and after the date of
such Objection, and (b) pending such hearing, this Order
shall remain in full force and effect.  If an Objection
is timely filed by the Creditors' Committee, (a) a
hearing will be held before this Court at the next
regularly scheduled omnibus hearing in the Chapter 11
Cases, which will be at a date and time to be
established by this Court and (b) further notice will be
served on order of the Court; provided, however, that if
an Objection is timely filed and such Objection is
resolved prior to a hearing on such Objection in a
manner that does not require a revision of the Order,
then the Notice of Order shall be sent as provided in
Paragraph 11 below.

11.   If no Objection is timely filed and
served, or if an Objection is timely filed and such
Objection is resolved prior to a hearing on such
Objection in a manner that does not require a revision
of the Order, the Debtors shall send the Notice of Order
to (a) the Office of the United States Trustee for
the Eastern District of Virginia; (b) the Securities and
Exchange Commission; (c) the Internal Revenue Service;
(d) the United States Attorney's Office for the Eastern
District of Virginia; (e) counsel to the agent for the
Prepetition Lenders; (f) the parties included on the
Debtors' list of fifty (50) largest unsecured creditors;
(g) any statutory committee appointed under Section 1102
of the Bankruptcy Code; (h) the transfer agents for any
Circuit City Stock; and (i) all parties who file notices
of transfers of claims under Bankruptcy Rule 3001; and
(l) all known creditors. Upon receipt of the Notice of
Order, any transfer agent for any Circuit City Stock
shall send such Notice of Order to all holders of such
Circuit City Stock registered with such transfer agent;
provided, however, that if any transfer agent provides
the Debtors with the name and addresses of all holders

of such Circuit City Stock, the Debtors shall deliver
the Notice of Order to such holders.  Any such
registered holder shall, in turn, provide such Notice of
Order to any holder for whose account such registered
holder holds such Circuit City Stock, and so on down the
chain of ownership. Any person or entity or broker or
agent acting on their behalf which sells claims against
the Debtors in the aggregate principal amount of at
least $3,340,000 to another person or entity shall
provide notification of the existence of this Order or
its contents to such purchaser of such claims or to any
broker or agent acting on such purchaser's behalf, to
the extent reasonably feasible.  Additionally, any
person or entity or broker or agent acting on their
behalf who sells 2,000,000 shares of Circuit City Stock
(or an Option with respect thereto) to another person or
entity must provide a copy of the Notice of Order
authorizing such procedures to such purchaser, or any
broker or agent acting on their behalf, of such claims
or Circuit City Stock.  The Debtors shall also file a
copy of the Order as an exhibit to a report on Form 8-K
filed with the Securities and Exchange Commission.

12. The requirements set forth in this Order are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable securities, corporate and other laws, and do not excuse compliance therewith.

13. The requirement under Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

14. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Richmond, Virginia
        November 10, 2008

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        I hereby certify that notice of the Debtors' intent
to seek entry of the foregoing proposed order was
provided to the parties identified in the Motion and
copy of this proposed order was provided to the Office
of the United States Trustee for the Eastern District of
Virginia prior to submission to this Court.

                        /s/ Douglas M. Foley

**Exhibit A-1**
(Notice of Status as Substantial Shareholder)

<u>EXHIBIT A-1</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                            :
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. __-____ (___)
et al.,                     :
                            :   Jointly Administered
            Debtors.        :
                            :
- - - - - - - - - - - - - - x
```

**NOTICE OF STATUS AS A SUBSTANTIAL SHAREHOLDER**[1]

PLEASE TAKE NOTICE that [Name of Shareholder] is/has become a Substantial Shareholder with respect to Circuit City Stock (as defined herein and in the Order) of Circuit City Stores, Inc., a debtor and debtor-in-

---

[1]   For purposes of this Order, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 7,848,226 shares (representing approximately 4.75% of all issued and outstanding shares) of the common stock of ("Circuit City Stock"), and (B) "beneficial ownership" (or any variation thereof of Circuit City Stock and Options to acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock.  An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.  For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire Circuit City Stock may be treated as the owner of such Circuit City Stock.

possession in Case No. [____] pending in the United States
Bankruptcy Court for the Eastern District of Virginia.

PLEASE TAKE FURTHER NOTICE that, as of [Date],
[Name of Shareholder] beneficially owns [_____] shares
of the Circuit City Stock.  The following table sets forth
the date(s) on which [Name of Shareholder] acquired or
otherwise became the beneficial owner of such Circuit City
Stock:

| Number Of Shares | Date Acquired |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

(Attach additional page if
necessary)

PLEASE TAKE FURTHER NOTICE that the last four
digits of the taxpayer identification or social security
number of [Name of Shareholder] is [_____].

PLEASE TAKE FURTHER NOTICE that, under penalties
of perjury, [Name of Shareholder] hereby declares that it
has examined this Notice and accompanying attachments (if
any), and, to the best of its knowledge and belief, this
Notice and any attachments which purport to be part of this
Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to that
certain Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed.
R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing,
And Sell-Down Procedures For Trading In Equity Securities
And Claims Against The Debtors' Estates (Docket No. [_]),
this Notice is being (a) filed with the Office of the
United States Trustee for the Eastern District of Virginia,
701 East Broad Street, Suite 4304, Richmond, Virginia,
(Attn: Robert B. Van Arsdale) and (b) served upon counsel
to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP,
One Rodney Square, PO Box 636, Wilmington, DE 19899 (Attn:
Gregg Galardi).

Respectfully Submitted,

```
                        _____
                        (Name of Shareholder)

        By:             _____

        Name:           _____

        Title:          _____

        Address:        _____

                        _____

                        _____

        Telephone:_____

        Facsimile:_____

        Date:           _____
```

3

**Exhibit A-2**
(Notice of Intent to Acquire Equity Interest)

<u>EXHIBIT A-2</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. __-____ (___)
et al.,                       :
                              :   Jointly Administered
              Debtors.        :
                              :
- - - - - - - - - - - - - - x
```

**NOTICE OF INTENT TO PURCHASE, ACQUIRE, OR OTHERWISE
ACCUMULATE AN EQUITY INTEREST**

PLEASE TAKE NOTICE THAT [Name of Prospective Acquirer] hereby provides notice of its intention to purchase, acquire, or otherwise accumulate one or more shares of Circuit City Stock (as defined herein and in the Order) of Circuit City Stores, Inc. or an Option with respect thereto (as defined herein and in the Order) (the "Proposed Transfer").

PLEASE TAKE FURTHER NOTICE THAT, if applicable, on [Prior Date(s)], [Name of Prospective Acquirer] filed a Notice of Status as a Substantial Shareholder[1] with the

---

[1]   For purposes of this Order, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 7,848,226 shares (representing approximately 4.75% of all issued and outstanding shares) of the common stock of ("Circuit City Stock"), and (B) "beneficial ownership" (or any variation thereof of Circuit City Stock and Options to acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of

*(cont'd)*

United States Bankruptcy Court for the Eastern District of Virginia (the "Court") and served copies thereof on Debtors' counsel.

PLEASE TAKE FURTHER NOTICE THAT [Name of Prospective Acquirer] currently beneficially owns [_____] shares of Circuit City Stock.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to the Proposed Transfer, [Name of Prospective Acquirer] proposes to purchase, acquire, or otherwise accumulate [_____] shares of Circuit City Stock or an Option with respect to [_____] shares of Circuit City Stock. If the Proposed Transfer is permitted to occur, [Name of Prospective Acquirer] will beneficially own [_____] shares of Circuit City Stock after the transfer (including any Options with respect to any Common Stock).

PLEASE TAKE FURTHER NOTICE THAT the last four digits of the taxpayer identification or social security number of [Name of Prospective Acquirer] is [_____].

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, [Name of Prospective Acquirer] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing, And Sell-Down Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]), this Notice is being (a) filed with the Office of the United States Trustee for the Eastern District of Virginia, 701 East Broad Street, Suite 4304, Richmond, Virginia,

_____

*(cont'd from previous page)*
    forfeiture, contract to acquire stock, or similar interest,
    regardless of whether it is contingent or otherwise not currently
    exercisable. For the avoidance of doubt, by operation of the
    definition of beneficial ownership in clause (B) of this Paragraph,
    an owner of an Option to acquire Circuit City Stock may be treated
    as the owner of such Circuit City Stock.

(Attn: Robert B. Van Arsdale), and (b) served upon counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, PO Box 636, Wilmington, DE 19899 (Attn: Gregg Galardi).

PLEASE TAKE FURTHER NOTICE that the Debtors have 30 calendar days after receipt of this Notice to object to the Proposed Transfer described herein.  If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court.  If the Debtors do not object within such 30-day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions contemplated by [Name of Prospective Acquirer] that may result in [Name of Prospective Acquirer] purchasing, acquiring or otherwise accumulating additional shares of Circuit City Stock (or an Option with respect thereto) will each require an additional notice filed with the Court to be served in the same manner as this Notice.

Respectfully Submitted,


_____
(Name of Shareholder)

By:        _____

Name:      _____

Title:     _____

Address:   _____

           _____

           _____

Telephone:_____

Facsimile:_____

Date:      _____

**Exhibit A-3**
(Notice of Intent to Transfer Equity Interest)

<u>EXHIBIT A-3</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                             :
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. __-____ (___)
et al.,                      :
                             :   Jointly Administered
              Debtors.       :
                             :
- - - - - - - - - - - - - - x
```

**NOTICE OF INTENT TO SELL, TRADE OR OTHERWISE
TRANSFER AN EQUITY INTEREST**

PLEASE TAKE NOTICE THAT [Name of Prospective Seller] hereby provides notice of its intention to sell, trade, or otherwise transfer one or more shares of Circuit City Stock (as defined herein and in the Order) of Circuit City Stores, Inc. or an Option with respect thereto (as defined herein and in the Order) (the "Proposed Transfer").

PLEASE TAKE FURTHER NOTICE THAT, if applicable, on [Prior Date(s)], [Name of Prospective Seller] filed a Notice of Status as a Substantial Shareholder[1] with the United States

---

[1]   For purposes of this Order, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 7,848,226 shares (representing approximately 4.75% of all issued and outstanding shares) of the common stock of ("Circuit City Stock"), and (B) "beneficial ownership" (or any variation thereof of Circuit City Stock and Options to acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock.  An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.  For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an

*(cont'd)*

4

Bankruptcy Court for the Eastern District of Virginia (the "Court") and served copies thereof on Debtors' counsel.

PLEASE TAKE FURTHER NOTICE THAT [Name of Prospective Seller] currently beneficially owns [_____] shares of the Circuit City Stock (including any Options with respect to any Circuit City Stock).

PLEASE TAKE FURTHER NOTICE THAT, pursuant to the Proposed Transfer, [Name of Prospective Seller] proposes to sell, trade, or otherwise transfer [_____] shares of Circuit City Stock or an Option with respect to [_____] shares of Circuit City Stock.  If the Proposed Transfer is permitted to occur, [Name of Prospective Seller] will beneficially own [_____] shares of Circuit City Stock after the transfer.

PLEASE TAKE FURTHER NOTICE THAT the last four digits of the taxpayer identification or social security number of [Name of Prospective Seller] is [_____].

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, [Name of Prospective Seller] hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing, And Sell-Down Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]), this Notice is being (a) filed with the Office of the United States Trustee for the Eastern District of Virginia, 701 East Broad Street, Suite 4304, Richmond, Virginia, (Attn: Robert B. Van Arsdale), and (b) served upon counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, PO Box 636, Wilmington, DE 19899 (Attn: Gregg Galardi).

PLEASE TAKE FURTHER NOTICE that the Debtors have 30 calendar days after receipt of this Notice to object to the Proposed Transfer described herein.  If the Debtors file an

_____

*(cont'd from previous page)*

owner of an Option to acquire Circuit City Stock may be treated as the owner of such Circuit City Stock.

objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court.  If the Debtors do not object within such 30-day period, then after expiration of such period the Proposed Transfer may proceed solely as set forth in the Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions contemplated by [Name of Prospective Seller] that may result in [Name of Prospective Seller] selling, trading or otherwise transferring shares of Circuit City Stock (or an Option with respect thereto) will each require an additional notice filed with the Court to be served in the same manner as this Notice.

Respectfully Submitted,

_____
(Name of Shareholder)

By:        _____

Name:      _____

Title:     _____

Address:   _____

           _____

           _____

Telephone:_____

Facsimile:_____

Date:      _____

7

**Exhibit B-1**
(Notice of Filing of Statement)

<u>Exhibit B-1</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. __-____ (___)
et al.,                    :
                           :   Jointly Administered
              Debtors.     :
                           :
- - - - - - - - - - - - - - x
```

**NOTICE OF (A) FILING OF DISCLOSURE STATEMENT WITH RESPECT TO
382(l)(5) PLAN OF REORGANIZATION, (B) THRESHOLD AMOUNT,
(C) DISCLOSURE STATEMENT NOTICE RECORD DATE AND
(D) OBLIGATIONS OF BENEFICIAL CLAIMHOLDERS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

**1.    Entry of Order.** On November 10, 2008, the
United States Bankruptcy Court for the Eastern District of
Virginia entered the Order Under 11 U.S.C. §§ 105, 362 And
541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice,
Hearing, And Sell-Down Procedures For Trading In Equity
Securities And Claims Against The Debtors' Estates (Docket
No. [_]) (the " Trading Order"). Unless otherwise defined in
this Notice, capitalized terms and phrases used herein have
the meanings given to them in the Trading Order.

**2.    Notice of Filing of Disclosure Statement with
Respect to 382(l)(5) Plan of Reorganization.** On [Date], the
Debtors filed a disclosure statement (Docket No. [_]) with
respect to the [caption of plan] (Docket No. [_]) (the
"Plan"). The Plan is a 382(l)(5) Plan, as defined in the
Trading Order and has been filed with the Court.

**3.    Threshold Amount.** The Debtors' most current
estimate of the Threshold Amount[4] of Claims is [_____].

---

[4]   The term "Threshold Amount" is defined in the Trading Order as: "the
amount of claims that are projected by the Debtors to entitle the
Beneficial Claimholder thereof to become the Beneficial Claimholder

*(cont'd)*

**4.     Disclosure Statement Notice Record Date.** The Disclosure Statement Notice Record Date is 5:00 p.m., Eastern Time, on [insert date that is ten business days prior to the date set for the hearing on the Disclosure Statement].

**5.     Obligation of Beneficial Claimholders.** Each Beneficial Claimholder who holds more than the Threshold Amount of Claims as of the Disclosure Statement Notice Record Date must, in order to comply with the Trading Order, e-mail and fax to counsel to the Debtors a report in the form attached hereto as Annex 1 (the "Initial Holdings Report") identifying (a) the nature and amount of Claims held by such Beneficial Holder as of the Disclosure Statement Notice Record Date and (b) the Protected Amount of Claims that is in excess of the Threshold Amount of Claims.[5]

**6.     Deadline for Serving Initial Holdings Report.** The Initial Holdings Report shall be served in accordance with the preceding sentence to the e-mail addresses and fax numbers identified on the attached Annex 1 no later than 5:00 p.m., Eastern Time, on [date that is three business days prior to the first date set by the Court for the hearing to consider the Disclosure Statement].

Dated: Richmond, Virginia                    BY ORDER OF THE COURT
       [Date]

---

*(cont'd from previous page)*
    of the Applicable Percentage of Affected Securities."

[5]  The term "Protected Amount" is defined in the Trading Order as: "the amount of claims of which a Beneficial Claimholder had Beneficial Ownership on the Petition Date, increased by the amount of claims of which such Beneficial Claimholder acquires Beneficial Ownership pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date minus the amount of claims that such Beneficial Claimholder sells pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date."

<u>Annex 1</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. __-____ (___)
et al.,                    :
                           :   Jointly Administered
            Debtors.       :
                           :
- - - - - - - - - - - - - - x
```

**INITIAL HOLDINGS REPORT**

This Initial Holdings Report is being submitted as required by the Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing, And Sell-Down Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]) (the "Trading Order"). Unless otherwise defined in this Report, capitalized terms and phrases used herein have the meanings given to them in the Trading Order.

**1.   As of the Disclosure Statement Notice Record Date, the undersigned is the Beneficial Owner of the following Claims:**

| Nature of Claim(s) (e.g., trade claim, rejection damage claim, bond claim, indemnity claim, etc.) | Dollar Amount of Claim(s) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

|  |  |
|---|---|
|  |  |

**Total**

       **2.**   **As of the Petition Date, the undersigned's Protected Amount of Claims in excess of the Threshold Amount of Claims was $_____.**

       **3.**   **In accordance with the Trading Order, a copy of this Initial Holdings Report was served by the undersigned by fax and e-mail on:**

       a.   Counsel for the Debtors:

       Gregg M. Galardi, Esq.
       SKADDEN, ARPS, SLATE, MEAGHER AND FLOM
       One Rodney Square, PO Box 636
       Wilmington, Delaware 19899-0636
       Facsimile: (302) 651-3001
       E-mail: Gregg.Galardi@skadden.com

Name:           _____

Social Security
or Federal Tax
I.D. No. (optional):_____

Signature:      _____

If by Authorized
Agent, Name and
Title:          _____

Street Address:
City, State,
Zip Code:       _____

Telephone Number:   _____

    Date:       _____

2

**Exhibit B-2**
(Initial Holdings Report)

<u>EXHIBIT B-2</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                             :
In re:                       :    Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :    Case No. __-____ (___)
et al.,                      :
                             :    Jointly Administered
           Debtors.          :
                             :
- - - - - - - - - - - - - - x
```

**INITIAL HOLDINGS REPORT**

This Initial Holdings Report is being submitted as required by the Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing, And Sell-Down Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]) (the "Trading Order"). Unless otherwise defined in this Report, capitalized terms and phrases used herein have the meanings given to them in the Trading Order.

**1.   As of the Disclosure Statement Notice Record Date, the undersigned is the Beneficial Owner of the following Claims:**

| Nature of Claim(s) (e.g., trade claim, rejection damage claim, bond claim, indemnity claim, etc.) | Dollar Amount of Claim(s) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

|  |  |
|---|---|
|  |  |
|  |  |

**Total**

2.    As of the Petition Date, the undersigned's Protected Amount of Claims in excess of the Threshold Amount of Claims was $_____.

3.    In accordance with the Trading Order, a copy of this Initial Holdings Report was served by the undersigned by fax and e-mail on:

a.    Counsel for the Debtors:

Gregg M. Galardi, Esq.
SKADDEN, ARPS, SLATE, MEAGHER AND FLOM
One Rodney Square, PO Box 636
Wilmington, Delaware 19899-0636
Facsimile: (302) 651-3001
E-mail: Gregg.Galardi@skadden.com

Name:                    _____

Social Security
or Federal Tax
I.D. No. (optional):_____

Signature:               _____

If by Authorized
Agent, Name and
Title:                   _____

Street Address:
City, State,
Zip Code:                _____

Telephone Number:        _____

Date:                    _____

**Exhibit B-3**
(Notice of Obligations of Beneficial Claimholders)

EXHIBIT B-3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                         :
In re:                     :   Chapter 11
                         :
CIRCUIT CITY STORES, INC., :   Case No. __-____ (___)
et al.,                  :
                         :   Jointly Administered
             Debtors.    :
                         :
- - - - - - - - - - - - - - x

**NOTICE OF (A) THRESHOLD AMOUNT,
(B) PRE-CONFIRMATION NOTICE RECORD DATE AND
(C) OBLIGATIONS OF BENEFICIAL CLAIMHOLDERS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

       **1.   Entry of Order.** On November 10, 2008, the United States Bankruptcy Court for the Eastern District of Virginia entered the Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing, And Sell-Down Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]) (the "Trading Order"). Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Trading Order.

       **2.   Threshold Amount.** The Debtor's current estimate of the Threshold Amount[1] of Claims is [___].

       **3.   Pre-Confirmation Notice Record Date.** The Pre-Confirmation Notice Record Date is 5:00 p.m., Eastern Time, on [the service date, which shall not be less than ten days

---

[1]   The term "Threshold Amount" is defined in the Trading Order as: "the amount of claims that are projected by the Debtors, in consultation with the Creditors' Committee, to entitle the Beneficial Claimholder thereof to become the Beneficial Claimholder of the Applicable Percentage of Affected Securities."

prior to the first date set by the Court for the commencement of the Confirmation Hearing].

**4.    Obligation of Beneficial Claimholders.** Each Beneficial Claimholder who holds more than the Threshold Amount of Claims as of the Pre-Confirmation Notice Record Date (each, a "Substantial Claimholder") must, in order to comply with the Trading Order, e-mail and fax to counsel to the Debtors a report in the form attached hereto as Annex 1 (the "Final Holdings Report") identifying the nature and amount of Claims held by such Beneficial Holder as of the Pre-Confirmation Notice Record Date. To the extent any Substantial Claimholder did not file an Initial Holdings Report (as defined in the Trading Order), such Substantial Claimholder must also complete paragraph 2 of the Final Holdings Report identifying the Protected Amount of Claims that is in excess of the Threshold Amount of Claims.[2]

**5.    Deadline for Serving Final Holdings Report.** The Final Holdings Report shall be served in accordance with the preceding sentence to the e-mail addresses and fax numbers identified on the attached Annex 1 no later than 5:00 p.m., Eastern Time, on [date that is three days prior to the first date set by the Court for the commencement of the Confirmation Hearing].

Dated: Richmond, Virginia              BY ORDER OF THE COURT
       [Insert Date]

---

[2]     The term "Protected Amount" is defined in the Trading Order as: "the amount of claims of which a Beneficial Claimholder had Beneficial Ownership on the Petition Date, increased by the amount of claims of which such Beneficial Claimholder acquires Beneficial Ownership pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date minus the amount of claims that such Beneficial Claimholder sells pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date."

<u>ANNEX 1</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                             :
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. __-____ (___)
et al.,                      :
                             :   Jointly Administered
           Debtors.          :
                             :
- - - - - - - - - - - - - - x
```

**FINAL HOLDINGS REPORT**

This Final Holdings Report is being submitted as required by the Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing, And Sell-Down Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]) (the "Trading Order"). Unless otherwise defined in this Report, capitalized terms and phrases used herein have the meanings given to them in the Trading Order.

**1. As of the Pre-Confirmation Notice Record Date, the undersigned is the Beneficial Owner of the following Claims:**

| Nature of Claim(s) (e.g., trade claim, rejection damage claim, bond claim, indemnity claim, etc.) | Dollar Amount of Claim(s) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

| | |
|---|---|
| | |
| | |
| | |

**Total**

      2.   **As of the Petition Date, the undersigned's Protected Amount of Claims in excess of the Threshold Amount of Claims was $_____.**

      3.   **In accordance with the Trading Order, a copy of this Final Holdings Report was served by the undersigned by e-mail and fax on:**

      a.   Counsel for the Debtors:

      Gregg M. Galardi, Esq.
      SKADDEN, ARPS, SLATE, MEAGHER AND FLOM
      One Rodney Square, PO Box 636
      Wilmington, Delaware 19899-0636
      Facsimile: (302) 651-3001
      E-mail: Gregg.Galardi@skadden.com

Name:                _____

Social Security
or Federal Tax
I.D. No. (optional):_____

Signature:        _____

If by Authorized
Agent, Name and
Title:              _____

Street Address:
City, State,
Zip Code:         _____

Telephone Number:     _____

Date:                _____

**Exhibit B-4**
(Final Holdings Report)

<u>EXHIBIT B-4</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. __-____ (___)
et al.,                    :
                           :   Jointly Administered
            Debtors.       :
                           :
- - - - - - - - - - - - - - x
```

**FINAL HOLDINGS REPORT**

This Final Holdings Report is being submitted as
required by the Order Under 11 U.S.C. §§ 105, 362 And 541
And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice,
Hearing, And Sell-Down Procedures For Trading In Equity
Securities And Claims Against The Debtors' Estates (Docket
No. [_]) (the "Trading Order"). Unless otherwise defined in
this Report, capitalized terms and phrases used herein have
the meanings given to them in the Trading Order.

**1.  As of the Pre-Confirmation Notice Record Date,
the undersigned is the Beneficial Owner of the following
Claims:**

| Nature of Claim(s) (e.g., trade claim, rejection damage claim, bond claim, indemnity claim, etc.) | Dollar Amount of Claim(s) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |

**Total**

2.    As of the Petition Date, the undersigned's Protected Amount of Claims in excess of the Threshold Amount of Claims was $_____.

3.    In accordance with the Trading Order, a copy of this Final Holdings Report was served by the undersigned by e-mail and fax on:

a.    Counsel for the Debtors:

Gregg M. Galardi, Esq.
SKADDEN, ARPS, SLATE, MEAGHER AND FLOM
One Rodney Square, PO Box 636
Wilmington, Delaware 19899-0636
Facsimile: (302) 651-3001
E-mail: Gregg.Galardi@skadden.com

Name:                        _____

Social Security
or Federal Tax
I.D. No. (optional):_____

Signature:                   _____

If by Authorized
Agent, Name and
Title:                       _____

Street Address:
City, State,
Zip Code:                    _____

Telephone Number:            _____

Date:                        _____

**Exhibit B-5**
(Notice of Obligations of Substantial Claimholders)

<u>Exhibit B-5</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                :
In re:              :  Chapter 11
                :
CIRCUIT CITY STORES, INC., :  Case No. __-____ (___)
<u>et</u> <u>al</u>.,           :
                :  Jointly Administered
         Debtors.  :
                :
- - - - - - - - - - - - - - x

**NOTICE OF (A) CONFIRMATION OF 382(l)(5) PLAN OF
REORGANIZATION, (B) MAXIMUM AMOUNT AND
(C) OBLIGATIONS OF SUBSTANTIAL CLAIMHOLDERS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

**1.    Entry of Order.** On November 10, 2008, the
United States Bankruptcy Court for the Eastern District of
Virginia entered the Order Under 11 U.S.C. §§ 105, 362 And
541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice,
Hearing, And Sell-Down Procedures For Trading In Equity
Securities And Claims Against The Debtors' Estates (Docket
No. [_]) (the "Trading Order"). Unless otherwise defined in
this Notice, capitalized terms and phrases used herein have
the meanings given to them in the Trading Order.

**2.    Notice of Confirmation of 382(l)(5) Plan of
Reorganization.** On [Date], the United States Bankruptcy
Court for the Eastern District of Virginia confirmed the
Plan. The Plan is a 382(l)(5) Plan as defined in the Trading
Order.

**3.    Maximum Amount of Claims that May Be Held by
a Substantial Claimholder.** In accordance with Section 4 of
the Trading Order, the Debtor has calculated the Maximum
Amount of Claims that may be held by [name of Substantial
Claimholder], as of the Effective Date of the 382(l)(5) Plan,
to be $[___]. Such Amount was determined as follows:

[Insert Calculation]

**4.    Sell Down Amount**. The total amount of Claims that all Substantial Claimholders must sell (to parties other than Substantial Claimholders or parties that would become Substantial Claimholders by reason of such sales to them) to effectuate the 382(l)(5) Plan is $[___].

[Insert Calculation]

**5.    Objection to Maximum Amount or Sell Down Amount.** A Substantial Claimholder who has complied with the notice procedures contained in Section 4 of the Trading Order may, no later than 10 calendar days <u>from service</u> of this Sell-Down Notice, object to the manner in which the Maximum Amount or the Sell-Down Amount specified in this Sell-Down Notice were calculated or on the grounds that this Sell-Down Notice contains a mathematical error that would result in requiring the Substantial Claimholder to reduce its ownership below the Maximum Amount or the Protected Amount for such Substantial Claimholder. Any such objection must be e-mailed and faxed to counsel to the Debtors at the e-mail addresses and fax numbers identified on the attached Annex 1. In connection with any such objection, the Substantial Claimholder shall disclose its holdings to counsel to the Debtors as of the time of the filing of the objection and as of the time of any hearing on such objection. The Debtors may serve a new Sell-Down Notice by overnight delivery service within the United States correcting such errors; any Substantial Claimholder required to sell additional Claims as a result of such correction shall have 20 calendar days <u>from service</u> of any new Sell-Down Notice to effect the additional Sell-Down.

**6.    Obligations of Substantial Claimholders**. As ordered and directed in the Trading Order, prior to the Effective Date, each Substantial Claimholder shall sell an amount of Claims equal to its share of the Sell-Down Amount or such other amount necessary so that no Substantial Claimholder shall, as of the Effective Date, hold Claims in excess of the Maximum Amount for such claimholder (the "<u>Sell-Down</u>"). Each Substantial Claimholder shall sell or otherwise transfer its Claims subject to the Sell-Down to unrelated persons or entities; provided further that the Substantial Claimholder shall not have a reasonable basis to believe that such persons or entities, would own, immediately after the contemplated consummation of such

transfer, an amount of Claims in excess of the Maximum
Amount for such claimholder.

       7.   **Notice of Compliance.** A Substantial
Claimholder subject to the Sell-Down shall, before the
Effective Date and as a condition to receiving Affected
Securities, e-mail and fax to counsel to the Debtors at the
e-mail address and fax number identified on the attached
Annex 1, a written statement in the form attached hereto as
Annex 1 that such Substantial Claimholder has complied with
the terms and conditions set forth in this Notice and
Paragraph 4 of the Trading Order and that such Substantial
Claimholder does not hold Claims, as of the Effective Date,
in an amount in excess of the Maximum Amount.

Dated: Richmond, Virginia       BY ORDER OF THE COURT
      [Insert Date]

<u>ANNEX 1</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                            :
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. __-____ (___)
et al.,                     :
                            :   Jointly Administered
            Debtors.        :
                            :
- - - - - - - - - - - - - - x
```

**NOTICE OF COMPLIANCE**

This Notice of Compliance is being submitted as required by the Order Under 11 U.S.C. §§ 105, 362 And 541 And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice, Hearing, And Sell-Down Procedures For Trading In Equity Securities And Claims Against The Debtors' Estates (Docket No. [_]) (the "Trading Order").  Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Trading Order.

**1.**   The undersigned has complied in full with the Sell-Down Procedures set forth in Section 4 of the Trading Order and does not hold Claims, as of the Effective Date, in an amount in excess of $_____ , the Maximum Amount.

**2.**   In accordance with the Trading Order, the undersigned served a copy of this Notice on counsel for the Debtors at the e-mail address(es) and fax number(s) identified below.

**3.   Service Information.**

a.    Counsel for the Debtors:

Gregg M. Galardi, Esq.
SKADDEN, ARPS, SLATE, MEAGHER AND FLOM
One Rodney Square, PO Box 636
Wilmington, Delaware 19899-0636
Facsimile: (302) 651-3001
E-mail: Gregg.Galardi@skadden.com


Name:                          _____

Social Security
or Federal Tax
I.D. No. (optional):_____

Signature:                     _____

If by Authorized
Agent, Name and
Title:                         _____

Street Address:
City, State,
Zip Code:                      _____

Telephone Number:              _____

Date:                          _____

**Exhibit B-6**
(Notice of Compliance)

<u>EXHIBIT B-6</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                                    :
In re:                              :   Chapter 11
                                    :
CIRCUIT CITY STORES, INC.,  :   Case No. __-____ (___)
<u>et</u> <u>al</u>.,                        :
                                    :   Jointly Administered
          Debtors.            :
                                    :
- - - - - - - - - - - - - - x

**NOTICE OF COMPLIANCE**

This Notice of Compliance is being submitted as

required by the Order Under 11 U.S.C. §§ 105, 362 And 541

And Fed. R. Bankr. P. 3001 And 3002 Establishing Notice,

Hearing, And Sell-Down Procedures For Trading In Equity

Securities And Claims Against The Debtors' Estates (Docket

No. [_]) (the "Trading Order").  Unless otherwise defined in

this Notice, capitalized terms and phrases used herein have

the meanings given to them in the Trading Order.

1.    The undersigned has complied in full with the
Sell-Down Procedures set forth in Section 4 of the Trading
Order and does not hold Claims, as of the Effective Date, in
an amount in excess of $_____ , the Maximum Amount.

2.    In accordance with the Trading Order, the
undersigned served a copy of this Notice on counsel for the
Debtors at the e-mail address(es) and fax number(s)
identified below.

3.    **Service Information.**

a.    Counsel for the Debtors:

      Gregg M. Galardi, Esq.
      SKADDEN, ARPS, SLATE, MEAGHER AND FLOM
      One Rodney Square, PO Box 636
      Wilmington, Delaware 19899-0636
      Facsimile: (302) 651-3001
      E-mail: Gregg.Galardi@skadden.com


Name:                        _____

Social Security
or Federal Tax
I.D. No. (optional):_____

Signature:                   _____

If by Authorized
Agent, Name and
Title:                       _____

Street Address:
City, State,
Zip Code:                    _____

Telephone Number:            _____

Date:                        _____

**Exhibit C**
(Notice of Order)

EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                             :
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. __-____ (___)
et al.,                      :
                             :   Jointly Administered
              Debtors.       :
                             :
- - - - - - - - - - - - - - x
```

**NOTICE OF ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND
FED. R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE,
HEARING, AND SELL-DOWN PROCEDURES FOR TRADING IN EQUITY
SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES**

TO ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST OR EQUITY
INTERESTS IN THE DEBTORS[1]:

      PLEASE TAKE NOTICE that on November 10, 2008
("Petition Date"), Circuit City Stores, Inc. ("Circuit
City") and certain of its subsidiaries and affiliates (the
"Affiliate Debtors," and together with Circuit City , the
"Debtors"), commenced cases under chapter 11 of title 11 of
the United States Code 11 U.S.C. §§ 101-1330, as amended
(the "Bankruptcy Code").  Subject to certain exceptions,
section 362 of the Bankruptcy Code operates as a stay of

---

[1]  The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing
Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution
Company of Virginia, Inc. (2821), Circuit City Properties, LLC
(3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency,
Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311),
Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116),
Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit
City Stores PR, LLC (5512).  The address for Circuit City Stores
West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado
80031.  For all other Debtors, the address is 9950 Mayland Drive,
Richmond, Virginia 23233.

any act to obtain possession of property of the Debtors'
estates or of property from the Debtors' estates or to
exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on November 10,
2008, the Debtors filed a motion seeking entry of an order
pursuant to sections 105, 362, and 541 of the Bankruptcy
Code establishing notice, hearing, and sell-down procedures
for trading in equity securities and claims against the
debtors' estates (the "Motion").

PLEASE TAKE FURTHER NOTICE THAT on [_____],
2008, the United States Bankruptcy Court for the Eastern
District of Virginia (the "Court") entered an order
approving the procedures set forth below in order to
preserve the Debtors' net operating losses and certain
other tax attributes ("Tax Attributes") pursuant to
sections 105, 362, and 541 of the Bankruptcy Code (the
"Order"). **Except as otherwise provided in the Order, any
sale or other transfer of claims against or equity
securities in the Debtors in violation of the procedures
set forth below shall be null and void ab initio as an act
in violation of the automatic stay under section 362 of the
Bankruptcy Code.**

PLEASE TAKE FURTHER NOTICE that, pursuant to the
Order, the following procedures shall apply to holding and
trading in EQUITY SECURITIES OF CIRCUIT CITY :

2.    Any purchase, sale, or other transfer of
claims against, or equity securities in, the Debtors in
violation of the procedures set forth herein (including the
notice requirements set forth in Sections 3(a) and 4(a) and
(c) below) shall be null and void ab initio as an act in
violation of the automatic stay under U.S.C. §§ 362 and
105(a) of the Bankruptcy Code.

3.    The following procedures shall apply to
trading in equity securities of Circuit City Stores, Inc.
("Circuit City"):

(a) Any person or entity (as defined in
Treasury Regulations Section 1.382-3(a) for purposes of
this Section 3) who currently is or becomes a Substantial
Shareholder (as defined in Paragraph (e) below) shall file
with this Court, and serve on counsel to the Debtors, a
notice of such status, in the form attached hereto as
Exhibit A-1, on or before the later of (A) twenty (20)

2

calendar days after the effective date of the notice of
entry of this Order or (B) ten (10) calendar days after
becoming a Substantial Shareholder.

(b) At least thirty (30) calendar days prior
to effectuating any transfer of equity securities
(including Options to acquire such securities, as defined
below) that would result in an increase in the amount of
Circuit City Stock beneficially owned by a Substantial
Shareholder or would result in a person or entity becoming
a Substantial Shareholder, such Substantial Shareholder
shall file with this Court, and serve on counsel to the
Debtors, advance written notice, in the form attached
hereto as Exhibit A-2, of the intended transfer of equity
securities.

(c) At least thirty (30) calendar days prior
to effectuating any transfer of equity securities
(including Options to acquire such securities) that would
result in a decrease in the amount of Circuit City Stock
beneficially owned by a Substantial Shareholder or would
result in a person or entity ceasing to be a Substantial
Shareholder, such Substantial Shareholder shall file with
this Court, and serve on counsel to the Debtors, advance
written notice, in the form attached hereto as Exhibit A-3,
of the intended transfer of equity securities (the notices
required to be filed and served under Paragraph (b) and
this Paragraph (c), each a "Notice of Proposed Transfer").

(d) The Debtors shall have thirty (30)
calendar days after receipt of a Notice of Proposed
Transfer to file with this Court and serve on such
Substantial Shareholder an objection to any proposed
transfer of equity securities described in the Notice of
Proposed Transfer on the grounds that such transfer may
adversely affect the Debtors' ability to utilize their Tax
Attributes.  If the Debtors file an objection, such
transaction will not be effective unless approved by a
final and nonappealable order of this Court.  If the
Debtors do not object within such 30-day period, such
transaction may proceed solely as set forth in the Notice
of Proposed Transfer.  Further transactions within the
scope of this Paragraph must be the subject of additional
notices as set forth herein, with an additional 30-day
waiting period.

(e) For purposes of this Order, (A) a
"Substantial Shareholder" is any person or entity which

beneficially owns at least 7,848,226 shares (representing approximately 4.75% of all issued and outstanding shares) of the common stock of ("Circuit City Stock"), and (B) "beneficial ownership" (or any variation thereof of Circuit City Stock and Options to acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock.  An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.  For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire Circuit City Stock may be treated as the owner of such Circuit City Stock.

            4.  The following procedures shall apply to trading in claims against the Debtors:

                (a) Notice of 382(l)(5) Plan and 382(l)(5) Disclosure Statement. The Debtors shall, upon filing a disclosure statement with respect to a 382(l)(5) Plan (a "382(l)(5) Disclosure Statement"), simultaneously file with the Court and further publish and serve in the manner specified in Paragraph (j) below a separate notice ("Disclosure Statement Notice") in substantially the form attached as Exhibit B-1. The Disclosure Statement Notice shall (i) state that a 382(l)(5) Plan has been filed with the Court, (ii) disclose the most current estimate of the Threshold Amount and (iii) set a record date, which shall be 5:00 p.m., Eastern Time, on the date set by the Court that is ten (10) business days prior to the date set for the hearing on the 382(l)(5) Disclosure Statement (the "Disclosure Statement Notice Record Date").  Each Beneficial Claimholder who holds more than the Threshold Amount (each, a "Substantial Claimholder") as of the

4

Disclosure Statement Notice Record Date is hereby ordered and directed to email and fax to counsel to the Debtors a report in the form attached hereto as <u>Exhibit B-2</u> (the "Initial Holdings Report") identifying: (I) the nature and amount of Claims held by such Beneficial Claimholder as of the Disclosure Statement Notice Record Date (the "Initial Holdings"); and (II) the Protected Amount that is in excess of the Threshold Amount. The Initial Holdings Report shall be subject to the confidentiality provisions set forth in Paragraph (i) below and shall be served in accordance with the preceding sentence no later than three (3) business days prior to the first date set by the Court for the hearing to consider the 382(l)(5) Disclosure Statement to the email addresses and fax numbers identified on the attached <u>Exhibit B-2</u>.  In the event that the hearing to consider the 382(l)(5) Disclosure Statement is adjourned or continued, Substantial Claimholders shall not be required to amend or update their Initial Holdings Reports unless, in the event of an adjournment or continuance, the Debtors establish a new Disclosure Statement Notice Record Date and provides notice thereof, in which case the process above will re-commence.

　　　　(b) <u>382(l)(5) Disclosure Statement</u>. The 382(l)(5) Disclosure Statement shall contain information adequate to permit a party entitled to vote on a 382(l)(5) Plan to determine whether a 382(l)(5) Plan provides greater value than possible alternatives and shall include, without limitation, the following disclosures: (i) the net present value of the projected tax savings of the 382(l)(5) Plan as compared to a 382(l)(6) Plan based on the financial projections included in the 382(l)(5) Disclosure Statement; (ii) a description of the restrictions on trading with respect to the common stock and any other securities of the reorganized Debtors (the "<u>Affected Securities</u>") that will be required or imposed under the 382(l)(5) Plan after the Effective Date to preserve such tax savings; (iii) the projected value of the Affected Securities in the aggregate; and (iv) the projected tax savings of the 382(l)(5) Plan as a percentage of the aggregate value of the Affected Securities. In addition, the Debtors shall promptly (and in any event before the end of the hearing on the 382(l)(5) Disclosure Statement) disclose on a separate filing with the SEC on Form 8-K (i) the aggregate amount of Initial Holdings (the "<u>Total Initial Holdings</u>") and (ii) the estimated maximum amount and percentage of the Total Initial Holdings in each class that may be required to be

sold down as provided below. Such disclosures shall be
included in the final 382(l)(5) Disclosure Statement. The
foregoing does not limit in any way the right of any party
in interest to object to the adequacy of the information in
the 382(l)(5) Disclosure Statement.

(c) <u>Notice of Claimholder Acceptance of
382(l)(5) Plan</u>.  The Debtor shall file with the Court and
further publish and serve in the manner specified in
Paragraph (j) below, not less than ten (10) days prior to
the commencement of the Confirmation Hearing, a notice (the
"<u>Pre-Confirmation Notice</u>") substantially in the form
attached hereto as <u>Exhibit B-3</u>, setting forth: (i) a record
date, which shall be 5:00 p.m., Eastern Time, on a date
that is ten (10) days prior to the first date set by the
Court for the Confirmation Hearing (the "<u>Pre-Confirmation
Notice Record Date</u>"); and (ii) identifying the most current
estimate of the Threshold Amount (determined as of the Pre-
Confirmation Notice Record Date). Each Beneficial
Claimholder who is a Substantial Claimholder (as determined
by the Threshold Amount identified in the Pre-Confirmation
Notice) as of the Pre-Confirmation Notice Record Date is
hereby ordered and directed to deliver, via e-mail and fax,
a report in the form attached hereto as <u>Exhibit B-4</u> (the
"Final Holdings Report") identifying the nature and amount
of claims held by such Beneficial Claimholder as of the
Pre-Confirmation Notice Record Date (the "Final Holdings").
The Final Holdings Report shall be subject to the
confidentiality provisions set forth in Paragraph (i) below
and shall be served on counsel to the Debtors no later than
the date that is three (3) business days prior to the first
date set by the Court for the Confirmation Hearing to the
e-mail addresses and fax numbers identified on the attached
<u>Exhibit B-2</u>. For any Substantial Claimholder who did not
serve an Initial Holdings Report, the Final Holdings Report
shall also contain such Substantial Claimholder's Protected
Amount that is in excess of the Threshold Amount.  In the
event that the Confirmation Hearing is adjourned or
continued, Substantial Claimholders shall not be required
to amend or update their Final Holdings Reports unless, in
the event of an adjournment or continuance, the Debtors
establish a new Pre-Confirmation Notice Record Date and
provides notice thereof, in which case the process above
will re-commence.

(d) <u>Sell-Down Notice</u>.  If the Court confirms
the 382(l)(5) Plan, the Debtors shall serve a notice

substantially in the form attached hereto as <u>Exhibit B-5</u>
(the "<u>Sell-Down Notice</u>") by overnight delivery service
within the United States upon each Substantial Claimholder
(as of the Pre-Confirmation Notice Record Date) within five
(5) business days after the entry of the order confirming
the 382(l)(5) Plan.  The Sell-Down Notice shall (i) state
that the 382(l)(5) Plan has been confirmed; (ii) contain
the results of the calculations described in Paragraph
(f)(i) below, including the calculation of the Maximum
Amount and the information used to perform all such
calculations to the extent that the Debtors are not
required by this Order or other confidentiality
restrictions to keep such information confidential; and
(iii) provide notice that, pursuant to this Order, each
Substantial Claimholder is ordered and directed to comply
with the Sell-Down Procedures (set forth in Paragraph (f)
below) before the Effective Date.

        (e) <u>Effective Date</u>.  The Effective Date of
any 382(l)(5) Plan shall not be earlier than thirty (30)
calendar days after the Confirmation Date.

        (f) <u>Sell-Down Procedures</u>.  If and only to the
extent that a 382(l)(5) Plan is confirmed by this Court
then, to the extent necessary to effectuate the 382(l)(5)
Plan, each Beneficial Claimholder who is, as of the Pre-
Confirmation Notice Record Date, a Substantial Claimholder
(other than a Permitted Substantial Claimholder whose
Claims shall not be required to be sold as part of the
Sell-Down pursuant to Paragraph (f)(ii) below), is hereby
ordered and directed to comply with the following sell-down
procedures (the "<u>Sell-Down Procedures</u>"):

            (i)  <u>The Maximum Amount</u>. The
        Debtors shall calculate the maximum amount of
        claims that may be held, as of the Effective Date
        of the 382(l)(5) Plan, by a Substantial
        Claimholder that was a Substantial Claimholder as
        of the Pre-Confirmation Notice Record Date (the
        "<u>Maximum Amount</u>") as follows:

                (1) Based upon the information
        provided by the Substantial Claimholders in the
        Final Holdings Reports, the Debtors shall
        calculate the total amount of claims that all
        Substantial Claimholders must sell to effectuate
        the 382(l)(5) Plan assuming that all Incremental
        Holdings will be sold prior to any Sell-Down of

7

claims held by the Substantial Claimholders prior to the Disclosure Statement Notice Record Date and taking into account in its determination the portion of claims held by Substantial Claimholders that the Debtors reasonably conclude (based on evidence furnished by the Substantial Claimholders) have not existed since a date that was 18 months before the Petition Date and that are not "ordinary course" claims, within the meaning of Treasury Regulations Section 1.382-9(d)(2)(iv) (the "Sell-Down Amount").

(2) If the Sell-Down Amount is less than or equal to the Total Incremental Holdings, the Debtors shall calculate the amount of each Substantial Claimholder's *pro rata* share of the Sell-Down Amount (*i.e.*, the Sell-Down Amount multiplied by a fraction, the numerator of which is the Substantial Claimholder's Incremental Holdings and the denominator of which is the Total Incremental Holdings);

(3) If the Sell-Down Amount exceeds Total Incremental Holdings, the Debtors shall calculate for each Substantial Claimholder the amount of such Substantial Claimholder's *pro rata* share of such excess (*i.e.*, the total amount of such excess multiplied by a fraction, the numerator of which is such Substantial Claimholder's Initial Holdings minus the Threshold Amount and the denominator of which is the Total Initial Holdings in excess of the Threshold Amount of all Substantial Claimholders) and add to that the amount of such Substantial Claimholder's Incremental Holdings; and

(4) For each Substantial Claimholder, the Debtors shall subtract from the total claims held by such Substantial Claimholder (as reported in the Final Holdings Report) such Substantial Claimholder's share of the Sell-Down Amount calculated in accordance with clauses (ii) or (iii) above, as applicable. The difference shall be the Maximum Amount.

(ii) Sell-Down. Prior to the Effective Date, each Substantial Claimholder shall sell an amount of claims equal to its share

of the Sell-Down Amount or such other amount
necessary so that no Substantial Claimholder
shall, as of the Effective Date, hold claims in
excess of the Maximum Amount for such claimholder
(the "<u>Sell-Down</u>"); <u>provided</u>, <u>however</u>, that
notwithstanding anything to the contrary in this
Order, no Beneficial Claimholder shall be
required to sell any claims if such sale would
result in such Beneficial Claimholder having
Beneficial Ownership of an aggregate amount of
Claims that is less than such Beneficial
Claimholder's Protected Amount. Each Substantial
Claimholder shall sell or otherwise transfer its
claims subject to the Sell-Down to unrelated
Entities; <u>provided further</u> that the Substantial
Claimholder shall not have a reasonable basis to
believe that such Entity would own, immediately
after the contemplated consummation of such
transfer, an amount of claims in excess of the
Maximum Amount for such Claimholder.

        (iii)  <u>Objections to Sell-Down
Notices</u>.  A Substantial Claimholder who has
complied with the notice procedures contained in
this Section 4 may, no later than ten (10)
calendar days from service of the Sell-Down
Notice, object to the manner in which the Maximum
Amount or the Sell-Down Amount specified in a
Sell-Down Notice were calculated or on the
grounds that such notice contained a mathematical
error that would result in requiring the
Substantial Claimholder to reduce its ownership
below the Maximum Amount or the Protected Amount
for such Substantial Claimholder. In connection
with any such objection, the Substantial
Claimholder shall disclose its holdings to
counsel to the Debtors as of the time of the
filing of the objection and as of the time of any
hearing on such objection. The Debtors may serve
a new Sell-Down Notice by overnight delivery
service within the United States correcting such
errors; any Substantial Claimholder required to
sell additional claims as a result of such
correction shall have twenty (20) calendar days
from service of any new Sell-Down Notice to
effect the additional Sell-Down.

(iv)  <u>Notice of Compliance</u>.  A
Substantial Claimholder subject to the Sell-Down
shall, before the Effective Date and as a
condition to receiving Affected Securities,
deliver to counsel to the Debtors, a written
statement substantially in the form of <u>Exhibit B-
6</u> hereto that such Substantial Claimholder has
complied with the terms and conditions set forth
in Paragraph (f)(ii) and that such Substantial
Claimholder will not hold claims, as of the
Effective Date, in an amount in excess of the
greater of the Maximum Amount or the Protected
Amount (if any) for such Substantial Claimholder
(the "<u>Notice of Compliance</u>").  Any Substantial
Claimholder who fails to comply with this
provision shall not receive Affected Securities
with respect to any claims in excess of the
greater of such claimholder's Protected Amount or
the then current Threshold Amount.

(v)  <u>Applicable Authority</u>. For the
avoidance of doubt, Section 382 of the I.R.C.,
the Treasury Regulations promulgated thereunder
and all relevant Internal Revenue Service and
judicial authority shall apply in determining
whether the claims of several persons and/or
Entities must be aggregated when testing for
Substantial Claimholder status. For these
purposes and except as specifically provided with
respect to claims ownership in the Treasury
Regulations, the rules and authority identified
in the preceding sentence shall be treated as if
they applied to claims in the same manner as they
apply to stock.

(vi)  <u>Subsequent Substantial
Claimholders</u>. To the extent that any Entity
becomes a Substantial Claimholder after the date
in which Final Holdings Reports are due, the
Court shall retain jurisdiction so that the
Debtors may seek equitable relief similar to the
relief described in this Order in order to
protect the Debtors' ability to apply Section
382(l)(5) of the I.R.C.

(g) <u>Claimholder Participation</u>.  To permit
reliance by the Debtors on Treasury Regulation Section
1.382-9(d)(3), any Beneficial Claimholder that participates

10

in formulating any chapter 11 plan of reorganization of or
on behalf of the Debtors (which shall include, without
limitation, making any suggestions or proposals to the
Debtors or their advisors with regard to such a plan),
shall not, and shall not be asked to, disclose (or
otherwise make evident unless compelled to do so by an
order of a court of competent jurisdiction or some other
applicable legal requirement) to the Debtors that any
claims in which such Beneficial Claimholder has a
beneficial ownership are Newly Traded Claims (the
"Participation Restriction"). For this purpose, the Debtors
acknowledge and agree that the following activities shall
not, where in pursuing such activities the relevant
Beneficial Claimholder does not disclose (or otherwise make
evident) to the Debtors that such Beneficial Claimholder
has beneficial ownership of Newly Traded Claims, constitute
a violation of the Participation Restriction: (a) filing an
objection to a proposed disclosure statement or to
confirmation of a proposed plan of reorganization; (b)
negotiating the terms of, or voting to accept or reject, a
proposed plan of reorganization; (c) reviewing or
commenting on a proposed business plan; (d) membership on
the Creditors' Committee or other official or *ad hoc*
committee; (e) providing information other than with
respect to its claims to the Debtors on a confidential
basis; or (f) taking any action required by this Order. Any
claimholder found by the Court to have violated the
Participation Restriction, and who, as a result, would
prevent the Debtors from implementing a 382(l)(5) Plan,
shall be required to dispose of Newly Traded Claims of
which such Entity has Beneficial Ownership in the manner
specified in Paragraph (f)(ii) above and shall be subject
to the Forfeiture Remedy described in Paragraph (h) below.

        (h) Sanctions for Noncompliance.  If any
Substantial Claimholder fails to comply with the Sell-Down
applicable to it, such Substantial Claimholder shall not be
entitled to receive Beneficial Ownership of any Affected
Securities in connection with the implementation of the
382(l)(5) Plan with respect to any claims required to be
sold pursuant to a Sell-Down Notice.  Any Substantial
Claimholder that violates this Order shall be required to
forfeit the Affected Securities (the "Forfeiture Remedy").
The Debtors may seek to enforce the Forfeiture Remedy, on
notice to the Entity upon whom such sanctions are sought to
be imposed, on an expedited basis. The Debtors also reserve
the right to seek from this Court, on an expedited basis,

other sanctions or damages for a willful violation of this Order, on notice to the Entity upon whom such sanctions are sought to be imposed, including, but not limited to damages for loss of any tax benefits caused by such violation and any injunction or other relief necessary or appropriate to remedy such violation. Any distribution of Affected Securities pursuant to the implementation of the 382(l)(5) Plan that is precluded by an order enforcing the Forfeiture Remedy (the "Forfeited Equity") shall be void *ab initio*. Any Entity that receives Forfeited Equity shall, immediately upon becoming aware of such fact, return the Forfeited Equity to the reorganized Debtors or, if all of the shares properly issued to such Entity and all or any portion of such Forfeited Equity have been sold prior to the time such Entity becomes aware of such fact, such Entity shall return to the reorganized Debtors (a) any Forfeited Equity still held by such Entity and (b) the proceeds attributable to the sale of Forfeited Equity. Any Entity that receives Forfeited Equity and fails to comply with the preceding sentence shall be subject to such additional sanctions as the Court may determine. The reorganized Debtors shall distribute any Forfeited Equity in accordance with the 382(l)(5) Plan.

(i) <u>Confidentiality</u>. The Initial Holdings Report, the Final Holdings Report, the Sell-Down Notices and the Notice of Compliance, and the information contained therein, shall be treated as confidential information and shall be available only to the Debtors and counsel and financial or tax advisors to the Debtors. Each recipient of any Initial Holdings Report, Final Holdings Report, Sell-Down Notice and the Notice of Compliance (or similar notices provided under the Order) shall keep the information contained therein confidential and shall not disclose such information to any Entity (including, without limitation, any member of the Creditors' Committee) unless required to produce it in a legal proceeding or subject to further Court order.

(j) <u>Notice</u>. Any notices required to be published under Section 4 of this Order shall be published in the *Richmond Times-Dispatch*, *The Wall Street Journal* and the *Financial Times*. All notices required to be served shall be served on the following parties via electronic mail if an e-mail address is known, or by overnight mail if an e-mail address is not known: (a) the Office of the United States Trustee for the Eastern District of Virginia

(which shall be sent by overnight mail only); (b) the
Securities and Exchange Commission; (c) the Internal
Revenue Service; (d) the United States Attorney's Office
for the Eastern District of Virginia; (e) counsel to the
Prepetition Lenders; (f) the parties included on the
Debtors' list of fifty (50) largest unsecured creditors;
(g) any statutory committee appointed under Section 1102 of
the Bankruptcy Code; and (h) the transfer agents for any
Circuit City Stock.

(k) The requirements set forth in this Order
are in addition to the requirements of Bankruptcy Rule
3001(e) and applicable securities, corporate and other
laws, and do not excuse compliance therewith.

(l) The Court shall retain jurisdiction to
interpret, enforce, aid in the enforcement of and resolve
any disputes or matters related to any of the provisions of
this Order.

(m) For purposes of Section 4 of this Order,
the following definitions shall apply:

(i) "382(l)(5) Plan" means a plan
of reorganization for the Debtors under chapter
11 of the Bankruptcy Code that provides for or
contemplates the use of net operating loss
carryforwards and other tax attributes under
Section 382(l)(5) of the I.R.C. and that
restricts transfers of Beneficial Ownership of
Affected Securities for not less than two years
after the reorganization in order to avoid an
"ownership change," as such term is defined in
the I.R.C. and regulations promulgated
thereunder.

(ii) "382(l)(6) Plan" means a plan
of reorganization for the Debtors under chapter
11 of the Bankruptcy Code that provides for or
contemplates the use of net operating loss
carryforwards and other tax attributes under, and
subject to the limitations of, Section 382(l)(6)
of the I.R.C.

(iii) "Applicable Percentage" means,
if only one class of Affected Securities is to be
issued pursuant to the terms of a 382(l)(5) Plan,
4.75% of the number of such shares that the

13

Debtors reasonably estimate will be issued at the effective date of such 382(l)(5) Plan. If more than one class of Affected Securities is to be distributed pursuant to the terms of a 382(l)(5) Plan, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the 382(l)(5) Disclosure Statement, and shall be expressed in a manner that makes clear how many shares of common equity would constitute the Applicable Percentage.

(iv)   "Beneficial Ownership" of claims shall be determined in accordance with applicable rules under Section 382 of the I.R.C. and regulations promulgated thereunder, as if such rules applied to claims in the same manner as they apply to equity except to the extent inconsistent with rules and regulations specifically applicable to the ownership of claims.

(v)   "Beneficial Claimholders" means those Entities that have Beneficial Ownership of claims.

(vi)   "claim" shall have the meaning ascribed to that term in Section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.

(vii)   "Confirmation Date" means the date on which the Court enters an order confirming a 382(l)(5) Plan.

(viii)   "Confirmation Hearing" means a hearing held before this Court on the confirmation of the 382(l)(5) Plan pursuant to Section 1129 of the Bankruptcy Code.

(ix)   "382(l)(5) Disclosure Statement" means a disclosure statement filed with the Court relating to a 382(l)(5) Plan.

14

       (x)  "<u>Effective Date</u>" means the date on which the 382(l)(5) Plan becomes effective, but in no event less than thirty (30) calendar days from the Confirmation Date.

       (xi)  "<u>Entity</u>" means a person or entity for purposes of the rules under Section 382 of the I.R.C.

       (xii)  "<u>Incremental Holdings</u>" means the amount, if any, of Claims identified in each Substantial Claimholders' Final Holdings Report in excess of the greater of (i) the amount contained in each respective Substantial Claimholder's Initial Holdings Report and (ii) the Threshold Amount as of the Disclosure Statement Notice Record Date.

       (xiii)  "<u>Newly Traded Claims</u>" means claims (i) with respect to which an Entity acquired beneficial ownership after the date that was 18 months before the Petition Date; and (b) that are not "ordinary course" claims, within the meaning of Treasury Regulations Section 1.382-9(d)(2)(iv), of which the same Entity has always had beneficial ownership.

       (xiv)  "<u>Permitted Substantial Claimholder</u>" means a Substantial Claimholder whom the Debtors reasonably conclude acquired its claim in the ordinary course of the Debtors' trade or business (within the meaning of Treasury Regulations Section 1.382-9(d)(2)(iv)) and has at all times since the creation of such claim held the Beneficial Ownership in that claim.

       (xv)  "<u>Petition Date</u>" means November 10, 2008.

       (xvi)  "<u>Protected Amount</u>" means the amount of claims of which a Beneficial Claimholder had Beneficial Ownership on the Petition Date, increased by the amount of claims of which such Beneficial Claimholder acquires Beneficial Ownership pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date minus the amount of claims that such Beneficial Claimholder sells

pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date.

(xvii)  "Substantial Claimholder" means a Beneficial Claimholder who holds more than the Threshold Amount as of the applicable record date and time, as described in Paragraphs 4(a) and 4(c) above.

(xviii)  "Threshold Amount" means the amount of claims that are projected by the Debtors to entitle the Beneficial Claimholder thereof to become the Beneficial Claimholder of the Applicable Percentage of Affected Securities.

(xix)  "Total Incremental Holdings" means the aggregate amount of all of each Substantial Claimholders' Incremental Holdings.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, PO Box 636, Wilmington, Delaware, 19899, Attn: Gregg M. Galardi, will provide a form of each of the required notices described above.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, Kurtzman Carson Consultants LLC ("KCC"), shall supply a copy of the Order.  KCC shall supply a copy of the Order at a cost to be paid by the person requesting it at the prevailing fee being charged by KCC.  KCC shall accommodate document requests during normal business hours, Monday to Friday (excluding recognized holidays).

**FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE SHALL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY  SECTION 362 OF THE BANKRUPTCY CODE.**

**ANY PROHIBITED PURCHASE, SALE, TRADE, OR OTHER TRANSFER OF CLAIMS AGAINST, OR EQUITY SECURITIES IN, THE DEBTORS IN VIOLATION OF THE ORDER SHALL BE NULL AND VOID AB INITIO AND MAY BE PUNISHED BY CONTEMPT OR OTHER SANCTIONS IMPOSED BY THE BANKRUPTCY COURT.**

**THE DEBTORS PLAN OF REORGANIZATION MAY PROVIDE FOR THE DISALLOWANCE OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS TO THE EXTENT THAT THEY WOULD ENTITLE THE HOLDERS**

**THEREOF TO A DISTRIBUTION OF 4.75% OR MORE OF THE VALUE OF THE REORGANIZED DEBTORS.**

PLEASE TAKE FURTHER NOTICE that the requirements set forth in this Notice are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

Dated: November 10, 2008
      Richmond, Virginia

           SKADDEN, ARPS, SLATE, MEAGHER &
           FLOM, LLP
           Gregg M. Galardi, Esq.
           Ian S. Fredericks, Esq.
           P.O. Box 636
           Wilmington, Delaware 19899-0636
           (302) 651-3000

                  - and -

           SKADDEN, ARPS, SLATE, MEAGHER &
           FLOM, LLP
           Chris L. Dickerson, Esq.
           333 West Wacker Drive
           Chicago, Illinois 60606
           (312) 407-0700

                  - and -

           MCGUIREWOODS LLP
           Dion W. Hayes (VSB No. 34304)
           Douglas Foley (VSB No. 34364)
           One James Center
           901 E. Cary Street
           Richmond, Virginia 23219
           (804) 775-1000

           Proposed Counsel for Debtors and
           Debtors in Possession