| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| One Rodney Square | One James Center |
| PO Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 |
| (302) 651-3000 | (804) 775-1000 |

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

```
        IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION
- - - - - - - - - - - - - - - -x
In re:                          :  Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :  Case No. 08-35653 (KRH)
et al.,                         :
                                :  Jointly Administered
              Debtors.          :  Hrg. Date: December 5, 2008
                                :  at 10:00 a.m. (ET)
                                :  Obj. Due: December 3, 2008 at
                                :  4:00 p.m. (ET)
- - - - - - - - - - - - - - - -x
```

**DEBTORS' APPLICATION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 327(a), 328 AND 1107 AND BANKRUPTCY RULE 2014(a), AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors"),[1] seek entry of an order, under sections 105(a), 327(a), 328 and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), authorizing the employment and retention of FTI Consulting, Inc., together with its wholly owned subsidiaries, agents and independent contractors (collectively "FTI"), as financial advisors and consultants for the Debtors effective as of the date of the filing of these bankruptcy cases, November 10, 2008

---

[1] The Debtors are the following entities: The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

(the "Petition Date").  In support of the Application, the Debtors rely upon the Affidavit of Robert J. Duffy, sworn to on November 17, 2008 (the "Duffy Affidavit"), a copy of which is attached hereto as Exhibit A.  In further support of this Application, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 327(a), 328 and 1107, as supplemented by Bankruptcy Rule 2014 and Local Rule 2014-1.

### BACKGROUND

3.  On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.  The Debtors continue to manage and

operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia (the "United States Trustee") appointed a statutory committee of unsecured creditors. To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. Based in Richmond, Virginia, Debtors are a leading specialty retailer of consumer electronics and operate large nationwide electronics stores throughout the United States and Puerto Rico that sell, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

7. Despite significant revenues, the Debtors have suffered two consecutive years of losses. While the Debtors made every effort to improve their financial performance and implement a global turnaround strategy, they were ultimately unable to consummate a successful restructuring outside of bankruptcy. In large part, the

Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

8. Thus, the Debtors commenced these cases with the immediate goals of obtaining adequate postpetition financing and continuing their restructuring initiatives commenced prior to the Petition Date, including closing 154 stores. In addition, the Debtors will continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

**RELIEF REQUESTED**

9. By this Application, the Debtors seek entry of an order, under Bankruptcy Code sections 105(a), 327(a), 328 and 1107 authorizing the employment and retention of FTI as their financial advisors and consultants in these chapter 11 cases, effective as of the Petition Date.

**BASIS FOR RELIEF REQUESTED**

10. FTI commenced its engagement with the Debtors on August 15, 2008 pursuant to an engagement

5

letter (the "Engagement Letter"), a copy of which is attached to the Duffy Affidavit as Exhibit 1A. Pursuant to the Engagement Letter, the Debtors retained FTI to provide financial advisory and consulting services. FTI and the Debtors executed a revised restructuring engagement letter on November 5, 2008 (together with the Engagement Letter, the "Engagement Letters"), a copy of which is attached to the Duffy Affidavit as Exhibit 1B. The Debtors and FTI have worked closely with respect to the matters set forth in both Engagement Letters. FTI has assisted the Debtors in the financial aspects of their restructuring efforts and in the Debtors' preparation of these bankruptcy cases.

11. The Debtors are familiar with the professional standing and reputation of FTI. Indeed, the consideration of this professional standing and reputation was a critical element in the Debtors' decision to enter into the Engagement Letters between the Debtors and FTI. Among other things, the Debtors understand that FTI has a wealth of experience in providing financial advisory and consulting services in restructurings and reorganizations and enjoys an

excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

12. Since the time FTI was first engaged by the Debtors, FTI has developed a great deal of institutional knowledge regarding the Debtors' operations, finance and systems. The Debtors believe that this institutional experience and knowledge will be valuable to the Debtors in their efforts to reorganize.

13. The Debtors believe that the services of FTI will be critical to the Debtors' efforts to maximize the value of their estates and to reorganize successfully. Further, the Debtors believe that FTI is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

14. Accordingly, the Debtors wish to retain FTI to provide assistance during these bankruptcy cases pursuant to the terms of the Engagement Letters.

**SCOPE OF SERVICES**

15. Pursuant to the terms of the Engagement Letters, FTI has provided, is providing and will continue to provide such consulting and advisory

services[2] as FTI and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases.  Specifically, FTI will render various services to the Debtors including, but not limited to, the following:

**Store Footprint Analysis**
- Analyze liquidity and earnings impact of potential store closures.
- Provide assistance with contract terms for disposition of leases.
- Develop informational materials to support store closing processes.
- Review procedure for projecting revenue, occupancy costs and inventory levels for potential closing stores.
- Advise on "best practices" for drafting an agency agreement for inventory disposition and on negotiating structure for real estate disposition.
- Prepare information package for landlord conference calls and participate in lease termination discussions.
- Coordinate with such third party real estate advisors as may be retained by the Company in conjunction with real estate analyses and related negotiations.

**Liquidity Forecasting**
- Evaluate current liquidity position and expected future cash flows.
- Assist with management and control of cash disbursements.

---

[2]  Capitalized terms not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Engagement Letters.

- Advise management on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.

**Restructuring/Other Advisory Services**
- Assist with development of an out-of-court restructuring plan and related financial projections.
- Assess potential EBITDA based on store closing strategy and other restructuring initiatives.
- Analyze long term capital need to effectuate potential out-of court restructuring and capital structure alternatives.
- Assist with working capital management and liquidity forecasting.
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a potential out-of-court restructuring.
- Assist management with development of employee retention and communications programs.
- Assist management in developing strategy relating to merchandise and other vendors.
- Assist management and, if necessary, other advisors in developing a strategy relating to landlords in conjunction with a potential out-of-court restructuring.
- Assist management and, if necessary, other advisors in developing strategy relating to existing and prospective capital providers in conjunction with a potential out-of-court restructuring.
- Provide weekly status and fee updates to management personnel designated by the Company
- Provide other services as requested by management.

**Asset Sales**
- Assist management with the development and implementation of a store closing process including marketing certain stores identified by the Company for closure (including, but not limited to, inventory, real estate, furniture

9

      fixtures and equipment other tangible assets) to inventory disposition firms including conducting a 363 sale process, contacting potential buyers, facilitating due diligence requests, negotiating asset purchase agreement(s) and conducting a final auction.
- Prepare "bid packages" for Liquidators and manage selection process.
- Solicit potential inventory Liquidators for going-out-of-business sale process.
- Assist the Company in the negotiation of an Agency agreement.
- Manage the process to liquidate stores and conduct going-out-business sales in the ordinary course of business.
- Solicit bids from real estate consulting firms to evaluate lease mitigation strategies.

- Assist with data collection and information gathering related to third party due diligence.
- Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing plan of reorganization scenarios, 363 sales or other potential sales of assets or business units.

**Contingency Planning**
- Assist management and the Board of Directors in contingency planning including the evaluation, planning and execution of a potential Chapter 11 filing.
- Assist Company personnel with the communications and negotiations, at your request and under your guidance, with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.
- Advise and assist the Company in the compilation and preparation of financial information necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

10

- Assist the Company in the preparation of a liquidation valuation for a reorganization plan and/or negotiation purposes.
- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.
- Advise and assist the Company in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action.
- Assist the Debtors in the preparation of financial related disclosures required by this Court including the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and Monthly Operating Reports.
- Assist the Debtors in claims processing, analysis, and reporting, including plan classification modeling and claim estimation.
- Assist the Debtors in responding to and tracking reclamation, 503(b)(9) and consignment claims.

**Financing**
- Lead efforts to arrange second lien financing and refinancing of the existing senior debt or debtor-in-possession ("DIP") financing in a Chapter 11 filing.
- Advise the Company in the process of identifying and reviewing debtor in possession ("DIP") financing and assist the Company in preparing a collateral package in support of such financing.

**Other**
- Assist with such other accounting and financial advisory services as requested by the Company and/or the Board of Directors consistent with the role of a financial advisor and not duplicative of services provided by other professionals.

**FTI'S DISINTERESTEDNESS**

16. FTI has informed the Debtors that, except as may be set forth in the Duffy Affidavit, it (i) has no connection with the Debtors, its creditors or other parties in interest in this case; (ii) does not hold or represent any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined within Bankruptcy Code section 101(14).

17. FTI has further informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts, connections or relationships are discovered or arise, FTI will supplement its disclosure to the Court.

18. FTI has also agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

19. The Debtors believe that FTI is not owed any amounts with respect to its prepetition fees and expenses.

**TERMS OF RETENTION**

20. The Debtors understand that FTI intends to apply to the Court for allowances of compensation and reimbursement of expenses for financial advisory and consultants support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court and guidelines established by the United States Trustee.  The customary hourly rates, subject to periodic adjustments, charged by FTI's professionals anticipated to be assigned to this case are as follows:

**Standard Hourly Rates**

| | |
|---|---|
| Senior Managing Directors | $650 - $715 |
| Directors/Managing Directors | $475 - $620 |
| Consultants/Senior Consultants | $235 - $415 |
| Administrative/Paraprofessionals | $95  - $190 |

**Completion Fee**

21. The Company, in its sole and absolute discretion, may pay FTI (i) a fee (a "Completion Fee") in the event a restructuring or sale transaction is consummated to the satisfaction of the Company and (ii) a fee (a "Financing Fee") in the event additional financing is obtained.  The Completion Fee may be paid

to FTI under the following scenarios:

- In the event the Company consummates a plan, reorganization or sale transaction within 180 days of the filing, a Completion Fee of up to $3.5 million.

- In the event the Company completes any other restructuring, plan, reorganization or sale transaction not described above, a Completion Fee of up to $1 million.

The Financing Fee may be paid to FTI under the following scenarios:

**Financing Fee**

**Second Lien Financing**

- A total Financing Fee of 1.0% of the commitment of second lien DIP financing will be earned by FTI. Such fees will be earned and paid upon interim court approval or closing of such financing.

**Senior Loan Financing**

- In the event the Company seeks to refinance its existing senior debt outside of a chapter 11 proceeding or secure senior debt as part of a DIP financing, a financing fee of .25% of the commitment amount will be earned and paid upon interim court approval or closing of such financing.
- A total financing fee of 0.25% of the commitment of senior DIP financing will be earned by FTI. Such fees will be earned and paid upon interim court approval or closing of such financing.

22. FTI has requested that it be engaged under a general retainer. The Debtors believe that FTI should be employed under a general retainer because of the variety and complexity of the services that will be required during these proceedings.

23. FTI has received from the Debtors total "on account" cash in the amount of $750,000 (the "On-Account Cash"), which was increased from $550,000 on November 5, 2008. Attached as Exhibit 4 to the Duffy Affidavit is a list of the invoices sent by FTI and the payments made by the Company. As set forth on such Exhibit 4, since commencing the engagement, FTI has invoiced the Company in the aggregate amount of $3,228,924, which amount reflects $2,336,490 billed to the Company for professional services, $142,434 for out of pocket expense reimbursement and the $750,000 held as On-Account Cash. As also shown on Exhibit 4, prior to the Petition Date, FTI applied $0 of its initial $750,000 cash on account for estimated fees and expenses.

24. FTI has informed the Debtors that as promptly as practicable after all fees and charges

accrued prior to the Petition Date have been finally posted within FTI's computerized billing system, FTI will issue a final billing statement to the Company for the actual fees, charges, and disbursements incurred for the period prior to the Petition Date (the "Final Prepetition Bill Amount"). Pursuant to the Engagement Letters, and subject to any orders of the Court, FTI will deduct the Final Prepetition Bill Amount from the On-Account Cash. To the extent that the Final Prepetition Bill Amount is less than the On-Account Cash, FTI has indicated that it will hold the full amount of the difference as a post-petition retainer to be applied against any amounts approved by the Court in connection with FTI's final fee application. In the event that the Final Prepetition Bill Amount exceeds the On-Account Cash, FTI has agreed to waive any claim against the Debtors for payment with respect to the amount by which the Final Prepetition Bill Amount exceeds the On-Account Cash. FTI has further informed the Debtors that the On-Account Cash will not be segregated by FTI in a separate account.

**NOTICE**

25.   Notice of this Application has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 136).  The Debtors submit that, under the circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

26.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Application and all applicable authority is set forth in the Application, the Debtors request that the requirement that all applications be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

27.   No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated:    Richmond, Virginia
         November 18, 2008

Circuit City Stores, Inc.


/s/ Bruce H. Besanko
Bruce H. Besanko
Executive Vice President and Chief Financial Officer

Dated: November 18, 2008
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and Debtors in Possession

**EXHIBIT A**
**Duffy Affidavit**

631569-Chicago Server 1A - MSW