```
Gregg M. Galardi, Esq.                      Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.                     Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,       MCGUIREWOODS LLP
LLP                                         One James Center
One Rodney Square                           901 E. Cary Street
PO Box 636                                  Richmond, Virginia 23219
Wilmington, Delaware 19899-0636             (804) 775-1000
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors and
Debtors in Possession
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653-KRH
et al.,                       :
                              :   Jointly Administered
              Debtors.        :
                              :
- - - - - - - - - - - - - - - x
```

**NOTICE OF ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541
AND FED. R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE,
HEARING, AND SELL-DOWN PROCEDURES FOR TRADING IN EQUITY
SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES**

**TO ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST OR EQUITY
INTERESTS IN THE DEBTORS:**[1]

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,

PLEASE TAKE NOTICE that on November 10, 2008 ("Petition Date"), Circuit City Stores, Inc. ("Circuit City") and certain of its subsidiaries and affiliates (the "Affiliate Debtors," and together with Circuit City , the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on November 10, 2008, the Debtors filed a motion seeking entry of an order pursuant to sections 105, 362, and 541 of the Bankruptcy Code establishing notice, hearing, and sell-down procedures for trading in equity securities and claims against the debtors' estates (the "Motion").

PLEASE TAKE FURTHER NOTICE THAT on November 13, 2008, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") entered an order approving the procedures set forth below in order to preserve the Debtors' net operating losses and certain other tax attributes ("Tax Attributes") pursuant to sections 105, 362, and 541 of the Bankruptcy Code (the "Order"). **Except as otherwise provided in the Order, any sale or other transfer of claims against or equity securities in the Debtors in violation of the procedures set forth below shall be null and void <u>ab</u> <u>initio</u> as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.**

PLEASE TAKE FURTHER NOTICE that:

Section 1. Pursuant to the Order, the following procedures shall apply to transfers of claims against, or equity securities in, the Debtors.

Section 2. **Generally.** Any purchase, sale, or other transfer of claims against, or equity securities in, the Debtors in violation of the procedures set forth herein (including the notice requirements set forth in Sections 3(a) and 4(a) and (c)

---

Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

below) shall be null and void <u>ab initio</u> as an act in violation of the automatic stay under U.S.C. §§ 362 and 105(a) of the Bankruptcy Code.

Section 3. **Equity Securities**. The following procedures shall apply to trading in equity securities of Circuit City Stores, Inc. ("Circuit City"):

(a) Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 3) who currently is or becomes a Substantial Shareholder (as defined in Paragraph (e) below) shall file with this Court, and serve on counsel to the Debtors, a notice of such status, in the form attached hereto as <u>Exhibit A-1</u>, on or before the later of (A) twenty (20) calendar days after the effective date of the notice of entry of the Order or (B) ten (10) calendar days after becoming a Substantial Shareholder.

(b) At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities, as defined below) that would result in an increase in the amount of Circuit City Stock beneficially owned by a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as <u>Exhibit A-2</u>, of the intended transfer of equity securities.

(c) At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of Circuit City Stock beneficially owned by a Substantial Shareholder or would result in a person or entity ceasing to be a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as <u>Exhibit A-3</u>, of the intended transfer of equity securities (the notices required to be filed and served under Paragraph (b) and this Paragraph (c), each a "<u>Notice of Proposed Transfer</u>").

(d) The Debtors shall have thirty (30) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Substantial Shareholder an objection to any proposed transfer of equity securities described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors file an objection,

such transaction will not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not object within such 30-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer.  Further transactions within the scope of this Paragraph must be the subject of additional notices as set forth herein, with an additional 30-day waiting period.

(e) For purposes of this Notice, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 7,848,226 shares (representing approximately 4.75% of all issued and outstanding shares) of the common stock of ("Circuit City Stock"), and (B) "beneficial ownership" (or any variation thereof of Circuit City Stock and Options to acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock.  An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture; contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.  For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire Circuit City Stock may be treated as the owner of such Circuit City Stock.

Section 4.  **Claims**.  The following procedures shall apply to trading in claims against the Debtors:

(a) Notice of 382(l)(5) Plan and 382(l)(5) Disclosure Statement.  The Debtors shall, upon filing a disclosure statement with respect to a 382(l)(5) Plan (a "382(l)(5) Disclosure Statement"), simultaneously file with the Court and further publish and serve in the manner specified in Paragraph (j) below a separate notice ("Disclosure Statement Notice") in substantially the form attached as Exhibit B-1. The Disclosure Statement Notice shall (i) state that a 382(l)(5) Plan has been filed with the Court, (ii) disclose the most current estimate of the Threshold Amount and (iii) set a record

4

date, which shall be 5:00 p.m., Eastern Time, on the date set by the Court that is ten (10) business days prior to the date set for the hearing on the 382(l)(5) Disclosure Statement (the "Disclosure Statement Notice Record Date").  Each Beneficial Claimholder who holds more than the Threshold Amount (each, a "Substantial Claimholder") as of the Disclosure Statement Notice Record Date is hereby ordered and directed to email and fax to counsel to the Debtors a report in the form attached hereto as Exhibit B-2 (the "Initial Holdings Report") identifying: (I) the nature and amount of Claims held by such Beneficial Claimholder as of the Disclosure Statement Notice Record Date (the "Initial Holdings"); and (II) the Protected Amount that is in excess of the Threshold Amount. The Initial Holdings Report shall be subject to the confidentiality provisions set forth in Paragraph (i) below and shall be served in accordance with the preceding sentence no later than three (3) business days prior to the first date set by the Court for the hearing to consider the 382(l)(5) Disclosure Statement to the email addresses and fax numbers identified on the attached Exhibit B-2.  In the event that the hearing to consider the 382(l)(5) Disclosure Statement is adjourned or continued, Substantial Claimholders shall not be required to amend or update their Initial Holdings Reports unless, in the event of an adjournment or continuance, the Debtors establish a new Disclosure Statement Notice Record Date and provides notice thereof, in which case the process above will re-commence.

(b) 382(l)(5) Disclosure Statement. The 382(l)(5) Disclosure Statement shall contain information adequate to permit a party entitled to vote on a 382(l)(5) Plan to determine whether a 382(l)(5) Plan provides greater value than possible alternatives and shall include, without limitation, the following disclosures: (i) the net present value of the projected tax savings of the 382(l)(5) Plan as compared to a 382(l)(6) Plan based on the financial projections included in the 382(l)(5) Disclosure Statement; (ii) a description of the restrictions on trading with respect to the common stock and any other securities of the reorganized Debtors (the "Affected Securities") that will be required or imposed under the 382(l)(5) Plan after the Effective Date to preserve such tax savings; (iii) the projected value of the Affected Securities in the aggregate; and (iv) the projected tax savings of the 382(l)(5) Plan as a percentage of the aggregate value of the Affected Securities. In addition, the Debtors shall promptly (and in any event before the end of the hearing on the 382(l)(5) Disclosure Statement) disclose on a separate filing with the SEC on Form 8-K (i) the aggregate amount of Initial Holdings (the

"Total Initial Holdings") and (ii) the estimated maximum amount and percentage of the Total Initial Holdings in each class that may be required to be sold down as provided below. Such disclosures shall be included in the final 382(1)(5) Disclosure Statement. The foregoing does not limit in any way the right of any party in interest to object to the adequacy of the information in the 382(1)(5) Disclosure Statement.

(c) Notice of Claimholder Acceptance of 382(1)(5) Plan. The Debtor shall file with the Court and further publish and serve in the manner specified in Paragraph (j) below, not less than ten (10) days prior to the commencement of the Confirmation Hearing, a notice (the "Pre-Confirmation Notice") substantially in the form attached hereto as Exhibit B-3, setting forth: (i) a record date, which shall be 5:00 p.m., Eastern Time, on a date that is ten (10) days prior to the first date set by the Court for the Confirmation Hearing (the "Pre-Confirmation Notice Record Date"); and (ii) identifying the most current estimate of the Threshold Amount (determined as of the Pre-Confirmation Notice Record Date). Each Beneficial Claimholder who is a Substantial Claimholder (as determined by the Threshold Amount identified in the Pre-Confirmation Notice) as of the Pre-Confirmation Notice Record Date is hereby ordered and directed to deliver, via e-mail and fax, a report in the form attached hereto as Exhibit B-4 (the "Final Holdings Report") identifying the nature and amount of claims held by such Beneficial Claimholder as of the Pre-Confirmation Notice Record Date (the "Final Holdings"). The Final Holdings Report shall be subject to the confidentiality provisions set forth in Paragraph (i) below and shall be served on counsel to the Debtors no later than the date that is three (3) business days prior to the first date set by the Court for the Confirmation Hearing to the e-mail addresses and fax numbers identified on the attached Exhibit B-2. For any Substantial Claimholder who did not serve an Initial Holdings Report, the Final Holdings Report shall also contain such Substantial Claimholder's Protected Amount that is in excess of the Threshold Amount. In the event that the Confirmation Hearing is adjourned or continued, Substantial Claimholders shall not be required to amend or update their Final Holdings Reports unless, in the event of an adjournment or continuance, the Debtors establish a new Pre-Confirmation Notice Record Date and provides notice thereof, in which case the process above will re-commence.

(d) Sell-Down Notice. If the Court confirms the 382(1)(5) Plan, the Debtors shall serve a notice substantially in the form attached hereto as Exhibit B-5 (the "Sell-Down

6

Notice") by overnight delivery service within the United States upon each Substantial Claimholder (as of the Pre-Confirmation Notice Record Date) within five (5) business days after the entry of the order confirming the 382(l)(5) Plan.  The Sell-Down Notice shall (i) state that the 382(l)(5) Plan has been confirmed; (ii) contain the results of the calculations described in Paragraph (f)(i) below, including the calculation of the Maximum Amount and the information used to perform all such calculations to the extent that the Debtors are not required by the Order or other confidentiality restrictions to keep such information confidential; and (iii) provide notice that, pursuant to the Order, each Substantial Claimholder is ordered and directed to comply with the Sell-Down Procedures (set forth in Paragraph (f) below) before the Effective Date.

(e) Effective Date.  The Effective Date of any 382(l)(5) Plan shall not be earlier than thirty (30) calendar days after the Confirmation Date.

(f) Sell-Down Procedures.  If and only to the extent that a 382(l)(5) Plan is confirmed by this Court then, to the extent necessary to effectuate the 382(l)(5) Plan, each Beneficial Claimholder who is, as of the Pre-Confirmation Notice Record Date, a Substantial Claimholder (other than a Permitted Substantial Claimholder whose Claims shall not be required to be sold as part of the Sell-Down pursuant to Paragraph (f)(ii) below), is hereby ordered and directed to comply with the following sell-down procedures (the "Sell-Down Procedures"):

(i) The Maximum Amount. The Debtors shall calculate the maximum amount of claims that may be held, as of the Effective Date of the 382(l)(5) Plan, by a Substantial Claimholder that was a Substantial Claimholder as of the Pre-Confirmation Notice Record Date (the "Maximum Amount") as follows:

(1) Based upon the information provided by the Substantial Claimholders in the Final Holdings Reports, the Debtors shall calculate the total amount of claims that all Substantial Claimholders must sell to effectuate the 382(l)(5) Plan assuming that all Incremental Holdings will be sold prior to any Sell-Down of claims held by the Substantial Claimholders prior to the Disclosure Statement Notice Record Date and taking into account in its determination the portion of claims held by Substantial Claimholders that the Debtors reasonably conclude (based on evidence furnished by the

7

Substantial Claimholders) have not existed since a date that was 18 months before the Petition Date and that are not "ordinary course" claims, within the meaning of Treasury Regulations Section 1.382-9(d)(2)(iv) (the "Sell-Down Amount").

(2) If the Sell-Down Amount is less than or equal to the Total Incremental Holdings, the Debtors shall calculate the amount of each Substantial Claimholder's *pro rata* share of the Sell-Down Amount (*i.e.*, the Sell-Down Amount multiplied by a fraction, the numerator of which is the Substantial Claimholder's Incremental Holdings and the denominator of which is the Total Incremental Holdings);

(3) If the Sell-Down Amount exceeds Total Incremental Holdings, the Debtors shall calculate for each Substantial Claimholder the amount of such Substantial Claimholder's *pro rata* share of such excess (*i.e.*, the total amount of such excess multiplied by a fraction, the numerator of which is such Substantial Claimholder's Initial Holdings minus the Threshold Amount and the denominator of which is the Total Initial Holdings in excess of the Threshold Amount of all Substantial Claimholders) and add to that the amount of such Substantial Claimholder's Incremental Holdings; and

(4) For each Substantial Claimholder, the Debtors shall subtract from the total claims held by such Substantial Claimholder (as reported in the Final Holdings Report) such Substantial Claimholder's share of the Sell-Down Amount calculated in accordance with clauses (ii) or (iii) above, as applicable. The difference shall be the Maximum Amount.

(ii) Sell-Down. Prior to the Effective Date, each Substantial Claimholder shall sell an amount of claims equal to its share of the Sell-Down Amount or such other amount necessary so that no Substantial Claimholder shall, as of the Effective Date, hold claims in excess of the Maximum Amount for such claimholder (the "Sell-Down"); provided, however, that notwithstanding anything to the contrary in the Order, no Beneficial Claimholder shall be required to sell any claims if such sale would result in such Beneficial Claimholder having Beneficial Ownership of

8

an aggregate amount of Claims that is less than such Beneficial Claimholder's Protected Amount. Each Substantial Claimholder shall sell or otherwise transfer its claims subject to the Sell-Down to unrelated Entities; provided further that the Substantial Claimholder shall not have a reasonable basis to believe that such Entity would own, immediately after the contemplated consummation of such transfer, an amount of claims in excess of the Maximum Amount for such Claimholder.

(iii) Objections to Sell-Down Notices. A Substantial Claimholder who has complied with the notice procedures contained in this Section 4 may, no later than ten (10) calendar days from service of the Sell-Down Notice, object to the manner in which the Maximum Amount or the Sell-Down Amount specified in a Sell-Down Notice were calculated or on the grounds that such notice contained a mathematical error that would result in requiring the Substantial Claimholder to reduce its ownership below the Maximum Amount or the Protected Amount for such Substantial Claimholder. In connection with any such objection, the Substantial Claimholder shall disclose its holdings to counsel to the Debtors as of the time of the filing of the objection and as of the time of any hearing on such objection. The Debtors may serve a new Sell-Down Notice by overnight delivery service within the United States correcting such errors; any Substantial Claimholder required to sell additional claims as a result of such correction shall have twenty (20) calendar days from service of any new Sell-Down Notice to effect the additional Sell-Down.

(iv) Notice of Compliance. A Substantial Claimholder subject to the Sell-Down shall, before the Effective Date and as a condition to receiving Affected Securities, deliver to counsel to the Debtors, a written statement substantially in the form of Exhibit B-6 hereto that such Substantial Claimholder has complied with the terms and conditions set forth in Paragraph (f)(ii) and that such Substantial Claimholder will not hold claims, as of the Effective Date, in an amount in excess of the greater of the Maximum Amount or the Protected Amount (if any) for such Substantial Claimholder (the "Notice of Compliance"). Any Substantial Claimholder who

9

fails to comply with this provision shall not receive Affected Securities with respect to any claims in excess of the greater of such claimholder's Protected Amount or the then current Threshold Amount.

      (v) <u>Applicable Authority</u>. For the avoidance of doubt, Section 382 of the I.R.C., the Treasury Regulations promulgated thereunder and all relevant Internal Revenue Service and judicial authority shall apply in determining whether the claims of several persons and/or Entities must be aggregated when testing for Substantial Claimholder status. For these purposes and except as specifically provided with respect to claims ownership in the Treasury Regulations, the rules and authority identified in the preceding sentence shall be treated as if they applied to claims in the same manner as they apply to stock.

      (vi) <u>Subsequent Substantial Claimholders</u>. To the extent that any Entity becomes a Substantial Claimholder after the date in which Final Holdings Reports are due, the Court shall retain jurisdiction so that the Debtors may seek equitable relief similar to the relief described in the Order in order to protect the Debtors' ability to apply Section 382(l)(5) of the I.R.C.

      (g) <u>Claimholder Participation</u>. To permit reliance by the Debtors on Treasury Regulation Section 1.382-9(d)(3), any Beneficial Claimholder that participates in formulating any chapter 11 plan of reorganization of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisors with regard to such a plan), shall not, and shall not be asked to, disclose (or otherwise make evident unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement) to the Debtors that any claims in which such Beneficial Claimholder has a beneficial ownership are Newly Traded Claims (the "<u>Participation Restriction</u>"). For this purpose, the Debtors acknowledge and agree that the following activities shall not, where in pursuing such activities the relevant Beneficial Claimholder does not disclose (or otherwise make evident) to the Debtors that such Beneficial Claimholder has beneficial ownership of Newly Traded Claims, constitute a violation of the Participation Restriction: (a) filing an objection to a proposed disclosure statement or to confirmation of a proposed plan of reorganization; (b) negotiating the terms

10

of, or voting to accept or reject, a proposed plan of reorganization; (c) reviewing or commenting on a proposed business plan; (d) membership on the Creditors' Committee or other official or *ad hoc* committee; (e) providing information other than with respect to its claims to the Debtors on a confidential basis; or (f) taking any action required by the Order. Any claimholder found by the Court to have violated the Participation Restriction, and who, as a result, would prevent the Debtors from implementing a 382(l)(5) Plan, shall be required to dispose of Newly Traded Claims of which such Entity has Beneficial Ownership in the manner specified in Paragraph (f)(ii) above and shall be subject to the Forfeiture Remedy described in Paragraph (h) below.

(h) <u>Sanctions for Noncompliance</u>. If any Substantial Claimholder fails to comply with the Sell-Down applicable to it, such Substantial Claimholder shall not be entitled to receive Beneficial Ownership of any Affected Securities in connection with the implementation of the 382(l)(5) Plan with respect to any claims required to be sold pursuant to a Sell-Down Notice. Any Substantial Claimholder that violates the Order shall be required to forfeit the Affected Securities (the "<u>Forfeiture Remedy</u>"). The Debtors may seek to enforce the Forfeiture Remedy, on notice to the Entity upon whom such sanctions are sought to be imposed, on an expedited basis. The Debtors also reserve the right to seek from this Court, on an expedited basis, other sanctions or damages for a willful violation of the Order, on notice to the Entity upon whom such sanctions are sought to be imposed, including, but not limited to damages for loss of any tax benefits caused by such violation and any injunction or other relief necessary or appropriate to remedy such violation. Any distribution of Affected Securities pursuant to the implementation of the 382(l)(5) Plan that is precluded by an order enforcing the Forfeiture Remedy (the "Forfeited Equity") shall be void *ab initio*. Any Entity that receives Forfeited Equity shall, immediately upon becoming aware of such fact, return the Forfeited Equity to the reorganized Debtors or, if all of the shares properly issued to such Entity and all or any portion of such Forfeited Equity have been sold prior to the time such Entity becomes aware of such fact, such Entity shall return to the reorganized Debtors (a) any Forfeited Equity still held by such Entity and (b) the proceeds attributable to the sale of Forfeited Equity. Any Entity that receives Forfeited Equity and fails to comply with the preceding sentence shall be subject to such additional sanctions as the Court may determine. The

reorganized Debtors shall distribute any Forfeited Equity in accordance with the 382(1)(5) Plan.

    (i) <u>Confidentiality</u>. The Initial Holdings Report, the Final Holdings Report, the Sell-Down Notices and the Notice of Compliance, and the information contained therein, shall be treated as confidential information and shall be available only to the Debtors and counsel and financial or tax advisors to the Debtors. Each recipient of any Initial Holdings Report, Final Holdings Report, Sell-Down Notice and the Notice of Compliance (or similar notices provided under the Order) shall keep the information contained therein confidential and shall not disclose such information to any Entity (including, without limitation, any member of the Creditors' Committee) unless required to produce it in a legal proceeding or subject to further Court order.

    (j) <u>Notice</u>. Any notices required to be published under Section 4 of this Notice shall be published in the *Richmond Times-Dispatch*, *The Wall Street Journal* and the *Financial Times*. All notices required to be served shall be served on the following parties via electronic mail if an e-mail address is known, or by overnight mail if an e-mail address is not known: (a) the Office of the United States Trustee for the Eastern District of Virginia (which shall be sent by overnight mail only); (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Eastern District of Virginia; (e) counsel to the Prepetition Lenders; (f) the parties included on the Debtors' list of fifty (50) largest unsecured creditors; (g) any statutory committee appointed under Section 1102 of the Bankruptcy Code; and (h) the transfer agents for any Circuit City Stock.

    (k) The Court shall retain jurisdiction to interpret, enforce, aid in the enforcement of and resolve any disputes or matters related to any of the provisions of the Order.

    (l) For purposes of Section 4 of this Notice, the following definitions shall apply:

    (i) "<u>382(1)(5) Plan</u>" means a plan of reorganization for the Debtors under chapter 11 of the Bankruptcy Code that provides for or contemplates the use of net operating loss carryforwards and other tax attributes under Section 382(1)(5) of the I.R.C. and that restricts transfers of Beneficial Ownership of

Affected Securities for not less than two years after the reorganization in order to avoid an "ownership change," as such term is defined in the I.R.C. and regulations promulgated thereunder.

(ii) "382(l)(6) Plan" means a plan of reorganization for the Debtors under chapter 11 of the Bankruptcy Code that provides for or contemplates the use of net operating loss carryforwards and other tax attributes under, and subject to the limitations of, Section 382(l)(6) of the I.R.C.

(iii) "Applicable Percentage" means, if only one class of Affected Securities is to be issued pursuant to the terms of a 382(1)(5) Plan, 4.75% of the number of such shares that the Debtors reasonably estimate will be issued at the effective date of such 382(l)(5) Plan. If more than one class of Affected Securities is to be distributed pursuant to the terms of a 382(l)(5) Plan, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the 382(l)(5) Disclosure Statement, and shall be expressed in a manner that makes clear how many shares of common equity would constitute the Applicable Percentage.

(iv) "Beneficial Ownership" of claims shall be determined in accordance with applicable rules under Section 382 of the I.R.C. and regulations promulgated thereunder, as if such rules applied to claims in the same manner as they apply to equity except to the extent inconsistent with rules and regulations specifically applicable to the ownership of claims.

(v) "Beneficial Claimholders" means those Entities that have Beneficial Ownership of claims.

(vi) "claim" shall have the meaning ascribed to that term in Section 101(5) of the Bankruptcy Code and includes, without limitation, a lessor's right to any current or future payment under or arising out of any lease with respect to which any Debtor is a lessee.

   (vii)  "<u>Confirmation Date</u>" means the date on which the Court enters an order confirming a 382(1)(5) Plan.

   (viii)  "<u>Confirmation Hearing</u>" means a hearing held before this Court on the confirmation of the 382(1)(5) Plan pursuant to Section 1129 of the Bankruptcy Code.

   (ix)  "<u>382(1)(5) Disclosure Statement</u>" means a disclosure statement filed with the Court relating to a 382(1)(5) Plan.

   (x)  "<u>Effective Date</u>" means the date on which the 382(1)(5) Plan becomes effective, but in no event less than thirty (30) calendar days from the Confirmation Date.

   (xi)  "<u>Entity</u>" means a person or entity for purposes of the rules under Section 382 of the I.R.C.

   (xii)  "<u>Incremental Holdings</u>" means the amount, if any, of Claims identified in each Substantial Claimholders' Final Holdings Report in excess of the greater of (i) the amount contained in each respective Substantial Claimholder's Initial Holdings Report and (ii) the Threshold Amount as of the Disclosure Statement Notice Record Date.

   (xiii)  "<u>Newly Traded Claims</u>" means claims (i) with respect to which an Entity acquired beneficial ownership after the date that was 18 months before the Petition Date; and (b) that are not "ordinary course" claims, within the meaning of Treasury Regulations Section 1.382-9(d)(2)(iv), of which the same Entity has always had beneficial ownership.

   (xiv)  "<u>Permitted Substantial Claimholder</u>" means a Substantial Claimholder whom the Debtors reasonably conclude acquired its claim in the ordinary course of the Debtors' trade or business (within the meaning of Treasury Regulations Section 1.382-9(d)(2)(iv)) and has at all times since the creation of such claim held the Beneficial Ownership in that claim.

14

(xv) "Petition Date" means November 10, 2008.

(xvi) "Protected Amount" means the amount of claims of which a Beneficial Claimholder had Beneficial Ownership on the Petition Date, increased by the amount of claims of which such Beneficial Claimholder acquires Beneficial Ownership pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date minus the amount of claims that such Beneficial Claimholder sells pursuant to trades entered into before the Petition Date that had not yet closed as of the Petition Date.

(xvii) "Substantial Claimholder" means a Beneficial Claimholder who holds more than the Threshold Amount as of the applicable record date and time, as described in Paragraphs 4(a) and 4(c) above.

(xviii) "Threshold Amount" means the amount of claims that are projected by the Debtors to entitle the Beneficial Claimholder thereof to become the Beneficial Claimholder of the Applicable Percentage of Affected Securities.

(xix) "Total Incremental Holdings" means the aggregate amount of all of each Substantial Claimholders' Incremental Holdings.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, PO Box 636, Wilmington, Delaware, 19899, Attn: Gregg M. Galardi, will provide a form of each of the required notices described above.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, Kurtzman Carson Consultants LLC ("KCC"), 2335 Alaska Avenue, El Segundo, CA 90245, shall supply a copy of the Order and the exhibits to this Notice; additionally, copies of the Order and such exhibits are available on KCC's website – www.kccllc.net.  KCC shall supply a copy of the Order at a cost to be paid by the person requesting it at the prevailing fee being charged by KCC.  KCC shall accommodate document requests during normal business hours, Monday to Friday (excluding recognized holidays).

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE SHALL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.**

**PLEASE TAKE FURTHER NOTICE THAT ANY PROHIBITED PURCHASE, SALE, TRADE, OR OTHER TRANSFER OF CLAIMS AGAINST, OR EQUITY SECURITIES IN, THE DEBTORS IN VIOLATION OF THE ORDER SHALL BE NULL AND VOID AB INITIO AND MAY BE PUNISHED BY CONTEMPT OR OTHER SANCTIONS IMPOSED BY THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT THE DEBTORS PLAN OF REORGANIZATION MAY PROVIDE FOR THE DISALLOWANCE OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS TO THE EXTENT THAT THEY WOULD ENTITLE THE HOLDERS THEREOF TO A DISTRIBUTION OF 4.75% OR MORE OF THE VALUE OF THE REORGANIZED DEBTORS.**

PLEASE TAKE FURTHER NOTICE that the requirements set forth in this Notice are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

Dated: November 17, 2008
     Richmond, Virginia

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas Foley (VSB No. 34364) |
| P.O. Box 636 | One James Center |
| Wilmington, Delaware 19899-0636 | 901 E. Cary Street |
| (302) 651-3000 | Richmond, Virginia 23219 |
| | (804) 775-1000 |

- and -

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel for Debtors and Debtors in Possession

16