SPOTTS FAIN PC
Robert Chappell, Esq. (VSB #31698)
Jennifer J. West, Esq. (VSB#47522)
P.O. Box 1555
Richmond, Virginia 23218
411 E. Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: 804-697-2000
Facsimile: 804-697-2100

    and

DORSEY & WHITNEY LLP
Eric Lopez Schnabel, Esq.
Robert W. Mallard, Esq.
1105 North Market Street (16th Floor)
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 335-0830

Counsel for Entergy

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>CIRCUIT CITY STORES, INC. et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-35653-KRH<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 8 and 117** |

**EMERGENCY MOTION OF ENTERGY FOR RECONSIDERATION AND VACATUR OF ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 363, AND 366 (I) APPROVING DEBTORS' ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT, (III) SCHEDULING A HEARING WITH RESPECT TO CONTESTED ADEQUATE ASSURANCE OF PAYMENT REQUESTS, AND (IV) AUTHORIZING DEBTORS TO PAY CLAIMS OF <u>A THIRD PARTY VENDOR</u>**

Entergy Mississippi, Inc. ("<u>EMI</u>"), Entergy Gulf States Louisiana, L.L.C. ("<u>EGSL</u>"),

4851-4755-5075\5

Entergy Louisiana, LLC ("ELL"), Entergy Arkansas, Inc. ("EAI") and Entergy Texas, Inc. ("ETI", and together with EMI, EGSL, ELL and EAI, "Entergy"), pursuant to Federal Rules of Civil Procedure ("FRCP") 59(e) and 60(b)(4) and (6), as made applicable to these cases by Federal Rules of Bankruptcy Procedure 9023 and 9024, hereby submit this Emergency Motion of Entergy for Reconsideration and Vacatur of Order Under Bankruptcy Code Sections 105(a), 363, and 366 (I) Approving Debtors' Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Requests By Utility Companies For Additional Assurance Of Payment, (III) Scheduling A Hearing With Respect To Contested Adequate Assurance Of Payment Requests, and (IV) Authorizing Debtors To Pay Claims Of A Third Party Vendor (the "Motion"). In support of the Motion, Entergy respectfully represents as follows:

## Introduction

1. On November 10, 2008 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been appointed in these cases.

## Jurisdiction

4. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).

## Background

5. On the Petition Date, the Debtors filed various first-day motions including the Motion of Debtors for Order Under Bankruptcy Code Sections 105(a), 363, and 366 (I) Approving Debtors' Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Requests By Utility Companies For Additional Assurance Of Payment, (III) Scheduling A Hearing With Respect To Contested Adequate Assurance Of Payment Requests, And (IV) Authorizing Debtors To Pay Claims Of A Third Party Vendor [Docket No. 8] (the "Utility Motion").

6. Subsequent to the filing of the Utility Motion, and without any notice to Entergy, the Court held a hearing on certain first day motions, including the Utility Motion. As a result of the lack of any notice, Entergy did not have the opportunity to object to the relief sought in the Utility Motion on the grounds that the proposed Order and the Additional Adequate Assurance Procedures therein were unnecessary, improper and contrary to section 366 of the Bankruptcy Code. Notwithstanding the Debtors' failure to provide Entergy with notice of the hearing, and notwithstanding the automatic 30-day stay provision in section 366(c), the Court approved the relief requested in the Utility Motion and entered the Order Under Bankruptcy Code Sections 105(a), 363, and 366 (I) Approving Debtors' Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Requests By Utility Companies For Additional Assurance Of Payment, (III) Scheduling A Hearing With Respect To Contested Adequate Assurance Of Payment Requests, And (IV) Authorizing Debtors To Pay Claims Of A Third Party Vendor [Docket No. 117] (the "Utility Order").

**Entergy Background**

7. Entergy is, <u>inter</u> <u>alia</u>, a leading provider of electric and gas utility services, including both retail electric and gas service and wholesale electric transmission services, in several markets including those of the Debtors' operations.

8. Entergy is a "utility" as that term is used in section 366 of the Bankruptcy Code and is also identified by the Debtors as one of the "Utility Companies" on Exhibit A attached to the Utility Order.

9. Electric utility services providers such as Entergy are subject to various state and local regulations promulgated by public utility commissions and are subject to a number of other state laws, requirements of tariffs, terms and conditions of service on file with regulatory authorities, and terms pursuant to agreements between the parties (collectively, the "<u>Regulations</u>").  The State of Mississippi Regulations are attached hereto as Exhibit A.

10. Entergy provides retail electric services to at least thirteen of the Debtors' stores (the "<u>Entergy Accounts</u>").  The location and account numbers of the Entergy Accounts are more fully described in Exhibit B hereto.[1]

11. Entergy's exposure on the Entergy Accounts is as much as $278,390.00 or more at any time.  Pursuant to section 366(c)(2), Entergy will be satisfied if it receives a cash deposit of $278,390.00; the same amount that Entergy would receive pursuant to the Regulations outside of bankruptcy.

12. The pre-petition unpaid balance owed to Entergy under the Entergy Accounts is approximately $136,000 (the "<u>Claim</u>").

**The Utility Motion**

---

[1] Entergy reserves its rights to amend, as needed, this list of the Entergy Accounts as more information regarding this newly-filed bankruptcy case is discovered.

13.  Through the Utility Motion,[2] the Debtors request, among other things, that the Court enter orders (i) approving the Debtors' segregation of $5,000,000 in the Utility Blocked Account to be held by Bank of America as providing utilities with "adequate assurance of payment" under Bankruptcy Code sections 366(b) and 366(c)(1)(A) and deeming all Utility Companies to have received adequate assurance of payment pursuant to section 366(b), (ii) approving the Additional Adequate Assurance Procedures as the method for resolving disputes regarding adequate assurance of payment, (iii) scheduling a hearing, to be held on or before the day that is thirty (30) days after the Petition Date, on any Additional Adequate Assurance Requests that are disputed by the Debtors, (iv) authorizing, but not directing the Debtors to pay prepetition amounts owed to a certain Third Party Vendor in an amount not to exceed $10,000, and (v) authorizing the Debtors to maintain their pre-petition relationships and practices with the Third Party Vendor.

14.  The Debtors propose to provide adequate assurance of future payment to the Utility Companies through two means.  First, the Debtors state that they "fully intend to pay all postpetition obligations owed to the Utility Companies in a timely manner.  Moreover, the Debtors expect that borrowings under their proposed postpetition credit facility will be sufficient to pay such postpetition utility obligations." Utility Motion at ¶15.  Second, the Debtors propose to "establish the Utility Blocked Account, in accordance with the terms and conditions of the Debtors' proposed postpetition credit facility, in the amount of $5,000,000 which amount is equal to the charges incurred by all of the Debtors for approximately two weeks of Utility Service from all of the Utility Companies." Id. at ¶16.  The Debtors propose that the Utility Blocked Account serve as a cash security deposit to be drawn on in a manner that is

---

[2] All capitalized terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the Utility Motion.

5

"substantially similar" to a letter of credit. Id. at ¶¶17-18. The Utility Company would be required to submit Payment Requests to Bank of America in the amount of unpaid charges for postpetition services rounded up to the nearest $100. Id. at ¶18. To make a Payment Request the Utility Company would be required to (i) certify the Debtors defaulted in payment of postpetition Utilities Services, (ii) certify the amount owed for such postpetition Utility Service, (iii) certify that the amount requested is not a request for payment of additional adequate assurance, and (iv) provide Bank of America with payment instructions. Id. Although the Utility Motion does not address whether the Utility Company must also send this notice to the Debtors, the Utility Order does require the notice be sent to both Bank of America and the Debtors.

15. The Debtors did not request entry of the Utility Order on an interim or bridge order basis, rather, the Debtors requested ex parte entry of the Utility Order on a final basis with procedures for a hearing to be held with respect to contested Adequate Assurance of Payment Requests. Neither the Utility Motion nor the Utility Order provides a Utility Company, such as Entergy, that opposes the relief requested in the Utility Motion in its entirety, with reasonable notice and an opportunity to be heard prior to entry of the Utility Order. The procedure requested in the Utility Motion for a hearing with respect to contested Adequate Assurance of Payment Requests is entirely inadequate and does not give Entergy an opportunity to object to the Utility Motion.

## The Utility Order

16. The Utility Order provides, inter alia, that Entergy is "prohibited from altering, refusing or discontinuing service to or discriminating against the Debtors on account of unpaid prepetition invoices or due to the commencement of these cases, or requiring the Debtors to pay a deposit or other security in connection with the provisions of postpetition Utility

6

Services, other than in accordance with the Additional Adequate Assurance Procedures contained herein." Utility Order at ¶12.

17. The Order further provides that, "[a]ny Utility Company that does not serve an Additional Adequate Assurance Request by the Additional Adequate Assurance Request Deadline shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Company within the meaning of Bankruptcy Code section 366(c)(2), and shall further be deemed to have waived any right to seek additional adequate assurance during the course of the Debtors' chapter 11 cases, except as provided in Bankruptcy Code section 366(c)(3)." Utility Order at ¶13.

18. The Utility Order further provides that the Debtors "shall have reserved as part of their loan agreement with Bank of America, $5,000,000 . . . as adequate assurance of payment, under Bankruptcy Code section 366(b), of charges incurred by the Debtors for Utility Services provided by the Utility Companies after the Petition Date, subject to the Debtors' rights to decrease the funds reserved in the Utility Blocked Account" (the "Proposed Assurance of Payment"). Utility Order at ¶3.

19. If Entergy is not satisfied with the funds reserved in the Utility Blocked Account as adequate assurance of payment – which it is not – Entergy must serve a request (the "Additional Adequate Assurance Request") in accordance with certain procedures set forth in the Utility Order (the "Additional Adequate Assurance Procedures"). Utility Order at ¶11(c).

20. As a preliminary matter, Entergy asserts that the Bankruptcy Court does not have personal jurisdiction over Entergy because the Debtors' attempt, if any, to serve Entergy with the Utility Motion was ineffective pursuant to Rule 7004(b)(3). See In re Edgar Martinez, Case No. 22271, 2008 Bankr. LEXIS 2293 (Bankr. N.D. Mich. Sept. 5, 2008)

7

(attached hereto as Exhibit C). The chapter 7 debtor in the Edgar Martinez case had filed a motion requesting relief pursuant to section 366(b). The court stated that modifying a deposit regarding utility service requires notice and a hearing. The court also stated that initiating an action pursuant to section 366(b) constitutes a contested matter subject to Rule 9014 and Rule 7004(b)(3). Rule 7004(b)(3) requires service upon a domestic corporation to be made by mail addressed to the attention of an "officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." The Edgar Martinez court then ruled that it did not have personal jurisdiction over the utility because the debtor's service on the utility did not comply with Rule 7004(b)(3) and was thus ineffective, and the court refused to take any action with respect to the utility motion until the debtor properly served the utility. See also Mid-Continent Wood Products v. Harris, 936 F.2d 297 (7th Cir. 1991).

        21.    It is apparent in this case that the Debtors did not attempt to comply with Rule 7004(b)(3) or even attempt to make sure the Utility Motion would be received by a person at Entergy with authority to act on Entergy's behalf.[3] In fact, the Debtors did not serve the Utility Motion or Utility Order until well after the Court entered the Utility Order. And even this belated attempt at service completely fails pursuant to Rule 7004(b)(3).[4] As a result, this Court does not have personal jurisdiction over Entergy even now. Thus, Entergy does not have any obligation to submit itself to the terms of the Utility Order and is free to take action as permitted

---

[3] To the contrary, the Debtors submitted in the Utility Motion that no such notice is required. Utility Motion at ¶55.

[4] Debtors' Affidavit of Service [Docket No. 207], Exhibit "F", page 10 reflects that service was not addressed "to the attention of an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" as required by Rule 7004(b)(3). Furthermore, the service was defective because it was sent to post office box addresses of Entergy's payment center. See In re Nowling, 279 B.R. 607 (Bankr. S.D. Fla. 2002).

8

by the plain language of Section 366. However, out of an abundance of caution and in the alternative, Entergy is requesting that the Court reconsider and vacate the Utility Order.

### Request for Reconsideration

22. This Court has discretion to alter or amend an order where necessary to correct a clear error of law or to prevent manifest injustice. See Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995); In re Edison Bros., Inc., 268 B.R. 409, 412 (Bankr. D. Del. 2001) ; In re Garrison-Aschburn, L.C., 253 B.R. 700, 702 (Bankr. E.D. Va. 2000). The Utility Order is such a case.

23. At first glance, the Utility Order appears to contain fairly benign provisions relating to procedures to establish the funds in the Utility Blocked Account as adequate assurance of payment and procedures for securing additional assurances of payment. But upon a closer read the Utility Order reveals that it works a manifest injustice to Entergy and the other Utility Companies by indefinitely enjoining their rights under section 366 without notice, the opportunity to be heard and most, if not all, of the procedural protections applicable to such injunctions. Accordingly, and as discussed in more detail below, the Utility Order should be vacated and the Utility Motion reconsidered at a contested hearing with Entergy present.

**A.  The Utility Order Unjustly Restricts Entergy's Rights to Demand a Deposit or Other Security and Improperly Extends the 30-Day Period Expressly Provided by Section 366(c).**

24. Despite the lack of notice to Entergy and the corresponding failure to provide Entergy with an opportunity to be heard, the Utility Order unjustly and impermissibly interferes with Entergy's ability to exercise its rights under section 366 of the Bankruptcy Code.

25. Courts should consider four principles that guide consideration of first-day motions: (i) "[R]elief should be limited to that which is minimally necessary to maintain the

existence of the debtor, until such time as the debtor can effect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties." (ii) "[F]irst day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences." (iii) "[F]irst day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established." And (iv) "[N]o first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code." In re The Colad Group, 324 B.R. 208 (Bankr. W.D.N.Y. 2005).

26.  The court in The Colad Group spoke specifically about why it refused to grant the debtor's first day utility motion. As in the instant case, The Colad Group utility motion sought an order approving the adequate assurance proposal and barring utility companies from "discontinuing, altering or refusing service." Id. The court found that this would deny the utility companies due process because of the lack of notice of the ex parte motion. Id. Furthermore, the court recognized that "the motion sought extraordinary relief with respect to issues that Congress had already addressed . . . . [T]he debtor essentially sought to disregard the procedural requirements of section 366 for notice and hearing. Nor was such special relief necessary, in light of the protection of utility access for twenty days."[5]

27.  As noted above, paragraph 12 of the Utility Order prohibits Entergy "from requiring the Debtors to pay a security deposit or other security in connection with the provision of postpetition Utility Services." In contrast, section 366 places no restrictions on a utility's ability to demand additional assurance of payment and no restrictions on how such demands are

---

[5] The Colad Group was decided under Section 366 as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

10

to be made. Section 366 expressly provides that a utility may "alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility."  § 366(c)(2) (emphasis added).

28.     Here, the Proposed Adequate Assurance is not satisfactory to Entergy. Instead, Entergy requires the receipt of a $278,390.00 cash deposit for it to be satisfied as required under section 366(c)(2). Such deposit demand is not some arbitrary or unreasonable number; to the contrary, it is the exact same demand that Entergy would make outside of bankruptcy pursuant to the Regulations.[6]

29.     Consequently, unless the Debtors provides adequate assurance of payment that is satisfactory to Entergy within the 30-day period beginning on the Petition Date, section 366 gives Entergy the absolute right to discontinue service to the Debtor. The Utility Order vitiates this right by enjoining such action without any basis in the law.

30.     In the absence of an appropriate limitation on its duration, the Utility Order operates as an indefinite and improper extension of the 30-day injunction period provided by section 366.  See In re Beach House Property, LLC, Case No. 08-11761-BCK-RAM (Bankr. S.D. Fla. April 8, 2008) ("[A] bankruptcy court should not enter injunctions against utilities in response to first day motions . . . .").

31.     In this case, there is nothing to prevent a Determination Hearing on Entergy's demand for adequate assurance from being delayed well past the 30th day of these bankruptcy cases; all of which works a substantive injunction against Entergy against its consent. Entergy requests, at a minimum, that the court vacate paragraph 3 of the Utility Order and allow

---

[6] Indeed, as recently as October 23, 2008 the Debtors agreed to furnish to Entergy surety bonds totaling $203,790.00. But, that was not accomplished before the Petition Date.

11

Entergy to terminate services after the 30th day of these cases should the Debtors not by then have furnished to Entergy either the $278,390 cash deposit that would satisfy Entergy or such lesser amount of adequate assurance of payment as the court by then may have determined to be sufficient.

**B.     The Utility Order is Unnecessary and Improperly Enjoins Entergy Without Notice, the Opportunity to be Heard, and Fails to Comply With Mandated Procedures**.

32.     Congress recognized that in certain circumstances a debtor needs to be free from the efforts of its creditors to collect payment or terminate service. Accordingly, it enacted various sections of the Bankruptcy Code that statutorily enjoin certain parties from taking certain actions for certain periods of time. See, e.g., 11 U.S.C. §§ 362, 366. The Bankruptcy Code provides debtors with statutorily mandated 20- and 30-day periods during which there is no threat that utility providers – including Entergy – will terminate service solely on account of the bankruptcy filing or any pre-petition unpaid charges. See 11 U.S.C. §§ 366(a), (c). Any order, such as the Utility Order, that enjoins a utility company from doing something that it is already enjoined from doing by operation of the Bankruptcy Code is nothing more than a "comfort order" which, for practical purposes, is unnecessary.

33.     To the extent that the Utility Order was intended to be a comfort order, the Utility Order could be vacated without harm to the Debtors' estates. In the alternative, a true "comfort order" that simply restates the applicable statute would be much shorter and simpler than what the Debtors sought and obtained on an ex parte basis.

34.     As stated previously, however, the Utility Order is not merely a comfort order. The Utility Order enjoins the Utility Companies from exercising their rights under section 366 for longer than provided by section 366 and subjects them to Additional Adequate

12

Assurance Procedures without notice or the opportunity to be heard on the merits of such procedures.

35. Because the Debtors sought an injunction, their request is governed by Federal Rule of Bankruptcy Procedure 7001, which states in pertinent part: "An adversary proceeding is governed by the rules of this Part VII. It is a proceeding . . . (7) to obtain an injunction or other equitable relief . . . ." Fed. R. Civ. P. 7001; see also MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communications, Inc.), 262 B.R. 893, 899 (D. Del. 2001) ("Indeed, that Motorola failed to file the required adversary proceeding was alone sufficient reason for the Bankruptcy Court to deny Motorola's request for an injunction."); In re Best Products Co., 203 B.R. 51, 54 (Bankr. E.D. Va. 1996) (holding that because debtor failed to file an adversary proceeding, the request for an injunction against utility companies was denied).

36. In Best Products, a case before this Court, the debtor, as part of its first-day utility motion requested an injunction "prohibiting the utiltities from altering, refusing to provide, or discontinuing services to the debtor's facilities" for a post-petition default. This Court held that Federal Rule of Bankruptcy Procedure 7001 "plainly requires that any request for an injunction or other equitable relif must be sought in the context of an adversary proceeding." Because the debtor did not file an adversary proceeding, this Court refused to enjoin the utility companies from pursuing the rights they hold under state law.

37. Rule 7003 requires that an adversary proceeding be commenced by the filing of a complaint. See Fed. R. Bankr. P. 7003 ("A civil action is commenced by the filing of a complaint."). In addition, Rule 7065 governs the procedure to be followed when seeking an injunction or temporary restraining order and the standards to be employed by the court. See Fed. R. Bankr. P. 7065 (Injunctions).

13

38. Pursuant to Bankruptcy Rule 7065(a), "no preliminary injunction shall be issued without notice to the adverse party." Without notice to an adverse party or its attorney, as is the case with the Utility Order, a debtor may obtain a temporary restraining order against such adverse party only if (1) the debtor shows that <u>immediate and irreparable injury</u> will result to the applicant before the adverse party or that party's attorney can be heard, and (2) the applicant's attorney certifies to the court <u>in writing</u> the efforts that were made to give notice to the adverse party and why notice should not be required. <u>See</u> Fed. R. Bankr. P. 7065(b)(1) and (b)(2). Furthermore, a temporary restraining order automatically expires after 10 days. <u>See</u> Fed. R. Bankr. P. 7065(b). There is no immediate and irreparable injury here because Section 366 already provides a period during which a Utility Company cannot discriminate based on pre-petition defaults or lack of adequate assurance of payment.

39. Absent compliance with the requirements for obtaining a temporary restraining order, the applicant can only obtain a preliminary injunction, which shall not issue without notice to the adverse party. <u>See</u> Fed. R. Bankr. P. 7065(a)(1).

40. Here, the Debtors did not even attempt to comply with any of the above-mentioned requirements and have not shown (and cannot show) that they will suffer any irreparable harm. On the contrary, to the extent the Utility Order operates to permanently deprive Entergy of its rights under section 366 without notice or the opportunity to be heard, it is Entergy that will be irreparably harmed, not the Debtors. Accordingly, the Utility Order should be vacated or, at the very least, the Court should set a full hearing on the Utility Motion upon notice to Entergy to provide it with a meaningful opportunity to be heard.

## **Conclusion**

The Utility Order is nothing less than an indefinite injunction prohibiting Entergy and other Utility Companies from exercising their rights under section 366 of the Bankruptcy Code which was obtained on an ex parte basis without complying with any of the well-established procedural protections governing such orders. Accordingly, the Utility Order ought to be vacated and the Utility Motion denied.

## Waiver of Memorandum of Law

41. Entergy respectfully requests that the Court waive the requirement contained in Rule 9013-1(G) of the Local Bankruptcy Rules for the Eastern District of Virginia that a separate memorandum of law be submitted.

## Request for Relief

**WHEREFORE**, Entergy respectfully requests that this Court (i) grant reargument of the Utility Motion, (ii) upon such reconsideration, vacate the Utility Order, and (iii) grant to Entergy such other relief as the Court deems appropriate.

Dated: November 20, 2008          SPOTTS FAIN PC

        /s/ Jennifer J. West
Robert Chappell, Esq. (VSB #31698)
Jennifer J. West, Esq. (VSB #47522)
P.O. Box 1555
Richmond, Virginia 23218
411 E. Franklin Street, Suite 600
Richmond, Virginia 23219
Tel: 804-697-2000
Fax: 804-697-2100

and

DORSEY & WHITNEY LLP
Eric Lopez Schnabel, Esq.
Robert W. Mallard, Esq.

15

1105 North Market Street (16th Floor)
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 335-0830

Counsel for Entergy

Case 08-35653-KRH    Doc 262    Filed 11/20/08    Entered 11/20/08 16:43:51    Desc Main
                    Document      Page 16 of 20

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>CIRCUIT CITY STORES, INC. et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-35653-KRH<br><br>(Jointly Administered)<br><br>**Re: Docket ID Nos. 8 and 117** |

## ORDER

Upon consideration of the Emergency Motion of Entergy for Reconsideration and Vacatur of Order Under Bankruptcy Code Sections 105(a), 363, and 366 (I) Approving Debtors' Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Requests By Utility Companies For Additional Assurance Of Payment, (III) Scheduling A Hearing With Respect To Contested Adequate Assurance Of Payment Requests, And (IV) Authorizing Debtors to Pay Claims Of A Third Party (the "Emergency Motion to Reconsider"); and adequate notice of the Emergency Motion to Reconsider having been given; and responses thereto having been heard; and there appearing to be good cause to grant the relief requested in the Emergency Motion to Reconsider; it is hereby:

ORDERED, that the Emergency Motion to Reconsider is GRANTED; and it is further

ORDERED, that the Utility Order is hereby VACATED.

Dated:_____, 2008             _____
                                    United States Bankruptcy Judge

WE ASK FOR THIS:

  /s/
_____
Robert Chappell, Esq. (VSB #31698)
Jennifer J. West, Esq. (VSB #47522)
P.O. Box 1555
Richmond, Virginia 23218
411 E. Franklin Street, Suite 600
Richmond, Virginia 23219
Tel: 804-697-2000
Fax: 804-697-2100

and

DORSEY & WHITNEY LLP
Eric Lopez Schnabel, Esq.
Robert W. Mallard, Esq.
1105 North Market Street (16th Floor)
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 335-0830

Counsel for Entergy

## LBR 9022-1 CERTIFICATION OF SERVICE

I, Jennifer J. West, hereby certify that on the _____ day of November, 2008, pursuant to Local Rule 9022-1, the foregoing Order was served upon the parties on the attached service list, constituting all necessary parties, in the manner indicated.

<u>SERVICE LIST</u>
Circuit City Stores, Inc. et al
Case No. 08-35653-KRH

*Via E-Mail or ECF:*

(Counsel to Debtor)
Daniel F. Blanks, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA  23510
dblanks@mcguirewoods.com
dfoley@mcguirewoods.com

(Counsel to Debtor)
Dion W. Hayes, Esq.
Joseph S. Sheerin, Esq.
Sarah Beckett Boehm, Esq.
McGuire Woods LLP
One James Center
901 East Cary St.
Richmond, VA  23219
dhayes@mcguirewoods.com
jsheerin@mcguirewoods.com
sboehm@mcguirewoods.com

(United States Trustee)
W. Clarkson McDow, Jr., Esq.
Office of the United States Trustee
701 E. Broad St., Suite 4304
Richmond, VA  23219

(Counsel for U.S. Trustee)
Robert B. Van Arsdale, Esq.
Office of the United States Trustee
701 East Broad Stret, Suite 4304
Richmond, VA  23219
Robert.B.Van.Arsdale@usdoj.gov

(Counsel for Bank of America, N.A.)
David S. Berman, Esq.
Riemer & Braunstein
Three Center Plaza, 6th Floor
Boston, MA  02108
DBerman@riemerlaw.com

*Via First Class Mail:*

(Debtor)
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA  23233

19

**PARTIES TO RECEIVE COPIES:**

Daniel F. Blanks, Esq.
McGuire Woods LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA  23510

W. Clarkson McDow, Jr., Esq.
Office of the United States Trustee
701 E. Broad St., Suite 4304
Richmond, VA  23219

David S. Berman, Esq.
Riemer & Braunstein
Three Center Plaza, 6th Floor
Boston, MA  02108

Dion W. Hayes, Esq.
McGuire Woods LLP
One James Center
901 East Cary St.
Richmond, VA  23219

Robert B. Van Arsdale, Esq.
Office of the United States Trustee
701 East Broad Stret, Suite 4304
Richmond, VA  23219

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA  23233

Robert Chappell, Esq.
SPOTTS FAIN PC
411 E. Franklin Street, Suite 600
Richmond, Virginia 23219

DORSEY & WHITNEY LLP
Eric Lopez Schnabel, Esq.
Robert W. Mallard, Esq.
1105 North Market Street (16th Floor)
Wilmington, Delaware 19801