| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & | MCGUIREWOODS LLP |
| FLOM, LLP | One James Center |
| One Rodney Square | 901 E. Cary Street |
| PO Box 636 | Richmond, Virginia 23219 |
| Wilmington, Delaware 19899-0636 | (804) 775-1000 |
| (302) 651-3000 | |

– and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors and
Debtors in Possession

```
         IN THE UNITED STATES BANKRUPTCY COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                   RICHMOND DIVISION
- - - - - - - - - - - - - - - x
In re:                        : Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    : Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        : Jointly Administered
- - - - - - - - - - - - - - - x
```

**MOTION OF DEBTORS FOR ORDER UNDER BANKRUPTCY CODE
SECTION 365(d)(4) EXTENDING TIME WITHIN WHICH DEBTORS
MAY ASSUME OR REJECT UNEXPIRED LEASES OF
NONRESIDENTIAL REAL PROPERTY**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City

*(cont'd)*

hereby move (the "Motion") this Court for entry of an order under section 365(d)(4) of title 11 of the United States Code (the "Bankruptcy Code"), extending the time within which the Debtors may assume or reject their unexpired leases of nonresidential real property, including (without limitation) those set forth on Exhibit A to the proposed order and subleases or other agreements to which any of the Debtors are a party that may be considered an unexpired lease of nonresidential real property (collectively, the "Leases"), other than the Closing Store Leases[2] and the Rejected Leases.[3]  In

---

*(cont'd from previous page)*
   Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
   Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
   Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
   Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
   LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
   for Circuit City Stores West Coast, Inc. is 9250 Sheridan
   Boulevard, Westminster, Colorado 80031.  For all other Debtors,
   the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2] "Closing Store Leases" means those unexpired leases and subleases
   of non-residential real property at which the Debtors are
   conducting store closing sales pursuant to that certain Order
   Granting Motion of Debtors for Entry of Order Pursuant to
   Bankruptcy Code Sections 105, 363 and 365 (I) Assuming Agency
   Agreement Among Debtors, Hilco Merchant Resources, LLC and Gordon
   Brothers Retail Partners, LLC and (II) Authorizing the Debtors to
   Continue Agency Agreement Sales Pursuant to Store Closing
   Agreement Sales Pursuant to Store Closing Agreement (D.I. 82).  A
   list of the Closing Store Leases is annexed as Exhibit B to the
   proposed order.

[3] "Rejected Leases" means those unexpired leases and subleases of
   non-residential real property that were rejected pursuant to the
   Order Pursuant to 11 U.S.C. §§ 105(a), 365(a) and 554 and Fed. R.
                                                          *(cont'd)*

support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is Bankruptcy Code section 365(d)(4).

### BACKGROUND

3. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of

---

*(cont'd from previous page)*
   Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of the Petition Date (D.I. 81). A list of the Rejected Leases is annexed as Exhibit C to the proposed order.

3

Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. Based in Richmond, Virginia, Debtors are a leading specialty retailer of consumer electronics and operate large nationwide electronics stores throughout the United States and Puerto Rico that sell, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

7. Despite significant revenues, the Debtors have suffered two consecutive years of losses.  While the Debtors made every effort to improve their financial performance and implement a global turnaround strategy, they were ultimately unable to consummate a successful restructuring outside of bankruptcy.  In large part, the Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

8.  Thus, the Debtors commenced these cases with the immediate goals of obtaining adequate postpetition financing and continuing their restructuring initiatives commenced prior to the Petition Date, including the Store Closing Sales (as defined herein).  In addition, the Debtors will continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

### RELIEF REQUESTED

9.  By this Motion, the Debtors seek entry of an order under Bankruptcy Code section 365(d)(4) granting a 90-day extension of the original 120-day period within which the Debtors must assume or reject the Leases.  Absent the relief requested herein, the period for assuming or rejecting the Leases will expire on March 10, 2009 (the "365(d)(4) Deadline").[4]

---

[4] The Debtors do not, at the present time, request an extension with respect to the Store Closing Leases, but reserve and do not waive their right to do so.

5

**BASIS FOR RELIEF**

10. Although it may seem premature to seek an extension of the 365(d)(4) Deadline within the first 30 days of these cases, such an extension is not only warranted, but also necessary based on the facts and circumstances of these cases. As set forth below, the Debtors have already made significant progress in evaluating their store-level operations having determined already that nearly 300 leases are unnecessary to their continued retail operations. Moreover, as this Court was advised at the "First Day" hearing, certain requirements of the Debtors' debtor in possession financing (the "DIP Financing") impose upon the Debtors an obligation to seek the requested extension.

11. On the Petition Date, the Debtors filed a motion to reject 144 leases, the Rejected Leases. The Rejected Leases were leases under which the Debtors no longer had retail operations.

12. In addition, on the Petition Date the Debtors also sought and obtained the Court's approval to continue store closing sales at 154 stores (the "Store

Closing Leases").  The Debtors determination to conduct store closing sales at those locations was based on various factors, including, without limitation, store profitability and location.

13.  Notwithstanding the above, the Debtors are far from finishing their evaluation of their leasehold interests and, thus, request the Court grant them an additional 90 days in which to determine whether to assume or reject the Leases for a number of reasons.

14.  First and foremost, a covenant under the Debtors' DIP Facility requires that the Debtors seek and obtain an extension of the 365(d)(4) Deadline within the first 30 days.  Specifically, prior to the Petition Date, the Debtors engaged in negotiations with Bank of America, N.A, as agent (the "Agent") over the terms of a $1.1 billion postpetition revolving credit facility (the "DIP Facility").  The terms of the DIP Facility were memorialized in a credit agreement (the "DIP Credit Agreement") and interim order, which the Court approved on November 10, 2008.

15.  Pursuant to DIP Credit Agreement section 5.18(a), within the first 30 days of these cases, the

Debtors must obtain an order from this Court extending the 365(d)(4) Deadline for no less than the additional 90-day period prescribed under Bankruptcy Code section 365(d)(4). In particular, section 5.18 provides as follows:

> Within thirty (30) days after the Petition Date (or such later date to which the Loan Parties, the Administrative Agent and the Required Lenders may otherwise agree), the Domestic Borrowers shall have obtained an order of the US Bankruptcy Court extending the time period of the Domestic Borrowers to assume or reject Leases to not less than 210 days from the Petition Date.

DIP Credit Agreement § 5.18(a). Failure to comply with this covenant constitutes an event of default under the DIP Credit Agreement, which would permit the Agent to exercise available remedies. DIP Credit Agreement §§ 7.01(d), 7.03.

16. Although section 5.18(a) may be modified with the consent of the Agent and other parties to the DIP Credit Agreement, a modification provides little benefit to the Debtors and their estates. That is, unless the modification is coupled with an agreement not to impose additional borrowing reserves. In particular, under DIP Credit Agreement section 2.03(a), certain

initial reserves were established, including the "Availability Reserve." DIP Credit Agreement § 2.03(a). The Availability Reserve includes, among other reserves, a reserve based on the Debtors inability to procure an order extending the 365(d)(4) Deadline, i.e., the "Lease Reserve." DIP Credit Agreement § 1.01.

17. However, the Lease Reserve is not factored into the Availability until the "Lease Assumption Reserve Commencement Date." Presently, the Lease Assumption Reserve Commencement Date is six days after the deadline imposed under section 5.18(a).[5] Thus, any modification of the covenant in section 5.18(a) would be short-lived.

18. To illustrate, almost immediately after modifying the requirement in section 5.18(a), and thereby avoiding an event of default, the Agent would have the authority to increase the Availability Reserve. As a result, the Debtors availability would be significantly impaired during a critical time period for

---

[5] Lease Assumption Reserve Commencement Date is the date that is 12 weeks (84 days) before the 365(d)(4) Deadline. Thus, if the 365(d)(4) Deadline is not extended, the Lease Assumption Reserve Commencement Date would be December 16, 2008, which is six days later than the deadline imposed in section 5.18(a).

9

their business -- the holiday and Super Bowl shopping season.

19. Second, the relief sought should be approved because the Debtors are in the process of stabilizing their business operations and have not had a sufficient opportunity to review the Leases to determine whether assumption or rejection is warranted.

20. As set forth above, prior to and since the Petition Date, the Debtors have made significant progress. Nonetheless, as of the Petition Date, the Debtors operated approximately 712 Superstores and 9 Outlet stores under the Circuit City name throughout the United States and Puerto Rico. Additionally, the Debtors maintained their headquarters in Richmond, Virginia and operated various distribution centers throughout the United States. The vast majority of these locations are leased from third party landlords.

21. Without the relief requested herein, the Debtors could be compelled to prematurely assume or reject the Leases, resulting in significant loss in estate value. Consequently, to aid them in these matters, the Debtors have pursued retaining a real

10

estate consultant to work on lease disposition matters and rent negotiations, and expect to file a motion seeking approval of such a consultant in the next few days.  Consequently, the Debtors also need the requested extension to provide themselves and the real estate consultant with sufficient time to evaluate the market value of the Lease and negotiate with the Landlords.

22.   Third, if the Debtors are compelled to make a decision concerning assumption or rejection at this critical juncture of their cases, the Debtors will be distracted from their immediate operational objectives -- stabilizing vendor relations to receive adequate inventory and satisfy their customers' needs. This distraction would likely cause harm to the Debtors' business at a cost to all creditors, including the landlords for the Leases.

23.   On the other hand, by granting an extension of the 365(d)(4) Deadline, the Debtors will be in a position to continue their business, which will benefit all other parties in interest, including the landlords for the Leases.  Thus, it is necessary to the

11

success of the Debtors' cases that this Court enter an order extending the 365(d)(4) Deadline.

### APPLICABLE AUTHORITY

24.    Extensions of the deadline to assume or reject unexpired leases of non-residential real property are governed by Bankruptcy Code section 365(d)(4)(A)-(B), which provides that:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of –
> (i) the date that is 120 days after the order for relief; or (ii) the date of the entry of an order conforming a plan.
>
> (B)(i) The Court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
>
>    (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11 U.S.C. § 365(d)(4)(A) – (B).    Thus, the Court may, for cause, order a 90-day extension of the period during which the Debtors may assume or reject nonresidential

12

real property leases upon the filing of a motion for such relief.  See id.

25.  Cause exists to extend the assumption or rejection time period as requested herein.  Although the term "cause" as used in section 365(d)(4) is not defined in the Bankruptcy Code, in determining whether cause exists for an extension of the assumption or rejection time period under Bankruptcy Code section 365(d)(4), courts have relied on several factors, including the following:

>    (a) whether the case is complex and involves a large number of leases;
>
>    (b) whether the leases are primary among the debtor's assets;
>
>    (c) whether the lessor continues to receive postpetition rental payments;
>
>    (d) whether the continued occupation could damage the lessor and such lessor could not receive compensation under the Bankruptcy Code; and
>
>    (e) whether the debtor has been afforded enough time to develop a plan.

See S. St. Seaport L.P. v. In re Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 761 (2d Cir. 1996); In re Wedtech Corp., 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987); see also Channel Home Ctrs., 989 F.2d

682, 689 (3d Cir 1993) ("[I]t is permissible for a bankruptcy court to consider a particular debtor's need for more time in order to analyze leases in light of the plan it is formulating." (citing Wedtech, 72 B.R. at 471-72)); see, generally, In re Pier 5 Management Co., Inc., 83 B.R. 392, 394 (Bankr. E.D. Va. 1988) (finding that cause existed to grant extension when party objecting to the extension hindered debtor's ability to decide whether to assume or reject lease).

   26. The circumstances of the Debtors' cases satisfy all of the factors set forth above.

   27. First, the Debtors' chapter 11 cases are large and complex and involve a large number of Leases -- over 700.

   28. Second, the Debtors are one of the largest consumer electronics retailers in the country, operating throughout the United States and Puerto Rico. Without the Leases, the Debtors would be unable to operate. Thus, the Leases are among the most valuable assets of their estates.

   29. Third, the Debtors intend to remain current on all of their postpetition rent obligations

14

arising from and after the Petition Date for those Leases covered by the extension sought by this Motion. Thus, the relief requested herein will not prejudice landlords under such Leases.

30. Fourth, the landlords under the Leases will not be prejudiced such that the landlord will be incapable of receiving compensation under the Bankruptcy Code. Indeed, the landlords for the Leases have the right to compel timely performance from the Debtors, including the payment of postpetition rent. See 11 U.S.C. § 365(d)(3).

31. In contrast, if the 120-day period is not extended, the Agent has the authority to declare an event of default under the DIP Facility and exercise its available remedies. Even if waived, the Agent could still increase the Availability Reserve by imposing the Lease Reserve, which will reduce the Debtors liquidity during their busiest and most important shopping season. In the event the Court approves this Motion, the implementation of the Lease Reserve will be delayed for at least 90 days until March 16, 2008, thereby enabling the Debtors to focus on their reorganization efforts,

15

including formulating and negotiating the terms of a plan of reorganization.

32.  Further, without an extension, the Debtors might be compelled prematurely to assume substantial, long-term liabilities under the remaining unexpired leases (potentially creating administrative expense claims).  Alternatively, the Debtors might be compelled to forfeit potential benefits associated with the remaining unexpired leases, or incur unnecessary rejection damages claims, to the detriment of the Debtors' estates, their creditors and other parties in interest.

33.  Fifth, and finally, the Debtors have not been afforded sufficient time to formulate a plan of reorganization.  The Debtors commenced these approximately 10 days ago and since then have been in the process of stabilizing their operations and tirelessly negotiating with numerous vendors to provide goods and services postpetition.

34.  Moreover, the Debtors have not had an adequate opportunity to confer with the Creditors' Committee, which was appointed by the U.S. Trustee

16

approximately one week ago and is made up of 11 diverse creditors. The Creditors' Committee did not retain counsel until this week and the first meeting between the Debtors, their professionals and the Creditors' Committee and its professionals did not occur until yesterday.

35. In light of the foregoing, as well as the Debtors need to comply with the reporting and disclosure requirements of the Bankruptcy Code and the U.S. Trustee (all in the first few weeks of these cases), the Debtors require additional time evaluate the Leases and, ultimately, formulate a plan.

36. This Court and other courts have previously granted similar relief in other bankruptcy cases. See, e.g., In re Movie Gallery, Inc., Case No. 08-33849 (DOT) (Bankr. E.D. Va. Feb. 5, 2008) In re US Airways, Inc., Case No. 04-13819 (SSM) (Bankr. E.D. Va. Apr. 21, 2005); see also In re Goody's Family Clothing, Inc., Case No. 08-11133 (CSS) (Bankr. D. Del. July 24, 2008); In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. May 28, 2008); In re Tweeter Home Entm't

17

Group, Inc., Case No. 07-10787 (PJW) (Bankr. D. Del. Oct. 10, 2007).

   37. Accordingly, for the reasons set forth above, the Debtors seek an extension of the time within which the Debtors must move to assume or reject the Leases through and including June 8, 2009.  The Debtors expect to have completed the process of analyzing the remaining Leases during this time period.  However, in light of the Debtors' ongoing efforts to analyze such remaining unexpired leases the present request is without prejudice to the Debtors' right to seek a further extension of the section 365(d)(4) deadline if circumstances so warrant and only in accordance with Bankruptcy Code section 365(d)(4)(B)(ii).

### NOTICE

   38. Notice of this Motion has been provided to (i) the landlords for the Leases, (ii) the landlords for the Closing Store Leases and the Rejected Leases, and (iii) those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain

Notice, Case Management, and Administrative Procedures (Docket No. 136).  The Debtors submit that, under the circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

39.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

40.   No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 20, 2008
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley          .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and Debtors in Possession

20