| | |
|---|---|
| William H. Schwarzschild, III - VSB No. 15274 | Scott R. Kipnis, Esq. |
| Paul S. Bliley, Jr. – VSB No. 13973 | Rachel N. Greenberger, Esq. |
| **WILLIAMS, MULLEN** | Nicholas B. Malito, Esq. |
| Two James Center, 16th Floor | **HOFHEIMER GARTLIR & GROSS, LLP** |
| 1021 East Cary Street | 530 Fifth Avenue |
| Post Office Box 1320 | New York, NY 10036 |
| Richmond, Virginia 23218-1320 | Phone: (212) 818-9000 |
| Phone: 804.783.6489 | FAX: (212) 869-4930 |
| FAX: 804.783.6507 | |
| tschwarz@williamsmullen.com | |

*Counsel for Dollar Tree Stores, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

-----------------------------------------------------------x
                   :
In re:                 : Chapter 11
                   :
CIRCUIT CITY STORES, INC., *et al.*,   : Case No. 08-35653 (KRH)
                   :
        Debtors.      : (Jointly Administered)
                   :
-----------------------------------------------------------x

### OBJECTION OF DOLLAR TREE STORES, INC. TO THE ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 365(A), AND 554 AND FED. R. BANKR. P. 6006 AUTHORIZING REJECTION OF UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND ABANDONMENT OF PERSONAL PROPERTY EFFECTIVE AS OF THE PETITION DATE

    Dollar Tree Stores, Inc. ("Dollar Tree"), a creditor in the above-captioned chapter 11 cases, by and through its undersigned counsel, hereby submits this objection to, inter alia, the "Order Pursuant to 11 U.S.C. §§ 105(a), 365(a), and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of the Petition Date" (the "Rejection Order") (Docket No. 81). In support of their objection, Dollar Tree respectfully represents as follows:

### PROCEDURAL BACKGROUND

    1.  On November 10, 2008 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, "Debtors"), filed voluntary petitions in this Court for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On the Petition Date, the Debtors filed a motion titled "Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a), 365(a), and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of the Petition Date" (the "Motion") (Docket No. 21) in order to reject certain unexpired leases of nonresidential real property effective as of the Petition Date. The Debtors alleged that they vacated the Premises and surrendered possession to the Landlords as of the Petition Date.[1] Mtn. at ¶¶ 9 & 15. Through rejection of the Leases, the Debtors apparently sought to avoid incurring certain administrative expenses. Mtn. at ¶ 11. The Court granted the Motion and entered the Rejection Order, but appears to be unaware of certain key facts that were omitted from the Debtors' papers as set forth below.

## FACTUAL BACKGROUND

3. Dollar Tree is the sublessee of three of the Premises covered by the Motion, to wit: (i) Location No. 6044 (Dollar Tree Store No. 630) in Fredericksburg, Virginia, (ii) Location No. 6552 (Dollar Tree Store No. 2935) in Odessa, Texas, and (iii) Location No. 6564 (Dollar Tree Store No. 761) in Cape Girardeau, Missouri, (collectively, the "Dollar Tree Premises"), for which it is party to three separate subleases (the "Dollar Tree Subleases").

4. Upon information and belief, the Debtors enjoyed, and continue to enjoy, the benefits of the Dollar Tree Subleases, including rental income for the months of October and November 2008, which upon information and belief the Debtors have not turned over to the overlandlords.[2]

5. Dollar Tree hereby joins with all other objections to the Rejection Order. Dollar

---

[1] Capitalized terms not defined herein shall have the same meaning as set forth in the Motion.
[2] The Odessa, Texas landlord informed Dollar Tree that it was not paid the October and November rent, as well as additional rents, though the Debtors make such payments in arrears.

2

Tree respectfully requests (i) that the Rejection Order should be declared ineffective as to the Dollar Tree Subleases, (ii) that the Debtors should be ordered to fully comply with all terms of the Dollar Tree Subleases until such time as the Dollar Tree Subleases are properly rejected, which should be no earlier than December 1, 2008 since the Debtors have accepted payment of the November 2008 rent, (iii) that the Debtors should be ordered to pay to the overlandlords the rents that Dollar Tree paid to the Debtors, (iv) that the Rejection Order should be modified to state that the rejection of the Dollar Tree Subleases does not constitute a termination of the Dollar Tree Subleases and is without prejudice to Dollar Tree's rights under 11 U.S.C. § 365(h), applicable state law, and the Dollar Tree Subleases, and (v) such other and further relief that the Court deems just and proper.

## OBJECTION

### The Debtors' Rejection is Improper and Ineffective

6.   Due process requires that timely notice of rejection of an unexpired lease or executory contract be given to all parties to the lease.  See Matter of Cybernetic Services, Inc., 94 B.R. 951, 953 (Bankr. W.D. Mich. 1989) (The Cybernetic Court stated that the assumption procedure under section 365 of the Bankruptcy Code recognizes and protects the due process rights of a lessor and other affected parties.  By implication this means that the rejection procedure under section 365 of the Bankruptcy Code also recognizes and protects the due process rights of a lessor and other affected parties.), citing, Mullane v. Central Hanover Bank and Trust Co., 399 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").  This requirement is embodied in Rule 6006 of the

3

Federal Rules of Bankruptcy Procedure. Rule 6006 states, in pertinent part, that "[n]otice of a motion made pursuant to subdivision (a) [to assume, reject, or assign an executory contract or unexpired lease] shall be given to the other party to the contract or lease." Fed. R. Bankr. P. 6006(c).

7. Dollar Tree did not receive proper notice of the Motion from proposed counsel for the Debtors, McGuire Woods LLP ("MW"), which has, both in the past and at the present time, represented and acted as Dollar Tree's counsel on various substantial matters and therefore knew how to contact the legal department at Dollar Tree.

8. The Dollar Tree Subleases specifically provide for notice to be by mail or overnight delivery. In disregard of this requirement under the Dollar Tree Subleases, the Debtors allegedly provided notice via facsimile to two facsimile numbers. One is an unknown number that is not a Dollar Tree number. The second number was a general Dollar Tree number that is used by several hundred people, none of whom are the parties designated to receive notices pursuant to the Dollar Tree Subleases. Dollar Tree's legal department never received fax notice of the rejections from the Debtors.[3]

9. The Debtors' failure to provide proper notice has impaired Dollar Tree's rights and has forced it to expend significant sums to protect its property interests.

10. Additionally, had Dollar Tree received proper notice of the rejection it would have taken issue with the Debtors' spurious allegation that they vacated the Premises and surrendered possession to the Landlords as of the Petition Date. Mtn. at ¶¶ 9 & 15. This statement by the Debtors is simply false. Dollar Tree has been in possession and remains in possession of the Dollar Tree Premises subject to the terms of the Dollar Tree Subleases since

---

[3] Recognizing that Dollar Tree was not properly noticed, the Debtors consented to an extension of time for Dollar Tree to file the instant objection to the Rejection Order. See Exhibit "A".

4

their inception. At no point pre-petition did the Debtors ever seek to regain possession of the Dollar Tree Premises in any manner.

11.    The Debtors' actions necessitate a determination that the rejection was improper and ineffective as to Dollar Tree.

12.    Most importantly, the rejection of the Dollar Tree Subleases as of the Petition Date is inappropriate since the Debtors have failed to comply with the terms of the Rejection Order itself. The Rejection Order provides that the Leases are "rejected effective as of the Petition Date, provided that the Debtors surrender possession not later than November 12, 2008 [and] [a]ny subleases associated with the Leases or the Premises are hereby rejected effective as of the Petition Date." Rejection Order at ¶ 2. As noted above, Dollar Tree has been in possession and remains in possession of the Dollar Tree Premises and has paid the November rent, which has been accepted by the Debtors pursuant to the terms of the Dollar Tree Subleases since their inception. At no point post-petition have the Debtors sought to regain possession of the Dollar Tree Premises in any manner in order to comply with the terms of the Rejection Order. Therefore, due to the Debtors' failure to comply with the specific requirements of this Court's Rejection Order, the rejection is not effective.

*13.*    Additionally, the Motion requested, and the Rejection Order granted, rejection effective retroactively to the Petition Date. Although the Debtors acknowledge that "[s]ection 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective retroactively" (Mtn. at ¶ 25), the Motion leaps to the conclusion that authorizing retroactive rejection is routine. On the contrary, courts recognize that "rejection of a lease under section 365(a) becomes legally effective only after judicial approval has been obtained." Thinking Machines Corp. v. Mellon Financial Services (In re Thinking Machines Corp.), 67 F.3d 1021 (1st

5

Cir. 1995). Retroactive rejection of a lease rather than being routine should be permitted only "when principles of equity so dictate." Id. at 1028. The First Circuit clearly did not bless the concept of retroactive or nunc pro tunc rejection in all circumstances or even in the case that it had under review. Instead, that case was remanded for further findings. Similarly, the United States District Court for the District of Delaware properly observed in a retroactive lease rejection case that "[a]n order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course . . . ." TW, Inc. v. Angelastro (In re TW, Inc.), Case No. 03-533-SLR (D. Del. January 14, 2004). In TW, the District Court upheld the Bankruptcy Court's determination that nunc pro tunc relief was inappropriate where the debtor actually filed and served its rejection motion on the day prior to filing its bankruptcy petition.

14.     Here, retroactive rejection is not appropriate for the reasons set forth herein--most notably because the Debtors accepted Dollar Tree's November rental payment without any reservations (and failed to tender same to the Landlords), thus creating an occupancy right at least through and including November 30, 2008.

15.     Additionally, the Debtors go to great lengths to lead the Court to believe that rejection of the Leases will not harm or otherwise prejudice the Landlords. Mtn. at ¶¶ 16 & 26. However, the Debtors are conspicuously silent about the effect that rejection will have for sublessees. Pursuant to the terms of the Dollar Tree Subleases, Dollar Tree's rental payments are a portion of the Debtors' rental payments under the primary leases. Dollar Tree makes its rental payments directly to the Debtors at the beginning of each month. The Debtors in turn pay the Landlords the full rents owed under the primary leases.

16.     Dollar Tree paid the Debtors, and the Debtors accepted, the rents for October and November of 2008, thus creating at a minimum a tenancy right at least until and through

6

November 30, 2008. Upon information and belief, the Debtors retained Dollar Tree's rental payments and did not make any rental payments to the Landlords for this time period. The Debtors' failure to tender the rents, and failure to notify the Court of same, is an impairment of Dollar Tree's property rights, and furthermore is a disclosure that should have been made to the Court.[4] This failure to pay the October or November rents, as the case may be, has made negotiations with the overlandlords for Dollar Tree's continued occupancy more difficult.

17. Accordingly, the Rejection Order should not be effective as of the Petition Date because it could subject Dollar Tree under section 365(h) of the Bankruptcy Code to making a double payment to the Landlords in order to maintain the Dollar Tree Subleases. As a policy matter, sublessees in future bankruptcy cases could be prejudiced because they too may have to cure pre-petition defaults on behalf of debtors-sublessors.

18. In any event, by accepting Dollar Tree's rental payments, the Debtors acknowledged that Dollar Tree is rightfully occupying the Dollar Tree Premises as tenants and created a right to remain in possession of the Dollar Tree Premises as tenants under applicable state law. To the extent that the Debtors' rejection of the Dollar Tree Subleases are effective, the Debtors' actions have extended Dollar Tree's tenancy rights at least until the end of the period for which the rental payments were made by Dollar Tree. Accordingly, rejection of the Dollar Tree Subleases should not be effective until at least December 1, 2008. Upon the occurrence of said date, then Dollar Tree's rights under section 365(h) of the Bankruptcy Code would become effective.

19. Given that Dollar Tree has already made the rental payments for October and November due under the Dollar Tree Subleases, the Debtors should (i) be ordered to honor the

---

[4] Dollar Tree hereby reserves its rights to commence an adversary proceeding against the Debtors for breach of contract, conversion, fraud, and for such other relief as may be appropriate if the Debtors fail to remit the rents paid by Dollar Tree to the overlandlords.

terms of the Dollar Tree Subleases and remit to the Landlords the rental payments that Dollar Tree made, or (ii) reject the Dollar Tree Subleases effective as of December 1, 2008 and pay the pre-petition portion of the November rent and administrative rent for the post-petition period of November. Similar relief has been granted to sublessees under facts similar to the instant matter.[5] See, e.g., In re Kmart Corporation, et al., Case No. 02-02474 (Bankr. N.D. Ill. March 8, 2002) (order authorizing rejection of certain unexpired leases, which provided that "the Debtors shall turn over to the applicable lessor any and all rentals collected by the Debtors from the sublessee of premises subject to such Real Property Lease for rental periods arising from and after the effective date of the rejection"). To the extent that the rental payments are not passed through to the Landlords, they are subject to a constructive trust and therefore are not property of the Debtors' estates. See In re American Int'l Airways, Inc., 44 B.R. 143, 147-48 (Bankr. E.D. Pa. 1984) (sublease payments subject to constructive trust and not property of the debtor-sublessor's estate); In re Mid-Atlantic Supply, Co., 790 F.2d 1121 (4th Cir. 1986).

20.   To the extent that the rejection does not become effective until December 1, 2008, the Debtors should be ordered to comply with the terms of the Dollar Tree Subleases. Public Serv. Co. of New Hampshire v. New Hampshire Electrical Coop., Inc. (In re Public Serv. Co.), 884 F.2d 11 (1st Cir. 1989) (until an executory contract or unexpired lease is rejected, it continues to bind the parties). Section 365(d)(3) provides that the Debtors shall timely perform all obligations "arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected…." 11 U.S.C. 365(d)(3). Based on the Debtors' questionable actions, Dollar Tree has ample reason to believe that the Debtors will not perform as required by the Dollar Tree Subleases. Accordingly, the Court should order the Debtors to fully comply with all terms of the Dollar Tree Subleases until such

---

[5] The failure to pay these amounts may have an adverse impact on Dollar Tree's rights under section 365(h).

time as the Dollar Tree Subleases are properly rejected.

Rejection Does Not Terminate Dollar Tree's Rights to Remain in Possession

21.     Although the Debtors' rejection of the Leases constitutes a breach pursuant to section 365(g) of the Bankruptcy Code, the breach does not constitute a termination of the Dollar Tree Subleases.  See Eastover Bank for Sav. V. Sowashee Venture (In re Austin Dev. Co.), 19 F.3d 1077, 1082-83 (5th Cir. 1994) (stating that Congress defined rejection of an executory contract or unexpired lease to constitute a breach of the agreement rather than the power to terminate the agreement and that the power to terminate the agreement rests with the non-breaching party); In re Stewart Foods, Inc., 64 F.3d 141, 144 (4th Cir. 1995) (stating that rejection constitutes a breach); 3 Collier on Bankruptcy ¶ 365.09[3] (15th ed. Rev.).  "Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear." In re Drexel Burnham Lambert Group, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992).  This is because rejection should not be interpreted to operate to damage the rights of third parties with rights in the leasehold estate.  See generally Commercial Trading Co. v. Lansburgh (In re Garfinkle), 577 F.2d 901 (5th Cir. 1978); Blue Bar Assocs. v. Picnic'N Chicken, Inc. (In re Picnic'N Chicken, Inc.) 58 B.R. 523 (Bankr. S.D. Cal. 1986); 3 Collier on Bankruptcy ¶ 365.09[3] (15th ed. Rev.).  The Bankruptcy Code makes clear that termination only occurs in narrow situations set forth in section 365(h), (i), and (n) at the option of the non-debtor party. See 11 U.S.C. §§ 365(h), (i), and (n).

22.     The Bankruptcy Code provides specific authority for Dollar Tree to remain in possession of the Dollar Tree Premises and perform pursuant to the terms of the Dollar Tree Subleases.  In situations such as the instant matter, where an unexpired lease of non-residential real property has been rejected by a debtor (as lessor), section 365(h)(1)(A)(ii) serves to protect

the rights of the lessee. See In re Aube, 158 B.R. 567, 568 (Bankr. D.R.I. 1993) ("In construing this section, courts have held that 'the statute was designed to preserve the lessee's possessory interests in its leasehold….'"), quoting, In re Lee Rd. Partners, Ltd., 155 B.R. 55, 60 (Bankr. E.D.N.Y. 1993); Solon Automated Servs., Inc. v. Wood Comm. Fund I, Inc. (In re Wood Comm. Fund I, Inc.), 116 B.R. 817, 818 (Bankr. N.D. Okla. 1990) ("The debtor cannot deprive the lessee of its possessory property interest in the leased premises."); LHD Realty Corp. v. Metro. Life Ins. Co (In re LHD Realty Corp.), 20 B.R. 717, 719 (Bankr. S.D. Ind. 1982) ("It is clear that Congress' intent was…protecting the property rights of the lessee."). Though not mentioned in the statutory text, Congress did explicitly identify sublessors as potential debtors. See S. Rep. No. 95-989, at 60, reprinted in 1978 U.S.C.C.A.N. at 5846. As noted above, the Debtors are sublessors. This reference in the legislative history together with the protection for lessees strongly suggests that section 365(h)(1)(A)(ii) is meant to protect sublessees as well. Bankruptcy courts and commentators have reached the same conclusion. See, e.g., Tebo v Elephant Bar Rest., Inc. (In re Elephant Bar Rest., Inc.), 195 B.R. 353, 356 (Bankr. W.D. Pa. 1996) (recognizing that a sublessee of a rejected lease may preserve its rights pursuant to section 365(h)(1)(A)(ii)); In re Dial-A-Tire, 78 B.R. 13, 16 (Bankr. W.D.N.Y. 1987) (stating that sections 365(d)(4) and 365(h)(1)(A)(ii) produce the result of a subtenant's right to remain in possession after the sublessor has rejected the sublease); Vivek Sankaran, Rejection Versus Termination: A Sublessee's Rights in a Lease Rejected in a Bankruptcy Proceeding Under 11 U.S.C. § 365(d)(4), 99 Mich. L. Rev. 853 (2001). To the extent there is any further question on this point, section 365(h)(1)(D) provides that the term "lessee" "includes any successor, assign, or mortgagee permitted under the terms of such lease." 11 U.S.C. § 365(h)(1)(D). It has been suggested that this includes sublessees. See 2 Norton Bankr. L. & Prac. 3d § 46:48 (2008)

(stating that the amendments to the Bankruptcy Code pursuant to the Bankruptcy Reform Act of 1994 makes clear that the protections set forth in section 365(h)(1) extend beyond the original lessee).

23. Section 365(h)(1)(A)(ii) provides that "if the term of such lease has commenced, the lessee may retain its rights under the lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such right to the extent that such rights are enforceable under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1)(A)(ii). State law and specific contractual provisions are two examples of "applicable nonbankruptcy law." See, e.g., In re Dial-A-Tire, 78 B.R. 13, 16 (Bankr. W.D.N.Y. 1987) (stating that subtenants have the right to assert relevant state law to protect their property rights). Accordingly, rejection does not deprive the sublessee of its property interest in the leasehold estate. See Solon Automated Servs., Inc. v. Wood Comm. Fund I, Inc. (In re Wood Comm. Fund I, Inc.), 116 B.R. 817, 818 (Bankr. N.D. Okla. 1990) ("[R]ejection of the lease results merely in the cancellation of covenants requiring performance in the future…by the debtor; rejection does not terminate the lease completely so as to divest the lessee of his estate in the property."), quoting, LHD Realty, 20 B.R. at 719 (quoting 2 Collier on Bankruptcy ¶ 365.09 (15th ed. 1979).

24. Here, Dollar Tree is statutorily and contractually entitled to remain in possession and perform accordingly. To the extent that the Rejection Order requires the Debtors to surrender possession of the Dollar Tree Premises, the Rejection Order should not be viewed as either terminating the Dollar Tree Subleases or requiring Dollar Tree to surrender possession of

the Dollar Tree Premises. Similar relief has been granted to sublessees under facts similar to the instant matter. See, e.g., In re Kmart Corporation, et al., Case No. 02-02474 (Bankr. N.D. Ill. March 8, 2002) (stating that the rights of sublessees are preserved under section 365(h) with respect to the Debtors and disputes between the sublessees and the landlords are subject to applicable state law).

25. Respectfully, the Rejection Order should be modified to state that the rejection of the Dollar Tree Subleases does not constitute a termination of the Dollar Tree Subleases and is without prejudice to Dollar Tree's rights under 11 U.S.C. § 365(h), applicable state law, and the Dollar Tree Subleases.

WHEREFORE, Dollar Tree hereby joins with all other objections to the Rejection Order. Dollar Tree respectfully requests (i) that the Rejection Order should be declared ineffective as to the Dollar Tree Subleases, (ii) that the Debtors should be ordered to fully comply with all terms of the Dollar Tree Subleases until such time as the Dollar Tree Subleases are properly rejected, which should be no earlier than December 1, 2008 since the Debtors have accepted payment of the November 2008 rent, (iii) that the Debtors should be ordered to pay to the overlandlords the rents that Dollar Tree paid to the Debtors, (iv) that the Rejection Order should be modified to state that the rejection of the Dollar Tree Subleases does not constitute a termination of the Dollar Tree Subleases and is without prejudice to Dollar Tree's rights under 11 U.S.C. § 365(h), applicable state law, and the Dollar Tree Subleases, and (v) such other and further relief that the Court deems just and proper.

Dated: Richmond, Virginia
November 24, 2008

**DOLLAR TREE STORES, INC.**

*/s/  William H. Schwarzschild, III*
By: _____
Counsel

William H. Schwarzschild, III, Esq. - VSB No. 15274
Paul S. Bliley, Jr., Esq. – VSB No. 13973
**WILLIAMS MULLEN**
Two James Center, 16th Floor
1021 East Cary Street
Post Office Box 1320
Richmond, Virginia  23218-1320
Phone:  804.783.6489
FAX:  804.783.6507
tschwarz@williamsmullen.com

-and-

Scott R. Kipnis, Esq.
Rachel N. Greenberger, Esq.
Nicholas B. Malito, Esq.
**HOFHEIMER GARTLIR & GROSS, LLP**
530 Fifth Avenue
New York, NY 10036
Phone:  (212) 818-9000
FAX:  (212) 869-4930

Counsel for Dollar Tree Stores, Inc.

1685991v3

**CERTIFICATE OF SERVICE**

I hereby certify that I have, this 24th day of November 2008 caused the service of a copy of the foregoing Objection of Dollar Tree Stores, Inc. to the Order Pursuant to 11 U.S.C. §§ 105(A), and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of the Petition Date to be sent to those on the annexed Service List, by first class mail, postage prepaid, at the address designated by them for service of papers and electronically to the parties set forth on the Court's ECF Service List, in this case.

*/s/ William H. Schwarzschild, III*
_____

**SERVICE LIST**

Daniel F. Blanks, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
*Proposed Counsel for the Debtors*
9000 World Trade Center
101 W. Main Street
Norfolk, Virginia  23510

Dion W. Hayes, Esq.
Joseph S. Sheerin, Esq.
Sarah Becket Boehm, Esq.
McGuire Woods LLP
*Proposed Counsel for the Debtors*
One James Center
901 East Cary Street
Richmond, Virginia  23219

Greg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
*Proposed Counsel for the Debtors*
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
*Proposed Counsel for the Debtors*
333 West Wacker Drive
Chicago, Illinois  60606

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
*Proposed Counsel for the Official Committee of Unsecured Creditors*
20 North Eighth Street, 2nd Floor
Richmond, Virginia  23219

Jeffrey N. Pomerantz, Esq.
Pachulski Stang Ziehl & Jones LLP
*Proposed Counsel for the Official Committee of Unsecured Creditors*
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA  90067-4100

Robert J. Feinstein, Esq.
Pachulski Stang Ziehl & Jones LLP
*Proposed Counsel for the Official Committee of Unsecured Creditors*
780 Third Avenue, 36th Floor
New York, New York  10017-2024

Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, Virginia  23219