Exhibit "A"
to First Amendment to Ground Lease

(10/1/93 Ground Lease between
Woodlawn Trustees, Incorporated
and Circuit City Stores, Inc.)

Tax Parcel No.: 06-051.00-113
Prepared By: John M. Bloxom, IV, Esq.
Bayard, Handelman &
Murdoch, P.A.
P.O. Box 25130
Wilmington, DE 19899

LEASE AGREEMENT, dated as of October 1, 1993, between

WOODLAWN TRUSTEES, INCORPORATED, a Delaware corporation

(herein, together with any corporation succeeding thereto by

consolidation, merger or acquisition of its assets

substantially as an entirety, called "Lessor"), having an

address at 2201 West 11th Street, Wilmington, Delaware and

CIRCUIT CITY STORES, INC., a Virginia corporation ("Lessee")

having an address at 9950 Mayland Avenue, Richmond, Virginia

23233.

WHEREAS, Lessor is the owner of certain property located

in New Castle County, Delaware and more particularly

described hereinafter; and

WHEREAS, Lessee desires to lease said property from

Lessor; and

WHEREAS, Lessor is amenable to leasing such property to

Lessee on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and the

mutual covenants herein set forth, Lessor and Lessee hereby

agree as follows:

1.   Lease of Premises; Title and Condition

1.1   In consideration of the rents and covenants herein

stipulated to be paid and performed by Lessee and upon the

terms and conditions hereinafter specified, Lessor hereby

leases to Lessee, and Lessee hereby leases from Lessor, the

land described in Exhibit A, together with any improvements

thereon and all the rights, privileges and appurtenances

6/14/94; 3:11 PM

EXHIBIT

A

thereunto belonging as the same may be diminished by a partial taking thereof (the "Premises").

1.2  Except as specifically otherwise provided herein, Lessor leases the Premises to Lessee in their present condition without representation or warranty and subject to the existing state of title, all existing covenants, restrictions, easements, agreements and regulations, if any, any state of facts an accurate survey might show, zoning rules, restrictions, regulations, resolutions, ordinances, building restrictions and governmental regulations now in effect or hereafter adopted by any governmental authority having jurisdiction over the Premises.  Lessee represents that it has examined the Premises and title thereto and has found all of the same satisfactory for all purposes.

2.   Term

2.1  The Premises are leased unto Lessee for a term beginning on the date hereof (the "Commencement Date") and expiring on midnight of the last day of February immediately following the twentieth anniversary of the first day of the Permanent Period (as hereinafter defined) unless sooner terminated as hereinafter provided (such term as may be shortened by any earlier termination being hereinafter referred to as the "Initial Term").

2.2  In addition to the Initial Term, absent an Event of Default (as hereinafter defined) having occurred and being continuing at the time of exercise of the options created in this paragraph, Lessor agrees to lease the Premises to Lessee

2

for four (4) consecutive additional terms of five (5) years each, each such additional term to commence simultaneously with the natural expiration of the immediately preceding term. Lessee may exercise its options to extend the Initial Term of this Lease as provided in this Section 2.2 by giving written notice thereof to Lessor not less than ninety (90) days prior to the expiration of the then current term. The additional terms provided in this Section 2.2, as the same may be shortened by any earlier termination, are referred to hereinafter as the "Extension Terms."

3.    Rent

3.1  During the Initial Term and any Extension Terms, Lessee covenants and agrees to pay to Lessor, in lawful money of the United States, at the offices of Lessor designated in Article 23, Basic Rent, as hereinafter defined.

3.2  During the interval between the Commencement Date and the first to occur of (i) the date on which Lessee opens the Premises for business; and (ii) December 1, 1994, (the "Initial Period") Basic Rent shall be One Hundred Forty Thousand Dollars ($140,000.00) per annum.

3.3  Subject to the provisions of Section 3.4, during that portion of the Initial Term not described in Section 3.2 (the "Permanent Period"), Basic Rent shall be Three Hundred Seventy-Five Thousand Dollars ($375,000.00) per annum.

3.4  On each anniversary of the Commencement Date of this Lease during the Initial Term (each an "Adjustment Date") the Basic Rent described in Section 3.3 above shall be

3

adjusted upwards, subject to the limitation set forth in this
paragraph, to reflect increases in the CPI Index, as
hereinafter defined. Such adjustments shall be computed by
multiplying the Basic Rent described in Section 3.3 hereof by
a fraction, the numerator of which shall be the lesser of:
(i) the CPI Index published as of each such anniversary of
the Commencement Date and (ii) the CPI Index published as of
the Commencement Date increased by 4% for each year elapsing
between the Commencement Date and such anniversary; and the
denominator of which shall be the CPI Index published as of
the Commencement Date.

3.5   During the first year of each Extension Term, if
any, of this Lease, and thereafter to the conclusion of such
Extension Term, Basic Rent shall be equal to the greater of
(i) the Basic Rent in effect for the five (5) year period
immediately prior to the commencement of such Extension Term
or (ii) the Basic Rent described in Section 3.3 above
multiplied by a fraction the numerator of which shall be the
CPI Index published as of the commencement of such Extension
Term and the denominator of which shall be the CPI Index
published as of the Commencement Date.

3.6   Cumulative decreases in the CPI Index in no event
shall operate to decrease Basic Rent. In the event of a
cumulative decrease in the CPI Index, the numerator to be
employed in the computation of Basic Rent pursuant to this
Article as of the adjustment date on which such cumulative
decrease is computed and until subsequently occurring

4

increases in the CPI Index shall have eliminated such cumulative decrease shall be the CPI Index published as of the adjustment date immediately preceding the adjustment date on which such cumulative decrease was computed.

3.7 As used herein the phrase "CPI Index" shall mean the Consumer Price Index for "All Items, All Urban Consumers Philadelphia Area," published by the U.S. Bureau of Labor statistics, and the CPI Index published as of any given date shall be deemed to be the CPI Index published for the third month immediately preceding the month in which such date occurs. In the event that the CPI Index, as hereinabove defined, is discontinued, and the United States Bureau of Labor Statistics shall publish or commence publication of a comparable, regional index in substitution therefor (the "Substituted Index"), the Substituted Index shall be substituted for use in connection herewith. In the event that at the time of such discontinuance no Substituted Index is published, or if published, the publication of the same subsequently is discontinued, Lessor and Lessee will, by mutual agreement, or in lieu thereof, by judicial determination, substitute an alternative index (preferably comparable and regional in character but, in the event same shall be unavailable, whether or not comparable and regional in character) for the purpose of preserving and effectuating the intent expressed herein. Upon substitution of any index for the CPI Index as contemplated herein, Lessor and Lessee shall stipulate, in an addendum to this Lease executed by the

5

parties, to such modifications in this Article as will ensure that the Basic Rent paid or to be paid hereunder is not affected solely by reason of such substitution.

3.8   All payments of Basic Rent shall be made in equal monthly installments in advance of each month as to which each installment relates and shall be prorated for any partial months.   Lessor promptly shall reimburse Lessee for any overpayment(s) of Basic Rent or Additional Rent (as hereinafter defined) which it may receive.   The first monthly installment of Basic Rent shall be paid on the Commencement Date.   Each subsequent monthly installment of Basic Rent shall be paid on each monthly anniversary of the Commencement Date or, if the same be a legal holiday, on the first business day following such monthly anniversary.

3.9   All amounts which Lessee is required to pay pursuant to this Lease (other than Basic Rent and amounts payable upon any purchase of the Premises pursuant to Article 14), together with every fine, penalty, interest and cost which may be added for non-payment or late payment thereof, shall constitute additional rent ("Additional Rent").   If an Event of Default (as defined in Article 17) occurs as a result of Lessee's failure to pay any such Additional Rent when the same shall become due, Lessor shall have all rights, powers and remedies with respect thereto as are provided herein or by law as the result of the occurrence of an Event of Default resulting from non-payment of Basic Rent and shall, except as expressly provided herein, have the right to

6

pay the same on behalf of Lessee. All installments of Basic
Rent and Additional Rent not timely paid by Lessee to Lessor
within ten (10) days after the same shall be due and payable
hereunder shall bear interest at a rate five (5) percentage
points above the Federal Reserve Discount Rate, including any
surcharge thereon, prevailing as of the date(s) on which such
installment(s) became due, from the date(s) on which such
installment(s) became due, until paid. Lessee shall perform
all its obligations under this Lease at its sole cost and
expense, and shall pay all Basic Rent and Additional Rent
when due, without notice or demand provided, however, that
nothing in this sentence shall discharge any duty which
Lessor may have hereunder to deliver to Lessee notices for
which specific provision is made herein.

4.   Net Lease

4.1   This Lease is a net lease and, any present or
future law to the contrary notwithstanding, shall not termi-
nate except as provided in Sections 12.6, 13.2 and 17.1, nor
shall Lessee be entitled to any abatement or reduction
(except as provided in Section 13.4), set-off, defense or
deduction with respect to any Basic Rent or Additional Rent,
nor shall the obligations of Lessee to pay Basic Rent or
Additional Rent hereunder be affected, by reason of: any
damage to or destruction of the Premises; any taking of the
Premises or any part thereof by condemnation or otherwise;
any prohibition, limitation, restriction or prevention of
Lessee's use, occupancy or enjoyment of the Premises, or any

7

interference with such use, occupancy or enjoyment by any person other than Lessor or any person claiming under or through Lessor; any eviction by paramount title or otherwise; (except as provided hereinabove in this Section 4.1) any default by Lessor hereunder or under any other agreement; the impossibility or illegality of performance by Lessor, Lessee or both; any action of any governmental authority; or any other cause whether similar or dissimilar to the foregoing. The parties intend that the obligations of Lessee hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations shall have been modified or terminated pursuant to an express provision of this Lease.

4.2   Lessee shall remain obligated under this Lease in accordance with its terms and, except as is specifically provided herein, shall not take any action to terminate, rescind or avoid this Lease, notwithstanding any bankruptcy, insolvency, reorganization, liquidation, dissolution or other proceeding affecting Lessee or any assignee of Lessee or any action with respect to this Lease which may be taken by any trustee, receiver or liquidator or by any court. Without limiting the generality of the foregoing, Lessee waives all rights to terminate or surrender this Lease, or to any abatement or deferment of Basic Rent or Additional Rent on account of Lessee's bankruptcy, insolvency, reorganization, liquidation, dissolution or other proceeding affecting Lessee or any assignee of Lessee or any action with respect to this

8

Lease which may be taken by any trustee, receiver or
liquidator or by any court. Lessee hereby waives any right
to avoid its obligations under this Lease provided under any
state statute governing the relationship of Lessor and
Lessee, including any such rights contained in Title 25
Del.C. § 5101 et. seq., if deemed applicable to this Lease.
Notwithstanding any such statute, Lessee shall be bound by
all the terms and provisions contained in this Lease.

4.3   Nothing contained in this Article shall be
construed to prohibit or restrict Lessee's right to prosecute
claims against Lessor for defaults hereunder or under any
other agreement.

5.   Expenses, Taxes and Other Obligations

5.1   Lessee agrees that except as provided in Section
5.5 and Article 21 hereof, it will pay to or on behalf of
Lessor, as Additional Rent, punctually as and when the same
shall become due and payable, each and every cost and expense
of every kind and nature whatsoever (except as set forth in
section 5.5 hereof), for the payment of which Lessor is, or
shall or may be or become, liable by reason of any right or
interest of Lessor in or under this Lease, or by reason of,
or in any manner connected with, or arising out of, the
construction, operation, maintenance, alteration, repair,
rebuilding, use or occupancy of the Premises or Improvements
now or hereafter located thereupon, or by any other reason
whether similar or dissimilar to the foregoing, foreseen or
unforeseen, connected with or arising out of the Premises,

9

the Improvements or this Lease. Subject to the provisions of
Section 5.5 and Article 21 hereof, Lessee further agrees that
it will pay, as Additional Rent during the period in which
the same shall be payable without penalty, all real estate
taxes, taxes measured by rents, personal property taxes,
water charges, sewer charges, assessments (including, but not
limited to, assessments for public improvements or benefits)
and, except as provided in Section 5.5 hereof, all other
governmental taxes, impositions and charges of every kind and
nature whatsoever, whether or not now customary or within the
contemplation of the parties hereto and regardless of whether
the same shall be extraordinary or ordinary, general or
special, unforeseen or foreseen (each such tax, water charge,
sewer charge, assessment and other governmental imposition
and charge which Lessee is obligated to pay hereunder being
herein sometimes termed a "Tax"), which, at any time during
the Term or any Extension Term, shall be or become due and
payable by Lessee or Lessor and which shall be levied,
assessed or imposed:

     (i)   upon or with respect to, or shall be or
become liens upon, the Premises or Improvements or
any portion thereof or any interest of Lessor
therein or under this Lease, or

     (ii)  upon or with respect to Lessor by reason
of any actual or asserted engagement by Lessor,
directly or indirectly in any business, occupation
or other activity in connection with the Premises
or Improvements or any portion thereof, or

     (iii) upon or against, or which shall be
measured by, or shall be or become liens upon, any
rents or rental income, as such, payable to or on
behalf of Lessor, in connection with the Premises

10

or Improvements or any portion thereof, or any
interest of Lessor therein, or

(iv) upon this transaction or any document to
which Lessee is a party creating or transferring an
interest or an estate in the Premises or
Improvements, or

(v) upon or against Lessor or any interest of
Lessor in the Premises or Improvements,

in any manner and for any reason whether similar or
dissimilar to the foregoing, under or by virtue of any
present or future law, statute, ordinance, regulation or
other requirement of any governmental authority whatsoever,
whether federal, state, county, city, municipal or otherwise,
it being the intention of the parties hereto that, insofar as
the same now or hereafter may lawfully be done, Lessor shall
be free from all such costs and expenses, and all Taxes, such
that this Lease shall yield to Lessor not less than the
annual rents reserved hereunder through the Term and any
Extension Terms. For purposes of this Section 5.1, any cost,
expense or Tax which lawfully may be paid in installments
without penalty or imposition, or risk of imposition, of any
lien or security interest to secure the payment thereof,
shall be deemed to become due and payable as the obligation
to pay each installment matures.

5.2   Upon the expiration or earlier termination of this
Lease real estate taxes, assessments and other charges which
shall be levied, assessed or become due upon the Premises or
any part thereof shall be prorated to the date of such
expiration or earlier termination.

11

5.3  Lessor agrees to deliver promptly to Lessee any bills or invoices for Taxes that Lessor receives.  Lessee covenants to furnish to Lessor, promptly upon request, official receipts of the appropriate taxing authorities evidencing the payment of Taxes on the Premises and Improvements.

5.4  The certificate, advice or bill of the nonpayment of any Tax, made or issued by the appropriate official designated by law to make or issue the same or to receive payment of any such Tax, shall be prima facie evidence that such Tax was due and unpaid at the time of the making of issuance of such certificate, advice or bill.

5.5  It is expressly understood and agreed that Lessee shall not be required to pay or reimburse Lessor for (i) any tax imposed by the Federal government or the State of Delaware upon the net income or profits of Lessor, (ii) any transfer tax which may be imposed upon or with respect to any transfer (other than transfer taxes in connection with a conveyance by Lessor to Lessee) of Lessor's interest in the Premises; or (iii) any amounts paid by Lessor to meet general overhead, administrative or (except as expressly provided herein) insurance expenses.

5.6  If there shall be any refunds or rebates of Taxes, costs or expenses paid by Lessee pursuant to the provisions of this Lease and such refunds or rebates shall be paid to Lessor, Lessor forthwith shall deliver to Lessee the amount of refunds or rebates.  Lessor agrees that it will comply

12

with any reasonable, written request of Lessee to make
application for such refunds or rebates in the event that
Lessee is unable to prosecute such application in its own
right.

    6.  Use and Compliance with Law, etc.

    6.1  Lessee agrees that it will not use or suffer the
Premises to be used for any unlawful purpose.

    6.2  Subject to the provisions of Article 21, Lessee,
throughout the Initial and any Extension Terms, and at no
expense whatsoever to Lessor, shall comply promptly or cause
prompt compliance with all laws and ordinances and the
orders, rules, regulations and requirements of duly
constituted public authorities, foreseen or unforeseen,
ordinary as well as extraordinary, and whether or not the
same shall presently be within the contemplation of the
parties hereto or shall involve any change of governmental
policy and irrespective of the cost thereof, which may be
applicable to the Premises or Improvements, or the construc-
tion, repair or alteration thereof including, without
limitation, the fixtures and equipment thereof or the use or
manner of use of the Premises or Improvements.  Lessee
further agrees that it will, at its own cost and expense,
fully and faithfully perform and observe all requirements and
conditions of all contracts (including insurance policies),
agreements and covenants applicable to the Premises or the
ownership, occupancy or use thereof which are in existence
and known to Lessee on the date hereof or which are hereafter

13

entered into by Lessee or by Lessor with the consent of
Lessee, including but not limited to, all requirements and
conditions set forth in instruments recorded as of the
Commencement Date of this Lease and in any instrument
recorded thereafter with the consent of Lessee or any
easement appurtenant thereto insofar as the same shall impose
any obligation upon Lessor as owner of the Premises.

6.3 Unless otherwise expressly provided in this Lease,
this Lease shall not terminate, nor shall Lessee be entitled
to any abatement of rent or reduction thereof, nor shall the
respective obligations of Lessor and Lessee be otherwise
affected, by reason of the lawful or unlawful prohibition of
Lessee's use of the Premises, the interference with such use
by any private person or corporation (other than Lessor), or
for any other cause whether similar or dissimilar to the
foregoing, any present or future law to the contrary
notwithstanding.

6.4 Lessee agrees to procure or cause to be procured,
at its sole cost and expense, any and all permits, licenses
or other authorizations required for the lawful and proper
construction, use, occupation, operation and management of
the Premises and the Improvements. Lessor agrees to join in
applications for such permits, licenses or other
authorizations as the owner of the Premises if such joinder
is necessary to obtain or enforce legal rights in same and if
such joinder does not materially limit Lessor's ability to

14

develop its other holdings or place a substantial or
continuing monetary burden on Lessor.

7.    Public Utility Charges

7.1   Lessee agrees to pay or cause to be paid all
charges for gas, water, sewer, electricity, light, heat,
power, telephone or other communication service or other
utility or service used, rendered or supplied to, upon or in
connection with Improvements throughout the Term and any
Extension Terms. Lessee expressly agrees that Lessor is not,
nor shall it be, required to furnish to Lessee or any other
occupant of the Improvements, any water, sewer, gas, heat,
electricity, light, power or any other facilities, equipment,
labor, materials or services of any kind whatsoever.

8.    Maintenance, Repairs; Right of Inspection

8.1   Throughout the Term and any Extension Terms and at
no expense to Lessor whatsoever, Lessee shall maintain the
Premises and the Improvements as defined in Section 9.1 in
good condition and shall promptly make or cause to be made
all repairs, ordinary as well as extraordinary, foreseen as
well as unforeseen, necessary to keep the Improvements and
the Premises in good and lawful order and condition.    The
term "repairs" shall include replacements, restoration and/or
renewals when necessary. Lessee expressly waives the right
to make repairs at the expense of Lessor as provided for in
any statute or rule of law in effect at the time of the
execution of this Lease or any amendments thereof, or any
other statute or rule of law which may be hereafter passed or

15

become effective during the Term and any Extension Terms.
Throughout the Term, and at no expense to Lessor whatsoever,
Lessee shall maintain any detention ponds, drainage
mechanisms and other mechanisms, structures and devices
located on the Premises or properties adjacent thereto which
are or hereafter may be constructed, erected or maintained in
connection with the development of, or the maintenance of,
improvements on the Premises.

8.2   On not less than 48 hours' advance notice (but
without notice in the event of an emergency) Lessee shall
permit Lessor and the authorized representatives of Lessor to
enter the Premises and the Improvements at all reasonable
times during usual business hours for the purpose of
inspecting the same. In the event Lessee has failed to
commence work on any repair for a period of thirty (30) days
following written demand by Lessor (but without demand in the
event of a failure to repair resulting in risk of injury to
person or property), Lessor, in addition to and without
limitation of its rights under Article 15, or the exercise
thereof, may enter the Premises and Improvements for the
purpose of making such repair or performing any work that may
be necessary to comply with any laws, ordinances, rules,
regulations or requirements of any public authority.   The
performance thereof by Lessor shall not constitute a waiver
of Lessee's obligation to perform the same and Lessee shall
pay to Lessor, within thirty (30) days of Lessor's written
demand therefor, all reasonable expenses incurred by Lessor

16

in making such repairs. Lessee shall hold Lessor harmless
from and against any liability for inconvenience, annoyance,
disturbance, loss of business or other damage of Lessee or
any other occupant of the Improvements or portion thereof, by
reason of making repairs or the performance of any work on
the Improvements by Lessor as allowed above or on account of
bringing materials, supplies and equipment into or through
the Improvements during the course thereof, and the
obligations of Lessee under this Lease shall not thereby be
affected in any manner whatsoever.

9.    Improvements and Alterations

9.1   Lessee agrees, at its sole cost and expense, to
construct (and/or renovate as the case may be) and maintain
improvements on the Premises consisting of a retail sales
facility with appurtenant roadways, driveways, walkways,
parking areas, landscaping, utilities and other amenities as
are satisfactory to Lessee and approved by Lessor pursuant to
the provisions of Section 9.2 and are located on the Premises
or other property owned by Lessor as may be required by
authorities having jurisdiction or as may be deemed desirable
for construction by both Lessor and Lessee in connection with
development of the Premises (the "Improvements").
Construction of such Improvements shall be commenced within
the first ten (10) months of the Term and shall be diligently
completed. Thereafter, the covenant set forth in the first
sentence of this Section 9.1 shall operate to obligate Lessee
and Lessee's successors in interest to maintain the

17

Improvements as originally constructed or, at the election of Lessee, to remove the Improvements ancillary to the substitution and replacement thereof pursuant to Section 9.5.

9.2   Lessor reserves the right to approve and disapprove in writing and in advance, all engineering, landscaping, site, building and other plans (hereinafter collectively referred to as the "Plans") underlying the construction, erection and maintenance of the Improvements, and Lessee agrees that it shall not construct, erect or maintain any Improvements upon the Premises the Plans of which have not been the subject of Lessor's prior written approval. Plans submitted to Lessor for approval pursuant to this Section 9.2 shall be sufficiently detailed so as to enable Lessor to assess, inter alia the size, location and intended use of the buildings and other structures contemplated, the materials from which such buildings and other structures are to be fashioned, the location, design and capacity of all grading, storm drainage, storm management, sediment and erosion control facilities and utilities which are to service such buildings and other structures and the location, design and capacity of all means of pedestrian and vehicular ingress and egress to and from such buildings and other structures. Lessor shall not unreasonably withhold its approval of Plans submitted to it pursuant to this Section 9.2. Without implication as to other bases upon which Plans reasonably may be disapproved, however, Lessor and Lessee agree that Lessor

18

shall not be found to have unreasonably withheld its approval
of Plans where Lessor's disapproval is based upon:

      (i) any failure of the Plans to provide for
buildings or other structures the design,
fabrication, location and use of which is
consistent with high-quality development which will
harmonize with buildings and other improvements
located upon immediately adjacent properties;

      (ii)  any failure of the Plans to conform with
the requirements of applicable law; or

      (iii)  any failure of the Plans to preserve
substantially intact the developability of other
lands of Lessor.

9.3  Plans submitted by Lessee to Lessor for approval
pursuant to Section 9.2 shall be accompanied by notification
to such effect from Lessee to Lessor. Within the thirty (30)
day period immediately following Lessor's receipt of such
Plans, Lessor shall, by written notification to Lessee,
signify its approval or disapproval of the same. Any
disapproval of Plans, or any portion thereof, shall set forth
in reasonable detail the basis or bases of such disapproval.
The failure of Lessor to signify its approval or disapproval
of Plans submitted pursuant to this Article 9 within said
thirty (30) day period shall constitute Lessor's approval
thereof.

9.4  The right of plan approval and disapproval reserved
to Lessor in this Article 9 shall be exercisable by, and
inure solely to the benefit of, Lessor and its successors in
interest hereunder. In no event shall anything contained in
this Article 9 be construed as conferring upon any person

19

other than Lessor and its successors in interest hereunder
any right to approve or disapprove the construction,
erection, substitution, replacement or maintenance of any
Improvements hereafter located upon the Premises.

9.5  Lessee may, at its sole cost and expense, alter or
add to the Improvements constructed pursuant to Section 9.1
and may make substitutions and replacements of the same
subject to prior compliance with the provisions of this
Article 9, including, without limitation, Sections 9.2 and
9.3.

9.6  All construction and reconstruction of Improvements
authorized in this Article 9 shall be performed in a good and
workmanlike manner and in compliance with all laws,
ordinances, orders, rules, regulations and requirements of
duly constituted public authorities, in compliance with any
enforceable restrictions relating to the character of
improvements on the Premises, and in further compliance with
the requirements of all insurance policies required to be
maintained by Lessee hereunder.  All Improvements and alter-
ations, additions or replacements thereof shall be located
wholly within the perimeter of the property comprising the
Premises and shall be independent and not connected with
improvements erected on adjoining property without the prior
written consent of Lessor, which consent shall not be
unreasonably withheld.

9.7  Subject to Article 21, Lessee shall promptly pay
all costs and expenses of all construction and reconstruction

20

authorized by this Article and shall discharge all liens filed against the Premises arising out of the same; provided that Lessee shall have no obligation to discharge any mechanic's, laborer's, materialman's, supplier's or vendor's lien if payment is not yet due under the contract which is the foundation thereof. Lessee shall procure and pay for all permits and licenses required in connection with such construction and reconstruction.

9.8 Title to all Improvements, additions thereto and replacements thereof, made, erected, constructed, installed or placed upon, below or above the Premises and Improvements and permanently affixed shall be and remain in the Lessee, subject to the provisions of Section 27.1 hereof.

9.9 Notwithstanding anything to the contrary set forth in this Article 9, Lessor agrees that:

(a) it has approved the prototypical plans that Tenant delivered to Lessor prior to May 28, 1993 subject to the condition that no sign band appear on the building;

(b) in connection with further construction or alterations, it will not exercise the rights reserved to it pursuant to this Article to prohibit construction or alterations which at the time are generally accepted by commercial retailers in connection with improvements of similar size provided that such construction or alterations are not obviously incompatible with the improvements then existing in the immediate vicinity of the Premises or obviously insensitive to immediately adjacent properties.

21

10. Liens

10.1  Subject to the provisions of Article 21, Lessee
will promptly remove and discharge any charge, lien, security
interest or encumbrance upon the Premises or Improvements or
upon any Basic Rent or Additional Rent which arises for any
reason, including all liens which arise out of the
construction, use, occupancy, repair or rebuilding of the
Premises or Improvements or by reason of labor or materials
furnished or claimed to have been furnished to Lessee or for
the Premises or Improvements, but not including any sublease,
assignment or mortgage permitted hereunder, or any mortgage,
charge, lien, security interest or encumbrance created by
Lessor or those, other than Lessee, claiming by, through or
under Lessor; provided that Lessee shall have no obligation
to discharge any mechanic's, laborer's, materialman's,
supplier's or vendor's lien if payment is not yet due under
the contract which is the foundation thereof.

10.2  Nothing contained in this Lease shall be construed
as constituting the consent or request of Lessor, express or
implied, to or for the furnishing of any materials for any
construction, alteration, addition, repair or demolition of
or to the Premises or Improvements, or any part thereof.
Notice is hereby given that Lessor will not be liable for any
labor, services or materials furnished or to be furnished to
Lessee, or to anyone holding the Premises or the Improvements
or any part thereof through or under Lessee, and that no
mechanic's or other lien for any such labor, services or

22

materials shall attach to or affect the interest of Lessor in
and to the Premises.

11. Indemnification

11.1 Lessee covenants and agrees, at its sole cost and
expense, to indemnify and save harmless Lessor and any
officer, director or member of Lessor from and against any
and all claims by or on behalf of any person, firm, corpo-
ration or governmental authority, arising from the construc-
tion, reconstruction, occupation, use, possession, conduct or
management of, or from any work or thing whatsoever done in
or about the Premises during the Term and any Extension
Terms, or the subletting of any part thereof, and further to
indemnify and save Lessor and any officer, director or member
of Lessor harmless from and against any and all claims
arising from the condition of any improvement, or spaces
therein or appurtenant thereto (except to the extent that
Lessor herein is specifically stated to be liable for such
condition), or arising from any breach or default on the part
of Lessee in the performance of any covenant or agreement on
the part of Lessee required to be performed pursuant to the
terms of this Lease, or arising from any act or negligence of
Lessee, or any of its agents, contractors, servants,
employees or licensees, or arising from any accident, injury
or damage whatsoever caused to any person, firm or
corporation, including any sublessee of Lessee occurring
during the Term and any Extension Terms, in or about the
Premises (other than those caused by Lessor or its servants

23

and employees), and from and against all costs, reasonable counsel fees, expenses and liabilities incurred in or about any such claim, action or proceeding brought thereon; and in case any action or proceeding be brought against Lessor by reason of any such claim, Lessee upon notice from Lessor covenants to resist or defend such action or proceeding by counsel satisfactory to Lessor, unless such action or proceeding is resisted or defended by any carrier of public liability insurance referred to in Article 12 hereof as authorized by the provisions of any policy of public liability insurance maintained pursuant to said Article 12.

11.2 Notwithstanding anything to the contrary set forth in this Article, Lessor represents and warrants to Lessee that to the best of its knowledge, information and belief as of the Commencement Date the Premises are free from contamination by substances which are classified as hazardous pursuant to federal, state and local laws as well as regulations promulgated thereunder other than for such contamination as may result from the presence on the Premises of naturally occurring substances or substances which have been artificially introduced to the Premises but which are present thereon only in quantities or levels which are below those at which remedial action(s) are required pursuant to such laws and regulations as interpreted as of the Commencement Date by the authorities which have jurisdiction to administer and enforce same. Lessor covenants and agrees, at its sole cost and expense, to indemnify and save harmless

24

Lessee and any officer, director or member of Lessee from and against any and all claims by or on behalf of any person, firm, corporation or governmental authority, which arise from any breach of the foregoing representation and warranty and from and against all costs, reasonable counsel fees, expenses and liabilities incurred in or about any such claim, action or proceeding brought thereon; and in case any action or proceeding be brought against Lessee by reason of any such claim, Lessor upon notice from Lessee covenants to resist or defend such action or proceeding by counsel satisfactory to Lessee, unless such action or proceeding is resisted or defended by any carrier of public liability insurance.

12. Insurance

12.1 Throughout the Term and any Extension Terms, Lessee will purchase and maintain insurance on the Premises and the Improvements of the following character:

(a) general public liability insurance: insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises and/or the Improvements and/or adjoining streets and sidewalks, in the minimum combined single limit amount of $2,000,000.00 each occurrence for bodily injury and/or death and/or property damage, or in such greater amounts as are then customary for similar properties located within Delaware or contiguous states;

(b) comprehensive insurance: insurance against "all risks" of loss to the Premises or the Improvements by reason of fire, windstorm, earthquake or other casualty whatsoever (excluding only such unusual perils as war, nuclear incident or attack), in an amount equal to the "full replacement cost" of the Improvements (no deduction for depreciation) or the maximum amount obtainable;

25

(c)   war risk insurance when and to the extent obtainable from the United States government or any agency or instrumentality thereof; and

(d)   such other insurance, including workman's compensation insurance and employer's liability insurance, as now or hereafter may be required by the laws of the State of Delaware and/or any political subdivision thereof.

12.2   All insurances required to be purchased and maintained pursuant to this Article shall be written by nationally recognized companies selected by Lessee and, other than workman's compensation insurance, shall name as named insureds both Lessee and Lessor, as their interests may appear.   Lessee, at its option, may select commercially reasonable deductibles as now or hereafter may be customary for policies of insurance covering properties similar in location and use to the Premises.

12.3   Every policy referred to in Section 12.1 (a) and (b) shall provide that it will not be canceled or reduced except after thirty (30) days' written notice to Lessor (and any mortgagee, if applicable) and that the interests of the Lessor (and any mortgagee, if applicable) shall not be invalidated by any act or negligence of Lessee or Lessor nor by occupancy or use of the Premises for purposes more haz-ardous than permitted by such policy nor by any foreclosure or other proceedings relating to the Premises or the Improve-ments or the leasehold estate created hereby.   Lessee will advise Lessor promptly of any policy cancellation reduction or amendment which adversely affects Lessor or any mortgagee.

26

12.4  Lessee shall deliver to the Lessor Certificates of
Insurance satisfactory to the Lessor evidencing the existence
of all insurances which are required to be maintained by
Lessee hereunder, such delivery to be made (i) promptly after
the execution and delivery of this Lease and (ii) at least
thirty (30) days prior to the expiration date of any such
insurance. Lessee shall not obtain or carry separate
insurance concurrent in form or contributing in the event of
loss with that required by this Article 12 unless Lessor is a
named insured therein.  Lessee shall immediately notify
Lessor whenever any such separate insurance is obtained and
shall deliver to Lessor Certificates evidencing the same.
Any insurance required to be maintained by Lessee hereunder
may be provided under blanket policies provided that the
amount of insurance allocated to the Premises and the
Improvements thereunder shall be not less than the amounts
set forth in Section 12.1 of this Article.  All insurances
required to be maintained hereunder shall contain a waiver by
the insurer of all right of subrogation against Lessor,
Lessee, persons claiming under or through Lessor or Lessee
and persons holding interests in properties adjoining the
Premises in connection with any loss or damage insured
against.

12.5  Any loss to the improvements on the Premises shall
be adjusted with the insurance company or companies by and at
the expense of Lessee.

27

12.6   If during the Term or any Extension Term the
Improvements shall be substantially damaged or destroyed by
any casualty such that the Improvements shall, in the
reasonable judgment of Lessee, be uneconomic for restoration
and for Lessee's continued use and occupancy, then Lessee may
give notice to Lessor, within ninety (90) days after such
occurrence, of its intention to terminate this Lease on any
business day specified in such notice which occurs not less
than sixty (60) days subsequent to the giving of such notice,
provided that any and all subleases shall have terminated on
or before such date, and this Lease shall terminate on the
date specified in such notice, and Basic Rent and Additional
Rent due hereunder shall be apportioned and paid to the date
of such termination.  In such event, Lessor shall be entitled
to receive that portion of the compensation and/or proceeds
payable in connection with such damage or destruction which
represents the reasonable and necessary cost of removing the
Improvements from the Premises provided, however, that
notwithstanding Lessor's receipt of such portion, Lessor
shall be privileged to restore such Improvements if, in its
sole discretion, it should so elect.

12.7   Except as otherwise provided in Section 12.6,
Lessee shall be entitled to the entire compensation or
proceeds payable in connection with any damage to or destruc-
tion of the Improvements, which compensation or proceeds
shall be utilized in the prompt repair and/or restoration
thereof to a complete architectural unit.

28

12.8   Lessor and Lessee each agree that it will cooperate with the other, to the extent that the other party may reasonably require, in connection with the prosecution or defense of any action or proceeding arising out of, or for the collection of any insurance moneys that may be due in the event of any loss or damage. Lessor and Lessee each further agree that it will execute and deliver to the other party such instruments as may be required to facilitate the recovery of any insurance moneys. The costs and expenses of all such actions and proceedings shall be paid by Lessee.

12.9   The requirements of this Article 12 shall not be construed to negate or modify or limit Lessee's obligations under Article 11.

12.10   Notwithstanding anything to the contrary set forth in this Article 12, so long as Lessee maintains a net worth of at least $75,000,000.00, in lieu of purchasing and maintaining the insurances required to be purchased and maintained hereunder, by notice to Lessor Lessee may elect to self-insure against the risks referred to in this Article. In such event, upon the occurrence of any casualty, Lessee shall be deemed for purposes of this Article 12 to have received insurance proceeds in an amount sufficient to repair or restore the Premises to their condition immediately prior to the occurrence of such casualty.

29

13. Condemnation

13.1 In the event that the Premises, the Improvements or any part thereof, shall be taken in condemnation proceedings or by exercise of any right of eminent domain or by agreement between Lessor, Lessee and those authorized to exercise such right in lieu of such exercise (any such matters being hereinafter referred to as a "taking"), Lessor, Lessee and any other persons or entities having an interest in the award or awards shall have the right to participate in any such condemnation proceedings or agreement for the purpose of protecting their interests hereunder, each party so participating to pay its own expenses therein.

13.2 If at any time during the Term or any Extension Term there shall be a taking of the whole or substantially all of the Premises or the Improvements, this Lease shall terminate and expire on the date of such taking and the Basic Rent and Additional Rent hereunder shall be apportioned and paid to the date of such taking. For the purpose of this Article "substantially all of the Premises or the Improvements" shall be deemed to have been taken if in the reasonable judgment of Lessee, the untaken part of the Premises or the Improvements shall be insufficient for the economic and feasible operation thereof by Lessee.

13.3 If this Lease shall have terminated as a result of a taking described in Section 13.2 Lessee shall be entitled to that portion of the award that represents the present value of the excess, if any, of the fair rental value of the

the Premises during the remainder of the then current term
over the rents reserved under this Lease (the "Leasehold
Award") and that portion of the award that represents the
value of the Improvements (the "Improvements Award").   The
Leasehold Award and Improvements Award shall be deemed to be
that part of the total award which shall be specified as such
by the court (or commissioners or other body authorized to
make the award) or, if not so specified, as shall be
determined by mutual agreement between Lessor and Lessee or,
in default of such agreement, as shall be determined by
appraisal pursuant to Article 24.   Lessor shall be entitled
to the remainder of the award and for any consequential
damages to and diminution of the value of the Premises not
taken.

13.4   In the event of a taking of less than substan-
tially all of the Premises or the Improvements, Lessor shall
be entitled to the entire award for the Premises and for
consequential damages to and diminution of the value of the
Premises not taken, and Lessee shall be entitled to the
Improvements Award only, to be administered as provided
hereinafter, it being expressly understood and agreed that in
consideration of the reduction of rent provided hereinbelow
in this Section 13.4, Lessee hereby irrevocably assigns to
Lessor any right which it may have to compensation for the
taking of any portion of the leasehold estate created herein.
In the event of a taking of less than substantially all of

31

the Premises, this Lease shall continue unaffected except
that:

    (a)  Basic Rent shall be reduced by an amount
which bears the same proportion to the net annual
Basic Rent in effect immediately prior to the
taking as the rental value of the part of the
Premises so taken shall bear to the rental value of
the whole of the Premises immediately prior to such
taking. If Lessor and Lessee cannot agree on the
amount of such new Basic Rent or the factual basis
thereof, the same shall be resolved by appraisal
pursuant to Article 24 and until so resolved,
Lessee shall continue to pay Basic Rent at the rate
in effect immediately prior to the taking and upon
resolution, shall receive adjustment for any
overpayment; and

    (b)  Lessee shall, promptly after such taking
and from the Improvements Award, if any, restore
the Improvements to a complete architectural unit
and furnish to Lessor a certificate (dated not less
than one hundred days subsequent to the completion
of such restoration) from a reputable title company
then doing business in the State of Delaware
setting forth that there are no liens or encum-
brances of record of any kind on the Premises by
reason of any materials supplied or services
rendered in connection with such restoration.

13.5  In the event of the taking of an easement or any
other taking which shall be of an interest or estate in the
Premises less than a fee simple (other than a taking for
temporary use mentioned in Section 13.6), as a result of
which the Premises, in the reasonable judgment of Lessee
shall be insufficient for the economic and feasible operation
thereof by Lessee, this Lease shall terminate and expire with
the same force and effect as in the case of a taking de-
scribed in Section 13.2. Otherwise, such taking shall be
deemed a taking insufficient to terminate this Lease, and the

32

division of the award shall be governed by Section 13.4 insofar as that Section shall be applicable.

13.6  In the event of a taking of all or a part of the Premises for temporary use, this Lease shall continue without change as between Lessor and Lessee, and Lessee shall be entitled to the entire award made for such use provided that such award shall be apportioned between Lessor and Lessee as of the date of the expiration or termination of the then current term, in the event such taking extends beyond said expiration or termination.

13.7  In the event of any taking mentioned in Sections 13.2 through 13.5 (inclusive), except in the event that at or before the time of payment (a) the court (or commissioners or other body authorized to make the award), by order, judgment or decree becoming final and conclusive within the meaning of Section 26.3, shall specifically attribute a portion of the total award to the Leasehold Award and/or the Improvements Award, or (b) Lessor, Lessee and any Beneficiaries (as hereinafter defined), by written instrument executed by all, shall otherwise agree, the entire award, whether in respect of the Premises, the Improvements, interest therein or use thereof, shall be paid to a trustee to be appointed in the manner provided in Article 26 hereof and shall be administered by such trustee, and shall be distributed by such trustee, in the manner set forth in such Article 26.

13.8  Nothing contained in this Article 13 shall be construed as, or have the effect of, preventing Lessee from

33

assigning to any Beneficiary any right which it may have to receive any award or portion thereof otherwise payable to Lessee under the provisions of this Article 13 and Article 26 provided that no such assignment shall operate or be effective to increase the amount of, or accelerate the time within which, such award or portion thereof shall be payable to Lessee pursuant to such Articles.

14. <u>Lessee's Right of First Refusal</u>

14.1 If at any time, or from time to time, during the Term or any Extension Term, including if Lessee has previously refused an offer from Lessor to sell the Premises, Lessor shall receive and be willing to accept a bona fide offer from a third party to purchase Lessor's interest in the Premises for cash or its equivalent, other than a bid or offer to purchase such interest at any sale incidental to the exercise of any remedy provided for in any mortgage of Lessor's interest in the Premises, Lessor shall promptly transmit to Lessee a written offer to sell such interest to Lessee upon the same terms and conditions as are set forth in the third-party offer together with a true copy of the same. If no Event of Default hereunder shall have occurred and be continuing, Lessee's receipt of such offer shall operate to give Lessee forty-five (45) days within which to accept such offer. If Lessee shall accept such offer by written notice to Lessor within such time, the offer and acceptance shall constitute a contract between them for the sale by Lessor and the purchase by Lessee of Lessor's interest in the Premises.

34