On the date of such purchase Lessor shall convey and assign
to Lessee, or any designee of Lessee, Lessor's interest in
the Premises against payment of the sale price therefor.  If
Lessee shall fail to accept such offer, then Lessor shall be
free to sell the Premises pursuant to such third-party offer
but only on the terms contained in such offer as presented to
Lessee.

14.2  If at any time, or from time to time, during the
Term or any Extension Term, including if Lessee has
previously refused an offer from Lessor to sell the Premises,
Lessor shall receive and be willing to accept a bona fide
offer from a third party to acquire Lessor's interest in the
Premises by way of an exchange of properties qualifying for
complete or partial nonrecognition of gain under section 1031
of the Internal Revenue Code of 1986, as amended, or
analogous provision of any successor law, Lessor shall
promptly transmit to Lessee notice of such offer together
with a true copy of the same.  If no Event of Default
hereunder shall have occurred and be continuing, Lessee's
receipt of such notice shall operate to give Lessee one
hundred twenty (120) days during which to (a) acquire the
interest of such third party in the property proposed for
exchange for Lessor's interest in the Premises so as to
render possible an exchange by and between Lessor and Lessee
in which Lessor would acquire from Lessee the interest of
such third party and Lessee would acquire from Lessor
Lessor's interest in the Premises, or (b) make a legally-

35

binding written offer to acquire from Lessor Lessor's interest in the Premises for cash, or its equivalent, in an amount not less than the amount which, after payment by Lessor of federal and state income taxes occasioned by a cash sale of the Premises for such amount, will yield to Lessor after-tax proceeds equal to the fair market value of the property (including any cash or other property not qualifying for nonrecognition of gain) proposed for exchange for Lessor's interest in the Premises (as determined by mutual agreement between Lessor and Lessee or, in default thereof, as established by appraisal pursuant to Article 24) minus the amount of any federal and state income taxes which would be payable by Lessor by reason of Lessor's acceptance of such third party's offer and settlement under the resulting agreement. If within such one hundred twenty (120) day period Lessee acquires the property proposed for exchange for Lessor's interest in the Premises, Lessor shall convey its interest in the Premises to Lessee in exchange for such property (plus any cash or other property) pursuant to and in accordance with the terms and conditions set forth in such third party's offer. If within such one hundred twenty (120) day period Lessee fails to acquire the property proposed for exchange for Lessor's interest in the Premises, but makes the legally-binding written offer contemplated in subsection (b) hereof, Lessor shall be precluded from accepting the third party's offer and shall be privileged to accept, or to decline to accept, Lessee's offer within the thirty (30) day

36

period immediately following Lessor's receipt of the same.
If within such one hundred twenty (120) day period Lessee
fails to acquire the property proposed for exchange for
Lessor's interest in the Premises and fails to make the offer
contemplated in subsection (b) hereof, Lessor shall be free
to exchange its interest in the Premises pursuant to the
third party's offer but only on the terms contained in such
offer as presented to Lessee.

14.3 Notwithstanding anything to the contrary in this
Article contained, at all times during the Term and any
Extension Terms, Lessor shall be privileged to deliver to
Lessee Lessor's legally-binding written offer to sell its
interest in the Premises, for cash or its equivalent, on such
terms and conditions as Lessor, in its sole discretion, shall
deem appropriate. If no Event of Default hereunder shall
have occurred and be continuing, Lessee's receipt of such
offer shall operate to give Lessee forty-five (45) days
within which to accept such offer. If Lessee shall accept
such offer by written notice to Lessor within such time, the
offer and acceptance shall constitute a contract between them
for the sale by Lessor and the purchase by Lessee of Lessor's
interest in the Premises. On the date of such purchase,
Lessor shall convey and assign to Lessee, or any designee of
Lessee, Lessor's interest in the Premises against payment of
the sale price therefor. If upon expiration of such 45 day
period Lessee shall have failed to accept Lessor's offer, for
a period of six (6) months from and after the conclusion of

37

such 45 day period Lessor shall be free to dispose of its interest in the Premises upon terms and conditions no less favorable to it than those set forth in its offer as delivered to Lessee. If at the conclusion of such six (6) month period Lessor shall not have disposed of its interest in the Premises, the transfer of Lessor's interest in the Premises once again shall become subject to the provisions of this Article 14.

14A. Lessor's Right of First Refusal

14A.1  If at any time, or from time to time, during the Term or any Extension Term, including if Lessor has previously refused an offer from Lessee to sell Lessee's interest in the Premises, Lessee shall receive and be willing to accept a bona fide offer from a third party to purchase Lessee's interest in the Premises for cash or its equivalent, other than a bid or offer to purchase such interest at any sale incidental to the exercise of any remedy provided for in any mortgage of the leasehold estate created herein, Lessee shall promptly transmit to Lessor a written offer to sell such interest to Lessor upon the same terms and conditions as are set forth in the third-party offer together with a true copy of the same. If no event of default hereunder shall have occurred and be continuing, Lessor's receipt of such offer shall operate to give Lessor forty-five (45) days within which to accept such offer. If Lessor shall accept such offer by written notice to Lessee within such time, the offer and acceptance shall constitute a contract between them

38

for the sale by Lessee and the purchase by Lessor of Lessee's interest in the Premises. On the date of such purchase Lessee shall convey and assign to Lessor, or any designee of Lessor, Lessee's interest in the Premises against payment of the sale price therefor. If Lessor shall fail to accept such offer, then Lessee shall be free to sell the Premises pursuant to such third-party offer but only on the terms contained in such offer as presented to Lessor.

14A.2   If at any time, or from time to time, during the Term or any Extension Term, including if Lessor has previously refused an offer from Lessee to sell the Premises, Lessee shall receive and be willing to accept a bona fide offer from a third party to acquire Lessee's interest in the Premises by way of an exchange of properties qualifying for complete or partial nonrecognition of gain under section 1031 of the Internal Revenue Code of 1986, as amended, or analogous provision of any successor law, Lessee shall promptly transmit to Lessor notice of such offer together with a true copy of the same. If no event of default hereunder shall have occurred and be continuing, Lessor's receipt of such notice shall operate to give Lessor one hundred twenty (120) days during which to (a) acquire the interest of such third party in the property proposed for exchange for Lessee's interest in the Premises so as to render possible an exchange by and between Lessee and Lessor in which Lessee would acquire from Lessor the interest of such third party and Lessor would acquire from Lessee

39

Lessee's interest in the Premises, or (b) make a legally-binding written offer to acquire from Lessee Lessee's interest in the Premises for cash, or its equivalent, in an amount not less than the amount which, after payment by Lessee of federal and state income taxes occasioned by a cash sale of the Premises for such amount, will yield to Lessee after-tax proceeds equal to the fair market value of the property (including any cash or other property not qualifying for nonrecognition of gain) proposed for exchange for Lessee's interest in the Premises (as determined by mutual agreement between Lessee and Lessor or, in default thereof, as established by appraisal pursuant to Article 24) minus the amount of any federal and state income taxes which would be payable by Lessee by reason of Lessee's acceptance of such third party's offer and settlement under the resulting agreement. If within such one hundred twenty (120) day period Lessor acquires the property proposed for exchange for Lessee's interest in the Premises, Lessee shall convey its interest in the Premises to Lessor in exchange for such property (plus any cash or other property) pursuant to and in accordance with the terms and conditions set forth in such third party's offer. If within such one hundred twenty (120) day period Lessor fails to acquire the property proposed for exchange for Lessee's interest in the Premises, but makes the legally-binding written offer contemplated in subsection (b) hereof, Lessee shall be precluded from accepting the third party's offer and shall be privileged to accept, or to

40

decline to accept, Lessor's offer within the thirty (30) day period immediately following Lessee's receipt of the same. If within such one hundred twenty (120) day period Lessor fails to acquire the property proposed for exchange for Lessee's interest in the Premises and fails to make the offer contemplated in subsection (b) hereof, Lessee shall be free to exchange its interest in the Premises pursuant to the third party's offer but only on the terms contained in such offer as presented to Lessor.

14A.3  Notwithstanding anything to the contrary in this Article contained, at all times during the Term and any Extension Terms, Lessee shall be privileged to deliver to Lessor Lessee's legally-binding written offer to sell its interest in the Premises, for cash or its equivalent, on such terms and conditions as Lessee, in its sole discretion, shall deem appropriate. If no event of default hereunder shall have occurred and be continuing, Lessor's receipt of such offer shall operate to give Lessor forty-five (45) days within which to accept such offer. If Lessor shall accept such offer by written notice to Lessee within such time, the offer and acceptance shall constitute a contract between them for the sale by Lessee and the purchase by Lessor of Lessee's interest in the Premises. On the date of such purchase, Lessee shall convey and assign to Lessor, or any designee of Lessor, Lessee's interest in the Premises against payment of the sale price therefor. If upon expiration of such 45 day period Lessor shall have failed to accept Lessee's offer, for

41

a period of six (6) months from and after the conclusion of
such 45 day period Lessee shall be free to dispose of its
interest in the Premises upon terms and conditions no less
favorable to it than those set forth in its offer as
delivered to Lessor. If at the conclusion of such six (6)
month period Lessee shall not have disposed of its interest
in the Premises, the transfer of Lessee's interest in the
Premises once again shall become subject to the provisions of
this Article 14.

15. Lessor's Right to Perform Lessee's Covenants

15.1  Lessee covenants and agrees that upon the
occurrence of any Event of Default Lessor may elect, but
shall not be obligated to elect, without waiving or releasing
Lessee from any obligation of Lessee in this Lease contained,
to make any payment and/or to perform any act the failure of
which gave rise to the Event of Default, in such manner and
to such extent as in Lessor's judgment shall be necessary,
and, in so doing, to pay necessary and incidental costs and
expenses, employ counsel and incur and pay reasonable
attorneys' fees. All sums so paid by Lessor and all neces-
sary and incidental costs and expenses in connection with the
performance of any such act by Lessor, together with interest
thereon at the rate of interest described in Section 3.3 from
the date of the making of such expenditure by Lessor, shall
be deemed Additional Rent hereunder and, except as otherwise
in this Lease expressly provided, shall be payable to Lessor
as Additional Rent on the next date upon which rent falls due

42

occurring after Lessor has given Lessee written notice of the
amount thereof. Lessee covenants to pay any such sum or sums
with interest as aforesaid and agrees that Lessor shall have
the same rights and remedies in the event of the nonpayment
thereof by Lessee as in the case of default by Lessee in the
payment of Basic Rent.

16.  Rights of Mortgagee, Beneficiary and Trustee

16.1  If Lessee shall be in default in the observance or
performance of any covenant in this Lease, Lessor shall send
written notice of such default to any (i) mortgagee under a
mortgage of Lessee's interest hereunder or (ii) beneficiary
or trustee under a deed of trust, in either case pursuant to
a mortgage or deed of trust granted by Lessee (herein such
mortgagee, beneficiary or trustee is referred to as
"Beneficiary") at their addresses as set forth in the
mortgage or deed of trust (herein "mortgage") or as the
Beneficiary may request in a writing delivered to Lessor.
The Beneficiary shall have thirty (30) days after delivery of
such written notice from Lessor within which to cure or
remove such default, provided that if such default cannot be
cured by the payment of money and, by reason of its charac-
ter, cannot with diligence be cured within such thirty (30)
day period, if Beneficiary shall commence promptly to cure
such default and thereafter shall prosecute the curing
thereof with diligence, such thirty day period automatically
shall be extended until the first to occur of the expiration
of such period as is necessary to complete the curing thereof

43

with diligence or the date on which Beneficiary shall cease
to prosecute such cure with diligence, it being understood
and agreed that in the event that the prosecution of such
cure by Beneficiary shall require prosecution of legal
proceedings (whether by way of obtaining relief from any stay
or injunction entered in any insolvency proceeding concerning
Lessee, the commencement and prosecution of foreclosure,
receivership proceedings or similar proceedings or
otherwise), the diligent prosecution by Beneficiary of such
proceedings shall be deemed the diligent prosecution of such
cure to the end that the time allowed herein for cure shall
include such time as is necessary to diligently prosecute any
such proceedings to conclusion. Not less than ten (10) days
prior to any contemplated termination of this Lease, Lessor
shall give Beneficiary written notice of its intention to
terminate this Lease, provided that the giving of such notice
shall neither extend nor diminish the time within which any
default is required to be cured pursuant to this Section
16.1.   Notwithstanding any other provision of this Lease,
Lessor shall not have any right pursuant to this Lease or
otherwise to terminate this Lease due to any default unless
Lessor shall have first given written notice thereof to
Beneficiary, and unless Beneficiary shall have failed to cure
or remove, or cause to be cured or removed, such default
within the time required by this Section 16.1.

16.2 Lessor will accept performance by the Beneficiary,
the sublessee under any sublease or either of them of any

44

covenant, agreement or obligation of Lessee contained in this
Lease with the same effect as though performed by Lessee.

16.3   Beneficiary agrees to notify Lessor of any default
under any mortgage or instrument evidencing indebtedness in
connection with any mortgage and further agrees that Lessor
shall have the right (without obligation), exercisable within
the same period available to Lessee, mortgagor under such
mortgage or obligor under such instrument of indebtedness, to
cure such default on behalf of such Lessee, mortgagor or
obligor.

16.4   If this Lease shall be terminated for any reason
by Lessor, or in the event of the rejection or disaffirmance
of this Lease pursuant to any bankruptcy law or other law
affecting creditors' rights, Lessor will enter into a new
lease of the Premises with the Beneficiary, or any party
designated by the Beneficiary, not less than ten (10) nor
more than thirty (30) days after the request of the
Beneficiary, for the remainder of the then current term of
this Lease, effective as of the date of such termination,
rejection or disaffirmance, upon all the terms and provisions
contained in this Lease provided that the Beneficiary makes a
written request to Lessor for such new lease within thirty
(30) days after the effective date of such termination,
rejection or disaffirmance, as the case may be, and such
written request is accompanied by a copy of such new lease,
duly executed and acknowledged by the Beneficiary or the
party designated by the Beneficiary to be the Lessee there-

45

under, and the Beneficiary cures all monetary defaults under
this Lease and pays to Lessor all Basic Rent and Additional
Rent which would at the time of such execution and delivery
be due and payable by Lessee under this Lease but for such
rejection, disaffirmance or termination. Any new lease made
pursuant to this Section 16.4 shall have the same priority
with respect to other interests in the Premises as this Lease
and shall be accompanied by a conveyance of Lessor's
interest, if any, to the Improvements (free of any mortgage
or other lien, charge or encumbrance created or suffered to
be created by Lessor) for a term of years equal in duration
to the term of the new lease but subject to the provisions of
Article 27, as such Article appears in such new lease. The
provisions of this Section 16.4 shall survive the termina-
tion, rejection or disaffirmance of this Lease and shall
continue in full effect thereafter to the same extent as if
this Section 16.4 were a separate and independent contract
made by Lessor, Lessee and the Beneficiary and, from the
effective date of such termination, rejection or disaffir-
mance of this Lease to the date of execution and delivery of
such new lease, the Beneficiary may use and enjoy the
leasehold estate created by this Lease without hindrance by
Lessor.

16.5   Except following a termination of this Lease,
Lessor shall have no rights in and to the rentals payable to
Lessee under any sublease of all or any part of the Premises

46

or the Improvements, which rentals may be assigned by Lessee
to the Beneficiary.

16.6   Neither the Beneficiary nor any other holder or
owner of the indebtedness secured by any mortgage shall be
liable upon the covenants, agreements or obligations of
Lessee contained in this Lease unless and until the Benefi-
ciary or such holder or owner becomes the lessee hereunder,
provided, however, that notwithstanding such non-liability,
Beneficiary or such holder or owner shall be entitled to
assert in defense of any termination or attempted termination
of this Lease by Lessor any matter of law or fact that could
be, but is not, asserted by Lessee.

17.   Conditional Limitations: Default Provisions

17.1 This Lease and the Term and any Extension Terms are
subject to the limitation that, if any time during Term or
any Extension Term Lessee shall:

(a)   fail to pay any Basic Rent and such
failure shall continue for twenty (20) days after
notice to Lessee of such failure;

(b) fail to pay any Additional Rent and such
failure shall continue for thirty (30) days after
notice to Lessee of such failure; or

(c)   fail to observe or perform any other
covenant, condition, term or provision hereof and
such failure shall continue for thirty (30) days
after notice to Lessee of such failure (provided
that in the case of any such default which cannot
be cured by the payment of money and which, by
reason of its character, cannot be cured with
diligence within such thirty (30) day period, if
Lessee shall commence promptly to cure the same and
thereafter prosecute the curing thereof with
diligence, such thirty (30) day period automat-
ically shall be extended until the first to occur
of the expiration of such period as is necessary to

47

complete the curing thereof with diligence or the
date on which Lessee, or any person entitled to act
on behalf of Lessee pursuant to the provisions
hereof, shall cease to prosecute such cure with
diligence, it being understood and agreed that in
the event that the prosecution of such cure by
Lessee shall require prosecution of legal
proceedings, the diligent prosecution by Lessee of
such proceedings shall be deemed the diligent
prosecution of such cure to the end that the time
allowed herein for cure shall include such time as
is necessary to diligently prosecute any such
proceedings to conclusion)

then upon the happening of any one or more of the aforemen-

tioned events of default (each being an "Event of Default"),

and at any time thereafter while such Event of Default shall

continue, Lessor shall have the right to give Lessee notice

of Lessor's termination of this Lease.  Upon the giving of

such notice, except only as otherwise provided in Article 16,

the term of this Lease and the estate hereby granted shall

expire and terminate on such date as fully and completely and

with the same effect as if such date were the date herein

fixed for the expiration of the term of this Lease, and all

rights of Lessee hereunder shall expire and terminate, but

Lessee shall remain liable as hereinafter provided.

17.2  Except as otherwise provided in Article 16,

Lessee, on behalf of itself and all those now or hereafter

claiming under or through it, hereby waives and surrenders:

(a)  any right and privilege which it or any
of them may have to redeem the Premises or the
Improvements or to have a continuance of this Lease
after termination of Lessee's right of occupancy by
order or judgment of any court or by any legal pro-
cess or writ, or under the terms of this Lease, or
after the termination of the term of this Lease;
and

48

(b) the benefits of any presently existing or hereafter enacted law which exempts property from liability for debt or distress for rent.

17.3  In case of any termination, re-entry, or dispossession by summary proceedings or otherwise (including termination by surrender of the Premises by Lessee), all Basic Rent and Additional Rent, if not theretofore due and payable, shall thereupon become immediately due and payable up to the time of (but not for periods of time subsequent to) such termination, re-entry or dispossession, and Lessee shall also pay to Lessor all reasonable and necessary expenses which Lessor may then or thereafter incur in connection with such termination, re-entry or dispossession, including reasonable attorneys' fees.

17.4  The right of Lessor to recover from Lessee the amounts hereinabove provided for shall survive the issuance of any order for possession or other cancellation or termination hereof, and Lessee hereby expressly waives any defense that might be predicated upon the issuance of such order for possession or other cancellation or termination hereof.

18.  Cumulative Remedies, Waiver, Oral Change

18.1  The specified remedies to which Lessor may resort under the terms of this Lease are cumulative and are not intended to be exclusive of any other remedies or means of redress to which Lessor may be lawfully entitled in case of any breach or threatened breach by Lessee of any provision of this Lease, and no right or remedy hereunder shall be exclusive of any other right or remedy hereunder.

49

18.2   The failure of Lessor to insist in any one or more
cases upon the strict performance of any of the terms,
covenants, conditions, provisions or agreements of this Lease
or to exercise any right, privilege, option or remedy herein
contained shall not be construed as a waiver or a relinquish-
ment for the future of any such term, covenant, condition,
provision, agreement, right, privilege, option or remedy.  A
receipt and acceptance by Lessor of Basic Rent or Additional
Rent, or the acceptance of performance of anything required
by this Lease to be performed, with knowledge of the breach
of any term, covenant, condition, provision or agreement of
this Lease, shall not be deemed a waiver of such breach, nor
shall any such acceptance of Basic Rent or Additional Rent in
a lesser amount than is herein provided for (regardless of
any endorsement on any check, or any statement in any letter
accompanying any payment of rent) operate or be construed
either as an accord and satisfaction or in any manner other
than as payment on account of the earliest Basic Rent and/or
Additional Rent then unpaid by Lessee.  No waiver by Lessor
of any term, covenant, condition, provision or agreement of
this Lease shall be deemed to have been made unless expressed
in writing and signed by Lessor.

18.3   In addition to the other remedies in this Lease
provided, Lessor shall be entitled to the restraint by
injunction of any violation or threatened violation of any of
the terms, covenants, conditions, provisions or agreements of
this Lease.

50

18.4   This Lease shall not be affected by any laws,
ordinances or regulations, whether federal, state, county,
city, municipal or otherwise, which may be enacted or become
effective from and after the date of this Lease affecting or
regulating or attempting to affect or regulate the rents
herein reserved or continuing in occupancy by Lessee or any
sublessees or assignees of Lessee's interest in the Premises
beyond the dates of termination of their respective leases,
or otherwise.

18.5   This Lease may not be changed orally, but only by
agreement in writing executed (with the same formality as
this Lease) by the party against whom the change, modifica-
tion or discharge is sought to be enforced.

19.   Quiet Enjoyment

19.1   Lessor covenants that so long as no Event of
Default has occurred and is continuing, Lessee shall and may
peaceably and quietly have, hold and enjoy the Premises for
the Term and any Extension Terms free of interference from
Lessor or those claiming through or under Lessor.  This
covenant shall be construed as running with the land to and
against subsequent owners and successors in interest, and is
not, nor shall it operate or be construed as, a personal
covenant of Lessor, except to the extent of Lessor's interest
in the Premises and only so long as such interest shall
continue, and thereafter this covenant shall be binding only
upon such subsequent owners and successors in interest, to
the extent of their respective interests, as and when they

51

shall acquire the same, and only so long as they shall retain
such interest.

20.   Assignment, Mortgage, Subletting

20.1   Lessee shall have the right to mortgage, assign,
pledge or otherwise encumber its interest hereunder provided,
subject to the provisions of Article 16, that any such
mortgage, assignment, pledge or other encumbrance shall be
subordinate to Lessor's interest in the Premises and no such
mortgage, assignment, pledge or other encumbrance shall
modify or limit any right or power of Lessor hereunder or
affect or reduce any obligation of Lessee hereunder.   Subject
to the foregoing, Lessee also shall have the right from time
to time to renew, modify, refinance, consolidate, replace or
extend any one or more of such mortgages, assignments,
pledges or other encumbrances.   Lessor agrees to execute in
favor of any person or entity providing secured inventory or
other similar financing to Lessee an agreement subordinating
to the lien of such financing any statutory lien attaching to
Lessee's tangible personal property located on the Premises
which now or hereafter may accrue in favor of Lessor.

20.2   Lessee shall have the right to sublet the
Premises, the Improvements or any portion thereof, provided
that each and every such sublease shall be and shall have
been made expressly subject to the provisions hereof, and
that no such sublease shall modify or limit any right or
power of Lessor hereunder or affect or reduce any obligation
of Lessee hereunder, it being the intention of the parties

52

that in the case of any such sublease, all obligations of
Lessee shall continue in full force and effect as the obli-
gations of a principal and not of a guarantor or surety.

20.3  Lessee shall have the right to assign its interest
hereunder provided that no assignment shall be effective
until there shall have been delivered to Lessor an
undertaking, in recordable form, executed by the proposed
assignee, wherein such assignee assumes the due performance
of all obligations on Lessee's part to be performed under
this Lease and provided further that Lessee (and any assignee
of Lessee subsequently assigning its interest hereunder)
shall remain liable as a principal and not as a guarantor or
surety for the performance and observance of each and every
obligation and covenant imposed on Lessee hereunder, as fully
as if no assignment had been made.  Subject to the foregoing,
and upon delivery to Lessor of the undertaking of the
assignee to assume the obligations of this Lease as
aforesaid, Lessor shall acknowledge and recognize the
assignee as the transferee of Lessee's rights under this
Lease.

20.4  Lessor shall have the right to mortgage, assign,
pledge or otherwise encumber its interest hereunder and also
shall have the right from time to time to renew, modify,
refinance, consolidate, replace or extend any one or more of
such mortgages, assignments, pledges or other encumbrances
subject, however, to the following:

53

(a) all rights acquired under any such mortgage, assignment, pledge or other encumbrance shall be subject and subordinate to the rights and interests of Lessee hereunder; and

(b) the holder of any such mortgage, assignment, pledge or other encumbrance shall not, in the exercise of any right or rights arising thereunder, disturb or deprive Lessee in or of its possession of the Premises, or in or of its enjoyment of any right or privilege accruing to it hereunder.

20.5 Any purported or attempted mortgage, sublease or assignment of this Lease, or of any interest herein or interest arising hereunder made or attempted to be made other than in accordance with or without full compliance with the provisions of this Article shall be void.

20.6 In the event of any sale or assignment of Lessor's interest in the Premises and Lessor's written notice thereof to Lessee, Lessee shall attorn to the purchaser and recognize such purchaser as Lessor under this Lease. In the event of any mortgage, assignment, pledge or sublease of Lessee's interest in the Premises or the Improvements, Lessee, within thirty (30) days after execution thereof, shall deliver a conformed copy thereof to Lessor.

21. Permitted Contests

21.1 Lessee shall not be required, nor shall Lessor have the right, to pay, discharge or remove any tax, assessment, levy, fee, rent, charge, lien or encumbrance, or to comply with any law, ordinance, order, rule, regulation or other requirement applicable to the Premises, the Improvements or the use thereof, as long as Lessee, at its own cost and expense, shall diligently and in good faith contest the

54

existence, amount or validity thereof by appropriate
proceedings which shall prevent the collection of or other
realization upon the tax, assessment, levy, fee, rent,
charge, lien or encumbrance so contested, and which also
shall prevent the sale, forfeiture or loss of the Premises,
the Improvements or any Basic Rent or Additional Rent and
which shall not affect the payment of any Basic Rent or
Additional Rent; provided that such contest shall not subject
Lessor to the risk of any civil or criminal liability.
Exercise or continued exercise of the rights conferred upon
Lessee in this Article 21 shall be conditioned on Lessee's
giving such reasonable security as may be demanded by Lessor
to insure ultimate payment of such tax, assessment, levy,
fee, rent, charge, lien, or encumbrance and compliance with
law, ordinance, order, rule, regulation or other requirement
and to prevent any sale or forfeiture of the Premises, the
Improvements, any Basic Rent or Additional Rent by reason of
such nonpayment or noncompliance. Through exercise of the
rights conferred upon Lessee in this Article 21, Lessee
undertakes to indemnify and to save harmless Lessor from and
against any and all liabilities, costs, fees and expenses
which may arise out of or in connection with any contest
permitted herein and/or Lessee's failure to promptly pay and
discharge any item as to which such contest relates.

21.2   Lessor shall have the right, but shall be under no
obligation, to engage and participate (either alone or with
Lessee) in the contests permitted in this Article 21 provided

55

that such engagement or participation shall be at its sole
cost and expense.

22. Estoppel Certificates

22.1 Lessor and Lessee agree at any time and from time
to time, upon not less than twenty (20) days' prior request
by either, to execute, acknowledge and deliver to the party
requesting the same a statement in writing in recordable
form, certifying that this Lease is unmodified and is in full
force and effect (or if there have been modifications, that
this Lease is in full effect as modified, and setting forth
such modifications), the dates to which Basic Rent and Addi-
tional Rent have been paid in advance, if any, and whether or
not to the knowledge of the signer of such statement the
party requesting the same is in default in keeping, observing
or performing any term, covenant, agreement, provision,
condition or limitation contained in this Lease (and, if such
party shall be in default, specifying each such default of
which the signer may have knowledge), it being intended that
any such statement delivered pursuant to this Article may be
relied upon by any prospective purchaser or prospective
mortgagee of the Premises or of Lessee's interest under this
Lease, or any assignee of any mortgagee.

23. Notices, Demands and Other Instruments

23.1 All notices, offers, consents, demands and other
communications required or permitted pursuant to this Lease
shall be in writing and shall be validly given when hand
delivered or mailed by prepaid registered or certified mail,

(a)  if to Lessor, addressed to:

Woodlawn Trustees, Incorporated
2201 West 11th Street
Wilmington, Delaware  19805
Attention:  Executive Vice-President

and

(b)  if to Lessee, addressed to both of:

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia  23233
Attention:  Corporate Secretary

and

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia  23233
Attention:  Vice President of Real Estate

23.2  Copies of all communications shall be given to
Beneficiary.  Lessor and Lessee each may from time to time
specify, by giving fifteen (15) days' advance notice to the
other party, (i) any other address in the United States as
its address for purposes of this Lease and (ii) any other
person or entity that is to receive copies of communications
hereunder.

24.  Appraisals

24.1  If within the thirty day period immediately
following an event which calls for or gives rise to a right
of appraisal under this Lease, Lessor and Lessee are unable
to select an independent appraiser satisfactory to both,
Lessor and Lessee, before the expiration of the sixtieth day
following such event, shall each select an independent ap-
praiser.  The two appraisers so selected shall, in turn,

57

select a third independent appraiser, and each appraiser
independently shall appraise the property subject to
appraisal. The appraised value of the property subject to
appraisal shall be determined by computing the average of the
two values ascribed to such property which are most numeri-
cally approximate.

24.2 Unless otherwise specifically provided in the
provision hereof calling for or giving rise to a right of
appraisal, all appraisals, stipulations and agreements as to
the value of improvements, fixtures or equipment made pur-
suant or in connection with this Lease shall be made on the
basis of replacement cost with a reasonable allowance for
economic depreciation and shall be made without regard to the
adverse effect upon value which results or which might result
from ownership of the Premises being in Lessor instead of
Lessee, its successors or assigns.

24.3 Unless otherwise specifically provided in a
provision hereof calling for or giving rise to a right of
appraisal, all appraisals, stipulations and agreements as to
the value of land made pursuant to or in connection with the
Lease shall be made on the basis of its highest and best use
under then-current zoning and shall be made without regard to
the adverse effect upon value which results or which might
result from any taking or the existence of any leasehold
estate thereupon, including the leasehold estate created
herein.

58

24.4 All appraisers selected pursuant to the provisions of this Article shall be members in good standing of the American Institute of Real Estate Appraisal, shall be experienced in the appraisal of properties similar to the Premises as the same may hereafter be improved, and shall have maintained a principal place of business within a 100-mile radius of the Premises for the five-year period immediately prior to their selection.

24.5 The fees, costs and expenses of all appraisals made pursuant to this Lease shall be borne equally by the parties.

25. No Merger

25.1 For so long as any mortgage (within the contemplation of Section 16.1) shall remain in effect, there shall be no merger of this Lease or of the leasehold estate created herein with the fee estate in the Premises because the same person acquires or holds, directly or indirectly, this Lease or the leasehold estate hereby created or any interest herein or in such leasehold estate as well as the fee estate in the Premises or any interest in such fee estate.

25.2 Nothing contained in Section 25.1 shall be construed as or be effective to prevent the extinguishment of the leasehold estate created herein or any interests created in or upon such leasehold estate by reason of the exercise, by Lessor, of its remedy of termination.

59

26. Trustee

26.1 In the event that all or any part of the Premises
or the Improvements shall be taken within the meaning of
Article 13 and pursuant to Section 13.7 the award or awards
made in respect of such taking shall be required to be paid
to a trustee, Lessor, Lessee, and any Beneficiaries (as
hereinabove defined) agree promptly to select a trustee in
accordance with the provisions of this Article and to
deliver, or cause to be delivered over to such trustee, such
award or awards.

26.2 The trustee shall be selected from among lending
institutions qualified to do business within the State of
Delaware (exclusive of any such institutions holding any
mortgage, assignment, pledge or other security interest in
the Premises, the Improvements, or the leasehold estate
created hereunder, or any portion thereof) by mutual agree-
ment of Lessor, Lessee and any Beneficiaries. In the event
Lessor, Lessee and any Beneficiaries are unable to agree upon
the selection of the trustee, each shall select a nominee for
such position and the nominees shall, in turn, by majority
vote, select the trustee from among their number.

26.3 The trustee shall collect the award or awards the
administration of and for which it is responsible and shall
invest same in direct obligations of the United States of
America having maturities of less than twelve (12) months.
Thereafter, the responsibilities of the trustee shall be
strictly limited to distributing such award(s) together with

60

interest thereon, pursuant to the express, unanimous written
direction of Lessor, Lessee and any Beneficiaries or, in the
absence of such express, unanimous, written direction,
pursuant to the Order of any Court of competent jurisdiction
becoming final and conclusive, whether after review or
subsequent appeal therefrom, or the passage of such time as
all parties in interest thereunder may have within which to
file a petition for review, notice of appeal or application
for writ of certiorari, as may be appropriate under the
circumstances.

26.4   Lessor and Lessee, on behalf of itself and all
Beneficiaries, agree that the trustee shall have no responsi-
bility to ensure that the distributions contemplated in
Section 26.3 hereof are effected in accordance with the
provisions of this Lease other than those set forth in
Section 26.3.   Exclusive responsibility for, and liabilities
in respect of, such distributions, as well as the failure to
join in written directions necessary to effect such distri-
butions, shall reside in and exist between Lessor, Lessee and
any Beneficiaries.

26.5   Nothing contained in this Article 26 shall be
construed as, or have the effect of, preventing Lessee from
assigning or delegating to any Beneficiary Lessee's right to
participate in the selection of a trustee or Lessee's right
to join in written directions to such trustee pursuant to the
provisions of this Article.

61

27.  Surrender

27.1  Upon expiration or earlier termination of this
Lease, Lessee shall peaceably leave and surrender the
Premises, including any and all easements, licenses and
reversionary or other rights theretofore acquired by Lessee
over or in connection with any property adjacent to the
Premises, in the same condition in which the Premises were
originally received from Lessor at the commencement of the
Term of this Lease, except as improved, repaired, rebuilt,
altered or added to as provided in, permitted or required by
any provision of this Lease. If no Event of Default has
occurred and is then continuing, Lessee shall have the right
to remove from the Premises on or before such expiration or
earlier termination all property situated thereon which is
not owned by Lessor and which does not service land or
improvements beyond the Premises, including the Improvements
or, at its election, to allow such property to remain on the
Premises.   In the event Lessee removes its property as
provided herein, Lessee, at its expense, shall repair any
damage to the Premises resulting from any such removal.
Property not removed by Lessee as provided herein shall, at
the time of such expiration or earlier termination, be and
become the sole property of Lessor.

28.  Separability; Binding Effect

28.1  Each and every provision of this Lease shall
separate and be independent, and the breach of any provision
by a party shall not discharge or relieve the non-breaching

62

party from its obligation to observe or perform any provision
or covenant hereof. If any provision hereof or the appli-
cation thereof to any person or circumstance shall to any
extent be invalid or unenforceable, the remaining provisions
hereof, or the application of such provision to persons or
circumstances other than those as to which it is invalid or
unenforceable, shall not be affected thereby, and each
provision hereof shall be valid and shall be enforceable to
the extent permitted by law. All provisions contained in
this Lease shall be binding upon, inure to the benefit of,
and be enforceable by, the respective successors and assigns
of Lessor and Lessee to the same extent as if each successor
and assign were named as a party hereto.

29.   Recording

29.1   This Lease, as the same may be modified or amended
from time to time, or, on mutual agreement of Lessor and
Lessee, a duly executed memorandum hereof, shall be recorded
at the Office of the Recorder of Deeds in and for New Castle
County, Delaware.

30.   Captions and Table of Contents

30.1   The table of contents and captions to the various
Articles of this Lease have been inserted for ease of
reference only and shall not to any extent be considered in
the interpretation or construction hereof.

31.   Entire Agreement; Relationship of Parties

31.1   Except only as provided in other written instru-
ments executed by Lessor and Lessee simultaneously herewith

63

or after the date hereof, this Lease sets forth all of the promises, covenants, conditions and understandings between Lessor and Lessee with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, whether oral or written, with respect to such subject matter.

31.2   Nothing in this Lease nor the fact that there are or hereafter may be other agreements between Lessor and Lessee shall be deemed to create or to have created any relationship of partners, joint venturers or other relationship except as expressly set forth in this Lease or in such other agreements, if any.

32.   Governing Law

32.1 In all respects, this Lease shall be construed and interpreted in accordance with Delaware law.

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND,
WOODLAWN TRUSTEES, INCORPORATED and CIRCUIT CITY STORES, INC.
have caused this Lease to be executed, sealed and delivered
by their duly authorized representatives, as of the day and
year first set forth above.

SIGNED, SEALED AND
DELIVERED IN THE
PRESENCE OF:

LESSOR:

WOODLAWN TRUSTEES, INCORPORATED

By: _____
Newlin E. Wood, Jr.
Executive Vice-President

[Corporate Seal]

Attest:

_____
Elke E. McGinley, Lynn W. Williams
Assistant Secretary

LESSEE:

SIGNED, SEALED AND
DELIVERED IN THE
PRESENCE OF:

CIRCUIT CITY STORES, INC.

By: _____
name: _____
title: _____

[Corporate Seal]

Attest:

_____
Secretary

65

STATE OF DELAWARE      )
                       )  SS.
NEW CASTLE COUNTY      )

BE IT REMEMBERED that on this $20^k$ day of $October$, in
the year of our LORD, one thousand nine hundred and ninety-
four three, personally came before me, the Subscriber, a Notary
Public in and for the State and County aforesaid, Newlin E.
Wood, Jr., Executive Vice-President of WOODLAWN TRUSTEES,
INCORPORATED, a Delaware corporation, party to this Instru-
ment, known to me personally to be such, and acknowledged
this Instrument to be the Act and Deed of said corporation,
that the signature of the Executive Vice-President thereto is
in his own proper handwriting and the seal affixed is the
common and corporate seal of said corporation, and that his
act of sealing, executing, acknowledging and delivering this
Instrument was duly authorized by a resolution of the Board
of Directors of said corporation.

GIVEN under my Hand and Seal of Office, the day and
year aforesaid.

JOHN M. BLOXOM, IV, ESQUIRE
NOTARIAL OFFICER PURSUANT TO
29 DEL. CODE SECT. 4323
ATTORNEY AT LAW
DELAWARE

Notary Public
Name:_____

My Commission Expires:_____

State of Virginia      )
Henrico County         )  SS.
                       )

BE IT REMEMBERED that on this 14th day of $October$, in
the year of our LORD, one thousand nine hundred and ninety-
three, personally came before me, the Subscriber, a Notary
Public in and for the State and County aforesaid,
Benjamin B. Cummings Vice President of CIRCUIT CITY STORES, INC.,
a Virginia corporation, party to this Instrument, known
to me personally to be such, and acknowledged this Instrument
to be the Act and Deed of said corporation, that the
signature of the Vice President thereto is in his own
proper handwriting and the seal affixed is the common and
corporate seal of said corporation, and that his act of
sealing, executing, acknowledging and delivering this
Instrument was duly authorized by a resolution of the Board
of Directors of said corporation.

66

GIVEN under my Hand and Seal of Office, the day and year aforesaid.

Notary Public
Name: Lori L. Headley

My Commission Expires:_____

My Commission Expires November 30, 1997

67

## EXHIBIT "A"

### LEGAL DESCRIPTION

ALL that certain lot, piece or parcel of land situate in Brandywine Hundred, New Castle County and State of Delaware, more particularly bounded and described in accordance with a Record Major Land Development Plan for Circuit City Stores, Inc. prepared by Landmark Engineering dated April 27, 1994, as revised, as follows, to-wit:

BEGINNING at a point in the northwesterly side of Concord Turnpike (U.S. Route 202 - Southbound), said point of Beginning being a common corner for lands herein described and lands now or formerly of Thomas C. Marshall, Inc. and being the following two (2) courses and distances from the southeasterly end of a 30.00 feet radius curve connecting the southerly side of Passmore Road, at 46.00 feet wide, with the northwesterly side of said Concord Turnpike, at varying widths: (1) South 14° 48' 13" West, 179.38 feet to a point on said Concord Pike; and thence, continuing along said Concord Turnpike, (2) South 12° 53' 41" West, 50.23 feet; thence from said point of Beginning and with the division line between lands herein described and lands now or formerly of Thomas C. Marshall, Inc., in part, and lands now or formerly of the Mayor and City Council of Wilmington, in part, North 76° 32' 39" West, 465.96 feet to a point; thence continuing by line of lands now or formerly of the Mayor and City Council of Wilmington, North 75° 12' 24" West, 27.51 feet to a point in line of lands now or formerly of the Jewish Federation of Delaware, Inc.; thence thereby the two following courses and distances: (1) North 13° 27' 24" East, 150.04 feet to a point; and (2) North 14° 57' 44" East, 109.62 feet to a point in the southerly line of a ten foot wide right of way dedicated to public use as shown on the aforesaid Plan; thence thereby, South 76° 32' 39" East, 464.31 feet to a point in the northwesterly side of the aforesaid Concord Turnpike; thence thereby along the arc of a curve to the right having a radius of 30.00 feet an arc distance of 47.83 feet (Chord bearing - South 30° 52' 13" East, 42.92 feet) to a point; thence continuing along the northwesterly side of the aforesaid Concord Turnpike, South 14° 48' 13" West, 179.38 feet to a point; thence thereby, South 12° 53' 41" West, 50.23 feet to the point and place of Beginning.

## FIRST AMENDMENT TO GROUND LEASE

That certain Ground Lease dated October 1, 1993 by and between Woodlawn Trustees, Incorporated ("Woodlawn") and Circuit City Stores, Inc. ("CCSI"), a copy of which is annexed hereto as Exhibit "A" (the "Lease"), is hereby amended in the following respect:

1. By striking the first sentence of paragraph 3.7 therefrom and substituting in lieu thereof the following, new first sentence to paragraph 3.7:

"3.7 As used herein, the phrase "CPI Index" shall mean the Consumer Price Index for "All Items, All Urban Consumers, Philadelphia Area," published by the U.S. Bureau of Labor Statistics, and the CPI Index published as of any given date shall be deemed to be the CPI Index most recently published as of such date."

In all other respects, the Lease is confirmed and ratified.

IN WITNESS WHEREOF, and intending to be legally bound, Woodlawn and CCSI have caused this Amendment to be executed, delivered and sealed by their duly authorized representatives as of the dates set forth beneath their respective names.

Attest:

WOODLAWN TRUSTEES, INCORPORATED

By: _____

_____
Elke E. McGinley,
Assistant Secretary

Newlin E. Wood, Jr..
Executive Vice-President

[CORPORATE SEAL]

Dated: _11/5/98 - effective 10/1/98_

Attest:

CIRCUIT CITY STORES, INC.

By: _____

_____
Name: _____
Title: _____

Name: ____BENJAMIN B. CUMMINGS, JR.____
Title: ____VICE PRESIDENT____

[CORPORATE SEAL]

Dated: _____