AGREEMENT OF LEASE

Between

502-12 86TH Street LLC,

Landlord,

and

CIRCUIT CITY STORES, INC.,

Tenant.

Premises:

Portions of the basement, ground floor, second floor and third floor
502-512 86th Street
Brooklyn, New York

259774-8-W



# LEASE INFORMATION SUMMARY

I.   **LEASE DATE:**              August ~~July~~ 23, 2005

II.  **PARTIES AND ADDRESSES:**

    A.   **Landlord:**              502-12 86th Street LLC

    B.   **Landlord's Address**
       **for Notices:**

c/o Century 21
22 Cortlandt Street
New York, New York 10007
Attn: Raymond Gindi

with a copy to:

Esanu Katsky Korins & Siger, LLP
605 Third Avenue
New York, New York 10158
Attn: Randolph Amengual, Esq.

    C.   **Tenant:**              Circuit City Stores, Inc.

    D.   **Tenant's Address**
       **for Notices:**

9950 Mayland Drive
Richmond, Virginia 23233

III. **PROPERTY INFORMATION:**

    A.   **Premises:**              Portions of the basement, ground floor, second floor and third floor of the Building, as shown on Exhibit 1 annexed hereto and made a part hereof.

    B.   **Building:**              502-512 86th Street, Brooklyn, New York

    C.   **Real Property:**              The real property on which the Building is located.

IV.  **TERM:**

    A.   **Term of Lease:**              Approximately fifteen (15) years and six (6) months

    B.   **Commencement Date:**              The date of full execution and delivery of this Lease by Landlord and Tenant.

    C.   **Expiration Date:**              The date immediately preceding fifteen (15) years after the Rent Commencement Date, provided that if such date is not the last day of the calendar month, then the Expiration Date shall be extended to the last day of the calendar month in which the Term expires.

| | | |
|---|---|---|
| D. | **Option to Renew:** | Two (2) options of five (5) years each, as set forth in Article 31. |

## V.   RENT:

**A.**   **Minimum Rent:**

(i) One Million Six Hundred Thousand and 00/100 ($1,600,000.00) Dollars per annum ($133,333.33 per month) for the period commencing on the Commencement Date and ending on the day immediately preceding the fifth (5th) anniversary of the Commencement Date; and

(ii) One Million Seven Hundred Sixty Thousand and 00/100 ($1,760,000.00) Dollars per annum ($146,666.66 per month) for the period commencing on the fifth (5th) anniversary of the Commencement Date and ending on the day immediately preceding the tenth (10th) anniversary of the Commencement Date; and

(iii) One Million Nine Hundred Thirty Six Thousand and 00/100 ($1,936,000.00) Dollars per annum ($161,333.33 per month) for the period commencing on the tenth (10th) anniversary of the Commencement Date and ending on the Expiration Date.

| | | |
|---|---|---|
| B. | **Rent Abatement Period:** | The period from the Commencement Date through the earlier to occur of (i) the date Tenant opens for business to the public, and (ii) March 1, 2006 (the earlier of which dates is sometimes referred to herein as the **"Rent Commencement Date"**). |
| C. | **Landlord's Address for Payment of Rent:** | c/o Century Realty Inc.<br>140 Fulton Street<br>New York, New York 10007 |
| D. | **Electricity:** | Direct meter. |
| E. | **Real Estate Taxes:** | Tenant pays Tenant's Proportionate Share of Real Estate Taxes. |
| F. | **Tenant's Proportionate Share:** | 87% |
| G. | **Security Deposit:** | $1,600,000.00 |

## VI.  PERMITTED USES:

The "Permitted Uses" shall initially mean the sales, service and warehousing as part of retail sales of consumer, business and automotive electronics products,

computers and related hardware and software, entertainment software, entertainment media, cellular telephones, household appliance and other related items (the "**Initial Permitted Use**"), and thereafter any lawful use not otherwise prohibited by this Lease.

## VII. BROKERS:

A.   **Landlord's Broker:**          RKF & Associates

B.   **Tenant's Broker:**            The Equity Group and Millennium Retail Partners


The summary of lease information set forth above and any addendum and/or exhibit(s) and/or schedule(s) ("**Riders**") attached to this Lease are incorporated into and made a part of the following Lease. Notwithstanding anything to the contrary contained in this Lease, Articles 1 through 32 shall control the rights and obligations of the parties hereto except that the provisions of any Riders shall supersede any inconsistent provisions in Articles 1 through 32, as the case may be.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | PREMISES; TERM; USE AND OCCUPANCY. | 1 |
| | A. Premises. | 1 |
| | B. Condition Of Premises. | 1 |
| | C. Permitted Uses. | 1 |
| | D. Certificate Of Occupancy | 2 |
| | E. Operation of Business. | 2 |
| | F. Exterior Signage. | 3 |
| | G. Storefront. | 4 |
| | H. Breach of Covenants. | 4 |
| 2. | RENT. | 4 |
| | A. Minimum Rent. | 5 |
| | B. Additional Rent | 5 |
| | C. Rent Tax | 5 |
| | D. Rent Abatement | 5 |
| 3. | REAL ESTATE TAXES | 5 |
| | A. Defined Terms. | 5 |
| | B. Escalation | 6 |
| | C. Payment of Taxes. | 6 |
| | D. Adjustments. | 6 |
| | E. Capital Improvements. | 7 |
| 4. | ALTERATIONS. | 7 |
| | A. Defined Terms. | 7 |
| | B. Alterations Within Premises. | 8 |
| | C. [Intentionally Omitted.] | 9 |
| | D. Required Submissions; Permits. | 9 |
| | E. Completion of Alterations. | 10 |
| | F. Liens. | 10 |
| | G. Miscellaneous Conditions. | 10 |
| | H. Removal of Alterations. | 11 |
| | I. Tenant's Initial Work. | 12 |
| 5. | REPAIRS; FLOOR LOAD. | 12 |
| 6. | REQUIREMENTS OF LAW. | 13 |
| 7. | SUBORDINATION. | 14 |
| | A. Subordination | 14 |
| | B. Attornment. | 14 |
| | C. Certificates. | 14 |
| | D. Subordination and Non-Disturbance Agreement. | 15 |

8.  RULES AND REGULATIONS ................................................................15

9.  INSURANCE.............................................................................15
    A.  Tenant's Insurance.............................................................15
    B.  Waiver of Subrogation.........................................................16
    C.  Landlord's Insurance..........................................................16
    D.  Increases in Insurance........................................................16
    E.  Tenant's Self-Insurance.......................................................17

10. DESTRUCTION OF THE PREMISES; PROPERTY LOSS OR DAMAGE..........................17
    A.  Repair of Damage..............................................................17
    B.  Termination Options...........................................................18
    C.  Provision Controlling.........................................................18
    D.  Property Loss or Damage ......................................................19

11. CONDEMNATION.......................................................................19
    A.  Condemnation..................................................................19
    B.  Award ........................................................................20

12. ASSIGNMENT AND SUBLETTING........................................................20
    A.  Permitted Without Consent ....................................................20
    B.  Notice of Proposed Transfer...................................................20
    C.  Landlord's Recapture Option ..................................................20
    D.  Effect of Termination by Landlord............................................20
    E.  Takeback by Landlord..........................................................20
    F.  Conditions for Subletting or Assignment ......................................21
    G.  Future Requests ..............................................................22
    H.  Sublease Provisions ..........................................................22
    I.  Recapture Payment.............................................................23
    J.  Assumption By Transferee; Liability of Tenant.................................23

13. ACCESS TO PREMISES ...............................................................24

14. LANDLORD'S LIABILITY .............................................................24

15. DEFAULT...........................................................................25
    A.  Events of Default.............................................................25
    B.  Effect of Bankruptcy..........................................................26
    C.  Conditional Limitation .......................................................28
    D.  Repeated Defaults.............................................................28

16. REMEDIES AND DAMAGES..............................................................28
    A.  Landlord's Remedies...........................................................28
    B.  Damages.......................................................................29
    C.  Legal Fees....................................................................30

17. FEES AND EXPENSES........................................................................................................30
    A.    Curing Tenant's Defaults.................................................................................30
    B.    Late Charges...................................................................................................31

18. NO REPRESENTATIONS BY LANDLORD ...................................................................31

19. END OF TERM. ...................................................................................................................31
    A.    Surrender of Premises......................................................................................31
    B.    Holdover by Tenant .........................................................................................32

20. QUIET ENJOYMENT..........................................................................................................32

21. [INTENTIONALLY OMITTED.].........................................................................................32

22. NO WAIVER.........................................................................................................................32

23. WAIVER OF TRIAL BY JURY ...........................................................................................32

24. INABILITY TO PERFORM .................................................................................................33

25. BILLS AND NOTICES .........................................................................................................33

26. SERVICES.............................................................................................................................33
    A.    Landlord's Obligation......................................................................................33
    B.    HVAC...............................................................................................................33
    C.    Cleaning...........................................................................................................34
    D.    Trash Removal.................................................................................................34
    E.    Sprinkler System .............................................................................................34
    F.    Water ...............................................................................................................34
    G.    Electricity Service. ..........................................................................................34
    H.    Plate Glass ......................................................................................................35
    I.    Interruption of Services ..................................................................................35

27. SECURITY DEPOSIT............................................................................................................35
    A.    Deposit of Security ..........................................................................................35
    B.    Letter of Credit ................................................................................................35
    C.    Application of Security Deposit........................................................................36
    D.    Special Provisions Regarding the Security Deposit. ........................................36

28. ADDITIONAL DEFINITIONS. .............................................................................................37

29. BROKER ...............................................................................................................................38

30. INDEMNITY ..........................................................................................................................38

31. RENEWAL OPTIONS. ..................................................................................................................39

32. MISCELLANEOUS. ....................................................................................................................39
    A.    No Offer...........................................................................................................................39
    B.    [Intentionally omitted.].....................................................................................................39
    C.    Authority..........................................................................................................................40
    D.    Vault Space......................................................................................................................40
    E.    Consents and Approvals ...................................................................................................40
    F.    Rent Control ....................................................................................................................40
    G.    Confidentiality .................................................................................................................40
    H.    Adjacent Excavation; Shoring ..........................................................................................41
    I.    Labor Harmony ...............................................................................................................41
    J.    Captions...........................................................................................................................41
    K.    Parties Bound...................................................................................................................41

AGREEMENT OF LEASE, made between 502-12  86TH STREET LLC, as landlord, and CIRCUIT CITY STORES, INC., a Virginia corporation, as tenant.

### WITNESSETH:

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

1.   PREMISES; TERM; USE AND OCCUPANCY.

A.   Premises.   Landlord hereby leases to Tenant and Tenant hereby hires from Landlord the Premises in the Building for the Term, to commence on the Commencement Date and to end on the Expiration Date, both dates inclusive, unless the Term shall sooner end pursuant to any of the terms, covenants or conditions of this Lease or pursuant to law.

B.   Condition Of Premises.

(i)   Subject to the obligations of landlord specifically set forth herein, Tenant agrees to accept possession of the Premises in the condition which shall exist on the Commencement Date "as is", and further agrees that Landlord shall have no obligation, to perform any work or make any installations in order to prepare the Premises for Tenant's occupancy, other than to deliver the Premises broom clean and free of any occupants and except as provided in subparagraphs (ii) and (iii) below and Subsection A(ii) of Article 5. Landlord agrees that the Premises shall be in the same condition as during Tenant's last pre-Lease execution inspection, reasonable wear and tear excepted.

(ii)   Tenant shall provide Landlord with the Plans and Specifications for Tenant's Initial Work. Landlord shall provide Tenant with an ACP-5 certificate for Tenant's Initial Work. If the Premises contain asbestos which asbestos is required by applicable Legal Requirements to be removed, encapsulated or otherwise abated in connection with Tenant's Initial Work as shown on the Plans and Specifications submitted to Landlord or as otherwise required to accommodate Tenant's Initial Work as described on the Plans and Specifications, then Landlord shall cause such asbestos to be removed, encapsulated or otherwise abated from the Premises, it being expressly understood and agreed that Landlord's sole obligation with respect to any asbestos in the Premises shall be limited to the foregoing remedial obligation. Landlord agrees that the foregoing asbestos work shall be completed no later than October 15, 2005, other than with respect to any portions of the roof which shall be performed in conjunction with Landlord's roof obligations pursuant to Article 5.A.(ii)).

(iii)   Landlord shall deliver the Premises in structurally sound condition and (as a separate obligation apart from Landlord's obligation in Article 5) with the roof free of leaks and otherwise in watertight condition (except for windows, which will be replaced or repaired as part of Tenant's Initial Work).

C.   Permitted Uses.

(i)   Tenant shall initially use and occupy the Premises for the Permitted Uses, and for no other purpose.

(ii)    In the event the use of the Premises changes from the initial Permitted Uses, Tenant agrees that Tenant's primary use as changed shall not (a) violate any exclusive use right existing on the date hereof which is then in effect and enforceable and which is specified on Exhibit 2 annexed hereto and made a part hereof; or (b) violate any future exclusive use right which is specified on Exhibit 2, which is granted by Landlord to a tenant in the Building, which exclusive use right is then in effect and enforceable, or (c) be for a **"Prohibited Use"** as set forth on Exhibit 3 annexed hereto and made a part hereof. Notwithstanding anything contained herein to the contrary, nothing in the Prohibited Uses shall be deemed to prohibit the sale of "R" rated materials from the Premises.

(iii)    Neither Tenant nor any Tenant Party shall use any portion of the halls, corridors, stairways, elevators or other public portions of the Building or any entranceways, sidewalks or roadways adjoining the Building in any manner which would cause any unreasonable congestion or in anyway impede the flow of pedestrian traffic outside of the Premises or the Building.

(iv)    As long as this Lease is in full force and effect, the Premises are being used by the original Tenant named herein (or any permitted assignee of such Tenant or permitted sublessee of the entire Premises) for the Initial Permitted Use and Tenant is not in default hereunder (beyond the expiration of any applicable grace or cure period), Landlord shall not lease space in the Building, to a tenant or tenants in which such tenant or tenants is (are) permitted to use such space principally for the Initial Permitted Use.

D.    Certificate Of Occupancy.    Tenant shall not at any time use or occupy the Premises in violation of the certificate of occupancy issued for the Premises or for the Building and in the event that any department of the City or State of New York shall hereafter at any time contend and/or declare by notice, violation, order or in any other manner whatsoever that the Premises are used for a purpose which is a violation of such certificate of occupancy, Tenant shall, upon five (5) days' written notice from Landlord, immediately discontinue such use of the Premises.

E.    Operation of Business.

(i)    Tenant shall provide adequate window display lighting while open for business and thereafter until 10:00 p.m. each day. Notwithstanding the foregoing, however, all such lighting shall comply with all Legal Requirements and with the Rules and Regulations.

(ii)    In addition to any other restrictions set forth in this Lease, Tenant shall not (a) use any common areas of the Building for display or any other purpose, (b) store any trash or garbage in any area other than inside the Premises (and Tenant shall comply with the provisions of Subsection E of Article 26), (c) use the sidewalk in front of the Premises for the placement or display of any signs, placard, merchandise, promotions, or for any other use, (d) use loudspeakers outside the Premises or in the Premises in a manner that is offensive outside the Premises, (e) allow excessive noise, obnoxious odors, or annoying lighting in the Premises at any time, (f) permit music or any other sounds in the Premises to be heard outside of the Premises, (g) permit odors or fumes beyond the Premises (and if such odors or fumes emanate from the Premises, Tenant shall within three (3) days' notice from Landlord install or commence to install, at its own cost and expense, reasonable control devices or procedures to eliminate such odors, and complete such installation as expeditiously as possible), (h) [intentionally omitted], (i) permit live entertainment of any type other than customary "in-store" promotions for music media sold at the Premises provide no provisions of this Lease are breached thereby, (j) permit dancing, or (k) suffer, permit or commit any waste or any nuisance or other act or thing in the Premises which may disturb any other tenant or occupant in the Building. Tenant shall at all times provide adequate security for the Premises. Tenant shall restrict the use of the lavatory, toilet and plumbing facilities of the

Premises to Tenant's employees and customers and shall not allow use thereof by the public. Tenant shall receive deliveries and services and arrange for refuse disposal only through the rear service entry to the Premises, if any, or as otherwise directed by Landlord. The provisions of this subparagraph (ii) of this Subsection are a material inducement for Landlord to execute and deliver this Lease. Any failure by Tenant to comply with the provisions hereof shall be deemed a material breach of this Lease for which Landlord shall be entitled to any and all of its remedies in accordance with the terms, covenants and conditions of this Lease.

      F.    Exterior Signage.

      (i)    Tenant shall not exhibit, inscribe, paint or affix any sign, advertisement, notice or other lettering on any portion of the Building or the outside of the Premises without the prior written consent of Landlord in each instance. Tenant may place signage on the exterior of the Building solely to the extent provided in, and subject to the limitations hereinafter set forth (any such signage that Tenant installs on the exterior of the Building as provided herein being collectively referred to as the **"Exterior Signage"**). Tenant shall not have the right to use the Exterior Signage for any purpose other than identifying Tenant as the occupant of the Premises and general product identification if typical of Tenant's signage at other of its locations. The Exterior Signage shall be subject to Landlord's approval, which approval shall not be unreasonably withheld so long as the Exterior Signage is not offensive based upon prevailing community standards and does not damage Landlord's reputation in the community, and provided further that the Exterior Signage complies in all respects with applicable Legal Requirements and that Tenant secures all necessary Permits with respect thereto. Tenant shall make any installations of Exterior Signage in accordance with the provisions of Article 4 as if such installation constituted an Alteration. Tenant shall not make any installation, removal or repair of or modification to the Exterior Signage without first submitting Plans and Specifications therefor to Landlord, and obtaining Landlord's prior written approval thereof, which approval Landlord shall not unreasonably withhold (provided that the installation or modification contemplated thereby conforms with the provisions of this Subsection); provided, however, that Landlord's consent shall not be required for any changes which are consistent with Tenant's prototypical signage at a majority of Tenant's stores in New York City. Tenant, at Tenant's sole cost and expense, shall (i) maintain in good repair all Exterior Signage, and (ii) repair any damage to the Building that results from Tenant's installation, maintenance or removal of the Exterior Signage. Tenant acknowledges that Landlord makes no representation that applicable Legal Requirements permit the Exterior Signage to be installed on the exterior of the Building as contemplated hereby. Tenant acknowledges that the electricity used to illuminate Exterior Signage shall be metered directly to Tenant pursuant to Article 26 hereof (to the extent that Tenant has the right to illuminate the Exterior Signs under this Subsection and other provisions of this Lease). Tenant shall not permit the Exterior Signage to encroach upon the property of any other person or upon any public road or street. Upon the expiration or earlier termination of this Lease, Tenant shall promptly remove the Exterior Signage at Tenant's sole cost and expense and repair any damage caused by such removal. The installation, removal, change or modification of any Exterior Signage or other lettering theretofore installed shall be performed solely by Tenant at Tenant's sole cost and expense.

      (ii)    Any Exterior Signage which shall be exhibited, inscribed, painted or affixed by or on behalf of Tenant in violation of the provisions of this Subsection E and which is not removed by Tenant within twenty (20) days after written notice by Landlord may be removed by Landlord and the cost of any such removal shall be paid by Tenant as additional rent.

      (iii)    Tenant shall not install any exterior lighting fixture, shade, canopy, awning, banner, placard, flag, pennant, aerial, antenna or the like, or undertake any exterior painting or build any

259774-8-W           3

fences or make any other changes to the exterior of the Premises without Landlord's prior written consent, which shall not be unreasonably withheld.

(iv)    Notwithstanding anything to the contrary contained herein, Landlord hereby approves Tenant's Exterior Signage to be substantially similar to that shown in the Concept Plans which are annexed hereto and made a part hereof as Schedule B.

(v)    In the event of an assignment of this Lease to a permitted assignee, Landlord's consent to any such assignee's Exterior Signage shall not be required, provided that (a) such assignee has a minimum of ten (10) stores in the New York City area, (b) such Exterior Signage is consistent with such assignee's prototypical signage at its other New York City area locations, and (c) such Exterior Signage otherwise complies with the provisions of this Lease; provided, however, that if the assignee does not meet the criteria set forth in clauses (a) and (b), Landlord's consent shall nonetheless not be required provided that the assignees Exterior Signage is consistent with exterior signage maintained by comparable retailers in the area of the Premises. In all other instances, Landlord shall not unreasonably withhold or delay its consent to any substitute Exterior Signage.

G.    Storefront.

(i)    Subject to the terms hereof, Tenant shall not have the right to make any changes to the storefront of the Premises (including, without limitation, the windows and doors comprising such storefront) without Landlord's prior approval (which approval Landlord shall not unreasonably withhold, condition or delay provided that the changes to the storefront proposed by Tenant do not diminish the value of the Building. In the event that Tenant replaces the storefront (subject to the terms and conditions of this Lease), Tenant shall have the right to construct, at Tenant's sole and cost and expense, a construction barrier that conforms to the specifications approved by Landlord (the "**Construction Barrier**") and complies with the Legal Requirements. Tenant, at Tenant's sole cost and expense, shall remove the Construction Barrier as promptly as reasonably practicable after the such Alterations are substantially completed and shall repair any damage to the Building caused by the Construction Barrier or the removal thereof. Tenant shall erect, maintain and remove any Construction Barrier that Tenant installs in accordance with all applicable Legal Requirements. If Tenant erects the Construction Barrier as contemplated hereby, then Tenant shall maintain such Construction Barrier in good condition, appearance and repair. Subject to Landlord's prior consent, Tenant shall have the right to decorate any Construction Barrier that Tenant erects for purposes of advertising the business that Tenant intends to conduct in the Premises.

(ii)    Notwithstanding anything to the contrary contained herein, Landlord hereby approves the building elevations, entrance tower, customer pickup area (if any) and use of yellow and red trim on the front exterior of the Building, substantially as shown on Schedule C annexed hereto and made a part hereof.

H.    Breach of Covenants.    The provisions of this Article are a material inducement for Landlord to execute and deliver this Lease. Tenant acknowledges that Landlord may suffer irreparable harm by reason of a breach or threatened breach of this Article and, accordingly, any failure by Tenant to comply with the provisions hereof shall be deemed a material breach of this Lease, and in addition to all of the rights and remedies to which Landlord shall be entitled in accordance with the terms, covenants and conditions of this Lease or which are permitted by law, Landlord shall be entitled to enjoin the action, activity or inaction that gives rise to, or may give rise to, such breach or threatened breach by Tenant.

2.    RENT.

259774-8-W                                        4

A.     Minimum Rent.   Tenant agrees to pay the Minimum Rent in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments, in advance, commencing on the Commencement Date and on the first (1st) day of each calendar month thereafter during the Term, at Landlord's Address for Payment of Rent or such other place as Landlord may designate, without any set-off, offset, abatement or deduction whatsoever (except as hereinafter otherwise provided). If the Commencement Date shall occur on a date other than the first (1st) day of any calendar month, Tenant shall pay to Landlord, on the Commencement Date, an amount equal to such proportion of an equal monthly installment of Minimum Rent as the number of days from and including the Commencement Date bears to the total number of days in said calendar month. Landlord shall have the right to require Tenant to pay Minimum Rent when due by wire transfer of funds to an account designated from time to time by Landlord on at least thirty (30) days' advance notice to Tenant.

B.     Additional Rent.   All sums other than Minimum Rent payable hereunder shall be deemed to be "**Additional Rent**" and shall be payable within ten (10) days of rendition of a statement therefor, unless other payment dates are hereinafter provided. The term "**Rent**" as used in this Lease shall mean Minimum Rent and Additional Rent. Landlord may apply payments made by Tenant towards the payment of any item of Minimum Rent and/or Additional Rent payable hereunder notwithstanding any designation by Tenant as to the items against which any such payment should be credited.

C.     Rent Tax.   Tenant shall, in addition to and together with the payments of Minimum Rent and any Additional Rent, pay to Landlord any and all sales or rent taxes required by any Governmental Agency to be collected by Landlord in connection with Minimum Rent and Additional Rent. Tenant shall also pay before delinquency any and all taxes, assessments, license fees and public charges levied, assessed or imposed and which become payable during the term of this Lease upon Tenant's fixtures, furniture, appliances and personal property installed or located in or about the Premises.

D.     Rent Abatement.   Notwithstanding anything to the contrary hereinabove set forth, provided Tenant is not in default under this Lease beyond the expiration of any applicable grace or cure period, the Minimum Rent and Additional Rent shall be abated (the "**Rent Abatement**") for the Rent Abatement Period. It is understood and agreed that the Rent Abatement is given by Landlord in consideration of Tenant's paying when due all rents under this Lease, and otherwise complying with the terms hereof, and that in the event of any uncured Event of Default by Tenant under this Lease the unamortized portion of the Rent Abatement shall, in addition to any other claims which Landlord may have hereunder by reason of such default, become immediately due and payable to Landlord as Additional Rent under this Lease. Notwithstanding anything contained herein to the contrary, Tenant shall be obligated to pay for any utilities consumed at the Premises during the Rent Abatement Period.

3.     REAL ESTATE TAXES.

A.     Defined Terms.

(i)     "**Taxes**" shall mean the aggregate amount of real estate taxes and any special or other assessments (exclusive of penalties and interest thereon) imposed upon the Real Property and real estate taxes or assessments imposed in connection with the receipt of income or rents from the Building to the extent that same shall be in lieu of all or a portion of the aforesaid taxes or assessments, or additions or increases thereof, including, without limitation, (a) assessments made upon or with respect to any air rights, and (b) any assessments levied after the date of this Lease for public benefits to the Real Property or the Building (including BID charges) which assessments, if payable in installments, shall be deemed payable in the maximum number of permissible installments and there shall be included in real estate

259774-8-W                                              5

taxes for each Comparison Year (hereinafter defined) in which such installments may be paid, the installments of such assessment so becoming payable during such Comparison Year (in the manner in which such taxes and assessments are imposed as of the date hereof); provided, that if because of any change in the taxation of real estate, any other tax or assessment (including, without limitation, any occupancy, gross receipts, rental, income, franchise, transit or other tax) is imposed upon Landlord or the owner of the Real Property or the Building, or the occupancy, rents or income therefrom, in substitution for or in addition to, any of the foregoing Taxes, such other tax or assessment shall be deemed part of the Taxes. With respect to any Comparison Year all expenses, including attorneys' fees and disbursements, experts' and other witnesses' fees, incurred in contesting the validity or amount of any Taxes or in obtaining a refund of Taxes shall be considered as part of the Taxes for such year.

(ii)    **"Assessed Valuation"** shall mean the amount for which the Real Property is assessed pursuant to applicable provisions of the New York City Charter and of the Administrative Code of the City of New York for the purpose of imposition of Taxes.

(iii)    **"Tax Year"** shall mean the period July 1 through June 30 (or such other period as hereinafter may be duly adopted by the City of New York as its fiscal year for real estate tax purposes).

(iv)    **"Landlord's Statement"** shall mean a statement consisting of (a) a copy of the applicable tax bill, and (b) a computation of Tenant's Share of such Taxes.

B.    Escalation.    Tenant shall pay to Landlord Tenant's Share of the Taxes for each Tax Year of the Term (each, a "Tax Payment"). Taxes shall be pro rated for any partial Tax Year within the Term based on the actual number of days elapsed. Promptly after receipt of a bill for Taxes, Landlord shall provide Tenant with a Landlord's Statement. Tenant shall pay Tenant's Tax Payment within twenty (20) days after receipt of Landlord's Statement.

C.    Payment of Taxes.

(1)    Landlord's failure to render a Landlord's Statement and/or receive payments with respect thereto during or with respect to any Tax Year shall not prejudice Landlord's right to render a Landlord's Statement and/or receive payments with respect thereto during or with respect to any subsequent Tax Year, and shall not eliminate or reduce Tenant's obligation to make the Tax Payment.

(2)    Tenant shall be obliged to pay the Tax Payment regardless of whether Tenant is exempt, in whole or in part, from the payment of any Taxes by reason of Tenant's diplomatic status or otherwise.

(3)    Notwithstanding anything to the contrary contained herein, Tenant shall have no obligation to pay any penalty or interest that arises or accrues as a result of Landlord's failure to render a Landlord's Statement in a timely fashion.

D.    Adjustments.

(i)    In the event that, after a Landlord's Statement has been sent to Tenant, an Assessed Valuation which had been utilized in computing the Taxes for a Tax Year is reduced (as a result of settlement, final determination of legal proceedings or otherwise), and as a result thereof a refund of Taxes is actually received by or on behalf of Landlord, then, promptly after receipt of such refund, Landlord shall send Tenant a statement adjusting the Tax Payment for such Tax Year (taking into account the expenses mentioned in the last sentence of Subsection A(i) of this Article) and setting forth Tenant's

Proportionate Share of such refund and Tenant shall be entitled to receive such share by way of a credit against the Rent next becoming due after the sending of such Landlord's Statement; provided, however, that (A) Tenant's Share of such refund shall be limited to the amount, if any, which Tenant had theretofore paid to Landlord on account of Tenant's Tax Payment for such Tax Year on the basis of the Assessed Valuation before it had been reduced, and (B) if Tenant is in default hereunder at such time, Tenant shall not receive such credit until such time as such default has been cured by Tenant.

(ii)    Any Landlord's Statement sent to Tenant shall be conclusively binding upon Tenant unless, within ninety (90) days after such statement is sent, Tenant shall (a) pay to Landlord the amount set forth in such statement, without prejudice to Tenant's right to dispute the same, and (b) send a written notice to Landlord objecting to such statement and specifying the particular respects in which such statement is claimed to be incorrect.

(iii)    Anything in this Article to the contrary notwithstanding, under no circumstances shall the rent payable under this Lease be less than the Minimum Rent set forth herein, except for any credit Tenant is entitled to pursuant to subparagraph (i) above.

(iv)    The expiration or termination of this Lease during any Tax Year for any part or all of which there is an increase in the Rent under this Article shall not affect the rights or obligations of the parties hereto respecting such increase and any Landlord's Statement relating to such increase may, on a pro rata basis, be sent to Tenant subsequent to, and all such rights and obligations shall survive, any such expiration or termination.  Any payments due under such Landlord's Statement shall be payable within twenty (20) days after such statement is sent to Tenant.

E.    Capital Improvements.    If any alteration or capital improvement is made to the Real Property or the Building during any calendar year during the Term that is required in order for the Building to comply with any Legal Requirement which first becomes effective after the date hereof, then Tenant shall pay to Landlord as Additional Rent commencing with the year in which such costs are incurred, Tenant's Proportionate Share of such costs, amortized on a straight-line basis over the life of such alteration or improvement (but not in excess of ten (10) years), as computed in accordance with generally accepted accounting principles, consistently applied, with interest thereon.  For the purposes of this Subsection E, the cost of any such alteration or improvement shall be deemed to include the cost of preparing any necessary plans and the fees for filing such plans.

4.    ALTERATIONS.

A.    Defined Terms.

(i)    "Alterations" shall mean and include all installations, changes, alterations, restorations, renovations, decorations, replacements, additions, improvements and betterments made in or to the Premises or the Building by Tenant, and shall include Tenant's Initial Work.

(ii)    "Building Systems" shall mean the mechanical, gas, electrical, sanitary, heating, air-conditioning, ventilating, elevator, plumbing, life-safety and other service systems of the Building.

(iii)    "Decorative Alterations" shall mean Alterations which do not require the issuance of a building permit or any other governmental authorization and which are purely decorative in nature (i.e., painting, the installation or removal of carpeting or wall coverings and the installation or relocation of modular office partitions).

(iv)    **"Governmental Agency(ies)"** shall mean the federal government and any state, county, city, borough and municipality, and any division, agency, subdivision, bureau, office, commission, board, authority and department thereof, and any public officer or official and any quasi-governmental officials and authorities, and any insurance boards, having jurisdiction over the Real Property, the Building and/or the Premises.

(v)    **"Legal Requirements"** shall mean and include all laws orders, ordinances, directions, notices, rules and regulations of any Governmental Agencies.

(vi)    **"Non-Structural Alterations"** shall mean all Alterations which are not otherwise defined herein as Structural Alterations or as Decorative Alterations.

(vii)    **"Permits"** shall mean all governmental permits, approvals, licenses, authorizations, waivers, consents and certificates which may be required in connection with the performance of any Alterations.

(viii)    **"Specialty Alterations"** shall mean Alterations consisting of raised floors, vaults, internal staircases, pneumatic tubes, vertical and horizontal transportation systems, and any other installations which would cost more to remove than ordinary retail installations.

(ix)    **"Structural Alterations"** shall mean Alterations which affect the structural components of the Building (including support beams, load bearing walls and floor openings) or which affect any Building Systems used by other tenants of the Building.

(x)    **"Tenant's Initial Work"** shall mean the Alterations performed by Tenant to prepare the Premises for its initial occupancy.

B.    Alterations Within Premises.

(i)    Tenant shall make no Structural Alterations in or to the Premises without Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed.

(ii)    Tenant shall be permitted to make Non-Structural Alterations that are made entirely within the Premises and which do not affect the structure of the Building or any Building Systems outside (or serving parts of the Building outside) the Premises, or violate, create a condition which violates, or require Landlord to perform any work or incur any expense to ensure compliance with, any Legal Requirements, on not less than ten (10) days' prior written notice to Landlord, but without being required to obtain Landlord's consent, provided that (x) Tenant shall comply with all applicable Legal Requirements and all of the other applicable requirements governing Alterations set forth in this Lease, (y) copies of the Plans and Specifications for such Alterations shall be promptly submitted to Landlord, and (z) copies of any permits or other filings shall be submitted to Landlord promptly upon receipt thereof.

(iii)    It shall be Tenant's responsibility and obligation to ensure that all Alterations: (1) shall be made at Tenant's own cost and expense and at such times and in such manner as Landlord may from time to time designate (including reasonable rules governing Alterations as Landlord may from time to time make), (2) shall comply with all Legal Requirements, (3) shall be made promptly and in a good and workmanlike manner using materials substantially similar in quality to the standard generally used in the Building or higher quality materials, (4) shall not affect the appearance of the Building outside of the

Premises or be visible from the exterior of the Building, and (5) shall not reduce the value or utility of the Building..

C.    [Intentionally Omitted.]

D.    Required Submissions; Permits.

(i)    Prior to commencing the performance of any Alterations (other than Decorative Alterations), Tenant shall furnish to Landlord:

(1)    Plans and specifications prepared by a licensed architect or engineer engaged by Tenant, at the sole cost and expense of Tenant, in customary form for construction in New York City and in sufficient detail to be accepted for filing by the New York City Building Department (or any successor or other Governmental Agency serving a similar function) of such proposed Alterations (the **"Plans and Specifications"**). In cases where Landlord's approval of Plans and Specifications is required, Landlord shall respond to Tenant's request for approval of Plans and Specifications within twenty (20) business days of submission thereof. In the event that Landlord does not respond to the Plans and Specifications within such twenty (20) business day period, Tenant shall have the right to send Landlord a notice of Landlord's failure to respond to the Plans and Specifications, and which notice may contain a legend in capital letters and bold type on the first page thereof which states: **"PURSUANT TO SUBSECTION D(i)(1) OF ARTICLE 4 OF THE LEASE, IN THE EVENT THAT YOU SHALL NOT RESPOND TO TENANT'S REQUEST FOR APPROVAL OF THE WITHIN DESCRIBED PLANS AND SPECIFICATIONS WITHIN FIVE (5) BUSINESS DAYS, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE ALTERATIONS SET FORTH ON SUCH PLANS AND SPECIFICATIONS."** Landlord's approval of the Plans and Specifications shall be evidenced by written endorsement by an authorized representative of Landlord to that effect on two (2) sets of the Plans and Specifications, one (1) set to be retained by Landlord and the other to be returned to Tenant. If Landlord shall disapprove the Plans and Specifications, then Tenant shall in good faith promptly proceed to amend the Plans and Specifications to satisfy Landlord's objections and shall resubmit such amended Plans and Specifications to Landlord for approval.

(2)    A certificate evidencing that Tenant (or Tenant's contractors) has (have) procured and paid for worker's compensation insurance covering all persons employed in connection with the work, who might assert claims for death or bodily injury against Landlord, Tenant, the Real Property and/or the Building as required by Landlord, and such additional personal injury and property damage insurance (over and above the insurance required to be carried by Tenant pursuant to the provisions of this Lease), builder's risk, fire and other casualty insurance as Landlord may reasonably require in connection with the Alterations.

(3)    All Permits required by any applicable Legal Requirements, all of which shall be obtained at Tenant's cost and expense, provided, however, that no plans, specifications or applications shall be filed by Tenant with any Governmental Agency without Tenant first obtaining Landlord's written consent thereto, which consent shall not be unreasonably withheld or delayed.

(ii)    Upon Landlord's approval of the Plans and Specifications, Tenant shall cause the Plans and Specifications to be filed with the Governmental Agencies having jurisdiction thereof, in order to obtain, and shall obtain all Permits which may be required in connection with the performance of such Alterations. Landlord shall with reasonable promptness sign the applications for such Permits prepared by Tenant which require Landlord's signature.

259774-8-W                                                9.

E.    Completion of Alterations.

(i)    Tenant, at Tenant's sole cost and expense, shall complete all Alterations in accordance with the provisions of this Lease. Alterations shall be deemed completed at such time as (a) all certifications, approvals, licenses and permits with respect to such Alterations that may be required to evidence compliance with all Legal Requirements have been obtained and delivered to Landlord, and (b) Tenant shall (1) furnish evidence reasonably satisfactory to Landlord that all Alterations have been completed and paid for in full and that any and all liens therefor that have been or might be filed have been discharged of record or waived and that no security interests relating thereto are outstanding, (2) pay Landlord for the cost of any work performed by Landlord on Tenant's behalf in connection with such Alterations, (3) except as to Decorative Alterations, furnish Landlord with one (1) set of sepia mylar transparent reproducible "as built" drawings of the Premises together with four (4) sets of prints of the same, and the same in CADD format, and (4) except as to Decorative Alterations, furnish an affidavit in the form recommended by the American Institute of Architects from Tenant's Vice President of Construction certifying that the Alterations have been performed in accordance with the Plans and Specifications as approved by Landlord (for those Alterations requiring approval).

(ii)    Tenant shall keep accurate and complete cost records of all Alterations performed by Tenant, and upon Landlord's request, shall furnish to Landlord true copies thereof and/or of all contracts entered into and work orders issued by Tenant in connection therewith

F.    Liens.

(i)    In no event shall any material or equipment be incorporated in or affixed to the Premises by Tenant or at its request in connection with any Alterations which is subject to any lien, encumbrances, chattel mortgage, security interest, charge of any kind whatsoever, or is subject to any conditional sale or other similar or dissimilar title retention agreement. Tenant shall not create or permit to be created any lien, encumbrance or charge (levied on account of any taxes or any mechanic's, laborer's or materialman's lien, conditional sale, title retention agreement or otherwise) which might be or become a lien, encumbrance or charge upon the Real Property or Building or any part thereof or the income therefrom, and Tenant shall not suffer any other matter or thing whereby the estate, rights and interest of Landlord in the Real Property or Building or any part thereof might be impaired.

(ii)    If any lien, encumbrance or charge referred to in this Subsection F shall at any time be filed against the Real Property or Building or any part thereof, then Tenant, within thirty (30) days after Tenant shall have received notice of the filing thereof and at Tenant's cost and expense, shall cause the same to be discharged of record by bonding or otherwise. If Tenant shall fail to cause such lien to be discharged within the aforesaid period, then, in addition to any other right or remedy, Landlord may discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings, and in any such event Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of the judgment in favor of the lienor with interest, costs and allowances. Any amount so paid by Landlord and all costs and expenses incurred by Landlord in connection therewith, together with interest thereon at the Interest Rate, shall constitute Additional Rent payable by Tenant under this Lease.

G.    Miscellaneous Conditions.

(i)    Landlord shall not be liable for any failure or diminution of any Building Systems or services, or for any damage to Tenant's property or the property of any other person, caused by Alterations made by Tenant, notwithstanding Landlord's consent thereto or to the plans and

specifications therefor. Tenant shall promptly correct any faulty or improper Alteration made by Tenant and shall repair any and all damage caused thereby. Upon Tenant's failure to promptly make such corrections and repairs, Landlord may make such corrections and repairs and charge Tenant for the cost thereof and any such charge shall be deemed Additional Rent. The review and/or approval by Landlord, its agents, consultants and/or contractors, of any Alterations or of Plans and Specifications therefor and the coordination of the performance of such Alterations with the Building, are solely for the benefit of Landlord, and neither Landlord nor any of its agents, consultants or contractors shall have any duty toward Tenant; nor shall Landlord or any of its agents, consultants and/or contractors be deemed to have made any representation or warranty to Tenant, or have any liability, with respect to the safety, adequacy, correctness, efficiency or compliance with Legal Requirements of any Plans and Specifications, Alterations or any other matter relating thereto.

(ii)     All Alterations to be performed by Tenant shall be done in a manner which will not interfere with or disturb other tenants and occupants of the Building nor delay or impose any additional expense on Landlord in the maintenance, cleaning, repair, safety, management and security of the Building or the Building Systems or in the performance of any improvements in the Building. Landlord shall have the right to inspect the performance of the Alterations at any time to verify compliance by Tenant with the provisions of this Lease.

(iii)     Tenant shall, and shall cause its contractors and suppliers to, comply with best industry practices relating to the coordination and control of construction activities in the Building and the protection and security of the Building and its systems and occupants.

(iv)     If Tenant shall fail to comply with any provision of this Article (beyond notice and the expiration of any applicable cure period), Landlord, in addition to any other remedy herein provided, may require Tenant to immediately cease all work being performed in the Building by or on behalf of Tenant, and Landlord may deny access to the Premises to any person performing work or supplying materials in the Premises.

H.     Removal of Alterations.

(i)     All movable property, furniture, furnishings and trade fixtures furnished by or at the expense of Tenant, other than those affixed to the Premises so that they cannot be removed without damage and other than those replacing an item theretofore furnished and paid for by Landlord or for which Tenant has received a credit or allowance, shall remain the property of Tenant, and may be removed by Tenant from time to time prior to the expiration of the Term. All Alterations made by Tenant, including all paneling, decorations, partitions, railings, mezzanine floors, galleries and the like, which are affixed to the Premises, shall become the property of Landlord and shall be surrendered with the Premises at the end of the Term.

(ii)     In any case where Tenant removes any property or Alterations, Tenant shall immediately repair all damage caused by said removal, cap all electrical, plumbing and waste disposal lines in accordance with sound construction practice, and shall restore the Premises to good order and condition at Tenant's expense.

(iii)     The provisions of this Subsection H shall survive the expiration or sooner termination of the Term, whereupon any and all monetary obligations of Tenant pursuant thereto shall be deemed damages recoverable by Landlord.

I.     Tenant's Initial Work.   Tenant, in compliance with the further provisions of this Article, Building regulations and procedures, and other applicable provisions of this Lease, shall promptly commence and thereafter diligently perform Tenant's Initial Work.  Tenant shall not construct or expand any mezzanines.

5.     REPAIRS; FLOOR LOAD.

A.     (i)     Landlord shall maintain and repair the public portions of the Building, both exterior and interior, the roof and roof structure, the structural portions of the Building and all Building Systems up to their point of entry to the Premises, except that if Landlord allows Tenant to erect on the outside of the Building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep the same in good order and condition, at Tenant's sole cost and expense, and shall cause the same to be covered by insurance provided for in Article 9.  Notwithstanding anything to the contrary contained herein, Landlord shall not be responsible for any repairs required on the Commencement Date to the floor joists.

(ii)     After Tenant has completed its initial HVAC installation on the roof of the Building, Landlord shall, at Landlord's expense, replace the roof.

(iii)     Notwithstanding anything to the contrary contained herein, in the event that Landlord fails to comply with its repair obligations with respect to a repair that is necessary to abate any material interferences with Tenant's use and occupancy of the Premises (a **"Material Repair"**) for a period of thirty (30) days after written notice by Tenant, Tenant shall have the right, after written notice to Landlord stating Tenant's intention to prosecute such Material Repair and containing a legend in capital letters and bold type on the first page thereof which states: **"PURSUANT TO SUBSECTION A(iii) OF ARTICLE 5 OF THE LEASE, IN THE EVENT THAT YOU SHALL NOT PERFORM/COMPLETE _____ *[INSERT DESCRIPTION OF REPAIRS]* WITHIN TEN (10) BUSINESS DAYS OF THE DATE HEREOF, TENANT SHALL PERFORM/COMPLETE SUCH REPAIRS AND YOU SHALL BE OBLIGATED TO REIMBURSE TENANT FOR THE COST THEREOF"** to make such Material Repair if Landlord shall fail to substantially correct such Material Repair within such ten (10) business day period. Notwithstanding the foregoing, (a) if a Material Repair cannot be completed within such thirty (30) day period, provided Landlord shall have commenced such repairs and is thereafter prosecuting such repairs to completion, Tenant shall not have the self-help rights provided for herein, and (b) in the event of an emergency which poses a material threat to person or property, Tenant shall be required to use all commercially reasonable efforts to notify Landlord prior to undertaking any such Material Repair, and shall give Landlord such opportunity to prosecute the Material Repair as may be reasonable under the circumstances.  The reasonable cost of any such Material Repair shall be reimbursed to Tenant within thirty (30) days of Landlord's receipt of an itemized statement of all costs expended, together with paid receipts therefor.  If Landlord fails to pay any such amount to Tenant within thirty (30) days of Tenant billing Landlord therefor, Tenant shall have the right to set off the amount due (with interest thereon at the rate of twelve (12%) percent per annum ) against future payments of Minimum Rent and Additional Rent, provided, however, that Tenant shall not be permitted to offset an amount greater than fifteen (15%) percent of the Rent due for any calendar month (unless due to the length of the remaining Term, a greater amount is necessary to fully recover such amounts).  Tenant shall also have all other rights afforded at law or equity in respect of any such failure by Landlord.

B.     Tenant shall, throughout the Term, take good care of the Premises, the fixtures and appurtenances therein, the Building Systems located in the Premises and the sidewalks adjacent to the

Premises, and at Tenant's sole cost and expense, make all nonstructural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear and damage for which Tenant is not responsible under the terms of this Lease excepted. In addition, all damage or injury to the Premises or to any other part of the Building, or to its fixtures, equipment and appurtenances, whether requiring structural or nonstructural repairs, caused by or resulting from any Alterations made by Tenant or Tenant's or any Tenant Party's acts or omissions, shall be repaired promptly by Tenant, at its sole cost and expense, to the reasonable satisfaction of Landlord. All the aforesaid repairs shall be of quality and class equal to the original work or construction and shall be made in accordance with the provisions of Article 4 hereof. Tenant shall give Landlord prompt notice of any defective condition in any plumbing, electrical, air-cooling or heating system located in, servicing or passing through the Premises. Tenant shall not place a load upon any floor of the Premises exceeding the floor load per square foot area which such floor was designed to carry and which is allowed by law. Landlord reserves the right to prescribe the weight and position of all safes, business machines and heavy equipment and installations. Machines and mechanical equipment shall be placed and maintained by Tenant at Tenant's expense in settings sufficient in Landlord's reasonable judgment to absorb and prevent vibration, noise and annoyance. Except as may be expressly provided herein, there shall be no allowance to Tenant for a diminution of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance or injury to business arising from Landlord, Tenant or others making, or failing to make, any repairs, alterations, additions or improvements in or to any portion of the Building (including the erection or maintenance of any crane, derrick or sidewalk shed), or the Premises, or in or to fixtures, appurtenances, or equipment thereof. If the Premises be or become infested with vermin, Tenant, at Tenant's expense, shall cause the same to be exterminated from time to time to the satisfaction of Landlord and shall employ such exterminators and such exterminating company or companies as shall be approved by Landlord.

6.    REQUIREMENTS OF LAW.

A.    Tenant, at its sole expense, shall comply with all Legal Requirements which shall now or hereafter impose any violation, order or duty upon Landlord or Tenant with respect to the Premises as a result of the use, occupation or alteration thereof by Tenant. Tenant shall promptly notify Landlord if it receives notice of any violation of, or defaults under, any Legal Requirements, liens or other encumbrances applicable to the Premises.

B.    Tenant shall not do or permit to be done any act or thing upon the Premises which will invalidate or be in conflict with any insurance policies covering the Building and fixtures and property therein; and shall not do, or permit anything to be done in or upon the Premises, or bring or keep anything therein, except as now or hereafter permitted by Legal Requirements. If by reason of Tenant's acts or omissions, the fire insurance rate shall at the beginning of this Lease or at any time thereafter be higher than it otherwise would be, then Tenant shall reimburse Landlord, as Additional Rent hereunder, for that part of all fire insurance premiums thereafter paid by Landlord which shall have been charged because of such failure or use by Tenant. In any action or proceeding wherein Landlord and Tenant are parties, a schedule or "make up" of rates for the Building or the Premises issued by the New York Fire Insurance Rating Organization, or other body fixing such fire insurance rates, shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rates then applicable to the Premises.

C.    If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business and if the failure to secure such license or permit would, in any way, affect Landlord or the Building, then Tenant, at Tenant's expense, shall promptly procure and thereafter maintain, submit for inspection by Landlord, and at all times comply with the terms and conditions of, each such license or permit.

259774-8-W                                    13

7.    SUBORDINATION.

A.    Subordination.    Provided that an SNDA is obtained as set forth below and subject to the terms of such SNDA, this Lease is subject and subordinate to each and every ground or underlying lease of the Real Property or the Building heretofore or hereafter made by Landlord (collectively the "**Superior Leases**") and to each and every trust indenture and mortgage (collectively the "**Mortgages**") which may now or hereafter affect the Real Property, the Building or any such Superior Lease and the leasehold interest created thereby, and to all renewals, extensions, supplements, amendments, modifications, consolidations, and replacements thereof or thereto, substitutions therefor and advances made thereunder, provided that in each case the Lessor or Mortgagee (as the case may be) executes and delivers an SNDA as hereinafter provided. This clause shall be self-operative and no further instrument of subordination shall be required to make the interest of any lessor under a Superior Lease (a "**Lessor**"), or trustee or mortgagee of a Mortgage (a "**Mortgagee**") superior to the interest of Tenant hereunder. In confirmation of such subordination, however, Tenant shall execute promptly any certificate that Landlord may request. If, in connection with the financing of the Real Property, the Building or the interest of the lessee under any Superior Lease, any lending institution shall request reasonable modifications of this Lease that do not materially increase the obligations or materially and adversely affect the rights of Tenant under this Lease, Tenant covenants to make such modifications.

B.    Attornment.    Provided that an SNDA is obtained as set forth below and subject to the terms of such SNDA, if at any time prior to the expiration of the Term, any Mortgage shall be foreclosed or any Superior Lease shall terminate or be terminated for any reason, Tenant agrees, at the election and upon demand of any owner of the Real Property or the Building, or the lessor under any such Superior Lease, or of any mortgagee in possession of the Real Property or the Building, to attorn, from time to time, to any such owner, lessor or mortgagee, upon the then executory terms and conditions of this Lease, for the remainder of the term originally demised in this Lease, provided that such owner, lessor or mortgagee, as the case may be, or receiver caused to be appointed by any of the foregoing, shall not then be entitled to possession of the Premises. The provisions of this Subsection B shall inure to the benefit of any such owner, lessor or mortgagee, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the termination of any such Superior Lease, and shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions. Tenant, however, upon demand of any such owner, lessor or mortgagee, agrees to execute, from time to time, instruments in confirmation of the foregoing provisions of this Subsection B, satisfactory to any such owner, lessor or mortgagee, acknowledging such attornment and setting forth the terms and conditions of its tenancy. Nothing contained in this Subsection B shall be construed to impair any right otherwise exercisable by any such owner, lessor or mortgagee.

C.    Certificates.    From time to time, within twenty (20) days next following request by Landlord or any Mortgagee, Tenant shall deliver to Landlord or such Mortgagee, as the case may be, a written statement executed and acknowledged by Tenant, in form satisfactory to Landlord or such Mortgagee, (i) stating that this Lease is then in full force and effect and has not been modified (or if modified, setting forth all modifications), (ii) setting forth the date to which the Minimum Rent, Additional Rent and other charges hereunder have been paid, together with the amount of fixed base monthly Minimum Rent then payable, (iii) stating whether or not, to the best knowledge of Tenant, Landlord is in default under this Lease, and, if Landlord is in default, setting forth the specific nature of all such defaults, (iv) stating the amount of any security deposit under this Lease, (v) stating whether there are any subleases affecting the Premises, (vi) stating the address of Tenant to which all notices and communications under the Lease shall be sent, the Commencement Date and the Expiration Date, and

(vii) as to any other factual matters requested by Landlord or such Mortgagee. Tenant acknowledges that any statement delivered pursuant to this Subsection may be relied upon by any purchaser or owner of the Real Property or the Building, or Landlord's interest in the Real Property or the Building or any Superior Lease, or by any Mortgagee, or by any assignee of any Mortgagee, or by any Lessor. Tenant's failure to execute, acknowledge and deliver a statement in accordance with the provisions hereof within said twenty (20) day period shall constitute an acknowledgment by Tenant, which may be relied on by any person who would be entitled to rely upon any such statement, that such statement as submitted by Landlord is true and correct.

D.    Subordination and Non-Disturbance Agreement.    With respect to any future Mortgages and future Superior Leases affecting the Building, Landlord agrees (subject to the qualifications hereinafter set forth) to obtain from any such Mortgagees and Superior Leasors, a Subordination and Non-Disturbance Agreement ("SNDA") in favor of Tenant substantially in the form annexed hereto and made a part hereof as Schedule D, containing such changes as are commercially reasonable and consistent with those made by lenders for a tenant of Tenant's stature, which Tenant agrees to execute and deliver to Landlord within ten (10) business days after receipt thereof.

8.    RULES AND REGULATIONS.    Tenant and the Tenant Parties shall observe, and comply with, the Rules and Regulations annexed hereto and made a part hereof as Schedule A (collectively, the **"Rules and Regulations"**). Landlord agrees that it shall not enforce the Rules and Regulations against Tenant in a discriminatory manner.

9.    INSURANCE.

A.    Tenant's Insurance.    Tenant shall obtain and thereafter maintain during the Term, on or before the earlier to occur of (a) the Commencement Date, and (b) ten (10) days from the date of this Lease, the following:

(i)    A policy of commercial general liability and property damage insurance on an occurrence basis, with a broad form contractual liability endorsement. The minimum limits of liability shall be a combined single limit with respect to each occurrence in an amount of not less than $1,000,000 per occurrence/$3,000,000 general aggregate for injury (or death) and damage to property, which amount may be satisfied with a primary commercial general liability policy of not less than $1,000,000 and an excess (or umbrella) liability policy affording coverage, at least as broad as that afforded by the primary commercial general liability policy, in an amount not less than the difference between $3,000,000 and the amount of the primary policy. Such insurance may be carried under a blanket policy covering the Premises and other locations of Tenant, provided such a policy contains an endorsement (a) naming the Landlord Indemnitees as additional insureds, and (b) specifically referencing the Premises.

(ii)    An insurance policy for Alterations, in either case to the extent insurable under the available standard forms of "all risk" insurance policies, in an amount equal to one hundred (100%) percent of the replacement value thereof. Tenant hereby waives all claims against Landlord for any damage to Tenant's Property, regardless of the cause of such damage.

(iii)    Workers' compensation insurance providing statutory benefits for Tenant's employees and employer's liability.

(iv)    Business interruption or rental insurance insuring at a minimum the Minimum Rent and Additional Rent due and payable hereunder for a minimum of twelve (12) full calendar months.

All insurance required to be carried by Tenant pursuant to the terms of this Lease shall be effected under valid and enforceable policies issued by reputable and independent insurers permitted to do business in the State of New York, and rated in Best's Insurance Guide, or any successor thereto (or if there be none, an organization having a national reputation) as having a general policyholder rating of "A-" and a financial rating of at least "8". All such policies shall contain a provision that the insurance company will not cancel or refuse to renew the policy, or change in any material way the nature or extent of the coverage provided by such policy, without first giving Landlord at least thirty (30) days' written notice by certified mail, return receipt requested, which notice shall contain the policy number and the names of the insureds and policy holder. Prior to the time such insurance is first required to be carried by Tenant and thereafter at least thirty (30) days prior to the termination of any existing policy, Tenant shall deliver to Landlord a certificate evidencing the effectiveness of the insurance policies required to be maintained hereunder. Each policy required hereunder shall contain a clause that the policy and the coverage evidenced thereby shall be primary with respect to any policies carried by Landlord, and that any coverage carried by Landlord shall be excess insurance. The limits of the insurance required under this Article shall not limit the liability of Tenant under this Lease. In the event that Tenant fails to continuously maintain insurance as required hereby, Landlord may, at its option and without relieving Tenant of any obligation hereunder, order such insurance and pay for the same at the expense of Tenant. In such event, Tenant shall repay the amount expended by Landlord, with interest thereon, as Additional Rent. Tenant acknowledges that Landlord will not carry insurance on and shall not be responsible for damage to, Tenant's Alterations, fixtures, furnishings, equipment or other property, and that Landlord shall not carry insurance against, or be responsible for any loss suffered by Tenant due to, interruption of Tenant's business.

B.      Waiver of Subrogation.      The parties hereto shall procure an appropriate clause in, or endorsement on, any fire or extended coverage property insurance covering the Premises and the Building, as well as personal property, fixtures and equipment located thereon or therein, pursuant to which the insurance companies waive subrogation or consent to a waiver of right of recovery, and having obtained such clauses or endorsements of waiver of subrogation or consent to a waiver of right of recovery, will not make any claim against or seek to recover from the other for any loss or damage to its property or the property of others resulting from fire or other hazards covered by such fire and extended coverage insurance, provided, however that the release, discharge, exoneration and covenant not to sue herein contained shall be limited by and be coextensive with the terms and provisions of the waiver of subrogation clause or endorsements or clauses or endorsements consenting to a waiver of right of recovery. If the payment of an additional premium is required for the inclusion of such waiver of subrogation provision, each party shall advise the other of the amount of any such additional premiums and the other party at its own election may, but shall not be obligated to, pay the same. If such other party shall not elect to pay such additional premium, the first party shall not be required to obtain such waiver of subrogation provision.

C.      Landlord's Insurance.      Landlord shall maintain in respect of the Building at all times during the term of this Lease fire and casualty insurance covering the Building and Landlord's property for full replacement value. All insurance required to be carried by Landlord pursuant to the terms of this Lease shall be effected under valid and enforceable policies issued by reputable and independent insurers permitted to do business in the State of New York, and rated in Best's Insurance Guide or any successor thereto (or if there be none, an organization having a national reputation) as having a general policyholder rating of "A-" and a financial rating of at least "8". Upon Tenant's request, Landlord shall provide Tenant with a certificate evidencing the insurance policies required to be maintained hereunder.

D.      Increases in Insurance.      The liability insurance requirements under Subsection A(i) above shall be reviewed by Landlord and Tenant every five (5) years for the purpose of increasing (in

259774-8-W                                      16

consultation with their respective insurance advisors) the minimum limits of such insurance to limits which shall be reasonable and customary for similar facilities of like size and operation in accordance with generally accepted insurance industry standards. The replacement value of the Building and other insurable requirements shall be re-evaluated from time to time at the reasonable request of Tenant.

E.    Tenant's Self-Insurance.    Tenant may provide self-insurance in lieu of the insurance required in subparagraphs (i) and (ii) of Subsection A (the "Required Insurance"), pursuant to a commercially reasonable self-insurance program. As a condition to establishing a self-insurance plan in lieu of the insurance required, Tenant shall deliver to Landlord the following (collectively, the "Self-Insurance Documents"): (1) a balance sheet as of the end of the most recent quarter of the then-current fiscal year of Tenant (or, if the first quarter in such fiscal year has not expired, the last quarter of the previous fiscal year), prepared in accordance with generally accepted accounting principles consistently applied ("GAAP"), evidencing that the Tangible Net Worth of Tenant exceeds $300,000,000; and (2) a letter (a "Compliance Letter") certifying that, to Tenant's best knowledge, such information is true and correct in all material respects as of the date stated, there has been no material adverse change in the financial condition of Tenant since such date, and there are no lawsuits pending (individually or in the aggregate) which, if adversely decided, could reasonably be expected to have a material adverse effect on Tenant's financial condition. Thereafter, Tenant shall deliver to Landlord as soon as available (and in any event within ninety (90) days) after the end of each fiscal year, a balance sheet for such fiscal year, audited by a national firm of certified public accountants in accordance with GAAP, evidencing that the Tangible Net Worth of Tenant exceeds $300,000,000, together with a Compliance Letter. Notwithstanding the foregoing, for so long as Tenant is a publicly traded company, its 10-Q and or 10-K statements may be supplied in lieu of the financial statements. If at any time Tenant's Tangible Net Worth is less than $300,000,000, then Tenant shall be required to immediately obtain and maintain the Required Insurance. If Tenant self-insures any of the risks to which coverage is required under the Required Insurance, Tenant's self-insurance program shall be deemed to include the waivers of subrogation and the additional insured status mentioned above in favor of Landlord and its agents and affiliates. Furthermore, the self-insurance protection shall be equivalent to the coverage required above and Tenant shall not be relieved from the indemnification obligations of this Lease. If Tenant fails to comply with the requirements relating to self-insurance and insurance, Landlord may, after providing fifteen (15) days' notice to Tenant, obtain such insurance and Tenant shall pay to Landlord immediately on demand the premium cost thereof. It is expressly understood that the self-insurance permitted above does not relieve Tenant of its statutory obligations under New York Workers' Compensation laws. If Tenant self-insures under this Subsection and is obligated to defend Landlord under any provision of this Lease, then for any claims in excess of $3,000,000.00, Landlord shall have the right to engage separate counsel for its defense at Tenant's expense, and Tenant shall pay, as incurred from time to time, Landlord's reasonable attorneys' fees and disbursements relating to Landlord's defense. As used herein, "Tangible Net Worth" means the excess of total assets over total liabilities (in each case, determined in accordance with GAAP) excluding from the determination of total assets all assets which would be classified as intangible assets under GAAP, including, without limitation, goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises.

10.    DESTRUCTION OF THE PREMISES; PROPERTY LOSS OR DAMAGE.

A.    Repair of Damage.    If the Premises shall be damaged by fire or other casualty, then, Landlord, at its sole cost and expense, shall repair the roof, roof systems and structural elements of the Building, the ceiling slab and demising walls of the Premises and the Building Systems which do not exclusively serve the Premises (but not the distribution portions of the Building Systems within the Premises) to the point at which such Building Systems enter the Premises, all to the condition which existed on the date immediately preceding such fire or other casualty, promptly following notice thereof

by Tenant. Landlord shall have no obligation to repair any damage to, or to replace, any fixtures, furniture, furnishings, equipment or other property or effects of Tenant or any of Tenant's Alterations or improvements (including any HVAC system which serves only the Premises, any exterior signage or any of Tenant's Property), or any wall or floor finishings or coverings or other items not specifically set forth in the immediately preceding sentence, whether installed in the Premises before, on or after the Commencement Date. Tenant's obligations to pay all Minimum Rent and all other items of Rent shall continue in full force and effect and shall not abate during the period the Premises are affected by any such fire or other casualty or during the period of repair of the Premises after any such fire or other casualty; provided, however, that if Landlord has not substantially completed its restoration obligations within twelve (12) months from the date of casualty, the Rent shall abate for the period between the end of such twelve (12) months and the date of substantial completion of Landlord's restoration. Tenant shall (i) cooperate with Landlord in the restoration of the Premises and shall remove from the Premises as promptly as possible all of Tenant's salvageable inventory, movable equipment, furniture and other property, and (ii) repair the damage to Tenant's Property and restore the Premises within one hundred eighty (180) days after Landlord has substantially completed its restoration obligations.

B.    Termination Options.

(i)    Anything in Subsection A of this Article to the contrary notwithstanding, if the Premises are totally damaged or are rendered wholly untenantable, and if Landlord shall decide not to restore the Premises, or if the Building shall be so damaged by fire or other casualty that, in Landlord's opinion, either substantial alteration, demolition or reconstruction of the Building shall be required (whether or not the Premises shall have been damaged or rendered untenantable) or the Building, after its repair, alteration or restoration shall not be economically viable as a commercial building, then in any of such events, Landlord, at Landlord's option, may, not later than ninety (90) days following the damage, give Tenant a notice in writing terminating this Lease. If Landlord elects to terminate this Lease, the Term shall expire upon the tenth (10th) day after such notice is given, and Tenant shall vacate the Premises and surrender the same to Landlord. Upon the termination of this Lease under the conditions provided for in the next preceding sentence, Tenant's liability for Rent shall cease as of the day following such damage. Notwithstanding anything contained herein to the contrary, if less than thirty (30%) percent of the Building is damaged by casualty Landlord shall be required to restore.

(ii)    In the case of any fire or other casualty which affects the Premises to such a degree that Tenant is compelled to vacate the Premises, if Landlord shall not have substantially completed the making of the required repairs and restored and rebuilt the Premises (exclusive of Tenant's Alterations and Tenant's property which shall be the sole obligation of Tenant) within eighteen (18) months from the date of casualty, then provided no Event of Default exists, Tenant may terminate this Lease by giving Landlord thirty (30) days' written notice of termination within ten (10) days after the expiration of such eighteen (18) month period, and if such notice is given, the term of this Lease shall terminate on the thirtieth (30th) day after Landlord's receipt of such notice unless Landlord shall have substantially completed the required repairs and restored the Premises prior to the expiration of such thirty (30) day period in which case Tenant's termination notice shall be null and void.

C.    Provision Controlling.    The parties agree that this Article constitutes an express agreement governing any case of damage or destruction of the Premises or the Building by fire or other casualty, and that Section 227 of the Real Property Law of the State of New York, which provides for such contingency in the absence of an express agreement, and any other law of like import now or hereafter in force shall have no application in any such case.

259774-8-W                                  18

D.      Property Loss or Damage.     Any Building employee to whom any property shall be entrusted by or on behalf of Tenant shall be deemed to be acting as Tenant's agent with respect to such property and neither Landlord nor its agents shall be liable for any damage to property of Tenant or of others entrusted to employees of the Building, nor for the loss of or damage to any property of Tenant by theft or otherwise. Neither Landlord nor its agents shall be liable for any injury or damage to persons or property or interruption of Tenant's business resulting from fire, explosion, falling plaster, steam, gas, electricity, water, rain or snow or leaks from any part of the Building or from the pipes, appliances or plumbing works or from the roof, street or subsurface or from any other place or by dampness or by any other cause of whatsoever nature; nor shall Landlord or its agents be liable for any such damage caused by other tenants or persons in the Building or caused by construction of any private, public or quasi-public work; nor shall Landlord be liable (except as specifically set forth in this Lease) for any latent defect in the Premises or in the Building. Anything in this Lease to the contrary notwithstanding, nothing in this Lease shall be construed to relieve Landlord from responsibility directly to Tenant for any loss or damage caused directly to Tenant wholly or in part by the gross negligence or willful misconduct of Landlord. If at any time any windows of the Premises are temporarily closed, darkened or bricked-up for any reason whatsoever including, but not limited to, Landlord's own acts, or any of such windows are permanently closed, darkened or bricked-up if required by law or related to any construction upon property adjacent to the Real Property by Landlord or others, or if a sidewalk bridge or scaffolding is installed or erected in front of the Premises for the purpose of making any repairs, alterations or additions to the Building or any adjacent Building, Landlord shall not be liable for any damage Tenant may sustain thereby and Tenant shall not be entitled to any compensation therefor nor abatement of Rent nor shall the same release Tenant from its obligations hereunder nor constitute an eviction. Tenant shall give immediate notice to Landlord in case of fire or accident in the Premises or in the Building.

11.     CONDEMNATION.

A.      Condemnation.     If the whole or any substantial part of the Building or the Premises shall be acquired or condemned for any public or quasi-public use or purpose, this Lease and the Term shall end as of the date of the vesting of title with the same effect as if said date were the Expiration Date. If only a part of the Building or Premises shall be so acquired or condemned and Tenant can, in its reasonable opinion, operate its business in spite thereof, then this Lease shall continue in force and effect, except (i) if a part of the Premises is acquired or condemned, from and after the date of the vesting of title, the Rent shall be reduced in the proportion which the area of the part of the Premises so acquired or condemned bears to the total area of the Premises immediately prior to such acquisition or condemnation, (ii) if the part of the Building so acquired or condemned shall contain more than thirty (30%) percent of the total area of the Premises immediately prior to such acquisition or condemnation, or if, by reason of such acquisition or condemnation, Tenant no longer has reasonable means of access to the Premises, Tenant, at Tenant's option, may terminate this Lease, and (iii) whether or not the Premises shall be affected thereby and if such condemnation renders it uneconomic, in Landlord's reasonable opinion, to restore the Building, Landlord, at Landlord's option, may terminate this Lease. Any termination by Landlord or Tenant must be given within sixty (60) days following the date of notice of vesting of title. If any termination notice is given by Landlord or Tenant this Lease and the Term shall come to an end and expire five (5) days after the date of the termination notice with the same effect as if the date of expiration of said five (5) days were the Expiration Date. If a part of the Premises shall be so acquired or condemned and this Lease shall not be terminated pursuant to the foregoing provisions of this Subsection, Landlord, at Landlord's expense, shall restore that part of the Premises not so acquired or condemned to a self-contained rental unit. In the event of any termination of this Lease pursuant to the provisions of this Subsection A, the Rent shall be apportioned as of the date of termination and any prepaid portion of Rent for any period after such date shall be refunded by Landlord to Tenant.

B.    Award.    Subject to the next succeeding sentence, in the event of any such acquisition or condemnation, Landlord shall be entitled to receive the entire award for any such acquisition or condemnation, Tenant shall have no claim against Landlord for the value of any unexpired portion of the Term and Tenant hereby expressly assigns to Landlord all of its right in and to any such award. Nothing contained in this Subsection B shall be deemed to prevent Tenant from making a claim in any condemnation proceedings for the then value of its leasehold and for the unamortized value of any furniture, furnishings and fixtures, betterments or improvements installed by and at the sole expense of Tenant and included in such taking, all of which Landlord agrees it shall have no interest in.

12.    ASSIGNMENT AND SUBLETTING.

A.    Permitted Without Consent.    Tenant may assign this Lease or sublet the whole or any portion of the Premises and may grant licenses and concessions without Landlord's consent; provided that Tenant shall remain primarily liable for the full performance of this Lease.

B.    Notice of Proposed Transfer.    Notwithstanding anything to the contrary contained herein, if Tenant shall at any time or times during the Term desire to assign this Lease or sublet all of the Premises and the Premises shall no longer be used as a Circuit City store, Tenant shall give notice thereof to Landlord, which notice shall be accompanied by (i) a conformed or photostatic copy of the proposed assignment or sublease, the effective or commencement date of which shall be not less than sixty (60) nor more than one hundred and eighty (180) days after the giving of such notice, (ii) a statement setting forth in reasonable detail the identity of the proposed assignee or subtenant (a "**Transferee**"), the nature of its business and its proposed use of the Premises, (iii) current financial information with respect to the proposed Transferee, including, without limitation, its most recent financial report, and (iv) such additional information related to the proposed Transferee as Landlord shall reasonably request, if any.

C.    Landlord's Recapture Option.    The notice containing all of the information set forth in Subsection B of this Article shall be deemed an offer from Tenant to Landlord whereby Landlord (or Landlord's designee) may, at its option, (a) sublease the Premises from Tenant upon the terms and conditions hereinafter set forth (if the proposed transaction is a sublease), or (b) terminate this Lease (if the proposed transaction is an assignment or a sublease) (the foregoing being referred to as the "**Recapture Option**"). The Recapture Option may be exercised by Landlord by notice to Tenant at any time within forty five (45) days after the aforesaid notice has been given by Tenant to Landlord; and during such forty five (45) day period Tenant shall not assign this Lease nor sublet such space to any person or entity.

D.    Effect of Termination by Landlord.    If Landlord exercises its option to terminate this Lease, then (i) this Lease shall end and expire on the date that such assignment or sublet was to commence, (ii) the Minimum Rent and Additional Rent due hereunder shall be paid and apportioned to such date, and (iii) Landlord shall be free to and shall have no liability to Tenant if Landlord should lease the Premises (or any part thereof) to Tenant's prospective Transferee.

E.    Takeback by Landlord.

(i)    If Landlord exercises its option to sublet the Premises from Tenant, such sublease to Landlord or its designee (as subtenant) shall be at the lower of (a) the rental rate per rentable square foot of Minimum Rent and Additional Rent then payable pursuant to this Lease, or (b) the rentals set forth in the proposed sublease, and shall be for the same term as that of the proposed subletting, and such sublease:

259774-8-W                                  20

(a)    shall be expressly subject to all of the covenants, agreements, terms, provisions and conditions of this Lease except such as are irrelevant or inapplicable, and except as otherwise expressly set forth to the contrary in this Article;

(b)    shall be upon the same terms and conditions as those contained in the proposed sublease, except such as are irrelevant or inapplicable and except as otherwise expressly set forth to the contrary in this Article;

(c)    shall give the sublessee the unqualified and unrestricted right, without Tenant's permission, to assign such sublease or any interest therein and/or to sublet the Premises or any part or parts of the Premises and to make any and all changes, alterations and improvements in the Premises;

(d)    shall provide that any assignee or further subtenant of Landlord or its designee, may, at the election of Landlord, be permitted to make alterations, decorations and installations in the Premises or any part thereof and shall also provide in substance that any such alterations, decorations and installations in such space therein made by any assignee or subtenant of Landlord or its designee may be removed, in whole or in part, by such assignee or subtenant, at its option, prior to or upon the expiration or other termination of such sublease provided that such assignee or subtenant, at its expense, shall repair any damage and injury to such space so sublet caused by such removal and Tenant shall be relieved hereunder with respect to any liability and obligation related thereto; and

(e)    shall provide that (1) the parties to such sublease expressly negate any intention that any estate created under such sublease be merged with any other estate held by either of said parties, (2) any assignment or subletting by Landlord or its designee (as the subtenant) may be for any purpose or purposes that Landlord, in Landlord's uncontrolled discretion, shall deem suitable or appropriate, and (3) if the expiration of the sublease is coterminous with the expiration of the Term of this Lease, that at the expiration of the term of such sublease, Tenant will accept the Leaseback Space in its then existing condition, subject to the obligations of the sublessee to make such repairs thereto as may be necessary to preserve the Premises in good order and condition.

(ii)    If Landlord exercises its option to sublet the Premises, (a) Landlord shall indemnify and save Tenant harmless from all obligations under this Lease as to the Premises during the period of time it is so sublet to Landlord; (b) performance by Landlord, or its designee, under a sublease of the Premises shall be deemed performance by Tenant of any similar obligation under this Lease and any default under any such sublease shall not give rise to a default under a similar obligation contained in this Lease nor shall Tenant be liable for any default under this Lease or deemed to be in default hereunder if such default is occasioned by or arises from any act or omission of the tenant under such sublease or is occasioned by or arises from any act or omission of any occupant holding under or pursuant to any such sublease; and (c) Tenant shall have no obligation, at the expiration or earlier termination of the Term, to remove any alteration, installation or improvement made in the Premises by Landlord (or its designee).

F.    Conditions for Subletting or Assignment.    In the event Landlord does not exercise the Recapture Option, any assignment or subletting shall be subject to the following conditions:

(i)    Tenant shall have complied with the provisions of Subsection B of this Article and Landlord shall not have exercised the Recapture Option;

(ii)    The use of the Premises for the Permitted Uses or such other retail use and Landlord, in the reasonable exercise of its discretion, shall consent to (it being understood and agreed,

however, that under no circumstances may the Premises be used for any of the Prohibited Uses), and will not violate any negative covenant as to use contained in any other retail lease of space in the Building;

(iii)    There shall be no subdivision of any floor of the Premises into more than two (2) units;

(iv)    The proposed Transferee shall not be entitled, directly or indirectly, to diplomatic or sovereign immunity and shall be subject to the service of process in, and the jurisdiction of the courts of New York State;

(v)    There exists no Event of Default as of the effective date of the proposed assignment or commencement date of the proposed sublease.

Except for any subletting by Tenant to Landlord or its designee pursuant to the provisions of this Article, each subletting or assignment shall be subject to all of the covenants, agreements, terms, provisions and conditions contained in this Lease. Tenant further agrees that notwithstanding any such subletting, no other and further subletting of the Premises by Tenant or any person claiming through or under Tenant shall or will be made except upon compliance with and subject to the provisions of this Article. If Landlord shall exercise the Recapture Option, Tenant shall indemnify, defend and hold harmless Landlord against and from any and all loss, liability, damages, costs, and expenses (including reasonable counsel fees) resulting from any claims that may be made against Landlord by the proposed Transferee or by any brokers or other persons claiming a commission or similar compensation in connection with the proposed assignment or sublease, unless Tenant shall have clearly contractually conditioned its obligations upon Landlord's waiver of its recapture rights.

G.    Future Requests.    In the event that (i) Landlord fails to exercise the Recapture Option, and (ii) Tenant fails to execute and deliver the assignment or sublease to which Landlord consented within one hundred twenty (120) days after the giving of such consent, then, Tenant shall again comply with all of the provisions and conditions of Subsection B of this Article before assigning this Lease or subletting all or part of the Premises.

H.    Sublease Provisions.    With respect to each and every sublease or subletting authorized by Landlord under the provisions of this Lease, it is further agreed that:

(i)    No subletting shall be for a term ending later than one (1) day prior to the Expiration Date of this Lease;

(ii)    No sublease shall be delivered, and no subtenant shall take possession of the Premises or any part thereof, until an executed counterpart of such sublease has been delivered to Landlord;

(iii)    Each sublease shall provide that it is subject and subordinate to this Lease and to the matters to which this Lease is or shall be subordinate, and that in the event of termination, re-entry or dispossession by Landlord under this Lease Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor, under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not (a) be liable for any previous act or omission of Tenant under such sublease, (b) be subject to any counterclaim, offset or defense, not expressly provided in such sublease, which theretofore accrued to such subtenant against Tenant, or (c) be bound by any previous modification of such sublease or by any

previous prepayment of more than one (1) month's Rent. The provisions of this Article shall be self-operative and no further instrument shall be required to give effect to this provision.

(iv)     If Landlord shall recover or come into possession of the Premises before the date herein fixed for the termination of this Lease, Landlord shall have the right, at its option, to take over any and all subleases or sublettings of the Premises or any part thereof made by Tenant and to succeed to all the rights of said subleases and sublettings or such of them as it may elect to take over.

(v)     Every subletting hereunder is subject to the condition and by its acceptance of and entry into a sublease, each subtenant thereunder shall be deemed conclusively to have thereby agreed from and after the termination of this Lease or re-entry by Landlord hereunder or or if Landlord shall otherwise succeed to Tenant's estate in the Premises, that such subtenant shall waive any right to surrender possession or to terminate the sublease and, at Landlord's election, such subtenant shall be bound to Landlord for the balance of the term of such sublease and shall attorn to and recognize Landlord, as its landlord, under all of the then executory terms of such sublease, except that Landlord shall not (i) be liable for any previous act, omission or negligence of Tenant under such sublease, (ii) be subject to any counterclaim, defense or offset not expressly provided for in such sublease, which theretofore accrued to such subtenant against Tenant, (iii) be bound by any previous modification or amendment of such sublease or by any previous prepayment of more than one (1) month's rent and Additional Rent which shall be payable as provided in the sublease, (iv) be obligated to repair the subleased space or the Building or any part thereof, in the event of total or substantial total damage beyond such repair as can reasonably be accomplished from the net proceeds of insurance actually made available to Landlord, (v) be obligated to repair the subleased space or the Building or any part thereof, in the event of partial condemnation beyond such repair as can reasonably be accomplished from the net proceeds of any award actually made available to Landlord as consequential damages allocable to the part of the subleased space or the Building not taken, or (vi) be obligated to perform any work in the subleased space of the Building or to prepare them for occupancy beyond Landlord's obligations under this Lease, and the subtenant shall execute and deliver to Landlord any instruments Landlord may reasonably request to evidence and confirm such attornment.

I.     Recapture Payment.

(i)     Notwithstanding anything to the contrary contained herein, in the event Landlord exercises its Recapture Option, it shall pay to Tenant the Recapture Cost. The Recapture Cost shall be payable on the effective date of the Recapture Option.

(ii)     As used herein, the "Recapture Cost" shall mean the lesser of (a) fifty (50%) percent of the hard costs of Tenant's Initial Work such as floors, Building Systems and windows (but excluding Tenant's fixtures and furnishings and items which are particular to Tenant's retail operations such as its signage) which is not specific to Tenant's store operations (and Tenant shall be required to provide Landlord with evidence of those costs within ninety (90) days of the Rent Commencement Date), and (b) the amount that a third party Transferee in a bona fide offer agrees to pay Tenant for the improvements made by Tenant to the Premises.

J.     Assumption By Transferee; Liability of Tenant.     Any assignment or subletting shall be made only if, and shall not be effective until, the Transferee shall execute, acknowledge and deliver to Landlord an agreement in form and substance reasonably satisfactory to Landlord whereby the Transferee shall assume the obligations of this Lease on the part of Tenant to be performed or observed (in the case of a sublease, to the extent allocated to the subtenant by the sublease). Notwithstanding any assignment or subletting and/or acceptance of Rent by Landlord from any Transferee, Tenant shall and will remain

259774-8-W                                    23

fully liable for the payment of the Rent due and to become due hereunder and for the performance of all the covenants, agreements, terms, provisions and conditions contained in this Lease on the part of Tenant to be performed and all acts and omissions of any Transferee or anyone claiming under or through any Transferee which shall be in violation of any of the obligations of this Lease shall be deemed to be a violation by Tenant. The joint and several liability of Tenant and any immediate or remote successor in interest of Tenant and the due performance of the obligations of this Lease on Tenant's part to be performed or observed shall not be discharged, released or impaired in any respect by any agreement or stipulation made by Landlord extending the time, or modifying any of the obligations, of this Lease, or by any waiver or failure of Landlord to enforce any of the obligations of this Lease.

13.     ACCESS TO PREMISES.     Landlord or Landlord's agents shall have the right to enter the Premises at all reasonable times to examine the same, to show them to prospective purchasers, mortgagees or lessees of the Building or space therein, and to make such repairs, alterations, improvements or additions as Landlord may deem necessary or desirable to the Premises or to any other portion of the Building or which Landlord may elect to perform following an Event of Default resulting from Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this Lease, or for the purpose of complying with Legal Requirements and Landlord shall be allowed to take all material into and upon the Premises that may be required therefor without the same constituting an eviction or constructive eviction of Tenant in whole or in part and the Rent shall in nowise abate while said repairs, alterations, improvements or additions are being made, by reason of loss or interruption of business of Tenant, or otherwise. During the one (1) year prior to the Expiration Date or the expiration of any renewal or extended term, Landlord may exhibit the Premises to prospective tenants thereof. Except in the event of an emergency or where such entry is required pursuant to Legal Requirements, Landlord's right of entry pursuant to this Article shall be exercised following reasonable advance notice to Tenant (which notice may be oral) and Landlord agrees that while exercising such right of entry or making such repairs, replacements or improvements, Landlord shall use reasonable efforts to minimize interference with the conduct of Tenant's business, without however, the necessity of incurring any overtime or other additional expense. If Tenant shall not be personally present to open and permit an entry into the Premises, at any time, when for any reason an entry therein shall be permissible hereunder, Landlord or Landlord's agents may enter the same by a master key, or in the event of an emergency may forcibly enter the same, without rendering Landlord or such agents liable therefor (if during such entry Landlord or Landlord's agents shall accord reasonable care to Tenant's property), and without in any manner affecting the obligations and covenants of this Lease. Landlord also shall have the right at any time, without the same constituting an actual or constructive eviction and without incurring any liability to Tenant therefor, to change the arrangement and/or location of entrances or passageways, doors and doorways, and corridors, elevators, stairs, toilets or other public parts of the Building, if any; provided, however that Landlord shall not have such right with respect to any of the foregoing which exclusively serve the Premises. Tenant understands and agrees that all parts (except surfaces facing the interior of the Premises) of all walls, windows and doors bounding the Premises (including exterior Building walls, core corridor walls, doors and entrances), all balconies, terraces and roofs adjacent to the Premises, all space in or adjacent to the Premises used for shafts, stacks, stairways, chutes, pipes, conduits, ducts, fan rooms, heating, air cooling, plumbing and other mechanical facilities, service closets and other Building facilities which serve portions of the Building other than the Premises are not part of the Premises, and Landlord shall have the use thereof, as well as access thereto through the Premises for the purposes of operation, maintenance, alteration and repair.

14.     LANDLORD'S LIABILITY.     If the Building shall be sold, leased or otherwise transferred, Landlord shall be relieved of all future obligations and liabilities hereunder and the transferee shall be deemed to have assumed and agreed to perform all such obligations of liabilities of Landlord under this Lease. In the event of such sale, lease or transfer, Landlord shall also be relieved of all existing

obligations and liabilities hereunder provided that the transferee assumes in writing such obligations. Neither the shareholders, directors or officers of Landlord, if Landlord is a corporation, nor the partners comprising Landlord (nor any of the shareholders, directors or officers of such partners), if Landlord is a partnership, nor any member of Landlord, if Landlord is a limited liability company (collectively, the "Parties"), shall be liable for the performance of Landlord's obligations under this Lease. Tenant shall look solely to Landlord to enforce Landlord's obligations hereunder and shall not seek any damages against any of the Parties. The liability of Landlord for Landlord's obligations under this Lease shall not exceed and shall be limited to Landlord's interest in the Building and the Real Property and Tenant shall not look to any other property or assets of Landlord or the property or assets of any of the Parties in seeking either to enforce Landlord's obligations under this Lease or to satisfy a judgment for Landlord's failure to perform such obligations.

15.    DEFAULT.

A.    Events of Default.    This Lease and the term and estate hereby granted are subject to the limitations that upon the occurrence, at any time prior to or during the Term, of any one or more of the following events (referred to as "Events of Default"):

(1)    if Tenant shall default in the payment when due of any installment of Rent or in the payment when due of any Additional Rent, and such default shall continue for a period of five (5) days after written notice thereof; or

(2)    if Tenant shall default in the observance or performance of any term, covenant or condition of this Lease on Tenant's part to be observed or performed (other than the covenants for the payment of Rent and Additional Rent) and Tenant shall fail to remedy such default within thirty (30) days after notice by Landlord to Tenant of such default, or if such default is of such a nature that it cannot be completely remedied within said period of thirty (30) days and Tenant shall not commence within said period of thirty (30) days, or shall not thereafter diligently prosecute to completion all steps necessary to remedy such default; or

(3)    if Tenant shall default in the observance or performance of any term, covenant or condition on Tenant's part to be observed or performed under any other lease with Landlord of space in the Building and such default shall continue beyond any grace period set forth in such other lease for the remedying of such default; or

(4)    if the Premises shall become deserted or abandoned; or

(5)    if Tenant's interest in this Lease shall devolve upon or pass to any person, whether by operation of law or otherwise, except as may be expressly permitted herein; or

(6)    if Tenant shall file a voluntary petition in bankruptcy or insolvency, or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy act or any other present or future applicable federal, state or other statute or law, or shall make an assignment for the benefit of creditors or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Tenant or of all or any part of Tenant's property; or

(7)    if, within sixty (60) days after the commencement of any proceeding against Tenant, whether by the filing of a petition or otherwise, seeking any reorganization, arrangement,

composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy act or any other present or future applicable federal, state or other statute or law, such proceeding shall not have been dismissed, or if, within sixty (60) days after the appointment of any trustee, receiver or liquidator of Tenant, or of all or any part of Tenant's property, without the consent or acquiescence of Tenant, such appointment shall not have been vacated or otherwise discharged, or if any execution or attachment shall be issued against Tenant or any of Tenant's property pursuant to which the Premises shall be taken or occupied or attempted to be taken or occupied;

then, in any of said cases, at any time prior to or during the Term, of any one or more of such Events of Default, Landlord, at any time thereafter, at Landlord's option, may give to Tenant a three (3) days' notice of termination of this Lease and, in the event such notice is given, this Lease and the Term shall come to an end and expire (whether or not the Term shall have commenced) upon the expiration of said three (3) days with the same effect as if the date of expiration of said three (3) days were the Expiration Date, but Tenant shall remain liable for damages as provided in Article 16 hereof.

B.    Effect of Bankruptcy.

(i)    If, at any time, (a) Tenant shall be comprised of two (2) or more persons, or (b) Tenant's obligations under this Lease shall have been guaranteed by any person other than Tenant, or (c) Tenant's interest in this Lease shall have been assigned, the word "Tenant", as used in clauses (6) and (7) of Subsection A of this Article, shall be deemed to mean any one or more of the persons primarily or secondarily liable for Tenant's obligations under this Lease. Any monies received by Landlord from or on behalf of Tenant during the pendency of any proceeding of the types referred to in said clauses (6) and (7) shall be deemed paid as compensation for the use and occupation of the Premises and the acceptance of any such compensation by Landlord shall not be deemed an acceptance of rent or a waiver on the part of Landlord of any rights under said Subsection A.

(ii)    If a termination pursuant to Subsection A of this Article is stayed by order of any court having jurisdiction over any Tenant Bankruptcy Proceeding, or by federal or state statute, then, (a) following the lifting, vacating or expiration of any such stay, or (b) if the trustee appointed in any such Bankruptcy Proceeding, Tenant or Tenant as debtor-in-possession shall fail to assume Tenant's obligations under this Lease within the period prescribed therefor by law or within sixty (60) days after entry of the order for relief or as may be allowed by the court, or (c) if said trustee, Tenant or Tenant as debtor-in-possession shall fail to provide adequate protection of Landlord's right, title and interest in and to the Premises or adequate assurance of the complete and continuous future performance of Tenant's obligations under this Lease (as described below) the Landlord, to the extent permitted by law or by leave of the court having jurisdiction over such Bankruptcy Proceeding, shall have the right, at its election, to terminate this Lease on ten (10) days' notice to Tenant, Tenant as debtor-in-possession or said trustee and upon the expiration of said ten (10) day period this Lease shall cease and expire as aforesaid and Tenant, Tenant as debtor-in-possession or said trustee shall immediately quit and surrender the Premises as aforesaid.

(iii)    If this Lease is assumed and assigned to any person or entity pursuant to the Bankruptcy Code, then, consistent with Section 365 of the Bankruptcy Code, any and all monies or other consideration payable or otherwise to be delivered in connection with such assumption and assignment shall be paid or delivered to Landlord, and shall be and remain the exclusive property of Landlord and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code. Any and all monies or other consideration constituting Landlord's property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid to or turned over to Landlord.

(iv)     Any person to which this Lease is assigned pursuant to the Bankruptcy Code shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assumption and assignment. Any such assignee shall execute and deliver to Landlord upon demand an instrument confirming such assumption.

(v)     If Tenant assumes this Lease and proposes to assign the same pursuant to the provisions of the Bankruptcy Code to any person who makes a bona fide offer to accept an assignment of this Lease on terms acceptable to Tenant, then, except as otherwise required by the Bankruptcy Code, notice of such proposed assignment shall be given to Landlord by Tenant no later than twenty (20) days after receipt by Tenant, but in any event no later than ten (10) days prior to the date that Tenant makes application to a court of competent jurisdiction for authority and approval to enter into such assumption and assignment. Such notice shall set forth (a) the name and address of such proposed assignee, (b) all of the terms and conditions of such offer, and (c) adequate assurance of future performance by such person under the Lease, including, but not limited to, the assurance referred to in Section 365(b)(3) of the Bankruptcy Code. Landlord shall have the prior right and option, to be exercised by notice given to Tenant at any time prior to the effective date of such proposed assignment, to accept an assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such person, less any brokerage commissions which would otherwise be payable by Tenant out of the consideration to be paid by such proposed assignee in connection with such assignment.

(vi)     If, at any time after the originally named Tenant herein may have assigned Tenant's interest in this Lease, this Lease is disaffirmed or rejected in any Bankruptcy Proceeding, or in any similar proceeding, or in the event of the termination of this Lease by reason of a Bankruptcy Proceeding, or by reason of lapse of time following notice of termination given pursuant to this Article based upon any of the Events of Default set forth in this Article, then any prior Tenant, including the originally named Tenant, upon request of Landlord given within thirty (30) days next following any such disaffirmance, rejection or termination (and actual notice thereof to Landlord in the event of a disaffirmance or rejection or in the event of termination other than by act of Landlord), shall (a) pay to Landlord all Minimum Rent and all additional rent due and owing by the assignee to Landlord under this Lease to and including the date of such disaffirmance, rejection, or termination, and (b) as "tenant" enter into a new lease with Landlord of the Premises for a term commencing on the effective date of such disaffirmance, rejection or termination and ending on the Expiration Date, unless sooner terminated as in such lease provided, at the same Minimum Rent and upon the then executory terms, covenants and conditions as are contained in this Lease, except that (1) Tenant's rights under the new lease shall be subject to the possessory rights of the assignee under this Lease and the possessory rights of any person claiming through or under such assignee or by virtue of any statute or of any order of any court, (2) such new lease shall require all defaults existing under this Lease to be cured by Tenant with due diligence, and (3) such new lease shall require Tenant to pay all Rent reserved in this Lease, which, had this Lease not been so disaffirmed, rejected or terminated, would have accrued hereunder after the date of such disaffirmance, rejection or termination with respect to any period prior thereto. If any such prior Tenant defaults in its obligation to enter into said new lease for a period of thirty (30) days next following Landlord's request therefor, then, in addition to all other rights and remedies by reason of such default, either at law or in equity, Landlord shall have the same rights and remedies against such Tenant as if such Tenant had entered into such new lease and such new lease had thereafter been terminated as of the commencement date thereof by reason of such Tenant's default thereunder.

(vii)     Notwithstanding anything in this Lease to the contrary, all amounts payable by Tenant to or on behalf of Landlord under this Lease, whether or not expressly denominated Minimum Rent, Tax Payment, Additional Rent, or Rent, shall constitute rent for the purposes of Section 502(b)(6) of the Bankruptcy Code.

259774-8-W                    27

(viii)    As used herein, (a) "**Bankruptcy Code**" shall mean 11 U.S.C. Section 101 *et seq.* or any statute of similar nature and purpose, and (b) the term "**adequate assurance of future performance**" shall mean that any proposed assignee shall, among other things (1) deposit with Landlord on the assumption of this Lease an amount equal to the then Minimum Rent as security for the faithful observance and performance by such assignee of the terms and obligations of this Lease, which sum shall be held by Landlord, (2) furnish Landlord with financial statements of such assignee for the prior three (3) fiscal years, as finally determined after an audit and certified as correct by a certified public accountant, which financial statements show a net worth reasonably acceptable to Landlord, and (3) provide such other information or take such other action as Landlord, in its reasonable judgment, determines is necessary to provide adequate assurance of the performance by such assignee of its obligations under this Lease.

C.    Conditional Limitation.    Nothing contained in this Article shall be deemed to require Landlord to give the notices herein provided for prior to the commencement of a summary proceeding for non-payment of rent or a plenary action for recovery of rent on account of any default in the payment of the same, it being intended that such notices are for the sole purpose of creating a conditional limitation hereunder pursuant to which this Lease shall terminate and if Tenant thereafter remains in possession after such termination if Tenant shall do so as a holdover tenant.

D.    Repeated Defaults.    Tenant expressly recognizes that Tenant's due and punctual performance of all its obligations under this Lease throughout the term hereof is of paramount importance to Landlord, and, without limiting any of the provisions of this Lease, Tenant agrees that, if Tenant (i) shall fail to pay for five (5) days after it becomes due an installment of Minimum Rent or any Additional Rent for two (2) consecutive months or for a total of three (3) months during the Term, or (ii) shall default in the timely performance of any other obligation of Tenant under this Lease with respect to which Landlord shall have given Tenant notice of default, and such default shall occur more than two (2) times in any period of twelve (12) months, then notwithstanding that such failure or other default shall have been cured within the applicable grace period provided in this Lease, any further similar default shall be deemed to be deliberate and Landlord thereafter may, without further notice of default, serve a three (3) day notice of cancellation of this Lease as and with the effects provided in Subsection A of this Article.

16.    REMEDIES AND DAMAGES.

A.    Landlord's Remedies.

(1)    If an Event of Default shall occur and be continuing, or if this Lease and the Term shall expire and come to an end as provided in Article 15:

(a)    Landlord and its agents and servants may immediately, or at any time after such default or after the date upon which this Lease and the Term shall expire and come to an end, re-enter the Premises or any part thereof, either by summary proceedings, or by any other applicable action or proceeding, (without being liable to indictment, prosecution or damages therefor), and may repossess the Premises and dispossess Tenant and any other persons from the Premises and remove any and all of their property and effects from the Premises; and

(b)    Landlord, at Landlord's option, may relet the whole or any part or parts of the Premises from time to time, either in the name of Landlord or otherwise, to such tenant or tenants, for such term or terms ending before, on or after the Expiration Date, at such rental or rentals and upon such other conditions, which may include concessions and free rent periods, as Landlord, in its sole discretion, may determine. Landlord shall have no obligation to relet the Premises or any part thereof and

259774-8-W                                      28

shall in no event be liable for refusal or failure to relet the Premises or any part thereof, or, in the event of any such reletting, for refusal or failure to collect any rent due upon any such reletting, and no such refusal or failure shall operate to relieve Tenant of any liability under this Lease or otherwise to affect any such liability; Landlord, at Landlord's option, may make such repairs, replacements, alterations, additions, improvements, decorations and other physical changes in and to the Premises as Landlord, in its sole discretion, considers advisable or necessary in connection with any such reletting or proposed reletting, without relieving Tenant of any liability under this Lease or otherwise affecting any such liability.

(2)     Tenant hereby waives the service of any notice of intention to re-enter or to institute legal proceedings to that end which may otherwise be required to be given under any present or future law. Tenant, on its own behalf and on behalf of all persons claiming through or under Tenant, including all creditors, does further hereby waive any and all rights which Tenant and all such persons might otherwise have under any present or future law to redeem the Premises, or to re-enter or repossess the Premises, or to restore the operation of this Lease, after (i) Tenant shall have been dispossessed by a judgment or by warrant of any court or judge, or (ii) any re-entry by Landlord, or (iii) any expiration or termination of this Lease and these Premises, whether such dispossess, re-entry, expiration or termination shall be by operation of law or pursuant to the provisions of this Lease. In the event of a breach or threatened breach by Tenant, or any persons claiming through or under Tenant, of any term, covenant or condition of this Lease on Tenant's part to be observed or performed, Landlord shall have the right to enjoin such breach and the right to invoke any other remedy allowed by law or in equity as if re-entry, summary proceedings and other special remedies were not provided in this Lease for such breach. The right to invoke the remedies hereinbefore set forth are cumulative and shall not preclude Landlord from invoking any other remedy allowed at law or in equity.

B.     Damages.

(1)     If this Lease and the Term shall expire and come to an end as provided in Article 15, or by or under any summary proceeding or any other action or proceeding, or if Landlord shall re-enter the Premises as provided in Subsection A of this Article, or by or under any summary proceeding or any other action or proceeding, then, in any of said events:

(a)     Tenant shall pay to Landlord all Rent, Additional Rent and other charges payable under this Lease by Tenant to Landlord to the date upon which this Lease and the Term shall have expired and come to an end or to the date of re-entry upon the Premises by Landlord, as the case may be;

(b)     Tenant also shall be liable for and shall pay to Landlord, as damages, any deficiency (referred to as **"Deficiency"**) between the Rent reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term and the net amount, if any, of rents collected under any reletting effected pursuant to the provisions of Subsection A(1) of this Article for any part of such period (first deducting from the rents collected under any such reletting all of Landlord's expenses in connection with the termination of this Lease, or Landlord's reentry upon the Premises and with such reletting including, but not limited to, all repossession costs, brokerage commissions, legal expenses, attorneys' fees and disbursements, alteration costs and other expenses of preparing the Premises for such reletting); any such Deficiency shall be paid in monthly installments by Tenant on the days specified in this Lease for payment of installments of Rent, Landlord shall be entitled to recover from Tenant each monthly Deficiency as the same shall arise, and no suit to collect the amount of the Deficiency for any month shall prejudice Landlord's right to collect the Deficiency for any subsequent month by a similar proceeding; and

259774-8-W                                29

(c)    whether or not Landlord shall have collected any monthly Deficiencies as aforesaid, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, in lieu of any further Deficiencies as and for liquidated and agreed final damages, a sum equal to the amount by which the Rent reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term exceeds the then fair and reasonable rental value of the Premises for the same period, less the aggregate amount of Deficiencies theretofore collected by Landlord pursuant to the provisions of Subsection B(1)(b) of this Article for the same period (which amounts shall first be discounted to present value using the "prime rate" announced by Citibank, N.A. from time to time); if, before presentation of proof of such liquidated damages to any court, commission or tribunal, the Premises, or any part thereof, shall have been relet by Landlord for the period which otherwise would have constituted the unexpired portion of the Term, or any part thereof, the amount of rent reserved upon such reletting shall be deemed, prima facie, to be the fair and reasonable rental value for the part or the whole of the Premises so relet during the term of the reletting.

(2)    If the Premises, or any part thereof, shall be relet together with other space in the Building after an Event of Default, the rents collected or reserved under any such reletting and the expenses of any such reletting shall be equitably apportioned for the purposes of this Subsection B. Tenant shall in no event be entitled to any rents collected or payable under any reletting, whether or not such rents shall exceed the Rent reserved in this Lease. Solely for the purposes of this Article, the term "Rent" as used in Subsection B(1) of this Article shall mean the Rent in effect immediately prior to the date upon which this Lease and the Term shall have expired and come to an end, or the date of re-entry upon the Premises by Landlord, as the case may be, adjusted to reflect any increase or decrease pursuant to the provisions of Article 3 hereof for the Comparison Year immediately preceding such event. Nothing contained in Article 15 or this Article shall be deemed to limit or preclude the recovery by Landlord from Tenant of the maximum amount allowed to be obtained as damages by any statute or rule of law, or of any sums or damages to which Landlord may be entitled in addition to the damages set forth in Subsection B(1) of this Article.

C.    Legal Fees.

(i)    In the event either Tenant or Landlord defaults in the performance of any of the terms, covenants, conditions, agreements or provisions contained in this Lease and Landlord or Tenant employs attorneys and brings suit in connection with the enforcement of this Lease or any provision hereof or the exercise of any of its remedies hereunder, then the prevailing party (as determined by the trier of fact) in any suit so instituted shall be promptly reimbursed by the other party for all reasonable attorneys' fees so incurred.

(ii)    Tenant's obligations under this Subsection C shall survive the expiration of the Term hereof or any earlier termination of this Lease.

17.    FEES AND EXPENSES.

A.    Curing Tenant's Defaults.    If there shall be an Event of Default by Tenant in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any Article of this Lease, Landlord may immediately in case of emergency or on twenty (20) days' written notice in cases where there is no emergency, perform the same for the account of Tenant, and if Landlord makes any expenditures or incurs any obligations for the payment of money in connection therewith including, but not limited to reasonable attorneys' fees and disbursements in instituting, prosecuting or defending any action or proceeding, such sums paid or obligations incurred with interest and costs shall be deemed to be Additional Rent hereunder and shall be