paid by Tenant to Landlord within five (5) days of rendition of any bill or statement to Tenant therefor. As used in this subparagraph "emergency" shall mean a situation where there is an immediate risk of injury to persons or of material property damage.

      B.    Late Charges.

      (i)    If any installment of Minimum Rent or any Additional Rent shall not be paid within five (5) days after such installment shall have first become due, Tenant shall also pay to Landlord (a) an administrative late charge in the amount of four (4%) percent of the overdue amount, and (b) interest thereon at the Interest Rate from the due date until such installment of Minimum Rent or Additional Rent is fully paid. Such administrative late charge and interest charge shall be due and payable as Additional Rent with the next monthly installment of Minimum Rent.

      (ii)    If any check delivered to Landlord in full or partial payment of any amounts due to Landlord pursuant to the terms of this Lease shall not be honored by reason of insufficient or uncollected funds or for any other reason, then Tenant shall pay to Landlord a service charge on account thereof in the amount of $500.00, which service charge shall be due and payable as Additional Rent with the next monthly installment of Minimum Rent.

18.    NO REPRESENTATIONS BY LANDLORD.    Landlord or Landlord's agents have made no representations or promises with respect to the Building, the Real Property, the Premises or Taxes or any other matter related to this Lease and Tenant's occupancy of the Premises, except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth herein. All references in this Lease to the consent or approval of Landlord shall be deemed to mean the written consent of Landlord or the written approval of Landlord and no consent or approval of Landlord shall be effective for any purpose unless such consent or approval is set forth in a written instrument executed by Landlord.

19.    END OF TERM.

      A.    Surrender of Premises.    Upon the expiration or other termination of the Term, Tenant shall quit and surrender to Landlord the Premises, broom clean, in good order and condition, ordinary wear and tear and damage for which Tenant is not responsible under the terms of this Lease excepted, and Tenant may remove all of its property pursuant to Article 4. Tenant's obligation to observe or perform this covenant shall survive the expiration or sooner termination of the Term. If the last day of the Term or any renewal thereof falls on Saturday or Sunday this Lease shall expire on the business day immediately preceding. Tenant expressly waives, for itself and for any person claiming through or under Tenant, any rights which Tenant or any such person may have under the provisions of Section 2201 of the New York Civil Practice Law and of any successor law of like import then in force in connection with any holdover summary proceedings which Landlord may institute to enforce the provisions of this Article. In addition, the parties recognize and agree that the damage to Landlord resulting from any failure by Tenant to timely surrender possession of the Premises as aforesaid will be substantial, will exceed the amount of the monthly installments of the Rent theretofore payable hereunder, and will be impossible to accurately measure. Tenant therefore agrees that if possession of the Premises is not surrendered to Landlord within twenty-four (24) hours after the Expiration Date or sooner termination of the Term, in addition to any other rights or remedy Landlord may have hereunder or at law, Tenant shall pay to Landlord for each month and for each portion of any month during which Tenant holds over in the Premises after the Expiration Date or sooner termination of this Lease, a sum equal to the greater of (i) the then fair market rental value for the Premises as determined by Landlord, and (ii) two (2) times the aggregate of that portion of the Rent and the Additional Rent which was payable under this Lease during the last month of

the Term. Nothing herein contained shall be deemed to permit Tenant to retain possession of the Premises after the Expiration Date or sooner termination of this Lease and no acceptance by Landlord of payments from Tenant after the Expiration Date or sooner termination of the Term shall be deemed to be other than on account of the amount to be paid by Tenant in accordance with the provisions of this Article, which provisions shall survive the Expiration Date or sooner termination of this Lease.

      B.     Holdover by Tenant.   If Tenant shall hold-over or remain in possession of any portion of the Premises for a period of thirty (30) days beyond the Expiration Date of this Lease, notwithstanding the acceptance of any Rent and Additional Rent paid by Tenant pursuant to Subsection A of this Article, Tenant shall be subject not only to summary proceeding and all damages related thereto, but also to any damages arising out of lost opportunities (and/or new leases) by Landlord to re-let the Premises (or any part thereof). All damages to Landlord by reason of such holding over by Tenant may be the subject of a separate action and need not be asserted by Landlord in any summary proceedings against Tenant.

20.     QUIET ENJOYMENT.   Landlord covenants and agrees with Tenant that upon Tenant paying the Rent and Additional Rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Premises subject, nevertheless, to the terms and conditions of this Lease and to all Superior Leases and Mortgages, provided that an SNDA is provided as required by this Lease.

21.     [INTENTIONALLY OMITTED.]

22.     NO WAIVER.   No act or thing done by Landlord or Landlord's agents during the Term shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such surrender shall be valid unless in writing signed by Landlord. No employee of Landlord or of Landlord's agents shall have any power to accept the keys of the Premises prior to the termination of this Lease. The delivery of keys to any employee of Landlord or of Landlord's agents shall not operate as a termination of this Lease or a surrender of the Premises. The failure of either party to seek redress for violation of, or to insist upon the strict performance of, any covenant or condition of this Lease, or any of the Rules and Regulations set forth herein, shall not prevent a subsequent act, which would have originally constituted a violation, from having all force and effect of an original violation. The receipt by Landlord of Rent with knowledge of the breach of any covenant of this Lease shall not be deemed a waiver of such breach. The failure of Landlord to enforce any of the Rules and Regulations set forth, or hereafter adopted, against Tenant and/or any other tenant in the Building shall not be deemed a waiver of any such Rules and Regulations. No provision of this Lease shall be deemed to have been waived by either party unless such waiver be in writing signed by such party. No payment by Tenant or receipt by Landlord of a lesser amount than the monthly Rent herein stipulated shall be deemed to be other than on account of the earliest stipulated Rent, or as Landlord may elect to apply same, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Rent or pursue any other remedy in this Lease provided. This Lease contains the entire agreement between the parties and all prior negotiations and agreements are merged in this Lease. Any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

23.     WAIVER OF TRIAL BY JURY.   It is mutually agreed by and between Landlord and Tenant that they shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the

Premises, and/or any claim of injury or damage, or for the enforcement of any remedy under any statute, emergency or otherwise. It is further mutually agreed that in the event Landlord commences any summary proceeding (whether for nonpayment of rent or because Tenant continues in possession of the Premises after the expiration or termination of the Term), Tenant will not interpose any counterclaim (except for mandatory or compulsory counterclaims) of whatever nature or description in any such proceeding.

24. **INABILITY TO PERFORM.** Subject to the express provisions contained in this Lease, this Lease and the obligation of Tenant to pay Rent and Additional Rent hereunder and perform all of the other covenants and agreements hereunder on the part of Tenant to be performed shall in nowise be affected, impaired or excused because Landlord is unable to fulfill any of its obligations under this Lease expressly or impliedly to be performed by Landlord or because Landlord is unable to make, or is delayed in making any repairs, additions, alterations, improvements or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Landlord is prevented or delayed from so doing by reason of strikes or labor troubles or by accident or by any cause whatsoever reasonably beyond Landlord's control, including but not limited to, laws, governmental preemption in connection with a national emergency or by reason of any rule, order or regulation of any federal, state, county or municipal authority or any department or subdivision thereof or any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency.

25. **BILLS AND NOTICES.** Except as otherwise expressly provided in this Lease, any bills, statements, notices, demands, requests or other communications given or required to be given under this Lease shall be deemed sufficiently given or rendered if in writing, sent postage prepaid, by registered or certified mail (return receipt requested), or via overnight courier addressed (a) to Tenant (i) at Tenant's Address for Notices, or (ii) at any place where Tenant or any agent or employee of Tenant may be found if mailed subsequent to Tenant's vacating, deserting, abandoning or surrendering the Premises, or (b) to Landlord at Landlord's Address for Notices, or (c) to such other address as either Landlord or Tenant may designate as its new Address for Notices by notice given to the others in accordance with the provisions of this Article. Tenant hereby acknowledges and agrees that any such bill, statement, demand, notice, request or other communication may be given by Landlord's agent on behalf of Landlord. Any Landlord's Statement, bill, notice or other communication by Landlord with respect to Rent may be given by regular mail and need not be sent to any party other than Tenant. Any such bill, statement, demand, notice, request or other communication shall be deemed to have been rendered or given on the date when it shall have been mailed as provided in this Article.

26. **SERVICES.**

A. **Landlord's Obligation.** Except to the extent expressly provided in this Article or elsewhere in this Lease, Landlord shall not be required to furnish any services to Tenant.

B. **HVAC.**

(i) Landlord shall have no obligation to provide heat to the Premises. Tenant shall be obligated, at Tenant's sole cost and expense, to keep the Premises heated to at least 55°F at all times.

(ii) Air conditioning shall be provided to the Premises by means of one or more separate package air conditioning units (collectively, the **"Unit"**) to be located in the Premises. Tenant shall, at its sole cost and expense, maintain and operate the Unit. Tenant shall, at its sole cost and expense, perform any and all necessary repairs to, and cause any and all replacements of, the Unit (except that Tenant shall not be required to replace the Unit at the expiration or termination of the Term). The

existing Unit, if any, and any replacements thereof or additional air conditioning units installed by Tenant during the Term shall be and remain at all times the property of Landlord, and Tenant shall surrender the Unit and all such repairs and replacements to Landlord in good working order and condition on the Expiration Date, ordinary wear and tear excepted. Tenant accepts the existing Unit in its "as is" condition and Landlord makes no representations with respect thereto.

C.    Cleaning.

(i)    Tenant, at its sole cost and expense, shall cause the Premises to be cleaned in a first-class manner to Landlord's satisfaction. Tenant shall make all repairs and replacements to the sidewalks and curbs adjacent to the Premises and shall keep said sidewalks and curbs free from snow, ice, dirt and rubbish.

(ii)    Tenant shall not clean, nor require, permit, suffer or allow any window in the Premises to be cleaned, from the outside in violation of Section 202 of the Labor Law, or any other applicable law, or of the rules of the Board of Standards and Appeals, or of any other board or body having or asserting jurisdiction.

D.    Trash Removal.    Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future Legal Requirements regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash (collectively "Rubbish"). Tenant shall sort and separate the Rubbish into such categories as provided by law. Tenant shall pay all costs, expenses, fines penalties or damages that may be imposed on Landlord or Tenant by reason of Tenant's failure to comply with the provisions of trash or recycling laws. Tenant shall pay for the cost of removal from the Premises and the Building of Tenant's Rubbish and shall use a contractor approved by Landlord for such removal.

E.    Sprinkler System.    Anything elsewhere in this Lease to the contrary notwithstanding, if any Governmental Agency requires or recommends that any changes, modifications, alterations or additional sprinkler heads or other equipment be made or supplied to the sprinkler system by reason of Tenant's business, or the location of the partitions, trade fixtures, or other contents of the Premises, then Tenant shall, at Tenant's expense, or, at Landlord's election, Landlord shall, at Tenant's expense, promptly make and supply such changes, modifications, alterations, additional sprinkler heads or other equipment (pursuant to submission of necessary engineering plans and specifications for Landlord's reasonable approval), whether the work involved shall be structural or non-structural in nature.

F.    Water.    Tenant shall obtain and pay for Tenant's supply of water and sewer services for the Premises by direct application to and arrangement with the public utility company serving the Building and shall arrange for the installation of its own water meter with such utility company at Tenant's sole cost and expense.

G.    Electricity Service.

(i)    Tenant shall obtain and pay for Tenant's supply of electric current for the Premises by direct application to and arrangement with the public utility company serving the Building and shall arrange for the installation of its own electric meter with such utility company at Tenant's sole cost and expense.

(ii)    Any additional feeders or risers to be installed to supply Tenant's additional electrical requirements and all other equipment proper and necessary in connection with such feeders or risers, shall be installed by Tenant in accordance with all applicable Legal Requirements, at the sole cost

259774-8-W                                        34

and expense of Tenant, provided that, in Landlord's judgment, such additional feeders or risers are necessary and are permissible under applicable laws and insurance regulations and the installation of such feeders or risers will not cause permanent damage or injury to the Building or the Premises or cause or create a dangerous or hazardous condition or entail excessive or unreasonable alterations or interfere with or disturb other tenants or occupants of the Building. Tenant covenants that at no time shall the use of electrical energy servicing the Premises exceed the capacity of the existing feeders or wiring installations then serving the Premises.

(iii)    Landlord shall not be liable to Tenant in any way for any interruption, curtailment or failure, or defect in the supply or character of electricity furnished to the Premises by reason of any requirement, act or omission of any public utility or other company servicing the Building with electricity or for any other reason. If either the quantity or character of electrical service is changed by the public utility or other company supplying electrical service to the Building or is no longer available or suitable for Tenant's requirements, no such change, unavailability or unsuitability shall constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of rent, or relieve Tenant from any of its obligations under this Lease, or impose any liability upon Landlord, or its agents, by reason of inconvenience or annoyance to Tenant, or injury to or interruption of Tenant's business, or otherwise.

H.    Plate Glass.    Tenant shall be responsible for all breakage or injury to any glass windows or other plate glass within the Premises and shall maintain insurance to cover all such breakage or injury. Tenant shall keep the windows of the Premises clean at all times.

I.    Interruption of Services.    Landlord reserves the right to stop service of the HVAC system and all other Building Systems when necessary, by reason of accident or emergency, or for repairs, additions, alterations, replacements, decorations or improvements in the judgment of Landlord desirable or necessary to be made, until said repairs, alterations, replacements or improvements shall have been completed.

27.    SECURITY DEPOSIT.

A.    Deposit of Security.    Tenant shall deposit with Landlord on the signing of this Lease the Letter of Credit for the Security Deposit as security for the faithful performance and observance by Tenant of the terms, conditions and provisions of this Lease, including without limitation the surrender of possession of the Premises to Landlord herein provided.

B.    Letter of Credit.    For the deposit required pursuant to Subsection A of this Article, Tenant shall deliver to Landlord a clean, irrevocable, non-documentary and unconditional letter of credit (the "Letter of Credit") issued by and drawn upon any commercial bank (the "Issuing Bank") with offices for banking purposes in the City of New York and having a net worth of not less than One Hundred Million and 00/100 ($100,000,000.00) Dollars, which Letter of Credit shall (a) have a term of not less than one year, (b) be substantially in the form of Exhibit 4 attached hereto and otherwise in form and content reasonably satisfactory to Landlord, (c) be for the account of Landlord, (d) be in the amount of the Security Deposit, (e) be fully transferable by Landlord without any fees or charges therefor, (f) have an expiration date which is not earlier than sixty (60) days after the Expiration Date, and (g) provide that it shall be deemed automatically renewed, without amendment, for consecutive periods of one (1) year each thereafter during the term of this Lease, unless the Issuing Bank sends notice (the "Non-Renewal Notice") to Landlord by certified mail, return receipt requested, not less than forty five (45) days next preceding the then expiration date of the Letter of Credit that it elects not to have such Letter of Credit renewed. The Letter of Credit shall provide that Landlord shall have the right, exercisable upon

receipt of the Non-Renewal Notice, by sight draft on the Issuing Bank, to receive the monies represented by the existing Letter of Credit and to hold such proceeds pursuant to the terms of this Article as a cash security pending the replacement of such Letter of Credit.

C.    Application of Security Deposit.    In the event that Tenant defaults beyond the giving of notice and the expiration of applicable grace periods in respect of any of the terms, provisions and conditions of this Lease, Landlord may apply or retain the whole or any part of any cash security held by Landlord or may notify the Issuing Bank and thereupon receive all the monies represented by the Letter of Credit and use, apply or retain the whole or any part of such proceeds, as the case may be, to the extent required for the payment of any Rent as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default under this Lease, including any damages or deficiency in the reletting of the Premises, whether such damages or deficiency accrue or accrues before or after summary proceedings or other reentry by Landlord. If Landlord applies or retains any part of any cash security or proceeds of the Letter of Credit, as the case may be, Tenant, within ten (10) days after notice from Landlord and at Landlord's option, shall deposit with Landlord the amount so applied or retained or increase the amount of the Letter of Credit or provide an additional or replacement Letter of Credit, so that Landlord shall have the full Security Deposit on hand at all times during the Term. If Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this Lease, any cash security or the Letter of Credit, as the case may be, shall be promptly returned to Tenant after the Expiration Date and after delivery of the entire possession of the Premises to Landlord. In the event of a sale of the Real Property or the Building or leasing of the Building, Landlord shall transfer any cash security or so much thereof as remains following a default by Tenant to the vendee or lessee and with respect to the Letter of Credit, within thirty (30) days of notice of such sale or leasing, Tenant, at Tenant's sole cost and expense, shall arrange for the transfer of the Letter of Credit to the new landlord, as designated by Landlord in the foregoing notice or have the Letter of Credit reissued in the name of the new landlord and Landlord shall thereupon be released by Tenant from all liability for the return of such security. Tenant agrees to look solely to the new landlord for the return of such cash security or Letter of Credit and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the Security Deposit to a new landlord. Tenant further covenants that, except in connection with a permitted assignment of this Lease, it will not assign or encumber or attempt to assign or encumber any monies or Letter of Credit deposited herein as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

D.    Special Provisions Regarding the Security Deposit.

(i)    For the purposes of this Subsection, the following terms shall have the following meanings:

(a)    **"Return Request Notice"** shall mean a notice to Landlord requesting the return of the Letter of Credit in accordance with the provisions of subparagraph (ii) below, which notice shall be accompanied by the Tenant Financial Statements.

(b)    **"Tangible Net Worth"** shall mean the net worth of Tenant, computed in accordance with generally accepted accounting principles, consistently applied (but excluding goodwill and other intangible assets).

(c)    **"Tenant Financial Statements"** shall mean an audited consolidated balance sheet and statement of changes in stockholder equity of Tenant as of the end of the most recently expired fiscal year, in reasonable detail, together with a report by a major independent certified public

259774-8-W                                          36

accounting firm reasonably acceptable to Landlord, setting forth that they have made an examination of Tenant's consolidated financial statements and statement of changes in stockholder equity in accordance with generally accepted auditing standards and that, in their opinion, said consolidated financial statements and statement of changes in stockholder equity present fairly the consolidated financial position, results of operations and changes in financial position of Tenant in accordance with generally accepted accounting principles, consistently applied. Notwithstanding the foregoing, as long as Tenant is a publicly traded company, its 10-Q and 10-K statements shall be deemed to the Tenant Financial Statements.

(ii)    Tenant shall have the right, at any time after the third (3rd) anniversary of the Rent Commencement Date and provided that Tenant's Tangible Net Worth is $100,000,000.00 or greater as shown on the Tenant Financial Statements (the "**Return Request Date**"), which Tangible Net Worth shall be in form and substance reasonably acceptable to Landlord, to give a Return Request Notice to Landlord. Provided and on the condition that on the Return Request Date (1) Tenant shall not be in default under the Lease after the expiration of any applicable cure period, and (2) Tenant shall not have failed during the preceding twelve (12) month period to pay any Rent within ten (10) days after the due date thereof, then in such case, the Letter of Credit shall be returned to Tenant.

(iii)    Tenant shall be required, on each anniversary of the Return Request Date to provide Landlord with updated Tenant Financial Statements. In the event that at any time such Tenant Financial Statements show that Tenant's Tangible Net Worth is less than $100,000,000.00 (an "**Insufficient Net Worth Statement**"), then Tenant shall be required to deposit a new Letter of Credit with Landlord, which new Letter of Credit shall be delivered to Landlord together with the Insufficient Net Worth Statement; provided, however, that at any time after the date of such Insufficient Net Worth Statement, Tenant shall have the right, if its Tangible Net Worth again becomes higher than $100,000,000.00, to submit a new Return Request Notice to Landlord in accordance with the provisions of this Subsection.

28.    ADDITIONAL DEFINITIONS.

A.    The term "**Tenant Party(ies)**" shall mean and include Tenant and all of Tenant's principals, officers, agents, contractors, servants, employees, subtenants, licensees, visitors and invitees.

B.    The words "**reenter**" and "**reentry**" as used in this Lease are not restricted to their technical legal meaning.

C.    The term "**business days**" as used in this Lease shall exclude Saturdays, Sundays and all days observed by the State or Federal Government as legal holidays and union holidays for those unions that materially affect the delivery of services in the Building.

D.    The words "**include**", "**including**" and "**such as**" shall each be construed as if followed by the phrase "without being limited to". The words "**herein**", "**hereof**", "**hereby**", "**hereunder**" and words of similar import shall be construed to refer to this Lease as a whole and not to any particular Article or subdivision hereof unless expressly so stated.

E.    The terms "**substantial completion**" or "**substantially completed**" or words of similar import shall mean that any construction work (including Alterations) has been substantially completed, it being agreed that any such work shall be deemed substantially complete notwithstanding the fact that minor or insubstantial details of construction or demolition and/or mechanical adjustment and/or

259774-8-W                    37

decorative items remain to be performed, provided that any such unperformed work shall not materially interfere with Tenant's use and occupancy of the Premises for the Permitted Uses.

F.    The term **"Interest Rate"** shall mean one and one-half (1½%) percent per month, or the applicable maximum legal rate of interest, whichever is lower.

G.    The term **"Hazardous Substances"** shall mean, collectively, (a) asbestos and polychlorinated biphenyls, and (b) hazardous or toxic materials, wastes and substances which are defined, determined and identified as such pursuant to any Legal Requirement.

29.    BROKER.    Landlord and Tenant each represent and warrant to the other that they have dealt directly with (and only with), the Landlord's Broker and the Tenant's Broker as broker in connection with this Lease, and that insofar as either Landlord or Tenant knows no other broker negotiated this Lease or is entitled to any commission in connection therewith, and the execution and delivery of this Lease by Landlord shall be conclusive evidence that Landlord has relied upon the foregoing representation and warranty. Landlord and Tenant shall each indemnify and hold the other harmless from and against any and all claims for commission, fee or other compensation by any other person who shall claim to have dealt with either Landlord or Tenant in connection with this Lease and for any and all costs incurred by either Landlord or Tenant in connection with such claims, including, without limitation, reasonable attorneys' fees and disbursements.

30.    INDEMNITY.    Tenant shall not do or permit any act or thing to be done upon the Premises which may subject Landlord to any liability or responsibility for injury, damages to persons or property or to any liability by reason of any violation of Legal Requirement, but shall exercise such control over the Premises as to fully protect Landlord against any such liability. Tenant agrees to indemnify and save harmless the Landlord Indemnitees from and against (a) all claims of whatever nature against arising from any act, omission or negligence of Tenant or any Tenant Party, (b) all claims arising from any accident, injury or damage whatsoever caused to any person or to the property of any person and occurring in or about the Premises from the date access to the Premises is given to Tenant or any Tenant Party (including during the performance of Landlord's Work, if any), (c) all claims arising from any accident, injury or damage to any person, entity or property, occurring outside of the Premises but anywhere within or about the Real Property, where such accident, injury or damage results or is claimed to have resulted from an act or omission of Tenant or any Tenant Party, (d) any breach, violation or nonperformance of any covenant, condition or agreement in this Lease set forth and contained on the part of Tenant to be fulfilled, kept, observed and performed, (e) any misrepresentation made by Tenant hereunder, (f) any cooperation by Landlord with Tenant as contemplated by Article 4, (g) any violation by Tenant of the provisions of Subsection F of Article 4, and (h) any claim, loss or liability arising or claimed to arise from Tenant, or any Tenant Party causing or permitting any Hazardous Substances to be brought upon, kept or used in or about the Premises or the Real Property or any seepage, escape or release of such Hazardous Substances. This indemnity and hold harmless agreement shall include indemnity from and against any and all liability, fines, suits, demands, costs and expenses of any kind or nature incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof, including all reasonable legal fees and expenses incurred in enforcing the provisions of this indemnity. Tenant shall not be required to indemnify the Landlord Indemnitees and hold the Landlord Indemnitees harmless to the extent that it is finally determined that the gross negligence or willful misconduct of a Landlord Indemnitee contributed to the loss or damage sustained by the person making the claim. The term **"Landlord Indemnitees"** shall mean, collectively, Landlord, any Lessor, any Mortgagee, Landlord's managing agent and their respective partners, members, managers, shareholder, offices, directors, employees and agents.

31.    RENEWAL OPTIONS.

A.    Provided this Lease is in effect and Tenant is not in default hereunder, either at the time of the exercise of this option or at the time of the commencement of the Renewal Term (as hereinafter defined), Tenant shall have the option to renew the Term for two (2) five (5) year renewal terms (each, a "**Renewal Term**") upon the same terms as in the Lease (including items of Additional Rent), except that Tenant shall have no right to renew the term of the Lease for any period beyond the second Renewal Term. Tenant shall exercise its option with respect to a Renewal Term, if at all, by giving written notice to Landlord on or before the date which is twelve (12) months prior to the Expiration Date of the then current Term. The failure by Tenant to duly give notice of its exercise of its right to renew the term of this Lease shall be deemed a waiver of such right. Upon Landlord's receipt of such notice from Tenant, this Lease, subject to the provisions of this Article, shall be automatically extended for the applicable Renewal Term with the same force and effect as if such Renewal Term had been originally included in the Term. Landlord shall not be responsible for any fees or commissions due to any broker or other agent with which Tenant has had dealings in connection with the Renewal Term unless otherwise agreed to in writing by Landlord and Tenant shall indemnify, defend and hold Landlord harmless from and against any and all loss, cost, liability and expense arising out of any claim made by any of such brokers or agents. The renewal option set forth herein may only be exercised by the originally named Tenant in this Lease or by any permitted assignee of such Tenant.

B.    The Minimum Rent during the Renewal Term(s) shall be:

(i)    Two Million One Hundred Sixty Eight Thousand Three Hundred Twenty and 00/100 ($2,168,320.00) Dollars per annum ($180,693.33 per month) for the first Renewal Term; and

(ii)    Two Million Four Hundred Twenty Eight Thousand Five Hundred Eighteen and 40/100 ($2,428,518.40) Dollars per annum ($202,376.53 per month) for the second Renewal Term.

Nothing in this Article shall affect Tenant's obligation to pay additional rent under this Lease. During the Renewal Term, Tenant shall pay additional rent in accordance with the provisions of this Lease.

C.    Any termination, cancellation or surrender of this Lease shall terminate any right of renewal for the Renewal Term. Neither the option granted to Tenant in this Lease to renew the Term, nor the exercise of such option by Tenant, shall prevent Landlord from exercising any option or right granted or reserved to Landlord herein or that Landlord may otherwise have to terminate this Lease or any renewal of the Term. Any termination of this Lease shall serve to terminate any such renewal of the Term and any right of Tenant to any such renewal, whether or not Tenant shall have exercised the option to renew the Term. No option granted to Tenant to renew the Term shall be deemed to give Tenant any further option to renew or extend beyond the second Renewal Term.

32.    MISCELLANEOUS.

A.    No Offer.    This Lease is offered for signature by Tenant and it is understood that this Lease shall not be binding upon Landlord unless and until Landlord shall have executed and delivered a fully executed copy of this Lease to Tenant.

B.    [Intentionally omitted.]

259774-8-W                                                39

C.    Authority.    If Tenant is a corporation, partnership, limited liability company or other business entity, each individual executing this Lease on behalf of Tenant hereby represents and warrants that Tenant is a duly formed and validly existing entity qualified to do business in the State of New York and that Tenant has full right and authority to execute and deliver this Lease and that each person signing on behalf of Tenant is authorized to do so.

D.    Vault Space.    Any vaults, vault space or other space outside the boundaries of the Real Property, notwithstanding anything contained in this Lease or indicated on any sketch, blueprint or plan are not included in the Premises. Landlord makes no representation as to the location of the boundaries of the Real Property. All vaults and vault space and all other space outside the boundaries of the Real Property which Tenant may be permitted to use or occupy is to be used or occupied under a revocable license, and if any such license shall be revoked, or if the amount of such space shall be diminished or required by any federal, state or municipal authority or by any public utility company, such revocation, diminution or requisition shall not constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of rent, or relieve Tenant from any of its obligations under this Lease, or impose any liability upon Landlord. Any fee, tax or charge imposed by any governmental authority for any such vaults, vault space or other space shall be paid by Tenant, to the extent any such vaults, vault space or other space is used by Tenant.

E.    Consents and Approvals.    Wherever in this Lease Landlord's consent or approval is required, if Landlord shall delay or refuse such consent or approval, Tenant in no event shall be entitled to make, nor shall Tenant make, any claim, and Tenant hereby waives any claim for money damages (nor shall Tenant claim any money damages by way of set-off, counterclaim or defense) based upon any claim or assertion by Tenant that Landlord unreasonably withheld or unreasonably delayed its consent or approval. Tenant's sole remedy shall be an action or proceeding to enforce any such provision, for specific performance, injunction or declaratory judgment, and in the event that Tenant prevails in any such action or proceeding, Landlord shall reimburse Tenant for its reasonable legal fees and disbursements in connection therewith.

F.    Rent Control.    In the event the Minimum Rent or Additional Rent or any part thereof provided to be paid by Tenant under the provisions of this Lease during the demised term shall become uncollectible or shall be reduced or required to be reduced or refunded by virtue of any Legal Requirements, Tenant shall enter into such agreement(s) and take such other steps as Landlord may reasonably request and as may be legally permissible to permit Landlord to collect the maximum rents which may from time to time during the continuance of such legal rent restriction be legally permissible (but not in excess of the amounts reserved under this Lease). Upon the termination of such legal rent restriction (a) the Minimum Rent and/or Additional Rent shall become and thereafter be payable in accordance with the amounts reserved herein for the periods following such termination, and (b) Tenant shall pay to Landlord promptly upon being billed, to the maximum extent legally permissible, and amount equal to (i) the Minimum Rent and/or Additional Rent which would have been paid pursuant to this Lease but for such legal rent restriction, less (ii) the amounts paid by Tenant during the period such legal rent restriction was in effect.

G.    Confidentiality.    Tenant acknowledges that the terms and conditions of this Lease are to remain confidential for Landlord's benefit, and may not be disclosed by Tenant to anyone, by any manner or means, directly or indirectly, without Landlord's prior written consent. The consent by Landlord to any disclosures shall not be deemed to be a waiver on the part of Landlord of any prohibition against any future disclosure.

H.    Adjacent Excavation: Shoring.    If an excavation shall be made upon land adjacent to the Premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the Premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the Building from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Landlord, or diminution or abatement of Rent.

I.    Labor Harmony.    Tenant shall not at any time, either directly or indirectly, use any contractors or labor or materials in the Premises in connection with any Alteration or otherwise if the use of such contractors or labor or materials would create any work stoppage, picketing, labor disruption or any other difficulty with other contractors or labor engaged by Tenant or Landlord or others in the construction, maintenance or operation of the Building or any part thereof. Tenant shall immediately stop any work or other activity if Landlord shall notify Tenant that continuing such work or activity would violate the provisions of the immediately preceding sentence.

J.    Captions.    The captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Lease nor the intent of any provision thereof.

K.    Parties Bound.    The covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors, and, except as otherwise provided in this Lease, their assigns.

IN WITNESS WHEREOF, Landlord and Tenant have respectively executed this Lease as of the day and year first above written.

502-12 86TH STREET LLC, Landlord

By: _____

Name: EZRA SULTAN
Title:   CFO

CIRCUIT CITY STORES, INC., Tenant

By: _____

Name:    Steven E. Jackson
Title:    Vice President

54-0493875
_____
Tenant's Tax ID Number

EXHIBIT I

FLOOR PLAN OF PREMISES

THIS IS A SCHEMATIC PLAN AND IS INTENDED ONLY TO SHOW THE PROPOSED GENERAL
LAYOUT OF THE PREMISES.   ALL MEASURES, DISTANCES AND DIMENSIONS ARE
APPROXIMATE AND NOT TO SCALE.  THE DEPICTIONS HEREON DO NOT CONSTITUTE A
WARRANTY OR REPRESENTATION OF ANY KIND.

259774-8-W



Basement

502. 9th st.



NOT
INCLUDED

1st Floor



2ⁿᵈ Floor



3rd floor

TOTAL P.01

EXHIBIT 2

EXISTING EXCLUSIVE USES

PERMITTED FUTURE EXCLUSIVE USES

Notwithstanding anything contained herein to the contrary, Landlord shall be permitted to grant to any future tenant of the Building an exclusive for any of the following uses, which exclusives shall be binding on Tenant:

- Bank or securities brokerage.

- Bookstore.

- Toy store.

- Drugstore or beauty supply store.

- Pet store or pet supplies store.

- Clothing store.

- Jewelry store.

- Accessories store (*e.g.*, handbags, ties, hats).

- Luggage store.

- Shoe store.

- Sporting goods store.

- Office supplies store.

- Furniture store.

- Beauty salon.

- Kitchen supplies store.

259774-8-W

EXHIBIT 3

PROHIBITED USES

The following shall be deemed **"Prohibited Uses"**:

- Any use specifically prohibited in any other provision of this Lease.

- To sell or display or exhibit for sale any pornographic or obscene material.

- As a so-called "head shop" or a facility for the sale of paraphernalia for use with illicit drugs.

- As a gambling or gaming establishment such as, without limitation, an Off-Track Betting, sport gambling, casino gambling or similar establishment.

- As a pawn shop.

- To conduct or permit any fire, going-out-of-business or bankruptcy sale.

- To engage in any unethical or disreputable method of business operation.

- By any religious or union entity.

- As a billiards or pool hall.

- As an office, store, reading room, headquarters, center or other facility devoted or opposed to the promotion, advancement, representation, purpose or benefit of: (a) any political party, political movement or political candidate, (b) any religion, religious group or religious denomination, (c) foreign government, (d) any political party, political movement or political candidate, (e) any "cause" of any type or nature whatsoever.

- Commercial or non-profit establishment of any type or nature whatsoever: (a) the primary purpose of which is to sell, afford or permit on-premises sexual stimulation or sexual liaisons; (b) which permits or presents obscene, nude or semi-nude performances or modeling; (c) which sells, affords or permits body massages, whether or not of a sexual nature; (d) which sells "rubber goods" or other sexual or erotic products of a type not commonly found in high-quality, national chain pharmacies; (e) which sells, rents or permits the viewing of X-rated video, photographs, books or other material.

- For a ballroom, dance hall, discotheque.

- As a place of instruction, reading room or any operation catering primarily to students or trainees rather than to customers.

- As a funeral parlor.

- As an arcade.

259774-8-W

- As a restaurant (whether sit down or for take-out) or any other type of cooking establishment.

- Any use which generates excessive noise, vibration, odor or fumes.

EXHIBIT 4


FORM OF LETTER OF CREDIT


ISSUE DATE: _____
L/C NO.:        _____

APPLICANT:
\*\*\*\*\*\*\*\*\*\*\*\*\*\* DIRECT \*\*\*\*\*\*\*\*\*\*\*\*\*                    [Tenant]

[LANDLORD]                                       AMOUNT: USD   $_____


LADIES AND GENTLEMEN:

We hereby establish our irrevocable standby letter of credit no. _____ in your favor for an aggregate amount not to exceed the amount indicated above, expiring at our counters in New York with our close of business on _____.

This letter of credit is available with the _____Bank, New York against presentation of your draft at sight drawn on the _____ Bank, New York.

It is a condition of this irrevocable letter of credit that it shall be automatically extended without amendment for additional one year periods from the present or each future expiration date, unless at least 45 days prior to such date we send you notice in writing by registered mail at the above address, that we elect not to renew this letter of credit for such additional period. However in no event shall this letter of credit be extended beyond the final expiration date of _____. Upon such notice to you, you may draw drafts on us at sight for an amount not to exceed the balance remaining in this letter of credit within the then applicable expiration date, accompanied by your dated statement purportedly signed by one of your officials reading: "the amount of this drawing USD _____ under the _____ Bank letter of credit number _____ represents funds due us as we have received notice from the _____- Bank of its decision not to extend letter of credit number _____ for an additional year, and the obligation remains outstanding." We will not notify Applicant or any other third party with respect to communications, or inquiries of Beneficiary, including the presentation of the Letter of Credit for payment or any attempt to draw against the Letter of Credit, until after the Letter of Credit has been paid in accordance with the terms hereof.

This letter of credit is transferable in its entirety (but not in part) and the _____ Bank only is authorized to act as the transferring bank.

We shall not recognize any transfer of this letter of credit until this original letter of credit together with any amendments and a signed and completed transfer form satisfactory to us is received by us.

Transfer charges are for the applicant's account. Forms are attached. [Please obtain forms from the Bank].


259774-8-W

The correctness of the signature and title of the person signing the transfer forms must be verified by your bank.

In case of any transfer under this letter of credit, the draft and any required statement must be executed by the transferee.

This letter of credit may not be transferred to any person with which U.S. persons are prohibited from doing business under U.S. foreign assets control regulations or other applicable U.S. laws and regulations.

All drafts must indicate: "Drawn under the _____ Bank, New York letter of credit no. _____ dated _____."

The original letter of credit and all sight drafts must be presented for drawing.

Except as otherwise expressly stated herein, this letter of credit is subject to the Uniform Customs and Practice for documentary credits, 1993 Revision, ICC Publication No. 500.

259774-8-W

SCHEDULE A

RULES AND REGULATIONS

(1)     The rights of each tenant in the Building to the entrances, corridors and elevators of the Building are limited to ingress to and egress from such tenant's premises and no tenant shall use, or permit the use of the entrances, corridors, or elevators for any other purpose. No tenant shall invite to its premises, or permit the visit of persons in such numbers or under such conditions as to interfere with the use and enjoyment of any of the plazas, entrances, corridors, elevators and other facilities of the Building by other tenants. No tenant shall encumber or obstruct, or permit the encumbrances or obstruction of any of the sidewalks, plazas, entrances, corridors, elevators, fire exits or stairways of the Building. Landlord reserves the right to control and operate the public portions of the Building, the public facilities, as well as facilities furnished for the common use of the tenants, in such manner as Landlord deems best for the benefit of the tenants generally.

(2)     Any person whose presence in the Building at any time shall, in the reasonable judgment of Landlord, be prejudicial to the safety, character, reputation or interests of the Building or its tenants may be denied access to the Building or may be ejected therefrom. In case of invasion, riot, public excitement or other commotion Landlord may prevent all access to the Building during the continuance of the same, by closing the doors or otherwise, for the safety of the tenants and protection of property in the Building. Landlord shall, in no way, be liable to any tenant for damages or loss arising from the admission, exclusion or ejection of any person to or from a tenant's premises or the Building under the provisions of this rule.

(3)     No noise, including the playing of any musical instruments, radio or television, which, in the reasonable judgment of Landlord, disturbs other tenants in the Building, shall be made or permitted by any tenant. Except for normal cleaning and maintenance supplies, no dangerous, inflammable, combustible or explosive object, material or fluid shall be brought into the Building by any tenant or with the permission of any tenant.

(4)     The water and wash closets and other plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed, and no sweepings, rubbish, rags, acids or other substances shall be deposited therein. All damages resulting from any misuse of the plumbing fixtures shall be borne by the tenant who, or whose servants, employees, agents, visitors or licensees, shall have caused the same.

(5)     Upon the termination of a tenant's lease, all keys of the tenant's premises and toilet rooms shall be delivered to Landlord. Each tenant shall provide Landlord with appropriate means to access any electronic security system in the Premises.

(6)     No animals or birds, bicycles, mopeds or vehicles of any kind shall be kept in or about the Building or permitted therein.

(7)     No tenant shall cause or permit any odors of cooking or other processes or any unusual or objectionable odors to emanate from its premises.

(8)     No tenant shall generate, store, handle, discharge or otherwise deal with any hazardous or toxic waste, substance or material or oil or pesticide on or about the Real Property, except as allowed under item (3) above.

259774-8-W

## SCHEDULE B

## EXTERIOR SIGNAGE CONCEPT PLANS



## SCHEDULE C

## STOREFRONT SPECIFICATIONS

intentionally omitted

SCHEDULE D

FORM OF SNDA

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT (this "Agreement") is entered into on _____, 2005 among the undersigned CIRCUIT CITY STORES, INC. (together with its successors and assigns being collectively herein referred to as "Tenant"), 501-12 86th Street LLC (together with its successors and assigns herein collectively referred to as "Borrower") and _____ (such party together with its successors and assigns including, without limitation, any purchaser at any foreclosure sale of the Mortgage, defined below, being herein collectively referred to as "Lender"), whose address is: Attn: _____.

### RECITALS

A.     Tenant is the lessee under the lease which, together with any and all modifications and amendments thereto, is completely described on **EXHIBIT "A"** attached hereto and incorporated herein (collectively the "Lease").

B.     Borrower, the lessor or successor to the lessor under the Lease, has requested Lender to make to Borrower a mortgage loan secured or to be secured by a mortgage or deed of trust from Borrower to Lender (such mortgage or deed of trust collectively together with all renewals, increases, replacements, consolidations, modifications and extensions thereof, the "Mortgage"), covering the property (the "Property") described on **EXHIBIT "B"** attached hereto and incorporated herein wherein the premises covered by the Lease are located.

C.     Lender is willing to make the requested mortgage loan, provided Tenant executes this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to induce Lender to make the requested mortgage loan, Tenant and Lender hereby agree and covenant as follows:

1.     The Lease and the lien thereof are and shall at all times continue to be subject and subordinate in all respects to the lien of the Mortgage and all rights, privileges and provisions in favor of Lender thereunder.  Tenant further waives all rights and claims to assert that the Lease or any provision thereof is superior to the lien or to any other provision of the Mortgage.

2.     So long as Tenant is not in breach or default (beyond any period in the Lease given to Tenant to cure such breach or default) in the payment of rent or additional sums or in the performance of any of the other terms, covenants or conditions of the Lease on Tenant's part to be performed, Tenant's possession under the Lease and Tenant's rights and privileges thereunder, or

under any extensions or renewals thereof which may be effected in accordance with any option therefor contained in the Lease, shall not be diminished or interfered with by Lender acting pursuant to the Mortgage, and Tenant's occupancy shall not be disturbed by Lender during the term of the Lease or any such extensions or renewals thereof in accordance with any extension or renewal options contained in the Lease.

3.      If the interests of Borrower in the Property or the Lease shall be acquired by Lender by foreclosure, by deed in lieu of foreclosure or by any other method, and Lender succeeds to the interests of Borrower under the Lease, then provided that and so long as Tenant is not in default (beyond any period in the Lease given to Tenant to cure such breach or default) in the payment of any sums due from Tenant under the Lease or in the performance of any other obligation of Tenant under the Lease, the Lease and the rights of Tenant thereunder shall continue in full force and effect and shall not be terminated, diminished, interfered with or disturbed except in accordance with the terms of the Lease, and except that Tenant shall be bound to Lender under all of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining, and any extensions or renewals thereof which may be effected in accordance with any option therefor contained in the Lease, with the same force and effect as if Lender were the original lessor under the Lease, and Tenant does hereby attorn to Lender as its lessor, said attornment to be effective and self-operative without the execution of any other instruments on the part of either party hereto immediately upon Lender's succeeding to the interest of Borrower under the Lease; provided, however, that unless otherwise required by applicable law Tenant shall be under no obligation to pay rent to Lender by virtue of this Agreement until Tenant receives written notice from Lender that Lender has succeeded to the interests of Borrower under the Lease or exercised its assignment of rents. Borrower hereby expressly authorizes Tenant to make such payments to Lender and discharges Tenant from any liability to Borrower on account of any such payments. It is the intention of the parties hereto for this purpose to incorporate the Lease into this Agreement by reference for all purposes with the same force and effect as if set forth at length herein.

4.      If Lender shall succeed to the interests of Borrower under the Lease, Lender shall be bound to Tenant under all of the terms, covenants and conditions of the Lease, and Tenant shall, from and after Lender's succession to the interests of Borrower under the Lease, have the same remedies against Lender for the breach or default by Lender of any agreement contained in the Lease that Tenant might have had under the Lease against Borrower for Borrower's breach or default; provided, however, that Lender shall not be:

(a)      liable for any act or omission of any prior or succeeding landlord (including Borrower); or

(b)      liable for the return of any security deposit unless actually received by Lender;

(c)      subject to any offsets or defenses which Tenant might have against any prior or succeeding landlord (including Borrower);

(d)      bound by any rent or additional sums which Tenant might have paid for more than one month in advance to any prior or succeeding landlord (including Borrower);

(e)     bound by any agreement, amendment or modification of the Lease or any cancellation or termination of the Lease by any prior landlord (including Borrower), made without Lender's prior written consent;

(f)     liable for the completion of any construction on the Property or tenant improvements to the leased premises commenced, or agreed or represented to by any prior or succeeding landlord (including Borrower); or

(g)     bound by any provision of the Lease restricting the use of other properties owned by Lender, as landlord.

5.     Tenant from and after the date hereof shall send a copy of any notice or statement of a breach or default (including matters which, but for the passage of time, the giving of notice, or both, would be a breach or default) under the Lease or any notices or statement of any intention to cancel or terminate the Lease by certified mail, return receipt requested to Lender at the address shown above at the same time such notice or statement is sent to Borrower. Tenant further agrees that, in the event of any act or omission by Borrower or other occurrence which would give Tenant the right to cancel or terminate the Lease or to claim a partial or total eviction (either actual or constructive), or in the event of any other breach or default by Borrower under the terms of the Lease, promptly thereupon, Tenant shall so notify Lender by certified mail, return receipt requested, at the address above.

6.     After receipt of notice as provided in Section 5 above, Lender shall have the option, within the time periods given to Borrower for cure of any breach or default, to cure any such act, omission, breach, or default of Borrower described in such Section 5, including if necessary, the commencement and prosecution of foreclosure proceedings, and Tenant agrees to accept the performance of Lender in lieu of the performance of Borrower and that the Lease shall thereby remain in full force and effect. Tenant shall not exercise any such right to terminate or claim eviction or any other rights or remedies available at law or in equity for default or breach of the Lease or act or omission by Borrower in connection with the Lease, unless and until Tenant has notified Lender as provided in Section 5 hereof and until the time for Lender to commence and complete such cure has elapsed.

7.     Tenant hereby agrees that for so long as the Mortgage encumbers or is a lien on the Property, or any portion thereof, and thereafter, should Lender acquire the Property, or any portion thereof, no covenant, agreement or other obligation of the Landlord which is to be performed or complied with beyond the boundaries of the Property and no act or omission or occurrence which occurs beyond the boundaries of the Property (including, without limitation, any restrictions prohibiting Landlord's or its affiliates or other related persons or entities from competing, operating or leasing in competition with Tenant or to cause or restrict certain actions or activities on other property not encumbered by the Mortgage) shall be a breach or default under the Lease nor permit Tenant to cancel or terminate the Lease or abate or reduce any rent or other sums. Nothing in this Section 7 shall prevent Tenant from seeking or obtaining a restraining order or injunction against such breach, default, act, omission or occurrence or from obtaining a monetary judgment against

Borrower or any successor landlord other than Lender for any such breach, default, act, omission or occurrence.

8.      This Agreement may not be amended or modified orally or in any other manner other than by an agreement in writing signed by the parties hereto or their respective successors in interest. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their respective successors and assigns including, any applicable, heirs, administrators, legal representatives and executors.

9.      Tenant agrees that it will not, without the written consent of Lender, pay rent or any other sums becoming due under the Lease more than one (1) month in advance.

10.     Tenant agrees that the Mortgage and the indebtedness secured thereby may be increased, rearranged, renewed, extended, consolidated and modified from time to time by agreement between Borrower and Lender, and Lender may exercise any one or more of its rights under the Mortgage from time to time at Lender's discretion, all without notice to or consent of Tenant, and this Agreement shall continue in full force and effect as to all such renewals, extensions, increases, rearrangements, consolidations and modifications and all such exercises of rights.

11.     In no event shall Lender be personally liable as landlord under the Lease either by virtue of any assignment of the Lease, the exercise of any right thereunder or hereunder, the foreclosure of its lien on the Property, the acquisition of the Property or the collection of any rent or other sums under the Lease as Owner or Mortgagee and Tenant shall look solely to the real estate that is the subject of the Lease and to no other assets of Lender for satisfaction of any liability in respect of the Lease; but Tenant shall have reserved to it all other remedies available to it at law or in equity.

12.     Except as otherwise described on Exhibit "A" above, the Lease has not been amended or modified and is in full force and effect as originally executed, and there are no side letters or other arrangements, whether or not constituting amendments to the Lease, for tenant inducements or otherwise.

13.     The Lease is in full force and effect. Neither Borrower nor Tenant is in breach or default under any provision of the Lease nor is Tenant aware of any act, omission or occurrence which, but for the passage of time, the giving of notice, or both, which would constitute a breach or default or would permit the Tenant to terminate the Lease or reduce or abate any rent thereunder. Borrower has complied fully and completely with all of Borrower's covenants, warranties and other obligations under the Lease to the date hereof. Tenant is fully obligated to pay, and is paying, the rent and other sums due from Tenant under the Lease, and is fully obligated to perform and is performing all of the obligations of Tenant under the Lease, without right of counterclaim, offset or other defense.

14.     Where appropriate, all references to the singular shall include the plural and vice versa and all references to any gender shall include the others.

15. This Agreement may not be waived, amended or modified except by subsequent written agreement signed by the party to be bound.

16. The words "breach" and "default" are used interchangeably in this Agreement for convenience of drafting and there is no distinction between the meaning of either word.

17. This Agreement satisfies Borrower's obligation, if any, to provide a subordination, non-disturbance and attornment agreement, or similar document, pursuant to the Lease.

18. This Agreement may be executed in multiple counterparts, each of which shall be an original instrument and which, taken together, constitute one and the same agreement.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

CIRCUIT CITY STORES, INC.

By: _____

Name: _____

Title: _____


502-12 86th STREET LLC


By: _____

Name: _____

Title: _____


_____


By: _____

Name: _____

Title: _____

COMMONWEALTH OF VIRGINIA:

CITY OF RICHMOND:


      The foregoing instrument was acknowledged before me this ___ day of _____,
200___, by _____, as _____ of Circuit City Stores,
Inc., on behalf of the corporation.



                              _____
                              Notary Public

My Commission Expires:_____


**[Add appropriate notary blocks.]**

## EXHIBIT "A"

TO

SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE AGREEMENT

Dated: _____

The Lease referred to in the foregoing Agreement is a lease agreement made and entered into July ___, 2005, between Circuit City Stores, Inc., as lessee, and 501-12 86th Street LLC, as lessor. [The Lease has been amended and modified as follows: ]

## EXHIBIT "B"

TO

SUBORDINATION, ATTORNMENT AND NON-DISTURBANCE AGREEMENT

Dated: _____