B. Tenant hereby permits Landlord during the last one
hundred fifty (150) days of the Main Term or of any Option Period,
as the case may be (provided that no applicable Renewal Option has
been exercised or deemed exercised), to place one (1) "For Rent" or
"For Sale" sign, not exceeding four (4) feet by four (4) feet in
size, on the parking lot of the Premises.  Tenant will also allow
Landlord or its agents, upon prior written notice and accompanied
by a representative of Tenant designated by Tenant, to show the
Premises, exterior and interior, to prospective tenants,
purchasers, or mortgagees during reasonable business hours by prior
appointment, provided same does not interfere with the conduct of
Tenant's business.

28. <u>Force Majeure</u>.  Except as otherwise specifically
contemplated in this Sublease or in the Construction Provisions, in
the event that Landlord or Tenant shall be delayed or hindered in,
or prevented from, the performance of any act required hereunder by
reason of strikes, lockouts, labor troubles, inability to procure
materials, delay by the other party, failure of power or
unavailability of utilities, riots, insurrection, war or other
reason of a like nature not the fault of such party or not within
its control, then performance of such act shall be excused for the
period of delay, and the period for the performance of any such act
shall be extended for a period equivalent to the period of such
delay.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

29.  <u>Events of Tenant's Default</u>.   Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Sublease:

(a)  <u>Failure to Pay Rent; Breach.</u>  (i) Tenant's failure to make any payment of money required by this Sublease (including, without limitation, Ground Rent, Base Rent or Real Estate Taxes), within ten (10) days after the receipt of written notice from Landlord to Tenant that same is overdue (subject, however, to Tenant's right of good faith contest); or (ii) Tenant's failure to observe or perform any other material provision of this Sublease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

(b)  <u>Bankruptcy</u>.   Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

30.   <u>Landlord's Remedies</u>.   After the occurrence of an Event of
Default by Tenant, Landlord shall have the right to exercise the
following remedies:

(a)   <u>Continue Sublease</u>.   Landlord may, at its option,
continue this Sublease in full force and effect, without
terminating Tenant's right to possession of the Premises, in which
event Landlord shall have the right to collect Base Rent and other
charges when due, including any sums due for any Option Period for
which a Renewal Option has been exercised.   In the alternative,
Landlord shall have the right to peaceably re-enter the Premises on
the terms set forth in subparagraph (b) below, without such re-
entry being deemed a termination of this Sublease or an acceptance
by Landlord of a surrender thereof.   Landlord shall also have the
right, at its option, from time to time, without terminating this
Sublease, to relet the Premises, or any part thereof, with or
without legal process, as the agent, and for the account, of Tenant
upon such terms and conditions as Landlord may deem advisable, in
which event the rents received on such reletting shall be applied
(i) first to the reasonable and actual expenses of such reletting
and collection, including without limitation necessary renovation
and alterations of the Premises, reasonable and actual attorneys'
fees and any reasonable and actual real estate commissions paid,
and (ii) thereafter toward payment of all sums due or to become due
Landlord hereunder.   If a sufficient amount to pay such expenses
and sums shall not be realized or secured, in Landlord's exercise
of reasonable efforts to mitigate its damages (which Landlord

53

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

hereby agrees to make), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring one or more actions therefor as such monthly deficiency shall arise. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Sublease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Sublease shall not preclude Landlord from subsequently terminating this Sublease as set forth below.

(b) <u>Terminate Sublease</u>. Landlord may terminate this Sublease by written notice to Tenant specifying a date therefor, which shall be no sooner than thirty (30) days following receipt of such notice by Tenant, and this Sublease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following:

(i) The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

(ii) The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation.

54

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

As used in this paragraph 30(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at an annual rate equal to the "prime rate" (as published from time to time in the Eastern Edition of the Wall Street Journal) plus four (4%) percent (the "Default Rate"), and a discount rate to net present value equal to interest being paid from time to time on 10-year Treasury Bills (as published in the Eastern Edition of the Wall Street Journal) on anticipated future obligations.   In the event this Sublease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings.   Landlord shall never be entitled to dispossess the Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

(c)   Reimbursement of Landlord's Costs in Exercising Remedies.   Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder, whether or not this Sublease is terminated and whether or not an action or proceeding for the enforcement of the

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

terms of this Sublease has been commenced (including, without limitation, reasonable attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any speculative or consequential damages caused by Tenant's failure to perform its obligations under this Sublease.

(d) Remedies Are Cumulative. The various rights and remedies reserved to Landlord herein, are cumulative, and Landlord may pursue any and all such rights and remedies (but no others), whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Sublease). Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

31. Events of Landlord's Default; Tenant's Remedies. Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default":

(a) Landlord's failure to make any payments of money due Tenant hereunder within ten (10) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate); or

(b) Landlord's failure to perform any nonmonetary

56

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

obligation of Landlord hereunder within thirty. (30) days after

receipt of written notice from Tenant to Landlord specifying such

default and demanding that the same be cured; provided that, if

such default cannot with due diligence be wholly cured within such

thirty (30) day period, Landlord shall have such longer period as

may be reasonably necessary to cure the default, so long as

Landlord proceeds promptly to commence the cure of same within such

thirty (30) day period and diligently prosecutes the cure to

completion and provided further that in the case of an emergency,

Tenant shall be required to give only such notice as is reasonable

under the circumstances.

(c) Upon the occurrence of an Event of Default by

Landlord, at Tenant's option, Tenant may:

> (i) pay or perform such obligations and offset Tenant's
> reasonable and actual cost of performance, including any
> and all transaction costs and attorneys' fees, plus
> interest at the Default Rate, against ten percent (10%)
> of the next succeeding payment or payments of Base Rent
> payable hereunder if Landlord's default occurred prior to
> expiration the fifteenth (15th) Lease Year. If Tenant
> cures a default of Landlord at any time after expiration
> of the fifteenth (15th) Lease Year of the Term, Tenant
> may offset the cost or amount thereof from twenty-five
> percent (25%) of the next succeeding payment or payments
> Base Rent payable hereunder, except if Tenant would not
> recover the full amount of the cost thereof prior to
> expiration of the Term, in which event Tenant may offset
> the cost or amount thereof from such percentage of the
> next succeeding payment or payments Base Rent as
> necessary for Tenant to recover said cost or amount prior
> to expiration of the Term; or

> (ii) seek specific performance or declaratory or other
> equitable relief with respect to such failure; or

> (iii) terminate this Sublease and sue for damages (which
> shall be limited to damages specified in this Sublease
> where so limited), including interest, transaction costs
> and attorneys' fees as specified in subsection (i) above.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

If Landlord fails to pay Tenant the Tenant Improvement Allowance in a timely manner, Tenant shall be entitled to the rights and remedies set forth in the Construction Provisions in addition to those provided herein; and, as to a breach of the warranties and representations contained in paragraph 19, Tenant shall be entitled to the remedies provided therein, in addition to those remedies provided herein. The various rights and remedies reserved to Tenant herein are cumulative, and Tenant may pursue any and all rights and remedies, whether at the same time or otherwise.

(d) Tenant agrees to simultaneously give notice of any claim of default by Landlord hereunder to Major Lessor and the Mortgagee (provided Landlord has given Tenant the name and address of such Mortgagee). No notice of Landlord's default shall be effective against Major Lessor or a Mortgagee (the existence of which Landlord has given notice of to Tenant) unless and until Major Lessor or the Mortgagee, as is applicable, has been given a copy of such notice of default. Tenant agrees that either Major Lessor or the Mortgagee shall have the right, but not the obligation, to cure any default of Landlord under this Sublease and Tenant shall accept such cure as if Landlord had cured the default.

(e) Notwithstanding anything to the contrary contained in this Sublease, no officer, director, employee, agent or shareholder of Landlord or Tenant shall be personally liable for any of the respective obligations of Landlord or Tenant under this Sublease. Tenant shall look solely to the equity of Landlord in its leasehold

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

estate in the Premises (including the rents or other income receivable by Landlord with respect to the Premises, subject however, to the prior rights, if any, of any Mortgagee) and Landlord's interest in the Improvements, or any insurance proceeds or condemnation awards associated therewith (subject however, to the prior rights, if any, of any Mortgagee), for the satisfaction of any monetary award or judgement against Landlord, and Landlord shall not be liable for any deficiency.

32. <u>Waiver</u>. If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Sublease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Sublease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

33. <u>Compliance with Applicable Laws</u>. During the Term, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Improvements, and of the board of fire underwriters, respecting Tenant's use and occupancy of the Improvements. In the event that Tenant, within thirty (30) days' after receipt of written notice (except in the case of an emergency, in which event only such notice as is reasonable under

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent.

34. <u>Notices</u>. (a) Any notice demand, request, consent, approval or other communication permitted or required to be given pursuant to this Sublease shall be in writing and, any law or statute to the contrary notwithstanding, shall be given by registered or certified mail, postage prepaid, return receipt requested, or by any recognized overnight mail carrier (public or private) with proof of receipt available, addressed to the parties as follows:

| | |
|---|---|
| If to Tenant: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention:  Corporate Secretary |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention:  Vice President of Real Estate |
| If to Landlord: | BASILE LIMITED LIABILITY COMPANY<br>c/o Basile Enterprises, Inc.<br>43 Ridgecrest Lane<br>Bristol, Connecticut 06010<br>Attention: Victor J. Basile |

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

with a copy to:    Frank Appicelli, Esq.
                   Bingham, Dana & Gould
                   100 Pearl Street
                   Hartford, Connecticut 06103

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

(b)  Any notice hereunder shall be deemed to have been given or served on the date on which such notice is deposited with the United States Postal Service or such overnight carrier, and shall be deemed to have been received upon receipt, rejection or inability to deliver.

35.  <u>Brokers</u>.  Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Sublease, except for Robert L. Schayer, Jr. of the Triad Group, which shall be paid a commission by Landlord pursuant to their separate written agreement. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

36.  **Miscellaneous**.

(a)  **Headings and Gender**.  All paragraph headings, titles
or captions contained in this Sublease are for convenience only and
shall not be deemed a part of this Sublease and shall not in any
way limit or amplify the terms and provisions of this Sublease.
The masculine, feminine or neuter gender and the singular or plural
number shall be deemed to include the others whenever the context
so requires or indicates.

(b)  **Construction**.  The parties hereto agree that all the
provisions hereof are to be construed as covenants and agreements
as though the words importing such covenants and agreements were
used in each separate paragraph hereof.

(c)  **Waiver of Jury Trial**.  In the event of any court
action arising out of this Sublease, each party hereby expressly
waives its right to trial by jury.

(d)  **Relationship of Landlord-Tenant**.  Nothing contained
in this Sublease shall be deemed or construed by the parties hereto
or by any third person to create the relationship of principal and
agent, partnership, joint venture, or any other association between
Landlord and Tenant other than the landlord-tenant relationship
described herein.

(e)  **Entire Agreement; Merger**.  This Sublease, including
all exhibits hereto (which are hereby incorporated herein by refer-
ence for all purposes), contains the full and final agreement of
every kind and nature whatsoever between the parties hereto
concerning the subject matter of this Sublease, and all preliminary

62

negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein.   This Sublease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f)  Attorneys' Fees.  In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Sublease, to commence or defend any action or proceeding in any way connected with this Sublease or to seek a judicial declaration of rights under this Sublease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g)  Partial Invalidity.   If any provision of this Sublease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Sublease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h)  Consents.  Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

63

(i)  **Holidays.**  If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j)  **Applicable Law.**  This Sublease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.  Any action brought by Tenant against Landlord shall be brought exclusively in the State or Federal Courts sitting in the State of Maine and Landlord and Tenant consents to the jurisdiction of said courts.

(k)  **Successors and Assigns.**  All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l)  **Counterparts.**  This Sublease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Sublease.

(m)  **Trademarks and Trade Names.**  All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

(n)  **Arbitration.**  In any case where this Sublease provides for submission of a dispute or matter to arbitration, the same shall be in accordance with the procedural rules then in

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

effect of the American Arbitration Association or any successor thereto. The decision of the arbitrator shall be final, conclusive and binding on the parties, but the powers of the arbitrator are hereby expressly limited to the determination of factual issues, and he or she shall have no power to reform, supplement or modify this Sublease. Landlord and Tenant shall share equally in the cost and expense of such arbitration, and each shall separately pay its own attorneys' fees and expenses, unless the arbitrator finds that one of the parties did not act in good faith in connection with the dispute or the conduct of the arbitration proceeding, in which case he may award all or part of said costs, expenses and fees to the other party.

(o) <u>Major Lessor's Acts</u>. Notwithstanding anything to the contrary in this Sublease, whenever Landlord is required by the terms of this Sublease to cause the Major Lessor to consent or otherwise act, it shall mean that Landlord shall use commercially reasonable efforts to do so.

(p) <u>Accord and Satisfaction</u>. No receipt or acceptance by Landlord from Tenant of less than the full amount of Base Rent herein stipulated shall be deemed to be acceptance of any claim of setoff of Tenant or anything other than a partial payment on account for any due and unpaid stipulated Base Rent or any other charge due hereunder. No endorsement or any letter accompanying any check or payment of rent will be deemed an accord and satisfaction.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

37.    <u>Effectiveness of Sublease; Tenant's Right to Terminate</u>.
Notwithstanding the execution of this Sublease or any provision
hereof to the contrary, the parties hereto agree that the payment
of Ground Rent and the Base Rent Date are expressly conditioned
upon the complete satisfaction (or waiver) of each and all of the
following conditions:

(a) Tenant's receipt, within thirty (30) days after
the Commencement Date, of: (i) a commitment for leasehold
policy of title insurance for the Premises; and (ii)
copies of all underlying documents referred to in said
commitment for title insurance; and (iii) a survey
prepared by Tenant, and Tenant's approval of the
foregoing in writing within thirty (30) days after
receiving all of said documents. (Tenant shall be deemed
to have approved the condition of title to the Premises
unless within 30-days after the later of (x) receipt of
the information and documents referred to in (i), (ii),
and (iii) above, or (y) the date of execution and
delivery of this Sublease by both parties, Tenant has
delivered to Landlord notice of its disapproval or
objections.)

(b) Landlord's delivery of an estoppel certificate
executed and acknowledged by Major Lessor, certifying to
Tenant (x) that the Major Lease is in full force and
effect, (y) that the Major Lease has been unmodified;
(z) the amount and dates to which minimum rent and
additional rent have been paid, (xx) the commencement
date and currently existing expiration date of the Major
Lease, (yy) the number and term of options to extend the
term of the Major Lease remaining exercisable, and (zz)
whether Landlord is in default in the performance of any
obligation under the Major Lease on Landlord's part (as
lessee under the Major Lease) to be performed.

(c) Landlord's delivery of subordination, non-
disturbance and attornment agreements executed by Major
Lessor and any and all existing Mortgagees and Ground
Lessors in a form satisfactory to Tenant simultaneously
with the execution hereof.

(d) Landlord's delivery of the Land in the condition
specified in the Construction Provisions. In the event
that Landlord fails to deliver the Land in the condition
specified in the Construction Provisions on or before

66

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

September 1, 1996, Tenant shall have the right, on or
before October 1, 1996, to terminate this Sublease.

(e) Tenant's obtaining, on or before September 1,
1996, the required City, County and State permits and
approvals for development of the Premises and to
construct the Improvements on the Premises. Tenant
agrees to apply for such permits promptly as provided
herein, to use due diligence and to expend any necessary
application or other fees to secure such permits and
approvals; provided, however, that the foregoing shall
not be deemed to require Tenant to initiate litigation or
to agree to any conditions imposed upon issuance of any
such permit or approval. In the event that any and all
permits and approvals have not been obtained on or before
September 1, 1996, unless Tenant, on or before October
1, 1996, waives receipt thereof as a condition to the
payment of Ground Rent, this Sublease shall terminate.

(f) Landlord's representations, warranties and
covenants, including but not limited to those set forth
in paragraph 19 herein, being true and accurate as of the
Commencement Date.

(g) Tenant's obtaining satisfactory assurances,
within thirty (30) days of execution hereof, that
adequate utility services (including gas, electricity,
telephone, domestic water, fire protection water, storm
sewer and sanitary sewer) are available for connection at
the Premises or in close proximity thereto in amounts
sufficient to support Tenant's operations. Tenant agrees
to use commercially reasonable efforts to obtain said
assurances. (Utility services and availability shall be
deemed adequate unless, within sixty (60) days after the
Commencement Date Tenant has delivered to Landlord notice
of its dissatisfaction.)

(h) Tenant's obtaining, within thirty (30) days
after execution and delivery of this Sublease by Landlord
and Tenant, satisfactory assurances that all necessary
approvals and consents from non-governmental third
parties, including approvals or consents from Major
Lessor, have been obtained. Tenant agrees to use
commercially reasonable efforts to obtain said
assurances. (Unless Tenant, within sixty (60) days after
the Commencement Date advises Landlord of approvals and
consents which have not been obtained, all necessary
approvals and consents from non-governmental third
parties shall be deemed to have obtained).

(i) Tenant's obtaining, within one hundred twenty

67

(120) days after execution and delivery of this Sublease
by Landlord and Tenant, satisfactory written assurances
from Landlord that Landlord has obtained financing
adequate to fund the Tenant Improvement Allowance.

(j)  Approval of this Sublease by Tenant's Executive
Committee within thirty (30) days after the execution of
this Sublease by Landlord and Tenant.  The condition set
forth in this subparagraph (j) shall be irrevocably
waived by Tenant unless within thirty (30) days after
execution and delivery of this Sublease by Landlord and
Tenant gives notice to Landlord that approval by Tenant's
Executive Committee has been denied.  If Tenant, within
such 30-day period, gives notice of such denial, this
Sublease shall terminate.

The existence of the foregoing conditions is solely for the

benefit of Tenant (except subparagraph (i) which is also for the

benefit of Landlord as hereinafter provided), and Tenant may waive

any such condition at its sole discretion by delivering to Landlord

a written notice signed by Tenant which specifically states the

condition(s) being waived by Tenant.

Notwithstanding any other provision in this Sublease to the

contrary, in the event any of the foregoing conditions shall not be

met, satisfied or waived (or deemed waived), the parties hereto

expressly agree that Tenant shall have the right to terminate this

Sublease in its sole and absolute discretion at anytime subsequent

to the date set forth in this Sublease for performance or

satisfaction of such conditions, but prior to the satisfaction or

waiver thereof (unless a different time period is expressly set

forth for the exercise of such right), by delivering to Landlord a

written notice signed by Tenant which states that Tenant is

terminating this Sublease on account of the failure of one or more

68

of the foregoing conditions.  In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14.4, 19(a)(vi) and 19(b)(ii) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

If Landlord is unable to obtain financing adequate to fund the Tenant Improvement Allowance by reason of the prospective lender's disapproval of one or more provisions of this Sublease, Landlord shall give notice thereof to Tenant and Tenant shall have the opportunity, but not the obligation, to discuss, negotiate and modify the provision(s) which has/have been disapproved by the prospective mortgagee.  If Tenant and the prospective mortgagee are unable to agree on a modification of the disapproved provision(s) on or before October 1, 1996, Landlord shall have the right to terminate this Sublease in its sole and absolute discretion at anytime subsequent to October 1, 1996, but prior to Tenant and the prospective mortgagee agreeing on a modification of the disapproved provision(s), by delivering to Tenant a written notice signed by Landlord which states that Landlord is terminating this Sublease on account of the failure of Tenant and the prospective mortgagee to agree on a modification of the disapproved provision(s).  In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14.4, 19(a)(vi) and

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

19(b)(ii) hereof shall survive such termination) upon Landlord's delivery of said notice to Tenant.

The delivery of this executed Sublease by Tenant to Landlord constitutes the offer of the Tenant to the Landlord to bind Landlord and Tenant to the provisions of this Sublease, subject to the conditions set forth in this paragraph 37.   It is a further condition to the effectiveness of this Sublease that upon receipt of the executed Sublease from Tenant, the Landlord, without delay, execute and return same to the Tenant in accordance with any instructions delivered by Tenant or its legal counsel.   In the event the Landlord fails to immediately execute and return this Sublease, the Tenant may at any time after delivery of this Sublease provide written notice to the Landlord that Tenant revokes its delivery of the executed Sublease and thereupon the Landlord shall be immediately obligated to return to the Tenant all executed original counterparts as well as any copies of this Sublease in the possession of the Landlord, and this Sublease shall thereafter be null and void.

38.   <u>Confidentiality</u>.  The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Sublease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of this transaction.   This confidentiality agreement extends to any developers, bankers, lawyers, accountants, employees, agents or any other persons acting

70

on behalf of the parties hereto. The parties hereto agree to use
their best reasonable efforts to avoid discussing with, or
disclosing to, any third parties (except those parties listed
above) any of the terms, conditions or particulars in connection
with this transaction. It is specifically agreed by way of
illustration, but not by limitation, that the covenant of
confidentiality set forth herein shall not be breached if such
information is disclosed in connection with or due to any
governmental law or ordinance.

39. <u>Right of First Refusal</u>. If, at any time prior to the
Base Rent Date, Landlord desires to assign its leasehold estate in
the Land to an unrelated third party, Landlord shall offer to
Tenant the first right to purchase and assume Landlord's leasehold
interest in the Land on business terms reasonably acceptable to
Landlord and Tenant. Landlord shall deliver such offer to Tenant
by written notice and Tenant shall notify Landlord whether or not
it accepts such offer within thirty (30) days after receipt
thereof. If Tenant accepts such offer, Landlord and Tenant shall
enter into an agreement setting forth the agreed business terms and
other provisions reasonably acceptable to Landlord and Tenant. If
Tenant does not accept such offer, or if Tenant fails to notify
Landlord whether or not it accepts such offer within said 30-day
period, Landlord may assign its leasehold estate in the Land to any
other party on no more favorable terms and conditions than those
offered to Tenant. If Tenant declines or fails to respond to such

71

offer in the requisite time period, and Landlord then offers to assign its leasehold estate in the Land to another party on terms more favorable to such party than those originally offered to Tenant, Landlord shall reoffer to Tenant the right and option to purchase and assume Landlord's leasehold interest in the Land on such new terms, provided that Tenant shall accept such offer within fifteen (15) days after receipt thereof.


WITNESS the following signatures and seals:


LANDLORD

ATTEST (WITNESS):

Douora August Esposito

Frank Appicelli

TENANT

ATTEST:

Its: Assistant Secretary

BASILE  LIMITED  LIABILITY COMPANY,  a  Connecticut corporation

By: _____
Name: Victor J. Basile
Title: Managing Member

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: BENJAMIN B. CUMMINGS, JR.
Title: VICE PRESIDENT  V.V.

72



[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]



EXHIBIT "A-1"

LEGAL DESCRIPTION


A certain lot or parcel of land in the City of South Portland and Town of Scarborough, County of Cumberland and State of Maine, situated on the northerly side of the public way designated as Maine Mall Road in the City of South Portland and Payne Road in the Town of Scarborough, respectively, being bounded and described as follows:

Beginning at a monument marking the boundary of the City of South Portland and the Town of Scarborough, situated on the northerly sideline of the road designated as Maine Mall Road by the City of South Portland and Payne Road by the Town of Scarborough, which monument lies N 55° 28' 00" W a distance of 165.89 feet from a monument on said municipal boundary and marking the southerly sideline of said road;

Thence generally northeasterly along the northerly sideline of Maine Mall Road and along a curve to the left having a radius of 1829.86 feet an arc length of 333.25 feet to an angle point in Maine Mall Road;

Thence N 25° 39' 00" E along the northerly sideline of Maine Mall Road a distance of 43.14 feet to land now or formerly of Paul and Gayle Patry, being the second parcel conveyed by deed of Loran Properties II dated June 15, 1992 and recorded in the Cumberland County Registry of Deeds in Book 10163, Page 167;

Thence N 05° 44' 00" E along the westerly sideline of said Patry land a distance of 315.36 feet to an iron rod set at the land now or formerly of the Maine Turnpike Authority;

Thence generally southwesterly along said Maine Turnpike Authority land and along a curve to the left having a radius of 1569.12 feet an arc length 59.83 feet to an iron rod;

Thence S 49° 37' 12" W a distance of 167.37 feet;

Thence S 46° 58' 39" W a distance of 123.67 feet to an iron pin;

Thence S 38° 59' 17" E a distance of 20.04 feet to an iron pin;

1

Thence S 50° 44' 17" W a distance of 176.94 feet to an iron pin;

Thence S 34° 50' 16" W a distance of 204.74 feet to an iron pin;

Thence S 32° 07' 15" E a distance of 189.26 feet to an iron pin set in the northerly sideline of Payne Road;

Thence N 46° 37" E along the northerly sideline of Payne Road a distance of 90.56 feet to an angle point;

Thence generally northeasterly along the northerly sideline of Payne Road and along a curve to the left having a radius of 1829.26 feet an arc length of 51.68 feet to the point of beginning.

The foregoing parcel containing 3.48 acres.

Being a portion of the same premises described in a certain deed from Fleet Bank of Maine to Paul and Gayle Patry dated February 28,1992 and recorded in the Cumberland County Registry of Deeds in Book 9936, Page 108, and encompassing all of a site previously approved for development as shown on a Site Plan, 555 Maine Mall Road, South Portland, Maine prepared for Mermaid Transportation Company, Inc. by Land Resource Engineering, Inc., dated February 25,1992 and revised through September 16, 1992, which Site Plan was approved by the South Portland Planning Board on July 14, 1992.

The Premises shall be redescribed by metes and bounds legal description, reasonably acceptable to Tenant, Landlord and Major Lessor, to include the construction and development indicated on Exhibit A, and to include any required setbacks, determined by survey to be obtained by Tenant, which metes and bounds description shall be attached hereto as Exhibit "A-2" upon completion and as so attached shall be incorporated herein by reference for all purposes and shall supersede this Exhibit "A-1".

[J:\013363\155\basile4.Doc]
[March 22, 1996; DIVITA_R]

EXHIBIT "B"

INDEX OF DEFINITIONS

| **Term** | **Paragraph where defined** |
|---|---|
| Base Rent | 4.2(a) |
| Base Rent Date | 4.2(a) |
| Building | 2 |
| City | 1 |
| Commencement Date | 1 |
| Construction Term | 3 |
| Conveyance | 17 |
| CPI-U | 4.2(b)(ii) |
| Date of Taking | 16(a) |
| Default Rate | 29(b) |
| Event of Default (Landlord) | 31 |
| Event of Default (Tenant) | 29 |
| Facilitator | 23(b) |
| Foreclosure | 21 |
| Ground Lease | 21 |
| Ground Lessor | 21 |
| Ground Rent | 4.1(b) |
| Hazardous Substances | Ex. "C", para. 1 |
| Improvements | 2 |
| Land | 1 |

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

| | |
|---|---|
| Landlord | Introduction |
| Leaseback Transfer | 23(b) |
| Lease Year | 3 |
| Main Term | 3 |
| Major Lease | 1 |
| Major Lessor | 1 |
| Mortgage | 21 |
| Mortgagee | 21 |
| Option Period(s) | 3 |
| Permits | Ex. "C", para 2(c) |
| Other Improvements | 2 |
| Outside Date | 4.2(c) |
| Permitted Encumbrances | Ex. "F" |
| Person | 20 |
| Personalty | 23(a) |
| Plans and Specifications | Ex. "C", para. 2(a) |
| Premises | 1 |
| Products | 18(a) |
| Real Estate Taxes | 9(a) |
| Renewal Option | 3 |
| Schematic Floor Plan and Elevation | Ex. "C", para. 2(b) |
| Site Plan | 1 |
| Soils Report | Ex. "C", para 1(b) |
| State | 1 |
| Substantial Completion | Ex. "C", para. 2(d) |

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

| | |
|---|---|
| Substantially All of the Premises | 16(a) |
| Successor | 22 |
| Taking | 16(a) |
| Tenant | Introduction |
| Tenant Improvement Allowance | Ex. "C", para. 3 |
| Term | 3 |
| Transfer | 4.2(c) |
| Worth at the time of the award | 30(b) |

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

EXHIBIT "C"

CONSTRUCTION PROVISIONS

THESE CONSTRUCTION PROVISIONS (herein so called) are hereby
made a part of the Sublease between Landlord and Tenant to which
these Construction Provisions are attached as Exhibit "C".   All
defined terms shall have the meanings attributed to them in the
Sublease   unless   otherwise   specifically   defined   in   these
Construction Provisions.

1.   Landlord's Delivery of the Land.

Landlord shall deliver the Land to Tenant free of any pollution or
contamination from toxic or hazardous substances, asbestos or any
other chemicals or substances in amounts which exceed standards for
public health or welfare as established and regulated by any local
governmental authority, the State or the United States Government
(herein   collectively   referred   to   as   "Hazardous   Substances").
Landlord hereby grants Tenant and its agent access to the Premises
to enable Tenant to conduct such soil and environmental tests as
its deems necessary.

In the event that Landlord fails to deliver the Land to Tenant
free of any pollution or contamination from toxic or hazardous
substances, asbestos or any other chemicals or substances on or
before September 1, 1996, Tenant shall have the right, but not the
obligation, to (i) commence and/or complete removal or treatment of
Hazardous Substances, at Landlord's sole cost and expense, or (ii)

1

[J:\013363\155\baslie6.Doc]
[April 23, 1996; DIVITA_R]

terminate this Lease.     Tenant shall exercise this right by
providing Landlord with written notice thereof, which notice shall
reasonably detail the remediation which Tenant elects to undertake.
In the event and to the extent that Tenant exercises its right
hereunder, Landlord agrees to cooperate in good faith and provide
Tenant with reasonable assistance so that Tenant can complete said
removal or treatment of Hazardous Substances.   Landlord agrees to
reimburse Tenant for any and all costs incurred by Tenant in
connection with removal or treatment of Hazardous Substances within
thirty (30) days after receipt of written request from Tenant,
which request shall be reasonably supported by invoices and/or
written description of the work performed.  In the event that the
Landlord   does   not   timely   reimburse   Tenant   as   hereinabove
contemplated, Tenant shall be entitled to deduct the costs of such
removal or treatment of Hazardous Substances from rentals and other
payments due under the Sublease, together with interest at the
Default Rate from the date of expenditure by Tenant until paid in
full.   If there is a bona fide dispute between Landlord and Tenant
as to the existence of Hazardous Substances on, about or under the
Premises,   or   Tenant's   right   to   take   any   action   under   this
subparagraph, and Landlord, within ten (10) days after receipt of
Tenant's notice alleging such failure to perform, gives notice to
Tenant disputing the alleged failure, and within ten (10) days
thereafter commences an arbitration or other expedited dispute
resolution proceeding for determination of the dispute, Landlord
shall have no obligation to reimburse Tenant, and Tenant shall not

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_RI]

offset any amount from Base Rent, until the date which is ten (10)
days following the final determination of the arbiter, or in the
event the dispute is resolved before any such final determination,
within ten (10) days after the settlement or other resolution of
the dispute.   Nothing herein shall be construed to prevent Tenant
from performing the removal or treatment of Hazardous Substances
during the pendency of the proceeding, at Tenant's cost and expense
unless Landlord shall thereafter be found to have failed to
delivered the Premises free of Hazardous Substances as required by
these Construction Provisions.

      2.    <u>Tenant Improvements</u>.

      (a)   <u>Building Construction</u>.  The construction work on the
Improvements shall be performed by a duly licensed contractor
chosen by Tenant, shall be done in a good and workmanlike manner,
in compliance with the Permits (defined below) and all applicable
laws, and in substantial accordance with the "Plans and
Specifications" (defined below).  Tenant covenants and agrees to
use reasonable efforts and due diligence to achieve "Substantial
Completion" (as defined below) on or before the date which is seven
(7) months after the soil compaction surcharge has stabilized.

      (b)   <u>Plans and Specifications</u>.  Tenant shall prepare and
furnish to Landlord for its approval, not to be unreasonably
withheld, conditioned or delayed, complete civil engineering,
including site plan, grading plans and architectural drawings and
specifications and building elevations (the "Plans and

3

Specifications") for the development of the Premises and construction of the Building and Other Improvements. Landlord agrees that it will approve the Plans and Specifications, within ten (10) business days after receipt thereof, so long as (x) they are materially consistent with the Site Plan and Schematic Floor Plan and Elevation attached hereto as Attachment 1, and (y) they provide for materials and landscaping of the southwesterly entrance to the Premises and adjacent parking area consistent in quality with that of the main entrance to the Premises, and the exterior of the southwesterly walls of the Building (being the rear of the Building adjacent to the car stereo installation shop) being consistent in building materials and appearance with the other sides of the Building. In no event shall Landlord require Tenant to alter its building elevations, standard entrance tower, customer pickup area or use of Alucobond and red trim on the front exterior of the Building. If the Plans and Specifications are not disapproved by Landlord within fifteen (15) days of delivery thereof to Landlord, they will be deemed approved. The Plans and Specifications shall not be substantially changed by Tenant without the prior written consent of the Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.

(c) <u>Permits</u>. Tenant, at its sole cost and expense, shall obtain or cause to be obtained (x) all site plan approval and conditional use approval, if any, from governmental authorities having jurisdiction over the Premises, permitting Tenant's development of the Premises and construction of the Improvements,

4

including approvals for at least one curbcut into and out of the
Premises, which shall be or include the most westerly curbcut on
Maine Mall Road in the location indicated on the Site Plan; (y) all
on and off-site permits required for any work to be performed by
Landlord necessary to develop the Premises; and (z) those certain
building permits, licenses, other governmental approvals and
temporary and permanent certificates of occupancy which may be
required for the lawful construction and occupancy of the Premises
as a retail shopping facility in accordance with the Plans and
Specifications    (individually    and    collectively,    "Permits").
Landlord agrees to assist and cooperate fully, and to cause Major
Lessor to cooperate, with Tenant in obtaining such Permits.
Nothing herein shall be deemed to require Tenant to modify the Site
Plan or Tenant's Plans and Specifications in connection with the
issuance of, or to agree to or accept any conditions imposed upon
issuance of, any such Permit.

(d)  Landlord  Inspections.    During  the  course  of
construction of the Improvements, Landlord may, at its own risk and
in cooperation with Tenant's contractor, enter upon the Land for
purposes of inspecting the work, provided that such inspections
shall not interfere with Tenant's construction.

(e)  Substantial Completion.  Substantial completion of
the Improvements ("Substantial Completion") shall be deemed to
occur when a certificate of occupancy, whether temporary and
subject to minor items to be completed, or permanent, as the case
may be, has been issued by the applicable governmental authority.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

The foregoing shall not be deemed to relieve Tenant of its responsibility to complete the Improvements in accordance with the Plans and Specifications. Tenant shall deliver to Landlord a copy of all certificates of occupancy issued for the Premises

      (f)   "As Built" Plans. Upon completion of the Improvements, Tenant shall provide to Landlord a complete set of plans (including mechanical and electrical), marked to show "as built" conditions.

    3.  Costs. Upon Substantial Completion and Tenant's furnishing to Landlord (i) the certificates of insurance required under paragraph 14 of the Sublease, (ii) an indemnity in the form of Exhibit "J" attached hereto against any exception in Landlord's or its Mortgagee's policy of title insurance with respect to mechanics' liens arising out of Tenant's construction, (iii) confirmation from Tenant that Landlord holds title to the Improvements (by deed and bill of sale, representing only that Tenant is the sole owner of the Improvements free of claims of others, but without representations or warranties as to condition or fitness for any particular use or purpose), and (iv) certification that the Improvements have been constructed substantially in accordance with the Plans and Specifications, Landlord shall pay to Tenant a "Site Work Allowance" in the amount of Five Hundred Thousand ($500,000.00) Dollars and a "Building Allowance" in an amount equal to One Million Five Hundred One Thousand Five Hundred ($1,501,500.00) Dollars (the Site Work

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

Allowance and Building Allowance are herein collectively called the
"Tenant Improvement Allowance"), payable by wire transfer of funds
by Landlord to Tenant's account no later than thirty (30) days
after Substantial Completion.  If Landlord fails to pay the Tenant
Improvement Allowance in full within thirty (30) days after
Substantial Completion and receipt of items (i), (ii), (iii) and
(iv) above, the Landlord shall be in default hereunder, no Base
Rent or Real Estate Taxes shall be due or owing to Landlord until
the same is paid to Tenant, and interest shall accrue on the unpaid
Tenant Improvement Allowance at the Default Rate commencing on the
thirty-first (31st) day following Substantial Completion until the
date of payment of the Tenant Improvement Allowance.   If Landlord
fails to pay the Site Work Allowance in full within thirty (30)
days after Substantial Completion and receipt of items (i), (ii),
(iii) and (iv) above, the Landlord shall be in default hereunder,
and Tenant may, in addition to all other remedies available at law,
in equity or under the terms of this Sublease, deduct and offset
the Site Work Allowance from Ground Rent payable under the
Sublease.

     4. <u>Construction Delays</u>.  In the event, for any reason
whatsoever and regardless of force majeure, Tenant shall fail to
achieve Substantial Completion by that date which is the earlier of
November 1, 1998, or two (2) years  after conditions to the
effectiveness of the Sublease set forth in paragraph 37 have been
satisfied, Landlord shall be entitled to (but shall not be

7

obligated to) terminate this Sublease upon sixty (60) days prior written notice to Tenant, during which sixty (60) day period Tenant may cure any such default hereunder.  In the event Landlord elects to terminate the Sublease pursuant to this paragraph Landlord shall pay to Tenant, to the extent Landlord has derived benefit therefrom, the fees incurred in connection with architectural, engineering and/or legal services, and fees incurred in connection with obtaining Permits or otherwise paid to any governmental authority, and Tenant shall pay to Landlord the cost to raze any partially completed Improvements, or, at Tenant's election, the cost to complete construction of the Building and other Improvements in accordance with the Plans and Specifications.

5.   <u>Miscellaneous</u>.  Notwithstanding the foregoing, a delay by any party in exercising its cure rights or other remedies hereunder shall not be deemed an event of force majeure for purposes of extending the date(s) established for performance by the party whose actions or omissions gave rise to such cure rights or remedies.  All sums owing to Tenant under paragraph 1 hereof shall, to the extent applicable, be added to the Tenant Improvement Allowance and paid simultaneously therewith; and, if not so paid, Tenant shall be entitled to offset all such costs, plus interest at the Default Rate, against Ground Rent otherwise due hereunder.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

6.    <u>Attachments</u>.

"1"    Schematic Floor Plan and Elevation

[J:\013363\155\besile6.Doc]
[April 23, 1996; DIVITA_R]





## EXHIBIT "D"

STORE FIXTURES
ALL STORAGE RACKING
ALL SECURITY SYSTEM ITEMS
TELEPHONES AND PAGING SYSTEMS
COMPUTER SYSTEM
OFFICE FURNITURE AND TRASH RECEPTACLES
BATTERY CHARGER
TRASH COMPACTOR
SIGNS (INTERIOR/EXTERIOR)
ANTENNA SYSTEM
ELECTRONIC SWITCHING
AIR COMPRESSOR (ROADSHOP)
SAFE
CONVEYOR
MEDECO CYLINDER LOCKS (5)
REFRIGERATOR AND MICROWAVE USED BY EMPLOYEES
TACK BOARDS
WATER COOLER
FIRE EXTINGUISHERS
AUDIO ROOM FIXTURES AND SWITCHGEAR
PICTURES
WAREHOUSE AND MATERIAL HANDLING EQUIPMENT (MOVABLE LADDERS,
DOLLIES, ETC.)
TRACK LIGHTS (CANS ONLY, NOT TRACKS)

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

**EXHIBIT "E"**
Intentionally Omitted

1

## EXHIBIT "P"
### PERMITTED ENCUMBRANCES

1.   Taxes assessed and not due.

2.   Title to and rights of the public and others entitled thereto in and to those portions lying within the bounds of adjacent streets, roads and ways.

3.   Controlled access rights in favor of the State of Maine for portions of the premises bounded by the Maine Turnpike and Interstate Highway 295.

4.   Rights to controlled access in favor of the State of Maine as described in Notice of Layout and Taking by the Maine State Highway Commission dated April 30, 1969 and recorded in the Cumberland County Registry of Deeds in Book 3084, Page 842, and shown on Maine State Highway Commission Right of Way Map "State Highway 703" Project No. 709-9 (502) S.E.C. File No. 3-207 dated December 1968, Sheet 1 of 6 and recorded in said Registry of Deeds in Plan Book 111, Page 71.   Access along State Highway 703 is controlled northeasterly from P.C. Sta. 13.00.

5.   Emergency Access Permit Agreement by and between City of South Portland and Loran Properties dated August 28, 1986 and recorded in the Cumberland County Registry of Deeds in Book 7357, Page 346.

6.   Easement deed from Loran Properties to State of Maine dated March 1, 1988 and recorded in the Cumberland County Registry of Deeds in Book 8210, Page 157.

7.   Department of Environmental Protection Site Location Order for Southborough Office Park dated June 25, 1987 and recorded in the Cumberland County Registry of Deeds in Book 7941, Page 342.

8.   Department of Environmental Protection Site Location Order of Development Modification Findings of Fact and Order for Loran Properties and Southborough Office Park dated February 28, 1991 and recorded in the Cumberland County Registry of Deeds in Book 9498, Page 253.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

9.    Terms and conditions of Department of Environmental
Protection Site Location of Development Order regarding Paul and
Gayle Patry and Mermaid Transportation Co., Inc. dated October 15,
1992 and recorded in the Cumberland County Registry of Deeds in
Book 10403, Page 149.


Notwithstanding anything contained in this Exhibit "F" to the
contrary, nothing contained herein shall be construed to prohibit
the exercise of the rights and privileges granted to the Tenant
under the Sublease.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

## EXHIBIT "G"
## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
### (Mortgage)

THIS AGREEMENT, dated the _____ day of _____,
199 ___, between _____ ("Mortgagee"), and
CIRCUIT CITY STORES, INC., a Virginia corporation ("Tenant").

W I T N E S S E T H :

(a) Tenant has entered into a certain Sublease (the
"Sublease") dated _____, _____ with Basile Limited
Liability Company, ("Landlord"), covering premises located within
that certain property known as 555 Maine Mall Road, partially in
the City of South Portland and partially in the Town of
Scarborough, Cumberland County, Maine, and more particularly
described in Schedule A hereto (the "Premises"); and

(b) Mortgagee has made a loan to Landlord as evidenced and
secured by a Deed of Trust recorded _____, 199____ in the
land records of Cumberland County, Maine, in Book _____ at page
_____ (the "Mortgage"), encumbering the Premises; and the parties
hereto desire to set forth their agreement with regard to the
priority of the Mortgage and the effect thereof on Tenant and its
subleasehold interest in the aforesaid premises, as set forth
below.

NOW, THEREFORE, in consideration of the premises and the
sum of One Dollar ($1.00) by each party in hand paid to the other,
the receipt of which is hereby acknowledged, the parties hereby
agree as follows:

1.   The Sublease is and shall be subject and subordinate to
     the lien of the Mortgage insofar as it affects the real
     property of which the Premises form a part, and to all
     renewals, modifications, consolidations, replacements and
     extensions thereof, to the full extent of the principal
     sum secured thereby and interest thereon.

2.   Tenant agrees that it will attorn to and recognize any
     purchaser at a foreclosure sale under the Mortgage, any
     transferee who acquires the premises by deed in lieu of
     foreclosure, the successors and assigns of such
     purchasers, as its "landlord" for the unexpired balance
     (and any extensions, if exercised) of the term of the
     Sublease upon the same terms and conditions set forth in
     the Sublease.

3.   In the event that it should become necessary to foreclose
     the Mortgage, Mortgagee thereunder will not terminate the
     Lease nor join Tenant in summary or foreclosure

1

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

proceedings so long as Tenant is not in default under any
of the material terms, covenants, or conditions of the
Sublease, beyond any applicable cure period provided in
the Sublease.

4.    If Mortgagee or any future holder of the Mortgage shall
become the owner of the Premises by reason of foreclosure
of the Mortgage or otherwise, or if the Premises shall be
sold as a result of any action or proceeding to foreclose
the Mortgage, or transfer of ownership by deed given in
lieu of foreclosure, the sublease shall continue in full
force and effect, without necessity for executing any new
lease, as a direct lease between Tenant and the then
owner of the Premises, as "landlord", upon all of the
same terms, covenants and provisions contained in the
Lease, and in such event, such new owner shall be bound
to  Tenant  under  all  of  the  terms,  covenants  and
provisions of the Sublease for the remainder of the term
thereof (including any extensions, if exercised) which
such new owner hereby agrees to assume and perform, and
Tenant shall, from and after the date such new  owner
succeeds  to  the  interest  of  "landlord"  under  the
Sublease, have the same remedies against such new owner
for the breach of any covenant contained in the Sublease
that Tenant might have had under the Sublease against
Landlord if such new owner had not succeeded to the
interest of "landlord".

5.    Mortgagee consents to the application of casualty and
condemnation proceeds in accordance with paragraphs 15
and 16 of the Lease between Landlord and Tenant, whether
or not the Mortgage is then foreclosed.

6.    In the event that Mortgagee shall succeed to the interest
of Landlord under the Sublease, Mortgagee shall not be:
(a) liable for any act or omission of any prior lessor
(including Landlord); or
(b) liable for the return of any security deposits unless
delivered to Mortgagee; or
(c) bound by any rent or other periodic payments which
Tenant might have paid for more than the current month to
any prior lessor (including Landlord); or
(d)  bound by any amendment or modification of the
Sublease made without its consent, which consent shall
not be unreasonably withheld or delayed.

7.    Notwithstanding  anything  contained  herein  to  the
contrary, it is expressly understood and agreed that in
the event that Landlord defaults in the payment of the

2

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

Tenant Improvement Allowance, as defined in the Sublease, and Mortgagee acquires title to the Premises by foreclosure or otherwise, Mortgagee shall become liable for payment of the Tenant Improvement Allowance to Tenant, and Tenant shall otherwise be entitled to effect a Transfer all in accordance with the terms of the Sublease.

8.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

ATTEST:                              CIRCUIT CITY STORES, INC.,
                                     a Virginia corporation

_____            By:_____
_____               _____


ATTEST:                              COMPANY NAME


_____            By:_____
_____               _____



Note: Attach appropriate notary blocks for the State.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

## EXHIBIT "G"

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

### (Ground Lease)

RECORD AND RETURN TO:
Robert R. DiVita, Esq.
Sills, Cummis, Zuckerman, et al
One Riverfront Plaza
Newark, New Jersey 07102

-------------------------------------------------------------------

### SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
### (Major Lease)

THIS AGREEMENT, dated the _____ day of _____,
1996, between PATRY ENTERPRISES, INC., a Maine corporation ("Ground
Lessor"), and CIRCUIT CITY STORES, INC., a Virginia corporation
("Tenant").

### W I T N E S S E T H :

A. Tenant has entered into a certain Sublease (the "Sublease")
dated _____, _____ with Basile Limited Liability Company,
a Connecticut limited liability company ("Landlord"), covering
premises known as 555 Maine Mall Road partially in the Town of
Scarborough and partially in the City of South Portland, Cumberland
County, Maine (the "Property"), which property is shown on Exhibit
A annexed hereto and hereby made a part hereof and more
particularly described by legal description on Exhibit B annexed
hereto and hereby made a part hereof; and

B. Paul R. Patry and Gayle L. Patry (Ground Lessor's
predecessor-in-interest) entered into a Lease with Landlord, dated
as of November 1, 1995 as amended by letter agreement dated
November 8, 1995, **First Amendment to Ground Lease dated December
28, 1995 and Second Amendment to Ground Lease dated on or about the
date hereof** (said Ground Lease Agreement, as amended is herein
referred to as the "Major Lease"), covering the Property. The
parties hereto desire to set forth their agreement with regard to
the priority of the Major Lease and the effect thereof on Tenant
and its subleasehold interest in the aforesaid premises, as set
forth below.

1

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1.   The Sublease is and shall be subordinate to the Major Lease insofar as it affects the real property of which the premises form a part thereof, subject however to the terms of this Agreement.

2.   Ground Lessor approves the Sublease in accordance with Section 24(a) of the Major Lease and all of the terms, covenants and provisions thereof, and agrees that the exercise by Tenant of any of the rights of Tenant thereunder shall not constitute a default under the Major Lease, subject however to the terms of this Agreement.

3.   Tenant agrees that it will attorn to Ground Lessor and any successor to the Ground Lessor by deed or otherwise as its "landlord" for the unexpired balance (and any extensions, if exercised) of the term of the Sublease upon the same terms and conditions set forth in the Sublease, in the event of a termination of the Major Lease.

4.   In the event of the termination of the Major Lease by reentry, notice, conditional limitation, surrender, summary proceeding or other action or proceeding, or otherwise, or, if the Major Lease shall terminate or expire for any reason before any of the dates provided in the Sublease for the termination of the initial or renewal terms of the Sublease and if immediately prior to such surrender, termination or expiration the Sublease shall be in full force and effect, the Sublease shall continue in full force and effect as a direct lease from Ground Lessor to Tenant for the remainder of the term of the Sublease (including any extensions, if exercised) without the necessity of executing a new Sublease, on the same terms and conditions as are in effect under the Sublease immediately preceding the termination of the Major Lease (as modified by the terms of this Agreement), and in such event, such Ground Lessor shall be bound to Tenant under all of the terms, covenants and provisions of the Sublease (as modified by the terms of this Agreement) for the remainder of the term thereof (including any extensions, if exercised) which Ground Lessor hereby agrees to assume and perform, and Tenant shall, from and after the date Ground Lessor succeeds to the interest of "landlord" under the Sublease, have the same remedies against Ground Lessor for the breach of any covenant contained in the Sublease that Tenant might

2

have had under the Sublease against Landlord if Ground Lessor had
not succeeded to the interest of "landlord", subject however, to
the terms of this Agreement.

5.    In the event that it should become necessary to terminate
the Major Lease, Ground Lessor thereunder will not terminate the
Sublease nor join Tenant in summary proceedings so long as Tenant
is not in default under any of the material terms, covenants, or
conditions of the Sublease, beyond any applicable cure period
provided in the Sublease.

6.    Ground Lessor consents to the application of casualty and
condemnation proceeds in accordance with paragraphs 15 and 16 of
the Sublease between Landlord and Tenant, whether or not the Major
Lease has been terminated.

7.    In the event that Ground Lessor shall succeed to the
interest of Landlord under the Sublease, Ground Lessor shall not
be:

    (a) liable for any act or omission of any prior lessor
(including Landlord), including, without limitation, any
breach of Landlord's representations or warranties set
forth in Paragraph 19 of the Sublease; or

    (b) liable for the return of any security deposits unless
delivered to Ground Lessor; or

    (c) bound by any rent or other periodic payments which
Tenant might have paid for more than the current month to
any prior lessor (including Landlord); or

    (d) bound by any amendment or modification of the
Sublease made without its consent, which consent shall
not be unreasonably withheld or delayed.

8.    Notwithstanding anything contained herein to the
contrary, it is expressly understood and agreed that in the event
that Landlord fails to pay the Tenant Improvement Allowance, as
defined in the Sublease, within eight (8) months after "Substantial
Completion" (as such term is defined in the Sublease) and Ground
Lessor terminates the Major Lease, Ground Lessor shall, within one
hundred fifty (150) days after the expiration of said 8-month
period, pay the Tenant Improvement Allowance to Tenant, failing
which Tenant shall be entitled to effect a Transfer in accordance
with the terms of the Sublease.

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

9.   Notwithstanding any contained in the Major Lease to the contrary, for so long as Circuit City Stores, Inc., or any "affiliate" or "successor" remains "Tenant" under the Sublease:

(a) Tenant shall have the right to self-insure against any of the risks or portions thereof which Landlord (as lessee) is required to insure under the Major Lease, provided Tenant is then occupying the Premises and has a reported net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than Seventy-Five Million Dollars ($75,000,000), as computed in accordance with generally accepted accounting principles, consistently applied, as determinable from Tenant's public disclosures and/or regularly maintained corporate balance sheets which are generally available to shareholders (no right of Ground Lessor to audit or conduct independent investigations being implied by this provision);

(b) provided (x) Tenant has a reported net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than Seventy-Five Million Dollars ($75,000,000), or (y) the cost of the subject construction, alteration, replacement or reconstruction does not exceed $100,000, Tenant shall not, in connection with the initial construction of its building and other improvements, or any alteration, replacement or reconstruction thereof, be required to provide copies of its construction contracts; nor bonds of any nature; nor evidence of construction financing; nor "as built" plans (provided however, notwithstanding anything herein to the contrary, Tenant agrees to give to Ground Lessor a copy of any plans and specifications required to be delivered to Landlord under the Sublease).   Tenant hereby indemnifies and agrees to defend and hold Ground Lessor harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Ground Lessor's interest in the Premises.   In the event that any mechanic, materialman or other claimant makes claim against the Premises based upon materials or services provided under contract with Tenant, Tenant shall indemnify and hold Ground Lessor harmless from any loss, payment, claim or expense (including, without limitation, reasonable attorneys' fees) related thereto. Tenant reserves the right however to contest in good faith the amount of any

4

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

claim or lien assessed against the Premises by any of
such claimants; provided, however, should the holder or
holders of such claim or lien attempt to enforce their
lien by foreclosure by any other means, Tenant shall bond
around, pay or remove such lien by any manner reasonably
necessary to protect Ground Lessor's interest in the
Premises.  **Tenant agrees to defend, indemnify and hold
Ground Lessor, its officers, directors, agents, servants
and employees harmless from and against any and all
losses, claims, liabilities, actions, damages, costs and
expenses (including without limitation, reasonable
attorneys' fees) to third parties arising out of or in
connection with the initial construction of its building
and other improvements, or any alteration, replacement or
reconstruction thereof by Tenant;**

(c) nothing in the Major Lease shall be deemed or
construed as an obligation on the part of Tenant to
continuously operate at or from the premises; and

(d) notwithstanding anything in the Major Lease, Ground
Lessor acknowledges that Tenant's car stereo installation
facility is not, and shall not be considered to be, an
automobile repair station.

As used herein, the term "affiliate" shall mean any person, firm,
corporation, partnership, association or other business entity
which directly or indirectly, through one or more intermediaries,
controls, is controlled by or is under common control with Tenant.
As used herein, the term "successor" shall mean any successor to
Tenant by merger, consolidation or operation of law or the
purchaser of all or substantially all of the assets of Tenant in
the State of Maine.

10.  In the event that Ground Lessor shall succeed to the
interest of Landlord under the Sublease, the definition of "Ground
Rent" set forth in Paragraph 4.1(b) of the Sublease shall be
modified to read as follows:

"As used herein, the term "Ground Rent"
shall mean a sum equal to 'Rent' payable
under the Major Lease in accordance with
the terms thereof in effect on the date
hereof."

5

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

11.    Ground Lessor specifically covenants and warrants that no third party claiming by, through or under Ground Lessor, or pursuant to any agreement with Ground Lessor, has the right to object to Tenant's tenancy hereunder, prohibit the selling, renting, servicing, repairing or warehousing of the Products (as such term is defined in the Sublease), or the right to consent to any feature of the Improvements (as such term is defined in the Sublease) (other than Ground Lessor's approval of those features affecting Ground Lessor's development of adjacent property as referenced in the Sublease), or Tenant's signage.    This representation and warranty is a material inducement to Tenant's execution of the Sublease.

12.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their successors and assigns.


IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

ATTEST:

CIRCUIT CITY STORES, INC.,
a Virginia corporation


By: _____
     Name: _____
     Title: _____



ATTEST:

PATRY ENTERPRISES, INC.,
a Maine corporation


By: _____
     Paul R. Patry
     President



6

STATE OF VIRGINIA          )
                           )ss.:
COUNTY OF                  )


On _____, 1996, personally appeared before me the above named _____, _____ of CIRCUIT CITY STORES, INC., a Virginia corporation, and acknowledged the foregoing instrument to be his free act and deed in his said capacity and the free act and deed of Circuit City Stores, Inc.


                    _____
                          Notary Public
                    Print Name:_____
                    My Commission Expires:_____




STATE OF MAINE             )
                           )ss.:
COUNTY OF CUMBERLAND        )


On _____, 1996, personally appeared before me the above named Paul R. Patry, President of PATRY ENTERPRISES, INC., a Maine corporation, and acknowledged the foregoing instrument to be his free act and deed in his said capacity and the free act and deed of Patry Enterprises, Inc.


                    _____
                          Notary Public
                    Print Name:_____
                    My Commission Expires:_____


7

## EXHIBIT "H"

### MEMORANDUM OF SUBLEASE

This Memorandum of Sublease is made this _____ day of
_____, 199___, between BASILE LIMITED LIABILITY
COMPANY, a _____ (hereinafter referred to as
"Landlord"), and CIRCUIT CITY STORES, INC., a Virginia
corporation (hereinafter referred to as "Tenant").

### W I T N E S S E T H:

Landlord and Tenant have entered into a Sublease (the
"Sublease") dated _____, 199___, whereby Landlord has
leased to Tenant certain real property (the "Property") located
at 555 Maine Mall Road, partially in the City of South Portland
and partially in the Town of Scarborough, Cumberland County,
Maine, the legal description of which Property is set forth on
Exhibit "A-1" attached hereto.  The Sublease contains provisions
and rights appurtenant to the Property, some of which are as
follows:

I.   Term.  The term of the Sublease is for a period of
     twenty (20) years, commencing on the Commencement Date
     (as established in the Sublease based upon the
     substantial completion of the improvements upon the
     Property).  Thereafter, Tenant has the right under the
     Sublease to renew and extend the term of the Sublease
     for four (4) successive periods of five (5) years each.

II.  Successors.  The covenants, conditions and agreements
     made and entered into by the parties hereto shall be
     binding upon and inure to the benefits of their
     respective heirs, administrators, executors,
     representatives, successors and assigns.

III. Incorporation of Sublease.  All terms and conditions of
     the Sublease are hereby incorporated herein by
     reference as if fully set forth herein.

IV.  Conflicts with Sublease.  This Memorandum of Sublease
     is solely for notice and recording purposes and shall
     not be construed to alter, modify, expand, diminish or
     supplement the provisions of the Sublease.  In the
     event of any inconsistency between the provisions of

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

this Memorandum of Sublease and the provisions of the
Sublease, the provisions of the Sublease shall govern.

IN WITNESS WHEREOF, this Memorandum of Sublease has been
duly executed by the parties hereto as of the day and year first
above written.

ATTEST:                                    BASILE LIMITED LIABILITY
                                           COMPANY,
                                           a Connecticut corporation


By:_____                By:_____
     Secretary                             Name:_____
                                           Title:_____



                                           CIRCUIT CITY STORES, INC.,
Attest:                                    a Virginia corporation


By:_____                By:_____
     Secretary                             Name:_____
                                           Title:_____



Note: Attach appropriate notary blocks for the State.


2                          [J:\013363\155\basile6.Doc]
                                           [April 23, 1996; DIVITA_R]

## EXHIBIT "I"

### COMMENCEMENT DATE AGREEMENT

THIS AGREEMENT, made as of this ____ day of _____, 19__, between BASILE LIMITED LIABILITY COMPANY (herein called "Landlord"), and CIRCUIT CITY STORES, INC. (herein called "Tenant").

### W I T N E S S E T H:

WHEREAS, Landlord is the lessee of certain premises situated at 555 Maine Mall Road, partially in the City of South Portland and partially in the Town of Scarborough, Cumberland County, Maine (herein called the "Premises"); and

WHEREAS, by that certain Sublease dated _____, 19__ (herein called the "Sublease"), Landlord subleased the Premises to Tenant; and

WHEREAS, a memorandum or short form Sublease in respect of the Sublease was recorded in the office of the Clerk of Cumberland County, Maine, on the ____ day of _____, 19__, in Book _____ at Page ____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Sublease has commenced; and

WHEREAS, under Paragraph 25 of the Sublease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Sublease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1. The term of the Sublease commenced on, and the Commencement Date (as such term is defined in the Sublease) was, _____, 19__. The term of the Sublease shall expire on January 31, ____ unless Tenant exercises any option to extend the term of the Sublease or unless the Sublease terminates earlier as provided in the Sublease.

2. The date of commencement of the first "Option Period" (as such term is defined in the Sublease) shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Sublease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Sublease or the Sublease terminates earlier as provided

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

## EXHIBIT "J"

### INDEMNIFICATION AGREEMENT

This Indemnification Agreement is made this _____ day of _____, 199__, between BASILE LIMITED LIABILITY COMPANY, a Connecticut corporation (hereinafter referred to as "Landlord") and CIRCUIT CITY STORES, INC., a Virginia corporation (hereinafter referred to as "Tenant").

### WITNESSETH

Landlord and Tenant have entered into a Sublease (the "Sublease") dated _____ whereby Landlord has subleased to Tenant a portion of the real property located at 555 Maine Mall Road, partially in the City of South Portland and partially in the Town of Scarborough, Cumberland County, Maine and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Tenant Improvement Allowance as defined in the Sublease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    The Tenant hereby indemnifies and agrees to hold the Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises. In the event that any mechanic, materialman or other claimant makes claim against the Premises based upon materials or services provided under contract with the Tenant, the Tenant shall hold harmless and protect the Landlord from any loss, payment, claim or expense related thereto.

2.    The Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises by

1

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

in the Sublease.

3. The date of commencement of the second Option Period shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Sublease shall expire on January 31, _____ unless Tenant exercises any option to further extend the term of the Sublease or the Sublease terminates earlier as provided in the Sublease.

4. The date of commencement of the third Option Period shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Sublease shall expire on January 31, _____ unless Tenant exercises any option to further extend the term of the Sublease or the Sublease terminates earlier as provided in the Sublease.

5. The date of commencement of the fourth Option Period shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Sublease shall expire on January 31, _____ unless Tenant exercises any option to further extend the term of the Sublease or the Sublease terminates earlier as provided in the Sublease.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

ATTEST:                              BASILE LIMITED LIABILITY
                                     COMPANY, a Connecticut
                                     corporation


By:_____          By:_____
      Secretary                      Name:_____
                                     Title:_____




Attest:                              CIRCUIT CITY STORES, INC.


_____     By_____
Assistant Secretary                       Vice President


[J:\013363\155\basile6.Doc]
                                    [April 23, 1996; DiVITA_R]

any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure by any other means, the Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises.   This indemnity and hold harmless shall not apply to any liens or claims caused by the Landlord or Landlord's agents.

EXECUTED this _____ day of _____, 199__.

**LANDLORD**                           BASILE  LIMITED  LIABILITY  COMPANY,

a Connecticut corporation

By:_____
Name:_____
Title:_____

**TENANT**

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:_____
Name:_____
Title:_____

[J:\013363\155\basile6.Doc]
[April 23, 1996; DIVITA_R]

**Basile Limited Liability Company**
*42 Ridgecrest Lane*
*Bristol, Connecticut 06010*

June 10, 1997

Patry Enterprises
P.O. Box 10676
Portland, Maine 04104

Re:   *555 Maine Mall Road, South Portland and Scarborough, Maine*

Ladies and Gentlemen:

    Reference is made to the Ground Lease dated as of November 1, 1995 between Patry Enterprises, Inc. (successor to Paul Patry and Gail Patry) ("Landlord") and Basile Limited Liability Company ("Tenant"), as amended by First Amendment to Ground Lease dated as of December 28, 1995 and Second Amendment to Ground Lease dated as of June, 1996 (as so amended, the "Ground Lease"). All undefined capitalized terms used herein shall have the meanings ascribed to them in the Ground Lease. Capital Lease Funding, L.P. has made a loan (the "Loan") to the Tenant as evidenced and secured by Deed of Trust (the "Deed of Trust") recorded June ___, 1997 in the Land Records of Cumberland County, Maine in Book ___ at Page ___ encumbering the Premises. The Landlord hereby agrees that so long as any part of the Loan is unpaid or the Deed of Trust remains a lien on the Premises, any interest on any overdue installments of Rent which is payable under Section 4.4 of the Ground Lease shall accrue from the twentieth (20th) day after such overdue installment of Rent was due until paid in full.

    Upon repayment in full of the Loan and the release of the Deed of Trust, the Tenant shall cause the monthly installments of Rent to be paid to the Landlord by electronic funds transfer or other automatic debit satisfactory to the Landlord. If the Tenant fails to make the payment arrangements described in the preceding sentence upon the repayment in full of the Loan and the release of the Deed of Trust, then the provisions of this letter agreement shall be null and void and of no further force or effect. Please indicate your agreement and acceptance of the terms of this letter by executing this letter below.

                    Very truly yours,

                    BASILE LIMITED LIABILITY COMPANY
                    By:  BASILE PORTLAND CORP.
                        Its Managing Member

                    By: _____
                        Victor J. Basile, Its President

PATRY ENTERPRISES, INC.

By: _____
    Paul Patry, Its President

HAR:107620.3