Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000
              - and –
Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653-KRH
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDERS UNDER 11 U.S.C. §§ 105, 363, AND 365 (I) APPROVING BIDDING AND AUCTION PROCEDURES FOR SALE OF UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES FOR CLOSING STORES, (II) SETTING SALE HEARING DATE, AND (III) AUTHORIZING AND APPROVING (A) SALE OF CERTAIN NONRESIDENTIAL REAL PROPERTY LEASES FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES, AND (C) LEASE REJECTION PROCEDURES**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move this Court (the "Motion") for entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules), (i) approving bidding and auction procedures for sale of certain nonresidential real property leases, (ii) setting a sale hearing date, and (iii) authorizing and approving (a) the sale of certain nonresidential real property leases free and clear of liens, claims, and encumbrances, (b) the assumption and assignment of certain executory contracts and unexpired leases, and (c) lease rejection procedures for any leases that are not sold in connection with the foregoing. In support of the Motion, the Debtors respectfully represent:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief requested here are Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014.

**BACKGROUND**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and oper-ate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    Based in Richmond, Virginia, Circuit City is a leading specialty retailer of consumer electronics and operates large nationwide electronics stores throughout the United States and Puerto Rico that sell, among other things, televisions, home theater systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.  Circuit City also maintains two websites -- www.circuitcity.com and www.firedog.com -- for, among other things, online product sales, product information, customer service, and investor information, as well as a phone-order call center for, among other things, tele-phone product sales and customer service.

7.    Despite high revenues, the Debtors have suffered two consecutive years of losses.  While the Debtors made every effort to improve their financial performance and implement a global turnaround strategy, they were ultimately unable to consummate a successful restructuring outside of bankruptcy.  In large part, the Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

8.    Thus, the Debtors have commenced these cases with the immediate goals of obtaining adequate postpetition financing, continuing the restructuring initiatives commenced before the filing of these cases, including the closing of a number of the Debtors' stores, and rejecting unnecessary unexpired leases of non-residential real property.  Once these initial goals are satisfied, the Debtors will attempt to work closely with their vendors and enhance customer relations and hope to be in a position to emerge from chapter 11 in first half of 2009.

**RELIEF REQUESTED**

9.    By this Motion, the Debtors seek approval for the sale (the "Sale") of unexpired leases of non-residential real property for locations at which the Debtors commenced store closing sales prior to the Petition Date, as identified on Exhibit B attached hereto (the "Leases").  To effect the Sale and dispose of any remaining unnecessary Leases following the conclusion of the store closing sales, the Debtors seek three types of relief.  First, at the omnibus hearing to be held on December 5, 2008, the Debtors will seek entry of an order

substantially in the form attached hereto as Exhibit A

(the "Bidding And Rejection Procedures Order") approving

the bidding procedures attached to the Bidding Proce-

dures Order as Exhibit 1 (the "Bidding Procedures"), and

the rejection procedures described more fully herein.

Second, subject to the terms of the Bidding Procedures

Order, at the omnibus hearing to be held on December 22,

2008 (the "Sale Hearing"), the Debtors will seek entry

of an order authorizing and approving the Sale of any of

the Leases to the highest or best bidder free and clear

of all liens, interests, claims and encumbrances, in-

cluding the assumption and assignment of the Leases.

The Debtors further seek authority under Bankruptcy Code

sections 105(a) and 554 to abandon any equipment, furni-

ture, or fixtures located at the underlying Lease prem-

ises on the Rejection Date (the "Abandoned Property").

### BASIS FOR RELIEF

10.  On the Petition Date, the Debtors filed a

motion for authorization to continue store closing sales

commenced prepetition at 154 locations,[2] and this Court
approved the motion, subject to certain ongoing objec-
tion rights, on the same day (Docket No. 82).  The Debt-
ors' agreement with the store closing agent provides
that the agent will pay expenses under the Leases while
the store closing sales are conducted, and further pro-
vides that the agent will pay for a full week's expenses
at a location for any partial week in which the sale is
conducted at such a location.  The store closing sales
have continued and are scheduled to conclude at various
times through the month of December, after which time
the Debtors will again be responsible for expenses under
the Leases. These monthly expenses for the Leases are
approximately $6 million, and the Debtors accordingly
intend to resolve the status of the Leases as quickly as
possible following the conclusion of the store closing
sales.

---

[2]   Motion of the Debtors for Entry of Order Pursuant to Bankruptcy
      Code Sections 105, 363 and 365 (I) Assuming the Agency Agreement
      Among the Debtors, Hilco Merchant Resources, LLC and Gordon
      Brothers Retail Partners, LLC, and (II) Authorizing the Debtors
      to Continue Agency Agreement Sales Pursuant to Store Closing
      Agreement (Docket No. 24).

11.   By separate motion, the Debtors intend to seek to retain a real estate consultant and advisor (the "Real Estate Advisor") in connection with, among other things, the Debtors' marketing and sale of the Leases. The Real Estate Advisor will actively work to market the Leases and will provide appropriate information to any interested party, including potential purchasers identified by the Real Estate Advisor and consisting of retailers, brokers and other parties.   The Real Estate Advisor will also include information about the Leases on its website, including the Bidding Procedures.

**I.   BIDDING PROCEDURES**

12.   The Debtors believe that the proposed structure of the Bidding Procedures is the one most likely to maximize the realizable value of the Leases for the benefit of the Debtors, their estates, their stakeholders, and other interested parties.   The salient terms of the Bidding Procedures are as follows:[3]

---

[3]   In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the provisions of the Bidding Procedures control.   Capitalized terms used but not otherwise defined in this summary have the meanings ascribed to them in the Bidding Procedures.

Bid Deadline:  All bids must be received, in writing, by December 15, 2008 at 3:00 p.m. (ET).  The Debtors could extend the bid deadline once or successively, but would not be obligated to do so.

Auction: An auction for any Leases for which the Debtors receive more than one bid would be conducted on December 18, 2008 beginning at 10:00 a.m. (ET).

Due Diligence:  All bidders would be afforded an opportunity to participate in the diligence process and would acknowledge in their bids that they had sufficient opportunity to conduct diligence.

Bid Requirements: All bids would be required to include the following documents: (i) a letter identifying the full name and identity of the proposed assignee of each individual Lease subject to the bid and stating that the bidder's offer would be irrevocable until the earlier of (a) the Closing or (b) 30 days following the Auction, (ii) a good faith deposit equal to the greater of 15% of the bid amount or $5,000 for each Lease on which the bidder submits a bid.

Sale Hearing, Adequate Assurance: Any successful bidder would be required to be prepared to provide evidence of its ability to perform under any Lease it purchases at the Sale Hearing.

Bids on Lease Packages: The Debtors would have discretion to accept bids for individual Leases.

Closing: The Debtors request that, absent agreement by the Debtors to the contrary, the closing of the sale of a Lease shall

take place within two business days of the
Court's approval of the sale at the Sale
Hearing.

## II.   NOTICE, CURE AND REJECTION PROCEDURES

13.   The Debtors believe that they are current
on their obligations under the Leases, except with re-
spect to the amounts identified on Exhibit B attached
hereto.[4]  The Debtors propose that unless a party to a
Lease files an objection to the Motion asserting a dif-
ferent cure amount than that listed on Exhibit B, on or
before December 10, 2008 at 4:00 p.m. (ET), then such
party should be forever barred from asserting a cure
amount different from that set forth on Exhibit B (ex-
cept for any amounts accruing from the Petition Date
through the date of assignment).  Any such cure disputes
caused by a valid and timely objection will be resolved,
as necessary, either at the Sale Hearing or such later
date as may be scheduled by the Court.

---

[4]   The prepetition amounts reflected on Exhibit B were calculated
based on the assumption that amounts that accrued prepetition,
including in the first nine days of November, 2008, were properly
subject to being cured if a particular Lease is assumed.  The
Debtors reserve the right to otherwise assert that all amounts
that were billed prepetition are prepetition obligations.

14.   The Debtors further propose that any ob-
jection to the procedures set forth herein shall be
filed and served so as to be received by no later than
December 3, 2008 at 4:00 p.m. (ET).

15.   To ensure that the Debtors do not unnec-
essarily expend estate resources on Leases that will not
be assumed and assigned and have no further value to the
estates following completion of the store closing sales,
the Debtors also propose that the Bidding And Rejection
Procedures Order provide that the Leases would be deemed
rejected as of December 31, 2008, unless either (i) the
parties otherwise agree in writing or (ii) the Debtors
provide the Lease party with a notice of potential pur-
chaser substantially in the form attached hereto as Ex-
hibit C (the "Potential Purchaser Notice") on or before
December 16, 2008 at 3:00 p.m. (ET).   The Debtors will
concurrently post a list of Leases subject to Potential
Purchaser Notices on the website for the Debtors' claims
and noticing agent, www.kccllc.net/circuitcity, as well
as the website for the Real Estate Advisor.

16.   For any Lease that is subject to a Poten-
tial Purchaser Notice and thus withdrawn from automatic

rejection under the Bidding And Rejection Procedures Order, the Debtors request that rejection of such Lease also be effective as of December 31, 2008 if the Debtors elect not to sell such Lease.  The Debtors will add a schedule of any such Leases to the Sale Order, if necessary.

17.  The Potential Purchaser Notice will identify any potential bidders as potential parties to which the Leases would be assigned.  The Potential Purchaser Notice would give the Debtors the ability to address promptly any adequate assurance issues that Lease parties may have with any of the potential bidders for their respective Lease.  The Debtors propose that the counterparties to any such Lease be required to file an objection to the assumption and/or assignment of the Leases (other than objections with respect to the rejection procedures described above or cure, which must be filed by December 3, 2008 or December 10, 2008, respectively, as set forth above) by December 20, 2008 at 4:00 p.m. (ET), and such parties would be required to state, with specificity, the legal and factual basis of any objection, unless otherwise ordered by this Court.

18.   Additionally, the Debtors have determined that the abandonment of the Abandoned Property with respect to any unsold Lease that is rejected is appropriate because such property is of inconsequential value and/or the cost of removing and storing such property exceeds its value to the Debtors' estates.   Moreover, the Debtors believe that the Abandoned Property no longer is necessary for the operation of the Debtors' businesses.

## III. LEASE TERMINATION AGREEMENTS

19.   In the event that a non-Debtor Lease party is the successful bidder for its Lease, the Debtors request authorization to enter into a Lease termination agreement with any such non-Debtor Lease party.

### APPLICABLE AUTHORITY

## IV.   THE RELIEF REQUESTED IN THE MOTION REFLECTS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT.

20.   Courts have held that "there must be some articulated business justification" for using, selling, or leasing property out of the ordinary course of business "before the bankruptcy judge may order such disposition under section 363(b)."   Committee of Equity Secu-

rity Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.

2d 1063, 1070 (2d. Cir. 1983); see also The Dai-Ici Kan-

gyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re

Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D.

Del. 1999) ("In determining whether to authorize the use,

sale or lease of property of the estate . . . courts re-

quire the debtor to show that a sound business purpose

justifies such actions"). In evaluating whether a sound

business purpose exists, "courts consider a variety of

factors which essentially represent a business judgment

test." Id. (internal quotations and citations omitted).

     21.  By establishing the Bidding Procedures,

notice procedures and rejection procedures relating to

the sale of the Leases, the Debtors seek to implement an

orderly process to sell or otherwise dispose of the

Leases in an efficient manner most beneficial to their

estates.  Without the procedures requested herein, the

Debtors could lose value associated with the sale of the

Leases and could be forced to carry the costs unneces-

sary or unmarketable leases for a period that would not

be beneficial to their estates.  The orderly process

contemplated by the procedures requested herein, includ-

ing the rejection of any Lease not specifically reserved
by a Potential Purchaser Notice, is accordingly neces-
sary for the Debtors to maximize the value of their es-
tates.

22.   Bankruptcy Code section 365(a) provides
that a debtor, "subject to the court's approval, may as-
sume or reject any executory contract or unexpired
lease."  11 U.S.C. § 365(a).  A debtor's determination
to reject an executory contract is governed by the
"business judgment" standard.  See Lubrizol Enterprises,
Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043,
1046-47 (4th Cir. 1985), cert. denied sub nom., Lubrizol
Enters., Inc. v. Canfield, 475 U.S. 1057 (1986); In re
Extraction Technologies of VA, L.L.C., 296 B.R. 393, 399
(Bankr. E.D. Va. 2001); see also In re HQ Global Hold-
ings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003)
(stating that a debtor's decision to reject an executory
contract is governed by the business judgment standard
and can only be overturned if the decision was the prod-
uct of bad faith, whim, or caprice).

23.   Once the Debtors articulate a valid busi-
ness justification, "[t]he business judgment rule 'is a

presumption that in making a business decision the di-
rectors of a corporation acted on an informed basis, in
good faith and in the honest belief that the action
taken was in the best interests of the company.'"  Offi-
cial Comm. Of Subordinated Bondholders v. Integrated
Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

    24.  The business judgment rule has vitality
in chapter 11 cases and shields a debtor's management
from judicial second-guessing.  See Comm. Of Asbestos-
Related Litigants and/or Creditors v. Johns-Manville
Corp., 60 B.R. 612, 615 16 (Bankr. S.D.N.Y. 1986)
("[T]he Code favors the continued operation of a busi-
ness by a debtor and a presumption of reasonableness at-
taches to a debtor's management decisions.").

    25.  As set forth above, the Debtors have
clearly articulated a sound business purpose for seeking
the relief sought in the Motion and have thus satisfied
the business judgment test.  The sale of the Leases at
auction and the accompanying proposed Bidding Procedures,
rejection procedures, and notice procedures are clearly
designed to maximize the value of the Leases for the
Debtors' estates while protecting the Debtors from in-

curring unnecessary costs (which may total as much as $2.4 million per week) with respect to Leases that are not readily marketable.  Accordingly, for the reasons detailed herein, the Debtors have determined that the relief requested in the Motion is in their best inter-ests and the best interests of their estates, creditors and parties in interest.

**V.   Sale Of The Leases Free And Clear Of Liens, Claims, Encumbrances, And Interests**

26.   Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any lien, claim, or interest in such property if, among other things:

1) applicable nonbankruptcy law per-mits sale of such property free and clear of such interest;

2) such entity consents;

3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such prop-erty;

4) such interest is in bona fide dis-pute; or

5) such entity could be compelled, in a legal or equitable proceeding, to accept a  money satisfaction of such interest.

11 U.S.C. § 363(f).

27.   Section 363(f) permits the sale of estate property free and clear of all liens if any one of the five conditions above is met. See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).  To the extent there are any valid, enforceable liens against the Leases and that such lienholder does not consent to the sale, such lien would attach to the proceeds of the sale.

**VI.   THE ASSUMPTION AND ASSIGNMENT OF THE LEASES**

28.   Section 365(f)(2) of the Bankruptcy Code provides that:

> The trustee may assign an executory contract or un expired lease of the debtor only if –
> (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
> (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

29.   Under section 365(a) of the Bankruptcy Code a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1)

of the Bankruptcy Code, in turn, codifies the require-
ments for assuming an unexpired lease or executory con-
tract of a debtor.  It provides:

> (b)(1)    If there has been a default in an
> executory contract or unexpired lease of the
> debtor, the trustee may not assume such con-
> tract or lease unless, at the time of the as-
> sumption of such contract or lease, the trus-
> tee –
>
> (A)  cures, or provides adequate assur-
> ance that the trustee will promptly cure, such
> default;
>
> (B)  compensates, or provides adequate
> assurance that the trustee will promptly com-
> pensate, a party other than the debtor to such
> contract or lease, for any actual pecuniary
> loss to such party resulting from such default;
> and
>
> (C)   provides adequate assurance of fu-
> ture performance under such contract or lease.

11 U.S.C. § 365(b)(1).

30.  Courts give the phrase "adequate assur-
ance of future performance" a "practical, pragmatic con-
struction."  EBG Midtown S. Corp. v. Mcharen/Hart Envtl.
Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R.
585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d Cir.
1993) (presence of adequate assurance should be "deter-
mined under the facts of each particular case").  To the

extent that any defaults exist under any of the Leases
that are to be assumed and assigned in connection with
the sal, the Debtors would cure any such default.

31.   The Bidding Procedures are also designed
to ensure that any potential buyer has the financial re-
sources to perform under the Leases and are required un-
der the Bidding Procedures to provide adequate assurance
of future performance under any Lease for which they
render a bid.   Moreover, if necessary, the Debtors will
adduce facts at the Sale Hearing demonstrating the fi-
nancial wherewithal of any buyer, and their willingness
and ability to perform under the Lease(s) to be assumed
and assigned to them.

## VII. THE BANKRUPTCY CODE AUTHORIZES THE ABANDONMENT OF THE ABANDONED PROPERTY.

32.   Bankruptcy Code section 554(a) provides
that "[a]fter notice and a hearing, the trustee may
abandon any property of the estate that is burdensome to
the estate or that is of inconsequential value and bene-
fit to the estate."   11 U.S.C. § 554(a).   Courts give
debtors in possession great deference to their decisions
to abandon under section 554.   See In re Vel Rey Props.,

<u>Inc.</u>, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless the property is harmful to the public, once the debtors in possession have shown that the property is burdensome or of inconsequential value and benefit, the court should approve the abandonment. <u>Id</u>. at 868.

33. The Debtors believe that the costs of moving and storing the Abandoned Property would far outweigh any benefit to their estates. Moreover, the Debtors believe that any efforts to move the Abandoned Property would unnecessarily delay the rejection of the Leases. Therefore, it is in the Debtors' best interests to abandon the Abandoned Property located at the Premises.

**VIII. WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULE 6004.**

34. Bankruptcy Rule 6004(g) provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that the

Court waive this ten-day stay with respect to the clos-
ing of sales of the Leases following entry of this
Court's order approving such a sale.  An immediate clos-
ing, as described in the Bidding Procedures, will save
the Debtors continued accrual of administrative expenses
under any Leases that are sold, and thus benefit the
Debtors' estates.

## WAIVER OF MEMORANDUM OF LAW

35.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law pre-
sented in the Motion and all applicable authority is set
forth in the Motion, the Debtors request that the re-
quirement that all motions be accompanied by a separate
memorandum of law be waived.

## NO PRIOR REQUEST

36.   No previous request for the relief sought
herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 25, 2008
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

          - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

          - and -

MCGUIREWOODS LLP

_/s/ Douglas M. Foley _____
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and Debtors in Possession