UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-35653 |
| CIRCUIT CITY STORES, INC., et al., ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |

## LIMITED OBJECTION OF NAVARRE DISTRIBUTION SERVICES, INC. TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 4001 (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING INTERIM AND FINAL HEARINGS

Navarre Distribution Services, Inc., a division of Navarre Corporation (collectively, "**Navarre**"), by and through its undersigned counsel, hereby objects to *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Federal Rules of Bankruptcy Procedure 2002 and 4001 (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral; (II) Granting Adequate Protection; and (III) Scheduling Interim and Final Hearings* (the "**DIP Motion**"), and in support thereof, respectfully states as follows:

### BACKGROUND

1. On November 10, 2008 (the "**Petition Date**"), the above-captioned debtors and debtors-in-possession (collectively, "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

---

R. Timothy Bryan (VSB # 50931)
Alan M. Noskow (VSB # 51094)
Patton Boggs LLP
8484 Westpark Drive, 9th Floor
McLean, Virginia 22102
(703) 744-8000
*Counsel for Navarre Distribution Services, Inc.*

2. Navarre and Debtor Circuit City Stores, Inc. are parties to several agreements including but not limited to that certain Consignment Agreement dated as of June 23, 2006 (as amended, the "**Consignment Agreement**"). Under the Consignment Agreement, Navarre provides software and other products (collectively, the "**Consigned Goods**") to Debtors on a consignment basis for sale by Debtors to its customers. Prior to the Petition Date, Debtors were obligated to remit proceeds from the sale of Consigned Goods to Navarre in accordance with the terms of the Consignment Agreement.

3. Navarre validly and properly perfected its interest in the Consigned Goods by, among other things, filing a UCC financing statement on behalf of itself and its third party vendors and notifying the agent for Debtors' prepetition lenders of its purchase-money security interest in the Consigned Goods.

4. As of the Petition Date, (a) Debtors owed Navarre approximately $2,291,432 for Consigned Goods that were delivered to Debtors by Navarre and sold by Debtors to its customers and (b) Debtors were in possession of Consigned Goods having an "Agreed Cost" (as defined in the Consignment Agreement) of approximately $10,500,000 which, upon information and belief, Debtors are currently offering for sale to its customers.

5. On the Petition Date, the Debtors filed the DIP Motion seeking authorization to enter into financing arrangements with Bank of America, N.A., as administrative agent for itself and the lenders party thereto (collectively, the "**DIP Lenders**") in accordance with a Senior Secured, Super-Priority, Debtor-In-Possession Credit Agreement (the "**DIP Credit Agreement**").

6. The DIP Motion and the DIP Credit Agreement purportedly acknowledge that the liens of consignors in goods sold on consignment are to be senior to the liens to be granted to the DIP Lenders under the DIP Financing. Specifically, the DIP Credit Agreement grants the DIP Lenders a first priority lien in all assets of the Debtors, subject only to "Permitted Encumbrances" which, by its definition in the DIP Credit Agreement, includes "purported Liens evidenced by the filing of precautionary UCC and PPSA financing statements related solely to operating leases or the consignment of personal property entered into in the ordinary course of business." (*See DIP Credit Agreement*, Section 2.29, p. 80 and definition of "Permitted Encumbrances," p.30.)

7. The DIP Motion, however, is not clear as to the treatment of the proceeds from the sale of the Consigned Goods. In fact, under the DIP Motion and proposed order, 100% of the proceeds of the sale of the Consigned Goods will be retained by Debtors, subject to the liens of the DIP Lenders, to use in accordance with the terms of the DIP Credit Agreement.

8. Upon information and belief, Debtors desire and intend to continue to use the proceeds from the sales of Consigned Goods. In addition, Debtors further intend to place additional, postpetition orders for Consigned Goods in accordance with the Consignment Agreement.

## NAVARRE'S OBJECTIONS AND BASIS THEREFOR

9. The Consignment Agreement represents a consignment arrangement under the UCC. *See* UCC §9-102. Consignment arrangements provide the consignor with a "purchase money security interest" in inventory held on consignment. *See* UCC §9-103(d). Holders of purchase money security interests must (a) file a financing statement describing the inventory in

the appropriate place, (b) send an authenticated notification to the holder of the conflicting security interest, and (c) ensure that the notification described the goods and states that the sender has or expects to acquire a purchase money security interest in inventory of the merchant. *See* UCC §9-324(d). In the instant case, prior to the Petition Date, Navarre validly and properly perfected its interest in the Consigned Goods by filing a financing statement with the Commonwealth of Virginia State Corporation Commission and sending an authenticated notice of purchase money security interest to the agent for Debtors' prepetition lenders.

10. Because the Consigned Goods were delivered under a consignment arrangement and, as such, are not Debtors' inventory, the Debtors are improperly seeking to obtain greater rights than those to which they are otherwise entitled. Moreover, the DIP Lenders will unfairly benefit to the detriment of Navarre by obtaining a lien on the proceeds of the Consigned Goods. This is inequitable because the DIP Lenders decision to provide postpetition financing and allow use of their cash collateral could not reasonably have been predicated on receiving a lien on proceeds of property that was not even owned by Debtors.

11. Accordingly, Navarre objects to the DIP Motion and requests that the Court acknowledge that Navarre (a) has a valid interest in the Consigned Goods and the proceeds therefrom, and (b) is a consignor of the type referenced in the definition of "Permitted Encumbrances" in the DIP Credit Agreement whose lien (to the extent it was validly and properly perfected) is senior. Navarre further objects to the relief requested in the DIP Motion to the extent it will grant the DIP Lenders a lien (whether senior or subordinate to Navarre's lien as a "Permitted Encumbrance") on any of the Consigned Goods or proceeds therefrom.

12. Moreover, as a result of the validity of the consignment arrangement and because Navarre has a valid and properly perfected, non-avoidable lien on the Consigned Goods, all proceeds from the sale of the Consigned Goods (which includes both proceeds received prior to the Petition Date and proceeds from the sale of Consigned Goods after the Petition Date) constitute the cash collateral of Navarre ("**Navarre Cash Collateral**"). As such, Navarre is entitled, pursuant to Section 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Consigned Goods, including the Navarre Cash Collateral, for any diminution in value of the Consigned Goods subject to such valid and properly perfected liens, including but not limited to diminution resulting from the use of the Navarre Cash Collateral, the use, sale or lease of the Consigned Goods, and the imposition of the automatic stay.

13. Accordingly, Navarre further objects to the relief requested in the DIP Motion to the extent (a) it will grant the DIP Lenders a first priority lien on Navarre Cash Collateral and (b) it will authorize Debtors' to use Navarre Cash Collateral.

14. By way of this Objection, Navarre requests that the Court deny the relief requested in the DIP Motion or, in the alternative, require that any order of the Court approving the DIP Motion prohibit Debtors' use of the Navarre Cash Collateral, and impose a requirement on Debtors and the DIP Lenders (including any administrative or collateral agent for the DIP Lenders), to segregate all proceeds from the sale of Consigned Goods (which includes both proceeds received prior to the Petition Date and proceeds from the sale of Consigned Goods after the Petition Date), not commingle such proceeds with any other funds of Debtors, and hold them in a segregated fund that is separate from the Debtors' other cash accounts which are or will be subject to the first priority liens of the DIP Lenders (or any other party).

15. To the extent the order approving the DIP Motion is modified to provide for the above-requested relief, Navarre is willing to consent to the Debtors' continued sale of the Consigned Goods in the ordinary course of business provided, that (a) Debtors shall not be permitted to sell any Consigned Goods for a price that is less than the "Agreed Cost" (as defined in the Consignment Agreement), (b) Debtors shall be required to provide regular reporting regarding their sale of any Consigned Goods in accordance with the requirements of the Consignment Agreement and (c) Debtors take all deductions for chargebacks approved as of the Petition Date against the amounts owed to Navarre as of the Petition Date, and not against amounts that will come due as a result of postpetition sales of Consigned Goods.

16. Without limiting its rights, Navarre understands and appreciates that Debtors' may not have had an opportunity to determine the validity of Navarre's interest in the Consigned Goods. Nevertheless, segregation of the proceeds from the Consigned Goods pending a determination of the validity of Navarre's interest in the Consigned Goods is a fair outcome and poses minimal risk of inequitable treatment to the parties involved. In addition, the relief Navarre is seeking is consistent with relief afforded to consignors in other bankruptcy cases. (*See e.g. In re Whitehall Jewelers Holdings, Inc., et al.*, Case No. 08-11261 (Bankr. Del. 2008).)

WHEREFORE, Navarre respectfully requests that the Court:

(a) deny the DIP Motion or in the alternative, grant the DIP Motion subject to (1) an acknowledgment that Navarre has a valid interest in the Consigned Goods and the proceeds therefrom, (2) a determination that the DIP Lenders are not entitled to a lien on any of the Consigned Goods or proceeds therefrom, (3) a prohibition on Debtors' use of the Navarre Cash Collateral, (4) a requirement that Debtors and the DIP Lenders

(including any administrative or collateral agent for the DIP Lenders), segregate all proceeds from the sale of Consigned Goods (including proceeds received prior to the Petition Date and proceeds from the sale of Consigned Goods after the Petition Date), not commingle such proceeds with any other funds of Debtors, and hold them in a segregated fund that is separate from the Debtors' other cash accounts which are or will be subject to the first priority liens of the DIP Lenders (or any other party);

(b) require that any postpetition sales of Consigned Goods be at a price that is not less than the "Agreed Cost" (as defined in the Consignment Agreement);

(c) require that Debtors provide regular reporting regarding their sale of and Consigned Goods in accordance with the requirements of the Consignment Agreement; and

(d) grant such other relief as is just and proper.

Dated: November 26, 2008

Respectfully submitted,

/s/ Alan M. Noskow
R. Timothy Bryan (VSB # 50931)
Alan M. Noskow (VSB # 51094)
PATTON BOGGS LLP
8484 Westpark Drive, 9th Floor
McLean, Virginia 22102
Phone: (703) 744-8000
Fax: (703) 744-8001
E-mail: tbryan@pattonboggs.com
E-mail: anoskow@pattonboggs.com

*Counsel to Navarre Distribution Services, Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November, 2008, I caused a copy of the foregoing Limited Objection to be served to all parties entitled to notice by electronic means through the CM/ECF and to the following parties via facsimile:

Robert B. Van Arsdale, Esq.
Office of the United States Trustee
701 East Broad St. Suite 4304
Richmond, Virginia 23219
Fax No.: (804) 771-2330
*United States Trustee*

Dion W. Hayes, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Fax No.: (804) 698-2078
Fax No.: (757) 640-3957
*Counsel for the Debtors*

Greg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Fax No.: (888) 329-3792
*Counsel for the Debtors*

Timothy G. Pohl, Esq.
Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2000
Chicago, IL 60606
Fax No.: (312) 407-0411
*Counsel for the Debtors*

Linda K. Myers, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Fax No.: (312) 861-2200
*Special Counsel for the Debtors*

David S. Berman, Esq.
Riemer & Braunstein LLP
Three Center Plaza, 6th Floor
Boston, Massachusetts 02108
Fax No.: (617) 880-3456
*Counsel for Bank of America, N.A.*

Bruce Matson, Esq.
LeClair Ryan
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, VA 23219
Fax No.: (804) 789-7269
*Counsel for Bank of America, N.A*

Lynn L. Tavenner, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Fax No.: (804) 783-0178
*Counsel for the Official Committee of Unsecured Creditors*

/s/ Alan M. Noskow