UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In the Matters of:

CIRCUIT CITY STORES, INC., et al.,           Chapter 11 Proceedings

Case No. 08-35653

Jointly Administered,           Hon. Kevin Huennekens

          Debtors.

_____/

**AMENDED OBJECTION OF CARROLLTON ARMS, LLC TO THE DEBTORS' MOTION TO REJECT LEASES AND ABANDON PERSONAL PROPERTY**

NOW COMES Carrollton Arms, LLC, by and through its undersigned attorneys, and for its Amended Objection to the Debtors' Motion to Reject Leases and Abandon Personal Property [Docket No. 21] (the " Amended Objection"),[1] states as follows:

1. On November 10, 2008 (the "Petition Date"), each of the above referenced debtors (the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court").

---

[1] This Amended Objection is being submitted to correct certain errors in the original Objection [Docket No. 260] and to supplement the Objection with additional information obtained by counsel during the past week.

CANFIELD | BAER LLP
Paul McCourt Curley, Esq. VSB No. 43974
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
Telephone: 804-673-6600
Telecopier: 804-673-6604
E-Mail: pcurley@canfieldbaer.com
*Local Counsel for Carrollton Arms, LLC*

-and-
GIARMARCO, MULLINS & HORTON, P.C.
Gary H. Cunningham (P35451)
101 West Big Beaver Road, 10th Floor
Troy, Michigan 48084-5280
Telephone: (248) 457-7000
Email: gcunningham@gmhlaw.com
Counsel for Carrollton Arms, LLC

2. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. Carrollton Arms, LLC ("Carrollton") is the owner of the real estate located at 7171 Haggerty Road, Canton Township, Michigan (the "Leases Premises").

4. Prior to the Petition Date, Circuit City Stores, Inc. (the "Debtor") entered into a Lease Agreement with Carrollton for the Leased Premises, a copy of which is attached hereto as Exhibit A.

5. On information and belief, the Debtor subleased the Leased Premises to a third party prior to the commencement of these Chapter 11 Proceedings, the identity of which Carrollton believes to be Basketball Planet, LLC.  However, the Debtor remained liable under the Lease Agreement throughout the subtenant's occupancy of the Leased Premises, including but not limited to paragraph 40 thereof, which states in its entirety as follows:

> At the end of this Lease, Tenant will promptly quit and surrender the Premises in as good condition as at the completion of Tenant's Work, ordinary wear and tear and damage due to casualty covered by insurance excepted. If Tenant is not then in default, Tenant may remove from the Premises any trade fixtures, equipment and movable furniture placed in the Premises by Tenant, whether or not such trade fixtures or equipment are fastened to the Premises; Tenant will not remove any trade fixtures or equipment without Landlord's written consent if such fixtures or equipment are used in the operation of the Premises or improvements or the removal of such fixtures or equipment will result in impairing the structural strength of the Premises or improvements. Tenant will fully repair any damage occasioned by the removal of any trade fixtures, equipment, furniture, alterations, additions and improvements. All trade fixtures, equipment, furniture, inventory, effects, alterations, additions and improvements not so removed will be deemed conclusively to have been abandoned and may be appropriated, sold, stored, destroyed or otherwise disposed of by Landlord without notice to Tenant or any other person and without obligation to account for them; and Tenant will pay Landlord for all expenses incurred in connection with such property. Tenant's obligation to observe and perform this covenant will survive the expiration or other termination of this Lease.

2

6. On November 10, 2008, the Debtors filed their Motion for Order Pursuant to 11 U.S.C. Section 105 (a), 365(a), and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of the Petition Date [Docket No. 21] (the "Rejection Motion").

7. Also on November 10, 2008, this Court entered an Order granting the Rejection Motion [Docket No. 81] (the "Rejection Order"). However, neither the Rejection Motion or the Rejection Order addresses the issue of the subtenant for the Leased Premises or the Debtor's continuing responsibilities pursuant to paragraph 40 of the Lease Agreement.

8. Carrollton objects to the Rejection Motion and the Rejection Order for the following reasons:

   a. The Rejection Motion inappropriately seeks to retroactively reject the Lease Agreement by deeming the effective date of rejection to be the Petition Date.

   b. The Rejection Order should be modified to provide that the Lease Agreement and any sub-lease are rejected effective when Carrollton obtains dominion and control of the Leased Premises.

   c. Rejection of the Lease Agreement under Section 365 of the Bankruptcy Code is a breach of contract, and therefore, does not negate, invalidate or terminate the contract. See *In re Continental Airlines*, 981 F. 2d 1450 (5th Cir. 1993). Accord *In re Henderson*, 245 B.R. 449 (Bankr. S.D. N.Y. 2000).

   d. In the case of *In re Nutri/System of Florida Associates*, 178 B.R. 645, 651 (Bankr. E.D. Pa. 1995), the court noted the debtor's duty, upon the rejection of the lease, to surrender the leased premises to the landlord by removing its personal property: "Most of the properties associated with the rejected leases contained property of little value. Nonetheless, these properties had to be emptied out by [the debtor] in order to turn the properties over to the respective landlords." Similarly, in the case of *In re Chi Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004), the court held that the appropriate date to effectively reject the lease was "the day the Debtors

3

        surrendered the premises to the Landlords, and the Landlords were able to enter into agreements with the current tenants."

    e.    Even if the property is deemed abandoned under 11 U.S.C. § 554, the Debtor would still be obligated to remove it at its sole cost. Once property is abandoned under § 554, "title and right to the property reverts to its pre-bankruptcy status. Thus, whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right." See *In re Dewnsup*, 87 B.R. 676, 681 (Bankr. D. Utah 1988). See also *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990); *In re K.C. Machine & Tool Company*, 816 F.2d 238, 241 (6th Cir. 1987); *In re St. Lawrence Corporation*, 239 B.R. 720, 727-28 (Bankr. D. N.J. 1999); and *Midland Atlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 508 (1986).

    f.    "It is well established that post-petition storage costs, or use and possession costs, may be granted administrative expense priority." *In re Great Northern Forest Products*, 135 B.R. 46 (Bankr. W. MI. 1991) 135 at 59. In the case of *In re Great Northern Forest Products*, the court held that the use of leased premises to store personal property was an actual cost necessary to preserve assets of the estate under § 503(b) and that the estate directly and substantially benefited from the use of the premises for storage. *Id.* at 59-60. "To allow the Trustee to store the property at no cost is clearly a windfall to the estate." *Id.* at 60.

9.    Carrollton has recently gained access to the Leased Premises and has discovered that either the Debtor or its subtenant, Basketball Planet, LLC, has significantly damaged the Leased Premises by making substantial alterations, causing penetrations in the roof and blocking access to the truck bays in the building.

10.    Attached hereto as Exhibit B is a copy of a preliminary estimate submitted to Carrollton by A.R. Brouwer Co. to repair the damages done to the Leased Premises by either the Debtor or its subtenant.

11.    The estimated cost of the repairs to restore the Leased Premises to its original condition and to otherwise comply with paragraph 40 of the Lease Agreement is $682,000.

4

12. Carrollton believes that either the Debtor should be compelled to restore the Leased Premises to its original condition in compliance with paragraph 40 of the Lease Agreement or Carrollton should be authorized by the Court to make such repairs and allowed an administrative expense claim for such repairs pursuant to Section 503 of the Bankruptcy Code.

13. Section 365(a) of the Bankruptcy Code states, in relevant part, as follows: "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a) (West 2008).  The majority view is that court approval is a condition precedent to effective rejection. See, e.g. *Paul Harris Stores,* 148 B.R. 307, 309 (S.D. Ind. 1992); *In re Federated Dep't Stores, Inc.,* 131 B.R. 808, 815-16 (S.D. Ohio 1991); *In re Appliance Store, Inc.,* 148 B.R. 234, 239 (Bankr. W.D. Pa 1992).

14. "An order under § 365(a) is required in order for a proposed assumption or rejection to be effective." *In re Compuadd Corp., (*Bankr. W.D. Tex. 1994*)* 166 B.R. 862, 866 [holding that when a debtor seeks rejection, effectiveness occurs upon the earlier of the court order approving the rejection or the passage of sixty (60) days from the petition date by virtue of Bankruptcy Code § 365(d)(3)].

15. A landlord's lease is in limbo from the date of the filing of a bankruptcy case through entry of an order rejecting or assuming the lease.  The landlord is unable to take steps to re-let the leased premises given the right of the debtor, trustee or committee of unsecured creditors to take the position, until entry of an appropriate order approving the rejection, that the lease should be marketed rather than rejected.  In addition, in the instant case Carrollton is denied certainty that either the Debtor will comply with paragraph 40 of the Lease Agreement or that Carrollton will be paid for

5

repairs necessitated by the damages caused to the Leased Premises by either the Debtor or its subtentant.

16. A minority of Courts have approved retroactive rejection under very limited circumstances and after balancing the equities of a case. See In re Thinking Machines Corp., 67 F.3d 1021, 1025 (1st Cir. 1995). "It is the burden of the moving party to show that relief, of this character, is appropriate." In re TW, Inc., 2004 U.S. Dist. LEXIS 671, 5-6 (D. Del. 2004). Courts have denied retroactive rejection when the debtor failed to demonstrate that the landlord had regained possession of the premises prior to the petition date. Id.; see also In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004).

17. In this case, Carrollton has not yet been able to retake possession of the Leased Premises because the subtenant continues to have the right to possession. The Debtor incorrectly states in the Rejection Motion that possession of the Leased Premises was surrendered to Carrollton prior to the Petition Date. See Rejection Motion at paragraphs 9, 10 and 12.

18. It would be inequitable for the Court to permit rejection while Carrollton is stayed from taking any action with respect to either the Debtor or the subtenant, and therefore cannot gain control over the Leased Premises.

19. The equities of a case only favor retroactive rejection to the filing of the case when a landlord has possession and control of the leased premises prior to the date the case is filed so that it can attempt to relet the premises. The facts of this case do not warrant approval of any rejection of the Lease Agreement effective as of the Petition Date.

20. Carrollton joins in the objections filed by other landlords to the Rejection Motion or the Rejection Order to the extent they are not inconsistent with this Objection.

**WHEREFORE,** Carrollton respectfully requests that the Rejection Order be set aside as to Carrollton and the Rejection Motion be denied to the extent that it seeks rejection of the Lease Agreement effective as of the Petition Date.  In addition, Carrollton requests the Court to either compel the Debtor to comply with paragraph 40 of the Lease Agreement or authorize Carrollton to make the repairs to the Leased Premises at the Debtor's expense as an administrative claim under Section 503 of the Bankruptcy Code.

Respectfully submitted,

CANFIELD | BAER LLP

By:   /s/ Paul McCourt Curley
      Paul McCourt Curley
      Local Counsel to Carrollton Arms, LLC
      2201 Libbie Avenue, Suite 200
      Richmond, Virginia 23230
      Telephone: (804) 673-6600
      Email: pcurley@canfieldbaer.com


GIARMARCO, MULLINS & HORTON, P.C.

By:   /s/ Gary H. Cunningham
      Gary H. Cunningham (P35451)
      Counsel for Carrollton Arms, LLC
      101 West Big Beaver Road, 10th Floor
      Troy, Michigan 48084-5280
      Telephone: (248) 457-7000
      Email: gcunningham@gmhlaw.com

Dated: November 26, 2008

## CERTIFICATE OF SERVICE

That on the 26th day of November, 2008, I caused the Objection to Order Pursuant to 11 U.S.C. Sections 105(a), 365(a) and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Non-Residential Real Property and Abandonment of Personal Property Effective as of the Petition Date to be served, by electronic means or first class mail, postage paid, upon all necessary parties as follows:

Daniel F. Blanks, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA 23510

Dion W. Hayes, Esq.
Joseph S. Sheerin, Esq.
Sarah Beckett Boehm, Esq.
McGuire Woods LLP
901 East Cary Street
Richmond, VA 23219

Robert B. Van Arsdale, Esq.
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

/s/ Paul McCourt Curley