Constantinos G. Panagopoulos (VSB #33356)
Charles W. Chotvacs (VSB #70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W., Suite 1000 South
Washington, DC 20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299

-and-

Ivan M. Gold, Esquire
ALLEN MATKINS LECK GAMBLE MALLORY
 & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 273-7431
Facsimile: (415) 837-1516

*Attorneys for Laguna Gateway Phase 2,*
 *LP, Manteca Stadium Park, L.P. and OTR-Clairemont Square*

**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re | Case No. 08-35653-KRH |
| | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al. | |
| | (Jointly Administered) |
| Debtors. | **Hearing Date: December 5, 2008 @ 10:00 a.m. ET** |

**LIMITED OBJECTION OF LAGUNA GATEWAY PHASE 2, LP, MANTECA STADIUM PARK, L.P. AND OTR-CLAIREMONT SQUARE TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§105, 361, 362, 363 AND 364 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 4001 (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING INTERIM AND FINAL HEARINGS**

Laguna Gateway Phase 2, LP, Manteca Stadium Park, L.P. and OTR-Clairemont Square, lessors of Debtors at various shopping center locations (the "Objecting Landlords"), by and through their undersigned counsel, hereby object to the *Debtors' Motion For Interim and Final Orders Pursuant To 11 U.S.C. §§105, 361, 362, 363 And 364 and Federal Rules Of Bankruptcy Procedure 2002 And 4001 (I) Authorizing Debtors (A) To Obtain Postpetition Financing and (B)*

*To Utilize Cash Collateral; (II) Granting Adequate Protection; and (III) Scheduling Interim And Final Hearings* [Docket No. 23] (the "Financing Motion"), and respectfully represent as follows:

1. Circuit City Stores, Inc., and its affiliated co-debtors (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on November 10, 2008. The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. The Debtors lease retail space from the Objecting Landlords where they currently operate retail stores as tenant pursuant to unexpired lease of nonresidential real property (the "Lease") at the following shopping center locations (the "Leased Premises"):

| Debtors' Store # 443 | Clairemont Town Square | San Diego, CA |
| Debtors' Store #250 | Laguna Gateway | Elk Grove, CA |
| Debtors' Store #4131 | Stadium Center | Manteca, CA |

3. Each of Debtors' leases with Objecting Landlords are a "lease of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3d Cir. 1990).

4. On November 10, 2008, the Petition Date, the Debtors filed the Financing Motion, seeking authorization to enter into a senior, secured, superpriority revolving credit facility (the "DIP Facility") with Bank of America, N.A., as administrative agent for the DIP Lenders (as defined in the Financing Motion).

5. On November 10, 2008, the Court entered its *Interim Order Pursuant To 11 U.S.C. §§105, 361, 362, 363 And 364 and Federal Rules Of Bankruptcy Procedure 2002, 4001 and 9014 (1) Authorizing Incurrence by Debtors of Post-petition Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 and Providing Adequate Protection, (4) Modifying Automatic Stay and (5) Scheduling Final Hearing* [Docket No. 78] (the "Interim Order").

2

**OBJECTION**

6.     The Senior Secured, Super-Priority, Debtor-In-Possession Credit Agreement (the "DIP Agreement"), attached to the Financing Motion, provides that, upon the occurrence of an Event of Default (as defined therein), the DIP Lenders' Administrative Agent may "proceed to protect and enforce its rights and remedies *under this Agreement, the Notes and any of the other Loan Documents ….*" (Emphasis added.) Similarly, the Interim Order provides, at Paragraph 17(c), that upon the occurrence of an Event of Default, "the DIP Agents and DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements." Not all of the "Notes," "Loan Documents," or "DIP Financing Agreements" are before the Court.

7.     Objecting Landlords object to the approval of any such documents as part of the DIP Facility to the extent they purport to grant the DIP Lenders rights to dispose of their collateral at the Leased Premises in derogation of the terms of Debtors' leases with Objecting Landlords or applicable state law. Landlords should not be forced to sit idly by while the DIP Lenders dispose of their collateral at the Leased Premises through unregulated inventory liquidation sales and use and occupy the Leased Premises without the consent of the affected landlord.

8.     There is no basis for the Court to grant the DIP Lenders rights greater than they could obtain under state law or that even the Debtor could enjoy under the Bankruptcy Code. See, e.g., 11 U.S.C. §365(d)(3); In re Lauriat's, Inc., 219 B.R. 648, 649 (Bankr. D. Mass. 1998) ("A debtor in possession shall manage the property of the estate in accordance with state law."); In re White Crane Trading Company, 170 B.R. 694, 702 (Bankr. E.D. Cal. 1994).

9.     Granting DIP Lenders collateral disposition rights through undisclosed Loan Documents, including any purported right to conduct inventory liquidation sales at Debtors' store locations, would violate Sections 365(b) and (f) of the Bankruptcy Code. In In re Antwerp Diamond, 138 B.R. 865, 867 (Bankr. N.D. Ohio 1992), the court denied approval of a proposed sale of the debtor's assets where the purchaser would have been permitted to conduct going out

of business sales in shopping mall locations leased by the debtor because the sale would have constituted an implicit assignment of the leases without first satisfying the strictures of Bankruptcy Code section 365(b). 138 B.R. at 866-869. There is no authority that would permit this Court, regardless of the content of the Loan Documents, to grant the DIP Lenders, following an Event of Default, relief outside the limitations in Debtors' leases and applicable state law.

10. Objecting Landlords acknowledge that going out of business sales by *debtors or their court-approved liquidation agents* may become necessary at times in retail bankruptcies. However, when going out of business sales do become necessary, they are typically conducted after a properly noticed motion and hearing and pursuant to certain agreed upon guidelines that balance the interests of the Debtor and its creditors with those of the affected landlords and shopping center tenants. See In re Ames Department Stores, Inc., 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992). Objecting Landlords submit that while it may be appropriate to grant DIP Lenders certain collateral liquidation rights as part of the proposed financing, if going out of business sales are to be conducted on the Debtors' leased premises, they must conducted by the Debtors, following a motion and hearing on the proposed contours of such sales that: (1) permit interested parties the opportunity to be heard; (2) allow for the development of appropriate procedures to conduct such sales; and (3) insure the lessors receive the protections afforded them under the Bankruptcy Code. Alternatively, absent a pre-existing agreement with an affected landlord, the DIP Lenders could be granted a <u>limited</u> right, following an Event of Default, to access the Debtors' store locations to remove its collateral and liquidate it elsewhere.

11. This Court should not, as part of its approval of the DIP Facility, authorize any remedies to DIP Lenders outside the scope of the those permitted by the Debtors' leases, the Bankruptcy Code and applicable state law.

## **JOINDER**

12. The Objecting Landlords join in the objections to the Financing Motion filed by Debtors' other landlords to the extent that such objections are not inconsistent with the relief

requested in the aforementioned Limited Objection, including without limitation, the Limited Objection of Inland Southwest Management LLC, Inland American Retail Management LLC, Inland US Management LLC, Inland Pacific Property Services LLC, Inland Commercial Property Management, Inc. and Inland Continental Property Management Corp.

## RESERVATION OF RIGHTS

13. The Objecting Landlords reserve the right to make such other and further objections as may be appropriate.

DATED: November 26, 2008        Respectfully submitted,

      /s/  Charles W. Chotvacs
Constantinos G. Panagopoulos (VSB #33356)
Charles W. Chotvacs, Esquire (VSB #70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W., Suite 1000 South
Washington, DC 20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
chotvacsc@ballardspahr.com
cgp@ballardspahr.com

    -and-

Ivan M. Gold, Esquire
ALLEN MATKINS LECK GAMBLE MALLORY
 & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 273-7431
Facsimile: (415) 837-1516
igold@allenmatkins.com

Attorneys for Laguna Gateway Phase 2, LP,
Manteca Stadium Park, L.P., and
OTR-Clairemont Square

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November, 2008, the foregoing Limited Objection was filed and served electronically using the Court's CM/ECF system, and that, in addition, true and correct copies of the foregoing were electronically served on the "2002" and "Core" lists.

    /s/ Charles W. Chotvacs
Charles W. Chotvacs