# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

- - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
| | : | **Chapter 11** |
| **In re:** | : | |
| **CIRCUIT CITY STORES, INC.,** | : | **Case No. 08-35653 (KRH)** |
| <u>et al.,</u> | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | **Hrg. Date: 1/16/09** |
| | : | **at 10:00 a.m. (ET)** |
| | : | **Obj. Due:  12/11/08** |
| | : | **at 11:59 p.m. (ET)** |

- - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF MOTION AND MOTION OF MANSFIELD SEQ 287 & DEBBIE, LTD. FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 362, AND 363, *FEDERAL BANKRUPTCY RULE* 9014, AND *LOCAL BANKRUPTCY RULE* 4001(a)-1, MODIFYING THE AUTOMATIC STAY TO (I) PERMIT THE ADMINISTRATIVE FREEZE OF CERTAIN FUNDS, AND (II) TO PERMIT THE EXERCISE OF SETOFF AND  RECOUPMENT, OR FOR <u>ADEQUATE PROTECTION AND SUPPORTING MEMORANDUM OF LAW</u>

### <u>NOTICE OF MOTION</u>

> **YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF**

_____

C. Thomas Ebel, Esquire – VSB #18637
William A. Gray, Esquire – VSB #46911
Lisa Taylor Hudson, Esquire – VSB #45484
Sands, Anderson, Marks & Miller, P.C.
801 East Main Street, Suite 1800
Post Office Box 1998
Richmond, Virginia 23218-1998
(804) 648-1636 Telephone
(804) 783-7291 Facsimile
  *Local Counsel to Landlord, Mansfield SEQ 287 & Debbie, Ltd.*

Joseph A. Friedman, Esquire
**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Square
1601 Elm St.
Dallas, Texas 76201-4299
(214) 777-4200 Telephone
(214) 777-4299  Facsimile
  *Counsel to Landlord, Mansfield SEQ 287 & Debbie, Ltd.*

**YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE).**

**IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FIFTEEN (15) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FIFTEEN DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE RELIEF REQUESTED WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FIFTEEN (15) DAY PERIOD OR DECEMBER 11, 2008.**

## NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN THAT A HEARING ON THE MOTION AND TO CONSIDER THE RELIEF REQUESTED IN SAME AND TO ACT UPON SAID MATTER HAS BEEN SCHEDULED FOR THE COURT'S OMNIBUS HEARING DATE OF JANUARY 16, 2009, AT 10:00 A.M.  THE HEARING WILL BE HELD AT COURTROOM 5000 FOR THE HONORABLE KEVIN R. HUENNEKENS AT THE UNITED STATES BANKRUPTCY COURT, 701 E. BROAD STREET, RICHMOND, VIRGINIA 23219.**

## MOTION FOR RELIEF AND SUPPORTING MEMORANDUM OF LAW

1.      Mansfield SEQ 287 & Debbie, Ltd., a Texas limited partnership (the "Landlord") hereby seeks entry of an order, pursuant to Sections 105, 362, and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001(a)(1) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"), modifying the automatic stay (i) to permit the administrative hold or "freeze" of certain funds in the Landlord's possession, (ii) to permit the Landlord to exercise its rights of setoff

and/or recoupment, or in the event that this Court does not permit an administrative freeze of the unpaid Reimbursements pursuant to 11 U.S.C. § 363(e), the Landlord requests that the Court order the Debtors, Circuit City Stores, Inc. (the "Debtors") to provide a means to adequately protect the Landlord's rights of setoff and recoupment (the "Motion").  In support of the Motion, the Landlord respectfully shows the Court as follows:

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

3.      Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105, 362, and 363, as supplemented by Bankruptcy Rule 9014 and Local Rule 4001(a)(1).

## BACKROUND FACTUAL INFORMATION

**A.      The Bankruptcy Case.**

5.      On November 10, 2008, the Debtors[1] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtors jointly administered in the above-styled and numbered case are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Patapsco Designs, Inc., Sky Venture Corp., XSStuff, LLC, Courchevel, LLC, Circuit City Stores PR, LLC, Abbott Advertising Agency, Inc., Mayland MN, LLC, Orbyx Electronics, LLC, and Prahs, Inc.

6.      On November 12, 2008, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").  No trustee or examiner has been appointed in these Chapter 11 cases.

**B.      The Lease Between Circuit City Stores, Inc. and the Landlord.**

7.      Debtor, Circuit City Stores, Inc. ("CC") entered into a lease agreement with Landlord, Mansfield, dated the 7th day of September 2007, pursuant to which the Debtor, CC occupies a retail building for its retail operations containing approximately 20,350 square feet (the "Premises") in the shopping center commonly referred to as the Mansfield Pointe Shopping Center (the "Shopping Center").  The Shopping Center is located at the southerly corner of Home Depot Drive and U.S. Highway 287 in Mansfield, Texas.  The Debtors refer to this location as Store No. 3809.  The Lease is for non-residential real property in a shopping center as those phrases are defined by the Bankruptcy Code and applicable law.  A true and correct copy of the lease agreement and amendments thereto (hereinafter referred to as the "Lease") is attached hereto and incorporated herein by reference as **EXHIBIT A.**

8.      The annual rent under the Lease is $244,200.00, plus CAM Costs[2] and real estate taxes[3] for the premises (collectively, "Rent").

9.      The Lease was for a term of ten (10) years, plus a partial lease year commencing on the Commencement Date of the Lease and ending on the January 31 immediately thereafter. The Lease contained five (5) consecutive extension options each for an extended term of five (5) years, with Rent due on the first day of each month.  The Commencement Date of the Lease, as that term is defined in section 4.01 of the Lease, was September 19, 2008.  The Minimum Initial Cotenancy Percentage, as defined in the Lease, was satisfied on October 17, 2008.

---

[2] As provided for in Article V of the Lease.  *See* **EXHIBIT A.**
[3] As provided for in Article VI of the Lease.  *See* **EXHIBIT A.**

10.     Pursuant to Article III of the Lease, Debtor, CC agreed to construct its retail building on the Premises.  Upon completion of the construction and compliance with Section 2.09 of the Lease, the Landlord, Mansfield was to provide Debtor, CC $75 per square foot of the newly-constructed premises to reimburse it for construction costs associated with the retail building, which the Lease defines as the "Landlord Reimbursement."  In addition, pursuant to Article IV of the Amendment to the Lease, the Landlord was to reimburse Debtor, CC up to $7,500.00 for the cost of a façade pilaster (the "Pilaster Reimbursement," together with the Landlord Reimbursements, the "Reimbursements").  The Reimbursements total $1,533,700.00. Debtor, CC issued its request for the Reimbursements on October 8, 2008, and completed the tender of all documents associated with same on October 20, 2008.

### C.     The Landlord's Claims for Damages Arising From Debtor, CC's Defaults under the Lease.

#### 1)     Existing Prepetition Defaults under the Lease.

11.     Since September 2008, Debtor, CC has been in default under the Lease. Specifically, Debtor, CC failed to pay Rent and CAM for September, October, and November, 2008 in the aggregate amount of $43,291.62 (collectively, "Unpaid Prepetition Rent").

12.     Debtor, CC is in further default under the Lease by (i) violating certain construction requirements of the retail building on the Premises, (ii) opening to the public without obtaining the proper municipal permits, and (iii) commencing a prohibited liquidation sale on the Premises.[4]

---

[4] The Debtors commenced the prohibited liquidation sale prior to the filing of this bankruptcy case.

2)     *Prospective Breach Damage Claim Arising From the Likely Rejection the Lease.*

13.     On November 10, 2008, the Debtors filed their request and this Court approved the *Motion for Entry of Order Pursuant to Bankruptcy Code Sections 105, 363, and 365 (I) Assuming Agency Agreement Among Debtors, Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC, and (II) Authorizing the Debtors to Continue Agency Agreement Sales Pursuant to Store Closing Agreement* [Docket No. 24] (the "<u>Store Closing Motion</u>"). Pursuant to the Store Closing Motion, the Debtors' agent will liquidate the inventory in place at the Premises.  Accordingly, it is highly foreseeable that Debtor, CC will reject the Lease in the immediate future.[5]

14.     The Landlord, Mansfield anticipates that if the Lease is rejected, it will incur considerable damages.  Specifically, the Landlord anticipates rejection damages for lost rent and CAM will be at least $569,000.00, plus costs to shut down and retrofit the building, additional re-letting commissions, and legal fees, of at least $520,020.00.  Thus, the aggregate damages arising from the rejection of the Lease are at least $1,089,636.00 (the "<u>Prospective Breach Damages</u>"), together with the Unpaid Prepetition Rent, for a total of approximately $1,132,927.19.

15.     On November 20, 2008, the Landlord provided a letter dated November 19, 2008, to Debtor, CC pertaining to the unpaid Reimbursements and paid CC $400,822.81 of the Reimbursements by wire transfer.  The Landlord has administratively frozen the remaining $1,132,927.19 of the Reimbursements pending the Court's consideration of this Motion and the occurrence of future events that will liquidate the Landlord's damages.  A copy of the November

---

[5]   The Landlord acknowledges that in the unlikely event the Debtors assume the Lease and cures the defaults, including the satisfaction of any Contractors' Claims or mechanic's liens, the frozen unpaid Reimbursement will be payable to the Debtors or the assignee of the Lease.

20th letter from the Landlord to CC is attached hereto and incorporated herein by reference as **EXHIBIT B.**

    3)  *Prospective Contractors' Claims and Mechanic's Liens.*

  16.  After issuing the wire transfer on November 20, 2008, the Landlord learned that Debtor, CC has failed to pay the general contractor hired to construct the retail building on the Premises in full, and as a result, that contractor is preparing to file a mechanic's lien against the Premises in excess of $200,000.00/  The Landlord is now investigating if there are other parties with mechanic's lien rights against the Premises (together with the general contractor's prospective claim, the "<u>Contractors' Claims</u>").  Not only is Debtor, CC obligated to pay the contractor under the Lease, but CC also has indemnified the Landlord as to Contractors' Claims pursuant to an indemnification agreement (the "<u>Indemnification Agreement</u>").  A true and correct copy of the Indemnification Agreement is attached hereto and incorporated herein by reference as **EXHIBIT C.**

  17.  Accordingly, in addition to the amounts asserted by the Landlord, Mansfield, including all Unpaid Prepetition Rent and Prospective Breach Damages as illustrated in **EXHIBIT B**, the Landlord asserts that all amounts necessary to discharge or prevent the attachment of mechanic's liens to the Premises and to satisfy the Contractors' Claims should be frozen and are subject to the Landlord's rights of setoff and recoupment.

## <u>RELIEF REQUESTED</u>

  18.  By this Motion, the Landlord, Mansfield is requesting that this Court modify the automatic stay: (i) to permit the Landlord to administratively hold or "freeze" all unpaid Reimbursements to adequately protect its rights of setoff and recoupment; (ii) to permit the Landlord to setoff or recoup the Unpaid Prepetition Rent; (iii) to permit the Landlord to setoff or

recoup all Prospective Breach Damages that will be sustained upon the rejection of the Lease; (iv) to permit the Landlord to setoff or recoup amounts necessary to discharge Contractors' Claims and/or avoid the mechanic's liens attaching to the Premises; and (v) to the extent required by applicable law, modify the automatic stay to allow the lien transfer of the building and improvements to occur in accordance with the Lease.  In the event that this Court does not permit an administrative freeze of the unpaid Reimbursements pursuant to 11 U.S.C. § 363(e), the Landlord requests that the Court order the Debtors to provide a means to adequately protect the Landlord's rights of setoff and recoupment of such claims.

### BASIS FOR RELIEF REQUESTED

**A.    Modification of the Stay to Permit an Administrative Freeze of Any Unpaid Reimbursements.**

19.    While any *action* to offset a mutual debt is stayed as a result of the filing of the petition pursuant to Section 362(a)(7), the United States Supreme Court has held that the placement of an administrative hold or "freeze" on the debtor's assets in an attempt to protect a state law setoff right does not violate the automatic stay.  See Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995); see also In re Lennan, 127 F.3d 1099 (4th Cir. 1997) (unpublished opinion) (holding that an administrative freeze to protect rights of setoff did not violate the automatic stay); In re Mountaineer Coal Co., Inc., 247 B.R. 633, 644 (Bankr. W.D. Va. 2000) (permitting an administrative freeze of a refund arising from a contract and holding "that a party does not violate the automatic stay when its conduct is limited to its failure, even without good cause to pay over to the debtor-in-possession or trustee a debt which it owes to the bankruptcy estate").

20.     In an abundance of caution, however, the Landlord is requesting the Court to modify the stay to permit the Landlord to administratively hold or freeze all unpaid Reimbursements in its possession until the Landlord's claims asserted against Debtor, CC, including any Unpaid Prepetition Rent, Prospective Breach Damages, and breach of contract and indemnification claims arising from Contractors' Claims are liquidated.

21.     The United States Supreme Court has clearly held that in situations where setoff rights are implicated, creditors are permitted to administratively "freeze" funds to protect such rights.  See Strumpf, 516 U.S. at 16; see also In re Tillery, 179 B.R. 576, 579-81 (Bankr. W.D. Ark. 1995) (discussion of interplay of §§ 362, 506(a), 542, and 553 concluding that "[a] administrative freeze is nothing more than maintenance of the status quo because it merely preserves funds or balances in the same position as they were prepetition"); Kenny's Franchise Corp. v. Cent. Fidelity Bank, 22 B.R. 747 (W.D. Va. 1982) (permitting an administrative freeze to protect setoff rights).  The administrative freeze merely operates to maintain the status quo by preventing the Debtors from dispersing this cash from the unpaid Reimbursements and thereby annulling the remedy of setoff or recoupment.  See In re Buchferer, 216 B.R. 332, 341 (Bankr. E.D.N.Y. 1997) (citing Strumpf, 516 U.S. at 16).

22.     Furthermore, Section 363 supports the administrative freeze of the unpaid Reimbursements.  Section 363(e) provides, in pertinent part, that "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).  Freezing the unpaid Reimbursements will provide the Landlord with adequate protection of its setoff and

recoupment rights pending the liquidation of its claims against Debtor, CC.   See, e.g., In re

Edgins, 36 B.R. 480, 483 (9th Cir. (B.A.P.) 1984) (citing Kenney's Franchise, 22 B.R. at 747).

23.    Thus, the Landlord is requesting the Court to modify the stay to permit the

Landlord to administratively freeze all unpaid Reimbursements funds pending the occurrence of

events, as outlined below, at which time, the Landlord may setoff or recoup particular portions of

its claims against Debtor, CC.

**B.    Modification of the Automatic Stay to Permit Setoff of the Unpaid
Reimbursements Pursuant to Section 362(d)(1).**

**1) The Right to Setoff.**

24.    The Bankruptcy Code preserves a creditor's state law right to setoff.   Section 553

of the Bankruptcy Code provides, in pertinent part, that:

> [E]xcept as otherwise provided in this section and in Sections 362 and 363 of this
> title, this title does not effect any right of a creditor to offset a mutual debt owing
> by such creditor to the debtor that arose before commencement of the case under
> this title against a claim of such creditor against the debtor that arose before the
> commencement of the case . . . .

11 U.S.C. § 553(a); see also In re Carlyle, 242 B.R 882, 888 (Bankr. E.D. Va. 1999) (stating that

Section 553 "preserves a creditor's right of offset to the extent such right may exist at common

law") (citing Durham v. SMI Indus., 882 F.2d 881, 883 (4th Cir. 1989)). Otherwise, setoff rights

would be extinguished and meaningless if the creditor were required to turnover all property of

the estate prior to a determination of its setoff right.   See generally Strumpf, 516 U.S. at 20.

25.    The right of setoff allows entities that owe each other money to apply their mutual

debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A."

Strumpf, 516 U.S. at 18 (quoting Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528 (1913)).

Setoff "occupie[s] a favored position in our history of jurisprudence," Bohack Corp. v. Borden,

Inc., 599 F.2d 1160, 1164 (2d Cir. 1979), with which courts should interfere "only under the most compelling circumstances." In re Utica Floor Maint., Inc., 441 B.R. 941, 944 (N.D.N.Y. 1984); see also In re DeLaurentiis Entm't Group, Inc., 963 F.2d 1269, 1277 (9th Cir. 1992) ("Absent a setoff, a creditor . . . is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it.").

26.     The Lease is governed by Texas state law, which recognizes the right of setoff. See In re Braniff Airways, Inc. v. Exxon Co. U.S.C., 814 F.2d 1030 (5th Cir. Tex. 1987).  Under Texas law, a setoff may be applied if the debts and claims are prepetition and mutual, however such debts and claims do not have to be of the same character.  See id.

27.     To maintain a right of setoff in Texas, the creditor must show the following:

(1)     A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case;

(2)     The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case; and

(3)     The debt and claim are mutual obligations.

See In re Braniff Airways, 814 F.2d at 1030.

**2)    The Debts and Claims Are Prepetition.**

28.     In general, the question of whether a claim arose prepetition is a question of federal, not state, law, and courts in the Fourth Circuit generally apply the "conduct test" to determine if the acts committed giving rise to the claim occurred pre-petition. Grady v. A.H. Robins Co., 839 F.2d 198, 203 (4th Cir.1988); see also Zeitler v. Martel, 255 B.R. 172 (E.D.N.C. 1999) ("Pursuant to the [conduct test], if the right to payment arises from conduct which took place prior to the petition date, there is a claim within the meaning of § 105(5)."); In re Baseline Sports, Inc., 393 B.R. 105 (Bankr. E.D. Va. 2008) ("Whether a claim arises pre-petition . . . turns

on whether the events giving rise to the claim occurred prior to the date the Debtor filed its bankruptcy petition."). Once the rights to setoff are established, an allowed claim of the creditor is secured up to the extent of the amount subject to setoff. See 11 U.S.C. § 506(a).

29.    In this case, all of the events and conduct giving rise to the Landlord's and CC's claims occurred prior to the Petition Date.[6]

30.    First, the basis of all of the Landlord's claims are the Lease and Indemnification Agreement, which were executed prior to the Petition Date. See In re Baseline Sports, Inc., 393 B.R. at 129 (citing In re Carolina Acoustical & Flooring, Inc., 2008 WL 2369599, at *4 (Bankr. M.D.N.C. June 10, 2008) (applying the "conduct test" and determining that breach of contract and indemnity claims, although contingent and unliquidated as of the petition date, were pre-petition claims)).

31.    Specifically, with respect to the Unpaid Prepetition Rent, such claims arose prepetition under the Lease on the first day of September, October, and November 2008. Furthermore, with respect to the Prospective Breach Damages, the rejection of a non-residential real property constitutes a breach immediately before the Petition Date and gives rise to a prepetition claim pursuant to Section 365(b)(1) of the Bankruptcy Code. See 11 U.S.C. § 365(g)(1); see also In re Lucash, 370 B.R. 664, 670 (Bankr. E.D. Va. 2007). Finally, the Contractors' Claims are based upon the Debtors' failure to perform their duties under the Lease and to indemnify the Landlord under the Indemnity Agreement for such claims. CC had a duty to pay the Contractors' Claims when they arose pursuant to the Lease and therefore the conduct giving rise to such claims arose prepetition. See In re Bentley Funding Group, LLC, 2001 WL

---

[6]    A "debt" is defined as "a liability on a claim." 11 U.S.C. § 101(11). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, natural, unnatural, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(4).

34054525 (Bankr. E.D. Va. Jan.2, 2001) (surety's post-petition performance of debtor's pre-petition obligations was a prepetition claim because the surety's right to indemnity existed as a contingent claim from the date the indemnity agreement was executed).

32.     Second, all events giving rise to the Reimbursements to Debtor, CC occurred when construction of the Premises was completed in September 2008.  It is irrelevant when the actual payment of such Reimbursements were due to CC.   See, e.g., In re Nickerson & Nickerson, 62 B.R. 83, 85 (Bankr. D. Neb. 1986) ("[T]he right to setoff may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed."); In re Elsinore Shore Assocs., 67 B.R. 926, 946 (Bankr. D.N.J. 1986) ("It is not necessary that the debt sought to be setoff be due when the bankruptcy case is commenced."); In re Delta Energy Res., Inc., 67 B.R. 8, 12 (Bankr. W.D. La. 1986) (In concluding that it was a prepetition debt, the court noted "that all the transactions which gave rise to this debt occurred prior to the petition date. The genesis of the debt is clearly pre-petition . . . .").

### 3)   The Debts and Claims Are Mutual.

33.     The Landlord's obligation to the Debtors and damages resulting from the Debtors' existing breaches and anticipated rejection of the Lease are mutual, as they were each incurred under the Lease.   Likewise, the Indemnification Agreement obligations and rights directly emanate from the Lease.  As a general rule, mutuality under Section 553 requires that the debts be owed between the same parties acting in the same capacity.   See, e.g., In re Koch, 224 B.R. 572, 576 (Bankr. E.D. Va. 1998) ("[Mutuality] simply means that the creditor is indebted to the debtor who is similarly indebted to the creditor."); In re Senior Living Properties, L.L.C., 309 B.R. 223 (Bankr. N.D. Tex. 2004) ("Mutuality means that the 'debts must be in the same right

and between the same parties, standing in the same capacity and same kind or quality.").  Where, as in the present case, there are only two parties involved with respect to both the claim and the debt, and each of parties is acting severally and in its own right, the mutuality requirement of Section 553 is easily met.

### C.    Modification of the Automatic Stay to Exercise the Landlord's Right of Recoupment.

34.    Recoupment generally arises when a debtor and a creditor have claims against each other that arise out of the same transaction.[7]  See In re B&L Oil Co., 782 F.2d 155 (10th Cir. 1986).  Recoupment has long been recognized in bankruptcy proceedings, and is typically the means used to determine the proper liability on the amounts owed.  See, e.g., Reiter v. Cooper, 507 U.S. 258, 265 n.2 (1993) (recognizing the right of recoupment in bankruptcy); Bull v. United States, 295 U.S. 247, 262 (1935) ("[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.").

35.    Because recoupment is an equitable defense, most courts recognize that application of the defense of recoupment in a contractual context is especially appropriate.  See In re B&L Oil Co., 782 F.2d at 157 ("A typical case applying the recoupment doctrine in bankruptcy permit[s] a claim for damages for alleged breach of a construction contract to reduce the balance due under the contract.") (citations omitted).

36.    For recoupment to apply, the obligations must arise out of the same transaction. While the Fourth Circuit has not explicitly adopted a test for evaluating the "same transaction,"[8] courts generally apply one of two tests – the "logical relationship" test or a more conservative

---

[7] Although recoupment is generally a defensive doctrine, the Landlord may seek adjudication that it may recoup without waiting for the debtor to bring suit.  See In re Flagstaff Realty Assocs., 60 F.3d 1031, 1035 (3d Cir. 1995).
[8] While not explicitly adopting the integrated transaction test, the Fourth Circuit has affirmed at least one bankruptcy decision applying such test.  See In re Thompson, 182 B.R. 140 (Bankr. E.D. Va. 1995), aff'd 92 F.3d 1182 (4th Cir. 1996) (holding that a right to setoff existed, but not a right to recoupment).

"integrated transaction" test.  Compare Newbery Corp. v. Fireman's  Fund Ins. Co., 95 F.3d 1392, 1402-03 (9th Cir. 1996) (applying the "logical relationship" test and allowing recoupment between an obligation arising out of an indemnity agreement and a separate rental obligation involving the same parties), with In re University Medical Center, 973 F.2d 1065, 1081 (3d Cir. 1992) (applying the "integrated transaction" test and requiring that the obligations at issue "arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations," and In re Flagstaff Realty Assocs., 60 F.3d 1031 (3d Cir. 1995) (applying the "integrated transaction" test and permitting recoupment where both the creditor's claim for repair costs and the debtor's claim to rent payment arise from the lease relationship).  See also In re Coxson, 43 F.3d 189, 193-94 (5th Cir. 1995) (holding that recoupment is appropriate where creditor's and debtor's obligations arise out of the same contract); Howard Johnson, Inc. v. Tucker, 157 F.2d 959, 961 (5th Cir. 1946) (claims for damages arising on rejection of an executory lease in bankruptcy are properly subject to recoupment where the obligations both arise out of the same transaction).

37.    In this case, the Landlord has a valid right of recoupment under both tests.  Indeed, all obligations at issue giving rise to the Landlord's claims arise out of the Lease and Indemnity Agreement.  To find otherwise would allow the Debtors to enjoy the benefits of the Lease without also meeting its obligations.

38.    The central distinction between a setoff and recoupment is that the time limits of setoff do not apply to recoupment.  As such, prepetition claims can be withheld from post-petition debts.  See In re Bob Brest Buick, Inc., 136 B.R. 322 (Bankr. D. Me. 1991) (recoupment is "without regard to the pre- or post-petition timing of a particular financial event").

39.    The exercise of recoupments rights is not generally subject to the automatic stay, however courts have found it prudent to seek such relief. See generally In re Izagirre, 166 B.R. 484, 493 (Bankr. N.D. Ga. 1994) (stating that although creditors with recoupment rights may not technically need relief from the stay, "the better approach is to seek relief from the stay as a precaution."). Thus, the Landlord seeks relief from the automatic stay to the extent required to exercise its right of recoupment to satisfy the Unpaid Prepetition Rent, Prospective Breach Damages, and Contractors' Claims.

**D.    The Landlord Has Illustrated its Prima Facie Case to Modify the Automatic Stay For "Cause" Pursuant to Section 362(d)(1).**

40.    Section 362(d)(1) permits the modification of the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

41.    The Bankruptcy Code does not define "cause" under section 362(d)(1), however courts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of "cause" for relief from the automatic stay under Section 362(d)(1). See, e.g., In re Ealy, 392 B.R. 408 (Bankr. E.D. Ark. 2008) (citing In re Nuclear Imaging Sys., Inc., 360 B.R. 724, 730 (Bankr. E.D. Pa. 2000)); In re Olson, 375 B.R. 30 (Bankr. D. Neb. 1994) (citing In re Orlinski, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991)).  Once the creditor establishes its right of setoff, the burden then shifts to the debtor to show that it will provide adequate protection. See In re Ealy, 392, B.R. at 414.

42.    For the foregoing reasons and any arguments made at hearing on this matter, this Court should immediately modify the automatic stay: (i) to permit the Landlord, Mansfield to administratively hold or "freeze" the unpaid Reimbursements to adequately protect its rights of

setoff and recoupment; (ii) to permit the Landlord to setoff all Unpaid Prepetition Rent in the amount of $43,291.62 immediately; (iii) to permit the Landlord to setoff or recoup any Prospective Breach Damages that arise upon the rejection of the Lease or are incurred thereafter five (5) days after the later of the rejection (with respect to future rent) or actual expenditure (with respect to consequential future damages); (iv) to permit the Landlord to setoff or recoup Contractors' Claims or payments to avoid attachment of mechanic's liens when paid by the Landlord; and (v) to the extent required by applicable law, modify the automatic stay to allow the lien transfer of the building and improvements to occur in accordance with the Lease.

43.    In the event that this Court does not permit an administrative freeze of the unpaid Reimbursements pursuant to 11 U.S.C. § 363(e), the Landlord requests that the Court order the Debtor to provide a means to adequately protect the Landlord's rights of setoff and recoupment.

**E.    Modification of the Automatic Stay Pursuant to Section 362(d)(2).**

44.    Section 362(d)(2) permits the modification of the automatic stay if the debtor lacks equity in the property and such property is not necessary to an effective reorganization. See 11 U.S.C. § 362(d)(2).  Debtor, CC is preparing to close for business at the Premises and the rejection of the Lease is imminent.  Other than in the most generic sense that the Debtors would like to have more cash, the unpaid Reimbursements are not necessary to their reorganization. CC lacks any equity in the unpaid Reimbursements in light of the fact that the amount of Landlord's setoff and recoupment rights will exceed same.  Thus, modification of the automatic stay pursuant to Section 362(d)(2) is also proper.

**WHEREFORE,** by reason of the foregoing and any arguments made at hearings on this matter, the Landlord is respectfully requesting that this Court modify the automatic stay: (i) to permit the Landlord to administratively hold or "freeze" all unpaid Reimbursements to

adequately protect its rights of setoff and recoupment; (ii) to permit the Landlord to setoff all

Unpaid Prepetition Rent; (iii) to permit the Landlord to setoff or recoup any Prospective Breach

Damages that will likely be incurred upon the rejection of the Lease; (iv) to permit the Landlord

to setoff or recoup amounts necessary to pay unpaid Mechanic's Liens or Contractors' Claims

and/or avoid mechanic's liens attaching to the Premises; and (v) to the extent required by

applicable law, modify the automatic stay to allow the lien transfer of the building and

improvements to occur in accordance with the Lease.  In the event that this Court does not permit

an administrative freeze of the unpaid Reimbursements, the Landlord requests that the Court

order the Debtors to provide a means to adequately protect the Landlord's rights of setoff and

recoupment.

Dated: November 26, 2008.                 **Respectfully Submitted,**

                                          **MANSFIELD SEQ 287 & DEBBIE, LTD.,**

                                          **By Counsel**

/s/ Lisa Taylor Hudson
_____
C. Thomas Ebel, Esquire – VSB #18637
William A. Gray, Esquire – VSB #46911
Lisa Taylor Hudson, Esquire – VSB #45484
Sands, Anderson, Marks & Miller, P.C.
801 East Main Street, Suite 1800
Post Office Box 1998
Richmond, Virginia 23218-1998
(804) 648-1636 Telephone
(804) 783-7291 Facsimile
   *Local Counsel to Landlord, Mansfield SEQ 287 & Debbie, Ltd.*

And

Joseph A. Friedman, Esquire
**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Square
1601 Elm St.
Dallas, Texas 76201-4299
(214) 777-4200 Telephone
(214) 777-4299  Facsimile
  *Counsel to Landlord, Mansfield SEQ 287 & Debbie, Ltd.*

## <u>EXHIBITS (AS ATTACHED SEPARATELY):</u>

A.      Lease with Amendments
B.      November 20, 2008 letter
C.      Indemnification Agreement

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of November, 2008, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Bankruptcy Court for the Eastern District of Virginia, Richmond Division, using the CM/ECF system, which thereby caused the above to be served electronically on all registered users of the ECF system that have filed notices of appearance in this matter, and was mailed, by U.S. Mail, first class, postage prepaid, to all persons on the Service List below:

### SERVICE LIST

| | |
|---|---|
| Daniel F. Blanks, Esquire<br>Douglas M. Foley, Esquire<br>McGuire Woods LLP<br>9000 World Trade Center<br>101 W. Main Street<br>Norfolk, VA 23510 | ATTORNEYS FOR DEBTORS |
| Dion W. Hayes, Esquire<br>James S. Sheerin, Esquire<br>Sarah Beckett Boehm, Esquire<br>McGuire Woods LLP<br>One James Center<br>901 E. Cary Street<br>Richmond, VA 23219 | ATTORNEYS FOR DEBTORS |
| Gregg M. Galardi, Esquire<br>Skadden Arps Slate Meagher & Flom, LLC<br>One Rodney Square<br>P. O. Box 636<br>Wilmington, Delaware 19899-0636 | ATTORNEYS FOR DEBTORS |
| Chris L. Dickerson, Esquire<br>Skadden Arps Slate Meagher & Flom, LLC<br>333 West Wacker Drive<br>Chicago, IL 60606 | ATTORNEYS FOR DEBTORS |
| Robert Van Arsdale, Esquire<br>Assistant U.S. Trustee<br>Office of the U.S. Trustee<br>600 E. Main Street, Suite 301<br>Richmond, VA 23219 | OFFICE OF U.S. TRUSTEE |

/s/ Lisa Taylor Hudson