| | |
|---|---|
| Gregg M. Galardi, Esq.<br>Ian S. Fredericks, Esq.<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM, LLP<br>One Rodney Square<br>PO Box 636<br>Wilmington, Delaware 19899-0636<br>(302) 651-3000 | Dion W. Hayes (VSB No. 34304)<br>Douglas M. Foley (VSB No. 34364)<br>MCGUIREWOODS LLP<br>One James Center<br>901 E. Cary Street<br>Richmond, Virginia 23219<br>(804) 775-1000 |

- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the
Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
             Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - - x
```

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTION 363 AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS AND PANASONIC**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors" or "Circuit City")[1] hereby move this Court (the "Motion") for entry of an order (the "Proposed Order"), pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules), approving the settlement agreement (the "Settlement Agreement" substantially in the form attached to the Proposed Order as Exhibit A)[2] entered into between the Debtors and Panasonic Corporation of North America ("Panasonic").  In support of the Motion, the Debtors respectfully represent:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2] Unless otherwise indicated, capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested here are Bankruptcy Code Section 363 and Bankruptcy Rules 9019.

**BACKGROUND**

3. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. Based in Richmond, Virginia, Debtors are a leading specialty retailer of consumer electronics and operate large nationwide electronics stores throughout the United States and Puerto Rico that sell, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

7. Despite significant revenues, the Debtors have suffered two consecutive years of losses. While the Debtors made every effort to improve their financial performance and implement a global turnaround strategy, they were ultimately unable to consummate a successful restructuring outside of bankruptcy. In large part, the Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

8. Thus, the Debtors commenced these cases with the immediate goals of obtaining adequate postpetition financing and continuing their restructuring initiatives commenced prior to the Petition Date, including closing certain stores. In addition, the Debtors will

4

continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

## THE PANASONIC AGREEMENTS

9. Circuit City and Panasonic Consumer Electronics Company, a division of Panasonic, entered into a "Consignment Agreement," dated as of March 8, 2006, and amended February 2008 (the "Consignment Agreement"), pursuant to which Panasonic agreed to provide certain goods to Circuit City on a consignment basis (the "Consigned Products").[3]

10. The Consignment Agreement provides that "[t]itle to the Consigned Products . . . shall remain in Panasonic until such time as the products are sold by Circuit City to its customers. . . At the point of sale to Customers, title to the Consigned Products first shall pass to Circuit City and then to the Customer as

---

[3] The Consigned Products in possession of Circuit City, as of November 10, 2008, are listed on Schedule I to the Settlement Agreement. A copy of Schedule I has been provided to the Debtors and will be made available for review by the Bankruptcy Court and counsel for the Official Committee of Unsecured Creditors. Other parties may review Schedule I upon a showing of need and upon execution of an acceptable non-disclosure agreement.

5

part of a simultaneous transaction." See Consignment Agreement at § 1(b).[4]

11. In connection with the Consignment Agreement, Panasonic has asserted that it properly filed UCC-1 financing statements with the Virginia Secretary of State. Panasonic has further asserted that it delivered notices to Circuit City's then-existing secured creditors with a conflicting security interest informing them of Panasonic's purchase money security interest in the Consigned Products.

12. On November 3, 2008, Panasonic wrote Circuit City that the Consignment Agreement would be terminated unless all past due amounts were paid within 10 business days. By letter dated November 6, 2008, Panasonic purported to terminate the Consignment Agreement and instructed Circuit City to stop selling the Consigned Products immediately and to hold them pending further instruction.

13. The Debtors and Panasonic dispute whether Panasonic had a contractual right to terminate the Con-

---

[4] The Consignment Agreement is not attached due to confidentiality restrictions.

6

signment Agreement. The Debtors and Panasonic further dispute whether Circuit City had the right to sell, transfer, encumber or dispose of the Consigned Products after termination of the Consignment Agreement.

14. Pursuant to an interim agreement between the Debtors and Panasonic, the Debtors have sold Consigned Product after the Petition Date and on account of the sales from November 10 through November 16, 2008, the Debtors have paid Panasonic the aggregate amount of $3,770,565.97 plus additional amounts from and after November 16, 2008 (the "Postpetition Consignment Payments").

15. The Debtors have requested that Panasonic deliver new products subject to credit terms. Panasonic has refused to deliver such new products to the Debtors on any credit terms unless the Debtors pay $9,382,247.44, which Panasonic asserts is the amount due for Consigned Products sold by Circuit City prior to the Petition Date ("Prepetition Consignment Claim"). Circuit City contends that the Prepetition Consignment Claim is approximately $7,900,000 ("Undisputed Prepetition Consignment Claim"), which Circuit City claims is subject to certain

7

chargebacks and setoffs in the approximate amount of $3,740,102.32 (the "Chargeback Claim").

16. The Debtors and Panasonic have entered into the Settlement Agreement in the form of <u>Exhibit A</u> to the Proposed Order filed concurrently herewith, subject to Bankruptcy Court approval, in order to timely resolve certain of their disputes without incurring the costs, delays and uncertainty of litigation.

**RELIEF REQUESTED**

17. By this Motion, the Debtors seek entry of an order approving the Settlement Agreement, which, in exchange for certain payments by the Debtors and the adoption of certain payment terms, will enable the Debtors to continue to sell the Consigned Products and other merchandise from Panasonic, according to the terms and conditions of the Settlement Agreement. As discussed more fully below, the Debtors believe that such compromise is fair, reasonable and in the best interests of the Debtors, their estates and their creditors.

**TERMS OF THE PROPOSED SETTLEMENT AGREEMENT**

18. In order to avoid the expense, delay and uncertainty of litigating the Debtors and Panasonic's

8

respective positions regarding the Prepetition Consignment Claim and to enable the Debtors to sell Panasonic merchandise going forward, which will be especially important to the Debtors during the upcoming holiday season, the Debtors and Panasonic have agreed to resolve their disputes pursuant to the terms of the Settlement Agreement.

19. The complete terms of the Settlement Agreement are attached as <u>Exhibit A</u> to the Proposed Order. The material terms of the Settlement Agreement are set forth below.[5]

> (a) Panasonic consents to the postpetition sale of the Consigned Products listed on Schedule I to the Settlement Agreement provided that the Debtors shall pay Panasonic the Wind-Down Payments, as defined in the Settlement Agreement, no later than two (2) days after the sale of such Consigned Products.
>
> (b) In the event of a dispute over the amount of the Wind-Down Payments, the Debtors shall pay the undisputed portion and the remainder shall be placed in a segregated interest bearing account and, if not resolved

---

[5] To the extent that there is any conflict between the terms of the summary contained in this Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

9

        within two (2) business days, the dispute shall be resolved by this Court.

(c)   Subject to the approval of this Court, which approval the Debtors will use their best efforts to obtain by no later than December 10, 2008, the Debtors shall pay the Undisputed Prepetition Consignment Claim plus other amounts due to Panasonic from prepetition sales of Consigned Products as determined after good faith reconciliation.

(d)   The Debtors and Panasonic shall confer in good faith to reconcile the amount of the Prepetition Consignment Claim prior to December 10, 2008. If such reconciliation is not completed by December 10, 2008, the disputed portion of the Prepetition Consignment Claim shall be placed in an interest-bearing segregated escrow account, which shall not be released absent written agreement among the Debtors and Panasonic or an order of the Bankruptcy Court.

(e)   Panasonic shall ship new products to the Debtors on a cash in advance basis (the "CIA Sales"), subject to certain conditions, including that the Panasonic shall have received full payment in advance by wire transfer.

(f)   Panasonic shall ship new products to the Debtors on credit terms of up to $2 million payable in net five (5) days from invoice date (the "Credit Sales"), subject to certain conditions, including that Panasonic

        shall have received payment in full in cash of the Undisputed Prepetition Consignment Claim plus any other amounts due and owing to Panasonic after a reconciliation.

(g)    The Consignment Agreement shall be deemed terminated as of November 6, 2008 and of no further force or effect.

(h)    Panasonic reserves its rights to seek allowance and payment of reclamation and 503(b)(9) claims, secured claims, administrative expense claims, unsecured claims or other claims that Panasonic may hold against the Debtors or to otherwise seek to enforce any right (legal or equitable) against the Debtors.

(i)    The Debtors shall be entitled to offset the Chargeback Claim against distributions payable to Panasonic on account of any allowed claim or administrative expense, except for the Wind-Down Payments, Prepetition Consignment Claim or payments due in connection with any CIA Sale, and only to the extent that such Chargeback Claim is either undisputed or the amount of the Chargeback Claim is determined by the Bankruptcy Court after notice and a hearing. Additionally, the Debtors reserve their right to seek direct payment of the Chargeback Claim (as opposed to recovery from offset).

**APPLICABLE AUTHORITY**

20.  Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement."  Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy.  See In re Bond, 1994 U.S. App. Lexis 1282, *9-*14 (4th Cir. 1994)("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy'."); Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  Various courts have endorsed the use of Bankruptcy Rule 9019.  See, e.g., Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996); In re Foundation for New Era Philanthropy, Case No. 95-13729B, 1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug. 21, 1996); In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992); In re Check Reporting Service, Inc., 137 B.R. 653 (Bankr. W.D. Mich. 1992); In re Patel, 43 B.R. 500, 504 (N.D. Ill. 1982);.

21.  The standards by which a Court should evaluate a settlement are well established.  In addition

to considering the proposed terms of the settlement, the Court should consider the following factors:

    (a)   the probability of success in litigation;

    (b)   the difficulty in collecting any judgment that may be obtained;

    (c)   the complexity of the litigation involved, and the expense inconvenience and delay necessarily attendant to it; and

    (d)   the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement.

See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245 (1968); United States ex. Rel. Rahman v. Oncology Assoc., P.C., 269 B.R. 139, 152 (D. Md. 2001); In re Frye, 216 B.R. 166, 174 (E.D. Va. 1997).

    22.   The decision to approve a settlement or compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case. See TMT Trailer Ferry, 390 U.S. at 424-25. The settlement need not be the best that the debtor could have achieved, but need only fall "within the reasonable

range of litigation possibilities." In re Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994). In making its determination, a court should not substitute its own judgment for that of the debtor. In re Neshaminy Office Bldg. Assoc., 62 B.R. 798, 803 (E.D. Pa. 1986).

23.    The proposed settlement between Circuit City and Panasonic meets the standards for approval under applicable law. The Settlement Agreement represents a fair and reasonable compromise of Panasonic's allegedly properly perfected consignment interest and section 503(b)(9) claim. The Settlement Agreement avoids the cost, delay and uncertainty of litigation and ensures that the Debtors will receive merchandise from Panasonic in time for the upcoming holiday season – traditionally the highest volume shopping period of the year.

24.    Accordingly, for the reasons detailed herein, the Debtors have determined that the Settlement Agreement is in their best interests and the best interests of their estates, creditors and parties in interest and seek approval of the Settlement Agreement under Bankruptcy Rule 9019.

14

25. Additionally, under Bankruptcy Code section 363, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. See 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1985). It is essential to the Debtors' successful restructuring that they obtain merchandise from Panasonic, among other vendors, in time for sale throughout the holiday season. Thus, there is a more than sufficient business justification for entry into the Settlement Agreement, even if such payment were deemed to be outside the ordinary course of business. See id. at 175.

26. Finally, the Debtors are satisfied that a probable outcome in litigation with Panasonic would be a finding that Panasonic has a perfected consignment interest in the Consigned Products and an administrative expense claim under Bankruptcy Code section 503(b)(9) for the merchandise received by the Debtors during the

twenty (20) days prior to the Petition Date.  Thus, Panasonic would likely be entitled to priority with respect to the value of the Consigned Products as well as an administrative expense claim under Bankruptcy Code section 503(b)(9) for the value of those Consigned Products delivered within the twenty-day period.  Accordingly, the payment contemplated by the Settlement Agreement will not diminish the assets of the Debtors' estates to the detriment of unsecured creditors and such payment is consistent with the priority of claims under the Bankruptcy Code.  Accordingly, this Court should grant the requested relief under Bankruptcy Code section 363.

### NOTICE

27.  Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 136).  The Debtors submit that, under the circumstances, no other or further notice need be given.

16

### WAIVER OF MEMORANDUM OF LAW

28. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

29. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form of the Proposed Order annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 26, 2008
       Richmond, Virginia

                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                    Gregg M. Galardi, Esq.
                    Ian S. Fredericks, Esq.
                    P.O. Box 636
                    Wilmington, Delaware 19899-0636
                    (302) 651-3000

                          - and -

                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                    Chris L. Dickerson, Esq.
                    333 West Wacker Drive
                    Chicago, Illinois 60606
                    (312) 407-0700

                          - and -

                    MCGUIREWOODS LLP

                    ___/s/ Douglas M. Foley____
                    Dion W. Hayes (VSB No. 34304)
                    Douglas Foley (VSB No. 34364)
                    One James Center
                    901 E. Cary Street
                    Richmond, Virginia 23219
                    (804) 775-1000

                    Proposed Counsel for Debtors and Debtors in Possession