and Tenant for the remainder of the Term and on the same terms and conditions as contained herein, without the necessity of executing a new lease; and (iii) Landlord and Tenant shall have the right to execute any amendment to this Lease which is specifically required hereunder and the Ground Lessor shall recognize and be bound thereto. "Ground Lessor" shall mean the landlord under any existing or future ground or underlying lease(s) affecting all or any part of the Shopping Center (such ground or underlying lease(s) is referred to as the "Ground Lease(s)"). "Mortgagee" shall mean any state or federally regulated bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender, which is not an Affiliate of Landlord, and which holds a mortgage on the Shopping Center or is the beneficiary under a deed of trust encumbering the Shopping Center (such mortgage or deed of trust is referred to as the "Mortgage").

SECTION 19.02  Existing Mortgages and Ground Leases. If a Mortgage or any Ground Lease encumbers the Shopping Center or any part thereof on the Effective Date, then, simultaneously with the execution of this Lease, Landlord shall deliver to Tenant (provided that Tenant delivers executed counterparts of such documents together with the executed originals of this Lease), in recordable form: (a) a subordination, non-disturbance and attornment agreement substantially in the form attached as Exhibit J, in recordable form, executed by each and every Mortgagee, and (b) a fee owner recognition agreement in the form and content described in Section 19.01(b), in recordable form, executed by any Ground Lessor (and, as may be required, consented to by the Mortgagee). Should Landlord fail to so deliver such instrument(s) as provided above and such failure continues for a period in excess of thirty (30) days, Tenant shall have the right, by notice given to Landlord at any time prior to the date on which such instrument(s) are delivered, to terminate this Lease without further liability on the part of Landlord or Tenant, except: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) Landlord shall (which obligation shall survive the termination of this Lease), within ten (10) business days following Tenant's termination notice, reimburse Tenant for all its reasonable, third-party costs and out of pocket expenses incurred in connection with this Lease (including, without limitation, costs associated with the preparation and review of plans and specifications, the performance of Tenant's Work, and attorneys' fees), not to exceed Fifty Thousand Dollars ($50,000).

SECTION 19.03  Transfer of Interest. Landlord shall provide Tenant with notice upon or immediately after any sale or transfer of Landlord's interest in the Shopping Center. Landlord shall require the buyer or transferee to assume in writing all of the obligations of Landlord under this Lease. Notwithstanding Section 23.13, Landlord shall continue to remain liable for all accrued liability, if any, up to the date of such sale or transfer. Notwithstanding anything contained herein to the contrary, Landlord shall continue to remain liable hereunder after such sale or transfer unless the buyer or transferee has expressly assumed in writing all of the obligations of Landlord under this Lease.

SECTION 19.04  Tenant Estoppel Certificates. Tenant agrees, within thirty (30) days of Landlord's request, to execute and deliver to Landlord or any Mortgagee or any other party designated by Landlord, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Tenant's actual knowledge

and belief that the Landlord is not in default under this Lease, and that there are no offsets or defenses to enforcement of this Lease, except as may be stated in the certificate, and (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid, and (e) stating such other factual matters relating to this Lease as may be reasonably requested.

SECTION 19.05 Landlord Estoppel Certificates. Landlord agrees, within thirty (30) days of Tenant's request, to execute and deliver to Tenant or any assignee, transferee, subtenant or Lender, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Landlord's actual knowledge and belief that Tenant is not in default under this Lease, and that there are no offsets or defenses to enforcement of this Lease, except as may be stated in the certificate, (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid, and (e) stating such other factual matters relating to this Lease as may be reasonably requested.

SECTION 19.06 Payments. If Landlord shall request Tenant to execute more than one (1) subordination, attornment and recognition agreement, or additionally, more than one (1) estoppel certificate, in any twelve (12) month period, then, as a condition to Tenant's obligations under Sections 19.01 or 19.04, as the case may be, Landlord shall pay to Tenant Seven Hundred Fifty Dollars ($750) for each subsequent request for a subordination, attornment and recognition agreement or an estoppel certificate within such twelve (12) month period, unless the form of the SNDA is that attached hereto as Exhibit J. If Tenant shall request Landlord to execute more than one (1) estoppel certificate in any twelve (12) month period, then, as a condition to Landlord's obligations under Section 19.05, Tenant shall pay to Landlord Seven Hundred Fifty Dollars ($750) for each subsequent request for an estoppel certificate within such twelve (12) month period.

## ARTICLE XX

## LANDLORD'S REPRESENTATIONS, WARRANTIES AND COVENANTS

SECTION 20.01 Quiet Enjoyment. Landlord covenants and agrees that Tenant, subject to the terms of this Lease, during the Term, shall freely, peacefully, and quietly occupy and enjoy the use and possession of the Premises without disturbance, molestation, hindrance or ejectment of any kind whatsoever as a result of any act or inaction on the part of Landlord or any persons claiming through Landlord.

SECTION 20.02 Representations, Warranties and Covenants. In order to induce Tenant to execute this Lease and in consideration thereof, Landlord covenants, warrants and represents to Tenant as follows:

(a) As of the Effective Date and as of the Possession Date, Landlord owns the fee simple title to the Shopping Center free and clear of all easements, restrictions, liens, encumbrances, leases and the like, except as described on Exhibit K; that the Shopping Center, as of the Effective Date (and as of the Possession Date), is not (and will not be) subject to the

lien of any Mortgage (except such instruments where the lienor has entered (or will enter) into an agreement in favor of Tenant, as described in Sections 19.01 and 19.02); that Landlord has the full power, right and authority to make this Lease for the Term without the consent, joinder, or approval of any other party; and that Landlord will, on the Possession Date, put Tenant into complete and exclusive possession of the Premises free from all orders, restrictions, covenants, agreements, leases, easements, laws, codes, ordinances, regulations or decrees (including, without limitation, those matters described on Exhibit K) which would, in any way, prevent or inhibit the use of the Premises for the sale, rental, installation, servicing and repairing of the Products and the Ancillary Products, as defined below) or prevent or restrict the use of the Common Areas or limit ingress and egress to and from U.S. Highway 287 and Home Depot Drive, the public thoroughfares shown on the Site Plan, by Tenant, its agents, employees or invitees. The term "Ancillary Products" shall mean furniture and appliances (including, without limitation, household appliances such as, by way of example only, ovens, refrigerators, freezers, dishwashers, washers, dryers, microwave ovens, toasters and blenders).

(b)  Landlord shall, on or before the Possession Date, have caused the Delivery of the Land to occur in accordance with this Lease.

(c)  The Shopping Center shall, at the time of commencement of construction by Landlord, be properly zoned for the operation and maintenance of a store similar to other stores operated by Tenant and for its contemplated use, and that, other than Tenant's Permits, all necessary governmental consents, permits and approvals allowing for the Premises to be occupied for such use shall have been obtained by Landlord.

(d)  As of the Effective Date there is no Affiliated Land in existence and as of the Possession Date there will not be any Affiliated Land in existence (or, if there shall be Affiliated Land in existence, Landlord shall promptly notify Tenant thereof and promptly execute any recordable instrument reasonably requested by Tenant which memorializes the provisions of this Lease pertaining to or otherwise affecting Affiliated Land).

SECTION 20.03 Site Covenants. In order to induce Tenant to enter into this Lease, Landlord covenants to Tenant as follows (the "Site Covenants"):

(a)  Landlord shall not construct (or permit to be constructed) any buildings or other improvements in the area identified on the Site Plan as the "No-Build Area" (the "No-Build Area").[1]

(b)  Except for building articulations in the initial design and construction of the Shopping Center, and as may be required by the applicable public authority, Landlord shall not construct (or permit to be constructed) any projections either vertical or horizontal (other than Tenant's or other tenant's signs or identifications) which will project along the front of the building in which the Premises are situated in such a manner as to obstruct the view of Tenant's signs or its store front in any manner.

---

[1] The No-Build Area should be the entire Shopping Center other than the building identified on the site plan.

(c) The number of paved, full-size parking spaces in the Shopping Center shall be the greater of (i) the ratio listed in Section 1.01(M) or (ii) the amount of spaces required by Laws (without variance), and, without limiting the generality of the foregoing, the number of spaces contained in Tenant's Preferred Area shall be the same number of spaces as shown on the Site Plan, except as the result of a Taking.

(d) Landlord shall not erect (or permit to be erected) any building or other structures (including, without limitation, kiosks) in any Outparcel except as and where shown on the Site Plan, and all Outparcel buildings constructed shall (i) not be exceed a height of twenty-eight (28) feet above the finished floor of the Premises (and thirty (30) feet inclusive of all roof top mechanicals, all projections and all architectural treatments and embellishments, provided, that the building constructed on Outparcel 3 may not be exceed a height of twenty-eight (28) feet above the finished floor of the Premises (and thirty four (34) feet inclusive of all roof top mechanicals, all projections and all architectural treatments and embellishments), (ii) not exceed the Floor Area shown on the Site Plan, (iii) satisfy all parking requirements (without variance) using the parking spaces located within each such Outparcel, and (iv) shall not be used in violation of the Prohibited Uses or the Exclusive Use Protection.

(e) Landlord shall not use (or permit the use of) all or any portion of the Common Areas for retail sales or for promotional purposes, subject to Tenant's rights under Section 2.01(c), except that sidewalk sales in the locations shown on the Site Plan ("Sidewalk Sales Area") shall be permitted so long as pedestrian traffic is not unreasonably impeded.

(f) Unless required by applicable governmental authority(ies), Landlord shall not make (and shall not permit there to made) any changes to those Common Areas identified as "No-Change Area" on the Site Plan (the "No-Change Area") including, without limitation, changes in the location of curb cuts, drive aisles, entrances, access points, roadways, sidewalks or parking spaces or reduction of the parking ratio specified in Section 20.03(c), without Tenant's consent, which may be withheld in Tenant's sole discretion. Landlord shall not make (and shall not permit to be made) any other changes to the Common Areas which adversely affects Tenant's access to the Premises or the Shopping Center or the visibility of the Premises or of any of Tenant's signage, without Tenant's consent, which may be withheld in Tenant's sole discretion. Any other changes to the Common Areas may be made only upon Tenant's consent which shall not be unreasonably withheld, conditioned or delayed.

(g) Following Tenant's opening for business at the Premises, (a) Landlord shall undertake commercially reasonable efforts to control any noise and dust at the Shopping Center (including, without limitation, during any periods of permitted construction within the Shopping Center) such that neither interferes with the normal operation of Tenant's business, and (b) Landlord shall not perform (and shall not permit there to be performed) any exterior construction during the months of October, November and December (but excluding 2007), except to the extent permitted under Section 5.01.

(h) Landlord shall undertake commercially reasonable efforts to prohibit any solicitation, distribution of handbills, picketing, or other public demonstration in the Common Areas, except as otherwise may be mandated by Laws or permitted by the constitutions of the State of Texas or the United States of America.

43

WO 696608.9

(i)     Landlord shall not enter into any agreement for a commercial transmission and/or reception tower for wireless telephone or internet communications within the Shopping Center provided, however that the foregoing shall not prohibit the incidental use of wireless telephone or internet communications (including transmission and/or reception towers in compliance with Laws and Landlord's screening requirements, if any) of as part of the ordinary business communication operations of a tenant of the Shopping Center.

(j)     Landlord shall not knowingly install or knowingly permit to be installed by any other tenant or other person anywhere in the Shopping Center or any Affiliated Land any structure or equipment which would cause any interference with satellite, radio, telecommunications or television reception or transmission in or from the Building, and in the event that another tenant or occupant of the Shopping Center or Affiliated Land installs any structure or equipment that actually causes interference with the satellite, radio, telecommunications or television reception or transmission in or from the Building, Landlord shall provide reasonable cooperation to Tenant is resolving the foregoing.

## ARTICLE XXI

## HOLDING OVER

SECTION 21.01 <u>Holding Over</u>. If Tenant remains in possession of the Premises after the expiration of the Term without having duly exercised its right, if any, to extend or further extend the Term, such continuing possession shall create a month-to-month tenancy on the terms herein specified and such tenancy may be terminated at the end of any month thereafter by either party by giving at least thirty (30) days notice thereof to the other party. During such holdover and provided that Landlord and Tenant are not in good faith negotiations with regard to the renewal or extension of this Lease or the entering into a new lease for premises within the Shopping Center, Tenant shall be liable for Annual Minimum Rent on a monthly basis (or, if applicable, on a prorated daily basis) in an amount equal to one hundred fifteen percent (115%) of the amount thereof payable by Tenant for the month immediately preceding the last day of the Term, as well as for all Additional Rent payable by Tenant under this Lease.

## ARTICLE XXII

## NOTICE

SECTION 22.01 <u>Where and How Given</u>. All notices or demands which either party hereto either is required to or may desire to serve upon the other shall be in writing and shall be sufficiently served upon such other party, by (a) mailing a copy thereof by certified or registered mail, postage prepaid, return receipt requested, addressed to the party to whom the notice is directed at the "Notice Address" of such party, or (b) by a reliable overnight courier (such as Federal Express), all charges prepaid, furnishing a receipt upon delivery, and addressed to the party to whom the notice is addressed at the Notice Address of the part. The Notice Address of each party is:

    a) Landlord:        MANSFIELD SEQ 287 & DEBBIE, LTD.
                                c/o Mansfield Pointe Shopping Center

|  |  |
|---|---|
|  | 2525 McKinnon Street, Suite 700<br>Dallas, Texas 75201<br>Attn: Mr. Chad Bradshaw |
| with a copy to: | KANE RUSSELL COLEMAN & LOGAN PC<br>3700 Thanksgiving Tower<br>1601 Elm Street<br>Dallas, Texas 75201<br>Attn: Raymond J. Kane |
| b) Tenant: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: General Counsel |
| with a copy to: | Sutherland Asbill & Brennan LLP<br>1114 Avenue of the Americas<br>40th Fl.<br>New York, NY 10036<br>Attn: David J. Rabinowitz, Esq. |

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

SECTION 22.02 <u>When Given</u>. Unless otherwise provided for herein, notice shall be deemed to have been served at the earlier of the date received, refused or returned as undeliverable. However, if such notice pertains to the change of address of either of the parties hereto, then such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given.

## ARTICLE XXIII

## MISCELLANEOUS

SECTION 23.01 <u>Rent Proration</u>. If this Lease is terminated prior to its natural expiration date for any reason other than a Tenant default, then Landlord shall promptly reimburse Tenant for any Rent prepaid by Tenant for periods subsequent to such termination date. This Section 23.01 shall survive the termination of this Lease.

SECTION 23.02 <u>Construction</u>. In construing this Lease, feminine or neuter pronouns shall be substituted for those masculine in form and vice versa, and plural terms shall be substituted for singular and singular for plural in any place in which the context so requires. This

Lease shall be construed without regard to: (a) the identity of the party who drafted the various provisions hereof, and (b) the addition or deletion of text made during the negotiation of this Lease. Moreover, each and every provision of this Lease shall be construed as though all parties hereto participated equally in the drafting thereof. As a result of the foregoing, any rule or construction that a document is to be construed against the drafting party shall not be applicable hereto.

SECTION 23.03 Section Headings. The section headings in this Lease are for convenience only and do not in any way limit or simplify the terms and provisions of this Lease, nor should they be used to determine the intent of the parties.

SECTION 23.04 Partial Invalidity. If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, then the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 23.05 Waiver. The failure of either party to seek redress for violation of, or to insist upon strict performance of, any term, covenant or condition contained in this Lease shall not prevent a similar subsequent act from constituting a default under this Lease.

SECTION 23.06 Governing Law. This Lease shall be governed and construed in accordance with the laws of the State.

SECTION 23.07 Successors and Assigns. This Lease shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assign of Landlord and the successors and assigns of Tenant.

SECTION 23.08 No Broker. Landlord and Tenant represent to each other that no broker or person is entitled to any commission by reason of the negotiation and execution of this Lease, other than the Broker identified in Section 1.01(D), and Landlord agrees that Landlord shall be solely responsible for the fees and commissions of the Broker. Landlord and Tenant agree to indemnify, defend and hold each other harmless against any and all claims by any other person for brokerage commissions or fees arising out of any conversation, negotiations or other dealings held by the other party with any other broker regarding this Lease.

SECTION 23.09 Memorandum of Lease. Landlord and Tenant agree to execute a Memorandum of Lease in recordable form, substantially similar to that attached as Exhibit L, setting forth such provisions hereof as may be required by State law. If so requested by Tenant, Landlord shall execute such Memorandum of Lease simultaneously with the execution of this Lease. Recording costs shall be borne by the party requesting recordation of same; however, any transfer taxes or other fees charged by any local or state governmental authorities in connection with such recordation shall be paid by Landlord. The provisions of this Lease shall control with regard to any omissions from, or provisions which may be in conflict with, the Memorandum of Lease.

46

SECTION 23.10 Entire Agreement. This instrument contains the entire and only agreement between the parties and no oral statements or representations or written matter not contained in this instrument shall have any force or effect. This Lease shall not be amended or modified in any way except by a writing executed by both parties. All of the exhibits attached to this Lease are incorporated into this Lease by reference and for all purposes are a part of this Lease.

SECTION 23.11 Relationship of Parties. The relationship between the parties hereto is solely that of landlord and tenant and nothing in this Lease shall be construed as creating a partnership or joint venture between the parties hereto, it being the express intent of Landlord and Tenant that the business of Tenant on the Premises and elsewhere, and the good will thereof, shall be and remain the sole property of Tenant.

SECTION 23.12 Force Majeure. If either party hereto shall be delayed or hindered in, or prevented from, the performance of any act required under this Lease by reason of strikes, lockouts, labor troubles, failure of power, riots, insurrection, war or other reasons of a like nature beyond the reasonable control of the party delayed in performing works or doing acts required under the terms of this Lease (any such delay, hindrance or prevention is referred to as "Force Majeure"), then performance of such act shall be excused for the period of the delay, and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay, except as otherwise specifically provided herein to the contrary. The provisions of this Section 23.12 shall not be applicable to delays resulting from the inability of a party to obtain financing or to proceed with its obligations under this Lease because of a lack of funds.

SECTION 23.13 Limitation of Landlord's Liability. Except with respect to (a) insurance proceeds or condemnation awards received by Landlord which are required by the terms of this Lease to be applied to the repair or restoration of the Premises or the Shopping Center, provided, however that the foregoing shall not apply to insurance proceeds received by Landlord and subsequently delivered to a Mortgagee, (b) Landlord's failure to pay the Landlord Reimbursement in accordance with this Lease, and (c) any monies owed by Landlord to Tenant in connection with Landlord's default in performing Landlord's Work and Tenant's performance of Landlord's Work, Tenant shall, on and after the Possession Date, look only to Landlord's estate and property in the Shopping Center (or the proceeds from the sale, financing or refinancing of all or any portion thereof) and net income derived from the Shopping Center for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord hereunder, and no other property or assets of Landlord, its officers, directors, stockholders, members or partners shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease. Except with respect to the limitation on personal liability hereinabove set forth, the provisions of this Section 23.13 shall not be deemed or construed to limit Tenant's rights and remedies pursuant to this Lease or which may be available at law, in equity or otherwise.

SECTION 23.14 Limitation of Tenant's Liability. Landlord, its successors and assigns, shall look solely to the assets, if any, of Tenant and its successors and assigns, for the satisfaction of any claim arising from or under this Lease and shall not seek to impose personal liability on any shareholder, officer, director, member or employee of Tenant or any of its Affiliates.

47

WO 696608.9

SECTION 23.15  Consents.  Except as may be otherwise expressly set forth in this Lease, whenever under this Lease provision is made for either party's securing the consent or approval of the other party, (a) such consent or approval shall be in writing and shall not be unreasonably withheld, delayed or conditioned, and (b) in all matters contained herein, both parties shall have an implied obligation of reasonableness.

SECTION 23.16  Rent Abatement.  Whenever under this Lease provision is made for Rent or any installment, category or denomination thereof to abate, such amount so abated shall neither accrue nor ever become payable at any time during the Term, it being acknowledged and agreed that an abatement of Rent (or any installment, category or denomination thereof) shall mean the annulment of the stated Rent obligation during the stated period of abatement.

SECTION 23.17  Costs.  Whenever this Lease requires the performance of an act by party, such party shall perform the act at its own cost and expense, unless otherwise expressly provided to the contrary in this Lease.

SECTION 23.18  Attorneys' Fees.  In any action or proceeding hereunder (whether to enforce the terms and provisions of an indemnity or otherwise), the prevailing party shall be entitled to recover from the other party the prevailing party's reasonable costs and expenses in such action or proceeding, including reasonable attorneys' fees, costs and expenses.  Except as otherwise set forth herein, if either party is sued by a third party as a result of a violation of a covenant, representation or warranty herein contained by the other party hereto, then the party who has violated the covenant, representation or warranty shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees, costs and expenses.

SECTION 23.19  Survival of Obligations.  The obligation to pay any sums due to either party from the other that by the terms herein would not be payable, or are incapable of calculation, until after the expiration or sooner termination of this Lease shall survive and remain a continuing obligation until paid.  All indemnity obligations under this Lease shall survive the expiration or earlier termination of this Lease.

SECTION 23.20  Joint and Several Liability.  If either party consists of more than one person, then the persons constituting such party shall be jointly and severally liable hereunder.

SECTION 23.21  Definition of Hereunder, Herein, etc..  Unless the context clearly indicates to the contrary, the words "herein," "hereof," "hereunder," "hereafter," and words of similar import refer to this Lease and all of the Exhibits attached hereto as a whole and not to any particular section, subsection, or paragraph hereof.

SECTION 23.22  Tenant's Trade Name.  Landlord shall not make use of Tenant's trade name (i.e., "Circuit City"®) in any advertising or marketing material including, without limitation, on any internet website, without obtaining Tenant's prior written approval, which may be withheld in Tenant's sole and absolute discretion.  Notwithstanding the foregoing, Landlord may use Tenant's trade name on Landlord's website and in informational brochures and site plans, but only for the purposes of identifying Tenant as a tenant of the Shopping Center.

WO 696608.9

SECTION 23.23 <u>Counterparts</u>. This instrument may be executed in several counterparts, each of which shall be deemed an original. The signatures to this instrument may be executed and notarized on separate pages, and when attached to this instrument, shall constitute one complete document.

SECTION 23.24 <u>Co-Exist Letters.</u> Tenant has or will diligently request and pursue a "Co-Exist" Letter between Tenant and Bed Bath & Beyond. Both parties to the "Co-Exist" Letter shall acknowledge, approve and consent to the other party's right to operate its demised premises for its intended use. In the event that Tenant, despite using good faith and reasonable efforts, is not able to obtain within thirty (30) days of the execution hereof, a "Co-Exist" letter with Bed Bath & Beyond, Tenant shall have the right to terminate this Lease and the Tenant and Landlord shall, except as expressly set forth herein, be released from all further obligations hereunder.

[Signature page follows]

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be duly executed and delivered in their respective names as of the date first above written.

**LANDLORD:**

Attest:

_____

**MANSFIELD SEQ 287 & DEBBIE, LTD.,**
a Texas limited partnership

By:  Mansfield SEQ 287 & Debbie GP, LLC
a Texas limited liability company,
its general partner

By: _/s/ David C. Wilson_____
Name: David C. Wilson
Title: Manager

**TENANT:**

**CIRCUIT CITY STORES, INC.,** a Virginia corporation

By: _____
Name:
Title:

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be duly executed and delivered in their respective names as of the date first above written.

LANDLORD:

**MANSFIELD SEQ 287 & DEBBIE, LTD.**, a Texas limited partnership

Attest:

_____

By: _____
Name:
Title:

TENANT:

**CIRCUIT CITY STORES, INC.**, a Virginia corporation

By: _____
Name: John B. Mulleady
Title: Vice President
Real Estate & Construction

WO 696608.9