## EXHIBIT E

### Commencement Date and Expiration Date Agreement

THIS COMMENCEMENT DATE AND EXPIRATION DATE AGREEMENT, made as of the ____ day of _____, 200___, by and between **MANSFIELD SEQ 287 & DEBBIE, LTD.**, a Texas limited partnership ("**Landlord**") and **CIRCUIT CITY STORES, INC.**, a Virginia corporation ("**Tenant**").

### WITNESSETH:

WHEREAS, Landlord is the owner of a certain shopping center known as Center Pointe Shopping Center (the "**Shopping Center**"), situated in Mansfield, Texas;

WHEREAS, by that certain Lease Agreement dated as of _____, 2007 (the "**Lease**"), Landlord leased a portion (the "**Premises**") of the Shopping Center to Tenant;

WHEREAS, Tenant is in possession of the Premises and the Term of the Lease has commenced; and

WHEREAS, under Section 2.10 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease.

NOW, THEREFORE, Landlord and Tenant agree as follows:

1. The Commencement Date occurred on _____, 200___.

2. The **Initial Lease Term** shall expire on January 31, 20___, unless Tenant exercises any option to extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

3. The date of commencement of the **first Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless Tenant exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

4. The date of commencement of the **second Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless Tenant exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

5. The date of commencement of the **third Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the

EXHIBIT
A part 1(v)

Term of the Lease shall expire on January 31, 20___, unless the Lease terminates earlier as provided in the Lease.

6. The date of commencement of the **fourth Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless the Lease terminates earlier as provided in the Lease.

7. The date of commencement of the **fifth Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless the Lease terminates earlier as provided in the Lease.

9. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Commencement Date and Expiration Date Agreement to be executed the date and year first above written.

**LANDLORD:**

**MANSFIELD SEQ 287 & DEBBIE, LTD.**, a Texas limited partnership

By:_____
Name:_____
Title:_____

**TENANT:**

**CIRCUIT CITY STORES, INC.**, a Virginia corporation

By:_____
Name:
Title:

## EXHIBIT F

### Prohibited Uses

"Prohibited Uses" shall mean any one or more of the following uses:

(a) a bar, pub, nightclub, music hall or disco in which less than fifty percent (50%) of its space or revenue is devoted to and derived from food service;

(b) a bowling alley;

(c) a billiard or bingo parlor;

(d) a flea market;

(e) a massage parlor;

(f) a funeral home;

(g) a facility for the sale of paraphernalia for use with illicit drugs;

(h) a facility for the sale or display of pornographic material (as determined by community standards for the area in which the Shopping Center is located); provided, however, the foregoing shall not prohibit a retail bookstore (such as Barnes & Noble, Border's, Bookstop or similar) or video store (such as Blockbuster, Hollywood Video or similar) that carries very limited quantities of adult material but not as such store's primary line of merchandise;

(i) an off-track betting parlor;

(j) a carnival, amusement park or circus;

(k) a gas station, car wash or auto repair or body shop (the parties specifically acknowledging that Tenant's car stereo installation facility is not included in this prohibition (k));

(l) a facility for the sale of new or used motor vehicles, trailers or mobile homes;

(m) a facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center;

(n) a skating rink;

(o) an arcade, pinball or computer game room (provided that retail facilities in the Shopping Center may operate no more than four (4) such electronic games incidentally to their primary operations); provided, however, the foregoing shall not prohibit a restaurant that features entertainment features (including, without limitation, bowling lanes, pool tables and similar items) such as "Dave & Buster's" located on an Outparcel;

(p)     service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments) or other non-retail uses occupying in the aggregate more than ten percent (10%) of the Floor Area of the Shopping Center, provided that (i) no such tenant shall be located within 200 feet of the Premises, and (ii) no single tenant or occupant shall occupy more than 6,000 square feet of Floor Area (contiguous or otherwise). The foregoing restriction shall not prohibit a retail bank, or a store providing printing, copying, and binding services such as a FedEx Kinko's.

(q)     a banquet hall, catering hall, auditorium or other place of public assembly;

(r)     a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers);

(s)     a theater of any kind;

(t)     a facility for the sale or rental of used goods (including thrift shops, secondhand or consignment stores) or any facility selling new or used merchandise as a wholesale operation, a liquidation operation, odd lots, lot sales, factory close-outs or imperfect goods;

(u)     a gymnasium, sport or health club or spa; or

(v)     hotel or residential facility.

(w)     Any operation primarily used as a storage facility and any assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation;

(x)     Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance.

(y)     Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

(z)     Any central laundry, dry cleaning plant, or laundromat (except that a dry cleaner that performs all dry cleaning outside the Shopping Center shall be permitted;

(aa)    Any veterinary hospital or animal raising or boarding facilities (except as may be incidental to a full-line, national or regional pet and pet supply store [such as PetsMart or Petco], provided such occupant shall use reasonable efforts to prevent its customers from allowing their pets to urinate or defecate in the Common Areas and will promptly remove any "dog dirt" from the Common Areas);

(bb)    Any pawn shop, gun shop, or tattoo parlor (except that this provision shall not prohibit a national or regional sporting goods store, of the type normally located in first-class shopping centers in the State in which the Shopping Center is located, from selling guns for use in hunting, provided that such sale of guns shall be consistent with a majority of such retailer's other sporting goods stores);

F-2

(cc)  Any church or other place of religious worship;

(dd)  Any car wash, automobile repair shop, or any business servicing motor vehicles in any respect, including, without limitation, any quick lube oil change service, tire center or gasoline or service station or facility (except that this provision shall not prohibit the installation of mobile phones, car stereos and other similar audio and telephonic automobile accessories incidental to the operation of nationally or regionally recognized electronic, audio or cell phone store of a type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as Conn's, Circuit City or Best Buy);

(ee)  daycare center;

(ff)  veterinary office (except as may be incidental to a full-line, national or regional pet and pet supply store [such as PetsMart or Petco], provided such occupant shall use reasonable efforts to prevent its customers from allowing their pets to urinate or defecate in the Common Areas and will promptly remove any "dog dirt" from the Common Areas);

(gg)  children's entertainment or activity facility (such as "Discovery Zone", or "Chuck E. Cheese's"), except that this provision shall not prohibit (i) a restaurant that contains, as an incidental use, entertainment components such as bowling lanes, arcade games, pool tables and children's play area, provided that such restaurant(s) shall be of the type normally located in first-class shopping centers in the State in which the Shopping Center is located, such as Dave & Busters as same is operated as of the Effective Date, and (ii) a "Little Gym" (or such similar retailer that is normally located in first-class shopping centers in the State in which the Shopping Center is located);

(hh)  karate center;

# EXHIBIT G

[Intentionally Omitted]

# EXHIBIT H

Future Exclusive

<u>1)    Sports Authority</u>

The retail sale and/or rental of sporting goods, sports apparel or athletic footwear (the "SA Exclusive"), provided that such exclusive will not apply to the incidental sale of any of such merchandise by an occupant so long as the retail display space in such occupant's premises that is used for the display of such merchandise (including allocable aisle space) is of a size not greater than 10% of such occupant's total Floor Area. As used herein, "athletic footwear" means footwear associated with sports and sport purposes (including, without limitation, running, jogging and aerobic activity).

<u>2) Bed Bath & Beyond ("BB&B")</u>

The sale, rental or distribution, at retail or at wholesale, either singly or in any combination, of items contained in any of the following respective categories of merchandise: (a) linens and domestics; (b) bathroom items (excluding plumbing hardware); (c) housewares (excluding furniture, and major appliances or "white goods"); (d) frames and wall art (provided that a fine art gallery shall not be precluded); (e) window treatments; and/or (f) closet, shelving and storage items (which items, either singly or in any combination, are hereinafter referred to as the "BB&B Exclusive Items"). Notwithstanding the foregoing, any tenant or subtenant in the Shopping Center or the Related Land shall have the right to utilize its respective premises for the sale, rental and/or distribution of BB&B Exclusive Items within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such sales, rental and/or distribution area) not to exceed the lesser of (x) ten percent (10%) of the Floor Area of such tenant's or subtenant's premises, or (y) two thousand (2,000) square feet of Floor Area within such tenant's or subtenant's premises. [For example only, a tenant occupying premises containing a total of five thousand (5,000) square feet of Floor Area could sell Exclusive Items (either singly or in any combination) so long as the aggregate area within its entire demised premises in which any and all Exclusive Items are sold shall not exceed five hundred (500) square feet.]. If BB&B (or, as applicable, BB&B's assignee or subtenant(s)) does not operate or cause to be operated any retail business in the BB&B premises for more than six (6) months (other than prior to the Rent Commencement Date or during Excused Periods) for the sale, rental or distribution of one (1) or more of the respective categories (each such category is hereafter referred to as "Category") of BB&B Exclusive Items set forth in (a) through (f) above the "Category Exclusive Condition"), then Landlord shall have the right at any time thereafter during which the Category Exclusive Condition exists to send BB&B a "Cessation of Category Exclusive Notice" (as defined below), in which event the restrictions as to the applicable Category(ies) shall be null and void unless, within one hundred eighty (180) days (plus any Excused Periods) following BB&B's receipt of the Cessation of Category Exclusive Notice, BB&B again sells the applicable Category(ies) of Exclusive Items that is the subject of said notice.

This restrictions shall not apply to a full-line national or regional: (i) department store [for example, Wal-Mart, Macy's, Kohl's or Target], (ii) discount club [for example, Costco, BJ's Wholesale Club, or Sam's Club], or (iii) home improvement center [for example, Home Depot or

Lowe's], commonly located in first-class shopping centers in the state in which the Shopping Center is located, each occupying at least 80,000 square feet of Floor Area within the Shopping Center, as such stores are currently operated (as of the Effective Date), and (B) the restriction against the sale of bathroom items above shall not apply to the operation of a typical Ulta salon store, as same currently operates as of the Effective Date, provided that the Floor Area of such salon shall not exceed ten thousand (10,000) square feet of Floor Area and shall be located at least [_____] feet away from the BB& B premises. In addition, the use restrictions in favor of BB&B shall not apply to the following: (A) tenants that are less than [_____] (_____) square feet of Floor Area and that are located within the [_____] portion of the Shopping Center, (B) home organization stores, such as The Container Store or Storehouse, (C) arts and crafts, such as Michael's Arts & Crafts, to the extent set forth in that certain "side letter agreement", dated _____, a copy of which is attached as Exhibit [___] hereto, and/or fabric stores, such as JoAnn's, to the extent set forth in that certain "side letter agreement", dated _____, a copy of which is attached as Exhibit [___] hereto, (D) Cost Plus World Market (provided such tenant is located [_____], as identified on Exhibit B annexed hereto) to the extent set forth in that certain "side letter agreement", dated_____, a copy of which is attached as Exhibit [___] hereto), (E) full line furniture stores such Ethan Allan, Broyhill & Thomasville, or (F) Marshalls or TJ Maxx, as they operate as of the Effective Date (but the restrictions shall apply to TJ Maxx and More, Mega Marshalls, Marshalls Home, and similar retailers).

3) Petsmart

Petsmart shall have the exclusive right in the Shopping Center to conduct any portion of the Petsmart's Primary Business as described as the retail sale of (i) pets (including but not limited to fish, birds reptiles, dogs, cats and other small animals), (ii) food, accessories and other products relating to pets and animals, including equestrian products and apparel related thereto, (iii) services related to pets and animals, such as grooming, boarding (including the overnight boarding of animals), pet day care, animal training and obedience classes, pet adoption, and veterinary services. Other tenants in the Shopping Center may sell items included in Petsmart's exclusive use provided such items sold are ancillary to their primary use and the floor area dedicated to ancillary sales does not exceed the lesser of five percent (5%) or 500 square feet of gross floor area.

H-2

WO 696608.10

## EXHIBIT I

### Recognition Agreement

THIS RECOGNITION AGREEMENT, made as of the ____ day of _____, 200__, by and between **MANSFIELD SEQ 287 & DEBBIE, LTD.**, a Texas limited partnership, having an address at 2525 McKinnon Street, Suite 700, Dallas, Texas 75201 ("Landlord"); **CIRCUIT CITY STORES, INC.**, a Virginia corporation, having an office at, 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant"); and _____, a [_____] [corporation] [limited] [general] [partnership], having an address at _____ ("Subtenant").

### R E C I T A L S:

A. Landlord and Tenant have entered into a certain Lease Agreement (the "Lease") dated as of _____, 2007, a short form of which has been recorded in _____, which demises certain premises (the "Premises") located in the Center Pointe Shopping Center, Mansfield, Texas, which Shopping Center is more particularly described on Exhibit A annexed hereto and made a part hereof.

B. Section 17.04 of the Lease provides that in the event Tenant subleases all or a portion of the Premises for a term of at least five (5) years, Landlord shall, upon Tenant's request, execute and deliver a Recognition Agreement among Landlord, Tenant and each such subtenant in the form attached to the Lease, in recordable form.

C. Pursuant to a Sublease dated as of _____ (the "Sublease"), Tenant has subleased [a portion of] the Premises to Subtenant (the "Subleased Premises").

D. The parties hereto desire to effectuate the provisions of Section 17.04 of the Lease with respect to the Sublease and the Subleased Premises.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1. Landlord warrants and represents as follows:

    (a) that it is the fee owner of the Premises,

    (b) that the Lease is unmodified (except as may be otherwise set forth in Exhibit B annexed hereto, if any) and is in full force and effect,

    (c) that the term of the Lease expires on _____, but is subject to five [5] renewal periods of five (5) years each, and

    (d) that to Landlord's current actual knowledge (without duty of inquiry) that Tenant is not in default under the Lease nor has any event occurred which would after notice to Tenant and the passage of time become a default of Tenant under the Lease.

I-1

WO 696608.9

2. Landlord hereby acknowledges receipt of a copy of, and consents to and approves, the Sublease and all of the terms, covenants and provisions thereof, and agrees that the exercise by Subtenant of any of its rights, remedies and options contained therein shall not constitute a default under the Lease.

3. Landlord agrees that whenever it has an obligation with respect to the Premises, or its consent or approval is required for any action of Tenant under the Lease, then, to the extent such obligation, consent or approval relates to the Subleased Premises or Subtenant's use and occupation thereof, it will perform such obligation in accordance with the terms and conditions of the Lease, and, subject to the applicable terms of the Lease, will not unreasonably withhold or unduly delay such consent or approval.

4. Landlord shall not, in the exercise of any of the rights arising or which may arise out of the Lease or of any instrument modifying or amending the same or entered into in substitution or replacement thereof (whether as a result of Tenant's default or otherwise), disturb or deprive Subtenant in or of its possession or its rights to possession of the Subleased Premises or of any right or privilege granted to or inuring to the benefit of Subtenant under the Sublease, provided that Subtenant is not in default under the Sublease beyond the expiration of any applicable notice and cure period.

5. In the event of the termination of the Lease by reentry, notice, conditional limitation, surrender, summary proceeding or other action or proceeding, or otherwise, or, if the Lease shall terminate or expire for any reason before any of the dates provided in the Sublease for the termination of the initial or renewal terms of the Sublease and if immediately prior to such surrender, termination or expiration the Sublease shall be in full force and effect, Subtenant shall not be made a party in any removal or eviction action or proceeding nor shall Subtenant be evicted or removed of its possession or its right of possession of the Subleased Premises be disturbed or in any way interfered with, and the Sublease shall continue in full force and effect as a direct lease between Landlord and Subtenant (provided, that in such event, Subtenant shall, for the then remainder of the term of the Sublease, pay fixed rent and additional rent in an amount equal to the greater of (x) the Annual Minimum Rent and Additional Rent then payable under the Lease, prorated on the basis of the ratio which the Floor Area of the Subleased Premises bears to the Floor Area of the Premises, or (y) the annual minimum rent and additional rent then payable under the Sublease).

6. Landlord hereby waives and relinquishes any and all rights or remedies against Subtenant, pursuant to any lien, statutory or otherwise, that it may have against the property, goods or chattels of Subtenant in or on the Subleased Premises.

7. Any notices, consents, approvals, submissions, demands or other communications (hereinafter collectively referred to as "Notice") given under this Agreement shall be in writing. Unless otherwise required by law or governmental regulation, Notices shall be deemed given if sent by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid (a) to Landlord, at the address of Landlord as hereinabove set forth or such other address or persons as Landlord may designate by Notice to the other parties hereto, (b) to Tenant, to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to

Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and Sutherland Asbill & Brennan LLP, 1114 Avenue of the Americas, 40th Fl., New York, NY 10036, Attn: David J. Rabinowitz, or such other address or persons as Tenant may designate by Notice to the other parties hereto, and (c) to Subtenant, at the address of Subtenant as hereinabove set forth or such other address or persons as Subtenant may designate by Notice to the other parties hereto. During the period of any postal strike or other interference with the mails, personal delivery shall be substituted for registered or certified mail. All Notices shall become effective only on the receipt or rejection of same by the proper parties.

8. No modification, amendment, waiver or release of any provision of this Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or binding for any purpose whatsoever unless in writing and duly executed by the party against whom the same is sought to be asserted.

9. This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, assigns and sublessees.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have caused this Recognition Agreement to be executed under seal the date first above written.

### LANDLORD:

**MANSFIELD SEQ 287 & DEBBIE, LTD.,** a Texas limited partnership

By:_____
Name:_____
Title:_____

### TENANT:

**CIRCUIT CITY STORES, INC.,** a Virginia corporation

By:_____
Name:_____
Title:_____

### SUBTENANT:

_____

By:_____
Name:_____
Title:_____

STATE OF _____ )
                                 ) : ss.
COUNTY OF _____ )

      On this \_\_\_ day of _____, 200\_\_, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he/she signed his/her name thereto by order of the Board of Directors of said corporation.

                                                          _____
                                                          Notary Public

My Commission Expires:

_____

STATE OF _____ )
                                 ) : ss.
COUNTY OF _____ )

      On this \_\_\_ day of _____, 200\_\_, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of **MANSFIELD SEQ 287 & DEBBIE, LTD.**, a Texas limited partnership, the limited partnership described in and which executed the above instrument and that he/she signed his/her name thereto by order of the Board of Directors of said corporation.

                                                          _____
                                                          Notary Public

My Commission Expires:

_____

WO 696608.9

STATE OF _____ )
                                 ) : ss.
COUNTY OF _____ )

    On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                              _____
                                              Notary Public

My Commission Expires:

_____