be held in trust by such party and disbursed only in accordance with the provisions of, and for the purposes set forth in, Article XII.

(c) Landlord shall be permitted to maintain a deductible as a part of any insurance policy carried by it in compliance with this Section 11.01. However, in no event shall any deductible with regard to the insurance described in Sections 11.01(a)(i) or 11.01(a)(ii) exceed Twenty-Five Thousand Dollars ($25,000), without Tenant's consent.

SECTION 11.02 <u>Tenant's Insurance</u>.

(a) Tenant shall maintain in full force and effect from and after the Possession Data and throughout the Term:

(i) Commercial general liability insurance protecting and insuring Tenant, naming Landlord as "additional insured-lessor" for claims arising out of the use or occupancy of the Premises by Tenant and having a combined single limit of liability of not less than Three Million Dollars ($3,000,000) for bodily injury, death and property damage liability; and

(ii) Special Form (formerly known as "All-Risk") property insurance, on a replacement cost basis, in an amount adequate to cover the full insurable replacement value of the Premises, exclusive of excavation, footings and foundations, naming Landlord as "additional insured-lessor".

Upon Landlord's request, Tenant shall also name the Mortgagee as an additional insured, as its interest may appear, on the insurance policies described in Section 11.02(a)(i) and (ii).

(b) Tenant may carry any of its insurance under "umbrella policies" and/or "blanket policies" covering the Premises and other locations it or any Affiliate of Tenant owns or leases, provided that: (i) the total amount of the insurance available shall be at least the protection equivalent to separate policies in the amounts herein required, and (ii) in all other respects, any such policy or policies shall comply with the applicable provisions of this Article XI.

(c) From and after the date that Landlord shall have caused the Delivery of the Land to occur and until such time as the Tenant's Work is complete substantially in accordance with the Site Design Requirements, Tenant shall maintain or require its general contractor to maintain, in full force and effect:

(i) A policy of builder's risk insurance covering loss or damage to the Tenant's improvements for the full amount of the work the contractor is performing; and

(ii) Commercial general liability insurance protecting and insuring Tenant, naming Landlord and Landlord's lender as "additional insured-lessor" for claims arising out of the work the contractor is performing on the Premises and having a combined single limit of liability of not less than Two Million Dollars ($2,000,000.00) for bodily injury, death and property damage liability.

25

WO 696608.9


EXHIBIT
A Part 1(ii)

(d) All insurance required to be maintained under this Section 11.02 may be provided under a plan of self-insurance provided that Tenant maintains, during the period of such self-insurance, a tangible net worth of at least One Hundred Million Dollars ($100,000,000). To the extent any deductible is maintained as a part of any insurance policy carried by Tenant in compliance with this Section 11.02, Tenant shall be deemed to be covering the amount of that deductible under an informal plan of self-insurance.

SECTION 11.03  Insurance Requirements Generally.

(a) To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible. Except as set forth in Section 11.02(d), all insurance required to be maintained by Landlord and Tenant under this Lease shall be maintained with insurance companies qualified to do business in the State, and rated at least A-/VIII by the most current Best's Key Rating Guide (or its equivalent, if such Guide ceases to be published). Each party shall use its diligent efforts to have its insurers provide thirty (30) days (ten (10) days in the event of non-payment of premium) prior notice to the other party of cancellation or non-renewal of any policy required hereunder. Each party shall provide to the other duly executed certificates evidencing the insurance coverage described in Sections 11.01 and 11.02 above and obtained from an independent, third party insurer, respectively, prior to the Possession Date and annually thereafter upon request.

(b) The liability insurance requirements under Sections 11.01(a)(i) and 11.02(a)(i) shall be reviewed by Landlord and Tenant every five (5) years for the purpose of mutually increasing (in consultation with their respective insurance advisors) the minimum limits of such insurance to limits which shall be reasonable and customary for similar facilities of like size and operation in accordance with generally accepted insurance industry standards. The replacement value of the buildings and other insurable improvements constituting the Shopping Center shall be re-evaluated from time to time at the request of either Landlord or Tenant.

SECTION 11.04  Landlord's Insurance Cost.

(a) The reasonable insurance premiums attributable to the policies required to be maintained by Landlord pursuant to Section 11.01(a)(i) shall be included as part of CAM Costs. If Landlord carries blanket insurance covering the Shopping Center together with other property owned by Landlord, then Landlord shall obtain evidence reasonably satisfactory to Tenant of the cost of such insurance allocable to the Shopping Center and the amount so allocable shall be included in CAM Costs for the purposes of determining Tenant's Share of any insurance premium included in CAM Costs.

(b) If the rates for any insurance Landlord is required to carry are increased as a result of the use or other activity of any other occupant of the Shopping Center, then the amount of such increase shall be excluded from CAM Costs. To the extent that Landlord receives a dividend, credit, rebate or other return of a premium which had previously been included in CAM Costs, Landlord shall promptly refund to Tenant Tenant's Share of such dividend, credit, rebate, or return.

26

WO 696608.9

(c)     The provisions of this Section 11.04 shall survive the expiration or earlier termination of this Lease.

SECTION 11.05 Indemnity.

(a)     Except as otherwise provided in Section 11.06, Tenant covenants to defend and indemnify Landlord and hold Landlord harmless from and against any and all claims, actions, damages, liabilities and expenses, including reasonable attorneys' fees, (i) in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon the Premises, or any part thereof, or (ii) occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, servants, or licensees, except to the extent such claims, actions, damages, liability and expense are caused by the acts or omissions of Landlord, its agents, contractors, licensees, employees, or other tenants and occupants, or for which any of said parties may be statutorily liable.

(b)     Except as otherwise provided in Section 11.06, Landlord covenants to defend and indemnify Tenant and hold Tenant harmless from and against any and all claims, actions, damages, liabilities and expenses, including reasonable attorneys' fees, (i) in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon any portion(s) of the Shopping Center (excluding the Premises), or (ii) occasioned wholly or in part by any act or omission of Landlord, its agents, contractors, employees, servants, tenants (other than Tenant), occupants or licensees, except to the extent such claims, actions, damages, liability and expense are caused by the acts or omissions of Tenant, its agents, contractors, licensees or employees, or for which any of said parties may be statutorily liable.

SECTION 11.06 Mutual Waiver of Subrogation.

(a)     Landlord and Tenant, on their own behalf and on behalf of anyone claiming under or through either one by way of subrogation, hereby release and waive all rights of recovery and causes of action against each other and their respective Affiliates arising from any and all liability for any loss or damage to property or resulting from damage to such property (and, in either case, any resulting loss of business or rental income), whether caused by the negligence or fault of the other party, which is normally insured under Special Form property insurance (formerly known as "All-Risk") and time element insurance required to be maintained hereunder or under any other property or time element insurance maintained by either party. If either Landlord or Tenant is a self-insurer or maintains a deductible (as either may be permitted under this Lease), then the self-insuring party or the party maintaining the deductible hereby releases the other party from any liability arising from any event which would have been covered had the required insurance been obtained and/or the deductible not been maintained.

(b)     Landlord and Tenant shall cause each property insurance policy carried by either of them insuring the Premises, the contents thereof, or the Shopping Center, to provide that the insurer waives all rights of recovery by way of subrogation or otherwise against the other party hereto (and all of such other party's Affiliates) in connection with any loss or damage which is covered by such policy or that such policy shall otherwise permit, and shall not be voided by the releases provided above.

27

WO 696608.9

SECTION 11.07 Affiliate. "Affiliate" shall mean a corporation, partnership, person or other entity which is controlling, controlled by, or under common control with, Landlord or Tenant, as the case may be. As used in the definition of Affiliate, "control" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities or rights, by contract, or otherwise.

## ARTICLE XII

## DAMAGE OR DESTRUCTION

SECTION 12.01 Landlord's Obligation to Rebuild. If all or any part of the Shopping Center (including, without limitation, the Premises) is damaged or destroyed by fire, the elements or other casualty, then Landlord shall promptly repair all damage and restore the Shopping Center, other than the Premises, to its condition immediately prior to such damage or destruction. Without limiting Landlord's obligations under this Article XII, the proceeds of the policies required to be obtained and maintained by Landlord pursuant to Section 11.01 shall, to the extent necessary, be used for the performance of such rebuilding and restoration work (except as expressly set forth in any subordination, non-disturbance, and attornment agreement with any Mortgagee). Notwithstanding the foregoing, Landlord's obligation to restore the Shopping Center hereunder shall be limited to restoring the (a) the Common Areas in the manner required above, and (b) such buildings and improvements of the Shopping Center as Landlord must rebuild to meet the Cotenancy Requirements set forth in Section 8.06 above (provided, however, that (i) for purposes of determining compliance with the Cotenancy Requirements, any Floor Area which is not rebuilt by Landlord following a casualty shall nonetheless be included in such calculation (in the denominator) as vacant Floor Area within the Shopping Center, and (ii) Landlord is not obligated to rebuild the Target building and the Floor Area shall not be included for purposes of determining such areas of the Shopping Center that Landlord covenants to rebuild hereunder) (the "Primary Restoration Area"), in the manner required above so that same shall be occupied or ready for occupancy following such restoration (all of the foregoing work is referred to as the "Primary Restoration"). With respect to buildings or improvements within the Shopping Center which are damaged by fire or other casualty but which are not required to be restored by Landlord as part of the Primary Restoration, Landlord shall promptly either (y) restore all or portions of the same to substantially the condition in which they existed immediately prior to such fire or other casualty, or (z) raze the remaining portions of such buildings or improvements not rebuilt, remove all debris resulting therefrom, and pave such areas for parking or landscape such areas in a sightly manner. The provisions of this Section 12.01 shall not apply if Landlord or Tenant terminates this Lease pursuant to provision this Article XII.

SECTION 12.02 Tenant's Obligation to Rebuild. If all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty, then Tenant shall promptly repair all damage and restore the Premises to its condition immediately prior to such damage or destruction (subject to any changes to the Premises that Tenant shall desire to make to the extent same shall otherwise be permitted under Section 14.01). Without limiting Tenant's obligations under this Article XII, the proceeds of the policies required to be obtained and maintained by Tenant pursuant to Section 11.02 shall, to the extent necessary, be used for the performance of

28

such rebuilding and restoration work. The provisions of this Section 12.02 shall not apply if Landlord or Tenant terminates this Lease pursuant to provision this Article XII.

SECTION 12.03 Termination.

(a) Tenant shall have the right to terminate this Lease:

(i) if all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty during the last five (5) years of the Term, and the restoration period is reasonably estimated by Tenant to be in excess of two hundred ten (210) days,

(ii) if all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty during the last two (2) years of the Term and the restoration period is reasonably estimated by Tenant to be in excess of (A) ten percent (10%) of the remaining Term, or (B) $100,000.00, or

(iii) if all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty at any time during the Term and such damage or destructions is not covered under the insurance policy(ies) required to be maintained by Tenant under Sections 11.02(a)(ii) or 11.02(b), and the restoration cost therefrom exceeds the sum of $100,000.00,

Tenant shall notify Landlord of its exercise of such option within forty-five (45) days following the occurrence of such casualty.

(b) If (i) Landlord fails to commence in good faith Landlord's repair and restoration obligations within ninety (90) days after any damage or destruction, or (ii) Landlord fails to timely complete such repair and restoration within two hundred seventy (270) days after such damage or destruction, then Tenant shall have the option, upon notice to Landlord, to elect (y) to complete the repair and restoration to the Shopping Center, or any portion thereof, and (1) to receive reimbursement therefor in full from Landlord on demand and/or (2) to offset the cost and expense thereof against the payment of Rent and, at Tenant's option, to extend the Term until such time as Tenant, through such offsets, has recouped the entire cost and expense to Tenant of such repair and restoration, or (z) to terminate this Lease effective as of the date of such damage or destruction. The time periods referenced in this Section 12.03(b) shall be subject to Force Majeure, but in no event shall the aggregate of any and all extensions as a result of a Force Majeure delay(s) exceed a period of ninety (90) days.

(c) If (i) Tenant fails to commence in good faith Tenant's repair and restoration obligations within ninety (90) days after any damage or destruction, or (ii) Tenant fails to timely complete such repair and restoration within two hundred seventy (270) days after such damage or destruction, then Landlord shall have the option, upon notice to Tenant, to elect to complete the repair and restoration to the Premises and to receive reimbursement therefor in full from Tenant on demand. The time periods referenced in this Section 12.03(c) shall be subject to Force Majeure, but in no event shall the aggregate of any and all extensions as a result of a Force Majeure delay(s) exceed a period of ninety (90) days.

(d)    Landlord shall have the right to terminate this Lease by written notice to Tenant within sixty (60) days after any damage or destruction to the Shopping Center if:

(i)    more than seventy-five percent (75%) of the Floor Area of the Shopping Center (excluding the Premises and Outparcels) is destroyed or damaged such that it is rendered uninhabitable or unusable for at least thirty (30) days;

(ii)    Landlord does not intend to rebuild the Primary Restoration Area; and

(iii)    Within thirty (30) days of such notice of termination, Landlord reimburses Tenant for (A) the Unamortized Costs effective as of the day prior to the date of the casualty (but only to the extent such Unamortized Costs exceed any insurance proceeds paid by Tenant's insurance carrier to Tenant, if any), and (B) any costs or expenses incurred by Tenant in rebuilding, repairing or restoring the Premises after the event of casualty and prior to the termination of this Lease by Landlord.

(e)    If this Lease is terminated, then this Lease shall terminate on the date set forth in Tenant's or Landlord's notice of termination without further liability on the part of either Landlord or Tenant, except: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) only in the case where Tenant terminates this Lease, Tenant shall thereupon make available to Landlord (1) all insurance proceeds paid by Tenant's insurance carrier, or (2) if self-insured, an amount equal to the reconstruction costs of the Premises or, if the Premises are not being reconstructed, an amount equal to the actual value of the Premises (not to exceed, however, an amount equal to the reconstruction costs of the Premises), to the extent such amounts would have been payable under the insurance outlined in Section 11.02(a)(ii).

## ARTICLE XIII

## CONDEMNATION

SECTION 13.01 Taking.

(a)    In the event of condemnation by eminent domain or similar law, including a sale in lieu thereof to an authority or other entity having the power of eminent domain (a "Taking"), of all or any portion of the Shopping Center, which (i) results in a Taking of (x) any part of the Premises as, when taken, leaves the untaken portion unsuitable, in Tenant's sole and absolute discretion, for the continued feasible and/or economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, (y) more than fifteen percent (15%) of the Common Areas, or (z) any of the parking spaces in Tenant's Preferred Area, and/or the Shopping Center thereafter has a parking ratio below that which is required by the zoning ordinance applicable to the Shopping Center (without variance) and Landlord fails to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking, (ii) materially and adversely affects ingress or egress to the Premises or the Shopping Center, or (iii) materially prohibits or inhibits Tenant's use of the Premises for a period in excess of sixty (60) days, then Tenant may terminate this

Lease by giving notice to Landlord not more than sixty (60) days after the later of the date on which title vests in the condemning authority or the date Tenant receives notice of said vesting.

(b)  In the event of a Taking of all of the Premises, this Lease shall terminate as of the date of vesting of title or transfer of the Premises, whichever is earlier, without further liability on the part of either Landlord or Tenant, except for those obligations which expressly survive the expiration or other termination of this Lease.

(c)  In the event of a Taking of the Premises, the Common Areas and/or any other area within the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding sixty (60) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, or relating to the Common Areas but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease (and any such awards, damages, compensation and proceeds applicable to other parts of the Shopping Center) shall be payable to Landlord. Anything contained to the contrary notwithstanding, a temporary Taking for any period in excess of sixty (60) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by Section 13.01 (a) or (b), as applicable.

SECTION 13.02  Restoration and Rent Adjustment.  In the event of a Taking, if this Lease is not terminated by Tenant pursuant to Section 13.01, then (a) Landlord shall promptly restore the Shopping Center as nearly as practicable to a complete unit of like quality and character as existed prior to the Taking, which restoration shall, as applicable, include all of Tenant's Work and all other leasehold improvements performed by Tenant, but shall not include Tenant's Property, and (b) if a portion of the Premises is Taken, then from and after the date on which title vests in the condemning authority, the Rent shall be equitably reduced in proportion to the area of the Premises subject to the Taking.

SECTION 13.03  Award.  In the event of any Taking, Tenant shall be entitled to an amount of the award or compensation paid for such Taking equal to the Unamortized Costs, if any, and the balance shall belong to Landlord. Tenant shall also have the right to claim and recover from the condemning authority such compensation, if any, as may be separately awarded or recoverable by Tenant on account of any and all damage to Tenant's business by reason of the condemnation and for or on account of any cost or loss to which Tenant might be put in moving Tenant's Property, or for any other damages compensable separately to Tenant; provided, however, that no such award shall reduce the award payable to Landlord for its fee interest in the Premises. The provisions of this Section 13.03 shall be subject to the provisions of Section 13.01(c) with respect to a temporary Taking.

### ARTICLE XIV

### ALTERATIONS AND MECHANICS' LIENS

SECTION 14.01  Tenant's Alteration Rights.

WO 696608.9

(a) Tenant shall not perform any structural or exterior alterations or improvements to the Premises (except to the extent same pertain to Tenant's Work) without the prior approval of Landlord; provided, however, that Tenant's alteration of the exterior of the Premises to conform to Tenant's (or any subtenant's) then-current prototypical elevation shall not require Landlord's consent, so long as the architectural theme of the Shopping Center is maintained. Landlord's withholding of consent as to any exterior or structural alteration or modification shall be deemed reasonable only if the same would impair the structural integrity of the Building, is materially inconsistent with the then-existing architecture of the Shopping Center or would violate any existing restrictive covenant. The provisions of this Section 14.01(a) shall not apply to Tenant's building signage, which shall be governed by the applicable provisions of Article XV.

(b) Tenant may, from time to time, without the prior approval of, but with prior notice to, Landlord, make non-structural interior alterations and improvements to the Premises as Tenant deems necessary or desirable including, but not limited to, the electrical systems, the HVAC and other mechanical systems, installation of fixtures and equipment, painting, and wall and floor coverings. Tenant shall provide to Landlord "as-built" plans of modifications or alterations to the electrical systems, the HVAC and other mechanical systems.

(c) Tenant shall have the right, subject to Landlord's approval as to number, size, location and manner of attachment, to erect and maintain an antenna, a satellite dish and/or related equipment on the roof of the Premises, provided that Tenant: (i) uses a contractor approved by Landlord for all roof penetrations so as not to violate or invalidate any roof warranties maintained by Landlord, (ii) repairs any damage caused by the installation, maintenance or removal of such antenna, satellite dish and/or related equipment, including, without limitation, damage to the roof caused by the making of the roof penetrations, and (iii) erects and maintains such equipment in accordance with Laws and Landlord's screening requirements, if any.

(d) Landlord shall execute and return to Tenant all appropriately completed building department or equivalent applications within ten (10) days after Tenant's request therefor, and will reasonably cooperate with Tenant in the permitting process. If any violation of Laws which is noted against the Shopping Center or the Premises (other than a violation caused by Tenant) prevents Tenant from obtaining a building permit for any alterations or a certificate of occupancy, then, upon request by Tenant, Landlord shall promptly and diligently cause such violation to be removed of record to the extent required to permit Tenant to obtain its building permit or certificate of occupancy, as the case may be. However, if the violation was not caused by Landlord (or any of Landlord's agents, contractors, employees or invitees), then Landlord's obligations under this Section 14.01(d) shall be satisfied by Landlord using diligent, good faith and commercially reasonable efforts to have the responsible party remove such violation of record.

(e) Landlord shall not make any alterations to the Premises (including, without limitation, changing the design, color or materials of the exterior of the Premises) nor shall Landlord construct an additional floor or floors above or below the Premises. Landlord shall neither make nor permit to be made any alterations to the exterior architectural theme of the remainder of the Shopping Center which would be inconsistent with a first-class shopping center

32

in the State (exclusive of other National Tenants' or Regional Tenants' entrance features), without the prior consent of Tenant.

(f)    Tenant shall cause all such alterations to be lien-free (in accordance with Section 14.02) and made and completed at Tenant's sole cost in a good and workmanlike manner and in compliance with all applicable Laws.

SECTION 14.02 <u>Mechanics' Liens</u>. Tenant covenants that Tenant shall promptly discharge of record (by payment, bond, order of a court of competent jurisdiction or otherwise) any mechanic's lien filed against the Premises or all or any part of the Shopping Center for any work, labor, services or materials claimed to have been performed at, or furnished to, the Premises or the Shopping Center, for or on behalf of Tenant, or at the insistence of Tenant, or anyone acting for, through or under Tenant. Similarly, Landlord covenants that Landlord shall promptly discharge of record (by payment, bond, order of a court of competent jurisdiction or otherwise) any mechanic's lien filed against the Premises or all or any part of the Shopping Center for any work, labor, services, materials claimed to have been performed at, or furnished to, the Premises or the Shopping Center, for or on behalf of Landlord, or at the insistence of Landlord, or anyone acting for, through or under Landlord. If either party shall fail to cause any such lien to be discharged within ninety (90) days after the other party shall demand in writing that the former party remove same (thirty (30) days in the event of a pending sale or refinancing of the Shopping Center of which Landlord has given Tenant notice) and in any event prior to a foreclosure of such lien, then, the demanding party may discharge the same by paying the amount claimed to be due, by bonding or by any other proceeding deemed appropriate by such demanding party, and the amount so paid by such demanding party and/or all costs and expenses including reasonable attorneys' fees incurred by such demanding party in procuring the discharge of such lien shall be reimbursed by the other party upon demand, together with interest at the Default Rate from the date paid until reimbursed in full. Nothing contained in this Lease shall be construed as a consent on the part of the Landlord to subject Landlord's estate in the Premises to any lien or liability under any law relating to liens.

## ARTICLE XV

## SIGNS

SECTION 15.01 <u>Tenant's Signs</u>. Tenant shall supply and install Tenant's building signage on the exterior walls of the Premises (and obtain all permits and approvals therefor),] as part of Tenant's Work and in accordance with Laws and the Site Design Requirements. Thereafter, Tenant shall have the exclusive right during the Term to erect, maintain, and replace on the storefront and exterior walls of the Premises and on the side walls of any entrance design element, if any, signs (including, without limitation, under-canopy or blade signs), banners (including temporary banners placed on the storefront of the Premises and such other walls of the Premises as selected by Tenant), awnings, and flags of such size, design and color as Tenant, from time to time, may desire, subject to compliance with Laws, and Landlord's approval (not to be unreasonably withheld). Tenant may erect and maintain in the interior of the Premises any signs it may desire.

33

SECTION 15.02 Pylon Signs. Landlord shall provide pylons and monuments at the locations shown on the Site Plan. Landlord, as part of Landlord's Work, shall obtain all governmental approvals and permits for such pylons and monuments (including Tenant's sign panels on all sides of such pylons and monuments). Tenant's sign panels shall be procured and installed at Tenant's cost. A rendering of such pylon sign and monument sign showing the dimensions of the pylon/monument(s) and the size and position of all panels to be installed thereon, including Tenant's panel on the pylon sign, is attached to the Site Design Requirements, provided, however that Tenant acknowledges that it shall not have a sign panel on the monument sign. In addition, if Landlord makes available to any other tenant in the Shopping Center any other signage located in the Common Areas, then such signage shall also include Tenant's identification sign which shall be higher than and at least as large as the largest sign made available to such other tenant or tenants whose premises are equal to or smaller than the Premises. The signage of and for outparcel and pad users shall be excluded from this provision. Landlord shall not change or alter the pylons or monuments bearing Tenant's sign panel(s) without obtaining Tenant's prior consent. The cost of maintaining all pylons and monuments bearing Tenant's sign panel(s) (but not the cost of individual tenants' signs thereon or the cost of the construction of the pylons and monuments or the monument sign not bearing Tenant's sign panel) and the cost of any electricity used to illuminate them, shall be includable in CAM Costs.

SECTION 15.03 Replacement. Tenant and its subtenants shall be entitled, without Landlord's consent but subject to complying with Laws and the Sign Criteria to replace all of its signs with signage consistent with Tenant's and/or its subtenant's then-current prototypical sign plans. Any signage which is not consistent with such prototypical sign plans and the Sign Criteria shall be subject to Landlord's approval.

## ARTICLE XVI

## TENANT'S PROPERTY

SECTION 16.01 Tenant's Property. All of Tenant's movable trade fixtures, ornate light fixtures, equipment, furniture, inventory and other property owned by Tenant and located at, on or in the Premises including, without limitation, computer display and storage area showcases, partitions, mezzanine, shelving, wall cases and signs (collectively, "Tenant's Property") shall remain the property of Tenant, exempt from the claims of Landlord or any Mortgagee or Ground Lessor, without regard to the means by which or the persons by whom Tenant's Property is installed or attached. Tenant shall have the right at any time and from time to time to remove Tenant's Property, provided that if removal of any of Tenant's Property permanently damages any part of the Premises, Tenant shall repair such damage. Any of Tenant's Property which is not removed at or prior to the expiration of this Lease shall be deemed abandoned.

## ARTICLE XVII

## ASSIGNMENT AND SUBLETTING

SECTION 17.01 Assignment and Subletting Rights. Tenant shall have the right from time to time, without the consent of Landlord, to assign Tenant's interest in this Lease and/or to sublet, concession or license all or any portion of the Premises to user(s) with quality retail use

34

WO 696608.9

comparable to that of Tenant, subject to all of the terms and conditions of this Lease. Unless otherwise agreed to in writing by Landlord, no assignment, subletting, licensing or concessioning by Tenant shall reduce the liability of Tenant under this Lease to the extent that such liability is not increased as a result of any amendment or modification to this Lease between Landlord and any assignee. However, in the event of an assignment by Tenant to an assignee having an Adequate Net Worth (as defined below), or to an assignee whose obligations under this Lease are guaranteed by a guarantor having an Adequate Net Worth, all liability of the assigning Tenant under this Lease accruing from and after the effective date of such assignment shall terminate. "Adequate Net Worth" shall mean a tangible net worth, as of the effective date of such assignment, of at least Two Hundred Million Dollars ($200,000,000).

SECTION 17.02  Collateral Assignment. In addition to Tenant's other rights set forth in this Article XVII, a collateral assignment of Tenant's interest in this Lease by Tenant to one (1) or more Lenders (hereinafter defined), as collateral security for an indebtedness or other obligation of Tenant or its Affiliates shall be permitted and Landlord shall execute all documentation reasonably requested by Tenant or any such Lender in connection therewith. In addition, Tenant shall have the right, without Landlord's consent, to grant to an Affiliate of Tenant a license to operate all of Tenant's business operations at the Premises, without such Affiliate having assumed any liability for the performance of Tenant's obligations under this Lease. "Lender" shall mean a state or federally regulated: bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender.

SECTION 17.03  Cure Rights of Original Tenant. If Tenant assigns Tenant's interest in this Lease and the assignor remains liable under this Lease following such assignment, then Landlord, when giving notice to said assignee or any future assignee in respect of any default, shall also give a copy of such notice to the Tenant originally named in this Lease or its Affiliate (collectively, the "Original Tenant"), and no notice of default shall be effective until a copy thereof is so given to Original Tenant. Original Tenant shall have the right (but not the obligation) to cure such default, which cure period shall be ten (10) business days longer than the same cure period applicable to Tenant.

SECTION 17.04  Recognition Agreement. If Tenant subleases all or any portion of the Premises for a term of at least five (5) years, then, notwithstanding any other provisions of this Lease, Landlord shall, upon Tenant's request, execute and deliver an agreement among Landlord, Tenant and each such subtenant in the form of Exhibit I (to the extent the statements therein are true), in recordable form (the "Recognition Agreement").

## ARTICLE XVIII

## DEFAULT

SECTION 18.01  Tenant's Default.

(a)  If Tenant defaults in the payment of any installment of Rent and such default is not cured within ten (10) business days after receipt of notice from Landlord thereof (in which event, the delinquent amount shall accrue interest at the Default Rate from the due date

35

WO 696608.9

until paid) or if Tenant defaults in the observance of any other material covenant or agreement herein contained and Tenant shall not, within thirty (30) days after receipt of notice thereof from Landlord, cure or commence to cure such default (it being intended in connection with a default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Tenant within which to cure same shall be extended for such period as may be necessary to complete same with all due diligence), then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default:

(i) terminate this Lease, without any right by Tenant to reinstate its rights by payment of Rent or other performance of the terms and conditions hereof and upon such termination Tenant shall immediately surrender possession of the Premises to Landlord, and Landlord shall immediately become entitled to receive from Tenant, as liquidated, agreed final damages, an amount equal to any Rent due at the time of termination plus the difference between the aggregate of all rentals reserved under this Lease for the balance of the Term, and the fair rental value of the Premises for that period (both discounted to present value at an annual interest rate equal to eight percent (8%)), determined as of the date of such termination; or

(ii) with or without terminating this Lease, as Landlord may elect, re-enter and repossess the Premises, or any part thereof, and lease them to any third-party upon commercially reasonable terms and conditions, for a term within or beyond the Term; provided, however, that any such reletting prior to termination shall be for the account of Tenant, and Tenant shall remain liable for (y) Annual Minimum Rent, Tenant's Share of CAM Costs, Tenant's Share of Taxes, and other sums which would be payable hereunder by Tenant in the absence of such expiration, termination or repossession, less (z) the net proceeds, if any, of any reletting effected for the account of Tenant after deducting from such proceeds all of Landlord's reasonable expenses (which expenses shall be amortized over the term of the new tenant's lease and only the portion thereof allocable to the balance of the Term shall be so deducted by Landlord hereunder) in connection with such reletting (including, without limitation, all repossession costs, reasonable brokerage commissions, reasonable attorneys' fees and expenses, reasonable alteration costs and expenses of preparation for such reletting). Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth above.

(b) If the Premises is at the time of default sublet or leased by Tenant to others, Landlord may, as Tenant's agent, collect rents due from any subtenant or other tenant and apply such rents to Rent due hereunder. Any monthly deficiencies payable by Tenant shall be paid monthly on the date herein provided for the payment of Annual Minimum Rent. If, after the lapse of all applicable grace periods, Landlord reasonably expends any money to cure a default by Tenant, then Tenant shall, on demand, pay Landlord the amount so paid by Landlord together with interest thereon at the rate of four percent (4%) per annum in excess of the prime rate then published in The Wall Street Journal (the "Default Rate").

(c) Landlord shall also be entitled to all other rights and remedies available to Landlord at law, in equity or otherwise, except as otherwise expressly set forth in this Lease. Landlord expressly waives (i) any right to accelerate any element of Rent except as expressly set

36

forth in Section 18.01(a)(i) above, (ii) any right to recover consequential or punitive damages as a result of a Tenant default or any other act or omission of Tenant, and (iii) all rights to any so-called "landlord's lien" or any similar statutory lien, granting Landlord a lien on any of Tenant's Property for the performance of any obligations of Tenant. At the request of Tenant, Landlord shall promptly confirm such waiver(s) by a writing in form satisfactory to Landlord and the requesting party. Anything contained in this Lease to the contrary notwithstanding, Landlord shall use commercially reasonable efforts to relet the Premises to mitigate Landlord's damages to which Landlord would otherwise be entitled to as a result of a Tenant default.

SECTION 18.02  Additional Landlord Remedies Due to Construction Delays by Tenant. If Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following Delivery of the Land, then Landlord shall be entitled to terminate this Lease upon sixty (60) days prior notice to Tenant unless Tenant, within such sixty (60) day period, achieves Substantial Completion. If Landlord terminates this Lease, then there shall be no further liability on the part of Landlord or Tenant, except for those obligations that expressly survive the expiration or other termination of this Lease.

SECTION 18.03  Landlord's Default.

(a) If Landlord shall (i) default in the observance of any material covenant or agreement herein contained, breach any material representation or warranty under this Lease, or shall fail to pay any charges or other amounts required to be paid by Landlord under this Lease (including, without limitation, any insurance premiums or any reimbursements due to Tenant) and Landlord does not cure such default within ten (10) business days (as to a monetary default; provided, however, that the delinquent amount shall accrue interest at the Default Rate from the due date until paid) or thirty (30) days (as to a non-monetary default), as applicable, after notice thereof by Tenant (it being intended in connection with a non-monetary default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Landlord within which to cure same shall be extended for such period as may be necessary to complete same with all due diligence), or (ii) after notice and reasonable opportunity to cure, not to exceed ten (10) business days, fail to pay when due any Taxes, ground rent or any other charge or assessment, the lien of which is prior to the lien of this Lease, then Tenant shall have the right (but shall not be obligated) to:

(w) perform such obligation(s) of Landlord in accordance with the applicable provisions of this Lease on behalf of, and at the expense of Landlord;

(x) bring suit for the collection of any amounts for which Landlord is in default, seek injunctive relief, or seek specific performance for any other covenant or agreement of Landlord;

(y) offset against the Annual Minimum Rent all amounts owed by Landlord to Tenant and/or the amounts reasonably expended by Tenant performing Landlord's obligations under this Lease, including costs and reasonable attorneys' fees, together with interest thereon at the Default Rate from the date of the outlay until paid, and, at Tenant's option, extend the Term if necessary for Tenant to fully recoup all amounts owed by Landlord to Tenant; and/or

37

(z) terminate this Lease, without waiving its rights to damages for Landlord's Default, provided that: (1) Landlord's default materially interferes with the normal conduct of any business operations in the Premises, (2) Landlord's default is not reasonably capable of being cured by Tenant, and (3) subject to Section 18.02(b), Tenant gives notice of Landlord's default to any Mortgagee of whom Landlord shall have previously given Tenant notice (including its address), and such Mortgagee shall not have cured Landlord's default within the time period provided in Section 18.02(b).

Notwithstanding the foregoing, Tenant's right of offset under clause (y) above shall be limited to fifty percent (50%) of each installment of Annual Minimum Rent next becoming due unless insufficient Term remains to fully recoup the amounts owed by Landlord to Tenant on the amounts expended by Tenant, together with interest as provided above, in which event the amount of Tenant's offset shall be increased to up to one hundred percent (100%) of Rent so that Tenant is able to fully recoup all such amounts expended by Tenant, together with interest as aforesaid, prior to the expiration of the Term.

(b) If a Mortgagee shall have notified Tenant in writing that it is the holder of such lien on the Shopping Center, then Tenant shall give a similar notice to such Mortgagee and such Mortgagee shall have the same time period allowed to Landlord under this Lease to correct or remedy such default.

(c) Tenant shall also be entitled to all other rights and remedies available to Tenant at law, in equity or otherwise, except as otherwise expressly set forth in this Lease. Tenant expressly waives any right to recover consequential or punitive damages as a result of a Landlord default or any other act or omission of Landlord.

(d) Notwithstanding the foregoing, if, in Tenant's reasonable judgment, a condition posing imminent risk of liability or material harm to persons or property or material disruption to the normal conduct of any business operations in the Premises shall exist, then Tenant may exercise, at its election and without prior notice to Landlord, any or all of the remedies set forth in clauses (w), (x) and (y) above.

SECTION 18.04 <u>Additional Tenant Self-help, Equitable and Legal Remedies Due to Construction Delays by Landlord</u>. If Landlord defaults at any time in the timely completion of any component of Landlord's Work (including, without limitation, Delivery of the Land or any element of the Site Delivery Work) and Landlord does not cure such default within ten (10) calendar days after notice thereof by Tenant, then Tenant shall have the right, but not the obligation, to:

(a) perform, at Landlord's sole cost and expense, all or any part of Landlord's Work. If and to the extent that Tenant exercises its right under this Section 18.04(a), Landlord agrees to cooperate in good faith and provide Tenant with reasonable assistance so that Tenant can complete such portions of Landlord's Work. Landlord hereby grants Tenant the right, as its agent, to directly contact and contract with Landlord's contractors, on behalf of Landlord, to complete such work, all at Landlord's cost and expense. Landlord covenants, upon Tenant's request, to provide Tenant with duplicate sets of all plans, specifications and contracts prepared in connection with the construction of the Shopping Center, as well as schedules of all contractors, subcontractors and suppliers. Landlord agrees to reimburse Tenant for any and all

38

actual costs incurred by Tenant in connection with any portion of Landlord's Work which Tenant completes within ten (10) days after receipt of request therefor from Tenant, which request shall be reasonably supported by invoices and/or written description of Landlord's Work performed. If Landlord does not timely reimburse Tenant as contemplated above, then Tenant shall be entitled to deduct the costs of such work from Rent, together with interest at the Default Rate from the date of expenditure by Tenant, until paid in full;

        (b)    seek injunctive relief, specific performance or other equitable remedies against Landlord to require Landlord to perform its obligations under this Lease (including, without limitation, the Site Design Requirements), the costs of which litigation shall be borne by Landlord including, without limitation, attorneys' fees and court's costs; and/or

        (c)    seek legal remedies available to Tenant, the costs of which shall be borne by Landlord, including, without limitation, attorneys' fees and court costs.

SECTION 18.05 <u>Waiver; Non-Exclusive Remedies</u>. The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on any matters arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, and/or any claim of injury or damage. Tenant hereby expressly waives any and all rights of redemption granted by or under any present of future law if this Lease is terminated or Tenant is evicted or dispossessed by reason of violation by Tenant of any of the provisions of this Lease. Except as otherwise expressly set forth in this Lease, no right or remedy herein conferred upon or reserved to Landlord or Tenant is intended to be exclusive of any other right or remedy in this Lease or by law or in equity provided, but each shall be cumulative and in addition to every other right or remedy given in this Lease or now or hereafter existing at law or in equity or otherwise.

## ARTICLE XIX

## SUBORDINATION, TRANSFER OF INTEREST

SECTION 19.01 <u>Subordination</u>. Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any first mortgage or deed of trust for the benefit of any Mortgagee hereafter encumbering or affecting all or any portion of the Shopping Center, as well as to any future ground or underlying leases encumbering or affecting all or any part of the Shopping Center; <u>provided, however</u>, that (a) each Mortgagee shall first execute and deliver to Tenant a subordination, non-disturbance and attornment agreement in substantially the form attached as <u>Exhibit J</u> hereto, in recordable form, and (b) any Ground Lessor shall execute (and shall obtain the written consent of any Mortgagee) and deliver to Tenant a fee owner recognition agreement in a form reasonably satisfactory to Tenant, which shall include the following provisions: (i) the Ground Lessor will not, in the exercise of any of the rights arising or which may arise out of such lease, disturb or deprive Tenant in or of its possession or its rights to possession of the Premises or of any right or privilege granted to or inuring to the benefit of Tenant under this Lease; (ii) in the event of the termination of the Ground Lease (as defined below), Tenant shall not be made a party in any removal or eviction action or proceeding, nor shall Tenant be evicted or removed of its possession or its right of possession of the Premises, and this Lease shall continue in full force and effect as a direct lease between the Ground Lessor