Charles W. Chotvacs (VA Bar No. 70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, D.C. 20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299

- and -

Thomas J. Leanse (Cal. Bar No. 084638)
Brian D. Huben (Cal. Bar No. 134354)
Dustin P. Branch (Cal. Bar No. 174909)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

*Attorneys for The Macerich Company,*
*RREEF Management Company,*
*Cousins Properties Incorporated,*
*Watt Management Company,*
*The Prudential Insurance Company of America,*
*Portland Investment Company, and KNP*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **CIRCUIT CITY STORES, INC., et al.,** | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**LIMITED OBJECTION OF THE MACERICH COMPANY, RREEF MANAGEMENT COMPANY, COUSINS PROPERTIES INCORPORATED, WATT MANAGEMENT COMPANY, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PORTLAND INVESTMENT COMPANY, AND KNP TO THE DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. § 105, 361, 362, 363 AND 364 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 4001 (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING AND (B) TO UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING INTERIM AND FINAL HEARINGS**

The Macerich Company, RREEF Management Company, Cousins Properties Incorporated, Watt Management Company, The Prudential Insurance Company Of America,

Portland Investment Company, and KNP (the "Landlords") hereby file their limited objection (The "Limited Objection") to the Debtors' Motion For Interim And Final Orders Pursuant To 11 U.S.C. § 105, 361, 362, 363 And 364 And Federal Rules Of Bankruptcy Procedure 2002 And 4001 (I) Authorizing Debtors (A) To Obtain Postpetition Financing And (B) To Utilize Cash Collateral; (II) Granting Adequate Protection; And (III) Scheduling Interim And Final Hearings (the "Financing Motion" [Doc. No. 23]),[1] and respectfully represent as follows:

## I. INTRODUCTION

The Bankruptcy Code does not render prohibitions or restrictions against encumbering leases unenforceable. Any attempt to vitiate the legitimate protections created by the negotiated terms of leases, state law, and/or the Bankruptcy Code, improperly risks compromising the integrity of Landlords' control over their properties and ability to market their properties, as well as risks putting Landlords into default of their own financing and investment covenants. While the Landlords do not object to the Debtors' granting an indirect lien solely on the proceeds of any sale or other disposition of the Leases (as defined below), this Court should not permit the DIP Lenders to take a direct security interest in the Leases.

## II. BACKGROUND FACTS

1. Circuit City Stores, Inc. and its affiliated Debtor entities (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on November 10, 2008. The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2. Landlords are the owners or managing agents of numerous shopping centers (the "Centers") throughout the United States wherein Debtors continue operates their retail stores (the "Premises") pursuant to nonresidential real property leases (the "Leases"). The specific

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Financing Motion, the Interim Order or the DIP Financing Agreements.

[2] Unless otherwise specified, all statutory "Section" references are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

- 2 –

Landlord and location for each Lease subject to this Limited Objection is set forth in Exhibit "A" and is incorporated herein by this reference.

3. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See* <u>In re Joshua Slocum, Ltd.</u>, 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4. On or about November 10, 2008, the Debtors filed the Financing Motion, and the Court entered its interim order (the "<u>Interim Order</u>") granting the Financing Motion on November 10, 2008. The Interim Order provides that the liens granted in connection with the Debtors' financing do not attach directly to the Leases, but attach only to the proceeds of the Leases. In addition, at the interim hearing, the Debtors and DIP Lenders agreed that the DIP Lenders' collateral access rights vis-à-vis the Premises would be limited to: (i) those rights under the respective Leases; (ii) the rights that the DIP Lenders may have under state law; and (iii) as otherwise ordered by this Court.

5. Landlords believe that the Debtors and the DIP Lenders will agree to extend these limitations to any final order, but they have not received a proposed final order that incorporates these protections. As a result, this Limited Objection is necessary. To the extent the Debtors do seek a lien on the Leases at the final hearing, the Landlords object to any attempt to mortgage, encumber, hypothecate, or otherwise pledge the Leases. There is no authority under the Bankruptcy Code to render these legitimate lease provisions invalid or unenforceable.

### III.    **ARGUMENT**

**A.    The Bankruptcy Code does not invalidate lease provisions that prohibit or restrict pledging, encumbering or otherwise hypothecating the Leases.**

6. Neither the Leases nor the Bankruptcy Code create a right to grant a lien against the Leases where none existed pre-petition, and neither support such wholesale voiding of Landlords' state law contractual rights.

7. The Leases contain specific and bargained-for language that prohibit or restrict the Debtors' ability to grant a lien in the Leases and the Premises. The pledge of the Leases as part of the Adequate Protection Liens would effectively strike the "anti-pledging" language of

the Leases, or at the least, force this Court to deem the language inconsistent with the provisions of the Bankruptcy Code vis-à-vis the Debtors' request for financing.  Granting the Debtors' request requires this Court to ignore these specific prohibitions, negotiated at arms-length, and which are enforceable under state law.

8.  Provisions that restrict the ability to encumber leases are critical to Landlords' ability to control their property, to comply with their financing and investment covenants, and any compromise of these provisions detracts from the marketability of the Centers as a whole.

9.  A grant of a security interest in the Leases, and any attendant exercise of remedies following a default, creates a de facto assignment of the Leases.  There is no authority for the proposition that such an assignment (under the guise of pledging the Leases as collateral), independent of the safeguards of Sections 365(b)(3) and (f)(2), is permissible.[3]

10.  The DIP Lenders are not in the business of operating retail stores, and do not (and likely would not) assert that they can comply with the material operating provisions contained in the Leases.  This Court must not allow the Debtors to jettison the anti-pledging restrictions of the Leases, while enjoying the benefits of continued use of the properties during the course of their reorganization efforts. The Leases' provisions controlling the transfer of an interest in the Leases are material, negotiated at arms-length, and enforceable under the Bankruptcy Code.

11.  A provision that restricts the Debtors' ability to pledge the Leases as collateral is not an anti-assignment provision and is not contrary to any bankruptcy policy.  Rather, it is a reasonable and legitimate restriction that allows Landlords to preserve clear title to their Leases.  As a result, the Landlords object to any encumbrance, lien, hypothecation or other pledge of the Leases, and Landlords request this Court exclude the Leases from the Adequate Protection Liens.

---

[3] Because these are shopping center leases, the Debtors must comply with the heightened protections granted to shopping centers landlords in connection with any such transfer of an interest in the Leases.  Therefore, section 365(b)(3) (applicable to an assignment of a lease through Section 365(f)) applies, and any assignment of the Leases requires compliance with the special adequate assurance of future performance protections set forth in Sections 365(b)(3)(A) - (D). 11 U.S.C. § 365(b)(3).

**B.    The DIP Lenders do not need a security interest in the Leases to protect their interests.**

12.    Prior to filing for bankruptcy protection, the Debtors did not encumber the Leases because such a lien is prohibited by the Leases. There is no legitimate reason to now grant the DIP Lenders (as non-debtor parties) a lien that violates the Leases where no such right existed under state law and no such liens existed pre-petition. Nothing in the Bankruptcy Code gives lenders such rights where they did not exist pre-petition.

13.    Moreover, the DIP Lenders do not need a security interest in the Leases in order to liquidate their collateral should the Debtors default. All rights to realize upon the Collateral are preserved through both the Bankruptcy Court and state law remedies, none of which contemplate granting DIP Lenders a lien or other possessory right in the Landlords' property.

14.    The Premises and Centers are owned by the Landlords, not the Debtors. The DIP Lenders have no right or need to force Landlords to relinquish control over the Premises to the DIP Lenders or accept a cloud to the Landlords' title to the Leases. The value in the Leases to the Debtors (and the DIP Lenders) is that which may be realized from their proceeds in a sale or other disposition of the leasehold interests. Granting a security interest in the Leases – even if it were not specifically prohibited by the Leases – serves no economic purpose, and should not be a component of any post-petition financing.

**C.    The Court should limit any remedies that the DIP Lenders may exercise with respect to the Collateral at the Premises in accordance with the protections provided to Landlords in the Leases and Bankruptcy Code.**

15.    The Interim Order (and potentially other DIP financing documents that have not been made available for review) provides the DIP Lenders with sweeping relief from the automatic stay to proceed against the Collateral in accordance with the provisions of the DIP Financing Agreements upon a default by the Debtors, and without notice to the Landlords. To the extent these remedies impact the Premises or the Centers, the DIP Lenders must come back

before this Court to seek further relief to conduct any auction of leases, assumption and assignment of leases, GOB sales, etc. Any liquidation of collateral that would include any attempt to conduct any sale at the Premises are governed by the Leases, and the Debtors and any assignee (including a foreclosing lender) are bound by the terms of the Leases. *See* 11 U.S.C. §§ 365(b)(3) and (d)(3). Only the Bankruptcy Court can authorize the Debtors to conduct such sales, and it may do so only after carefully weighing the competing interests of the landlords and the debtor-tenant through a separate motion by the Debtors. *See, e.g.,* In re Ames Department Stores, Inc., 136 B.R. 357 (Bankr. S.D.N.Y. 1992). The Debtors cannot justify exempting the DIP Lenders from the restrictions in the Leases, or the explicit requirements of the Bankruptcy Code.

16. Any request for authority to enter onto the Centers for an indeterminate amount of time exposes the Landlords and the Centers to unnecessary prejudice. The DIP Lenders are not parties to the Leases and have no rights to occupy and use Debtors' property. If this Court is inclined to grant any ability to enter onto the Premises, it should be specifically circumscribed as follows:

- Only after ten (10) days written notice to the affected Landlords;

- For the limited purpose of collecting and removing the Collateral;

- Pursuant to a written agreement on terms acceptable to the Landlords and in accordance with the Leases;

- DIP Lenders are responsible for the charges coming due under the Leases, monthly in advance, for any period of occupancy.

- DIP Lenders, their agents, or any entering party must provide Landlords with a certificate of insurance with respect to such entry, which certificate shall list the Landlords as an additional named insured co-insured, which insurance covers both personal injury and property damage;

- DIP Lenders are subject to any provision of the Leases regarding re-imbursement and/or indemnification of the Landlords; and

- Access to the Premises shall be limited to a period not to exceed thirty (30) days.

17. As stated above, the Debtors do not own the Premises and the Leases explicitly prohibit or restrict this attempted usurpation of Landlords' property rights. The Landlords provide Debtors a right to occupy certain space in the Centers which is specifically circumscribed by the terms of the Leases. The Debtors possess no right to use the Premises beyond those rights granted within the Leases. The DIP Lenders are not parties to the Leases and have no possessory right to the Premises.

18. Finally, the DIP Lenders must bear full financial responsibility not only for all charges arising under the Leases going forward, but also for prior unpaid rent or other charges for any limited access to the Premises. To the extent the DIP Lenders seek authority to essentially step into the shoes of the Debtors following a default, there is no reason to allow the DIP Lenders to exercise rights which would otherwise be prohibited by the Leases and "assume" the Leases for an indeterminate period of time without being held to cure outstanding post-petition defaults. The DIP Lenders should not, on the one hand, receive a superpriority administrative claim, and on the other hand be relieved from liability for the Debtors' failure to remain current on post-petition rent obligations while the DIP Lenders attempt to realize upon their collateral. This result compels Landlords to continue to suffer as involuntary post-petition creditors, the very result that Section 365(d)(3) was intended to counteract. *See* In re Warehouse Club, Inc., 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994).

19. In addition to the foregoing, and to the extent not inconsistent with the relief sought here, the Landlords also join in the objection(s) of other real property lessors.

## IV. **CONCLUSION**

The Court should limit any lien in favor of the DIP Lenders to only the proceeds obtained through the sale or other disposition of the Leases, require the Debtors to seek further relief from the Court prior to granting the DIP Lenders any access to the Premises to remove their collateral, or to direct the Debtors to conduct any sale at the Premises, and grant such other and further relief that it deems just and proper.

| | |
|---|---|
| Dated:  November 26, 2008 | **BALLARD SPAHR ANDREWS & INGERSOLL, LLP** |

                      By:___/s/  Charles W. Chotvacs_____
                          Charles W. Chotvacs (VA Bar No. 70045)
                          BALLARD SPAHR ANDREWS & INGERSOLL, LLP
                          601 13th Street, N.W.
                          Suite 1000 South
                          Washington, D.C. 20005-3807
                          Telephone: (202) 661-2200
                          Facsimile: (202) 661-2299
                          chotvacsc@ballardspahr.com

                                  - and –

                          **KATTEN MUCHIN ROSENMAN LLP**

                          Thomas J. Leanse (TL-8802)
                          Brian D. Huben (BH-8262)
                          Dustin P. Branch (DB-3553)
                          KATTEN MUCHIN ROSENMAN LLP
                          2029 Century Park East, Suite 2600
                          Los Angeles, California  90067
                          Phone: (310) 788-4400
                          Facsimile: (310) 788-4471
                          thomas.leanse@kattenlaw.com
                          brian.huben@kattenlaw.com
                          dustin.branch@kattenlaw.com

*Attorneys for The Macerich Company, RREEF Management Company, Cousins Properties Incorporated, Watt Management Company, The Prudential Insurance Company Of America, Portland Investment Company, and KNP*

## **EXHIBIT A**

## **REAL PROPERTY LEASES**

| | |
|---|---|
| THE MACERICH COMPANY ||
| Chandler Gateway | Chandler, AZ |
| Green Tree | Clarksville, IN |
| Lakewood Center | Lakewood, CA |
| San Tan Village | Gilbert, AZ |
| Scottsdale | Scottsdale, AZ |
| Scottsdale 101 | Scottsdale, AZ |
| Tysons Corner | McLean, VA |
| Village Square I | Phoenix, AZ |
| Vintage Faire | Modesto, CA |
| COUSINS PROPERTIES ||
| Avenue at Forsyth | Cumming, GA |
| Los Alto Market Center | Long Beach, CA |
| North Point Market Center | Alpharetta, GA |
| WATT PROPERTIES ||
| Compton Town Center | Compton, CA |
| Norwalk Plaza | Norwalk, CA |
| Riverside Town Center | Riverside, CA |
| RREEF MANAGEMENT COMPANY ||
| Crossroads Center | Falls Church, VA |
| Firecreek Crossing | Reno, NV |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA ||
| Desert Crossing | Desert Springs, CA |
| Pembrooke Crossing | Pembrooke, FL |

| PORTLAND INVESTMENT COMPANY OF AMERICA | |
| --- | --- |
| Sawmill Plaza | Columbus, OH |
| KNP | |
| Pasadena | Pasadena, CA |

- 11 –

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November, 2008, the foregoing Limited Objection was filed and served electronically using the Court's CM/ECF system, and that, in addition, true and correct copies of the foregoing were served via electronic mail on the "2002" and "Core" lists.

        /s/  Charles W. Chotvacs
        Charles W. Chotvacs