# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

|  |  |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors.[1] | Jointly Administered |

## AFFIDAVIT OF PUBLICATION OF CYNTHIA G. SMITH
## IN THE RICHMOND TIMES-DISPATCH

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

# RICHMOND TIMES-DISPATCH - InRich.Com-CENTRO
## MEDIA GENERAL OPERATIONS INC.

BILLING INQUIRES
P.O. BOX 85333
Richmond, Virginia 23293-0001
ADVERTISERBILLING@TIMESDISPATCH.COM
Telephone-804-649-6208
Fax: 804-649-6983

**ACCOUNT NUMBER**
3402245

**TODAY'S DATE**
11/21/08

CIRCUIT CITY
C/O MILLER ADVERTISING
71 FIFTH AVENUE
7TH FLOOR
NEW YORK, NY 10003

| START | STOP | DESCRIPTION | LINES | RUNS | COST |
|---|---|---|---|---|---|
| 11/21/08 | 11/21/08 | CIRCUIT CITY | 3.00 X 19.000 | 1 | $6,099.00 |

Media General Operations, Inc.
Publisher of
Richmond Times-Dispatch

This is to certify that the Circuit City ad was published by Richmond Times Dispatch, in the City of Richmond, State of Virginia, on the following dates:

11/21/2008

The first insertion being given....
11/21/2008

Sworn to and subscribed before to me this
Date: November 21, 2008

_Kimberly Harris_       _Cynthia D. Pruitt_
Notary Public                            Supervisor

State of Virginia
City of Richmond
My Commission expires:

KIMBERLY HARRIS
Notary Public
Commonwealth of Virginia
356753
My Commission Expires Jan 31, 2009

WHEN REMITTING PLEASE REFER TO YOUR CUSTOMER #  3402245

rist- P.O. Box 85333, Richmond, VA 23293-0001. Checks should be made payable to the Richmond Christmas Mother Fund.

**In person:** Monetary donations may be dropped off in The Times-Dispatch lobby at 300 E. Franklin St. — a donation box is on the front counter — or with the receptionist in the Media General Building at 333 E. Franklin St.

Food, new toys, new clothing and other new items may be taken to the Salvation Army Christmas Center at 1101 E. Laburnum Ave. The center is open from 9 a.m. to 5 p.m. Monday through Friday. It will be closed on Thanksgiving.

For questions about The Salvation Army's Christmas assistance program, call (804) 433-1127. For general questions, call The Salvation Army at its Richmond-area headquarters, (804) 225-7470.

Donations to the fund include:
Matching gift from Bank of America
for contribution
from Peter Seaman Jr. ...................... $100.00
WTR Fund of the Community Foundation
Serving Richmond
and Central Virginia ........................... 500.00
Dr. William T. and Dorothy D. Moore
Family Charitable Endowment of
The Community Foundation Serving
Richmond and Central Virginia ........... 500.00
Educators of the Mu Chapter
of the Alpha Delta Kappa Sorority ....... 30.00
B.P.O. Elks Lodge No. 45 .................... 100.00

**TODAY'S TOTAL** ............................ $1,230.00
**PREVIOUSLY REPORTED** .............. $5,717.46
**GRAND TOTAL** .............................. $6,947.46

Mayport lost its only aircraft carrier in August 2007 when the USS John F. Kennedy was decommissioned.

"It's in the interest of national security," Nelson said. "You replace the John F. Kennedy with another carrier. You don't put them all in one location."

A new carrier, the USS George H.W. Bush, is to be commissioned in January. Webb said there has been speculation the Navy wants to send that ship to Florida, where the Bush family has been prominent in politics. But creating a carrier port in Florida would cost at least $600 million, possibly $1 billion, Warner and Webb said.

The Navy's decision, which is to be published today in the Federal Register, is slated to be finalized Dec. 31.

Virginia should have seen the carrier move coming, said John Pike, director of GlobalSecurity.org, a defense policy think tank.



Get straight talk on family matters with **Stacy Hawkins Adams' Life Notes** column in **Sunday Flair.**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA - RICHMOND DIVISION
In re: CIRCUIT CITY STORES, INC., et al.,   )  Chapter 11 • Case No. 08-35653-KRH
           Debtors.                         )  Jointly Administered

NOTICE OF ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND
FED. R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE, HEARING,
AND SELL-DOWN PROCEDURES FOR TRADING IN EQUITY SECURITIES
AND CLAIMS AGAINST THE DEBTORS' ESTATES

TO ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS:[1]

PLEASE TAKE NOTICE that on November 10, 2008 ("Petition Date"), Circuit City Stores, Inc. ("Circuit City") and certain of its subsidiaries and affiliates (the "Affiliate Debtors," and together with Circuit City, the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on November 10, 2008, the Debtors filed a motion seeking entry of an order pursuant to sections 105, 362, and 541 of the Bankruptcy Code establishing notice, hearing, and sell-down procedures for trading in equity securities and claims against the debtors' estates (the "Motion").

PLEASE TAKE FURTHER NOTICE THAT on November 13, 2008, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") entered an order approving the procedures set forth below in order to preserve the Debtors' net operating losses and certain other tax attributes ("Tax Attributes") pursuant to sections 105, 362, and 541 of the Bankruptcy Code (the "Order"). **Except as otherwise provided in the Order, any sale or other transfer of claims against or equity securities in the Debtors in violation of the procedures set forth below shall be null and void ab initio as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.**

PLEASE TAKE FURTHER NOTICE that:

Section 1. Pursuant to the Order, the following procedures shall apply to transfers of claims against, or equity securities in, the Debtors.

Section 2. **Generally.** Any purchase, sale, or other transfer of claims against, or equity securities in, the Debtors in violation of the procedures set forth herein (including the notice requirements set forth in Sections 3(a) and 4(a) and (c) below) shall be null and void ab initio as an act in violation of the automatic stay under U.S.C. §§ 362 and 105(a) of the Bankruptcy Code.

Section 3. **Equity Securities.** The following procedures shall apply to trading in equity securities of Circuit City Stores, Inc. ("Circuit City"):

(a)  Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 3) who currently is or becomes a Substantial Shareholder (as defined in Paragraph (e) below) shall file with this Court, and serve on counsel to the Debtors, a notice of such status, in the form attached hereto as Exhibit A-1, on or before the later of (A) twenty (20) calendar days after the effective date of the notice of entry of the Order or (B) ten (10) calendar days after becoming a Substantial Shareholder.

(b)  At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities, as defined below) that would result in an increase in the amount of Circuit City Stock beneficially owned by a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as Exhibit A-2, of the intended transfer of equity securities.

(c)  At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of Circuit City Stock beneficially owned by a Substantial Shareholder or would result in a person or entity ceasing to be a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as Exhibit A-3, of the intended transfer of equity securities (the notices required to be filed and served under Paragraph (b) and this Paragraph (c), each a "Notice of Proposed Transfer").

(d)  The Debtors shall have thirty (30) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Substantial Shareholder an objection to any proposed transfer of equity securities described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of this Court. If the Debtors do not object within such 30-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer. Further transactions within the scope of this Paragraph must be the subject of additional notices as set forth herein, with an additional 30-day waiting period.

(e)  For purposes of this Notice, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 7,848,226 shares (representing approximately 4.75% of all issued and outstanding shares) of the common stock of ("Circuit City Stock"), and (B) "beneficial ownership" (or any variation thereof of Circuit City Stock and Options to acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire Circuit City Stock may be treated as the owner of such Circuit City Stock.

Section 4. **Claims.** The following procedures shall apply to trading in claims against the Debtors:

(a)  Notice of 382(l)(5) Plan and 382(l)(5) Disclosure Statement. The Debtors shall, upon filing a disclosure statement with respect to a 382(l)(5) Plan (a "382(l)(5) Disclosure Statement"), simultaneously file with the Court and further publish and serve in the manner specified in Paragraph (j) below a separate notice ("Disclosure Statement Notice") in substantially the form attached as Exhibit B-1. The Disclosure Statement Notice shall (i) state that a 382(l)(5) Plan has been filed with the Court, (ii) disclose in excess of the Maximum Amount for such claimholder (the "Sell-Down"); provided, however, that notwithstanding anything to the contrary in the Order, no Beneficial Claimholder shall be required to sell any claims if such sale would result in such Beneficial Claimholder having Beneficial Ownership of an aggregate amount of Claims that is less than such Beneficial Claimholder's Protected Amount. Each Substantial Claimholder shall sell or otherwise transfer its claims subject to the Sell-Down to unrelated Entities; provided further that the Substantial Claimholder shall not have a reasonable basis to believe that such Entity would own, immediately after the contemplated consummation of such transfer, an amount of claims in excess of the Maximum Amount for such Claimholder.

(iii)  Objections to Sell-Down Notices. A Substantial Claimholder who has complied with the notice procedures contained in this Section 4 may, no later than ten (10) calendar days from service of the Sell-Down Notice, object to the manner in which the Maximum Amount or the Sell-Down Amount specified in a Sell-Down Notice were calculated or on the grounds that such notice contained a mathematical error that would result in requiring the Substantial Claimholder to reduce its ownership below the Maximum Amount or the Protected Amount for such Substantial Claimholder. In connection with any such objection, the Substantial Claimholder shall disclose its holdings to counsel to the Debtors as of the time of the filing of the objection and as of the time of any hearing on such objection. The Debtors may serve a new Sell-Down Notice by overnight delivery service within the United States correcting such errors; any Substantial Claimholder required to sell additional claims as a result of such correction shall have twenty (20) calendar days from service of any new Sell-Down Notice to effect the additional Sell-Down.

(iv)  Notice of Compliance. A Substantial Claimholder subject to the Sell-Down shall, before the Effective Date and as a condition to receiving Affected Securities, deliver to counsel to the Debtors, a written statement substantially in the form of Exhibit B-6 hereto that such Substantial Claimholder has complied with the terms and conditions set forth in Paragraph (f)(ii) and that such Substantial Claimholder will not hold claims, as of the Effective Date, in an amount in excess of the greater of the Maximum Amount or the Protected Amount (if any) for such Substantial Claimholder (the "Notice of Compliance"). Any Substantial Claimholder who fails to comply with this provision shall not receive Affected Securities with respect to any claims in excess of the greater of such claimholder's Protected Amount or the then current Threshold Amount.

(v)  Applicable Authority. For the avoidance of doubt, Section 382 of the I.R.C., the Treasury Regulations promulgated thereunder and all relevant Internal Revenue Service and judicial authority shall apply in determining whether the claims of several persons and/or Entities must be aggregated when testing for Substantial Claimholder status. For these purposes and except as specifically provided with respect to claims ownership in the Treasury Regulations, the rules and authority identified in the preceding sentence shall be treated as if they applied to claims in the same manner as they apply to stock.

(vi)  Subsequent Substantial Claimholders. To the extent that any Entity becomes a Substantial Claimholder after the date in which Final Holdings Reports are due, the Court shall retain jurisdiction so that the Debtors may seek equitable relief similar to the relief described in the Order in order to protect the Debtors' ability to apply Section 382(l)(5) of the I.R.C.

(g)  Claimholder Participation. To permit reliance by the Debtors on Treasury Regulation Section 1.382-9(d)(3), any Beneficial Claimholder that participates in formulating any chapter 11 plan of reorganization of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisors with regard to such a plan), shall not, and shall not be asked to, disclose (or otherwise make evident unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement) to the Debtors that any claims in which such Beneficial Claimholder has a beneficial ownership are Newly Traded Claims (the "Participation Restriction"). For this purpose, the Debtors acknowledge and agree that the following activities shall not, where in pursuing such activities the relevant Beneficial Claimholder does not disclose (or otherwise make evident) to the Debtors that such Beneficial Claimholder has beneficial ownership of Newly Traded Claims, constitute a violation of the Participation Restriction: (a) filing an objection to a proposed disclosure statement or to confirmation of a proposed plan of reorganization; (b) negotiating the terms of, or voting to accept or reject, a proposed plan of reorganization; (c) reviewing or commenting on a proposed business plan; (d) membership on the Creditors' Committee or other official or ad hoc committee; (e) providing information other than with respect to its claims to the Debtors on a confidential basis; or (f) taking any action required by the Order. Any claimholder found by the Court to have violated the Participation Restriction, and who, as a result, would prevent the Debtors from implementing a 382(l)(5) Plan, shall be required to dispose of Newly Traded Claims of which such Entity has Beneficial Ownership in the manner specified in Paragraph (f) (ii) above and shall be subject to the Forfeiture Remedy described in Paragraph (h) below.

(h)  Sanctions for Noncompliance. If any Substantial Claimholder fails to comply with the Sell-Down applicable to it, such Substantial Claimholder shall not be entitled to receive Beneficial Ownership of any Affected Securities in connection with the implementation of the 382(l)(5) Plan with respect to any claims required to be sold pursuant to a Sell-Down Notice. Any Substantial Claimholder that violates the Order shall be required to forfeit the Affected Securities (the "Forfeiture Remedy"). The Debtors may seek to enforce the Forfeiture Remedy, on notice to the Entity upon whom such sanctions are sought to be imposed, on an expedited basis. The Debtors also reserve the right to seek from this Court, on an expedited basis, other sanctions or damages for a willful violation of the Order, on notice to the Entity upon whom such sanctions are sought to be imposed, including, but not limited to damages for loss of any tax benefits caused by such violation and any injunction or other relief necessary or appropriate to remedy such violation. Any distribution of Affected Securities pursuant to the implementation of the 382(l)(5) Plan that is precluded by an order enforcing the Forfeiture Remedy (the "Forfeited Equity") shall be void ab initio. Any Entity that receives Forfeited Equity shall, immediately upon becoming aware of such fact, return the Forfeited Equity to the reorganized Debtors or, if all of the shares properly issued to such Entity and all or any portion of such Forfeited Equity have been sold prior to the time such Entity becomes aware of such fact, such Entity shall return to the reorganized Debtors (a) any Forfeited Equity still held by such Entity and (b) the proceeds attributable to the sale of Forfeited Equity. Any Entity that receives Forfeited Equity and fails to comply with the preceding sentence shall be subject to such additional sanctions as the Court may determine. The reorganized Debtors shall distribute any Forfeited Equity in accordance with the 382(l)(5) Plan.

(i)  Confidentiality. The Initial Holdings Report, the Final Holdings Report, the Sell-Down Notices and the Notice of Compliance, and the information contained therein, shall be treated as confidential information and shall be available only to the Debtors and counsel and financial or tax advisors to the Debtors. Each recipient of any Initial Holdings Report, Final Holdings Report, Sell-Down Notice and the Notice of Compli-