**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors.[1] | Jointly Administered |

## AFFIDAVIT OF PUBLICATION OF TIM HART
## IN THE FINANCIAL TIMES

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

# AFFIDAVITS

**IN THE MATTER OF:** CIRCUIT CITY

**STATE OF NEW YORK:**

**SS:**

**COUNTY OF NEW YORK:**

I, Tim Hart, being duly sworn, hereby certify that (a) I am the Vice President - Financial Advertising of FT Publications, Inc., Publisher of the FINANCIAL TIMES, a daily newspaper general circulation in the City and County of New York, and (b) that the Notice of which the annexed is a copy was published in the AMERICAS EDITION OF THE FINANCIAL TIMES on the

**24th day of November 2008**

VICE-PRESIDENT OF ADVERTISING -FINANCIAL ADVERTISING:

**SWORN TO BEFORE ME THIS:**

Hope Kaye

**NOTARY PUBLIC**

HOPE KAYE
Notary Public, State of New York
No. 31-4944197
Qualified in New York County
Commission Expires

IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA - RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | ) Case No. 08-35653-KRH |
| Debtors. | ) Jointly Administered |

**NOTICE OF ORDER UNDER 11 U.S.C. §§ 105, 362 AND 541 AND FED. R. BANKR. P. 3001 AND 3002 ESTABLISHING NOTICE, HEARING, AND SELL-DOWN PROCEDURES FOR TRADING IN EQUITY SECURITIES AND CLAIMS AGAINST THE DEBTORS' ESTATES**

**TO ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS:[1]**

PLEASE TAKE NOTICE that on November 10, 2008 ("Petition Date"), Circuit City Stores, Inc. ("Circuit City") and certain of its subsidiaries and affiliates (the "Affiliate Debtors," and together with Circuit City, the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on November 10, 2008, the Debtors filed a motion seeking entry of an order pursuant to sections 105, 362, and 541 of the Bankruptcy Code establishing notice, hearing, and sell-down procedures for trading in equity securities and claims against the debtors' estates (the "Motion").

PLEASE TAKE FURTHER NOTICE THAT on November 13, 2008, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") entered an order approving the procedures set forth below in order to preserve the Debtors' net operating losses and certain other tax attributes ("Tax Attributes") pursuant to sections 105, 362, and 541 of the Bankruptcy Code (the "Order"). **Except as otherwise provided in the Order, any sale or other transfer of claims against or equity securities in the Debtors in violation of the procedures set forth below shall be null and void ab initio as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.**

PLEASE TAKE FURTHER NOTICE that:

Section 1. Pursuant to the Order, the following procedures shall apply to transfers of claims against, or equity securities in, the Debtors.

Section 2. **Generally.** Any purchase, sale, or other transfer of claims against, or equity securities in, the Debtors in violation of the procedures set forth herein (including the notice requirements set forth in Sections 3(a) and 4(a) and (c) below) shall be null and void ab initio as an act in violation of the automatic stay under U.S.C. §§ 362 and 105(a) of the Bankruptcy Code.

Section 3. **Equity Securities.** The following procedures shall apply to trading in equity securities of Circuit City Stores, Inc. ("Circuit City"):

(a) Any person or entity (as defined in Treasury Regulations Section 1.382-3(a) for purposes of this Section 3) who currently is or becomes a Substantial Shareholder (as defined in Paragraph (e) below) shall file with this Court, and serve on counsel to the Debtors, a notice of such status, in the form attached hereto as Exhibit A-1, on or before the later of (A) twenty (20) calendar days after the effective date of the notice of entry of the Order or (B) ten (10) calendar days after becoming a Substantial Shareholder.

(b) At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities, as defined below) that would result in an increase in the amount of Circuit City Stock beneficially owned by a Substantial Shareholder or would result in a person or entity becoming a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as Exhibit A-2, of the intended transfer of equity securities.

(c) At least thirty (30) calendar days prior to effectuating any transfer of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of Circuit City Stock beneficially owned by a Substantial Shareholder or would result in a person or entity ceasing to be a Substantial Shareholder, such Substantial Shareholder shall file with this Court, and serve on counsel to the Debtors, advance written notice, in the form attached hereto as Exhibit A-3, of the intended transfer of equity securities (the notices required to be filed and served under Paragraph (b) and this Paragraph (c), each a "Notice of Proposed Transfer").

(d) The Debtors shall have thirty (30) calendar days after receipt of a Notice of Proposed Transfer to file with this Court and serve on such Substantial Shareholder an objection to any proposed transfer of equity securities described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of this Court. If the Debtors do not object within such 30-day period, such transaction may proceed solely as set forth in the Notice of Proposed Transfer. Further transactions within the scope of this Paragraph must be the subject of additional notices as set forth herein, with an additional 30-day waiting period.

(e) For purposes of this Notice, (A) a "Substantial Shareholder" is any person or entity which beneficially owns at least 7,848,226 shares (representing approximately 4.75% of all issued and outstanding shares) of the common stock of ("Circuit City Stock"), and (B) "beneficial ownership" (or any variation thereof of Circuit City Stock and Options to acquire Circuit City Stock) shall be determined in accordance with applicable rules under Section 382 of the I.R.C., Treasury Regulations promulgated thereunder and rulings issued by the Internal Revenue Service, and thus, to the extent provided therein, from time to time shall include, without limitation, (i) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), (ii) ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and (iii) an Option to acquire Circuit City Stock. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture; contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable. For the avoidance of doubt, by operation of the definition of beneficial ownership in clause (B) of this Paragraph, an owner of an Option to acquire Circuit City Stock may be treated as the owner of such Circuit City Stock.

Section 4. **Claims.** The following procedures shall apply to trading in claims against the Debtors:

(a) Notice of 382(l)(5) Plan and 382(l)(5) Disclosure Statement. The Debtors shall, upon filing a disclosure statement with respect to a 382(l)(5) Plan (a "382(l)(5) Disclosure Statement"), simultaneously file with the Court and further publish and serve in the manner specified in Paragraph (j) below a separate notice ("Disclosure Statement Notice") in substantially the form attached as Exhibit B-1. The Disclosure Statement Notice shall (i) state that a 382(l)(5) Plan has been filed with the Court, (ii) disclose the most current estimate of the Threshold Amount and (iii) set a record date, which shall be 5:00 p.m., Eastern Time, on the date set by the Court that is ten (10) business days prior to the date set for the hearing on the 382(l)(5) Disclosure Statement (the "Disclosure Statement Notice Record Date"). Each Beneficial Claimholder who holds more than the Threshold Amount (each, a "Substantial Claimholder") as of the Disclosure Statement Notice Record Date is hereby ordered and directed to email and fax to counsel to the Debtors a report in the form attached hereto as Exhibit B-2 (the "Initial Holdings Report") identifying: (i) the nature and amount of Claims held by such Beneficial Claimholder as of the Disclosure Statement Notice Record Date (the "Initial Holdings"); and (II) the Protected Amount that is in excess of the Threshold Amount. The Initial Holdings Report shall be subject to the confidentiality provisions set forth in Paragraph (i) below and shall be served in accordance with the preceding sentence no later than three (3) business days prior to the first date set by the Court for the hearing to consider the 382(l)(5) Disclosure Statement to the email addresses and fax numbers identified on the attached Exhibit B-2. In the event that the hearing to consider the 382(l)(5) Disclosure Statement is adjourned or continued, Substantial Claimholders shall not be required to amend or update their Initial Holdings Reports unless, in the event of an adjournment or continuance, the Debtors establish a new Disclosure Statement Notice Record Date and provides notice thereof, in which case the process above will re-commence.

(b) 382(l)(5) Disclosure Statement. The 382(l)(5) Disclosure Statement shall contain information adequate to permit a party entitled to vote on a 382(l)(5) Plan to determine whether a 382(l)(5) Plan provides greater value than possible alternatives and shall include, without limitation, the following disclosures: (i) the net present value of the projected tax savings of the 382(l)(5) Plan as compared to a 382(l)(6) Plan based on the financial projections included in the 382(l)(5) Disclosure Statement; (ii) a description of the restrictions on trading with respect to the common stock and any other securities of the reorganized Debtors (the "Affected Securities") that will be required or imposed under the 382(l)(5) Plan after the Effective Date to preserve such tax savings; (iii) the projected value of the Affected Securities in the aggregate; and (iv) the projected tax savings of the 382(l)(5) Plan as a percentage of the aggregate value of the Affected Securities. In addition, the Debtors shall promptly (and in any event before the end of the hearing on the 382(l)(5) Disclosure Statement) disclose on a separate filing with the SEC on Form 8-K (i) the aggregate amount of Initial Holdings (the "Total Initial Holdings") and (ii) the estimated maximum amount and percentage of the Total Initial Holdings in each class that may be required to be sold down as provided below. Such disclosures shall be included in the final 382(l)(5) Disclosure Statement. The foregoing does not limit in any way the right of any party in interest to object to the adequacy of the information in the 382(l)(5) Disclosure Statement.

(c) Notice of Claimholder Acceptance of 382(l)(5) Plan. The Debtor shall file with the Court and further publish and serve in the manner specified in Paragraph (j) below, not less than ten (10) days prior to the commencement of the Confirmation Hearing, a notice (the "Pre-Confirmation Notice") substantially in the form attached hereto as Exhibit B-3, setting forth: (i) a record date, which shall be 5:00 p.m., Eastern Time, on a date that is ten (10) days prior to the first date set by the Court for the Confirmation Hearing (the "Pre-Confirmation Notice Record Date"); and (ii) identifying the most current estimate of the Threshold Amount (determined as of the Pre-Confirmation Notice Record Date). Each Beneficial Claimholder who is a Substantial Claimholder (as determined by the Threshold Amount identified in the Pre-Confirmation Notice) as of the Pre-Confirmation Notice Record Date is hereby ordered and directed to deliver, via e-mail and fax, a report in the form attached hereto as Exhibit B-4 (the "Final Holdings Report") identifying the nature and amount of claims held by such Beneficial Claimholder as of the Pre-Confirmation Notice Record Date (the "Final Holdings"). The Final Holdings Report shall be subject to the confidentiality provisions set forth in Paragraph (i) below and shall be served on counsel to the Debtors no later than the date that is three (3) business days prior to the first date set by the Court for the Confirmation Hearing to the e-mail addresses and fax numbers identified on the attached Exhibit B-2. For any Substantial Claimholder who did not serve an Initial Holdings Report, the Final Holdings Report shall also contain such Substantial Claimholder's Protected Amount that is in excess of the Threshold Amount. In the event that the Confirmation Hearing is adjourned or continued, Substantial Claimholders shall not be required to amend or update their Final Holdings Reports unless, in the event of an adjournment or continuance, the Debtors establish a new Pre-Confirmation Notice Record Date and provides notice thereof, in which case the process above will re-commence.

(d) Sell-Down Notice. If the Court confirms the 382(l)(5) Plan, the Debtors shall serve a notice substantially in the form attached hereto as Exhibit B-5 (the "Sell-Down Notice") by overnight delivery service within the United States upon each Substantial Claimholder (as of the Pre-Confirmation Notice Record Date) within five (5) business days after the entry of the order confirming the 382(l)(5) Plan. The Sell-Down Notice shall (i) state that the 382(l)(5) Plan has been confirmed; (ii) contain the results of the calculations described in Paragraph (f)(l) below, including the calculation of the Maximum Amount and the information used to perform all such calculations to the extent that the Debtors are not required by the Order or other confidentiality restrictions to keep such information confidential; and (iii) provide notice that, pursuant to the Order, each Substantial Claimholder is ordered and directed to comply with the Sell-Down Procedures (set forth in Paragraph (f) below) before the Effective Date.

(e) Effective Date. The Effective Date of any 382(l)(5) Plan shall not be earlier than thirty (30) calendar days after the Confirmation Date.

(f) Sell-Down Procedures. If and only to the extent that a 382(l)(5) Plan is confirmed by this Court then, to the extent necessary to effectuate the 382(l)(5) Plan, each Beneficial Claimholder who is, as of the Pre-Confirmation Notice Record Date, a Substantial Claimholder (other than a Permitted Substantial Claimholder whose Claims shall not be required to be sold as part of the Sell-Down pursuant to Paragraph (f)(ii) below), is hereby ordered and directed to comply with the following sell-down procedures (the "Sell-Down Procedures"):

(i) The Maximum Amount. The Debtors shall calculate the maximum amount of claims that may be held, as of the Effective Date of the 382(l)(5) Plan, by a Substantial Claimholder that was a Substantial Claimholder as of the Pre-Confirmation Notice Record Date (the "Maximum Amount") as follows:

(1) Based upon the information provided by the Substantial Claimholders in the Final Holdings Reports, the Debtors shall calculate the total amount of claims that all Substantial Claimholders must sell to effectuate the 382(l)(5) Plan assuming that all Incremental Holdings will be sold prior to any Sell-Down of claims held by the Substantial Claimholders prior to the Disclosure Statement Notice Record Date and taking into account in its determination the portion of claims held by Substantial Claimholders that the Debtors reasonably conclude (based on evidence furnished by the Substantial Claimholders) have not existed since a date that was 18 months before the Petition Date and that are not "ordinary course" claims, within the meaning of Treasury Regulations Section 1.382- 9(d)(2)(iv) (the "Sell-Down Amount").

(2) If the Sell-Down Amount is less than or equal to the Total Incremental Holdings, the Debtors shall calculate the amount of each Substantial Claimholder's pro rata share of the Sell-Down Amount (i.e., the Sell-Down Amount multiplied by a fraction, the numerator of which is the Substantial Claimholder's Incremental Holdings and the denominator of which is the Total Incremental Holdings);

(3) If the Sell-Down Amount exceeds Total Incremental Holdings, the Debtors shall calculate for each Substantial Claimholder the amount of such Substantial Claimholder's pro rata share of such excess (i.e., the total amount of such excess multiplied by a fraction, the numerator of which is such Substantial Claimholder's Initial Holdings minus the Threshold Amount and the denominator of which is the Total Initial Holdings in excess of the Threshold Amount of all Substantial Claimholders) and add to that the amount of such Substantial Claimholder's Incremental Holdings; and

(4) For each Substantial Claimholder, the Debtors shall subtract from the total claims held by such Substantial Claimholder (as reported in the Final Holdings Report) such Substantial Claimholder's share of the Sell-Down Amount calculated in accordance with clauses (ii) or (iii) above, as applicable. The difference shall be the Maximum Amount.

(ii) Sell-Down. Prior to the Effecti[ve Date] amount of claims equal to its share of t[he] so that no Substantial Claimholder sha[ll hold a] Maximum Amount for such claimholde[r not]withstanding anything to the contrary in t[his order] to sell any claims if such safe would [not result in] Ownership of an aggregate amount of Protected Amount. Each Substantial C[laimholder] subject to the Sell-Down to unrelated [parties.] holder shall not have a reasonable ba[sis to believe that] after the contemplated consummation Maximum Amount for such Claimholde[r.]

(iii) Objections to Sell-Down Notic[e.] the notice procedures contained in th[is order,] from service of the Sell-Down Notice, or the Sell-Down Amount specified in[cluding] that such notice contained a mathemat[ical error] Claimholder to reduce its ownership, for such Substantial Claimholder. In[ such event,] Claimholder shall disclose its holding of the objection and as of the time-of a new Sell-Down Notice by overnig[ht] such errors; any Substantial Claimhol[der] correction shall have twenty (20) cale[ndar days to] effect the additional Sell-Down.

(iv) Notice of Compliance. A Subst[antial Claimholder who complies with the Maximum Amount by] the Effective Date and as a condition [thereof shall serve on the] Debtors, a written statement substant[ially in the form attached hereto as Exhibit B-6 certifying] tial Claimholder has complied with th[e Sell-Down Procedures and] that such Substantial Claimholder wi[ll not hold claims] in excess of the greater of the Maxi[mum Amount or Protected Amount.] Substantial Claimholder (the "Notice[ of Compliance"). A Substantial Claimholder's failure] to comply with this provision shall re[sult in such claimholder holding claims] in excess of the greater of such claim[holder's Protected Amount or Maximum] Amount.

(v) Applicable Authority. For the a[pplicable authority,] Regulations promulgated thereunde[r shall apply. Such regulations and] authority shall apply in determining [how claims] must be aggregated when testing fo[r compliance] except as specifically provided with[ respect to] the rules and authority identified in t[his Order with respect] to claims in the same manner as th[e claims of such holder.]

(vi) Subsequent Substantial Cla[imholders. Any subsequent Sub]stantial Claimholder after the date [the 382(l)(5) Plan is confirmed shall] retain jurisdiction so that the Debto[rs may take steps provided] in the Order in order to protect the D[ebtors' Tax Attributes.]

(g) Claimholder Participation. T[o the extent provided by Treasury Regulations] Section 1.382-9(d)(3), any Beneficia[l Claimholder who holds claims under any chapter] 11 plan of reorganization of or on be[half of the Debtors shall be entitled to be heard in] making any suggestions or propos[als regarding the 382(l)(5)] plan), shall not, and shall not be as[sked or com]pelled to do so by an order of a cou[rt or as a] requirement) to the Debtors that an[y claims in which such beneficial claimholder has a ben]eficial ownership are Newly Traded [Claims. To the extent] the Debtors acknowledge and agr[ee (with the involv]ing such activities the relevant Ben[eficial Claimholder has] evident) to the Debtors that such [claims are Newly] Traded Claims, constitute a violat[ion of the sell-down] to a proposed disclosure statemen[t and the Debtors shall be entitled to object to such] (b) negotiating the terms of, or vot[ing on any matter], (c) reviewing or commenting on a [proposed plan or] Committee or other official or ad[visor of the Debtors with] respect to its claims to the Debtors[. Notwithstanding] the Order. Any claimholder found [to have engaged in such activity] and who, as a result, would preven[t the Debtors from being] required to dispose of Newly Trade[d Claims in] the manner specified in Paragraph [(h) below or as] described in Paragraph (h) below.

(h) Sanctions for Noncomplian[ce. In the event that the] Sell-Down applicable to it, such S[ubstantial Claimholder whose Ben]eficial Ownership of any Affected [Claims under a] 382(l)(5) Plan with respect to any [such Affected Claims] Any Substantial Claimholder that [fails to comply with the] Securities (the "Forfeiture Remed[y"), subject to Court approval,] on notice to the Entity upon whom [such Forfeiture Remedy is to be exercised, on a basis. The Debtors also reserve t[he right to seek] sanctions or damages for a willf[ul noncompliance if] such sanctions are sought to be [imposed, and any] tax benefits caused by such viola[tion shall be mitig]ate to remedy such violation. An[y Forfeiture Remedy shall be im]mentation of the 382(l)(5) Plan t[o the extent possible.] (the "Forfeited Equity") shall be [forfeited] immediately upon becoming aw[are of such violation to the] Debtors or, if all of the shares p[reviously distributed as] Forfeited Equity have been sold, [the proceeds from the sale of] such Entity shall return to the re[organized] Entity and (b) the proceeds attrib[utable to such] Forfeited Equity and fails to co[mply, or where the] additional sanctions as the Court[ deems appropriate shall be imposed, with the] Forfeited Equity in accordance w[ith the Order.]

(i) Confidentiality. The Initia[l Holdings Report, Final Holdings Report, Sell-Down] Notices and the Notice of Compl[iance shall be treated] as confidential information and [shall not be disclosed to other parties, except to finan]cial or tax advisors to the Debtor[s, provided that] Report, Sell-Down Notice and th[e Notice of Compliance and pursuant to the] Order) shall keep the informati[on confidential and not disclose such] information to any Entity (includ[ing the Credi]tee) unless required to produce [such reports or information in connection with a formal court proceeding.]

(j) Notice. Any notices requ[ired to be made or] published in the *Richmond Tim[es-Dispatch* and other newspapers.] All notices required to be serve[d on a party shall be served via e-mail,] if an e-mail address is known, [otherwise via facsimile, and via (a) the] Office of the United States Trus[tee for the Eastern District of Virginia (via] overnight mail only); (b) the Se[curities and Exchange Commission; (c) Internal Revenue] Service; (d) the United States A[ttorney for the Eastern District of Virginia; (e) counsel] to the Prepetition Lenders; (f) th[e...]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.