# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

|  |  |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al., | Case No. 08-35653 (KRH) |
| Debtors.[1] | Jointly Administered |

## AFFIDAVIT OF PUBLICATION OF CYNTHIA G. SMITH
## IN THE RICHMOND TIMES-DISPATCH

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

# RICHMOND TIMES-DISPATCH - InRich.Com-CENTRO
## MEDIA GENERAL OPERATIONS INC.

BILLING INQUIRES
P.O. BOX 85333
Richmond, Virginia 23293-0001
ADVERTISERBILLING@TIMESDISPATCH.COM
Telephone-804-649-6208
Fax: 804-649-6983

**ACCOUNT NUMBER**
3402245

**TODAY'S DATE**
11/21/08

CIRCUIT CITY
C/O MILLER ADVERTISING
71 FIFTH AVENUE
7TH FLOOR
NEW YORK, NY 10003

| START | STOP | DESCRIPTION | LINES | RUNS | COST |
|---|---|---|---|---|---|
| 11/21/08 | 11/21/08 | CIRCUIT CITY | 2.00 x 8.5000 | 1 | $1,819.00 |

Media General Operations, Inc.
Publisher of
Richmond Times-Dispatch

This is to certify that the Circuit City ad
was published by Richmond Times Dispatch, in the City
of Richmond, State of Virginia, on the following dates:

11/21/2008

The first insertion being given....
11/21/2008

Sworn to and subscribed before to me this
Date: November 21 2008

_Kimberly Harris_  _[signature]_
Notary Public      Supervisor

State of Virginia
City of Richmond
My Commission expires:

KIMBERLY HARRIS
Notary Public
Commonwealth of Virginia
356753
My Commission Expires Jan 31, 2009

WHEN REMITTING PLEASE REFER TO YOUR CUSTOMER # 3402245

The DNA on the swab from the bottle was contaminated by DNA in the woman's fingernail clippings. The examiner placed the samples next to each other in a batch of samples run through the same automated DNA extraction equipment at the same time.

Tom Gasparoli, spokesman for the Department of Forensic Science, said that in this case, the examiner should have seen the discrepancy upon review of the run but did not.

"Lab policy requires checking the DNA typing results of test batches to look for matches indicating there may have been contamination between samples in each batch," he explained. Once the error was detected, steps were taken immediately to correct it, he said.

"This type of discrepancy is very rare," Gasparoli said. "Forensic testing done at the Virginia Department of Forensic Science laboratory is reliable," he said.

Betty Layne DesPortes, a Richmond criminal defense lawyer with a master's degree in forensic science, isn't so sure. DesPortes said the initial error was understandable.

The worrisome part, DesPortes said, is that two people failed to immediately catch the error when the lab failed to follow its own rules.

"The contamination went unrecognized — and false information was given to the investigator and memorialized in a report — for six months," she said. The error was caught only by chance, DesPortes complained.

B. Leigh Drewery Jr., Dunn's lawyer, said, "What concerns me is that their own internal controls failed. ... it raises questions about their quality control." Dunn was convicted on other evidence.

The department's March 2007 report said no other contamination was found, and personnel were reminded that reviews must be conducted by examiners to make sure contamination has not occurred in extraction sets.

The lab will also continue to monitor the equipment for any signs of contamination or other issues requiring adjustments.

• Contact Frank Green at (804) 649-6340 or fgreen@timesdispatch.com.

---

suka Naval Base in Japan in April, 28 months after the movement announced. Webb and Warner's letter to Gates said it is "inconceivable" the Pentagon can't wait an extra 90 days before making a decision.

But Sen. Bill Nelson, D-Fla., called for no delays. "It's time to do it now," he said.

San Diego with the rest head Seattle.

He sees the decision as a victory for Mayport. "If they didn't have a carrier to anchor activity there, you'd have to be concerned other pieces would be peeled off," he said.

• Contact Neil H. Simon at nsimon@mediageneral.com.

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA - RICHMOND DIVISION

In re: ) Chapter 11
CIRCUIT CITY STORES, INC., et al., ) Case No. 08-35653
Debtors. ) Jointly Administered

TO: ALL POTENTIAL HOLDERS OF ADMINISTRATIVE CLAIMS UNDER BANKRUPTCY CODE SECTION 503(b)(9)

PLEASE TAKE NOTICE THAT DECEMBER 19, 2008 AT 5:00 PM PACIFIC TIME HAS BEEN ESTABLISHED AS THE DEADLINE FOR FILING A REQUEST FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(9) IN THE ABOVE-CAPTIONED CASES. All parties asserting administrative expense claims, as defined in sections 101(5) and 503(b)(9) of 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for the value of any goods sold in the ordinary course of business and received by the Debtors (as defined below) within 20 days before November 10, 2008 (the "Petition Date") (i.e., between October 21, 2008 and November 9, 2008) must file a request for payment on such claim (a "Section 503(b)(9) Claim Request") on or before December 19, 2008.

PERSONS OR ENTITIES WHO MUST FILE A SECTION 503(b)(9) CLAIM REQUEST. On November 12, 2008, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") approved an order (the "Section 503(b)(9) Bar Date Order") establishing the Bar Date. Bankruptcy Code section 503(a) and the Section 503(b)(9) Bar Date Order require all persons and entities, including, without limitation, individuals, partnerships, corporations, estates, trusts, indenture trustees, unions and governmental units that assert a Claim (as defined in section 101(5) of the Bankruptcy Code) under Bankruptcy Code section 503(b)(9) against any of the Debtors listed on Exhibit 1 attached hereto, to file a Section 503(b)(9) Claim Request. Any person or entity holding a Section 503(b)(9) Claim must file a Section 503(b)(9) Claim Request on or before the Bar Date. Bankruptcy Code section 101(5) defines "Claim" to mean:
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]
11 U.S.C. § 101(5).

CONTENTS OF SECTION 503(b)(9) CLAIM REQUESTS. Each Section 503(b)(9) Claim Request must set forth with specificity:
1. The amount of the claim.
2. The particular Debtor against which the claim is asserted.
3. The type(s) of goods the claimant asserts were received by the Debtor within 20 days before the Petition Date ("the Goods").
4. The shipment date for the Goods
5. The date on which the claimant asserts the Debtor received the Goods.
6. The place of delivery of the Goods.
7. The method of delivery of the Goods.
8. The name of the carrier of the Goods.
9. The value of the Goods.

In addition, the Section 503(b)(9) Claim Request must include or attach documentation identifying: (i) the particular invoice(s) for which any such Section 503(b)(9) Claim is being asserted; and (ii) any demand to reclaim goods sold to the Debtors under Bankruptcy Code section 546(c).

Finally, any person asserting a Section 503(b)(9) Claim must certify that the goods were sold in the ordinary course of the Debtor's business.

TIME AND PLACE FOR FILING SECTION 503(b)(9) CLAIM REQUESTS. To obtain a copy of the Section 503(b)(9) Claim Request form, contact Circuit City Stores, Inc., et al., Claims Processing, in writing, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245.

For any Section 503(b)(9) Claim Request to be timely and properly filed, a person or entity holding a Section 503(b)(9) Claim must submit a signed original Section 503(b)(9) Claim Request asserting such Section 503(b)(9) Claim, together with accompanying documentation, by mail, hand-delivery, or overnight courier, to Circuit City Stores, Inc., et al., Claims Processing, in writing, c/o Kurtzman Carson Consultants LLC, at the following address:

Kurtzman Carson Consultants LLC
2335 Alaska Avenue, El Segundo, CA 90245

Each Section 503(b)(9) Claim Request must be delivered to and received by Kurtzman Carson Consultants LLC no later than 5:00 p.m., Pacific Time, on December 19, 2008. Any Section 503(b)(9) Claim Request may be submitted in person or by courier service, hand delivery, or mail addressed to Kurtzman Carson Consultants LLC at the foregoing address. Any Section 503(b)(9) Claim Request submitted by facsimile, email or other electronic means will not be accepted and will not be deemed filed until such Section 503(b)(9) Claim Request is submitted by one of the methods described in the foregoing sentence. Any Section 503(b)(9) Claim Request will be deemed filed only when actually received by Kurtzman Carson Consultants LLC. If you wish to receive acknowledgment of Kurtzman Carson Consultants LLC's receipt of your Section 503(b)(9) Claim Request, you must also submit a copy of your original Section 503(b)(9) Claim Request and a self-addressed, stamped envelope. If you wish to assert Section 503(b)(9) Claims against more than one Debtor, you must file a separate Section 503(b)(9) Claim Request in the case of each Debtor against which you believe you hold such a claim.

CONSEQUENCES OF FAILURE TO FILE A SECTION 503(b)(9) CLAIM REQUEST. ANY PERSON OR ENTITY HOLDING A SECTION 503(b)(9) CLAIM THAT FAILS TO FILE A SECTION 503(b)(9) CLAIM REQUEST ON OR BEFORE THE BAR DATE (DECEMBER 19, 2008) SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING A SECTION 503(b)(9) CLAIM AGAINST THE DEBTORS, THEIR ESTATES, OR THE PROPERTY OF ANY OF THEM, ABSENT FURTHER ORDER OF THE COURT.

ADDITIONAL INFORMATION. If you require additional information regarding the filing of a Section 503(b)(9) Claim Request, you may contact counsel for the Debtors in writing at the addresses listed at the top of this Notice. The claims registers for the Debtors will be available at the office of Kurtzman Carson Consultants LLC between 9:00 a.m. and 5:00 p.m., Pacific time, if there are questions concerning the filing or processing of a Section 503(b)(9) Claim Request.

BY ORDER OF THE COURT.

**EXHIBIT 1: Debtors and Debtors in Possession**
Circuit City Stores, Inc.; Circuit City Stores West Coast, Inc.; InterTAN, Inc.; Ventoux International, Inc.; Circuit City Purchasing Company, LLC; CC Aviation, Inc.; CC Distribution Company of Virginia, Inc.; Circuit City Properties, LLC; Kinzer Technology; Abbott Advertising Agency, Inc.; Patapsco Designs, Inc.; Sky Venture Corporation; Prahs, Inc.; XS Stuff, LLC; Mayland MN, LLC; Courchevel, LLC; Orbyx Electronics, LLC; Circuit City Stores PR, LLC

Proposed Counsel to the Debtors and Debtors in Possession

Gregg M. Galardi, Esq., Ian S. Fredericks, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, One Rodney Square, PO Box 636, Wilmington, Delaware 19899-0636, (302) 651-3000

Chris L. Dickerson, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, 333 West Wacker Drive, Chicago, Illinois 60606, (312) 407-0700

Dion W. Hayes (VSB No. 34304), Douglas M. Foley (VSB No. 34364), MCGUIREWOODS LLP, One James Center, 901 E. Cary Street, Richmond, Virginia 23219, (804) 775-1000

---

The Initial Holdings Report shall be subject to the confidential Paragraph (f) below and shall be served in accordance with the later than the (5) business days prior to the first date set by the Court to consider the 382(l)(5) Disclosure Statement to the email ad identified on the attached Exhibit B-2. In the event that the 382(l)(5) Disclosure Statement is adjourned or continued, shall not be required to amend or update their Initial Holdin event of an adjournment or continuance, the Debtors establish ment Notice Record Date and provides notice thereof, in which will re-commence.

(b) 382(l)(5) Disclosure Statement. The 382(l)(5) Disclos tain information adequate to permit a party entitled to vote on mine whether a 382(l)(5) Plan provides greater value than shall include, without limitation, the following disclosures: (i) the projected tax savings of the 382(l)(5) Plan as compared to the financial projections included in the 382(l)(5) Disclosure St of the restrictions on trading with respect to the common stocl of the reorganized Debtors (the "Affected Securities") that will under the 382(l)(5) Plan after the Effective Date to preserve projected value of the Affected Securities in the aggregate; a savings of the 382(l)(5) Plan as a percentage of the aggregate Securities. In addition, the Debtors shall promptly (and in any the hearing on the 382(l)(5) Disclosure Statement) disclose on SEC on Form 8-K (i) the aggregate amount of Initial Holdings (th and (ii) the estimated maximum amount and percentage of th each class that may be required to be sold down as provided shall be included in the final 382(l)(5) Disclosure Statement limit in any way the right of any party in interest to object to th mation in the 382(l)(5) Disclosure Statement.

(c) Notice of Claimholder Acceptance of 382(l)(5) Plan. the Court and further publish and serve in the manner specifie not less than ten (10) days prior to the commencement of the a notice (the "Pre-Confirmation Notice") substantially in the Exhibit B-3, setting forth: (i) a record date, which shall be 5:0 a date that is ten (10) days prior to the first date set by the C Hearing (the "Pre-Confirmation Notice Record Date"); and (ii) rent estimate of the Threshold Amount (determined as of the Record Date). Each Beneficial Claimholder who is a Substantia mined by the Threshold Amount identified in the Pre-Confirmati Confirmation Notice Record Date is hereby ordered and direct and fax, a report in the form attached hereto as Exhibit B-4 (the identifying the nature and amount of claims held by such Be of the Pre-Confirmation Notice Record Date (the "Final Holdin Report shall be subject to the confidentiality provisions set fort and shall be served on counsel to the Debtors no later than th business days prior to the first date set by the Court for the the e-mail addresses and fax numbers identified on the attacl Substantial Claimholder who did not serve an Initial Holdings R Report shall also contain such Substantial Claimholder's Prot excess of the Threshold Amount. In the event that the Confirmati or continued, Substantial Claimholders shall not be required to Final Holdings Reports unless, in the event of an adjournment o Pre-Confirmation Notice Record Date is hereby ordered and d ors establish a new Pre-Confirmation Notice Record Date and in which case the process above will re-commence.

(d) Sell-Down Notice. If the Court confirms the 382(l)(5) serve a notice substantially in the form attached hereto as Exhi Notice") by overnight delivery service within the United States Claimholder (as of the Pre-Confirmation Notice Record Date) days after the entry of the order confirming the 382(l)(5) Plan shall (i) state that the 382(l)(5) Plan has been confirmed; (ii) o calculations described in Paragraph (f)(i) below, including the i mum Amount and the information used to perform all such ca that the Debtors are not required by the Order or other confic keep such information confidential; and (iii) provide notice that each Substantial Claimholder is ordered and directed to comi Procedures (set forth in Paragraph (f) below) before the Effective

(e) Effective Date. The Effective Date of any 382(l)(5) Plan thirty (30) calendar days after the Confirmation Date.

(f) Sell-Down Procedures. If and only to the extent that firmed by this Court then, to the extent necessary to effectuate Beneficial Claimholder who is, as of the Pre-Confirmation Noti stantial Claimholder (other than a Permitted Substantial Clair shall not be required to be sold as part of the Sell-Down pur: below), is hereby ordered and directed to comply with the follo dures (the "Sell-Down Procedures"):

(i) The Maximum Amount. The Debtors shall calculate th claims that may be held, as of the Effective Date of the 382(l)( tial Claimholder that was a Substantial Claimholder as of the P Record Date (the "Maximum Amount") as follows:

(1) Based upon the information provided by the Substanti Final Holdings Reports, the Debtors shall calculate the total am Substantial Claimholders must sell to effectuate the 382(l)(5) Incremental Holdings will be sold prior to any Sell-Down of cla stantial Claimholders prior to the Disclosure Statement Notice R into account in its determination the portion of claims held by Su that the Debtors reasonably conclude (based on evidence furnis Claimholders) have not existed since a date that was 18 mont Date and that are not "ordinary course" claims, within the meanil tions Section 1.382-9(d)(2)(iv) (the "Sell-Down Amount").

(2) If the Sell-Down Amount is less than or equal to the T ings, the Debtors shall calculate the amount of each Substantial share of the Sell-Down Amount (i.e., the Sell-Down Amount mi the numerator of which is its Substantial Claimholder's Increme denominator of which is the Total Incremental Holdings);

(3) If the Sell-Down Amount exceeds Total Incremental Hold calculate for each Substantial Claimholder the amount of such S er's pro rata share of such excess (i.e., the total amount of such a fraction, the numerator of which is such Substantial Claimho minus the Threshold Amount and the denominator of which is th in excess of the Threshold Amount of all Substantial Claimholde amount of such Substantial Claimholder's Incremental Holdings;

(4) For each Substantial Claimholder, the Debtors shall s claims held by such Substantial Claimholder (as reported in the such Substantial Claimholder's share of the Sell-Down Amoun dance with clauses (ii) or (iii) above, as applicable. The difference Amount.

(ii) Sell-Down. Prior to the Effective Date, each Substantial an amount of claims equal to its share of the Sell-Down Amount necessary so that no Substantial Claimholder shall, as of the Effe

---

[1] The Debtors and the last four digits of their respective taxpayer are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores V InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City LLC (5170), CC Aviation, LLC (0841), CC Distribution Company Circuit City Properties, LLC (3353), Kinzer Technology, LLC (215 Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture C (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, tronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The a Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, other Debtors, the address is 9950 Mayland Drive, Richmond, Virg