Constantinos G. Panagopoulos (VSB #33356)
Charles W. Chotvacs (VSB #70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, DC 20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299

-and-

Ivan M. Gold, Esq.
ALLEN MATKINS LECK GAMBLE MALLORY
  & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 273-7431
Facsimile: (415) 837-1516

*Attorneys for GMS Golden Valley Ranch, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re | Case No. 08-35653-KRH |
| CIRCUIT CITY STORES, INC., et al. | Chapter 11 |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: December 5, 2008 @ 10:00 a.m. ET** |

**OBJECTION OF GMS GOLDEN VALLEY RANCH, LLC TO MOTION OF DEBTORS FOR ORDER UNDER BANKRUPTCY CODE § 365(d)(4) EXTENDING TIME WITHIN WHICH DEBTORS MAY ASSUME OR REJECT UNEXPIRED LEASES OF <u>NONRESIDENTIAL REAL PROPERTY</u>**

GMS Golden Valley Ranch, LLC (the "<u>Santa Clarita Landlord</u>"), the lessor of Debtors with respect to a partially constructed store location in Santa Clarita, California, by and through its undersigned counsel, hereby objects to the *Motion of Debtors For Order Under Bankruptcy Code §365(d)(4) Extending Time Within Which Debtors May Assume or Reject Unexpired*

*Leases of Nonresidential Real Property* [Docket No. 290] (the "<u>Extension Motion</u>"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

Debtors' Extension Motion seeks a 90-day extension of time for Debtors to assume or reject its remaining unexpired leases of nonresidential real property pursuant to Bankruptcy Code section 365(d)(4)(B)(i). While the Extension Motion asserts that the requested extension is necessary to comply with certain covenants in Debtors' post-petition credit facility and that Debtors "are far from finishing their evaluation of their leasehold interests," Debtors have not established "cause" for an extension of time with respect to Debtors' shopping center lease with the Santa Clarita Landlord. As discussed below, Debtors have failed to complete construction of the retail store leased from Landlord at The Plaza at Golden Valley, a new shopping center under development in Santa Clarita, California. As a result, the Santa Clarita Landlord is failing to receive its bargained-for performance, over $970,000 in mechanics' liens have been recorded against the real property, and the continued presence of a "dark store" and the uncertainty and delay caused by Debtors' failure to assume or reject jeopardizes the financing of the shopping center and potentially harms the Santa Clarita Landlord and its other retail tenants beyond the compensation available under the Bankruptcy Code.

## BACKGROUND

1. Circuit City Stores, Inc., and its affiliated co-debtors (the "<u>Debtors</u>"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on November 10, 2008. The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. On or about April 24, 2007, the Santa Clarita Landlord, as landlord, and debtor Circuit City Stores West Coast, Inc. (the "<u>Tenant</u>"), as tenant, entered into their written Lease (the "<u>Santa Clarita Lease</u>") for nonresidential premises (the "<u>Leased Premises</u>") located in the The Plaza at Golden Valley Ranch, in the City of Santa Clarita, California. The Lease was a "reverse build-to-suit" lease by which the tenant was required to construct a one-story retail

2

building containing approximately 30,330 square feet of gross leaseable area, as more particularly provided in the Santa Clarita Lease.

3. The Plaza at Golden Valley Ranch (the "Center") is a community "power" retail center, consisting of approximately 618,000 square feet, now under construction in Southern California. The Center is anchored by Kohl's and Lowe's, which are now open, and Target, which is scheduled to open in March 2009. The Center is located at the northeast corner of State Route 14 and Golden Valley Road in Santa Clarita, 30 miles northwest of the City of Los Angeles. Lost Canyon Road splits the Center into North and South superparcels. The Circuit City building is located on the North Parcel, along with Lowe's, PETsMART (scheduled to open during Spring 2009) and six pad and shop buildings. It cannot be seriously disputed that the Center is a "shopping center" as that term was defined in In re Joshua Slocum, Ltd., 922 F.2d 1081, 1087-89 (3d Cir. 1990). The Santa Clarita Lease has not been rejected and is among the leases for which an extension of the time to assume and assign is sought by Debtors' Extension Motion (designated as Store No. 3745 in Exhibit A to the Lease Extension Motion).

4. Section 4 of the Santa Clarita Lease provides that the "Construction Term" of the Lease shall "commence on the date of Landlord's Delivery of the Land to Tenant in the condition specified in the Site Design Requirements …" On February 21, 2008, the Santa Clarita Landlord caused delivery of the "Land" (as defined in the Santa Clarita Lease) to be made to Tenant. (See Exhibit 1 hereto.) Tenant thereafter commenced construction of a building at the Leased Premises with an anticipated completion and opening date in October 2008, but Tenant ceased construction of its retail building at the Leased Premises, contrary to provisions in the Santa Clarita Lease requiring Tenant to diligently pursue construction to completion.

5. The Santa Clarita Landlord and Tenant thereafter undertook negotiations regarding a prospective termination of the Santa Clarita Lease but such negotiations did not produce an agreement prior to the filing of Debtors' Chapter 11 petitions.

6. There are currently mechanics' liens resulting from Tenant's incomplete construction at the Leased Premises aggregating $971,520.78 (see Exhibit 2), including a $753,620.93 mechanic's lien recorded by Engineered Structures, Inc., Tenant's general contractor. Section 13 of the Santa Clarita Lease provides, in pertinent part, that:

> "Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises or the Shopping Center as a result of nonpayment for, or disputes with respect to, labor and materials furnished to the Premises or the Shopping Center for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien (except Landlord's lender's mortgage or deed of trust) or attachment to lie, as applicable, against the Premises or Shopping Center. Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises or Shopping Center, the party on account of whose actions such lien has been filed shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond, escrowing adequate funds to cover the claim and related transaction costs, indemnifying the title company to permit the removal of any such lien, or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party…."

7. Pursuant to Section 28.4 of the Santa Clarita Lease, on November 24, 2008, the Santa Clarita Landlord sent written notice to Tenant of the commencement of accrual of Ground Rent in the sum of $270,748.11 per annum, payable in monthly installments. (See Exhibit 3.) As a result, Ground Rent under the Santa Clarita Lease is accruing at the rate of $22,562.35 per month.

8. The recordation of mechanics' liens against the Leased Premises and the Center is potentially a default under the terms of the Santa Clarita Landlord's financing with Wells Fargo Bank, N.A., and the Santa Clarita Landlord may be compelled, upon the lender's demand, to either satisfy and discharge such liens or obtain and record sufficient mechanic's lien release bonds to release the real property from the claims of lien. Under applicable California law, a lien claimant has only 90 days after the recordation of its mechanics' lien to commence an action to

foreclose its lien. See Cal. Civil Code §3144. While the automatic stay protects the Debtors against the prosecution of such an action, the Santa Clarita Landlord's interest in the real property is not so protected and the foreclosure action can be prosecuted directly against the Santa Clarita Landlord.

9. The initial deadline for Debtors to assume or reject its unexpired nonresidential real property leases pursuant to Bankruptcy Code section 365(d)(4)(A) is March 10, 2009. On November 20, 2008, the Debtors filed the Extension Motion, seeking a 90-day extension to June 8, 2009 of the initial 120-day period within which Debtors must assume or reject its unexpired leases of nonresidential real property pursuant to Bankruptcy Code section 365(d)(4)(B)(i). According to the Extension Motion, "cause" exists for the requested extension of time because such extension is required by a covenant under the terms of Debtors' debtor-in-possession credit facility (Extension Motion at ¶¶ 14-18), Debtors' cases are "large and complex" (Extension Motion at ¶ 27) and "Debtors are far from finishing their evaluation of their leasehold interests." (Extension Motion at ¶13.) This "blanket" assertion of cause ignores the delay and uncertainty to the Santa Clarita Landlord resulting from Debtors' Chapter 11 filing, the imposition of liens for unpaid construction claims being asserted against the shopping center contrary to the provisions of the parties' lease, and the significant harm to the Santa Clarita Landlord resulting from the relief sought by the Extension Motion.

### DEBTORS HAVE NOT ESTABLISHED "CAUSE" FOR THE REQUESTED EXTENSION OF TIME TO ASSUME OR REJECT THE SANTA CLARITA LEASE

10. Bankruptcy Code section 365(d)(4) now provides:

(A) Subject to subparagraph (B), an unexpired lease of non-residential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that non-residential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of

(i) the date that is 120 days after the date of the order for relief; or

(ii) the date of the entry of an order confirming a plan.

  (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

Bankruptcy Code section 365(d)(4) now provides:

  (A) Subject to subparagraph (B), an unexpired lease of non-residential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that non-residential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of

   (i) the date that is 120 days after the date of the order for relief; or

   (ii) the date of the entry of an order confirming a plan.

  (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

   (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11. As evidenced by the legislative comments surrounding its original enactment, Section 365(d)(4) was not a lightly considered matter or an afterthought to some larger piece of legislation. Rather, this subsection was an integral part of what are commonly referred to as the 1994 "Shopping Center Amendments." In discussing the policy reasons behind the creation of subsection (d)(4), Senator Hatch expressly noted the following:

> In all but the most complicated reorganization cases sixty (60) days should be a sufficient period to make this determination [whether to assume or reject the leases]. *Even in large reorganization cases the Debtor presumably knows his own business and understands the value of his assets well enough to make such decisions in sixty (60) days.* Also, that Debtor is generally aware in advance that the bankruptcy may be necessary and can plan ahead to decide which leases should be retained. *The Debtor should consequently be able to make this determination shortly after the petition is filed and certainly within sixty (60) days*[now 120 days following the 2005 amendment] *in all but the most complicated cases.* Nonetheless, the Court has the authority to grant extensions for cause.

6

130 Cong. Rec. sections 891, 8894-95, Daily ed. June 29, 1984, Senator Orrin Hatch (Emphasis added.).

12.     Moreover, Congress' enactment of Section 365(d)(4) sought to end the obvious and particularly disastrous economic effect that delays and partial, or non-use, of shopping center space have on a shopping center, its owner and the debtor's co-tenants. The intention to end this effect was reflected in the following passage:

> Approximately half of all U.S. retail is conducted in shopping centers. *Retail merchants in shopping centers depend upon the operation of a carefully chosen mix of stores, all contributing to the success of the entire shopping center.* If shopping center tenants, especially major tenants, are not paying charges necessary for the upkeep of the shopping center or are using their space in ways not provided for in the lease and which disrupt the tenant mix, *the financial health of all of the other merchants and of the shopping center itself can be threat*ened. This bill will reduce the likelihood that provisions of the bankruptcy code will themselves add to the *economic distres*s of retail merchants in shopping centers.

1984 U.S.C.C.A.N. 590, 600-01 (emphasis added).

13.     The "cause" requirement is intended to protect commercial landlords "from delay and uncertainty by forcing a trustee or debtor in possession to decide quickly whether to assume unexpired leases." Sea Harvest Corp. v. Riviera Land Co., 868 F.2d 1077, 1079 (9th Cir. 1989). Moreover, the burden of persuasion on the issue of "cause" rests with the debtor. In re Muir Training Technologies, Inc., 120 B.R. 154, 158-159 (S.D. Cal. 1990); In re Wedtech Corp., 72 B.R. 464, 471 (Bankr. S.D.N.Y. 1987).

14.     Although "cause" is not expressly defined in Section 365(d)(4), courts have looked to the following factors for guidance:

    A.     Whether the lease is the primary asset of the debtor.

    B.     Whether the lessor has a reversionary interest in the building built by the debtor on the landlord's land.

  C. Whether the debtor has had time to intelligently appraise its financial situation and potential value of its assets in terms of the formulation of a plan.

  D. Whether the lessor continues to receive the rent required in the lease.

  E. Whether the lessor will be damaged beyond the compensation available under the Bankruptcy Code due to the debtor's continued occupation.

  F. Whether the case is exceptionally complex and involves a large number of leases.

  G. Whether the need exists for a judicial determination of whether the lease is a disguised security interest.

  H. Whether the debtor has failed or is unable to formulate a plan when it has had more than enough time to do so.

  I. Any other factors bearing on whether the debtor has had a reasonable amount of time to decide to assume or reject the lease.

  See, e.g., In re Burger Boys, Inc., 94 F.3d 755, 761-762 (2d Cir. 1996); In re Service Merchandise Co., 256 B.R. 744, 748 (Bankr. M.D. Tenn. 2000); In re Wedtech Corp., supra, 72 B.R. at 471, 473. "Certainly, the list of enumerated factors was not meant to be exclusive nor should a Court be required to consider particular factors that have no application to the request for extension at issue." In re Ernst Home Center, Inc., 209 B.R. 974, 980-981 (Bankr. W.D. Wash. 1997).

  15. Applying these so-called Wedtech factors, Debtors have not demonstrated "cause" for an extension of the time to assume or reject the Santa Clarita Lease under Bankruptcy Code section 365(d)(4)(B)(i).

  16. As a threshold matter, Debtors cannot "manufacture" a showing of "cause" through contractual commitments to its post-petition lender. Such a unilateral assertion of cause for an extension of time is contrary to prior caution against "a debtor's desire to formulate and implement its business plan at the expense of shopping center owners [] without a proper consideration of their concerns." Escondido Mission Village, L.P. v. Best Products Co., Inc., 137 B.R. 114, 117 (S.D.N.Y. 1992).

17.     Because of Debtors' failure to complete construction of its building at the Leased Premises, the Santa Clarita Landlord is not receiving the bargained for performance under the Santa Clarita Lease. Debtors are making no use of the Leased Premises. The continued presence of a "dark store" at this stage of the development of the Center threatens the success of the Center and its other retail tenants. The increased customer traffic that would result from opening and operating Circuit City store will not occur in the foreseeable future, if at all. These factors, along with the delay and uncertainty in the assumption or rejection of the Santa Clarita Lease and the issues arising from the recordation of significant mechanic's liens, result in the damage "beyond the compensation available under the Bankruptcy Code" identified in <u>Burger Boys</u>, <u>Wedtech</u> and other reported cases. The fact that Debtors sought to terminate the Santa Clarita Lease prior to their bankruptcy filing evidences that Debtors have had adequate time to analyze whether Tenant wishes to cure its defaults, complete construction and perform its obligations under the Santa Clarita Lease. Indeed, mechanics' lien foreclosure actions may be filed against the real property before the expiration of the initial 120-day period for Debtors to assume or reject the Santa Clarita Lease but Debtors make no proposal to protect the Santa Clarita Landlord from harm and expense during the requested 90-day extension period.

18.     With respect to the Santa Clarita Lease, "cause" has not been established for a 90-day extension of Debtors' time to assume or reject this particular unexpired lease.

## **JOINDER**

19.     To the extent not inconsistent with the foregoing, the Santa Clarita Landlord joins in the objections to the Extension Motion filed by Debtors' other landlords. The Santa Clarita Landlord expressly joins in the Limited Objection of Bear Valley Road Partners LLC, Laguna Gateway Phase 2, LP, Manteca Stadium Park, L.P., and OTR-Clairemont Square to the Extension Motion.

## CONCLUSION

When Debtors' proffered showing of "cause" is measured against the harm and damage confronting the Santa Clarita Landlord, the lack of cause for a 90-day extension of time to assume or reject the Santa Clarita Lease is apparent. Accordingly, as to the Santa Clarita Lease, Debtors' Extension Motion should be denied.

DATED: December 3, 2008          Respectfully submitted,

    /s/  Charles W. Chotvacs
Constantinos G. Panagopoulos (VSB #33356)
Charles W. Chotvacs (VSB #70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, DC 20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
cgp@ballardspahr.com
chotvacsc@ballardspahr.com

   -and-

Ivan M. Gold, Esq.
ALLEN MATKINS LECK GAMBLE MALLORY
  & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 273-7431
Facsimile: (415) 837-1516
igold@allenmatkins.com

*Attorneys for GMS Golden Valley Ranch LLC*

## CERTIFICATE OF SERVICE

I, hereby certify that on the 3rd day of December, 2008, a true and accurate copy of the foregoing Objection of GMS Golden Valley Ranch, LLC was electronically filed with the Clerk of the Court using the CM/ECF system, which shall cause notice of electronic filing to be served on all registered users of the ECF system that have filed notices of appearance in this case.

    /s/ Charles W. Chotvacs
Charles W. Chotvacs