Waldorf, MD

LEASE

| SECTION | | PAGE |
|---|---|---|
| 1. | Leased Property | 2 |
| 2. | Construction of Building and Improvements | 3 |
| 3. | Lease Term | 4 |
| 4. | Rent | 6 |
| 5. | Development of Shopping Center by Landlord | 8 |
| 6. | Easements | 9 |
| 7. | Common Areas and Common Area Maintenance | 15 |
| 8. | Rules and Regulations | 21 |
| 9. | Taxes | 23 |
| 10. | Maintenance, Repairs and Replacements | 27 |
| 11. | Payment of Utility Bills | 28 |
| 12. | Alterations | 28 |
| 13. | Mechanics' Liens | 31 |
| 14. | Insurance | 31 |
| 15. | Damages to the Premises by Fire or Other Casualty | 36 |
| 16. | Condemnation | 42 |
| 17. | Assignment and Subletting | 46 |
| 18. | Use | 58 |
| 19. | Warranties and Representations | 61 |
| 20. | Estoppel Certificates | 71 |
| 21. | Subordination, Nondisturbance and Attornment | 72 |
| 22. | Change of Landlord | 74 |
| 23. | Signs | 75 |
| 24. | Memorandum of Lease; Commencement Date Agreement | 76 |

EXHIBIT 1

| | | |
|---|---|---|
| 25. | Tenant's Property and Waiver of Landlord's Lien | 76 |
| 26. | Holding Over | 77 |
| 27. | "For Rent" Signs | 78 |
| 28. | Force Majeure | 78 |
| 29. | Events of Tenant's Default | 79 |
| 30. | Landlord's Remedies | 80 |
| 31. | Events of Landlord's Default; Tenant's Remedies | 86 |
| 32. | Waiver | 87 |
| 33. | Compliance with Applicable Laws | 87 |
| 34. | Notices | 88 |
| 35. | Brokers | 89 |
| 36. | Miscellaneous | 89 |
| 37. | Effectiveness of Lease; Tenant's Right to Terminate | 92 |
| 38. | Limitation of Landlord's Liability | 94 |

EXHIBITS

| | |
|---|---|
| "A" | Site Plan |
| "A-1" | "As-Built" Survey |
| "A-2" | Site Plan (2) |
| "B" | Property Description |
| "C" | Construction Provisions |
| | Attachment "1"  Geotechnical Evaluation |
| | Attachment "2"  (Intentionally Omitted) |
| | Attachment "3"  Grading Plans |
| | Attachment "4"  Construction Schedule |
| | Attachment "5"  Utility and Drainage Plan |
| | Attachment "6"  Paving Specifications |
| | Attachment "7"  Landscape and Irrigation Design Criteria |

```
                                            Waldorf, MD
                                            Draft 1/2/90
                                            Draft 1/5/90
                                            Draft 1/8/90
                                            Draft 2/1/90
                                            Draft 2/5/90
                                            Draft 2/15/90
                                            Draft 2/21/90
                                            Draft 3/16/90
                                            Draft 3/19/90
                                            Draft 3/20/90
                                            FINAL 3/23/90
```

## LEASE

THIS LEASE is made as of the 27th day of March, 1990, by and between CW WALDORF RETAIL LIMITED PARTNERSHIP, a Texas limited partnership, having an address at c/o Trammell Crow Company, 8260 Greensboro Drive, Suite 400, McLean, Virginia 22102 (the "Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation, having an address at 2040 Thalbro Street, Richmond, Virginia 23230 (the "Tenant").

R E C I T A L S:

WHEREAS, by lease dated March 31, 1986 (the "Original Lease"), Waldorf Shopping Mall, Inc., Landlord's predecessor-in-interest, leased to Tenant certain premises (the "Original Premises") comprising 15,442 square feet but referenced in the Original Lease as comprising 14,618 square feet and located on part of the Land (defined below); and

WHEREAS, Landlord and Tenant desire to amend the Original Lease to provide for substitution of this Lease for the Original Lease and termination of the Original Lease upon the Rent Com-

mencement Date; and

WHEREAS, Landlord and Tenant desire to provide for the expansion of the Original Premises and the construction of additional improvements for Tenant's use and benefit, all as more particularly set forth herein; and

WHEREAS, Landlord and Tenant intend that the terms of this Lease establish the rights and obligations of the parties with regard to the matters set forth herein, from and after the date of execution hereof.

W I T N E S S E T H:

That for and in consideration of the mutual covenants herein contained and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Leased Property</u>.  Landlord demises and leases to Tenant and Tenant leases and takes from Landlord, commencing on the "Rent Commencement Date" (defined below), all those certain "Premises" consisting of the "Building" (defined below) and additional "Improvements" (defined below), as and when same are constructed or renovated, together with that approximately 32,475-square foot parcel (the "Land"), on which the Improvements are or will be located, as more particularly shown (approximately) outlined in red on Exhibit "A" hereto and described in Exhibit "B" hereto, together with the easements described in paragraph 6 below, all located in the "Shopping Center" known as

Festival at Waldorf, which consists of that certain real property with buildings and improvements constructed or to be constructed thereon, located at Route 301 and Route 5/228, lying and being in the County of Charles, State of Maryland, and more particularly shown as "Building NN" on Exhibit "A." All of the Shopping Center exclusive of the Premises is "Landlord's Premises." The description of the Premises may be adjusted in accordance with Tenant's as-built survey to be attached hereto as Exhibit "A-1" upon completion of the Building (as described in paragraph 2 below).

2. <u>Construction of Building and Improvements.</u> Commencing as soon as practicable, Landlord shall expand Tenant's existing Original Premises on the Land by constructing thereon certain improvements (the "Improvements"), upon the completion of which the Premises shall consist of a one-story retail building, containing approximately 32,475 square feet of ground floor space plus mezzanine, with provisions for customer pickup, delivery and car stereo installation facilities, initially for use as a Circuit City Superstore (the "Building"), together with loading ramps, sidewalks, trash compactor and other such appurtenances, as more particularly set forth in the construction provisions attached hereto as Exhibit "C." The Improvements shall be constructed in accordance with the plans and specifications to be prepared by Tenant and approved by Landlord as referred to in Exhibit "C." Except as otherwise provided in paragraph 25 and set forth in Exhibit "D", the Improvements shall belong to Landlord. In connection with the construction and renovation of the Premises, Tenant agrees to perform those obligations which are

stated to be Tenant's responsibility under Exhibit "C".

3. <u>Lease Term</u>. Subject to the conditions to the effectiveness of this Lease set forth in paragraph 37, the main term (the "Main Term") of the Lease shall commence on Landlord's "Delivery of the Premises" (defined in Exhibit "C") to Tenant in accordance with, and in the condition specified in, Exhibit "C," which shall, subject to force majeure (as defined by paragraph 28 and as modified by Exhibit "C" of this Lease) occur no later than August 25, 1990. Such date is hereinafter referred to as the "Rent Commencement Date." The Main Term shall end on the last day of January following the seventeenth (17th) anniversary of the Rent Commencement Date.

In addition to the Main Term, Tenant shall have the option (a "Renewal Option") to renew and extend the Lease for three (3) consecutive five (5) year periods and a fourth eight (8) year period (the "Option Periods") immediately following the Main Term, at the rent specified below. Tenant shall give Landlord written notice of its election to exercise any Renewal Option at least one hundred eighty (180) days prior to the expiration of the Main Term or any then-current Option Period, as applicable; provided, however, that in order to avoid any forfeiture or inadvertent lapse of any right to renew or extend as aforesaid, if Tenant shall fail to give any such notice within the aforesaid time limit and shall not have given Landlord prior written notice of its intention not to renew or extend as aforesaid, then and as often as the same shall occur, Tenant's right to exercise such Renewal Option shall nevertheless continue, as shall its tenancy hereunder (under the same terms and conditions as theretofore in

effect and notwithstanding that the Main Term or then-current Option Period shall have expired) until ten (10) business days after Landlord shall have given Tenant notice of Landlord's election to terminate the Renewal Option, and Tenant may exercise its Renewal Option at any time prior to expiration of said ten (10) business day period. Upon the giving of notice of renewal and extension in accordance with the foregoing provisions, the term of this Lease shall thereupon be renewed and extended in accordance with such notice without further act by Landlord or Tenant, the same as if such notice had been timely given hereunder, provided that at the time Tenant gives such notice of renewal and extension following Landlord's notice of termination of the Renewal Option, Tenant agrees to pay to Landlord the incremental difference between the Base Rent payable for the prior term and that payable for the Option Period in question, for each month between the date of Commencement of such Option Period and the date of Tenant's giving such notice of Renewal, unless the incremental portion has already been paid by Tenant to Landlord.

If Tenant fails or declines to exercise any Renewal Option prior to expiration of the ten (10) business day period commencing after Landlord has given a notice of election to terminate a Renewal Option, or if Tenant previously gave Landlord a notice of its intention not to renew or extend, then the term of this Lease shall end on the last day of the Main Term or Option Period then ending, as the case may be, and all remaining unexercised Renewal Options shall be null and void, and forfeited by Tenant.

The Main Term and Option Periods are, collectively, the "Term." The term "Lease Year" shall mean each successive period

-5-

of twelve (12) consecutive calendar months, commencing on the first day of each February during the Term, except that the First Lease Year shall commence on the Rent Commencement Date and shall end on the last day of January following the first anniversary of the Rent Commencement Date.

4. <u>Rent.</u> Tenant agrees to pay base rent ("Base Rent") for the Premises, commencing on the Rent Commencement Date; provided, however, that rent shall be abated until six months after the Rent Commencement Date.

Tenant shall pay Base Rent without demand, deduction or offset except as provided herein, in equal monthly installments, in advance on the first day of each succeeding calendar month throughout the Term, with appropriate proration for any partial month or Lease Year, to the address given for Landlord at paragraph 34 hereof, unless Landlord shall give Tenant written notice of a change of address or of the party to whom such rents shall be payable. Unless adjusted as provided in (b) below, Base Rent shall be paid pursuant to the following schedule:

(a) <u>First Ten Years</u>. During the first ten (10) Lease Years, Tenant shall pay annual Base Rent in the amount of Two Hundred Fifty-nine Thousand Eight Hundred and No/100 Dollars ($259,800.00), payable in monthly installments of Twenty-one Thousand Six Hundred Fifty and No/100 Dollars ($21,650.00).

(b) <u>Adjustments to Base Rent</u>. Notwithstanding the provisions of (a) above, in the event that the ground floor gross leasable area of the Building when constructed does not equal 32,475 square feet, annual Base Rent during the first ten (10) Lease Years shall be the product of the actual ground floor

no longer binding or effective provided such purchaser, transferee or assignee assumes such liability, obligation or covenant of the Landlord under the Lease accruing prior to or after the date of such sale, transfer or assignment. Further, in the event the owner of Landlord's interest in this Lease is at any time a partnership, joint venture or unincorporated association, Tenant agrees that the members or partners of such partnership, joint venture or unincorporated association shall not be personally or individually liable or responsible for the performance of any of Landlord's obligations hereunder.

WITNESS the following signatures and seals:

LANDLORD:

CW WALDORF RETAIL LIMITED PARTNERSHIP, a
Texas limited partnership

By: CROW-WASHINGTON #4 RETAIL DEVELOPMENT CORPORATION
Its: General Partner

ATTEST: WITNESS:

/s/ Mark S. Tenenbaum

By: /s/ John H. Donegan
John H. Donegan
Its: Vice President

(SEAL)

TENANT:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

ATTEST:

/s/ Susan S. Williams
Its: Assistant Secretary

By: /s/ Benjamin B. Cummings, Jr.
Benjamin B. Cummings, Jr.
Its: Assistant Vice President

-95-