# DEED OF LEASE AGREEMENT

**Landlord:**        Tysons 3, LLC

**Tenant:**          Circuit City Stores, Inc.

**Shopping Center:**  Tysons 3 Center
                     Tysons Corner, Virginia

The Ziegler Companies, LLC
P.O. Box 1393
Great Falls, Virginia 22066

Form Last Revised February 8, 2005



EXHIBIT 1

# INDEX

| | | | Page |
|---|---|---|---|
| **ARTICLE I** | | **DEMISED PREMISES, SHOPPING CENTER** | |
| | 1.01 | Demised Premises | 1 |
| | 1.02 | Tenant's Exclusive Areas | 1 |
| | 1.03 | Adjacent Land | 1 |
| | 1.04 | Tenant's Use | 2 |
| | 1.05 | Shopping Center Parking | 2 |
| **ARTICLE II** | | **TERM** | |
| | 2.01 | Commencement and Ending Dates of Term | 3 |
| **ARTICLE III** | | **RENT** | |
| | 3.01 | Fixed Rent | 3 |
| | 3.02 | (DELETED) | 4 |
| | 3.03 | (DELETED) | 4 |
| | 3.04 | (DELETED) | 4 |
| | 3.05 | Rent - Litigation | 4 |
| **ARTICLE IV** | | **TAXES** | |
| | 4.01 | Real Property Taxes | 4 |
| | 4.02 | Tenant's Tax Contribution | 6 |
| | 4.03 | Taxes on Leasehold | 6 |
| **ARTICLE V** | | **COMMON AREA** | |
| | 5.01 | Tenant's Rights | 6 |
| | 5.02 | Employee Parking | 7 |
| | 5.03 | Loading and Unloading | 7 |
| | 5.04 | Changes to Common Area | 7 |
| | 5.05 | Maintenance | 8 |
| | 5.06 | Common Area Costs | 8 |
| | 5.07 | Annual Adjustment | 9 |
| | 5.08 | Examination of Landlord's Records | 9 |
| | 5.09 | Common Area Rules and Regulations | 10 |
| **ARTICLE VI** | | **INSURANCE AND INDEMNITY** | |
| | 6.01 | Tenant's Insurance | 10 |
| | 6.02 | Landlord's Insurance | 12 |
| | 6.03 | Mutual Waiver of Subrogation | 13 |
| | 6.04 | Indemnification by Tenant | 13 |
| | 6.05 | Indemnification by Landlord | 14 |
| **ARTICLE VII** | | **MAINTENANCE** | |
| | 7.01 | Maintenance by Tenant | 14 |
| | 7.02 | Maintenance by Landlord | 15 |
| | 7.03 | Self-Help Rights | 15 |
| **ARTICLE VIII** | | **CONDUCT OF BUSINESS BY TENANT** | |
| | 8.01 | Use of Premises and Tenant's Exclusive | 16 |
| | 8.02 | Tenant's Opening and Closure | 16 |
| **ARTICLE IX** | | **DESTRUCTION OF DEMISED PREMISES** | |
| | 9.01 | Total or Partial Destruction-Insured | 18 |
| | 9.02 | Uninsured Casualty | 18 |
| | 9.03 | Other Casualty Termination Rights | 18 |
| | 9.04 | Post-Casualty Restoration | 18 |
| | 9.05 | Post-Termination Rights | 18 |
| **ARTICLE X** | | **CONSTRUCTION, LIENS, FINANCING** | |
| | 10.01 | Landlord's Construction | 19 |
| | 10.02 | Tenant's Construction and Fixturization | 19 |
| | 10.03 | Changes by Tenant | 20 |
| | 10.04 | External Telecommunications Equipment | 20 |
| | 10.05 | Discharge of Liens | 21 |
| **ARTICLE XI** | | **ASSIGNMENT AND SUBLETTING** | |
| | 11.01 | By Tenant | 21 |
| | 11.02 | By Landlord | 22 |
| **ARTICLE XII** | | **SIGNS** | |
| | 12.01 | Landlord's Approval | 23 |
| **ARTICLE XIII** | | **DEFAULT BY TENANT OR LANDLORD** | |
| | 13.01 | Default Notices to Tenant, Re-entry | 23 |
| | 13.02 | Right to Relet | 24 |

i

| | 13.03 | Legal Expenses | 25 |
| | 13.04 | Waiver of Right of Redemption | 26 |
| | 13.05 | Landlord Default and Tenant Remedies | 26 |
| | 13.06 | Interest | 27 |
| **ARTICLE XIV** | | **CONDEMNATION** | |
| | 14.01 | Total Condemnation | 27 |
| | 14.02 | Partial Condemnation | 27 |
| | 14.03 | Condemnation of Parking Area | 28 |
| | 14.04 | Tenant's Damages | 28 |
| **ARTICLE XV** | | **UTILITIES, TRASH** | |
| | 15.01 | Utilities | 28 |
| | 15.02 | Trash Disposal | 29 |
| **ARTICLE XVI** | | **LATE CHARGES** | |
| | 16.01 | Late Charges | 29 |
| **ARTICLE XVII** | | **LANDLORD'S COVENANTS AND REPRESENTATIONS** | |
| | 17.01 | Exclusive Use | 29 |
| | 17.02 | Prohibited Use | 30 |
| | 17.03 | Landlord's Representations | 31 |
| **ARTICLE XVIII** | | **HAZARDOUS MATERIALS** | |
| | 18.01 | Hazardous Materials | 33 |
| **ARTICLE XIX** | | **GENERAL PROVISIONS** | |
| | 19.01 | Surrender of Premises | 33 |
| | 19.02 | Right of Entry | 34 |
| | 19.03 | Loss or Damage | 34 |
| | 19.04 | Notice of Casualty | 34 |
| | 19.05 | Estoppel | 35 |
| | 19.06 | Attornment | 35 |
| | 19.07 | Subordination | 35 |
| | 19.08 | Waste or Nuisance | 36 |
| | 19.09 | Governmental Regulations | 36 |
| | 19.10 | Holding Over | 36 |
| | 19.11 | Successors | 36 |
| | 19.12 | Quiet Enjoyment | 36 |
| | 19.13 | Waiver | 36 |
| | 19.14 | Accord and Satisfaction | 37 |
| | 19.15 | Entire Agreement | 37 |
| | 19.16 | No Partnership | 37 |
| | 19.17 | Force Majeure | 37 |
| | 19.18 | Notices | 37 |
| | 19.19 | Captions and Section Numbers | 38 |
| | 19.20 | Tenant Defined, Use of Pronoun | 38 |
| | 19.21 | Broker's Commission | 38 |
| | 19.22 | Consent | 38 |
| | 19.23 | Partial Invalidity | 38 |
| | 19.24 | Recording | 38 |
| | 19.25 | Non-Recourse | 39 |
| | 19.26 | (DELETED) | 39 |
| | 19.27 | Governing Law | 39 |
| | 19.28 | Authority | 39 |
| | 19.29 | Interpretation | 39 |
| | 19.30 | Survival | 39 |
| | 19.31 | Conditions to Effectiveness | 39 |
| | | Notary | 41 |

## EXHIBITS & ADDENDUMS

EXHIBIT A............................................................................................ Site Plan/Legal Description

EXHIBIT B............................................................................................ Floor Plan

EXHIBIT C............................................................................................ Common Area Rules and Regulations

EXHIBIT D............................................................................................ Permitted and Exclusive Uses – Other Leases

EXHIBIT E............................................................................................ Specifications

EXHIBIT F............................................................................................ Title Matters - Permitted Encumbrances

EXHIBIT G............................................................................................ Form of SNDA

ADDENDUM ....................................................................................... Landlord's Right to Terminate

4

# DEED OF LEASE AGREEMENT

Made this __21__ day of April, 2005 between Tysons 3, LLC, hereinafter referred to as "Landlord", and Circuit City Stores, Inc., hereinafter referred to as "Tenant".

## ARTICLE I

### DEMISED PREMISES, SHOPPING CENTER

**1.01    DEMISED PREMISES**

In consideration of the rents, covenants, and agreements herein recited, Landlord hereby leases and demises unto Tenant and Tenant hereby takes, leases, and holds the space in Tysons 3 Center, hereinafter referred to as "Shopping Center", shown on the site plan annexed hereto as, and more particularly described in, EXHIBIT A and made a part hereof. Said space contains approximately 20,363 square feet of leaseable floor area and is more particularly identified on the floor plan annexed hereto as EXHIBIT B and made a part hereof and is hereinafter referred to as the Demised Premises. Landlord and Tenant agree to be bound by all terms and conditions of this Lease Agreement (hereinafter referred to as "Lease").

The Demised Premises shall be deemed to extend horizontally to the exterior faces of all non-common walls and to the center line of any walls separating Demised Premises from other premises (whether leased or not, and whether used for store purposes or not). The Demised Premises shall extend vertically to and include the ceiling and floors, and shall include Tenant's mechanical equipment on the roof, if any, and outside selling areas specifically permitted by this Lease, if any.

Landlord reserves and retains the right to use the exterior walls and roof, and to install, maintain, use, repair, and replace, at its sole option and discretion, in locations which will not materially interfere with Tenant's use of Demised Premises, pipes, conduits, ducts, wires, and any other materials or facilities located in or passing through Demised Premises which serve parts of the Shopping Center or the Demised Premises; provided however, that Landlord will not undertake new installations of such items within or upon the Demised Premises except upon advance notice to Tenant and with Tenant's consent, and Landlord will not install signage on the walls and roof enclosing the Demised Premises.

**1.02    TENANT'S EXCLUSIVE AREAS**

Tenant shall have the exclusive right to use the three (3) parking spaces immediately adjacent to the Demised Premises as shown on the Site Plan for customer pick up/loading purposes and those six (6) parking spaces labeled "Car Stereo Parking" located at the rear of the Demised Premises as shown on the Site Plan for parking relating to Tenant's car stereo installation service. To the extent permitted by applicable laws and ordinances, Tenant may place up to two (2) cart corral facilities within the Common Area, not to occupy more than a total of two (2) parking spaces, in locations mutually approved by Landlord and Tenant.

**1.03    ADJACENT LAND**

Landlord may erect other buildings and/or parking areas on land adjacent to the Shopping Center and reserves the right, at its sole option, to permit occupants of any such adjacent areas and their invitees, customers,

1



employees, and visitors to use the Common Area in the Shopping Center provided that Tenant and its invitees, customers, employees, and visitors shall have the reciprocal right to use the common area on such adjacent land, and provided further that such use of the Common Area of the Shopping Center by occupants of adjacent land and their invitees, customers, employees and visitors shall not cause any violation of Section 1.05. During such time or times as Landlord, or any person or entity controlling, controlled by or under common control with Landlord, has the right to exercise control over land adjacent to the Shopping Center, Landlord's covenants set forth in Section 17.01 and 17.02 shall apply to such adjacent land as though such adjacent land was a part of the Shopping Center.

**1.04    TENANT'S USE**

The use and occupancy by Tenant of Demised Premises shall, subject to Article 5.04, include non-exclusive use for their intended purpose of the customer parking areas, employee parking areas, service roads, loading facilities, sidewalks, and other Common Areas shown on EXHIBIT A, as may exist from time to time, and as more specifically provided for herein. Tenant shall have the right, from time to time, to use a portion of the sidewalk directly in front of the Demised Premises for seasonal and promotional sales and demonstrations customary to Tenant's general business practices, subject however, in all events to compliance with all applicable laws and ordinances. Tenant further shall have the right, from time to time, but not more often than once concurrently with Tenant's opening for business in the Demised Premises, and thereafter five (5) times in any Lease Year, and in each instance for a period of time not exceeding six (6) consecutive days, to use that portion of the parking area directly in front of the Demised Premises labeled on EXHIBIT A as the "Promotional Area" (or any part thereof) for promotional vehicle parking and product demonstration and display purposes, subject however, in all events to compliance with all applicable laws and ordinances, and provided that Tenant's use of the Promotional Area does not materially interfere with the business operations of other tenants in the Shopping Center.

**1.05    SHOPPING CENTER PARKING**

Landlord shall not cause or permit the number of parking spaces serving the Shopping Center to be less than 4.0 full-size automobile spaces (9 feet wide) on ground level per 1,000 square feet of ground floor gross leaseable floor area in the Shopping Center. If Landlord breaches this covenant and fails to cure such breach within sixty (60) days following Tenant's written notice, then in addition to all other remedies available to Tenant at law or in equity (including without limitation, specific performance), the fixed rent payable by Tenant pursuant to Section 3.01 shall abate by fifty percent (50%) until the required minimum parking ratio has been restored. A reduction of parking spaces which results from a condemnation governed by Section 14.03, or a temporary reduction of parking spaces resulting from repairs, restoration or rebuilding of improvements in accordance with this Lease, shall not constitute a breach of this covenant.

ARTICLE II

TERM

## 2.01 COMMENCEMENT AND ENDING DATES OF TERM

The term of this Lease and Tenant's obligation to pay rent and other charges hereunder shall commence on that date (the "commencement date") which is sixty (60) days after the date Landlord gives possession of the Demised Premises to Tenant, in writing, in broom-clean condition with all existing fixtures removed, with the HVAC system, electrical system, plumbing system, front and rear exterior doors and restrooms in good working condition, and with all maintenance, repair and restoration described in Landlord's letter to Office Depot, Inc., dated April 1, 2005, completed. Such date of possession is estimated to be about May 30, 2005. Landlord shall be entitled to give possession of the Demised Premises to Tenant, and Tenant will accept possession of the Demised Premises, if the condition of the Demised Premises is substantially completed in accordance with the requirements of this Section 2.01, so long as Tenant's ability to enter into the Demised Premises and commence its improvements and fixturing in an orderly fashion is not materially impaired or delayed, and Landlord promptly and diligently completes such work. To the extent Tenant's improvement and fixturing of the Leased Premises is delayed as a consequence of Landlord's failure to complete the work, the commencement date shall be delayed for a coextensive period.

The term of this Lease shall end on September 15, 2019.

Landlord will prepare, and Tenant shall execute within ten (10) days after receipt thereof, a memorandum confirming acceptance of Demised Premises and setting forth the commencement and expiration dates of the term (but no failure to execute such memorandum shall affect such dates). Such memorandum shall become an addendum to this Lease Agreement.

For purposes of this Lease, the period beginning on the commencement date and ending on the last day of the calendar month in which the first anniversary of the commencement date occurs shall constitute the first "Lease Year", and each successive period of twelve (12) consecutive calendar months thereafter (or portion thereof ending on the date this Lease expires or is sooner terminated) shall constitute a Lease Year.

ARTICLE III

RENT

## 3.01 FIXED RENT

Tenant covenants and agrees to pay to Landlord, at Landlord's notice delivery address set forth in Section 19.18 during the term hereof fixed rent for Demised Premises as follows:

(a) From the commencement date through the last day of the fifth (5th) Lease Year the sum of Seventy Six Thousand Three Hundred Sixty One Dollars (76,361.00) per month, and

(b) During the sixth (6th) through tenth (10) Lease Years, the sum of Eighty Three Thousand Nine Hundred Ninety Seven Dollars ($83,997.00) per month, and

3

**19.25 NON-RECOURSE**

Notwithstanding any provision hereof to the contrary, Tenant will look solely to Landlord's interest in and to the Shopping Center (excluding proceeds from any sale or condemnation of such interest, insurance maintained in connection with the Shopping Center, and the proceeds of any financing or refinancing thereof) to satisfy any claim or judgment against Landlord arising out of or in connection with this Lease, the relationship of Landlord and Tenant, or Tenant's use of the Demised Premises ("Lease Matters"). No other assets of Landlord will be subject to levy, execution, or other enforcement procedures for the satisfaction of any judgment (or other judicial process) or for the satisfaction of any other remedy of Tenant arising out of or in connection with any Lease Matter. Neither Landlord nor any of its agents, officers, directors, employees, members, or partners will ever be personally liable for any judgment against Landlord or Landlord's duties or obligations.

**19.26 (DELETED)**

**19.27 GOVERNING LAW**

The interpretation and enforcement of this Lease will be governed by the laws of the state in which the Demised Premises are located, without regard to the conflict of laws principles thereof.

**19.28 AUTHORITY**

Each of the persons executing this Lease on behalf of Tenant hereby covenant, represent, and warrant to Landlord: (1) that Tenant is a duly authorized and existing [corporation/partnership/limited liability company] with full right and authority to enter into this Lease, and authorized to transact business in the state where the Demised Premises is located; (2) each of the persons executing this Lease on behalf of such party possesses actual authority to do so; and (3) this Lease constitutes a valid and legally binding obligation of Tenant, enforceable according to the terms hereof.

**19.29 INTERPRETATION**

Landlord and Tenant each acknowledge and agree that (A) they have consulted with legal counsel of their choice, that they have both participated in the drafting of this Lease, and that they fully understand the terms of this Lease, and (B) in light of the foregoing, the rules of construction and/or interpretation which would otherwise require any court interpreting this Lease to strictly construe the provisions hereof against the drafter, whether by Tenant or Landlord, shall be inapplicable and disregarded in interpreting this Lease.

**19.30 SURVIVAL**

The obligations of the parties hereunder (including, but not limited to, their respective indemnity obligations) shall survive the expiration or sooner termination of this Lease.

**19.31 CONDITIONS TO EFFECTIVENESS**

Notwithstanding the execution and delivery of this Lease, it shall not be effective until the later to occur of the following conditions: (i) Tenant's receipt and approval of a commitment to insure Tenant's leasehold interest under this Lease issued by a reputable title insurer of Tenant's selection; and (ii) Tenant's receipt of an executed subordination and non-disturbance agreement in the form attached hereto as EXHIBIT G from each mortgagee identified on EXHIBIT F attached hereto. If such conditions to effectiveness have not been satisfied or waived by

Tenant as of April 30, 2005, Tenant thereafter shall have the right to terminate this Lease by written notice given to Landlord not later than May 20, 2005, effective ten (10) days following such notice, unless within such ten (10) day period, each condition has been satisfied or has been waived by Tenant.

IN WITNESS WHEREOF, Landlord and Tenant have signed and sealed this Lease Agreement this **21** day of April, 2005.

LANDLORD: **TYSONS 3, LLC**

By: _____
Richard T. Ziegler, Managing Member

TENANT: **CIRCUIT CITY STORES, INC.**

By: _____
Michael E. Foss
Its: EVP and Chief Financial Officer

*Approved as to form* /HT/

STATE OF  Virginia
                                        ) ss:
COUNTY OF  Loudoun  )

This date, before me, a Notary Public in and for said County personally came Richard T. Ziegler, Managing Member of Tysons 3, LLC, the LANDLORD in the foregoing Lease Agreement, and acknowledged the signing to be his voluntary act.

Witness my hand and official seal this 21st day of April, 2005.

My commission expires  3/31/06       Elizabeth S. Jones
                                                        Notary Public


STATE OF  VIRGINIA       )
                                       ) ss:
COUNTY OF HENRICO  )

This date, before me, a Notary Public in and for said County personally came Michael E. Foss EVP and CFO of Circuit City Stores, Inc., the Tenant described in and which executed the above instrument, who being duly sworn by me, did depose and say that they know the seal of said Corporation; that the seal was affixed by order of the Board of Directors of said Corporation; and that they signed their names thereto by like order.

Witness my hand and official seal this 4th day of May, 2005.

My commission expires  5/31/07        Jaja C. Worton
                                                          Notary Public

# THE ZIEGLER COMPANIES, LLC

*Shopping Center Developers since 1961*

*Leasing • Management • Consulting*

**SENT FEDERAL EXPRESS (per telephone conversation with Linda Capehart 6/9/05)**

Today is Tuesday
The 31st day of May 2005
Have a Nice Day

Circuit City Stores, Inc.
Deep Run I
9950 Maryland Drive
Richmond, VA  23233
Attn:  Vice President/Real Estate

Re:    Tysons 3 Center
       Circuit City

Gentlemen:

Reference is made to our Lease with you dated April 21, 2005 for space at Route 7 & Springhill Road known as 8520-C Leesburg Pike. Article 2.01 of the Lease states in part that "The term of this Lease and Tenant's obligation to pay rent and other charges hereunder shall commence on that date...which is sixty (60) days after the Landlord gives possession of the Demised Premises to Tenant ...", which date of possession was estimated to be about May 30, 2005. Since May 30th was Memorial Day (a National Holiday), we could not convey keys to the premises to Jeff Powell, your construction manager, until 11:15 a.m., Tuesday morning May 31st. Therefore, the Landlord has met its obligation insofar as turning over possession of the premises to Circuit City.

Enclosed is a copy of an email message which has been signed by Jeffrey Powell, your construction manager, acknowledging receipt of the keys.

In accordance with the above, the term of this Lease is now established as commencing July 29, 2005 and ending September 15, 2019. All rent and other charges for this location will commence July 29, 2005. Please sign and date the enclosed copy of this letter acknowledging this lease term and return same to our office. This executed letter shall become an Addendum to the Lease as noted in Article 2.01.

*P.O. Box 1393, Great Falls, Virginia 22066  Telephone: (703) 757-8090  FAX: (703) 757-8095*
*( for overnight / courier deliveries only : 9913 Georgetown Pike, Suite 101, Great Falls, VA 22066 )*

Circuit City Stores, Inc.
May 31, 2005
Page Two

We look forward to a long and pleasant relationship with your company.

Sincerely,

THE ZIEGLER COMPANIES, LLC
Authorized Agent for Tysons 3, LLC

*[signature]*

Richard T. Ziegler

RTZ/pjw

**LEASE TERM IS NOW ESTABLISHED AS COMMENCING JULY 29, 2005 AND ENDING SEPTEMBER 15, 2019.**

_____    Date: _____ 6/23/05
Circuit City Stores, Inc.