Gregg M. Galardi, Esq.                  Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.                 Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &         MCGUIREWOODS LLP
FLOM, LLP                               One James Center
One Rodney Square                       901 E. Cary Street
PO Box 636                              Richmond, Virginia 23219
Wilmington, Delaware 19899-0636         (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
Circuit City Stores, Inc.,    :    Case No. 08-35653(KRH)
et al.,                       :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OMNIBUS OBJECTION TO THE MOTIONS PURSUANT TO 11
U.S.C. §§ 365(A) AND 503(B) TO COMPEL ALLOWANCE AND
PAYMENT OF POST-PETITION RENTAL OBLIGATIONS AS
ADMINISTRATIVE EXPENSES**

        The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors"),[1]

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
                                                            *(cont'd)*

hereby submit this omnibus objection (this "Objection")

to the Motions Pursuant To Sections 365(d)(3) and 503(b)

of the Bankruptcy Code, to Compel Allowance and Payment

of Post-Petition Rental Obligations as Administrative

Expenses (D.I.s 296, 298 (as amended, 333), 390, 396, 403,

471, and 538[2]; collectively, the "Motions").[3]  In support

of this Objection, the Debtors, by and through their

undersigned counsel, respectfully represent as follows:

---

*(cont'd from previous page)*

    Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]  Green 521 5th Avenue LLC ("Green 521")  filed a Notice of
Appearance and Demand for Service of Papers (D.I. 538).  Green
521's demand for postpetition rent was included in this routine
Notice of Appearance (the "NOA").  The Court should deny this
demand set forth in the NOA as procedurally improper, in addition
to the reasons set forth in the Objection.

[3]  The Debtors are filing separate pleadings with respect to
objections to (i) the Debtors' motion seeking to reject certain
unexpired leases as of the Petition Date (D.I. 21) and (ii) the
Debtors' motion to assume the store closing agency agreement (D.I.
23).

**BACKGROUND**

**A.    The Bankruptcy Cases**

1.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

3.    On November 12, 2008, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

4.    Under Bankruptcy Code section 365(d)(4)(A), the Debtors have through and including March 10, 2009 to assume or reject unexpired nonresidential real property leases.  On November 20, 2008, the Debtors filed a motion seeking, among other things, authority to extend the time within which they may assume or reject certain unexpired leases of nonresidential real property to June 8, 2009 (D.I. 290).

3

5.    The Debtors are in the process of analyzing their remaining leases, including the Leases (as defined below) to determine whether to assume or reject those leases.  The Debtors need additional time to conduct that analysis and ultimately determine which leases to assume or reject, under a plan of reorganization, or which leases to reject prior to plan confirmation.

**B.    The Leases**

6.    Burbank Mall Associates, LLC ("Burbank") and Circuit City Stores, Inc. ("Circuit City") are parties to a lease agreement dated June 30, 1993, for the premises located in the Media City Mall in Burbank, California (the "Burbank Lease").  Burbank alleges that the Debtors have failed to pay post-petition rent to Burbank in the amount of $21,952.00.

7.    Crown CCI, LLC ("Crown") and Circuit City are parties to a lease agreement dated June 20, 2003, for a unit located in Hawthorne, California (the "Crown Lease").  Crown alleges that the Debtors have failed to pay post-petition rent to Crown in the amount of $61,926.24.

8.    Woodlawn Trustees, Inc. ("Woodlawn") and Circuit City are parties to a lease agreement dated October 1, 1993, as amended, for the premises located at 4130 Concord Pike, Wilmington, Delaware (the "Woodlawn Lease"). Woodlawn alleges that the Debtors have failed to pay post-petition rent to Woodlawn in the amount of $33,154.76.

9.    502-12 86th Street LLC ("502-12 LLC") and Circuit City are parties to a lease agreement dated August 23, 2005, for the premises located at 502-512 86th Street Brooklyn, New York (the "502-12 Lease").  502-12 alleges that the Debtors have failed to pay post-petition rent to 502-12 in the amount of $93,333.33.

10.   Basile Limited Liability Company ("Basile") and Circuit City are parties to a lease agreement dated March 13, 1996, for commercial space located at 555 Payne Road, South Portland, Maine (the "Basile Lease").  Basile alleges that the Debtors have failed to pay post-petition rent to Basile in the amount of $32,979.48.

11.   Green 521 and Circuit City are parties to a lease agreement dated November 22, 2007, for the

premises located at 521 5th Avenue, New York, New York
(the "Green 521 Lease").[4]

12.   Taubman Auburn Hills Associates Limited
Partnership ("Taubman," and collectively with Burbank,
Crown, Woodlawn, 502-12, Basile and Green 521, referred
as the "Movants") and Circuit City are parties to a lease
agreement dated May 9, 2003, for a parcel of land located
in Auburn Hills, Michigan (the "Taubman Lease," and
collectively with the Burbank Lease, the Crown Lease, the
Woodlawn Lease, the 502-12 Lease, Basile Lease, and the
Green 521 Lease, the "Leases").  Taubman alleges that the
Debtors have failed to pay post-petition rent to Taubman
in the amount of $51,608.53.

13.   At this time, the Debtors have not made a
decision to assume or reject any of the Leases.

### SUMMARY OF ARGUMENT

14.   By the Motions, the Movants request that
this Court order the Debtors to _immediately_ pay the
Movants' alleged administrative claims for rent, common
area maintenance (including insurance), taxes and/or

---

[4]   The NOA does not include the amount that Green 521 alleges that
the Debtors failed to pay.

6

other amounts for the period from the Petition Date
through November 30, 2008 (the "Stub Rent Period"), in
the total aggregate amount of $311,961.30 (the "Stub Rent
Claim")[5] under Bankruptcy Code sections 365(d(3) and/or
503(b).

15.  The Debtors objection to the Movants'
request is threefold.

16.  First, assuming, _arguendo_, the Debtors are
obligated to pay the Stub Rent Claim under section
365(d)(3) or 503(b), the Debtors object to the timing of
payment of such claim and contend that this Court should
not direct the Debtors to immediately pay the Stub Rent
Claim because (a) the Stub Rent Claim is not a "super-
priority" claim, (b) such payment would be premature, and
(c) the Movants have failed to establish sufficient cause
to compel the Debtors to pay the alleged administrative
claim outside of a plan.

17.  Second, the Debtors object to the Motions
on the ground that payment of the Stub Rent Claim is not

---

[5]   The Stub Rent Claim does not include any amounts asserted in the
      NOA nor does it include unknown  and/or unliquidated amounts not
      specifically asserted by the Movants.

required under Bankruptcy Code sections 365(d)(3) or 503(b).  In support of this argument, the Debtors acknowledge that this Court has applied the "accrual" method for purposes of interpreting a debtor's obligations under Bankruptcy Code section 365(d)(3).

18.  The Debtors respectively request, however, that this Court reconsider its prior rulings in light of the Fourth Circuit Court of Appeals decision in Rose's Stores v. Saul Subsidiary I, L.P. (In re Rose's Stores), 1998 U.S. App. LEXIS 15334 (4th Cir. 1998) and other Circuit Court precedent, see Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205, 209 (3d Cir. 2001) and BK Novi Project L.L.C. v. Stevenson (In re Baby N'Kids Bedrooms, Inc.), No. 07-1606 (6th Cir. Mar. 26, 2008),[6] and adopt the "billing" method.  The Debtors further request that this Court conclude that Bankruptcy Code section 503(b) is inapplicable.

19.  Finally, the Debtors contend that even assuming, arguendo, that section 503(b) applies, the

---

[6]  Please see a copy of the Sixth Circuit Court of Appeals' order and mandate, attached hereto as Exhibit A.

Movants' have failed to satisfy their burden to demonstrate that the Stub Rent Claims arise out of (i) a post-petition transaction with the Debtors that (ii) provides a benefit to the Debtors' estates.

20.   For these reasons, as set forth more fully below, the Motions should be denied.

## OBJECTION

I.   **ASSUMING THE DEBTORS ARE OBLIGATED TO PAY THE STUB RENT CLAIM UNDER EITHER SECTION 365 OR 503, THE MOVANTS' REQUEST FOR IMMEDIATE PAYMENT SHOULD BE DENIED**

   A.   **The Stub Rent Claim Should Not Be Paid Immediately Because Such Claims Are Not "Super-Priority" Claims.**

21.   Courts in this District have consistently held that authorizing immediate payment of administrative expenses to landlords would be tantamount to giving landlords "super-priority" claims.  See, e.g., In re Trak Auto Corp., 277 B.R. 655, 668 (Bankr. E.D. Va. 2002) rev'd. on other grounds, 367 F.3d 237 (4th Cir. 2004) (holding that awarding a landlord immediate payment of administrative expenses would grant the landlord "super-priority" claim status);  In re Virginia Packaging Supply Co., 122 B.R. 491, 494 (Bankr. E.D. Va. 1990) (rejecting

a request for immediate payment of lease obligations because it would have the effect of granting landlords a "super-priority" status).  However, there is nothing in the Bankruptcy Code that supports treating landlords as super-priority administrative creditors.  See Virginia Packaging Supply, 122 B.R. at 495 (concluding that "super-priority" treatment was not "intended" by the Bankruptcy Code).  Accordingly, courts in this District have repeatedly rejected immediate payment requests.  See, e.g., Trak Auto, 277 B.R. at 668; In re Virginia Packaging Supply Co., 122 B.R. at 494.

22.  Additionally, such treatment would be inequitable vis-a-vis other creditors because landlords would receive preferential treatment not authorized by the Bankruptcy Code and not available to other administrative creditors.  See, e.g., Trak Auto, 277 B.R. at 668 (noting that "granting landlords super-priority status [comes] at the expense of similarly situated creditors").

23.  Here, to the extent the Movants are entitled to administrative claims, such administrative claims are not super-priority administrative claims.  To

conclude otherwise would result in inequitable treatment among similarly situated administrative creditors.  As such, immediate payment is not warranted.

**B.   The Stub Rent Claim Is Premature.**

24.   Courts have held that allowance and payment of stub rent under Bankruptcy Code section 503(b) should await the debtor's decision regarding whether to assume or reject the lease at issue.  See HQ Global Holdings, Inc., 282 B.R. 169, 175 (Bankr. D. Del. 2002) ("[A]ny decision on the amount and payment of the stub rent must await the Debtors' decision whether to assume or reject the leases.").  The reason for this delay, as stated in HQ Global, is that the Debtors may ultimately move to assume the lease, thereby obviating any need for a determination as to the existence or amount of any administrative expense claim.  Id.

25.   The Debtors have not yet determined whether to assume or reject the Leases.  Indeed, the Debtors filed the Extension Motion, requesting an extension of the deadline for assuming or rejecting non-residential leases of real property until June 8, 2009.

A hearing with respect to the Extension Motion has been

scheduled for December 5, 2008.

　　　　26.　Because the Debtors have not made a

decision regarding assumption or rejection of the Leases,

allowing the Stub Rent Claim as an administrative expense

under Bankruptcy Code section 503(b) would be premature.

As the court observed in HQ Global:

> Postponing the liquidation of each stub rent
> claim will reduce legal fees for both the
> Debtors and the Landlords and be more economic
> and efficient of judicial resources.  Therefore,
> we conclude that liquidation and payment of the
> stub rent should be deferred until after the
> debtors decide to assume or reject the leases.

Id. (emphasis added); see also In re Chi-Chi's, Inc., 305

B.R. 396, 402 (Bankr. D. Del. 2004)(applying HQ Global

and denying immediate payment of section 503

administrative expense claim because "Landlords [must] be

treated like any other administrative claimant"); In re

Tubular Techs., LLC, 372 B.R. 820, 823 (Bankr. D.S.C.

2007) (holding that an administrative creditor does not

have an immediate right to payment).

　　　　27.　Accordingly, the Motions should be denied

as premature.

C.   **Any Payment Of The Stub Rent Claim Should Await
Confirmation Of A Plan.**

28.   As set forth below, even assuming
Bankruptcy Code section 503(b)(1) applies, the allowance
and payment of the Stub Rent Claim should await
confirmation of a plan of reorganization to facilitate
equal treatment of holders of other administrative claims.

29.   Courts have repeatedly held that claimants
asserting administrative expense claims should receive
equal treatment, and should not be permitted to obtain
better recovery by prematurely asserting their claims.
See, e.g., Trak Auto, 277 B.R. at 668 (holding that
awarding a landlord immediate payment of administrative
expenses would be inequitable vis-a-vis other creditors);
Virginia Packaging Supply, 122 B.R. at 494 (rejecting a
request for immediate payment of lease obligations
because it would have the effect of inappropriately
granting landlords a "super-priority" status); In re
Goody's Family Clothing, Inc., 392 B.R. 604, 616-17
(Bankr. D. Del. 2008) (refusing the landlord's request
for the immediate payment of stub rent as an
administrative expense based on the debtors' business

judgment); Chi-Chi's, 305 B.R. at 402 (denying landlords'

request for the immediate payment of stub rent and noting

that such payments, if any, should be made pursuant to a

plan).   In Chi-Chi's, the court reasoned that:

> [T]he Debtors will soon monetize its assets and
> proceed to claim resolution and eventual
> payment under a plan, assuming such a plan is
> confirmed.  The eventual payout to creditors
> generally, and administrative claimants in
> particular, is not yet known.  Under these
> circumstances, the result most consistent with
> bankruptcy policy is for the Landlords to be
> treated like any other administrative
> claimant . . . .  Therefore, the Landlords'
> motion for immediate payment will be denied;
> the Landlords' appropriate remedy is to file an
> administrative claim.

Id. at 401-02.

        30.   In this instance, the Debtors are

diligently working to develop a reorganization plan.  The

provisions of such plan will, in turn, govern

distributions to holders of allowed administrative

expense claims.  Because the Debtors are working

diligently towards developing and confirming such a plan,

any delay and resulting harm that the Movants would face

by requiring them to seek payment of administrative

expense claims pursuant to the terms of such a plan as

confirmed is minimal.

31.  Moreover, because no plan of reorganization has been confirmed or, therefore, become effective to date, allowing the Movants' requested administrative expense claims at this time would permit the Movants to unfairly obtain better treatment than other holders of other administrative expense claims. Accordingly, such payment would be premature.  To the extent that the Court determines that the Movants have allowed administrative expense claims, such claims should be paid in accordance with the terms of the plan to be filed by the Debtors.

32.  Finally, the equities in this instance do not weigh in favor of granting the Movants the immediate payment they have requested in the Motions.  If this Court were to compel the Debtors to pay the Movants' claims at this time, the Debtors believe that they would receive numerous similar requests from other landlords and parties that, in accordance with the Bankruptcy Code and holdings of courts in this District, may not have been paid for purported administrative expense obligations to date.  Instead of focusing their efforts on developing and obtaining confirmation of a

reorganization plan, and then on addressing claims
asserted by various parties in accordance with the
orderly process set forth in such a plan, the Debtors
would be compelled to devote their scarce time and
resources to responding to such requests to the detriment
of the Debtors and their estates.

33.    Accordingly, because the Movants seek
payment of the Stub Rent Claim other than in accordance
with any reorganization plan ultimately confirmed by this
Court, the request should be denied.

**II.    THE DEBTORS ARE NOT REQUIRED TO PAY THE STUB RENT
CLAIM UNDER BANKRUPTCY CODE SECTIONS 365(d)(3) OR
503(b).**

**A.    Based On The Fourth Circuit Court of Appeals'
Decision In <u>Rose's Stores</u>, The Accrual Method
Should Be Rejected In Favor Of The Billing
Method.**

34.    In the Motions, the Movants assert that
payment of the Stub Rent Claim is warranted under
Bankruptcy Code sections 365(d)(3) and 503(b).    In
support, the Movants rely upon this Court's decisions in
<u>Santa Ana Best Plaza v. Best Prods. Co. (In re Best Prods.
Co.)</u>, 206 B.R. 404 (Bankr. E.D. Va. 1997) and <u>Trak Auto</u>.

35.   In Best Products and Trak Auto, this Court
rejected the "billing" method in favor of the "accrual"
method of determining those obligations that "arise from
and after" the petition date for purposes of Bankruptcy
Code section 365(d)(3).  Best Prods., 206 B.R. at 407;
Trak Auto, 277 B.R. at 663.  Under the billing method,
"all amounts owing a landlord become post-petition
obligations as a result of the timing when the debtor
receives a bill for those charges after [the petition
date]."  Trak Auto, 277 B.R. at 662.  By contrast, under
the accrual method, a "debtor's obligation under the
lease to pay its share of [rent obligations] accrues on a
daily basis and that, under § 365(d)(3), . . . must be
prorated so that the debtor pays as an administrative
expense only those charges which accrued during the post-
petition, pre-rejection period."  See Best Prods., 206
B.R. at 407.

36.   As noted in Trak Auto, the Fourth Circuit
Court of Appeals, in Rose's Stores (an unpublished
opinion) reached a contrary conclusion and rejected the
accrual method.  See, 277 B.R. at 663 n.2 (noting that

"in an unpublished opinion, the court apparently adopted
the billing method").

37.   In Rose's Stores, during the debtor's
bankruptcy proceeding, the debtor paid certain rent and
other lease obligations that were billed postpetition,
but were associated with prepetition occupancy.  After
confirmation, the debtor sought to recover the amounts
paid as voidable postpetition payments not required under
section 365(d)(3).  The bankruptcy court, apparently
adopting the accrual method, concluded that the payments
were not required by section 365(d)(3) and were, thus,
voidable.  The district court reversed and, in reversing,
adopted the billing method.  The Court of Appeals upheld
the district court's decision on the grounds that "the
rent payments were obligations that arose post-petition
by the terms of the contracts and that § 365(d)(3)
therefore required [the debtor] to make the rent payments
as it did."  See Rose's Stores, 1998 U.S. App. LEXIS
15334 at **1-2 (emphasis added).

38.   The Rose's Stores decision represents a
clear and unambiguous affirmation of the billing method
and a rejection of the accrual method.  Nonetheless, the

18

Trak Auto court rejected the Court of Appeals' reasoning in favor of its prior decision in Best Prods., which was issued before Rose's Stores, on the ground that the Rose's Stores was "not binding authority."  Trak Auto, 277 B.R. at 663, n.2.

39.   Given the Fourth Circuit Court of Appeals approval (albeit non-binding) of the billing method, the Debtors submit that this Court should depart from the reasoning in Best Prods. and Trak Auto in favor of the reasoning in Rose's Stores and those other Courts of Appeals that have adopted the billing method approach.

**B.   Under The Billing Method, The Debtors Are Not Obligated To Pay Any Portion Of The Stub Rent Claim.**

40.   The Debtors submit that payment of the Stub Rent Claim under Bankruptcy Code section 365(d)(3) is neither required nor permissible based on the billing method.  Specifically, under Bankruptcy Code section 365(d)(3), "[t]he trustee shall perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed

19

or rejected, notwithstanding section 503(b)(1)."  11
U.S.C. § 365(d)(3) (emphasis added).

41.   In addition to the Fourth Circuit Court of
Appeals, the Third and Sixth Circuit Courts of Appeals,
as well as various lower courts throughout the country,
have adopted the billing method of determining those
obligations that "arise from and after" the petition date
for purposes of Bankruptcy Code section 365(d)(3).  See
Montgomery Ward, 268 F.3d at 209; Baby N'Kids, No. 07-
1606 at 3;[7] Koenig Sporting Goods, Inc. v. Morse Road
Co.(In re Koenig Sporting Goods), 229 B.R. 388 (B.A.P.
6th Cir. 1999); Inland's Monthly Income Fund, L.P. v.
Duckwall; In re Krystal Co., 194 B.R. 161, 163 (Bankr.
E.D. Tenn. 1996); In re F&M Distribs., Inc., 197 B.R. 829,
832 (Bankr. E.D. Mich. 1995); Alco Stores, Inc. (In re
Duckwall-Alco Stores, Inc.), 150 B.R. 965 (D. Kan. 1993);
In re Appletree Markets Inc., 139 B.R. 417, 420 (Bankr.
S.D. Tex. 1992).

42.   In Montgomery Ward, the Third Circuit
Court of Appeals held that "an obligation arises under a

---

[7]  Please see a copy of the Sixth Circuit Court of Appeals' order
and mandate, attached hereto as Exhibit A.

lease for the purposes of [Bankruptcy Code section] 365(d)(3) when the legally enforceable duty to perform arises." Id.  This reasoning has been extended to the stub rent context.  See Goody's, 392 B.R. at 608 (concluding, under Montgomery Ward, that stub rent was not a timely obligation under Bankruptcy Code section 365(d)(3)); In re DVI, Inc., 308 B.R. 703, 708 (Bankr. D. Del. 2004) (same); HQ Global, 282 B.R. at 173-74 (same).

43.   Under the terms of the Leases, rent for November was due on November 1, 2008 (i.e., prior to the Petition Date).  As the Movants must readily admit, payment of the November rent was legally enforceable on November 1, 2008.  Therefore, there is no post-filing obligation that the Debtors are legally obligated to perform because their obligation to pay November rent arose prior to the Petition Date.

44.   For these reasons, the Debtors should not be compelled to pay the Stub Rent Claim under Bankruptcy Code section 365(d)(3).

**C.   Payment Of The Stub Rent Claim Is Not Required Under Bankruptcy Code Section 503(b).**

21

45.   The Movants also seek the immediate payment of the Stub Rent Claim under Bankruptcy Code section 503(b), which the Debtors contend is inapplicable.

46.   The plain language of Bankruptcy Code section 365(d)(3) requires the Debtors to perform all of their obligations "arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1)."  11 U.S.C. § 365(d)(3) (emphasis added).  Consequently, section 365(d)(3) specifically renders Bankruptcy Code section 503(b) inapplicable to postpetition obligations under any unexpired lease of nonresidential real property.  Instead, the Debtors need only perform obligations arising from and after the Petition Date.  Under the billing method, because the Stub Rent Claim arose prepetition, Bankruptcy Code section 365(d)(3) does not require payment and Bankruptcy Code section 503(b)(1) is thus not applicable.[8]

---

[8]    Should this Court decline to adopt the billing method, the Debtors respectfully request that this Court nonetheless conclude
                                                                    *(cont'd)*

22

47.   In that regard, the Movants' assertion
that the Stub Rent Claim should be given 503(b)
administrative expense claim status ignores the fact that
a number of courts have held that a debtor's postpetition
obligations under nonresidential real property leases
should be made only with reference to Bankruptcy Code
section 365(d)(3), and not 503(b)(1).  See, e.g., Koenig
Sporting Goods, 203 F.3d at 989 n.2 (noting that "[a]
debtor's obligations under [Bankruptcy Code section]
365(d)(3) should not be analyzed by reference to the
principles governing administrative claims under
[Bankruptcy Code] section 503(b)(1)") (citing Towers v.
Chickering & Gregory (In re Pacific-Atlantic Trading Co.),
27 F.3d 401, 405 (9th Cir. 1994)); see also BK Novi
Project, L.L.C. v. Stevenson (In re Baby n' Kids Bedrooms,
Inc.), No. 06-15314, 2007 WL 1218768, at *4 (E.D. Mich.
April 24, 2007) (denying landlords request for the
payment of stub rent under Bankruptcy Code section
503(b)(1), after concluding that the Debtor's obligation

_____

*(cont'd from previous page)*
   that section 503(b) is inapplicable because the Stub Rent Claim
   is a prepetition claim.

to pay stub rent arose prepetition); Krystal, 194 B.R. at 164 (adopting the billing date approach and stating that "prerejection [tax] obligations are not to be viewed as administrative expenses").

48.   Under such case law, whether the Movants are ultimately entitled to the payment of their Stub Rent Claim depends entirely on whether the Debtors assume or reject the Leases. See 11 U.S.C. § 365(g)(1) ("the rejection of an . . . unexpired lease of the debtor constitutes a breach of such . . . lease . . . immediately before the date of the filing of the petition"). Specifically, if the Debtors assume the Leases, then the Debtors would be obligated to pay the Stub Rent Claim. See 11 U.S.C. § 365(b)(1)(A) ("the [Debtor] may not assume . . . [an unexpired] lease unless, at the time of assumption . . . , the [Debtor] cures . . . ."). However, if the Debtors reject the Leases, then the Stub Rent Claim may not be entitled to administrative expense claim status because such claims arose on November 1, 2008 and rejection makes such claims due "immediately before the date of filing of the petition." 11 U.S.C. § 365(g)(1).

24

49.   Therefore, for the reasons stated above,
the Debtors are not required to pay the Stub Rent Claim
under section 503(b).

**III. EVEN ASSUMING THAT BANKRUPTCY CODE SECTION 503(b)
      APPLIES, THE COURT SHOULD DENY THE MOVANTS' REQUEST
      FOR PAYMENT OF THE STUB RENT CLAIM.**

50.   As set forth above, payment of the Stub
Rent Claim is not justified under Bankruptcy Code section
365, and arguably, the Movants may not rely on Bankruptcy
Code 503(b).   However, even assuming that the Movants may
rely on Bankruptcy Code section 503(b), the Debtors
should not be required to pay the Stub Rent Claim.

51.   Administrative expense claims under
Bankruptcy Code section 503(b)(1)(A) are limited to "the
actual, necessary costs and expenses of preserving the
estate."   11 U.S.C. § 503(b)(1)(A).   Under the Bankruptcy
Code, as the party filing an administrative claim, the
Movants bear the burden of proving that their claim is
entitled to administrative priority under Bankruptcy Code
section 503.   See, e.g., In re MERRY-GO-ROUND ENTERPRISES
v. SIMON DEBARTOLO GROUP, 180 F.3d 149, 157 (4th Cir.
1999) (holding that the creditor "has the burden of
proving that its administrative claim for [] rent is an

25

actual and necessary expense"); Ford Motor Credit Co. v.
Dobbins, 35 F.3d 860, 866 (4th Cir. 1994) (same).

      52.   To carry their burden, the Movants must
demonstrate that (1) the expense and right to payment
arises from a postpetition transaction with the debtor,
and (2) the consideration supporting the right to payment
provides some benefit to the estate.  MERRY-GO-ROUND, 180
F.3d at 156; Stewart Foods v. Broecker (In re Stewart
Foods), 64 F.3d 141, 145 n.2 (4th Cir. Va. 1995); see
also CIT Commun. Fin. Corp. v. Midway Airlines Corp. (In
re Midway Airlines Corp.), 406 F.3d 229, 236 (4th Cir.
2005) (compiling cases that articulated substantially
similar standards).  This the Movants have not done, and
cannot do.

    **(1)**  **The Stub Rent Claim is not based on a
postpetition transaction with the Debtors.**

      53.   As set forth above, the Movants' Stub Rent
Claim is for obligations that became due and payable
prepetition under Leases that were entered into
prepetition.  The Movants have not, and cannot, identify
any postpetition transaction with the Debtors as debtors
in possession on which to base their claim under

Bankruptcy Code section 503(b)(1).  Consequently, even

assuming that Bankruptcy Code section 503(b) applies, the

Stub Rent Claim is not entitled to administrative

priority.  See, e.g., In re Unidigital, Inc., 262 B.R.

283, 288 (Bankr. D. Del. 2001)(MFW) (denying

administrative expense claim where the "only transaction

between the parties [wa]s the [prepetition] lease, which

the Debtors" rejected); In re Air S. Airlines, 2000 Bankr.

LEXIS 1725 (Bankr. D.S.C. Dec. 18, 2000) (denying

administrative expense claim where the only transactions

between the parties were a prepetition aircraft lease and

a postpetition consent order lifting the automatic stay).

> **(2)   The Stub Rent Claim does not constitute an
>         actual, necessary expense of preserving the
>         Debtors' estates.**

54.   The Movants also cannot satisfy their

burden to show that the Stub Rent Claim constitutes an

actual, necessary expense of preserving the Debtors'

estates.  Specifically, the Debtors plainly receive a

benefit from being permitted to occupy the leased

premises after the commencement of a chapter 11 case.

The fact that a debtor receives a post-petition benefit

as a result of a prepetition transaction is not, by

itself, sufficient to give rise to an administrative
expense claim under Bankruptcy Code section 503(b)(1).
Ford Motor Credit, 35 F.3d at 866 (holding that the
debtor must receive a "concrete" benefit); see also In re
Indiana Walnut Prods., 136 B.R. 522, 524 (Bankr. N.D. Ind.
1991).

55.  Instead, to grant an expense admin-
istrative priority under Bankruptcy Code section 503(b),
the Court must find that the expense was an actual
expense of the estate and that payment of the expense is
necessary to preserve the Debtors' estate.   See Ford
Motor Credit, 35 F.3d at 866 ("The modifiers 'actual' and
'necessary' must be observed with scrupulous care[.]"
(citation omitted)).

56.  The Debtors had no actual obligation to
make any rental payment to the Movants during the Stub
Rent Period; otherwise Bankruptcy Code section 365(d)(3)
would have applied.  In fact, the Debtors had no actual
expense or cost.  Actual means "existing in fact, real,
[or] current,"[9] and here the imputed Stub Rent Claim was

---

[9]   EUGENE EHRLICH ET AL., OXFORD AMERICAN DICTIONARY 8 (1980).

not a payment due or payable in fact.  Indeed, there was
no real or current amount due or payable to the Movants
during the Stub Rent Period.  Thus, any rental cost or
expense attributable to the Stub Rent Period is not an
actual expense or cost; rather it is an imputed expense
or cost for the Debtors' actual use of the leased
premises during the Stub Rent Period.

57.  Bankruptcy Code section 503(b)(1), however,
requires that the cost or expense be actual, not imputed
and, thus, the Movants' request that the Stub Rent Claim
be granted administrative expense priority under
Bankruptcy Code section 503(b)(1) should be denied.

58.  For similar reasons, the Stub Rent Claim
is not necessary costs or expenses of preserving the
Debtors' estates.  Specifically, the Stub Rent Claim is
not obligations of the Debtors arising postpetition.  See
Goody's, 392 B.R. 604 (concluding that rent obligations
due prior to the petition date are prepetition, not
postpetition obligations).

59.  Moreover, although a debtor receives a
postpetition benefit by occupancy, that fact alone does
not establish that the cost or expense attributable to

29

the Stub Rent Period is a necessary cost or expense.  See
Ford Motor Credit, 35 F.3d at 867 (mere occupancy of
leased premises is not sufficient to satisfy the
"necessary" requirement of section 503(b)); see also In
re Mid-Region Petroleum, 1 F.3d 1130, 1132 (10th Cir.
1993) (possession of railcars is not sufficient to
satisfy the "necessary" requirement of section 503(b)).
Necessary means "essential in order to achieve something
[or] unavoidable, happening or existing by necessity."[10]
In no ordinary sense of the word "necessary" is the
payment of the Movants' Stub Rent Claim essential to
preserving the estate, unavoidable or something that had
to be done by necessity, as it cannot be successfully
argued that the value of the Debtors' estate is
diminished if the Stub Rent Claim is simply a prepetition
unsecured claim.  See, generally, Baby N'Kids, No. 07-
1606 at 3 (ruling, in affirming the district and
bankruptcy courts, that "because the obligation to pay
rent for June 2006 arose pre-petition, BK Novi's claim
for rent owing for the entire month of June 2006 is not

---

[10]  EUGENE EHRLICH ET AL., OXFORD AMERICAN DICTIONARY 444 (1980).

entitled to priority as an administrative expense under §
503(b)(1)").  As recognized by the Sixth Circuit in Baby
N'Kids, rent owing for the entire month of June is a
prepetition obligation; and, therefore cannot be an
actual and necessary cost or expense.   Id.

       60.  Thus, the only sense in which the Stub
Rent Claim is a "necessary" expense of preserving the
estate, is that courts have determined that it is
equitable for a debtor to pay for the benefit of using
and occupying leased premises during the Stub Rent Period.
That benefit does not make the imputed rental cost or
expense "necessary" to preserve the estate and certainly
cannot be the basis for elevating a pre-petition
unsecured claim to an allowed administrative expense
under Bankruptcy Code section 503(b).  See Norwest Bank
Worthington v. Ahlers, 485 U.S. 197, 206 (1988) (stating
that "whatever equitable powers remain in the bankruptcy
courts must and can only be exercised within the confines
of the Bankruptcy Code"); U.S. Trustee v. Columbia Gas
Sys. Inc. (In re Columbia Gas Sys. Inc.), 33 F.3d 294,
302 (3d Cir. 1994) (noting that "the bankruptcy court
cannot waive or modify Bankruptcy Code requirements that

are plain and unambiguous because it agrees with the

policy underlying [a party's] arguments").

61.   Consequently, the Court should deny the

Motions.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) sustain this Objection, (ii) deny the Motions and (iii) grant the Debtors such other and further relief as is just and proper.

Dated: December 3, 2008
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley                    .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and
Debtors in Possession

33

635361-Chicago Server 1A - MSW