Gregg M. Galardi, Esq.      Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.     Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                    One James Center
One Rodney Square          901 E. Cary Street
PO Box 636               Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

        - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
Circuit City Stores, Inc.,  :   Case No. 08-35653(KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x
```

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS AND IN SUPPORT OF
MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. §§ 105(A), 365(A), AND 554 AND FED. R. BANKR. P.
6006 AUTHORIZING REJECTION OF UNEXPIRED LEASES OF
NONRESIDENTIAL REAL PROPERTY AND ABANDONMENT OF PERSONAL
PROPERTY EFFECTIVE AS OF PETITION DATE**

The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors"),[1]

---

[1]  The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
*(cont'd)*

hereby submit their omnibus reply (the "Reply") in response to the Objections (as defined below) and in support of the Motion.[2]  In support of the Reply, the Debtors respectfully represent:

**BACKGROUND**

1.   On the Petition Date, the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

2.   Concurrently with the filing of the petitions, the Debtors filed the Motion, which sought rejection of the Lease effective as of the Petition Date.

---

*(cont'd from previous page)*

Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a), 365(a) and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection on Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective As of the Petition Date filed on November 10, 2008 (Docket No. 21).

3.    On the Petition Date, this Court held a hearing on the Motion and, following the hearing, entered an order granting the relief requested in the Motion (D.I. 81, the "Rejection Order").  Pursuant to the Rejection Order, the Court authorized rejection of Leases and abandonment of personal property effective as of the Petition Date, provided "the Debtors surrender possession no later than November 12, 2008."  Rejection Order ¶ 3.

4.    Pursuant to the Rejection Order, all parties seeking to object to the relief requested in the Motion were required to file an objection on or before November 20, 2008, at 4:00 p.m. (EST)(the "Objection Deadline").

5.    The Debtors received 18 objections (D.I.s. 229, 246, 247, 255, 256, 257, 259, 260 (as amended, 437), 271, 275, 276, 277, 342, 351, 354, 368, 378, and 574 (as amended, 576); collectively, the "Objections") from various Landlords and certain subtenants (the "Subtenant Objectors", collectively with the Landlords, referred as the "Objectors").

6.    For the Court's convenience, the Objections are summarized in the chart attached hereto as

Exhibit A and the Debtors' responses to each Objection
are also summarized therein.  To further aid the Court's
review of these matters, the Debtors have also addressed
certain aspects of the Objections in detail herein.

7.   For the reasons set forth below and on
Exhibit A, the Debtors request this Court overrule the
Objections to the Motion.

**REPLY**

8.   At its core, the Motion seeks two forms of
relief:  (1) rejection of the Leases; and (2) abandonment
of any personal property remaining at the Premises.  For
their part, the Objectors find numerous problems with the
relief requested.  In particular, the Objectors contend
that the Debtors:  (1) did not surrender the Premises as
of the Petition Date (or November 12, 2008); (2)
retroactive rejection to the Petition Date is not
warranted; (3) should be compelled to pay "stub" and
other rent under Bankruptcy Code section 365(d)(3) or
503(b); (4) should be compelled to pay the repair costs,
storage costs, and the cost of removal of Abandoned
Property under Bankruptcy Code section 365(d)(3) or
503(b); and (5) the Debtors should be compelled to pay

taxes, CAM charges, insurance premiums and reimburse

security deposits to the sublessees as under Bankruptcy

Code section 365(d)(3) or 503(b).

9.    However, each of the Objections is

meritless and should be overruled.

**I.    THE DEBTORS SURRENDERED POSSESSION OF THE PREMISES AS OF THE PETITION DATE.**

10.   Although the Landlords rely on different

facts and circumstances to support their Objections,

their primary argument is that the Debtors did not comply

with the Bankruptcy Code by surrendering the Premises to

the Landlords.

11.   Under Bankruptcy Code section 365, the

Debtors only duty upon rejection is to surrender the

Premises.  See 11 U.S.C. § 365(d)(4) (providing that,

upon rejection, "the trustee shall immediately surrender

[the] nonresidential real property to the lessor").

"Surrender" is not defined in the Bankruptcy Code and has

been interpreted by courts differently depending on the

facts and circumstances.

12.   Where the debtor is a lessee and no sub-

tenancy exists, courts have concluded that providing

notice of rejection to the landlord and vacating the premises constitutes surrender of the premises.  Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 608 (2d Cir. 2007) (noting that the bankruptcy court properly considered the fact that the debtor vacated the premises); Chatlos Sys., Inc. v. Kaplan, 147 B.R. 96, 99 (D. Del. 1992) (noting that surrender is effective if the debtor/lessee in possession of the premises provides notice, vacates the premises and turns the premises over to the landlord).

13.    On the other hand, where the debtor is a lessee under a master lease and a lessor under a sublease, the master lease is surrendered if the debtor provides notification of its intent to reject to the master lessor and the sublessee.  In re Kmart Corp., 290 B.R. 601 (Bankr. N.D. Ill. 2002) (holding that the debtor's rejection notification to both the master lessor and the sublessee fulfilled its statutory obligation under section 365(d)(4) of the Bankruptcy Code to the "surrender" the leased property); Chatlos Sys., 147 B.R. at 99 (same).

14.   In both contexts, the Debtors satisfied the requirements and surrendered possession of the Premises.

**A.   The Debtors Surrendered Possession Of The Premises For Those Locations That Were Not Sublet.**

15.   As discussed above, to surrender the Premises that were not sublet, the Debtors are required to provide notice of rejection to the Landlords, vacate the Premises, and turn the Premises over to the Landlords. Here, the Debtors went above and beyond the requirements.

16.   Specifically, as of the Petition Date (but in no event later than November 12), the Debtors surrendered possession of the Premises by: (1) vacating the Premises prior to the Petition Date; (2) filing the Motion on the Petition Date wherein the Debtors sought rejection effective as of the Petition Date; (3) providing notice of the "first-day" hearing, and in particular the Motion, by facsimile on the Petition Date to each of the Landlords;[3] (4) stating, through their

---

[3]   One of the Objectors, Inland Commercial, did not receive notice of the Motion nor a copy of the Order on November 10, 2008. However, the notice provided to Inland US, an affiliate of Inland Commercial with the same address as its national headquarters and *(cont'd)*

counsel, in open court on the record at the hearing that
the Debtors unequivocally surrendered possession of the
Premises to the Landlords; (5) serving each of the
Landlords with a copy of the Rejection Order on November
10, 2008; and (6) returning the keys in the Debtors'
possession and providing security codes to the Objectors
within 24 hours of any request.[4]  See Affidavit of
Service of Evan Gershbein (Docket No. 119) (identifying
the parties that were served with the notice of first day
hearing); Affidavit of Service of Evan Gershbein (Docket
No. 172) (identifying those parties that were served with
the Motion and the Rejection Order).

    17.  Generally, the relevant Landlords do not
dispute these facts.  Instead, such Landlords contend
that the failure to return the keys or provide the
security codes immediately upon request were fatal to the
Debtors' attempts to surrender the Premises.  However, as
noted in Exhibit A, if the Debtors had the keys, they

---

*(cont'd from previous page)*
    also represented by the same counsel in this matter, provided
    Inland Commercial with actual knowledge that the Debtors had
    rejected the Lease.

[4]  In a few instances, as noted in Exhibit A, the Debtors were
    unable to return the keys to the Landlords.

were returned by November 12, 2008, which, under the
Rejection Order, was all that was required.  Similarly,
the Debtors provided security codes to such Objectors
within 24 hours of a request.  These facts, coupled with
the undisputed facts set forth above, overwhelmingly
favor a conclusion that the Debtors surrendered the
Premises that were not subject to a sub-lease.

### B.   The Debtors Surrendered Possession Of All Sublet Premises.

18.   As discussed above, where the debtor is a
lessee under a master lease and a lessor under a sublease,
the premises are surrendered if the debtor provides
notification of its intent to reject to the master lessor
and the sublessee.  To satisfy the notification
requirement, the Debtors performed all of the acts
discussed above with the exception acts the Debtors were
incapable of performing.

19.   Again, the relevant Objectors do not
dispute these facts.  Instead, such Objectors contend
that the Debtors did not surrender the Premises because,
among other things, a sub-tenant remained in possession,
the Debtors did not return the keys, or the Debtors

retained possession of prepetition sublease obligations.
But, for the following four reasons, such objections are
not valid bases to contest surrender under Bankruptcy
Code section 365(d)(4) in this context.

20.  First, as noted above, all that the
Debtors were legally obligated to do was provide notice,
which the Debtors did.  The Objectors do not dispute this
fact.

21.  Second, assuming the Debtors were legally
obligated to do more, it is abundantly clear that the
Debtors have no duty to evict a sublessee from the
Premises.  In re Kmart Corp., 290 B.R. at 607 (holding
that the debtors do not need to evict or physically
remove the subtenant to fulfill its duty to surrender the
premises to the master lessor).  Indeed, under applicable
law, the Debtors are incapable of evicting a sublessee
from the Premises.  Chatlos Systems, 147 B.R. at 100
(finding that once a lease is rejected, the debtors have
no statutory, contractual or possessory rights in the
property and therefore have no basis for an eviction
against a subtenant); In re Dial-A Tire, Inc., 78 B.R. 13,
16 (Bankr. W.D.N.Y. 1987) (discussing that once the

primary lease and the sublease have been rejected, the bankruptcy court has no meaningful interest in the ultimate disposition of the premises and "should refrain from deciding a property dispute between creditors whose resolution involves state law questions having no necessary relation to the bankruptcy proceeding"). Because the Debtors have no such duty, the Objectors' contentions that surrender was not effective because subtenants remained in possession are misplaced.

22.   Third, the Debtors were unable to provide keys or security codes to the Landlords because, frankly, the keys and security codes were within the rightful and legal possession of others -- the subtenants.  Requiring the Debtors to obtain the keys and security codes from the sublessees and deliver them to the Landlords is akin to requiring the Debtors to evict the sublessees, which is prohibited by law.   See, generally, Chatlos Systems, 147 B.R. at 100.

23.   Fourth, and finally, the Debtors are under a legal obligation not to pay prepetition claims.  E.g., In re the Matter of Oxford Management, 4 F.3d 1329, 1333-34 (5th Cir. 1993) (finding that the elevation of a

prepetition general unsecured claim to administrative
priority effectuated an unpermissible alteration of the
Bankruptcy Codes' provisions).  Here, the subtenants made
rent payments to the Debtors prior to the Petition Date
for prepetition occupancy.  In turn, the Debtors were
obligated to pay rent to the Landlords for the same
periods, which the Debtors allegedly failed to do.
Consequently, the relevant Subtenant Objectors (and the
associated Landlords) have prepetition claims.  As such,
the Debtors are legally obligated <u>not</u> to pay such amounts.
Accordingly, it follows that failure to pay such amounts
cannot constitute a basis upon which to assert that the
Debtors did not surrender the Premises under section
365(d)(4).

     24.  For the reasons stated above, the Court
should find that the Debtors have fulfilled their duty
under section 365(d)(4) of the Bankruptcy Code and
properly surrendered the Premises to the Landlords as of
the Petition Date (but in no event later than November 12,
2008).

**II.   THE LEASES SHOULD BE DEEMED REJECTED EFFECTIVE AS OF
        THE PETITION DATE.**

25.   Although section 365 of the Bankruptcy
Code does not specifically address whether the Court may
order rejection to be effective retroactively, courts
throughout the country have consistently held that
retroactive rejection is warranted where landlords
receive adequate notice.  See, e.g., Adelphia, 482 F.3d
at 608-09(holding that the bankruptcy court did not abuse
its discretion when ordering retroactive rejection of the
leases where the lessor was on notice to seek out a new
tenant); Pac. Shores Dev., LLC v. At Home Corp. (In re At
Home Corp.), 392 F.3d 1064, 1073 (9th Cir. 2004)
(concluding that possession of the premises by the
landlord is not a precondition to rejection; notice of
the rejection may alone be sufficient); In re Amber's
Stores, 193 B.R. 819 (Bankr. N.D. Tx. 1996) (ordering the
effective date of rejection retroactive to the date the
notice of rejection was filed based on vacation of the
premises as of the petition date); In re Spiess Co., 145
B.R. 597 (Bankr. N.D. Ill. 1992) (finding that the
rejection of a lease should be retroactive to the date

that the debtor takes affirmative steps to reject, such
as serving notice of a motion to reject).

26.   Courts, including courts in this district,
have set the rejection date as of the date that the
notice of motion was filed because that is the moment the
landlord receives unequivocal notice of the debtor's
intent to reject the lease.   See, e.g., In re Movie
Gallery, Inc., Case No. 07-33849 (Bankr. E.D. Va. Nov. 17,
2007) (establishing the rejection date is as of the date
the notice of motion was filed); In re US Airways Group,
Inc., Case No. 02-83984 (Bankr. E.D. Va. Aug. 12, 2002)
(same); see also In re Calpine Corp., Case No. 05-60200
(Bankr. S.D.N.Y. Dec. 21, 2005) (same); see also In re
CGI Wireless, LLC, 297 B.R. 133 (D. Colo. 2003) (holding
that the bankruptcy court has authority under section
365(d)(3) to set the effective date of the rejection as
early as the filing date of the rejection motion); In re
Amber's Stores, 193 B.R. at 827 (same); In re Spiess Co.,
145 B.R. at 606 (same).

27.   As discussed more fully above, the Debtors
notified the Objectors of the Motion and the Rejection
Order through various means, including service of notice

14

of the first day hearing, the Motion and the Rejection

Order.  Both the Motion and the Rejection Order made

clear that the Debtors unequivocally intended to reject

the Leases on the Petition Date.

28.  Accordingly, the Petition Date should be

the effective date of the rejection of the Leases.

**IV.  PAYMENT OF STUB RENT IS NOT REQUIRED FOLLOWING
REJECTION OF THE LEASES.**

29.  The Debtor's liability to pay rent to the

Landlords ceases upon the Debtors' rejection of the

Leases.  Certain Objectors assert (or at least reserve

the right to assert) that they are entitled to payment of

rent and other obligations for the period from November

10, 2008 through November 30, 2008 (the "Stub Rent

Claim").  Because rejection is effective as of the

Petition Date, the Stub Rent Claim arose prepetition and

neither Bankruptcy Code section 365(d)(3) nor 503(b)(1)

is applicable or requires payment.[5]  Instead, the Stub

---

[5]   In connection with various motions seeking immediate payment of
"stub" rent and other obligations, the Debtors filed the Debtors'
Omnibus Objection To The Motions Pursuant To 11 U.S.C. §§ 365(A)
And 503(B) To Compel Allowance And Payment Of Post-Petition
Rental Obligations As Administrative Expenses (Docket No. 641)
(the "Omnibus Objection").  With respect to the Stub Rent Claims,
the Debtors hereby incorporate by reference all of the arguments
*(cont'd)*

Rent Claim is governed by Bankruptcy Code sections 365(g) and 502(g).

30.    Together, Bankruptcy Code sections 365(g) and 502(g) govern the treatment of claims resulting from or arising out of rejection of a lease.  Section 365(g) provides, in pertinent part, that "the rejection of an unexpired lease of the debtor constitutes a breach of such . . . lease . . . immediately before the date of the filing of the petition."  11 U.S.C. § 365(g).  Section 502(g)of the Bankruptcy Code states in relevant part that, "a claim arising from the rejection, under 365 of this title . . . of an . . . unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed . . . or disallowed . . . the same as if such claim had arisen before the date of the filing of the petition."  11 U.S.C. § 502(g).

31.    Because the Debtors rejection of the Leases became effective as of the Petition Date, under section 365(g) the Leases were all deemed breached

---

*(cont'd from previous page)*
    advanced in the Omnibus Objection as if such arguments were fully
    set forth herein.

prepetition and under section 502(g) claims resulting

from such rejection are prepetition claims.   See 11 U.S.C.

§§ 365(g), 502(g).

32.   Accordingly, the Objections that seek

payment of the Stub Rent Claim should be overruled.

**V.    REPAIR COSTS, STORAGE COSTS AND COSTS ASSOCIATED
WITH REMOVAL OF ABANDONED PROPERTY ARE NOT
ADMINISTRATIVE EXPENSES.**

33.   Certain Landlords assert that Abandoned

Property remained at the Premises and the costs

associated with storage and removal should be afforded

administrative expense status.   Other Objectors assert

that certain repair costs should be treated similarly.

However, such costs are prepetition claims for which the

Objectors will be paid in accordance with applicable

provisions of the Bankruptcy Code.

34.   Courts have consistently held that repair

costs and storage or removal costs are not administrative

expenses if the associated lease has been rejected.   See

In re Motel Investments of Christiansburg LLC, 307 B.R.

536 (Bankr. W.D. Va. 2004) (holding the administrative

expense claims are intended to encourage and rewards

creditors who do business with the Debtors after the

17

petition date); In re Ames Department Stores, Inc., 306
B.R. 43 (Bankr. S.D.N.Y. 2004) (holding that any
requirement that forces the debtors to pay the
prepetition obligation of removing abandoned property as
an administrative expense would eviscerate the provisions
of the Bankruptcy Code that enables the debtors to
relieve themselves of post-petition obligations under
burdensome executory contracts); In re Unidigital, Inc.,
262 B.R. 283 (Bankr. D.Del. 2001) (finding that the
creditor was not entitled to administrative expense costs
for cleaning up the leased premises or for the removal of
abandoned property because neither would confer any
substantial benefit on the debtors or the debtors'
estates).

35.   Accordingly, this Court should overrule
the Objections that assert claims for the payment of
repair costs and storage or removal costs as
administrative expenses, as such claims are prepetition
claims.

**VI. SUBTENANT CLAIMS ARE NOT ENTITLED TO ADMINISTRATIVE
PRIORITY AND SUBTENANTS ARE PRECLUDED FROM ASSERTING
ANY CLAIMS, ADMINISTRATIVE OR OTHERWISE, FOR SECURITY
DEPOSITS OR AMOUNTS PAID TO THE DEBTORS PREPETITION.**

36.   The Subtenant Objectors contend that
security deposits and rent and other amounts due under
the applicable Leases (collectively, the "Subtenant
Claims") that were paid to the Debtors prior to the
Petition Date should be afforded administrative priority
for the "stub" period.  However, "[a]ll claims associated
with the rejection of the lease are deemed prepetition
claims."  In re Unidigital, Inc., 262 B.R. at 288.
Accordingly, the Subtenant Claims are prepetition claims,
which are not entitled to administrative priority.

37.   Moreover, in the context of sub-tenancies,
once a subtenant elects to stay on the Premises following
the rejection of a Lease, the sub-tenant may not assert a
claim, administrative or otherwise, against the Debtors
for any claim arising after the rejection of the Lease.
See 11 U.S.C. § 365(h)(1)(B).  Section 365(h)(1)(B), in
relevant part, provides that:

> the lessee may offset against the rent reserved
> under such lease for the balance of the term
> after the date of the rejection of such lease
> and for the term of any renewal or extension of

> such lease, the value of any damage cause by
> the non-performance after the date of such
> rejection, of any obligation of the debtor
> under such lease, but the lessee shall not have
> any other right against the estate or the
> debtor on account of any damage occurring after
> such date caused by such nonperformance.

11 U.S.C. § 365(h)(1)(b).

     38.  In light of section 365(h), regardless whether the Subtenant Claims are prepetition or postpetition claims, the subtenants are not permitted to assert such claims against the Debtors' estates.  Instead, the subtenants sole remedy is offset.  <u>See</u> 11 U.S.C. § 365(h)(1)(B).

     39.  Accordingly, this Court should overrule these Objections.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request
that the Court overrule the Objections to the Motion and
grant such other and further relief as may be just and
proper.

Dated: December 3, 2008
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley            .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel for Debtors and
Debtors in Possession

EXHIBIT A

634470-Chicago Server 1A - MSW

**Exhibit A**

**Objections To The Debtors' Motion For Order Pursuant to 11 U.S.C. §§ 105(a), 365(a) And 554 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Unexpired Leases Of Nonresidential Real Property And Abandonment Of Personal Property Effective As Of The Petition Date[1]**

**Organized By Objector[2]**

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 1. | 229 | Landover (Landover Crossing) LLC ("Landover") | (a) Landover asserts that the Debtors have not surrendered the Premises because Landover has not received keys or key codes to the Premises. | • The Debtors surrendered the Premises to Landover on the Petition Date when they filed the Lease Rejection Motion, notified Landover of their unequivocal intent to reject the Lease, and provided Landover with a copy of the Order granting the Lease Rejection Motion on November 10, 2008.  See Reply Section I(B).<br><br>• The Debtors are not in possession of keys or key codes because the Premises have been fully subleased. |
| | | | (b) Landover asserts that the Debtors have not surrendered the Premises because a sublessee occupies the Premises. | • The Debtors have informed the sublessee of its unequivocal intent to reject the Lease and the sublease and provided the sublessee with a copy of the Order granting the Lease Rejection Motion on November 10, 2008.  See Reply Section I(B).<br><br>• The Debtors have no affirmative duty to evict the sublessee from the Premises.  See Reply Section I(B). |
| | | | (c) Landover objects to the Rejection Date being the date the Motion was filed. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Landover received unequivocal notice of the Debtors' intent to reject the lease.  See Reply Section II. |
| 2. | 246 | Cardinal Capital Partners Inc. (and affiliate Circuit Distribution-IL LP) ("Cardinal") | (a) Cardinal demands Debtors assume and assign the lease and sublease to Cardinal. | • The Debtors are working with Cardinal to resolve this matter.  To the extent the matter is not resolved, the Debtors will address this objection at the Hearing. |

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2]   This chart reflects all objections entered on the docket as of December 3, 2008.  The status of resolution of certain objections is as of December 3, 2008.

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (b) Cardinal objects to the Rejection Date being the date the Motion was filed. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Cardinal received unequivocal notice of the Debtors' intent to reject the lease. See Reply Section II. |
| 3. | 247 | The Balough Companies (and affiliates Circuit Investors #2 Ltd., CC Investors 1996-17) ("Balough") | (a) Balough demands Debtors assume and assign the lease and sublease to Balough. | • The Debtors are working with Balough to resolve this matter. To the extent the matter is not resolved, the Debtors will address this objection at the Hearing. |
| | | | (b) Balough objects to the Rejection Date being the date the Motion was filed. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Balough received unequivocal notice of the Debtors' intent to reject the lease. See Reply Section II. |
| 4. | 255 | The Leben Family LP ("Leben") | (a) Leben asserts that the Debtors have not surrendered the Premises because Leben has not received keys to the Premises. a sublessee occupies the Premises and the Debtors remain in possession of rental income for the leased Premises. | • The Debtors surrendered the Premises to Leben on the Petition Date when they filed the Lease Rejection Motion, notified Leben of their unequivocal intent to reject the Lease, and provided Leben with a copy of the Order granting the Lease Rejection Motion on November 10, 2008. See Reply Section I(B). <br> • The Debtors are not in possession of keys or key codes because the Premises have been fully subleased. |
| | | | (b) Leben asserts that the Debtors have not surrendered the Premises because Leben has not received keys to the Premises. | • The Debtors have informed the sublessee of its unequivocal intent to reject the Lease and the sublease and provided the sublessee with a copy of the Order granting the Lease Rejection Motion on November 10, 2008. See Reply Section I(B). <br> • The Debtors have no affirmative duty to evict the sublessee from the Premises. See Reply Section I(B). |
| | | | (c) Leben asserts that the Debtors have not surrendered the Premises because the Debtors remain in possession of rental income for the subleased Premises. | • Leben has a prepetition claim for any rental payments paid prior to the Petition Date. As prepetition claims, the Debtors have a legal obligation <u>not</u> to return amounts on account of such claims. See Reply Section I(B). |
| | | | (d) Leben objects to the Rejection Date being the date the Motion was filed. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Leben received unequivocal notice of the Debtors' intent to reject the lease. See Reply Section II. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (e) Leben demands the payment of Stub Rent, insurance premiums and real estate taxes as an administrative expense. | • Leben's demands for Stub Rent, insurance premiums and real estate taxes are merely prepetition claims.  See Reply Section IV.<br>• Because Leben elected to remain in possession of the Premises, Leben is precluded from asserting any claims, administrative or otherwise, against the Debtors' estates.  See Reply Section VI. |
| 5. | 256 | Inland US Management LLC ("Inland US") | (a) Inland US asserts that the Debtors have not surrendered the Premises because the keys to the Premises were returned six days late. | • The Debtors surrendered the Premises to Inland US on the Petition Date when they filed the Lease Rejection Motion, notified Inland US of their unequivocal intent to reject the Lease, and provided Inland US with a copy of the Order granting the Lease Rejection Motion on November 10, 2008.  See Reply Section I(B).<br>• The Debtors sent the keys to Inland US via FedEx overnight mail on November 11, 2008, in accordance with the Court's order and received delivery confirmation on November 12, 2008. |
| | | | (b) Inland US asserts that the Debtors have not surrendered the Premises because Debtors' security system is still active and Inland US has been unable to obtained the security codes. | • On November 20, 2008, upon receipt of Inland US's objection, Debtors' counsel provided Inland US with the security codes for the Premises via telephone. |
| | | | (c) Inland US desires to preserve its right to request allowance of an administrative expense claim with respect to repair costs and/or costs of any removal of abandoned personal property. | • No response is necessary; nevertheless, such costs are prepetition claims for which Inland US will be paid in accordance with applicable provisions of the Bankruptcy Code.  See Reply Section V. |
| 6. | 257 | CK Richmond Business Services #2 LLC ("CK") | (a) CK demands Debtors assume and assign the lease and sublease to CK. | • The Debtors are working with CK to resolve this matter.  To the extent the matter is not resolved, the Debtors will address this objection at the Hearing. |
| | | | (b) CK asserts that the Debtors have not surrendered the Premises because the Debtors are holding the rent tendered to the Debtors by sublessee. | • CK has a prepetition claim for any rental payments paid prior to the Petition Date.  As prepetition claims, the Debtors have a legal obligation not to return amounts on account of such claims.  See Reply Section I(B). |

| | **DOCKET NO.** | **OBJECTOR** | **SUMMARY OF OBJECTION** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|---|---|
| 7. | 259 | Inland Commercial Property Management Inc. ("Inland Commercial") | (a) Inland Commercial asserts that the Debtors have not surrendered the Premises because it has not received the keys to the Premises. | • The Debtors surrendered the Premises to Inland Commercial on the Petition Date when they filed the Lease Rejection Motion. The Debtors acknowledge that Inland Commercial was not provided with a copy of the Order granting the Lease Rejection Motion. The Debtors believed that a different entity was the Landlord for the Premises and provided that other entity - rather than Inland Commercial - with a copy of the Order. However, Inland Commercial received notice of the Motion and the Order and, consequently, unequivocal notice of the Debtors' intent to reject the Lease, when a copy of the Motion and the Order was provided to its affiliate, Inland US, located at the same national headquarters and represented by the same counsel in this matter. See Reply Section I(B). <br><br>• Due to the same mistaken belief that a different entity was the Landlord for the Premises, the Debtors acknowledge that the keys sent November 11, 2008 and received November 12, 2008 were delivered to that other entity rather than Inland Commercial. On November 17, 2008, immediately upon realization of their mistake, even prior to the filing of Inland Commercial's objection, the Debtors sent the keys to the Premises to Inland Commercial and received a confirmation of delivery by Federal Express on November 18, 2008. |
| | | | (b) Inland Commercial asserts that the Debtors have not surrendered the Premises because it has not received information regarding contracts relating to the Premises, status of annual inspections or information regarding utilities at the Premises. | • Notwithstanding the fact that providing such information is by no means required to surrender possession, the Debtors provided Inland Commercial with all of the information requested within 24 hours of receiving its request. |
| | | | (c) Inland Commercial desires to preserve its right to request allowance of an administrative expense claim with respect to repair costs and/or costs of any removal of abandoned personal property. | • No response is necessary; nevertheless, such costs are prepetition claims for which Inland Commercial will be paid in accordance with applicable provisions of the Bankruptcy Code. See Reply Section V. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 8. | 260, 437 | Carrollton Arms LLC ("Carrollton") | (a) Carrollton objects to the Rejection Date being the date the Motion was filed. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Carrollton received unequivocal notice of the Debtors' intent to reject the lease.  See Reply Section II. |
| | | | (b) Carrollton asserts that the Debtors have not surrendered the Premises because a sublessee occupies the Premises. | • The Debtors surrendered the Premises to Carrollton on the Petition Date when they filed the Lease Rejection Motion, notified Carrollton of their unequivocal intent to reject the Lease, and provided Carrollton with a copy of the Order granting the Lease Rejection Motion on November 10, 2008.  See Reply Section I(B).
• The Debtors have informed the sublessee of its unequivocal intent to reject the Lease and the sublease and provided the sublessee with a copy of the Order granting the Lease Rejection Motion on November 10, 2008.  See Reply Section I(B).
• The Debtors have no affirmative duty to evict the sublessee from the Premises.  See Reply Section I(B). |
| | | | (c) Carrollton alleges that the Debtors are obligated to remove the sublessee's property from the Premises.  . | • The Debtors have no such duty nor authority to remove the personal property of the sublessee.  The Debtors have surrendered the Premises to Carrollton by notifying Carrollton and the sublessee that the Lease and sublease were rejected.  See Reply Section I (B). |
| | | | (d) Carrollton alleges that the Debtors are obligated to pay for the removal of the sublessee's personal property. | • See Response to 8(c). |
| | | | (e) Carrollton demands an administrative expense claim for costs to repair the Premises. | • Such repair costs are prepetition claims for which Carrollton will be paid in accordance with applicable provisions of the Bankruptcy Code.. See Reply Section V. |
| 9. | 271 | Premier Retail Interiors Inc. ("Premier") | (a) Premier objects to the Rejection Date being the date the Motion was filed because the Debtors have not refunded Premier's security deposit. | • Premier's demand for a refund of its security deposit is a prepetition claim.  See Reply Section VI.
• Because Premier elected to remain in possession of the Premises, Premier is precluded from asserting any claims, administrative or otherwise, against the Debtors' estates.  See Reply Section VI. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (b)  Premier objects to the Rejection Date being the date the Motion was filed because the Debtors have accepted rent and payments of taxes and insurance for November 2008. | • Premier's prepetition rent, tax and insurance payments are prepetition claims.  See Reply Section VI.<br><br>• Because Premier elected to remain in possession of the Premises, Premier is precluded from asserting any claims, administrative or otherwise, against the Debtors' estates.  See Reply Section VI. |
| | | | (c)  Premier objects to the Rejection Date being the date the Motion was filed because it is allegedly unable to lease the space from the current owner of the Premises. | • Nothing about the Debtors' rejection precludes Premier from leasing the space from the current owner of the Premises. |
| | | | (d)  Premier desires to preserve its right to request allowance of an administrative expense claim with respect to recovery of the security deposit, the refund of payments for taxes and insurance which the Debtors have not passed on to the tax collector or insurers, and for the repair costs. | • No response is necessary, nevertheless, see Responses to 9(a) and 9(b). |
| 10. | 275 | Dick's Sporting Goods Inc. ("Dicks") | (a)  Dick's objects to the Rejection Date being the date the Motion was filed because Dick's had already made payment for November 2008 obligations due under the Sublease with the Debtors. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Dick's received unequivocal notice of the Debtors' intent to reject the lease.  See Reply Section I(B).<br><br>• The Debtors have a legal obligation <u>not</u> to return prepetition rent.  See Reply Section I(B) |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 11. | 276 | Generation One and Two LP; Cohab Realty LLC; Kimco Realty Corp.; Chung Hee Kim (Ridgehaven Plaza Shopping Center); CC Investors 1995-6; Union Square Retail Trust; Gateway Center Properties III LLC, and SMR Gateway III LLC as tenants in common; Whitestone Development Partners LP; KRG Market Street Village LP; International Speedway Square Ltd.; Kite Coral Springs LLC; and Fishers Station Development Co. ("Generation") | (a)  Generation asserts that the Debtors have not surrendered the Premises because the Debtors have not completely vacated or made the Premises available by, among other things, failing to disarm security systems and remove personal property. | • Upon information and belief, none of the leases of Generation were subject to the Motion and Order. Accordingly, Generation has no standing to object. |
| 12. | 277 | Golf Galaxy Inc ("Galaxy") | (a)  Galaxy objects to the Rejection Date being the date the Motion was filed because Galaxy had already made payment for November 2008 obligations due under the Sublease with the Debtors. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Galaxy received unequivocal notice of the Debtors' intent to reject the lease. See Reply Section I(B). <br> • The Debtors have a legal obligation <u>not</u> to return prepetition rent. See Reply Section I(B). |
| 13. | 342 | OLP 6609 Grand LLC ("OLP") | (a)  OLP demands Debtors assume and assign the lease and sublease to OLP. | • The Debtors are working with OLP to resolve this matter. To the extent the matter is not resolved, the Debtors will address this objection at the Hearing. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (b) OLP asserts that the Debtors have not surrendered the Premises because a sublessee occupies the Premises. | • The Debtors surrendered the Premises to OLP on the Petition Date when they filed the Lease Rejection Motion, notified OLP of their unequivocal intent to reject the Lease, and provided OLP with a copy of the Order granting the Lease Rejection Motion on November 10, 2008.  See Reply Section I(B).<br><br>• The Debtors have informed the sublessee of its unequivocal intent to reject the Lease and the sublease and provided the sublessee with a copy of the Order granting the Lease Rejection Motion on November 10, 2008.  See Reply Section I(B).<br><br>• The Debtors have no affirmative duty to evict the sublessee from the Premises.  See Reply Section I(B). |
| 14. | 351 | Dollar Tree Stores Inc. ("Dollar") | (a) Dollar alleges improper notice, in that it received a fax whereas its sublease provide for notice by mail or overnight delivery. | • Dollar contacted Debtors' counsel on November 12, 2008 and had reviewed the motion, so was clearly aware of the motion.<br><br>• Dollar was given an extension to November 24, 2008 to respond-- twelve days--whereas other parties had only ten days to respond, so objector was not prejudiced.<br><br>• Moreover, counsel for Dollar acknowledges that his client received notice by fax. |
| | | | (b) Dollar objects to the Rejection Date being the date the Motion was filed because Dollar had already made payment for November 2008 obligations due under the Sublease with the Debtors. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Dollar received unequivocal notice of the Debtors' intent to reject the lease.  See Reply Section I(B).<br><br>• The Debtors have a legal obligation <u>not</u> to return prepetition rent. See Reply Section I(B). |
| | | | (c) Dollar asserts that the Debtors' rejection does not terminate Dollar's rights to remain in possession of the Premises. | • Once the primary leases and the subleases have been rejected, the bankruptcy court has no meaningful interest in the ultimate disposition of the Premises. See Reply Section I(B). |
| 15. | 354 | 120 Orchard LLC; 427 Orchard LLC; and FT Orchard LLC ("Orchard") | (a) Orchard joins the objection of Galaxy, Docket No. 277. | • The Lease should be deemed rejected as of the Petition Date because that is the moment Orchard received unequivocal notice of the Debtors' intent to reject the lease.  See Reply Section I(B). |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (b) Orchard demands payment of Stub Rent and common area maintenance charges. | • Orchard's demands for Stub Rent and common area maintenance charges are merely prepetition claims. See Reply Section IV. |
| 16. | 368 | Melvin Walton Hone (Trustee of the Hone Family Trust) ("Hone") | (a) Hone asserts that the Debtors have not surrendered the Premises because a sublessee occupies the Premises. | • The Debtors surrendered the Premises to Hone on the Petition Date when they filed the Lease Rejection Motion, notified Hone of their unequivocal intent to reject the Lease, and provided Hone with a copy of the Order granting the Lease Rejection Motion on November 10, 2008. See Reply Section I(B).<br><br>• The Debtors have informed the sublessee of its unequivocal intent to reject the Lease and the sublease and provided the sublessee with a copy of the Order granting the Lease Rejection Motion on November 10, 2008. See Reply Section I(B).<br><br>• The Debtors have no affirmative duty to evict the sublessee from the Premises. See Reply Section I(B). |
| 17. | 378 | Bond CCI Delaware Business Trust ("Bond") | (a) Bond demands Debtors assume and assign the lease and sublease to Bond. | • The Debtors are working with Bond to resolve this matter. To the extent the matter is not resolved, the Debtors will address this objection at the Hearing. |
| 18. | 574, 576 | Manufacturers and Traders Trust Company ("M&T") | (a) M&T asserts that the Debtors have not surrendered some of the Premises. | • M&T filed its objection on December 2, 2008, ten days late.<br><br>• M&T offers no support for its allegations that the Debtors have not surrendered some of the Premises.<br><br>• The Debtors surrendered the Premises to the Landlords on the Petition Date when they filed the Lease Rejection Motion, notified the Landlords of their unequivocal intent to reject the Lease, and provided Landlords with a copy of the Order granting the Lease Rejection Motion on November 10, 2008. See Reply Section I(B). |
| | | | (b) M&T demands payment of Stub Rent. | • M&T's demand for Stub Rent is merely a prepetition claim. See Reply Section IV. |
| | | | (c) M&T suggests that the Debtors assume and assign the lease and sublease to the Landlords. | • The Debtors are working with M&T to resolve this matter. To the extent the matter is not resolved, the Debtors will address this objection at the Hearing. |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (e)  M&T desires to preserve its right to request allowance of an administrative expense claim with respect to the costs of any removal of abandoned personal property. | • No response is necessary; nevertheless, such costs are prepetition claims for which M&T will be paid in accordance with applicable provisions of the Bankruptcy Code. See Reply Section V. |