DAVID L. POLLACK (*pro hac vice*)
JEFFREY MEYERS (*pro hac vice*)
JESSE N. SILVERMAN (VSB #46456)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
51st Fl - Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 864-8325
Facsimile: (215) 864-9473

CONSTANTINOS G. PANAGOPOULOS (VSB #33356)
CHARLES W. CHOTVACS (VSB #70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, D.C. 20005
Telephone: (202) 661-2200
Facsimile: (202) 661-2299

*Counsel for Centro Properties Group, Federal Realty Investment Trust,
Cencor Realty, The Hutensky Group, The Morris Companies Affiliates,
and Uniwest Commercial Realty*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

---------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **CIRCUIT CITY STORES, INC.** *et al.*. | : | Case No. 08-35653-KRH |
| | : | |
| Debtors. | : | Jointly Administered |

---------------------------------------------------------x

### JOINDER OF CENTRO PROPERTIES GROUP, FEDERAL REALTY INVESTMENT TRUST, CENCOR REALTY, THE HUTENSKY GROUP, THE MORRIS COMPANIES AFFILIATES, AND UNIWEST COMMERCIAL REALTY IN MOTIONS OF VARIOUS LANDLORDS FOR ALLOWANCE OF ADMINISTRATIVE <u>CLAIMS AND PAYMENT OF STUB RENT FOR NOVEMBER 2008</u>

TO THE HONORABLE KEVIN R. HUENNEKENS
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Centro Properties Group ("Centro"), Federal Realty Investment Trust ("Federal"),

Cencor Realty ("Cencor"), The Hutensky Group ("Hutensky"), The Morris Companies Affiliates

("Morris"), and Uniwest Commercial Realty ("Uniwest") by their undersigned attorneys, hereby

- 1 -

join in the Motions of various landlords (the "Motions")[1] seeking allowance of administrative claims and compelling payment of the November 2008 "stub rent"[2] and in support thereof aver:

1. Centro, Federal, Cencor, Hutensky, Morris, and Uniwest are the owners or agents for the owners of certain shopping centers in which Debtors operate retail stores pursuant to written leases (the "Leases"). Centro, Federal, Cencor, Hutensky, Morris, and Uniwest are hereinafter collectively referred to as "Objecting Landlords".

2. All of Objecting Landlords' premises are premises located in shopping centers, as that term is used in 11 U.S.C. § 365(b)(3). *See In Re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

3. Objecting Landlords are the landlords with approximately 29 non-residential leasehold premises where Debtors operate retail stores (see Schedule "1" attached hereto). Of those 29 locations, 6 of the stores are currently conducting GOB sales pursuant to this Court's earlier interim order. Upon information and believe, Debtors have not paid either the "stub rent" or the December 2008 rent for any of the locations. For each of the stores rent is due on the first day of each month.

4. By various Motions, certain landlords have moved to compel the payment of the stub rent by the Debtors and/or for the allowance of their stub rent claims as administrative expenses. The moving landlords have claimed that they are entitled to payment of the stub rent either pursuant to the provisions of § 365(d)(3) of the Bankruptcy Code or § 503(b)(1) of the Code. In their omnibus objection (the "Objection") to the various motions (see Docket #641)

---

1   *See, e.g.*, Motions of Burbank Mall Associates (Docket #296), Woodlawn Trustee, Incorporated (Docket #390) and Taubman Auburn Hills associates Limited Partnership (Docket #471)

2   The "stub rent" is the term commonly used to refer to the rent for the period from the date of filing of the voluntary petition, here November 10, 2008, to the end of the month in which the filing occurred (November 30, 2008).

Debtors acknowledge that the Courts in this District have previously applied the "accrual" or "proration" approach to the payment of the Debtors' obligations under § 365(d)(3) (see Objection at ¶ 17). Nevertheless, the Debtors urge that this Court reject the prior decisions and instead apply the "billing date" approach followed by the Third Circuit. Debtors further argue that if the Court does apply the billing date approach that the movants are not entitled to administrative claims under § 503(b)(1), alleging that the only avenue for a landlord to pursue payment of post petition rent is § 365(d)(3). Finally, Debtors argue that even if the Court awards administrative expense status to movants' claims, said claims do not need to be paid immediately.

5. The majority of Bankruptcy Courts that have addressed the issue have applied the accrual/proration method to the determination of which obligations debtors must pay post-petition. While this was certain the norm in virtually every bankruptcy court prior to the Third Circuit's decision in *Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001), some courts have now expressed the opinion that that decision sets forth the correct interpretation of § 365(d)(3) and have indicated an intent to follow same. Most courts, however, continue to follow the proration/accrual approach.

6. Various parties have set forth in detail the <u>legal</u> arguments on both sides of the proration versus billing date interpretations. From an <u>equitable</u> standpoint, it cannot be denied that the accrual/proration approach should be followed. Using this approach the Debtor is required to pay, both on the front end and back end of the lease assumption/rejection process, only for that period of time that it is actually using the premises. In other words, if a debtor files its petition on November 10th and rejects its lease on February 15th, the debtor would pay the

partial rent due for its occupancy in both November and February. In addition, there would no longer be need for both forum and "date" shopping, having debtors file retail cases on the 2nd or 3rd of the month in a court located in the Third Circuit.

7. In the matter of *Linens 'N Things*, currently pending in the United States Bankruptcy Court for the District of Delaware, the Debtors filed their petition on May 2, 2008. Doing so enabled the Debtors to receive an approximate $25,000,000.00 unsecured, interest free loan from their landlords. On the other hand, the millions of dollars of real estate tax bills that have come due since the filing, many, if not most, of which apply to pre-petition periods of time, must nevertheless be paid by that debtor. In addition, if the debtor rejects a lease at any time after the last day of the prior month, under Third Circuit precedent the debtor is required to pay the full month's rent for the month of rejection regardless of when it might vacate the premises. Accordingly, if this Court finds that from a legal standpoint both the billing date and accrual methods have merit, the Court should look to equitable considerations and enforce the accrual/proration method of dealing with the Debtors' post-petition obligations.

8. Assuming, *arguendo*, that this Court agrees with the Debtors and finds that the billing date approach should be applied to the Debtors' post-petition obligations, Objecting Landlords are nevertheless entitled to an administrative claim for the stub rent. Debtors cite to the case of *In re Goody's Family Clothing, Inc.*, 392 B.R. 604 (Bankr. D. Del. 2008) for the proposition that the landlords are not entitled to the immediate payment of their administrative claims, even if administrative claims status is granted. What Debtors fail to acknowledge, however, is that the Court in the *Goody's* matter <u>specifically</u> <u>found</u> that the landlords were entitled to administrative claim status for the stub rent and rejected the very same counsel's arguments that § 365(d)(3) provides the only method for payment of post-petition rent

DMEAST #10166332 v1

to landlords.[3] It is not necessary to set forth in this pleading the rationale for the decision that Judge Sontchi so clearly set out in his opinion in *Goody's*. Regardless of how this Court might rule on the issue of the timing of the payment of administrative rent claims, the landlords are entitled to an administrative rent claim for the stub rent.

9. Debtors attempt to argue that the landlords have not made out their case that the use of the premises was necessary or beneficial to the estate. Debtors make that claim after claiming in their extension motion that the leases are both necessary and vital to the estate and also a necessary part of their agreement with their DIP lenders. Obviously, Debtors are simply reaching for straws. The fact is that Debtors have used, and continue to use, the premises of the landlords in order to conduct their business on a day to day basis. Without the premises Debtors would have no place to sell their product and this case would likely be a Chapter 7 liquidation with the pre-petition lenders having seized their collateral.

10. The issue of the timing of administrative claims has been well argued by both the Debtors and movants. Obviously, this Court will ultimately have to make a decision on the timing of payment if the Court finds that the billing date approach applies <u>and</u> that landlords are entitled to administrative claims for the stub rent. In making that determination, at least with regard to the 154 stores that are being liquidated, the Court should also consider the fact that at least for those 154 stores the Debtors are being reimbursed by the liquidators for the occupancy costs associated with the stores. Under similar circumstances, the court in *ZB Company, Inc., et al.*, 302 B.R. 316 (Bankr. D. Del. 2003) found that it would be inequitable to allow the debtors to collect the occupancy costs from the liquidator and at the same time not pay the landlords for the

---

3   The decision of the Court in the *Goody's* matter is currently on appeal to the United States District Court for the District of Delaware, said appeal having been taken by the same counsel for Debtors.

use of their premises. Accordingly, at the very least, the landlords of the GOB stores should be entitled to the immediate payment of the stub rent for their stores.

11. In the event that this Court grants administrative claim status to the stub rent Objecting Landlords will provide a detailed accounting of the stub rent for each location to Debtors.

**WHEREFORE,** Objecting Landlords pray for relief consistent with the foregoing joinder; and

**WHEREFORE,** Objecting Landlords pray for such other and further relief as may be just and required under all of the circumstances.

**December 4, 2008**                            Respectfully submitted,


 /s/  Charles W. Chotvacs
Constantinos G. Panagopoulos (VSB #33356)
Charles W. Chotvacs (VSB #70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, D.C.  20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
cgp@ballardspahr.com
chotvacsc@ballardspahr.com


 /s/  Jesse N. Silverman
David L. Pollack (*pro hac vice*)
Jeffrey Meyers (*pro hac vice*)
Jesse N. Silverman (VSB #46456)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
51st Fl - Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 864-8325
Facsimile: (215) 864-9473
pollack@ballardspahr.com
meyers@ballardspahr.com
silvermanj@ballardspahr.com

*Attorneys for Centro Properties Group,
Federal Realty Investment Trust, Cencor Realty,
The Hutensky Group, The Morris Companies
Affiliates, and Uniwest Commercial Realty*

# CERTIFICATE OF SERVICE

I, hereby certify that on the 4th day of December, 2008, a true and accurate copy of the foregoing **JOINDER OF CENTRO PROPERTIES GROUP, FEDERAL REALTY INVESTMENT TRUST, CENCOR REALTY, THE HUTENSKY GROUP, THE MORRIS COMPANIES AFFILIATES, AND UNIWEST COMMERCIAL REALTY IN MOTIONS OF VARIOUS LANDLORDS FOR ALLOWANCE OF ADMINISTRATIVE CLAIMS AND PAYMENT OF STUB RENT FOR NOVEMBER 2008** was electronically filed with the Clerk of the Court using the CM/ECF system, which causes notices of electronic filing to be served on all registered users of the ECF system that have filed notices of appearance in this case.

 /s/  Charles W. Chotvacs  
Charles W. Chotvacs