Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1089

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM,
LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

*Proposed Counsel to the Debtors and
Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., | ) | Case No. 08-35653-KRH |
| et al., | ) | |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Related Docket Nos. 24, 147** |

### NOTICE OF FILING REVISED PROPOSED ORDER

**PLEASE TAKE NOTICE** that on November 10, 2008, the above-captioned debtors and debtors-in-possession (the "Debtors") filed a Motion For Entry Of Order Pursuant To Bankruptcy Code Sections 105, 363 And 365 (I) Assuming The Agency Agreement Among The Debtors, Hilco Merchant Resources, LLC And Gordon Brothers Retail Partners, LLC, And (II) Authorizing The Debtors To Continue Agency Agreement Sales Pursuant To Store Closing Agreement (Docket No. 24) (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on November 14, 2008, the Court entered an order granting certain aspects of the Motion on an interim basis (Docket No. 147).

**PLEASE TAKE FURTHER NOTICE** that the Debtors have filed a blackline reflecting revisions to the final order granting the Motion, and a letter agreement to the Amended and Restated Agency Agreement by and among (i) a Joint Venture Composed of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC and Circuit City Stores, Inc. and Circuit City Stores West Coast, Inc., which the Debtors intend to present to the Court for entry at the December 5, 2008 Omnibus Hearing. Copies of the blackline and the letter agreement are attached to the filed version of this Notice. If you received this Notice by a means other than email, you may contact Kurtzman Carson Consultants, LLC (www. kccllc.net/circuitcity or 888-830-4650) to receive electronic copies of these documents.

Dated: December 4, 2008         SKADDEN, ARPS, SLATE, MEAGHER &
        Richmond, Virginia      FLOM, LLP
                                Gregg M. Galardi, Esq.
                                Ian S. Fredericks, Esq.
                                P.O. Box 636
                                Wilmington, Delaware 19899-0636
                                (302) 651-3000
                                        - and -

                                SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM, LLP
                                Chris L. Dickerson, Esq.
                                333 West Wacker Drive
                                Chicago, Illinois 60606
                                (312) 407-0700


                                        - and -

                                MCGUIREWOODS LLP

                                /s/ Douglas M. Foley         .
                                Dion W. Hayes (VSB No. 34304)
                                Douglas M. Foley (VSB No. 34364)
                                One James Center
                                901 E. Cary Street
                                Richmond, Virginia 23219
                                (804) 775-1000

                                Proposed Counsel for Debtors and
                                Debtors in Possession

Gregg M. Galardi, Esq.　　　　Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.　　　 Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &　MCGUIREWOODS LLP
FLOM, LLP　　　　　　　　　　　　One James Center
One Rodney Square　　　　　　　 901 E. Cary Street
PO Box 636　　　　　　　　　　　 Richmond, Virginia 23219
Wilmington, Delaware 19899-0636　(804) 775-1000
(302) 651-3000

　　　　　- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTER DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
Circuit City Stores, Inc.,  :   Case No. 08-35653-KRH
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

~~CORRECTED~~AMENDED ORDER GRANTING MOTION OF DEBTORS FOR
ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105,
363
AND 365 (I) ASSUMING AGENCY AGREEMENT AMONG DEBTORS,
HILCO MERCHANT RESOURCES, LLC AND GORDON BROTHERS
RETAIL PARTNERS, LLC, AND (II) AUTHORIZING
THE DEBTORS TO CONTINUE AGENCY AGREEMENT SALES
PURSUANT TO STORE CLOSING AGREEMENT

Upon the motion (the "Motion")[1] of the Debtors for an order, pursuant to Bankruptcy Code sections 105(a), 363 and 365, (i) assuming the Store Closing Agreement between the Debtors and Agent, and (ii) authorizing the debtors to continue Store Closing Sales pursuant to the Store Closing Agreement and the Sale Guidelines; and upon the Besanko Declaration; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED that:**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    Venue of the Debtors' chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Store Closing Agreement.

3.   Due and sufficient notice of the Motion has been given under the particular circumstances and no other or further notice need be given.

4.   On November 4, 2008, the Debtors and the Agent entered into the Store Closing Agreement and immediately commenced the Store Closing Sales.  A copy of the Store Closing Agreement**, as modified by the letter agreement in substantially final form attached thereto,** is attached hereto as Exhibit A.  To secure their obligations under the Store Closing Agreement, the Debtors granted to Agent valid and perfected security interest in and lien upon all of Debtors Inventory located in the continental United States, all FF&E, and all Proceeds thereof (each of Inventory, FF&E and Proceeds as defined in the Store Closing Agreement).

5.   Time is of the essence in assuming the Store Closing Agreement and continuing the Store Closing Sales uninterrupted.

6.   The Debtors' decisions to (i) assume the Store Closing Agreement and (ii) continue performance under and payments required by the Store Closing Agreement is a reasonable exercise of the Debtors' sound

business judgment and is in the best interests of the

Debtors, their estates, their creditors, and all parties

in interest.  Therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED that**:

1.    The Motion is GRANTED and any objections

not resolved on the record at the hearing are overruled.

2.    Pursuant to Bankruptcy Code section 365,

assumption by the Debtors of the Store Closing Agreement

attached as Exhibit A is hereby directed, authorized and

approved.

3.    Pursuant to Bankruptcy Code sections 105

and 363, the Debtors are authorized to continue

performance under and make all payments required by the

Store Closing Agreement as and when due thereunder

without further order of this Court.

4.    The Debtors are authorized to continue

the Store Closing Sales in the ordinary course of

business.

5.    The Sale Guidelines attached hereto as

Exhibit B are hereby approved~~, but remain subject to the~~

~~objection rights set forth in paragraph 17 of this~~

~~Order.~~**; provided, however, that the Agent and Landlords**

**of the Closing Stores are authorized to enter into**

**agreements between themselves modifying the Sale**

**Guidelines without further order of the Court provided**

**that such agreements do not have a material adverse**

**effect on the Debtors or their estates and do not result**

**in a reduction of amounts due to the Debtors under the**

**Store Closing Agreement; provided, further, that this**

**Order does not impair the rights of the Agent or any**

**Landlord under such agreements that were entered into**

**prior to entry of this amended Order and all such**

**agreements shall remain in full force and effect.**

6.    To the extent of any conflict between the
Sale Guidelines and the Store Closing Agreement, the
Sale Guidelines shall control over the Store Closing
Agreement.

7.    Except as otherwise provided in the Store
Closing Agreement, pursuant to section 363(f) of the
Bankruptcy Code, all Merchandise **and FF&E** sold pursuant
to the Store Closing Agreement shall be sold free and
clear of any and all interests, including, without
limitation, mortgages, security interests, liens,
judgments, encumbrances and "claims" as defined in

Bankruptcy Code section 105 (collectively, "Liens"),

with such Liens, if any, attaching to the Proceeds.

8.    To the extent Agent is conducting the

Store Closing Sales in violation of any provision of any

of the Debtors' leases, all of the Debtors' landlords

are directed to accept this Order as binding authority

authorizing the Debtors and the Agent to conduct the

Store Closing Sales at the Closing Stores, including,

without limitation, conducting and advertising of the

Store Closing Sales in accordance with the Store Closing

Agreement, the Sale Guidelines and this Order.

9.    No approval, license or permits of any

governmental authority shall be required to conduct the

Store Closing Sales.

10.    If any parties or persons, including but

not limited to landlords, subtenants, utility companies,

governmental agencies, sheriffs, marshals or other

public officers, creditors and all those acting for or

on their behalf, believe that cause exists to: (a)

prohibit Agent from advertising the Store Closing Sales,

to the extent same is consistent with the Agency

Agreement, (b) in any way interfere with or otherwise

impede the conduct of the Store Closing Sales at the
Closing Stores or the use or maintenance of the Debtors'
assets of the Debtors located at the Closing Stores, or
(c) institute any action or proceeding in any court or
other administrative body having as its objective the
obtaining of an order or judgment against the Debtors,
Agent or a landlord that might in any way directly or
indirectly obstruct or otherwise interfere with or
adversely affect the conduct of the Store Closing Sales
and/or seek to recover damages for breach(es) of
covenants or provisions in any lease or sublease based
upon any relief authorized herein, this Court shall
retain exclusive jurisdiction to resolve such dispute,
and such parties or persons shall take no action against
the Debtors, Agent, the landlord related the Store
Closing Sales until this Court has resolved such
dispute. This Court shall hear the request of such
persons or parties with respect to any such disputes on
an expedited basis, as may be appropriate under the
circumstances.

    11.    The Store Closing Sales at the Closing
Stores shall be conducted by the Debtors and Agent

notwithstanding any restrictive provision of any lease,

sublease or other agreement relative to occupancy

affecting or purporting to restrict the conduct of the

Store Closing Sales, the rejection of leases,

abandonment of assets or "going dark" provisions;

provided, however, that nothing in this Order shall

impact any objection a landlord may have to assumption,

assignment or rejection of their respective lease or to

any proposed cure amount or rejection damages claim in

association with such assumption, assignment or

rejection.

12.   Except as may otherwise be specifically

set forth in the Sale Guidelines, the Debtors and/or

Agent (as the case may be), are authorized and empowered

to transfer the Assets among the Closing Stores,

notwithstanding anything in applicable non-bankruptcy

law to the contrary.

13.   No bulk sale or similar law shall

prohibit the Debtors or the Agent from taking action

contemplated by the Store Closing Agreement.

14.   Provided that the Store Closing Sales are

conducted in accordance with the terms of this Order,

the Store Closing Agreement, and the Sale Guidelines,
the Debtors, their landlords and Agent are presumed to
be in compliance with the requirements of any applicable
"going out of business," "store closing," similar
inventory liquidation sales, bulk sale laws or any other
laws that purport to regulate, prohibit, restrict, or in
any way limit Agent's use, in conformity with the Sale
Guidelines, of (i) signwalkers; (ii) interior store
signage and banners; and (ii) exterior banners (each a
"GOB Law," and together, the "GOB Laws").  To the extent
there is a dispute arising from or relating to the Store
Closing Sales, this Order, the Store Closing Agreement,
or the Sale Guidelines (each a "Reserved Dispute", which
dispute relates to any GOB Law, this Court shall retain
exclusive jurisdiction to hear and determine all such
Reserved Disputes.

15.  Within five (5) business days of entry of
this Order, the Debtors shall serve copies of this
Order, the Store Closing Agreement and the Sale
Guidelines via e-mail, facsimile or regular mail, on:
(i) the Attorney General's office for each state where
the Store Closing Sale is being held, (ii) the county

consumer protection agency or similar agency for each
county where the Store Closing Sale will be held, and
(iii) the division of consumer protection for each state
where the Store Closing Sale will be held.  If, at any
time within seven (7) days following service of the
entry of this Order, any governmental authority wishes
to assert that the Store Closing Sale conducted pursuant
to this Order, the Store Closing Agreement and/or the
Sale Guidelines is in violation of a GOB Law, it shall
send written notice of such Reserved Dispute to counsel
for the Debtors and counsel for Agent at the addresses
set forth in the Store Closing Agreement so as to ensure
delivery thereof within one (1) business day thereafter.
If the Debtors, Agent and the governmental authority are
unable to resolve the Reserved Dispute within ten (10)
days of service of the notice, the aggrieved party may
file a motion with this Court requesting that this Court
resolve the Reserved Dispute.  In the event such a
motion is filed, nothing in this Order shall preclude
the Debtors, a landlord, the Agent or the other
interested party from asserting (i) that the provisions
of any GOB Law are preempted by the Bankruptcy Code or

(ii) that neither the terms of this Order, nor the
Debtors or Agent's conduct pursuant to this Order,
violates such GOB Law.  Filing a motion as set forth in
this paragraph shall not be deemed to affect the
finality of this Order or to limit or interfere with the
Debtors' or Agent's ability to conduct or to continue to
conduct the Store Closing Sales pursuant to this Order
and the Store Closing Agreement, absent further order of
this Court.

16.  Upon the later of (i) the date on which
this Order becomes final and non-appealable and (ii) the
date on which payment of any monetary cure amounts due
and payable under the Store Closing Agreement in cash or
other immediately available funds is made all security
interests and liens granted under the Store Closing
Agreement shall be deemed released.  Agent shall execute
all documents and take all other actions as are
reasonably required to evidence the release of such
security interests and liens.

~~17.  All Landlords and any official committee~~
~~seeking to object to the relief requested in this Motion~~
~~on the basis of adequate protection or as to approval of~~

~~the Sale Guidelines, must file such objection and~~

~~service it upon counsel for the Debtors so as to be~~

~~actually received on or before ten (10) days from entry~~

~~of this order for landlords or fifteen (15) days from~~

~~entry of this order for any official committee the~~

~~"Objection Deadline").~~

~~18.   If an objection is not filed and actually~~

~~received on or before the Objection Deadline, the~~

~~remaining provisions of this Order shall automatically~~

~~become final and non appealable.~~

~~19.   In the event that one or more objections~~

~~are filed, the Hearing on such objections shall be held~~

~~December 5, 2008 at 10:00 a.m. (ET).~~

**17.**   ~~20.~~ Notwithstanding Bankruptcy Rules 6004

and 6006, this Order shall be effective and enforceable

immediately upon entry and its provisions shall be self-

executing.   In the absence of any person or entity

obtaining a stay pending appeal, the Debtors and the

Agent are free to perform under the Store Closing

Agreement at any time, subject to the terms thereof.

**18.** ~~21.~~ The Court shall retain exclusive

jurisdiction to resolve any dispute arising from or

relating to the interpretation or implementation of this

Order.

Dated:      Richmond, Virginia
            _____, 2008


            _____
            UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

            - and -


Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

            - and -


~~/s/ Douglas M. Foley~~
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Proposed Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

I hereby certify that ~~notice of the Debtors' intent to seek entry of the foregoing proposed order was provided to the parties identified in the Motion and copy of this proposed order was provided to the Office of the United States Trustee for the Eastern District of Virginia prior to submission to this Court~~**this Order was either served upon or endorsed by all the necessary parties**.

~~/s/ Douglas M. Foley~~
_____

**EXHIBIT A**
**(STORE CLOSING AGREEMENT)**

The Amended and Restated Agency Agreement by and among a
Joint Venture Composed of Hilco Merchant Resources, LLC
and Gordon Brothers Retail Partners, LLC and Circuit
City Stores, Inc. and Circuit City Stores West Coast,
Inc. (the "Agency Agreement") has been intentionally
omitted because there were no changes.

A copy of the new letter agreement to the Agency
Agreement is attached hereto.

A Joint Venture Composed of
Hilco Merchant Resources, LLC
and
Gordon Brothers Retail Partners, LLC

December 3, 2008

Circuit City Stores, Inc.
Circuit City Stores West Coast, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
<u>Attention</u>:     Reginald D. Hedgebeth,
            Senior Vice President and General Counsel

Re:     *FF&E Sales at Circuit City Closing Stores*

Ladies and Gentlemen:

Reference is hereby made to that certain Amended and Restated Agency Agreement by and
among (i) a Joint Venture Composed of Hilco Merchant Resources, LLC and Gordon Brothers
Retail Partners, LLC (the "<u>Agent</u>") and Circuit City Stores, Inc. and Circuit City Stores West
Coast, Inc. (collectively, the "<u>Merchant</u>") dated as of November 4, 2008 (the "<u>Agency
Agreement</u>").  Capitalized terms not otherwise defined herein shall have the meaning assigned to
such terms in the Agency Agreement.

Merchant wishes to exercise its option under Section 16 of the Agency Agreement to sell certain
identified, owned FF&E <u>provided</u> <u>that</u> Agent agrees to modify the commission payable to Agent
under the Agreement, and Agent has agreed to modify the terms of the Agreement as requested
by Merchant pursuant to the terms hereof.

The FF&E to be sold by Agent is identified on <u>Schedule I</u> attached to this letter and is herein
referred to as the "Sellable FF&E".  The Sellable FF&E is only located at the Closing Stores
identified on <u>Schedule II</u> attached to this letter.  The FF&E which is not available for sale and
which Agent has no authority to sell is identified on <u>Schedule III</u> attached to this letter.

Notwithstanding any term or condition of the Agency Agreement to the contrary, Agent's
commission for the sale of the Sellable FF&E shall be equal to a percentage of gross proceeds
(net only of Sales Taxes) from the sale of the Sellable FF&E calculated as follows:

| Gross Sale Proceeds | Agent's FF&E Commission |
|---|---|
| Less than or equal to $1,199,999 | 0.0% |
| Equal to $1,200,000 | 5.0% |
| Greater than $1,200,000 and less than $1,999,999 | 15.00% |
| Equal to or greater than $2,000,000 | 25% |

The commission payable to Agent shall be based on the proceeds of sale for each level shown in the grid above (i.e.: not back to the first dollar). For the avoidance of doubt and for illustration purposes, if gross sale proceeds of owned FF&E are $1,500,000, Agent's commission would be $105,000 (i.e.: no commission between $0 and $1.19 million; plus 5% of $1.2 million ($60,000); plus 15% of gross proceeds between $1.2 and 1.5 million ($45,000)).

Notwithstanding the terms of the Agency Agreement, Merchant shall be responsible for payment of (a) all expenses actually incurred by Agent in connection with the sale of the Sellable FF&E to the extent set forth in the budget attached to this letter as Schedule IV, plus (b) an incentive fee payable to Agent's field consultants in an amount equal to four percent (4%) of the aggregate gross proceeds (net only of Sales Taxes) from the sale of the Sellable FF&E (the "Field Consultants Incentive Fee"), subject to the following:

   (1)   Except with respect to the Field Consultants Incentive Fee, Merchant shall not be obligated to incur more than $213,263 in total expenses in connection with the sale of the Sellable FF&E and Merchant shall not be obligated to exceed the maximum amount set forth for any line item of the budget;

   (2)   Expenses shall be submitted to Agent on a weekly basis, including appropriate back up documentation, as part of the Weekly Reconciliation; and

   (3)   Except for Occupancy Expenses and payroll expenses that are included within "Expenses", as such term is used in the Agency Agreement, no expenses incurred by Agent in connection with the sale of the Sellable FF&E shall be treated as an Expense under the Agency Agreement.

All sales of the Sellable FF&E will be subject to the terms of Sections 9.3(a), 9.4 and 9.5 of the Agreement, as if the Sellable FF&E was Merchandise.

For purposes of clarification, the parties agree that the term Proceeds, as used in the Agency Agreement, does not include proceeds from the sale of the Saleable FF&E. Proceeds from the sale of the Saleable FF&E ("FF&E Proceeds") shall mean the aggregate of (a) the total amount (in U.S. dollars) of all sales of Saleable FF&E made under the Agency Agreement, as modified hereby, exclusive of Sales Taxes, and (b) any proceeds of Merchant's insurance for loss or damage to the Saleable FF&E. FF&E Proceeds shall be segregated from Proceeds and deposited on a daily basis into accounts designated by Merchant for receipt of such proceeds (the "Designated FF&E Accounts"). To the extent Agent uses Merchant's credit card facilities for the sale of Sellable FF&E, these credit card proceeds shall also be deposited into the Designated FF&E Accounts. Merchant acknowledges that Agent may accept bank or certified checks (with funds guaranteed for payment) in connection with the sale of the Saleable FF&E and the proceeds from such checks shall also be deposited into the Designated FF&E Accounts. [NOTE- Account information to be confirmed.]

Unless otherwise agreed by Merchant and Agent, Agent agrees to use Merchant's point of sale system to ring all sales of Saleable FF&E. Merchant will provide separate SKU numbers to be used for all sales of Saleable FF&E. Agent acknowledges that use of these SKU numbers is necessary to enable the parties to calculate the commission to be paid to Agent, avoid adversely affecting the proper calculation of Proceeds from the sale of Merchandise and appropriately account for proceeds from the sale of Saleable FF&E.

To the extent the terms of this letter agreement conflict with the terms of the Agency Agreement, the terms of this letter agreement shall control.  Please acknowledge your agreement to the foregoing by executing this letter where indicated below.

Very truly yours,

**A Joint Venture Composed of**
**Hilco Merchant Resources, LLC and**
**Gordon Brothers Retail Partners, LLC**


By:_____
Name:
Title:

                                                **Circuit City Stores, Inc.**


                                                By:_____
                                                Name:
                                                Title:

                                                **Circuit City Stores West Coast, Inc.**


                                                By:_____
                                                Name:
                                                Title:

**EXHIBIT B**
**(SALE GUIDELINES)**

## EXHIBIT B
## CIRCUIT CITY SALE GUIDELINES

Notwithstanding anything in the Agency Agreement[2] to the contrary, the following procedures shall apply to any store closing sales (each a "Sale" and collectively, "Sales") to be held at the Merchant's Closing Stores:

A. The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Stores.

B. Within a shopping center, Agent shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or, if distribution is customary in the shopping center in which such Closing Store is located. Otherwise, Agent may solicit customers in the Closing Stores themselves.

C. At the conclusion of the Sales, Agent shall vacate the Closing Stores in broom-clean condition, and shall leave the stores in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, in accordance with Section 6.2 of the Agency Agreement.

D. All display and hanging signs used by the Agent in connection with the Sales shall be professionally lettered and all hanging signs shall be hung in a professional manner. The Merchant and the Agent may advertise the Sale as a "store closing" or similar themed sale; provided however, that the Sale may not be advertised as a "going out of business" or similar themed sale as provided in the Agency Agreement. The Merchant and the Agent shall not use neon or day-glo signs. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used. Nothing contained herein shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement. In addition, the Merchant and the Agent shall be permitted to utilize exterior banners at non-enclosed mall Closing Store locations or at mall locations if the Closing Store has a separate entrance from a parking lot; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Closing Store and shall not be wider than the storefront of the Closing Store. In addition, the Merchant and the Agent shall be

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agency Agreement dated as of November 4, 2008, by and between a Joint Venture Composed of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC, and Circuit City Stores, Inc. (the "Agency Agreement").

permitted to utilize sign walkers, A-frame, interior and exterior banners and similar signage, notwithstanding any state, county or local law or ordinance.

E. Conspicuous signs shall be posted in each of the affected Closing Stores to effect that all sales are "final".

F. Except with respect to the hanging of exterior banners, the Agent shall not make any alterations to the storefront or exterior walls of any Closing Stores.

G. The Agent shall not make any alterations to interior or exterior Closing Store lighting. No property of the landlord of a Closing Store shall be removed or sold during the Sales.

H. Agent shall keep Closing Store premises and surrounding area clear and orderly consistent with present practices.

I. The Merchant and/or the Agent may sell the FF&E located in the Closing Stores during the Sale; provided that the FF&E is not the property of the applicable landlord. The Merchant or the Agent, as the case may be, may advertise the sale of the FF&E consistent with the guidelines provided in paragraphs B and D hereof. Additionally, the purchasers of any FF&E sold during the sale shall only be permitted to remove the FF&E either through the back shipping areas or through other areas after store business hours.

J. At the conclusion of the Sale at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Merchant, the Agent and their agents and representatives shall continue to have exclusive and unfettered access to the Stores.