## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CIRCUIT CITY STORES, INC., et al. | : | Case No. 08-35653 |
| Debtors | : | Jointly Administered |
| | : | |
| | : | |

---

**CORRECTED INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST-PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) <u>SCHEDULING A FINAL HEARING</u>**

THIS MATTER having come before this Court upon the motion (the "**DIP Motion**") by Circuit City Stores, Inc. and its affliated debtors, each as debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above captioned chapter 11 cases (collectively, the "**Cases**"), seeking, among other things, entry of an interim order (this "**Interim Order**") authorizing the Debtors to:

(i)     Obtain credit and incur debt, pursuant to Sections 363, 364(c) and 364(d) of the Bankruptcy Code, on an interim basis for a period (the "**Interim Period**") from the commencement of the case through and including the earlier of the entry of a final order or December 29, 2008, up to the aggregate committed amount of $1,100,000,000 (consisting of $1,050,000,000 for the Debtors and $50,000,000 for InterTan Canada Ltd. (to be guaranteed by the Debtors)), and thereafter up to the aggregate committed amount of $900,000,000 (consisting of $850,000,000 for the Debtors and $50,000,000 for borrowings by InterTan Canada Ltd. (to be

guaranteed by the Debtors)) (each on terms and conditions more fully described herein) secured

by first priority, valid, priming, perfected and enforceable liens (as defined in section 101(37) of

chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**") on

property of the Debtors' estates pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the

Bankruptcy Code, and with priority, as to administrative expenses, as provided in section

364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii)    (a) Establish that financing arrangement (the "**DIP Facility**") pursuant to

(I) that certain Debtor-In-Possession Credit Agreement (as amended, modified or supplemented

in accordance with the terms of this Interim Order, the "**DIP Credit Agreement**")[1], substantially

in the form filed of record in the Cases and introduced into evidence at the interim hearing on the

DIP Motion, by and between, among others, Circuit City Stores, Inc., Circuit City Stores West

Coast, Inc., Circuit City Stores PR, LLC, and InterTAN Canada Ltd. (collectively, the

"**Borrowers**"), Bank of America, N.A., as administrative agent and collateral agent (the "**U.S.

DIP Agent**"), Bank of America, N.A. (acting through its Canada branch) as Canadian

administrative agent ("**Canadian DIP Agent**") (collectively with the U.S. DIP Agent, the "**DIP

Agents**"), and the Lenders party thereto (the "**DIP Lenders**," collectively with the DIP Agents,

the "**DIP Secured Parties**"), and (II) all other agreements, documents, notes, certificates, and

instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including,

without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and

Uniform Commercial Code ("**UCC**") financing statements and all other related agreements,

documents, notes, certificates, and instruments executed and/or delivered in connection therewith

or related thereto (collectively, as may be amended, modified or supplemented and in effect from

---

[1] Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms

time to time, the "**DIP Financing Agreements**"); and (b) incur the "**Obligations**" under and as

defined in the DIP Credit Agreement (collectively, the "**DIP Obligations**");

(iii)    Authorize the use of the proceeds of the DIP Facility (net of any amounts

used to pay fees, costs and expenses under the DIP Financing Agreements) in each case in a

manner consistent with the terms and conditions of the DIP Financing Agreements, and in

accordance with the Budget (as defined below) (subject to any variances thereto permitted under

the terms and conditions of the DIP Credit Agreement) solely for (a) working capital and general

corporate purposes (including capital expenditures), (b) payment of costs of administration of the

Cases, to the extent set forth in the Budget, (c) upon entry of this Interim Order, all letters of

credit issued under the Pre-Petition Credit Agreement (as defined below) shall be deemed issued

under the DIP Credit Agreement, and (d) upon entry of this Interim Order, payment in full of the

Pre-Petition Debt (as defined below), other than the Canadian Liabilities (as defined in the Pre-

Petition Credit Agreement) or as provided in Paragraph 4(d) hereof.

(iv)    Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the

Bankruptcy Code, the U.S. DIP Agent (for the benefit of the DIP Secured Parties) first priority

priming, valid, perfected and enforceable liens, subject only to the Carve Out (as defined below)

and the Permitted Prior Liens (as defined below), upon substantially all of the Debtors' real and

personal property as provided in and as contemplated by this Interim Order, the DIP Facility and

the DIP Financing Agreements;

(v)    Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP

Agents (for the benefit of the DIP Secured Parties)  superpriority administrative claim status in

respect of all DIP Obligations, subject to the Carve Out as provided herein;

---

in the DIP Financing Agreements.

(vi)    Authorize the use of "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "**Cash Collateral**"), in which the Pre-Petition Secured Parties (as defined below) have an interest;

(vii)    Grant the Pre-Petition Agent (for the benefit of the Pre-Petition Secured Parties) (as defined below) Pre-Petition Replacement Liens and Pre-Petition Superpriority Claims (each as defined below) to the extent of any diminution in the value of the Pre-Petition Agent's interest in the Pre-Petition Collateral having the priority set forth in this Interim Order and the Pre-Petition Indemnity Account, as adequate protection for the granting of the DIP Liens (as defined below) to the U.S. DIP Agent, the use of Cash Collateral, and for the imposition of the automatic stay;

(viii)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

(ix)    Schedule a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(x)    Waive any applicable stay (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure) and provide for immediate effectiveness of this Interim Order.

The Bankruptcy Court having considered the DIP Motion, the Declaration of Bruce Besanko in support of the Debtors' first day motions and orders, the exhibits attached thereto, the DIP Facility and the DIP Credit Agreement, and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the

local rules of the Bankruptcy Court, due and proper notice of the DIP Motion and the Interim

Hearing having been given; an Interim Hearing having been held and concluded on November

10, 2008; and it appearing that approval of the interim relief requested in the DIP Motion is

necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and

otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their

estates and their equity holders, and is essential for the continued operation of the Debtors'

business; and it further appearing that the Debtors are unable to secure (i) unsecured credit for

money borrowed allowable as an administrative expense under Bankruptcy Code Section

503(b)(1), (ii) credit for money borrowed with priority over any or all administrative expenses of

the kind specified in Bankruptcy Code Sections 503(b) or 507(b), (iii) credit for money borrowed

secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (iv)

credit for money borrowed secured by a junior Lien on property of the estate which is subject to

a Lien; and there is adequate protection of the interests of holders of liens on the property of the

estates on which liens are to be granted; and all objections, if any, to the entry of this Interim

Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and

consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.   **Petition Date**.  On November 10, 2008 (the "**Petition Date**"), the Debtors filed

voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the Eastern District of Virginia (the "**Court**").   The Debtors have continued in the

management and operation of their business and property as debtors-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in

the Cases.  On the Petition Date, InterTan Canada Ltd. and certain of its subsidiaries filed a notice seeking an initial order under the Companies' Creditors Arrangement Act (Canada).

B.   **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   **Committee Formation**.  A statutory committee of unsecured creditors has not yet been appointed in the Cases.

D.   **Notice**.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 9013-1.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on November 10, 2008, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) each of the Debtors' fifty (50) largest unsecured creditors, (iii) counsel to the Pre-Petition Agent (as defined below), (iv) the Pre-Petition Agent, (v) counsel to the proposed DIP Agents, and (vi) all secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Bankruptcy Court.

E.   **Debtors' Acknowledgements and Agreements**.  Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtors admit, stipulate, acknowledge

and agree that (collectively, paragraphs E (i) through E (vi) hereof shall be referred to herein as

the "**Debtors' Stipulations**"):

    **(i)**    **Pre-Petition Financing Agreements**.  Prior to the commencement of the Cases, the certain of the Debtors were party to (A) that certain Second Amended and Restated Credit Agreement, dated as of January 31, 2008, by and between, among others, such Debtors, Intertan Canada, Ltd., Bank of America, N.A., as administrative agent and collateral agent (the "**Pre-Petition Agent**"), Bank of America, N.A. (acting through its Canada branch) as Canadian administrative agent ("**Pre-Petition Canadian Agent**") and the Lenders party thereto (the "**Pre-Petition Lenders**", collectively with the Pre-Petition Agent and the Pre-Petition Canadian Agent, the "**Pre-Petition Secured Parties**"), (B) that certain Amended and Restated Facility Guaranty, dated as of January 31, 2008, executed by certain of the Debtors, InterTAN, Inc. and Ventoux International, Inc., in favor of the Pre-Petition Agent, and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Pre-Petition Secured Parties, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect, collectively, the "**Pre-Petition Financing Agreements**").

    **(ii)**    **Pre-Petition Debt Amount**.  As of the Petition Date, the Debtors were indebted under the Pre-Petition Financing Agreements (A) on account of Credit Extensions to the Debtors, in the approximate principal amount of $730,742,932.79, plus letters of credit in the approximate stated amount of not less than $124,363,738.88, plus interest accrued and accruing (at the rates (including, to the extent allowed, the default rate) set forth in the Pre-Petition Financing Agreements), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services, and (B) on account of Credit Extensions made to Intertan Canada Ltd., in the approximate principal amount of CDN$42,500,000.00, plus letters of credit in the approximate stated amount of $6,991,547.19, plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges (in each case, to the extent reimbursable under the Pre-Petition Financing Agreements) and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Pre-Petition Financing Agreements (collectively the "**Pre-Petition Debt**").

    **(iii)**    **Pre-Petition Collateral**.  To secure the Pre-Petition Debt, the Debtors granted security interests and liens (the "**Pre-Petition Liens**") to the Pre-Petition Secured Parties upon (a) all Accounts, (b) all Inventory, (c) all Deposit Accounts, (d) all Documents relating to Inventory, (e) all Chattel Paper arising from the sale of Inventory, (f) all Instruments, General Intangibles, Supporting Obligations and

Letter-of-Credit Rights arising from the sale of the Inventory, (g) and the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the Collateral (each as defined in the Pre-Petition Financing Agreements) (collectively, the "**Pre-Petition Collateral**"),[2] with priority over all other liens except any liens which are valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens (the "**Priority Liens**").

**(iv)**     **Pre-Petition Liens**.  (a) As of the Petition Date, the Debtors believe that (i) the Pre-Petition Liens are valid, binding, enforceable, and perfected first-priority liens, subject only to any Priority Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Debt constitutes legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Debt constitutes allowable secured claims, and (b) on the date that this Interim Order is entered, each Debtor has waived, discharged and released the Pre-Petition Secured Parties, together with their affiliates, agents, attorneys, officers, directors and employees, of any right any Debtor may have (x) to challenge or object to any of the Pre-Petition Debt, (y) to challenge or object to the security for the Pre-Petition Debt, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Financing Agreements or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Financing Agreements or the Pre-Petition Liens, or any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition Financing Agreements.

**(v)**     **Cash Collateral.**  The Pre-Petition Secured Parties have a security interest in certain of the Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral, to secure the Pre-Petition Debt and, respectively, to the same extent and order of priority as that which was held by such party pre-petition.

**(vi)**     **Priming of DIP Facility**.  In entering into the DIP Financing Agreements, and as consideration therefor, the Debtors hereby agree that until such time as all

---

[2]     The acknowledgment and agreement by the Debtors of the Pre-Petition Debt and the related liens, rights priorities and protections granted to or in favor of the Pre-Petition Secured Parties, as set forth herein and in the Pre-Petition Financing Agreements, shall constitute a proof of claim on behalf of the Pre-Petition Lenders in these Cases in respect of the Pre-Petition Debt.

DIP Obligations are paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made) and the DIP Financing Agreements are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Secured Parties under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise.

F.      **Findings Regarding the Post-Petition Financing**.

(i)      **Need for Post-Petition Financing**.  An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estate.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

(ii)      **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (A) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b), (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.  The Debtors are unable to obtain credit for borrowed money without granting to the DIP Secured Parties the DIP Protections (as defined below).

(iii)   **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Pre-Petition Liens, Priority Liens or Permitted Prior Liens are valid, senior, perfected and unavoidable.  Moreover, nothing shall prejudice (A) the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties and any committee appointed pursuant to section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection and extent of any such Priority Liens and Permitted Prior Lien and or security interest, or (B) the rights of any committee appointed pursuant to section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection and extent of the Pre-Petition Liens as set forth in this Order.

G.   **Section 506(c) Waiver**.  As a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Financing Agreements, upon entry of the Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Cases) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code.

H.   **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely for (a) working capital and general corporate purposes (including capital expenditures), (b) payment of costs of administration of the Cases, to the extent set forth in the Budget, (c) upon entry of this Interim Order, all pre-petition letters of credit issued under the Pre-Petition Financing Agreements shall be deemed issued under the DIP Credit Agreement, and (d) upon entry of this

Interim Order, payment in full of the Pre-Petition Debt other than Canadian Liabilities (as defined in the Pre-Petition Credit Agreement) or as provided in Paragraph 4(d) hereof.

I.     **Application of Proceeds of DIP Collateral to Pre-Petition Debt**.  All proceeds of the sale or other disposition of the DIP Collateral (as defined below) shall be applied to reduce the DIP Obligations, each in accordance with the terms and conditions of the DIP Credit Agreement.  Payment of the Pre-Petition Debt in accordance with this Interim Order is necessary as the Pre-Petition Secured Parties will not otherwise consent to the priming of the Pre-Petition Liens. Such payment will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties-in-interest under paragraph 7 below.

J.     **Adequate Protection for Pre-Petition Secured Parties**.  As a result of the grant of the DIP Liens, subordination to the Carve-Out, and the use of Cash Collateral authorized herein, the Pre-Petition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of their respective interest in the Pre-Petition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during the Cases.  As adequate protection, the Pre-Petition Agent (for the benefit of the Pre-Petition Secured Parties) will receive: (1) the Pre-Petition Replacement Liens, (2) the Pre-Petition Superpriority Claim, and (3) the Pre-Petition Indemnity Account.

K.     **Section 552**.   In light of their agreement to subordinate their liens and superpriority claims (i) to the Carve Out in the case of the DIP Secured Parties, and (ii) to the Carve Out and the DIP Liens in the case of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

L. **Extension of Financing**. The DIP Secured Parties have indicated a willingness to provide financing to certain of the Debtors in accordance with the DIP Credit Agreement and subject to (i) the entry of this Interim Order and the Final Order, and (ii) findings by this Court that such financing is essential to the Debtors' estate, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

M. **Business Judgment and Good Faith Pursuant to Section 364(e)**. The terms and conditions of the DIP Facility and the DIP Credit Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Secured Parties, and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

N. **Relief Essential; Best Interest**. The relief requested in the DIP Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement.

O.   **Entry of Interim Order**.   For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition Secured Parties and the DIP Secured Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.   **Motion Granted**.   The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Credit Agreement.

2.   **DIP Financing Agreements**.

(a)   **Approval of Entry Into DIP Financing Agreements**. The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements.  The Debtors are hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement and all other DIP Financing Agreements as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Credit Agreement which amounts shall not otherwise be subject to approval of this Court.

Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)     **Authorization to Borrow**.  In order to enable them to continue to operate their business, during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Agreements, and the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtors are hereby authorized under the DIP Facility to borrow up to a total committed amount of $1,100,000,000 (including the issuance of letters of credit) (consisting of $1,050,000,000 for the Debtors and $50,000,000 for InterTan Canada Ltd. (to be guaranteed by the Debtors)) in accordance with the terms and conditions of the DIP Credit Agreement.

(c)     **Application of DIP Proceeds**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement) solely for (a) working capital and general corporate purposes (including capital expenditures), (b) payment of costs of administration of the Cases, to the extent set forth in the Budget, (c) upon entry of this Interim Order, all pre-petition letters of credit issued under the Pre-Petition Financing Agreements shall be deemed issued under the DIP Credit Agreement, and (d) upon entry of this Interim Order, payment in full of the Pre-Petition Debt, other than the Canadian Liabilities (as defined in the Pre-Petition Credit Agreement) or as provided in Paragraph 4(d) hereof.

(d)     Promptly following the entry of this Interim Order, the Pre-Petition Agent shall provide the Debtors and the DIP Agent with a payoff letter, which sets forth the following, each as of the date of such payoff letter (and which may be updated by the Pre-Petition Agent at any time prior to the initiation of the funding of the payoff amount as provided such payoff letter).   At such time as the conditions precedent to the DIP Credit Agreement have been satisfied and the Debtors and the Pre-Petition Agent have reached agreement concerning the amounts set forth in the payoff letter; the Debtors shall utilize the proceeds of the first borrowing under the DIP Credit Agreement to retire the Debtors' obligations to the Pre-Petition Secured Parties (other than Canadian Liabilities (as defined in the Pre-Petition Credit Agreement) which shall be contemporaneously repaid in accordance with the Initial Order entered in the CCAA proceedings of InterTan Canada Ltd. or as provided in Paragraph 4(d) hereof).

(e)     **Conditions Precedent**.  The DIP Secured Parties shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement.

(f)     **Post-Petition Liens**.  Effective immediately upon the execution of this Interim Order, the DIP Secured Parties are hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests and liens (collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order, upon and to all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following:

(i)      Accounts;

(ii)     Equipment;

(iii)    General Intangibles, including, without limitation, Payment Intangibles and Intellectual Property;

(iv)    Inventory;

(v)     Commercial Tort Claims;

(vi)    Deposit Accounts;

(vii)   Fixtures;

(viii)  Real Property;

(ix)    Proceeds from the Debtors' interest in leases of real property;

(x)     Goods;

(xi)    Supporting Obligations and Letter of Credit Rights;

(xii)   Documents (including, if applicable, electronic documents);

(xiii)  Chattel Paper;

(xiv)   Instruments;

(xv)    Investment Property including, without limitation, all ownership or membership interests in any subsidiaries;

(xvi)   the proceeds of any avoidance actions brought pursuant to Section 549 of the Bankruptcy Code to recover any post-petition transfer of collateral;

(xvii)  any money, policies and certificates of insurance, deposits, cash or other assets;

(xviii) all of Debtors' books, records and information relating to any of the foregoing ((i) through (xvii)) and/or to the operation of any Debtors' business, and all rights of access to such Debtors' books, records and information and all property in which such Debtors' books, records and information are stored, recorded and maintained;

(xix)   all insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((i) through (xviii)) or otherwise;

(xx)    all liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((i) through (xix)), including the right of stoppage in transit; and

(xxi)   any of the foregoing, and all products, Proceeds (cash and non-cash), substitutions, Accessions and/or replacements of or to any of the foregoing;

provided, however, that the DIP Collateral shall not include (i) any avoidance actions under

Chapter 5 of the Bankruptcy Code or the proceeds thereof, other than proceeds of any avoidance

action brought pursuant to Section 549 of the Bankruptcy Code to recover any post petition transfer of collateral, (ii) the Debtors' interests in leaseholds, except proceeds thereof as provided in clause (e)(ix) above (iii) except as may otherwise be permitted under the Bankruptcy Code or other applicable law, any lease, license, contract, property rights or agreement to which any Debtor is a party or any of its rights or interest thereunder if and for so long as the grant of such Lien shall constitute or result in (A) the abandonment, invalidation or unenforceability of any right, title or interest of any Debtor therein, or (B) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract, property rights or agreement (other than to the extent that any such term would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the Uniform Commercial Code (or a successor provision or provisions) of any relevant jurisdiction or any other applicable law or principles of equity), provided that the Proceeds realized from any of the foregoing shall not be deemed excluded from the grant of a Lien, and provided further that to the extent such security interest at any time hereafter shall no longer be prohibited, the Debtors shall be deemed to have granted automatically and without any further action a Lien in, such right as if such restriction had never existed, (iv) any United States intent-to-use trademark or service mark application to the extent that solely during the period in which the grant of security interest therein would impair the validity or enforceability of such intent-to-use application under applicable federal law, (v) any governmental permit or franchise that prohibits Liens on or collateral assignments of such permit or franchise (other than to the extent that any restriction on such assignment would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the Uniform Commercial Code (or any successor provision or provisions) of any relevant jurisdiction or any other applicable law or principles of equity), or (vi) any security, Investment Property or other equity interest representing more than 65% of the

outstanding voting stock of any Foreign Subsidiary, <u>provided that</u>, the Collateral shall include 100% of the security, Investment Property or other equity interest of the outstanding voting stock of a Foreign Subsidiary that is a Loan Party. (collectively, together with the Pre-Petition Collateral, the "**DIP Collateral**") .

       (g)     **DIP Lien Priority**.  The DIP Liens to be created and granted to the DIP Secured Parties, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the DIP Collateral, and are subject only to: (x) the Carve Out, and (y) pre-petition Liens (other than the Pre-Petition Liens) which are valid, properly perfected, unavoidable, and senior to the DIP Liens under applicable law (the "Prior Permitted Liens").  The DIP Liens shall secure all DIP Obligations.  The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of any of the Cases.  The DIP Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of Section 552 of the Bankruptcy Code, or if approved in the Final Order, Section 506(c) of the Bankruptcy Code.  To avoid any doubt, subject to Paragraph 2(d) above, the term "Permitted Prior Liens" does not include, and specifically excludes, the liens securing the Pre-Petition Debt, which pre-petition liens and claims are to be subordinated to, and junior to, the liens and claims of the DIP Secured Parties.

(h)   **Enforceable Obligations**.   The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.

(i)   **Protection of DIP Secured Parties and Other Rights**.   From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and this Interim Order and in compliance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

(j)   **Superpriority Administrative Claim Status**.   Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority in all of the Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, Section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will

be, senior to, prior to or on a parity with the DIP Protections or the DIP Obligations, or with any

other claims of the DIP Secured Parties arising hereunder.

     3.    **Authorization to Use Cash Collateral and Proceeds of DIP Financing Agreement**.

     Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP

Credit Agreement, and in accordance with the Budget (as the same may be modified,

supplemented or updated from time to time consistent with the terms of the DIP Credit

Agreement, the "**Budget**"), filed on record in the Cases and introduced into evidence at the

Interim Hearing, each Debtor is authorized to use Cash Collateral and to use the advances under

the DIP Credit Agreement during the period commencing immediately after the entry of the

Interim Order and terminating upon notice being provided by the DIP Agents to the Debtors that

(i) a DIP Order Event of Default has occurred and is continuing, and (ii) the termination of the

DIP Credit Agreement.  Nothing in this Interim Order shall authorize the disposition of any

assets of the Debtors or their estates outside the ordinary course of business or other proceeds

resulting therefrom, except as permitted in the DIP Facility and the DIP Credit Agreement and in

accordance with the Budget (subject to any variances thereto permitted under the terms and

conditions of the DIP Credit Agreement).

     4.    **Adequate Protection for Pre-Petition Secured Parties**.  As adequate protection

for the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash

Collateral) on account of the granting of the DIP Liens, subordination to the Carve Out, the

Debtors' use of Cash Collateral and other decline in value arising out of the automatic stay or the

Debtors' use, sale, depreciation, or disposition of the Pre-Petition Collateral, the Pre-Petition

Secured Parties shall receive adequate protection as follows:

(a)      **Pre-Petition Replacement Liens**.  Solely to the extent of the diminution of the value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and liens in the DIP Collateral (the "**Pre-Petition Replacement Liens**") which shall be junior only to the DIP Liens and the Carve Out as provided herein.

(b)      **Pre-Petition Superpriority Claim**.  Solely to the extent of the diminution of the value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim (the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to (a) the DIP Liens, (b) the DIP Superpriority Claim, and (c) the Carve Out, in all of the Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, if approved in the Final Order, Section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition Superpriority Claim.

(c)    **Adequate Protection Payment**.  The Pre-Petition Secured Parties shall receive adequate protection in the form of (i) repayment of the outstanding amount of the Pre-Petition Debt (including, principal, interest, fees, costs, expenses) upon entry of this Interim Order, (ii) all letters of credit issued under the Pre-Petition Credit Agreement and obligations on account of cash management services and bank products shall be deemed issued and "Obligations" under the DIP Credit Agreement, and (iii) payments of costs expenses, indemnities and other amounts with respect to the Pre-Petition Debt hereafter arising in accordance with the Pre-Petition Financing Agreements and this Interim Order (collectively, the "**Adequate Protection Payments**").

(d)    **Pre-Petition Indemnity Account**. Contemporaneously with the payment in full of the Pre-Petition Debt in accordance with the terms of this Interim Order, the Debtors shall establish an interest bearing account in the control of the Pre-Petition Agent (the "**Pre-Petition Indemnity Account**"), into which the sum of $300,000 shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Pre-Petition Secured Parties under the Pre-Petition Agreements (the "**Pre-Petition Indemnity Obligations**"); provided, however, that the Pre-Petition Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtors, if the Pre-Petition Debt has been irrevocably paid in full in cash and the earliest to occur of:  (i) the Challenge Period Termination Date if, as of such date, no party has filed or asserted an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 7 hereof providing for such release; (ii) a further order of this Court; or (iii) the date this Court enters a final order closing the Cases.  The Pre-Petition Indemnity Obligations shall be

secured by a first priority lien on the Pre-Petition Indemnity Account, the Pre-Petition Liens and the Pre-Petition Replacement Liens (subject to the DIP Liens and the Carve Out).

(e)    **Adequate Protection Upon Sale of Collateral**. Upon the sale of any Pre-Petition Collateral pursuant to Section 363 of the Bankruptcy Code, any such Pre-Petition Collateral shall be sold free and clear of the Pre-Petition Liens and the Pre-Petition Replacement Liens (but excluding the Pre-Petition Indemnity Account), provided however, that such Pre-Petition Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order and the DIP Credit Agreement.

5.    **Section 507(b) Reservation**.   Nothing herein shall impair or modify the Pre-Petition Secured Parties' rights under Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Secured Parties hereunder is insufficient to compensate for the diminution in value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral during the Cases or any Successor Case, provided, however, that any Section 507(b) claim granted in the Cases to the Pre-Petition Secured Parties shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

6.    **Post-Petition Lien Perfection**.   This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Pre-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Pre-Petition Replacement Liens or to entitle the DIP Liens and the Pre-Petition Replacement Liens to the priorities granted herein.  Notwithstanding

the foregoing, the DIP Agents and the Pre-Petition Agent may, each in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.  The Debtors shall execute and deliver to the DIP Agents and the Pre-Petition Agent all such financing statements, mortgages, notices and other documents as the DIP Agents and the Pre-Petition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Pre-Petition Replacement Liens granted pursuant hereto.  The DIP Agents, in their discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.  The DIP Agents shall, in addition to the rights granted to them under the DIP Financing Agreement, be deemed to be the successors in interest to the Pre-Petition Secured Parties with respect to all third party notifications in connection with the Pre-Petition Agreements, all Pre-Petition Collateral access agreements and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements,

securities account control agreements, and credit card agreements, <u>provided</u>, <u>that</u> the Pre-Petition

Agent shall continue to have all rights pursuant to each of the foregoing.

7.     **Reservation of Certain Third Party Rights and Bar of Challenges and**

**Claims**.  Nothing in this Interim Order or the DIP Credit Agreement shall prejudice whatever

rights any official committee(s) or any other party in interest with requisite standing (other than

the Debtors) may have (a) to object to or challenge the findings herein, including, but not limited

to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security

interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii)

the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) to bring suit

against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition

Debt, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or

related to the Pre-Petition Debt; <u>provided</u>, <u>however</u>, that, unless any official committee(s) or any

other party in interest with requisite standing commences a contested matter or adversary

proceeding raising such objection or challenge, including without limitation any claim against

the Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-

Petition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550

and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured

Parties), by the later of (a) 60 days following the appointment of the first official committee of

unsecured creditors, or (b) if no official committee of unsecured creditors is appointed, 75 days

following entry of the Final Order (collectively, (a) and (b) shall be referred to as the "**Challenge**

**Period**," and the date that is the next calendar day after the termination of the Challenge Period,

in the event that no objection or challenge is raised during the Challenge Period shall be referred

to as the "**Challenge Period Termination Date**") upon the Challenge Period Termination Date,

any and all such challenges and objections by any party (including, without limitation, any official creditors' committee(s), any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Pre-Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is filed, the Pre-Petition Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition Debt.

8.    **Carve Out**.  Subject to the terms and conditions contained in this paragraph 8, the DIP Liens, DIP Superpriority Claims, the Pre-Petition Liens, the Pre-Petition Replacement Liens, the Pre-Petition Indemnity Accounts and the Pre-Petition Superpriority Claims are subordinate only to the following (the "**Carve Out**"): (a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6); (b) allowed fees and expenses of attorneys and financial advisors employed by the Debtors and any official committee(s) of creditors pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "**Case Professionals**") up to an aggregate amount not to exceed the sum of $3,000,000, plus the Reported Fee Accruals (as defined in the DIP Credit Agreement); provided that such fees and expenses are approved by the Bankruptcy Court, or such lesser amount as so approved, provided further that to the extent the $3,000,000 limitation set forth above on fees and disbursements is reduced by any amount as a result of payment of such fees and disbursements during the continuance of an Event of Default, and such Event of Default is subsequently cured or waived, then effective as of the effectiveness of such

cure or waiver, such dollar limitation shall be increased by an amount equal to the amount by

which it has been so reduced.  The Carve Out shall exclude any fees and expenses (x) incurred in

connection with the assertion or joinder in any claim, counterclaim, action, proceeding,

application, motion, objection, defenses or other contested matter, the purpose of which is to

seek any order, judgment, determination or similar relief (A) invalidating, setting aside,

avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the Pre-Petition Debt,

(iii) the Pre-Petition Liens in the Pre-Petition Collateral, or (iv) the DIP Agents' or DIP Secured

Parties' Liens in the DIP Collateral, or (B) preventing, hindering or delaying, whether directly or

indirectly, the DIP Agents', DIP Secured Parties' or Pre-Petition Secured Parties' assertion or

enforcement of their Liens, security interest or realization upon any DIP Collateral, Pre-Petition

Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Accounts,

provided, however, that such exclusion does not encompass any investigative work conducted by

the Case Professionals prior to bringing any action relating to the foregoing, (y) in using cash

collateral of the DIP Agents or the DIP Secured Parties, selling or otherwise disposing of any

other DIP Collateral, or incurring any indebtedness not permitted under the DIP Credit

Agreement, without the DIP Agents' express written consent or (z) arising after the conversion

of any of the Chapter 11 cases to a case under chapter 7 of the Bankruptcy Code. Except as

otherwise provided in this paragraph, nothing contained in this Interim Order shall be deemed a

consent by the Pre-Petition Secured Parties, or DIP Secured Parties to any charge, lien,

assessment or claim against the DIP Collateral, the Pre-Petition Collateral, the Pre-Petition

Replacement Liens, or the Pre-Petition Indemnity Accounts under Section 506(c) of the

Bankruptcy Code or otherwise.  Nothing herein shall be construed to obligate the Pre-Petition

Secured Parties, or DIP Secured Parties, in any way, to pay the professional fees or U.S. Trustee

Fees, or to assure that the Debtors have sufficient funds on hand to pay any professional fees or

U.S. Trustee Fees.  So long as the Agents have not provided notice of the occurrence and

continuance of an Event of Default (as defined in the DIP Credit Agreement), subject to

Paragraph 9 hereof, the Debtors shall be permitted to pay compensation and reimbursement of

expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code and in

accordance with the Budget (subject to any variances thereto permitted under the terms and

conditions of the DIP Credit Agreement), as the same may be due and payable and the same shall

not reduce the Carve Out.  The payment of the Carve Out shall not reduce the amount of the DIP

Obligations or the Pre-Petition Debt.

9.      **Payment of Compensation**.  Nothing herein shall be construed as consent to the

allowance of any professional fees or expenses of any of the Debtors, any official committee or

of any person or shall affect the right of the DIP Secured Parties, the Pre-Petition Agent to object

to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such

amounts not set forth in the Budget.

10.     **Section 506(c) Claims**.  Nothing contained in this Interim Order shall be deemed

a consent by the Pre-Petition Secured Parties or the DIP Secured Parties to any charge, lien,

assessment or claim against the DIP Collateral, the Pre-Petition Collateral, the Pre-Petition

Replacement Liens, or the Pre-Petition Indemnity Accounts under Section 506(c) of the

Bankruptcy Code or otherwise; provided, however, that during the interim period there shall be

no waiver of section 506(c) of the Bankruptcy Code.

11.     **Collateral Rights**.  Unless the DIP Agents have provided their prior written

consent or all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon

entry of an order approving indebtedness described in subparagraph (a) below or other

arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made), all commitments to lend have terminated, all Letters of Credit (as defined in the DIP Credit Agreement) have been secured as required by the DIP Credit Agreement, all indemnity obligations under the DIP Credit Agreement have been cash collateralized and the Pre-Petition Indemnity Accounts have been established, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a)     Except as permitted in the DIP Credit Agreement, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Accounts and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Secured Parties, or the Pre-Petition Secured Parties; or

(b)     if the DIP Obligations have not been paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made), the use of Cash Collateral for any purpose other than to pay in full in cash the DIP Obligations or as otherwise permitted in the DIP Credit Agreement;

(c)     relief from stay by any person other than the DIP Secured Parties on all or any portion of the DIP Collateral except as permitted in the DIP Credit Agreement; or

(d)     the Debtors' return of goods constituting DIP Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Credit Agreement.

12.     **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 11 above, if at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Secured Parties' obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any Chapter 11

plan or plans (the "**Plan**") with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) in violation of the DIP Credit Agreement, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall  immediately be turned over to the DIP Agents in reduction of the DIP Obligations.

13.   **Commitment Termination Date**.  All (i) DIP Obligations shall be immediately due and payable, and (ii) authority to use the proceeds of the DIP Financing Agreements and to use cash collateral shall cease, both on the date that is the earliest to occur of: (i) November 10, 2009, (ii) the date on which the maturity of the Obligations is accelerated and the Commitments are irrevocably terminated in accordance with the DIP Credit Agreement, (iii) the failure of the Debtors to obtain a Final Borrowing Order on or before the date which is forty-five (45) days after the Effective Date, or (iv) the Consummation Date (as defined in the DIP Credit Agreement) (the "**Commitment Termination Date**").

14.   **Payment from Proceeds of Collateral**.  Until the DIP Obligations have been paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made), all products and proceeds of the DIP Collateral shall be remitted directly to the DIP Agents and applied by the DIP Agents to the DIP Obligations outstanding, in each case, pursuant to the DIP Credit Agreement, in the manner set forth therein.

15.   **Disposition of Collateral**.  The Debtors shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the requisite DIP Secured Parties required under the DIP Credit Agreement (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP

Secured Parties or an order of this Court), except for sales of the Debtors' inventory in the ordinary course of business or except as otherwise provided for in the DIP Credit Agreement and this Interim Order and approved by the Bankruptcy Court, or (b) assume, reject or assign any Lease without the prior consultation with the DIP Agents, except as otherwise provided for in the DIP Credit Agreement.

16.    **Events of Default.**  The occurrence of the Commitment Termination Date or, if sooner, the DIP Agents' furnishing the Debtors with notice of the occurrence of any Event of Default (as defined in the DIP Credit Agreement) shall constitute a DIP Order Event of Default. Unless and until the DIP Obligations are irrevocably repaid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made), all commitments to lend have irrevocably terminated, all Letters of Credit (as defined in the DIP Financing Agreements) have been cash collateralized as required by the DIP Credit Agreement, and all DIP Obligations which survive termination obligations have been cash collateralized to the reasonable satisfaction of the DIP Agents, and the Pre-Petition Indemnity Account has been established, the protections afforded to Pre-Petition Secured Parties and the DIP Secured Parties pursuant to this Interim Order and under the DIP Credit Agreement, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting these cases into a Successor Case, and the DIP Liens, the DIP Super-Priority Claim, the Pre-Petition Replacement Liens and the Pre-Petition Superpriority Claim shall continue in these proceedings and in any Successor Case, and such DIP Liens, DIP Super-Priority Claim, Pre-Petition Replacement Liens, Pre-Petition Indemnity Accounts and the Pre-Petition Superpriority Claim shall maintain their respective priority as provided by this Interim Order.

17.    **Rights and Remedies Upon DIP Order Event of Default**.

(a)        Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified so that (i) after the occurrence of any DIP Order Event of Default and (ii) at any time thereafter during the continuance of such Event of Default, upon five (5) business days prior written notice of such occurrence, in each case given to each of the Debtors, counsel to the Debtors, counsel for the Creditors' Committee, if any, and the U.S. Trustee, the DIP Secured Parties, shall be entitled to exercise their rights and remedies in accordance with the DIP Financing Agreements.  Immediately following the giving of notice by the DIP Agents of the occurrence of a DIP Order Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Agents as provided in the DIP Credit Agreement and this Interim Order; (ii) the DIP Agents shall continue to apply such proceeds in accordance with the provisions of this Interim Order and of the DIP Credit Agreement; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the Pre-Petition Debt and DIP Obligations and the Carve Out; and (iv) any obligation otherwise imposed on the DIP Agents or the DIP Secured Parties to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended.  Following the giving of written notice by the DIP Agents of the occurrence of a DIP Order Event of Default, the Debtors and any creditors' committee appointed in the Cases, if any, shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred.  If the Debtors or any such creditors' committee do not contest the right of the DIP Secured Parties to exercise their remedies based upon whether a DIP Order Event of Default has occurred within such time period, or if the Debtors or any such committee do timely contest the occurrence of a DIP Order Event of Default and the Bankruptcy Court after

notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b)     Subject to the provisions of Paragraph 17(a), upon the occurrence of a DIP Order Event of Default, the DIP Agents and DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements.  All proceeds realized from any of the foregoing shall be turned over to the DIP Agents for application to the Carve Out, the DIP Obligations and the Pre-Petition Debt under, and in accordance with the provisions of, the DIP Financing Agreements, the Pre-Petition Agreements and this Interim Order.

(c)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (1) permit the Debtors to grant the Pre-Petition Replacement Liens and the Pre-Petition Indemnity Account and the DIP Liens and to incur all liabilities and obligations to the Pre-Petition Secured Parties, the DIP Lender under the DIP Financing Agreements, the DIP Facility and this Interim Order, and (2) authorize the DIP Lender and the Pre-Petition Secured Parties to retain and apply payments hereunder.

(d)     Nothing included herein shall prejudice, impair, or otherwise affect Pre-Petition Secured Parties' or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors nor the DIP Agents' or DIP Lenders' rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans under the DIP Credit Agreement.

18.     **Proofs of Claim**.  The Pre-Petition Secured Parties and the DIP Secured Parties will not be required to file proofs of claim in the Cases or in any Successor Case.

19.     **Other Rights and Obligations**.

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Interim Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order and/or the DIP Financing Agreements.

(b)     **Expenses**.  As provided in the DIP Financing Agreements, all reasonable out-of-pocket costs and expenses of the DIP Secured Parties in connection with the DIP Financing Agreements, including, without limitation, reasonable legal, accounting, collateral

examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated.  Payment of such fees shall not be subject to allowance by the Bankruptcy Court. Under no circumstances shall professionals for the DIP Secured Parties or Pre-Petition Secured Parties be required to comply with the U.S. Trustee fee guidelines.

(c)     **Binding Effect**.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Pre-Petition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.

(d)     **No Waiver**.  The failure of the Pre-Petition Secured Parties and the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Financing Agreements, the DIP Facility, this Interim Order or otherwise, as applicable, shall not constitute a waiver of any of the Pre-Petition Secured Parties' and the DIP Secured Parties' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured Parties and the DIP Secured Parties to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) exercise

any of the rights, claims or privileges (whether legal, equitable or otherwise) the DIP Secured Parties or the Pre-Petition Secured Parties.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f)    **No Marshaling**.  Neither the DIP Secured Parties nor the Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Pre-Petition Collateral, as applicable.

(g)    **Section 552(b)**.  The DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the DIP Collateral.

(h)    **Amendment**.  The Debtors and the DIP Agents may amend, modify, supplement or waive any provision of the DIP Financing Agreements without further approval of the Court unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the Total Commitments of the DIP Lenders under the DIP Financing Agreements, or (iii) changes the maturity date.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the DIP Agents (after having obtained the approval of the DIP Secured Parties as provided in the DIP Financing Agreements) and approved by the Bankruptcy Court.

(i)      **Survival of Interim Order**.  The provisions of this Interim Order and any

actions taken pursuant hereto shall survive entry of any order which may be entered (i)

confirming any Plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of

the Bankruptcy Code, or (iii) to the extent authorized by Applicable Law, dismissing any of the

Cases, (iv) withdrawing of the reference of any of the Cases from this Court, or (v) providing for

abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms

and provisions of this Interim Order including the DIP Protections granted pursuant to this

Interim Order and the DIP Financing Agreements and any protections granted the Pre-Petition

Agent and the Pre-Petition Lenders, shall continue in full force and effect notwithstanding the

entry of such order, and such DIP Protections and protections for the Pre-Petition Agent and the

Pre-Petition Secured Parties shall maintain their priority as provided by this Interim Order until

all the obligations of the Debtors to the DIP Lenders pursuant to the DIP Financing Agreements

and the Pre-Petition Debt has been indefeasibly paid in full and discharged (such payment being

without prejudice to any terms or provisions contained in the DIP Facility which survive such

discharge by their terms).  The DIP Obligations shall not be discharged by the entry of an order

confirming a Plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of

the Bankruptcy Code.  The Debtors shall not propose or support any Plan that is not conditioned

upon the payment in full in cash of all of the DIP Obligations (or other arrangements for

payment of the DIP Obligations satisfactory to the DIP Agents have been made) and the Pre-

Petition Debt, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the

Commitment Termination Date.

(j)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.

(k)    **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(l)    **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(m)    **No Waivers or Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Agents and the Pre-Petition Agent and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agents and the Pre-Petition Agent.

(n)    **Waiver of any Applicable Stay**.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

20.    **Reservations.**  Notwithstanding any language herein to the contrary, the Debtors shall not grant any liens under the DIP Facility on any property that is not property of the estate (including any property owned by Verizon or Panasonic or their affiliates) and it is not hereby altering any of the rights and obligations of the parties with the parties with respect to chargebacks or recoupment under the Debtors' prepetition contracts with Verizon or its affiliates.

21.    Nothing herein shall prejudice any and parties rights to contest the the ownership of any and all property.

22.    **Final Hearing**.

(a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for December 5, 2008, at 10:00 a.m. (Eastern) at the United States Bankruptcy Court for the Eastern District of Virginia, Richmond, Virginia.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)    On or before November 12, 2008 the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any official committee(s), if any; (d) the Office of the United States Trustee, (e) the Internal Revenue Service, (f) counsel to the Pre-Petition Agent, (g) the Pre-Petition Agent, (h) counsel to the proposed DIP Agents, (i) all of the Debtors' current landlords, and (j) the Securities and Exchange Commission. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than November 28, 2008, which objections shall be served so that the same are received on or before such date by:  (a) counsel for Debtor, (i) Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601, Attn: Linda K. Myers, Esq., Fax: (312) 861-2200, (ii) Skadden Arps Slate Meagher & Flom, LLP One Rodney Square, Wilmington, Delaware 19889, Attn.: Gregg Galardi, Esq., Fax: (888) 329-3792 and Chris L. Dickerson, Esq., Fax: (312) 407-8680, (iii) McGuireWoods LLP, One James Center, 901 East Cary Street,

Richmond, Virginia 23219, Attn.: Dion W. Hayes, Esq., Fax: (804) 698-2078 and Douglas M.

Foley, Esq., Fax: (757) 640-3957; (b) counsel for DIP Agents (i) Riemer & Braunstein LLP,

Three Center Plaza, Boston, Massachusetts 02108, Attn: David S. Berman, Esq., Fax: (617) 880-

3456, and (ii) LeClair Ryan, Riverfront Plaza, East Tower, 951 East Byrd Street, Eighth Floor,

Richmond, Virginia 23219, Attn.: Bruce Matson, Esq., Fax: (804) 783-7269; (c) counsel to any

Committee; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States

Bankruptcy Court for the Eastern District of Virginia, in each case to allow actual receipt of the

foregoing no later than November 28, 2008, at 4:00 p.m. prevailing Eastern time.

(c) **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to

enforce this Interim Order according to its terms.

SO ORDERED by the Bankruptcy Court this _____ day of December, 2008.


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -


/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1089

Counsel to the Debtors and Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

    I hereby certify that that the proposed order has been served upon or endorsed by all necessary parties.


                                              /s/ Douglas M. Foley
                                              Douglas M. Foley