Landlord's receipt of Tenant's termination notice. If Tenant does not withdraw its termination notice under Section 12.03(a)(ii) within ten (10) days following Tenant's receipt of Landlord's dispute notice, then the dispute immediately shall be referred to a single arbitrator (chosen as provided below) and the arbitrator's decision shall be final and finding on both Landlord and Tenant. The arbitrator utilized hereunder shall be experienced in the conduct of retail operations by a national, big box retailer having stores located in the Metropolitan Area, shall be mutually agreeable to both Landlord and Tenant, shall be agreed upon by Landlord and Tenant within twenty (20) days after Tenant's receipt of Landlord's dispute notice, and shall have no direct or indirect social, political or business relationship of any sort with either Landlord or Tenant or either of their Affiliates, their respective legal counsel, or any other person or entity materially involved in the operation of the Shopping Center. All documents and information relevant to the determination in dispute that is in the possession of either Landlord or Tenant shall be made available to the other party not later than fifteen (15) days after the arbitrator has been selected, and the arbitrator may permit such depositions or other discovery deemed necessary for a fair hearing. The hearing may not exceed two (2) days. The arbitrator's decision as to the propriety of Tenant's determination under Section 12.03(a)(ii) above shall be rendered within sixty (60) days following the date Tenant's receives Landlord's dispute notice, but in no event more than fifteen (15) days after the hearing. Landlord and Tenant have included these time limits to expedite the proceeding, but they are not jurisdictional, and the arbitrator may for good cause permit reasonable extensions that shall not affect the validity of the arbitrator's decision. Nevertheless, the arbitrator's decision shall be limited to only the issue of whether Tenant was reasonable in determining that the damage to or destruction of the Premises has had or would have an other than *de minimis* effect on the conduct of Tenant's business therein. Any decision by the arbitrator shall be enforceable (without limitation) in any federal or state court of competent jurisdiction located in the state and county where the Shopping Center is located. Landlord and Tenant each waive any right to trial by jury in connection with enforcement of the arbitrator's decision. The arbitrator's fees shall be paid in accordance with Section 23.17 below, but otherwise Landlord and Tenant shall each bear their own costs and expenses.

(c)     If Landlord promptly submits and diligently pursues an insurance claim but (i) fails to commence in good faith Landlord's repair and restoration obligations within ninety (90) days after Landlord's receipt of insurance proceeds, or (ii) fails to timely substantially complete such repair and restoration within two hundred forty (240) days after receipt of the insurance proceeds, then Tenant shall have the right, upon at least thirty (30) days written notice to Landlord, to terminate this Lease effective as of the date of such damage or destruction. The time periods referenced in this Section 12.03(c) shall be subject to Force Majeure and Tenant Delay.

(d)     If Tenant promptly submits and diligently pursues an insurance claim but (i) fails to commence in good faith Tenant's repair and restoration obligations within ninety (90) days after Tenant's receipt of insurance proceeds, or (ii) fails to timely complete such repair and restoration within two hundred forty (240) days after Tenant's receipt of insurance proceeds, then Landlord shall have the option, upon at least thirty (30) days written notice to Tenant, to elect to complete the repair and restoration to the Premises and to receive reimbursement therefor in full from Tenant, as Additional Rent. The time periods referenced in this Section 12.03(d) shall be subject to Force Majeure.

(e)    If this Lease is terminated, then this Lease shall terminate on the date set forth in Tenant's or Landlord's notice of termination, as the case may be, without further liability on the part of either Landlord or Tenant, except: (i) for those obligations which expressly survive the expiration or other termination of this Lease; provided, however, of Landlord shall not be entitled to specify a termination date that is less than thirty-five (35) days after the date of any such Landlord termination notice.

## ARTICLE XIII

## CONDEMNATION

SECTION 13.01    Taking.

(a)    In the event of condemnation by eminent domain or similar law, including a sale in lieu thereof to an authority or other entity having the power of eminent domain (a "Taking"), of all or any portion of the Shopping Center, which (i) results in a Taking of (y) any part of the Premises that has other than a *de minimis* effect on the Premises and/or the conduct of Tenant's business therein as reasonably determined by Tenant (subject, however, to Landlord's rights to challenge such determination as provided by Section 13.01(b) below), or (x) more than twenty percent (20%) of the parking spaces in the Shopping Center, (ii) materially and adversely affects ingress or egress to the Premises or the Shopping Center, or (iii) materially prohibits or inhibits Tenant's use of the Premises for a period in excess of sixty (60) consecutive days, then Tenant may terminate this Lease by giving notice to Landlord not more than ninety (90) days after the later of the date on which title vests in the condemning authority or the date Tenant receives notice of said vesting.

(b)    If Tenant elects to terminate this Lease pursuant to Section 13.01(a)(i) above and Landlord disputes Tenant's determination that the Taking has had or will have an other than *de minimis* effect on Tenant's business, Landlord shall give Tenant written notice of Landlord's dispute of such determination no later than ten (10) days following Landlord's receipt of Tenant's termination notice. If Tenant does not withdraw its termination notice under Section 13.01(a)(i) within ten (10) days following Tenant's receipt of Landlord's dispute notice, then the dispute immediately shall be referred to a single arbitrator (chosen as provided in Section 12.03(b) above), for proceedings conducted in accordance with Section 12.03(b) above, and the arbitrator's decision shall be final and finding on both Landlord and Tenant. The arbitrator's decision shall be limited to only the issue of whether Tenant was reasonable in determining that the Taking has had or would have an other than *de minimis* effect on the conduct of Tenant's business therein. Any decision by the arbitrator shall be enforceable (without limitation) in any federal or state court of competent jurisdiction located in the state and county where the Shopping Center is located. Landlord and Tenant each waive any right to trial by jury in connection with enforcement of the arbitrator's decision. The arbitrator's fees shall be paid in accordance with Section 23.17 below, but otherwise Landlord and Tenant shall each bear their own costs and expenses.

(c)    In the event of a Taking of all of the Premises, this Lease shall terminate as of the date of vesting of title or transfer of the Premises, whichever is earlier, without further

liability on the part of either Landlord or Tenant, except for those obligations which expressly survive the expiration or other termination of this Lease.

(d)     In the event of a Taking of the Premises, the Common Areas and/or any other area within the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding sixty (60) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, or relating to the Common Areas but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained to the contrary notwithstanding, a temporary Taking for any period in excess of sixty (60) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by Section 13.01(a) or (c), as applicable.

SECTION 13.02   Restoration and Rent Adjustment.   In the event of a Taking, if this Lease is not terminated by Tenant pursuant to Section 13.01, then (a) Landlord shall promptly restore the Shopping Center as nearly as practicable to a complete unit of like quality and character as existed prior to the Taking, which restoration shall, as applicable, include all of Tenant's Work and all other leasehold improvements performed by Tenant, but shall not include Tenant's Property, and (b) if a portion of the Premises is Taken, then from and after the date on which title vests in the condemning authority, the Rent shall be equitably reduced in proportion to the area of the Premises subject to the Taking.

SECTION 13.03   Award.   In the event of any Taking, Tenant shall be entitled to an amount of the award or compensation paid for such Taking equal to the Unamortized Costs, if any, and the balance shall belong to Landlord. Tenant shall also have the right to claim and recover from the condemning authority such compensation as may be separately awarded or recoverable by Tenant on account of any and all damage to Tenant's business by reason of the condemnation and for or on account of any cost or loss to which Tenant might be put in moving Tenant's Property, or for any other damages compensable separately to Tenant; provided, however, that no such award shall reduce the award payable to Landlord for its fee interest in the Premises. The provisions of this Section 13.03 shall be subject to the provisions of Section 13.01(c) with respect to a temporary Taking.

## ARTICLE XIV

## ALTERATIONS AND MECHANICS' LIENS

SECTION 14.01   Tenant's Alteration Rights.

(a)     Tenant shall not perform any structural or exterior alterations or improvements to the Premises (except to the extent same pertain to Tenant's Work, which is governed by the Site Design Requirements) without the prior approval of Landlord not to be unreasonably withheld, conditioned or delayed. The provisions of this Section 14.01(a) shall not apply to Tenant's building signage, which shall be governed by the applicable provisions of Article XV.

(b)     Tenant may, from time to time, without the prior approval of Landlord, make non-structural interior alterations and improvements to the Premises as Tenant deems necessary or desirable including, but not limited to, the electrical systems, the HVAC and other mechanical systems exclusively serving the Premises and not affecting the Shopping Center systems, installation of fixtures and equipment, painting, and wall and floor coverings.

(c)     Subject to Landlord prior written consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall have the right to erect and maintain an antenna, a satellite dish and/or related equipment, as may be approved by Landlord, on the roof of the Shopping Center, in a manner and in a location, and of such size and weight, reasonably approved by Landlord, and provided that Tenant: (i) uses a contractor reasonably approved by Landlord for all roof penetrations so as not to violate or invalidate any roof warranties maintained by Landlord, (ii) repairs any damage to the roof caused by the making of the roof penetrations, (iii) erects and maintains such equipment in accordance with Laws and Landlord's reasonable requirements, (iv) does not intentionally install or permit to be installed any structure or equipment that knowingly would cause any interference with satellite, radio, telecommunications or television reception or transmission in or from the premises of any other tenant or occupant of the Shopping Center, and (v) agrees to use commercially reasonable efforts to assist Landlord in resolving any interference experienced by other tenants of the Shopping Center during the Term resulting from satellite, radio, telecommunications or television equipment installed on or attached to the Shopping Center by Tenant.

(d)     Landlord shall execute and return to Tenant all reasonable appropriately completed building department or equivalent applications within ten (10) business days after Tenant's request therefor, and will reasonably cooperate with Tenant in the permitting process; provided, however, that Tenant shall pay Landlord's reasonable, actual, third-party expenses relative thereto.   If any violation of Laws caused by Landlord which is noted against the Shopping Center or the Premises (other than a violation caused by Tenant) prevents Tenant from obtaining a building permit for any alterations or a certificate of occupancy, then, upon request by Tenant, Landlord shall promptly and diligently cause such violation to be removed of record to the extent required to permit Tenant to obtain its building permit or certificate of occupancy, as the case may be.  However, if the violation was not caused by Landlord (or any of Landlord's agents, contractors, employees or invitees), then Landlord's obligations under this Section 14.01(d) shall be satisfied by Landlord using diligent, good faith and commercially reasonable efforts to have the responsible party remove such violation of record.

(e)     During any period of alteration in which any other tenant of the Shopping Center is open and operating, Tenant shall (a) make reasonable efforts to control any noise and dust at the Premises (including, without limitation, during any periods of permitted construction within the Premises) such that neither materially adversely interferes with the normal operation of any other tenant's business, and (b) not perform any exterior construction to the Premises during the months of October, November, December and January, except (i) to the extent permitted or required under this Lease; (ii) for the initial construction of Tenant's Work; (iii) as may be required by Laws or by the public utility serving the Shopping Center; or (iv) as made necessary by emergency.

(f)     Unless required by Laws, Landlord shall not make any alterations to the Premises (including, without limitation, changing the design, color or materials of the exterior of the Premises). Landlord shall neither make nor permit under the terms and conditions of any written lease or other written agreement to be made any alterations to the exterior architectural theme of the remainder of the Shopping Center Unit which would be inconsistent with an urban first-class shopping center in the State (exclusive of other National Tenants' or Regional Tenants' entrance features).

SECTION 14.02  Mechanics' Liens.   Tenant covenants that Tenant shall promptly discharge of record (by payment, bond, order of a court of competent jurisdiction or otherwise) any mechanic's lien filed against the Premises or all or any part of the Shopping Center for any work, labor, services or materials claimed to have been performed at, or furnished to, the Premises or the Shopping Center, for or on behalf of Tenant, or at the insistence of Tenant, or anyone acting for, through or under Tenant. Similarly, Landlord covenants that Landlord shall promptly discharge of record (by payment, bond, order of a court of competent jurisdiction or otherwise) any mechanic's lien filed against the Premises for any work, labor, services, materials claimed to have been performed at, or furnished to, the Premises or the Shopping Center, for or on behalf of Landlord, or at the insistence of Landlord, or anyone acting for, through or under Landlord. If Tenant fails to cause any such lien to be discharged within sixty (60) days after Landlord demands that Tenant remove same, then, Landlord may discharge the same by paying the amount claimed to be due, by bonding or by any other proceeding deemed appropriate by Landlord, and the amount so paid by Landlord and/or all costs and expenses including reasonable attorneys' fees incurred by Landlord in procuring the discharge of such lien shall be reimbursed by Tenant upon demand. Nothing contained in this Lease shall be construed as a consent on the part of the Landlord to subject Landlord's estate in the Premises to any lien or liability under any law relating to liens.

## ARTICLE XV

## SIGNS

SECTION 15.01  Tenant's Signs.   Tenant shall have the exclusive right during the Term to erect, maintain, and replace on the storefront and exterior walls of the Premises, and on the side walls of any entrance design element, if any, signs (including, without limitation, on-canopy or blade signs), temporary grand opening banners (maintained for no longer than three (3) months) placed on the storefront of the Premises and such other walls of the Premises as selected by Tenant (but in no event protruding from the Shopping Center) as permitted by the Site Design Requirements of such size, design and color as Tenant, from time to time, may desire, subject to compliance with Laws and the Condominium Documents. Landlord shall initially fabricate and install (or caused to be fabricated and installed) fabric awnings in front of the Premises bearing Tenant's trade name, in Tenant's choice of colors ("Landlord's Awnings") at Tenant's reasonable sole cost and expense, and thereafter Tenant shall have the right during the Term to maintain and replace Landlord's Awnings. Tenant agrees to pay to Landlord as Additional Rent, the actual reasonable cost and expense of initially fabricating and installing Landlord's Awnings at the Premises. Tenant may erect and maintain in the interior of the Premises any professionally prepared signs it may desire provided that Tenant's window signage, if any, shall be reasonably approved by Landlord and provided such window signage does not cover more than fifty percent

(50%) of the surface area of the windows and provided such window signage is not illuminated by neon. Notwithstanding the foregoing, Landlord's approval shall not be required for Tenant's placement of small stickers or decals that indicate the hours of business, emergency telephone numbers, credit cards accepted, or other similar information and/or stickers or decals that contain the phrase "no solicitation" or words of like import.

SECTION 15.02   Pylon Signs.   Landlord shall provide rotunda and monuments at the locations shown on the Site Plan.   Landlord, as part of Landlord's Work, shall obtain all governmental approvals and permits for such rotunda and monuments.   Tenant's sign panels shall be procured and installed at Tenant's cost.   A rendering of such rotunda/monument sign(s) showing the dimensions of the same and the size and position of all panels to be installed thereon, including Tenant's panel, is attached to this Lease as Exhibit N.   In addition, if Landlord makes available to any other tenant in the Shopping Center any other signage located in the Common Areas, then such signage shall also include Tenant's identification sign which shall be higher than and at least as large as the largest sign made available to such other tenant or tenants whose premises are equal to or smaller than the Premises.   Landlord shall not change or alter the rotunda signs or monuments bearing Tenant's sign panel(s) in a manner as to diminish the size, dimension or visibility of Tenant's sign panel(s) without obtaining Tenant's prior reasonable consent.   The cost of maintaining all rotunda signs and monuments bearing Tenant's sign panel(s) (but not the cost of individual tenants' signs thereon or the cost of the construction of the rotunda signs and monuments) and the cost of any electricity used to illuminate them, shall be includable in CAM Costs.   If at any time during the Term there becomes available a face panel on any of the Shopping Center rotunda or monument signs which would permit Tenant's presence in the Shopping Center to be designated in a higher rotunda sign or monument panel position, then Tenant shall have the right to relocate its rotunda or monument sign panel to such higher sign position; provided, however, Tenant shall not be permitted to move to the top position if the top position is occupied or reserved for the Key Tenant or permitted replacements thereof.

SECTION 15.03   Replacement.   Tenant (but not subtenants) shall be entitled, without Landlord's reasonable consent but subject to complying with the sign criteria attached to the Condominium Documents as Exhibit K-2 and Laws, to replace all of its signs with signage consistent with Tenant's then-current prototypical sign plans; provided, however, if Tenant is any party other than Circuit City Stores, Inc. or an Affiliate, then all replacement signage, including prototypical signage, shall be subject to Landlord's prior reasonable written consent. Any signage which is not consistent with such prototypical sign plans shall be subject to Landlord's reasonable approval, which shall be based solely on Landlord's consideration of the following criteria: (1) compliance with Laws and Landlord's sign criteria, (2) compliance with any limitations and restrictions set forth in other written leases at the Shopping Center expressly binding on Tenant, and (3) compliance with limitations and restrictions set forth in any title documents including, without limitation the Condominium Documents.

## ARTICLE XVI

### TENANT'S PROPERTY

SECTION 16.01   <u>Tenant's Property</u>.  All of Tenant's movable trade fixtures, ornate light fixtures, equipment, furniture, inventory and other property owned by Tenant and located at, on or in the Premises including, without limitation, computer display and storage area showcases, partitions, mezzanine, shelving, wall cases and signs (collectively, "<u>Tenant's Property</u>") shall remain the property of Tenant, exempt from the claims of Landlord or any Mortgagee or Ground Lessor, without regard to the means by which or the persons by whom Tenant's Property is installed or attached.  Tenant shall have the right at any time and from time to time and shall have the obligation at the end of the Term to remove Tenant's Property, provided that if removal of any of Tenant's Property damages any part of the Premises (other than in a *de minimis* manner), Tenant promptly shall repair such damage at its sole cost and expense.

## ARTICLE XVII

### ASSIGNMENT AND SUBLETTING

SECTION 17.01   <u>Assignment and Subletting Rights</u>.

(a)    Tenant shall have the right from time to time, without the consent of Landlord, to assign Tenant's interest in this Lease and/or to sublet, concession or license all or any portion of the Premises, subject to all of the terms and conditions of this Lease.  Unless otherwise agreed to in writing by Landlord, no assignment, subletting, licensing or concessioning by Tenant shall reduce the liability of Tenant under this Lease to the extent that such liability is not increased as a result of any amendment or modification to this Lease between Landlord and any assignee.  However, in the event of an assignment by Tenant to an assignee having an Adequate Net Worth (as defined below), or to an assignee whose obligations under this Lease are guaranteed by a guarantor having an Adequate Net Worth, all liability of the assigning Tenant under this Lease accruing from and after the effective date of such assignment shall terminate.  "<u>Adequate Net Worth</u>" shall mean a tangible net worth (as determined by generally accepted accounting principles and, if the assignee is not a publicly traded company, certified by certified public accountant), as of the effective date of such assignment, of at least One Hundred Fifty Million Dollars ($150,000,000).  In no event, however, may Tenant subdivide the Premises into more than two (2) spaces nor shall there be more than two (2) subtenants in the Premises at any one time.

(b)    Except with respect to any transaction covered under Sections 17.01(c) or 17.02, if Tenant proposes to assign this Lease or sublet, in a single transaction, the whole of the Premises, it shall first give notice thereof (the "<u>Assignment/Subletting Notice</u>") to Landlord, which notice shall specify the name and address of the proposed assignee or sublessee and the proposed use of the Premises to be made by such assignee or sublessee, together with a statement certified by Tenant of the amount of the Unamortized Costs.  Landlord shall have the right to terminate this Lease by giving notice to Tenant (the "<u>Termination Notice</u>") thereof within fifteen (15) business days after receipt of an Assignment/Subletting Notice from Tenant.  If Landlord elects to terminate this Lease, then the  Lease shall automatically terminate on the ninetieth

(90th) day (the "Termination Date") after the date on which Tenant receives Landlord's Termination Notice without further liability on the part of either Landlord or Tenant, except: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) Landlord shall (which obligation shall survive the termination of this Lease), within thirty (30) days after receiving a statement from Tenant showing the Unamortized Costs, reimburse Tenant for the Unamortized Costs. If Landlord does not give the Termination Notice within the aforesaid fifteen (15) business day period, then Landlord shall conclusively be deemed to have waived its termination rights under this Section 17.01(b) with respect to such proposed assignment or subletting transaction, and Tenant may assign this Lease or sublet the entire Premises in accordance with its Assignment/Subletting Notice. Notwithstanding the foregoing, if Landlord elects not to give a Termination Notice, then Tenant shall reimburse Landlord for all of Landlord's reasonable third-party out-of-pocket expenses including, without limitation, the cost of legal and architectural review, actually incurred by Landlord in reviewing the Assignment/Subletting Notice.

(c)     In addition to, and not in limitation of, Tenant's other rights set forth in this Article XVII, but otherwise subject to the terms, covenants, conditions and provisions of this Article XVII, and provided that Tenant is not default under the Lease beyond all applicable notice and cure periods at the time of assignment, Tenant shall have the right from time to time, upon notice to, but without the consent of, Landlord and without triggering Landlord's termination right under Section 17.01(b), to assign Tenant's interest in this Lease and/or to sublet or license all or any portion of the Premises: (i) to an Affiliate of Tenant; (ii) to any entity which purchases all or substantially all of the assets of Tenant or any of its Affiliates; (iii) to any entity which purchases Tenant's interest in the majority of stores owned or operated by Tenant or its Affiliate(s) in the Metropolitan Area; (iv) in conjunction with any merger, acquisition, consolidation or public offering of stock or other interests involving Tenant or its Affiliate(s); and/or (v) as may be required by any Laws. Notwithstanding the foregoing, Tenant shall not be relieved from liability on any assignment permitted under this Section 17.01(c) unless such assignee shall have an Adequate Net Worth.

SECTION 17.02   Collateral Assignment.   In addition to Tenant's other rights set forth in this Article XVII, a collateral assignment of Tenant's interest in this Lease by Tenant to one (1) or more Lenders (hereinafter defined), as collateral security for an indebtedness or other obligation of Tenant or its Affiliates shall be permitted and Landlord shall execute all documentation reasonably requested by Tenant or any such Lender in connection therewith. In addition, Tenant shall have the right, without Landlord's consent, to grant to an Affiliate of Tenant a license to operate all of Tenant's business operations at the Premises, without such Affiliate having assumed any liability for the performance of Tenant's obligations under this Lease. "Lender" shall mean a state or federally regulated: bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender.

SECTION 17.03   Cure Rights of Original Tenant.   If Tenant assigns Tenant's interest in this Lease and the assignor remains liable under this Lease following such assignment, then Landlord, when giving notice to said assignee or any future assignee in respect of any default, shall also give a copy of such notice to the Tenant originally named in this Lease or its Affiliate (collectively, the "Original Tenant"), and no notice of default shall be effective until a copy

thereof is so given to Original Tenant. Original Tenant shall have the right (but not the obligation) to cure such default, which cure period shall be thirty (30) days from Original Tenant's receipt of a copy of the default notice except with respect to the non-payment of Rent where the Original Tenant shall have twenty (20) days from Original Tenant's receipt of a copy of the default notice.

SECTION 17.04   <u>Recognition Agreement</u>.  If Tenant subleases all or any portion of the Premises for a term of at least five (5) years, then, notwithstanding any other provisions of this Lease, Landlord shall, upon Tenant's request, execute and deliver an agreement among Landlord, Tenant and each such subtenant in the form of <u>Exhibit I</u>, in recordable form (the "<u>Recognition Agreement</u>").

**ARTICLE XVIII**

**DEFAULT**

SECTION 18.01   <u>Tenant's Default</u>.

(a)      If Tenant defaults in the payment of any installment of Rent and such default is not cured within five (5) days after receipt of notice from Landlord thereof or if Tenant defaults in the observance of any other material covenant or agreement herein contained and Tenant shall not, within thirty (30) days after receipt of notice thereof from Landlord, cure or commence to cure such default (it being intended in connection with a default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Tenant within which to cure same shall be extended for such period as may be necessary to complete same with all due diligence), then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default, but subject, however, to Landlord having obtained a Court Ruling finding that Tenant is in default under this Section 18.01 and Landlord is entitled to remedies set forth below:

(i)      terminate this Lease, without any right by Tenant to reinstate its rights by payment of Rent or other performance of the terms and conditions hereof and upon such termination Tenant shall immediately surrender possession of the Premises to Landlord, and Landlord shall immediately become entitled to receive from Tenant, as liquidated, agreed final damages, an amount equal to the difference between the aggregate of all Rent reserved under this Lease for the balance of the Term, and the fair rental value of the Premises for that period (both discounted to present value at an annual interest rate equal to eight percent (8%)), determined as of the date of such termination; or

(ii)     with or without terminating this Lease, as Landlord may elect, re-enter and repossess the Premises, or any part thereof, and lease them to any third-party upon commercially reasonable terms and conditions, for a term within or beyond the Term; <u>provided</u>, <u>however</u>, that any such reletting prior to termination shall be for the account of Tenant, and Tenant shall remain liable for (y) Annual Minimum Rent, Tenant's Share of CAM Costs, Tenant's Share of Taxes, and other sums which would be payable hereunder by Tenant in the absence of such expiration, termination or repossession, less (z) the net proceeds, if any, of any reletting effected for the account of Tenant after deducting from such proceeds all of Landlord's

reasonable expenses (which expenses shall be amortized over the term of the new tenant's lease and only the portion thereof allocable to the balance of the Term shall be so deducted by Landlord hereunder) in connection with such reletting (including, without limitation, all repossession costs, reasonable brokerage commissions, reasonable attorneys' fees and expenses, reasonable alteration costs and expenses of preparation for such reletting).

(b)    If the Premises is at the time of default sublet or leased by Tenant to others, Landlord may, as Tenant's agent, collect rents due from any subtenant or other tenant and apply such rents to Rent due hereunder. Any monthly deficiencies payable by Tenant shall be paid monthly on the date herein provided for the payment of Annual Minimum Rent. If, after the lapse of all applicable grace periods, Landlord reasonably expends any money to cure a default by Tenant, then Tenant shall, on demand, but subject to Landlord's receipt of a Court Ruling finding such amounts due and owing by Tenant, pay Landlord the amount so paid by Landlord together with interest thereon at the rate of two percent (2%) per annum in excess of the prime rate established by the Wall Street Journal (the "Default Rate"). In addition to and not in lieu of the foregoing, Landlord shall be entitled to seek a Court Ruling finding that Tenant has been delinquent in the payment of Rent and if such Court Ruling is so obtained, Tenant shall pay interest at the Default Rate on any Rent that is delinquent beyond all applicable notice and cure periods, together with a late fee in the amount of Fifty Dollars ($50.00) per day for each day on which interest is accruing.

(c)    Landlord shall also be entitled to all other rights and remedies available to Landlord at law, in equity or otherwise, except as otherwise expressly set forth in this Lease and subject to Landlord obtaining a Court Ruling granting such other relief. Landlord expressly waives (i) any right to accelerate any element of Rent except as expressly set forth in Section 18.01(a)(i) above, (ii) any right to recover consequential or punitive damages as a result of a Tenant default or any other act or omission of Tenant, and (iii) all rights to any so-called "landlord's lien" or any similar statutory lien, granting Landlord a lien on any of Tenant's Property for the performance of any obligations of Tenant. At the request of Tenant, Landlord shall promptly confirm such waiver(s) by a writing in form reasonably satisfactory to Tenant. Anything contained in this Lease to the contrary notwithstanding, Landlord promptly shall advertise the availability of the Premises and promptly list same with licensed real estate brokers.

SECTION 18.02    Additional Landlord Remedies Due to Construction Delays by Tenant. If Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following delivery of the Premises with Cold Dark Shell work completed, then upon receipt of a Court Ruling to that effect, Landlord shall be entitled to terminate this Lease upon sixty (60) days prior notice to Tenant unless Tenant, within such sixty (60) day period, achieves Substantial Completion. If Landlord terminates this Lease, then there shall be no further liability on the part of Landlord or Tenant, except for those obligations that expressly survive the expiration or other termination of this Lease.

SECTION 18.03    Landlord's Default.

(a)    If Landlord shall (i) default in the observance of any material covenant or agreement herein contained, breach any material representation or warranty under this Lease, or shall fail to pay any charges or other amounts required to be paid by Landlord under this Lease

(including, without limitation, any insurance premiums or any reimbursements due to Tenant) and Landlord does not cure such default within five (5) days (as to a monetary default) or thirty (30) days (as to a non-monetary default), as applicable, after notice thereof by Tenant (it being intended in connection with a non-monetary default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Landlord within which to cure same shall be extended for such period as may be necessary to complete same with all due diligence), or (ii) fail to pay when due any Taxes, ground rent or any other charge or assessment, the lien of which is prior to the lien of this Lease, then Tenant shall have the right (but shall not be obligated) to, subject, however, to Tenant having obtained a Court Ruling finding that Landlord is in default under this Section 18.03:

> (w)     perform such obligation(s) of Landlord in accordance with the applicable provisions of this Lease on behalf of, and at the reasonable expense of Landlord provided that the same relate to the Premises or the conduct of Tenant's business therein;

> (x)     bring suit for the collection of any amounts for which Landlord is in default, seek injunctive relief, or seek specific performance for any other covenant or agreement of Landlord;

> (y)     offset against the Rent all amounts owed by Landlord to Tenant and/or the amounts reasonably expended by Tenant performing Landlord's obligations under this Lease, including costs and reasonable attorneys' fees, together with interest thereon at the Default Rate from the date of the outlay until paid, and, at Tenant's option, extend the Term if necessary for Tenant to fully recoup all amounts owed by Landlord to Tenant; and/or

> (z)     terminate this Lease, without waiving its rights to damages for Landlord's Default, provided that: (1) Landlord's default materially adversely interferes with the normal conduct of any business operations in the Premises, (2) Landlord's default is not reasonably capable of being cured by Tenant, and (3) subject to Section 18.02(b), Tenant gives notice of Landlord's default to any Mortgagee of whom Landlord shall have previously given Tenant notice (including its address), and such Mortgagee shall not have cured Landlord's default within the time period provided in Section 18.02(b).

Notwithstanding the foregoing, Tenant shall not be obligated to seek or obtain a Court Ruling as to clause (x) above and Tenant's right of offset under clause (y) above shall be limited to fifty percent (50%) of each installment of Rent next becoming due unless otherwise determined by the Court Ruling or insufficient Term remains to fully recoup the amounts owed by Landlord to Tenant on the amounts expended by Tenant, together with interest as provided above, in which event the amount of Tenant's offset shall be increased so that Tenant is able to fully recoup all such amounts expended by Tenant, together with interest as aforesaid, prior to the expiration of the Term. Notwithstanding anything contained in this Section 18.03(a) to the contrary, in the event Tenant asserts a default by Landlord and seeks to exercise its remedies under (y) above and the amount of such offset against Rent sought by Tenant is less than Five Thousand and No/100 Dollars ($5,000.00) ("Limited Offset Amount"), Tenant shall so state in its default notice given to Landlord. If Landlord fail to timely cure such default and fails, within ten (10) days following the expiration of Landlord's specified cure period without cure, to give

written notice to Tenant that Landlord disputes the Limited Offset Amount, then Tenant shall be entitled to offset the Limited Offset Amount against Rent without the necessity of obtaining a Court Ruling. If, however, Landlord disputes the Limited Offset Amount, then Landlord, within such ten (10) day period shall give Tenant written notice that Landlord intends to submit such dispute to arbitration as more fully set forth below. Upon the giving of such notice, the issue of whether Tenant is entitled to the Limited Offset Amount shall be referred to a single arbitrator (chosen as provided below), for proceedings conducted in accordance with Section 12.03(b) above, and the arbitrator's decision shall be final and finding on both Landlord and Tenant. The arbitrator utilized hereunder shall be experienced in the matter at issue which may include, but shall not be limited to, real estate brokers, architects, lawyers and environmental consultants, shall be mutually agreeable to both Landlord and Tenant, and shall have no direct or indirect social, political or business relationship of any sort with either Landlord or Tenant or either of their Affiliates, their respective legal counsel, or any other person or entity materially involved in the construction or operation of the Shopping Center. Any decision by the arbitrator shall be enforceable (without limitation) in any federal or state court of competent jurisdiction located in the state and county where the Shopping Center is located. Landlord and Tenant each waive any right to trial by jury in connection with enforcement of the arbitrator's decision. The arbitrator's fees shall be paid in accordance with Section 23.17 below, but otherwise Landlord and Tenant shall each bear their own costs and expenses.

(b)     If Landlord or a Mortgagee shall have notified Tenant in writing that said Mortgagee is the holder of such lien on the Shopping Center and shall so request, then Tenant shall give a similar notice to such Mortgagee and such Mortgagee shall have the same time period allowed to Landlord under this Lease from the date of Mortgagee's receipt of such notice to correct or remedy such default.

(c)     Tenant shall also be entitled to all other rights and remedies available to Tenant at law, in equity or otherwise, except as otherwise expressly set forth in this Lease and subject to Tenant obtaining a Court Ruling granting such other relief. Tenant expressly waives any right to recover consequential or punitive damages as a result of a Landlord default or any other act or omission of Landlord.

(d)     Notwithstanding the foregoing, if, in Tenant's reasonable judgment, a condition posing imminent risk of liability or material harm to persons or property or material adverse disruption to the normal conduct of any business operations in the Premises shall exist, then Tenant may exercise, at its election and upon at least ten (10) days prior written notice to Landlord, any or all of the remedies set forth in clauses (w), (x) and (y) above.

SECTION 18.04   Additional Tenant Self-help, Equitable and Legal Remedies Due to Construction Delays by Landlord. If Landlord defaults at any time in the timely completion of any component of Landlord's Work (including, without limitation, Cold Dark Shell work completed) and Landlord does not cure such default within ten (10) days after receipt of notice thereof by Tenant, then Tenant shall have the right, but not the obligation, to:

(a)     seek injunctive relief, specific performance or other equitable remedies against Landlord to require Landlord to perform its obligations under this Lease (including,

without limitation, the Site Design Requirements), the costs of which shall be governed by Section 23.17 below; and/or

(b)    seek legal remedies available to Tenant, the costs of which shall be governed by Section 23.17 below.

SECTION 18.05  Waiver; Non-Exclusive Remedies.  The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on any matters arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, and/or any claim of injury or damage. Tenant hereby expressly waives any and all rights of redemption granted by or under any present of future law if this Lease is terminated or Tenant is evicted or dispossessed by reason of violation by Tenant of any of the provisions of this Lease.  Except as otherwise expressly set forth in this Lease, no right or remedy herein conferred upon or reserved to Landlord or Tenant is intended to be exclusive of any other right or remedy in this Lease or by law or in equity provided, but each shall be cumulative and in addition to every other right or remedy given in this Lease or now or hereafter existing at law or in equity or otherwise.

## ARTICLE XIX

## SUBORDINATION, TRANSFER OF INTEREST

SECTION 19.01  Subordination.  Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any first mortgage or deed of trust for the benefit of any Mortgagee now or hereafter encumbering or affecting all or any portion of the Shopping Center, as well as to any future ground or underlying leases encumbering or affecting all or any part of the Shopping Center; provided, however, that (a) each Mortgagee shall first execute and deliver to Tenant a subordination, non-disturbance and attornment agreement in substantially the form attached as Exhibit J hereto, in recordable form, and (b) any Ground Lessor shall execute (and shall obtain the written consent of any Mortgagee) and deliver to Tenant a recordable fee owner recognition agreement which shall include the following provisions: (i) the Ground Lessor will not, in the exercise of any of the rights arising or which may arise out of such lease, disturb or deprive Tenant in or of its possession or its rights to possession of the Premises or of any right or privilege granted to or inuring to the benefit of Tenant under this Lease; (ii) in the event of the termination of the Ground Lease (as defined below), Tenant shall not be made a party in any removal or eviction action or proceeding, nor shall Tenant be evicted or removed of its possession or its right of possession of the Premises, and this Lease shall continue in full force and effect as a direct lease between the Ground Lessor and Tenant for the remainder of the Term and on the same terms and conditions as contained herein, without the necessity of executing a new lease; and (iii) Landlord and Tenant shall have the right to execute any amendment to this Lease which is specifically required hereunder and the Ground Lessor shall recognize and be bound thereto.  "Ground Lessor" shall mean the landlord under any existing or future ground or underlying lease(s) affecting all or any part of the Shopping Center (such ground or underlying lease(s) is referred to as the "Ground Lease(s)").  "Mortgagee" shall mean any state or federally regulated bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender, which is not an Affiliate of Landlord, and which holds a mortgage on the Shopping Center or is the beneficiary under a deed of trust

encumbering the Shopping Center (such mortgage or deed of trust is referred to as the "Mortgage").

SECTION 19.02   Existing Mortgages and Ground Leases.   If a Mortgage or any Ground Lease encumbers the Shopping Center or any part thereof on the Effective Date, then, simultaneously with the execution of this Lease, Landlord shall deliver to Tenant, in recordable form: (a) a subordination, non-disturbance and attornment agreement substantially in the form attached as Exhibit J-1, in recordable form, executed by each and every Mortgagee, and (b) a fee owner recognition agreement in the form and content described in Section 19.01(b), in recordable form, executed by any Ground Lessor (and, as may be required, consented to by the Mortgagee).   Should Landlord fail to so deliver such instrument(s) as provided above, Tenant shall have the right, by notice given to Landlord at any time prior to the date on which such instrument(s) are delivered, to terminate this Lease without further liability on the part of Landlord or Tenant, except: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) Landlord shall (which obligation shall survive the termination of this Lease), within thirty (30) days following Tenant's termination notice, reimburse Tenant for all its reasonable, third-party costs and expenses incurred in connection with this Lease (including, without limitation, costs associated with the preparation and review of plans and specifications, the performance of Tenant's Work, and attorneys' fees), not to exceed Fifty Thousand Dollars ($50,000).

SECTION 19.03   Transfer of Interest.   Landlord shall provide Tenant with notice upon or immediately after any sale or transfer of Landlord's interest in the Shopping Center.   Landlord shall require the buyer or transferee to assume in writing all of the obligations of Landlord under this Lease.   Notwithstanding Section 23.13, Landlord shall continue to remain liable for all accrued liability, if any, up to the date of such sale or transfer.   Notwithstanding anything contained herein to the contrary, Landlord shall continue to remain liable hereunder after such sale or transfer unless the buyer or transferee has expressly assumed in writing all of the obligations of Landlord under this Lease.

SECTION 19.04   Tenant Estoppel Certificates.   Tenant agrees, within thirty (30) days of Landlord's request, to execute and deliver to Landlord or any Mortgagee, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Tenant's actual knowledge and belief that the Landlord is not in default under this Lease, and that there are no offsets or defenses to enforcement of this Lease, except as may be stated in the certificate, and (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid.

SECTION 19.05   Landlord Estoppel Certificates.   Landlord agrees, within thirty (30) days of Tenant's request, to execute and deliver to Tenant or any assignee, transferee, subtenant or Lender, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Landlord's actual knowledge and belief that Tenant is not in default under this Lease, and that there are no offsets or defenses to enforcement

43

of this Lease, except as may be stated in the certificate, and (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid.

## ARTICLE XX

## LANDLORD'S REPRESENTATIONS, WARRANTIES AND COVENANTS

SECTION 20.01   Quiet Enjoyment.   Landlord covenants and agrees that Tenant, during the Term, shall freely, peacefully, and quietly occupy and enjoy the use and possession of the Premises without disturbance, molestation, hindrance or ejectment of any kind whatsoever by Landlord or by any party whose interest in and to any portion of the Shopping Center arises by, through or under Landlord.

SECTION 20.02   Representations, Warranties and Covenants.   In order to induce Tenant to execute this Lease and in consideration thereof, Landlord covenants, warrants and represents to Tenant as follows:

(a)   Landlord has the full power, right and authority to make this Lease for the Term, without consent, joinder, or approval of any other party.  As of the Effective Date, (i) Landlord owns fee simple title to the Shopping Center Unit free and clear of all easements, restrictions, liens, encumbrances, leases and the like, except as described on Exhibit K, and (ii) neither the Shopping Center Unit nor any portion thereof nor any portion of the Common Areas is subject to the lien of any Mortgage, except such instruments with respect to which the beneficiary has entered into an agreement in favor of Tenant, as described in Sections 19.01 and 19.02.  As of the Possession Date, Landlord will deliver to Tenant complete and exclusive possession of the Premises, except as otherwise expressly provided by the terms of this Lease, free from all orders, restrictions, covenants, agreements, leases, easements, laws, codes, ordinances, regulations or decrees (including, without limitation, those matters described on Exhibit K) that would, in any way, prevent or inhibit the use of the Premises for the sale, rental, installation, servicing and repairing of the Products and the Ancillary Products, as defined below, or prevent or restrict the use of the Common Areas or limit ingress to and egress from Flatbush Avenue, Avenue H and Nostrand Avenue, the public thoroughfares shown on the Site Plan, by Tenant, its agents, employees or invitees, subject, however, to Force Majeure and Laws. The term "Ancillary Products" shall mean furniture and appliances (including, without limitation, household appliances such as, by way of example only, ovens, refrigerators, freezers, dishwashers, washers, dryers, microwave ovens, toasters and blenders).

(b)   Landlord shall, on or before the Possession Date, have caused the delivery of the Premises with Cold Dark Shell work completed to occur in accordance with this Lease.

(c)   The Shopping Center shall, at the time of commencement of construction by Landlord, be properly zoned for the operation and maintenance of a store similar to other stores operated by Tenant and for its contemplated use, and that all necessary governmental consents, permits and approvals allowing for the performance of Landlord's Work shall have been obtained by Landlord.

WO 698030.8

44

SECTION 20.03  Site Covenants.  In order to induce Tenant to enter into this Lease, Landlord covenants to Tenant as follows (the "Site Covenants"):

(a)     Intentionally omitted.

(b)     Except for Landlord's Awnings, Landlord shall not construct (or consent to the construction of) any projections either vertical or horizontal (other than Tenant's signs or identifications) which will project along the front or rear of the building in which the Premises are situated in such a manner as to obstruct the view of Tenant's signs or its store front in any manner.

(c)     The number and size of paved parking spaces in the Shopping Center shall be the greater of (i) the requirement listed in Section 1.01(M) or (ii) the amount of spaces required by Laws (without variance).

(d)     Landlord shall not use (or consent to the use of) all or any portion of the Common Areas for retail sales or for promotional purposes.

(e)     Unless otherwise required by Laws or the public utility serving the Shopping Center, Landlord shall not make (and shall not consent to be made) any changes to those Common Areas identified as "No-Change Area" on the Site Plan (the "No-Change Area") including, without limitation, changes in the location of curbcuts, drive aisles, entrances, access points, roadways, service drives, loading docks, loading areas, sidewalks or parking spaces or reduction of the parking requirement specified in Section 20.03(c).  Unless otherwise required by Laws or the public utility serving the Shopping Center, Landlord shall not make (and shall not consent to be made) any other changes to the Common Areas which materially adversely affects Tenant's access to the Premises or the Shopping Center or the visibility of the Premises or of any of Tenant's signage.

(f)     Following Tenant's opening for business at the Premises, (a) Landlord shall make reasonable efforts to control any noise and dust at the Shopping Center (including, without limitation, during any periods of permitted construction within the Shopping Center) such that neither materially adversely interferes with the normal operation of Tenant's business, and (b) Landlord shall not perform (and shall not consent to there being performed) any exterior construction in the Shopping Center during the months of October, November, December and January, except (i) to the extent permitted under Section 5.01; (ii) for the initial construction necessary to open the Shopping Center for business; (iii) as may be required by Laws or by the public utility serving the Shopping Center; or (iv) as made necessary by emergency.

(g)     Landlord shall not consent to any solicitation, distribution of handbills, picketing, or other public demonstration in the Common Areas, except as otherwise may be mandated by Laws.

(h)     Intentionally omitted.

(i)     Landlord intentionally shall not install or permit to be installed by any other tenant or other person anywhere in the Shopping Center any structure or equipment that would knowingly cause any interference with satellite, radio, telecommunications or television

WO 698030.8

45

reception or transmission in or from the Premises and agrees to use commercially reasonable efforts to assist Tenant in resolving any interference experienced by Tenant at the Premises during the Term resulting from satellite, radio, telecommunications or television equipment installed on or attached to the Shopping Center Unit by Landlord or any other tenant.

SECTION 20.04    Condominium Documents.

(a)    Landlord covenants, represents and warrants to Tenant that: (i) the Condominium Documents have not been modified, amended or terminated; (ii) the Condominium Documents are currently in full force and effect; (iii) to its actual knowledge as of the Effective Date, no default under the Condominium Documents exists beyond any applicable notice and cure period; and (iv) the Condominium Documents are, and shall remain, superior in lien to all mortgages and related liens affecting the Shopping Center and all other land which is encumbered by the Condominium Documents.

(b)    As of the Effective Date and throughout the period ending on the earlier to occur of (i) the date on which Landlord delivers to Tenant a recordable condominium association recognition agreement executed by the condominium association pursuant to this Section 20.04(b), or (ii) the date that is ninety (90) days following the Possession Date, Landlord shall use commercially reasonable, good faith efforts to obtain for Tenant's benefit a recordable condominium association recognition agreement in substantially the form attached hereto as Exhibit J-2, which in all events shall include the following provisions: (i) the condominium association will not, in the exercise of any of the rights arising or which may arise out of the Condominium Documents, disturb or deprive Tenant in or of its possession or its rights to possession of the Premises or of any right or privilege granted to or inuring to the benefit of Tenant under this Lease; (ii) in the event of a foreclosure or threatened foreclosure of the Shopping Center Unit by the condominium association as may be permitted under the Condominium Documents, Tenant shall not be made a party in any removal or eviction action or proceeding, nor shall Tenant be evicted or removed of its possession or its right of possession of the Premises, and this Lease shall continue in full force and effect as a direct lease between the condominium association and Tenant for the remainder of the Term and on the same terms and conditions as contained herein, without the necessity of executing a new lease; and (iii) Landlord and Tenant shall have the right to execute any amendment to this Lease which is specifically required hereunder and the condominium association shall recognize and be bound thereto ("Condominium Recognition Agreement"). In that regard, Landlord shall use commercially reasonable efforts to keep Tenant informed of Landlord's efforts to obtain such Condominium Recognition Agreement. Landlord and Tenant each acknowledge that upon Landlord's delivery of the Condominium Recognition Agreement this Lease is made and shall continue to be subject and subordinate to the Condominium Documents, subject to the provisions of this Section 20.05. Tenant shall comply with the terms and conditions of the Condominium Documents to the extent same affects the Premises (it being agreed that Tenant shall not be obligated to expend any sums in connection with such compliance except to the extent otherwise expressly required by this Lease relative to Common Areas).

(c)    Landlord shall, during the Term: (i) perform and observe all of the terms, covenants, provisions and conditions of the Condominium Documents on Landlord's part to be performed and observed; (ii) defend, indemnify and hold harmless Tenant from and against any

and all claims, demands, causes of action, suits, damages, liabilities, and expenses of any nature arising out of or in connection with the enforcement of, or a claimed breach by, Landlord of any covenant, term, condition, or provision of the Condominium Documents; and (iii) diligently enforce, at its sole expense, the covenants, agreements, and obligations of the Condominium Documents.

(d)    Landlord shall, immediately upon receipt, forward to Tenant and Tenant's leasehold mortgagee, if any, a copy of any and all notices and/or demands received by Landlord under or pursuant to the Condominium Documents, which relate to, or would adversely affect, Tenant's use or occupancy of the Premises or the conduct of Tenant's business therein.

(e)    Landlord shall not amend or modify (or permit an amendment to or modification of) the Condominium Documents if such amendment or modification would diminish the rights or increase the obligations of Tenant under the Condominium Documents or under this Lease, or would adversely affect Tenant's use or occupancy of the Premises or the conduct of Tenant's business therein and Landlord within ten (10) days following full execution thereof (regardless of recording status) shall provide a copy of any such amendment or modification to Tenant.

(f)    As between Landlord and Tenant, in the event of any conflict between the Condominium Documents and this Lease, this Lease shall in all respects control.

(g)    Landlord represents and warrants that no third-party approvals are required under the Condominium Documents.

## ARTICLE XXI

## HOLDING OVER

SECTION 21.01  Holding Over.  If Tenant remains in possession of the Premises after the expiration of the Term without having duly exercised its right, if any, to extend or further extend the Term, such continuing possession shall create a month-to-month tenancy on the terms herein specified and such tenancy may be terminated at the end of any month thereafter by either party by giving at least thirty (30) days notice thereof to the other party.  During such holdover, Tenant shall be liable for Annual Minimum Rent on a monthly basis (or, if applicable, on a prorated daily basis) in an amount equal to one hundred fifty percent (150%) of the amount thereof payable by Tenant for the month immediately preceding the last day of the Term, as well as for all Additional Rent payable by Tenant under this Lease.

## ARTICLE XXII

## NOTICE

SECTION 22.01  Where and How Given.  All notices or demands which either party hereto either is required to or may desire to serve upon the other shall be in writing and shall be sufficiently served upon such other party, by (a) mailing a copy thereof by certified or registered mail, postage prepaid, return receipt requested, addressed to the party to whom the notice is directed at the "Notice Address" of such party, or (b) by a reliable overnight courier, next

business day service (such as Federal Express), all charges prepaid, furnishing a receipt upon delivery, and addressed to the party to whom the notice is addressed at the Notice Address of the part. The Notice Address of each party is:

|  |  |  |
|---|---|---|
| (a) | Landlord: | TRIANGLE EQUITIES JUNCTION LLC<br>30-56 Whitestone Expressway<br>Whitestone, New York 11354 |
| | with a copy to: | A. Barry Levine, Esq.<br>320 East 23rd Street<br>New York, New York 10010 |
| (b) | Tenant: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate |
| | with a copy to: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: General Counsel |
| | with a copy to: | Sutherland Asbill & Brennan, LLP<br>1114 Avenue of the Americas, 40th Floor<br>New York, New York 10036<br>Attention: David J. Rabinowitz, Esq. |

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

SECTION 22.02  <u>When Given</u>.  Unless otherwise provided for herein, notice shall be deemed to have been served at the earlier of the date received, refused or returned as undeliverable.  However, if such notice pertains to the change of address of either of the parties hereto, then such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given.

## ARTICLE XXIII

## MISCELLANEOUS

SECTION 23.01  <u>Rent Proration</u>.  If this Lease is terminated prior to its natural expiration date for any reason other than a Tenant default, then Landlord shall promptly reimburse Tenant for any Rent prepaid by Tenant for periods subsequent to such termination date. This Section 23.01 shall survive the termination of this Lease.

SECTION 23.02  <u>Construction</u>.  In construing this Lease, feminine or neuter pronouns shall be substituted for those masculine in form and vice versa, and plural terms shall be

substituted for singular and singular for plural in any place in which the context so requires. This Lease shall be construed without regard to: (a) the identity of the party who drafted the various provisions hereof, and (b) the addition or deletion of text made during the negotiation of this Lease. Moreover, each and every provision of this Lease shall be construed as though all parties hereto participated equally in the drafting thereof. As a result of the foregoing, any rule or construction that a document is to be construed against the drafting party shall not be applicable hereto.

SECTION 23.03  Section Headings.  The section headings in this Lease are for convenience only and do not in any way limit or simplify the terms and provisions of this Lease, nor should they be used to determine the intent of the parties.

SECTION 23.04  Partial Invalidity.  If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, then the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 23.05  Waiver.  The failure of either party to seek redress for violation of, or to insist upon strict performance of, any term, covenant or condition contained in this Lease shall not prevent a similar subsequent act from constituting a default under this Lease.

SECTION 23.06  Governing Law.  This Lease shall be governed and construed in accordance with the laws of the State.

SECTION 23.07  Successors and Assigns.  This Lease shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assign of Landlord and the successors and assigns of Tenant.

SECTION 23.08  No Broker.  Landlord and Tenant represent to each other that no broker or person is entitled to any commission by reason of the negotiation and execution of this Lease, other than the Broker identified in Section 1.01(D), and Landlord agrees that Landlord shall be solely responsible for the fees and commissions of the Broker. Landlord and Tenant agree to indemnify, defend and hold each other harmless against any and all claims by any other person for brokerage commissions or fees arising out of any conversation, negotiations or other dealings held by the other party with any other broker regarding this Lease.

SECTION 23.09  Memorandum of Lease.  Landlord and Tenant agree to execute a Memorandum of Lease in recordable form, substantially similar to that attached as Exhibit L, setting forth such provisions hereof as may be required by State law, together with such transfer tax forms as may be required to facilitate the recordation thereof. If so requested by Tenant, Landlord shall execute such Memorandum of Lease and all required transfer tax forms simultaneously with the execution of this Lease. Recording costs and any transfer taxes or other fees charged by any local or state governmental authorities in connection with such recordation shall be paid by the party requesting recordation of the Memorandum of Lease. The provisions

of this Lease shall control with regard to any omissions from, or provisions, which may be in conflict with, the Memorandum of Lease.

SECTION 23.10    Entire Agreement.    This instrument contains the entire and only agreement between the parties and no oral statements or representations or written matter not contained in this instrument shall have any force or effect. This Lease shall not be amended or modified in any way except by a writing executed by both parties. All of the exhibits attached to this Lease are incorporated into this Lease by reference and for all purposes are a part of this Lease.

SECTION 23.11    Relationship of Parties.    The relationship between the parties hereto is solely that of landlord and tenant and nothing in this Lease shall be construed as creating a partnership or joint venture between the parties hereto, it being the express intent of Landlord and Tenant that the business of Tenant on the Premises and elsewhere, and the good will thereof, shall be and remain the sole property of Tenant.

SECTION 23.12    Force Majeure.    If either party hereto shall be delayed or hindered in, or prevented from, the performance of any act required under this Lease by reason of strikes, lockouts, labor troubles, failure of power, riots, insurrection, war or other reasons of a like nature beyond the reasonable control of the party delayed in performing works or doing acts required under the terms of this Lease (any such delay, hindrance or prevention is referred to as "Force Majeure"), then performance of such act shall be excused for the period of the delay, and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay, except as otherwise specifically provided herein to the contrary. The provisions of this Section 23.12 shall not be applicable to delays resulting from the inability of a party to obtain financing or to proceed with its obligations under this Lease because of a lack of funds.

SECTION 23.13    Limitation of Landlord's Liability.    Tenant shall, on and after the Commencement Date, look only to Landlord's estate and property in the Shopping Center (or the proceeds from the sale, financing or refinancing of all or any portion thereof) and income derived from the Shopping Center net of (i) the then-current assessment of Taxes, or portion thereof, as are due and payable, (ii) CAM Costs (as defined in Section 5.03 above), but expressly excluding any Administrative Fee, and (iii) the actual debt service then due and payable under any Mortgage encumbering the Shopping Center or portion thereof for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord hereunder, and no other property or assets of Landlord, its officers, directors, stockholders, members or partners shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease; provided, however, Landlord covenants and agrees that the loan-to-value ratio relative to the aggregate indebtedness under all Mortgages encumbering the Shopping Center Unit (or any portion thereof), if any, shall not, at the time the indebtedness is incurred by Landlord, exceed ninety percent (90%). Except with respect to the limitation on personal liability hereinabove set forth, the provisions of this Section 23.13 shall not be deemed or construed to limit Tenant's rights and remedies pursuant to this Lease or which may be available at law, in equity or otherwise.

SECTION 23.14    Limitation of Tenant's Liability.    Landlord, its successors and assigns, shall look solely to the assets, if any, of Tenant and its successors and assigns, for the satisfaction

of any claim arising from or under this Lease and shall not seek to impose personal liability on any shareholder, officer, director, member or employee of Tenant or any of its Affiliates.

SECTION 23.15  <u>Intentionally Omitted</u>.

SECTION 23.16  <u>Costs</u>.  Whenever this Lease requires the performance of an act by party, such party shall perform the act at its own cost and expense, unless otherwise expressly provided to the contrary in this Lease.

SECTION 23.17  <u>Attorneys' Fees</u>.  In any action or proceeding hereunder (whether to enforce the terms and provisions of an indemnity or otherwise), the prevailing party (as so determined in said proceeding) shall be entitled to recover from the other party the prevailing party's reasonable costs and expenses in such action or proceeding, including reasonable attorneys' fees, costs and expenses.  Except as otherwise set forth herein, if either party is sued by a third party as a result of a violation of a covenant, representation or warranty herein contained by the other party hereto, then the party who has violated the covenant, representation or warranty shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees, costs and expenses.

SECTION 23.18  <u>Survival of Obligations</u>.  The obligation to pay any sums due to either party from the other that by the terms herein would not be payable, or are incapable of calculation, until after the expiration or sooner termination of this Lease shall survive and remain a continuing obligation until paid.  All indemnity obligations under this Lease shall survive the expiration or earlier termination of this Lease.

SECTION 23.19  <u>Joint and Several Liability</u>.  If either party consists of more than one person, then the persons constituting such party shall be jointly and severally liable hereunder.

SECTION 23.20  <u>Definition of Hereunder, Herein, etc.</u>.  Unless the context clearly indicates to the contrary, the words "herein," "hereof," "hereunder," "hereafter," and words of similar import refer to this Lease and all of the Exhibits attached hereto as a whole and not to any particular section, subsection, or paragraph hereof.

SECTION 23.21  <u>Tenant's Trade Name</u>.  Landlord shall not make use of Tenant's trade name (i.e., "Circuit City"®) in any advertising or marketing material including, without limitation, on any internet website, without obtaining Tenant's prior written approval, which may be withheld in Tenant's sole and absolute discretion.  Notwithstanding the foregoing, Landlord may use Tenant's trade name on Landlord's website and in informational brochures, but only for the purposes of identifying Tenant as a tenant of the Shopping Center.

SECTION 23.22  <u>Rent Abatement</u>.  Whenever under this Lease provision is made for Rent or any installment, category or denomination thereof to abate, such amount so abated shall neither accrue nor ever become payable at any time during the Term, it being acknowledged and agreed that an abatement of Rent (or any installment, category or denomination thereof) shall mean the annulment of the stated Rent obligation during the stated period of abatement.

SECTION 23.23  Counterparts.  This instrument may be executed in several counterparts, each of which shall be deemed an original. The signatures to this instrument may be executed and notarized on separate pages, and when attached to this instrument, shall constitute one complete document.

## ARTICLE XXIV

## COURT RULING

SECTION 24.01  Mechanism for Judicial Proceedings.

(a)  In all instances under this Lease where either Landlord or Tenant shall be required to obtain a Court Ruling, the procedures set forth in this Section 24.01 shall be instituted and this Section 24.01 shall control. The parties shall continue performance of their respective obligations under this Lease notwithstanding the existence or pendency of such proceedings.

(b)  Either Landlord or Tenant, as provided by this Lease, may from time to time call a special conference call for the resolution of disputes or potential disputes in accordance with this Section 24.01. Such conference call shall be held within three (3) business days of written request therefor (such request being referred to herein as a "Dispute Notice"), which Dispute Notice shall specify in reasonable detail the nature of the claim or issue potentially to be litigated and the relief or remedy sought. The conference call shall be attended by Tenant's authorized representative and Landlord's authorized representative, who each must have authority to settle the dispute or potential dispute and shall attempt in good faith to resolve the dispute or potential dispute. A party receiving a Dispute Notice may respond to the same in writing within two (2) business days of such party's receipt thereof indicating that such receiving party does not dispute what is alleged in the Dispute Notice ("Notice of No Dispute") in which event (i) no conference call need be conducted, (ii) all such matters as were alleged in the Dispute Notice shall be deemed admitted by the party receiving such Dispute Notice, and (iii) the party sending the Dispute Notice shall be deemed to have obtained a Court Ruling in its favor as to all issues set forth in such Dispute Notice.

(c)  Any issue, controversy or dispute arising out of or relating to this Lease and with respect to which this Lease expressly requires a Court Ruling including, without limitation, any issue, controversy or dispute regarding the breach, termination or validity thereof, that not resolved by and between Landlord and Tenant within five (5) days after the special conference call (or otherwise resolved by a Notice of No Dispute), shall be litigated before a court of competent jurisdiction (both of the person and the subject matter) to resolution by order or other judgment entered by such court ("Court Ruling"). Notwithstanding the foregoing, either Landlord or Tenant may seek a Court Ruling on an expedited or emergent basis or otherwise seek to obtain relief through summary proceedings as may be permissible under the applicable court rules. In the event a Dispute Notice is sent, but no special conference call is initiated or held prior to the filing of papers instituting formal proceedings to obtain a Court Ruling, the party failing to initiate or participate in any such conference call shall not be deemed to be in default under this Section 24.01 so long as such party initiates and participates in good faith in such special conference call as soon as possible after the filing of such court proceedings, but in

all events prior to the date on which the responding party is compelled by court rule or order to file responsive pleadings.

(d)     The Court Ruling may provide for interim and final injunctive relief, declaratory judgment, and other remedies, but may not award punitive, exemplary, treble, or other enhanced damages.   The Court Ruling, and any pleadings and proceedings filed or instituted seeking or supporting such Court Ruling, however, shall at all times be limited to only the issue specified in this Lease to be resolved by the Court Ruling, and to the extent that the Lease specifies certain liquidated damages, neither party may seek a Court Ruling for any relief beyond a limited finding of whether any party is entitled to such specified liquidated damages, and the amount of those damages may not be challenged or litigated, Landlord and Tenant having previously agreed such amounts are appropriate and Landlord and Tenant each hereby waiving any right to claim otherwise.

(e)     To the fullest extent permitted by Laws, no proceedings to obtain a Court Ruling under this Lease shall be joined to any other proceedings or arbitration involving any other party, whether through class action or arbitration proceedings or otherwise. The limitations on remedies described above may be deemed ineffective only to the extent necessary to preserve the enforceability of this Section 24.01.  Landlord and Tenant each waive any right to trial by jury in connection with any action or proceeding to obtain a Court Ruling.

[Signature page follows]

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be duly executed and delivered in their respective names as of the date first above written:

LANDLORD:

TRIANGLE EQUITIES JUNCTION LLC

Attest:

By: _____

Name: Lester Petracca

Title: Managing Member

TENANT:

CIRCUIT CITY STORES, INC.

By: _____

Name: John B. McKeady

Title: Vice President
Real Estate & Construction

54

WO 698030.8

## EXHIBIT A

### Site Plan

Premises – crosshatched, with Floor Area and frontage thereof (Section 1.01P)
All buildings within the Shopping Center and Floor Area thereof (Section 1.01Q)
Trash Compactor Area (Section 2.01(c))
Tenant's Preferred Area (Section 5.02(a))
Rotunda Sign(s) (Section 15.02)
Public Thoroughfares (Section 20.02(a))
No-Change Area (Section 20.03(f))
Retail 6 and 7 (Exhibit F(u))

A-1

