**EXHIBIT B**

Legal Description of the Shopping Center

**BLOCK 7577 LOT 50 AND BLOCK 7576 LOT 29**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point in the southwest line of Flatbush Avenue, which point is 313.90 feet southeast of the corner formed by the intersection of the south line of Avenue H and the southwest line of Flatbush Avenue, as these streets are laid out on the City Map:

(1) THENCE southeasterly along the southwest line of Flatbush Avenue, 127.89 feet;

(2) THENCE westerly, deflecting 120 degrees 40 minutes 02 seconds to the right along a line which is parallel to the south line of Avenue H and distant, 380.00 feet southerly therefrom, 483.58 feet to the east line of Nostrand Avenue;

(3) THENCE northerly, deflecting 94 degrees 29 minutes 59 seconds to the right, along the east line of Nostrand Avenue, 110.34 feet to the north line of property of The Long Island Rail Road Company;

(4) THENCE easterly, deflecting 85 degrees 30 minutes 01 seconds to the right, along the said north line of property of The Long Island Rail Road Company, which line is parallel to the south line of Avenue H and distant, 270.00 feet southerly therefrom, 409.70 feet to the point or place of BEGINNING.

**BLOCK 7576 LOT 27 AND BLOCK 7577 LOT 56**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point in the southwest line of Flatbush Avenue, which points is 441.79 feet southeast of the corner formed by the intersection of the south line of Avenue H and the southwest line of Flatbush Avenue, as these streets are laid out on the City Map:

THENCE southeasterly along the southwest line of Flatbush Avenue, 29.06 feet to a point;

CONTINUING THENCE westerly, along a line forming an interior angle of 59 degrees 19 minutes 58 seconds with the southwesterly line of Flatbush Avenue said line being parallel to the south line of Avenue H, for a distance of 500.38 feet to the easterly line of Nostrand Avenue:

CONTINUING THENCE northerly along the easterly line of Nostrand Avenue, a distance of 25.08 feet to a point;

B-1

CONTINUING THENCE easterly along a line forming an angle of 85 degrees 30 minutes 01 seconds with the easterly line of Nostrand Avenue said line being parallel to the south line of Avenue H, a distance of 483.58 to the southwest line of Flatbush Avenue, being the point or place of BEGINNING.

BLOCK 7576 LOT 33

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough Brooklyn, County of Kings, City and State and New York, bounded and described as follows:

BEGINNING at a point formed by the intersection of the easterly side of Nostrand Avenue and the southerly side of Avenue H;

THENCE proceeding easterly 228.35 feet across the bed of East 31st Street to the westerly side of Flatbush Avenue;

THENCE proceeding in a southerly direction along the westerly side of Flatbush Avenue, 313.90 feet to the former northerly side of the right of way of the Long Island Railroad;

THENCE proceeding in a westerly direction, 409.7 feet across the bed of East 31st Street to the easterly side of Nostrand Avenue;

THENCE proceeding in a northerly direction along the easterly side of Nostrand Avenue, 270.83 feet to the southerly side of Avenue H, to the point or place of BEGINNING.

B-2

WO 698030.8

# EXHIBIT C

## Site Design Requirements

C-1

WO 698030.8

Attachment "D"

**LANDLORD/ TENANT WORKLETTER- Retail –Dry Goods Tenant**
**Cold Dark Shell**

**1.0   UTILITIES**

**1.1   HVAC**

Condenser and hot water valve taps off the Landlord's Central system loops within the Tenant demised premises will be provided by Landlord at a location mutually acceptable to Landlord and Tenant. Outside air duct connection and associated fire/smoke dampers stubbed into Tenant's Premises at a location mutually acceptable to Landlord and Tenant shall be provided by Landlord. Design capacity for Tenant provisions shall be based on one ton of air conditioning (or 3gpm/ton of condenser water) per 300 square feet of gross useable area. Heating capacity shall be based on space envelope heat losses and projected outside air requirements at the applicable design winter outdoor air temperature. Multiple water cooled (condenser water) units with built-in hot water heating coils complete with supports, condenser water and hot water heating piping connections, valves, and outside air duct connections and associated fire/smoke dampers for the Tenant's Premises shall be by Tenant under the fit out work. Remaining portions of the system complete with distribution ductwork, air devices, insulation and controls, electrical, piping, thermostats, fire smoke dampers, within Tenant's space, also by Tenant. All mechanical equipment or systems shall meet Base Building's central system design parameters including but not limited to condenser water and hot water heating design water temperature controls, etc.

Landlord will provide the installation of building standard BTU meters to read condenser water and hot water heating consumption by Tenant within Tenant's space, at a location mutually acceptable to Landlord and Tenant. Consumption charges for the use of Condenser Water and Hot water shall be borne by Tenant in accordance with Landlord Rate schedule and lease provisions.

Smoke purge system fans and curbs and any code required duct drops into Tenant's Premises for this purpose by Landlord at a location mutually acceptable to Landlord and Tenant. Control dampers, fire/smoke dampers, associated controls and duct extensions within Tenant's interior space by the Tenant. Toilet exhaust fan and duct (discharged to the outside of the building) beyond demised walls by Landlord. Duct extension, fan, and controls within Tenant's Premises by Tenant.

**1.2   ELECTRICAL**

Landlord will provide a service feeder terminating at a pull box within the Tenant's required entry point within the building at a location mutually acceptable to Landlord and Tenant. Service to be 600 AMP 265/460 Volts, 4 wire, 3 phase, 60 hz based on a power density of +23 volt amperes per Tenant leasable area. Any switchgear and transformers

Deleted: tenant

Deleted: tenant

Deleted: tenant

Deleted: tenant

Deleted: tenant

Deleted: wire

Deleted: tenant

Formatted: Highlight

required to step-down voltage to 120/208 volts, 3 phase, 60 Hz and all other electrical panels and electrical equipment shall be provided and installed by Tenant. Conduits and raceways which may be required outside Tenant's Premises for Tenant's equipment remote from Tenant space shall be provided by Landlord at Tenant's expense.

Utility Charges:
Electric service will be separately and directly metered, billed by Con Edison at applicable commercial rates, and paid for by the Tenant.

If Tenant requires a stand by power generator it shall be provided by the Tenant at its own expense and will be subject to Landlord's approval (including location & enclosure).

**1.3    WATER/FIRE PROTECTION**

Landlord shall provide a minimum 6" diameter zone control valve assembly to supply the fire sprinkler system within Tenant's demised space. The minimum available water supply at the zone control valve assembly shall be 2000-gpm at 50-psi after all elevation and friction losses have been accounted for. The zone control valve assembly shall be a maximum of 50 feet from the tenant space, when not located within the tenant space. The location shall be coordinated with Tenant's sprinkler contractor and shall conform to the requirements of all authorities having jurisdiction. Where a fire pump is provided by the landlord it shall be a minimum rated capacity of 1500-gpm.

Tenant's Premises sprinkler system and related piping to be modified by Tenant to meet specific needs, Landlord's and Tenant's Fire Underwriter Insurance requirements and applicable codes.

**1.4    WATER/DOMESTIC**

Landlord will provide a separate 2" water line stubbed into the Premises at a location mutually acceptable to Landlord and Tenant.

Tenant will provide all interior piping within the Premises. Landlord will provide and install sub-meter at Tenant's expense.

Utility Charges:
Tenant will be responsible for cost of water consumed within Premises and for sewer costs based thereon. Sub-metered Tenant water use, billed at applicable NYC water rate, will be at a pro-rata basis through Landlord's master meter, and sewer costs will be based on such sub-metered water use billed at NYC sewer rate.

**1.5   SANITARY SEWER**

Installation of all below slab sanitary piping, including under-slab strapping is to be coordinated and installed in accordance with Landlord requirements. Any chasing and or pouring of concrete slab shall be approved by Landlord. Landlord is to approve all locations of below slab sanitary piping. Landlord to provide single (or multiple at Landlord's option) sanitary waste capped outlets minimum 6" stubbed to Tenant's Premises at a location mutually acceptable to Landlord and Tenant. Landlord to provide all below slab sanitary piping at Tenant's expense.

All branch piping to individual fixtures or drains and stubs through the floor slab will be by the Tenant.

**1.6   TELEPHONE & CABLE TV**

Landlord will provide a central main telephone service room location equipped, at Tenant's expense, with (1) 4" empty conduit and (1) █" empty conduit stubbed (and nylon pull wire) from such telephone room to one location mutually acceptable to Landlord and Tenant within the Tenant's Premises. Telephone system within the Premises including conduit and raceways, outlets and cover plates, telephone backboard and phone system equipment and components will be by the Tenant.

**SATELLITE**

Landlord will furnish and install at Tenant's expense, Tenant's prototypical Satellite Support Pole and 1-1/2" empty rigid conduit ████████████████████ ███████████████████████ with weatherhead. ██████████████████████████████████████ Conduit and Support Pole to conform to Tenant's specifications.

**1.7   MEP GENERAL**

Any penetrations into other Tenant spaces or Common Area must be fireproofed and waterproofed to meet local codes and Landlord must approve said penetrations.

**1.8   FIRE ALARM**

With the exception of such Fire Alarm devices required installed for Tenant space TCO, the Fire alarm system within the Premises is to be designed, furnished, and installed by the Tenant and must be integral to and tied to the building's central Fire system which has provisions to separately monitor the tenant space. Tenant's system equipment and devices shall be compatible with building's central system.

All installation costs for integration with the central system are the responsibility of the Tenant. Tenant must contract with Landlord's Fire Alarm Subcontractor for system tie-in.

**2.0   COLD DARK SHELL TO BE DELIVERD**

---

Deleted: satellite connection and with an

Deleted: (4")

Formatted: Highlight

Formatted: Highlight

Formatted: Highlight

Deleted: tenant

Formatted: Highlight

Formatted: Highlight

Formatted: Highlight

Deleted: ed and tied to the building's central fire alarm system.

<u>Concrete</u>
- Site Concrete – Provide curbs and walks around the building
- Foundation System – Provide the foundation to meet soils report and code requirements
- Floor Slab – Provide the interior floor slab for the sales floor and the warehouse areas. The floor slab is to be design and constructed to handle Tenant prototypical racking loads. Floor Area loads are as follows: Warehouse/Receiving area = 200 psf and Sales floor area = 125 psf. The interior floor slab is to be constructed as a single level plain between column lines 13N and 9J of the attached floor plan (Attachment 1).

<u>Steel</u>
- All steel framing per Landlord's approved shell documents.
- Provide all metal framing and steel for both the interior and exterior storefront system
- Provide all vertical service shafts pursuant to Landlord's drawings

<u>Wood and Moisture Prevention</u>
- Provide roof walkway pads to all roof top mounted equipment
- Provide all necessary flashing, coping, etc. to meet design requirements

<u>Finishes</u>
- Provide all exterior finishes (paint, EIFS, etc.) per Landlord's elevation, except for building signage (to be approved by Landlord). Landlord will provide rotunda signage and fabric awnings at Tenant's cost. (Attachment 2)

<u>Doors, Window, Glass</u>
- Provide the door system at the main entry & vestibule
- Provide all exterior and demised premises hollow metal doors, frame and hardware and exiting requirements per Landlords Shell documents and specifications (Attachment 3)
- Provide the exterior and interior storefront system at the store entry
- Provide security grille in storefront system per Tenant's specifications (Attachment 4)

**3.0   RESTROOMS**

Tenant will be responsible for providing restrooms within its Premises in compliance with NYC Building Code. Tenant will be responsible for all interior walls, plumbing walls, finishes, fixtures, floor waterproofing membrane and equipment required for complete build-out of all restroom facilities including below slab sanitary piping.

**4.0   REIMBURSEMENT OF COSTS BY TENANT**

---

*Margin comment boxes:*

**Deleted:** Circuit City's

**Deleted:** required for Tenant services

**Deleted:** ¶

**Formatted:** Indent: Left: 0", First line: 0"

**Deleted:** 3.0   CIVIL / BUILDERS PAVEMENT PLANS¶
The Civil / Builders Pavement Plans shall show contours in accordance with standard engineering practice and these contours shall be shown with the existing and final elevations. ¶
¶
The Civil / Builders Pavement Plans shall not be materially changed [R] the Landlord without the prior consent of Circuit City, which consent shall not be unreasonably withheld or delayed.¶

**Formatted:** Highlight

**Deleted:** 4.0

**Deleted:** their

**Deleted:** 5.0

Tenant shall reimburse Landlord within thirty (30) days following Landlord's written demand with basic supporting documentation for all costs and expenses incurred or to be incurred by Landlord in connection with any work provided herein to be performed by Landlord at Tenant's expense.   Landlord shall notify Tenant of the anticipated cost of performance (including, without limitation, labor, materials, general conditions, and insurance costs) of any work to be performed by Landlord at Tenant's expense.   Tenant shall then have fifteen (15) days following receipt of such notification in which to notify Landlord of either (A) Tenant's agreement with Landlord's estimation of such cost, (B) Tenant's dispute with Landlord's estimation of cost, or (C) Tenant's intention to alter its Tenant's Plans and Specifications so as to eliminate or reduce the scope of the work to be performed by Landlord at Tenant's expense.   If Tenant's notice states Tenant's intention to alter its Tenant's Plans, as set forth in clause (C) above, then any new scope of work resulting from such altered Tenant's Plans and Specifications to be performed by Landlord at Tenant's expense shall be governed by the provisions of this Section.   If such Tenant's notice states Tenant's dispute with Landlord's estimation, as set forth in clause (B) above, then the parties shall negotiate in good faith (on an expedited basis) an accord as to the estimated cost of such work.   Failure by Tenant to respond to Landlord's notice within the aforementioned fifteen (15) day period shall be deemed Tenant's agreement in the manner set forth in clause (A) above.   Upon agreement or accord as to the cost of such work, Tenant shall pay to Landlord, in accordance with the first sentence of the paragraph 4.0, the sum of (w) the costs and expenses of providing materials and performing the work plus (x) reimbursement of a proportionate share of Landlord's OCIP costs plus (y) costs and expenses of Landlord's expediters plus (z) a fee to the general contractor or construction manager in the amount of five percent (5%) of the cost of the work, subject to a reasonable increase.

**Deleted:**

| POSSESSION WORK | |
|---|---|
| Landlord's Tasks | Anticipated Completion Date |
| Landlord's delivery of Civil / Builders Pavement Plans | 05/02/07 |
| Landlord's delivery of Shell documents and specifications (Attachment 3) | 05/25/07 |
| Landlord's delivery of the Geotechnical Report | 04/24/07 |
| Landlord's delivery of the Phase II Report | 04/24/07 |
| Landlord's completion of the Landlord's work, 1.0 through 3.0 of this Work Letter,  including deliver of the Landlord's Work Certificate (Attachment 6) | 12/01/07 |
| Construction and installation of permanent utilities | 12/01/07 |
| Construction and installation of : paving, curbing , sidewalks, landscaping and exterior lighting | 12/01/07 |
| Construction of monument sign identifying the Shopping Center | 03/01/07 |

**FLOOR PLAN (ATTACHMENT 1)**

**LANDLORDS ELEVATION (ATTACHEMENT 2)**



FRONT ELEVATION

N.T.S.

US SIGNS

Created exclusively for: CIRCUIT CITY #4323
Address:
City: BROOKLYN TRIANGLE
State: NY
Sign Location:
Account Rep.: STEVE BERRYMAN
Client's Approval: Date
Landlord's Approval: Date

| Design No.: | US99979-R2 | Sheet No.: 1 of 6 |
| Date | 04/29/07 | Rev. Date 11/08/07 |
| Designer: | EJT | Scale AS NOTED |

THIS DESIGN AND ENGINEERING IS SUBMITTED AS OUR PROPOSAL, AND THE RIGHT TO USE AND REPRODUCE OR EXHIBIT IN ANY FORM, IS NOT AUTHORIZED WITHOUT WRITTEN PERMISSION BY US SIGNS.

US99979-R2-C City#4323 Brooklyn Triangle NY



**Total = 183.82 Sq. Ft.**

/69979-R2-C City#4323 Brooklyn Triangle NY

**GENERAL SPECIFICATIONS**

*Illuminated single-sided logo.*
Fabricated aluminum construction cabinet with zero bleed retaining system. Painted matte white # N-202 acrylic polyurethane from Matthews paint. Translucent white flexible substrate (3M Panaflex or equal) with digitally printed graphics. Internally illuminated with H.O. fluorescent lamps. Logo to be mounted to existing canopy with fasteners & mounting hardware as req'd.

*Non-illuminated reverse pan letters.*
Fabricated .090" aluminum letter returns & faces. Brushed aluminum finish. Letters to be mounted to existing canopy with fasteners & mounting hardware as req'd.

• (1) Set req'd.

**Note : See Page 5 for more detail)**

**LOGO LAYOUT - SIGN 1 ( FRONT ELEVATION )**
Scale 3/16" = 1'-0"

14'-0"

2'-4"

14'-0"

2.33" x 12.83" = 28.89 Sq. Ft.
12'-10"

circuit city

Area = $\pi R^2$ = 3.14159 x 7²
= 3.14159 x 49 = **153.93 Sq. Ft.**

**END ELEVATION :**
Scale 3/16" = 1'-0"

1'-0"
5"

THIS DESIGN AND ENGINEERING IS SUBMITTED AS OUR PROPOSAL, AND THE RIGHT TO USE AND REPRODUCE OR EXHIBIT IN ANY FORM, IS NOT AUTHORIZED WITHOUT WRITTEN PERMISSION BY US SIGNS.

**US SIGNS**

PRIMARY WIRING OF ADEQUATE VOLTAGE AND AMOUNT TO SIGN FURNISHED AND CONNECTED BY CLIENT.

**Corporate Office**
1600 Swing, Rte. 7900
Houston, TX 77067
713-877-7900
FAX: 713-877-7800

**Dallas Regional Office**
2723 Ben Jordan Blvd.
Denton, TX 76205
940-380-8153
FAX: 940-380-0895

**Austin Regional Office**
325 Canyon Circle Dr.
Canyon Lake, TX 78133
800-305-4148
FAX: 830-935-4175

**Buffalo Regional Office**
1660 Sweet Home Rd. Suite 8
Amherst, NY 14228
716-689-7900
FAX:716-689-0777

The purchaser agrees to hold the seller harmless against any cause for action in which patent royalties, including but not limited to copyrights, etc., as a result of designs for parts and the purchase or otherwise made which the client is any way underground relevant to, the purchase or other reproduction made which...

Created exclusively for:
**CIRCUIT CITY**   **#4323**

Address:
City:   **BROOKLYN TRIANGLE**
State:   **NY**
Sign Location:
Account Rep.:
Account Rep.:   **STEVE BERRYMAN**
Client's Approval:   Date
Landlord's Approval:   Date

| | |
|---|---|
| Design No.: **US6997R-R2** | Sheet No.: **2 of 5** |
| Date **06/29/07** | Rev. Date **11/08/07** |
| Designer: **EIT** | Scale **AS NOTED** |

UL LISTED
UNDERWRITERS LABORATORIES INC.
ELECTRIC SIGN





LOGO LAYOUT - SIGN 3 (FRONT ELEVATION) : Scale 3/8" = 1'-0"

2'-3 ½"

12'-0"

27.49 Sq. Ft.

1'-3 ¾"

END ELEVATION : Scale 3/8" = 1'-0"

5"

**GENERAL SPECIFICATIONS**

Illuminated channel logo & letters.
Fabricated aluminum logo & letter returns & backs. 3/16" white acrylic faces. 1" jewelite
face retainers. Internally illuminated with white LED powered by low voltage remote
electronic transformers contain in metal transformer box. All wiring & materials used will be
U.L. approved. Logo & Letters to be mounted to existing canopy with fasteners & mounting
hardware as req'd.

* (1) Set req'd.

**COLOR SCHEME**

■ Black returns & jewelite

■ Green PMS # 376C
3M Brilliant Green 3630-106

□ White acrylic &
White LED

*Note : See Page 5 for more detail*

/RB9979-R2-C Copy#4323 Brooklyn Triangle NY

.040" aluminum return

1" jewelite

3/16" Plexiglass face

U.L. Shut of switch

LED modules

Low voltage transformer

.063" aluminum back

Non corrosive
fasteners as req'd

1/4" weep holes

Building fascia

Primary elect. etc.

**SECTION DETAIL**
Scale : N.A.

THIS DESIGN AND ENGINEERING IS SUBMITTED AS OUR PROPOSAL, AND THE RIGHT TO USE AND REPRODUCE OR EXHIBIT IN ANY FORM, IS NOT AUTHORIZED WITHOUT WRITTEN PERMISSION BY US SIGNS.

Created exclusively for: **CIRCUIT CITY**    **#4323**
Address:
City: **BROOKLYN TRIANGLE**
State: **NY**
Sign Location:
Account Rep.: **STEVE BERRYMAN**
Client's Approval:          Date
Landlord's Approval:         Date

Design No.:          Sheet No.
**US9979-R2**          **4 of 6**
Date          Rev. Date
**06/29/07**          **11/06/07**
Designer:          Scale
**EIT**          **AS NOTED**

**US SIGNS**

PRIMARY WIRING OF ADEQUATE VOLTAGE
AND LOCATED TO BE PROVIDED, FURNISHED AND
CONNECTED BY CLIENT.

Corporate Office
1800 Burton, Ste. 700
Houston, TX 77067
713-877-7900
FAX: 713-877-7909

Dallas Regional Office
2229 San Jacinto Blvd.
Denton, TX 76205
940-380-8153
FAX: 940-380-0296

Austin Regional Office
222 Canyon Cove Dr.
Canyon Lake, TX 78133
830-935-4169
FAX: 830-935-4175

Buffalo Regional Office
1600 Brewster Parkway Ste 8
Cheektowaga, NY 14225
716-689-7000
FAX: 716-689-0779

The purchaser agrees to hold the seller harmless
against any claims for costs or damages which
may occur as a result of drilling for piers and
foundations, including but not limited to sewer,
water, electrical, gas or underground structures which
the purchaser or others may deem suitable.





**LOGO & LETTERS LAYOUT : Scale 3/16" = 1'-0"**

2'-9" Fascia

2'-9" Logo

25'-6" Fascia

circuit city

1'-7 1/2" Letters

**END ELEVATION :** Scale 3/16" = 1'-0"

5"

## COLOR SCHEME

☒ Red
■ Black
□ White
▨ Digitally printed logo graphics

## GENERAL SPECIFICATIONS

Illuminated channel logo & letters.
Fabricated .063" aluminum logo & letter returns & backs. Black finish returns.

• **Logo** : 3/16" white Plexiglas with digital printed vinyl graphics applied 1st surface. 1" Jewelite face retainers. Internally illuminated with multiple rows of 15mm 6500 white neon powered by 30ma remote electronic transformers.

• **Letters** : 3/16" red Plexiglas letter faces with 1" Jewelite face retainers. Internally illuminated with multiple rows of 15mm red neon tubing powered by 30ma remote electronic transformers.
All wiring & materials used will be U.L. approved.
Logo & Letters to be mounted to building fascia with fasteners & mounting hardware as req'd.

• **(1) Set req'd.**

UNDERWRITERS LABORATORIES INC.
ELECTRIC SIGN

/8997B-R2-C City#4323 Brooklyn Triangle NY

THIS DESIGN AND ENGINEERING IS SUBMITTED AS OUR PROPOSAL, AND THE RIGHT TO USE AND REPRODUCE OR EXHIBIT IN ANY FORM, IS NOT AUTHORIZED WITHOUT WRITTEN PERMISSION BY US SIGNS.

**US SIGNS**

Corporate Office
1900 Dwntg. Ste. 700
Houston, TX 77067
716-877-7000
FAX: 715-877-7005

Dallas Regional Office
2225 Beas Archer Blvd.
Denton, TX 76205
940-380-0153
FAX: 940-380-0595

Austin Regional Office
325 Canyon Circle Dr.
Canyon Lake, TX 78133
830-935-4108
FAX: 830-935-4175

Buffalo Regional Office
1400 Sweet Home Rd. Ste 8
Amherst, NY 14228
716-689-7000
FAX 716-689-8779

Created exclusively for: **CIRCUIT CITY    #4323**

Address:
City: **BROOKLYN TRIANGLE**
State: **NY**
Sign Location:
Account Rep: **STEVE BERRYMAN**
Client's Approval:    Date
Landlord's Approval:    Date

Design No.:
**US8997B-R2**    Sheet No.: **6 of 6**
Date    Rev. Date
**06/29/07**    **11/08/07**
Designer:    Scale
**EIT**    **AS NOTED**

PRIMARY WIRING OF ADEQUATE VOLTAGE AND CIRCUITS TO SIGN FURNISHED AND CONNECTED BY CLIENT.

The purchaser agrees to hold the seller harmless against any cause in action for damage which may occur as a result of sitting for pole and foundations, including but not limited to power, the purchaser of ordinary merchandise.

**LANDLORD SHELL DOCUEMNTS AND SPECIFICATIONS (ATTACHMENT 3)**

| Drawing Title | Date |
|---|---|
| 4301 Elect.dwg | 04/17/07 |
| 4301 Mech.dwg | 04/17/07 |
| 4301 Plum.dwg | 04/17/07 |
| A5-6a.pdf | 09/07/05 |
| A5_4.pdf | 06/23/06 |
| A2_1.dwg | 03/29/07 |
| Elevation Flatbush.pdf | 09/07/05 |
| S001.pdf - S421.pdf (55 sheets total) | 09/07/05 |
| ALTA 01.pdf | 12/05/04 |
| AT1.pdf – TSP101.pdf (23 sheets total) | 02/12/07 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**SECURITY GRILLE SPECIFICATIONS (ATTACHMENT 4)**

**LANDLORD'S WORK CERTIFICATE (ATTACHEMENT 5)**

To:     Circuit City Stores, Inc.
        Deep Run I
        9950 Mayland Drive
        Richmond, Virginia  23233
        Attention: Vice President-Construction

        Re:     Circuit City Store # 4323 / Triangle Junction, Brooklyn, NY

Ladies and Gentlemen:

    The undersigned, as Landlord has completed all Landlord Work and has caused "Delivery of the Premises with the Cold Dark Shell Work" as described in the Lease, to occur on _____, ____, all in accordance with the terms of the Landlord/Tenant Work Letter dated _____, ____. Specifically, the undersigned hereby certifies that:

[ Deleted: Land ]

- Grading of the Land and the Common Areas has occurred in accordance with the Civil / Builder's Pavement Plans.
- The Cold Dark Shell has been completed as of this date and the Cold Dark Shell has been constructed in accordance with the Landlord's Shell documents and specifications.

    All conditions precedent to issuance of your building permit have been satisfied by Landlord, and we certify that all elements of the Landlord Work and Delivery of the Land have been satisfied in accordance with the Landlord/Tenant Work Letter.

                    LANDLORD:    _____,

                            a _____

By:    _____
Name:  _____
Title: _____

**SIGNAGE PACKAGE (ATTACHMENT 6)**

**EXHIBIT C-1**

<u>Possession Date Notice</u>

[Letterhead of Landlord]

_____, 200__

Via overnight courier service per Article XXII of the Lease

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention:  Vice President of Real Estate

Re:     Lease Agreement dated as of _____, 200__ (the "**Lease**"), between TRIANGLE
        EQUITIES JUNCTION  LLC, as landlord ("**Landlord**"), and CIRCUIT CITY STORES,
        INC., as tenant ("**Tenant**"), with respect to certain retail premises (the "**Premises**")
        located in the Triangle Junction Shopping Center, Brooklyn, New York.

Gentlemen:

        In accordance with the provisions of Section 2.05(a) of the Lease, Landlord hereby
informs the Tenant that the Possession Date (including, without limitation, the delivery of the
Premises with Cold Dark Shell work completed) shall take place at 8:00 A.M. on _____,
2008.  This notice shall constitute the Possession Date Notice referred to in Section 2.05 of the
Lease.

                        TRIANGLE EQUITIES JUNCTION LLC


                        By:_____
                        _____, (Vice) President

cc:     Circuit City Stores, Inc.
        9950 Mayland Drive
        Richmond, Virginia 23233
        Attention:  General Counsel

C-1

WO 698030.8

# EXHIBIT D

## W-9 Form

D-1

| Form **W-9**<br>(Rev. October 1998)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | Give form to the<br>requester. Do NOT<br>send to the IRS. |
|---|---|---|

Name of a past account (or you change your name, see Specific Instructions on page 2)

**Lester Petracca**

Business name, if different from above. (See Specific Instructions on page 2)

**Triangle Knitting Junction LLC**

Check appropriate box: ☐ Individual/Sole proprietor   ☐ Corporation   ☐ Partnership   ☒ Other ► LLC

Address (number, street, and apt. or suite no.)

**30-56 Whitestone Expressway - Suite 300**

Requester's name and address (optional)

City, state, and ZIP code

**Whitestone, New York 11354**

**Part I   Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, if you are a resident alien OR a sole proprietor, see the instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How To Get a TIN on page 2.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

Social security number | | | | | | |

OR

Employer identification number
1 1 3 5 9 9 7 2 2

**Part II** For Payees Exempt From Backup Withholding (See the instructions on page 2)

**Part III   Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

Certification Instructions.—You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here   Signature ►                                    Date ►

**Purpose of Form.**—A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are an exempt payee.

Note: If a requester gives you a form other than a W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

What is Backup Withholding?—Persons making certain payments to you must withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that may be subject to backup withholding

include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, payments you receive will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. The IRS tells the requester that you furnished an incorrect TIN, or

3. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

4. You do not certify to the requester that you are not subject to backup withholding under 3 above (for reportable interest and dividend accounts opened after 1983 only), or

5. You do not certify your TIN when required. See the Part III instructions on page 2 for details.

Certain payees and payments are exempt from backup withholding. See the Part II instructions and the separate Instructions for the Requester of Form W-9.

**Penalties**

Failure To Furnish TIN.—If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

Civil Penalty for False Information With Respect to Withholding.—If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

Criminal Penalty for Falsifying Information.—Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

Misuse of TINs.—If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

Cat. No. 10231X                          Form **W-9** (Rev. 10-98)

D-2

## EXHIBIT E

### Commencement Date and Expiration Date Agreement

THIS COMMENCEMENT DATE AND EXPIRATION DATE AGREEMENT, made as of the _8_ day of _August_, 200 _8_, by and between TRIANGLE EQUITIES JUNCTION LLC ("**Landlord**") and CIRCUIT CITY STORES, INC. ("**Tenant**").

### W I T N E S S E T H :

WHEREAS, Landlord is the owner of a certain shopping center known as Triangle Junction (the "**Shopping Center**"), situated in Brooklyn, New York;

WHEREAS, by that certain Lease Agreement dated as of _December 4_, 200_7_ (the "**Lease**"), Landlord leased a portion (the "**Premises**") of the Shopping Center to Tenant;

WHEREAS, Tenant is in possession of the Premises and the Term of the Lease has commenced; and

WHEREAS, under Section 2.10 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease.

NOW, THEREFORE, Landlord and Tenant agree as follows:

1.     The Commencement Date occurred on _August 12_, 200 _8_.

2.     The **Initial Lease Term** shall expire on January 31, 20_19_, unless Tenant timely exercises any option to extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

3.     The date of commencement of the **first Extension Period** shall be February 1, 20_19_, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20_24_, unless Tenant timely exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

4.     The date of commencement of the **second Extension Period** shall be February 1, 20_24_, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20_29_, unless Tenant timely exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

5.     The date of commencement of the **third Extension Period** shall be February 1, 20_29_, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20_34_, unless the Lease terminates earlier as provided in the Lease.

6.    The date of commencement of the **fourth Extension Period** shall be February 1, 20_34_, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20_39_, unless the Lease terminates earlier as provided in the Lease.

7.    Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Lease.

E-2

IN WITNESS WHEREOF, the parties hereto have caused this Commencement Date and Expiration Date Agreement to be executed the date and year first above written.

**LANDLORD**:

TRIANGLE EQUITIES JUNCTION LLC, a New York limited liability company

By _____
Name:  Lester Petracca
Title:  Managing Member

**TENANT**:

CIRCUIT CITY STORES, INC., a Virginia corporation

By _____
Name ___Chris Crowe_____
Title ___Dir of RE._____

E-3

## EXHIBIT F

### <u>Prohibited Uses</u>

"<u>Prohibited Uses</u>" shall mean any one or more of the following uses:

(a)     a bar, pub, nightclub, music hall or disco in which less than fifty percent (50%) of its space or revenue is devoted to and derived from food service;

(b)     a bowling alley;

(c)     a billiard or bingo parlor;

(d)     a flea market;

(e)     a massage parlor;

(f)     a funeral home;

(g)     a facility for the sale of paraphernalia for use with illicit drugs;

(h)     a facility for the sale or display of pornographic material (as determined by community standards for the area in which the Shopping Center is located);

(i)     an off-track betting parlor;

(j)     a carnival, amusement park or circus;

(k)     a gas station, car wash or auto repair or body shop (the parties specifically acknowledging that Tenant's car stereo installation facility is not included in this prohibition (k));

(l)     a facility for the sale of new or used motor vehicles, trailers or mobile homes;

(m)     a facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center;

(n)     a skating rink;

(o)     an arcade, pinball or computer game room (provided that retail facilities in the Shopping Center may operate no more than four (4) such electronic games incidentally to their primary operations);

(p)     service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments) or other non-retail uses except for (i) offices and storage facilities incidental to a primary retail operation; and (ii) retail offices providing services commonly found in similar first-class shopping centers in the Metropolitan Area (for example, financial services, real estate brokerage, insurance agency,

WO 698030.8

banking, travel agency); provided, however that not more than five thousand (5,000) square feet of Floor Area in the Shopping Center, in the aggregate, shall be devoted to such uses;

(q)     a banquet hall, auditorium or other place of public assembly;

(r)     a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers) except for (i) training or educational facilities incidental to a primary retail operation; and (ii) training or educational facilities commonly found in similar first-class shopping centers in the Metropolitan Area; provided, however that not more than five thousand (5,000) square feet of Floor Area in the Shopping Center, in the aggregate, shall be devoted to such uses;

(s)     a theater of any kind;

(t)     a facility for the sale or rental of used goods (including thrift shops, secondhand or consignment stores) or any facility selling new or used merchandise as a wholesale operation, a liquidation operation, odd lots, lot sales, factory close-outs or imperfect goods;

(u)     a gymnasium, sport or health club or spa except that a gymnasium, sport or health club or spa may be located in the premises identified on the Site Plan as Retail 6 or 7; or

(v)     hotel or residential facility.

F-2

# EXHIBIT G

## Existing Leases

Children's Place
David's Bridal

* * * * *

G-1

# EXHIBIT H

## Existing Exclusives

**Children's Place**

The display and sale of infant's, children's and pre-teen clothing and footwear.

**David's Bridal**

The sale and/or rental of bridal wear and men's and women's formal wear.

* * * * *

H-1

WO 698030.8

## EXHIBIT H-1

### First Generation Exclusives

### Shoe Store

Subject to applicable law, Landlord covenants that it shall not lease any other space in the Shopping Center, nor consent to an assignment or subletting of any space in the Shopping Center, permitting the principal use as a retail shoe store.

### Restaurant

Landlord may enter into other leases covering other space in the Shopping Center permitting the use and occupancy thereof as a restaurant, but Landlord covenants and agrees that, as long as tenant under this lease is not in default of any of the terms, covenants, conditions or provisions of this lease, beyond the expiration of any applicable grace or notice periods, Landlord shall neither enter into a lease, nor consent to an assignment of lease or sub-letting, covering any other space in the Shopping Center which permits the use thereof as a restaurant in direct competition in theme or concept as the theme and concept then being operated by tenant in its demised premises (provided that Landlord shall have received at least 30 days' prior written notice of any changes in tenant's theme and concept).

* * * * *

H-1

WO 698030.8

**EXHIBIT I**

Recognition Agreement

THIS RECOGNITION AGREEMENT, made as of the _____ day of _____, 200__, by and between _____, a [_____] [corporation] [limited] [general] [partnership], having an address at _____ ("Landlord"); CIRCUIT CITY STORES, INC., a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant"); and _____, a [_____] [corporation] [limited] [general] [partnership], having an address at _____ ("Subtenant").

R E C I T A L S:

A.    Landlord and Tenant have entered into a certain Lease Agreement (the "Lease") dated as of _____, 200__, a short form of which has been recorded in _____, which demises certain premises (the "Premises") located in the Triangle Junction Shopping Center, Brooklyn, New York, which Shopping Center is more particularly described on Exhibit A annexed hereto and made a part hereof.

B.    Section 17.04 of the Lease provides that in the event Tenant subleases all or a portion of the Premises for a term of at least five (5) years, Landlord shall, upon Tenant's request, execute and deliver a Recognition Agreement among Landlord, Tenant and each such subtenant in the form attached to the Lease, in recordable form.

C.    Pursuant to a Sublease dated as of _____ (the "Sublease"), Tenant has subleased [a portion of] the Premises to Subtenant (the "Subleased Premises").

D.    The parties hereto desire to effectuate the provisions of Section 17.04 of the Lease with respect to the Sublease and the Subleased Premises.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    Landlord warrants and represents as follows:

(a)    that it is the fee owner of the Premises,

(b)    that the Lease is unmodified (except as may be otherwise set forth in Exhibit B annexed hereto, if any) and is in full force and effect,

(c)    that the term of the Lease expires on _____, but is subject to four (4) renewal periods of five (5) years each, and

(d)    that Tenant is not in default under the Lease nor has any event occurred which would after notice to Tenant and the passage of time become a default of Tenant under the Lease.

I-1

WO 698030.8

2.      Landlord hereby acknowledges receipt of a copy of, and consents to and approves, the Sublease and all of the terms, covenants and provisions thereof, and agrees that the exercise by Subtenant of any of its rights, remedies and options contained therein shall not constitute a default under the Lease.

3.      Landlord agrees that whenever it has an obligation with respect to the Premises, or its consent or approval is required for any action of Tenant under the Lease, then, to the extent such obligation, consent or approval relates to the Subleased Premises or Subtenant's use and occupation thereof, it will perform such obligation in accordance with the terms and conditions of the Lease, and, subject to the applicable terms of the Lease, will not unreasonably withhold or unduly delay such consent or approval.

4.      Landlord shall not, in the exercise of any of the rights arising or which may arise out of the Lease or of any instrument modifying or amending the same or entered into in substitution or replacement thereof (whether as a result of Tenant's default or otherwise), disturb or deprive Subtenant in or of its possession or its rights to possession of the Subleased Premises or of any right or privilege granted to or inuring to the benefit of Subtenant under the Sublease, provided that Subtenant is not in default under the Sublease beyond the expiration of any applicable notice and cure period.

5.      In the event of the termination of the Lease by reentry, notice, conditional limitation, surrender, summary proceeding or other action or proceeding, or otherwise, or, if the Lease shall terminate or expire for any reason before any of the dates provided in the Sublease for the termination of the initial or renewal terms of the Sublease and if immediately prior to such surrender, termination or expiration the Sublease shall be in full force and effect, Subtenant shall not be made a party in any removal or eviction action or proceeding nor shall Subtenant be evicted or removed of its possession or its right of possession of the Subleased Premises be disturbed or in any way interfered with, and the Sublease shall continue in full force and effect as a direct lease between Landlord and Subtenant (provided, that in such event, Subtenant shall, for the then remainder of the term of the Sublease, pay fixed rent and additional rent in an amount equal to the greater of (x) the Annual Minimum Rent and Additional Rent then payable under the Lease, prorated on the basis of the ratio which the Floor Area of the Subleased Premises bears to the Floor Area of the Premises, or (y) the annual minimum rent and additional rent then payable under the Sublease).

6.      Landlord hereby waives and relinquishes any and all rights or remedies against Subtenant, pursuant to any lien, statutory or otherwise, that it may have against the property, goods or chattels of Subtenant in or on the Subleased Premises.

7.      Any notices, consents, approvals, submissions, demands or other communications (hereinafter collectively referred to as "Notice") given under this Agreement shall be in writing. Unless otherwise required by law or governmental regulation, Notices shall be deemed given if sent by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid (a) to Landlord, at the address of Landlord as hereinabove set forth or such other address or persons as Landlord may designate by Notice to the other parties hereto, (b) to Tenant, to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to

I-2

WO 698030.8

Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and Sutherland Asbill & Brennan, LLP, 1114 Avenue of the Americas, 40th Floor, New York, New York 10036, Attention: David J. Rabinowitz, Esq., or such other address or persons as Tenant may designate by Notice to the other parties hereto, and (c) to Subtenant, at the address of Subtenant as hereinabove set forth or such other address or persons as Subtenant may designate by Notice to the other parties hereto. During the period of any postal strike or other interference with the mails, personal delivery shall be substituted for registered or certified mail. All Notices shall become effective only on the receipt or rejection of same by the proper parties.

8.    No modification, amendment, waiver or release of any provision of this Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or binding for any purpose whatsoever unless in writing and duly executed by the party against whom the same is sought to be asserted.

9.    This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, assigns and sublessees.

[Signature Page Follows]

I-3

WO 698030.8

IN WITNESS WHEREOF, the parties have caused this Recognition Agreement to be executed under seal the date first above written.

**LANDLORD:**

TRIANGLE EQUITIES JUNCTION LLC

By:_____

Name:_____

Title:_____

**TENANT:**

CIRCUIT CITY STORES, INC.

By:_____

Name:_____
    John B. Mulleady
    Vice President

Title:_____
    Real Estate & Construction

**SUBTENANT:**

_____

By:_____

Name:_____

Title:_____

I-4

WO 698030.8

STATE OF _____ )
                                     ) : ss.
COUNTY OF _____ )

On this ____ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____


STATE OF _____ )
                                     ) : ss.
COUNTY OF _____ )

On this ____ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

I-5

WO 698030.8

STATE OF _____ )
                          ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

WO 698030.8

## EXHIBIT J

### Subordination, Non-Disturbance and Attornment Agreement

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT, made as of the _____ day of _____, 200__, by and between _____, a _____ [corporation] [limited] [general] [partnership] [national banking association], having an office at _____ (the "Mortgagee") and CIRCUIT CITY STORES, INC., a Virginia corporation, having an office at, 9950 Mayland Drive, Richmond, Virginia 23233 (the "Tenant").

### W I T N E S S E T H:

WHEREAS, Mortgagee is the holder of a mortgage (the "Mortgage") covering a parcel of land owned by _____, a _____ [corporation], [limited] [general] [partnership] (the "Landlord") together with the improvements [to be] erected thereon (said parcel of land and improvements thereon being hereinafter referred to as the "Shopping Center" and being more particularly described on Exhibit A attached hereto and made a part hereof); and

WHEREAS, by a certain Lease Agreement heretofore entered into between Landlord and Tenant dated as of _____ (the "Lease"), Landlord leased to Tenant a portion of the Shopping Center, as more particularly described in the Lease (the "Premises"); and

WHEREAS, a copy of the Lease has been delivered to Mortgagee, the receipt of which is hereby acknowledged; and

[For mortgages existing as of the date Lease is executed: WHEREAS, as an inducement to Tenant to enter into the Lease, [Section 2.04(f)/Section 19.02] thereof provides that the Lease is conditioned upon Landlord obtaining this Agreement from Mortgagee; and

WHEREAS, the parties desire to satisfy the foregoing condition and to provide for the non-disturbance of Tenant by the holder of the Mortgage; and]

[For mortgages occurring after the Lease is executed: WHEREAS, Section 19.01 of the Lease provides that the Lease shall become subject and subordinate to a mortgage encumbering the fee interest of Landlord in and to the Shopping Center if and when a non-disturbance agreement is entered into with respect to such mortgage; and

WHEREAS, the parties hereto desire to effect the subordination of the Lease to the Mortgage and to provide for the non-disturbance of Tenant by Mortgagee.]

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

J-1

WO 698030.8

1.    Mortgagee hereby consents to and approves the Lease and the term thereof, including the options to extend the term as set forth in the Lease, and covenants and agrees that the exercise by Tenant of any of the rights, remedies and options therein contained shall not constitute a default under the Mortgage.

2.    Tenant covenants and agrees with Mortgagee that the Lease is made and shall continue hereafter to be subject and subordinate to the lien of the Mortgage, and to all modifications and extensions thereof (and such subordination shall not lessen or diminish Tenant's rights under the Lease), subject, however, to the provisions of this Agreement.

3.    Mortgagee agrees that so long as the Lease shall be in full force and effect, and so long as Tenant shall not be in default under the Lease beyond any applicable notice and grace period:

(a)    Tenant shall not be named or joined as a party or otherwise in any suit, action or proceeding for the foreclosure of the Mortgage or to enforce any rights under the Mortgage or the bond or note or other obligation secured thereby;

(b)    The possession by Tenant of the Premises and Tenant's rights thereto shall not be disturbed, affected or impaired by, nor will the Lease or the term thereof be terminated or otherwise affected by (i) any suit, action or proceeding brought upon the Mortgage or the bond or note or other obligation secured thereby, or for the foreclosure of the Mortgage or the enforcement of any rights under the Mortgage, or by any judicial sale or execution or other sale of the Premises or the Shopping Center, or any deed given in lieu of foreclosure, or by the exercise of any other rights given to any holder of the Mortgage or other documents as a matter of law, or (ii) any default under the Mortgage or the bond or note or other obligation secured thereby; and

(c)    All condemnation awards and insurance proceeds paid or payable with respect to the Premises or any other part of the Shopping Center shall be applied and paid in the manner set forth in the Lease.

4.    If Mortgagee or any future holder of the Mortgage shall become the owner of the Shopping Center by reason of foreclosure of the Mortgage or otherwise, or if the Shopping Center shall be sold as a result of any action or proceeding to foreclose the Mortgage, or transfer of ownership by deed given in lieu of foreclosure, the Lease shall continue in full force and effect, without necessity for executing any new lease, as a direct lease between Tenant and the then owner of the Shopping Center, as "landlord", upon all of the same terms, covenants and provisions contained in the Lease, and in such event:

(a)    Tenant shall be bound to such new owner under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) and Tenant hereby agrees to attorn to such new owner and to recognize such new owner as "Landlord" under the Lease; and

(b)    Such new owner shall be bound to Tenant under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the

J-2

WO 698030.8

Extension Periods, if Tenant elects or has elected to exercise its options to extend the term), which such new owner hereby agrees to assume and perform and Tenant shall, from and after the date such new owner succeeds to the interest of "landlord" under the Lease, have the same remedies against such new owner for the breach of any covenant contained in the Lease that Tenant might have had under the Lease against Landlord if such new owner had not succeeded to the interest of "landlord"; provided, however, that such new owner shall not be:

        (i)     liable for any act or omission of any prior landlord (including Landlord) unless such act or omission continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

        (ii)    subject to any defenses which Tenant may have against any prior landlord (including Landlord) unless resulting from any default or breach by such prior landlord which continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

        (iii)   subject to any offsets which Tenant may have against any prior landlord, except to the extent such offsets are expressly provided under the Lease and Mortgagee has received notice thereof and the opportunity to cure within the applicable time periods set forth in the Lease (it being further agreed that offsets under the Lease that were deducted by Tenant prior to the date upon which the new owner succeeds to the interest of such prior landlord shall not be subject to challenge);

        (iv)   bound by any annual minimum rent or additional rent which Tenant might have paid for more than one month in advance of its due date under the Lease to any prior landlord (including Landlord), unless such additional rent is paid in accordance with the applicable provisions of the Lease; or

        (v)    bound by any amendment or modification of the Lease made without its consent; notwithstanding the foregoing, Mortgagee acknowledges that the Lease specifically provides for amendments thereof upon the occurrence of certain events described in the Lease (such as, for example, an amendment to the Lease confirming the measurement of the Premises), and, by its execution below, Mortgagee agrees to recognize such amendments as part of the Lease, and Mortgagee further agrees that such new owner shall also be bound by such amendment(s) to the Lease, without any consent on the part of Mortgagee or such new owner.

        (c)    Tenant's obligations hereunder shall be effective only so long as Mortgagee is bound to Mortgagee's obligations hereunder.

        5.     Tenant will notify Mortgagee of any default by Landlord under the Lease which would entitle Tenant to terminate the Lease or abate the rent payable thereunder and agrees that notwithstanding any provision of the Lease, no notice of termination thereof nor any abatement shall be effective unless Mortgagee has received the aforesaid notice and has failed to cure the subject default within the same time period allowed Landlord under the Lease. It is understood that the abatement provisions of this Section relate to abatements by reason of Landlord's default and do not apply to provisions of the Lease whereby Tenant has the automatic right to abate rentals such as, for example, abatement upon casualty or condemnation.

J-3

6.    Neither the Mortgage nor any other security instrument executed in connection therewith shall encumber or be construed as subjecting in any manner to the lien thereof, any trade fixtures, signs or other personal property at any time furnished or installed by or for Tenant or its subtenants or licensees on the aforementioned property regardless of the manner or mode of attachment thereof.

7.    Any notices of communications given under this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid, (a) if to Mortgagee, at the address of Mortgagee as hereinabove set forth or at such other address or persons as Mortgagee may designate by notice in the manner herein set forth, or (b) if to Tenant, to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and Sutherland Asbill & Brennan, LLP, 1114 Avenue of the Americas, 40th Floor, New York, New York 10036, Attention: David J. Rabinowitz, Esq., or such other address or persons as Tenant may designate by notice in the manner herein set forth. All notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) at the address of the addressee.

8.    This Agreement shall bind and inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors, assigns, and sublessees.

9.    This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

10.    This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

[to add if Tenant's memorandum of lease has been recorded prior to the subject mortgage] NOTE: THIS AGREEMENT BY TENANT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL ANY PRIOR MORTGAGES ON THIS PROPERTY HAVE BEEN SATISFIED SO THAT TENANT'S PRIOR AGREEMENTS TO ATTORN TO SAID MORTGAGES AND/OR TO SUBORDINATE ITS LEASE TO SAID MORTGAGES SHALL HAVE BEEN EXTINGUISHED.

IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

-Signature Page Follows-

J-4

**MORTGAGEE**:

ATTEST:

    By:_____
    Name:_____
    Title:_____

[SEAL]

    By:_____
    Name:_____
    Title:_____

**TENANT**:

ATTEST:

**CIRCUIT CITY STORES, INC.**

    By:_____
    Name:_____
    Title:_____

    By:_____
    Name: John B. Mulleady
    Title: Vice President
    Real Estate & Construction

[SEAL]

J-5

STATE OF _____ )
                          ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____


STATE OF _____ )
                          ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

J-6

**EXHIBIT J-1**

Existing Mortgagee Subordination Non-Disturbance and Attornment Agreement

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT, made as of the _____ day of _____, 200__, by and between BANK OF AMERICA, N.A., national banking association, a wholly owned subsidiary of BankAmerica Corporation, having an office at _____ (the "Mortgagee") and CIRCUIT CITY STORES, INC., a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233 (the "Tenant").

W I T N E S S E T H:

WHEREAS, Mortgagee is the holder of a mortgage (the "Mortgage") covering a parcel of land owned by Triangle Equities Junction LLC, a New York limited liability company (the "Landlord") together with the improvements erected thereon (said parcel of land and improvements thereon being hereinafter referred to as the "Shopping Center" and being more particularly described on Exhibit A attached hereto and made a part hereof); and

WHEREAS, by a certain Lease Agreement heretofore entered into between Landlord and Tenant dated as of _____ (the "Lease"), Landlord leased to Tenant a portion of the Shopping Center, as more particularly described in the Lease (the "Premises"); and

WHEREAS, a copy of the Lease has been delivered to Mortgagee, the receipt of which is hereby acknowledged; and

WHEREAS, as an inducement to Tenant to enter into the Lease, Sections 2.04(f) and 19.02 thereof provides that the Lease is conditioned upon Landlord obtaining this Agreement from Mortgagee; and

WHEREAS, the parties desire to satisfy the foregoing condition and to provide for the non-disturbance of Tenant by the holder of the Mortgage; and

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1. The Lease is and shall be subject and subordinate to the lien of the Mortgage insofar as it affects the Shopping Center of which the Premises form a part, and all renewals, modifications, consolidations, replacements and extensions thereof, to the full extent of the principal sum secured thereby and interest thereon.

2. Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the premises by deed in lieu of foreclosure, the successors and assigns of such purchasers, as its Landlord for the unexpired balance

J-1-1

(and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease.

3. In the event that it should become necessary to foreclosure the Mortgage, Mortgagee thereunder will not terminate the Lease nor join Tenant in summary of foreclosure proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4. Mortgagee consents to the application of casualty and condemnation proceeds in accordance with Articles XII and XIII of the Lease between Landlord and Tenant, whether or not the Mortgage is then foreclosed.

5. In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:

   a. liable for any act or omission of any prior lessor (including Landlord); or

   b. liable for the return of any security deposits unless delivered to Mortgagee; or

   c. bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

   d. bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

   Notwithstanding the foregoing, Mortgagee acknowledges and agrees that if Mortgagee shall succeed to the interest of Landlord under this Lease, Mortgagee shall be subject to Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Lessor) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

6. Mortgagee shall deliver simultaneously to Tenant at the address below copies of all notices of default delivered by Mortgagee to Landlord.   Tenant shall deliver simultaneously to Mortgagee at the address below all notices of default that Tenant delivers to Landlord and Mortgagee shall have the same five (5) days to cure a monetary default or the same thirty (30) days to cure a non-monetary default, whichever is applicable, that Landlord has to cure such defaults during which time Mortgagee may also cure such defaults by Landlord.  If Mortgagee acquires title to the Shopping Center by foreclosure or otherwise, Mortgagee shall have the same time limits in which to cure defaults under the Lease as are provided to Landlord therein.

7. All notices required herein and under the Lease shall be delivered to Tenant and/or Mortgagee at the following addresses:

   If to Tenant           Circuit City Stores, Inc.

J-1-2

WO 698030.8

Deep Run I
9950 Mayland Drive
Richmond, Virginia 23233
Attention: Corporate Secretary

With a copy to:

Circuit City Stores, Inc.
Deep Run I
9950 Mayland Drive
Richmond, Virginia 23233
Attention: Vice President of Real Estate

If to Mortgagee:      Bank of America, N.A.
Capital Markets Servicing Group #1777
P.O. Box 3609
Los Angeles, California 90051
Telephone: (800) 462-0505
Telecopy: (213) 345-6587

Notice shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending a written notice by Federal Express or other comparable overnight express courier service (with proof of receipt available), provided such notice is addressed to the applicable party at its respective address as set forth above.

8. Mortgagee, Landlord and Tenant, respectively, each represents and warrants to each other that each has the requisite power and authority to enter into this Agreement; that all necessary and appropriate approvals, authorizations and other steps have been taken to effect the legality of this Agreement; that the signatories executing this Agreement on behalf of Mortgagee, Landlord and Tenant have been duly authorized and empowered to execute this Agreement on behalf of Mortgagee, Landlord and Tenant, respectively; and that this Agreement is valid and shall be binding upon and enforceable against Mortgagee, Landlord and Tenant, shall inure to the benefit of the parties hereto, and their successors and assigns.

9. All defined and capitalized terms when used herein have the same meanings as provided by the Lease.

10. This Agreement shall bind and inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors, assigns, and sublessees.

11. This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

J-1-3

12. This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

**MORTGAGEE:**

ATTEST:                      **BANK OF AMERICA, N.A.**

By:_____
Name:_____
Title:_____        By:_____
                             Name:_____
[SEAL]                       Title:_____


**TENANT:**

ATTEST:                      **CIRCUIT CITY STORES, INC.**

By:_____
Name:_____
Title:_____        By:_____
                             Name:____John B. Mulleady_____
[SEAL]                       Title:_____Vice President_____
                                   Real Estate & Construction


**LANDLORD:**

ATTEST:                      **TRIANGLE EQUITIES JUNCTION LLC**

By:_____
Name:_____
Title:_____        By:_____
                             Name:_____
[SEAL]                       Title:_____


J-1-4

WO 698030.8

STATE OF _____ )
                       ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____


COMMONWEALTH OF VIRGINIA      )
                             ) : ss.
COUNTY OF HENRICO            )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____


STATE OF _____ )
                       ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____, the limited liability company described in and which executed the above instrument and that he signed his name thereto by order of the _____ of said limited liability company.

_____
Notary Public

My Commission Expires:

_____

J-1-5

## EXHIBIT A

## Legal Description of the Shopping Center

WO 698030.8

**EXHIBIT J-2**

Condominium Recognition Agreement

**PREPARED BY:**
Amy Williams, Esq.
Sutherland Asbill & Brennan LLP
1114 Avenue of the Americas, 40th floor
New York, New York 10036-

**AFTER RECORDING, RETURN TO:**
Kimberly Bace, Paralegal
Sutherland Asbill & Brennan LLP
1114 Avenue of the Americas, 40th floor
New York, New York 10036

---

(The Above Space for Recorder's Use Only)

**Condominium Recognition Agreement**

THIS CONDOMINIUM RECOGNITION AGREEMENT (the "Agreement"), made as of the _____ day of _____, 2007, between TRIANGLE JUNCTION RETAIL CONDOMINIUM ASSOCIATION, INC., A New York non-profit corporation (the "Association") and CIRCUIT CITY STORES, INC., a Virginia corporation, having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

R E C I T A L S

A.    The Association was created pursuant to that certain Declaration for Triangle Junction Retail Condominium made by and between TRIANGLE EQUITIES JUNCTION LLC, a New York limited liability company ("Triangle") and TARGET CORPORATION, a Minnesota corporation, on _____ and recorded on _____ in _____, Kings County, New York (the "Declaration").

B.    Triangle owns that certain condominium unit located within that certain building located at the intersection of Flatbush Avenue and Avenue H, Brooklyn New York and known and described a "Unit 2" in the Declaration (the "Condominium Unit") and which Condominium Unit is subject to the Declaration.

C.    Pursuant to that certain Lease Agreement dated as of _____ by and between Triangle and Tenant (as the same may be amended from time to time, the "Lease"), Triangle leased to Tenant a portion of the Condominium Unit (the "Premises").

NOW, THEREFORE, it is agreed as follows:

1.    The Association represents, to the best of the Association's knowledge, as follows:

WO 698030.8

(a)     the Association was created by and continues to exist under the laws of the State of New York,

(b)     the Premises is subject to the Declaration,

(c)     the Declaration is unmodified and is in full force and effect, and

(d)     to the best of the Association's knowledge, without injury or investigation, Triangle is not in default under the Declaration.

2.     Tenant hereby agrees that Tenant's interest in the Lease is subject to the terms of this Agreement, is subject and subordinate to the Declaration including, without limitation, any lien by the Association on the Condominium Unit as provided thereunder, and that notwithstanding that a memorandum of the Lease may be recorded prior to the recordation of the Declaration, the Declaration shall be deemed to have been recorded prior to such memorandum of the Lease, subject, however, to the terms of this Agreement.

3.     So long as the landlord under the Lease is not entitled to terminate the Lease or dispossess the Tenant due to a Tenant default thereunder, the Association shall not, in the exercise of any of the rights arising or which may arise out of a default by any Unit Owner (as defined in the Declaration) under the Declaration or of any instrument modifying or amending the same or entered into in substitution or replacement thereof, disturb or deprive Tenant in, or of, its possession or its rights to possession of the Premises.

4.     So long as the landlord under the Lease is not entitled to terminate the Lease or dispossess the Tenant due to a default by Tenant thereunder, in the event the Association elects to enforce any lien against the Condominium Unit by non-judicial or judicial foreclosure, power of sale or otherwise, or, if the Association shall exercise any other rights under the Declaration which may arise out of a default by any Unit Owner that results in ownership or control of the Condominium Unit being transferred to a Purchaser (as hereinafter defined), Tenant shall not be made a party in any removal or eviction action or proceeding (unless under applicable law Tenant is a necessary party or the failure to join Tenant would be prejudicial to the prosecution of the remedy or judgment being sought by the Association against the landlord, provided the Association shall not seek to terminate the Lease or dispossess the Tenant) nor shall Tenant be evicted or removed of its possession or its right of possession be disturbed or in any way interfered with, and the Lease shall continue in full force and effect as a direct lease from Purchaser to Tenant; provided, however;

(i)     the party acquiring the interest of landlord in and to the Condominium Unit by reason of foreclosure of the Association's lien and such party's successors and assigns (collectively, "Purchaser") shall not be:

(a)     bound by any rent that Tenant has paid more than one (1) month in advance to any prior landlord under the Lease;

(b)     liable for any act or omission of any prior landlord under the Lease occurring prior to such succession by Purchaser except to the extent the act or omission is of a continuing nature and continues after Purchaser succeeds to the

J-2-2

prior landlord's interest in which event Purchaser shall be liable for Purchaser's subsequent act(s) or omission(s);

(c)     subject to any offset (except to the extent specifically provided in the Lease), defense or counterclaim accruing prior to such succession by Purchaser unless a Court Ruling (as defined below) expressly provided otherwise; or

(d)     liable for the return of any deposit, rental security or any other sums deposited with any prior landlord under the Lease except to the extent such sums have been paid over or credited to Purchaser; and

(ii)     for so long as the Association is the owner of the Condominium Unit (as Purchaser or otherwise) and provided that Tenant has received written notice of such ownership by the Association, Tenant shall perform all obligations to be performed on the part of the Owner of the Condominium Unit under the Declaration, but only to the extent such obligations relate exclusively to the Premises, and shall make all payments to be made on the part of the Owner of the Condominium Unit under the Declaration, but only on a pro-rated basis as the square footage of the Premises relates to the square footage of the Condominium Unit; provided, however, that (y) the total costs thereof to Tenant (whether of making such payments or complying with the performance obligations under the Declaration) shall not exceed Tenant's Rent (which, as defined in the Lease, shall included Minimum Annual Rent and Additional Rent) under the Lease for that same period of time, and (z) Tenant may deduct such reasonable costs or expenses incurred by Tenant in connection therewith from Rent (as defined under the Lease) as and when such Rent is due and payable and without regard to any limitation on set-off as may otherwise be set forth in the Lease, for so long as the Association continues ownership of the Condominium Unit.  Notwithstanding the foregoing, Tenant shall not be liable for any obligation or payment of the Owner of the Condominium Unit arising or occurring prior to the Association becoming such Owner except to the extent the obligation or payment is of a continuing nature and continues after the Association succeeds to the interest of Owner in which event Tenant shall be liable as provided above for Tenant's subsequent obligations and payments arising or occurring after such time as the Association becomes the Owner.

Notwithstanding the foregoing, in the event of a default by Triangle in the payment of Common Expenses (as defined in the Declaration), the Association hereby agrees to accept payment of such unpaid Common Expenses from Tenant.

5.     The Association hereby agrees that it shall assert no lien greater than the lien the landlord may have under the Lease against the personal property, goods or chattels of Tenant in or on the Premises.

6.     In the event that Purchaser succeeds to the interest of landlord in and to the Condominium Unit and under the Lease by reason of foreclosure of the Association's lien or otherwise, Tenant shall be bound to Purchaser under all of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining (including, if exercised by Tenant, any and all extension periods), with the same force and effect as if the Purchaser were the landlord

J-2-3

WO 698030.8

under the Lease, and Tenant shall attorn to the Purchaser, including the Association if it be the Purchaser, as its landlord under the Lease, such attornment and recognition to be effective and self-operative without the execution of any further instruments upon Purchaser succeeding to the interest of landlord in and to the Condominium Unit and under the Lease; provided, however, that Tenant shall not be obligated to pay any rent to Purchaser until and unless Tenant has received written notice from Purchaser that it has succeeded to such interest and the address to which future rent payments are to be made.

7.     Nothing in this Agreement shall be deemed to limit any rights of the Association under the Declaration as a result of a default by Tenant, beyond any applicable grace, notice and/or cure period, under the Declaration (if any), exercised by the Association, in its capacity as the Association (and not in its capacity as a successor to Triangle) and in accordance with the Declaration.

8.     A "Court Ruling" is defined in the Lease as the resolution upon litigation before a court of competent jurisdiction (both of the person and the subject matter) resulting in an order or other judgment entered by such court as to any issue, controversy or dispute arising out of or relating to the Lease and with respect to which the Lease expressly requires a Court Ruling.

9.     All notices required herein shall be delivered to the Association and/or Tenant at the following addresses:

<table>
<tr><td>If to the Association:</td><td>Triangle Junction Retail Condominium Association<br>c/o Target Corporation<br>Attention: Real Estate-Existing Stores<br>1000 Nicollet Mall-TPN12<br>Minneapolis, Minnesota 55403</td></tr>
<tr><td></td><td>with a copy to:</td></tr>
<tr><td></td><td>Target Corporation<br>Attention: Real Estate-Existing Stores<br>1000 Nicollet Mall-TPN12<br>Minneapolis, Minnesota 55403</td></tr>
<tr><td></td><td>with a copy to:</td></tr>
<tr><td></td><td>Triangle Equities Junction, LLC<br>30-56 Whitestone Expressway<br>Whitestone, New York 11354</td></tr>
<tr><td>If to Tenant:</td><td>Circuit City<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate</td></tr>
<tr><td></td><td>with a copy to:</td></tr>
</table>

J-2-4

WO 698030.8

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention: General Counsel

and

Sutherland Asbill & Brennan LLP
1114 Avenue of the Americas, 40th Floor
New York, New York 10036
Attention: David J. Rabinowitz, Esq.

Notice shall be deemed to have been given as of the date such notice is (i) delivered to the party intended, (ii) delivered to the then designated address of the party intended, or (iii) rejected at the tehn designated address of the party intended, provided such notice is addressed to the applicable party at its respective address as set forth above. Any notice or other communication shall be in writing and sent by certified mail, postage paid, return receipt requested, or by Federal Express or other comparable overnight express courier service (with proof of receipt available).

10.    No modification, amendment, waiver or release of any provision of this Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or binding for any purpose whatsoever unless in writing and duly executed by the party against whom the same is sought to be asserted.

11.    This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns. This Agreement shall run with the land from the date of recording thereof until the expiration (including any renewals or extensions) or sooner termination of the Lease.

J-2-5

IN WITNESS WHEREOF, the parties have caused this Condominium Recognition Agreement to be executed under seal the date first above written.

**CONDOMINIUM:**

**TRIANGLE JUNCTION RETAIL CONDOMINIUM ASSOCIATION, INC., a New York non-profit corporation created under the provisions of Article 9-B of the Real Property Laws of the State of New York**

**ATTEST:**

_____

By: _____
Name: _____
Title: _____

STATE OF _____)
                                                            ) : ss.
COUNTY OF _____)

On this \_\_\_ day of _____, 200\_\_, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of TRIANGLE JUNCTION RETAIL CONDOMINIUM ASSOCIATION, INC., the corporation described in and which executed the above instrument and that he/she signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

J-2-6

**TENANT:**

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

ATTEST:

_____

By:_____

Name: _____

Title: _____


COMMONWEALTH OF VIRGINIA          )
                                  ) : ss.
COUNTY OF HENRICO                 )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.


_____

Notary Public

My Commission Expires:

_____

J-2-7

WO 698030.8

## EXHIBIT K

### Permitted Exceptions

1. Telephone Easement contained in Memorandum of Agreement from Greater New York Development Company and Kingsboro Realty Company, to The New York and New Jersey Telephone Company dated May 14, 1909 recorded in Liber 3153, Cp. 240.

2. Easement contained in an Agreement made by and between Greater New York Development Company and Kingsboro Realty Company, and The Edison Electric Illuminating Company dated May 15, 1909 recorded July 16, 1909 in Liber 3157 Cp. 269.

3. Railroad consent in Liber 5162, Cp. 3813

4. Covenants and Restrictions set forth in deed in Liber 8, Page 425, Section 25.

5. Restrictions contained in Agreement between M. Ditmas, et al, and Greater New York Development Company dated June 28, 1909.

6. Deed made by and between B and Q Service Company, Inc. and Noran Roberts dated March 9, 1939 recorded March 9, 1939 in Liber Cp. 250.

7. Easement contained in deed by and between The Long Island Rail Road Company to The City of New York dated March 29, 1963 and recorded May 6, 1963 in Liber 9120 Cp. 455.

8. Assignment of Easement made by THE LONG ISLAND RAIL ROAD to PENNSYLVANIA TUNNEL AND TERMINAL RAILROAD COMPANY dated 1/20/66 recorded 2/21/66 in Record Liber 49 page 394.

9. Assignment of Easement made by PENNSYLVANIA TUNNEL AND TERMINAL RAILROAD COMPANY to CONSOLIDATED RAIL CORPORATION dated 3/30/76 recorded 9/28/78 in Reel 1041 Page 585 and Reel 1022 Page 1158.

10. Assignment of Easement made by CONSOLIDATED RAIL CORPORATION to THE LONG ISLAND RAIL ROAD COMPANY dated 6/29/84 recorded 7/16/84 in Reel 1528 Page 45.

11. Unrecorded License Agreement made by and between THE LONG ISLAND RAIL ROAD COMPANY and LONG ISLAND PIPE LINE CORPORATION, dated as of 6/1/65.

12. Unrecorded Settlement and Amendment Agreement made by and between THE LONG ISLAND RAIL ROAD COMPANY, BUCKEYE PIPELINE COMPANY, PENN CENTRAL TRANSPORTATION COMPANY and THE PENNSYLVANIA TUNNEL AND TERMINAL RAILROAD COMPANY, dated 3/1/76

K-1

13. Unrecorded Second Amendment of Agreement made by and between LONG ISLAND RAIL ROAD and BUCKEYE PIPELINE COMPANY L.P., dated 11/12/91.

14. Unrecorded Agreement dated July 2, 1956 made by and between The Long Island Rail Road Company and Consolidated Edison Company of New York, Inc.

15. MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT made by Triangle Equities Junction LLC to Bank of America, N.A., successor by merger to Fleet National Bank dated 9/1/2004, recorded 11/29/2004 as CRFN 2004000732544, which secures the sum of $2,000,000.00 and interest, and upon which $55,000.00 of mortgage tax was paid.

16. AMENDED AND RESTATED MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT made by Triangle Equities Junction LLC to Bank of America, N.A., successor by merger to Fleet National Bank dated 1/13/2006, recorded 2/14/2006 as CRFN 2006000087966.

17. PARTIAL RELEASE OF MORTGAGE made by Bank of America, N.A., successor by merger to Fleet National Bank to Triangle Equities Junction LLC dated as of 1/13/2006, recorded 2/14/2006 as CRFN 2006000087967.

18. MORTGAGE, ASSIGNMENT OF LEASES OF RENTS AND SECURITY AGREEMENT made by Triangle Equities Junction LLC to target Corporation dated 1/13/2006, recorded 2/14/2006 as CRFN 2006000087970, which secures the sum of $10,625,609.00 and interest, and upon which $297,516.80 of mortgage tax was paid.

19. MAPS recorded under CRFN 2004000701411.

20. Security Agreement and Assignment of Rents, Income and Leases made by and between Triangle Equities Junction LLC and Fleet National Bank dated as of 9/1/2004, recorded 11/29/2004 as CRFN 2004000732545.

21. Deed made by The City of New York to new York City Economic Development Corporation dated as of 6/28/2004, recorded 12/21/2004 as CRFN 2004000781915.

22. Deed made by New York City Economic Development Corporation to Triangle Equities Junction LLC dated as of 6/28/2004, recorded 12/21/2004 as CRFN 2004000781916.

23. Correction Deed made by The City of New York to New York City Economic Development Corporation dated as of 6/28/2004, recorded 5/12/2005 as CRFN 2005000276267.

24. Correction Deed made by New York City Economic Development Corporation to Triangle Equities Junction LLC dated as of 6/28/2004, recorded 5/12/2005 as CRFN 2005000276268.

WO 698030.8

25.  Agreement made by and between Triangle Equities Junction, LLC and the Long Island Rail Road Company dated as of 10/26/2005, recorded 11/16/2005 as CRFN 2005000635283.

26.  Deed made by Triangle Equities Junction LLC to Target Corporation dated as of 1/13/2006, recorded 2/14/2006 as CRFN 2006000087964.

27.  Temporary Easement Agreement made by and Between Triangle Equities Junction, LLC ("Triangle") and Target Corporation ("Target") dated as of 1/13/2006, recorded 2/14/2006 as CRFN 2006000087965.

28.  Amended and Restated Security Agreement and Assignment of Rents, Income and Leases made by Triangle Equities Junction LLC to Bank of America, N.A., successor by merger to Fleet National Bank dated as of 1/13/2006, recorded 2/14/2006 as CRFN 2006000087968.

29.  Partial Release of Security Agreement and Assignment of Rents, Income and Leases made by and between Bank of America, N.A., successor by merger to Fleet National Bank to Triangle Equities Junction LLC dated as of 1/13/2006, recorded 2/14/2006 as CRFN 2006000087969.

30.  Subordination and Standstill Agreement made by and among Target Corporation, Bank of America, N.A., and Triangle Equities Junction LLC, dated as of 1/13/2006, recorded 2/14/2006 as CRFN 2006000087971.

31.  UCC -1 Financing Statement recorded 11/29/2004 as CRFN 2004000732546; Debtor: Triangle Equities Junction LLC; Secured Party: Fleet National Bank.

32.  UCC -1 Financing Statement recorded 2/16/2006 as CRFN 2006000093264; Debtor: Triangle Equities Junction LLC; Secured Party: Bank of America, N.A.

33.  UCC -3 Amendment recorded 3/16/2006 as CRFN 2006000148775; Debtor: Triangle Equities Junction LLC; Secured Party: Bank of America, N.A., successor by merger to Fleet National Bank.

WO 698030.8

**EXHIBIT L**

Memorandum of Lease

**After Recording, Return to:**

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention:  General Counsel

_____

(The Above Space for Recorder's Use Only)

THIS MEMORANDUM OF LEASE, made as of _____, 2007 by and
between TRIANGLE EQUITIES JUNCTION LLC, a New York  limited liability company,
having an office at 30-56 Whitestone Expressway, Whitestone, New York 11354 ("**Landlord**"),
and CIRCUIT CITY STORES, INC., a Virginia corporation, having an office at 9950 Mayland
Drive, Richmond, Virginia 23233 ("**Tenant**").

Preliminary Statement

Landlord is the fee owner of certain real property located in the County of Brooklyn,
State of New York, as more particularly described on Exhibit A hereto annexed, together with
improvements constructed or to be constructed thereon (the "**Shopping Center**").  Landlord and
Tenant, as of the date hereof, have entered into a lease (the "**Lease**") demising a portion of the
Shopping Center as more particularly described therein (the "**Premises**") to Tenant. In
connection therewith, Landlord and Tenant have entered into this Memorandum to confirm the
demise of the Premises and to provide notice to any interested party of such demise and of the
terms and provisions of the Lease.

NOW, THEREFORE, the parties state as follows:

1.        All capitalized terms used, but not otherwise defined, herein shall have the
meanings ascribed to them in the Lease.

2.        The terms and conditions of the Lease are incorporated herein as though set forth
in full, whereby Tenant may have and hold the Premises together with any and all rights,
benefits, privileges and easements, now or hereafter appurtenant thereto, at the rental and upon
the terms and conditions therein stated, for an initial term of approximately ten (10) years
commencing on the Commencement Date (the "**Initial Lease Term**").  Under the terms of the
Lease, Tenant has the right to extend the Initial Lease Term for four (4) separate and additional
periods of five (5) years each after the expiration of the Initial Lease Term.

3.        This Memorandum of Lease is executed for the purpose of recordation in order to
give notice of all of the terms, provisions and conditions of the Lease, including, without
limitation:

L-1

WO 698030.8

(i)      that, subject to certain exceptions more particularly set forth in the Lease, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center to be occupied, for the sale, rental, installation, servicing and/or repairing, either singly or in any combination, of consumer, office and/or automotive electronics products, including, without limitation, televisions, stereos, speakers, video and audio recorders and players and cameras; computer hardware and software and related software services (which include internet access services, entertainment software and entertainment media [such as, by way of example only, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment]); cellular and wireless telephones and telecommunication devices and related accessories; motor vehicle audio, stereo and telephone systems; and technological evolutions of the foregoing;

(ii)      the restrictions set forth therein on Landlord's ability to lease certain portions of the Shopping Center for certain uses which are otherwise prohibited by the terms of the Lease;

(iii)      provisions set forth therein regarding Tenant's right to install and maintain signage upon the exterior of the Premises and upon a pylon and/or monument sign located at the Shopping Center;

(iv)      provisions set forth therein regarding Tenant's right to use (and to permit Tenant's customers, employees, agents and contractors to use) certain common areas of the Shopping Center (such as, without limitation, the parking facilities of the Shopping Center); and

(v)      provisions set forth therein regarding certain areas in the Shopping Center in which no improvements are to be constructed, or changes made without the consent of the Tenant.

4.      In addition to those terms hereinabove set forth, the Lease contains numerous other terms, covenants and conditions which likewise affect not only the Premises but also the Shopping Center, and notice is hereby given that reference should be had to the Lease directly with respect to the details of such terms, covenants and conditions. The Lease and exhibits thereto are hereby incorporated by reference in this Memorandum of Lease and the parties hereby ratify and confirm the Lease as if said Lease were being re-executed by them and recorded. In the event of any conflict between the provisions of this instrument and the Lease, the provisions of the Lease shall control.

WO 698030.8

**IN WITNESS WHEREOF,** the parties hereto have executed this Memorandum of Lease as of the day and year first above written.

WITNESS/ATTEST:

**LANDLORD:**

TRIANGLE EQUITIES JUNCTION LLC

By:_____

Name:_____

Title:_____

[SEAL]

**TENANT:**

WITNESS/ATTEST:

CIRCUIT CITY STORES, INC.

By:_____

Name:_____
         John B. Mulleady

Title:_____
         Vice President
      Real Estate & Construction

[SEAL]

L-3

STATE OF _____)
            ) : ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
            Notary Public

My Commission Expires:

_____


STATE OF _____)
            ) : ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came [_____] to me known, who being by me duly sworn, did depose and say that he is the [_____] of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
            Notary Public

My Commission Expires:

_____

L-4

## EXHIBIT A

### Legal Description of the Shopping Center

# EXHIBIT N

## Rotunda Sign Rendering

WO 698030.8