an opaque wall around the site of such construction of a size necessary to screen such construction from ground level view. The permitted staging areas for such construction are marked on the Site Plan. Landlord reserves the right to realign the entrance to the Shopping Center from Jennifer Road as indicated on the sketch attached hereto as Exhibit A-1 and to reconfigure the portions of the two (2) interior drives in front of the Premises which lie beyond the points in Tenant's Preferred Area designated on the Site Plan so long as such reconfiguration is substantially within the alignment shown on the Site Plan. With regard to any construction on Landlord's Premises, Landlord shall be solely responsible for any governmentally imposed impact fees, hook-up, connection, installation or tap-in fees and other, similar construction-related charges. Landlord shall make no changes (other than changes which are insubstantial in nature) in the Common Areas located within Tenant's Preferred Area (including, without limitation, changes in the location of curbcuts, drive aisles, roadways, sidewalks or parking spaces or reduction of the parking ratio specified in paragraph 5) or which would interfere with the visibility of the Premises via Tenant's View Corridor unless Landlord first submits the plans and specifications for such changes to Tenant for Tenant's review and approval, which approval

shall not be withheld if such changes do not materially affect access to or the operation or visibility of the Premises.

(C)  <u>Prohibited Uses in Common Areas</u>. Landlord covenants that it shall not, without Tenant's express written consent, permit the following uses or activities to occur in the Common Areas:   (1) advertisements or signs except for the pylon and/or monument signs described in paragraph 8, the "for rent" signs described in paragraph 27 and traffic control signs; (2) display or sale of merchandise within Tenant's Protected Area; (3) operation of loudspeakers or other sound electronically amplified so as to be heard in the Common Areas except during planned promotional activities for the Shopping Center; or (4) imposition of a charge for parking (except as expressly referred to in Section 5 above.  Landlord further covenants that if it seeks a variance or waiver from the minimum parking requirements applicable to the Shopping Center under the zoning code or other applicable ordinance establishing the ratio of parking spaces to building area or otherwise mandating the number of parking spaces required for the Shopping Center and the uses contained therein that the granting thereof shall not relieve Landlord from complying with its parking obligations under this Lease.  Parking by employees of Tenant, Landlord and other occupants of the Shopping

Center shall be in designated "employee parking" areas, the location of which shall be agreed upon by Landlord and Tenant and marked on the Site Plan.

(D)    Easements.    Landlord shall not create any easements in the Common Areas which materially adversely affect the Tenant's operations within the Premises without Tenant's prior written consent, such consent not to be unreasonably withheld or delayed.

(x)    Interference    with    Tenant's    Reception/ Transmission.    Landlord shall not install or permit to be installed by Landlord, any other tenant or other person anywhere in the Shopping Center, any radio or other transmitting equipment which would cause any interference with satellite, radio or television reception or transmission in or from the Building, without Tenant's approval, which approval shall not be unreasonably withheld or delayed.    The foregoing shall not limit equipment currently installed.

(xi)    Notices Affecting the Premises.    Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises or the Shopping Center received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or the Shopping Center or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises or Tenant's use of the Common Areas.

(xii)   <u>Constructive Trust</u>.   Landlord covenants that all sums paid by Tenant to Landlord and intended for payment by Landlord to a third party (such as, by way of example, taxes and certain elements of CAM Charges) are given to Landlord in trust and shall be applied only for such third-party payments, as and when due.

(b) Tenant represents, warrants and covenants to Landlord that:

(i)   <u>Tenant's Authority</u>.   Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia; it has the power to enter into this Lease and perform Tenant's obligations hereunder; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

(ii) <u>Tenant's Warranty as to Hazardous or Toxic Materials</u>.  As to Tenant's use and occupancy of the Premises and use of the Common Areas, Tenant will not introduce, discharge, dump, spill or store within the Premises or the Shopping Center any Hazardous Substances; and Tenant indemnifies and agrees to hold Landlord harmless from and against all costs, liability and damages as a result thereof, to the same extent that Landlord indemnifies and holds Tenant harmless in subparagraph (a)(v) above.  The warranty and indemnity of Tenant described in this paragraph 19(b)(ii) shall survive the termination of this Lease.

(c)  In the event there is a condition at material variance with the foregoing representations and warranties of Landlord with respect to the Premises or the Shopping Center which prevents or in any material way inhibits the use of the Premises or any part thereof or the Common Areas for their intended purposes by Tenant or Tenant's employees, licensees, agents, suppliers, customers or invitees, or if Landlord shall default in the observance or performance of any of the foregoing representations and warranties, then, in addition to such other remedies as may be accorded Tenant at law, in equity or under the terms of this Lease, Tenant may, in addition to its other remedies under this Lease, after thirty (30) days' notice to Landlord (unless Landlord undertakes reasonable steps within such thirty (30) day period to commence to remedy such condition) seeks to, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of Tenant's legal remedy and the irreparable harm which would be caused to Tenant by any such variance or default.  In addition, in the event that any of the representations, warranties and covenants set forth in this paragraph 19 are untrue or incorrect and prevent or in any material way inhibit the use of the Premises, or in the event that Tenant suffers any loss, cost, liability or damage as a result of the breach of any of such covenants, representations and warranties, Landlord shall defend, indemnify and hold Tenant harmless from any of such loss, costs, liability or damage incurred as a result of Landlord's breach hereunder.

20.   Estoppel Certificates.   Without charge, at any time and from time to time hereafter, within ten (10) days after receipt of written request by either party, the other party shall certify, by written and duly executed instrument, to any other entity ("Person") specified in such request:  (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's best knowledge; (c) as to the existence of any default hereunder, to the certifying party's best knowledge; (d) as to the existence of any offsets, counterclaims, or defenses hereto on the part of such other party, to the certifying party's best knowledge; (e) as to the commencement and expiration dates of the Term; and (f) as to any other matters which may reasonably be so requested.  Any such certificate may be relied upon by the party requesting it and any Person to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

21.   Subordination, Non-Disturbance and Attornment.

(a)   Within thirty (30) days after the execution hereof, Landlord shall deliver to Tenant with regard to any and all "Ground Leases" (as defined below) and any and all "Mortgages" (as defined below) encumbering the Premises and placed thereon by Landlord, a non-disturbance and attornment agreement in the form of Exhibit "G" hereto attached, executed by the Landlord under any such Ground Lease ("Ground Lessor") or the holder of such Mortgage

("Mortgagee"), as applicable. In addition, throughout the term, Landlord shall deliver to Tenant a non-disturbance and attornment agreement in the form of Exhibit "G" executed by Ground Lessor or Mortgagee (as applicable) with regard to all future Ground Leases and Mortgages and with regard to all renewals, modifications, replacements and extensions of such Ground Leases or Mortgages. Upon Tenant's receipt of the non-disturbance and attornment agreement, this Lease shall be subordinate to the corresponding Ground Lease, if any, or Mortgage.

In the event of a foreclosure of any Mortgage, Tenant shall attorn to a Mortgagee or any purchaser at a foreclosure sale (any such foreclosure, or deed in lieu thereof, shall be referred to as a "Foreclosure") of a Mortgage only if such Mortgagee or purchaser executes a writing in favor of Tenant which states the following (provided Tenant is not in uncured material default beyond the expiration of any applicable grace periods): (i) this Lease shall not terminate by reason of such Foreclosure, (ii) Tenant's possession of the Premises shall not be disturbed, (iii) the Mortgagee or purchaser upon such Foreclosure shall recognize Tenant and all its rights hereunder and shall be obligated to fully and completely perform Landlord's duties and obligations under the Lease arising from and after the date of such Foreclosure, including but not limited to an obligation to make all payments to Tenant and satisfy all construction obligations set forth in this Lease, (iv) Tenant shall not be named as a party in any action for foreclosure, and (v) the Mortgagee, whether or not the Mortgage is

200706.005 (REAL)
May 21, 1996

- 73 -

foreclosed, shall make all proceeds arising from a casualty or condemnation loss to the Premises available to Tenant for restoration of the Improvements in accordance with the terms hereof.  In the event of termination of the Ground Lease, Tenant shall attorn to any Ground Lessor from whom Tenant has received a non-disturbance agreement in accordance with this paragraph 21.

Landlord shall cause any present or future Mortgagee to deliver a non-disturbance and attornment agreement in accordance with this paragraph 21 at or prior to the time which the lien of the Mortgage is filed against record title to the Premises, as set forth in paragraph 37(b) below.  As used in this paragraph 21, the term "Mortgage" shall mean any mortgage, deed to secure debt, deed of trust, trust deed or other collateral conveyance of, or lien or encumbrance against, the Premises, and the term "Ground Lease" shall mean any ground lease or master lease affecting the Premises.

(b)  If requested by any Mortgagee, from time to time during the Term, Tenant agrees to execute such subordination, non-disturbance and attornment agreement, which shall include Tenant's agreement to provide to such Mortgagee (simultaneously with notice to Landlord) notice of Landlord's defaults and the same periods for such Mortgagee to cure such defaults as those provided Landlord herein, and such other agreements as may be satisfactory to Tenant and as are typically found in subordination, non-disturbance and attornment agreements with institutional lenders.

22.  Change of Landlord.  Subject to paragraph 21 above, in the event Landlord's interest in the Premises passes to a successor

(the "Successor") by sale, lease, Foreclosure or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and effect as if the Successor were the landlord under the Lease, and Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant.  In the event that Landlord's interest in the Premises passes to a Successor and such Successor is bound unto Tenant as set forth above, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes, except that if such Transfer should cause Tenant to expend any sum of money Landlord agrees to indemnify, defend and hold Tenant harmless from and against all costs, claims, loss, liability or damage suffered by Tenant as a result of Landlord's transfer of its interests hereunder and/or Landlord's failure to provide Tenant with notice of such Successor.

23.  Tenant's Financing. Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, from time to time, secure financing or general credit lines and grant the lenders thereof, as security therefor, (i) a security interest in Tenant's fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged, and/or (iii) a collateral assignment of Tenant's leasehold interest in the Premises, with rights of reassignment subject to Landlord's rights of approval under this Lease; provided, however, such collateral

assignment may be made solely for the purpose of securing Tenant's indebtedness. Upon Tenant providing notice of such financing to Landlord, Landlord agrees to evidence its consent in writing to such security interest and agreement and to give such lenders the same notice and opportunity to cure any default of Tenant as is provided Tenant hereunder (including time to foreclose or otherwise take possession of the Premises, if necessary to effect such cure). In addition, Landlord agrees, upon Tenant's request, to use prudent efforts to cause any Mortgagee specifically to acknowledge the rights of Tenant's lenders described herein and in paragraph 24 below.

24. <u>Tenant's Property and Waiver of Landlord's Lien</u>. All of the Personalty shall be and remain the personal property of Tenant. Landlord expressly waives (except as to any fixtures) its statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the aforesaid property of Tenant on the Premises and further agrees to execute any reasonable instruments evidencing such waiver, at any time or times hereafter upon Tenant's request.

25. <u>Memorandum of Lease; Commencement Date Agreement</u>. Landlord and Tenant agree, at the other's request and at the sole expense of the requesting party, to execute a Memorandum of Lease in recordable form, substantially similar to that attached hereto as <u>Exhibit "H"</u>, setting forth such provisions hereof as may be

required by State law.  In addition, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached hereto as Exhibit "I", once the Commencement Date has been established. Recording costs for either or both documents shall be borne by the party requesting recordation of the same.  The provisions of this Lease shall control, however, with regard to any omissions from, or provisions hereof which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement.

26.  Expiration of Term and Holding Over.  All of the Personalty shall be removable by Tenant at or prior to the expiration or earlier termination of this Lease and shall be so removed by Tenant at the request of Landlord upon the expiration or termination of this Lease.  In the event Tenant fails to so remove any or all of its Personalty, Landlord may remove such Personalty, or the balance thereof, and, at Landlord's option, either dispose of such Personalty or cause such Personalty to be placed into storage and thereafter charge Tenant the cost of such disposal or removal and storage, together with interest thereon at the Default Rate.  Those improvements that are integrated into the physical structure of the Building (for example but not way of limitation, plumbing, electrical, HVAC, lighting, ceiling and floor coverings), except any of Tenant's trade fixtures, shall not be removed and shall become the property of Landlord.  (A nonexclusive list of Tenant's removable trade fixtures is attached hereto as Exhibit "D".)  Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings

and equipment (except for small holes caused by nails, fasteners and the like) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein, ordinary wear and tear, casualty and condemnation excepted. Tenant agrees that at the expiration of this Lease, it will deliver to Landlord peaceable possession of the Premises. No holding over by Tenant nor acceptance of Base Rent or other charges by Landlord shall operate as a renewal or extension of the Lease without the written consent of Landlord and Tenant. Should Tenant hold over without the consent of Landlord, this Lease shall continue in force from month to month, subject to all of the provisions hereof and for the first month of such holdover period at one hundred twenty-five percent (125%) of the monthly Base Rent Tenant had been paying during the preceding Lease Year. Thereafter, if Tenant continues to hold over beyond a one (1) month period, Base Rent shall be equal to one hundred fifty percent (150%) of the monthly Base Rent Tenant had been paying during the preceding Lease Year.

27. "For Rent" Signs. Tenant hereby permits Landlord during the last one hundred eighty (180) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, on the parking lot of the Shopping Center. Tenant will also allow Landlord or its agents, upon prior written notice and accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior,

to prospective tenants, purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

28.  Force Majeure.  Except as otherwise specifically contemplated in this Lease, in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay.

29.  Events of Tenant's Default.  Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease:

(a)  Failure to Pay Rent; Breach.  (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Interim Rent, Base Rent, Percentage Rent, CAM Charges or Real Estate Taxes) (subject to Tenant's right of good faith contest provided Tenant shall not be entitled hereby to any right of off-set or to withhold payment of any Rent when due except as expressly provided in Sections 31 and 33 below), within ten (10) days after the receipt of written notice from Landlord to Tenant that same is overdue, (provided that if Landlord is required to send Tenant notice of any default in the timely payment of Interim Rent or Base Rent more than twice in any Lease Year, a five percent

late charge shall be payable on the amount due which late charge shall increase by five percent (5%) for each subsequent notice in any Lease Year (ie. five percent (5%) for the third notice, ten percent (10%) for the fourth notice, etc.)); or (ii) Tenant's failure to observe or perform any other material provision of this Lease other than payment of Rent and other charges as provided in (i) above within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

(b)    Bankruptcy.    Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun.

30.    Landlord's Remedies.    After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

(a)    Continue Lease.    Landlord may, at its option, continue this Lease in full force and effect, with or without

200706.005 (REAL)
May 21, 1996                      - 80 -

terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Base Rent and other charges when due, including any sums due for any Option Period for which a Renewal Option has been exercised.    In the alternative, Landlord shall have the right to peaceably re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof.    Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Premises, or any part thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder.    If a sufficient amount to pay such expenses and sums shall not be realized or secured in Landlord's exercise of such efforts to mitigate damages as are required by applicable law (which Landlord hereby agrees to make), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise.    Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of

the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

(b)   Terminate Lease.   Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than thirty (30) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term.   In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following:

(i)   The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

(ii)   The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation.

As used in this paragraph 30(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at an accrual rate of ten percent (10%) for past due obligations, and a discount rate to net present value of twelve percent (12%) on anticipated future obligations, on the amount of the obligations

payable on the date of such calculation.   In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings.   Landlord shall never be entitled to dispossess the Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

(c)   <u>Reimbursement of Landlord's Costs in Exercising Remedies</u>.   Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable and actual costs and expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any speculative or consequential damages caused by Tenant's failure to perform its obligations under this Lease.

(d)   <u>Remedies Are Cumulative</u>.   The various rights and remedies reserved to Landlord herein, are cumulative, and Landlord may pursue any and all such rights and remedies, whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease).   Notwithstanding anything

herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

31. <u>Events of Landlord's Default; Tenant's Remedies</u>. Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default": (a) Landlord's failure to make any payments of money due Tenant hereunder within thirty (30) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate); or (b) Landlord's failure to perform any nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances. Upon request of Landlord or Landlord's Mortgagee, Tenant agrees to send any notices of Landlord's default simultaneously to such Mortgagee.

200706.005 (REAL)
May 21, 1996

Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity, and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (i) following reasonable written notice to Landlord and Landlord's Mortgagee, pay or perform such obligations and offset Tenant's reasonable and actual cost of performance, including any and all transaction costs and attorneys' fees, plus interest at the Default Rate, against the Base Rent and Percentage Rent due Landlord hereunder provided that Tenant shall not be entitled to offset such amounts against more than twenty-five percent (25%) of any installment of Base Rent due hereunder; or (ii) only if such Event of Default materially adversely affects Tenant's use and occupancy of the Premises and Tenant's business operations therein by either dispossessing Tenant from the Premises or interfering with its customary business operations therein, terminate this Lease and sue for damages, including interest, transaction costs and attorneys' fees as specified in subsection (i) above.  As to a breach of the warranties and representations contained in paragraph 19, Tenant shall be entitled to the remedies provided therein, in addition to those remedies provided herein. All amounts, including interest, transaction costs and attorneys' fees, arising out of uncured defaults of Landlord shall constitute liens against Landlord's interest in the Shopping Center, which may be enforced by non-judicial means available under State law, or any other applicable proceedings.  The various rights and remedies

reserved to Tenant herein are cumulative, and Tenant may pursue any and all rights and remedies, whether at the same time or otherwise, provided that in no event shall Landlord be liable for any consequential or special damage caused by Landlord's failure to perform.

32. <u>Waiver</u>. If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

33. <u>Compliance with Applicable Laws</u>. During the Term, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Improvements, and of the board of fire underwriters, respecting Tenant's use and occupancy of the Improvements. In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and

collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent. In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and deduct the reasonable cost thereof plus interest at the Default Rate from Landlord with the next installment or installments of Base Rent provided that Tenant shall not be entitled to off-set such amounts against more than twenty-five percent (25%) of any installment of Base Rent due hereunder.

34. <u>Notices</u>. Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

If to Tenant:      CIRCUIT CITY STORES, INC.
                   9950 Mayland Drive
                   Richmond, Virginia 23233
                   Attention:  Corporate Secretary

```
with a copy to:        CIRCUIT CITY STORES, INC.
                       9950 Mayland Drive
                       Richmond, Virginia 23233
                       Attention:  Vice President of Real Estate

If to Landlord:        WILLIAM P. BEATSON and JEROME TROUT, JR.
                       The Beatson Companies
                       170 Jennifer Road, Suite 330
                       Annapolis, Maryland  21401

with a copy to:        Morton P. Fisher, Jr.
                       Ballard Spahr Andrews & Ingersoll
                       300 East Lombard Street, Suite 199
                       Baltimore, Maryland  21202-3268
```

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

35. _Brokers_.  Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for Trout Segall & Doyle, L.L.C., who shall be paid a commission by Landlord pursuant to separate written agreement. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

36. _Miscellaneous_.

(a) _Headings and Gender_.  All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way

limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b)   <u>Construction</u>. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c)   <u>Waiver of Jury Trial</u>. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d)   <u>Relationship of Landlord-Tenant</u>. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e)   <u>Entire Agreement; Merger</u>. This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

200706.005 (REAL)
May 21, 1996

(f)  <u>Attorneys' Fees</u>.  In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g)  <u>Partial Invalidity</u>.  If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h)  <u>Consents</u>.  Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i)  <u>Holidays</u>.  If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j)  <u>Applicable Law</u>.  This Lease shall be construed in accordance with the laws of the State of Maryland and the parties

200706.005 (REAL)
May 21, 1996

agree that jurisdiction for all actions hereunder shall lie therein.

(k)  <u>Successors and Assigns</u>.  All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l)  <u>Counterparts</u>.  This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m)  <u>Trademarks and Trade Names</u>.  All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

37.  <u>Effectiveness of Lease; Tenant's Right to Terminate</u>. Notwithstanding the execution of this Lease or any provision hereof to the contrary, the parties hereto agree that the effectiveness of this Lease is expressly conditioned upon the complete satisfaction (or waiver) of each and all of the following conditions:

(a)  Tenant's obtaining:  (i) confirmation from appropriate local authorities, within thirty (30) days of execution hereof, that current zoning, subdivision and use regulations allow construction of the Improvements on the Premises; and (ii) the required City, County and State permits and approvals to construct said Improvements on the Premises no later than September 30, 1996

(the "Outside Permit Date") (provided if Tenant is unable to obtain all such permits and/or approvals by such Outside Permit Date Landlord shall have sixty (60) days within to obtain such permits and/or approvals). Tenant agrees to apply for such permits promptly as provided herein, to use due diligence and to expend any necessary application or other fees to secure such permits and approvals; provided, however, that the foregoing shall not be deemed to require Tenant to initiate litigation or to agree to any conditions imposed upon issuance of any such permit or approval which would adversely affect Tenant's operations or materially increase the cost of construction.

(b) Landlord's representations, warranties and covenants, including but not limited to those set forth in paragraph 19 herein, being materially true and accurate as of the date of delivery of the Land (as defined in the Construction Provisions).

The existence of the foregoing conditions is solely for the benefit of Tenant, and subject to Landlord's right to obtain permits and approvals as provided for above, Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition(s) being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant, subject to Landlord's right to obtain permits and approvals

200706.005 (REAL)
May 21, 1996                    - 92 -

as provided for above, shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the Outside Permit Date by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of one or more of the foregoing conditions. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14(i), 19(a)(v) and 19(b)(ii) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

The delivery of this executed lease by Tenant to Landlord constitutes the offer of the Tenant to the Landlord to bind Landlord and Tenant to the provisions of this Lease, subject to the conditions set forth in this paragraph 37. It is a further condition to the effectiveness of this Lease that upon receipt of the executed Lease from Tenant, the Landlord, without delay, execute and return same to the Tenant in accordance with any instructions delivered by Tenant or its legal counsel. In the event the Landlord fails to immediately execute and return the Lease, the Tenant may at any time after delivery of the Lease provide written notice to the Landlord that Tenant revokes its delivery of the executed Lease and thereupon the Landlord shall be immediately obligated to return to the Tenant all executed original counterparts as well as any copies of this Lease in the possession of the Landlord, and this Lease shall thereafter be null and void.

38. <u>Confidentiality</u>. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of this transaction. This confidentiality agreement shall not extend to any prospective purchasers, Mortgagees, bankers, lawyers, accountants or employees, agents or any other persons acting on behalf of the parties hereto. The parties hereto agree to use their best reasonable efforts to avoid discussing with, or disclosing to, any third parties (except those parties listed above) any of the terms, conditions or particulars in connection with this transaction. It is specifically agreed by way of illustration, but not by limitation, that the covenant of confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any governmental law or ordinance. Any breach of this confidentiality agreement shall constitute an Event of Default under the terms and provisions of this Lease entitling the other party to actual damages but not the right to terminate this Lease or to off-set against rent or other charges.

39. <u>Lease Termination</u>. Landlord and Tenant are now parties to that certain Lease Agreement dated August 5, 1985 with respect to existing space in the Shopping Center consisting of approximately 6,250 square feet. Upon the opening of the Premises for business, the Lease for the existing space shall be deemed terminated and Tenant shall have no further obligations for payment

of rent or other charges with respect to such space from and after the date of such termination.   Notwithstanding the foregoing, Tenant shall have a period not to exceed thirty (30) days within which to remove its inventory, trade fixtures and equipment from the existing space.   Upon the termination of such Lease, Tenant shall make a payment to Landlord of Twenty-Seven Thousand Five Hundred Dollars ($27,500) to reimburse Landlord for a portion of its costs in demolishing the existing space.   Either party shall have the right, following the termination of the existing Lease, to request that the other party sign a lease termination agreement substantially in the form attached hereto as <u>Exhibit "J"</u> and any other documents necessary in order to discharge or satisfy any memorandum of the existing Lease which is of record.   Under no circumstances shall Tenant be required to close its business in the existing space until it has opened for business in the Premises.

40.   <u>Landlord Exculpation</u>.   Tenant acknowledges and agrees that the liability of Landlord under this Lease shall be limited to its interest in the Shopping Center and any judgments rendered against Landlord shall be satisfied solely out of the proceeds of sale of the Shopping Center to satisfy any judgment in favor of Tenant as the same may then be encumbered unless Landlord elects in writing to satisfy such judgment by other means.   If Landlord is a partnership or tenancy in common, none of the general and/or limited partners comprising the partnership or any of such tenants in common will be personally liable for any judgment, except to the extent provided above.   The provisions hereof shall inure to

Landlord's successors and assigns. The foregoing provisions are not intended to relieve Landlord from the performance of any of Landlord's obligations under the Lease, but only to limit the personal liability of Landlord in case of recovery of a judgment against Landlord.

WITNESS the following signatures and seals:

ATTEST (WITNESS):

LANDLORD

WILLIAM P. BEATSON, JR.,
tenant in common

JEROME B. TROUT, JR.,
tenant in common

TENANT

CIRCUIT CITY STORES, INC.,
a Virginia corporation

ATTEST:

Its: Assistant Secretary

By:
Name: BENJAMIN B. CUMMINGS, JR.
Title: VICE PRESIDENT

200706.005 (REAL)
May 21, 1996