1

1               UNITED STATES BANKRUPTCY COURT

2             For the Eastern District of Virginia

3                      Richmond Division

4

5

6                    December 5th, 2008

7

8

9               Ch. 11 Circuit City Stores, Inc.

10                      08-35653-KRH

11

12

13

14          Transcript of testimony and other incidents in the

15     above, when heard on December 5th, 2008, before the

16     Honorable KEVIN R. HUENNEKENS, Judge.

17

18

19

20

21

22

23

24                  CRANE-SNEAD & ASSOCIATES, INC.
                       4914 Fitzhugh Avenue
25                  Richmond, Virginia 23230
                     Tel. No. (804) 355-4335

2

```
 1    APPEARANCES:

 2

 3    MR. DOUG FOLEY

 4    McGuire Woods, LLP

 5    901 East Cary Street

 6    Richmond, Virginia 23219

 7         Counsel for debtors

 8

 9    MR. GREGG GALARDI

10    Skadden, Arps, Slate, Flom, LLP

11    One Rodney Square

12    PO Box 636

13    Wilmington, DE 19899

14         Counsel for debtors

15

16    MR. BRADFORD ENGLANDER

17    7200 Wisconsin Ave.

18    Suite 800

19    Bethesda, MD 20814

20         Counsel for Alliance Corp. Source Interlink

21         Media, LLC

22

23

24

25
```

3

1        MR. BRUCE MATSON

2        951 Byrd St.

3        Richmond, Virginia 23219

4               Counsel for Bank of America

5

6        ROBERT VAN ARSDALE

7        Assistant United States Trustee

8        600 East Main Street Suite 301

9        Richmond, Virginia 23219

10

11       MR. DUSTIN BRANCH

12       2029 Century Park East

13       Suite 2600

14       Los Angeles CA, 90067

15              Counsel for various landlords

16

17       MR. DAVID HILLMAN

18       919 Third Ave.

19       New York, New York 10022

20              Counsel for Panasonic Corp.

21

22

23

24

25

4

```
 1     MR. JOHN MCJUNKIN and DAVID CARRIGAN

 2     1900 K. Street NW

 3     Washington, DC 20006

 4          Counsel for Bethesda Softworks, LLC

 5

 6

 7     TELEPHONIC APPEARANCE:

 8

 9     MR. SEAN LEUSIN

10          Counsel for VIWY Limited Partnership

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

```
 1                    THE CLERK:  In the matter of Circuit

 2      City Stores, Inc., case number 08-35653, hearing on

 3      items one through 33 as the matters for today's

 4      docket.

 5                    MR. FOLEY:  Good morning, Your Honor,

 6      Doug Foley on behalf of the debtors.

 7                    First I want to thank the Court for the

 8      opportunity for the last hour to try to work out

 9      some additional resolutions that are on the agenda,

10      and I believe we have done that.

11                    Today with me at Counsel's table is

12      Gregg Galardi from the law firm of Skadden, Arps,

13      Slate, Meagher & Flom.  And here from the company

14      today, Your Honor, on the front row is Mr. Jim

15      Marcum, Chief Executive Officer, as well as Bruce

16      Besanko, the Chief Financial Officer for the

17      company, Reggie Hedgepeth, who is the General

18      Counselor for the company.  Also we have Chris

19      Crowe, who is Director of Real Estate, who is with

20      the company as well, Your Honor.

21                    THE COURT:  All right.

22                    MR. FOLEY:  Your Honor, we did file an

23      amended agena last night.  If Your Honor doesn't

24      have a copy, I would --

25                    THE COURT:  I do have a copy
```

6

1    and I reviewed it.

2                    MR. FOLEY:  All right.  We would

3    essentially like to file that agenda, Your Honor,

4    with a couple of exceptions, some settlements,

5    resolutions.

6                    Just to go through starting with

7    item number one, this is a motion to file schedules

8    and statements.  Our anticipation is to file next

9    week and give notice to parties by December 19th.

10   So although we ask for the end of the month we

11   anticipate filing this next week.  And the motion

12   has not been opposed and we would ask permission to

13   submit an order.

14                    THE COURT:  That will be granted.

15                    MR. FOLEY:  Thank you, Your Honor.

16                    With respect to items number two,

17   three and four, and seven, these are special

18   employments applications.

19                    The first one for our firm is for Counsel

20   for debtors.  And also with respect to item number

21   three, application for Kirkland & Ellis to employ as

22   special financing counsel; and also application,

23   number seven, none of those applications have been

24   opposed.

25                    We also have, Your Honor, an employment

```
 1    application for Ernst & Young as tax consultants.

 2    We would ask the Court -- there has been no

 3    objections with respect to those applications and we

 4    would ask the Court for permission for those

 5    applications.

 6                      THE COURT:  Does any party wish

 7    to be heard in connection with the proposed

 8    applications?

 9                      All right.  They will be granted.

10                      MR. FOLEY:  Thank you, Your Honor.

11                      With respect to the application of

12    Rothschild as Investment Banker and Financial

13    Advisor, as the agenda reflects, Your Honor, the

14    Committee had until yesterday afternoon to object,

15    we have been working through their issues.  And I

16    believe we have agreed on a resolution of their

17    issues.  We would like the US Trustee's endorsement

18    on these orders to submit those orders as well.

19                      THE COURT:  All right.

20                      MR. FEINSTEIN:  Good morning,

21    Your Honor.  I'm Robert Feinstein, Counsel for the

22    Creditor's Committee.  We have been working

23    delinquently with Debtor's professionals including

24    directly with Rothschild on modified terms

25    essentially changing, in many cases reducing the
```

8

1    proposed structure.  It's consistent as part of a

2    whole, Your Honor, but which you will see reflected

3    in a number of pleadings we filed.

4              We are trying to do our best, Your

5    Honor.  And you will see a number of positions the

6    Committee is taking.  We are trying to reduce the

7    administrative burden to make sure that any dollars

8    that doesn't need to go out the door don't go out

9    the door today.  It's somewhat controversial, I

10   guess, but in many cases these are sale tax

11   payments, and employee payments, and so forth.  We

12   are obviously in a challenging time and with that in

13   mind, on a number of the applications, including

14   these two professional applications the Committee is

15   the way it is.  The specific terms of Rothschild and

16   FDI that we agreed to would be reflected in terms of

17   the order that we are working on.  And we would

18   submit those on consent of the Committee and

19   debtors, Your Honor.

20              THE COURT:  Very good.

21              Does any other party wish to be heard?

22              All right.  Then with the consent of the

23   Committee and the approval of the Office of the US

24   Trustee the Court will approve those applications.

25              MR. FOLEY:  Thank you, Your Honor.

9

1          Item number eight on the agenda is

2   a motion to file certain documents under seal.  And

3   if I could just pass over that one for a moment

4   because the underline motion is contested so it was

5   not reflected to deal with those together.

6          Item number nine, Your Honor is the

7   motion to establish compensation procedures, and

8   that motion also is not opposed.  But there is one

9   amendment to the procedures and we have spoken with

10  the Office of the US Trustee today before the

11  hearing.  And we are going to make an amendment to

12  that one with their endorsement and submit that to

13  Your Honor.

14          THE COURT:  Does any party wish to

15  be heard in connection with that motion?

16          All right.  The Court will approve

17  that as amended with the endorsement of the Office

18  of the US Trustee.

19          MR. FOLEY:  Thank you, Your Honor.

20          With items number ten on the docket,

21  Your Honor, this is a matter involving our motion to

22  procedures, we have resolved one of the objections.

23  We have not resolved the other objection but we are

24  working through that.  And for the procedure order

25  we ask that this be adjourn to the December 22nd

10

1    docket.

2                    THE COURT:  That will be adjourn.

3                    MR. FEINSTEIN:  Thank you, Your Honor.

4                    And with item number eleven,

5    that motion, Your Honor, and there had been

6    significant objections to that.  We are also working

7    with the Committee with respect to that to work

8    through that as well.  And we ask that every thing

9    related to matter eleven be adjourn to December

10   22nd.

11                   MR. GALARDI:  We have been working with the

12   Committee and we understand that they have

13   objections to that.  We met with them yesterday and

14   we also have been working very hard with them.  We

15   are currently putting it over to December 22nd.  We

16   may actually come back on January 16th.  I think

17   that is another date we have.  I just want to give

18   Your Honor notice of that because we may just simply

19   file a notice say it's further adjourned.  Some

20   people in the courtroom know that we may not be done

21   December 22nd.  Again, as Mr. Feinstein said we have

22   made a lot of progress with negotiations between

23   ourselves, the Committee, so for now we would like

24   to put it off to December 22nd.

25                   THE COURT:  All right.  That will

11

1   be adjourn to December 22nd.

2                   MR. DUNCAN:  Your Honor, if we could be

3   heard on that please?

4                   THE COURT:  Yes.

5                   MR. McJUSKIN:  Your Honor, John

6   McJuskin on behalf of Bethesda Softworks, LLC.

7                   THE COURT:  Bethesda Softworks?

8                   MR. McJUSKIN:  Yes, Softworks, LLC.

9                   In connection with this matter

10  I would like to raise the motion, my partner who has

11  been working on this matter.  If he could be heard?

12                  THE COURT:  Yes.

13                  MR. CARRIGAN:  Good morning, Your Honor,

14  Daniel Carrigan.

15                  THE COURT:  Carrigan?

16                  MR. CARRIGAN:  Yes, Your Honor.

17                  Your Honor, our particular observation on

18  this, what is on the agenda, number 12 on page 9,

19  our response to another motion is listed as an

20  objection to this motion.  And I noticed in the

21  Debtor's response, filed the response that our

22  response listed was not addressed.  All we are

23  saying is that we believe this should come up at the

24  time the reclamation motion is going to be

25  addressed.

1                    Thank you, Your Honor.

2                    THE COURT:  If we address that today it

3      will certainly be taken up at that time.

4                    MR. CARRIGAN:  Thank you, Your Honor.

5                    MR. FOLEY:  One matter we would like to

6      take out of order Your Honor relates to the motion,

7      the 9019 motion of Panasonic, which is item number

8      31 on the agenda.  The Committee filed an objection

9      to that settlement.  Late last night I believe a

10     settlement had been worked out with respect to that.

11     And counsel to the Committee are here towards that

12     settlement.

13                    THE COURT:  All right.

14

15                    THE COURT:  Please identify yourself each

16     time you come to the podium so we have it on the

17     record.

18                    MR. FEINSTEIN:  Certainly.

19                    Robert Feinstein for the Debtor's

20     Committee.  Your Honor, the amendment that we made

21     that we reflected in a memorandum form agreement

22     with them and debtor has the attached of a form of a

23     consent order to be submitted.  It certainly makes

24     changes.

25                    One is to address the treatment of

13

1    Panasonic claims with respect of merchandise that

2    was sold prepetition.  The initial motion and

3    agreement there were to be a payment to Panasonic

4    for that amount.  And there was an agreement by

5    Panasonic to sale, both of those provisions are out.

6    So all rights are reserved with respect to

7    prepetition cosignment.  There is no obligations on

8    Panasonic's part to sale on credit.  They will be

9    selling on CIA terms.

10                   But with all other respects the agreement

11   will be respected and the provision in the agreement

12   for the sale of the remaining merchandise that is

13   still in debtor's possession.  And the agreement we

14   will submit Your Honor will address all of that.

15                   THE COURT:  Thank you.

16                   Does any other party wish to be heard?

17                   MR. SMITH:  Good morning, Your Honor, J.R.

18   Smith on behalf of Panasonic.  Here with me today is

19   Mr. David Hillman.

20                   THE COURT:  Thank you.

21                   MR. HILLMAN:  Good morning, Your

22   Honor.  I heard what Mr. Feinstein had to say with

23   regard to settlement agreement.  That was accurate.

24   However we did take great pains last night and this

25   morning to memorialize the changes to the settlement

1    agreement and to the order.  And to the best of my

2    knowledge there is no dispute or issue with respect

3    to the settlement agreement or the order and we are

4    simply at house keeping phrase for the order to be

5    submitted.  So to my knowledge there is no further

6    negotiation and it is just a house keeping matter at

7    this point.

8                    THE COURT:  Very good.  Thank you.

9                    MR. HILLMAN:  Thank you, Your Honor.

10                   MR. FEINSTEIN:  That's right, Your Honor.

11   I think I left out one thing, Your Honor, that Mr.

12   Hillman will appreciate me saying.  We are in

13   discussions but I don't think it has been formulated

14   or resolved to development program to provide trade

15   support and administrative support for the company.

16                   THE COURT:  Very good.  Thank you.

17                   MR. MATSON:  Good morning, Your Honor.

18   Bruce Matson here on behalf of Bank of America.

19   This happened very recently.  We did have an issue

20   in how this would be resolved.  We would like to see

21   the final order.  We don't anticipate any issues.

22   Mr. Gelardi assured me that we don't have an issue.

23   We would like to look at the order before it gets

24   enters.

25                   MR. FEINSTEIN:  Just so Your Honor

1    has some background, we would have needed amendment

2    if it came down to prepetition status.  The banks

3    were waiting to see how the Committee reacted.  This

4    happened late last night around 11:00 or so.

5                    THE COURT:  Very good.  Thank you.

6                    So with the amendments stated on

7    the record the Court will approve that order when it

8    comes in.

9                    MR. FOLEY:  Thank you, Your Honor.

10                    Your Honor, the next two items

11    we would like to take up involve a motion

12    Shopping.com, those are items number eight, which is

13    unimposed and item number 26, which was filed

14    yesterday.  Mr. Cohen is here for Shopping.com.

15                    THE COURT:  Thank you.

16                    MR. CONDYLES:  Good morning, Your Honor,

17    Michael Condyles on behalf of Shopping.com.  I would

18    like to present to the Court Jeff Cohen.  We have

19    submitted a motion, it has not yet been entered.

20    And I would ask that he be permitted to speak before

21    the Court.

22                    THE COURT:  He may.

23                    MR. COHEN:  Good morning, Your Honor,

24    Jeffrey Cohen on behalf of Shopping.com.

25                    Your Honor.  I think this should be

1    pretty short.  In essence, our motion is a request

2    for adequate insurance (inaudible) and

3    acknowledgement from Debtors and the Court that any

4    postpetition service provided and qualify, and a

5    request to the alternative.  I'm not going to go

6    through all of this.  I think we can narrow it down.

7             Basically Shopping.com is an online

8    capacity website.  It permits the debtors to post

9    advertisements of the sale items on Shopping.com

10   depending on what the debtors pay or intend to pay

11   Shopping.com dictates where their adds would be

12   placed on the site.

13            The higher priority the logo of Circuit

14   City logo will appear next to the sale the link

15   saying price, it will have a logo.  When they click

16   on that logo it will go to Circuit City.com and that

17   occurs a fee within Shopping.com.

18            In addition to that Shopping.com

19   in working with the debtors work to optimize the

20   relationship.  By doing that the debtors will be

21   struck then to negotiate deals with third party

22   vendors on behalf of it.

23            For example, not many people go

24   directly to Shopping.com.  They go to google and

25   they put in a television they would like to see with

1   various sale prices across the internet.

2   Shopping.com will negotiate with google that when

3   that item is searched on google then Shopping.com

4   will have a higher priority towards the top of the

5   first page.  And when you go to Shopping.com on

6   google and you go to Shopping.com Circuit City will

7   be highly listed.

8                    So Shopping.com encourages cost in

9   negotiation with vendors.  And then when a consumer

10   clicks on Shopping.com it results in a charge and

11   Shopping.com then gets reimbursed for that.

12                    What we are asking for today is it seems

13   that the debtors have acknowledge at least in part

14   in their objection is that a minimum in order

15   acknowledging postpetition services will

16   characterize that any click by a consumer on

17   Shopping.com that results in the routing of the

18   CircuitCity.com website will qualify as an

19   administrative expense claim.

20                    The debtors do say in their

21   objection that they have no objection to that if we

22   can prove that in addition to a transaction -- Your

23   Honor, I believe if you review paragraph 18 in the

24   debtor's objection and has admitted as a part of the

25   admission by the debtor's clear statement that the

18

```
1    debtors would be severely prejudiced if Shopping.com

2    terminated the agreement.

3                    The debtor's successful

4    reorganization is dependent upon remaining a high

5    level of sales particularly during the holiday

6    season, the internet in particular, and Shopping.com

7    in particular provides crucial avenues by which the

8    debtors may obtain this.

9                    Without Shopping.com services the

10   debtors suspect a decline in sales at their on line

11   stores.  So I think at a minimum an acknowledgement

12   of postpetition services would qualify as

13   administrative expense claim and of course we heard

14   the debtor's response.  I don't believe that would

15   be a disputed issue.

16                    Shopping.com now request in addition to

17   that is not the long list of items I mentioned in

18   the motion, we are not going to ask Your Honor today

19   to give us that.  I do ask Your Honor, because

20   unlike your typical relationship with a vendor or

21   service provider, since Shopping.com is going out

22   and expending cost on behalf of the estates and

23   issue bills on a 30 days basis.  So at the end of

24   the month they will issue a bill by the 15th day of

25   the month then its 30 days terms.  It often results
```

19

```
1        in Shopping.com extending resources and sometimes

2        waiting 60 to 90 days of providing 60 to 90 days

3        worth of services before we would know whether

4        payment on that first bill, that first month, will

5        be made on a timely basis.

6                          So Shopping.com's request is a

7        deposit, not to different from a treatment of a

8        utility product, as an internet provider.  I think

9        you can draw a parallel between the services of

10       Shopping.come and a utility provider.

11                          Your Honor, considered a utility deposit

12       provide a two week deposit to provide services for

13       30 days.  Shopping.com would make a similar request

14       for a deposit to protect them especially since out

15       of pocket may occur.  In addition, Your Honor, that

16       we bill every 30 days with a 30 days notice, go out

17       and pay on behalf of the estate.  What I would ask

18       Your Honor to do is to permit Shopping.com to issue

19       a bill every 15 days and maintain a 30 days notice,

20       but this way we are just trying to figure out

21       different avenues of providing Shopping.com with

22       that little bit more of protection and yet

23       maintaining the use of the services for Circuit City

24       through the critical holiday season and in light of

25       electronics through the uptake for this.  We want to
```

20

1    make sure they can continue to use the services and

2    be permanently listed.

3                    THE COURT:  Thank you.

4                    MR. FOLEY:  Your Honor, Doug Foley on

5    behalf of the debtors.  We filed our response and we

6    plead out the arguments in the papers that the

7    request for relieve of motion although we appreciate

8    Mr. Cohen backing off some of the request from the

9    motion.  But it is still essentially -- they are not

10   seeking 365(B)2 because it is too early for us to do

11   that.

12                   If they want to send us bills more often

13   then they are free to send us bills more often as

14   long as we are not obligated to pay them more often.

15   What they have asked for is no different from any

16   other contract party, the third party --

17   Shopping.com with extending cost of credit to

18   provide the service, we don't have that in this

19   case.  We are sympathetic to their position.  We

20   would ask the Court to deny their motion.

21                   THE COURT:  What does the contract say

22   about the billing cycle?

23                   MR. FOLEY:  It is every 30 days I believe.

24   Thirty days for the bill, thirty days to pay.

25                   THE COURT:  Thank you.

21

1              Does any other party wish to be heard in

2       connection with this matter?

3              Mr. Cohen, do you wish to reply?

4              MR. COHEN:    Your Honor, I'll be

5       brief.  Just to address the debtor's points, I

6       believe it's performed in the contract.  The

7       contract does not require that we go out and pay

8       third parties providers to risk this we do that at

9       the instruction of CircuitCity.com.  Their account

10      manager talks to our account manager and request

11      that we go out and make payments -- we are obligated

12      to perform, we will.  We are under no obligation to

13      negotiate third party vendors for higher placements

14      on the website.  We do that at the request of the

15      company.

16             THE COURT:  With regard to that,

17      what are you asking me to do, isn't that just a

18      matter of business negotiations between you and

19      Circuit City?

20             MR. COHEN:  All I'm asking

21      Your Honor to do is to protect us from posting

22      deposit.  If Circuit City wants to pay us in advance

23      and say I am willing to pay you to pay them, that's

24      fine too.  But I think it's less burdensome on

25      Circuit City to post a two week deposit

22

```
 1      and then be able to run up credit with us

 2      on terms as opposed to us delaying the

 3      listing by demanding cash in advance.

 4                    THE COURT:  But isn't that

 5      something that you can negotiate directly with

 6      Circuit City?  That is not something that

 7      the Court should impose, is it?

 8                    MR. COHEN:  Your Honor, I believe

 9      we can negotiate directly with them and I

10      advised my client of that.  I think in these

11      economic times people are looking for a second

12      degree of comfort.  They have seen comfort

13      given to others similarly situated creditors.

14      If you look at utility motion, there are nine

15      included, there is a third party vendor who

16      consolidates the utility bills.  That vendor

17      does not qualify as utility but is getting a

18      deposit.  I think what my client is looking

19      for is the comfort that may go out of pocket

20      that they have something protecting them,

21      that they will in fact get reimbursed.  So if

22      they fail to pay a bill they will have a deposit

23      there.  We are a unique party involved.

24      We are critical for their online services.

25
```

23

1          Your Honor this will impact the debtor's

2     ability to operate on line would be significant.  A

3     request for a two week deposit is a $100,000.00

4     issue in a multi billion dollar case.  I think it

5     would be beneficial for the debtor to be willing to

6     post that deposit.

7          THE COURT:  Thank you.

8          Is there anything further?

9          MR. COHEN:  I appreciate your time.

10         THE COURT:  Thank you.

11         The Court will grant the motion for

12    filing documents under seal with regard to the

13    motion for adequate insurance of payment.  The Court

14    is going to deny that motion.  I'm not going to

15    require a two week deposit.  And I think the parties

16    are in agreement that post petition transaction are

17    to administrative expense status and will submit an

18    order to that and will grant that.

19         MR. FOLEY:  Thank you.

20         MR. COHEN:  Your Honor, may I be

21    excused?

22         THE COURT:  You may be excused.  Thank

23    you.

24         MR. FOLEY:  Your Honor, the next

25    item is number 12.

24

1                    THE COURT:  Thank you.

2                    MR. GALARDI:  Good morning, Your Honor,

3     Gregg Galardi on behalf of the debtors.

4                    Your Honor, the next motion is

5     item number 12.  We have addressed this on the first

6     day.  As I pointed out, Your Honor, on the first day

7     I did point out what I think may be the most

8     controversial, in particular, and as I pointed out,

9     Your Honor, and I will proffer the testimony of Jim

10    Marcum, who is the active CEO and President, and the

11    Committee agrees that we can do this by proffer.

12    They will be free to cross if they so desire.

13                   Mr. Marcum is the acting CEO and

14    President of the company and Vice Chairman of the

15    Board.  I thought it was important to express his

16    position of why we continue to support our former

17    employees and our request for continuing what we had

18    called (inaudible).  But as I pointed out Your

19    Honor, there are two decisions that have been

20    recently rendered by prepetition obligations

21    probably entired priority and probably not entitled

22    to administrative expenses.  As I noted, Your Honor,

23    on the first day we acknowledged that and we still

24    believe for other reasons that these statements are

25    important for Circuit City to make.

1               Mr. Martin, if called as a

2     witness, would advise Your Honor that there

3     were 700 positions that were, in fact, terminated

4     and given notice of terminations, I think it was the

5     Thursday and Friday before we eventually filed our

6     petition for relief in these cases.  And each of

7     those employees were notified that they were being

8     terminated.  And I know it received wide press

9     coverage here in the Richmond area as well as

10    nationwide.  But there were 580 people that were

11    terminated at that point.  We believe, Your Honor,

12    that there was roughly 1.1 million dollars a week to

13    be paid to these terminated employees as we went

14    forward and therefore the 60 day period, I believe

15    that it was and Mr. Marcum would confirm that it

16    would be approximately $8,000,000.00 in payments.

17              Mr. Marcum would also testified that

18    approximately 4.4 have already been paid to those

19    employees.  Your Honor, Mr. Marcum would say that

20    the relief would be in the best interest of the

21    company notwithstanding the fact that claims made be

22    only priority or to some extent unsecured on the

23    following basis.

24              If he was called as a witness, he would

25    testify that many of the people were given

1    significant time and effort and in some instances

2    have worked their lives at Circuit City.  It was an

3    unfortunate fact that the company had to take but

4    nonetheless the needs of these employees and their

5    wages are still in the best interest and reasonably

6    necessary to the reorganization for these two

7    reasons.

8                    First of all, Your Honor, these

9    people are still in the community and are still

10   loyal customers of Circuit City and it is important

11   for us to continue with the customer loyalty and the

12   goodwill of these employees.  So therefore it was

13   important to treat them what we believe is right.

14                    Importantly, Your Honor, and Mr. Marcum

15   would testify that it is also critical for the

16   morale for the still 30 or 33 thousand people still

17   at Circuit City.  In deed, Your Honor, there has

18   been many questions that if Your Honor doesn't

19   understand then Mr. Marcum could testify that there

20   had been many meetings with people who are still

21   employed and still concerned about their own wages

22   and benefits.  Termination rights, Your Honor, which

23   Mr. Marcum is familiar with having been in this

24   situation before with the fact that contracts go

25   unforceable and there are benefits and other

1    programs.  We don't have a retention program at this

2    company at this point and time.

3                    Your Honor, Mr. Marcum would

4    testify that we have limited availability, but

5    nonetheless, Mr. Marcum would still testify that

6    what he thought was in the best interest and what

7    the company determined to be in the best interest

8    was to treat these employees the way they did

9    because of the need to continue to have the 30 some

10   thousand work force in the company, still believes

11   in the company and still believes in the employees,

12   and that they are instrumental and the company

13   achieving the business plan for these companies.

14   And therefore he still believes it is in the best

15   interest notwithstanding the four million that has

16   gone out the door, and notwithstanding the fact that

17   we are still requesting a four million to go out the

18   door because it would have a spill over affect, not

19   only on the customer base, but the customers in the

20   community, and also a negative impact on those

21   employees that are still in the company.  And at

22   this critical time and this critical time of the

23   year that making each payment and with these

24   employees, that although it may not be required

25   under the law, that the four million dollars should

28

 1    still be paid.

 2                    Finally, Your Honor, we would

 3    also note that if Mr. Marcum was called to testify

 4    that it was somewhat to his nature or accidental

 5    nature, that we gave similar notices, as Your Honor

 6    knows, with respect to store closing employees, but

 7    because they were actually store closing employees,

 8    those people are going to be paid essentially the

 9    same notice that they fortunately will be able to

10    work out their entire time as store level employees.

11    So it looks like all of those employees would get

12    essentially the equivalent notice, although they

13    were too notified prior to bankruptcy that their job

14    would be terminated.  So they continued to work at

15    the store level.

16                    Your Honor, again, Mr. Marcum, would

17    further testify that these payments were in the

18    budget that we presented to the Court, that they

19    were negotiated with the lenders, that the lenders

20    understood the company's position and accommodated

21    the company's position.

22                    So then, again, Your Honor, Mr. Marcum

23    would testify that he believes it is in the best

24    interest of the company and at this time to make the

25    business plan achievable to continue to make these

29

1    payments and make the balance of those $4,000,000.00

2    payments.  That would be Mr. Marcum's testimony.

3                      THE COURT:  Does any party wish

4    to examine Mr. Marcum with regard to the proffer

5    testimony?

6                      All right.  The Court will accept the

7    proffer.

8                      MR. GALARDI:  Your Honor, I guess

9    it comes down to some legal argument.  Your Honor,

10   the legal argument I think fails us here as the fact

11   that unless Your Honor wants to go against the two

12   opinions that we've seen, there are two clear

13   opinions out there today, which say we gave notice

14   of termination and we are not contesting those

15   facts.  We gave notice of termination prior to

16   filing.  And those two opinions would say that you

17   terminated there is a prepetition that is priority

18   perhaps, the ten thousand, I think these people got

19   that amount or close to it.  So there is another

20   balance that would be an unsecured claim.

21                      Again, if you look strictly at the

22   employees that's probably the law.  But as the law

23   defines whether it was necessary for the

24   reorganization, Your Honor, we think this Court has

25   the power to authorize their payments.

1                    And Mr. Marcum's testimony

2        would be that but I can't put intangible when we get

3        $4,000,000.00 in benefits, or $5,000,000.00, the

4        goodwill of these employees, the loyalty of these

5        employees, the dissimilar treatment although for

6        legal grounds that they are not the same as the

7        store level employees to keep these corporate

8        headquarters employees.  And then the signal

9        that it sends to the rest of the corporate

10       employees who are being asked during this period,

11       which is a difficult period, to keep their head in

12       the game and to maximize value and to achieve a

13       business plan when it is obvious to them that

14       currently times are bad, the programs they have

15       counted on, the contracts, all of those things as

16       Your Honor knows we cut back significantly, servants

17       payments, those sort of things may not be available

18       even for those employees currently but to send a

19       signal that we are going to do everything for our

20       employees that the Court wants.

21                    THE COURT:  Thank you.

22                    MR. FEINSTEIN:  Robert Feinstein

23       with the official creditor's committee.  Your Honor,

24       the Committee's objection to this motion was not

25       taken likely.  We are sympathetic with the employees

31

1      and we understand the hardships this might cause

2      them.  We appreciate that some of the money has gone

3      to them.  So it's not all or nothing at all.  But as

4      the representatives of the creditors of this

5      enterprise looking out for all of the constituents,

6      vendors, landlords, the current employees, the 30

7      some odd thousand employees who would be devastated

8      if Circuit City doesn't survive Ch. 11.  We felt it

9      necessary to take the position on this and a number

10     of other motions today.  It's difficult.  It's

11     difficult to understand the consequences of

12     withholding payments to not just employees, but

13     taxing authorities, the landlords, Panasonic, who

14     wanted to get paid nine million.

15                  Your Honor, eight million here, nine

16     million here, thirteen million here, pretty soon you

17     are talking about no money.  And we live in very

18     uncertain times.  As Mr. Cohen said it is a very

19     challenging economic environment.  And all one needs

20     to do is read in the newspaper every day to see the

21     kind of challenges that Circuit City is facing, that

22     other retailers are facing, that the vendors and the

23     landlords are facing.  Everybody has some real

24     hardship here.  We are trying to pull together in a

25     certain effort to make sure that Circuit City

32

1    remains as a viable enterprise for the thirty some

2    thousand that are still employed and for the benefit

3    of vendors who are looking for a good customer in

4    Circuit City, and for the benefit of the landlord

5    who do not want empty, dark stores.

6              So this is very difficult and it is

7    unfortunate that some people along the way will feel

8    hardship, but it's a shared hardship Your Honor.

9    This is not a step we took lightly.  The Committee

10   is comprised not simply of vendors, but some

11   landlords, and PPVC, and a class action on behalf of

12   employers.  And all of them unanimously agreed and

13   support the filing of this objection.  It is not

14   something, as I said, we did lightly.

15             In terms of the legal argument as Mr.

16   Galardi noted, there is the cases that say these are

17   prepetition claims and consistent with the approach

18   we have taken on all matters before Your Honor

19   today.  We are trying to conserve --

20             THE COURT:  Well those cases are not

21   binding on this Court --

22             MR. FEINSTEIN:  Your Honor, this

23   is a case of first impression.  We are asking Your

24   Honor to follow those cases on the law and as a

25   matter of doctrine of necessity.  I will

33

1    certainly make the argument, Your Honor,

2    that it is necessity dealing with the other

3    end, that we not send any money unless we

4    certainly have to in order for the greater

5    good to be pursue.  So we are asking Your Honor to

6    deny the motion.

7                    THE COURT:  If I do deny the

8    motion then certainly the coming into the Court and

9    having to decide the issues and then to litigate

10   those issues and then that is going to distract the

11   company, aren't those things that the Court should

12   take into consideration as well?

13                   MR. FEINSTEIN:  There are any number of

14   legal issues that could be raised before Your Honor,

15   company management, this is a discreet issue in one

16   of many.  I don't know if it is typically burdensome

17   for the company to have to deal with this issue.  If

18   Your Honor follows this it would end up priority

19   unsecured claims so will be treated in the order of

20   the bankruptcy code of their case.  I don't know if

21   there is really much more than a discreet legal

22   issue for a lawyer to address and for Your Honor to

23   decide.

24                   THE COURT:  Thank you.

25                   Does any other party wish to be heard in

1        opposition to the motion?

2                    MR. GALARDI:   Your Honor, there

3        is the distraction argument.   I also note that those

4        cases may technically apply on legal principals,

5        those were liquidated cases, and one of the things

6        we considered and that is why we looked to Mr.

7        Marcum testify by my proffer is that we were

8        actually looking to what affect this would have on

9        the current employees and that is why we are

10       relying to a large extent of the doctrine of

11       necessity.

12                    Your Honor points to another

13       aspect of this.   You are absolutely right, there is

14       time and distraction.   There is with any prepetition

15       claim but the reason those cases got brought was

16       because as soon as you didn't pay this you have

17       class actions in the first days of the case.

18                    Again, based on all of these

19       things in consideration of making decisions, they

20       made the decision, that is to make sure when you are

21       letting a person go out of this company, this was a

22       major layoff as Your Honor knows.   It was 500 people

23       at the corporate headquarters right here.   So all of

24       those consideration, although maybe not legally

25       technical and that is what the doctrine

35

```
 1      of necessity goes to it is reasonably necessary to
 2      affect a reorganization.  We are not liquidating
 3      right now.  We are not hopping to ever liquidate
 4      right now.  You will see when we get to the landlord
 5      matters we are already trying to and I think the
 6      Committee is to reorganize.  With that as the
 7      motivation, I think there is legal authority under
 8      105 even if Your Honor wanted to follow the strict
 9      reading of the two other cases to still authorize
10      the relief.  There is plenty of relief we have done
11      first day, that is not stricken within the
12      bankruptcy code.  The question is the reasonable
13      necessary to reorganization and the company's
14      position is this is reasonably necessary
15      to have this company to have a opportunity to
16      reorganize and we ask that you grant that.
17                      THE COURT:  Thank you.
18                      Does any other party wish to
19      be heard?
20                      All right.  The Court has read
21      the paper that has been filed and with the
22      testimony that has been offered today in the
23      argument of Counsel.  The COurt agrees with the
24      company to exercise its business judgement.
25      I think it would be disruptive.  I'm not going to
```

1    rule today on whether claims entitled to

2    administrative expense status, that remains an open

3    issue and one that weighs heavily on the Court in

4    making this decision.  I think that given the

5    testimony, the proffer testimony, would indicate a

6    large number of people remain in the community and

7    would need the company for its existing employee's

8    morale that the Court will approve the motion and

9    overrule the objection of the Committee.  I did not

10   take the Committee's objection lightly.  And I think

11   it is a very strong argument.  I think in this case

12   that the motion should be granted.

13                    MR. GALARDI:  Thank you, Your Honor.

14                    Your Honor, I would ask permission

15   that Mr. Marcum be excused so he may go back to the

16   company?

17                    THE COURT:  Yes.

18                    MR. GALARDI:  Thank you, Your Honor.

19                    Your Honor, with respect to the next

20   motion on the agenda, I think I will be dealing with

21   the rest of them.

22                    Matter number 13 on the agenda

23   is again one of the first day motions that the

24   Committee has looked seriously too.  It is the

25   motion to pay sales, use, trust fund, and other

1    taxes.  There were multiple bases for these

2    payments.  Your Honor, we filed an amendment, or an

3    amended motion to seek payments I think an

4    additional $10,000,000.00 payments.  What I believe

5    we have agreed to with the Committee and again we

6    are not saying things we don't believe in and the

7    Committee has raised a very valid objection to the

8    payment of sales, use and other taxes.  We have been

9    working on many things.  We have not been able to

10   provide them with all of the information with

11   respect to these amended taxes.  What we have agreed

12   to do is have an agreement, and whether we are going

13   to do it as a separate order or otherwise, where we

14   will not pay these sales, use and other taxes until

15   we give the Committee the information and whether

16   there are Trust Fund, taxes, or other reasons until

17   the Committee agrees that we can pay those.

18                    And should we have a dispute

19   then we will come back on the 22nd with respect to

20   any disputes.  We hope not to have any issues with

21   that.  But we would like to be able to convince the

22   Committee either that their trust fund, taxes, or

23   some other reason that they should pay because I

24   don't think the Committee wants -- trust fund taxes

25   are not property of the estate.  So what we have

```
1    agreed to do is give them five days notice of that

2    kind of information and if there is an objection to

3    that in that five days then we would not pay it.  If

4    there is no objection then we would be authorized to

5    pay it and that is how we will deal with any money.

6    And I'm not going to just limit it to the

7    supplemental, to the extent if there is any money

8    from the original budget, or with respect to

9    additional money we will apply with that procedure.

10   And I think Mr. Feinstein is okay with that

11   procedure.

12              THE COURT:  All right.

13              Mr. Feinstein.

14              MR. FEINSTEIN:  Yes, Your Honor, I can

15   confirm that we are okay with that procedure as with

16   a number of these matters we are trying to work out.

17   I do want to just signal that the position we

18   continue to take is that if these are

19   demonstratively trust fund taxes, not just property

20   of the estate, it would be appropriate for the

21   debtor to obtain them.  But if it's any other kind

22   of  nontrustfund payment of prepetition claim then

23   we are going to oppose it.

24              THE COURT:  Very good.  So that will be

25   approved as modified.
```

1                    I think Mr. Stein wants to --

2                    MR. STEIN:  Richard Stein on

3     behalf of the Internal Revenue Services, Your Honor.

4     I am at a little bit at a lost on this one because

5     when I read it, and what has been described here

6     today seems to be a little bit different than at

7     least my reading of it, and it won't be the first

8     time that I'm wrong.  But I have a great problem if

9     the company intends on not paying over on the 941

10    taxes, certainly the trust fund portion as well as

11    the corporate payment of the 941 taxes.  So to the

12    extent that it doesn't deal with each time there is

13    a salary payment made to any employee the company

14    pays into the federal government or to the

15    depository account payments.  If they are going to

16    continue to do that I have no problem, otherwise I

17    have a great deal of problem with any kind of order

18    that would authorize the nonpayment of taxes.

19                    THE COURT:  This order doesn't authorize

20    the nonpayment of taxes.  The order that I

21    previously entered authorized the debtor to pay

22    these type of taxes and now with it being modified,

23    it is only that the debtor is going to give five

24    days notice to the committee before they make a

25    payment.  And then if the Committee objects to it

1    then you would have to discuss it with the Committee

2    and if nobody agreed then we can come back and I can

3    make a ruling.  But right now I am not authorizing a

4    nonpayment of anything.

5              MR. STEIN:  Thank you.  I apologize.

6              THE COURT:  You make a good point.

7              MR. STEIN:  Thank you.

8              MR. GALARDI:  Your Honor, we

9    understood it as just the authorization you gave us

10   is subject to Committee approval on those matters,

11   and the Committee was clear on its position.

12             Your Honor, that then takes us to

13   matter 14.

14             THE COURT:  For the record, Mr.

15   Galardi, I will approve that with the amended that

16   you described.

17             MR. GALARDI:  And, Your Honor, I think

18   the Committee as we anticipate I think it will

19   probably be more affective in going back and

20   modifying what Your Honor has already entered.  We

21   have had a proposed stipulation that we addressed,

22   you will see the Committee has certain concerns

23   before we take certain actions.  I would add this

24   one to that order.  Hopefully we will be submitting

25   under separate covers Your Honor an order saying

1    here is how the Committee and the Debtors are going

2    to go forward with any of what I call the bankruptcy

3    prepetition relief.  We are working on that order

4    but we just don't have it today.

5                    THE COURT:  All right.  Very good.

6                    MR. GALARDI:  Your Honor, the next

7    one on the agenda is matter number 14, which is the

8    Debtor's motion for utility services procedures.

9                    Your Honor may recall we did

10   this the first day and I guess Mr. Johnson was the

11   one who had raised concern about that.  We have

12   since carved out a number of other entries.  I

13   believe that this motion is fully resolved although

14   I see right there.

15                   The first change, Your Honor, is we

16   have spoken about a block account after going back

17   and forth many times about block accounts, a

18   separate escrow.  Essentially what will happen is

19   the bank will set up a reserve that we do not have

20   access to that funds.  It just makes it easier like

21   most reserves.  And then if somebody makes the

22   request that reserve will be subject to the

23   availability and we will let the Court know of the

24   availability.  That was one of the first

25   clarifications we wanted to make to the order.

42

1           And, in addition, you will see

2     the notice of appeal date on the procedure, we are

3     trying to work out stipulations with all of those

4     parties either by way of paying them, I think we

5     have stipulated that this order does not apply to

6     them very much like Mr. Johnson.  It doesn't apply

7     to them so we have with respect to that stipulation

8     and there are others that are listed.

9           In addition, Your Honor, we

10    said in our relief we have negotiated, renegotiated

11    settlements with most if not all of the utilities.

12    I don't think that anyone is still out there that is

13    objecting, I have one adjourn that I know of.  We

14    are evaluating the pay in advance or give them a

15    deposit.  And then one of things we have talked

16    about, Your Honor, one of the things that will

17    happen in the next hearing or for the final hearing

18    that five million reserve, that two week reserve,

19    will be adjusted accordingly since Mr. Johnson

20    represents every utility I can think of, that

21    reserve will become much smaller.  We have resolved

22    his objections.

23           I think then we have resolved

24    all of the objections to this motion that the order

25    can stand with that one modification to the order

1    that says instead of a block account it would be a

2    reserve established by the bank.  And we would say

3    this is a final order today.  I think we have no

4    parties contesting or asking for any other adequate

5    insurance.

6                    The one party is accent energy

7    that ask that this motion with respect to it be

8    adjourn over to December 22nd.  So we would

9    essentially carve them out from this, it will not

10   apply to them as a utility, but the same procedure

11   would apply to them if we resolve it or contest it

12   on December 22nd.

13                   THE COURT:  Does any other party

14   wish to be heard with respect to the utility motion?

15                   MR. MATSON:  Yes, Your Honor.

16                   THE COURT:  Mr. Matson.

17                   MR. MATSON:  Good morning, Your Honor,

18   Bruce Matson again for Bank of America.  I don't

19   think we have any issues at all.  We just want to

20   seek final order.  There were some protections in

21   the first order related to banks but I don't think

22   it's going to be an issue.

23                   MR. GALARDI:  We are working on that

24   language with Mr. Matson.

25                   THE COURT:  So then the motion

44

1     of Accent Energy will be carried over to the next

2     date.

3                    MR. GALARDI:  Yes.

4                    THE COURT:  Are you going to

5     be submitting a new order then?

6                    MR. GALARDI:  I think we will have to

7     submit an amended, whether we call it final order,

8     final utility order, but it will have the language

9     we need to have.

10                    THE COURT:  All right.  The Court

11     will look for that.

12                    MR. GALARDI:  Thank you, Your Honor.

13                    Your Honor, the next matter on

14     the agenda is matter 15.  And, again, it is first

15     day relief.  The Committee filed a limited

16     objection.  It goes to the stipulation we are

17     working on.  It is an explanation of what has been

18     up to date, what has not been up to date, and then

19     the notice provision.  I think that resolves the

20     Committee's objection.  It wouldn't have to be

21     revision to this order, rather it will be superseded

22     by our stipulation.  And there were no other

23     objections.

24                    THE COURT:  Very good.

25                    MR. GALARDI:  The next matter is 16.

45

1      It is the first day motion with respect to

2      contractors and satisfaction of liens.  Again, we

3      have agreed the same thing that it will be part of

4      the Committee's stipulation there will be a

5      reporting mechanism, a explanation mechanism, that

6      we are working out language.  So this order is

7      final, separate order between the Committee and the

8      Debtors.

9                    THE COURT:  All right.  That's approved.

10                   MR. GALARDI:  Similarly with respect to

11     number 17 on the agenda, that is the motion of the

12     debtor to pay certain foreign vendors and service

13     providers, similar objection by the Committee,

14     similar response.  We will add a stipulation of the

15     debtor.

16                   THE COURT:  That will be approved.

17                   MR. GALARDI:  Your Honor, the

18     next matter on the agenda is the motion for granting

19     administrative expenses and postpetition delivery of

20     goods, the matter of establishing procedures for

21     reclamation.

22                   Your Honor, we received three

23     objections.  One was Warner Home Video; the other

24     was Alliance Entertainment and then finally

25     Lumisource filed an objection.  I think we have

46

1    resolved those with all clarification to language

2    that we can put it in the order to be circulated to

3    counsel.  I don't know if there was any other

4    objections.  I think they have all been resolved by

5    language we worked out to clarify.  We are not

6    trying to prejudice anybody rights.  We are not

7    trying to limit their rights.

8                    THE COURT:  Does any part wish to

9    be heard in connection with this motion?

10                   MR. ENGLANDER:  Good morning, Your

11   Honor, Brad Englander.  Our concern, I think the

12   language the debtor propose, I think it needs to go

13   just a step further.  I think what the order does is

14   it picks pieces of the language.  What the language

15   does is pit picks pieces of 546(H).  One of the

16   provisions of this -- I'm sorry.  I see now that the

17   language has been added.  Thank you.

18                   THE COURT:  All right.  Very good.

19                   MR. CARRIGAN:  Daniel Carrigan,

20   Your Honor, with Bethesda Software, LLC.  Your

21   Honor, we filed a response.  Our response went

22   beyond the issue that has been addressed under

23   546(H), although that was part of our response

24   as well.  Our response is more global and that the

25   debtor has now taken the position that reclamation

1     creditors have a general unsecured claim for the

2     goods and so forth.  This is all back to the value

3     that has been argued throughout the northeast, New

4     York, Delaware, and else where.  And I am not sure

5     if that is what is before the Court today, although

6     I am prepared to address it if the Court would like.

7                    THE COURT:  As I understand it

8     nothing is being called along those lines on a

9     subsitive basis based on this motion.

10                    MR. GALARDI:  You are absolutely correct,

11    Your Honor.  We have not and I want it to be clear

12    that the reclamation claims, that work with the

13    prepetition security interest, and there is no value

14    -- we are not making that argument.  We have not

15    made that argument.  We have not made a

16    representation or inclination to make such a

17    representation.  What our procedures essentially is

18    that you have the right to go and exercise your

19    reclamation rights as a secured creditor, we are not

20    limiting it.

21                    MR. CARRIGAN:  With all do respect, Your

22    Honor, that is not the case.

23                    THE COURT:  Show me what it is that --

24                    MR. CARRIGAN:  If Your Honor would

25    turn to the motion that was filed.  The debtors took

48

1    the paragraph from the previous page.  The debtors

2    submit that the reclamation claims are not entitled

3    to administrative expense with respect to any of

4    reclamation claim, but instead are general

5    nonpriority unsecured claims subject to the debtors

6    rights to object to such unsecured claims on any

7    ground the governing law permits.

8                    THE COURT:  That's in the motion.

9                    MR. CARRIGAN:  It is in the motion.

10                    However, Your Honor, it is also in the

11   reply that was filed last night.  And it's that

12   reclamation creditors are not entitled to adequate

13   protection.  However if the Court would turn its

14   attention to the response.  I'm sorry I don't have

15   the docket number.

16                    THE COURT:  I have it in front of me.

17                    What page is it?

18                    MR. CARRIGAN:  It doesn't have a page

19   number, paragraph 13.

20                    THE COURT:  All right.

21                    MR. CARRIGAN:  Your Honor, the cases

22   that are cited, they are all the same.  These are

23   the cases.  Obviously the debtor did take in

24   position these claims are not entitled to any

25   treatment other than a general unsecured claim.

49

1                    THE COURT:  You expected them to

2     take that --

3                    MR. CARRIGAN:  I would expect that.

4                    THE COURT:  But that is not what we are

5     adjudicating in the motion.  All we are doing is

6     establishing procedure as I understand it.

7                    MR. CARRIGAN:  But the procedures have

8     subsitive affect, Your Honor.  As Counsel

9     acknowledged at the original hearing is that the

10    current 546(B) remedy is strictly returned goods,

11    and they are being sold even as we speak.  So that

12    when we get 120 days down the road is there going to

13    be anything to reclaim, the good will all be sold

14    thorough.

15                    What we asked for in our motion,

16    what we suggested in our motion, is the kind of

17    motion that has been entered in Winn Dixie.  It's

18    been entered in other cases up in New York, that

19    would basically say that if the debtor is going to

20    get a holiday on responding to and dealing with

21    reclamation claims but not have to address them in

22    the iterum, then the catch at the time should not

23    adversely affect the rights, things that happened

24    because the reclamation creditors are not able to

25    get their goods back.  That is because the goods are

1    sold or as the structure of this motion had before

2    that the debtor could return goods after 120 days or

3    at some point without the creditor's consent, which

4    has been changed and is now clarified.  There would

5    be nothing to get back except that which the debtor

6    no longer wants, those that are broken, or those

7    that didn't sell.  We are in the peak season.  The

8    goods are being sold through.

9              By the time we ever get around to a

10   resolution anything worth having is already going to

11   be sold.  So this procedure motion has subsitive

12   impact.  The debtor also ask in here, I believe, for

13   clarification that the automatic stay applies here.

14             Now the citations that are in the

15   records, the parentheticals that we suggested that

16   it is only self help.  But the breath of the

17   commentary, or the argument, is that any kind

18   because what they want or what they say they want,

19   they don't want distraction in the company.

20             This goes back to the fundamental

21   remedy that we have under reclamation.  The remedy

22   of the reclamation is that the notice is given and

23   what typically would happen outside bankruptcy would

24   be that the reclamation creditor, reclamation

25   claimant, whatever the designation, would file a

51

1   lawsuit to try to obtain reclamation.  They would

2   seek a temporary restraining order requiring them to

3   recover the goods.

4               Now during that process and this is all

5   outline actually in cases that is referenced in this

6   reply.  If the Court would refer to (inaudible),

7   that case is based on another case, it is based on

8   an older case called Westwood Bank.  What Westwood

9   Bank said is that were eliminating reclamation is

10  foreclosure by the secured creditor and use of that

11  foreclosure sale to pay down a secured debt.

12              And what the debtor is concerned

13  about and perhaps justifiably we don't even know how

14  many total reclamation claims there are in this

15  case.  In Winn Dixie there is plenty.  We knew how

16  many there were.  There was a process.  There was

17  disclosure.  There was at least you knew what was

18  going on, what was happening with the reclamation

19  claim.  There is no disclosure provided for here.

20              The order is issued to the subsitive

21  rights also has no governing procedures, or

22  standards, or anything else with respect to when the

23  debtor will or will not honor a reclamation claim.

24  There is a provision that they give or sell with a

25  reclamation -- they can either pay him or give the

1     goods back.  Well who monitors that.  Who approves

2     that.  How does the reclamation creditors know that

3     they are being treated the same across the board.

4                    We suggested in our response is

5     a one side fits all program.  It is also a situation

6     that if the debtor really believes that these claims

7     are valueless under standards, and what those cases

8     do is they take and proxy a foreclosure and use the

9     proceeds to pay down the secured debt.  The proxy

10    for that is a quote evaluation, much like under 506,

11    a secured claim or not a secured claim.

12                   So the assumption is that if you

13    go through every single claim, or every single

14    reclamation that the lender's lien is always going

15    to be greater -- pay down the unsecured debt.  But

16    is that realistic.  Is that practical.  Is that what

17    happens in the economy.  No, it hardly ever happens

18    today.  It only happens like that in liquidation

19    sales.

20                   And that is our concern, Judge.

21    When we get to the end of this process unless there

22    is some kind of stay of affect of these procedures

23    we are not going to know what is happening with

24    those reclamation creditors.  That they could pay

25    for whatever reason, and not even have to bring it

1    to the Court for disclosure.

2                         And, Your Honor, in the other

3    cases that we and counsel for the Committee and also

4    for some of the cases in Delaware at least it was a

5    process where they would have a reclamation report

6    which would identify all of the claims, which would

7    identify those that have essentially reduced various

8    reclamation claims whether it's a notice or what has

9    happened in most of those cases is you get to the

10   end of that whole process, you spent a lot of time

11   and a lot of money evaluate in looking for these

12   things.  Now we are going to go through this

13   exercise over the next three or three and a half

14   months and we are going to come to an end and we are

15   going to have evaluate -- what is the point in

16   spending the money, the creditors committee are

17   concerned about, and the vendors are concerned

18   about, that everybody is concerned about, what is

19   the point of that exercise.  Yes, there needs to be

20   a process.  There is no question about it.  And we

21   suggested a process in our response.  But our

22   concern is that the process, the so called process

23   is going to affect subsitive rights, and that it

24   could if it's abused, if manipulated where you go

25   outside of the rules, and frankly most of the cases

54

1      today it's not unusual.  It has turned the rules up

2      side down.

3                     The Mating (phonetically) case years ago

4      was all about the confirmation of the plan and then

5      you pay in the order of priority.  Well we have

6      these cases today, these great big cases, is that

7      almost everybody gets paid at the front end

8      including for example, with respect to 503(B)9.

9      Those claims have a second priority after the cost

10     and expenses of administration of Ch. 11 case.  Now

11     the Ch. 11 process and administration is being paid

12     on an out going basis.  And we did not object to the

13     employee's motion.  We do not want the employees to

14     be adversely affected, nor the former employees.  So

15     we don't have any objections to that.  But frankly

16     they are behind us on the 503(B)9 plan and they are

17     getting paid.  And various taxes are behind us and

18     are getting paid.  And these foreign vendors are

19     getting paid and they are behind us.  And the

20     vendors who products are generating money for the

21     debtors operation right now, or at least some of it,

22     are the ones that are having to stand still and wait

23     for a period of time and may never get the claims

24     backs.  The debtor comes back in 120 days and say

25     sorry we don't have that any more, or here is what

1    we have left, you can have it.

2                    Respectfully, Your Honor, the

3    procedure drives subsitive results.  And that is the

4    problem with the motion and the process of the

5    structure right now.

6                    THE COURT:  Isn't that what you have as an

7    administrative expense claim?

8                    MR. CARRIGAN:  Your Honor, the 503(B)9 is

9    the administrative expense claim, but there is no

10   time to specify to when it paid.  But what it does

11   say is that it is senior to most of the other

12   priority claims that are already being paid.

13                   And that is the point how can he justify

14   jumping off the entire train, if you will, of the

15   absolute priority rule that if you don't pay

16   prepetition claim, confirmation, when you get off

17   that rule and it may be a problem with the

18   legislature more so, because you are here on the

19   first day and you are here three weeks later and the

20   answer is that this is the very same situation.  The

21   economy is dreadful.  You've got hundreds if not

22   thousands of people who depend on this company for

23   their jobs.  But let's remember and as pointed out

24   in the declaration, there are hundreds if not

25   thousands of vendors who are dependent upon this

1    company.  A two million or $5,000,000.00 account

2    receivable for these people can be just as dramatic

3    if unpaid -- have just a dramatic affect upon other

4    companies.

5                    So the trickle down affect, if

6    you will, described is very much equitable to the

7    vendors that are out there.  And the fact is I don't

8    think there is any dispute.  Although, again, the

9    debtors haven't told us how many reclamation -- in

10   Winn Dixie the debtors told us and they estimated

11   the amounts that would come in and the numbers were

12   known at some point at least.  And you could say

13   yes, it's a very large number and if the debtor had

14   to pay all of that money right now, the vendors

15   understand that.  On the other hand -- it's one

16   thing that they understand it and is working with

17   the debtor, it's a whole different thing to say as

18   time goes by we will work with you, but trust us.

19   And then at the end the goods are all gone.

20                   There has been too many cases, and if I

21   remember the numbers correctly and Counsel can

22   correct me, there are hundreds of millions

23   reclamation claims made, and of course those are not

24   all valid.  But that number is going to come down

25   because they are just overstated.  But there are

1   hundreds of millions claims made.  In Flemming I can

2   say that when we got to the final numbers that came

3   out of the debtor's reclamation point, it had gone

4   from hundreds of millions down to about a twenty

5   million, and part of that was because the stuff has

6   been sold through.  And it wasn't there any more and

7   we couldn't claim it.  And because there was no say

8   in the process the argument was that what was a

9   couple hundred of million dollars is now a twenty

10  million claim, and by the way that was valueless

11  because the value of the inventory was not greater

12  than the amount of the secured debt.  We are not

13  fighting with the secured creditors here.  We are

14  not really trying to fight the debtors.  What we are

15  saying is don't limit our rights under the

16  procedures.

17                  THE COURT:  All right.

18                  MR. CARRIGAN:  Thank you, Your Honor.

19                  MR. GALARDI:  Your Honor, I never had a

20  procedure objected to like this, so I would do what

21  I did with the utilities, I would carve him out

22  because these procedures do not apply to him.

23                  MR. CARRIGAN:  Your Honor, we did

24  not ask to be carved out.  We asked for a fair and

25  equitable procedure.  If Counsel wishes to

58

1    carve us out then Counsel should give us a

2    fair and equitable procedure.  If Counsel

3    does not wish to do that then the Court

4    will really have to rule up or down on it.

5             THE COURT:  You are not

6    bound by the procedures under procedural

7    order then you have all of the rights that

8    you had coming in and nothing has been

9    compromised today and you can proceed by

10    motion or whatever you want this Court to

11    grant you.

12             MR. CARRIGAN:  Your Honor,

13    superficially I would say that is right.  But

14    as a practical matter what is going to happen, our

15    client has a three and half million dollar claim.

16    And, again, Your Honor, we didn't ask to be carved

17    out, what we say to the Court is the problem with

18    this order is it's unfair.  It has a subsitive

19    impact and --

20             THE COURT:  But if it's not

21    impacting you how --

22             MR. CARRIGAN:  It does impact us,

23    Your Honor.

24             THE COURT:  You are not a part of it.

25             MR. CARRIGAN:  Your Honor, this

59

1    would be like if the debtor came to you and said we

2    have a motion that we are going to apply to a whole

3    class of creditors except this one.  Now that is

4    obviously discriminatory.

5                    THE COURT:  I don't understand.

6    If you want to be excepted from the order then you

7    can, if you want to be a part of the order you can.

8    So it's not discriminatory.  You can pick which way

9    you want to go.

10                   MR. CARRIGAN:  It's not quite the

11   picking, Your Honor.  And, frankly, let's examine

12   what would happen if we were on our own.  If we were

13   on our own then we would have the right to go in and

14   file a reclamation claim with this Court.  We would

15   then have to go through the preliminary injunction

16   and the process.  And then the bank for three

17   million or two million, or whatever is left, they

18   could foreclose upon us and use the money to pay

19   down.  While every hundred perhaps, or how many

20   other reclamations are out there are going to be

21   sitting there and hoping that one day the debtor --

22   we are at a loss if we are all by ourselves in this.

23   I mean that is the answer to this.

24                   The debtors asked for a one side

25   fits all solution.  Our response was yes, a one side

1    fits all make sense, but it needs these kind of

2    modifications.  If we are not going to consent the

3    carve out.  And we were very careful in our motion

4    to ask for not to be carved out, what we asked for

5    was a fair process.  If the fair process is not

6    going to be afforded or what do we view as a fair

7    process, or the Court can decide it is a fair

8    process.  And if they do the Court can impose it on

9    us and we certainly will obey the Court's order.

10                   But the carve out is not a realistic --

11   again, Your Honor, frankly the debtor filed this

12   motion and they asked for relief under 546(H).  And

13   it included all of the elements under 546(H) subject

14   to the rights of the secured creditors and subject

15   to a lot of other things but they left out the

16   consent of the affected creditor.

17                   Now what were they going to do when it

18   comes back later.  Were they going to say that

19   anybody that didn't object to this motion has

20   consented so they get their goods back when ever

21   they get them back and whatever they are.  That's

22   the danger of these things is that this process

23   offers the opportunity for the debtors, and not even

24   having to disclosure to anybody.

25                   And, frankly, Your Honor, no,

1    we will not consent to being carved out.  If the

2    Court carves us out, the Court carves us out.  If

3    the Court overrules our objection, the Court

4    overrules our objection.

5              But our problem is the debtor

6    wanted one size fits all process.  It is not only a

7    process it is also a subsitive affect.  And we

8    suggested a process that has proven out, it has

9    worked in other cases that would be applicable to

10   all.  If the Court chooses to disregard that, or

11   rule that it is inappropriate or unfair, we respect

12   that and we want the Court's judgement.

13             Thank you.

14             THE COURT:  Mr. Galardi.

15             MR. GALARDI:  Your Honor, with

16   respect to the process, I think, Your Honor, in

17   reading through the brief again, I find the process

18   some what -- the reclamation claims are secured

19   creditors under the modification of the code.  They

20   have secured creditors rights that can be asserted

21   and they have the rights in pursuing those.  What we

22   found, Your Honor, in dealing with all of those

23   protective orders, and then we are going to first

24   day motions to try to avoid being in Court every few

25   days.  I understand at the end of the day you are

62

1    selling goods.  And why we draft the procedure the

2    way we do and why we are very clear, if they are not

3    comfortable with these procedures, then you are

4    entitled to file a lawsuit, a request for a stay, a

5    temporary injunction, because we do understand.

6    This is just like outside of bankruptcy, every day

7    those goods get sold their reclamation claims may

8    become less.  They can protect their rights.  This

9    was a mechanism to give us notice so we can have

10   conversation.

11                    But if people are concerned about

12                    that then we can carve them out

13                    of the motion, or the motion in

14                    particular, they are filing an

15                    action getting a preliminary

16                    injunction and getting their

17                    goods.  So in that context, our

18                    brief is actually helping

19                    creditors understand that they

20                    have rights now as secured

21                    creditors.  They can optimize

22                    the procedures and know the

23                    risk.  But if you don't want to

24                    be in a procedure, here is what

25                    the code says, and by the way

63

1                       the procedure doesn't preclude

2                       you from doing what the code

3                       says, or what lawyers do, namely

4                       file a complaint.  Whether he

5                       wants to be in or out, what the

6                       consequences of saying if you

7                       are not happy then you should

8                       come in and protect your rights.

9                       The debtor is not going to

10                      protect all of those rights.  We

11                      are going to try to work with

12                      the committee and come up with a

13                      process.  We do support our

14                      vendors.  But this was to get a

15                      notice so we can start talking

16                      about that.  But it doesn't

17                      preclude anybody that is unhappy

18                      from coming in and asking for

19                      relief.  So we ask Your Honor to

20                      overrule the objection.

21                      THE COURT:  The Court is going

22      to overrule the objection.  I will approve the

23      procedures, and if the creditor wants to opt out of

24      the order, he may.

25                      MR. GALARDI:  Thank you, Your Honor.

1             Your Honor, we now come to matter 19,

2    which looks like it may have taken a long time,

3    Your Honor, we very much appreciate you giving us

4    the hour to talk before we came in.

5             I am very hopeful to say that we have

6    resolved all but one objection.  I think we have

7    resolved these objections.  I think this goes to

8    number 19, number 20, and I believe there is one

9    other one.  I am going to say some things that what

10   I think we have agreed too.  I am sure there are

11   plenty of landlord counsels behind us, behind me

12   that may come up.  This is also with the effort and

13   the suggestion of the Committee, who has two very

14   large landlords that have many leases.

15             The first thing we would agree to Your

16   Honor and you can see from our brief that there is a

17   split in authority between a billing date and an

18   accrual date.  What we have agreed with every single

19   objecting landlord, we will agree that the accrual

20   method applies.  So therefore and we have a number

21   of leases as I explained to the parties, and one

22   reason why you have gotten so many objections to 365

23   before because of the complicated restructure.

24             Your Honor, I think I explained in the

25   first day we have what we call the surplus leases

1   that were already rejected but under rejection

2   motion.  We have been going forward the leases that

3   are store closing leases so we are concerned about

4   whether December and how the accrual method works.

5   We have the stores that we have no intention to

6   leave at this particular time.  And among those

7   stores some are paid in advance, but unfortunately

8   some are paid in arrears.  So there is an objection

9   out there today that somebody would be paid rent on

10  November 30th, but it would go back to November 1st.

11  So we have agreed that regardless of the way your

12  lease works, if you have objected we would apply the

13  accrual method with respect to you.

14              Any landlord who is not an objecting

15  party we will not agree to that.  We will reserve

16  our rights to argue otherwise.  We understand that

17  the circuit may have the accrual method, but we will

18  reserve our rights to say otherwise to do whatever

19  we need to do.  But we are with respect to any

20  objecting landlord in the room we are agreeing the

21  accrual method applies.  It applies not only to

22  those who pay in advance but also -- for example,

23  there is one landlord in here that has a November

24  30th payment that would go back.  They agreed I

25  don't have to go back all the way to November 1st.

1   I am only going back to November 10th and paying

2   that rent.  And to stay consistent with 365(B)3, we

3   are going to actually take up one of the accruals we

4   will pay.  That was one of the many points that we

5   did.

6                    Your Honor, the second part of

7   this 365(B), we also agree with the landlords that

8   we needed a 365(B)4 extension for the reasons set

9   forth in the record on the first day.  We have

10  agreed with the landlords.  I think we have resolved

11  every objection in 365(B)4 motion.  But to make

12  clear there are carve outs to that 365(B)4 and again

13  we didn't realize the carve outs when we made them.

14                    In particular, if you were what

15  we call the (inaudible) leases we didn't have the

16  inventory, this motion does not apply to you.  You

17  are carved out.  So I still have my 120 days with my

18  rights to ask for an additional 90 days.  If you

19  were a GOB store because we are liquidating

20  inventory in those stores.  We are going at a store

21  closing store, we are not going out of business.  If

22  you are in one of those since we liquidate the

23  inventory, again we are not exceeding the 364(B)4

24  extension.  What came to my attention and the banks

25  have agreed too.  There were some leases that were

1     in a construction phrase.  Obviously we didn't have

2     inventory, but we didn't know and there extensions,

3     we are not seeking an extension with the

4     inconstruction, again, the lenders are concerned

5     about the liquidation of the inventory.

6                    Your Honor, we agreed that we would

7     again, and I understand this is an issue in this

8     jurisdiction in particular which I have learned this

9     morning, there is an issue of timely obligation in

10    the accrual of stub rent.  Landlords are very

11    concerned about the stub rent, and if we don't pay

12    the stub rent right now there will be consequences.

13    We have agreed to at least for this purpose and

14    there are reasons, business reasons, we have been

15    working with the Committee, any of the requests to

16    have immediate payment of stub rent, whether that is

17    in the form of a motion, or in the form of an

18    objection, or in the form of an objection from the

19    365(B)4, we are saying you don't need to make a

20    motion.  If you have already done it, and all such

21    objections are going to be adjourn over to December

22    22nd.  With that said because of the accrual method

23    we will agree that they are administrative claims,

24    and we are really talking about the timing of the

25    payments of those.  I guess the concern is here that

68

```
 1      if they delay the payment on it we would ask Your

 2      Honor to enter an order to protect them from the

 3      delay of any payments right now at least.

 4                     My understanding is if they

 5      receive an order tomorrow and this is today saying

 6      immediately pay it they are out of that

 7      disgorgement, the dissolution issue, so they were

 8      very concerned about that and that is what prompted

 9      a number of motions and reactions.

10                     We have agreed that, if Your Honor

11      agrees, to help get us to that December 22nd date to

12      not fight the issue of the timing of that thing is

13      and that hopefully get beyond that and to not fight

14      issue, at least from now until December 22nd, the

15      facts that they have delayed, not delay, we asked

16      for a delay, the fact that we are not paying it now

17      should not subject them to dissolution or

18      disgorgement or anything else and we come back on

19      the December 22nd to discuss the issue.

20                     In addition, Your Honor, as I've

21      told the landlords, with respect to stub rent, Your

22      Honor, we have two types of leases now.  We have the

23      leases that the stores are liquidating during --

24      under the agency agreement although they are not

25      third party beneficiaries of that agreement we have
```

1    agreed to pay because we are being paid by the

2    agent, we have agreed to pay that rent.  Again if

3    you live by the accrual method you are going to die

4    by the accrual method so that means and they all

5    agreed that if we stay on through mid-December that

6    having pay December 1st rent, we will have rent and

7    we can actually vacate the premises, and we are

8    working on what that means, then we only pay for the

9    two weeks so the landlords are agreeing to that sort

10   of method.

11                   I think and I know I jumped around

12   because I got to go back to the objection motion,

13   but it all goes as one big piece.  Those were the

14   major concerns that resolved the 365(B)4.  Your

15   Honor, our motion may read incorrectly, so I want to

16   be clear on the record.  If we will have to actually

17   assume or actually reject by the earlier of the

18   confirmation date or the 210 date, not that we would

19   file motion on that date to extend that time period.

20   Now with respect to confirmation we would have to

21   make a notice that we are assuming confirmation, but

22   as normal we would not have those go affective until

23   the affective date and they agreed to that.  But we

24   can't change and play games with the confirmation

25   and the affective date to say ha, ha, we assumed it

1    and now are rejecting it.  So I think that was

2    another issue that they had that we have resolved.

3                 Your Honor, the other things that

4    we have resolved with respect to some of the

5    properties is, and I will wait until they come up,

6    there were a number of people that objected to the

7    rejection.  And the issue comes down to a number of

8    issues.  This is where I think there is one

9    outstanding objection.  We have two problems and

10   most of it comes from did we give the keys back, did

11   we surrender the premises.  We have a witness who

12   would be available to testify of that.  What I

13   thought we would do in that case is argue that

14   everybody rights are reserved.  If you raised the

15   objection that the affective date of our rejection

16   or we didn't surrender the premises for whatever

17   reason, it was not November 9th, or November 12th,

18   or November 19th, or whatever, as long as you agree

19   that it was by November 30th, so we put a perimeter

20   around that date and all rights are reserved and

21   argued whether there was an affective surrender or

22   not, then we have agreed to that.  We are not going

23   to put on evidence today of that.  We will try to

24   resolve that.  And, again, that would be a stub rent

25   claim, if we were wrong and it was not of the

1    affective date and we have our position, they have

2    theirs and then we will talk about if it's two days,

3    three days, four days stub rent.  But it will be

4    treated like all of the other stub rent claims

5    without the subject of dissolution on those issues.

6    I think that is resolved.  I will find out when I

7    leave the podium of that.

8                    Your Honor, then we have our stub

9    rent, the sublease issue.  You see a number of

10   objections from landlords where they are the

11   overlord or the sublessee, I believe that we are

12   agreed in accepting in one situation that because we

13   gave notice of the rejection both to the overlord

14   and to the sublessee, will agreed that both have

15   been rejected.  Nonetheless, we couldn't do all of

16   this before -- but we still want to do a deal.  We

17   are letting them have more time.  We will gladly

18   help them.  But we will certainly suspend it to

19   December 22nd, if they could work out deals.  We

20   have no problems with people working out deals as

21   long as we are clear that there has been a rejection

22   and those people can still fight what the date of

23   the keys were.  One landlord still may have an issue

24   on that.

25                    Your Honor, then we have the unfortunate

1      circumstances for them, perhaps fortunate for us, is

2      that some of the sublessee pay rent for the month of

3      November on the 1st and we didn't pay rent to the

4      landlord.  Since we have money prepetition put into

5      our accounts, we told them we were unfortunately

6      unable to pay that money back.  So we agreed that if

7      they want to come in and argue that point we can do

8      that with Your Honor.  We can't without an order of

9      the Court say by the way you got sublessee you get

10     back the money.  That is something that the Court

11     will just have to decide.  We would oppose it.

12     Landlords are free to argue that.  We are not

13     resolving that today.

14                    But as a compromise on the other

15     side, some landlords did in fact make the December

16     payment.  But we didn't pay December rent because we

17     thought they were rejected.  What we told the

18     landlords was we are not going to try to make in the

19     postpetition period.  That's just an accounting

20     problem.  We would if we got it, give the money to

21     the landlords, back to the tenants pending upon the

22     circumstances.  That is what they want.  Again,

23     there is one landlord that may say we took it and we

24     got the rent.  Everybody else has agreed with that

25     provision.

```
 1                    We then got to the fifth

 2    procedures, Your Honor, and again, I think we got

 3    pretty far on all of these and then I will leave the

 4    podium to the landlord counsels.  There was a

 5    concern about notifications with respect to this

 6    procedure adequate insurances, and I'm hoping that

 7    we settled these in this environment.  But as a

 8    precaution what we have agreed to do, and I think

 9    there is a December 17th date by which we would have

10    to give notification to the parties as to the

11    bidders of the properties for adequate insurance

12    information.  We would by Friday noon post on the

13    website and hopefully send out to the landlords, if

14    there is a bid on their property we would notify

15    them of the potential bidder.  And I think the

16    hearing is December 22nd, so the ideal is give them

17    notices back.

18                    We would modify the bid requirements of

19    anyone who wants to bid on them.  So if we don't get

20    a bid we are going to give that five days notice of

21    the date of rejection.  But the rejection would be

22    affective again this goes to what constitutes

23    surrender, we would give notice, you get five days

24    notice to turn over or shut off the alarm code.  And

25    I said we would make reasonably efforts to give them
```

74

1    the alarm code and turn over the keys and to

2    deactivate the system if we are not going to be

3    there.

4                 And with respect to third parties

5    we would try to -- they were concerned about the

6    property.  We are aware of perhaps the collateral of

7    the banks.  What we would do is try to give notice

8    and we will do the best that we can to all third

9    parties that we believe have property in there.  And

10    the same five days notice saying take it or it will

11    be given to the landlords free and clear so they

12    don't have a liability should they get it, should

13    they throw it out, or should they sale it.

14                 We also agreed, Your Honor, that it is

15    really not appropriate until the actual sale of the

16    property, if the period of time that the order may

17    become immediately affective.  That would be

18    December 22nd if we are in the position to that.

19                 Finally, Your Honor, I think on December

20    22nd what we have agreed to is we would only go

21    forward on the uncontested sales of leases, and if

22    there is a contestant matter with respect to the

23    sales of the leases and the parties couldn't agree

24    to go forward on December 22nd, we would come up

25    with some hearing, Your Honor.  If we need to do it

1    before the year end, we would ask for time for that.

2    But at least we will agree temporarily not to try to

3    force if the parties are not prepared to go forward

4    on December 22nd, given that date, it's the 17th and

5    18th becomes the weekend and then we are back here

6    so we would agree to that.

7              Let me test my memory and see if

8    there is anything else.  Now my understanding, Your

9    Honor, with respect to all of the parties other than

10   I think two parties, one of the sublease and the

11   rejection, one trying to determine by putting off

12   motion to compel could be done on December 22nd.  I

13   actually think that resolved all of the objections

14   to the rejection motion, which was number 19.  It

15   resolves a lot of objections to 20 as well Your

16   Honor.  It resolves all of the objections with

17   respect to the motion listed on 21, which is the

18   extension of the 365(B)4.  I think we should

19   probably stop there and let the counsels go.  I will

20   go back to this, motion 20, which is the agency is

21   resolved by I believe most -- I see Mr. Branch

22   coming up -- but in addition, Your Honor, we want to

23   make clear in a modified order, as Your Honor is

24   probably familiar the agent has been dealing with

25   landlords on all of those issues.  We want to make

```
 1    clear that the agent could landlords that are

 2    enforceable.  We want to make sure that the agents

 3    have the authority to do so, that those letter

 4    agreements could be approved and finally that the

 5    sale of the would be free and clear of all those

 6    claims and encumbrances.  Again, the bank group had

 7    agreed to the original motion to do that.  If there

 8    is an issue with the bank group, that we would in

 9    fact make sure that is possible on that aspect.

10              Your Honor, I may have missed some

11    parts of my script before they all come up and

12    speak.

13              THE COURT:  Let me ask you this

14    question, please.  Should we plan a lunch break?

15    Would it make sense to talk a little bit with the

16    landlords to see if there was something not put on

17    the record because it sounds like to me that you

18    made tremendous progress this morning in just one

19    hour.  Does it make sense for us to take a break or

20    do you want to push through?

21              MR. GALARDI:  Your Honor, I think

22    we should take a break.  I'm not sure that there are

23    many other matters.  But it may be worth it to take

24    a break.  Let me go through this, 22 is a motion to

25    compel rent.  And 23 is the same, 24 is the same, 25
```

1    is the same.  Your Honor, has already disposed of

2    26.  And 27 is again a motion to compel rents.  And

3    28, Your Honor, is to the supplemental sales use.

4    Your Honor, I believe with one change to number 29,

5    that is also resolved.  The landlords have asked for

6    clarification on that as well.  It's the later of,

7    they don't have to file a general bar date.  It is

8    the date by which it's 30 days after rejection, what

9    ever is the later of those two.  So they don't have

10   to put in all of their prepetition damage claims.

11   There is an outstanding objection.  We are agreeing

12   with the agency governing 180 days.  That takes us

13   to number 30, I believe, that will be a matter we

14   will be hopefully resolving.  Number 31, Your Honor,

15   is already handled.  And 32 would be addressed and

16   33.  So I do think a break at this point might clean

17   the whole agenda except for maybe a couple

18   objections.

19                  THE COURT:  All right.  We will go ahead

20   and do that.

21                  How long do you want to take a break?

22                  MR. CURLY:  Paul Curly, I want to

23   introduce the Court to Mr. Cunningham.  I have an

24   obligation this afternoon and I was going to ask Mr.

25   Cunningham to be able to appear without me being

1    present.

2                        THE COURT:  Certainly.  That will be

3    granted.

4                        How long do you want to break for?

5                        MR. GALARDI:  Your Honor, if you want

6    to take a lunch break now, it's 1:00.  Would 2:00

7    give everybody enough time.  I think a break until

8    2:00 and we can work the language out and that will

9    give your staff time to have lunch and we can finish

10   this up.

11                       THE COURT:  We will stand adjourn until

12   2:00.

13

14                       (A lunch recess was taken.)

15

16                       THE COURT:  I see everyone is back.

17                       MR. GALARDI:  Your Honor, there is a

18   gentleman here that is not on the agenda, who

19   represents the monitor in Canada.  I think we should

20   take that one first before we go back on the docket.

21                       THE COURT:  Who in Canada?

22                       MR. GALARDI:  As you know we filed a CCWA

23   proceeding.

24                       THE COURT:  Yes, sir.

25                       MR. GALARDI:  And he would like

1    to say a few words to the Court.

2              THE COURT:  All right.

3              MR. GALARDI:  Thank you.

4              MR. SMITH:  Good afternoon, Your Honor.

5    Thank you for hearing us.  J.R. Smith from Hutton &

6    Williams.  With me today is Mr. Ken Coleman.  I

7    would ask you if he may be heard today.

8              THE COURT:  Yes, sir.

9              MR. COLEMAN:  Thank you, Your Honor.

10             I will be very brief.  Those proceedings

11   are commenced in Canada that these Ch. 11 cases were

12   commenced.  We represent the monitor who was

13   appointed in that proceeding.  As Your Honor may be

14   aware the appointment of a monitor is required on

15   the statute.  There is a great deal of attention

16   being paid in the Canadian proceedings.  Very

17   briefly, I just wanted to outline a couple of points

18   to the Court.  One is the monitor's role in the

19   Canadian proceeding.  The monitor is an officer of

20   the Court.  He is not a party to the proceeding.  He

21   is independent, neutral, and intended to assist the

22   company and the creditors to achieve a

23   restructuring.

24             One of the functions of the monitor

25   is to file periodic reports that is the principal

1      means of the communication of the Court to appoint

2      the monitor and the principal means of

3      communications between the creditors,

4      constringencies in the proceedings.  We have done a

5      fair amount of work representing monitors in the US

6      cases.  And some Courts have found it helpful to

7      receive copies of those reports to be filed into the

8      US proceeding.  We are happy to do that here if Your

9      Honor thinks that would be of interest or somehow

10     informative.  We are happy to proceed on that basis

11     if you think that would be helpful to the court.

12             Later today, I think in about an hour's

13     time there is a hearing to approve a sale process

14     and that is designed to be a duel process, Your

15     Honor, a stand alone process for sales or in

16     conjunction with a larger transaction made.  That

17     process in Canada is on a pretty fast track.

18     Proposals, current proposals are due by the 15th of

19     January.  And it is intended or at least proposed in

20     the order that will be submitted today that the

21     monitor have full participation in that process in

22     Canada.  That transaction if it goes forward would

23     require approval by the Court and depending on the

24     other aspects of the deal particularly if there are

25     some US elements to it, there may be a need for

81

1    coordination and cooperation between this Court and

2    the Canadian Court.  It may be useful in that regard

3    for the two courts to have communication.  And we

4    would make available to your chambers the contact

5    information if Your Honor would feel that it is

6    appropriate to communicate.

7                    Just very briefly, Your Honor, the other

8    two items up for today in Canada are extension of

9    the stay, proposals to extend that out to January

10   30th and as well to make certain modifications to

11   the initial order that was granted on the first day.

12                   Your Honor, if you think it would be

13   helpful to this Court we can file those pleadings

14   and those orders along with the reports as you wish,

15   and provide as much or as little information as Your

16   Honor would desire to see.  Those are my comments.

17                   Thank you very much.

18                   THE COURT:  Thank you very much.

19                   Mr. Galardi, do you think those would be

20   helpful to have the reports or any of those

21   pleadings filed in connection with this case?

22                   MR. GALARDI:  Your Honor, I have know

23   objection if you have an interest to do that.

24                   THE COURT:  I don't know if we need

25   to have the pleadings filed.

82

1              MR. GALARDI:  Your Honor, we have been

2    involved with the monitor.  We have discussed the

3    process and how it coincides with the process here

4    in the United States.  We had a meeting already with

5    the monitor.  I think having the monthly reports

6    that they do is a good ideal.  If there is some

7    pleading that they thought is really important they

8    could always file it.  The reports might be a good

9    ideal to get.

10             THE COURT:  Very good.

11             MR. COLEMAN:  Thank you, Your Honor.

12             MR. GALARDI:  I do believe we have

13   resolved the landlord type motions and all of the

14   issues.  I would turn to matter 19.  Matter 19 is

15   the motion of us to reject leases and to abandon

16   property.  I guess I missed a couple of things that

17   I would like to put on the record with respect to

18   this that I think finalizes it.

19             There are three objections, Golf Galaxy,

20   Dick's Sporting Goods, and Dollar Tree.  We have

21   agreed to adjourn their objections to rejection over

22   to the January 29th date.

23             THE COURT:  Those are Golf Galaxy, Dick's

24   Sporting Goods, and Dollar Tree?

25             MR. GALARDI:  Yes, Your Honor.

1                        There are also agreements

2       between landlords and subtenants that we are going

3       to have side deals where there will be assumptions

4       and assignments as opposed to a challenge of

5       business judgement, where we had at least made it

6       neutral, I believe, with landlords.  One would be

7       Cardinal Distribution would be the landlord and GEI

8       is the subtenant doing business as CP Transportation

9       Systems.  The second would be OLP6609 Grand LLC with

10      Lazy Boy as the subtenant.  And then I have, I think

11      it's Ban CCIWR Business Trust with DHL.  So we would

12      seek to have those agreements.  Your Honor, with

13      respect to the actual date of rejection as well as

14      you have seen a lot of landlords say we have

15      banished the property especially with types of

16      claims they may have in addition to stub rent, all

17      rents are reserved.  We are not trying to say that

18      there is not an administrative claim.  We are not

19      saying that there is.  We are just reserving all

20      rights for people to make any claims they want out

21      of this including a claim for stub rent and

22      contesting whether we actually are entitled to the

23      date of rejection.  If I'm not mistaken that

24      resolves all of the objections.

25                        THE COURT:  Thank you.

84

1          Does anybody wish to be heard in

2    connection with the motion authorizing rejection of

3    an expired lease?

4          MR. LESTERMAN:  Robbie Lesterman.

5    Your Honor we filed a joinder in the objection of

6    Dick's Sporting Goods.

7          THE COURT:  Right.

8          MR. LESTERMAN:  We filed it last

9    yesterday evening.  The objection is docket number

10   275, I believe.  And I just want to make it clear

11   that we just simply join in that objection.  We are

12   the primary landlord with respect to that lease and

13   so we have no problem with carrying that objection

14   or joiner over to the 29th.

15         THE COURT:  Thank you.

16         MR. LESTERMAN:  Thank you.

17         MR. GALARDI:  Your Honor, there is one

18   lease that we have not moved to reject, or didn't

19   apparently have it on our sublease rejection, that

20   we agreed with Counsel that we would do.

21         MR. CUNNINGHAM:  For the record, Your

22   Honor, Gary Cunningham appearing on behalf of the

23   landlord in Detroit, the service center for Circuit

24   City in that geographic location.  There is a

25   subtenant, apparently a subtenant lease that we

85

1    weren't party too.  They have not received any

2    notification of what is happening here in this Ch.

3    11 proceeding.  Counsel for the debtor and I have

4    agreed that that needs to be resolved as well.  And

5    I believe debtor will take all of the steps

6    necessary in order to get notice in file a motion in

7    order to reject that sublessee.

8                    MR. GALARDI:  That's correct, Your

9    Honor.

10                   MR. CUNNINGHAM:  And we also agreed,

11   Your Honor, as other landlords have on the proration

12   method being the law of the case here.  The only

13   other issue we have is our damage claims and we

14   agreed that we will preserve those as the same as

15   the debtor.  And I think that resolves everything.

16                   THE COURT:  Very good.

17                   What is the docket number?  Did

18   you file an objection?

19                   MR. CUNNINGHAM:  We did, Your Honor,

20   docket number 260.  I'm not certain what the letters

21   were.  The original one was 260.

22                   THE COURT:  That's sufficient.  Thank

23   you.

24                   MR. CUNNINGHAM:  Thank you, Your Honor.

25                   MR. GALARDI:  Your Honor, the other

86

```
 1    one is there is an objection, I think it's docket

 2    number 368, Home Family Trust, we have reached an

 3    agreement with Counsel.

 4              I think that resolves all of the

 5    objections on number 19.  What we intend to do is

 6    work on an order and we will circulate an order on

 7    Monday morning, circulating to the parties so that

 8    they can review it to make sure I've gotten

 9    everything.

10              THE COURT:  So do you anticipate

11    there will be one order for every landlord, or are

12    you going to circulate separate orders for each of

13    the landlords who have objected?

14              MR. GALARDI:  Good question.  I

15    think what we will do is resolving their objections,

16    Your Honor, because remember this was a motion to

17    reject, they objected to that.  So we will circulate

18    it to them.  And if they need a separate order then

19    we will do a separate order trying to get on record

20    any agreements, if necessary, if they are

21    comfortable with my representations.  They can

22    contact us if they want an order for that.

23              THE COURT:  All right.  Very good.

24              MR. GALARDI:  Your Honor, may I have

25    permission that if we don't need to file an order
```

87

1      but we have an agreement by email or other way that

2      that will be sufficient instead of filing an order

3      or stipulation, if landlords are comfortable with

4      that.

5                        THE COURT:  That is fine with the

6      Court.

7                        MR. GALARDI:  Thank you, Your Honor.

8                        Your Honor, as I move to matter 20, I

9      believe that this is the motion with respect to the

10     Gordon Brothers.  Your Honor, I neglected to say --

11     I mentioned that there was (inaudible) Company that

12     was being sold.  Your Honor we amended the agreement

13     with respect to sale.  What had happened was we

14     decided to go away from Gordon Brothers and thought

15     we had a better deal and it was our only option to

16     do so.  Then once we received the better deal we

17     then circulated that deal and Gordon Brothers made

18     the higher proposal, which is reflected in the

19     letter of agreement.  We shared that letter with the

20     creditors committee.  I wanted to bring that to the

21     Court's attention so we ask for approval to proceed

22     that way.

23                        In addition, Your Honor, I missed

24     a number of little points, well big points to

25     everyone.  First landlords will be authorized to

88

1    appear at the auctions whether they bid or not.

2    Second is that landlords will be entitled to credit

3    bid, we have the right to contest whether it's a

4    valid amount.  And those credits will include both

5    prepetition and postpetition accrual again with

6    respect to the landlord's bidding.

7                    In addition, the landlords if bidding on

8    their own lease would not have to make a good faith

9    deposit on their own lease.  It is their own lease.

10   Obviously if they go on any other lease they get

11   treated like any other bidder.

12                   I may have misspoken that the adequate

13   insurance information be transmitted is actually

14   December 16th.  And then I have the obligation by

15   December 19th at noon put on the record where these

16   properties have gone.  And I'm loosing my notes on

17   the December 17th date.  Secured objection deadline,

18   which I didn't refer too.  Apparently there is a

19   shorter period with our modifying this order, that

20   will be modified over the weekend.  It's already a

21   deadline, but we are essentially extending the

22   deadline for persons to make objections.  It will

23   give the landlords more time to make the

24   calculations and make the objections.  And then any

25   amounts if we do sell the properties and we have an

1    agreement, or to the extent we have an agreement, we

2    would pay up the amount and we are not going to hold

3    the landlords hostage to the full amount being

4    resolved unless there is such a gigantic difference

5    that we can't agree.  But I can't imagine that will

6    be the case.  We will pay the uncontested amounts at

7    that point and then we can resolve any other

8    additional amounts at a later point.  I believe that

9    there resolves all of the objections to number 20.

10   And on this one what we were doing and Counsels to

11   the landlords have been very helpful here, we have

12   modified the order to reflect all of my comments,

13   the additional comments.  The ideal would be to

14   circulate this order to the objecting parties.  We

15   ask if they don't have their emails on something we

16   already have to give us their emails to circulate

17   that order on Monday morning and then to get all

18   comments around noon or 1:00, and then try to

19   circulate and file that order for Your Honor by the

20   end of the day, Monday.  It may split to Tuesday.

21   We will be sure to get these deadlines out there.

22            THE COURT:  All right.  Very good.

23            Does any party wish to be heard with

24   connection of this motion?

25            MR. FEINSTEIN:  Robert Feinstein

1    with the creditors committee, we just ask even

2    though we didn't object to this that we be included

3    in all of these orders being circulated.

4                    THE COURT:  I would assume you

5    would be included or at least that would be my hope.

6                    MR. GALARDI:  Yes, sir.

7                    Your Honor, I think on the hearing

8    we have the whole day scheduled for the 22nd.

9                    THE COURT:  You do.

10                   MR. GALARDI:  What I would suggest

11   is that at least this matter be scheduled for the

12   afternoon.  If we have a big enough calender we can

13   deal with other things in the morning.  But at least

14   this matter be scheduled for the afternoon if that

15   is acceptable.  And maybe we can resolve some

16   objections on some other matters if that is

17   acceptable.

18                   THE COURT:  That is acceptable.

19   So we will set this matter down for 1:00.

20                   MR. GALARDI:  That will be great,

21   Your Honor.  Thank you.

22                   Your Honor, now we turn to matter

23   21 on the agenda, which is the debtor's motion to

24   extend time under 365(d)4.  As I earlier mentioned,

25   Your Honor, we would be extending the time but it

91

1      would all be for the 210 days that would have to be

2      done to assume or reject it.  Clarification on the

3      record, Your Honor, we put in the order a paragraph

4      that provides that we will satisfy our client's

5      obligation that is required by 365(d)4.  And then

6      the way that we worked out a procedure is that

7      landlords, if they believe we have not done so, they

8      will give us five days notice.  We will have five

9      days to either fix it or we agree to have to come

10     back to the Court on an expedited basis.  I think

11     that resolves all of the objections with respect to

12     -- and the other things I said earlier with respect

13     to the 365(d)4.  I think that is the thing that I

14     missed earlier.

15                    THE COURT:  All right.  Very good.

16                    Does any party wish to be heard in

17     connection with the motion to extend time in which

18     the debtor may assume or reject leases?

19                    MR. EPPS:  Good afternoon, Your

20     Honor, H.C. Epps, Jr. on behalf of many of the

21     objecting landlords.  I asked Mr. Galardi and he has

22     given me permission to clarify something that he

23     said earlier about the timing.  Our group of

24     landlords and another of others have objected to the

25     payments and stub rent for any period of time based

92

1    on the language, would have get paid in a timely

2    matter in order to avoid be put into the general

3    administrative expense claims pocket only paid at

4    the end of the case.  We had agreed as to the

5    landlords, the payments is considered to be made as

6    of today whether or not it's heard at some other day

7    and that issue will not be raised as to us, the fact

8    that we were not here on a timely basis, that was

9    spoken before lunch but I want to clarify that was

10   what we worried about and we do have an agreement on

11   the issue.

12                   THE COURT:  Very good.

13                   MR. EPPS:  Thank you.

14                   THE COURT:  Thank you.

15                   MR. MCCULLAGH:  Good afternoon, Your

16   Honor, Neil McCullagh.  I have filed a motion to be

17   here today.  I would allow Mr. Wood to address the

18   Court on this.

19                   THE COURT:  Mr. Wood.

20                   MR. WOOD:  Thank you, Your Honor.

21                   Your Honor, our lease is one of

22   the under construction leases, no inventory, it

23   originally was on the extension list and now

24   it's been taken off and we appreciate that.  The

25   debtor, as Counsel said, the current date now will

93

1     be March 10th as the drop dead date for

2     assuming or rejecting and we realize that

3     and the debtors has reserved its right to extend

4     that time.  We realize that.

5                    But we just want the record

6     to be clear that we are reserving all rights

7     to seek a shorter period, but we will reserve

8     our rights to do so.  We have about approximately

9     $736,000.00 contract on the particular lease

10    and under California law they have a time limit

11    in which they can affect that.  And some of

12    those time limits are going to be coming due.

13    Certainly they will be coming due before

14    March 10th.  Some of them will be coming due this

15    month.  We already had one.  We actually had two

16    filed and we anticipate a lot more.  The parties are

17    working on the termination agreement and I hope that

18    the parties will be able to resolve this, but if not

19    we may be back as soon as December 22nd telling you

20    that if this needs to be compelled -- I didn't want

21    the Court to be surprised by that so we are

22    reserving our rights to do that.

23                    THE COURT:  Thank you.

24                    MR. WOOD:  Thank you.

25                    MR. CREMSHAW:  Good afternoon,

94

1    Your Honor, William Cremshaw on behalf of various

2    landlords and particular with regard to objection

3    607.  We have a distribution center in California

4    where our rent is due in and we agreed with the

5    debtor for a payment that was due on November 30th,

6    we have agreed to prorate that from the postpetition

7    period with the understanding that in the event the

8    lease is subsequently rejected we would also be

9    entitled to run it on a prorated basis.

10                   So if they reject it on the

11   15th of the month then we would get half of the rent

12   for that month even though the rent wasn't due until

13   later.  We just wanted to clarify that for

14   the record.

15                   THE COURT:  Thank you.

16                   MR. GALARDI:  Your Honor, the clarification

17   on the proration are absolutely fine.  One of the

18   clarification -- I guess the benefit of being an

19   objector is hearing some of the argument

20   from other counsel.  So I will make it clear.

21   if you are an objector even if you didn't ask

22   for your stub rent on any one of those three

23   documents but you are here objecting to any one

24   of those three motions you still have the right

25   and you don't have to file, you can make argument

1    and get what ever benefit with respect to stub rent

2    on December 22nd.

3                    THE COURT:  That is what I understood

4    you to say before we took the break.

5                    MR. GALARDI:  And, Your Honor, finally

6    on 365(d) motions to compel, and motions to shorten

7    time we reserve all of our rights as we do

8    otherwise.

9                    MR. LEUSIN:  Your Honor, if I may

10   be heard telephonically?

11                   THE COURT:  Who is speaking please?

12                   MR. LEUSIN:  Your Honor, this

13   is Sean Leusin.  I represent VIWY Limited

14   Partnership.  We filed an objection and I believe

15   it's docket number 711, with respect to this matter.

16                   Mr. Galardi said earlier that

17   the deal that was set forth on the record related

18   to landlords in the room, and he just said a

19   moment ago landlords that are there, I just want

20   to make sure it covers me telephonically.

21                   MR. GALARDI:  Yes, as long as Mr.

22   Leusin stays on the phone.  I meant anybody that has

23   filed an objection, Your Honor.

24                   MR. LEUSIN:  Thank you.

25                   THE COURT:  All right.

1          MR. GALARDI:  Your Honor, I think

2     that is all of the objections to 21 so we will be

3     putting in an order with respect to that.

4               Your Honor, I haven't identified

5     every counsel with every lease, but I think number

6     22 has now been continued over to the December 22nd,

7     which is the motion of Burbank Mall Associates to

8     postpetition rent.

9               MR. (inaudible):  I represent

10    Burbank Mall and that is correct, and also with

11    number 23 Crown CCI.

12              THE COURT:  That is going to be

13    carried over to the 22nd.

14              Now will that be at the 1:00 time;

15    is that correct?

16              MR. GALARDI:  Yes, Your Honor.

17              If it would make it easier for all

18    landlord counsels to do their matters at 1:00, and

19    then whatever else we can do in the mornings I think

20    would be appropriate.

21              THE COURT:  That is what I thought

22    you said, I just wanted to make sure I understood.

23              MR. GALARDI:  Your Honor, I think

24    that takes care of matter 23 as well.

25              Now I'm up to matter 24, which

1    is also a motion to compel rents, to pay

2    administrative rent.  Again, I don't know which

3    Counsel represented them but there is an agreement

4    to adjourn.

5                    MR. MICHAEL (inaudible):  I represent

6    woodlawn Trustees, also represent docket 25, 502-12

7    86th Street, and number 27, the Basile Limited

8    Liability Company and we do agree to adjourn on the

9    22nd.

10                   THE COURT:  And that will be at

11   1:00 also.

12                   MR. GALARDI:  Your Honor, that

13   takes care of numbers 24, 25, 27, and number 26 on

14   the docket is already handled.  And I think we moved

15   number 27 to the 22nd.

16                   THE COURT:  That's correct.

17                   MR. GALARDI:  Number 28 is already

18   addressed, which brings us to matter 29, debtors

19   motion a bar date.  There are a number of objections

20   filed and I know there are a number of landlord

21   objections, and there are a number of taxing

22   authorities objections.  I think the landlord

23   objections are now resolved.  We have a language

24   I will make it clearer, that it is the later

25   of the bar dates 30 days after the rejection

98

1     or as otherwise provided in any order by the

2     Court.

3                  I don't know if there are other

4     parties in court that have objections to the

5     bar date, notice or order.  And I don't know

6     if Your Honor has any other concerns.

7                  THE COURT:  Does any party wish

8     to speak to the motion of setting the bar dates?

9                  It appears that you have resolved

10    all of your objections to the Court's finding.

11                 MR. GALARDI:  Thank you, Your Honor.

12    We will submit an order reflecting those changes,

13    again with the revisions.

14                 Your Honor, let me turn to matter

15    30, which is the bidding.  Again, I think with all

16    of the representation I have put on the record

17    and of the order, I believe that resolves the

18    matters listed in number 30.

19                 THE COURT:  Does any party wish to

20    be heard?

21                 MR. DAVID (inaudible):  I really have

22    more of a question on next Monday on the 22nd.  I

23    filed in some my motions requesting joining with

24    other landlords.  I don't have a subsitive objection

25    as to the information -- would the Court entertain

1    just one party with other counsel to piggyback in

2    with other Counsel on the same issue and let them

3    argue the issue and abide by the Court's order.

4                    THE COURT:  Certainly.

5                    MR. GALARDI:  Number 31 is the

6    Panasonic motion, Your Honor.  I think Your Honor

7    has already ruled on that matter.

8                    Number 32 is another motion

9    to compel the immediate payment of stub rent.

10                   My understanding is that has already

11   been resolved Your Honor.

12                   MR. WESTERMAN:  That's correct.

13                   THE COURT:  You need to identify

14   yourself.

15                   MR. WESTERMAN:  I'm sorry.

16   Robbie Westerman.

17                   THE COURT:  Thank you.

18                   MR. WESTERMAN:  It's docket number

19   471, Your Honor.  It was a motion to compel

20   payment of rent.  I think it may be number 31 on

21   the revised agenda.

22                   MR. GALARDI:  I think it's number

23   32, Your Honor.

24                   THE COURT:  Yes, I have it as number

25   32.

1          MR. WESTERMAN:  That matter has

2     been resolved.

3          THE COURT:  All right.

4          MR. WESTERMAN:  And we have prior

5     objections as well that has been resolved and that

6     can be taken off as well.

7          THE COURT:  All right.

8          MR. WESTERMAN:  Thank you.

9          MR. GALARDI:  Your Honor, that brings

10    us to the last matter on the agenda, which was

11    demand by Green 521, this is I believe again a stub

12    rent issue.  And I believe that it is resolved,

13    actually putting that over to the 22nd.

14          THE COURT:  So we will put that over

15    to 12-22 at 1:00.

16          MR. GALARDI:  That concludes the

17    matters on the agenda, Your Honor.  And I appreciate

18    all of the time for being able to talk.

19          THE COURT:  Thank you.  I compliment

20    Counsel on being able to resolve all of these

21    complicated issues.

22          MR. GALARDI:  Thank you.

23

24          (Hearing concluded.)

25

101

```
1                    CERTIFICATE OF COURT REPORTER

2

3             I, Anne M. Nelson, hereby certify that I,

4       having been duly sworn, was the Court Reporter in

5       the United States Bankruptcy Court, Richmond,

6       Virginia, on December 5th, 2008, at the time of

7       the hearing herein.

8             I further certify that the foregoing transcript

9       is a true and accurate record of the testimony and

10      other incidents of the hearing herein.

11            Given under my hand this 12th day of December, 2008.

12

13

14                       /s/ Ann Marie Nelson
                         Court Reporer
15

16

17

18

19

20

21

22

23

24

25
```

102

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25