Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                  IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE EASTERN DISTRICT OF VIRGINIA
                            RICHMOND DIVISION

- - - - - - - - - - - - - - x
                               :
In re:                         :   Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :   Case No. 08-35653 (KRH)
et al.,                        :
                               :
            Debtors.           :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER APPROVING STIPULATION BY
AND AMONG THE DEBTORS AND CHASE BANK USA, NATIONAL
ASSOCIATION PURSUANT TO BANKRUPTCY CODE SECTION 105
AND BANKRUPTCY RULE 9019**

            The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to

section 105 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for entry

of the proposed Stipulation, Agreement and Order between

Chase Bank USA, National Association ("Chase") and the

Debtors (the "Stipulation"), attached hereto as <u>Exhibit</u>

<u>A</u>.[2]  In support of the Motion, the Debtors respectfully

represent:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.   This is a

core proceeding under 28 U.S.C. § 157(b).   Venue of

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]    Unless otherwise indicated, capitalized terms not defined herein
shall have the meanings ascribed to them in the Stipulation.

2

these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rule 9019.

**BACKGROUND**

**I.    THE BANKRUPTCY CASES.**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    Based in Richmond, Virginia, Debtors are a leading specialty retailer of consumer electronics and operate large nationwide electronics stores throughout

the United States and Puerto Rico that sell, among other
things, televisions, home theatre systems, computers,
camcorders, furniture, software, imaging and
telecommunications products, and other audio and video
electronics.

7.    Despite significant revenues, the Debtors
have suffered two consecutive years of losses.  While
the Debtors made every effort to improve their financial
performance and implement a global turnaround strategy,
they were ultimately unable to consummate a successful
restructuring outside of bankruptcy.  In large part, the
Debtors' chapter 11 filings were due to an erosion of
vendor confidence, decreased liquidity and the global
economic crisis.

8.    Thus, the Debtors commenced these cases
with the immediate goals of obtaining adequate
postpetition financing and continuing their
restructuring initiatives commenced prior to the
Petition Date, including closing certain stores.  In
addition, the Debtors will continue to evaluate their
business, work closely with their vendors, and enhance

4

customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

**B.    The Chase Agreement.**

9.    Chase, successor by merger with Bank One Delaware, National Association, and Circuit City Stores, Inc. entered into a Consumer Credit Card Program Agreement, dated as of January 16, 2004 (as amended, the "Program Agreement"). Circuit City Stores, Inc. and any entities designated as Authorized Entities under the Program Agreement shall be referred to, collectively, as "Circuit City."

10.    Pursuant to the Program Agreement, Chase has operated a credit card program with Circuit City (the "Program") involving, among other things, the issuance by Chase of both private label credit cards and co-branded credit cards, each bearing the name and/or marks of Circuit City (both private label and co-branded cards, collectively, the "Circuit City Credit Cards") to individuals ("Cardholders").

11.    Prior to the Petition Date, Chase and Circuit City agreed upon certain measures, including increasing certain fees for Cardholders, closing or

altering the terms of certain Cardholder accounts, and implementing certain credit-related practices and procedures in connection with closings of Circuit City stores (collectively, each measure or procedures as more fully described in the Stipulation, the "Prepetition Procedures").

12.   This Court's Order Pursuant to Bankruptcy Code Sections 105(a), 363, 506, 507(a), 553, 1107(a), 1108 and 1129(b) and Bankruptcy Rule 6003 Authorizing Continuation of Certain Customer Practices (Docket No. 111) (the "Customer Practices Order") modified the automatic stay extant pursuant to section 362(a) of the Bankruptcy Code, nunc pro tunc to the Petition Date, to permit Chase to exercise its rights under the Program Agreement, and the parties have continued to operate under the Program Agreement during the postpetition period.

**RELIEF REQUESTED**

13.   By this Motion, the Debtors request, subject to approval from the Debtors' postpetition lenders (the "DIP Lenders") to the extent necessary, that the Court approve the Stipulation under Bankruptcy

Code section 105 and Bankruptcy Rule 9019 and grant such other and further relief as is just and proper.

### TERMS OF STIPULATION

14.   The Stipulation is designed to provide Chase with, among other things, (a) assurances that it may continue the Prepetition Procedures and (b) adequate protection pursuant to sections 506 and 363 of the Bankruptcy Code, including a reserve with respect to its rights of setoff and recoupment against the Debtors arising out of the Program Agreement.  In view of the risks presented by Circuit City's bankruptcy, Chase is unwilling to continue providing services or making upcoming payments to the Debtors pursuant to the Program Agreement absent the adequate protection provided by this Court's approval of the Stipulation.

15.   Thus, in order to ensure that the Debtors can continue to offer the Circuit City Credit Cards going forward, which will be especially important to the Debtors during this holiday season and thereafter, the Debtors and Chase have agreed, subject to DIP Lender approval to the extent necessary, to resolve such disputes pursuant to the terms of the Stipulation.

16.   The complete terms of the Stipulation are attached as <u>Exhibit A</u> hereto.   The material terms of the Stipulation are set forth below.[3]

(a) Chase may continue implementing the Prepetition Procedures and apply them if there are future store closings.

(b) Confirmation that the Customer Practices Order permitted and continues to permit Chase to exercise its rights under the Credit Card Program Agreement to set off and recoup any and all returns, chargebacks, adjustments, other credits relating to Cardholders and other amounts due under the Program Agreement, regardless of whether they are characterized as prepetition or postpetition, against the postpetition amounts due to Circuit City from Chase, and, for the avoidance of doubt, the Stipulation provides that, to the extent required, the automatic stay extant pursuant to section 362(a) of the Bankruptcy Code, if applicable, is modified, <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date, to permit Chase to exercise its rights under the Program Agreement as described above.

(c) Chase may establish on its books a reserve relating to Circuit City (the "Reserve").   The Program Agreement shall be deemed modified to authorize Chase to immediately credit to the Reserve the sum of Fifteen Million Dollars ($15,000,000) otherwise payable to Circuit City on February 28, 2009, under the Third Amendment to the Program Agreement, and not to make such payment to Circuit City.   Circuit City shall advise Chase in writing of a Complete Liquidation (as defined herein)no less than three (3) Business Days prior to announcement of such Complete Liquidation.   Upon the earlier of the date that Circuit City provides the

---

[3]   To the extent that any description of the stipulation contained herein conflicts with the terms of the Stipulation, the Stipulation shall control.

notice specified in the preceding sentence or otherwise
takes steps to effectuate a Complete Liquidation, Chase
may withhold payment from daily settlements under
Section 4.2 of the Program Agreement  with Circuit City
until the amount withheld totals Three Million Dollars
($3,000,000), and such amount shall be credited to the
Reserve.  Chase may debit from the Reserve any amounts
due and owing to Chase from Circuit City if and to the
extent not paid by Circuit City when due, whether such
amounts are considered prepetition or postpetition
obligations of Circuit City; provided, however, that in
no event shall Chase be entitled to debit more than
Eighteen Million Dollars ($18,000,000) from the Reserve.
However, Chase shall be entitled to debit from the
Reserve only amounts owed by Circuit City arising from
transactions that occurred prior to any rejection of the
Program Agreement pursuant to section 365 of the
Bankruptcy Code.  For the avoidance of doubt, Chase may
debit from the Reserve amounts owed after any rejection
of the Program Agreement relating to transactions that
occurred prior to any rejection of the Program Agreement,
including, but not limited to, those related to sales of
gift cards or warranties, promotional fees or returns.
Chase shall pay to Circuit City the positive balance, if
any, of the Reserve promptly after satisfaction of all
of the foregoing obligations.

         (d) Circuit City shall deliver to Chase:
(i) a copy of Circuit City's current business plan, (ii)
Variance Reports (as defined in the Debtors'
postpetition financing agreement), and (iii) quarterly
and annual audited financial statements beginning with
the last quarter of 2008 and an audited annual statement
for 2008.

         (e) Except as otherwise provided in the
Stipulation, it shall terminate on the later of (i) the
effective date of a plan of reorganization of Circuit
City in these chapter 11 cases or (ii) if the chapter 11
cases shall have been converted to cases under chapter 7
of the Bankruptcy Code, the date on which the chapter 7
cases are presumed to have been fully administered under
Bankruptcy Rule 5009.

**APPLICABLE AUTHORITY**

17.   The Stipulation represents a fair and
reasonable compromise and settlement of disputed issues
and claims among the Debtors and Chase.  Bankruptcy Rule
9019 provides that the Court "may approve a compromise
or settlement."  Compromises are tools for expediting
the administration of the case and reducing
administrative costs and are favored in bankruptcy.  See
In re Bond, 1994 U.S. App. Lexis 1282, *9-*14 (4th Cir.
1994)("To minimize litigation and expedite the
administration of a bankruptcy estate, 'compromises are
favored in bankruptcy'."); Fogel v. Zell, 221 F.3d 955,
960 (7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d
Cir. 1996).  Various courts have endorsed the use of
Bankruptcy Rule 9019.  See, e.g., Bartel v. Bar Harbour
Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996); In re
Foundation for New Era Philanthropy, Case No. 95-13729B,
1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug. 21, 1996);
In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992);
In re Check Reporting Service, Inc., 137 B.R. 653 (Bankr.

W.D. Mich. 1992); In re Patel, 43 B.R. 500, 504 (N.D.

Ill. 1982).

18.   The standards by which a Court should

evaluate a settlement are well established.   In addition

to considering the proposed terms of the settlement, the

Court should consider the following factors:

(a) the probability of success in
litigation;

(b) the difficulty in collecting any
judgment that may be obtained;

(c) the complexity of the litigation
involved, and the expense inconvenience and delay
necessarily attendant to it; and

(d) the interest of creditors and
stockholders and a proper deference to their reasonable
views of the settlement.

See Protective Comm. for Indep. Stockholders of TMT

Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245

(1968); United States ex. Rel. Rahman v. Oncology Assoc.,

P.C., 269 B.R. 139, 152 (D. Md. 2001); In re Frye, 216

B.R. 166, 174 (E.D. Va. 1997).

19.   The decision to approve a settlement or

compromise is within the discretion of the Court and is

warranted where the settlement is found to be reasonable

and fair in light of the particular circumstances of the

case.  See TMT Trailer Ferry, 390 U.S. at 424-25.  The

settlement need not be the best that the debtor could

have achieved, but need only fall "within the reasonable

range of litigation possibilities."  In re Telesphere

Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill.

1994).  In making its determination, a court should not

substitute its own judgment for that of the debtor.  In

re Neshaminy Office Bldg. Assoc., 62 B.R. 798, 803 (E.D.

Pa. 1986).  The court should exercise its discretion "in

light of the general public policy favoring

settlements."  In re Hibbard Brown & Co., Inc., 217 B.R.

41, 46 (Bankr. S.D.N.Y. 1998); Nellis v. Shugrue, 165

B.R. 115, 23 (S.D.N.Y. 1994) ("the general rule [is]

that settlements are favored and, in fact, encouraged by

the approval process outlined above").

    20.  The Debtors submit that the proposed

settlement between the Debtors and Chase, as set forth

in the Stipulation, is beneficial to their estates and

their creditors and that the Court should authorize the

Debtors to enter into the Stipulation. The Stipulation

represents a compromise that is fair and equitable,

falls well within the range of reasonableness and

satisfies the standards for approval under applicable
law.

21.   The Stipulation will enable the Debtors
to beneficially resolve the parties' dispute by ensuring
that the Debtors can continue to offer and honor the
Circuit City Credit Cards during the holiday season and
thereafter pursuant to the Program Agreement while
providing Chase with adequate protection of its rights
of setoff or recoupment.   It is critical that the
Debtors are able to continue to offer the Circuit City
Credit Cards, as the Cards are an important component of
the Debtors' customer practices, generate significant
revenues for the Debtors, and increase customer goodwill.
Moreover, the Stipulation avoids the cost, delay and
uncertainty of an adversarial procedure to determine
whether Chase has been provided with adequate protection.

22.   Accordingly, for the reasons detailed
herein, the Debtors have determined that the Stipulation
is in their best interests and the best interests of
their estates, creditors and parties in interest and
seek approval of the Stipulation under Bankruptcy Rule
9019.

23.   Bankruptcy Code section 105 provides in
pertinent part that "[t]he court may issue any order,
process, or judgment that is necessary or appropriate to
carry out the provisions of this title."  11 U.S.C. §
105(a).  As noted above, approval of the relief
requested herein furthers the Debtors' efforts to
minimize their ongoing legal expenses, continue to offer
the Circuit City Credit Cards, and to resolve claims in
a manner that benefits the Debtors and is fair and
equitable to other parties in interest.  Accordingly,
granting the relief requested herein is justified under
Bankruptcy Code section 105.

**NOTICE**

24.   Notice of this Motion has been provided
to those parties entitled to notice under this Court's
Order Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (Docket
No. 130).  The Debtors submit that, under the
circumstances, no other or further notice need be given.

14

**WAIVER OF MEMORANDUM OF LAW**

25.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

26.   No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court approve the Stipulation and grant the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: December 12, 2008
　　　　Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley                .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors
in Possession

16

**EXHIBIT A**

**(Stipulation, Agreement and Order)**

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

          - and -

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and
Debtors in Possession

Gary T. Holtzer, Esq.
Joseph W. Gelb, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

          - and -

Michael A. Condyles (VSB No. 27807)
Kimberly A. Pierro (VSB No. 71362)
KUTAK ROCK LLP
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700

Attorneys for Bank One Delaware,
National Association, n/k/a Chase
Bank USA, National Association


          IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
          Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x


          **STIPULATION, AGREEMENT AND ORDER PURSUANT TO
          SECTION 105(a) OF THE BANKRUPTCY CODE REGARDING
            CREDIT CARD PROGRAM AND FOR RELATED RELIEF**

**RECITALS:**

A. Chase Bank USA, National Association, successor by merger with Bank One Delaware, National Association ("Chase") and Circuit City Stores, Inc. ("Debtor") entered into that certain Consumer Credit Card Program Agreement, dated as of January 16, 2004 (as the same has been amended from time to time, the "Program Agreement"). Unless otherwise defined, capitalized terms utilized herein shall have the meanings ascribed to such terms in the Program Agreement. Debtor and any entities designated as Authorized Entities under the Program Agreement shall be referred to, collectively, as "Circuit City."

B. Pursuant to the Program Agreement, Chase has operated a credit card program with Circuit City (the "Program") involving, among other things, the issuance by Chase of both private label credit cards and co-branded credit cards, each bearing the name and/or marks of Circuit City (both private label and co-branded cards, collectively, the "Circuit City Credit Cards") to individuals ("Cardholders").

C. On or about August 19, 2008, Chase advised Circuit City that it would be increasing late charges and finance charge rates on Circuit City Credit Cards ("APR and Late Charge Increases"). Certain Cardholders were notified in October, 2008, that the increases would occur effective December, 2008. At that same time, Chase also advised Circuit City that other Cardholders will be notified of the increases in December, 2008, and such increases will be effective in February, 2009.

D. On or about October 27, 2008 Circuit City advised Chase that Circuit City would be closing approximately 155 of its stores (the "Store Closings").

E. On or around such time, but in all events before November 10, 2008, which was the date on which this case was filed (the "Commencement Date"), Chase and Circuit City agreed upon reasonable and mutually beneficial credit-related practices that would be implemented in each store that was a part of the Store Closings (each, a "Closing Store") upon commencement of a going out of business sale or other sale outside the ordinary course of business (any such sale, a "Closing Sale"). Specifically, the parties

2

agreed that, upon commencement of a Closing Sale in a
Closing Store, Circuit City would:  (1) cease offering or
accepting applications for instant credit under the Program
in such Closing Store, (2) cease accepting payments on
Accounts in such Closing Store, (3) cease performing
Account lookups in respect of Accounts attributed to such
Closing Store, (4) allow Chase to cease approving
authorization requests for purchases on, or otherwise
accepting, Circuit City Credit Cards for transactions in
such Closing Store, (5) continue processing refunds and
returns in respect of purchases in such Closing Store in
accordance with the refund and return policies in effect at
the time of such purchases, including, pursuant to the
Program Agreement, having Chase (i) credit the amounts of
such refunds and returns to Circuit City Credit Cards used
in connection with such purchases and (ii) net such amounts
from daily, monthly or other  settlement payments due
Circuit City under the Program Agreement, (6) return all
photo copies of customer IDs related to such Closing Store
to Chase, (7) remove all credit signage and materials
related to the Program and utilized prior to the
Commencement Date (including without limitation,
applications for Circuit City Credit Cards and financing
signs) from sales floors in such Closing Store, (8) display
signage in such Closing Store advising customers of the
reduced utility of Circuit City Credit Cards, and (9)
instruct its sales persons in such Closing Store to inform
customers who attempt to use Circuit City Credit Cards of
the reduced utility of Circuit City Credit Cards in such
Closing Store (the practices in (1) through (9),
collectively, the "Existing Store Closing Practices").

        F. The Existing Store Closing Practices were
implemented in the Closing Stores on or about November 5,
2008.

        G. On or about October 31, 2008, but in all events
before the Commencement Date, Circuit City and Chase agreed
that Chase would close certain inactive Accounts, whether
or not associated with the Store Closings ("Account
Closings").  Chase began the process of implementing such
actions on or about October 31, 2008.

        H. On or about September 16, 2008, but in all
events before the Commencement Date, Circuit City and Chase
discussed and agreed in principle that Chase would replace

3

certain Circuit City Credit Cards associated with Store
Closing Accounts with general purpose credit cards or other
general purpose credit products issued by Chase (the "Card
Substitution").  Chase began the process of implementing
such actions on or about September 25, 2008.

     I. On the Commencement Date, Circuit City and
seventeen (17) of its subsidiaries (collectively with
Circuit City, the "Debtors") each commenced cases
(collectively, the "Chapter 11 Cases") under chapter 11,
title 11, United States Code (the "Bankruptcy Code"), with
this Court.

     J. On November 18, 2008, Circuit City and Chase,
in accordance with their normal practices related to the
Program, held an executive management committee meeting.

     K. On November 18, 2008, Circuit City and Chase
agreed to implement the policies described below in
paragraphs 5 and 7 and Chase advised Circuit City that it
would raise FICO scores used to approve certain
applications for Circuit City Credit Cards and reduce cash
lines on certain Co-Branded Bankcards.

     L. Chase believes it is not required to obtain the
approval of Circuit City or this Court with respect to
certain actions described in this Stipulation, Agreement
and Order, but has included such descriptions of such
action in abundance of caution and for the purpose of full
disclosure to all interested parties.

     M. Notice of this Stipulation, Agreement and Order
has been given in accordance with this Court's Order
Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules
2002-1 and 9013-1 Establishing Certain Notice, Case
Management, and Administrative Procedures, dated November
10, 2008 [Docket No. 130] to (i) the Office of the United
States Trustee for the Eastern District of Virginia, (ii)
counsel to the official committee of unsecured creditors,
(iii) counsel to the agents for the Debtors' prepetition
lenders, (iv) counsel to the agents for the Debtors'
postpetition lenders, and (v) all parties who have
requested notice pursuant to Bankruptcy Rule 2002.

4

NOW, THEREFORE, it is hereby STIPULATED, CONSENTED AND AGREED TO, by and among the duly authorized attorneys for the respective parties hereto, as follows starting as of the Commencement Date:

1.   <u>Continuation of APR and Late Charge Increases</u>.  Chase may (i) continue implementing the APR and Late Charge Increases, (ii) notify in December, 2008, any Cardholders who were not sent notice of such increases in October, 2008, and (iii) implement the increases referenced in (ii) effective February, 2009.

2.   <u>Continuation of Existing Store Closing Practices</u>. Chase may (i) continue implementing Existing Store Closing Practices in Closing Stores, and (ii) implement Existing Store Closing Practices in each other retail store or with respect to catalogs and the Internet upon commencement of Closing Sales at or through such retail store, catalog or Internet as if such store, catalog or Internet were a Closing Store.

3.   <u>Implementation of Account Closings</u>.   On or about November 26, 2008, Chase began the process of closing any Accounts meeting the Initial Closure Criteria (as defined in the next sentence of this section 3) and expects to complete such closures in December, 2008.  "<u>Initial Closure Criteria</u>" means (i) any Account that has been open for four (4) months or more and never activated, (ii) any Private Label Account that has not had a credit or debit balance for thirty six (36) months or more, or (iii) any Co-Branded Bankcard Account that has not had a credit or debit balance for twenty four (24) or more months.  Thereafter, Chase may close from time to time additional Accounts meeting the Ongoing Closure Criteria (as defined in the next sentence of this section 3).   "<u>Ongoing Closure Criteria</u>" means (i) any Account that has been open for four (4) months or more and never activated, or (ii) any Private Label Account or Co-Branded Bankcard Account that has not had a credit or debit balance for twelve (12) or more months.

4.   <u>Treatment of Impacted Accounts</u>.   Until and unless Circuit City determines to conduct a Complete Liquidation (as defined in the last sentence of this section 4), Chase may, with respect to Impacted Accounts (as defined in the next sentence of this section 4), close such Accounts,

decrease credit lines on such Accounts, sell such Accounts
and/or further implement the Card Substitution.  "Impacted
Accounts" shall mean Accounts that do not meet one of the
following criteria:  (i) the Circuit City store closest to
the Cardholder on such Account (by zip code) has not been
announced as closing as part of the Store Closings, (ii)
the Circuit City store closest to the Cardholder on such
Account (by zip code) has been announced as closing as part
of the Store Closings but there is an operating Circuit
City store located within ten (10) miles of such Cardholder
(by zip code) after the Store Closings, (iii) the
Cardholder has made three (3) or more Internet purchases on
the Account within the thirty six (36) months preceding the
commencement of the Store Closings, (iv) the Cardholder's
Circuit City Credit Card is a Co-Brand Bankcard and the
Cardholder has made five (5) or more non-Circuit City
transactions totaling at least one hundred dollars ($100)
on such Card within the twelve (12) months preceding the
commencement of the Store Closings, or (v) the Cardholder
primarily shops at non-impacted stores within the
Cardholder's direct  metropolitan area or state.  In the
event that Circuit City determines to close stores or other
retail channels (e.g., catalog or Internet) in addition to
Closing Stores but does not determine to conduct a Complete
Liquidation, if Accounts related to such closing stores or
channels would meet the definition of Impacted Accounts had
the closing store or channel been a Closing Store, Chase
may close such Accounts, decrease credit lines on such
Accounts, sell such Accounts and/or implement a card
replacement or substitution like the Card Substitution.  A
closing non-store channel shall be deemed a closed store
nearest to the Cardholder for purposes of this analysis if
the Cardholder has not shopped in a non-closed store within
36 months preceding the closing of the non-store channel
and subsection (iii) shall not apply.  In the event that
Circuit City announces that it shall conduct a Complete
Liquidation, Chase may take any action with respect to
Accounts that it determines in its discretion, including,
but not limited to closure and liquidation of any or all
Accounts, card replacement or substitution and/or the sale
of Accounts to any third party including, but not limited
to the persons identified on Exhibit 3.2(a) of the Program
(and/or other third parties operating programs on behalf of
or in conjunction with such persons).  "Complete
Liquidation" means the cessation by Circuit City of all or
substantially all sales operations other than Closing

Sales, unless Circuit City has made arrangements prior
thereto to purchase the Portfolio Assets in accordance with
Section 9.2 of the Program Agreement.

5.    <u>Offering of Credit Promotional Sales</u>.  Circuit City
shall cease advertising and offering any credit promotions
related to Circuit City Credit Cards which provide
Cardholders with more than three (3) months of credit with
no interest and no monthly payment.  Circuit City also
shall remove from its stores and website any contrary
signage and/or promotional materials relating to such
ceased promotions and cease all advertising relating to the
ceased promotions.

6.    <u>Insurance Protection</u>.  Chase may decline
authorizations of purchases of protection products and
services for goods sold by Circuit City including, without
limitation, extended warranty protection unless such
protection products and services are offered by or fully
guaranteed by (a) Assurant, Inc. (or subsidiaries of
Assurant, Inc.) or (b) with respect to products
manufactured by Apple, Inc., Apple, Inc. (or subsidiaries
of Apple, Inc.).

7.    <u>Assertion of Contractual Rights</u>.  In accordance with
its rights and obligations under the Program Agreement
(including the Fourth Amendment thereto), Chase may raise
FICO scores used to approve certain applications for
Circuit City Credit Cards, reduce cash lines on certain Co-
Branded Bankcard Accounts and cease, unless specifically
required under the Program Agreement (as in the case of
extended warranties), extending over-the-limit credit to
Cardholders.

8.    <u>Returns, Chargebacks, Etc.</u>  To the extent required,
the automatic stay extant pursuant to section 362(a) of the
Bankruptcy Code, if applicable, is hereby modified, nunc
pro tunc to the Commencement Date, to permit Chase to
exercise its rights under the Credit Card Program Agreement
to set off and recoup any and all returns, chargebacks,
adjustments, other credits relating to Cardholders and
other amounts due under the Program Agreement, regardless
of whether they are characterized as prepetition or
postpetition, against the postpetition amounts due to
Circuit City from Chase.

9.   Reserve.  Chase may establish on its books a reserve
relating to Circuit City (the "Reserve").  The Program
Agreement shall be deemed modified to authorize Chase to
immediately credit to the Reserve the sum of Fifteen
Million Dollars ($15,000,000) otherwise payable to Circuit
City on February 28, 2009, under the Third Amendment to the
Program Agreement, and not to make such payment to Circuit
City.  Circuit City shall advise Chase in writing of a
Complete Liquidation  (as defined herein)no less than three
(3) Business Days prior to announcement of such Complete
Liquidation.  Upon the earlier of the date that Circuit
City provides the notice specified in the preceding
sentence or otherwise takes steps to effectuate a Complete
Liquidation, Chase may withhold payment from daily
settlements under Section 4.2 of the Program Agreement
with Circuit City until the amount withheld totals Three
Million Dollars ($3,000,000), and such amount shall be
credited to the Reserve.  Chase may debit from the Reserve
any amounts due and owing to Chase from Circuit City if and
to the extent not paid by Circuit City when due, whether
such amounts are considered prepetition or postpetition
obligations of Circuit City; provided, however, that in no
event shall Chase be entitled to debit more than Eighteen
Million Dollars ($18,000,000) from the Reserve.  However,
Chase shall be entitled to debit from the Reserve only
amounts owed by Circuit City arising from transactions that
occurred prior to any rejection of the Program Agreement
pursuant to section 365 of the Bankruptcy Code.  For the
avoidance of doubt, Chase may debit from the Reserve
amounts owed after any rejection of the Program Agreement
relating to transactions that occurred prior to any
rejection of the Program Agreement, including, but not
limited to, those related to sales of gift cards or
warranties, promotional fees or returns.  Chase shall pay
to Circuit City the positive balance, if any, of the
Reserve promptly after satisfaction of all of the foregoing
obligations.

10.  Business Plan; Financial Statements.  Circuit City
shall deliver to Chase:  (i)  a copy of Circuit City's
current business plan, (ii) Variance Reports (as defined in
that certain Senior Secured, Super-Priority, Debtor-In-
Possession Credit Agreement, dated as of November __, 2008
among Circuit City Stores, Inc. as Lead Borrower for: said
Circuit City Stores, Inc., Circuit City Stores West Coast,
Inc. and Circuit City Stores PR, LLC, as Domestic Borrowers

and Intertan Canada Ltd., as Canadian Borrower; the Lenders
party thereto; and Bank of America, N.A. as Administrative
Agent and Collateral Agent; Banc of America Securities LLC,
as Lead Arranger; Banc of America Securities LLC, GE
Capital Markets, Inc. and Wells Fargo Retail Finance, LLC,
as Joint Bookrunners; Bank of America, N.A. (acting through
its Canadian Branch) as Canadian Administrative Agent and
Canadian Collateral Agent; Wells Fargo Retail Finance, LLC,
as Syndication Agent; and General Electric Capital
Corporation and JPMorgan Chase Bank, N.A., as Co-
Documentation Agents), and (iii) quarterly and annual
audited financial statements beginning with the last
quarter of  2008 and an audited annual statement for 2008.

11.   <u>Scope</u>.  The provisions of the Program Agreement shall
continue to the extent not inconsistent herewith.  To the
extent of any inconsistency or conflict between this
Stipulation and Order and the Program Agreement, this
Stipulation and Order shall prevail.  Except to the extent
specifically modified by the terms of this Stipulation and
Order, Chase retains all of its rights and remedies under
the Program Agreement and applicable law.

12.   <u>Termination of Stipulation and Amendment to Program
Agreement</u>.  This Stipulation, Agreement and Order shall
terminate on the later of (i) the effective date of a plan
of reorganization of Circuit City in the Chapter 11 Cases
or (ii) if the Chapter 11 Cases shall have been converted
to cases under chapter 7 of the Bankruptcy Code
(collectively, the "<u>Chapter 7 Cases</u>"), the date on which
the Chapter 7 Cases are presumed to have been fully
administered under Bankruptcy Rule 5009; <u>provided</u>, <u>however</u>,
that if and to the extent the Program Agreement continues
after the dates specified in (i) or (ii), the Program
Agreement shall be deemed modified as necessary to provide
for the actions set forth in paragraphs 2, 4, and 7 hereof.

13.   <u>Effective Date</u>.  This Stipulation, Agreement and Order
shall become effective  (the "<u>Effective Date</u>") upon it
being "so ordered" by the Court.

14.   <u>Binding Effect</u>.  This Stipulation, Agreement and Order
shall be binding upon and inure to the benefit of the
parties hereto and their respective successors and assigns.

Dated:  Richmond, Virginia
December 11, 2008


STIPULATED AND AGREED TO:


CIRCUIT CITY STORES, INC., et al.
as Debtors and Debtors in Possession


By Counsel:

McGUIREWOODS LLP


By:  /s/ Douglas M. Foley
     Dion W. Hayes (VSB No. 34304)
     Douglas M. Foley (VSB No. 45201)
     One James Center
     901 E. Cary Street
     Richmond, Virginia 23219
     (804) 775-1000

          -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE  19801
(302) 651-3000

          -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS)
333 West Wacker
Chicago, Illinois 60606-1285
(312) 407-0700



BANK ONE DELAWARE, National Association,
n/k/a CHASE BANK USA, National Association

By Counsel:


10

KUTAK ROCK LLP

By:  /s/ Michael A. Condyles
     Michael A. Condyles (VSB No. 27807)
     Bank of America Center
     1111 East Main Street, 8th Floor
     Richmond, Virginia 23219
     (804) 644-1700

     -and-

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

                    *   *   *


     Upon consideration of the Motion for Order Approving
this Stipulation, Agreement and Order, pursuant to Rule
9019 this Stipulation, Agreement and Order is hereby
approved.

SO ORDERED:

December __, 2008


                    _____
                    United States Bankruptcy Judge



     **CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

     I hereby certify that proposed order has been endorsed
by or served upon all necessary parties.

                         /s/ Douglas M. Foley


11