

**KPMG LLP**  
2100 Dominion Tower  
999 Waterside Drive  
Norfolk, VA 23510

Telephone  757 616 7000  
Fax  757 616 7133  
Internet  www.us.kpmg.com

July 16, 2008

Mr. Ronald M. Brill  
Chairman of the Audit Committee  
Circuit City Stores, Inc.  
9950 Mayland Drive  
Richmond, VA 23233

Dear Ron:

This letter (the Engagement Letter) confirms our understanding of our engagement to provide professional services to Circuit City Stores, Inc.

**Objectives and Limitations of Services**

*Integrated Audit Services*

We will perform an audit of Circuit City Stores, Inc.'s consolidated financial statements and an audit of its internal control over financial reporting (collectively, the Integrated Audit).

Based on our Integrated Audit, we will issue our reports on:

- The consolidated financial statements of Circuit City Stores, Inc. as set forth in Appendix I;
- Schedules supporting such financial statements; and
- The effectiveness of internal control over financial reporting as set forth in Appendix I.

These reports will be included in the annual report (Form 10-K) proposed to be filed by Circuit City Stores, Inc. under the Securities Exchange Act of 1934.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of the financial reporting and preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the company's assets that could have a material effect on the financial statements.

We have the responsibility to conduct and will conduct the:

a. audit of the consolidated financial statements in accordance with the standards of the Public Company Accounting Oversight Board (PCAOB) (United States), with the objective of expressing an opinion as

KPMG

Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 2

to whether the presentation of the consolidated financial statements and schedules, taken as a whole, conforms with U.S. generally accepted accounting principles.

b. audit of internal control over financial reporting in accordance with the standards of the PCAOB (United States), with the objective of obtaining reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects.

The consolidated financial statements and schedules, management's assessment of the effectiveness of internal control over financial reporting, and our reports on the financial statements and schedules and the effectiveness of internal control over financial reporting are subject to review by the Securities and Exchange Commission (SEC) staff and to the application by them of their interpretation of the relevant rules and regulations.

Our Integrated Audit will include:

a. performing tests of the accounting records and such other procedures, as we consider necessary in the circumstances, to provide a reasonable basis for our opinions.

b. assessing the accounting principles used and significant estimates made by management, and evaluating the overall consolidated financial statement presentation.

c. obtaining an understanding of internal control over financial reporting, testing and evaluating the design and operating effectiveness of internal control over financial reporting, and performing such other procedures as we consider necessary in the circumstances.

Our Integrated Audit:

a. will be planned and performed to obtain reasonable, but not absolute, assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud. Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected by an Integrated Audit performed in accordance with the standards of the PCAOB (United States). Also, an audit is not designed to detect matters that are immaterial to the consolidated financial statements. Our Integrated Audit will be planned and performed with an objective to obtain reasonable assurance that no material weaknesses exist in internal control over financial reporting as of Circuit City Stores, Inc.'s fiscal year end and that the consolidated financial statements are free from material misstatement.

b. cannot provide absolute assurance of achieving financial reporting objectives because of its inherent limitations. Internal control over financial reporting is a process that involves human diligence and compliance and is subject to lapses in judgment and breakdowns resulting from human failures. Internal control over financial reporting can be circumvented by collusion or improper management override. Because of such limitations, there is a risk that material misstatements may not be prevented or detected on a timely basis by internal control over financial reporting. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Our reports will be addressed to the board of directors of Circuit City Stores, Inc. and will be in a form that is in accordance with the published rules and regulations of the SEC and the standards of the PCAOB



Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 3

(United States). We cannot provide assurance that unqualified opinions will be rendered. Circumstances may arise in which it is necessary for us to modify our reports or withdraw from the engagement.

As part of our Integrated Audit, we will read the other information in your annual report (Form 10-K) and consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of our audit of internal control over financial reporting. However, our Integrated Audit does not include the performance of procedures to corroborate such other information (including forward-looking statements).

*Quarterly Review Services*

We will review the condensed consolidated balance sheets of Circuit City Stores, Inc., as set forth in Appendix I, and the related condensed consolidated statements of earnings, and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by Circuit City Stores, Inc. under the Securities Exchange Act of 1934. We will also review the selected quarterly financial data specified by Item 302 of Regulation S-K, which is required to be included in the annual report (Form 10-K) proposed to be filed by Circuit City Stores, Inc. under the Securities Exchange Act of 1934.

We have the responsibility to conduct our reviews in accordance with the provisions of the standards of the PCAOB (United States). The objective of a review of interim financial information is to provide us with a basis for communicating whether we are aware of any material modifications that should be made to such interim financial information for it to conform with U.S. generally accepted accounting principles. Our procedures will be substantially less in scope than an Integrated Audit performed in accordance with the standards of the PCAOB (United States), the objective of which is the expression of opinions regarding the financial statements taken as a whole and internal control over financial reporting. Accordingly, we will not express an opinion on Circuit City Stores, Inc.'s interim financial information.

Our reviews will consist principally of performing analytical procedures applied to financial data and making inquiries of Circuit City Stores, Inc.'s personnel responsible for financial and accounting matters. Our reviews will include obtaining sufficient knowledge of Circuit City Stores, Inc.'s business and its internal control as it relates to the preparation of both annual and interim financial information to (a) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence, and (b) select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with U.S. generally accepted accounting principles.

A review does not contemplate tests of internal controls or accounting records, tests of responses to inquiries by obtaining corroborating evidential matter, and certain other procedures ordinarily performed during an Integrated Audit. Thus, a review does not provide assurance that we will become aware of all significant matters that would be disclosed in an Integrated Audit. Further, a review is not designed to provide assurance on internal control or to identify significant deficiencies or material weaknesses and cannot be relied on to detect errors, fraud, or illegal acts.

As agreed, we will not issue a written report upon completion of each review. Circuit City Stores, Inc. understands that any reference to interim financial information as reviewed by us when such information is included in documents issued to stockholders or third parties (including the SEC) will necessitate the



Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 4

issuance of a written review report, which must accompany the interim financial information in the document.

### Registration Statements and Other Offering Documents

We understand that the consolidated financial statements and schedules, management's assessment regarding the effectiveness of internal control over financial reporting, and our written audit reports on the financial statements and schedules and the effectiveness of internal control over financial reporting, as described above, are to be included by Circuit City Stores, Inc. in its annual report (Form 10-K), and that in so doing, Circuit City Stores, Inc. will be incorporating by reference the consolidated financial statements and schedules, management's assessment regarding the effectiveness of internal control over financial reporting, and our reports on the financial statements and schedules and the effectiveness of internal control over financial reporting in previously filed and effective Forms S-3 and S-8. Prior to issuing our consent to the incorporation by reference in these registration statements of our reports with respect to the consolidated financial statements and schedules and internal control over financial reporting described above, we will perform procedures as required by the standards of the PCAOB (United States), including, but not limited to, reading information incorporated by reference in these registration statements and performing subsequent event procedures.

Should Circuit City Stores, Inc. wish to include or incorporate by reference the consolidated financial statements, management's assessment regarding the effectiveness of internal control over financial reporting, and our audit reports on the financial statements and schedules and the effectiveness of internal control over financial reporting into a future filing under the Securities Act of 1933, or an exempt offering, prior to our consenting to include or incorporate by reference our reports on the consolidated financial statements and internal control over financial reporting, we would consider our consent to the inclusion of our reports and the terms thereof at that time. We will be required to perform procedures as required by the standards of the PCAOB (United States), including, but not limited to, reading other information incorporated by reference in the registration statement or other offering document and performing subsequent event procedures. Our reading of the other information included or incorporated by reference in the offering document will consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of our audit of internal control over financial reporting. However, we will not perform procedures to corroborate such other information (including forward-looking statements). The specific terms of our future services with respect to future filings or other offering documents will be determined at the time the services are to be performed.

### Comfort Letters

Should a comfort letter be requested in connection with a future filing under the Securities Act of 1933, or an exempt offering, the specific terms of our services will be determined at that time. Prior to our issuance of a comfort letter, management of Circuit City Stores, Inc. agrees to supply us with a representation letter that will, among other things, confirm that no events have occurred that would require adjustments to (or additional disclosures in) the audited consolidated financial statements or management's assessment regarding the effectiveness of Circuit City Stores, Inc.'s internal control over financial reporting referred to above and confirm Circuit City Stores, Inc.'s responses to certain inquiries made in connection with our issuance of the comfort letter.



Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 5

**Our Responsibility to Communicate with the Audit Committee**

In conjunction with management, who is responsible for establishing Circuit City Stores, Inc.'s accounting policies, we will discuss our judgments of the quality and understandability, not just the acceptability, of Circuit City Stores, Inc.'s accounting policies and disclosures, prior to the filing of our audit reports with the SEC. We believe oral communication is the appropriate forum to provide open and frank dialogue.

We will report to the audit committee, in writing, the following matters prior to the filing of our audit reports with the SEC:

- All significant deficiencies[1] and material weaknesses[2] identified during the Integrated Audit. If a significant deficiency or material weaknesses exists because of the oversight of the company's external financial reporting and internal control over financial reporting by the audit committee, we report such deficiency in writing to the board of directors.

- Corrected misstatements arising from the Integrated Audit that could, in our judgment, either individually or in aggregate, have a significant effect on Circuit City Stores, Inc.'s financial reporting process. In this context, corrected misstatements are proposed corrections of the financial statements that were recorded by management and, in our judgment, may not have been detected except through the auditing procedures performed.

- Uncorrected misstatements aggregated during the current engagement and pertaining to the latest period presented that were determined by management to be immaterial, both individually and in aggregate.

- All relationships between KPMG LLP (KPMG) and its related entities and Circuit City Stores, Inc. and its related entities that, in our judgment, may reasonably be thought to bear on independence.

- Alternative treatments within U.S. generally accepted accounting principles for accounting policies and practices related to material items that have been discussed with management during the current audit period, including i) ramifications of the use of such alternative disclosures and treatments and the treatment preferred by us and ii) the process used by management in formulating particularly sensitive accounting estimates.

- Disagreements with management or other significant difficulties encountered in performance of our audit or review services.

- Critical accounting policies and practices applied in the consolidated financial statements and our assessment of management's disclosures regarding such policies and practices, including why certain policies and practices are or are not considered critical, and how current and anticipated future events impact those determinations.

---

[1] A significant deficiency is a deficiency, or a combination of deficiencies, in internal control over financial reporting that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the company's financial reporting.

[2] A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.



Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 6

- Other matters required to be communicated by the standards of the PCAOB (United States).

We will also read minutes, if any, of audit committee meetings for consistency with our understanding of the communications made to the audit committee and determine that the audit committee has received copies of all material written communications between ourselves and management. We will also determine that the audit committee has been informed of i) the initial selection of, or the reasons for any change in, significant accounting policies or their application during the period under audit, ii) the methods used by management to account for significant unusual transactions, and iii) the effect of significant accounting policies in controversial or emerging areas for which there is a lack of authoritative guidance or consensus.

To the extent that they come to our attention, we will inform the audit committee and management about any material errors and any instances of fraud or illegal acts. Further, to the extent they come to our attention, we will also communicate directly to the audit committee fraud that involves senior management or that, in our judgment, causes a material misstatement of the financial statements and illegal acts that come to our attention, unless they are clearly inconsequential. In the case of illegal acts which, in our judgment, would have a material effect on the consolidated financial statements of Circuit City Stores, Inc., we are also required to follow the procedures set forth in the Private Securities Litigation Reform Act of 1995, which under certain circumstances requires us to communicate our conclusions to the SEC.

If, during the performance of our Integrated Audit procedures, circumstances arise which make it necessary to modify our reports or withdraw from the engagement, we will communicate to the audit committee our reasons for withdrawal. Similarly, if during performance of our quarterly review services we become aware of matters that cause us to believe the interim information filed, or to be filed, with the SEC, is probably materially misstated as a result of a departure from U.S. generally accepted accounting principles, we will discuss such matters with management and, if appropriate, communicate such matters to the audit committee.

In addition, if we become aware of information that relates to the consolidated financial statements and/or management's assessment regarding the effectiveness of internal control over financial reporting after we have issued our reports or completed our interim review procedures, but which was not known to us at the date of our reports or completion of our interim review procedures, and which is of such a nature and from such a source that we would have investigated that information had it come to our attention during the course of our Integrated Audit and/or interim review procedures, we will, as soon as practicable: (1) communicate such an occurrence to the audit committee; and (2) undertake an investigation to determine whether the information is reliable and whether the facts existed at the date of our reports or completion of our interim review procedures. Further, management agrees that in conducting that investigation, we will have the full cooperation of Circuit City Stores, Inc.'s personnel. If the subsequently discovered information is found to be of such a nature that (a) our reports or completion of our interim review procedures would have been affected if the information had been known as of the date of our reports or completion of our interim review procedures, and (b) we believe that the reports or interim review procedures are currently being relied upon or are likely to be relied upon by someone who would attach importance to the information, appropriate steps will be taken by KPMG and expected by Circuit City Stores, Inc. to prevent further reliance on our reports or interim review procedures. Such steps include appropriate disclosures by Circuit City Stores, Inc. of the newly discovered facts and the impact to the financial statements.

KPMG

Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 7

**Audit Committee Responsibilities**

The audit committee is directly responsible for the appointment of KPMG as independent auditor, determining our compensation, and oversight of our Integrated Audit work, including resolution of disagreements between management and us regarding financial reporting. We understand that we report directly to the audit committee. The audit committee is responsible for preapproval of all audit and nonaudit services provided by us.

**Management Responsibilities**

The management of Circuit City Stores, Inc. is responsible for the fair presentation, in accordance with U.S. generally accepted accounting principles, of the consolidated financial statements, schedules, and interim financial information and all representations contained therein. Management also is responsible for identifying and ensuring that Circuit City Stores, Inc. complies with laws and regulations applicable to its activities, and for informing us of any known material violations of such laws and regulations. Management also is responsible for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting and procedures for financial reporting to maintain the reliability of the consolidated financial statements or interim financial information and to provide reasonable assurance against the possibility of misstatements that are material to the consolidated financial statements or interim financial information. Management is also responsible for informing us, of which it has knowledge, of all deficiencies in the design or operation of such controls.

The management of Circuit City Stores, Inc. is also responsible for:

1. Accepting responsibility for the effectiveness of Circuit City Stores, Inc.'s internal control over financial reporting;

2. Evaluating the effectiveness of Circuit City Stores, Inc.'s internal control over financial reporting using a suitable control criteria;

3. Supporting its evaluation with sufficient evidence, including documentation; and

4. Presenting a written assessment of the effectiveness of Circuit City Stores, Inc.'s internal control over financial reporting as of Circuit City Stores, Inc.'s fiscal year end.

The audit of the financial statements does not relieve management or those charged with governance of their responsibilities. If management does not fulfill these responsibilities above, we cannot complete the Integrated Audit.

Management of Circuit City Stores, Inc. agrees that all records, documentation, and information we request in connection with our Integrated Audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of Circuit City Stores, Inc.'s personnel. As required by the standards of the PCAOB (United States), we will make specific inquiries of management about the representations embodied in the consolidated financial statements or interim financial information and the effectiveness of internal control over financial reporting, and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in



Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 8

forming an opinion on the consolidated financial statements, and the effectiveness of internal control over financial reporting.

Management is responsible for adjusting the annual consolidated financial statements and interim financial information to correct material misstatements and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements being reported upon, or the interim information being reviewed, taken as a whole.

**Dispute Resolution**

Any dispute or claim arising out of or relating to this Engagement Letter or the services provided hereunder, or any other audit or attest services provided by or on behalf of KPMG or any of its subcontractors or agents to Circuit City Stores, Inc. or at its request, shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect ("CPR Arbitration Rules"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

Mediation, if selected, may take place at a location to be designated by the parties using Mediation Procedures of the International Institute for Conflict Prevention and Resolution, with the exception of paragraph 2 (Selecting the Mediator). Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction. Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**Other Matters**

This letter shall serve as Circuit City Stores, Inc.'s authorization for the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between KPMG and Circuit City Stores, Inc. and between KPMG and outside specialists or other entities engaged by either KPMG or Circuit City Stores, Inc. Circuit City Stores, Inc. acknowledges that e-mail travels over the public Internet, which is not a secure means of communication and, thus, confidentiality of the transmitted information could be compromised through no fault of KPMG. KPMG will employ commercially



Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 9

reasonable efforts and take appropriate precautions to protect the privacy and confidentiality of transmitted information.

Further, for purposes of the services described in this letter only, Circuit City Stores, Inc. hereby grants to KPMG a limited, revocable, non-exclusive, non-transferable, paid up and royalty-free license, without right of sublicense, to use all names, logos, trademarks and service marks of Circuit City Stores, Inc. solely for presentations or reports to Circuit City Stores, Inc. or for internal KPMG presentations and intranet sites.

KPMG is a limited liability partnership comprising both certified public accountants and certain principals who are not licensed as certified public accountants. Such principals may participate in the engagements to provide the services described in this letter.

Without our prior written approval, Circuit City Stores, Inc. will not solicit for employment, nor will Circuit City Stores, Inc. hire, any current or former partner or any professional employee of KPMG or any of its affiliated member firms, in a financial reporting oversight role (as defined in the SEC independence rules) if such partner or professional employee previously participated in the audit of Circuit City Stores, Inc.'s consolidated financial statements or quarterly review procedures until the applicable "cooling off" period under the SEC independence rules has expired. That period would commence with the latest date on which the individual participated in the annual audit or quarterly review procedures and would expire upon the filing by Circuit City Stores, Inc. of its Form 10-K for the succeeding fiscal year.

KPMG member firms located outside the United States and other third-party service providers operating under our supervision may also participate in providing the services described in this letter.

### *Work Paper Access by Regulators and Others*

The work papers for this engagement are the property of KPMG. In the event KPMG is requested pursuant to subpoena or other legal process to produce its documents relating to this engagement for Circuit City Stores, Inc. in judicial or administrative proceedings to which KPMG is not a party, Circuit City Stores, Inc. shall reimburse KPMG at standard billing rates for its professional time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

We may also be requested to make certain work papers available to the PCAOB pursuant to authority given to it by law or regulation. If requested, access to such work papers will be provided under the supervision of KPMG personnel. Furthermore, upon request, we may provide photocopies of selected work papers to the PCAOB. The PCAOB may intend, or decide, to distribute the photocopies or information contained therein to others, including the SEC and other government agencies. We agree to communicate to you on a timely basis any requests by the PCAOB for access to the work papers as part of its inspection process and when it desires direct contact with members of the audit committee.

### *Fees for Services*

Appendix I to this letter lists our fees for professional services to be performed per this letter.

In addition, fees for any special audit-related projects, such as research and/or consultation on special business or financial issues, will be billed separately from the audit fees for professional services set forth in Appendix I and may be subject to written arrangements supplemental to those in this letter.



Mr. Ronald M. Brill
Chairman of the Audit Committee
Circuit City Stores, Inc.
July 16, 2008
Page 10

\* \* \* \* \* \* \*

Our engagement herein is for the provision of annual audit services for the financial statements and for the periods described in Appendix I, and it is understood that such services are provided as a single engagement. Pursuant to our arrangement as reflected in this letter, we will provide the services set forth in Appendix I as a single engagement for each of Circuit City Stores, Inc.'s subsequent fiscal years until either the audit committee or we terminate this agreement, or mutually agree to the modification of its terms. The fees for each subsequent year will be annually subject to negotiation and approval by the audit committee.

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us.

Very truly yours,

KPMG LLP

*[signature]*

Christos M. Xystros
*Partner*

CMX:dpd
cc: Philip J. Schoonover, CEO
    Bruce H. Besanko, CFO

ACCEPTED:

Circuit City Stores, Inc.

_____
Ronald M. Brill, Chairman of the Audit Committee

_____9/24/08_____
Date



Appendix I

## Fees for Services

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

| | |
|---|---:|
| • Integrated Audit: | |
| Audit of consolidated balance sheets of Circuit City Stores, Inc. and subsidiaries, as of February 28, 2009 and February 29, 2008, the related consolidated statements of operations, stockholders' equity and comprehensive income (loss), and cash flows for each of the fiscal years in the three-year period ended February 28, 2009, and audit of internal control over financial reporting as of February 28, 2009. | $2,548,000 |
| Going concern and liquidity procedures (estimate) | $   50,000 |
| Total estimated FY 2009 Integrated Audit | $2,598,000 |
| • Other Audit Services** | |
| Audits of employee benefit plans (2 plans) | $34,000 |
| Statutory audit and tax return for CCGS | $46,500 |
| Statutory audit for CCGS Shenzhen Representative Office | $10,000 |
| Statutory audit of CCS Puerto Rico, LLC | $29,000 |
| Audit of NNIL | $45,000 |
| **With respect to Other Audit Services, separate engagement letters will be issued to management. | |

We will provide you updates of our estimate of fees once we know the extent of actual professional hours that were expended as well as ongoing monitoring and testing plans, including use of internal auditors.

    Quarterly review procedures:
        Quarter ended May 31, 2008        Included in integrated audit fee
        Quarter ended August 31, 2008     Included in integrated audit fee
        Quarter ended November 30, 2008   Included in integrated audit fee

    Report on financial statement schedule
        included in Form 10-K              Included in integrated audit fee

The above estimates are based on the level of experience of the individuals who will perform the services. In addition, expenses are billed for reimbursement as incurred. Circumstances encountered during the

KPMG

Appendix I, continued

performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed. Our fees will be billed every month as services are incurred.

Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to the client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges which may be charged to clients.