

KPMG
8th Floor, Prince's Building
10 Chater Road
Central, Hong Kong

P O Box 50
General Post Office
Hong Kong

Telephone +852 2522 6022
Fax       +852 2845 2588
Internet  www.kpmg.com.hk

D30

The Board of Directors
Circuit City Global Sourcing, Limited
19/F, Chinachem Century Tower
178 Gloucester Road
Wanchai
Hong Kong

Our ref   TM/SF/10007726/10/02

Contact   Terence Man
          (852) 2826 8049

For attention of: Ms Kerry Barksdale

21 August 2008

Dear Sirs

### Circuit City Global Sourcing, Limited
### Engagement letter

Thank you for re-appointing us as auditors of your company. We have pleasure in accepting the appointment.

The purpose of this letter is to set out the basis on which we act as auditors of the company under the Hong Kong Companies Ordinance, and the respective areas of responsibility of the company and of ourselves.

1   **Audit**

1.1  As directors of the above company, you are responsible for maintaining proper books of account and preparing financial statements which give a true and fair view of the state of the company's affairs as at the end of the financial year and of the profit or loss for the year then ended and which are in accordance with the Hong Kong Companies Ordinance. You are also responsible for making available to us, as and when required, all the company's books of account and all other records and related information, including minutes of all management and shareholders' meetings.

1.2  As auditors appointed pursuant to the Hong Kong Companies Ordinance, we have a statutory responsibility to report to the company's members, as a body, whether in our opinion the financial statements give a true and fair view of the state of the company's affairs as at the end of the financial year and of the profit or loss for the year then ended and whether they have been properly prepared in accordance with the Hong Kong Companies Ordinance. We do not assume responsibility towards or accept liability to any other person for the contents of our audit report. In arriving at our opinion, we are required to consider the following matters, and to report on any in respect of which we are not satisfied:

D31

    a    whether proper books of account have been kept by the company and proper returns adequate for our audit have been received from its branch(es) not visited by us;

    b    whether the company's balance sheet and profit and loss account are in agreement with the books of account and returns; and

    c    whether we have obtained all the information and explanations which we think necessary for the purpose of our audit.

In addition, there are certain other matters which, according to the circumstances, may need to be dealt with in our audit report. For example, where the financial statements do not make proper disclosure of directors' remuneration or of loans to officers, the Hong Kong Companies Ordinance requires us to disclose such matters in our report.

1.3    We have a professional responsibility to report if the financial statements do not comply in any material respect with all applicable Hong Kong Financial Reporting Standards issued by the Hong Kong Institute of Certified Public Accountants ("HKICPA").

1.4    Whilst we may choose to provide comments orally or by electronic mail (see section 6 below) on our progress or to release a draft of any report at any stage prior to completion of our audit, the appropriateness of such comments or a draft report is a matter for our judgement, and we reserve the right not to provide comments or release a draft if, in our view, it is not appropriate. If we do update you, you should bear in mind that these are our preliminary findings, as opposed to a report in a final form, and they may therefore be incomplete and subject to material change. Accordingly such preliminary draft reports and/or status reports, whether oral or written, should not be relied upon. Additionally, where such comments or drafts contain any draft opinions, they should not be taken as constituting our definitive opinion.

1.5    Our audit will be conducted in accordance with auditing standards generally accepted in Hong Kong as promulgated by the HKICPA and will have regard to relevant Practice Notes and Auditing Guidelines and other applicable professional requirements of the HKICPA. Furthermore, it will be conducted in such manner as we consider necessary to fulfil our responsibilities and will include such tests of transactions and of the existence, ownership and valuation of assets and liabilities as we consider necessary. We shall obtain an understanding of the company's accounting system in order to assess its adequacy as a basis for the preparation of the financial statements and to establish whether proper books of account have been maintained. We shall expect to obtain such relevant and reliable evidence as we consider sufficient to enable us to draw reasonable conclusions therefrom. The nature and extent of our tests will vary according to our assessment of the company's accounting system and, where we wish to place reliance on it, the system of internal control and may cover any aspect of the business operations.

1.6    As part of our normal audit procedures, we may request you to provide written representations on matters having a material effect on the financial statements.

D32

1.7 In order to assist us with the examination of the company's financial statements, we shall require sight of all documents or statements, including the directors' report, which are due to be issued with the financial statements. We are also entitled to attend all General Meetings of the company and to receive notice of all such meetings.

1.8 The responsibility for safeguarding the assets of the company, for the prevention and detection of fraud and error, and for ensuring the company's compliance with all applicable laws and regulations rests with the company and yourselves. This responsibility includes implementing and ensuring the continued operation of accounting and internal control systems which are designed to prevent and detect fraud and error. However, we shall endeavour to plan our audit so that we have a reasonable expectation of detecting material misstatements in the financial statements or books of account resulting from fraud and error, but our audit should not be relied upon to disclose frauds or errors which may exist.

1.9 We shall report to you where we consider appropriate, any material weaknesses in the company's accounting system or internal control system and also weaknesses in the company's internal controls related to the prevention or detection of fraud and error, or other matters of governance interest that come to our notice and to which we think attention should be drawn. We shall exercise our professional judgement to determine the significance of any matter to be communicated and shall decide the appropriate means of communication. However, we have no responsibility to design or perform procedures for the specific purpose of identifying such matters.

1.10 We understand that the directors are closely involved with the control of the company's transactions in the running of the company. In planning and performing our audit work, we shall take account of this supervision. Further, we may ask additionally for confirmation in writing that all the transactions undertaken by the company have been properly reflected and recorded in the books of account.

1.11 Once we have issued our report we have no further direct responsibility in relation to the financial statements for that period. However, you shall inform us of any material event occurring between the date of our report and that of the Annual General Meeting which may affect the financial statements.

1.12 We shall not be treated as having notice, for the purposes of our audit responsibilities, of information provided to members of our firm and our affiliates other than those engaged on the audit (e.g. information provided in connection with taxation or other services).

**2   Responsibility for book-keeping and preparation of financial statements**

2.1 You are responsible for all book-keeping and accounting functions, the preparation of detailed draft financial statements and detailed supporting schedules and also for the preparation of the company's finalised financial statements.

D33

3    **Other services**

3.1    We shall be pleased to discuss with you the provision of any additional services that may be requested by you from time to time. However such services shall be regarded as distinct from the performance of our duties as statutory auditors, and would be subject in all respects to separate negotiation and agreement. Please visit our website at www.kpmg.com.hk for the range of professional services provided by us.

3.2    In addition, you may visit and register with our website at www.kpmg.com.hk to select our publications which may be of interest to you. Our publications will then be delivered to you via email.

4    **Fees**

4.1    Our fees are based upon the degree of responsibility and skill involved and the time spent on the work, plus the reimbursement of our outlays and will be agreed separately from one year to the next. Fees on account will be rendered at various intervals during the period of our engagement. The final account for audit fees and the related outlays will be rendered when the financial statements are forwarded to the directors for approval. All fees are due and payable on presentation.

4.2    Should significant outlays be omitted from our final account or subsequently incurred, we reserve the right to deliver a separate account for such outlays.

4.3    The fee of KPMG Hong Kong for professional services rendered in connection with the audit of the financial statements of the company for the year ended 29 February 2008 will be HK$73,000 plus reimbursement of outlays (out of pocket expenses). This fee excludes fees which may also be charged by other KPMG offices involved in the audit of the company's financial statements. Such fees will be discussed and agreed separately by the relevant KPMG offices with management of the company.

5    **Use of the firm's name**

5.1    You shall not quote our name in any material other than the annual financial statements (which we have audited) prepared in accordance with the Hong Kong Companies Ordinance or pursuant to any statutory or regulatory requirement, without our prior written consent.

D34

6 **Communication by Internet Electronic Mail ("Internet email")**

6.1 We may rely on any instructions or requests made or notices given or information supplied, whether orally or in writing, by any person whom we know to be or reasonably believe to be authorised by you to communicate with us for such purposes. We may communicate with you by Internet email where any such person wishes us to do so, on the basis that in consenting to this method of communication you accept the inherent risks (including the security risks of interception of or unauthorised access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and that you shall perform virus checks. KPMG will accept no responsibility or liability in respect of risks associated with the use of Internet email, including any damage or potential damage to your computer systems, or the data stored on those systems, as a result of viruses or other problems introduced as a result of communication by Internet email. Further, the insecure nature of Internet email means that any statement contained in an Internet email should not be relied upon unless it is confirmed in writing on KPMG letterhead.

6.2 A copy of our "Client guide to email with KPMG" is enclosed for your information.

7 **Law and jurisdiction**

7.1 This engagement letter shall be subject to and governed by Hong Kong law and all disputes arising from or under this engagement letter shall be subject to the exclusive jurisdiction of the Hong Kong courts.

8 **Agreement of terms**

8.1 This letter sets out the entire agreement and understanding between us and you in connection with the services to be delivered by us under this letter, and supersedes all previous arrangements and understandings between us and you which shall cease to have any further force or effect.

8.2 This letter is effective in respect of our audit of the financial statements for the year ended 29 February 2008 and future years unless it is terminated by you or us, or amended or superseded by agreement in writing between you and us.

8.3 We shall be grateful if you could confirm in writing your agreement to the terms of this letter by signing and returning the attached copy, or let us know if they are not in accordance with your understanding of our terms of appointment.



D35

8. For the purposes of this engagement letter, "KPMG", "our" and "we" (and all derivatives thereof) mean the KPMG contracting party as identified by the letterhead on this letter together with any other body or entity controlled by us or owned by us.

Yours faithfully

Enclosures



D36

8.4   For the purposes of this engagement letter, "KPMG", "our" and "we" (and all derivatives thereof) mean the KPMG contracting party as identified by the letterhead on this letter together with any other body or entity controlled by us or owned by us.

Yours faithfully

KPMG


Enclosures


I have read and understood the terms and conditions of this letter and I agree to and accept them.


_____   Date:
Duly authorised for and on behalf of
Circuit City Global Sourcing, Limited