

KPMG Tax Limited
8th Floor, Prince's Building
10 Chater Road
Central, Hong Kong

P O Box 50
General Post Office
Hong Kong

Telephone +852 2522 6022
Fax       +852 2845 2588
Internet  www.kpmg.com.hk

D37

**Private and confidential**
The Board of Directors
Circuit City Global Sourcing, Limited
c/o Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233
USA

Our ref   AAM/BKP/40

Contact   Benjamin Pong
          +852 2143 8525

5 September 2008

Dear Sirs

## Circuit City Global Sourcing, Limited ("the Company")
## Engagement Letter for Profits Tax Services

### 1  Introduction

1.1  Thank you for appointing us as tax representatives of the Company and we have pleasure in accepting the appointment. The purpose of this letter is to set out the basis on which we act as tax representatives of the Company and the respective areas of responsibility of the Company and of ourselves.

1.2  The General Terms of Business attached to this letter apply to our engagement as if they were set out in this letter. This letter is the "Engagement Letter" mentioned in our General Terms of Business. Where there is conflict between this letter and the General Terms of Business, this letter shall prevail.

1.3  In accordance with the definition set out in the General Terms of Business,

   a) "KPMG" or "we" (or derivatives) shall mean KPMG Tax Limited, a company incorporated in the British Virgin Islands; and

   b) "you" (and derivatives) shall mean the addressees of this letter on behalf of the Company.

1.4  In addition, "the IRD" shall mean the Inland Revenue Department of the Government of the Hong Kong Special Administrative Region.

D38

2    *Scope of our work*

2.1    The Company, as the taxpayer, is required to notify the IRD of its chargeability to Profits Tax not later than four months after the end of the basis period for that year of assessment unless the Company has already been issued a Profits Tax return. The Company also has the primary responsibility to submit correct and complete Profits Tax returns and supporting schedules to the IRD. Similarly, when any additional information is provided, whether arising out of correspondence with the IRD or otherwise, the Company is ultimately responsible for ensuring that, to the best of its knowledge and belief, after making appropriate enquiries, such information is correct and complete.

2.2    In respect of this engagement, we shall provide the following services:-

   a)    prepare on your behalf the Company's Profits Tax return for the year of assessment 2007/08 and supporting schedules, based on the Company's financial statements for the year ended 28 February 2008 and additional information the Company may provide, for the Company's consideration and approval;

   b)    provide the Company with our written comments on the tax treatments adopted in the 2007/08 Profits Tax return and supporting schedules relating to significant issues identified; and

   c)    following the approval and signature by the Company, submit the Company's 2007/08 Profits Tax return and supporting schedules to the IRD on your behalf.

2.3    We shall prepare the Company's 2007/08 Profits Tax return and supporting schedules based on the general interpretation and application of the relevant provisions of the Inland Revenue Ordinance prevailing at the time we prepare these documents. It must be emphasised that, in some cases, a position has to be taken in deciding whether particular items are deductible or chargeable. We shall advise the Company of these issues during the course of our work.

2.4    In carrying out the above work, we must stress that we shall be dealing with the tax affairs of the Company as an agent, and on the basis that the Company makes full disclosure to us of all relevant information. There is no requirement for us to and, therefore, we shall not perform any independent verification work on any information provided by the Company to us for the purposes of preparing the 2007/08 Profits Tax return and supporting schedules and forwarding them to the IRD. The Company is responsible for ensuring that the accounting records faithfully reflect the nature of transactions.

2.5    In performing our work, we will necessarily be relying upon factual information and materials provided to us by and on behalf of the Company. We will not seek to establish the correctness of those facts. Nevertheless, we will satisfy ourselves, so far

D39

as possible, that the information presented is consistent with other information which is made available to us in the course of our work in accordance with the terms of this engagement letter.

2.6 The IRD has special procedures for the examination of business accounts. Cases which exhibit certain characteristics may trigger a field audit examination or a full investigation by the IRD. These examinations may not be restricted to the books and records of the business. The Company will therefore appreciate the necessity of maintaining accurate and complete records of all its business transactions. Once a taxpayer is selected for this in-depth examination, a considerable amount of information will be requested by the IRD which may involve us, and the Company, in substantial additional time and cost, unless the information is readily available.

2.7 In addition to the services outlined in paragraph 2.2, we would be pleased, at the request of the Company, to assist it in connection with any matter relating to compliance with its obligations under the Hong Kong Inland Revenue Ordinance including:-

a) preparing, for the Company's consideration, written replies to any enquiries which may be raised by the IRD in connection with matters pertaining to the ascertainment of the Company's liability to Profits Tax;

b) preparing, for the Company's consideration, objections against excessive or incorrect assessments to tax and requesting conditional or unconditional hold over of tax in dispute, if required; and

c) preparing, for the Company's consideration, applications to hold over Provisional Profits Tax, if required.

2.8 We would also be pleased, at the request of the Company, to provide advice on the tax consequences of any event, act, transaction or omission or otherwise in connection with the ascertainment of the liability to tax of any person in relation to any matter to the extent that it is permissible under applicable professional standards and regulations, including those issued by the Public Company Accounting Oversight Board, except that we reserve the right to decline a request if, in our view, it is not appropriate for us to provide the service requested. Declining to provide services in such circumstances shall not, of itself, constitute a termination of this engagement letter. In providing services pursuant to paragraph 2.7 and this paragraph 2.8, we accept no responsibility for the adequacy of the nature or scope of work which may be determined by the Company from time to time during the currency of this engagement. In accordance with clause 15 of our General Terms of Business, the Company shall be responsible for deciding whether, and to what extent, to act upon our advice.

D40

2.9  Any work which the Company asks us to carry out pursuant to paragraph 2.7 or paragraph 2.8 which is not within the scope of the services outlined in paragraph 2.2 will be regarded as a separate assignment, the scope and timing of which will be agreed with the Company in each case before we start work. Such assignments will be carried out in accordance with the terms of this agreement unless we determine that particular assignment(s) shall be the subject of a separate letter of engagement.

3  *Reporting*

3.1  The reporting requirements for any work which the Company engages us to carry out in accordance with the terms of this agreement will be agreed with the Company for each assignment.

4  *Ownership of our working paper*

4.1  You agree that, in accordance with clause 10 of the General Terms of Business, we retain ownership of our working papers created in the course of our work in accordance with the terms of this engagement letter.

5  *Timetable*

5.1  We emphasise that the due date for the submission of the Company's Profits Tax return is generally one month after the date of the issue of the Profits Tax return by the IRD or such extended date as granted by the IRD. If the tax returns are not submitted by the due date, the IRD may issue estimated assessments and/ or impose penalties of up to HK$10,000 plus three times the tax charged.

5.2  A timetable concerning the performance of our work will be as mutually agreed upon between the Company and us for each assignment.

6  *Confidentiality*

6.1  It is agreed that clause 8 of the attached General Terms of Business shall be replaced by the following provisos:

You acknowledge and agree that any advice, recommendations, information or work product provided to you by KPMG in connection with this engagement is for your sole benefit and use and is based on the specific facts and circumstances and the scope of KPMG's engagement with you. You agree that if you make such advice, recommendations, information or work product available to any third party, you will notify such third party, in writing, that KPMG's advice, recommendations, information and work product was prepared for your sole benefit and use and is based on the specific facts and circumstances and the scope of KPMG's engagement with you and is not intended to be relied upon by any other person. In the event of a claim by any third party relating to the Services under this engagement that arises out of a breach of this

D41

clause 8 by you or any of your personnel, agents or representatives, you agree to indemnify and hold harmless KPMG and our personnel from all damages, loss, liabilities, costs and expenses (including legal fees and disbursements on a full indemnity basis) arising out of or in connection with any such breach.

7   *Access to information and personnel*

7.1   In accordance with clause 18 of the General Terms of Business, the Company undertakes to ensure that any information which we may require for the purpose of providing the services set out in this letter is made available to us, as and when we may reasonably require. In order for us to carry out our work in order to meet the tax filing deadline as set out in section 5 above, it is important that we can be assured of the availability and co-operation of the management and staff of the Company in providing the information we may require. In this connection, we may provide the Company with a list of information and documents required for completion of the relevant assignments. We draw clause 22 of the General Terms of Business to your attention, concerning our responsibilities if information material to our task is withheld or concealed from us or misrepresented to us.

7.2   We will not be held responsible if information material to our task is not provided within the time to be agreed in due course and as a result we are unable to carry out our work in accordance with the tax filing deadline as set out in section 5 above.

8   *Representations*

8.1   We may require the Company's written representations in connection with matters that are significantly dependent upon the judgement of the directors or matters for which documentary evidence is not currently available, where appropriate.

9   *Engagement team*

9.1   Our engagement team will be led by the following members:-

Engagement partner – Ayesha Macpherson

Engagement senior manager – Benjamin Pong

9.2   We draw your attention to Clause 3 of the General Terms of Business, which states that whilst we shall use reasonable endeavours to ensure that the above named persons are involved in this engagement, we may substitute others of equal or similar skills. We shall, however, consult you before doing so.

D42

### 10 Fees

10.1 Our fee for performing the scope of work outlined in paragraph 2.2 is estimated to be HK$23,500 plus reimbursement of our outlays. This fee is proposed on the assumption that all the required information and documentation will be provided to us on a clear and timely basis, and does not include any work which may be required subsequent to the lodgement of the Company's 2007/08 Profits Tax return such as handling queries raised by the IRD, objecting against notices of assessment, applying for holdover of Provisional Profits Tax, etc. Such services will be regarded as separate assignments subject to additional fees.

10.2 Please note that any additional work which may be required as a result of any material change in the scope of the assignment, or extension thereof, such as a request for further information following completion of this engagement, will be subject to additional fees to be agreed at a later date.

### 11 Exclusions and limitations on our liability

11.1 In the particular circumstances of this engagement, you agree that Clauses 37 to 40 of the General Terms of Business apply to our engagement as if they were set out in this letter, with the following proviso.

11.2 It is agreed in respect of each assignment that our liability as described in Clause 38 of the General Terms of Business shall be limited to five times the amount of our agreed fee for the particular assignment.

### 12 Non-tax advisory services

12.1 Any non-tax advisory services that may be required from time to time will be regarded as distinct from this engagement and will be dealt with in a separate letter of engagement.

### 13 Agreement of terms

13.1 We should be grateful if you would kindly acknowledge receipt of this letter and confirm your understanding and acceptance of our terms of reference by signing and returning the enclosed copy. If the contents are not in accordance with your understanding of our agreement, we shall be pleased to receive your further observations and to give you any other information you require.



D43

15.2  For the avoidance of doubt, the terms of this letter shall apply to all tax work carried out by us in connection with this engagement prior to the date of countersignature of this letter.

Yours faithfully
For and on behalf of KPMG Tax Limited

Ayesha Macpherson
Partner

Enclosures:
KPMG Hong Kong's General Terms of Business

I have read and understood the terms and conditions of this letter and I agree and accept them.

Signed:

Duly authorised, for and on behalf of
Circuit City Global Sourcing, Limited

Name:

Date: