**Exhibit C**
**KPMG Standard Terms and Conditions**

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

1. **Services; Client Responsibilities**.

(a) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client. References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached (the "Engagement Letter").

(b) In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

(c) Subsequent to the completion of this engagement, KPMG will not update its advice, recommendations or work product for changes or modification to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services**. All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination**. Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination.

4. **Ownership and Use of Deliverables**.

(a) KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, use, provide, modify, create, acquire or otherwise obtain rights in, concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software (collectively, the "KPMG Property"). KPMG retains all ownership and use rights in the KPMG Property. Client shall acquire no rights or interest in the KPMG Property, except as expressly provided in the next paragraph. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

(b) Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables.

(c) Client acknowledges and agrees that any advice, recommendations, information or work product provided to Client by KPMG in connection with this engagement is for the sole use of Client and may not be relied upon by any third party. Client agrees that if it makes such advice, recommendations, information or work product available to any third party other than as expressly permitted by the Engagement Letter the provisions of Paragraph 8(b) shall apply unless Client provides the written notice to the third party in substantially the form of Appendix A hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 17(a) below, no acknowledgement of the Notice shall be required and (ii) no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with American Institute of Certified Public Accountants ("AICPA") and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages**. Except for each party's indemnification obligations herein, neither Client nor KPMG shall be liable to the other for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter for an aggregate amount in excess of the fees paid or owing to KPMG under the Engagement Letter. In no event shall either party be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

7. **Infringement**.

(a) KPMG hereby agrees to indemnify, hold harmless and defend Client from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against Client to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued as of the

**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification shall not apply to any infringement arising out of (x) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than in accordance with Paragraph 4(c); (y) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (z) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of options described in (i) or (ii) above, Client shall return the Deliverable to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification**.

(a) Each party agrees to indemnify, hold harmless and defend the other from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which the other party may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the indemnifying party.

(b) In accordance with Paragraph 4(c) Client agrees to indemnify, defend and hold harmless KPMG from and against any and all Liabilities incurred or suffered by or asserted against KPMG in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon KPMG's advice, recommendations, information or work product as a result of Client's disclosure of such advice, recommendations, information or work product without adhering to the notice requirements of Paragraph 4(c) above.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages.

9. **Cooperation; Use of Information**.

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, equipment, data and information to the extent necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional obligations of Client in connection with this engagement. Client acknowledges that Client's failure to perform these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(b) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material effect on KPMG's conclusions.

10. **Independent Contractor**. It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality**.

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (i) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (ii) is or becomes publicly known through no wrongful act of the Receiving Party; (iii) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (iv) relates to the tax treatment or tax structure of any transaction, (v) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 or 6112 of the Internal Revenue Code ("IRC") or the regulations thereunder or under any similar or analogous provisions of the laws of a state or other jurisdiction or (vi) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

(b) The Receiving Party will deliver to the Disclosing Party all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for one copy thereof that the Receiving Party may retain for its records. The Receiving Party shall not use or disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required to be disclosed pursuant to a statutory or regulatory provision or court order or to fulfill professional obligations and standards.

(c) Each party shall be deemed to have met its nondisclosure obligations under this Paragraph 11 as long as it exercises the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(d) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent permitted by law, subject to any protective order or the like that may have been entered in the matter.

12. **Assignment; Use of Member Firms**. Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld. Notwithstanding the foregoing, to the extent any of the services under the Engagement Letter will be performed in or relate to a jurisdiction outside of the United States, Client acknowledges and agrees that such services, including any applicable tax advice, may be performed by the member firm of KPMG International practicing in such jurisdiction. Accordingly, Client consents to KPMG's disclosure to a member firm and such member firm's use of data and information, including tax return information, received from or at the request or direction of Client for the purpose of completing the services under the Engagement Letter.

13. **Governing Law; Severability**. The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution**.

(a) Any dispute or claim arising out of or relating to the Engagement Letter between the parties or the services provided thereunder shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("CPR Arbitration Rules"). By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the International Institute for Conflict Prevention and Resolution, with the exception of paragraph 2 (Selecting the Mediator).

(c) Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

15. **Miscellaneous**.

(a) Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) KPMG may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that KPMG transmits to Client unless no such hard copy is transmitted by KPMG to Client.

**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

(c) For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) Except as permitted by law or the terms of the Engagement Letter, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

16. **Entire Agreement**. The Engagement Letter and these Standard Terms and Conditions, including the Exhibits and Appendices hereto and thereto, constitute the entire agreement between KPMG and Client with respect to the services under the Engagement Letter and supersede all other oral and written representation, understandings or agreements relating thereto.

17. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG advice is requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c) Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that KPMG will not assert on Client's behalf any claim of privilege unless Client specifically instructs KPMG in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will KPMG assert any claim of privilege that KPMG concludes, after exercising reasonable judgment, is not valid.

(d) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(e) Client acknowledges that in connection with any tax compliance services provided by KPMG under the Engagement Letter, KPMG may utilize the services of affiliates and third party service providers within and without the United States to organize and input data, operate the software used to generate tax returns for Client or its personnel and perform other related tasks. Client hereby consents to KPMG's use of such affiliates and third party service providers and the disclosure to such affiliates and third party service providers and their use of tax return information, received from Client or its personnel for the purpose of preparing, assisting in preparing, or obtaining or providing services in connection with preparing, any tax return required under the Engagement Letter.

(f) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and the Employee Retirement Income Security Act of 1973, each as amended, and the relevant state and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

## APPENDIX A

## [FORM OF NOTICE AND ACKNOWLEDGEMENT]

[Name of Third Party]
Address


The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and may not be relied upon by you or any other person or organization. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

*Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.

Very truly yours,

[Name of Client]

By: _____
   Name:
   Title:

**\*Accepted and Agreed to on this \_\_\_ day of \_\_\_\_, 20\_\_ by**:

[Name of Third Party

By: _____
   Name:
   Title:
* Remove if a signed acknowledgement is not required by the terms of Paragraph 4(c).