UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: | ) |
| | ) Case No. 08-35653 |
| CIRCUIT CITY STORES, INC., et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |

### NAVARRE DISTRIBUTION SERVICES, INC.'S MOTION FOR AN ORDER GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363

Navarre Distribution Services, Inc., a division of Navarre Corporation (collectively, "**Navarre**"), by and through its undersigned counsel, hereby moves for the entry of an Order pursuant to sections 361 and 363(e) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), granting Navarre adequate protection and related relief. In support of its motion ("**Motion**"), Navarre respectfully states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over the Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

### BASIS FOR RELIEF

3. The statutory bases for the relief requested herein are sections 361 and 363(e) of the Bankruptcy Code.

---

R. Timothy Bryan (VSB # 50931)
Alan M. Noskow (VSB # 51094)
Patton Boggs LLP
8484 Westpark Drive, 9th Floor
McLean, Virginia 22102
(703) 744-8000
*Counsel for Navarre Distribution Services, Inc.*
3694442

## BACKGROUND

4. On November 10, 2008 (the "**Petition Date**"), the above-captioned debtors and debtors-in-possession (collectively, "**Debtors**") filed voluntary petitions for relief under the Bankruptcy Code.

5. Navarre and Debtor Circuit City Stores, Inc. are parties to several agreements including but not limited to that certain Consignment Agreement dated as of June 23, 2006 (as amended, the "**Consignment Agreement**"). Under the Consignment Agreement, Navarre provides software and other products (collectively, the "**Consigned Goods**") to Debtors on a consignment basis for sale by Debtors to its customers. Prior to the Petition Date, Debtors were obligated to remit proceeds from the sale of Consigned Goods to Navarre in accordance with the terms of the Consignment Agreement.[1]

6. Navarre validly and properly perfected its interest in the Consigned Goods by, among other things, filing a UCC financing statement on behalf of itself and its third party vendors and notifying the agent for Debtors' prepetition lenders of its purchase-money security interest in the Consigned Goods. True and correct copies of the UCC financing statement and notice to Debtors' prepetition lenders are attached hereto as Exhibits A and B, respectively.

7. As of the Petition Date, (a) Debtors owed Navarre approximately $2,291,432 for Consigned Goods that were delivered to Debtors by Navarre and sold by Debtors to its customers and (b) Debtors were in possession of Consigned Goods having an "Agreed Cost" (as defined in the Consignment Agreement) of approximately $10,500,000 which, upon information and belief, Debtors are currently offering for sale to its customers. Since the Petition Date,

---

[1] The Consignment Agreement is not attached due to confidentiality restrictions.

Debtors have, upon information and belief, sold a portion of the Consigned Goods that were in its possession as of the Petition Date.

8. On the Petition Date, the Debtors filed a motion (the "**DIP Motion**") seeking authorization to enter into financing arrangements with Bank of America, N.A., as administrative agent for itself and the lenders party thereto (collectively, the "**DIP Lenders**") in accordance with a Senior Secured, Super-Priority, Debtor-In-Possession Credit Agreement (the "**DIP Credit Agreement**").

9. The Court entered an Interim Order (docket entry #78), which was subsequently corrected by an Interim Order entered on December 9, 2008 (docket entry #823) (the "**Interim DIP Order**") which, among other things, approved the DIP Credit Agreement and granted the DIP Motion on an interim basis.

10. The DIP Motion and the DIP Credit Agreement purportedly acknowledge that the liens of consignors in goods sold on consignment are to be senior to the liens to be granted to the DIP Lenders under the DIP Financing. Specifically, the DIP Credit Agreement grants the DIP Lenders a first priority lien in all assets of the Debtors, subject only to "Permitted Encumbrances" which, by its definition in the DIP Credit Agreement, includes "purported Liens evidenced by the filing of precautionary UCC and PPSA financing statements related solely to operating leases or the consignment of personal property entered into in the ordinary course of business." (*See DIP Credit Agreement*, Section 2.29, p. 80 and definition of "Permitted Encumbrances," p.30.)

11. In addition, the Interim Order expressly states that "the Debtors shall not grant any liens under the DIP Facility on any property that is not property of the estate. . ." (*See*

3694442

*Interim Order*, ¶ 20.) This carveout is intended to cover, among other things, goods held by the Debtors' on consignment such as the Consigned Goods.

12. The DIP Motion and Interim Order, however, are not clear as to the treatment of the proceeds from the sale of the Consigned Goods. In fact, those documents suggest that 100% of the proceeds of the sale of the Consigned Goods will be retained by Debtors, subject to the liens of the DIP Lenders, to use in accordance with the terms of the DIP Credit Agreement.

13. Upon information and belief, Debtors desire and intend to (a) sell the Consigned Goods being held by the Debtors in inventory and (b) use or continue to use the proceeds from the sales of Consigned Goods (whether sold pre or postpetition).

### RELIEF REQUESTED

14. Navarre seeks entry of an order, among other things:

    a. determining that the Consigned Goods were delivered under a valid consignment arrangement and Navarre has a valid and properly perfected consignment lien in the Consigned Goods;

    b. determining that Navarre's interest in the Consigned Goods attaches to $2,291,432 in identifiable proceeds for prepetition sales of Consigned Goods and the "Agreed Cost" for all postpetition sales of Consigned Goods;

    c. granting Navarre adequate protection in its cash collateral by requiring segregation of the Agreed Cost of all pre and postpetition sale proceeds in a separate account;

    d. modifying the Interim Order and requiring that any final order approving the DIP Motion provide for the foregoing;

    e. requiring that any postpetition sales of Consigned Goods be at a price that is not less than the "Agreed Cost" (as defined in the Consignment Agreement);

3694442

4

  f. requiring that Debtors provide regular reporting regarding their sale of and Consigned Goods in accordance with the requirements of the Consignment Agreement; and

  g. granting such other relief as is just and proper.

## ARGUMENT

### Navarre is a Consignor with a Valid and Properly Perfected Consignment Lien on the Consigned Goods.

15. The Consignment Agreement represents a consignment arrangement under the UCC. *See* UCC §9-102. Consignment arrangements provide the consignor with a "purchase money security interest" in inventory held on consignment. *See* UCC §9-103(d). Holders of purchase money security interests must (a) file a financing statement describing the inventory in the appropriate place, (b) send an authenticated notification to the holder of the conflicting security interest, and (c) ensure that the notification described the goods and states that the sender has or expects to acquire a purchase money security interest in inventory of the merchant. *See* UCC §9-324(d). In the instant case, prior to the Petition Date, Navarre validly and properly perfected its interest in the Consigned Goods by filing a financing statement with the Commonwealth of Virginia State Corporation Commission and sending an authenticated notice of purchase money security interest to the agent for Debtors' prepetition lenders.

16. Based on the foregoing, Navarre has a valid and properly perfected consignment lien on the Consigned Goods. Moreover, because the Consigned Goods were delivered under a consignment arrangement and, as such, are not Debtors' inventory, the DIP Lenders do not have liens on the Consigned Goods pursuant to the express terms of the Interim Order.

3694442

### Navarre's Consignment Lien in the Consigned Goods Extends to Sale Proceeds of the Consigned Goods.

17. In addition to Navarre's valid consignment lien on the Consigned Goods, the sale proceeds of the Consigned Goods are also subject to the lien and consignment/security interest of Navarre because such sale proceeds are identifiable cash proceeds under the UCC.

18. Section 9-315(a)(2) of the UCC states that a security interest attaches to "identifiable" proceeds. In the course of discussions with representatives of Debtors subsequent to the Petition Date, Debtors have indicated that they are currently and have at all times separately allocated the proceeds from the sale of the Consigned Goods. Accordingly, such proceeds are clearly identifiable and subject to Navarre's valid and perfected consignment lien.

19. Notwithstanding the foregoing, to the extent Debtors have commingled proceeds from the sale of the Consigned Goods with other property of Debtors, Section 9-315(b)(2) provides that such proceeds are "identifiable" because, upon information and belief, they can be traced by a method of tracing that is permitted under applicable law.

20. Courts typically apply the "lowest intermediate balance test" to trace the sale proceeds of the Consigned Goods. *See Sony Corp of America v. Bank One*, 85 F.3d 131, 138 (4th Cir. 1996); *In re Evelyn L. Cook*, 2007 WL 2238397 (Bankr. E.D. Va. 2007) (stating that courts apply the lowest intermediate balance rule to determine that any money in the account equal to the lowest balance are equitably owned by the party with the superior right of ownership); *In re Thomas H. Dameron, et al.*, 206 B.R. 394, 403 (Bankr. E.D. Va. 1997) (applying lowest intermediate balance rule to allow the court to assume that funds subject to a constructive trust will be withdrawn last from a commingled account).

3694442

21.  Under the lowest intermediate balance test, a court follows the presumption that the proceeds remain in the account as long as the account balance is equal to or greater than the amount of proceeds deposited. *See Sony*, 85 F.3d at 138. The proceeds are "identified" by presuming that they remain in the account even if other funds are paid out of the account. *Id.* Under the rule, however, if the balance of the account dips below the amount of deposited proceeds, the security interest in the proceeds abates accordingly. *Id. See also In re Thomas H. Dameron, et al.*, 206 B.R. at 403.

22.  Upon information and belief, the balance in Debtors' bank account(s) where the funds were deposited have at all times exceeded the amount of the sale proceeds from the Consigned Goods. Debtors' voluntary petition identifies total assets based on its most recent quarterly report filed with the Securities and Exchange Commission which indicates that Debtors had cash of $91,235,000 as of August 31, 2008. Other recent financial statements of Debtors filed with the SEC reflect cash of $90,848,000 as of May 31, 2008, and $296,055,000 as of February 29, 2008. In each case, Debtors are consistently maintaining cash balances well in excess of the sale proceeds of the Consigned Goods.

### Navarre is Entitled to Adequate Protection Under the Bankruptcy Code.

23.  As a result of the foregoing, all proceeds from the sale of the Consigned Goods (which includes both proceeds received prior to the Petition Date and proceeds from the sale of Consigned Goods after the Petition Date) constitute the cash collateral of Navarre ("**Navarre Cash Collateral**"), which cannot be used without Navarre's consent. Accordingly, Navarre is entitled, pursuant to Section 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Consigned Goods, including the Navarre Cash Collateral, for any diminution in

value of the Consigned Goods subject to such valid and properly perfected liens, including but not limited to diminution resulting from the use of the Navarre Cash Collateral, the use, sale or lease of the Consigned Goods, and the imposition of the automatic stay.

24. If Navarre's rights in the Consigned Goods and the proceeds thereof are not recognized, the DIP Lenders will unfairly benefit to the detriment of Navarre by obtaining a lien on the proceeds of the Consigned Goods. This is inequitable because the DIP Lenders decision to provide postpetition financing and allow use of their cash collateral could not reasonably have been predicated on receiving a lien on proceeds of property that was not owned by Debtors, as evidenced by their willingness to exclude such property from their security interest.

25. Navarre submits that the only way to protect its priority interest in the Consigned Goods and sale proceeds therefrom to be protected is for this Court to enter an order, among other things, prohibiting Debtors' use of the Navarre Cash Collateral, and imposing a requirement on Debtors and the DIP Lenders (including any administrative or collateral agent for the DIP Lenders), to segregate all proceeds from the sale of Consigned Goods (which includes proceeds received prior to the Petition Date as well as proceeds from the sale of Consigned Goods after the Petition Date), not commingle such proceeds with any other funds of Debtors, and hold them in a segregated fund that is separate from the Debtors' other cash accounts which are or will be subject to the first priority liens of the DIP Lenders (or any other party).

26. Segregation is not only appropriate but it is also feasible under the circumstances of this case. Debtors have represented to Navarre that the DIP Lenders would be able to segregate the Navarre Cash Collateral. Moreover, Debtors recent compromise with Panasonic, another consignor of Debtors, provides for the placing of certain funds in a segregated account.

*(See Debtors' Motion for Order Pursuant to Bankruptcy Code Section 363 and Bankruptcy Rule 9019 Approving Settlement Agreement by and among Debtors and Panasonic,* ¶ 19(b) and (d).)

27. To the extent such an order is entered, Navarre is willing to consent to the Debtors' continued sale of the Consigned Goods in the ordinary course of business provided, that (a) Debtors shall not be permitted to sell any Consigned Goods for a price that is less than the "Agreed Cost" (as defined in the Consignment Agreement), (b) Debtors shall be required to provide regular reporting regarding their sale of any Consigned Goods in accordance with the requirements of the Consignment Agreement and (c) Debtors take all deductions for chargebacks approved as of the Petition Date against the amounts owed to Navarre as of the Petition Date, and not against amounts that will come due as a result of postpetition sales of Consigned Goods.

28. Because Navarre has a valid and perfected interest in the Consigned Goods and proceeds therefrom, segregation of such proceeds is appropriate. To the extent there is a viable opposition to the validity or perfection of Navarre's consignment lien, Navarre submits that segregation is still appropriate pending a resolution of any such opposition. Such an outcome is fair and poses minimal risk of inequitable treatment to the parties involved. In addition, the relief Navarre is seeking is consistent with relief afforded to consignors in other bankruptcy cases. (*See e.g. In re Whitehall Jewelers Holdings, Inc., et al.*, Case No. 08-11261 (Bankr. Del. 2008).)

## WAIVER OF MEMORANDUM OF LAW

29. Navarre requests that the Court treat this Motion as a written memorandum of points and authorities or waive any requirement that the Motion be accompanied by a written

3694442

9

memorandum of points and authorities as described in Rule 9013-1(G) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia.

WHEREFORE, Navarre respectfully requests that the Court enter an order (1) determining that the Consigned Goods were delivered under a valid consignment arrangement and Navarre has a valid and properly perfected consignment lien in the Consigned Goods; (2) determining that Navarre's interest in the Consigned Goods attaches to $2,291,432 in identifiable proceeds for prepetition sales of Consigned Goods and the "Agreed Cost" for all postpetition sales of Consigned Goods; (3) granting Navarre adequate protection in its cash collateral by requiring segregation of the Agreed Cost of all pre and postpetition sale proceeds in a separate account; (4) modifying the Interim Order and requiring that any final order approving the DIP Motion provide for the foregoing; (5) requiring that any postpetition sales of Consigned Goods be at a price that is not less than the "Agreed Cost" (as defined in the Consignment Agreement); (6) requiring that Debtors provide regular reporting regarding their sale of and Consigned Goods in accordance with the requirements of the Consignment Agreement; and (7) granting such other relief as is just and proper.

Dated: December 12, 2008

Respectfully submitted,

/s/ Alan M. Noskow
R. Timothy Bryan (VSB # 50931)
Alan M. Noskow (VSB # 51094)
PATTON BOGGS LLP
8484 Westpark Drive, 9th Floor
McLean, Virginia 22102
Phone: (703) 744-8000
Fax: (703) 744-8001
E-mail: tbryan@pattonboggs.com
E-mail: anoskow@pattonboggs.com

*Counsel to Navarre Distribution Services, Inc.*

3694442

10