as well as for all Additional Rent payable by Tenant under this Lease, (ii) for the second thirty (30) days, one hundred twenty-five percent (125%) of the amount thereof payable by Tenant for the month immediately preceding the last day of the Term, as well as for all Additional Rent payable by Tenant under this Lease and (iii) thereafter, one hundred thirty-five percent (135%) of the amount thereof payable by Tenant for the month immediately preceding the last day of the Term, as well as for all Additional Rent payable by Tenant under this Lease.

## ARTICLE XXII

### NOTICE

SECTION 22.01      <u>Where and How Given</u>.  All notices or demands which either party hereto either is required to or may desire to serve upon the other shall be in writing and shall be sufficiently served upon such other party, by (a) mailing a copy thereof by certified or registered mail, postage prepaid, return receipt requested, addressed to the party to whom the notice is directed at the "<u>Notice Address</u>" of such party, or (b) by a reliable overnight courier (such as Federal Express), all charges prepaid, furnishing a receipt upon delivery, and addressed to the party to whom the notice is addressed at the Notice Address of the part.  The Notice Address of each party is:

| | |
|---|---|
| Landlord: | **c/o PDC PROPERTIES, INC.**<br>8395 Jackson Road, Suite F<br>Sacramento, CA 95826<br>Attention: Director |
| with a copy to: | **c/o PANATTONI DEVELOPMENT COMPANY, LLC**<br>1640 S. Sepulveda Blvd., Suite 530<br>Los Angeles, CA 90025<br>Attention: John Gebhardt |
| with a copy to: | **PANATTONI LAW FIRM**<br>34 Tesla, Suite 100<br>Irvine, CA 92618<br>Attention: Rick Kaiser, Esquire |
| Tenant: | **CIRCUIT CITY STORES WEST COAST, INC.**<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate |
| with a copy to: | **CIRCUIT CITY STORES WEST COAST, INC.**<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: General Counsel |
| with a copy to: | McGuireWoods LLP<br>One James Center<br>901 East Cary Street |

Richmond, Virginia 23219
Attention:  Edmund S. Pittman, Esquire

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

SECTION 22.01    When Given.  Unless otherwise provided for herein, notice shall be deemed to have been served at the earlier of the date received, refused or returned as undeliverable.  However, if such notice pertains to the change of address of either of the parties hereto, then such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given.

## ARTICLE XXIII

## MISCELLANEOUS

SECTION 23.01    Rent Proration.  If this Lease is terminated prior to its natural expiration date for any reason other than a Tenant default, then Landlord shall promptly reimburse Tenant for any Rent prepaid by Tenant for periods subsequent to such termination date. This Section 23.01 shall survive the termination of this Lease.

SECTION 23.02    Construction.  In construing this Lease, feminine or neuter pronouns shall be substituted for those masculine in form and vice versa, and plural terms shall be substituted for singular and singular for plural in any place in which the context so requires. This Lease shall be construed without regard to: (a) the identity of the party who drafted the various provisions hereof, and (b) the addition or deletion of text made during the negotiation of this Lease.  Moreover, each and every provision of this Lease shall be construed as though all parties hereto participated equally in the drafting thereof.  As a result of the foregoing, any rule or construction that a document is to be construed against the drafting party shall not be applicable hereto.

SECTION 23.03    Section Headings.  The section headings in this Lease are for convenience only and do not in any way limit or simplify the terms and provisions of this Lease, nor should they be used to determine the intent of the parties.

SECTION 23.04    Partial Invalidity.  If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, then the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 23.05    Waiver.  The failure of either party to seek redress for violation of, or to insist upon strict performance of, any term, covenant or condition contained in this Lease shall not prevent a similar subsequent act from constituting a default under this Lease.

46

SECTION 23.06    Governing Law.    This Lease shall be governed and construed in accordance with the laws of the State.

SECTION 23.07    Successors and Assigns.    This Lease shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assign of Landlord and the successors and assigns of Tenant.

SECTION 23.08    No Broker.    Landlord and Tenant represent to each other that no broker or person is entitled to any commission by reason of the negotiation and execution of this Lease, other than the parties comprising Broker identified in Section 1.01(D), and Landlord agrees that Landlord shall be solely responsible for the fees and commissions of each of the parties comprising the Broker. Landlord and Tenant agree to indemnify, defend and hold each other harmless against any and all claims by any other person for brokerage commissions or fees arising out of any conversation, negotiations or other dealings held by the other party with any other broker regarding this Lease.

SECTION 23.09    Memorandum of Lease.    Landlord and Tenant agree to execute a Memorandum of Lease in recordable form, substantially similar to that attached as Exhibit L, setting forth such provisions hereof as may be required by State law. If so requested by Tenant, Landlord shall execute such Memorandum of Lease simultaneously with the execution of this Lease. Recording costs shall be borne by the party requesting recordation of same; however, any transfer taxes or other fees charged by any local or state governmental authorities in connection with such recordation shall be paid by Landlord. The provisions of this Lease shall control with regard to any omissions from, or provisions which may be in conflict with, the Memorandum of Lease.

SECTION 23.10    Entire Agreement.    This instrument contains the entire and only agreement between the parties and no oral statements or representations or written matter not contained in this instrument shall have any force or effect. This Lease shall not be amended or modified in any way except by a writing executed by both parties. All of the exhibits attached to this Lease are incorporated into this Lease by reference and for all purposes are a part of this Lease.

SECTION 23.11    Relationship of Parties.    The relationship between the parties hereto is solely that of landlord and tenant and nothing in this Lease shall be construed as creating a partnership or joint venture between the parties hereto, it being the express intent of Landlord and Tenant that the business of Tenant on the Premises and elsewhere, and the good will thereof, shall be and remain the sole property of Tenant.

SECTION 23.12    Force Majeure.    If either party hereto shall be delayed or hindered in, or prevented from, the performance of any act required under this Lease by reason of strikes, lockouts, labor troubles, failure of power, riots, insurrection, war, governmental delays in issuing necessary permits where such permits have been promptly and properly applied for and diligently pursued, Catastrophic Events (as hereinafter defined), Extraordinarily Severe Inclement Weather (as hereinafter defined) or other reasons of a like nature beyond the reasonable control of the party delayed in performing works or doing acts required under the terms of this Lease (any such delay, hindrance or prevention is referred to as "Force Majeure"),

47

then performance of such act shall be excused for the period of the delay, and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay, except as otherwise specifically provided herein to the contrary. The provisions of this Section 23.12 shall not be applicable to delays resulting from the inability of a party to obtain financing or to proceed with its obligations under this Lease because of a lack of funds. For purposes of this Lease, the term "Catastrophic Event" shall mean an act of war or terrorism, earthquake or flood which renders Landlord incapable of performing all or any part of Landlord's Work despite Landlord's best efforts for a period in excess of thirty (30) days. For purposes of this Lease, the term "Extraordinarily Severe Inclement Weather" shall mean weather patterns that may not reasonably be anticipated during the period of performance of the Landlord's Work and that, at a minimum, exceed the thirty (30) year return interval for such events according to the National Oceanographic and Atmospheric Administration (NOAA) for the area in which the Shopping Center is located.

SECTION 23.13     Limitation of Landlord's Liability.  Except with respect to (a) insurance proceeds or condemnation awards received by Landlord which are required by the terms of this Lease to be applied to the repair or restoration of the Premises or the Shopping Center, (b) Landlord's failure to pay the Landlord Reimbursement in accordance with this Lease, and (c) any monies owed by Landlord to Tenant in connection with Landlord's default in performing Landlord's Work, Tenant shall, on and after the Commencement Date, look only to Landlord's estate and property in the Shopping Center (or the proceeds from the sale, financing or refinancing of all or any portion thereof) and net income derived from the Shopping Center and such Affiliated Land for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord hereunder, and no other property or assets of Landlord, its officers, directors, stockholders, members or partners shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease. Except with respect to the limitation on personal liability hereinabove set forth, the provisions of this Section 23.13 shall not be deemed or construed to limit Tenant's rights and remedies pursuant to this Lease or which may be available at law, in equity or otherwise.

SECTION 23.14     Limitation of Tenant's Liability.  Landlord, its successors and assigns, shall look solely to the assets, if any, of Tenant and its successors and assigns, for the satisfaction of any claim arising from or under this Lease and shall not seek to impose personal liability on any shareholder, officer, director, member or employee of Tenant or any of its Affiliates.

SECTION 23.15     Consents.  Except as may be otherwise expressly set forth in this Lease, whenever under this Lease provision is made for either party's securing the consent or approval of the other party, (a) such consent or approval shall be in writing and shall not be unreasonably withheld, delayed or conditioned, and (b) in all matters contained herein, both parties shall have an implied obligation of reasonableness.

SECTION 23.16     Costs.  Whenever this Lease requires the performance of an act by party, such party shall perform the act at its own cost and expense, unless otherwise expressly provided to the contrary in this Lease.

SECTION 23.17    <u>Attorneys' Fees</u>.    In any action or proceeding hereunder (whether to enforce the terms and provisions of an indemnity or otherwise), the prevailing party shall be entitled to recover from the other party the prevailing party's reasonable costs and expenses in such action or proceeding, including reasonable attorneys' fees, costs and expenses. Except as otherwise set forth herein, if either party is sued by a third party as a result of a violation of a covenant, representation or warranty herein contained by the other party hereto, then the party who has violated the covenant, representation or warranty shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees, costs and expenses.

SECTION 23.18    <u>Survival of Obligations</u>.    The obligation to pay any sums due to either party from the other that by the terms herein would not be payable, or are incapable of calculation, until after the expiration or sooner termination of this Lease shall survive and remain a continuing obligation until paid.  All indemnity obligations under this Lease shall survive the expiration or earlier termination of this Lease.

SECTION 23.19    <u>Joint and Several Liability</u>.    If either party consists of more than one person, then the persons constituting such party shall be jointly and severally liable hereunder.

SECTION 23.20    <u>Definition of Hereunder, Herein, etc.</u>.  Unless the context clearly indicates to the contrary, the words "herein," "hereof," "hereunder," "hereafter," and words of similar import refer to this Lease and all of the Exhibits attached hereto as a whole and not to any particular section, subsection, or paragraph hereof.

SECTION 23.21    <u>Tenant's Trade Name</u>.    Landlord shall not make use of Tenant's trade name (i.e., "Circuit City"®) in any advertising or marketing material including, without limitation, on any internet website, without obtaining Tenant's prior written approval, which may be withheld in Tenant's sole and absolute discretion.  Notwithstanding the foregoing, Landlord may use Tenant's trade name on Landlord's website and in informational brochures, but only for the purposes of identifying Tenant as a tenant of the Shopping Center.

SECTION 23.22    <u>Counterparts</u>.    This instrument may be executed in several counterparts, each of which shall be deemed an original.  The signatures to this instrument may be executed and notarized on separate pages, and when attached to this instrument, shall constitute one complete document.

SECTION 23.23    <u>Non-Discrimination</u>.    Tenant hereby covenants and agrees that there shall be no discrimination against or segregation of any person or persons on account of race, color, creed, religion, sex, marital status, national origin, or ancestry in the subleasing, transferring, use, occupancy or enjoyment of the Premises nor shall Tenant or its successors and assigns establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use, or occupancy, of sublessees, subtenants or vendees in the Premises.

[Signature page follows]

49

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be duly executed and delivered in their respective names as of the date first above written.

LANDLORD:

**RAYMOND & MAIN RETAIL, LLC,**
a California limited liability company

By:    PINTAR INVESTMENT PROPERTIES CA, LLC
       a California limited liability company,
       Managing Member

       By:    Down Under Properties, Inc.,
              a California corporation
              Manager

              By: _____
                   Jeff Pintar, President

TENANT:

**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____
Name: John B. Mulleady
Title:   Vice President Real Estate and Construction

**EXHIBIT A**

<u>Site Plan</u>

Premises – crosshatched, with Floor Area and frontage thereof (Section 1.01P)
Customer Pick-Up Areas (Section 2.01(c))
Car Stereo Parking Areas (Depicted as Road Shop Parking)(Section 2.01(c))
Trash Compactor Area (Section 2.01(c))
Web Order Pick-Up Parking Spaces (Section 2.01(c))
Transformer Pad Area (Section 2.01(c))
Tenant's Preferred Area (Section 2.01(b))
Tenant's Promotional Area (Section 2.01(c))
Staging Area (Section 3.01)
Construction Drive (Section 5.02(b))
Monument Sign (Section 15.02)
No Build Area (Section 20.03(a))
Parking Spaces In Tenant's Preferred Area (Section 20.03(c))
Landlord's permitted outparcel build-out area (Section 20.03(d))
Space B-1 (Section 8.03)



## EXHIBIT B

<u>Legal Description of the Shopping Center</u>

Parcel 1 in the City of Alhambra, County of Los Angeles, State of California, as shown on Parcel Map No. 19698, filed in Book 233, Pages 11 and 12 of Parcel Maps, in the Office of the County Recorder of Los Angeles County.

**EXHIBIT C**

Site Design Requirements

[SEE ATTACHED]

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

These Site Design Requirements (SDR's) are attached to and made part of the Lease Agreement. These SDR's are intended to allocate responsibility between Landlord and Circuit City for the work needed to prepare the Premises for Circuit City's occupancy. Terms with capital letters which are defined in the Lease Agreement and used in the SDR's shall have the same meaning.

# 1. Landlord's Work

Landlord shall be responsible for all work as described in Section 1, "Landlord's Work".  Landlord's Work shall be preformed in a good and workmanlike manner. Landlord's engineers, surveyors, architects, consultants and contractors shall be bondable, all licensed in the state where the Shopping Center is located, and of good reputation. Landlord's Work shall be performed at Landlord's sole cost and expense, and in accordance with all applicable laws and regulations, these SDR's, the Construction Schedule (Attachment 2), and the Civil Plans (Attachment 7).

In the event that any portion of the Landlord's Work requires minor adjustments in order to satisfy the requirements of these SDR's, Circuit City may direct its contractor to make such minor adjustments, the total cost of which shall be reimbursed by Landlord to Circuit City upon demand in a sum not to exceed Five Thousand and no/100 Dollars ($5,000.00).

**A. Site Delivery Work**   - All of the Landlord Work described in one (1) though thirteen (13) below is referred to collectively as the "Site Delivery Work". Upon completion of the Site Delivery Work, Landlord shall deliver to Circuit City the "Site Work Certificate" (Attachment "3"), at which time "Delivery of the Land" as described in the Lease shall be deemed to have occurred. If any portion of the Site Delivery Work has not been completed per these SDR's specifications and design drawings approved by Circuit City, Circuit City shall promptly notify Landlord, and Landlord shall be obligated to correct any incomplete or unacceptable work as a condition precedent to Delivery of the Land.

1. Provide the Geotechnical Reports and Geotechnical Reliance Letter (Attachment "8").
2. Provide the Environmental Reports and Environmental Reliance Letter (Attachment "9").
3. Cause the proposed development of the Shopping Center and its Civil Plans to comply with the Geotechnical Report and with the Circuit City Specifications (Attachment "1").
4. Cause the land upon which the Circuit City building will be constructed (which includes the areas occupied by the Building, loading dock well, trash compactor, and sidewalks) to be free and clear of all obstructions, foundations, rock, footings, utilities, easements, improvements, and tenancies. Any rock removal performed by the Landlord must be completed as described in the Circuit City Specifications. The Circuit City Specifications shall take precedent over the Geotechnical Report with regards to rock removal.
5. Cause the land on which the Shopping Center is situated, including the Building Pad, to be delivered free of all Hazardous Materials.
6. Cause the land on which the Shopping Center is situated, including the Building Pad, to be graded in accordance with the Geotechnical Report, the Civil Plans, and the Circuit City Specifications.
7. Complete the Building Pad in accordance with the Geotechnical Report, the Civil Plans, and the Circuit City Specifications. If there are discrepancies between the Circuit City Specifications and the Geotechnical Report or Civil Plans, the Geotechnical Report shall take precedence. The term "Building Pad" shall mean the footprint of the Circuit City Building plus a minimum of five (5) feet beyond such footprint (except when the five feet falls within the building pad of an adjacent tenant or the pad is adjacent to or in close proximity to the property line ), and the areas occupied by the loading dock well, trash compactor, and sidewalks.
8. Obtain governmental approvals necessary to complete all on-site and off-site work shown on the Civil Plans, including all approvals, which must be obtained as a condition to issuance of Circuit City's building permit.
9. Obtain all planning and zoning approvals, if any, from governmental authorities having jurisdiction over the Shopping Center which are necessary to allow the issuance of Circuit City's building permit and the completion of the Circuit City building.

| **Site Design Requirements** | | **Reverse Build to Suit Deals** | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

10. Complete: (a) all curb cuts for the Tenant's Preferred Area, (b) Staging Area outside of but adjacent to the Building Pad, to either be paved or stone to provide for all weather use, and (c) a twenty four (24) foot wide all-weather construction access road connecting the existing adjacent roadway to the Building Pad, to be maintained by the Landlord in good condition throughout the construction of the Common Areas.

11. Provide temporary utilities as described in the Circuit City Specifications to within five (5) feet of the Staging Area, at locations designated by Circuit City, and in accordance with the dates on the Construction Schedule.

12. Satisfy the additional requirements set forth in "Approvals and Payment of Fees" below.

13. Final location of the transformer and secondary electrical service to the Building is pending Southern California Electric Service approvals. Landlord will work with Circuit City and the Store Planning Department to resolve an acceptable resolution for the location of the electrical room and meter location.

**B. Additional Landlord's Work.**    - In addition to the Site Delivery Work, Landlord shall complete the following as part of Landlord's Work:

1. The construction and installation of Circuit City's permanent utilities in accordance with the Circuit City Specifications.

2. The construction and installation of paving, (light duty and heavy duty), sidewalks, curbing, landscaping, and exterior lighting in accordance with the Geotechnical Report, the Civil Plans, and Circuit City Specifications.

3. The construction and installation of the monument sign in accordance with the town approval and Circuit City Specifications.

**C. Approvals and Payment of Fees**    - As a condition of completing the Site Delivery Work, Landlord shall be obligated (a) to obtain all governmental and third party approvals, permits, and authorizations which must be obtained prior to the issuance of a building permit for the construction of the Circuit City building, and (b) as set forth in Section 3.01(c) of the Lease, to pay all fees and assessments, including all permit and impact fees incurred in the performance of Landlord's Work  (regardless of how such fees may be defined or described) which must be paid as a condition to issuance of a building permit for the construction of the Circuit City building.

**D. Survey**    - Landlord shall provide Circuit City with a current ALTA survey, and provide the ALTA survey Certificate (Attachment "6") in accordance with the Construction Schedule.

**E. Civil Plans**    - Landlord shall deliver to Circuit City full and complete Civil Plans in accordance with the Construction Schedule. The Civil Plans will be attached to these SDR's as Attachment "7". The Civil Plans shall be subject to Circuit City's approval. Circuit City's approval of the Civil Plans shall be for compliance with the Circuit City Specifications only, and for no other purpose. To the extent that there is a conflict between the Civil Plans and the Circuit City Specifications, the Civil Plans shall control.

**F. Sign Plans**    - Landlord shall submit to Circuit City all plans and specifications for the monument sign contained or to be constructed within the Shopping Center, for Circuit City's written approval, which shall not be unreasonably withheld. Landlord shall submit to Circuit City any signage plans and design criteria that may impact Circuit City's building signs, and the monument signs. Attached as Attachment "5" are the Sign Plans and Specifications plans for Circuit City's building, and monument signage. Landlord agrees to work with Circuit City on obtaining City approved modifications to the already City approved sign program to incorporate Circuit City's requested sign revisions. Circuit City's sign revisions must first be found acceptable to Landlord whose acceptance will not be unreasonably withheld.

**G. Landlord Deliverables**    - The Landlord shall provide the deliverables as described in the Circuit City Development Process (Attachment "10").

| Site Design Requirements | Reverse Build to Suit Deals | |
|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

## 2. Circuit City's Work

**A. Building Construction**  - Following Delivery of the Land, Circuit City shall commence and pursue to completion the construction of the Circuit City building described in the Lease as the "Premises". Except as otherwise expressly provided in the SDR's or the Lease, and subject to the terms of the Lease regarding payment of the Landlord Reimbursement and the terms of section 3.01 (c) of the Lease, all costs and expenses incurred by Circuit City in connection with permitting and constructing the Premises shall be borne by Circuit City.

**B. Plans and Specifications**   - Circuit City shall prepare plans and specifications for the construction of the Premises which shall be submitted to the Landlord for its approval in accordance with these SDR's. Landlord shall respond to Circuit City's request for approval within fifteen (15) days, and shall be obligated to approve Tenant's plans and specifications so long as they are consistent with Circuit City's current prototype and the Floor Plans and Elevations (Attachment "4"). In the event that the Landlord does not notify Circuit City that it disapproves the plans and specifications within fifteen (15) days, the plans and specifications shall be deemed approved. Circuit City's plans and specifications shall not be changed by Circuit City without the prior written consent of Landlord. Following Landlord's approval of the Circuit City's plans and specifications, any changes requested by Landlord shall be subject to Circuit City's approval, which approval may be withheld in Circuit City's sole discretion for any reason or no reason, and if approved by Circuit City, any incremental costs associated with such changes shall be made at Landlord's sole cost and expense, unless the change is required to meet the City of Alhambra approved plans.

**C. Permits**  - Subject to section 3.01 (c) of the Lease, at Circuit City's sole cost and expense, Circuit City shall obtain those certain building permits, licenses, other governmental approvals, and temporary and permanent certificates of occupancy which may be required for the lawful construction of the Premises (excluding Landlord's Work) in accordance with these SDR's. Landlord shall be obligated to assist and cooperate fully with Circuit City in obtaining such permits, licenses, approvals and certificates. Landlord shall be responsible for all other permits necessary for the development of the Shopping Center.


## 3. Attachments

**A. Attachments**  - The following are attached to these SDR's and made a part hereof for all purposes.

1.  Circuit City Specifications
2.  Construction Schedule
3.  Site Work Certificate
4.  Floor Plan and Elevations
5.  Sign Plans and Specifications
6.  ALTA Survey Certificate
7.  Civil Plans
8.  Geotechnical Reliance Letter
9.  Environmental Reliance Letter
10. Circuit City Development Process

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

## Attachment "1" – Circuit City Specifications

1. **Grading Specifications**
2. **Utility Specifications**
3. **Paving and Lighting Specifications**

(to be attached)

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

# GRADING SPECIFICATIONS – RBTS DEALS

GRADING SPECIFICATIONS:    Grading Requirements:

- The Civil Plans shall show contours in accordance with standard engineering practice and these contours shall be shown with the existing and final elevations.

- The Building will be accessible by grade level parking only. Steps and stairs are not permitted.

- Sidewalk at the Building will slope away from the Building with grade of no less than 1.5% and no more than 3.0%. All Water shall be sheet drained away from the Circuit City doors.

- Asphalt paving areas will be graded to avoid ponding water (in accordance with industry standard), with slopes of no less than 1.5% and no more than 4.0%. Entrances and access drives shall have a maximum slope of 6.0%. With the exception of the Palmer Street entrance that will not exceed a maximum slope of 12 %

- Surface drainage swales are required as shown on the preliminary grading plan.
- Retaining walls or embankments as shown on the preliminary grading plan.

(grading plan)

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

# GRADING SPECIFICATIONS – RBTS DEALS

GRADING SPECIFICATIONS:     Building Pad

- Landlord shall be responsible for preparing the Building Pad sub grades to within plus or minus one-tenth of a foot as set by Circuit City's architect. Circuit City's sub grades are 8" below finished floor elevation.

- Compaction of the building pad shall be no less than ninety percent (90%) of the modified proctor soil test for water content and compaction levels (Modified Proctor) on the Land, so as to enable Circuit City to perform construction work necessary to provide improvements in accordance with the Plans and Specifications with standard spread footings and without the necessity of pilings or other extraordinary foundation work.

- All compacted areas of the Land shall be verified by an independent professional soils engineering test laboratory and a certificate from such independent laboratory indicating compliance with Landlord's Soils Report shall be furnished to Circuit city upon completion of the Site Delivery Work.

- The Building Pad soil shall have a minimum bearing capacity of 2,500 pounds per square foot, with a maximum differential settlement of ½" and a maximum total settlement of 1". Earth stabilization and/or replacement shall be preformed by the Landlord as necessary to meet this minimum requirement.

- During the preparation of the Building pad, Landlord shall it its expense have an independent professional soils engineering laboratory monitor and certify the preparation of the Building Pad in accordance with Landlord's soils Report. Landlord shall perform one in-place compaction test per 5,000 square feet of pad area per lift.

- All material, including native and fill, within five feet of the any surface of the Building including foundation concrete, shall be non-expansive with a plasticity index of 12 or less. The material shall also have a sufficient cohesion to stand vertical for three feet, No oversize material or lumps greater than 6" in diameter will be allowed and not more than 15% of the material shall be greater than 2 ½" diameter. Landlord must remove any existing rock within five feet of Circuit City's proposed foundation prior to pad delivery, so that construction of the Building can be completed without any rock excavation by Circuit City.

- The Civil Plans shall not be materially changed by Landlord without the prior consent of Circuit City, which consent shall not be unreasonably withheld or delayed.

- All out lots or future building areas shall be rough graded and planted with grass seed.

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

# UTILITIES SPECIFICATIONS – RBTS DEALS

Temporary Utilities:

Landlord will provide the following temporary utilities to the Staging Area (fence by Circuit City), in a location selected by Circuit City, no later than the date for completion of such temporary utilities set forth in the Construction Schedule (Attachment "2"):  All utility services shall be ordered and paid by Circuit City

- A ¾" water line with sufficient pressure that pumping is not necessary. If the 8" sprinkler main is already installed into the building, then the ¾" water line may be tapped onto the end cap.

- 200 amps, 1 phase, 4 wire, 120 volt electric power, with weatherproof and rainproof disconnect switch.

- Telephone service

Permanent Utilities:

Landlord will provide the following permanent utilities to within five (5) feet of the Building (unless notes otherwise below), at Circuit City's designated entry points as shown on this drawing. Paving shall not cover the stub points for these utilities. All utilities will be provided no later than the date set forth on the Construction Schedule (Attachment "2"):

- 2" Gas Service and Meter

- 4" Telephone Conduit

- 

- Secondary electric service to Circuit City's designated point of termination within the Building, adequate for a 600 amp panel  3-phase, and 277/480 volt service.

- Storm Sewer System to locations as shown on the Civil Plans

- 6" Sanitary Sewer line

- 2" Domestic Water line

- 8" fire protection water line with a minimum of 50 pounds per square inch residual pressure at 2000 gallons per minute flow, with sufficient capacity to service Circuit City's sprinkler system without the need for a fire pump, as approved by Circuit City's fire protection consultant. The line should be provided to Circuit City's designated point of termination within the Building. The line shall have a flanged and capped outlet located 12" above the finished floor and 18" from the pipe's centerline to the inside face of the exterior wall. The location shall be coordinated with Circuit City's sprinkler contractor and shall conform to the requirements of all authorities having jurisdiction.

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

# UTILITIES SPECIFICATIONS – RBTS DEALS



(floor plan)

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

# PAVING AND LIGHTING SPECIFICATIONS – RBTS

PAVING SPECIFICATIONS:    Parking Area and Roadway Surfacing

- Paving design shall be based on a design period of twenty (20) years for the traffic indices specified by the developers civil engineer approved by Circuit City and compensated by Landlord.

- All pavement design shall be subject to review and approval by Circuit City, and shall conform to the recommendations of Landlord's Soils Report.

- Heavy duty paving must be used in the main drives and service areas as required by Landlord's Soils Report.

PAVING SPECIFICATIONS:    Sidewalks and Curbs

- Landlord shall provide and install all curbs and sidewalks including perimeter curbs and sidewalks, except for the sidewalk directly in front of the Building.

- All sidewalks and curbs shall be constructed of concrete and shall have a minimum slope of 1.5% and a maximum slope of 3.0% away from the Building. All sidewalks and curbs shall be a minimum of four (4) inches thick, with a rough non-skid texture, over a suitable granular base or per the land lord's soils engineer recommendations. Salt finish is not acceptable.

- Entrance and access roads shall have six (6) inch curbs with eighteen (18) inch gutters. However, next to sidewalks and buildings when drainage is not a factor a straight six (6) inch curb without gutters shall be permitted. Parking lot islands and landscape enclosures shall have vertical type curbs. All curbs, and curb and gutters shall be concrete. Extruded asphalt curbing shall not be used.

| Site Design Requirements | | Reverse Build to Suit Deals | |
| --- | --- | --- | --- |
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

# PAVING AND LIGHTING SPECIFICATIONS – RBTS

SHOPPING CENTER LIGHTING SPECIFICATIONS:   Design Standards

- Landlord shall prepare and submit plans to Circuit City that show the photometrics, location and height of all light poles, type of fixtures, fixture shielding (if any), circuiting, and details of the complete lighting arrangement and equipment.

- Illuminations as measured at the pavement shall be:
  - Shall be in accordance with the city and tile 24 approved in 2005. No more than 3 foot candles average will be allowed thru out the building, parking lot and drive ways.

- Landlord shall allow Circuit City to illuminate the entry soffit to the maximum lighting levels in accordance with title 24..

- Twenty-five percent (25%) of the overall lighting shall be designated as security lighting, and shall remains on from dusk until dawn. The security lighting layout and pattern shall be subject to Circuit City's approval.

- Selection of fixture types for both the parking lot lights and the building facades shall be subject to Circuit City's review and approval prior to design and circuiting.

- Landlord shall install a seven-day time switch to control all parking lot lighting wired to a common house panel. All security lighting shall be placed on photo-cell switching.

- The control of parking area lights shall be accessible to Circuit City's local store management due to late-night and holiday sales.

(photometric plan)

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

## Attachment "2" – Construction Schedule

| Landlord's Tasks | Completion Date |
|---|---|
| **I SITE DELIVERY WORK** | |
| Landlord's delivery of the Civil Plans. | 11-30-07 |
| | N/A |
| Landlord's delivery of the Shell Plans and Specifications. | |
| Landlord's delivery of the Geotechnical Report and the Environmental Report. | 8-30-07 |
| Landlord's delivery of the Geotechnical Reliance Letter (Attachment "8") and the Environmental Reliance Letter (Attachment "9"). | TBD |
| Landlord's completion of the Site Work including delivery of the Site Work Certification (Attachment "3"); construction of staging area, all-weather construction access road and installation of temporary utilities. | 4/30/08 |
| **II ADDITIONAL LANDLORD'S WORK** | |
| Construction and installation of permanent utilities. | 6/30/08 |
| Construction and installation of paving, curbing, sidewalks, landscaping and exterior lighting. | 8/30/08 |
| Construction and installation of pylon and monument sign identifying the Shopping Center. | 8/30/08 |

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

## Attachment "3" – Site Work Certificate

To:     Circuit City Stores, Inc.
        Deep Run I
        9950 Mayland Drive
        Richmond, Virginia 23233
        Attention: Vice President-Construction

        Re:     Circuit City Store/[Location]

Ladies and Gentlemen:

        The undersigned, as Landlord has completed all Site Work and has caused "Delivery of the Land" to occur on _____, ____, all in accordance with the terms of the Site Design Requirements dated _____, ____. Specifically, the undersigned hereby certifies that:

* Grading of the Land and the Common Areas has occurred in accordance with the Site Design Requirements.

* Landlord has provided an independent soils engineer's written certification that all pad work was completed in accordance with the Soil Report, the Civil Plans, and Circuit City's Plans and Specifications. This report shall include the results of all compaction and other tests performed during the pad preparation phase, and any tests performed prior to the date of such certification. A copy of such certification shall be delivered to Circuit City's Vice President – Construction at Circuit City's address.

* Landlord has provided a surveyor's written certification stating that the Building Pad is at the prescribed elevation within the stated tolerance of plus or minus one-tenth of a foot. This certification shall be based upon an "as-prepared" survey that shall accompany such certification and shall show thereon elevation shots taken on a 50 foot grid minimum, including pad perimeter and building corners. Promptly upon completion of the Site Delivery Work, Landlord shall cause its surveyor to designate the corners of the Building Pad by means of standard surveying markers.

* The finished floor elevation is _____. The pad elevation is _____.

* The Staging Area has been completed.

* An all-weather construction access road to the Land no less than 24' in width has been prepared and is ready for use.

        All conditions precedent to issuance of your building permit has been satisfied by Landlord, and we certify that all elements of the Site Delivery Work and Delivery of the Land have been satisfied in accordance with the Site Design Requirements.

        LANDLORD:   _____,

                        a _____

By:     _____
Name:   _____
Title:  _____

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

## Attachment "4" – Floor Plan and Elevations

(to be attached)





page 15 of 28

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Alhambra, CA | Store #3826 | 11/26/2007 |

## Attachment "5" – Sign Plans and Specifications

(to be attached)