carrier, with proof of delivery slip, postage prepaid (a) to Landlord, at the address of Landlord as hereinabove set forth or such other address or persons as Landlord may designate by Notice to the other parties hereto, (b) to Tenant, to **Circuit City Stores West Coast, Inc.,** 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to **Circuit City Stores West Coast, Inc.,** 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and _____,
or such other address or persons as Tenant may designate by Notice to the other parties hereto, and (c) to Subtenant, at the address of Subtenant as hereinabove set forth or such other address or persons as Subtenant may designate by Notice to the other parties hereto. During the period of any postal strike or other interference with the mails, personal delivery shall be substituted for registered or certified mail. All Notices shall become effective only on the receipt or rejection of same by the proper parties.

       8.     No modification, amendment, waiver or release of any provision of this Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or binding for any purpose whatsoever unless in writing and duly executed by the party against whom the same is sought to be asserted.

       9.     This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, assigns and sublessees.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have caused this Recognition Agreement to be executed under seal the date first above written.

### LANDLORD:

**RAYMOND & MAIN RETAIL, LLC,**
a California limited liability company

By:    PINTAR INVESTMENT PROPERTIES CA, LLC
       a California limited liability company,
       Managing Member

       By:    Down Under Properties, Inc.,
              a California corporation
              Manager


              By:_____
                     Jeff Pintar, President

### TENANT:

**CIRCUIT CITY STORES WEST COAST, INC.**

By:_____
Name:_____
Title:_____

### SUBTENANT:

_____

By:_____
Name:_____
Title:_____

STATE OF _____ )
                              ) : ss.

COUNTY OF _____ )

       On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                    _____

                                    Notary Public

My Commission Expires:

_____

STATE OF _____ )
                               )

COUNTY OF _____ )

On _____ before me, _____, Notary Public, personally appeared _____, personally known to me, or proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (SEAL)
Notary Public Signature

STATE OF _____ )
                     ) : ss.
COUNTY OF _____ )

        On this ____ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                  _____

                                  Notary Public

My Commission Expires:

_____

**EXHIBIT J**

Subordination, Non-Disturbance and Attornment Agreement

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT
AGREEMENT, made as of the _____ day of _____, 200__, by and between
_____, a _____ **[corporation] [limited] [general]
[partnership] [national banking association]**, having an office at
_____ (the "Mortgagee") and **CIRCUIT CITY
STORES WEST COAST, INC., a California corporation**, having an office at, 9950 Mayland
Drive, Richmond, Virginia 23233 (the "Tenant").

W I T N E S S E T H:

WHEREAS, Mortgagee is the holder of a mortgage (the "Mortgage") covering a parcel
of land owned by Raymond & Main Retail, LLC, a California limited liability company (the
"Landlord") together with the improvements to be erected thereon (said parcel of land and
improvements thereon being hereinafter referred to as the "Shopping Center" and being more
particularly described on Exhibit A attached hereto and made a part hereof); and

WHEREAS, by a certain Lease Agreement heretofore entered into between Landlord and
Tenant dated as of _____, 2007 (the "Lease"), Landlord leased to Tenant a portion of
the Shopping Center, as more particularly described in the Lease (the "Premises"); and

WHEREAS, a copy of the Lease has been delivered to Mortgagee, the receipt of which is
hereby acknowledged; and

**[For mortgages existing as of the date Lease is executed**: WHEREAS, as an
inducement to Tenant to enter into the Lease, **[Section 2.04(f)/Section 19.02]** thereof provides
that the Lease is conditioned upon Landlord obtaining this Agreement from Mortgagee; and

WHEREAS, the parties desire to satisfy the foregoing condition and to provide for the
non-disturbance of Tenant by the holder of the Mortgage; and]

**[For mortgages occurring after the Lease is executed**: WHEREAS, Section 19.01 of
the Lease provides that the Lease shall become subject and subordinate to a mortgage
encumbering the fee interest of Landlord in and to the Shopping Center if and when a non-
disturbance agreement is entered into with respect to such mortgage; and

WHEREAS, the parties hereto desire to effect the subordination of the Lease to the
Mortgage and to provide for the non-disturbance of Tenant by Mortgagee.]

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and
agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as
follows:

1.      Mortgagee hereby consents to and approves the Lease and the term thereof,
including the options to extend the term as set forth in the Lease, and covenants and agrees that

the exercise by Tenant of any of the rights, remedies and options therein contained shall not constitute a default under the Mortgage.

2.     Tenant covenants and agrees with Mortgagee that the Lease is made and shall continue hereafter to be subject and subordinate to the lien of the Mortgage, and to all modifications and extensions thereof (and such subordination shall not lessen or diminish Tenant's rights under the Lease), subject, however, to the provisions of this Agreement.

3.     Mortgagee agrees that so long as the Lease shall be in full force and effect, and so long as Tenant shall not be in default under the Lease beyond any applicable notice and grace period:

(a)     Tenant shall not be named or joined as a party or otherwise in any suit, action or proceeding for the foreclosure of the Mortgage or to enforce any rights under the Mortgage or the bond or note or other obligation secured thereby;

(b)     The possession by Tenant of the Premises and Tenant's rights thereto shall not be disturbed, affected or impaired by, nor will the Lease or the term thereof be terminated or otherwise affected by (i) any suit, action or proceeding brought upon the Mortgage or the bond or note or other obligation secured thereby, or for the foreclosure of the Mortgage or the enforcement of any rights under the Mortgage, or by any judicial sale or execution or other sale of the Premises or the Shopping Center, or any deed given in lieu of foreclosure, or by the exercise of any other rights given to any holder of the Mortgage or other documents as a matter of law, or (ii) any default under the Mortgage or the bond or note or other obligation secured thereby; and

(c)     All condemnation awards and insurance proceeds paid or payable with respect to the Premises or any other part of the Shopping Center shall be applied and paid in the manner set forth in the Lease.

4.     If Mortgagee or any future holder of the Mortgage shall become the owner of the Shopping Center by reason of foreclosure of the Mortgage or otherwise, or if the Shopping Center shall be sold as a result of any action or proceeding to foreclose the Mortgage, or transfer of ownership by deed given in lieu of foreclosure, the Lease shall continue in full force and effect, without necessity for executing any new lease, as a direct lease between Tenant and the then owner of the Shopping Center, as "landlord", upon all of the same terms, covenants and provisions contained in the Lease, and in such event:

(a)     Tenant shall be bound to such new owner under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) and Tenant hereby agrees to attorn to such new owner and to recognize such new owner as "Landlord" under the Lease; and

(b)     Such new owner shall be bound to Tenant under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) which such new owner hereby agrees to assume and perform and Tenant shall, from and after the

date such new owner succeeds to the interest of "landlord" under the Lease, have the same remedies against such new owner for the breach of any covenant contained in the Lease that Tenant might have had under the Lease against Landlord if such new owner had not succeeded to the interest of "landlord"; provided, however, that such new owner shall not be:

(i)     liable for any act or omission of any prior landlord (including Landlord) unless such act or omission continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(ii)    subject to any defenses which Tenant may have against any prior landlord (including Landlord) unless resulting from any default or breach by such prior landlord which continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(iii)   subject to any offsets which Tenant may have against any prior landlord, except to the extent such offsets are expressly provided under the Lease and Mortgagee has received notice thereof and the opportunity to cure within the applicable time periods set forth in the Lease (it being further agreed that offsets under the Lease that were deducted by Tenant prior to the date upon which the new owner succeeds to the interest of such prior landlord shall not be subject to challenge);

(iv)    bound by any annual minimum rent or additional rent which Tenant might have paid for more than one month in advance of its due date under the Lease to any prior landlord (including Landlord), unless such additional rent is paid in accordance with the applicable provisions of the Lease; or

(v)     bound by any amendment or modification of the Lease made without its consent; notwithstanding the foregoing, Mortgagee acknowledges that the Lease specifically provides for amendments thereof upon the occurrence of certain events described in the Lease (such as, for example, an amendment to the Lease confirming the measurement of the Premises), and, by its execution below, Mortgagee agrees to recognize such amendments as part of the Lease, and Mortgagee further agrees that such new owner shall also be bound by such amendment(s) to the Lease, without any consent on the part of Mortgagee or such new owner.

(c)     Tenant's obligations hereunder shall be effective only so long as Mortgagee is bound to Mortgagee's obligations hereunder.

5.    Tenant will notify Mortgagee of any default by Landlord under the Lease which would entitle Tenant to terminate the Lease or abate the rent payable thereunder and agrees that notwithstanding any provision of the Lease, no notice of termination thereof nor any abatement shall be effective unless Mortgagee has received the aforesaid notice and has failed to cure the subject default within the same time period allowed Landlord under the Lease. It is understood that the abatement provisions of this Section relate to abatements by reason of Landlord's default and do not apply to provisions of the Lease whereby Tenant has the automatic right to abate rentals such as, for example, abatement upon casualty or condemnation.

6.    Neither the Mortgage nor any other security instrument executed in connection therewith shall encumber or be construed as subjecting in any manner to the lien thereof, any

trade fixtures, signs or other personal property at any time furnished or installed by or for Tenant or its subtenants or licensees on the aforementioned property regardless of the manner or mode of attachment thereof.

7.      Any notices of communications given under this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid, (a) if to Mortgagee, at the address of Mortgagee as hereinabove set forth or at such other address or persons as Mortgagee may designate by notice in the manner herein set forth, or (b) if to Tenant, to **Circuit City Stores West Coast, Inc.**, 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to **Circuit City Stores West Coast, Inc.**, 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and _____, or such other address or persons as Tenant may designate by notice in the manner herein set forth. All notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) at the address of the addressee.

8.      This Agreement shall bind and inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors, assigns, and sublessees.

9.      This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

10.     This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

**[to add if Tenant's memorandum of lease has been recorded prior to the subject mortgage]** NOTE: THIS AGREEMENT BY TENANT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL ANY PRIOR MORTGAGES ON THIS PROPERTY HAVE BEEN SATISFIED SO THAT TENANT'S PRIOR AGREEMENTS TO ATTORN TO SAID MORTGAGES AND/OR TO SUBORDINATE ITS LEASE TO SAID MORTGAGES SHALL HAVE BEEN EXTINGUISHED.

IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

-Signature Page Follows-

J-4

**MORTGAGEE**:

ATTEST:

_____

By:_____
Name:_____
Title:_____          By:_____
                                     Name:_____
[SEAL]                               Title:_____

**TENANT**:

ATTEST:                              **CIRCUIT CITY STORES WEST COAST, INC.**
By:_____
Name:_____
Title:_____          By:_____
                                     Name:_____
[SEAL]                               Title:_____

J-5

STATE OF _____ )
                              ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of **CIRCUIT CITY STORES WEST COAST, INC.**, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

STATE OF _____ )
                              ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

## EXHIBIT K

### Permitted Exceptions

1.  Water rights, claims or title to water, whether or not disclosed by the public records.

2.  An easement for the purpose shown below and rights incidental thereto as set forth in a document.

    Purpose:    Pipes
    Recorded:   In <u>Book 3270 Page 146</u> of Deeds
    Affects:    That portion of said land as described in the referred document.

3.  An easement for the purpose shown below and rights incidental thereto as set forth in a document.

    Purpose:    Poles
    Recorded:   <u>April 2, 1958 as Instrument No. 3109</u> of Official Records
    Affects:    That portion of said land as described in the referred document.

4.  An easement for the purpose shown below and rights incidental thereto as set forth in a document.

    Purpose:    Poles, guys and anchors, crossarms, wires cables
    Recorded:   <u>September 22, 1971 as Instrument No. 3065</u> of Official Records
    Affects:    That portion of said land as described in the referred document.

5.  A Disposition and Development Agreement dated November 23, 1987, between Alhambra Redevelopment Agency, a public body, corporate and politic and George B. Frey, terms as therein provided and recorded December 14, 1987 as Instrument No. <u>87-1972860</u>.

6.  Covenants, conditions and restrictions (but omitting any covenant or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law) as set forth in the document

    Recorded:    August 12, 1988 as Instrument No. <u>88-1275533</u>, of Official Records

7.  A resolution of the Alhambra City Council ordering the vacation of that certain public right-of way located within the boundaries of the site of the new car dealership located to the junction of Main Street, Vine Street and Palm Avenue, subject to permanent easements, right of ways and Restrictions, recorded August 15, 1988 as Instrument No. <u>88-1286708</u>, of Official Records.

8.  A resolution of the Alhambra City Council No. R-88-83 ordering the vacation of that certain public right-of-way located on Vine Street at Raymond Avenue within the

K-1

boundaries of the site of the new car dealership (Pontiac), subject to easements, rights-of-ways and Restrictions recorded December 22, 1988 as Instrument No. 88-2041389, of Official Records

9.  A certificate of completion for construction and development, executed by the Alhambra Redevelopment Agency recorded September 14, 1989 as Instrument No. 89-1481139, Official Records.

10. Any private easements or lesser rights in, to, or over the street, highway, or public service easement vacated as referred to below, that were not affected by the proceedings vacating said easement referred to below, including but not limited to private easements for ingress and egress over said land, such easements having been acquired by owners of other lots under conveyances which were made by reference to the map shown below.

  Map of:       Parcel Map No. 19698
  Recorded:     August 15, 1988  as Instrument No. 88-1286708 and December 2, 1988 as
                Instrument No. 88-2041389 both of Official Records
  Affects:      Main Street, Palm Avenue and Vine Street

11. Covenants, conditions and restrictions (but omitting any covenant or restrictions, if any, based upon on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law) as set forth in the document

  Recorded:     May 28, 2004 as Instrument No. 04-1376954, of Official Records

  Modification(s) of said covenants, conditions and restrictions

  Recorded:     March 19, 2007 as Instrument No. 07-614146, of Official Records

12. Covenants, conditions and restrictions (but omitting any covenant or restrictions, if any, based upon on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law) as set forth in the document

  Recorded:     October 12, 2006 as Instrument No. 06-2267470, of Official Records

13. Covenants, conditions and restrictions (but omitting any covenant or restrictions, if any, based upon on race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law) as set forth in the document

  Recorded:     March 19, 2007 as Instrument No. 07-614147, of Official Records

14.    A Deed of Trust to secure an indebtedness in the amount shown below, and any other
       obligations secured thereby

       Amount:          $8,270,000.00
       Dated:           March 16, 2007
       Trustor:         Raymond & Main Retail, LLC, a California limited liability company
       Trustee:         Commonwealth Land Title Insurance Company
       Beneficiary:     LaSalle Bank National Association
       Loan No.:        Not shown
       Recorded:        March 19, 2007 as Instrument No. 07-614148 of Official Records.

15.    An assignment

       Recorded:        March 19, 2007 as Instrument No. 07-614149, of Official Records

       of certain of the lessor's interests under leases referred therein, which assignment recites,
       among other things, that it is given as additional security for the Deed of Trust

       Recorded:        March 19, 2007 as Instrument No. 07-614148, of Official Records

16.    A financing statement filed with the office of the county recorder, showing

       Debtor:          Raymond & Main Retail, LLC, a California limited liability company
       Secured Party:   LaSalle Bank National Association
       Recorded:        March 19, 2007 as Instrument No. 07-614150, of Official Records

**EXHIBIT L**

<u>Memorandum of Lease</u>

[SEE ATTACHED]

**After Recording, Return to:**

**Circuit City West Coast Stores, Inc.**
9950 Mayland Drive
Richmond, Virginia 23233
Attention:  General Counsel

_____

(The Above Space for Recorder's Use Only)

   THIS MEMORANDUM OF LEASE, made as of December 10, 2007 by and between **RAYMOND & MAIN RETAIL, LLC,** a California limited liability company, having an office at 8395 Jackson Road, Suite F, Sacramento, California 95826 ("**Landlord**"), and **CIRCUIT CITY STORES WEST COAST, INC., a California corporation,** having an office at 9950 Mayland Drive, Richmond, Virginia 23233 ("**Tenant**").

Preliminary Statement

   Landlord is the owner of certain real property located in the City of Alhambra, State of California, as more particularly described on Exhibit A hereto annexed, together with improvements constructed or to be constructed thereon (the "**Shopping Center**").  Landlord and Tenant, as of the date hereof, have entered into a lease (the "**Lease**") demising a portion of the Shopping Center as more particularly described therein (the "**Premises**") to Tenant.  In connection therewith, Landlord and Tenant have entered into this Memorandum to confirm the demise of the Premises and to provide notice to any interested party of such demise and of the terms and provisions of the Lease.

   NOW, THEREFORE, the parties state as follows:

   1.  All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Lease.

   2.  The terms and conditions of the Lease are incorporated herein as though set forth in full, whereby Tenant may have and hold the Premises together with any and all rights, benefits, privileges and easements, now or hereafter appurtenant thereto, at the rental and upon the terms and conditions therein stated, for an initial term of approximately ten (10) years commencing on the Commencement Date (the "**Initial Lease Term**").  Under the terms of the Lease, Tenant has the right to extend the Initial Lease Term for four (4) separate and additional periods of five (5) years each after the expiration of the Initial Lease Term.

   3.  This Memorandum of Lease is executed for the purpose of recordation in order to give notice of all of the terms, provisions and conditions of the Lease, including, without limitation:

(a)     that, subject to certain exceptions more particularly set forth in the Lease, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center to be occupied, for the sale, rental, installation, servicing and/or repairing, either singly or in any combination, of consumer, office and/or automotive electronics products, including, without limitation, televisions, stereos, speakers, video and audio recorders and players and cameras; computer hardware and software and related software services (which include internet access services, entertainment software and entertainment media [such as, by way of example only, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment]); and, except as specifically provided in the Lease, cellular and wireless telephones and telecommunication devices and related accessories; motor vehicle audio, stereo and telephone systems; and technological evolutions of the foregoing;

(b)     the restrictions set forth therein on Landlord's ability to lease portions of the Shopping Center for certain uses which are otherwise prohibited by the terms of the Lease;

(c)     provisions set forth therein regarding Tenant's right to install and maintain signage upon the exterior of the Premises and upon a pylon and/or monument sign located at the Shopping Center;

(d)     provisions set forth therein regarding Tenant's right to use (and to permit Tenant's customers, employees, agents and contractors to use) certain common areas of the Shopping Center (such as, without limitation, the parking facilities of the Shopping Center); and

(e)     provisions set forth therein regarding certain areas in the Shopping Center in which no improvements are to be constructed, or changes made without the consent of the Tenant.

4.     In addition to those terms hereinabove set forth, the Lease contains numerous other terms, covenants and conditions which likewise affect not only the Premises but also the Shopping Center, and notice is hereby given that reference should be had to the Lease directly with respect to the details of such terms, covenants and conditions. The Lease and exhibits thereto are hereby incorporated by reference in this Memorandum of Lease and the parties hereby ratify and confirm the Lease as if said Lease were being re-executed by them and recorded. In the event of any conflict between the provisions of this instrument and the Lease, the provisions of the Lease shall control.

**IN WITNESS WHEREOF**, the parties hereto have executed this Memorandum of Lease as of the day and year first above written.

WITNESS/ATTEST:                          **LANDLORD**:

                                         **RAYMOND & MAIN RETAIL, LLC,**
                                         a California limited liability company

_____          By:  PINTAR      INVESTMENT      PROPERTIES
                                              CA, LLC, a California limited liability company,
                                              Managing Member

[SEAL}                                         By:   Down Under Properties, Inc.,
                                                     a California corporation
                                                     Manager


                                                     By:_____
                                                         Jeff Pintar, President



                                         **TENANT**:

WITNESS/ATTEST:                          **CIRCUIT CITY STORES WEST COAST, INC.,**
                                         **a California corporation**

_____          By:_____

[SEAL]

L-3

STATE OF _____ )
                               )
COUNTY OF _____ )


On _____ before me, _____, Notary Public, personally
appeared _____, personally known to me, or proved to me on the
basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.


WITNESS my hand and official seal.


_____ (SEAL)
                                            Notary Public Signature



STATE OF _____ )
                          ) : ss.
COUNTY OF _____ )

        On this ___ day of _____, 200__, before me personally came
[_____] to me known, who being by me duly sworn, did depose and say that he is
the [_____] of **CIRCUIT CITY STORES WEST COAST, INC.**, the
corporation described in and which executed the above instrument and that he signed his name
thereto by order of the Board of Directors of said corporation.


_____
                                            Notary Public

My Commission Expires:

_____

L-4

EXHIBIT A

Legal Description of the Shopping Center

## EXHIBIT M

### Indemnification Agreement

This INDEMNIFICATION AGREEMENT is made this _____ day of _____, _____, between **RAYMOND & MAIN RETAIL, LLC,** a California limited liability company (hereinafter referred to as "Landlord") and **CIRCUIT CITY STORES WEST COAST, INC.** (hereinafter referred to as "Tenant").

### W I T N E S S E T H :

Landlord and Tenant have entered into a Lease (the "Lease"), dated _____ whereby Landlord has leased to Tenant a portion of the real property located in the _____ Shopping Center, Alhambra, California (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Landlord Reimbursement as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.      Tenant hereby indemnifies and agrees to hold Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises and the Shopping Center as a result of Tenant's construction activities at the Shopping Center. In the event that any mechanic, materialman or other claimant makes claim against the Premises or Shopping Center based upon materials or services provided under contract with Tenant, Tenant shall defend and hold harmless and protect Landlord from any loss, payment, claim or expense related thereto.

2.      Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises or the Shopping Center by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure or by any other means, Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises and the Shopping Center. This indemnity and hold harmless shall not apply to any liens or claims caused by Landlord or Landlord's agents.

[SIGNATURES ON FOLLOWING PAGE]

M-1

EXECUTED this _____ day of _____, _____.

LANDLORD:

**RAYMOND & MAIN RETAIL, LLC,**
a California limited liability company

By:   PINTAR INVESTMENT PROPERTIES CA, LLC
        a California limited liability company,
        Managing Member

        By:   Down Under Properties, Inc.,
                a California corporation
                Manager


                By:_____
                        Jeff Pintar, President



TENANT:

**CIRCUIT CITY STORES WEST COAST, INC., a
California corporation**

By:_____
Name:_____
Title:_____

M-1

## EXHIBIT N

<u>Monument Sign Rendering</u>

SEE ATTACHED

Landlord and Tenant acknowledge and agree that the City of Alhambra's Design Review Board has approved the attached monument sign rendering, which included Tenant's then current prototypical sign panels as of the date of submission of such rendering to the City of Alhambra's Design Review Board.   In the event Tenant desires to modify its prototypical sign panels prior to the initial construction of the monument sign by Landlord and the installation of Tenant's sign panels thereon, Tenant shall be responsible for obtaining approval of such modifications from the City of Alhambra's Design Review Board and Landlord, which approval Landlord shall not unreasonably withhold, condition or delay.



Double Faced — Illuminated
MULTI TENANT MONUMENT SIGN

Plan View

Side View

Front View

Typical Multi Tenant Street Sign (2 Total)

Total Sign Area = 62 SF x 2 =124 SF
Total Tenant Sign Area = 4 SF x 8 = 32 SF

2121 Main Street
Alhambra, California

Master Sign Program

PANATTONI

**EXHIBIT N-1**

<u>Sign Program</u>

SEE ATTACHED

Landlord and Tenant acknowledge and agree that the City of Alhambra's Design Review Board has approved the attached Sign Program, which included Tenant's then current prototypical building signage as of the date of submission of the Sign Program to the City of Alhambra's Design Review Board.  In the event Tenant desires to modify its prototypical building signage prior to the initial installation of the building signage on the Premises, Tenant shall be responsible for obtaining approval of such modifications from the City of Alhambra's Design Review Board and Landlord, which approval Landlord shall not unreasonably withhold, condition or delay.

:4508281.9

# 2121 MAIN STREET

## Alhambra, California

Project of:

 PANATTONI®

PANATTONI DEVELOPMENT COMPANY
1640 S. Sepulveda Blvd. Suite 530, Los Angeles, CA 90025
310.268.7871

## MASTER SIGN PROGRAM

Prepared By:

PERKOWITZ + RUTH ARCHITECTS
111 West Ocean Blvd. Suite 2100, Long Beach, CA 90802
562.628.8000

Date: 8.13.07
Job No. 07.114.11

**2121 Main Street**
*Alhambra, California*

**Master Sign Program**    2.

🏛 PANATTONI°

## PREFACE

This document establishes guidelines and criteria for the design, implementation, and regulation of project identity and tenant signage as well as site signage and thematic graphics at 2121 Main Street in Alhambra, California.

The Owner/Developer may implement any or all of the sign types outlined herein in accordance with these criteria and subject to the approval of the City of Alhambra.

### Design Philosophy of the 2121 Main Street Sign Program

The 2121 Main Street sign program has been developed to identify The project's tenants and amenities as well as compliment the design of the architecture, and provide a smaller scale of detail and color that adds character to the project.

### Purpose and Intent

The signage and environmental graphics described in these guidelines have been designed to enhance the image of 2121 Main Street as an upscale shopping center. The design of all graphics has been carefully considered in relation to the site's architecture and landscaping, as well as to the specific context of the location of the project.

On a functional level, signage is provided for the identification of the center and its anchor tenants along highway and street frontages, as well as to meet the directional and identification needs of shoppers once they have entered the site.

### Objectives

The objectives of this Sign Guidelines are:

• To generate creative and tasteful signage that enhances the center's image and compliments architectural and landscape elements.

• To provide signage that is functional and effectively serves the identification needs of the shopping center and its tenants.

• To facilitate the review and approval process for signage by providing guidelines and criteria that constitute standards of acceptability for signs at the center.

### Enforcement

Conformity with this criteria will be enforced by the Owner/Developer. The sign code will be enforced by the City of Alhambra. The most restrictive criteria shall govern in the event of a conflict. Any non-conforming or unapproved sign will be brought into conformity at the expense of the Tenant.