## **EXHIBIT B**



# LEASE

THIS INDENTURE OF LEASE, made and entered into this.......27th....... 19.78..., by and between THRIFTY REALTY COMPANY, a California corporation ................day of.....October...............,

hereinafter called "Lessor", owner of the hereinafter demised premises, and THE AKRON, a California corporation, hereinafter called "Lessee",

## WITNESSETH:

That for and in consideration of the rental hereinafter reserved, and of the mutual covenants, agreements, and conditions hereinafter contained, Lessor does hereby lease, let, and demise unto Lessee, and Lessee does hereby take, accept, and rent from Lessor, those certain premises (hereinafter referred to as the "demised premises" or the "premises") situated in the City of..Los Angeles......, County of...Los Angeles................, State of...California......., now known as ~~a portion of~~ .4400 Sunset Boulevard .............................................................. and more particularly described in Schedule A attached hereto and made a part hereof and shown on a survey or plot plan attached to and made a part of said Schedule A, together with all easements, rights, and privileges in connection therewith or thereunto belonging.

This Lease is made for the term and upon the covenants and agreements hereinafter expressed, to-wit:

## ARTICLE I:  TERM

1.  The term of this Lease shall commence /(e) upon a date not later than sixty (60) days after the demised premises are ready for occupancy, or (b) upon such earlier date as the Lessee actually commences to do business in the demised premises. If Lessee's commencement of business in the demised premises shall be delayed by reason of governmental regulations, unavailability of material or labor, acts of God, strikes, lockouts, or other matters beyond Lessee's control which preclude Lessee from commencing to do business within said sixty (60) day period, the date of the commencement of the term of this Lease shall be postponed for a period equal to the duration of such delay. Provided, however, that if for any reason the term of this Lease shall not have commenced on or before.................. 19........, this Lease shall automatically and ipso facto terminate and no longer be of any force and effect. Nothing in the preceding sentence shall impair or affect the right of either party hereto to any remedy for breach by the other of any obligation under this Lease occurring prior to ~~such termination.~~

2.  ~~The demised premises shall be deemed ready for occupancy when the building~~ construction, reconstruction, remodeling, and installations to be made by Lessor, and the parking area, are fully completed in accordance with the provisions of Schedule B attached hereto and made a part hereof, and Lessor has notified Lessee in writing to ~~such effect.~~

3.  The term of this Lease shall, except as hereinafter provided, end at midnight on the 31st day of August , 19.79.... (See amendment #2)Sated 3.28.85

4.  ~~The Lessor agrees that if the demised premises are vacant the Lessee, at~~ any time prior to the beginning of the term of this Lease, may install therein its own fixtures and equipment and receive and store therein its merchandise and other property at its own risk, free from rent, provided the same does not interfere reasonably with the work being done in or to the building by the Lessor. Such use of the demised premises shall not be construed as acceptance or delivery of the premises under the terms and provisions of this Lease nor as a waiver of any of the provisions of this Lease. The Lessor further agrees that Lessee may move in and start to do business before said notice to Lessee even though the construction, reconstruction, remodeling, installations, or parking area are not fully complete, and this shall not constitute a waiver of Lessee's rights to have all such work fully completed in accordance with Schedule B. Such moving in shall not constitute an acceptance of the ~~demised premises.~~

## ARTICLE II:  RENTAL

1.  Lessee shall pay to Lessor as rental for the demised premises the sums provided for in Schedule C, paragraph 1 hereof. The rental for periods of tenancy of less than a month are to be calculated at a daily rate.

1

— I FASE —





2.   Whenever Lessee shall be prevented in whole or in part from the free, uninterrupted and unimpeded enjoyment of the use of the demised premises, and the fixtures therein, by reason of default of the Lessor, ~~or by any labor difficulty,~~ or by reason of Lessor's making any repairs, alterations, extensions or additions to the demised premises, and the fixtures therein, or the building of which the same are a part, or by reason of ~~condemnation~~ or by reason of any ~~casualty~~ or by reason of eminent domain proceedings, or by any taking or repair occasioned thereby, or by any other cause beyond the control of Lessee, then and in each and all such cases, Lessee shall be allowed an ~~abatement of rent~~ based upon the period during which such interrupted enjoyment shall continue.

3.   Payments of rental hereunder are to be made to Thrifty Realty Company
.............................................................................
at 9921 Rodeo Road, Los Angeles, California 90016
.............................................................................
or to such other person or corporation and at such other place as shall be designated in writing by notice given as provided in article XIX of this Lease, at least ten (10) days prior to the next ensuing rental payment date.

## ARTICLE III:  POSSESSION

1.   If the demised premises are not ready for occupancy by the 15th day of November......., 19.78..., and if Lessor has not given Lessee possession thereof by said date, Lessee may at any time thereafter declare this Lease null and void, or may, at its option and from time to time, postpone the date specified above to a later date.

2.   The Lessor agrees that possession of the demised premises shall not be deemed to have been given to Lessee unless the demised premises are free and clear of all tenants and occupants (other than the Lessee) and the rights of either, and also free of liens, encumbrances, and violations of laws, ordinances, and regulations relating to the use, occupation, and construction of the building on the demised premises which would interfere with Lessee's occupancy and use thereof. The taking possession of the demised premises shall not constitute an acceptance of the demised premises. As to any latent structural defect in the demised premises, or in the building of which the same are a part, Lessee may give notice thereof to Lessor at any time after the same shall have been discovered by Lessee, and thereupon Lessor shall repair such defect and any damage to the demised premises or to the fixtures therein caused thereby.

3.   The Lessor agrees that the Lessee, upon paying the rental and performing the covenants of this Lease, may quietly have, hold and enjoy the demised premises during the term hereof or any extension thereof.

4.   The Lessor covenants that as of the date hereof and the date of recordation of the Memorandum of Lease referred to in article XX hereof it has and will have good and marketable title to the Lessor's property in fee simple, or a leasehold interest therein for a term exceeding the term of the Lease herein, and as it may be extended, and that the same is and will be subject to no leases, subleases, tenancies, agreements, encumbrances, liens or defects in title, other than those specifically set forth in Schedule B attached hereto and made a part hereof.  The Lessor further covenants that there are no restrictive covenants, zoning or other ordinances, or regulations which will prevent the Lessee from conducting its usual business or any department thereof in the demised premises or which will prevent the Lessee from using the ground floor of the demised premises as one undivided sales area.

5.   ~~The Lessor agrees to furnish to the Lessee, without cost to the Lessee, proof by title policy or report that the Lessor's title to the Lessor's Property is in accordance with the covenants made by the Lessor in paragraph 4 of this article III.~~

6.   In the event the demised premises are subject to one or more mortgages or deeds of trust as of the date hereof, the Lessor agrees to furnish to the Lessee photostatic or certified copies thereof, together with an agreement or agreements subordinating each such mortgage or deed of trust to this Lease.

7.   Lessee covenants that it will execute an agreement subordinating this Lease to any mortgage or deed of trust subsequently placed upon the Lessor's Property, provided that prior thereto Lessor executes and procures execution by each and every such mortgagee or holder of a deed of trust of the said subordination agreement executed by Lessee which will incorporate, among other things, provisions to the following effect:

(a)   That the mortgagee or holder involved will at all times and under all conditions including but not limited to any foreclosure or other repossession proceedings, recognize, permit and continue the tenancy of Lessee or its permitted successors and assigns, on the Lessor's Property under the provisions of and for the then remaining term of this Lease.

(b)   That the mortgagee or holder involved will require that any purchaser or purchasers acquiring the Lessor's Property shall take said property subject to this Lease so that the rights of Lessee or those holding under Lessee shall not be interfered with or affected in any manner or means.

ARTICLE IV:  HOLDING OVER

1.  Lessee shall have the option to hold over beyond the expiration date of this Lease unless Lessor shall, at least thirty (30) days before said expiration date, have given Lessee notice of its intention to terminate this Lease on said expiration date.

2.  If such notice shall not be given and Lessee shall hold over, Lessee shall become a tenant from month to month upon the same terms as herein provided until the tenancy shall be terminated at the end of any month by the giving of at least thirty (30) days written notice by either party hereto to the other, stating the intention of the party giving such notice so to terminate the tenancy.

ARTICLE V:  USE OF PREMISES     * except for the selling of chicken, shrimp and fish
                                  which are prepared on premises.

1.  The demised premises may be used by the Lessee for the purpose of conducting a ~~grocery super market business~~ Lessee is hereby given the exclusive right and privilege on the Lessor's Property and upon any property owned or controlled by the Lessor adjacent to, or in the vicinity of the Lessor's Property and building, of conducting a retail department store business.  Lessor covenants and agrees with respect to said exclusive right and privilege not to permit any building or other improvement located within the aforesaid area to be used or occupied for the purpose of conducting a retail department store business.  Provided, however, that in no event shall this exclusive provision be construed to prohibit. A Pioneer Take Out.....
...Restaurant...............................................................situated on Lessor's Property from handling and selling any of the items which they customarily handle and sell.

2.  Lessee agrees that it will at all times conduct its said business on the demised premises in a lawful manner and in compliance with all governmental laws, rules, regulatings, and orders, and that Lessee will at its own cost and expense comply with all such governmental laws, rules, regulations, and orders as may be applicable to the business of Lessee conducted in the demised premises; provided, however, that this provision shall apply only to the manner in which Lessee conducts its business, and that any changes, alteration, improvements, or additions, structural or otherwise, to or of the demised premises or any part therof, which may be made necessary or required by reason of any law, rule, regulation or order, promulgated by competent governmental authority, shall be made by and at the sole cost and expense of Lessor, except as may be caused solely by Lessee's use of the demised premises.

3.  Lessee shall have the right to affix to and paint and inscribe ~~signs~~ upon the windows, doors, and transoms of the demised premises.  Lessor hereby confers upon Lessee the exclusive privilege of erecting signs on the canopy, roof and upon the exterior walls of the demised premises.  All permanent exterior signs shall be subject to Lessor's approval, which shall not be unreasonably withheld.  Lessor hereby approves Lessee's standard signs.  All such signs shall conform with all applicable local ordinances.

4.  Lessee covenants and agrees that it will not keep upon the premises any gasoline, distillate, or any kind of petroleum product for use for heating, lighting or other purposes, except as may from time to time be sold in its stores.

5.  Lessee shall have the right at any time within ten (10) days after any termination of this Lease to remove from the demised premises all merchandise, signs, fixtures, furniture, furnishings, partitions, and equipment owned by Lessee; provided, however, that Lessee repair any damage to the demised premises caused by any such removal.

~~~~~ ~~See Addendum & Exhibit 3 35 85~~

ARTICLE VI:  UTILITIES

1.  Lessee covenants to pay during the term hereof all metered electric, water, and gas charges in connection with its occupancy and use of the demised premises.  Lessor shall install, at its cost and expense, the necessary meters to measure Lessee's consumption of said services.

2.  If the demised premises are a part of a shopping center or an entire building containing general systems of electricity, water, and gas, sub-meters shall be installed at Lessor's expense to measure the consumption by Lessee, and Lessee shall pay for the electricity, water and gas which it uses upon the demised premises at the average rate for each such service as determined by the aggregate cost for the total consumption of each such service in the entire shopping center or building.

ARTICLE VII:  TAXES AND LIENS

1.  Throughout the term hereof all personal property taxes on the fixtures and equipment in the demised premises shall be assessed to and paid before delinquency by the ~~respective legal owners thereof~~.  All taxes and assessments of every kind and character whatsoever against the demised premises or the property of which the demised premises are a part shall be paid by Lessor prior to delinquency; provided, however,

3



that the taxes or assessments to be paid as aforesaid by Lessor shall not include any
tax payable by the Lessee as a condition of doing business, or any franchise tax or
license fee levied by the state in which the demised premises are located against or
upon Lessee, or any tax on any fixtures owned by the Lessee, or on any personal
property of Lessee, even though the same might from time to time be levied or charged
or become a lien against the demised premises.

2.    Lessee covenants that it will not, during the term hereof, suffer or permit
any lien to be attached to or upon the demised premises, or any portion thereof, by
reason of any act or omission on the part of Lessee, and hereby agrees to save and
hold harmless Lessor from or against any such lien or claim of lien.  In the event
any such lien does attach or any claim of lien is made against the demised premises
which may be occasioned by any act or omission upon the part of Lessee, and shall not
be released within fifteen (15) days after notice from Lessor to Lessee so to do,
Lessor in its sole discretion may pay and discharge the same and relieve the demised
premises from any such lien, and Lessee agrees to repay and reimburse Lessor, upon
demand, for or on account of any amount which may be paid by Lessor in discharging
such lien or claim together with interest at the rate of eight per cent (8%) per
annum from the date of the expenditure by Lessor to the date of repayment by Lessee;
provided, however, that if Lessee desires to contest the validity or correctness of
any such lien it may do so provided that it shall first furnish Lessor with a good
and sufficient bond indemnifying Lessor against any loss, liability or damages, on
account thereof.

3.    Lessor agrees that if it fails to pay any installment of taxes or assess-
ments or any interest, principal, costs or other charges upon any mortgage or deed of
trust or other lien or encumbrance affecting the demised premises and to which this
Lease may be subordinate when any of the same become due, or if Lessor fails to make
any repairs or do any work required of the Lessor by the provisions of this Lease, or
in any other respect fails to perform any covenant and agreement in this Lease con-
tained on the part of the Lessor to be performed, then and in any such event or
events, the Lessee, after the continuance of any such failure or default for fifteen
(15) days after notice in writing thereof is given by the Lessee to the Lessor, may
(but this shall not be deemed to impose an obligation upon Lessee so to do) pay said
taxes, assessments, interest, principal, costs and other charges and cure such defaults
all on behalf of and at the expense of the Lessor, and do all necessary work and make
all necessary payments in connection therewith including but not limiting the same to
the payment of any fees, costs and charges of or in connection with any legal action
which may have been brought, and the Lessor agrees to pay to the Lessee forthwith the
amount so paid by the Lessee, together with interest thereon at the rate of eight per
cent (8%) per annum, and agrees that the Lessee may withhold any and all rental
payments and other payments thereafter becoming due to the Lessor pursuant to the
provisions of this Lease or any extension thereof and may apply the same to the
payment of such indebtedness of the Lessor to the Lessee until such indebtedness is
fully paid with interest thereon as herein provided.  However, if Lessor desires to
contest the validity or correctness of any such lien it may do so, provided that it
shall first furnish Lessee with a good and sufficient bond indemnifying Lessee against
any loss, liability, or damage on account thereof.

ARTICLE VIII:  REPAIRS

                                     and exterior
1.    Lessee shall keep the interior/of the demised premises including the fixtures
and equipment in good condition and repair, excepting for obsolescence, ordinary
physical depreciation, ordinary wear and tear, and such repairs as under this Lease
Lessor is required to make.  If the demised premises be part of an entire center or
building containing general systems of electricity and plumbing, Lessee shall have no
responsibility for the same beyond the demised premises, nor for any portions thereof
running through, in, or across the demised premises but not serving the same.  Lessor
agrees to keep said general systems in repair so that the portions thereof which are
a part of and serve the demised premises will function properly if such portions be
kept in good condition and repair by Lessee.

2.    Lessor covenants that it will at its own cost and expense make all neces-
sary repairs to the ~~roof, canopies, gutters, down spouts and~~ structural portions ~~and
exterior walls~~ of the demised premises, ~~the structural portions of the building of
which the demised premises are a part,~~ the sidewalks and other common areas adjacent
thereto, the main line water, gas, wiring and public utility connections, and the
main line sewers, ~~and that it will also maintain the painting of the exterior walls
of the demised premises and the building of which the same are a part, and replace
all broken exterior plate glass~~ during the entire term of this Lease; and Lessor
covenants that it will promptly make and complete any such repairs and that it will
repair any and all damage to the demised premises which may result from its failure
to make the same within a reasonable time after being notified by Lessee that repairs
are needed.

3.    Lessor covenants that it will, at its own cost and expense, make any and
all repairs which may at any time be necessary by reason of any structural defects in

said building or by reason of dry rot or termites, and will repair any and all damage to the demised premises which may result from any such defects. Any addition, alteration or improvement, structural or otherwise, to or of the demised premises, or any part thereof, which may be necessary or required by reason of any law, rule, regulation or order promulgated by competent governmental authority shall be made by and at the cost and expense of the Lessor, unless caused solely by Lessee's use of the demised

4.    Lessor at all reasonable times shall have the right to post and keep posted on the demised premises the notices provided for by Section 3094 of the California Civil Code, or statutes of a similar nature of the state in which the demised premises are located, which Lessor may deem to be necessary for the protection of Lessor and said property from mechanics' liens or liens of a similar nature.

5.    Lessee shall have the right at any time to make such alterations, additions, changes or improvements, in or to the premises hereby demised, as Lessee may deem necessary or proper, (including; but without in any way limiting the generality of the foregoing language, the installation of trade fixtures, equipment, and partitions required or used from time to time in or in connection with Lessee's business in the demised premises); provided always, that no work done by Lessee shall add to or subtract from the length, width, or height of said building, or substantially affect the structural strength of said building; and provided further, that Lessee shall pay promptly for all such work done by it or upon its order. Nothing herein contained shall be construed to require Lessee to make or pay for any repair, alteration, improvement, or addition, or to do any other act or thing which Lessor is required to make or do under any provision of this Lease, or which is required or becomes necessary at any time because of any failure of Lessor to perform any of its obligations hereunder.

6.    Lessor hereby reserves the right for itself or its duly authorized agents and representatives at all reasonable times during business hours of Lessee to enter upon the demised premises for the purpose of inspecting the same or to show the same to any prospective purchaser, and for the purpose of making any necessary repairs to or upon the building of which the demised premises are a part, but such right shall be exercised reasonably and so as to cause the least possible inconvenience to Lessee, and so as not to unreasonably interfere with its business.

7.    With respect to any repairs to the demised premises and to the building of which the same are a part which the Lessor is required to make, Lessor covenants that the same shall be made with reasonable dispatch and in such a manner and at such times as to cause the least possible inconvenience to Lessee in the conduct of its business, and that Lessor shall not enter upon the demised premises for the purpose of making such repairs if the same can be done without entry upon the demised premises and that if said repairs can be made outside of business hours without substantial additional cost to Lessor, they will be so made, unless Lessee requests that they be made during business hours.

8.    Lessee shall, at the end of the term hereof, or of any extension thereof, surrender the demised premises together with any personal property therein belonging to Lessor, and alterations made thereto, in good order, repair, and condition, except for damage caused by obsolescence, ordinary physical depreciation, or ordinary wear and tear, and except for the matters and things which Lessor is required to do or repair under this Lease.

9.    This Article VIII is subject and subordinate to Article IX of this Lease.

ARTICLE IX:   DESTRUCTION BY FIRE, ETC.

1.    If the demised premises, or the building of which they are a part, shall be destroyed or damaged from any cause other than ordinary wear and tear, physical depreciation or obsolescence, Lessor shall forthwith, with ordinary rebuild the same with all reasonable dispatch and diligence including restoration and repair of all fixtures and equipment in the demised premises owned by Lessor and so damaged or destroyed and, after repair, restoration, and rebuilding, Lessor shall give possession to the Lessee of the same space in said building as is herein demised, without diminution or change of location.

2.    The Lessor agrees that if any federal, state or municipal government or any department or division thereof has or hereafter shall condemn the demised premises or any part thereof as unsafe or as not in conformity with the laws and regulations relating to the use, occupation and construction thereof, or has ordered or required or shall hereafter order or require any rebuilding, alteration, or repair thereof, the Lessor shall immediately at Lessor's own cost and expense perform or make such alterations and repairs as may be necessary to comply with such laws, orders or requirements. All rebuilding, altering and repairing required by this Article IX shall be made in accordance with plans and specifications approved by the Lessee in writing.

3.    Anything in this Article IX to the contrary notwithstanding, if, by reason of any of the causes referred to in paragraph 1 hereof, the demised premises or the building of which the same are a part shall be destroyed or damaged at any time prior to the last twenty-four (24) months of the term hereof and cannot be completely

restored within a period of one hundred twenty (120) working days from and after the date upon which such repairs if commenced could be completed, or if such damage or destruction occur during the last twenty-four (24) months of the term hereof and the demised premises or the building of which the same are a part cannot be completely restored within a period of sixty (60) working days from and after the date upon which such repairs if commenced could be completed, this Lease ~~may be terminated~~ upon written notice ~~being given~~ to Lessor. Upon such termination Lessee shall be relieved from all liabilities hereunder except the liability to pay rent up to the date of such damage or destruction and any accrued charges, costs, and expenses required to be paid by Lessee hereunder. Any dispute under this paragraph shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

4.    The Lessor agrees that should it demolish, construct, reconstruct, alter or repair the building on the demised premises or any part thereof by contract or other- wise it will comply with all federal, state and local laws, ordinances and regulations relating to conditions of employment and hours of labor, and where possible, Lessee may require the employment of only union labor. If the Lessor shall breach this covenant and the Lessee shall be damaged as a result thereof then, and in that event, the Lessor agrees to pay to the Lessee the amount of such damage within thirty (30) days after written demand therefor shall have been served on the Lessor by the Lessee.

ARTICLE X:    ~~INSURANCE~~

1.    Lessee agrees that it will at all times during the term of this Lease maintain in force an insurance policy or policies which will insure Lessor against liability for bodily injury to persons or damage to property occurring on the demised premises, the limits of liability under such insurance to be not less than Three Hundred Thousand Dollars ($300,000) for any one person injured, Five Hundred Thousand Dollars ($500,000) for any one accident, and One Hundred Thousand Dollars ($100,000) for property damage.

2.    ~~Lessee~~ acquire, pay premiums for and in force ~~fire insurance~~ with extended coverage endorsement attached, to the extent of at least ninety per cent (90%) of the full insurable replacement value thereof on the building of which the demised premises are a part, and on all fixtures and equipment therein ~~of which Lessor is legal owner~~ in good and solvent insurance companies. The policies evidencing such insurance shall, by endorsement or otherwise, provide that the proceeds of such insurance shall be deposited with the first mortgagee or holder of a first deed of trust if it be an institutional lender named in a loss payable endorsement attached to the policy or, in the absence of such attachment, in any bank or trust company agreed on by Lessor and Lessee, to constitute a trust fund for the repair, restoration, and rebuilding as provided in Article IX of this Lease, to be withdrawn only on architect's certificates to pay for such work of repair, restor- ation, and rebuilding. The provisions of this paragraph shall not be deemed to prevent the attachment of the usual form of mortgagee clause to any fire insurance policy carried by the Lessor on the demised premises.

3.    ~~Lessor and Lessee each hereby release the other,~~ its officers, and employees, and waive any claim against the other, its officers, and employees, for damages to or destruction of each other's property, real or personal, including adjacent property and consequential loss or damage, caused by fire or any risk enumerated in a standard form of fire insurance policy and extended coverage endorsement, whether due to the negligence of either Lessor or Lessee, or otherwise. ~~Lessee agrees that it will have a provision substantially as follows inserted by endorsement or otherwise in any or all fire and other insurance policies maintained by Lessor on the Lessor's Property and on the building of which the demised premises are a part, and on the fixtures and equipment owned by Lessor therein: "Any rights of subrogation which this insurance company may have against The Akron, its officers, or employees is hereby waived."~~

4.    If Schedule A of this Lease provides Lessee and others with common use of designated parking areas, sidewalks, malls, and other ~~common areas~~, ~~Lessee~~ agrees that it will at its cost and expense throughout the term of this Lease maintain in force insurance, which shall be primary and non-contributing with any insurance maintained by Lessee, to ~~insure Lessor~~ against liability for bodily injury to persons or damage to property occurring in or about said common areas, the limits of liability under such insurance to be not less than Three Hundred Thousand Dollars ($300,000) for any person injured, Five Hundred Thousand Dollars ($500,000) for any one accident, and One Hundred Thousand Dollars ($100,000) for property damage.

5.    ~~Lessee may self-insure~~ for the amount of any insurance required to be carried under Article X, (a) under any plan of self-insurance which it may from time to time have in force and effect provided it furnishes upon request evidence satis- factory to Lessor and to Lessor's lender of the existence of an insurance reserve adequate for the risks covered by such plan of self-insurance, or (b) under a blanket policy, or policies, covering other liabilities of Lessee and its subsidiaries, controlling or affiliated corporation, or (c) partly under such a plan of self-

*and an appropriate premium may be established for purposes of recovery
under Schedule "C", Paragraph 1(f).

insurance and partly under such blanket policies. Any portion of any risk for which
Lessee is self-insured shall be deemed to be an insured risk under this Lease/*

6. ~~Lessor and~~ Lessee shall ~~each~~ cause to be issued to/~~the Lessee~~, at any time
upon request, appropriate certificates of insurance evidencing compliance with the
foregoing covenants. Such certificates shall provide that if the insurance is can-
celled or materially changed during the policy period, the insurance carrier will
make every effort to notify in writing the/~~party to whom such certificate is ad-~~
~~dressed~~ ten (10) days prior to the effective date of cancellation or material change.

### ARTICLE XI:   ASSIGNMENT AND SUBLETTING

1.   Lessee shall not have the right except as hereinafter provided, to assign or
sublet the demised premises or any part thereof without the previous written consent
of the Lessor first had and obtained, which consent shall not be unreasonably withheld.

2.   This Lease binds, applies to and inures to the benefit of, as the case may
require, the heirs, executors, administrators, successors, and assigns of the Lessor
and the successors and assigns of the Lessee.

### ARTICLE XII:   EMINENT DOMAIN

1.   In the event of the commencement or prosecution during the term of this
Lease of any proceedings in eminent domain affecting the demised premises or any part
thereof, Lessee shall not claim or be entitled to and hereby waives all right to any
damages or compensation which may be be awarded in any such proceedings on account of
the demised premises or any part thereof, or the Lessee's interest therein, or on any
other account, and shall assign, upon written demand of the Lessor, the right to any
such damages or compensation to Lessor, provided, however, that in such event Lessor
shall, at its own expense, immediately restore said demised premises, the building of
which they are a part, and the fixtures and equipment installed by Lessor, to their
original condition as near as may be, and there shall be included in the cost thereof
the reasonable expenses necessarily incurred by Lessee in refitting, remaking, and
rearranging its fixtures, furniture, and equipment by reason of any such proceeding.

2.   However, in the event proceedings in eminent domain affect or would affect
the entire demised premises, or so large a portion of the floor area that it would be
impossible for Lessee to conduct its retail business therein in a manner similar to
that in the majority of its stores, then paragraph 1 herein shall become null and
void and Lessee shall retain its leasehold interest in the demised premises, and all
rights to damages or compensation which may be awarded in any said proceeding in
connection with said leasehold interest.

3.   In the event that through one or more such proceedings either the floor
area common and parking area, or the frontage of the Lessor's Property or the demised
premises shall be reduced by ten per cent (10%) or more, Lessee shall have the option
(exercisable by written notice to Lessor at any time within thirty (30) days after
the taking of possession under any such proceeding) to~~ terminate~~ this Lease forthwith,
and all of Lessee's obligations hereunder shall thereupon cease to exist. If the
Lessor's Property or the demised premises be on a corner, the foregoing shall apply
to both or either street frontage.

### ARTICLE XIII:   ATTORNEY FEES

1.   In the event either party hereto brings or commences legal proceedings to
enforce any of the terms of this Lease, the successful party in such action shall
then be entitled to receive and shall receive from the other of said parties, in
every such action commenced, a reasonable sum as attorney's fees and costs, to be
fixed by the court in the same action.

### ARTICLE XIV:   PERMITS AND LICENSES

1.   Lessor hereby irrevocably constitutes and appoints Lessee its attorney-in-
fact with full power of substitution to apply for and secure any building permit or
permission of any duly constituted authority for the purpose of doing any of the
things which Lessee is required or permitted to do under the provisions of this
Lease. Before exercising any authority to act for the Lessor as attorney-in-fact
hereunder, Lessee shall give written notice thereof to the Lessor and shall specify
in said notice the act or actions intended to be taken under such authority.

2.   Without limiting the foregoing authorization and appointment, Lessor agrees
that, in all such cases, and whenever and as often as requested so to do by Lessee,
Lessor will in its own name apply for and secure any such permit or license.

3.   Lessee agrees to indemnify and save harmless Lessor from loss or damage by
reason of any appointment or authority granted in this Article XIV or by reason of
any such application or consent.

ARTICLE XV:  EXTENSION

1.  Lessor shall have the right to extend the term of this Lease upon the same terms, covenants, and conditions as herein contained, and at the same rental as herein reserved, for/four (4) additional consecutive periods of/five (5) years each from and after the expiration date hereof, by giving Lessee notice in writing at least six (6) months prior to such expiration date, and prior to each such extended expiration date, notifying Lessee of Lessor's intention to so extend said term.

2.  Whenever Lessee shall be prevented in whole or in part from the free, uninterrupted, and unimpeded enjoyment of the use of the demised premises and the fixtures therein by reason of default of the Lessor, or by reason of Lessor's making any repairs, alterations, extensions, or additions to the demised premises, the fixtures therein, or the building of which the same are a part, or by reason of condemnation, or by reason of any casualty, or by reason of eminent domain proceeding, or by any labor difficulty, or any taking or repair occasioned thereby, or by any other reason beyond the control of Lessee, then, and in each and all of such cases, Lessee shall have the right of extension (as hereinafter defined), which right shall be cumulative and additional to any other rights given in such cases by this Lease or the law. The right of extension shall give Lessee the option (to be exercised at least ninety (90) days before the conclusion of the term) to add any such period or periods of loss of such enjoyment, or the aggregate of all such periods, to the term of this Lease and to extend the same to January 31st next following the termination of such period or periods or aggregate thereof. If any of the matters and things enumerated in the first sentence of this paragraph occur during the last year of the term, and materially interfere with Lessee's enjoyment of the demised premises, Lessee may terminate this Lease at any time within thirty (30) days after such interference.

ARTICLE XVI:  BANKRUPTCY

1.  If Lessee be adjudicated a bankrupt, or seeks any relief under bankruptcy laws, voluntary or not, or makes a general assignment for the benefit of creditors, or if any receiver of Lessee, or any sheriff, marshal, constable, or keeper takes possession of the demised premises by virtue of any appointment of such receiver by a court of competent jurisdiction or by virtue of any attachment or execution against Lessee, and if the premises are not released from the possession of such receiver, sheriff, marshal, constable, or keeper, and restored to the possession of Lessee within thirty (30) days after the taking of such possession, such adjudication, assignment, appointment, or action shall constitute a default by the Lessee as provided in Article XVII of this Lease, and shall give Lessor only the same right and remedy as provided in Article XVII.

ARTICLE XVII:  LESSEE'S DEFAULT IN RENT

1.  Should default be made in the payment of any of the rent to be paid hereunder as and when the same becomes due, then Lessor may, at its option, in addition to any other right provided for by law, terminate and cancel this Lease, and re-enter and take possession of the demised premises, remove Lessee's property therefrom, and place the same in storage in a public warehouse at the expense and risk of Lessee. Notwithstanding the foregoing sentence, no right or remedy of Lessor shall be exercise until failure of Lessee to cure such default for fifteen (15) days after receipt of written notice from Lessor, specifying in detail such default.

ARTICLE XVIII:  OTHER DEFAULTS BY LESSEE

1.  It is mutually agreed that if the Lessee shall be in default in the performa of any of the terms or provisions of this Lease, other than in the payment of rent, and if the Lessor shall give to the Lessee notice in writing of such default, specifyi the nature thereof, and if Lessee shall fail to cure such default within thirty (30) days after the date of receipt of such notice, or in case the default is of such a character as to require more than thirty (30) days to cure, then if Lessee shall fail to use reasonable diligence in curing such default, then and in any such event the Lessor may cure such default for the account of and at the cost and expense of the Lessee, and the sum so expended by the Lessor shall be deemed to be additional rent and shall be paid by the Lessee on the day when rent shall next become due and payable.

2.  In no event shall such defaults be the basis of a forfeiture of this Lease or otherwise result in the eviction of the Lessee or the termination of this Lease.

ARTICLE XIX:  NOTICES                    *see amend. 2*

1.  Any notices, demands, and the like, which are required to be given hereunder or which either party hereto may desire to give to the other shall be given in writing by mailing the same by certified United States mail, return receipt requested, postage prepaid, addressed to the Lessor at the address shown in paragraph 3 of Article IX hereof, or to Lessee, ~~at 3435 Wilshire Boulevard, Los Angeles~~, California 90010, attention of the President or Secretary of the corporation, or to such other addresses as the respective parties may from time to time designate by notice given as provided in this Lease.

2.  If the Lessor be more than one person, notice by Lessee or payment by Lessee to any one of them is notice or payment to all.  If the Lessor be more than one person, Lessee may act on notice from any Lessor, and in the case of conflicting notices may recognize any one of them as valid and disregard the others, but Lessee may treat any notice in any case as of no effect unless signed by all Lessors.  If Lessor be a partnership or corporation, Lessee may act on any notice given by any officer or agent of such corporation or of such partnership, or of any partner in such partnership, but may treat any notice in such case as of no effect unless signed by the President or a Vice-President of the corporation or a partner in the partnership.

ARTICLE XX:  MEMORANDUM OF LEASE

1.  Concurrently herewith the parties have executed a Memorandum of Lease for recording.  This Lease and such Memorandum of Lease shall be construed together as one instrument.  Lessor shall not record this Lease or permit the same to be recorded without the written consent of Lessee.

ARTICLE XXI:  MISCELLANEOUS PROVISIONS

1.  Whenever in this Lease any words of obligation or duty regarding either of the parties are used, such words shall have the same force and effect as though in the express form of covenants.  Whenever appropriate from the context, the use of any gender shall include any other or all genders, and the singular number shall include the plural, and the plural shall include the singular.

2.  The captions heading the various articles of this Lease are for convenience and identification only, and shall not be deemed to limit or define the contents of their respective paragraphs.

3.  No waiver of any breach of any of the covenants, agreements, or provisions herein contained shall be construed as a waiver of any subsequent breach of the same or any other covenant, agreement or provision.

4.  Lessee may make any payment or give any notice to Lessor, despite any succession or assignments, and be protected in so doing, until it has written notice from Lessor or in case of Lessor's death, if he be a natural person, from his executor or administrato together with a certified copy of letters testamentary or letters of administration.  If there be conflicting claims to money payable by Lessee under this Lease, or reasonable doubt as to whom the money is payable, Lessee may discharge its obligation to pay by depositing such money in any bank or trust company in Los Angeles County, California, to abide the litigation of any such matters, but Lessee need not recognize any such adverse claims, and may pay the money to Lessor.
All sums payable hereunder by either party to the other are payable in lawful money of the United States of America.

5.  The Lessor agrees to pay all fees and commissions due for bringing about the execution and delivery of this Lease, and agrees to indemnify the Lessee and save the Lessee harmless of and from any and all claims for such fees and commissions.

6.  This Lease and such Memorandum of Lease are the only agreements between the parties hereto.  All negotiations and oral agreements acceptable to both parties are included herein.



7.  The following schedules are attached hereto and by this reference made a part hereof.

Schedule A, Description of Property
~~Schedule B, Building~~
Schedule B, Mortgages, Encumbrances, Etc.
Schedule C, Rental Payment and Other Amendments

IN WITNESS WHEREOF, the parties hereto have executed this Lease the day and year first above written.

LESSOR:

THRIFTY REALTY COMPANY

By _____
(Name & Title)        Chairman of the Board

_____
(Name & Title)                  Secretary

_____
(Name & Title)

_____
(Name & Title)

THE AKRON

                                    LESSEE

By _____
                      Chairman of the Board
By _____
Executive Vice President and Treasurer

10



ATTACHMENT TO SCHEDULE "A"

# SCHEDULE A

Attached to and forming a part of that certain Indenture of Lease and Memorandum of
Lease executed under date of..October 27, 1978......., by and between
THRIFTY REALTY COMPANY,

as Lessor, and THE AKRON, as lessee.

## DESCRIPTION OF PROPERTY

1. **Lessor's Property.** The demised premises are a portion of Lessor's entire
property, situated in the City of..Los Angeles..., County of..Los Angeles.............,
State of..California......., and now commonly known as..4400 Sunset Boulevard......
...................................................................................
Such property, herein referred to as "Lessor's Property", means the entire property
within the outer property limits shown on the Plot Plan initialed by the parties
hereto, dated....October 11, 1978....., attached hereto, and made a part hereof. The
legal description of Lessor's Property is set forth in Paragraph 6 of this Schedule
A.

2. ▓▓▓▓▓▓ Lessor's Property provides a site for a store building in the
location designated "Akron" on the said Plot Plan attached. Such building is now
~~thereon~~ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
irregular outside dimensions and a total square footage of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ sq.ft.
Said building site, building, improvements, and appurtenances, and fixtures and
equipment owned by the Lessor, now ~~or hereafter~~ located thereon are collectively
referred to in this Lease as the "premises" or "demised premises."

3. **Parking.** Lessee, its agents, employees, patrons and invitees, in common
with Lessor and all other lessees of portions of Lessor's Property and their respec-
tive agents, employees, patrons, and invitees shall have and are hereby granted,
during the entire term of this Lease and any extension thereof, the free, uninter-
rupted, and non-exclusive use of the sidewalks, malls, roadways, parking area, and
all other common areas, which use by all users shall be for the purposes of ingress,
egress, service, utilities, and parking, and which parking area shall consist of not
less than..▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ located as shown on the said Plot Plan
attached. It is specifically understood and agreed that Lessee shall have no obli-
gation or liability whatsoever in connection with the ownership, maintenance, or
management of the sidewalks, malls, roadways, parking area, or other common areas
involved, and that Lessor shall manage, operate and maintain all such common areas,
or cause the same to be done on its behalf, at no additional cost to Lessee.

4. **Plot Plan.** It is understood and agreed that no changes from that shown on
the Plot Plan attached shall be made to the building area and/or the parking and
other common areas of Lessor's Property and no buildings or building-type structures
may be built except within the building areas or areas for building designated there-
on, except by written amendment to this Lease, duly executed by the parties hereto.

5. **Covenants.** All of the covenants of the Lessor contained in this Lease
shall be covenants running with the land pursuant to applicable law, including, but
not limited to, Section 1469 of the California Civil Code, or statutes of a similar
nature. It is expressly agreed that each covenant to do or refrain from doing some
act on the Lessor's Property or any part thereof (a) is for the benefit of the de-
mised premises and each person having any leasehold interest therein derived through
the Lessee, and (b) shall be binding upon each successive owner, during his owner-
ship, of any portion of the land affected thereby and each person having any interest
therein derived through any owner of the land affected hereby.

6. **Legal Description of Lessor's Property:**

**PARCEL 1:** Lot 1 of Tract No. 22471, in the City of Los Angeles, County of Los Angeles,
State of California, as per map recorded in Book 716, Pages 87 and 88 of Maps, in the
Office of the County Recorder of said County.

**PARCEL 2:** The Southernmost portion of Lot 29, Grider and Hamilton's Olive Place in the
City of Los Angeles, County of Los Angeles, State of California, as per map recorded in
Book 15, Pages 182 and 183 of Maps in the Office of the County Recorder of said County,
which portion is rectangular in shape, lying in the southernmost portion of said lot and
measuring in a north and south direction 90 feet, and measuring in an east and west
direction 46.80 feet.

PARCEL 3:  Lots 40, 41, 42 and 43 of Grider and Hamilton's Olive Place, in the
City of Los Angeles, County of Los Angeles, State of California, as per Map recorded
in Book 6 Page 20 of Maps, in the Office of the County Recorder of said County.

EXCEPT THEREFROM those portions of said Lots included within the present lines of
Sunset Boulevard.

ALSO EXCEPT THEREFROM that portion of said Lot 43, described as follows:

Beginning at the most Southerly corner of said Lot 43; thence along the Southwesterly
line of said Lot 43, North 17° 35' 30" West 19.38 feet to the true point of beginning;
thence continuing along the said Southwesterly line, North 17° 35' 30" West, 38.98 fee
thence at right angles to said Southwesterly line, North 72° 24' 30" East, 0.35 of a
foot; thence Southeasterly in a direct line to a point distant North 72° 24' 30" East,
0.80 of a foot from the true point of beginning; thence parallel with said Southwester
line, South 17° 35' 30" West, to the Southeasterly line of said Lot 43; thence South-
westerly along said line to the most Southerly corner of said Lot 43; thence along said
Southwesterly line of said Lot 43, North 17° 35' 30" West, 19.38 feet to the true poin
of beginning.



# SCHEDULE B

Attached to and forming a part of that certain Indenture of Lease executed under date
of .........October 27, 1978.........................., by and between THRIFTY REALTY COMPANY,

as Lessor, and THE AKRON, as Lessee.

## MORTGAGES, ENCUMBRANCES, ETC.

The following constitutes all of the liens, encumbrances, and violations of laws,
ordinances, and regulations relating to the use, occupation, and construction of the
building on the demised premises:

N O N E

 

# SCHEDULE C

Attached to and forming a part of that certain Indenture of Lease executed under
date of .... October 27, 1978 ........................................, by and between THRIFTY REALTY COMPANY

as Lessor, and THE AKRON, as Lessee

## RENTAL PAYMENT AND OTHER AMENDMENTS

1. Addition to ARTICLE II, RENTAL, Paragraph 1:

(a) Lessee agrees to pay to Lessor as rental for the demised premises commencing with
the Lease commencement date provided for in Article I, Paragraph 1 hereof, a sum of money
equal to two and one-half percent (2½%) of the receipts from gross sales, as herein-
after defined, derived from the business conducted on the demised premises, whether
conducted by Lessee, or by a sublessee or sublessees, or by a concessionaire or conces-
aires.

(b) The term "receipts from gross sales", as used herein, is hereby defined as the
amount of gross sales made upon credit or for cash upon the demised premises, plus the
gross compensation or consideration received or receivable for services rendered to
customers in the conduct of the business upon the demised premises, but less the
following:  (i) the purchase price of all returned merchandise, the purchase price of
which is returned or credited to the purchaser, (ii) the amount of tax payable by reason
of such sales or services to the State of California in accordance with the existing
California Sales Tax Law, or any amendment thereto, or payable under any other tax law
taxing according to sales, now in effect or which may hereafter be adopted by duly
constituted governmental authority, where such taxes are both added to the selling price
(or absorbed therein) and paid to the taxing authorities by Tenant (but not by any
vendor of Tenant), and provided further that goods or merchandise which is delivered to
another store of Lessee, or to a warehouse of Lessee, shall not be treated as sales in
those cases where delivery of goods or merchandise are made solely for the convenient
operation of the business of Lessee and not for the purpose of consummating a sale which
has theretofore been made at, in, from, or upon the demised premises.

(c) Lessee covenants and agrees to keep true and accurate records of account showing all
receipts derived by it from gross sales on the demised premises, and to accompany each
rent payment with a statement covering such receipts during the preceding calendar month.
No inadvertent mistake by Lessee in the preparation of such statements shall be deemed
to be a breach of any covenant of this Lease.  Lessor is hereby given permission to
inspect personally, or by its authorized agent or representative, all pertinent original
sales books and records relating to sales from the premises and such other records as
would normally be required to be kept and examined by an independent accountant in
accordance with accepted auditing practices in performing an audit of Lessee's gross
sales from the premises at any reasonable time during the usual business hours of Lessee
for the purpose of determining the amount of rental due and payable hereunder.  Lessee
shall be required to preserve its records on which any statement is based for a period
of two years after such statement is rendered and no more, and if Lessor fails to object
in writing to any statement for a period of two years after the rendering thereof such
statement shall be conclusively presumed to be correct.

(d) It is agreed that the percentage rental to be paid by Lessee to Lessor as provided
in Paragraph 1(a) above, shall not be less than the sum of One Hundred Thirty-Three
Thousand One Hundred Twenty-Five Dollars ($133,125.00) for each full calendar year of the
term hereof.  It is further agreed that such minimum rentals shall be paid in monthly
installments of Eleven Thousand Ninety-Three Dollars and Seventy-Five Cents ($11,093.75)
in advance on the first day of each full calendar month of the term of this Lease.  In
the event that the percentage rental, computed as provided in Paragraph 1(a) above exceed
the sum of One Hundred Thirty-Three Thousand One Hundred Twenty-Five Dollars ($133,125.00)
for any one full calendar year, such excess sum shall be paid by Lessee to Lessor on the
tenth (10th) day of the second (2nd) month following the calendar year when such excess
occurs.  For periods of tenancy under this Lease of less than a full calendar year or a
full calendar month, said sums of One Hundred Thirty-Three Thousand One Hundred Twenty-Five
Dollars ($133,125.00) and Eleven Thousand Ninety-Three Dollars and Seventy-Five Cents
($11,093.75) respectively, shall be proportionately reduced.  The proportionately reduced
minimum rental for a part of a calendar month for which rental may be due shall be paid
at the same time and together with the rental payment for the first full month for which
rent may be due as provided herein or by the first day of the following month, whichever
is sooner.

1

(e) If by reason of the minimum rentals paid in advance by Lessee during any lease year, as provided in this Lease, the aggregate amount of minimum rent paid by Lessee during any lease year shall be in excess of the aggregate amount of minimum rental due hereunder, arising out of the provisions of Article II, Paragraph 2 hereof, the Lessor shall forthwith refund the excess in question to the Lessee. If such excess is not refunded to Lessee, Lessee shall have the right to offset such excess against the rent next becoming due hereunder.

(f) Notwithstanding the provisions of Paragraph 1(a) hereof if the percentage rental payable for any one full calendar year exceeds One Hundred Thirty-Three Thousand One Hundred Twenty-Five Dollars ($133,125.00), then in such event Lessee shall be entitled to withhold from such excess (but only to the extent of such excess) all ▓▓▓▓▓▓▓▓▓ ▓▓▓▓ paid or payable by Lessee hereof pursuant to Schedule C, Paragraphs 2 and 3 here all sums paid or payable by Lessee for ▓▓▓▓▓▓▓▓▓▓▓ pursuant to Article X, Paragraph 2 hereof, and all sums paid or payable by Lessee for ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ pursuant to Schedule C, Paragraph 3 hereof. The right of withhold provided fo herein shall not be cumulative. For portions of a calendar year said sum of One Hundr Thirty-Three Thousand One Hundred Twenty-Five Dollars ($133,125.00) shall be proportionately reduced.

2. Addition to ARTICLE VII, TAXES AND LIENS:

▓▓▓▓▓▓▓▓▓▓, for the term of this Lease, ▓▓▓to Lessor the amount of any ▓▓▓▓▓▓▓ ▓▓▓ assessed on the demised premises for each fiscal tax year, or portion thereof. Le agrees to obtain a separate assessment of the demised premises and to furnish to Lesse a photostatic copy of the tax bill for solely the demised premises or, if absolutely unobtainable, for a larger parcel showing Lessee's proper prorated portion thereof wit a detailed explanation of how same was computed and with the tax assessor's figures, i available, showing the separate assessed value of the demised premises for each fiscal tax year, or portion thereof, in which taxes are payable by Lessee in accordance with this paragraph. If prorations are necessary they shall concern only the building of wi the demised premises are physically a part or physically attached to and shall not inc any mall area or any detached or freestanding buildings. In the event that Lessor furnishes Lessee with a proper segregated tax bill covering the demised premises alone Lessee shall make payment to Lessor within thirty (30) days after receipt by Lessee of such bill. In the event, however, that Lessor furnishes Lessee with a proper tax bill which is not segregated Lessee shall make payment to Lessor within a reasonable time after receipt of said complete billing. Real property tax shall mean all taxes and assessments against the demised premises. If, under the laws of the State of Californ or any political subdivision therdof at any time during the term hereof, the method of taxation may be altered so as to impose in lieu of current methods of assessment and taxation in whole or in part taxes based on other standards including but not limited to a tax or excise on rent or any other tax however described or assessed against Lesse on the rent or any portion thereof payable as a direct substitute for real property ta Lessee covenants (but only to the extent that it can be ascertained that there has bee a substitution and that as a result thereof Lessee has been released from the payment o real property taxes which otherwise would have been assessed and payable by Lessee und the provisions of this Lease) to pay and discharge such taxes or excise on rents by paying the same to Lessor at the time and in the manner hereinbefore set forth. As use herein, the term "real property taxes" shall be deemed to include such future tax or excise on rents imposed in lieu of the current method of taxation as aforesaid. Subje to Schedule C, Paragraph 1(f).

3. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Lessee shall pay to Lessor, as additional rent in the manner and at the time provided below, L▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as defined below, of all ▓▓▓▓▓▓▓▓▓▓▓▓▓s incur: by Lessor in the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ during the term of this Lease. Such costs and expenses shall include, without limiting the generality of the foregoing, gardening, landscaping, repaving, cost of public liability, property damage, vandalism, malicious mischief and other insurance applicable to the common area real property taxes (as defined in Article VII) applicable to the common areas, repairs painting, lighting, cleaning, trash removal, depreciation of equipment, security, fire protection, and similar items, and an amount equal to ten percent (10%) of all such costs and expenses to cover Lessor's administrative and overhead expense. Such costs and expenses shall not include any allowance for depreciation of common area improvemer but shall include all charges, surcharges and other levies of whatsoever nature imposed by, and all costs (whether or not capital in nature) of compliance with the requirement of, any federal, state or local governmental agency regulating the environmental, health and safety aspects of the Shopping Center.

Lessee's proportionate share of such common area costs shall be that proportion thereof which the gross floor area of the Premises bears to the gross floor area of the premise from time to time existing and available for rent in the Shopping Center. Subject to Schedule C, Paragraph 1(f).

"C"



78-12 7424

Recorded at the request of
THE AKRON and
to be mailed after recording to:

For Recorders' Use:

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA

OCT 31 1978 AT 8 A.M.

Recorder's Office

THE AKRON
Attn: Legal Department
$1530~~~~~~~~~~~~~~~~ 3540 WILSHIRE BLVD, 6TH FLOOR
Los Angeles, California 90050 90010

# MEMORANDUM OF LEASE

FEE $7    T
          5

THRIFTY REALTY COMPANY,

Under date of.... October 27, 1978.................,

hereinafter called "Lessor", and THE AKRON, a California corporation, hereinafter
called "Lessee", entered into a Lease which provides, among other things, that for
and in consideration of the rental therein reserved and upon the terms, conditions,
covenants and provisions set forth at length therein, the Lessor leases and
demises under the Lease and the Lessee does take, accept, and rent from the Lessor
for the term set forth in such Lease those certain premises situated in the City of
...Los Angeles................, County of...Los Angeles.......... State of.......
...California........, and more particularly described in Schedule A attached hereto
and made a part hereof and shown on a Plot Plan attached to and made a part of said
Schedule A, together with all easements, rights, and appurtenances in connection
therewith or thereunto belonging.

The above referred to Lease is made upon the terms, conditions, covenants and
provisions set forth at length therein, each and all of which terms, conditions,
covenants and provisions are hereby incorporated herein with the same force and
effect as if set out at length herein.

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day
and year first above written.

LESSOR:

THRIFTY REALTY COMPANY

_(Name & Title)_ Chairman of the Board

_(Name & Title)_ Secretary

_(Name & Title)_

_(Name & Title)_

THE AKRON

LESSEE

By _____ Chairman of the Board

By _____ Executive Vice President and Treasurer

# SCHEDULE A

Attached to and forming a part of that certain Indenture of Lease and Memorandum of
Lease executed under date of..October.27,.1978........, by and between
THRIFTY REALTY COMPANY,

as Lessor, and THE AKRON, as lessee.

### DESCRIPTION OF PROPERTY

1.   **Lessor's Property.**  The demised premises are a portion of Lessor's entire
property, situated in the City of..Los.Angeles..., County of..Los.Angeles..........,
State of...California......., and now commonly known as..4400.Sunset.Boulevard......
..................................................................................
Such property, herein referred to as "Lessor's Property", means the entire property
within the outer property limits shown on the Plot Plan initialed by the parties
hereto, dated....October.11,.1978....., attached hereto, and made a part hereof. The
legal description of Lessor's Property is set forth in Paragraph 6 of this Schedule
A.

2.   **Building.**  Lessor's Property provides a site for a store building in the
location designated "Akron" on the said Plot Plan attached.  Such building is now
thereon, said store-building-and-a-store square footage thereof by Lessor for-lessor-
irrevocably, said-dimensions-and-a-street-square-footage-thereof-by-Lessor-for-lessee-
having access dimensions of approximately................. approximately 37,900 sq.ft.
Said building site, building, improvements, and appurtenances, and fixtures and
equipment owned by the Lessor, now or hereafter located thereon are collectively
referred to in this Lease as the "premises" or "demised premises."

3.   **Parking.**  Lessee, its agents, employees, patrons and invitees, in common
with Lessor and all other lessees of portions of Lessor's Property and their respec-
tive agents, employees, patrons, and invitees shall have and are hereby granted,
during the entire term of this Lease and any extension thereof, the free, uninter-
rupted, and non-exclusive use of the sidewalks, malls, roadways, parking area, and
all other common areas, which use by all users shall be for the purposes of ingress,
egress, service, utilities, and parking, and which parking area shall consist of not
less than...200......car-parking spaces, located as shown on the said Plot Plan
attached.  It is specifically understood and agreed that Lessee shall have no obli-
gation or liability whatsoever in connection with the ownership, maintenance, or
management of the sidewalks, malls, roadways, parking area, or other common areas
involved, and that Lessor shall manage, operate and maintain all such common areas,
or cause the same to be done on its behalf, at no additional cost to Lessee.

4.   **Plot Plan.**  It is understood and agreed that no changes from that shown on
the Plot Plan attached shall be made to the building area and/or the parking and
other common areas of Lessor's Property and no buildings or building-type structures
may be built except within the building areas or areas for building designated there-
on, except by written amendment to this Lease, duly executed by the parties hereto.

5.   **Covenants.**  All of the covenants of the Lessor contained in this Lease
shall be covenants running with the land pursuant to applicable law, including, but
not limited to, Section 1469 of the California Civil Code, or statutes of a similar
nature.  It is expressly agreed that each covenant to do or refrain from doing some
act on the Lessor's Property or any part thereof (a) is for the benefit of the de-
mised premises and each person having any leasehold interest therein derived through
the Lessee, and (b) shall be binding upon each successive owner, during his owner-
ship, of any portion of the land affected thereby and each person having any interest
therein derived through any owner of the land affected hereby.

6.   **Legal Description of Lessor's Property:**

PARCEL 1:  Lot 1 of Tract No. 22471, in the City of Los Angeles, County of Los Angeles,
State of California, as per map recorded in Book 716, Pages 87 and 88 of Maps, in the
Office of the County Recorder of said County.

PARCEL 2:  The Southernmost portion of Lot 29, Grider and Hamilton's Olive Place in the
City of Los Angeles, County of Los Angeles, State of California, as per map recorded in
Book 15, Pages 182 and 183 of Maps in the Office of the County Recorder of said County,
which portion is rectangular in shape, lying in the southernmost portion of said lot and
measuring in a north and south direction 90 feet, and measuring in an east and west
direction 46.80 feet.

3

PARCEL 3:  Lots 40, 41, 42 and 43 of Grider and Hamilton's Olive Place, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 6 Page 20 of Maps, in the Office of the County Recorder of said County.

EXCEPT THEREFROM those portions of said Lots included within the present lines of Sunset Boulevard.

ALSO EXCEPT THEREFROM that portion of said Lot 43, described as follows:

Beginning at the most Southerly corner of said Lot 43; thence along the Southwesterly line of said Lot 43, North 17° 35' 30" West 19.38 feet to the true point of beginning; thence continuing along the said Southwesterly line, North 17° 35' 30" West, 38.98 feet; thence at right angles to said Southwesterly line, North 72° 24' 30" East, 0.35 of a foot; thence Southeasterly in a direct line to a point distant North 72° 24' 30" East, 0.80 of a foot from the true point of beginning; thence parallel with said Southwesterly line, South 17° 35' 30" West, to the Southeasterly line of said Lot 43; thence Southwesterly along said line to the most Southerly corner of said Lot 43; thence along said Southwesterly line of said Lot 43, North 17° 35' 30" West, 19.38 feet to the true point of beginning.

78-1207424



ATTACHMENT TO SCHEDULE "A"    78-1207424

TO 1045 CA (8-74)

(Corporation)

STATE OF CALIFORNIA

COUNTY OF *Los Angeles* } SS.

On *October 30, 1978* before me, the undersigned, a Notary Public in and for said State, personally appeared *L H Straub* known to me to be the *Chairman of the Board* President, and *James T. Haight* known to me to be the _____ Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature *Muriel M. Moon*

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

OFFICIAL SEAL
MURIEL M. MOON
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires August 16, 1982

(This area for official notarial seal)

---

TO 1045 CA (8-74)

(Corporation)

STATE OF CALIFORNIA

COUNTY OF *Los Angeles* } SS.

On *October 30, 1978* before me, the undersigned, a Notary Public in and for said State, personally appeared *Richard Ralphs* known to me to be the *Chairman of the Board* President, and *John R. Jewelison* known to me to be *Executive Vice President & Treasurer* of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature *Muriel M. Moon*

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

OFFICIAL SEAL
MURIEL M. MOON
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires August 16, 1982

(This area for official notarial seal)

78-1207424



Akron #1
PJB:mmm
12/9/82

## AMENDMENT NO. 1 TO LEASE

THIS AGREEMENT, made and entered into this 15th day of December,

1982, by and between THRIFTY REALTY COMPANY, a California corporation, herein-

after designated as "Lessor" and THE AKRON, a California corporation, herein-

after designated as "Lessee".

## W I T N E S S E T H :

WHEREAS, Thrifty Realty Company, as Lessor, and The Akron, as Lessee,

did enter into an Indenture of Lease on the 27th day of October, 1978,

covering the premises now known as 4400 Sunset Boulevard, in the City of

Los Angeles, County of Los Angeles, State of California, and more particularly

described in said Lease; and

WHEREAS, said parties entered into a short form of lease entitled

"Memorandum of Lease", dated October 27, 1978, which was recorded on October 31,

1978 as Instrument No. 78-1207424, in the Office of the County Recorder of

Los Angeles, State of California; and

WHEREAS, Lessor and Lessee desire to amend said Lease in the manner

and to the extent hereinafter set forth;

NOW THEREFORE, in consideration of the premises, of the covenants

and agreements herein contained, and other good and valuable consideration,

mutually exchanged by and between the parties hereto, it is agreed as follows:

1.  **EXTENSION OF TERM:**

Article I, TERM, Paragraph 3 of said Lease is hereby amended by

the deletion therefrom of the words and figures "31st day of August, 1979" and

by the insertion therein, in lieu thereof, the words and figures "~~31st day of~~

~~December, 2002~~"

2.  **ARTICLE II, RENTAL, Paragraph 1:**

See Amendt #2  Subparagraphs 1(d) and 1(f) of Schedule "C", Addition to

ARTICLE II, RENTAL, Paragraph 1 of said Lease are hereby amended by the

deletion therefrom of the words and figures "One Hundred Thirty-Three Thousand

One Hundred Twenty-Five Dollars ($133,125.00)", and "Eleven Thousand Ninety-

Three Dollars and Seventy-Five Cents ($11,093.75)" respectively, wherever they

may appear and by the insertion therein, in lieu thereof, the words and

figures "One Hundred Fifty-Seven Thousand One Hundred Twenty-Five Dollars

-1-

2721

"THRIFTY ORIGINAL"



PJB:mmm
12/9/82

(~~~~~~~~)" and "Thirteen Thousand Ninety-Three Dollars and Seventy-Five

Cents ($13,093.75)", respectively.

   3. <u>ARTICLE XV, EXTENSION</u>:

    ARTICLE XV, ~~~~~~~, of said Lease is hereby amended by the

~~~~~~~ therefrom of Paragraph 1 in its entirety.

   4. <u>REMAINDER OF LEASE TO CONTINUE IN EFFECT</u>:

    Except as amended and extended hereby, said Lease shall in all

other particulars, terms and conditions remain in full force and effect; in

the event of any inconsistency between said Lease and this Amendment, the

provisions of this Amendment shall prevail.  It is acknowledged that no changes

other than those herein specifically set forth have been made.

    IN WITNESS WHEREOF, the parties hereto have caused their signatures

to be subscribed hereto the day and year first above written.

THE AKRON                   THRIFTY REALTY COMPANY

By: _____     By: _____

     Vice Chairman President             Chairman of the Board

By: _____     By: _____

     Assistant Secretary                 Secretary

              LESSEE                   LESSOR

-2-

2721

### AMENDMENT No. 2 TO LEASE

·This Amendment No. 2 to Lease ("Amendment") is entered into effective the _15th_ day of _March_, 1985, among THRIFTY REALTY COMPANY, a California corporation ("Lessor") and CIRCUIT CITY STORES, INC., a Virginia corporation ("Lessee") with reference to the following facts:

A.   The lease for that certain real property located at 4400 Sunset Boulevard, Los Angeles, California between Thrifty Realty Company as lessor and The Akron as lessee dated October 27, 1978, and amended by Amendment No. 1 to Lease dated December 15, 1982 (collectively as amended the "Lease") has been assigned to Lessee pursuant to that Lease Assignment and Consent dated _March 25_, 1985.

B.   The parties hereto desire that certain changes and modifications to the Lease be made as hereinafter set forth.

NOW, THEREFORE, the parties hereto do hereby agree as follows:

1.   The Lease is amended as follows:

1.1  _Term_.  Article I, Paragraph 3 (as amended by Section 1 of the Amendment No. 1 to Lease) is amended by the deletion therefrom of the words and figures "31st day of December, 2002" and the insertion in place thereof of "31st day of January, 2003".

1.2  _Rental_.  Paragraph 1(a) through (f) inclusive of Schedule C of the Lease and paragraph 2 of Amendment No. 1 are hereby deleted in their entirety.  Lessor agrees that no percentage rent shall be payable by Lessee.  The following shall be inserted as paragraph 1 of Schedule C of the Lease:

> 1.  Article II. _Rental_.  Lessee agrees to pay Lessor as annual rental for the demised premises, the sum of $157,125.00 payable in advance in monthly installments of $13,093.75 on or before the first day of each and every successive calendar month.  Said annual rent shall be increased as follows:
>
> (a) Commencing on June 1, 1985 and continuing to May 31, 1987, the annual rent shall be $210,000.00, payable in monthly installments of $17,500.00 per month;

Sunset
3/5/85

(b)  Commencing on June 1, 1987, and continuing to
May 31, 1988, the annual rent shall be $220,000.08
payable in monthly installments of $18,333.34;

(c)  Commencing on June 1, 1988, and continuing to
May 31, 1995, the annual rent shall be $230,000.04
payable in monthly installments of $19,166.67;

(d)  Commencing on June 1, 1995, and continuing
until May 31, 2000, the annual rent shall be
$240,000.00, payable in monthly installments of
$20,000.00;

(e)  Commencing on June 1, 2000, and continuing
until the end of the term on January 31, 2003, the
annual rent shall be $250,000.08, payable in
monthly installments of $20,833.34.

1.3  Notices.  Article XIX of the Lease is amended
such that notices to the lessee thereunder shall be sent to:
Circuit City Stores, Inc., 2040 Thalbro Street, Richmond,
Virginia 23230, Attention:  Secretary.

1.4  Assignment.  Article XI of the Lease is
amended by adding a paragraph 3 thereto, reading as follows:

3.  Notwithstanding the remaining provisions of
this Article XI, in the event Lessee desires to
assign this Lease or sublet more than 35% of the
demised premises, Lessee shall, in such event, give
prior written notice of its intention to assign or
sublet to Lessor, ("Lessee's Intent Notice").
Lessor shall have the right, exercisable by written
notice to Lessee within 30 days from receipt of
Lessee's Intent Notice, to terminate this Lease.
If Lessor does not timely exercise its option to
terminate this Lease as provided in the preceding
sentence, Lessee may freely assign this Lease or
sublet all or any part of the demised premises for
any lawful retail use so long as said use does not
violate any written exclusivity clause then in
effect in any lease in the building of which the
demised premises are a part; provided, however,
Lessee shall provide Lessor with Lessee's Intent
Notice each and every time that Lessee intends to
assign or sublet all or any part of this Lease or
the demised premises.  Notwithstanding the assign-
ment or subletting of all or any part of this Lease
or the demised premises, Lessee shall continue to
remain fully liable and obligated under all the

-2-



terms, conditions and provisions hereof. Notwith-
standing any provision of this Article XI or the
Lease to the contrary, Lessor hereby consents to
the assignment or transfer of this Lease by Lessee
to any corporation owned (in whole or in part) or
controlled by Lessee or owning or controlling
Lessee or to any corporation resulting from a
consolidation, or to the surviving corporation in
the case of a merger, to which consolidation or
merger Lessee shall be a party, or to a corporation
to which all or substantially all of the assets of
Lessee have been sold.

1.5  Signage.  Pursuant to Article V, Lessor shall
not unreasonably withhold its consent to any alterations or addi-
tions to exterior signage existing on or in connection with the
Premises or to Lessee's standard signs.

1.6  Sublease to Trak Auto.  Lessor consents to
Lessee's sublease of a portion of the Premises to Trak Auto West,
Inc. ("Trak Auto") pursuant to that Sublease attached hereto as
Exhibit "A".  Lessor acknowledges that certain remodeling of the
Premises shall be required in connection with the occupancy of
the Premises by Lessee's prospective sublessee, Trak Auto and
agrees that (i) Lessee may construct an additional 2,200 square
feet (approximately) onto the Premises, pursuant to final plans
and specifications which are to be provided to Lessor prior to
construction, (ii) Lessor will not unreasonably withhold its
consent to any alterations to the Premises by Lessee or any
sublessee for such purpose and (iii) Lessee may temporarily close
the store located on the Premises for a reasonable period to
facilitate such remodeling of the Premises and for its orderly
reopening thereafter.

1.7  Remodeling by Lessee.  Notwithstanding any-
thing to the contrary contained in the Lease, Lessor further
consents to Lessee's alteration of the Premises, at Lessee's sole
cost and expense, in a manner consistent with that certain
architectural rendering attached hereto as Exhibit "B" and which
includes re-roofing of the Premises.  Final plans and
specifications are to be submitted to Lessor for written approval
prior to commencement of construction; Lessor's approval shall
not be unreasonably withheld or delayed.  Lessor agrees that
notwithstanding anything to the contrary contained in the Lease,
(i) Lessee may temporarily close the store located on the
Premises for a reasonable period in order to facilitate Lessee's
remodeling of the Premises and its orderly opening for business
thereafter, (ii) any such closure shall not constitute an event
of default under the Lease or result in the incurrence of any
penalty or damage, (iii) Lessee may make non-structural interior

-3-

alterations to the Premises as long as the same do not decrease the value of the Premises, and (iv) Lessee shall not be required to make any structural alteration to any building, structure or portion of the common area, if any, other than to the Premises (including subleased portions of the Premises) as contemplated by the final plans and specifications. In no event shall Lessor be responsible for any alterations to or remodeling of the Premises or Common Areas as a result of Lessee's remodeling or alterations as herein allowed.

1.8  Continuous Operation.  The following shall be added as paragraph 6 to Article V:

Except for periods during which Lessee ceases to operate its business at the demised premises as a result of rebuilding, remodeling, repairs, casualty, Lessor's default, eminent domain, war, acts of God, or other reasons beyond Lessee's reasonable control, if after May 1, 1986 Lessee ceases operation of its business at the demised premises for a continuous period in excess of ninety (90) days, Lessor shall thereafter, until the premises are again opened for business, as herein provided, have the right to cancel this Lease by serving a written notice of cancellation on Lessee which shall become effective on the thirtieth (30th) day following its receipt by Lessee; provided, however, Lessee shall have the right to resume doing business at the demised premises within said thirty (30) day period and this Lease shall continue in full force and effect. In the event of any such cancellation, the parties shall automatically be mutually released from any and all liability of whatsoever kind for the cancelled portion of the unexpired term of this Lease.

1.9  Insurance.  Article X; paragraph 1, is amended such that the limits of liability therein referenced, specifically, "$300,000 for any one person injured", "$500,000 for any one accident" and "$100,000 for property damage" are deleted and replaced with "One Million Dollars ($1,000,000) for any one person injured, Three Million Dollars ($3,000,000) for any one accident, and Five Hundred Thousand Dollars ($500,000) for property damage." In addition, the following is added to paragraph 1 of Article X: "Notwithstanding the foregoing, neither Lessee or Lessee's insurance carrier shall be obligated to obtain or provide insurance or to be liable in any way for bodily injury to persons or damage to property resulting from the willful omissions or intentional acts of Lessor, its employees or agents."

1.10  Plot Plan.  The plot plan dated October 11, 1978 attached to Schedule "A" of the Lease is hereby deleted in its entirety and the plot plan dated November 26, 1984 attached hereto as Exhibit "X" is hereby substituted in said Lease in place thereof.

-4-

INITIAL

2.   Except as set forth in this Amendment, all the provisions of the Lease shall remain unchanged and in full force and effect; in the event of any inconsistency between the Lease and this Amendment, the provisions of this Agreement shall prevail.

3.   This Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the undersigned have executed this Amendment effective on the date first above written.

"LESSOR"

THRIFTY REALTY COMPANY
a California corporation

By _____

   Its _____ Chairman

By _____

   Its _____ Secretary

"LESSEE"

CIRCUIT CITY STORES, INC.
a Virginia corporation

By _____

   Its _____

## AMENDMENT NO. 3 TO LEASE

This Amendment No. 3 to Lease ("Amendment") is entered into effective the 5th day of July, 1986, by and between THRIFTY REALTY COMPANY, a California corporation ("Lessor") and CIRCUIT CITY STORES, INC., a Virginia corporation ("Lessee") with reference to the following facts:

A.   Lessor and The Akron entered into a lease dated October 27, 1978 (the "Akron Lease") for that certain real property located at 4400 Sunset Boulevard, Los Angeles, California, which lease was amended by Amendment No. 1 to Lease dated December 15, 1982.

B.   The Akron's interest as lessee under the Akron lease was assigned to Lessee pursuant to a Lease Assignment and Consent dated March 25, 1985.  Concurrent with said assignment, the Akron Lease was further amended by Amendment No. 2 to Lease dated March 25, 1985.  The Akron Lease, as so amended, is referred to herein as the "Lease".

C.   The premises described in Schedule A to the Lease includes certain real property contiguous to 4400 Sunset Boulevard (the "Dock Lease Property"), described on such Schedule A as "PARCEL 2" of Lessor's Property, which property was leased by The Akron from the owner thereof for a term of 15 years pursuant to that certain lease dated April 15, 1977 (the "Dock Lease") by and between Jack B. Adams and Gloria M. Adams, as lessor, and The Akron, as lessee.  The interest of The Akron as lessee under the Dock Lease was assigned to Lessor by that certain Assignment of Lease dated October 30, 1978.

D.   Lessor and Lessee desire to amend the Lease to eliminate the Dock Lease Property from the premises leased to Circuit City thereunder, and concurrently to enter into a separate sublease of the Dock Lease Property for the remaining term of the Dock Lease (the "Dock Sublease").

NOW, THEREFORE, with reference to the foregoing recitals, which are incorporated herein by these references, the parties hereto agree as follows:

1.   The Lease is amended as follows:

1.1  Premises.  Schedule A attached to the Lease is amended to delete the following-described property from the "Description of Lessor's Property" contained in Paragraph 6 of said Schedule A:



"<u>PARCEL 2</u>:  The Southernmost portion of Lot 29,
Grider and Hamilton's Olive Place in the City of
Los Angeles, State of California, as per map re-
corded in Book 15, Pages 182 and 183 of Maps in the
Office of the County Recorder of said County, which
portion is rectangular in shape, lying in the
southernmost portion of said lot and measuring in a
north and south direction 90 feet, and measuring in
an east and west direction 46.80 feet."

     1.2  <u>Rental</u>.  Paragraph 1 of Schedule C of the
Lease is hereby amended to insert the following paragraph as
subsection (f) thereof:

(f)  Notwithstanding the foregoing provisions,
commencing on the effective date of Amendment No. 3
to this Lease, and continuing until April 14, 1992,
the rent payable as provided in this Section shall
be reduced by the sum of $500.00 per month.

     2.    Except as set forth in this Amendment, all the
provisions of the Lease shall remain unchanged and in full
force and effect; in the event of any inconsistency between
the Lease and this Amendment, the provisions of this Amend-
ment shall prevail.

     3.    This Amendment shall be binding upon and inure
to the benefit of the parties hereto and their respective
executors, administrators, successors and assigns.

     4.    This Amendment shall be of no force and effect
until execution and delivery by and to Lessor and Lessee of
the Dock Sublease and approval thereof by Jack B. Adams
and Gloria M. Adams.

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the date first above written.

"LESSOR"

THRIFTY REALTY COMPANY
a California Corporation

By _____
Its _____President_____

By _____
Its ___Vice President and Secretary___

"LESSEE"

CIRCUIT CITY STORES, INC.
a Virginia corporation

By ___Donald L. Chasen___
Its ___Asst. V.P.___



*#401*
*CA*

## AMENDMENT NO. 4 TO LEASE

AGREEMENT, made this 5th day of February, 2002, by and between **DRG/SUNSET, LTD.**, a California limited partnership, by Green Park Investment Corp., a California corporation as General Partner, and by Roxbury Holdings, Inc., a California corporation as General Partner and **DRG/WHITTIER PROFESSIONAL BUILDING, LTD.**, a California limited partnership, by Green Park Investment Corp., a California corporation as General Partner and by Roxbury Holdings, Inc., a California as General Partner, (collectively herein called "Landlord"), and **CIRCUIT CITY STORES WEST COAST, INC.**, a California corporation (herein called "Tenant").

WHEREAS, by lease dated the October 27, 1978, Amendment No. 1 to Lease dated the 15th day of December, 1982, Amendment No. 2 to Lease dated the 25th day of March, 1985, Amendment No. 3 to Lease dated the 5th day of August 1986, (the "Lease") by Assignment of Lease Residual Property dated March 25, 1985, and Tenant's Notice of Assignment of Lease to Circuit City Stores West Coast, Inc., dated January 24, 1994, Landlord leased to Tenant certain premises (herein called the "Demised Premises") presently consisting of approximately 37,900 square feet located at 4400 Sunset Boulevard, Los Angeles, California 90027.

WHEREAS, the term of the Lease is now scheduled to expire on January 31, 2003; and

WHEREAS, Landlord and Tenant wish to amend the Lease in the particulars hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and of the mutual promises contained herein, Landlord and Tenant agree as follows:

1.    The term of the Lease is hereby extended for an additional period of five (5) years ("the Extension Term"). The Extension Term shall commence on February 1, 2003 ("the Rent Commencement Date") and shall expire on January 31, 2008;

2.    Annual Rent for the Extension Term shall be Six Hundred and Fifty Thousand Dollars ($650,000), payable in monthly installments of Fifty-Four Thousand One Hundred and Sixty Seven Dollars ($54,167.00);



3.    Tenant shall have two (2) consecutive five (5) year renewal options

(hereinafter collectively "Renewal Options") as follows:

| OPTION PERIOD | TERM | ANNUAL RENT | MONTHY RENT |
|---|---|---|---|
| First Option | 2/1/2008 – 1/31/2013 | $725,000.00 | $60,417.00 |
| Second Option | 2/1/2013 – 1/31/2018 | $800,000.00 | $66,617.00 |

4.    Tenant shall exercise any such Renewal Option by notifying Landlord, in

accordance with the term of the Lease, twelve (12) months prior to the expiration of the

Extension Term or Renewal Option term as applicable.

5.    Except as amended by this Agreement, the parties acknowledge and agree

that other terms and provisions of the Lease are unmodified and shall continue in full

force and effect.




IN WITNESS WHEREOF, the parties hereto have executed this Agreement the

day and year first above written.

DRG/SUNSET, LTD.,
a California limited partnership

By:  Green Park Investment Corp.,
     a California corporation
     General Partner

By: _____
     Norman D. Sloan, President

By:  Roxbury Holdings, Inc.,
     a California corporation
     General Partner

By: _____
     Jeffrey M. Boren, President

DRG/WHITTIER PROFESSIONAL
BUILDING, LTD.,
a California limited partnership

By:  Green Park Investment Corp.,
     a California corporation,
     General Partner

By: _____
     Norman D. Sloan, President

     Roxbury Holdings, Inc.,
     a California corporation
     General Partner

By: _____
     Jeffrey M. Boren, President

CIRCUIT CITY STORES WEST COAST, INC., a

California corporation

WITNESS:
_____

TENANT

By: _____
     R. Bruce Lucas
Its:  Vice President

3