# CIRCUIT CITY STORES, INC.

## Tenant

### - with -

## CIRCUIT INVESTORS #5 - MONTGOMERYVILLE LIMITED PARTNERSHIP

### Landlord

## LEASE

**GOLDFARB & FLEECE**
**345 PARK AVENUE**
**NEW YORK, NEW YORK 10154**

## INDEX

| SECTION | | PAGE |
|---|---|---|
| 1. | Demise of Premises | 1 |
| 2. | Certain Definitions | 1 |
| 3. | Title and Condition | 6 |
| 4. | Use of Leased Premises; Quiet Enjoyment | 8 |
| 5. | Term | 10 |
| 6. | Rent | 10 |
| 7. | Net Lease; Non-Terminability | 12 |
| 8. | Payment of Impositions; Compliance with Legal Requirements and Insurance Requirements | 13 |
| 9. | Liens; Recording and Title | 15 |
| 10. | Indemnification | 16 |
| 11. | Maintenance and Repair | 16 |
| 12. | Alterations | 19 |
| 13. | Condemnation | 19 |
| 14. | Insurance | 24 |
| 15. | Restoration | 30 |
| 16. | Subordination to Financing | 32 |
| 17. | Assignment, Subleasing | 34 |
| 18. | Permitted Contests | 39 |
| 19. | Conditional Limitations; Default Provisions | 40 |
| 20. | Additional Rights of Landlord and Tenant | 45 |
| 21. | Notices | 46 |
| 22. | Estoppel Certificates | 48 |
| 23. | Surrender and Holding Over | 48 |
| 24. | No Merger of Title | 49 |
| 25. | Definition of Landlord | 50 |
| 26. | Hazardous Substances | 50 |
| 27. | Entry by Landlord | 52 |
| 28. | Statements | 52 |
| 29. | No Usury | 53 |
| 30. | Broker | 53 |
| 31. | Separability | 53 |
| 32. | Completion of Construction of Improvements | 53 |
| 33. | Tenant to Comply With Reciprocal Easement Agreement | 54 |
| 34. | Miscellaneous | 54 |
| 35. | Additional Rent | 55 |
| 36. | Tenant to Perform the Healey Lease | 56 |
| EXHIBIT A - | Description of Land | 58 |
| EXHIBIT B - | Machinery and Equipment | 59 |
| EXHIBIT C - | Basic Rent | 1 |
| EXHIBIT D - | Rejectable Offer Schedule | 1 |
| EXHIBIT E - | Circuit City Store | |

THIS LEASE AGREEMENT made as of this 30th day of June, 1993, by and between CIRCUIT INVESTORS #5-MONTGOMERYVILLE LIMITED PARTNERSHIP, a Pennsylvania limited partnership, having an office at 10000 North Central Expressway, Suite 1000, Dallas, Texas 75231 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation, having its principal office at 9950 Mayland Drive, Richmond, Virginia 23233-1464 ("Tenant").

In consideration of the rents and provisions herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follows:

1.    **Demise of Premises.**  Landlord hereby demises and lets to Tenant and Tenant hereby takes and leases from Landlord for the term or terms and upon the provisions hereinafter specified the following described property (collectively, the "Leased Premises"): (i) the premises described in Exhibit "A" attached hereto and made a part hereof together with the easements, rights and appurtenances thereunto belonging or appertaining (collectively the "Land"); (ii) the buildings, structures and other improvements constructed and to be constructed on the Land (collectively, the "Improvements"); and (iii) the machinery and equipment described in Exhibit "B" attached hereto and made a part hereof and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the "Equipment") excepting therefrom Tenant's Trade Fixtures.

2.    **Certain Definitions.**

(a)    "Additional Rent" shall mean Additional Rent as defined in Paragraph 35.

(b)    "Adjoining Property" shall mean all sidewalks, curbs, gores and

vault spaces adjoining any of the Leased Premises.

        (c)     "<u>Alteration</u>" or "<u>Alterations</u>" shall mean any or all changes, additions, improvements, reconstructions or replacements of any of the Improvements or Equipment, both interior or exterior, and ordinary and extraordinary.
Intentionally omitted.

        (d)     "<u>Basic Rent</u>" shall mean Basic Rent as defined in Paragraph 6.

        (e)     "<u>Basic Rent Payment Dates</u>" shall mean the Basic Rent Payment Dates as defined in Paragraph 6.

        (f)     "<u>Casualty Termination Date</u>" shall mean the Casualty Termination Date as defined in paragraph 14(h).

        (g)     "<u>Commencement Date</u>" shall mean the Commencement Date as defined in Paragraph 5.

        (h)     "<u>Condemnation</u>" shall mean a Taking and/or a Requisition as defined in subdivisions (y) and (bb) respectively of this Paragraph 2.

        (i)     "<u>Default Rate</u>" shall mean the Default Rate as defined in Paragraph 19(b)(4).

        (j)     "<u>Event of Default</u>" shall mean an Event of Default as defined in Paragraph 19(a).

        (k)     (intentionally deleted)

        (l)     "<u>Impositions</u>" shall mean the Impositions as defined in Paragraph 8.

(m)    "Insurance Requirement" or "Insurance Requirements" shall mean, as the case may be, any one or more of the terms of each insurance policy required to be carried by Tenant under this Lease and the requirements of the issuer of such policy, and whenever Tenant shall be engaged in making any Alteration or Alterations, repairs or construction work of any kind (collectively "Work") the terms "Insurance Requirement" or "Insurance Requirements" shall be deemed to include a requirement that Tenant obtain or cause its contractor to obtain completed value builder's risk insurance when the estimated cost of the Work in any one instance exceeds the sum of One Hundred Thousand ($100,000.00) Dollars and that Tenant or its contractor shall obtain workmen's compensation insurance or other adequate insurance coverage covering all persons employed in connection with the Work, whether by Tenant, its contractors or subcontractors and with respect to whom death or bodily injury claims could be asserted against Landlord.

(n)    "Law" shall mean any constitution, statute or rule of law.

(o)    "Legal Requirement" or "Legal Requirements" shall mean, as the case may be, any one or more of all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those which by their terms are not applicable to and do not impose any obligation on Tenant, Landlord or the Leased Premises) and all covenants, restrictions and conditions now or hereafter of record which may be applicable to Tenant, to Landlord or to any of the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of any of the Leased Premises, even if compliance therewith (i) necessitates structural changes or improvements (including changes required to comply with the "Americans With Disabilities Act") or results in interference with the use or enjoyment of any of the Leased Premises or (ii) requires Tenant to carry insurance other than as required by the provisions of this Lease.

(p)   "Lender" shall mean an entity which makes a Loan to Landlord, secured by a First Mortgage and evidenced by a Note or which is the holder of the First Mortgage and Note as a result of an assignment thereof.

(q)   "Loan" shall mean a loan made by a Lender to Landlord secured by a Mortgage and evidenced by a Note.

(r)   "Mortgage" shall mean a first mortgage or similar security instrument hereafter executed covering the Leased Premises from Landlord to Lender.

(s)   "Net Award" shall mean the entire award payable to Landlord by reason of a Condemnation, less any expenses incurred by Landlord in collecting such award.

(t)   "Net Proceeds" shall mean the entire proceeds of any insurance required under clauses (i), (iv), (v) or (vi) of Paragraph 14(a), less any expenses incurred by Landlord in collecting such proceeds.

(u)   "Note" or "Notes" shall mean a Promissory Note or Notes hereafter executed from Landlord to Lender, which Note or Notes will be secured by a Mortgage and an assignment of leases and rents.

(v)   "Permitted Encumbrances" shall mean those covenants, restrictions, reservations, liens, conditions, encroachments, easements and other matters listed in the title policy which insures the fee title of Landlord to the Leased Premises except for any Mortgage or assignment of leases or rents related thereto.

(w)   "Replaced Equipment" or "Replacement Equipment" shall mean the Replaced Equipment and Replacement Equipment, respectively, as defined in Paragraph 11(d).

        (x)    "<u>Requisition</u>" shall mean any temporary condemnation or confiscation of the use or occupancy of any of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

        (y)    "<u>Restoration</u>" shall mean the Restoration as defined in Paragraph 13(c).

        (z)    "<u>State</u>" shall mean the State or Commonwealth in which the Leased Premises are situate.

        (aa)    "<u>Taking</u>" shall mean any taking of any of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceedings or by any other means, or any de facto condemnation.

        (bb)    "<u>Term</u>" shall mean the Term as defined in Paragraph 5.

        (cc)    "<u>Termination Date</u>" shall mean the Termination Date as defined in Paragraph 13(b).

        (dd)    "<u>Trade Fixtures</u>" shall mean all fixtures, equipment and other items of personal property which are owned by Tenant and used in the operation of the business conducted on the Leased Premises, excluding therefrom the Equipment.

### 3.    Title and Condition.

(a) The Leased Premises are demised and let subject to (i) the rights of any parties in possession of any of the Leased Premises, (ii) the existing state of title of the Leased Premises, including the Permitted Encumbrances, and any other matters of title existing on the Commencement Date which are not caused by Landlord , (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and Insurance Requirements, including any existing violation of any thereof, and (v) the condition of the Leased Premises as of the commencement of the Term, without representation or warranty by Landlord; it being understood and agreed, however, that the recital of the Permitted Encumbrances herein shall not be construed as a revival of any thereof which for any reason may have expired.

(b) LANDLORD HAS NOT MADE AND WILL NOT MAKE ANY INSPECTION OF ANY OF THE LEASED PREMISES, AND LANDLORD LEASES AND WILL LEASE AND TENANT TAKES AND WILL TAKE THE LEASED PREMISES AS IS, AND TENANT ACKNOWLEDGES THAT LANDLORD (WHETHER ACTING AS LANDLORD HEREUNDER OR IN ANY OTHER CAPACITY) HAS NOT MADE AND WILL NOT MAKE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE LEASED PREMISES, INCLUDING ANY WARRANTY OR REPRESENTATION AS TO ITS FITNESS FOR USE OR PURPOSE, DESIGN OR CONDITION FOR ANY PARTICULAR USE OR PURPOSE, AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, LATENT OR PATENT, AS TO LANDLORD'S TITLE THERETO, OR AS TO VALUE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DURABILITY OR OPERATION, IT BEING AGREED THAT ALL RISKS INCIDENT THERETO ARE TO BE BORNE BY TENANT. TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND TO ITS SPECIFICATIONS, AND THAT THE LEASED PREMISES HAVE BEEN INSPECTED BY

TENANT AND ARE SATISFACTORY TO IT. IN THE EVENT OF ANY DEFECT OR
DEFICIENCY IN ANY OF THE LEASED PREMISES OF ANY NATURE, WHETHER
PATENT OR LATENT, LANDLORD SHALL NOT HAVE ANY RESPONSIBILITY OR
LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR
CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT). THE
PROVISIONS OF THIS PARAGRAPH 3(b) HAVE BEEN NEGOTIATED, AND THE
FOREGOING PROVISIONS ARE INTENDED TO BE A COMPLETE EXCLUSION AND
NEGATION OF ANY WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH
RESPECT TO ANY OF THE LEASED PREMISES, ARISING PURSUANT TO THE
UNIFORM COMMERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN
EFFECT OR OTHERWISE.

(c) Tenant represents to Landlord that Tenant has examined the title to
the Leased Premises prior to the execution and delivery of this Lease and has found the same
to be satisfactory for the purposes contemplated hereby and acknowledges that title is in
Landlord and that Tenant has only the right of possession and use of the Leased Premises as
provided in this Lease.

(d) Landlord hereby conditionally assigns, without recourse or warranty
whatsoever, to Tenant, all warranties, guaranties and indemnities, express or implied, and
similar rights which Landlord may have against any manufacturer, seller, engineer, contractor
or builder in respect of any of the Leased Premises, including, but not limited to, any rights
and remedies existing under contract or pursuant to the Uniform Commercial Code
(collectively, the "guaranties"). Such assignment shall remain in effect so long as no Event of
Default exists hereunder or until the termination of this Lease. Landlord shall also retain the
right to enforce any guaranties assigned in the name of Tenant upon the occurrence of an Event
of Default. Landlord hereby agrees to execute and deliver at Tenant's expense such further
documents, including powers of attorney, as Tenant may reasonably request (and which in the
good faith judgment of Landlord, do not adversely affect a substantial general interest of

Landlord), in order that Tenant may have the full benefit of the assignment effected or intended to be effected by this Paragraph 3(d). Upon the occurrence of an Event of Default, or termination of this Lease the guaranties shall automatically revert to Landlord. The foregoing provision of reversion shall be self-operative and no further instrument of reassignment shall be required. In confirmation of such reassignment Tenant shall execute and deliver promptly any certificate or other instrument which Landlord may request. Any monies collected by Tenant under any of the guaranties after the occurrence of and during the continuation of an Event of Default shall be held in trust by Tenant and promptly paid over to Landlord.

(e) Landlord agrees to enter into with Tenant, at Tenant's expense, such easements, covenants or restrictions for utilities, parking or other matters as desirable for operation of the Leased Premises or properties adjacent thereto (collectively "Easements") as requested by Tenant, subject to Lender's and Landlord's approval of the form and substance thereof, not to be unreasonably withheld or delayed. If either Landlord or Lender shall fail to approve or disapprove the form and substance of any such Easements, within a period of thirty (30) days from receipt, then either Landlord or Lender, as the case may be, shall be deemed to have approved the forms and substance of any such Easement.

### 4.  Use of Leased Premises; Quiet Enjoyment.

(a) Tenant may use the Leased Premises for any lawful purpose other than any use that will (i) have a material adverse effect on the value of the Leased Premises, (ii) materially increase the likelihood that Landlord or Lender would incur liability under any provisions of the Act referred to in Paragraph 26 of this Lease or (iii) result or give rise to any material environmental deterioration or degradation of the Leased Premises. If Tenant changes materially the then existing use of the Leased Premises and, in connection with such new use, makes substantial non-severable alterations to the Improvements pursuant to Paragraph 12 of this Lease then, within sixty (60) days after the completion of such alterations, Tenant shall give notice to Landlord of such change in use and shall provide to Landlord an Officer's

Certificate certifying that such change in use and such alteration satisfy the requirements of clauses (i), (ii) and (iii) of this Paragraph 4(a).

In no event shall the Leased Premises be used for any purpose which shall violate any of the provisions of this Lease, including but not limited to recorded covenants, restrictions or agreements applicable to the Leased Premises or to any shopping center of which the Leased Premises may be a part. Tenant agrees that with respect to any such recorded covenants, restrictions or agreements, Tenant shall observe, perform and comply with and carry out the provisions thereof required therein to be observed and performed by Landlord.

(b) Subject to Tenant's rights under Paragraph 18 hereof, Tenant shall not permit any unlawful occupation, business or trade to be conducted on any of the Leased Premises or any use to be made thereof contrary to applicable Legal Requirements or Insurance Requirements. Subject to Tenant's rights under paragraph 18, Tenant shall not use, occupy or permit any of the Leased Premises to be used or occupied, nor do or permit anything to be done in or on any of the Leased Premises, in a manner which would (i) violate any certificate of occupancy or equivalent certificate affecting any of the Leased Premises, (ii) make void or voidable any insurance which Tenant is required hereunder to maintain then in force with respect to any of the Leased Premises, (iii) affect in any manner the ability of Tenant to obtain any insurance which Tenant is required to furnish hereunder, (iv) cause any injury or damage to any of the Improvements unless pursuant to alterations permitted under Paragraph 12 hereof, or (v) constitute a public or private nuisance or waste.

(c) Subject to all of the provisions of this Lease, including but not limited to the provisions of Paragraphs 3 and 7(b), so long as no Event of Default exists hereunder, Landlord covenants to do no act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant, provided that Landlord may enter upon and examine any of the Leased Premises at reasonable times after reasonable notice and during business hours

and exercise any rights and privileges granted to Landlord under the provisions of this Lease or provided by law.

      5.    **Term.**  Subject to the provisions hereof, Tenant shall have and hold the Leased Premises for an initial term (the "Term") commencing on July ___, 1993 (the "Commencement Date") and ending on July 31, 2015 (the "Expiration Date"). Provided the Lease shall not have been terminated pursuant to the provisions of Paragraphs 13(b), 14(h) or 19, this Lease and the term thereof shall be automatically extended for two (2) renewal terms of ten (10) years each upon condition that (a) at the commencement of each renewal term no Event of Default shall exist and (b) Tenant may cancel any renewal term by giving notice to Landlord in writing at least twelve (12) months prior to the expiration of the then current Term. Upon the giving of such notice this Lease and the term thereof shall terminate and come to an end on the Expiration Date of the then current Term. Any such extension or renewal of the Term (also referred to as the "Term") shall be subject to all of the provisions of this Lease, and all such provisions shall continue in full force and effect, except that the Basic Rent for each renewal term shall be the amounts determined in accordance with the Schedule set forth in Exhibit "C" attached hereto and made a part hereof. In the event that Tenant exercises its option to cancel any renewal Term as hereinabove provided, then Landlord shall have the right during the remainder of the Term then in effect to (i) advertise the availability of the Leased Premises for sale or for reletting, and (ii) show the Leased Premises to prospective purchasers, lenders or tenants at such reasonable times during normal business hours as Landlord may select. If Tenant shall timely give such notice of its election to cancel any renewal option, then all options with regard to subsequent extensions or renewals of the Term shall expire and be null and void.

      6.    **Rent.**

      (a) Tenant shall pay to Landlord or Lender, if directed by Landlord, as

annual rent for the Leased Premises during the Term, the amounts determined in accordance with the schedule set forth in Exhibit "C" attached hereto and made a part hereof ("Basic Rent"), commencing on the last day of the first month next following the Commencement Date and continuing on the same day of each month thereafter during the Term (the said days being called the "Basic Rent Payment Dates"), and shall pay the same at Landlord's address set forth below, or at such other place or to such other person or persons (not exceeding four (4) in number) and in such proportions as Landlord from time to time may designate to Tenant in writing, in funds which at the time of such payment shall be legal tender for the payment of public or private debts in the United States of America and if required by Lender by wire transfer in immediately available federal funds to such account in such bank as Lender shall designate from time to time. Pro rata Basic Rent shall be due for the period from the Commencement Date to the first day of the month next following the Commencement Date computed as set forth in Exhibit C and shall be paid in advance on the Commencement Date, but if the Commencement Date shall occur on the first day of a calendar month, the full monthly installment of Basic Rent shall be paid on the last day of the month in which the Commencement Date shall occur.

(b) Tenant shall pay and discharge before the imposition of any fine, lien, interest or penalty may be added thereto for late payment thereof, as additional rent, all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to this Lease, together with every fine, penalty, interest and cost which may be added by the party to whom such payment is due for nonpayment or late payment thereof. In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided herein, by law or otherwise, in the event of nonpayment of Basic Rent. If any installment of Basic Rent is not paid within five days after the due date thereof, Tenant shall pay to Landlord or Lender, as the case may be, on demand, as additional rent, a late charge equal to one (1%) percent (the "Late Charge") on all overdue installments of Basic Rent.

### 7.   Net Lease: Non-Terminability,

(a) This is a net Lease and Basic Rent, Additional Rent and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense, except as otherwise specifically set forth in Paragraph 13(c) herein.

(b) This Lease shall not terminate and Tenant shall not have any right to terminate this Lease, during the Term (except as otherwise expressly provided in Paragraphs 13(b) and 14(h) herein). Tenant shall not be entitled to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease (except as otherwise expressly provided in Paragraph 13(c) herein), and except as otherwise expressly provided herein the obligations of Tenant under this Lease shall not be affected by any interference with Tenant's use of any of the Leased Premises for any reason, including but not limited to the following: (i) any damage to or destruction of any of the Leased Premises by any cause whatsoever, (ii) any Condemnation, (iii) the prohibition, limitation or restriction of Tenant's use of any of the Leased Premises, (iv) any eviction by paramount title or otherwise, (v) Tenant's acquisition of ownership of any of the Leased Premises other than pursuant to an express provision of this Lease, (vi) any default on the part of Landlord hereunder or under any other agreement, (vii) any latent or other defect in, or any theft or loss of any of the Leased Premises, (viii) the breach of any warranty of any seller or manufacturer of any of the Equipment, (ix) any violation of Paragraph 4(c) by Landlord, or (x) any other cause, whether similar or dissimilar to the foregoing, any present or future law to the contrary notwithstanding. It is the intention of the parties hereto that the obligations of Tenant hereunder shall be separate and independent covenants and agreements, and that Basic Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events (or, in lieu thereof, Tenant shall pay amounts equal thereto), and that the obligations of Tenant hereunder

shall continue unaffected, unless the requirement to pay or perform the same shall have been terminated pursuant to an express provision of this Lease.

(c) Tenant agrees that it shall remain obligated under this Lease in accordance with its provisions and that, except as otherwise expressly provided in Paragraphs 13(b) and 14(h) herein, it shall not take any action to terminate, rescind or avoid this Lease, notwithstanding (i) the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Landlord, (ii) the exercise of any remedy, including foreclosure, under the Mortgage, or (iii) any action with respect to this Lease (including the disaffirmance hereof) which may be taken by Landlord under the Federal Bankruptcy Code or by any trustee, receiver or liquidator of Landlord or by any court under the Federal Bankruptcy Code or otherwise.

(d) This Lease is the absolute and unconditional obligation of Tenant. Tenant waives all rights which may now or hereafter be conferred by law (i) to quit, terminate or surrender this Lease or any of the Leased Premises, (ii) to any setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein and (iii) for any statutory lien or offset right against Landlord or its property.

8. **Payment of Impositions; Compliance with Legal Requirements and Insurance Requirements.**

(a) Subject to the provisions of Paragraph 18 hereof relating to contests, Tenant shall, before interest or penalties are due thereon, pay and discharge all taxes of every kind and nature (including real, ad valorem and personal property, income, franchise, withholding, profits and gross receipts taxes), all charges and/or taxes for any easement or agreement maintained for the benefit of any of the Leased Premises, all general and special



assessments, levies, permits, inspection and license fees, all water and sewer rents and other utility charges, all ground rents, and all other public charges and/or taxes whether of a like or different nature, even if unforeseen or extraordinary, imposed upon or assessed, prior to or during the Term, against Landlord, Tenant or any of the Leased Premises as a result of or arising in respect of the occupancy, leasing, use, maintenance, operation, management, repair or possession thereof, or any activity conducted on the Leased Premises, or the Basic Rent or Additional Rent, including without limitation, any gross income tax, sales tax, occupancy tax or excise tax levied by any governmental body on or with respect to such Basic Rent or Additional Rent (collectively the "Impositions").  Landlord shall promptly deliver to Tenant any bill or invoice it receives with respect to any Imposition.

Nothing herein shall obligate Tenant to pay and the term "Impositions" shall exclude Federal, State or local (i) franchise, capital stock or similar taxes, if any, of Landlord, (ii) income, excess profits or other taxes, if any, of Landlord, determined on the basis of or measured by its net income, or (iii) any estate, inheritance, succession, gift, capital levy or similar taxes unless the taxes referred to in clauses (i) and (ii) above are in lieu of or a substitute for any other tax or assessment upon or with respect to any of the Leased Premises which, if such other tax or assessment were in effect at the commencement of the term, would be payable by Tenant.  In the event that any assessment against any of the Leased Premises may be paid in installments, Tenant shall have the option to pay such assessment in installments; and in such event, Tenant shall be liable only for those installments which become due and payable during the Term.  Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Impositions.  Tenant shall deliver to Landlord, within twenty days of receipt thereof, copies of all settlements and notices pertaining to contests of the Impositions which may be issued by any governmental authority and upon request receipts for payments of all Impositions made during each calendar year of the Term, within thirty days after payment.

(b) Tenant shall promptly comply with and conform to all of the Legal

Requirements and Insurance Requirements, subject to the provisions of Paragraph 18 hereof.

### 9.    Liens; Recording and Title.

(a) Tenant shall not, directly or indirectly, create or permit to be created or to remain, and shall promptly discharge, any lien on any of the Leased Premises, on the Basic Rent, Additional Rent or on any other sums payable by Tenant under this Lease, other than the Mortgage, the Assignment, the Permitted Encumbrances and any mortgage, lien, encumbrance or other charge created by or resulting from any act or omission by Landlord, not resulting from a default by Tenant hereunder.    NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE LIABLE FOR ANY LABOR, SERVICES OR MATERIALS FURNISHED OR TO BE FURNISHED TO TENANT, OR TO ANYONE HOLDING ANY OF THE LEASED PREMISES THROUGH OR UNDER TENANT, AND THAT NO MECHANIC'S OR OTHER LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO OR AFFECT THE INTEREST OF LANDLORD IN AND TO ANY OF THE LEASED PREMISES.

(b) Tenant shall execute, deliver and record, file or register from time to time all such instruments as may be required by any present or future law in order to evidence the respective interest of Landlord and Tenant in any of the Leased Premises, and shall cause a memorandum of this Lease, and any supplement hereto or to such other instrument, if any, as may be appropriate, to be recorded, filed or registered and re-recorded, refiled or re-registered in such manner and in such places as may be required by any present or future law in order to give public notice and protect the validity of this Lease.    In the event of any discrepancy between the provisions of said recorded memorandum of this Lease or any other recorded instrument referring to this Lease and the provisions of this Lease, the provisions of this Lease shall prevail.

(c) Nothing in this Lease and no action or inaction by Landlord shall be



deemed or construed to mean that Landlord has granted to Tenant any right, power or permission to do any act or to make any agreement which may create, give rise to, or be the foundation for, any right, title, interest or lien in or upon the estate of Landlord in any of the Leased Premises.

> 10.   **Indemnification.**  Tenant agrees to defend, pay, protect, indemnify, save and hold harmless Landlord and Lender from and against any and all liabilities, losses, damages, penalties, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature whatsoever, howsoever caused, arising from any of the Leased Premises or Adjoining Property or the use, non-use, occupancy, condition, design, construction, maintenance, repair or rebuilding of any of the Leased Premises or Adjoining Property, and any injury to or death of any person or persons or any loss of or damage to any property, real or personal, in any manner arising therefrom connected therewith or occurring thereon, whether or not Landlord has or should have knowledge or notice of the defect or conditions, if any, causing or contributing to said injury, death, loss, damage or other claim. In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant covenants upon notice from Landlord to resist or defend Landlord in such action, with the expenses of such defense paid by Tenant, and Landlord will cooperate and assist in the defense of such action or proceeding if reasonably requested so to do by Tenant.

> The obligations of Tenant under this Paragraph 10 shall survive any termination of this Lease.

> 11.   **Maintenance and Repair.**

> (a) Tenant shall at all times, including any Requisition period, put, keep and maintain the Leased Premises, including, without limitation, the roof, landscaping, walls, footings, foundations and structural components of the Leased Premises, and the Adjoining Property, in good repair and appearance and, in the case of the Equipment, in good mechanical

condition, except for ordinary wear and tear, and shall promptly make all repairs and replacements (substantially equivalent in quality and workmanship to the original work) of every kind and nature, whether foreseen or unforeseen, which may be required to be made upon or in connection with any of the Leased Premises in order to keep and maintain the Leased Premises in as good repair and appearance as they were originally, except for ordinary wear and tear. Tenant shall do or cause others to do all shoring of the Leased Premises or Adjoining Property or of foundations and walls of the Improvements and every other act necessary or appropriate for preservation and safety thereof, by reason of or in connection with any excavation or other building operation upon any of the Leased Premises or Adjoining Property, whether or not Landlord shall, by reason of any Legal Requirements or Insurance Requirements, be required to take such action or be liable for failure to do so. Landlord shall not be required to make any repair, whether foreseen or unforeseen, or to maintain any of the Leased Premises or Adjoining Property in any way, and Tenant hereby expressly waives the right to make repairs at the expense of the Landlord, which right may be provided for in any law now or hereafter in effect. Nothing in the preceding sentence shall be deemed to preclude Tenant from being entitled to insurance proceeds or condemnation awards for Restoration pursuant to Paragraph 13(c) and 14(g) of this Lease. Tenant shall, in all events, make all repairs for which it is responsible hereunder promptly, and all repairs shall be in a good, proper and workmanlike manner.

(b) In the event that any Improvement now or hereafter constructed shall encroach upon any property, street or right-of-way adjoining any of the Leased Premises or Adjoining Property, shall violate any Legal Requirements, Insurance Requirements or the provisions of any restrictive covenant affecting any of the Leased Premises, shall hinder or obstruct any easement or right-of-way to which any of the Leased Premises is subject, or shall impair the rights of others in, to or under any of the foregoing, and as a result of such encroachment violation, hindrance or impairment, enforcement action is threatened or commenced against Tenant or with respect to the Leased Premises, then, Tenant shall either (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages

resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (ii) take such action as shall be necessary to remove such encroachment, violation, hindrance, obstruction or impairment including, if necessary, any Alteration.  Any such repair or Alteration shall be made in conformity with the provisions of Paragraph 12.

(c) If Tenant shall be in default under any of the provisions hereof, Landlord may after thirty (30) days notice to Tenant and failure of Tenant to cure during said period, but without notice in the event of an emergency (which includes failure to provide required insurance coverage), do whatever is necessary to cure such default as may be reasonable under the circumstances for the account of and at the expense of Tenant.  In the event of an emergency Landlord shall notify Tenant of the situation by phone or other available communication.  All sums so paid by Landlord and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the Default Rate from the date of payment or incurring the expense, shall constitute Additional Rent payable by Tenant under this Lease and shall be paid by Tenant to Landlord on demand.

(d) Tenant shall from time to time replace with other operational equipment or parts (the "Replacement Equipment") any of the Equipment (the "Replaced Equipment") which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation as provided in Paragraph 13, or been lost, stolen, damaged or destroyed as provided in Paragraph 14.  Tenant shall repair at its sole cost and expense all damage to the Leased Premises caused by the removal of Equipment or Replaced Equipment or other personal property of Tenant or the installation of Replacement Equipment.  All Replacement Equipment shall become the property of Landlord, shall be free and clear of all liens and rights of others and shall become a part of the Equipment as if originally demised herein.

12.   **Alterations.** Except as otherwise provided in this Paragraph, Tenant shall not make any Alterations which would impair the usefulness or structural integrity of the Leased Premises, without Landlord's written consent, not to be unreasonably withheld or delayed. Tenant may make any other Alterations without the prior written consent of the Landlord provided such Alterations comply with all of the provisions of the following sentence. In the event that Landlord gives its prior written consent to any Alterations, or if such consent is not required, Tenant agrees that in connection with any Alteration (i) the fair market value of the Leased Premises shall not be lessened by any such Alteration, or its usefulness or structural integrity impaired, (ii) the Alteration shall not change the general character of the Improvements, and the Alteration and any Alteration theretofore made or thereafter to be made shall not in the aggregate reduce the gross cubic foot volume of the Improvements by more than five (5%) percent, (iii) all such Alterations shall be performed in a good and workmanlike manner, and shall be expeditiously completed in compliance with all Legal Requirements, (iv) all work done in connection with any such Alteration shall comply with all Insurance Requirements, (v) Tenant shall promptly pay all costs and expenses of any such Alteration, and shall discharge all liens filed against any of the Leased Premises arising out of the same, (vi) Tenant shall procure and pay for all permits and licenses required in connection with any such Alteration, (vii) all such Alterations shall be the property of Landlord and shall be subject to this Lease, and (viii) all Alterations shall be made in the case of any Alteration the estimated cost of which in any one instance exceeds Two Hundred Fifty Thousand ($250,000.00) Dollars under the supervision of an architect or engineer, reasonably satisfactory to Landlord, in accordance with detailed plans and specifications which shall be submitted to Landlord at least ten (10) days prior to the commencement of the Alterations.

13.   **Condemnation.**

(a) Tenant, immediately upon obtaining knowledge of the institution of any proceeding for Condemnation, shall notify Landlord thereof and Landlord shall be entitled to participate in any Condemnation proceeding at Tenant's expense. Landlord immediately

upon obtaining knowledge of the institution of any proceeding for Condemnation, shall notify Tenant thereof and Tenant shall have the right to participate in such proceedings at its own expense. Subject to the provisions of this Paragraph 13 and Paragraph 15, Tenant hereby irrevocably assigns to Lender or to Landlord, in that order, any award or payment to which Tenant is or may be entitled by reason of any Condemnation, whether the same shall be paid or payable for Tenant's leasehold interest hereunder or otherwise, but nothing in this Lease shall be deemed to (i) assign to Landlord or Lender any award or payment on account of Tenant's Trade Fixtures, or other tangible personal property, moving expenses and similar claims, if available, to the extent Tenant shall have a right to make a separate claim therefor against the condemnor or (ii) impair Tenant's right to any such award or payment so long as such claim is not based upon the value of Tenant's leasehold interest, it being agreed, however, that (x) Tenant shall in no event be entitled to any payment for the items specified in clauses (i) and (ii) of this subparagraph (a) if the same shall reduce in any manner the amount of the award which Landlord would have been entitled to receive as a result of such Condemnation had no such payment been made to Tenant and (y) any such amount payable to Tenant shall be subject and subordinate to the amount of the award payable to the Lender, whether or not this Lease shall be prior or subject to the Mortgage.

(b) If (i) the entire Leased Premises or (ii) at least ten (10%) percent of the Land or the building constructed on the Land, the loss of which even after restoration would be substantially and materially adverse to the business operations of Tenant, shall be subject of a Taking by a duly constituted authority or agency having jurisdiction, then Tenant shall, not later than sixty (60) days after a Taking has occurred, serve notice upon Landlord ("Tenant's Termination Notice") of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice, which date (the "Termination Date") shall be no sooner than the first Basic Rent Payment Date occurring at least thirty (30) days after the date of Tenant's Termination Notice. In the event that during the initial term Tenant shall serve such notice upon Landlord of its intention to terminate this Lease on the Termination Date, Tenant shall, as part of such notice, offer (which offer may be rejected by Landlord as set forth below)

to purchase the Leased Premises and the award, or if no part of the Leased Premises shall remain, the entire award for the applicable price computed in accordance with the schedule annexed hereto and marked Exhibit D (the "Purchase Price") plus all other amounts which may be due and owing to Lender or Landlord by reason of the default by Tenant in complying with its obligations under this Lease (the "Additions to Purchase Price"). If Landlord and Lender shall not elect to accept Tenant's said offer to purchase, Landlord shall give notice thereof to Tenant within thirty (30) days after the giving of Tenant's Termination Notice. Should said offer to purchase not be accepted by Landlord and Lender, this Lease shall be terminated as above provided and the entire award made in the Condemnation proceeding shall be paid to Lender or to Landlord in that order.   Landlord's notice not to elect to accept Tenant's said offer to purchase shall be void and of no effect unless accompanied by the written notice of Lender to the effect that Lender also elects not to accept Tenant's said offer to purchase. Should said notices of Landlord and Lender accepting Tenant's said offer to purchase not be served within said period of thirty (30) days, then and in that event, the said offer shall be deemed accepted.

In the event that Landlord and Lender shall accept or be deemed to have accepted Tenant's offer to purchase, title shall close and Purchase Price and Additions to Purchase Price shall be paid as hereinafter provided and in such event Tenant shall be entitled to and shall receive any and all awards then or thereafter made in the Condemnation proceeding and Landlord shall assign or in case of any award previously made, deliver to Tenant on the Closing Date such award as may be made.

In the event Landlord and Lender shall accept Tenant's offer to purchase, or be deemed to have accepted Tenant's offer, title shall close thirty (30) days after the Termination Date hereinbefore defined (the "Closing Date"), at noon at the local office of Landlord's counsel, Goldfarb & Fleece, 345 Park Avenue, New York, New York 10154, or at such other time and place as the parties hereto may agree upon, this Lease shall be automatically extended to and including the Closing Date (or, if applicable, the extended



Closing Date hereinafter described) and Tenant shall pay the Purchase Price and Additions to Purchase Price by transferring immediately available federal funds to such account or accounts and in such bank or banks as Lender or Landlord, in that order, shall designate, upon delivery of a special warranty deed conveying the Leased Premises and all other required documents including an assignment of any award in connection with such Taking. The special warranty deed shall convey a good and clear record and marketable title, free from encumbrances other than (i) the items specified in Paragraph 3(a), (ii) liens or encumbrances created or suffered through or by Tenant failing to observe or perform any of the terms, covenants or agreements herein provided to be observed and performed by Tenant, (iii) any installments of Impositions due and payable after the Closing Date, and (iv) this Lease. Such deed shall contain an agreement by grantee to observe and perform all of the covenants, conditions and restrictions contained in any instruments of record which were assumed by Landlord or deemed to have been assumed by Landlord on its acquisitions of title. The Purchase Price and Additions to Purchase Price payable as hereinabove provided shall be charged or credited, as the case may be, on the Closing Date, to reflect adjustments of Basic Rent paid or payable to and including the Closing Date, apportioned as of the Closing Date. If on the Closing Date, there may be any liens or encumbrances which Landlord is obligated to remove, Landlord shall use reasonable efforts to remove the same, and the Closing Date shall be extended for a reasonable period to permit Landlord to discharge such liens or encumbrances. If by said extended Closing Date such liens or encumbrances shall not be removed and such liens or encumbrances shall be subordinate to a Mortgage, Tenant shall seek to purchase the Mortgage from the holder thereof at a price which shall in no event exceed the Purchase Price and Additions to Purchase Price charged or credited, as the case may be, on the extended Closing Date, to reflect adjustments of Basic Rent paid or payable to and including the extended Closing Date, apportioned as of the extended Closing Date and the Leased Premises shall be conveyed by Landlord to Tenant subject to the Mortgage and in such event the amount payable by Tenant to the holder of the Mortgage shall be deducted from the Purchase Price and Additions to the Purchase Price payable to Landlord. Landlord shall not be obligated to discharge any such lien or encumbrance if Tenant's title insurance company shall issue affirmative insurance to the

LSIEG/FMCKO/3646   Ver 1                    -22-                    06/30/93  9:15am

effect that the same shall not be collected from or enforced against the insured premises. The acceptance of a deed by Tenant shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Landlord to be performed pursuant to the provisions hereof. Tenant shall pay all conveyance, transfer, sales and like taxes required in connection with the purchase. If there be any liens or encumbrances against the Leased Premises which Landlord is obligated to remove, upon request of both Landlord and Lender made a reasonable time before the Closing Date, Tenant shall provide at the Closing separate funds out of the Purchase Price and Additions to Purchase Price for the foregoing, payable to the holder of such lien or encumbrances.

In the event that during any renewal term Tenant shall serve Tenant's Termination Notice upon Landlord, this Lease and the term hereof shall terminate on the Termination Date. In such event the entire award made in Condemnation proceeding shall be paid to Lender, or to Landlord, in that order.

(c) In the event of any other Condemnation of part of the Leased Premises which does not result in a Termination of this Lease, subject to the requirements of Paragraph 15, the Net Award of such Condemnation, i.e., after deducting therefrom all expenses incurred in the collection thereof shall be retained by Landlord and, promptly after such Condemnation, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to their value, condition and character immediately prior to such Condemnation, in accordance with the provisions of this Lease, including but not limited to the provisions of Paragraphs 11(a), 12 and 15 (the "Restoration").

Upon the payment to Landlord of the Net Award of a Taking which falls within the provisions of this subparagraph (c), Landlord and Lender shall, to the extent received, make that portion of the Net Award equal to the cost of Restoration, (the "Restoration Award") available to Tenant for Restoration, in accordance with the provisions of Paragraph 15, and the balance remaining (the "net surplus award") shall be the property of Lender or

Landlord in that order. Following the making of the condemnation award and on completion of the repairs or alterations made by Tenant as herein provided, the monthly installment of Basic Rent for each month thereafter during the term hereof shall be reduced by an amount equal to one-twelfth (1/12th) of nine and six tenths (9.6%) percent (if during the initial term hereof; if during the first renewal term ten and fifty-six hundredths percent (10.56%) and if during the second renewal term eleven and fifty-two hundredths percent (11.52%)) of the net surplus award, retained by Landlord or paid to Lender.

In the event of a Requisition of any of the Leased Premises, Landlord shall apply the Net Award of such Requisition, to the extent available, to the installments of Basic Rent, Additional Rent or other sums payable by Tenant hereunder thereafter payable and Tenant shall pay any balance remaining thereafter. Upon the expiration of the Term, any portion of such Net Award which shall not have been previously credited to Tenant on account of the Basic Rent and Additional Rent shall be retained by Landlord.

(d) Except with respect to an award or payment to which Tenant is entitled pursuant to the provisions of Paragraphs 13(a), 13(b) and 13(c), no agreement with any condemnor in settlement of or under threat of any Condemnation shall be made by either Landlord or Tenant without the written consent of the other, and of Lender, if the Leased Premises are then subject to a Mortgage, which consent shall not be unreasonably withheld or delayed.

14. **Insurance.**

(a) Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

(i) Insurance against loss or damage to the Improvements and Equipment under an All Risk Policy, which shall include flood insurance and earthquake

insurance and which may contain such exclusions as may be reasonably acceptable to Landlord
and Lender, in amounts to prevent Landlord or Tenant from becoming a co-insurer under the
applicable policies, and in any event in amounts not less than the actual replacement cost of
the Improvements and Equipment (excluding footings and foundations and other parts of the
Improvements which are not insurable) as determined from time to time at Lender's request
but not more frequently than once in any 12-month period, by agreement of Landlord, Lender
and Tenant, or if not so agreed, at Tenant's expense, by the insurer or insurers or by an
appraiser approved by Landlord.

(ii) Contractual and comprehensive general liability insurance
against claims for bodily injury, death or property damage occurring on, in or about any of the
Leased Premises or the Adjoining Property, which insurance shall be written on a so-called
"Occurrence Basis", and shall provide minimum protection with a combined single limit in an
amount not less than the greater of (x) Ten Million ($10,000,000) Dollars (or in such increased
limits from time to time to reflect declines in the purchasing power of the dollar as Landlord
may reasonably request) or (y) the aggregate amount of such insurance carried by Tenant, for
bodily injury, death and property damage in any one occurrence.

(iii) Worker's compensation insurance covering all persons
employed by Tenant on the Leased Premises in connection with any work done on or about
any of the Leased Premises for which claims for death or bodily injury could be asserted
against Landlord, Tenant or the Leased Premises.

(iv) During periods of war or national emergency, war risk
insurance in an amount not less than the actual replacement cost of the Improvements and
Equipment (excluding footings and foundations and other parts of the Improvements which are
not insurable), when and to the extent obtainable from the United States Government or an
agency thereof.

LSIEG/FMCKO/3646 Ver 1                    -25-                    06/30/93 9:15am

(v) Insurance against loss or damage from explosion of any steam or pressure boilers or similar apparatus located in or about the Improvements in an amount not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable);

(vi) Such additional and/or other insurance with respect to the Improvements and in such amounts as at the time is customarily carried by prudent owners or tenants with respect to improvements similar in character, location and use and occupancy to the Improvements then comprising the Leased Premises;

(b) During such time as Tenant named herein remains liable for performance of Tenant's obligation hereunder and no Event of Default is outstanding hereunder, and, the tangible net worth of said Tenant shall be not less than Three Hundred Million ($300,000,000.00) Dollars as determined in accordance with generally accepted accounting principles consistently applied, said Tenant may self-insure the coverage referred to in 14(a)(i), (iii) and (v), provided that the self insurance program of this section (b) does not violate any Legal Requirements of any state which regulates a Lender domiciled in said state.

(c) The insurance required by Paragraph 14(a) shall be written by companies having a Best's rating of B+ during such time as Tenant shall have such tangible net worth of not less than Three Hundred Million ($300,000,000) Dollars and at all other times written by companies having a Best's rating of A and all such companies shall be authorized to do an insurance business in the State or otherwise agreed to by Landlord and Lender. Sums due from Tenant in lieu of insurance proceeds because of such self-insurance programs shall be treated as insurance proceeds for all purposes under this Lease. The insurance policies (i) shall be for a term of not less than one year, (ii) shall be in amounts sufficient at all times to satisfy any coinsurance requirements thereof, and (iii) shall (except for the worker's compensation insurance referred to in Paragraph 14(a)(iii) hereof) name Landlord, Tenant and any Lender as additional insured parties, as their respective interests may appear. If said

insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant or become void or unsafe by reason of the failure or impairment of the capital of any insurer, Tenant shall immediately obtain new or additional insurance reasonably satisfactory to Landlord and Lender.

(d) Each insurance policy referred to in clauses (i), (iv), (v) (and (vi) if requested by Lender) of Paragraph 14(a), shall contain standard non- contributory mortgagee clauses in favor of any Lender. Each policy shall provide that it may not be cancelled except after 30 days prior notice to Landlord and any Lender. Each policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of any of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Lender pursuant to any provision of the Mortgage upon the happening of an event of default therein, or (iv) any change in title or ownership of any of the Leased Premises.

(e) Tenant shall pay as they become due all premiums for the insurance required by this Paragraph 14, shall renew or replace each policy, and shall deliver to Landlord and Lender, a certificate or other evidence (reasonably satisfactory to Lender and Landlord) of the existing policy and such renewal or replacement policy and evidence of the payment of the full premium therefor at least thirty days prior to the Expiration Date (as hereinafter defined) of each policy. Each such policy shall provide that it shall not expire until the Landlord and Lender shall receive a notice from the insurer to the effect that a policy will expire on a date (the "Expiration Date") which shall be thirty (30) days following the date of the receipt by Landlord and Lender of such notice. In the event of Tenant's failure to comply with any of the foregoing requirements of this Paragraph 14, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant, together with interest thereon at the Default

Rate, from the time of payment by Landlord until fully paid by Tenant immediately upon written demand therefor by Landlord.

(f) Anything in this Paragraph 14 to the contrary not withstanding, any insurance which Tenant is required to obtain pursuant to Paragraph 14(a) may be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant, provided that such "blanket" policy or policies otherwise comply with the provisions of this Paragraph 14. In the event any such insurance is carried under a blanket policy, Tenant shall deliver to Landlord and Lender a certified copy of those provisions of the blanket policy that pertain to the Leased Premises, if any, to evidence the issuance and effectiveness of the policy, the amount and character of the coverage with respect to the Leased Premises and the presence in the policy of provisions of the character required in the above sections of this Paragraph 14.

(g) In the event of any casualty loss exceeding $100,000, Tenant shall give Landlord immediate notice thereof. If under the provisions of Paragraph 14(h), Tenant is not obligated to restore the Leased Premises, Landlord and Lender are hereby authorized to adjust, collect and compromise, in Lender or Landlord's name, in that order, all claims under any of the insurance policies required by this Paragraph 14 (except the public liability and worker's compensation insurance) and to execute and deliver all necessary proofs of loss, receipts, vouchers and releases required by the insurers. Tenant agrees to sign, upon request of Landlord or Lender, all such proofs of loss, receipts, vouchers and releases. At all other times, Tenant shall adjust, collect and compromise any and all such claims, with the consent of Lender and Landlord, not to be unreasonably withheld or delayed and Landlord and Lender shall have the right to join with Tenant therein. If the estimated cost of Restoration or repair shall be Five Hundred Thousand ($500,000.00) Dollars or less, all proceeds of any insurance required under clauses (i), (iv), (v) (and (vi) if requested by Lender) of Paragraph 14(a) shall be payable to Tenant, provided that Tenant at such time shall have a tangible net worth of not



less than Three Hundred Million ($300,000,000.00) Dollars as determined in accordance with generally accepted accounting principles, consistently applied, and in all other events to a Trustee which shall be a federally insured bank or other financial institution, selected by Landlord and Tenant and reasonably satisfactory to Lender (the "Trustee"). If the Leased Premises shall be covered by a Mortgage, Lender, if it so desires, shall be the Trustee. Each insurer is hereby authorized and directed to make payment under said policies directly to such Trustee instead of to Landlord and Tenant jointly; and Tenant hereby appoints such Trustee as Tenant's attorney-in-fact to endorse any draft therefor for the purposes set forth in this Lease after approval by Tenant of such Trustee, if Trustee is other than Lender.

In the event of any casualty (whether or not insured against) resulting in damage to the Leased Premises or any part thereof, the Term shall nevertheless continue and there shall be no abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder, except as hereinafter in Paragraph 14(h) specifically provided. The Net Proceeds of such insurance payment shall be retained by the above-mentioned Trustee and, promptly after such casualty, Tenant, as required in Paragraphs 11(a) and 12, shall commence and diligently continue to perform the Restoration to the Leased Premises. Upon payment to the Trustee of such Net Proceeds. the Trustee shall, to the extent available, make the Net Proceeds available to Tenant for restoration, in accordance with the provisions of Paragraph 15. Tenant shall, whether or not the Net Proceeds are sufficient for the purpose, promptly repair or replace the Improvements and Equipment in accordance with the provisions of Paragraph 11(a) and the Net Proceeds of such loss shall thereupon be payable to Tenant, subject to the provisions of Paragraph 15 hereof.

(h) If the Leased Premises are damaged to the extent of 50% or more of the value thereof within such time as less than three (3) years remain in any Term, Tenant shall have no obligation to restore the Leased Premises if (i) it shall give notice to Landlord of its intent not to so restore not later than ninety (90) days after such casualty, (ii) no Event of Default is then outstanding, and (iii) Tenant is carrying the insurance required by the provisions



of paragraph 14(a) (i), (iii), (iv), (v) and (vi) or has self insured in accordance with paragraph 14(b), and in such event, all Net Proceeds payable in connection with such casualty, including the hereinafter defined "Tenant Insurance Payment" shall be delivered to Lender or Landlord, in that order, and the Term of this Lease shall terminate upon such payment and payment of all sums otherwise due and payable by Tenant hereunder through the Basic Rent Payment Date stated in Tenant's notice (the "Casualty Termination Date"). In the event that any damage or destruction shall be subject to the self insurance provisions provided for in 14(b), Tenant shall pay to Landlord the amount of the proceeds that would have been payable had such self insurance program not been in effect (the "Tenant Insurance Payment"). Any notice given by Tenant to Landlord under this Paragraph 14(h) shall be of no force or effect if (x) any Event of Default is then outstanding or (y) the cost of restoration of such damage or destruction exceeds the aggregate of the (i) Net Proceeds payable to Landlord under insurance policies required to be carried by Tenant under the provisions of this Paragraph 14, and Tenant Insurance Payment and (ii) any additional amounts paid by Tenant to Lender or Landlord, in that order, at Tenant's option.

Notwithstanding anything to the contrary hereinabove contained, if, prior to the Casualty Termination Date, Landlord or the Trustee shall not have received the full amount of Net Proceeds and Tenant Insurance Payment payable by reason of the Casualty, the Casualty Termination Date shall automatically be extended to the first Basic Rent Payment Date after receipt by Landlord of the full amount of the Net Proceeds and Tenant Insurance Payment. Such extension shall occur regardless of the reason for the failure of either Trustee or Landlord to receive the full amount of the Net Proceeds and Tenant Insurance Payment prior to the originally stated Casualty Termination Date and Landlord shall have the right to contest the amount of any Net Proceeds and Tenant Insurance Payment.

### 15. Restoration,

Net Proceeds, Restoration Award and Tenant Insurance Payment (the

aggregate of which being herein defined as the "Restoration Fund") shall be disbursed by the Trustee in accordance with the following conditions:

(i) If the cost of Restoration exceeds $250,000 prior to commencement of the Restoration, the architects, contracts, contractors, plans and specifications for the Restoration shall have been approved by Landlord, which approval shall not be unreasonably withheld or delayed.

(ii) At the time of any disbursement, no Event of Default shall exist and no mechanics' or materialmen's liens shall have been filed and remain undischarged or unbonded.

(iii) Disbursements shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement upon receipt of (1) satisfactory evidence, including architects' certificates of the stage of completion, of the estimated cost of completion and of performance of the work to date in a good and workmanlike manner in accordance with the contracts, plans and specifications, (2) waivers of liens, (3) a satisfactory bring down of title insurance, and (4) other evidence of cost and payment so that Landlord can verify that the amounts disbursed from time to time are represented by work that is completed in place and free and clear of mechanics' lien claims.

(iv) Each request for disbursement shall be accompanied by a certificate of Tenant, signed by the President, Treasurer or any Vice President of Tenant, describing the work for which payment is requested, stating the cost incurred in connection therewith and stating that Tenant has not previously received payment for such work and the certificate to be delivered by Tenant upon completion of the work shall, in addition, state that the work has been completed and complies with the applicable requirements of this Lease.

(v) The Trustee may retain ten percent of the Restoration Fund

until the Restoration is fully completed in the reasonable judgment of the Lender.

(vi) The Restoration Fund shall be kept in a separate interest-bearing federally insured account by the Trustee or by Lender.

(vii) At all times the undisbursed balance of the Restoration Fund held by Trustee plus any funds contributed thereto by Tenant, at its option, shall be not less than the cost of completing the Restoration, free and clear of all liens.

In addition, unless Tenant has validly terminated this Lease pursuant to Paragraph 14(h), prior to commencement of Restoration and at any time during Restoration, if the estimated cost of Restoration, as reasonably determined by Landlord, exceeds the amount of the Net Proceeds, the Restoration Award and Tenant Insurance Payment available for such Restoration, the amount of such excess shall be paid by Tenant to the Trustee to be added to the Restoration Fund or Tenant shall fund at its own expense the costs of such Restoration until the remaining Restoration Fund is sufficient for the completion of the Restoration. Except for the payment to Landlord of the net surplus award, referred to in Paragraph 13(c), any sum in the Restoration Fund which remains in the Restoration Fund upon the completion of Restoration shall be paid to Tenant. For purposes of determining the source of funds with respect to the disposition of funds remaining after the completion of Restoration, the Net Proceeds or the Restoration Award shall be deemed to be disbursed prior to any amount added by Tenant.

## 16. Subordination to Financing.

(a) Subject to the following provisions of this Paragraph 16(a), Tenant agrees that this Lease shall at all times be subject and subordinate to the lien of any Mortgage, and Tenant agrees, upon demand, without cost, to execute instruments as may be required to further effectuate or confirm such subordination. So long as no Event of Default shall be

outstanding, Tenant's tenancy shall not be disturbed, nor shall this Lease be affected by any default under such Mortgage, and in the event of a foreclosure or other enforcement of any such Mortgage, or sale in lieu thereof, the purchaser at such foreclosure sale shall be bound to Tenant for the Term of this Lease and any extensions thereof, the rights of Tenant hereunder shall expressly survive, and this Lease shall in all respects continue in full force and effect so long as Tenant fully performs all of its obligations hereunder. Tenant shall not be named as a party defendant in any such foreclosure suit, except as may be required by law. Any Mortgage to which this Lease is now or hereafter subordinate shall provide, in effect, that during the time this Lease is in force insurance proceeds and Restoration Award shall be permitted to be used for restoration in accordance with the provisions of this Lease. Notwithstanding an Event of Default, the provisions of the Paragraph 16(a) shall continue to apply for the benefit of the qualified subtenant referred to in Paragraph 17(b) herein.

(b) Notwithstanding the provisions of subdivision (a) of this Paragraph 16, the holder of the Mortgage to which this Lease is subject and subordinate, as provided in said subdivision (a), shall have the right, at its sole option, at any time, to subordinate and subject the Mortgage, in whole or in part, to this Lease by recording a unilateral declaration to such effect.

(c) At any time prior to the expiration of the Term, Tenant agrees, at the election and upon demand of any owner of the Leased Premises, or of Lender who has granted non-disturbance to Tenant pursuant to Paragraph 16(a) above, to attorn, from time to time, to any such owner or Lender, upon the then executory terms and conditions of this Lease, for the remainder of the term originally demised in this Lease and for any renewal term, provided that such owner or Lender, shall then be entitled to possession of the Leased Premises subject to the provisions of this Lease. The provisions of this subdivision (c) shall enure to the benefit of any such owner or Lender, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the foreclosure of the Mortgage, shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions. Tenant,

any owner and Lender, however, upon demand of the other, hereby agrees to execute, from time to time, instruments in confirmation of the foregoing provisions of subdivisions (a) and (c), reasonably satisfactory to the requesting party acknowledging such subordination, non-disturbance and attornment as are provided in such subsections and setting forth the terms and conditions of its tenancy.

(d) Tenant agrees that, if requested by Landlord, Tenant shall, without charge, enter into (i) a Subordination, Non-Disturbance and Attornment Agreement reasonably requested by Lender and (ii) an agreement with Lender whereby Tenant shall agree for the benefit of Lender that Tenant will not, without in each case the prior written consent of Lender, (a) amend, modify, cancel or surrender the term of this Lease except as expressly permitted by the provisions of paragraphs 5, 13(b) and 14(h) of this Lease, or enter into any agreement with Landlord so to do, or (b) pay any installment of Basic Rent more than one (1) month in advance of the due date thereof or otherwise than in the manner provided for in this Lease.

(e) No Lender shall, upon assuming title to the Leased Premises, be liable for any act or omission of any prior landlord (including Landlord), be subject to any offsets or defenses which Tenant may have against any prior landlord, be bound by any rent or additional rent paid for more than the then current period to any prior landlord, or be bound by any agreement or modification of this Lease made without such Lender's consent after Tenant has been given written notice of such Lender's interest. Nothing herein shall be construed to be in conflict with the provisions of Paragraph 7 hereof.

## 17.   Assignment, Subleasing.

(a) The Leased Premises may be sublet in whole or in part without the consent of Landlord. Tenant shall not assign its interest in this Lease without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed on condition that the proposed assignee shall have demonstrated sound business judgment and experience

in the business to be conducted in the Leased Premises. The net worth, credit and financial responsibility of the proposed assignee shall not be considered by Landlord in determining whether to grant or withhold its consent to the proposed assignment. The assignment of this Lease by Tenant named herein to a purchaser of all or substantially all of the Circuit City Stores in the State, shall not require the prior written consent of Landlord. Assignment of this Lease by Tenant to a parent, subsidiary or affiliate of Tenant shall not require the consent of Landlord. Parent of Tenant shall mean any corporation which owns all or substantially all of the outstanding shares of Tenant. A "subsidiary" of Tenant shall mean any corporation not less than fifty-one (51%) percent of whose outstanding voting stock at the time shall be owned by Tenant, and (b) an "affiliate" of Tenant shall mean any corporation, partnership or other business entity which controls or is controlled by, or is under common control with Tenant. The word "control" (including "controlled by", "under common control with" and "controlling") is used with respect to any corporation, partnership or other business entity, shall mean the possession of the power to direct or cause the direction of the management and policies of such corporation, partnership or other business entity, whether through the ownership of voting securities or contract.

> (b) If the term of this Lease shall terminate by reason of the occurrence of an Event of Default and not for any termination arising by reason of condemnation, fire or other casualty, Landlord shall serve upon the holder of a sublease of the portion of the Leased Premises which is indicated by outlining and diagonal markings on the plan annexed hereto as Exhibit E (the "Circuit City Store"), who shall qualify for a new lease, under the following provisions of this paragraph, and who shall have served upon Landlord, at the time of its execution of its sublease, of the name and address of such subtenant, and that it desires to be entitled to a new lease under the provisions of this subdivision (b) upon such termination of this Lease. To qualify for such new lease, such subtenant shall at the time of entering into the sublease have a Standard & Poor's investment grade rating of BBB- or a Moody's investment grade rating of Baa3, (or equivalent rating of any other generally recognized rating organization) and not be on a credit watch. Upon the written request of such subtenant, within



thirty days after service of notice by Landlord upon said subtenant that this Lease has been so terminated, Landlord shall enter into a new lease of the Leased Premises with such subtenant as follows:

Such new lease shall be entered into at the reasonable cost of the tenant thereunder, shall be effective as at the date of termination of this Lease, and shall be for the remainder of the term of this Lease and at the Basic Rent and Additional Rent and upon all the agreements, terms, covenants and conditions hereof, including any applicable rights of renewal. Such new lease shall be subject to all leases, tenancies and occupancies of the leased Premises.

Notwithstanding any assignment or subletting, Tenant shall continue to remain liable and responsible for the payment of the Basic Rent and Additional Rent and the performance of all its other obligations under this Lease.

(c) Each sublease of the Leased Premises or any part thereof shall (subject to subparagraph 17(b) hereof) terminate upon termination of this Lease prior to the Expiration Date of the Term and shall, in any event, terminate and expire at least two (2) days prior to the Expiration Date of the Term, and shall be subject and subordinate to the provisions of this Lease. No assignment or sublease made as permitted by this Paragraph 17 or otherwise, shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease had been made. No assignment or sublease shall impose any obligations on Landlord under this Lease except as herein otherwise provided. Tenant agrees that in the case of an assignment, Tenant shall, within fifteen (15) days after the execution and delivery of any such assignment, deliver to Landlord (i) a duplicate original of such assignment in recordable form and (ii) an agreement executed and acknowledged by the assignee in recordable form wherein the assignee shall agree to assume and agree to observe and perform all of the terms and provisions of this Lease on the part of the Tenant to be

LSIEG/FMCKO/3646  Ver 1                     -36-                     06/30/93  9:15am

observed and performed from and after the date of such assignment, and, in the case of a sublease, Tenant shall, within fifteen (15) days after the execution and delivery of such sublease, deliver to Landlord a duplicate original of such sublease.

(d)     Landlord recognizes that there is currently constructed or intends to construct certain leasable space at the Leased Premises other than the Circuit City Store Tenant (the "Spec Space"), in addition to the Improvements currently occupied by Tenant, which Spec Space is or shall be either a separate building or connected to the currently constructed Improvements but separated therefrom by a demising wall, for the specific purpose of generating sublease income to the Tenant.    Any such additional Spec Space shall be constructed at Tenant's sole cost and expense, and such construction shall be deemed an Alteration under this Lease and shall be performed in accordance with the terms of this Lease, however, Landlord agrees that Paragraph 12(viii) shall not apply to the construction of the Spec Space and that the provision of Paragraph 12(ii) relating to the "general character of the Improvements" shall not apply to the construction of the Spec Space.    Landlord agrees for itself, its successors and assigns, promptly upon Tenant's request, to enter into a nondisturbance and attornment agreement with any Qualified Subtenant, as defined below, of the Spec Space upon the terms described below, pursuant to which Landlord shall agree, for so long as such Qualified Subtenant is not in default under its Qualified Sublease, as defined below, that the Qualified Sublease shall not be terminated as a result of any termination of this Lease and such Qualified Subtenant's use and occupancy of the premises demised pursuant to the Qualified Sublease shall not be disturbed by Landlord, and pursuant to which such Qualified Subtenant shall agree to attorn to Landlord or its successor as landlord under the Qualified Sublease upon any termination of this Lease. Said agreement shall further provide that nothing therein contained shall impose any obligation on the Landlord, the then owner or the Lender to (a) return or apply any security deposited under such sublease, unless such security shall be transferred and turned over to the Landlord, such then owner or Lender or its Successors, (b) expend any sums to make any installations or alterations provided to be made by the Landlord under said sublease or reimburse the Tenant under said sublease for any

installations or alterations made by it, (c) be liable for any act or omission of any prior landlord except that the foregoing shall not relieve Landlord from the remedying of any continuing default of the prior landlord relating to its repair, maintenance or service obligations under the Qualified Sublease, (d) subject to any offsets or defense which such subtenant might have against any prior landlord, (e) bound by any rent or additional rent which such subtenant might have paid for more than the current rent to any prior landlord, or (f) bound by any amendment or modification of the sublease made without the prior written consent of Landlord, the terms of which amendment or modification if included in the original sublease would have prevented such sublease from meeting the criteria for a Qualified Sublease. A "Qualified Sublease" shall be any sublease of the Spec Space, or any portion thereof that (w) requires the tenant thereunder (a "Qualified Subtenant") to pay at least its pro rata share (based on the portion of the gross leasable area at the Leased Premises demised under the Qualified Sublease) of real estate taxes assessed against the Leased Premises and common area maintenance costs incurred with respect to the Leased Premises (which payment amounts may be included in the rent such Qualified Subtenant is required to pay), (x) exculpates the Landlord, its successor and assigns (including any mortgagee of Landlord or purchaser at sale pursuant to foreclosure under any mortgage granted by Landlord) from all personal liability whatsoever under the Qualified Sublease regardless of whether Landlord or such successor or assign becomes the landlord under the Qualified Sublease, (y) requires such Qualified Subtenant to maintain the nonstructural components of the premises demised under the Qualified Sublease in accordance with the maintenance standards set forth in this Lease, and (z) prohibits the Qualified Subtenant from conducting or allowing any activity at the Leased Premises that, if done or allowed by Tenant, would constitute a breach of the provisions of Paragraph 4, Paragraph 8(b), or Paragraph 11 (to the extent that it would be a default under the Lease if the Spec Space were the Leased Premises), Paragraph 9(a), Paragraph 13 (relating to the assignment of condemnation proceeds and distributions from the Restoration Fund), Paragraph 18, Paragraph 26 or Paragraph 33."

        Upon the occurrence of an Event of Default under this Lease, Landlord

shall have the right to collect and enjoy all rents and other sums of money payable under any sublease of any of the Leased Premises, and Tenant hereby irrevocably and unconditionally assigns such rents and money to Landlord, which assignment may be exercised upon and after (but not before) the occurrence of an Event of Default. Tenant shall not mortgage, pledge or assign this Lease as security for payment or performance of any obligations, and any such mortgage, pledge or security assignment made in violation of this Paragraph shall be void.

        18.   **Permitted Contests.**  After prior written notice to Landlord, Tenant shall not be required to (i) pay any Imposition, (ii) comply with any Legal Requirement, (iii) discharge or remove any lien referred to in Paragraphs 9 or 12, or (iv) take any action with respect to any encroachment, violation, hindrance, obstruction or impairment referred to in Paragraph 11(b) so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (a) the collection of, or other realization upon, the Imposition or lien so contested, (b) the sale, forfeiture or loss of any of the Leased Premises, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of any such Legal Requirement or by any such encroachment, violation, hindrance, obstruction or impairment, (c) any interference with the use or occupancy of any of the Leased Premises, (d) any interference with the payment of any Basic Rent or any Additional Rent, (e) the cancellation of any fire or other insurance policy. In no event shall Tenant pursue any contest with respect to any Imposition, Legal Requirement, lien, encroachment, violation, hindrance, obstruction or impairment referred to above in such a manner that exposes Landlord to civil or criminal liability, penalty or sanction for which Tenant has not made provisions reasonably acceptable to Landlord and Lender. Tenant shall provide Lender or Landlord in that order as security for such contest, an amount of cash or bond equal to 125% of the amount being contested, or other security satisfactory in the sole but reasonable opinion of Lender or Landlord in that order, in assuring the payment, compliance, discharge, removal or other action, including all costs, attorneys' fees, interest and penalties, in the event that the contest is



unsuccessful. No such security shall be required if the amount involved in the contest shall not exceed one tenth (1/10th) of one (1%) percent of the tangible net worth of Tenant, computed in accordance with generally accepted accounting principles consistently applied. While any such proceedings are pending and the required security is held by Lender or Landlord, in that order, Lender or Landlord, as the case may be, shall not have the right to pay, remove or cause to be discharged the Imposition or lien thereby being contested unless any one or more of the conditions in subdivisions (a) through (f) shall not be prevented during the pendency of the contest. Tenant further agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as all of the conditions of the first sentence of this Paragraph are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay and save Lender and Landlord harmless against any and all losses, judgments, decrees and costs (including all attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof.

## 19.   Conditional Limitations; Default Provisions.

(a) The occurrence of any one or more of the following events (any such event being specified herein as a "failure" or "default") shall constitute an Event of Default under this Lease: (i) a failure by Tenant to make (regardless of the pendency of any bankruptcy, reorganization, receivership, insolvency or other proceedings, in law, in equity or before any administrative tribunal, which had or might have the effect of preventing Tenant from complying with the provisions of this Lease) (x) any payment of Basic Rent (A) which continues unremedied for a period of five (5) days after notice ("Nonpayment Notice") thereof from Landlord or Lender or (B) which continues unremedied for a period of five (5) days



without notice in the event that two (2) such Nonpayment Notices from Landlord or Lender shall have been served in any twelve (12) month period (notwithstanding the curing thereof within the time period of five (5) days) or (C) notwithstanding the foregoing, if any Nonpayment Notice shall be served for any particular month and Tenant shall fail to make payment of Basic Rent within the five day grace period with respect to the next ensuing month, Tenant in such event shall not be entitled to a Nonpayment Notice with respect to such next ensuing month, and (y) a failure by Tenant to make payment of Additional Rent or other sum herein required to be paid by Tenant and such default shall continue for a period of five (5) days after notice by Landlord to Tenant; (ii) a failure by Tenant to duly perform and observe, or a violation or breach, of any other provision hereof and such default (except that failure to provide insurance required herein and such default shall continue for a period of ten (10) days after notice by Landlord to Tenant) shall continue for a period of thirty (30) days after notice thereof from Landlord or Lender or if such default can not be cured within such period of thirty (30) days, such period shall be extended for such longer time as reasonably necessary provided that Tenant has commenced to cure such default within said period of thirty (30) days and is actively, diligently and in good faith proceeding with continuity to remedy such default; (iii) Tenant shall (a) voluntarily be adjudicated a bankrupt or insolvent, (b) seek or consent to the appointment of a receiver or trustee for itself or for any of the Leased Premises, (c) file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, or (d) make a general assignment for the benefit of creditors; (iv) a court shall enter an order, judgment or decree appointing, with the consent of Tenant a receiver or trustee for it or for any of the Leased Premises or approving a petition filed against Tenant which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, sixty days after it is entered; (v) Tenant named herein shall in any insolvency proceedings be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution; or (vi) the estate or interest of Tenant in any of the Leased Premises shall be levied upon or attached in any proceeding and such estate or interest is about to be sold or transferred or such process shall not be vacated or discharged within sixty days after such levy or

attachment.

(b) If any Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter, to do any one or more of the following without demand upon or notice to Tenant:

(i) Landlord may give Tenant notice of Landlord's intention to terminate this Lease on a date specified in such notice. Upon the date therein specified, the Term and the estate hereby granted and all rights of Tenant hereunder shall expire and terminate as if such date were the date hereinabove fixed for the expiration of the Term, but Tenant shall remain liable for all its obligations hereunder through such date, including its liability for Basic Rent and Additional Rent as hereinafter provided.

(ii) Landlord may, whether or not the Term of this Lease shall have been terminated pursuant to clause (1) above, (a) give Tenant notice to surrender any of the Leased Premises to Landlord immediately or on a date specified in such notice, at which time Tenant shall surrender and deliver possession of the Leased Premises to Landlord or (b) reenter and repossess any of the Leased Premises by force, summary proceedings, ejectment or any other means or procedure. Upon or at any time after taking possession of any of the Leased Premises, Landlord may remove any persons or property therefrom. Landlord shall be under no liability for or by reason of any such entry, repossession or removal. No such entry or repossession shall be construed as an election by Landlord to terminate this Lease unless Landlord gives a written notice of such intention to Tenant pursuant to clause (1) above.

(iii) After repossession of any of the Leased Premises pursuant to clause (2) above, whether or not this Lease shall have been terminated pursuant to clause (1) above, Landlord shall have the right (but shall be under no obligation) to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the

Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its reasonable discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting. Landlord may make such Alterations as Landlord in its reasonable discretion may deem advisable. Tenant agrees to pay Landlord, as Additional Rent, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting any of the Leased Premises, including fees and commissions of attorneys, architects, agents and brokers.

(iv) If Tenant shall fail to make payment of any installment of Basic Rent or any Additional Rent after the date when each such payment is due, Tenant shall pay to Landlord, in addition to such installment of Basic Rent plus Late Charge thereon or Additional Rent plus the hereinafter defined Default Rate thereon, as the case may be, a sum equal to two (2%) percent per annum above the therein current Prime Rate, as hereinafter defined, of the amount unpaid (the "Default Rate") computed from the date such payment of Basic Rent or Additional Rent was due to and including the date of payment. The term "prime rate" shall mean the rate of interest announced publicly by Citibank, N.A. or its successor, from time to time, as Citibank, N.A.'s or such successor's base rate, of if there is no such base rate, then the rate of interest charged by Citibank, N.A. or such successor to its most creditworthy customers on commercial loans having a ninety (90) day duration.

(v) Landlord may exercise any other right or remedy now or hereafter existing by law or in equity.

If, after an Event of Default, proceedings shall be commenced by Landlord to recover possession under the Acts of Assembly and Rules of Civil Procedure, either at the end of the term or earlier termination of this Lease, or for non-payment of rent or any other reason, Tenant specifically waives the right to the three months' notice and to the fifteen or thirty days' notice required by the Landlord and Tenant Act of 1951, and agrees that five days' notice shall be sufficient in either of any such case.



(c) No expiration or termination of this Lease pursuant to Paragraph
19(b)(1) or any other provision of this Lease, by operation of law, repossession of the Leased
Premises pursuant to Paragraph 19(b)(2) or otherwise, or reletting of any of the Leased
Premises pursuant to Paragraph 19(b)(3), shall relieve Tenant of any of its liabilities and
obligations hereunder, including the liability for Basic and Additional Rent, all of which shall
survive such expiration, termination, repossession or reletting.

(d) In the event of any expiration or termination of this Lease or
repossession of any of the Leased Premises by reason of the occurrence of an Event of Default,
Tenant shall pay to Landlord Basic Rent, Additional Rent and all other sums required to be
paid by Tenant to and including the date of such expiration, termination or repossession and,
thereafter, Tenant shall, until the end of what would have been the Term in the absence of such
expiration, termination or repossession, and whether or not any of the Leased Premises shall
have been relet, be liable to Landlord for and shall pay to Landlord as liquidated and agreed
current damages (i) Basic Rent, Additional Rent and all other sums which would be payable
under this Lease by Tenant in the absence of such expiration, termination or repossession, less
(ii) the net proceeds, if any, of any reletting pursuant to paragraph 19(b)(3), after deducting
from such proceeds all of Landlord's reasonable expenses in connection with such reletting
(including all repossession costs, brokerage commissions, legal expenses, attorneys' fees,
employees' expenses, costs of Alterations and expenses of preparation for reletting). Tenant
hereby agrees to be and remain liable for all sums aforesaid, and Landlord may recover such
damages from Tenant and institute and maintain successive actions or legal proceedings against
Tenant for the recovery of such damages. Nothing herein contained shall be deemed to require
Landlord to wait to begin such action or other legal proceedings until the date when the Term
would have expired by limitation had there been no such Event of Default.

(e) At any time after such expiration or sooner termination of this Lease
pursuant to Paragraph 19 or pursuant to law or if Landlord shall have reentered the Leased
Premises, as the case may be, whether or not Landlord shall have recovered any amounts under

subdivision (b)(3) of this Paragraph 19, Landlord shall be entitled to recover from Tenant and Tenant shall pay to Landlord, on demand, as and for liquidated and agreed final damages for Tenant's default, the amount by which the Basic Rent, and all Additional Rent reserved hereunder for the unexpired portion of the term demised herein as if the Lease had not expired or been terminated exceeds the then fair and reasonable rental value of the Leased Premises for the same period discounted to present worth at a rate of eight (8%) percent per annum, minus any such monthly deficiencies previously recovered from Tenant under subdivision (b)(3) of this Paragraph 19.

(f) If any statute or rule of law governing a proceeding in which such liquidated final damages provided for in subdivision (e) of this Paragraph 19 are to be proved shall validly limit the amount thereof to an amount less than the amount above agreed upon, Landlord shall be entitled to the maximum amount allowable under such statute or rule of law.

## 20.   Additional Rights of Landlord and Tenant.

(a) No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy and each and every right and remedy shall be cumulative and in addition to any other right or remedy contained in this Lease. No delay or failure by Landlord to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof. In addition to the other remedies provided in this Lease, Landlord shall be entitled, to the extent permitted by applicable law, to injunctive relief in case of the violation or attempted or threatened violation of any of the provisions of this Lease, or to specific performance of any of the provisions of this Lease.

(b) Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, any right and privilege which it or any of them may have under any present or future law to redeem any of the Leased Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or

possession pursuant to any court order or any provision hereof.

(c) Landlord hereby waives any right to distrain Trade Fixtures or any property of Tenant and any Landlord's lien or similar lien upon Trade Fixtures and any other property of Tenant regardless of whether such lien is created or otherwise. Landlord agrees, at the request of Tenant, to execute a waiver of any Landlord's or similar lien for the benefit of any present or future holder of a security interest in or lessor of any of Trade Fixtures or any other personal property of Tenant;

(d) Landlord acknowledges and agrees in the future to acknowledge (in a written form reasonably satisfactory to Tenant) to such persons and entities at such times and for such purposes as Tenant may reasonably request that Trade Fixtures is Tenant's property and not part of Improvements (regardless of whether or to what extent such Trade Fixtures are affixed to the Improvements) or otherwise subject to the terms of this Lease.

(e) Tenant shall pay to Landlord as Additional Rent all the reasonable expenses incurred by Landlord in connection with any Default or Event of Default or the exercise of any remedy by reason of a Default or Event of Default, including reasonable attorneys' fees and expenses and shall pay to Lender all reasonable costs and expenses incurred by Lender in connection with any Default or Event of Default. If Landlord shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or any of the Leased Premises, at the option of Landlord, Tenant, at its expense, shall provide Landlord with counsel approved by Landlord and shall pay all reasonable costs incurred or paid by Landlord in connection with such litigation.

21.    Notices.  All notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to the provisions of this Lease (collectively "Notice" or "Notices") shall be in writing and shall be deemed to have been given for all purposes (i) three (3) days after having been sent by




United States mail, by registered or certified mail, return receipt requested, postage prepaid, addressed to the other party at its address as stated below, or (ii) one (1) day after having been sent by Federal Express or other nationally recognized air courier service to the addresses stated below:

> If to Landlord:
>
>> Circuit Investors #5 - Montgomeryville
>> Limited Partnership
>> 10000 North Central Expressway
>> Suite 1000
>> Dallas, Texas 75231
>
> With a copy to:
>
>> Goldfarb & Fleece
>> 345 Park Avenue
>> New York, New York 10154
>>
>> Attention: Steven B. Shore, Esq.
>
> If to Tenant:
>
>> Circuit City Stores, Inc.
>> 9950 Mayland Drive
>> Richmond, Virginia 23233-1464
>>
>> Attention:  Corporate Secretary
>
> With a copy to:
>
>> McGuire, Woods, Battle & Boothe
>> One James Center
>> Richmond, Virginia 23219
>>
>> Attention:  Robert L. Burrus, Jr.

If any Lender shall have advised Tenant by Notice in the manner aforesaid that it is the holder of a Mortgage and stating in said Notice its address for the receipt of Notices, then simultaneously with the giving of any Notice by Tenant to Landlord, Tenant shall serve a copy of such Notice upon Lender in the manner aforesaid.  For the purposes of this Paragraph, any

party may substitute its address by giving fifteen days' notice to the other party in the manner provided above.

22.    **Estoppel Certificates.** Landlord and Tenant shall, at any time and from time to time, upon not less than twenty days' prior written request by the other, execute, acknowledge and deliver to the other a statement in writing, executed by Landlord or Tenant or if other than an individual by a President, Vice President or authorized general partner, principal officer or agent certifying (i) that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, setting forth such modifications), (ii) the dates to which Basic Rent, payable hereunder has been paid, (iii) that to the knowledge of the signer of such certificate no Default by either Landlord or Tenant exists hereunder or specifying each such Default of which the signer may have knowledge; (iv) the remaining Term hereof; and (v) with respect to a certificate signed on behalf of Tenant, that to the knowledge of the signer of such certificate, there are no proceedings pending or threatened against Tenant before or by any court or administrative agency which if adversely decided would materially and adversely affect the financial condition and operations of Tenant or if any such proceedings are pending or threatened to said signer's knowledge, specifying and describing the same. It is intended that any such statements may be relied upon by Lender, the recipient of such statements or their assignees or by any prospective purchaser, assignee or subtenant of the Leased Premises.

23.    **Surrender and Holding Over.** Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except as to any portion thereof with respect to which this Lease has previously terminated) to Landlord in the same condition in which the Leased Premises were originally received from Landlord at the commencement of this Lease, except as to any repair or Alteration as permitted or required by any provision of this Lease, and except for ordinary wear and tear and damage by fire, casualty or condemnation which Tenant is not required to repair hereunder. Tenant shall remove from the Leased Premises on or prior to such expiration or earlier termination Tenant's

Trade Fixtures and personal property which are owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier Termination, repair any damage caused by such removal. Tenant's Trade Fixtures and personal property not so removed at the end of the Term or within thirty days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises. The cost of removing and disposing of such property and repairing any damage to any of the Leased Premises caused by such removal shall be borne by Tenant. Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof, with the consent of Landlord, shall operate and be construed as tenancy from month to month only, at one hundred fifty (150%) percent of the Basic Rent reserved herein and upon the same terms and conditions as contained in this Lease. Notwithstanding the foregoing, any holding over without Landlord's consent shall entitle Landlord, in addition to collecting Basic Rent at a rate of one hundred fifty 150% percent thereof, to exercise all rights and remedies provided by law or in equity, including the remedies of Paragraph 19(b).

24.     **No Merger of Title.** There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of any of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (a) this Lease or the leasehold estate created by this Lease or any interest in this Lease or in such leasehold estate and (b) the fee estate or ownership of any of the Leased Premises or any interest in such fee estate or ownership. No such merger shall occur unless and until all persons, corporations, firms and other entities including Lender having any interest in (i) this Lease or the leasehold estate created by this Lease and (ii) the fee estate in or ownership of the Leased Premises or any part thereof sought

LSIEG/FMCKO/J646  Ver 1                    -49-                    06/30/93  9:15am



to be merged shall join in a written instrument effecting such merger and shall duly record the same.

     **25.**   **Definition of Landlord.**  Anything contained herein to the contrary notwithstanding, any claim based on or in respect of any liability of Landlord under this Lease shall be enforced only against the Landlord individually and personally and shall not be enforced against the Leased Premises.

     The term "Landlord" as used in this Lease so far as covenants or obligations on the part of Landlord are concerned, shall be limited to mean and include only the owner or owners of the Leased Premises or holder of the Mortgage in possession at the time in question of the Leased Premises and in the event of any transfer or transfers of the title of the Leased Premises, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer and conveyance of all personal liability as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed.

     **26.**   **Hazardous Substances.**  Tenant represents and warrants that it will not on, about, or under the Leased Premises, make, treat or dispose of any "hazardous substances" as that term is defined in the Comprehensive Environmental Response, Compensation and Liability Act, and the rules and regulations promulgated pursuant thereto, as from time to time amended, 42 U.S.C. § 9601 et seq. (the "Act"), but the foregoing shall not prevent the use of any such substances in accordance with applicable laws and regulations and Tenant represents and warrants that it will at all times comply with the Act and any other federal, state or local laws, rules or regulations governing Hazardous Materials. Hazardous Materials as used herein shall include, without limitation, all chemicals, petroleum, crude oil or any fraction thereof, hydrocarbons, polychlorinated biphenyls (PCB's), asbestos, asbestos-containing materials and/or products, urea formaldehyde, or any substances which are classified as "hazardous" or "toxic" under the Act; hazardous waste as defined under the Solid Waste Disposal Act, as amended

42 U.S.C. § 6901; air pollutants regulated under the Clean Air Act, as amended, 42 U.S.C.
§ 7401, et seq.; pollutants as defined under the Clean Water Act, as amended, 33 U.S.C.
§ 1251, et seq., any pesticide as defined by Federal Insecticide, Fungicide, and Rodenticide
Act, as amended, 7 U.S.C. § 136, et seq., any hazardous chemical substance or mixture or
imminently hazardous substance or mixture regulated by the Toxic Substances Control Act, as
amended, 15 U.S.C. § 2601, et seq., any substance listed in the United States Department of
Transportation Table at 45 CFR 172.101 or otherwise regulated under the Clean Streams Law
(Pa. Stat. Ann. Title 35, Section 691.1 et seq.), the Solid Waste Management Act (Pa. Stat.
Ann. Title 35, Section 6018.101 et seq.), the Hazardous Sites Clean-up Act (Pa. Stat. Ann. title
35, Section 6020.101 et seq.) ("HSCA"), each, as amended, and the regulations promulgated
thereunder; any chemicals included in regulations promulgated under the above listed statutes;
any explosives, radioactive material, and any chemical regulated by state statutes similar to the
federal statutes listed above and regulations promulgated under such state statutes.

        To the extent required by the Act and/or any federal, state or local laws, rules
or regulations governing Hazardous Materials, Tenant shall remove any hazardous substances
(as defined in the Act) and Hazardous Materials (as defined above) whether now or hereafter
existing on the Leased Premises and whether or not arising out of or in any manner connected
with Tenant's occupancy of the Leased Premises during the Initial Term or any extension or
renewal Term thereof, Tenant shall and hereby does agree to defend, indemnify and hold
Lender and Landlord, their officers, directors, shareholders, partners and employees harmless
from and against any and all causes of actions, suits, demands or judgments of any nature
whatsoever, losses, damages, penalties, expenses, fees, claims, costs (including response and
remedial costs), and liabilities, including, but not limited to, attorneys' fees and costs of
litigation, arising out of or in any manner connected with (i) the violation of any applicable
federal, state or local environmental law with respect to the Leased Premises; (ii) the "release"
or "threatened release" of or failure to remove, as required by this Paragraph 26, "hazardous
substances" (as defined in the Act) and Hazardous Materials (as defined above) from the
Leased Premises or any portion or portions thereof, now or hereafter existing during the Initial

Term and any extension or renewal Term whether or not arising out of or in any manner connected with Tenants' occupancy of the Leased Premises during the Initial Term or any extension or renewal Term and the indemnity set forth above shall survive any termination of the Lease.

The Tenant represents and warrants that it will not install any underground storage tank without specific, prior written approval from the Landlord. The Tenant will not store combustible or flammable materials on the Leased Premises in violation of the Act and any other federal, state or local laws, rules or regulations governing Hazardous Materials.

27.  **Entry by Landlord.**  Landlord and its authorized representatives shall have the right upon reasonable notice (which shall be not less than 48 hours except in the case of emergency) to enter the Leased Premises at all reasonable business hours, and at all other times in the event of an emergency, (a) for the purpose of inspecting the same or for the purpose of doing any work under Paragraph 11(c), and may take all such action thereon as may be necessary or appropriate for any such purpose (but nothing contained in this Lease or otherwise shall create or imply any duty upon the part of Landlord to make any such inspection or do any such work), and (b) for the purpose of showing the Leased Premises to prospective purchasers and mortgagees and, at any time within 12 months prior to the expiration of the term of this Lease for the purpose of showing the same to prospective tenants. No such entry shall constitute an eviction of Tenant but any such entry shall be done by Landlord in such reasonable manner as to minimize any disruption of Tenant's business operation.

28.  **Statements.**  Tenant named herein shall submit to Lender and Landlord (i) within 45 days of the end of each quarter, quarterly balance sheets, income statements and statements of change for Tenant named herein; (ii) within 90 days of the end of each year, annual balance sheets, income statements and statements of change in financial position for Tenant named herein. Quarterly 10Qs as filed with the Securities and Exchange Commission shall satisfy the requirements contained in (i) herein. Copies of the 10Ks filed with the

 
Securities and Exchange Commission will satisfy the requirement contained in (ii) herein. The obligations of Tenant named herein shall continue whether or not this Lease shall have been assigned.

29. **No Usury.** The intention of the parties being to conform strictly to the usury laws now in force in the State, whenever any provision herein provides for payment by Tenant to Landlord of interest at a rate in excess of the legal rate permitted to be charged, such rate herein provided to be paid shall be deemed reduced to such legal rate.

30. **Broker.** Landlord and Tenant represent and warrant to each other that neither party negotiated with any broker in connection with this Lease and that this Lease was negotiated directly by Landlord and Tenant.

31. **Separability.** Each and every covenant and agreement contained in this Lease is, and shall be construed to be, a separate and independent covenant and agreement, and the breach of any such covenant or agreement by Landlord shall not discharge or relieve Tenant from its obligation to perform the same. If any term or provision of this Lease or the application thereof to any provision of this Lease or the application thereof to any person or circumstances shall to any extent be invalid and unenforceable, the remainder of this Lease, or the application of such term or provision to person or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the extent permitted by law.

32. **Completion of Construction of Improvements.** If on the Commencement Date (i) construction or alteration of the Improvements shall not have been completed, or (ii) the permanent Certificate of Occupancy or any other required governmental certificates or any other required certificates, permits or licenses, which will permit the Leased Premises to be legally occupied for its intended use, shall not have been issued, Tenant agrees promptly after the Commencement Date to complete such construction and alteration and to

obtain the permanent Certificate of Occupancy and such certificates, permits and licenses, and to forward to Landlord copies thereof promptly after their receipt by Tenant. Basic Rent is payable by Tenant to Landlord whether or not construction is completed at the date hereof. In addition, if any mechanic's, laborer's, materialman's, vendor's or other lien or chattel mortgage, conditional sale or other title retention agreement be filed against the Leased Premises after the Commencement Date, Tenant agrees to discharge such liens promptly after filing thereof.

33.    **Tenant to Comply With Reciprocal Easement Agreement.** Tenant agrees that Tenant is obligated to and shall perform all obligations of the owner of the Leased Premises and pay all expenses which the owner of the Leased Premises may be required to pay in accordance with any reciprocal easement agreement or any other agreement or document of record now affecting the Leased Premises, herein referred to collectively as "REA", and that Tenant shall comply with all of the terms and conditions of the REA during the term of this Lease. Tenant shall be deemed the "Owner" of the Leased Premises for purposes of the REA. Tenant further covenants and agrees to indemnify, defend and hold harmless Landlord and Lender against any claim, loss or damage suffered by Landlord or Lender by reason of Tenant's failure to perform any obligations or pay any expenses as required under any REA or comply with the terms and conditions of any REA as hereinabove provided during the term of this Lease.

34.    **Miscellaneous.** The paragraph headings in this Lease are used only for convenience in finding the subject matters and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease. As used in this Lease the singular shall include the plural as the context requires, and the following words and phrases shall have the following meanings: (a) "including" shall mean "including but not limited to"; (b) "provisions" shall mean "provisions, terms, agreements, covenants and/or conditions"; (c) "lien" shall mean "lien, charge, encumbrance, title retention agreement, pledge, security interest, mortgage and/or deed of trust"; (d) "obligation" shall mean "obligation, duty,

agreement, liability, covenant or condition"; (e) "any of the Leased Premises" shall mean "the Leased Premises or any part thereof or interest therein"; (f) "any of the Land" shall mean "the Land or any part thereof or interest therein"; (g) "any of the Improvements" shall mean "the Improvements or any part thereof or interest therein"; (h) "any of the Equipment" shall mean "the Equipment or any part thereof or interest therein"; and (i) "any of the Adjoining Property" shall mean "the Adjoining Property or any part thereof or interest therein".   Any act which Landlord is permitted to perform under this Lease may be performed at any time and from time to time by Landlord or any person or entity designated by Landlord.   Any act which Tenant is required to perform under this Lease shall be performed at Tenant's sole cost and expense. Except as otherwise set forth herein, Landlord has the right to refuse to grant its consent whenever such consent is required under this Lease. This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought.   The covenants of this Lease shall run with the Land and bind Tenant, the heirs, distributees, personal representatives, successors and permitted assigns of Tenant and all present and subsequent encumbrancers and subtenants of any of the Leased Premises, and shall inure to the benefit of and bind Landlord, its successors and assigns. In the event there is more than one Tenant, the obligation of each shall be joint and several. In the event any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. This Lease will be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes. This Lease shall be governed by and construed according to the laws of the State.

     **35.**   **Additional Rent.** The term "Additional Rent" as used herein shall also include all amounts, costs, expenses, liabilities and obligations which Tenant herein assumes and agrees to pay and will reimburse Landlord for any payments thereof made by Landlord.

and, in the event of any failure by Tenant to pay any of the same, subject to the notice provisions of Paragraph 19(a)(y) Landlord shall have all rights, powers and remedies provided herein or by law as in the case of nonpayment of Basic Rent.

36.   **Tenant to Perform the Healey Lease.** Tenant represents and warrants to Landlord (a) that part of the Leased Premises is subject to a lease dated May 29, 1992 between Tenant, as Landlord, and Robert T. Healey and William J. Healey, co-partners, as tenant (the "Healey Lease") and (b) that the copies of the Healey Lease which have been delivered to Landlord are true copies of the originals thereof. Tenant agrees that Tenant is obligated to and shall perform all of the obligations of landlord of the Healey Lease during the Term. Tenant further covenants and agrees to indemnify, defend and hold harmless Landlord and Lender against any claim, loss or damage suffered by Landlord or Lender by reason of Tenant's failure to perform any such obligations as required by the terms of the Healey Lease. The parties agree that, as between the Landlord, Lender and Tenant, Landlord and Lender shall have no personal or individual liability or obligation under the Healey Lease during the Term. Absent any Event of Default hereunder, Tenant shall be entitled to receive all rentals and other income payable to the landlord under the Healey Lease. Landlord agrees to execute, upon Tenant's request, any amendments or modifications to the Healey Lease or other documents related thereto so long as (a) the term of the Healey Lease is not extended, as a result thereof, beyond the expiration of the Term; (b) the income to be derived under the Healey Lease at issue is not decreased thereby; and (c) Landlord incurs no personal or individual liability whatsoever. If any award in a condemnation proceeding is payable to tenant of the Healey Lease under the provisions thereof which would have been payable to Landlord had no such payment been made to such tenant, Tenant agrees to add the amount of such award to the

award payable in such condemnation proceeding and the condemnation award as so increased shall be paid and distributed in accordance with the condemnation provisions of Paragraph 13 of this Lease.

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed under seal as of the day and year first above written.

Signed sealed and delivered
in the presence of:

**LANDLORD:**
**CIRCUIT INVESTORS #5 - MONTGOMERYVILLE LIMITED PARTNERSHIP**
a Pennsylvania limited partnership

By:   Circuit General Partner #5-, Pennsylvania Inc.
a Pennsylvania corporation,
general partner

By: _____
Gil J. Besing, President

ATTEST:

_____ Secretary

**TENANT:**

**CIRCUIT CITY STORES, INC.**
a Virginia Corporation

: By: _Philip Dunn_

ATTEST:

_____

## EXHIBIT "B"

## MACHINERY AND EQUIPMENT

All machinery, apparatus, equipment, fittings, appliances and fixtures of every kind and nature whatsoever including all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air conditioning, plumbing, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment fittings, appliances, engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switchboards, and all storm doors and windows, dishwashers, attached cabinets and partitions and all articles of personal property of every kind and nature whatsoever to the extent that the foregoing items are now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation of the Leased Premises and Improvements but excluding Trade Fixtures, inventory, furniture, vehicles and other personalty belonging to Tenant not shown on the plans and specifications for the Improvements.

MONTGOMERYVILLE, Pennsylvania

## EXHIBIT C

1.  Basic Rent for the initial term shall be at the annual rate of Five Hundred Sixty-Eight Thousand Three Hundred Twenty and 00/100 ($568,320.00) Dollars.

2.  Basic Rent for the first renewal term shall be at the annual rate of Six Hundred Twenty-Five Thousand One Hundred Fifty-Two and 00/100 ($625,152.00) Dollars.

3.  Basic Rent for the second renewal term shall be at the annual rate of Six Hundred Eighty-One Thousand Nine Hundred Eighty-Four and 00/100 ($681,984.00) Dollars.

Column 1: Number of full monthly lease payments
Column 2: Repurchase Price

| Column 1 | Column 2 | Column 1 | Column 2 |
|---|---|---|---|
| 0 | 5,920,000 | 40 | 5,611,169 |
| 1 | 5,913,418 | 41 | 5,602,117 |
| 2 | 5,906,784 | 42 | 5,592,992 |
| 3 | 5,900,096 | 43 | 5,583,794 |
| 4 | 5,893,355 | 44 | 5,574,522 |
| 5 | 5,886,560 | 45 | 5,565,177 |
| 6 | 5,879,711 | 46 | 5,555,756 |
| 7 | 5,872,807 | 47 | 5,546,261 |
| 8 | 5,865,847 | 48 | 5,536,689 |
| 9 | 5,858,832 | 49 | 5,527,041 |
| 10 | 5,851,761 | 50 | 5,517,315 |
| 11 | 5,844,634 | 51 | 5,507,512 |
| 12 | 5,837,449 | 52 | 5,497,630 |
| 13 | 5,830,207 | 53 | 5,487,669 |
| 14 | 5,822,906 | 54 | 5,477,629 |
| 15 | 5,815,548 | 55 | 5,467,508 |
| 16 | 5,808,130 | 56 | 5,457,306 |
| 17 | 5,800,654 | 57 | 5,447,023 |
| 18 | 5,793,117 | 58 | 5,436,657 |
| 19 | 5,785,520 | 59 | 5,426,209 |
| 20 | 5,777,863 | 60 | 5,415,677 |
| 21 | 5,770,144 | 61 | 5,405,060 |
| 22 | 5,762,363 | 62 | 5,394,359 |
| 23 | 5,754,520 | 63 | 5,383,572 |
| 24 | 5,746,614 | 64 | 5,372,699 |
| 25 | 5,738,646 | 65 | 5,361,739 |
| 26 | 5,730,613 | 66 | 5,350,691 |
| 27 | 5,722,516 | 67 | 5,339,554 |
| 28 | 5,714,354 | 68 | 5,328,329 |
| 29 | 5,706,127 | 69 | 5,317,014 |
| 30 | 5,697,835 | 70 | 5,305,608 |
| 31 | 5,689,476 | 71 | 5,294,111 |
| 32 | 5,681,050 | 72 | 5,282,522 |
| 33 | 5,672,556 | 73 | 5,270,841 |
| 34 | 5,663,995 | 74 | 5,259,066 |
| 35 | 5,655,365 | 75 | 5,247,196 |
| 36 | 5,646,666 | 76 | 5,235,232 |
| 37 | 5,637,898 | 77 | 5,223,172 |
| 38 | 5,629,059 | 78 | 5,211,016 |
| 39 | 5,620,150 | 79 | 5,198,762 |

Column 1: Number of full monthly lease payments
Column 2: Repurchase Price

| Column 1 | Column 2 | Column 1 | Column 2 |
|---|---|---|---|
| 80 | 5,186,410 | 120 | 4,602,208 |
| 81 | 5,173,960 | 121 | 4,585,084 |
| 82 | 5,161,410 | 122 | 4,567,822 |
| 83 | 5,148,759 | 123 | 4,550,423 |
| 84 | 5,136,007 | 124 | 4,532,885 |
| 85 | 5,123,154 | 125 | 4,515,206 |
| 86 | 5,110,197 | 126 | 4,497,386 |
| 87 | 5,097,137 | 127 | 4,479,423 |
| 88 | 5,083,972 | 128 | 4,461,317 |
| 89 | 5,070,702 | 129 | 4,443,065 |
| 90 | 5,057,326 | 130 | 4,424,668 |
| 91 | 5,043,843 | 131 | 4,406,124 |
| 92 | 5,030,252 | 132 | 4,387,431 |
| 93 | 5,016,552 | 133 | 4,368,589 |
| 94 | 5,002,743 | 134 | 4,349,595 |
| 95 | 4,988,823 | 135 | 4,330,450 |
| 96 | 4,974,791 | 136 | 4,311,152 |
| 97 | 4,960,648 | 137 | 4,291,700 |
| 98 | 4,946,391 | 138 | 4,272,091 |
| 99 | 4,932,021 | 139 | 4,252,326 |
| 100 | 4,917,535 | 140 | 4,232,403 |
| 101 | 4,902,933 | 141 | 4,212,321 |
| 102 | 4,888,215 | 142 | 4,192,077 |
| 103 | 4,873,379 | 143 | 4,171,672 |
| 104 | 4,858,424 | 144 | 4,151,104 |
| 105 | 4,843,350 | 145 | 4,130,371 |
| 106 | 4,828,155 | 146 | 4,109,472 |
| 107 | 4,812,838 | 147 | 4,088,406 |
| 108 | 4,797,399 | 148 | 4,067,171 |
| 109 | 4,781,837 | 149 | 4,045,767 |
| 110 | 4,766,149 | 150 | 4,024,191 |
| 111 | 4,750,337 | 151 | 4,002,443 |
| 112 | 4,734,398 | 152 | 3,980,521 |
| 113 | 4,718,331 | 153 | 3,958,423 |
| 114 | 4,702,136 | 154 | 3,936,149 |
| 115 | 4,685,811 | 155 | 3,913,696 |
| 116 | 4,669,356 | 156 | 3,891,064 |
| 117 | 4,652,769 | 157 | 3,868,251 |
| 118 | 4,636,049 | 158 | 3,845,255 |
| 119 | 4,619,196 | 159 | 3,822,075 |

Column 1: Number of full monthly lease payments
Column 2: Repurchase Price

| Column 1 | Column 2 | Column 1 | Column 2 |
|---|---|---|---|
| 160 | 3,798,710 | 200 | 2,693,598 |
| 161 | 3,775,158 | 201 | 2,661,205 |
| 162 | 3,751,417 | 202 | 2,628,553 |
| 163 | 3,727,487 | 203 | 2,595,640 |
| 164 | 3,703,365 | 204 | 2,562,463 |
| 165 | 3,679,050 | 205 | 2,529,021 |
| 166 | 3,654,540 | 206 | 2,495,311 |
| 167 | 3,629,835 | 207 | 2,461,332 |
| 168 | 3,604,932 | 208 | 2,427,081 |
| 169 | 3,579,829 | 209 | 2,392,556 |
| 170 | 3,554,526 | 210 | 2,357,754 |
| 171 | 3,529,021 | 211 | 2,322,675 |
| 172 | 3,503,311 | 212 | 2,287,314 |
| 173 | 3,477,396 | 213 | 2,251,671 |
| 174 | 3,451,273 | 214 | 2,215,742 |
| 175 | 3,424,941 | 215 | 2,179,527 |
| 176 | 3,398,399 | 216 | 2,143,021 |
| 177 | 3,371,645 | 217 | 2,106,223 |
| 178 | 3,344,676 | 218 | 2,069,131 |
| 179 | 3,317,492 | 219 | 2,031,743 |
| 180 | 3,290,090 | 220 | 1,994,055 |
| 181 | 3,262,469 | 221 | 1,956,065 |
| 182 | 3,234,626 | 222 | 1,917,772 |
| 183 | 3,206,562 | 223 | 1,879,172 |
| 184 | 3,178,272 | 224 | 1,840,264 |
| 185 | 3,149,757 | 225 | 1,801,044 |
| 186 | 3,121,013 | 226 | 1,761,511 |
| 187 | 3,092,039 | 227 | 1,721,661 |
| 188 | 3,062,834 | 228 | 1,681,493 |
| 189 | 3,033,395 | 229 | 1,641,003 |
| 190 | 3,003,720 | 230 | 1,600,189 |
| 191 | 2,973,808 | 231 | 1,559,049 |
| 192 | 2,943,657 | 232 | 1,517,579 |
| 193 | 2,913,264 | 233 | 1,475,778 |
| 194 | 2,882,628 | 234 | 1,433,643 |
| 195 | 2,851,748 | 235 | 1,391,170 |
| 196 | 2,820,620 | 236 | 1,348,357 |
| 197 | 2,789,243 | 237 | 1,305,202 |
| 198 | 2,757,615 | 238 | 1,261,702 |
| 199 | 2,725,734 | 239 | 1,217,854 |

Column 1: Number of full monthly lease payments
Column 2: Repurchase Price

| Column 1 | Column 2 | | Column 1 | Column 2 |
|---|---|---|---|---|
| 240 | 1,173,655 | | | |
| 241 | 1,129,103 | | | |
| 242 | 1,084,194 | | | |
| 243 | 1,038,925 | | | |
| 244 | 993,295 | | | |
| 245 | 947,299 | | | |
| 246 | 900,936 | | | |
| 247 | 854,202 | | | |
| 248 | 807,094 | | | |
| 249 | 759,608 | | | |
| 250 | 711,744 | | | |
| 251 | 663,496 | | | |
| 252 | 614,862 | | | |
| 253 | 565,839 | | | |
| 254 | 516,424 | | | |
| 255 | 466,613 | | | |
| 256 | 416,405 | | | |
| 257 | 365,794 | | | |
| 258 | 314,779 | | | |
| 259 | 263,355 | | | |
| 260 | 211,520 | | | |
| 261 | 159,270 | | | |
| 262 | 106,603 | | | |
| 263 | 53,514 | | | |

## EXHIBIT E

[A plat of the premises, with the space initially occupied
by the Circuit City Superstore depicted by crosshatching,
will be inserted as soon as the plat is completed by the surveyor]