011328     RETURN TO: CHICAGO TITLE INSURANCE COMPANY
           1500 WALNUT STREET
           2nd FLOOR
           PHILADELPHIA, PA 19102                M 40694

REALTY TRANS TAX PAID
STATE
LOCAL
PER

ABSOLUTE ASSIGNMENT OF LEASES AND RENTS

    THIS ABSOLUTE ASSIGNMENT, made as of June 30, 1993, by Circuit Investors #5 - Montgomeryville Limited Partnership, a Pennsylvania limited partnership, having a post office address at 10000 North Central Expressway, Suite 1000, Dallas, Texas 75231 Attention: Gil Besing, as Assignor ("Assignor" to be construed as "Assignors" if the context so requires), to Principal Mutual Life Insurance Company, an Iowa corporation having its principal place of business and post office address at 711 High Street, Des Moines, Iowa 50392, as Assignee,

WITNESSETH THAT:

    WHEREAS, Assignor, to evidence and secure a loan indebtedness, has made and delivered to Assignee a promissory note of even date herewith (the "Note") in the principal amount of $5,746,371.00 payable as provided for in the Note and finally maturing on August 1, 2015, with interest as therein expressed, and has executed and delivered a Mortgage and Security Agreement (it being agreed that "Mortgage" as hereinafter used shall be construed to mean "deed of trust" or "trust deed" or "deed to secure debt" if the context so requires) bearing the aforesaid date to secure the Note and creating a lien on Assignor's interest in certain real estate in the County of Montgomery, Commonwealth of Pennsylvania more particularly described in Exhibit A attached hereto and made a part hereof, including the improvements now or hereafter thereon and the easements, rights and appurtenances thereunto belonging, all of which are hereinafter called the "Mortgaged Premises"; and

    WHEREAS, Assignor is the lessor under that certain written lease of the Mortgaged Premises to Circuit City Stores, Inc. made under date of JUNE 30, 1993 and Assignor may hereafter make other leases of the Mortgaged Premises or parts thereof; and

    WHEREAS, Assignee has required the assignment hereafter made as a condition to making the above loan; and

    NOW, THEREFORE, Assignor, for good and valuable considerations the receipt of which is hereby acknowledged, does hereby bargain, sell, transfer, assign, convey, set over and deliver unto Assignee, absolutely, presently and unconditionally, all rights of the lessor under the above described lease and all other leases affecting the Mortgaged Premises, or any part thereof, now existing or which may be executed at any time in the future during the life of this Assignment, and all amendments, extensions and renewals of said leases and any of them, all of which are hereinafter called the "Leases," and all rents, income and other payments which may now or hereafter be or become due or owing under the Leases, and any of them, or on account of the use of the Mortgaged Premises. This Assignment includes, without limitation, (i) all rents (whether denoted as minimum rent, percentage rent, additional rent or otherwise), income, profits and other sums due or to become due under the Leases, or any of them (together with any payments in lieu of rent as provided in subsection (iii) below, collectively, the "Rents"); (ii) all security deposits made by any tenant or subtenant under any Lease; (iii) any payments made in lieu of rent; and (iv) any guaranties of payment or performance of any tenant's or subtenant's obligations under any Lease. It is intended hereby to establish a present, possessory, absolute, vested and complete transfer and assignment of all the Leases and all

BK5047FG1002

rights of the lessor thereunder and all the Rents, and other payments arising thereunder on account of the use of the Mortgaged Premises unto Assignee, with the right, but without the obligation, to collect all of said Rents, income and other payments which may become due during the life of this Assignment. Assignor agrees to deposit with Assignee all Rents of all or any portion of the Mortgaged Premises.

Assignor hereby appoints Assignee the true and lawful attorney of Assignor with full power of substitution and with power for it and in its name, place and stead, to demand, collect, receipt and give complete acquittances for any and all rents and other amounts herein assigned which may be or become due and payable by the lessees and other occupants of the Mortgaged Premises, and at its discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of Assignor or otherwise, which Assignee may deem necessary or desirable in order to collect and enforce the payment of any and all rents and other amounts herein assigned. Lessees of the Mortgaged Premises, or any part thereof, are hereby expressly authorized and directed to pay all rents and other amounts herein assigned to Assignee or such nominee as Assignee may designate in writing delivered to and received by such lessees who are expressly relieved of any and all duty, liability or obligation to Assignor in respect of all payments so made.

Assignee is hereby vested with full power to use all measures, legal and equitable, deemed by it necessary or proper to enforce this Assignment and to collect the rents and other amounts assigned hereunder, including the right to enter upon the Mortgaged Premises, or any part thereof, and take possession thereof forthwith to the extent necessary to effect the cure of any default on the part of Assignor as lessor in any of the Leases. Assignor hereby grants full power and authority to Assignee to exercise all rights, privileges and powers herein granted at any and all times hereafter, without notice to Assignor, with full power to use and apply all of the rents and other amounts assigned hereunder to the payment of the costs of managing and operating the Mortgaged Premises and of any indebtedness or liability of Assignor to Assignee, including but not limited to the payment of taxes, special assessments, insurance premiums, damage claims, the costs of maintaining, repairing, rebuilding and restoring the improvements on the Mortgaged Premises or of making same rentable, attorney fees and costs incurred in connection with the interpretation or enforcement of this Assignment, and of principal and interest payments due from Assignor to Assignee on the Note and the Mortgage, all in such order as Assignee may determine. Assignee shall be under no obligation to press any of the rights or claims assigned to it hereunder or to perform or carry out any of the obligations of the lessor under any of the Leases and does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of Assignor in the Leases; and Assignor covenants and agrees that it will faithfully perform all of the obligations imposed under any and all of the Leases and hereby agrees to indemnify Assignee and to hold it harmless from any liability, loss or damage which may or might be incurred by it under the Leases or by reason of this Assignment, and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any of the Leases. This Assignment shall not operate to place responsibility for

-2-

the control, care, management or repair of the Mortgaged Premises, or parts thereof, upon Assignee nor shall it operate to make Assignee liable for the carrying out of any of the terms and conditions of any of the Leases, or for any waste of the Mortgaged Premises by the lessee under any of the Leases or any other party, or for any dangerous or defective condition of the Mortgaged Premises or for any negligence in the management, upkeep, repair or control thereof resulting in loss or injury or death to any lessee, licensee, employee or stranger.

Any amounts collected hereunder by Assignee which are in excess of those applied to pay in full the aforesaid liabilities and indebtedness at the time due shall be promptly paid to Assignor provided no default has occurred in the payment of any indebtedness secured hereby or in the performance of any obligation, covenant or agreement of Assignor contained herein or in the Note or the Mortgage, or in any of the Leases.

Assignor hereby represents and warrants to Assignee that it is the sole owner of the entire lessor's interest in each of the Leases; that the Leases are not in default and are valid and enforceable and have not been altered, modified or amended in any manner whatsoever except as herein expressly mentioned; that Assignor has not heretofore transferred or assigned the Leases or any of the rents thereunder or any right or interest therein, nor has it collected in advance or anticipated any of the rents thereunder; and Assignor represents and warrants that it is not indebted to the lessees under the Leases in any manner whatsoever so as to give rise to any right of set-off against, or reduction of, the rents payable under the Leases.

Assignor covenants not to alter, modify, amend or change the terms of the Leases or give any consent or permission or exercise any option required or permitted by the terms thereof or waive any obligation required to be performed by any lessee or execute, cancel or terminate any of the Leases or accept a surrender thereof without prior written consent of Assignee, and Assignor will not make any further transfer or assignment thereof, or convey or transfer or suffer a conveyance or transfer of the Mortgaged Premises or of any interest therein so as to effect, directly or indirectly, merger of the estates and rights of, or a termination or diminution of the obligations of, any lessee thereunder. Assignor further covenants not to release any guarantor or surety of any of the Leases. Assignor further covenants to deliver to Assignee, promptly upon receipt thereof, copies of any and all demands, claims and notices of default received by it from any lessee under any of the Leases assigned herein.

Anything to the contrary contained herein notwithstanding, Assignor hereby assigns to Assignee any award hereafter made to Assignor in any court procedure involving any of the tenants or subtenants under the Leases in any bankruptcy, insolvency, or reorganization in any state or Federal court. Assignor hereby appoints Assignee as its irrevocable attorney-in-fact to appear in any such action and/or to collect any such award or payment.

Assignor further assigns to Assignee any purchase proceeds receivable by reason of any tenant's or subtenant's exercising any right of first refusal or any option to purchase the Mortgaged Premises or any portion thereof as may be provided in any of the Leases or any additions, amendments or supplements thereto.

BK5047PG1004

Upon payment in full of the principal sum, interest and other indebtedness evidenced by the Note and secured hereby, and satisfaction and discharge of the Obligations under the Mortgage, this Assignment shall be released and shall become null and void; otherwise, it shall remain in full force and effect as herein provided and, with the covenants, warranties and power of attorney herein contained, shall inure to the benefit of Assignee and any subsequent holder of the Note, and shall be binding upon Assignor, and its heirs, legal representatives, successors and assigns, and any subsequent owner of the Mortgaged Premises.

Anything in this Assignment, the Mortgage, the Note or any other instrument or agreement by which the Note is secured to the contrary notwithstanding, the liability of Assignor for the payment of any principal, interest or premium due under the Note shall be limited to the premises and, if a deficiency is established upon enforcement against the premises, to the property securing the Affiliate Notes, as defined in the Note, and Assignee shall not seek any deficiency judgment against Assignor or make any resort therefor to any property of Assignor other than the premises and the property securing the Affiliate Notes, and the rents, issues, proceeds and profits thereof which rents, issues, proceeds and profits are not applied to payments under the loan documents and which accrue after a default or any event which with the giving of notice or passage of time could result or ripen into an Event of Default. The provisions of this paragraph however shall not: (i) limit Assignor's personal liability for its obligations under this Assignment, the Mortgage or any other instrument or agreement by which the Note is secured for taxes, assessments or insurance relating to the Mortgaged Premises, incurred during the period of the Assignor's ownership of the Mortgaged Premises and beyond applicable grace or cure periods, as defined herein or therein, or for Assignor's obligation to indemnify and hold Assignee harmless from any loss or damage from any Hazardous Material that exists upon or is discharged from the Mortgaged Premises; (ii) limit or impair the lien or enforcement of any other instrument or agreement by which the Note is secured or the right of Assignee to collect all sums due hereunder or thereunder except as expressly limited by this paragraph; (iii) cause the failure of Assignor to make all payments of principal, interest and premium or to perform any obligation under the Mortgage or any instrument or agreement by which the Note is secured within the time periods provided herein or therein from being an Event of Default thereunder; (iv) be construed as limiting the obligations of Assignor under any lease of the Mortgaged Premises; (v) limit the obligations of any indemnitor or guarantor, if any, of Assignor's obligations under the Mortgage, the Note or any other instrument or agreement by which it is secured; or (vi) limit the Assignor's personal liability for: (a) property income received after an Event of Default and not applied to fixed and operating expenses of the Mortgaged Premises, (b) sums paid by Assignee in fulfilling Assignor's obligations under any lease, (c) security deposits, or (d) the misapplication of prepaid rents or other similar sums paid in connection with the Mortgaged Premises.

Notwithstanding the foregoing, this agreement not to pursue recourse liability SHALL BECOME NULL AND VOID and shall be of no future force or effect in the event:

(A) of an Event of Default pursuant to a violation of paragraph 1 (1) of the Mortgage; or

-4-

BK5047PG1005

(B) of an Event of Default pursuant to a violation of paragraph 10 (b), (c) or (d) of the Mortgage; or

(C) of any fraud or willful misrepresentation by Assignor or any of the entities or individuals comprising Assignor in connection with the Mortgaged Premises, the loan documents, or any other aspect of the loan.

Concurrently with the execution of any lease covering the Mortgaged Premises, Assignor will notify the lessee, by U.S. Certified Mail, of the existence of this Assignment and will deliver an executed copy of this Assignment to such lessee, directing such lessee to make all payments under its lease to Assignee or its nominee in accordance with the terms of this Assignment.

It is understood and agreed that this Assignment shall become effective concurrently with the Note and the Mortgage.

This Assignment shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

This Assignment shall be binding upon Assignor and its successors and assigns, including any subsequent owner of the Mortgaged Premises, and shall inure to the benefit of Assignee and its successors and assigns, including any assignee of the Note and the Mortgage. In furtherance and not in limitation of the foregoing, Assignee, as the holder of the Mortgage, shall have the right to assign all of Assignee's rights, title, interest and privilege in and to the Leases to any subsequent holder of the Mortgage, and to assign the same to any person acquiring title to the Mortgaged Premises through foreclosure or otherwise.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed and delivered as of the date first hereinabove written.

        CIRCUIT INVESTORS #5 -
        MONTGOMERYVILLE LIMITED
        PARTNERSHIP, a Pennsylvania
        limited partnership

        By: CIRCUIT GENERAL PARTNER #5 -
           PENNSYLVANIA, INC., a
           Pennsylvania corporation,
           General Partner

ATTEST:

By _____
Its President

[Corporate Seal of General Partner]

-5-

BK5047PG1006

State of New York
~~COMMONWEALTH OF PENNSYLVANIA:~~
                                        : ss
COUNTY OF New York    :

On this, the 30th day of June,
19 93, before me, the undersigned officer, personally appeared
Gil J. Besing, who acknowledged
himself to be the President of
Circuit General Partner #5 - Pennsylvania, Inc., a corporation,
general partner of Circuit Investors #5 - Montgomeryville
Limited Partnership, a limited partnership, and that he as such
President, being authorized to do so,
executed the foregoing instrument for the purposes therein
contained by signing the name of the corporation on behalf of
such partnership by himself as President.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_____
Notary Public

[Notarial Seal]

My Commission Expires 8/3/93

DAWN M. SCHOENIG
Notary Public, State of New York
No. 52-4900811
Qualified in Suffolk County
Commission Expires August 3, 1993

-6-

BK 5047 PG 1007

EXHIBIT A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the Township of Montgomery, County of Montgomery, State of Pennsylvania, described according to an Assemblage and Redivision Plan prepared by Wayne W. Burgett, P.L.S. dated 8/27/1991, last revised 5/6/1992, as follows, to wit:

BEGINNING at a point on the legal right-of-way line S.R. 0309, a corner of Parcel B, said point being measured South 03 degrees 26 minutes 57 seconds East, 235.00 feet from a point of intersection with the legal right-of-way line of North Wales Road (S.R. 2010); thence extending from said point of beginning along Parcel B, the seven following courses and distances: (1) South 86 degrees 33 minutes 03 seconds West 34.00 feet to a point; (2) South 02 degrees 11 minutes 00 seconds West 90.00 feet to a point; (3) South 86 degrees 33 minutes 03 seconds West, 157.00 feet to a point; (4) South 03 degrees 26 minutes 57 seconds East 58.45 feet to a point; (5) South 19 degrees 55 minutes 32 seconds West, 29.00 feet to a point; (6) South 03 degrees 26 minutes 57 seconds East, 85.00 feet to a point; (7) South 38 degrees 42 minutes 38 seconds East, 84.33 feet to a point on the ultimate right-of-way line of North Wales Road; thence extending along the same South 52 degrees 18 minutes 48 seconds West, 195 feet to a point, a corner of Lot 23; thence extending along the aforesaid lot and also along Lots 14 through 23 inclusive the four following courses and distances: (1) North 37 degrees 41 minutes 12 seconds West, 155.00 feet to a point and (2) North 31 degrees 09 minutes 14 seconds West, 261.24 feet to a point; (3) North 46 degrees 17 minutes 48 seconds East, 211.20 feet to a point; (4) North 04 degrees 49 minutes 53 seconds West, 537.41 feet to a point, said point being along land designated as Block 6B, Unit 37; thence extending along the aforesaid land and also lands designated as Block 6B, Unit 38 and Block 6, Units 12, 11, 17 and 18 the four following courses and distances: (1) South 48 degrees 36 minutes 53 seconds East 190.00 feet to a point; (2) South 10 degrees 42 minutes 53 seconds East 260.53 feet to a point; (3) South 02 degrees 14 minutes 40 seconds East, 176.37 feet to a point; (4) North 86 degrees 33 minutes 03 seconds East, 213.48 feet to a point on the legal right-of-way line of S.R. #0309; thence extending along the same South 03 degrees 26 minutes 57 seconds East, 25.81 feet to the first mentioned point and place of beginning.

BEING known as Parcel A, as shown on the above mentioned Plan.

CONTAINING in area 4.609 acres, more or less.

BEING FOLIO NUMBER 46-00-00364-00-4, 46-00-02884-00-4.

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
46-00-00364-00-4  MONTGOMERY
BETHLEHEM PIKE
CIRCUIT CITY STORES INC #4101
B 006  U 038 L          2208  DATE: 07/13/93

BK5047PG1008