CIRCUIT CITY STORES, INC.

Tenant

– with –

<u>CIRCUIT DISTRIBUTION – ILLINOIS LIMITED PARTNERSHIP,</u>
an Illinois limited partnership

Landlord

AMENDED AND RESTATED LEASE

DuPage County, Illinois

MCGUIRE, WOODS, BATTLE & BOOTHE
ONE JAMES CENTER
901 E. CARY STREET
RICHMOND, VIRGINIA 23219-4030

# INDEX

| SECTION | | PAGE |
|---|---|---|
| 1. | Demise of Premises | 1 |
| 2. | Certain Definitions | 2 |
| 3. | Title and Condition | 6 |
| 4. | Use of Leased Premises; Quiet Enjoyment | 10 |
| 5. | Term | 12 |
| 6. | Rent | 13 |
| 7. | Net Lease; Non-Terminability | 15 |
| 8. | Payment of Impositions; Compliance with Legal Requirements and Insurance Requirements | 17 |
| 9. | Liens; Recording and Title | 19 |
| 10. | Indemnification | 20 |
| 11. | Maintenance and Repair | 21 |
| 12. | Alterations | 24 |
| 13. | Condemnation | 26 |
| 14. | Insurance | 33 |
| 15. | Restoration | 42 |
| 16. | Subordination to Financing | 44 |
| 17. | Assignment, Subleasing | 47 |
| 18. | Permitted Contests | 55 |
| 19. | Conditional Limitations; Default Provisions | 57 |
| 20. | Additional Rights of Landlord | 64 |
| 21. | Notices | 66 |
| 22. | Estoppel Certificates | 67 |
| 23. | Surrender and Holding Over | 68 |
| 24. | No Merger of Title | 70 |

25. Definition of Landlord . . . . . . . . . . . . . . . . . . . 70

26. Hazardous Substances . . . . . . . . . . . . . . . . . . . . 71

27. Entry by Landlord . . . . . . . . . . . . . . . . . . . . . 72

28. Statements . . . . . . . . . . . . . . . . . . . . . . . . . 73

29. No Usury . . . . . . . . . . . . . . . . . . . . . . . . . . 74

30. Broker . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

31. Separability . . . . . . . . . . . . . . . . . . . . . . . . 74

32. Completion of Construction of Improvements . . . . . . . . . 74

33. Tenant to Comply With Reciprocal Easement Agreement . . 75

34. Additional Rent . . . . . . . . . . . . . . . . . . . . . . 76

35. Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . 76

36. Expansion . . . . . . . . . . . . . . . . . . . . . . . . . 78

37. Limitation on Right to Sell . . . . . . . . . . . . . . . . 92

38. Original Lease . . . . . . . . . . . . . . . . . . . . . . . 93

EXHIBIT A    - Description of Land
EXHIBIT B    - Machinery and Equipment
EXHIBIT C    - Basic Rent
EXHIBIT D    - Rejectable Offer Schedule
EXHIBIT E    - Expansion Land
EXHIBIT F    - Expansion Land Costs

THIS AMENDED AND RESTATED LEASE AGREEMENT made as of this 21st day of October, 1993, by and between Circuit Distribution - Illinois Limited Partnership, an Illinois limited partnership xxxx_____, having an office at c/o Cardinal Capital Partners, 10000 North Central Expressway, Suite 1000, Dallas, Texas. 75231 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation, having its principal office at 9950 Mayland Drive, Richmond, Virginia 23233-1464 ("Tenant").

Industrial Developments International, Inc., as landlord, and Tenant, as tenant, entered into that certain Lease Agreement dated as of November 25, 1992 (the "Original Lease") for the premises described herein as the "Leased Premises". Landlord has succeeded to the interest of the landlord under the Original Lease. Landlord and Tenant now desire to amend and restate the Original Lease in its entirety as set forth herein.

NOW, THEREFORE, in consideration of the rents and provisions herein stipulated to be paid and performed, Landlord and Tenant hereby covenant and agree as follow:

1. <u>Demise of Premises</u>. Landlord hereby demises and lets to Tenant and Tenant hereby takes and leases from Landlord for the term or terms and upon the provisions hereinafter specified the following described property (collectively, the "Leased Premises"): (i) the premises described in <u>Exhibit A</u> attached hereto and made a part hereof together with the easements, rights and appurtenances thereunto belonging or appertaining (collectively the "Land"); (ii) the buildings, structures and other improvements constructed and to be constructed on the Land

(collectively, the "Improvements"); and (iii) the machinery and equipment described in <u>Exhibit B</u> attached hereto and made a part hereof and installed in and upon the Improvements, together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease (collectively, the "Equipment") excepting therefrom Tenant's Trade Fixtures.

2. <u>Certain Definitions</u>.

(a) "Additional Rent" shall mean Additional Rent as defined in Paragraph 34.

(b) "Adjoining Property" shall mean all sidewalks, curbs, gores and vault spaces adjoining any of the Leased Premises.

(c) "Alteration" or "Alterations" shall mean any or all changes, additions, improvements, reconstructions or replacements of any of the Improvements or Equipment, both interior or exterior, and ordinary and extraordinary.

(d) Intentionally omitted.

(e) "Basic Rent" shall mean Basic Rent as defined in Paragraph 6.

(f) "Basic Rent Payment Dates" shall mean the Basic Rent Payment Dates as defined in Paragraph 6.

(g) "Casualty Termination Date" shall mean the Casualty Termination Date as defined in Paragraph 14(h).

(h) "Commencement Date" shall mean  October 21, 1993  .

(i) "Condemnation" shall mean a Taking and/or a

Requisition as defined in subdivisions (y) and (ab) respectively of this Paragraph 2.

(j) "Default Rate" shall mean the Default Rate as defined in Paragraph 19(b)(4).

(k) "Event of Default" shall mean an Event of Default as defined in Paragraph 19(a).

(l) "Expiration Date" shall mean, in the case of the original term hereof, November 30, 2015, and in the case of any renewal terms exercised hereunder, the last day of such renewal term.

(m) "Impositions" shall mean the Impositions as defined in Paragraph 8.

(n) "Insurance Requirement" or "Insurance Requirements" shall mean, as the case may be, any one or more of the terms of each insurance policy required to be carried by Tenant under this Lease and the requirements of the issuer of such policy, and whenever Tenant shall be engaged in making any Alteration or Alterations, repairs or construction work of any kind (collectively "Work") the terms "Insurance Requirement" or "Insurance Requirements" shall be deemed to include a requirement that Tenant or its Contractor shall obtain workmen's compensation insurance or other adequate insurance coverage covering all persons employed in connection with the Work, whether by Tenant, its contractors or subcontractors and with respect to whom death or bodily injury claims could be asserted against Landlord.

3

(o) "Law" shall mean any constitution, statute or rule of law.

(p) "Legal Requirement" or "Legal Requirements" shall mean, as the case may be, any one or more of all present and future laws, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every duly constituted governmental authority or agency (but excluding those which by their terms are not applicable to and do not impose any obligation on Tenant, Landlord or the Leased Premises as a result of some grandfather clause or similar provision) and all covenants, restrictions and conditions now or hereafter of record which may be applicable to Tenant, to Landlord or to any of the Leased Premises, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of any of the Leased Premises, even if compliance therewith (i) necessitates structural changes or improvements or results in interference with the use or enjoyment of any of the Leased Premises or (ii) requires Tenant to carry insurance other than as required by the provisions of this Lease.

(q) "Lender" shall mean an entity which makes a Loan to Landlord, secured by a First Mortgage and evidenced by a Note or which is the holder of the First Mortgage and Note as a result of an assignment thereof.

(r) "Loan" shall mean a loan made by a Lender to Landlord secured by a Mortgage and evidenced by a Note.

(s) "Mortgage" shall mean a mortgage or similar security instrument hereafter executed covering the Leased Premises from Landlord to Lender.

(t) "Net Award" shall mean the entire award payable to Landlord by reason of a Condemnation, less any expenses incurred by Landlord in collecting such award.

(u) "Net Proceeds" shall mean the entire proceeds of any insurance required under clauses (i), (iv), (v) or (vi) of Paragraph 14(a), less any expenses incurred by Landlord in collecting such proceeds.

(v) "Note" shall mean a Promissory Note hereafter executed from Landlord to Lender, which Note will be secured by a Mortgage and an assignment of leases and rents.

(w) "Permitted Encumbrances" shall mean those covenants, restrictions, reservations, liens, conditions, encroachments, easements and other matters listed in the title policy which insures the fee title of Landlord to the Leased Premises and utility and access easements now or hereafter granted for the benefit of the Leased Premises.

(x) "Replaced Equipment" or "Replacement Equipment" shall mean the Replaced Equipment and Replacement Equipment, respectively, as defined in Paragraph 11(d).

(y) "Requisition" shall mean any temporary condemnation or confiscation of the use or occupancy of any of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental

authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

(z) "Restoration" shall mean the Restoration as defined in Paragraph 13(c).

(aa) "State" shall mean the State or Commonwealth in which the Leased Premises are situated.

(ab) "Taking" shall mean any taking of any of the Leased Premises in or by condemnation or other eminent domain proceedings pursuant to any law, general or special, or by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceedings or by any other means, or any de facto condemnation.

(ac) "Term" shall mean the Term as defined in Paragraph 5.

(ad) "Termination Date" shall mean the Termination Date as defined in Paragraph 13(b).

(ae) "Trade Fixtures" shall mean all fixtures, equipment and other items of personal property which are owned by Tenant and used in the operation of the business conducted on the Leased Premises, excluding therefrom the Equipment.

3. <u>Title and Condition</u>.

(a) The Leased Premises are demised and let subject to (i) the rights of any parties in possession of any of the Leased Premises, (ii) the existing state of title of the Leased Premises, including the Permitted Encumbrances, and any other matters of title existing on the Commencement Date which are not
6

caused by Landlord, (iii) any state of facts which an accurate survey or physical inspection of the Leased Premises might show, (iv) all Legal Requirements, and Insurance Requirements, including any existing violation of any thereof, and (v) the condition of the Leased Premises as of the commencement of the Term, without representation or warranty by Landlord; it being understood and agreed, however, that the recital of the Permitted Encumbrances herein shall not be construed as a revival of any thereof which for any reason may have expired.

(b) LANDLORD HAS NOT MADE AND WILL NOT MAKE ANY INSPECTION OF ANY OF THE LEASED PREMISES, AND LANDLORD LEASES AND WILL LEASE AND TENANT TAKES AND WILL TAKE THE LEASED PREMISES AS IS, AND TENANT ACKNOWLEDGES THAT LANDLORD (WHETHER ACTING AS LANDLORD HEREUNDER OR IN ANY OTHER CAPACITY) HAS NOT MADE AND WILL NOT MAKE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE LEASED PREMISES, INCLUDING ANY WARRANTY OR REPRESENTATION AS TO ITS FITNESS FOR USE OR PURPOSE, DESIGN OR CONDITION FOR ANY PARTICULAR USE OR PURPOSE, AS TO THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, LATENT OR PATENT, AS TO LANDLORD'S TITLE THERETO, OR AS TO VALUE, COMPLIANCE WITH SPECIFICATIONS, LOCATION, USE, CONDITION, MERCHANTABILITY, QUALITY, DESCRIPTION, DURABILITY OR OPERATION, IT BEING AGREED THAT ALL RISKS INCIDENT THERETO ARE TO BE BORNE BY TENANT. TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION AND TO ITS SPECIFICATIONS, AND THAT THE LEASED PREMISES HAVE BEEN

INSPECTED BY TENANT AND ARE SATISFACTORY TO IT. IN THE EVENT OF ANY DEFECT OR DEFICIENCY IN ANY OF THE LEASED PREMISES OF ANY NATURE, WHETHER PATENT OR LATENT, LANDLORD SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT). THE PROVISIONS OF THIS PARAGRAPH 3(b). HAVE BEEN NEGOTIATED, AND THE FOREGOING PROVISIONS ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY WARRANTIES BY LANDLORD, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE LEASED PREMISES, ARISING PURSUANT TO THE UNIFORM COMMERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(c) Tenant represents to Landlord that Tenant has examined the title to the Leased Premises prior to the execution and delivery of this Lease and has found the same to be satisfactory for the purposes contemplated hereby and acknowledges that this is a true lease, that title is in Landlord and that Tenant has only the right of possession and use of the Leased Premises as provided in this Lease.

(d) Landlord hereby conditionally assigns, without recourse or warranty whatsoever, to Tenant, all warranties, guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of any of the Leased Premises, including, but not limited to, any rights and remedies existing under contract or pursuant to the Uniform Commercial Code (collectively, the "guaranties"). Such assignment shall

remain in effect so long as no Event of Default exists hereunder or until the termination of this Lease, whereupon Tenant shall reassign any interest so assigned hereunder to Landlord. Landlord shall also retain the right to enforce any guaranties assigned in the name of Tenant upon the occurrence of an Event of Default. Landlord hereby agrees to execute and deliver at Tenant's expense such further documents, including powers of attorney, as Tenant may reasonably request (and which in the good faith judgment of Landlord, do not adversely affect a substantial general interest of Landlord), in order that Tenant may have the full benefit of the assignment effected or intended to be effected by this Paragraph 3(d). Upon the occurrence of an Event of Default, or termination of this Lease the guaranties shall automatically revert to Landlord. The foregoing provision of reversion shall be self-operative and no further instrument of reassignment shall be required. In confirmation of such reassignment Tenant shall execute and deliver promptly any certificate or other instrument which Landlord may request. Any monies collected by Tenant under any of the guaranties after the occurrence of and during the continuation of an Event of Default shall be held in Trust by Tenant and promptly paid over to Landlord.

(e) Landlord agrees to enter into with Tenant, at Tenant's expense, such easements, covenants or restrictions for utilities, parking or other matters as desirable for operation of the Leased Premises or properties adjacent thereto (collectively

9