14(a)(iii) hereof) name Landlord, Tenant and any Lender as additional insured parties, as their respective interests may appear. If said insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant or become void or unsafe by reason of the failure or impairment of the capital of any insurer, Tenant shall immediately obtain new or additional insurance reasonably satisfactory to Landlord and Lender.

(d) Each insurance policy referred to in clauses (i), (iv), (v) (and (vi) if requested by Lender) of Paragraph 14(a), shall contain standard non-contributory mortgagee clauses in favor of any Lender. Each policy shall provide that it may not be cancelled except after 30 days prior notice to Landlord and any Lender. Each policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of any of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Lender pursuant to any provision of the Mortgage upon the happening of an event of default therein, or (iv) any change in title or ownership of any of the Leased Premises.

(e) Tenant shall pay as they become due all premiums for the insurance required by this Paragraph 14, shall renew or

replace each policy, and shall deliver to Landlord and Lender, a certificate or other evidence (reasonably satisfactory to Lender and Landlord) of the existing policy and such renewal or replacement policy and evidence of the payment of the full premium therefor at least thirty days prior to the Expiration Date (as hereinafter defined) of each policy. Each such policy shall provide that it shall not expire until the Landlord and Lender shall receive a notice from the insurer to the effect that a policy will expire on a date (the "Expiration Date") which shall be thirty (30) days following the date of the receipt by Landlord and Lender of such notice. In the event of Tenant's failure to comply with any of the foregoing requirements of this Paragraph 14, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant, together with interest thereon at the Default Rate, from the time of payment by Landlord until fully paid by Tenant immediately upon written demand therefor by Landlord.

(f) Anything in this Paragraph 14 to the contrary notwithstanding, any insurance which Tenant is required to obtain pursuant to Paragraph 14(a) may be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant, provided that such "blanket" policy or policies otherwise comply with the provisions of this Paragraph 14. In the event any such insurance is carried under a blanket policy, Tenant shall deliver to Landlord and Lender a certified copy of those

provisions of the blanket policy that pertain to the Leased Premises, if any, to evidence the issuance and effectiveness of the policy, the amount and character of the coverage with respect to the Leased Premises and the presence in the policy of provisions of the character required in the above sections of this Paragraph 14.

(g) In the event of any casualty loss exceeding $100,000, Tenant shall give Landlord immediate notice thereof. If under the provisions of Paragraph 14(h), Tenant is not obligated to restore the Leased Premises, Landlord and Lender are hereby authorized to adjust, collect and compromise, in Lender or Landlord's name, in that order, all claims under any of the insurance policies required by this Paragraph 14 (except the public liability and worker's compensation insurance) and to execute and deliver all necessary proofs of loss, receipts, vouchers and releases required by the insurers. Tenant agrees to sign, upon request of Landlord or Lender, all such proofs of loss, receipts, vouchers and releases. At all other times, Tenant shall adjust, collect and compromise any and all such claims, with the consent of Lender and Landlord, not to be unreasonably withheld or delayed and Landlord and Lender shall have the right to join with Tenant therein. If the estimated cost of Restoration or repair shall be Five Hundred Thousand ($500,000.00) Dollars or less, all proceeds of any insurance required under clauses (i), (iv), (v) (and (vi) if requested by Lender) of Paragraph 14(a) shall be payable to Tenant, provided

that Tenant at such time shall have a tangible net worth of not less than Three Hundred Million ($300,000,000.00) Dollars as determined in accordance with generally accepted accounting principles, consistently applied, and in all other events to a Trustee which shall be a federally insured bank or other financial institution, selected by Landlord and Tenant and reasonably satisfactory to Lender (the "Trustee"). If the Leased Premises shall be covered by a Mortgage, Lender, if it so desires, shall be the Trustee. Each insurer is hereby authorized and directed to make payment under said policies, including return of unearned premiums, directly to such Trustee instead of to Landlord and Tenant jointly; and Tenant hereby appoints such Trustee as Tenant's attorney-in-fact to endorse any draft therefor for the purposes set forth in this Lease after approval by Tenant of such Trustee, if Trustee is other than Lender.

In the event of any casualty (whether or not insured against) resulting in damage to the Leased Premises or any part thereof, the Term shall nevertheless continue and there shall be no abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder, except as hereinafter in Paragraph 14(h) specifically provided. The Net Proceeds of such insurance payment shall be retained by Tenant or the above-mentioned Trustee as applicable and, promptly after such casualty, Tenant, in accordance with the provisions of Paragraphs 11(a) and 12, shall commence and diligently continue to perform the Restoration to the Leased Premises. Upon payment to the

Trustee of such Net Proceeds, the Trustee shall, to the extent available, make the Net Proceeds available to Tenant for restoration, in accordance with the provisions of Paragraph 15. Tenant shall, whether or not the Net Proceeds are sufficient for the purpose, promptly repair or replace the Improvements and Equipment in accordance with the provisions of Paragraph 11(a) and the Net Proceeds of such loss shall thereupon be payable to Tenant, subject to the provisions of Paragraph 15 hereof.

(h)  If the Leased Premises are damaged to the extent of 50% or more of the value thereof within such time as less than three (3) years remain in any Term, Tenant shall have no obligation to restore the Leased Premises if (i) it shall give notice to Landlord of its intent not to so restore not later than ninety (90) days after such casualty, (ii) no Event of Default is then outstanding, and (iii) Tenant is carrying the insurance required by the provisions of paragraph 14(a) (i), (iii), (iv), (v) and (vi) or has self insured in accordance with paragraph 14(b), and in such event, all Net Proceeds payable in connection with such casualty, including the hereinafter defined "Tenant Insurance Payment" shall be delivered to Lender or Landlord, in that order, and the Term of this Lease shall terminate upon such payment and payment of all sums otherwise due and payable by Tenant hereunder through the Basic Rent Payment Date stated in Tenant's notice (the "Casualty Termination Date").  In the event that any damage or destruction shall be subject to the self insurance provisions provided for in 14(b), Tenant shall pay to

40

Landlord the amount of the proceeds that would have been payable had such self insurance program not been in effect (the "Tenant Insurance Payment"). Any notice given by Tenant to Landlord under this Paragraph 14(h) shall be of no force or effect if (x) any Event of Default is then outstanding or (y) the cost of restoration of such damage or destruction exceeds the aggregate of the (i) Net Proceeds payable to Landlord under insurance policies required to be carried by Tenant under the provisions of this Paragraph 14 and the Tenant Insurance Payment and (ii) any additional amounts paid by Tenant to Lender or Landlord, in that order, at Tenant's option.

Notwithstanding anything to the contrary hereinabove contained, if, prior to the Casualty Termination Date, Landlord or the Trustee shall not have received the full amount of Net Proceeds and Tenant Insurance Payment payable by reason of the Casualty, the Casualty Termination Date shall automatically be extended to the first Basic Rent Payment Date after receipt by Landlord of the full amount of the Net Proceeds and Tenant Insurance Payment. Such extension shall occur regardless of the reason for the failure of either Trustee or Landlord to receive the full amount of the Net Proceeds and Tenant Insurance Payment prior to the originally stated Casualty Termination Date and Landlord shall have the right to contest the amount of any Net Proceeds and Tenant Insurance Payment.

15. <u>Restoration</u>.

Net Proceeds, Restoration Award and Tenant Insurance Payment (the aggregate of which being herein defined as the "Restoration Fund") shall be disbursed by the Trustee in accordance with the following conditions:

(i) If the cost of Restoration exceeds $1,000,000, then prior to commencement of the Restoration, the plans and specifications for the Restoration shall have been approved by Landlord, which approval shall not be unreasonably withheld or delayed.

(ii) At the time of any disbursement, no Event of Default shall exist and no mechanics' or materialmen's liens shall have been filed and remain undischarged or unbonded.

(iii) Disbursements shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement upon receipt of (1) satisfactory evidence, including architects' certificates of the stage of completion, of the estimated cost of completion and of performance of the work to date in a good and workmanlike manner in accordance with the plans and specifications, (2) waivers of liens, (3) a satisfactory bring down of title insurance, and (4) other evidence of cost and payment so that Landlord can verify that the amounts disbursed from time to time are represented by work that is completed in place and free and clear of mechanics' lien claims.

(iv) Each request for disbursement shall be accompanied by a certificate of Tenant, signed by the President or any Vice President of Tenant, describing the work for which payment is requested, stating the cost incurred in connection therewith and stating that Tenant has not previously received payment for such work and the certificate to be delivered by Tenant upon completion of the work shall, in addition, state that the work has been completed and complies with the applicable requirements of this Lease.

(v) The Trustee may retain ten percent of the Restoration Fund until the Restoration is fully completed in the reasonable judgment of the Lender.

(vi) The Restoration Fund shall be kept in a separate interest-bearing federally insured account by the Trustee or by Lender.

(vii) At all times the undisbursed balance of the Restoration Fund held by Trustee plus any funds contributed thereto by Tenant, at its option, shall be not less than the cost of completing the Restoration, free and clear of all liens.

In addition, unless Tenant has validly terminated this Lease pursuant to Paragraph 14(h), prior to commencement of Restoration and at any time during Restoration, if the estimated cost of Restoration, as reasonably determined by Landlord, exceeds the amount of the Net Proceeds, the Restoration Award and Tenant Insurance Payment available for such Restoration, the amount of such excess shall be paid by Tenant to the Trustee to

43

be added to the Restoration Fund or Tenant shall fund at its own expense the costs of such Restoration until the remaining Restoration Fund is sufficient for the completion of the Restoration. Any sum in the Restoration Fund which remains in the Restoration Fund upon the completion of Restoration shall be paid to Tenant. For purposes of determining the source of funds with respect to the disposition of funds remaining after the completion of Restoration, the Net Proceeds or the Restoration Award shall be deemed to be disbursed prior to any amount added by Tenant.

16. <u>Subordination to Financing</u>.

(a) Subject to the following sentence, Tenant agrees that this Lease shall at all times be subject and subordinate to the lien of any Mortgage, and Tenant agrees, upon demand, without cost, to execute instruments as may be required to further effectuate or confirm such subordination. Notwithstanding the foregoing or any contrary provisions of applicable law, so long as no Event of Default shall be outstanding, (i) Tenant's tenancy (of the original Leased Premises and, if the Expansion Option is exercised, the Expansion Premises) shall not be disturbed, nor shall this Lease be affected by any default under such Mortgage, and in the event of a foreclosure or other enforcement of any such Mortgage, or sale in lieu thereof, the purchaser at such foreclosure sale shall be bound to Tenant for the Term of this Lease and any extensions thereof, the rights of Tenant hereunder shall expressly survive, and this Lease shall in all respects

continue in full force and effect so long as Tenant fully performs all of its obligations hereunder; (ii) Tenant shall not be named as a party defendant in any such foreclosure suit, except as may be required by law; and (iii) in the event of any conflict between the terms of the Mortgage and this Lease, insurance proceeds and Restoration Award shall be permitted to be used for restoration in accordance with the provisions of this Lease. The provisions of this Paragraph 16(a) shall be self-operative and no further instrument shall be required to give effect to such provisions.

(b) Notwithstanding the provisions of subdivision (a) of this Paragraph 16, the holder of the Mortgage to which this Lease is subject and subordinate, as provided in said subdivision (a), shall have the right, at its sole option, at any time, to subordinate and subject the Mortgage, in whole or in part, to this Lease by recording a unilateral declaration to such effect.

(c) At any time prior to the expiration of the Term, Tenant agrees, at the election and upon demand of any owner of the Leased Premises, or of Lender who has granted non-disturbance to Tenant pursuant to Paragraph 16(a) above, to attorn, from time to time, to any such owner or Lender, upon the then executory terms and conditions of this Lease, for the remainder of the term originally demised in this Lease and for any renewal term, provided that such owner or Lender, shall then be entitled to possession of the Leased Premises subject to the provisions of this Lease. The provisions of this subdivision (c) shall enure

45