## LEASE AMENDMENT AGREEMENT
(DuPage County, Illinois)

THIS LEASE AMENDMENT AGREEMENT (the "Agreement") is dated as of March 1, 1993 by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Tenant") and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation (together with any of its affiliates to whom it assigns its interest or rights with respect to the property in question, "Purchaser"), and provides:

### RECITALS

A.  Industrial Developments International, Inc., as landlord ("Landlord"), and Circuit City Stores, Inc., as tenant, entered into a certain Lease Agreement dated November 25, 1992 (as the same may have heretofore been amended or modified, the "Original Lease") for certain land, improvements and related appurtenances located in DuPage County, Illinois and described in the Original Lease as the "Demised Premises".

B.  Purchaser has purchased or agreed to purchase the Demised Premises from the Landlord.

C.  Purchaser and Tenant desire to amend and restate the Original Lease if and when Purchaser purchases the Demised Premises and the Effective Date described below occurs.

NOW, THEREFORE, in consideration of ten dollars ($10.00) cash in hand paid, and the mutual agreements contained herein, and other good and valuable consideration the receipt of which is hereby acknowledged, Tenant and Purchaser agree as follows:

1.  Purchaser and Tenant have this day delivered to Republic Title of Texas, Inc., as escrow agent ("Escrow Agent"), four partially executed copies of an Amended and Restated Lease Agreement in the form of Exhibit A attached hereto (the "New Lease"), three partially executed copies of an Amended and Restated Memorandum of Lease in the form of Exhibit B attached hereto (the "New Lease Memorandum") and two fully executed copies of the Letter Agreement to Tenant from Landlord in the form of Exhibit C attached hereto (the "Letter Agreement"). The "Effective Date" shall be the date Purchaser consummates its purchase of the Demised Premises. If on the Effective Date, the Escrow Agent is in a position to issue the Policy, as defined below, and is committed to do so as set forth below, the Original Lease shall be automatically replaced, superseded, amended and restated by the New Lease effective as of the Effective Date, without any further action on the part of the parties hereto or any other person. Notwithstanding the foregoing, if the Effective Date has not occurred by March 15, 1994, then this

Agreement shall terminate, Escrow Agent shall destroy all originals of the New Lease, the New Lease Memorandum and the Letter Agreement, and the Original Lease shall remain in full force and effect in accordance with all of the terms thereof.

2. On the Effective Date, Escrow Agent shall ascertain whether, upon performing its duties under paragraph 3(i) through (v), it will be in a position to issue to Tenant a leasehold owner's policy of title insurance in accordance with the title commitment, as marked up, a copy of which is attached hereto as <u>Exhibit D</u> or otherwise in form acceptable to Tenant (either being the "Policy") contingent only upon Tenant's payment of the policy premium therefor. If Escrow Agent determines that it shall not be in such position, it shall give written notice (the "Title Notice") to Purchaser and Tenant by the close of business on the Effective Date. If Escrow Agent delivers its Title Notice on the Effective Date (and Tenant has not waived in writing its right to receive the Policy), then this Agreement shall terminate, Escrow Agent shall destroy all original of the New Lease, the New Lease Memorandum and the Letter Agreement, and the Original Lease shall remain in full force and effect in accordance with all of the terms thereof. If Escrow Agent does not deliver its Title Notice by close of business on the Effective Date, or if Escrow Agent waives its right to deliver such notice, it shall on the Effective Date become irrevocably committed to issue to Tenant the Policy contingent only upon Tenant's payment of the policy premium therefor.

3. If the Escrow Agent has not served a Title Notice on the Effective Date or has waived its right to deliver such Notice, Escrow Agent shall do the following:

   (i) Date each copy of the New Lease and the New Lease Memorandum as of the Effective Date;

   (ii) If the Commencement Date or Expiration Date has been left blank, insert (in both the New Lease and the New Lease Memorandum) the Effective Date as the Commencement Date of the New Lease and insert November 30, 2015 the Expiration Date;

   (iii) Deliver to each of Purchaser and Tenant two fully executed copies of the New Lease and one fully executed copy of the New Lease Memorandum, dated and completed as noted above;

   (iv) Deliver to each of Landlord and Tenant one fully executed copy of the Letter Agreement; and

   (v) Record in the land records of DuPage County, Illinois one fully executed, dated and completed copy of the New Lease Memorandum.

2

4. As promptly as practical after the Effective Date, and after receiving the premium therefor, Escrow Agent shall (unless it has issued its Title Notice) deliver to Tenant the Policy referred to in paragraph 2 above.

5. Purchaser covenants that at such time, if ever, as it purchases the Demised Premises, it shall also take an assignment of all of Landlord's rights under that certain "Landlord's Option" described in the Original Lease.

6. This Agreement shall in no respect be deemed to amend the Original Lease, and the Original Lease shall remain in full force and effect, until replaced as set forth in paragraph 1 above, if at all.

7. Cardinal Capital Partners, Inc., by its signature below, hereby guarantees the full and prompt payment of any damages recovered by Tenant against the landlord under the New Lease pursuant to Paragraph 36(e) thereof and shall reimburse Tenant for all expenses (including attorneys' fees and litigation expenses) incurred by Tenant in seeking to enforce against such landlord or Cardinal Capital Partners, Inc. the terms of such Paragraph 36(e) or this Paragraph or collecting any damages or other sums payable thereunder or hereunder.

8. This Agreement shall be binding upon the parties hereto, and their respective successors and assigns. This Agreement shall be governed by the laws of the State of Illinois. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument.

WITNESS the following signatures.

CIRCUIT CITY STORES, INC.

By: _Philip Dunn_
Its: _Treasurer_

CARDINAL CAPITAL PARTNERS, INC.

By: _[signature]_
Its: _Vice President_

The undersigned joins herein to accept the escrow referred to above and to acknowledge its agreement to abide by the terms

3

of this Agreement; provided, however, the undersigned shall have no liability hereunder or in connection with such escrow except to the extent its violates the terms of such escrow and such violation is determined to have resulted from the undersigned's willful misconduct or gross negligence.

REPUBLIC TITLE OF TEXAS, INC.

By: _____

Its: __Sr. Vice President__

Date: __10-21-93__

U:\1038\cc\industrial\1seamen8.DCI

4

This Instrument Prepared By
and return to:

Michael J. Schewel, Esq.
McGuire Woods Battle & Boothe
One James Center
Richmond, Virginia  23219

## AMENDED AND RESTATED MEMORANDUM OF LEASE

THIS AMENDED AND RESTATED MEMORANDUM OF LEASE is a memorandum of an unrecorded Amended and Restated Lease Agreement dated as of October 21, 1993 (the "Memorandum"), by and between CIRCUIT DISTRIBUTION - ILLINOIS LIMITED PARTNERSHIP, an Illinois limited partnership _____, having an office at 10000 North Central Expressway, Suite 1000, Dallas, Texas 75231 (the "Landlord") and CIRCUIT CITY STORES, INC., a Virginia corporation, having an address at 9950 Mayland Drive, Richmond, Virginia 23233-1464 (the "Tenant").

### W I T N E S S E T H :

1. **Definitions**. Unless otherwise expressly defined in this Memorandum, or the context shall otherwise require, capitalized terms used in this Memorandum shall have the meanings assigned to such terms in the Amended and Restated Lease Agreement.

2. **Leased Premises**. The Landlord and the Tenant have entered into an Amended and Restated Lease Agreement dated as of the date hereof (the "Lease") for the parcel of land containing 12.44 acres, more or less, more particularly described on Exhibit

A attached hereto, together with the Improvements and Equipment (collectively, the "Leased Premises").

   3.   Lease Term.  The Leased Premises are leased for an initial Term commencing on __October 21, 1993__ and expiring on __November 30, 2015__.  In addition, the Tenant shall have the right to extend the Lease for four (4) consecutive renewal terms of five (5) Lease Years each.

   4.   Expansion Option.  The Tenant has the right to expand the Leased Premises to include the Expansion Land described on Exhibit B attached hereto, subject to the terms and conditions of the Lease.

   5.   Additional Provisions.  In addition to the attached provisions and those other terms referred to herein, the Lease contains numerous other terms, covenants and conditions which affect the Leased Premises, and notice is hereby given that reference should be had to the Lease directly with respect to the details of such terms, covenants and conditions.

   6.   Effect.  This Memorandum does not alter, amend, modify or change the Lease or the exhibits thereto in any respect.  It is executed by the parties solely for the purpose of recordation, and it is the intent of the parties that it shall be so recorded and shall give notice of and confirm the Lease and exhibits thereto to the same extent as if all of the provisions of the Lease and exhibits thereto were fully set forth herein.  The Lease and exhibits thereto are hereby incorporated by reference in this Memorandum and the parties hereby ratify and confirm the

- 2 -

Lease as if said Lease were being re-executed by them and recorded. In the event there is any conflict between the provisions of this Memorandum and the provisions of the Lease, the provisions of the Lease shall control.

7. <u>Counterparts</u>. This Memorandum may be executed in several counterparts, each of which shall be an original and all of which together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Memorandum as of the date first above written.

```
                                    LANDLORD:
                                    CIRCUIT DISTRIBUTION - ILLINOIS LIMITED PARTNERSHIP,
                                    an Illinois limited partnership
                                    BY: CIRCUIT DISTRIBUTION G.P. - ILLINOIS, INC., an
                                        Illinois corporation,    its sole
                                        general partner

                                    By: _____
                                    Title: President
```

STATE OF Texas         )
                       ) ss.
County OF Dallas       )

On this 21st day of October, 1993, before me appeared Gil Besing to me personally known, who, being by me duly sworn, did say that he is the President of Circuit Distribution G.P. - Illinois, Inc., an Illinois corporation, as a General Partner of Circuit Distribution - Illinois Limited Partnership, an Illinois limited Partnership, and acknowledged said instrument to be his free act and deed and the free act and deed of said partnership.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Kay Murray
Notary Public

My term expires: _____

- 3 -

KAY MURRAY
Notary Public, State of Texas
My Commission Expires
JUNE 3, 1997

TENANT:

CIRCUIT CITY STORES, INC.
a Virginia corporation

By: _P Dunn_____

Title: _Treas_____


STATE OF _Virginia_____ )
                          ) ss.
_County_ OF _Henrico_____ )

On this ____ day of _April_____, 1993, before me appeared _Philip J. Dunn_____ to me personally known, who, being by me duly sworn, did say that he is the _Treasurer_____ of Circuit City Stores, Inc., a Virginia corporation, and that the seal affixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed on behalf of said corporation, by authority of its Board of Directors; and said _Philip J. Dunn_____ acknowledged said instrument to be the free act and deed of said corporation.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the _County_ and State aforesaid, the day and year first above written.

_Debra L. Dalton_____
Notary Public

My term expires: _December 31, 1996_

4342\circuit\memols.ill

- 4 -

## EXHIBIT "A"

### LEGAL DESCRIPTION OF DEMISED PREMISES

#### PARCEL 1

That part of the Northwest Quarter of Section 5, Township 40 North, Range 10 East of the Third Principal Meridian, described as follows:

Commencing at the Southwest corner of said Northwest Quarter of Section 5; thence North 00 degrees 26 minutes 36 seconds East along the West line of said Northwest Quarter of Section 5 a distance of 34.06 feet to a point on the North line of a public roadway heretofore dedicated as Central Avenue, according to the Plat of Turnberry Lakes Hanover No. 2 Phase One recorded November 15, 1991 as Document No. R91-152966, for a Place of Beginning; thence continuing North 00 degrees 26 minutes 36 seconds East along said West line a distance of 935.00 feet; thence South 89 degrees 33 minutes 24 seconds East 598.00 feet; thence South 00 degrees 26 minutes 36 seconds West 655.00 feet to a point of curvature; thence Southwesterly along the arc of a curve being concave to the West, having a radius of 215.00 feet, having a chord bearing of South 11 degrees 41 minutes 36 seconds West for a distance of 84.43 feet to a point of tangency; thence South 22 degrees 56 minutes 36 seconds West 17.38 feet to a point of curvature; thence Southwesterly along the arc of a curve, being concave to the East, having a radius of 215.00 feet, having a chord bearing of South 11 degrees 41 minutes 36 seconds West for a distance of 84.43 feet to a point of tangency; thence South 00 degrees 26 minutes 36 seconds West 28.50 feet to a point of curvature; thence Southwesterly along the arc of a curve being concave to the Northwest, having a radius of 40.00 feet, having a chord bearing of South 43 degrees 44 minutes 35 seconds West for a distance of 60.46 feet to a point of tangency on said North line of Cenural Avenue; thence South 87 degrees 02 minutes 34 seconds West along said North line of Central Avenue a distance of 521.91 feet to the Place of Beginning; said parcel of land herein described contains 12.445 acres, more or less, all in DuPage County, Illinois.

EXHIBIT B

LEGAL DESCRIPTION OF EXPANSION PROPERTY

PARCEL 3

That part of the Northeast Quarter of Section 5, Township 40 South, Range 10 East of the Third Principal Meridian, described as follows:

Commencing at the Southwest corner of said Northwest Quarter of Section 5; thence North 00 degrees 26 minutes 36 seconds East along the West line of said Northwest Quarter of Section 5 a distance of 969.06 feet for a Place of Beginning; thence continuing North 00 degrees 26 degrees 36 seconds East along the West line of said Northwest Quarter a distance of 608.50 feet; thence North 44 degrees 33 minutes 46 seconds East 436.05 feet; thence South 45 degrees 26 minutes 14 seconds East 505.43 feet to a point on a curve; thence Southwesterly along the arc of said curve being concave to the Southeast, having a radius of 130.00 feet, having a chord bearing of South 57 degrees 18 minutes 09 seconds West, for a distance of 22.05 feet to a point on a curve; thence Easterly and Southerly along the arc of a curve being concave to the Southeast, having a radius of 65.00 feet, having a chord bearing of South 30 degrees 02 minutes 44 seconds West for a distance of 171.75 feet to a point of reverse curvature; thence Southerly along the arc of a curve being concave to the Southwest, having a radius of 40.00 feet, having a chord bearing of South 22 degrees 36 minutes 16 seconds East for a distance of 32.18 feet to a point of tangency; thence South 00 degrees 26 minutes 36 seconds West 419.29 feet; thence North 89 degrees 33 minutes 24 seconds West 598.00 feet to the Place of Beginning; said parcel of land herein described contained 10.604 acres, more or less, all in DuPage County, Illinois.