CIRCUIT CITY STORES, INC.,

Sublandlord

TO

GE TRANSPORTATION SYSTEMS,

Subtenant

SUBLEASE

Dated:  September 12, 2002

Property:
6300 Muirfield
Hanover Park, IL

## TABLE OF CONTENTS

Page

1. PREMISES. ..................................................................................................... 2
2. TERM. .......................................................................................................... 2
3. RENT. .......................................................................................................... 3
4. SECURITY DEPOSIT. ........................................................................................ 6
5. CONDITION OF PREMISES. ............................................................................... 6
6. USE. ............................................................................................................ 7
7. PARKING AND COMMON AREAS. ....................................................................... 7
8. UTILITIES. ..................................................................................................... 7
9. REPAIRS AND MAINTENANCE. ........................................................................... 8
10. ALTERATIONS. ............................................................................................... 9
11. SIGNS. ........................................................................................................ 10
12. ASSIGNMENT AND SUBLETTING. ...................................................................... 10
13. ACCESS TO PREMISES. ................................................................................... 11
14. INDEMNITY. ................................................................................................. 12
15. INSURANCE. ................................................................................................. 13
16. SUBORDINATE TO PRIME LEASE. ..................................................................... 14
17. TERMINATION OF PRIME LEASE. ...................................................................... 15
18. NOTICES. ..................................................................................................... 17
19. DEFAULT. .................................................................................................... 18
20. WAIVER OF JURY TRIAL AND RIGHT TO COUNTERCLAIM. ................................... 21
21. END OF TERM. .............................................................................................. 21
22. HOLDOVER. .................................................................................................. 21
23. BROKERAGE. ................................................................................................ 22
24. FINANCIAL STATEMENTS AND ESTOPPEL CERTIFICATES. ................................... 22
25. AMERICANS WITH DISABILITIES ACT. .............................................................. 22
26. HAZARDOUS SUBSTANCES. ............................................................................. 23
27. MISCELLANEOUS COVENANTS. ........................................................................ 24

EXHIBITS TO SUBLEASE

| EXHIBIT A | - | Plan of Property Showing Location of Premises |
| EXHIBIT B | - | Rules and Regulations |
| EXHIBIT C | - | Prime Lease |
| EXHIBIT D | - | Construction Provisions (Including Lease Termination Allowance) |
| EXHIBIT E | - | Conceptual Layout of Initial Alterations |

<u>SUBLEASE</u>

THIS SUBLEASE, dated the 13th day of September 2002, between CIRCUIT CITY STORES, INC., a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233-1464 ("<u>Sublandlord</u>") and GENERAL ELECTRIC COMPANY, a New York corporation, doing business as GE TRANSPORTATION SYSTEMS, having an office at 2901 Eastlake Road, Erie, Pennsylvania 16531 ("<u>Subtenant</u>").

W I T N E S S E T H :

1.     <u>PREMISES.</u>

A.     Sublandlord hereby subleases to Subtenant, and Subtenant hereby subleases from Sublandlord, those certain premises consisting of 12.445 acres of real property (the "<u>Land</u>") at 6300 Muirfield, Hanover Park, Illinois, together with (i) all improvements and fixtures thereon, including but not limited to a warehouse and industrial building containing approximately 250,199 rentable square feet of floor space (the "<u>Building</u>," and together with all other improvements on the Land, the "<u>Improvements</u>"), and (ii) all easements, licenses, and other rights appurtenant to the Land and Improvements (the "<u>Appurtenances</u>") pursuant to the terms of the Amended and Restated Lease Agreement, dated as of October 21, 1993, as amended (the "<u>Prime Lease</u>") between Circuit Distribution - Limited Partnership, an Illinois limited partnership, as landlord ("<u>Landlord</u>") and Sublandlord, as tenant. The Land, the Improvements, and the Appurtenances are referred to hereinafter collectively as the "<u>Premises</u>" and are shown on the Site Plan attached hereto as <u>Exhibit A</u>. A true and complete copy of the Prime Lease is attached hereto as <u>Exhibit C</u>.

B.     Sublandlord furthermore transfers, sells, and conveys to Subtenant, for and in consideration of the sum of $1.00, the receipt of which is acknowledged by Sublandlord, all interest of Sublandlord in and to the fixtures, improvements, and betterments to the Premises previously made by Sublandlord in and to the Subleased Premises. Subtenant acknowledges that certain equipment was leased to Sublandlord by Landlord under the terms of the Prime Lease, and that such equipment is not leased to Subtenant hereby except to the extent such equipment constitutes fixtures, improvements, and betterments to the Premises. The following items of personal property, whether or not the same are fixtures, improvements, or betterments, are included in this Sublease:

Backup generator serial (444051D6) with protective metal cabinet.

Subtenant shall have the right to dispose of any other personal property left in the Premises on the Commencement Date.

2.     <u>TERM.</u>

A.     <u>Term</u>. The term of this Sublease ("<u>Term</u>") shall be the period of approximately thirteen (13) years and two (2) months commencing on the date Sublandlord tenders possession of the Premises to Subtenant ("<u>Commencement Date</u>"), and ending at 11:59 p.m. on November

2




29, 2015 ("Expiration Date"), unless sooner terminated as herein provided. The "Rent Commencement Date" shall be January 1, 2003.

B.    Possession. It is anticipated that Sublandlord will tender possession of the Premises to Subtenant immediately upon execution and delivery of this Sublease but, in any event, on or before October 1, 2002.

C.    Agreement. Subtenant shall execute and deliver to Sublandlord an agreement setting forth the Commencement Date within five (5) business days after Sublandlord's delivery of the Premises.

D.    Delay. If Sublandlord is unable to deliver possession of the Premises to Subtenant on the date specified above, Sublandlord shall not be liable or responsible for any claims, damages, liability or losses arising in connection with any delay in the delivery of possession, and Subtenant shall not be excused or released from any obligation under this Sublease as a result of any such delay. In such event, the Commencement Date shall be extended to the date Sublandlord delivers possession of the Premises to Subtenant. Notwithstanding any provision contained herein to the contrary, if Sublandlord fails to deliver possession of the Premises to Subtenant by October 1, 2002 or within five (5) business days after the date both parties execute and deliver this Sublease, whichever is later, then Subtenant shall be entitled to a credit of two (2) days Base Rent for each day of delay in delivery of the Premises, such credit to be applied to the first Base Rent payments due after the Rent Commencement Date. In addition, if Sublandlord fails to deliver the Premises by October 1, 2002, then Subtenant shall have the right to terminate this Sublease. In the event Sublandlord is required to perform repairs or alterations to correct violations of Laws in accordance with Section 5 hereof, Sublandlord and Subtenant agree to cooperate and to cause their respective contractors to cooperate in coordinating Sublandlord's repairs or alterations with Subtenant's Initial Alterations, as hereinafter defined. The date of delivery of possession shall be the date that Subtenant is granted access to and control of the Premises, notwithstanding that Sublandlord may be required to perform such repairs or alterations after possession is delivered to Subtenant.

E.    INTENTIONALLY DELETED.

3.    RENT.

A.    Base Rent. Commencing on the Commencement Date, Subtenant shall pay to Sublandlord rent ("Base Rent") in the amounts set forth below. Each monthly installment of Base Rent shall be payable in advance on the first day of each month during the Term. In consideration of the agreements and covenants of the parties hereto and the performance by Subtenant of its obligations hereunder, Sublandlord has conditionally agreed to abate all or portions of the Base Rent for the first eight (8) months of the Term, and to pay a Construction and Lease Termination Allowance, both as defined in Exhibit D hereto. In the event of an Event of Default by Subtenant resulting in the termination of this Sublease, Subtenant, in addition to all other remedies available at law or for which this Sublease provides, shall reimburse Sublandlord for the rent abatement provided for herein, which the parties agree to be $378,061, and for the unamortized portion of the Construction and Lease Termination Allowance (based on a straight-

3

line amortization over the Term, and subject to a credit against outstanding rent for the payment of such Allowance in the manner described in Section 19), as defined in Exhibit D hereof.

| Months | PSF | Period Rent | Monthly |
|--------|-----|-------------|---------|
| 10/01/02-12/31/02 | $0 | $0.00 | $0.00 |
| 01/01/03/-04/30/03 | * | $ 169,248.75 | $ 42,312.19 |
| 05/01/03-12/31/03 | $3.75 | $ 625,497.52 | $ 78,187.19 |
| 01/01/04-12/31/04 | $3.84 | $ 961,702.41 | $ 80,141.87 |
| 01/01/05-12/31/05 | $3.94 | $ 985,744.97 | $ 82,145.41 |
| 01/01/06-12/31/06 | $4.04 | $1,010,388.59 | $ 84,199.05 |
| 01/01/07-12/31/07 | $4.14 | $1,035,648.30 | $ 86,304.03 |
| 01/01/08-12/31/08 | $4.24 | $1,061,539.51 | $ 88,461.63 |
| 01/01/09-12/31/09 | $4.35 | $1,088,078.00 | $ 90,673.17 |
| 01/01/10-12/31/10 | $4.46 | $1,115,279.95 | $ 92,940.00 |
| 01/01/11-12/31/11 | $4.57 | $1,143,161.95 | $ 95,263.50 |
| 01/01/12-12/31/12 | $4.68 | $1,171,741.00 | $ 97,645.08 |
| 01/01/13-12/31/13 | $4.80 | $1,201,034.53 | $100,086.21 |
| 01/01/14-12/31/14 | $4.92 | $1,231,060.39 | $102,588.37 |
| 01/01/15-11/30/15 | $5.04 | $1,156,683.88 | $105,153.08 |

* Reflects base rent charges of $2.87 per square foot on 100,199 square feet only for first 4 months of 2003, plus $.88 per square foot amortization on full 250,199 square feet.

    B.    Payments. Base Rent and all other amounts payable by Subtenant to Sublandlord under this Sublease ("Additional Rent ") shall be paid when due, without notice or demand, and, except as otherwise specifically provided in this Sublease, without deduction, abatement, counterclaim or setoff, at the address of Sublandlord set forth in Section 19 or to such other person and/or at such other address as Sublandlord may from time to time designate by notice to Subtenant.  No payment by Subtenant of any amount less than the amount stipulated to be paid

hereunder shall be deemed other than on account of the earliest stipulated Base Rent or Additional Rent; nor shall any endorsement or statement on any check or letter be deemed an accord and satisfaction, and Sublandlord may accept any check or payment without prejudice to Sublandlord's right to recover the balance due or to pursue any other remedy available to Sublandlord.

   C.   Prime Lease Payments. Provided Sublandlord shall receive each payment of Base Rent and Additional Rent due from Subtenant as provided for herein, Sublandlord hereby indemnifies and holds Subtenant harmless of and from any cost, claims or liability (including reasonable attorneys' fees and court costs) incurred by Subtenant and arising from a failure by Sublandlord to timely make the corresponding payment of Base Rent and Additional Rental due under the Prime Lease. In the event of a failure on the part of Sublandlord to pay Base Rent and Additional Rent at the time and in the manner required under the Prime Lease, Subtenant shall have the right, five (5) days after notice to Sublandlord and the failure of Sublandlord to make such payment, to pay such amounts directly to Landlord and to offset the amount of such payment against the subsequent payment or payments of Base Rent due hereunder.

   D.   Impositions. Beginning on the Rent Commencement Date, Subtenant shall pay to Sublandlord, as Additional Rent, all Impositions, as defined in the Prime Lease. Impositions for the first year of the Term are estimated to be Two Hundred Forty Five Thousand One Hundred Ninety-Five and 02/100 Dollars ($245,195.02), which Subtenant shall pay to Sublandlord, in equal monthly installments of Twenty Thousand Four Hundred Thirty Two and 92/100 Dollars ($20,432.92) in advance, beginning on the Rent Commencement Date. Subject to the provisions of Section 18 of the Prime Lease, Subtenant shall be entitled thirty (30) days after notice to Sublandlord and the failure of Sublandlord to agree in writing to contest such Impositions, to contest any Impositions for and on behalf of Sublandlord and, in such event, Sublandlord shall provide full cooperation and assistance to Subtenant in conducting such contest. In such event, Subtenant shall comply with all requirements applicable to such challenge under the Prime Lease. Sublandlord shall provide Subtenant, upon demand, true and correct copies of all statements and bills for Impositions and any overpayment or underpayment of Impositions by Subtenant to Sublandlord shall be adjusted by the parties as set forth in Subparagraph G below. Provided Subtenant shall timely pay the Impositions as required by this Subparagraph D, Sublandlord shall pay all Impositions when due and prior to the imposition of any late payment penalty. Sublandlord shall provide Subtenant with a receipt evidencing payment of Impositions upon request.

   E.   Operating Expenses and CAM Charges. Beginning on the Rent Commencement Date, Subtenant shall pay to Sublandlord, as Additional Rent, any operating expenses, common area maintenance charges, insurance, owners' association or tenants' association charges, or similar charges, however denominated in the Prime Lease, payable by Sublandlord to Landlord under the Prime Lease. In addition, beginning on the Rent Commencement Date, Subtenant shall pay to Sublandlord, as Additional Rent, the premium for the property insurance carried by Sublandlord pursuant to Paragraph 15 hereof (such premium, together with the expenses and charges referred to in the preceding sentence, being referred to hereinafter as "Operating Expenses"). Sublandlord estimates that the charges under this Paragraph E for the first year of

5



the Term will be $1,302 for park association dues, and $17,520 for insurance coverage, for a total of approximately $18,822. Subtenant shall pay such amount to Sublandlord in equal monthly installments of One Thousand Five Hundred Sixty Eight and 50/100 ($1,568.50), in advance, beginning on January 1, 2003. Within one hundred twenty (120) days after the end of each calendar year, Sublandlord shall provide Subtenant with an accounting of the expenses and charges incurred hereunder for such calendar year, and any overpayment or underpayment of such expenses and charges shall be adjusted by the parties in accordance with Subparagraph G below.

      F.    <u>Intentionally Omitted</u>.

      G.    <u>Adjustment to Charges for Operating Expenses and Impositions</u>. Sublandlord may notify Subtenant from time to time setting forth an adjustment to estimated Operating Expenses and Impositions, if Sublandlord determines that payments are insufficient to meet estimated costs. Within 120 days after the end of each calendar year, Sublandlord shall determine the actual Operating Expenses and Impositions for such year (such charges to be appropriately prorated for partial calendar years falling within the Term). If Sublandlord determines that actual Operating Expenses or Impositions exceed the amount paid by Subtenant, then Subtenant shall pay the difference within thirty (30) days after Sublandlord delivers to Subtenant a statement showing such costs; if Subtenant's payments exceed the amount of actual Operating Expenses or Impositions, Subtenant shall receive a credit toward the next installment of such Additional Rent in the amount of such overpayment.

4.    <u>INTENTIONALLY DELETED</u>.

5.    <u>CONDITION OF PREMISES</u>.

      Subtenant is leasing, and hereby accepts, the Premises "as is and where is"; provided, however, that Sublandlord warrants and represents that, as of the Commencement Date: (a) the Premises (including all mechanical, electrical, drainage, and other systems in the Building and serving the Premises) comply with all applicable Laws, as hereinafter defined; (b) to the best of Sublandlord's knowledge, all HVAC, water, sewer, electrical, gas, utility, and other mechanical systems, and all doors, windows and fixtures, are in good working order and condition; and, (c) there are valid and subsisting certificates of occupancy for the Premises, copies of which have been furnished to Subtenant. For purposes of this Sublease, "Laws" shall mean all laws, rules, regulations, ordinances, and codes that are applicable to the Premises and that can be enforced by any Federal, state or local government, agency or authority, and all recorded covenants, restrictions and easements encumbering the Premises. Sublandlord shall provide Subtenant with the Construction and Lease Termination Allowance as defined in Exhibit D and pursuant to the terms and conditions set forth in Section 10. Subject to the foregoing warranties and representations, Subtenant acknowledges that Sublandlord has afforded Subtenant the opportunity for, and that Subtenant has undertaken, full and complete investigations, examinations, and inspections of the Premises and has determined that the Premises are suitable for Subtenant's intended use, and represents that Subtenant shall bear full responsibility for any special requirements in connection with Subtenant's use of the Premises. Furthermore,


Subtenant agrees that Sublandlord shall bear no responsibility for correcting violations of Laws, except to the extent that the aggregate cost to correct all such violations exceeds $25,000.

6.    USE.

A.    Permitted Use. Subtenant shall use and occupy the Premises for assembly, testing, warehousing and distribution of railroad locomotive and related products and equipment (the "Primary Use"), any use ancillary or incidental to such uses, and any other use permitted under the Prime Lease, provided such use does not violate any law, rule, regulation, or ordinance applicable to the Premises. Sublandlord warrants and represents that the use of the Premises for the assembly, warehousing, and distribution of railroad locomotive and related products and equipment does not require the consent of Landlord under the Prime Lease or of any party in connection any with restrictive covenants affecting the Premises, but Sublandlord does not warrant or represent that Subtenant's practices, methods, and procedures in the operation of its business are permitted under the Prime Lease or under such restrictive covenants.

B.    Compliance with Laws and Rules. Subtenant at its expense shall comply with all present and future laws, statutes, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments and any instrumentality thereof, and regulations of the board of fire underwriters having jurisdiction over the Premises (collectively, "Laws"); provided, however, that Sublandlord shall be responsible, at Sublandlord's sole cost and expense, but subject to the limitations set forth in Section 5, for promptly correcting any condition on the Premises that was non-compliant with any Laws on the Commencement Date. Subtenant shall comply with all rules and regulations for the use of the Premises as Sublandlord or Landlord may from time to time establish. The current Rules and Regulations are attached as Exhibit B and made a part of this Sublease. Notwithstanding any provision to the contrary contained in this Sublease, Subtenant shall have no obligation to remedy any violation of Laws existing as of the Commencement Date and not arising from Subtenant's use of the Premises.

7.    [Intentionally Left Blank]


8.    UTILITIES.

Subtenant shall make all necessary arrangements with all applicable utility companies and governmental authorities for, and shall pay for, all utilities supplied to the Premises on and after the Commencement Date. If the consumption of gas, electricity or water (and the attendant cost of sewage disposal and/or treatment) is not measured by separate meter, then Subtenant shall pay to Sublandlord, as Additional Rent, an equitable share of the cost thereof within thirty (30) days after Sublandlord delivers to Subtenant each statement of such costs. Sublandlord shall not be responsible for any failure or interruption of any of the services or utilities supplied to the Premises, and the same shall not result in any abatement, diminution or reduction of rent, or constructive eviction, or liability on the part of Sublandlord. Notwithstanding the foregoing, if such interruption was caused by the negligence of Sublandlord or Sublandlord's agents, employees or contractors, then Sublandlord shall repair such interruption as promptly as is reasonably practical, and in the event such interruption continues for a period of longer than five



(5) business days, Rent hereunder shall abate from the end of such five (5) day period for the duration of such interruption.

9.    REPAIRS AND MAINTENANCE.

A. Except as provided in subsection (B) below, Subtenant shall, at all times during the term of this Sublease, and at its own cost and expense, keep and maintain or cause to be kept and maintained in good repair and condition (ordinary wear and tear excepted), including replacement if necessary, the Premises, and shall use reasonable care to prevent waste, damage or injury to the Premises. Subtenant's maintenance of the Premises shall include, without limitation, (i) maintenance of landscaping, gardening and plantings; (ii) prompt removal of all snow, trash, garbage and other refuse; (iii) maintenance, repair, and replacement of all utility systems, mechanical systems and loading docks and doors serving the Premises, (iv) paving of all parking areas, (v) maintenance and replacement of all Building glass in the Premises, and (vi) cleaning, painting, decorating and repairing the interior and exterior of the Building and all other Improvements. Throughout the term of this Sublease, Subtenant shall procure and keep in force a maintenance agreement with a reputable service company for all HVAC equipment on the Premises, and shall provide Sublandlord with a copy of such maintenance agreement annually, and upon request of Sublandlord from time to time. Sublandlord shall and does hereby assign to Subtenant, to the extent that same are assignable, all warranties, if any run to the benefit of Sublandlord, with respect to the Premises from the general contractor who constructed the same and all subcontractors, equipment vendors and materialmen; provided, however, that such assignment shall not include any warranties relating to the portions of the Building required to be maintained by Sublandlord as set forth below. Notwithstanding the foregoing, Subtenant shall not be responsible for repair or replacement of utility systems, mechanical systems, HVAC systems, or water or sewer systems serving the Premises if the cost of such repair or replacement constitutes a capital expenditure under generally accepted accounting principles. In such event, however, Subtenant shall reimburse Sublandlord for Subtenant's Share of such costs, as hereinafter defined. "Subtenant's Share" shall be equal to the cost of such repair or replacement multiplied by a fraction, the denominator of which is the useful life of such repair or replacement pursuant to the United States Internal Revenue Code and the numerator of which is the portion of such useful life that is within the Term. Subtenant shall pay Subtenant's Share of such costs as Additional Rent within thirty (30) days after written demand, accompanied by an invoice evidencing the nature and cost of the repair or replacement.

    B. Sublandlord shall keep, maintain, repair, and replace as necessary, or cause to be kept and maintained in good repair and condition, and to be replaced as necessary, all at Sublandlord's own cost and expense, the roof (including the roof structure and supports), exterior and structural walls (excluding glass), the drainage system, and the foundation of the Building. The cost of the foregoing repair, maintenance, and replacement shall not be subject to the cost sharing provisions of Subparagraph A above and shall not be passed to Subtenant pursuant to the provisions of Section 3 above. Subtenant shall promptly notify Sublandlord of the need for any repair or maintenance or replacement that is the responsibility of the Sublandlord hereunder. If Sublandlord fails to commence such maintenance, repair and/or replacement within thirty (30) days after Subtenant's notice and to diligently pursue such repair to completion, then, unless such failure to perform arises from circumstances beyond Sublandlord's control (in which case

8

Sublandlord shall be entitled delay performance until the cessation of such circumstances, but in no event for a period longer than thirty [30] additional days), Subtenant shall have the right, upon written notice of Subtenant's intention to do so and Sublandlord's failure to complete such repair within ten (10) days after such second notice, to perform such maintenance, repair and/or replacement, and Sublandlord shall reimburse Subtenant for the cost of such maintenance, repair and/or replacement within fifteen (15) business days after Subtenant's written demand therefore accompanied by supporting invoices or receipts reasonably satisfactory to Sublandlord. Furthermore, if Sublandlord fails to reimburse Subtenant within the aforesaid fifteen-day period, then Subtenant shall be entitled to set-off the cost of such maintenance, repair and/or replacement from future payments of Base Rent as such payments become due. Notwithstanding the forgoing, in the event any repair or replacement is made necessary by the abuse or neglect of Subtenant, its employees, agents, invitees, or contractors, then Subtenant shall make such repair or replacement at its sole cost and expense.

10.    ALTERATIONS.

Subtenant shall not make or cause, suffer or permit the making of any alteration, addition, change, replacement, or installation ("Alterations"), in or to the Premises without obtaining the prior written consent of Sublandlord in each instance if the cost of said Alterations exceed $100,000 or said Alterations impair the fair market value or structural integrity of the Premises or the consent of Landlord is required under the Prime Lease. Subtenant shall submit to Sublandlord and Landlord, if required hereunder, detailed plans and specifications of the proposed Alterations at least fifteen (15) days prior to commencement of construction of the Alterations. Sublandlord's consent shall not be unreasonably withheld or delayed and such consent shall be deemed granted if Sublandlord does not notify Subtenant within ten (10) days of any objection to the plans and specifications. "Alterations" shall include, without limitation, all pipes, ducts, conduits, wiring, paneling, partitions, railing, mezzanine floors, galleries and the like. Subtenant shall promptly commence and diligently complete the work that it intends to perform in connection with its initial occupancy of the Premises ("Initial Alterations"). All Alterations shall be performed in a good and workmanlike manner, using only new materials or their equivalent, free and clear of all mechanics' liens and encumbrances, and in compliance with all Laws and all reasonable procedures and regulations prescribed by Sublandlord (and Landlord) from time to time. Prior to commencing any Alterations in the Premises, Subtenant shall (i) file the requisite plans and specifications for Alterations (which shall have been approved in writing by Sublandlord and Landlord, if required) with, and obtain all requisite approvals from, all governmental departments or authorities having jurisdiction and any public utility company having an interest therein and (ii) deliver to Sublandlord certificates of the insurance policy or policies of worker's compensation, liability, property damage and broad form builder's risk insurance, naming Sublandlord and Landlord as additional insured parties with limits as provided in Section 15. Sublandlord's approval of any plans, specifications or working drawings for Alterations shall create no responsibility on the part of Sublandlord for their completeness, design sufficiency or compliance with Laws. The Initial Alterations shall be reviewed, approved and performed, and the cost thereof and certain other Subtenant costs shall be reimbursed to Subtenant or paid by Sublandlord, pursuant to the Construction Provisions attached hereto as Exhibit D and incorporated herein as if fully set forth.

11.    SIGNS.

Subtenant shall be permitted to install, at its expense signs identifying Subtenant's business on the Premises, which signs must comply with all applicable Laws, and which shall be of such size, design and character, and shall be installed in such locations, as Sublandlord (and Landlord, if required under the Prime Lease) shall approve in writing. Sublandlord shall not unreasonably withhold or delay its approval. Subtenant shall maintain any such sign(s) in good condition and repair, and shall remove all signs and repair all damage caused by the installation or removal thereof, at the expiration or termination of the Term.

12.    ASSIGNMENT AND SUBLETTING.

A.    Consent Required. Subtenant may not, by operation of law or otherwise, assign, sell, mortgage, pledge or in any manner transfer this Sublease or any interest therein, or sublet the Premises or any part thereof, or grant any concession, franchise or license or otherwise permit occupancy of all or any part of the Premises by any person or entity (collectively, "Transfer"), without first obtaining the prior written consent of Sublandlord (and Landlord, if required under the Prime Lease), which consent of Sublandlord shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, and subject to the consent of the Landlord if required under the Prime Lease, Subtenant shall be entitled to assign this Sublease, in whole or in part, or to sub-sublease the Premises in one or more sub-subleases without Sublandlord's consent to (a) any corporation, limited liability company, partnership (collectively, "Business Entity") that is controlled, directly or indirectly, by General Electric Company or (b) any Business Entity having a Standard & Poor's investment grade rating of BBB, or a Moody's investment grade rating of Baa2, that acquires the business operations of Subtenant conducted at the Premises, whether by purchase of stock or assets or by a merger or other business combination or reorganization. Any of the transactions described in the preceding sentence shall be referred to herein as an "Affiliate Transfer". Subtenant shall furnish Sublandlord with written notice of any Affiliate Transfer and with a copy of any assignment or sublease entered into by Subtenant in connection therewith. No Transfer, including an Affiliate Transfer, shall serve to relieve Subtenant of its obligations hereunder.

B.    Notice. If Subtenant desires to undertake any Transfer other than an Affiliate Transfer, it shall provide Sublandlord with prior written notice of such desire, specifying the consideration for, and all other terms and conditions of, the proposed Transfer and identifying the proposed Transferee and the proposed use, accompanied by a certified financial statement setting forth the financial condition of the proposed Transferee in sufficient detail so as to permit Sublandlord's comprehensive assessment thereof.

C.    Payments in Excess of Rent. If any Transfer obligates the Transferee to pay to Subtenant amounts that, after netting out brokerage commissions, tenant upfit costs, and other costs directly related to the Transfer, are in excess of the Base Rent and Additional Rent under this Sublease (whether by increased rent, a lump sum payment, payment for the sale, transfer or lease of Subtenant's fixtures or improvements, or any other form), then Subtenant shall pay to Sublandlord one half (1/2) of any such excess, as Additional Rent, within ten (10) days after receipt by Subtenant.

D.    <u>Subtenant Remains Liable</u>.  The consent of Sublandlord to any Transfer shall in no way be construed to relieve Subtenant of the requirement of obtaining the consent of Sublandlord to any further Transfer.  If Sublandlord consents to any assignment of this Sublease, the assignee shall execute and deliver to Sublandlord an agreement in form and substance reasonably satisfactory to Sublandlord whereby the assignee shall assume all of Subtenant's obligations under this Sublease.  Notwithstanding any Transfer, the original Subtenant named herein and any other person(s) who at any time was (were) Subtenant shall remain fully liable under this Sublease; provided, however, that Subtenant shall not be liable for any amendment or modification of the Sublease that extends the Term or otherwise increases the obligations and liabilities of the Subtenant under the Sublease unless Subtenant has specifically agreed to such modification or amendment.  Sublandlord may collect rent from any Transferee and/or any subtenants or occupants, and apply the net amounts collected to Base Rent and Additional Rent, but no such collection shall be deemed a waiver of any of the provisions of this <u>Section 12</u>, or the acceptance of the Transferee, subtenant or occupant as Subtenant, or a release of any person or entity from the further performance by such person or entity of the obligations of Subtenant under this Sublease.

E.    <u>Restrictions in Prime Lease</u>.  Notwithstanding any other provision of this <u>Section 12</u>, no Transfer shall be permitted in violation of the Prime Lease.

13.    <u>ACCESS TO PREMISES</u>.

A.    <u>General Access</u>.  Sublandlord shall have the right to enter upon and in the Premises upon not less than two (2) business days prior notice (no such notice being required in the event of an emergency) to examine the Premises, and upon five (5) business days prior notice (no such notice being required in the event of an emergency) to make such maintenance, repairs and replacements as Sublandlord is required to make under the provisions of this Sublease, and to take all materials into and upon the Premises that may be required therefor, without the same constituting an eviction of Subtenant, and without any abatement of Base Rent or Additional Rent; provided, however, Sublandlord shall use reasonable efforts not to unreasonably interfere with Subtenant's business in the Premises.  Sublandlord shall coordinate its work (including the time and location of its work) in accordance with all reasonable requirements of Subtenant and Sublandlord shall comply with all security requirements customarily applied by Subtenant to visitors or contractors, as the case may be.  Sublandlord shall also have the right to enter upon the Premises at reasonable times upon not less than  two (2) business days prior notice to show the Premises to prospective purchasers, lessors or lessees (under ground or underlying leases) and mortgagees of all or any part of the Property, subject to Subtenant's security requirements and such other restrictions as Subtenant may reasonably impose.  During the twelve (12) months prior to the expiration of the Term, and subject to Subtenant's security requirements and to such other restrictions as Subtenant may reasonably impose, Sublandlord may show the Premises to prospective tenants of the Premises, and Sublandlord may also place upon the Premises a "For Rent" sign in such location as Subtenant may reasonably approve, which sign shall not be removed, obliterated or hidden by Subtenant.  Subject to the foregoing provisions of this <u>Section 13</u>, during the last six (6) months of the term of the Prime Lease, Sublandlord may perform any

11

repair or restoration work as may be required under the Prime Lease for surrender of the Prime Lease Premises. Sublandlord and Subtenant acknowledge that the access rights of Landlord under the Prime Lease are more extensive than those granted to Sublandlord hereunder, and Subtenant agrees to provide the Landlord with access to the Premises as required under the Prime Lease.

14.    INDEMNITY.

A.    Indemnification. Subtenant shall protect, indemnify, defend and hold Sublandlord harmless from and against any and all claims, damages, loss, liability (including without limitation liability under the Prime Lease), cost or expense (including without limitation reasonable attorneys' fees), which Sublandlord may incur or pay out by reason of (i) death, bodily injury, personal injury, or property damage occurring in, on or about the Premises, except to the extent caused by the gross negligence or intentional misconduct of Sublandlord or Sublandlord's employees, agents, representative, or contractors; (ii) any breach or default hereunder on Subtenant's part; (iii) any work done in or to the Premises, except work done in or to the Premises by Sublandlord or Sublandlord's employees, agents or contractors; (iv) any liens filed against the Premises as a result of work done by or at the request of Subtenant (other than work done by Sublandlord that is Sublandlord's obligation under this Sublease), and not timely removed by Subtenant, as required under this Sublease; (v) any act, omission or negligence on the part of Subtenant and/or its employees, agents, contractors and/or invitees, or any person claiming through or under Subtenant, or (vi) any indemnity obligation to Landlord arising under Section 10 of the Prime Lease, except to the extent the claim, damage, loss, liability, cost, or expense giving rise to such indemnity obligation results from the negligence or intentional misconduct of Sublandlord or its employees, agents, or contractors.

B.    Indemnification by Sublandlord. Sublandlord shall protect, indemnify, defend and hold Subtenant harmless from and against any and all claims, damages, loss, liability, cost or expense (including without limitation reasonable attorneys' fees), that Subtenant may incur or pay out by reason of: (a) death, bodily injury, or personal injury caused by the gross negligence or intentional misconduct of Sublandlord, its employees, agents or contractors or, if in connection with work performed by Sublandlord on the Premises, caused by the negligence of Sublandlord or its employees, agents or contractors; (b) any breach or default hereunder on Sublandlord's part; (c) any liens arising from work done in or to the Subleased Premises by Sublandlord or Sublandlord's employees, agents or contractors; (d) any breach of the Prime Lease by Sublandlord, as tenant under the Prime Lease, except to the extent such breach arises from a breach of Subtenant's obligations hereunder, or (e) any indemnity obligation to Landlord arising under Section 10 of the Prime Lease, if the claim, damage, loss, liability, cost, or expense giving rise to such indemnity obligation results from the negligence or intentional misconduct of Sublandlord or its employees, agents, or contractors.

C.    Liability of Sublandlord. All property of Subtenant and its employees, agents, contractors or invitees in or about the Premises or elsewhere in the Property shall be kept and stored at Subtenant's sole risk, and Subtenant shall hold Sublandlord harmless from any claims arising out of damage to, or loss of, the same, resulting from (i) any act (including theft) or failure to act, of any other person, (ii) the leaking of the roof, (iii) the bursting, rupture, leaking

12



or overflowing of pipes, heating or plumbing fixtures, (iv) fire or other casualty, (v) malfunction of electrical wires or fixtures, (vi) failure of HVAC systems, or (vii) other cause. Sublandlord shall not be liable for any interruption of or loss to Subtenant's business arising from any of the above-described acts or causes, or for any consequential damages sustained by Subtenant arising out of the loss of or damage to any such property.

15.    INSURANCE.

A.    Subtenant's Insurance. Subtenant shall maintain throughout the Term (i) a commercial general liability insurance policy for the Premises and the acts and omissions of Subtenant, its agents, employees and contractors, naming Sublandlord, Landlord and any mortgagee of the Premises as additional insured parties as their interests may appear in this Sublease, as primary coverage over any insurance carried by Sublandlord, Landlord or any mortgagee, with combined single limits of not less than the greater of the limits required under the Prime Lease, or $10,000,000 per occurrence, for personal or bodily injury, death and property damage, endorsed to provide coverage for fire legal liability and contractual liability for Subtenant's indemnity obligations under this Sublease, and water damage and sprinkler leakage legal liability; (ii) all-risk property insurance with endorsements for vandalism and malicious mischief, water damage and sprinkler leakage, for the full replacement value of Subtenant's inventory, equipment, trade fixtures and other personal property located in the Premises; (iii) worker's compensation insurance to the extent required by Laws, and (iv) any insurance required by Landlord in accordance with Section 14(a) (vi) of the Prime Lease.

Subtenant's insurance coverage may be effected by a blanket policy or policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to Subtenant's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in all other respects any such policy or policies shall comply with the provisions of this Section 15, including, but not limited to, that the policy shall contain an endorsement that names Sublandlord and Landlord as additional insured parties, as their interests may appear, and that it references the Premises. An increased coverage or "umbrella" policy may be provided and utilized by Subtenant to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to Subtenant's liability hereunder shall be satisfactory provided that such policies otherwise comply with the provisions of this Section 15.

B.    Subtenant shall deliver to Sublandlord an ACORD 27 or other reasonably acceptable form of insurance certificate prior to taking possession of the Premises, evidencing that Subtenant has obtained the insurance required by this Section 15. Subtenant shall procure and pay for renewals of such insurance from time to time before the expiration thereof, and Subtenant shall deliver to Sublandlord certificates evidencing such renewal at least thirty (30) days before the expiration of any existing policy. All such policies shall be issued by companies rated not lower than "B+ Class X" by A.M. Best Co. licensed to do business in the state in which the Premises are located, and all such policies shall contain a provision whereby the same cannot be cancelled or modified unless Sublandlord is given at least thirty (30) days' prior written notice by certified or registered mail of such cancellation or modification.

C.      Sublandlord's Insurance.  At all times during the Term, Sublandlord shall maintain special form property insurance covering the Building and Improvements for full replacement cost, exclusive of the cost of foundations, excavations and footings, and shall have the right to carry business interruption with respect to the operations on the Premises.  All premiums for the special form property insurance carried by Sublandlord for the Building and Improvements shall be subject to reimbursement by Subtenant pursuant to Section 3 of the Sublease.

D.      Contractor's Insurance.  Subtenant shall require any contractor of Subtenant performing work in, on or about the Premises to obtain and keep in full force and effect, at no expense to Sublandlord, (i) a commercial general public liability insurance policy for the Premises and adjacent areas, the conduct of its work therein, and the acts or omissions of such additional insured, with the coverages set forth in Section 15.A.i. above; (ii) worker's compensation or similar insurance in form and amounts required by Laws; and (iii) comprehensive automobile liability insurance including owned, non-owned and hired car coverage in an amount not less than $3,000,000 combined single limit for bodily injury or death and for property damage.  Subtenant shall provide certificates of such insurance to Sublandlord prior to commencing any construction in, on or about the Premises.

E.      Waiver of Subrogation Rights.  Subtenant hereby releases and waives its rights of recovery against Landlord under the Prime Lease to the extent that Sublandlord waived its rights of recovery against Landlord under the Prime Lease.  Neither Sublandlord nor Subtenant shall be liable to the other or to any insurance company (by way of subrogation or otherwise) insuring the other party for any loss of or damage to any building, structure or other tangible property, or any resulting loss of income, or losses under worker's compensation laws, even though such loss or damage might have been caused by the negligence of such party, its agents or employees, if any such loss or damage is covered by (or was required under this Sublease to be covered by) insurance benefiting the party suffering such loss or damage, to the extent of the proceeds of such insurance (or the amount of coverage required under this Sublease if such insurance was not obtained or maintained).  Sublandlord will cause its insurance carrier to include waiver of subrogation clauses or endorsements in favor of Subtenant and Subtenant will cause its insurance carriers to include waiver of subrogation clauses or endorsements in favor of Landlord and Sublandlord.

16.     SUBORDINATE TO PRIME LEASE.

A.      Rights and Remedies. Subtenant represents that it has read and is familiar with the terms of the Prime Lease.  This Sublease is subject and subordinate to Prime Lease. In case of any breach of this Sublease by Subtenant, Sublandlord shall have, in addition to all other rights and remedies available hereunder, all the rights against Subtenant as would be available to the lessor under the Prime Lease against the lessee under the Prime Lease if such breach were by the lessee thereunder. Nothing in this paragraph shall be deemed to confer upon Subtenant the right to exercise any right of the lessee under the Prime Lease (i) to terminate the Prime Lease, (ii) to renew or extend the term of the Prime Lease, (iii) to contest taxes or delay in the compliance with any laws, or (iv) that is in conflict with the terms and obligations assumed by Subtenant

hereunder. Sublandlord warrants and represents to Subtenant that: (a) the Prime Lease is in full force and effect; (b) there are no defaults by Sublandlord or, to Sublandlord's knowledge, by Landlord under the Prime Lease; and (c) this Sublease does not require the consent of the Landlord or, if such consent is required, Sublandlord has obtained such consent.

   B.   Observance of Prime Lease. Subtenant shall not commit or suffer any act or omission that will violate any of the provisions of the Prime Lease. Except as otherwise provided in this Sublease, in no event does Subtenant assume or undertake to perform any indemnity obligation under the Prime Lease. Without limiting any other provision of this Sublease, Subtenant agrees (i) at the request of Sublandlord, to join into agreements required to be delivered by Sublandlord pursuant to Section 18 of the Prime Lease, (ii) at the request of Sublandlord, to deliver estoppel certificates to Sublandlord and/or Landlord in accordance with the requirements of Section 22 of the Prime Lease, and (iii) to comply with the REA, as defined in Section 33 of the Prime Lease, and to defend and indemnify Sublandlord and Landlord for any cost, claim, or liability (including court costs and reasonable attorneys' fees) arising from Subtenant's failure to so comply, Subtenant to be deemed the "Owner," as defined in the REA, for purposes of this clause, Landlord; provided, however, that with respect to clause (iii) of this sentence: (a) Sublandlord warrants and represents that, on the date of this Sublease, the Premises comply with the REA; and, (b) Sublandlord assigns to Subtenant all of its rights and interests under the REA and covenants that, to the extent that any such rights and interests cannot be assigned to Subtenant, it diligently shall enforce such rights and interests at the request of Subtenant and at Subtenant's cost and expense.

   C.   Obligations of Landlord. Sublandlord shall exercise due diligence and use commercially reasonable efforts to cause Landlord to perform its obligations under the Prime Lease for the benefit of Subtenant. Upon receipt of written notice from Subtenant asserting that Landlord is not performing its obligations under the Prime Lease, Sublandlord shall notify Landlord, but Sublandlord shall not be liable to Subtenant if Landlord continues not to perform such obligations. In such event, however, Sublandlord shall cooperate and assist Subtenant, and permit Subtenant to commence an action or proceeding against Landlord in the name of Sublandlord, as tenant under the Prime Lease, provided Subtenant shall bear the attorneys' fees, costs and expenses of such action or proceeding.

   D.   No Privity of Estate or Contract. Nothing contained in this Sublease shall be construed to create privity of estate or of contract between Subtenant and Landlord. Notwithstanding the foregoing, Sublandlord agrees simultaneously with the execution and delivery of this Sublease by both parties, to deliver to Landlord the notice required under Paragraph 17(b) of the Prime Lease with respect to Subtenant, and, at Subtenant's request, to perform take such other actions as shall be required under the Prime Lease to preserve Subtenant's right to a new lease after a default by Sublandlord as tenant under the Prime Lease.

17.   TERMINATION OF PRIME LEASE.

   A.   Termination Prior to Expiration Date of Sublease. If for any reason the term of the Prime Lease shall have terminated prior to the Expiration Date, this Sublease shall thereupon be terminated and Sublandlord shall not be liable to Subtenant by reason thereof unless both (i)

15

Subtenant shall not then be in default hereunder and (ii) said termination shall have been effected because of the breach or default of Sublandlord as tenant under the Prime Lease.

B.    Destruction and Damage.  Subtenant and Sublandlord agree to the following terms and conditions with respect to damage to or destruction of the Building and other improvements (collectively, "Improvements").

(a)    Less Than Twenty percent (20%).  In the event of a fire, earthquake or other casualty causing destruction or damage to the Building, which has a repair and reconstruction cost of less than twenty percent (20%) of then-total replacement cost of the Building, this Sublease shall not terminate, and Basic Rent and other charges shall abate for the duration of any untenantability in proportion to the portion of the Building made untenantable by such casualty.  Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds, Sublandlord shall complete reconstruction of the Building, to substantially that condition existing immediately prior to such casualty, not including Alterations performed by and at the expense of Subtenant.

(b)    Twenty percent (20%) or More.  In the event of a fire, earthquake or other casualty either (i) causing destruction or damage to the Building which has a repair and reconstruction cost of twenty percent (20%) or more of the then-total reconstruction cost of the Building, or (ii) occurring during the last two (2) years of the term of this Sublease or of any renewal term previously exercised, Sublandlord and Subtenant each shall have the option of terminating this Sublease.  Sublandlord or Subtenant, as the case may be, shall notify the other party of its exercise of such option within sixty (60) days following the occurrence of such casualty.  In the event neither party elects to terminate this Sublease as set forth above, Sublandlord shall, within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds, complete reconstruction of the Improvements to substantially their condition existing immediately prior to such damage, not including Alterations performed by and at the expense of Subtenant.  In such event, Basic Rent and other charges shall abate for the duration of any untenantability in proportion to the portion of the Building made untenantable by such casualty; provided, however, that for the duration of any business interruption insurance required to be carried by Subtenant hereunder, Subtenant shall continue to pay Basic Rent and Additional Rent.

(c)    Application of Funds.  In the event Landlord or any mortgagee (a "Lender") entitled to receive payment of insurance proceeds does not make all of such proceeds available for the restoration of the Premises, Sublandlord shall have the right to terminate this Sublease upon notice to Subtenant, unless Subtenant (i) agrees to fund the amount of such insurance proceeds retained by Landlord or such Lender, and (ii) provides Sublandlord with evidence reasonably acceptable to Sublandlord of Subtenant's ability to fund the amount of such proceeds.

C.    Eminent Domain.

(a)    A "Total Taking" shall be deemed to have occurred if during the term of this Sublease, (i) the whole of the Premises shall be taken by eminent domain or be sold to the

16

condemning authority in settlement of or under threat of condemnation ("Taken"), or (ii) at least ten percent (10%) of the Property or the Building is Taken and the residue is not reasonably usable for the conduct of Subtenant's business on the Premises.  Upon a Total Taking, this Sublease and all rights of Subtenant in and to the Premises shall immediately terminate.  If during the term of this Sublease a portion of the Premises or the Building is Taken in a manner that is not a Total Taking, then this Sublease shall continue with a reasonable reduction of rent (reflecting the diminution in the value of the Premises for Subtenant's use thereof), and Sublandlord shall, at its own cost and expense, proceed with reasonable promptness, subject to delays beyond Sublandlord's control and delays in obtaining the award or purchase price, to make all repairs, alterations or restorations as may be necessary to restore the Premises to substantially the same condition as existed prior to such taking or sale, taking into consideration the nature and extent of the part so taken.  Sublandlord shall have no obligation to restore fixtures and improvements owned by Subtenant.  Notwithstanding the foregoing, Sublandlord shall not be required to expend any sums for restoration in excess of the net award or purchase price available to Sublandlord and not required to be paid to Landlord or any Lender; provided, however, that in the event the amount to be expended by Sublandlord will be insufficient to restore the Premises to a condition usable for the conduct of Subtenant's business on the Premises, then Subtenant shall have the right to terminate this Sublease upon notice to Sublandlord.  Sublandlord warrants and represents that it has not received notice of any contemplated or pending eminent domain proceeding with respect to the Subleased Premises.

(b)     To the extent that any condemnation award will not be applied as aforesaid, Sublandlord shall be entitled to the entire award; provided that Subtenant shall be entitled to make a claim to the condemning authority for damages to its personal property and for expenses incurred in relocating following any such taking.

18.    NOTICES.

All notices, consents, approvals, demands and requests (collectively, "Notices") delivered by either party to the other hereunder shall be in writing and shall be sent either by United States registered or certified mail and deposited in a United States Post Office, return receipt requested and postage prepaid, or by reputable overnight air courier such as Federal Express.  Notices which are served upon Sublandlord or Subtenant by mail in the manner provided herein shall be deemed to have been given or served for all purposes hereunder on the third business day next following the date on which such Notice shall have been mailed as aforesaid.  After delivery of possession of the Premises to Subtenant, all Notices given to Subtenant shall be addressed to Subtenant at the Premises; until such delivery, notice to Subtenant shall be given at its address set forth at the head of this Sublease.  Copies of all Notices to Subtenant shall be delivered simultaneously to the following addresses:

Chief Financial Officer
GE Transportation Systems
Building 14-5
2901 Eastlake Road
Erie, PA 16531
General Counsel

17

GE Transportation Systems
Building 14-5
2901 Eastlake Road
Erie, PA 16531

Operations Manager
GE Transportation Systems
6300 Muirfield Drive
Hanover Park, IL

All Notices given to Sublandlord shall be addressed to Sublandlord at its address set forth at the head of this Sublease, to the attention of Vice President - Real Estate. Sublandlord or Subtenant may from time to time change the names and/or addresses to which Notices given to either of them shall be addressed and sent as aforesaid, by designating such other names and/or addresses in a notice given to the other party in accordance with the provisions of this <u>Section 18</u>. Sublandlord shall promptly provide to Subtenant a copy of any written notice that Sublandlord gives to, or receives from, Landlord under the Prime Lease.

19.   <u>DEFAULT</u>.

A.   <u>Event of Default</u>. Each of the following shall be deemed to be an "<u>Event of Default</u>" by Subtenant and a breach by Subtenant hereunder: (i) the assignment of this Sublease or the subletting of the Premises, in violation of Section 12 hereof, (ii) the non-payment of any Base Rent or Additional Rent charges or any part thereof when same is due, or failure to make any other payment herein provided for, and the continuance of such non-payment for ten (10) days after Sublandlord shall have given notice of nonpayment to Subtenant (provided, however, that with respect to payments of Base Rent or Additional Rent due on or after September 1, 2003, such grace period shall be reduced from ten (10) days to five (5) days), or (iii) the default in the performance of any other obligation of Subtenant under this Sublease, and the continuance of such default for thirty (30) days after Sublandlord shall have given to Subtenant a written notice specifying the nature of such default, but if said default shall be of such nature that it cannot reasonably be cured or remedied within said thirty (30) day period, same shall not be deemed an Event of Default if Subtenant shall have commenced in good faith the curing or remedying of such default within such thirty (30) day period and shall thereafter continuously and diligently proceed therewith to completion, provided in any and all events, however, that such default is cured within ninety (90) days from the date of Sublandlord's notice.

B.   <u>Remedies</u>. In the event of Subtenant's default or the occurrence or existence of a Event of Default, Subtenant shall pay to Sublandlord, on demand, such expenses as Sublandlord may incur, including, without limitation, attorneys' fees, court costs, disbursements, and any and all other costs incurred by Sublandlord in enforcing the performance of any obligation of Subtenant under this Sublease. If an Event of Default occurs, Sublandlord shall have the following rights and remedies, in addition to all rights and remedies available under law or equity: (i) Sublandlord may declare this Sublease terminated upon written notice to Subtenant; and/or (ii) Sublandlord or its agents, servants, representatives, successors or assigns may, immediately or at any time thereafter, re-enter and resume possession of the Premises and

18

remove all persons and property therefrom, either by summary dispossess proceedings or by a suitable action or proceeding at law, or by force or otherwise, without being liable for any damages therefor, and no such re-entry shall be deemed an acceptance or surrender of this Sublease; and/or (iii) Sublandlord may, but shall have no obligation to, in its own name, but as agent for Subtenant if this Sublease is not terminated, relet the whole or any portion of the Premises for any period equal to or greater or less than the period which would have constituted the balance of the Term, for any sum which Sublandlord may deem reasonable, to any tenant(s) which Sublandlord may deem appropriate, and Sublandlord may grant concessions, including free rent. In the event of any breach or threatened breach by Subtenant of any of the covenants or provisions of this Sublease, Sublandlord shall have the right of injunction and the right to invoke any remedy allowed at law or in equity; mention in this Sublease of any particular remedy shall not preclude Sublandlord from any other remedy at law or in equity.

       C.      <u>Damages</u>. Sublandlord shall in no event be liable in any way whatsoever for its failure or refusal to relet the Premises or any part thereof. Sublandlord shall be entitled to recover from Subtenant, and Subtenant shall pay to Sublandlord immediately upon demand by Sublandlord, the amounts equal to all of the expenses incurred by Sublandlord in connection with (i) recovering possession of the Premises, (ii) any reletting(s) of the Premises and related brokerage costs, including without limitation costs for making alterations, repairing or otherwise preparing the Premises for reletting(s), (iii) court costs, and (iv) attorneys' fees incurred in connection with any of the foregoing. Subtenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of this Sublease being terminated and/or Sublandlord obtaining possession of the Premises pursuant to the provisions of this <u>Section 19</u>. Sublandlord shall also be entitled to recover from Subtenant for each month of the balance of the Term or the period which would otherwise have constituted the balance of the Term, the amount, if any, by which the sum of each monthly installment of the Base Rent which would have been payable had there been no Event of Default, plus the amount of Additional Rent which would have been payable had there been no Event of Default, exceeds the net amount, if any, of the rents collected on account of the reletting(s) of the Premises for the month in question, which amounts shall be due and payable by Subtenant to Sublandlord at Sublandlord's option, either (i) in monthly installments on the last day of each month, and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Sublandlord to collect the deficiency for any subsequent month by way of a similar proceeding (and, if Subtenant has reimbursed Sublandlord for the unamortized Construction and Lease Termination Allowance in accordance with Section 3A, the monthly Base Rent shall be deemed reduced by $1,136.32 per month multiplied by a fraction, the numerator of which is original Construction and Lease Termination Allowance, and the denominator of which is $100,000; if Subtenant has reimbursed only a portion of the unamortized Construction and Lease Termination Allowance, the reduction in Base Rent shall be adjusted proportionately), or (ii) in a lump sum in advance discounted to present value at a discount rate of 4% per year (in which event Subtenant shall receive a credit against such lump sum in the amount of any payment by Subtenant of the unamortized Construction and Lease Termination Allowance). Sublandlord, at Sublandlord's option, may make such alterations and repairs in and to the Premises as Sublandlord in its sole judgment considers advisable and necessary for the purpose of reletting the Premises, and the making of such alterations, and repairs shall not operate or be construed to

19

release Subtenant from liability hereunder as aforesaid. Notwithstanding the foregoing provisions after obtaining possession of the Premises, Sublandlord shall list the Premises with a commercial broker experienced in handling industrial property. Sublandlord shall not be obligated to relet the Premises except upon terms and conditions satisfactory to Sublandlord in its sole business judgment, and Sublandlord's obligation to list the Premises shall be subject to the condition that, in Sublandlord's sole business judgment, the remaining term of the Sublease at the time of Subtenant's vacation of or removal from the Premises makes it reasonably likely that a substitute subtenant can be secured.

D.    Late Charges and Returned Check Charges. If payment of any Base Rent or Additional Rent is not made by the fifth (5th) day after the date on which such amount was due and payable, Subtenant shall pay as a late charge Five Hundred and No/100 Dollars ($500.00) and interest on the amount overdue at the lesser of (a) fifteen percent (15%) per annum, and (b) the highest rate allowed by law (the "Default Rate") from the date on which such amount was due until the date of payment, as reimbursement of Sublandlord's expenses incurred as a result of Subtenant's failure to make prompt payment. In addition to any late charges or other remedies available to Sublandlord, if any check is returned to Sublandlord by Subtenant's bank by reason of insufficient funds, uncollected funds or otherwise, Sublandlord shall pay to Subtenant a return check administrative charge of Two Hundred Fifty Dollars ($250.00). Sublandlord shall pay the late charges and return check administrative charges for any month as Additional Rent on the first day of the following month.

E.    Additional Right of Sublandlord to Cure Subtenant's Defaults. Sublandlord may, but shall not be obligated to, cure, at any time upon ten (10) days prior written notice or without notice in case of emergency, any default(s) by Subtenant under this Sublease, and Subtenant shall pay to Sublandlord on demand all costs and expenses actually incurred by Sublandlord in curing such default(s), including, without limitation, court costs and attorneys' fees and disbursements in connection therewith, together with interest on the amount of costs and expenses so incurred at the Default Rate.

F.    Special Bankruptcy Provision. If Subtenant becomes a debtor within the meaning of the Bankruptcy Reform Act of 1978, as the same may be from time to time amended (the "Bankruptcy Code"), and, notwithstanding any other provision of this Sublease, this Sublease and Sublandlord's and Subtenant's rights thereunder are then made subject to the Bankruptcy Code, it is covenanted and agreed that the failure of Subtenant or its representative duly appointed in accordance with the Bankruptcy Code to (i) provide Sublandlord with adequate assurance that all of Subtenant's obligations under this Sublease shall continue to be fully complied with for the remaining Term, or (ii) furnish accurate information and adequate assurance as to the source of rent and other consideration due to Sublandlord under this Sublease, or (iii) conduct or have conducted at the Premises Subtenant's business as provided in this Sublease, shall in any of such events be deemed an Event of Default, and Sublandlord shall have all rights and remedies herein afforded it in respect of any Event of Default.

G.    Default by Sublandlord. Sublandlord shall only be deemed to be in default hereunder if Sublandlord violates or fails to perform any covenant or agreement hereunder which



is not observed or performed by Sublandlord within thirty (30) days after the receipt by
Sublandlord of written notice from Subtenant specifically identifying such violation or failure.
Sublandlord shall not be considered in default so long as Sublandlord commences to cure the
violation within said thirty (30) day period and diligently pursues the completion of such cure.

20.    WAIVER OF JURY TRIAL AND RIGHT TO COUNTERCLAIM.

SUBLANDLORD AND SUBTENANT EACH HEREBY WAIVES ALL RIGHT TO
TRIAL BY JURY IN ANY SUMMARY OR OTHER ACTION, PROCEEDING OR
COUNTERCLAIM ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS
SUBLEASE, THE RELATIONSHIP OF SUBLANDLORD AND SUBTENANT, THE
PREMISES OR THE USE AND OCCUPANCY THEREOF, OR ANY CLAIM OF INJURY
OR DAMAGES. END OF TERM. SUBTENANT ALSO HEREBY WAIVES ALL RIGHT TO
ASSERT OR INTERPOSE A COUNTERCLAIM (OTHER THAN A COMPULSORY
COUNTERCLAIM) IN ANY PROCEEDING OR ACTION TO RECOVER OR OBTAIN
POSSESSION OF THE PREMISES, BUT THE FOREGOING SHALL NOT BE DEEMED A
WAIVER OF SUCH COUNTERCLAIM OR OF SUBTENANT'S RIGHT TO RAISE SUCH
COUNTERCLAIM IN A SEPARATE PROCEEDING.

21.    END OF TERM.

At the expiration or sooner termination of the Term, Subtenant shall quit and surrender to
Sublandlord the Premises, broom clean, free of all occupants, and in good condition (including
but not limited to, with all mechanical and utility systems in good working order, and all cracks
in building slab caulked), ordinary wear and tear and damage by fire and any other insured
casualty excepted. At such expiration or sooner termination, Subtenant shall remove from the
Premises all property of Subtenant, including its sign(s) and its trade fixtures, and Subtenant
shall repair all damage to the Premises caused by any and all such removal and restore the
Premises to the condition in which they were prior to the installation of the items so removed,
including the areas where Subtenant affixed its sign(s). Any property of Subtenant not so
removed may be deemed to be abandoned, or Sublandlord may remove the same and restore any
damage, at Subtenant's expense.

22.    HOLDOVER.

If Subtenant remains in possession of the Premises after the expiration or termination of
the Term, Subtenant shall be deemed to be occupying the Premises as a tenant from month to
month at the sufferance of Sublandlord subject to all of the provisions of this Sublease, except
that the Base Rent shall be at a monthly rate equal to the greater of (i) the rent which Sublandlord
owes for such period under the Prime Lease, or (ii) one hundred fifty percent (150%) of the
monthly Base Rent in effect during the last month of the Term. In the event of holdover,
Subtenant shall give to Sublandlord at least thirty (30) days' prior written notice of any intention
to quit the Premises.

Notwithstanding the foregoing provisions of this Section 22, if Subtenant holds over after
the expiration or termination of the Term and Sublandlord desires to regain possession of the

21

Premises, then Sublandlord, at its option, may forthwith reenter and take possession of the Premises without process, or by any legal process in force in the jurisdiction in which the Premises are located. Any rental amounts for such hold over period which are deposited into Sublandlord's rental account shall not be deemed accepted by Sublandlord if Sublandlord promptly returns such rental amounts to Subtenant. Nothing herein shall limit Sublandlord's right to recover damages pursuant to this Sublease and such other damages as are available to Sublandlord at law or in equity (including but not limited to any and all liability to Landlord or otherwise caused by such holdover).

## 23. BROKERAGE.

Subtenant represents to Sublandlord that, except for Colliers B&K and Cushman & Wakefield, no broker or other person had any part, or was instrumental in any way, in bringing about this Sublease, and Subtenant shall pay, and shall indemnify, defend and hold harmless, Sublandlord from and against, any claims made by any other broker or other person for a brokerage commission, finder's fee, or similar compensation, by reason of or in connection with this Sublease, and any loss, liability, damage, cost and expense (including, without limitation, reasonable attorneys' fees) in connection with such claims if such broker or other person claims to have represented Subtenant. Sublandlord shall pay any commission due to the broker(s) named herein in respect of this Sublease, pursuant to separate agreement.

## 24. FINANCIAL STATEMENTS AND ESTOPPEL CERTIFICATES.

Subtenant shall, within fifteen (15) days after each and every request by Sublandlord, execute, acknowledge and deliver to Sublandlord either or both of the following: (a) if Subtenant is a publicly traded company,  a copy of Subtenant's publicly filed financial statement, together with the most recent available quarterly update, and (b) a statement in writing (i) certifying that this Sublease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified, and stating the modifications), and the Commencement Date , Rent Commencement Date and Expiration Date, (ii) specifying the dates to which the Base Rent and Additional Rent have been paid, (iii) stating whether or not, to the best knowledge of Subtenant, Sublandlord is in default under this Sublease, and, if so, specifying each such default, (iv) stating whether or not, to the best knowledge of Subtenant, any event has occurred which with the giving of notice or passage of time, or both, would constitute a default by Sublandlord under this Sublease, and, if so, specifying each such event, (v) stating whether Subtenant has exercised any option(s) to extend the Term of this Sublease, and, if so, specifying each such extension, and (vi) any other matter as may be reasonably requested. Any such statement delivered pursuant to this Section 24 may be relied upon by any prospective assignee or transferee of the leasehold estate under the Prime Lease.

## 25. AMERICANS WITH DISABILITIES ACT.

Sublandlord and Subtenant, as the case may be, shall supply to the other party as promptly as possible, but in any event within ten (10) days after Sublandlord or Subtenant, as the case may be, first receives or sends the same, written notice of, and copies of all applicable notices or other documentation thereof, as applicable, (i) any notices, reports or warnings made

22

to or received from any governmental agency or entity arising out of or in connection with the ADA (as defined in this <u>Section 25</u>) and relating to all or any portion of the Premises, Subtenant's use or occupancy thereof, the Building or the Property; (ii) any complaints, charges, claims, or asserted violations made or threatened in writing by any person, agency or entity alleging violation of the ADA or regarding non-compliance with the ADA, and relating to all or any portion of the Premises, Subtenant's use or occupancy thereof, the Building or the Property; (iii) any enforcement or other governmental or regulatory action or investigation instituted, contemplated, or threatened pursuant to any legal requirements regarding or in connection with the ADA and relating to all or any portion of the Premises, Subtenant's use or occupancy thereof, the Building or the Property; (iv) any claim made or threatened by any person against Subtenant, the Premises, the Building or the Property, relating to damage, compensation, loss or injury resulting from or claimed to result from any alleged non-compliance with the ADA. ADA shall mean the Americans with Disabilities Act of 1991, 42 U.S.C. 12.101 <u>et seq.</u>, and all regulations and other promulgations applicable thereto, and all amendments thereto.

## 26. HAZARDOUS SUBSTANCES.

A.      Sublandlord warrants ("Sublandlord's Environmental Warranty") and represents that it has not, and its employees and contractors have not used, stored, treated or transported "Hazardous Substances" (as hereinafter defined) in, on or about the Land, Building or Premises prior to the date of this Sublease except in compliance with all "Environmental Laws" (as hereinafter defined). Sublandlord represents that it has not received notice that any release, leak, discharge, spill, disposal or emission of Hazardous Substances has occurred in or on the Land, Building or Premises, such representation being limited to the knowledge of the representatives of Sublandlord involved in the marketing of the Premises and the negotiation of this Sublease.

B.      Sublandlord shall indemnify and hold harmless the Subtenant from any and all claims, damages, fines, judgments, penalties, costs, expenses or liabilities (including, without limitation, any and all sums paid for settlement of claims, attorneys' fees, consultant and expert fees) arising prior to, during or after the Term from or in connection with any act or condition that arises from a violation of Sublandlord's Environmental Warranty.

C.      Subtenant shall not cause or permit any Hazardous Substances to be used, stored, generated or disposed of in, on or about the Land, Building or Premises by Subtenant, its agents, employees, contractors or invitees, except for such Hazardous Substances as are normally utilized in the environment of Subtenant's business operations and are necessary to Subtenant's business. Any such Hazardous Substances permitted on the Premises as hereinabove provided, and all containers therefor, shall be used, kept, stored and disposed of in a manner that complies with all Environmental Laws. Subtenant shall furnish Sublandlord with a written list of all Hazardous Substances to be used or stored on or in the Premises (except for cleaning materials in customary amounts customarily encountered in the operation and management of warehouse property), and at the request of Sublandlord, shall furnish Sublandlord with written documentation of Subtenant's management and handling procedures for Hazardous Substances; provided, however, Sublandlord shall keep such management and handling procedures confidential, except to the extent Sublandlord is required by court order or applicable law to

deliver or report such information. Subtenant shall indemnify and hold harmless the Sublandlord and Landlord from any and all claims, damages, fines, judgments, penalties, costs, expenses or liabilities (including, without limitation, any and all sums paid for settlement of claims, attorneys' fees, consultant and expert fees) arising during or after the Term from or in connection with the use, storage, generation or disposal of Hazardous Substances in, on or about the Land, Building or Premises by Subtenant or Subtenant's agents, employees, contractors or invitees.

D.      Notwithstanding anything to the contrary stated hereinabove, the indemnifications contained in subparagraphs B and C above shall not include any consequential damages (e.g. loss of rent, use and profits) incurred by either Sublandlord or Subtenant, but shall expressly include, without limitation, any and all costs incurred due to any investigation of the site or any cleanup, removal or restoration mandated by or pursuant to any Environmental Laws. The indemnifications contained herein shall survive any expiration or termination of the Term.

E.      As used herein, "Hazardous Substances" means any substance which is toxic, ignitable, reactive, or corrosive or which is regulated by "Environmental Laws". The term "Environmental Laws" means federal, state and local laws and regulations, judgments, orders and permits governing safety and health and the protection of the environment, including without limitation the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq., as amended (CERCLA), the Resource Conservation and Recovery Act, as amended 42 U.S.C. 6901 et seq., the Clean Water Act, 33 U.S.C. 1251 et seq., the Clean Air Act, 42 U.S.C. 7401 et seq., the Toxic Substance Control Act, 15 U.S.C. 2601 et seq., and the Safe Drinking Water Act, 42 U.S.C. 300f through 300j. "Hazardous Substances" includes any and all materials or substances which are defined as "hazardous waste", "extremely hazardous waste" or a "hazardous substance" pursuant to state, federal or local governmental law. "Hazardous Substances" also includes asbestos, polychlorinated biphenyls ("PCBs") and petroleum products.

27.  MISCELLANEOUS COVENANTS.

A.      No Waste. Subtenant shall not commit or suffer to be committed any waste upon the Premises.

B.      Trash Removal. Subtenant shall independently contract with contractors for the regular removal of Subtenant's garbage and refuse and shall pay the cost thereof.

C.      Insurance Premiums. Subtenant shall not do or permit to be done any act or thing in or upon the Premises which will or may invalidate or be in conflict with fire insurance policies covering the Building, or any part thereof or fixtures and property therein, and shall comply with all rules, orders, regulations or requirements of the Board of Fire Underwriters having jurisdiction, or any other similar body, and shall not do, or permit to be done, anything in or upon the Premises, or bring or keep anything therein, which shall increase the rate of fire insurance on the Building, the Premises or on the property located therein. If by reason of failure of Subtenant to comply with the provisions of this Section, the fire insurance rate shall at any time be higher than it otherwise would be, then, in addition to the right of Sublandlord to the exercise of any and all other remedies available under this Sublease, Subtenant shall reimburse Sublandlord on demand as Additional Rent for the portion of all fire insurance premiums which shall have been

24

then or in the future charged because of such violation by Subtenant and which Sublandlord shall have, or may be required to have, paid on account of an increase in rate in its own policies of insurance. In addition to the foregoing, Subtenant will, if Sublandlord so requests, cease the operation of any action or remove any objects or improvements which have resulted in the increase to Sublandlord's insurance premiums.

  D. <u>Consents and Approvals</u>. In any instance when Sublandlord's consent or approval is required under this Sublease, Sublandlord's refusal to consent to or approve any matter or thing shall be deemed reasonable if such consent or approval has not been obtained from the Landlord; provided, however, that Sublandlord shall use commercially reasonable efforts to obtain Landlord's approval. Whenever Sublandlord's consent or approval is required to a request by Subtenant, such consent or approval shall not be unreasonably withheld or delayed.

  E. <u>No Waiver</u>. The failure of Sublandlord to insist in any one or more cases upon the strict performance or observance of any obligation of Subtenant hereunder or to exercise any right or option contained herein shall not be construed as a waiver or relinquishment for the future of any such obligation of Subtenant or any right or option of Sublandlord. Sublandlord's receipt and acceptance of Base Rent or Additional Rent, or Sublandlord's acceptance of performance of any other obligation by Subtenant, with knowledge of Subtenant's breach of any provision of this Sublease, shall not be deemed a waiver o f such breach. No waiver by Sublandlord of any term, covenant or condition of this Sublease shall be deemed to have been made unless expressed in writing and signed by Sublandlord.

  F. <u>Successors and Assigns</u>. The provisions of this Sublease, except as herein otherwise specifically provided, shall extend to, bind and inure to the benefit of the parties hereto and their respective personal representatives, heirs, successors and permitted assigns. In the event of any assignment or transfer of the leasehold estate under the Prime Lease, the transferor or assignor, as the case may be, shall be and hereby is entirely relieved and freed of all obligations under this Sublease which arise on and after the date of the assignment or transfer.

  G. <u>Interpretation</u>. This Sublease shall be governed by and construed in accordance with the laws of the state in which the Premises are located, without regard to conflicts of laws principles. If any provision of this Sublease or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Sublease and the application of that provision to other persons or circumstances shall not be affected but rather shall be enforced to the extent permitted by law. The table of contents, captions, headings and titles, if any, in this Sublease are solely for convenience of reference and shall not affect its interpretation. This Sublease shall be construed without regard to any presumption or other rule requiring construction against the party causing this Sublease to be drafted. If any words or phrases in this Sublease shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Sublease shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Sublease and no implication shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated. Each covenant, agreement, obligation or other provision

25

of this Sublease shall be deemed and construed as a separate and independent covenant of the party bound by, undertaking or making same, not dependent on any other provisions of this Sublease unless otherwise expressly provided. All terms and words used in this Sublease, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. The word "person" as used in this Sublease shall mean a natural person or persons, a partnership, a corporation or any other form of business or legal association or entity. Time shall be of the essence of each and every obligation of Subtenant under this Sublease. This Sublease may be executed and delivered in two or more counterparts, all of which taken together shall constitute a single instrument.

H.    No Reservation. No employee or agent of Sublandlord, no broker, and no agent of any broker has authority to make or agree to take a sublease or any other agreement or undertaking in connection herewith, including but not limited to the modification, amendment or cancellation of a sublease. The mailing or delivery of this document by an employee or agent of Sublandlord, any broker or the agent of any broker to a potential Subtenant, its agent or attorney shall not be deemed an offer of Sublandlord or a reservation of or option for the Premises until such time as a sublease, duly executed by Sublandlord and Subtenant, is delivered to such potential Subtenant, its agent or attorney.

I.    No Partnership. Nothing contained in this Sublease shall be deemed or construed to create a partnership or joint venture of or between Sublandlord and Subtenant, or to create any relationship other than that of sublandlord and subtenant.

J.    No Representations. Neither Sublandlord nor any agent of Sublandlord has made any representations or promises with respect to the Premises, the Building or the Property except as expressly set forth in this Sublease, and no rights, privileges, easements or licenses are granted to Subtenant except as expressly set forth in this Sublease.

K.    Complete Agreement. There are no representations, agreements, arrangements or understandings, oral or written, between the parties relating to the subject matter of this Sublease which are not fully expressed in this Sublease. This Sublease cannot be changed or terminated orally or in any manner other than by a written agreement executed by both parties. Sublandlord shall not enter into any modification or termination of the Prime Lease, or enter into any other agreement or take any other action with respect to the Prime Lease, that would terminate the Prime Lease or otherwise affect Subtenant's rights and obligations under this Sublease or Subtenant's use and occupancy of the Premises without Subtenant's prior written consent, except to the extent that Sublandlord is required to do so under the terms of the Prime Lease.

L.    Quiet Enjoyment. Upon Subtenant paying the Base Rent and Additional Rent and performing Subtenant's obligations under this Sublease, Subtenant shall peacefully and quietly enjoy the Premises during the Term as against all persons or entities claiming by or through Sublandlord, subject, however, to the terms of the Prime Lease and all Laws.

IN WITNESS WHEREOF, Sublandlord and Subtenant have hereunto executed this Sublease as of the day and year first above written.

SUBLANDLORD:

CIRCUIT CITY STORES, INC.

By: _____  [SEAL]
Sr. Vice President

SUBTENANT:

GENERAL ELECTRIC COMPANY,
  D/B/A GE TRANSPORTATION
    SYSTEMS

By: _____  [SEAL]
John Krenicki
President and CEO

#1089442v3

27

## EXHIBIT A

Site Plan

1

## EXHIBIT A

**Site Plan**

1



## AREA DATA

**LAND**
- DETENTION AREA    1.57 ACRES
- NET AREA    10.87 ACRES
- GROSS AREA    12.44 ACRES

**BUILDING**
- OFFICE    5,000 SQ. FT.
- SERVICE AREA    11,555 SQ. FT.
- WAREHOUSE    233,647 SQ. FT.
- TOTAL BUILDING    250,198 SQ. FT.

**PARKING**

REQUIRED (AS PROPOSED)
- 7,930 @ OFFICE    @ 1/300 SF    17 SPACES
- 11,555 @ OFFICE    @ 1/400 SF    18 SPACES
- 100,000 @ WAREHOUSE @ 1/1000 SF    143 SPACES
- 133,647 @ WAREHOUSE @ 1/1750 SF

ACTUAL    TOTAL (REQUIRED)    173 SPACES
- HANDICAP STALLS    5 SPACES
- STANDARD STALLS    164 SPACES
    TOTAL (ACTUAL)    172 SPACES

## SITE NOTES

## GENERAL NOTES

1. ZONING DISTRICT: MANUFACTURING DISTRICT
2. BUILDING CODE:
3. OCCUPANCY CLASS: (APPLICABLE)
4. CONSTRUCTION TYPE: TYPE II UNPROTECTED NON-COMBUSTIBLE
6. DO NOT SCALE DRAWING
7. SEE STRUCTURAL GENERAL NOTES AND SPECIFICATIONS

## SITE PLAN

DETENTION EASEMENT

PROPOSED BUILDING

MUIRFIELD COURT

CENTRAL AVENUE

ACCESSIBLE PARKING STALL

ACCESSIBLE ENTRY SIGN

HANDICAP PARKING SIGN

RESERVED PARKING

**IDI** Industrial Developments International

**arcus group** ARCHITECTS + PLANNERS

NEW DISTRIBUTION AND SERVICE CENTER FOR
CIRCUIT CITY STORES, INC.
CENTRAL AVENUE
HANOVER PARK, ILLINOIS

92077    A1


## EXHIBIT B

## RULES AND REGULATIONS

1.      Subtenant shall not use, permit or suffer the use of the Premises, or any part thereof, as living, sleeping or lodging quarters, or other residential purpose.

2.      Subtenant shall not use the plumbing facilities for any purpose other than that for which the are constructed, and no grease or foreign substance of any kind shall be disposed of therein, and the expense of any breakage, stoppage or damage (whether on or off the Premises) resulting from any breach thereof shall be borne by Subtenant.

3.      Except to the extent necessary to perform Subtenant's maintenance obligations hereunder or to address roof leaks either (i) that Sublandlord has failed to repair in accordance with its obligations hereunder, or (ii) that might disrupt or are disrupting Subtenant's operations, neither Subtenant, its agents, employees or contractors shall enter upon or have access to any roof at the Property without Sublandlord's express prior consent in each instance, such consent not to be unreasonably withheld. Sublandlord shall not be deemed unreasonable for requiring precautions for the protection of the roof during such access, or precautions required under the terms of any applicable roof warranty.

4.      All trash, refuse and waste materials shall be regularly removed from the Premises, and until removal shall be stored (i) in adequate containers, which such containers shall be located so as not to be visible to the general public shopping in the Property, and (ii) so as not to constitute any health or fire hazard or nuisance to any other occupant of or other person in the Property. No burning of trash, refuse or waste materials shall occur. Subtenant shall not throw, discard or deposit any paper, glass or extraneous matter of any kind, except in designated receptacles, or create litter or hazards of any kind; nor deface, damage or demolish any part of the Premises or any sign, light standard or fixture, landscaping materials or other improvements within the Property, or the property of any customers, business invitees or employees situated within the Property.

5.      If the Premises be or become infested with vermin, pests or termites, Subtenant shall at Subtenant's expense cause the same to be exterminated from time to time to the satisfaction of Sublandlord.

6.      Subtenant shall not install, operate or maintain in the Premises or the Property any electrical equipment which will overload the electrical system therein, or any part thereof, beyond its reasonable capacity for proper and safe operation, or which does not bear Underwriter's approval.

1

<u>EXHIBIT C</u>

<u>PRIME LEASE</u>

1