

(b) It is the intent of Landlord and Tenant agree that this Lease be a true lease and that the Lease does not represent a financing arrangement. Each party shall reflect the transaction represented hereby in all applicable books, records and reports (including income tax filings) in a manner consistent with "true lease" treatment rather than "financing" treatment.

6.   Title and Condition.

(a)   The Leased Premises are demised and let subject to the Permitted Encumbrances and all Legal Requirements and Insurance Requirements, including any existing violation of any thereof; without representation or warranty by Landlord; it being understood and agreed, however, that the recital of the Permitted Encumbrances herein shall not be construed as a revival of any thereof which for any reason may have expired.

(b)   Without limiting the effect of Landlord's covenant set forth in Paragraph 8.(c), the Landlord makes no, and expressly hereby denies any, representations or warranties regarding the condition or suitability of, or title to, the Leased Premises. Tenant agrees that it takes the Leased Premises "as is," without any such representation or warranty.

(c)   Landlord hereby conditionally assigns, without recourse or warranty whatsoever, to Tenant, all warranties, guaranties and indemnities, express or implied, and similar rights which Landlord may have against any manufacturer, seller, engineer, contractor or builder in respect of any of the Leased Premises, including, but not limited to, any rights and remedies existing under contract or pursuant to the Uniform Commercial Code (collectively, the "guaranties"). Such assignment shall remain in effect so long as no Event of Default exists hereunder or until the termination of this Lease. Landlord shall also retain the right to enforce any guaranties so assigned in the name of Tenant upon the occurrence of an Event of Default. Landlord hereby agrees to execute and deliver at Tenant's sole cost and expense such further documents, including powers of attorney, as Tenant may reasonably request (and which in the good faith judgment of Landlord, do not adversely affect a substantial general interest of Landlord), in order that Tenant may have the full benefit of the assignment effected or intended to be effected by this Paragraph 6. Upon the occurrence of an Event of Default or termination of this Lease, the guaranties shall automatically revert to Landlord. The foregoing provision of

reversion shall be self-operative and no further instrument of reassignment shall be required. In confirmation of such reassignment Tenant shall execute and deliver promptly any certificate or other instrument which Landlord may request at Tenant's sole cost and expense. Any monies collected by Tenant under any of the guaranties after the occurrence of and during the continuation of an Event of Default shall be held in trust by Tenant and promptly paid over to Landlord.

(d)     Landlord agrees to enter into with Tenant, at Tenant's expense, such easements, covenants, waivers, approvals or restrictions for utilities, parking or other matters as desirable for operation of the Leased Premises or properties adjacent thereto (collectively, "Easements") as requested by Tenant, subject to Lender's and Landlord's approval of the form thereof, not to be unreasonably withheld or delayed; provided, that (i) such Easement shall not result in any diminution in the value or utility of the Leased Premises for use as a distribution center; (ii) Tenant receives no consideration for such Easement; (iii) Tenant reasonably believes that it is in the best interests of the operator(s) of the Leased Premises that such Easement be granted; (iv) Tenant provides Landlord with a survey and title endorsement evidencing that no encroachments exist as a result of the establishment of such Easement; (iv) Tenant assumes all obligations under such Easement during the Term (to the extent obligations are imposed upon the owner of the Leased Premises); (v) such Easement does not render the use of the Leased Premises dependent upon any other property or condition the use of the Leased Premises upon the use of any other property; and (vi) Tenant provides Landlord with its certificate with respect to the items set forth in sections (i) through (v) above. If either Landlord or Lender shall fail to approve or disapprove the form of any such Easements, within a period of thirty (30) days from their respective receipt of same, then either Landlord or Lender, as the case may be, shall be deemed to have approved the form of any such Easement.

7.     Taxes; Insurance and Legal Requirements .

(a)     Tenant shall, subject to the provisions of Paragraph 18 hereof relating to contests, before interest or penalties are due thereon, pay and discharge all Taxes. Landlord shall promptly deliver to Tenant any bill or invoice it receives with respect to any Tax.

MWBB 6/26/95
\circuit\inland\lease.wa

9

Nothing herein shall obligate Tenant to pay, and the term "Taxes" shall exclude, federal, state or local (i) franchise, capital stock or similar taxes if any, of Landlord, (ii) income, excess profits or other taxes, if any, of Landlord, determined on the basis of or measured by its net income, or (iii) any estate, inheritance, succession, gift, capital levy or similar taxes unless the taxes referred to in clauses (i) and (ii) above are in lieu of or a substitute for any other tax or assessment upon or with respect to any of the Leased Premises which, if such other tax or assessment were in effect at the commencement of the term, would be payable by Tenant.  In the event that any assessment against any of the Leased Premises may be paid in installments, Tenant shall have the option to pay such assessment in installments; and in such event, Tenant shall be liable only for those installments (and all resulting interest thereon) which become due and payable in respect of the Term.  Tenant shall prepare and file all tax reports required by governmental authorities which relate to the Taxes.  Tenant shall deliver to Landlord, within thirty (30) days of Landlord's request therefor, copies of all settlements and notices pertaining to the Taxes which may be issued by any governmental authority and receipts for payments of all Taxes made during each calendar year of the Term, within thirty (30) days after payment. In the event the Leased Premises do not constitute a separate tax parcel as assessed by the local jurisdiction, Tenant shall diligently take such action as is necessary to have the Leased Premises so designated and, if necessary to prevent the enforcement of a lien on the Leased Premises for non-payment of Taxes, shall pay all Taxes assessed upon the tax parcel of which the Leased Premises are a part.

(b)     Tenant shall promptly comply with and conform to all of the Legal Requirements and Insurance Requirements, subject to the provisions of Paragraph 18 hereof.

8.     Use.

(a)     Tenant may use the Leased Premises for any lawful purpose other than any use that will (i) have a material adverse effect on the value of the Leased Premises, (ii) materially increase the likelihood that Tenant, Landlord or Lender would incur liability under any provisions of the Act referred to in Paragraph 26 of this Lease, or (iii) result or give rise to any material environmental deterioration or degradation of the Leased Premises.  In no event

MWBB 6/26/95
\circui\linlord\lease.wa



shall the Leased Premises be used for any purpose which shall violate any of the provisions of any recorded covenants, restrictions or agreements applicable to the Leased Premises or to any shopping center of which the Leased Premises may be a part. Tenant agrees that with respect to any such recorded covenants, restrictions or agreements, Tenant shall observe, perform and comply with and carry out the provisions thereof required therein to be observed and performed by Landlord.

(b)    Subject to Tenant's rights of contest under Paragraph 18 hereof, Tenant shall not permit any unlawful occupation, business or trade to be conducted on any of the Leased Premises or any use to be made thereof contrary to applicable Legal Requirements or Insurance Requirements. Subject to Tenant's rights of contest under Paragraph 18 hereof, Tenant shall not use, occupy or permit any of the Leased Premises to be used or occupied, nor do or permit anything to be done in or on any of the Leased Premises, in a manner which would (i) violate any certificate of occupancy or equivalent certificate affecting any of the Leased Premises, (ii) make void or voidable any insurance which Tenant is required hereunder to maintain then in force with respect to any of the Leased Premises, (iii) affect in any manner the ability of Tenant to obtain any insurance which Tenant is required to furnish hereunder, (iv) cause any injury or damage to any of the Improvements unless pursuant to Alterations permitted under Paragraph 11 hereof, or (v) constitute a public or private nuisance or waste.

(c)    Subject to all of the provisions of this Lease, so long as no Event of Default exists hereunder, Landlord covenants that neither it nor any party claiming by, through or under it, shall do any act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant. Landlord may enter upon and examine any of the Leased Premises at reasonable times after reasonable notice and during business hours and exercise any rights and privileges granted to Landlord under the provisions of this Lease.

9.    Maintenance and Repair.

(a)    Except for any alterations that Tenant is permitted to make hereunder, Tenant shall at all times, including any Requisition period, put, keep and maintain the Leased Premises, including, without limitation, the roof, landscaping, parking areas, walls

MWBB 6/26/95
\circuit\Inland\lease.wb

11



(interior and exterior), footings, foundations and structural components of the Leased Premises, and the Adjoining Property, in good repair and appearance, and shall promptly make all repairs and replacements (substantially equivalent in quality and workmanship to the original work) of every kind and nature, whether foreseen or unforeseen, which may be required to be made upon or in connection with any of the Leased Premises in order to keep and maintain the Leased Premises in good repair and appearance. Tenant shall do or cause others to do all shoring of the Leased Premises or Adjoining Property or of foundations and walls of the Improvements and every other act necessary or appropriate for preservation and safety thereof, by reason of or in connection with any excavation or other building operation upon any of the Leased Premises or Adjoining Property, whether or not Landlord shall, by reason of any Legal Requirements or Insurance Requirements, be required to take such action or be liable for failure to do so. Landlord shall not be required to make any repair, whether foreseen or unforeseen, or to maintain any of the Leased Premises or Adjoining Property in any way, and Tenant hereby expressly waives the right to make repairs at the expense of the Landlord, which right may otherwise be provided for in any law now or hereafter in effect. Nothing in the preceding sentence shall be deemed to preclude Tenant from being entitled to insurance proceeds or condemnation awards for Restoration pursuant to the terms of this Lease. Tenant shall, in all events, make all repairs for which it is responsible hereunder promptly, and all repairs shall be in a good, proper and workmanlike manner.

(b)    If Tenant shall be in default under any of the provisions of this Paragraph 9, Landlord may, after thirty (30) days notice to Tenant and failure of Tenant to commence to cure during said period or to diligently prosecute such cure to completion once begun, but immediately upon notice in the event of an emergency (that is, imminent danger of injury to persons or property), do whatever is necessary to cure such default as may be reasonable under the circumstances for the account of and at the expense of Tenant. In the event of an emergency, before Landlord may avail itself of its rights under this Paragraph 9(b), Landlord shall send notice to Tenant of the situation by phone or other available communication. All actual and reasonable costs and expenses (including, without limitation, reasonable attorneys'

fees and expenses) so incurred by Landlord, together with interest thereon at the Default Rate from the date of payment or incurring the expense, shall constitute Additional Rent payable by Tenant under this Lease and shall be paid by Tenant to Landlord on demand.  Landlord and Tenant agree that, in the event of an emergency, expenditures which might otherwise be unreasonable (such as overtime) may nevertheless be reasonable under the circumstances.

(c)     Tenant shall from time to time replace with other operational equipment or parts any of the mechanical systems or other equipment included in the Improvements which shall have become worn out, obsolete or unusable for the purpose for which it is intended, been taken by a Condemnation as provided in Paragraph 12, or been lost, stolen, damaged or destroyed as provided in Paragraph 14.  Tenant shall repair at its sole cost and expense all damage to the Leased Premises caused by the removal of equipment or any other personal property of Tenant at any time, including upon expiration or termination of the Lease.

10.     Liens.  Tenant shall not, directly or indirectly, create or permit to be created or to remain, and shall promptly discharge, any lien on any of the Leased Premises, on the Basic Rent, Additional Rent or on any other sums payable by Tenant under this Lease, other than the Mortgage (and any assignment of leases, rents or profits collateral thereto), the Permitted Encumbrances and any mortgage, lien, encumbrance or other charge created by or resulting from any act or omission by Landlord or those claiming by, through or under Landlord (except Tenant).

11.     Alterations.  Tenant shall not make any Alterations which would result, after giving consideration to the completed alteration, in a diminution in the value of the Leased Premises without Landlord's written consent.  Tenant may make any other Alterations without the prior written consent of the Landlord provided such Alterations comply with all of the provisions of the following sentence.  In the event that Landlord gives its prior written consent to any Alterations, or if such consent is not required, Tenant agrees that in connection with any Alteration (i) all such Alterations shall be performed in a good and workmanlike manner, and shall be expeditiously completed in compliance with all Legal Requirements, (ii) all work done

MWBB 6/26/95
\circuit\inland\lease.wq

13

in connection with any such Alteration shall comply with all Insurance Requirements, (iii) Tenant shall promptly pay all costs and expenses of any such Alteration, and shall discharge all liens filed against any of the Leased Premises arising out of the same, (iv) Tenant shall procure and pay for all permits and licenses required in connection with any such Alteration, (v) all such Alterations shall be the property of Landlord and shall be subject to this Lease, and (vi) any Alteration the estimated cost of which in any one instance exceeds Two Hundred Fifty Thousand Dollars ($250,000.00) shall be made under the supervision of a licensed architect or engineer in accordance with detailed plans and specifications which shall be submitted to Landlord at least ten (10) days prior to the commencement of the Alterations. Upon completion of any Alteration in excess of $250,000 Tenant will provide as-built plans and specifications or record drawings to Landlord and Lender.

     12.   Condemnation.

     (a)   Immediately upon obtaining knowledge of the institution of any proceeding for Condemnation, Tenant shall notify Landlord thereof and Landlord shall be entitled to participate in any Condemnation proceeding at Tenant's expense. Landlord, immediately upon obtaining knowledge of the institution of any proceeding for Condemnation, shall notify Tenant thereof and Tenant shall have the right to participate in such proceedings at its own expense. Subject to the provisions of this Paragraph 12 and Paragraph 15, Tenant hereby irrevocably assigns to Lender or to Landlord, in that order, any award or payment in respect of any Condemnation of Landlord's interest in the Leased Premises, except that nothing in this Lease shall be deemed to require (i) the assignment to Landlord or Lender of any award or payment on account of Tenant's leasehold interest hereunder, Tenant's Trade Fixtures, or other tangible personal property, moving expenses and similar claims, if available, to the extent Tenant shall have a right to make a separate claim therefor against the condemnor or (ii) any act or circumstance that impairs Tenant's right to any such award or payment, it being agreed, however, that Tenant shall in no event be entitled to any payment that reduces the award to which Landlord is or would be entitled for the condemnation of Landlord's interest in the Leased Premises.

MWBB 6/26/95
\circuit\inland\lease.wa

14

(b)    If (i) the entire Leased Premises or (ii) at least ten percent (10%) of the Land or the building constructed on the Land, the loss of which even after restoration would, in Tenant's reasonable business judgment, be substantially and materially adverse to the business operations of Tenant, shall be subject of a Taking by a duly constituted authority or agency having jurisdiction, then Tenant shall, not later than sixty (60) days after a Taking has occurred, serve notice upon Landlord ("Tenant's Termination Notice") of its intention to terminate this Lease on any Basic Rent Payment Date specified in such notice, which date (the "Termination Date") shall be no sooner than the first Basic Rent Payment Date occurring at least thirty (30) days after the date of Tenant's Termination Notice.  In the event that during the initial term Tenant shall serve such notice upon Landlord of its intention to terminate this Lease on the Termination Date, Tenant shall, as part of such notice, offer (which offer may be rejected by Landlord as set forth below) to purchase the Leased Premises and the award, or if no part of the Leased Premises shall remain, the entire award for the applicable price computed in accordance with the schedule annexed hereto and marked Exhibit "C" (the "Purchase Price") plus all other amounts which may be due and owing to Lender or Landlord by reason of any default by Tenant in complying with its obligations under this Lease (the "Additions to Purchase Price").  If Landlord and Lender shall not elect to accept Tenant's said offer to purchase, Landlord shall give notice rejecting such offer to Tenant within thirty (30) days after the giving of Tenant's Termination Notice, in which case this Lease shall be terminated as above provided and the entire award made in the Condemnation proceeding shall be paid to Lender,  or if there is no Lender, to Landlord.  Landlord's notice to reject Tenant's said offer to purchase shall be void and of no effect unless accompanied by the written notice of Lender to the effect that Lender also elects not to accept Tenant's said offer to purchase.  Should said notices of Landlord and Lender rejecting Tenant's said offer to purchase not be served within said period of thirty (30) days, then and in that event, the said offer shall be deemed accepted.      In the event that Landlord and Lender shall accept or be deemed to have accepted Tenant's offer to purchase, title shall close and Purchase Price and Additions to Purchase Price shall be paid as hereinafter provided and in such event Tenant shall be entitled to and shall receive any and all awards then

or thereafter made in the Condemnation proceeding and Landlord shall assign or in case of any award previously made, deliver to Tenant on the Closing Date such award as may be made.

In the event Landlord and Lender shall accept Tenant's offer to purchase, or be deemed to have accepted Tenant's offer, title shall close on the Termination Date hereinbefore defined (the "Closing Date"), at noon at the local office of Landlord's counsel, or at such other time and place as the parties hereto may agree upon, this Lease shall be automatically extended to and including the Closing Date (or, if applicable, the extended Closing Date hereinafter described) and Tenant shall pay the Purchase Price and Additions to Purchase Price by transferring immediately available federal funds to such account or accounts and in such bank or banks as Lender or Landlord, in that order, shall designate, upon delivery of a bargain and sale deed conveying the Leased Premises and all other required documents including an assignment of any award in connection with such Taking. The special warranty deed shall convey a good and clear record and marketable title, free from encumbrances other than (i) exceptions to title existing on the date hereof or otherwise consented to by Landlord, (ii) liens or encumbrances created or suffered through or by Tenant failing to observe or perform any of the terms, covenants or agreements herein provided to be observed and performed by Tenant, (iii) any installments of Taxes due and payable after the Closing Date, and (iv) this Lease. Such deed shall contain an agreement by grantee to observe and perform all of the covenants, conditions and restrictions contained in any instruments of record which were assumed by Landlord or deemed to have been assumed by Landlord on its acquisition of title. The acceptance of a deed by Tenant shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Landlord to be performed pursuant to the provisions hereof. Tenant shall pay all conveyance, transfer, sales and like taxes, recording charges and fees, and title charges for any policy of title insurance required by Tenant, required in connection with the purchase. If on the Closing Date, there may be any liens or encumbrances which Landlord is obligated to remove, Landlord shall use reasonable efforts to remove the same, and the Closing Date shall be extended for a reasonable period to permit Landlord to discharge such liens or encumbrances. If by said extended Closing Date such liens or

MWBB 6/26/95
\circuit\inland\lease.wa

16



encumbrances shall not be removed and such liens or encumbrances shall be subordinate to a Mortgage, Tenant shall seek to purchase the Mortgage from the holder thereof at a price which shall in no event exceed the Purchase Price and Additions to Purchase Price, and the Leased Premises shall be conveyed by Landlord to Tenant subject to the Mortgage and in such event the amount payable by Tenant to the holder of the Mortgage shall be deducted from the Purchase Price and Additions to the Purchase Price payable to Landlord. Landlord shall not be obligated to discharge any such lien or encumbrance if Tenant's title insurance company shall issue affirmative insurance to the effect that the same shall not be collected from or enforced against the insured premises. If there be any liens or encumbrances against the Leased Premises which Landlord is obligated to remove, upon request made a reasonable time before the Closing Date, Landlord shall provide at the Closing separate funds for the foregoing, payable to the holder of such lien or encumbrances.

In the event that during any renewal term Tenant shall serve Tenant's Termination Notice upon Landlord, this Lease and the Term hereof shall terminate on the Termination Date. In such event the entire award made in Condemnation proceeding shall be paid to Lender, or to Landlord, in that order.

(c)     In the event of any other Condemnation of part of the Leased Premises which does not result in a Termination of this Lease, subject to the requirements of Paragraph 15, the Net Award of such Condemnation shall be delivered to Tenant and, promptly after such Condemnation, Tenant shall commence and diligently continue to perform the Restoration (whether or not the Net Award shall be sufficient to do so). Landlord and Lender shall, to the extent received, make the Net Award available to Tenant and all Rent shall continue unabated. In the event of a Requisition of any of the Leased Premises, the Net Award of such Requisition shall be retained by Tenant and all Rent shall continue unabated.

(d)     Except with respect to an award or payment to which Tenant is entitled pursuant to the foregoing provisions of this Paragraph 12, no agreement with any condemnor in settlement or under threat of any Condemnation shall be made by either Landlord or Tenant without the written consent of the other, and of Lender, if the Leased

MWBB 6/26/95
\circuit\Inland\lease.wa

17



Premises are then subject to a Mortgage, which consent shall not be unreasonably withheld or delayed provided such award or payment is applied in accordance with this Lease.

13.   Insurance.

(a)   Tenant shall maintain at its sole cost and expense the following insurance on the Leased Premises:

(i)   Insurance against loss or damage to the Improvements under an All Risk Policy, which shall include flood insurance and earthquake insurance, each to the extent applicable and which may contain such exclusions as are standard in the industry, in amounts to prevent Landlord or Tenant from becoming a co-insurer under the applicable policies, and in any event in amounts not less than the actual replacement cost of the Improvements (excluding footings and foundations and parts of the Improvements which are not insurable).

(ii)   Contractual and comprehensive general liability insurance against claims for bodily injury, death or property damage occurring on, in or about any of the Leased Premises or the Adjoining Property, which insurance shall be written on a so-called "occurrence basis," and shall provide minimum protection with a combined single limit in an amount not less than Five Million ($5,000,000) Dollars (or in such increased limits from time to time to reflect declines in the purchasing power of the dollar as Landlord may reasonably request).

(iii) Worker's compensation insurance covering all persons employed by Tenant on the Leased Premises in connection with any work done on or about any of the Leased Premises.

(b)   During such time as no Event of Default is outstanding hereunder, and the tangible net worth of Circuit City Stores, Inc. (the "Original Tenant") shall be not less than Two Hundred Million ($200,000,000.00) Dollars as determined in accordance with generally accepted accounting principles consistently applied, Tenant may self-insure the coverage referred to in Paragraph 13(a), provided that the self insurance program of this subparagraph (b) does not violate any Legal Requirements applicable to the Leased Premises or

MWBB 6/26/95
\circuit\inland\lease.wa

18

Tenant, and further provided that Tenant shall, at the commencement of any such self-insurance, deliver to Landlord a certificate stating that Tenant has elected to so self-insure together with evidence of the Original Tenant's net worth.

(c)    The insurance required by Paragraph 13(a) shall be written by companies having an investment grade claims-paying ability during such time as Tenant is not self-insuring in accordance with the provisions of Paragraph 13.(b). All companies providing insurance required by Paragraph 13.(a) shall be authorized to do an insurance business in the State or otherwise agreed to by Landlord and Lender. Sums due from Tenant in lieu of insurance proceeds because of such self-insurance programs shall be treated as insurance proceeds for all purposes under this Lease. The insurance policies shall be for a term of not less than one year, and shall (except for worker's compensation insurance) name Landlord, Tenant and any Lender as additional insured parties, as their respective interests may appear. If said insurance or any part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Tenant or become void, Tenant shall immediately obtain new or additional insurance reasonably satisfactory to Landlord and Lender.

(d)    Each insurance policy referred to above shall, to the extent applicable, contain standard non-contributory mortgagee clauses in favor of any Lender. The certificate delivered by Tenant in respect of each policy shall provide that the policy may not be cancelled except after 30 days prior notice to Landlord and any Lender. The certificate delivered by Tenant in respect of each policy shall also provide that any loss otherwise payable thereunder shall be payable notwithstanding (i) any act or omission of Landlord or Tenant which might, absent such provision, result in a forfeiture of all or a part of such insurance payment, (ii) the occupation or use of any of the Leased Premises for purposes more hazardous than permitted by the provisions of such policy, (iii) any foreclosure or other action or proceeding taken by any Lender pursuant to any provision of the Mortgage upon the happening of an event of default therein, or (iv) any change in title or ownership of any of the Leased Premises.

(e)    Tenant shall pay as they become due all premiums for the insurance required by this Paragraph 13, shall renew or replace each policy, and shall deliver to Landlord

MWBB 6/26/95
\circuit\inland\lease.wa

19



and Lender, a certificate or other evidence (reasonably satisfactory to Lender and Landlord) of the existing policy and such renewal or replacement policy within 30 days following such renewal or replacement; provided that if the net worth of the Original Tenant shall be less than $200,000,000.00 as determined in accordance with generally accepted accounting principles consistently applied, then such certificate or other evidence shall be delivered to Landlord and Lender at least 10 days prior to the expiration of the existing policy. The certificate delivered by Tenant in respect of each such policy shall provide that the policy shall not expire until the Landlord and Lender shall receive a notice from the insurer to the effect that a policy will expire on a date (the "Policy Expiration Date") which shall be ten (10) days following the date of notice to Landlord and Lender. In the event of Tenant's failure to comply with any of the foregoing requirements of this Paragraph 13 within five (5) days of written notice from Landlord, Landlord shall be entitled to procure such insurance. Any sums expended by Landlord in procuring such insurance shall be Additional Rent and shall be repaid by Tenant, together with interest thereon at the Default Rate, from the time of payment by Landlord until fully paid by Tenant immediately upon written demand therefor by Landlord.

(f)  Anything in this Paragraph 13 to the contrary notwithstanding, any insurance which Tenant is required to obtain pursuant to Paragraph 13(a)(i) may be carried under a "blanket" policy or policies covering other properties or liabilities of Tenant, provided that such "blanket" policy or policies otherwise comply with the provisions of this Paragraph 13. In the event any such insurance is carried under a blanket policy, Tenant shall deliver to Landlord and Lender a certified copy of those provisions of the blanket policy that pertain to the Leased Premises, if any, to evidence the issuance and effectiveness of the policy, the amount and character of the coverage with respect to the Leased Premises and the presence in the policy of provisions of the character required in the above sections of this Paragraph 13.

14.  Damage, Destruction.

(a)  In the event of any casualty loss exceeding $100,000, Tenant shall give Landlord immediate notice thereof. Tenant shall adjust, collect and compromise any and all such claims, with the consent of Lender and Landlord, not to be unreasonably withheld or

MWBB 6/26/95
\circuit\inland\lease.wa

20





delayed and Landlord and Lender shall have the right to join with Tenant therein.  If the estimated cost of Restoration or repair shall be Five Hundred Thousand ($500,000.00) Dollars or less, all proceeds of any insurance required under Paragraph 13(a) shall be payable to Tenant, provided that the Original Tenant at such time shall have a tangible net worth of not less than Two Hundred Million Dollars ($200,000,000.00) as determined in accordance with generally accepted accounting principles, consistently applied, and in all other events to a Trustee which shall be a federally insured bank or other financial institution, selected by Landlord and Tenant and reasonably satisfactory to Lender (the "Trustee"). If the Leased Premises shall be covered by a Mortgage, Lender, if it so desires, shall be the Trustee.  Each insurer is hereby authorized and directed to make payment under said policies directly to such Trustee instead of to Landlord and Tenant jointly; and Tenant hereby appoints such Trustee as Tenant's attorney-in-fact to endorse any draft therefor for the purposes set forth in this Lease after approval by Tenant of such Trustee, if Trustee is other than Lender, such approval not to be unreasonably withheld or delayed.

         (b)     In the event of any casualty (whether or not insured against) resulting in damage to the Leased Premises or any part thereof, the Term shall nevertheless continue and there shall be no abatement or reduction of Basic Rent, Additional Rent or any other sums payable by Tenant hereunder.  The Net Proceeds of such insurance payment shall be retained by the above-mentioned Trustee and, promptly after such casualty, Tenant shall commence and diligently continue to perform the Restoration to the Leased Premises.  Upon payment to the Trustee of such Net Proceeds, the Trustee shall, to the extent available, make the Net Proceeds available to Tenant for restoration, in accordance with the provisions of Paragraph 15.  Tenant shall, whether or not the Net Proceeds are sufficient for the purpose, promptly repair or replace the Improvements as nearly as possible to their value and condition and character immediately prior to such event and otherwise in accordance with all Insurance Requirements and Legal Requirements and the provisions of this Lease (including Tenant's making any desired Alterations allowed hereunder) and the Net Proceeds of such loss shall thereupon be payable to Tenant, subject to the provisions of Paragraph 15 hereof.

MWBB 6/26/95
\circuit\inland\lease.wa

21



(c)    In the event that any damage or destruction shall be subject to the self insurance provisions provided for in 13(b), Tenant shall pay to the Trustee the amount of the proceeds that would have been payable had such self insurance program not been in effect (the "Tenant Insurance Payment").

15.    Restoration.    The Net Proceeds and the Tenant Insurance Payment (together being herein defined as the "Restoration Fund") paid to the Trustee shall be disbursed by the Trustee in accordance with the following conditions:

(a)    At the time of any disbursement, no Event of Default shall exist and no mechanics' or materialmen's liens shall have been filed and remain undischarged and unbonded.

(b)    If the cost of Restoration exceeds $250,000 prior to commencement of the Restoration, the architects, contracts, contractors, plans and specifications for the Restoration shall have been approved by Landlord, which approval shall not be unreasonably withheld or delayed.

(c)    Each request for disbursement shall be accompanied by a certificate of Tenant, signed by the President, Treasurer or any Vice President of Tenant, describing the completed work for which payment is requested, stating the cost incurred in connection therewith and stating that Tenant has not previously received payment for such work and the certificate to be delivered by Tenant upon completion of the work shall, in addition, state that the work has been completed and complies with the applicable requirements of this Lease and all Legal Requirements and Insurance Requirements.

(d) Disbursements shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement upon receipt of (1) satisfactory evidence, including architects' certificates, of the stage of completion, of the estimated cost of completion and of performance of the work to date in a good and workmanlike manner in accordance with the contracts, plans and specifications approved by Landlord, (2) waivers of liens, (3) a satisfactory bring down of title insurance, and (4) other evidence of cost

MWBB 6/26/95
\circuit\inland\lease.wa

22

and payment so that Landlord can verify that the amounts disbursed from time to time are represented by work that is completed in place and free and clear of mechanics' lien claims.

(e)     The Trustee may retain ten percent from each disbursement of the Restoration Fund until the Restoration is fully completed and the Leased Premises are available for their intended use, in the reasonable judgment of the Lender, including the issuance of any necessary certificate of occupancy.

(f)     The Restoration Fund shall be kept in a separate interest-bearing account federally insured to the extend applicable by the Trustee or by Lender.

Prior to commencement of Restoration and at any time during Restoration, if the estimated cost of Restoration, as reasonably determined by Landlord or Lender, exceeds the amount of the Restoration Fund, the amount of such excess shall be paid by Tenant to the Trustee to be added to the Restoration Fund prior to any further disbursement or Tenant shall fund at its own expense the costs of such Restoration until the remaining Restoration Fund is sufficient for the completion of the Restoration. Any sum in the Restoration Fund which remains in the Restoration Fund upon the completion of Restoration shall be paid to Tenant. For purposes of determining the source of funds with respect to the disposition of funds remaining after the completion of Restoration, the Net Proceeds or the Restoration Award shall be deemed to be disbursed prior to any amount added by Tenant.

16.     Subordination to Financing.

(a)     Subject to the following provisions of this Paragraph 16(a), Tenant agrees that this Lease shall at all times be subject and subordinate to the lien of any Mortgage, and Tenant agrees, upon demand, without cost, to execute instruments as may be required to further effectuate or confirm such subordination. Tenant agrees not to enter into any modification of this Lease without the consent of Lender. So long as no Event of Default shall be outstanding, Tenant's tenancy shall not be disturbed, nor shall this Lease be affected by any default under such Mortgage, and in the event of a foreclosure or other enforcement of any such Mortgage, or sale in lieu thereof, the purchaser at such foreclosure sale shall be bound to Tenant for the Term of this Lease and any extensions thereof, the rights of Tenant hereunder shall

expressly survive, and this Lease shall in all respects continue in full force and effect so long as no Event of Default by Tenant has occurred and is continuing. So long as no Event of Default by Tenant has occurred and is continuing, Tenant shall not be named as a party defendant in any such foreclosure suit, except as may be required by law. Any Mortgage to which this Lease is now or hereafter subordinate shall provide, in effect, that during the time this Lease is in force all insurance proceeds and condemnation awards shall be permitted to be used for restoration in accordance with the provisions of this Lease. Notwithstanding an Event of Default, the provisions of this Paragraph 16.(a) shall continue to apply for the benefit of any subtenant entitled to nondisturbance under Paragraph 17.

(b)     Notwithstanding the provisions of subdivision (a) of this Paragraph 16, the holder of the Mortgage to which this Lease is subject and subordinate, as provided in said subdivision (a), shall have the right, at its sole option, at any time, to subordinate and subject the Mortgage, in whole or in part, to this Lease by recording a unilateral declaration to such effect.

(c)     At any time prior to the expiration of the Term, Tenant agrees, at the election and upon demand of any owner of the Leased Premises, or of Lender who has granted non-disturbance to Tenant pursuant to Paragraph 16(a) above, to attorn, from time to time, to any such owner or Lender, upon the then executory terms and conditions of this Lease, for the remainder of the term originally demised in this Lease and for any renewal term, provided that such owner or Lender shall then be entitled to possession of the Leased Premises subject to the provisions of this Lease. The provisions of this subdivision (c) shall enure to the benefit of any such owner or Lender, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the foreclosure of the Mortgage, shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions.

(d)     Each of Tenant, Landlord and Lender agrees that, if requested by any of the others, each shall, without charge, enter into (i) a Subordination, Non-Disturbance and Attornment Agreement reasonably requested by Lender, provided such agreement contains provisions relating to non-disturbance in accordance with the provisions of subparagraph (a), and

MWBB 6/26/95
\circuit\inland\lease.wa

24





(ii) an agreement with Lender whereby Tenant shall agree for the benefit of Lender that Tenant will not, without in each case the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, (a) amend, modify, cancel or surrender the term of this Lease except as expressly permitted by the provisions of this Lease, or enter into any agreement with Landlord so to do, or (b) pay any installment of Basic Rent more than one (1) month in advance of the due date thereof or otherwise than in the manner provided for in this Lease.

      17.    <u>Assignment, Subleasing</u>.

      (a)  Tenant or its wholly owned subsidiary is currently in occupancy and is operating its business at the Leased Premises. Tenant may assign its interest in this Lease without the prior written consent of Landlord. Tenant shall, however, give Landlord and Lender prior written notice of Tenant's intent to assign its interest in this Lease or sublease any portion of the Leased Premises promptly upon electing to do so. No sublease under, or assignment of this Lease (or any rejection in bankruptcy or other default by any assignee or sublessee hereunder) shall relieve the Original Tenant of its obligations hereunder, for which it shall remain primarily liable, and upon any assignment or sublease hereunder, the Original Tenant shall acknowledge in writing in favor of Landlord and Lender that such obligations are not affected by such assignment or sublease.

      (b)    Each sublease of the Leased Premises or any part thereof shall be subject and subordinate to the provisions of this Lease. Tenant agrees that in the case of an assignment, Tenant shall, within fifteen (15) days after the execution and delivery of any such assignment, deliver to Landlord (i) a duplicate original of such assignment in recordable form and (ii) an agreement executed and acknowledged by the assignee in recordable form wherein the assignee shall agree to assume and agree to observe and perform all of the terms and provisions of this Lease on the part of the Tenant to be observed and performed from and after the date of such assignment, and, in the case of a sublease, Tenant shall, within fifteen (15) days after the execution and delivery of such sublease, deliver to Landlord a duplicate original of such sublease.

MWBB 6/26/95
\circuit\inland\lease.wa

25

(c)    Landlord agrees for itself, its successors and assigns, promptly upon Tenant's request, to enter into a nondisturbance and attornment agreement with any Qualified Subtenant, as defined below, of the entire Leased Premises currently operated by Tenant upon the terms described below, pursuant to which Landlord shall agree, for so long as such Qualified Subtenant is not in default under its Qualified Sublease, as defined below, that the Qualified Sublease shall not be terminated as a result of any termination of this Lease and such Qualified Subtenant's use and occupancy of the Leased Premises shall not be disturbed by Landlord, and pursuant to which such Qualified Subtenant shall agree to attorn to Landlord or its successor as landlord under the Qualified Sublease upon any termination of this Lease.  Said agreement shall further provide that nothing therein contained shall impose any obligation on the Landlord, the then owner or the Lender or their respective successors to (a) return or apply any security deposited under such sublease, unless such security shall be transferred and turned over to the Landlord, such then owner or Lender, (b) expend any sums to make any installations or alterations provided to be made by the sublessor under said sublease or reimburse the subtenant under said sublease for any installations or alterations made by it, (c) be liable for any act or omission of any prior sublessor except that the foregoing shall not prevent any subtenant's exercising any right of termination as the result of any continuing default of the prior sublessor relating to its repair, maintenance or service obligations under the Qualified Sublease, (d) be subject to any offsets or defense which such subtenant might have against any prior sublessor, (e) be bound by any rent or additional rent which such subtenant might have paid for more than the current rent to any prior landlord, or (f) be bound by any amendment or modification of the sublease made without the prior written consent of Landlord and Lender, the terms of which amendment or modification if included in the original sublease would have prevented such sublease from meeting the criteria for a Qualified Sublease.  Any subtenant under a Qualified Sublease, as defined below, is a "Qualified Subtenant."  A "Qualified Sublease" shall be any "bond" or "absolute net" sublease (that is, a sublease that requires the uninterrupted payment of rent without offset or diminution and that places no obligations upon the sublessor thereunder other than those of the type placed upon Landlord hereunder) of the entire Leased Premises,

MWBB 6/26/95
\circuit\inland\lease.wa

26

having a term expiring simultaneously or before the expiration of the Term hereunder (including option periods), pursuant to which the subtenant thereunder had, at the time such sublease was entered into, a Standard & Poor's investment grade rating of at least BBB- or a Moody's investment grade rating of at least Baa3 (or equivalent rating of any other generally recognized rating organization) and was not on credit watch and pursuant to which the subtenant thereunder is required to fulfill all of the obligations of Tenant hereunder with respect to the Leased Premises, including, without limitation, payment of rent at a rate equal to or greater than the rate at which Tenant is required to pay rent (including all Additional Rent) hereunder.

(d)     Upon the occurrence of an Event of Default under this Lease, Landlord shall have the right to collect and enjoy all rents and other sums of money payable under any sublease of any of the Leased Premises, and Tenant hereby irrevocably and unconditionally assigns such rents and money to Landlord, which assignment may be exercised upon and after (but not before) the occurrence of an Event of Default.

18.     Permitted Contests.  Notwithstanding any provision of this Lease to the contrary, after prior written notice to Landlord, Tenant shall not be required to (i) pay any Tax, (ii) comply with any Legal Requirement, or (iii) discharge or remove any lien, so long as Tenant shall contest, in good faith and at its expense, the existence, the amount or the validity thereof, the amount of the damages caused thereby, or the extent of its or Landlord's liability therefor, by appropriate proceedings which shall operate during the pendency thereof to prevent (v) the collection of, or other realization upon, the Tax or lien so contested, (w) the sale, forfeiture or loss of any of the Leased Premises, any Basic Rent or any Additional Rent to satisfy the same or to pay any damages caused by the violation of the same, (x) any interference with the use, occupancy, sale or financing of any of the Leased Premises, (y) any interference with the payment of any Basic Rent or any Additional Rent, and (z) the cancellation of any fire or other insurance policy.  In no event shall Tenant pursue any contest with respect to any Tax, Legal Requirement, or lien referred to above in such manner that exposes Landlord to any criminal or material civil liability, penalty or sanction for which Tenant has not made provisions reasonably acceptable to Landlord and Lender.  Tenant shall be deemed to have made provisions

reasonably acceptable to Landlord and Lender if Tenant shall have provided Lender or Landlord in that order as security for such contest, an amount of cash or bond equal to 125% of the amount being contested, or other security satisfactory in the reasonable opinion of Lender or Landlord in that order, in assuring the payment, compliance, discharge, removal or other action, including all costs, attorneys' fees, interest and penalties, in the event that the contest is unsuccessful. No such security shall be required if the amount involved in the contest shall not exceed one tenth (1/10th) of one percent (1%) of the tangible net worth of the Original Tenant, computed in accordance with generally accepted accounting principles consistently applied as determined by its most recent publicly filed financial statements (10Q and 10K) if Tenant is a publicly held company. While any such proceedings are pending and the required security is held by Lender or Landlord, in that order, Lender or Landlord, as the case may be, shall not have the right to pay, remove or cause to be discharged the Tax, Legal Requirement or lien thereby being contested unless Landlord or Lender reasonably believes that any one or more of the conditions in subdivisions (v) through (z) shall not be prevented during the pendency of the contest. Tenant further agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as all of the conditions of the first sentence of this Paragraph 18 are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay any and all judgments, decrees and costs (including all attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof.

19.    Default. The occurrence of any one or more of the following events shall constitute an Event of Default under this Lease:

MWBB 6/26/95
\circuit\inland\lease.wa

(a)  Tenant's failure to make any payment of Basic Rent when due which continues unremedied for a period of two (2) business days after notice thereof from Landlord or Lender.

(b)  Tenant's failure to make payment of Additional Rent or other sum herein required to be paid by Tenant and such default shall continue for a period of fifteen (15) days after notice by Landlord or Lender to Tenant.

(c)  Tenant's failure to duly perform and observe, or Tenant's violation or breach of, any other provision hereof if such failure shall continue for a period of thirty (30) days after notice thereof from Landlord or Lender, or if such failure cannot be cured within such period of thirty (30) days, such period shall be extended for such longer time as reasonably necessary provided that Tenant has commenced to cure such default within said period of thirty (30) days and is actively, diligently and in good faith proceeding with continuity to remedy such failure.

(d)  The Original Tenant shall (i) voluntarily be adjudicated a bankrupt or insolvent, or (ii) consent to the appointment of a receiver or trustee for itself or for any of the Leased Premises, (iii) file a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, or (iv) make a general assignment for the benefit of creditors.

(e)  By the order of a court of competent jurisdiction, a receiver or liquidator of Tenant or of all or substantially all of the assets of Tenant or the Leased Premises shall be appointed and not be dismissed within sixty (60) days after such appointment, or if by decree of such court Tenant shall be adjudicated a debtor or insolvent or the Leased Premises or any of Tenant's property shall have been sequestered, and such decree shall have continued undischarged and unstayed for sixty (60) days after the entry thereof; or if any proceeding under the Federal Bankruptcy Code, Title 11, United States Code (including Chapters 7, 11 or 13 thereof, or any amendment thereto or any successor thereof) or any similar statute applicable to Tenant (including state insolvency statutes), as now or hereinafter in effect, shall be instituted against Tenant and shall not have been dismissed within sixty (60) consecutive days after such

MWBB 6/26/95
\circuit\inland\lease.wa

29



filing, or if Tenant shall institute any such proceeding or shall consent to the institution of any such proceeding against it under any such law.

(f) The Original Tenant shall in any insolvency proceedings be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution.

(g) The estate or interest of Tenant in any of the Leased Premises shall be levied upon or attached in any proceeding and such estate or interest is about to be sold or transferred or such process shall not be vacated or discharged within sixty (60) days after such levy or attachment.

20. Landlord's Remedies. After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

(a) Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Leased Premises, in which event Landlord shall have the right to collect Basic Rent and all other Rent and charges when due. In the alternative, Landlord shall have the right to peaceably re-enter the Leased Premises on the terms set forth in subparagraph (b) below, but without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Leased Premises, or any part thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable (which terms may be materially different from the terms of this Lease), in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Leased Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums shall not be realized or secured, then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Leased Premises in

MWBB 6/26/95<br>\circuit\inland\lease.wa

30



excess of the rent provided in this Lease, but such excess shall, notwithstanding the provisions of Paragraph 5, reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Leased Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

(b)    Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than ten (10) days following notice to Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Tenant shall pay the following to Landlord on such date:

(i)    Any obligation which has accrued prior to the date of termination.

(ii)    The amount by which the unpaid Basic Rent and all other charges which would have accrued for the balance of the Term (excluding any option periods or portions thereof) exceeds the amount of the fair and reasonable rental value of the Leased Premises in respect of such period, in each case, after discounting same to present value at a discount rate equal to the Default Rate.

Landlord shall not have any duty to mitigate its damages hereunder (including, but not limited to, any duty to relet or re-lease The Leased Premises). The amount of rent reserved by Landlord in any reletting of the Leased Premises, or any portion thereof, shall be deemed *prima facie* evidence of the fair and reasonable rental value of the Leased Premises, or such portion thereof, as the case may be. Following the date of termination, interest shall accrue on the sums payable by Tenant at the Default Rate.

In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Leased Premises and remove all persons and property therefrom, by summary dispossession proceedings.

(c)    Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, as Additional Rent such reasonable and actual expenses as Landlord may

MWBB 6/26/95
\:circuit\inland\lease.wa

31

incur in recovering possession of the Leased Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any speculative or consequential damages caused by Tenant's failure to perform its obligations under this Lease.

(d)  The various rights and remedies reserved to Landlord herein, are cumulative, the rights and remedies described in Paragraph 20.(a)-(c) shall survive termination of this Lease and Landlord may pursue any and all such rights and remedies and any other available to Landlord under applicable law or equity, whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease); provided, however, that no remedy of termination shall be available to Landlord except as expressly set forth in paragraph 20(b) after the occurrence of an Event of Default.  Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Leased Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

21.    Notices.  All notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to the provisions of this Lease (collectively "Notice" or "Notices") shall be in writing and shall be deemed to have been given for all purposes (i) three (3) days after having been sent by United States mail, by registered or certified mail, return receipt requested, postage prepaid, addressed to the other party at its address as stated below, or (ii) one (1) day after having been

MWBB 6/26/95
\circuit\inland\lease.wa



sent by Federal Express or other nationally recognized air courier service, to the Addresses stated below:

      (a) If to Landlord, at the address set forth on the first page of this Lease.

      (b) If to Tenant, at the address set forth on the first page of this Lease,

Attention: Corporate Secretary,

With a copy to:        McGuire, Woods, Battle & Boothe, L.L.P.
                        One James Center
                        Richmond, Virginia 23219
                        Attention: Robert L. Burrus, Jr.

If any Lender shall have advised Tenant by Notice in the manner aforesaid that it is the holder of a Mortgage and stating in said Notice its address for the receipt of Notices, then simultaneously with the giving of any Notice by Tenant to Landlord, Tenant shall serve a copy of such Notice upon Lender in the manner aforesaid. For the purposes of this Paragraph, any party may substitute its address by giving fifteen days' notice to the other party in the manner provided above.

      22.      <u>Memorandum of Lease; Estoppel Certificates</u>.    Tenant shall execute, deliver and record, file or register from time to time all such instruments as may be required by any present or future law in order to evidence the respective interests of Landlord and Tenant in any of the Leased Premises, and shall cause a memorandum of this Lease, and any supplement hereto or to such other instrument, if any, as may be appropriate, to be recorded, filed or registered and re-recorded, refiled or re-registered in such manner and in such places as may be required by any present or future law in order to give public notice and protect the validity of this Lease. In the event of any discrepancy between the provisions of said recorded memorandum of this Lease or any other recorded instrument referring to this Lease and the provisions of this Lease, the provisions of this Lease shall prevail. Landlord and Tenant shall, at any time and from time to time, upon not less than twenty days' prior written request by the other, execute, acknowledge and deliver to the other a statement in writing, executed by Landlord or Tenant or, if other than an individual, by a President, Vice President or authorized

MWBB 6/26/95
\circuit\inland\lease.wx

33



general partner, principal officer or agent certifying (i) that this Lease is unmodified and in full effect (or, if there have been modifications, that this Lease is in full effect as modified, setting forth such modifications), (ii) the dates to which Basic Rent payable hereunder has been paid, (iii) that to the knowledge of the party executing such certificate no default by either Landlord or Tenant exists hereunder or specifying each such of which such party may have knowledge; (iv) the remaining Term hereof; and (v) with respect to a certificate signed by Tenant, that to the knowledge of the party executing such certificate, there are no proceedings pending or threatened against Tenant before or by any court or administrative agency which if adversely decided would materially and adversely affect the financial condition and operations of Tenant or if any such proceedings are pending or threatened to said party's knowledge, specifying and describing the same. It is intended that any such statements may be relied upon by Lender, the recipient of such statements or their assignees or by any prospective purchaser, assignee or subtenant of the Leased Premises.

      23.   <u>Surrender and Holding Over</u>. Upon the expiration or earlier termination of this Lease, Tenant shall peaceably leave and surrender the Leased Premises (except as to any portion thereof with respect to which this Lease has previously terminated) to Landlord in the same condition in which the Leased Premises were originally received from Landlord at the commencement of this Lease, except as to any repair or Alteration as permitted or required by any provision of this Lease, and except for ordinary wear and tear and damage by fire, casualty or condemnation which Tenant is not required to repair hereunder. Tenant may remove at Tenant's sole cost and expense from the Leased Premises on or prior to such expiration or earlier termination Tenant's Trade Fixtures and personal property which are owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal. Tenant's Trade Fixtures and personal property not so removed at the end of the Term or within thirty days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises. Landlord shall not in any manner or to any extent be obligated to reimburse Tenant

MWBB 6/26/95
\circuit\inland\lease.wa





for any property which becomes the property of Landlord as a result of such expiration or earlier termination. Upon such expiration or earlier termination, no party shall have any further rights or obligations hereunder except as specifically provided herein.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof, with the consent of Landlord, shall operate and be construed as tenancy from month to month only, at one hundred fifty percent (150%) of the Basic Rent reserved herein and upon the same terms and conditions as contained in this Lease. Notwithstanding the foregoing, any holding over without Landlord's consent shall entitle Landlord, in addition to collecting Basic Rent at a rate of one hundred fifty percent (150%) thereof, to exercise all rights and remedies provided by law or in equity, including the remedies of Paragraph 20.

24.  <u>No Merger of Title</u>.  There shall be no merger of this Lease nor of the leasehold estate created by this Lease with the fee estate in or ownership of any of the Leased Premises by reason of the fact that the same person, corporation, firm or other entity may acquire or hold or own, directly or indirectly, (i) this Lease or the leasehold estate created by this Lease or any interest in this Lease or in such leasehold estate and (ii) the fee estate or ownership of any of the Leased Premises or any interest in such fee estate or ownership.  No such merger shall occur unless and until all persons, corporations, firms and other entities having any interest in (x) this Lease or the leasehold estate created by this Lease and (y) the fee estate in or ownership of the Leased Premises including, without limitation, Lender's interest therein, or any part thereof sought to be merged shall join in a written instrument effecting such merger and shall duly record the same.

25.  <u>Landlord Exculpation</u>.  Anything contained herein to the contrary notwithstanding, any claim based on or in respect of any liability of Landlord under this Lease shall be enforced only against the Landlord's interest in Leased Premises and shall not be enforced against the Landlord individually or personally.

26.  <u>Hazardous Substances</u>.

MWBB 6/26/95
\circuit\inland\lease.wa

35

(a)     Tenant represents and warrants that it will not on, about, or under the Leased Premises, make, treat or dispose of any "hazardous substances" as that term is defined in the Comprehensive Environmental Response, Compensation and Liability Act, and the rules and regulations promulgated pursuant thereto, as from time to time amended, 42 U.S.C. § 9601 *et seq.* (the "Act"), but the foregoing shall not prevent the use to the extent necessary and customary in normal distribution center operations of any such substances in accordance with applicable laws and regulations and Tenant represents and warrants that it will at all times comply with the Act and any other federal, state or local laws, rules or regulations governing Hazardous Materials. Hazardous Materials as used herein shall include, without limitation, all chemicals, petroleum, crude oil or any fraction thereof, hydrocarbons, polychlorinated biphenyls (PCBs), asbestos, asbestos-containing materials and/or products, urea formaldehyde, or any substances which are classified as "hazardous" or "toxic" under the Act; hazardous waste as defined under the Solid Waste Disposal Act, as amended 42 U.S.C. § 6901; air pollutants regulated under the Clean Air Act, as amended, 42 U.S.C. § 7401, *et seq.*; pollutants as defined under the Clean Water Act, as amended, 33 U.S.C. § 1251, *et seq.*, any pesticide as defined by Federal Insecticide, Fungicide, and Rodenticide Act, as amended, 7 U.S.C. § 136, *et seq.*, any hazardous chemical substance or mixture or imminently hazardous substance or mixture regulated by the Toxic Substances Control Act, as amended, 15 U.S.C. § 2601, *et seq.*, any substance listed in the United States Department of Transportation Table at 45 CFR 172.101; any chemicals included in regulations promulgated under the above listed statutes or any modifications thereof or successor statutes thereto; any explosives, radioactive material, and any chemical regulated by state statutes similar to the federal statutes listed above and regulations promulgated under such state statutes.

(b)     To the extent required by the Act and/or any federal, state or local laws, rules or regulations governing Hazardous Materials, Tenant shall remove any hazardous substances (as defined in the Act) and Hazardous Materials (as defined above) whether now or hereafter existing on the Leased Premises and whether or not arising out of or in any manner connected with Tenant's occupancy of the Leased Premises during the Initial Term or any

MWBB 6/26/95
\circuit\inland\lease.wa

36

extension or renewal Term thereof. Tenant shall and hereby does agree to defend, indemnify and hold Lender and Landlord, their officers, directors, shareholders, partners and employees harmless from and against any and all causes of actions, suits, demands or judgments of any nature whatsoever, losses, damages, penalties, expenses, fees, claims, costs (including response and remedial costs), and liabilities, including, but not limited to, attorneys' fees and costs of litigation, arising out of or in any manner connected with (i) the violation of any applicable federal, state or local environmental law with respect to the Leased Premises; (ii) the "release" or "threatened release" of or failure to remove, as required by this Paragraph 26, "hazardous substances" (as defined in the Act) and Hazardous Materials (as defined above) from the Leased Premises or any portion or portions thereof, now or hereafter existing during the Initial Term and any extension or renewal Term whether or not arising out of or in any manner connected with Tenants' occupancy of the Leased Premises during the Initial Term or any extension or renewal Term.

(c)     The Tenant represents and warrants that it will not install any underground storage tank without specific, prior written approval from the Landlord and Lender, which may be withheld in the sole discretion of either. The Tenant will not store combustible or flammable materials on the Leased Premises in violation of the Act and any other federal, state or local laws, rules or regulations governing Hazardous Materials.

27.     Entry by Landlord. Landlord and its authorized representatives shall have the right upon reasonable notice (which shall be not less than 48 hours except in the case of emergency) to enter the Leased Premises at all reasonable business hours, (and at all other times in the event of an emergency), for (i) the purpose of inspecting the same or for the purpose of doing any work under Paragraph 9, and may take all such action thereon as may be necessary or appropriate for any such purpose (but nothing contained in this Lease or otherwise shall create or imply any duty upon the part of Landlord to make any such inspection or do any such work), provided further that if an event of Default has occurred and is continuing, such inspections and work shall be at Tenant's sole cost and expense, and (ii) the purpose of showing the Leased Premises to prospective purchasers and mortgagees and, at any time within twelve (12) months

MWBB 6/26/95
\circuit\inland\lease.wa

37

prior to the expiration of the term of this Lease for the purpose of showing the same to prospective tenants. No such entry shall constitute an eviction of Tenant but any such entry shall be done by Landlord in such reasonable manner as to minimize any disruption of Tenant's business operation.

28.   Statements.  Tenant named herein shall submit to Lender and Landlord (i) within 45 days of the end of each fiscal quarter, quarterly balance sheets, income and cash flow statements for Tenant named herein certified by Tenant's chief financial officer; (ii) within 90 days of the end of each fiscal year, annual audited balance sheets, income and cash flow statements for Tenant named herein. Quarterly 10Qs as filed with the Securities and Exchange Commission shall satisfy the requirements contained in (i) herein. Copies of the 10Ks filed with the Securities and Exchange Commission will satisfy the requirement contained in (ii) herein. The obligations of Tenant named herein shall continue whether or not this Lease shall have been assigned.

29.   No Usury.  The intention of the parties being to conform strictly to the usury laws now in force in the State, whenever any provision herein provides for payment by Tenant to Landlord of interest at a rate in excess of the legal rate permitted to be charged, such rate herein provided to be paid shall be deemed reduced to such legal rate.

30.   Broker.  Landlord and Tenant represent and warrant to each other that neither party negotiated with any broker in connection with this Lease and that this Lease was negotiated directly by Landlord and Tenant. Each party hereby agrees to indemnify the other against all claims, damages, costs and expenses incurred by the indemnified party as a result of the breach of the foregoing representation or warranty by the indemnifying party.

31.   Waiver of Landlord's Lien.  Landlord hereby waives any right to distrain Trade Fixtures or any property of Tenant and any Landlord's lien or similar lien upon Trade Fixtures and any other property of Tenant regardless of whether such lien is created or otherwise. Landlord agrees, at the request of Tenant, to execute a waiver of any Landlord's or similar lien for the benefit of any present or future holder of a security interest in or lessor of any of Trade Fixtures or any other personal property of Tenant. Landlord acknowledges and

MWBB 6/26/95
\circuit\inland\lease.wa



agrees in the future to acknowledge (in a written form reasonably satisfactory to Tenant) to such persons and entities at such times and for such purposes as Tenant may reasonably request that Trade Fixtures are Tenant's property and not part of Improvements (regardless of whether or to what extent such Trade Fixtures are affixed to the Improvements) or otherwise subject to the terms of this Lease.

32.    No Waiver.  No delay or failure by either party to enforce its rights hereunder shall be construed as a waiver, modification or relinquishment thereof.

33.    Separability.  If any term or provision of this Lease or the application thereof to any provision of this Lease or the application thereof to any person or circumstances shall to any extent be invalid and unenforceable, the remainder of this Lease, or the application of such term or provision to person or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the extent permitted by law.

34.    Indemnification.  Tenant agrees to defend, pay, protect, indemnify, save and hold harmless Landlord and Lender from and against any and all liabilities, losses, damages, penalties, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature whatsoever, howsoever caused, arising from any of the Leased Premises or Adjoining Property or the use, non-use, occupancy, condition, design, construction, maintenance, repair or rebuilding of any of or otherwise relating to, the Leased Premises or Adjoining Property, and any injury to or death of any person or persons or any loss of or damage to any property, real or personal, in any manner arising therefrom connected therewith or occurring thereon (collectively, "Losses"), whether or not Landlord has or should have knowledge or notice of the defect or conditions, if any, causing or contributing to said Loss. In case any action or proceeding is brought against Landlord or Lender by reason of any such Loss, Tenant covenants upon notice from Landlord or Lender to defend Landlord or Lender in such action, with the expenses of such defense paid by Tenant, and Landlord or Lender will cooperate and assist in the defense of such action or proceeding if reasonably requested so to do by Tenant. All obligations of Tenant under this Paragraph 34 shall survive

MWBB 6/26/95
\circuit\inland\lease.wa

any termination of this Lease with respect to Losses identified in reasonable detail, by the Claim Deadline, as defined below, of the intent to make a claim upon Tenant under such indemnity. The "Claim Deadline" shall be:

(a)     to the extent of any indemnification obligation arising as a result of the claim by a third party against Landlord or Lender, or the claim of a third party against the Leased Premises (any of the foregoing being a "Third Party Obligation"), the date that is 30 days after the later of (i) the expiration of the period during which such third party claim may be brought under the applicable statute of limitations, as established by judicial determination (pursuant to declaratory judgment proceeding initiated by either of the parties hereunder for the purpose of establishing such date, or otherwise), or (ii) the date which is two (2) years after the expiration or earlier termination of this Lease, but in the event this Lease is terminated by Landlord as a result of Tenant's default as provided herein, the day that is two years after the date set forth in this Lease as the initial expiration date for the initial term hereof;

(b)     with respect to any indemnification obligation of Tenant not described in subparagraph (a) above, the day that is two years after the expiration or earlier termination of this Lease, but in the event this Lease is terminated by Landlord as a result of Tenant's default as provided herein, the day that is two years after the date set forth in this Lease as the initial expiration date for the initial term hereof (or, if a Substitute Premises has been substituted hereunder, two years after the date set forth in the lease of such Substituted Premises as the initial expiration date of the term of such lease). There shall be no Claim Deadline applicable to any Third Party Obligation if there is no statute of limitations to the underlying claim given rise to the Third Party Obligation.

35.     Tenant to Comply With Reciprocal Easement Agreement. Tenant agrees that Tenant is obligated to and shall perform all obligations of the owner of the Leased Premises and pay all expenses which the owner of the Leased Premises may be required to pay in accordance with any reciprocal easement agreement or any other agreement or document of record now affecting the Leased Premises, herein referred to collectively as "REA", and that Tenant shall comply with all of the terms and conditions of the REA during the term of this



Lease. Tenant shall be deemed the "Owner" of the Leased Premises for purposes of the REA. Tenant further covenants and agrees to indemnify, defend and hold harmless Landlord and Lender against any claim, loss or damage suffered by Landlord or Lender by reason of Tenant's failure to perform any obligations or pay any expenses as required under any REA or comply with the terms and conditions of any REA as hereinabove provided during the term of this Lease.

36.    <u>Headings</u>.   The paragraph headings in this Lease are used only for convenience in finding the subject matters and are not part of this Lease or to be used in determining the intent of the parties or otherwise interpreting this Lease.

37.    <u>Modifications</u>.   This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought.

38.    <u>Successors, Assigns</u>.   The covenants of this Lease shall run with the Land and bind Tenant, the heirs, distributees, personal representatives, successors and permitted assigns of Tenant and all present and subsequent encumbrances and subtenants of any of the Leased Premises, and shall inure to the benefit of and bind Landlord, its successors and assigns. In the event there is more than one Tenant, the obligation of each shall be joint and several. The term "Landlord" as used in this Lease, so far as covenants or obligations on the part of Landlord are concerned, shall be limited to mean and include only the owner or owners of the Leased Premises or holder of the Mortgage in possession at the time in question of the Leased Premises and in the event of any transfer or transfers of the title of the Leased Premises, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer and conveyance of all personal liability as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed.

39.    <u>Counterparts</u>.   This Lease may be executed in several counterparts, which together shall be deemed one and the same instrument.

MWBB 6/26/95
\circuit\inland\lease.wa

41

40.   <u>Governing Law</u>.   This Lease shall be governed by and construed according to the laws of the State.

41.   <u>Lender as Third Party Beneficiary</u>.   Lender shall be deemed a third party beneficiary with respect to all provisions of this Lease that purport to confer benefits upon Lender or impose obligations upon Tenant or Landlord in order to protect the interests of Lender.

42.   <u>Exculpation of Trustee</u>.   It is expressly understood and agreed by and between the parties hereto, anything herein to the contrary notwithstanding, that, if the Landlord hereunder executes this Lease in the capacity of a trustee under a Delaware Business Trust, each and all of the representations, warranties, covenants, undertakings and agreements herein made on the part of the Landlord, while in form purporting to be the representations, warranties, covenants, undertakings and agreements of Landlord, are nevertheless each and every one of them made and intended, not as representations, warranties, covenants, undertakings and agreements by Landlord in its individual capacity (as opposed to its capacity as trustee) or for the purpose or with the intention of binding Landlord in its individual capacity (as opposed to its capacity as trustee), but are made and intended for the purpose only of subjecting Landlord's interest in the Leased Premises and any other assets title to which is held by Landlord as trustee under the trust described in the introductory paragraph of this Lease (such interest and assets being hereafter referred to as "Landlord's Interests") to the terms of this Lease and for no other purpose whatsoever, and in case of default hereunder by Landlord, Tenant shall not look to any other assets of Landlord other than Landlord's Interests.

43.   <u>Substitution of Property</u>. As long as no Event of Default, or an event upon which the passage of time will constitute an Event of Default, has occurred and is continuing, beginning on July 1, 2000, if the Leased Premises shall have become uneconomic, obsolete or surplus, or because of the occurrence of any of such events has become impracticable for Tenant's continued use and occupancy in Tenant's business, as determined in good faith and certified by the Board of Directors of Tenant, having exercised reasonable business judgment in making its determination, and if Tenant has determined to discontinue such use and occupancy

MWBB 6/26/95
\circuit\inland\lease.wa

42

of the Leased Premises, or if Tenant has on or before such date of delivery already discontinued such use and occupancy, then Tenant may deliver to Landlord (a) a notice of intention to substitute a property ("Substitute Premises") of equal or greater value [in the aggregate], as established by a commercial real estate appraiser selected by Tenant from among three having at least ten years experience in the Substitute Premises's real estate market which shall have been selected by Landlord and presented to Tenant for approval, to that of the affected Leased Premises (hereinafter referred to in this section as the "Replaced Premises"), and (b) a certificate of Tenant stating that is Board of Directors has determined that the events set forth above in this paragraph 43 have occurred and that Tenant shall not use the Replaced Premises in Tenant's business for five (5) years after the date of the certificate, except for a period not in excess of six (6) months from the date the certificate. This restriction shall not prevent Tenant from leasing the Replaced Premises to others not affiliated in any manner with Tenant during the five (5) year period. Tenant's right to make a substitution as provided herein is not intended to facilitate Tenant's engaging in a real estate transaction for profit; and Tenant will therefore advise Landlord, in writing, of the price and any other economic terms of any purchase offer which it has received, if any, within six months prior to Tenant's decision to make the substitution.

The Substitute Premises shall be transferred to Landlord subject only to title conditions acceptable to Landlord and Landlord's lender and generally similar to those conditions accepted by Landlord at the time of Landlord's acquisition of the Replaced Premises. Tenant shall pay all expenses of Landlord, including but not limited to, title charges, transfer tax charges, (including,but not limited to, mortgage tax charges), appraisal fees, survey costs, income taxes, if any, as a result hereof, costs for Level I Environmental Audit, lender's out-of-pocket costs, if any, and all other costs necessary to provide documentation to the Landlord at least equal to the documentation received by Landlord upon acquisition of the Replaced Premises.

Tenant shall also furnish the following documents to Landlord:

MWBB 6/26/95
\circuit\inland\lease.wa

43

(a)     an opinion of counsel confirming the continued validity and enforceability of this Lease, as amended, and confirming that Tenant has all necessary authority and has obtained all consents (excluding those from Landlord) necessary to replace the Replaced Premises with the Substitute Premises;

(b)     a certification by Tenant containing representations and warranties as similar as possible to those made by Tenant to Landlord upon its acquisition of the Replaced Premises;

(c)     evidence that the Substitute Premises is in compliance with the environmental provisions contained in this Lease and the environmental provision of the agreement upon which the Replaced Premises was purchased;

(d)     a deed or deeds containing the same type of warranty as in the deed for the Replaced Premises;

(e)     a policy of owner's title insurance from a title insurer reasonably satisfactory to the Landlord containing coverages and exceptions similar to those contained in the policy for the Replaced Premises;

(f)     an as built survey of the Substitute Premises reasonably satisfactory to the Landlord and otherwise containing the same level of detail as the survey delivered in connection with the Replaced Premises;

(g)     a soils report which is reasonably acceptable to Landlord;

(h)     an amendment to this Lease subjecting the Substitute Premises to this Lease and removing the Replaced Premises from this Lease or a new lease replacing the Lease but containing the same terms and conditions;

(i)     such environmental review and report as is necessary to demonstrate compliance with the environmental laws as Landlord may reasonably request;

(j)     such additional documents as Landlord's Mortgagee may reasonably request to enable it to determine compliance with the terms of this Lease; and

(k)     such additional documents to evidence that the Original Tenant's net worth has not materially diminished since the date of this Lease.

MWBB 6/26/95
\circuit\inland\lease.wa

44

All terms and conditions of this Lease, including Basic Rent, Term and renewal rights, shall be the amounts and the time period(s) set forth herein.

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed under seal as of the day and year first above written.

LANDLORD:

BOND C.C. I DELAWARE BUSINESS TRUST

By:  Wilmington Trust Company, not in its individual capacity but solely as Co-Trustee

By: _____
Title:  Patricia A. Evans
        Financial Services Officer

And By: _____
William J. Wade, not in his individual capacity but solely as Co-Trustee
Attorney In fact

TENANT:

CIRCUIT CITY STORES, INC.

By: _____
Title:  Vice President and Treasurer

MWBB 6/26/95
\circuit\inland\lease.wa

45



STATE OF NEW YORK

CITY/COUNTY OF New York

    The foregoing instrument was acknowledged before me this 29 day of June, 1995, by
Patricia Evans as Financial Svcs Off of Wilmington Trust Company, a
_____, not in its individual capacity but solely as Co-Trustee for Bond
C.C. I Delaware Business Trust, a Delaware business trust, on behalf of the trust.

My commission expires: _____

                                Stephanie Novel
                                Notary Public

                            _____
                            Printed or typed name of
                            Notary

STEPHANIE NOVICK
Notary Public, State of New York
No. 01NO5035998
Qualified in New York County
Commission Expires November 14, 1996

MWBB 6/26/95
\circuit\inland\lease.wa

46

STATE OF NEW YORK

CITY/COUNTY OF New York

The foregoing instrument was acknowledged before me this 29 day of June, 1995, by William J. Wade, not in his individual capacity but solely as Co-Trustee for Bond C.C. I Delaware Business Trust, a Delaware business trust, on behalf of the trust.

My commission expires: _____

_____
Notary Public

_____
Printed or typed name of
Notary

STEPHANIE NOVICK
Notary Public, State of New York
No. 01NO5035998
Qualified in New York County
Commission Expires November 14, 1996

STATE OF NEW YORK:

CITY/COUNTY OF New York

The foregoing instrument was acknowledged before me this 29 day of June, 1995, by Philip J. Dunn, as Vice President and Treasurer of Circuit City Stores, Inc., a Virginia corporation, on behalf of the corporation.

My commission expires: _____

_____
Notary Public

_____
Printed or typed name of
Notary

STEPHANIE NOVICK
Notary Public, State of New York
No. 01NO5035998
Qualified in New York County
Commission Expires November 14, 1996

MWBB 6/26/95
\circuit\inland\lease.wa

47

Chehalis, WA

**EXHIBIT A**

## LEGAL DESCRIPTION
### AF NO. 9409586, VOL. 607, PG. 343

PARCEL A

That part of the northeast quarter of the southwest quarter of Section 10, Township 13 North, Range 2 West, W.M., Lewis County, Washington lying south of Maurin Road, described as follows: COMMENCING at the northeast corner of said subdivision; thence South 00°17'25" West along the east line of said subdivision for 70.0 feet to a point on the southerly right of way of Maurin Road and the True Point of Beginning; thence continuing South 00°17'25" West along said east line for 814.02 feet; thence South 89°53'33" West parallel with the north line of said subdivision for 745.0 feet; thence North 00°06'27" West perpendicular to said north line for 814.0 feet to the southerly line of Maurin Road, thence North 89°53'33" East along said southerly line for 750.65 feet to the True Point of Beginning.
TOGETHER WITH an easement for drainage; being a part of the northeast quarter of the southwest quarter of Section 10, Township 13 North, Range 2 West, W.M., Lewis County, Washington; a strip 20 feet in width, as measured perpendicular to and parallel with the southerly right of way of Maurin Road; the north line being congruent with the following described line:
COMMENCING at the northeast corner of said subdivision; thence South 00°17'25" West along the east line of said subdivision for 70.0 feet to the south line of Maurin Road; thence South 89°53'33" West along said south line for 750.65 feet to the True Point of Beginning; thence South 89°53'33" West for 220.0 feet to the terminus, as set out under that certain Drainage Easement and Agreement between The Port of Chehalis and CC Distribution Company of Virginia, Inc., recorded on June 3, 1994 as Document No. 9409116; and Surface Water Runoff Easement and Agreement between The Port of Chehalis and CC Distribution Company of Virginia, Inc., recorded on June 3, 1994 as Document No. 9409118.

PARCEL B

The right to use for the purposes of ingress and egress: An easement 80.0 feet in width, being the north 70.0 feet as measured perpendicular to the north line of the northeast quarter of the southwest quarter, and the south 10.0 feet as measured perpendicular to the south line of the southeast quarter of the northwest quarter of Section 10, Township 13 North, Range 2 West, W.M., Lewis County, Washington. Except therefrom that portion lying with the current Maurin Road, as set out under that certain Access Agreement between The Port of Chehalis and CC Distribution Company of Virginia, Inc., recorded on June 3, 1994 as Document No. 9409117.

Chehalis, WA Cont'd

## EXHIBIT A

**PARCEL C (RETENTION POND EASEMENT)**
That part of the northeast quarter of the southwest quarter of
Section 10, Township 13 North, Range 2 West, Willamette Meridian,
Lewis County, Washington, lying south of Maurin Road, described
as follows:
Commencing at the northwest corner of said subdivision:   thence
South 00°16'41" West along the west line of said subdivision for
70.00 feet to a point on the southerly right of way of Maurin
Road and the True Point of Beginning:   thence North 89°53'33"
East along the southerly line of Maurin Road for 416.63 feet to
the intersection of said southerly line and the easterly limit of
Bonneville transmission line right of way:   thence South 25°40'09"
West along said easterly limit for 471.96 feet;   thence South
89°53'33" West for 214.25 feet to the west line of said
subdivision:   thence North 00°16'41" East along the west line of
said subdivision for 425.01 feet to the True Point of Beginning,
containing 134061.17 square feet, 3.078 acres.
Except therefrom that portion lying within the current Maurin Road.



Seattle Distribution
191 Maurin Road
Chehalis, WA

# E X H I B I T   B

1. **Basic Term and Rent:**

   Base Rent during the Base Term is payable monthly in arrears on the last day of each month.

   | Base Lease Term | Annual Base Rent | Monthly Base Rent |
   |---|---|---|
   | June 29, 1995 through June 30, 2017 | $ 692,300.00 | $ 57,691.67 |

2. **First 10-Year Renewal Term and Rent:**

   | Term | Annual First Renewal Rent | Monthly Rent |
   |---|---|---|
   | July 1, 2017 through June 30, 2027 | $ 761,530.00 | $ 63,460.83 |

3. **Second 10-Year Renewal Term**

   | Term | Annual Second Renewal Rent | Monthly Rent |
   |---|---|---|
   | July 1, 2027 through June 30, 2037 | $ 830,760.00 | $ 69,230.00 |

4. **Additional Rent**

   So long as Landlord is a Delaware Business Trust with a commercial bank or trust company as Trustee, Tenant shall pay, together with base rent each month, as Additional Rent, the sum of _____er month to reimburse Landlord for administrative expense related to the Trust.



 

- EXHIBIT C -                                    Chehalis, WA

| DATE | % OF TOTAL | CHEHALIS WA | DATE | % OF TOTAL | CHEHALIS WA | DATE | % OF TOTAL | CHEHALIS WA |
|---|---|---|---|---|---|---|---|---|
| 01-JUL-1995 | 1 | 8,120,000 | 01-DEC-1999 | .973348728 | 7,903,592 | 01-DEC-2004 | .923866896 | 7,501,799 |
| 01-AUG-1995 | .999602607 | 8,116,773 | 01-JAN-2000 | .972718136 | 7,898,471 | 01-JAN-2005 | .922803338 | 7,493,163 |
| 01-SEP-1995 | .999201737 | 8,113,518 | 01-FEB-2000 | .972082027 | 7,893,306 | 01-FEB-2005 | .921730474 | 7,484,451 |
| 01-OCT-1995 | .998797359 | 8,110,235 | 01-MAR-2000 | .971440352 | 7,888,096 | 01-MAR-2005 | .920648223 | 7,475,664 |
| 01-NOV-1995 | .998389443 | 8,106,922 | 01-APR-2000 | .970793061 | 7,882,840 | 01-APR-2005 | .919556502 | 7,466,799 |
| 01-DEC-1995 | .997977958 | 8,103,581 | 01-MAY-2000 | .970140108 | 7,877,538 | 01-MAY-2005 | .918455229 | 7,457,856 |
| 01-JAN-1996 | .997562872 | 8,100,211 | 01-JUN-2000 | .969481441 | 7,872,189 | 01-JUN-2005 | .917344319 | 7,448,836 |
| 01-FEB-1996 | .997144154 | 8,096,811 | 01-JUL-2000 | .968817011 | 7,866,794 | 01-JUL-2005 | .916223689 | 7,439,736 |
| 01-MAR-1996 | .996721773 | 8,093,381 | 01-AUG-2000 | .968146767 | 7,861,352 | 01-AUG-2005 | .915093253 | 7,430,557 |
| 01-APR-1996 | .996295696 | 8,089,921 | 01-SEP-2000 | .967470658 | 7,855,862 | 01-SEP-2005 | .913952926 | 7,421,298 |
| 01-MAY-1996 | .995865890 | 8,086,431 | 01-OCT-2000 | .966788634 | 7,850,324 | 01-OCT-2005 | .912802622 | 7,411,957 |
| 01-JUN-1996 | .995432324 | 8,082,910 | 01-NOV-2000 | .966100641 | 7,844,737 | 01-NOV-2005 | .911642252 | 7,402,535 |
| 01-JUL-1996 | .994994964 | 8,079,359 | 01-DEC-2000 | .965406629 | 7,839,102 | 01-DEC-2005 | .910471728 | 7,393,030 |
| 01-AUG-1996 | .994553777 | 8,075,777 | 01-JAN-2001 | .964706544 | 7,833,417 | 01-JAN-2006 | .909290963 | 7,383,443 |
| 01-SEP-1996 | .994108729 | 8,072,163 | 01-FEB-2001 | .964000333 | 7,827,683 | 01-FEB-2006 | .908099866 | 7,373,771 |
| 01-OCT-1996 | .993659788 | 8,068,517 | 01-MAR-2001 | .963287943 | 7,821,898 | 01-MAR-2006 | .906898347 | 7,364,015 |
| 01-NOV-1996 | .993206918 | 8,064,840 | 01-APR-2001 | .962569320 | 7,816,063 | 01-APR-2006 | .905686315 | 7,354,173 |
| 01-DEC-1996 | .992750086 | 8,061,131 | 01-MAY-2001 | .961844409 | 7,810,177 | 01-MAY-2006 | .904463677 | 7,344,245 |
| 01-JAN-1997 | .992289256 | 8,057,389 | 01-JUN-2001 | .961113154 | 7,804,239 | 01-JUN-2006 | .903230341 | 7,334,230 |
| 01-FEB-1997 | .991824394 | 8,053,614 | 01-JUL-2001 | .960375502 | 7,798,249 | 01-JUL-2006 | .901986214 | 7,324,128 |
| 01-MAR-1997 | .991355464 | 8,049,806 | 01-AUG-2001 | .959631394 | 7,792,207 | 01-AUG-2006 | .900731200 | 7,313,937 |
| 01-APR-1997 | .990882432 | 8,045,965 | 01-SEP-2001 | .958880776 | 7,786,112 | 01-SEP-2006 | .899465205 | 7,303,657 |
| 01-MAY-1997 | .990405260 | 8,042,091 | 01-OCT-2001 | .958123590 | 7,779,964 | 01-OCT-2006 | .898188133 | 7,293,288 |
| 01-JUN-1997 | .989923913 | 8,038,182 | 01-NOV-2001 | .957359778 | 7,773,761 | 01-NOV-2006 | .896899886 | 7,282,827 |
| 01-JUL-1997 | .989438355 | 8,034,239 | 01-DEC-2001 | .956589384 | 7,767,505 | 01-DEC-2006 | .895600367 | 7,272,275 |
| 01-AUG-1997 | .988948547 | 8,030,262 | 01-JAN-2002 | .955812047 | 7,761,194 | 01-JAN-2007 | .894289478 | 7,261,631 |
| 01-SEP-1997 | .988454454 | 8,026,250 | 01-FEB-2002 | .955028009 | 7,754,827 | 01-FEB-2007 | .892967118 | 7,250,893 |
| 01-OCT-1997 | .987956038 | 8,022,203 | 01-MAR-2002 | .954237112 | 7,748,405 | 01-MAR-2007 | .891633187 | 7,240,061 |
| 01-NOV-1997 | .987453260 | 8,018,120 | 01-APR-2002 | .953439293 | 7,741,927 | 01-APR-2007 | .890287585 | 7,229,135 |
| 01-DEC-1997 | .986946083 | 8,014,002 | 01-MAY-2002 | .952634494 | 7,735,392 | 01-MAY-2007 | .888930208 | 7,218,113 |
| 01-JAN-1998 | .986434469 | 8,009,848 | 01-JUN-2002 | .951822653 | 7,728,800 | 01-JUN-2007 | .887560954 | 7,206,995 |
| 01-FEB-1998 | .985918377 | 8,005,657 | 01-JUL-2002 | .951003709 | 7,722,150 | 01-JUL-2007 | .886179720 | 7,195,779 |
| 01-MAR-1998 | .985397770 | 8,001,430 | 01-AUG-2002 | .950177598 | 7,715,442 | 01-AUG-2007 | .884786400 | 7,184,466 |
| 01-APR-1998 | .984872608 | 7,997,166 | 01-SEP-2002 | .949344259 | 7,708,675 | 01-SEP-2007 | .883380888 | 7,173,053 |
| 01-MAY-1998 | .984342850 | 7,992,864 | 01-OCT-2002 | .948503629 | 7,701,849 | 01-OCT-2007 | .881963078 | 7,161,540 |
| 01-JUN-1998 | .983808457 | 7,988,525 | 01-NOV-2002 | .947655642 | 7,694,964 | 01-NOV-2007 | .880532862 | 7,149,927 |
| 01-JUL-1998 | .983269388 | 7,984,147 | 01-DEC-2002 | .946800236 | 7,688,018 | 01-DEC-2007 | .879090131 | 7,138,212 |
| 01-AUG-1998 | .982725603 | 7,979,732 | 01-JAN-2003 | .945937346 | 7,681,011 | 01-JAN-2008 | .877634777 | 7,126,394 |
| 01-SEP-1998 | .982177059 | 7,975,278 | 01-FEB-2003 | .945066904 | 7,673,943 | 01-FEB-2008 | .876166688 | 7,114,474 |
| 01-OCT-1998 | .981623715 | 7,970,785 | 01-MAR-2003 | .944188847 | 7,666,813 | 01-MAR-2008 | .874685754 | 7,102,448 |
| 01-NOV-1998 | .981065530 | 7,966,252 | 01-APR-2003 | .943303106 | 7,659,621 | 01-APR-2008 | .873191861 | 7,090,318 |
| 01-DEC-1998 | .980502460 | 7,961,680 | 01-MAY-2003 | .942409616 | 7,652,366 | 01-MAY-2008 | .871684897 | 7,078,081 |
| 01-JAN-1999 | .979934464 | 7,957,068 | 01-JUN-2003 | .941508307 | 7,645,047 | 01-JUN-2008 | .870164747 | 7,065,738 |
| 01-FEB-1999 | .979361498 | 7,952,415 | 01-JUL-2003 | .940599112 | 7,637,665 | 01-JUL-2008 | .868631296 | 7,053,286 |
| 01-MAR-1999 | .978783518 | 7,947,722 | 01-AUG-2003 | .939681961 | 7,630,218 | 01-AUG-2008 | .867084427 | 7,040,726 |
| 01-APR-1999 | .978200481 | 7,942,988 | 01-SEP-2003 | .938756785 | 7,622,705 | 01-SEP-2008 | .865524023 | 7,028,055 |
| 01-MAY-1999 | .977612342 | 7,938,212 | 01-OCT-2003 | .937823514 | 7,615,127 | 01-OCT-2008 | .863949965 | 7,015,274 |
| 01-JUN-1999 | .977019057 | 7,933,395 | 01-NOV-2003 | .936882077 | 7,607,482 | 01-NOV-2008 | .862362134 | 7,002,381 |
| 01-JUL-1999 | .976420581 | 7,928,535 | 01-DEC-2003 | .935932402 | 7,599,771 | 01-DEC-2008 | .860760410 | 6,989,375 |
| 01-AUG-1999 | .975816868 | 7,923,633 | 01-JAN-2004 | .934974418 | 7,591,992 | 01-JAN-2009 | .859144671 | 6,976,255 |
| 01-SEP-1999 | .975207873 | 7,918,688 | 01-FEB-2004 | .934008051 | 7,584,145 | 01-FEB-2009 | .857514794 | 6,963,020 |
| 01-OCT-1999 | .974593549 | 7,913,700 | 01-MAR-2004 | .933033229 | 7,576,230 | 01-MAR-2009 | .855870655 | 6,949,670 |
| 01-NOV-1999 | .973973849 | 7,908,668 | 01-APR-2004 | .932049877 | 7,568,245 | 01-APR-2009 | .854212130 | 6,936,202 |
| | | | 01-MAY-2004 | .931057920 | 7,560,190 | 01-MAY-2009 | .852539094 | 6,922,617 |
| | | | 01-JUN-2004 | .930057284 | 7,552,065 | 01-JUN-2009 | .850851418 | 6,908,914 |
| | | | 01-JUL-2004 | .929047892 | 7,543,869 | 01-JUL-2009 | .850851418 | 6,908,914 |
| | | | 01-AUG-2004 | .928029669 | 7,535,601 | 01-AUG-2009 | .850851418 | 6,908,914 |
| | | | 01-SEP-2004 | .927002535 | 7,527,261 | 01-SEP-2009 | .850851418 | 6,908,914 |
| | | | 01-OCT-2004 | .925966415 | 7,518,847 | 01-OCT-2009 | .850851418 | 6,908,914 |
| | | | 01-NOV-2004 | .924921228 | 7,510,360 | 01-NOV-2009 | .850851418 | 6,908,914 |

- EXHIBIT C -

| DATE | % OF TOTAL | CHEHALIS WA |
|------|-----------|-------------|
| 01-DEC-2009 | .850851418 | 6,908,914 |
| 01-JAN-2010 | .850851418 | 6,908,914 |
| 01-FEB-2010 | .850851418 | 6,908,914 |
| 01-MAR-2010 | .850851418 | 6,908,914 |
| 01-APR-2010 | .850851418 | 6,908,914 |
| 01-MAY-2010 | .850851418 | 6,908,914 |
| 01-JUN-2010 | .850851418 | 6,908,914 |
| 01-JUL-2010 | .850851418 | 6,908,914 |
| 01-AUG-2010 | .850851418 | 6,908,914 |
| 01-SEP-2010 | .850851418 | 6,908,914 |
| 01-OCT-2010 | .850851418 | 6,908,914 |
| 01-NOV-2010 | .850851418 | 6,908,914 |
| 01-DEC-2010 | .850851418 | 6,908,914 |
| 01-JAN-2011 | .850851418 | 6,908,914 |
| 01-FEB-2011 | .850851418 | 6,908,914 |
| 01-MAR-2011 | .850851418 | 6,908,914 |
| 01-APR-2011 | .850851418 | 6,908,914 |
| 01-MAY-2011 | .850851418 | 6,908,914 |
| 01-JUN-2011 | .850851418 | 6,908,914 |
| 01-JUL-2011 | .850851418 | 6,908,914 |
| 01-AUG-2011 | .850851418 | 6,908,914 |
| 01-SEP-2011 | .850851418 | 6,908,914 |
| 01-OCT-2011 | .850851418 | 6,908,914 |
| 01-NOV-2011 | .850851418 | 6,908,914 |
| 01-DEC-2011 | .850851418 | 6,908,914 |
| 01-JAN-2012 | .850851418 | 6,908,914 |
| 01-FEB-2012 | .850851418 | 6,908,914 |
| 01-MAR-2012 | .850851418 | 6,908,914 |
| 01-APR-2012 | .850851418 | 6,908,914 |
| 01-MAY-2012 | .850851418 | 6,908,914 |
| 01-JUN-2012 | .850851418 | 6,908,914 |
| 01-JUL-2012 | .850851418 | 6,908,914 |
| 01-AUG-2012 | .850851418 | 6,908,914 |
| 01-SEP-2012 | .850851418 | 6,908,914 |
| 01-OCT-2012 | .850851418 | 6,908,914 |
| 01-NOV-2012 | .850851418 | 6,908,914 |
| 01-DEC-2012 | .850851418 | 6,908,914 |
| 01-JAN-2013 | .850851418 | 6,908,914 |
| 01-FEB-2013 | .850851418 | 6,908,914 |
| 01-MAR-2013 | .850851418 | 6,908,914 |
| 01-APR-2013 | .850851418 | 6,908,914 |
| 01-MAY-2013 | .850851418 | 6,908,914 |
| 01-JUN-2013 | .850851418 | 6,908,914 |
| 01-JUL-2013 | .850851418 | 6,908,914 |
| 01-AUG-2013 | .850851418 | 6,908,914 |
| 01-SEP-2013 | .850851418 | 6,908,914 |
| 01-OCT-2013 | .850851418 | 6,908,914 |
| 01-NOV-2013 | .850851418 | 6,908,914 |
| 01-DEC-2013 | .850851418 | 6,908,914 |
| 01-JAN-2014 | .850851418 | 6,908,914 |
| 01-FEB-2014 | .850851418 | 6,908,914 |
| 01-MAR-2014 | .850851418 | 6,908,914 |
| 01-APR-2014 | .850851418 | 6,908,914 |
| 01-MAY-2014 | .850851418 | 6,908,914 |
| 01-JUN-2014 | .850851418 | 6,908,914 |
| 01-JUL-2014 | .850851418 | 6,908,914 |
| 01-AUG-2014 | .850851418 | 6,908,914 |
| 01-SEP-2014 | .850851418 | 6,908,914 |
| 01-OCT-2014 | .850851418 | 6,908,914 |
| 01-NOV-2014 | .850851418 | 6,908,914 |
| 01-DEC-2014 | .850851418 | 6,908,914 |
| 01-JAN-2015 | .850851418 | 6,908,914 |
| 01-FEB-2015 | .850851418 | 6,908,914 |
| 01-MAR-2015 | .850851418 | 6,908,914 |
| 01-APR-2015 | .850852418 | 6,908,914 |
| 01-MAY-2015 | .850851418 | 6,908,914 |
| 01-JUN-2015 | .850851418 | 6,908,914 |
| 01-JUL-2015 | .850851418 | 6,908,914 |
| 01-AUG-2015 | .850851418 | 6,908,914 |
| 01-SEP-2015 | .850851418 | 6,908,914 |
| 01-OCT-2015 | .850851418 | 6,908,914 |
| 01-NOV-2015 | .850851418 | 6,908,914 |
| 01-DEC-2015 | .850851418 | 6,908,914 |
| 01-JAN-2016 | .850851418 | 6,908,914 |
| 01-FEB-2016 | .850851418 | 6,908,914 |
| 01-MAR-2016 | .850851418 | 6,908,914 |
| 01-APR-2016 | .850851418 | 6,908,914 |
| 01-MAY-2016 | .850851418 | 6,908,914 |
| 01-JUN-2016 | .850851418 | 6,908,914 |
| 01-JUL-2016 | .850851418 | 6,908,914 |
| 01-AUG-2016 | .850851418 | 6,908,914 |
| 01-SEP-2016 | .850851418 | 6,908,914 |
| 01-OCT-2016 | .850851418 | 6,908,914 |
| 01-NOV-2016 | .850851418 | 6,908,914 |
| 01-DEC-2016 | .850851418 | 6,908,914 |
| 01-JAN-2017 | .850851418 | 6,908,914 |
| 01-FEB-2017 | .850851418 | 6,908,914 |
| 01-MAR-2017 | .850851418 | 6,908,914 |
| 01-APR-2017 | .850851418 | 6,908,914 |
| 01-MAY-2017 | .850851418 | 6,908,914 |
| 01-JUN-2017 | .850851418 | 6,908,914 |
| 01-JUL-2017 | .850851418 | 6,908,914 |
| 01-JUL-2037 | .850851418 | 6,908,914 |