Charles W. Chotvacs (VSB #70045)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, D.C. 20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299

- and -

Thomas J. Leanse (Cal. Bar No. 084638)
Dustin P. Branch (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., <u>et al.</u>, | ) ) | Case No. 0835653-KRH |
| Debtors. | ) ) ) ) | (Jointly Administered) |

**OBJECTION OF THE MACERICH COMPANY, COUSINS PROPERTIES
INCORPORATED, AND WATT MANAGEMENT COMPANY TO THE DEBTORS'
MOTION FOR ORDERS UNDER 11 U.S.C. §§ 105, 363, AND 365 (I) APPROVING
BIDDING AND AUCTION PROCEDURES FOR SALE OF UNEXPIRED
NONRESIDENTIAL REAL PROPERTY LEASES FOR CLOSING STORES, (II)
SETTING SALE HEARING DATE, AND (III) AUTHORIZING AND APPROVING (A)
SALE OF CERTAIN NONRESIDENTIAL REAL PROPERTY LEASES FREE AND
CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (B) ASSUMPTION AND
ASSIGNMENT OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY
LEASES, AND (C) LEASE REJECTION PROCEDURES (CURE OBJECTION)**

The Macerich Company, Cousins Properties Incorporated, and Watt Management Company (the "<u>Landlords</u>") hereby file their objection (the "<u>Objection</u>") to the Debtors' Motion For Orders Under 11 U.S.C. §§ 105, 363, And 365 (I) Approving Bidding And Auction Procedures For Sale Of Unexpired Nonresidential Real Property Leases For Closing Stores, (II) Setting Sale Hearing Date, And (III) Authorizing And Approving (A) Sale Of Certain

Nonresidential Real Property Leases Free And Clear Of Liens, Claims, And Encumbrances, (B) Assumption And Assignment Of Certain Unexpired Nonresidential Real Property Leases, And (C) Lease Rejection Procedures (the "Sale Motion"),[1] and respectfully represent as follows:

## I.     BACKGROUND FACTS

1.    Circuit City Stores, Inc. and its affiliated Debtor entities (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on November 10, 2008.  The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    Landlords are the owners or managing agents of numerous shopping centers (the "Centers") throughout the United States wherein Debtors continue to operate their retail stores (the "Premises") pursuant to nonresidential real property leases (the "Leases").  The specific Landlord and location for each Lease subject to this Objection is set forth in Exhibit "1", which is incorporated herein by this reference.

3.    The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.    On or about November 25, 2008, the Debtors filed the Sale Motion. Exhibit B to the Sale Motion was comprised of a list of cure amounts (the "Cure Schedule") for each of the 154 stores subject to the Sale Motion.  The amounts set forth in the Cure Schedule do not reflect all outstanding balances due and owing to Landlords under the Leases, or account for accrued but unbilled charges which may come due in the future.  Therefore, the cure amounts set forth by the Debtors must be modified to reflect the additional charges, and accruing charges, due under the Leases as set forth herein.

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and accompanying documents.

[2] Unless otherwise specified, all statutory "Section" references are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

## II. THE DEBTORS' PROPOSED CURE AMOUNTS DO NOT PROVIDE FOR PAYMENT OF ALL OBLIGATIONS DUE UNDER THE LEASES.

5. The Landlords' cure, as compared to the Debtors' cure is summarized below, and more fully set forth in Exhibits A through I, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Store No. | Debtors' Cure | Landlords' Cure |
|---|---|---|---|---|
| Macerich | Chandler Gateway Center | Store No. 3330 | $48,539.00 | **$124,861.99** |
| Macerich | Green Tree Mall | Store No. 4109 | $8,627.00 | **$55,995.80** |
| Macerich | San Tan Village | Store No. 3580 | $17,072.00 | **$119,302.49** |
| Macerich | Scottsdale 101 | Store No. 3341 | $17,294.00 | **$123,114.50** |
| Macerich | Tysons Corner | Store No. 803 | $45,244.00 | **$189,371.65** |
| Cousins | Avenue Forsyth | Store No. 4252 | $10,047.00 | **$46,395.85** |
| Cousins | North Market Point Center | Store No. 3107 | $62,082.00 | **$124,348.79** |
| Watt | Compton Town Center | Store No. 422 | $16,763.00 | **$93,249.08** |
| Watt | Riverside Town Center | Store No. 426 | $15,677.00 | **$71,810.63** |

6. In addition to the amounts set forth above, in determining what the Debtors must pay as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration.

*i.   Year-end adjustments and reconciliations*

7. In addition to rent, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled

after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred by the property. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances in this case, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments which accrue throughout 2008 will not be billed until sometime in 2009). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors and/or an eventual assignee.

8. Nevertheless, the Debtors (or any assignee) continue to be responsible for all such accrued charges as and when they come due and are billed under the Leases. Therefore, any order approving any assumption of the Leases must specify that these unbilled amounts will be paid as and when due under the Leases, regardless of whether the underlying charges relate to periods that pre-date the assumption and assignee of the Leases.

9. Finally, the Leases provide that the Debtors must indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assignment of the Leases, which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors. Any order with respect to cure obligations should provide that any assignee continue to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any such claims that relate to the pre-assumption and assignment period.

ii.   *Attorneys' fees, costs, and interest*

10. In addition, the Leases contain provisions for the recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their

interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

11. In assuming and assigning the Leases, the Debtors take the Leases *cum onere*, that is, subject to existing burdens. The Debtors cannot, on the one hand, assume the favorable portions of the Leases and, on the other hand, reject the unfavorable provisions of the same Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under the Leases with the Debtors. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition to the assumption and assignment of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume and assign the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

12. Attorneys' fees and costs are also proper components of a cure claim. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease must be paid as a condition of the assumption and assignment of the Leases. Entertainment, Inc., 223 B.R. at 152. There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity, particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay. Id.; see also In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corp., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has recently upheld the enforceability of such attorneys' fees clauses, ruling that such pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Casualty & Surety Co. v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

13. At this time, Landlords can only estimate the total attorneys' fees that will be incurred in connection with each Lease because these amounts will continue to accrue at least through any hearing on a motion to assume and assign any of the Leases. Landlords will provide Debtors with the most current information on attorneys' fees at the time of such hearing or an eventual assumption and assignment.

iii.   *The cure amounts serve only as estimates*

14. As a practical matter at this juncture, the best the Landlords can do is provide the most accurate information presently available regarding the cure amounts payable by the

Debtors, but must reserve the unqualified right to unilaterally amend the cure amounts as necessary to include any additional sum of money for any reason, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlords the equivalent of an administrative bar date without the ability to recover lease charges to which they are entitled under the Leases.

### III.     JOINDER IN OBJECTIONS BY OTHER LANDLORDS

15.     To the extent not inconsistent herewith, the Landlords hereby join in the objections raised by other landlords.

### IV.     CONCLUSION

In order to protect the interests of the Landlords, the cure amounts should be established (subject to adjustment by the Landlords) as set forth herein, and the Court should grant such other relief that the Court finds just and proper.

DATED:  December 17, 2008    **BALLARD SPAHR ANDREWS & INGERSOLL, LLP**

By:\_\_\_/s/  Charles W. Chotvacs_____
   Charles W. Chotvacs (VSB #70045)
   BALLARD SPAHR ANDREWS & INGERSOLL, LLP
   601 13th Street, N.W.
   Suite 1000 South
   Washington, D.C. 20005-3807
   Telephone: (202) 661-2200
   Facsimile: (202) 661-2299
   chotvacsc@ballardspahr.com

   - and –

   **KATTEN MUCHIN ROSENMAN LLP**

   Thomas J. Leanse (Cal. Bar No. 084638)
   Dustin P. Branch (*pro hac vice*)
   KATTEN MUCHIN ROSENMAN LLP
   2029 Century Park East, Suite 2600
   Los Angeles, California  90067
   Phone: (310) 788-4400
   Facsimile: (310) 788-4471
   thomas.leanse@kattenlaw.com
   dustin.branch@kattenlaw.com

   *Attorneys for The Macerich Company, Cousins Properties Incorporated, and Watt Management Company*

# **EXHIBIT 1**

# **REAL PROPERTY LEASES**

| THE MACERICH COMPANY | | |
|---|---|---|
| SHOPPING CENTER | LOCATION | STORE NO. |
| Chandler Gateway | Chandler, Arizona | 3330 |
| Green Tree | Clarksville, IN | 4109 |
| Scottsdale 101 | Scottsdale, AZ | 3341 |
| San Tan Village | Gilbert, AZ | 3580 |
| Tysons Corner | McLean, VA | 803 |
| **COUSINS PROPERTIES INCORPORATED** | | |
| Avenue Forsyth | Cumming, GA | 4252 |
| North Point Market Center | Alpharetta, GA | 3107 |
| **WATT MANAGEMENT COMPANY** | | |
| Compton Town Center | Compton, CA | 422 |
| Riverside Town Center | Riverside, CA | 426 |

LAX01_31464200_1_203280_00001 12/2/2008 2:59 PM

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of December, 2008, a true and accurate copy of the foregoing Objection of The Macerich Company, Cousins Properties Incorporated, and Watt Management Company was electronically filed with the Clerk of the Court using the CM/ECF system, which causes notices of electronic filing to be served on all registered users of the ECF system that have filed notices of appearance in this case.

  /s/ Charles W. Chotvacs
Charles W. Chotvacs