effect; (iii) to its actual knowledge as of the Effective Date, no default under the Restrictive Covenants exists beyond any applicable notice and cure period; and (iv) the Restrictive Covenants are, and shall remain (or with respect to the Declaration, once finalized and recorded, will be), superior in lien to all mortgages and related liens affecting the Shopping Center and all other land which is encumbered by the Restrictive Covenants.  Landlord and Tenant each acknowledge that this Lease is made and shall continue to be subject and subordinate to the Restrictive Covenants, subject to the provisions of this Section 20.04. Tenant shall comply with the terms and conditions of the Restrictive Covenants to the extent the same affect the Premises (it being agreed that Tenant shall not be obligated to expend any sums in connection with such compliance).

(c)    Landlord shall, during the Term: (i) perform and observe all of the terms, covenants, provisions and conditions of the Restrictive Covenants on Landlord's part to be performed and observed; (ii) defend, indemnify and hold harmless Tenant from and against any and all claims, demands, causes of action, suits, damages, liabilities, and expenses of any nature arising out of or in connection with the enforcement of, or a claimed breach by, Landlord of any covenant, term, condition, or provision of the Restrictive Covenants; and (iii) diligently enforce, at its sole expense, the covenants, agreements, and obligations of the Restrictive Covenants.

(d)    Whenever, pursuant to any of the Restrictive Covenants, the consent or approval of Landlord shall be required or requested, and such consent or approval could diminish the rights or increase the obligations of Tenant under the Restrictive Covenants or under this Lease, or could adversely affect Tenant's use or occupancy of the Premises, or the conduct of Tenant's business therein, such consent or approval shall not be granted without the prior consent of Tenant, which consent may be withheld in its sole and absolute discretion.

(e)    Landlord shall, immediately upon receipt, forward to Tenant and Tenant's leasehold mortgagee, if any, a copy of any and all notices and/or demands received by Landlord under or pursuant to any of the Restrictive Covenants, which relate to, or could adversely affect, Tenant's use or occupancy of the Premises, the conduct of Tenant's business therein, or Tenant's rights pursuant to this Lease.

(f)    Landlord shall not amend or modify (or permit an amendment to or modification of) any of the Restrictive Covenants if such amendment or modification could diminish the rights or increase the obligations of Tenant under the Restrictive Covenants or under this Lease, or could adversely affect Tenant's use or occupancy of the Premises or the conduct of Tenant's business therein, nor shall Landlord terminate any of the Restrictive Covenants.

(g)    In the event Landlord defaults in the performance of any of its obligations under any of the Restrictive Covenants or fails to enforce the obligations of any other obligee under any of the Restrictive Covenants, and such default or failure to enforce could adversely affect Tenant's rights under the Restrictive Covenants (or any of them) or under this Lease, Tenant's Work, Tenant's use or occupancy of the Premises or the conduct of Tenant's business therein, Tenant may, but shall not be obligated to, after thirty (30) days notice (except in the event of emergency, in which case no notice shall be required) cure any default by Landlord under the Restrictive Covenants and/or enforce, in its own name, at Landlord's expense, the

49

obligations of any other obligee under the Restrictive Covenants. Landlord shall, upon demand, reimburse Tenant for the costs incurred by Tenant in performing any of Landlord's obligations under any of the Restrictive Covenants or enforcing the obligations of any obligee under any of the Restrictive Covenants, together with interest thereon at the Default Rate.

(h)    As between Landlord and Tenant, in the event of any conflict between the Restrictive Covenants and this Lease, this Lease shall in all respects control.

(i)    Landlord represents and warrants that no third-party approvals are required under the Restrictive Covenants.

## ARTICLE XXI

## HOLDING OVER

SECTION 21.01   Holding Over.   If Tenant remains in possession of the Premises after the expiration of the Term without having duly exercised its right, if any, to extend or further extend the Term, such continuing possession shall be treated as a tenancy at suffrance on the terms herein specified and such tenancy may be terminated at the end of any month thereafter by either party by giving at least thirty (30) days notice thereof to the other party. During such holdover and provided that Landlord and Tenant are not in good faith negotiations with regard to the renewal or extension of this Lease or the entering into a new lease for premises within the Shopping Center (which in no event shall exceed sixty (60) days), Tenant shall be liable for Annual Minimum Rent on a monthly basis (or, if applicable, on a prorated daily basis) in an amount equal to one hundred twenty five percent (125%) of the amount thereof payable by Tenant for the month immediately preceding the last day of the Term, as well as for all Additional Rent payable by Tenant under this Lease. Nothing herein contained shall be deemed to permit Tenant to retain possession of the Premises after the expiration date or sooner termination of this Lease, and no acceptance by Landlord of payments from Tenant after the expiration date or sooner termination of this Lease shall be deemed to be other than on account of the amount to be paid by Tenant in accordance with the provisions of this Article XXI. Without limiting the foregoing, Tenant hereby agrees to indemnify, defend and hold harmless Landlord from and against all claims, liabilities, actions, losses, damages (excluding indirect and consequential damages) and reasonable expenses (including, without limitation, court costs and reasonable attorneys' fees) incurred by Landlord arising from or by reason of Tenant's retention of possession or holding-over, which obligation shall survive the expiration or termination of this Lease.

## ARTICLE XXII

## NOTICE

SECTION 22.01   Where and How Given.   All notices or demands which either party hereto either is required to or may desire to serve upon the other shall be in writing and shall be sufficiently served upon such other party, by (a) mailing a copy thereof by certified or registered mail, postage prepaid, return receipt requested, addressed to the party to whom the notice is directed at the "Notice Address" of such party, or (b) by a reliable overnight courier (such as

50

Federal Express), all charges prepaid, furnishing a receipt upon delivery, and addressed to the party to whom the notice is addressed at the Notice Address of the part. The Notice Address of each party is:

(a)    Landlord's Address for Notice and Payment of Rent:

Arboretum of South Barrington, LLC
400 Skokie Boulevard
Suite 405
Northbrook, Illinois 60062
Attention: Mr. Michael Jaffe

with a copy to:    Arboretum of South Barrington, LLC
c/o The Jaffe Companies
400 Skokie Boulevard
Suite 405
Northbrook, Illinois 60062
Attention: Mr. Jonathan Payne

with a copy to:    Arboretum of South Barrington, LLC
c/o RREEF America L.L.C.
875 North Michigan Avenue
41st Floor
Chicago, Illinois 60611
Attention: Mr. Michael Dunigan

with a copy to:    Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, Illinois 60603
Attention: Ira Fierstein, Esq.

(b)    Tenant:    Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention: Vice President of Real Estate

with a copy to:    Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention: General Counsel

with a copy to:    Hartman, Simons, Spielman & Wood, LLP
6400 Powers Ferry Road
Suite 400
Atlanta, Georgia 30339
Attention: Debra M. Thompson, Esq.

51

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

SECTION 22.02  <u>When Given</u>.  Unless otherwise provided for herein, notice shall be deemed to have been served at the earlier of the date received, refused or returned as undeliverable.  However, if such notice pertains to the change of address of either of the parties hereto, then such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given.

## ARTICLE XXIII

## MISCELLANEOUS

SECTION 23.01  <u>Rent Proration</u>.  If this Lease is terminated prior to its natural expiration date for any reason other than a Tenant default, then Landlord shall promptly reimburse Tenant for any Rent prepaid by Tenant for periods subsequent to such termination date. This Section 23.01 shall survive the termination of this Lease.

SECTION 23.02  <u>Construction</u>.  In construing this Lease, feminine or neuter pronouns shall be substituted for those masculine in form and vice versa, and plural terms shall be substituted for singular and singular for plural in any place in which the context so requires. This Lease shall be construed without regard to: (a) the identity of the party who drafted the various provisions hereof, and (b) the addition or deletion of text made during the negotiation of this Lease. Moreover, each and every provision of this Lease shall be construed as though all parties hereto participated equally in the drafting thereof. As a result of the foregoing, any rule or construction that a document is to be construed against the drafting party shall not be applicable hereto.

SECTION 23.03  <u>Section Headings</u>.  The section headings in this Lease are for convenience only and do not in any way limit or simplify the terms and provisions of this Lease, nor should they be used to determine the intent of the parties.

SECTION 23.04  <u>Partial Invalidity</u>.  If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, then the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 23.05  <u>Waiver</u>.  The failure of either party to seek redress for violation of, or to insist upon strict performance of, any term, covenant or condition contained in this Lease shall not prevent a similar subsequent act from constituting a default under this Lease.

SECTION 23.06  <u>Governing Law</u>.  This Lease shall be governed and construed in accordance with the laws of the State.

CH3 1111236.2 / 39769-000031
889821-8  11028.0008000

SECTION 23.07    Successors and Assigns.  This Lease shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assign of Landlord and the successors and assigns of Tenant.

SECTION 23.08    No Broker.  Landlord and Tenant represent to each other that no broker or person is entitled to any commission by reason of the negotiation and execution of this Lease, other than the Brokers identified in Section 1.01(D), and Landlord agrees that Landlord shall be solely responsible for the fees and commissions of GSRP.  GSRP shall be responsible for compensating Metro, pursuant to a separate agreement between GSRP and Metro.  Landlord and Tenant agree to indemnify, defend and hold each other harmless against any and all claims by any other person for brokerage commissions or fees arising out of any conversation, negotiations or other dealings held by the other party with any other broker regarding this Lease.

SECTION 23.09    Memorandum of Lease.  Landlord and Tenant agree to execute a Memorandum of Lease in recordable form, substantially similar to that attached as Exhibit L, setting forth such provisions hereof as may be required by State law.  If so requested by Tenant, Landlord shall execute such Memorandum of Lease simultaneously with the execution of this Lease.  Recording costs shall be borne by the party requesting recordation of same.  The provisions of this Lease shall control with regard to any omissions from, or provisions which may be in conflict with, the Memorandum of Lease.

SECTION 23.10    Entire Agreement.  This instrument contains the entire and only agreement between the parties and no oral statements or representations or written matter not contained in this instrument shall have any force or effect.  This Lease shall not be amended or modified in any way except by a writing executed by both parties.  All of the exhibits attached to this Lease are incorporated into this Lease by reference and for all purposes are a part of this Lease.

SECTION 23.11    Relationship of Parties.  The relationship between the parties hereto is solely that of landlord and tenant and nothing in this Lease shall be construed as creating a partnership or joint venture between the parties hereto, it being the express intent of Landlord and Tenant that the business of Tenant on the Premises and elsewhere, and the good will thereof, shall be and remain the sole property of Tenant.

SECTION 23.12    Force Majeure.  If either party hereto shall be delayed or hindered in, or prevented from, the performance of any act required under this Lease by reason of strikes, lockouts, labor troubles, failure of power, riots, insurrection, war, adverse weather conditions which the performing party can demonstrate to the other party's satisfaction exceed climatic norms using thirty (30) year return intervals (it being agreed that rain, snow or other adverse weather condition of typical duration, frequency and amount shall not constitute Force Majeure), acts of terrorism or other reasons of a like nature beyond the reasonable control of the party delayed in performing works or doing acts required under the terms of this Lease (any such delay, hindrance or prevention is referred to as "Force Majeure"), then performance of such act shall be excused for the period of the delay, and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay, except as otherwise specifically provided herein to the contrary.  The provisions of this Section 23.12 shall not be applicable to delays resulting from the inability of a party to obtain financing or to proceed with

53

its obligations under this Lease because of a lack of funds. Except as otherwise specifically provided herein, Force Majeure shall not be applicable to, or in any way affect, reduce or abate the Tenant's obligation under this Lease to timely pay all Rent to be paid by the Tenant pursuant to the terms hereof.

SECTION 23.13    Limitation of Landlord's Liability. Except with respect to insurance proceeds or condemnation awards received by Landlord which are required by the terms of this Lease to be applied to the repair or restoration of the Premises or Shopping Center, Tenant shall, on and after the Commencement Date, look only to Landlord's estate and property in the Shopping Center (or the proceeds from the sale, financing or refinancing of all or any portion thereof) and net income derived from the Shopping Center for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord hereunder, and no other property or assets of Landlord, its officers, directors, stockholders, members or partners shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease.

SECTION 23.14    Limitation of Tenant's Liability. Landlord, its successors and assigns, shall look solely to the assets, if any, of Tenant and its successors and assigns, for the satisfaction of any claim arising from or under this Lease and shall not seek to impose personal liability on any shareholder, officer, director, member or employee of Tenant or any of its Affiliates.

SECTION 23.15    Consents. Except as may be otherwise expressly set forth in this Lease, whenever under this Lease provision is made for either party's securing the consent or approval of the other party, (a) such consent or approval shall be in writing and shall not be unreasonably withheld, delayed or conditioned, and (b) in all matters contained herein, both parties shall have an implied obligation of reasonableness.

SECTION 23.16    Costs. Whenever this Lease requires the performance of an act by party, such party shall perform the act at its own cost and expense, unless otherwise expressly provided to the contrary in this Lease.

SECTION 23.17    Attorneys' Fees. In any action or proceeding hereunder (whether to enforce the terms and provisions of an indemnity or otherwise), the prevailing party shall be entitled to recover from the other party the prevailing party's reasonable costs and expenses in such action or proceeding, including reasonable attorneys' fees, costs and expenses. Except as otherwise set forth herein, if either party is sued by a third party as a result of a violation of a covenant, representation or warranty herein contained by the other party hereto, then the party who has violated the covenant, representation or warranty shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees, costs and expenses.

SECTION 23.18    Survival of Obligations. The obligation to pay any sums due to either party from the other that by the terms herein would not be payable, or are incapable of calculation, until after the expiration or sooner termination of this Lease shall survive and remain a continuing obligation until paid. All indemnity obligations under this Lease shall survive the expiration or earlier termination of this Lease.

54

SECTION 23.19   Joint and Several Liability.   If either party consists of more than one person, then the persons constituting such party shall be jointly and severally liable hereunder.

SECTION 23.20   Definition of Hereunder, Herein, etc.   Unless the context clearly indicates to the contrary, the words "herein," "hereof," "hereunder," "hereafter," and words of similar import refer to this Lease and all of the Exhibits attached hereto as a whole and not to any particular section, subsection, or paragraph hereof.

SECTION 23.21   Tenant's Trade Name.   Landlord shall not make use of Tenant's trade name (i.e., "Circuit City"®) in any advertising or marketing material including, without limitation, on any internet website, without obtaining Tenant's prior written approval, which may be withheld in Tenant's sole and absolute discretion.   Notwithstanding the foregoing, Landlord may use Tenant's trade name on Landlord's website and in informational brochures, but only for the purposes of identifying Tenant as a tenant of the Shopping Center.

SECTION 23.22   Counterparts.   This instrument may be executed in several counterparts, each of which shall be deemed an original.   The signatures to this instrument may be executed and notarized on separate pages, and when attached to this instrument, shall constitute one complete document.

SECTION 23.23   Landlord's Entry.   Landlord (or its agents) shall have the right to enter the Premises for the purpose of inspecting the same, or for the purpose of doing anything that may be required under this Lease, or for the purpose of performing any repairs or maintenance required to be performed by Landlord or for the purpose of showing the Premises to prospective lenders or purchasers or, during the last six (6) months of the Lease Term, tenants (provided, however, that in no event shall Landlord post any "For Lease", "Space Available" or similar signs on the Premises nor shall any entry to show the Premises to prospective lenders, purchasers or tenants occur more than once a week); provided, however, in no event shall Landlord's entry onto the Premises be made without reasonable advance notice to Tenant or unreasonably interfere with the conduct of Tenant's business on the Premises unless Landlord reasonably believes that an emergency exists or there is a likelihood of damage to property, or injury to persons, in which event Landlord may enter the Premises at any time.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

CH3 1111236.2 / 39769-000031
889821-8  11028.0008000

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be duly executed and delivered in their respective names as of the date first above written.

LANDLORD:

ARBORETUM OF SOUTH BARRINGTON, LLC, a Delaware limited liability company

By:     RREEF America L.L.C., a Delaware
        limited liability company, Manager

        By: _____
        Name: _____
        Title: _____


TENANT:

CIRCUIT CITY STORES, INC., a Virginia corporation

By: _____
Name: _____
Title: _____

        John B. Mulleady
        Vice President
        Real Estate & Construction

56

CH3 1111236.2 / 39769-000031
889821-8  11028.0008000











**EXHIBIT B**

<u>Legal Description of the Shopping Center</u>

THAT PART OF THE NORTHEAST QUARTER AND THE SOUTHEAST QUARTER OF SECTION 33, TOWNSHIP 42 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 33; THENCE SOUTH 00 DEGREES 02 MINUTES 15 SECONDS WEST ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER OF SECTION 33, A DISTANCE OF 780.49 FEET TO THE NORTH RIGHT OF WAY LINE OF ILLINOIS ROUTE NO. 72 (HIGGINS ROAD) AS MONUMENTED AND OCCUPIED; THENCE NORTH 69 DEGREES 18 MINUTES 19 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE, A DISTANCE OF 2766.41 FEET TO A POINT ON THE EAST RIGHT OF WAY LINE OF ILLINOIS ROUTE NO. 59 ACCORDING TO THE PLAT THEREOF RECORDED AS DOCUMENT NO. 11194096; THENCE NORTH 00 DEGREES 11 MINUTES 17 SECONDS WEST ALONG SAID EAST RIGHT OF WAY LINE OF ILLINOIS ROUTE NO. 59, A DISTANCE OF 1096.63 FEET TO A POINT ON A NON-TANGENT CURVE; THENCE SOUTHEASTERLY ALONG A CURVE CONCAVE TO THE NORTHEAST HAVING A RADIUS OF 50.00 FEET AN ARC DISTANCE OF 80.49 FEET TO A POINT OF COMPOUND CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 72.08 FEET AND A BEARING OF SOUTH 46 DEGREES 18 MINUTES 23 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 467.00 FEET AN ARC DISTANCE OF 68.92 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 68.86 FEET AND A BEARING OF SOUTH 83 DEGREES 20 MINUTES 49 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE SOUTH HAVING A RADIUS OF 798.00 FEET AN ARC DISTANCE OF 365.16 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 361.98 FEET AND A BEARING OF SOUTH 87 DEGREES 46 MINUTES 18 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 552.00 FEET AN ARC DISTANCE OF 125.61 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 125.34 FEET AND A BEARING OF SOUTH 81 DEGREES 10 MINUTES 53 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE SOUTH HAVING A RADIUS OF 198.00 FEET AN ARC DISTANCE OF 66.38 FEET TO A POINT OF REVERSE CURVATURE, THE

CHORD OF SAID ARC HAVING A LENGTH OF 66.07 FEET AND A BEARING OF SOUTH 78 DEGREES 05 MINUTES 46 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 30.00 FEET AN ARC DISTANCE OF 35.16 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 33.18 FEET AND A BEARING OF NORTH 77 DEGREES 55 MINUTES 47 SECONDS EAST; THENCE NORTHEASTERLY ALONG A CURVE CONCAVE TO THE SOUTHEAST HAVING A RADIUS OF 196.00 FEET AN ARC DISTANCE OF 39.98 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 39.91 FEET AND A BEARING OF NORTH 50 DEGREES 11 MINUTES 41 SECONDS EAST; THENCE NORTHEASTERLY ALONG A CURVE CONCAVE TO THE NORTHWEST HAVING A RADIUS OF 232.00 FEET AN ARC DISTANCE OF 125.75 FEET TO A POINT OF COMPOUND CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 124.21 FEET AND A

B-1

BEARING OF NORTH 40 DEGREES 30 MINUTES 36 SECONDS EAST; THENCE NORTHEASTERLY ALONG A CURVE CONCAVE TO THE NORTHWEST HAVING A RADIUS OF 754.00 FEET AN ARC DISTANCE OF 60.64 FEET TO A POINT OF NON-TANGENCY HEREINAFTER REFERRED TO AS POINT "A", THE CHORD OF SAID ARC HAVING A LENGTH OF 60.62 FEET AND A BEARING OF NORTH 22 DEGREES 40 MINUTES 42 SECONDS EAST; THENCE SOUTH 51 DEGREES 22 MINUTES 16 SECONDS EAST ALONG A LINE HEREINAFTER REFERRED TO AS LINE "A", A DISTANCE OF 287.96 FEET; THENCE SOUTH 37 DEGREES 31 MINUTES 37 SECONDS WEST, 211.19 FEET TO A POINT OF CURVATURE;  THENCE SOUTHWESTERLY ALONG A CURVE CONCAVE TO THE NORTHWEST HAVING A RADIUS OF 233.00 FEET AN ARC DISTANCE OF 43.15 FEET TO A POINT ON A NON-TANGENT CURVE, THE CHORD OF SAID ARC HAVING A LENGTH OF 43.08 FEET AND A BEARING OF SOUTH 42 DEGREES 49 MINUTES 55 SECONDS WEST; THENCE SOUTHERLY ALONG A CURVE CONCAVE TO THE  WEST HAVING A RADIUS OF 90.00 FEET AN ARC DISTANCE OF 40.31 FEET, THE CHORD OF SAID ARC HAVING A LENGTH OF 39.98 FEET AND A BEARING OF SOUTH 04 DEGREES 39 MINUTES 01 SECOND EAST; THENCE SOUTH 69 DEGREES 18 MINUTES 19 SECONDS EAST, 220.11 FEET; THENCE NORTH 20 DEGREES 41 MINUTES 41 SECONDS EAST, 27.00 FEET; THENCE SOUTH 69 DEGREES 18 MINUTES 19 SECONDS EAST, 191.54 FEET; THENCE NORTH 20 DEGREES 41 MINUTES 41 SECONDS EAST, 105.23 FEET; THENCE NORTH 38 DEGREES 37 MINUTES 44 SECONDS EAST, 30.67 FEET TO THE SOUTHEASTERLY EXTENSION OF AFORESAID LINE "A"; THENCE SOUTH 51 DEGREES 22 MINUTES 16 SECONDS EAST ALONG THE SOUTHEASTERLY EXTENSION OF SAID LINE "A", 128.74 FEET TO A POINT ON SAID SOUTHEASTERLY EXTENSION OF LINE "A" THAT IS 795.95 FEET SOUTHEASTERLY OF, MEASURED ALONG SAID LINE "A" AND ITS' SOUTHEASTERLY EXTENSION, AFORESAID POINT "A"; THENCE NORTH 38 DEGREES 37 MINUTES 44 SECONDS EAST, A DISTANCE OF 83.15 FEET TO THE WEST LINE OF THE EAST 16.35 CHAINS OF THE AFORESAID NORTHEAST QUARTER OF SECTION 33; THENCE NORTH 00 DEGREES 04 MINUTES 45 SECONDS WEST ALONG SAID WEST LINE, A DISTANCE OF 476.54 FEET; THENCE NORTH 89 DEGREES 40 MINUTES 35 SECONDS EAST, A DISTANCE OF 455.10 FEET; THENCE SOUTH 00 DEGREES 04 MINUTES 45 SECONDS EAST PARALLEL WITH THE EAST LINE OF SAID NORTHEAST QUARTER, A DISTANCE OF 422.20 FEET; THENCE SOUTH 45 DEGREES 12 MINUTES 05 SECONDS EAST, A DISTANCE OF 141.12 FEET; THENCE NORTH 89 DEGREES 40 MINUTES 35 SECONDS EAST, A DISTANCE OF 524.01 FEET TO THE EAST LINE OF SAID NORTHEAST QUARTER; THENCE SOUTH 00 DEGREES 04 MINUTES 45 SECONDS EAST ALONG SAID EAST LINE, A DISTANCE OF 916.39 FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS.

CHI 1111236.2 / 39769-000031
889821-8  11028.0008000

**EXHIBIT C**

<u>Site Design Requirements</u>

[See Attached]

C-1

CH3 1111236.2 / 39769-000031
889821-8  11028.0008000

| **Site Design Requirements** | **Reverse Build to Suit Deals** |
|---|---|
| **Circuit City Stores, Inc.    South Barrington, IL** | **Store #3803         7/18/2007** |

These Site Design Requirements (SDR's) are attached to and made part of the Lease Agreement. These SDR's are intended to allocate responsibility between Landlord and Circuit City for the work needed to prepare the Premises for Circuit City's occupancy. Terms with Capital letters which are defined in the Lease Agreement and used in the SDR's shall have the same meaning.

# 1. Landlord's Work

Landlord shall be responsible for all work as described in Section 1, "Landlord's Work". Landlord's Work shall be performed in a good and workmanlike manner. Landlord's engineers, surveyors, architects, consultants and contractors shall be bondable, all licensed in the state where the shopping center is located, and of good reputation. Landlord's Work shall be performed at Landlord's sole cost and expense, and in accordance with all applicable laws and regulations, these SDR's, the Construction Schedule (Attachment 2), and the Civil Plans (Attachment 7).

In the event that any portion of the Landlord's Work requires minor adjustments in order to satisfy the requirements of these SDR's, Circuit City may direct its contractor to make such minor adjustments, the total cost of which shall be reimbursed by Landlord to Circuit City upon demand in a sum not to exceed Five Thousand and no/100 Dollars ($5,000.00).

A. **Site Delivery Work** – All of the Landlord's Work described in one (1) through twelve (12) below is referred to collectively as the "Site Delivery Work". Upon completion of the Site Delivery Work, Landlord shall deliver to Circuit City the "Site Work Certificate" (Attachment 3), at which time "Delivery of Land" as described in the Lease Agreement shall be deemed to have occurred. If any portion of the Site Delivery Work has not been completed to Circuit City's satisfaction, Circuit City shall promptly notify Landlord, and Landlord shall be obligated to correct any incomplete or unacceptable work as a condition precedent to Delivery of the Land.

1. Provide the Geotechnical Reports and Geotechnical Reliance Letter (Attachment 8)
2. Provide the Environmental Reports and Environmental Reliance Letter (Attachment 9)
3. Cause the proposed development of the Shopping Center and its Civil Plans to comply with the Geotechnical Report and with the Circuit City Specifications (Attachment 1)
4. Cause the land upon which the Circuit City building will be constructed (which includes the areas occupied by the Building, loading dock well, trash compactor, and sidewalks) to be free and clear of all obstructions, foundations, rock, footings, utilities, easements, improvements, and tenancies. Any rock removal performed by the Landlord must be completed as described in the Circuit City Specifications. The Circuit City Specifications shall take precedent over the Geotechnical Report with regards to rock removal.
5. Cause the land on which the Shopping Center is situated, including the Building Pad, to be delivered free of all Hazardous Materials.
6. Cause the land on which the Shopping Center is situated, including the Building Pad, to be graded in accordance with the Geotechnical Report, the Civil Plans, and the Circuit City Specifications.
7. Complete the Building Pad in accordance with the Geotechnical Report, the Civil Plans, and the Circuit City Specifications. If there are discrepancies between the Circuit City Specifications and the Geotechnical Report or Civil Plans, the Circuit City Specifications shall take precedent. The term "Building Pad" shall mean the footprint of the Circuit City Building plus a minimum of fifteen (15) feet beyond such footprint (except when the fifteen feet falls within the building pad of an adjacent tenant), and the areas occupied by the loading dock well, trash compactor, and sidewalks.
8. Obtain governmental approvals necessary to complete all on-site and off-site work shown on the Civil Plans, including all approvals (except those from the Architectural Control Committee for elevations and signage), which must be obtained as a condition to issuance of Circuit City's building permit.

# EXHIBIT B



The Arboretum
OF SOUTH BARRINGTON

VIA: UPS NEXT DAY AIR

October 27, 2008

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233
Attn: Vice President of Real Estate

Re:    Lease dated September 7, 2007, for the 20,509 square foot designated K-1 premises within the
       shopping center located at 100 W. Higgins Road, South Barrington, Illinois and commonly known at
       The Arboretum of South Barrington and as more fully described in the Lease (the "Premises").
       **Additional Rent**

To whom it may concern:

In accordance with the provisions of your lease, along with your monthly base rent, you are responsible for your
pro-rata share of real-estate taxes, insurance and common area maintenance. Pursuant to Section 5.04 Tenant's
obligation to pay Additional Rent shall begin on the Rent Commencement Date. As such, for purposes of the
lease the Commencement Date for Additional Rent shall be September 26, 2008.

This letter serves as notification to Tenant's estimates for 2008 CAM, Taxes and Insurance. The Additional Rent
charge for the month of September is $3,489.38.

|  | Rate | Monthly Payment |
|---|---|---|
| CAM | $    3.50 | $    996.97 |
| Insurance | $    0.25 | $    71.21 |
| R.E. Tax | $    8.50 | $    2,421.20 |
| Total |  | $    3,489.38 |
| Amount Due: 9/26/08 - 9/30/08 | $    3,489.38 |

Amount past due for **October 1, 2008**

|  | Rate | Monthly Payment |
|---|---|---|
| CAM | $    3.50 | $    5,981.79 |
| Insurance | $    0.25 | $    427.27 |
| R.E. Tax | $    8.50 | $    14,527.21 |
| Total Due: October 2008 |  | $    20,936.27 |



Please reference the following schedule for monthly payments. The Additional Rent charge of $20,936.27 should be included in your fix rent until further notice.

|  | Rate | Monthly Payment |
|---|---|---|
| Rent | $ 19.00 | $ 32,472.58 |
| CAM | $ 3.50 | $ 5,981.79 |
| Insurance | $ 0.25 | $ 427.27 |
| R.E. Tax | $ 8.50 | $ 14,527.21 |
| TOTAL |  | $ 53,408.85 |

To date you owe us $24,425.65 representing your additional charges for September 26, 2008 to October 31, 2008. Please remit as soon as receipt of this letter.

All rent checks should be payable to Arboretum of South Barrington, LLC and send to the following address:

Bank of America, N.A. Lockbox #14923
CalSMART
14923 Collections Center Drive
Chicago, IL 60693
Account No. 488005760624
ABA# (wires) 026009593
(ACH) 111000025

If you have any question or concerns, feel free to contact me.

Sincerely,
For Arboretum of South Barrington, LLC

Yeeni Yi

cc:   General Counsel, Circuit City
Raymond Elvey, Arboretum of South Barrington (Via Email)
Jonathan Payne, Arboretum of South Barrington (Via Email)
Lily Pardinas, RREEF (Via Email)

# EXHIBIT C

| The Arboretum |
| of South Barrington |

Circuit City - Overdue Rent Schedule

| Date | Amounts Owed | Amount Owed (Including Interest | Interest Rate | Interest Amount |
|---|---|---|---|---|
| 9/26/2008 | $8,901.48 | $8,901.48 | 8.50% | $2.10 |
| 9/27/2008 | $0.00 | $8,903.58 | 8.50% | $2.10 |
| 9/28/2008 | $0.00 | $8,905.68 | 8.50% | $2.10 |
| 9/29/2008 | $0.00 | $8,907.79 | 8.50% | $2.10 |
| 9/30/2008 | $0.00 | $8,909.89 | 8.50% | $2.10 |
| 10/1/2008 | $53,408.85 | $62,320.84 | 8.50% | $14.71 |
| 10/2/2008 | $0.00 | $62,335.56 | 8.50% | $14.72 |
| 10/3/2008 | $0.00 | $62,350.28 | 8.50% | $14.72 |
| 10/4/2008 | $0.00 | $62,365.00 | 8.50% | $14.73 |
| 10/5/2008 | $0.00 | $62,379.72 | 8.50% | $14.73 |
| 10/6/2008 | $0.00 | $62,394.45 | 8.50% | $14.73 |
| 10/7/2008 | $0.00 | $62,409.18 | 8.50% | $14.74 |
| 10/8/2008 | $0.00 | $62,423.92 | 8.50% | $14.74 |
| 10/9/2008 | $0.00 | $62,438.66 | 8.50% | $14.74 |
| 10/10/2008 | $0.00 | $62,453.40 | 8.50% | $14.75 |
| 10/11/2008 | $0.00 | $62,468.15 | 8.50% | $14.75 |
| 10/12/2008 | $0.00 | $62,482.90 | 8.50% | $14.75 |
| 10/13/2008 | $0.00 | $62,497.65 | 8.50% | $14.76 |
| 10/14/2008 | $0.00 | $62,512.41 | 8.50% | $14.76 |
| 10/15/2008 | $0.00 | $62,527.17 | 8.50% | $14.76 |
| 10/16/2008 | $0.00 | $62,541.93 | 8.50% | $14.77 |
| 10/17/2008 | $0.00 | $62,556.70 | 8.50% | $14.77 |
| 10/18/2008 | $0.00 | $62,571.47 | 8.50% | $14.77 |
| 10/19/2008 | $0.00 | $62,586.24 | 8.50% | $14.78 |
| 10/20/2008 | $0.00 | $62,601.02 | 8.50% | $14.78 |
| 10/21/2008 | $0.00 | $62,615.80 | 8.50% | $14.78 |
| 10/22/2008 | $0.00 | $62,630.58 | 8.50% | $14.79 |
| 10/23/2008 | $0.00 | $62,645.37 | 8.50% | $14.79 |
| 10/24/2008 | $0.00 | $62,660.16 | 8.50% | $14.79 |
| 10/25/2008 | $0.00 | $62,674.96 | 8.50% | $14.80 |
| 10/26/2008 | $0.00 | $62,689.75 | 8.50% | $14.80 |
| 10/27/2008 | $0.00 | $62,704.56 | 8.50% | $14.81 |
| 10/28/2008 | $0.00 | $62,719.36 | 8.50% | $14.81 |
| 10/29/2008 | $0.00 | $62,734.17 | 8.00% | $13.94 |
| 10/30/2008 | $0.00 | $62,748.11 | 8.00% | $13.94 |
| 10/31/2008 | $0.00 | $62,762.05 | 8.00% | $13.95 |
| 11/1/2008 | $53,408.85 | $116,184.85 | 8.00% | $25.82 |
| 11/2/2008 | $0.00 | $116,210.67 | 8.00% | $25.82 |
| 11/3/2008 | $0.00 | $116,236.50 | 8.00% | $25.83 |
| 11/4/2008 | $0.00 | $116,262.33 | 8.00% | $25.84 |
| 11/5/2008 | $0.00 | $116,288.16 | 8.00% | $25.84 |
| 11/6/2008 | $0.00 | $116,314.00 | 8.00% | $25.85 |
| 11/7/2008 | $0.00 | $116,339.85 | 8.00% | $25.85 |
| 11/8/2008 | $0.00 | $116,365.70 | 8.00% | $25.86 |
| 11/9/2008 | $0.00 | $116,391.56 | 8.00% | $25.86 |
| 11/10/2008 | $0.00 | $116,417.43 | 8.00% | $25.87 |
| 11/11/2008 | $0.00 | $116,443.30 | 8.00% | $25.88 |
| 11/12/2008 | $0.00 | $116,469.17 | 8.00% | $25.88 |
| 11/13/2008 | $0.00 | $116,495.06 | 8.00% | $25.89 |
| 11/14/2008 | $0.00 | $116,520.94 | 8.00% | $25.89 |
| 11/15/2008 | $0.00 | $116,546.84 | 8.00% | $25.90 |
| 11/16/2008 | $0.00 | $116,572.74 | 8.00% | $25.91 |
| 11/17/2008 | $0.00 | $116,598.64 | 8.00% | $25.91 |
| 11/18/2008 | $0.00 | $116,624.55 | 8.00% | $25.92 |

The Arboretum
of South Barrington

Circuit City - Overdue Rent Schedule

| Date | Amounts Owed | Amount Owed (Including Interest) | Interest Rate | Interest Amount |
|---|---|---|---|---|
| 11/19/2008 | $0.00 | $116,650.47 | 8.00% | $25.92 |
| 11/20/2008 | $0.00 | $116,676.39 | 8.00% | $25.93 |
| 11/21/2008 | $0.00 | $116,702.32 | 8.00% | $25.93 |
| 11/22/2008 | $0.00 | $116,728.25 | 8.00% | $25.94 |
| 11/23/2008 | $0.00 | $116,754.19 | 8.00% | $25.95 |
| 11/24/2008 | $0.00 | $116,780.14 | 8.00% | $25.95 |
| 11/25/2008 | $0.00 | $116,806.09 | 8.00% | $25.96 |
| 11/26/2008 | $0.00 | $116,832.05 | 8.00% | $25.96 |
| 11/27/2008 | $0.00 | $116,858.01 | 8.00% | $25.97 |
| 11/28/2008 | $0.00 | $116,883.98 | 8.00% | $25.97 |
| 11/29/2008 | $0.00 | $116,909.95 | 8.00% | $25.98 |
| 11/30/2008 | $0.00 | $116,935.93 | 8.00% | $25.99 |
| 12/1/2008 | $53,408.85 | $170,370.77 | 8.00% | $37.86 |
| 12/2/2008 | $0.00 | $170,408.63 | 8.00% | $37.87 |
| 12/3/2008 | $0.00 | $170,446.50 | 8.00% | $37.88 |
| 12/4/2008 | $0.00 | $170,484.37 | 8.00% | $37.89 |
| 12/5/2008 | $0.00 | $170,522.26 | 8.00% | $37.89 |
| 12/6/2008 | $0.00 | $170,560.15 | 8.00% | $37.90 |
| 12/7/2008 | $0.00 | $170,598.06 | 8.00% | $37.91 |
| 12/8/2008 | $0.00 | $170,635.97 | 8.00% | $37.92 |
| 12/9/2008 | $0.00 | $170,673.89 | 8.00% | $37.93 |
| 12/10/2008 | $0.00 | $170,711.81 | 8.00% | $37.94 |
| 12/11/2008 | $0.00 | $170,749.75 | 8.00% | $37.94 |
| 12/12/2008 | $0.00 | $170,787.69 | 8.00% | $37.95 |
| 12/13/2008 | $0.00 | $170,825.65 | 8.00% | $37.96 |
| 12/14/2008 | $0.00 | $170,863.61 | 8.00% | $37.97 |
| 12/15/2008 | $0.00 | $170,901.58 | 8.00% | $37.98 |
| 12/16/2008 | $0.00 | $170,939.56 | 8.00% | $37.99 |
| 12/17/2008 | $0.00 | $170,977.54 | 8.00% | $38.00 |
| 12/18/2008 | $0.00 | $171,015.54 | 8.00% | $38.00 |
| 12/19/2008 | $0.00 | $171,053.54 | 8.00% | $38.01 |
| 12/20/2008 | $0.00 | $171,091.55 | 8.00% | $38.02 |
| 12/21/2008 | $0.00 | $171,129.57 | 8.00% | $38.03 |
| 12/22/2008 | $0.00 | $171,167.60 | 8.00% | $38.04 |
| 12/23/2008 | $0.00 | $171,205.64 | 8.00% | $38.05 |
| 12/24/2008 | $0.00 | $171,243.68 | 8.00% | $38.05 |
| 12/25/2008 | $0.00 | $171,281.74 | 8.00% | $38.06 |
| 12/26/2008 | $0.00 | $171,319.80 | 8.00% | $38.07 |
| 12/27/2008 | $0.00 | $171,357.87 | 8.00% | $38.08 |
| 12/28/2008 | $0.00 | $171,395.95 | 8.00% | $38.09 |
| 12/29/2008 | $0.00 | $171,434.04 | 8.00% | $38.10 |
| 12/30/2008 | $0.00 | $171,472.14 | 8.00% | $38.10 |
| 12/31/2008 | $0.00 | $171,510.24 | 8.00% | $38.11 |

$169,128.03 Total Rent Due on December 31st, 2008
$2,382.21 Total Interest Due on December 31st, 2008
$171,510.24 Total Due on December 31st, 2008

# EXHIBIT D



VIA: UPS NEXT DAY AIR

December 10, 2008

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233
Attn:  Vice President of Real Estate

      Re:  Lease dated September 7, 2007 for the 20,940 square foot designated K-1 premises
within the shopping center located at 100 W. Higgins Road, South Barrington, Illinois
and commonly known as The Arboretum of South Barrington and as more fully
described in the Lease (the Premises).

To Whom It May Concern:

The purpose of this letter is to give written notice to Tenant that Landlord has received the
following notices:

1. Mechanic's Lien: Notice and Claim
2. Sub-Contractor's Notice of Claim of Lien
3. Original Contractor's Claim for Lien
4. Sub-Contractor Notice and Claim for Lien

These notices have been filed by Northern Glass, Inc., T-Manning Concrete, Inc., International
Contractors, Inc. and North American Roofing Services, Inc. A copy of the notices is attached to
this letter.

By sending this notice, Landlord is merely giving notice of further default by Tenant and the
existence of additional claims, and by setting forth the above facts, Landlord is not attempting to
collect a prepetition debt from Tenant or to do any act prohibited by 11 U.S.C. § 362(a).
Landlord also reserves all of its rights with respect to Tenant, including its right to file a proof of
claim in Tenant's bankruptcy proceeding.

Please call if you have any questions.

Kindest regards,

The Arboretum of South Barrington



CC:    General Counsel, Circuit City, Inc.
       Ira Fierstein, Seyfarth & Shaw (Via Email)
       Michael Jaffe, Arboretum (Via Email)
       Jonathan Payne, Arboretum (Via Email)
       Ray Elvey, Arboretum (Via Email)
       Charlotte Sweetland, RREEF (Via Email)


Enclosure (4)



Real Estate  Infrastructure  Private Equity  Hedge Funds

**RREEF**
875 N. Michigan Avenue, 41ˢᵗ Floor
Chicago, Illinois 60611-1901
T 312-266-9300
F 312-266-9346
www.rreef.com

# Memo

Kim.Band@RREEF.com
312-278-6511 (direct)

| | |
|---|---|
| To | Charlotte Sweetland |
| CC | Barry Braitman, Vern Ostrow, Ross Berry |
| From | Kim Band |
| Date | December 3, 2008 |
| Subject | Mechanic's Lien Notice; CalSmart; Arboretum of South Barrington, 100 W. Higgins Road, Suite K-1, South Barrington, IL; *Northern Glass, Inc.  v Arboretum of South Barrington, LLC* |

Please find the following attached to this cover memo:

1.  Mechanic's Lien: Notice and Claim

Plaintiff alleges that on May 21, 2008, the tenant's contractor, International Contractors, Inc., entered into a subcontract with Claimant to provide all labor, materials and equipment for all glass and glazing work for certain windows and door openings.  Claimant further alleges that on or about September 22, 2008, all work required by the contract had been completed by Claimant.  Claimant alleges that the amount of $3,950.94 remains unpaid and owing to the claimant.

If you have any questions or need assistance in handling this matter, please contact Barry Braitman.

MECHANICS' LIEN:
NOTICE AND CLAIM

STATE OF ILLINOIS

: SS.

COUNTY OF C O O K

NORTHERN GLASS, INC.,

Claimant,

v.

ARBORETUM OF SOUTH BARRINGTON, LLC,
BURCH WBC, ("Lend er"), and CIRCUIT CITY STORES, INC.,
INTERNATIONAL CONTRACTORS, INC.
UNKNOWN OWNERS and NON-RECORD
CLAIMANTS,

Defendants.

The Claimant, NORTHERN GLASS, INC., an Illinois corporation, of Elk Grove Village, Cook County, Illinois, files a Notice and Claim for Lien against INTERNATIONAL CONTRACTORS, INC. ("Contractor") of DuPage County, Illinois, ARBORETUM OF SOUTH BARRINGTON, LLC (hereinafter referred to as "Owner"), BURCH WBC, ("Lend er"), and CIRCUIT CITY STORES, INC. ("Lessee") and any persons claiming to be interested in the real estate herein, and states:

On May 21, 2008, the Owner owned the following described land in Cook County, Illinois, to wit:

100 West Higgins Road, Suite K-1, South Barrington, Illinois 60010:

THAT PART OF THE NORTHEAST QUARTER AND THE SOUTHEAST QUARTER
OF SECTION 33, TOWNSHIP 42 NORTH, RANGE 9, EAST OF THE THIRD
PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:  BEGINNING AT THE
NORTHEAST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 33;
THENCE SOUTH 00 DEGREES 02 MINUTES 15 SECONDS WEST ALONG THE EAST
LINE OF SAID SOUTHEAST QUARTER OF SECTION 33, A DISTANCE OF 780.49
FEET TO THE NORTH RIGHT OF WAY OF ILLINOIS ROUTE NO. 72 (HIGGINS
ROAD) AS MONUMENTED AND OCCUPIED; THENCE NORTH 89 DEGREES
18 MINUTES 19 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE,
A DISTANCE OF 2756.41 FEET TO A POINT ON THE EAST RIGHT OF WAY LINE
OF ILLINOIS ROUTE NO. 59 ACCORDING TO THE PLAT THEREOF RECORDED
AS DOCUMENT NO. 11194096; THENCE NORTH 00 DEGREES 11 MINUTES 17
SECONDS WEST ALONG SAID EAST RIGHT OF WAY LINE OF ILLINOIS
ROUTE NO. 59, A DISTANCE OF 1098.63 FEET TO A POINT ON A NON-TANGENT
CURVE; THENCE SOUTHEASTERLY ALONG A CURVE CONCAVE TO THE
NORTHEAST HAVING A RADIUS OF 50.00 FEET AN ARC DISTANCE OF 80.39
FEET TO A POINT OF COMPOUND CURVATURE, THE CHORD OF SAID ARC
HAVING A LENGTH OF 72.62 FEET AND A BEARING OF SOUTH 45 DEGREES
18 MINUTES 23 SECONDS EAST; THENCE EASTERLY ALONG A CURVE

CONCAVE TO THE NORTH HAVING A RADIUS OF 467.00 FEET AN ARC
DISTANCE OF 68.92 FEET TO A POINT OF REVERSE CURVATURE, THE
CHORD OF SAID ARC HAVING A LENGTH OF 68.86 FEET AND A
BEARING OF NORTH 83 DEGREES 20 MINUTES 49 SECONDS EAST; THENCE
EASTERLY ALONG A CURVE CONCAVE TO THE SOUTH HAVING A RADIUS
OF 793.00 FEET AN ARC DISTANCE OF 365.16 FEET TO A POINT OF REVERSE
CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 361.98 FEET
AND A BEARING OF SOUTH 87 DEGREES 46 MINUTES 18 SECONDS EAST;
THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH HAVING A
RADIUS OF 552.00 FEET AN ARC DISTANCE OF 125.61 FEET TO A POINT OF
REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF
125.34 FEET AND A BEARING OF SOUTH 81 DEGREES 10 MINUTES 53 SECONDS
EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE SOUTH HAVING
A RADIUS OF 193.00 FEET AN ARC DISTANCE OF 66.38 FEET TO A POINT
OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF
66.07 FEET AND BEARING OF SOUTH 78 DEGREES 05 MINUTES 46 SECONDS
EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH
HAVING A RADIUS OF 30.00 FEET AN ARC DISTANCE OF 35.16 FEET TO A
POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A
LENGTH OF 33.18 FEET AND A BEARING OF NORTH 77 DEGREES 55 MINUTES
47 SECONDS EAST; THENCE NORTHEASTERLY ALONG A CURVE
CONCAVE TO THE SOUTHEAST HAVING A RADIUS OF 196.00 FEET
AN ARC DISTANCE OF 39.98 FEET TO A POINT OF REVERSE CURVATURE, THE
CHORD OF SAID ARC HAVING. A LENGTH OF 39.91 FEET AND A BEARING OF
NORTH 50 DEGREES 11 MINUTES 41 SECONDS EAST; THENCE
NORTHEASTERLY ALONG A CURVE CONCAVE TO THE NORTHWEST HAVING
A RADIUS OF 252.00 FEET AN ARC DISTANCE OF 125.75 FEET TO A POINT OF
COMPOUND CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF
124.31 FEET AND A BEARING OF NORTH 40 DEGREES 30 MINUTES 36 SECONDS
EAST; THENCE NORTHEASTERLY ALONG A CURVE CONCAVE TO THE
NORTHWEST HAVING A RADIUS OF 756.00 FEET AN ARC DISTANCE OF 60.64
FEET TO A POINT OF NON-TANGENCY HEREINAFTER REFERRED TO AN POINT
"A" THE CHORD OF SAID ARC HAVING A LENGTH OF 60.62 FEET AND A
BEARING OF NORTH 22 DEGREES 40 MINUTES 42 SECONDS EAST; THENCE
SOUTH 51 DEGREES 22 MINUTES 16 SECONDS EAST ALONG A LINE
HEREINAFTER REFERRED TO AS LINE "A", A DISTANCE OF 287.96 FEET;
THENCE SOUTH 37 DEGREES 31 MINUTES 37 SECONDS WEST, 211.19 FEET TO
A POINT OF CURVATURE; THENCE SOUTHWESTERLY ALONG A CURVE
CONCAVE TO THE NORTHWEST HAVING A RADIUS OF 233.00 FEET AN ARC
DISTANCE OF 43.15 FEET TO A POINT ON A NON-TANGENT CURVE, THE
CHORD OF SAID ARC HAVING A LENGTH OF 43.08 FEET AND A BEARING OF
SOUTH 42 DEGREES 49 MINUTES 55 SECONDS WEST; THENCE SOUTHERLY
ALONG A CURVE CONCAVE TO THE WEST HAVING A RADIUS OF 90.00 FEET
AN ARC DISTANCE OF 40.31 FEET, THE CHORD OF SAID ARC HAVING A
LENGTH OF 39.98 FEET AND BEARING OF SOUTH 04 DEGREES 39 MINUTES 01
SECOND EAST; THENCE SOUTH 69 DEGREES 10 MINUTES 19 SECONDS EAST,
220.11 FEET; THENCE NORTH 20 DEGREES 41 MINUTES 41 SECONDS EAST,

27.00 FEET; THENCE SOUTH 69 DEGREES 18 MINUTES 19 SECONDS EAST,
101.54 FEET; THENCE NORTH 20 DEGREES 41 MINUTES 41 SECONDS EAST,
105.23 FEET; THENCE NORTH 38 DEGREES 37 MINUTES 44 SECONDS EAST,
30.07 FEET TO THE SOUTHEASTERLY EXTENSION OF AFORESAID LINE "A",
THENCE SOUTH 51 DEGREES 22 MINUTES 16 SECONDS EAST ALONG THE
SOUTHEASTERLY EXTENSION OF SAID LINE "A", 128.74 FEET TO A POINT ON
SAID SOUTHEASTERLY EXTENSION OF LINE "A" THAT IS 795.95 FEET
SOUTHEASTERLY OF, MEASURED ALONG SAID LINE "A" AND ITS
SOUTHEASTERLY EXTENSION, AFORESAID POINT "A"; THENCE NORTH 38
DEGREES 37 MINUTES 44 SECONDS EAST, A DISTANCE OF 83.15 FEET TO THE
WEST LINE OF THE EAST 16.35 CHAINS OF THE AFORESAID NORTHEAST
QUARTER OF SECTION 33; THENCE NORTH 00 DEGREES 04 MINUTES 45
SECONDS WEST ALONG SAID WEST LINE, A DISTANCE OF 476.54 FEET;
THENCE NORTH 89 DEGREES 40 MINUTES 35 SECONDS EAST, A DISTANCE OF
455.10 FEET; THENCE SOUTH 00 DEGREES 04 MINUTES 45 SECONDS EAST
PARALLEL WITH THE EAST LINE OF SAID NORTHEAST QUARTER, A
DISTANCE OF 422.20 FEET; THENCE SOUTH 45 DEGREES 12 MINUTES 05
SECONDS EAST, A DISTANCE OF 141.13 FEET; THENCE NORTH 89 DEGREES 40
MINUTES 35 SECONDS EAST, A DISTANCE OF 528.81 FEET TO THE EAST
LINE OF SAID NORTHEAST QUARTER, THENCE SOUTH 00 DEGREES 04
MINUTES 45 SECONDS EAST ALONG SAID EAST LINE, A DISTANCE OF 916.39
FEET TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS.

Permanent Index Nos.:    01-33-200-007, 01-33-200-012, 01-33-200-013, 01-33-200-015, 01-33-200-017
01-33-200-014

and leased the premises at Suite K for Lessee. The Owner knowingly permitted Lessee to contract with others to make
improvements to Suite K-... INTERNATIONAL CONTRACTORS, INC., was the Lessee's contractor for the
improvements thereto. That on or about May 21, 2008 the Contractor made a subcontract with Claimant to provide all
labor, materials and equipment for all glass and glazing work for certain windows and door openings in the improvement
for Twenty Six Thousand Four Hundred Twenty Five and 00/100ths ($26,425.00) Dollars; and, on September 22, 2008
Claimant finished all the work contemplated in the subcontract.

The Contractor is entitled to credits on account leaving a ... balance and owing to the Claimant after allowing all credits
the sum of Three Thousand Nine Hundred Fifty and 94/100ths ($3,950.94) Dollars for which, with interest and attorneys'
fees, the Claimant claims a lien on the land and improvements specifically ... as a lien thereon against the Contractor
and Lessor and/or any funds due the Contractor from the Lessor.

NORTHBROOK GLASS, INC.

By _____
Its Vanderson, Its Authorized Agent

STATE OF ILLINOIS    )
                     )  SS.
COUNTY OF COOK       )

The Affiant, ERIC MARTINSON, being first duly sworn on oath, deposes and says that he is an Authorized Agent of NORTHERN GLASS, INC., the Claimant, that he has read the foregoing Mechanics' Lien Notice and Claim and knows the contents thereof, and that all the statements therein contained are true.

ERIC MARTINSON

SUBSCRIBED and SWORN to before
me this 26th day of November, 2008.

Notary Public

My commission expires

This Instrument Prepared by and Mail to:

Lee C. DeWald, Richards & DeWald, P.C., 1237 South Arlington Heights Road, P.O. Box 1880, Arlington Heights, Illinois 60006

4

## SERVICE LIST

**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**
**RESTRICTED DELIVERY-REGULAR MAIL** - 7006 2150 0002 0884 2687

Prentice Hall Corporation, Registered Agent for
    Circuit City Stores, Inc.
33 North LaSalle Street
Chicago, Illinois 60602


**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**
**RESTRICTED DELIVERY-REGULAR MAIL** - 7006 2150 0002 0884 2694

Barry E. Braiman, Registered Agent for
    Arboretum of South Barrington, LLC
875 North Michigan Avenue, 41st Floor
Chicago, Illinois 60611


**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**
**RESTRICTED DELIVERY-REGULAR MAIL** - 7006 2150 0002 0884 2700

William D. Kelly, Registered Agent for
    International Contractors, Inc.
619 Enterprise Drive, Suite 205
Oak Brook, Illinois 60523


**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**
**RESTRICTED DELIVERY-REGULAR MAIL** - 7006 2150 0002 0884 2717

Dan Marciano, General Manager
Eurohype AG
1114 Avenue of the Americas
New York, New York 10036


**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**
**RESTRICTED DELIVERY-REGULAR MAIL** -



Real Estate  Infrastructure  Private Equity  Hedge Funds

RREEF

875 N. Michigan Avenue, 41st Floor

Chicago, Illinois 60611-1901

T 312-266-9300

F 312-266-9346

www.rreef.com

# Memo

kim.band@rreef.com

312-278-6511 (direct)

To          Charlotte Sweetland

CC          Barry Braitman, Vern Ostrow, Ross Berry

From        Kim Band

Date        December 3, 2008

Subject     Mechanic's Lien Notice; CalSmart; Circuit City #809, Building K-1, Arboretum of
            South Barrington, 100 W. Higgins Road, South Barrington, IL; *T-Manning
            Concrete, Inc. v Arboretum of South Barrington, LLC*

Please find the following attached to this cover memo:

  1.   Sub-Contractor's Notice of Claim for Lien

Plaintiff alleges that on May 23, 2008, the tenant's contractor, International Contractors, Inc., entered into
a subcontract with Claimant to provide all labor and materials necessary to complete concrete
improvements.  Claimant alleges that the amount of $28,151.00 remains unpaid and owing to the
claimant.

If you have any questions or need assistance in handling this matter, please contact Barry Braitman.

Via Certified Mail —
Return Receipt Requested

### Sub-Contractor's Notice of Claim for Lien

To:     Circuit City Stores, Inc.
        ("Owner")

You are hereby notified that T-Manning Concrete, Inc. ("Claimant") has been employed by International Contractors, Inc. ("Contractor") pursuant to that certain Contract dated May 23, 2008 for Project Circuit City - #809 ("Sub-Contract") to provide all labor and materials necessary to complete certain concrete work in and upon the property herein described, including installation and finishing all cast-in-place concrete, foundations, slabs, sidewalks, curbs and curb cuts, reinforcing steel, forms, piers, trench drains and sump pits, and the installation of bollards and additional items provided by others, together with all related materials and services (collectively, the "Concrete Improvements") under its contract with you, on the property commonly known as Building K-1 at 100 W. Higgins Road, South Barrington, Illinois, and that there is due to Claimant therefor, the sum of $226,134.00, and for which amount Claimant claims a lien.

Dated this 1st day of December, 2008.

T-Manning Concrete, Inc.

By: _____
Its: _____

## CERTIFICATE OF SERVICE

I Caren Lederer, an attorney, hereby certify that I served the foregoing Notice of Sub-Contractor's Claim for Lien upon the attached service list by certified mail, return receipt requested, on this 1st day of December, proper prepaid postage affixed.

## SERVICE LIST

Owner:          Arboretum of South Barrington, LLC
                c/o Barry Braitman, Registered Agent
                875 N. Michigan Avenue, Suite 4100
                Chicago, IL 60611

Tenant:         Circuit City Stores, Inc.
                9950 Mayland Drive
                Richmond, VA 23233
                Attn: Legal Affairs Department

Contractor:     International Contractors, Inc.
                977 South Route 83
                Elmhurst, IL 60126
                Attn: Elizabeth Gustovich

Lender:         EURO-HYPO A.G.
                New York Branch
                1114 Avenue of the Americas
                New York, NY 10036
                Attn: Legal Department

Architect:      Casco Corporation
                10877 Watson Road
                St. Louis, MO 63127
                Attn: Project Superintendent

Construction
Manager:        Norshe Group
                Scott Backer
                1690 Winter Hill Court
                Montgomery, Illinois 60538



Real Estate  Infrastructure  Private Equity  Hedge Funds

RREEF
875 N. Michigan Avenue, 41st Floor
Chicago, Illinois 60611-1901
T 312-266-9300
F 312-266-9346
www.rreef.com

# Memo

Kim.Band@RREEF.com
312-278-6511 (direct)

| | |
|---|---|
| To | Charlotte Sweetland |
| CC | Barry Braitman, Vern Ostrow, Ross Berry |
| From | Kim Band |
| Date | December 4, 2008 |
| Subject | Mechanic's Lien Notice; CalSmart; Circuit City, Arboretum of South Barrington, 100 W. Higgins Road, South Barrington, IL; *International Contractors, Inc. v Arboretum of South Barrington, LLC* |

Please find the following attached to this cover memo:

1.  Original Contractor's Claim for Lien

Plaintiff alleges that on or about April 21, 2008, Arboretum of South Barrington, L.L.C., as Owner, entered into an Agreement with Claimant to provide certain labor, material and work to build out the tenant improvements for Circuit City Stores, Inc., Store 4195. Claimant further alleges that on or about October 3, 2008, all work required by the agreement had been completed by Claimant. Claimant alleges that the amount of $213,664.30 remains unpaid and owing to the claimant.

If you have any questions or need assistance in handling this matter, please contact Barry Braitman.

A Member of the Deutsche Bank Group

# KELLY & KARRAS, LTD.

### ATTORNEYS AT LAW
SUITE 205
519 ENTERPRISE DRIVE
OAK BROOK, ILLINOIS 60523
(630) 575-0202
FAX: (630) 575-0221
www.kellykarras.com

*E-Mail: jjkarras@kellykarras.com*

JAMES J. KARRAS
WILLIAM D. KELLY*
EFRAIN L. SANCHEZ
*ALSO ADMITTED IN FLORIDA

2240 WEBER ROAD
CREST HILL, ILLINOIS 60403
(815) 744-1699
FAX: (815) 744-1011

December 2, 2008

CIRCUIT CITY STORES, INC.
c/o Prentice Hall Corporation, Registered Agent
33 North LaSalle Street
Chicago, IL 60602

ARBORETUM OF SOUTH BARRINGTON, LLC
Barry H. Brakman, Registered Agent
675 N. Michigan Avenue, 41st Floor
Chicago, IL 60611

EUROHYPO AG NEW YORK BRANCH
*Attention: Legal Department*
1114 Avenue of the Americas
New York, NY 10036

    Re:    *100 West Higgins Road, South Barrington, Illinois*
           *Amount Due:  $213,664.30*

Gentlemen:

    Please be advised that this office represents International Connectors, Inc. with respect to the above-captioned. Enclosed herewith please find International Connectors, Inc.'s *Original Contractor's Claim for Lien Pursuant to Illinois Compiled Statutes, Chapter 770, Section 60/1, et seq.* with respect to the above-captioned Project. The Lien has been forwarded to the Cook County Recorder's Office to be recorded.

    Should you wish to discuss this matter, please contact the undersigned directly.

        Very truly yours,

        *James J. Karras*

JJK/bjm
Enclosure
cc:    International Connectors, Inc.

ORIGINAL CONTRACTOR'S
CLAIM FOR LIEN

STATE OF ILLINOIS

COUNTY OF COOK

The     Lien     Claimant,
INTERNATIONAL
CONTRACTORS,     INC.,     an          | Original Contractor's Claim for
Illinois corporation of 977 South      | Lien for $213,664.30
Route 83, Elmhurst, Illinois, hereby files a claim for mechanic's lien against CIRCUIT CITY
STORES, INC., a Virginia corporation, authorized or knowingly permitted to contract with Lien
Claimant by ARBORETUM OF SOUTH BARRINGTON, L.L.C., a Delaware limited liability
company (Circuit City Stores, Inc. and Arboretum of South Barrington, LLC are collectively
referred to herein as "Owner"); EUROHYPO AG NEW YORK BRANCH, ("Lender"); and any
person or entity claiming an interest in the property (as hereinafter defined), by, through or under
Owner or Lender, and states:

That from April, 2008, and all relevant times thereafter, Owner owned the following described land
in the Town of South Barrington, County of Cook, State of Illinois, commonly known as 100 West
Higgins Road, South Barrington, Illinois and legally described as set forth in the attached *Exhibit
"A"* and hereinafter referred to as the "Property").

That on or about April 21, 2008, ARBORETUM OF SOUTH BARRINGTON, L.L.C., as Owner
authorized or knowingly permitted Circuit City Stores, Inc. to enter into a certain written Agreement
with Claimant, INTERNATIONAL CONTRACTORS, INC., as General Contractor, whereby
Claimant agreed to provide certain labor, material and work to build out the tenant improvements
for CIRCUIT CITY STORES, INC., Store No. 4195 (the "Project"), all as more fully set forth in
said Agreement, for the sum of *One Million Three Hundred Eighty-Six Thousand One Hundred
Twenty-Five Dollars ($1,386,125.00)*.

That pursuant to the special instance and request of the Owner, Claimant provided certain extra
labor, material and work to the Project in the net amount of *Seventy-Two Thousand Three Hundred
Eight and 60/00 Dollars ($72,308.60)* for a total contract price of *One Million Four Hundred Fifty-
Eight Thousand Four Hundred Thirty-Three and 60/100 Dollars ($1,458,433.60)*.

On October 3, 2008, Claimant completed all that was required to be done by said Agreement. That
as of the date hereof, Owner is entitled to credits in the amount of *One Million Two Hundred Forty-
Four Thousand Seven Hundred Sixty-Nine and 93/100 Dollars ($1,244,769.93)* leaving due and
owing to the Claimant the sum of *Two Hundred Thirteen Thousand Six Hundred Sixty-Four and
30/100 Dollars ($213,664.30)* for which, with interest, the Claimant claims a lien on said Property,
Project and improvements thereon and on the monies, bonds and/or warrants or other considerations

due or to become due from the Owner as well as court costs and legal fees pursuant to *Illinois Compiled Statutes, Chapter 770, Section 60/17.*

Dated: December 2, 2008

                                    INTERNATIONAL    CONTRACTORS,    INC.,
                                    Mechanic's Lien Claimant,

                                    By: _____
                                        James J. Karras, Its Duly Authorized
                                        Agent and Attorney-In-Fact

STATE OF ILLINOIS
COUNTY OF DUPAGE

## VERIFICATION

JAMES J. KARRAS, being first duly sworn on oath, deposes and states that he is the duly Authorized Agent and Attorney-In-Fact of Lien Claimant, INTERNATIONAL CONTRACTORS, INC., an Illinois corporation; that he is authorized to sign this Verification of the foregoing Original Contractor's Claim for Lien Pursuant to Illinois Compiled Statutes, Chapter 770, Section 60/1, et seq.; that he has read the above and foregoing ORIGINAL CONTRACTOR'S CLAIM FOR LIEN, and that the statements set forth therein are true and correct in substance and in fact.

JAMES J. KARRAS, Duly Authorized
Agent and Attorney-In-Fact of
INTERNATIONAL CONTRACTORS, INC., Lien
Claimant

SUBSCRIBED AND SWORN to before me

this ___ day of _____, 2008

_____
NOTARY PUBLIC

OFFICIAL SEAL
WILLIAM D KELLY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/14/09

*This Documents has been prepared by and
after recording should be returned to:*

James J. Karras, Esquire
KELLY & KARRAS, LTD.
619 Enterprise Drive, Suite 205
Oak Brook, Illinois 60523
(630) 575-0202

THAT PART OF THE NORTHEAST QUARTER AND THE SOUTHEAST QUARTER OF SECTION 33, TOWNSHIP 42 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

PIN   01-33-200-001
      01-33-200-012
      01-33-200-013
      01-33-200-014
      01-33-200-015
      01-33-200-017

EXHIBIT "A"



Doc#: 0832324055 Fee: $30.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 11/18/2008 01:01 PM Pg: 1 of 4

## SUBCONTRACTOR'S NOTICE AND CLAIM FOR LIEN

STATE of ILLINOIS       ) ss:
COUNTY of COOK          )

Claimant, *North American Roofing Services, Inc.*, 41 Dogwood Rd., Asheville, NC 28806 of *Buncombe County, State of North Carolina*, hereby files a notice and claim for lien against Arboretum of South Barrington, LLC, 406 Skokie Blvd., Suite 405, Northbrook, IL 60062, Owner, and Circuit City Stores, Inc. 9950 Maryland Drive, Richmond, VA 23233, Contractor, and states:

That on March 26, 2008, the owner(s) owned the following described land in the County of Cook, State of Illinois to wit:

PIN #s: 01-33-200-007-0000; 01-33-200-012-0000; 01-33-200-013-0000; 01-33-200-014-0000; 01-33-200-015-0000; 01-33-200-017-0000. See attached Legal Description attached hereto.

Commonly known as: Circuit City #4186, 100 Higgins Rd., South Barrington, IL.

That on March 26, 2008, said contractor made a subcontract with claimant to provide Roofing, related materials and/or labor, for said improvement and that on September 22, 2008, claimant completed delivery of materials and/or labor to the value of $106,822.00.

That said contractor is entitled to credits on account as follows:    $0.00.

leaving a balance due, unpaid and owing to claimant and, after allowing all credits, the sum of $106,822.00 for which, with interest, claimant claims a lien on said land and improvement and on the monies or other considerations due or to become due from the owner under said contract against said contractor and owner(s).

                                North American Roofing Services, Inc.

                    BY: _____
                                Allan R. Pepper of Lienguard, Inc., Agent for
                                North American Roofing Services, Inc.
                                41 Dogwood Rd., Asheville, NC 28806

File No.: 84-167-0-1

0882394055 Page: 2 of 4

STATE of ILLINOIS      ) ss.
COUNTY of DUPAGE      )

Affiant, Allan R. Popper, being first duly sworn, on oath deposes and says that he is the agent of claimant, and that he has read the foregoing notice and claim for lien and knows the contents thereof; and that all statements therein contained are true.

ALLAN R. POPPER, of Lienguard, Inc., Agent for
North American Roofing Services, Inc.
41 Dogwood Rd., Asheville, NC 28806

SUBSCRIBED AND SWORN to before me
on November 17, 2008.

C. DANIELLE DOMAN, Notary Public

OFFICIAL SEAL
C. DANIELLE DOMAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:00/12/12

File No: 24447-9-1

Prepared by:        Allan R. Popper        Mail to:      Lienguard, Inc.
                    Lienguard, Inc.                      1000 Jorie Blvd., Ste. 270
                    1000 Jorie Blvd., Ste. 270           Oak Brook, IL 60523
                    Oak Brook, IL 60523

### EXHIBIT A

#### Legal Description of the Shopping Center

THAT PART OF THE NORTHEAST QUARTER AND THE SOUTHEAST QUARTER OF SECTION 33, TOWNSHIP 42 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 33; THENCE SOUTH 00 DEGREES 02 MINUTES 15 SECONDS WEST ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER OF SECTION 33, A DISTANCE OF 780.49 FEET TO THE NORTH RIGHT OF WAY LINE OF ILLINOIS ROUTE NO. 72 (HIGGINS ROAD) AS MONUMENTED AND OCCUPIED; THENCE NORTH 69 DEGREES 18 MINUTES 19 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE, A DISTANCE OF 2766.41 FEET TO A POINT ON THE EAST RIGHT OF WAY LINE OF ILLINOIS ROUTE NO. 59 ACCORDING TO THE PLAT THEREOF RECORDED AS DOCUMENT NO. 11194086; THENCE NORTH 00 DEGREES 11 MINUTES 17 SECONDS WEST ALONG SAID EAST RIGHT OF WAY LINE OF ILLINOIS ROUTE NO. 59, A DISTANCE OF 1096.63 FEET TO A POINT ON A NON-TANGENT CURVE; THENCE SOUTHEASTERLY ALONG A CURVE CONCAVE TO THE NORTHEAST HAVING A RADIUS OF 50.00 FEET AN ARC DISTANCE OF 80.49 FEET TO A POINT OF COMPOUND CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 72.08 FEET AND A BEARING OF SOUTH 46 DEGREES 18 MINUTES 29 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 467.00 FEET AN ARC DISTANCE OF 68.92 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 68.86 FEET AND A BEARING OF NORTH 83 DEGREES 20 MINUTES 49 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE SOUTH HAVING A RADIUS OF 798.00 FEET AN ARC DISTANCE OF 365.16 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 361.98 FEET AND A BEARING OF SOUTH 87 DEGREES 46 MINUTES 18 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 552.00 FEET AN ARC DISTANCE OF 125.61 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 125.34 FEET AND A BEARING OF SOUTH 81 DEGREES 10 MINUTES 53 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE SOUTH HAVING A RADIUS OF 198.00 FEET AN ARC DISTANCE OF 66.38 FEET TO A POINT OF REVERSE CURVATURE, THE

CHORD OF SAID ARC HAVING A LENGTH OF 66.07 FEET AND A BEARING OF SOUTH 78 DEGREES 06 MINUTES 48 SECONDS EAST; THENCE EASTERLY ALONG A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 30.00 FEET AN ARC DISTANCE OF 35.16 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 33.18 FEET AND A BEARING OF NORTH 77 DEGREES 55 MINUTES 47 SECONDS EAST; THENCE NORTHEASTERLY ALONG A CURVE CONCAVE TO THE SOUTHEAST HAVING A RADIUS OF 198.00 FEET AN ARC DISTANCE OF 38.98 FEET TO A POINT OF REVERSE CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 38.91 FEET AND A BEARING OF NORTH 50 DEGREES 11 MINUTES 41 SECONDS EAST; THENCE NORTHEASTERLY ALONG A CURVE CONCAVE TO THE NORTHWEST HAVING A RADIUS OF 232.00 FEET AN ARC DISTANCE OF 125.75 FEET TO A POINT OF COMPOUND CURVATURE, THE CHORD OF SAID ARC HAVING A LENGTH OF 124.21 FEET AND A

BEARING OF NORTH 40 DEGREES 30 MINUTES 36 SECONDS EAST; THENCE
NORTHEASTERLY ALONG A CURVE CONCAVE TO THE NORTHWEST HAVING A RADIUS
OF 754.00 FEET AN ARC DISTANCE OF 60.64 FEET TO A POINT OF NON-TANGENCY
HEREINAFTER REFERRED TO AS POINT 'A'. THE CHORD OF SAID ARC HAVING A
LENGTH OF 60.62 FEET AND A BEARING OF NORTH 22 DEGREES 40 MINUTES 42
SECONDS EAST; THENCE SOUTH 51 DEGREES 22 MINUTES 16 SECONDS EAST ALONG
A LINE HEREINAFTER REFERRED TO AS LINE "A", A DISTANCE OF 287.96 FEET;
THENCE SOUTH 37 DEGREES 31 MINUTES 37 SECONDS WEST, 211.19 FEET TO A
POINT OF CURVATURE; THENCE SOUTHWESTERLY ALONG A CURVE CONCAVE TO
THE NORTHWEST HAVING A RADIUS OF 233.00 FEET AN ARC DISTANCE OF 42.15 FEET
TO A POINT ON A NON-TANGENT CURVE, THE CHORD OF SAID ARC HAVING A LENGTH
OF 43.08 FEET AND A BEARING OF SOUTH 42 DEGREES 49 MINUTES 56 SECONDS
WEST; THENCE SOUTHERLY ALONG A CURVE CONCAVE TO THE WEST HAVING A
RADIUS OF 90.00 FEET AN ARC DISTANCE OF 40.31 FEET, THE CHORD OF SAID ARC
HAVING A LENGTH OF 39.98 FEET AND A BEARING OF SOUTH 04 DEGREES 39 MINUTES
01 SECOND EAST; THENCE SOUTH 69 DEGREES 18 MINUTES 19 SECONDS EAST,
220.11 FEET; THENCE NORTH 20 DEGREES 41 MINUTES 41 SECONDS EAST, 27.00
FEET; THENCE SOUTH 69 DEGREES 18 MINUTES 19 SECONDS EAST, 191.54 FEET;
THENCE NORTH 20 DEGREES 41 MINUTES 41 SECONDS EAST, 105.23 FEET; THENCE
NORTH 38 DEGREES 37 MINUTES 44 SECONDS EAST, 30.67 FEET TO THE
SOUTHEASTERLY EXTENSION OF AFORESAID LINE "A"; THENCE SOUTH 51 DEGREES
22 MINUTES 16 SECONDS EAST ALONG THE SOUTHEASTERLY EXTENSION OF SAID
LINE "A", 128.74 FEET TO A POINT ON SAID SOUTHEASTERLY EXTENSION OF LINE "A"
THAT IS 795.95 FEET SOUTHEASTERLY OF, MEASURED ALONG SAID LINE "A" AND ITS'
SOUTHEASTERLY EXTENSION, AFORESAID POINT "A"; THENCE NORTH 38 DEGREES 37
MINUTES 44 SECONDS EAST, A DISTANCE OF 83.15 FEET TO THE WEST LINE OF THE
EAST 15.35 CHAINS OF THE AFORESAID NORTHEAST QUARTER OF SECTION 33;
THENCE NORTH 00 DEGREES 04 MINUTES 45 SECONDS WEST ALONG SAID WEST
LINE, A DISTANCE OF 476.54 FEET; THENCE NORTH 89 DEGREES 40 MINUTES 35
SECONDS EAST, A DISTANCE OF 455.10 FEET; THENCE SOUTH 00 DEGREES 04
MINUTES 45 SECONDS EAST PARALLEL WITH THE EAST LINE OF SAID NORTHEAST
QUARTER, A DISTANCE OF 422.20 FEET; THENCE SOUTH 45 DEGREES 12 MINUTES 05
SECONDS EAST, A DISTANCE OF 141.12 FEET; THENCE NORTH 89 DEGREES 40
MINUTES 35 SECONDS EAST, A DISTANCE OF 824.01 FEET TO THE EAST LINE OF SAID
NORTHEAST QUARTER; THENCE SOUTH 00 DEGREES 04 MINUTES 45 SECONDS EAST
ALONG SAID EAST LINE, A DISTANCE OF 910.39 FEET TO THE POINT OF BEGINNING, IN
COOK COUNTY, ILLINOIS.

01-33-200-007-0000
01-33-200-012-0000
01-33-200-013-0000
01-33-200-014-0000
01-33-200-015-0000
01-33-200-017-0000