## EXHIBIT C-1

<u>Possession Date Notice</u>

[Letterhead of Landlord]

_____, 200__

[via overnight courier
service per Article XXII of the Lease]

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention:  Vice President of Real Estate

       Re:     Lease Agreement dated as of _____, 200__ (the "**Lease**"), between SPRING HILL DEVELOPMENT PARTNERS, GP, a Georgia general partnership, as landlord ("**Landlord**"), and CIRCUIT CITY STORES, INC., as tenant ("**Tenant**"), with respect to certain retail premises (the "**Premises**") <u>located in The Crossings of Spring Hill Shopping Center, Spring Hill (_____ County), Tennessee _____</u>.

Gentlemen:

     In accordance with the provisions of Section 2.05(a) of the Lease, Landlord hereby informs the Tenant that the Possession Date (including, without limitation, the Delivery of the Land) shall take place at 8:00 A.M. on _____, 200__.  This notice shall constitute the Possession Date Notice referred to in Section 2.05 of the Lease.  All capitalized terms as used in this Possession Date Notice shall have the same meaning as set forth in the Lease, unless otherwise defined in this Possession Date Notice.

                    **SPRING HILL DEVELOPMENT PARTNERS,
                    GP**, a Georgia general partnership

                    By:_____
                            _____, (Vice) President

cc:     Circuit City Stores, Inc.
       9950 Mayland Drive
       Richmond, Virginia 23233
       Attention:  General Counsel

       Sutherland Asbill & Brennan LLP
       1114 Avenue of the Americas, 40th Fl.
       New York, NY 10036
       Attn: David J. Rabinowitz, Esq.

WO 729984.13

# EXHIBIT D

| Form **W-9**<br>(Rev. November 2005)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
| --- | --- | --- |

Name (as shown on your income tax return)

Business name, if different from above

Check appropriate box: ☐ Individual/ Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ .............. ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

*Print or type  See Specific Instructions on page 2.*

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

⎵ ⎵ ⎵ | ⎵ ⎵ | ⎵ ⎵ ⎵ ⎵

or

Employer identification number

⎵ ⎵ | ⎵ ⎵ ⎵ ⎵ ⎵ ⎵ ⎵

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

| Sign<br>Here | Signature of<br>U.S. person ▶ | Date ▶ |
| --- | --- | --- |

### Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

In 3 above, if applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes, you are considered a person if you are:

- An individual who is a citizen or resident of the United States,
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or
- Any estate (other than a foreign estate) or trust. See Regulations sections 301.7701-6(a) and 7(a) for additional information.

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

- The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X

Form **W-9** (Rev. 11-2005)

D-1

## EXHIBIT E

### Commencement Date and Expiration Date Agreement

THIS COMMENCEMENT DATE AND EXPIRATION DATE AGREEMENT, made as of the ____ day of _____, 200___, by and between **SPRING HILL DEVELOPMENT PARTNERS, GP,** a Georgia general partnership ("**Landlord**") and **CIRCUIT CITY STORES, INC.,** a Virginia corporation ("**Tenant**").

## W I T N E S S E T H :

WHEREAS, Landlord is the owner of a certain shopping center known as The Crossings of Spring Hill Shopping Center (the "**Shopping Center**"), situated in Spring Hill (Maury County), Tennessee;

WHEREAS, by that certain Lease Agreement dated as of _____ __, 2007 (the "**Lease**"), Landlord leased a portion (the "**Premises**") of the Shopping Center to Tenant;

WHEREAS, Tenant is in possession of the Premises and the Term of the Lease has commenced; and

WHEREAS, under Section 2.10 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease.

NOW, THEREFORE, Landlord and Tenant agree as follows:

1.    The Commencement Date occurred on _____, 200___.

2.    The **Initial Lease Term** shall expire on January 31, 20___, unless Tenant exercises any option to extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

3.    The date of commencement of the **first Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless Tenant exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

4.    The date of commencement of the **second Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless Tenant exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

5.    The date of commencement of the **third Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless the Lease terminates earlier as provided in the Lease.

5.      The date of commencement of the **fourth Extension Period** shall be February 1, 20\_\_\_, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20\_\_\_, unless the Lease terminates earlier as provided in the Lease.

5.      The date of commencement of the **fifth Extension Period** shall be February 1, 20\_\_\_, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20\_\_\_, unless the Lease terminates earlier as provided in the Lease.

6.      Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Commencement Date and Expiration Date Agreement to be executed the date and year first above written.

**LANDLORD:**

**Spring Hill Development Partners, GP,** a
Georgia general partnership

By:_____
Name:_____
Title:_____

**TENANT:**

**CIRCUIT CITY STORES, INC.,** a Virginia
corporation

By:_____
Name:
Title:

E-2

WO 729984.13

**EXHIBIT F**

Prohibited Uses

(a)      service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments) or other non-retail uses occupying in the aggregate more than ten percent (10%) of the Floor Area of the Developer Tract, provided that (i) no such tenant shall be located within 300 feet of the Premises, and (ii) no single tenant or occupant shall occupy more than 6,500 square feet of Floor Area (contiguous or otherwise).

(b)      a banquet hall, auditorium or other place of public assembly;

(c)      a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers); provided, however, that the foregoing shall not be applicable to incidental on-site employee training.

(d)      Any use which emits an obnoxious odor, noise or sound which can be heard or smelled outside of any Building in the Shopping Center.

(e)      An operation primarily used as a storage warehouse operation and any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation.

(f)      Any "second hand" store. "surplus" store, or pawn shop; provided, however, this prohibition shall not be deemed to prohibit stores such as Marshalls, Ross Stores, T.J. Maxx and/or Steinmart (by way of example only) that sell merchandise that may have been purchased in bulk from a liquidator or other merchandiser.

(g)      Any mobile home park, trailer court, labor camp, junkyard, or stockyard; provided, however, this prohibition shall not be applicable to the temporary use of construction trailers during periods of construction, reconstruction or maintenance.

(h)      Any dumping, disposing, incineration or reduction of garbage; provided, however, this prohibition shall not be applicable to garbage compactors located near the rear of any Building.

(i)      Any fire sale, bankruptcy sale (unless pursuant to a court order) or auction house operation.

(j)      Any central laundry, dry cleaning plant or laundromat; provided, however, this prohibition shall not be applicable to nominal supportive facilities for on-site service oriented to pickup and delivery by the ultimate consumer as the same may be found in retail shopping centers in the metropolitan area where the Shopping Center is located.

(k)      Any automobile, truck, trailer or recreational vehicle sales, leasing, display or body shop repair operation.

F-1

(l)    Any bowling alley or skating rink.

(m)    Any movie theater or live performance theater; provided, however, this prohibition shall not he applicable to a movie theater on the Expansion Property (as defined in the OEA), so long as such theater is not located within 500 feet of the Target Tract or the Kohl's Tract.

(n)    Any hotel, motel, short or long term residential use, including but not limited to: single family dwellings, townhouses, condominiums, other multi-family units, and other forms of living quarters, sleeping apartments or lodging rooms; provided, however, this prohibition shall not he applicable to a hotel or motel on the Expansion Property, so long as such hotel or motel is not located within 500 feet of the Target Tract or the Kohl's Tract.

(o)    Any veterinary hospital or animal raising or boarding facility; provided, however, this prohibition shall not be applicable to pet shops or pet supply stores. Notwithstanding the forgoing exception, any veterinary or boarding services provided in connection with the operation of a pet shop or pet supply store shall only be incidental to such operation; the boarding of pets as a separate customer service shall he prohibited; all kennels, runs and pens shall be located inside the Building; and the combined incidental veterinary and boarding facilities shall occupy no more than fifteen percent (15%) of the Floor Area of the pet shop.

(p)    Any mortuary or funeral home.

(q)    Any establishment selling or exhibiting "obscene" material.

(r)    Any establishment selling or exhibiting drug-related paraphernalia or which exhibits either live or by other means to any degree, nude or partially clothed dancers or wait staff.

(s)    Any bar, tavern, Restaurant or other establishment whose reasonably projected annual gross revenues from the sale of alcoholic beverages for on-premises consumption exceeds thirty-five percent (35%) of the gross revenues of such business.

(t)    Any health spa, fitness center or workout facility, or any massage parlors or similar establishments, provided that one (1) health spa, fitness center or workout facility specializing in quick workouts (such as a thirty (30) minute workout) of not more than three thousand (3,000) square feet of Floor Area may be located on each of the Developer Tract Parcel 2, the Developer Tract Parcel 4 and Pad 1 (each as defined in the OEA); provided further that one (1) first-class day spa may be located on Pad 1; provided further, this prohibition shall not be applicable to any health spa, fitness center or workout facility on the Expansion Property that is located at least five hundred (500) feet from the Building Areas on each of the Target Tract and the Kohl's Tract.

(u)    Any flea market, amusement or video arcade, pool or billiard hall, car wash or dance hall, except that amusement or video games, pool or billiard tables shall be permitted as incidental to and part of the operation of a business, so long as such games and/or tables are not located in more than 5% of the Floor Area of an Occupant (but in no event shall this exception apply to businesses located on the Developer Tract Parcel 2, the Developer Tract Parcel 4 or the

F-2

Developer Tract Parcel 6); notwithstanding anything in the foregoing to the contrary, a Restaurant of the type, quality and similarity to those currently (as of the date of the OEA) operated by "Chuck E. Cheese's" and "Dave & Buster's" shall be allowed (but not on the Developer Tract Parcel 2, the Developer Tract Parcel 4 or the Developer Tract Parcel 6).

(v)     Any training or educational facility, including but not limited to: beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this prohibition shall not be applicable to on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center.

(w)     Any gambling facility or operation, including but not limited to: off-track or sports betting parlor; table games such as blackjack or poker; slot machines, video poker/blackjack/keno machines or similar devices; or bingo hall. Notwithstanding the foregoing, this prohibition shall not be applicable to government sponsored gambling activities or charitable gambling activities, so long as such activities are incidental to the business operation being conducted by the Occupant.

**Ross**:

(c)     Retail Use.     Tenant has entered into this Lease in reliance upon representations by Landlord that Landlord's Parcel is and shall remain retail in character, and, further, no part of Landlord's Parcel shall be used for office or residential purposes or as a theater, auditorium, meeting hall, school, church or other place of public assembly, "flea market," gymnasium, veterinary services, overnight stay pet facilities, health club (except as specifically provided in Section 3.2.1(b) below), dance hall, strip club, billiard or pool hall, massage parlor, video game arcade (except in conjunction with a Chuck E Cheese), bowling alley, skating rink, car wash, facility for the sale, display, leasing or repair of motor vehicles, night club, adult books or adult audio/video products or other adult products (which are defined as stores in which at least ten percent (10%) of the inventory is not available for sale or rental to children under fifteen (15) years old because such inventory explicitly deals with or depicts human sexuality), provided that the foregoing restriction shall not prohibit the operation of a recognized full line bookstore or video store such as Borders Books, Books-A-Million or Barnes & Noble. No ATM or similar machine shall be permitted in the Shopping Center within one hundred (100) feet of the front and side perimeter walls of the Store. Further, no restaurant or other "High Intensity Parking User" (as hereinafter defined) shall be permitted in the Inline Building in Landlord's Parcel within two hundred (200) feet of the front door of the Store. A "High Intensity Parking User" is a tenant or occupant whose use requires more than five (5) parking spaces per one thousand (1,000) square feet of Leasable Floor Area in accordance with governmental regulations. The foregoing use restrictions are referred to herein as the Ross Prohibited Uses. All parking ratios shall be consistent with the requirements of the REA.

(b)     Exceptions to Retail Use. Notwithstanding Section 3.2.1(a) above to the contrary, the following uses shall be permitted in the Shopping Center:

F-3

(i)    One (1) first class health club, provided such use is located more than two hundred fifty (250) feet from the front and side perimeter walls of the Store and does not exceed four thousand (4,000) square feet of Leasable Floor Area in the aggregate;

(ii)    One (1) first class day spa such as Spa Sydell or similar operator, provided that such use is located more than two hundred (200) feet from the front and side perimeter walls of the Store and does not exceed four thousand (4,000) square feet of Leasable Floor Area in the aggregate;

(iii)    One (1) pet store with national reputation such as PetSmart or Petco, with veterinary services and overnight stay pet facilities shall be permitted in the Shopping Center, provided that the nearest exterior wall of such pet store shall not be any closer than one hundred fifty (150) feet to the exterior storefront of the Store; and

(iv)    One (1) car wash shall be permitted on Outparcel A or Outparcel B only.

## PETsMART:

**Prohibited Uses.** The following uses (collectively referred to as "Prohibited Uses" and individually as a "Prohibited Use") are prohibited during the Term of the Lease (a) in any portion of the Shopping Center and/or Outparcels, and (b) in any portion of the Landlord's Parcel: nuisance; any use causing loud noises or offensive odors (including any business using exterior loud speakers but excluding speakers used for drive-through windows on the Outparcels); manufacturing facility; dry cleaner (except facilities for drop off and pick up of clothing cleaned at another location); any facility for the sale, lease or rental of automobiles, trucks, motorcycles, recreational vehicles, boats or other vehicles; automobile repair shop or service station or any facility storing or selling gasoline or diesel fuel in or from tanks; used clothing or thrift store or liquidation outlet; massage parlor; adult book shop or adult movie house; mortuary or funeral parlor; coin operated laundry; cocktail lounge, bar or tavern or sale of alcoholic beverages, whether or not packaged, except in conjunction with a restaurant permitted hereunder and Permitted Store (defined below); night club; cinema or theater; place of recreation (including but not limited to bowling alley, skating rink, carnival, game arcade or health spa, provided, however (i) one first class day spa shall be permitted in each of Shops 1, Shops 2 and Shops 5 shown on Exhibit A, and (ii) a workout facility specializing in quick workouts such as Curves for Women and not occupying more than two thousand (2,000) square feet of Gross Floor Area shall be permitted in Shops 5, and (iii) workout facilities specializing in quick workouts such as a Curves for Women shall be permitted in Shops 1 and Shops 2); church; or any other use inconsistent with the operation of a high quality retail shopping center. No restaurants of any size shall be located within three hundred (300) feet of the Premises (excluding any interior cafes incidental to a permitted retail use). In addition, the following uses on Landlord's Parcel must first be approved in writing by Tenant: drive-throughs (unless located on an Outparcel); children's recreational, educational or day-care facility; restaurants occupying more than twenty-five hundred (2,500) square feet of Gross Floor Area (unless located on the Lease Pad, Shops 1 or Shops 2 as shown on Exhibit A, and except for Excluded Restaurants as hereinafter defined);

F-4

offices; professional uses; and schools of any nature except in conjunction with animal training or obedience training classes associated with Tenant's Primary Business. As used herein, "school" includes, but is not limited to, a beauty school, barber college, reading room, place of instruction or any other operation serving primarily students or trainees rather than retail customers. As used herein "Excluded Restaurant" shall refer to any restaurant in Shops 5; provided however, any restaurant in Shops 5 occupying more than three thousand six hundred (3,600) square feet or Gross Floor Area, or any restaurant that offers table service and is located in Shops 5 shall have a main entrance that does not face the Tenant's Building. As used herein "Permitted Store" shall mean (i) an upscale retail store selling packaged and sealed alcoholic beverages for off premises consumption and commonly found in first class shopping center and located in Shops 1, Shops 2 or Shops 5, or (ii) a gourmet food preparation store whose primary business is the preparation of meals and includes as incidental thereto wine samples for on premises consumption, but which does not include a cocktail lounge, bar or tavern, and is commonly found in first class shopping centers. It is the intent of this Section that the Shopping Center shall be devoted to high quality retail uses and that the parking and the other common facilities shall not be burdened by either excessive or protracted use.

### Books A Million:

Subject to the rights of any tenants under leases existing prior to the date hereof, the Landlord shall not use or permit the use of any portion of the Center as a massage parlor, "adult book or adult video store" or similar business catering to pornographic interests, amusement center or game room (featuring, without limitation, pinball, electric and video game machines), bowling alley, funeral parlor, a tire, battery or auto parts retail location (unless repairs are strictly prohibited in the Common Area of the Center), car wash, skating rink, head shop, off-track betting facility, billiard parlor, automobile leasing facility or a business operation generally referred to as a "Ilea market", night club or comedy club, country and western bar, teenage facility, dance hall, cafeteria, bingo parlor or a close-out, thrift, good will or similar store such as "Big Lots", "Bud's" or "Odd Lots" (the foregoing not being intended to exclude however, any upscale business operation dealing in good quality merchandise or property obtained by purchase or consignment from individuals, estates, or other businesses).

(x)    Notwithstanding anything contained in this Exhibit F, nothing herein shall prohibit Tenant from selling any Products, as such term is defined in Section 1.01P of this Lease, including, without limitation, the sale, installation and repair of automobile electronics.

WO 729984.13

## EXHIBIT G

Height Restrictions**

Building Heights
Spring Hill, TN

No building shall exceed one (1) story, nor the following height restrictions from the finished floor elevation without prior written consent of the approving parties.

|  | Building Height | Feature |
|---|---|---|
| **Target Tract:** | 29 feet | 36 feet |
| Tower |  | 43 feet |
| **Developer Tract** |  |  |
| Parcel        2 | 26 feet | 28 feet |
| Tower |  | 40 feet |
| Parcel        3 | 26 feet | 28 feet |
| Parcel        4 | 26 feet | 28 feet |
| Tower |  | 40 feet |
| Parcel        5 | 30 feet | 34 feet |
| Pad 1 & 2 | 26 feet | 28 feet |
| Tower |  | 40 feet |
| Parcel        6 | 28 feet | 33 feet |
| **Kohl's Tract** | 34 feet | 34 feet |
| **Outparcels** | 26 feet | 28 feet |

Outparcel 8 may have a 30 foot chimney, representing less than 20% of the total perimeter of the building.

The height of any Building or feature shall be measured perpendicular from the finished floor elevation to the top of the structure, including any screening or penthouse.

** Subject to such additional consent(s) which may be granted pursuant to Exhibit O

G-1



F-2

# EXHIBIT H

Existing Exclusives

None

WO 729984.13

## EXHIBIT I

### LEASE RECOGNITION AGREEMENT

**THIS LEASE RECOGNITION AGREEMENT** (this "Agreement") is entered into this_____ day of _____, 200__ (the "Effective Date") between _____ ("Master Landlord"), _____ ("Landlord"), _____, with its principal office at _____ ("Tenant")

### RECITALS:

This Agreement is entered into with reference to the following facts:

A.    Master Landlord and Landlord are presently landlord and tenant, respectively, pursuant to a Lease Agreement dated September _____ 2007 (the "Master Lease"), covering the real property and improvements located in The Crossings of Spring Hill Shopping Center (the "Shopping Center"). A legal description of the Shopping Center is attached to this Agreement as **Exhibit A**. Pursuant to the Master Lease, Landlord leases the Premises (as defined in the Master Lease) from Master Landlord.

B.    Landlord and Tenant are presently landlord and tenant, respectively, pursuant to a [Sublease Agreement] dated _____, 200__ (the "Lease"), covering a portion of the Premises (the "Subleased Premises").

C.    Master Landlord, Landlord and Tenant desire to assure Tenant's possession of the Subleased Premises under the provisions of the Lease regardless of the expiration or termination of the Master Lease.

### AGREEMENT

In consideration of their mutual covenants and agreements contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party, Master Landlord, Landlord and Tenant hereby agree:

1.    Master Landlord has received a copy of the Lease and consents to the provisions of the Lease.

2.    Master Landlord and Landlord represent and warrant to Tenant as of the Effective Date:

   (a)    neither Master Landlord nor Landlord is in default under the Master Lease; and

   (b)    neither Master Landlord nor Landlord has sent to, or received from, the other a notice of default that has not been cured.

I-1

3.    Master Landlord and Landlord agree not amend the Master Lease in any manner that adversely affects Tenant or Tenant's rights under the Lease.

4.    Landlord is directly and primarily responsible for performance of all obligations of tenant under the Master Lease (except as may be expressly set forth in Section 17.01 of the Master Lease).

5.    Master Landlord agrees that whenever it has an obligation with respect to the Premises or its consent or approval is required for any action of Master Landlord under the Master Lease, then, to the extent such obligation, consent or approval relates to the Subleased Premises or Tenant's use and occupation thereof, it will perform such obligation in accordance with the terms and conditions of the Master Lease, and, subject to the applicable terms of the Master Lease, will not unreasonably withhold or unduly delay such consent or approval.

6.    Notwithstanding anything to the contrary contained in the Master Lease, Master Landlord agrees to provide notice to Tenant in the event Landlord defaults under the Master Lease and Landlord fails to cure such default within the time periods provided in the Master Lease. Tenant shall have the right, but not the obligation, to cure Landlord's default under the Master Lease in the event Landlord fails to do so pursuant to the terms of the Master Lease. Landlord agrees Tenant may offset from up to fifty percent (50%) of the monthly Base Rent coming due under the Lease all reasonable and actual costs, including reasonable attorneys' fees, incurred by Tenant in curing Landlord's default.

7.    Upon expiration or termination of the Master Lease or Landlord's right of possession thereunder:

   (a)    Master Landlord will not disturb Tenant's use of the Subleased Premises so long as Tenant is not in default under the Lease beyond applicable notice and cure periods in the Lease.

   (b)    Tenant will attorn to Master Landlord as landlord under the Lease, and Master Landlord will accept Tenant's attornment.

   (c)    Master Landlord and Tenant will recognize the Lease as a direct lease between Master Landlord and Tenant and will be bound to each other under the provisions of the Lease; however, Tenant is not obligated to pay Master Landlord any amounts due under the Lease until Tenant receives notice from Master Landlord that the Master Lease has expired or has been terminated.

   (d)    If Tenant is in default under the Lease at the time the Master Lease expires or is terminated, Master Landlord will have the same remedies against Tenant that Landlord would have had against Tenant under the Lease if the Master Lease was still in effect.

   (e)    If Landlord is in default under the Lease at the time the Master Lease expires or is terminated, Tenant will have the same remedies against Master Landlord that

WO 729984.13

Tenant would have had against Landlord under the Lease if the Master Lease was still in effect.

8.    Any notice required to be given to Master Landlord, Landlord or Tenant under the provisions of this Agreement is deemed received on receipt or refusal to accept delivery, provided the notice is in writing and mailed by certified mail return receipt requested or sent by overnight courier to the appropriate address listed in the preamble paragraph, or to any other address Master Landlord, Landlord or Tenant, as applicable, may furnish to each other in writing.

9.    Master Landlord, Landlord and Tenant acknowledge they and, if they so choose, their respective counsel have reviewed and revised this Agreement and the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party will not be employed in the interpretation of this Agreement.

10.    This Agreement contains the entire agreement between Master Landlord, Landlord and Tenant and may only be modified by written instrument signed by Master Landlord, Landlord and Tenant.

11.    This Agreement inures to the benefit of Master Landlord, Landlord, Tenant and their respective successors and assigns and shall be governed in accordance with the laws of the State of Tennessee.

[Signatures Appear on Following Page]

I-3

IN WITNESS WHEREOF, the parties have caused this Recognition Agreement to be executed under seal the date first above written.

**MASTER LANDLORD:**

**SPRING HILL DEVELOPMENT PARTNERS, GP,** a Georgia general partnership

By:_____
Name:_____
Title:_____

**LANDLORD:**

**CIRCUIT CITY STORES, INC.,** a Virginia corporation

By:_____
Name:_____
Title:_____

**TENANT:**

_____

By:_____
Name:_____
Title:_____

I-4

STATE OF _____ )
                                                    ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he/she signed his/her name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____


STATE OF _____ )
                                                    ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of SPRING HILL DEVELOPMENT PARTNERS, GP, the company described in and which executed the above instrument and that he/she signed his/her name thereto by order of the _____ of said company.

_____
Notary Public

My Commission Expires:

_____

I-5

STATE OF _____)
                            ) : ss.
COUNTY OF _____)

       On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                       _____

                                       Notary Public

My Commission Expires:

_____

## EXHIBIT J

### Subordination, Non-Disturbance and Attornment Agreement

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT, made as of the _____ day of _____, 200__, by and between **WACHOVIA BANK, NATIONAL ASSOCIATION**, a national banking association, whose address is 230 4th Avenue North, 8th Floor, Nashville, TN 37219, Attn: Commercial Real Estate Services (the "Mortgagee") and **CIRCUIT CITY STORES, INC.**, a Virginia corporation, having an office at, 9950 Mayland Drive, Richmond, Virginia 23233 (the "Tenant").

### W I T N E S S E T H:

WHEREAS, Mortgagee is the holder of a mortgage (the "Mortgage") covering a parcel of land owned by Cousins Properties Incorporated, a _____ corporation (the "Landlord") together with the improvements [to be] erected thereon (said parcel of land and improvements thereon being hereinafter referred to as the "Shopping Center" and being more particularly described on Exhibit A attached hereto and made a part hereof); and

WHEREAS, by a certain Lease Agreement heretofore entered into between Landlord and Tenant dated as of _____ (the "Lease"), Landlord leased to Tenant a portion of the Shopping Center, as more particularly described in the Lease (the "Premises"); and

WHEREAS, a copy of the Lease has been delivered to Mortgagee, the receipt of which is hereby acknowledged; and

[**For mortgages existing as of the date Lease is executed**:    WHEREAS, as an inducement to Tenant to enter into the Lease, [Section 2.04(f)/Section 19.02] thereof provides that the Lease is conditioned upon Landlord obtaining this Agreement from Mortgagee; and

WHEREAS, the parties desire to satisfy the foregoing condition and to provide for the non-disturbance of Tenant by the holder of the Mortgage; and]

[**For mortgages occurring after the Lease is executed**:  WHEREAS, Section 19.01 of the Lease provides that the Lease shall become subject and subordinate to a mortgage encumbering the fee interest of Landlord in and to the Shopping Center if and when a non-disturbance agreement is entered into with respect to such mortgage; and

WHEREAS, the parties hereto desire to effect the subordination of the Lease to the Mortgage and to provide for the non-disturbance of Tenant by Mortgagee.]

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1.     Mortgagee hereby consents to and approves the Lease and the term thereof, including the options to extend the term as set forth in the Lease, and covenants and agrees that

J-1

the exercise by Tenant of any of the rights, remedies and options therein contained shall not constitute a default under the Mortgage.

2.    Tenant covenants and agrees with Mortgagee that the Lease is made and shall continue hereafter to be subject and subordinate to the Mortgage, and to all modifications and extensions thereof (and such subordination shall not lessen or diminish Tenant's rights under the Lease), subject, however, to the provisions of this Agreement.

3.    Mortgagee agrees that so long as the Lease shall be in full force and effect, and so long as Tenant shall not be in default under the Lease beyond any applicable notice and grace period:

(a)    Tenant shall not be named or joined as a party or otherwise in any suit, action or proceeding for the foreclosure of the Mortgage or to enforce any rights under the Mortgage or the bond or note or other obligation secured thereby;

(b)    The possession by Tenant of the Premises and Tenant's rights thereto shall not be disturbed, affected or impaired by, nor will the Lease or the term thereof be terminated or otherwise affected by (i) any suit, action or proceeding brought upon the Mortgage or the bond or note or other obligation secured thereby, or for the foreclosure of the Mortgage or the enforcement of any rights under the Mortgage, or by any judicial sale or execution or other sale of the Premises or the Shopping Center, or any deed given in lieu of foreclosure, or by the exercise of any other rights given to any holder of the Mortgage or other documents as a matter of law, or (ii) any default under the Mortgage or the bond or note or other obligation secured thereby; and

(c)    All condemnation awards and insurance proceeds paid or payable with respect to the Premises or any other part of the Shopping Center shall be applied and paid in the manner set forth in the Lease.

4.    If Mortgagee or any future holder of the Mortgage shall become the owner of the Shopping Center by reason of foreclosure of the Mortgage or otherwise, or if the Shopping Center shall be sold as a result of any action or proceeding to foreclose the Mortgage, or transfer of ownership by deed given in lieu of foreclosure, the Lease shall continue in full force and effect, without necessity for executing any new lease, as a direct lease between Tenant and the then owner of the Shopping Center, as "landlord", upon all of the same terms, covenants and provisions contained in the Lease, and in such event:

(a)    Tenant shall be bound to such new owner under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) and Tenant hereby agrees to attorn to such new owner and to recognize such new owner as "Landlord" under the Lease; and

(b)    Such new owner shall be bound to Tenant under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) which such new owner hereby agrees to assume and perform and Tenant shall, from and after the

K-2

WO 729984.13

date such new owner succeeds to the interest of "landlord" under the Lease, have the same remedies against such new owner for the breach of any covenant contained in the Lease that Tenant might have had under the Lease against Landlord if such new owner had not succeeded to the interest of "landlord"; provided, however, that such new owner shall not be:

(i)      liable for any act or omission of any prior landlord (including Landlord) unless such act or omission continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(ii)     subject to any defenses which Tenant may have against any prior landlord (including Landlord) unless resulting from any default or breach by such prior landlord which continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(iii)    subject to any offsets which Tenant may have against any prior landlord, except to the extent such offsets are expressly provided under the Lease and Mortgagee has received notice thereof and the opportunity to cure within the applicable time periods set forth in the Lease (it being further agreed that offsets under the Lease that were deducted by Tenant prior to the date upon which the new owner succeeds to the interest of such prior landlord shall not be subject to challenge);

(iv)     bound by any annual minimum rent or additional rent which Tenant might have paid for more than one month in advance of its due date under the Lease to any prior landlord (including Landlord), unless such additional rent is paid in accordance with the applicable provisions of the Lease; or

(v)      bound by any amendment or modification of the Lease made without its consent; notwithstanding the foregoing, Mortgagee acknowledges that the Lease specifically provides for amendments thereof upon the occurrence of certain events described in the Lease (such as, for example, an amendment to the Lease confirming the measurement of the Premises), and, by its execution below, Mortgagee agrees to recognize such amendments as part of the Lease, and Mortgagee further agrees that such new owner shall also be bound by such amendment(s) to the Lease, without any consent on the part of Mortgagee or such new owner.

(c)      Tenant's obligations hereunder shall be effective only so long as Mortgagee is bound to Mortgagee's obligations hereunder.

5.      Tenant will notify Mortgagee of any default by Landlord under the Lease which would entitle Tenant to terminate the Lease or abate the rent payable thereunder and agrees that notwithstanding any provision of the Lease, no notice of termination thereof nor any abatement shall be effective unless Mortgagee has received the aforesaid notice and has failed to cure the subject default within the same time period allowed Landlord under the Lease. It is understood that the abatement provisions of this Section relate to abatements by reason of Landlord's default and do not apply to provisions of the Lease whereby Tenant has the automatic right to abate rentals such as, for example, abatement upon casualty or condemnation.

6.      Neither the Mortgage nor any other security instrument executed in connection therewith shall encumber or be construed as subjecting in any manner to the lien thereof, any

K-3

trade fixtures, signs or other personal property at any time furnished or installed by or for Tenant or its subtenants or licensees on the aforementioned property regardless of the manner or mode of attachment thereof.

      7.      Any notices of communications given under this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid, (a) if to Mortgagee, at the address of Mortgagee as hereinabove set forth or at such other address or persons as Mortgagee may designate by notice in the manner herein set forth, or (b) if to Tenant, to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and Sutherland Asbill & Brennan LLP, 1114 Avenue of the Americas, 40th Fl., New York, NY 10036, Attn: David J. Rabinowitz, or such other address or persons as Tenant may designate by notice in the manner herein set forth. All notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) at the address of the addressee.

      8.      This Agreement shall bind and inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors, assigns, and sublessees.

      9.      This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

      10.      This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

      **[to add if Tenant's memorandum of lease has been recorded prior to the subject mortgage]** NOTE: THIS AGREEMENT BY TENANT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL ANY PRIOR MORTGAGES ON THIS PROPERTY HAVE BEEN SATISFIED SO THAT TENANT'S PRIOR AGREEMENTS TO ATTORN TO SAID MORTGAGES AND/OR TO SUBORDINATE ITS LEASE TO SAID MORTGAGES SHALL HAVE BEEN EXTINGUISHED.

      IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

-Signature Page Follows-

K-4

ATTEST:

By:_____

Name:_____

Title:_____

[SEAL]

**MORTGAGEE:**

**WACHOVIA BANK NATIONAL ASSOCIATION**

By:_____

Name:_____

Title:_____


ATTEST:

By:_____

Name:_____

Title:_____

[SEAL]

**TENANT:**

**CIRCUIT CITY STORES, INC.**

By:_____

Name:_____

Title:_____

K-5

STATE OF _____ )
                        ) : ss.
COUNTY OF _____ )

      On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he/she signed his/her name thereto by order of the Board of Directors of said corporation.

                                         _____
                                         Notary Public

My Commission Expires:

_____

STATE OF _____ )
                        ) : ss.
COUNTY OF _____ )

      On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                         _____
                                         Notary Public

My Commission Expires:

_____

K-6

## EXHIBIT K

### Permitted Exceptions

1.      Easements of record in Book 295, Page 433, in the Register's Office of Maury County, Tennessee.

2.      Easements as shown in deed of record in Book 219, Page 384, in the Register's Office of Maury County, Tennessee.

3.      Easements as shown in deed of record in Book 657, Page 330, in the Register's Office of Maury County, Tennessee.

4.      Sanitary Sewer Easement of record in Book 1171, Page 433, in the Register's Office, Maury County, Tennessee.

5.      The following restrictions of record in Book 1204, Page 125, in the Register's Office of Maury County, Tennessee: "No mobile home or temporary form of residential dwelling may be placed or constructed on the property."

6.      Easement for the flow of the waters of the McCormack Branch, and the rights of the public therein.

7.      Rights of upper and lower riparian owners to the flow of the waters of the McCormack Branch   free from diminution or pollution.

8.      Access Easement of record in Book R1902, page 980, Register's Office for Maury County, Tennessee.

9.      Access Easement of record in Book R1923, page 38, Register's Office for Maury County, Tennessee.

10.     Deed of Trust from Spring Hill Development Partners, GP, a Georgia general partnership, Gallatin Management Associates, LLC, a Georgia limited liability company and Dickson Management Associates, LLC, a Georgia limited liability company to TRSTE II, Inc. as Trustee for Wachovia Bank, National Association, dated 05/31/06, filed of record 06/08/06, in Book R1923, Page 48, Register's Office for Maury County, Tennessee, in the original principal amount of $2,550,000.00, as amended in Book R1969, Page 1470, in said Register's Office.

11.     Assignment of Rents and Leases by and between Spring Hill Development Partners, GP, a Georgia general partnership, Gallatin Management Associates, LLC, a Georgia limited liability company, and Dickson Management Associates, LLC, a Georgia limited liability company and Wachovia Bank, National Association of record in Book R1923, page 75, Register's Office for  Maury County, Tennessee, as amended in Book R1970, page 1, in said Register's Office.

K-1

12.   UCC Financing Statement of record in Book R1923, page 95, as amended in Book R1969, page 1342, and as further amended in Book R1984, page 942, of record in the Register's Office for Maury County, Tennessee.

13.   UCC Financing Statement of record in Book R1923, page 88, as amended in Book R1969, page 1330, and as further amended in Book R1984, page 952, of record in the Register's Office for Maury County, Tennessee.

14.   UCC Financing Statements of record in Book R1923, page 101, as amended in Book Book R1969, page 1336, and as further amended in Book R1984, page 947, of record in the Register's Office for Maury County, Tennessee.

15.   Operation and Easement Agreement of record in Book R1969, page 1366, in the Register's Office for Maury County, Tennessee.

16.   Easement Agreement of record in Book R1969, page 1348, in the Register's Office for Maury County, Tennessee.

17.   Maintenance and Easement Agreement of record in Book R1969, page 1316, in the Register's Office for Maury County, Tennessee.

18.   All matters as shown on the plat of record in Plat Book P17, page 113, Register's Office for Maury County, Tennessee.

19.   Agreement between Kohl's Department Stores, Inc. and Spring Hill Development Partners, GP, Dickson Management Associates, LLC, and Gallatin Management Associates, LLC **recorded in Book 1970, Page 14 in the Register's Office, Maury County, TN.**

20.   Memorandum of Lease between Spring Hill Development Partners, GP, Gallatin Management Associates, LLC and Dickson Management Associates, LLC, and Cracker Barrel Old Country Store, Inc., recorded in Book R2003, Page 1272 in the Register's Office, Maury County, TN.

21.   Memorandum of Lease dated April 27, 2007, between Spring Hill Development Partners, GP, Gallatin Management Associates, LLC and Dickson Management Associates, LLC, and Logan's Roadhouse, Inc. recorded in Book R2004, Page 40 in the Register's Office, Maury County, TN.

K-2

## EXHIBIT L

Memorandum of Lease

**After Recording, Return to:**

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention: General Counsel

_____

(The Above Space for Recorder's Use Only)

THIS MEMORANDUM OF LEASE, made as of _____, 2007 by and between **SPRING HILL DEVELOPMENT PARTNERS, GP,** a Georgia general partnership, having an office at 25425 Center Ridge Road, Cleveland, Ohio 44145-4122 ("**Landlord**"), and **CIRCUIT CITY STORES, INC.,** a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233 ("**Tenant**").

Preliminary Statement

Landlord is the fee owner of certain real property located in the County of _____, State of Tennessee, as more particularly described on Exhibit A hereto annexed, together with improvements constructed or to be constructed thereon (the "**Shopping Center**"). Landlord and Tenant, as of the date hereof, have entered into a lease (the "**Lease**") demising a portion of the Shopping Center as more particularly described therein (the "**Premises**") to Tenant. In connection therewith, Landlord and Tenant have entered into this Memorandum to confirm the demise of the Premises and to provide notice to any interested party of such demise and of the terms and provisions of the Lease.

NOW, THEREFORE, the parties state as follows:

1.    All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Lease.

2.    The terms and conditions of the Lease are incorporated herein as though set forth in full, whereby Tenant may have and hold the Premises together with any and all rights, benefits, privileges and easements, now or hereafter appurtenant thereto, at the rental and upon the terms and conditions therein stated, for an initial term of approximately ten (10) years commencing on the Commencement Date (the "***Initial Lease Term***"). Under the terms of the Lease, Tenant has the right to extend the Initial Lease Term for five (5) separate and additional periods of five (5) years each after the expiration of the Initial Lease Term.

L-1

WO 729984.13

3.    This Memorandum of Lease is executed for the purpose of recordation in order to give notice of all of the terms, provisions and conditions of the Lease, including, without limitation:

(i)    that upon a Use Trigger Event (as defined in Lease), subject to certain exceptions more particularly set forth in the Lease, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any "Affiliated Land" (defined in the Lease) to be occupied, for the sale, rental, installation, servicing and/or repairing, either singly or in any combination, of consumer, office and/or automotive electronics products, including, without limitation, televisions, stereos, speakers, video and audio recorders and players and cameras; computer hardware and software and related software services (which include internet access services, entertainment software and entertainment media [such as, by way of example only, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment]); cellular and wireless telephones and telecommunication devices and related accessories; motor vehicle audio, stereo and telephone systems; and technological evolutions of the foregoing;

(ii)    the restrictions set forth therein on Landlord's ability to lease certain portions of the Shopping Center for certain uses which are otherwise prohibited by the terms of the Lease;

(iii)    provisions set forth therein regarding Tenant's right to install and maintain signage upon the exterior of the Premises and upon a pylon and/or monument sign located at the Shopping Center;

(iv)    provisions set forth therein regarding Tenant's right to use (and to permit Tenant's customers, employees, agents and contractors to use) certain common areas of the Shopping Center (such as, without limitation, the parking facilities of the Shopping Center); and

(v)    provisions set forth therein regarding certain areas in the Shopping Center in which no improvements are to be constructed, or changes made without the consent of the Tenant.

4.    In addition to those terms hereinabove set forth, the Lease contains numerous other terms, covenants and conditions which likewise affect not only the Premises but also the Shopping Center, and notice is hereby given that reference should be had to the Lease directly with respect to the details of such terms, covenants and conditions. The Lease and exhibits thereto are hereby incorporated by reference in this Memorandum of Lease and the parties hereby ratify and confirm the Lease as if said Lease were being re-executed by them and recorded. In the event of any conflict between the provisions of this instrument and the Lease, the provisions of the Lease shall control.

WO 729984.13

**IN WITNESS WHEREOF**, the parties hereto have executed this Memorandum of Lease as of the day and year first above written.

**LANDLORD:**

WITNESS/ATTEST:

**SPRING HILL DEVELOPMENT PARTNERS, GP**, a Georgia general partnership

_____

By: _____

Name: _____

Title: _____

[SEAL]

**TENANT:**

WITNESS/ATTEST:

**CIRCUIT CITY STORES, INC.,** a Virginia corporation

_____

By:_____

[SEAL]

INCLUDE SIGNATURE BLOCK FOR OWNER OF THE AFFILIATED LAND IF DIFFERENT THAN LANDLORD

WO 729984.13

STATE OF _____)
                                                    ) : ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of SPRING HILL DEVELOPMENT PARTNERS, GP, the company described in and which executed the above instrument and that he/she signed his/her name thereto by order of the _____ of said company.

_____
Notary Public

My Commission Expires:

_____


STATE OF _____)
                                                    ) : ss.
COUNTY OF _____)


On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he/she is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he/she signed his/her name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

L-4

EXHIBIT A

Legal Description of the Shopping Center

WO 729984.13

## EXHIBIT M

### Indemnification Agreement

This INDEMNIFICATION AGREEMENT is made this _____ day of _____, _____, between **SPRING HILL DEVELOPMENT PARTNERS, GP,** a Georgia general partnership (hereinafter referred to as "Landlord") and **CIRCUIT CITY STORES, INC.,** a Virginia corporation (hereinafter referred to as "Tenant").

### W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease"), dated _____ 2007, whereby Landlord has leased to Tenant a portion of the real property located in Spring Hill, _____ County, Tennessee (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Landlord Reimbursement as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.      Tenant hereby indemnifies and agrees to hold Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises and the Shopping Center as a result of Tenant's construction activities at the Shopping Center.  In the event that any mechanic, materialman or other claimant makes claim against the Premises or Shopping Center based upon materials or services provided under contract with Tenant, Tenant shall hold harmless and protect Landlord from any loss, payment, claim or expense related thereto.

2.      Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises or the Shopping Center by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure or by any other means, Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises and the Shopping Center.  This indemnity and hold harmless shall not apply to any liens or claims caused by Landlord or Landlord's agents.

EXECUTED this _____ day of _____, _____.

LANDLORD:

**SPRING HILL DEVELOPMENT PARTNERS, GP,** a Georgia general partnership

By: _____
Name: _____
Title:  _____

M-1

WO 729984.13

TENANT:

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

By: _____
Name:
Title:

M-2

**EXHIBIT N**

Pylon Sign Rendering



THE Crossings OF Spring Hill

Location:  Spring Hill, Tennessee

**EXHIBIT D**

**SIGN A**

N-1

WO 729984.13

## EXHIBIT O

### Third Party Consents

August 28, 2007

```
OEA Submittal
Spring Hill, TN
T-2362
Received 8-28-07
=================
Approved By Target
September 5, 2007
============
Copy to Kris Williams and
Real Estate File.
```

Randy Manthey
Target Corporation
Property Development
1000 Nicollet Mall, TPN-12F
Minneapolis, MN 55403

Re:   **Circuit City Submittal**
      **Operation and Easement Agreement between Target Corporation, Kohl's**
      **Department Stores, Inc., and Spring Hill Development Partners, G.P.**
      **The Crossings of Spring Hill; Spring Hill, Tennessee**

Dear Randy:

Pursuant to the above referenced OEA, Developer is required to obtain Target's approval of elevations of other buildings within the Shopping Center.  Please review the following enclosed documents for Circuit City.

     1.    Color elevation prepared by Casco,
     2.    Exhibit X of the OEA showing Circuit City's location in the shopping center.
     3.    Detail of Circuit City's building signage (3 sides – included on color elevation)
     4.    Schematic Site Plan of Circuit City's staging area(s) and location of Cart Corrals.

If there are no changes required, please indicate your approval by signing below and returning this letter to me.  IF TARGET DOES NOT RESPOND WITHIN 30 DAYS AFTER RECEIPT OF THIS SUBMITTAL, THIS ELEVATION SHALL BE DEEMED APPROVED.

Sincerely,                                   APPROVED BY:

**Spring Hill Development**             **Target Corporation**
**Partners, G.P.**

> ## *APPROVED*
>
> *By Target Real Estate – Randy Manthey at 2:16 pm, 9/5/07*

Name:_____

Date:_____

Enclosures: (1)

O-1

WO 729984.13



WEST ELEVATION

SOUTH ELEVATION

NORTH ELEVATION

EAST ELEVATION

APPROVED

SPRING HILL, TENNESSEE

O-2





Exhibit X
Site Plan

Spring Hill, TN

O-4



**FIRST AMENDMENT TO LEASE AGREEMENT**

by and between

**SPRING HILL DEVELOPMENT PARTNERS, GP**

as Landlord

and

**CIRCUIT CITY STORES, INC.**

as Tenant

The Crossings of Spring Hill Shopping Center
Spring Hill (Maury County), Tennessee

## FIRST AMENDMENT TO LEASE AGREEMENT

      **THIS FIRST AMENDMENT LEASE AGREEMENT** (this "Lease"), dated as of the 16th day of January, 2008 ("Effective Date"), by and between **SPRING HILL DEVELOPMENT PARTNERS, GP,** a Georgia general partnership, **GALLATIN MANAGEMENT ASSOCIATES, LLC,** a Georgia limited liability company, and **DICKSON MANAGEMENT ASSOCIATES, LLC,** a Georgia limited liability company (collectively "Landlord") with an office at c/o GBT Realty Corporation, 201 Summit View Drive, Suite 110, Brentwood, Tennessee 37027, and **CIRCUIT CITY STORES, INC.,** a Virginia corporation ("Tenant") with an office at 9950 Mayland Drive, Richmond, Virginia 23233.

### W I T N E S S E T H:

      **WHEREAS,** Spring Hill Development Partners, GP ("Initial Landlord") and Tenant entered into a written lease dated October 26, 2007 (the "Lease"), by which Landlord leased to Tenant, and Tenant leased from Initial Landlord, certain premises located in the City of Spring Hill, Maury County, State of Tennessee, together with all improvements, appurtenances, easements and privileges belonging thereto (the "Premises"), which Premises is more particularly described in the Lease; and

      **WHEREAS,** Landlord thereafter assigned its interest in the Lease to Landlord by Quitclaim Deed dated as of December 5, 2007 and recorded on December 11, 2007 in Book R2017, Page 1320-1321 in the Register's Office of Maury County, Tennessee.

      **WHEREAS,** Tenant wishes to perform certain work as more particularly described in the Lease, and Landlord has obtained, for Tenant's benefit, a Temporary Construction Easement Agreement (the "Easement Agreement"), attached hereto and incorporated herein as Exhibit "A", in order for Tenant to stage it's construction materials and trailers within the easement area described in the Easement Agreement and on Exhibit "B" attached hereto and incorporated herein (the "Easement Area").

      **WHEREAS,** Landlord and Tenant desire to amend the Lease as hereinafter provided.

      **NOW THEREFORE,** for and in consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

      1.    The "Staging Area" referenced in Section 3.01 of the Lease and shown on the Site Plan is hereby replaced with the Staging Area shown on Exhibit "B", and Tenant shall no longer have the right to use the Staging Area shown on the Site Plan to the Lease.

      2.    Landlord and Tenant agree that the indemnity contained within Section 11.05(a) of the Lease shall apply to Tenant's use of the Easement Area for staging, and in connection with the rights contained in the Easement Agreement. Landlord and Tenant further agree that Tenant

shall maintain, in connection with Tenant's use of the Easement Area, the insurance coverages required by Section 11.02 of the Lease, and shall deliver to Landlord evidence of such insurance coverages in a form acceptable to landlord prior to Tenant's use of the Easement Area for any purpose.

     3.      All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Lease.

     4.      Except as set forth in this First Amendment, all provisions of the Lease shall remain unchanged and in full force and effect and are hereby reaffirmed by the parties hereto.

     5.      This First Amendment may be executed in counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this First Amendment to Lease, under seal, as of the day and year first above written.

**LANDLORD:**

**SPRING HILL DEVELOPMENT PARTNERS, GP,** a Georgia general partnership

By: _____

Name: _George B. Tomlin_

Title: _Chief Manager of Spring Hill Management Associates, LLC, the Managing General Partner_

**GALLATIN MANAGEMENT ASSOCIATES, LLC,** a Georgia limited liability company

By: _____

Its: _____

By: _____

Name: _George B. Tomlin_

Title: _Chief Manager_

**DICKSON MANAGEMENT ASSOCIATES, LLC,** a Georgia limited liability company

By: _____

Its: _____

By: _____

Name: _George B. Tomlin_

Title: _Chief Manager_

