# EXHIBIT "A"

WEST NYACK, NEW YORK

# LEASE

between

# CIRCUIT CITY STORES, INC.,

as Tenant

and

# EKLECCO

as Landlord

dated August 21, 1998

# PALISADES CENTER

have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

(b)    Bankruptcy. Notwithstanding anything to the contrary set forth in this paragraph 29, the following shall be an "Event of Default" by Tenant without the requirement of any notice or other action by Landlord: Tenant has filed against it any involuntary bankruptcy proceeding or any similar proceeding under federal or State law or has appointed a receiver, trustee or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun or Tenant files a voluntary bankruptcy proceeding or other similar proceeding under federal or State law.

30.    Landlord's Remedies. After the occurrence of a default (or, as applicable, an Event of Default) by Tenant, Landlord shall have the right to exercise the following remedies:

(a)    Continue Lease. Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Base Rent (but not Percentage Rent), additional rent (which term whenever used in this Lease shall include without limitation payments for Real Estate Taxes) and other charges when due for the remainder of the Term, including any sums due for any Option Period for which a Renewal Option has been exercised. In the alternative, Landlord shall have the right to lawfully re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Premises, or any part thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums

shall not be realized or secured, in Landlord's exercise of reasonable efforts to mitigate its damages (which Landlord hereby agrees to make, but Landlord shall not be required to accept less than the then fair market rent, accept a use or tenant which in Landlord's reasonable discretion, is not compatible with the Shopping Center and its then tenant mix, or lease the Premises before any other space in the Shopping Center that may be then available), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

(b) <u>Terminate Lease</u>. Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than twenty (20) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following in lieu of collecting installments of Base Rent hereunder:

(i) The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

(ii) The "worth at the time of award" of the amount by which unpaid Base Rent and all other charges which would have accrued after the date of termination through the balance of the Term exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation; and

(iii) any other amounts necessary to compensate Landlord for any actual damages incurred by Landlord in reletting the Premises, which shall be limited to the net effective rent amount (Base Rent, additional rent and other charges due under this Lease) that Landlord would have otherwise realized hereunder from the date of termination through reletting of the Premises (not to exceed 1 year), all repossession costs, operating expenses, reasonable attorneys

60    RIEKR/LSE/120474_7/56-13 (7497)

fees and reletting expenses, including brokerage commissions and the actual and reasonable costs of placing the Premises in good order and condition and repairing the same for reletting.

As used in this paragraph 30(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at an accrual rate of the prime rate of interest from time to time charged by Citibank, N.A. (or its successor), plus one percent (1%) (the "Accrual Rate") for past due obligations, and a discount rate to net present value of nine percent (9%) on anticipated future obligations, on the amount of the obligations payable on the date of such calculation. In the event this Lease shall be terminated as provided above, or by summary proceedings or otherwise, all right, title and interest of Tenant hereunder shall cease and expire, and Tenant shall then quit and surrender the Premises to Landlord, but Tenant shall remain liable, as herein provided, and Landlord, its agents, servants or representatives may immediately or at any time thereafter lawfully re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings. Landlord shall never be entitled to dispossess Tenant of the Premises pursuant to any "lock out" or other nonjudicial remedy. If Landlord shall exercise its right to terminate this Lease, Landlord agrees to use commercially reasonable efforts to relet the Premises in order to minimize the damages suffered by Landlord, provided that Landlord shall be under no obligation to relet the Premises in a manner other than applied by Landlord to fill other vacancies in the Shopping Center and provided further that nothing in this paragraph shall be construed to obligate Landlord to relet or attempt to relet the Premises as a condition precedent to leasing or attempting to lease any other space in the Shopping Center nor to relieve Tenant from payment of any installment of Base Rent, or other charges which would be due under this Lease.

(c)   Remedies Are Cumulative. The various rights and remedies reserved to Landlord herein are cumulative, and Landlord may pursue any and all such rights and remedies as specifically set forth in this Lease, whether at the same time or otherwise. Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial

survive the termination or expiration of this Lease and the covenants contained herein shall not be or be deemed to be for the benefit of any third party.

36. Miscellaneous.

(a) Headings and Gender. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b) Construction. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c) Waiver of Jury Trial. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d) Relationship of Landlord-Tenant. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e) Entire Agreement; Merger. This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f) Attorneys' Fees. In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by

67

RIEKR/LSE/120474_7/56-13 (7497)

the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g) <u>Partial Invalidity</u>. If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h) <u>Consents</u>. Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i) <u>Holidays</u>. If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j) <u>Applicable Law</u>. This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

(k) <u>Successors and Assigns</u>. All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l) <u>Counterparts</u>. This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m) <u>Trademarks and Trade Names</u>. All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

(n) <u>Exculpation</u>.

(i) It is understood and agreed that, except for Landlord's fraudulent acts or bad faith conduct under this Lease established by Tenant in a court of competent jurisdiction by a final non-appealable judgment, Tenant shall look solely to the estate and property of Landlord in the Shopping Center and Premises (including the proceeds and rentals therefrom)

40. <u>Subject to Reciprocal Easement Agreement</u>. Tenant acknowledges and agrees that the Shopping Center and the Premises are subject to, and benefited by, the terms and conditions of the CORE. Landlord represents and warrants that nothing in the CORE shall prohibit Tenant's operation in the Premises of the use set forth in paragraph 18(a) nor adversely affect any of Tenant's rights or obligations under this Lease.

41. <u>After Hours Operation</u>. If Tenant shall remain open for business within the Premises after 10:00 p.m. Monday through Saturday, or after 6:00 p.m. on Sunday, Tenant shall pay its proportionate share (as hereinafter described) of all of Landlord's costs incurred in connection with such after-hours operation, including without limitation, the cost of illuminating the parking areas and other Common Areas, illuminating the pylon sign, if any, and after-hours security. Tenant's proportionate share of such expenses shall be determined by multiplying such additional costs by a fraction, the numerator of which is the leasable square foot floor area with the Premises, and the denominator of which is the total leasable square foot area of the Premises plus an additional Premises within those portions of the Shopping Center owned by Landlord.

WITNESS the following signatures and seals:

LANDLORD

EKLECCO
a New York partnership

WITNESS:

By: _____
Name: Thomas J. Valenti
Title: General Partner

Landlord's Tax I.D. No: _____

TENANT

CIRCUIT CITY STORES, INC.,
a Virginia corporation

WITNESS:

*Linda J. Benaud*
*Cheryl S. Smith*

By: *Benjamin B. Cummings, Jr.*
Benjamin B. Cummings, Jr.,
Vice President

LEASE\WEST NYACK, NEW YORK