Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                             :
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
          Debtors.           :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363
AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT
BY AND AMONG THE DEBTORS AND PANASONIC**

Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, pursuant to Bankruptcy Code

sections 105(a) and 363 and Bankruptcy Rule 9019

---

[1] Each capitalized term not otherwise defined herein shall have the meaning ascribed to it in the Motion.

approving the settlement agreement (the "Settlement

Agreement") entered into between the Debtors and

Panasonic; and the Court having reviewed the Motion and

the Official Unsecured Creditors Committee's (the

"Committee") objection to the Motion (the "Objection");

and the Court having determined that the relief

requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other

parties in interest; and it appearing that proper and

adequate notice of the Motion has been given and that no

other or further notice is necessary; and upon the

record herein; and after due deliberation thereon; and

good and sufficient cause appearing therefor, it is

hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.   The Motion is GRANTED as modified below.

2.   Pursuant to Bankruptcy Code section 363

and Bankruptcy Rule 9019, the Settlement Agreement

(which has been revised to address the Objection, a copy

of which is attached hereto as Exhibit A) is hereby

approved in all respects; <u>provided</u>, <u>however</u>, the

Chargeback Claim (as defined in the Settlement Agreement)

is an estimate only and the actual amount of such claim
shall be determined either by (i) consent of Circuit
City and Panasonic after good faith reconciliation or
(ii) further Court order.

3.    The Debtors' decision to enter into the
Settlement Agreement is based on sound business judgment,
is reasonable and appropriate under the circumstances
and is approved.

4.    The Debtors are hereby authorized to
enter into the Settlement Agreement and to take all
actions reasonably necessary to implement its terms
without further Court order.

5.    Subject to the terms of the Settlement
Agreement, the Debtors are hereby authorized and
directed to make all payments due to Panasonic as
described in the Settlement Agreement.

6.    The Debtors are authorized to execute all
documentation necessary to implement the Settlement
Agreement.

7.    Panasonic shall retain its rights to seek
allowance and payment of any claims or administrative
expense that Panasonic may hold against the Debtors or

to otherwise seek to enforce any right (legal or
equitable) against the Debtors; provided, however, that
any right Panasonic may have to reclaim products
pursuant to Bankruptcy Code section 546(c) shall be
subject to the prior rights of any holders of security
interests in such Goods or the proceeds of such Goods to
the extent of such interests; provided, further, however,
that the Debtors, the Committee, and Bank of America,
N.A., as agent under the Debtors' prepetition and
postpetition financing facilities, reserve any and all
rights with respect to claims or administrative expense
that Panasonic may hold against the Debtors or to
otherwise seek to enforce any right (legal or equitable)
against the Debtors.

8.    The requirement under Local Rule 9013-1(G)
of the Local Rules for the United States Bankruptcy
Court for the Eastern District of Virginia to file a
memorandum of law in connection with the Motion is
hereby waived.

9.    This Court will retain jurisdiction with
respect to any dispute concerning the relief granted
hereunder.

10.  Panasonic shall be eligible to
participate in any court approved program offered by
Circuit City to similarly situated vendors regarding
payment of prepetition claims in exchange for the
provision of trade credit provided that Panasonic
complies with the terms and conditions of such court
approved program.

Dated:  Richmond, Virginia
        _____, 2008


        _____
        UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley
Douglas M. Foley

**EXHIBIT A**

(Settlement Agreement)

Execution Version

# AGREEMENT

This agreement (the "Agreement") is made as of November 18, 2008 by and among

Circuit City Stores, Inc., as debtor in possession and its affiliated debtors (collectively, "Circuit

City") and Panasonic Corporation of North America ("Panasonic").  Circuit City and Panasonic

are referred to as the "Parties" and individually as a "Party."

**WHEREAS:**

A.     Panasonic is a manufacturer of electronic and electric products for a wide range of

consumer, business and industrial uses.

B.     Circuit City is a specialty retailer of consumer electronics, home office products,

entertainment software, and related services.

C.     Circuit City and Panasonic Consumer Electronics Company, a division of

Panasonic, entered into a "Consignment Agreement," dated as of March 8, 2006, and amended

February 2008 (the "Consignment Agreement"), under which Panasonic agreed to provide

certain goods to Circuit City on a consignment basis (the "Consigned Products").[1]

D.     The Consigned Products in possession of Circuit City, as of November 10, 2008,

are listed on Schedule I.[2]

E.     The Consignment Agreement provides that "[t]itle to the Consigned Products . . .

shall remain in Panasonic until such time as the products are sold by Circuit City to its

customers. . .  At the point of sale to Customers, title to the Consigned Products first shall pass to

---

[1]     The term "Consigned Products" as used in this Agreement includes "Displays" and
"Open Box" products as described in the Consignment Agreement.

[2]     A copy of Schedule I has been provided to Circuit City and can be made available for
review by the Bankruptcy Court and counsel for the Official Committee of Unsecured Creditors
("Creditors' Committee") upon execution of an acceptable non-disclosure agreement.

SRZ-10788629.12                                     1

Circuit City and then to the Customer as part of a simultaneous transaction." See Consignment Agreement at § 1(b).[3]

F.      The procedures and logistics for the consignment arrangement are further described in the "VMI, Vendor Managed Inventory Document of Understanding," dated as of December 22, 2005 (the "VMI Agreement").

G.      The VMI Agreement states that "[i]nventory owned by Panasonic is located at Circuit City's warehouses and stores.  Transfer of ownership from Panasonic to Circuit City occurs at consummation of point of sale." See VMI Agreement at § 2.1.

H.      In connection with the Consignment Agreement, Panasonic maintains that it properly filed UCC-1 financing statements with the Virginia Secretary of State.

I.      In connection with the Consignment Agreement, Panasonic maintains that it delivered notices to Circuit City's then-existing secured creditors with a conflicting security interest informing them of Panasonic's purchase money security interest in the Consigned Products.

J.      On November 3, 2008, Panasonic wrote Circuit City that the Consignment Agreement would be terminated unless all past due amounts were paid within 10 business days.

K.      By letter dated November 6, 2008, Panasonic purported to terminate the Consignment Agreement due to (i) Circuit City's insolvency and (ii) Circuit City's assignment to a joint venture comprised of Hilco Merchant Resources, LLC ("Hilco") and Gordon Brothers Retail Partners, LLC ("GB") (the "Hilco/GB JV") of it rights to sell Consigned Products without Panasonic's consent.

---

[3]      The Consignment Agreement and VMI Agreement (defined below) are not attached due to confidentiality restrictions.

L.       Panasonic instructed Circuit City to stop selling the Consigned Products immediately and to hold them until further instruction.

M.      Under the terms of the Consignment Agreement, upon "early termination of this Agreement Circuit City shall be obligated to return to Panasonic all 'Sealed Box' (i.e. new, factory fresh) Consigned Products that Circuit City has not sold from inventory." <u>See</u> Consignment Agreement at § 24.

N.       Panasonic maintains that Circuit City has no right to continue selling the Consigned Products after termination of the Consignment Agreement. <u>See</u> Consignment Agreement at § 24.

O.       Panasonic sent notice to Hilco and GB informing them that Panasonic did not consent to the sale of any of the Consigned Products by Hilco, GB or the Hilco/GB JV.

P.       Circuit City disputes that Panasonic had a contractual right to terminate the Consignment Agreement.

Q.       On November 10, 2008 (the "<u>Petition Date</u>"), Circuit City filed petitions with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "<u>Bankruptcy Court</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Code</u>") and commenced the bankruptcy cases captioned <u>In re Circuit City Stores, Inc. et al</u>, Ch. 11, case No. 08-35653 (the "<u>Bankruptcy Cases</u>").

R.       Panasonic has demanded that Circuit City (ii) stop selling and return all Consigned Products and (ii) segregate and account for all Consigned Products and proceeds thereof.

S.       The Parties dispute whether Circuit City has the right to sell, transfer, encumber or dispose of the Consigned Products after termination of the Consignment Agreement.

T.      Pursuant to an interim agreement by the Parties, Circuit City has sold Consigned Product after the Petition Date and on account of the sales from November 10 through November 16, 2008, Circuit City has paid Panasonic the aggregate amount of $3,770,565.97 plus additional amounts from and after November 16, 2008 (the "Postpetition Consignment Payments").

U.      Panasonic has refused to deliver new products to Circuit City on any credit terms unless Circuit City pays $9,382,247.44, which Panasonic contends is the amount due for Consigned Products, excluding Displays and Open Box products, sold by Circuit City prior to the Petition Date for which no payment was made to Panasonic ("Prepetition Consignment Claim"). Circuit City contends that the Prepetition Consignment Claim is approximately $7,900,000 ("Undisputed Prepetition Consignment Claim"), which Circuit City claims is subject to certain chargebacks and setoffs in the approximate amount of $3,740,102.32 (the "Chargeback Claim").

V.      Panasonic also asserts that Circuit City was obligated to pay it for certain Displays and Open Box products in the approximate amount of $6 million, which amount was due and payable upon termination of the Consignment Agreement (the "Displays/Open Box Claim").

W.      Panasonic contends that (i) it has a validly, perfected, first priority lien on the Consigned Products and identifiable proceeds from all pre-Petition Date and post-Petition Date sales of Consigned Products and (ii) the amount of the Prepetition Consignment Claim entitled to administrative expense priority under 11 U.S.C. § 503(b)(9) is $9,344,327.43. The Creditors' Committee disputes whether Panasonic has a lien on the proceeds from all pre-Petition Date and post-Petition Date sales of Consigned Products. Circuit City contends these claims and expenses are subject to offset by the Chargeback Claim.

X.      In addition to the Consignment Agreement, Panasonic sold products to Circuit City on credit terms pursuant to purchase orders.

Y.      Panasonic maintains that it sold product (the "Reclamation Products") to Circuit City under numerous purchase orders within 45 days immediately prior to the Petition Date (*i.e..*, September 26, 2008 through and including November 9, 2008) (the "Reclamation Period").

Z.      Panasonic maintains that the aggregate value of the Reclamation Products is $7,996,797.47, which remains unpaid.

AA.     Panasonic made a reclamation demand, by letter dated November 6, 2008, seeking to reclaim product sold to, and received by, Circuit City during the period of October 27 through November 5, 2008 pursuant to section 8.2A-702 of the Virginia Code Annotated.

BB.     Panasonic also sent Circuit City a reclamation demand, dated November 10, 2008, seeking to reclaim the Reclamation Products pursuant to section 546(c) of the Code.

CC.     Circuit City failed to return the Reclamation Products to Panasonic.

DD.     To the extent that the Reclamation Products are not returned, Panasonic maintains that it holds an administrative expense claim under section 503(b)(9) of the Code in the amount of $4,064,383.60, which represents the value of goods sold in the ordinary course of business and received by Circuit City within 20 days before the Petition Date.

EE.     The Parties desire, subject to Bankruptcy Court approval, to resolve certain of their disputes without incurring the costs, delays and uncertainty of litigation.

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby stipulate and agree, subject to Bankruptcy Court approval, as follows:

1. <u>Post-Petition Sales of Consigned Product.</u> Panasonic shall have no obligation to provide additional products to Circuit City under the Consignment Agreement. Panasonic consents to the post-Petition Date sales of the Consigned Products listed on Schedule I by Circuit City to consumers <u>provided that</u> Circuit City shall:

   a) pay Panasonic an amount equal to the unit price per model number on Schedule I multiplied by the number of units sold (the "<u>Wind-Down Payment</u>");

   b) pay the Wind-Down Payment, by wire transfer, by no later than 12:00 p.m. (Eastern Standard Time) two (2) days after the sales of such goods are consummated, as such term is described in the VMI Agreement, (*i.e.*, day one consummated sales are billed on day two and payable on day three) unless the date payment is due not a Business Day (as defined below) in which case payment shall be made on the next Business Day. "Business Day" is any day other than a Saturday or Sunday or any other day on which banks are not authorized or required to close in New York.

2. <u>Wind-Down Payment Reconciliation.</u> Circuit City shall continue to provide Panasonic with all reports, documents and information required under the Consignment Agreement and VMI Agreement and shall cooperate in providing reports, documents and information regarding the Consigned Products as Panasonic may request from time to time. In the event that Circuit City disputes the amount of the Wind-Down Payment due to Panasonic, then (i) Circuit City shall pay the undisputed portion of the Wind-Down Payment, (ii) the disputed portion shall be deposited into a segregated interest-bearing account maintained by Circuit City ("<u>Segregated Account</u>"); (iii) Circuit City and Panasonic shall confer in good faith to resolve the dispute; (iv) if the dispute is not resolved in 2 Business Days (or such longer period as may be agreed upon by the Parties in writing), the Parties shall jointly request an expedited hearing before the Bankruptcy Court to resolve the dispute; (v) no payments shall be made from the Segregated Account pending an order of the Bankruptcy Court or written agreement of Parties; and (vi) any payments from the Segregated Account shall be made on notice to the

Creditors' Committee. The Wind-Down Payments paid to Panasonic shall not be subject to

disgorgement and shall not be subject to any offset, defense or counterclaim of any kind, nature

and description, including, but not limited to, the Chargeback Claim.

    3.      [INTENTIONALLY OMITTED].

    4.      <u>Non-Disgorgement of Postpetition Consignment Payments</u>. Circuit City agrees,

subject to Bankruptcy Court approval, that the Postpetition Consignment Payments from and

after the Petition Date shall not be subject to disgorgement.

    5.      <u>Cash in Advance Sales.</u> Subject to section 3 above, Panasonic shall ship new

products to Circuit City on a cash in advance basis ("<u>CIA Sales</u>") and shall use commercially

reasonable efforts to make such shipments within two (2) Business Days of receipt of payment as

described in subsection (a) to this section, provided that the following conditions are satisfied:

    a)    Panasonic shall have received full payment, by wire transfer, of invoiced
amount for products to be sold in proposed CIA Sale;

    b)    Circuit City is current on all Wind-Down Payments due to Panasonic
under section 1 above;

    c)    Panasonic has sufficient product available as determined by Panasonic in
its sole and absolute discretion;

    d)    No "Event of Default" (as described in paragraph 9 below) has occurred;
and

    e)    Circuit City is not in breach of this Agreement.

    6.      [INTENTIONALLY OMITTED]

    7.      <u>Other Terms of CIA Sales</u>. All CIA Sales shall be subject to the following terms

and conditions:

    a)    unless otherwise agreed to by Panasonic in writing, sales shall be on a
"net/net basis" with no deductions, rebates or other allowances of any
kind;

b)      Circuit City shall assume the risk of loss for any products that are received by Circuit City unless such damage is noted in writing by Circuit City at the time of its receipt of such goods on the bill of lading for such goods;

c)      sales shall be on a "shipment basis" only (*e.g.*, no pick-up deliveries at Panasonic distribution centers);

d)      all shipments are pre-paid and based on FOB (free on-board) Circuit City's distribution centers; and

e)      sales by Circuit City of product models then remaining in the inventory of Consigned Products shall be treated on a "first in first out" basis, and as a result, such CIA Sales shall be deemed to have been sales of Consigned Products and Circuit City shall include such sales in its daily Wind Down Payment reconciliation.

8.    No Rebates or Allowances; Defects.  With respect to Consigned Products and product purchased through CIA Sales, Circuit City shall be ineligible to participate in any program previously offered by Panasonic to Circuit City or offered by Panasonic to any of its other customers, including, but not limited to: rebates, advertising allowances, freight collection program, or 30% "end of life" allowance for displays.  Additionally, Panasonic will no longer accept any claims by Circuit City under such programs to the extent such claims arose before the Petition Date.  Any Consigned Product or product sold through CIA Sales that is defective at the time of its receipt by Circuit City and which defect is so noted by Circuit City on the bill of lading therefor, shall be returned to Panasonic for credit.

9.    Default.  Circuit City shall be in default of this Agreement upon the occurrence of any of the following events (each an "Event of Default"):

a)      Circuit City fails to pay the Wind-Down Payment (as set forth in sections 1 and 2 above) due on December 1, 2008 as a result of sales of Consigned Products on November 28, 2008 and November 29, 2008 ("Black Friday Payment");

b)      Circuit City (i) fails to timely pay any Wind-Down Payment (as set forth in sections 1 and 2 above), other than the Black Friday Payment, to the extent that such failure is not cured within 1 Business Day or (ii) fails to timely pay any Wind-Down Payment (as set forth in sections 1 and 2

above) more than three times even if such failure is cured as set forth in section 9(b)(i) above;

c)    an order of the Bankruptcy Court (in form and substance acceptable to Panasonic) approving this Settlement Agreement is not entered on the docket by December 10, 2008;

*by agreement*    *12*

d)    the Bankruptcy Cases shall be dismissed or converted to cases under chapter 7 of the Code or Circuit City shall file a motion or other pleading seeking the dismissal of any of the Bankruptcy Cases under section 1112 of the Code or otherwise;

e)    a trustee under chapter 7 or chapter 11 of the Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business, shall be appointed in the Bankruptcy Cases;

f)    Circuit City shall fail to comply with this Agreement;

g)    an "Event of Default" shall have occurred under the "Interim Order Pursuant to 11 U.S.C. 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 (1) Authorizing Incurrence by the Debtors of Post-petition Secured Indebtedness with Priority Over All Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors pursuant to 11 U.S.C. 363 and Providing for Adequate Protection, (4) Modifying the Automatic Stay, and (5) Scheduling a Final Hearing" or a final order approving post-petition financing, whichever may be in effect;

h)    the Maturity Date (as defined in the Senior Secured Super-Priority, Debtor-In-Possession Credit Agreement) shall have occurred;

i)    the failure of Circuit City to comply with any reporting requirements set forth in the Consignment Agreement or VMI Agreement;

j)    any fraudulent act, fraudulent conduct or fraudulent omission by Circuit City; and

k)    the filing of any Chapter 11 plan of liquidation.

10.    <u>Remedies Upon Event of Default.</u>  Upon notice by Panasonic to Circuit City of the occurrence of an Event of Default:

a)    Panasonic shall have no obligation to provide any additional products to Circuit City under CIA Sales;

b)    Circuit City shall immediately cease selling any Consigned Product;

c)    Circuit City shall immediately segregate all Consigned Product and any proceeds thereof; and

d)    Circuit City shall, at Panasonic's expense, immediately return the Consigned Products and proceeds to Panasonic.

The automatic stay of section 362(a) of the Code, to the extent applicable, shall be deemed terminated to permit Panasonic to obtain possession of the Consigned Products and proceeds thereof without the necessity of any further action of the Court.

11.    Termination of Consignment Agreement. The Consignment Agreement and the VMI Agreement shall be deemed terminated as of November 6, 2008 and of no further legal force or effect, except for the following provisions of the Consignment Agreement: 1(c), 5, 6 (a)-(c), 9, 12, 13, 14, 19(b), and 25; provided, however, to the extent that there is a conflict between these provisions and this Agreement, this Agreement shall control.

12.    Reservation of Rights. Nothing contained herein shall affect Panasonic's right: (i) to seek to reclaim the Reclamation Products pursuant to 11 U.S.C. § 546(c); (ii) to seek allowance and payment of an administrative expense claim for Reclamation Products and Displays and Open Box products pursuant to 11 U.S.C. § 503(b)(9); (iii) to seek allowance and payment of any secured claim, administrative expense, unsecured claim or other claim that Panasonic may hold against Circuit City; or (iv) otherwise seek to enforce any right (legal or equitable) against Circuit City including but not limited to, Displays/Open Box Claim, set-off and recoupment. Nothing contained herein shall affect the rights of Circuit City or the Creditors' Committee to object to any of the rights of Panasonic as set forth in 12(i)-(iv). Circuit City shall be entitled to offset the Chargeback Claim against distributions payable to Panasonic on account of any allowed claim or administrative expense, except for the Wind-Down Payments, Prepetition Consignment Claim or payments due in connection with any CIA Sale, and only to the extent that such Chargeback Claim is either undisputed or the amount of the Chargeback

Claim is determined by the Bankruptcy Court after notice and a hearing.  Additionally, Circuit

City reserves it right to seek direct payment of the Chargeback Claim (as opposed to recovery

from offset).

13. <u>Bankruptcy Court Approval</u>.   This Agreement is subject to approval by the

Bankruptcy Court.  Circuit City shall serve and file appropriate papers (in form and substance

reasonably acceptable to Panasonic) for approval of this Agreement so as to be heard by the

Bankruptcy Court by no later than November 24, 2008.

14. <u>Construction of Settlement Agreement</u>.  This Agreement has been jointly drafted

by the Parties at arms'-length and each Party has had access to and the opportunity to consult

with independent legal counsel and to comment fully on the Agreement.  Accordingly, in the

event of any dispute regarding the interpretation of any provision of this Agreement, such

disputed provision shall not be construed against any Party solely by virtue of such Party's

having taken part in the drafting of this Agreement.

15. <u>Binding Effect</u>.  This Agreement shall be binding upon and shall inure to the

benefit of the Parties hereto and their respective successors and assigns, including as to Circuit

City any trustee appointed under chapter 11 or chapter 7 of the Code.

16. <u>No Third Party Beneficiaries</u>.  Nothing contained in this Agreement, express or

implied, is intended to confer any rights or benefits upon any party, other than the Parties and

their successors and assigns, and no such third party shall be entitled to rely on this Agreement.

17. <u>Governing Law</u>.  This Agreement and the Releases shall be governed by and

construed in accordance with the laws of the State of Delaware without giving effect to its

conflict of law provisions or choice of law rules and, to the extent applicable, the Code.

18.    <u>Amendments and Waivers</u>. The terms of this Agreement may be amended only with the written consent of all Parties and approval of the Bankruptcy Court.

19.    <u>Survival</u>. The terms and conditions of this Agreement shall survive entry of any order confirming any chapter 11 plan in the Bankruptcy Cases, the appointment of a trustee or any conversion of the Bankruptcy Cases from cases under chapter 11 to cases under chapter 7 of the Code.

20.    <u>Knowledge of Settlement</u>. Each Party acknowledges having read all of the terms of this Agreement and enters into the Agreement voluntarily and without duress.

21.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the Bankruptcy Court to hear and consider any disputes relating to the interpretation and enforcement of this Agreement.

22.    <u>Entire Agreement</u>. This Agreement and the exhibits attached hereto constitute the entire agreement among the Parties with respect to the transactions contemplated hereby. It is understood and agreed that all other previous undertakings, negotiations and agreements among the Parties regarding the subject matter are superseded in their entirety.

23.    <u>Authority</u>. Each Party, by execution of this Agreement, represents and warrants that he, she or it is fully authorized to enter into and perform this Agreement without any further or other consent or authorization from any person or entity.

24.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single agreement.

25.    <u>Headings</u>. All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of the Agreement.

26.   <u>Severability</u>.   In the event that any one or more of the provisions of this Agreement shall be for any reason invalid, illegal or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of the Agreement as if such invalid, illegal or unenforceable provision had never been contained herein, and the Agreement shall remain binding on the Parties only to the extent that the general intent of the Parties under this Agreement can be carried out in all material respects.

27.   <u>Waiver</u>. The failure of a Party hereto to insist, in any one or more instances, upon the strict performance of any of the terms and covenants of this Agreement, or to exercise any option herein contained, shall not be construed as a waiver, or a relinquishment for the future, of such covenant or option, but the same shall continue and remain in full force and effect.

28.   <u>Notice</u>. Any notices, declarations or other communications required or permitted under this Agreement or any exhibit or document delivered pursuant to this Agreement shall be deemed to have been properly given and delivered if in writing by such party or his or its legal representative and delivered personally or sent by facsimile, nationally recognized overnight courier service guaranteeing overnight delivery, or registered or certified mail, postage prepaid, addressed as follows:

If to Circuit City

Bruce Besanko
Chief Financial Officer and Treasurer
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233
Telephone: 804 486-4107
Fax:: 804-486-8286

-and-

Reginal Hedgebeth, Esq.
General Counsel and Secretary

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233
Telephone: 804- 486-4014
Fax: 804-486-4877

With a copy to:

Gregg M. Galardi, Esq.
Ian Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
10th and King Streets
Wilmington, DE 19801
Telephone: 302-651-3000
Fax: 302-651-3001

If to Panasonic:

Mr. John Iacoviello
President/Sales Group
Panasonic Consumer Electronics Company
Division of Panasonic Corporation of North America
One Panasonic Way, Mail Stop 1C-5
Secaucus NJ 07094
Telephone: 201-392-4521
Facsimile: 201-392-4334

-and-

Robert S. Marin, Esq.
Vice President & General Counsel
Panasonic Corporation of North America
One Panasonic Way, 1B-7
Secaucus, NJ 07094
Telephone: 201-348-7617
Facsimile: 201-392-6476
marinr@us.panasonic.com

With a copy to:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Facsimile (212) 593-5955
Attn:  David M. Hillman, Esq.

SRZ-10788629.12                          14

Unless otherwise specified herein, such notices, declarations or other communications shall be deemed given (a) on the date delivered, if delivered personally, (b) one (1) Business Day after being sent by nationally recognized overnight courier guaranteeing overnight delivery, (c) on the date delivered, if delivered by facsimile during business hours (on or before 5:00 p.m.), or one (1) Business Day after the date of delivery if delivered after business hours, and (d) five (5) Business Days after being sent, if sent by registered or certified mail.  Each of the parties hereto shall be entitled to specify a different address by delivering notice as aforesaid to each of the other parties hereto.

29.    Facsimile Signatures.  This Agreement may be executed by facsimile signatures, which shall be binding on the Parties hereto as if it were an original document.


IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered.


Circuit City Stores, Inc., as debtor and debtor    Panasonic Corporation of North America
in possession for itself and its debtor affiliates


By: _____    By: _____
    Name:                          Name:
    Title:                         Title:

SRZ-10788629.12                    15

Unless otherwise specified herein, such notices, declarations or other communications shall be deemed given (a) on the date delivered, if delivered personally, **(b)** one (1) Business Day after being sent by nationally recognized overnight courier guaranteeing overnight delivery, (c) on the date delivered, if delivered by facsimile during business hours (on or before 5:00 p.m.), or one (1) Business Day after the date of delivery if delivered after business hours, and **(d)** five (5) Business Days after being sent, if sent by registered or certified mail.  Each of the parties hereto shall be entitled to specify a different address by delivering notice as aforesaid to each of the other parties hereto.

29.    <u>Facsimile Signatures</u>.  This Agreement may be executed by facsimile signatures, which shall be binding on the Parties hereto as if it were an original document.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered.

Circuit City Stores, Inc., as debtor and debtor          Panasonic Corporation of North America
in possession for itself and its debtor affiliates

By: _____                        By: _____
    Name: Bruce H. Besanko                                   Name:
    Title: Chief Financial Officer                               Title: