Paul S. Bliley, Jr. – VSB No. 13973
**WILLIAMS, MULLEN**
Two James Center, 16th Floor
1021 East Cary Street
Post Office Box 1320
Richmond, Virginia 23218-1320
Phone: 804.783.6489
FAX: 804.783.6507
tschwarz@williamsmullen.com

*Counsel for Carmax Business Services, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

------------------------------------------------------x
:
In re:                                              :   Chapter 11
                                                    :
CIRCUIT CITY STORES, INC., *et al.*,                :   Case No. 08-35653 (KRH)
                                                    :
Debtors.                                            :   (Jointly Administered)
                                                    :
------------------------------------------------------x

### OBJECTION OF CARMAX BUSINESS SERVICES, LLC TO THE MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 365(A), AND 554 AND FED. R. BANKR. P. 6006 AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND ABANDONMENT OF PERSONAL PROPERTY EFFECTIVE AS OF DECEMBER 12, 2008

Carmax Business Services, LLC ("Carmax"), a party in interest in the above-captioned chapter 11 cases, by and through its undersigned counsel, hereby submits this objection to, <u>inter alia</u>, the "Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 365(a), and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of December 12, 2008" (the "Rejection Motion") (Docket No. 998). In support of their objection, Carmax respectfully represents as follows:

### PROCEDURAL BACKGROUND

1. On November 10, 2008 (the "Petition Date"), the above-captioned debtors and

debtors-in-possession (collectively, "Debtors"), filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On December 12, 2008, the Debtors filed a motion titled "Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a), 365(a), and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of December 12, 2008" (the "Motion") (Docket No. 998) in order to reject certain unexpired leases of nonresidential real property effective as of December 12, 2008.

**FACTUAL BACKGROUND**

3. Carmax is the sublessee of one of the Premises covered by the Motion, to wit: (i) Location No. 6145 (Chastain Meadows Office Complex), Kennesaw, Georgia, (the "Carmax Premises"), for which it is party to one sublease (the "Carmax Sublease").

4. Upon information and belief, the Debtors enjoyed, and continue to enjoy, the benefits of the Carmax Sublease, including rental income for the month of December, 2008, which upon information and belief the Debtors have not turned over to the overlandlords.

5. Carmax respectfully requests (i) that the Debtors should be ordered to fully comply with all terms of the Carmax Sublease until such time as the Carmax Sublease is properly rejected, which should be no earlier than January 1, 2009 since the Debtors have accepted payment of the December 2008 rent, (ii) that the Debtors should be ordered to pay to the overlandlord the rents that Carmax paid to the Debtors, (iii) that any Rejection Order entered should be modified to state that the rejection of the Carmax Sublease does not constitute a termination of the Carmax Sublease and is without prejudice to Carmax's rights under 11 U.S.C. § 365(h), applicable state law, and the Carmax Sublease, and (iv) such other and further relief that the Court deems just and proper.

## **OBJECTION**

### The Debtors' Rejection is Improper and Ineffective

6.  The rejection of the Carmax Sublease as of December 12, 2008 is inappropriate. Carmax has been in possession and remains in possession of the Carmax Premises and has paid the December rent, which has been accepted by the Debtors pursuant to the terms of the Carmax Sublease since its inception. At no point post-petition have the Debtors sought to regain possession of the Carmax Premises in any manner.

7.  Additionally, the Motion requests rejection effective retroactively to December 12, 2008. Although the Debtors acknowledge that "[s]ection 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective retroactively" (Mtn. at ¶ 24), the Motion leaps to the conclusion that authorizing retroactive rejection is routine. On the contrary, courts recognize that "rejection of a lease under section 365(a) becomes legally effective only after judicial approval has been obtained." Thinking Machines Corp. v. Mellon Financial Services (In re Thinking Machines Corp.), 67 F.3d 1021 (1st Cir. 1995). Retroactive rejection of a lease rather than being routine should be permitted only "when principles of equity so dictate." Id. at 1028. The First Circuit clearly did not bless the concept of retroactive or nunc pro tunc rejection in all circumstances or even in the case that it had under review. Instead, that case was remanded for further findings. Similarly, the United States District Court for the District of Delaware properly observed in a retroactive lease rejection case that "[a]n order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course . . . ." TW, Inc. v. Angelastro (In re TW, Inc.), Case No. 03-533-SLR (D. Del. January 14, 2004). In TW, the District Court upheld the Bankruptcy Court's determination that nunc pro tunc relief was inappropriate where the debtor actually filed and served its rejection motion on the day prior to filing its bankruptcy petition.

3

8.    Here, retroactive rejection is not appropriate for the reasons set forth herein--most notably because the Debtors accepted Carmax's December rental payment without any reservations (and failed to tender same to the Landlord), thus creating an occupancy right at least through and including December 31, 2008.

9.    Additionally, the Debtors go to great lengths to lead the Court to believe that rejection of the Leases will not harm or otherwise prejudice the Landlords. However, the Debtors are conspicuously silent about the effect that rejection will have for <u>sublessees</u>. Pursuant to the terms of the Carmax Sublease, Carmax's rental payments are a portion of the Debtors' rental payment under the primary lease. Carmax makes its rental payment directly to the Debtors at the beginning of each month. The Debtors in turn pay the Landlords the full rents owed under the primary lease.

10.    Carmax paid the Debtors, and the Debtors accepted, the rents for December of 2008, thus creating at a minimum a tenancy right at least until and through December 31, 2008. Upon information and belief, the Debtors retained Carmax's rental payments and did not make any rental payments to the Landlords for this time period. The Debtors' failure to tender the rents, and failure to notify the Court of same, is an impairment of Carmax's property rights, and furthermore is a disclosure that should have been made to the Court.

11.    Accordingly, the Rejection Motion should not be effective as of December 12, 2008 because it could subject Carmax under section 365(h) of the Bankruptcy Code to making a double payment to the Landlords in order to maintain the Carmax Sublease. As a policy matter, sublessees in future bankruptcy cases could be prejudiced because they too may have to cure pre-petition defaults on behalf of debtors-sublessors.

12.    In any event, by accepting Carmax's rental payments, the Debtors acknowledged

that Carmax is rightfully occupying the Carmax Premises as the tenant and created a right to remain in possession of the Carmax Premises as a tenant under applicable state law. To the extent that the Debtors' rejection of the Carmax Sublease is effective, the Debtors' actions have extended Carmax's tenancy rights at least until the end of the period for which the rental payment was made by Carmax. Accordingly, rejection of the Carmax Sublease should not be effective until at least January 1, 2009. Upon the occurrence of said date, then Carmax's rights under section 365(h) of the Bankruptcy Code would become effective.

13. Given that Carmax has already made the rental payment for December due under the Carmax Sublease, the Debtors should (i) be ordered to honor the terms of the Carmax Sublease and remit to the Landlords the rental payments that Carmax made, or (ii) reject the Carmax Subleases effective as of January 1, 2009. Similar relief has been granted to sublessees under facts similar to the instant matter. See, e.g., In re Kmart Corporation, et al., Case No. 02-02474 (Bankr. N.D. Ill. March 8, 2002) (order authorizing rejection of certain unexpired leases, which provided that "the Debtors shall turn over to the applicable lessor any and all rentals collected by the Debtors from the sublessee of premises subject to such Real Property Lease for rental periods arising from and after the effective date of the rejection"). To the extent that the rental payments are not passed through to the Landlords, they are subject to a constructive trust and therefore are not property of the Debtors' estates. See In re American Int'l Airways, Inc., 44 B.R. 143, 147-48 (Bankr. E.D. Pa. 1984) (sublease payments subject to constructive trust and not property of the debtor-sublessor's estate); In re Mid-Atlantic Supply, Co., 790 F.2d 1121 (4th Cir. 1986).

14. To the extent that the rejection does not become effective until January 1, 2009, the Debtors should be ordered to comply with the terms of the Carmax Sublease. Public Serv.

Co. of New Hampshire v. New Hampshire Electrical Coop., Inc. (In re Public Serv. Co.), 884 F.2d 11 (1st Cir. 1989) (until an executory contract or unexpired lease is rejected, it continues to bind the parties). Section 365(d)(3) provides that the Debtors shall timely perform all obligations "arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." 11 U.S.C. 365(d)(3). Based on the Debtors' questionable actions, Carmax has ample reason to believe that the Debtors will not perform as required by the Carmax Sublease. Accordingly, the Court should order the Debtors to fully comply with all terms of the Carmax Sublease until such time as the Carmax Sublease is properly rejected.

<u>Rejection Does Not Terminate Carmax's Rights to Remain in Possession</u>

15. Although the Debtors' rejection of the Leases constitutes a breach pursuant to section 365(g) of the Bankruptcy Code, the breach <u>does</u> <u>not</u> constitute a termination of the Carmax Sublease. See Eastover Bank for Sav. V. Sowashee Venture (In re Austin Dev. Co.), 19 F.3d 1077, 1082-83 (5th Cir. 1994) (stating that Congress defined rejection of an executory contract or unexpired lease to constitute a breach of the agreement rather than the power to terminate the agreement and that the power to terminate the agreement rests with the non-breaching party); In re Stewart Foods, Inc., 64 F.3d 141, 144 (4th Cir. 1995) (stating that rejection constitutes a breach); 3 Collier on Bankruptcy ¶ 365.09[3] (15th ed. Rev.). "Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear." In re Drexel Burnham Lambert Group, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992). This is because rejection should not be interpreted to operate to damage the rights of third parties with rights in the leasehold estate. See generally Commercial Trading Co. v. Lansburgh (In re Garfinkle), 577 F.2d 901 (5th Cir. 1978); Blue Bar Assocs. v. Picnic'N Chicken, Inc. (In re

6

Picnic'N Chicken, Inc.) 58 B.R. 523 (Bankr. S.D. Cal. 1986); 3 Collier on Bankruptcy ¶ 365.09[3] (15th ed. Rev.). The Bankruptcy Code makes clear that termination only occurs in narrow situations set forth in section 365(h), (i), and (n) at the option of the non-debtor party. See 11 U.S.C. §§ 365(h), (i), and (n).

16.   The Bankruptcy Code provides specific authority for Carmax to remain in possession of the Carmax Premises and perform pursuant to the terms of the Carmax Sublease. In situations such as the instant matter, where an unexpired lease of non-residential real property has been rejected by a debtor (as lessor), section 365(h)(1)(A)(ii) serves to protect the rights of the lessee. See In re Aube, 158 B.R. 567, 568 (Bankr. D.R.I. 1993) ("In construing this section, courts have held that 'the statute was designed to preserve the lessee's possessory interests in its leasehold....'"), quoting, In re Lee Rd. Partners, Ltd., 155 B.R. 55, 60 (Bankr. E.D.N.Y. 1993); Solon Automated Servs., Inc. v. Wood Comm. Fund I, Inc. (In re Wood Comm. Fund I, Inc.), 116 B.R. 817, 818 (Bankr. N.D. Okla. 1990) ("The debtor cannot deprive the lessee of its possessory property interest in the leased premises."); LHD Realty Corp. v. Metro. Life Ins. Co (In re LHD Realty Corp.), 20 B.R. 717, 719 (Bankr. S.D. Ind. 1982) ("It is clear that Congress' intent was...protecting the property rights of the lessee."). Though not mentioned in the statutory text, Congress did explicitly identify sublessors as potential debtors. See S. Rep. No. 95-989, at 60, reprinted in 1978 U.S.C.C.A.N. at 5846. As noted above, the Debtors are sublessors. This reference in the legislative history together with the protection for lessees strongly suggests that section 365(h)(1)(A)(ii) is meant to protect sublessees as well. Bankruptcy courts and commentators have reached the same conclusion. See, e.g., Tebo v Elephant Bar Rest., Inc. (In re Elephant Bar Rest., Inc.), 195 B.R. 353, 356 (Bankr. W.D. Pa. 1996) (recognizing that a sublessee of a rejected lease may preserve its rights pursuant to section

365(h)(1)(A)(ii)); In re Dial-A-Tire, 78 B.R. 13, 16 (Bankr. W.D.N.Y. 1987) (stating that sections 365(d)(4) and 365(h)(1)(A)(ii) produce the result of a subtenant's right to remain in possession after the sublessor has rejected the sublease); Vivek Sankaran, Rejection Versus Termination: A Sublessee's Rights in a Lease Rejected in a Bankruptcy Proceeding Under 11 U.S.C. § 365(d)(4), 99 Mich. L. Rev. 853 (2001). To the extent there is any further question on this point, section 365(h)(1)(D) provides that the term "lessee" "includes any successor, assign, or mortgagee permitted under the terms of such lease." 11 U.S.C. § 365(h)(1)(D). It has been suggested that this includes sublessees. See 2 Norton Bankr. L. & Prac. 3d § 46:48 (2008) (stating that the amendments to the Bankruptcy Code pursuant to the Bankruptcy Reform Act of 1994 makes clear that the protections set forth in section 365(h)(1) extend beyond the original lessee).

17.  Section 365(h)(1)(A)(ii) provides that "if the term of such lease has commenced, the lessee may retain its rights under the lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such right to the extent that such rights are enforceable under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1)(A)(ii). State law and specific contractual provisions are two examples of "applicable nonbankruptcy law." See, e.g., In re Dial-A-Tire, 78 B.R. 13, 16 (Bankr. W.D.N.Y. 1987) (stating that subtenants have the right to assert relevant state law to protect their property rights). Accordingly, rejection does not deprive the sublessee of its property interest in the leasehold estate. See Solon Automated Servs., Inc. v. Wood Comm. Fund I, Inc. (In re Wood Comm. Fund I, Inc.), 116 B.R. 817, 818 (Bankr. N.D. Okla. 1990)

("[R]ejection of the lease results merely in the cancellation of covenants requiring performance in the future…by the debtor; rejection does not terminate the lease completely so as to divest the lessee of his estate in the property."), quoting, LHD Realty, 20 B.R. at 719 (quoting 2 Collier on Bankruptcy ¶ 365.09 (15th ed. 1979).

18. Here, Carmax is statutorily and contractually entitled to remain in possession and perform accordingly. To the extent that the Rejection Motion requires the Debtors to surrender possession of the Caxmax Premises, the Rejection Motion should not be viewed as either terminating the Carmax Sublease or requiring Carmax to surrender possession of the Carmax. Similar relief has been granted to sublessees under facts similar to the instant matter. See, e.g., In re Kmart Corporation, et al., Case No. 02-02474 (Bankr. N.D. Ill. March 8, 2002) (stating that the rights of sublessees are preserved under section 365(h) with respect to the Debtors and disputes between the sublessees and the landlords are subject to applicable state law).

19. Respectfully, the Rejection Order should be modified to state that the rejection of the Carmax Sublease does not constitute a termination of the Carmax Sublease and is without prejudice to Carmax's rights under 11 U.S.C. § 365(h), applicable state law, and the Carmax Sublease.

WHEREFORE, Carmax respectfully requests (i) that the Debtors should be ordered to fully comply with all terms of the Carmax Sublease until such time as the Carmax Sublease is properly rejected, which should be no earlier than January 1, 2009 since the Debtors have accepted payment of the December 2008 rent, (ii) that the Debtors should be ordered to pay to the overlandlords the rents that Carmax paid to the Debtors, (iii) that the Rejection Order should be modified to state that the rejection of the Carmax Sublease does not constitute a termination of the Carmax Sublease and is without prejudice to Carmax's rights under 11 U.S.C.

9

§ 365(h), applicable state law, and the Carmax Sublease, and (iv) such other and further relief that the Court deems just and proper.

Dated: Richmond, Virginia
    December 18, 2008

**CARMAX BUSINESS SERVICES, LLC**

By: _____*/s/ Paul S. Bliley, Jr.*_____
                Counsel

Paul S. Bliley, Jr., Esq. – VSB No. 13973
**WILLIAMS MULLEN**
Two James Center, 16th Floor
1021 East Cary Street
Post Office Box 1320
Richmond, Virginia 23218-1320
Phone: 804.783.6489
FAX: 804.783.6507
tschwarz@williamsmullen.com

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 18th day of December 2008 caused the service of a copy of the foregoing Objection of Carmax Business Services, LLC to the Order Pursuant to 11 U.S.C. §§ 105(A), and 554 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property Effective as of December 12, 2008 to be sent to those on the annexed Service List, by first class mail, postage prepaid, at the address designated by them for service of papers and electronically to the parties set forth on the Court's ECF Service List, in this case.

*/s/ Paul S. Bliley, Jr.*
_____

1695422v1

## SERVICE LIST

Daniel F. Blanks, Esq.
Douglas M. Foley, Esq.
McGuire Woods LLP
*Proposed Counsel for the Debtors*
9000 World Trade Center
101 W. Main Street
Norfolk, Virginia 23510

Dion W. Hayes, Esq.
Joseph S. Sheerin, Esq.
Sarah Becket Boehm, Esq.
McGuire Woods LLP
*Proposed Counsel for the Debtors*
One James Center
901 East Cary Street
Richmond, Virginia 23219

Greg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
*Proposed Counsel for the Debtors*
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
*Proposed Counsel for the Debtors*
333 West Wacker Drive
Chicago, Illinois 60606

Lynn L. Tavenner, Esq.
Paula S. Beran, Esq.
Tavenner & Beran, PLC
*Proposed Counsel for the Official Committee of Unsecured Creditors*
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219

Jeffrey N. Pomerantz, Esq.
Pachulski Stang Ziehl & Jones LLP
*Proposed Counsel for the Official Committee of Unsecured Creditors*
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067-4100

Robert J. Feinstein, Esq.
Pachulski Stang Ziehl & Jones LLP
*Proposed Counsel for the Official Committee of Unsecured Creditors*
780 Third Avenue, 36th Floor
New York, New York 10017-2024

Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, Virginia 23219