# EXHIBIT A - PART 5

repair shop (including lubrication and/or service center) that stores vehicles overnight, body and fender shop, or motor vehicle or boat storage facility (neither the foregoing restriction nor anything else in this Sublease to the contrary shall preclude Tenant's sale or rental of delivery vehicles and trailers to its customers as part of its home improvement business); a

aundromat in excess of 4,600 Leasable Square Feet or any dry-cleaning facility (but this shall not be deemed to prohibit nominal supportive facilities for on-site service oriented to pickup and delivery by the ultimate consumer).

**Ground Lease dated October 1, 2004 by and between Landlord, P/A-Acadia Pelham Manor, LLC as the Tenant thereunder and Rusciano & Son Corp. and Secor Lane Corp. as the Landlord thereunder.**

**Permitted Use:**  Tenant may use the Premises for any lawful use or purpose permitted by the Approvals.

**Exclusive:**  None

**Other Restrictions on Use:**  Tenant shall not use or occupy, nor permit or suffer the Premises or any part thereof to be used or occupied for any unlawful or illegal business, use or purpose, or for any business, use or purpose deemed disreputable or extra-hazardous, or for any obscene or pornographic purpose, or any sort of commercial sex-related establishment, or in such manner as to constitute a nuisance of any kind, or for any purpose or in any way in violation of the certificate of occupancy, if any, or of any present or future Requirement.

H-4

**EXHIBIT I**

Recognition Agreement

THIS RECOGNITION AGREEMENT, made as of the _____ day of _____,
200__, by and between P/A-ACADIA PELHAM MANOR, LLC , a Delaware limited liability
company, having an address at 1311 Mamaroneck Avenue, Suite 260, White Plains, New York
10605 ("Landlord"); CIRCUIT CITY STORES, INC., a Virginia corporation, having an office
at, 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant"); and
_____, a [_____] [corporation] [limited] [general]
[partnership], having an address at _____
("Subtenant").

R E C I T A L S:

A.      Landlord and Tenant have entered into a certain Lease Agreement (the "Lease")
dated as of _____, 200__, a short form of which has been recorded in
_____, which demises certain premises (the "Premises") located in the Pelham
Manor Shopping Plaza, Pelham, New York, which Shopping Center is more particularly
described on Exhibit A annexed hereto and made a part hereof.

B.      Section 17.04 of the Lease provides that in the event Tenant subleases all or a
portion of the Premises for a term of at least five (5) years, Landlord shall, upon Tenant's
request, execute and deliver a Recognition Agreement among Landlord, Tenant and each such
subtenant in the form attached to the Lease, in recordable form.

C.      Pursuant to a Sublease dated as of _____ (the "Sublease"), Tenant has
subleased [a portion of] the Premises to Subtenant (the "Subleased Premises").

D.      The parties hereto desire to effectuate the provisions of Section 17.04 of the Lease
with respect to the Sublease and the Subleased Premises.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein
contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1.      Landlord warrants and represents as follows:

        (a)      that it holds a valid leasehold interest under that certain [Ground Lease]
dated as of _____ between Landlord and _____, which is the fee owner
of the Premises,

        (b)      that the Lease is unmodified (except as may be otherwise set forth in
Exhibit B annexed hereto, if any) and is in full force and effect,

        I      that the term of the Lease expires on _____, but is subject to
three (3) renewal periods of five (5) years each, and

        (d)      that Tenant is not in default beyond any notice and cure period.

I-1

2.      Landlord hereby acknowledges receipt of a copy of, and consents to and approves, the Subtenant and the Sublease. The Sublease shall be subject to all the terms and conditions of the Lease.

3.      Landlord agrees that whenever it has an obligation with respect to the Premises, or its consent or approval is required for any action of Tenant under the Lease, then, to the extent such obligation, consent or approval relates to the Subleased Premises or Subtenant's use and occupation thereof, it will perform such obligation in accordance with the terms and conditions of the Lease.

4.      Landlord shall not, in the exercise of any of the rights arising or which may arise out of the Lease or of any instrument modifying or amending the same or entered into in substitution or replacement thereof (whether as a result of Tenant's default or otherwise), disturb or deprive Subtenant in or of its possession or its rights to possession of the Subleased Premises or of any right or privilege granted to or inuring to the benefit of Subtenant under the Sublease, provided that Subtenant is not in default under the Lease beyond the expiration of any applicable notice and cure period.

5.      In the event of the termination of the Lease by reentry, notice, conditional limitation, surrender, summary proceeding or other action or proceeding, or otherwise, or, if the Lease shall terminate or expire for any reason before any of the dates provided in the Sublease for the termination of the initial or renewal terms of the Sublease and if immediately prior to such surrender, termination or expiration the Lease shall be in full force and effect, Subtenant shall not be made a party in any removal or eviction action or proceeding nor shall Subtenant be evicted or removed of its possession or its right of possession of the Subleased Premises be disturbed or in any way interfered with, and the Sublease shall continue in full force and effect as a direct lease between Landlord and Subtenant (provided, that in such event, Subtenant shall, for the then remainder of the term of the Sublease, pay fixed rent and additional rent in an amount equal to the greater of (x) the Annual Minimum Rent and Additional Rent then payable under the Lease, prorated on the basis of the ratio which the Floor Area of the Subleased Premises bears to the Floor Area of the Premises, or (y) the annual minimum rent and additional rent then payable under the Sublease).

6.      Landlord hereby waives and relinquishes any and all rights or remedies against Subtenant, pursuant to any lien, statutory or otherwise, that it may have against the property, goods or chattels of Subtenant in or on the Subleased Premises.

7.      Any notices, consents, approvals, submissions, demands or other communications (hereinafter collectively referred to as "Notice") given under this Agreement shall be in writing. Notices shall be deemed given if sent by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid (a) to Landlord, at the address of Landlord as hereinabove set forth or such other address or persons as Landlord may designate by Notice to the other parties hereto, (b) to Tenant, to Circuit City Stores, Inc., 9954 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, or such other address or persons as Tenant may designate by Notice to the other parties hereto, and (c) to Subtenant, at the address of Subtenant

as hereinabove set forth or such other address or persons as Subtenant may designate by Notice to the other parties hereto. All Notices shall become effective only on the receipt or rejection of same by the proper parties.

8.      No modification, amendment, waiver or release of any provision of this Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or binding for any purpose whatsoever unless in writing and duly executed by the party against whom the same is sought to be asserted.

9.      This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, assigns and sublessees.

[Signature Page Follows]

I-3

IN WITNESS WHEREOF, the parties have caused this Recognition Agreement to be executed under seal the date first above written.

**LANDLORD:**

P/A-ACADIA PELHAM MANOR, LLC

By:  Acadia Property Holdings, LLC
Its:  General Partner

By:  Acadia Realty Limited Partnership
Its:   Sole Member

By:  Acadia Realty Trust
Its:  General Partner

By:_____
Name:_____
Title:_____


**TENANT:**

CIRCUIT CITY STORES, INC.


By:_____
Name:_____
Title:_____


**SUBTENANT:**


_____


By:_____
Name:_____
Title:_____

I-4

STATE OF _____)
                                   ) : ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

STATE OF _____)
                                   ) : ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of P/A-Acadia Pelham Manor, LLC, the limited liability company described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

I-5

WO 445485.5

STATE OF _____ )
                                 ) : ss.
COUNTY OF _____ )

On this ____ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

I-6

**EXHIBIT J**

Subordination, Non-Disturbance and Attornment Agreement

THIS  SUBORDINATION,  NON-DISTURBANCE  AND  ATTORNMENT
AGREEMENT, made as of the _____ day of _____, 200__, by and between
_____, a _____ [corporation] [limited] [general]
[partnership] [national banking association], having an office at
_____ (the "Mortgagee") and CIRCUIT CITY
STORES, INC. a Virginia corporation, having an office at, 9950 Mayland Drive, Richmond,
Virginia 23233 (the "Tenant").

W I T N E S S E T H:

WHEREAS, Mortgagee is the holder of a mortgage (the "Mortgage") covering a parcel
of land owned by P/A-Acadia Pelham Manor, LLC, a Delaware limited liability company (the
"Landlord") together with the improvements [to be] erected thereon (said parcel of land and
improvements thereon being hereinafter referred to as the "Shopping Center" and being more
particularly described on Exhibit A attached hereto and made a part hereof); and

WHEREAS, by a certain Lease Agreement heretofore entered into between Landlord and
Tenant dated as of _____ (the "Lease"), Landlord leased to Tenant a portion of the
Shopping Center, as more particularly described in the Lease (the "Premises"); and

WHEREAS, a copy of the Lease has been delivered to Mortgagee, the receipt of which is
hereby acknowledged; and

**[For mortgages existing as of the date Lease is executed:** WHEREAS, as an
inducement to Tenant to enter into the Lease, [Section 2.04(f)/Section 19.02] thereof provides
that the Lease is conditioned upon Landlord obtaining this Agreement from Mortgagee; and

WHEREAS, the parties desire to satisfy the foregoing condition and to provide for the
non-disturbance of Tenant by the holder of the Mortgage; and]

**[For mortgages occurring after the Lease is executed:** WHEREAS, Section 19.01 of
the Lease provides that the Lease shall become subject and subordinate to a mortgage
encumbering the [leasehold/fee] interest of Landlord in and to the Shopping Center if and when a
non-disturbance agreement is entered into with respect to such mortgage; and

WHEREAS, the parties hereto desire to effect the subordination of the Lease to the
Mortgage and to provide for the non-disturbance of Tenant by Mortgagee.]

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and
agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as
follows:

1.    Mortgagee hereby consents to and approves the Lease and the term thereof,
including the options to extend the term as set forth in the Lease, and covenants and agrees that

the exercise by Tenant of any of the rights, remedies and options therein contained shall not constitute a default under the Mortgage.

2.    Tenant covenants and agrees with Mortgagee that the Lease is made and shall continue hereafter to be subject and subordinate to the lien of the Mortgage, and to all modifications and extensions thereof (and such subordination shall not lessen or diminish Tenant's rights under the Lease), subject, however, to the provisions of this Agreement.

3.    Mortgagee agrees that so long as the Lease shall be in full force and effect, and so long as Tenant shall not be in default under the Lease beyond any applicable notice and grace period:

(a)    Tenant shall not be named or joined as a party or otherwise in any suit, action or proceeding for the foreclosure of the Mortgage or to enforce any rights under the Mortgage or the bond or note or other obligation secured thereby;

(b)    The possession by Tenant of the Premises and Tenant's rights thereto shall not be disturbed, affected or impaired by, nor will the Lease or the term thereof be terminated or otherwise affected by (i) any suit, action or proceeding brought upon the Mortgage or the bond or note or other obligation secured thereby, or for the foreclosure of the Mortgage or the enforcement of any rights under the Mortgage, or by any judicial sale or execution or other sale of the Premises or the Shopping Center, or any deed given in lieu of foreclosure, or by the exercise of any other rights given to any holder of the Mortgage or other documents as a matter of law, or (ii) any default under the Mortgage or the bond or note or other obligation secured thereby; and

I    All condemnation awards and insurance proceeds paid or payable with respect to the Premises or any other part of the Shopping Center shall be applied and paid in the manner set forth in the Lease.

4.    If Mortgagee or any future holder of the Mortgage shall become the owner of the Shopping Center by reason of foreclosure of the Mortgage or otherwise, or if the Shopping Center shall be sold as a result of any action or proceeding to foreclose the Mortgage, or transfer of ownership by deed given in lieu of foreclosure, the Lease shall continue in full force and effect, without necessity for executing any new lease, as a direct lease between Tenant and the then owner of the Shopping Center, as "landlord", upon all of the same terms, covenants and provisions contained in the Lease, and in such event:

(a)    Tenant shall be bound to such new owner under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) and Tenant hereby agrees to attorn to such new owner and to recognize such new owner as "Landlord" under the Lease; and

(b)    Such new owner shall be bound to Tenant under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) which such new owner hereby agrees to assume and perform and Tenant shall, from and after the

J-2

date such new owner succeeds to the interest of "landlord" under the Lease, have the same remedies against such new owner for the breach of any covenant contained in the Lease that Tenant might have had under the Lease against Landlord if such new owner had not succeeded to the interest of "landlord"; provided, however, that such new owner shall not be:

(i)     liable for any act or omission of any prior landlord (including Landlord) unless such act or omission continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(ii)     subject to any defenses which Tenant may have against any prior landlord (including Landlord) unless resulting from any default or breach by such prior landlord which continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(iii)     subject to any offsets which Tenant may have against any prior landlord, except to the extent such offsets are expressly provided under the Lease and Mortgagee has received notice thereof and the opportunity to cure within the applicable time periods set forth in the Lease (it being further agreed that offsets under the Lease that were deducted by Tenant prior to the date upon which the new owner succeeds to the interest of such prior landlord shall not be subject to challenge);

(iv)     bound by any annual minimum rent or additional rent which Tenant might have paid for more than one month in advance of its due date under the Lease to any prior landlord (including Landlord), unless such additional rent is paid in accordance with the applicable provisions of the Lease; or

(v)     bound by any amendment or modification of the Lease made without its consent; notwithstanding the foregoing, Mortgagee acknowledges that the Lease specifically provides for amendments thereof upon the occurrence of certain events described in the Lease (such as, for example, an amendment to the Lease confirming the measurement of the Premises), and, by its execution below, Mortgagee agrees to recognize such amendments as part of the Lease, and Mortgagee further agrees that such new owner shall also be bound by such amendment(s) to the Lease, without any consent on the part of Mortgagee or such new owner.

(c)     Tenant's obligations hereunder shall be effective only so long as Mortgagee is bound to Mortgagee's obligations hereunder.

5.     Tenant will notify Mortgagee of any default by Landlord under the Lease which would entitle Tenant to terminate the Lease or abate the rent payable thereunder and agrees that notwithstanding any provision of the Lease, no notice of termination thereof nor any abatement shall be effective unless Mortgagee has received the aforesaid notice and has failed to cure the subject default within the same time period allowed Landlord under the Lease. It is understood that the abatement provisions of this Section relate to abatements by reason of Landlord's default and do not apply to provisions of the Lease whereby Tenant has the automatic right to abate rentals such as, for example, abatement upon casualty or condemnation.

6.     Neither the Mortgage nor any other security instrument executed in connection therewith shall encumber or be construed as subjecting in any manner to the lien thereof, any

WO 445485.5

trade fixtures, signs or other personal property at any time furnished or installed by or for Tenant or its subtenants or licensees on the aforementioned property regardless of the manner or mode of attachment thereof.

7.    Any notices of communications given under this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid, (a) if to Mortgagee, at the address of Mortgagee as hereinabove set forth or at such other address or persons as Mortgagee may designate by notice in the manner herein set forth, or (b) if to Tenant, to Circuit City Stores, Inc., 9954 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, or such other address or persons as Tenant may designate by notice in the manner herein set forth.  All notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) at the address of the addressee.

8.    This Agreement shall bind and inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors, assigns, and sublessees.

9.    This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

10.    This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

**[to add if Tenant's memorandum of lease has been recorded prior to the subject mortgage]** NOTE: THIS AGREEMENT BY TENANT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL ANY PRIOR MORTGAGES ON THIS PROPERTY HAVE BEEN SATISFIED SO THAT TENANT'S PRIOR AGREEMENTS TO ATTORN TO SAID MORTGAGES AND/OR TO SUBORDINATE ITS LEASE TO SAID MORTGAGES SHALL HAVE BEEN EXTINGUISHED.

IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

[Signature page follows]

J-4

ATTEST:

By:_____
Name:_____
Title:_____

[SEAL]

**MORTGAGEE:**

_____

By:_____
Name:_____
Title:_____

ATTEST:

By:_____
Name:_____
Title:_____

[SEAL]

**TENANT:**

CIRCUIT     CITY     STORES,     INC.

By:_____
Name:_____
Title: _____

J-5

STATE OF _____)
                                )                      :                ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                                  _____
                                                  Notary Public

My Commission Expires:

_____

STATE OF _____)
                                  ) : ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                                  _____
                                                  Notary Public

My Commission Expires:

_____

J-6

**EXHIBIT J-1**

Form of Non-Disturbance Agreement (Ground Lease)

**Non-Disturbance Agreement**

THIS AGREEMENT, made as of other ____ day of _____, 2007, between **Rusciano & Son Corp. and Secor Lane Corp.,** each having an office at One Radisson Plaza, Ste. 1002, New Rochelle, New York 10801 (collectively, the "Ground Lessor") and **Circuit City Stores, Inc.,** a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

R E C I T A L S

A.      Ground Lessor is lessor under a certain lease (the "Over lease") with P/A-Acadia Pelham Manor, LLC, ("Landlord"), as lessee, dated as of October 1, 2004, as amended June 28, 2006 and November 28, 2006, and which demises certain real property located in Westchester County (the "Premises") more particularly described on **Exhibit A** annexed hereto and made a part hereof.

B.      Pursuant to an instrument dated as of _____, 2007 (the "Sublease"), Landlord leased to Tenant a portion of the Premises, which portion is designated as "Demised Premises" on **Exhibit B** annexed hereto and made a part hereof (the "Demised Premises").

NOW, THEREFORE, it is agreed as follows:

1.      Ground Lessor warrants and represents as follows:

    (i)      that it is the ground lessor of the Premises,

    (ii)     that the Over Lease is unmodified and is in full force and effect,

    (iii)    that the initial term of the Over Lease expires 3/31/40, and

    (iv)     that Landlord is not in default under the Over Lease nor has any event occurred which would after notice to landlord and the passage of time become a default of landlord under the Over Lease.

2.      Ground Lessor hereby acknowledges receipt of a redacted copy of, and consents to the Sublease.

3.      Ground Lessor agrees that whenever its consent or approval is required for any action of Landlord under the Over lease, then, to the extent such obligation, consent or approval relates to the Demised Premises or Tenant's use and occupation thereof, it will not unreasonably withhold or unduly delay such consent or approval.

4.      Ground Lessor shall not, in the exercise of any of the rights arising or which may arise out of the Over lease or of any instrument modifying or amending the same or entered into

J-1-1

in substitution or replacement thereof, disturb or deprive Tenant in, or of, its possession or its rights to possession of the Demised Premises or of any right or privilege granted to or inuring to the benefit of Tenant under the Sublease provided it is not in default thereunder.

5.    In the event of the termination of the Over lease by reentry, notice, conditional limitation, surrender, summary proceeding or other action or proceeding, or otherwise, or, if the Over lease shall terminate or expire for any reason before any of the dates provided in the Sublease for the termination of the initial or renewal terms of the Sublease and if immediately prior to such surrender, termination or expiration the Sublease shall be in full force and effect and Tenant is not in default thereunder, Tenant shall not be made a party in any removal or eviction action or proceeding nor shall Tenant be evicted or removed of its possession or its right of possession be disturbed or in any way interfered with, and the Sublease shall continue in full force and effect as a direct lease from Ground Lessor to Tenant.

6.    (a)    If the Over Lease terminates (i) because Landlord has exercised an option to terminate the Over Lease, (ii) by operation of law or (iii) by mutual agreement between Ground Lessor and Landlord, Tenant shall continue the sublease in full force and effect notwithstanding such termination of the Over lease.

(b)    The Sublease shall continue as a direct lease between Ground Lessor and Tenant for the remainder of the term of the Sublease without the necessity of executing a New Sublease, on the same terms and conditions as are in effect under the Sublease immediately preceding the termination of the Over Lease.

7.    (a)    Any notices, demands, reports or communications required, desired or permitted to be given under this Agreement ("Notices") shall be in writing and, any law or statute to the contrary notwithstanding, shall not be effective for any purpose unless same shall be given by registered or certified mail, return receipt requested, postage prepaid, or by any recognized overnight mail carrier, with proof of delivery slip, (public or private), (y) if to Ground Lessor, at the address of Ground Lessor as hereinabove set forth or at such other address as Ground Lessor may designate by Notice, or (z) if to Tenant, then in duplicate, under separate cover, one copy attention of the Sr. Senior Vice President – Real Estate of Tenant, at the address of Tenant as hereinabove set forth or at such other address as Tenant may designate by Notice. During the period of any postal strike or other interference with the mail, personal delivery (with proof of delivery slip or sworn affidavit of service) shall be substituted for registered or certified mail.

(b)    Any Notice hereunder shall be deemed to have been given or served for all purposes on the date of delivery or refusal thereof.

(c)    Notwithstanding anything herein to the contrary, neither party may designate any address for delivery of Notices unless same shall include a (i) street address, (ii) building name and/or number, (iii) street designation, (iv) city, (v) state, and (vi) zip code.

8.    No modification, amendment, waiver or release of any provision of this Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or

WO 445485.5

binding for any purpose whatsoever unless in writing and duly executed by the party against whom the same is sought to be asserted.

9.      This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, assigns and sublessees.

IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

**GROUND LESSOR:**

ATTEST:

**Rusciano & Son Corp.**

By:_____

Name:_____        By:_____

Title:_____        Name:_____

Title:_____

[SEAL]

ATTEST:

**Secor Lane Corp.**

By:_____

Name:_____        By: _____

Title:_____        Name: _____

Title: _____

[SEAL]

**TENANT:**

ATTEST:

CIRCUIT CITY STORES, INC.

By:_____

Name:_____

Title:_____        By:_____

Name: John B. Mulleady

[SEAL]        Title: Vice President, Real Estate &
Construction

J-1-3

STATE OF _____ )
                                ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of RUSCIANO,& SON CORP., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                       _____
                                         Notary Public

My Commission Expires:

_____

STATE OF _____ )
                                  ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of SECOR LANE CORP., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                       _____
                                         Notary Public

My Commission Expires:

_____

STATE OF _____ )
                                  )                :            ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of CIRCUIT CITY STORES, INC., the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                       _____
                                         Notary Public

My Commission Expires:

_____

J-1-4

## EXHIBIT K

<u>Permitted Exceptions</u>

1.  Easements to New Rochelle Water Company recorded in Liber 5024 cp 38 and Liber 5307 cp 166.

2.  Agreement recorded in Liber 5286 cp 26 as corrected in Liber 5521 cp 149.

3.  Declaration of Easement and Party Wall Rights recorded in Liber 5420 cp 31.

4.  Memorandum of Sale and Settlement recorded in Control #442320968.

5.  Resolution of Approval for Site Development Plan and Special Permit for Pelham Manor Shopping Plaza passed by the Board of Trustees, Village of Pelham Manor on August 14, 2006.

6.  The Pelham Ground Lease

7.  Resolution of Approval for Local Law 2 of 2006 (August 14, 2006)

8.  Resolution of Approval for Local Law 3 of 2006

9.  Declaration made by Rusciano and Son Corp. dated November 1, 1955 and recorded in Liber 5521 cp. 150.

K-1

# EXHIBIT L

## Memorandum of Lease

**After Recording, Return to:**

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention:  General Counsel

_____

(The Above Space for Recorder's Use Only)

THIS MEMORANDUM OF LEASE, made as of _____, 2007 by and between P/A-ACADIA PELHAM MANOR, LLC, a Delaware limited liability company, having an office at 1311 Mamaroneck Avenue, Suite 260, White Plains, NY 10605 ("**Landlord**"), and CIRCUIT CITY STORES, INC., a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233 ("**Tenant**").

Preliminary Statement

Landlord has a leasehold interest in certain real property located in the County of Westchester, State of New York, as more particularly described on Exhibit A hereto annexed, together with improvements constructed or to be constructed thereon (the "**Shopping Center**") pursuant to that certain Ground Lease dated as of October 1, 2004, as amended by First Amendment to Ground Lease dated June 28, 2006, between Rusciano and Son Corp. and Secor Lane Corp. (the fee simple owners of the Shopping Center, together as landlord) (the "Ground Landlord"), and Landlord (as tenant), under which Ground Landlord ground leases the land on which the Shopping Center is located to Landlord.  Landlord and Tenant, as of the date hereof, have entered into a lease (the "**Lease**") demising a portion of the Shopping Center as more particularly described therein (the "**Premises**") to Tenant.  In connection therewith, Landlord and Tenant have entered into this Memorandum to confirm the demise of the Premises and to provide notice to any interested party of such demise and of the terms and provisions of the Lease.

NOW, THEREFORE, the parties state as follows:

1.      All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Lease.

2.      The terms and conditions of the Lease are incorporated herein as though set forth in full, whereby Tenant may have and hold the Premises together with any and all rights, benefits, privileges and easements, now or hereafter appurtenant thereto, at the rental and upon the terms and conditions therein stated, for an initial term of approximately ten (10) years

WO 445485.5

commencing on the Commencement Date (the "**Initial Lease Term**"). Under the terms of the Lease, Tenant has the right to extend the Initial Lease Term for three (3) separate and additional periods of five (5) years each after the expiration of the Initial Lease Term.

      3.    This Memorandum of Lease is executed for the purpose of recordation in order to give notice of all of the terms, provisions and conditions of the Lease, including, without limitation:

      (i)    that, subject to certain exceptions more particularly set forth in the Lease, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center to be occupied, for the sale, rental, installation, servicing and/or repairing, either singly or in any combination, of consumer, office and/or automotive electronics products, including, without limitation, televisions, stereos, speakers, video and audio recorders and players and cameras; computer hardware and software and related software services (which include internet access services, entertainment software and entertainment media [such as, by way of example only, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment]); cellular and wireless telephones and telecommunication devices and related accessories; motor vehicle audio, stereo and telephone systems; and technological evolutions of the foregoing;

      (ii)    the restrictions set forth therein on Landlord's ability to lease certain portions of the Shopping Center for certain uses which are otherwise prohibited by the terms of the Lease;

      (iii)    provisions set forth therein regarding Tenant's right to install and maintain signage upon the exterior of the Premises and upon a vertical tenant and/or monument sign, located at the Shopping Center;

      (iv)    provisions set forth therein regarding Tenant's right to use (and to permit Tenant's customers, employees, agents and contractors to use) certain common areas of the Shopping Center (such as, without limitation, the parking facilities of the Shopping Center); and

      (v)    provisions set forth therein regarding certain areas in the Shopping Center in which no improvements are to be constructed, or changes made without the consent of the Tenant.

      4.    In addition to those terms hereinabove set forth, the Lease contains numerous other terms, covenants and conditions which likewise affect not only the Premises but also the Shopping Center, and notice is hereby given that reference should be had to the Lease directly with respect to the details of such terms, covenants and conditions. The Lease and exhibits thereto are hereby incorporated by reference in this Memorandum of Lease and the parties hereby ratify and confirm the Lease as if said Lease were being re-executed by them and recorded. In the event of any conflict between the provisions of this instrument and the Lease, the provisions of the Lease shall control.

[Signature page follows]

L-2

WO 445485.5

**IN WITNESS WHEREOF,** the parties hereto have executed this Memorandum of Lease as of the day and year first above written.

**LANDLORD:**

WITNESS/ATTEST:

P/A-ACADIA PELHAM MANOR, LLC, a
Delaware limited liability company

_____

By: _____

Name: _____

Title: _____

[SEAL]

**TENANT:**

WITNESS/ATTEST:

CIRCUIT CITY STORES, INC.
a Virginia corporation

_____

By:_____
     John B. Mulleady
     Vice President Real Estate & Construction

[SEAL]

L-3

STATE OF _____ )
                                                    ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 2007, before me personally came
_____ to me known, who being by me duly sworn, did depose and say
that he is the _____ of P/A-ACADIA PELHAM MANOR, LLC, the limited liability
company described in and which executed the above instrument and that he signed his name
thereto by order of the Board of Directors of said corporation.

                                        _____
                                        Notary Public

My Commission Expires:

_____


STATE OF _____ )
                                                    ) : ss.
COUNTY OF _____ )


On this ___ day of _____, 2007, before me personally came John B. Mulleady to me
known, who being by me duly sworn, did depose and say that he is the Vice President, Real
Estate & Construction, of CIRCUIT CITY STORES, INC., the corporation described in and
which executed the above instrument and that he signed his name thereto by order of the Board
of Directors of said corporation.

                                        _____
                                        Notary Public

My Commission Expires:

_____


L-4

<u>EXHIBIT A</u>

<u>Legal Description of the Shopping Center</u>

[See Attached]

WO 445485.5

# EXHIBIT M

(Intentionally Omitted)

WO 445485.5

**EXHIBIT N**

<u>VERTICAL TENANT SIGNS</u>

[See Attached]

WO 445485.5



OPTION 1

FACE LAYOUT :   Scale 3/4" = 1'-0"

5'-0"

3'-8 ¾" Logo

6'-0"

**GENERAL SPECIFICATIONS**

Existing illuminated double-sided pylon with tenant panels.
Manufacture & install Circuit City sign faces.
Pigmented white Plexiglas faces with translucent vinyl graphics
applied 1st surface.

• (2) Faces req'd.
• Field survey req'd.

**COLOR SCHEME**

3M 3630-125 Golden Yellow

White Plexiglas

Digitally printed
logo graphics

Black vinyl outline

Created exclusively for: **CIRCUIT CITY**

Address:

City:   **PELHAM MANOR**

State:

Sign Location:

Account Rep:

Client's Rep:   **STEVE BERHYMAN**

Client's Approval:   Date

Landlord's Approval:   Date

THIS DESIGN AND ENGINEERING IS SUBMITTED AS OUR PROPOSAL, AND THE RIGHT TO USE AND REPRODUCE OR EXHIBIT IN ANY FORM, IS NOT AUTHORIZED WITHOUT WRITTEN PERMISSION BY US SIGNS.

**US SIGNS**

Corporate Office
1901 Dallas, Ste. 7000
Houston, TX 77057
713-977-7000
FAX: 713-977-7003

Dallas Regional Office
2220 San Jacinto Blvd.
Denton, TX 76205
940-380-0155
FAX: 940-380-0395

Austin Regional Office
285 Canyon Circle Dr.
Canyon Lake, TX 78133
830-935-4195
FAX: 830-935-4175

Buffalo Regional Office
1400 Sweet Home Rd. - Ste D
Amherst, NY 14228
716-689-7000
FAX: 716-689-0179

Design No.:   Sheet No.:
**US 70019-1**   5 of 5

Date   Rev. Date
**9/18/07**

Designer:   Scale
**EY**   AS NOTED

The purchaser agrees to hold us harmless on any latent motions
any occur as a result of failing for prior and
the use or any under ground structures which
this purchaser or others may communicate.

**EXHIBIT O**

<u>SIGN CRITERIA</u>

[See Attached]

## Tenant's Sign Criteria
### (Pelham Manor Shopping Plaza Only)

The purpose of this tenant's sign criteria is to ensure the design and production of quality signage which reflects the integrity of the architecture and the intent of the Landlord and the Village of Pelham Manor for this Shopping Center.

A.  All Tenant Identification signage shall be subject to both guidelines of this Exhibit D, and written Signage Recommendation Letter from the Landlord.

B.  Tenant shall be limited to the following signages:
1.  Primary Sign – fascia sign located on the Building sign band as designated & established on Landlord's architectural elevation.
2.  Secondary Identification Sign –signs displayed in window & door may not exceed 25% of the window & door area and should be in compliance with the Village ordinance.

C.  Primary Sign Design Criteria
1.  All signage must rest on the sign line as designated & established on Landlord's architectural elevation.
2.  Shop Tenant signs are to be individual channel letters with reverse illumination, halo lit, pin mounted on a Box Pan. All light illumination shall be of great white and must be of L.E.D (light specs: Sloane Great White L.E.D.). Box Pan shall be mounted with lag & shield and shall be painted to match the color of the Façade (split face brick specs: Trendstone – Pembroke C).
3.  All signage face panel shall be of aluminum with welded aluminum returns. It shall be painted with baked enamel red color with PMS # 1806c. All signage back panels shall be of clear lexan.
4.  Total signage square footage shall be proportional to the amount of frontage leased in accordance with Village of Pelham Manor restrictions (e.g., current regulations allow 500sf maximum area of tenant signs per building facade).
5.  Letter style shall be left to Tenant with approval by Landlord. Letter heights for Shop tenant's are 36" maximum and a variable total sign length proportioned with the 4' height Box PAN size (see attached sketch) and consistent with allowable sign square footage.
6.  The use of the corporate crest, logo or insignia shall be permited, provided such crest, logo or insignia meets all the criteria described herein, and the design is acceptable to the Landlord and the Village.
7.  Tenant shall submit a set of sign shop drawings with colored rendering to obtain the Landlord's written approval. These shop drawings and specifications must be presented to the Landlord prior to submission to the local authorities and prior to commencement of the Tenant's sign installation.
8.  All signage shall meet the requirements of the current Village of Pelham Manor Code and Landlord shall have the right to change the sign criteria from time to time if required to be in compliance with Village Code.
9.  All signs shall be constructed and installed at the Tenant's expense, including required sign permits. Signs shall be constructed and installed in accordance with appropriate sign and electrical codes and shall bear a UL label.

10. The tenant will be fully responsible for the performance of its sign contractor and will indemnify, defend and hold harmless the Landlord and its agents from a damage of liability resulting from contractor's work. Tenant will also provide Landlord adequate evidence of tenant's sign insurance coverage, naming Landlord as additionally insured.

**Installation:**

1) Landlord shall approve location of all signs on the building fascia.

2) Landlord shall provide a primary sign circuit to the storefront location. Any additional connections will be the responsibility and at the expense of the Tenant.

3) All fasteners shall be of non-corrosive materials.

4) Sign company names or stamps must be concealed.

5) Fascia signage must be provided with external switch mounted on the raceway.

**Operation:**

Sign lighting will be required to be operated by a time clock. All signs must be illuminated from dusk until 10:00pm.

**Maintenance:**

1) Tenant sign must be kept clean and in good condition. Tenant is required to develop maintenance program to assure that sign will have an attractive appearance inviting to customers and enhance the overall appearance of the shopping center. Tenant shall keep all components of sign fully operational.

2) Tenant shall be responsible for removal of Tenant's sign upon termination of the Lease. All fascia and soffit areas shall be returned to their original condition and all penetrations appurtenant to Tenant sign installation shall repaired to the satisfaction of the Landlord. Landlord reserves the right, should Tenant fail to perform as specified herein, to perform and charge Tenant for the cost of said repairs.

Tenant shall be held liable and shall bear the cost for the removal and/or correction of the sign installation and damage to the building by any sign that does not conform to this criteria or Village of Pelham Manor Code.

## EXHIBIT P

<u>Rules and Regulations</u>

[See Attached]

## RULES AND REGULATIONS

(a)    Tenant shall not affix or maintain outside the Demised Premises including the exterior of the glass panes and supports of the show windows (and within the twenty-four (24) inches of any window), doors and the exterior walls of the Demised Premises, or any place within the Demised Premises if intended to be seen from the exterior of the Demised Premises, any signs, advertising placards, names, insignia, notices, trademarks, descriptive material or any other such like item or items except such as shall have first received written approval of Landlord as to size, type, color, location, copy, nature, and display qualities. No symbol, design, name, mark or insignia adopted by Landlord for the Shopping Center shall be used without the prior written consent of Landlord.  No illuminated signs in the interior of the Demised Premises which are visible from outside the Demised Premises shall advertise any product. All signs located in the interior of the Demised Premises shall be in good taste so as not to detract from the general appearance of the Demised Premises or the Shopping Center.  Tenant shall not use handbills for advertising at the Shopping Center;

(b)    No awnings or other projections shall be attached to the exterior walls of the Demised Premises or the building of which they form a part;

(c)    All loading and unloading of goods shall be done only at such times, in the areas and through the entrances designated for such purpose by Landlord.  Trailers and trucks shall deliver merchandise to the Demised Premises only through the access road or roads designated for such purposes and such motor vehicles shall not be permitted to park in or drive through such areas, and said vehicles will be expeditiously loaded and unloaded and not permitted to park in the Shopping Center at the designated places for periods longer than are reasonably necessary for loading and/or unloading;

(d)    All garbage and refuse shall be kept in the kind of container specified by Landlord, shall be stored in the Demised Premises and prepared for collection in the manner and at the time and places specified by Landlord.  If Landlord shall provide or designate a service for picking up refuse and garbage, Tenant shall use such service and pay the cost therefor;

(e)    No radio or television or other similar device shall be installed, and no aerial shall be erected on the roof, on exterior walls of Demised Premises or the Shopping Center, or on the grounds, without in each instance having obtained Landlord's written consent.  Any such device or aerial so installed without such prior written consent shall be subject to removal without notice at any time;

(f)    No loudspeakers, television sets, phonographs, radios or other devices shall be used in a manner so as to be heard or seen outside of the Demised Premises without the prior written consent of Landlord;

(g)    Sales using the auction method of selling and fire sales shall not be conducted on or about the Demised Premises without the prior written consent of Landlord;

(h)    Tenant shall keep Tenant's display windows illuminated and signs and lights on the storefront lighted each and every day of the Term hereof during the hours designated by Landlord;

(i)    Tenant shall keep the Demised Premises at a temperature sufficiently high to prevent freezing of water in pipes and fixtures;

(j)    Tenant shall not leave merchandise in the service corridors, sidewalks, entrances, passages, courts, corridors or stairways;

(k)    Tenant's right to use the common areas at the Shopping Center shall be limited to ingress and egress, and the parking of automobiles for Tenants, invitees and guests.  Tenant and Tenant's employees shall park their cars only in those portions of the parking area designated for employee parking by Landlord.  Tenant shall furnish Landlord the State automobile license numbers assigned to the car or cars of Tenant and its employees within five (5) days of any request by Landlord;

C:\Documents and Settings\mdlinton\Local Settings\Temporary Internet Files\OLKE\Active_4328673_1_Rules and Regulations - Bloomfield Hills.DOC

(l)   Tenant shall use at Tenant's cost such pest extermination contractor as Landlord may direct and at such intervals as Landlord may reasonably require;

(m)   Tenant will cooperate and participate in all security programs affecting the Shopping Center;

(n)   Tenant shall not make or permit any noise or odor which Landlord deems objectionable to emanate from the Demised Premises and no person shall use the Demised Premises or any part thereof as a sleeping quarter, sleeping apartment or lodging room;

(o)   Except for those exclusively for use by employees of Tenant which are not visible from the sales area of the Demised Premises or the exterior of the Demised Premises, Tenant shall not operate any coin or token operated vending machines or similar device for the sale of any goods, wares, merchandise, food, beverages or services including, but not limited to, pay telephones, pay lockers, pay toilets, scales, amusement devices and machines for the sale of beverages, food, candy, cigarettes or other commodities, without the prior written consent of Landlord;

(p)   Tenant shall not place or maintain any temporary fixture for the display of merchandise in front of or within any entrance to the Demised Premises which is within six (6) feet of the front lease line of the Demised Premises or within three (3) feet of any recessed entry of the Demised Premises, except such as shall have first received the written approval of Landlord as to size, color, location, nature and display qualities;

(q)   Tenant shall not make noises, cause disturbances or vibrations or use or operate any electrical or electronic devices or other devices that emit sound or other waves or disturbances, or create odors, any of which may be offensive to other tenants and occupants of the Shopping Center or that would interfere with the operation of any device or equipment or radio or television broadcasting or reception from or within the Shopping Center or elsewhere; and

(r)   The plumbing facilities in the Demised Premises shall not be used for any purpose other than that for which they are constructed, and no foreign substance of any kind shall be thrown therein, and the expenses of any breakage, stoppage or damage resulting from a violation of this provision shall be borne by Tenant, who shall, or whose employees, agents or invitees shall, have caused it.

Landlord may amend, modify, and delete the Rules and Regulations or add new and additional reasonable rules and regulations for the use and care of the Demised Premises, the building of which the Demised Premises are a part and the Common Areas. Tenant understands and agrees that such rules and regulations are necessary in order to maintain a high quality shopping center although they may affect Tenant's method of operation and merchandising its store at the Demised Premises and Tenant agrees to comply with all such rules and regulations upon notice to Tenant from Landlord or upon the posting of same in such place within the Shopping Center as Landlord may designate.

## FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE** (hereinafter the "Amendment"), made and entered into this _1st_ day of _March_____, 2008, by and between **P/A -ACADIA PELHAM MANOR, LLC**, whose principal mailing address is c/o Acadia Realty Trust, 1311 Mamaroneck Avenue, Suite 260, White Plains, NY 10605 (hereinafter "Landlord") and **CIRCUIT CITY STORES, INC.**, whose principal mailing address is 9950 Mayland Drive, DR1 - Fifth Floor, Richmond, VA 23233 (hereinafter "Tenant").

### WITNESSETH:

**WHEREAS,** Landlord and Tenant heretofore entered into a Lease Agreement dated August 3, 2007 (hereinafter the "Existing Lease") for approximately 20,331 square feet of space situate in the shopping center known as Pelham Manor Shopping Plaza (hereinafter "Demised Premises"); and

**WHEREAS,** Landlord and Tenant desire to amend the scope of Landlord's Work (as defined in the Lease) as more specifically set forth herein.

**NOW, THEREFORE,** in consideration of the Demised Premises and the sum of Ten and 00/100 ($10.00) Dollars and other good and valuable consideration, in hand, paid by Tenant to Landlord, the mutual receipt and legal sufficiency of which is hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows:

1.    All capitalized terms used in this Amendment shall have the meanings as defined and used in the Lease unless otherwise defined herein. The modifications to the Lease provided for in this Amendment shall be made effective as of _March   1___, 2008 (herein referred to as the "Effective Date").

2.    All defined terms used in this Amendment shall have the meanings as set forth in the Existing Lease, unless otherwise defined herein. The provisions of this Amendment shall be deemed merged into the Existing Lease and in the event of a discrepancy between the Existing Lease and this Amendment, this Amendment shall prevail (the Existing Lease and this Amendment, collectively, the "Lease")

3.    Notwithstanding anything contained in the Lease to the contrary, "Exhibit 1.B. Building Shell Specifications – Shell Deal, Date: 07/11/07" of the Existing Lease is hereby deleted in its entirety and replaced with "Exhibit 1.B. Building Shell Specifications – Shell Deal, Date 11/02/07" attached hereto and made a part hereof.

4.    In accordance with Section 2.05(a) of the Lease, Landlord's Possession Date notice dated September 28, 2007 was delivered to Tenant informing Tenant that the Possession Date was to occur at 8:00 A.M. on January 31, 2008; provided, however, Tenant had the right to delay delivery until February 2, 2008. Instead, Tenant requested that the Possession Date be postponed until May 1, 2008. Landlord granting this request will result in Tenant receiving an additional three (3) months of free rent. Notwithstanding such free rent, Landlord will agree to accommodate such request upon the following: (i) except as specifically provided in subparagraph (ii) hereof, the Possession Date shall be modified from January 31, 2008 to **March 1, 2008** upon which date Tenant shall be deemed to have taken possession of the Demises Premises; and (ii) for purposes of Section 2.03(b) of the Lease only, the Possession Date will be deemed to be **May 1, 2008.**

5.    This Amendment may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, agreement or discharge is sought.

6.    This Amendment shall be binding upon, and inure to the benefit of the parties hereto, their respective legal representatives, successors and their respective assigns. This Amendment shall not be construed against the party who caused the same to be prepared. The signatory of this document on behalf of

N:\Legal\HEATHER\Shopping Centers\Pelham Manor\Circuit City - First Amendment 2 (clean).doc

| Legal | 1 | |
| Leasing | | |

Tenant represents that he/she is an officer of the corporation and is duly authorized to execute this document.

7.      Except as modified by this Amendment, the Lease and all the terms, covenants, conditions, provisions and agreements thereof are hereby in all respects ratified, confirmed and approved.   This Amendment contains the entire understanding between the parties with respect to the matter contained herein. No representations, warranties, covenants or agreements have been made concerning or affecting the subject matter of this Amendment, except as are contained herein.

8.      The submission of this Amendment to Tenant shall not be construed as an offer, nor shall Tenant have any rights with respect hereto, unless and until Landlord shall execute a copy of this Amendment and deliver the same to Tenant.

9.      Tenant certifies that: (i) Tenant is not (nor is any principal, member, officer, agent or any person or entity having an ownership interest in Tenant (collectively, the "Tenant Parties") designated as a terrorist, "Specially Designated National and Blocked Person" or other banned or blocked person, entity, nation or transaction pursuant to any Executive Order, law, order, rule, regulation, statute or other official documentation issued, enforced or administered by the United States Treasury Department, the Office of Foreign Assets Control or by any other official governmental body of the United States of America; and (ii) Tenant is not (nor is any Tenant Party) engaged in this transaction, directly or indirectly on behalf of, or acting, instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation.  Tenant hereby agrees to defend, indemnify, and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities and expenses (including, but not limited to, attorneys' fees, costs and expenses) arising from or related to any breach of the foregoing certification.

**IN WITNESS WHEREOF,** the parties have respectively signed and sealed this Amendment the day and year first above written.

ATTEST:                              LANDLORD:

                                     P/A-ACADIA-PELHAM MANOR, LLC

_____              BY: _____
Secretary/Assistant Secretary

                                     NAME: _____
                                         Robert Masters
                                         Senior Vice President
                                     ITS: _____


ATTEST:                              TENANT:

                                     CIRCUIT CITY STORES, INC.

                                     BY: _____
_____
Secretary/Assistant Secretary        NAME: _____
                                         John B. Mulleady
                                         Vice President
                                         Real Estate & Construction
                                     ITS: _____



# 1.B.  BUILDING SHELL SPECIFICATIONS – SHELL DEAL

Date: 11/02/07

## CONCRETE

- Site Concrete – Provide curbs and walks around the building, compactor pad, loading dock and retaining walls, concrete ramp at car stereo installation (per Attachment "12"), and concrete landings at exterior doors, (per Civil Plans).

- Foundation System – Provide the foundations to meet Civil Plans.

- Floor Slab – Provide all floor slabs, except for the slabs for the toilets, the fire riser room, and the electrical panel location, in accordance with Tenant's Floor Plan (Attachment "4").

- Ramp – Provide (21'-0" wide x 20'-0" long) ramp for exterior access to the Car Stereo Installation Center as indicated on Attachment 12

## MASONRY

- Masonry – Provide exterior masonry walls per Landlord's Shell Plans and state building codes.

## STEEL

- Provide steel columns, joist girders and joists per Landlord's Shell Plans.

## WOOD AND MOISTURE PREVENTION

- Provide rigid roof insulation with an 'R' value of 18.

- Provide a single ply membrane roof system with a minimum 10 year warranty.

- Provide all necessary flashing, copings, etc. per Landlord's Shell Plans.

## FINISHES

- Provide all exterior finishes (paint, EIFS, etc.) per Landlord's Shell Plans.

## DOORS, WINDOWS, GLASS

- Provide temporary plywood seal at the main entry in order to allow Tenant to install their own Besam door system.

- Provide all exterior hollow metal doors, frame, and hardware per Landlord's Shell Plans, except as noted otherwise.

- Install the trash compactor frame, Tenant to provide Landlord with the frame.

- Provide the storefront per the Landlord's Shell Plans.

- Allow Tenant to provide its own interior security grille in storefront system per Tenant's prototypical specifications.

## EQUIPMENT

- Provide and install the overhead door for the loading dock

- Allow Tenant to provide its own dock seals, bumpers, and metal hood, per the approved elevation (to be attached).

- Provide the cut-out for the loading dock's mechanical leveler. The dock leveler platform is 6'-0" wide by 8'-4" long with a capacity of 30,000 lbs. (Tenant to provide the complete system including the leveler and frame). Landlord will install frame, Tenant to provide Landlord with frame timely so as not to delay Landlord's work.

## VERTICAL TRANSPORTATION

- The following items should be provided:

  Stairs to meet building code requirements, except as noted otherwise as being provided by Tenant.

## MECHANICAL

- Plumbing – Per Landlord's Shell and Civil Plans

## ELECTRICAL

- Provide the secondary electrical service conduit stubbed through the floor slab to Tenant's required entry point within the building (at one location only).

- Provide the 4" telephone conduit stubbed through the floor slab to Tenant's required entry point within the building (at one location only).



**PELHAM MANOR SHOPPING CENTER, PELHAM, NEW YORK**

**PRE-PETITION AMOUNTS DUE:**

| Bill Date | Period Covered | Bill Summary | | Amount Due |
|---|---|---|---|---|
| 11/1/2008 | 11/1/08 – 11/10/08 | CAM | | $1,355.40 |
| 11/1/2008 | 11/1/08 – 11/10/08 | Rent | | $11,746.80 |
| | | | TOTAL: | $13,102.20 |

**POST-PETITION AMOUNTS DUE:**

| Bill Date | Period Covered | Bill Summary | | Amount Due |
|---|---|---|---|---|
| 11/1/2008 | 11/11/08 – 11/30/08 | CAM | | $2,710.80 |
| 11/1/2008 | 11/11/08 – 11/30/08 | Rent | | $23,493.60 |
| 12/1/2008 | 12/1/08 – 12/31/08 | CAM | | $4,066.20 |
| 12/1/2008 | 12/1/08 – 12/31/08 | Rent | | $35,240.40 |
| | | | TOTAL: | $65,511.00 |