KELLEY DRYE & WARREN LLP
James S. Carr (*pro hac vice*)
Robert L. LeHane (*pro hac vice*)
Howard S. Steel (*pro hac vice*)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108
David J. Ervin (VSB No. 34719)
Tel: (202) 342-8436
Fax: (202) 342-8451

Attorneys for Developers Diversified Realty
Corporation, General Growth Properties, Inc.,
Weingarten Realty Investors, Basser-Kaufman, Inc.,
Philips International Holding Corp., Regency Centers, L.P.,
AAC Management Corp., Jones Lang LaSalle Americas, Inc.,
Continental Properties Company, Inc., and
Benderson Development Company, LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>Circuit City Stores, Inc.<br>*et. al.*,<br><br>       Debtors. | Chapter 11<br><br>Case No. 08-35653-KRH |

**JOINDER OF DEVELOPERS DIVERSIFIED REALTY CORPORATION, GENERAL GROWTH PROPERTIES, INC., WEINGARTEN REALTY INVESTORS, BASSER-KAUFMAN, INC., PHILIPS INTERNATIONAL HOLDING CORP., REGENCY CENTERS, L.P., AAC MANAGEMENT CORP., JONES LANG LASALLE AMERICAS, INC., CONTINENTAL PROPERTIES COMPANY, INC., AND BENDERSON DEVELOPMENT COMPANY, LLC IN MOTIONS FOR AN ORDER COMPELLING IMMEDIATE PAYMENT OF POST-PETITION RENT**

Developers Diversified Realty Investors, General Growth Properties, Inc., Weingarten Realty Investors, Basser-Kaufman, Inc., Philips International Holding Corp., Regency Centers, L.P., AAC Management Corp., Jones Lang LaSalle Americas, Inc., Continental Properties Company, Inc., and Benderson Development Company, LLC (collectively, the "<u>Landlords</u>"), by and through their attorneys, Kelley Drye & Warren LLP, submit this Joinder in various

Motions[1] for an Order compelling the Debtors to immediately pay post-petition rent pursuant to sections 365(d)(3) and 503(b)(1)(A) of the Bankruptcy Code (the "Joinder"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Landlords request that the Court remain consistent with its prior decisions and adopt the proration approach, overrule the Debtors' objections and compel the Debtors to immediately pay the November Stub rent pursuant to section 365(d)(3) of the Bankruptcy Code. Proration is consistent with the plain language of the statute and the legislative history of section 365(d)(3) of the Bankruptcy Code, has been adopted in a majority of decisions in this jurisdiction, furthers the overall purposes of the Bankruptcy Code, and provides an equitable resolution to the stub rent issue that confronts every retail bankruptcy case.

2. Two days ago, on Wednesday December 17, 2008, Judge Allan Gropper issued a particularly instructive and well reasoned decision in *In re Stone Barn Manhattan LLC f/k/a Steve & Barry's LLC et al.*, case no. 08-12579, pending in the Southern District of New York on the issue of stub rent. In *Stone Barn*, Judge Gropper adopts proration and holds the debtors responsible for the stub rent measured on a daily basis as it accrued after the date of the orders for relief until the end of that month. A copy of Judge Groppers' Memorandum of Decision (the "Memorandum of Decision") is attached hereto as Exhibit A.

## BACKGROUND

3. On November 10, 2008 (the "Petition Date") the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

---

[1] *See, e.g.,* Motions of Burbank Mall Associates (Docket No. 296), Woodlawn Trustee, Incorporated (Docket No. 390), Taubman Auburn Hills Associates Limited Partnership (Docket No. 471), and Centro Properties Group (Docket No. 712).

2

4.     The Debtors remain in possession of their properties and continue to manage their business as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.     The Landlords are the owners, or managing agents for the landlords of numerous shopping centers located throughout the United States. The Debtors lease retail space from the Landlords pursuant to written leases (the "Leases") at the seventy-nine (79) locations identified in the chart annexed hereto as Exhibit B (the "Leased Premises").

6.     The Debtors have not paid any of the November rent due under the Leases, including the post-petition rent for November 2008 (the "Stub Rent").

7.     On December 3, 2008, the Landlords filed an objection to the Debtors' motion (the "Sale Procedures Motion"), dated November 25, 2008 for orders:  (I) approving bidding and auction procedures for the sale of unexpired nonresidential real property leases for closing stores, (II) setting a sale hearing date, and (III) authorizing and approving (A) the sale of certain nonresidential real property leases free and clear of liens, claims and encumbrances, (B) assumption and assignment of certain unexpired nonresidential real property leases, and (C) lease rejection procedures.

8.     On December 3, 2008, the Landlords also filed a limited objection to the Debtors' motion dated November 20, 2008, for an order pursuant to section 365(d)(4) of the Bankruptcy Code extending the time within which the Debtors may assume or reject unexpired leases of nonresidential real property (the "365(d)(4) Motion").

9.     On December 3, 2008, the Debtors filed their omnibus objection (the "Omnibus Objection") to the motions of various landlords to compel allowance and payment of post-petition obligations as administrative expenses pursuant to sections 365(a) and 503(b) of the Bankruptcy Code (the "Motions to Compel").

10. At the December 5, 2008 hearing on the Motions to Compel, the Sale Procedures Motion and the 365(d)(4) Motion, the Debtors and all of the landlords appearing at that hearing agreed to adjourn consideration of the Motions to Compel and the Omnibus Objection until December 22, 2008. The Debtors stipulated on the record at the December 5th hearing that any landlord with a pending objection appearing or participating in that hearing would be permitted to appear and argue for immediate payment of stub rent at the hearing on December 22, 2008 without filing any additional pleadings.

## ARGUMENT

11. The issue of when a debtor must pay post-petition rent during the first month of a bankruptcy case has produced two divergent schools of thought: the "proration" rule and the "billing date" rule. Under proration, rent must be timely paid as it accrues for every day the debtor occupies the property. Under the billing date approach, the debtor must make any payment under a lease that first becomes due after the order for relief, even if it is attributable to periods prior to the order for relief. The proration approach is fair, equitable and consistent with the purposes of the Bankruptcy Code and prior decisions of this Court, while the billing date approach leads to absurd results and is not in the best interests of this estate.

**I.   The Debtors Should Pay Stub Rent Immediately Pursuant To Section 365(d)(3) Of The Bankruptcy Code**

    **A.   Section 365(d)(3)**

12. Section 365(d)(3) of the Bankruptcy Code protects Landlords from delays in post-petition payments:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

13. The plain language of section 365(d)(3) of the Bankruptcy Code unequivocally mandates that during the post-petition period in which a debtor is deciding whether to assume or reject an unexpired lease of nonresidential real property, the debtor must remain current on all obligations under the lease. *See, e.g., In re Trak Auto Corporation,* 277 B.R. 655, 662 (Bankr. E.D. Va. 2002), rev'd on other grounds; *In re Best Products Co., Inc,* 206 B.R. 404, 407 (Bankr. E.D.Va. 1997). *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996); *In re Jamesway Corp.*, 179 B.R. 33, 36 (Bankr. S.D.N.Y. 1995); *In re All For A Dollar, Inc.*, 174 B.R. 358, 360 (Bankr. D. Mass. 1994); *In re Manhattan King David Restaurant, Inc.*, 163 B.R. 36, 40-41 (Bankr. S.D.N.Y. 1993); *In re Buyer's Club Markets, Inc.*, 115 B.R. 700, 702 (Bankr. D. Col. 1990). "The language of [Bankruptcy] Code § 365(d)(3) is clear that the obligation of the Debtor to perform in a timely manner is mandatory, not permissive." *In re New Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996).

14. Courts, however, have struggled with determining when an "obligation" arises under a lease, and the issue has lead to a split of authority in the bankruptcy courts. The Bankruptcy Code does not define when a debtor's obligations "arise" for purposes of determining when they must be treated as a post-petition claim entitled to administrative expense priority. *Trak Auto,* 277 B.R. at 662.

15. In *Stone Barn*, after careful consideration and despite having been previously reversed on appeal on this issue, Judge Gropper again adopted the proration doctrine and held that the debtors are responsible for the stub rent measured on a daily basis as it accrued after the date of the orders for relief and until the end of that month. Memorandum of Decision at p. 12.

> Section 365(d)(3), as amended in 1984, afforded landlords an enhanced right to timely performance under a commercial lease during [the post-petition, pre-rejection period], but it did not disturb the principle that courts should construe the accrual of obligations during the post-petition, pre-rejection period in a

> manner that faithfully carries out the purposes of the bankruptcy laws as a whole, as well as provide appropriate protection to landlords. Proration accomplishes this result.

Memorandum of Decision at p. 14. Judge Gropper further reasoned that the proration approach is relatively simple to apply, equitable, and consistent with pre-amendment practice. Memorandum of Decision at p. 14; *See also In re Child World,* 161 B.R. 571, 575-76 (S.D.N.Y. 1993).

### B. Immediate Payment of Stub Rent is Consistent with Congressional Intent

16. "There is no dispute as to the purpose of § 365(d)(3). Congress enacted the statute to ameliorate the perceived inequities that lessors of nonresidential real property had faced during the period after a Chapter 11 filing but before assumption or rejection." Memorandum of Decision at p. 6. The intent behind section 365(d)(3) of the Bankruptcy Code was to prevent landlords from becoming involuntary creditors of the debtor's estate. *Trak Auto,* 277 B.R. at 663. Thus, "[a] landlord cannot be required to provide post-petition services without current payments for those services" as this would run afoul of the very purpose of the provision. *Id. quoting In re Warehouse Club, Inc.,* 184 B.R. 316, 317 (Bankr. N.D. Ill. 1995).

17. The passage of section 365(d)(3) rectified the pre-1984 injustice of landlords being forced to provide debtors with the post-petition use of their property without current payment. The underlying rationale was

> Congress' paramount concern. . . . that the landlord be paid for the debtor's use of the property during the Chapter 11. The legislative history to Section 365(d)(3) makes it clear that the section was intended to assure that landlords receive current payment under their leases while the debtor determines whether the lease should be assumed or rejected.

*In re Ernst Home Center, Inc.*, 209 B.R. 974, 983-84 (Bankr. W.D. Wash. 1997). As explained by Senator Hatch, the only senator to discuss the legislative history of section 365(d)(3):

6

> [T]he landlord is forced to provide current services - the use of its property, utilities, security, and other services - without current payment. No other creditor is put in this position . . . . The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property. . . .

*Id.* (*quoting* 130 Cong. Rec § 8894-95 (daily ed. June 29, 1984) (remarks of Senator Hatch)).

18. The proration doctrine is consistent with Congressional intent to lessen the burden placed on landlords that provide services post-petition without receiving current payment, which Congress codified in section 365(d)(3) of the Bankruptcy Code. *See In re Dunn Industries,* 320 B.R. 86, 90-91 (Bankr. D. Md. 2005); *Best Products Co.*, 206 B.R. at 407. Conversely, the stated goal of section 365(d)(3) of the Bankruptcy Code is frustrated when courts adopt the billing date doctrine because landlords are deprived of current payment for the debtor's post-petition use of the Leased Premises during the stub period. *See In re NETtel Corporation,* 289 B.R. 486 (Bankr. D.D.C. 2002).[2]

### C. Immediate Payment of Stub Rent is Consistent with Relevant Case Law

19. As this Court is aware, for purposes of section 365(d)(3), there is a split among the courts as to when an "obligation" arises under a lease and there is no controlling decision[3] by the Fourth Circuit on which doctrine should be used by the Bankruptcy Courts when applying section 365(d)(3) of the Bankruptcy Code. The Debtors request that based on the *Rose's Stores* decision that this Court should reject the proration doctrine in favor of the billing date doctrine. Omnibus Objection at pp. 16-19.

---

[2] If the Court finds in favor of the billing date doctrine, the Landlords submit that the Debtors will have substantial liability to the Landlords for 2008 tax obligations pursuant to the Leases, which will be billed in the post-petition, pre-rejection period.

[3] In an unpublished opinion, the Fourth Circuit apparently adopted the billing method due to the contractual language contained in the leases. *See Rose's Stores, Inc. v. Saul Subsidiary I, L.P. (In re Rose's Stores, Inc.),* 155 F.3d 560, 1998 WL 393984 (4th Cir. 1998) (unpublished table opinion). As an unpublished decision, it is not binding authority for this Court pursuant to Rule 36 of the U.S. Court of Appeals for the Fourth Circuit. *See Trak Auto,* 277 B.R. at 663 fn. 2.

20.     However, a majority of jurisdictions follow the proration doctrine for determining when an "obligation" arises under section 365(d)(3) of the Bankruptcy Code. *Trak Auto,* 277 B.R. at 662; *Best Products Co.*, 206 B.R. at 406; *In re Ames Department Store, Inc.*, 306 B.R. 43, 63-64 (Bankr. S.D.N.Y. 2004); *In re PYXSYS Corporation*, 288 B.R. 309, 313-314 (Bankr. D. Mass. 2003); *In re National Refractories & Minerals Corp.,* 297 B.R. 614, 619 (Bankr. N.D. Cal. 2003); *In re Travel 2000, Inc.,* 264 B.R. 444, 446 (Bankr. W.D. Mich. 2001); *See also* Memorandum of Decision at p. 10. Moreover, all the published decisions within this jurisdiction have adopted the proration doctrine.

21.     The courts adopting the proration doctrine stress that "(i) proration is simple to apply; (ii) the method produces equitable results as it allows both landlords and tenants to get what they bargained for – current service for current payment – at the rate agreed to in the lease; (iii) proration is consistent with the long-standing, pre-amendment practice of prorating lease obligations pending rejection; (iv) neither the statute nor its legislative history indicates proration is precluded; and (v) proration is consistent with other provisions of the Bankruptcy Code, such as §§ 365(g) and 502(g)." Memorandum of Decision at p. 11; *citing to Ames,* 306 B.R. at 68-80.

22.     Relying on the minority approach adopted in *Rose's Stores*, the Debtors, despite their continued use and occupancy of the Leased Premises, have taken the position that the payment of Stub Rent is not an obligation that the Debtors must promptly perform under section 365(d)(3) because the obligation to pay rent for November arose under the Leases on November 1, 2008, and the Debtors filed for bankruptcy on November, 10, 2008. The Landlords respectfully request that the Court adhere to the prior decisions within this jurisdiction and adopt the proration doctrine.

### D. Proration is Consistent with the Goals of the Bankruptcy Code

23. The objective of section 365(d)(3) of the Bankruptcy Code is straightforward – it requires landlords to receive timely compensation for the post-petition, pre-rejection use and occupancy of the Landlords' property at the contract rate specified in the Leases, rather than the Landlords having to wait for payment of an administrative claim under section 503(b)(1) of the Bankruptcy Code. *See* 130 Cong. Rec. § 8894-95 (daily ed. June 29, 1984) (remarks of Sen. Hatch).

24. Proration is also consistent with and promotes the overall purposes of the Bankruptcy Code of like treatment for similarly situated creditors. *Handy Andy,* 144 F. 3d at 1127-1128. In contrast, the billing date approach disturbs this primary purpose of the Bankruptcy Code. "[A] court should not resolve questions of statutory interpretation so that a particular Bankruptcy Code section conflicts and disturbs the overall purpose and function of the Code." *In re R.H. Macy & Co.,* 170 B.R. 69, 73 (Bankr. S.D.N.Y.1994). Section 365(d)(3) of the Bankruptcy Code should be read within the context of the entire Bankruptcy Code and not in isolation. *In re Family Snacks, Inc.*, 257 B.R. 884, 899 (8th Cir. BAP 2001).

25. The billing date doctrine results in unfair treatment of Landlords *vis à vis* other creditors who provide services and/or products to the Debtors post-petition. In *Travel 2000,* the Bankruptcy Court for the Western District of Michigan compared the situation of a debtor's landlords where the debtor does not pay the stub rent, to a debtor's trade creditors that continue doing business with the debtor post-petition, and found the billing date doctrine was inequitable:

> Had a trade creditor of Travel 2000 sent a bill for goods on the first of the month, with the goods arriving on the third, when Travel 2000 filed bankruptcy on the second the creditor would have the option of awaiting payment or demanding return of the goods. The creditor would not be required to both forfeit the goods and the payment. If the trade creditor decided to continue dealing with the debtor post-petition, it would do so voluntarily and thus knowingly

9

> assume the risk of not being fully compensated. The landlord, on the other hand, is forced, involuntarily, to deal with the debtor/tenant until the debtor rejects the lease. Under the performance date approach of § 365(d)(3), the landlord would not be paid. We believe this result constitutes an iniquitous application of the Bankruptcy Code. It may also be a step toward violating the involuntary servitude prohibition of the Thirteenth Amendment to the United States Constitution.

*Travel* 2000, 264 B.R. at 448-449.

26.     Where proration is not adopted, debtors are encouraged to file on the second day of a month. *See* Memorandum of Decision at p. 17. Denying the Landlords' request for immediate payment of the Stub Rent would allow the Debtors to defer payment of the Stub Rent until the confirmation of the Debtors' plan of reorganization. This delay in compensation for the current use of the Leased Premises is inequitable to the Landlords because it places them in the position of being involuntary post-petition lenders to the Debtors; a result that is inconsistent with the primary goal of the Bankruptcy Code of fairness to all creditors.

27.     The Debtors urge the Court to deny immediate payment of Stub Rent because Stub Rent claims are not "super-priority" claims, and therefore payment of Stub Rent should await confirmation of a plan. Omnibus Objection at pp. 9-16. However, the Debtors' request does not conform with the timely payment requirement of section 365(d)(3) of the Bankruptcy Code, nor is it supported by the equities of the case. A real property lease is a contract in which the landlord is bound to provide the tenant with the right to use and occupy the premises each day the lease is in effect. The tenant is, in turn, expected to pay for that right. The Landlords, like all other post-petition creditors and entities that do business with a debtor-in-possession, are entitled to current payment for services or goods provided post-petition. Application of the billing date doctrine to payment of the Stub Rent will provide an immediate windfall to the Debtors at the expense of the Landlords, and is, therefore, inequitable as between the Landlords,

10

the Debtors and other creditors.  Adopting the proration doctrine, on the other hand, will ensure that similarly situated creditors are treated the same.

## II.     The Landlords Are Entitled To Administrative Claims For Stub Rent Pursuant To Section 503(b)(1)(A) Of The Bankruptcy Code To Be Paid Immediately

28.     Notwithstanding section 365(d)(3) of the Bankruptcy Code, the Landlords are also entitled to administrative expense claims under section 503(b)(1)(A) of the Bankruptcy Code.  Section 503(b)(1)(A) of the Bankruptcy Code provides, in pertinent part, that "there shall be allowed administrative expense . . . for the actual, necessary costs and expenses of preserving the estate[.]"  11 U.S.C. § 503(b)(1)(A).  "'[A]ctual and necessary' should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible."  *In re Cohen and Sons Caterers, Inc.,* 143 B.R. 27, 28 (E.D. Pa. 1992).  In addition, "it is well settled . . . that a claim will be afforded priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business."  *In re Chateguay Corp.,* 10 F.3d 944, 956 (2d Cir. 1993) *citing Trustees of Amalgamated Ins. Fund v. McFarlin's Inc.,* 789 F.2d 98, 101 (2d Cir. 1986).

29.     The Debtors claim that payment of Stub Rent is not required pursuant to section 503(b) of the Bankruptcy Code and that section 365(d)(3) specifically renders section 503(b) of the Bankruptcy Code inapplicable to Debtors' post-petition obligations under the Leases is misguided and totally inconsistent with the purpose of the statute.  *See* Omnibus Objection at pp. 21-31.  Under section 503(b)(1)(A) of the Bankruptcy Code, post-petition obligations and liabilities, such as rent, are entitled to administrative expense status.  *See In re Microvideo Learning Systems, Inc.,* 232 B.R. 602, 604-05 (Bankr. S.D.N.Y. 1999), *aff'd,* 254 B.R. 90 (S.D.N.Y. 1999), *aff'd* 227 F.3d 474 (2d Cir. 2000).

11

30. The Debtors continued occupation of the Leased Premises confers benefits to the estate as the Debtors are using the Leased Premises to further enhance the estate by continuing operations and avoiding the costs of otherwise storing and moving its property. *See Trak Auto,* 277 B.R. at 666. Therefore, the Landlords, whose properties are being occupied and used by the Debtors post-petition, have valid administrative claims for unpaid Stub Rent. *See In re HQ Global Holdings,* 282 B.R. at 173.

31. Furthermore, although section 503 of the Bankruptcy Code does not specifically address the question of when a claim for an administrative expense is to be paid, the amounts that are due and owing for Stub Rent should be paid immediately. *In re Pudgie's Dev. of NY, Inc.*, 202 B.R. 832, 836 (Bankr. S.D.N.Y. 1996).

32. While the Debtors have and will continue to benefit from their use of the Leased Premises, the Landlords have not received the benefit of their bargain set forth in the Leases (*i.e.* timely rent payments). The Debtors' position *vis à vis* the Landlords is in stark contrast to the Debtors' position *vis à vis* the Debtors' vendors. One of Debtors' "first day" motions included a request to grant administrative expense status pursuant to section 503(b)(1)(A) of the Bankruptcy Code to the Debtors' vendors with respect to pre-petition orders for goods or services provided post-petition.[4] The Debtors were granted permission to pay these vendor claims in the ordinary course of business.[5]

33. Thus, the Landlords are not only involuntary post-petition creditors, but if their administrative claims for the Stub Rent are not paid immediately, those claims will not receive treatment equal to that of other administrative claimants. *See In re Lazar,* 83 F. 3d 306, 308-309 (9th Cir. 1996) ("Under the Bankruptcy Code, administrative expense creditors must be treated

---

[4] Docket No. 8.

[5] Docket No. 132.

12

equally, and the court should not set up its own order of priorities."). As such, the Landlords request the Court compel the Debtors to pay immediately the Stub Rent as administrative expense claims pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

### III.  The Landlords Are Entitled To Payment of Attorneys' Fees Incurred In Enforcing Their Leases

34. Many, if not all of the Leases contain provisions for the payment of Landlords' attorneys' fees when the Landlords prevail in litigating any claims pursuant to the Leases. Where a debtor's lease provides for the payment of attorneys' fees, late fees or interest, courts will uphold the terms of the contract. *See Trak Auto,* 277 B.R. at 669. To the extent provided for under the Leases, the Landlords' attorneys' fees constitute rent that is owed to the Landlords and part of the Landlords' administrative claim for the Debtors' failure to timely perform all of its obligations under the Leases as required by section 365(d)(3) of the Bankruptcy Code. *Id.* The Landlords request that the Court order the Debtors to pay the Landlords' attorneys' fees incurred in connection with compelling the Debtors to immediately pay the Stub Rent to the extent required by the Leases.

WHEREFORE, the Landlords respectfully request that the Court enter an Order (i) compelling the Debtors to pay immediately the Stub Rent pursuant to either section 365(d)(3) or section 503(b) of the Bankruptcy Code; (ii) compelling the Debtors to pay the Landlords' attorneys' fees incurred in enforcing their rights under the Leases; and (iii) granting for such other relief as the Court deems just, proper and equitable.

Dated:   New York, New York
        December 19, 2008

KELLEY DRYE & WARREN LLP

By: /s/ *Robert L. LeHane*
James S. Carr (*pro hac vice)*
Robert L. LeHane (*pro hac vice*)
Howard S. Steel (*pro hac vice*)
101 Park Avenue
New York, NY 10178-0002
Tel: (212) 808-7800
Fax: (212) 808-7897

-and-

KELLEY DRYE & WARREN LLP
David J. Ervin (VSB No. 34719)
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108
Tel: (202) 342-8436
Fax: (202) 342-8451

Attorneys for Developers Diversified Realty Investors, General Growth Properties, Inc., Weingarten Realty Investors, Basser-Kaufman, Inc., Philips International Holding Corp., Regency Centers, L.P., AAC Management Corp., Jones Lang LaSalle Americas, Inc., Continental Properties Company, Inc. and Benderson Development Company, LLC