## **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                             :           Chapter 11
                                                  :
    STONE BARN MANHATTAN LLC, f/k/a   :           Case No. 08-12579 (ALG)
    Steve & Barry's LLC, et al.,       :
                                                  :
        Debtors.                :
                                                  :
---------------------------------------------------------------x

## MEMORANDUM OF DECISION

APPEARANCES:

WEIL, GOTSHAL & MANGES, LLP
    By: Shai Y. Waisman, Esq.
        Victoria Von, Esq.
        Adam P. Strochak, Esq.
Attorneys for the Debtors
767 Fifth Avenue
New York, NY 10153

COOLEY GODWARD KRONISH, LLP
    By: Brent I. Weisenberg, Esq.
Attorneys for the Creditors' Committee
1114 Avenue of Americas
New York, NY 10036

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
    By: Jeffrey Meyers, Esq.
Attorneys for Centro Properties Group, General Growth Management, Inc.,
Developers Diversified Realty Corporation, Aronov Realty Management, et al.
1735 Market Street, 51st Floor
Philadelphia, PA 19103

ALSTON & BIRD, LLP
    By: Craig E. Freeman, Esq.
Attorneys for Colonial Plaza CRP LLC,
and Woolbright Daytona Promenade LLC
90 Park Avenue
New York, NY 10016

RUSKIN MOSCOU FALTISCHEK, P.C.
    By Harold S. Berzow, Esq.
Attorneys for 4B's Realty V Harbor Park Drive Leasing, LLC
East Tower, 15th Floor
1425 RexCorp Plaza
Uniondale, NY 11556

KATTEN MUCHIN ROSENMAN, LLP
    By: Cara S. Mittleman, Esq.
Attorneys for The Macerich Company, Gem Realty Capital, Inc.,
and Vintage Capital Group
575 Madison Avenue
New York, NY 10022

REED SMITH, LLP
    By: Paul A. Rachmuth, Esq.
       Debra S. Turetsky, Esq.
       Alexander Terras, Esq.
Attorneys for Dunning Farms, LLC
599 Lexington Avenue
New York, NY 10022

FINKEL GOLDSTEIN ROSENBLOOM & NASH, LLP
    By: Kevin J. Nash, Esq.
Attorneys for Nagel Holding Co. LLC and Cam Holding Co. LLC
26 Broadway, Suit 711
New York, NY 10024

MENTER RUDIN & TRIVELPICE, PC
    By: James C. Thomas, Esq.
       Kevin M. Newman, Esq.
Attorneys for Independence Center, LLC *et al.*
308 Maltbie Street, Suit 200
Syracuse, NY 13204-1498

SPENCE, CUSTER, SAYLOR, WOLFE & ROSE, LLC
    By: James R. Walsh, Esq.
       Roger Poorman, Esq.
Attorneys for Gemini Property Management, LLC
400 Ameriserve Financial Building
PO Box 280
Johnstown, PA 15907

SAUL EWING, LLP
 By: Joyce A. Kuhns, Esq.
Attorneys for CBL & Associates Management, Inc.
Lockwood Place
500 East Pratt Street
Baltimore, MD 21202

HODGSON RUSS, LLP
 By: Deborah J. Piazza, Esq.
Attorneys for Montgomery Mall I, LLC
60 East 42nd Street, 37th Floor
New York, NY 10165

LECLAIR RYAN
 By: Ilan Markus, Esq.
Attorneys for Westfield, LLC
555 Long Wharf Drive
Eight Floor
New Haven, CT 06511

RAVIN GREENBERG, LLC
 By: Yitzhak Greenberg, Esq.
Attorneys for Eastfield Associates, LLC
101 Eisenhower Parkway
Roseland, NJ 07068

DOWNEY BRAND, LLP
 By: Jamie P. Dreher, Esq.
Attorneys for EPC Twin Peaks LLC, EPC Twin Peaks JJ LLC,
DM Property Investments LLC, Thomas Properties DE LLC, *et al.*
621 Capitol Mall, 18th Floor
Sacramento, California 95814

KANE RUSSELL COLEMAN & LOGAN, P.C.
 By: Joseph A. Friedman, Esq.
Attorneys for Coyote Temple Mall LP
1601 Elm Street
Suite 3700
Dallas, Texas 75201

SPECTOR, GADON & ROSEN, P.C.
 By: Leslie B. Baskin, Esq.
Attorneys for PCCP IRG Columbus, LLC
Seven Penn Center, 7th Floor
1635 Market St.
Philadelphia, PA 19103

FAINSBERT MASE & SNYDER, LLP
    By: Michael H. Weiss, Esq.
Attorneys for PCCP IRG Columbus, LLC
11835 West Olympic Boulevard, Suite 1100
Los Angeles, CA 90064

ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE

    In 1984 Congress amended § 365 of the Bankruptcy Code, 11 U.S.C § 365, to assure commercial landlords timely receipt of post-petition rent from debtors in Chapter 11 proceedings. Since then, courts have differed on the proper application of the provision, 11 U.S.C. § 365(d)(3), where a commercial lease provides for monthly payment of rent in advance (as almost all leases do) and the debtor files its petition or rejects its lease in the middle of a month (as almost all debtors do). As discussed below, in such situations, some courts apply a "proration" approach in calculating the amount of rent due under § 365(d)(3), while others use a "performance or billing-date" approach.

    The dispute at hand involves the application of § 365(d)(3) to a filing in the middle of the month and a debtor's liability for the so-called "stub rent"—the rent for the interim period between the day the order for relief was entered in the bankruptcy case and the end of that month. Specifically, the Court has to determine whether § 365(d)(3) requires prorating the rent for the first month of the bankruptcy case or whether the statute precludes such an approach. The above-named landlords ("Landlords"), holding more than thirty leases, asked the Court to adopt the proration approach. In the alternative, some of these Landlords argued that if the Court did not prorate, it should

nonetheless find that stub rent is payable under 11 U.S.C. § 503(b) as a cost of administering the bankruptcy estate.[1]

The Debtors ("Debtors"), on the other hand, urge the Court to reject proration and to find that the rent for the first month of the case was payable on the first day of the month, prior to the filing date, and was a pre-petition obligation that would give rise only to an unsecured claim if the lease is ultimately rejected. The Debtors did not contest the Landlords' § 503(b) claim in principle but stated it would be premature for the Court to decide the issue. In the first place, the Debtors contended, administrative claims do not have to be paid until the end of a case. Moreover, they argued, administrative expenses are measured by the benefit the estate receives, and an evidentiary hearing would be necessary to determine whether the Debtors had benefited from the lease in question during the post-petition period and, if so, the reasonable amount for "use and occupancy."

There are no issues of fact that bear on the construction of § 365(d)(3) in this case. There is no dispute that the Debtors were, before the Chapter 11 filing, obligated to pay rent and certain other charges, in advance, on the first day of each month, under each of the relevant nonresidential real property leases; that the Debtors had not paid rent for July when they filed their Chapter 11 petitions on July 9, 2008; that the Landlords asked for payment; and that the Debtors refused.

The Court's conclusions of law follow.

---

[1] Section 503(b) provides: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including...(1)(A) the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A).

## DISCUSSION

I.  *The Adoption of § 365(d)(3)*

Section 365(d)(3) was introduced as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. The statute, in relevant part, provides:

> "The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."

There is no dispute as to the purpose of § 365(d)(3). Congress enacted the statute to ameliorate the perceived inequities that lessors of nonresidential real property had faced during the period after a Chapter 11 filing but before assumption or rejection. As Senator Orrin Hatch, a conferee to the original act, stated: "In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment...the bill would lessen these problems..." Cong.Rec. S8894-95 (daily ed. June 29, 1984). Prior to the 1984 amendments, § 503(b)(1) provided landlords with the right to obtain payment for use and occupancy during the post-petition, pre-rejection period. However, administrative expense claims are construed narrowly, and a party seeking an administrative expense under § 503(b)(1) has to prove, after notice and a hearing, that the use of its property is an actual and necessary cost of preserving the debtor's estate. *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). Moreover, administrative expenses ordinarily do not have to be paid until the end of a case. Debtors in Chapter 11 successfully argued that the Court should adjust lease payments according to the circumstances of the case and the current market, and that payment did not have to be made until the end of the case, and landlords

6

were often forced to make their property available to the debtor during the pre-rejection period without receiving compensation for their services. *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 851 (9th Cir.2001).

Congress leveled the playing field with § 365(d)(3). *In re Cukierman*, 265 F.3d at 850; *In re Pudgie's Development of NY, Inc.*, 239 B.R. 688, 692 (S.D.N.Y. 1999); *In re Comdisco, Inc.*, 272 B.R. 671, 675 (Bankr.N.D.Ill.2002). In effect, § 365(d)(3) required timely payment of rent, and it eliminated the discretion that courts had previously exercised to establish a market rent for use and occupancy, fixing the amount payable for use and occupancy at the rate provided in the lease. *In re Ames Dept. Store, Inc.*, 306 B.R. 43, 68 (Bankr.S.D. N.Y.2004). As this Court has observed, many courts "have found § 503(b)(1) to be superseded by § 365(d)(3); to hold otherwise would flout the intent of Congress in that the landlord would still be forced to provide current services while awaiting an evidentiary hearing to determine the actual amount the debtor owed it." *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 397 (Bankr.S.D.N.Y.2001), quoting *In re Wingspread Corp.*, 116 B.R. 915, 926 (Bankr.S.D.N.Y.1990).

II.    *Past Construction of § 365(d)(3)*

Although courts interpreting § 365(d)(3) uniformly agree as to the purpose of the statute, there is no agreement on its proper construction with respect to the issue in this case. *3 Collier on Bankruptcy* ¶ 365.04[3][g] (15th ed. rev. 2005). Four Circuit Court decisions are relevant, keeping in mind, however, that none of them dealt with the precise issue at bar, liability for stub rent during the first month of a debtor's bankruptcy.

The Seventh Circuit Court of Appeals was the first Circuit Court to address § 365(d)(3), in *In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir.

7

1998). Although the case actually involved the proration of taxes payable by the tenant-debtor under a commercial lease, Judge Posner's opinion broadly endorsed the construction of § 365(d)(3) as requiring the proration of a lease obligation. The Court reached this result after finding that the term, "obligations of the debtor…arising from and after the order for relief…" means obligations arising "after the order for relief" ("We can't figure out what the 'from' adds to the 'after.'"). 144 F.3d at 1127. It continued by noting that "since death and taxes are inevitable and Handy Andy's obligation under the lease to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994 and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force." *Id.* at 1128. And it concluded: "There is no indication that Congress meant to go any further than to provide a landlord exception to § 503(b)(1), and thus no indication that it meant to give landlords favored treatment for any class of prepetition debts…Statutory language like other language should be read in context…When context is disregarded, silliness results." *Id.* at 1128.

The Sixth Circuit rejected this reasoning, without even mentioning the *Handy Andy* decision, in *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986 (6th Cir.2000). There the Court dealt with a debtor that had rejected a commercial lease effective on the second day of a month. The debtor proposed to pay the landlord prorated rent for the final two days of the lease; the landlord countered with the argument that the lease obligated the tenant to pay for the whole month on the first day and that an entire month's rent was payable under § 365(d)(3). The Court found with very little statutory analysis that the "obligation" arose before the

8

lease was rejected and that appeals to "equity and common sense" were unavailing, in part because the "debtor alone was in the position to control [the landlord's] entitlement to payment of rent for" the month in question by choosing to reject the lease on the second day of a new month. It found support for the result in the proposition that the statute was designed to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." 203 F.2d at 989 (internal quotes and citation omitted). And, it noted, another purpose of the statute was "to relieve the burden placed on nonresidential real property lessors…" *Id.* (internal quotes and citation omitted).

Nevertheless, the parties to commercial leases continued to be left "in doubt" as to their status, and the issue continued to be litigated. The next Circuit panel to address the question of proration was divided. *In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir. 2001), like *Handy Andy*, involved the proration of taxes payable under a lease. There the majority took note of the contrary *Handy Andy* decision, acknowledged that "there are aspects to a proration approach that Congress might have found desirable," and further acknowledged that "proration was the pre-Code practice and we had been admonished not to 'read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Montgomery Ward,* 268 F.3d at 211, citing *Pennsylvania Dept. Pub. Welfare v. Davenport*, 495 U.S. 552, 563 (1990). The majority, nevertheless, rejected proration because "Congress enacted § 365(d)(3) for the purpose of altering a pre-Code practice that had created a problem for landlords of non-residential property and our task is to determine the nature of the change based on the text chosen." *Id.* at 211-12. It found that the word "obligation" could only be read as

9

requiring payment strictly in accordance with the terms of the lease. Circuit Judge Mansmann, dissenting, said that "While I agree that the terms of the lease determine the obligation, the statute says nothing about how to determine when the obligation arises." 268 F.3d at 213. He concluded that "Although, as the majority suggests, Congress clearly intended to change prior practice when it enacted § 365(d)(3), I can find no indication of a specific intent to displace proration with the billing date approach. Rather it seems clear that the statute was aimed at providing landlords with current pay for current services and relieving them from the 'actual and necessary' analysis required under § 503(b)(1)." *Id.* at 215.

Finally, in *Ha-Lo Industries v. Centerpoint Properties Trust*, 342 F.3d 794 (7th Cir. 2003), a different panel of the Seventh Circuit considered the same set of facts as in *Koenig* – a debtor's obligation for rent where its rejection of the lease took place after the first day of the month. The Court rejected the *Handy Andy* approach, limiting that case to the accrual of taxes under a lease. The panel found that the purpose of the statute was to protect landlords by requiring the payment of lease obligations, that the lease in question did not provide for the proration of rent, and that a debtor (having had the power to determine the effective date of rejection) would be liable for an entire month's rent if it did not reject before the first of the month.

The conflict of the Circuit Courts on the question of proration mirrors the conflict on the issue in the lower courts. A significant number of district and bankruptcy courts have held proration to be appropriate. *See, e.g., In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 66 (10th Cir. BAP 2002); *In re Child World*, 161 B.R. 571, 573-574 (S.D.N.Y. 1993); *In re Ames Dept. Store, Inc.*, 306 B.R. 43, 65-68 (Bankr.S.D.N.Y.2004); *In re*

*NETtel Corp., Inc.*, 289 B.R. 486, 489-490 (Bankr.D.Col.2002). These courts find that landlords are entitled under the statute to post-petition lease payments for the period during which the debtor enjoys the right to use and occupy the leased property. *See, e.g., In re Furr's Supermarkets, Inc.*, 283 B.R. at 66. These courts stress that (i) proration is simple to apply; (ii) the method produces equitable results as it allows both landlords and tenants to get what they bargained for—current service for current payment—at the rate agreed to in the lease; (iii) proration is consistent with the long-standing, pre-amendment practice of prorating lease obligations pending rejection; (iv) neither the statute nor its legislative history indicates proration is precluded; and (v) proration is consistent with other provisions of the Bankruptcy Code, such as §§ 365(g) and 502(g). *See In re Ames*, 306 B.R. at 68-80.

In contrast, other courts construe the statute as mandating strict adherence to the terms of a lease, requiring obligations to be performed in full as they become due. *In re R.H. Macy & Co.*, 152 B.R. 869, 872-73 (Bankr.S.D.N.Y.1993), *aff'd*, 1994 WL 482948 *13 (S.D.N.Y.Feb.23,1994); *In re Comdisco, Inc.*, 272 B.R. 671, 675 (Bankr.N.D.Ill.2002); *In re F & M Distributors, Inc.*, 197 B.R. 829, 831 (Bankr.E.D.Mich.1995). Such an approach entitles lessors to payments under § 365(d)(3) for all lease obligations that become due after the order for relief is entered.[2] *In re Krystal Co.*, 194 B.R. 161, 163-164 (Bankr.E.D.Tenn.1996). These courts conclude that proration is an unwarranted exercise of judicial discretion and that the performance date rule is in accord with the "plain meaning of the statute." *In re R.H. Macy*, 1994 WL 482948 at *13; *In re Comdisco*, 272 B.R. at 675.

---

[2] In most voluntary bankruptcy filings, the date of the order for relief is the date of the filing.

11

This Court approaches the issues with particular care because it has been reversed on a closely-related issue. In an oral decision issued on August 27, 2001, in *In re Loews Cineplex Entertainment, Corp.*, Ch. 11 Case No. 01-40346, this Court opted for proration in a case involving a lease that provided for a large capital expense that accrued over a period of time, mostly pre-petition, but that became payable during the period between the date of the order for relief and the date of lease rejection. The undersigned relied on the *Handy Andy* decision in the Seventh Circuit and rejected the approach of the Sixth Circuit in *Koenig*. By the time of the District Court appeal, the Third Circuit majority had issued its *Montgomery Ward* decision, and the weight of authority had tipped against proration. In any event, the District Court reversed this Court's determination, finding that the wording of the statute precluded proration and that the task would be exceedingly complex when it involved capital expenditures. *Urban Retail Properties v. Loews Cineplex Entertainment Corp. (In re Loews)*, 2002 WL 535479 (S.D.N.Y.Apr.9, 2002). Even though the District Court observed that proration might be applicable in simpler cases, *Id.* at 7, it construed the statute in accordance with the reasoning of the *Montgomery Ward* majority.

### III. The Debtors' Liability

After a careful analysis of § 365(d)(3), the many conflicting judicial opinions that apply it, and with the greatest respect for the *Loews* District Court, the Court remains convinced that the proper construction of § 365(d)(3) in this case is to hold the Debtors responsible for the stub rent measured on a daily basis as it accrued after the date of the orders for relief on July 9, 2008, and until the end of that month. Whether that is called proration or not, it fulfills the mandate of § 365(d)(3).

The Court starts, as it must, with the words of the statute. The statute does not state that the trustee (or, in this case, the debtors in possession) must perform each and every provision of a commercial lease after the date of the order for relief. The statute provides in relevant part that the trustee "shall timely perform all the obligations of the debtor, *except those specified in section § 365(b)(2)*, arising from and after the order for relief under any unexpired lease of nonresidential real property…" (emphasis added). Section 365(b)(2) provides that a trustee need not cure defaults under a lease or executory contract that relate, among other things, to "the commencement of a case" under the Bankruptcy Code. The obligation to make pre-petition payments of rent on a timely basis is one that the debtor need not fulfill as a direct consequence of the bankruptcy filing. No party in this case—or in any of the other authority cited herein—has asserted that § 365(d)(3) obligates debtors to make full payment of rent for any part of the pre-petition period (unless, of course, they ultimately assume the lease and become obligated to cure defaults).

Nor can it be disputed that the bankruptcy filing ushers in a new relationship between the parties, with the non-bankrupt party liable to perform under an executory contract or unexpired lease while the debtor decides whether to assume or reject the contract. It is well accepted that during the post-petition, pre-rejection period, the debtor is entitled to performance from the counterparty and need not perform in the interim unless compelled to assume or reject by Court order. As the Supreme Court held in *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 532 (1984), during this interim period, the agreement "is no longer immediately enforceable, and may never be enforceable

again."[3] Section 365(d)(3), as amended in 1984, afforded landlords an enhanced right to timely performance under a commercial lease during this interim period, but it did not disturb the principle that courts should construe the accrual of obligations during the post-petition, pre-rejection period in a manner that faithfully carries out the purpose of the bankruptcy laws as a whole, as well as provide appropriate protection to landlords.

Proration accomplishes this result. First, it does not eliminate any obligations of tenants to landlords—it merely measures when obligations arise and when they end (if the lease is rejected). In a Chapter 11 case, as the Seventh Circuit found in *Handy Andy*, since the tenant's "obligation under the lease to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994 and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force." 144 F.3d at 1127.

Moreover, as many courts have noted, the proration approach is relatively simple to apply, equitable, and consistent with pre-amendment practice. As observed by Judge Goettel in *In re Child World*, 161 B.R. at 575-576,

> "Nothing in the legislative history indicates that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the postpetition, prerejection period, regardless of billing date. Moreover, the logic of requiring debtor-tenants to pay for the 'current services' their landlords must provide during the postpetition, prerejection period dictates that to the extent such payments consist of rent, they should be prorated to cover only the postpetition, prerejection period. Allowing landlords to recover for items of rent which are billed during the postpetition, prerejection period, but which represent

---

[3] The Bankruptcy Amendments and Federal Judgeship Act of 1984 modified the holding of this case as to labor contracts—11 U.S.C. § 1113 was introduced with the 1984 Act. The same statute gave commercial landlords the enhanced lease rights at issue here. However, the Supreme Court's analysis of executory contracts has never been reversed or modified, and courts today still rely on it. *See COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 379 (2d Cir. 2008); *Hayes Lemmerz Int'l, Inc. v. Epilogics Gp.*, 531 F. Supp. 2d 789, 802 (E.D.Mich.2007).

payment for services rendered by the landlord outside this time period, would grant landlords a windfall payment, to the detriment of other creditors, without any support from the legislative history."

The facts of this case illustrate that failure to prorate leads to an absurd result. Bankruptcy courts in the Third, Sixth and Seventh Circuits, bound by Circuit Court authority, have invariably applied the *Montgomery Ward*, *Koenig* and *Ha-Lo* cases to preclude proration of the first month's rent when a debtor files its Chapter 11 petition after the first day of a month. They have concluded that proration of rent in the first month would be as inappropriate as prorating rent in the rejection month. However, very few of these courts have been willing to draw the obvious conclusion that rent for the first month is a pre-petition claim only, based on the billing date approach, and that the debtor has the right to use the leased property during the stub period without further liability. Instead, these courts fill "the stub period gap created by § 365(d)(3)" by allowing landlords an administrative claim under § 503(b) for rent during the stub period. *In re ZB Company, Inc.*, 302 B.R. 316, 319 (Bankr.D.Del.2003); *see also, In re Goody's Family Clothing, Inc.*, 392 B.R. 604, (Bankr.D.Del.2008); *In re UAL Corp.*, 291 B.R. 121 (Bankr.N.D.Ill.2003). These courts find that "the only issues to be decided are the amount of the claims and when the § 503(b)(1)(A) claims of all the landlords should be paid." *In re ZB Company*, 302 B.R. at 319. Indeed, the Debtors here have accepted the principle that the moving Landlords have an administrative expense claim for prorated rent, although they state that the Landlords will have to demonstrate "benefit to the estate" and that it is premature to consider payment of any administrative claims.[4]

---

[4] For this proposition, the Debtors rely on *In re DVI, Inc.*, 308 B.R. 703, 707 (Bankr. Del. 2004); *In re HQ Global Holdings, Inc.*, 282 B.R. 169 (Bankr.D.Del.2002); *In re UAL*, 291 B.R. at 126. (Debtor's Memo of Law, Docket # 1082, ¶ (I)(A)(2)). In their legal memorandum, the Debtors initially argued that under *In re Baby N' Kids*, 2007 WL 1218768 (E.D.Mich.Apr.24,2007), and *In re The ½ Off Car*, 2001 WL 1822419

If there is one point that the proration and billing date courts all accept, it is that Congress intended § 365(d)(3) to nullify the requirement of § 503(b) that a creditor prove benefit to the estate before it can obtain administrative expense status for a post-petition rent claim. That is exactly what § 365(d)(3) states; it applies "notwithstanding section 503(b)(1) of this title."[5] Under the billing date construction of the statute, as endorsed by the Debtors, landlords would have to provide proof of "benefit to the estate" during the stub period in exchange for a future (instead of current) claim for payment, after the time-consuming and costly process of notice and a hearing. The billing date approach thus contradicts the plain purpose of the statute, a result to be avoided. As the Supreme Court said in *United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, (1989), quoting *Griffin v. Oceanic Contractors,* 458 U.S. 564, 571, (1982), when "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters ... the intention of the drafters, rather than the strict language, controls."

It must be noted that it is much easier as a matter of statutory construction to prorate the first month's rent under a rejected lease than to prorate the last month's rent, in light of the fact that § 365(d)(3) speaks of timely performance until assumption or rejection, and timely performance of the first month's rent is explicitly excused by virtue of the bankruptcy filing. In theory, a debtor could be held responsible for payment of the

---

(Bankr.E.D.Mich.Mar.7,2001), landlords are not entitled to a § 503(b)(1) administrative claims for stub rent. (Debtor's Memo of Law, Docket # 1082, ¶ (I)(A)(1)). However, at the hearing on November 18, 2008, the Debtors seemingly abandoned this argument.

[5] Some of the parties to this dispute argued that the proviso *notwithstanding* does not preclude reliance on § 503(b)(1), but rather rendered inapplicable the "principles" behind § 503(b)(1) (notice and a hearing and prove of benefit to the estate) in situations involving § 365(d)(3). Suffice it to say that the statute does not speak of the "principles" underlying § 503(b)(3). It uses the term "notwithstanding", a word that has been properly construed to mean "that irrespective of whether the payments required under the lease meet the usual requirements for administrative status, reasonableness and benefit to the estate, they are unconditionally due." *In re Wingspread Corp.*, 116 B.R. at 926.

stub rent during the first month of the case on a proration theory but be responsible for payment of a full last month's rent if the lease is rejected on or after the first day of the month. However, such a construction of § 365(d)(3) would create a patently unfair result for a debtor, requiring stub rent payments *and* full payment of the last month's rent. It would directly contradict "the policies of flexibility and equity built into Chapter 11 of the Bankruptcy Code", *Bildisco*, 465 U.S. at 525, as well as the "Code's overriding policy favoring debtor reorganization and rehabilitation." *In re Penn Traffic Co.*, 524 F.3d at 383, quoting *In re Pub. Serv. Co. of New Hampshire*, 884 F.2d 11, 15 (1st Cir.1989). The proper interpretation of § 365(d)(3) is to construe the provision as a whole to accomplish the plain purpose of the law. Proration is the only principle that accomplishes this result.

    Many of the judges who have rejected the proration approach for the last month's rent have stressed that the billing date principle is not unfair to a debtor because the debtor has control over the date of contract rejection and could plan to avoid an extra month's rent. It is of course bad policy to encourage uneconomic bankruptcy planning on either end of a filing: if proration is not adopted, debtors will be encouraged to file on the second day of a month. In any event, this case illustrates why a debtor does not necessarily have effective control over its liability even for the last month's rent. The Debtors filed on July 9 and immediately sought a court order scheduling a sale of all assets (including leases) on or before July 31, obviously to avoid the accrual of another full month's rent if the billing date approach were determined to be the law of this Circuit. This Court refused to schedule such a hearing on the shortened notice that would have been required, especially as a creditors' committee had not yet been appointed.

However, the Debtors' request illustrates another of the discontinuities created by the billing date principle—or uncertainty as to whether it must be applied. The intent of Congress can be carried out without harm to the Chapter 11 process only by the adoption of the proration principle.

## CONCLUSION

The Court accepts the Landlords' proposition that payment of the stub rent in the month of filing in the amount set forth in the lease is required under § 365(d)(3). Nevertheless, it is recognized that three Circuit Court opinions have rejected proration, as have several intermediate appellate courts (including the Court that reversed the undersigned). Accordingly, on its own motion, the Court stays its decision so that the parties will have an opportunity to appeal. If the parties desire, the Court will include in an order a certificate supporting an immediate appeal to the Court of Appeals.[6]

The Landlords may settle one, joint order on the Debtors on 10 days' notice, or the Debtors may settle an order if the Landlords cannot agree on one.

Dated: New York, New York
       December 17, 2008

                                        /s/ Allan L. Gropper
                                        ALLAN L. GROPPER
                                        UNITED STATES BANKRUPTCY JUDGE

---

[6] 28 U.S.C. § 158(d)(2)(A), as amended in 2005, provides that the bankruptcy court can certify that a final order or judgment should be immediately appealed to the Court of Appeals if it involves a question of law "as to which there is no controlling decision of the court of appeals for the circuit or the Supreme Court of the United States" or there is "a question of law requiring resolution of conflicting decisions." This Court is willing to provide the certification required, as the bar, the clients it represents, and the courts within the Second Circuit would greatly benefit from a binding interpretation of § 365(d)(3). Indeed, it may be argued that it is as important to have this legal issue finally resolved, as it is to have it resolved in a particular way. However, under § 158(d)(2)(A), the Circuit Court retains complete control over the decision whether to accept a case. Moreover, since the Court of Appeals has jurisdiction only over "final" orders of this Court, the parties will presumably have to stipulate or determine the amount of prorated rent for the stub period for each lease before an appeal could be taken.