## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

```
------------------------------------------------------:
In re:                                                :    Chapter 11
                                                      :
CIRCUIT CITY STORES, INC., et al.                     :    Case Nos. 08-35653 through 08-35670
Debtors                                               :    Jointly Administered
                                                      :
                                                      :
------------------------------------------------------:
```

**FINAL ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST-PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION AND (4) MODIFYING THE AUTOMATIC STAY**

THIS MATTER having come before this Court upon the motion (the "**DIP Motion**") by Circuit City Stores, Inc. and its affliated debtors, each as debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above captioned chapter 11 cases (collectively, the "**Cases**"), seeking, among other things, entry of a final order (this "**Final Order**") authorizing the Debtors to:

(i)    Obtain credit and incur debt, pursuant to Sections 363, 364(c) and 364(d) of the Bankruptcy Code, on a final basis up to the aggregate committed amount of (A) $1,100,000,000 (consisting of $1,050,000,000 for the Debtors and $50,000,000 for InterTAN Canada Ltd. (to be guaranteed by the Debtors)) through and including December 29, 2008, (B) up to the aggregate committed amount of $900,000,000 (consisting of $850,000,000 for the Debtors and $50,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) on December 30, 2008 and December 31, 2008, (C) up to the aggregate committed

amount of $910,000,000 (consisting of $850,000,000 for the Debtors and $60,000,000 for

borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) for the period January

1, 2009 through and including January 17, 2009, and (D) thereafter up to the aggregate

committed amount of $900,000,000 (consisting of $850,000,000 for the Debtors and

$50,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) (each

on terms and conditions more fully described herein) secured by first priority, valid, priming,

perfected and enforceable liens (as defined in section 101(37) of chapter 11 of title 11 of the

United States Code, as amended (the "**Bankruptcy Code**"), subject to the Carve-Out and

Permitted DIP Prior Liens (as each of those terms is defined herein) on property of the Debtors'

estates pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and with

priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code,

subject to the terms and conditions contained herein;

(ii)    (a) Establish that financing arrangement (the "**DIP Facility**") pursuant to

(I) that certain Debtor-In-Possession Credit Agreement (as amended, modified or supplemented

prior to entry of, and in accordance with the terms of, this Final Order (including, without

limitation pursuant to that certain letter agreement dated as of December 4, 2008 and the Second

Amendment to Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as

of December 19, 2008, collectively, the "**Prior DIP Amendments**") and as hereafter amended,

modified or supplemented and in effect from time to time, the "**DIP Credit Agreement**")[1],

substantially in the form filed of record in the Cases and introduced into evidence at the interim

hearing on the DIP Motion, by and between, among others, Circuit City Stores, Inc., Circuit City

Stores West Coast, Inc., Circuit City Stores PR, LLC, and InterTAN Canada Ltd. (collectively,

---

[1] Capitalized terms used in this Final Order but not defined herein shall have the meanings ascribed to such terms in

the "**Borrowers**"), Bank of America, N.A., as administrative agent and collateral agent (the

"**U.S. DIP Agent**"), Bank of America, N.A. (acting through its Canada branch) as Canadian

administrative agent ("**Canadian DIP Agent**") (collectively with the U.S. DIP Agent, the "**DIP**

**Agents**"), and the Lenders party thereto (the "**DIP Lenders,**" collectively with the DIP Agents,

the "**DIP Secured Parties**"), and (II) all other agreements, documents, notes, certificates, and

instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including,

without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and

Uniform Commercial Code ("**UCC**") financing statements and all other related agreements,

documents, notes, certificates, and instruments executed and/or delivered in connection therewith

or related thereto (collectively, as may be amended, modified or supplemented and in effect from

time to time, the "**DIP Financing Agreements**"); and (b) incur the "**Obligations**" under and as

defined in the DIP Credit Agreement (collectively, the "**DIP Obligations**");

    (iii)  Authorize the use of the proceeds of the DIP Facility (net of any amounts

used to pay fees, costs and expenses under the DIP Financing Agreements) in each case in a

manner consistent with the terms and conditions of the DIP Financing Agreements, and in

accordance with the Budget (as defined below) (subject to any variances thereto permitted under

the terms and conditions of the DIP Credit Agreement) solely for (a) working capital and general

corporate purposes (including capital expenditures), (b) payment of costs of administration of the

Cases, to the extent set forth in the Budget, and (c) subject to the provisions of paragraph 7

below, payment in full of the Pre-Petition Debt (as defined below), including, to the extent not

paid by InterTAN Canada, Ltd., the Canadian Liabilities (as defined in the Pre-Petition Credit

Agreement) or as provided in Paragraph 4(d) hereof.

---

the DIP Financing Agreements.

(iv)    Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the U.S. DIP Agent (for the benefit of the DIP Secured Parties) first priority priming, valid, perfected and enforceable liens, subject only to the Carve Out (as defined below) and the Permitted DIP Prior Liens (as defined below), upon substantially all of the Debtors' real and personal property as provided in and as contemplated by this Final Order, the DIP Facility and the DIP Financing Agreements;

(v)    Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Agents (for the benefit of the DIP Secured Parties)  superpriority administrative claim status in respect of all DIP Obligations, subject to the Carve Out as provided herein;

(vi)    Authorize the use of "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "**Cash Collateral**"), in which the Pre-Petition Secured Parties (as defined below) have an interest;

(vii)    Grant the Pre-Petition Agent (for the benefit of the Pre-Petition Secured Parties) (as defined below) Pre-Petition Replacement Liens and Pre-Petition Superpriority Claims (each as defined below) to the extent of any diminution in the value of the Pre-Petition Agent's interest in the Pre-Petition Collateral having the priority set forth in this Final Order and the Pre-Petition Indemnity Account, as adequate protection for the granting of the DIP Liens (as defined below) to the U.S. DIP Agent, the use of Cash Collateral, and for the imposition of the automatic stay;

(viii)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Final Order; and

(ix)    Waive any applicable stay (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure) and provide for immediate effectiveness of this Final Order.

The Bankruptcy Court having considered the DIP Motion, the Declaration of Bruce Besanko in support of the Debtors' first day motions and orders, the exhibits attached thereto, the DIP Facility and the DIP Credit Agreement, and the evidence submitted at the interim hearing on the DIP Motion held on November 10, 2008 (the "**Interim Hearing**") and at the hearing on this Final Order held on December 22, 2008 (the "**Final Hearing**"); and the Bankruptcy Court having entered an interim order on November 10, 2008 authorizing funding on an interium basis, granting liens and granting adequate protection (the "**Interim Order**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Bankruptcy Court, due and proper notice of the DIP Motion and the Final Hearing having been given; a Final Hearing having been held and concluded on December 22, 2008; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business; and it further appearing that the Debtors are unable to secure (i) unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code Section 503(b)(1), (ii) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b), (iii) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (iv) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien; and there is adequate protection of the interests of holders of liens on the property of the estates on which

liens are to be granted; and all objections, if any, to the entry of this Final Order having been

withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and

for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.  On November 10, 2008 (the "**Petition Date**"), the Debtors filed

voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the Eastern District of Virginia (the "**Court**").   The Debtors have continued in the

management and operation of their business and property as debtors-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in

the Cases.  On the Petition Date, InterTAN Canada Ltd. and certain of its subsidiaries filed a

notice seeking an initial order under the Companies' Creditors Arrangement Act (Canada)

("**CCAA**").

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings,

pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby.

Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

C.    **Committee Formation**.  On November 13, 2008, the United States Trustee for

the Eastern District of Virginia appointed an official committee of unsecured creditors in the

Cases (the "**Statutory Committee**").

D.    **Interim Order**.  Based upon the DIP Motion, the affidavit of Bruce Besanko

and the evidence submitted by the Debtors at the Interim Hearing, the Bankruptcy Court

approved the Debtors' execution, delivery and and performance of the DIP Financing

Agreements pending the Final Hearing on the DIP Motion.  Pursuant to the Interim Order, the Final Hearing was scheduled for December 5, 2008 , which hearing was adjourned to, and conducted on, December 22, 2008.

E.     **Notice**.   The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 9013-1.   Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on November 13, 2008, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) each of the Debtors' fifty (50) largest unsecured creditors, (iii) counsel to the Pre-Petition Agent (as defined below), (iv) the Pre-Petition Agent, (v) counsel to the DIP Agents, (vi) counsel to the Statutory Committee, (vii) the Securities and Exchange Commission, (viii) all secured creditors of record, (ix) all parties which have filed prior to November 13, 2008 a request for notices in the Cases, (x) the office of the United States Trustee, (xi) the Internal Revenue Service, and (xii) all of the Debtors' current landlords.  Such notice of the Final Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Bankruptcy Court.

F.     **Debtors' Acknowledgements and Agreements**.  Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs F (i) through F (vi) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

> **(i)     Pre-Petition Financing Agreements**.  Prior to the commencement of the Cases, the certain of the Debtors were party to (A) that certain Second Amended and Restated Credit Agreement, dated as of January 31, 2008, by and between, among others, such Debtors, InterTAN Canada, Ltd., Bank of America, N.A., as administrative agent and collateral agent (the "**Pre-Petition Agent**"), Bank of America, N.A. (acting through its Canada branch) as Canadian administrative

agent ("**Pre-Petition Canadian Agent**") and the Lenders party thereto (the "**Pre-Petition Lenders**", collectively with the Pre-Petition Agent and the Pre-Petition Canadian Agent, the "**Pre-Petition Secured Parties**"), (B) that certain Amended and Restated Facility Guaranty, dated as of January 31, 2008, executed by certain of the Debtors, InterTAN, Inc. and Ventoux International, Inc., in favor of the Pre-Petition Agent, and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Pre-Petition Secured Parties, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as amended, modified or supplemented and in effect, collectively, the "**Pre-Petition Financing Agreements**").

**(ii)**    **Pre-Petition Debt Amount**.  As of the Petition Date, the Debtors were indebted under the Pre-Petition Financing Agreements (A) on account of Credit Extensions to the Debtors, in the approximate principal amount of $730,742,932.79, plus letters of credit in the approximate stated amount of not less than $128,684,439.35, plus interest accrued and accruing (at the rates (including, to the extent allowed, the default rate) set forth in the Pre-Petition Financing Agreements), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services, and (B) on account of Credit Extensions made to InterTAN Canada Ltd., in the approximate principal amount of CD$42,500,000.00, plus letters of credit in the approximate stated amount of $6,952,412.69, plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges (in each case, to the extent reimbursable under the Pre-Petition Financing Agreements) and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Pre-Petition Financing Agreements (collectively the **"Pre-Petition Debt"**).

**(iii)**    **Pre-Petition Collateral**.  To secure the Pre-Petition Debt, the Debtors granted security interests and liens (the **"Pre-Petition Liens")** to the Pre-Petition Secured Parties upon (a) all Accounts, (b) all Inventory, (c) all Deposit Accounts, (d) all Documents relating to Inventory, (e) all Chattel Paper arising from the sale of Inventory, (f) all Instruments, General Intangibles, Supporting Obligations and Letter-of-Credit Rights arising from the sale of the Inventory, (g) and the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the Collateral (each as defined in the Pre-Petition Financing Agreements) (collectively, the "**Pre-Petition Collateral**"), with priority over all other liens except any liens which are valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens (the "**Priority Liens**").

**(iv)**    **Pre-Petition Liens**.  (a) As of the Petition Date, the Debtors believe that (i) the Pre-Petition Liens are valid, binding, enforceable, and perfected first-

priority liens, subject only to any Priority Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Debt constitutes legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Debt constitutes allowable secured claims, and (b) on the date that the Interim Order was entered (and confirmed by the entry of this Final Order), each Debtor has waived, discharged and released the Pre-Petition Secured Parties, together with their affiliates, agents, attorneys, officers, directors and employees, of any right any Debtor may have (x) to challenge or object to any of the Pre-Petition Debt, (y) to challenge or object to the security for the Pre-Petition Debt, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Financing Agreements or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Financing Agreements or the Pre-Petition Liens, or any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition Financing Agreements.

**(v)** **Cash Collateral.**  The Pre-Petition Secured Parties have a security interest in certain of the Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral, to secure the Pre-Petition Debt and, respectively, to the same extent and order of priority as that which was held by such party pre-petition.

**(vi)** **Priming of DIP Facility**.  In entering into the DIP Financing Agreements, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made) and the DIP Financing Agreements are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Secured Parties under the Interim Order or this Final Order, as applicable, by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise.

G.    **Findings Regarding the Post-Petition Financing**.

(i)    **Need for Post-Petition Financing**.  An immediate need exists for the

Debtors to obtain funds from the DIP Facility in order to continue operations and to administer

and preserve the value of their estate.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

(ii)   **No Credit Available on More Favorable Terms**.   The Debtors have been unable to obtain (A) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b), (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement, the Interim Order and this Final Order.  The Debtors are unable to obtain credit for borrowed money without granting to the DIP Secured Parties the DIP Protections (as defined below).

(iii)   **Prior Liens**.   Nothing herein shall constitute a finding or ruling by this Court that any Pre-Petition Liens or Permitted DIP Prior Liens are valid, senior, perfected and unavoidable.  Moreover, nothing shall prejudice (A) the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties and the Statutory Committee to challenge the validity, priority, perfection and extent of any such Permitted DIP Prior Lien and or security interest, or (B) the rights of the Statutory Committee to challenge the validity, priority, perfection and extent of the Pre-Petition Liens as set forth in this Final Order.

H. **Section 506(c) Waiver**.  As a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Financing Agreements, upon entry of this Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Cases) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code.

I. **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely for (a) working capital and general corporate purposes (including capital expenditures), (b) payment of costs of administration of the Cases, to the extent set forth in the Budget, and (c) subject to the provisions of paragraph 7, payment in full of the Pre-Petition Debt including, to the extent not paid by InterTAN Canada, Ltd., the Canadian Liabilities (as defined in the Pre-Petition Credit Agreement) or as provided in Paragraph 4(d) hereof.  All letters of credit issued under the Pre-Petition Financing Agreements were, upon entry of the Interim Order, deemed issued under the DIP Credit Agreement.

J. **Application of Proceeds of DIP Collateral**.  All proceeds of the sale or other disposition of the DIP Collateral (as defined below) shall be applied to reduce the DIP Obligations and, to the extent not paid by InterTAN Canada, Ltd., the Canadian Liabilities, each in accordance with the terms and conditions of the DIP Credit Agreement.  Payment of the Pre-Petition Debt in accordance with the Interim Order and this Final Order is necessary as the Pre-Petition Secured Parties will not otherwise consent to the priming of the Pre-Petition Liens. Such

payment will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties-in-interest, including the Statutory Committee, under paragraph 7 below.

K.     **Adequate Protection for Pre-Petition Secured Parties**.  As a result of the grant of the DIP Liens, subordination to the Carve-Out, and the use of Cash Collateral authorized herein, the Pre-Petition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of their respective interest in the Pre-Petition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during the Cases.  As adequate protection, the Pre-Petition Agent (for the benefit of the Pre-Petition Secured Parties) will receive: (1) the Pre-Petition Replacement Liens, (2) the Pre-Petition Superpriority Claim, (3) the Adequate Protection Payments, (4) the Pre-Petition Indemnity Account, and (5) to the extent not paid by InterTAN Canada, Ltd., payment of the Canadian Liabilities.

L.     **Section 552**.  In light of their agreement to subordinate their liens and superpriority claims (i) to the Carve Out in the case of the DIP Secured Parties, and (ii) to the Carve Out and the DIP Liens in the case of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

M.     **Extension of Financing**.  The DIP Secured Parties have indicated a willingness to provide financing to certain of the Debtors in accordance with the DIP Credit Agreement and subject to (i) the entry of the Interim Order and this Final Order, and (ii) findings by this Court that such financing is essential to the Debtors' estate, that the DIP Secured Parties are good faith

financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of the Interim Order, this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

N.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility and the DIP Credit Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Secured Parties, and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

O.    **Relief Essential; Best Interest**.  The relief requested in the DIP Motion (and as provided in the Interim Order and in this Final Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement.

P.    **Entry of Final Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Statutory

Committee, the Pre-Petition Secured Parties and the DIP Secured Parties to the form and entry of

this Final Order, and good and sufficient cause appearing therefor,

        **IT IS ORDERED** that:

        1.        **Motion Granted**.  The DIP Motion is granted in accordance with the terms and

conditions set forth in this Final Order and the DIP Credit Agreement.

        2.        **DIP Financing Agreements**.

        (a)        **Approval of Entry Into DIP Financing Agreements**. The terms of the

Interim Order are hereby ratified and affirmed except to the extent amended or modified by this

Final Order and the Prior DIP Amendments and all borrowings and payments made thereunder

are ratified and confirmed on a final basis and shall be deemed made in accordance with and

pursuant to this Final Order.  The DIP Financing Agreements, as modified by this Final Order,

are hereby approved on a final basis.  The Debtors are expressly and immediately authorized,

empowered and directed to execute and deliver the DIP Financing Agreements (to the extent not

previously executed or delivered) on a final basis to incur and to perform the DIP Obligations in

accordance with, and subject to, the terms of this Final Order and the DIP Financing

Agreements, and to execute and deliver all instruments, certificates, agreements and documents

which may be required or necessary for the performance by the Debtors under the DIP Facility

and the creation and perfection of the DIP Liens described in and provided for by this Final

Order and the DIP Financing Agreements.  The Debtors are hereby authorized and directed to do

and perform all acts, pay the principal, interest, fees, expenses and other amounts described in

the DIP Credit Agreement and all other DIP Financing Agreements as such become due,

including, without limitation, closing fees, administrative fees, commitment fees, letter of credit

fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as

provided for in the DIP Credit Agreement which amounts shall not otherwise be subject to approval of this Court. The DIP Financing Agreements represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)     **Authorization to Borrow**.  In order to enable them to continue to operate their business, subject to the terms and conditions of this Final Order, the DIP Credit Agreement, the other DIP Financing Agreements, and the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtors are hereby authorized under the DIP Facility to borrow (A) up to the aggregate commited amount of $1,100,000,000 (consisting of $1,050,000,000 for the Debtors and $50,000,000 for InterTAN Canada Ltd. (to be guaranteed by the Debtors)) through and including December 29, 2008, (B) up to the aggregate committed amount of $900,000,000 (consisting of $850,000,000 for the Debtors and $50,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) on December 30, 2008 and December 31, 2008, (C) up to the aggregate committed amount of $910,000,000 (consisting of $850,000,000 for the Debtors and $60,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) for the period January 1, 2009 through and including January 17, 2009, and (D) thereafter up to the aggregate committed amount of $900,000,000 (consisting of $850,000,000 for the Debtors and $50,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)), all in accordance with the terms and conditions of the DIP Credit Agreement.

(c)     **Application of DIP Proceeds**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) (subject to any variances

thereto permitted under the terms and conditions of the DIP Credit Agreement) solely for (a) working capital and general corporate purposes (including capital expenditures), (b) payment of costs of administration of the Cases, to the extent set forth in the Budget, and (c) subject to the provisions of paragraph 7, payment in full of the Pre-Petition Debt, including, to the extent not paid by InterTAN Canada, Ltd., the Canadian Liabilities (as defined in the Pre-Petition Credit Agreement) or as provided in Paragraph 4(d) hereof.  All letters of credit issued under the Pre-Petition Financing Agreements were, upon entry of the Interim Order, deemed issued under the DIP Credit Agreement.

(d)    **Conditions Precedent**.  The DIP Secured Parties shall have no obligation to make any loan or advance under the DIP Credit Agreement unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement.

(e)    **Post-Petition Liens**.  Effective immediately upon the execution of the Interim Order, the DIP Secured Parties were granted (which grant is hereby ratified, confirmed and approved on a final basis) and upon entry of this Final Order, are hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests and liens (collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Final Order, upon and to all presently owned and hereafter acquired assets and real and personal property of the Debtors (except as set forth in the proviso below), including, without limitation, the following:

(i)     Accounts;

(ii)    Equipment;

16

(iii)    General Intangibles, including, without limitation, Payment Intangibles and Intellectual Property;

(iv)    Inventory;

(v)    Commercial Tort Claims;

(vi)    Deposit Accounts;

(vii)    Fixtures;

(viii)    Real Property;

(ix)    Proceeds from the Debtors' interest in leases of real property;

(x)    Goods;

(xi)    Supporting Obligations and Letter of Credit Rights;

(xii)    Documents (including, if applicable, electronic documents);

(xiii)    Chattel Paper;

(xiv)    Instruments;

(xv)    Investment Property including, without limitation, all ownership or membership interests in any subsidiaries;

(xvi)    the proceeds of any avoidance actions brought pursuant to Section 549 of the Bankruptcy Code to recover any post-petition transfer of collateral;

(xvii)    any money, policies and certificates of insurance, deposits, cash or other assets;

(xviii)   all of Debtors' books, records and information relating to any of the foregoing ((i) through (xvii)) and/or to the operation of any Debtors' business, and all rights of access to such Debtors' books, records and information and all property in which such Debtors' books, records and information are stored, recorded and maintained;

(xix)    all insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((i) through (xviii)) or otherwise;

(xx)    all liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((i) through (xix)), including the right of stoppage in transit; and

(xxi)    any of the foregoing, and all products, Proceeds (cash and non-cash), substitutions, Accessions and/or replacements of or to any of the foregoing;

provided, however, that the DIP Collateral shall not include (i) any avoidance actions under

Chapter 5 of the Bankruptcy Code or the proceeds thereof, other than proceeds of any avoidance

action brought pursuant to Section 549 of the Bankruptcy Code to recover any post petition

17

transfer of collateral, (ii) the Debtors' interests in leaseholds, except proceeds thereof as provided

in clause (e)(ix) above, (iii) except as may otherwise be permitted under the Bankruptcy Code or

other applicable law, any lease, license, contract, property rights or agreement to which any

Debtor is a party or any of its rights or interest thereunder if and for so long as the grant of such

Lien shall constitute or result in (A) the abandonment, invalidation or unenforceability of any

right, title or interest of any Debtor therein, or (B) in a breach or termination pursuant to the

terms of, or a default under, any such lease, license, contract, property rights or agreement (other

than to the extent that any such term would be rendered ineffective pursuant to Sections 9-406,

9-407, 9-408 or 9-409 of the Uniform Commercial Code (or a successor provision or provisions)

of any relevant jurisdiction or any other applicable law or principles of equity), provided that the

Proceeds realized from any of the foregoing shall not be deemed excluded from the grant of a

Lien, and provided further that to the extent such security interest at any time hereafter shall no

longer be prohibited, the Debtors shall be deemed to have granted automatically and without any

further action a Lien in, such right as if such restriction had never existed, (iv) any United States

intent-to-use trademark or service mark application to the extent that solely during the period in

which the grant of security interest therein would impair the validity or enforceability of such

intent-to-use application under applicable federal law, (v) any governmental permit or franchise

that prohibits Liens on or collateral assignments of such permit or franchise (other than to the

extent that any restriction on such assignment would be rendered ineffective pursuant to Sections

9-406, 9-407, 9-408 or 9-409 of the Uniform Commercial Code (or any successor provision or

provisions) of any relevant jurisdiction or any other applicable law or principles of equity), (vi)

any security, Investment Property or other equity interest representing more than 65% of the

outstanding voting stock of any Foreign Subsidiary, provided that, the Collateral shall include

100% of the security, Investment Property or other equity interest of the outstanding voting stock of a Foreign Subsidiary that is a Loan Party, or (vii) any property which does not constitute property of the estate under 11 U.S.C §541 (including any property which is subject to a valid and perfected first priority consignment claim or is owned by Celco Partnership d/b/a Verizon Wireless, Panasonic, Navarre Distribution Services, Inc. or their respective affiliates[2]) (collectively, together with the Pre-Petition Collateral, the "**DIP Collateral**").

Nothing contained in this Final Order or the DIP Financing Agreements shall alter any rights and obligations of the Debtors or counterparties under any agreements or applicable law, including, without limitation, rights of offset, chargeback or recoupment; provided that neither the DIP Secured Parties nor the Pre-Petition Secured Parties shall have any liability to the Debtors or such counterparties for any proceeds heretofore or hereafter received by the DIP Secured Parties or the Pre-Petition Secured Parties from the Debtors and applied to the DIP Obligations or the Pre-Petition Debt.

Notwithstanding the grant of the DIP Liens (a) the net proceeds, if any, realized after the date of this Final Order from the disposition of the Debtors' Equipment and Fixtures shall be paid to the Debtors' estates and not applied in reduction of the DIP Obligations or the Pre-Petition Debt; and (b) fifty percent (50%) of the net proceeds, if any, received by the DIP Lenders under the DIP Lenders' Charge set forth in clause six of Section 44 of the Initial Order (as amended and in effect) entered into the CCAA proceedings of InterTAN Canada Ltd. (as ameded and in effect, the "CCAA Initial Order") shall be paid to the Debtors' estates and not applied in reduction of the DIP Obligations or the Pre-Petition Debt.

---

[2] Nothing contained herein shall be a finding that any claims of ownership of the persons herein identified are valid, senior, or allowed, and all parties' rights to object to or contest thereto on any basis are hereby expressly preserved.

(f)      **DIP Lien Priority**.  The DIP Liens granted to the DIP Secured Parties, as provided in the Interim Order and herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the DIP Collateral, and are subject only to: (x) the Carve Out, (y) Priority Liens, (z) pre-petition Liens which arose subsequent to the time of perfection of the Pre-Petition Liens but prior to the Petition Date and which are valid, properly perfected, unavoidable, and senior to the DIP Liens under applicable law (together with the Priority Liens, the "**Permitted DIP Prior Liens**"), and (d) the provisions of the final paragraph of clause (e), above.  The DIP Liens shall secure all DIP Obligations.  The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of any of the Cases.  The DIP Liens shall not be subject to Sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of Section 552 of the Bankruptcy Code.  To avoid any doubt, the term "Permitted DIP Prior Liens" does not include, and specifically excludes, the liens securing the Pre-Petition Debt, which pre-petition liens and claims are to be subordinated to, and junior to, the liens and claims of the DIP Secured Parties.

(g)      **Enforceable  Obligations**.    The  DIP  Financing  Agreements  shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.

(h)    **Protection of DIP Secured Parties and Other Rights**.  From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement, the Interim Order and this Final Order and in compliance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

(i)    **Superpriority Administrative Claim Status.**  Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority in all of the Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.  For clarity, the DIP Superpriority Claim shall not extend to and shall not be repaid from or have the ability to seek payment from (i) any avoidance actions under Chapter 5 of the Bankruptcy Code or the proceeds thereof, other than proceeds of any avoidance action brought pursuant to Section

549 of the Bankruptcy Code to recover any post petition transfer of collateral, or (ii) the net proceeds, if any, realized from and after the date of this Final Order from the disposition of the Debtors' Equipment and Fixtures or fifty percent (50%) of the net proceeds, if any, realized by the DIP Lenders under the DIP Lenders' Charge set forth in clause six of Section 44 of the CCAA Initial Order.

3.      **Authorization to Use Cash Collateral and Proceeds of DIP Financing Agreement**.

Pursuant to the terms and conditions of the Interim Order, this Final Order, the DIP Facility and the DIP Credit Agreement, and in accordance with the Budget (as the same may be amended, modified, supplemented or updated from time to time consistent with the terms of the DIP Credit Agreement, the "**Budget**"), filed on record in the Cases and introduced into evidence at the Interim Hearing, each Debtor is authorized to use Cash Collateral and to use the advances under the DIP Credit Agreement during the period commencing immediately after the entry of the Interim Order and terminating upon notice being provided by the DIP Agents to the Debtors that (i) a DIP Order Event of Default has occurred and is continuing, and (ii) the termination of the DIP Credit Agreement.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Facility and the DIP Credit Agreement and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

4.      **Adequate Protection for Pre-Petition Secured Parties**.  As adequate protection for the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve Out, the

Debtors' use of Cash Collateral and other decline in value arising out of the automatic stay or the

Debtors' use, sale, depreciation, or disposition of the Pre-Petition Collateral, the Pre-Petition

Secured Parties shall receive adequate protection as follows:

(a)    **Pre-Petition Replacement Liens**.  Solely to the extent of the diminution

of the value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the

Pre-Petition Secured Parties shall have, subject to the terms and conditions set forth below,

pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement

security interests and liens in the DIP Collateral (the "**Pre-Petition Replacement Liens**") which

shall be junior only to the DIP Liens and the Carve Out as provided herein.

(b)    **Pre-Petition Superpriority Claim**.  Solely to the extent of the diminution

of the value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the

Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim

(the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to (a)

the DIP Liens, (b) the DIP Superpriority Claim, and (c) the Carve Out, in all of the Cases under

sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all

administrative expense claims and unsecured claims against the Debtors and their estates, now

existing or hereafter arising, of any kind or nature whatsoever including, without limitation,

administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328,

330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the

Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment

lien or other non-consensual lien, levy or attachment. Other than the DIP Liens, the DIP

Superpriority Claim, and the Carve Out, no costs or expenses of administration, including,

without limitation, professional fees allowed and payable under Bankruptcy Code sections 328,

330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any

Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the

Pre-Petition Superpriority Claim.  For clarity, the Pre-Petition Superpriority Claim shall not

extend to any avoidance actions under Chapter 5 of the Bankruptcy Code or the proceeds thereof,

other than proceeds of any avoidance action brought pursuant to Section 549 of the Bankruptcy

Code to recover any post petition transfer of collateral, or the net proceeds, if any, realized after

the date of this Final Order from the disposition of the Debtors' Equipment and Fixtures or fifty

percent (50%) of the net proceeds, if any, received by the DIP Lenders under the DIP Lenders'

Charge set forth in clause six of Section 44 of the CCAA Initial Order.

(c)    **Adequate Protection Payment**.  The Pre-Petition Secured Parties shall

receive adequate protection in the form of (i) repayment of the outstanding amount of the Pre-

Petition Debt (including, principal, interest, fees, costs, expenses), but excluding the Canadian

Liabilities, in accordance with the Interim Order, (ii) all letters of credit issued under the Pre-

Petition Credit Agreement and obligations on account of cash management services and bank

products shall be deemed issued and "Obligations" under the DIP Credit Agreement, (iii)

repayment of the outstanding amount of the Canadian Liabilities (including, principal, interest,

fees, costs, expenses), to the extent not paid by InterTAN Canada, Ltd., and (iv) payments of

costs expenses, indemnities and other amounts with respect to the Pre-Petition Debt hereafter

arising in accordance with the Pre-Petition Financing Agreements and this Final Order

(collectively, the "**Adequate Protection Payments**").

(d)    **Pre-Petition Indemnity Account**. Contemporaneously with the payment

in full of the Pre-Petition Debt (other than the Canadian Liabilities) in accordance with the terms

of the Interim Order, the Debtors shall establish an interest bearing account in the control of the

Pre-Petition Agent (the "**Pre-Petition Indemnity Account**"), into which the sum of $300,000 shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Pre-Petition Secured Parties under the Pre-Petition Agreements (the "**Pre-Petition Indemnity Obligations**"); provided, however, that the Pre-Petition Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtors, if the Pre-Petition Debt has been irrevocably paid in full in cash and the earliest to occur of:  (i) the Challenge Period Termination Date if, as of such date, no party has filed or asserted an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 7 hereof providing for such release; (ii) a further order of this Court; or (iii) the date this Court enters a final order closing the Cases.  The Pre-Petition Indemnity Obligations shall be secured by a first priority lien on the Pre-Petition Indemnity Account, the Pre-Petition Liens and the Pre-Petition Replacement Liens (subject to the DIP Liens and the Carve Out).

(e)    **Adequate Protection Upon Sale of Collateral**. Upon the sale of any Pre-Petition Collateral pursuant to Section 363 of the Bankruptcy Code, any such Pre-Petition Collateral shall be sold free and clear of the Pre-Petition Liens and the Pre-Petition Replacement Liens (but excluding the Pre-Petition Indemnity Account), provided however, that such Pre-Petition Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Final Order and the DIP Credit Agreement.

5.    **Section 507(b) Reservation**.  Nothing herein shall impair or modify the Pre-Petition Secured Parties' rights under Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Secured Parties hereunder is insufficient to compensate for the diminution in value of the interest of the Pre-Petition Secured Parties in the

Pre-Petition Collateral during the Cases or any Successor Case, provided, however, that any Section 507(b) claim granted in the Cases to the Pre-Petition Secured Parties shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

6.    **Post-Petition Lien Perfection**.  The Interim Order and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Pre-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Pre-Petition Replacement Liens or to entitle the DIP Liens and the Pre-Petition Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agents and the Pre-Petition Agent may, each in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.  The Debtors shall execute and deliver to the DIP Agents and the Pre-Petition Agent all such financing statements, mortgages, notices and other documents as the DIP Agents and the Pre-Petition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Pre-Petition Replacement Liens granted pursuant hereto.  The DIP Agents, in their discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with

any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.  The DIP Agents shall, in addition to the rights granted to them under the DIP Financing Agreement, be deemed to be the successors in interest to the Pre-Petition Secured Parties with respect to all third party notifications in connection with the Pre-Petition Agreements, all Pre-Petition Collateral access agreements and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements, provided, that the Pre-Petition Agent shall continue to have all rights pursuant to each of the foregoing.

7.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  Nothing in this Final Order or the DIP Credit Agreement shall prejudice whatever rights the Statutory Committee may have to object to or challenge (a) the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) to bring suit against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Debt, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Debt; provided, however, that, unless the Statutory Committee commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Pre-Petition Secured

Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties), on or before the earlier of March 1, 2009 or the date five (5) business days prior to the hearing to confirm any plan of reorganization in the Cases (as the same may have been extended by further order of this Court as set forth below, the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), subject to the right of the Statutory Committee to seek an extension of the Challenge Period for cause. Upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, the Statutory Committee or any other creditors' committee(s), any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Pre-Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is filed, the Pre-Petition Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition Debt.  Nothing contained herein shall limit the remedies that this Court may order if any objection or challenge brought by the Statutory Committee is sustained by the Court. The Statutory Committee is hereby granted automatic standing to pursue any Challenge it deems appropriate against the Pre-Petition Secured Parties without the need to seek or obtain a further

Court order granting the Statutory Commitee authority to bring such action on behalf of the Debtors' estates.

8.      **Carve Out**.  Subject to the terms and conditions contained in this paragraph 8, the DIP Liens, DIP Superpriority Claims, the Pre-Petition Liens, the Pre-Petition Replacement Liens, the Pre-Petition Indemnity Accounts and the Pre-Petition Superpriority Claims are subordinate only to the following (the "**Carve Out**"): (a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6); (b) allowed actual and necessary expenses incurred by members of the Statutory Committee and allowed actual and necessary expenses (but excluding legal fees for services rendered) incurred by such members' counsel in connection with the members' service on the Statutory Committee; and (c) allowed fees and expenses of attorneys, financial advisors and investment bankers employed by the Debtors and any official committee(s) of creditors pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "**Case Professionals**") up to an aggregate amount not to exceed the sum of $3,000,000, plus the Reported Fee Accruals (as defined in the DIP Credit Agreement); provided that such fees and expenses are approved by the Bankruptcy Court, or such lesser amount as so approved, provided further that to the extent the $3,000,000 limitation set forth above on fees and disbursements is reduced by any amount as a result of payment of such fees and disbursements during the continuance of an Event of Default, and such Event of Default is subsequently cured or waived, then effective as of the effectiveness of such cure or waiver, such dollar limitation shall be increased by an amount equal to the amount by which it has been so reduced.  The Carve Out shall exclude any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar

relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP

Obligations, (ii) the Pre-Petition Debt, (iii) the Pre-Petition Liens in the Pre-Petition Collateral,

or (iv) the DIP Agents' or DIP Secured Parties' Liens in the DIP Collateral, or (B) preventing,

hindering or delaying, whether directly or indirectly, the DIP Agents', DIP Secured Parties' or

Pre-Petition Secured Parties' assertion or enforcement of their Liens, security interest or

realization upon any DIP Collateral, Pre-Petition Collateral, the Pre-Petition Replacement Liens,

or the Pre-Petition Indemnity Accounts, provided, however, that such exclusion does not

encompass any investigative work conducted by the Case Professionals prior to bringing any

action relating to the foregoing, (y) in using cash collateral of the DIP Agents or the DIP Secured

Parties, selling or otherwise disposing of any other DIP Collateral, or incurring any indebtedness

not permitted under the DIP Credit Agreement, without the DIP Agents' express written consent

or (z) arising after the conversion of any of the Chapter 11 cases to a case under chapter 7 of the

Bankruptcy Code. Except as otherwise provided in this paragraph, nothing contained in this

Final Order shall be deemed a consent by the Pre-Petition Secured Parties, or DIP Secured

Parties to any charge, lien, assessment or claim against the DIP Collateral, the Pre-Petition

Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Accounts under

Section 506(c) of the Bankruptcy Code or otherwise.  Nothing herein shall be construed to

obligate the Pre-Petition Secured Parties, or DIP Secured Parties, in any way, to pay the

professional fees or U.S. Trustee Fees, or to assure that the Debtors have sufficient funds on

hand to pay any professional fees or U.S. Trustee Fees.  So long as the Agents have not provided

notice of the occurrence and continuance of an Event of Default (as defined in the DIP Credit

Agreement), subject to Paragraph 9 hereof, the Debtors shall be permitted to pay compensation

and reimbursement of expenses allowed and payable under sections 330 and 331 of the

Bankruptcy Code and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), as the same may be due and payable and the same shall not reduce the Carve Out.  The payment of the Carve Out shall not reduce the amount of the DIP Obligations or the Pre-Petition Debt.

9.      **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any official committee or of any person or shall affect the right of the DIP Secured Parties, the Pre-Petition Agent to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget.

10.     **Section 506(c) Claims**.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Secured Parties, the Pre-Petition Secured Parties or the DIP Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code.  Nothing contained in this Final Order shall be deemed a consent by the Pre-Petition Secured Parties or the DIP Secured Parties to any charge, lien, assessment or claim against the DIP Collateral, the Pre-Petition Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Accounts under Section 105 or Section 506(c) of the Bankruptcy Code or otherwise.

11.     **Collateral Rights**.  Unless the DIP Agents have provided their prior written consent or all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made), all commitments to lend have terminated, all Letters of Credit (as defined in the DIP Credit Agreement) have been secured as required by the DIP Credit Agreement, all indemnity

obligations under the DIP Credit Agreement have been cash collateralized, the Pre-Petition Debt has been paid in full in cash and the Pre-Petition Indemnity Accounts have been established, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a)      Except as permitted in the DIP Credit Agreement, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Accounts and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Secured Parties, or the Pre-Petition Secured Parties; or

(b)      if the DIP Obligations have not been paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made) or if the Pre-Petition Debt has not been paid in full in cash, except as provided in the final paragraph of clause 2(e) of this Final Order, the use of Cash Collateral for any purpose other than to pay in full in cash the DIP Obligations, the Pre-Petition Debt or as otherwise permitted in the DIP Credit Agreement;

(c)      relief from stay by any person other than the DIP Secured Parties on all or any portion of the DIP Collateral except as permitted in the DIP Credit Agreement; or

(d)      the Debtors' return of goods constituting DIP Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Credit Agreement.

12.      **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 11 above, if at any time prior to the repayment in full in cash of the Pre-Petition Debt and the repayment in full of all DIP Obligations and the termination of the DIP Secured Parties' obligations to make loans and advances under the DIP Facility, including

subsequent to the confirmation of any Chapter 11 plan or plans (the "**Plan**") with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) in violation of the DIP Credit Agreement, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall  immediately be turned over to the DIP Agents in reduction of the DIP Obligations and the Pre-Petition Debt as set forth in the DIP Credit Agreement.

13.    **Commitment Termination Date**.  All (i) DIP Obligations shall be immediately due and payable, and (ii) authority to use the proceeds of the DIP Financing Agreements and to use cash collateral shall cease, both on the date that is the earliest to occur of: (i) November 10, 2009, (ii) the date on which the maturity of the Obligations is accelerated and the Commitments are irrevocably terminated in accordance with the DIP Credit Agreement, or (iii) the Consummation Date (as defined in the DIP Credit Agreement) (the "**Commitment Termination Date**").

14.    **Payment from Proceeds of Collateral**.  Until the DIP Obligations have been paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agents have been made) and the Pre-Petition Debt has been paid in full in cash, as provided in the DIP Credit Agreement, all products and proceeds of the DIP Collateral shall be remitted directly to the DIP Agents and, except as set forth in the final paragraph of clause 2(e) of this Final Order, applied by the DIP Agents to the DIP Obligations and Pre-Petition Debt outstanding, in each case, pursuant to the DIP Credit Agreement, in the manner set forth therein. Notwithstanding the application of proceeds set forth in this paragraph 14 or any other provision of this Final Order, upon the sale outside of the ordinary course of business of any DIP Collateral

that is subject to a Permitted DIP Prior Lien, proceeds from the sale of such collateral shall first

be set aside in an amount equal to the sum (without double counting) of all claims (i) filed by

claimants or (ii) scheduled by the Debtors (collectively, the "Identified Prior Claims") that are

secured by Permitted DIP Prior Liens on such collateral.  The Permitted DIP Prior Liens securing

the Identified Prior Claims shall attach to such sale proceeds to the same extent and with the

same priority as such Permitted DIP Prior Liens on such DIP Collateral as of the Petition Date.

The sale proceeds shall be distributed pursuant to agreement between the holders of Identified

Prior Claims secured by Permitted DIP Prior Liens and the Debtors or pursuant to further order

of the Court.  Any portion of the proceeds so set aside which are not required to be distributed on

account of the Identified Prior Claims shall be paid to the DIP Agent and applied as set forth

herein.  The foregoing shall constitute adequate protection of the interests of the holders of

Identified Prior Claims secured by Permitted DIP Prior Liens.  Nothing contained herein shall be

a finding that any Identified Prior Claims are valid, senior, or allowed, and all parties' rights to

object to or contest the Identified Prior Claims on any basis are hereby expressly preserved.

Further, all rights of the Texas taxing authorities with respect to ad valorem taxes are reserved

with respect to the right to object at the time of any sale hearing regarding payment of sale

proceeds and with respect to the right to seek payment or segregation of sale proceeds with

respect to any taxes then accrued and unpaid.

   15. **Disposition of Collateral**.  The Debtors shall not (a) sell, transfer, lease,

encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written

consent of the requisite DIP Secured Parties required under the DIP Credit Agreement (and no

such consent shall be implied, from any other action, inaction or acquiescence by the DIP

Secured Parties or an order of this Court), except for sales of the Debtors' inventory in the

ordinary course of business or except as otherwise provided for in the DIP Credit Agreement and

this Final Order and approved by the Bankruptcy Court, or (b) assume, reject or assign any Lease

without the prior consultation with the DIP Agents, except as otherwise provided for in the DIP

Credit Agreement.

16.     **Events of Default.**  The occurrence of the Commitment Termination Date or, if

sooner, the DIP Agents' furnishing the Debtors with notice of the occurrence of any Event of

Default (as defined in the DIP Credit Agreement) shall constitute a DIP Order Event of Default.

Unless and until the DIP Obligations are irrevocably repaid in full in cash (or other arrangements

for payment of the DIP Obligations satisfactory to the DIP Agents have been made), all

commitments to lend have irrevocably terminated, all Letters of Credit (as defined in the DIP

Financing Agreements) have been cash collateralized as required by the DIP Credit Agreement,

and all DIP Obligations which survive termination obligations have been cash collateralized to

the reasonable satisfaction of the DIP Agents, the Pre-Petition Debt has been paid in full in cash

as provided in the DIP Credit Agreement, and the Pre-Petition Indemnity Account has been

established, the protections afforded to Pre-Petition Secured Parties and the DIP Secured Parties

pursuant to the Interim Order, this Final Order and under the DIP Credit Agreement, and any

actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or

converting these cases into a Successor Case, and the DIP Liens, the DIP Super-Priority Claim,

the Pre-Petition Replacement Liens, the Pre-Petition Indemnity Account and the Pre-Petition

Superpriority Claim shall continue in these proceedings and in any Successor Case, and such

DIP Liens, DIP Super-Priority Claim, Pre-Petition Replacement Liens, Pre-Petition Indemnity

Accounts and the Pre-Petition Superpriority Claim shall maintain their respective priority as

provided by this Final Order.

17.    **Rights and Remedies Upon DIP Order Event of Default**.

(a)    Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified so that (i) after the occurrence of any DIP Order Event of Default and (ii) at any time thereafter during the continuance of such Event of Default, upon five (5) business days prior written notice of such occurrence, in each case given to each of the Debtors, counsel to the Debtors, counsel for the Statutory Committee, and the U.S. Trustee, the DIP Secured Parties shall be entitled to exercise their rights and remedies in accordance with the DIP Financing Agreements.  Immediately following the giving of notice by the DIP Agents of the occurrence of a DIP Order Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Agents as provided in the DIP Credit Agreement and this Final Order; (ii) the DIP Agents shall continue to apply such proceeds in accordance with the provisions of this Final Order and of the DIP Credit Agreement; (iii) except as set forth in the final paragraph of clause 2(e) of this Final Order, the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the Pre-Petition Debt and DIP Obligations and the Carve Out; and (iv) any obligation otherwise imposed on the DIP Agents or the DIP Secured Parties to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended.  Following the giving of written notice by the DIP Agents of the occurrence of a DIP Order Event of Default, the Debtors and the Statutory Committee shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred.  If the Debtors or the Statutory Committee do not contest the right of the DIP Secured Parties to exercise their remedies based upon whether a DIP Order Event of Default has occurred within such time period, or if the Debtors or the Statutory Committee do timely contest the occurrence of a DIP Order Event of

Default and the Bankruptcy Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b)    Subject to the provisions of Paragraph 17(a), upon the occurrence of a DIP Order Event of Default, the DIP Agents and DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements; provided that the DIP Agents' and the DIP Lenders' rights to occupy any leased premises and dispose of the DIP Collateral therefrom shall be limited to (i) those rights which the DIP Agents and the DIP Lenders may have under applicable law, (ii) those rights to which the applicable landlord agrees, or (iii) such rights as may be ordered by this Court.  All proceeds realized from any of the foregoing shall be turned over to the DIP Agents for application to the Carve Out, the DIP Obligations, the Pre-Petition Debt and, to the extent applicable, to the estate as set forth in the final paragraph of clause 2(e) of this Final Order, under, and in accordance with the provisions of, the DIP Financing Agreements, the Pre-Petition Agreements and this Final Order.

(c)    The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (1) permit the Debtors to grant the Pre-Petition Replacement Liens and the Pre-Petition Indemnity Account and the DIP Liens and to incur all liabilities and obligations to the Pre-Petition Secured Parties, the DIP Lender under the DIP Financing Agreements, the DIP Facility, the Interim Order and this Final Order, and (2) authorize the DIP Lender and the Pre-Petition Secured Parties to retain and apply payments hereunder.

(d)    Nothing included herein shall prejudice, impair, or otherwise affect Pre-Petition Secured Parties' or DIP Secured Parties' rights to seek any other or supplemental relief

in respect of the Debtors nor the DIP Agents' or DIP Lenders' rights, as provided in the DIP

Credit Agreement, to suspend or terminate the making of loans under the DIP Credit Agreement.

18.    **Proofs of Claim**.  The DIP Secured Parties will not be required to file proofs of

claim in the Cases or in any Successor Case.  The Pre-Petition Agents shall file an omnibus proof

of claim for the Pre-Petition Secured Parties on or before January 15, 2009 or such later date as

is provided in any "bar order" entered by this Court.

19.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code. No

Modification or Stay of this Final Order**. The DIP Agent and the DIP Lenders each have acted

in good faith in connection with the Interim Order and this Final Order and their reliance on the

Interim Order and this Final Order is in good faith.  Based on the findings set forth in the Interim

Order and this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which

is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the

provisions of the Interim Order or this Final Order are hereafter modified, amended or vacated

by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the

protections provided in section 364(e) of the Bankruptcy Code and, no such appeal,

modification, amendment or vacation shall affect the validity and enforceability of any advances

made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such

modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder

arising prior to the effective date of such modification, amendment or vacation of any DIP

Protections granted to the DIP Secured Parties shall be governed in all respects by the original

provisions of the Interim Order and this Final Order, and the DIP Secured Parties shall be

entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections

granted therein and herein, with respect to any such claim. Since the loans made pursuant to the DIP Credit Agreement are made in reliance on the Interim Order and this Final Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of the Interim Order or this Final Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under the Interim Order, this Final Order and/or the DIP Financing Agreements.

(b)    **Expenses**.  As provided in the DIP Financing Agreements, all reasonable out-of-pocket costs and expenses of the DIP Secured Parties in connection with the DIP Financing Agreements, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtors.  The DIP Secured Parties shall provide to the U.S. Trustee and counsel to the Statutory Committee, on a monthly basis, the total amount of professional fees and expenses incurred each calendar month in these chapter 11 cases, along with the invoices relating to such fees and expenses (redacted to remove attorney client privileged information and attorney work product).  If no objection as to the reasonableness of such fees and expenses is served on the DIP Agent within seven (7) days following receipt of such invoices, the Debtors shall pay such fees and expenses. Payment of such fees shall not be subject to allowance by this Court; provided however, if the Debtors or the Statutory Committee objects to payment of such fees and expenses, unresolved disputes as to the reasonableness of any such fees shall be determined by this Court absent agreement between the DIP Agent and the Debtors or the

Statutory Committee, as applicable (for clarity, that portion of the fees and expense not disputed shall be promptly paid by the Debtors).  Under no circumstances shall professionals for the DIP Secured Parties or Pre-Petition Secured Parties be required to comply with the U.S. Trustee fee guidelines.

(c)    **Binding Effect**.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Pre-Petition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.

(d)    **No Waiver**.  The failure of the Pre-Petition Secured Parties and the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Financing Agreements, the DIP Facility, this Final Order or otherwise, as applicable, shall not constitute a waiver of any of the Pre-Petition Secured Parties' and the DIP Secured Parties' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured Parties and the DIP Secured Parties to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the DIP Secured Parties or the Pre-Petition Secured Parties.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f)    **No Marshaling**.  Neither the DIP Secured Parties nor the Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Pre-Petition Collateral, as applicable.

(g)    **Section 552(b)**.  The DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the DIP Collateral.

(h)    **Amendment**.  The Debtors and the DIP Agents may amend, modify, supplement or waive any provision of the DIP Financing Agreements without further approval of the Court unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the Total Commitments of the DIP Lenders under the DIP Financing Agreements, (iii) changes the maturity date, or (iv) effects a material change to the terms of the DIP Financing Agreements. The Debtors shall provide written notice three (3) business days (or such shorter period as may be reasonable in light of the circumstances) prior to any such amendment, modification, supplement or waiver of any provisions of the DIP Financing Agreements to the Statutory Committee, and shall file a notice of such amendment, modification, supplement or waiver with the Court as soon as practicable after any such amendment, modification, supplement or waiver is executed.  Except as otherwise provided herein, no waiver, modification, or amendment of any

of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all

the Debtors and the DIP Agents (after having obtained the approval of the DIP Secured Parties as

provided in the DIP Financing Agreements) and approved by the Bankruptcy Court.

(i)    **Survival of Final Order**.  The provisions of this Final Order and any

actions taken pursuant hereto shall survive entry of any order which may be entered (i)

confirming any Plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of

the Bankruptcy Code, or (iii) to the extent authorized by Applicable Law, dismissing any of the

Cases, (iv) withdrawing of the reference of any of the Cases from this Court, or (v) providing for

abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms

and provisions of the Interim Order and this Final Order including the DIP Protections granted

pursuant to the Interim Order and this Final Order and the DIP Financing Agreements and any

protections granted the Pre-Petition Agent and the Pre-Petition Lenders, shall continue in full

force and effect notwithstanding the entry of such order, and such DIP Protections and

protections for the Pre-Petition Agent and the Pre-Petition Secured Parties shall maintain their

priority as provided by the Interim Order and this Final Order until all the obligations of the

Debtors to the DIP Lenders pursuant to the DIP Financing Agreements and the Pre-Petition Debt

has been indefeasibly paid in full and discharged (such payment being without prejudice to any

terms or provisions contained in the DIP Facility which survive such discharge by their terms).

The DIP Obligations shall not be discharged by the entry of an order confirming a Plan, the

Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

The Debtors shall not propose or support any Plan that is not conditioned upon the payment in

full in cash of all of the DIP Obligations (or other arrangements for payment of the DIP

Obligations satisfactory to the DIP Agents have been made) and the Pre-Petition Debt, on or

prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Commitment Termination Date.

(j)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements, the Interim Order and this Final Order, the provisions of this Final Order shall govern and control.

(k)    **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(l)    **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(m)    **No Waivers or Modification of Final Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Agents and the Pre-Petition Agent and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agents and the Pre-Petition Agent.

(n)    **Waiver of any Applicable Stay**.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

(o)    **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

SO ORDERED by the Bankruptcy Court this ____ day of December, 2008.

_____

UNITED     STATES     BANKRUPTCY JUDGE

1118163.5