<u>**Strictly Confidential**</u>

**Engagement Letter**

As of November 18, 2008

**Official Committee of the Unsecured Creditors
of Circuit City Stores, Inc.**
9950 Mayland Drive
Richmond, Virginia 23233

Attention:  Ramona Neal
            Chairperson

Re: <u>Advisory Services</u>

   This agreement (the "<u>Agreement</u>") confirms that Jefferies & Company, Inc. ("<u>Jefferies</u>") has been engaged by the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the bankruptcy cases (the "<u>Cases</u>") of Circuit City Stores, Inc. and its debtor affiliates (collectively, the "<u>Company</u>" or the "<u>Debtors</u>"), which are now pending in the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Bankruptcy Court</u>"), to act as investment banker to the Committee in the Cases.

1. <u>Services</u>.  In connection with the Cases, Jefferies will perform the following Investment Banking services for the Committee:

  (a) become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, assets, financial condition and prospects of the Debtors;

  (b) advise the Committee on the current state of the "restructuring market;"

  (c) assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, a sale of any or all of the Debtors' assets or equity under section 363 of chapter 11, title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), a liquidation (whether under Chapter 11 or Chapter 7 of the Bankruptcy Code), or otherwise (the "<u>Restructuring</u>"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring;

  (d) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization and the valuation of the Debtors in any sale or liquidation; and

  (e) render such other investment banking services as may from time to time be agreed upon by the Committee and Jefferies, including, but not limited to, providing expert testimony, and other expert support related to any threatened, expected, or initiated litigation.

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 2

It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

Jefferies will work to cooperate with the Committee's financial advisors, Protiviti, Inc. ("Protiviti") and not overlap / duplicate services with Protiviti.

2.  Cooperation.

(a)  The Committee will furnish or undertake to cause the Debtors to furnish Jefferies with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or other transaction contemplated herein or which Jefferies requests (all such information gathered or furnished being the "Information"). The Committee shall advise Jefferies promptly of the occurrence of any event or any other change in fact or circumstance prior to the closing of any Restructuring or other transaction contemplated herein upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b)  Jefferies (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors, and (iv) retains the right to perform due diligence during the course of this engagement.

3.  Use of Advice, Name, etc.

(a)  Jefferies' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person including, but not limited to, any member of the Committee in its individual capacity, and any other security holder, or employee or creditor of the Debtors, and may not be used or relied upon for any other purpose.

(b)  The Committee agrees that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and which approval, if given, will expire immediately upon the termination of Jefferies' services hereunder. No statements made or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, by the Committee without the prior written

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 3

authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure).

     (c)    The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise.  Jefferies and the Indemnified Persons (as defined below) shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have the authority to legally bind any of the foregoing.

4.    <u>Compensation</u>.  In payment for services rendered and to be rendered hereunder by Jefferies, the Company agrees to pay or cause to be paid to Jefferies in cash:

     (a)    A monthly fee (the "<u>Monthly Fee</u>") equal to $200,000 per month for the first four months of this Agreement, and $150,000 per month thereafter until the expiration or termination of this Agreement.  The first Monthly Fee(s) shall be payable immediately upon Bankruptcy Court approval of this Agreement (with, for the avoidance of doubt, the Monthly Fees being deemed to have accrued beginning on the date of this Agreement), and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary thereafter.  Fifty percent of any Monthly Fees paid to Jefferies in excess of $600,000 in the aggregate shall be creditable against any fees actually paid or to be paid to Jefferies pursuant to subsection 4(b) below.

     (b)    In addition, in consideration of the services rendered by Jefferies hereunder, the Debtors will pay or cause to be paid to Jefferies in cash a fee in an amount equal to (i) 1.5% of any recoveries (whether in the Cases and/or in any Chapter 7 Cases (as defined below)) received by Unsecured Creditors (as defined below) in an aggregate amount up to and including $200 million; plus (ii) 2.0% of any recoveries by Unsecured Creditors in any aggregate amount in excess of $200 million (the "Restructuring Fee"). For the purposes of this subsection (b), "recoveries" includes, but is not limited to, the fair market value of any cash, cash equivalents, securities, trust, sale or litigation interests, or other consideration, whether immediately realized or not.  The term "Unsecured Creditors" shall mean all creditors of the Company to the extent their claims are not (a) secured claims within the meaning of the Bankruptcy Code, or (b) entitled to priority pursuant to sections 507(a)or 503(b) of the Bankruptcy Code.

     (c)    For purposes of computing any fees payable to Jefferies hereunder, non-cash consideration shall be valued as follows: (i) publicly-traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date which is two business days prior to the date of closing of the Restructuring and (ii) any other non-cash consideration shall be

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 4

valued at the value ascribed to such non-cash consideration in the plan of reorganization, and if no such value is ascribed in the plan of reorganization, at the fair market value of such consideration as determined in good faith by the Committee and Jefferies.

(d)    The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.

5.    Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, the Debtors shall reimburse Jefferies, promptly upon receipt of an invoice therefore, for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6.    Termination.  Jefferies' engagement hereunder will commence upon the execution of this Agreement by the parties hereto, and will continue to the earlier of the date on which (A) each of the Cases is either (i) dismissed or (ii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by either Jefferies or the Committee on 30 days' written notice to the other.  Upon any termination of this Agreement, the Debtors shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  In the event of any termination of this Agreement, Jefferies shall be entitled to the Restructuring Fee, and such Restructuring Fee shall be immediately payable, if a Restructuring or similar transaction is consummated subsequent to the date of any termination of this Agreement.  Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 2-8, 10-17, and Schedule A hereto.

7.    Indemnification, etc.  As further consideration under this Agreement, the Debtors and their estates shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8.    Bankruptcy Court Approval.  The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 327 and 1103 of the Bankruptcy Code, from the Bankruptcy Court.  Such approval shall provide for retention of Jefferies

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 5

*nunc pro tunc* to November 18, 2008, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the Debtors' acknowledgements and obligations set forth in Schedule A), and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the Committee's obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court. In the event of a conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code (such converted cases, the "Chapter 7 Cases"), all unpaid fees and expenses then payable or which subsequently become payable to Jefferies hereunder (including, without limitation, any Restructuring Fee) shall be deemed an allowed administrative expenses in such Chapter 7 Cases having the priority set forth in Section 507(a)(2) of the Bankruptcy Code, and shall be paid to Jefferies as and when due in accordance with this Agreement..

9.    Exclusivity. The Committee agrees that it will not engage any other person, other than Protiviti, to perform any investment banking, financial or similar consulting services with respect to any potential Restructuring or other transactions contemplated herein. If the Committee is contacted by any person concerning a potential Restructuring or other transactions contemplated herein, the Committee will inform Jefferies of such inquiry, and all relevant details thereof.

Notwithstanding the Debtors' and their estates' obligations hereunder to pay the fees and expenses of Jefferies, to indemnify Jefferies and to provide Jefferies with information, it is understood and agreed that Jefferies' sole and exclusive client is the Committee and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

10.    No Assurances; Other Transactions; Disclaimer.

(a)    This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring or other transactions contemplated herein. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or other transactions contemplated herein, or achieve any other result.

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 6

      (b)    Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "Jefferies Group") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise. Information that is held elsewhere within Jefferies or within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or any other party or utilize for the Committee's benefit any non-public information acquired in the course of providing services to any other person engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and members of the Committee, and of potential participants in any Restructuring, for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. The Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Restructuring or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11.    <u>Construction and Governing Law</u>. This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

12.    <u>Arbitration</u>. The parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, including, but not limited to: (a) the termination or validity of this Agreement, (b) any alleged breach of this Agreement or (c) the engagement contemplated by this Agreement (any of the foregoing, a "Claim") shall be brought in the Bankruptcy Court. If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS, or its successor, in New York, New York, for final and binding arbitration in front of a panel of three arbitrators with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration, including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and

Case 08-35653-KRH    Doc 1195-1    Filed 12/22/08    Entered 12/22/08 18:32:37    Desc
Exhibit(s) A    Page 7 of 11

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 7

judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Debtors and the Committee agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

13. <u>Payments</u>. All payments to be made to Jefferies hereunder shall be made in cash by wire transfer of immediately available U.S. funds without deduction for any tax, provided. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. Subject to Bankruptcy Court approval, the Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14. <u>Announcements</u>. The Committee and the Debtors agree that Jefferies may, following any Restructuring or other transaction contemplated herein, place an announcement in such newspapers, electronic media and periodicals as it may choose, stating Jefferies' role and other material terms of the Restructuring or other transaction contemplated herein. Jefferies shall be entitled to identify the Committee and use the Debtors' name and logo, if any, in connection therewith. The Committee and the Debtors agree that any press release it may issue announcing the Restructuring or other transaction contemplated herein will, at Jefferies' request, contain a reference to Jefferies' role in such transaction.

15. <u>Notices</u>. Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Committee, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

16. <u>Miscellaneous</u>. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party. This Agreement is solely for the benefit of the Committee and Jefferies and no other person shall acquire or have any rights under or by virtue of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. The Committee and Jefferies shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in facsimile counterparts, each of

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 8

which will be deemed to be an original and all of which together will be deemed to be one and the same document.

17.     Patriot Act.  Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Act (the "Patriot Act"), Jefferies may be required to obtain, verify and record information that identifies the Debtors, the Committee and the members of the Committee in a manner that satisfies the requirements of the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.

**Official Committee of Unsecured Creditors of**
**Circuit City Stores, Inc.**
November 18, 2008
Page 9

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

              Sincerely,

              **JEFFERIES & COMPANY, INC.**


              By */s/ Michael Henkin*
                Name: Michael Henkin
                Title: Managing Director


Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CIRCUIT CITY STORES, INC.**


By */s/ Ramona Neal*
  Name: Ramona Neal
  Title: Chairperson

**SCHEDULE A**

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and the Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy cases (the "Cases") of Circuit City Stores, Inc., and its debtor affiliates (collectively, the "Debtors"). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any trustee appointed in the Debtors' Cases.

Because the Debtors are obligated to reimburse certain expenses of the Committee pursuant to the Bankruptcy Code and Jefferies will be acting on behalf of the Committee in connection with the services contemplated by the Agreement, as further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Losses to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct.

The Debtors and the Committee agree that no Indemnified Person shall have any liability to the Debtors or the Committee or their respective owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct.

Neither the Debtors nor the Committee will settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission of fault on the part of any Indemnified Person.

If, for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Debtors agree to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Debtors on the one hand and by Jefferies on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors and the Committee on the one hand and Jefferies on the other, but also the relative fault of the Debtors and the Committee, as applicable and Jefferies, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors and the Committee, as applicable, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that if any such reimbursement is determined by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct, such Indemnified Person shall promptly repay such amount to the Debtors. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Debtors or the Debtors' affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day that

**SCHEDULE A**

such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such Action.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and the Committee and successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.