ORIGINAL

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

RICHMOND DIVISION

FILED

DEC 2 2 2008

CLERK
U.S. BANKRUPTCY COURT

-------------------------------------------------------------x

In re:                                                    Chapter 11

CIRCUIT CITY STORES, INC., et al.,                        Case No. 08-35653-KRH

                    Debtors.                              Jointly Administered

-------------------------------------------------------------x

## OBJECTION OF SAVITRI I. COHEN TO THE DEBTORS' MOTION TO REJECT THEIR OBLIGATIONS UNDER AN EMPLOYMENT AGREEMENT

COMES NOW Savitri I. Cohen ("Ms. Cohen"), by counsel, and respectfully states as follows for her Objection to the Debtors' Motion to reject their obligations under her Employment Agreement dated June 2, 2004.

### BACKGROUND

1.     This Objection is made in opposition to the Debtors' First Omnibus Motion for Order Pursuant to Bankruptcy Code 105(a) and 365(a) and Bankruptcy Rule 6006 authorizing the rejection of certain executory contracts (the "Rejection Motion"). The Rejection Motion seeks, among other things, the rejection of Ms. Cohen's severance payments payable pursuant to the terms of her June 2, 2004 Employment Agreement. Copies of Circuit City Stores, Inc.'s June 2, 2008 Termination Notice and June 26, 2008 Supplemental Notice are attached hereto as **Exhibit A**.

2.     On June 2, 2004, Ms. Cohen entered into an Employment Agreement ("Employment Agreement") with Circuit City Stores, Inc., a copy of which is attached hereto and marked as **Exhibit B**.

3.    Article 7.4(b) of the Employment Agreement states, in pertinent part:

(b)    Upon the Effective Date of Termination specified by the Company for termination by the Company without cause, the Company shall pay to the Executive, in equal monthly installments over the following twelve (12) month period an amount equal to twelve (12) months of the Executive's Base Salary established for the fiscal year in which the Executive's Effective Date of Termination occurs.

4.    On June 2, 2008, Ms. Cohen's employment was terminated without cause triggering Circuit City's obligation to pay her salary for a year pursuant to the June 2, 2004 Employment Agreement (see Exhibit A).

5.    On November 12, 2008, Ms. Cohen received notification from Circuit City that her severance payments would be discontinued, a copy of which is attached hereto as **Exhibit C**.

6.    Ms. Cohen filed a Proof of Claim upon Circuit City Stores, Inc. on December 8, 2008, a copy of which is attached hereto as **Exhibit D**. To date, the Debtors have not filed an objection to Ms. Cohen's Proof of Claim.

## ARGUMENT

### Ms. Cohen's Severance May Not Be Rejected Under Section 365 of the Bankruptcy Code

7.    Section 365(a) of the Bankruptcy Code provides in pertinent part that: "the trustee [debtor-in-possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." (11 USC §365[a])

8.    An executory contract is one where both parties are required to perform under the contract. Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc., 756 F2d 1043, 1045 (4th Cir. 1985).

9.    The Fourth Circuit in Lubrizol Enterprises defined an executory contract to be one where "obligations of both the bankrupt and the other party to the contract are so

underperformed that the failure of either to complete the performance would constitute a material
breach excusing the performance of the other."

10.     Ms. Cohen's severance is not executory. She has fully performed under the June
2, 2004 Employment Agreement, and the only obligation to perform remains with the Debtors.
That obligation is to pay Ms. Cohen the remainder of her severance payments. That obligation
was triggered by its termination of Ms. Cohen's Employment without cause and its own
acknowledgement that Ms. Cohen is entitled to severance payments for one (1) year.

11.     Under Section 507(a)(7) of the Bankruptcy Code, Ms. Cohen's severance takes
priority as it is a claim for wages. The Debtors' attempt to reject this valid, enforceable claim is
an attempt to avoid compensating Ms. Cohen for her faithful performance of the June 2, 2004
Employment Agreement.

12.     While there is a non-competition clause in Ms. Cohen's Employment Agreement
that, by itself, does not make the agreement executory. In re Andrews, 80 F3d 906, n.13 and 14
(4th Cir. 1996).

13.     For all of these reasons, this Court should sustain the objection and overrule the
Debtors' Motion to Reject Ms. Cohen's severance and grant such other and further relief as this
Court deems just and proper.

DATED:     Albany, New York          Respectfully submitted,
           December 19, 2008

                                     **GLEASON, DUNN, WALSH & O'SHEA**
                                     Attorneys for Savitri Cohen

                                     By
                                          RONALD G. DUNN, ESQ.
                                     Office and P.O. Address
                                     40 Beaver Street
                                     Albany, NY 12207
                                     (518) 432-7511

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of December, 2008, I caused a copy of the foregoing

to be served by Federal Express Overnight Delivery which will be filed electronically and

distributed by the Court to those on the "2002" and "Core" lists and through the ECF system.

Ronald G. Dunn, Esq.

Laurie Lambert-Gaffney
Vice President, HR Operations
(804) 486-4000
laurie_lambert-gaffney@circuitcity.com



Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233

June 2, 2008

Savitri I. Cohen
53 Innsbrook Blvd
Hopewell Junction, NY 12533

### Re: Enforcement of Employment Agreement dated June 2, 2004

Dear Savitri:

Under Article 7.4 of your Employment Agreement, the Company is providing you with thirty (30) days written notice that it is terminating your employment without cause and that your employment will end on July 2, 2008. Effective June 2, 2008, you will be relieved of your job duties and you will no longer be required to report to work. You will be paid your current base salary of $5,326.92/biweekly through July 2, 2008. These payments will be direct deposited and the pay stub mailed directly to your home via U.S. mail.

Under Article 7.4(b), the Company will pay you an amount equal to twelve (12) months of your current base salary (totaling $138,500.00 gross) in twelve equal monthly installments directly following the effective date of your termination of employment.

You have 579 vested shares of non-qualified stock with an exercise price of $5.61, 2,250 vested shares of non-qualified stock options with an exercise price of $12.16, and 2,250 shares of restricted stock that will vest on July 1, 2008. The shares of non-qualified stock options will remain vested and exercisable through September 30, 2008, ninety (90) days from the date of your termination from employment. All remaining unvested stock options and unvested restricted stock are hereby forfeited.

You are also reminded of your continuing obligations under your Employment Agreement, and more specifically that your obligations imposed by Article 8 survive your termination of employment.

If you have any questions regarding this letter, please contact Yvette Parham, Human Resources Administration at 804-486-4000, extension 64505.

Very truly yours,

Laurie Lambert Gaffney

Laurie Lambert-Gaffney
Vice President, HR Operations

Laurie Lambert-Gaffney
Vice President, HR Operations
(804) 486-4000
laurie_lambert-gaffney@circuitcity.com

Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233

June 26, 2008

Savitri I. Cohen
53 Innsbrook Blvd
Hopewell Junction, NY 12533

    Re: Supplement to Enforcement of Employment Agreement

Dear Savitri:

  This letter is in response to your June 3, 2008 e-mail. The Company has agreed to your request for an additional 5 weeks of pay in lieu of a 5 week sabbatical that you state you planned to take this year.

  As previously stated in the June 2, 2008 letter enforcing your Employment Agreement, and consistent with Article 7.4(b), the Company will pay you an amount equal to twelve (12) months of your current base salary (totaling $138,500.00 gross) in twelve equal monthly installments directly following the effective date of your termination of employment. Directly thereafter, you will receive an additional 5 weeks pay ($13,317.30), on a bi-weekly basis, until fully paid.

  If you have any questions regarding this letter, please contact Yvette Parham, Human Resources Administration at 804-486-4000, extension 64505.

      Very truly yours,

      *Laurie Lambert-Gaffney*

      Laurie Lambert-Gaffney
      Vice President, HR Operations

9950 Mayland Drive

Richmond, VA 23233-1464

# Circuit City Stores, Inc.
# Employment Agreement for Savitri I. Cohen

This EMPLOYMENT AGREEMENT is made, entered into, and is effective as of the 2nd day of June 2004 (the "Effective Date"), by and between CIRCUIT CITY STORES, INC. (the "Company") and SAVITRI I. COHEN (the "Executive").

WHEREAS, the Company desires to employ the Executive as District Manager of Circuit City Stores, Inc.;

WHEREAS, the Company recognizes the Executive's intimate knowledge and experience in the business of the Company, and desires to secure the employment of the Executive in the role of District Manager of the Company; and

WHEREAS, the Executive will develop and/or come in contact with the Company's proprietary and confidential information which is not readily available to the public, and which is of great importance to the Company and is treated by the Company as secret and confidential information.

NOW, THEREFORE, in consideration of the Executive's continued employment and of the mutual covenants and agreements of the parties set forth in this Agreement, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

### Article 1. Term of Employment

The Company hereby agrees to employ the Executive and the Executive hereby accepts employment as District Manager of the Company, in accordance with the terms and conditions set forth herein, for an initial period of one (1) year, commencing as of the Effective Date of this Agreement as indicated above (the "Initial Term"); subject, however, to earlier termination as expressly provided herein.

The Initial Term shall automatically be renewed for additional periods of one (1) year each at the end of the Initial Term, and then again after each successive year thereafter (collectively, the "Renewal Periods," which, together with the Initial Term, constitute the "Term" of this Agreement). However, either party may terminate this Agreement at the end of the Initial Term, or at the end of any Renewal Period, by giving the other party written notice of intent not to renew, delivered at least thirty (30) days prior to the end of the Initial Term or any Renewal Period. For purposes of this Agreement, an "Employment Year" shall mean any twelve (12) month period during the Term of this Agreement beginning on the Effective Date or on any anniversary thereof.

### Article 2. Position and Responsibilities

During the Term of this Agreement, the Executive agrees to serve as District Manager of the Company. In his/her capacity as District Manager of the Company, the Executive shall report directly to the Executive's immediate manager and shall have the duties and responsibilities of District Manager of

_____ Initials

Savitri l. Cohen
Employment Agreement
June 2, 2004
Page 2 of 14

the Company and such other duties and responsibilities not inconsistent with the performance of his/her
duties as District Manager of the Company.

### Article 3. Standard of Care

During the term of this Agreement, the Executive agrees to devote substantially his/her full-time
attention and energies to the Company's business. The Executive covenants, warrants, and represents that
he/she shall:

    (a)    Devote his/her full and best efforts and talents full time to the performance of his/her
            employment obligations and duties for the Company;

    (b)    Exercise the highest degree of loyalty and the highest standards of conduct in the
            performance of his/her duties;

    (c)    Comply with all rules, regulations, and policies established or issued by the Company;
            and

    (d)    Refrain from taking advantage, for himself/herself or others, of any corporate
            opportunities of the Company.

### Article 4. Other Employment.

The Executive shall not, during the term hereof, be interested directly or indirectly, in any manner, as
partner, officer, director, investor, stockholder, advisor, employee, or in any other capacity, in any other
business similar to Company's business for the Executive's personal advantage or benefit or that of others.
Any other employment or position which might reasonably be deemed contrary to the best interests of the
Company is prohibited. During the term of employment hereunder, the Executive agrees to obtain the
Company's written consent prior to entering into any other occupation, even if dissimilar to that of the
Company. Such consent may be granted or withheld, in the Company's absolute discretion. Nothing herein
contained shall be deemed to prevent or limit the right of the Executive to invest in the capital stock or other
securities of any corporation whose stock or securities are regularly traded on any public exchange, nor shall
anything herein contained be deemed to prevent the Executive from investing in real estate for his/her own
benefit (so long as such investment (a) is not related to or in support of any entity engaged in a business
similar to that of the Company or (b) does not detract from the Executive's performance of his/her duties and
obligations hereunder).

### Article 5. Compensation and Benefits

As remuneration for all services to be rendered by the Executive during the Employment Period,
and as consideration for complying with the covenants herein, the Company shall pay and provide to the
Executive the following:

**5.1. Base Salary.** During the Term of this Agreement, the Company shall pay the Executive a
Base Salary in an amount which shall be established and approved by the Compensation Committee of
the Board of Directors; provided, however, that the Company shall not be obligated to maintain, increase
or refrain from reducing or amending such Base Salary so long as such changes are similarly applicable to

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 3 of 14

comparably situated employees. This Base Salary shall be subject to all appropriate federal and state
withholding taxes and payable in accordance with the normal payroll practices of the Company. The
Base Salary shall be reviewed at least annually following the Effective Date of this Agreement, while the
Term of this Agreement is in force, to ascertain whether, in the judgment of the Compensation
Committee, such Base Salary should be changed. If changed, the Base Salary as stated above shall,
likewise, be changed for all purposes of this Agreement.

   **5.2. Long-Term Incentives.** During the Term of this Agreement, the Executive shall be eligible
to participate in the Company's long-term incentive plan, to the extent that the Board of Directors of the
Company or the Compensation Committee, in their discretion, determines is appropriate. The Board of
Directors will make its determination consistent with the methodology used by the Company for
compensating its comparably situated employees.

   **5.3. Retirement Benefits.** During the Term of this Agreement, the Company shall provide to the
Executive the opportunity for participation in all Company pension, insurance, fringe benefit, and
executive compensation plans and programs, subject to the eligibility and participation requirements of
such plans.

   **5.4. Employee Benefits.** During the Term of this Agreement, the Company shall provide the
Executive all benefits, as commensurate with the position of District Manager of the Company, but at a
minimum not less than those provided by the Company to other comparably situated employees subject to
the eligibility requirements and other provisions of such arrangements. Such benefits may include group
term life insurance, comprehensive health and major medical insurance, dental and life insurance, and
short-term and long-term disability.

   **5.5. Right to Change Plans.** By reason of Article 5.4 herein, the Company shall not be
obligated to institute, maintain, or refrain from changing, amending, or discontinuing any benefit plan, so
long as such changes are similarly applicable to comparably situated employees.

### Article 6. Expenses

   During the Term of this Agreement, the Company shall pay or reimburse the Executive for all
ordinary and necessary expenses, in a reasonable amount, which the Executive incurs in performing
his/her duties under this Agreement including, but not limited to, travel, entertainment, professional dues
and subscriptions, and all dues, fees, and expenses associated with membership in various professional,
business, and civic associations and societies in which the Company finds that the Executive's
participation is in the best interests of the Company. The payment of reimbursement of expenses shall be
subject to such rules concerning documentation of expenses and the type or magnitude of such expenses
as the Compensation Committee of the Board of Directors may establish from time to time.

### Article 7. Employment Termination

   **7.1. Termination Due to Retirement or Death.** In the event the Executive's employment ends
by reason of Retirement (defined as voluntary "Normal Retirement" under the then established definitions
and rules of the Company's tax-qualified retirement plan) or the Executive's death during the term of this
Agreement, the Executive's benefits shall be determined in accordance with the Company's retirement,
survivor's benefits, insurance, and/or other applicable programs of the Company then in effect. In

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 4 of 14

addition, all stock grants, except performance-based grants in the case of Retirement, will become immediately vested and may be exercised by the Executive, the Executive's personal representatives, distributees, legatees, or estate at any time before the expiration date of the grant.

The Effective Date of Termination due to Retirement or death shall be (a) ninety (90) days following the date the Executive provides the Company with written notice that the Executive is ending employment by reason of Retirement or (b) on the Executive's date of death, as the case may be. Upon the Effective Date of Termination, the Company shall be obligated to pay the Executive or, if applicable, the Executive's estate; (a) any Base Salary that was accrued but not yet paid as of the Effective Date of Termination; and (b) all other rights and benefits that the Executive is vested in, pursuant to other plans and programs of the Company.

7.2. **Termination Due to Disability.** The Company shall have the right to terminate the Executive's employment for disability. For the purposes of this Agreement, disability shall mean any physical or mental illness or injury that causes the Executive to be unable to substantially perform the Executive's normal duties; provided however that the Executive shall not be considered disabled until: (i) the Executive has been so disabled for 180 days during any period of twelve (12) consecutive months; (ii) the Executive's attending physician shall have furnished to the Company certification that the return of the Executive to his/her normal duties is impossible or improbable; or (iii) the Executive is determined to be totally disabled by the disability insurer then insuring the Executive, if any.

The Effective Date of Termination due to Disability shall be specified, in a written notice, by the Executive's immediate manager, and such written notice shall be delivered to the Executive, but shall be no less than thirty (30) calendar days after the delivery of such written notice to the Executive. Upon the Effective Date of Termination, the Company shall be obligated to pay the Executive [or, if applicable, the Executive's estate]: (a) any salary that was accrued but not yet paid as of the Effective Date of Termination; and (b) all other rights and benefits that the Executive is vested in, pursuant to other plans and programs of the Company.

It is expressly understood that the Disability of the Executive for a period of one hundred eighty (180) calendar days or less in the aggregate during any period of twelve (12) consecutive months, in the absence of any reasonable expectation that his/her Disability will exist for more than such a period of time, shall not constitute a failure by him/her to perform his/her duties hereunder and shall not be deemed a breach or default, and the Executive shall receive full compensation for any such period of Disability or for any other temporary illness or incapacity during the term of this Agreement.

If the employment of the Executive terminates because of disability, all of the Executive's outstanding stock grants, including performance based grants, will become immediately vested, effective as of the date of the Executive's disability. Then, the Executive, the Executive's personal representatives, distributees, or legatees may exercise the Executive's grants at any time before the expiration date of the grant.

7.3. **Voluntary Termination by the Executive.** The Executive may terminate his/her employment and this Agreement at any time by giving the Company at least thirty (30) days written notice. The Company reserves the right to require the Executive not to work during the notice period but shall pay the Executive his/her full Base Salary, at the rate then in effect as provided in Article 5.1 herein, through the last day of the Executive's employment plus all other benefits to which the Executive has a

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 5 of 14

vested right on the last day of employment. The Company thereafter shall have no further obligations under this Agreement.

**7.4 Involuntary Termination by the Company Without Cause.** The Company may terminate the Executive's employment, at any time, for any reason other than Death, Disability, Retirement, or for Cause by providing the Executive with at least thirty (30) days written notice.

(a)    The Company's decision not to renew this Agreement at the Expiration Date of the Initial Term or any Renewal Period shall be deemed an involuntary termination without cause; provided, however, that for purposes of this Article 7.4(a), no variation, alteration, modification, cancellation, change or amendment made to this Agreement pursuant to Article 12.3 or 12.4 at a time other than the Expiration Date of the Initial Term or any Renewal Period, shall be deemed an involuntary termination without Cause.

(b)    Upon the Effective Date of Termination specified by the Company for termination by the Company without cause, the Company shall pay to the Executive, in equal monthly installments over the following twelve (12) month period an amount equal to twelve (12) months of the Executive's Base Salary established for the fiscal year in which the Executive's Effective Date of Termination occurs.

The Company thereafter shall have no further obligations under this Agreement.

**7.5. Termination For Cause.** Nothing in this Agreement shall be construed to prevent the Company from terminating the Executive's employment under this Agreement, without notice or liability for doing so, for "Cause."

For purposes of this Agreement, "Cause" means:

(a)    The Executive's material breach of this Agreement, which breach is not cured within ten (10) days of receipt by the Executive of written notice from the Company specifying the breach;

(b)    The Executive's gross negligence in the performance of his/her material duties hereunder, intentional nonperformance or intentional misperformance of such duties, misconduct or refusal to abide by or comply with the directives of the Board, his/her superior officers, or the Company's policies and procedures, which actions continue for a period of ten (10) days after receipt by the Executive of written notice of the need to cure or cease;

(c)    Conviction of a felony or other crime involving moral turpitude;

(d)    The Executive engaging in illegal conduct, dishonesty or fraud with respect to the business or affairs of the Company that in the reasonable judgment of the Company materially and adversely affects the operations or reputation of the Company;

(e)    Failure of the Executive to disclose to the Executive's manager a conflict of interest, of which the Executive knew or, with reasonable diligence, would have known, in connection with any transaction entered into on behalf of the Company; or

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 6 of 14

(f)    Failure of the Executive to agree to a modification of this Agreement, pursuant to
       paragraph 12.3 below, when the purpose of the modification is to comply with applicable
       federal, state and/or local laws or regulations, or when such modification is designed to
       further define the restrictions of Article 8 or otherwise enhance the enforcement of
       Article 8 without increasing the scope of the Article 8 restrictions.

In the event this Agreement is terminated for Cause, the Company shall pay the Executive his/her
Base Salary through the Effective Date of Termination for cause and the Executive shall immediately
thereafter forfeit all rights and benefits (other than vested benefits) he would otherwise have been entitled
to receive under this Agreement. The Company thereafter shall have no further obligations under this
Agreement.

### Article 8. Noncompetition and Confidentiality

#### 8.1. Noncompetition.

(a)    During the Executive's employment and for a period of twelve (12) months following the
       last day of the Executive's employment, the Executive shall not directly or indirectly
       compete with the Company by engaging, in a competitive capacity, in any business that
       is engaged in the same or similar business of the Company in one or more Metropolitan
       Statistical Areas ("MSAs") in which the Company is doing business on the last day of the
       Executive's employment. A business will not be considered to be in competition with the
       Company for purposes of this paragraph 8.1(a) or paragraph 8.1(b) below if:

       (i)     The business or the operating unit of the business in which the Executive is
               employed or with which the Executive is associated (collectively the "Business
               Unit") is not engaged in the retail sales of consumer electronics;

       (ii)    If sales of the Business Unit's products or services in the retail sales and service
               of consumer electronics constitute less than ten percent (10%) of such Business
               Unit's sales; or

       (iii)   If the sales of the Business Unit in the retail sales and service of consumer
               electronics do constitute more than ten percent (10%) of the sales of the Business
               Unit, but there is no geographic overlap between such Business Unit's and the
               Company's business locations.

Notwithstanding the foregoing, nothing herein shall be deemed to prevent or limit the right of the
Executive to invest in the capital stock or other securities of any corporation whose stock or securities are
regularly traded on any public exchange, nor shall anything herein contained be deemed to prevent
Employee from investing in real estate for his/her own benefit (as long as such investment is not related to
or in support of any entity engaged in the same or similar business as the Company in competition with
the Company in one or more MSA's in which the Company is doing business during the Executive's
employment).

(b)    During the Executive's employment and for a period of twelve (12) months following the
       last day of the Executive's employment, the Executive shall not directly or indirectly

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 7 of 14

compete with the Company by engaging, in a competitive capacity, in any business engaged in the same or similar business of the Company in one or more MSAs where, on the last day of the Executive's employment, the Company is engaged in real estate site selection or has taken further steps toward the commencement of operations in the future, of which the Executive is aware.

(c) The Executive agrees that competition, as set forth in Article 8.1(a) above, shall include, but not be limited to, engaging in competitive activity, as an individual, as a partner, as a joint venturer with any other person or entity, or as an employee, agent, or representative of any other person or entity.

(d) It is the specific intent of the parties that the Executive shall be restricted from competing directly or indirectly with any segment of the Company's business in which the Executive engaged prior to the last day of his/her employment and from any segment of the Company's business about which the Executive acquired proprietary or confidential information during the course of his/her employment.

(e) If any provision of this Article 8.1 relating to the time period, geographic area or scope of restricted activities shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope of activities, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope of activities shall be deemed to be, and thereafter shall become, the maximum time period, scope of activities or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

(f) The Executive and the Company have examined in detail this Covenant Not to Compete and agree that the restraint imposed upon the Executive is reasonable in light of the legitimate interests of the Company, and it is not unduly harsh upon the Executive's ability to earn a livelihood.

**8.2. Non-Solicitation of Employees.** The Executive agrees that during the Executive's employment with the Company and for a period of twelve (12) months following the last day of the Executive's employment, the Executive shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever or hire any individual employed by the Company. For purposes of this Article 8.2, employee shall mean any individual employed by the Company on the last day of the Executive's employment or within the three (3) month period prior to the last day of the Executive's employment.

**8.3. Confidentiality.** The Company has advised the Executive and the Executive acknowledges that it is the policy of the Company to maintain as secret and confidential all Protected Information (as defined below), and that Protected Information has been and will be developed at substantial cost and effort to the Company. The Executive agrees to hold in strict confidence and safeguard any information of or about the Company gained by the Executive in any manner or from any source during the Executive's employment. The Executive shall not, without the prior written consent of the Company, at any time, directly or indirectly, divulge, furnish, use, disclose or make accessible to any person, firm, corporation, association, or other entity (otherwise than as may be required in the regular course of the

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 8 of 14

Executive's employment), either during the Executive's employment with the Company or subsequent to the last day of the Executive's employment, any Protected Information, or cause any such information of the Company to enter the public domain.

The Executive understands and agrees that any information, data and/or trade secrets about Company or its suppliers and/or distributors is the property of the Company and is essential to the protection of the Company's goodwill and to the maintenance of the Company's competitive position and accordingly should be kept secret. For purposes of this Agreement, "Protected Information" means trade secrets, confidential and proprietary business information of or about the Company, and any other information of the Company, including, customer lists (including potential customers), sources of supply, processes, plans, materials, pricing information, internal memoranda, marketing plans, promotional plans, internal policies, research, purchasing, accounting and financial information, computer programs, hardware, software, and products and services which may be developed from time to time by the Company and its agents or employees, including the Executive; provided, however, that information that is in the public domain (other than as a result of a breach of this Agreement), approved for release by the Company or lawfully obtained from third parties who are not bound by a confidentiality agreement with the Company, is not Protected Information.

Nothing contained in this Article is intended to reduce in any way protection available to the Company pursuant to the Uniform Trade Secrets Act as adopted in Virginia or any other state or other applicable laws, which prohibit the misuse or disclosure of confidential or proprietary information.

**8.4. Acknowledgement of Covenants.** The parties hereto acknowledge that the Executive's services are of a special, extraordinary, and intellectual character which gives him/her unique value, and that the business of the Company and its subsidiaries is highly competitive, and that violation of any of the covenants provided in this Article 8 would cause immediate, immeasurable, and irreparable harm, loss, and damage to the Company not adequately compensable by a monetary award. The Executive acknowledges that the time, scope of activities and geographical area restrained by the provisions of this Article 8 are reasonable and do not impose a greater restraint than is necessary to protect the goodwill of the Company's business. The Executive further acknowledges that he/she and the Company have negotiated and bargained for the terms of this Agreement and that the Executive has received adequate consideration for entering into this Agreement. In the event of any such breach or threatened breach by the Executive of any one or more of such covenants, the Company shall be entitled to such equitable and injunctive relief as may be available to restrain the Executive from violating the provisions hereof. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or in equity for such breach or threatened breach, including the recovery of damages and the immediate termination of the employment of the Executive hereunder for cause.

### Article 9. Change in Control

**9.1. Change in Control.** This Article 9 shall not become effective, and the Company shall have no obligation hereunder, if the employment of the Executive with the Company shall terminate prior to a Change in Control (as defined in Article 9.2 below) of the Company.

**9.2. Definition of Change in Control.** Change in Control of the Company means, and shall be deemed to have occurred, upon the first to occur of any of the following events:

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 9 of 14

(a)     The acquisition by any individual, entity, or group (a "Person"), including a "person"
        within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of
        1934, as amended (the "Exchange Act"), but excluding an Affiliate (as defined below) of
        the Company, of beneficial ownership within the meaning of Rule 13d-3 promulgated
        under the Exchange Act, of thirty-five percent (35%) or more of either: (i) the then
        outstanding shares of common stock of the Circuit City Group (the "Outstanding
        Common Stock"); or (ii) the combined voting power of the then outstanding securities of
        the Company entitled to vote generally in the election of directors (the "Outstanding
        Voting Securities"); excluding, however, the following: (A) any acquisition directly
        from the Company (excluding an acquisition resulting from the exercise of an option,
        conversion right, or exchange privilege unless the security being so exercised, converted
        or exchanged was acquired directly from the Company); (B) any acquisition by the
        Company; (C) any acquisition by an employee benefit plan (or related trust) sponsored or
        maintained by the Company or any corporation controlled by the Company; or (D) any
        acquisition by any corporation pursuant to a transaction which complies with clauses (i),
        (ii), and (iii) of subsection (c) of this Article 9.2;

(b)     Individuals who, as of the Effective Date, constitute the Board of Directors (the
        "Incumbent Board") cease for any reason to constitute at least a majority of such Board;
        provided that any individual who becomes a director of the Company subsequent to the
        Effective Date, whose election, or nomination for election by the Company's
        stockholders, was approved by the vote of at least a majority of the directors then
        comprising the Incumbent Board shall be deemed a member of the Incumbent Board; and
        provided further, that any individual who was initially elected as a director of the
        Company as a result of an actual or threatened election contest, as such terms are used in
        Rule 14a-11 of Regulation 14A promulgated under the Exchange Act, or any other actual
        or threatened solicitation of proxies or consents by or on behalf of any Person other than
        the Board shall not be deemed a member of the Incumbent Board;

(c)     The consummation of a reorganization, merger or consolidation of the Company or sale
        or other disposition of all or substantially all of the assets of the Company (a "Corporate
        Transaction"); excluding, however, a Corporate Transaction pursuant to which: (i) all or
        substantially all of the individuals or entities who are the beneficial owners, respectively,
        of the Outstanding Common Stock and the Outstanding Voting Securities immediately
        prior to such Corporate Transaction will beneficially own, directly or indirectly, more
        than sixty percent (60%) of, respectively, the outstanding shares of common stock, and
        the combined voting power of the outstanding securities of such corporation entitled to
        vote generally in the election of directors, as the case may be, of the corporation resulting
        from such Corporate Transaction (including, without limitation, a corporation, which as a
        result of such transaction owns the Company or all or substantially all of the Company's
        assets either directly or indirectly) in substantially the same proportions relative to each
        other as their ownership, immediately prior to such Corporate Transaction, of the
        Outstanding Common Stock and the Outstanding Voting Securities, as the case may be;
        (ii) no Person (other than: the Company; any employee benefit plan (or related trust)
        sponsored or maintained by the Company or any corporation controlled by the Company;
        the corporation resulting from such Corporate Transaction; and any Person which
        beneficially owned, immediately prior to such Corporate Transaction, directly or

                                                                                    ____ Initials

Saviuri I. Cohen
Employment Agreement
June 2, 2004
Page 10 of 14

indirectly, twenty-five percent (25%) or more of the Outstanding Common Stock or the Outstanding Voting Securities, as the case may be) will beneficially own, directly or indirectly, twenty-five percent (25%)or more of, respectively, the outstanding shares of common stock of the corporation resulting from such Corporate Transaction or the combined voting power of the outstanding securities of such corporation entitled to vote generally in the election of directors; and (iii) individuals who were members of the Incumbent Board will constitute at least a majority of the members of the board of directors of the corporation resulting from such Corporate Transaction; or

(d)    The consummation of a plan of complete liquidation, dissolution, or sale of substantially all the assets of the Company.

For purposes of this Article 9, "Affiliate" shall mean with reference to a specified Person, any Person that directly or indirectly through one (1) or more intermediaries controls or is controlled by or is under common control with the specified Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used in respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

**9.3. Change-in-Control Severance Benefits.** If at any time during the Term of this Agreement there is a Change in Control of the Company and the Executive's employment is terminated by the Company without cause within the one (1) year period following the Change in Control following a Change in Control of the Company, the Company shall provide to the Executive the following:

(a)    Base Salary and all other benefits due him/her as if he/she had remained an employee pursuant to Article 5 through the remainder of the month in which the termination occurs, less applicable withholding taxes and other authorized payroll deductions;

(b)    A lump-sum severance allowance in an amount that is equal to one (1) year of the Executive's Base Salary at the rate in effect immediately prior to the termination;

(c)    Any unvested stock options or any outstanding restricted stock, excluding restricted stock grants issued under a performance based plan, that would become vested (that is, transferable and non-forfeitable) if the Executive remained an employee through the Initial Term or the then current Renewal Period of this Agreement will become vested as of the date of the Executive's termination of employment. The Executive must satisfy the tax withholding requirements.

(d)    Continuation at the same cost to the Executive as existed as of the Effective Date of Termination of Agreement of all health, welfare, and benefit plan participation for one (1) full year following employment termination;

(e)    Provision of outplacement services for a period of three (3) months for the Executive; and

(f)    A lump-sum payment equal to the one (1) year costs of a Company vehicle.

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 11 of 14

**9.4. Excise Tax Equalization Payment.** In the event that the Executive becomes entitled to severance benefits under this Agreement or any other agreement with or plan of the Company (in the aggregate, the "Total Payments"), if any of the Total Payments will [be subject to the tax (the "Excise Tax") imposed by Section 4999 of the Code] or any similar excise tax that may hereafter be imposed), the Company shall pay to the Executive in cash an additional amount (the "Gross-Up Payment"), such that the net amount retained by the Executive after deduction of any Excise Tax upon the Total Payments and any federal, state, and local income tax and Excise Tax upon the Gross-Up Payment provided for by this Article 9.4 (including FICA and FUTA), shall be equal to the Total Payments. The Company shall make such payment to the Executive as soon as practicable following the Effective Date of Termination, but in no event beyond thirty (30) days from such date.

For purposes of determining the amount of the Gross-Up Payment, the Executive shall be deemed to pay federal income taxes at the highest marginal rate of federal income taxation in the calendar year in which the Gross-Up Payment is to be made, and state and local income taxes at the highest marginal rate of taxation in the state and locality of the Executive's residence on the Effective Date of Termination, net of the maximum reduction in federal income taxes which could be obtained from deduction of such state and local taxes.

The Company's Compensation Committee shall determine, based upon the advice of the Company's independent certified public accountants, whether any payments or benefits hereunder are subject to the Excise Tax.

**9.5. Subsequent Recalculation.** In the event the Internal Revenue Service adjusts the computation of the Company under Article 9.4 herein so that the Executive did not receive the greatest net benefit, the Company shall reimburse the Executive for the full amount necessary to make the Executive whole, plus a market rate of interest, as determined by the Compensation Committee.

**Article 10. Assignment**

**10.1. Assignment by Company.** This Agreement may and shall be assigned or transferred to, and shall be binding upon and shall inure to the benefit of, any successor of the Company, and any such successor shall be deemed substituted for all purposes of the "Company" under the terms of this Agreement. As used in this Agreement, the term "successor" shall mean any person, firm, corporation, or business entity which, at any time, whether by merger, purchase, or otherwise, acquires all or substantially all of the assets or the business of the Company. In addition, the obligations of the Executive under Articles 8 and 12 of this Agreement shall continue after the termination of the Executive's employment and shall be binding on the Executive's heirs, executors, legal representatives and assigns.

**10.2. Assignment by Executive.** The services to be provided by the Executive to the Company hereunder are personal to the Executive, and the Executive's duties may not be assigned by the Executive; provided, however, that this Agreement shall inure to the benefit of and be enforceable by the Executive's personal or legal representatives, executors, and administrators, successors, heirs, distributees, devisees, and legatees. If the Executive dies while any amounts payable to the Executive hereunder remain outstanding, all such amounts, unless otherwise provided herein, shall be paid in accordance with the terms of this Agreement to the Executive's devisee, legatee, or other designee or, in the absence of such designee, to the Executive's estate.

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 12 of 14

#### Article 11. Dispute Resolution and Notice

**11.1. Issue Resolution.** Except for actions initiated by the Company to enjoin a breach by, and/or recover damages from the Executive related to violation of any of the restrictive covenants in Article 8 of this Agreement, which Company may bring in an appropriate court of law or equity, any disagreement between the Executive and the Company concerning anything covered by this Agreement or concerning other terms or conditions of the Executive's employment or the termination of the Executive's employment will be settled by final and binding arbitration pursuant to the Company's Associate Issue Resolution Program. The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures are incorporated herein by reference as if set forth in full in this Agreement. The decision of the arbitrator will be final and binding on both the Executive and the Company and may be enforced in a court of appropriate jurisdiction.

**11.2. Notice.** Any notices, requests, demands, or other communications provided for by this Agreement shall be sufficient if in writing, and if sent by registered or certified mail to the Executive at the last address he/she has filed in writing with the Company or, in the case of the Company, at its principal offices.

#### Article 12. Miscellaneous

**12.1. Entire Agreement.** This Agreement supersedes any prior agreements or understandings, oral or written, between the parties hereto, with respect to the subject matter hereof, and constitutes the entire agreement of the parties with respect thereto. Without limiting the generality of the foregoing sentence, this Agreement completely supersedes any and all prior employment agreements entered into by and between the Company, and the Executive, and all amendments thereto, in their entirety.

**12.2. Return of Materials.** Upon the termination of the Executive's employment with the Company, however such termination is effected, the Executive shall promptly deliver to Company all property, records, materials, documents, and copies of documents concerning the Executive's business and/or its customers (hereinafter collectively "Company Materials") which the Executive has in his/her possession or under his/her control at the time of termination of his/her employment. The Executive further agrees not to take or extract any portion of Company Materials in written, computer, electronic or any other reproducible form without the prior written consent of the Executive's immediate manager.

**12.3. Modification.** This Agreement shall not be varied, altered, modified, canceled, changed, or in any way amended except by mutual agreement of the parties in a written instrument executed by the parties hereto or their legal representatives.

**12.4. Severability.** It is the intention of the parties that the provisions of the restrictive covenants herein shall be enforceable to the fullest extent permissible under the applicable law. If any clause or provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, then the remainder of this Agreement shall not be affected thereby, and in lieu of each clause or provision of this Agreement which is illegal, invalid or unenforceable, there shall be added, as a part of this Agreement, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and as may be legal, valid, and enforceable.

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 13 of 14

**12.5. Counterparts.** This Agreement may be executed in one (1) or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement.

**12.6. Tax Withholding.** The Company may withhold from any benefits payable under this Agreement all federal, state, city, or other taxes as may be required pursuant to any law or governmental regulation or ruling.

**12.7. Restrictive Covenants of the Essence.** The restrictive covenants of the Executive set forth herein are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement; and the existence of any claim or cause of action of the Executive against the Company, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by the Company of the restrictive covenants contained herein. The Company shall at all times maintain the right to seek enforcement of these provisions whether or not the Company has previously refrained from seeking enforcement of any such provision as to the Executive or any other individual who has signed an agreement with similar provisions.

**12.8 Beneficiaries.** The Executive may designate one (1) or more persons or entities as the primary and/or contingent beneficiaries of any amounts to be received under this Agreement. Such designation must be in the form of a signed writing acceptable to the Executive's immediate manager. The Executive may make or change such designation at any time.

**12.9. Payment Obligation Absolute.** The Company's obligation to make the payments and the arrangement provided for herein shall be absolute and unconditional, and shall not be affected by any circumstances, including, without limitation, any offset, counterclaim, recoupment, defense, or other right which the Company may have against the Executive or anyone else. All amounts payable by the Company hereunder shall be paid without notice or demand. Each and every payment made hereunder by the Company shall be final, and the Company shall not seek to recover all or any part of such payment from the Executive or from whomsoever may be entitled thereto, for any reasons whatsoever.

The Executive shall not be obligated to seek other employment in mitigation of the amounts payable or arrangements made under any provision of this Agreement, and the obtaining of any such other employment shall in no event effect any reduction of the Company's obligations to make the payments and arrangements required to be made under this Agreement; provided, however, that continued health, welfare, and benefit plan participation pursuant to Article 7.4 or Article 9.3 herein shall be discontinued in the event the Executive becomes eligible to receive substantially similar benefits from a successor employer.

**12.10. Contractual Rights to Benefits.** This Agreement establishes and vests in the Executive a contractual right to the benefits to which he is entitled hereunder. However, nothing herein contained shall require or be deemed to require, or prohibit or be deemed to prohibit, the Company to segregate, earmark, or otherwise set aside any funds or other assets, in trust or otherwise, to provide for any payments to be made or required hereunder.

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 14 of 14

**Article 13. Governing Law**

To the extent not preempted by federal, law, the provisions of this Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia, without reference to Virginia's choice of law statutes or decisions.

IN WITNESS WHEREOF, the Executive and the Company have executed this Agreement as of the Effective Date.

**CIRCUIT CITY STORES, INC.**

By: _____
    Jeffrey S. Wells
    Senior Vice President, Human Resources


**EXECUTIVE:**

_____
Savitri I. Cohen   SSN: 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


**ATTEST:**

_____


_____ Initials

Exhibit C

November 12, 2008

Savitri Cohen
53 Innsbrook Blvd.
Hopewell Jct, NY 12533

Dear Savitri:

On November 10, 2008, Circuit City Stores, Inc. filed a voluntary petition for reorganization relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia. In light of the Chapter 11 filing, we are writing to provide you with an update regarding the payments that you have been receiving following the separation of your employment from the Company. These payments are set forth in an Employment Agreement, dated as of 6/2/2004, between the Company and you (the "Agreement") and summarized in an enforcement letter dated 6/2/08 and 6/26/08.

In light of the Chapter 11 filing and given the Company's obligations to its creditors, the Company has determined that it will discontinue making payments and providing services under the Agreement, beginning as of November 10, 2008.

In that regard, the Company will ask the Bankruptcy Court to formally reject the Agreement and expects to ask for court approval for such rejection in December 2008. You will receive a notice of the hearing to address this issue and a copy of the Company's motion prior to that time.

This discontinuation also includes any subsidy that may be provided to you for benefits continuation. You still have the ability to continue your benefits under the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended (COBRA), as long as you make your payments by the required deadline. Under COBRA, you are entitled to continue your benefits at your own cost for the remainder of the period lasting up to 18 months from your date of termination. A COBRA payment packet with coupons is being prepared and will be mailed to you shortly so that you will be able to make your payments.

We sincerely regret having to take this action and the impact that it will have on you, but this decision has been identified, after careful consideration, as the best course of action for all of the Company's stakeholders.

Sincerely,

Eric A. Jonas
SVP Human Resources

UNITED STATES BANKRUPTCY COURT

| Name of Debtor: Circuit City Stores, Inc. | Case Number: 08-35653-KRH |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): Savitri Cohen | ☐ Check this box to indicate that this claim amends a previously filed claim. |

Name and address where notices should be sent:

Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

Telephone number:
(518) 432-7511

Court Claim Number:_____
(If known)

Filed on:_____

| Name and address where payment should be sent (if different from above): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ 92,333.33

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Severance
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** N/A

**3a. Debtor may have scheduled account as:** N/A
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

**Value of Property:** $_____ **Annual Interest Rate** ___%

Amount of arrearage and other charges as of time case filed included in secured claim,

**if any:** $_____ **Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**FOR COURT USE ONLY**

**Date:** 12-08-2008

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

_Savitri Cohen_ SAVITRI COHEN

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Circuit City Stores, Inc.
Richmond, VA 23233-1464

# Circuit City Stores, Inc.
# Employment Agreement for Savitri I. Cohen

This EMPLOYMENT AGREEMENT is made, entered into, and is effective as of the 2nd day of June 2004 (the "Effective Date"), by and between CIRCUIT CITY STORES, INC. (the "Company") and SAVITRI I. COHEN (the "Executive").

WHEREAS, the Company desires to employ the Executive as District Manager of Circuit City Stores, Inc.;

WHEREAS, the Company recognizes the Executive's intimate knowledge and experience in the business of the Company, and desires to secure the employment of the Executive in the role of District Manager of the Company; and

WHEREAS, the Executive will develop and/or come in contact with the Company's proprietary and confidential information which is not readily available to the public, and which is of great importance to the Company and is treated by the Company as secret and confidential information.

NOW, THEREFORE, in consideration of the Executive's continued employment and of the mutual covenants and agreements of the parties set forth in this Agreement, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## Article 1. Term of Employment

The Company hereby agrees to employ the Executive and the Executive hereby accepts employment as District Manager of the Company, in accordance with the terms and conditions set forth herein, for an initial period of one (1) year, commencing as of the Effective Date of this Agreement as indicated above (the "Initial Term"); subject, however, to earlier termination as expressly provided herein.

The Initial Term shall automatically be renewed for additional periods of one (1) year each at the end of the Initial Term, and then again after each successive year thereafter (collectively, the "Renewal Periods," which, together with the Initial Term, constitute the "Term" of this Agreement). However, either party may terminate this Agreement at the end of the Initial Term, or at the end of any Renewal Period, by giving the other party written notice of intent not to renew, delivered at least thirty (30) days prior to the end of the Initial Term or any Renewal Period. For purposes of this Agreement, an "Employment Year" shall mean any twelve (12) month period during the Term of this Agreement beginning on the Effective Date or on any anniversary thereof.

## Article 2. Position and Responsibilities

During the Term of this Agreement, the Executive agrees to serve as District Manager of the Company. In his/her capacity as District Manager of the Company, the Executive shall report directly to the Executive's immediate manager and shall have the duties and responsibilities of District Manager of

_____ Initials

Savitri L Cohen
Employment Agreement
June 2, 2004
Page 2 of 14

the Company and such other duties and responsibilities not inconsistent with the performance of his/her duties as District Manager of the Company.

### Article 3. Standard of Care

During the term of this Agreement, the Executive agrees to devote substantially his/her full-time attention and energies to the Company's business. The Executive covenants, warrants, and represents that he/she shall:

    (a)    Devote his/her full and best efforts and talents full time to the performance of his/her employment obligations and duties for the Company;

    (b)    Exercise the highest degree of loyalty and the highest standards of conduct in the performance of his/her duties;

    (c)    Comply with all rules, regulations, and policies established or issued by the Company; and

    (d)    Refrain from taking advantage, for himself/herself or others, of any corporate opportunities of the Company.

### Article 4. Other Employment.

The Executive shall not, during the term hereof, be interested directly or indirectly, in any manner, as partner, officer, director, investor, stockholder, advisor, employee, or in any other capacity, in any other business similar to Company's business for the Executive's personal advantage or benefit or that of others. Any other employment or position which might reasonably be deemed contrary to the best interests of the Company is prohibited. During the term of employment hereunder, the Executive agrees to obtain the Company's written consent prior to entering into any other occupation, even if dissimilar to that of the Company. Such consent may be granted or withheld, in the Company's absolute discretion. Nothing herein contained shall be deemed to prevent or limit the right of the Executive to invest in the capital stock or other securities of any corporation whose stock or securities are regularly traded on any public exchange, nor shall anything herein contained be deemed to prevent the Executive from investing in real estate for his/her own benefit (so long as such investment (a) is not related to or in support of any entity engaged in a business similar to that of the Company or (b) does not detract from the Executive's performance of his/her duties and obligations hereunder).

### Article 5. Compensation and Benefits

As remuneration for all services to be rendered by the Executive during the Employment Period, and as consideration for complying with the covenants herein, the Company shall pay and provide to the Executive the following:

**5.1. Base Salary.** During the Term of this Agreement, the Company shall pay the Executive a Base Salary in an amount which shall be established and approved by the Compensation Committee of the Board of Directors; provided, however, that the Company shall not be obligated to maintain, increase or refrain from reducing or amending such Base Salary so long as such changes are similarly applicable to

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 3 of 14

comparably situated employees. This Base Salary shall be subject to all appropriate federal and state withholding taxes and payable in accordance with the normal payroll practices of the Company. The Base Salary shall be reviewed at least annually following the Effective Date of this Agreement, while the Term of this Agreement is in force, to ascertain whether, in the judgment of the Compensation Committee, such Base Salary should be changed. If changed, the Base Salary as stated above shall, likewise, be changed for all purposes of this Agreement.

**5.2. Long-Term Incentives.** During the Term of this Agreement, the Executive shall be eligible to participate in the Company's long-term incentive plan, to the extent that the Board of Directors of the Company or the Compensation Committee, in their discretion, determines is appropriate. The Board of Directors will make its determination consistent with the methodology used by the Company for compensating its comparably situated employees.

**5.3. Retirement Benefits.** During the Term of this Agreement, the Company shall provide to the Executive the opportunity for participation in all Company pension, insurance, fringe benefit, and executive compensation plans and programs, subject to the eligibility and participation requirements of such plans.

**5.4. Employee Benefits.** During the Term of this Agreement, the Company shall provide the Executive all benefits, as commensurate with the position of District Manager of the Company, but at a minimum not less than those provided by the Company to other comparably situated employees subject to the eligibility requirements and other provisions of such arrangements. Such benefits may include group term life insurance, comprehensive health and major medical insurance, dental and life insurance, and short-term and long-term disability.

**5.5. Right to Change Plans.** By reason of Article 5.4 herein, the Company shall not be obligated to institute, maintain, or refrain from changing, amending, or discontinuing any benefit plan, so long as such changes are similarly applicable to comparably situated employees.

### Article 6. Expenses

During the Term of this Agreement, the Company shall pay or reimburse the Executive for all ordinary and necessary expenses, in a reasonable amount, which the Executive incurs in performing his/her duties under this Agreement including, but not limited to, travel, entertainment, professional dues and subscriptions, and all dues, fees, and expenses associated with membership in various professional, business, and civic associations and societies in which the Company finds that the Executive's participation is in the best interests of the Company. The payment of reimbursement of expenses shall be subject to such rules concerning documentation of expenses and the type or magnitude of such expenses as the Compensation Committee of the Board of Directors may establish from time to time.

### Article 7. Employment Termination

**7.1. Termination Due to Retirement or Death.** In the event the Executive's employment ends by reason of Retirement (defined as voluntary "Normal Retirement" under the then established definitions and rules of the Company's tax-qualified retirement plan) or the Executive's death during the term of this Agreement, the Executive's benefits shall be determined in accordance with the Company's retirement, survivor's benefits, insurance, and/or other applicable programs of the Company then in effect. In

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 4 of 14

addition, all stock grants, except performance-based grants in the case of Retirement, will become immediately vested and may be exercised by the Executive, the Executive's personal representatives, distributees, legatees, or estate at any time before the expiration date of the grant.

The Effective Date of Termination due to Retirement or death shall be (a) ninety (90) days following the date the Executive provides the Company with written notice that the Executive is ending employment by reason of Retirement or (b) on the Executive's date of death, as the case may be. Upon the Effective Date of Termination, the Company shall be obligated to pay the Executive or, if applicable, the Executive's estate; (a) any Base Salary that was accrued but not yet paid as of the Effective Date of Termination; and (b) all other rights and benefits that the Executive is vested in, pursuant to other plans and programs of the Company.

**7.2. Termination Due to Disability.** The Company shall have the right to terminate the Executive's employment for disability. For the purposes of this Agreement, disability shall mean any physical or mental illness or injury that causes the Executive to be unable to substantially perform the Executive's normal duties; provided however that the Executive shall not be considered disabled until: (i) the Executive has been so disabled for 180 days during any period of twelve (12) consecutive months; (ii) the Executive's attending physician shall have furnished to the Company certification that the return of the Executive to his/her normal duties is impossible or improbable; or (iii) the Executive is determined to be totally disabled by the disability insurer then insuring the Executive, if any.

The Effective Date of Termination due to Disability shall be specified, in a written notice, by the Executive's immediate manager, and such written notice shall be delivered to the Executive, but shall be no less than thirty (30) calendar days after the delivery of such written notice to the Executive. Upon the Effective Date of Termination, the Company shall be obligated to pay the Executive [or, if applicable, the Executive's estate]: (a) any salary that was accrued but not yet paid as of the Effective Date of Termination; and (b) all other rights and benefits that the Executive is vested in, pursuant to other plans and programs of the Company.

It is expressly understood that the Disability of the Executive for a period of one hundred eighty (180) calendar days or less in the aggregate during any period of twelve (12) consecutive months, in the absence of any reasonable expectation that his/her Disability will exist for more than such a period of time, shall not constitute a failure by him/her to perform his/her duties hereunder and shall not be deemed a breach or default, and the Executive shall receive full compensation for any such period of Disability or for any other temporary illness or incapacity during the term of this Agreement.

If the employment of the Executive terminates because of disability, all of the Executive's outstanding stock grants, including performance based grants, will become immediately vested, effective as of the date of the Executive's disability. Then, the Executive, the Executive's personal representatives, distributees, or legatees may exercise the Executive's grants at any time before the expiration date of the grant.

**7.3. Voluntary Termination by the Executive.** The Executive may terminate his/her employment and this Agreement at any time by giving the Company at least thirty (30) days written notice. The Company reserves the right to require the Executive not to work during the notice period but shall pay the Executive his/her full Base Salary, at the rate then in effect as provided in Article 5.1 herein, through the last day of the Executive's employment plus all other benefits to which the Executive has a

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 5 of 14

vested right on the last day of employment. The Company thereafter shall have no further obligations under this Agreement.

**7.4 Involuntary Termination by the Company Without Cause.** The Company may terminate the Executive's employment, at any time, for any reason other than Death, Disability, Retirement, or for Cause by providing the Executive with at least thirty (30) days written notice.

(a)   The Company's decision not to renew this Agreement at the Expiration Date of the Initial Term or any Renewal Period shall be deemed an involuntary termination without cause; provided, however, that for purposes of this Article 7.4(a), no variation, alteration, modification, cancellation, change or amendment made to this Agreement pursuant to Article 12.3 or 12.4 at a time other than the Expiration Date of the Initial Term or any Renewal Period, shall be deemed an involuntary termination without Cause.

(b)   Upon the Effective Date of Termination specified by the Company for termination by the Company without cause, the Company shall pay to the Executive, in equal monthly installments over the following twelve (12) month period an amount equal to twelve (12) months of the Executive's Base Salary established for the fiscal year in which the Executive's Effective Date of Termination occurs.

The Company thereafter shall have no further obligations under this Agreement.

**7.5. Termination For Cause.** Nothing in this Agreement shall be construed to prevent the Company from terminating the Executive's employment under this Agreement, without notice or liability for doing so, for "Cause."

For purposes of this Agreement, "Cause" means:

(a)   The Executive's material breach of this Agreement, which breach is not cured within ten (10) days of receipt by the Executive of written notice from the Company specifying the breach;

(b)   The Executive's gross negligence in the performance of his/her material duties hereunder, intentional nonperformance or intentional misperformance of such duties, misconduct or refusal to abide by or comply with the directives of the Board, his/her superior officers, or the Company's policies and procedures, which actions continue for a period of ten (10) days after receipt by the Executive of written notice of the need to cure or cease;

(c)   Conviction of a felony or other crime involving moral turpitude;

(d)   The Executive engaging in illegal conduct, dishonesty or fraud with respect to the business or affairs of the Company that in the reasonable judgment of the Company materially and adversely affects the operations or reputation of the Company;

(e)   Failure of the Executive to disclose to the Executive's manager a conflict of interest, of which the Executive knew or, with reasonable diligence, would have known, in connection with any transaction entered into on behalf of the Company; or

_____ Initials

(f)     Failure of the Executive to agree to a modification of this Agreement, pursuant to
paragraph 12.3 below, when the purpose of the modification is to comply with applicable
federal, state and/or local laws or regulations, or when such modification is designed to
further define the restrictions of Article 8 or otherwise enhance the enforcement of
Article 8 without increasing the scope of the Article 8 restrictions.

In the event this Agreement is terminated for Cause, the Company shall pay the Executive his/her
Base Salary through the Effective Date of Termination for cause and the Executive shall immediately
thereafter forfeit all rights and benefits (other than vested benefits) he would otherwise have been entitled
to receive under this Agreement. The Company thereafter shall have no further obligations under this
Agreement.

**Article 8. Noncompetition and Confidentiality**

**8.1. Noncompetition.**

(a)     During the Executive's employment and for a period of twelve (12) months following the
last day of the Executive's employment, the Executive shall not directly or indirectly
compete with the Company by engaging, in a competitive capacity, in any business that
is engaged in the same or similar business of the Company in one or more Metropolitan
Statistical Areas ("MSAs") in which the Company is doing business on the last day of the
Executive's employment. A business will not be considered to be in competition with the
Company for purposes of this paragraph 8.1(a) or paragraph 8.1(b) below if:

    (i)     The business or the operating unit of the business in which the Executive is
employed or with which the Executive is associated (collectively the "Business
Unit") is not engaged in the retail sales of consumer electronics;

    (ii)    If sales of the Business Unit's products or services in the retail sales and service
of consumer electronics constitute less than ten percent (10%) of such Business
Unit's sales; or

    (iii)   If the sales of the Business Unit in the retail sales and service of consumer
electronics do constitute more than ten percent (10%) of the sales of the Business
Unit, but there is no geographic overlap between such Business Unit's and the
Company's business locations.

Notwithstanding the foregoing, nothing herein shall be deemed to prevent or limit the right of the
Executive to invest in the capital stock or other securities of any corporation whose stock or securities are
regularly traded on any public exchange, nor shall anything herein contained be deemed to prevent
Employee from investing in real estate for his/her own benefit (as long as such investment is not related to
or in support of any entity engaged in the same or similar business as the Company in competition with
the Company in one or more MSA's in which the Company is doing business during the Executive's
employment).

(b)     During the Executive's employment and for a period of twelve (12) months following the
last day of the Executive's employment, the Executive shall not directly or indirectly

_____ Initials

compete with the Company by engaging, in a competitive capacity, in any business engaged in the same or similar business of the Company in one or more MSAs where, on the last day of the Executive's employment, the Company is engaged in real estate site selection or has taken further steps toward the commencement of operations in the future, of which the Executive is aware.

(c)   The Executive agrees that competition, as set forth in Article 8.1(a) above, shall include, but not be limited to, engaging in competitive activity, as an individual, as a partner, as a joint venturer with any other person or entity, or as an employee, agent, or representative of any other person or entity.

(d)   It is the specific intent of the parties that the Executive shall be restricted from competing directly or indirectly with any segment of the Company's business in which the Executive engaged prior to the last day of his/her employment and from any segment of the Company's business about which the Executive acquired proprietary or confidential information during the course of his/her employment.

(e)   If any provision of this Article 8.1 relating to the time period, geographic area or scope of restricted activities shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope of activities, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope of activities shall be deemed to be, and thereafter shall become, the maximum time period, scope of activities or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

(f)   The Executive and the Company have examined in detail this Covenant Not to Compete and agree that the restraint imposed upon the Executive is reasonable in light of the legitimate interests of the Company, and it is not unduly harsh upon the Executive's ability to earn a livelihood.

**8.2. Non-Solicitation of Employees.** The Executive agrees that during the Executive's employment with the Company and for a period of twelve (12) months following the last day of the Executive's employment, the Executive shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever or hire any individual employed by the Company. For purposes of this Article 8.2, employee shall mean any individual employed by the Company on the last day of the Executive's employment or within the three (3) month period prior to the last day of the Executive's employment.

**8.3. Confidentiality.** The Company has advised the Executive and the Executive acknowledges that it is the policy of the Company to maintain as secret and confidential all Protected Information (as defined below), and that Protected Information has been and will be developed at substantial cost and effort to the Company. The Executive agrees to hold in strict confidence and safeguard any information of or about the Company gained by the Executive in any manner or from any source during the Executive's employment. The Executive shall not, without the prior written consent of the Company, at any time, directly or indirectly, divulge, furnish, use, disclose or make accessible to any person, firm, corporation, association, or other entity (otherwise than as may be required in the regular course of the

_____ Initials

Savin F. Cohen
Employment Agreement
June 2, 2004
Page 8 of 14

Executive's employment), either during the Executive's employment with the Company or subsequent to the last day of the Executive's employment, any Protected Information, or cause any such information of the Company to enter the public domain.

The Executive understands and agrees that any information, data and/or trade secrets about Company or its suppliers and/or distributors is the property of the Company and is essential to the protection of the Company's goodwill and to the maintenance of the Company's competitive position and accordingly should be kept secret. For purposes of this Agreement, "Protected Information" means trade secrets, confidential and proprietary business information of or about the Company, and any other information of the Company, including, customer lists (including potential customers), sources of supply, processes, plans, materials, pricing information, internal memoranda, marketing plans, promotional plans, internal policies, research, purchasing, accounting and financial information, computer programs, hardware, software, and products and services which may be developed from time to time by the Company and its agents or employees, including the Executive; provided, however, that information that is in the public domain (other than as a result of a breach of this Agreement), approved for release by the Company or lawfully obtained from third parties who are not bound by a confidentiality agreement with the Company, is not Protected Information.

Nothing contained in this Article is intended to reduce in any way protection available to the Company pursuant to the Uniform Trade Secrets Act as adopted in Virginia or any other state or other applicable laws, which prohibit the misuse or disclosure of confidential or proprietary information.

**8.4. Acknowledgement of Covenants.** The parties hereto acknowledge that the Executive's services are of a special, extraordinary, and intellectual character which gives him/her unique value, and that the business of the Company and its subsidiaries is highly competitive, and that violation of any of the covenants provided in this Article 8 would cause immediate, immeasurable, and irreparable harm, loss, and damage to the Company not adequately compensable by a monetary award. The Executive acknowledges that the time, scope of activities and geographical area restrained by the provisions of this Article 8 are reasonable and do not impose a greater restraint than is necessary to protect the goodwill of the Company's business. The Executive further acknowledges that he/she and the Company have negotiated and bargained for the terms of this Agreement and that the Executive has received adequate consideration for entering into this Agreement. In the event of any such breach or threatened breach by the Executive of any one or more of such covenants, the Company shall be entitled to such equitable and injunctive relief as may be available to restrain the Executive from violating the provisions hereof. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available at law or in equity for such breach or threatened breach, including the recovery of damages and the immediate termination of the employment of the Executive hereunder for cause.

**Article 9.  Change in Control**

**9.1. Change in Control.** This Article 9 shall not become effective, and the Company shall have no obligation hereunder, if the employment of the Executive with the Company shall terminate prior to a Change in Control (as defined in Article 9.2 below) of the Company.

**9.2. Definition of Change in Control.** Change in Control of the Company means, and shall be deemed to have occurred, upon the first to occur of any of the following events:

_____ Initials

Savfin I. Cohen
Employment Agreement
June 2, 2004
Page 9 of 14

(a)     The acquisition by any individual, entity, or group (a "Person"), including a "person" within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), but excluding an Affiliate (as defined below) of the Company, of beneficial ownership within the meaning of Rule 13d-3 promulgated under the Exchange Act, of thirty-five percent (35%) or more of either: (i) the then outstanding shares of common stock of the Circuit City Group (the "Outstanding Common Stock"); or (ii) the combined voting power of the then outstanding securities of the Company entitled to vote generally in the election of directors (the "Outstanding Voting Securities"); excluding, however, the following: (A) any acquisition directly from the Company (excluding an acquisition resulting from the exercise of an option, conversion right, or exchange privilege unless the security being so exercised, converted or exchanged was acquired directly from the Company); (B) any acquisition by the Company; (C) any acquisition by an employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company; or (D) any acquisition by any corporation pursuant to a transaction which complies with clauses (i), (ii), and (iii) of subsection (c) of this Article 9.2;

(b)     Individuals who, as of the Effective Date, constitute the Board of Directors (the "Incumbent Board") cease for any reason to constitute at least a majority of such Board; provided that any individual who becomes a director of the Company subsequent to the Effective Date, whose election, or nomination for election by the Company's stockholders, was approved by the vote of at least a majority of the directors then comprising the Incumbent Board shall be deemed a member of the Incumbent Board; and provided further, that any individual who was initially elected as a director of the Company as a result of an actual or threatened election contest, as such terms are used in Rule 14a-11 of Regulation 14A promulgated under the Exchange Act, or any other actual or threatened solicitation of proxies or consents by or on behalf of any Person other than the Board shall not be deemed a member of the Incumbent Board;

(c)     The consummation of a reorganization, merger or consolidation of the Company or sale or other disposition of all or substantially all of the assets of the Company (a "Corporate Transaction"); excluding, however, a Corporate Transaction pursuant to which: (i) all or substantially all of the individuals or entities who are the beneficial owners, respectively, of the Outstanding Common Stock and the Outstanding Voting Securities immediately prior to such Corporate Transaction will beneficially own, directly or indirectly, more than sixty percent (60%) of, respectively, the outstanding shares of common stock, and the combined voting power of the outstanding securities of such corporation entitled to vote generally in the election of directors, as the case may be, of the corporation resulting from such Corporate Transaction (including, without limitation, a corporation, which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or indirectly) in substantially the same proportions relative to each other as their ownership, immediately prior to such Corporate Transaction, of the Outstanding Common Stock and the Outstanding Voting Securities, as the case may be; (ii) no Person (other than: the Company; any employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company; the corporation resulting from such Corporate Transaction; and any Person which beneficially owned, immediately prior to such Corporate Transaction, directly or

_____ Initials

Nov 15 08 00:40p   3 Cohen                                   845223708l          p.14

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 10 of 14

indirectly, twenty-five percent (25%) or more of the Outstanding Common Stock or the Outstanding Voting Securities, as the case may be) will beneficially own, directly or indirectly, twenty-five percent (25%)or more of, respectively, the outstanding shares of common stock of the corporation resulting from such Corporate Transaction or the combined voting power of the outstanding securities of such corporation entitled to vote generally in the election of directors; and (iii) individuals who were members of the Incumbent Board will constitute at least a majority of the members of the board of directors of the corporation resulting from such Corporate Transaction; or

(d)     The consummation of a plan of complete liquidation, dissolution, or sale of substantially all the assets of the Company.

For purposes of this Article 9, "Affiliate" shall mean with reference to a specified Person, any Person that directly or indirectly through one (1) or more intermediaries controls or is controlled by or is under common control with the specified Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlled by" and "under common control with"), as used in respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management and policies of such Person, whether through ownership of voting securities or by contract or otherwise.

**9.3. Change-in-Control Severance Benefits.** If at any time during the Term of this Agreement there is a Change in Control of the Company and the Executive's employment is terminated by the Company without cause within the one (1) year period following the Change in Control following a Change in Control of the Company, the Company shall provide to the Executive the following:

(a)     Base Salary and all other benefits due him/her as if he/she had remained an employee pursuant to Article 5 through the remainder of the month in which the termination occurs, less applicable withholding taxes and other authorized payroll deductions;

(b)     A lump-sum severance allowance in an amount that is equal to one (1) year of the Executive's Base Salary at the rate in effect immediately prior to the termination;

(c)     Any unvested stock options or any outstanding restricted stock, excluding restricted stock grants issued under a performance based plan, that would become vested (that is, transferable and non-forfeitable) if the Executive remained an employee through the Initial Term or the then current Renewal Period of this Agreement will become vested as of the date of the Executive's termination of employment. The Executive must satisfy the tax withholding requirements.

(d)     Continuation at the same cost to the Executive as existed as of the Effective Date of Termination of Agreement of all health, welfare, and benefit plan participation for one (1) full year following employment termination;

(e)     Provision of outplacement services for a period of three (3) months for the Executive; and

(f)     A lump-sum payment equal to the one (1) year costs of a Company vehicle.

_____ Initials

Document    Page 37 of 44

Savin P. Cohen
Employment Agreement
June 2, 2004
Page 11 of 14

**9.4. Excise Tax Equalization Payment.** In the event that the Executive becomes entitled to severance benefits under this Agreement or any other agreement with or plan of the Company (in the aggregate, the "Total Payments"), if any of the Total Payments will [be subject to the tax (the "Excise Tax") imposed by Section 4999 of the Code] or any similar excise tax that may hereafter be imposed), the Company shall pay to the Executive in cash an additional amount (the "Gross-Up Payment"), such that the net amount retained by the Executive after deduction of any Excise Tax upon the Total Payments and any federal, state, and local income tax and Excise Tax upon the Gross-Up Payment provided for by this Article 9.4 (including FICA and FUTA), shall be equal to the Total Payments. The Company shall make such payment to the Executive as soon as practicable following the Effective Date of Termination, but in no event beyond thirty (30) days from such date.

For purposes of determining the amount of the Gross-Up Payment, the Executive shall be deemed to pay federal income taxes at the highest marginal rate of federal income taxation in the calendar year in which the Gross-Up Payment is to be made, and state and local income taxes at the highest marginal rate of taxation in the state and locality of the Executive's residence on the Effective Date of Termination, net of the maximum reduction in federal income taxes which could be obtained from deduction of such state and local taxes.

The Company's Compensation Committee shall determine, based upon the advice of the Company's independent certified public accountants, whether any payments or benefits hereunder are subject to the Excise Tax.

**9.5. Subsequent Recalculation.** In the event the Internal Revenue Service adjusts the computation of the Company under Article 9.4 herein so that the Executive did not receive the greatest net benefit, the Company shall reimburse the Executive for the full amount necessary to make the Executive whole, plus a market rate of interest, as determined by the Compensation Committee.

**Article 10. Assignment**

**10.1. Assignment by Company.** This Agreement may and shall be assigned or transferred to, and shall be binding upon and shall inure to the benefit of, any successor of the Company, and any such successor shall be deemed substituted for all purposes of the "Company" under the terms of this Agreement. As used in this Agreement, the term "successor" shall mean any person, firm, corporation, or business entity which, at any time, whether by merger, purchase, or otherwise, acquires all or substantially all of the assets or the business of the Company. In addition, the obligations of the Executive under Articles 8 and 12 of this Agreement shall continue after the termination of the Executive's employment and shall be binding on the Executive's heirs, executors, legal representatives and assigns.

**10.2. Assignment by Executive.** The services to be provided by the Executive to the Company hereunder are personal to the Executive, and the Executive's duties may not be assigned by the Executive; provided, however, that this Agreement shall inure to the benefit of and be enforceable by the Executive's personal or legal representatives, executors, and administrators, successors, heirs, distributees, devisees, and legatees. If the Executive dies while any amounts payable to the Executive hereunder remain outstanding, all such amounts, unless otherwise provided herein, shall be paid in accordance with the terms of this Agreement to the Executive's devisee, legatee, or other designee or, in the absence of such designee, to the Executive's estate.

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 12 of 14

**Article 11. Dispute Resolution and Notice**

**11.1. Issue Resolution.** Except for actions initiated by the Company to enjoin a breach by, and/or recover damages from the Executive related to violation of any of the restrictive covenants in Article 8 of this Agreement, which Company may bring in an appropriate court of law or equity, any disagreement between the Executive and the Company concerning anything covered by this Agreement or concerning other terms or conditions of the Executive's employment or the termination of the Executive's employment will be settled by final and binding arbitration pursuant to the Company's Associate Issue Resolution Program. The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures are incorporated herein by reference as if set forth in full in this Agreement. The decision of the arbitrator will be final and binding on both the Executive and the Company and may be enforced in a court of appropriate jurisdiction.

**11.2. Notice.** Any notices, requests, demands, or other communications provided for by this Agreement shall be sufficient if in writing, and if sent by registered or certified mail to the Executive at the last address he/she has filed in writing with the Company or, in the case of the Company, at its principal offices.

**Article 12. Miscellaneous**

**12.1. Entire Agreement.** This Agreement supersedes any prior agreements or understandings, oral or written, between the parties hereto, with respect to the subject matter hereof, and constitutes the entire agreement of the parties with respect thereto. Without limiting the generality of the foregoing sentence, this Agreement completely supersedes any and all prior employment agreements entered into by and between the Company, and the Executive, and all amendments thereto, in their entirety.

**12.2. Return of Materials.** Upon the termination of the Executive's employment with the Company, however such termination is effected, the Executive shall promptly deliver to Company all property, records, materials, documents, and copies of documents concerning the Executive's business and/or its customers (hereinafter collectively "Company Materials") which the Executive has in his/her possession or under his/her control at the time of termination of his/her employment. The Executive further agrees not to take or extract any portion of Company Materials in written, computer, electronic or any other reproducible form without the prior written consent of the Executive's immediate manager.

**12.3. Modification.** This Agreement shall not be varied, altered, modified, canceled, changed, or in any way amended except by mutual agreement of the parties in a written instrument executed by the parties hereto or their legal representatives.

**12.4. Severability.** It is the intention of the parties that the provisions of the restrictive covenants herein shall be enforceable to the fullest extent permissible under the applicable law. If any clause or provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, then the remainder of this Agreement shall not be affected thereby, and in lieu of each clause or provision of this Agreement which is illegal, invalid or unenforceable, there shall be added, as a part of this Agreement, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and as may be legal, valid, and enforceable.

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 13 of 14

**12.5. Counterparts.** This Agreement may be executed in one (1) or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement.

**12.6. Tax Withholding.** The Company may withhold from any benefits payable under this Agreement all federal, state, city, or other taxes as may be required pursuant to any law or governmental regulation or ruling.

**12.7. Restrictive Covenants of the Essence.** The restrictive covenants of the Executive set forth herein are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement; and the existence of any claim or cause of action of the Executive against the Company, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by the Company of the restrictive covenants contained herein. The Company shall at all times maintain the right to seek enforcement of these provisions whether or not the Company has previously refrained from seeking enforcement of any such provision as to the Executive or any other individual who has signed an agreement with similar provisions.

**12.8 Beneficiaries.** The Executive may designate one (1) or more persons or entities as the primary and/or contingent beneficiaries of any amounts to be received under this Agreement. Such designation must be in the form of a signed writing acceptable to the Executive's immediate manager. The Executive may make or change such designation at any time.

**12.9. Payment Obligation Absolute.** The Company's obligation to make the payments and the arrangement provided for herein shall be absolute and unconditional, and shall not be affected by any circumstances, including, without limitation, any offset, counterclaim, recoupment, defense, or other right which the Company may have against the Executive or anyone else. All amounts payable by the Company hereunder shall be paid without notice or demand. Each and every payment made hereunder by the Company shall be final, and the Company shall not seek to recover all or any part of such payment from the Executive or from whomsoever may be entitled thereto, for any reasons whatsoever.

The Executive shall not be obligated to seek other employment in mitigation of the amounts payable or arrangements made under any provision of this Agreement, and the obtaining of any such other employment shall in no event effect any reduction of the Company's obligations to make the payments and arrangements required to be made under this Agreement; provided, however, that continued health, welfare, and benefit plan participation pursuant to Article 7.4 or Article 9.3 herein shall be discontinued in the event the Executive becomes eligible to receive substantially similar benefits from a successor employer.

**12.10. Contractual Rights to Benefits.** This Agreement establishes and vests in the Executive a contractual right to the benefits to which he is entitled hereunder. However, nothing herein contained shall require or be deemed to require, or prohibit or be deemed to prohibit, the Company to segregate, earmark, or otherwise set aside any funds or other assets, in trust or otherwise, to provide for any payments to be made or required hereunder.

_____ Initials

Savitri I. Cohen
Employment Agreement
June 2, 2004
Page 14 of 14

### Article 13. Governing Law

To the extent not preempted by federal, law, the provisions of this Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia, without reference to Virginia's choice of law statutes or decisions.

IN WITNESS WHEREOF, the Executive and the Company have executed this Agreement as of the Effective Date.

**CIRCUIT CITY STORES, INC.**

By: _____
Jeffrey S. Wells
Senior Vice President, Human Resources

**EXECUTIVE:**

_____
Savitri I. Cohen   SSN: 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

**ATTEST:**

_____

_____ Initials



Laurie Lambert-Gaffney
Vice President, HR Operations
(804) 486-4000
laurie_lambert-gaffney@circuitcity.com

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233

June 2, 2008

Savitri I. Cohen
53 Innsbrook Blvd
Hopewell Junction, NY 12533

Re: Enforcement of Employment Agreement dated June 2, 2004

Dear Savitri:

Under Article 7.4 of your Employment Agreement, the Company is providing you with
thirty (30) days written notice that it is terminating your employment without cause and
that your employment will end on July 2, 2008. Effective June 2, 2008, you will be
relieved of your job duties and you will no longer be required to report to work. You will
be paid your current base salary of $5,326.92/biweekly through July 2, 2008. These
payments will be direct deposited and the pay stub mailed directly to your home via U.S.
mail.

Under Article 7.4(b), the Company will pay you an amount equal to twelve (12) months
of your current base salary (totaling $138,500.00 gross) in twelve equal monthly
installments directly following the effective date of your termination of employment.

You have 579 vested shares of non-qualified stock with an exercise price of $5.61, 2,250
vested shares of non-qualified stock options with an exercise price of $12.16, and 2,250
shares of restricted stock that will vest on July 1, 2008. The shares of non-qualified stock
options will remain vested and exercisable through September 30, 2008, ninety (90) days
from the date of your termination from employment. All remaining unvested stock
options and unvested restricted stock are hereby forfeited.

You are also reminded of your continuing obligations under your Employment
Agreement, and more specifically that your obligations imposed by Article 8 survive
your termination of employment.

If you have any questions regarding this letter, please contact Yvette Parham, Human
Resources Administration at 804-486-4000, extension 64505.

Very truly yours,

Laurie Lambert-Gaffney
Vice President, HR Operations

Laurie Lambert-Gaffney
Vice President, HR Operations
(804) 486-4000
laurie_lambert-gaffney@circuitcity.com

9954 Mayland Drive
Richmond, VA 23233

June 26, 2008

Savitri I. Cohen
53 Innsbrook Blvd
Hopewell Junction, NY 12533

      Re:    Supplement to Enforcement of Employment Agreement

Dear Savitri:

This letter is in response to your June 3, 2008 e-mail. The Company has agreed to your request for an additional 5 weeks of pay in lieu of a 5 week sabbatical that you state you planned to take this year.

As previously stated in the June 2, 2008 letter enforcing your Employment Agreement, and consistent with Article 7.4(b), the Company will pay you an amount equal to twelve (12) months of your current base salary (totaling $138,500.00 gross) in twelve equal monthly installments directly following the effective date of your termination of employment. Directly thereafter, you will receive an additional 5 weeks pay ($13,317.30), on a bi-weekly basis, until fully paid.

If you have any questions regarding this letter, please contact Yvette Parham, Human Resources Administration at 804-486-4000, extension 64505.

Very truly yours,

*Laurie Lambert-Gaffney*

Laurie Lambert-Gaffney
Vice President, HR Operations



November 12, 2008

Savitri Cohen
53 Innsbrook Blvd.
Hopewell Jct, NY  12533

Dear Savitri:

On November 10, 2008, Circuit City Stores, Inc. filed a voluntary petition for reorganization relief
under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for
the Eastern District of Virginia.  In light of the Chapter 11 filing, we are writing to provide you with
an update regarding the payments that you have been receiving following the separation of your
employment from the Company.  These payments are set forth in an Employment Agreement,
dated as of 6/2/2004, between the Company and you (the "Agreement") and summarized in an
enforcement letter dated 6/2/08 and 6/26/08.

In light of the Chapter 11 filing and given the Company's obligations to its creditors, the Company
has determined that it will discontinue making payments and providing services under the
Agreement, beginning as of November 10, 2008.

In that regard, the Company will ask the Bankruptcy Court to formally reject the Agreement and
expects to ask for court approval for such rejection in December 2008.  You will receive a notice
of the hearing to address this issue and a copy of the Company's motion prior to that time.

This discontinuation also includes any subsidy that may be provided to you for benefits
continuation.  You still have the ability to continue your benefits under the Consolidated Omnibus
Budget Reconciliation Act of 1986, as amended (COBRA), as long as you make your payments
by the required deadline.  Under COBRA, you are entitled to continue your benefits at your own
cost for the remainder of the period lasting up to 18 months from your date of termination.  A
COBRA payment packet with coupons is being prepared and will be mailed to you shortly so that
you will be able to make your payments.

We sincerely regret having to take this action and the impact that it will have on you, but this
decision has been identified, after careful consideration, as the best course of action for all of the
Company's stakeholders.

Sincerely,

Eric A. Jonas
SVP Human Resources

## GLEASON, DUNN, WALSH & O'SHEA

**ATTORNEYS**
**40 BEAVER STREET**
**ALBANY, NEW YORK 12207**
**(518) 432-7511**
**FAX (518) 432-5221**

FRANK C. O'CONNOR III
BRENDAN C. O'SHEA
MARK T. WALSH
RONALD G. DUNN
THOMAS F. GLEASON
MICHAEL P. RAVALLI*

* ALSO ADMITTED IN CONNECTICUT

LISA F. JOSLIN
RICHARD C. REILLY
ARON Z. KARABEL
DANIEL A. JACOBS
ZACHARY H. PRATT*

HAROLD E. KOREMAN
(1916 – 2001)

December 19, 2008
**VIA FEDERAL EXPRESS**

United States Bankruptcy Court
  for the Eastern District of Virginia
Richmond Division
701 Broad Street, Suite 4000
Richmond, VA 23219

RE:   **Savitri Cohen (Circuit City Stores, Inc. – Chapter 11)**
      Case No. 08-35653-KRH
      Our File No. 08-554

Dear Sir or Madam:

We enclose for filing original Objection of Savitri I. Cohen to the Debtors' Motion to Reject Their Obligations Under an Employment Agreement together with Certificate of Service.

Please stamp the date and time of filing on the enclosed copy of the Objection and return it to us in the self-addressed, stamped envelope provided.

We thank you for your cooperation and assistance in this matter.

Respectfully submitted,

GLEASON, DUNN, WALSH & O'SHEA

By _____
   ARON Z. KARABEL

AZK/ks
Enclosures