IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

In Re:

CIRCUIT CITY STORES, INC., *et al.*

Debtors

Case No. 08-35653-KRH

(Chapter 11)

MADISON WALDORF, LLC'S MOTION FOR
ORDER COMPELLING PAYMENT OF POST-PETITION
RENT AS AN ADMINISTRATIVE EXPENSE

(Store No. 704)

Madison Waldorf, LLC, and its management agent, Madison Marquette Realty Services, (collectively, the "Landlord"), through its undersigned counsel, Mitchell B. Weitzman, Bean, Kinney & Korman, P.C., hereby file this Motion for Order Compelling Payment of Post-Petition Rent as an Administrative Expense, pursuant to Sections 363(d)(3) and 503(b)(1) of the Bankruptcy Code, on the following grounds:

1. On November 10, 2008, Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

2. Jurisdiction to consider this matter is vested in the Court pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is prescribed by 28 U.S.C. §§ 1408 and 1409.

Mitchell B. Weitzman, VSB 28434
Counsel for Madison Waldorf, LLC
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, 7th Floor
Arlington, Virginia 22201
Tel: (703) 525-4000; Fax: (703) 525-2207

3. On March 27, 1990, Debtor Circuit City Stores, Inc. ("Debtor"), and Landlord's predecessor in interest, Madison Waldorf Retail Limited Partnership, entered into a Lease Agreement, pursuant to which Debtor occupies approximately 15,442 square feet at the Festival at Waldorf Shopping Center in Waldorf, Maryland.(the "Lease"). Pertinent portions of the Lease are annexed as Exhibit 1.

4. Present monthly base and additional rent under the Lease total $34,422.06 per month, as shown on the Aged Delinquencies annexed as Exhibit 2.

5. Debtor has failed to pay the "stub-rent" portion of its October 2008 rent, totaling $22,948.20.

6. Under Section 365(d)(3), a debtor must fully comply with all post-petition rental obligations through the effective date of rejection. *In re Trak Auto Corporation*, 277 B.R. 655, 665 (Bankr. E.D. Va. 2002); *Towers v. Chickering & Gregory* (In re Pacific-Atlantic Trading Co.), 27 F.3d 401 (9th Cir. 1994); *Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust* (In re Paul Harris Stores, Inc.), 148 B.R. 307 (S.D Ind. 1992); *see also* Collier, 3rd. Ed., ¶ 365.04[3].

7. Stub-rent, the post-petition portion of the petition month, is presently due and payable. *In re M. L. Logan Precision Machining Company*, 2007 Bankr. Lexis 1772 (Bankr. E.D. PA 2007) (within court's discretion to compel payment of stub-rent). This sum is afforded priority status. *In re Ames Department Stores, inc.*, 306 B.R. 43 (Bankr. S.D. N.Y. 2004).

8. Pursuant to Paragraph 30 of the Lease, Landlord further requests an award of its reasonable counsel fees and costs herein, as part of its administrative claim. Courts have recognized that an express contractual provision for counsel fees gives rise to the right to obtain reasonable counsel fees as part of compelling the cure by debtor of a default and in compensation of a

landlord's pecuniary loss. *In re Westview 74th Street Drug Corp.*, 59 B.R. 747 (Bankr. S.D.N.Y. 1986); *see also In re Foreign Crafting, Inc.*, 55 B.R. 53 (Bankr. E.D.N.Y. 1985) (motion to compel assumption or rejection of lease); *In re Ribs of Greenwich Village, Inc.*, 57 B.R. 319 (Bankr. S.D.N.Y. 1986) (assumption and assignment of lease). A landlord's counsel fees incurred in connection with enforcing its rights post-petition are recoverable as an administrative expense or as part of the cure for assumption. *Three Sisters Partners, LLC v. Harden*, 167 F.2d 843 (4th Cir. 1999); *see also In re Geonex Corp.*, 258 B.R. 336, 340 (Bankr. D. Md. 2001) (fees allowable where lease provision granted counsel fees incurred in seeking to obtain possession after default); *In re Entertainment, Inc.*, 223 B.R. 141 (Bankr. E.D. Ill. 1998). As long as the underlying lease gives a landlord a right to recover its counsel fees upon default, Landlord can recover its legal fees it incurs "to enforce the debtor's timely performance under § 365(d)" of the Bankruptcy Code. *In re Geonex Corp.*, 258 B.R. at 342; *see also In re MS Freight Distribution, Inc.*, 172 B.R. 976, 978-979 (Bankr. W.D. Wash. 1994).

WHEREFORE, Madison Waldorf, LLC requests an order allowing and compelling payment of unpaid post-petition rent as an administrative expense, plus its reasonable counsel fees and costs, as administrative expenses, and such other relief deemed appropriate by the Court.

Respectfully submitted,

/s/ Mitchell B .Weitzman
Mitchell B. Weitzman
Virginia Bar No. 28434
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, 7th Floor
Arlington, Virginia 22201
Phone: (703) 525-4000
Facsimile: (703) 525-2207
MWeitzman@beankinney.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2008, a copy of the foregoing Motion for Order Compelling Payment of Post-Petition Rent as an Administrative Expense is to be served by electronic means via the Court's ECF/CM system and to the following:

Daniel F. Blanks
McGuire Woods LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA 23510

Dion W. Hayes
Douglas M. Foley
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, VA 23219

Greg M. Galardi
Ian S. Fredericks
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
PO Box 636
Wilmington, DE 19899-0636

Chris L. Dickerson
Skadden, Arps, Slate, Meagher & Flom, LLP
333 West Wacker Drive
Chicago, IL 60606

/s/ Mitchell B. Weitzman
Mitchell B. Weitzman

5

Waldorf, MD

LEASE

| SECTION | | PAGE |
|---|---|---|
| 1. | Leased Property | 2 |
| 2. | Construction of Building and Improvements | 3 |
| 3. | Lease Term | 4 |
| 4. | Rent | 6 |
| 5. | Development of Shopping Center by Landlord | 8 |
| 6. | Easements | 9 |
| 7. | Common Areas and Common Area Maintenance | 15 |
| 8. | Rules and Regulations | 21 |
| 9. | Taxes | 23 |
| 10. | Maintenance, Repairs and Replacements | 27 |
| 11. | Payment of Utility Bills | 28 |
| 12. | Alterations | 28 |
| 13. | Mechanics' Liens | 31 |
| 14. | Insurance | 31 |
| 15. | Damages to the Premises by Fire or Other Casualty | 36 |
| 16. | Condemnation | 42 |
| 17. | Assignment and Subletting | 46 |
| 18. | Use | 58 |
| 19. | Warranties and Representations | 61 |
| 20. | Estoppel Certificates | 71 |
| 21. | Subordination, Nondisturbance and Attornment | 72 |
| 22. | Change of Landlord | 74 |
| 23. | Signs | 75 |
| 24. | Memorandum of Lease; Commencement Date Agreement | 76 |

EXHIBIT 1

25. Tenant's Property and Waiver of Landlord's Lien........76
26. Holding Over...........................................77
27. "For Rent" Signs.......................................78
28. Force Majeure..........................................78
29. Events of Tenant's Default.............................79
30. Landlord's Remedies....................................80
31. Events of Landlord's Default; Tenant's Remedies........86
32. Waiver.................................................87
33. Compliance with Applicable Laws........................87
34. Notices................................................88
35. Brokers................................................89
36. Miscellaneous..........................................89
37. Effectiveness of Lease; Tenant's Right to Terminate...92
38. Limitation of Landlord's Liability....................94

EXHIBITS

"A"         Site Plan

"A-1"       "As-Built" Survey

"A-2"       Site Plan (2)

"B"         Property Description

"C"         Construction Provisions

        Attachment "1"    Geotechnical Evaluation

        Attachment "2"    (Intentionally Omitted)

        Attachment "3"    Grading Plans

        Attachment "4"    Construction Schedule

        Attachment "5"    Utility and Drainage Plan

        Attachment "6"    Paving Specifications

        Attachment "7"    Landscape and Irrigation Design Criteria

Waldorf, MD<br>
Draft 1/2/90<br>
Draft 1/5/90<br>
Draft 1/8/90<br>
Draft 2/1/90<br>
Draft 2/5/90<br>
Draft 2/15/90<br>
Draft 2/21/90<br>
Draft 3/16/90<br>
Draft 3/19/90<br>
Draft 3/20/90<br>
FINAL 3/23/90

## LEASE

THIS LEASE is made as of the 27th day of March, 1990, by and between CW WALDORF RETAIL LIMITED PARTNERSHIP, a Texas limited partnership, having an address at c/o Trammell Crow Company, 8260 Greensboro Drive, Suite 400, McLean, Virginia 22102 (the "Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation, having an address at 2040 Thalbro Street, Richmond, Virginia 23230 (the "Tenant").

R E C I T A L S:

WHEREAS, by lease dated March 31, 1986 (the "Original Lease"), Waldorf Shopping Mall, Inc., Landlord's predecessor-in-interest, leased to Tenant certain premises (the "Original Premises") comprising 15,442 square feet but referenced in the Original Lease as comprising 14,618 square feet and located on part of the Land (defined below); and

WHEREAS, Landlord and Tenant desire to amend the Original Lease to provide for substitution of this Lease for the Original Lease and termination of the Original Lease upon the Rent Com-

mencement Date; and

WHEREAS, Landlord and Tenant desire to provide for the expansion of the Original Premises and the construction of additional improvements for Tenant's use and benefit, all as more particularly set forth herein; and

WHEREAS, Landlord and Tenant intend that the terms of this Lease establish the rights and obligations of the parties with regard to the matters set forth herein, from and after the date of execution hereof.

W I T N E S S E T H:

That for and in consideration of the mutual covenants herein contained and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Leased Property.** Landlord demises and leases to Tenant and Tenant leases and takes from Landlord, commencing on the "Rent Commencement Date" (defined below), all those certain "Premises" consisting of the "Building" (defined below) and additional "Improvements" (defined below), as and when same are constructed or renovated, together with that approximately 32,475-square foot parcel (the "Land"), on which the Improvements are or will be located, as more particularly shown (approximately) outlined in red on Exhibit "A" hereto and described in Exhibit "B" hereto, together with the easements described in paragraph 6 below, all located in the "Shopping Center" known as

-2-

materials, delay by the other party, delay in processing governmental approvals not the fault of a party (including backlog, inspection delays and the like), unforeseeable or unusually detrimental weather conditions, failure of power, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay; and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, that in connection with the construction of the Improvements, the consequences of delays by the other party shall be governed by paragraph 4 of Exhibit "C." In no event (i) shall financial inability be deemed to constitute a cause which is "not the fault of," or which is beyond the "reasonable control" of a party hereto, and (ii) shall any force majeure justify any delay in the payment of a sum of money due hereunder.

29. **Events of Tenant's Default**. Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease:

(a) **Failure to Pay Rent; Breach.** (i) Tenant's failure to make any payment of Base Rent or other charges required by this Lease, excluding Additional Rent, within ten (10) days after the receipt of written notice from Landlord to Tenant and Tenant's Mortgagee, if any, that same is overdue; (ii) Tenant's failure to make any payment of Additional Rent within thirty (30) days after the receipt of written notice from Landlord to Tenant and Tenant's Mortgagee, if any, that the same is overdue; or (iii) Tenant's failure to observe, perform, or comply with any other

-79-

material provision of this Lease if the same is not cured within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured, provided that in the case of an emergency described in paragraph 10 of this Lease, Landlord shall be required to give only such notice as is reasonable under the circumstances. Notwithstanding the foregoing, if such default, though curable, cannot be cured solely with the payment of money and cannot with due diligence be wholly cured within such thirty (30) days, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion.

(b) **Bankruptcy.** (i) Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, or if a bankruptcy proceeding was involuntarily commenced against Tenant and is not dismissed within ninety (90) days after it is begun (or up to one hundred twenty (120) days if a hearing on the validity of such involuntary proceeding is not possible due to court backlog); or (ii) Tenant's voluntarily filing a petition in bankruptcy or for reorganization under any existing or future provisions of the Bankruptcy Code, providing a plan for a debtor to settle, satisfy or extend the time for the payment of debts; or (iii) Tenant's voluntary assignment for the benefit of its creditors (excluding assignments made as security for new debt).

30. **Landlord's Remedies.** After the occurrence of an Event

of Default, Landlord shall have the right, after proper notice and the application of any cure period, to exercise the following remedies:

(a) <u>Continue Lease</u>. Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Base Rent and other charges when due, including any due for any Option Period for which a Renewal Option has been exercised. In the alternative, Landlord shall have the right to dispossess Tenant from the Premises and peaceably re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry's being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Premises, or any part thereof, with or without legal process, upon such terms and conditions as Landlord may deem advisable or satisfactory, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including but not limited to necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees, any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums, including but not limited to Base Rent and all other charges, due or to become due Landlord hereunder. If a sufficient sum to pay such expenses and sums and amounts due to Landlord shall not be realized or secured, in Landlord's exercise of reasonable efforts to mitigate its damages, then Tenant shall pay Landlord any deficiency

-81-

monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise or in a single proceeding at the end of the term hereof, or in multiple proceedings from time to time during the term, without being deemed to have been barred by the application of any statute of limitation or by the equitable doctrine of laches, from recovering any part of the sums so due from Tenant to Landlord. Landlord agrees to use reasonably diligent efforts to mitigate its damages hereunder, provided that such agreement shall not be construed to require Landlord's success in reletting, nor to show any preference for letting, the Premises ahead of any other vacant space in the Shopping Center, nor to restrict Landlord's right to make such reasonable rental concessions and other economic terms as it may deem advisable in such reletting. The Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below. Nothing set forth in this subparagraph 30(a) shall be deemed to waive Landlord's right to recover "Additional Damages" within the meaning of subparagraph 30(c) below, which Tenant agrees Landlord shall be entitled to in the event of Tenant's default hereunder.

(b) <u>Terminate Lease</u>. Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than thirty (30) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date

-82-

cretion by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of any one or more of the conditions in this paragraph 37. Upon such termination of this Lease, Tenant in its sole discretion may either unilaterally terminate the Termination Agreement if it exists, and continue possession in accordance with the Original Lease, or Tenant may unilaterally terminate the Original Lease. In the event of any such termination of this Lease, the rights and obligations of the parties shall be of no further force and effect (and the parties shall have no further liability except that the indemnification set forth in paragraph 14(i) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

    38. **Limitation of Landlord's Liability**. If Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed, and, as a consequence of such default, Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only (i) out of the proceeds of sale received upon levy against the right, title and interest of Landlord in the Shopping Center; and/or (ii) to the extent not encumbered in the ordinary course of business by a secured creditor, out of the rents or other incomes (including reimbursement payments made to Landlord with respect to taxes and CAM Charges) receivable by Landlord from the property of which the Premises are a part. In the event Landlord shall sell, transfer, assign or in any manner dispose of its interest in the Premises, Landlord's right, obligations and covenants contained in this Agreement, as to this Landlord, shall thereupon cease and be

no longer binding or effective provided such purchaser, transferee or assignee assumes such liability, obligation or covenant of the Landlord under the Lease accruing prior to or after the date of such sale, transfer or assignment. Further, in the event the owner of Landlord's interest in this Lease is at any time a partnership, joint venture or unincorporated association, Tenant agrees that the members or partners of such partnership, joint venture or unincorporated association shall not be personally or individually liable or responsible for the performance of any of Landlord's obligations hereunder.

WITNESS the following signatures and seals:

LANDLORD:

CW WALDORF RETAIL LIMITED
PARTNERSHIP, a
Texas limited partnership

By: CROW-WASHINGTON #4 RETAIL
DEVELOPMENT CORPORATION
Its: General Partner

ATTEST: WITNESS:

_Mark S. Tenenbaum_

By: _John H. Donegan_
Its: Vice President

(SEAL)

TENANT:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

ATTEST:

_Susan S. Williams_
Its: Assistant Secretary

By: _Benjamin B. Cummings, Jr._
Benjamin B. Cummings, Jr.
Its: Assistant Vice President

-95-

| Database: | MMRS2A | | | Aged Delinquencies | | | | Page: | 1 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Madison Marquette | | | | Date: | 11/10/2008 |
| BLDG: | WAL003 | | | The Shops at Waldorf | | | | Time: | 03:25 PM |
| | | | | Period: 11/08 | | | | | |

| Invoice Date | Category | | Source | Amount | Current | 1 Month | 2 Months | 3 Months | 4 Months |
|---|---|---|---|---|---|---|---|---|---|
| WAL003-000505 | Circuit City | | | Master Occupant Id: 00000318-1 | | Day Due: 1 | Delq Day: | | |
| | Rick Nesterak | | | 327  Current | | Last Payment: | 9/29/2008 | 34,422.06 | |
| | (301) 932-9100 | | | | | | | | |
| 4/15/2008 | CAY | Prior Yr CAM Reimburse | NC | -118.63 | 0.00 | 0.00 | 0.00 | 0.00 | -118.63 |
| 11/1/2008 | BMR | Base/Minimum Rent | CH | 29,768.75 | 29,768.75 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11/1/2008 | CAM | Common Area Maintenance | CH | 4,653.31 | 4,653.31 | 0.00 | 0.00 | 0.00 | 0.00 |
| | BMR | Base/Minimum Rent | | 29,768.75 | 29,768.75 | 0.00 | 0.00 | 0.00 | 0.00 |
| | CAM | Common Area Maintenance | | 4,653.31 | 4,653.31 | 0.00 | 0.00 | 0.00 | 0.00 |
| | CAY | Prior Yr CAM Reimburse | | -118.63 | 0.00 | 0.00 | 0.00 | 0.00 | -118.63 |
| | Circuit City Total: | | | 34,303.43 | 34,422.06 | 0.00 | 0.00 | 0.00 | -118.63 |
| | BMR | Base/Minimum Rent | | 29,768.75 | 29,768.75 | 0.00 | 0.00 | 0.00 | 0.00 |
| | CAM | Common Area Maintenance | | 4,653.31 | 4,653.31 | 0.00 | 0.00 | 0.00 | 0.00 |
| | CAY | Prior Yr CAM Reimburse | | -118.63 | 0.00 | 0.00 | 0.00 | 0.00 | -118.63 |
| | BLDG WAL003 Total: | | | 34,303.43 | 34,422.06 | 0.00 | 0.00 | 0.00 | -118.63 |
| | BMR | Base/Minimum Rent | | 29,768.75 | 29,768.75 | 0.00 | 0.00 | 0.00 | 0.00 |
| | CAM | Common Area Maintenance | | 4,653.31 | 4,653.31 | 0.00 | 0.00 | 0.00 | 0.00 |
| | CAY | Prior Yr CAM Reimburse | | -118.63 | 0.00 | 0.00 | 0.00 | 0.00 | -118.63 |
| | | Grand Total: | | 34,303.43 | 34,422.06 | 0.00 | 0.00 | 0.00 | -118.63 |

**EXHIBIT 2**