Gregg M. Galardi, Esq.  
Ian S. Fredericks, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
One Rodney Square  
PO Box 636  
Wilmington, Delaware 19899-0636  
(302) 651-3000  

Dion W. Hayes (VSB No. 34304)  
Douglas M. Foley (VSB  
No. 34364)  
MCGUIREWOODS LLP  
One James Center  
901 E. Cary Street  
Richmond, Virginia 23219  
(804) 775-1000  

- and -

Chris L. Dickerson, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
333 West Wacker Drive  
Chicago, Illinois 60606  
(312) 407-0700  

Counsel to the Debtors and  
Debtors in Possession  

IN THE UNITED STATES BANKRUPTCY COURT  
FOR THE EASTERN DISTRICT OF VIRGINIA  
RICHMOND DIVISION  

- - - - - - - - - - - - - - - x
:
In re:                          :   Chapter 11
:
CIRCUIT CITY STORES, INC.,      :   Case No. 08-35653-KRH
et al.,                         :
:
            Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363 AND 365 AND BANKRUPTCY RULES 6004 AND 6006 AUTHORIZING AND APPROVING (A) ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY; AND (B) SALE OF CERTAIN NONRESIDENTIAL REAL PROPERTY LEASE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES TO MARYLAND ACQUISITIONS, LLC OR ITS NOMINEE**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move this Court (the "Motion") for
entry of an order, pursuant to sections 105(a), 363 and
365 of title 11 of the United States Code (the
"Bankruptcy Code") and Rules 6004 and 6006 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules"), authorizing (a) the Debtors to assume and
assign to Maryland Acquisitions, LLC or its nominee (the
"Purchaser") the unexpired leases of non-residential
real property as defined on <u>Exhibit A</u> and <u>Exhibit B</u>
hereto (collectively, the "Leases"), and (b) the sale of
the Lease free and clear of liens, claims, and
encumbrances.  In support of the Motion, the Debtors
respectfully represent:

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief requested here are Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 6004 and 6006.

**BACKGROUND**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    Based in Richmond, Virginia, Debtors are
a leading specialty retailer of consumer electronics and
operate large nationwide electronics stores throughout
the United States and Puerto Rico that sell, among other
things, televisions, home theatre systems, computers,
camcorders, furniture, software, imaging and
telecommunications products, and other audio and video
electronics.

7.    Despite significant revenues, the Debtors
have suffered two consecutive years of losses.  While
the Debtors made every effort to improve their financial
performance and implement a global turnaround strategy,
they were ultimately unable to consummate a successful
restructuring outside of bankruptcy.  In large part, the
Debtors' chapter 11 filings were due to an erosion of
vendor confidence, decreased liquidity and the global
economic crisis.

8.    Thus, the Debtors commenced these cases
with the immediate goals of obtaining adequate
postpetition financing and continuing their
restructuring initiatives commenced prior to the
Petition Date, including closing certain stores.  In

addition, the Debtors will continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

## RELIEF REQUESTED

9.    By this Motion, the Debtors request the entry of an order under Bankruptcy Code sections 105(a), 363 and 365(a) authorizing (a) the Debtors to assume and assign the Leases to the Purchaser, and (b) the sale of the Leases free and clear of liens, claims, and encumbrances.

## BASIS FOR RELIEF

10.   On December 12, 2008, the Debtors filed a motion (the "Rejection Motion") (Docket No. 998) to, among other things, reject the Leases because the Leases provided no value to the Debtors, and through the rejection of the Leases the Debtors would be relieved of paying any future rents, taxes, insurance, and potential claims that may be asserted against the Debtors for deferred maintenance.

11.   Shortly thereafter, the Purchaser timely contacted Debtors' counsel to object to the Rejection Motion as it pertained to the Leases.

12.   To resolve the Purchaser's objection and in an exercise of the Debtors' business judgment, the Debtors entered into a letter agreement attached hereto as Exhibit C (the "Agreement") whereby (i) the Debtors and the Purchaser have agreed that the Leases will be assumed and assigned to the Purchaser, or its nominee, by order of this Court, and (ii) the Purchaser has agreed to pay the Debtors $20,000 to purchase the Leases.

13.   Without entering into the Agreement, the Debtors may have been obligated to pay certain rent obligations and charges associated with the Leases for which the Debtors do not believe they would receive any benefit.  With the assumption and assignment of the Leases and the sale of the Leases to the Purchaser, the Debtors have relieved their estates of the costs associated with the Leases, including potential damage claims that might otherwise be asserted by non-Debtor parties to the Leases.

14.   Moreover, the Purchaser is responsible for any cure costs associated with assumption and assignment of the Leases.

15.   Accordingly, the Debtors believe that the assumption and assignment of the Leases is in the best interests of their estates, their creditors, and other parties in interest.

## APPLICABLE AUTHORITY

## I.   THE RELIEF REQUESTED IN THE MOTION REFLECTS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT.

16.   Bankruptcy Code section 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease."  11 U.S.C. § 365(a).  A debtor's determination with respect to an executory contract or unexpired lease is governed by the "business judgment" standard.  See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1046-47 (4th Cir. 1985), cert. denied sub nom., Lubrizol Enters., Inc. v. Canfield, 475 U.S. 1057 (1986) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the

decision was the product of bad faith, whim, or caprice);
In re Extraction Technologies of VA, L.L.C., 296 B.R.
393, 399 (Bankr. E.D. Va. 2001).

17.   Once the Debtors articulate a valid
business justification, "[t]he business judgment rule
'is a presumption that in making a business decision the
directors of a corporation acted on an informed basis,
in good faith and in the honest belief that the action
taken was in the best interests of the company.'"
Official Comm. Of Subordinated Bondholders v. Integrated
Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting
Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

18.   The business judgment rule has vitality
in chapter 11 cases and shields a debtor's management
from judicial second-guessing.  See Comm. Of Asbestos-
Related Litigants and/or Creditors v. Johns-Manville
Corp., 60 B.R. 612, 615 16 (Bankr. S.D.N.Y. 1986)
("[T]he Code favors the continued operation of a
business by a debtor and a presumption of reasonableness
attaches to a debtor's management decisions.").

19.   Here, the assumption and assignment of
the Leases to the Purchaser will eliminate potentially

8

substantial rejection damages claims that might
otherwise have been asserted against the Debtors'
estates.  In addition, the Debtors will receive $20,000
from the Purchaser in exchange for the Leases, which
would have otherwise been rejected without the Debtors
receiving any value.

20.  As set forth above, the Debtors have
clearly articulated a sound business purpose for seeking
the relief sought in the Motion and have thus satisfied
the business judgment test.  Given that the Leases were
subject to a pending rejection motion, the sale of the
Lease clearly maximizes the value of the Leases for the
Debtors' estates, while protecting the Debtors from
incurring any unnecessary costs with respect to Leases.
Accordingly, for the reasons detailed herein, the
Debtors have determined that the relief requested in the
Motion is in their best interests and the best interests
of their estates, creditors and parties in interest.

**II.  THE ASSUMPTION AND ASSIGNMENT OF THE LEASES IS
APPROPRIATE UNDER BANKRUPTCY CODE SECTION 365(b)(1).**

21.   Section 365(b)(1) of the Bankruptcy Code codifies the requirements for assuming an unexpired lease or executory contract of a debtor.  It provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee –
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

22.   Courts give the phrase "adequate assurance of future performance" a "practical, pragmatic construction."  EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d Cir. 1993) (presence of adequate assurance should be "determined under the facts of each particular case").

23.   To the extent that any defaults exist under any of the Leases, the Purchaser will be responsible for curing any such default.  The Purchaser shall guarantee full and complete performance of all obligations under the Leases.  Here, the Purchaser is the party that has always been ultimately responsible for ensuring compliance with the landlord-related obligations under the Leases, so no practical change in landlord-related obligations under the Leases will be caused by the assumption and assignment of the Leases to the Purchaser.

**III. SALE OF THE LEASE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(f).**

24.   Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any lien, claim, or interest in such property if, among other things:

1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2) such entity consents;

3) such interest is a lien and the price at which such property is sold is

> greater than the aggregate value of all
> liens on such property;
>
> 4) such interest is in bona fide
>    dispute; or
>
> 5) such entity could be compelled, in a
>    legal or equitable proceeding, to
>    accept a money satisfaction of such
>    interest.

11 U.S.C. § 363(f).

25.   Section 363(f) permits the sale of estate property free and clear of all liens if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).  To the extent there are any valid, enforceable liens against the Leases and that such lienholder does not consent to the sale, such lien would attach to the proceeds of the sale.

**IV.   WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULES 6004 AND 6006.**

26.   Bankruptcy Rule 6004(h) provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h); see also Fed. R. Bankr. P. 6006(d)(staying an order

authorizing assignment of an unexpired lease for 10 days
after entry of the order, unless the court orders
otherwise).  The Debtors request that the Court waive
this ten-day stay with respect to the closing of the
assumption and assignment and sales of the Leases
following entry of this Court's order approving such
assumption and assignment and sale.  Such a waiver will
permit a seamless transition under the Leases for the
parties thereto and will allow the proceeds from the
assumption, assignment and sale of the Leases to flow to
the Debtors more quickly.

### NOTICE

27.  Notice of this Motion has been provided
to those parties entitled to notice under this Court's
Order Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (Docket
No. 130).  The Debtors submit that, under the
circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

28.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

29.   No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: December 23, 2008    SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia  FLOM, LLP
      Gregg M. Galardi, Esq.
      Ian S. Fredericks, Esq.
      P.O. Box 636
      Wilmington, Delaware 19899-0636
      (302) 651-3000

            - and -

      SKADDEN, ARPS, SLATE, MEAGHER &
      FLOM, LLP
      Chris L. Dickerson, Esq.
      333 West Wacker Drive
      Chicago, Illinois 60606
      (312) 407-0700

            - and -

      MCGUIREWOODS LLP

      /s/ Douglas M. Foley      .
      Dion W. Hayes (VSB No. 34304)
      Douglas M. Foley (VSB No. 34364)
      One James Center
      901 E. Cary Street
      Richmond, Virginia 23219
      (804) 775-1000

      Counsel for Debtors and Debtors
      in Possession

## Exhibit A

Amended and Restated Lease Agreement between Circuit City Stores, Inc., as Tenant, and U.S. Bank National Association, not in its individual capacity but solely as "Owner Trustee" under the Amended and Restated Trust Agreement for November Properties ("Trust Agreement"); (ii) George Davison, Jr., not in his individual capacity, but solely as "Individual Cotrustee" under the Trust Agreement; and (iii) if the Leased Premises is in the State of Missouri, BNY Trust Company of Missouri, not in its individual capacity but solely as "Missouri Cotrustee" under the Trust Agreement, as Landlord, dated October 15, 2004 (the "Lease").

The Lease was assigned and transferred unto 44 North Properties, LLC (the "Current Landlord") by a certain Assignment and Assumption of Lease Agreement dated January 28, 2005, between U.S. Bank National Association, not in its individual capacity but solely as "Owner Trustee" under the Amended and Restated Trust Agreement for November Properties and Current Landlord.

## Exhibit B

That certain Sublease dated October 29, 2004, by and between Circuit City Stores, Inc. ("Sublessor") and American Computer Development, Incorporated ("Subtenant"), which was amended by the following:  (i) a certain First Amendment to Sublease dated April 28, 2006, by and between Sublessor and Subtenant; and (ii) a certain Settlement Agreement dated April 28, 2006, by and among American Computer Development, Inc. ("ACDI"), Circuit City Stores, Inc. ("Circuit City"), Patapsco Designs, Inc. ("Patapsco"), FCC, LLC ("FCC") and 44 North Properties, LLC ("Landlord").

# **Exhibit C**

This letter, dated December 19, 2008, shall memorialize the agreement (this "Agreement") between Maryland Acquisitions LLC ("Purchaser") and Circuit City Stores, Inc. and its affiliates (collectively, "Circuit City") with respect to the assumption and assignment of: (i) a certain Lease Agreement (as defined on **Schedule A**, which is attached hereto and by this reference made a part hereof) by and between Circuit City (as Tenant) and Current Landlord (as defined on **Schedule A**); and (ii) the Sublease (as defined on **Schedule B**, which is attached hereto and by this reference made a part hereof) by and between Circuit City (as Sublessor) and American Computer Development, Incorporated (as Subtenant).

Purchaser and Circuit City have agreed that Circuit City shall withdraw the Lease and Sublease from the proposed order approving the Debtors' First Omnibus Motion For Order Pursuant To Bankruptcy Code Sections 105(A) And 365(A) And Bankruptcy Rule 6006 Authorizing Rejection Of Certain Unexpired Leases Of Personal Property (Docket No. 998) (the "Rejection Motion") and, in conjunction herewith, Circuit City shall obtain an order, in form and substance satisfactory to Purchaser, in its reasonable discretion, authorizing the sale free and clear of all liens, claims and encumbrances and the assumption and assignment of the Lease and the Sublease to Purchaser or its designee (the "Order"), subject to the following terms and conditions:

- Purchaser shall indemnify and hold Circuit City harmless from any and all Claims (as defined in the Bankruptcy Code) arising from or related to the Sublease or the Lease that the Subtenant has asserted or may assert against Circuit City, including without limitation, Claims under 11 U.S.C. §§ 365, 502 or 503 (the "Indemnity Obligations");
- Current Landlord shall waive, discharge and forever release any and all Claims, arising before, on or after this Agreement, against or related to Circuit City or its bankruptcy estate; provided, further, that for the avoidance of doubt and without limiting the generality of the foregoing, Current Landlord shall not assert any Claim against Circuit City with regard to any rents actually paid by the Subtenant to Circuit City in advance of the entry of the Order (the "Release");
- Purchaser shall pay all documented Skadden bundled rate structure fees and expenses incurred by Circuit City after the date hereof in connection with the transaction contemplated by this Agreement; provided, further, and such payment shall be made within 15 days of receipt of an invoice from Circuit City; and
- Purchaser shall pay $20,000 to Circuit City as consideration for the assumption and assignment of the Lease and Sublease; and
- Circuit City shall reimburse Purchaser for any rents actually paid by the Subtenant on or after January 1, 2009.
- Circuit City hereby represents and warrants unto Purchaser that: (i) the Lease and Sublease have not been assigned, transferred or conveyed by Circuit City; and (ii) the Lease and Sublease have not been modified or amended except as set forth on **Schedule A** and/or **Schedule B**.

Circuit City and Purchaser agree that Purchaser shall have the right to withdraw from this transaction and cancel all of its remaining obligations hereunder prior to the entry of the Order, provided that: (i) Purchaser shall reimburse Circuit City for all documented Skadden bundled rate structure fees and expenses incurred through the date of such withdrawal and cancellation of this Agreement; (ii) Purchaser's Indemnity Obligations shall continue and shall survive withdrawal and cancellation of this Agreement; (iii) the Release shall survive withdrawal and cancellation of this Agreement [(i)-(iii), collectively, the "Surviving Obligations"].  Circuit City and Purchaser further agree that if the Order is not entered by the Bankruptcy Court for any reason, including, without limitation, Purchaser's failure to approve the Order, the Surviving Obligations shall continue and Purchaser shall remain obligated to Circuit City on account of and for the Surviving Obligations, and Circuit City shall not be obligated to turnover rents received from Subtenant.

Notwithstanding anything to the contrary herein, Purchaser agrees that the terms and conditions of this Agreement are subject to and conditioned upon receipt by Circuit City of its postpetition secured lenders' approval, which must be received by Circuit City at or prior to the hearing on the Rejection Motion.  In the event that Circuit City does not obtain such consent, Circuit City will proceed with the hearing on the Rejection Motion and shall have no liability to Purchaser under this Agreement.

 

Circuit City Stores, Inc.

By: _____

Its: _____

MARYLAND ACQUISITIONS LLC

By: _____

Its: _____

 

The undersigned Current Landlord hereby agrees to the terms, conditions and provisions of this Agreement.

44 NORTH PROPERTIES, LLC

BY: _____

Circuit City and Purchaser agree that Purchaser shall have the right to withdraw from this transaction and cancel all of its remaining obligations hereunder prior to the entry of the Order, provided that: (i) Purchaser shall reimburse Circuit City for all documented Skadden bundled rate structure fees and expenses incurred through the date of such withdrawal and cancellation of this Agreement; (ii) Purchaser's Indemnity Obligations shall continue and shall survive withdrawal and cancellation of this Agreement; (iii) the Release shall survive withdrawal and cancellation of this Agreement [(i)-(iii), collectively, the "Surviving Obligations"]. Circuit City and Purchaser further agree that if the Order is not entered by the Bankruptcy Court for any reason, including, without limitation, Purchaser's failure to approve the Order, the Surviving Obligations shall continue and Purchaser shall remain obligated to Circuit City on account of and for the Surviving Obligations, and Circuit City shall not be obligated to turnover rents received from Subtenant.

Notwithstanding anything to the contrary herein, Purchaser agrees that the terms and conditions of this Agreement are subject to and conditioned upon receipt by Circuit City of its postpetition secured lenders' approval, which must be received by Circuit City at or prior to the hearing on the Rejection Motion. In the event that Circuit City does not obtain such consent, Circuit City will proceed with the hearing on the Rejection Motion and shall have no liability to Purchaser under this Agreement.

Circuit City Stores, Inc.
By: _____
    Chris Crowe
Its: Director of Real Estate

MARYLAND ACQUISITIONS LLC

By: _____

Its: _____

The undersigned Current Landlord hereby agrees to the terms, conditions and provisions of this Agreement.

44 NORTH PROPERTIES, LLC

BY: _____

## Schedule A

Amended and Restated Lease Agreement between Circuit City Stores, Inc., as Tenant, and U.S. Bank National Association, not in its individual capacity but solely as "Owner Trustee" under the Amended and Restated Trust Agreement for November Properties ("Trust Agreement"); (ii) George Davison, Jr., not in his individual capacity, but solely as "Individual Cotrustee" under the Trust Agreement; and (iii) if the Leased Premises is in the State of Missouri, BNY Trust Company of Missouri, not in its individual capacity but solely as "Missouri Cotrustee" under the Trust Agreement, as Landlord, dated October 15, 2004 (the "Lease").

The Lease was assigned and transferred unto 44 North Properties, LLC (the "Current Landlord") by a certain Assignment and Assumption of Lease Agreement dated January 28, 2005, between U.S. Bank National Association, not in its individual capacity but solely as "Owner Trustee" under the Amended and Restated Trust Agreement for November Properties and Current Landlord.

## Schedule B

That certain Sublease dated October 29, 2004, by and between Circuit City Stores, Inc. ("Sublessor") and American Computer Development, Incorporated ("Subtenant"), which was amended by the following: (i) a certain First Amendment to Sublease dated April 28, 2006, by and between Sublessor and Subtenant; and (ii) a certain Settlement Agreement dated April 28, 2006, by and among American Computer Development, Inc. ("ACDI"), Circuit City Stores, Inc. ("Circuit City"), Patapsco Designs, Inc. ("Patapsco"), FCC, LLC ("FCC") and 44 North Properties, LLC ("Landlord").