Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and –

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and
Debtors in Possession

Gary T. Holtzer, Esq.
Joseph W. Gelb, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

- and –

Michael A. Condyles (VSB No. 27807)
Kimberly A. Pierro (VSB No. 71362)
KUTAK ROCK LLP
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700

Attorneys for Bank One Delaware,
National Association, n/k/a Chase
Bank USA, National Association

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - - x
                                 :
In re:                           :   Chapter 11
                                 :
CIRCUIT CITY STORES, INC.,       :   1Case No. 08-35653 (KRH)
et al.,                          :
                                 :
                Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - - - x
```

**STIPULATION, AGREEMENT AND ORDER PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE REGARDING
CREDIT CARD PROGRAM AND FOR RELATED RELIEF**

**RECITALS:**

A. Chase Bank USA, National Association, successor by merger with Bank One Delaware, National Association ("<u>Chase</u>") and Circuit City Stores, Inc. ("<u>Debtor</u>") entered into that certain Consumer Credit Card Program Agreement, dated as of January 16, 2004 (as the same has been amended from time to time, the "<u>Program Agreement</u>"). Unless otherwise defined, capitalized terms utilized herein shall have the meanings ascribed to such terms in the Program Agreement. Debtor and any entities designated as Authorized Entities under the Program Agreement shall be referred to, collectively, as "<u>Circuit City</u>."

B. Pursuant to the Program Agreement, Chase has operated a credit card program with Circuit City (the "<u>Program</u>") involving, among other things, the issuance by Chase of both private label credit cards and co-branded credit cards, each bearing the name and/or marks of Circuit City (both private label and co-branded cards, collectively, the "<u>Circuit City Credit Cards</u>") to individuals ("<u>Cardholders</u>").

C. On or about August 19, 2008, Chase advised Circuit City that it would be increasing late charges and finance charge rates on Circuit City Credit Cards ("<u>APR and Late Charge Increases</u>"). Certain Cardholders were notified in October, 2008, that the increases would occur effective December, 2008. At that same time, Chase also advised Circuit City that other Cardholders will be notified of the increases in December, 2008, and such increases will be effective in February, 2009.

D. On or about October 27, 2008 Circuit City advised Chase that Circuit City would be closing approximately 155 of its stores (the "<u>Store Closings</u>").

E. On or around such time, but in all events before November 10, 2008, which was the date on which this case was filed (the "<u>Commencement Date</u>"), Chase and Circuit City agreed upon reasonable and mutually beneficial credit-related practices that would be implemented in each store that was a part of the Store Closings (each, a "<u>Closing Store</u>") upon commencement of a going out of business sale or other sale outside the ordinary course of business (any such sale, a "<u>Closing Sale</u>"). Specifically, the parties

2

agreed that, upon commencement of a Closing Sale in a Closing Store, Circuit City would: (1) cease offering or accepting applications for instant credit under the Program in such Closing Store, (2) cease accepting payments on Accounts in such Closing Store, (3) cease performing Account lookups in respect of Accounts attributed to such Closing Store, (4) allow Chase to cease approving authorization requests for purchases on, or otherwise accepting, Circuit City Credit Cards for transactions in such Closing Store,  (5) continue processing refunds and returns in respect of purchases in such Closing Store in accordance with the refund and return policies in effect at the time of such purchases, including, pursuant to the Program Agreement, having Chase (i) credit the amounts of such refunds and returns to Circuit City Credit Cards used in connection with such purchases and (ii) net such amounts from daily, monthly or other  settlement payments due Circuit City under the Program Agreement, (6) return all photo copies of customer IDs related to such Closing Store to Chase, (7) remove all credit signage and materials related to the Program and utilized prior to the Commencement Date (including without limitation, applications for Circuit City Credit Cards and financing signs) from sales floors in such Closing Store, (8) display signage in such Closing Store advising customers of the reduced utility of Circuit City Credit Cards, and (9) instruct its sales persons in such Closing Store to inform customers who attempt to use Circuit City Credit Cards of the reduced utility of Circuit City Credit Cards in such Closing Store (the practices in (1) through (9), collectively, the "<u>Existing Store Closing Practices</u>").

F. The Existing Store Closing Practices were implemented in the Closing Stores on or about November 5, 2008.

G. On or about October 31, 2008, but in all events before the Commencement Date, Circuit City and Chase agreed that Chase would close certain inactive Accounts, whether or not associated with the Store Closings ("<u>Account Closings</u>").  Chase began the process of implementing such actions on or about October 31, 2008.

H. On or about September 16, 2008, but in all events before the Commencement Date, Circuit City and Chase discussed and agreed in principle that Chase would replace

3

certain Circuit City Credit Cards associated with Store Closing Accounts with general purpose credit cards or other general purpose credit products issued by Chase (the "Card Substitution").  Chase began the process of implementing such actions on or about September 25, 2008.

       I. On the Commencement Date, Circuit City and seventeen (17) of its subsidiaries (collectively with Circuit City, the "Debtors") each commenced cases (collectively, the "Chapter 11 Cases") under chapter 11, title 11, United States Code (the "Bankruptcy Code"), with this Court.

       J. On November 18, 2008, Circuit City and Chase, in accordance with their normal practices related to the Program, held an executive management committee meeting.

       K. On November 18, 2008, Circuit City and Chase agreed to implement the policies described below in paragraphs 5 and 7 and Chase advised Circuit City that it would raise FICO scores used to approve certain applications for Circuit City Credit Cards and reduce cash lines on certain Co-Branded Bankcards.

       L. Chase believes it is not required to obtain the approval of Circuit City or this Court with respect to certain actions described in this Stipulation, Agreement and Order, but has included such descriptions of such action in abundance of caution and for the purpose of full disclosure to all interested parties.

       M. Notice of this Stipulation, Agreement and Order has been given in accordance with this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures, dated November 10, 2008 [Docket No. 130] to (i) the Office of the United States Trustee for the Eastern District of Virginia, (ii) counsel to the official committee of unsecured creditors, (iii) counsel to the agents for the Debtors' prepetition lenders, (iv) counsel to the agents for the Debtors' postpetition lenders, and (v) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

NOW, THEREFORE, it is hereby STIPULATED, CONSENTED AND AGREED TO, by and among the duly authorized attorneys for the respective parties hereto, as follows starting as of the Commencement Date:

1. <u>Continuation of APR and Late Charge Increases</u>. Chase may (i) continue implementing the APR and Late Charge Increases, (ii) notify in December, 2008, any Cardholders who were not sent notice of such increases in October, 2008, and (iii) implement the increases referenced in (ii) effective February, 2009.

2. <u>Continuation of Existing Store Closing Practices</u>. Chase may (i) continue implementing Existing Store Closing Practices in Closing Stores, and (ii) implement Existing Store Closing Practices in each other retail store or with respect to catalogs and the Internet upon commencement of Closing Sales at or through such retail store, catalog or Internet as if such store, catalog or Internet were a Closing Store.

3. <u>Implementation of Account Closings</u>. On or about November 26, 2008, Chase began the process of closing any Accounts meeting the Initial Closure Criteria (as defined in the next sentence of this section 3) and expects to complete such closures in December, 2008. "<u>Initial Closure Criteria</u>" means (i) any Account that has been open for four (4) months or more and never activated, (ii) any Private Label Account that has not had a credit or debit balance for thirty six (36) months or more, or (iii) any Co-Branded Bankcard Account that has not had a credit or debit balance for twenty four (24) or more months. Thereafter, Chase may close from time to time additional Accounts meeting the Ongoing Closure Criteria (as defined in the next sentence of this section 3). "<u>Ongoing Closure Criteria</u>" means (i) any Account that has been open for four (4) months or more and never activated, or (ii) any Private Label Account or Co-Branded Bankcard Account that has not had a credit or debit balance for twelve (12) or more months.

4. <u>Treatment of Impacted Accounts</u>. Until and unless Circuit City determines to conduct a Complete Liquidation (as defined in the last sentence of this section 4), Chase may, with respect to Impacted Accounts

5

(as defined in the next sentence of this section 4), close such Accounts, decrease credit lines on such Accounts, sell such Accounts and/or further implement the Card Substitution.  "Impacted Accounts" shall mean Accounts that do not meet one of the following criteria:  (i) the Circuit City store closest to the Cardholder on such Account (by zip code) has not been announced as closing as part of the Store Closings, (ii) the Circuit City store closest to the Cardholder on such Account (by zip code) has been announced as closing as part of the Store Closings but there is an operating Circuit City store located within ten (10) miles of such Cardholder (by zip code) after the Store Closings, (iii) the Cardholder has made three (3) or more Internet purchases on the Account within the thirty six (36) months preceding the commencement of the Store Closings, (iv) the Cardholder's Circuit City Credit Card is a Co-Brand Bankcard and the Cardholder has made five (5) or more non-Circuit City transactions totaling at least one hundred dollars ($100) on such Card within the twelve (12) months preceding the commencement of the Store Closings, or (v) the Cardholder primarily shops at non-impacted stores within the Cardholder's direct  metropolitan area or state.  In the event that Circuit City determines to close stores or other retail channels (e.g., catalog or Internet) in addition to Closing Stores but does not determine to conduct a Complete Liquidation, if Accounts related to such closing stores or channels would meet the definition of Impacted Accounts had the closing store or channel been a Closing Store, Chase may close such Accounts, decrease credit lines on such Accounts, sell such Accounts and/or implement a card replacement or substitution like the Card Substitution.  A closing non-store channel shall be deemed a closed store nearest to the Cardholder for purposes of this analysis if the Cardholder has not shopped in a non-closed store within 36 months preceding the closing of the non-store channel and subsection (iii) shall not apply.  In the event that Circuit City announces that it shall conduct a Complete Liquidation, Chase may take any action with respect to Accounts that it determines in its discretion, including, but not limited to closure and liquidation of any or all Accounts, card replacement or substitution and/or the sale of Accounts to any third party including, but not limited to the persons identified on Exhibit 3.2(a) of the Program (and/or other third parties operating programs on behalf of or in conjunction with such persons).  "Complete Liquidation" means the cessation by Circuit City

6

of all or substantially all sales operations other than Closing Sales, unless Circuit City has made arrangements prior thereto to purchase the Portfolio Assets in accordance with Section 9.2 of the Program Agreement.

5. <u>Offering of Credit Promotional Sales</u>.  Circuit City shall cease advertising and offering any credit promotions related to Circuit City Credit Cards which provide Cardholders with more than three (3) months of credit with no interest and no monthly payment.  Circuit City also shall remove from its stores and website any contrary signage and/or promotional materials relating to such ceased promotions and cease all advertising relating to the ceased promotions.

6. <u>Insurance Protection</u>.  Chase may decline authorizations of purchases of protection products and services for goods sold by Circuit City including, without limitation, extended warranty protection unless such protection products and services are offered by or fully guaranteed by (a) Assurant, Inc. (or subsidiaries of Assurant, Inc.) or (b) with respect to products manufactured by Apple, Inc., Apple, Inc. (or subsidiaries of Apple, Inc.).

7. <u>Assertion of Contractual Rights</u>.  In accordance with its rights and obligations under the Program Agreement (including the Fourth Amendment thereto), Chase may raise FICO scores used to approve certain applications for Circuit City Credit Cards, reduce cash lines on certain Co-Branded Bankcard Accounts and cease, unless specifically required under the Program Agreement (as in the case of extended warranties), extending over-the-limit credit to Cardholders.

8. <u>Returns, Chargebacks, Etc.</u>  To the extent required, the automatic stay extant pursuant to section 362(a) of the Bankruptcy Code, if applicable, is hereby modified, nunc pro tunc to the Commencement Date, to permit Chase to exercise its rights under the Credit Card Program Agreement to set off and recoup any and all returns, chargebacks, adjustments, other credits relating to Cardholders and other amounts due under the Program Agreement, regardless of whether they are characterized as prepetition or postpetition, against the postpetition amounts due to Circuit City from Chase.

9. <u>Reserve</u>.  Chase may establish on its books a reserve relating to Circuit City (the "<u>Reserve</u>").  The Program Agreement shall be deemed modified to authorize Chase to immediately credit to the Reserve the sum of Fifteen Million Dollars ($15,000,000) otherwise payable to Circuit City on February 28, 2009, under the Third Amendment to the Program Agreement, and not to make such payment to Circuit City.  Circuit City shall advise Chase in writing of a Complete Liquidation  (as defined herein)no less than three (3) Business Days prior to announcement of such Complete Liquidation.  Upon the earlier of the date that Circuit City provides the notice specified in the preceding sentence or otherwise takes steps to effectuate a Complete Liquidation, Chase may withhold payment from daily settlements under Section 4.2 of the Program Agreement with Circuit City until the amount withheld totals Three Million Dollars ($3,000,000), and such amount shall be credited to the Reserve.  Chase may debit from the Reserve any amounts due and owing to Chase from Circuit City if and to the extent not paid by Circuit City when due, whether such amounts are considered prepetition or postpetition obligations of Circuit City; <u>provided</u>, <u>however</u>, that in no event shall Chase be entitled to debit more than Eighteen Million Dollars ($18,000,000) from the Reserve.  However, Chase shall be entitled to debit from the Reserve only amounts owed by Circuit City arising from transactions that occurred prior to any rejection of the Program Agreement pursuant to section 365 of the Bankruptcy Code.  For the avoidance of doubt, Chase may debit from the Reserve amounts owed after any rejection of the Program Agreement relating to transactions that occurred prior to any rejection of the Program Agreement, including, but not limited to, those related to sales of gift cards or warranties, promotional fees or returns.  Chase shall pay to Circuit City the positive balance, if any, of the Reserve promptly after satisfaction of all of the foregoing obligations.

10. <u>Business Plan; Financial Statements</u>.  Circuit City shall deliver to Chase:  (i)  a copy of Circuit City's current business plan, (ii) Variance Reports (as defined in that certain Senior Secured, Super-Priority, Debtor-In-Possession Credit Agreement, dated as of November __, 2008 among Circuit City Stores, Inc. as Lead Borrower for: said Circuit City Stores, Inc., Circuit City Stores West Coast, Inc. and Circuit City Stores PR, LLC, as Domestic Borrowers

and Intertan Canada Ltd., as Canadian Borrower; the Lenders party thereto; and Bank of America, N.A. as Administrative Agent and Collateral Agent; Banc of America Securities LLC, as Lead Arranger; Banc of America Securities LLC, GE Capital Markets, Inc. and Wells Fargo Retail Finance, LLC, as Joint Bookrunners; Bank of America, N.A. (acting through its Canadian Branch) as Canadian Administrative Agent and Canadian Collateral Agent; Wells Fargo Retail Finance, LLC, as Syndication Agent; and General Electric Capital Corporation and JPMorgan Chase Bank, N.A., as Co-Documentation Agents), and (iii) quarterly and annual audited financial statements beginning with the last quarter of 2008 and an audited annual statement for 2008.

11. <u>Scope</u>.  The provisions of the Program Agreement shall continue to the extent not inconsistent herewith.  To the extent of any inconsistency or conflict between this Stipulation and Order and the Program Agreement, this Stipulation and Order shall prevail.  Except to the extent specifically modified by the terms of this Stipulation and Order, Chase retains all of its rights and remedies under the Program Agreement and applicable law.

12. <u>Termination of Stipulation and Amendment to Program Agreement</u>.  This Stipulation, Agreement and Order shall terminate on the later of (i) the effective date of a plan of reorganization of Circuit City in the Chapter 11 Cases or (ii) if the Chapter 11 Cases shall have been converted to cases under chapter 7 of the Bankruptcy Code (collectively, the "<u>Chapter 7 Cases</u>"), the date on which the Chapter 7 Cases are presumed to have been fully administered under Bankruptcy Rule 5009; <u>provided</u>, <u>however</u>, that if and to the extent the Program Agreement continues after the dates specified in (i) or (ii), the Program Agreement shall be deemed modified as necessary to provide for the actions set forth in paragraphs 2, 4, and 7 hereof.

13. <u>Effective Date</u>.  This Stipulation, Agreement and Order shall become effective (the "<u>Effective Date</u>") upon it being "so ordered" by the Court.

14. <u>Binding Effect</u>.  This Stipulation, Agreement and Order shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Dated:  Richmond, Virginia
December 11, 2008


STIPULATED AND AGREED TO:


CIRCUIT CITY STORES, INC., et al.
as Debtors and Debtors in Possession


By Counsel:

McGUIREWOODS LLP


By:   /s/ Douglas M. Foley
      Dion W. Hayes (VSB No. 34304)
      Douglas M. Foley (VSB No. 45201)
      One James Center
      901 E. Cary Street
      Richmond, Virginia 23219
      (804) 775-1000

          -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE  19801
(302) 651-3000

          -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS)
333 West Wacker
Chicago, Illinois 60606-1285
(312) 407-0700



BANK ONE DELAWARE, National Association,
n/k/a CHASE BANK USA, National Association

By Counsel:

KUTAK ROCK LLP

By: /s/ Michael A. Condyles
    Michael A. Condyles (VSB No. 27807)
    Bank of America Center
    1111 East Main Street, 8th Floor
    Richmond, Virginia 23219
    (804) 644-1700

    -and-

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

* * *

Upon consideration of the Motion for Order Approving this Stipulation, Agreement and Order, pursuant to Rule 9019 this Stipulation, Agreement and Order is hereby approved.

SO ORDERED:

December __, 2008

_____
United States Bankruptcy Judge

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

I hereby certify that proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley