# **EXHIBIT A-1**

THIS LEASE AGREEMENT made as of this $2\frac{4}{}$ day of
February, 1994, by and between **CIRCUIT INVESTORS - GURNEE LIMITED
PARTNERSHIP**, a Texas limited partnership, having an office at
10000 North Central Expressway, Suite 1000, Dallas, Texas   75231
("Landlord"), and **CIRCUIT CITY STORES, INC.**, a Virginia
corporation, having its principal office at 9950 Mayland Drive,
Richmond, Virginia  23233-1464 ("Tenant").

In consideration of the rents and provisions herein
stipulated to be paid and performed, Landlord and Tenant hereby
covenant and agree as follows:

1.   <u>Demise of Premises</u>.  Landlord hereby demises and
lets to Tenant and Tenant hereby takes and leases from Landlord
for the term or terms and upon the provisions hereinafter
specified the following described property (collectively, the
"Leased Premises"):  (i) the premises described in Exhibit "A"
attached hereto and made a part hereof together with the
easements, rights and appurtenances thereunto belonging or
appertaining (collectively, the "Land"); (ii) the buildings,
structures and other improvements constructed and to be
constructed on the Land (collectively, the "Improvements"); and
(iii) any machinery and equipment installed in and upon the
Improvements in such a manner as to become fixtures under
applicable law, together with all additions and accessions
thereto, substitutions therefor and replacements thereof

permitted by this Lease (collectively, the "Equipment") excepting therefrom Tenant's Trade Fixtures.

2.   Certain Definitions.

(a)   "Additional Rent" shall mean Additional Rent as defined in Paragraph 35.

(b)   "Adjoining Property" shall mean all sidewalks, curbs, gores and vault spaces adjoining any of the Leased Premises.

(c)   "Alteration" or "Alterations" shall mean any or all changes, additions, improvements, reconstructions or replacements of any of the Improvements or Equipment, both interior or exterior, and ordinary and extraordinary.

(d)   "Basic Rent" shall mean Basic Rent as defined in Paragraph 6.

(e)   "Basic Rent Payment Dates" shall mean the Basic Rent Payment Dates as defined in Paragraph 6.

(f)   "Casualty Termination Date" shall mean the Casualty Termination Date as defined in Paragraph 14(h).

(g)   "Commencement Date" shall mean the Commencement Date as defined in Paragraph 5.

(h)   "Condemnation" shall mean a Taking and/or a Requisition as defined in subdivisions z and w of this Paragraph 2.

(i)   "Default Rate" shall mean the Default Rate as defined in Paragraph 19(b)(4).

2

(j)    "Event of Default" shall mean an Event of
Default as defined in Paragraph 19(a).

(k)    "Impositions" shall mean the Impositions as
defined in Paragraph 8.

(l)    "Insurance Requirement" or "Insurance
Requirements" shall mean, as the case may be, any one or more of
the terms of each insurance policy required to be carried by
Tenant under this Lease and the requirements of the issuer of
such policy, and whenever Tenant shall be engaged in making any
Alteration or Alterations, repairs or construction work of any
kind (collectively, "Work"), the term "Insurance Requirement" or
"Insurance Requirements" shall be deemed to include a requirement
that Tenant obtain or cause its contractor to obtain completed
value builder's risk insurance when the estimated cost of the
Work in any one instance exceeds the sum of One Hundred Thousand
($100,000.00) Dollars and that Tenant or its contractor shall
obtain worker's compensation insurance or other adequate
insurance coverage covering all persons employed in connection
with the Work, whether by Tenant, its contractors or
subcontractors and with respect to whom death or bodily injury
claims could be asserted against Landlord.

(m)    "Law" shall mean any constitution, statute or
rule of law.

(n)    "Legal Requirement" or "Legal Requirements"
shall mean, as the case may be, any one or more of all present
and future laws, codes, ordinances, orders, judgments, decrees,

3

injunctions, rules, regulations and requirements, even if
unforeseen or extraordinary, of every duly constituted
governmental authority or agency (but excluding those which by
their terms are not applicable to and do not impose any
obligation on Tenant, Landlord or the Leased Premises) and all
covenants, restrictions and conditions now or hereafter of record
which may be applicable to Tenant, to Landlord or to any of the
Leased Premises, or to the use, manner of use, occupancy,
possession, operation, maintenance, alteration, repair or
reconstruction of any of the Leased Premises, even if compliance
therewith (i) necessitates structural changes or improvements
(including changes required to comply with the "Americans with
Disabilities Act") or results in interference with the use or
enjoyment of any of the Leased Premises or (ii) requires Tenant
to carry insurance other than as required by the provisions of
this Lease.

(o)    "Lender" shall mean an entity which makes a
Loan to Landlord, secured by a Mortgage and evidenced by a Note
or which is the holder of the Mortgage and Note as a result of an
assignment thereof.

(p)    "Loan" shall mean a loan made by a Lender to
Landlord secured by a Mortgage and evidenced by a Note.

(q)    "Mortgage" shall mean a first priority
mortgage or similar security instrument hereafter executed
covering the Leased Premises from Landlord to Lender.

4

(r)    "Net Award" shall mean the entire award payable to Landlord by reason of a Condemnation, less any expenses incurred by Landlord in collecting such award.

(s)    "Net Proceeds" shall mean the entire proceeds of any insurance required under clauses (i), (iv), (v) or (vi) of Paragraph 14(a), less any expenses incurred by Landlord in collecting such proceeds.

(t)    "Note" or "Notes" shall mean a Promissory Note or Notes hereafter executed from Landlord to Lender, which Note or Notes will be secured by a Mortgage and an assignment of leases and rents.

(u)    "Permitted Encumbrances" shall mean those covenants, restrictions, reservations, liens, conditions, encroachments, easements and other matters of title that affect the Leased Premises as of Landlord's acquisition thereof, excepting, however, any such matters arising from the acts of Landlord (such as liens arising as a result of judgments against Landlord).

(v)    "Replaced Equipment" or "Replacement Equipment" shall mean the Replaced Equipment and Replacement Equipment, respectively, as defined in Paragraph 11(d).

(w)    "Requisition" shall mean any temporary condemnation or confiscation of the use or occupancy of any of the Leased Premises by any governmental authority, civil or military, whether pursuant to an agreement with such governmental

5

authority in settlement of or under threat of any such
requisition or confiscation, or otherwise.

(x)    "Restoration" shall mean the Restoration as
defined in Paragraph 13(c).

(y)    "State" shall mean the State or Commonwealth
in which the Leased Premises are situate.

(z)    "Taking" shall mean any taking of any of the
Leased Premises in or by condemnation or other eminent domain
proceedings pursuant to any law, general or special, or by reason
of any agreement with any condemnor in settlement of or under
threat of any such condemnation or other eminent domain
proceedings or by any other means, or any *de facto* condemnation.

(aa) "Term" shall mean the Term as defined in
Paragraph 5.

(bb) "Termination Date" shall mean the Termination
Date as defined in Paragraph 13(b).

(cc) "Trade Fixtures" shall mean all fixtures,
equipment and other items of personal property which are owned by
Tenant and used in the operation of the business conducted on the
Leased Premises, excluding therefrom the Equipment.

3.    Title and Condition.

(a)    The Leased Premises are demised and let
subject to (i) the rights of any parties in possession of any of
the Leased Premises, (ii) the Permitted Encumbrances, (iii) all
Legal Requirements and Insurance Requirements, including any
existing violation of any thereof, and (iv) the condition of the

6

Leased Premises as of the commencement of the Term; without
representation or warranty by Landlord; it being understood and
agreed, however, that the recital of the Permitted Encumbrances
herein shall not be construed as a revival of any thereof which
for any reason may have expired.

(b)    LANDLORD HAS NOT MADE AND WILL NOT MAKE ANY
INSPECTION OF ANY OF THE LEASED PREMISES, AND LANDLORD LEASES AND
WILL LEASE AND TENANT TAKES AND WILL TAKE THE LEASED PREMISES AS
IS, AND TENANT ACKNOWLEDGES THAT LANDLORD (WHETHER ACTING AS
LANDLORD HEREUNDER OR IN ANY OTHER CAPACITY) HAS NOT MADE AND
WILL NOT MAKE, NOR SHALL LANDLORD BE DEEMED TO HAVE MADE, ANY
WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, WITH RESPECT TO
ANY OF THE LEASED PREMISES, INCLUDING ANY WARRANTY OR
REPRESENTATION AS TO ITS FITNESS FOR USE OR PURPOSE, DESIGN OR
CONDITION FOR ANY PARTICULAR USE OR PURPOSE, AS TO THE QUALITY OF
THE MATERIAL OR WORKMANSHIP THEREIN, LATENT OR PATENT, AS TO
LANDLORD'S TITLE THERETO, OR AS TO VALUE, COMPLIANCE WITH
SPECIFICATIONS, LOCATION, USE, CONDITION, MERCHANTABILITY,
QUALITY, DESCRIPTION, DURABILITY OR OPERATION, IT BEING AGREED
THAT ALL RISKS INCIDENT THERETO ARE TO BE BORNE BY TENANT.
TENANT ACKNOWLEDGES THAT THE LEASED PREMISES ARE OF ITS SELECTION
AND TO ITS SPECIFICATIONS, AND THAT THE LEASED PREMISES HAVE BEEN
INSPECTED BY TENANT AND ARE SATISFACTORY TO IT.  IN THE EVENT OF
ANY DEFECT OR DEFICIENCY IN ANY OF THE LEASED PREMISES OF ANY
NATURE, WHETHER PATENT OR LATENT, LANDLORD SHALL NOT HAVE ANY
RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY

7

INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY
IN TORT). THE PROVISIONS OF THIS PARAGRAPH 3(b) HAVE BEEN
NEGOTIATED, AND THE FOREGOING PROVISIONS ARE INTENDED TO BE A
COMPLETE EXCLUSION AND NEGATION OF ANY WARRANTIES BY LANDLORD,
EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE LEASED PREMISES,
ARISING PURSUANT TO THE UNIFORM COMMERCIAL CODE OR ANY OTHER LAW
NOW OR HEREAFTER IN EFFECT OR OTHERWISE.

(c) Tenant represents to Landlord that Tenant has
examined the title to the Leased Premises prior to the execution
and delivery of this Lease and has found the same to be
satisfactory for the purposes contemplated hereby and
acknowledges that title is in Landlord and that Tenant has only
the right of possession and use of the Leased Premises as
provided in this Lease.

(d) Landlord hereby conditionally assigns,
without recourse or warranty whatsoever, to Tenant, all
warranties, guaranties and indemnities, express or implied, and
similar rights which Landlord may have against any manufacturer,
seller, engineer, contractor or builder in respect of any of the
Leased Premises, including, but not limited to, any rights and
remedies existing under contract or pursuant to the Uniform
Commercial Code (collectively, the "guaranties"). Such
assignment shall remain in effect so long as no Event of Default
exists hereunder or until the termination of this Lease.
Landlord shall also retain the right to enforce any guaranties
assigned in the name of Tenant upon the occurrence of an Event of

8

Default.  Landlord hereby agrees to execute and deliver at
Tenant's expense such further documents, including powers of
attorney, as Tenant may reasonably request (and which in the good
faith judgment of Landlord, do not adversely affect a substantial
general interest of Landlord), in order that Tenant may have the
full benefit of the assignment effected or intended to be
effected by this Paragraph 3(d).  Upon the occurrence of an Event
of Default or termination of this Lease, the guaranties shall
automatically revert to Landlord.  The foregoing provision of
reversion shall be self-operative and no further instrument of
reassignment shall be required.  In confirmation of such
reassignment Tenant shall execute and deliver promptly any
certificate or other instrument which Landlord may request.  Any
monies collected by Tenant under any of the guaranties after the
occurrence of and during the continuation of an Event of Default
shall be held in trust by Tenant and promptly paid over to
Landlord.

　　　　(e)  Landlord agrees to enter into with Tenant, at
Tenant's expense, such easements, covenants, waivers, approvals
or restrictions for utilities, parking or other matters as
desirable for operation of the Leased Premises or properties
adjacent thereto (collectively, "Easements") as requested by
Tenant, subject to Lender's and Landlord's approval of the form
and substance thereof, not to be unreasonably withheld or
delayed.  If either Landlord or Lender shall fail to approve or
disapprove the form and substance of any such Easements, within a

9

period of thirty (30) days from receipt, then either Landlord or
Lender, as the case may be, shall be deemed to have approved the
forms and substance of any such Easement.

      4.    Use of Leased Premises; Quiet Enjoyment.

      (a)   Tenant may use the Leased Premises for any
lawful purpose other than any use that will (i) have a material
adverse effect on the value of the Leased Premises, (ii)
materially increase the likelihood that Landlord or Lender would
incur liability under any provisions of the Act referred to in
Paragraph 26 of this Lease, or (iii) result or give rise to any
material environmental deterioration or degradation of the Leased
Premises.

      In no event shall the Leased Premises be used
for any purpose which shall violate any of the provisions of this
Lease, including but not limited to recorded covenants,
restrictions or agreements applicable to the Leased Premises or
to any shopping center of which the Leased Premises may be a
part.  Tenant agrees that with respect to any such recorded
covenants, restrictions or agreements, Tenant shall observe,
perform and comply with and carry out the provisions thereof
required therein to be observed and performed by Landlord.

      (b)   Subject to Tenant's rights under Paragraph 18
hereof, Tenant shall not permit any unlawful occupation, business
or trade to be conducted on any of the Leased Premises or any use
to be made thereof contrary to applicable Legal Requirements or
Insurance Requirements.  Subject to Tenant's rights under

10

Paragraph 18, Tenant shall not use, occupy or permit any of the Leased Premises to be used or occupied, nor do or permit anything to be done in or on any of the Leased Premises, in a manner which would (i) violate any certificate of occupancy or equivalent certificate affecting any of the Leased Premises, (ii) make void or voidable any insurance which Tenant is required hereunder to maintain then in force with respect to any of the Leased Premises, (iii) affect in any manner the ability of Tenant to obtain any insurance which Tenant is required to furnish hereunder, (iv) cause any injury or damage to any of the Improvements unless pursuant to alterations permitted under Paragraph 12 hereof, or (v) constitute a public or private nuisance or waste.

(c)    Subject to all of the provisions of this Lease, including but not limited to the provisions of Paragraphs 3 and 7(b), so long as no Event of Default exists hereunder, Landlord covenants to do no act to disturb the peaceful and quiet occupation and enjoyment of the Leased Premises by Tenant, provided that Landlord may enter upon and examine any of the Leased Premises at reasonable times after reasonable notice and during business hours and exercise any rights and privileges granted to Landlord under the provisions of this Lease or provided by law.

5.    <u>Term</u>.    Subject to the provisions hereof, Tenant shall have and hold the Leased Premises for an initial term (the "Term") commencing on February 24, 1994 (the "Commencement Date")

11

and ending on February 29, 2016 (the "Expiration Date").
Provided the Lease shall not have been terminated pursuant to the
provisions of Paragraphs 13(b), 14(h) or 19, this Lease and the
term thereof shall be automatically extended for two (2) renewal
terms of ten (10) years each upon condition that (a) at the
commencement of each renewal term, no Event of Default shall
exist, and (b) Tenant may cancel any renewal term by giving
notice to Landlord in writing at least twelve (12) months prior
to the expiration of the then current Term.  Upon the giving of
such notice this Lease and the term thereof shall terminate and
come to an end on the Expiration Date of the then current Term.
Any such extension or renewal of the Term (also referred to as
the "Term") shall be subject to all of the provisions of this
Lease, and all such provisions shall continue in full force and
effect, except that the Basic Rent for each renewal term shall be
the amounts determined in accordance with the schedule set forth
in Exhibit "B" attached hereto and made a part hereof.  In the
event that Tenant exercises its option to cancel any renewal Term
as hereinabove provided, then Landlord shall have the right
during the remainder of the Term then in effect to (i) advertise
the availability of the Leased Premises for sale or for
reletting, and (ii) show the Leased Premises to prospective
purchasers, lenders or tenants at such reasonable times during
normal business hours as Landlord may select.  If Tenant shall
timely give such notice of its election to cancel any renewal

option, then all options with regard to subsequent extensions or

renewals of the Term shall expire and be null and void.

      6.   Rent.

      (a)  Tenant shall pay to Landlord or Lender, if

directed by Landlord, as annual rent for the Leased Premises

during the Term, the amounts determined in accordance with the

schedule set forth in Exhibit "B" attached hereto and made a part

hereof ("Basic Rent"), commencing on the last day of the first

month next following the Commencement Date and continuing on the

same day of each month thereafter during the Term (the said days

being called the "Basic Rent Payment Dates"), and shall pay the

same at Landlord's address set forth below, or at such other

place or to such other person or persons (not exceeding four (4)

in number) and in such proportions as Landlord from time to time

may designate to Tenant in writing, in funds which at the time of

such payment shall be legal tender for the payment of public or

private debts in the United States of America and if required by

Lender by wire transfer in immediately available federal funds to

such account in such bank as Lender shall designate from time to

time.   Pro rata Basic Rent shall be due for the period from the

Commencement Date to the first day of the month next following

the Commencement Date computed as set forth in Exhibit "B" and

shall be paid in advance on the Commencement Date, except that if

the Commencement Date shall occur on the first day of a calendar

month, the full monthly installment of Basic Rent shall be paid

13

on the last day of the month in which the Commencement Date shall occur.

(b)    Tenant shall pay and discharge before the imposition of any fine, lien, interest or penalty may be added thereto for late payment thereof, as additional rent, all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to this Lease, together with every fine, penalty, interest and cost which may be added by the party to whom such payment is due for nonpayment or late payment thereof. In the event of any failure by Tenant to pay or discharge any of the foregoing, Landlord shall have all rights, powers and remedies provided herein, by law or otherwise, in the event of nonpayment of Basic Rent.  If any installment of Basic Rent is not paid within three (3) business days after written notice from Landlord that the same is overdue, Tenant shall pay to Landlord or Lender, as the case may be, on demand, as additional rent, a late charge equal to three percent (3%) (the "Late Charge") on such overdue installment of Basic Rent.

7.    <u>Net Lease; Non-Terminability</u>.

(a)    This is a net Lease and Basic Rent, Additional Rent and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense, except as otherwise specifically set forth in Paragraph 13(c) hereof.

14

(b)    This Lease shall not terminate and Tenant
shall not have any right to terminate this Lease, during the Term
(except as otherwise expressly provided in Paragraphs 13(b) and
14(h) hereof).   Tenant shall not be entitled to any setoff,
counterclaim, recoupment, abatement, suspension, deferment,
diminution, deduction, reduction or defense of or to Basic Rent,
Additional Rent or any other sums payable under this Lease
(except as otherwise expressly provided herein), and except as
otherwise expressly provided herein the obligations of Tenant
under this Lease shall not be affected by any interference with
Tenant's use of any of the Leased Premises for any reason,
including but not limited to the following:   (i) any damage to or
destruction of any of the Leased Premises by any cause
whatsoever, (ii) any Condemnation, (iii) the prohibition,
limitation or restriction of Tenant's use of any of the Leased
Premises, (iv) any eviction by paramount title or otherwise, (v)
Tenant's acquisition of ownership of any of the Leased Premises
other than pursuant to an express provision of this Lease, (vi)
any default on the part of Landlord hereunder or under any other
agreement, (vii) any latent or other defect in, or any theft or
loss of any of the Leased Premises, (viii) the breach of any
warranty of any seller or manufacturer of any of the Equipment,
(ix) any violation of Paragraph 4(c) by Landlord, or (x) any
other cause, whether similar or dissimilar to the foregoing, any
present or future law to the contrary notwithstanding.   It is the
intention of the parties hereto that the obligations of Tenant

15

hereunder shall be separate and independent covenants and agreements, and that Basic Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events (or, in lieu thereof, Tenant shall pay amounts equal thereto), and that the obligations of Tenant hereunder shall continue unaffected, unless the requirement to pay or perform the same shall have been terminated pursuant to an express provision of this Lease.

(c)   Tenant agrees that it shall remain obligated under this Lease in accordance with its provisions and that, except as otherwise expressly provided in Paragraphs 13(b) and 14(h) hereof, it shall not take any action to terminate, rescind or avoid this Lease, notwithstanding (i) the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Landlord, (ii) the exercise of any remedy, including foreclosure, under the Mortgage, or (iii) any action with respect to this Lease (including the disaffirmance hereof) which may be taken by Landlord under the Federal Bankruptcy Code or by any trustee,. receiver or liquidator of Landlord or by any court under the Federal Bankruptcy Code or otherwise.

(d)   This Lease is the absolute and unconditional obligation of Tenant.  Tenant waives all rights which are not expressly stated herein but which may now or hereafter otherwise be conferred by law (i) to quit, terminate or surrender this Lease or any of the Leased Premises, (ii) to any setoff,

16

counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense of or to Basic Rent, Additional Rent or any other sums payable under this Lease, except as otherwise expressly provided herein, and (iii) for any statutory lien or offset right against Landlord or its property.

8.    Payment of Impositions; Compliance with
Legal Requirements and Insurance Requirements.

(a)    Subject to the provisions of Paragraph 18 hereof relating to contests, Tenant shall, before interest or penalties are due thereon, pay and discharge all taxes of every kind and nature (including real, *ad valorem* and personal property, income, franchise, withholding, profits and gross receipts taxes), all charges and/or taxes for any easement or agreement maintained for the benefit of any of the Leased Premises, all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and other utility charges, all ground rents, and all other public charges and/or taxes whether of a like or different nature, even if unforeseen or extraordinary, imposed upon or assessed, prior to or during the Term, against Landlord, Tenant or any of the Leased Premises as a result of or arising in respect of the occupancy, leasing, use, maintenance, operation, management, repair or possession thereof, or any activity conducted on the Leased Premises, or the Basic Rent or Additional Rent, including without limitation, any gross income tax, sales tax, occupancy tax or excise tax levied by any governmental body on or with respect to such Basic Rent or Additional Rent (collectively, the

17

"Impositions").  Landlord shall promptly deliver to Tenant any
bill or invoice it receives with respect to any Imposition.

Nothing herein shall obligate Tenant to pay,
and the term "Impositions" shall exclude, federal, state or local
(i) franchise, capital stock or similar taxes if any, of
Landlord, (ii) income, excess profits or other taxes, if any, of
Landlord, determined on the basis of or measured by its net
income, or (iii) any estate, inheritance, succession, gift,
capital levy or similar taxes unless the taxes referred to in
clauses (i) and (ii) above are in lieu of or a substitute for any
other tax or assessment upon or with respect to any of the Leased
Premises which, if such other tax or assessment were in effect at
the commencement of the term, would be payable by Tenant.  In the
event that any assessment against any of the Leased Premises may
be paid in installments, Tenant shall have the option to pay such
assessment in installments; and in such event, Tenant shall be
liable only for those installments which become due and payable
during the Term.  Tenant shall prepare and file all tax reports
required by governmental authorities which relate to the
Impositions.  Tenant shall deliver to Landlord, within twenty
(20) days of Landlord's request therefor, copies of all
settlements and notices pertaining to the Impositions which may
be issued by any governmental authority and receipts for payments
of all Impositions made during each calendar year of the Term,
within thirty (30) days after payment.

18

(b)    Tenant shall promptly comply with and conform
to all of the Legal Requirements and Insurance Requirements,
subject to the provisions of Paragraph 18 hereof.

9.    <u>Liens; Recording and Title</u>.

(a)    Tenant shall not, directly or indirectly,
create or permit to be created or to remain, and shall promptly
discharge, any lien on any of the Leased Premises, on the Basic
Rent, Additional Rent or on any other sums payable by Tenant
under this Lease, other than the Mortgage, the Assignment, the
Permitted Encumbrances and any mortgage, lien, encumbrance or
other charge created by or resulting from any act or omission by
Landlord or those claiming by, through or under Landlord (except
Tenant). NOTICE IS HEREBY GIVEN THAT LANDLORD SHALL NOT BE
LIABLE FOR ANY LABOR, SERVICES OR MATERIALS FURNISHED OR TO BE
FURNISHED TO TENANT, OR TO ANYONE HOLDING ANY OF THE LEASED
PREMISES THROUGH OR UNDER TENANT, AND THAT NO MECHANIC'S OR OTHER
LIENS FOR ANY SUCH LABOR, SERVICES OR MATERIALS SHALL ATTACH TO
OR AFFECT THE INTEREST OF LANDLORD IN AND TO ANY OF THE LEASED
PREMISES.

(b)    Tenant shall execute, deliver and record,
file or register from time to time all such instruments as may be
required by any present or future law in order to evidence the
respective interest of Landlord and Tenant in any of the Leased
Premises, and shall cause a memorandum of this Lease, and any
supplement hereto or to such other instrument, if any, as may be
appropriate, to be recorded, filed or registered and re-recorded,

19

refiled or re-registered in such manner and in such places as may
be required by any present or future law in order to give public
notice and protect the validity of this Lease.  In the event of
any discrepancy between the provisions of said recorded
memorandum of this Lease or any other recorded instrument
referring to this Lease and the provisions of this Lease, the
provisions of this Lease shall prevail.

        (c)   Nothing in this Lease and no action or
inaction by Landlord shall be deemed or construed to mean that
Landlord has granted to Tenant any right, power or permission to
do any act or to make any agreement which may create, give rise
to, or be the foundation for, any right, title, interest or lien
in or upon the estate of Landlord in any of the Leased Premises.

        10.   Indemnification.  Tenant agrees to defend, pay,
protect, indemnify, save and hold harmless Landlord and Lender
from and against any and all liabilities, losses, damages,
penalties, costs, expenses (including reasonable attorneys' fees
and expenses), causes of action, suits, claims, demands or
judgments of any nature whatsoever, howsoever caused, arising
from any of the Leased Premises or Adjoining Property or the use,
non-use, occupancy, condition, design, construction, maintenance,
repair or rebuilding of any of the Leased Premises or Adjoining
Property, and any injury to or death of any person or persons or
any loss of or damage to any property, real or personal, in any
manner arising therefrom connected therewith or occurring
thereon, whether or not Landlord has or should have knowledge or

20

notice of the defect or conditions, if any, causing or
contributing to said injury, death, loss, damage or other claim.
In case any action or proceeding is brought against Landlord by
reason of any such claim, Tenant covenants upon notice from
Landlord to resist or defend Landlord in such action, with the
expenses of such defense paid by Tenant, and Landlord will
cooperate and assist in the defense of such action or proceeding
if reasonably requested so to do by Tenant.

The obligations of Tenant under this Paragraph 10
shall survive any termination of this Lease.

11.   <u>Maintenance and Repair.</u>

(a)   Tenant shall at all times, including any
Requisition period, put, keep and maintain the Leased Premises,
including, without limitation, the roof, landscaping, walls,
footings, foundations and structural components of the Leased
Premises, and the Adjoining Property, in good repair and
appearance and, in the case of the Equipment, in good mechanical
condition, except for ordinary wear and tear, and shall promptly
make all repairs and replacements (substantially equivalent in
quality and workmanship to the original work) of every kind and
nature, whether foreseen or unforeseen, which may be required to
be made upon or in connection with any of the Leased Premises in
order to keep and maintain the Leased Premises in as good repair
and appearance as they were originally, except for ordinary wear
and tear.   Tenant shall do or cause others to do all shoring of
the Leased Premises or Adjoining Property or of foundations and

21

walls of the Improvements and every other act necessary or
appropriate for preservation and safety thereof, by reason of or
in connection with any excavation or other building operation
upon any of the Leased Premises or Adjoining Property, whether or
not Landlord shall, by reason of any Legal Requirements or
Insurance Requirements, be required to take such action or be
liable for failure to do so.  Landlord shall not be required to
make any repair, whether foreseen or unforeseen, or to maintain
any of the Leased Premises or Adjoining Property in any way, and
Tenant hereby expressly waives the right to make repairs at the
expense of the Landlord, which right may be provided for in any
law now or hereafter in effect.  Nothing in the preceding
sentence shall be deemed to preclude Tenant from being entitled
to insurance proceeds or condemnation awards for Restoration
pursuant to Paragraphs 13(c) and 14(g) of this Lease.  Tenant
shall, in all events, make all repairs for which it is
responsible hereunder promptly, and all repairs shall be in a
good, proper and workmanlike manner.

     (b)   In the event that any Improvement now or
hereafter constructed shall encroach upon any property, street or
right-of-way adjoining any of the Leased Premises or Adjoining
Property, shall violate any Legal Requirements, Insurance
Requirements or the provisions of any restrictive covenant
affecting any of the Leased Premises, shall hinder or obstruct
any easement or right-of-way to which any of the Leased Premises
is subject, or shall impair the rights of others in, to or under

22

any of the foregoing, and as a result of such encroachment, violation, hindrance or impairment, enforcement action is threatened or commenced against Tenant or with respect to the Leased Premises, then, Tenant shall either (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment, violation, hindrance, obstruction or impairment, whether the same shall affect Landlord, Tenant or both, or (ii) take such action as shall be necessary to remove such encroachment, violation, hindrance, obstruction or impairment including, if necessary, any Alteration.  Any such repair or Alteration shall be made in conformity with the provisions of Paragraph 12.

    (c)  If Tenant shall be in default under any of the provisions hereof, Landlord may after thirty (30) days notice to Tenant and failure of Tenant to cure during said period, but without notice in the event of an emergency (which includes failure to provide required insurance coverage), do whatever is necessary to cure such default as may be reasonable under the circumstances for the account of and at the expense of Tenant. In the event of an emergency Landlord shall notify Tenant of the situation by phone or other available communication.  All sums so paid by Landlord and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the Default Rate from the date of payment or incurring the expense, shall constitute Additional

23

Rent payable by Tenant under this Lease and shall be paid by
Tenant to Landlord on demand.

(d)   Tenant shall from time to time replace with
other operational equipment or parts (the "Replacement
Equipment") any of the Equipment (the "Replaced Equipment") which
shall have become worn out, obsolete or unusable for the purpose
for which it is intended, been taken by a Condemnation as
provided in Paragraph 13, or been lost, stolen, damaged or
destroyed as provided in Paragraph 14.  Tenant shall repair at
its sole cost and expense all damage to the Leased Premises
caused by the removal of Equipment or Replaced Equipment or other
personal property of Tenant or the installation of Replacement
Equipment.  All Replacement Equipment shall become the property
of Landlord, shall be free and clear of all liens and rights of
others and shall become a part of the Equipment as if originally
demised herein.

12.   Alterations.  Tenant shall not make any
Alterations which would impair the usefulness or structural
integrity of the Leased Premises, without Landlord's written
consent, not to be unreasonably withheld or delayed.  Tenant may
make any other Alterations without the prior written consent of
the Landlord provided such Alterations comply with all of the
provisions of the following sentence.  In the event that Landlord
gives its prior written consent to any Alterations, or if such
consent is not required, Tenant agrees that in connection with
any Alteration (i) the fair market value of the Leased Premises

24

shall not be lessened by any such Alteration, or its usefulness
or structural integrity impaired, (ii) the Alteration shall not
change the general character of the Improvements, and the
Alteration and any Alteration theretofore made or thereafter to
be made shall not in the aggregate reduce the gross cubic foot
volume of the Improvements by more than five percent (5%), (iii)
all such Alterations shall be performed in a good and workmanlike
manner, and shall be expeditiously completed in compliance with
all Legal Requirements, (iv) all work done in connection with any
such Alteration shall comply with all Insurance Requirements, (v)
Tenant shall promptly pay all costs and expenses of any such
Alteration, and shall discharge all liens filed against any of
the Leased Premises arising out of the same, (vi) Tenant shall
procure and pay for all permits and licenses required in
connection with any such Alteration, (vii) all such Alterations
shall be the property of Landlord and shall be subject to this
Lease, and (viii) all Alterations shall be made in the case of
any Alteration the estimated cost of which in any one instance
exceeds Two Hundred Fifty Thousand Dollars ($250,000.00) under
the supervision of an architect or engineer, reasonably
satisfactory to Landlord, in accordance with detailed plans and
specifications which shall be submitted to Landlord at least ten
(10) days prior to the commencement of the Alterations.

      13.   Condemnation.

          (a)  Tenant, immediately upon obtaining knowledge
of the institution of any proceeding for Condemnation, shall

notify Landlord thereof and Landlord shall be entitled to
participate in any Condemnation proceeding at Tenant's expense.
Landlord immediately upon obtaining knowledge of the institution
of any proceeding for Condemnation, shall notify Tenant thereof
and Tenant shall have the right to participate in such
proceedings at its own expense.  Subject to the provisions of
this Paragraph 13 and Paragraph 15, Tenant hereby irrevocably
assigns to Lender or to Landlord, in that order, any award or
payment in respect of any Condemnation of the Leased Premises
(including any such award relating to the value of the leasehold
interest created by this Lease), but nothing in this Lease shall
be deemed to (i) assign to Landlord or Lender any award or
payment on account of Tenant's Trade Fixtures, moving expenses
and out-of-pocket expenses incidental to the move, if available,
to the extent Tenant shall have a right to make a separate claim
therefor against the condemnor or (ii) impair Tenant's right to
any such award or payment, so long as such claim is not based
upon the value of the Leased Premises (including the value of
Tenant's leasehold interest); it being agreed, however, that
Tenant shall in no event be entitled to any payment that reduces
the award to which Landlord is or would be entitled for the
condemnation of the Leased Premises (including the value of the
leasehold interest created by this Lease).

             (b)   If (i) the entire Leased Premises or (ii) at
least ten percent (10%) of the Land or the building constructed
on the Land, the loss of which even after restoration would, in

26

Tenant's reasonable business judgment, be substantially and
materially adverse to the business operations of Tenant, shall be
subject of a Taking by a duly constituted authority or agency
having jurisdiction, then Tenant shall, not later than sixty (60)
days after a Taking has occurred, serve notice upon Landlord
("Tenant's Termination Notice") of its intention to terminate
this Lease on any Basic Rent Payment Date specified in such
notice, which date (the "Termination Date") shall be no sooner
than the first Basic Rent Payment Date occurring at least thirty
(30) days after the date of Tenant's Termination Notice.  In the
event that during the initial term Tenant shall serve such notice
upon Landlord of its intention to terminate this Lease on the
Termination Date, Tenant shall, as part of such notice offer
(which offer may be rejected by Landlord as set forth below) to
purchase the Leased Premises and the award, or if no part of the
Leased Premises shall remain, the entire award for the applicable
price computed in accordance with the schedule annexed hereto and
marked Exhibit "C" (the "Purchase Price") plus all other amounts
which may be due and owing to Lender or Landlord by reason of the
default by Tenant in complying with its obligations under this
Lease (the "Additions to Purchase Price").  If Landlord and
Lender shall not elect to accept Tenant's said offer to purchase,
Landlord shall give notice thereof to Tenant within thirty (30)
days after the giving of Tenant's Termination Notice.  Should
said offer to purchase not be accepted by Landlord and Lender,
this Lease shall be terminated as above provided and the entire

27

award made in the Condemnation proceeding shall be paid to Lender or to Landlord in that order.  Landlord's notice not to elect to accept Tenant's said offer to purchase shall be void and of no effect unless accompanied by the written notice of Lender to the effect that Lender also elects not to accept Tenant's said offer to purchase.  Should said notices of Landlord and Lender accepting Tenant's said offer to purchase not be served within said period of thirty (30) days, then and in that event, the said offer shall be deemed accepted.

In the event that Landlord and Lender shall accept or be deemed to have accepted Tenant's offer to purchase, title shall close and Purchase Price and Additions to Purchase Price shall be paid as hereinafter provided and in such event Tenant shall be entitled to and shall receive any and all awards then or thereafter made in the Condemnation proceeding and Landlord shall assign or in case of any award previously made, deliver to Tenant on the Closing Date such award as may be made. In the event Landlord and Lender shall accept Tenant's offer to purchase, or be deemed to have accepted Tenant's offer, title shall close thirty (30) days after the Termination Date hereinbefore defined (the "Closing Date"), at noon at the local office of Landlord's counsel, or at such other time and place as the parties hereto may agree upon, this Lease shall be automatically extended to and including the Closing Date (or, if applicable, the extended Closing Date hereinafter described) and Tenant shall pay the Purchase Price and Additions to Purchase

28

Price by transferring immediately available federal funds to such
account or accounts and in such bank or banks as Lender or
Landlord, in that order, shall designate, upon delivery of a
special warranty deed conveying the Leased Premises and all other
required documents including an assignment of any award in
connection with such Taking.  The special warranty deed shall
convey a good and clear record and marketable title, free from
encumbrances other than (iii) Permitted Exceptions, (iv) liens or
encumbrances created or suffered through or by Tenant failing to
observe or perform any of the terms, covenants or agreements
herein provided to be observed and performed by Tenant, (v) any
installments of Impositions due and payable after the Closing
Date, and (vi) this Lease.  Such deed shall contain an agreement
by grantee to observe and perform all of the covenants,
conditions and restrictions contained in any instruments of
record which were assumed by Landlord or deemed to have been
assumed by Landlord on its acquisitions of title.  The Purchase
Price and Additions to Purchase Price payable as hereinabove
provided shall be charged or credited, as the case may be, on the
Closing Date, to reflect adjustments of Basic Rent paid or
payable to and including the Closing Date, apportioned as of the
Closing Date.  If on the Closing Date, there may be any liens or
encumbrances which Landlord is obligated to remove, Landlord
shall use reasonable efforts to remove the same, and the Closing
Date shall be extended for a reasonable period to permit Landlord
to discharge such liens or encumbrances.  If by said extended

Closing Date such liens or encumbrances shall not be removed and
such liens or encumbrances shall be subordinate to a Mortgage,
Tenant shall seek to purchase the Mortgage from the holder
thereof at a price which shall in no event exceed the Purchase
Price and Additions to Purchase Price charged or credited, as the
case may be, on the extended Closing Date, to reflect adjustments
of Basic Rent paid or payable to and including the extended
Closing Date, apportioned as of the extended Closing Date and the
Leased Premises shall be conveyed by Landlord to Tenant subject
to the Mortgage and in such event the amount payable by Tenant to
the holder of the Mortgage shall be deducted from the Purchase
Price and Additions to the Purchase Price payable to Landlord.
Landlord shall not be obligated to discharge any such lien or
encumbrance if Tenant's title insurance company shall issue
affirmative insurance to the effect that the same shall not be
collected from or enforced against the insured premises.  The
acceptance of a deed by Tenant shall be deemed to be a full
performance and discharge of every agreement and obligation on
the part of Landlord to be performed pursuant to the provisions
hereof.  Tenant shall pay all conveyance, transfer, sales and
like taxes required in connection with the purchase.  If there be
any liens or encumbrances against the Leased Premises which
Landlord is obligated to remove, upon request made a reasonable
time before the Closing Date, Landlord shall provide at the
Closing separate funds for the foregoing, payable to the holder
of such lien or encumbrances.

In the event that during any renewal term Tenant shall serve Tenant's Termination Notice upon Landlord, this Lease and the term hereof shall terminate on the Termination Date.  In such event the entire award made in Condemnation proceeding shall be paid to Lender, or to Landlord, in that order.

(c)  In the event of any other Condemnation of part of the Leased Premises which does not result in a Termination of this Lease, subject to the requirements of Paragraph 15, the Net Award of such Condemnation, *i.e.*, after deducting therefrom all expenses incurred in the collection thereof shall be retained by Landlord and, promptly after such Condemnation, Tenant shall commence and diligently continue to restore the Leased Premises as nearly as possible to their value, condition and character immediately prior to such Condemnation, in accordance with the provisions of this Lease, including but not limited to the provisions of Paragraphs 11(a), 12 and 15 (the "Restoration").

Upon the payment to Landlord of the Net Award of a Taking which falls within the provisions of this subparagraph (c), Landlord and Lender shall, to the extent received, make that portion of the Net Award equal to the cost of Restoration, (the "Restoration Award") available to Tenant for Restoration, in accordance with the provisions of Paragraph 15, and the balance remaining (the "net surplus award") shall be the property of Lender or Landlord in that order.  Following the

31

making of the condemnation award and on completion of the repairs
or alterations made by Tenant as herein provided, the monthly
installment of Basic Rent for each month thereafter during the
term hereof shall be reduced by an amount equal to one-twelfth
(1/12th) of 9.55 percent (if during the initial term hereof; if
during the first renewal term 10.51 percent and if during the
second renewal term 11.46 of the net surplus award, retained by
Landlord or paid to Lender.

In the event of a Requisition of any of the
Leased Premises, Landlord shall apply the Net Award of such
Requisition, to the extent available, to the installments of
Basic Rent, Additional Rent or other sums payable by Tenant
hereunder thereafter payable and Tenant shall pay any balance
remaining thereafter.  Upon the expiration of the Term, any
portion of such Net Award which shall not have been previously
credited to Tenant on account of the Basic Rent and Additional
Rent shall be retained by Landlord.

(d)  Except with respect to an award or payment to
which Tenant is entitled pursuant to the provisions of Paragraphs
13(a), 13(b) and 13(c), no agreement with any condemnor in
settlement of or under threat of any Condemnation shall be made
by either Landlord or Tenant without the written consent of the
other, and of Lender, if the Leased Premises are then subject to
a Mortgage, which consent shall not be unreasonably withheld or
delayed.

32

14.   <u>Insurance</u>.

(a)   Tenant shall maintain at its sole cost and
expense the following insurance on the Leased Premises:

(i)   Insurance against loss or damage to the
Improvements and Equipment under an All Risk Policy, which shall
include flood insurance and earthquake insurance and which may
contain such exclusions as may be reasonably acceptable to
Landlord and Lender, in amounts to prevent Landlord or Tenant
from becoming a co-insurer under the applicable policies, and in
any event in amounts not less than the actual replacement cost of
the Improvements and Equipment (excluding footings and
foundations and other parts of the Improvements which are not
insurable) as determined from time to time at Lender's request
but not more frequently than once in any 12-month period, by
agreement of Landlord, Lender and Tenant, or if not so agreed, at
Tenant's expense, by the insurer or insurers or by an appraiser
approved by Landlord.

(ii) Contractual and comprehensive general
liability insurance against claims for bodily injury, death or
property damage occurring on, in or about any of the Leased
Premises or the Adjoining Property, which insurance shall be
written on a so-called "Occurrence Basis," and shall provide
minimum protection with a combined single limit in an amount not
less than the greater of (x) Three Million ($3,000,000) Dollars
(or in such increased limits from time to time to reflect
declines in the purchasing power of the dollar as Landlord may

33

reasonably request) or (y) the aggregate amount of such insurance carried by Tenant, for bodily injury, death and property damage in any one occurrence.

(iii) Worker's compensation insurance covering all persons employed by Tenant on the Leased Premises in connection with any work done on or about any of the Leased Premises for which claims for death or bodily injury could be asserted against Landlord, Tenant or the Leased Premises.

(iv) During periods of war or national emergency, war risk insurance in an amount not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable), when and to the extent obtainable from the United States Government or an agency thereof.

(v) Insurance against loss or damage from explosion of any steam or pressure boilers or similar apparatus located in or about the Improvements in an amount not less than the actual replacement cost of the Improvements and Equipment (excluding footings and foundations and other parts of the Improvements which are not insurable);

(vi) Such additional and/or other insurance with respect to the Improvements and in such amounts as at the time is customarily carried by prudent owners or tenants with respect to improvements similar in character, location and use

34

and occupancy to the Improvements then comprising the Leased
Premises;

(b)    During such time as Tenant named herein
remains liable for performance of Tenant's obligation hereunder
and no Event of Default is outstanding hereunder, and the
tangible net worth of said Tenant shall be not less than One
Hundred Million ($100,000,000.00) Dollars as determined in
accordance with generally accepted accounting principles
consistently applied, said Tenant may self-insure the coverage
referred to in 14(a)(i), (iii) and (v), provided that the self
insurance program of this section (b) does not violate any Legal
Requirements of any state which regulates a Lender domiciled in
said state.

(c)    The insurance required by Paragraph 14(a)
shall be written by companies having a Best's rating of B+ during
such time as Tenant shall have such tangible net worth of not
less than One Hundred Million ($100,000,000) Dollars and at all
other times written by companies having a Best's rating of A- and
all such companies shall be authorized to do an insurance
business in the State or otherwise agreed to by Landlord and
Lender.  Sums due from Tenant in lieu of insurance proceeds
because of such self-insurance programs shall be treated as
insurance proceeds for all purposes under this Lease.  The
insurance policies (i) shall be for a term of not less than one
year, (ii) shall be in amounts sufficient at all times to satisfy
any coinsurance requirements thereof, and (iii) shall (except for

35

the worker's compensation insurance referred to in Paragraph
14(a)(iii) hereof) name Landlord, Tenant and any Lender as
additional insured parties, as their respective interests may
appear.  If said insurance or any part thereof shall expire, be
withdrawn, become void by breach of any condition thereof by
Tenant or become void or unsafe by reason of the failure or
impairment of the capital of any insurer, Tenant shall
immediately obtain new or additional insurance reasonably
satisfactory to Landlord and Lender.

        (d)   Each insurance policy referred to in clauses
(i), (iv), (v) (and (vi) (if requested by Lender) of Paragraph
14(a), shall contain standard non-contributory mortgagee clauses
in favor of any Lender.  Each policy shall provide that it may
not be cancelled except after 30 days prior notice to Landlord
and any Lender.  Each policy shall also provide that any loss
otherwise payable thereunder shall be payable notwithstanding (i)
any act or omission of Landlord or Tenant which might, absent
such provision, result in a forfeiture of all or a part of such
insurance payment, (ii) the occupation or use of any of the
Leased Premises for purposes more hazardous than permitted by the
provisions of such policy, (iii) any foreclosure or other action
or proceeding taken by any Lender pursuant to any provision of
the Mortgage upon the happening of an event of default therein,
or (iv) any change in title or ownership of any of the Leased
Premises.

                            36

(e)   Tenant shall pay as they become due all
premiums for the insurance required by this Paragraph 14, shall
renew or replace each policy, and shall deliver to Landlord and
Lender, a certificate or other evidence (reasonably satisfactory
to Lender and Landlord) of the existing policy and such renewal
or replacement policy and evidence of the payment of the full
premium therefor at least thirty days prior to the Expiration
Date (as hereinafter defined) of each policy.  Each such policy
shall provide that it shall not expire until the Landlord and
Lender shall receive a notice from the insurer to the effect that
a policy will expire on a date (the "Expiration Date") which
shall be thirty (30) days following the date of the receipt by
Landlord and Lender of such notice.  In the event of Tenant's
failure to comply with any of the foregoing requirements of this
Paragraph 14, Landlord shall be entitled to procure such
insurance.  Any sums expended by Landlord in procuring such
insurance shall be Additional Rent and shall be repaid by Tenant,
together with interest thereon at the Default Rate, from the time
of payment by Landlord until fully paid by Tenant immediately
upon written demand therefor by Landlord.

(f)   Anything in this Paragraph 14 to the contrary
not withstanding, any insurance which Tenant is required to
obtain pursuant to Paragraph 14(a) may be carried under a
"blanket" policy or policies covering other properties or
liabilities of Tenant, provided that such "blanket" policy or
policies otherwise comply with the provisions of this Paragraph

37

14.   In the event any such insurance is carried under a blanket policy, Tenant shall deliver to Landlord and Lender a certified copy of those provisions of the blanket policy that pertain to the Leased Premises, if any, to evidence the issuance and effectiveness of the policy, the amount and character of the coverage with respect to the Leased Premises and the presence in the policy of provisions of the character required in the above sections of this Paragraph 14.

(g)   In the event of any casualty loss exceeding $100,000, Tenant shall give Landlord immediate notice thereof. If under the provisions of Paragraph 14(h), Tenant is not obligated to restore the Leased Premises, Landlord and Lender are hereby authorized to adjust, collect and compromise, in Lender or Landlord's name, in that order, all claims under any of the insurance policies required by this Paragraph 14 (except the public liability and worker's compensation insurance) and to execute and deliver all necessary proofs of loss, receipts, vouchers and releases required by the insurers.  Tenant agrees to sign, upon request of Landlord or Lender, all such proofs of loss, receipts, vouchers and releases.  At all other times, Tenant shall adjust, collect and compromise any and all such claims, with the consent of Lender and Landlord, not to be unreasonably withheld or delayed and Landlord and Lender shall have the right to join with Tenant therein.  If the estimated cost of Restoration or repair shall be Five Hundred Thousand ($500,000.00) Dollars or less, all proceeds of any insurance

38

required under clauses (i), (iv), (v) (and (vi) if requested by
Lender) of Paragraph 14(a) shall be payable to Tenant, provided
that Tenant at such time shall have a tangible net worth of not
less than One Hundred Million ($100,000,000.00) Dollars as
determined in accordance with generally accepted accounting
principles, consistently applied, and in all other events to a
Trustee which shall be a federally insured bank or other
financial institution, selected by Landlord and Tenant and
reasonably satisfactory to Lender (the "Trustee"). If the Leased
Premises shall be covered by a Mortgage, Lender, if it so
desires, shall be the Trustee.  Each insurer is hereby authorized
and directed to make payment under said policies directly to such
Trustee instead of to Landlord and Tenant jointly; and Tenant
hereby appoints such Trustee as Tenant's attorney-in-fact to
endorse any draft therefor for the purposes set forth in this
Lease after approval by Tenant of such Trustee, if Trustee is
other than Lender.

           In the event of any casualty (whether or not
insured against) resulting in damage to the Leased Premises or
any part thereof, the Term shall nevertheless continue and there
shall be no abatement or reduction of Basic Rent, Additional Rent
or any other sums payable by Tenant hereunder, except as
hereinafter in Paragraph 14(h) specifically provided.  The Net
Proceeds of such insurance payment shall be retained by the
above-mentioned Trustee and, promptly after such casualty,
Tenant, as required in Paragraphs 11(a) and 12, shall commence

39

and diligently continue to perform the Restoration to the Leased
Premises.  Upon payment to the Trustee of such Net Proceeds, the
Trustee shall, to the extent available, make the Net Proceeds
available to Tenant for restoration, in accordance with the
provisions of Paragraph 15.  Tenant shall, whether or not the Net
Proceeds are sufficient for the purpose, promptly repair or
replace the Improvements and Equipment in accordance with the
provisions of Paragraph 11(a) and the Net Proceeds of such loss
shall thereupon be payable to Tenant, subject to the provisions
of Paragraph 15 hereof.

         (h)   If the Leased Premises are damaged to the
extent of 50% or more of the value thereof within such time as
less than two (2) years remain in any Term, Tenant shall have no
obligation to restore the Leased Premises if (i) it shall give
notice to Landlord of its intent not to so restore not later than
ninety (90) days after such casualty, (ii) no Event of Default is
then outstanding, and (iii) Tenant is carrying the insurance
required by the provisions of paragraph 14(a) (i), (iii), (iv),
(v) and (vi) or has self insured in accordance with paragraph
14(b), and in such event, all Net Proceeds payable in connection
with such casualty, including the hereinafter defined "Tenant
Insurance Payment" shall be delivered to Lender or Landlord, in
that order, and the Term of this Lease shall terminate upon such
payment and payment of all sums otherwise due and payable by
Tenant hereunder through the Basic Rent Payment Date stated in
Tenant's notice (the "Casualty Termination Date").  In the event

                              40

that any damage or destruction shall be subject to the self
insurance provisions provided for in 14(b), Tenant shall pay to
Landlord the amount of the proceeds that would have been payable
had such self insurance program not been in effect (the "Tenant
Insurance Payment").  Any notice given by Tenant to Landlord
under this Paragraph 14(h) shall be of no force or effect if (x)
any Event of Default is then outstanding or (y) the cost of
restoration of such damage or destruction exceeds the aggregate
of the (i) Net Proceeds payable to Landlord under insurance
policies required to be carried by Tenant under the provisions of
this Paragraph 14, and Tenant Insurance Payment and (ii) any
additional amounts paid by Tenant to Lender or Landlord, in that
order, at Tenant's option.

Notwithstanding anything to the contrary
hereinabove contained, if, prior to the Casualty Termination
Date, Landlord or the Trustee shall not have received the full
amount of Net Proceeds and Tenant Insurance Payment payable by
reason of the Casualty, the Casualty Termination Date shall
automatically be extended to the first Basic Rent Payment Date
after receipt by Landlord of the full amount of the Net Proceeds
and Tenant Insurance Payment.  Such extension shall occur
regardless of the reason for the failure of either Trustee or
Landlord to receive the full amount of the Net Proceeds and
Tenant Insurance Payment prior to the originally stated Casualty
Termination Date and Landlord shall have the right to contest the
amount of any Net Proceeds and Tenant Insurance Payment.

41

15.  <u>Restoration</u>.  Net Proceeds, Restoration Award and
Tenant Insurance Payment (the aggregate of which being herein
defined as the "<u>Restoration Fund</u>") shall be disbursed by the
Trustee in accordance with the following conditions:

(a)  If the cost of Restoration exceeds $250,000
prior to commencement of the Restoration, the architects,
contracts, contractors, plans and specifications for the
Restoration shall have been approved by Landlord, which approval
shall not be unreasonably withheld or delayed.

(b)  At the time of any disbursement, no Event of
Default shall exist and no mechanics' or materialmen's liens
shall have been filed and remain undischarged or unbonded.

(c) Disbursements shall be made from time to time
in an amount not exceeding the cost of the work completed since
the last disbursement upon receipt of (1) satisfactory evidence,
including architects' certificates of the stage of completion, of
the estimated cost of completion and of performance of the work
to date in a good and workmanlike manner in accordance with the
contracts, plans and specifications, (2) waivers of liens, (3) a
satisfactory bring down of title insurance, and (4) other
evidence of cost and payment so that Landlord can verify that the
amounts disbursed from time to time are represented by work that
is completed in place and free and clear of mechanics' lien
claims.

(d)  Each request for disbursement shall be
accompanied by a certificate of Tenant, signed by the President,

42

Treasurer or any Vice President of Tenant, describing the work
for which payment is requested, stating the cost incurred in
connection therewith and stating that Tenant has not previously
received payment for such work and the certificate to be
delivered by Tenant upon completion of the work shall, in
addition, state that the work has been completed and complies
with the applicable requirements of this Lease.

(e)   The Trustee may retain ten percent of the
Restoration Fund until the Restoration is fully completed in the
reasonable judgment of the Lender.

(f)   The Restoration Fund shall be kept in a
separate interest-bearing federally insured account by the
Trustee or by Lender.

(g) At all times the undisbursed balance of the
Restoration Fund held by Trustee plus any funds contributed
thereto by Tenant, at its option, shall be not less than the cost
of completing the Restoration, free and clear of all liens.

In addition, unless Tenant has validly
terminated this Lease pursuant to Paragraph 14(h), prior to
commencement of Restoration and at any time during Restoration,
if the estimated cost of Restoration, as reasonably determined by
Landlord, exceeds the amount of the Net Proceeds, the Restoration
Award and Tenant Insurance Payment available for such
Restoration, the amount of such excess shall be paid by Tenant to
the Trustee to be added to the Restoration Fund or Tenant shall
fund at its own expense the costs of such Restoration until the

43

remaining Restoration Fund is sufficient for the completion of
the Restoration.  Except for the payment to Landlord of the net
surplus award, referred to in Paragraph 13(c), any sum in the
Restoration Fund which remains in the Restoration Fund upon the
completion of Restoration shall be paid to Tenant.  For purposes
of determining the source of funds with respect to the
disposition of funds remaining after the completion of
Restoration, the Net Proceeds or the Restoration Award shall be
deemed to be disbursed prior to any amount added by Tenant.

16.   <u>Subordination to Financing</u>.

(a)   Subject to the following provisions of this
Paragraph 16(a), Tenant agrees that this Lease shall at all times
be subject and subordinate to the lien of any Mortgage, and
Tenant agrees, upon demand, without cost, to execute instruments
as may be required to further effectuate or confirm such
subordination.  So long as no Event of Default shall be
outstanding, Tenant's tenancy shall not be disturbed, nor shall
this Lease be affected by any default under such Mortgage, and in
the event of a foreclosure or other enforcement of any such
Mortgage, or sale in lieu thereof, the purchaser at such
foreclosure sale shall be bound to Tenant for the Term of this
Lease and any extensions thereof, the rights of Tenant hereunder
shall expressly survive, and this Lease shall in all respects
continue in full force and effect so long as Tenant fully
performs all of its obligations hereunder.  Tenant shall not be
named as a party defendant in any such foreclosure suit, except

44

as may be required by law.  Any Mortgage to which this Lease is
now or hereafter subordinate shall provide, in effect, that
during the time this Lease is in force insurance proceeds and
Restoration Award shall be permitted to be used for restoration
in accordance with the provisions of this Lease.  Notwithstanding
an Event of Default, the provisions of the Paragraph 16(a) shall
continue to apply for the benefit of any Qualified Subtenant
referred to in Paragraph 17 herein.

(b)  Notwithstanding the provisions of subdivision
(a) of this Paragraph 16, the holder of the Mortgage to which
this Lease is subject and subordinate, as provided in said
subdivision (a), shall have the right, at its sole option, at any
time, to subordinate and subject the Mortgage, in whole or in
part, to this Lease by recording a unilateral declaration to such
effect.

(c)  At any time prior to the expiration of the
Term, Tenant agrees, at the election and upon demand of any owner
of the Leased Premises, or of Lender who has granted non-
disturbance to Tenant pursuant to Paragraph 16(a) above, to
attorn, from time to time, to any such owner or Lender, upon the
then executory terms and conditions of this Lease, for the
remainder of the term originally demised in this Lease and for
any renewal term, provided that such owner or Lender, shall then
be entitled to possession of the Leased Premises subject to the
provisions of this Lease.  The provisions of this subdivision (c)
shall enure to the benefit of any such owner or Lender, shall

45

apply notwithstanding that, as a matter of law, this Lease may terminate upon the foreclosure of the Mortgage, shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions.  Tenant, any owner and Lender, however, upon demand of the other, hereby agrees to execute, from time to time, instruments in confirmation of the foregoing provisions of subdivisions (a) and (c), reasonably satisfactory to the requesting party acknowledging such subordination, non-disturbance and attornment as are provided in such subsections and setting forth the terms and conditions of its tenancy.

      (d)  Tenant agrees that, if requested by Landlord, Tenant shall, without charge, enter into (i) a Subordination, Non-Disturbance and Attornment Agreement reasonably requested by Lender and (ii) an agreement with Lender whereby Tenant shall agree for the benefit of Lender that Tenant will not, without in each case the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, (a) amend, modify, cancel or surrender the term of this Lease except as expressly permitted by the provisions of this Lease, or enter into any agreement with Landlord so to do, or (b) pay any installment of Basic Rent more than one (1) month in advance of the due date thereof or otherwise than in the manner provided for in this Lease.

      (e)  No Lender shall, upon assuming title to the Leased Premises, be liable for any act or omission of any prior

46

landlord (including Landlord), be subject to any offsets or
defenses which Tenant may have against any prior landlord, be
bound by any rent or additional rent paid for more than the then
current period to any prior landlord, or be bound by any
agreement or modification of this Lease made without such
Lender's consent after Tenant has been given written notice of
such Lender's interest.  Nothing herein shall be construed to be
in conflict with the provisions of Paragraph 7 hereof.

        17.  Assignment, Subleasing.

            (a)  The Leased Premises may be sublet in whole or
in part without the consent of Landlord.  Tenant shall not assign
its interest in this Lease without the prior written consent of
Landlord, which consent shall not be unreasonably withheld or
delayed on condition that the proposed assignee shall have
demonstrated sound business judgment and experience in the
business to be conducted in the Leased Premises.  The net worth,
credit and financial responsibility of the proposed assignee
shall not be considered by Landlord in determining whether to
grant or withhold its consent to the proposed assignment.  The
assignment of this Lease by Tenant named herein to a purchaser of
all or substantially all of the Circuit City Stores in the State,
shall not require the prior written consent of Landlord.
Assignment of this Lease by Tenant to a parent, subsidiary or
affiliate of Tenant shall not require the consent of Landlord.
Parent of Tenant shall mean any corporation which owns all or
substantially all of the outstanding shares of Tenant.  A

"subsidiary" of Tenant shall mean any corporation not less than fifty-one (51%) percent of whose outstanding voting stock at the time shall be owned by Tenant, and an "affiliate" of Tenant shall mean any corporation, partnership or other business entity which controls or is controlled by, or is under common control with Tenant.  The word "control" (including "controlled by," "under common control with" and "controlling") is used with respect to any corporation, partnership or other business entity, shall mean the possession of the power to direct or cause the direction of the management and policies of such corporation, partnership or other business entity, whether through the ownership of voting securities or contract.

(b)  Each sublease of the Leased Premises or any part thereof shall be subject and subordinate to the provisions of this Lease.  No assignment or sublease made as permitted by this Paragraph 17 or otherwise, shall affect or reduce any of the obligations of Tenant hereunder, and all such obligations shall continue in full force and effect as obligations of a principal and not as obligations of a guarantor, as if no assignment or sublease had been made.  No assignment or sublease shall impose any obligations on Landlord under this Lease except as herein otherwise provided.  Tenant agrees that in the case of an assignment, Tenant shall, within fifteen (15) days after the execution and delivery of any such assignment, deliver to Landlord (i) a duplicate original of such assignment in recordable form and (ii) an agreement executed and acknowledged

48

by the assignee in recordable form wherein the assignee shall agree to assume and agree to observe and perform all of the terms and provisions of this Lease on the part of the Tenant to be observed and performed from and after the date of such assignment, and, in the case of a sublease, Tenant shall, within fifteen (15) days after the execution and delivery of such sublease, deliver to Landlord a duplicate original of such sublease.

Upon the occurrence of an Event of Default under this Lease, Landlord shall have the right to collect and enjoy all rents and other sums of money payable under any sublease of any of the Leased Premises, and Tenant hereby irrevocably and unconditionally assigns such rents and money to Landlord, which assignment may be exercised upon and after (but not before) the occurrence of an Event of Default. Tenant shall not mortgage or pledge this Lease, and any such mortgage or pledge made in violation of this Paragraph shall be void.

Notwithstanding any assignment or subletting, Tenant shall continue to remain liable and responsible for the payment of the Basic Rent and Additional Rent and the performance of all its other obligations under this lease. Each sublease of the Leased Premises except for those with respect to which Landlord is required to grant nondisturbance as set forth herein shall (x) terminate upon the termination of this Lease prior to the Expiration Date of the Term, (y) if not sooner terminated, terminate and expire at least one (1) day prior to the Expiration

49

Date of the Term, and (z) be subject and subordinate to the terms and conditions of this Lease.

(c)   Landlord agrees for itself, its successors and assigns, promptly upon Tenant's request, to enter into a nondisturbance and attornment agreement with any Qualified Subtenant, as defined below, of the Leased Premises, upon the terms described below, pursuant to which Landlord shall agree, for so long as such Qualified Subtenant is not in default under its Qualified Sublease, as defined below, that the Qualified Sublease shall not be terminated as a result of any termination of this Lease and such Qualified Subtenant's use and occupancy of the Leased Premises shall not be disturbed by Landlord, and pursuant to which such Qualified Subtenant shall agree to attorn to Landlord or its successor as landlord under the Qualified Sublease upon any termination of this Lease.  Said agreement shall further provide that nothing therein contained shall impose any obligation on the Landlord, the then owner or the Lender to (a) return or apply any security deposited under such sublease, unless such security shall be transferred and turned over to the Landlord, such then owner or Lender or its Successors, (b) expend any sums to make any installations or alterations provided to be made by the Landlord under said sublease or reimburse the Tenant under said sublease for any installations or alterations made by it, (c) be liable for any act or omission of any prior landlord except that the foregoing shall not relieve Landlord from the remedying of any continuing default of the prior landlord

50

relating to its repair, maintenance or service obligations under
the Qualified Sublease, (d) subject to any offsets or defense
which such subtenant might have against any prior landlord, (e)
bound by any rent or additional rent which such subtenant might
have paid for more than the current rent to any prior landlord,
or (f) bound by any amendment or modification of the sublease
made without the prior written consent of Landlord, the terms of
which amendment or modification if included in the original
sublease would have prevented such sublease from meeting the
criteria for a Qualified Sublease.  Any subtenant under a
Qualified Sublease, as defined below, is a "Qualified Subtenant."
A "Qualified Sublease" shall be any sublease of the entire Leased
Premises, for a term no shorter than the remaining term hereunder
less one day, pursuant to which the subtenant thereunder had, at
the time such sublease was entered into, a Standard & Poor's
investment grade rating of BBB- or a Moody's investment grade
rating of Baa3 (or equivalent rating of any other generally
recognized rating organization) and was not on credit watch and
pursuant to which the subtenant thereunder is required to fulfill
all of the obligations of Tenant hereunder including, without
limitation, payment of rent at a rate equal to or greater than
the rate at which Tenant is required to pay rent (including all
Additional Rent) hereunder.

        18.  Permitted Contests.  After prior written notice to
Landlord, Tenant shall not be required to (i) pay any Imposition,
(ii) comply with any Legal Requirement, (iii) discharge or remove

51

any lien referred to in Paragraphs 9 or 12, or (iv) take any
action with respect to any encroachment, violation, hindrance,
obstruction or impairment referred to in Paragraph 11(b) so long
as Tenant shall contest, in good faith and at its expense, the
existence, the amount or the validity thereof, the amount of the
damages caused thereby, or the extent of its or Landlord's
liability therefor, by appropriate proceedings which shall
operate during the pendency thereof to prevent (a) the collection
of, or other realization upon, the Imposition or lien so
contested, (b) the sale, forfeiture or loss of any of the Leased
Premises, any Basic Rent or any Additional Rent to satisfy the
same or to pay any damages caused by the violation of any such
Legal Requirement or by any such encroachment, violation,
hindrance, obstruction or impairment, (c) any interference with
the use or occupancy of any of the Leased Premises, (d) any
interference with the payment of any Basic Rent or any Additional
Rent, (e) the cancellation of any fire or other insurance policy.
In no event shall Tenant pursue any contest with respect to any
Imposition, Legal Requirement, lien, encroachment, violation,
hindrance, obstruction or impairment referred to above in such
manner that exposes Landlord to civil or criminal liability,
penalty or sanction for which Tenant has not made provisions
reasonably acceptable to Landlord and Lender.  Tenant shall
provide Lender or Landlord in that order as security for such
contest, an amount of cash or bond equal to 125% of the amount
being contested, or other security satisfactory in the sole but

reasonable opinion of Lender or Landlord in that order, in assuring the payment, compliance, discharge, removal or other action, including all costs, attorneys' fees, interest and penalties, in the event that the contest is unsuccessful. No such security shall be required if the amount involved in the contest shall not exceed one tenth (1/10th) of one percent (1%) of the tangible net worth of Tenant, computed in accordance with generally accepted accounting principles consistently applied. While any such proceedings are pending and the required security is held by Lender or Landlord, in that order, Lender or Landlord, as the case may be, shall not have the right to pay, remove or cause to be discharged the Imposition or lien thereby being contested unless any one or more of the conditions in subdivisions (a) through (f) shall not be prevented during the pendency of the contest. Tenant further agrees that each such contest shall be promptly and diligently prosecuted to a final conclusion, except that Tenant shall, so long as all of the conditions of the first sentence of this Paragraph are at all times complied with, have the right to attempt to settle or compromise such contest through negotiations. Tenant shall pay and save Lender and Landlord harmless against any and all losses, judgments, decrees and costs (including all attorneys' fees and expenses) in connection with any such contest and shall, promptly after the final determination of such contest, fully pay and discharge the amounts which shall be levied, assessed, charged or imposed or be determined to be payable therein or in connection

53

therewith, together with all penalties, fines, interest, costs and expenses thereof or in connection therewith, and perform all acts the performance of which shall be ordered or decreed as a result thereof.

19.  Conditional Limitations; Default Provisions.

(a)  The occurrence of any one or more of the following events (any such event being specified herein as a "failure" or "default") shall constitute an Event of Default under this Lease:  (i) a failure by Tenant to make (regardless of the pendency of any bankruptcy, reorganization, receivership, insolvency or other proceedings, in law, in equity or before any administrative tribunal, which had or might have the effect of preventing Tenant from complying with the provisions of this Lease) (x) any payment of Basic Rent which continues unremedied for a period of five (5) days after notice ("Nonpayment Notice") thereof from Landlord or Lender or (y) a failure by Tenant to make payment of Additional Rent or other sum herein required to be paid by Tenant and such default shall continue for a period of fifteen (15) days after notice by Landlord to Tenant; (ii) failure by Tenant to duly perform and observe, or a violation or breach, of any other provision hereof and such default shall continue for a period of thirty (30) days after notice thereof from Landlord or Lender or if such default cannot be cured within such period of thirty (30) days, such period shall be extended for such longer time as reasonably necessary provided that Tenant has commenced to cure such default within said period of thirty

54

(30) days and is actively, diligently and in good faith proceeding with continuity to remedy such default; (iii) Tenant shall (a) voluntarily be adjudicated a bankrupt or insolvent, (b) or consent to the appointment of a receiver or trustee for itself or for any of the Leased Premises, (c) a petition seeking relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, or (d) a general assignment for the benefit of creditors; (iv) a court shall enter an order, judgment or decree appointing, with the consent of Tenant, a receiver or trustee for it or for any of the Leased Premises or approving a petition filed against Tenant which seeks relief under the bankruptcy or other similar laws of the United States, any state or any jurisdiction, and such order, judgment or decree shall remain in force, undischarged or unstayed, sixty days after it is entered; (v) Tenant named herein shall in any insolvency proceedings be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution; or (vi) the estate or interest of Tenant in any of the Leased Premises shall be levied upon or attached in any proceeding and such estate or interest is about to be sold or transferred or such process shall not be vacated or discharged within sixty (60) days after such levy or attachment.

(b)   If any Event of Default shall have occurred, Landlord shall have the right at its option, then or at any time thereafter, to do any one or more of the following without demand upon or notice to Tenant:

(i)  Landlord may give Tenant notice of
Landlord's intention to terminate this Lease on a date specified
in such notice.  Upon the date therein specified, the Term and
the estate hereby granted and all rights of Tenant hereunder
shall expire and terminate as if such date were the date
hereinabove fixed for the expiration of the Term, but Tenant
shall remain liable for all its obligations hereunder through
such date, including its liability for Basic Rent and Additional
Rent as hereinafter provided.

(ii) Landlord may, whether or not the Term of
this Lease shall have been terminated pursuant to clause (i)
above, (a) give Tenant notice to surrender any of the Leased
Premises to Landlord immediately or on a date specified in such
notice, at which time Tenant shall surrender and deliver
possession of the Leased Premises to Landlord or (b) reenter and
repossess any of the Leased Premises by force, summary
proceedings, ejectment or any other means or procedure.  Upon or
at any time after taking possession of any of the Leased
Premises, Landlord may remove any persons or property therefrom.
Landlord shall be under no liability for or by reason of any such
entry, repossession or removal.  No such entry or repossession
shall be construed as an election by Landlord to terminate this
Lease unless Landlord gives a written notice of such intention to
Tenant pursuant to clause (i) above.

(iii)  After repossession of any of the
Leased Premises pursuant to clause (ii) above, whether or not

56

this Lease shall have been terminated pursuant to clause (i) above, Landlord shall have the right (but shall be under no obligation) to relet the Leased Premises or any part thereof to such tenant or tenants for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) for such rent, on such conditions (which may include concessions or free rent) and for such uses as Landlord, in its reasonable discretion, may determine; and Landlord may collect and receive any rents payable by reason of such reletting.  Landlord may make such Alterations as Landlord in its reasonable discretion may deem advisable. Tenant agrees to pay Landlord, as Additional Rent, immediately upon demand, all reasonable expenses incurred by Landlord in obtaining possession, in performing Alterations and in reletting any of the Leased Premises, including fees and commissions of attorneys, architects, agents and brokers.

(iv) If Tenant shall fail to make payment of any installment of Basic Rent or any Additional Rent after the date when each such payment is due, Tenant shall pay to Landlord, in addition to such installment of Basic Rent plus Late Charge thereon or Additional Rent plus the hereinafter defined Default Rate thereon, as the case may be, a sum equal to two (2%) percent per annum above the therein current Prime Rate, as hereinafter defined, of the amount unpaid (the "Default Rate") computed from the date such payment of Basic Rent or Additional Rent was due to and including the date of payment.  The term "prime rate" shall

57

mean the rate of interest announced publicly by Citibank, N.A. or
its successor, from time to time, as Citibank, N.A.'s or such
successor's base rate, or if there is no such base rate, then the
rate of interest charged by Citibank, N.A. or such successor to
its most creditworthy customers on commercial loans having a
ninety (90) day duration.

        (v)    Landlord may exercise any other right or
remedy now or hereafter existing by law or in equity.

        (c)    No expiration or termination of this Lease
pursuant to Paragraph 19(b)(i) or any other provision of this
Lease, by operation of law, repossession of the Leased Premises
pursuant to Paragraph 19(b)(ii) or otherwise, or reletting of any
of the Leased Premises pursuant to Paragraph 19(b)(iii), shall
relieve Tenant of any of its liabilities and obligations
hereunder, including the liability for Basic and Additional Rent,
all of which shall survive such expiration, termination,
repossession or reletting.

        (d)    In the event of any expiration or termination
of this Lease or repossession of any of the Leased Premises by
reason of the occurrence of an Event of Default, Tenant shall pay
to Landlord Basic Rent, Additional Rent and all other sums
required to be paid by Tenant to and including the date of such
expiration, termination or repossession and, thereafter, Tenant
shall, until the end of what would have been the Term in the
absence of such expiration, termination or repossession, and
whether or not any of the Leased Premises shall have been relet,

58

be liable to Landlord for and shall pay to Landlord as liquidated
and agreed current damages (i) Basic Rent, Additional Rent and
all other sums which would be payable under this Lease by Tenant
in the absence of such expiration, termination or repossession,
less (ii) the net proceeds, if any, of any reletting pursuant to
paragraph 19(b)(iii), after deducting from such proceeds all of
Landlord's reasonable expenses in connection with such reletting
(including all repossession costs, brokerage commissions, legal
expenses, attorneys' fees, employees' expenses, costs of
Alterations and expenses of preparation for reletting).  Tenant
hereby agrees to be and remain liable for all sums aforesaid, and
Landlord may recover such damages from Tenant and institute and
maintain successive actions or legal proceedings against Tenant
for the recovery of such damages.  Nothing herein contained shall
be deemed to require Landlord to wait to begin such action or
other legal proceedings until the date when the Term would have
expired by limitation had there been no such Event of Default.

        (e)    At any time after such expiration or sooner
termination of this Lease pursuant to Paragraph 19 or pursuant to
law or if Landlord shall have reentered the Leased Premises, as
the case may be, whether or not Landlord shall have recovered any
amounts under subdivision (b)(iv) of this Paragraph 19, Landlord
shall be entitled to recover from Tenant and Tenant shall pay to
Landlord, on demand, as and for liquidated and agreed final
damages for Tenant's default, the amount by which the Basic Rent,
and all Additional Rent reserved hereunder for the unexpired

59

portion of the term demised herein as if the Lease had not
expired or been terminated exceeds the then fair and reasonable
rental value of the Leased Premises for the same period
discounted to present worth at the Default Rate, minus any such
monthly deficiencies previously recovered from Tenant under
subdivision (b)(iii) of this Paragraph 19.

(f)    If any statute or rule of law governing a
proceeding in which such liquidated final damages provided for in
subdivision (e) of this Paragraph 19 are to be proved shall
validly limit the amount thereof to an amount less than the
amount above agreed upon, Landlord shall be entitled to the
maximum amount allowable under such statute or rule of law.

20.    <u>Additional Rights of Landlord and Tenant</u>.

(a)    No right or remedy herein conferred upon or
reserved to Landlord is intended to be exclusive of any other
right or remedy and each and every right and remedy shall be
cumulative and in addition to any other right or remedy contained
in this Lease.  No delay or failure by Landlord to enforce its
rights hereunder shall be construed as a waiver, modification or
relinquishment thereof.  In addition to the other remedies
provided in this Lease, Landlord shall be entitled, to the extent
permitted by applicable law, to injunctive relief in case of the
violation or attempted or threatened violation of any of the
provisions of this Lease, or to specific performance of any of
the provisions of this Lease.

(b)   Tenant hereby waives and surrenders for
itself and all those claiming under it, including creditors of
all kinds, any right and privilege which it or any of them may
have under any present or future law to redeem any of the Leased
Premises or to have a continuance of this Lease after termination
of this Lease or of Tenant's right of occupancy or possession
pursuant to any court order or any provision hereof.

(c)   Landlord hereby waives any right to distrain
Trade Fixtures or any property of Tenant and any Landlord's lien
or similar lien upon Trade Fixtures and any other property of
Tenant regardless of whether such lien is created or otherwise.
Landlord agrees, at the request of Tenant, to execute a waiver of
any Landlord's or similar lien for the benefit of any present or
future holder of a security interest in or lessor of any of Trade
Fixtures or any other personal property of Tenant;

(d)   Landlord acknowledges and agrees in the
future to acknowledge (in a written form reasonably satisfactory
to Tenant) to such persons and entities at such times and for
such purposes as Tenant may reasonably request that Trade
Fixtures is Tenant's property and not part of Improvements
(regardless of whether or to what extent such Trade Fixtures are
affixed to the Improvements) or otherwise subject to the terms of
this Lease.

(e)   Tenant shall pay to Landlord as Additional
Rent all the reasonable expenses incurred by Landlord in
connection with any Default or Event of Default or the exercise

61

of any remedy by reason of a Default or Event of Default,
including reasonable attorneys' fees and expenses and shall pay
to Lender all costs and expenses incurred by Lender in connection
with any Default or Event of Default.  If Landlord shall be made
a party to any litigation commenced against Tenant or any
litigation pertaining to this Lease or any of the Leased
Premises, at the option of Landlord, Tenant, at its expense,
shall provide Landlord with counsel approved by Landlord and
shall pay all reasonable costs incurred or paid by Landlord in
connection with such litigation.

      21.  <u>Notices</u>.  All notices, demands, requests,
consents, approvals, offers, statements and other instruments or
communications required or permitted to be given pursuant to the
provisions of this Lease (collectively "Notice" or "Notices")
shall be in writing and shall be deemed to have been given for
all purposes (i) three (3) days after having been sent by United
States mail, by registered or certified mail, return receipt
requested, postage prepaid, addressed to the other party at its
address as stated below, or (ii) one (1) day after having been
sent by Federal Express or other nationally recognized air
courier service.

To the Addresses stated below:

If to Landlord:

> Circuit Investors - Gurnee Limited
> Partnership
> 10000 North Central Expressway
> Suite 1000
> Dallas, Texas  75231
> Attention:  Gil J. Besing

With a copy to:

> Emanuel Lubin, Esquire
> Goldfarb & Fleece
> 345 Park Avenue
> New York, New York  10154

If to Tenant:

> Circuit City Stores, Inc.
> 9950 Mayland Drive
> Richmond, Virginia 23233-1464
> Attention:  Corporate Secretary

With a copy to:

> McGuire, Woods, Battle & Boothe
> One James Center
> Richmond, Virginia 23219
> Attention:  Robert L. Burrus, Jr.

If any Lender shall have advised Tenant by Notice in the manner aforesaid that it is the holder of a Mortgage and stating in said Notice its address for the receipt of Notices, then simultaneously with the giving of any Notice by Tenant to Landlord, Tenant shall serve a copy of such Notice upon Lender in the manner aforesaid.  For the purposes of this Paragraph, any party may substitute its address by giving fifteen days' notice to the other party in the manner provided above.

22.  <u>Estoppel Certificates</u>.  Landlord and Tenant shall, at any time and from time to time, upon not less than twenty days' prior written request by the other, execute, acknowledge

and deliver to the other a statement in writing, executed by
Landlord or Tenant or if other than an individual by a President,
Vice President or authorized general partner, principal officer
or agent certifying (i) that this Lease is unmodified and in full
effect (or, if there have been modifications, that this Lease is
in full effect as modified, setting forth such modifications),
(ii) the dates to which Basic Rent, payable hereunder has been
paid, (iii) that to the knowledge of the signer of such
certificate no Default by either Landlord or Tenant exists
hereunder or specifying each such Default of which the signer may
have knowledge; (iv) the remaining Term hereof; and (v) with
respect to a certificate signed on behalf of Tenant, that to the
knowledge of the signer of such certificate, there are no
proceedings pending or threatened against Tenant before or by any
court or administrative agency which if adversely decided would
materially and adversely affect the financial condition and
operations of Tenant or if any such proceedings are pending or
threatened to said signer's knowledge, specifying and describing
the same.  It is intended that any such statements may be relied
upon by Lender, the recipient of such statements or their
assignees or by any prospective purchaser, assignee or subtenant
of the Leased Premises.

        23.  Surrender and Holding Over.  Upon the expiration
or earlier termination of this Lease, Tenant shall peaceably
leave and surrender the Leased Premises (except as to any portion
thereof with respect to which this Lease has previously

terminated) to Landlord in the same condition in which the Leased Premises were originally received from Landlord at the commencement of this Lease, except as to any repair or Alteration as permitted or required by any provision of this Lease, and except for ordinary wear and tear and damage by fire, casualty or condemnation with which Tenant is not required to repair hereunder.  Tenant shall remove from the Leased Premises on or prior to such expiration or earlier termination Tenant's Trade Fixtures and personal property which are owned by Tenant or third parties other than Landlord, and Tenant at its expense shall, on or prior to such expiration or earlier Termination, repair any damage caused by such removal.  Tenant's Trade Fixtures and personal property not so removed at the end of the Term or within thirty days after the earlier termination of the Term for any reason whatsoever shall become the property of Landlord, and Landlord may thereafter cause such property to be removed from the Leased Premises.  The cost of removing and disposing of such property and repairing any damage to any of the Leased Premises caused by such removal shall be borne by Tenant.  Landlord shall not in any manner or to any extent be obligated to reimburse Tenant for any property which becomes the property of Landlord as a result of such expiration or earlier termination.

Any holding over by Tenant of the Leased Premises after the expiration or earlier termination of the term of this Lease or any extensions thereof, with the consent of Landlord, shall operate and be construed as tenancy from month to month

only, at one hundred fifty percent (150%) of the Basic Rent
reserved herein and upon the same terms and conditions as
contained in this Lease.  Notwithstanding the foregoing, any
holding over without Landlord's consent shall entitle Landlord,
in addition to collecting Basic Rent at a rate of one hundred
fifty percent (150%) thereof, to exercise all rights and remedies
provided by law or in equity, including the remedies of Paragraph
19(b).

     24.  <u>No Merger of Title</u>.  There shall be no merger of
this Lease nor of the leasehold estate created by this Lease with
the fee estate in or ownership of any of the Leased Premises by
reason of the fact that the same person, corporation, firm or
other entity may acquire or hold or own, directly or indirectly,
(a) this Lease or the leasehold estate created by this Lease or
any interest in this Lease or in such leasehold estate and (b)
the fee estate or ownership of any of the Leased Premises or any
interest in such fee estate or ownership.  No such merger shall
occur unless and until all persons, corporations, firms and other
entities having any interest in (i) this Lease or the leasehold
estate created by this Lease and (ii) the fee estate in or
ownership of the Leased Premises or any part thereof sought to be
merged shall join in a written instrument effecting such merger
and shall duly record the same.

     25.  <u>Definition of Landlord</u>.  Anything contained herein
to the contrary notwithstanding, any claim based on or in respect
of any liability of Landlord under this Lease shall be enforced

only against the Landlord individually and personally and shall not be enforced against the Leased Premises.

The term "Landlord" as used in this Lease so far as covenants or obligations on the part of Landlord are concerned, shall be limited to mean and include only the owner or owners of the Leased Premises or holder of the Mortgage in possession at the time in question of the Leased Premises and in the event of any transfer or transfers of the title of the Leased Premises, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer and conveyance of all personal liability as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed.

26.  Hazardous Substances.  Tenant represents and warrants that it will not on, about, or under the Leased Premises, make, treat or dispose of any "hazardous substances" as that term is defined in the Comprehensive Environmental Response, Compensation and Liability Act, and the rules and regulations promulgated pursuant thereto, as from time to time amended, 42 U.S.C. § 9601 et seq. (the "Act"), but the foregoing shall not prevent the use of any such substances in accordance with applicable laws and regulations and Tenant represents and warrants that it will at all times comply with the Act and any other federal, state or local laws, rules or regulations governing Hazardous Materials.  Hazardous Materials as used

67

herein shall include, without limitation, all chemicals,
petroleum, crude oil or any fraction thereof, hydrocarbons,
polychlorinated biphenyls (PCBs), asbestos, asbestos-containing
materials and/or products, urea formaldehyde, or any substances
which are classified as "hazardous" or "toxic" under the Act;
hazardous waste as defined under the Solid Waste Disposal Act, as
amended 42 U.S.C. § 6901; air pollutants regulated under the
Clean Air Act, as amended, 42 U.S.C. § 7401, *et seq.*; pollutants
as defined under the Clean Water Act, as amended, 33 U.S.C. §
1251, *et seq.*, any pesticide as defined by Federal Insecticide,
Fungicide, and Rodenticide Act, as amended, 7 U.S.C. § 136, *et
seq.*, any hazardous chemical substance or mixture or imminently
hazardous substance or mixture regulated by the Toxic Substances
Control Act, as amended, 15 U.S.C. § 2601, *et seq.*, any substance
listed in the United States Department of Transportation Table at
45 CFR 172.101; any chemicals included in regulations promulgated
under the above listed statutes; any explosives, radioactive
material, and any chemical regulated by state statutes similar to
the federal statutes listed above and regulations promulgated
under such state statutes.

        To the extent required by the Act and/or any
federal, state or local laws, rules or regulations governing
Hazardous Materials, Tenant shall remove any hazardous substances
(as defined in the Act) and Hazardous Materials (as defined
above) whether now or hereafter existing on the Leased Premises
and whether or not arising out of or in any manner connected with

Tenant's occupancy of the Leased Premises during the Initial Term or any extension or renewal Term thereof, Tenant shall and hereby does agree to defend, indemnify and hold Lender and Landlord, their officers, directors, shareholders, partners and employees harmless from and against any and all causes of actions, suits, demands or judgments of any nature whatsoever, losses, damages, penalties, expenses, fees, claims, costs (including response and remedial costs), and liabilities, including, but not limited to, attorneys' fees and costs of litigation, arising out of or in any manner connected with (i) the violation of any applicable federal, state or local environmental law with respect to the Leased Premises; (ii) the "release" or "threatened release" of or failure to remove, as required by this Paragraph 26, "hazardous substances" (as defined in the Act) and Hazardous Materials (as defined above) from the Leased Premises or any portion or portions thereof, now or hereafter existing during the Initial Term and any extension or renewal Term whether or not arising out of or in any manner connected with Tenants' occupancy of the Leased Premises during the Initial Term or any extension or renewal Term.

The Tenant represents and warrants that it will not install any underground storage tank without specific, prior written approval from the Landlord. The Tenant will not store combustible or flammable materials on the Leased Premises in violation of the Act and any other federal, state or local laws, rules or regulations governing Hazardous Materials.

27.    Entry by Landlord.    Landlord and its authorized
representatives shall have the right upon reasonable notice
(which shall be not less than 48 hours except in the case of
emergency) to enter the Leased Premises at all reasonable
business hours, and at all other times in the event of an
emergency), (a) the purpose of inspecting the same or for the
purpose of doing any work under Paragraph 11(c), and may take all
such action thereon as may be necessary or appropriate for any
such purpose (but nothing contained in this Lease or otherwise
shall create or imply any duty upon the part of Landlord to make
any such inspection or do any such work), and (b) the purpose of
showing the Leased Premises to prospective purchasers and
mortgagees and, at any time within twelve (12) months prior to
the expiration of the term of this Lease for the purpose of
showing the same to prospective tenants.    No such entry shall
constitute an eviction of Tenant but any such entry shall be done
by Landlord in such reasonable manner as to minimize any
disruption of Tenant's business operation.

28.    Statements.    Tenant named herein shall submit to
Lender and Landlord (i) within 45 days of the end of each
quarter, quarterly balance sheets, income statements and
statements of change for Tenant named herein; (ii) within 90 days
of the end of each year, annual balance sheets, income statements
and statements of change in financial position for Tenant named
herein.    Quarterly 10Qs as filed with the Securities and Exchange
Commission shall satisfy the requirements contained in (i)

70

herein.  Copies of the 10Ks filed with the Securities and
Exchange Commission will satisfy the requirement contained in
(ii) herein.  The obligations of Tenant named herein shall
continue whether or not this Lease shall have been assigned.

29.  <u>No Usury</u>.  The intention of the parties being to
conform strictly to the usury laws now in force in the State,
whenever any provision herein provides for payment by Tenant to
Landlord of interest at a rate in excess of the legal rate
permitted to be charged, such rate herein provided to be paid
shall be deemed reduced to such legal rate.

30.  <u>Broker</u>.  Landlord and Tenant represent and warrant
to each other that neither party negotiated with any broker in
connection with this Lease and that this Lease was negotiated
directly by Landlord and Tenant.

31.  <u>Separability</u>.  Each and every covenant and
agreement contained in this Lease is, and shall be construed to
be, a separate and independent covenant and agreement, and the
breach of any such covenant or agreement by Landlord shall not
discharge or relieve Tenant from its obligation to perform the
same.  If any term or provision of this Lease or the application
thereof to any provision of this Lease or the application thereof
to any person or circumstances shall to any extent be invalid and
unenforceable, the remainder of this Lease, or the application of
such term or provision to person or circumstances other than
those as to which it is invalid or unenforceable, shall not be

71

affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the extent permitted by law.

32. <u>Completion of Construction of Improvements</u>. If on the Commencement Date (i) construction or alteration of the Improvements shall not have been completed, or (ii) the permanent Certificate of Occupancy or any other required governmental certificates or any other required certificates, permits or licenses, which will permit the Leased Premises to be legally occupied for its intended use, shall not have been issued, Tenant agrees promptly after the Commencement Date to complete such construction and alteration and to obtain the permanent Certificate of Occupancy and such certificates, permits and licenses, and to forward to Landlord copies thereof promptly after their receipt by Tenant. Basic Rent is payable by Tenant to Landlord whether or not construction is completed at the date hereof. In addition, if any mechanic's, laborer's, materialman's, vendor's or other lien or chattel mortgage, conditional sale or other title retention agreement be filed against the Leased Premises after the Commencement Date, Tenant agrees to discharge such liens promptly after filing thereof.

33. <u>Tenant to Comply With Reciprocal Easement Agreement</u>. Tenant agrees that Tenant is obligated to and shall perform all obligations of the owner of the Leased Premises and pay all expenses which the owner of the Leased Premises may be required to pay in accordance with any reciprocal easement agreement or any other agreement or document of record now

72

affecting the Leased Premises, herein referred to collectively as
"REA", and that Tenant shall comply with all of the terms and
conditions of the REA during the term of this Lease. Tenant
shall be deemed the "Owner" of the Leased Premises for purposes
of the REA. Tenant further covenants and agrees to indemnify,
defend and hold harmless Landlord and Lender against any claim,
loss or damage suffered by Landlord or Lender by reason of
Tenant's failure to perform any obligations or pay any expenses
as required under any REA or comply with the terms and conditions
of any REA as hereinabove provided during the term of this Lease.

34. <u>Miscellaneous</u>. The paragraph headings in this
Lease are used only for convenience in finding the subject
matters and are not part of this Lease or to be used in
determining the intent of the parties or otherwise interpreting
this Lease. As used in this Lease the singular shall include the
plural as the context requires, and the following words and
phrases shall have the following meanings: (i) "including"
shall mean "including but not limited to"; (ii) "provisions"
shall mean "provisions, terms, agreements, covenants and/or
conditions"; (iii) "lien" shall mean "lien, charge, encumbrance,
title retention agreement, pledge, security interest, mortgage
and/or deed of trust"; (iv) "obligation" shall mean "obligation,
duty, agreement, liability, covenant or condition"; (v) "any of
the Leased Premises" shall mean "the Leased Premises or any part
thereof or interest therein"; (vi) "any of the Land" shall mean
"the Land or any part thereof or interest therein"; (vii) "any of

73

the Improvements" shall mean "the Improvements or any part
thereof or interest therein"; (viii) "any of the Equipment" shall
mean "the Equipment or any part thereof or interest therein"; and
(ix) "any of the Adjoining Property" shall mean "the Adjoining
Property or any part thereof or interest therein".  Any act which
Landlord is permitted to perform under this Lease may be
performed at any time and from time to time by Landlord or any
person or entity designated by Landlord.  Any act which Tenant is
required to perform under this Lease shall be performed at
Tenant's sole cost and expense.  Except as otherwise set forth
herein, Landlord has the right to refuse to grant its consent
whenever such consent is required under this Lease.  This Lease
may be modified, amended, discharged or waived only by an
agreement in writing signed by the party against whom enforcement
of any such modification, amendment, discharge or waiver is
sought.  The covenants of this Lease shall run with the Land and
bind Tenant, the heirs, distributees, personal representatives,
successors and permitted assigns of Tenant and all present and
subsequent encumbrances and subtenants of any of the Leased
Premises, and shall inure to the benefit of and bind Landlord,
its successors and assigns.  In the event there is more than one
Tenant, the obligation of each shall be joint and several.  In
the event any one or more of the provisions contained in this
Lease shall for any reason be held to be invalid, illegal or
unenforceable in any respect, such invalidity, illegality or
unenforceability shall not affect any other provision of this

74

Lease but this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  This Lease will be simultaneously executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.  This Lease shall be governed by and construed according to the laws of the State.

35.  <u>Additional Rent</u>.  The term "Additional Rent" as used herein shall also include all amounts, costs, expenses, liabilities and obligations which Tenant herein assumes and agrees to pay and will reimburse Landlord for any payments thereof made by Landlord, and, in the event of any failure by Tenant to pay any of the same, subject to the notice provisions of Paragraph 19(a)(y) Landlord shall have all rights, powers and remedies provided herein or by law as in the case of nonpayment of Basic Rent.

IN WITNESS WHEREOF, Landlord and Tenant have caused this instrument to be executed under seal as of the day and year first above written.

LANDLORD:

CIRCUIT INVESTORS - GURNEE
LIMITED PARTNERSHIP

By Circuit General Partner #4,
Inc., General Partner

By: _____

TENANT:

CIRCUIT CITY STORES, INC.

By: _____*Philip Dunn*_____

1097/circuit/ccp4/lease.005

EXHIBIT A

PARCEL 1:    LOT 3 IN BLOCK "A" IN GRAND HUNT CENTER-PHASE I
SUBDIVISION, BEING A SUBDIVISION OF PART OF THE EAST 93 RODS
(1534.50 FEET) OF THE NORTHEAST 1/4 OF SECTION 17, TOWNSHIP 45
NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO
THE PLAT THEREOF RECORDED JUNE 11, 1993 AS DOCUMENT 3346747, IN
LAKE COUNTY, ILLINOIS.

PARCEL 2:    SERVICE ROAD EASEMENT FOR THE BENEFIT OF PARCEL 1 OVER
A PORTION OF LOT 1 IN BLOCK "A" IN GRAND HUNT CENTER-PHASE I
SUBDIVISION, AS GRANTED BY INSTRUMENT RECORDED JUNE 11, 1993 AS
DOCUMENT 3346752, IN LAKE COUNTY, ILLINOIS.

PARCEL 3:    EASEMENT FOR THE BENEFIT OF PARCEL 1, FOR INGRESS AND
EGRESS, PARKING AND UTILITIES "EASEMENT PROPERTY", CREATED BY
OPERATION AND EASEMENT AGREEMENT MADE BY DAYTON HUDSON CORPORATION
AND HUNT CLUB ROAD PROPERTIES, DATED OCTOBER 28, 1992 AND RECORDED
NOVEMBER 2, 1992 AS DOCUMENT 3236008 AND BY AGREEMENT RECORDED AS
DOCUMENT 3236009.

## EXHIBIT B

1.    Basic Rent for the initial term shall be at the annual rate of Three Hundred Five Thousand Six Hundred and 00/100 Dollars ($305,600.00).

2.    Basic Rent for the first renewal term shall be at the annual rate of Three Hundred Thirty Six Thousand One Hundred Sixty and 00/100 Dollars ($336,160.00).

3.    Basic Rent for the second renewal term shall be at the annual rate of Three Hundred Sixty Six Thousand Seven Hundred Twenty and 00/100 Dollars ($366,720.00).

# EXHIBIT C: REJECTABLE OFFER SCHEDULE

Column 1: Number of full monthly lease payments
Column 2: Repurchase Price

| Column 1 | Column 2 | Column 1 | Column 2 |
|---|---|---|---|
| 0 | 3,200,000 | 40 | 3,031,998 |
| 1 | 3,196,416 | 41 | 3,027,077 |
| 2 | 3,192,804 | 42 | 3,022,118 |
| 3 | 3,189,164 | 43 | 3,017,119 |
| 4 | 3,185,494 | 44 | 3,012,080 |
| 5 | 3,181,795 | 45 | 3,007,001 |
| 6 | 3,178,067 | 46 | 3,001,881 |
| 7 | 3,174,309 | 47 | 2,996,721 |
| 8 | 3,170,521 | 48 | 2,991,520 |
| 9 | 3,166,703 | 49 | 2,986,277 |
| 10 | 3,162,854 | 50 | 2,980,993 |
| 11 | 3,158,975 | 51 | 2,975,666 |
| 12 | 3,155,065 | 52 | 2,970,297 |
| 13 | 3,151,124 | 53 | 2,964,886 |
| 14 | 3,147,151 | 54 | 2,959,431 |
| 15 | 3,143,147 | 55 | 2,953,933 |
| 16 | 3,139,111 | 56 | 2,948,391 |
| 17 | 3,135,043 | 57 | 2,942,806 |
| 18 | 3,130,943 | 58 | 2,937,175 |
| 19 | 3,126,810 | 59 | 2,931,500 |
| 20 | 3,122,644 | 60 | 2,925,780 |
| 21 | 3,118,445 | 61 | 2,920,014 |
| 22 | 3,114,212 | 62 | 2,914,202 |
| 23 | 3,109,946 | 63 | 2,908,344 |
| 24 | 3,105,646 | 64 | 2,902,440 |
| 25 | 3,101,311 | 65 | 2,896,488 |
| 26 | 3,096,942 | 66 | 2,890,489 |
| 27 | 3,092,539 | 67 | 2,884,442 |
| 28 | 3,088,100 | 68 | 2,878,348 |
| 29 | 3,083,626 | 69 | 2,872,204 |
| 30 | 3,079,116 | 70 | 2,866,012 |
| 31 | 3,074,571 | 71 | 2,859,771 |
| 32 | 3,069,989 | 72 | 2,853,479 |
| 33 | 3,065,371 | 73 | 2,847,138 |
| 34 | 3,060,716 | 74 | 2,840,747 |
| 35 | 3,056,024 | 75 | 2,834,304 |
| 36 | 3,051,295 | 76 | 2,827,810 |
| 37 | 3,046,528 | 77 | 2,821,265 |
| 38 | 3,041,723 | 78 | 2,814,667 |
| 39 | 3,036,880 | 79 | 2,808,017 |



# EXHIBIT C: REJECTABLE OFFER SCHEDULE

Column 1: Number of full monthly lease payments
Column 2: Repurchase Price

| Column 1 | Column 2 | Column 1 | Column 2 |
|---|---|---|---|
| 80 | 2,801,314 | 120 | 2,484,561 |
| 81 | 2,794,558 | 121 | 2,475,284 |
| 82 | 2,787,747 | 122 | 2,465,933 |
| 83 | 2,780,883 | 123 | 2,456,507 |
| 84 | 2,773,964 | 124 | 2,447,007 |
| 85 | 2,766,990 | 125 | 2,437,431 |
| 86 | 2,759,960 | 126 | 2,427,778 |
| 87 | 2,752,875 | 127 | 2,418,049 |
| 88 | 2,745,733 | 128 | 2,408,243 |
| 89 | 2,738,534 | 129 | 2,398,358 |
| 90 | 2,731,278 | 130 | 2,388,395 |
| 91 | 2,723,965 | 131 | 2,378,352 |
| 92 | 2,716,593 | 132 | 2,368,230 |
| 93 | 2,709,162 | 133 | 2,358,027 |
| 94 | 2,701,672 | 134 | 2,347,743 |
| 95 | 2,694,123 | 135 | 2,337,377 |
| 96 | 2,686,514 | 136 | 2,326,928 |
| 97 | 2,678,844 | 137 | 2,316,396 |
| 98 | 2,671,112 | 138 | 2,305,781 |
| 99 | 2,663,320 | 139 | 2,295,081 |
| 100 | 2,655,465 | 140 | 2,284,296 |
| 101 | 2,647,548 | 141 | 2,273,425 |
| 102 | 2,639,568 | 142 | 2,262,467 |
| 103 | 2,631,525 | 143 | 2,251,423 |
| 104 | 2,623,417 | 144 | 2,240,290 |
| 105 | 2,615,245 | 145 | 2,229,069 |
| 106 | 2,607,008 | 146 | 2,217,758 |
| 107 | 2,598,705 | 147 | 2,206,358 |
| 108 | 2,590,336 | 148 | 2,194,866 |
| 109 | 2,581,901 | 149 | 2,183,284 |
| 110 | 2,573,398 | 150 | 2,171,609 |
| 111 | 2,564,828 | 151 | 2,159,841 |
| 112 | 2,556,190 | 152 | 2,147,980 |
| 113 | 2,547,482 | 153 | 2,136,024 |
| 114 | 2,538,706 | 154 | 2,123,973 |
| 115 | 2,529,860 | 155 | 2,111,826 |
| 116 | 2,520,943 | 156 | 2,099,582 |
| 117 | 2,511,955 | 157 | 2,087,241 |
| 118 | 2,502,896 | 158 | 2,074,802 |
| 119 | 2,493,765 | 159 | 2,062,264 |



# EXHIBIT C: REJECTABLE OFFER SCHEDULE

### Column 1: Number of full monthly lease payments
### Column 2: Repurchase Price

| Column 1 | Column 2 | Column 1 | Column 2 |
|---|---|---|---|
| 160 | 2,049,626 | 200 | 1,452,416 |
| 161 | 2,036,888 | 201 | 1,434,924 |
| 162 | 2,024,048 | 202 | 1,417,294 |
| 163 | 2,011,105 | 203 | 1,399,523 |
| 164 | 1,998,060 | 204 | 1,381,611 |
| 165 | 1,984,911 | 205 | 1,363,556 |
| 166 | 1,971,658 | 206 | 1,345,357 |
| 167 | 1,958,299 | 207 | 1,327,014 |
| 168 | 1,944,833 | 208 | 1,308,525 |
| 169 | 1,931,261 | 209 | 1,289,888 |
| 170 | 1,917,580 | 210 | 1,271,103 |
| 171 | 1,903,791 | 211 | 1,252,169 |
| 172 | 1,889,892 | 212 | 1,233,084 |
| 173 | 1,875,882 | 213 | 1,213,847 |
| 174 | 1,861,761 | 214 | 1,194,457 |
| 175 | 1,847,527 | 215 | 1,174,913 |
| 176 | 1,833,180 | 216 | 1,155,213 |
| 177 | 1,818,719 | 217 | 1,135,357 |
| 178 | 1,804,143 | 218 | 1,115,342 |
| 179 | 1,789,451 | 219 | 1,095,168 |
| 180 | 1,774,641 | 220 | 1,074,834 |
| 181 | 1,759,714 | 221 | 1,054,337 |
| 182 | 1,744,669 | 222 | 1,033,678 |
| 183 | 1,729,503 | 223 | 1,012,854 |
| 184 | 1,714,217 | 224 | 991,865 |
| 185 | 1,698,809 | 225 | 970,708 |
| 186 | 1,683,279 | 226 | 949,383 |
| 187 | 1,667,625 | 227 | 927,888 |
| 188 | 1,651,846 | 228 | 906,223 |
| 189 | 1,635,942 | 229 | 884,384 |
| 190 | 1,619,911 | 230 | 862,373 |
| 191 | 1,603,752 | 231 | 840,185 |
| 192 | 1,587,466 | 232 | 817,822 |
| 193 | 1,571,049 | 233 | 795,280 |
| 194 | 1,554,502 | 234 | 772,559 |
| 195 | 1,537,823 | 235 | 749,657 |
| 196 | 1,521,011 | 236 | 726,573 |
| 197 | 1,504,066 | 237 | 703,305 |
| 198 | 1,486,985 | 238 | 679,852 |
| 199 | 1,469,769 | 239 | 656,212 |



# EXHIBIT C – REJECTABLE OFFER SCHEDULE

Column 1: Number of full monthly lease payments
Column 2: Repurchase Price

| Column 1 | Column 2 | | Column 1 | Column 2 |
|----------|----------|---|----------|----------|
| 240 | 632,385 | | | |
| 241 | 608,367 | | | |
| 242 | 584,159 | | | |
| 243 | 559,757 | | | |
| 244 | 535,162 | | | |
| 245 | 510,371 | | | |
| 246 | 485,382 | | | |
| 247 | 460,195 | | | |
| 248 | 434,807 | | | |
| 249 | 409,217 | | | |
| 250 | 383,424 | | | |
| 251 | 357,425 | | | |
| 252 | 331,219 | | | |
| 253 | 304,805 | | | |
| 254 | 278,181 | | | |
| 255 | 251,344 | | | |
| 256 | 224,295 | | | |
| 257 | 197,029 | | | |
| 258 | 169,547 | | | |
| 259 | 141,846 | | | |
| 260 | 113,925 | | | |
| 261 | 85,782 | | | |
| 262 | 57,414 | | | |
| 263 | 28,821 | | | |