# **EXHIBIT A-2**

CIRCUIT CITY STORES, INC.,

Sublessor

TO

LA-Z-BOY SHOWCASE SHOPPES, INC.

Subtenant

SUBLEASE

RECEIVED
REAL ESTATE DEPT
MAR 2 1 2002

Dated: ~~February~~ March 28, 2002

GRAND HUNT CENTER
GURNEE, ILLINOIS

# TABLE OF CONTENTS

Page

1.  PREMISES. ..................................................................................................... 1

2.  TERM. ............................................................................................................. 1

3.  RENT. .............................................................................................................. 1

4.  SECURITY. ...................................................................................................... 4

5.  CONDITION OF PREMISES. ......................................................................... 5

6.  USE. ................................................................................................................. 5

7.  PARKING AND COMMON AREAS. .............................................................. 6

8.  UTILITIES. ...................................................................................................... 7

9.  REPAIRS AND MAINTENANCE. .................................................................. 7

10. ALTERATIONS. .............................................................................................. 8

11. SIGNS. ............................................................................................................ 10

12. ASSIGNMENT AND SUBLETTING. ............................................................ 11

13. ACCESS TO PREMISES. ............................................................................... 14

14. INDEMNITY. .................................................................................................. 14

15. INSURANCE. .................................................................................................. 15

16. SUBORDINATE TO PRIME LEASE. ........................................................... 17

17. TERMINATION OF PRIME LEASE. ............................................................. 18

18. NOTICES. ....................................................................................................... 18

19. DEFAULT. ...................................................................................................... 19

20. WAIVER OF JURY TRIAL AND RIGHT TO COUNTERCLAIM. ............... 22

21. END OF TERM. .............................................................................................. 23

22. HOLDOVER. .................................................................................................. 23

23. BROKERAGE. ................................................................................................ 24

24. FINANCIAL STATEMENTS AND ESTOPPEL CERTIFICATES. ............... 24

25. AMERICANS WITH DISABILITIES ACT. .................................................. 25

26. HAZARDOUS SUBSTANCES. ..................................................................... 25

27. MISCELLANEOUS COVENANTS. .............................................................. 27

i

EXHIBITS TO SUBLEASE

EXHIBIT A    -    Plan of Shopping Center Showing Location of Premises
EXHIBIT B    -    Rules and Regulations
EXHIBIT C    -    Subtenant Standard Storefront

SUBLEASE

THIS SUBLEASE, dated the 20th day of March, 2002, between CIRCUIT CITY

STORES, INC., a Virginia corporation, having an office at 9950 Mayland Drive, Richmond,

Virginia 23233-1464 ("Sublessor") and LA-Z-BOY SHOWCASE SHOPPES INC., an Indiana

corporation, having an office at 724 Hoffman Street, Hammond, Indiana 46327 "Subtenant").

WITNESSETH:

1.   PREMISES.

Sublessor hereby subleases to Subtenant, and Subtenant hereby subleases from Sublessor,

that certain land and improvements (collectively, the "Premises") crosshatched on Exhibit A

attached hereto and made a part hereof, and containing approximately 22,768 square feet of

ground floor space in the building (the "Building") located at the Grand Hunt Center, Gurnee,

Illinois (the "Shopping Center") and being the premises which were leased to Sublessor under

the Prime Lease dated February 24, 1994 (as may be amended, the "Prime Lease") between

CIRCUIT INVESTORS- GURNEE LIMITED PARTNERSHIP, as landlord ("Landlord") and

Sublessor, as tenant. The Premises is subject to the provisions of the Operation and Easement

Agreement between Dayton Hudson Corporation and Hunt Club Road Properties Associates

Limited Partnership dated October 28, 1992 (as amended, the "OEA").

2.   TERM.

A.   Term. The term of this Sublease ("Term") shall be the period of approximately

fourteen (14) years commencing on the date Sublessor tenders possession of the Premises to

Subtenant ("Commencement Date"), and ending at midnight on February 27, 2016 ("Expiration

Date"), unless sooner terminated as herein provided. The "Rent Commencement Date" shall be

the date which is one hundred twenty (120) days after the Commencement Date.

B.   Possession. Sublessor shall tender possession of the Premises to Subtenant

promptly following the execution of this Sublease by both parties.

C.   Agreement. Subtenant shall execute and deliver to Sublessor an agreement

setting forth the Commencement Date and Rent Commencement Date within five (5) business

days after Sublessor's delivery thereof.

3.   RENT.

A.   Base Rent. Commencing on the Rent Commencement Date, Subtenant shall pay

to Sublessor rent ("Base Rent") in the amounts set forth below. Each monthly installment of

306800 v3                                        1

Base Rent shall be payable in advance on the first day of each month during the Term. Base Rent for the first (1st) month shall be payable at the time of execution of this Sublease by Subtenant. In consideration for Subtenant's performance of its obligations under this Sublease, Sublessor has conditionally agreed to abate Base Rent for the period from the Commencement Date to the day prior to the Rent Commencement Date, provided there is no Event of Default (as defined in Section 19). If an Event of Default occurs at any time during the Term, then Base Rent shall automatically be deemed to have commenced on the Commencement Date, and the total sum of Base Rent so conditionally abated shall be immediately due and payable by Subtenant to Sublessor.

| Period | Annual Base Rent | Monthly Base Rent |
|--------|------------------|-------------------|
| Rent Commencement Date – February 28, 2007 | $ 242,000 | $ 20,166.67 |
| March 1, 2007 – February 29, 2012 | $260,000 | $ 21, 666.67 |
| March1 1, 2012 - February 27, 2016 | $278,000 | $ 23,166.67 |

B.    Payments. Base Rent and all other amounts payable by Subtenant to Sublessor under this Sublease ("Additional Rent") shall be paid when due, without notice or demand, and without deduction, abatement, counterclaim or setoff, at the address of Sublessor set forth in Section 18 or to such other person and/or at such other address as Sublessor may from time to time designate by notice to Subtenant. No payment by Subtenant of any amount less than the amount stipulated to be paid hereunder shall be deemed other than on account of the earliest stipulated Base Rent or Additional Rent; nor shall any endorsement or statement on any check or letter be deemed an accord and satisfaction, and Sublessor may accept any check or payment without prejudice to Sublessor's right to recover the balance due or to pursue any other remedy available to Sublessor.

C.    Subtenant's Pro Rata Share. Sublessor and Subtenant agree that Subtenant shall be obligated to pay for Taxes, Operating Expenses and Insurance Costs (all as hereinafter defined), based on 18,000 square feet only. Accordingly, for purposes of this Section 3,

"Subtenant's Pro Rata Share" shall be 79.06% (i.e., 18,000/22,768). Subtenant's Pro Rata Share shall be equitably prorated for any partial calendar year during the Term.

D.     Taxes. Beginning on the Rent Commencement Date, Subtenant shall pay to Sublessor, as Additional Rent, Subtenant's Pro Rata Share of all real estate taxes, assessments, levies and other charges, general or special, foreseen or unforeseen (the "Taxes") imposed or assessed against the Premises under the current or any future taxation or assessment system or modification of, supplement or substitute for such system, and whether or not based on or measured by the receipts or revenues from the Premises. "Taxes" shall also include any costs, including attorneys' fees, incurred by Sublessor to appeal, contest or reduce Taxes. Sublessor shall provide Subtenant a copy of any bill for Taxes promptly after written request by Subtenant. Subtenant's initial Pro Rata Share of Taxes for the first year of the Term is estimated to be Thirty Thousand Four Hundred Twenty Dollars ($30,420), which Subtenant shall pay to Sublessor, in equal monthly installments of Two Thousand Five Hundred Thirty Five Dollars ($2,535) in advance, beginning on the Rent Commencement Date.

E.     Operating Expenses and CAM Charges. Beginning on the Rent Commencement Date, Subtenant shall pay to Sublessor, as Additional Rent, Subtenant's Pro Rata Share of the Common Area Maintenance Costs (as defined in the OEA) and other expenses charged to Sublessor under the OEA (the "Operating Expenses"), Subtenant's initial Pro Rata Share of Operating Expenses for the first year of the Term is estimated to be Thirteen Thousand Eight Hundred Sixty Dollars ($13,860), which Subtenant shall pay to Sublessor in equal monthly installments of One Thousand One Hundred Fifty Five Dollars ($1,155) in advance, beginning on the Rent Commencement Date.

F.     Property Insurance. Beginning on the Rent Commencement Date, Subtenant shall pay to Sublessor, as Additional Rent, on the first day of each month during the Term, Subtenant's Pro Rata Share of the cost of property insurance covering the improvements on the Shopping Center (the "Insurance Costs"). Subtenant's initial Pro Rata Share of the Insurance Costs for the first year of the Term is estimated to be One Thousand Two Hundred Sixty Dollars ($1,260), which Subtenant shall pay to Sublessor in equal monthly installments of One Hundred Five Dollars ($105) in advance, beginning on the Rent Commencement Date.

G.    Adjustment to Charges for Operating Expenses and Taxes.  Sublessor may notify Subtenant from time to time setting forth an adjustment to estimated Operating Expenses and Taxes and Subtenant's Pro Rata Share thereof, if Sublessor determines that payments are insufficient to meet estimated costs.  Following the end of each calendar year, Sublessor shall determine the actual Operating Expenses and Taxes for such year.  If Sublessor determines that Subtenant's Pro Rata Share of actual Operating Expenses or Taxes exceeds the amount paid by Subtenant, then Subtenant shall pay the difference within thirty (30) days after Sublessor delivers to Subtenant a statement showing such costs; if Subtenant's payments exceed the amount of Subtenant's Pro Rata Share of actual Operating Expenses or Taxes, Subtenant shall receive a credit toward the next installment of such Additional Rent in the amount of such overpayment.

4.    SECURITY.

Subtenant shall deposit with Sublessor the sum of Twenty Thousand One Hundred Sixty Seven Dollars ($20,167) (the "Security Deposit") as security for the payment and performance by Subtenant of Subtenant's obligations under this Sublease.  To satisfy this requirement, Subtenant hereby directs Sublessor to withhold and retain Twenty Thousand One Hundred Sixty Seven Dollars ($20,167) from the Improvement Allowance (as defined in Section 10).  Sublessor shall have the right, without notice to Subtenant, and regardless of the exercise of any other remedy Sublessor may have by reason of a default, to apply all or any part of the Security Deposit to cure any default of Subtenant, and, if Sublessor does so, Subtenant shall upon demand deposit with Sublessor the amount applied so that Sublessor shall have the full amount of the Security Deposit at all times during the Term.  If Subtenant fails to make such deposit, Sublessor shall have the same remedies for such failure as Sublessor has for a default in the payment of Base Rent. If Subtenant defaults under this Sublease, the Security Deposit shall not be deemed liquidated damages and Sublessor may apply the Security Deposit to reduce Sublessor's damages, and such application of the Security Deposit shall not preclude Sublessor from recovering from Subtenant all additional damages incurred by Sublessor. The Security Deposit shall not bear interest.  If Subtenant fails to timely provide Sublessor with the Security Deposit, Sublessor may withhold delivery of possession of the Premises without delaying the Commencement Date or the Rent Commencement Date.

So long as there has been no monetary default under this Sublease, then, within thirty (30) days following the first (1st) anniversary of the Rent Commencement Date, Sublessor shall return the Security Deposit to Subtenant.

5.   CONDITION OF PREMISES.

Subtenant is leasing, and hereby accepts, the Premises "as is", "where is".  Upon delivery of possession of the Premises to Subtenant, Sublessor shall provide Subtenant with evidence that the HVAC units serving the Premises are in good working order.  Sublessor shall provide Subtenant with the Improvement Allowance (as defined in Section 10) pursuant to the terms and conditions set forth in Section 10.  Subtenant acknowledges that Sublessor has afforded Subtenant the opportunity for, and that Subtenant has undertaken, full and complete investigations, examinations, and inspections of the Premises and has determined that the Premises are suitable for Subtenant's intended use, and represents that Subtenant shall bear full responsibility for any special requirements in connection with Subtenant's use of the Premises.

6.   USE.

A.   Permitted Use.  Subtenant shall use and occupy the Premises for the retail sale of furniture and for no other purpose.  Subtenant represents to Sublessor that Subtenant does not intend to, and shall not, use or occupy the Premises for any other purpose.  Subtenant shall conduct its business in a first-class and reputable manner, in keeping with good practices as established in the retail trade, maintaining at all times an adequate staff of employees and a full and complete stock of first-quality merchandise, and shall operate its business upon the Premises continuously without interruption during minimum hours of 10:00 a.m. to 6:00 p.m. Monday through Saturday, except that Subtenant shall not be required to operate on New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day or Christmas Day.  Subtenant shall operate only under the trade name "LA-Z-BOY FURNITURE GALLERIES," unless Subtenant obtains Sublessor's prior written consent to a name change.

B.   Use Restrictions.  In no event shall the Premises or any part thereof be used for the display, sale, service or warehousing of any form of consumer electronics, household appliances, or business electronic equipment, including but not limited to audio or video hardware, computer hardware or software, entertainment media (including, without limitation, compact discs, cassette tapes and similar media), electronic software, cellular telephones, telefax

machines, copiers, or new or used automotive vehicles. Subtenant shall not conduct its business as a clearance center or wholesale, discount, or outlet operation, or use the Premises for any auction, fire, bankruptcy or "going out of business" sales. Subtenant shall not use the name "Circuit City" or any variant or derivative thereof, in any of its advertising.

C.    Compliance with Laws, Rules and OEA. Subtenant at its expense shall comply with all present and future laws, statutes, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments and any instrumentality thereof, and regulations of the board of fire underwriters having jurisdiction over the Premises (collectively, "Laws"). Prior to opening for business in the Premises, Subtenant shall deliver to Sublessor a copy of the certificate of occupancy or letter of substantial completion issued by the applicable governmental entity for the Premises. If Subtenant does not timely deliver such certificate of occupancy or letter of substantial completion, then, Sublessor may deliver to Subtenant written notice of such failure. If Subtenant does not deliver such certificate of occupancy or letter of substantial completion within ten (10) business days after delivery of such notice, then, in addition to any and all remedies available to Sublessor for default, Subtenant shall pay to Sublessor, as additional rent, the sum of Five Hundred Dollars ($500.00). Subtenant shall comply with all rules and regulations for the use of the Premises and the Common Areas as Sublessor may from time to time establish. The current Rules and Regulations are attached as Exhibit B and made a part of this Sublease. Subtenant shall comply with and perform Sublessor's obligations as "Owners" under the OEA.

7.    PARKING AND COMMON AREAS.

A. Right to Use. Sublessor hereby grants to Subtenant a non-exclusive right to use for parking, for ingress and egress between the Premises and all other portions of the Shopping Center and the adjoining streets, alleys and sidewalks, and for such other purposes as the same are or may have been designed (i) the parking areas, roadways, and driveways provided in the Shopping Center for the access and parking of vehicles, and (ii) the other public conveniences and amenities provided from time to time in the Shopping Center from time to time (the "Common Areas"). Subtenant shall not at any time interfere with the rights of others to use any part of the Common Areas.

B. <u>Sublessor Obligations</u>. Sublessor shall (unless prevented by circumstances beyond its reasonable control) use commercially reasonable efforts to (i) keep the Common Areas in good repair and condition, (ii) keep the parking areas and driveways of the Common Areas suitably paved and marked for parking and traffic flow, (iii) keep the Common Areas reasonably free of refuse and obstruction and reasonably free of snow and ice to the extent required by the business operations of the stores within the Shopping Center, and (iv) keep the exterior Common Areas lit in accordance with applicable Code requirements during hours of darkness which occur during the business hours of the Shopping Center (collectively, the "<u>Common Area Obligations</u>"). Notwithstanding anything in this Sublease to the contrary, Subtenant agrees that Sublessor shall not be obligated to perform any of the Common Area Obligations. Sublessor, however, shall use commercially reasonable efforts to obtain the performance of the Common Area Obligations pursuant to the terms of the OEA.

8.     UTILITIES.

Subtenant shall make all necessary arrangements with all applicable utility companies and governmental authorities for, and shall pay for, all utilities supplied to the Premises. Sublessor shall not be responsible for any failure or interruption, for any reason whatsoever, of any of the services or utilities supplied to the Premises, and the same shall not result in any abatement, diminution or reduction of rent, or constructive eviction, or liability on the part of Sublessor.

9.     REPAIRS AND MAINTENANCE.

A. <u>Repairs by Sublessor</u>. Sublessor shall keep in good condition and repair the exterior walls, foundation and roof of the Premises. Sublessor shall not be required to make any repairs where the same were caused or occasioned by any act, omission or negligence of Subtenant or its employees, agents, customers, invitees or contractors; Sublessor, at its option, may undertake such repairs at Subtenant's sole cost and expense, plus a fifteen percent (15%) administrative charge, and Subtenant shall reimburse Sublessor, on demand, for the cost and expense of such repairs and for such administrative charge. Sublessor shall not be required to commence any such repair until it receives notice from Subtenant specifying the nature of the repair.

B. <u>Repairs and Maintenance by Subtenant</u>. Except for those repairs to be performed by Sublessor under Section 9.A., Subtenant shall make all repairs, maintenance and replacements to

the Premises including without limitation interior walls, the heating, ventilating and air conditioning ("HVAC") system, the doors, windows, frames, plate glass, ceiling tiles, storefront, showcases, signs and any equipment, facilities and fixtures therein, and shall keep the same clean, neat, safe, sanitary, in good order, repair and condition and free of vermin, pests and termites. In making the repairs and replacements, Subtenant shall use materials equal in kind and quality to the original work. Subtenant shall repaint and refurnish the Premises at reasonable intervals to assure that the Premises is kept in a first-class and attractive condition throughout the term of this Sublease and any extensions thereof. At all times during the Term, Subtenant shall maintain a service contract with a qualified, reputable service and maintenance company, for the maintenance and repair of the HVAC equipment servicing the Premises and shall furnish Sublessor with true copies thereof. Subtenant shall obtain Sublessor's prior written consent to the HVAC contract and the service and maintenance company, which consent shall not be unreasonably withheld. Subtenant shall operate the HVAC system servicing the Premises in such a manner so as to provide (i) adequate heat, ventilation and air-conditioning in and to the Premises during all business hours of the Shopping Center, as same shall be established by Sublessor and (ii) sufficient heat during all other times so as to prevent freezing of all pipes within the Premises.

10.    ALTERATIONS.

Subtenant shall not make or cause, suffer or permit the making of any alteration, addition, change, replacement, or installation, whether structural or non-structural ("Alterations"), in or to the Premises, including without limitation Alterations in connection with Subtenant's initial occupancy of the Premises ("Initial Alterations"), without obtaining the prior written consent of Sublessor in each instance and the consent of Landlord as required under the Prime Lease. "Alterations" shall include, without limitation, all pipes, ducts, conduits, wiring, paneling, partitions, railing, mezzanine floors, galleries and the like. In connection with the Initial Alterations, Subtenant shall modify the tower on the roof of the Building to avoid the appearance of a Circuit City store. Sublessor agrees that Subtenant's standard storefront, as shown on Exhibit C, is an acceptable modification.

All Alterations shall be performed in a good and workmanlike manner, using only new materials or their equivalent, free and clear of all mechanics' liens and encumbrances, and in

compliance with all Laws and all reasonable procedures and regulations prescribed by Sublessor (and Landlord) from time to time. Prior to commencing any Alterations in the Premises, Subtenant shall (i) file the requisite plans and specifications for Alterations (which shall have been approved in writing by Sublessor and Landlord, if required) with, and obtain all requisite approvals from, all governmental departments or authorities having jurisdiction and any public utility company having an interest therein and (ii) deliver to Sublessor an insurance policy or policies of worker's compensation, liability, property damage and broad form builder's risk insurance, naming Sublessor and Landlord as additional insured parties with limits as provided in Section 15. Sublessor's approval of any plans, specifications or working drawings for Alterations shall create no responsibility on the part of Sublessor for their completeness, design sufficiency or compliance with Laws.

Sublessor shall reimburse Subtenant for the actual costs of constructing Initial Alterations paid by Subtenant to third parties and reasonably approved by Sublessor, up to a maximum amount equal to One Hundred Twenty Five Thousand Dollars ($125,000) (the "Improvement Allowance"). As set forth in Section 4, Sublessor shall withhold and retain Twenty Thousand One Hundred Sixty Seven Dollars ($20,167) from the Improvement Allowance, leaving an initial balance of One Hundred Four Thousand Eight Hundred Thirty Three Dollars ($104,833) (the "Available Allowance"). All costs in excess of the Available Allowance or not reasonably approved by Sublessor shall be the sole responsibility of Subtenant. The Available Allowance shall be due and payable by Sublessor to Subtenant within thirty (30) days following the date Subtenant has completed the Initial Alterations, opened for business in the Premises, and delivered to Sublessor the following: (A) a requisition signed and certified by Subtenant or a corporate officer of Subtenant and Subtenant's architect certifying that (i) the Initial Alterations are substantially complete, (ii) such construction is in accordance with the approved plans, and (iii) such construction is in accordance with all Laws; (B) a copy of the final certificate of occupancy or letter of substantial completion for the Premises; and (C) evidence reasonably satisfactory to Sublessor that Subtenant has made payment in full to all contractors and suppliers and that all contractors, suppliers, subcontractors and sub-suppliers have executed and delivered to Subtenant complete releases or waivers of mechanic's liens rights with respect to the Building and the Shopping Center. If Sublessor does not pay the Available Allowance to Subtenant when

it is due and payable as provided herein, Subtenant shall have the right to deduct the amount of

the Available Allowance from payments of monthly Base Rent until the Available Allowance to

which Subtenant is entitled has been fully credited to Subtenant. Notwithstanding any other

provision of this Sublease, no payment shall be due and payable to Subtenant if at the time of the

due date Subtenant is in default under this Sublease or if, in the reasonable opinion of Sublessor,

Subtenant has not completed construction to the point certified or that the construction is

otherwise not acceptable to Sublessor.

During performance of Alterations, Sublessor shall have the right to inspect the Premises

at all reasonable times. If any lien is filed against the Premises, the Building or the Shopping

Center in connection with labor or materials furnished to Subtenant, or claimed to have been

furnished to Subtenant, Subtenant at its expense shall cause such lien to be discharged within ten

(10) days after it is filed.

All Alterations shall become the property of Sublessor and, except as otherwise expressly

provided in this Sublease, shall remain upon and be surrendered with the Premises at the

expiration or earlier termination of the Term. Movable trade fixtures and other personal property

which Subtenant installs at its own expense shall remain Subtenant's property and may be

removed at the expiration or earlier termination of the Term, provided that Subtenant is not in

default under this Sublease, and further provided that Subtenant promptly repairs any damage

caused by such removal.

11.    SIGNS.

Subtenant shall be permitted to install, at its expense, signage in compliance with the

OEA, the Pylon Agreement (as hereinafter defined) and with all applicable Laws. Subtenant

shall maintain any such sign(s) in good condition and repair, and shall remove all signs and

repair all damage caused by the installation or removal thereof, at the expiration or termination

of the Term. Subtenant shall pay all costs for operation, maintenance, repair and replacement of

any signage, including any amounts imposed upon Sublessor under the OEA, Pylon Agreement

or otherwise. Other than such permitted sign(s), Subtenant shall not place or install, or permit or

suffer to be placed or installed, or maintain, any sign within or outside of the Premises or in any

part of the Shopping Center and in no event shall any permitted sign utilize or contain the words

"wholesale", "discount", or "outlet." Subtenant shall not place, install or maintain, or permit or

suffer to be placed, installed or maintained, on the exterior of the Premises, any awning (other than the trim awning under Subtenant's Standard Storefront, as depicted on Exhibit C), canopy, banner, flag, pennant, aerial, antenna, audio, video or radio-transmitting equipment, diathermy or x-ray equipment, or the like. The "Pylon Agreement" shall mean the Pylon Sign Construction and Cost Sharing Agreement dated _____, 1998, with respect to the Shopping Center, between Sublessor and others, and Sublessor shall cooperate with Subtenant for a slot on the monument sign, to the extent of Sublessor's rights under the OEA and the Pylon Agreement. Sublessor currently has signage on three (3) slots on the monument sign.

12.    ASSIGNMENT AND SUBLETTING.

A.    Consent Required. Subtenant may not, by operation of law or otherwise, assign, sell, mortgage, pledge or in any manner transfer this Sublease or any interest therein, or sublet the Premises or any part thereof, or grant any concession, franchise or license or otherwise permit occupancy of all or any part of the Premises by any person or entity (collectively, "Transfer"), without first obtaining the prior written consent of Sublessor (and Landlord, if required), which consent of Sublessor shall not be unreasonably withheld, so long as: (i) the net worth of the proposed assignee, mortgagee, subtenant, licensee, concessionaire or occupant ("Transferee") at the time of the proposed Transfer is not less than $10,000,000, (ii) the proposed Transfer is for the entire Premises, (iii) Subtenant is not in default under this Sublease, and (iv) the permitted use by the proposed Transferee is consistent with the tenant mix of the Shopping Center. In no event shall Subtenant be entitled to Transfer less than the entire Premises. For purposes of this Sublease, the transfer and/or issuance of fifty percent (50%) or more of the ownership or voting interest of Subtenant, if Subtenant is not a publicly held corporation traded on a national exchange, to any persons or entities that are not owners of Subtenant on the date of this Sublease shall be deemed to be a Transfer.

B.    Notice. If Subtenant desires to undertake any Transfer, it shall provide Sublessor with prior written notice of such desire, specifying the consideration for, and all other terms and conditions of, the proposed Transfer and identifying the proposed Transferee and the proposed use, accompanied by a certified financial statement setting forth the financial condition of the proposed Transferee in sufficient detail so as to permit Sublessor's comprehensive assessment thereof, and a non-refundable review fee in the amount of One Thousand Five Hundred Dollars

($1,500.00). Such notice shall include all information which Subtenant has in its possession which may be disseminated without penalty regarding the proposed Transfer, including but not limited to information regarding the proposed Transferee, its proposed business at the Premises, financial and operating information regarding the proposed Transferee, and any other information which Sublessor requests of Subtenant in connection with the proposed Transfer.

C.    Recapture Option. Sublessor shall have the right (the "Recapture Option"), in the event of a proposed Transfer to terminate this Sublease as of the "Effective Termination Date" (as defined in this Section 12.C.). If Sublessor elects to exercise the Recapture Option, Sublessor shall deliver written notice of such election to Subtenant within thirty (30) days after Sublessor's receipt of Subtenant's notice described in Section 12.B., which notice from Sublessor shall specify the date (the "Effective Termination Date") on which such termination shall become effective; provided, however, that such date shall not be more than sixty (60) days after the date of such notice of termination. If Sublessor fails to timely exercise the Recapture Option in accordance with these provisions, Subtenant may thereafter proceed with the Transfer pursuant to the provisions of Section 12.B. on the same terms and conditions as set forth in said notice; provided, however, that any such Transfer shall be expressly conditioned upon Subtenant's compliance with the provisions of Section 12.D. Sublessor shall be entitled to take into account any factor Sublessor shall deem relevant in exercising its right to approve or disapprove a proposed Transfer including, without limitation: the financial strength and working capital of the proposed Transferee; the experience of the proposed Transferee in the type and size of the business proposed; the quality of the merchandise and/or services to be offered by the proposed Transferee; the existence of exclusive rights given to other occupants of the Shopping Center; the tenant mix of the Shopping Center; and the quality of the store appearance and compatibility with other stores after any alterations in connection with the proposed Transfer.

D.    Payments in Excess of Rent. If any Transfer obligates the Transferee to pay to Subtenant amounts in excess of the Base Rent and Additional Rent under this Sublease (whether by increased rent, a lump sum payment, payment for the sale, transfer or lease of Subtenant's fixtures or improvements, or any other form), then Subtenant shall pay to Sublessor any such excess, as Additional Rent, within ten (10) days after receipt by Subtenant.

E. <u>Miscellaneous</u>. No assignment of this Sublease shall be effectuated by operation of law or otherwise without the prior written consent of Sublessor (and Landlord, if required). For the purposes of this Sublease, the transfer and/or issuance of fifty percent (50%) or more of the ownership or voting interest of Subtenant, if Subtenant is not a publicly held corporation, to any persons or entities that are not owners of Subtenant on the date of this Sublease shall be deemed an assignment of this Sublease thereby giving Sublessor the option to terminate this Sublease as provided above. Notwithstanding any other provision of this <u>Section 12</u>, (i) Subtenant shall reimburse Sublessor upon demand, for all expenses, including reasonable attorneys' fees and any charges imposed by Landlord, incurred by Sublessor in connection with any proposed Transfer, and (ii) Subtenant and any proposed Transferee shall, within ten (10) days after notice from Sublessor, provide such additional information, execute and deliver to Sublessor such documents and take such further action as Sublessor may reasonably require to effect the proposed Transfer or to protect Sublessor's rights under this Sublease. The consent of Sublessor to any Transfer shall in no way be construed to relieve Subtenant of the requirement of obtaining the consent of Sublessor to any further Transfer. If Sublessor consents to any assignment of this Sublease, the assignee shall execute and deliver to Sublessor an agreement in form and substance satisfactory to Sublessor whereby the assignee shall assume all of Subtenant's obligations under this Sublease. Notwithstanding any Transfer, the original Subtenant named herein and any other person(s) who at any time was (were) Subtenant shall remain fully liable under this Sublease as it may subsequently be amended, modified, extended or renewed, and such liability shall not be discharged or affected by any circumstance or condition including without limitation (a) any extension of time for performance under this Sublease, (b) any waiver, consent, indulgence or other action, inaction or omission under this Sublease, or (c) any insolvency or bankruptcy of the assignee. Sublessor may collect rent from any Transferee and/or any subtenants or occupants, and apply the net amounts collected to Base Rent and Additional Rent, but no such collection shall be deemed a waiver of any of the provisions of this <u>Section 12</u>, or the acceptance of the Transferee, subtenant or occupant as Subtenant, or a release of any person or entity from the further performance by such person or entity of the obligations of Subtenant under this Sublease.

F.    <u>Restrictions in Prime Lease</u>.  Notwithstanding any other provision of this <u>Section 12</u>, no Transfer shall be permitted in violation of the Prime Lease.

13.   ACCESS TO PREMISES.

A.   General Access. Sublessor shall have the right to enter upon and in the Premises at all reasonable times to examine the same and to make such repairs, replacements, alterations, improvements and additions in the Premises and the Building (including, without limitation, the installation, repair, maintenance and replacement of pipes, duct work, conduits, utility lines and wires through the column space and partitions in the Premises and beneath the lower floor slabs and above the ceiling of the Premises) as Sublessor may deem necessary or desirable, and to take all materials into and upon the Premises that may be required therefor, without the same constituting an eviction of Subtenant, and without any abatement of Base Rent or Additional Rent; provided, however, Sublessor shall use reasonable efforts not to unreasonably interfere with Subtenant's business in the Premises. Sublessor shall also have the right to enter upon the Premises at reasonable times to show the Premises to prospective purchasers, lessors or lessees (under ground or underlying leases) and mortgagees of all or any part of the Shopping Center. During the six (6) months prior to the expiration of the Term, Sublessor may show the Premises to prospective tenants of the Premises, and Sublessor may also place upon the Premises a "For Rent" sign, which sign shall not be removed, obliterated or hidden by Subtenant. Notwithstanding the foregoing provisions of this Section 13, during the last six (6) months of the term of the Prime Lease, Sublessor may perform any repair or restoration work as may be required under the Prime Lease for surrender of the Prime Lease Premises.

B.   Excavation. If an excavation or other building operation is made upon land or premises above, below or adjacent to the Premises, Subtenant shall give to the person authorized to cause such work to be done permission and a license to enter upon and in the Premises for the purpose of doing such work as such person deems necessary to preserve the Building from damage and to support the same with proper foundations, without the same constituting an eviction of Subtenant, and without any abatement of Base Rent or Additional Rent; provided, however, Sublessor shall use reasonable efforts not to unreasonably interfere with Subtenant's business in the Premises.

14.   INDEMNITY.

A.   Indemnification. Subtenant shall protect, indemnify, defend and hold Sublessor harmless from and against any and all claims, damages, loss, liability (including without

limitation liability under the Prime Lease), cost or expense (including without limitation

reasonable attorneys' fees), which Sublessor may incur or pay out by reason of (i) any accidents.

damages or injuries to persons or property occurring in, on or about the Premises, (ii) any breach

or default hereunder on Subtenant's part, (iii) any work done in or to the Premises, (iv) any liens

filed against the Premises or the Shopping Center and not timely removed by Subtenant pursuant

to Section 9, or (v) any act, omission or negligence on the part of Subtenant and/or its

employees, agents, contractors and/or invitees, or any person claiming through or under

Subtenant.

     B.    Liability of Sublessor.  All property of Subtenant and its employees, agents,

contractors or invitees in or about the Premises or elsewhere in the Shopping Center shall be kept

and stored at Subtenant's sole risk, and Subtenant shall hold Sublessor harmless from any claims

arising out of damage to, or loss of, the same, resulting from (i) any act (including theft) or

failure to act, of any other person, (ii) the leaking of the roof, (iii) the bursting, rupture, leaking

or overflowing of pipes, heating or plumbing fixtures, (iv) fire or other casualty, (v) malfunction

of electrical wires or fixtures, (vi) failure of HVAC systems, or (vii) other cause.  Sublessor shall

not be liable for any interruption of or loss to Subtenant's business arising from any of the above-

described acts or causes, or for any consequential damages sustained by Subtenant arising out of

the loss of or damage to any such property.

15.    INSURANCE.

     A.    Subtenant's Insurance.  Subtenant shall maintain throughout the Term (i) a

commercial general liability insurance policy for the Premises and all appurtenant areas and the

conduct and operation of business therein, and the acts and omissions of Subtenant, its agents,

employees and contractors, naming Sublessor, Landlord and any mortgagee of the Shopping

Center as additional insured parties, as primary coverage over any insurance carried by

Sublessor, Landlord or any mortgagee, with limits of not less than $3,000,000 per occurrence for

personal or bodily injury, death and property damage, endorsed to provide coverage for fire legal

liability and contractual liability for Subtenant's indemnity obligations under this Sublease, and

water damage and sprinkler leakage legal liability; (ii) all-risk property insurance with

endorsements for vandalism and malicious mischief, water damage and sprinkler leakage, for the

full replacement value of Subtenant's inventory, equipment, trade fixtures and other personal

property located in the Premises; (iii) rent abatement insurance in the amount of six (6) months'
Base Rent; (iv) worker's compensation insurance to the extent required by Laws; and (v) such
other insurance, in such amounts and against such risks as Sublessor specifies in writing to
Subtenant, as may be reasonably required by the holder of any mortgage on the Shopping Center
and which is customarily and commonly insured against by prudent owners or tenants of
property similar to the Shopping Center.

Subtenant shall deliver to Sublessor a fully paid for policy or certificate prior to taking
possession of the Premises, Subtenant shall provide to Sublessor evidence that Subtenant has
obtained the insurance required by this Section 15. If Subtenant fails to provide Sublessor with
such evidence, Sublessor may withhold delivery of possession of the Premises without delaying
the Commencement Date or the Rent Commencement Date. Subtenant shall procure and pay for
renewals of such insurance from time to time before the expiration thereof, and Subtenant shall
deliver to Sublessor such renewal policy or certificate at least thirty (30) days before the
expiration of any existing policy. All such policies shall be issued by companies rated not lower
than "B+ Class X" by A.M. Best Co. licensed to do business in the state in which the Premises
are located, and all such policies shall contain a provision whereby the same cannot be cancelled
or modified unless Sublessor is given at least thirty (30) days' prior written notice by certified or
registered mail of such cancellation or modification.

B.    Sublessor's Insurance. Sublessor shall maintain (i) property insurance covering
the Building for at least eighty percent (80%) of replacement value, exclusive of the cost of
foundations, excavations and footings, and (ii) public liability insurance as required under the
Prime Lease, or shall have the right to self insure if permitted under the Prime Lease. All costs
and expenses of insurance incurred by Sublessor shall be subject to reimbursement by Subtenant
pursuant to Section 3 of the Sublease.

C.    Contractor's Insurance. Subtenant shall require any contractor of Subtenant
performing work in, on or about the Premises to obtain and keep in full force and effect, at no
expense to Sublessor, (i) a commercial general public liability insurance policy for the Premises
and adjacent areas, the conduct of its work therein, and the acts or omissions of such additional
insured, with the coverages set forth in Section 15.A.i. above; (ii) worker's compensation or
similar insurance in form and amounts required by Laws; and (iii) comprehensive automobile

liability insurance including owned, non-owned and hired car coverage in an amount not less than $3,000,000 combined single limit for bodily injury or death and for property damage. Subtenant shall provide certificates of such insurance to Sublessor prior to commencing any construction in, on or about the Premises.

D.    Waiver of Subrogation Rights. Subtenant hereby releases and waives its rights of recovery against Landlord under the Prime Lease to the extent that Sublessor waived its rights of recovery against Landlord under the Prime Lease. Neither Sublessor nor Subtenant shall be liable to the other or to any insurance company (by way of subrogation or otherwise) insuring the other party for any loss of or damage to any building, structure or other tangible property, or any resulting loss of income, or losses under worker's compensation laws, even though such loss or damage might have been caused by the negligence of such party, its agents or employees, if any such loss or damage is covered by (or was required under this Sublease to be covered by) insurance benefiting the party suffering such loss or damage, to the extent of the proceeds of such insurance (or the amount of coverage required under this Sublease if such insurance was not obtained or maintained). Subtenant will cause its insurance carriers to include waiver of subrogation clauses or endorsements in favor of Landlord and Sublessor.

16.    SUBORDINATE TO PRIME LEASE.

A.    Prime Lease. This Sublease is and shall be subject and subordinate to the Prime Lease, and to the matters to which the Prime Lease is or shall be subject and subordinate. A copy of the Prime Lease has been delivered to and examined by Subtenant. The terms, covenants and conditions set forth in the Prime Lease are incorporated herein by reference, except to the extent that they are inapplicable or modified by the provisions of this Sublease, and Subtenant agrees to be bound by all of the provisions of the Prime Lease applicable to the Premises, except that Subtenant shall be obligated to pay the rent provided in this Sublease, and not the rent provided in the Prime Lease.

B.    No Greater Rights. Any obligation of Sublessor which is contained in this Sublease by the incorporation by reference of the provisions of the Prime Lease may be observed or performed by Sublessor using reasonable efforts to cause Landlord to observe and/or perform the same, and Sublessor shall have a reasonable time to enforce its rights to cause such

observance or performance. Subtenant shall not in any event have any rights in respect of the Premises greater than Sublessor's rights under the Prime Lease.

C.    <u>Subtenant Not to Breach</u>. Subtenant shall not do or permit to be done any act or thing which may constitute a breach or violation of any term, covenant or condition of the Prime Lease by the tenant thereunder, whether or not such act or thing is permitted under the provisions of this Sublease.

D.    <u>No Privity of Estate or Contract</u>. Nothing contained in this Sublease shall be construed to create privity of estate or of contract between Subtenant and Landlord.

17.    <u>TERMINATION OF PRIME LEASE</u>.

A.    <u>Termination Prior to Expiration Date of Sublease</u>. If for any reason the term of the Prime Lease shall have terminated prior to the Expiration Date, this Sublease shall thereupon be terminated and Sublessor shall not be liable to Subtenant by reason thereof unless both (i) Subtenant shall not then be in default hereunder and (ii) said termination shall have been effected because of the breach or default of Sublessor as tenant under the Prime Lease. In the event of termination of the Prime Lease pursuant to casualty or condemnation of the Premises, this Sublease shall be terminated effective on the date of termination of the Prime Lease and Subtenant shall have no claim against Sublessor or any right to insurance or condemnation proceeds in connection therewith.

B.    <u>Casualty or Condemnation</u>. In the event of casualty or condemnation, this Sublease shall continue in effect if the Prime Lease is not terminated, and the applicable provisions of the Prime Lease shall govern.

18.    <u>NOTICES</u>.

All notices, consents, approvals, demands and requests (collectively, "<u>Notices</u>") delivered by either party to the other hereunder shall be in writing and shall be sent either by United States registered or certified mail and deposited in a United States Post Office, return receipt requested and postage prepaid, or by reputable overnight air courier such as Federal Express. Notices which are served upon Sublessor or Subtenant by mail in the manner provided herein shall be deemed to have been given or served for all purposes hereunder on the third business day next following the date on which such Notice shall have been mailed as aforesaid. After delivery of possession of the Premises to Subtenant, all Notices given to Subtenant shall be addressed to

Subtenant at the Premises; until such delivery, notice to Subtenant shall be given at its address set forth at the head of this Sublease. All Notices given to Sublessor shall be addressed to Sublessor at its address set forth at the head of this Sublease, to the attention of Vice President - Real Estate. Sublessor or Subtenant may from time to time change the names and/or addresses to which Notices given to either of them shall be addressed and sent as aforesaid, by designating such other names and/or addresses in a notice given to the other party in accordance with the provisions of this Section 18.

19.    DEFAULT.

A.    Event of Default. Each of the following shall be deemed to be an "Event of Default" by Subtenant and a breach by Subtenant hereunder: (i) the assignment of this Sublease or the subletting of the Premises, whether by operation of the law or otherwise, without the prior written consent of Sublessor, (ii) the Premises being abandoned or becoming vacant or deserted during the Term and remaining so for ten (10) days after Sublessor shall have given to Subtenant a notice specifying the nature of such default, (iii) Subtenant's failure to take possession of the Premises within ten (10) days after tender of possession, (iv) Subtenant's failure to promptly begin and diligently pursue completion of Subtenant's Work, or to open for business on or before the date which is one hundred twenty (120) days after the Commencement Date, (v) the non-payment of any Base Rent or Additional Rent Charges or any part thereof when same is due, or failure to make any other payment herein provided for, and the continuance of such non-payment for five (5) days after Sublessor shall have given notice of nonpayment to Subtenant, or (vi) the default in the performance of any other obligation of Subtenant under this Sublease, and the continuance of such default for ten (10) days after Sublessor shall have given to Subtenant a notice specifying the nature of such default, but if said default shall be of such nature that it cannot reasonably be cured or remedied within said ten (10) day period, same shall not be deemed an Event of Default if Subtenant shall have commenced in good faith the curing or remedying of such default within such ten (10) day period and shall thereafter continuously and diligently proceed therewith to completion, provided in any and all events, however, that such default is cured within sixty (60) days from the date of Sublessor's notice.

B.    Remedies. In the event of Subtenant's default or the occurrence or existence of a Event of Default, Subtenant shall pay to Sublessor, on demand, such expenses as Sublessor may

incur, including, without limitation, attorneys' fees, court costs, disbursements, and any and all

other costs incurred by Sublessor in enforcing the performance of any obligation of Subtenant

under this Sublease.  If an Event of Default occurs, Sublessor shall have the following rights and

remedies, in addition to all rights and remedies available under law or equity: (i) Sublessor may

declare this Sublease terminated upon written notice to Subtenant; and/or (ii) Sublessor or its

agents, servants, representatives, successors or assigns may, immediately or at any time

thereafter, re-enter and resume possession of the Premises and remove all persons and property

therefrom, either by summary dispossess proceedings or by a suitable action or proceeding at

law, or by force or otherwise, without being liable for any damages therefor, and no such

re-entry shall be deemed an acceptance or surrender of this Sublease; and/or (iii) Sublessor may,

but shall have no obligation to, in its own name, but as agent for Subtenant if this Sublease is not

terminated, relet the whole or any portion of the Premises for any period equal to or greater or

less than the period which would have constituted the balance of the Term, for any sum which

Sublessor may deem reasonable, to any tenant(s) which Sublessor may deem appropriate, and

Sublessor may grant concessions, including free rent.  In the event of any breach or threatened

breach by Subtenant of any of the covenants or provisions of this Sublease, Sublessor shall have

the right of injunction and the right to invoke any remedy allowed at law or in equity; mention in

this Sublease of any particular remedy shall not preclude Sublessor from any other remedy at law

or in equity.

C. <u>Damages</u>.  Sublessor shall in no event be liable in any way whatsoever for its failure

or refusal to relet the Premises or any part thereof.  Sublessor shall be entitled to recover from

Subtenant, and Subtenant shall pay to Sublessor immediately upon demand by Sublessor, the

amounts equal to all of the expenses incurred by Sublessor in connection with (i) recovering

possession of the Premises, (ii) any reletting(s) of the Premises and related brokerage costs,

including without limitation costs for making alterations, repairing or otherwise preparing the

Premises for reletting(s), (iii) court costs, and (iv) attorneys' fees incurred in connection with any

of the foregoing.  Subtenant hereby expressly waives any and all rights of redemption granted by

or under any present or future laws in the event of this Sublease being terminated and/or

Sublessor obtaining possession of the Premises pursuant to the provisions of this <u>Section 18</u>.

Sublessor shall also be entitled to recover from Subtenant for each month of the balance of the

Term or the period which would otherwise have constituted the balance of the Term, the amount, if any, by which the sum of each monthly installment of the Base Rent which would have been payable had there been no Event of Default, plus the amount of Additional Rent which would have been payable had there been no Event of Default, exceeds the net amount, if any, of the rents collected on account of the reletting(s) of the Premises for the month in question, which amounts shall be due and payable by Subtenant to Sublessor at Sublessor's option, either (1) in monthly installments on the last day of each month, and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Sublessor to collect the deficiency for any subsequent month by way of a similar proceeding, or (ii) in a lump sum in advance discounted to present value at a discount rate of 4% per year. Sublessor, at Sublessor's option, may make such alterations and repairs in and to the Premises as Sublessor in its sole judgment considers advisable and necessary for the purpose of reletting the Premises, and the making of such alterations, and repairs shall not operate or be construed to release Subtenant from liability hereunder as aforesaid.

D.     Late Charges and Returned Check Charges.  If payment of any Base Rent or Additional Rent is not made by the fifth (5th) day after the date on which such amount was due and payable, Subtenant shall pay as a late charge the greater of (i) Two Hundred Fifty and No/100 Dollars (S250.00), or (ii) five percent (5%) of the overdue payment, and interest on the amount overdue at the lesser of (a) eighteen percent (18%) per annum, or (b) the highest rate allowed by law (the "Default Rate") from the date on which such amount was due until the date of payment, as reimbursement of Sublessor's expenses incurred as a result of Subtenant's failure to make prompt payment. In addition to any late charges or other remedies available to Sublessor, if any check is returned to Sublessor by Subtenant's bank by reason of insufficient funds, uncollected funds or otherwise, Sublessor shall pay to Subtenant a return check administrative charge of Two Hundred Fifty Dollars ($250.00). Sublessor shall pay the late charges and return check administrative charges for any month as Additional Rent on the first day of the following month.

E.     Additional Right of Sublessor to Cure Subtenant's Defaults.  Sublessor may, but shall not be obligated to, cure, at any time upon ten (10) days notice or without notice in case of emergency, any default(s) by Subtenant under this Sublease, and Subtenant shall pay to

Sublessor on demand all costs and expenses incurred by Sublessor in curing such default(s),
including, without limitation, court costs and attorneys' fees and disbursements in connection
therewith, together with interest on the amount of costs and expenses so incurred at the Default
Rate.

    F.    Special Bankruptcy Provision.  If Subtenant becomes a debtor within the meaning
of the Bankruptcy Reform Act of 1978, as the same may be from time to time amended (the
"Bankruptcy Code"), and, notwithstanding any other provision of this Sublease, this Sublease
and Sublessor's and Subtenant's rights thereunder are then made subject to the Bankruptcy Code,
it is covenanted and agreed that the failure of Subtenant or its representative duly appointed in
accordance with the Bankruptcy Code to (i) provide Sublessor with adequate assurance that all of
Subtenant's obligations under this Sublease shall continue to be fully complied with for the
remaining Term, or (ii) furnish accurate information and adequate assurance as to the source of
rent and other consideration due to Sublessor under this Sublease, or (iii) conduct or have
conducted at the Premises Subtenant's business as provided in this Sublease, shall in any of such
events be deemed an Event of Default, and Sublessor shall have all rights and remedies herein
afforded it in respect of any Event of Default.  It is understood and agreed that the Premises is
situate in a "shopping center" as such term is used in the Bankruptcy Code.

    G.    Default by Sublessor.  Sublessor shall only be deemed to be in default hereunder
if Sublessor violates or fails to perform any covenant or agreement hereunder which is not
observed or performed by Sublessor within thirty (30) days after the receipt by Sublessor of
written notice from Subtenant specifically identifying such violation or failure.  Sublessor shall
not be considered in default so long as Sublessor commences to cure the violation within said
thirty (30) day period and diligently pursues the completion of such cure.

20.    WAIVER OF JURY TRIAL AND RIGHT TO COUNTERCLAIM.

    SUBLESSOR AND SUBTENANT EACH HEREBY WAIVES ALL RIGHT TO TRIAL
BY JURY IN ANY SUMMARY OR OTHER ACTION, PROCEEDING OR
COUNTERCLAIM ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS
SUBLEASE, THE RELATIONSHIP OF SUBLESSOR AND SUBTENANT, THE PREMISES
OR THE USE AND OCCUPANCY THEREOF, OR ANY CLAIM OF INJURY OR
DAMAGES.  SUBTENANT ALSO HEREBY WAIVES ALL RIGHT TO ASSERT OR

INTERPOSE A COUNTERCLAIM (OTHER THAN A COMPULSORY COUNTERCLAIM)
IN ANY PROCEEDING OR ACTION TO RECOVER OR OBTAIN POSSESSION OF THE
PREMISES.

21.   END OF TERM.

At the expiration or sooner termination of the Term, Subtenant shall quit and surrender to
Sublessor the Premises, broom clean, free of all occupants, and in good condition, ordinary wear
and tear and damage by fire and any other insured casualty excepted. At such expiration or
sooner termination, Subtenant shall remove from the Premises all property of Subtenant,
including its sign(s), and, at the option of Sublessor, shall remove all alterations and other
improvements made by Subtenant to the Premises, and Subtenant shall repair all damage to the
Premises caused by any and all such removal and restore the Premises to the condition in which
they were prior to the installation of the items so removed, including the areas where Subtenant
affixed its sign(s). Any property of Subtenant not so removed may be deemed to be abandoned,
or Sublessor may remove the same and restore any damage, at Subtenant's expense.

22.   HOLDOVER.

If Subtenant remains in possession of the Premises after the expiration or termination of
the Term, Subtenant shall be deemed to be occupying the Premises as a tenant from month to
month at the sufferance of Sublessor subject to all of the provisions of this Sublease, except that
the Base Rent shall be at a monthly rate equal to the greater of (i) the rent which Sublessor owes
for such period under the Prime Lease, or (ii) 150% of the monthly Base Rent in effect during
the last month of the Term. Subtenant shall give to Sublessor at least thirty (30) days' prior
written notice of any intention to quit the Premises.

Notwithstanding the foregoing provisions of this Section 22, if Subtenant holds over after
the expiration or termination of the Term and Sublessor desires to regain possession of the
Premises, then Sublessor, at its option, may forthwith reenter and take possession of the Premises
without process, or by any legal process in force in the jurisdiction in which the Shopping Center
is located. Any rental amounts for such hold over period which are deposited into Sublessor's
rental account shall not be deemed accepted by Sublessor if Sublessor promptly returns such
rental amounts to Subtenant. Nothing herein shall limit Sublessor's right to recover damages
pursuant to this Sublease and such other damages as are available to Sublessor at law or in equity

(including but not limited to any and all liability to Landlord or otherwise caused by such holdover).

23.     BROKERAGE.

       Subtenant represents to Sublessor that, except for Bobowski & Associates Commercial Real Estate ("Bobowski") and Edgemark Commercial Real Estate Services LLC ("Edgemark"), no broker or other person had any part, or was instrumental in any way, in bringing about this Sublease, and Subtenant shall pay, and shall indemnify, defend and hold harmless, Sublessor from and against, any claims made by any other broker or other person for a brokerage commission, finder's fee, or similar compensation, by reason of or in connection with this Sublease, and any loss, liability, damage, cost and expense (including, without limitation, reasonable attorneys' fees) in connection with such claims if such broker or other person claims to have had dealings with Subtenant. Sublessor shall pay to Bobowski the commission due to the broker(s) named herein in respect of this Sublease, pursuant to separate agreement, and Bobowski shall pay the commission due to Edgemark (Fifty Four Thousand Dollars [$54,000]) in respect to this Sublease..

24.     FINANCIAL STATEMENTS AND ESTOPPEL CERTIFICATES.

       Subtenant shall, within five (5) days after each and every request by Sublessor, execute, acknowledge and deliver to Sublessor either or both of the following: (a) an annual financial statement, and (b) a statement in writing (i) certifying that this Sublease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified, and stating the modifications), and the Commencement Date, Rent Commencement Date and Expiration Date, (ii) specifying the dates to which the Base Rent and Additional Rent have been paid, (iii) stating whether or not, to the best knowledge of Subtenant, Sublessor is in default under this Sublease, and, if so, specifying each such default, (iv) stating whether or not, to the best knowledge of Subtenant, any event has occurred which with the giving of notice or passage of time, or both, would constitute a default by Sublessor under this Sublease, and, if so, specifying each such event, (v) stating whether Subtenant has exercised any option(s) to extend the Term of this Sublease, and, if so, specifying each such extension, and (vi) any other matter as may be reasonably requested. Any such statement delivered pursuant to this Section 24 may be

306800 v3                                                  24

relied upon by any prospective assignee or transferee of the leasehold estate under the Prime

Lease.

25.    AMERICANS WITH DISABILITIES ACT.

Sublessor and Subtenant, as the case may be, shall supply to the other party as promptly

as possible, but in any event within ten (10) days after Sublessor or Subtenant, as the case may

be, first receives or sends the same, written notice of, and copies of all applicable notices or other

documentation thereof, as applicable, (i) any notices, reports or warnings made to or received

from any governmental agency or entity arising out of or in connection with the ADA (as defined

in this Section 25) and relating to all or any portion of the Premises, Subtenant's use or

occupancy thereof, the Building or the Shopping Center; (ii) any complaints, charges, claims, or

asserted violations made or threatened in writing by any person, agency or entity alleging

violation of the ADA or regarding non-compliance with the ADA, and relating to all or any

portion of the Premises, Subtenant's use or occupancy thereof, the Building or the Shopping

Center; (iii) any enforcement or other governmental or regulatory action or investigation

instituted, contemplated, or threatened pursuant to any legal requirements regarding or in

connection with the ADA and relating to all or any portion of the Premises, Subtenant's use or

occupancy thereof, the Building or the Shopping Center; (iv) any claim made or threatened by

any person against Subtenant, the Premises, the Building or the Shopping Center, relating to

damage, compensation, loss or injury resulting from or claimed to result from any alleged non-

compliance with the ADA.  ADA shall mean the Americans with Disabilities Act of 1991, 42

U.S.C. 12.101 et seq., and all regulations and other promulgations applicable thereto, and all

amendments thereto.

26.    HAZARDOUS SUBSTANCES.

A.    Hazardous Materials.  Subtenant shall not use, generate, manufacture, produce,

store, treat, dispose of or permit the escape of, on, under, about or from the Premises, or any part

thereof, any asbestos or any flammable, explosive, radioactive, hazardous, toxic, contaminating,

polluting matter, waste, or substance or related injurious materials, whether injurious by

themselves or in combination with other materials (collectively "Hazardous Materials").  Further,

Subtenant shall not use, generate, manufacture, produce, store, treat, dispose of or permit the

escape of, on, under, about or from the Premises any material, substance, or chemical which is

306800 v3                                            25

regulated by any federal, state or local law, rule, ordinance or regulation (collectively "Regulated Materials"). Notwithstanding the foregoing, if Subtenant's permitted use of the Premises requires the use and/or storage of any Hazardous Materials and/or Regulated Materials on, under or about the Premises, Subtenant shall provide written notice to Sublessor, prior to final execution of this Sublease, of the identity of such materials and Subtenant's proposed plan for the use, storage and disposal of such materials; such use, storage and disposal shall be subject to Sublessor's written approval, in Sublessor's sole discretion. If Sublessor approves the proposed use, storage and disposal of specific Hazardous Materials and/or Regulated Materials in the Premises, Subtenant may use and store upon the Premises only such approved materials. Subtenant shall comply with all Laws with respect to such use and storage, including, without limitation, the removal and disposal of such Hazardous Materials and/or Regulated Materials at the expiration or earlier termination of the Sublease Term. Notwithstanding anything to the contrary contained in this Sublease. If any of the equipment serving the Premises such as, but not limited to, refrigerators, air conditioning systems, and supplemental HVAC systems utilize refrigerants containing chlorofluorocarbons ("CFC's"), Sublessor, in its sole discretion, shall have the option to require Subtenant to remove such equipment at the expiration or earlier termination of the Term; in addition, Subtenant shall be responsible for compliance with all Laws with respect to such equipment and/or the use of CFC's which may include the removal and disposal of such equipment. At the expiration or termination of the Sublease, Sublessor may obtain an environmental audit of the Premises at the sole cost of Subtenant. Subtenant shall defend (by counsel reasonably acceptable to Sublessor), indemnify, protect and hold Sublessor and each of Sublessor's partners, employees, agents, attorneys, successors and assigns, free and harmless from and against any and all claims, liabilities, penalties, forfeitures, losses or expenses (including attorney's fees), or death of or injury to any person or damage to any property whatsoever, arising from or caused in whole or in part, directly or indirectly by:

(i)      The presence in, on, under or about the Premises, or discharge in or from the Premises of any Hazardous Materials and/or Regulated Materials introduced into the Premises by Subtenant or caused by Subtenant or Subtenant's use, analysis, storage, removal, transportation, disposal, release, threatened release, discharge or generation of Hazardous Materials and/or Regulated Materials to, in, on, under, about or from the Premises, or;

(ii)    Subtenant's failure to comply with any federal, state, county, municipal, local or other law, rule, ordinance and regulation now or hereafter in effect relating to the industrial hygiene, environmental protection, use, analysis, generation, manufacture, purchase, transportation, storage, removal and disposal of Hazardous Materials and/or Regulated Materials.

In connection with, or as a result of, (i) or (ii) above, Subtenant's obligations hereunder shall include, without limitation and whether foreseeable or unforeseeable, all costs of any required or necessary testing, repair, cleanup, removal, detoxification or decontamination of or from the Premises and the preparation and implementation of any closure, remedial action, site assessment costs or other required plans in connection therewith. In addition, upon request from Sublessor at any time during the Sublease Term, Subtenant shall execute affidavits, representations, and any other similar documents concerning Subtenant's best knowledge and belief regarding the presence of Hazardous Materials and/or Regulated Materials on, under or about the Premises. Further, Subtenant's obligations hereunder shall survive the expiration or earlier termination of this Sublease. For purposes of this Section 26, any acts or omissions of Subtenant whereby employees, agents, assignees, contractors or subcontractors of Subtenant or others are acting for or on behalf of Subtenant (whether or not they are negligent, intentional, willful or unlawful), will be strictly attributable to Subtenant.

27.    MISCELLANEOUS COVENANTS.

A.    No Waste. Subtenant shall not commit or suffer to be committed any waste upon the Premises or any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant or occupant of the Shopping Center.

B.    Trash Removal. Subtenant shall independently contract with contractors for the regular removal of Subtenant's garbage and refuse and shall pay the cost thereof.

C.    Interference. Subtenant shall take no action which would violate any union contracts of Sublessor affecting the Shopping Center, nor create any work stoppage, picketing, labor disruption or dispute, or any interference with the business of Sublessor or any tenant or occupant in the Shopping Center or with the rights and privileges of any customer or other person(s) lawfully in and upon said Shopping Center, nor cause the impairment of the good will of the Shopping Center; and if any action of Subtenant shall result in the occurrence of any of the foregoing, Subtenant shall immediately discontinue such action.

D.    <u>Insurance Premiums</u>.  Subtenant shall not do or permit to be done any act or thing in or upon the Premises which will or may invalidate or be in conflict with fire insurance policies covering the building, the Shopping Center or any part thereof or fixtures and property therein, and shall comply with all rules, orders, regulations or requirements of the Board of Fire Underwriters having jurisdiction, or any other similar body, and shall not do, or permit to be done, anything in or upon the Premises, or bring or keep anything therein, which shall increase the rate of fire insurance on the building, the Shopping Center or on the property located therein. If by reason of failure of Subtenant to comply with the provisions of this Section, the fire insurance rate shall at any time be higher than it otherwise would be, then, in addition to the right of Sublessor to the exercise of any and all other remedies available under this Sublease, Subtenant shall reimburse Sublessor on demand as Additional Rent for the portion of all fire insurance premiums which shall have been then or in the future charged because of such violation by Subtenant and which Sublessor shall have, or may be required to have, paid on account of an increase in rate in its own policies of insurance.  In addition to the foregoing, Subtenant will, if Sublessor so requests, cease the operation of any action or remove any objects or improvements which have resulted in the increase to Sublessor's insurance premiums.

E.    <u>Consents and Approvals</u>.  In any instance when Sublessor's consent or approval is required under this Sublease, Sublessor's refusal to consent to or approve any matter or thing shall be deemed reasonable if such consent or approval has not been obtained from the Landlord. In the event that Subtenant shall seek the approval by or consent of Sublessor and Sublessor shall fail or refuse to give such consent or approval, Subtenant shall not be entitled to any damages for any withholding or delay of such approval or consent by Sublessor, it being intended that Subtenant's sole remedy shall be an action for injunction or specific performance and that said remedy of an action for injunction or specific performance shall be available only in those cases where Sublessor shall have expressly agreed in writing not to unreasonably withhold or delay its consent.

F.    <u>No Waiver</u>.  The failure of Sublessor to insist in any one or more cases upon the strict performance or observance of any obligation of Subtenant hereunder or to exercise any right or option contained herein shall not be construed as a waiver or relinquishment for the future of any such obligation of Subtenant or any right or option of Sublessor.  Sublessor's

receipt and acceptance of Base Rent or Additional Rent, or Sublessor's acceptance of

performance of any other obligation by Subtenant, with knowledge of Subtenant's breach of any

provision of this Sublease, shall not be deemed a waiver o f such breach. No waiver by

Sublessor of any term, covenant or condition of this Sublease shall be deemed to have been made

unless expressed in writing and signed by Sublessor.

G.    Successors and Assigns.  The provisions of this Sublease, except as herein

otherwise specifically provided, shall extend to, bind and inure to the benefit of the parties hereto

and their respective personal representatives, heirs, successors and permitted assigns.  In the

event of any assignment or transfer of the leasehold estate under the Prime Lease, the transferor

or assignor, as the case may be, shall be and hereby is entirely relieved and freed of all

obligations under this Sublease.

H.    Interpretation.  This Sublease shall be governed by and construed in accordance

with the laws of the state in which the Premises are located, without regard to conflicts of laws

principles.  If any provision of this Sublease or the application thereof to any person or

circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder

of this Sublease and the application of that provision to other persons or circumstances shall not

be affected but rather shall be enforced to the extent permitted by law.  The table of contents,

captions, headings and titles, if any, in this Sublease are solely for convenience of reference and

shall not affect its interpretation.  This Sublease shall be construed without regard to any

presumption or other rule requiring construction against the party causing this Sublease to be

drafted.  If any words or phrases in this Sublease shall have been stricken out or otherwise

eliminated, whether or not any other words or phrases have been added, this Sublease shall be

construed as if the words or phrases so stricken out or otherwise eliminated were never included

in this Sublease and no implication shall be drawn from the fact that said words or phrases were

so stricken out or otherwise eliminated.  Each covenant, agreement, obligation or other provision

of this Sublease shall be deemed and construed as a separate and independent covenant of the

party bound by, undertaking or making same, not dependent on any other provisions of this

Sublease unless otherwise expressly provided.  All terms and words used in this Sublease,

regardless of the number or gender in which they are used, shall be deemed to include any other

number and any other gender as the context may require.  The word "person" as used in this

Sublease shall mean a natural person or persons, a partnership, a corporation or any other form of business or legal association or entity. Time shall be of the essence of each and every obligation of Subtenant under this Sublease.

I.      No Reservation. No employee or agent of Sublessor, no broker, and no agent of any broker has authority to make or agree to take a sublease or any other agreement or undertaking in connection herewith, including but not limited to the modification, amendment or cancellation of a sublease. The mailing or delivery of this document by an employee or agent of Sublessor, any broker or the agent of any broker to a potential Subtenant, its agent or attorney shall not be deemed an offer of Sublessor or a reservation of or option for the Premises until such time as a sublease, duly executed by Sublessor and Subtenant, is delivered to such potential Subtenant, its agent or attorney.

J.      No Partnership. Nothing contained in this Sublease shall be deemed or construed to create a partnership or joint venture of or between Sublessor and Subtenant, or to create any relationship other than that of sublandlord and subtenant.

K.      No Representations. Neither Sublessor nor any agent of Sublessor has made any representations or promises with respect to the Premises, the Building or the Shopping Center except as expressly set forth in this Sublease, and no rights, privileges, easements or licenses are granted to Subtenant except as expressly set forth in this Sublease.

L.      Quiet Enjoyment. Sublessor covenants that if Subtenant pays the rent and performs all of the covenants, agreements and conditions specified in this Sublease to be performed by Subtenant, Subtenant shall for the Term freely, peaceably and quietly occupy and enjoy the full possession of the Premises without molestation or hindrance by Sublessor, its agents or employees.

M.      Complete Agreement. There are no representations, agreements, arrangements or understandings, oral or written, between the parties relating to the subject matter of this Sublease which are not fully expressed in this Sublease. This Sublease cannot be changed or terminated orally or in any manner other than by a written agreement executed by both parties.

IN WITNESS WHEREOF, Sublessor and Subtenant have hereunto executed this Sublease as of the day and year first above written.

306800 v3                                    30

SUBLESSOR:

CIRCUIT CITY STORES, INC.

By: _____ [SEAL]
Vice President

**R. BRUCE LUCAS**
Vice President Construction/Real Estate

SUBTENANT:

LA-Z-BOY SHOWCASE SHOPPES INC.

By: _____ [SEAL]
Name: _CHARLES FORCEY_
Title: _CEO  3/15/02_



## EXHIBIT B

## RULES AND REGULATIONS

1.      Subtenant, its employees and/or agents, shall not solicit business in the parking or other Common Areas, nor shall Subtenant, its employees or its agents, distribute any handbills or other advertising matter in or on the parking or other Common Areas, or in or on any automobiles parked therein.

2.      Subtenant shall not carry on any trade or occupation, or operate any instrument or apparatus or equipment which emits any odor or causes any noise or sound audible outside the Premises and/or which may be deemed offensive in nature.

3.      Subtenant shall not place or maintain any display of merchandise, or otherwise conduct any business (including the storage of any merchandise or other property of Subtenant), in any areas of the Shopping Center outside of the Premises.

4.      Subtenant shall store or stock in the Premises such and only such goods, wares, merchandise or other property as shall be reasonably required for the conduct of Subtenant's business in the Premises.

5.      Subtenant shall not use, permit or suffer the use of the Premises, or any part thereof, as living, sleeping or lodging quarters, or other residential purpose.

6.      Subtenant shall not use the plumbing facilities for any purpose other than that for which the are constructed, and no grease or foreign substance of any kind shall be disposed of therein, and the expense of any breakage, stoppage or damage (whether on or off the Premises) resulting from any breach thereof shall be borne by Subtenant.

7.      Subtenant shall not install or permit to be installed in, on or about the Premises any audio, video or radio transmitting equipment, diathermy equipment, x-ray equipment or any other material or equipment which would cause any interference with, or interruption of, radio or television reception or transmission anywhere in the Shopping Center.

8.      No loudspeakers, televisions, phonographs, radios, flashing lights or other devices shall be used in a manner so as to be heard or seen outside of the Premises.

9.      Subtenant shall not obstruct the passageways, driveways, approachways, walks, roadways, exits and entries in, to and from and through the Common Areas and all other parts of the Shopping Center used in common with other tenants.

10.     Subtenant shall keep its display windows and sales areas illuminated and its signs and exterior lights lit each and every day of the Term during customary retail business hours.

11.     Neither Subtenant, its agents, employees or contractors shall enter upon or have access to any roof at the Shopping Center without Sublessor's express prior consent in each instance.

12.     All trash, refuse and waste materials shall be regularly removed from the Premises, and until removal shall be stored (i) in adequate containers, which such containers shall be located so as not to be visible to the general public shopping in the Shopping Center, and (ii) so as not to constitute any health or fire hazard or nuisance to any other occupant of or other person in the Shopping Center. No burning of trash, refuse or waste materials shall occur. Subtenant shall not throw, discard or deposit any paper, glass or extraneous matter of any kind, except in designated receptacles, or create litter or hazards of any kind; nor deface, damage or demolish any part of the Premises or any sign, light standard or fixture, landscaping materials or other improvements within the Shopping Center, or the property of any customers, business invitees or employees situated within the Shopping Center.

13.     Subtenant shall cause all trucks servicing it to load and unload prior to the hours of the Shopping Center opening for business to the general public.

306800 v3                                          1

14.    All of Subtenant's window displays and other displays in or on the Premises shall be in keeping with first class standards of the retail trade.

15.    If the Premises be or become infested with vermin, pests or termites, Subtenant shall at Subtenant's expense cause the same to be exterminated from time to time to the satisfaction of Sublessor and shall employ such exterminators and such exterminating company or companies as shall be approved by Sublessor.

16.    Subtenant shall not operate in or on the Premises or in any part of the Shopping Center any coin or token operated vending machine or similar device for the sale of merchandise (including, without limitation, pay telephones, pay lockers, pay toilets, scales, amusement devices, and machines for the sale of beverages, foods, candy, cigarettes or other commodities). Subtenant shall not operate any ATM outside the Premises.

17.    Any freight handling equipment (including, without limitation, forklift trucks, tow trucks or similar machines) used by or on behalf on Subtenant in the Shopping Center shall be equipped with pneumatic rubber tires, and any such equipment which is powered shall be electrically powered.

18.    Subtenant shall not place a load on any floor in the Premises or the Shopping Center which shall exceed the floor load per square foot which such floor was designed to carry, and Subtenant shall install any heavy items of equipment which shall be installed or maintained in the Premises in such a manner so as to achieve a proper distribution of weight.

19.    Subtenant shall not install, operate or maintain in the Premises or the Shopping Center any electrical equipment which will overload the electrical system therein, or any part thereof, beyond its reasonable capacity for proper and safe operation as determined by Sublessor in relation to the overall system and requirements therefor in the Shopping Center, or which does not bear Underwriter's approval.

20.    Subtenant and its agents and employees shall park their vehicles only in areas from time to time designated by Sublessor as the areas for employee parking. Subtenant shall within five (5) days after written notice from Sublessor, furnish Sublessor, or its authorized agent, license tag number assigned to its automobiles and the automobiles of all its agents and employees working at the Premises. Sublessor, after notice to Subtenant that Subtenant or any of its agents or employees are not parking in said designated parking areas, shall have the option to tow away such vehicles at Subtenant's expense, such towing charges to be deemed an Additional Rent Charge. Subtenant shall not at any time park or permit the parking of any truck or any delivery vehicle in the parking area. Subtenant shall require all trucks or other vehicles serving Subtenant to use the service area designated by Sublessor. Subtenant shall cause all vehicles servicing Subtenant to be promptly loaded or unloaded and removed.

