| | |
|---|---|
| Gregg M. Galardi, Esq.<br>Ian S. Fredericks, Esq.<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>One Rodney Square<br>PO Box 636<br>Wilmington, Delaware 19899-0636<br>(302) 651-3000 | Dion W. Hayes (VSB No. 34304)<br>Douglas M. Foley (VSB No. 34364)<br>MCGUIREWOODS LLP<br>One James Center<br>901 E. Cary Street<br>Richmond, Virginia 23219<br>(804) 775-1000 |

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors in Possession

```
         IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION
- - - - - - - - - - - - - - - x
In re:                        :  Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :  Case No. 08-35653 (KRH)
et al.,                       :
                              :  Jointly Administered
              Debtors.        :
- - - - - - - - - - - - - - - x
```

**DEBTORS' MOTION FOR ORDER APPROVING STIPULATION BETWEEN DEBTORS AND CELLCO PARTNERSHIP D/B/A/ VERIZON WIRELESS PURSUANT TO BANKRUPTCY CODE SECTION 105 AND BANKRUPTCY RULE 9019**

        The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move (the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and

*(cont'd)*

1

"Motion") for entry of an order (the "Proposed Order") under section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the stipulation (the "Stipulation" substantially in the form attached to the Proposed Order as Exhibit A)[2] between the Debtors and Cellco Partnership d/b/a/ Verizon Wireless ("Verizon Wireless").  In support of the Motion, the Debtors respectfully represent:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicate for the relief requested herein is Bankruptcy Code section 105.  Such relief is warranted under Bankruptcy Rule 9019.

---

*(cont'd from previous page)*
   Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]   Unless otherwise indicated, capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation.

2

**BACKGROUND**

**A.    The Bankruptcy Cases.**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    Based in Richmond, Virginia, Debtors are a leading specialty retailer of consumer electronics and operate large nationwide electronics stores throughout the United States and Puerto Rico that sell, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

7.    Despite significant revenues, the Debtors have suffered two consecutive years of losses.  While the Debtors made every effort to improve their financial performance and

implement a global turnaround strategy, they were ultimately unable to consummate a successful restructuring outside of bankruptcy. In large part, the Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

8. Thus, the Debtors commenced these cases with the immediate goals of obtaining adequate postpetition financing and continuing their restructuring initiatives commenced prior to the Petition Date, including closing certain stores. In addition, the Debtors will continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of emerging from chapter 11 as a financially stable going concern.

**B.    The Dispute between Verizon Wireless and the Debtors.**

9. Circuit City Stores, Inc. ("Circuit City") and Verizon Wireless entered into that certain Cellular Direct Sales Agreement dated July 1, 2004, as amended from time to time (the "Direct Sales Agreement"). Pursuant to the Direct Sales Agreement, Verizon Wireless establishes and operates kiosks at substantially all of Circuit City's stores. These kiosks are Verizon Wireless stores within Circuit City stores. Verizon Wireless also establishes and operates standalone merchandising and demonstration displays at the kiosks for the purpose of offering, selling and marketing Verizon Wireless cellular

4

services.  The Direct Sales Agreement provides Verizon Wireless with complete control over the sale and marketing of its inventory and services.  Verizon Wireless is solely responsible for (i) hiring, training, managing and terminating all employees who work at the kiosks; and (ii) buying, selling and storing Verizon Wireless inventory; and (iii) establishing pricing and other fees for its products and services.

10. Pursuant to the Direct Sales Agreement, on or about the fifteenth day of each calendar month, Verizon Wireless pays Circuit City commissions on a monthly basis relating to each new activation of Verizon Wireless service obtained at a kiosk located within a Circuit City store during the prior month (the "Commissions").  Verizon Wireless then has the right to chargeback to Circuit City any Commissions paid on account of a Verizon Wireless customer that terminates Verizon Wireless service prior to completing 180 days of service, as well as any Commission paid on account of other cancelled or invalid activations as set forth in Section 3.1(e) of the Direct Sales Agreement (collectively, the "Chargebacks").

11. Pursuant to Schedule 8.1 of the Direct Sales Agreement, Verizon Wireless also pays Circuit City market development fund payments from time to time for advertising in the Circuit City circulars and on the Circuit City website (the "MDF Payments").

5

12. Prior to the Petition Date, at Circuit City's request, and pursuant to the Direct Sales Agreement, Verizon Wireless constructed approximately seventeen kiosks for new stores that Circuit City intended to open and installed five of the sixteen kiosks in certain of these new locations. Prior to the Petition Date, Circuit City revised its strategy and advised Verizon Wireless that it was not opening the new locations. Under the Direct Sales Agreement, if Verizon Wireless builds kiosks but does not operate them due to Circuit City's failure to operate the store, then Circuit City reimburses Verizon Wireless for reasonable out of pocket costs and expenses related to the kiosks (the "Kiosk Costs").

13. Verizon Wireless and Circuit City are also parties to a National Account Agreement (the "Corporate Agreement") pursuant to which Verizon Wireless provides wireless service to certain employees of the Debtors.

14. At all times prior to the Petition Date, Verizon Wireless has always owed more to Circuit City in Commissions under the Direct Sales Agreement than Circuit City has owed to Verizon Wireless under the Corporate Agreement or under the Direct Sales Agreement.

15. Mutuality of parties exists between Verizon Wireless and Circuit City with respect to the Direct Sales Agreement and the Corporate Agreement.

16. The Debtors and Verizon Wireless desire to resolve consensually any dispute concerning the manner in which Commissions, Chargebacks, Kiosks Costs, and other recoupment rights apply without having to resort to litigation. As a result, subject to Bankruptcy Court approval, the Debtors and Verizon Wireless have entered into the Stipulation in the form of <u>Exhibit A</u> to the Proposed Order filed concurrently herewith.

**RELIEF REQUESTED**

17. By this Motion, the Debtors request the entry of the Proposed Order under Bankruptcy Code Section 105 and Bankruptcy Rule 9019 approving the Stipulation and granting such other and further relief as is just and proper.

18. The Debtors believe the compromises and agreements set forth in the Stipulation are fair and equitable and in the best interest of the Debtors, their estates, creditors and other parties in interest and therefore should be approved.

**BASIS FOR RELIEF**

**A. The Underlying Dispute between the Debtors and Verizon**

19. As set forth above, the Debtors and Verizon Wireless have a dispute as to how to apply Commissions, Chargebacks, Kiosks Costs, and other recoupment rights in connection with various agreements entered into between Verizon Wireless and the Debtors.

7

20. In light of the costs, risks and delays associated with litigating the outstanding disputes between the Parties, the Debtors desired to settle such disputes with Verizon Wireless. After negotiations, the Debtors and Verizon Wireless have entered into the Stipulation. The Debtors believe that the Stipulation constitutes a fair and equitable resolution of the disputes between the Debtors and Verizon Wireless.

**B.    Terms of the Stipulation**

21. The salient terms and conditions of the Stipulation are as follows:[3]

> (a)    As of the Petition Date, pursuant to the Direct Sales Agreement, Verizon Wireless owes Circuit City unpaid Commissions for the month of October, 2008 (the "October Commissions"), which after netting $692,080.00 in Chargebacks owing from Circuit City to Verizon Wireless in accordance with Article III of the Direct Sales Agreement ("October Chargebacks") results in a net Commission for October of $2,457,890.00 (the "Net October Commissions");
>
> (b)    As of the Petition Date, pursuant to Section 2.5 of the Direct Sales Agreement, Circuit City owes Verizon Wireless $1,077,699.00 (the "Kiosk Costs Amount");
>
> (c)    Circuit City owes Verizon Wireless $200,106.24 for service fees that have accrued and are unpaid under the Corporate Agreement for the usage charges relating to the period prior to the Petition Date (the "Pre-Petition Service Fee Amount");

---

[3]  The following is merely a summary of the terms of the Stipulation. In the event there are any inconsistencies between the Stipulation and the summary set forth herein, the terms of the Stipulation control.

8

(d)  Verizon Wireless currently owes Circuit City an MDF payment in the amount of $460,000.00 for the invoice relating to October MDF and $218,000.00 in MDF for the period to the Petition Date (the "October/November MDF Payment");

(e)  Upon the Effective Date, Verizon Wireless is entitled and hereby authorized to recoup and/or setoff the October Chargebacks, the Kiosk Cost Amount, and the Pre-Petition Service Fee Amount owing by Circuit City against the October Commissions and/or the October/November MDF Payment owing by Verizon Wireless. Upon effectuating the setoff/recoupment in the foregoing sentence, Verizon Wireless shall remit the balance of $1,858,084.76 to Circuit City in full satisfaction of  the  October Commissions and the October/November MDF Payment;

(f)  Verizon Wireless shall be authorized and permitted from time to time to recoup any additional Chargebacks on a monthly basis whether relating to the pre-petition activations or post-petition activations against any future Commissions and MDF Payments owing to Circuit City from time to time in accordance with the terms and provisions of the Direct Sales Agreement without further Court approval; and

(g)  Verizon Wireless shall be authorized and permitted from time to time to setoff service fees or other amounts owing under the Corporate Agreement relating to the post-petition services against any future Commissions and MDF Payments owing to Circuit City from time to time without further Court approval provided, however, that in exchange for certain advertising concessions, Circuit City shall not be liable for Early Termination Fees described in section 2.3 of the Corporate Agreement for any subscriber lines for which Circuit City has requested termination by the Effective Date of this Stipulation.

**APPLICABLE AUTHORITY**

22.  The Stipulation represents a fair and reasonable compromise and settlement of disputed issues and claims among

9

the Debtors and Verizon Wireless.  Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement." Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy.  See In re Bond, 1994 U.S. App. Lexis 1282, *9-*14 (4th Cir. 1994)("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy'."); Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  Various courts have endorsed the use of Bankruptcy Rule 9019.  See, e.g., Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996); In re Foundation for New Era Philanthropy, Case No. 95-13729B, 1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug. 21, 1996); In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992); In re Check Reporting Service, Inc., 137 B.R. 653 (Bankr. W.D. Mich. 1992); In re Patel, 43 B.R. 500, 504 (N.D. Ill. 1982).

       23.  The standards by which a Court should evaluate a settlement are well established.  In addition to considering the proposed terms of the settlement, the Court should consider the following factors:

       (a) the probability of success in litigation;

       (b) the difficulty in collecting any judgment that may be obtained;

10

           (c) the complexity of the litigation involved, and the expense inconvenience and delay necessarily attendant to it; and

           (d) the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement.

See <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424-245 (1968); <u>United States ex. Rel. Rahman v. Oncology Assoc., P.C.</u>, 269 B.R. 139, 152 (D. Md. 2001); <u>In re Frye</u>, 216 B.R. 166, 174 (E.D. Va. 1997).

    24. The decision to approve a settlement or compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case. <u>See TMT Trailer Ferry</u>, 390 U.S. at 424-25. The settlement need not be the best that the debtor could have achieved, but need only fall "within the reasonable range of litigation possibilities." <u>In re Telesphere Communications, Inc.</u>, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994). In making its determination, a court should not substitute its own judgment for that of the debtor. <u>In re Neshaminy Office Bldg. Assoc.</u>, 62 B.R. 798, 803 (E.D. Pa. 1986). The court should exercise its discretion "in light of the general public policy favoring settlements." <u>In re Hibbard Brown & Co., Inc.</u>, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); <u>Nellis v. Shugrue</u>, 165 B.R. 115, 23 (S.D.N.Y. 1994) ("the

general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

25. The Debtors submit that the proposed settlement between the Debtors and Verizon Wireless, as set forth in the Stipulation, is beneficial to their estates and their creditors and that the Court should authorize the Debtors to enter into the Stipulation. The Stipulation represents a compromise that is fair and equitable, falls well within the range of reasonableness and satisfies the standards for approval under applicable law. The Stipulation with Verizon Wireless will also enable further substantial payments to the Debtors' estates under the Direct Sales Agreement, including $1,858,084.76 as of the date the Court approves the Stipulation.

26. Absent the Stipulation, however, the resolution of payment issues with Verizon Wireless might have been complicated and required the Debtors and their professionals to undertake a number of contested matters and/or adversary proceedings. This, in turn, would require the Debtors to unnecessarily expend the limited financial and human resources available to them at this stage of the Debtors' bankruptcy cases. By entering into the Stipulation, the Debtors can avoid the cost and uncertainty of such litigation and focus on their restructuring efforts or other matters.

27. As set forth herein, there is more than sufficient business justification for the Debtors to agree to the terms of the Settlement Agreement. By entering into the Stipulation and receiving the sum of $1,858,084.76 immediately, the Debtors and their estates will realize a pecuniary benefit now without the disadvantage and expense additional litigation would undoubtedly incur.

28. The Stipulation is fair, reasonable and in the best interest of the Debtors' estates. The Debtors believe that no party in interest would be harmed by the settlement set forth in the Stipulation. Rather, such settlement provides substantial benefit to the Debtors, their estates, their creditors and other parties in interest by facilitating a profitable return for the Debtors' estates. The Debtors, therefore, respectfully request that the Court approve the Stipulation.

29. Bankruptcy Code section 105 provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As noted above, approval of the relief requested herein furthers the Debtors' efforts to minimize their ongoing legal expenses, and to resolve claims in a manner that benefits the Debtors and is fair and equitable to

other parties in interest.  Accordingly, granting the relief requested herein is justified under Bankruptcy Code section 105.

## NOTICE

30.   Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130).  The Debtors submit that, under the circumstances, no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

31.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

## NO PRIOR REQUEST

32.   No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto,

14

granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: January 7, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley          .
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession