Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - x
                              :
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
           Debtors.           :    Jointly Administered
- - - - - - - - - - - - - - - x
```

**DEBTORS' MOTION FOR ORDER APPROVING STIPULATION BY AND AMONG THE DEBTORS AND INTERNATIONAL BUSINESS MACHINES CORPORATION PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363 AND BANKRUPTCY RULE 9019**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Order") approving the proposed Stipulation and Agreement between International Business Machines Corporation ("IBM") and the Debtors (the "Stipulation"), substantially in the form attached as Exhibit A to the Order.[2]  In support of the Motion, the Debtors respectfully represent:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]  Unless otherwise indicated, capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation.

these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief requested herein are Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 9019.

**BACKGROUND**

**A.   The Bankruptcy Cases.**

3.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.   Based in Richmond, Virginia, Debtors are a leading specialty retailer of consumer electronics and operate large nationwide electronics stores throughout

the United States and Puerto Rico that sell, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

       7.   Despite significant revenues, the Debtors have suffered two consecutive years of losses.  While the Debtors made every effort to improve their financial performance and implement a global turnaround strategy, they were ultimately unable to consummate a successful restructuring outside of bankruptcy.  In large part, the Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

       8.   Thus, the Debtors commenced these cases with the immediate goals of obtaining adequate postpetition financing and continuing their restructuring initiatives commenced prior to the Petition Date.  In addition, the Debtors will continue to evaluate their business, work closely with their vendors, and enhance customer relations with a goal of

emerging from chapter 11 as a financially stable going concern.

**B.    Events Leading To Entry Into The Stipulation.**

9.    Circuit City and IBM are parties to various contracts under which IBM provides Circuit City with different services for distinct aspects of Circuit City's business.  In particular, Circuit City and IBM are parties to that certain International Passport Advantage Agreement (as amended, the "IPAA").  A copy of the IPAA is attached to the Stipulation as Exhibit 1.

10.    Pursuant to the IPAA, Circuit City purchased and IBM provided licenses to use certain IBM software (the "Licensed Software").  The licenses for the Licensed Software are governed by the terms of the International Program License Agreement (as amended, the "IPLA").  A copy of the IPLA is attached to the Stipulation as Exhibit 2.

11.    Prior to the Petition Date, IBM reported to Circuit City that Circuit City may be exceeding the number of users authorized to use certain of the Licensed Software.  In response, IBM and Circuit City

commenced a joint audit of the Circuit City's use of the Licensed Software.

12. Based on the results of the audit to date, IBM contends that, under the terms of IPAA and the IPLA, Circuit City has exceeded the number of users authorized to use certain of the Licensed Software (the "Disputed Software"), thereby violating the terms of the licenses. IBM further contends that Circuit City is currently using the Disputed Software in breach of the IPAA and the IPLA. Although Circuit City disputes results of various aspects of the audit, Circuit City did agree with IBM concerning certain findings.

13. Rather than continue with the audit or engage in litigation with IBM, Circuit City and IBM attempted to negotiate a consensual resolution concerning the Disputed Software. Circuit City reached the conclusion that a consensual resolution was more beneficial for three primary reasons.

14. First, Circuit City relies on the Licensed Software, including the Disputed Software, in order to operate its businesses and would be adversely affected if it no longer had access to such software.

In particular, Circuit City utilizes the Disputed Software in connection with a number of key operations including, among others, the Company's website, point-of-sale system, store level reporting system, sales tax calculation, and other retail functions.  Second, if Circuit City was found liable for any unlicensed use of the Disputed Software, Circuit City would be further harmed if it were required to pay damages to IBM for such use.  Third, by resolving the dispute, Circuit City will be able to avoid any further costs associated with continuing the audit.

15.  Under these circumstances, the Debtors and IBM desire to resolve consensually any dispute concerning the Debtors' use of the Disputed Software without having to resort to litigation and without the continued costs of completing the audit.  As a result, subject to Bankruptcy Court approval, the Debtors and IBM have entered into the Stipulation.

**RELIEF REQUESTED**

16.  By this Motion, the Debtors request that the Court approve the Stipulation under Bankruptcy Code

7

sections 105 and 363 and Bankruptcy Rule 9019 and grant such other and further relief as is just and proper.

**TERMS OF STIPULATION**

17. The complete terms of the parties' agreement are set forth in the Stipulation and the attachments thereto, including the IBM International Passport Advantage Agreement Special Terms Addendum (the "Addendum"). The material terms of the Stipulation are set forth below.[3]

> (a) The Debtors agree to pay IBM $4,099,093.60 on or before January 20, 2009. In exchange, on February 1, 2009, IBM will issue entitlement and/or execute reinstatements for certain of the Disputed Software, as specified on the Addendum.
>
> (b) The Debtors agree to pay IBM $799,732.80 on or before March 2, 2009. In exchange, on April 1, 2009, IBM will issue entitlement and/or execute reinstatements for certain of the Disputed Software, as specified on the Addendum.
>
> (c) The Debtors agree to pay IBM $797,108.80 on or before April 1, 2009. In exchange, on May 1, 2009, IBM will issue entitlement and/or execute reinstatements for certain of the Disputed Software, as specified on the Addendum.

---

[3] To the extent that any description of the stipulation contained herein conflicts with the terms of the Stipulation, the Stipulation shall control.

   (d) The Debtors agree to pay IBM $798,964.55 on or before May 1, 2009.  In exchange, on June 1, 2009, IBM will issue entitlement and/or execute reinstatements for certain of the Disputed Software, as specified on the Addendum.

   (e) IBM and the Debtors hereby waive and release, and shall be forever barred from asserting, any and all claims or causes of action (known or unknown) of any nature against each other or each other's affiliates, officers, directors, employees, shareholders, agents, successors or assigns in connection with, related to or arising from the alleged breach of the IPAA and the IPLA relating to the Debtors' alleged use of the quantities of Licensed Software and quantities of Disputed Software specified in the Addendum that arose prior to the date of entry of the Order.

   (f) The Stipulation shall be binding upon and shall inure to the benefit of each of the Parties and each of their respective successors and assigns, including any purchaser of Circuit City under Bankruptcy Code section 363

## APPLICABLE AUTHORITY

  18. The Stipulation represents a fair and reasonable compromise and settlement of disputed issues and claims among the Debtors and IBM.  Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement."  Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy.  See In re Bond, 1994 U.S. App. Lexis 1282, *9-*14 (4th Cir.

1994)("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy'."); Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  Various courts have endorsed the use of Bankruptcy Rule 9019.  See, e.g., Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996).

19.  The standards by which a Court should evaluate a settlement are well established.  In addition to considering the proposed terms of the settlement, the Court should consider the following factors:

> (a) the probability of success in litigation;
>
> (b) the difficulty in collecting any judgment that may be obtained;
>
> (c) the complexity of the litigation involved, and the expense inconvenience and delay necessarily attendant to it; and
>
> (d) the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement.

See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245 (1968); In re Frye, 216 B.R. 166, 174 (E.D. Va. 1997);

10

United States ex. Rel. Rahman v. Oncology Assoc., P.C., 269 B.R. 139, 152 (D. Md. 2001);.

20. The decision to approve a settlement or compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case. See TMT Trailer Ferry, 390 U.S. at 424-25. The settlement need not be the best that the debtor could have achieved, but need only fall "within the reasonable range of litigation possibilities." In re Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994). In making its determination, a court should not substitute its own judgment for that of the debtor and should defer to the debtor so long as there is a reasonable business justification. See In re Martin, 91 F.3d at 395; In re Jasmine, Ltd., 258 B.R. 119, 123 (D.N.J. 2000). The court should exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); Nellis v. Shugrue, 165 B.R. 115, 23 (S.D.N.Y. 1994) ("the general rule [is]

that settlements are favored and, in fact, encouraged by the approval process outlined above").

21. Here, approval of the Stipulation is warranted. The Stipulation will enable the Debtors to beneficially resolve the parties' dispute by ensuring that the Debtors can continue to utilize the Disputed Software in the operation of their business going forward while providing IBM with adequate compensation for that software. It is important that the Debtors have continued authorization to use the Disputed Software, as that software is an integral component of the Debtors' automated retail operations. The Debtors utilize the Disputed Software to maintain their website, operate their point-of-sale system, report and track important store level data, and calculate sales tax. The Debtors' believe the payments to IBM called for in the Stipulation are fair and reasonable under the circumstances and are warranted in light of the Debtors' need for access to the Disputed Software. Moreover, the Stipulation avoids the cost, delay and uncertainty of litigation over the Debtors' right to use the Disputed Software, which would likely involve complex

12

intellectual property issues.  Finally, while the Debtors do not concede that the results of the audit are entirely correct, should a court find that the Debtors have breached the IPAA or the IPLA, the Debtors may be required to pay damages.  If the Debtors are found liable for damages, IBM would likely argue that all or a portion of such damages constitute administrative expenses in these cases.  Under the terms of the Stipulation, IBM is waiving any claim it may have to such damages.

        22.    Based on the foregoing, the Debtors submit that the proposed settlement between the Debtors and IBM, as set forth in the Stipulation, is beneficial to their estates and their creditors and that the Court should authorize the Debtors to enter into the Stipulation.  The Stipulation represents a compromise that is fair and equitable, falls well within the range of reasonableness and satisfies the standards for approval under applicable law.

        23.    Accordingly, for the reasons detailed herein, approval of the Stipulation is warranted under Bankruptcy Rule 9019.

24. Additionally, under Bankruptcy Code section 363, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. See 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1985).

25. It is important to the Debtors' successful restructuring that they continue to be able to utilize the Disputed Software. Thus, there is a more than sufficient business justification for entry into the Stipulation, even if such payment were deemed to be outside the ordinary course of business. See id. at 175.

26. Finally, Bankruptcy Code section 105 provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As noted above, approval of the relief requested herein furthers the Debtors' efforts to

minimize the risk of litigation regarding the Disputed Software, to ensure that they have continued access to the Disputed Software, and to resolve claims in a manner that benefits the Debtors and is fair and equitable to other parties in interest.

27.    Accordingly, granting the relief requested herein is justified under Bankruptcy Code section 105.

### NOTICE

28.    Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130).  The Debtors submit that, under the circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

29.    Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the

15

requirement that all motions be accompanied by a separate memorandum of law be waived.

## NO PRIOR REQUEST

30. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court approve the Stipulation and grant the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: January 8, 2009
       Richmond, Virginia

>                    SKADDEN, ARPS, SLATE, MEAGHER &
>                    FLOM, LLP
>                    Gregg M. Galardi, Esq.
>                    Ian S. Fredericks, Esq.
>                    P.O. Box 636
>                    Wilmington, Delaware 19899-0636
>                    (302) 651-3000
>
>                            - and -
>
>                    SKADDEN, ARPS, SLATE, MEAGHER &
>                    FLOM, LLP
>                    Chris L. Dickerson, Esq.
>                    333 West Wacker Drive
>                    Chicago, Illinois 60606
>                    (312) 407-0700
>
>                            - and -
>
>                    MCGUIREWOODS LLP
>
>                    /s/ Douglas M. Foley         .
>                    Dion W. Hayes (VSB No. 34304)
>                    Douglas M. Foley (VSB No. 34364)
>                    One James Center
>                    901 E. Cary Street
>                    Richmond, Virginia 23219
>                    (804) 775-1000
>
>                    Counsel for Debtors and Debtors
>                    in Possession