Gregg M. Galardi, Esq.                  Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.                 Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &         MCGUIREWOODS LLP
FLOM, LLP                               One James Center
One Rodney Square                       901 E. Cary Street
PO Box 636                              Richmond, Virginia 23219
Wilmington, Delaware 19899-0636         (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :   Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :   Case No. 08-35653 (KRH)
et al.,                         :
                                :
                Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER (I) APPROVING PROCEDURES IN CONNECTION WITH SALE
OF ALL OR SUBSTANTIALLY ALL OF THE BUSINESS,
(II) AUTHORIZING DEBTORS TO ENTER INTO STALKING HORSE OR
FINANCING AGREEMENTS IN CONNECTION WITH GOING CONCERN
TRANSACTIONS OR STALKING HORSE AGREEMENTS IN CONNECTION
WITH STORE CLOSING AND MISCELLANEOUS ASSET SALES OR,
(III) APPROVING THE PAYMENT OF TERMINATION FEE IN
CONNECTION THEREWITH, (IV) SETTING AUCTION AND HEARING
DATES PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363
AND (V) GRATING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Debtors, for entry of an order, under Bankruptcy Code sections 105, 363 and 364 and Bankruptcy Rules 4001, 6004, and 6006 authorizing and approving, among other things, (I) approving procedures in connection with a sale of all or substantially all of the business, (II) authorizing the Debtors to enter into Stalking Horse or financing agreements in connection with Going Concern Transactions and Stalking Horse Agreements in connection with Store Closing or Miscellaneous Asset Sales and, (III) approving the Debtors' payment of one or more Termination Fees in connection therewith, (IV) scheduling Auction and Hearing Dates and (V) granting related relief; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the record herein; and after due deliberation thereon;
and good and sufficient cause appearing therefor, it is
hereby

**FOUND AND DETERMINED THAT:**[2]

A.    The court has jurisdiction over the
Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this
matter is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2)(A).

B.    Venue of these cases and the Motion in
this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    Good and sufficient notice of the relief
sought in the Motion has been given and no further
notice is required.  A reasonable opportunity to object
or be heard regarding the relief requested in the Motion
(including, without limitation, with respect to the
proposed Bidding Procedures and the Termination Fees)
has been afforded to those parties that requested notice
pursuant to Bankruptcy Rule 2002 and the Core Group (as
defined in the Case Management Order).

---

2 Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  See Fed. R. Bankr. P. 7052.

D.   The Debtors' proposed notice of the
Bidding Procedures, the Auctions (if necessary) and the
Hearing, as set forth in the Motion, is appropriate and
reasonably calculated to provide all interested parties
with timely and proper notice, and no other or further
notice is required.

E.   The Bidding Procedures substantially in
the form attached hereto as Exhibit A are fair,
reasonable, and appropriate and are designed to maximize
the recovery with respect to the Going Concern
Transactions and Store Closing and Miscellaneous Asset
Sales.

F.   The Potential Purchaser Notice in
substantially the form attached hereto as Exhibit B is
fair, reasonable, and appropriate and is designed to
provide notice of adequate assurance of future
performance to counterparties to Leases and Contracts.

G.   The Debtors have demonstrated a
compelling and sound business justification for
authorizing the Going Concern Transactions and Store
Closing and Miscellaneous Asset Sales and the payment of
one or more Termination Fees under the circumstances,

timing, and procedures set forth herein and in the Motion.

H.   Each Termination Fee is fair and reasonable and provides a benefit to the Debtors' estates and creditors.

I.   The Debtors' payment of the Termination Fees, under the conditions set forth in the Motion is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) necessary to ensure that any Stalking Horse Bidder will continue to pursue the proposed agreements to undertake the Going Concern Transactions and Store Closing and Miscellaneous Asset Sales.

J.   The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties-in-interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Bidding Procedures attached hereto as
Exhibit A with respect to the qualifying bidders and
conducting the Going Concern Transactions and the Store
Closing and Miscellaneous Asset Sales are hereby
APPROVED.

2.    The Bidding Procedures shall apply to the
qualifying bidders and the conduct of the Going Concern
Transactions, the Store Closing and Miscellaneous Asset
Sales, and the Auctions.

3.    With respect to any Stalking Horse
Agreement that the Debtors enter into on or prior to
January 13, 2009, the Debtors (after consultation with
counsel to the Creditors' Committee and counsel to the
DIP Agent) are authorized to offer a Termination Fee of
2% of the cash purchase price payable on such terms and
conditions as set forth in such Stalking Horse Agreement
to a Stalking Horse Bidder in the Going Concern, Store
Closing, and/or Miscellaneous Asset Auctions; provided,
further, that any Termination Fee will only be paid if
(1) the Stalking Horse Bidder is not the Successful
Bidder at the Final Auction, (2) the Stalking Horse
Bidder agrees to serve as a back-up bidder and close the

transaction contemplated by the Stalking Horse Agreement
(as may be modified, including, without limitation,
modifications as to price, as of the Stalking Horse
Bidder's last proposal at any Auction) in the event the
transaction with the Successful Bidder does not close,
and (3) the transaction proposed by the Successful
Bidder actually closes.

4.    In no event shall a Termination Fee be
payable if the Stalking Horse Agreement contains a "due
diligence" or financing contingency, and the Debtors
shall not be permitted to offer two Termination Fees
with respect to any proposal covering the same assets.

5.    The Debtors shall file a schedule of cure
amounts (the "Cure Schedule") due to counterparties to
Contracts and Leases (as defined herein) on or before
January 7, 2009.

6.    Unless a party to a Contract or Lease
files an objection on or before January 15, 2009 at
12:00 noon (ET) to the Motion asserting a different cure
amount than that listed on the Cure Schedule (the
"Proposed Cure Amount"), then the amount listed on the
Cure Schedule shall constitute the sole amount necessary

under Bankruptcy Code sections 365(b)(l)(A) and (B) and
365(f)(2)(A) to cure all defaults and pay all actual
pecuniary losses under the Contracts and Leases
Contracts, and if the Lease or Contract is immediately
assumed and assigned in connection with a transaction
approved at the Hearing, such party is forever barred
and enjoined from asserting or attempting to collect
from the Debtors, their estates, or any transaction
party, a cure amount different from that set forth on
the Cure Schedule.

       7.    To the extent that the counterparty to a
Contract or Lease asserts that the cure amount (the
"Cure Amount") is other than the Proposed Cure Amount
and has lodged a timely and valid objection to the
Proposed Cure Amount, such objection will be resolved
either at the Hearing or such later date as may be
determined by the Court. The Debtors (or the Successful
Bidder, as the case may be) shall pay the Proposed Cure
Amount and any undisputed portion of the Cure Amount for
the Contract or Lease as soon as practicable following a
closing. The disputed portion of the Cure Amount shall
be paid following the earlier of the date (i) the Debtor

(or the Successful Bidder, as the case may be) and the counterparty to the Contract or Lease reach an agreement as to the appropriate Cure Amount, and (ii) if necessary, the entry of an order by the Court fixing the Cure Amount. Compliance with this Paragraph of the order constitutes payment of the Cure Amount as otherwise provided in this Order.

8.    To the extent that any Leases or Contracts are not immediately assumed and assigned at closing and/or are subject to lease designation rights, counterparties to such Lease and Contracts shall have the right to supplement and/or amend their proposed cure amounts in connection with any subsequent notice of assumption and assignment of such Lease or Contract.

9.    To the extent that a Lease or Contract is not subject to a proposal, the counter parties to such Leases and Contracts shall not be bound by the Debtors' Proposed Cure Amount in connection with any later assumption and assignment of such Leases or Contracts.

10.    On or before January 13, 2009, the Debtors shall provide the counterparty to any Contracts and Leases sought to be assumed and assigned pursuant to

a Going Concern Transactions or Store Closing or

Miscellaneous Asset Sale Potential Purchaser Notice

substantially in the form attached hereto as Exhibit B.

Any Potential Purchaser Notice shall be served via

electronic mail or facsimile, if available, or by

overnight delivery on the counterparties to the

Contracts and Leases sought to be assigned.

Additionally, the Debtors shall concurrently post a list

of those Contracts and Leases subject to Potential

Purchaser Notices on the website for the Debtors' claims

and noticing agent, www.kccllc.net/circuitcity.

11.  Each Potential Purchaser Notice shall

identify any potential transaction party as potential

parties to which the Contracts and Leases would be

assigned.  In addition, each Potential Purchaser Notice

shall provide information related to adequate assurance

of future performance as follows: (a) information about

the bidder's financial condition, including without

limitation, federal tax returns for two years, a current

financial statement, and/or bank account statements, (b)

a description of the intended use of the premises (if

applicable), (c) the exact name of the proposed assignee,

(d) the proposed form of Order authorizing the assumption and assignment of the Contract(s) or Lease(s) (if such order is available), and (e) any information that the Debtors may reasonably request ("Adequate Assurance Information").

12.    Any and all Adequate Assurance Information provided to a counterparty to a Contract or Lease shall be deemed provided on a confidential basis without the need for an informal or formal confidentiality agreement or further order of this Court and may only be disclosed by such counterparty(ies) upon receipt of the written consent from the Debtors and the Qualified Bidder, order of this Court, or in connection with an objection to the proposed sale, assumption and assignment; provided, however, that prior to disclosing any Adequate Assurance Information in connection with any such objection, the counterparty shall provide advance notice to the Debtors and the Qualified Bidder and, to the extent requested by the Debtors or the Qualified Bidder, file the Adequate Assurance Information under seal or take commercial reasonable

steps to assist the Debtors or the Qualified Bidder with
obtaining a protective order.

13.   Counterparties to any Contract or Lease
sought to be assumed and assigned shall file an
objection to the assumption and/or assignment of the
Contract or Lease by January 15, 2008 at 8:00 p.m. (ET).
Each objection shall state the legal and factual basis
of such objection and may be orally supplemented at the
Hearing.

14.   If a counterparty to any Contract or
Lease that is subject to Potential Purchaser Notice
fails to file and serve an objection in accordance with
this Order and the instructions in the Potential
Purchaser Notice, the Court may authorize the assumption
and assignment of the applicable Contract or Lease at
the Hearing.

15.   The Debtors shall post the results of the
Auctions at www.kccllc.net/circuitcity following the
conclusion of the Auctions.

16.   Any party that seeks to object to the
relief requested in the Motion pertaining to approval of
any Going Concern Transaction and Store Closing or

Miscellaneous Asset Sales shall file a formal objection that complies with this Order on or before January 15, 2009 at 12 noon (Eastern).  Each objection shall state, with specificity, the legal and factual basis of such objection.

17.  Any and all objections as contemplated by this Order must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Eastern District of Virginia, and the Case Management Order, (c) be filed with Bankruptcy Court and (d) served in accordance with the Case Management Order so as to be **received** on or before the appropriate deadline as set forth above or in this Order.

18.  The Hearing, at which the Debtors shall seek approval of the Successful Bid or a Going Transaction that provides additional financing, shall be held in this Court on January 16, 2009, at 11:00 a.m. (Eastern).  The Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Hearing.

19.    Notice of the transactions contemplated
by the Motion shall be deemed adequate if the Debtors
serve the Motion and this Order by electronic mail, if
available, or regular, U.S. Mail on or before the date
that is two business days following entry of this Order
on (a) those parties entitled to notice under this
Court's Order Pursuant to Bankruptcy Code Sections 102
and 105, Bankruptcy Rules 2002 and 9007, and Local
Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain
Notice, Case Management, and Administrative Procedures
(Docket No. 130), (b) all entities known to have
expressed an interest in a transaction regarding the
debtors' assets, stores or inventory during the past
three (3) months; (c) all counterparties to the
Contracts and Leases and entities known to have an
interest in any of the assets to be sold; and (d) all
federal, state, and local regulatory or taxing
authorities or recording offices that have a reasonably
known interest in the relief requested through the
Motion.

20.    The Debtors (after consultation with
counsel to the Creditors' Committee and counsel to the

DIP Agent) are authorized to terminate the bidding process or the Auctions at any time if they determine, in their business judgment, that the bidding process will not maximize the value of the Debtors' business or assets to be realized by the Debtors' estates; provided, however, that if the Creditors' Committee does not consent to the Debtors' decision to terminate the bidding process or the Auctions, then the Debtors may do so only upon further order of this Court, which order may be sought on an expedited basis.

21.  Each landlord that files an objection to the relief requested in the Motion on the basis of adequate assurance of future performance reserves the right to seek a continuance of the hearing on January 16, 2009 with respect to adequate assurance of future performance and the Debtors reserve the right to object to such requests.

22.  The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

23.    This Court shall retain jurisdiction with

respect to all matters arising or related to the

implementation of this Order.

Dated:  Richmond, Virginia
        January __, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

**Exhibit A**

**(Bidding Procedures)**

## EXHIBIT A

### BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures")[1] to be employed with respect to the selection of the highest or otherwise best bid(s) for all or any part of the Debtors' assets or businesses.

### QUALIFIED BIDS

**I.   GOING CONCERN BIDS.**

The Debtors will consider proposals for (1) any or all of their businesses or retail stores that contemplate those stores being operated as a continuing business, whether nationally or on a geographical or other basis, other than as part of Store Closing Sales, whether as a sale or other going concern transaction under a plan, and (2) a financing proposal that will provide the Debtors with additional liquidity to complete a stand-alone restructuring, a going concern sale, or a plan transaction (the "Going Concern Transactions").  Such proposals may include bids for any or all of the Debtors' remaining assets, including but not limited to: (i) inventory at retail stores that the bidder would not operate; and (ii) leases of non-residential real property or designation rights related to such retail locations.

Only "Qualified Going Concern Bidders," _i.e._, persons or entities submitting "Qualified Going Concern Bids", may participate in the Going Concern Auction.  To be considered a "Qualified Going Concern Bid" with respect to any or all of the Debtors' assets, the person or entity submitting the bid must deliver the following documents (the "Going Concern Bid Documents"):

(i)    A letter stating that the bidder's offer is irrevocable until the later of (y) 2 business days after the assets subject to the Going Concern Transactions have been disposed of pursuant to the Bidding Procedures, and (z) 30 days after the Hearing, as defined herein;

---

[1]    Unless otherwise defined herein, each capitalized term shall have the meaning assigned to it in the Motion or the Order.

(ii)     Identify the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder

(iii)    Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction;

(iv)     Adequate Assurance Information (as defined herein);

(v)      A good faith deposit equal to 10% of the cash component of the purchase price; and

(vi)     The form of order that the bidder would request the Debtors to seek Court approval at the January 16, 2009 hearing (the "Hearing").

All proposals will be considered, but the Debtors reserve their right to reject any or all proposals after consultation with representatives of the Creditors' Committee and the DIP Agent.  Proposals will be evaluated on numerous grounds; however, proposals that are unconditional and contemplate sales that may be consummated on or soon after the Hearing are preferred.

## II.  STORE CLOSING BIDS

The Debtors will consider bids to conduct store closing sales with respect to, among other things, the inventory and fixtures, furniture and equipment located at Debtors' retail stores, warehouses and distribution centers (the "Store Closing Sales").

Only "Qualified Store Closing Bidders," i.e., persons or entities submitting "Qualified Store Closing Bids", may participate in the Store Closing Auction.  To be considered a "Qualified Store Closing Bid" for purposes of the Store Closing Sales the person or entity submitting the bid must (i) submit an offer in the form of mark-up of the Debtors' form of agency agreement by the Bid Deadline (as defined hereinafter) that provides, among other things, for guaranteed amount payable to the Debtors under the agency agreement on or before January 10, 2009 at 5:00 p.m. (Eastern); (ii) identify the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder; (iii) provide evidence, satisfactory to the Debtors in their reasonable discretion (after consultation with representatives of the DIP Agent and the Creditors' Committee), of the bidder's financial wherewithal and operational ability to manage the Store Closing Sales program contemplated in the proposed agency agreement and the financial

and other obligations contemplated by the proposed agency
agreement, including the guaranty of the Debtors' expenses
incurred in connection with the Store Closing Sales;
(iv) provide that the bid shall not be conditioned on the
outcome of unperformed due diligence by the bidder or any
financing contingency; (v) a good faith deposit equal to 10% of
the guaranteed amount; (vi) provide that the bidder's offer is
irrevocable until the later of (y) 2 business days after the
assets subject to the Store Closing Sales have been disposed of
pursuant to the Bidding Procedures, and (z) 30 days after the
Hearing; and (vii) the form of order (and sale guidelines) that
the bidder would request the Debtors to seek Court approval at
the Hearing.

Although the Debtors are requesting proposals that
contemplate a guaranteed amount, the Debtors will accept
alternate Store Closing Sale proposals, including, without
limitation, fee proposals and hybrid proposals.  In the event
any proposal is submitted that does not contemplate a guaranteed
amount, the requirement to submit a good faith deposit is waived.

## III. MISCELLANEOUS ASSET SALE BIDS

The Debtors will consider bids for any assets,
including any inventory at any stores, warehouses or
distribution centers, store, warehouse and distribution center
leases, owned real property, the firedog$^{SM}$ assets, including
related internet operations conducted through www.firedog.com,
the Debtors other internet operations, including operations
conducted through www.circuitcity.com, corporate airplanes, and
other miscellaneous assets to the extent those assets are not
ultimately included in the highest or otherwise best Qualified
Going Concern or Store Closing Bid (the "Miscellaneous Asset
Sales").

Under the Bidding Procedures only "Qualified
Miscellaneous Asset Bidders," _i.e._ persons or entities
submitting "Qualified Miscellaneous Asset Bids", may participate
in the Miscellaneous Asset Auction.  To be considered a
"Qualified Miscellaneous Asset Bid" for purposes of the
Miscellaneous Asset Sales the person or entity submitting the
bid must: (i) be a Qualified Going Concern Bidder, (ii) be a
Qualified Store Closing Bidder; or (iii) submit an offer in the
form of a purchase agreement by the Bid Deadline (as defined
hereinafter) that specifically identifies (a) the asset(s) to be
purchased, (b) the purchase price, (c) identify the potential
bidder and the officer(s) or authorized agent(s) who will appear

3

on behalf of such bidder, (d) provide evidence, satisfactory to the Debtors in their reasonable discretion (after consultation with representatives of the DIP Agent and the Creditors' Committee), of the bidder's financial wherewithal, (e) provide that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency, (f) a good faith deposit equal to 10% of the cash component of the purchase price; (g) Adequate Assurance of Information; (h) provide that the bidder's offer is irrevocable until the later of (y) 2 business days after the assets subject to the Miscellaneous Asset Sales have been disposed of pursuant to the Bidding Procedures, and (z) 30 days after the Hearing; and (i) the form of order that the bidder would request the Debtors to seek Court approval at the Hearing.

Any landlord seeking to bid on its own lease(s) shall be deemed a Qualified Miscellaneous Asset Bidder by submitting a written offer on landlord's corporate letterhead (or, if on behalf of landlord by landlord's legal counsel, then on landlord's legal counsel's letterhead) for the purchase of one or more of the leases that must include the gross amount offered with a breakdown identifying that portion which is payable in cash to the Debtors and that portion, if any, which is "credit bid".  Such written offer must expressly state that if the landlord is the Successful Bidder, it is ready, willing, and able to execute any and all reasonable short form of "Lease Termination Agreements, and the extent to which, if any, it agrees to waive and release any and all claims it may have against the Debtors.

### ADEQUATE ASSURANCE INFORMATION

"Adequate Assurance Information" shall mean: (a) information about the bidder's financial condition, including without limitation, federal tax returns for two years, a current financial statement, and/or bank account statements, (b) a description of the intended use of the premises (if applicable), (c) the exact name of the proposed assignee, and (d) any other information that the Debtors may reasonably request.  **It being expressly understood and agreed to by all Qualified Bidders that, by submitting a Qualified Bid, all Qualified Bidders acknowledge that Adequate Assurance Information may be disclosed to counterparties to Contracts and Leases in accordance with the Bidding Procedures Order.**

**BID DEADLINE**

Any person or entity wanting to participate in the
Going Concern Auction, the Store Closing Auction, and/or the
Miscellaneous Asset Auction must submit a a Qualified Going
Concern Bid, Qualified Store Closing Bid, or a Qualified
Miscellaneous Asset Bid on or before **January 10, 2009 at 5:00
p.m. (Eastern)** (the "Bid Deadline") in writing, to: (1) Circuit
City Stores, Inc., 9950 Mayland Dr., Richmond, Virginia 23233,
Attn: Reginald D. Hedgebeth (Reggie_Hedgebeth@Circuitcity.com);
(2) Counsel to the Debtors, Gregg M. Galardi and Ian S.
Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney
Square, P.O. Box 636, Wilmington, DE 19801
(gregg.galardi@skadden.com and ian.fredericks@skadden.com); (3)
Counsel to the Creditors' Committee, Jeff Pomerantz, Pachulski
Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Floor,
Los Angeles, California 90067-4100, (jpomerantz@pszjlaw.com);
and (4) Counsel to the DIP Agent, David S. Berman, Riemer &
Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108,
(dberman@riemerlaw.com).  The Debtors shall announce the terms
of the highest or otherwise best Qualified Going Concern Bid,
Qualified Store Closing Bid, and Qualified Miscellaneous Asset
Bid, after consultation with representatives of the DIP Agent
and Creditors' Committee, on or before the commencement of the
Going Concern Auction, Store Closing Auction, and the
Miscellaneous Asset Auction.

**TERMINATION FEE**

The Debtors are soliciting "stalking horse" bidders
for the Going Concern Transactions and the Store Closing and
Miscellaneous Asset Sales.  The Bankruptcy Court has authorized
the Debtors (after consultation with representatives of the
Creditors' Committee and the DIP Agent) to enter into stalking
horse agreements with a bidder submitting a Qualified Going
Concern, Store Closing, or Miscellaneous Asset Bid before the
Bid Deadline and to provide such bidder with a Termination Fee
of up to 2% of the guaranteed cash purchase price offered by
such bidder for Stalking Horse Agreement that the Debtors enter
into on or prior to January 13, 2009; provided, further, that
any Termination Fee will only be paid if (1) the Stalking Horse
Bidder is not the Successful Bidder at the Final Auction, (2)
the Stalking Horse Bidder agrees to serve as a back-up bidder
and close the transaction contemplated by the Stalking Horse
Agreement (as may be modified, including, without limitation,
modifications as to price, as of the Stalking Horse Bidder's
last proposal at any Auction) in the event the transaction with

the Successful Bidder does not close, and (3) the transaction proposed by the Successful Bidder actually closes; provided, however, that any such bid shall not be subject to "due diligence" or financing contingencies.

      In the event that the Debtors exercise their discretion, after consultation with representatives of the Creditors' Committee and the DIP Agent, and agree to such a Termination Fee, the amount of such fee shall be considered by the Debtors in determining the highest or otherwise best bid and the net value that the Debtors' estates will realize at any Auction.

**THE AUCTIONS**

      Tentatively, the Auctions will commence at 10:00 a.m. (Easter) on January 13, 2008 at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036.  At the start of the Auctions, the Debtors, after consultation with the representatives of the Creditors' Committee and the DIP Agent, will determine the order in which the Going Concern, Store Closing, and Miscellaneous Asset Auctions will be conducted.  Set forth below is a tentative schedule.

**I.    THE GOING CONCERN AUCTION**

      In the event that the Debtors receive any Qualified Going Concern Bids, an auction (the "Going Concern Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036, tentatively commencing at 10:00 a.m. (Eastern) on January 13, 2009, to determine the highest or otherwise best offer for the business or assets for which a Qualified Going Concern Bid has been received.  Any Qualified Going Concern Bidder wishing to participate in the Going Concern Auction must appear and submit its highest or otherwise best proposal at the Going Concern Auction.  Bidding will continue on assets subject to a Qualified Going Concern Bid until such time as no higher or otherwise best proposal is received.  At the conclusion of the bidding, the Debtors (after consultation with representatives of the DIP Agent and the Creditors' Committee) shall announce the proposal(s) the Debtors have determined to be the highest or otherwise best bid(s).  The bidder(s) submitting the highest or otherwise best proposal(s) will be requested to remain for the Final Auction.

## II.    THE STORE CLOSING AUCTION

In the event that the Debtors receive any Qualified Store Closing Bids, an auction (the "Store Closing Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036, tentatively commencing at 1:00 p.m. (Eastern) on January 13, 2009 or immediately following the conclusion of the Going Concern Auction, with respect to any and all Qualified Store Closing Bids and to determine the highest or otherwise best offer with respect to any agreement to conduct the proposed Store Closing Sales.  Bidding at the Store Closing Auction will continue until all Qualified Store Closing Bidders have submitted their highest or otherwise best bid.  At the conclusion of the bidding, the Debtors (after consultation with representatives of the DIP Agent and the Creditors' Committee) shall announce the bid(s) the Debtors have determined to be the highest or otherwise best bid(s).  The bidder(s) submitting the highest or otherwise best bid(s) will be requested to remain for the Final Auction (as defined herein).

## III. THE MISCELLANEOUS ASSET AUCTION

In the event that the Debtors receive any Qualified Miscellaneous Asset Bids, an auction with respect to the Miscellaneous Asset Sales (the "Miscellaneous Asset Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036, tentatively commencing at 1:00 p.m. (Eastern) on January 13, 2009, and, if necessary, January 14, 2009, or immediately following the conclusion of the Store Closing Auction.  Any Qualified Miscellaneous Asset Bidder wishing to participate in the Miscellaneous Asset Auction must appear and submit its highest or otherwise best bid at the Miscellaneous Asset Auction. Bidding at the Miscellaneous Asset Auction will continue until each Qualified Miscellaneous Asset Bidder has submitted its highest or otherwise best bid for the Miscellaneous Asset Sale. At the conclusion of the bidding, the Debtors (after consultation with representatives of the DIP Agent and the Creditors' Committee) shall announce the bid(s) the Debtors have determined to be the highest or otherwise best bid(s).  The bidder(s) submitting the highest or otherwise best bid(s) will be requested to remain for the Final Auction.

## II.    THE FINAL AUCTION

Upon the conclusion of bidding at the Going Concern Auction, the Store Closing Auction, and the Miscellaneous Asset

Auction, the Debtors, after consultation with representatives of
the DIP Agent and the Creditors' Committee, will determine which
proposal or combination of proposals provides the Debtors, their
estates and creditors with the highest or otherwise best offer.
Upon such announcement, the Debtors will then commence an
auction (the "Final Auction") in which the successful bidders at
the Going Concern Auction, the Store Closing Auction, and the
Miscellaneous Asset Auction may participate.  Bidding at the
Final Auction will continue until such time as each bidder has
submitted its highest or otherwise best proposal.  At the
conclusion of the Final Auction, the Debtors, after consultation
with representatives of the DIP Agent and the Creditors'
Committee, will announce the bidder or bidders submitting the
proposal(s) that they have determined constitute the highest or
otherwise best proposal (the "Successful Bid" and the party that
provides such Successful Bid, the "Successful Bidder") and close
the Auctions.

**AUCTION PROCEDURES**

**I.    GOING CONCERN AUCTION PROCEDURES**

        Prior to the Going Concern Auction, the Debtors will
advise all Qualified Going Concern Bidders of what they believe
to be the highest or otherwise best Qualified Going Concern Bid.
Only a Qualified Going Concern Bidder who has submitted a
Qualified Going Concern Bid is eligible to participate at the
Going Concern Auction.  During the Going Concern Auction,
bidding shall begin initially with the highest or otherwise best
proposal and subsequently continue in such minimum increments as
the Debtors shall determine at the Going Concern Auction (such
proposals submitted at the Going Concern Auction, the "Going
Concern Auction Bids").  Bidding shall begin initially with the
highest or otherwise best proposal and subsequently continue in
such minimum increments as the Debtors (after consultation with
representatives of the Creditors' Committee and the DIP Agent)
shall determine at the Going Concern Auction.

        Upon conclusion of the Going Concern Auction, the
Debtors, in consultation with representatives of the DIP Agent
and the Creditors' Committee, shall (i) review each Going
Concern Auction Bid on the basis of financial and contractual
terms and the factors relevant to the Going Concern Sale and
(ii) identify the highest or otherwise best offer for an asset
(the "Successful Going Concern Bid").  For the Going Concern
Auction, the Debtors may designate multiple Successful Going
Concern Bids for various assets.

II.   **STORE CLOSING AUCTION PROCEDURES**

        Prior to the Store Closing Auction, the Debtors (after
consultation with representatives of the Creditors' Committee
and the DIP Agent) will advise all Qualified Store Closing
Bidders of what they believe to be the highest or otherwise best
Qualified Store Closing Bid.  Only a Qualified Store Closing
Bidder who has submitted a Qualified Store Closing Bid is
eligible to participate at the Store Closing Auction.  During
the Store Closing Auction, bidding shall begin initially with
the highest or otherwise best bid and subsequently continue in
such minimum increments as the Debtors (after consultation with
representatives of the Creditors' Committee and the DIP Agent)
shall determine at the Store Closing Auction (such bids
submitted at the Store Closing Auction, the "Store Closing
Auction Bids").

        Upon conclusion of the Store Closing Auction, the
Debtors, in consultation with representatives of the DIP Agent
and the Creditors' Committee, shall (i) review each Store
Closing Auction Bid on the basis of financial and contractual
terms and the factors relevant to the Store Closing Sale and (ii)
identify the highest or otherwise best offer for the Store
Closing Sales (the "Successful Store Closing Bid").  For the
Store Closing Auction, the Debtors may designate multiple
Successful Store Closing Bids for various stores.

III. **MISCELLANEOUS ASSET AUCTION PROCEDURES**

        Prior to the commencement of the Miscellaneous Asset
Auction, the Debtors will advise all Qualified Miscellaneous
Asset Bidders of what they believe to be the highest or
otherwise best Qualified Miscellaneous Asset Bid received.  Only
a Qualified Miscellaneous Asset Bidder who has submitted a
Qualified Miscellaneous Asset Bid shall be eligible to
participate at the Miscellaneous Asset Auction.  During the
Miscellaneous Asset Auction, bidding shall begin initially with
the highest or otherwise best proposal and subsequently continue
in such minimum increments as the Debtors  (after consultation
with representatives of the Creditors' Committee and the DIP
Agent) shall determine at the Miscellaneous Asset Auction (such
bids submitted at the Miscellaneous Asset Auction, the
"Miscellaneous Asset Auction Bids").

        Upon conclusion of the Miscellaneous Asset Auction,
the Debtors, in consultation with representatives of the DIP

9

Agent and the Creditors' Committee, shall (i) review each
Miscellaneous Asset Auction Bid on the basis of financial and
contractual terms and the factors relevant to the Miscellaneous
Asset Sale and (ii) identify the highest or otherwise best offer
for an asset (the "Successful Miscellaneous Asset Bid").  For
the Miscellaneous Asset Auction, the Debtors may designate
multiple Successful Miscellaneous Asset Bids for various assets.

## NO COMBINATION BIDDING

        Bidders may not form joint ventures or partnerships to
submit bids with respect to the Store Closing Sales or the
Miscellaneous Asset Sales, without the prior written consent of
the Debtors (after consultation with representatives of the
Creditors' Committee and the DIP Agent).  Without limiting the
generality of the foregoing, separate bidders on any Going
Concern Transactions and the Store Closing and Miscellaneous
Asset Sales may not combine their bids without the prior written
approval of the Debtors (after consultation with representatives
of the Creditors' Committee and the DIP Agent).

## RETURN OF GOOD FAITH DEPOSIT

        As noted above, all Bidders will be required to submit
good faith deposits (the "Good Faith Deposits") with the Debtors
on or before the Bid Deadline.  Such Good Faith Deposits shall
be equal to 10% of the cash component of the purchase price.
Good Faith Deposits of all Qualified Bidders shall be held in a
separate interest-bearing account until a proposal is no longer
irrevocable as provided herein, at which time they will be
returned to the Qualified Bidder; provided, however, that if a
Successful Bidder fails to consummate an approved sale because
of a breach or failure to perform on the part of such Successful
Bidder, the Debtors will not have any obligation to return the
Good Faith Deposit deposited by such Successful Bidder, and such
Good Faith Deposit shall irrevocably become property of the
Debtors.

## RESERVATION OF RIGHTS

        The Debtors reserve the right to (i) determine at
their reasonable discretion (after consultation with
representatives of the Creditors' Committee and the DIP Agent)
which offer is the highest or otherwise best offer, (ii) reject
at any time prior to entry of a Court order approving an offer,
without liability, any offer that the Debtors in their
reasonable discretion (after consultation with representatives

of the Creditors' Committee and the DIP Agent) deem to be
(x) inadequate or insufficient, (y) not in conformity with the
requirements of the Bankruptcy Code, the Bankruptcy Rules, the
Local Rules, or procedures set forth therein or herein, or
(z) contrary to the best interests of the Debtors and their
estates, (iii) waive the requirements of any of the Bidding
Procedures with respect to a potential or Qualified Bidder if
the Debtors (after consultation with representatives of the
Creditors' Committee and the DIP Agent) determine is in their
business judgment and in the best interests of their creditors
and estates; (iv) extend the Bid Deadline (after consultation
with representatives of the Creditors' Committee and the DIP
Agent) to a date and time that is not later than 12:00 midnight
on January 12, 2009; (v) seek Court authority to extend the Bid
Deadline beyond such date; (vi) change the date of any Auction
(after consultation with representatives of the Creditors'
Committee and the DIP Agent) to a date that is no later than
January 15, 2009; (vii) seek Court authority to change the date
of any Auction beyond such date and time; and (viii) seek Court
authority to move the Hearing to a date that is later than
January 16, 2009.

        The selection of a Successful Bidder shall be within
the reasonable business judgment of the Debtors (after
consultation with representatives of the Creditors' Committee
and the DIP Agent) and subject to the approval of the Bankruptcy
Court, and economic considerations shall not be the sole
criteria upon which the Debtors may base their decision.  In
assessing whether a proposal constitutes a higher or otherwise
better offer, the Debtors shall consider, among other things,
the net economic effect upon the Debtors' estates.  The
presentation of a particular proposal to the Bankruptcy Court
for approval does not constitute the Debtors' acceptance of the
proposal.  The Debtors will be deemed to have accepted a
proposal only when the proposal has been approved by the
Bankruptcy Court at the Hearing.  At or before the Hearing, the
Debtors, after consultation with representatives of the
Creditors' Committee and the DIP Agent, may impose such other
terms and conditions on Qualified Store Closing Bidders,
Qualified Going Concern Bidders and/or Qualified Miscellaneous
Asset Bidders as the Debtors may determine to be in the best
interests of the Debtors, their estates, their creditors, and
other parties in interest.

        Notwithstanding anything to the contrary contained in
these Bidding Procedures, the Creditors' Committee reserves its
rights to object to any decisions the Debtors make pursuant to

these Bidding Procedures with which the Creditors' Committee
does not agree and the Court shall retain ultimate authority to
adjudicate any such disputes if and when they should arise.

**Exhibit B**

**(Potential Purchaser Notice)**

**Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
                            :
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653-KRH
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x
```

**Hrg. Date: [_] (ET)**
**Obj. Due: [_] (ET)**

**NOTICE TO COUNTERPARTIES TO CONTRACTS AND LEASES THAT
THE DEBTORS HAVE IDENTIFIED A POTENTIAL PURCHASER OF
EXECUTORY CONTRACTS AND UNEXPIRED PERSONAL PROPERTY AND
NONRESIDENTIAL REAL PROPERTY LEASES**

PLEASE TAKE NOTICE that pursuant to the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") in the Order (I) Approving Procedures In Connection With Sale Of All Or Substantially All Of The Business, (II) Authorizing Debtors To Enter Into Stalking Horse Agreements In Connection With Store Closing And Miscellaneous Asset Sales Or Stalking Horse Or Financing Agreements In Connection With Going Concern Transactions, (III) Approving The Payment Of Termination Fee In Connection Therewith, (IV) Setting Auction And Hearing Dates Pursuant To Bankruptcy Code Sections 105 And 363 And (V) Grating Related Relief (the "Sale And Rejection Procedures Order ") (Docket No. [_____]) entered on January **[__]**, 2008, the debtors and debtors in possession in the above captioned cases (collectively, the "Debtors") have identified a potential purchaser (the "Potential Purchaser") (listed on Schedule A attached hereto) of the Contract(s) and Lease(s) to which you are a counterparty.

PLEASE TAKE FURTHER NOTICE pursuant to the Bidding Procedures, the Contract(s) and Lease(s) to

which you are a counterparty will be assumed and as-
signed to the Potential Purchaser if the sale is suc-
cessful and approved by the Bankruptcy Court at the
hearing to be held on January 16, 2009 at 11:00 a.m.
(prevailing Eastern time) (the "Hearing") in the United
States Bankruptcy Court for the Eastern District of Vir-
ginia, 701 East Broad Street, Room 5000, Richmond, VA
23219.

PLEASE TAKE FURTHER NOTICE that if more than
one party has been identified as a Potential Purchaser,
such parties may participate in an auction for the in-
terest in the Contract(s) and Lease(s) at 10:00 a.m.
(prevailing Eastern time) on January 13, 2009 at the of-
fices of Skadden, Arps, Slate, Meagher & Flom LLP, 4
Times Square, New York, New York 10036 or such later
time or other place as the Debtors shall determine.

PLEASE TAKE FURTHER NOTICE that objections, if
any, to the assumption and assignment of a Contract(s)
and Lease(s) to a Potential Purchaser, who may ulti-
mately become the Successful Bidder, must (a) be in
writing, (b) state the legal and factual basis for such
objection, (c) conform to the Federal Rules of Bank-
ruptcy Procedure, the Local Bankruptcy Rules for the
Eastern District of Virginia, and the Order Pursuant to
Bankruptcy Code Sections 102 and 105, Bankruptcy Rules
2002 and 9007, and Local Bankruptcy Rules 2002-1 and
9013-1 Establishing Certain Notice, Case Management, and
Administrative Procedures (Docket No. 0130) (the "Case
Management Order"), (d) be filed with Bankruptcy Court
and (e) served in accordance with the Case Management
Order so as to be **received** on or before **January 15, 2009
at 8:00 p.m. (prevailing Eastern time)** and may be sup-
plemented at the Hearing.

PLEASE TAKE FURTHER NOTICE that if an objec-
tion to the assumption and assignment of a Contract and
Lease is timely filed and served in accordance with the
procedures above, a hearing with respect to the objec-
tion will be held before the Honorable Kevin R. Huenne-
kens, United States Bankruptcy Judge for the Eastern
District of Virginia at the Bankruptcy Court, 701 East
Broad Street, Room 5000, Richmond, VA 23219, at the Sale
Hearing or such other date and time as the Court may

2

schedule.  Only objections made in writing and timely filed and received will be considered by the Bankruptcy Court at such Hearing.

PLEASE TAKE FURTHER NOTICE that if no objection is timely filed and received with regard to a Lease or Leases, the non-Debtor counterparty to the Lease will be deemed to have consented to the assumption and assignment of the Contract(s) and Lease(s) to a Potential Purchaser that is selected as the Successful Bidder and will be forever barred from asserting any other claims as to such Lease, including, but not limited to, the propriety or effectiveness of the assumption and assignment of the Lease, against the Debtors or the Successful Bidder, or the property of either of them.

PLEASE TAKE FURTHER NOTICE that the Debtors assert that pursuant to 11 U.S.C. § 365, there is adequate assurance that the Proposed Cure Amount on the Cure Schedule will be paid in accordance with the terms of the Sale Approval Order.  Adequate Assurance Information in the form of (a) information about the Potential Purchaser's financial condition, including without limitation, federal tax returns for two years, a current financial statement, and/or bank account statements, (b) a description of the intended use of the premises (if applicable), (c) the exact name of the proposed assignee, (d) the proposed form of Order authorizing the assumption and assignment of the Contract(s) or Lease(s) (if such order is available), and (e) any information that the Debtors may reasonably request ("Adequate Assurance Information"), is attached hereto.  **By Order of the Bankruptcy Court, Any and all Adequate Assurance Information provided to a counterparty to a Contract or Lease shall be deemed provided on a confidential basis without the need for an informal or formal confidentiality agreement or further order of this Court and may only be disclosed by such counterparty(ies) upon receipt of the written consent from the Debtors and the Qualified Bidder, order of this Court, or in connection with an objection to the proposed sale, assumption and assignment; provided, however, that prior to disclosing any Adequate Assurance Information in connection with any such objection, the counterparty shall provide advance notice to the Debtors and the Qualified Bidder and, to the extent**

**requested by the Debtors or the Qualified Bidder, file the Adequate Assurance Information under seal or take commercial reasonable steps to assist the Debtors or the Qualified Bidder with obtaining a protective order.**

PLEASE TAKE FURTHER NOTICE that Additional information regarding the financial wherewithal of the Potential Purchaser may be made available upon reasonable request of the Debtors (by electronic mail to counsel for the Debtors to gregg.galardi@skadden.com, ian.fredericks@skadden.com and t.kellan.grant@skadden.com) and evidence of the same will be adduced, if necessary, at the Hearing. Prior to the Closing Date, the Debtors may revise their decision with respect to the assumption and/or assignment of any Lease and provide a new notice amending the information provided in this notice.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: January __, 2009
        Richmond, Virginia

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| Gregg M. Galardi, Esq. | Douglas M. Foley (VSB No. 34364) |
| Ian S. Fredericks, Esq. | One James Center |
| P.O. Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 (804) 775-1000 |

                - and -

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.        Counsel for Debtors and Debtors
333 West Wacker Drive           in Possession
Chicago, Illinois 60606

**SCHEDULE A**

[Potential Purchaser]