Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :   Jointly Administered
              Debtors.        :
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTION 105 AND BANKRUPTCY RULE 9019 APPROVING AGREEMENT
BETWEEN DEBTORS AND VERIZON CORPORATE SERVICES GROUP, INC.**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC

*(cont'd)*

hereby move (the "Motion") for entry of an order (the "Proposed Order") under section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement (the "Settlement Agreement" substantially in the form attached to the Proposed Order as <u>Exhibit A</u>)[2] between Debtors and Verizon Corporate Services Group, Inc. ("Verizon").[3]  In support of the Motion, the Debtors respectfully represent:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

---

*(cont'd from previous page)*
Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]  Unless otherwise indicated, capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

[3]  This motion is unrelated to *Debtors' Motion for Order Approving Stipulation Between Debtors and Cellco Partnership d/b/a Verizon Wireless Pursuant to Bankruptcy Code Section 105 and Bankruptcy Rule 9019* filed on January 7, 2009 (docket no. 1404).

2

core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is Bankruptcy Code section 105.  Such relief is warranted under Bankruptcy Rule 9019.

## BACKGROUND

**A.   The Bankruptcy Cases.**

3. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. Based in Richmond, Virginia, Debtors are a leading specialty retailer of consumer electronics and operate large nationwide electronics stores throughout the United States and Puerto Rico that sell, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

7. Despite significant revenues, the Debtors have suffered two consecutive years of losses. While the Debtors made every effort to improve their financial performance and implement a global turnaround strategy, they were ultimately unable to consummate a successful restructuring outside of bankruptcy. In large part, the Debtors' chapter 11 filings were due to an erosion of vendor confidence, decreased liquidity and the global economic crisis.

**B. The Dispute between Verizon and the Debtors.**

8. On May 1, 2008, the Debtors and Verizon entered into a services agreement (the "Services Agreement"). The Services Agreement was to continue for two years from the date of execution, and was to

automatically renew for up to three consecutive one year terms.  Under the terms of the Services Agreement, the Debtors agreed to provide Verizon's customers with remote personal computer repair and other technical support services.  Verizon would pay the Debtors for the services they rendered.  The services provided by the Debtors were categorized as either Premium Technical Support Services or Sales Support.  Each category had its own fee structure pursuant to the terms of the Services Agreement.

        9.   The Debtors subcontracted their duties under the Services Agreement to Plum Choice, the approved subcontractor under the Services Agreement.  Plum Choice also provides other services directly to the Debtors under a separate agreement.  Specifically, Plum Choice operates a customer call center for Debtors' Firedog service.  As part of the Services Agreement between Debtors and Verizon, Verizon was not permitted to solicit or enter into a direct agreement with Plum Choice while the Services Agreement between Debtors and Verizon was in effect.

        10.  On November 20, 2008, Verizon sent a letter to the Debtors, which letter alleged numerous

material breaches of the Services Agreement. The letter further stated that these breaches remained uncured for at least one month, and because of the Debtors' failure to cure, Verizon would consider the Services Agreement terminated as of November 25, 2008.

11. The Debtors dispute any allegations that they materially breached the underlying Services Agreement with Verizon. Moreover, Debtors have not been paid for services rendered under the Services Agreement between May and September 2008, and believe that Verizon wrongfully solicited Plum Choice to continue providing technical support services to Verizon while the Services Agreement with the Debtors was still in effect. Verizon and the Debtors deny these allegations of wrongdoing under the Services Agreement.

12. In order to avoid expensive and protracted litigation over the matter, the Debtors and Verizon agreed it was in their mutual best interest to consider the Services Agreement terminated as of December 31, 2008, without a finding of fault by either party.

13. Under the terms of the Settlement Agreement, Verizon will pay the Debtors for the services

rendered under the Services Agreement through December 31, 2008. Invoices will be prepared pursuant to the terms of the Settlement Agreement, and payment of those invoices will be made within ten (10) days of an Order approving the settlement. Moreover, the Settlement Agreement provides that the Debtors will receive $367,968.72 (the "Claim Resolution Payment") for services rendered between May and September 2008 under the Services Agreement.

**RELIEF REQUESTED**

14. By this Motion, the Debtors request the entry of an order under Bankruptcy Rule 9019 approving the Settlement Agreement attached as Exhibit A to the Proposed Order.

15. The Debtors believe the compromises and settlements set forth in the Settlement Agreement are fair and equitable and in the best interest of the Debtors, their estates, creditors and other parties in interest and therefore should be approved. Also, the Debtors have determined in the exercise of their sound business judgment that the receipt of $367,968.72 for compensation for services rendered between May and September 2008 under the Settlement Agreement, even

though the Debtors originally asserted obligations of $859,813.36 for that period, is a reasonable settlement and is in the best interest of the Debtors, their estates, creditors and other parties in interest.

**BASIS FOR RELIEF**

**A.    Settlement**

16.    As set forth above, the Debtors and Verizon have a dispute as to a number of issues in connection with the Services Agreement and the Debtors' claim for compensation pursuant thereto.

17.    In light of the costs, risks and delays associated with litigating the outstanding disputes between the Parties, the Debtors desired to settle such disputes with Verizon.  After negotiations, the Debtors and Verizon have agreed to the Settlement Agreement.  The Debtors believe that the Settlement Agreement constitutes a fair and equitable resolution of the disputes between the Debtors and Verizon.

**B.    Summary of the Settlement Agreement**

18.    The salient terms and conditions of the Settlement Agreement are as follows:[4]

**The Requested Payment.**  With respect to the Requested Payment:

(a)  Verizon and Debtors agree that the May 1, 2008 Services Agreement shall be terminated effective as of December 31, 2008;

(b)  Debtors shall provide Verizon with a final invoice for amounts owed by Verizon for Sales Support by January 15, 2009;

(c)  Verizon shall provide the Debtors with a final invoice for most amounts owed by Verizon for Premium Technical Support Services by January 31, 2009, and Verizon will generate a final invoice by February 15, 2009 for those customers who signed up in December but did not start receiving bills for the service until January 2009 (collectively the "Final Invoices");

(d)  Verizon may immediately make arrangements for a substitute provider, including, without limitation, Plum Choice, for the services provided under the Services Agreement with such alternative services to commence after December 31, 2008;

(e)  The Debtors agree to accept, and Verizon agrees to pay, the sum of $367,968.72

---

[4]  The following is meant to be a summary of the terms of the Settlement Agreement.  In the event there are any inconsistencies between the Settlement Agreement and the summary set forth herein, the terms of the Settlement Agreement control.

9

        in full compromise and settlement of Debtors' claim for $859,813.36 as compensation for services rendered between May and September 2008 under the Services Agreement;

        (f)  Verizon will make the Claim Resolution Payment by wire within 10 days after receipt of approval of this settlement by the United States Bankruptcy Court for the Eastern District of Virginia;

        (g)  Upon the Debtors' timely receipt of the Claims Resolution Payment, other than with respect to the Final Invoices, Verizon and the Debtors shall irrevocably and fully release and discharge one another and each of the other's current and former agents, employees, representatives, successors, predecessors, parents, subsidiaries, affiliates, divisions, owners, shareholders, officers and directors, from and against any and all claims or causes of action arising from, in connection with or relating in any way to the Services Agreement, including, without limitation, any claims for damages arising from Debtors rejection or termination of the Services Agreement.

        (h)  The Debtors reserve the right to issue and collect for the Final Invoices and Verizon reserves the right to dispute the charges in the Final Invoices.

Settlement Agreement.

**C.    The Settlement Embodied In The Settlement Agreement Is In The Best Interests Of The Debtors, Their Creditors and All Other Parties in Interest**

        19.  The settlement embodied in the Settlement Agreement is in the best interests of the Debtors, their

creditors, and all other parties in interest. Specifically, the Settlement Agreement permits the Debtors to collect on their claim for compensation owed pursuant to the Services Agreement without further litigation in this or any other court of competent jurisdiction.

20. The Debtors believe that no party in interest would be harmed by the settlement set forth in the Settlement Agreement. Rather, such settlement provides substantial benefit to the Debtors, their estates, their creditors and other parties in interest by facilitating a profitable return for the Debtors' estates.

21. By entering into the Settlement Agreement, the Debtors will avoid the uncertainty and risk that litigation on the disputes might otherwise entail. Moreover, the resolution reached by the Debtors and Verizon will reduce the significant time and expense, including attorneys' fees and other professional fees and expenses, that any litigation of these matters would otherwise require.

**APPLICABLE AUTHORITY**

**I.   THE SETTLEMENT EMBODIED IN THE SETTLEMENT AGREEMENT SHOULD BE APPROVED UNDER BANKRUPTCY RULE 9019.**

22.   Approval of the Settlement Agreement and the settlement set forth therein is appropriate under Bankruptcy Rule 9019.  Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement." Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy.  See In re Bond, 1994 U.S. App. Lexis 1282, *9-*14 (4th Cir. 1994)("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy'."); Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). Various courts have endorsed the use of Bankruptcy Rule 9019.  See, e.g., Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996); In re Foundation for New Era Philanthropy, Case No. 95-13729B, 1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug. 21, 1996); In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992); In re Check

Reporting Service, Inc., 137 B.R. 653 (Bankr. W.D. Mich. 1992); In re Patel, 43 B.R. 500, 504 (N.D. Ill. 1982).

  23. The standards by which a Court should evaluate a settlement are well established.  In addition to considering the proposed terms of the settlement, the Court should consider the following factors:

   (a) the probability of success in litigation;

   (b) the difficulty in collecting any judgment that may be obtained;

   (c) the complexity of the litigation involved, and the expense inconvenience and delay necessarily attendant to it; and

   (d) the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement.

See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245 (1968); United States ex. Rel. Rahman v. Oncology Assoc., P.C., 269 B.R. 139, 152 (D. Md. 2001); In re Frye, 216 B.R. 166, 174 (E.D. Va. 1997).

  24. The decision to approve a settlement or compromise is within the discretion of the Court and is

13

warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case.  See TMT Trailer Ferry, 390 U.S. at 424-25.  The settlement need not be the best that the debtor could have achieved, but need only fall "within the reasonable range of litigation possibilities."  In re Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994).  In making its determination, a court should not substitute its own judgment for that of the debtor.  In re Neshaminy Office Bldg. Assoc., 62 B.R. 798, 803 (E.D. Pa. 1986).  The court should exercise its discretion "in light of the general public policy favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); Nellis v. Shugrue, 165 B.R. 115, 23 (S.D.N.Y. 1994) ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

25.    In this instance, the Debtors believe they would ultimately be successful if the disputes between the parties ever reached litigation.  Absent the Settlement Agreement, however, the collection of the amounts owed by Verizon might have been complicated and

14

required the Debtors and their professionals to undertake a number of contested matters and/or adversary proceedings.  This, in turn, would require the Debtors to unnecessarily expend the limited financial and human resources available to them at this stage of the Debtors' bankruptcy cases.  By entering into the Settlement Agreement, the Debtors can avoid the cost and uncertainty of such litigation and focus on their restructuring efforts or other matters.

26.  As set forth herein, there is more than sufficient business justification for the Debtors to agree to the terms of the Settlement Agreement.  By compromising their claim for compensation for the period from May through September 2008 for the sum of $367,968.72, the Debtors and their estates will realize a pecuniary benefit now without the disadvantage and expense additional litigation would undoubtedly incur.

27.  The Settlement Agreement is fair, reasonable and in the best interest of the Debtors' estates.  The Debtors, therefore, respectfully request that the Court approve the Settlement Agreement.

28. Bankruptcy Code section 105 provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  As noted above, approval of the relief requested herein furthers the Debtors' efforts to minimize their ongoing legal expenses, and to resolve claims in a manner that benefits the Debtors and is fair and equitable to other parties in interest.  Accordingly, granting the relief requested herein is justified under Bankruptcy Code section 105.

**NOTICE**

29. Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130).  The Debtors submit that, under the circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

30. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

31. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: January 9, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession