Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER (I) APPROVING PROCEDURES IN CONNECTION WITH SALE OF ALL OR SUBSTANTIALLY ALL OF THE BUSINESS, (II) AUTHORIZING DEBTORS TO ENTER INTO STALKING HORSE OR FINANCING AGREEMENTS IN CONNECTION WITH GOING CONCERN TRANSACTIONS OR STALKING HORSE AGREEMENTS IN CONNECTION WITH STORE CLOSING AND MISCELLANEOUS ASSET SALES OR, (III) APPROVING THE PAYMENT OF TERMINATION FEE IN CONNECTION THEREWITH, (IV) SETTING AUCTION AND HEARING DATES PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363 AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Debtors, for entry of an order, under Bankruptcy Code sections 105, 363 and 364 and Bankruptcy Rules 4001, 6004, and 6006 authorizing and approving, among other things, (I) approving procedures in connection with a sale of all or substantially all of the business, (II) authorizing the Debtors to enter into Stalking Horse or financing agreements in connection with Going Concern Transactions and Stalking Horse Agreements in connection with Store Closing or Miscellaneous Asset Sales and, (III) approving the Debtors' payment of one or more Termination Fees in connection therewith, (IV) scheduling Auction and Hearing Dates and (V) granting related relief; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.    The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    Good and sufficient notice of the relief sought in the Motion has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the proposed Bidding Procedures and the Termination Fees) has been afforded to those parties that requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Case Management Order).

---

2 Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

D.    The Debtors' proposed notice of the
Bidding Procedures, the Auctions (if necessary) and the
Hearing, as set forth in the Motion, is appropriate and
reasonably calculated to provide all interested parties
with timely and proper notice, and no other or further
notice is required.

E.    The Bidding Procedures substantially in
the form attached hereto as Exhibit A are fair,
reasonable, and appropriate and are designed to maximize
the recovery with respect to the Going Concern
Transactions and Store Closing and Miscellaneous Asset
Sales.

F.    The Potential Purchaser Notice in
substantially the form attached hereto as Exhibit B is
fair, reasonable, and appropriate and is designed to
provide notice of adequate assurance of future
performance to counterparties to Leases and Contracts.

G.    The Debtors have demonstrated a
compelling and sound business justification for
authorizing the Going Concern Transactions and Store
Closing and Miscellaneous Asset Sales and the payment of
one or more Termination Fees under the circumstances,

4

timing, and procedures set forth herein and in the
Motion.

H.   Each Termination Fee is fair and
reasonable and provides a benefit to the Debtors'
estates and creditors.

I.   The Debtors' payment of the Termination
Fees, under the conditions set forth in the Motion is
(a) an actual and necessary cost of preserving the
Debtors' estates, within the meaning of section 503(b)
of the Bankruptcy Code, (b) of substantial benefit to
the Debtors' estates and creditors and all parties in
interest herein, (c) reasonable and appropriate and
(d) necessary to ensure that any Stalking Horse Bidder
will continue to pursue the proposed agreements to
undertake the Going Concern Transactions and Store
Closing and Miscellaneous Asset Sales.

J.   The entry of this Order is in the best
interests of the Debtors and their estates, creditors,
and interest holders and all other parties-in-interest
herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Bidding Procedures attached hereto as Exhibit A with respect to the qualifying bidders and conducting the Going Concern Transactions and the Store Closing and Miscellaneous Asset Sales are hereby APPROVED, as modified herein and on the record.

2.    The Bidding Procedures shall apply to the qualifying bidders and the conduct of the Going Concern Transactions, the Store Closing and Miscellaneous Asset Sales, and the Auctions.

3.    With respect to any Stalking Horse Agreement that the Debtors enter into on or prior to January 13, 2009, the Debtors (after consultation with counsel to the Creditors' Committee and counsel to the DIP Agent) are authorized to offer a Termination Fee of 2% of the cash purchase price payable on such terms and conditions as set forth in such Stalking Horse Agreement to a Stalking Horse Bidder in the Going Concern, Store Closing, and/or Miscellaneous Asset Auctions; provided, further, that any Termination Fee will only be paid if (1) the Stalking Horse Bidder is not the Successful Bidder at the Final Auction, (2) the Stalking Horse

Bidder agrees to serve as a back-up bidder and close the transaction contemplated by the Stalking Horse Agreement (as may be modified, including, without limitation, modifications as to price, as of the Stalking Horse Bidder's last proposal at any Auction) in the event the transaction with the Successful Bidder does not close, and (3) the transaction proposed by the Successful Bidder actually closes.

4.   In no event shall a Termination Fee be payable if the Stalking Horse Agreement contains a "due diligence" or financing contingency, and the Debtors shall not be permitted to offer two Termination Fees with respect to any proposal covering the same assets.

5.   On or before 7:00 p.m. (ET) on January 12, 2009, the Debtors shall post the Potential Purchaser Notice substantially in the form attached hereto as Exhibit B that includes a list of those Contracts and Leases sought to be assumed and assigned pursuant to a Going Concern Transactions or Store Closing or Miscellaneous Asset Sale on the website for the Debtors' claims and noticing agent, www.kccllc.net/circuitcity. Upon request by electronic mail to Debtors' counsel

(gregg.galardi@skadden.com, ian.fredericks@skadden.com,
and t.kellan.grant@skadden.com) by a counterparty to a
Contract or Lease that is subject to the Potential
Purchaser Notice, the Debtors shall provide Adequate
Assurance Information (as defined herein) to such
counterparty by the later of (i) 12:00 noon (ET) on
January 13, 2009 and (ii) six (6) hours after receipt of
such request, provided that such request is received
between the hours of 8:00 a.m. (ET) and 7:00 p.m. (ET).

6.    Any party to a Contract or Lease subject
to the Potential Purchaser Notice may (but is not
required) to file a statement prior to the Hearing
setting forth the amount necessary under Bankruptcy Code
sections 365(b)(l)(A) and (B) and 365(f)(2)(A) to cure
all defaults and pay all actual pecuniary losses under
the Contracts and Leases Contracts (each a "Cure
Statement" and collectively, the "Cure Statements").

7.    With respect to any Cure Statement filed
at or prior to the Hearing, the Debtors (or the
Successful Bidder, as the case may be) shall pay the
undisputed portion of the Cure Statement for any Lease
or Contract sought to be assumed and assigned as soon as

practicable following a closing of such transaction.
The disputed portion of the Cure Statement shall be paid
following the earlier of the date (i) the Debtor (or the
Successful Bidder, as the case may be) and the
counterparty to the Contract or Lease reach an agreement
as to the appropriate amount subject to the Cure
Statement, and (ii) if necessary, the entry of an order
by the Court fixing the Cure Amount.

8.    To the extent a counterparty to a
Contract or Lease has filed a Cure Statement and the
applicable Leases or Contracts are not immediately
assumed and assigned at closing and/or are subject to
lease designation rights, counterparties to such Lease(s)
and Contract(s) shall have the right to supplement
and/or amend their Cure Statement in connection with any
subsequent notice of assumption and assignment of such
Lease or Contract.

9.    The Potential Purchaser Notice shall
identify any potential transaction party as potential
parties to which the Contracts and Leases would be
assigned.  In addition, the Potential Purchaser Notice
shall provide Debtors' counsel's email addresses for

purposes of requesting information related to adequate
assurance of future performance as follows: (a)
information about the bidder's financial condition,
including without limitation, federal tax returns for
two years, a current financial statement, and/or bank
account statements, (b) a description of the intended
use of the premises (if applicable), (c) the exact name
of the proposed assignee, (d) the proposed form of Order
authorizing the assumption and assignment of the
Contract(s) or Lease(s) (if such order is available),
and (e) any information that the Debtors may reasonably
request ("Adequate Assurance Information").

10.   Any and all Adequate Assurance
Information provided to a counterparty to a Contract or
Lease shall be deemed provided on a confidential basis
without the need for an informal or formal con-
fidentiality agreement or further order of this Court
and may only be disclosed by such counterparty(ies) upon
receipt of the written consent from the Debtors and the
Qualified Bidder, order of this Court, or in connection
with an objection to the proposed sale, assumption and
assignment; provided, however, that prior to disclosing

any Adequate Assurance Information (by objection or
otherwise and whether filed or orally at a Hearing), the
counterparty shall provide twenty-four (24) hours
advance notice to the Debtors and the Qualified Bidder
of such intended use; _provided_, _further_, that, to the
extent requested by the Debtors or the Qualified Bidder,
such counterparty shall use commercially reasonable
steps to assist the Debtors in obtaining an order
protecting the confidentially of such information before
any disclosure.

11.   Counterparties to any Contract or Lease
sought to be assumed and assigned at or in connection
with the Hearing, shall either file an objection to the
assumption and/or assignment of the Contract or Lease up
until January 15, 2009 at 8:00 p.m. (ET) and/or orally
object at such Hearing.  Any filed objection shall state
the legal and factual basis of such objection (subject
to the foregoing restrictions on use of Adequate
Assurance Information) and may be orally supplemented at
the Hearing.

12.   If a counterparty to any Contract or
Lease that is subject to Potential Purchaser Notice

either fails to file and serve an objection in
accordance with this Order and the instructions in the
Potential Purchaser Notice or orally object at the
Hearing, the Court may authorize the assumption and
assignment of the applicable Contract or Lease at the
Hearing.

13.   The Debtors shall post the results of the
Auctions at www.kccllc.net/circuitcity following the
conclusion of the Auctions.

14.   Any party that seeks to object to the
relief requested in the Motion pertaining to approval of
any Going Concern Transaction and Store Closing or
Miscellaneous Asset Sales shall either file a formal
objection that complies with this Order on or before
January 15, 2009 at 8 p.m. (ET) and/or orally object at
the Hearing.  Each objection shall state the legal and
factual basis of such objection (subject to the
foregoing restrictions on use of Adequate Assurance
Information) and may be orally supplemented at the
Hearing.

15.   Any and all written objections as
contemplated by this Order must (a) be in writing, (b)

conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Eastern District of Virginia, and the Case Management Order, (c) be filed with Bankruptcy Court and (d) served in accordance with the Case Management Order so as to be **received** on or before the appropriate deadline as set forth above or in this Order.

16.  The Hearing, at which the Debtors shall seek approval of the Successful Bid or a Going Transaction that provides additional financing, shall be held in this Court on January 16, 2009, at 10:00 a.m. (Eastern).  The Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Hearing.

17.  Notice of the transactions contemplated by the Motion shall be deemed adequate if the Debtors serve Notice of the Motion and entry of this Order by electronic mail, if available, or regular, U.S. Mail on or before the date that is two business days following entry of this Order on (a) those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and

9007, and Local Bankruptcy Rules 2002-1 and 9013-1

Establishing Certain Notice, Case Management, and

Administrative Procedures (Docket No. 130), (b) all

entities known to have expressed an interest in a

transaction regarding the debtors' assets, stores or

inventory during the past three (3) months; (c) all

counterparties to the Contracts and Leases and entities

known to have an interest in any of the assets to be

sold; and (d) all federal, state, and local regulatory

or taxing authorities or recording offices that have a

reasonably known interest in the relief requested

through the Motion.

    18.   The Debtors (after consultation with

counsel to the Creditors' Committee and counsel to the

DIP Agent) are authorized to terminate the bidding

process or the Auctions at any time if they determine,

in their business judgment, that the bidding process

will not maximize the value of the Debtors' business or

assets to be realized by the Debtors' estates; provided,

however, that if the Creditors' Committee does not

consent to the Debtors' decision to terminate the

bidding process or the Auctions, then the Debtors may do

so only upon further order of this Court, which order
may be sought on an expedited basis.

19.   Each counterparty to a Contract or Lease
that objects (whether in writing or orally at the
Hearing) to the relief requested in the Motion reserves
the right to seek a continuance of the hearing on
January 16, 2009 and the Debtors reserve the right to
object to such requests and go forward at the Hearing.

20.   To the extent the Bidding Procedures are
inconsistent with this Order or the record of the
hearing on January 9, 2009, this Order and the record
shall control.

21.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

22.   This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

Dated:  Richmond, Virginia
        January __, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

**Exhibit A**

**(Bidding Procedures)**

## EXHIBIT A

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures")[1] to be employed with respect to the selection of the highest or otherwise best bid(s) for all or any part of the Debtors' assets or businesses.

**QUALIFIED BIDS**

**I.    GOING CONCERN BIDS.**

The Debtors will consider proposals for (1) any or all of their businesses or retail stores that contemplate those stores being operated as a continuing business, whether nationally or on a geographical or other basis, other than as part of Store Closing Sales, whether as a sale or other going concern transaction under a plan, and (2) a financing proposal that will provide the Debtors with additional liquidity to complete a stand-alone restructuring, a going concern sale, or a plan transaction (the "Going Concern Transactions"). Such proposals may include bids for any or all of the Debtors' remaining assets, including but not limited to: (i) inventory at retail stores that the bidder would not operate; and (ii) leases of non-residential real property or designation rights related to such retail locations.

Only "Qualified Going Concern Bidders," _i.e._, persons or entities submitting "Qualified Going Concern Bids", may participate in the Going Concern Auction. To be considered a "Qualified Going Concern Bid" with respect to any or all of the Debtors' assets, the person or entity submitting the bid must deliver the following documents (the "Going Concern Bid Documents"):

(i)    A letter stating that the bidder's offer is irrevocable until the later of (y) 2 business days after the assets subject to the Going Concern Transactions have been disposed of pursuant to the Bidding Procedures, and (z) 30 days after the Hearing, as defined herein;

---

[1]    Unless otherwise defined herein, each capitalized term shall have the meaning assigned to it in the Motion or the Order.

1

(ii)    Identify the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder

(iii)   Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction;

(iv)    Adequate Assurance Information (as defined herein);

(v)     A good faith deposit equal to 10% of the cash component of the purchase price; and

(vi)    The form of order that the bidder would request the Debtors to seek Court approval at the January 16, 2009 hearing (the "Hearing").

All proposals will be considered, but the Debtors reserve their right to reject any or all proposals after consultation with representatives of the Creditors' Committee and the DIP Agent.  Proposals will be evaluated on numerous grounds; however, proposals that are unconditional and contemplate sales that may be consummated on or soon after the Hearing are preferred.

## II.  STORE CLOSING BIDS

The Debtors will consider bids to conduct store closing sales with respect to, among other things, the inventory and fixtures, furniture and equipment located at Debtors' retail stores, warehouses and distribution centers (the "Store Closing Sales").

Only "Qualified Store Closing Bidders," i.e., persons or entities submitting "Qualified Store Closing Bids", may participate in the Store Closing Auction.  To be considered a "Qualified Store Closing Bid" for purposes of the Store Closing Sales the person or entity submitting the bid must (i) submit an offer in the form of mark-up of the Debtors' form of agency agreement by the Bid Deadline (as defined hereinafter) that provides, among other things, for guaranteed amount payable to the Debtors under the agency agreement on or before January 10, 2009 at 5:00 p.m. (Eastern); (ii) identify the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder; (iii) provide evidence, satisfactory to the Debtors in their reasonable discretion (after consultation with representatives of the DIP Agent and the Creditors' Committee), of the bidder's financial wherewithal and operational ability to manage the Store Closing Sales program contemplated in the proposed agency agreement and the financial

and other obligations contemplated by the proposed agency
agreement, including the guaranty of the Debtors' expenses
incurred in connection with the Store Closing Sales;
(iv) provide that the bid shall not be conditioned on the
outcome of unperformed due diligence by the bidder or any
financing contingency; (v) a good faith deposit equal to 10% of
the guaranteed amount; (vi) provide that the bidder's offer is
irrevocable until the later of (y) 2 business days after the
assets subject to the Store Closing Sales have been disposed of
pursuant to the Bidding Procedures, and (z) 30 days after the
Hearing; and (vii) the form of order (and sale guidelines) that
the bidder would request the Debtors to seek Court approval at
the Hearing.

Although the Debtors are requesting proposals that
contemplate a guaranteed amount, the Debtors will accept
alternate Store Closing Sale proposals, including, without
limitation, fee proposals and hybrid proposals.  In the event
any proposal is submitted that does not contemplate a guaranteed
amount, the requirement to submit a good faith deposit is waived.

## III. MISCELLANEOUS ASSET SALE BIDS

The Debtors will consider bids for any assets,
including any inventory at any stores, warehouses or
distribution centers, store, warehouse and distribution center
leases, owned real property, the firedog$^{SM}$ assets, including
related internet operations conducted through www.firedog.com,
the Debtors other internet operations, including operations
conducted through www.circuitcity.com, corporate airplanes, and
other miscellaneous assets to the extent those assets are not
ultimately included in the highest or otherwise best Qualified
Going Concern or Store Closing Bid (the "Miscellaneous Asset
Sales").

Under the Bidding Procedures only "Qualified
Miscellaneous Asset Bidders," _i.e._ persons or entities
submitting "Qualified Miscellaneous Asset Bids", may participate
in the Miscellaneous Asset Auction.  To be considered a
"Qualified Miscellaneous Asset Bid" for purposes of the
Miscellaneous Asset Sales the person or entity submitting the
bid must: (i) be a Qualified Going Concern Bidder, (ii) be a
Qualified Store Closing Bidder; or (iii) submit an offer in the
form of a purchase agreement by the Bid Deadline (as defined
hereinafter) that specifically identifies (a) the asset(s) to be
purchased, (b) the purchase price, (c) identify the potential
bidder and the officer(s) or authorized agent(s) who will appear

3

on behalf of such bidder, (d) provide evidence, satisfactory to the Debtors in their reasonable discretion (after consultation with representatives of the DIP Agent and the Creditors' Committee), of the bidder's financial wherewithal, (e) provide that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency, (f) a good faith deposit equal to 10% of the cash component of the purchase price; (g) Adequate Assurance of Information; (h) provide that the bidder's offer is irrevocable until the later of (y) 2 business days after the assets subject to the Miscellaneous Asset Sales have been disposed of pursuant to the Bidding Procedures, and (z) 30 days after the Hearing; and (i) the form of order that the bidder would request the Debtors to seek Court approval at the Hearing.

Any landlord interested in attending the auction or interested in bidding on its own lease(s) shall be deemed a Qualified Miscellaneous Asset Bidder by submitting a written letter on landlord's corporate letterhead (or, if on behalf of landlord by landlord's legal counsel, then on landlord's legal counsel's letterhead) that must include the landlord's legal name, the address for the leased location (and if available the store number), and the landlord and/or its counsel's contact information (each a "Landlord Letter").  Each Landlord Letter, except with respect to "defensive" landlord proposals, shall be sent so as to be received by the parties set forth in the "Bid Deadline" section hereof no later than 5:00 p.m. (ET) on January 12, 2009.

## ADEQUATE ASSURANCE INFORMATION

"Adequate Assurance Information" shall mean: (a) information about the bidder's financial condition, including without limitation, federal tax returns for two years, a current financial statement, and/or bank account statements, (b) a description of the intended use of the premises (if applicable), (c) the exact name of the proposed assignee, and (d) any other information that the Debtors may reasonably request.  **It being expressly understood and agreed to by all Qualified Bidders that, by submitting a Qualified Bid, all Qualified Bidders acknowledge that Adequate Assurance Information may be disclosed to counterparties to Contracts and Leases in accordance with the Bidding Procedures Order.**

## BID DEADLINE

Except with respect to Landlord Letters or landlord "defensive" proposals, any person or entity wanting to participate in the Going Concern Auction, the Store Closing Auction, and/or the Miscellaneous Asset Auction must submit a a Qualified Going Concern Bid, Qualified Store Closing Bid, or a Qualified Miscellaneous Asset Bid on or before **January 10, 2009 at 5:00 p.m. (Eastern)** (the "Bid Deadline") in writing, to: (1) Circuit City Stores, Inc., 9950 Mayland Dr., Richmond, Virginia 23233, Attn: Reginald D. Hedgebeth (Reggie_Hedgebeth@Circuitcity.com); (2) Counsel to the Debtors, Gregg M. Galardi and Ian S. Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19801 (gregg.galardi@skadden.com and ian.fredericks@skadden.com); (3) Counsel to the Creditors' Committee, Jeff Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California 90067-4100, (jpomerantz@pszjlaw.com); and (4) Counsel to the DIP Agent, David S. Berman, Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108, (dberman@riemerlaw.com). The Debtors shall announce the terms of the highest or otherwise best Qualified Going Concern Bid, Qualified Store Closing Bid, and Qualified Miscellaneous Asset Bid, after consultation with representatives of the DIP Agent and Creditors' Committee, on or before the commencement of the Going Concern Auction, Store Closing Auction, and the Miscellaneous Asset Auction.

## TERMINATION FEE

The Debtors are soliciting "stalking horse" bidders for the Going Concern Transactions and the Store Closing and Miscellaneous Asset Sales. The Bankruptcy Court has authorized the Debtors (after consultation with representatives of the Creditors' Committee and the DIP Agent) to enter into stalking horse agreements with a bidder submitting a Qualified Going Concern, Store Closing, or Miscellaneous Asset Bid before the Bid Deadline and to provide such bidder with a Termination Fee of up to 2% of the guaranteed cash purchase price offered by such bidder for Stalking Horse Agreement that the Debtors enter into on or prior to January 13, 2009; provided, further, that any Termination Fee will only be paid if (1) the Stalking Horse Bidder is not the Successful Bidder at the Final Auction, (2) the Stalking Horse Bidder agrees to serve as a back-up bidder and close the transaction contemplated by the Stalking Horse Agreement (as may be modified, including, without limitation, modifications as to price, as of the Stalking Horse Bidder's

last proposal at any Auction) in the event the transaction with
the Successful Bidder does not close, and (3) the transaction
proposed by the Successful Bidder actually closes; provided,
however, that any such bid shall not be subject to "due
diligence" or financing contingencies.

In the event that the Debtors exercise their
discretion, after consultation with representatives of the
Creditors' Committee and the DIP Agent, and agree to such a
Termination Fee, the amount of such fee shall be considered by
the Debtors in determining the highest or otherwise best bid and
the net value that the Debtors' estates will realize at any
Auction.

THE AUCTIONS

Tentatively, the Auctions will commence at 12:00 p.m.
(Eastern) on January 13, 2008 at the offices of Skadden, Arps,
Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York
10036.  At the start of the Auctions, the Debtors, after
consultation with the representatives of the Creditors'
Committee and the DIP Agent, will determine the order in which
the Going Concern, Store Closing, and Miscellaneous Asset
Auctions will be conducted.  Set forth below is a tentative
schedule.  The Debtors will post dial-in instructions for the
Auction on KCC's website the morning of the auction.

I.   **THE GOING CONCERN AUCTION**

In the event that the Debtors receive any Qualified
Going Concern Bids, an auction (the "Going Concern Auction")
will be conducted at the offices of Skadden, Arps, Slate,
Meagher & Flom, LLP, 4 Times Square, New York, New York 10036,
tentatively commencing at 12:00 p.m. (Eastern) on January 13,
2009, to determine the highest or otherwise best offer for the
business or assets for which a Qualified Going Concern Bid has
been received.  Any Qualified Going Concern Bidder wishing to
participate in the Going Concern Auction must appear and submit
its highest or otherwise best proposal at the Going Concern
Auction.  Bidding will continue on assets subject to a Qualified
Going Concern Bid until such time as no higher or otherwise best
proposal is received.  At the conclusion of the bidding, the
Debtors (after consultation with representatives of the DIP
Agent and the Creditors' Committee) shall announce the
proposal(s) the Debtors have determined to be the highest or
otherwise best bid(s).  The bidder(s) submitting the highest or

otherwise best proposal(s) will be requested to remain for the Final Auction.

## II.   THE STORE CLOSING AUCTION

In the event that the Debtors receive any Qualified Store Closing Bids, an auction (the "Store Closing Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036, tentatively commencing at 3:00 p.m. (Eastern) on January 13, 2009 or immediately following the conclusion of the Going Concern Auction, with respect to any and all Qualified Store Closing Bids and to determine the highest or otherwise best offer with respect to any agreement to conduct the proposed Store Closing Sales.  Bidding at the Store Closing Auction will continue until all Qualified Store Closing Bidders have submitted their highest or otherwise best bid.  At the conclusion of the bidding, the Debtors (after consultation with representatives of the DIP Agent and the Creditors' Committee) shall announce the bid(s) the Debtors have determined to be the highest or otherwise best bid(s).  The bidder(s) submitting the highest or otherwise best bid(s) will be requested to remain for the Final Auction (as defined herein).

## III.  THE MISCELLANEOUS ASSET AUCTION

In the event that the Debtors receive any Qualified Miscellaneous Asset Bids, an auction with respect to the Miscellaneous Asset Sales (the "Miscellaneous Asset Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036, tentatively commencing at 3:00 p.m. (Eastern) on January 13, 2009 and, if necessary, January 14, 2009, or immediately following the conclusion of the Store Closing Auction.  Any Qualified Miscellaneous Asset Bidder wishing to participate in the Miscellaneous Asset Auction must appear and submit its highest or otherwise best bid at the Miscellaneous Asset Auction. Bidding at the Miscellaneous Asset Auction will continue until each Qualified Miscellaneous Asset Bidder has submitted its highest or otherwise best bid for the Miscellaneous Asset Sale. At the conclusion of the bidding, the Debtors (after consultation with representatives of the DIP Agent and the Creditors' Committee) shall announce the bid(s) the Debtors have determined to be the highest or otherwise best bid(s).  The bidder(s) submitting the highest or otherwise best bid(s) will be requested to remain for the Final Auction.

## II.   THE FINAL AUCTION

Upon the conclusion of bidding at the Going Concern Auction, the Store Closing Auction, and the Miscellaneous Asset Auction, the Debtors, after consultation with representatives of the DIP Agent and the Creditors' Committee, will determine which proposal or combination of proposals provides the Debtors, their estates and creditors with the highest or otherwise best offer. Upon such announcement, the Debtors will then commence an auction (the "Final Auction") in which the successful bidders at the Going Concern Auction, the Store Closing Auction, and the Miscellaneous Asset Auction may participate.  Bidding at the Final Auction will continue until such time as each bidder has submitted its highest or otherwise best proposal.  At the conclusion of the Final Auction, the Debtors, after consultation with representatives of the DIP Agent and the Creditors' Committee, will announce the bidder or bidders submitting the proposal(s) that they have determined constitute the highest or otherwise best proposal (the "Successful Bid" and the party that provides such Successful Bid, the "Successful Bidder") and close the Auctions.

## AUCTION PROCEDURES

## I.   GOING CONCERN AUCTION PROCEDURES

Prior to the Going Concern Auction, the Debtors will advise all Qualified Going Concern Bidders of what they believe to be the highest or otherwise best Qualified Going Concern Bid. Only a Qualified Going Concern Bidder who has submitted a Qualified Going Concern Bid is eligible to participate at the Going Concern Auction.  During the Going Concern Auction, bidding shall begin initially with the highest or otherwise best proposal and subsequently continue in such minimum increments as the Debtors shall determine at the Going Concern Auction (such proposals submitted at the Going Concern Auction, the "Going Concern Auction Bids").  Bidding shall begin initially with the highest or otherwise best proposal and subsequently continue in such minimum increments as the Debtors (after consultation with representatives of the Creditors' Committee and the DIP Agent) shall determine at the Going Concern Auction.

Upon conclusion of the Going Concern Auction, the Debtors, in consultation with representatives of the DIP Agent and the Creditors' Committee, shall (i) review each Going Concern Auction Bid on the basis of financial and contractual terms and the factors relevant to the Going Concern Sale and

(ii) identify the highest or otherwise best offer for an asset
(the "Successful Going Concern Bid").  For the Going Concern
Auction, the Debtors may designate multiple Successful Going
Concern Bids for various assets.

## II.  STORE CLOSING AUCTION PROCEDURES

Prior to the Store Closing Auction, the Debtors (after
consultation with representatives of the Creditors' Committee
and the DIP Agent) will advise all Qualified Store Closing
Bidders of what they believe to be the highest or otherwise best
Qualified Store Closing Bid.  Only a Qualified Store Closing
Bidder who has submitted a Qualified Store Closing Bid is
eligible to participate at the Store Closing Auction.  During
the Store Closing Auction, bidding shall begin initially with
the highest or otherwise best bid and subsequently continue in
such minimum increments as the Debtors (after consultation with
representatives of the Creditors' Committee and the DIP Agent)
shall determine at the Store Closing Auction (such bids
submitted at the Store Closing Auction, the "Store Closing
Auction Bids").

Upon conclusion of the Store Closing Auction, the
Debtors, in consultation with representatives of the DIP Agent
and the Creditors' Committee, shall (i) review each Store
Closing Auction Bid on the basis of financial and contractual
terms and the factors relevant to the Store Closing Sale and (ii)
identify the highest or otherwise best offer for the Store
Closing Sales (the "Successful Store Closing Bid").  For the
Store Closing Auction, the Debtors may designate multiple
Successful Store Closing Bids for various stores.

## III. MISCELLANEOUS ASSET AUCTION PROCEDURES

Prior to the commencement of the Miscellaneous Asset
Auction, the Debtors will advise all Qualified Miscellaneous
Asset Bidders of what they believe to be the highest or
otherwise best Qualified Miscellaneous Asset Bid received.  Only
a Qualified Miscellaneous Asset Bidder who has submitted a
Qualified Miscellaneous Asset Bid shall be eligible to
participate at the Miscellaneous Asset Auction.  During the
Miscellaneous Asset Auction, bidding shall begin initially with
the highest or otherwise best proposal and subsequently continue
in such minimum increments as the Debtors  (after consultation
with representatives of the Creditors' Committee and the DIP
Agent) shall determine at the Miscellaneous Asset Auction (such
bids submitted at the Miscellaneous Asset Auction, the
"Miscellaneous Asset Auction Bids").

Upon conclusion of the Miscellaneous Asset Auction,
the Debtors, in consultation with representatives of the DIP
Agent and the Creditors' Committee, shall (i) review each
Miscellaneous Asset Auction Bid on the basis of financial and
contractual terms and the factors relevant to the Miscellaneous
Asset Sale and (ii) identify the highest or otherwise best offer
for an asset (the "Successful Miscellaneous Asset Bid").  For
the Miscellaneous Asset Auction, the Debtors may designate
multiple Successful Miscellaneous Asset Bids for various assets.

### NO COMBINATION BIDDING

Bidders may not form joint ventures or partnerships to
submit bids with respect to the Store Closing Sales or the
Miscellaneous Asset Sales, without the prior written consent of
the Debtors (after consultation with representatives of the
Creditors' Committee and the DIP Agent).  Without limiting the
generality of the foregoing, separate bidders on any Going
Concern Transactions and the Store Closing and Miscellaneous
Asset Sales may not combine their bids without the prior written
approval of the Debtors (after consultation with representatives
of the Creditors' Committee and the DIP Agent).

### RETURN OF GOOD FAITH DEPOSIT

As noted above, all Bidders will be required to submit
good faith deposits (the "Good Faith Deposits") with the Debtors
on or before the Bid Deadline.  Such Good Faith Deposits shall
be equal to 10% of the cash component of the purchase price.

Good Faith Deposits of all Qualified Bidders shall be held in a separate interest-bearing account until a proposal is no longer irrevocable as provided herein, at which time they will be returned to the Qualified Bidder; provided, however, that if a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtors.

## RESERVATION OF RIGHTS

The Debtors reserve the right to (i) determine at their reasonable discretion (after consultation with representatives of the Creditors' Committee and the DIP Agent) which offer is the highest or otherwise best offer, (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any offer that the Debtors in their reasonable discretion (after consultation with representatives of the Creditors' Committee and the DIP Agent) deem to be (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Debtors and their estates, (iii) waive the requirements of any of the Bidding Procedures with respect to a potential or Qualified Bidder if the Debtors (after consultation with representatives of the Creditors' Committee and the DIP Agent) determine is in their business judgment and in the best interests of their creditors and estates; (iv) extend the Bid Deadline (after consultation with representatives of the Creditors' Committee and the DIP Agent) to a date and time that is not later than 12:00 midnight on January 12, 2009; (v) seek Court authority to extend the Bid Deadline beyond such date; (vi) change the date of any Auction (after consultation with representatives of the Creditors' Committee and the DIP Agent) to a date that is no later than January 15, 2009; (vii) seek Court authority to change the date of any Auction beyond such date and time; and (viii) seek Court authority to move the Hearing to a date that is later than January 16, 2009.

The selection of a Successful Bidder shall be within the reasonable business judgment of the Debtors (after consultation with representatives of the Creditors' Committee and the DIP Agent) and subject to the approval of the Bankruptcy Court, and economic considerations shall not be the sole

criteria upon which the Debtors may base their decision.  In
assessing whether a proposal constitutes a higher or otherwise
better offer, the Debtors shall consider, among other things,
the net economic effect upon the Debtors' estates.  The
presentation of a particular proposal to the Bankruptcy Court
for approval does not constitute the Debtors' acceptance of the
proposal.  The Debtors will be deemed to have accepted a
proposal only when the proposal has been approved by the
Bankruptcy Court at the Hearing.  At or before the Hearing, the
Debtors, after consultation with representatives of the
Creditors' Committee and the DIP Agent, may impose such other
terms and conditions on Qualified Store Closing Bidders,
Qualified Going Concern Bidders and/or Qualified Miscellaneous
Asset Bidders as the Debtors may determine to be in the best
interests of the Debtors, their estates, their creditors, and
other parties in interest.

Notwithstanding anything to the contrary contained in
these Bidding Procedures, the Creditors' Committee reserves its
rights to object to any decisions the Debtors make pursuant to
these Bidding Procedures with which the Creditors' Committee
does not agree and the Court shall retain ultimate authority to
adjudicate any such disputes if and when they should arise.

**Exhibit B**

**(Potential Purchaser Notice)**

```
                IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - x
                                :
In re:                          :   Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :   Case No. 08-35653-KRH
et al.,                         :
                                :
              Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x
```

**Hrg. Date: [_] (ET)**
**Obj. Due: [_] (ET)**


**NOTICE TO COUNTERPARTIES TO CONTRACTS AND LEASES THAT
THE DEBTORS HAVE IDENTIFIED ONE OR MORE POTENTIAL
PURCHASER OF EXECUTORY CONTRACTS AND UNEXPIRED PERSONAL
PROPERTY AND NONRESIDENTIAL REAL PROPERTY LEASES**


PLEASE TAKE NOTICE that pursuant to the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") in the Order (I) Approving Procedures In Connection With Sale Of All Or Substantially All Of The Business, (II) Authorizing Debtors To Enter Into Stalking Horse Or Financing Agreements In Connection With Going Concern Transactions Or Stalking Horse Agreements In Connection With Store Closing And Miscellaneous Asset Sales Or, (III) Approving The Payment Of Termination Fee In Connection Therewith, (IV) Setting Auction And Hearing Dates Pursuant To Bankruptcy Code Sections 105 And 363 And (V) Granting Related Relief (the "Bidding Procedures Order ") (Docket No. [_____]) entered on January **[__]**, 2009, the debtors and debtors in possession in the above captioned cases (collectively, the "Debtors") have identified one or more potential purchasers (the "Potential Purchaser") (listed on Schedule A attached hereto) of the Contract(s) and Lease(s) to which you are a counterparty.  **NOTE: The Debtors have not included in the Potential Purchaser Notice any landlord that expressed an interest in bidding on its own lease.**

PLEASE TAKE FURTHER NOTICE pursuant to the Bidding Procedures, the Contract(s) and Lease(s) to which you are a counterparty will be assumed and assigned to the Potential Purchaser if the sale is successful and approved by the Bankruptcy Court at the hearing to be held on January 16, 2009 at 10:00 a.m. (prevailing Eastern time) (the "Hearing") in the United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219.

PLEASE TAKE FURTHER NOTICE that if more than one party has been identified as a Potential Purchaser, such parties may participate in an auction for the interest in the Contract(s) and Lease(s) at 12:00 noon (prevailing Eastern time) on January 13, 2009 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 or such later time or other place as the Debtors shall determine.

**PLEASE TAKE FURTHER NOTICE that counterparties to any Contract or Lease sought to be assumed and assigned at or in connection with the Hearing, shall either file an objection to the assumption and/or assignment of the Contract or Lease up until January 15, 2009 at 8:00 p.m. (ET) and/or orally object at such Hearing. Any filed objection shall state the legal and factual basis of such objection (subject to the foregoing restrictions on use of Adequate Assurance Information) and may be orally supplemented at the Hearing.**

PLEASE TAKE FURTHER NOTICE that any and all written objections as contemplated by the Bidding Procedures Order or this Notice must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Eastern District of Virginia, and the Case Management Order, (c) be filed with Bankruptcy Court and (d) served in accordance with the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 0130) (the "Case Management Order") so as to be **received** on or before the appropriate deadline as set forth above or in the Bidding Procedures Order.

2

PLEASE TAKE FURTHER NOTICE that a hearing with respect to assumption and assignment of Contracts and Leases will be held before the Honorable Kevin R. Huennekens, United States Bankruptcy Judge for the Eastern District of Virginia at the Bankruptcy Court, 701 East Broad Street, Room 5000, Richmond, VA 23219, at the Sale Hearing or such other date and time as the Court may schedule.  Only objections made in writing and timely filed and received or orally made at the Hearing will be considered by the Bankruptcy Court at such Hearing.

PLEASE TAKE FURTHER NOTICE that if no objection is timely filed and received and no objection is made at the Hearing with regard to a Contract or Contracts and/or Lease or Leases, the non-Debtor counterparty to the Contract or Lease will be deemed to have consented to the assumption and assignment of the Contract(s) and Lease(s) to a Potential Purchaser that is selected as the Successful Bidder.

PLEASE TAKE FURTHER NOTICE that the Debtors assert that pursuant to 11 U.S.C. § 365, there is adequate assurance that the any cure amounts will be paid and adequate assurance of future performance.  Adequate Assurance Information in the form of (a) information about the Potential Purchaser's financial condition, including without limitation, federal tax returns for two years, a current financial statement, and/or bank account statements, (b) a description of the intended use of the premises (if applicable), (c) the exact name of the proposed assignee, (d) the proposed form of Order authorizing the assumption and assignment of the Contract(s) or Lease(s) (if such order is available), and (e) any information that the Debtors may reasonably request ("Adequate Assurance Information"), is attached hereto.  **By Order of the Bankruptcy Court, any and all Adequate Assurance Information provided to a counterparty to a Contract or Lease shall be deemed provided on a confidential basis without the need for an informal or formal confidentiality agreement or further order of this Court and may only be disclosed by such counterparty(ies) upon receipt of the written consent from the Debtors and the Qualified Bidder, order of this Court, or in connection with an objection to the proposed sale, assumption and assignment; _provided_, _however_, that prior**

3

**to disclosing any Adequate Assurance Information (by ob-
jection or otherwise and whether filed or orally at a
Hearing), the counterparty shall provide twenty-four (24)
hours advance notice to the Debtors and the Qualified
Bidder of such intended use; provided, further, that, to
the extent requested by the Debtors or the Qualified
Bidder, such counterparty shall use commercially reason-
able steps to assist the Debtors in obtaining an order
protecting the confidentially of such information before
any disclosure.**

PLEASE TAKE FURTHER NOTICE that Adequate As-
surance Information will be made available upon reason-
able request of the Debtors (by electronic mail to coun-
sel for the Debtors to gregg.galardi@skadden.com,
ian.fredericks@skadden.com and
t.kellan.grant@skadden.com) and evidence of the same
will be adduced, if necessary, at the Hearing. By order
of the Court, upon request in accordance herewith of a
counterparty to a Contract or Lease that is subject to
the Potential Purchaser Notice, the Debtors shall pro-
vide Adequate Assurance Information to such counterparty
by the later of (i) 12:00 noon (ET) on January 13, 2009
and (ii) six (6) hours after receipt of such request,
provided that such request is received between the hours
of 8:00 a.m. (ET) and 7:00 p.m. (ET). Prior to the Clos-
ing Date, the Debtors may revise their decision with re-
spect to the assumption and/or assignment of any Lease
and provide a new notice amending the information pro-
vided in this notice.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS
NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE
MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: January __, 2009
       Richmond, Virginia

SKADDEN, ARPS, SLATE,        MCGUIREWOODS LLP
MEAGHER & FLOM, LLP          Douglas M. Foley (VSB No. 34364)
Gregg M. Galardi, Esq.       One James Center
Ian S. Fredericks, Esq.      901 E. Cary Street
P.O. Box 636                 Richmond, Virginia 23219
Wilmington, Delaware         (804) 775-1089
19899-0636

          - and -

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.     Counsel for Debtors and Debtors
333 West Wacker Drive        in Possession
Chicago, Illinois 60606

5

**SCHEDULE A**

[Potential Purchaser]