Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

               IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                         RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :    Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :    Case No. 08-35653 (KRH)
et al.,                     :
                            :
          Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OBJECTION TO TOMTOM, INC.'S MOTION FOR AN ORDER
UNDER SECTIONS 105, 362 AND 363 MODIFYING THE AUTOMATIC
STAY TO PERMIT THE EXERCISE OF SETOFF AND/OR RECOUPMENT
RIGHTS AGAINST THE DEBTORS**

          The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors" or "Circuit City")[1] hereby submit their ob-

jection (the "Objection") to the Motion of TomTom, Inc.

For an Order Under Sections 105, 362 and 363 Modifying

the Automatic Stay to Permit the Exercise of Setoff

and/or Recoupment Rights Against the Debtors (the "Mo-

tion").  In support of the Objection, the Debtors respect-

fully represent:

**BACKGROUND**

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue to manage and oper-

ate their businesses as debtors in possession pursuant

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Dis-
tribution Company of Virginia, Inc. (2821), Circuit City Proper-
ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertis-
ing Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Ven-
ture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland
MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC
(3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address
is 9950 Mayland Drive, Richmond, Virginia 23233.

2

to sections 1107 and 1108 of title 11 of the U.S. Code
(the "Bankruptcy Code").

3.   On November 12, 2008, the Office of the
United States Trustee for the Eastern District of Vir-
ginia appointed a statutory committee of unsecured
creditors (the "Creditors' Committee").  To date, no
trustee or examiner has been appointed in these chapter
11 cases.

**B.   The Debtors And TomTom, Inc.**

4.   TomTom and the Debtors have had a long-
standing business relationship whereby the Debtors pur-
chased merchandise from TomTom.  At various times
throughout their working relationship, TomTom has of-
fered incentives to its customers, including Circuit
City, for merchandise purchases.

5.   Most recently, in the fall of 2008, Tom-
Tom introduced its 2008 "GiveGive" Holiday Promotion
(the "Promotion") pursuant to which retailers who opted
to participate would receive credits (the "Sell-through
Credits") for sales of certain models of TomTom devices.
Under the terms of the Promotion, the Sell-through Cred-
its would accrue during the period from November 23,

3

2008 through January 3, 2009.  The Sell-through Credits
could be used to offset future purchases of TomTom de-
vices.  A copy of the Promotion is attached as Exhibit A.

6.    Pursuant to a letter agreement dated Oc-
tober 17, 2008 (the "Letter Agreement"), Circuit City
purchased 125,000 units of TomTom's Model 125 product
(the "Product") for delivery on November 3, 2008.  The
Letter Agreement provided that Circuit City would pay
for the Product in two installment payments: a payment
of $8 million to be made prior to the anticipated Novem-
ber 3, 2008 delivery; and a second payment of $8.65 mil-
lion to be made on December 2, 2008.  The Letter Agree-
ment further provided that the second installment pay-
ment would be "netted against the sell through credits
available to Circuit City under the current Model 125
sell-through credit program (separately documented)."  A
copy of the Letter Agreement is attached as Exhibit B.

7.    In accordance with the Letter Agreement,
on or prior to November 3, 2008, the Debtors remitted
payment in the amount of $8 million to TomTom.  Simi-
larly, on or about November 3, 2008, TomTom delivered

the Product in accordance with its obligations under the
Letter Agreement.

8.   Since the Product was received, the Debt-
ors have been selling the Product in their stores and
through online purchases.  Beginning on November 23,
2008, the Debtors began to accrue Sell-through Credits
pursuant to the Promotion.  The Debtors continued to ac-
crue Sell-through Credits until the Promotion ended on
January 3, 2009.

9.   However, due to the filing of the Debt-
ors' bankruptcy petitions, the Debtors were prohibited
from and indeed did not make the December 2, 2008 pay-
ment under the Letter Agreement.

**C.   TomTom's Pre-petition Claims**

10.   In its Motion, TomTom alleges that, as of
the Petition Date, it was owed $10,196,426.21 (the "Pre-
petition Claim").  Of this amount, TomTom further al-
leges that it was owed $8,412,529.56 on account the
Product it delivered under the Letter Agreement(the
"Merchandise Claim").

11.   On or about November 24, 2008, TomTom
filed a section 503(b)(9) proof of claim on account of

5

the Merchandise Claim, and made a reclamation demand on
account of the Product.  To date, upon information and
belief, TomTom has not filed a claim for the difference
between the amount of the Merchandise Claim and the
amount of the Pre-petition Claim.

**D.    Pre-petition Transfers To TomTom.**

        12.   In addition to transferring the first in-
stallment payment -- $8 million -- to TomTom prior to
the Petition Date, the Debtors also made five additional
pre-petition transfers to TomTom (collectively, the
"Pre-petition Transfers").  Relevant information relat-
ing to the Pre-petition Transfers is as follows:

| Payment Date | Payment Amount[2] | Invoice Date(s) |
|---|---|---|
| 8/15/08 | $648,790.38 | 10 Invoices dated between June 11, 2008 and June 12, 2008 |
| 8/18/08 | $132,011.76 | 5 Invoices dated June 17, 2008 |
| 9/1/08 | $677,496.55 | 29 Invoices dated between June 17, 2008 and June 27, 2009 |
| 10/22/08 | $107,764.91 | 94 Invoices dated between July 7, 2008 and August 26, 2008 |

---

[2]    The "Payment Amount" includes credits available to the Debtors
that were offset prior to remitting payment to TomTom.

| 10/27/08 | $36,702.40 | 8 Invoices dated between August 20, 2008 and August 21, 2008 |

## OBJECTION

13.   TomTom asks this Court for relief from the automatic stay to exercise its setoff and/or recoupment rights against the Debtors.  The Debtors respectfully request that this Court deny the Motion on various grounds, including that the Motion is procedurally improper and premature and TomTom cannot satisfy the standards for setoff, recoupment or relief from the automatic stay.

## I.   THE MOTION IS PROCEDURALLY IMPROPER.

14.   It is black-letter law that, under Bankruptcy Code section 365(d)(2), a debtor in possession has until confirmation of a plan to assume or reject any executory contract.  11 U.S.C. § 365(d)(2).  Critically, until the debtor assumes an executory contract, the non-debtor party is prevented from enforcing the terms of that contract.  NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532 (1984) ("The filing of the petition in bankruptcy means that the . . . agreement is no longer immediately enforceable, and may never be enforceable

again."); <u>see also</u> <u>In re El Paso Refinery, L.P.</u>, 220 B.R.
37, 43 (Bankr. W.D. Tex. 1998) ("From the moment of fil-
ing to the moment of assumption or rejection, the non-
debtor party is held to be barred from enforcing the
contract and its terms."); <u>In re Metro Transp. Co.</u>, 87
B.R. 338, 339 (Bankr. E.D. Pa. 1988) ("We hold that a
formal assumption of an executory contract by a debtor
is required to render an executory contract enforceable
against a debtor.").

15.  As set forth above, neither the Letter
Agreement nor the Promotion has yet been assumed or re-
jected by the Debtors pursuant to Bankruptcy Code sec-
tion 365.  Thus, because TomTom is seeking to enforce
the Letter Agreement and the Promotion by obtaining an
order directing the Debtors to setoff or recoup alleg-
edly in accordance with the terms of those agreements, a
motion for relief from the automatic stay is not the
proper procedural vehicle.  Instead, TomTom must first
obtain an order compelling the Debtors to assume or re-
ject the agreements.  <u>See</u>, <u>e.g.</u>, <u>In re El Paso Refinery,
L.P.</u>, 220 B.R. at 44; <u>Bistrian v. East Hampton Sand &
Gravel Co., Inc.</u> (<u>In re East Hampton Sand & Gravel Co.,</u>

8

Inc.), 25 B.R. 193, 198 (Bankr. E.D.N.Y. 1982); <u>but see</u>
<u>In re Valley Media, inc.</u>, 279 B.R. 105, 138 (Bankr. D.
Del. 2002) (noting in <u>dicta</u> that the remedy for termi-
nating a "non-assumable" contract is to seek relief from
the automatic stay, and concluding that a debtor need
not assume an agreement to enjoy the rights thereunder).

16.  Specifically, in <u>El Paso</u>, the bankruptcy
court rejected the efforts of a party to an executory
contract with a debtor to obtain relief from the auto-
matic stay to terminate such contract, stating that:

> By limiting the non-debtor party to the § 365
> remedies, the value of the executory contract
> can be preserved for the estate, while allow-
> ing the estate an appropriate period of time
> to evaluate its options.  If the contract is
> terminated at the request (or behest) of the
> non-debtor party, then the estate's options
> are literally foreclosed, undermining the
> structure and intent of the drafters of the
> Code.  A party to an executory contract has no
> more right to 'relief from stay' to 'termi-
> nate' a contract with the estate than does any
> other unsecured creditor whose contract
> (executory or not) has been breached.

<u>El Paso</u>, 220 B.R at 44; <u>see also</u> <u>East Hampton</u>, 25 B.R.
at 198 (noting lessor is preempted from seeking relief
from stay until debtor is required to assume or reject
lease).

17.    Here, the Sell-through Credits earned un-
der the Promotion are a valuable asset of the estate and
will likely prove valuable going forward, either for fu-
ture merchandise purchases or to assign to a purchaser
in a going concern transaction.  As such, any decisions
regarding the Sell-through Credits and the Promotion, as
well as the Letter Agreement, will be made in the con-
text of the Debtors' further restructuring efforts.
Thus, it is important that the Debtors be given the full
measure of time provided by the Bankruptcy Code to de-
termine the proper treatment of the Letter Agreement,
the Sell-through Credits and the Promotion.

18.    Based on the foregoing, the Motion should
be denied because it is the procedurally incorrect vehi-
cle for obtaining the relief TomTom requests.  Instead,
TomTom must first obtain an order compelling assumption
or rejection of the Letter Agreement and/or the Promo-
tion.  Indeed, until the Debtors assume or reject the
Letter Agreement and/or Promotion, TomTom's request to
setoff or recoup its claims and debts under those agree-
ments is premature.

10

**II.   THE MOTION IS PREMATURE BECAUSE TOMTOM'S CLAIM
SHOULD BE HELD IN ABEYANCE UNDER BANKRUPTCY CODE
SECTION 502(d).**

19.   As set forth above, it appears that Tom-
Tom was the recipient of certain transfers on account of
antecedent debts, made within 90 days of the Petition
Date and while the Debtors were presumed insolvent, and
that allowed TomTom to receive more than it would had
such transfers not been made.  Based on these facts,
there is a colorable claim that the Pre-petition Trans-
fers are avoidable under Bankruptcy Code section 547.
See 11 U.S.C. § 547(b) (setting forth the requirements
of an avoidable transfer thereunder).

20.   Given the potential avoidability of the
Pre-petition Transfers, Bankruptcy Code section 502(d)
provides that all of the Pre-petition Claim, including
the Merchandise Claim, should be held in abeyance pend-
ing resolution of any avoidance actions.  Specifically,
Bankruptcy Code section 502(d), provides as follows:

> the court shall disallow any claim of any
> entity from which property is recoverable
> under section . . . 550 . . . of this title
> or that is a transferee of a transfer
> avoidable under section . . . 547 . . . of
> this title, unless such entity or trans-
> feree has paid the amount, or turned over

> any such property, for which such entity or
> transferee is liable under section . . .
> 550 . . . of this title.

11 U.S.C. § 502(d).  Thus, section 502(d) expressly and

unequivocally applies to "any claim of any entity."  See

also Central Virginia Community College v. Katz, 546 U.S.

356, 271 (2006)(noting that, under section 502(d), if

the [creditor] has a claim against the bankrupt estate,

the avoidance determination operates to bar that claim

until the preference is turned over); In re Bob Grissett

Golf Shoppes, Inc., 50 B.R. 598, 607 (Bankr. E.D. Va.

1985)("[S]ection 502(d) requires that the court disallow

the claim of any entity that has been the recipient of

an avoidable transfer unless the entity has disgorged

the property.").

   21.  Section 502(d) "is designed to assure an

equality of distribution of the assets of the bankruptcy

estate" among similarly situated parties in interest.

Campbell v. United States (In re Davis), 889 F.2d 658,

662 (5th Cir 1989); see also Keppel v. Tiffin Sav. Bank,

197 U.S. 356, 361 (1905)(discussing Bankruptcy Act sec-

tion 57g, the precursor to section 502(d), and finding

that the "fundamental purpose of the provision in ques-

tion was to secure an equality of distribution of the
assets of a bankrupt estate"). It is further "intended
to have a coercive effect of insuring compliance with
judicial orders." Davis, 889 F.2d at 661.

22. In order to effectuate the purposes of
502(d), "a claim may be disallowed at least temporarily
and for certain purposes, subject to reconsideration,
simply upon the allegation of an avoidable transfer."
In re Lambert Oil Co., 347 B.R. 508, 522, n. 6 (W.D. Va.
2006)(citing 4 Collier on Bankruptcy ¶ 502.05[2][a]
(15th ed. rev. 2003)). Thus, disallowance under section
502(d) does not require that the transfer have been pre-
viously avoided. See also In re Red Dot Scenic, Inc.,
313 B.R. 181, 185 (Bankr. S.D.N.Y. 2004)("The plain lan-
guage of section 502(d) does not condition disallowance
on the transferee's failure to satisfy a judgment; in-
stead, it states that 'the court shall disallow any
claim of any entity from which property is recover-
able . . .'" (emphasis in original)).

23. At this time, the Debtors have not com-
pleted their analysis of Pre-petition Transfers or com-
menced any avoidance actions. Indeed, the Debtors are

still well within the time limits set by Bankruptcy Code
section 546(a) to do so.  Notwithstanding the foregoing,
because the facts suggest that TomTom may have received
one or more avoidable transfers, the Pre-petition Claim,
including the Merchandise Claim, should be held in abey-
ance pending resolution of any avoidance actions against
TomTom.

      24.  As a result, it is premature to allow
TomTom to setoff or recoup against any portion of the
Pre-petition Claim.  Doing so would forfeit the Debtors'
rights under section 502(d) and abdicate the policies
underlying the provision.

## III. TOMTOM CANNOT SETOFF POSTPETITION SELL-THROUGH CREDITS AGAINST THE MERCHANDISE CLAIM.

      25.  TomTom argues that it is entitled to set-
off the Merchandise Claim arising under the Letter
Agreement against the Sell-through Credits accrued pur-
suant to the Promotion.  However, because the Sell-
through Credits arose post-petition, they can not be
used to offset the Merchandise Claim, which arose pre-
petition.

26.   In order for a creditor to have a right of setoff under Bankruptcy Code section 553, "it must meet four conditions: 1) the creditor must hold a pre-petition claim against the debtor; 2) the creditor must owe a debt to the debtor that arose pre-petition; 3) the obligations are mutual; 4) the obligations are valid and enforceable." Tavenner v. United States (In re Vance), 298 B.R. 262, 267 (Bankr. E.D. Va. 2003).   The burden is on the creditor to establish each element by a prepon-derance of the evidence.  In re Camellia Food Stores, Inc., 287 B.R. 52, 59 (Bankr. E.D. Va. 2002).  Here, TomTom has failed to satisfy the second of these re-quirements -- that its debt arise prior to the Petition Date.

27.   The Fourth Circuit uses the "conduct test" to determine when a claim arises.  See, e.g., Grady v. A.H. Robins Co., 839 F.2d 198 (4th Cir. 1988). Under the conduct test, claims arise at the time the events giving rise to the claim (or debt) occur.  Id. at 200-203; In re U.S. Airways, Inc., 365 B.R. 624, 629 (Bankr. E.D. Va. 2007).  Here, TomTom seeks to offset

the Sell-through Credits it owes to the Debtors against
the Merchandise Claim.

28.   TomTom asserts (and the Debtors agree)
that the Letter Agreement was entered into prior to the
Petition Date, and all Product was delivered prior to
the Petition Date.  Thus, the conduct giving rise to the
Merchandise Claim occurred pre-petition.

29.   On the other hand, the Debtors and TomTom
disagree over when the Sell-through Credits arise.
Based on the Promotion, it is clear that the event or
conduct giving rise to the Sell-through Credits is the
sale of the Product during the period from November 23,
2008 until January 3, 2009.  This period is entirely
post-petition.  Thus, the conduct giving rise to Tom-
Tom's obligation to the Debtors occurred post-petition.

30.   However, TomTom asserts that the Sell-
through Credits were due "upon the prepetition delivery
of the 125s".  Motion at ¶ 16.  This is meritless, as it
contradicts the clear language of the Promotion.  Promo-
tion at 1 ("TomTom will provide sell-through credit for
all product sold during the 2008 GiveGive promotional
program . . .").  Indeed, the Sell-though Credits did

not exist until the Debtors sold the Product.  <u>See id.</u>
Instead, the Sell-though Credits first arose as (and
only if) the Debtors sold Product during the November 23,
2008 through January 3, 2009 Sell-though Credit period.
<u>See id.</u>  Thus, TomTom is seeking to setoff its pre-
petition Merchandise Claim against a post-petition obli-
gation owed to the Debtors -- the Sell-through Credits.

     31.  However, embodied in section 553 and in
the four requirements for setoff stated above is the
principle that a creditor cannot offset a post-petition
obligation to the estate against a pre-petition claim
owed by the estate.  <u>See</u> <u>In re Camellia Food Stores</u>, 287
B.R. at 60; <u>In re Georgetown Steel Co., LLC</u>, 318 B.R.
313, 326 (Bankr. D.S.C. 2004).  By attempting to offset
the post-petition Sell-through Credits against the pre-
petition Merchandise Claim, TomTom is seeking to do just
that.  TomTom has failed to satisfy its burden of demon-
strating that both the Merchandise Claim and the Sell-
through Credits arose prior to the Petition Date and,
thus, the Debtors respectfully request that this Court
find that TomTom is not entitled to any rights of setoff.

32.   Absent a right of setoff, the automatic
stay of Bankruptcy code section 362 applies to TomTom
without exception.  Thus, the Debtors further request
that this Court deny TomTom's request to modify the stay
to permit setoff.

**IV.   TOMTOM CANNOT RECOUP ITS PRE-PETITION CLAIMS
AGAINST THE SELL-THROUGH CREDITS BECAUSE THE COUN-
TERVAILING OBLIGATIONS AROSE FROM DIFFERENT CON-
TRACTS.**

33.   TomTom further contends that the doctrine
of recoupment entitles it to recoup the Merchandise
Claim under the Letter Agreement against the Sell-
through Credits under the Promotion.  However, TomTom
does not have a valid right of recoupment because its
claim and its debt arise from different contracts.

34.   Numerous courts have held that, in light
of the bankruptcy policy in favor of equal treatment of
creditors as well as the prepetition-postpetition divi-
sion of claims embodied in the Bankruptcy Code, the doc-
trine of recoupment is a limited one and should be nar-
rowly construed.  See, e.g., In re Camellia Food Stores,
287 B.R. at 61 (citing Ashland Petroleum Co. v. Appel
(In re B&L Oil Company), 782 F.2d 155, 158 (10th Cir.

1986)); <u>Westinghouse Credit Corp. v. D'Urso</u>, 278 F.3d 138, 147 (2d Cir. 2002); <u>In re Anes</u>, 195 F.3d 177, 182 (3d Cir. 1999).

35.   The Fourth Circuit has defined recoupment as "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of *the very contract* giving rise to the plaintiff's claim." <u>First Nat'l Bank of Louisville v. Master Auto Serv. Corp.</u>, 693 F.2d 308, 310 n. 1 (4th Cir. 1982)(emphasis added).   Courts in this Circuit have thus found that there are two requirements for the doctrine of recoupment to apply: first, the source of the creditor's claims must be a contract; and second, the debtor's and creditor's claims must arise out of the same contract. <u>In re Vance</u>, 298 B.R. at 267; <u>Thompson v. Board of Trustees of the Fairfax County Police Officers Retirement System (In re Thompson)</u>, 182 B.R. 140, 147 (Bankr. E.D. Va. 1995).

36.   Here, TomTom's debt -- the Sell-through Credits -- arises out of Circuit City's participation in the Promotion.   On the other hand, TomTom's claim - the

Merchandise Claim -- arises out of the Letter Agreement.
See In re Camellia Food Stores, 287 B.R. at 60-61 (deny-
ing recoupment because renewal of insurance policy con-
stitutes a new contract such that single contract re-
quirement was not met).

37.   Although the Letter Agreement references
the Promotion, the Letter Agreement notes that the Pro-
motion is "separately documented."  The mere reference
of one agreement by another agreement is not sufficient
to establish the "single contract" standard.  Cf. In re
Georgetown Steel, 318 B.R. at 332 (denying recoupment
despite fact that prior and renewal insurance policies
contained cross-default provisions referencing each
other).  Thus, the Promotion and the Letters Agreement
are separate contracts.

38.   Accordingly, this Court should deny Tom-
Tom's request for recoupment.

**V.   THE BALANCE OF THE EQUITIES FAVORS THE DEBTORS AND
DISFAVORS GRANTING EITHER SETOFF OR RECOUPMENT.**

39.   Assuming, arguendo, this Court finds that
either setoff or recoupment are applicable, this Court

should nonetheless deny TomTom's requests because the equities weigh against granting the requested relief.

40.   Setoff and recoupment are both equitable remedies.   University Medical Ctr. v. Sullivan (In re University Medical Ctr.), 973 F.2d 1065, 1079-80 (3rd Cir. 1992).   As such, both setoff and recoupment are not automatic, but discretionary, and cannot be applied without taking into consideration balancing of equities and hardships in the case.   See Tennessee Valley Author-ity v. Hill, 437 U.S. 153, 193 (1978); Vance, 298 B.R. at 269; St. Francis Physician Network, Inc. v. Rush Pru-dential HMO, Inc. (In re St. Francis Physician Network, Inc.), 213 B.R. 710, 719.   (Bankr. N.D. 111, 1997).   In conducting the balancing test, this Court should con-sider "whether any party would receive a windfall."   Id.; see St. Francis Physician Network, Inc., 213 B.R. at 720 (denying recoupment where it "would have been inequita-ble to other creditors because the estate would have re-ceived less for the debtor's post-petition performance than the fair price of the that performance, with the difference being a windfall to [the recouping credi-tor].").

41.  Here, TomTom would receive a windfall never contemplated by either TomTom or the Debtors.  Under the Promotion and the Letter Agreement, the parties contemplated that a small portion of Sell-through Credits -- credits generated from the November 23, 2008 Promotion commencement date and prior to the December 2, 2008 installment payment date -- would be used to "net" a portion of the second installment payment.  Thereafter, the remaining Sell-through Credits would be available to "net" against future merchandise purchasers.

42.  By the Motion, TomTom seeks to recover a windfall by "netting" -- through setoff and/or recoupment -- the full amount of the Sell-through Credits against TomTom's pre-petition Merchandise Claim.

43.  TomTom attempts to disguise this windfall by asserting that the Debtors are receiving greater benefits than contemplated by either the Letter Agreement or the Promotion.  To support this argument, TomTom asserts that allowing the Debtors to use the Sell-through Credits amounts to forcing TomTom to make a cash payment to the Debtors.

44.   However, the Debtors seek only to pre-serve their rights under the Promotion.  Under the Promotion, Sell-through Credits arose post-petition as a direct result of the Debtors' marketing and sales efforts, which occurred during their busiest sales period and while TomTom received the benefit of the Debtors' merchandise sale.  Moreover, the Debtors do not seek any rights beyond what they bargained for and are entitled to under the Promotion.  Finally, contrary to TomTom's assertion, the Debtors do not seek a cash payment for the value of the Sell-through Credits; rather, they seek to apply the Sell-through Credits against, among other things, post-petition purchases of merchandise from Tom-Tom, as provided by the terms of the Promotion.

45.   Accordingly, the balance of equities favors denying TomTom's requests for setoff and recoupment.

**VI.   THE DEBTORS' RIGHT TO SETOFF IS A VALUABLE ASSET THAT IS PRESERVED UNDER BANKRUPTCY CODE SECTION 558.**

46.   Bankruptcy Code section 558 preserves a debtor's defenses, including setoff, vis-a-vis creditors.  Bankruptcy Code section 558 provides that:

> [t]he estate shall have the benefit of any defense available to the debtor as against any

23

> entity other than the estate, including stat-
> utes of limitation, statutes of frauds, usury,
> and other personal defenses.  A waiver of any
> such defense by the debtor after the commence-
> ment of the case does not bind the estate.

11 U.S.C. § 558.

47.    Courts have held that section 558 pre-serves any right of setoff that Debtors may have under state law.  In re Women First Healthcare, Inc., 345 B.R. 131, 134 (Bankr. D. Del. 2006); In re ABC-NACO, Inc., 294 B.R. 832, 838 (Bankr. N.D. Ill. 2003); In re PSA, Inc., 277 B.R. 51, 53 (Bankr. D. Del. 2002).  Virginia law recognizes a right of setoff.  See, e.g., In re Ward, 210 B.R. 531, 536 (Bankr. E.D. Va. 1997)(citing National Bk. and Trust Co. at Charlottesville v. Castle, 196 Va. 686, 695, (1955)).

48.    Moreover, the large majority of courts addressing the issue have determined that the Debtors' setoff rights under Bankruptcy Code section 558 are not limited to setting off pre-petition claims, as is the case with a creditor's -- like TomTom's -- right to set-off under Bankruptcy Code section 553.  See, e.g., In re ABC-NACO, Inc., 294 B.R. 832, 838 (Bankr. N.D. Ill. 2003) ("almost all of the reported decisions addressing the

24

issue have held (1) that, generally, claims asserted by
a debtor under the Bankruptcy Code are not subject to
the limitations applicable to a creditor's right to a
bankruptcy setoff or recoupment, and (2) that, specifi-
cally, a debtor's counterclaim against a creditor does
not require mutuality in the sense of both claims aris-
ing pre-petition"). Thus, the Debtors may setoff their
pre- and/or post-petition claims against a creditor's
pre- and/or post-petition claims. Id.; In re Women First
Healthcare, Inc., 345 B.R. at 134 ("Courts have con-
cluded that [under section 558] a debtor may set off
pre-petition claims against post-petition obligations it
owes."); In re PSA, Inc., 277 B.R. at 53 ("Courts have
held that § 558 preserves any right of setoff the debt-
ors may have under state law, including the right to
setoff debtor's pre-petition claims against administra-
tive expense claims.").

        49.  Here, TomTom alleges that the Debtors
have accrued Sell-through Credits totaling approximately
$5.4 million.  Assuming TomTom's calculations are cor-
rect, the Debtors are owed approximately $5.4 million in

Sell-through Credits that they would be permitted to setoff against post-petition merchandise purchases.

50.    Thus, allowing TomTom to impermissibly setoff and/or recoup would deprive the Debtors' estates of valuable setoff rights to the detriment of all creditors.

## VII. TOMTOM HAS NOT SATISFIED EITHER STANDARD FOR RELIEF FROM THE AUTOMATIC STAY.

51.    Assuming, _arguendo_, Bankruptcy Code section 362 is an appropriate vehicle through which TomTom can exercise rights related to either the Letter Agreement or Promotion, TomTom has failed to establish that relief from the automatic stay is warranted under either Bankruptcy Codes section 362(d)(1) or (d)(2).

### A.    TomTom Has Not Established Cause To Modify The Automatic Stay Under 362(d)(1).

52.    Bankruptcy Code section 362(a)(7) prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. § 362(a)(7).

53.    TomTom seeks relief from the automatic stay of section 362(a)(7) for cause.  However, TomTom

has failed to meet its burden of showing that cause ex-
ists to modify the stay.

54.   A party may be granted relief from the
stay under Bankruptcy Code section 362(d)(1) where that
party demonstrates that "cause" exists.  "The party re-
questing relief from the automatic stay under § 362(d)(1)
has the burden of proving that cause exists for relief
from the automatic stay."  In re Trius Corp., 47 B.R. 3,
5 (Bankr. D.S.C. 1984); see In re Mazzeo, 167 F.3d 139,
142 (2d Cir. 1999); In re Milstein, 304 B.R. 208, 212
(Bankr. E.D. Pa. 2004).

55.   As described above, TomTom has not shown
that is has a valid legal or equitable right of setoff
or recoupment.  In the absence of such a right, no cause
exists for this Court to modify the automatic stay.

56.   Accordingly, the Debtors respectfully re-
quest that the Court deny TomTom's request to modify the
automatic stay under section 362(d)(1) to permit setoff
or recoupment.

   **B.   TomTom Has Not Demonstrated That The Debtors
         Lack Equity To Justify Modifying The Automatic
         Stay Under 362(d)(2).**

   57.   TomTom further cites Bankruptcy Code sec-

tion 362(d)(2) as a basis for its motion to modify the

stay.

   58.   Bankruptcy Code section 362(d)(2) pro-

vides that a court may modify the automatic stay:

      with respect to a stay of an act against prop-
      erty under subsection (a) of this section, if—

      (A)   the debtor does not have an equity in
      such property; and

      (B)   such property is not necessary to an ef-
      fective reorganization . . . .

11 U.S.C. § 362(d)(2).

   59.   Because Bankruptcy Code section 362(d)(2)

is drafted in the conjunctive, both conditions must be

satisfied to grant relief from the stay.  See Chrysler

LLC v. Plastech Engineered Prods. (In re Plastech Engi-

neered Prods.), 382 B.R. 90, 109 (Bankr. E.D. Mich.

2008)(stating that relief under section 362(d) "requires

a showing of both elements"); In re Property Technolo-

gies, Ltd., 263 B.R. 750, 754 (Bankr. E.D. Va.

2001)(denying relief under section 362(d)(2) where

28

movant had not shown that debtor lacked equity, without reference to necessity of property to effective reorganization).

60.    Pursuant to Bankruptcy Code section 362(g), TomTom has the burden of proof with respect to the Debtors' lack of equity.  Because TomTom has failed to provide any evidence that the Debtors have no equity in the Sell-though Credits (aside from its erroneous assertion of setoff and recoupment rights), the Motion should be denied.

61.    Accordingly, the Debtors respectfully request that the Court deny TomTom's request to modify the automatic stay under section 362(d)(2) to permit setoff or recoupment.

## RESERVATION OF RIGHTS

62.    As set forth above, the Debtors contend that TomTom does not have a valid right of setoff or recoupment.  However, even if this Court finds to the contrary, TomTom has not provided sufficient evidence of the amount of the countervailing claims to be offset or recouped.  Because TomTom bears the burden and TomTom has failed to meet that burden, see, e.g., In re Dornier

29

<u>Aviation (North America), Inc.</u>, 2005 WL 4781236 at *15 (Bankr. E.D. Va. 2005), TomTom cannot practically exercise its right of setoff or recoupment.

63.   Thus, should this Court determine that TomTom has a valid right of setoff or recoupment, the Debtors request that, at the hearing on January 16, 2009, the Court set an appropriate discovery schedule to address the factual disputes discussed herein.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request

that the Court enter an order denying the relief re-

quested in the Motion.

Dated: January 12, 2008
        Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                    – and –

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Chris L. Dickerson, Esq.
                              333 West Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                    – and –

                              MCGUIREWOODS LLP


                              /s/ Douglas M. Foley        .
                              Dion W. Hayes (VSB No. 34304)
                              Douglas M. Foley (VSB No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and Debtors
                              in Possession

727665-Chicago Server 2A - MSW