UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CIRCUIT CITY STORES, INC., et al., ) | Case No. **08-35653** |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | |
| PLUMCHOICE, INC., ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| CIRCUIT CITY STORES, INC., ) | |
| ) | |
| Respondent. ) | |

**MOTION OF PLUMCHOICE, INC. FOR RELIEF
FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) TO
PERMIT TERMINATION OF DISPATCH AGREEMENT AND REQUEST FOR
<u>RELATED RELIEF INCLUDING APPROVAL OF SHORTENED NOTICE PERIOD</u>**

PlumChoice, Inc. ("<u>PlumChoice</u>"), by its counsel, Choate, Hall & Stewart LLP and Gregory Kaplan, PLC, hereby moves for the entry of an order granting PlumChoice relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1), Rule 4001(a) of the Federal Rules of

---

Troy Savenko (Va. Bar No. 44516)
Leslie A. Skiba (Va. Bar No. 48783)
GREGORY KAPLAN, PLC
7 East Second Street (23224-4253)
Post Office Box 2470
Richmond, VA   23218-2470
Phone: (804) 423-7921
Fax: (804) 230-0024

- and –

CHOATE, HALL & STEWART LLP
John F. Ventola, Esq.
Sean M. Monahan, Esq.
Two International Place
Boston, Massachusetts 02110
Tel:  (617) 248-5000
Fax:  (617) 248-4000

*Counsel to PlumChoice, Inc.*

Bankruptcy Procedure and Local Bankruptcy Rule 4001(a)-1, to permit PlumChoice to terminate, in accordance with the express terms thereof, that certain Dispatch Agreement (as defined below) and to otherwise discontinue the provision of the Services (as defined below) thereunder to Circuit City Stores, Inc. ("Circuit City") and its affiliated debtors (collectively, the "Debtors").

In addition to the foregoing relief, PlumChoice respectfully requests that the Court permit this Motion to serve as written notice, effective as of the date hereof, to Circuit City of PlumChoice's intent to terminate the Dispatch Agreement "for convenience" pursuant to Section 10.6 thereof, which will allow PlumChoice to terminate the Dispatch Agreement ninety (90) days from the date hereof and permit Circuit City ample opportunity to find another telephonic dispatch support and scheduling service provider.  In the alternative, PlumChoice asks that the Court consolidate the preliminary hearing on this Motion with the final hearing pursuant to Section 362(e) of the Bankruptcy Code because, in order to exercise its right to allow the Dispatch Agreement to expire according to its terms on May 31, 2009, PlumChoice must deliver sufficient notice thereof to Circuit City by March 2, 2009.

## PRELIMINARY STATEMENT

PlumChoice has filed this Motion out of an abundance of caution so that it may exercise its express rights under the Dispatch Agreement to either terminate such agreement or let such agreement expire according to its terms.  As set forth in greater detail below, the services provided by PlumChoice under the Dispatch Agreement are ancillary to its primary business, which is providing online, remote diagnostic services to individuals and small businesses. Indeed, PlumChoice made a strategic business decision to enter into the Dispatch Agreement so

that Circuit City would engage PlumChoice as its primary online, remote diagnostic services provider. Circuit City, however, no longer uses PlumChoice's online, remote diagnostic services. As a result, PlumChoice wishes to terminate the Dispatch Agreement pursuant to the provisions set forth therein, which expressly allow for termination "for convenience" of either party, particularly given the low margins, high costs and other administrative burdens associated therewith, so that it may focus on its primary business operations.

Moreover, PlumChoice submits that cause exists to lift the automatic stay in this instance. There is a considerable risk that, without relief from the automatic stay enabling PlumChoice to terminate the Dispatch Agreement, the Debtors, who have refused to provide PlumChoice with adequate protection, will be able to continue to reap the benefits of the Dispatch Agreement without making any payments thereunder. Meanwhile, the Debtors will suffer little if any prejudice in the event this Court lifts the automatic stay to allow PlumChoice to terminate the Dispatch Agreement as Circuit City has indicated that it intends to seek services of the type provided under the Dispatch Agreement from another provider. As a result, it is clear that Circuit City's rights under the Dispatch Agreement are not necessary for an effective reorganization of the Debtors.

In further support of this motion, PlumChoice respectfully states as follows:

## **BACKGROUND**

1. PlumChoice provides online computer support to businesses and individuals. For businesses like Circuit City, PlumChoice offers its array of online training, trouble-shooting and technical support services to such businesses' individual and small business customers.

2. On or about November 8, 2005, Circuit City and PlumChoice entered into that certain Customer Technical Support Services Evaluation Agreement (as amended by that certain First Amendment to Customer Technical Support Services Evaluation Agreement dated as of February 28, 2006, and that certain Second Amendment to Customer Technical Support Services Evaluation Agreement dated as of June 1, 2006, the "Test Agreement"), pursuant to which Circuit City engaged PlumChoice to provide online, remote diagnostic services, on a test basis, to customers of Circuit City's "Firedog" technical support service.

3. On or about May 31, 2006, PlumChoice and Circuit City entered into that certain Services Agreement (the "Dispatch Agreement"), pursuant to which PlumChoice agreed to perform telephonic dispatch support and scheduling services (the "Services") to Circuit City's home theater installation, home delivery and personal computer service business units.[1] The Dispatch Agreement allows customers of Circuit City's "Firedog" technical support service to schedule, over the telephone with a PlumChoice representative, on-site installation or technical support assistance from a third-party service provider.

4. Despite the low margins associated with the Dispatch Agreement and the fact that the services provided thereunder are ancillary to the primary business of PlumChoice, the company agreed to enter into the Dispatch Agreement in order to act as a "full-service" provider to Circuit City. Indeed, after entering into the Dispatch Agreement, on February 15, 2007, PlumChoice and Circuit City cemented their relationship by entering into that certain Remote Services Agreement dated as of February 15, 2007 (the "Remote Services Agreement"), pursuant

---

[1] The Dispatch Agreement, by its terms, is subject to a confidentiality provision but may be disclosed with Circuit City's prior written approval. PlumChoice will produce a copy of the Dispatch Agreement upon request with the written permission of the Debtors.

4404397                                                           4

to which Circuit City engaged PlumChoice to provide online, remote diagnostic services to Circuit City customers throughout the United States. The Remote Services Agreement replaced the Test Agreement and made PlumChoice the primary online, remote diagnostic services provider of Circuit City's customers.

5. The Dispatch Agreement requires PlumChoice to provide the Services between 8:00 a.m. and 1:00 a.m. (Eastern Standard Time) on Monday through Saturday of each week and between 8:00 a.m. and 10:00 p.m. (Eastern Standard Time) every Sunday. The Dispatch Agreement also requires PlumChoice to hire and train employees or independent contractors to perform the Services. Such employees must be primarily dedicated to providing the Services rather than providing other services to other customers of PlumChoice. Prior to the Petition Date, on or about November 1, 2008, PlumChoice had approximately 175 employees dedicated solely to providing Services under the Dispatch Agreement. Since that time, Circuit City has drastically reduced the number of PlumChoice personnel designated to perform dispatch services and has requested staffing levels to be at approximately 35 individuals as of February 5, 2009, as Circuit City intends to transfer such services to a company other than PlumChoice.

6. In addition to hiring and training employees to perform the Services, the Dispatch Agreement places a number of other burdens on PlumChoice. By way of example, and without limitation, the Dispatch Agreement requires PlumChoice, at its sole cost and expense, to comply with Circuit City's technical requirements. Further, the agreement requires PlumChoice's management to conduct formal, in-person quarterly reviews with Circuit City to discuss and adjust metrics and performance and to conduct routine weekly meetings via telephone to discuss similar issues. The Dispatch Agreement also requires PlumChoice to maintain certain levels of

insurance and submit to Circuit City, not later than fifty (50) days after the end of each fiscal year, a complete set of the company's financial statements.

7. PlumChoice provides the Services in exchange for monthly payments in arrears pursuant to the terms of a payment schedule agreed to by PlumChoice and Circuit City. PlumChoice issues invoices at the beginning of each month for the Services expected to be delivered during such month along with any reconciliation to billed versus actual services for the prior month. Under the terms of the Dispatch Agreement, Circuit City pays (and has paid since the Petition Date (as defined below)) such invoices within forty-five (45) days of receipt. At present, Circuit City owes PlumChoice approximately $229,000 for Services provided prior to the Petition Date (as defined below) and approximately $992,000 for Services provided on and after the Petition Date.[2] PlumChoice has requested that the Debtors provide collateral to secure post-petition invoices, or pay such invoices in advance, but the Debtors have refused.

8. Section 10.1 of the Dispatch Agreement provides that the initial term of the agreement shall be for a period of one (1) year and, at the completion of the initial term (i.e. May 31, 2007), the agreement will automatically renew for successive terms of two (2) years "unless either Party notifies the other party of its intent to allow this Agreement to expire at least ninety (90) days prior to the expiration of the period then in effect." As a result, the current term under the Dispatch Agreement will expire on May 31, 2009, if either party delivers timely and sufficient notice thereof.

9. In addition, Section 10.6 of the Dispatch Agreement provides that "PlumChoice may terminate this Agreement for its convenience upon its delivery of ninety (90) days written

---

[2] These amounts are estimates only and do not include any other amounts owed by Circuit City to PlumChoice.

notice to Circuit City" and that "Circuit City may terminate this Agreement for its convenience upon its delivery of sixty (60) days written notice to PlumChoice." In the event either party terminates the Dispatch Agreement, Section 10.7 thereof provides that "PlumChoice shall immediately return any and all Circuit City Materials, and any copies thereof in whatever form held by PlumChoice and remove the Scheduling System software from all of its computers …."

10. The Debtors commenced these cases on November 10, 2008 (the "Petition Date"), by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate their businesses and manage their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtors have continued to utilize the Services during the post-petition period. Meanwhile, the Remote Services Agreement expired according to its terms on December 31, 2008, and Circuit City no longer utilizes the services provided by PlumChoice thereunder.

## ARGUMENT
### Standards For Modification of the Automatic Stay

11. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying, or conditioning such stay … for cause …." 11 U.S.C. § 362(d)(1). The United States Court of Appeals for the Fourth Circuit has stated that "[b]ecause the Bankruptcy Code provides no definition of what constitutes 'cause' the courts must determine when discretionary relief [from the automatic stay] is appropriate on a case-by-case basis." Claughton v. Mixson (In re Mixson), 33 F.3d 4, 5 (4th Cir. 1994) (citing Robbins v. Robbins (In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992)); see In re Robinson, 169 B.R. 356, 359 (E.D. Va. 1994); In re Ewald, 298 B.R. 76, 80

4404397

7

(Bankr. E.D. Va. 2002). The decision of whether to lift the stay is within the sole discretion of the bankruptcy judge. See In re Robbins, 964 at 345; In re Adelphia Commc'ns Corp. v. Associated Elec. & Gas Ins. Servs., Ltd., 285 B.R. 580, 593 (Bankr. S.D.N.Y. 2002).

12. In making the determination of whether to grant relief from the automatic stay, the court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." In re Ewald, 298 B.R. at 80 (citing In re Robbins, 964 at 345). Local Bankruptcy Rule 4001(a)-1(D) identifies several factors that may serve as a basis for relief from the automatic stay, including a lack of adequate protection or that the debtor's interest in the property is not necessary for an effective reorganization. See Local Bankruptcy Rule 4001(a)-1(D)(5).

13. Section 362(g) of the Bankruptcy Code allocates the burden of proof for motions seeking relief from the automatic stay. It provides, in pertinent part, that the "party requesting such relief has the burden of proof on the issue of the debtor's equity in the property" and "the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g). Therefore, when equity is not an issue (as in this instance), the party opposing relief from the automatic stay has the burden of proof on all issues. Therefore, to the extent they oppose this Motion, the Debtors will have the burden of proof on all issues.

14. In addition, a debtor in bankruptcy has no greater rights or powers under a contract than the debtor would have outside of bankruptcy. See Valley Forge Plaza Assocs. v. Schwartz, 114 B.R. 60, 62 (E.D. Pa. 1990). As a result, the ability of a party to terminate a contract on its terms survives bankruptcy. See id. Therefore, the termination of a contract by its terms generally will not violate the automatic stay provisions of Section 362(a) of the

Bankruptcy Code.  See id. (holding that post-petition termination of prepetition contract, as allowed under the terms of the contract, did not violate the automatic stay); but see In re Nat'l Hydro-Vac Indus. Servs., L.L.C., 262 B.R. 781 (Bankr. E.D. Ark. 2001) (holding that clause in agreement, authorizing bank to terminate agreement at will, did not enable bank to terminate agreement based solely on debtor's Chapter 11 filing); In re B. Siegel Co., 51 B.R. 159 (Bankr. E.D. Mich. 1985) (holding that insurer was not free to cancel debtor's insurance policy, terminable-at-will, because of debtor's bankruptcy).

15.    As the ability of a party to terminate a contract survives bankruptcy, PlumChoice has filed this Motion out of an abundance of caution so that it may exercise its express rights to either terminate the Dispatch Agreement or let such agreement expire according to its terms.  See Valley Forge Plaza Assocs., 114 B.R. at 62 (holding that post-petition termination of prepetition contract, as allowed under the terms of the contract, did not violate the automatic stay).  As noted above, PlumChoice has the unequivocal right under Section 10.6 of the Dispatch Agreement to terminate the agreement "for its convenience" upon its delivery of prior written notice to Circuit City.  In addition, under Section 10.1 of the Dispatch Agreement PlumChoice may terminate the agreement by delivering notice to Circuit City that it intends to allow the agreement to expire at the end of the current term.  In order to comply with the terms of the agreement and allow the agreement to expire at the end of the current term (i.e. May 31, 2009), PlumChoice would need to deliver sufficient notice to Circuit City by March 2, 2009.[3]

---

[3] PlumChoice acknowledges its obligation under Section 10.7 of the Dispatch Agreement to "return any and all Circuit City Materials, and any copies thereof in whatever form held by PlumChoice and remove the Scheduling System software from all of its computers …" and submits that it will perform this obligation in good faith and in accordance with the terms of the Dispatch Agreement in the event this Motion is approved.

16.     PlumChoice clearly has a sufficient business reason to terminate the Dispatch Agreement.  As set forth in greater detail above, the services provided by PlumChoice under the Dispatch Agreement are ancillary to its primary business, which is providing online, remote diagnostic services to individuals and small businesses.  Indeed, PlumChoice made a strategic business decision to enter into the Dispatch Agreement so that Circuit City would engage PlumChoice as its primary online, remote diagnostic services provider.  Circuit City, however, no longer uses PlumChoice's online, remote diagnostic services as the Remote Services Agreement has expired.  As a result, PlumChoice wishes to terminate the Dispatch Agreement, particularly given the low margins, high costs and other administrative burdens associated therewith, so that it may focus on its primary business operations.

17.     Moreover, cause exists to lift the automatic stay in this instance as the potential hardship that will be incurred by PlumChoice if the automatic stay is not lifted to allow it to terminate the Dispatch Agreement outweighs any potential prejudice to the Debtors.  Without relief from the stay, PlumChoice will be forced to continue to perform under a contract without any guaranty that it will receive any payment thereunder.  At present, PlumChoice receives monthly payments from Circuit City in arrears.  These amounts are considerable, particularly for a company the size of PlumChoice.  The invoice delivered by PlumChoice to Circuit City for the month of December, for example, was for approximately 572,000.  PlumChoice has requested that the Debtors provide collateral to secure any post-petition invoices, or pay such invoices in advance, but the Debtors have refused to provide any form of adequate protection.  See Local Bankruptcy Rule 4001(a)-1(D)(5) (lack of adequate protection cause for relief from automatic stay).  As a result, there is considerable risk that, without relief from the automatic stay enabling

PlumChoice to terminate the Dispatch Agreement, the Debtors will be able to continue to reap the benefits of the Dispatch Agreement without bearing any concurrent responsibility therefor.

18. In addition, so long as the Dispatch Agreement remains in effect PlumChoice is required to provide a certain number of employees (as determined by Circuit City) to perform the Services under the Dispatch Agreement. Under the terms of the Dispatch Agreement, PlumChoice may not assign such employees to perform services on behalf of its other clients. Moreover, PlumChoice must continue to bear the other considerable costs associated with the Dispatch Agreement, including complying with Circuit City's technical requirements, meeting with Circuit City's management on a quarterly basis, conducting weekly telephonic meetings with Circuit City, maintaining certain levels of insurance, and providing Circuit City with certain financial information.

19. Meanwhile, the Debtors will suffer little if any prejudice in the event the automatic stay is lifted to allow PlumChoice to terminate the Dispatch Agreement. Circuit City has indicated, as evidenced by its instruction to PlumChoice to drastically reduce the number of personnel dedicated to providing the Services, that it intends to transition its telephonic dispatch support and scheduling service needs to a company other than PlumChoice. As a result, it is clear that Circuit City's rights under the Dispatch Agreement are not necessary for an effective reorganization of the Debtors. See Local Bankruptcy Rule 4001(a)-1(D)(5) (property not necessary for an effective reorganization cause for relief from automatic stay).

### RESERVATION OF RIGHTS

20.     PlumChoice expressly reserves any and all of its rights under the Dispatch Agreement, all other agreements between the parties and applicable law.  Nothing contained herein shall operate as a waiver of any of PlumChoice's claims, rights and remedies.

### NO PRIOR REQUEST

21.     No previous application for the relief requested herein has been made by PlumChoice to this or any other Court.

### WAIVER OF MEMORANDUM OF LAW

22.     PlumChoice respectfully requests that the Court treat this Motion as a written memorandum of points and authorities and waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as required by Local Bankruptcy Rule 9013-1(G).  PlumChoice reserves the right to file a brief in reply to any objection to this Motion.

### REQUEST FOR SHORTENED NOTICE

23.     PlumChoice is requesting that the Preliminary Hearing and Final Hearing on this matter be consolidated and heard on the scheduled Omnibus Hearing Date of January 29, 2009 at 10:00 a.m.

24.     Pursuant to Local Bankruptcy Rule 4001(a)-1, a response to this Motion is due within fifteen (15) days from the date of service.  Pursuant to paragraph 2(b) of the "Notice, Case Management, and Administrative Procedures" approved in this case, "[a]ny motion or contested matter filed and properly served in accordance with applicable rules, and as to which the

applicable response time will elapse at least two business days before a fixed Omnibus Hearing Date, may be set for hearing on such a fixed date."

25.  Without conceding that such a request is even necessary, PlumChoice requests that this Court approve the term of notice provided.  Pursuant to Bankruptcy Rule 9006, the Court has the authority to shorten the notice period. In this regard, because (i) time is of the essence with regard to the relief requested herein, and (ii) the next Omnibus Hearing Date in this case will not occur until more than two weeks after the proposed hearing date, PlumChoice respectfully submits that just cause exists to reduce the notice and response period for this Motion from fifteen (15) days to fourteen (14) days.

## **NOTICE**

26.  Notice of this Motion will be given to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, (iii) Counsel for the Official Committee of Unsecured Creditors, and (iv) all parties that have requested notice of papers with the Court's CM/ECF Noticing System pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. PlumChoice submits that no other or further notice of this Motion is required.

WHEREFORE, PlumChoice respectfully requests that this Court enter an order:

(A)  Permitting this Motion to serve as written notice, effective as of the date hereof, to Circuit City of PlumChoice's intent to terminate the Dispatch Agreement "for convenience" or, in the alternative, combining the preliminary hearing on this Motion with the final hearing pursuant to Section 362(e) of the Bankruptcy Code;

(B) Granting PlumChoice relief from the automatic stay for cause pursuant to Section 362(d)(1) to allow PlumChoice to terminate the Dispatch Agreement in accordance with the terms thereof and to otherwise discontinue the provision of the Services to the Debtors;

(C) Approving the shortened notice period requested herein; and

(D) Granting PlumChoice such other and further relief as the Court deems just and proper.

Dated: January 13, 2009                                  Respectfully submitted,

/s/ Troy Savenko
Troy Savenko (Va. Bar No. 44516)
Leslie A. Skiba (Va. Bar No. 48783)
GREGORY KAPLAN, PLC
7 East Second Street (23224-4253)
Post Office Box 2470
Richmond, Virginia 23218-2470
Phone: (804) 423-7921
Fax: (804) 230-0024

 - and –

CHOATE, HALL & STEWART LLP
John F. Ventola, Esq.
Sean M. Monahan, Esq.
Two International Place
Boston, Massachusetts 02110
Tel:  (617) 248-5000
Fax:  (617) 248-4000

*Counsel to PlumChoice, Inc.*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 13th day of January, 2009, I caused a copy of the foregoing to be served by electronic mail pursuant to the Court's CM/ECF Noticing System or U.S. Mail, postage pre-paid (if necessary) to: (i) Counsel to the Debtors, (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, (iii) Counsel for the Official Committee of Unsecured Creditors, and (iv) all parties that have requested notice of papers with the Court's CM/ECF Noticing System pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

                                                       /s/ Troy Savenko

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case No. **08-35653** |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| PLUMCHOICE, INC., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC., | ) | |
| | ) | |
| Respondent. | ) | |

**NOTICE OF MOTION AND HEARING PURSUANT
TO LOCAL BANKRUPTCY RULE 4001(A)-1(C)**

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).**

If you do not wish the Court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then on or before two (2) business days before the hearing referenced below that has been scheduled on this Motion, you or your attorney must file a written response explaining your position with the Court and serve a copy on the movant. If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

You must also attend the hearing to consider the relief sought in addition to filing a written objection. If you fail to file a timely written response or attend the hearing, the Court may deem any opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing. The hearing is scheduled for **January, 29 2009, at 10:00 a.m.**, at the United States Bankruptcy Court, 701 East Broad Street, Courtroom 5000, Richmond, Virginia 23219.