**AIRCRAFT PURCHASE & SALE AGREEMENT**

This Aircraft Purchase Agreement is made between: TACALA, LLC, **"Purchaser",** a limited liability company with its address is 4268 Cahaba Heights Court, Birmingham, AL 35243 (telephone: 205-443-9600, fax 205-443-9796); and Circuit City Stores, Inc. **"Seller",** a Delaware corporation with its address is 9950 Mayland Drive, Richmond, VA 23233 (telephone: 804-486-4014, fax 804-486-4877; and Insured Aircraft Title Services **"Escrow Agent"**, an Oklahoma corporation with an address of 4848 S.W. 36th Street, Oklahoma City, OK 73179 (telephone 800-654-4882, fax 405-681-9299 fax).

Whereas the Seller agrees to sell and Purchaser agrees to purchase that certain 1996 Hawker 800XP, serial number 258293 registered as N150NC, with two Honeywell TFE 731 engines, serial numbers P107136C and P107238C, together with all of the books, logs, tags, flight and operation manuals, checklists, wiring diagrams, maintenance manuals and any other records, paperwork, warranty documentation and written data related thereto, shall hereinafter collectively be referred to as the **"Aircraft"**.

Now therefore, in consideration of the terms and conditions herein contained, the parties agree as follows:

1. <u>Purchase Price</u>.  $4,750,000 (Four Million Seven Hundred Fifty Thousand US Dollars) paid as provided herein.

2. <u>Terms of Payment</u>.  Prior to the execution of this contract, Purchaser has placed a refundable deposit in the amount of $100,000.00 (One Hundred Thousand US Dollars) (the **"Deposit")** into the Escrow Agent's account.  Upon Purchaser's acceptance of delivery of the Aircraft, as evidenced by Purchaser's execution of the attached Aircraft Delivery in the form shown on Attachment B, Purchaser shall pay the balance of the purchase price by wire transfer of immediately available funds in the amount of $4,650,000 (Four Million Six Hundred Fifty Thousand US Dollars), to the Escrow Agent, on receipt of which the Escrow Agent shall simultaneously release the title documents to Purchaser and the Purchase Price as directed by Seller.

3. <u>Pre-purchase Evaluation</u>.

    A.) Seller has made the Aircraft available to Purchaser at Birmingham, Alabama at Purchaser's expense, for a visual inspection of the Aircraft and its records.

    B.) Purchaser shall have the right to conduct, at Purchaser's expense, a pre-purchase inspection at the Hawker Beechcraft service center located in Little Rock, Arkansas (the **"Inspection Facility"),** that will consist of a standard Hawker Beechcraft pre-purchase inspection, the scope of which is attached hereto as Exhibit D, including flight test (the **"Inspection")**.  Seller shall be responsible for movement of the Aircraft to the Inspection Facility.  Purchaser agrees to pay the cost of the pre-purchase inspection and Seller agrees to repair all discrepancies at its expense deemed as "unairworthy" in accordance with the Hawker 800XP Maintenance Manual along with all items required to be corrected in order to make the Aircraft conform to the condition described herein (the "Discrepancies") .  Purchaser's costs for these inspections must be paid in advance of initiating the Inspection.

    C.) Upon completion of the Inspection, by the Inspection Facility, , a detailed list of Discrepancies revealed during the Inspection, as required in paragraph B. above will be

Seller _____                                                                                                    Purchaser _____

provided to the parties listing Discrepancies (the **"List"**). These Discrepancies shall be repaired and completed by the Inspection Facility. The Inspection Facility will be sole determiner of what shall be deemed repair and completion of the Discrepancies on the List.

    D.) Within five (5) business days following receipt of the List, Purchaser will deliver to Seller and Escrow Agent its acceptance or rejection of the Aircraft, in writing, by executing "Attachment A" **("Aircraft Acceptance/Rejection")** indicating in its sole discretion Purchaser's: rejection of the Aircraft; acceptance of the Aircraft as is; or acceptance of the Aircraft subject to Seller's repair of the Discrepancies appearing on the List, as limited below. Failure by Purchaser to accept the Aircraft within five (5) business days following its receipt of the List shall constitute its rejection of the Aircraft. Upon Seller's receipt of the Aircraft Acceptance, Seller shall authorize the Inspection Facility to commence the corrective work on the Discrepancies for Seller's account up to a maximum of $150,000 and the Deposit shall become nonrefundable to Purchaser, subject to the terms and conditions of this contract, to be applied to the Purchase Price at Closing. Seller reserves the right, but is not required to, to withdraw the Aircraft and terminate this Agreement should the discrepancies identified exceed $150,000. In the event that Seller terminates this contract as provided in the preceding sentence, the Deposit shall be immediately returned to Purchaser and Seller shall reimburse Purchaser for all documented costs for the visual inspection and the cost of the Inspection, and neither party shall have any obligation to the other with respect to the subject matter of this contract. In the event Seller exercises the right to terminate this contract, then Purchaser may elect to agree to pay such cost to correct discrepancies in excess of $150,000, by notifying Seller of Purchaser's election to pay such excess cost. In the event Purchaser makes such election, this contract shall not be terminated.

    E.) Absent Aircraft Acceptance, this contract shall terminate, and, provided that the Inspection Facility has issued to Seller a statement confirming that Purchaser has paid all costs and expenses of the Inspection, the Escrow Agent shall return the Deposit to Purchaser less the costs of positioning the Aircraft back to Seller's operating base (such rate shall be defined as two (2) times the cost of fuel);, subject to the foregoing. Purchaser agrees that if the Inspection Facility does not issue a statement to Purchaser that the cost and expense of the Inspection have been paid, such costs and expenses shall be paid from the Deposit held by the Escrow Agent.

    F) Should Purchaser reject the Aircraft because the Discrepancies identified on the List, subject to the $150,000 limit set forth in paragraph 3 D above, have not been repaired due to Seller's failure to correct those items, this contract shall terminate and Purchaser shall be relieved of any financial obligation to pay the costs associated with the cost of positioning the Aircraft to the Inspection Facility and its return to the operating base and the Deposit shall be fully refundable to Purchaser.

    G.) Purchaser shall pay the cost of the movement of the Aircraft (two (2) times the cost of fuel) from the Inspection Facility if the Aircraft is rejected after the Aircraft Acceptance form has been executed and provided Seller has complied with its duties set forth herein.

4. <u>Closing</u>.

    After Aircraft Acceptance, and prior to closing, Seller will deliver to the Escrow Agent a fully executed FAA Aircraft Bill of Sale, a warranty bill of sale in the form of Attachment C and Release(s) of Lien(s) and/or all such other documents as may be necessary for Aircraft

Seller \_\_\_\_\_                                                                                                                             Purchaser \_\_\_\_\_

title to pass from Seller to Purchaser free and clear of any notations, claims, clouds, liens and/or encumbrances.  Closing shall take place within five (5) business days following notification from the Inspection Facility to Seller and Purchaser that the Aircraft is ready for delivery as evidenced by a logbook entry returning the Aircraft to service, unless agreed otherwise in writing by both Parties.  Purchaser shall execute the attached Aircraft Delivery in the form shown on Attachment B.  Closing will take place at the New Castle County Airport (ILG), Wilmington, Delaware or other mutually agreeable location to be determined by Purchaser (the "Delivery Location"). The cost of positioning the Aircraft to a Delivery Location other than the Inspection Facility shall be born by the Purchaser (at a rate of two (2) times the cost of fuel, plus the cost of returning the Seller's flight crew to Seller's domicile).  Seller agrees to not be unreasonable in its approval of an alternate Delivery Location, which location will be chosen by Purchaser taking into consideration the taxation effects of the Delivery Location.

The Aircraft when delivered shall be a) current on the manufacturer's recommended maintenance program, with all calendar and hourly inspections current through the projected date of delivery; b) with all systems functioning in accordance with the manufacturer's specifications; c) with all FAA Airworthiness Directives and manufacturer's mandatory service bulletins complies with, with no operational limitations issued against the Aircraft or non-standard repetitive inspection intervals; d) free of damage history or material corrosion; e) enrolled and current on CAMP and the Honeywell MSP program as it relates to the engines and APU. Aircraft shall be transferred with all remaining and applicable manufacturer and vendor warranties transferred to Purchaser to the extent they are transferable at Seller's expense.

Certificates and Taxes.    Seller is responsible for all taxes and duties up to the date of closing.  Purchaser is responsible for all taxes and duties as a result of this sale and thereafter.  Purchaser shall remit to Seller any sales tax that Seller is required to collect under applicable State law or present to Seller a sales tax exemption certificate that is acceptable to Seller, on or before the day of Closing.

Title and Liens.   Seller represents and warrants that it has good title to the Aircraft and that all necessary legal steps have been taken by Seller to authorize and complete transfer of title to Purchaser pursuant to this agreement.  Seller further represents and warrants that the Aircraft shall be free of all liens and encumbrances upon sale and delivery to Purchaser and that the Seller agrees to defend Purchaser's title after closing from and against all claims created by Seller.  This warranty and covenant shall survive closing.  Purchaser shall accept and Seller shall provide the Warranty Bill of Sale as set forth in Attachment C.  Purchaser and Seller will split all closing costs and fees of the Escrow Agent.

5. Acceptance of Condition of Aircraft.  Purchaser agrees to accept the Aircraft in an "As is, Where is" condition. PURCHASER HEREBY ACKNOWLEDGES THAT SELLER MAKES NO WARRANTY OF  MERCHANTABILITY OF THE AIRCRAFT NOR OF ANY EQUIPMENT IN  IT OR OTHERWISE INCLUDED IN THIS SALE, AND FURTHER, THAT SELLER MAKES NO WARRANTY OF FITNESS  FOR  ANY  PARTICULAR  PURPOSE WITH  RESPECT  TO  THE  AIRCRAFT.  Purchaser understands that Seller is neither manufacturer nor has been the sole owner of this Aircraft.  Purchaser hereby further acknowledges that SELLER MAKES NO WARRANTIES WHATSOEVER, EITHER EXPRESSED OR IMPLIED, WITH REGARD TO THE AIRCRAFT, ITS ENGINES, ACCESSORIES, LOG BOOKS, AND INSTALLED EQUIPMENT,  PURCHASER HEREBY

Seller _____                                                                                                       Purchaser _____

DISCLAIMS ALL WARRANTIES RESPECTING THIS AIRCRAFT EXCEPT THE WARRANTY OF TITLE SET FORTH ABOVE.

6. <u>Governing Law</u>. The laws of the State of New York, excluding their conflict of law statutes and doctrines, shall govern this contract and this transaction, and the parties further agree that venue for any matter relating to this contract shall be in the State of New York.

7. <u>Default</u>. Upon failure of Purchaser, without default or delay by Seller, to purchase the Aircraft by closing date, Seller may elect to cancel this contract. The Seller retains the right to dispose of the Aircraft with no further liability in accordance with this contract. The Deposit will be retained as liquidated damages and Seller waives any other remedies that may be available to Seller at law or in equity.

    Upon failure of the Seller, without default of Purchaser, to comply with the terms of this contract and deliver the Aircraft and accompanying documents as provided herein, with repairs completed as required herein, Purchaser may elect to cancel this contract and the deposit will be immediately refunded in full to Purchaser and Seller shall pay to Purchaser liquidated damages in the amount of $100,000 in addition to reimbursement to Purchaser of the cost of the Inspection. Purchaser acknowledges and represents that Purchaser's receipt of the Deposit and the liquidated damages shall be the sole remedy available to Purchaser in the event that Seller defaults on Seller's obligations under this contract and Purchaser waives any other remedies that may be available to Purchaser at law or in equity.

8. <u>Excusable Delay</u>. The Seller and Purchaser shall not be liable for any failure or delay in performing any of their obligations hereunder due to an act of God, the public enemy, strike or labor dispute, governmental regulation or priorities and a *force majeure* event not involving the fault or negligence of the Seller or Purchaser for a period of thirty (30) days from such occurrence; in the event of any of the preceding occurrences, Purchaser at its option may cancel this contract whereupon the Deposit shall be returned by the Escrow Agent to Purchaser and upon delivery of the Deposit to Purchaser this contract shall terminate and be of no further force or effect.

9. <u>Assignability and Modification</u>. This Agreement shall not be assigned or modified or amended except by the mutual consent of the parties in writing' provided, however, that Seller hereby consents to the assignment of Purchaser's rights in the Agreement to an affiliate entity of the Purchaser, including a Delaware entity to be formed and comprised of substantially the same owners as Purchaser.

10. <u>Partial Illegality</u>. If any one or more provisions of this contract shall be found to be illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired.

11. <u>Cape Town (International Registry)</u>. The transaction contemplated by the Agreement may be subject to the Convention on International Interests in Mobile Equipment otherwise referred to as "The Cape Town Treaty". Seller will co-operate with Purchaser in order to register the FAA Bill-of-Sale as a Contract of Sale (as defined in the Cape Town Treaty) on the International Registry (established pursuant to the Cape Town Treaty). However, Seller will not consent to a registration on the International Registry until such time as Seller has received payment in full under this Agreement. Purchaser hereby acknowledges and agrees that, without specific authorization in writing from Seller, Purchaser will not register, or consent to or allow any registration whatsoever (including a registration of a prospective

Seller _____                                                                                    Purchaser _____

international interest or prospective contract of sale) against the Aircraft pursuant to the Cape Town Treaty. Purchaser and Seller shall each take any and all action necessary to establish an account on the International Registry as a Transaction User Entity, appoint an Approved Administrator User, and designate the Escrow Agent as its Professional Unser Entity to comply with the Cape Town Treaty. At closing, Seller will consent to the registration described herein in accordance with the Cape Town Treaty.

12. <u>Seller's Warranties</u>: As a material inducement to Purchaser to enter into this Agreement and to consummate the transactions contemplated hereby, Seller hereby represents and warrants to Purchaser as follows:

    a. Seller is a Delaware corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.  Seller has all requisite corporate power to execute and deliver this Agreement, subject to (b) below, and, subject to the fulfillment of waiver (to the extent legally permitted) of conditions precedent to the Seller's obligations hereunder to carry out its obligations hereunder.  The execution and delivery of this Agreement and the due consummation of Seller of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of Seller and this Agreement constitutes (and each document and instrument contemplated by this Agreement to be delivered to Purchaser, when executed and delivered in accordance with the provisions hereof, will constitute) a valid and legally binding obligation of Seller enforceable in accordance with its terms.

    b. Intentionally Left Blank

    c. Seller has good, valid and marketable title to the Aircraft, and the Aircraft is free and clear of all mortgages, liens, taxes, charges, encumbrances, judgments, notations and claims of every nature whatsoever, except as noted in (b) above.

    d. The Aircraft has no known major damage history or corrosion.

    e. During the time Seller has owned the Aircraft, Seller has not utilized the Aircraft for any unlawful purposes to the best of Seller's knowledge and belief, and knows of no such use prior to the time Seller acquired title to the Aircraft.

    f. The Aircraft's logs and records are complete and accurate to the best of Sellers knowledge since the Aircraft was new.

    g. There have been no improvements, alterations or repairs to the Aircraft for which the costs thereof remain unpaid.

    h. At Closing there will be no outstanding invoices for services rendered to the Aircraft, supplies or materials provided to the Aircraft, including, but not limited to, fuel, or for hangar fees or storage fees for the Aircraft.

    i   During the time Seller has owned the Aircraft, the Aircraft has not been, nor is it currently, subject of any pending litigation, and there are no unsatisfied judgments against it, to the best of Seller's knowledge and belief.

    j. During the time Seller has owned the Aircraft, the Aircraft has not been, nor is it currently, subject of any pending violations of any municipal ordinances, and of any

Seller _____                                                                                              Purchaser _____

    Federal, state or Purchaser international statutes, laws, decrees or otherwise pertaining to the Aircraft or the use of the Aircraft, to the best of Seller's knowledge and belief.

  k. During the time Seller has owned the Aircraft, there are no outstanding or delinquent taxes, levies, or duties on the Aircraft.

  l. Neither Seller nor any of its affiliates has employed any broker or finder or incurred any liability for any brokerage fee, commissions or finder's fees in connection with the transactions contemplated other than a Aircraft Sales Management Agreement with Martinair. Seller agrees to indemnify and hold Purchaser harmless from and against all fees, expenses, commissions and costs due and owing to Martinair and any other broker, agent or finder on account of or in any way resulting from any contract or understanding existing between Seller and such person.

13. General:

  a. In all respects, time shall be of the essence of this agreement.

  b. The following "Aircraft Acceptance", "Aircraft Delivery" and "Warrantee Bill of Sale" forms are part of this agreement.

  c. Purchaser acknowledges that the Aircraft is being delivered as a U.S. registered aircraft maintained in accordance with Part 91 of the US Federal Aeronautical Regulations.

  d. This agreement shall bind and inure to the benefit of the Parties hereto and their executors, administrators, heirs and assigns.

  e. Purchaser and Seller acknowledge that this Purchase Agreement is the product of negotiation and joint effort. Accordingly, the language, terms and conditions of this Purchase Agreement shall not be construed more strictly against either of the parties in the event a question of interpretation, construction or meaning should hereafter arise.

  f. This agreement supersedes all previous agreements, if any.

Seller _____                                                                                   Purchaser _____

IN WITNESS WHEREOF, this Agreement has been executed by Purchaser and Seller as of the date first written above.

Circuit City Stores, Inc.– Seller            TACALA, LLC – Purchaser

By: _____     By: _____

Title: _____     Title:_____

By:_____     By: _____

Seller _____                                                           Purchaser _____

**"ATTACHMENT A"**
**Aircraft Acceptance/Rejection**

Pursuant to the provisions of the Aircraft Purchase and Sale Agreement dated _____, between Circuit City Stores, Inc ("Seller") and TACALA, LLC ("Purchaser"), you are hereby notified that Purchaser has performed its pre-purchase inspection of Hawker 800XP, S/N 258293, Reg. N150NC and has (initial whichever box is applicable):

☐     **Rejected the Aircraft.** Escrow Agent will be notified and directed to refund Purchaser's deposit. The Agreement is terminated.

☐     **Accepted the Aircraft.** Escrow Agent will be notified and Purchaser's deposit is non-refundable unless Seller fails to perform or Seller breaches its obligations or warranties.

☐     **Accepted the Aircraft provided that Seller fulfills its obligation to correct the airworthy discrepancies listed below, as limited by the Aircraft Purchase and Sales Agreement.** Escrow Agent will be notified and Purchaser's deposit is non-refundable unless Seller fails to perform or Seller breaches its obligations or warranties.

<u>List of Discrepancies to be Corrected:</u>

Ref:       Item Approval Sheet


                                                   PURCHASER:
                                                   TACALA, LLC [or its Assignee]


                                                   _____

Seller _____                                                                            Purchaser _____

**"ATTACHMENT B"**
**Aircraft Delivery**

**N150NC         SERIAL#: 258293         MAKE: Hawker         MODEL: 800XP**

Purchaser hereby indicates and confirms to Seller that Purchaser has, at _____, on _____, 2009 at _____AM/PM, in accordance with the provisions of the Agreement accepted Hawker 800XP, S/N 258293, Reg. N150NC, together with all engines, avionics, items of equipment, furnishings, instruments, components and accessories installed therein or thereon, including the Model Honeywell TFE 731-[3C & 3D] engines, s/n P107136C and P 107238C (collectively the "Aircraft").

PURCHASER ACKNOWLEDGES THAT IT HAS INSPECTED THE AIRCRAFT AND EQUIPMENT AND THE RECORDS RELATING THERETO AND THAT THE AIRCRAFT, EQUIPMENT AND RECORDS ARE FULLY SATISFACTORY TO IT AND IN ACCORDANCE WITH THE AGREEMENT.

The undersigned, who has been duly authorized by Purchaser to do so, hereby accepts delivery of the Aircraft on behalf of Purchaser, **"AS IS, WHERE IS AND WITH ALL FAULTS"** at Purchaser's sole risk and expense.  Purchaser understands Seller makes NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, MATERIAL, MANUFACTURE, WORKMANSHIP, DESIGN, AIRWORTHINESS, VALUE, CONDITION, OPERATION OR PERFORMANCE, CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR ANY OTHER MATTER CONCERNING THE AIRCRAFT, OTHER THAN THE LIMITED WARRANTY SET FORTH IN THE AIRCRAFT PURCHASE AGREEMENT AND THE WARRANTY OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE TO BE DELIVERED BY SELLER TO PURCHASER CONTEMPORANEOUSLY HEREWITH.

Purchaser hereby acknowledges that it has read and understood the above statements and that the Aircraft satisfies all of the requirements, terms and conditions of the Aircraft Purchase Agreement.  By reason of the execution and delivery by Purchaser of this Delivery Receipt, (i) it is conclusively presumed that Purchaser has approved and accepted the Aircraft **"AS IS, WHERE IS"** in its then-current condition and state of repair, with all faults, limitations and defects (whether hidden or apparent), regardless of cause, and (ii) Purchaser shall have no claim against Seller for breach of any representation or warranty regarding the Aircraft, whether express or implied, other

Seller _____                                                                                          Purchaser _____

than the limited warranty set forth the Aircraft Purchase Agreement and the warranty of title set forth in the Warranty Bill of Sale.

    IN WITNESS WHEREOF Purchaser has caused this instrument to be executed and delivered by its duly authorized officer at the date and the time of delivery set forth above.

        PURCHASER:
        TACALA, LLC [or its Assignee]

        _____

Seller _____          Purchaser _____

## "ATTACHMENT C"
## Warranty Bill of Sale

KNOWN ALL MEN BY THESE PRESENTS, that Circuit City Stores, Inc, with offices at 9950 Mayland Drive, Richmond, VA 23233 (hereinafter "**Seller**"), for good and valuable consideration paid to it by TACALA, LLC [or it's Assignee], with offices at 4268 Cahaba Heights Court. Birmingham, Alabama 35243 [or such other address as may be supplied for any Assignee] (hereinafter "**Purchaser**"), the receipt and sufficiency of which is hereby acknowledged by Seller has bargained, sold, transferred, assigned, set over and conveyed, and by these presents does hereby grant, bargain, sell, transfer, assign, set over and convey unto the Purchaser, its successors and assigns forever, all of its rights, title and interest in and to that certain Hawker 800XP, bearing the manufacturer's serial number 258293 and the U.S. civil aviation registration mark N150NC (the "**Airframe**") with the two (2) attached Honeywell TFE 731 engines, bearing the manufacturer's serial numbers, P107136C and P107238C installed thereon (the "**Engines**", together with all equipment, appliances, parts, instruments, appurtenances, accessories, furnishings, and other property installed in or attached to the Airframe or Engines (the "**Equipment**"), and all documents, logbooks, manuals, certificates, data, tools specific to the Aircraft, APU, all loose equipment normally delivered with the aircraft and listed on Exhibit "I" of that certain Aircraft Purchase Agreement dated _____, 2009. (The Airframe, Engines and Equipment will be collectively hereinafter referred to as the "**Aircraft**").

TO HAVE AND TO HOLD for Purchaser, its successors' and assigns' own use forever.

Seller hereby warrants that (a) Seller is the owner and holder of and has full legal and beneficial title to the Aircraft; (b) Seller has good right and full power to sell the aircraft to Purchaser; (c) Seller's title thereto is on the date hereof good, indefeasible and marketable; and (d) Seller hereby transfers to Purchaser all its rights, title and interest in and to the Aircraft, free and clear of all liens, leases, charges, rights to purchase, mortgages or other encumbrances of any kind or nature.  Seller, its successors and assigns, covenant and agree to warrant and defend the title to the Aircraft, unto Purchaser, its successors and assigns, against all persons whomsoever.

This Warranty Bill of Sale and the rights and obligations of Seller and Purchaser hereunder (including without limitation all matters of construction, validity and performance) shall be governed by and construed in accordance with the laws of Commonwealth of Virginia.

IN WITNESS WHEREOF, SELLER has caused this Warranty Bill of Sale to be executed this ____ day of _____, 2009.


Seller: Circuit City Stores, Inc.

By: _____

Name: _____

Title: _____


Seller _____                                                                                                          Purchaser _____

Seller _____

## "ATTACHMENT D"
## Scope of Inspection

N150NC              In reply refer to: Proposal # 8070777.02

I.     Work scope for Aircraft Serial No. 258293.

     **A. Comply with the following:**

| # | Item | Cost |
|---|------|------|
| 2. | Boroscope LH & RH Engines for FOD | $ 850.00 |
| 3. | Visually Inspect Cockpit & Cabin Windows for Damage | $ 170.00 |
| 4. | 24 Hour Fuel Leak Checks. (Includes 1500 gallons fuel / defuel charges.) | $ 1,830.00 |
| 5. | Check loose equipment for any missing items. | $ 170.00 |
| 6. | Comply with full avionics and entertainment function test | $ 680.00 |
| 7. | Visually inspect wing and horizontal TKS panels for corrosion | $ 680.00 |
| 8. | Visually inspect lavatory area for corrosion | $ 340.00 |
| 9. | Comply with a boroscope of the APU | $ 850.00 |
| 10. | Comply with Full Log Book Review for AD, SB, Time Life Components, and Airworthiness Compliance. | $ 3,400.00 |
| 11. | 25R001 ELT NAV interface inspection | $ 255.00 |
| 12. | 057110 No1 Engine 150/250 Hour inspection | $ 425.00 |
| 13. | 057110 No 2 Engine 150/250 Hour inspection | $ NA |
| 14. | 057120 No 2 Engine 300/400 Hour inspection | $ 680.00 |
| 15. | 33R801 Lopresti Boom Beam landing light insp | $ 170.00 |
| 16. | 120001 G-200 Lube | $ 340.00 |
| 17. | 260008 Functional test smoke detection system | $ 42.50 |
| 18. | 490002 APU igniter plug inspection | $ 255.00 |
| 19. | 243154 #1 battery CAP check | $ 425.00 |
| 20. | 240001 #1 and #2 Starter/Gen brush insp. | $ 340.00 |
| 21. | 256005 ELT inspection | $ 255.00 |
| 22. | 256010 ELT functional test | $ 85.00 |
| | **Total for Above** | **$ 12,242.50** |

Note: Flat Rated Labor Only. Parts and Outside Services required to accomplish the above listed items are not included and will be reflected as additional charges on the final invoice. Warranty items will be filed with Hawker Beechcraft Corporation (HBC). HBC has final determination of warranty coverage. Any item(s) not covered by warranty will be the responsibility of the customer.

2

Purchaser _____

N150NC                                          In reply refer to: Proposal # 8070777.02

**Note: Discrepancies, including the treatment of corrosion, replacement parts and miscellaneous material associated with the above work, will be corrected on a time and material, as required basis, subject to the prior review and approval of the authorized company representative.**

II. **Schedule**

The down time for the above work is projected to be (**6**) calendar days. Additional down time may be required for changes to the scope of work or for other unforeseen circumstances and is not guaranteed or warranted in any form.

III. **Sales Tax**

Under current Arkansas State law, sales tax **will not** be added for work performed.

IV. **Payment Terms**

Contract total plus any additional amounts associated with discrepancies, Change Order requests or optional additional work is due net thirty (30) days from issuance of invoice. All invoice amounts in excess of the customer's then available Hawker Beechcraft Corporation credit limit will be due upon completion of the work, prior to release of the aircraft.

V. **Conditions of the Aircraft**

The pricing for the work is based on the assumption that there is adequate space, electrical interfaces and power in the aircraft as delivered and existing structures will not have to be modified in order to complete the work. Otherwise, an estimate of the additional cost and time to correct the deficiency will be submitted to you for approval.

VI. **Changes of Work scope**

Any changes or additional work requirements noted will be documented on a Hawker Beechcraft Services Work Order Estimate Form. Our policy requires that approval of the revised Work Order Estimate Form be obtained from the customer prior to making any changes to the scope of work. Therefore, it is important to process any additional Work Order Estimates promptly, and please submit all change requests in writing to the Aircraft Services Manager or assigned service representative.

VII. **Environmental and Miscellaneous Material Charges**

A charge equal to 2.5% of total labor (not to exceed $500 per invoice) will be added to all customer invoices to cover the cost of hazardous material handling and disposal. A charge equal to 4.5% of total labor (not to exceed $1500 per invoice) will be added to all customer invoices to cover the cost of miscellaneous consumables. These charges cover the handling

Seller _____                                                                                          Purchaser _____

N150NC                                                  In reply refer to: Proposal # 8070777.02

and disposal of waste oil, filters, tires, batteries and chemicals of all kinds and the use of items such as tape, solvents, shop cloths, sandpaper, cleaning compounds, brushes, grease, nitrogen, oxygen and small quantities of miscellaneous hardware such as screws, bolts and washers. These charges are included to avoid secondary billing, at a later date, for items not easily determinable at the time of original invoicing.

**VIII.   Additional/Supplemental Invoicing**

Due to changes in cost and availability at the time of purchase, the pricing of parts and materials found in this proposal are only estimates. The cost of parts and materials actually purchased will determine the final price of this proposal. Additionally, you will be responsible for all charges resulting from unacceptable core parts. We, as most other FBO's, may be unable to secure final vendor pricing on certain OEM parts, exchange parts, outside overhaul/repair units or fuel charges at the time we formally invoice you. This will result in additional invoicing to your company for these charges. We will make every attempt to minimize these additional invoices. Your understanding is appreciated.

**IX.    Terms and Conditions**
* Prices quoted are in U.S. Dollars.
* The work, associated with this proposal, will be performed at Hawker Beechcraft Services' Little Rock facility, FAA Repair Station UH6R899J, located at Adams Field, Little Rock, Arkansas, 72206.
* Any work requested that is not part of this proposal will be performed at the applicable current labor rate.
* All freight charges shall be invoiced to the customer.
* All fuel costs, including fuel/de-fuel surcharges, are the responsibility of the customer.
* All test flight costs (fuel, crew, lubricants, etc.) are the responsibility of the customer.
* Any travel time charges and expenses which may be necessary to conclude this project will be billed upon completion.
* Unless specifically stated, all equipment and furnishing removed shall become property of Hawker Beechcraft Services.
* Unless specifically stated, existing hardware will be utilized.
* Aircraft engineering documents must coincide with the current aircraft configuration.

Hawker Beechcraft Services may withdraw this proposal if not accepted within thirty (30) days.

Proposal Accepted for                              Proposal Accepted for
**Tacala LLC**                                     **Hawker Beechcraft Services, Inc.**

By: _____                         By: _____

Title: _____                        Title: _____

Date: _____                         Date: _____

P.O. #: _____

4