Rough Copy 12 22 08.txt

1

1        IN THE UNITED STATES BANKRUPTCY COURT

2        FOR THE EASTERN DISTRICT OF VIRGINIA

3                RICHMOND DIVISION

4    _____x

5    In re:                    : Chapter 11

6    CIRCUIT CITY STORES, INC.,  : Case No. 08-35653

7    et al.,                   :

8                    Debtors.: Jointly Administered
     _____x
9

10                December 22, 2008

11                Richmond, Virginia

12        **ROUGH COPY:  NOT FOR OFFICIAL USE**

13            Rough transcript of hearing in the above

14    matter held before the Honorable Kevin R Huennekens.

15

16

17

18

19

20

21

22

23            COOK & WILEY, INC.
          Registered Professional Reporters
24        3751 Westerre Parkway, Suite D-1
             Richmond, Virginia  23233
25               804.359.1984

                COOK & WILEY, INC.

2

1    APPEARANCES:

Rough Copy 12 22 08.txt

```
2
3   Gregg.Galardi@skadden.com
4   dfoley@mcguirewoods.com
5   dhayes@mcguirewoods.com
6   sboehm@mcguirewoods.com
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                        COOK & WILEY, INC.


                                                        3

```
1
2              THE COURT:
3              THE CLERK:   In the matter of circuit city
4       stores incorporated case number 35653.
5              THE COURT:   Good morning.
```
                        Page 2

Rough Copy 12 22 08.txt

```
 6            MR. FOLEY:  Good morning, Your Honor.  Doug
 7       Foley with McGuire Woods on behalf of the debtors.
 8       With me today, co-counsel at the table, is Greg
 9       Galardi and Fredericks from the law firm of Skadden
10       Arps.  Also here today from the company, Your Honor,
11       is the general counsel Reggie sitting in the front
12       row.
13            Your Honor, we filed an amended agenda
14       yesterday as we're trying to see if we can resolve
15       as many of these matters as we can.  What we would
16       propose to do, Your Honor, is to go through the
17       first few items which I believe most are either
18       uncontested or can be adjourned by agreement.  And
19       then spend most of the the time on the second half
20       of the agenda this morning.
21            Your Honor, the first item on the agenda
22       actually should come off.  It's a resolution of the
23       out standing issues with respect to insurance with
24       respect to utilities.  I don't believe there's
25       anyone here that needs to address that motion.  That
                    COOK & WILEY, INC.
```

                                                        4

```
 1       should come off the docket.
 2            THE COURT:  All right.
 3            MR. FOLEY:  Your Honor, the next items are
 4       claims trading motion with respect to sell down
 5       procedures and equity and trading of claims.  Your
 6       Honor, we're still working through final objections
 7       with respect to that and we'd is the court to
 8       adjourn that to the January 16th hearing.
```

Rough Copy 12 22 08.txt
```
 9              THE COURT:  All right.  It will be adjourned.
10              MR. FOLEY:   Your Honor, item number 3 is the
11      motion for relief from stay filed by reverend
12      feinstein.   We were here on that a month or so ago
13      and set it down for a preliminary hearing today.
14      We're trying to work through sometiminging of when
15      certain testing might occur with respect to the
16      products involved in this accident.   We're working
17      with counsel to try to figure out what makes sense
18      in that regard.   What we have agreed to do, Your
19      Honor, is simply combine the preliminary and final
20      hearing for the January 29th hearing date.
21              THE COURT:  All right.
22              SPEAKER 3:   Good morning.  Lisa Hudson of
23      sands anderson here on behalf of the funches family.
24      Actually, this court joined orally at our last
25      hearing the ollaway family.  So I'm here on both
                     COOK & WILEY, INC.
```

5

```
 1      regards. Doug is correct.  We did agree to set this
 2      for final hearing 1-29 at 10 and are working to
 3      resolve as much as possible.  Your Honor, if I might
 4      have a brief indulgence, I have with me ash Lee
 5      Burgess today of my firm who has been admitted
 6      recently to this court and wanted to welcome him and
 7      introduce him to the bar.  He was admitted to
 8      practice in 2004 and will be joining the fun of
 9      LandAmerica, circuit city with the business and
10      bankruptcy team at sands anderson.
11              THE COURT:   Good morning and welcome to the
12      court.
```
Page 4

Rough Copy 12 22 08.txt

13          SPEAKER 3:   Thank you.

14          MR. FOLEY:   Your Honor, the next item on the

15     docket is item number 4.   This is a debtor's motion

16     to retain D J M realty services, LLC.   We are

17     working through an informal response filed by the

18     committee.   We think we can work it out.   We

19     actually will spend the afternoon -- what's left of

20     the afternoon -- to try to work it out with them and

21     see if we can't submit an order without actually

22     setting this down for another hearing; however, if

23     we can't resolve it in the next day or so, Your

24     Honor, we would contact the court to have it set at

25     the next available hearing date.   But we think we

                    COOK & WILEY, INC.

                                                      6

1      can work through it today.

2               THE COURT:   Very good.

3               MR. FOLEY:   Your Honor, item number five

4      is -- and section relate to stipulation that we have

5      chase credit card, chase bank U, S A, which is the

6      issue of a co-branded credit card for the circuit

7      city stores.   Your Honor, most of the the relief

8      that we think the stipulation provides for is

9      consistent with a customer programs Your Honor

10     entered on the first day.   Basically, what is being

11     protected here is chase's rights with respect to

12     settle and re coupement as to any returns, charge

13     backs adjustments and other credits related to card

14     holder agreements.   What the stipulation also

15     provides is for a reserve that they can establish

                         Page 5

Rough Copy 12 22 08.txt

16      with respect to money that they would otherwise have

17      to pay us in January.   There's been no objections to

18      the form of the motion and -- acceptable, we'd like

19      to submit it to the court after the hearing.

20              THE COURT:   It will be received.

21              MR. FOLEY:   Thank you.   With respect to items

22      number 7 and 8, Your Honor, these are applications

23      with respect to E N Y that further clarifies the

24      scope of their tax advisory services that they're

25      provide together the company, as well as the

                        COOK & WILEY, INC.


                                                        7


1       retention of K P M G which is the company of

2       auditors.   They also provide certain advice with

3       respect to the tax re fund claim with the IRS.

4       We've spoke tone the office of the United States

5       trustee and we'd like to submit orders after for his

6       endorsement.

7               THE COURT:   It will be approved.

8               MR. FOLEY:   Thank you, Your Honor.   With

9       respect to item number nine, Your Honor, this is our

10      motion to retain certain professionals in the

11      ordinary course of business under 327 E.   Your

12      Honor, there's approximately 35 professionals.   We

13      tried to keep the list as small as possible.   There

14      is a procedure set forth in there as to how they get

15      compensated.   There's a cap on monthly spend with

16      respect to these professionals.   There are

17      procedures for amending it to the extent we need to

18      add professionals or take some off.   Again, we've

19      consulted with the office of the United States

Rough Copy 12 22 08.txt

20          trustee.   There's been no objection to this motion.

21          We'd ask the court to enter the order we submit

22          after the hearing.

23                    THE COURT:   It will be approved.

24                    MR. FOLEY:   Your Honor, item number ten is

25          our motion to reject certain personal property

                              COOK & WILEY, INC.


                                                              8


1          leases pertaining to vehicles and equipment, at

2          least store locations that are going through the

3          closing process right now that are no locker

4          necessary.   Your Honor, there's been no objection to

5          the motion.   We would ask to be able to submit an

6          order.   One clarification with respect to the order

7          that we'll be submitting, Your Honor.   We did agree

8          to carve out certain leases pertaining to General

9          Electric.   So the order that we submit will not go

10         forward with this motion as to them.

11                    THE COURT:   All right.   With that amendment

12         it will be approved.

13                    MR. FOLEY:   Your Honor, Mr. Galardi will

14         address items 11 through 17 on the balance of the

15         agenda.

16                    THE COURT:   All right.   Thank you, Mr. Foley.

17                    MR. GALARDI:   Good morning, Your Honor.

18                    THE COURT:   Good morning.

19                    MR. GALARDI:   Your Honor, I'll take 11 and 12

20         together, but I want to do a step back.   This is the

21         time and place for the final hearing on the the

22         debtors' proposed financing order.   Your Honor, we

                              Page 7

Rough Copy 12 22 08.txt

23        received a number of objections from many many

24        parties, including landlords and other taxing

25        authorities.  My understanding is we have resolved

COOK & WILEY, INC.


9

1         all of those objections.  I'll never know until

2         somebody comes up behind me.  But we believe we have

3         resolved all of them.  One of the most significant

4         objections, Your Honor, is to sort of put it in the

5         context was the one that was not filed by the

6         creditors' committee.  I know Your Honor was aware

7         of that.  Your Honor, first, business has been --

8         and Mr. cool Um is in the courtroom today and if

9         alled as a witness would testify to a number of

10        facts that I am going to layout for Your Honor so

11        Your Honor understands the need for the final order,

12        as well as the need for the document to be filed

13        under seal, as well as the amendments so that we can

14        put that in context.

15             Your Honor, just briefly, since entering into

16        the bankruptcy case, the debtors' performance, as I

17        think all retailers have, has opinion off

18        significantly.  The original budget had sales off 20

19        percent and they've gone more to 43 to 48 to 50

20        percent.  Unfortune lit, the business is not

21        performing for the holiday, probably as -- best buys

22        and our competitors having similar circumstances.

23             In that context, and with performance falling

24        off, the other aspect of the model that Your Honor

25        had seen was that in January we were hopeful that

Rough Copy 12 22 08.txt

10

1    vendors would come along and provide certain trade
2    terms.  They have been slow coming.  Some vendors
3    have supported, some have not.  Our projection of
4    what we hoped to do to get through what I called a
5    bridge to somewhere, a sale, an exit, a vendor
6    supported plan.  And the idea was to give us roughly
7    60 days to a date that we all targeted as January
8    16th whereby we would either get a subordinated
9    facility of about 75 million dollars.  There was
10   some discussion of that, or come up with a vendor
11   plan or something like that.
12        The per though performance is off, it is
13   still our hope that we continue to do that.  The
14   committee expressed its concern in an informal
15   objection to us that they gave us a draft for.  And
16   I'll say 7 of the concerns that they had, there were
17   probably more than that, but there were 7 major
18   concerns.  First, Your Honor will recall that we
19   rented into an agreement that the first day rolled
20   up all of the pre petition debt into a post petition
21   debt and the debtors had taken the condition that
22   that was appropriate under the circumstances.  Both
23   for practical purposes and because we believe the
24   vendors were over secure.  Notwithstanding that, the
25   committee had an objection to the roll up and we had
                COOK & WILEY, INC.

11

1    some stand dill agreements during this period of
                Page 9

Rough Copy 12 22 08.txt
2        time with respect to that.

3             The second, Your Honor -- and I think I

4        emphasized this in the first day, and it was first

5        meeting with committee -- I guess the slogan for the

6        case is you're paying 30 million dollars for a 50

7        million dollar availability.  They had expressed the

8        same concerns.  We've had our stories about that and

9        why it isn't exactly that, but that was a second

10       concern that the committee had expressed loud and

11       clear.

12            Third, the committee -- as committees

13       generally do -- wanted a longer investigation period

14       with respect to evaluate the security interest of

15       the bank group, the time periods, and things of that

16       sort.  Obviously, every committee has a concern with

17       the at the time ors 506 C waiver which was included

18       in it.  In addition, especially in 2 context of the

19       roll up, the committee had expressed its concern

20       that the banks were taking not just the collateral

21       they had pre petitioned, but expanding their

22       collateral to include such things as lease proceeds,

23       if, F F and E, Canada, and that was a concern that

24       the committee had expressed.  And so have other

25       people, but I think it's easier to focus on that.

                    COOK & WILEY, INC.


                                            12

1             In addition, as we had talked about the first

2        day, the committee had concerns about the need to

3        have a 75 million dollar sub debt facility; and, I

4        object deed, what that facility would be could

5        itself hamper trade terms because you would just

Rough Copy 12 22 08.txt

6        simply further subordinate ordinary trade credit.
7        There was that concern.  Finally, the committee also
8        had concerns about the timing of bid solicitations
9        and the plan.  It was a relatively short time frame,
10       and we had got eastbound, since the committee was
11       formed, certain indications they would be willing to
12       consider not only the initial -- we had meetings in
13       New York with the committee about that and
14       unfortunately we didn't come to an agreement
15       initially.  So we began discovery I guess it was
16       last week again adjourning off the committee's
17       deadlines to file an objection.
18            Your Honor, with the amendments before Your
19       Honor today that we have filed, as well as the
20       motion under seal, we have resolved the committees'
21       objections; again, as any resolution, obviously,
22       they wished for some more things.  The bank wished
23       for some less things or more things.  But we think
24       we've resolved a fair settlement that's embodied in
25       the amendment.
                    COOK & WILEY, INC.

                                                13

1            In particular, Your Honor, from a factual
2        standpoint as Mr. cool Um would testify, as we sit
3        here today, whether we had done a first day role up
4        or a roll up up to this hearing, by now all of the
5        pre petition debt would have been rolled up.  So
6        that issue sort of died of its own accord, although
7        the committee had retained its rights to always
8        challenge that roll up.  Today we are not having
                    Page 11

Rough Copy 12 22 08.txt

9          that contested.

10              Your Honor, with respect to the cost and

11         availability factor, and given the performance, this

12         was a negotiation and the committee has now agreed

13         and we would still seek the approval of -- and it

14         was still approved on the first day -- the fees

15         paid; however, Your Honor, we believe we now have

16         some additional substantial availability, though not

17         obvious, what has been removed is the minimum

18         availability covenant N. the original DIP financing

19         agreement, as of December 20th, we had to have

20         minimum availability of 75 million dollars.   The

21         next two weeks were 50 million dollars and then at a

22         low in the week of January 35 million dollars.   So

23         essentially whether you won't want to call it a

24         block or a covenant, we would have butted against

25         those terms.   The banks have agreed in the amendment

                    COOK & WILEY, INC.


                                              14


1          we have put forth and for which we seek approval

2          today that those covenants to not apply.   There's

3          still the 75 million, but there's not the 75, 50 and

4          35 block.   In addition, Your Honor, the banks have

5          con sented to extend the investigation period to

6          March first, 2009.   The committee has agreed that

7          they do not object now to the 506 C waiver.   And

8          importantly, Your Honor -- and this is good for the

9          estate -- the banks and the committee and we have

10         agreed that there will be no liens granted on the

11         the F F and E that was originally part of the

12         additional collateral and bootstrap collateral that

Rough Copy 12 22 08.txt

13          the banks were taking.  In addition, there is a
14          sharing of Canadian proceeds between this estate and
15          the the banks.  The banks also took a lien on
16          Canadian assets.  It will have no affect on how the
17          mechanics work in Canada.  It only has an effect for
18          this estate and what the proceeds from any sale or
19          proceeds that are to go to pay down the debt will
20          have with respect to this estate.  And then finally,
21          as Your Honor knows, we have addressed which he can
22          check various timing issues with respect to where
23          this business is going.  As I had mentioned -- and
24          the reason we had filed the motion under seal -- is
25          that we are seeking a bridge to somewhere.  We are
                    COOK & WILEY, INC.


                                                        15

 1          in negotiations as Mr. cool Um calls the witness
 2          will testify, we continue to pursue a plan with
 3          vendors, although that has not gone as fast as we
 4          would like it to.  We are, in fact, pursuing still
 5          sale of all of our assets.  And so, we continue to
 6          pursue that.  As part of this, we have asked now for
 7          Your Honor to approve the amendment that sets up
 8          various time lines for achieving certain of our
 9          goals with this re structuring.  We have asked Your
10          Honor to grant a motion to file an amendment, aside
11          letter under seal.  We would ask Your Honor to do
12          that.  That's obviously, as Your Honor has probably
13          read, it's confidential and sensitive information,
14          and may affect the ultimate value that we get for
15          these assets.  So we think it's important that that
                    Page 13

Rough Copy 12 22 08.txt

16      motion be granted.   And in addition, Your Honor, we

17      no longer face that hurdle as the quit proquo for

18      that sped you'll.   We no longer face that January

19      16th or 17th deadline to have a subordinated loan

20      facility.   So we believe that with those amendments,

21      Your Honor, two things are very important.   One that

22      the company will have adequate availability to be

23      able -- that we have adequate availability to get to

24      the 16th; and, indeed, maybe even later than the

25      16th, to be able to continue to explore the

                     COOK & WILEY, INC.


                                                        16


1       restructuring alternative.

2               Two, that we have a consensual DIP, except

3       for I guess I've been passed a note that one of the

4       objections may still be outstanding, but it doesn't

5       go to these terms -- but we have a consensual DIP

6       that the committee and the banks and we have all

7       agreed to.   We have a structure and a time frame for

8       proceeding with the restructuring of these cases,

9       all of the avenues that we are going down; and that

10      we have adequate availability.   And, indeed, Your

11      Honor, without approval of the facility today, we

12      would have no further financing.   And there's

13      clearly an immediate need for financing as we make

14      purchases every day, we pay bills every day, we pay

15      employees every day.   So we would face -- though we

16      don't need to say immediate and irreparable harm in

17      the context of the final order that the financing is

18      in the best interest of the creditors and estates --

19      we believe that it is supported by the committee.

Rough Copy 12 22 08.txt

20      And the bank group has negotiated in good faith with
21      respect to the modifications that it has made.
22      Again, Your Honor, we had a meeting -- and I think
23      it's important to point out that many of the issues
24      require 100 percent lender consent.  So that is a
25      very difficult thing in this time to have financing.
                    COOK & WILEY, INC.


                                                    17

1       So we are happy to still have that financing.  And
2       then with the help of the required lenders led by
3       the agent B of A, the elimination of that minimum
4       availability or clean down covenant has
5       significantly given us more certainty that we'll be
6       able to explore our re structuring alternatives
7       through the middle of January and make some
8       determination as to where this case is going.
9           Your Honor, the one objection that is out
10      standing here and we may just need a little bit more
11      time is the objection of Navarre, who is a
12      consignment vendor.  And we don't dispute that there
13      are consigned goods.  They've also made a motion for
14      adequate protection.  We may be able to resolve that
15      separately.  I don't think it goes to we need a DIP.
16      It's more it goes to what adequate protection can be
17      provided through a consigned lender in the modern
18      age of centralized cash management and reserving
19      rights, we propose a stipulation.
20          MR. GALARDI:  Your Honor, I could certainly
21      put Mr. cool Um on the stand to address that, but I
22      think if called as a witness, he could verify the
                    Page 15

Rough Copy 12 22 08.txt
23          facts set forth in the final order.  It is the
24          result of arm's length negotiations.  I think we can
25          rest on the record.  And I don't know if there's
                    COOK & WILEY, INC.


                                                    18


 1          parties who have an objection, or other people who
 2          have comments.  I leave it to Your Honor as to how
 3          you'd like to proceed with the rest of the final DIP
 4          hearing.
 5              THE COURT:  All right.  Thanks.  Does any
 6          party wish to examine the proffered witness for the
 7          debtor?
 8              All right.  The proffer will be accepted.
 9          Does any party wish to speak in opposition to the
10          motion to approve the DIP financing?
11              SPEAKER 3:  Your Honor, if I may.  Briefly,
12          I'd like to be heard on this.  Ken Coleman of Allen
13          and Overy.  We represent Alvarez and Marxel, the
14          monitor appointed in the Canadian proceeding.  I
15          don't have an objection, per se, but I do have some
16          comments that I'd like to express to Your Honor and
17          have on the record.
18              As I indicated at the last hearing, you know,
19          we do appreciate the difficult circumstances of the
20          U.S. company and the difficult retail environment
21          and the pressure that everybody is under in this
22          case to try to effect a restructuring.  The fact of
23          the matter is that the monitor in the Canadian
24          proceeding is the only party that can consider the
25          interests of the Canadian unsecured creditors
                    COOK & WILEY, INC.

Rough Copy 12 22 08.txt

19

1     without any conflict of interests.   The Canadian
2     company intertan does not have the ability -- does
3     not have an independent board of directors that can
4     look solely to the interest of the Canadian
5     creditors as a function of the corporate governance
6     of the system.   And those are the facts we have.
7     That's why there's additional pressure on the
8     monitor to pay attention to the interests of those
9     creditors.   Yet, the monitor has been excluded from
10    this process that has led to this amendment.   I
11    think Your Honor is aware of the extraordinary
12    nature of the relief that was available in Canada in
13    connection with the post petition financing.   For
14    the first time the Canadian subsidiary was joined
15    with the U.S. parent in terms of its assets being
16    directly available to support this financing.   So
17    therefore, what occurs in the U.S. does have a
18    direct impact on the Canadian creditors.
19         Again, we appreciate that the partys are
20    trying to accomplish a number of things here in a
21    fairly short order, in a very difficult environment.
22    We think that this amendment -- while we appreciate
23    Mr. Galardi's comments that there should be no
24    impact on the Canadian creditors, this amendment
25    specifically in section 5 B, which we only received
                    COOK & WILEY, INC.

20

1     for the first time yesterday afternoon, doesn't say

Rough Copy 12 22 08.txt

2    that.  It suggests that after -- it says that after

3    payment of specific charges set forth in the

4    Canadian initial order, 50 percent of the proceeds

5    go to pay the DIP loan, and the balance goes to the

6    U.S. estate.  Now, there may well B, depending on

7    how the the facts unfold and how the Canadian sale

8    process unfolds, there may well B Canadian unsecured

9    creditors who are cut out of those proceeds.  Now,

10    if that's not the intention, that's fine.  And there

11    are words that can be used to fix that.  But my

12    point in rising today, Your Honor, in addition to

13    express our concern about this process, my point in

14    rising specifically is to suggest to Your Honor that

15    matters pertaining to this amendment, matters that

16    affect the priorities of the Canadian court order

17    and the application of proceeds of the sale of

18    Canadian assets ought to be addressed in the first

19    instance by justice Morawetz in Canadian court, and

20    that this court should not today approve the

21    amendment in those respects as they affect Canada.

22        Justice Morawetz has been alerted to the

23    hearing today and to these provisions, and it is my

24    understanding that a hearing is being scheduled

25    before him tomorrow to consider this.  And what we

            COOK & WILEY, INC.

        21

1    don't want to create is a sense that this court has

2    somehow approved matters that relate to Canadian

3    priorities and the application of Canadian assets

4    when, in fact, out of deference to the Canadian

5    court, whose order is really at stake here, that

Rough Copy 12 22 08.txt

6          court would first consider those issues.

7                And frankly, there are concerns in Canada

8          expressed last night and this morning about various

9          representations that were made to obtain the

10         financing in Canada on the first day, that the terms

11         were in inviable, that there was no time to consider

12         alternatives.  And indeed there have been

13         substantial changes and substantial negotiations

14         over the past six weeks or so in which we just have

15         not been involved.  And we think that --

16         understanding the circumstances that the partys are

17         under -- we think that we need to be involved in

18         that process so that we don't confront situations

19         where we're presented at the last minute with what

20         appears to be a fait accompli, which has a very

21         direct and material impact on Canadian creditors.

22                THE COURT:  All right.  Thank you.

23         Mr. Galardi?

24                MR. FOLEY:  Yes, Your Honor.  Two things.  I

25         think this might be a language issue.  First, Your

                         COOK & WILEY, INC.


                                                    22


1          Honor, I want to be clear.  We are not asking Your

2          Honor to do anything to change any order -- the

3          financing order in Canada, nor are we saying that by

4          doing this order we're going to turn around in

5          Canada and say, well, this court approved it.  That

6          wasn't the intention of this.

7                Your Honor, there is an order -- and Mr. burr

8          man is familiar with it, and I am somewhat familiar

                              Page 19

Rough Copy 12 22 08.txt

```
 9        with it -- in Canada whereby there is a charge, a
10        payment and then there is some money that's been set
11        aside for the unsecured creditors in cab can and
12        then the banks would get their rights which were
13        agreed to in the order that is before Judge
14        Morawetz.  All this order says, that when the banks
15        begin to take on that second part after the charges
16        and everything goes, is that they're sharing 50
17        percent of that with this estate.  It's not changing
18        anything in that original order, nor was it our
19        intention to do so.  Mr. burr man can certainly
20        describe that.  If the language doesn't make that
21        clear, I understand.  Again, I'm not standing it on
22        the fact they clearly have a voice in this case.
23        They're not a party in interest in the sense of
24        stand agency a creditor, but I do want to make it
25        absolutely clear:  We are not asking this court to
```

COOK & WILEY, INC.

23

```
 1        say this is an order and has binding effect on
 2        Canada or changes anything about the Canadian order
 3        whatsoever.  That is not our intention here.  And we
 4        can work through with the monitor in this language.
 5        Obviously, I wasn't aware of a hearing tomorrow.
 6        But the idea is whatever the banks had with respect
 7        to the Canadian collateral, all it's done is said,
 8        We'll give 50 percent back to the estate.  No change
 9        of that Canadian order.
10             THE COURT:  After payment of Canadian --
11             MR. GALARDI:  After all of the agreed -- in
12        the Canadian first day order and the other financing
```

Page 20

Rough Copy 12 22 08.txt

13          order there was charges.  There was this.  And there

14          was a separate negotiation with the monitor to allow

15          a pot of money remain before the banks collect on

16          their lien above that for the unsecured creditors.

17          We've not altered that bucket whatsoever.  We've

18          simply given the banks, which the committee pointed

19          out, the banks were getting apart of their

20          collateral and they've agreed to share.  That's

21          essentially what this provision of 5 B was intended

22          to capture.

23                    THE COURT:  All right.  Thank you.

24                    SPEAKER 3:  Your Honor, I appreciate those

25          comments, but just so I'm clear:  The Canadian order

                         COOK & WILEY, INC.


                                                        24


1           has six charges, or as we would understand it,

2           priorities or carve outs.  Our difficulty is that

3           there may well be Canadian unsecureds who are not

4           paid after those six priorities are dealt with.

5           There are caps on each of those six priorities.

6           What this language purports to do is that after

7           you -- after the proceeds fall through that

8           waterfall of six priorities, the banks get half of

9           the remaining proceeds, the DIP lender gets half of

10          those proceeds.  And the U.S. estate, presumably for

11          the benefit of the U.S. unsecureds, gets the balance

12          of the proceeds.  So our concern is not the six

13          prior claims, but rather the Canadian unsecureds who

14          would be paid if at all from the Canadian estate.

15          So if you will the 7th bucket.  That's the problem

                           Page 21

Rough Copy 12 22 08.txt

16      with this.

17            Now, we're happy to work on the language for

18      the amendment because the way it's drafts, it talks

19      in terms not of a sharing of lien or claim, but

20      rather a sharing of proceeds.  So if a sharing of

21      proceeds is not the intention, but rather an

22      assignment of the lien or an assignment of the

23      claim, you know, we can work with that wording. but

24      just so that I'm clear with Your Honor, our

25      difficulty is if you will the 7th bucket, not the

                    COOK & WILEY, INC.


                                                    25


1      prior six.

2            THE COURT:  All right.  Thank you.

3            SPEAKER 3:  Your Honor, David burr man for

4      the DIP lenders.  What we were trying to accomplish

5      here, Your Honor -- just so you understand the

6      buckets that have been referred to in a little more

7      detail -- is there are some priority Canadian

8      claims, administration expenses, directive charges

9      which will be paid first from the collateral.  The

10     lenders have also made a direct loan to the Canadian

11     borrower to fund its operations.  After those

12     priority charges are paid, the direct loan gets

13     paid.  That's really the first four levels.

14            The fifth level was a carve out that was

15     requested by counsel in Canada of 25 million dollars

16     for Canadian creditors to make sure that the

17     Canadian creditors had some recovery before the

18     cross guarantee of Canada was to apply and the money

19     to come to pay the U.S. debt after a second hearing

Rough Copy 12 22 08.txt

20          in December fifth, that carve out was increased so
21          it's 25 million, plus any unused portion of the
22          first priority carve out.  So it could potentially
23          be 40 or 45 million dollars.  So it's after the
24          carve outs, the banks paid its direct loan.  The
25          court order says at that point this time the bank
                      COOK & WILEY, INC.


                                                            26

1          can get paid on its cross guarantee with any
2          remaining proceeds, if any.  And in our negotiations
3          with the committee and the debtors, what we were
4          saying is, okay, we're entitled to all of those
5          proceeds until the U.S. debt is paid off.  What
6          we'll do is we will -- rather than applying them all
7          to the U.S. debt, we'll leave some in the estate for
8          the creditors.
9              So we're not changeing the order.  We're just
10         saying the money we get, rather than applying it all
11         to the debt, some is going to stay in the estate.
12         That is really what we're trying to accomplish here.
13             MR. GALARDI:  Your Honor, let me also put my
14         color on it.  This is really a Marshaling argument
15         in some -- and this was one of the committees
16         concerns.  The banks also always have a lien in
17         inventory.  We believe the inventory will be
18         sufficient to pay it off.  In this uncertain
19         environment, they took a couple of other pots of
20         collateral, including the Canadian collateral.  As
21         Mr. Burman has just described, nothing has changed
22         as to what the banks have taken.  But the committee
                      Page 23

Rough Copy 12 22 08.txt

23        was concerned that, well, okay, you really to want

24        need that extra collateral if you're going to be

25        paid by the inventory.  So we had along discussion

                    COOK & WILEY, INC.


                                                    27


1         back and forth as to what kind of collaterals --

2         where would you first look.  What Mr. Burman and the

3         committee and the debtors have agreed is essentially

4         we're not going to look to the F F and E.  You'll

5         still look to the inventory.  You always had,

6         because that was the deal -- I understand the

7         monitor may not like the deal that was originally,

8         thinking there may have been more for them up this.

9         But there's an order up there that says the banks

10        have 100 percent of those proceeds after the the

11        charges.  What Mr. Burman has con to resolve a

12        committee objection here, which we think is

13        perfectly appropriate is says that's fine.  If I

14        took 100 percent, my debt goes down 100 percent.  If

15        I took 50 percent, my only does that. whether it

16        goes directly to pay down the secure error whether

17        it comes into this estate as free cash for either

18        the unsecureds or administering of claims is really

19        largely irrelevant it felt money was going to

20        benefit this estate in either way, which is why we

21        think this particular B, one is very critical to us.

22        Two, it's critical to the committee because it was a

23        weigh to involve essentially a Marshaling argument.

24        Since the estate had already negotiated through

25        Canadian counsel and with the Canadian order they

                    COOK & WILEY, INC.
                         Page 24

Rough Copy 12 22 08.txt

                                                        28

1          had this above the 25.  We don't think this' a
2          change.  We understand they may go back to court
3          there and say we didn't know there was something
4          more we could have gotten, which is what this
5          argument is about.  Canada is Ing we took 25 but if
6          the bank is willing to give 50 away, why couldn't we
7          get 35 or 45.  I understand that they may not like
8          this result, but that's not a reason to stop this
9          amendment.  It's quite consistent with the order.
10         They can make the argument in equity up there.  I'm
11         not asking Your Honor to say, Judge Morawetz, don't
12         decide this issue.  Don't look at this issue.
13         You're free to look at it.  But this is entirely
14         consistent with the order.  And if the monitor has a
15         problem with the deal they cut because they thought
16         maybe I could have gotten some more, that can be
17         brought before Judge Morawetz.  But this is really
18         still estate property.  Whether it goes to pay the
19         debt directly or it becomes funds and we make a
20         marshalling argument is really irrelevant.  They
21         were going to this estate or for the benefit of this
22         estate under the Canadian order.
23              THE COURT:  All right.  Thank you.
24              SPEAKER 3:  Your Honor, I'm happy to leave
25         this with Justice Morawetz for tomorrow, but that is
                      COOK & WILEY, INC.

                                                        29

1          not -- that is not our position.  We're not
                      Page 25

Rough Copy 12 22 08.txt

2      hearsaying there's more to be had; we'd like to have

3      it.  We disagree that the wording in this amendment

4      accomplishes what Mr. Galardi says it accomplishes.

5      We do believe that this wording does purport to

6      affect the priorities in the initial order, and we

7      think that justice Morawetz should have first crack

8      at that issue.

9          THE COURT:  I certainly agree that the

10     Canadian court should administer the property of the

11     Canadian company.  But as I understand the way that

12     this is working, these are the proceeds that come

13     from the order that's already been entered in the

14     Canadian court governing that.  It's just a matter

15     of how it flows from that.  And if the court amends

16     the order in Canada, then, you know, this court

17     won't interfere with that.  The Canadian court can

18     certainly do that.  Check he can.

19         SPEAKER 3:  Well, Your Honor, part to have

20     problem with this wording is if 50 percent to have

21     proceeds of the the sale to have Canadian assets

22     were sufficient with other recoveries to pay off the

23     balance to have loan, the remaining 50 percent would

24     none the less go to the U.S. estate for payment of

25     the U.S. unsecured creditors; where as under the

                    COOK & WILEY, INC.


                                        30

1      previous regime, those funds would go to the

2      Canadian estate and be distributed to the U.S.

3      estate as an equity distribution if at all.

4          THE COURT:  Hasn't the lender should assigned

5      50 percent of its lien to this estate.
                    Page 26

Rough Copy 12 22 08.txt
6          SPEAKER 3:   Again, Your Honor, this doesn't
7     say that.   This talks about how the the proceeds of
8     the the sale will be distributed.   And it talks
9     about 50 percent of the proceeds of the sale going
10     to the DIP lender, and the remaining proceeds of the
11     sale going to the U.S. estate.   This doesn't have
12     any effect on the DIP lender's lien or claim.   It
13     just says you'll get 50 percent to have proceeds.
14     Now, they have other source of recovery.   Undoubt
15     itly there is a Marshaling argument that re laves to
16     all of this, which is unavoidable once you have
17     co-borrowers and cross collateralization.   But the
18     problem with the focus on pure proceeds rather than
19     claim would be one thing if the lenders were saying
20     we are assigning to the U.S. estate 50 percent of
21     our lien.   But that's not what they're doing.
22     Again, Your Honor, I'm happy not to be the tail
23     wagging the dog on this issue here.   That's not what
24     this wording says.
25          THE COURT:   Have you proposed language to
               COOK & WILEY, INC.

                                                      31

1     Mr. Galardi that would be acceptable.
2          SPEAKER 3:   That's part to have problem with
3     the process, Your Honor.   We haven't had a chance
4     to.   We just got this yesterday afternoon despite
5     requests previously to be allowed into this process.
6     We're happy to propose language.
7          MR. GALARDI:   Your Honor, there's a simple
8     answer, I think, to do thing that.   Clearly, a
                    Page 27

Rough Copy 12 22 08.txt

9        sentence in our order that says nothing is intended

10        by any of the amendments to modify or change in l of

11        the the terms of the Canadian order makes this

12        language largely irrelevant to them.  And that's

13        what I'm going to suggest is ultimately a paragraph

14        in here.

15            THE COURT:  And that would be acceptable to

16        the court.  I think that --

17            MR. FOLEY:  Then we don't have to -- we can

18        work on language.  But as long as this order says

19        clearly we're not trying to amend the Canadian order

20        by the way of book door or otherwise by amendment or

21        otherwise, I think this objection then can be over

22        ruled.  And judge Morawetz can look and have

23        whatever -- if it alters it, he can interpret that.

24        I think that's totally appropriate.  Thank you.

25            SPEAKER 3:  Your Honor, just in terms of
                    COOK & WILEY, INC.


                                    32


1        clarification as to what the DIP lend ders were

2        believe they were agreeing to is they were given 50

3        percent of what we were entitled to receive from

4        Connell after the direct loan and other charges to

5        the estate.  Burman.  So in the example that was

6        given, if we only need 50 percent to have

7        proceeds -- we would only need 50 percent to have

8        proceeds to satisfy the 50 percent.  The other 50

9        percent stays in can condition and we take the 50

10        percent we receive and split it with the estate.  So

11        we're not trying to -- or at least the DIP lenders

12        aren't trying to get more than we were otherwise
                    Page 28

Rough Copy 12 22 08.txt

13          entitled to under the order.  It's just how were

14          those proceeds used.  We're basically agreeing to

15          release part of our collateral to the estate.

16                THE COURT:  All right.  Thank you.

17                MR. FEINSTEIN:  Your honor, reverend fine

18          Stein for the official creditors committee.  I can

19          confirm what Mr. Galardi and Mr. Burman said about

20          the nature of negotiations in that under the interim

21          DIP under the DIP financing agreements, the lenders

22          were to get substantial additional collateral -- new

23          leases, a pledge of the unpledged entered in the

24          Canadian subsidiary, and F F and E.  As a part of

25          the horse trading of negotiating a consensual DIP

                        COOK & WILEY, INC.


                                              33


1           resolution -- as Mr. Galardi pointed out -- one of

2           the items that was ceded by the bank, as Mr. Burman

3           described it, was giving up half of what they were

4           entitled to under the Canadian order.

5                 So there is no -- let me confirm, there is no

6           effort to modify the Canadian order at all.  And

7           frankly, I'm quite concerned to hear that there's

8           some emergency proceeding in Canada to amend that

9           order in a way that might undermine the deal that we

10          struck here today, essentially on no notice to this

11          creditors' committee, which would be fundamentally

12          affected by any change.  I just want to express that

13          concern on the record, and ask that we be included

14          in any proceedings of this type that go forward in

15          Canada tomorrow.

                        Page 29

Rough Copy 12 22 08.txt

16          With respect to the remainder of the

17     resolutions, let me just -- I'll confirm what

18     Mr. Galardi laid out, that the efforts by the

19     committee to negotiate -- and we did, as Mr. Galardi

20     said, meet in New York with the banks and with the

21     debtor, and have engaged in fairly round-the-clock

22     negotiations over the last several weeks -- have

23     resulted in a number of important protections from

24     the committee's standpoint.

25          First, with regard to the roll up, there is

                    COOK & WILEY, INC.


                                                    34

1      now language in the final order that makes it clear

2      that if any successful challenge is brought, that

3      the roll up will be rolled back to the extent that

4      there are defects in the liens and things like that.

5          We do have some concern about the signs of it

6      being relative to availability with the elimination

7      of the minimum availability covenant.  There is now

8      substantial more liquidity for the debtor to operate

9      as we go forward.

10          The challenge period has been moved out so

11     that we can all focus on restructuring this business

12     and maximizing value for creditors.

13          The additional collateral issue, again, has

14     been addressed by the ceding of half the bank's

15     recovery out of the Canadian proceeding, as well as

16     by not having a lien on the F F and E.

17          We also thought it was important to eliminate

18     the 75 million dollar sub debt facility requirement.

19     That would have created a number of issues.  That's

                    Page 30

Rough Copy 12 22 08.txt

20      gone.

21           Lastly, two points that Mr. Galardi didn't

22      raise:  We made it clear in this order that the

23      super priority claim that's being afforded to the

24      banks cannot be satisfied out of avoidance actions

25      or the items of collateral that have been freed up,

                    COOK & WILEY, INC.


                                              35


1      if you will -- the Canadian collateral, the F F and

2      E.  And finally, we added a reporting provision for

3      the payment of banks' professional fees, that they

4      provide invoices to the committee of the U.S.

5      creditors.  Thank you.

6           THE COURT:  All right.  Thank you.

7           SPEAKER 3:  Just one last point, Your Honor,

8      if I may.

9           THE COURT:  Yes.

10          SPEAKER 3:  I'm wearing out my welcome.  I

11     read body language almost as well as English.

12          There's no intention to create emergency

13     hearings to anyone's surprise.  If we had been

14     involved in the process, all of this could have been

15     avoided.  Notice of that hearing is going out today.

16          One issue that we think is enormously

17     helpful, one way to approach these problems that we

18     think is enormously helpful is if the courts are in

19     communication with each other.  We're happy to

20     provide your chambers with Justice Morawetz's phone

21     number if Your Honor feels that a conversation of

22     that nature would be helpful to get us over this

Rough Copy 12 22 08.txt

23    hump.

24         THE COURT:  All right.  Thank you.

25         SPEAKER 3:  We'll do that today.  Thank you
                COOK & WILEY, INC.


                                                    36

1    very much.

2         THE COURT:  I'm going to request Mr. Galardi

3    include the language that you just mentiond in the

4    order to clarify that -- you know, affecting any

5    order that's been entered in the Canadian court.

6         With that, did any other party wish to be

7    heard on the motion to approve the DIP financing?

8         SPEAKER 3:  Good morning, Your Honor, Alan

9    notfeld on behalf of Navarre.  We filed an objection

10   to the DIP order, and then we also filed a motion

11   for adequate protection.  The relief in the motion

12   and the relief requested in the objection are kind

13   of parallel.  So just wanted to get an affirmative

14   motion before the Court, and in particular in light

15   of the fact that the DIP hearing was continued last

16   time, and we didn't have an opportunity to be heard.

17        The DIP order does now provide for a carve

18   out for goods that are not properly in the estate.

19   And that would include goods such as the Navarre

20   property that has been delivered to the debtors on

21   consignment.  We appreciate that, but in our minds

22   that's the easy part.  The more difficult part is

23   what happens with the proceeds from the sale of

24   those goods?  And the DIP order in our minds does

25   not sufficiently address those proceeds.  And as a

                COOK & WILEY, INC.

Rough Copy 12 22 08.txt

37

1         result, we feel effect of that is that some right

2         that is Navarre has under the bankruptcy code;

3         namely under section 363 C are taken away because

4         when the debtors sell the consigned goods and they

5         receive the proceeds of those, the proceeds get

6         mixed in with the debtors' accounts which are

7         subject to the blank blanket lien by the DIP lenders

8         and Navarre's rights to segregation and its other

9         rights to proceeds can be lost.

10             As briefed in our papers, Navarre and the

11        debtors are consignment -- under the U C C that

12        consignment agreement is a check he can tame.  I

13        won't go into all the specifics but we feel we've

14        sufficiently laid out the steps we took to secure

15        that security interest.  I note the debtors in the

16        their sponsor no other party has October today the

17        validity of the steps that were taken, and as such,

18        the validity of the consignment lien and the

19        consigned goods -- and I also note that that's

20        sufficiently covered in the order right now.  With

21        respect to the proceeds, we also look to the U C C

22        and the U C C basically grants a lien on proceeds

23        that are from the sale of inventory that's subject

24        to a purchase money security interest to the extent

25        they're identifiable.  And we think there is a

COOK & WILEY, INC.

38

1         slight difference here between the goods on

Rough Copy 12 22 08.txt

2      consignment that were sold pre-petition and the

3      goods on consignment that were sold post petition,

4      but they ultimately get to the same place.  With the

5      goods pre petition, essentially we would have a lien

6      on the proceeds to the extent that those proceeds

7      are identifiable.  And as briefed in our papers, the

8      courts look at the lowest balance.  It appears that

9      the burden here is initially on the secured party to

10     establish that where funds were co-mingled -- which

11     we suspect was the case here -- that they can be

12     traced, applying the lowest inter mediate balance

13     test and the minimum information available to us.

14     The total dollar value of these goods is about 2.3

15     million, and the debtors' cash balance on hand

16     appears to have dropped no lower than 90 million

17     based on their public filings with the SEC.  At

18     times they seem to be closer to 300 million in the

19     past year.  It's really difficult for us to pinpoint

20     exactly what was on hand as to have petition date,

21     but we think it was well in excess of 2.3 million.

22     And we think that we've, at a minimum,

23     demonstrated -- established a prima facie case that

24     there are identifiable proceeds from the sale of

25     Navarre's consigned goods.  We also note that there

                    COOK & WILEY, INC.


                                            39

1      was no objections to those claims in our motion.

2              For post petition, the analysis is slightly

3      easier.  Basically, when the goods are sold and the

4      proceeds hit the the debtors' account, that the

5      moment in time they're identifiable proceeds; and as

Rough Copy 12 22 08.txt

 6          such, they're Navarre's cash collateral and the
 7          section 363 kicks in and Navarre would be afforded
 8          the rights under the bankruptcy code.  Either way,
 9          the outcome is the same.  To the extent you have
10          your identifiable pre petition proceeds or your post
11          petition proceeds it's cash collateral and cannot be
12          used without Navarre's consent which they have not
13          asked for and we have not granted or without the
14          court order upon a motion and notice of hearing.
15          And they have not done that, either.
16              So basically, what we're left with is a DIP
17          order that does sufficiently establish that the
18          debtors aren't trying to take any -- that the DIP
19          lenders, sorry, are not trying to take any liens in
20          consigned goods.  But it does not, in our minds,
21          sufficiently establish how the proceeds will be
22          treated.  And the effect that we see it is that it
23          will enable the debtors to use cash collateral of
24          Navarre without consent, and in violation of the
25          provisions of the bankruptcy code.

                    COOK & WILEY, INC.

                                                    40

 1              What we would ask --
 2              THE COURT:  But the order doesn't say that,
 3          though; does it?  The order doesn't say they can use
 4          your cash collateral?
 5              SPEAKER 3:  The order does not say they can
 6          use our cash collateral, but what's going to happen
 7          is when the proceeds hits the debtors' accounts, the
 8          orders which give the DIP lender the lien on tall

                    Page 35

Rough Copy 12 22 08.txt

9      debtors' assets including the lien accounts is going

10      to in essence have that effect.   Upon information

11      and belief, the balances of the accounts are going

12      to be swept on a daily basis and used to establish

13      the daily barring base.   So those proceeds will then

14      be used to pay down the DIP lender's loan and they

15      will, in essence, be used.

16           THE COURT:   So what does your objection go

17      to; the cash management system that they've got in

18      place, or does it go to the DIP financing order?

19           SPEAKER 3:   Well, we don't have a problem

20      with the debtors obtaining their DIP financing.   We

21      think that's in the best interest for everyone.   We

22      would just ask that the order recognize that to the

23      extent that Navarre has a lien on the proceeds, that

24      it get afforded the proper treatment, and that those

25      proceeds get segregated in accordance with section

COOK & WILEY, INC.


41


1      363 C 2.

2           THE COURT:   Well, given the cash management

3      system they have in place, how are they going to

4      segregate that?   Because you're right.   I mean,

5      everything is going to be swept into the centralized

6      account and such.   But if there's a carve out for

7      goods that are not property of the estate, why can't

8      that just apply to the proceeds as well?

9           SPEAKER 3:   Meaning that those proceeds would

10      go into a separate account?

11           THE COURT:   No.   It would just be deemed to

12      be not property of the bankruptcy estate, and not

Rough Copy 12 22 08.txt

13          subject to the bank's loans.  Doesn't that solve the
14          problem?
15              SPEAKER 3:  I guess that solves the problem
16          as long as we don't -- as long as we can be sure
17          that we don't find ourselves down the road a month
18          or two from now and have there be insufficient cash
19          to pay those monies to the secured creditors in
20          liquidation scenario and basically have a situation
21          where the debtor hasn't already spent that money.
22          And that's the real concern.
23              THE COURT:  Okay.
24              SPEAKER 3:  So now just to address your
25          question on how it would work mechanically, I think
                         COOK & WILEY, INC.


                                                42


1           with respect to the pre petition -- the sales from
2           the pre petition goods that were on hand as of the
3           the petition date, as well as the sales that have
4           occurred post petition up until today, that's just a
5           number.  I would submit that you could just do a one
6           time payment into a segregated account and then
7           those funds are blocked and they're protected from
8           the debtors using them and from Navarre being
9           harmed.
10              With respect to sales going forward, we
11          understand that a is a little bit more challenging.
12          We're open to working with the debtor.  It would
13          seem to me, give ten technology today that they
14          could run an inventory report at the end of every
15          day, and whatever the dollar amount of sales for
                         Page 37

Rough Copy 12 22 08.txt

16        Navarre's goods are, just have those funds be wired

17        over into the segregated account before the sweep

18        occurs, and then there would be no harm.

19            THE COURT:   How are you paid right now.

20            SPEAKER 3:   Right now under the

21        consignment -- well, I'm not sure how they're

22        getting paid right now.   Prior to the petition date

23        the way it worked is they would sell the goods, and

24        then there would be periodic reporting on a weekly

25        basis, and then there would be payments that would

                    COOK & WILEY, INC.


                                                    43

1        follow the delivery of those reports.

2            THE COURT:   And is that still happening?

3            SPEAKER 3:   I don't know that it has happened

4        to the full extent.   I think there have been some

5        small payments received, but they're not in line

6        with the dollar amount of goods that have been sold.

7            THE COURT:   Okay.

8            SPEAKER 3:   But again, we would submit that

9        segregation of the funds is the best method, and the

10       method that's mandated by the bankruptcy code to

11       protect Navarre's interest in the cash collateral.

12           THE COURT:   Okay.   Thank you.

13           THE COURT:   Mr. Galardi?

14           MR. GALARDI:   Yes, sir.   Partially why I

15       thought we could resolve most of this was under the

16       Navarre agreement, the first thing I'd like to point

17       out is there is no obligation to segregate.   So

18       athough -- and we don't dispute the consignment.

19       Mr. fine Steen and I have already dealt with
                    Page 38

Rough Copy 12 22 08.txt

20          Panasonic.  So what we had proposed to Navarre, I
21          think we have no problem with the post petition.  We
22          give the weekly reports and although we give weekly
23          reports now and they get paid monthly we were going
24          to do what we do with Panasonic at the end of the
25          the week with the reconciliation pay with the

                         COOK & WILEY, INC.

                                                    44

1           proceeds and unwind the consignment.  And that sort
2           of takes care of the monitored centralized cash
3           manag,ement because even though the funds are
4           collected we pay them regularly, do a
5           reconciliation.  Any disputes that come back to the
6           court, we can unwind the post petition.  We need to
7           fix what the petition date is.
8                  Your Honor W respect to the pre approximate
9           petition that's where we have the biggest concern.
10          Clearly we sold goods prior to the bankruptcy.  And
11          some of those goods have not been paid for.  The
12          issue here is whether or not they actually have to
13          establish their burden or we establish a reserve for
14          that at this point we would object to the
15          establishment of a reserve.  Rather, they should
16          have to carry their burden.  As Your Honor knows,
17          one, whether we did a roll up or otherwise, those
18          proceed haves been in the account.  That account was
19          paid off in full and re borrowed.  So there is going
20          to be an argument of whether their lien attach order
21          they lost that lien by intermingling, and we
22          actually have to have a factual hearing with

                         Page 39

Rough Copy 12 22 08.txt
23      witnesses as to lowest common denominator if that's
24      the approach and whether those proceeds are still
25      their property.   Clearly the unsecured creditors'
                    COOK & WILEY, INC.


                                                      45

1      committee, as they would have with Panasonic last
2      hearing want to weigh in on that issue as to whether
3      they've lost the lien because of comingling and
4      centralized cash management.   Clearly, given that
5      they didn't require segregation of proceeds in our
6      agreement, clearly because we had a roll up and
7      clearly because we paid off our debts, there are
8      significant factual issues as to that.
9          So with respect to post petition, we have no
10     objection to going back to the petition date, doing
11     a weekly report and reconciliation and paying them
12     at the end of the week out of that.   That eliminates
13     sort to have administrative insolvency the end of
14     the day problem.   They don't have to hold the bag 30
15     days.   We should do that reconciliation and turn
16     over the proceeds.   With respect to the pre
17     petition, we oppose any request for them to get
18     adequate protection for pre petition.   We don't
19     think they've established the fact of the lowest
20     common denominator.   We'll gladly have a hearing on
21     whether or not those liens attached or whether those
22     liens are lost, and that money is simply property of
23     the estate as a result of events that have
24     transpired for the last 30 to 45 days.   But I think
25     from a DIP perspective we can clearly give adequate
                    COOK & WILEY, INC.
                        Page 40

Rough Copy 12 22 08.txt

46

1        protection in the form of weekly reports, and
2        turning over proceeds on a weekly basis subject to
3        reconciliation, with this court having authority if
4        there is a dispute about the reconciliations to come
5        back on an expedited basis to resolve any weekly
6        reporting or reconciliation issues.
7            THE COURT:   And that's how you handled it
8        with Panasonic?
9            MR. FOLEY:   That's exactly how we handled it
10       with Panasonic with everybody reserving their rights
11       to assert the pre petition claim is a secured claim.
12       And obviously, it's the least involvement by the
13       lenders because they don't want to have an argument
14       of conversion.   So if it turns out they can prove
15       it, the lenders will make the payment.   If it turns
16       out there is no liens, then it is property of the
17       estate.   And that eliminates a lot of the cost of
18       having the lenders subject to a conversion.   Nad
19       that's what we did with Panasonic with the
20       committee, Your Honor.
21           THE COURT:   All right.   Thank you.
22           MR. FEINSTEIN:   Just briefly, Your Honor.
23       Yes, I want to confirm the committee would be
24       supportive of the arrangement going forward to sell
25       down the remaining consigned inventory, to have a
                    COOK & WILEY, INC.

47

1        periodic reporting, and to turn over the proceeds of
                    Page 41

Rough Copy 12 22 08.txt

2    newly sold merchandise on a rolling basis.  But with

3    respect to the pre petition, we don't think that

4    Navarre has satisfied what will be a substantial

5    burden, and that they're not entitled to adequate

6    protection on that basis.

7             THE COURT:  All right.  Thank you.

8             SPEAKER 3:  Your Honor, I would like to note

9    with respect to the proposal post petition payment

10   of proceeds, we discussed this with the debtor late

11   last week and over the weekend I have not been able

12   to confirm with my client due to their

13   unavailability over the weekend as to whether or not

14   that would be acceptable, but I believe it would be.

15   That seems like a fair arrangement.  I would

16   certainly recommend it to them.

17             With respect to the pre petition, the seams

18   from pre petitioned goods, we would just note that

19   we did affirmatively tee this issue up in our motion

20   for adequate protection.  This is really the first

21   we're hearing that -- you know, that people would

22   need -- you know, need to respond to and determine

23   whether or not Navarre has carried its burden with

24   respect to identifying those proceeds.  We believe

25   at a minimum we've made a prima facie case on that

                    COOK & WILEY, INC.


                                              48


1    issue.  So we would submit that we have met our

2    burden there.

3             Notwithstanding that, we understand the fact

4    that everyone wants to get this order entered, and

5    that the committee may want some more time.  And we

Rough Copy 12 22 08.txt

6        would be willing to give additional time, perhaps in
7        the form of continuing the motion for adequate
8        protection as it relates to the pre petition
9        receivables until this court's next omnibus hearing
10       date; however, what we would like in the interim or
11       what we would request is that that sum of money just
12       get segregated and put aside pending the termination
13       so in the event we find ourselves in a liquidity
14       crisis one month from now we're not harmed because
15       we agreed to continue a hearing what we had already
16       kind of teed it up and properly noticed it, and no
17       one responded.
18            THE COURT:  All right.  Thank you.
19            The court will find that the proposal for
20       weekly reconciliations to provide adequate
21       protection to Navarre in connection with the post
22       petition DIP financing order.  With regard to pre
23       petition amounts, the court will continue the after
24       protection issue to the next omnibus state.  There
25       will be no requirement for the debtor to segregate
                      COOK & WILEY, INC.

                                                        49

1        funds, however.
2            SPEAKER 3:  Your Honor, if I may just have
3        one clarification:  To the extent that the motion
4        for adequate protection is continued with respect to
5        pre petition sales, and the the at the time or has
6        already responded, is there -- would there be an
7        expectation that there would be additional briefing
8        on the subject or could we just have that addressed
                        Page 43

Rough Copy 12 22 08.txt

```
 9        at the the next --
10            THE COURT:  Only if the parties want to have
11        additional briefing.  I will read what you file.
12            SPEAKER 3:  Okay.  Thank you.
13            THE COURT:  You'll need to be prepared to
14        present evidence, though.
15            SPEAKER 3:  Okay.
16            MR. GALARDI:  And Your Honor, that would
17        be -- the next omnibus hearing would be January 16th
18        for that issue?
19            THE COURT:  Correct.
20            MR. GALARDI:  And Your Honor, we did file an
21        objection.  We thought we had raised this issue,
22        obviously didn't do it as forcefully.  So we may
23        want to supplement it.  I'm sure the committee may
24        want to supplement that as well.  So I would expect
25        that would be the case.
                    COOK & WILEY, INC.


                                                    50


 1            Your Honor, I don't believe there are any
 2        other objections to the DIP.  And I don't believe
 3        there are any objections to our motion to file
 4        documents under seal.  So we would ask that Your
 5        Honor approve those, and then work on a revised
 6        order to address both the Navarre issue and the
 7        monitor's issue long the lines that I described to
 8        the court to make sure the language actually works
 9        for those purposes.  But we would ask Your Honor to
10        approve the financing and the motion to file the
11        documents under seal.
12            THE COURT:  Any party wish to be heard in
                            Page 44
```

Rough Copy 12 22 08.txt

13      connection with either matter?

14          SPEAKER 3:  One last point of clarification,

15      Your Honor.  Would this -- in connection with this

16      order, would that be -- would there have to be a

17      separate notice and hearing to approve a settlement

18      as it relates to the treatment of -- and payment of

19      a post petition sale.

20          THE COURT:  No.  We'll just include that in

21      the language of the order.

22          SPEAKER 3:  All right.  Thank you.

23          THE COURT:  All right.  It will be approved.

24          MR. GALARDI:  Thank you, Your Honor.

25          Your Honor, that -- I believe that, then,

                COOK & WILEY, INC.


                                                    51

1       takes us to matter 13 on the agenda for the 10 a.m.

2       hearing, which is the debtors' supplemental motion

3       to pay certain sales, trusts and other taxes.

4           Your Honor, as you may recall, on the first

5       day we got authority to pay various sales use an

6       other taxes.  We then determined because the timing

7       was a week later, perhaps, than we first ran that

8       budget there was an additional funding that we had

9       sought approval to pay.  The creditors' committee

10      had objected to that motion.  As Your Honor may

11      recall, that motion, among other reasons, asserted

12      that we should be authorized to pay sales use and

13      taxes because they were trust fund taxes, or there

14      were other reasons for paying those.  The committee

15      objected, and put us to our proof on trust fund

                        Page 45

Rough Copy 12 22 08.txt

16          taxes.    Again, we had said there were other grounds.

17                    After going through a long state-by-state

18          analysis with the committee, we agreed with the

19          committee on six states not being trust fund taxes.

20          And so, therefore, we had the authority with the

21          committee's consent to go pay all the other taxes.

22                    There's about six jurisdictions that are not

23          trust fund taxes.    And given the need for liquidity

24          that we were facing at this time, we have agreed

25          with the committee to not seek to pay those taxes

                         COOK & WILEY, INC.


                                              52


1          during this period of time.    Those jurisdictions are

2          Arizona under the Arizona statute 42-508; Arkansas

3          under the statute ACA 2652-501.    California we do

4          not believe is a trust fund state.    The District of

5          Columbia, which is 47-2002.    Hawaii, which is HRS

6          237-13; and Michigan which is MCLA 205-52.

7                    Your Honor, I read those into the record

8          because what we have done with the commitee is

9          entered into a stipulation that essentially provides

10         for the following:    That we are authorized and

11         indeed have paid the taxes with respect to the other

12         jurisdictions; that we and the committee agree that

13         the taxes for those jurisdictions under the statutes

14         that we have listed which we believe are the

15         statutes by which the taxes would be due and payable

16         are not trust fund taxes.    We're asking Your Honor

17         to enter the stipulation that says that they are not

18         trust fund taxes.

19                    And to give Your Honor an idea of why that's
                              Page 46

Rough Copy 12 22 08.txt

20          important:  One, if it's a trust fund tax, it's not
21          property of the estate.  So we want to make sure
22          we've covered.  Also, because a lot of these taxes
23          have fiduciary obligations behind them, we want to
24          be ordered not to pay them, and Your Honor to make a
25          finding that they're not trust fund taxes because if

                         COOK & WILEY, INC.


                                                    53

1           they were, we have to pay them.  So we entered into
2           a stipulation where we're asking Your Honor to make
3           a finding, along with us and the committee, that
4           they're not trust fund taxes.  At the same time, the
5           stipulation essentially provides a negative notice
6           to those jurisdictions with a right to challenge
7           that.  And so it's an interim finding based upon our
8           review of this statute that these are not required.
9           They're not required to be taken out of the
10          proceeds.  There are various reasons in each of
11          these statutes that we've come to the same
12          conclusion as the committee that they're not trust
13          fund taxes.  The stipulation is that we will not be
14          paying those, but we give the jurisdictions of the
15          notice provision.  And if they want to take the
16          position that they are trust fund taxes and
17          therefore not property of the estate, they come
18          back.  So it's not that we're asking Your Honor to
19          make a final ruling on that.
20              With that stipulation, Your Honor, we would
21          resolve the committee's objections.  The money would
22          be held in advance subject to further order of the

                         Page 47

Rough Copy 12 22 08.txt
23          court if Your Honor says they're trust funds then
24          they can be paid.  And then we've reserved our right
25          as the debors.  If there were other business
                        COOK & WILEY, INC.


                                                54


1           reasons -- for example, if the taxes, penalties,
2           etcetera, are greater than our borrowing under the
3           DIP, we've still reserved our rights that there may
4           be other reasons which were set forth in our first
5           day motion.  But at this point to get to the next
6           stage of this case at the beginning of January,
7           we've agreed with the committee not to pay these
8           taxes.  And that's what our stipulation provides.
9                That resolves the only objection that we know
10          of to this motion.  We'd ask Your Honor to approve
11          it.  We can submit a stipulation that we and the
12          committee have been working on to authorize the
13          payment of all other taxes and not pay these taxes
14          subject to Your Honor's authority, and then finding
15          that they're not trust fund taxes, and then putting
16          it out on negative notice.
17               THE COURT:  What was the notice period that
18          you'll be giving for the jurisdictions?
19               MR. GALARDI:  I think we set it up for
20          January 16th hearing, so it's January 6, Your Honor,
21          that they would have to object by.
22               THE COURT:  And that notice would go out
23          when?
24               MR. GALARDI:  If Your Honor enters the order
25          today, we would get it out the next day.  So it's --
                        COOK & WILEY, INC.
                            Page 48

Rough Copy 12 22 08.txt

55

1          if we get the stipulation approved, we'd give notice

2          of the stipulation and serve it on them on the

3          22nd -- 23rd.

4                    THE COURT:  All right.  Thank you.

5                    MR. FEINSTEIN:  Your Honor, I just want to

6          make it clear that this isn't simply our agreement.

7          We wanted a stipulated order for the reasons that

8          Mr. Galardi articulated, because it's opinion our

9          consistent view that trust funds can be paid out

10         because they're not property of the estate.  But

11         otherwise, we were opposed to the payment of any pre

12         petition taxes, including priority taxes.  And in

13         regard to the other arguments about fiduciary

14         responsibilities, criminal and so forth, it's our

15         view that the automatic stay prohibits efforts to

16         collect these taxes directly or indirectly, and that

17         there is no basis at this point on the record shown

18         to pay these pre petition taxes and the stipulated

19         order would reflect that.

20                    THE COURT:  All right.  Thank you.

21         Mr. Galardi, I would like to extent the notice

22         period.

23                    MR. GALARDI:  We were just going to say that.

24                    THE COURT:  Because of the holidays and such

25         to the 13th, give the jurisdictions an extra week.

                    COOK & WILEY, INC.

56

1                    MR. GALARDI:  That's fine, Your Honor.  We

Rough Copy 12 22 08.txt
2      were just mentioning with the holiday we think
3      that's the right thing.  So we'll change the
4      stipulation to the 13th.
5              THE COURT:  All right.
6              MR. GALARDI:  Your Honor, again, the only
7      burden will be ultimately -- I assume if they brief,
8      we'll probably want to respond F. that's fine with
9      Your Honor with that schedule, it's perfectly fine
10     with us.
11             THE COURT:  That's fine with Maine I realize
12     that.
13             MR. GALARDI:  Thank you, Your Honor.  We will
14     finalize that stipulation and make that change and
15     submit to it resolve that issue.
16             THE COURT:  With that change, it will be
17     approved.
18             MR. GALARDI:  Thank you.  Your Honor, the
19     next motion on the agenda was the committee's motion
20     for privileged information.  So I'll turn the podium
21     over to Mr. fine Steen.
22             THE COURT:  All right.
23             MR. FEINSTEIN:  Thank you, Your Honor.  We
24     filed the -- what has become a customary motion now
25     in light of the amendment to section 1102 B to
                    COOK & WILEY, INC.


                                                   57

1      provide some limitations to what would otherwise be
2      an open ended statutory obligation on the
3      committee's part to share all information with
4      creditors at large.  There is a protocol that dates
5      pack to the rev could case that's been followed by
                        Page 50

Rough Copy 12 22 08.txt

6          judge Tyson, movie gallery and other courts around

7          in the country.  In response to the motion, we

8          received informal comment from the debtor, informal

9          comment from the office of the United States trustee

10         and one written objection.

11             The debtor -- and we have a couple of wording

12         issues that we may deal with after the hearing,

13         nothing that I think I would view as material, but

14         tinkering with one or two sentences -- with respect

15         to the comments received by the office of the United

16         States trustee, through inadvertence that I'll take

17         responsibility for, the provision in the order

18         providing for creditor challenge to with holding of

19         information was omitted.  We've included it in a

20         black line copy that I can hand up to the court.

21         And it follows the rev co-protocol.  We understand

22         that that resolves the concerns of the office of the

23         United States trustee.  That leave it is filed

24         motion of the United States, the IRS.  I want to

25         address the several arguments in there briefly.

                      COOK & WILEY, INC.


                                                            58

1          First, with the observation that the IRS is not a

2          beneficiary of section 1102 B.  This was a provision

3          intended to deal with information flow to general

4          unsecured creditors.  With that said there, are

5          several points raised by the IRS; one which weave

6          dispensed with is the notion of a challenge to the

7          with holding of information with the additional

8          language we've put back in.  We don't view that as

Rough Copy 12 22 08.txt

```
9      being a live issue any more.  So that leaves the
10     arguments that remain which are, number one, that
11     the information protocol, according to the IRS,
12     creates some new debtor creditors committee
13     privilege to unilaterally with hold information; and
14     I guess a related argument is if the information is
15     to be with held, the IRS wants us to maintain a
16     privilege log.  Addressing both of these points:
17     First, there is no new or different privilege that
18     is being established here.  The rev could protocol
19     makes it very clear that in order for a committee to
20     function, it simply can't be required to turn over
21     all information to all creditors on demand;
22     otherwise, a creditors committee would never get any
23     information and committees couldn't perform their
24     statutory functions.  So the rev co protocol has
25     developed a methodology for dealing with what is
```

COOK & WILEY, INC.

59

```
1      already a fairly conventional definition of
2      confidential information, and a definition of
3      privileged information that follows attorney-client
4      and attorney work product privilege.  There are no
5      new privileges or categories of information being
6      created here, but simply an approach to dealing with
7      these existing categories of information in a
8      sensitive way that allows the Chapter 11 process to
9      function.  So we don't view the argument that there
10     is an attempt to create a new debtor committee
11     privilege as having any merit.  It's simply
12     factually untrue.
```

Rough Copy 12 22 08.txt

13            With respect to the management of the

14     information, what the IRS has asked for is if

15     information is to be withheld, that a log of

16     confidential information be maintained.  Your Honor,

17     it is -- it would be a tremendous burden on the

18     process for either the debtor or the committee or

19     both to keep a log of every communication between

20     the debtor and the committee, between the committee

21     and its counsel, and otherwise.  As it is, it's

22     difficult doing time in six minute increments, but

23     to stop and make a log of every communication ever

24     had would grind the process to a halt.  We've got

25     very important and challenging work to do in this

                 COOK & WILEY, INC.


                                              60


1      case and in other cases.  And the issue of a log

2      has, to my knowledge, never been raised in the three

3      years since Bapsipa was enacted.  And we would

4      oppose -- and grafting onto the revco protocol an

5      additional requirement that would really bog down

6      the process.

7            The last argument raised by the IRS is

8      that -- is a criticism of the committee's website.

9      Granted, it's not therefore amusement or

10     entertainment.  It's therefore information.  And it

11     does have the essential information regarding what's

12     on the court's docket, the major matters of the

13     case, calendar, deadlines for filing a claim.  It's

14     not clear what else the IRS would like to see in the

15     website.  We're happy to take suggestions.  But we

                 Page 53

Rough Copy 12 22 08.txt

16          do think that what's on there is consistent with the

17          rev could protocol.  We have also counsel's contact

18          information in case creditors have questions, which

19          is also in the revco protocol, so that if

20          information that a creditor wants to letter about a

21          case isn't found on the website, they can always

22          call me or my colleagues and we would answer it.  So

23          we would ask that that objection also be over ruled.

24          Thank you.

25                    MR. GALARDI:   Your Honor, part of the
                    COOK & WILEY, INC.


                                                    61

1          debtor's perspective -- and we join the committee

2          and we're fine with U.S. trustees -- we have to

3          remember we still are an SEC reporting company.  I

4          think that cannot be lost in the information that we

5          give.  We've been struggling with the committee on

6          confidentiality agreements.  They have agreed to

7          keep everything confidential.  And frankly, with the

8          kind of massive material and the timing of all of

9          this, we don't stamp everything confidential.  We

10          treat it as confidential.  And I'm sure Your Honor

11          from practice understands that if we had to sit

12          there and stamp, review, and say confidential,

13          highly confidential.  So we're comfortable working

14          out our issues with the committee.  But given that

15          we are a public company -- though our stock is not

16          still listed -- it's still a concern for this board.

17          So we agree with the committee that we can do what

18          we can do here, but it would be an incredible burden

19          to make us stamp everything, give it to the
                    Page 54

Rough Copy 12 22 08.txt

20       committee.  It would just kill the discussions,
21       which -- as Your Honor is aware of the time frame --
22       have to take place on an expedited time frame, and
23       cannot be slowed down, because it would be a
24       detriment to all of the unsecured creditors.  But we
25       will provide as much information as we can to the
                         COOK & WILEY, INC.

                                                      62

1        committee on that.
2               THE COURT:  All right.  Thank you.
3               SPEAKER 3:  Good afternoon.  Richard Stein on
4        behalf of the Internal Revenue Service.  I think the
5        major reason -- well, I know the major reason I
6        filed this objection is that as the initial order --
7        proposed order stood, it was absolutely no provision
8        for any type of review or appeal from a decision by
9        the committee and/or the debtor that something was
10       confidential, and that -- or privileged, and,
11       therefore, go away.  Don't bother us.  Nobody can
12       review it.  It was a unilateral act, and that is --
13       was not contemplated by they referred to as the rev
14       could protocol and didn't seem to exist in any of
15       the large cases since rev co-that had been reported.
16       The -- I do have a problem -- I understand the
17       requirements that secrecy -- well understand the
18       requirements of secrecy and confidentiality both in
19       terms to have SEC and clearly in terms of
20       information that I obtain through my position with
21       the Internal Revenue Service.  I think, however,
22       that what we have in this situation -- and maybe
                         Page 55

Rough Copy 12 22 08.txt

23        we're arguing semantics -- is a difference between

24        information that goes to the committee and an

25        unsecured creditor makes a request, which I view as

COOK & WILEY, INC.

63

1         something akin to an informal discovery request.

2         And the obligation of the party refusing to disclose

3         information to identify the information in the type

4         of information that they are refusing to disclose so

5         that there can be some sort of rational basis for

6         analyzing the alleged confidentiality or the alleged

7         privilege.  I mean, we're not dealing here with a

8         parent say together a child, no, you can't do that.

9         Why can't row do it?  Because I said so.  Well,

10        you've got to have some sort of give and take, and

11        some sort of assertion of a privilege.  I mean,

12        Judge Payne in the Infineon case went into a very

13        long -- which is cited in my objection -- went

14        through a very long description of what the -- what

15        type of -- when one is asserting either a privilege

16        or refusing to disclose what is asserted to be

17        confidential information, the type of description of

18        the information that is being with held so that

19        there can be some sort of identification.  Now, in

20        the revised -- or the draft of the revised order

21        that I was provided shortly before 9 30 this

22        morning, there is language in that order that says

23        that the committee, on page 5 of the order it says

24        nothing here in shall be deemed to preclude the

25        requesting creditor from requesting or the committee

COOK & WILEY, INC.
Page 56

Rough Copy 12 22 08.txt

64

1       objecting to such requests that the committee
2       provide the requesting creditor along -- I believe
3       that's a typo and it should be a log -- or other
4       index of information specifically responsive to the
5       requesting creditor's request that the committee
6       deems to be confidential or privileged. so they're
7       saying, well, we could or we couldn't.  But that's
8       not they need to.  In discussions with the
9       committee's counsel or cocounsel, there was some
10      question of the revised order deals with the
11      creditor asking and then the creditor and the
12      committee and the debtor get together and have a
13      discussion.  And then at some point if we can't get
14      something resolved, we come to the court and we say,
15      Your Honor, we want the information, but we don't
16      know what information they have.  The creditor is
17      going to come to you and say we don't know what
18      information they have that they're not giving us
19      because they haven't given us a description of what
20      it is.  So all I think that is required is that when
21      the denial -- when there is a denial of the
22      disclosure of information, that the type of
23      information -- if it's a document, that there be a
24      description of the document provided the authority
25      or the privilege or the assertion of
                COOK & WILEY, INC.

65

1       confidentiality, why it is, just like we were in any

Rough Copy 12 22 08.txt

2      formal type of discovery situation.  I think that

3      that's -- that's imperative.

4            Now, with respect to my last objection, I'm

5      not the only person who ever has raised in the large

6      context of these type the fact that what the

7      committee -- when you read the motion and the

8      proposed order absent any kind of court review which

9      now has been resolved, and absent some sort of

10     maintenance and provision for a description of the

11     information -- a general description of the

12     information that is being with held so that, you

13     know, if they tell me it's entirely possible that

14     the -- if you assert the attorney-client privilege

15     and you have some description of -- a general

16     description, no problem.  But if you just say it's

17     privileged or it's confidential, there's no way of

18     anybody analyzing it.  But I'm not the only one who

19     has ever stated that what they're proposing on their

20     website is simply that which is available on the

21     court's C M E C F filing.  That's all I was saying

22     is that the way the motion and the proposed order

23     was initially proposed, it's:  It's we're not going

24     to give you anything.  And the website is giving no

25     more information than what's already available.

                   COOK & WILEY, INC.


                                                    66

1            THE COURT:  What do you want on the website.

2            ATTORNEY1:  I don't want anything on the

3      website.  What I really want is perhaps the

4      objection was inartfully drafted.  Perhaps I

5      shouldn't have had a number 7, and simply included

Rough Copy 12 22 08.txt

6        that in my -- in paragraphs five or paragraph six

7        where I'm talk act the maintenance of privilege and

8        the opportunity for judicial review.  It's just that

9        the committee says what we -- you know, everything

10       that is given to us is confidential because when you

11       read the the definition of what constitutes

12       confidential information, it's anything that's

13       non-public.  Well, the only thing that is are

14       non-public are obviously sale prices, stuff readily

15       available through the media, or as what was pointed

16       out to me by co-counsel for the creditors committee

17       is stuff that's on the court website.  Well, now

18       they're giving no more than that.  That's all I was

19       saying.

20            THE COURT:  All right.  I understand.

21            SPEAKER 3:  But I think that there is clearly

22       a need for some sort of description for either

23       privilege --

24            THE COURT:  Now there is a provision, though,

25       for creditor challenge, as I understand, in the

                  COOK & WILEY, INC.


                                                       67


1        black line version.  And can't we take care of the

2        description issue if there is a challenge on a

3        case-by-case basis?

4            ATTORNEY1:  Well, I think we can.  I think --

5            THE COURT:  Wouldn't that be more appropriate

6        than putting it into this order?

7            ATTORNEY1:  Well, it's in this order in that

8        -- it's sort of in the order; and then once again,

Rough Copy 12 22 08.txt

```
 9        sort of not in the order at the discretion of the

10        committee or the debtor in that nothing in here

11        shall preclude the requesting creditor from asking

12        the committee to provide.  It doesn't say that the

13        committee has got to provide it.

14            THE COURT:  No.  But if they don't, can't the

15        creditor come to me, then, and say we want you to

16        provide it in this case because we have a specific

17        need for it.

18            ATTORNEY1:  But how do I know?  What I'm

19        saying is, yes, any creditor could certainly come to

20        Your Honor and say, the committee has said we can't

21        provide you information because it's confidential.

22        And you say to me, Mr. Stein, what information is it

23        that you are asking for that they have refused to

24        disclose to you?  Give me a description of it.  Your

25        Honor, I have no idea what information it is, or a
```

COOK & WILEY, INC.


68


```
 1        description of the document because they haven't

 2        given that to me. that's all I'm saying.  If there's

 3        going to be judicial review of a decision, then

 4        there needs to be some sort of description of the

 5        item that is not being disclosed so that Your Honor,

 6        as well as the party, can analyze whether or not

 7        there may, indeed, be a very valid assertion there,

 8        and then there is no need.  But if you don't have

 9        that description, then initially the creditor can't

10        make the analysis, and certainly the creditor has no

11        ability to articulate to the court what document it

12        is that they're asking for because it hasn't, even
```

Rough Copy 12 22 08.txt

13          in the most general terms, been described.

14                    THE COURT:   Okay. thank you.

15                    MR. FOLEY:   Thank you, Your Honor.

16                    MR. FEINSTEIN:   A couple of points, Your

17          Honor.   The rev co-protocol language which we have

18          now included does say that the requesting creditor

19          can ask for a lot.   Your Honor's suggestion of a

20          case by case approach which is in the rev could

21          protocol really makes the best sense because if you

22          think about it if a creditor asked me for a log with

23          respect to Navarre, I would have three emails and I

24          attachment.   If a creditor asked for everything

25          regarding the DIP financing, I'd have to shut down

                         COOK & WILEY, INC.


                                                       69


1           all of our work for the next week and try to create

2           a log, which is, you know, the sender, the

3           recipient, the the subject matter, and so forth.   It

4           would be unworkable.   So this approach allows for

5           the committee in the first instance to decide

6           whether or not that's feasible.   If the committee

7           says no, the creditor has the right to come to you,

8           to put the shoe on the other foot would really

9           create an undue burden on the committee, that to ask

10          for Your Honor for relief from an obligation and a

11          court order to create a log.

12                    The other thing I would note is the citation

13          to the Infineon case.   It's a pre Bapsipa case; but

14          more importantly, it's an actual litigation case --

15          two parties to a litigation fighting over Rule 26.

                         Page 61

Rough Copy 12 22 08.txt

16        We're in a much different environment where, you

17        know, under 1102 we're supposed to provide

18        information.  And we simply don't think that the

19        Rule 26 structure and privilege log applies.

20              THE COURT:  All right.  Thank you.  The court

21        also doesn't think that the Rule 26 structure

22        applies, just the give and take with the committee

23        has to do in connection with a Chapter 11 case

24        doesn't lend itself to that kind of a procedure.

25        And the committee necessarily has to have access to

                    COOK & WILEY, INC.


                                            70

1        information that is going to be confidential and

2        kept that way.  I'm very familiar with the protocol,

3        and the court will approve it as amended.

4              MR. FEINSTEIN:  We'll submit a memo.

5              THE COURT:  And the objection of the Internal

6        Revenue Service is overruled.

7              MR. GALARDI:  Thank you, Your Honor.  Moving

8        to matter number 15 on the agenda, it's the motion

9        for relief and the automatic stay by U.S. Signs.

10       I'll turn the podium to them.  Mr. Frederick will be

11       handling that.

12             THE COURT:  All right.  Thank you.

13             SPEAKER 3:  Good morning, Your Honor.

14       Richard Hudson on behalf of US Signs.

15             Your Honor, this is a motion for relief from

16       the automatic stay.  Just a little background, Your

17       Honor:  US signs is a company out of Texas.  It did

18       some work with the debtor, Circuit City, and has a

19       store in New Jersey.  A little background on the
                    Page 62

Rough Copy 12 22 08.txt

20        issue:  They supply labor and materials to the
21        debtor.  As you know, 362 prevents the filing or
22        creation of a lien on the property of the debtor
23        once the filing occurs.  Now, there is an exception
24        to this which if the -- based on the the lien
25        statute of the estate, if the filing occurs relates
                    COOK & WILEY, INC.


                                                    71

1         back to the first supplied material, is not deemed
2         to violate the stay.  Based on our reading of the
3         New Jersey statute, it does not relate back; and
4         therefore, we want to be cautious and go ahead and
5         file and ask for relief.  Now, in the first
6         instance, it's important for us to understand that
7         Circuit City is not the owner of this property.  Our
8         they to have a leasehold interest.  However, for all
9         intents and purposes we're not sure whether or not
10        by the very fileing of the bankruptcy it terminated
11        that lease; and therefore, it has a -- they
12        terminated their interest in that property.  Also,
13        the second thing is the nature --
14              THE COURT:  Well, filing this bankruptcy
15        doesn't terminate a lease, if it's a lease the
16        debtor would have a right to either assume or reject
17        the lease.
18              SPEAKER 3:  That's my second point, Your
19        Honor.  From my understanding, the debtor very well
20        may be rejecting this lease.  As far as we know.  I
21        have not seen this on the list of -- based on the
22        the debtor's filings to assume this particular
                    Page 63

Rough Copy 12 22 08.txt

23          property.  For all we know, this lease will
24          terminate by itself by the end of December.
25          However, in either case, it would be based on the

COOK & WILEY, INC.


                                                    72


1           terms of the lease.  And I'm not sure what the terms
2           of the the lease are.  I don't believe the lease was
3           ever recorded.  Our primary interest in filing this
4           lien is not simply against the leasehold interest.
5           We plan on arguing that the landlord may have
6           benefited from the labor and materials supplied to
7           this property, as well.  So our claim is not solely
8           against the leasehold, but the freehold estate as
9           well.  And that's an argument we plan on making in
10          the appropriate circuit court in New Jersey.  The
11          right of U.S. signs to assert this is clear on that
12          point.
13              Now, Your Honor, also the -- it's also
14          important to understand that the the importance of
15          this filing -- of pre serving our rights under New
16          Jersey law, we have 90 days to file I believe the
17          the last filing -- the last supply of material was
18          October 3rd.  We have until the beginning of the
19          year to file our -- to file our lien, as well as to
20          file a complaint to establish the validity of the
21          lien.  As I've stated in my motion, we are not
22          attempting to for close on this property or to sell
23          the property in any way.  We're seeking to pre serve
24          our rights and pre serve our rights only.  And it's
25          under New Jersey law in which we can establish not

COOK & WILEY, INC.
Page 64

Rough Copy 12 22 08.txt

73

1        just the validity and priority of the lien, but the
2        amount of the lien as well.  It's U.S. sign's
3        priority to -- at least our prerogative to do so.
4        And the debtor has a right to challenge that.  So
5        does the landlord, in which case we can argue --
6        make our case the landlord may have benefited from
7        the materials as well.
8                THE COURT:  Do you intend to put on evidence?
9                SPEAKER 3:  Your Honor, we do intend on
10       putting on evidence.
11               THE COURT:  Today?
12               SPEAKER 3:  Not today.  Not today.  Our
13       interest in this proceeding here is to seek -- show
14       that cause exists to lift stay so that we can pursue
15       our rights under New Jersey law in the appropriate
16       court in New Jersey.  It's a two-step process.  We
17       file the lien.  We then file our complaint to
18       enforce that lien and to establish the validity of
19       the lien in state court.
20               THE COURT:  You want to assert a mechanic's
21       lien?
22               SPEAKER 3:  Exactly.  And that's where the
23       debtor will be put on.  Now, the debtor, as well as
24       the landlord, will be free to challenge that.  They
25       can challenge whether or not we have a valid lien
                     COOK & WILEY, INC.

74

1        once the lien is filed.  They can then challenge
                     Page 65

Rough Copy 12 22 08.txt

2       whether or not the amount of that lien is

3       appropriate.  They can also challenge whether or not

4       the -- challenge the priority of the lien, as well.

5              THE COURT:  Well, don't you have to

6       establish, in order to get relief from the stay, one

7       of the elements under 362-D to either cause, or one

8       of the other elements to show that you have the

9       title to relief?

10             SPEAKER 3:  Yes, Your Honor.  And we do

11      believe cause exists.

12             THE COURT:  What is the cause?

13             SPEAKER 3:  Well, we -- right now, as far as

14      we know, this may not be the property of the

15      debtor's estate, as well as the fact that we're not

16      seeking a lien solely on the property of the

17      debtor's estate.  It's also on the freehold estate

18      as well.

19             THE COURT:  But I'd have to have evidence of

20      that, wouldn't I, in order to rule on that?

21             SPEAKER 3:  Well, we believe that merely

22      making that statement entitles us to at least

23      establish that in the state court proceeding.  And

24      in doing so, be able to -- the debtor can certainly

25      make that argument in the state court proceeding

                      COOK & WILEY, INC.


                                                     75


1       that we're not entitled to a lien, but we to believe

2       that at that point that's the proper proceedings to

3       handle that matter.

4              THE COURT:  All right.  Thank you. let me

5       hear from the debtor.

                      Page 66

Rough Copy 12 22 08.txt

6          SPEAKER 3:   Good morning, Your Honor.   Ian

7     Fredericks of Skadden Arps on behalf of the debtors.

8          I think -- I think first I'd just like to

9     point out I believe under the bankruptcy code this

10    would just be a preliminary hearing.   And the court

11    is free to schedule a final hearing, which the

12    debtors would not have an objection to, on the 16th.

13         I think the second point is factually

14    everything you just heard is not one supported by an

15    affidavit and there's no evidence before you.   We

16    don't believe that U.S. signs has established cause

17    to lift the stay.   All the information I have is

18    that this lease has not been rejected yet; and so,

19    it still is property to have estate; thus, by them

20    filing a mechanic's lien against the property would

21    directly impact the estate.   Frankly, we just don't

22    feel that cause has been established, and thus the

23    motion should be denied.   If the movement would like

24    to move it over to January 16th, we're certainly

25    open to doing that.

                    COOK & WILEY, INC.


                                                       76


1          THE COURT:   Thank you.   Do you wish to move

2     it to January 16 so you can have an opportunity to

3     put on evidence.

4          SPEAKER 3:   Your Honor, we would love to do

5     that but the issue is by January 16th our lien

6     rights to file this lien would expire.

7          THE COURT:   I can't grant your motion today

8     because I don't have any evidence.   So you have an

Rough Copy 12 22 08.txt

```
 9        opportunity -- you can -- either I can deny it
10        today, or I can move it to a final hearing on the
11        16th.
12                SPEAKER 3:  We'd love to present evidence at
13        that time; however, as I said, our lien rights and
14        my client will be irreparably harmed by doing so.
15        We do believe that -- we've established that even
16        though it's a leasehold estate, the owner possibly
17        could have benefited from this, as well.  And had we
18        known that we were required to file an affidavit to
19        that effect, we very well may have con so.  However,
20        we didn't believe this was the proper forum to do
21        so.
22                THE COURT:  All right.  So are you askinging
23        me to continue it to the 16th or not?
24                SPEAKER 3:  Yes, Your Honor.
25                THE COURT:  Ing oh.  We'll carry -- have a
                        COOK & WILEY, INC.


                                              77


 1        final hearing on the 16th.
 2                Do you wish to be heard?
 3                SPEAKER 3:  Your Honor, actually, the
 4        landlord, the missing piece, I'm here on behalf of
 5        north playing field, BF, LLC.  And on Friday, we
 6        filed a motion to compel those post petition
 7        obligations and set that for 1-16 at 10.  So I
 8        believe the momentum of what's happening here to
 9        have this continued to a final hearing on 1-16 at 10
10        would address what we filed Friday, December 19th
11        with regard to this same property and US sign's
12        motion, and other mechanic's liens, candidly,
```
Page 68

Rough Copy 12 22 08.txt

13    against those properties could all be addressed

14    properly then.

15        THE COURT:  I'm going to set it down for the

16    16th.  If for some reason this becomes moot between

17    now and then, you can always withdraw it.

18        MR. FOLEY:  Your Honor, the last item on the

19    morning agenda is item number 17, which is our

20    motion to reject certain executor contracts.

21        THE COURT:  We've already resolved number 16

22    earlier when we heard the.

23        MR. FOLEY:  The Navarre matter.

24        THE COURT:  The DIP financing.

25        MR. FOLEY:  That's correct, Your Honor.  This

COOK & WILEY, INC.

78

1    is our motion to reject certain executory contracts

2    with executive employees -- former executive

3    employees, Your Honor.  There's been a couple of

4    objections filed.

5        There is one individual who would be

6    represented by Mr. Shaia, who called earlier this

7    week -- last week asking for additional time to file

8    a response.  We've agreed as to Patrick Longgood,

9    who was one of the counter parties to a contract in

10    the motion to provide Mr. Shaia until December 29th

11    to file a responsive pleading if he so chooses, and

12    that this motion as to that individual will go

13    forward on January 16.

14        Your Honor, I guess we're requesting relief

15    -- it's pretty straightforward -- in the motion.  I

Page 69

Rough Copy 12 22 08. txt

16          guess it's probably better to let the objectors

17          raise their arguments first.  I don't think there's

18          any dispute as to the fact that the two agreements

19          in question are pre petition.  To the extent they

20          are executory -- and we don't think they are -- we

21          think it's proper to reject them and effectuate the

22          prepretition claim status from any breach resuling

23          from rejection under 365 G and 502 G 1.

24               But if Your Honor concludes that these are

25          not executory contracts and can't be rejected,

                         COOK & WILEY, INC.


                                                        79


1           they're still pre petition contracts.  And a breach,

2           to the extent it gives rise to any claim at all,

3           it's a pre petition claim, which is really what

4           we're trying to seek to establish here, Your Honor.

5                THE COURT:  All right.  Very good.

6                SPEAKER 3:  Good morning, Your Honor.

7                THE COURT:  Good morning.

8                SPEAKER 3:  Actually, good afternoon.  I

9           apologize.  Mike Miller with the law firm of

10          Christian Barton on behalf of two objecting counter

11          parties to the contracts.  One is Mr. Jeffrey

12          Leopold, who is in the courtroom with me.  And the

13          other gentleman is Mr. James Wimmer, who is also in

14          the courtroom with me today, Your Honor.  Thank you

15          for your time.

16               Before I forget, Mr. Foley indicated that to

17          the extent that the court determines that the

18          contracts are not executory, they're still, under

19          their view, pre petition contracts such that they

Rough Copy 12 22 08.txt

20          would be pre petition claims.  And that is not in
21          their motion, Your Honor.  To the extent that the
22          court determines they are not executory today
23          subject to rejection, I would like to have the
24          opportunity at a later date to address those issues
25          with respect to whether or not they're post petition

                    COOK & WILEY, INC.

                                        80

1           obligations such as administrative claims because
2           there are payments that come due under those post
3           petition.
4                Your Honor, we submit that the contracts are
5           not executory.  As you know, a contract is executory
6           is performance is due to some extent on both sides.
7           This circuit in the Luberzal case adopted the
8           country man test, which states that a contract is
9           executory if the obligations of both the debtor and
10          the non debtor party are so far unperformed that the
11          failure of either party to complete the performance
12          would constitute a material breach excusing the
13          performancy of the other.  Here we believe that
14          Mr. Leopold and Mr. Wimmer's contracts are not
15          executory.  Mr. Leopold's contract is actually a
16          severance agreement.  He was terminated effective
17          July 18th by agreement with Circuit City and it was
18          a severance agreement.  And that contract is
19          attached as an exhibit to my objection on be after
20          of Mr. Leopold.  And there is not one single
21          obligation that Mr. Leopold has to perform.  The
22          only remaining obligations under that contract are

                    Page 71

Rough Copy 12 22 08.txt

23          the debtor's obligations to continue to make

24          severance payments.  He's entitled to an additional

25          six months, roughly 55 thousand dollars in severance

                    COOK & WILEY, INC.


                                                   81


1           payments.  But there is no obligation of Mr. Leopold

2           such that non performance would constitute a breach.

3           There isn't even non compete obligations under that

4           agreement.  Mr. Leopold's only obligation was to

5           give the debtors a release of any and all claims,

6           which he has done.  So there are no obligations on

7           behalf of Mr. Leopold.  And it's very, I believe,

8           cut and dry under the country man test that it's not

9           executory, and then there for not subject to

10          rejection.  To the extent that there are additional

11          payment that is come due post petition, we can argue

12          for another day if Your Honor pleases as to whether

13          or not they're pre petition or post petition subject

14          to an administrative expense claim.

15               Your Honor, we also submit that Mr. Wimmer's

16          employment agreement.

17               THE COURT:  If it's not a contract, then he

18          would be a creditor, right?

19               SPEAKER 3:  He would be a creditor, correct,

20          Your Honor.  The question is when the payments

21          become due, and whether they're post petition

22          obligations or pre petitionn obligations.  But

23          you're right.  It's not -- it wouldn't be an

24          executory contract, he would be a creditor.

25               THE COURT:  And just help me.  What is the

                    COOK & WILEY, INC.

Rough Copy 12 22 08.txt

82

1      argument that says that it would possibly be a

2      post-petition obligation if it was an agreement that

3      was entered into pre petition?

4           SPEAKER 3:   There are cases that suggest that

5      post petition payments, even though they are part of

6      a pre petition contractor obligation, if the

7      payments come due post petition, those payments can

8      be an administrative expense claim.

9           THE COURT:   That's what you would like the

10      opportunity to agree.

11           SPEAKER 3:   Your Honor, I would.   And Your

12      Honor, on the expedited nature to have relief

13      requested, this was filed on a Friday night.

14      Objections were due the following Thursday.   I

15      didn't get it until Tuesday, frankly.   I know there

16      are a number of employee -- former employees in the

17      courtroom that actually didn't get served with the

18      rejection motion until after the deadline to

19      respond.   It just so happens that Mr. Wimmer and

20      Mr. Leopold contacted me prior.   I'm -- my office

21      monitors all the pleadings that are filed in the

22      case.   And we saw it and filed an objection as

23      quickly as we could within the time frame as

24      required.

25           Your Honor, we also submit that Mr. Wimmer's

                    COOK & WILEY, INC.


                                               83

1      agreement which is an employment agreement and they

Rough Copy 12 22 08.txt

2    also seek to reject, is termination letter that was

3    dated November 7th, three days before the bankruptcy

4    filing.  Mr. Wimmer, after service in the Air Force,

5    started employment with wards in many 1968 at the

6    age of 22.  He is the longest tenured employee.  He

7    has been with the company for almost 40 years.  It

8    will be 40 years in May of 1999.  As a result of

9    his -- or pardon me, May of 209.  As a result of his

10   long, tenured service to the company, and his faith

11   full performance under the agreements, he has earned

12   significant benefits under his employment contract.

13   And we're not talking about an insignificant sum

14   here.  Specifically, his employment contract

15   provides that he is entitled to approximately

16   $433,000 as a severance payment -- not an

17   insignificant amount of money to Mr. Wimmer and his

18   family.  Mr. Wimmer's only remaining obligation

19   under his employment agreement, frankly, is to work

20   another 15 days.  He is terminated effective January

21   9th.  The letter that came out to him on November

22   7th, three days before they filed, asked him to

23   remain with the debtor until January 9th.  So he's

24   got roughly 18 days left to perform, if you will,

25   under the employment agreement.  In addition, under

COOK & WILEY, INC.

84

1    the employment agreement which was dated his most

2    recent one -- he's had several other the last 40

3    years, was dated December fourth, 2003.  And under

4    that employment agreement they actually -- the

5    debtors only need to give him 30 days notice to

Rough Copy 12 22 08.txt

6        terminate without cause and all of his severance

7        obligations which are a contingent obligation,

8        mature.  So the fact of the matter is if you looked

9        at the 30 days that was only required under the

10       contract, his rejection motion came after the

11       anniversary date of his employment contract.

12            We submit that the roughly 18 day that is the

13       debtor have asked him to serve until January 9th, in

14       fact, in part of his service is to assist with the

15       store closings, is not material, and is not

16       executory under the country man test.  That

17       remaining 18 days after 40 years of service is not

18       material.  On the other hand, the debtor's severance

19       obligations of 433 thousand dollars roughly are very

20       material to Mr. Wimmer and to his family.

21            Your Honor N the event that you determine

22       that Mr. Wimmer or  Mr. Leopold's agreements are, in

23       fact, executory -- still, and again, I just don't

24       see how Mr. Leopold's agreement could ever be

25       determined to be executory -- but if Mr. Wimmer's

                    COOK & WILEY, INC.


                                                85

1        employment agreement and the 18 days remaining under

2        the employment agreement are material such that this

3        court determines that they are he can he can you

4        tire, we would submit the the court should

5        nevertheless deny the debtor's motion to reject the

6        contract because any perceived benefits to the

7        estate, which are minimal, are greatly out weighed

8        by the detrimental effect to Mr. Wimmer and his

                    Page 75

Rough Copy 12 22 08.txt

9       family.  The same goes for Mr. Leopold, in our

10      opinion because of the detrimental effect of 55

11      thousand dollars to Mr. Leopold and the minimal

12      benefit that would provide to the estate and the

13      general unsecured creditors.

14              THE COURT:  You're suggesting that I should

15      require the debtor to assume the contract?

16              SPEAKER 3:  In the event that Mr.-- in the

17      event that you determine that they are executory, I

18      submit that you should deny their motion to reject,

19      because of the effect it will have.  And I know that

20      great deference is given to the debtor's business

21      judgment under the business judgment rule and

22      lubrizol and other cases of that ilk; however, it is

23      not without its limitations.  In track auto, judge

24      Adams said that you have to look at the totality of

25      the circumstances to all constituencies, not just to

                COOK & WILEY, INC.


                                                86


1       the creditors' estate, and not just to the unsecured

2       creditors; but also to the non debtor contracting

3       party and the other constituencies.  In track auto,

4       judge adams stated that the better reason view is to

5       evaluate a debtor's business judgment by considering

6       the input -- pardon me, the impact of the debtor's

7       decision on a variety of parties, as well as the

8       impact on the debtors' estate; i.e., a judicial

9       review of the totality of the circumstances

10      surrounding the debtor's proposal.  Your Honor, the

11      debtor's petition that they filed on November 10th

12      indicated that their liabilities are 2.3 billion
                        Page 76

Rough Copy 12 22 08.txt

13          dollars.    The payment to Mr. Wimmer is 433 thousand
14          dollars.    That is less than 2 one hundredths of a
15          percent of their total liabilities.    Mr. Wimmer has
16          worked for this company for 40 years to earn these
17          benefits and he will not be able, I am sorry to say,
18          at the age of 62, ever make up this money.    This is
19          not a situation in the market -- in the economic
20          times we are in where we are all losing money in our
21          401(k)s and so forth because we investd in the
22          market, and as a result some younger people such as
23          myself hopefully will see that turn around in my
24          lifetime.    These are contractual benefits that
25          Mr. Wimmer earned through his dedicated service to
                    COOK & WILEY, INC.

                                                        87

1           the company over 40 years.    And at the age of 62, he
2           will not make this up.    And he and his wife and
3           family have depended upon and relied upon his
4           severance benefits under his employment agreements
5           in their long-term financial planning for their
6           family.    It's ironic because had he left the
7           employment of the company a year or two ago and
8           start receiving these benefits he would have been
9           paid out these benefits in the course -- the normal
10          course of the contract.    But as someone who is
11          dedicated and stayed on, they asked him to stay on,
12          they tried to give him retention bonuses for staying
13          on, they've asked him to stay onto help with closed
14          stores.    The ultimate irony is he is going to be
15          penalized for doing so.    And if you look at the
                    Page 77

Rough Copy 12 22 08.txt

16          totality of the circumstances as the track auto case

17          suggests, the detrimental effect to Mr. Wimmer and

18          his family -- and to Mr. Leopold -- is -- greatly

19          outweighs the minimal impact it will have to the

20          debtor's estate again, we're talking about 2.3

21          billion in liabilities.  433,000 -- I know that

22          argument cuts against me in that I'm arguing it's

23          not an insignificant amount -- but to the debtor's

24          estate by comparison, it is insignificant as

25          compared to the effect it will have on Mr. Wimmer

                    COOK & WILEY, INC.


                                                            88


1          and his family.

2                  Finally, Your Honor, the lubrazal case also

3          says that the debtor's business judgment should not

4          be granted where it is taken in bad faith or is an

5          abuse of that discretion.  And Your Honor, I

6          appreciate counsel's efforts to rehabilitate this

7          debtor and re organize this debtor.  But when we

8          were here on December fifth, there was an

9          impassioned plea made by counsel to the debtors to

10          allow severance payments to be made to the roughly

11          580 employees, I believe it was, that were laid off

12          on November 7th -- the same day Mr. Wimmer received

13          his termination notice -- on the grounds that it was

14          important for employee morale to keep the people in

15          corporate headquarters, their heads in the game, and

16          the importance of the news in the community in terms

17          of treating their employees well.  I can quote from

18          the arguments that were made by counsel to the

19          debtors at that hearing.  And I won't -- I won't

                    Page 78

Rough Copy 12 22 08.txt

20        repeat all of them, Your Honor.  But they proffered

21        that Mr. Markem would testify that many of the

22        people had given significant time and effort, and in

23        some instances had worked their lives at Circuit

24        City.

25              Well, in nobody's case is that more true than

                         COOK & WILEY, INC.


                                                      89

1         Mr. Wimmer.  He has worked his entire professional

2         life since getting out of the Air Force at the age

3         of 22 for Circuit City.  And if you're going to do

4         that to the employee who is the most loyal employee

5         in the history of the company -- again, he is the

6         longest tenured employee -- to me, that suggests

7         that would not be good for employee morale.  And on

8         December 5th they were here saying we need to do

9         this for employee morale, and today they're seeking

10        to reject the employment agreement of their most

11        loyal, tenured employee.  I'd submit that's in bad

12        faith, Your Honor.  Thank you.

13              THE COURT:  All right.  Thank you.

14              MR. FOLEY:  Your Honor, you did hit on the

15        relevant facts that are important here, that these

16        are pre petition contracts; that as of the petition

17        date, they were executory.  With respect to

18        Mr. Wimmer, I don't think that's even disputed that

19        it was executory as of the petition date.

20              With respect to Mr. Leopold, there are

21        certain nondisclosure agreements in his contract

22        that the court may or may not find to be material.

                         Page 79

Rough Copy 12 22 08.txt

23          And we certainly have no intention of enforcing them

24          post petition.  As of the petition date, there are

25          sufficient obligations running both ways with

                      COOK & WILEY, INC.


                                                        90


1          Mr. Leopold's contracts to render that executory.

2          We think it's subject to rejection of 365, and under

3          the business judgment rule ought to be rejected.

4          We're talking about a $126,000 payment with respect

5          to that contract.  Also, in that contract was July

6          18th, 2008.

7              With respect to Mr. Wimmer's situation, just

8          a correct factual assertion by counsel, Mr. Wimmer

9          was unfortunately one of the people that was laid

10         off on November 7th before the filing.  And that

11         November 7th letter was the letter laying him off.

12         And he is a recipient of the warnack payments that

13         Your Honor has approved.  He is not working for the

14         company right now.  He hasn't worked for the company

15         since November 7th.  He is not working on any store

16         closing arrangements, but he is receiving payments.

17         So we did all we could for this individual, as we

18         did with the other employees that counsel

19         referenced.  That's what we're talking about.  These

20         aren't -- these weren't special severance payments

21         made.  He's talking about the warnack money that

22         Your Honor approved actually over the committee's

23         objection.

24             So we did what we could for these employees,

25         Your Honor.  And we believe both of these contracts

                      COOK & WILEY, INC.
                         Page 80

Rough Copy 12 22 08.txt

91

1          are subject to rejection with 365, and the court
2          ought to approve the motion with respect to them.
3               THE COURT:  All right.  Thank you.  The court
4          is going to find that the contracts are executory.
5          Mr. Miller, I am going to give you the opportunity,
6          though, to brief the issue regarding whether they're
7          post petition obligations with the debtor or pre
8          petition.  So I will withhold that portion of the
9          ruling until I've gotten your papers and any reply
10         with either the debtor or the committee wish to make
11         to them.
12              SPEAKER 3:  Your Honor, a point of
13         clarification:  I understand that you're saying that
14         the contracts are executory.  Is Your Honor ruling
15         today on whether or not you're going to approve the
16         the debtor's motion to reject the contract?
17              THE COURT:  Yes, I'm going to approve the
18         motion to reject the contracts.  Under the business
19         judgment rule, I think that's up to the debtor to
20         do.  I don't think this court can force the debtor
21         to accept contracts.  I think the debtor can come in
22         and request that.  I think there's a legitimate
23         business reason to do the rejection.
24              But the consequences of the rejection is what
25         I'm going to give you the opportunity to brief,
                         COOK & WILEY, INC.


                                                  92

1          because you said you had some law that you wanted me

Rough Copy 12 22 08.txt

2      to look at about whether or not these might be post

3      petition obligations of the debtor.

4              SPEAKER 3:   Thank you, Your Honor.  I

5      appreciate it.

6              THE COURT:   Does that take care of everything

7      that's on the morning agenda.

8              MR. FOLEY:   Yes, Your Honor.  I know it's

9      almost 1 o'clock.  I don't know how long you'd like

10     to take a break for.

11             THE COURT:   Let's --

12             SPEAKER 3:   Your Honor, can I speak to this

13     issue?  Before you move on.

14             THE COURT:   On the rejection?

15             SPEAKER 3:   Yes.

16             THE COURT:   Yes.  Who are you.

17             SPEAKER 3:   Thank you, Your Honor.  My name

18     is victor enguesser.  I was an employee of Circuit

19     City for 17 years.  I did not receive notice of this

20     motion of this hearing until Saturday, December the

21     20th and therefore did not have chance too object.

22     I would like to request that I have that opportunity

23     to file an objection.

24             THE COURT:   That will be granted.  That what

25     I'll do is I'll carry your objection orally today

                    COOK & WILEY, INC.


                                        93


1      over to the next omnibus date, which will be the

2      17th of January.  And I think we started at 10

3      o'clock that day.

4              MR. FOLEY:   We do, Your Honor.

5              THE COURT:   What I would suggest, you need to
                    Page 82

Rough Copy 12 22 08.txt

6      file a written objection.  And then they can
7      respond.  You can also talk to them and see if you
8      can work it out.
9           MR. FOLEY:  Your Honor, could we have that
10     objection filed at the same time as Mr. longgood's,
11     which will be December 29th, the same as Mr. Shaia's
12     client.
13          THE COURT:  Are you able to get it filed by
14     the 29th.
15          SPEAKER 3:  Yes, Your Honor.
16          THE COURT:  Okay.  That will be fine.  Yes,
17     ma'am?
18          SPEAKER 3:  Hello, my name is Lee an Moore,
19     also formerly employed with Circuit City, and I also
20     didn't get the notification until Saturday.  So I
21     request that I be allowed to make that objection and
22     file --
23          THE COURT:  Your name again.
24          SPEAKER 3:  Lee an Moore.
25          THE COURT:  Okay.  Ms. Moore, the court will
                    COOK & WILEY, INC.


                                              94

1      receive your oral objection and I will do the same
2      thing, file a formal objection by the 29th of
3      December and we'll carry this over -- your objection
4      over to the 16th.
5           SPEAKER 3:  Okay.  Great, thank you.
6           MR. FOLEY:  And for the record, judge, we
7      will do that for anybody else that we hear from
8      before we submit the order, Your Honor.
                    Page 83

Rough Copy 12 22 08.txt

9          THE COURT:  All right.  Thank you. are there
10     any other employees in the courtroom?  Sir?  If you
11     would just state your name on the record.
12     A.      My name is David catch Yea aty.  I was laid
13     off on November the 7th, and we were not aware of what's
14     going on here.  I was told by an H R employee on Friday
15     that this was occurring, and that we were not being paid
16     our vacation pay, P T O, and that we have the right to
17     come down here to file a complaint.
18         THE COURT:  All right.  So what you need to
19     do is file your objection by the 29th of December,
20     and I'll consider carry this over -- your objection
21     over to the 16th of January.
22         SPEAKER 3:  Thank you, sir.
23         THE COURT:  All right.  I think Mr. Foley
24     what I'd like to do is to recess until 1 30.
25         MR. FOLEY:  Okay.
                    COOK & WILEY, INC.


                                              95


1          THE COURT:  And then we'll resume.
2          MR. FOLEY:  Thank you, Your Honor.
3      irreparable.
4               (Recess)
5
6          MR. GALARDI:  Good afternoon, Your Honor.
7      For the record, Gregg Galardi on behalf of Circuit
8      City debtors.
9          Your Honor, we had provided Your Honor a
10     separate agenda for the matters at 1 o'clock.  I'm
11     going to go through the matters on the amended
12     notice of agenda for the 1 o'clock matters.

Rough Copy 12 22 08.txt

13          My understanding is that the first matter on

14     the agenda is a demand by Green 521 Fifth Avenue,

15     and that that has been resolved.  If we can resolve

16     it, we'll either submit an order or it's been

17     withdrawn after the hearing, Your Honor.

18          THE COURT:  Very good.

19          MR. GALARDI:  The next matter on the agenda

20     is the motion of Raymond and main retail.  My

21     understanding is that is also resolved.  We've

22     worked on an order.  And our intention, again, woud

23     be to submit the order after the hearing.

24          SPEAKER 3:  Good afternoon, Judge.  Neil

25     McCullough for Raymond and Main Retail, LLC.  That's

COOK & WILEY, INC.


96

1      correct.  I'm just waiting to see the final version

2      of the order, and we respect to tender it.

3           THE COURT:  Thank you very much.

4           MR. GALARDI:  Your Honor, similarly, the

5      matter number 3 on the agenda is triangle equities

6      junction, LLC.  We have resolved that, and we would

7      again submit an order or a stipulation if necessary.

8           THE COURT:  Very good.

9           MR. GALARDI:  Your Honor, the next matter on

10     the agenda is an uncontested matter which is the

11     debtor's motion.  It's number 4 on the agenda to

12     reject certain -- to approve assumption and

13     assignments of various unexpired non residential

14     real property leases and the sale of equipment.  We

15     have no objections to that.  It was -- the objection

Page 85

Rough Copy 12 22 08.txt

16      deadline with December 18th.   And we would ask Your

17      Honor first to grant the motion to shorten -- as I

18      believe we put it on shortened notice -- and then to

19      grant the motion to assume and assign those property

20      leases that are subject to it.

21          THE COURT:   Okay.   The court will grant the

22      expedited motion, and also grant the relief.

23          MR. GALARDI:   Your Honor, moving to number 5

24      on the agenda, it is the same motion to assume

25      assign and sell certain property with respect to the

                    COOK & WILEY, INC.


                                          97

1       Illinois partnership.   Again, I think these are some

2       of the subleases -- oh, we've withdrawn this motion

3       because the party that we actually were going to do

4       it no longer wanted the assumption of assignment.

5       So number 5 we would withdraw, Your Honor.

6          THE COURT:   All right.   It will be withdrawn.

7          MR. GALARDI:   Number 6 is a motion that is

8       uncontested.   We have a motion to shorten the time.

9       It is a motion to assume and assign various non

10      residential real property leases.   We haven't --

11      received no objections.   It was to the Delaware

12      trust or its nominees.   I think we've resolved the

13      objection, and ask that Your Honor approve it.

14          SPEAKER 3:   Your Honor, Miller on behalf of

15      bond C C.   I just want to confirm.

16          THE COURT:   All right.   Very good.

17          MR. GALARDI:   Your Honor, that now brings us

18      to matter 7 on the agenda, which are contested

19      matters.   Your Honor, this matter has been carried

                    Page 86

Rough Copy 12 22 08.txt

20        since the first day.  It is our motion to reject a
21        number of properties which we attempted to reject
22        effective as of November 10.  We have a number of
23        objections that are out standing, some have been
24        resolved, some have not been resolved. I think best
25        way to go through it is top to bottom on the the
                        COOK & WILEY, INC.


                                                98

1         objections to see if they're resolved or not and to
2         the objections and then we can respond accordingly,
3         if that works for Your Honor.
4               THE COURT:   That is my preference.
5               MR. GALARDI:  Your Honor, the first objection
6         is the objection of landover crossing LLC.  My
7         understanding is -- as reflected in the amended
8         agenda -- that that matter -- that objection has now
9         been resolved.
10              SPEAKER 3:   Good afternoon.  Jen McLemore
11        from Christian and Barton here on behalf of Landover
12        crossing.  This has been resolved.
13              THE COURT:  Very good.
14              MR. GALARDI:  You Honor, the next matter is
15        the objection of cardinal capital partners.  My
16        understanding is that's an objection that is, in
17        fact, going forward.
18              I'm not sure how -- many of the objections
19        overlap, Your Honor.  I don't know how we want to
20        do -- how do we want to go.  We can just do it one
21        by one.
22              Your Honor, this also relates to the matter
                        Page 87

Rough Copy 12 22 08.txt

23    where we had a motion to assume and assign a

24    contract and assume the lease.  We ended up

25    withdrawing it back on November 4.  I guess I'll let

COOK & WILEY, INC.

99

1    cardinal raise their objection, and I can respond

2    accordingly.

3    THE COURT:  I think that would be

4    appropriate.

5    SPEAKER 3:  Your Honor, Nicholas ferland for

6    cardinal capital.  And that objection has been

7    withdrawn, or shall bedrawn.

8    THE COURT:  All right.  Very good.

9    MR. GALARDI:  Let him set precedent here.  He

10    was just scared of my response, Your Honor.  I know

11    him too well.

12    The next matter is the objection of -- I

13    think it's Balogh companies.  It's objection C.  My

14    understanding is that's going forward.

15    THE COURT:  All right.

16    SPEAKER 3:  I carry that, one, too.

17    MR. GALARDI:  All right.

18    SPEAKER 3:  Nicholas ferlan for the Balogh

19    companies again.  That objection is also withdrawn.

20    THE COURT:  All right.  Very good.

21    MR. GALARDI:  You wouldn't happen to

22    represent the Leben family, too, would you?

23    Objection D is the objection of the Leben

24    family.  I have that one as going forward.

25    SPEAKER 3:  Good afternoon, again, Your

COOK & WILEY, INC.

Rough Copy 12 22 08.txt

100

1      Honor.   Jen McLemore for the Leben family limited
2      partnership.   As I understand it, the subtenant in
3      this case paid both November and December rent
4      directly to the debtors.   And the Leben family
5      limited partnership is asking that rejection be
6      effective January 1 to preserve the rights that they
7      have to try and collect these obligations.   We just
8      want to preserve an administrative claim because
9      clearly the debtor has collected rent from the
10     subtenants, but they have not bothered to pass it on
11     to us at some point.   And that includes taxes and
12     some of the other issues.   We're trying to preserve
13     our own rights because we're not sure exactly where
14     we stand in this situation.
15              THE COURT:   All right.   Your issue being that
16     you just want to collect whatever rents were paid to
17     the debtor post petition?
18              SPEAKER 3:   We would.   Alternatively, we
19     would also -- if we have the rejection effective
20     January 1, it would give us the rights to
21     administrative claims during those time periods, and
22     it might clean up the issue.
23              THE COURT:   All right.   But if I grant the
24     motion to reject, then the at the time or wouldn't
25     be entitled to keep the rents, would he?
                    COOK & WILEY, INC.

101

1              SPEAKER 3:   Well, at this point, part of the
                    Page 89

Rough Copy 12 22 08.txt

2          problem with that is collecting it back.   As we

3          understand, the debtors were going to pay the

4          December rent, no questions asked.

5              But the November rent leaves us in a

6          precarious position because they have collected all

7          of November's rent, and they've just left us with --

8          they've told us we are entitled to file an admin

9          claim for the November rent, but they may or may not

10         take issue with it down the road because they will

11         have rejected it effective November 10.   So they

12         will have all the money for it.    and it puts

13         them -- I believe Mr. Galardi even referred to it at

14         the last hearing as sort of a windfall situation.

15         We don't know where we stand under that

16         circumstance.   So the cleaner resolution from my

17         client's perspective is to have the rejection

18         effective January 1.

19             THE COURT:   All right.   Thank you.

20             MR. GALARDI:   Your Honor, I think the cleaner

21         perception would be what I think I had offered at

22         the last hearing.   Your Honor, we clearly did

23         collect November rents, and we collected that pre

24         petition.   But it is less than -- I believe it is

25         less than the amount of rent that we would pay.   And

                    COOK & WILEY, INC.


                                        102

1          I did describe that as a windfall for November.   So

2          that's not a disagreement.

3              With respect to December, what we have

4          offered people is that if we did, in fact, receive

5          the December rent from the subtenant, we would turn

Rough Copy 12 22 08.txt

6          that rent over because our position is these leases
7          were rejected as of November 10th.  There is no
8          dispute as to our giving notice to both the
9          subtenant and the tenant on these matters.  So we
10         think under the case law the effective rejection at
11         a time is November 10th.  I have no problem with
12         their reserving a right to a certain administrative
13         claim for any of the November rent if they so
14         choose, but didn't think having it effective January
15         first is really the proper date.  I think we
16         complied with the court's order.  We gave notice.  I
17         don't think there's a dispute about that.  We would
18         like to have it rejected as of November 10th, all
19         rights reserved to administrative claims for any
20         rents we collected and then with respect to this one
21         in particular, if we collected December rent, it was
22         what I said on the record the last time.  We would
23         be turning over any sub rent we got for the month of
24         December and we will pay that over to the tenant.
25         We were not intending to try to keep that money.
                    COOK & WILEY, INC.

                                                    103

1          THE COURT:  All right.  Very good.
2          Ms. McLemore, I'm going to confirm the rejection as
3          of November 10, but reserve your right to make an
4          administrative claim for the November rent, in
5          whatever fax you deem appropriate.
6          SPEAKER 3:  Thank you.
7          MR. GALARDI:  Your Honor, that then moves to
8          objection E, which is the objection of inland U.S.

Rough Copy 12 22 08.txt
```
 9      management LLC.  My understanding is that's going
10      forward.
11             SPEAKER 3:  Jen McLemore for inland U.S.
12      management.  That actually has been resolved.
13             THE COURT:  Okay.  Very good.
14             MR. GALARDI:  Your Honor, the next objection
15      is objection F, which is the limited objection of C
16      K Richmond business.  I have this matter as going
17      forward.  I don't know if it was resolved during the
18      break.
19             SPEAKER 3:  Your Honor, Chris Perkins.  This
20      matter has been withdrawn.
21             THE COURT:  It's been resolved?
22             SPEAKER 3:  We're withdrawing the objection.
23             THE COURT:  Withdrawn.  Okay.  Very good.
24             MR. GALARDI:  Your Honor, I'm now up to
25      objection G, which is the objection of inland
                        COOK & WILEY, INC.


                                                       104

 1      commercial property.  My understanding is this was
 2      resolved over the break.
 3             THE COURT:  We should have more breaks.
 4             MR. GALARDI:  Your Honor, I am now up to
 5      objection H, which is the objection of Carrolton
 6      Arms.  I have this matter as going forward.  I don't
 7      see counsel here.
 8             Your Honor, this is a -- my understanding is
 9      that there is no dispute that we handed over the
10      keys on November 10th, or pursuant to the November
11      10th order.  I think that their position was that we
12      had not surrendered the premises because the
```
Page 92

Rough Copy 12 22 08.txt

13          sublessee continued to occupy the premises; and

14          again, we were obligated to remove the sub lessee's

15          property from the premises.  Your Honor, again, we

16          think under the case law that if we gave unequivocal

17          notice to both the sub lessee and the overlord, that

18          that was an effective rejection.  We did so on

19          November 10th.  I don't think there was a factual

20          dispute with respect to that.  We'd ask that that

21          objection be over ruled.

22               THE COURT:  The objection is over ruled.

23               MR. GALARDI:  Your Honor, the next one is

24          objection I, which is the premier retail interiors

25          objection.  Is it resolved?

                    COOK & WILEY, INC.


                                                        105

1                SPEAKER 3:  Your Honor, Jen McLemore for

2           premier retail interiors.  I understand from my

3           client's perspective this has been resolved, but

4           there is another party in interest -- I don't know

5           if they're here -- Mr. Bailey represents potentially

6           another party in interest.  I believe he has filed

7           something to reserve his rights, but my client has

8           resolved this issue.

9                THE COURT:  This is only the objection of

10          your client?

11               SPEAKER 3:  Correct.

12               THE COURT:  And it's been resolved?

13               SPEAKER 3:  Correct.

14               THE COURT:  All right.

15               MR. GALARDI:  Your Honor, the next objection

                    Page 93

Rough Copy 12 22 08.txt

16      is the objection of generation one, which is

17      objection J on my agenda.  I have that matter going

18      forward.

19          SPEAKER 3:  It's resolved.

20          MR. GALARDI:  It's resolved.  You can stay up

21      here and just resolve them all.  I have no problem

22      with that.  So J is resolved.

23          The next objection is the objection of Dick's

24      sporting goods.  We have continued that to January

25      29th.

                COOK & WILEY, INC.


                                                        106


1           Now, on to objection L , which is the limited

2       objection of Golf galaxy.  That is also -- the

3       parties have agreed to adjourn that matter over to

4       January 29th.

5           SPEAKER 3:  Your Honor --

6           THE COURT:  Yes.

7           SPEAKER 3:  Good afternoon, Your Honor.  My

8       name is Daniel Kerrigan.  I'm here on behalf of

9       actually matter O under this matter, and matter 25

10      further on in the docket.  I understand that

11      apparently golf galaxy, which is our client's

12      subtenant, apparently has agreed to adjourn the

13      hearing on this particular matter till January 29;

14      is it?

15          MR. GALARDI:  Yes.

16          SPEAKER 3:  And I think if you look at matter

17      O, we're listed in the same box, essentially,

18      probably because we joined in their objection as

19      opposed to filing a separate one.  However, the

Rough Copy 12 22 08.txt

20          docket -- the agenda was the first indication I had

21          that we had agreed to adjourn it.  I don't have an

22          objection to adjourning it; however, it does tie

23          into matter 24 -- or rather, matter 25, because it's

24          the same issue at least as to payment of the stub

25          that flows throughout.  Maybe by the time we get to

                    COOK & WILEY, INC.


                                              107

1          matter 25, it may not matter.  But at least I'd like

2          to preserve that piece of the objection.

3                    MR. GALARDI:  No problem.

4                    THE COURT:  It's pre served.

5                    SPEAKER 3:  Thank you, Your Honor.

6                    MR. GALARDI:  Your Honor, matter number --

7          letter M, I guess, is the next one that I am up to.

8          It's the O L P 6609 grant.  That objection has been

9          resolved.

10                    THE COURT:  All right.

11                    MR. GALARDI:  The next matter I have is

12          objection N by dollar tree stores.  That, the

13          parties have agreed to adjourn that over to the

14          January 29th hearing.

15                    THE COURT:  Very good.

16                    MR. GALARDI:  Objection O, which was the

17          joinder of the landlord to 120 -- I guess that's

18          what we just addressed where we're agreeing to

19          adjourn it as a joinder.

20                    The objection P which is the limited

21          objection of Melvin Walton Hone.  My understanding

22          is I have resolved that.  Counsel is in the

                              Page 95

Rough Copy 12 22 08.txt

23      courtroom.

24          SPEAKER 3:   Good afternoon, Your Honor.

25      David Pollock on behalf of Melvin Hone, trustee.

COOK & WILEY, INC.


108


1       This matter was resolved I think on the record at

2       the hearing on December 5th.

3           THE COURT:   Very good.

4           MR. GALARDI:   Your Honor, that brings us to

5       letter Q, which is the objection of bond C C 1

6       Delaware business trust.   My understanding is that

7       that objection has been resolved.   So she doesn't

8       have to -- she's nodding her head yes.

9           THE COURT:   It's resolved.

10          MR. GALARDI:   Thank you.

11          That was Q.   Now I have objections R and S.

12      Objection of manufacturer's trading to the debtor's

13      motion to reject.   That matter is going forward.

14      And then I have an objection and joinder in the

15      objection to manufacturer trust. both of objections

16      are going forward.

17          THE COURT:   All right.

18          SPEAKER 3:   Food afternoon.   Jen McLemore for

19      manufacturers and traders trust company.   Your

20      Honor, manufacturers and traders is a trustee in a

21      securitized investment related to 41 different

22      leases.   And at the moment -- this is somewhat

23      complicated -- the landlords in the stores have

24      given all of their rights up to us to protect them.

25      And at the moment we are unable to determine when

COOK & WILEY, INC.
Page 96

Rough Copy 12 22 08.txt

109

1      debtors may or may not have left the premises.   So

2      we filed a place holder objection to pre serve while

3      we try to figure out who's in and who's out and

4      when.   And we're still in the process of doing that.

5      So while this is going, maybe we can carry it over.

6      I apologize.   I didn't ask to do this earlier.   That

7      may be the best resolution.

8           THE COURT:   So you're not aware of whether or

9      not the debtor has left your premises.

10          SPEAKER 3:   For the places that they're

11     trying to reject we're at the moment still trying to

12     figure out when exactly they left T. communication

13     between the trustee for these investments, it's a

14     bit of a convoluted connection between the landlers

15     and the trustee.   So they're trying to do their due

16     diligence and figure out what exactly has happened

17     at the locations --

18          THE COURT:   Mr. Galardi, do you have any

19     objection to continuing this out to January 29?

20          MR. GALARDI:   Your Honor, I guess I don't.

21     We do have a witness that would testify that we

22     turned over the keys, that these premises are

23     vacated, and that we complied with your first day

24     order with respect to November 10th.   So I'm not

25     sure adjourning it does anything more than keeping

                     COOK & WILEY, INC.

                                        110

1      space on the agenda.

Rough Copy 12 22 08.txt

2          THE COURT:  If you want to proceed on it, I'm

3     prepared to listen to it this afternoon.

4          SPEAKER 3:   Honestly, I can't refute -- if he

5     has evidence for it, I don't have anything --

6          MR. GALARDI:  Why don't we adjourn it for the

7     time being, and I'll let her talk to our witness so

8     that we may be able to resolve this.

9          THE COURT:  Okay.  So we'll just drop it down

10    on the docket.

11         MR. GALARDI:  We'll just drop it down to

12    later, Your Honor.  Thank you.

13         Your Honor, that leaves us with the final

14    objection on this matter, which is the joinder

15    Galleria plaza.  And my understanding is that that

16    has been continued over to the January 29th hearing.

17         THE COURT:  All right.  That finishes those

18    matters.  Your Honor, now we have a series -- and

19    probably it is -- it is -- there are a number of

20    matters that are now on the agenda from 8 on that go

21    to, I think, one fundamental issue.  So for the sake

22    of clarity and argument, I think there's a legal

23    issue and then we can get into details.

24         Your Honor may recall -- and then I'll let

25    each party come up and make their arguments --

                    COOK & WILEY, INC.


                                            111


1     obviously the law with respect to stub rent, which I

2     think is the only issue that is really open,

3     although I'll reserve everybody's rights to come up

4     and argue there may be taxes or something.  The big

5     issue that has come up is that we -- I don't think
                    Page 98

Rough Copy 12 22 08.txt

6          anybody disputes we did not pay our November first
7          rent when it was due and payable.   Now, we have gone
8          through some growing pains, so to speak, through the
9          month of no because as we found out and has been
10         determined, some rents weren't due November first;
11         rather, they were due at the end of November and
12         paid in arrears. it's at least our understanding
13         that we have paid all of that represent in arrears
14         unRes somebody has refused to accept it.   But we
15         have only paid what I call the stub rent period, the
16         period from November 10th to November 30th.   As I
17         stood before Your Honor at I think it was the
18         December fifth hearing, I advised Your Honor that we
19         would agree with the objecting landlords that the
20         accrual method applies.   I think that's -- the
21         accrual method is the method that this court has
22         used in prior cases to assess whether there is a
23         post petition obligation to pay rent.   So we've
24         reserved our rights on billing date with respect to
25         other landlords, but with respect to landlords that
                         COOK & WILEY, INC.


                                                          112


1          raised objections we have agreed to the accrual
2          method.   We also agreed, Your Honor, that
3          notwithstanding the fact that they filed motions --
4          now having read the track auto case a little more, I
5          now understand better why they wanted this -- the
6          mere fact they didn't go forward the first time on
7          these motions does not prejudice in any way the
8          timeliness of their request for an administrative
                         Page 99

Rough Copy 12 22 08.txt

9       claim.

10          So what I think we are faced with today, Your

11      Honor, with a lot of them -- and we can take a legal

12      argument first and then also a factual argument --

13      is whether or not the period of time November 10th

14      to November 30th, one, I think we have agreed with

15      the accrual method that sit an administrative claim.

16      So really the only issue is when do you have to pay

17      that claim?  We have taken the position that we are

18      not required to pay it, that it is an administrative

19      claim and can be paid under 507 A and 1129 A 9 A at

20      the end of the case.   The landlords want timely

21      payment, and want timely payment now.   I do have a

22      witness in court today that could testify with

23      respect to the DIP and the need and the financial

24      availability.   And I could put that proffer

25      testimony on.   That probably doesn't necessarily --

                    COOK & WILEY, INC.


                                                    113

1       there's to ways Your Honor could see it.  If Your

2       Honor sees it as a simple legal issue, that it's 365

3       D 3 has to be paid now, pay it, doesn't matter what

4       our DIP budget says, what our financial availability

5       is, you have to pay it now.  Or Your Honor can see

6       as I read track auto that Your Honor has some

7       discretion with respect to that, that with respect

8       to anything post December, we have to pay that under

9       365 D 3.   But Your Honor could have discretion and

10      say I understand that this was actually something

11      due and payable pre bankruptcy.   We have this

12      fiction calmed the accrual method which does it

Rough Copy 12 22 08.txt

13        every day, but that I can, in fact, have the

14        discretion as to the timing of that payment since it

15        is an administrative claim.  And I can pay it at the

16        end of the case or I can order you to pay it

17        underrer circumstances at the present time during

18        the case.

19            The debtor's position is it is a matter of

20        your discretion, that you can order us today to pay

21        it; but you can also order that it not be paid today

22        and leave to it the circumstances, whether it be

23        paid at the plan period of time or any day sooner.

24            The respect to the testimony of the witness,

25        if called to testify on our behalf, Mr. Steve Kyle

COOK & WILEY, INC.

114

1        man with F D I would testify that the budget we

2        submitted both in interim and that we have been

3        using to the final budget did not include the

4        payment of stub rents for those leases that was due

5        November first to cover the November period.  As

6        Your Honor heard this morning, he would also testify

7        that performance of the business has been weak over

8        the course of the first six weeks of this case where

9        same store sales or margins of sales have fallen 40

10       to 48 percent.  That if calmed -- if required to pay

11       the stub rent, the stub rent obligation that is out

12       stand together many of these landlords is

13       approximately 20 to 25 million dollars.  Mr. cool up

14       would also testimony that in the negotiations that

15       Your Honor heard about this morning between the

Rough Copy 12 22 08.txt

16      committee, the bank group, and the debtors, there

17      was a discussion and negotiations regarding

18      increased availability which Your Honor heard today

19      taking out the minimum availability covenants but

20      Mr. cool Um would also testify that the negotiations

21      were to increase availability to pay current pay

22      obligations, but not to include stub rent.  Indeed,

23      Mr. cool Um would further testify that in the event

24      that the court orders the debtors to pay stub rent,

25      it is not permitted under the current DIP facility

                    COOK & WILEY, INC.

                                            115

1       to pay it; and that we would have to go back to the

2       required lenders and could cause a default.  Either

3       we'll be in default of the order, or we'll be in

4       default of the DIP.  And we can have no assurances

5       that the DIP lender -- the required lenders that

6       would be required to pay it would approve such a

7       payment.

8           Your Honor, Mr. cool Um would also testify

9       that over the next six weeks as we try to get to a

10      restructuring scenario, liquidity is tight and

11      unpredictable; and that, therefore, that at least

12      for the period of time for the next six weeks or to

13      the end of January, that is in the best interest of

14      the debtors to maintain its availability and not to

15      pay the stub rent.

16          That would be the testimony.  I'd pass him on

17      as a witness, Your Honor, to anyone.  But I think

18      most of this comes down to a legal issue.

19          THE COURT:  Does any party wish to cross

                    Page 102

Rough Copy 12 22 08.txt

20          examine Mr. cool Um?

21                  SPEAKER 3:  Yes, Your Honor.

22                  THE COURT:  Mr. cool Um, if you'd come

23          forward and be sworn, please.

24                  (Witness sworn).

25                  SPEAKER 3:  Daniel Kerrigan, Your Honor,

                        COOK & WILEY, INC.


                                                        116

 1          Canalog and Aldridge for the orchard landlords.

 2                  THE COURT:  All right.  You may proceed.

 3                  SPEAKER 3:  Thank you, Your Honor.

 4          Q.      Good afternoon, sir.  How are you?

 5          A.      Fine.  Thank you.

 6          Q.      Thank you.  You indicated that the -- the

 7      proffer indicated that --

 8                  THE COURT:  You might want to identify the

 9          witness.

10      BY SPEAKER 3:

11          Q.      I'm sorry.  Could you identify yourself,

12      please?

13          A.      Sure.  Stephen cool Um with FTI consulting.

14          Q.      And what function do you perform for the

15      debts or?

16          A.      I'm a senior managing director with FTI, and

17      FTI is the financial advisor to the debtors.

18          Q.      How long have you served in that capacity?

19          A.      We were originally hired by the company in

20      mid August and continued on since then.

21          Q.      I'm sorry, since what date?

22          A.      Mid August.

                        Page 103

Rough Copy 12 22 08.txt

23      Q.      Of this year, 2008?

24      A.      That's correct.

25      Q.      And you indicated that there was -- or the
                        COOK & WILEY, INC.

                                                        117

1       the proffer indicated that there was a budget and a

2       revised budget perhaps that had been submitted to the

3       lenders; is that correct?

4       A.      Just the original budget that I think was

5       presented to the court on the first.

6       Q.      Did you have any part in creating that

7       budget?

8       A.      I did.

9       Q.      Were you the principal person in creating

10      that budget?

11      A.      The principal person from FTI, along with the

12      company.

13      Q.      And who else at the company?

14      A.      A number of people from the company's finance

15      staff and other parts of the organization.

16      Q.      The chief financial officer, would that be

17      one of them?

18      A.      That's correct.

19      Q.      All right, sir.  And how far in advance did

20      you create this budget -- of the bankruptcy filing, that

21      is?

22      A.      The DIP budget was created, you know, within

23      a week of the bankruptcy filing and finalized

24      immediately prior to the file.

25      Q.      So November 3rd it was created?
                        COOK & WILEY, INC.

Rough Copy 12 22 08.txt

118

1       A.      We worked on the final version from November
2    3rd up until the time of filing.
3       Q.      And prior to that, when did the drafts of the
4    budget begin?
5       A.      I don't recall the exact date.
6       Q.      Before November 1?
7       A.      Yes.
8       Q.      At any time with -- do you understand what
9    the term stub rent mean?
10      A.      I do.
11      Q.      Was that discussed in putting together your
12   final budget?
13      A.      It was.
14      Q.      Was it discussed in putting together the
15   prior versions of that budget?
16      A.      It was discussed in the final week leading up
17   to the last budget.  I don't recall the date.
18      Q.      Could it have been before November 1?
19      A.      I just don't recall.
20      Q.      At what point did you know that the November
21   1 rents would not be paid to the landlord?
22      A.      At the end of October at the time when
23   company would typically begin to issue the checks, we
24   knew that we wouldn't be paying the November first rent.
25      Q.      And you also knew that the company would be
                        COOK & WILEY, INC.

119

1    accepting the rental payments from the subtenants at
                        Page 105

Rough Copy 12 22 08.txt

2    that point, but not returning it?

3        A.      We assumed that we would continue to get

4    rents from the subtenants, but didn't know for sure.

5        Q.      And did you also assume that you wouldn't be

6    re paying that sub rent to the subtenants?

7        A.      At that point in time it wasn't certain that

8    we would file for bankruptcy.

9        Q.      It wasn't certain on October 31st that you

10   wouldn't file for bankruptcy?

11       A.      No.

12       Q.      When did it become certain?

13       A.      The company was working on several things.

14   And it hoped to avoid filing for bankruptcy, but

15   ultimately did file on the date that it did.

16       Q.      What things in between October 31 -- what

17   change between October 31 and November 10?

18               MR. GALARDI:  Your Honor, I don't want to --

19               I think this goes outside the scope of the direct

20               proffer as to the simple budget aspects.  I'd object

21               to the line of questioning.

22               SPEAKER 3:   May by heard, Your Honor.

23               THE COURT:  Yes, you may.

24               SPEAKER 3:   Your Honor, the argument that's

25               being made is that the court has discretion.  Part
                        COOK & WILEY, INC.


                                                    120

1        of that argument is basically what it boils down to

2        is the debtor can't get the money from the lenders,

3        and if the debtor is required to pay the stub rent,

4        that there's going to be a default under the line --

5        under the DIP facility.  Now, did they know ability

Rough Copy 12 22 08.txt

 6      it going in or did they know about it going out?
 7      Was there a -- was there an expectation that they
 8      would be able to get this sub rent in and put it
 9      into the system and rely upon it and at the same
10      time not pay the November 1 rent when they went into
11      this exercise?  It seems, given the timing, that
12      that is quite material to this whole exercise,
13      because if they -- if the parties to the bankruptcy
14      came in and planned on not paying the rent -- which
15      it appears that they did not -- and they also
16      planned on accepting the sub rent, then it's a
17      little disingenuine to say it's not in the budget
18      anymore, because that was the plan.
19              THE COURT:  All right.  Mr. Galardi --
20              MR. GALARDI:  Your Honor, just briefly.  I
21      didn't realize we were going to argue the subrent.
22      On the subrent point, Your Honor, I think he may
23      have an equitable argument that he can raise in the
24      individual circumstance.  I think that the direct
25      testimony simply went to whether as a general matter
                    COOK & WILEY, INC.

                                                    121

 1      equitably we have to pay that rent.  If he's trying
 2      to raise, I would ask him to put on a witness about
 3      the sub rent.  But I didn't have the direct
 4      testimony to what the -- whether we were collecting
 5      the sub rent, and whether that was a basis for not
 6      paying the stub rent.  We collected it.  We
 7      understand that.  We understand the equitable
 8      argument.  But I'm not sure how that relates to
                    Page 107

Rough Copy 12 22 08.txt

 9      whether we have to pay the stub rent in this

10      circumstance under -- well, I know I'm not being

11      articulate here.  I think it goes outside the

12      direct, Your Honor, because the issue is not whether

13      we received the sub rent.  It's whether we have the

14      ability right now to pay the stub rent, whether or

15      not we collected that rent, which was a DIP budget

16      item, which is the sole basis of the direct

17      testimony.

18           THE COURT:  And I believe that he could be

19      called as his own witness, too.  So I'm going to

20      allow this line of questioning.  But let's try to

21      tailor it to the specific items that you were

22      talking about.

23           SPEAKER 3:  Yes, Your Honor.

24           THE COURT:  So the witness may answer.

25      Q.   Do you recall the question?

                    COOK & WILEY, INC.


                                                      122


 1      A.   Could you repeat it, please?

 2      Q.   Could you read it back, plase?

 3           (Last question read back)

 4      A.   We finalized the budget between October 31st

 5      and the 10th.  And the assumption was that we would

 6      collect the sublease income and we would not pay the

 7      stub rent.

 8           SPEAKER 3:  Thank you, sir.  Appreciate it.

 9           THE COURT:  All right.

10           SPEAKER 3:  Thank you, Your Honor.

11           THE COURT:  Any other party wish to cross

12      examine this witness?  All right.  Mr. cool Um, you

Rough Copy 12 22 08.txt

13      may step down.  Thank you, sir.

14          THE COURT:  Mr. Galardi, will there be any

15      further evidence?

16          MR. GALARDI:  No, Your Honor.

17          THE COURT:  Does any other party wish to put

18      on any evidence?  All right.  Well, then, I'll hear

19      your arguments.

20          MR. GALARDI:  Your Honor, again, I think that

21      the track auto case directly addresses this point.

22      What the landlords were seek big the payment of the

23      stub rent period is essentially a super priority

24      claim.  What the court ruled in track auto was yes,

25      landlords cannot sit on their rights.  They must

                    COOK & WILEY, INC.


                                              123


1       make these motions to compel.  We have no objection

2       to that.  We have no objection to saying it's an

3       administrative claim.  The question is when the

4       timing of that payment is to occur.  By seeking the

5       current payment of it right now, Your Honor, we

6       think that they are seeking a super priority claim,

7       a priority claim that would be paid before even the

8       banks and secured creditors.  As the banks were

9       entitled to the funding, they didn't provide for

10      that in the budget.  And as to the actual

11      circumstances right now, it would actually have a

12      negative effect on the estate.  And Your Honor, we

13      would ask Your Honor to rule that such payments can

14      await either a further order of the court or

15      confirmation of the plan to be paid under 507 A, and

                    Page 109

Rough Copy 12 22 08.txt

16          is not entitled to be treated as a super priority

17          claim, to be paid first in line at this time.

18               THE COURT:  Mr. Galardi, are you giving up

19          your argument that this court should consider the

20          fourth circuit unreported decision in roses stores

21          case that the payment should be triggered by

22          contractual obligation as opposed to the accrual

23          method.

24               MR. GALARDI:  Your Honor, for -- yes, we will

25          give up that argument to go with the accrual method,

                         COOK & WILEY, INC.


                                                      124


1          Your Honor.  Having then just looked at another

2          opinion out of the southern district of New York, we

3          believe that the accrual method is obviously the

4          most fair and easy to calculate.  The billing date

5          creates all sorts of problems.  So I think in this

6          case, as I said with the first landlord, Your Honor,

7          we'll follow the accrual method in governing this

8          case.

9               THE COURT:  All right.  Very good.  Thank

10          you.  Anybody wish to reply?

11               SPEAKER 3:  Good afternoon, Your Honor.

12          David Pollock on behalf of various landlords noted

13          of record.  I think when I'm finished also on behalf

14          of several of my colleagues here this afternoon.

15               I guess I made a mistake this morning when

16          Mr. Galardi and I were emailing and he said he

17          agreed and I said we agreed all too much on this

18          issue we don't agree.  I don't know if Your Honor --

19          I know if you heard the part where we suggested on

                         Page 110

Rough Copy 12 22 08.txt

20          our panel that maybe Montgomery ward ought to be

21          over ruled because, in fact, proration was the --

22          really the fair and the equitable way.  Since we've

23          passed that point in this case, I don't think we

24          need to argue it.  I think the issue comes down to

25          really a legal argument, as Mr. Galardi suggested.

COOK & WILEY, INC.


125

1          The legal argument is payment now or payment later.

2          The payment later approach is really the

3          administrative claim approach.  And the

4          administrative claim approach is one that comes up

5          under the billing date approach where the Court such

6          as judge shante in goody's case cited in our

7          pleading says yes, even though it's a billing date

8          approach, you can still have an administrative

9          claim, but it's a timing issue.

10          We're no longer -- and this is where

11          Mr. Galardi and I disagree -- we're no longer at a

12          timing issue because he has agreed that this is a

13          proration, an accrual method.  Proration accrual

14          method, we then look to the statute.  And the

15          statute says you pay the obligations timely.

16          Timely.  We're not in the issue of:  Oh, this is an

17          admin claim and you get a 507 claim later on.  You

18          pay timely.  There's one exception to the timely in

19          3605, Your Honor.  That exception is the court on a

20          motion of the debtor may extepid the time to pay of

21          a period of 60 days but not beyond that 60 days.  So

22          the section already addresses when payment gets paid

Rough Copy 12 22 08.txt

23      if you are making payment under 365.  And we are

24      making, as the debtors have agreed, payment under

25      365.  So the question then is do we get paid today

                COOK & WILEY, INC.


                                                126


1       or does Your Honor consider the proffer as a request

2       for an extension till the end of the 60 days and

3       give the debtors until January 8th or January 9th to

4       make the payment.  That, in our mind, is the only

5       decision.  It is a timing issue, yes, but it is not

6       a timing issue of an administrative claim.  365 says

7       you timely pay the obligations.  They have agreed

8       that that applies, and that it is the proration

9       approach.  Given that, we don't get into

10      administrative claims.  We don't get into the

11      discretion.  The only discretion in our mind that

12      the court has is:  Do I order payment today or do I

13      order payment by the end of the 60-day period,

14      assuming for the sake of argument, an oral motion

15      has been made to grant that extension.  Very simple

16      argument, Your Honor.  I don't think any more really

17      needs to be said on the issue.  It's not an

18      administrative claim.  They've given up that issue.

19      It's a payment under 365 on a proration basis.  And

20      what is equitable is that they pay for the period of

21      time.  My clients roughly -- I don't know -- 29.

22      Some of them rejected.  We're talking a half a

23      million dollars or so in rent.  I understand the

24      debtors dilemma, but that's a dilemma that this

25      court doesn't need to face that the debtor needed to

                COOK & WILEY, INC.

Rough Copy 12 22 08.txt

127

1       face and the billion dollar lender needed to face.
2       They're using property -- they used property.  They
3       should have taken that into consideration.  I've
4       been before many a bankruptcy court where the court
5       has said, this is not the place to arrange the
6       financing.  You need to arrange it before you come
7       here.  And that's what they needed to do.  GE or the
8       lending group can decide, well, yeah, we want this
9       case to go on.  We're going to put that into the
10      budget.  Or they can decide not to.  But that's not
11      the issue before the court.  The issue before the
12      court is simply what does 365 say in light of the
13      debtor's concession that this is, for the purposes
14      of this case, a proration accrual method case.
15            And that's our argument, Your Honor.  Thank
16      you.
17            THE COURT:   Thank you.
18            SPEAKER 3:   Your Honor, A C Epps, Jr. from
19      the firm of Christian and Barton.  We have filed
20      several dozen landlords.  And Mr. Pollock was
21      specifically authorized to make the argument on our
22      behalf today.  Thank you very much.  Our clients
23      adopt it.  Thank you.
24            SPEAKER 3:   Good afternoon, sheila del
25      cruise, counsel for Woodlawn trustees, Inc, 212 LLC
                COOK & WILEY, INC.

128

1       and zeal limited liability company.  My clients are
                        Page 113

Rough Copy 12 22 08.txt

2     in a very similar situation as Mr. Pollock's

3     clients.   And we concur with Mr. Pollock's argument,

4     and authorize him to make the same for our clients.

5           THE COURT:   All right.   Thank you.

6           SPEAKER 3:   Good afternoon, Your Honor.

7     Michael can deal is on behalf of coal C C in Florida

8     LLC and coal CC aurora company LLC.   We have motions

9     to compel payment before the court on both of those

10    as well.

11          A lot of the points that I wanted to make

12    were said previously, that it is 365 D 3 that really

13    controls in this instance.   If you look at track

14    auto, Your Honor, that has no real application here

15    because the facts are distinguishable.   And that

16    involved a situation where the debtor did sleep on

17    its rights after rejection came, they came in and

18    asked for 365 D 3 rights for payment immediately of

19    the amounts that were owed.   And the court found

20    that that wasn't appropriate at that time, and that

21    they, if anything, were just entitled to an

22    administrative claim.   So in this instance, we're

23    coming under 365 D 3 which requires the debtor to

24    perform under the lease for all post petition -- for

25    all obligations that are due under the lease.

           COOK & WILEY, INC.

                           129

1           THE COURT:   It says that the debtor shall

2    timely per form.   That doesn't say -- what does

3    timely mean?

4           SPEAKER 3:   Well, the courts have been clear

5    on what timely means.   It's to perform in accordance

Rough Copy 12 22 08.txt

```
 6          with the terms of the lease agreement.  And that's
 7          all we're asking that be done in this instance.
 8               The original objection to the motions to
 9          compel payment that were filed previously by the
10          different landlords in this case, and that were
11          heard at the prior omnibus hearing, had an objection
12          filed to it, as Your Honor correctly pointed out,
13          citing extensively the roses fourth circuit decision
14          and other authority taking a billing method approach
15          in this case.  And the reason was because they
16          wanted to cut off as much of the pre petition rent
17          that was due as the vast majority of leases no doubt
18          are on the first day of November.  So they cut off
19          the rent that was due on November first, and only
20          for those people that came in and paid their
21          attorneys to come in and object did they then decide
22          to give them accrual rent going forward.  So that
23          double position is being taken in this case.  The
24          debtor has gotten the advantage of a billing method
25          approach, unless that order is to be rescinded if
                     COOK & WILEY, INC.
```

130

```
 1          now they switch positions and say an accrual method
 2          is appropriate, then we ought to be consistent and
 3          the the law of the case ought to be what they
 4          previously drilled down most of the the tenants
 5          under with regard to a billing method approach.  And
 6          that ought to be what's adopted as reflected by the
 7          unpublished decision of the fourth circuit.  So I
 8          think it's unreasonable for the debtor in this
```
Page 115

Rough Copy 12 22 08.txt

9       instance to be initially arguing extensively in

10      subjection of billing method approach and now after

11      its gotten the benefit of that to turn around and

12      say we really meant an accrual approach and now

13      talking about end of the month stub rent instead of

14      beginning of the month stub rent, we're going to

15      take the other position and beat down the right hand

16      lords in that instance so that they're not entitled

17      to the full month's rent.

18              THE COURT:  All right.  Thank you.

19              SPEAKER 3:  Thank you, Your Honor.

20              SPEAKER 3:  Good afternoon, Your Honor,

21      William gray for a number of the landlords that are

22      also part of this argument.  I agree with what has

23      been said prior to me.  I would just emphasize, too,

24      about the part that if we're not in the billing

25      method jurisdiction -- we're in the accrual -- the

                    COOK & WILEY, INC.


                                                    131

1       billing method is when you kick over to preserve or

2       fill the gap.  And certain cases have said fill the

3       stub rent gap; then look to the 503 and then expense

4       claim.  We don't get there.  This should be the 365

5       D 3 only.

6               There was a very recent case this past week

7       in the southern district of New York, judge Gropper.

8       That decision is mostly billing or accrual.  And I

9       would commend that to Your Honor's reading.  It's

10      2008 Wes law 5265739.  Judge Gropper does discuss

11      also about a fair reading of due and payable after

12      the petition date is that it accrues every single

                    Page 116

Rough Copy 12 22 08.txt

13      day.  And judge Gropper also talks about the

14      jurisdictions that do the billing date.  And they

15      fill the gap by the 503.  But that contradicts 365 D

16      3 that has the notwithstanding 503.  You shouldn't

17      require landlords to get into the 503 discussion

18      part there.

19            As to super priority claim, also, Your Honor,

20      I would mention I did not hear anything here that

21      there's any risk of administrative insolvency which

22      I believe, for example, judge Tyson's packaging

23      case, a fair reading of that indicates he concerned

24      about some order sort of administrative insolvency.

25      So I don't believe we need to go to that, either for

                        COOK & WILEY, INC.


                                                    132


1       all those reasons we do ask that you check check

2       tape -- right here you enter an order that says they

3       must pay the stub rent so we don't get into

4       asserting it later.

5             THE COURT:  So you don't think I should

6       follow the rule that judge Tyson previously

7       established?

8             SPEAKER 3:  Well, again, Your Honor, I don't

9       think that is totally applicable again because

10      there's no evidence here that we're on the verge of

11      any kind of administrative insolvency.

12            THE COURT:  All right.  Thank you.  You think

13      that that's the only standard is administrative

14      insolvency, as opposed to taking into consideration

15      liquidity issues.

                        Page 117

Rough Copy 12 22 08.txt

16            SPEAKER 3:  If you get to the 503, Your

17   Honor, my point is that you don't get there.  365 D

18   3, all of the landlords here have timely made their

19   demand for it.  And so, we shouldn't be put into the

20   503 box.

21            THE COURT:  Okay.

22            SPEAKER 3:  Good afternoon, Your Honor.  R A

23   Stein on behalf of Annapolis plaza LLC.  We have

24   filed a motion to compel payment under 365 D 3.  And

25   again, not to belabor the points previously made by

                    COOK & WILEY, INC.


                                            133


1    counsel, I join in all those arguments.  I believe

2    Your Honor had pointed out -- asked the question

3    about timely performance, what does timely mean.

4    There's several cases that speak to that.  And I'll

5    just cite one, the child world case , which is 161 B

6    R 571.  And that case says explicitly that sections

7    365 D 3 fictions the amount to be paid by the debtor

8    pend willing assumption of rejection of the lease at

9    that time amount provided in the lease and requires

10   these payments to be paid at the time required in

11   the lease.  So timely performance, I believe, under

12   365 D 3 requires the debtor to make payments, you

13   know, now as opposed to waiting till further order

14   of the court or confirmation of the plan as the

15   debtor would request.

16            THE COURT:  That long would suggest that you

17   would make the payment on November 1, and then not

18   again until December 1 when the payment would be

19   due.  That was what I was asking Mr. Galardi, if he

                         Page 118

Rough Copy 12 22 08.txt

20        was giving up that argument and going with the
21        accrual method.  If we're doing the accrual method,
22        don't we really have a legal fiction that we're
23        creating saying that we've created a block of time
24        in which we're going to say is due to the landlords.
25          But then we said it's timely performance.  What
                            COOK & WILEY, INC.


                                                        134


1         does that mean?  That was what my question
2         was coming -- when does the debtor have to perform
3         that legal fiction obligation?
4              SPEAKER 3:  Obviously, it can't be as timely
5         as was required under the lease because that time is
6         long gone.
7              MR. GALARDI:  Right.
8              SPEAKER 3:  But better late than never.
9              THE COURT:  So I have to set it for some
10        time?
11             SPEAKER 3:  Yes.
12             THE COURT:  And you're saying I should set it
13        for now?
14             SPEAKER 3:  Yes.
15             THE COURT:  And I guess when I keep
16        looking -- everybody says I have to look at the
17        statute.  But I don't see where in the statute it
18        tells me -- it's just not that clear to me.
19             SPEAKER 3:  Well, I guess I can agree that
20        this section of the code together with many other
21        sections could have been written a bit more clear,
22        but I guess we have -- we have to deal with what we

Rough Copy 12 22 08.txt

23        have to deal with.
24                  THE COURT:  All right.
25                  SPEAKER 3:  Just one other issue.  I don't
                         COOK & WILEY, INC.


                                                    135

1         think it's been dealt with yet.  I'm not sure if
2         it's going to be dealt with separately.  Eve also
3         asked for payment of attorney's fees.  Under track
4         auto 0 we believe that's required to be paid as part
5         of the stub rent.  And I don't know if the
6         debtors -- I believe the debtor's position is that
7         it's not to be paid now.  I don't know if we want to
8         argue it now or later.
9                  THE COURT:  You can argue it if you like.
10                 SPEAKER 3:  I mean, I don't think it's much
11        of an argument.  I think under track auto where the
12        lease provides for attorney's fees, we will up hold
13        the terms of the contract.  The lease between
14        Annapolis plaza and the debtor specifically provide
15        force attorney's fees in this kind of situation; and
16        therefore, we believe that, in addition to the
17        amounts owed under the -- for the actual lease
18        there's also our attorney's fees which need to be
19        paid under the bankruptcy code.
20                 THE COURT:  And what specifically does the
21        lease say with regard to obligations to pay
22        attorney's fees.
23                 SPEAKER 3:  I don't have it up here with me.
24        I have it back there.  But it says in the event that
25        there is a -- that the lessor needs to take any
                         COOK & WILEY, INC.
                            Page 120

Rough Copy 12 22 08.txt

136

1    action to enforce payment of the rent, the lessee

2    agrees to be liable for all reasonable expenses

3    incurred in prosecuting that action, and it

4    explicitly includes attorney's fees.

5          THE COURT:  Okay.  Thank you.

6          SPEAKER 3:  Good afternoon, Your Honor.  Paul

7    Bliley.  I represent several of the landlords:

8    Burbank mall associates, crown C C I, hey ward 880,

9    LLC, save mart supermarkets, C C investors 1997 and

10   the luck now landlords.  I join in Mr. Pollock's

11   argument.

12         THE COURT:  All right.  Thank you,

13   Mr. Bliley.

14         SPEAKER 3:  Good afternoon, Your Honor.

15   Malcolm Mitchell on behalf of Polaris, Circuit City

16   LLC.  I believe, Your Honor, with regard to this

17   timely issue -- timeliness issue, that section 365 D

18   3 does, in fact, talk to or speak to -- it says

19   timely perform all obligations of the debtor.  It

20   does say that the court may extent for cause the

21   time for performance of any such obligation that

22   arises within 60 days after the the date of the

23   order for relief, but the time for performance shall

24   be extended beyond such -- sorry.  But the time for

25   performance shall not be extended beyond such 60-day

              COOK & WILEY, INC.

137

1    period.  So I believe, Your Honor, and submit to

Rough Copy 12 22 08.txt

2      you, that it is clear that the legislature spoke to

3      the issue of timeliness so that if it comes due --

4      if the obligation arises as has been conceded on the

5      accrual basis as counsel for the debtor has

6      conceded, the obligation arose on November the 10th

7      for the stub rent, and the furthest that could be

8      extended would be for 60 days.  And so, for the rent

9      that comes due for the period November the 10th

10     through November the 30th, we would submit that, as

11     has been previously argued, January the 9th would be

12     the 60th day.  And that would be what the court

13     should rule, that that obligation should be extended

14     only to the end of that period.

15              THE COURT:  All right.  Thank you.

16              SPEAKER 3:  Good afternoon, Your Honor.

17     Clinia Miller on behalf of two landlords, first

18     industrial realty trust Inc. and general Orlando

19     authority.  My clients, Your Honor, were among the

20     groups of objecting landlords in the prior hearing

21     before the court here on December the fifth.  I just

22     wanted to main continue the request of my clients

23     that the court ordered the debtors to immediately

24     pay any amounts due to them for the stub period.

25     And wanted the record to reflect that my clients

                    COOK & WILEY, INC.


                                        138


1      continue to pre serve their right to an

2      administrative claim for the amounts that are due

3      for the stub period.  And we have an agreement with

4      the debtors that to the extent the court orders

5      payment of such rent and finalizes the timing of

Rough Copy 12 22 08.txt

6        such payment, we'll work with them to reconcile the

7        amounts that are due and owing.  And if we cannot

8        reach an agreement, we'll schedule an evidentiary

9        hearing at a later date.

10            THE COURT:  All right.  Thank you.

11            SPEAKER 3:  Good afternoon, Your Honor.  My

12       name is Pete peril.  I'm here on behalf of prat

13       center LLC and valley corner shopping center, LLC.

14            Your Honor, first of all, I'd like to join in

15       the argument that is have been made thus far on

16       behalf of my clients and then point out some

17       language this which is also in the track auto case

18       which I think is instructive.  Quoteing from the

19       development of New York case, the judge states that

20       section 365 T 3 advances the landlord to the head of

21       the line for the current payment of on going expense

22       in recognition of his unique and voluntary creditor

23       status.  It then goes onto talk about whether this

24       should be treated as a super priority or not.  In

25       that particular instance the court said No. I think

                    COOK & WILEY, INC.


                    139


1        case is clearly distinguished from that case in

2        that, that case was filed on July 5th of 01, I

3        believe.  I'm not sure when the motions were

4        actually filed, but the decision was rendered in

5        March of 02.  I'm going to assume that some time had

6        passed between fileing the motion by the landlord

7        and the rendering of the decision.  And the pudgy

8        case states that one of the reasons behind the

                    Page 123

Rough Copy 12 22 08.txt

9    holding is to encourage lessors to be proactive in

10   asserting their rights.  And I think clearly that is

11   the case here, Your Honor.  The landlords have been

12   proactive.  Ans as a result, we believe 365 D 3

13   dictates that they should be moved to the head of

14   the line and paid for the stub rent.

15        The argument raised by the debtor regarding

16   defaults under the DIP facility I'm not sure works

17   here.  The debtor made the decision, obviously, in

18   coming up with this budget not to pay stub rent.  It

19   they could have just as easily submitted a budget

20   that contemplated stub rent and had that as part of

21   their tip agreement, presumably.  We don't believe

22   the landlord should be penalized for not includeing

23   that in their initial budget.

24        THE COURT:  Thank you.

25        SPEAKER 3:  Thank you, sir.

                COOK & WILEY, INC.


                                        140


1         SPEAKER 3:  Good afternoon, Your Honor.

2    David caulks on behalf of the landlord port Arthur

3    holdings three limited.  Much of my argument has now

4    been made perhaps more persuasively than I would

5    have by others on behalf of the landlords.

6         I did want to emphasize the liquidity issue

7    again.  It seems to me that to the extent that the

8    debtor made an assumption that they would not have

9    to pay currently for the right to stay on the

10   premises while they earned revenue from that, that

11   is a self-inflicted problem that should not now be

12   used as argument that should advance the cause that

                    Page 124

Rough Copy 12 22 08.txt

13        they shouldn't honor the obligations that legally

14        they have under section 365 D 3.

15            I should also note that to the extent that we

16        hope the court will not rule that they are an

17        administrative expense, but to the extent to court

18        does so, I believe the deadline may have been Friday

19        to file an administrative claim.  So certainly we

20        need to make sure -- to the extent -- because I know

21        we did not treat our stub rent as an administrative

22        claim, and we don't believe it is.  But to the

23        extent that the court should rule otherwise, we'd

24        want to make sure that the landlords are provided

25        ample opportunity to file their claims timely.

COOK & WILEY, INC.

141

1            Thank you, Your Honor.

2            SPEAKER 3:  Good afternoon, Your Honor.  Neil

3        McCullough.  I'm here on behalf of two of the

4        landlords, Panattoni Northglenn and Panattoni

5        Denton.  They're items number 15 and 17 on the

6        agenda for this afternoon.  I address the Court only

7        to state my clients agree with the arguments made by

8        counsel so far, and to join in that agreement.

9            THE COURT:  All right.  Thank you.

10           SPEAKER 3:  Good afternoon, Your Honor.

11       Robert Lee from Kelly.  I represent developers

12       diversified, general growth, wine garden realty,

13       basile, Phillips, regency centers -- six or seven

14       other landlords, Your Honor, with a total of 79

15       locations that are going forward.

Rough Copy 12 22 08.txt

16          Certainly agree with all the comments that

17      Mr. Pollock put on the record.  I would just like to

18      add that we believe the accrual method is entirely

19      consistent with Congressional intent.  It's current

20      payment for post petition services.  It's consistent

21      with the relevant case law, track auto, best

22      products.  And it's consistent with the over all

23      purposes of the the code.  With respect to the

24      timing question that you've asked for several folks

25      what does 365 D 3 mean with respect to timely

                    COOK & WILEY, INC.


                                                    142


1       performance.  I think what you could find with

2       almost all these leases is if the rent doesn't

3       commence on the first they of the month, then it

4       shall be due and payable on the first day of the

5       following month.  And to the extent that you impose

6       this legal fiction that we've been discussing on the

7       bankruptcy code, you have the pre petition portion

8       and then you have post petition rent due.  To the

9       extent it's not due on the first day of the month,

10      it should be due timely on the first day of the the

11      next month.  But to the extent that the argument --

12      you know, that the statute provides for the latest

13      day of the timing here would be January 9th, we ask

14      at the latest that the court order that the debtor

15      pay the stub rent on January 9th.  We also did file

16      the joinder, Your Honor.  And we attached that -- a

17      copy of the memorandum of opinion that judge Gropper

18      just issued in the southern district of New York on

19      stone barn.

Rough Copy 12 22 08.txt
20          THE COURT:  All right.  Thank you.
21          SPEAKER 3:  Good afternoon, Your Honor.  Mary
22    house on behalf of Burr, Street, C I M Birch Street.
23    We join in the arguments that have been made this
24    morning.
25          THE COURT:  Thank you.
                COOK & WILEY, INC.


                                           143

1           SPEAKER 3:  Nicholas forehand, Your Honor.  I
2     have thought I was going to be last, but someones
3     else came in behind me.
4           THE COURT:  You can go back.
5           SPEAKER 3:  I too represent a number of
6     landlords who were objecting landlords to pre serve
7     their rights at that time December fifth hearing for
8     this specific hearing today due to a number of other
9     factors it appears that the number of leases that
10    I've got at this point are down to about six or
11    seven that are affected by this issue, west field,
12    cardinal capital has a couple.  Capital maybe a
13    couple also.  Your Honor, I adopt and fully support
14    the well-raised arguments of both Mr. Iehan and
15    Mr. Pollock and the others that have come up here
16    today.  This is an issue that has gone and come back
17    in a lot of ways.  This issue started as the courts
18    were generally uniform in believing this was the pro
19    rata approach was correct.  There was a swing toward
20    the billing date method and now I believe the courts
21    are swinging back conclusively toward the accrual or
22    pro rata method.  And I think that the court ought
                    Page 127

Rough Copy 12 22 08.txt
23     to -- ought to go with the -- substantially with the
24     track auto case.  Thank you very much, Your Honor.
25               THE COURT:  Thank you, sir.
                    COOK & WILEY, INC.


                                                    144

1               SPEAKER 3:  Good afternoon, Your Honor,
2     again.  Daniel Kerrigan, long and aldridge, with
3     orchard park leaseholders.  It's number 25 on this
4     afternoon's agenda.
5               Our client is in the prime release with a
6     lease to the debtor, and then leases between the
7     debtor and subtenants both, whatever -- at this
8     stage.
9               Your Honor, the debtor's argument in its
10    omnibus objection and omnibus response to these
11    various motions that are sort of put together for
12    purposes of the hearing really rely on two cases:
13    K-Mart, and they rely on the case that K-Mart relied
14    on, chambliss out of Delaware.  There are two pieces
15    to these cases that we respectfully suggest that the
16    Court can consider.
17              One is with respect to K-Mart.  This was a
18    situation where the debtor had not been paid under
19    the sublease; and, in fact, the prime landlord in
20    that case or over lord, as the debtor characterizes
21    it, had been paid by the sub lessee.  These were not
22    situations where the debtor had been paid and then
23    had retained the payments and yet had not paid the
24    amounts due under the prime lease.  And, in fact, in
25    the K-Mart case, and as noted in one of the
                    COOK & WILEY, INC.

Rough Copy 12 22 08.txt

145

1    pleadings to which we joined.  And I might say at
2    this point before I forget it, I join in everything
3    the landlord body has said here today?
4    A.    I was confident of that.
5         SPEAKER 3:  Somehow I thought you were, Your
6    Honor.  Your Honor, may I approach with copies of
7    orders from the K-Mart case.  And these are
8    referenced in --
9         THE COURT:  Give it to the security officer.
10        SPEAKER 3:  Thank you, Your Honor.  I have
11   copies for counsel.
12        Someone was helpful enough to mark these up
13   for me to -- before I got a hold of them -- to
14   illustrate.  They are cited in the golf galaxy
15   response to the motion to reject that was filed at
16   one to have first day motions.  If the court would
17   turn to the second -- the one that does not have the
18   reference to shy low war cliff super value -- either
19   the second or the first, depending on which you
20   have.  There is a provision on page 2, paragraph 3,
21   which says that the rights of any subtenant of the
22   premises subject of any real property lease under
23   365 H of the code are pre served with respect to the
24   debtors only.  Provided, however, with respect to
25   any real property lease subject to a sublease, the
                 COOK & WILEY, INC.

146

1    debtor, subject to and after reconciling the sub
                    Page 129

Rough Copy 12 22 08.txt

2      tenant's accounting against any outstanding amounts

3      owed to the debtors under the applicable sublease

4      and applying any such rentals received against any

5      such outstanding amounts shall turn over to the

6      applicable landlord any and all rentals collected by

7      the debtors from the subtenant of premises subject

8      to such real property lease for rental periods

9      arising from and after the effective date of the

10      rejection.

11          If you tie that to the prorata -- the

12      prorated view that we're using in this case per

13      agreement with the debtor, what that would suggest

14      is that anything that the debtor has collected with

15      respect to a post rejection, post petition period --

16      and remember, the debtor seeks to reject effective

17      as of November 10 or 11 or 12, whatever the date

18      is -- that those monies should be paid over to the

19      prime landlord.

20          So what K-Mart, which is one of the prime

21      cases they rely upon in this situation, is factually

22      different at least in the sense that there was, in

23      the particular lease that was considered in the

24      cited case, the post rejection payments, sublease

25      payments had been made to the prime landlord; and in

COOK & WILEY, INC.

147

1      this case essentially the rejections of these

2      subleases and prime lease were conditioned upon the

3      pay over of monies that the debtor had actually

4      received.  It's not clear from this, and there is

5      some -- it's somewhat equivocal as to what exactly

Page 130

Rough Copy 12 22 08.txt

6        they're talking about here.  But it does say and it
7        does recognize the principal that if you're going to
8        take the advantage of having the rights as a lessee
9        and as a sub less or, and you take the benefits from
10       the sublease, that you should have to disgorge those
11       benefits as a condition of getting your earlier
12       rejection date.
13            THE COURT:  Do you know whether or not the
14       order you referenced the court, whether there was
15       something that was contested and this was a decision
16       of the court or whether there this was an agreement
17       of the parties that commemorate and the court was
18       commemorating the agreement of the parties or how
19       this all came before the court?
20            SPEAKER 3:  I do not, Your Honor, only what's
21       recited in the order itself.
22            THE COURT:  All right.  Thank you.
23            SPEAKER 3:  The two separate orders where it
24       was recited.
25            In addition, Your Honor, because K-Mart
                         COOK & WILEY, INC.


                                                   148

1        relied so much upon Shea less F you look very near
2        the end to have district court's decision in Shea
3        less, it's basically the last two paragraphs.  I'm
4        sorry I have a version that has pages 1 through 5
5        and that's not the B R.  It's 147 B R 96.  It's near
6        the end of the case at page -- it looks like it's at
7        page 101.  What it describes is that, in fact,
8        during the hearing on the -- for the district court

Rough Copy 12 22 08.txt

9      on this particular matter, what came up was that the

10     debtor had been paid post petition and post

11     rejection by the sub for periods of time post

12     petition.  And what the decision says at the end, it

13     says, it further appears -- and chambliss apparently

14     concedes this point -- that chambliss is liable to

15     kaplan for approximately 60 days administrative rent

16     from the period April 8, 1991 to June 7, 1991.

17     Additionally, chambliss must pay to kaplan any funds

18     paid to chatliss by PS as rental payments, including

19     including approximately $81,000 of said funds to

20     which the parties referred during oral argument

21     before this court on May 29, 1992.  Again, chatliss

22     is recognizeing the principle that if you want an

23     earlier rejection date on both the prime lease and

24     on the sublease, you must disgorge that which is

25     attributable to the post rejection period.

COOK & WILEY, INC.


149


1          Now, in this case, again, since it was

2      November ten is the date that they're looking for as

3      the rejection date, then the amount attributable

4      that they've been paid to the remainder of the month

5      ought to be paid over to the prime landlord.  And

6      that, Your Honor, is not so far from what the debtor

7      has done in those situations where there has been a

8      G O B sale on going in a lease premises where

9      they're selling the -- where they're selling the

10     inventory and what have you that's on site.  What

11     they've done in reliance upon their pre petition

12     agreement with the G O B sales agent or liquidate or

Rough Copy 12 22 08.txt

13          or what have you, is that there's a provision that

14          the debtor is reimbursed for the expenses of the G O

15          B sale; and those reimburses include rental

16          payments, sort of stub rentals, if you will, from

17          the time of the filing until the time they complete

18          the G O B sale.  Now, what's the different

19          represents, really, economically whether you get

20          paid in arrears or you get paid in advance.  The

21          debtors acknowledge it would be unfair, it would be

22          unequitable, it would be inappropriate to take the

23          money and then on these G O B sales situations and

24          not pass it through to the landlords.  Why then is

25          it inequitable, unfair or otherwise for them to have

                    COOK & WILEY, INC.


                                                        150

1          been paid in advance and not pass it through to the

2          post petition period between the date they want as

3          the rejection date and the end of the month?  And

4          that basically, Your Honor -- I mean T debtor cites

5          a lot of cases and engages in a lot of discussion in

6          their briefs about how to do so, they're not allowed

7          to make those payments.  They're not allowed to make

8          those reimbursements because of the bankruptcy code.

9          Well, at least two courts have recognize that had

10          they are allowed.  They're allowed because it's

11          within the court's discretion to condition their

12          rejection upon making those payments.  And that's

13          what we asked for here.  The debtor has in its

14          opening briefs on its first day in its first day

15          declarations, they have essentially provided to the

                    Page 133

Rough Copy 12 22 08.txt

16      court and to the creditor body a whole lot of

17      reasons to disregard the priority scheme set up in

18      the code and the distribution scheme set up in the

19      code.   And it's based on things like the doctrine of

20      necessity.   It's based on things like business

21      judgment.   It's based on things like, if we don't do

22      this, the reorganization of the debtor is going to

23      be hampered and the ultimate detriment of all the

24      creditors and stakeholders in the case.

25          Your Honor -- and those arguments -- the
                    COOK & WILEY, INC.


                                                        151


1       Court has accepted those arguments and so ruled, and

2       frankly, they make a lot of sense in those cases.

3       But it does upset the statutory scheme.   What the

4       K-Mart cases did and what chambliss did was to take

5       the statutory scheme and to find a way to reconcile

6       it with the facts and with the payments that have

7       been made.   And what they essentially did was to say

8       you can get your rejection date, but you can't keep

9       the money that you were paid already for post

10      petition periods.

11          And that's all we're asking to be done here,

12      Your Honor, in the case of the overlord sublessor,

13      sublessee situation.   Thank you, Your Honor.

14          THE COURT:   Thank you.

15          SPEAKER 3:   Your Honor, if I may thank you on

16      behalf of our clients and our firm and my colleague

17      I believe who is on the phone for allowing us to

18      appear pro hoc vice, and may we wish the court and

19      its staff a happy holiday.
                    Page 134

Rough Copy 12 22 08.txt

20          THE COURT:   Thank you, sir.

21          SPEAKER 3:   Thank you, Your Honor.

22          SPEAKER 3:   Good afternoon, Your Honor.  I'm

23     Janet myberger.  I'm appearing on behaf of Rick

24     Mack, R I C M A C, equities corporation.

25          Your Honor, I filed an objection to the

                    COOK & WILEY, INC.


                                        152

1      debtor's motion to extend the time to assume or

2      reject my client's lease, docket number 597.  It was

3      on the agenda for the December 5 omnibus hearing,

4      which I attended.  I did not note my appearance for

5      the record.  I did want to do that today, though,

6      Your Honor, because my client's objection, which was

7      primarily based on the debtor's failure to comply

8      with section 365 D 3 and failure to timely perform

9      their post petition obligations under my client's

10     lease.  My client's objection was resolved.  And it

11     was stated on the record it was resolved, as were

12     the objections of the other landlords, except with

13     respect to the stub rent.  And that issue was

14     carried forward to today.  It's not on the agenda

15     technically, but I did want to make clear that it

16     was agreed and stated on the record on December 5

17     that the landlords who objected to the motion to

18     extend, their objections would be treated as motions

19     to compel payment of the stub rent and taken up

20     today, along with those other motions.

21          So I'm noting my appearance for the record.

22     And obviously, Your Honor, I agree with the other

                    Page 135

Rough Copy 12 22 08.txt

23    comments of the other landlords' attorneys.

24         THE COURT:  Thank you very much.

25         SPEAKER 3:  Good afternoon, Your Honor.  My

              COOK & WILEY, INC.


                                         153

1    name is Daniel.  I'm here on behalf of several

2    landlords, including amcap north point and am cap

3    overland.  I'd just like to join on the record the

4    arguments of both Mr. Lee han and Mr. Pollock.  I

5    thought I was the last, but I guess not.

6         SPEAKER 3:  Good afternoon, Your Honor,

7    sheila del cruise again.  I am counsel also for

8    altamonte springs real estate development.  Very

9    similar to what prior counsel has said regarding

10   filing an objection to a debtor's motion to extend

11   the time to assume or reject leases, altamonte also

12   filed an objection which pursuant to the December

13   fifth hearing, Mr. Galardi did represent that

14   whether you filed a motion to compel, as many here

15   have already done, or an objection as my clients,

16   all would be treated as a motion to compel.  So on

17   behalf of altimont springs, whose separate issue was

18   the only thing left to resolve in their rejection in

19   the December fifth hearing, we'd also like to join

20   in with the other landlords and request stub payment

21   at this time, Your Honor.

22        THE COURT:  All right.  Thank you very much.

23   Mr. Galardi?  So I guess for the Court's

24   understanding, because we're taking up a lot of

25   these matters together on the agenda --

              COOK & WILEY, INC.
                 Page 136

Rough Copy 12 22 08.txt

154

1          MR. GALARDI:   And I think we'll go through

2     the agenda one by one after that, because I think we

3     have to do that.   One issue that seemed common to

4     all of them --

5          THE COURT:   Is the stub rent.

6          MR. GALARDI:   So the first thing with respect

7     to the two counsel that got up that did not get

8     listed on the agenda, but did raise this in the 365

9     D 4 objection, I affirm I didn't require a motion to

10    go and make this argument.   I thought we had plenty

11    of those.

12         Your Honor, you've heard a lot about the

13    southern district of New York.   You've heard a lot

14    about the third circuit.   And you've heard a lot of

15    track auto.   But everybody seems to want to forget

16    one part of track auto.   That's where the court

17    specifically said finding the pudgy out of the

18    bankruptcy court southern district of New York, we

19    find this reasoning persuasive, and agree that the

20    remedy for untimely performance of the 365 D 3 is

21    not super priority.

22         So even if everything they say is correct,

23    and even if 365 D 3 is the statute that we are going

24    under, they're asking for super priority claim.   And

25    this circuit or this jurisdiction -- as opposed to

                    COOK & WILEY, INC.

155

1     Delaware, as opposed to New York, as opposed to the
                    Page 137

Rough Copy 12 22 08.txt

2          sixth circuit, as opposed to K-Mart, as opposed to
3          every other jurisdiction -- has a different
4          standard.  That's part of the problem.  That's why
5          landlords show up at every jurisdiction, because
6          they want one standard.  Frankly, from a debtor's
7          perspective, we do, too.  But we're living with the
8          auto track.  And auto track says it's not
9          necessarily a super priority claim.
10              Getting back to, I think, what Your Honor
11          asked is the simplest question here:  What is timely
12          performance?  365 says timely performance.  Well,
13          the child world case that started this says what the
14          lease says.  Well, what the lease says was this rent
15          was due November first.  So, therefore, this timely
16          obligation is not a timely obligation that can be
17          paid whatsoever.  So we're not going under the
18          lease.  So we're now creating a legal fiction.  What
19          courts have done with the accrual method is created
20          a legal fiction.  And the legal fiction basically
21          says what?  It says, well, there's this period of
22          time after you fail to timely perform that there is
23          a day-to-day essential benefit to the estate, but we
24          don't have to worry about 503 B because we're going
25          to do accrual.  All we've said is with respect to

                    COOK & WILEY, INC.


                                      156


1          that period of time, nothing under any lease under
2          any contract is an obligation that has to be
3          performed except for the legal fiction.  So this
4          court has the authority to decide when do you pay
5          that amount?  What auto track says is it's not

Rough Copy 12 22 08.txt

6      entitled to super priority.  That to me says it's an

7      administrative claim.  So Your Honor has -- and they

8      even go through and use the 507 A analysis.  They

9      say it doesn't have to satisfy the benefit to the

10     estate under 503 B, but it is still an

11     administrative claim.  It is still a 503 D 1

12     expense.  You just don't have to show benefit to the

13     estate because either it's so obvious or need not be

14     said that if you're in a premises occupying those

15     premises, it's an actual and necessary cost of doing

16     business.  The accrual method works.  So given 507 A

17     priority -- and that means paying 1129A9.  You can

18     pay at that point.

19         So I think the first aspect is

20     notwithstanding what judge groper says in New York,

21     and notwithstanding what the 6th circuit says, and

22     notwithstanding what the third circuit says, this

23     court has already said it does not have to be

24     treated as a super priority claim, whether it's 365

25     D 3 or not

             COOK & WILEY, INC.

                            157

1         Now, Your Honor -- and I appreciate

2     Mr. Pollock giving me to January 9th.  I actually

3     think that's an incorrect reading.  So although we

4     agree about many things, I actually don't think --

5     I'll gladly say that at the earliest I would pay it

6     January 9th.  But I don't think that's what 365 D 3

7     says.  It says the court may extend for cause the

8     time for performance of any obligation that arises

Rough Copy 12 22 08.txt

9      within the 60 days after the order for relief.

10     Again, our view is this obligation did not arise

11     under any contract in that 60 day period.  It arose

12     on November first.  So I don't get only to January

13     9th.  I get what 507 A says I get.  I get to the

14     confirmation of a plan.  Whether it's 365 D 3 -- so

15     I put two things together.  I put the auto track

16     together and it says even if it's 365 D 3 it says --

17     and everybody up here wanted to get auto track, auto

18     track, auto track.  Now they don't want it because

19     it's not a super priority claim.  I don't have to

20     pay it right now.  365 D 3, it's not a time -- an

21     obligation that arose after the 60 days.  It's a

22     legal fiction.  It's not an obligation.  The court

23     has basically said we agree it's 365 D 3, but it

24     doesn't go to establish the priority.  It follows

25     the pudgy's development case and says it doesn't

                    COOK & WILEY, INC.


                                              158


1      tell you when the priority is.  It doesn't tell you

2      the established priority.  It does tell you that

3      it's not a super priority.

4               And so I come back to Your Honor has the

5      discretion under the circumstances to decide when

6      this payment has to be made.

7               Now, what we have done -- many people will

8      say, well, we should put on evidence that we might

9      be administratively insolvent.  Well, that would

10     seem to me counterintuitive because if we're

11     administratively insolvent, I'd be far more

12     sympathetic to the landords paying now because you

Rough Copy 12 22 08.txt

13              don't want them to take the risk.  The whole point
14              of the track auto case was to say, come in.  Don't
15              sit back on your rights.  Assert your claim.  Get it
16              asserted.  We have agreed that we would not have it
17              subject to disgorgement.  That was the business
18              conversation on 365 D 36789 we'll agree you have an
19              administrative claim.  We'll agree it's not subject
20              to disgorgement.  What we haven't agreed to -- and
21              what I don't think track auto says, I don't think
22              365 D 3 says, and I don't think any opinion says --
23              even Judge gropper's opinion didn't say you have to
24              pay it now.  You have to pay it on today.  And
25              timely obligation here doesn't make sense when the
                            COOK & WILEY, INC.


                                                            159


1               timely obligation was pre petition.  The landlords
2               put it back to pre petition.  It was ten days.  They
3               didn't act pre petition.  Timely performance under
4               the lease cannot happen now.  And Your Honor has the
5               -- both precedent, plus discretion, plus no statute
6               that precludes that allows you determine the timing
7               of the payment.  And all we've asked is the timing
8               of the payment is not now.  The timing of the
9               payment may be January 9th.  It may be January 16th.
10              It may be the effective date of the plan.  But it is
11              nothing required by statute that says it's today.
12              And we are asking you to not order it today, to deny
13              the motion without prejudice to come back with
14              change circumstances -- and again, I don't need the
15              landlords on a weekly basis -- but we think at least
                            Page 141

Rough Copy 12 22 08.txt

16          at this point since it's not super priority, they

17          have the protection that they're not going to be

18          subject to disgorgement that they have to share with

19          others, that we would ask the court to say it's a 07

20          A administrative claim 365 D 3 does not require that

21          we timely pay it right now.  We agree to the accrual

22          method which created a legal fiction.  We don't

23          concede that we've concede that had the accrual

24          method says it's a timely obligation.  To agree with

25          the accrual method is to say we understand it's a

                    COOK & WILEY, INC.


                                                   160


1           post petition expense.  It's not to say that there

2           is an obligation to be bound to pay it and to timely

3           perform it.  We agree it's an obligation.  We agree

4           it's an administrative expense.  If we had pushed

5           the billing date approach, we would have pushed

6           it -- this isn't even an administrative claim.  It

7           would have been a pre petition claim the sixth

8           circuit said.  So we're agreeing to compromise and

9           say it's an administrative claim, but we don't think

10          365 D 3 requires payment.  And we think simply the

11          track auto case says it's not entitled to super

12          priority, which is to pay it in advance of other

13          administrative claims, or in advance of the secured

14          lenders.  And we would ask Your Honor to deny the

15          request for stub rent without prejudice if there's a

16          change in circumstance.  But to say that it's a 507

17          A claim, just as it says in track auto, and that it

18          can be paid in accordance with when 507 A claims are

19          paid, which is the effective date of the plan unless
                            Page 142

Rough Copy 12 22 08.txt

20          the court orders otherwise.   That's our response,

21          Your Honor.

22               THE COURT:   All right.   Thank you.

23          Mr. Pollock, you don't agree with that?

24               SPEAKER 3:   No, Your Honor.   Since this is

25          really a landlord motion, might I just reply to two

                    COOK & WILEY, INC.


                                                       161


1           points that were made subsequent to our initial

2           argument.

3                THE COURT:   I'll let you.

4                SPEAKER 3:   Thank you, Your Honor.   First,

5           just to clarify one thing that was said, somebody

6           raised an issue about a Friday bar date for

7           administrative claims.   That was a 507 B 9 claim.

8                MR. GALARDI:   It's a 07 -- it wasn't an

9           administrative claim.

10               THE COURT:   I was aware of that.

11               SPEAKER 3:   I didn't want everybody to be

12          rushing in and filing administrative claims.

13               Your Honor, the two points that were raised

14          was this sort of super priority and legal fiction

15          issue.   I don't think it's either there is no legal

16          fiction.   Legal fiction is that the rent is only due

17          on the first of the month.   That presumes that if

18          the debtor doesn't pay or any tenant doesn't pay,

19          the rent goes away.   He doesn't have to pay on the

20          second of the month and say I didn't pay you on the

21          first.   I don't have to pay till the next month.

22               THE COURT:   There's no question the rant rent

                          Page 143

Rough Copy 12 22 08.txt

23    is going away everybody acknowledges the rent is due

24    for the stub rent.  The question is:  What does

25    timely perform mean?  And that was the question I

COOK & WILEY, INC.

162

1     think people were trying to answer.  And Mr. Galardi

2     suggested that the obligation to perform occurred on

3     the first of the month, if that's what the rent --

4     the lease says, or if it has some other date,

5     whatever that date is.  And that's what timely

6     perform means.  And then if that date has come and

7     gone, then it's up to the court to try to figure

8     out, okay, when does the debtor -- when is the

9     debtor required to perform.

10         SPEAKER 3:   And that's what I'm suggesting to

11    Your Honor is incorrect, that the rent may be due on

12    the first, but the rent continues to be due

13    throughout the period, throughout the month.  The

14    rent does not just -- is not just due on the first.

15    The rent is due until it is paid.  And the proration

16    method separates the pre petition versus the post

17    petition.  And in essence, most of the leases say

18    the lease doesn't begin on the first of the month,

19    and you pay from that day till the end of the month.

20    And that's what we have.  The rent doesn't go away.

21    The fiction is that the rent was only due, and is

22    there for a prepetition obligation.  What I'm saying

23    to you --

24         THE COURT:   That's not what we're saying at

25    all.  We're saying it's a post petition obligation

COOK & WILEY, INC.

Rough Copy 12 22 08.txt

163

1       for the stub rent.
2                SPEAKER 3:   Correct.
3                THE COURT:   And that it is payable to the
4       landlords.  It's at least entitled to a 507
5       administrative claim.  Now, the question is when
6       does it have to be paid.  And that's the thing I'm
7       struggling with, because if the obligation occurred
8       on the 1s first of the month to pay it, when is the
9       time fixed and what does timely perform obligations
10      arise after commencement of the case?  What does
11      that mean?
12               SPEAKER 3:   And that's what I'm suggesting to
13      Your Honor, is that under virtually every lease,
14      that obligation is a continuing obligation.  The
15      timeliness of it doesn't go away on that first of
16      the month.  The timeliness goes -- begins or accrues
17      essentially each day.  And on the first day of the
18      filing there is a timely obligation -- there's still
19      an obligation to timely pay.  The outside of that
20      timely obligation.  And I read that section quite
21      differently than Mr. Galardi suggests -- the outside
22      obligation is 60 days.  The court I say cannot go
23      beyond that period.  That goes back to the original
24      Congressional intent when the 1984 amendments were
25      passed where the the off cited comments of senator
                        COOK & WILEY, INC.

164

1       hatch is that the landlord is to be paid and not
                        Page 145

Rough Copy 12 22 08.txt

2    have to wait for the payment of the rent.   Things

3    are to be done on a timely basis.   That's what this

4    was all about in the first instance.   Could we have

5    written it more clearly?  Absolutely.   Would we like

6    to see it changed so it is clear and we don't have

7    these fights going forward?  Absolutely.   But as

8    others have said, this is what we have to deal with

9    today, and that's the basis that Your Honor has to

10   reach an ultimate decision.

11        THE COURT:   Of course, this is probably the

12   most amended section of the entire bankruptcy code.

13        SPEAKER 3:   We've tried to amend it even

14   more, Your Honor, but have not been successful.

15   Those are really the only two points, Your Honor,

16   the 60 day, my disagreement with 60 days that, being

17   the outside date for timeliness and the other

18   argument with regard to --

19        THE COURT:   All right.   Thank you, sir.

20        SPEAKER 3:   Thank you, Your Honor.

21        SPEAKER 3:   If I may, Your Honor, Michael

22   cadelle is on behalf of Cole partners.   There are

23   the distinction that our clients have in this

24   instance, and that is that our rent came due at the

25   end of the month instead of the beginning of the

                    COOK & WILEY, INC.


                                             165


1    month.   So on November 31st is when our rent was

2    due.   So all the arguments Mr. Galardi is making

3    that there is this legal fiction does not apply in

4    our instance; and that, instead, we are post

5    petition obligation.   And that's why we feel it's

Rough Copy 12 22 08.txt

6       important that the debtor first having taken the
7       position that the billing method applies would make
8       the rent for the entire month due.  But at a
9       minimum, if the court adopts the accrual method,
10      then we would at least be obligated to receive the
11      rent for the period from November 10th to the end of
12      the month.
13              THE COURT:  So your lease provided that on
14      December 1, the November rent was due?
15              SPEAKER 3:  No.  On November 31st, the
16      November rent was due.
17              THE COURT:  Okay.
18              SPEAKER 3:  Thank you, Your Honor.  Pete carl
19      again.  Just a couple of follow-up points.  In judge
20      Gropper's decision, Your Honor, in talking about --
21      I realize the Court is wrestling with the point of
22      timeliness.  It's in re stone bar manhattan LLC,
23      formerly known as steven barry.
24              Judge Gropper says that the Court remains
25      convinced that the proper construction of 365 D 3 is
                        COOK & WILEY, INC.

                                                166

1       to hold the debtors responsible for the stub rent
2       measured on a daily basis as it accrued after the
3       date of the orders for relief and until the end of
4       that month.  So I would concur in the argument
5       that --
6               THE COURT:  So we're sayiing the
7       response -- there's no question about that.  When
8       are you required to make payment for which you're

Rough Copy 12 22 08.txt

9      responsible.

10     SPEAKER 3:   Then I go back to the language of

11     track auto that I cited before which quoted that

12     portion of the pudgy's case that does indicate that

13     landlords are brought to the top of the line.   I

14     believe it says advance the landlord to the head of

15     the line for current payment of on going expenses.

16     And then it seems to condition that on the landlord

17     being proactive in exercising his rights.   And

18     again, I believe that is absolutely the case here.

19     These landlords have come in on a proactive basis to

20     exercise their rights and as a result should have

21     what in effect is a super priority type claim.

22     THE COURT:   But judge Adams in the track auto

23     case, he said it wasn't entitled to a super

24     priority.

25     SPEAKER 3:   Understood.   But I think he

COOK & WILEY, INC.

167

1      needed to look at the time frame there.   As I read

2      this case, that case was filed again in July of 01.

3      I don't think it references here when motions were

4      filed.   But the decision wasn't until March of 02.

5      He says the statute does not allow the landlord

6      should permit his right to lapse into a claim for

7      accrued amounts and later attempt to assert the

8      claim on a super priority basis.   So I think a

9      distinguishing characteristic here is that there was

10     no delay.   There was no waiting.   And the landlords

11     came in right away to assert their claims.

12     THE COURT:   Okay.   Thank you.

Rough Copy 12 22 08.txt

13          SPEAKER 3:   Thank you, sir.

14          MR. GALARDI:   Your Honor, I didn't address

15     two points.   Again, we would rest on the track auto

16     as far as that goes.   The court is pretty clear as

17     to what the debate was.   It says what the debate was

18     on the payment.   Then it says, Your Honor, it won

19     unfair in similarly situated creditors to grant

20     anything more.   So it didn't grant a super priority

21     claim.

22          The one topic I didn't address was the

23     attorney's fees issue.   Just briefly, Your Honor,

24     none of the landlords -- they all put through their

25     leases and fortunately or unfortunately I've been

                    COOK & WILEY, INC.


                                                    168


1      through this argument as well.   The leases are never

2      as clear as the landlords say they are.   And it's

3      not always clear that they're enforcing breachs of

4      the leases or the bankruptcy code.   So we would like

5      to reserve rights on all of those.   We think -- but

6      nothing here would prejudice their claims.   Indeed,

7      Your Honor, even the the counsel who was up here

8      said the fees had to be reasonable.   We have taken

9      the position at least in other cases -- and wouldn't

10     be surprised in we take it here -- that post

11     petition attorney's fees need not be paid.   But even

12     if they are paid, they are restricted to the

13     specific term of the lease.   An invoice would have

14     to be sent.   We would reserve our rights to see the

15     invoice and object to that, Your Honor.

                    Page 149

Rough Copy 12 22 08.txt

16          Again, Your Honor, what the landlords

17     basically want to say is each and every day post

18     petition is a new lease and new transaction, whether

19     it's daily, weekly, by the second.  They want us to

20     pay as we go each and every day.  We don't see that

21     in our leases.  And Mr. poll you can and Mr. lehan

22     get up and say all these leases probably do that.

23     There's many contracts that are pre petition

24     contract that is carry that over and you don't have

25     to pay it F. the first -- the way in which the

                    COOK & WILEY, INC.


                                                   169


1      courts have looked at this is what's the day that

2      the obligation first arose?  The obligation first

3      arose on November first.  No one has objected to

4      that.  So even though we have the fiction, the

5      metaphysical fiction of cutting each day to a day

6      you're getting benefits, Your Honor, again, track

7      auto just simply says that's fine, but we don't have

8      to pay that as a sup priority claim.  So we'd ask

9      Your Honor to deny the motion.

10          THE COURT:  Mr. Galardi, would you comment on

11     Mr. cadella's lease.

12          MR. GALARDI:  Sure.

13          THE COURT:  He has one which the obligation

14     arose on November 31 for the stub rent that would be

15     paid in November.

16          MR. FOLEY:  Your Honor, again, there were

17     other ones we settled last time.  What we we agreed

18     to do was if the obligation was November 30th for

19     the entire month of November, what we've agreed to
                    Page 150

Rough Copy 12 22 08.txt

20      is to pay under the accrual method T 20 days.  What

21      Mr. ca kneel is arguing is, well, I don't really

22      like the accrual method on this particular point.  I

23      like the billing date approach so I can get the full

24      November approach.  Your Honor, what we've said in

25      this case is we'll be governed by Your Honor asking

                        COOK & WILEY, INC.


                                                          170


1       me whether I'm going to step away from the billing

2       date approach, given the track auto and given how

3       everything has developed and given  that I think

4       close to 80 percent of the landlords are here,

5       anyway,  we decided to stay away from the billing

6       date approach.  With respect to that, his argument

7       if if the accrual method is going to govern this

8       case, our view is the same.  If it's due on November

9       30th, we pay the post petition portion from November

10      10th to November 30th.  I think that gentleman wants

11      all the way back to November 10th.  We would say the

12      accrual method if you're going to only do post

13      petition benefit or occupancy, then at least for

14      this period of time we would make that payment only,

15      the 20 day payment.  Thank you.

16              THE COURT:  All right.  Thank you.

17              The court has looked at this matter.  The

18      statute could be a lot clearer than it is.  The

19      court is going to follow the track auto and judge

20      Tyson's prior decision.  It's been established in

21      this district and not order the debtor to pay the

22      stub rent at this time on the basis that it's not

                        Page 151

Rough Copy 12 22 08.txt

23      entitle today super priority.  It is entitled to

24      priority in the administrative claim under section

25      507 A.   The only question is when the timing of the

COOK & WILEY, INC.


171

1       payment should be made.  And the timing of that

2       payment would be, as Mr. Galardi says,s of the

3       effective date of the plan.  But that's without

4       prejudice to any landlord being able to come back

5       for cause and requesting an earlier payment, as

6       developments in the case may dictate.

7               With regard to the payment of attorney's

8       fees, the court is not going to require the payment

9       of attorney's fees at that time -- at this time; and

10      again, reserving the right of the debtor to object

11      to the claims that come due and claims that are

12      made, and will take them up on an individual basis,

13      depending on the contract language set forth in the

14      lease.

15              With regard to leases that provide for

16      obligations to pay rent arising after the

17      commencement of the case, the debtor will be

18      responsible for paying the stub rent, but only the

19      20 day portion of the rent for November.  And that

20      obligation became due on November 31 or whatever day

21      it was set forth in the lease.  So that rent would

22      have to be paid.

23              Are there any other issues that I failed to

24      mention, Mr. Galardi?

25              MR. GALARDI:  I think on the broad issues I

COOK & WILEY, INC.
Page 152

Rough Copy 12 22 08.txt

172

1          think if we run through the agenda things may come
2          up now.  I think that's the best way to approach it.
3              THE COURT:  We can discuss then how we're
4          going to -- with regard to that finding, as well.
5          Let's go through the agenda at this point.
6              MR. GALARDI:  The matter that started this
7          all was the matter of burr bank mall.  I think that
8          addresses all of the burr bank mall issues.
9              THE COURT:  That's item number 8.
10             SPEAKER 3:  This is Paul Bliley.  I think
11         that's correct.
12             MR. GALARDI:  Your Honor, I guess this is as
13         good a time as any to discuss how to do orders on
14         these matters.  Should we just submit individual
15         orders that deny it on the grounds set forth in the
16         record with respect to this particular one and then
17         we can deal with that?  Is that acceptable to you.
18             SPEAKER 3:  That's fine with me.
19             THE COURT:  Okay.  That's fine with the
20         court.
21             MR. GALARDI:  Thank you, Your Honor.
22             Your Honor, the next matter is matter 9 which
23         is the matter of crown C C I.  Again, I think it was
24         the same sort of motion to compel.  I don't know if
25         we've addressed all of the issues.
                    COOK & WILEY, INC.

173

1              SPEAKER 3:  Paul Bliley for C C.
                    Page 153

Rough Copy 12 22 08.txt

2           SPEAKER 3:   That's correct, it's been

3     addressed.

4           THE COURT:   Okay.

5           MR. GALARDI:   The next motion on the agenda

6     is item number ten.  It's the the motion of wood law

7     and associations, again a motion to compel.  I'm not

8     sure.  I think it was only a stub rental.

9           SPEAKER 3:   Sheila del cruise.  Yes, it with

10    was a stub rent issue.  Could Your Honor clarify, do

11    we need to submit individual order force the

12    motions?

13          MR. GALARDI:   It's fine by me to give you a

14    form of order denying the motions for the reasons

15    set forth in the record if that's the easiest thing

16    for you.

17          SPEAKER 3:   That's fine.

18          THE COURT:   Thank you.

19          MR. GALARDI:   Your Honor, the next one is

20    item 11, which is the motion by 502-1286.  I believe

21    that this is the only out standing issue on this was

22    the stub rent because I believe we paid the December

23    rent which got caught up.  I don't know if counsel

24    is here.

25          SPEAKER 3:   That's true for 11 and 12 coming

                    COOK & WILEY, INC.


                                              174

1     up.

2           MR. GALARDI:   And that obviously takes care

3     of matter 12 as well, the motion of concealed

4     limited liability company.

5             Your Honor, the next matter on the agenda was

                    Page 154

Rough Copy 12 22 08.txt

6       item number 13 which was the motion by the debtors

7       to establish bidding procedures.  We had resolved

8       all of the matters, because there were a number of

9       objections to secure amounts, which obviously since

10      we -- let me give some background, Your Honor.  We

11      had basically a process where we were going to

12      auction those leases, I think it was roughly 100 or

13      so -- 155 of the ones that were store closings.

14      Unfortunately, given the retail environment I

15      believe in general and many big boxes being on the

16      market, we got only one bid by one party for the

17      lease.  So we canceled the auction with respect to

18      that.  The one objection that we have is the

19      objection of reoh associates which is item B on page

20      16.  My understanding is that that is now resolved

21      with reoh.  So there would be no other objections.

22      I think there's no order that Your Honor has to

23      enter unless we have a stipulation order with reoh

24      that may resolve that objection.  Your Honor has

25      already approved the procedures.  This was actually

                 COOK & WILEY, INC.

                                                    175

1       just carry over matter.

2                THE COURT:  All right.  Very good.

3                SPEAKER 3:  Your Honor, to go back to the

4       decision the Court made after the discussions with

5       Mr. Pollock and so forth, we would respectfully ask

6       if the Court will make the findings and conclusions

7       as to that issue, and either consider today or

8       consider at a very early date a request for either

                 Page 155

Rough Copy 12 22 08.txt

9        an interlocutory direct appeal or interlocutory

10       appeal to the extent the Court does not believe it's

11       a final order -- a final decision, because we think

12       it's important.

13             THE COURT:  The Court will issue findings

14       about conclusions of law.

15             SPEAKER 3:  Thank you very much.  I apologize

16       for interrupting.

17             MR. GALARDI:  I'm usually the ones asking for

18       orders to take appeal.  So I'm sympathetic to that.

19             Number 14, Your Honor, is the motion for

20       supporting memorandum of C CD C.  I believe that is

21       actually listed on the agenda as resolved.

22             SPEAKER 3:  Good afternoon, Your Honor.

23       Robbie westerman on behalf of C CD C Marion.  That's

24       correct; we resolved that matter with the debtors.

25       That motion is withdrawn.

               COOK & WILEY, INC.


                                                    176


1              THE COURT:  Okay.  Thank you.

2              MR. GALARDI:  Your Honor, the next matter on

3        the agenda was Panattoni Denton's motion to compel.

4        I think the only outstanding issue under that one

5        that has not been consensually resolved was the stub

6        rent.  With Your Honor's decision, I believe that is

7        now resolved.

8              SPEAKER 3:  Correct, Your Honor, Neil

9        McCullough on behalf of Panattoni.  That's true with

10       respect to 15 and 17.

11             THE COURT:  And 17?

12             SPEAKER 3:  Yes, sir.

Rough Copy 12 22 08.txt

13          THE COURT:  All right.

14          MR. GALARDI:  Your Honor, the next objection

15     is objection of landlords -- I can't read my own

16     writing.  I believe this too was a stub rent issue.

17     It's docket number 627.  I don't know if counsel is

18     here.

19          THE COURT:  Yes.

20          SPEAKER 3:  Good afternoon again, Your Honor.

21     William gray for ray musey's Inc. 146 mill bury LLC,

22     interstate Augusta properties LLC, E and A northeast

23     limited partnership, and N P P development LLC.  The

24     issue was the stub rent.  Thank you, Your Honor.

25          THE COURT:  All right.  Thank you.

                    COOK & WILEY, INC.


                                              177


1          MR. GALARDI:  The next matter that we have

2     not addressed is item number 18 which is the motion

3     supporting a memorandum of Polaris Circuit City.  I

4     have that was simply a stub rent issue as well.

5          SPEAKER 3:  That's correct, Your Honor.

6          THE COURT:  All right.  Thank you.

7          MR. GALARDI:  Number 19, Your Honor, is the

8     motion of Hayward 880 LLC.  Your Honor, we actually

9     have two issues here.  One was stub rent.  The other

10     was that the landlord had also wanted us to pay

11     taxes.  My understanding those are estimated taxes.

12     And obviously, given that Your Honor's opinion --

13     decision and also the auto track, we think it's not

14     appropriate for us to be ordered to pay estimated

15     taxes at this point.

                    Page 157

Rough Copy 12 22 08.txt
16                    THE COURT:  All right.

17                    SPEAKER 3:  Paul Bliley for Hayward 880.  I

18      assume your ruling would apply to that.

19                    THE COURT:  It would, yes.

20                    MR. GALARDI:  I guess you're number 22.

21                    SPEAKER 3:  20.

22                    MR. GALARDI:  The next one is save mart super

23      markets; again, a request to pay rent, CAM related

24      charges.  Your Honor, that also had the stub rent

25      issues.  That also had an issue with respect to late

                      COOK & WILEY, INC.


                                                        178


1       charges and potential interest.  Your Honor, we

2       didn't argue that one.  The debtors would believe

3       that those are not -- that they're not entitled to

4       administrative expense priority.  I'm sure counsel

5       will.  What I would suggest is we simply reserve

6       that issue in a claim if that works for you.

7                     SPEAKER 3:  That's fine.

8                     THE COURT:  All right.  So those issues will

9       be reserved.

10                    SPEAKER 3:  Paul Bliley for save mart, Your

11      Honor.

12                    MR. GALARDI:  The next one is matter number

13      21 which is C C investors 1997, LLC.  My

14      understanding is that was simply a stub rent

15      request.

16                    SPEAKER 3:  Judge, Paul Bliley again for C C

17      investors.  I think this is the one where the

18      payment was due on November the 25th.  Under what

19      Mr. con dealy said, I assume that would apply to

                            Page 158

Rough Copy 12 22 08.txt

20       that.

21              THE COURT:  It would.  So you'd be entitled,

22       then, to payment for the 15 days in that case.

23              MR. GALARDI:  I think your 25th covers the

24       entire November, right?

25              SPEAKER 3:  Correct.

                     COOK & WILEY, INC.


                                              179


1              MR. GALARDI:  So I think it's still -- even

2       though it's the 25th, I think it's 20 days post

3       filing.  We'll make sure it's whatever it covers.

4       But I think it's the 25th for the entire month.

5              SPEAKER 3:  Correct.

6              THE COURT:  I misspoke.

7              MR. GALARDI:  Moving to matter 22, that is

8       the motion of luck now landlords.  Again, there is a

9       late issue.  December, I think, has been taken care

10      of.  I may be wrong.

11             SPEAKER 3:  Correct.

12             MR. GALARDI:  And November is in arrears.  So

13      we would make the same arrangements, all rights

14      reserved under late fees and administrative status.

15      I think this is a November paid arrears lease.  So

16      we'd still do the period of time.  And November is

17      the November in arrears.  So it's actually not due

18      and payable yet.  But we would pay it timely for the

19      entire month of December, as opposed to issue right

20      now.

21             SPEAKER 3:  Correct.

22             THE COURT:  All right.

                     Page 159

Rough Copy 12 22 08.txt

23          MR. GALARDI:  Your Honor, moving to 23, that

24     is the motion by Annapolis plaza LLC.  My

25     understanding is the only outstanding issue was the

                    COOK & WILEY, INC.


                                              180


1      November stub rent.  The December rent has been

2      paid.

3          SPEAKER 3:  That's correct, R A Stein on

4      behalf of Annapolis plaza.

5          MR. GALARDI:  Your Honor, matter number 24 is

6      the memorandum of law of Baker Natick and a number

7      of landlords.  As noted in the status, there was

8      really only -- the only open issue was one location,

9      which was baker Natick can.  And I believe that the

10     only issue there was the stub rent.  And I think

11     Your Honor's decision discloses of this matter.

12          THE COURT:  Mr. gray?

13          SPEAKER 3:  Good afternoon, Your Honor.

14     William gray for the movants on this motion.  There

15     were seven clients that were included in this.

16     Seven of them have been resolved.  So Your Honor's

17     ruling would pertain to baker Natick promenade LLC.

18     All the rest of the clients on that motion have been

19     resolved.

20          THE COURT:  All right.  Thank you.

21          MR. GALARDI:  Your Honor, the next matter is

22     25, which is the order compelling payment and

23     joinder 120 orchard, I believe this is the gentleman

24     that has raised the stub rent sublease issue, Your

25     Honor.

                    COOK & WILEY, INC.
                      Page 160

Rough Copy 12 22 08.txt

181

1           THE COURT:  And I think we probably need to

2      re-address that.

3           MR. GALARDI:  I think that's probably

4      correct, Your Honor.  I think from the debtor's

5      position, again, we may have a disagreement.  We did

6      collect November rent.  Clearly with respect to the

7      rejection and any December rent, we have no

8      objection to turning over rents we collected post

9      petition.  And I think if you look carefully at the

10     language from K-Mart -- again, I'm not sure this is

11     the case, but it was amounts, I think, collected

12     post the effective date.  In either event here we

13     have a November -- I think this is a November 10th

14     -- it may not be, but I think this was a November

15     10th rejection .  If we recovered rents, or actually

16     were paid money post petition, that's why we were

17     prepared to give up the December.  We collected the

18     November rent pre petition.  I understand that there

19     may be a certain unfairness to that.  But at the

20     same time, I don't think with the comingling and

21     everything that we and the committee have discussed,

22     that it is our obligation to turn that over.  In

23     addition, since we are rejecting effective November

24     10th, we don't think that we have a post petition

25     expense.  But I'll let the gentlemen discuss the

                    COOK & WILEY, INC.

                                                182

1      issue.

                    Page 161

Rough Copy 12 22 08.txt

2          THE COURT:   Address the argument that was

3    made that the Court can condition the payment to

4    have rents you collected with connection with

5    ordering or granting the the motion to reject the

6    lease.

7          MR. GALARDI:   Your Honor, again, procedurely

8    I think it's improper, because the motion to reject

9    is a simple 365 decision that is the business

10   judgment of the debtors.   To condition it would mean

11   that if we didn't pay it, what happens?   No

12   rejection.   No assumption until that amount was

13   paid.   Really, it is a claim issue.   It is a motion

14   to compel payment or request for an administrative

15   expense.   There are other statutory avenues for

16   counsel to pursue on that behalf.   I don't think

17   it's a valid objection to a rejection that you have

18   to pay such amounts.   That's to preserve all rights

19   with respect to amounts, be them administrative or

20   unsecured.   But I think it's actually a counter

21   claim, if you wanted to go through all the legal

22   maneuvering.   So it's procedurally not proper to

23   therefore condition it on that, because all it would

24   do is burden the estate for an additional expense

25   until it paid it or until it was litigated to pay

                 COOK & WILEY, INC.


                                        183

1    it.   We obviously don't think it was due and

2    payable, Your Honor.   That does not at all preclude

3    them from arguing an equitable trust or some grounds

4    for saying that they should be able to get back from

5    us the rent we received pre bankruptcy from the

Rough Copy 12 22 08.txt

6        subtenant.

7            THE COURT:  All right.  Thank you.

8            SPEAKER 3:  Daniel Kerrigan, Your Honor, for

9        the orchard landlords.

10            Quite contrary, Your Honor, it's not just a

11        question of a counterclaim or a constructive trust

12        complaint or some other sort of thing.  It goes to

13        the fundamental decision by the court whether to

14        recognize the rejection as of the tenth of November

15        as a valid exercise of the debtor's business

16        judgment.  And as judge tie son said, as judge

17        Mitchell said, as the aims case said -- fourth

18        circuit in an old case has said, the debtor's

19        business judgment is a shield, not a sword.  And

20        what the effect of interpreting the exercise of the

21        debtor's business judgment here is both a shield and

22        a sword.  The rejection is supposed to protect the

23        debtor from on going obligations.  And it is not to

24        enable to debtor to collect money as they knew when

25        they were going to file.  They knew that they were

                    COOK & WILEY, INC.


                                                    184

1        going to take in the money for the subtenants.  They

2        knew they weren't going to pay their November rent,

3        yet they took it in.  It is not supposed to be a

4        weapon against the landlords or any other creditor

5        for that matter.  When business judgment is used as

6        a sword as well as a shield, then it tips the

7        balance that's been structured by the bankruptcy

8        code.  And then in those circumstances the ames

                    Page 163

Rough Copy 12 22 08.txt

9      court said -- and as judge Tyson and judge Mitchell

10     have said in the contest of the doctrine of

11     necessity -- then it's an improper use of the

12     debtor's exercise of business judgment.  And the way

13     the court can correct that is the way the chambliss

14     court corrected it and the way the K-Mart court

15     corrected it.  What it says was debtor, if you want

16     the benefit of the rejection and the exercise of

17     your business judgment at a date earlier than when

18     you have had the benefit -- the full benefit for the

19     entire month of the sub rent that was paid, and the

20     taxes that were paid, and the CAM charges that were

21     paid; then your exercise of business judgment is

22     going to be conditioned on paying that money over to

23     the landlord.  Alternatively, you can wait until the

24     end of the month to have your effective date of

25     rejection.

                    COOK & WILEY, INC.


                                                    185


1          I'd point out also -- and this is somewhat --

2      the confusion here that's created by the -- of the

3      other piece of this puzzle, which is the objection

4      to the original motion to reject.  That's now set

5      for hearing on January 29th as a result of the

6      objection by the subtenant and our joinder in that

7      objection.  But the principle is fundamentally the

8      same.  We're not arguing about getting back to

9      November 1.  We recognize that if we're going to use

10     the allocation of prorating method, that November 1

11     through November 10 is whatever it is.  But for the

12     remainder to have month, the debtor can get value

Rough Copy 12 22 08.txt

13      out of that sublease in two ways, or the lease in
14      two ways.  One, it occupies the space and continues
15      to sell out of it, G O B sale or otherwise.  That's
16      not what they did here.  What they did was got the
17      economic value of that, 100 cents on the dollar up
18      front.  What's the difference economically between
19      having been paid in advance and being paid later?
20      There is none.  There is none, Your Honor.  And
21      that's why this situation unique.  And that's why
22      the business judgment of the the debtor should not
23      be allowed to be used to upset the balance and
24      should not be allowed to be used as a sword instead
25      of just a shield.  The shield part of it, yes.  From

                    COOK & WILEY, INC.


                                                    186

1       November or December 1 forward, if they want to cut
2       it off at that point, fine.  That's within their
3       business judgment to say that the whole arrangement
4       is burdensome.  But to take the money and then want
5       it cut off at that point and also want to keep the
6       money, Your Honor, that's fundamentally wrong.
7              THE COURT:  Why isn't it just a claim?  The
8       debtor had the money.  It was required.  Everybody
9       acknowledges it was required to pay a lot of
10      creditors in this case.  Why isn't it just a claim?
11             SPEAKER 3:  Well, it is a claim, Your Honor.
12             THE COURT:  Okay.
13             SPEAKER 3:  But it's also -- it is also --
14      but that claim -- section 365 is supposed to provide
15      in the context of unexpired leases and executory

                    Page 165

Rough Copy 12 22 08.txt

16          contracts a bridge between the pre petition time and

17          the post petition time.  If the debtor stays in

18          there and gets the burden -- gets the benefit of

19          that unexpired lease or the executory contract, then

20          it is incumbent upon the debtor to pay for that

21          privilege.  Now, we may approximate B back to the

22          timing exercise there as to whether it's an

23          administrative claim that needs to be paid now or

24          later, but it has the the over lay of this bridge

25          that's being put there.  What the debtor wants to do

                        COOK & WILEY, INC.


                                                    187

1           is we got the money.  We want to get out -- now that

2           we've got the money and we haven't paid for it, we

3           want to get out of this lease.  Your Honor, that's

4           where the exercise of the court's discretion as to

5           business judgment comes in.  And the business

6           judgment should not be allowed to inflict -- to be

7           used as a sword and not as a shield.  Everything in

8           bankruptcy is a claim.  I mean, the landlord's

9           requests for payments under 365 D 3 is a claim.

10          It's a claim under 503.  It's a claim under 507.  If

11          it's a pre petition it's a claim for 502 and 365

12          because it's re effective as of the filing at a time

13          in some circumstances.  It's all a claim.  But as

14          your has pointed out, it's really a question of

15          timing if it's just a claim.  But it's not just a

16          claim.  This is also about the exercise of the

17          debtor's business judgment.  And it is being used

18          here both as a sword and a shield.  And it was only

19          to be used as a shield.  And it's not just the law
                        Page 166

Rough Copy 12 22 08.txt

20          of unintended consequences.  You heard the testimony
21          from the debtor's expert they knew going in what it
22          was going to look like.  To do that and to allow
23          them to do that is to allow them to exercise their
24          business judgment improperly.  And that's why the
25          K-Mart courts and that's why the chapel bliss court
                    COOK & WILEY, INC.


                                              188

1           conditions it on payment.  Alternatively you could
2           move the date of rejection out to the end of the
3           month.  And that's an issue for January 29, I
4           suppose.
5                   Let me say one other thing, Your Honor, if I
6           may:  The reason is -- let's look at it in terms of
7           the post petition.  The debtor's professional claims
8           for fees, for reimbursement of expenses, those are
9           all claims of the sword.  They're a particular kind
10          of claim.  They're administrative claims.  The
11          claims for people who are providing the coffee in
12          the offices, the people who are delivering goods to
13          the debtors, those are all claims.  Now, those are
14          all getting paid in the ordinary course.  And, in
15          fact, what we do in some circumstances, especially
16          with the professionals -- and this is an entirely
17          appropriate thing to do -- is the fact they haven't
18          been appointed day one to represent the debtor
19          doesn't change the fact that between day one and the
20          time they are appointed, that they are allowed to be
21          compensated.  Can the debtor just say well, you
22          didn't get appointed till December 15th, then you're
                    Page 167

Rough Copy 12 22 08.txt

23        out of luck for the first month and-a-half of the

24        case?  No, of course not.  That's not appropriate.

25        Nor is it appropriate in this case to deny payment

                    COOK & WILEY, INC.


                                              189


1         to the landlords when the debtor has had the benefit

2         of it in the most tangible way that you can

3         identify, which is they got the money.  And they got

4         it in advance.  Under those circumstances, the

5         exercise of business judgment by the debtor is

6         inappropriate to try to get the benefit of cutting

7         off their obligations on agoing-forward basis and

8         yet to retain the money.  And frankly, the remedies

9         that are being proposed is, as I think has been

10        mentiond in the prior argument, if we get back to

11        constructive trust, if we get to tracing and all

12        that other sort of stuff, what does a landlord like

13        ours have that has 55 thousand dollars in prorated

14        payments for the month of November, what can that

15        landlord legitimately -- forget legitimately,

16        pragmatically do about it?  Not much.  All we can do

17        is argue to the court that they shouldn't be able to

18        keep the money and reject our lease.  And that is

19        not an appropriate exercise in business judgment.

20        Thank you, Your Honor.

21              THE COURT:  Thank you, sir.

22              MR. GALARDI:  Your Honor, I don't think we're

23        actually using business judgment as a sword and

24        shield.  I don't quite understand that.  If we only

25        rejected the sublease, the sub lessee would have to

                    COOK & WILEY, INC.
                       Page 168

Rough Copy 12 22 08.txt

190

1          pay his rent for the entire month and could have
2          remained there.  If we reject the lease, we don't
3          have to pay the rent.  So we're putting two things
4          together.  But we can reject and that's a pre
5          petition claim.  There's -- you know, and the money
6          went into the system.  There's no nefarious conduct.
7          Perhaps we knew that this would come in.  Yes.
8          Maybe it was in the model.  But at the same time,
9          the objection is the landlords don't even have to
10         accept that rent if they didn't want to.  They have
11         the right to throw that subtenant out of those
12         premises.  It just so happens that this particular
13         landlord wants to accept that rent.  The business
14         judgment is quite simple:  One, we made a business
15         judgment to reject the sublease.  We have been paid
16         the rent.  That subtenant could stay there if we
17         hadn't also rejected the overlord.
18              Two, we made a business judgment to reject
19         the over lord's lease.  We don't have to pay that
20         rent.  We understand that they may have an equitable
21         argument.  We understand that they may say, well,
22         because this subtenant stayed there, we're entitled
23         to that.  That's what they have a basis for making a
24         claim.  But it doesn't defeat either our business
25         judgment with respect oh the rejection or with
                    COOK & WILEY, INC.

191

1          respect to the sublease.  The money issue is simply

Rough Copy 12 22 08.txt

2      a separate issue.  It's a claim, as Your Honor said.

3      Do we have a claim that because we rejected our

4      subtenant, stayed in the landlord's premises, to

5      they have a claim?  Well, they may have a claim

6      against us.  They may have a claim against the

7      subtenant.  The subtenant should have vacated the

8      premises.  But that's not something that's

9      appropriate as a response to our motion to reject.

10            So we'd ask Your Honor to approve our motion

11      to reject, all rights reserved about their seeking a

12      claim for any sub rent that we would have received

13      on November 1st or prior to the filing.

14            THE COURT:  My ruling today on the motion to

15      reject, or is that being carried over?  I thought I

16      was just being asked to rule on the motion to compel

17      payment of the --

18            MR. GALARDI:  Well, I would only ask for the

19      ruling on the motion to compel payment.  If you want

20      to hold the date of rejection over to the 29th,

21      that's perfectly fine.

22            THE COURT:  Is that what I'm being asked to

23      do?

24            SPEAKER 3:  Your Honor, that was my

25      understanding.  That's why I addressed it up front,

                    COOK & WILEY, INC.


                                         192


1      is that the rejection motion was held over to the

2      29th.  The compelling of the rent now or in the near

3      future is an issue for today.

4            THE COURT:  Okay.  And so, consistent with my

5      ruling earlier this afternoon, I'm not going to

Rough Copy 12 22 08.txt

 6    compel the payment of the post petition rent at this
 7    time.
 8              MR. GALARDI:  Thank you, Your Honor.
 9              THE COURT:  And that's without prejudice to
10    being able to come back and ask for it as changes
11    might occur.
12              MR. GALARDI:  And when we decide the actual
13    rejection date, which is -- that's for the January
14    29th hearing tape.
15              THE COURT:  That's my understanding.
16              SPEAKER 3:  Thank you, Your Honor.  May I be
17    excused?
18              THE COURT:  You may.  Thank you, sir.
19              MR. GALARDI:  The next item is item number
20    26, which is the motion to compel rent of McAlister.
21    My understanding that the only issue there was the
22    stub rent and taxes.  I don't know if counsel --
23              SPEAKER 3:  William gray on behalf of
24    McAlister Square.  This is a store closing.  This
25    matter has been resolved.
                     COOK & WILEY, INC.


                                                    193

 1              THE COURT:  Okay.  Very good.
 2              MR. GALARDI:  Thank you, Your Honor.  The
 3    next one is item number 27, which is a long list of
 4    landlords, starting with amherst VF.  My
 5    understanding, Your Honor, is this was a stub rent
 6    issue, and I think has been addressed by Your
 7    Honor's decision.
 8              SPEAKER 3:  William gray on behalf of --
                        Page 171

Rough Copy 12 22 08.txt
9           THE COURT:  You don't have to say them all.

10          SPEAKER 3:  The 10 landlords that are a part

11      of the motion.  One landlord, Vornado Gun Hill Road

12      has been resolved.  Your ruling would apply to the

13      remaining nine.

14          THE COURT:  All right.  Thank you.

15          MR. GALARDI:  Your Honor, the next one is

16      number 28, which is the Cole C C Groveland FL,

17      Florida.  I believe this was a stub rent, but it was

18      the accrual method of -- I think this was -- if I'm

19      not mistaken, this is the one where we pay at the

20      end of the month for the entire month.  So I think

21      Your Honor's ruling is that we should be paying the

22      20 days for November timely now for those periods,

23      but need not pay November 1 to 10?

24          THE COURT:  That's correct.

25          SPEAKER 3:  Thank you, Your Honor.

                COOK & WILEY, INC.


                                            194


1           MR. GALARDI:  Your Honor, item number 29 is

2       the colonial heights holdings LLC.  My understanding

3       is that this is resolved.

4           SPEAKER 3:  That's correct, Your Honor.  This

5       was a payment in arrears.  Rent was due on the last

6       business day of the month, and they have agreed to

7       pay.

8           THE COURT:  Thank you.

9           SPEAKER 3:  Thank you.

10          MR. GALARDI:  Number 30, Your Honor, is the

11      motion of C I M slash Birch Street.  My

12      understanding is this was only an issue of stub
                        Page 172

Rough Copy 12 22 08.txt

13      rent, and I think it's been addressed by your

14      decision.

15              SPEAKER 3:   That's correct, Your Honor.

16              THE COURT:   All right.   Thank you.

17              MR. GALARDI:   Number 31, Your Honor, is the

18      motion of principal life insurance.   It's stub rent,

19      and I believe this is payable in arrears, and there

20      was an interest issue.   I think Your Honor's

21      decision with respect to -- this is what I got -- it

22      is payable in arrears November 30th to November 10th

23      we'll pay.   And I would reserve all rights on

24      whether interest on that amount is due and payable,

25      unless counsel has an objection to that.

                    COOK & WILEY, INC.


                                                    195

1               THE COURT:   All right.   That is the ruling.

2               MR. GALARDI:   The next motion is 32, which is

3       the motion of the Pratt Center LLC.   My

4       understanding is that the only open issue on this

5       one is the payment of stub rent, which was addressed

6       by Your Honor's decision?

7               SPEAKER 3:   Your Honor, that is correct;

8       however, as stated in the motion, there was a second

9       reason for requesting payment, and it relates to an

10      objection that was filed by three landlords:    UTC 1

11      LLC, Pratt Center LLC, and Valley Corner Shopping

12      Center, two of which are the subject of the court's

13      ruling today.

14              It was a limited objection filed to the

15      debtor's motion basically assuming the agency

                    Page 173

Rough Copy 12 22 08.txt

16          agreement among the debtors and hillco merchant

17          resources, Gordon brothers LLC, and authorizing the

18          the debtor to continue the agency agreement sales --

19          agency agreement sales pursuant to store closing

20          agreement.  In negotiating the resolution of that

21          objection, we reached agreement with the debtor

22          which in effect said that the stub rent for all

23          three of those locations would be paid.  And

24          attached as exhibit D to the motion is an email

25          exchange between myself and debtor's counsel to that

                        COOK & WILEY, INC.


                                                            196


1          effect.  We wrote that this shall confirm that the

2          above referenced landlords agree to withdraw their

3          pending objection in exchange for payment of the

4          stub rent for November and the modifications of the

5          G O B procedures as agreed to by Stephen petro,

6          counsel for Gordon brothers, and reserving all

7          additional rights.

8               We then received a responsive email saying

9          confirmed.  We would try to have the November stub

10         rent paid by next Friday, November 12th.  We infire

11         rd about having payment for Pratt center and valley

12         corners.  The response was, well, we didn't have

13         authority to pay stub rent for those two locations.

14         So we're not planning on paying it.  They did pay

15         for UTC 1, but have not paid the other two.  And we

16         would ask that the Court enforce that settlement.

17              MR. GALARDI:  Are these all -- we have paid

18         -- Your Honor, as I remember, we told you with

19         respect to the store closing motion, that when we --

Rough Copy 12 22 08.txt

20          if they were covered by the agency agreement, we
21          that has been paid.  Are these other two covered by
22          -- are these store closings?
23               SPEAKER 3:  They were not store closings.
24               MR. GALARDI:  And that's why we didn't pay
25          the other two, Your Honor.
                      COOK & WILEY, INC.


                                               197

1               SPEAKER 3:  Understood.  The rationale for
2          including them in the objection was because we
3          believe there may be relief that went beyond
4          strictly those stores listed on the store closing
5          procedure Exhibit.  And obviously, we withdrew the
6          objection with the understanding that all three
7          would be paid.
8               MR. GALARDI:  And Your Honor, I see the
9          email.  I don't dispute that somebody may have sent
10         that email.  The issue simply came to our attention
11         that we thought they were all three governed by the
12         hill co-agreement.  They weren't.  So that is our
13         fault for having done that. we have always taken the
14         position in this court that if it were not governed
15         by the hillco agreement, we were going to be
16         fighting this stub rent payment.  I apologize for
17         that.  Your Honor can rule.  But I understand that
18         was a simple miss statement in an email from one of
19         our associates that it would be paid.  I'm thinking
20         that it was all governed by the same hillco
21         agreement.
22               THE COURT:  I haven't seen what is there.  I
                      Page 175

Rough Copy 12 22 08.txt

23      think what we ought to do is carry this over to the

24      next omnibus date, set it down for it because we'll

25      probably need some evidence if you're going to try

COOK & WILEY, INC.

198

1       to enforce the settlement agreement, what was agreed

2       to and the like.  And, of course, that would give

3       Mr. Galardi an opportunity to respond to it, as

4       well.

5               SPEAKER 3:   Thank you, Your Honor.

6               THE COURT:   You're welcome.

7               MR. GALARDI:   The next matter on is matter

8       number 33, Your Honor, which is again a debtor's

9       motion authorized in the rejection of certain

10      unexpired leases.   There were three objections to

11      that motion.   The first two, one by Carmax business

12      service, has been resolved.   The second by Food Lion

13      LLC has been resolved.   And the third was an

14      objection by Kennesaw, I believe, which is a

15      subtenant.   And I believe that matter is going

16      forward.

17              THE COURT:   All right.

18              SPEAKER 3:   Your Honor, Paul Bliley again.   I

19      represent Carmax business services and it has been

20      resolved as to us.

21              THE COURT:   Very good.

22              SPEAKER 3:   Good afternoon, you know, roy Wes

23      Terman on behalf of food Lion.   Our objection has

24      been resolved as well.   I believe some revised

25      language is being circulated, and a revised order is

COOK & WILEY, INC.
Page 176

Rough Copy 12 22 08.txt

199

1       going to be submitted for Your Honor's

2       consideration.

3              THE COURT:  Very good.  Thank you.

4              SPEAKER 3:   Good afternoon, Your Honor,

5       Michael con deal is on behalf of Cole C C, Kennesaw

6       Georgia, LLC.  We are objecting to the date in which

7       the lease is determined to be rejected.  And the

8       debtor is looking for the rejection date to be

9       effective when the pleadings were filed.

10             This is a subtenant case, Your Honor, where

11      rent was collected by the debtor on the first to

12      have month from the landlord.  On the 31st of this

13      month, there is rent that the due to Cole of

14      $124,000, plus taxes, utilities, insurance,

15      maintenance and so forth.  The debtor is getting the

16      benefit of the property for the full month, and it

17      received the rent for the full month.  This is, in

18      that sense, similar to the argument that Your Honor

19      just heard previously.

20             There is also some distinguishing factors

21      here, because the lease agreement itself provids

22      specifically for an assignment and transfer of any

23      rents that are due from Circuit City to the

24      landlord.  So upon the occurrence of that -- of the

25      default -- upon the occurrence of the bankruptcy

                    COOK & WILEY, INC.

                                                200

1       filing, default occurred under the lease in which it

                    Page 177

Rough Copy 12 22 08.txt

```
 2      mandated that the lease payments be made and an

 3      assignment of all rights and interests in those

 4      lease payments was made to Cole in that instance,

 5      which entitled it to the payment of the rents that

 6      are owed.  In November, there was -- the lease

 7      payments were received.  In December, we're not at

 8      the end of the month yet.  So the payments haven't

 9      been received.  But the appropriate time for any

10      rejection would be on -- effective on December 31st

11      when the rent payment is due and when the period in

12      which the existing subtenant's rent is completed.

13      So we'd ask that the debtor be ordered to pay the

14      rent that effective as of that time and that the

15      lease not be rejected until that time, and that we'd

16      be entitled to the rent that's owed.

17             THE COURT:  Mr. Galardi?

18             MR. GALARDI:  Your Honor, we don't have any

19      objection to the rejection being effective

20      December -- I think the rent is due December 31st.

21             SPEAKER 3:  Correct.

22             MR. GALARDI:  This is an odd situation where

23      the subtenant pays at the beginning of the month.

24      We paid at the end of the month.  So we would reject

25      effective December 31st; and given all Your Honor's
                    COOK & WILEY, INC.


                                               201

 1      rulings and what we've said about this, we will pay

 2      the full month of December on December 31st.  I

 3      think that resolves his objection.

 4             THE COURT:  All right.  Very good.

 5             SPEAKER 3:  Thank you, Your Honor.  And that
```

Rough Copy 12 22 08.txt

```
 6        would include the maintenance and utilities and the
 7        amounts that are due under the lease.
 8              MR. GALARDI:  Again, Your Honor, I
 9        think we're going to reserve our right -- the base
10        rent, yes.  As to the maintenance, utilities and
11        what periods they cover, I think that goes to the
12        stub rent.  If it's only for the month of December,
13        yes.
14              SPEAKER 3:  Okay.  Thank you, Your Honor.
15        We'd ask that the order itself contain a provision
16        that the rejection is effectively a termination of
17        the lease.  We don't have to come in for relief of
18        stay or any further action.
19              MR. GALARDI:  I think it's a breach of the
20        lease.  I don't think rejection is a termination.
21              SPEAKER 3:  Well, that's why we're asking for
22        that determination, Your Honor, so we don't have to
23        then come in for separate relief of stay.
24              THE COURT:  Is that motion before me?
25              SPEAKER 3:  No.
                    COOK & WILEY, INC.

                                                    202

 1              THE COURT:  You can negotiate.
 2              MR. GALARDI:  We'll discuss it, yes.
 3              THE COURT:  Otherwise, you need to file a
 4        motion.
 5              SPEAKER 3:  Thank you, Your Honor.
 6              MR. GALARDI:  Your Honor, the next is the
 7        informal response of Barbara Goldsmith, which I
 8        understood has been resolved.
```

Page 179

Rough Copy 12 22 08.txt
 9          SPEAKER 3:  Yes.
10          THE COURT:  Did you understand it has been
11    resolved?
12          MR. GALARDI:  My understanding is that it has
13    been resolved.
14          SPEAKER 3:  I represent a different --
15          MR. GALARDI:  I think they're getting ready
16    for the next stub rent.
17          THE COURT:  Okay.  Sorry.
18          MR. GALARDI:  So that takes care of matter
19    33, Your Honor.
20          SPEAKER 3:  Your Honor, Calena Miller again,
21    Your Honor, on behalf of general Orlando aviation
22    authority.  My client did not file a formal
23    objection to matter 33, but we have a resolution and
24    agreement with the debtors that the effective date
25    of the rejection for the particular lease of my
                    COOK & WILEY, INC.

                                                     203

 1    client will be December the 31st.  So I just wanted
 2    to make sure that's reflected on the record.  That's
 3    with respect to location 5166 east colonial drive in
 4    Orlando, Florida.
 5          THE COURT:  Thank you, ma'am.
 6          MR. GALARDI:  I've been informed that that's
 7    correct, Your Honor.
 8          THE COURT:  All right.
 9          MR. GALARDI:  Your Honor, number 34 is the --
10    that concludes the matters under 33.  Matter 34 was
11    the motion of part Arthur holdings.  Again, it was a
12    stub rent payment and I'm authorized to say that all
                    Page 180

Rough Copy 12 22 08.txt

13      matterss to 34 have been resolved by your ruling.

14              THE COURT:  All right.  Very good.

15              MR. GALARDI:  Your Honor, going back, there

16      was one matter that was left open.

17              THE COURT:  Yes.

18              MR. GALARDI:  Back on 7 there were objections

19      R and S, I believe.

20              THE COURT:  Yes.

21              MR. GALARDI:  We have agreed that the

22      rejection date is November 10th, 2008, but that

23      the -- M and T reserves the right to a certain

24      administrative claim on the basis that there is a

25      hold over tenant because we did not surrender.  So

                    COOK & WILEY, INC.


                                                        204

1       we'll leave open the claim issue with them but the

2       rejection date is in fact, November 10th.  And that

3       resolves --

4               THE COURT:  Ms. McLemore, is that your

5       understanding?

6               SPEAKER 3:  That is my understanding with one

7       express reservation that if anything changes with

8       regard to the stub rent issue going forward, that we

9       would reserve our right to file a motion to compel

10      the stub rent.

11              MR. GALARDI:  I assume that goes without

12      saying for all the tenants.

13              THE COURT:  Yes, it does.

14              SPEAKER 3:  Thank you, Your Honor.

15              MR. GALARDI:  And that actually does conclude

                    Page 181

Rough Copy 12 22 08.txt
16          the matters on my agenda, I believe.

17               THE COURT:   All right.   On the issue

18          concerning the nonpayment of the stub rent, I would

19          like the debtors to submit proposed findings of fact

20          and conclusions of law.   My understanding is you're

21          submitting individual orders, but I think that that

22          can be one that addresses all of them, and just

23          style it that way.

24               MR. GALARDI:   That's fine.   Thank you, Your

25          Honor.   I have no further business today, Your

                         COOK & WILEY, INC.


                                                             205

1           Honor.

2                THE COURT:   Okay.   We have one matter that

3           was from this morning, item number 4, which

4           Mr. Foley, you had said that you were trying to

5           resolve.   Is that being carried over?

6                MR. GALARDI:   Your Honor, what we would

7           propose to do -- that was the D J M matter that we

8           were trying to do.   I don't believe we will get a

9           resolution on this today.   We have another meeting

10          tomorrow.

11               What I would propose to do, Your Honor, is

12          to, one, have authority -- there is an objection as

13          to the fee structure.   In the event that we can come

14          to an agreement with the committee, we'd like to

15          submit under certification of counsel a stipulated

16          order resolving that.

17               If not, I'd like to put it on the next

18          available hearing date, which may not be the omnibus

19          date.   It may be an earlier date if we can get it,
                         Page 182

Rough Copy 12 22 08.txt

20      because their activity is going on very rapidly as

21      we speak.  And so, the sooner I can get an order in

22      for them if it's agreed to, the sooner we -- the

23      better we'd all feel.  So I would like to simply not

24      carry that to a date certain right now, but have the

25      right to ask the court to put that on an expedited

COOK & WILEY, INC.

206

1       basis with an expedited hearing in early January, if

2       we're unable to do a consensual order.

3               THE COURT:  And then, of course, if you

4       submit a consensual order with the committee, the

5       court will certainly entertain that.

6               MR. GALARDI:  Thank you very much, Your

7       Honor.  That does now conclude the matters.  Thank

8       you.

9               THE COURT:  Very good.  Thank you all.

10              MR. GALARDI:  Thank you again.  Have a happy

11      hoiday.

12              THE COURT:  You, too.

13

14

15

16

17

18

19

20

21

22

Rough Copy 12 22 08.txt

23

24

25

COOK & WILEY, INC.