# Exhibit A

## CIRCUIT CITY STORES, INC.

Landlord

TO

## THE TJX COMPANIES, INC.

Tenant

# LEASE

Dated:    **July 31** , 1987

Premises:   1880 South Grant Street, San Mateo, California

# TABLE OF CONTENTS

Page

SECTION  1  Premises .......................................... 1
SECTION  2  Term .............................................. 2
SECTION  3  Initial Construction and Delivery of Possession.......... 2
SECTION  4  Rent .............................................. 4
SECTION  5  Late Charges and Return Check Charges ................ 5
SECTION  6  Percentage Rent ................................... 6
SECTION  7  Gross Sales ....................................... 6
SECTION  8  Sales Reports ..................................... 8
SECTION  9  Books and Records.................................. 8
SECTION 10  Parking and Common Areas .......................... 9
SECTION 11  Use .............................................. 13
SECTION 12  Conduct of Business by Tenant ...................... 14
SECTION 13  Prohibited Uses ................................... 16
SECTION 14  Assignment and Subletting.......................... 16
SECTION 15  Requirements of Law and Fire Insurance .............. 20
SECTION 16  Repairs and Maintenance ........................... 21
SECTION 17  Alterations ....................................... 22
SECTION 18  Utilities and Mechanical Maintenance ................ 23
SECTION 19  Insurance ........................................ 23
SECTION 20  Indemnity ........................................ 25
SECTION 21  Subordination and Attornment ...................... 26
SECTION 22  Damage or Destruction ............................. 28
SECTION 23  Eminent Domain ................................... 29
SECTION 24  Signs ............................................ 32
SECTION 25  Real Estate Taxes ................................. 32
SECTION 26  Tenant's Defaults ................................. 34
SECTION 27  Waiver of Subrogation ............................. 39
SECTION 28  Mechanic's Liens .................................. 39
SECTION 29  Access to Premises and Excavation ................... 40
SECTION 30  Rules and Regulations ............................. 41
SECTION 31  Holdover.......................................... 41
SECTION 32  Ownership of Improvements ......................... 42
SECTION 33  End of Term ...................................... 42

SECTION 34    Quiet Enjoyment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

SECTION 35    Unavoidable Delays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

SECTION 36    Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

SECTION 37    Estoppel Certificates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

SECTION 38    Brokerage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

SECTION 39    Short Form Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

SECTION 40    Miscellaneous Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

SECTION 41    Competition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

SECTION 42    Options to Renew . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

SECTION 43    Waiver of Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

SECTION 44    No Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

SECTION 45    Waiver of Landlord's Liability . . . . . . . . . . . . . . . . . . . . . . . . . 47

SECTION 46    Successors and Assigns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

SECTION 47    Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

SECTION 48    No Reservation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

SECTION 49    Complete Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

SECTION 50    Underlying Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

SECTION 51    Reciprocal Easement Agreements . . . . . . . . . . . . . . . . . . . . . . . 52

EXHIBITS TO LEASE

EXHIBIT A    --    Site Plan

EXHIBIT B    --    Commencement Date Agreement

EXHIBIT C    --    Landlord's and Tenant's Work

EXHIBIT D    --    Rules and Regulations

EXHIBIT E    --    Subordination and Non-disturbance Agreement

EXHIBIT F    --    Form of Percentage Rent Report

EXHIBIT G    --    Initial Exterior and Pylon Signs

## LEASE

THIS LEASE, dated the 31ᵗʰ day of __July__, 1987, between
CIRCUIT CITY STORES, INC., a Virginia corporation having an office at 2040
Thalbro Street, Richmond, Virginia 23230 (herein called "Landlord") and THE
TJX COMPANIES, INC., a Delaware corporation having an office at One Mercer
Road, Natick, Massachusetts 01760 (herein called "Tenant").

## W I T N E S S E T H :

1. PREMISES. Landlord hereby leases to Tenant, and Tenant hereby
hires from Landlord, those certain premises (herein called the "Demised
Premises") crosshatched on Exhibit A attached hereto and made a part hereof,
consisting of approximately 24,076.69 square feet (approximately 120.3 feet
wide and approximately 200.1 feet deep) of "Gross Leasable Floor Area" (herein
defined as the area bounded by the exterior faces of exterior walls, or the
exterior or "Common Area" (as such term is hereinafter defined) face of any
wall between the premises in question and any portion of the Common Areas, or
the center line of any wall between two occupants) of ground floor space
(without any mezzanine space) in the shopping center (the "Shopping Center")
which shall consist of those buildings and land situate at the southwest
corner of South Grant Street and Concar Drive in the City of San Mateo, County
of San Mateo, State of California as generally proposed and shown on said
Exhibit A, or as the same may be modified from time to time (subject to
restrictions with respect to any such modification provided elsewhere in this
Lease). Landlord reserves unto itself the right to use the exterior walls,
roofs and areas beneath the foregoing for such additional construction and
expansion of the Shopping Center (including the construction of additional
stories thereon) as may be permitted hereby, among other purposes. Landlord
further reserves the right to place, maintain, repair and replace utility
lines, pipes, ducts, conduits, wires and tunneling and the like, in, over,
under and through the Demised Premises as may be reasonably necessary for the
servicing of the Demised Premises or other portions of the Shopping Center,
and to enter the Demised Premises for such purposes (provided that Tenant's
use and enjoyment of the Demised Premises shall not be materially adversely
affected as a result thereof).

2.  TERM.  The initial term of this Lease (sometimes hereinafter
called the "Term") shall be the period of ten (10) years and a fraction of a
year commencing on the "Commencement Date" (defined in Section 4 below) and
ending at midnight of the 31st day of January next following the tenth (10th)
anniversary of the Commencement Date, unless sooner terminated as herein
provided.  The first lease year (hereinafter called "Lease Year") shall be the
period commencing on the Commencement Date and ending on the next January 31st
(provided that such period shall be at least six (6) months, failing which
such first (1st) Lease Year shall end on the second (2nd) January 31 after the
Commencement Date); and thereafter each twelve-month period beginning on a
February 1st shall be a Lease Year.  Within ten (10) days after the request of
either party after the Commencement Date has been determined, Landlord and
Tenant shall execute, acknowledge and deliver to each other duplicate
originals of an agreement (the "Commencement Date Agreement") in the form
which is annexed hereto as Exhibit B, setting forth the Commencement Date, the
date of expiration of the initial Term, the commencement date of any "Extended
Periods" (as such term is hereinafter defined) and the then-current "Fraction"
(as such term is hereinafter defined).  Notwithstanding that the Term of this
Lease will not commence until the Commencement Date, each of Tenant and
Landlord shall be obligated to perform and abide by all of the terms,
covenants and agreements made by it hereunder from and after the execution and
delivery hereof, to the extent that the same would be applicable to such
pre-Term period; however, Tenant shall not be responsible for payment of any
Fixed Rent, Percentage Rent, Tenant's Common Area Contribution or Tenant's Tax
Contribution hereunder until the Commencement Date.  Tenant shall have the
right to enter upon the Demised Premises during such period prior to the
Commencement Date, for the purposes of performing Tenant's Work (as such term
is hereinafter defined), installing fixtures, inventory and the like and
otherwise preparing the Demised Premises for Tenant's occupancy, provided that
Tenant shall not interfere with the performance of Landlord's Work (as such
term is hereinafter defined).

3.  INITIAL CONSTRUCTION AND DELIVERY OF POSSESSION.  Tenant is
leasing the Demised Premises "as is" except for the work which Landlord is
required to do under the provisions of Exhibit C attached hereto and made a
part hereof.  Landlord covenants to do the work which it is required to do (the
"Landlord's Work") under the provisions of said Exhibit C in a good and

-2-

workmanlike manner, promptly upon the execution and delivery of this Lease, and
upon the substantial completion thereof shall deliver possession of the Demised
Premises to Tenant; whereupon Tenant covenants to commence and diligently
prosecute to completion such work as may be required to complete preparation of
the Demised Premises for Tenant's occupancy (the "Tenant's Work"). Landlord
shall give Tenant at least five (5) days prior notice of the date of delivery
of possession of the Demised Premises; provided, however, that if Tenant
commences Tenant's Work and/or other installation of its fixtures and equipment
in the Demised Premises prior to the giving of such notice, then the
requirement therefor shall be deemed waived. If Landlord's Work shall not be
substantially completed and possession of the Demised Premises delivered to
Tenant prior to March 1, 1988, then Tenant, without waiving any claim Tenant
may have against Landlord for breach of agreement, may terminate this Lease, by
notice given to Landlord at any time prior to such substantial completion and
delivery of possession. If, however, Tenant shall so terminate this Lease and
if within thirty (30) days after the giving of such notice of termination
Landlord shall so substantially complete Landlord's Work and deliver possession
of the Demised Premises to Tenant, then such notice of termination shall be
deemed null and void and the Term hereof reinstated. All Landlord's Work and
Tenant's Work shall be performed in a good and workmanlike manner, using only
new materials or their equivalent, free and clear of all liens and encumbrances
and Tenant agrees that with respect to Tenant's Work it shall comply with all
customary procedures and regulations prescribed by Landlord from time to time
for coordination of such work. Prior to commencing any work in the Demised
Premises, either party shall (a) after having obtained the prior written
approval of the other party thereof to the extent required hereunder, file the
requisite plans and specifications for Landlord's Work or Tenant's Work, as the
case may be, with, and obtain all requisite approvals from, all governmental
departments or authorities having jurisdiction and any public utility company
having an interest therein; (b) in the case of Tenant's Work deliver to
Landlord (i) such policy or policies of insurance naming Landlord as an
additional insured in limits as provided in Section 19 and (ii) execute,
acknowledge and to the extent required record and post a notice of
non-responsibility pursuant to the provisions of Section 3094 of California
Civil Code. Tenant agrees that it will not, in the course of the performance
of Tenant's Work, materially interfere with or hinder the operation of the

-3-

**REDACTED**

Shopping Center or the business of any other tenant or occupant thereof, nor will Tenant do or permit anything to be done that will create any work stoppage, picketing, or other labor dispute which would materially interfere with the operation of any work or activities being conducted by Landlord. In making and executing this Lease, Tenant has relied solely on such investigations, examinations and inspections as Tenant has chosen to make or has made. Tenant acknowledges that Landlord has afforded Tenant the opportunity for full and complete investigations, examinations and inspections. Upon completion of Landlord's Work and Tenant's Work, respectively, Landlord and Tenant shall each deliver to the other copies of all plans obtained by the delivering party showing the Demised Premises as then built, plus copies of all permits obtained in connection with such Work and evidence of the payment of all contractors and material suppliers therefor and the waiving of any lien rights of any such contractors and material suppliers, as the case may be.

4.  RENT.  Commencing upon the date (herein called the "Commencement Date") which shall be the earlier to occur of (i) the later of November 21, 1987 or four (4) months after the substantial completion by Landlord of Landlord's Work and the giving of notice by Landlord in respect thereof (provided that if the latter of such two dates shall occur between any May 15 and the following August 20 or between any November 20 and the following March 1, the date as determined in accordance with this subdivision (i) shall be such following August 20 or March 1, as the case may be); or (ii) the date on which Tenant shall first open for business at the Demised Premises, Tenant shall pay to Landlord rent (herein called "Fixed Rent") hereunder at the following rates: (a) ▮▮▮▮▮▮ per annum (calculated on the basis of ▮▮▮ per square foot of Gross Leasable Floor Area of the Demised Premises) from the Commencement Date to the day before the fifth (5th) anniversary of the Commencement Date and (b) ▮▮▮▮▮▮ per annum (calculated on the basis of ▮▮▮ per square foot of Gross Leasable Floor Area of the Demised Premises) from the fifth (5th) anniversary of the Commencement Date to the end of the initial Term, in equal monthly installments in advance on the first day of each month during the term of this Lease. If the Commencement Date is not the first day of a month, Fixed Rent for the period commencing on the Commencement Date and ending on the last day of the month in which the Commencement Date occurs shall be apportioned on the basis of the number of days in said month and shall be paid together with the next ensuing monthly Fixed Rent payment. Fixed Rent

-4-

and all other amounts payable by Tenant to Landlord under the provisions of this Lease (herein called the "Additional Rent Charges") shall be paid promptly when due, without notice or demand therefor, and without deduction, abatement, counterclaim or setoff of any amount except as otherwise expressly provided in this Lease. Fixed Rent and Additional Rent Charges shall be paid to Landlord in lawful money of the United States at the address of Landlord set forth at the head of this Lease or to such other person and/or at such other address as Landlord may from time to time designate by notice to Tenant. No payment by Tenant or receipt by Landlord of any lesser amount than the amount stipulated to be paid hereunder shall be deemed other than on account of the earliest stipulated Fixed Rent or Additional Rent Charges; nor shall any endorsement or statement on any check or letter be deemed by itself an accord and satisfaction, and Landlord may accept any check or payment without prejudice to Landlord's right to recover the balance due or to pursue any other remedy available to Landlord.

    5. <u>LATE CHARGES AND RETURN CHECK CHARGES</u>. If payment of any Fixed Rent or Additional Rent Charges shall not have been paid when due and continues unpaid after the tenth (10th) day after the date on which such amount was due and payable a late charge of FIFTY DOLLARS ($50.00) or an amount calculated at the interest rate provided in <u>Section 9</u> hereof (or the then maximum lawful interest rate if such rate exceeds such maximum lawful interest rate), whichever shall be greater, from the date on which such amount was due, on the amount overdue shall, at the Landlord's option, be payable as damages for Tenant's failure to make prompt payment; provided, however, that Landlord shall not be entitled to impose such late charge in respect of the first two (2) such occurrences of late payment by Tenant, continuing for no more than ten (10) days after notice thereof from Landlord, in any given calendar year during the Term. In addition to any other penalties or remedies available to Landlord in the event of any late payment by Tenant, if any check in payment of any Fixed Rent or Additional Rent Charges is returned to Landlord by Tenant's bank by reason of insufficient funds, uncollected funds or otherwise, a return check administrative charge of FIFTY DOLLARS ($50.00) shall be payable to Landlord by Tenant. The late charges and return check administrative charges for any month shall be payable the first day of the following month, and in default of payment of any such charges, Landlord shall have (in addition to all other remedies) the same rights as provided in this Lease for nonpayment of Fixed

-5-

**REDACTED**

Rent. Nothing in this Section contained and no acceptance of late charges by Landlord shall be deemed to extend or change the time for payment of Fixed Rent or Additional Rent Charges.

6. <u>PERCENTAGE RENT</u>. In addition to the payment of Fixed Rent as aforesaid, Tenant shall pay to Landlord, as annual "Percentage Rent", during each Lease Year of the Term and any Extended Periods, an amount equal to the sum which results from multiplying (a) all "Gross Sales" (as such term is hereinafter defined) in excess of the "Breakpoint" (as such term is hereinafter defined) by (b) 2.0% (.020). The "Breakpoint" for any full Lease Year (i.e., twelve (12) months) shall be ███████████ The Breakpoint for any Lease Year longer than twelve (12) months shall be pro-rated on a 365-day basis. Payment of Percentage Rent shall be made on or before the ninetieth (90th) day following the expiration of each Lease Year, and on or before the sixtieth (60th) day following the expiration or earlier termination of this Lease. During any period of time (computed on a daily basis) when the Demised Premises is not open for business to the public when required under this Lease to be so open, then, for purposes of computing the Percentage Rent hereunder, Gross Sales for the period(s) of the immediately preceding Lease Year corresponding to the periods of closure of the Demised Premises during the then current Lease Year shall be added to the Gross Sales for such current Lease Year. Notwithstanding the provisions for the payment of Percentage Rent, Landlord shall not, in any event, be deemed to be a partner or associate of Tenant in the conduct of its business; the relationship of the parties hereto to remain, at all times, solely that of Landlord and Tenant.

7. <u>GROSS SALES</u>. The term "Gross Sales" whenever used in this Lease shall mean and refer to the gross dollar aggregate, whether for cash or on credit (regardless of collections in the case of the latter), of all sales or rentals (including sales made by Tenant and each subtenant, licensee, concessionaire and all others holding under or through Tenant), of merchandise and rendition of services in, at, from or arising out of, or otherwise attributable to the Demised Premises including, but not limited to, such sales and services: (i) as a result of transactions originating in, at or from the Demised Premises, whether delivery or performance is made from the Demised Premises or from some other place or (ii) pursuant to mail, telephone, telegraph, closed-circuit television, dial-a-buy and other devices, automated or otherwise, whereby orders are placed or received at the Demised Premises;

-6-