and which, in each of the foregoing cases, Tenant or any subtenant, licensee, concessionaire or any other person or entity holding under or through Tenant in the normal course of its business would attribute to its operations at the Demised Premises. The term "Gross Sales" shall also include, but is not limited to, requests for services to be performed or orders taken for sales of merchandise received or filled by Tenant in or at the Demised Premises, although performance or delivery thereof is made from or at any place other than the Demised Premises (provided that such services or sales are in the ordinary course of business attributed to Tenant's operations in the Demised Premises, as aforesaid), and all deposits not refunded to customers. Notwithstanding the foregoing, Gross Sales shall not include: (i) merchandise returned for cash refund, credit given, or discounts and allowance granted or exchange made, provided that the same price of said merchandise has been included in gross receipts; (ii) the amount of any sales, use or gross receipts tax or excise tax, imposed by any governmental authority directly on sales and collected from customers, providing the amount of said tax is separately recorded; (iii) the exchange of merchandise between the stores of Tenant, when such exchanges are made solely for the operation of Tenant's business and not for the purpose of consummating a sale which has been made at, in or from the Demised Premises; (iv) merchandise returned for credit to shippers, jobbers, wholesalers or manufacturers; (v) sums or credits received in settlement of claims for loss or damage to merchandise; (vi) the sale of store furniture or fixtures or other property not held for sale in the ordinary course of business, and the sale or other disposition of merchandise not in the ordinary course of business to other than retail customers; (vii) the amounts of all sales to employees of Tenant and/or any employees of subtenants, licensees or concessionaires of Tenant which are made at discounts from prices charged to customers (but not to exceed three percent (3%) of Gross Sales as otherwise computed hereunder for such Lease Year); (viii) the amounts charged to customers for mailing, delivery, alterations and other services where such services are rendered to the customer without profit (but not to exceed two percent (2%) of Gross Sales as otherwise computed hereunder for such Lease Year); (ix) unpaid balances of credit and other sales which are charged off as "bad debts" and previously included in Gross Sales, provided that if at any time after any such unpaid balance shall be so charged off, but prior to the expiration of the Term of this Lease, any amount shall be

collected on account thereof, such amount shall then be included in Gross
Sales; (x) the amounts received from concessionaires or licensees of Tenant
for occupancy, for services rendered to such concessionaires or licensees by
Tenant or for supplies or equipment furnished to such concessionaires or
licensees by Tenant.

8.   SALES REPORTS.   Tenant shall and hereby agrees that it will
furnish to Landlord within ninety (90) days after the expiration of each Lease
Year of the initial Term and any Extended Periods a complete written
statement, certified by an executive officer of Tenant, of the amount of Gross
Sales made from the Demised Premises during said Lease Year.   All such
statements shall be in substantially the form and style, and shall contain
such details and breakdown therefor as the form copy of which is attached
hereto as Exhibit F.   If Tenant shall fail to prepare and deliver said
statement of Gross Sales required herein, Landlord, upon thirty (30) days
written notice to Tenant, may elect to make an audit of all books and records
of Tenant which pertain to or show Gross Sales and to prepare the statement or
statements which Tenant has failed to prepare and deliver.   The statement or
statements so prepared by Landlord shall be conclusively binding on Tenant,
and Tenant shall pay on demand all out-of-pocket expenses incurred by Landlord
for such audit and for the preparation of any such statements and all sums as
may be shown by such audit to be due as Percentage Rent.

9.   BOOKS AND RECORDS.   Tenant agrees to keep at the Demised
Premises or at Tenant's principal offices, accurate books and records of all
business conducted in, at or from the Demised Premises, in accordance with
generally accepted accounting principles consistently applied.   Said books and
records shall be open for examination at all reasonable times to Landlord or
Landlord's representatives upon five (5) business days notice to Tenant, for
the purposes of ascertaining or verifying Gross Sales.   All such records shall
be retained by Tenant for examination by Landlord for a period of at least
three (3) years following the end of the Lease Year for which such records
apply (or such lesser period as may be required by applicable taxing
authorities (but no less than two (2) years)).   If any such examination of
Tenant's books and records shall disclose a liability for Percentage Rent in
excess of the Percentage Rent paid in respect of the period examined, Tenant
shall promptly pay such amount.   In addition, in the event that any such
examination of Tenant's books and records shall disclose an understatement by

-8-

Tenant in excess of three percent (3%) of the Gross Sales reported, and if as
a result thereof there shall have been an actual underpayment of Percentage
Rent, Tenant shall pay to Landlord upon demand the reasonable out-of-pocket
cost and expense incurred by Landlord for such audit, plus interest from the
date on which payment of such Percentage Rent was due until the date received
by Landlord, at an interest rate equal to two (2) percentage points over the
prime rate of interest charged by Chase Manhattan Bank, N.A. to its most
credit worthy customers (but no higher than allowed by applicable law) on the
amount of additional Percentage Rent due to Landlord as a result of such
audit; provided, however that if such audit discloses that Tenant has paid
more Percentage Rent than was due hereunder, Landlord shall within thirty (30)
days of said audit refund such overpayment to Tenant or credit Tenant's
account therewith.

10.   PARKING AND COMMON AREAS.

A.   Landlord hereby grants to Tenant a non-exclusive right to use
for parking, for ingress and egress between the Demised Premises and all other
portions of the Shopping Center and the adjoining streets, alleys and
sidewalks and for such other purposes as the same are or may have been
designed (a) the parking areas, roadways, driveways, entrances and aisles
provided in the Shopping Center for the accommodation and parking of vehicles
of Tenant and its officers, agents and employees, and its customers while such
customers are shopping in the Demised Premises or in any other portion of the
Shopping Center and (b) the other common areas, common facilities and public
conveniences and amenities as are provided in the Shopping Center, including,
but not limited to, sidewalks, walkways, malls, landscaped areas, public
restrooms, fire corridors, utility and sewer lines and systems for common use,
fire protection and sprinkler alarm systems, provided for the common or joint
use and benefit of tenants and occupants of the Shopping Center, their
employees, agents, servants, customers and invitees, such parking areas,
public conveniences and other areas to be used in common, all being
hereinafter collectively referred to as "Common Areas".  All such Common Areas
shall be and remain at all times subject to the control and management of
Landlord; and Tenant shall not at any time interfere with the rights of
Landlord and other tenants, their officers, agents, employees and invitees to
use any part of the Common Areas (provided that no such person shall have the

- 9 -

right to interfere with the rights of Tenant with respect thereto as expressly set forth in this Lease).

B.  Landlord agrees that, unless it shall be prevented from so doing due to circumstances beyond Landlord's reasonable control, it will keep the Common Areas in good repair and condition, that it will keep the parking areas and driveways of the Common Areas suitably paved and marked for parking and traffic flow, that it will provide security reasonably required for the Common Areas, that it will keep the Common Areas reasonably free of refuse and obstruction and reasonably free of snow and ice to the extent required by the business operations of the stores within the Shopping Center and that it will keep the exterior Common Areas reasonably lighted at all times (during hours of darkness) during the business hours of the Shopping Center.

C.  If Landlord shall have made such designation and given Tenant notice thereof, Tenant and its officers, agents, and employees shall park their vehicles only in areas from time to time designated by Landlord as the areas for such parking.  Tenant shall not at any time park or permit the parking of any truck or any delivery vehicle in the customer parking area, and, subject to restrictions with respect to Landlord's rights concerning the Common Areas hereinafter provided, Landlord hereby reserves the exclusive right with respect to the use of the Common Areas for advertising purposes. Tenant shall require all trucks or other vehicles serving Tenant to use the service area designated by Landlord.  Tenant shall cause all vehicles servicing Tenant to be promptly loaded or unloaded and removed; all such trucks owned or operated by, in behalf of, or servicing, Tenant, shall be compelled by Tenant to comply in all respects with the "Rules and Regulations" (as such term is hereinafter defined) governing use of truck access, parking, loading and unloading facilities, and permissible hours and places therefor, as the same may be from time to time modified or amended by Landlord.

D.  Tenant's use of the Common Areas shall at all times be subject to the Rules and Regulations as Landlord, from time to time, may adopt as hereinafter provided.

E.  Landlord reserves the right to make changes, additions, alterations or improvements in or to such Common Areas (including, but not limited to, the construction of kiosks, fountains, planters, pools and sculptures, and to install vending machines, telephone booths, benches and the

-10-

the like not shown on Exhibit A); to close the same temporarily for such purposes, or in order to prevent the acquisition of public rights in such Common Areas, or to discourage non-customer parking or other use thereof (provided that Landlord shall have used reasonable efforts to avoid or minimize any such closing); and to do and perform such other acts in and to said Common Areas as, in the use of good judgment, Landlord shall determine to be advisable; provided, however, in all instances relating to Landlord's use of the Common Areas and any changes relating to the Shopping Center, that (i) there shall thereby be caused no material obstruction to Tenant's right of access to the Demised Premises, (ii) except for temporary closings as provided in this Lease, there shall always be access, for vehicles and pedestrians, to and from the Demised Premises, over the parking areas of the Shopping Center, from each of South Grant Street and Concar Drive, (iii) the areas of the Shopping Center used for parking as of the date of this Lease shall be maintained strictly as parking areas throughout the Term hereof, with buildings and other structures to be erected and/or maintained only in the areas used therefor as of the date hereof, and (iv) the visibility of Tenant's storefront and those signs Tenant shall have erected pursuant to Exhibit G hereof from Concar Drive shall not be materially diminished.

F.  In consideration for Landlord's operating, managing, securing, maintaining and repairing the Common Areas as hereinabove provided, Tenant covenants and agrees to pay to Landlord annually for each calendar year or fraction thereof, during the Term and any extensions thereof, commencing with the Commencement Date, as an Additional Rent Charge and in the manner provided below the "Tenant's Common Area Contribution" as Tenant's share of the "Total Common Area Maintenance Costs" (as hereinafter defined).  Tenant's Common Area Contribution shall be computed by multiplying the Total Common Area Maintenance Costs for the period in question by a fraction (the "Fraction"), the numerator of which is the Gross Leasable Floor Area of the Demised Premises and the denominator of which is the "Gross Leasable Floor Area of the Shopping Center" (which shall mean the actual number of square

feet of Gross Leasable Floor Area on all floors of premises in the Shopping
Center demised to tenants or available for tenancy, as subject to change from
time to time, but shall not include any insubstantial non-permanent
facilities) for said period. Tenant's Common Area Contribution, each year,
shall be paid in monthly installments, on account, in advance on the first day
of each calendar month beginning with the Rent Commencement Date, in an amount
equal to, for the first year of the Term hereof, one-twelfth (1/12) of the
product of sixty cents ($.60) times the Gross Leasable Floor Area of the
Demised Premises, and for each year thereafter during the Term hereof
one-twelfth (1/12) of the sum of the actual Tenant's Common Area Contribution
for the immediately preceding year as adjusted and finalized as herein
provided, plus five percent (5%) thereof. Within a reasonable time following
the end of each calendar year or partial calendar year, whichever is
applicable, and upon the expiration of this Lease, Landlord shall furnish to
Tenant a written statement covering such calendar year or partial calendar
year in reasonable detail and prepared in accordance with generally accepted
accounting principles showing the Total Common Area Maintenance Costs for such
period as determined by Landlord and calculating Tenant's Common Area
Contribution; whereupon Tenant, within thirty (30) days after the receipt of
such statement, will pay to Landlord any balance due and owing for the period
in question or Landlord will credit Tenant's Common Area Contribution account
with any overpayment. The Tenant's Common Area Contribution shall be prorated
for fractional months and partial calendar years.

G. "Total Common Area Maintenance Costs" shall mean all amounts
payable by Landlord as actual costs for operating, managing, maintaining and
repairing the Common Areas. Such costs shall include, but are not limited to,
the cost of: cleaning; snow, ice and rubbish removal; resurfacing; painting;
restriping; sweeping and janitorial services; maintenance and repair of
sidewalks, curbs, bumpers and Shopping Center signs and other markers;
maintenance and repair of roofs of the building of which the Demised Premises
are a part, incurred subsequent to the tenth (10th) anniversary of the
Commencement Date hereof; maintenance and repair of sprinkler systems of the
building of which the Demised Premises are a part ; planting and replanting of
plants and landscaping; water and sewerage charges; maintenance, repair and
replacement of utility systems, storm drainage systems and other
installations; lighting; premiums for workmen's compensation insurance;

-12-

premiums for all insurance on the Shopping Center reasonably carried by
Landlord; wages and salaries (including employee benefits) of employees
working at or for the Shopping Center; unemployment taxes; social security
taxes; personal and real property taxes; sales and use taxes on material,
equipment, supplies and services purchased in connection with the maintenance
of the Common Area; fees for required licenses and permits; supplies;
operation of loudspeakers and any other equipment supplying music or other
entertainment services to the Common Area; operation of public toilets;
policing the Common Area and affording protection thereof against fire, if and
to the extent that such fire protection is furnished by Landlord;
straight-line depreciation of movable equipment used in the operation, repair
and maintenance of the Common Area; rental of movable equipment used in the
maintenance of the Common Area; and other similar costs properly chargeable to
such operations; (any capital items included therein to be expensed over their
respective anticipated useful lives, on a straight line basis) and an overhead
cost equal to five percent (5.0%) of the total costs and expenses of operating
and maintaining the Common Area (exclusive of depreciation).  Landlord may
cause any or all of said services to be provided by an independent contractor
or contractors.

H.  Landlord reserves the right, at any time and from time to
time, to increase, reduce or change the number, type, size, location,
elevation, nature and use of the Common Areas and any of the buildings and
other improvements in the Shopping Center, including, without limitation, the
right to move and/or remove the same and to add additional stories thereon,
provided same shall not materially interfere with Tenant's means of ingress or
egress to and from the Demised Premises or violate any part of Section 10E
hereinabove.

11.  USE.  Tenant shall open for business at, and thereafter
initially use and occupy, the Demised Premises for the retail sale of men's,
women's and children's apparel and accessories related thereto under the trade
name ("Tenant's Trade Name") "T.J. Maxx" and for no other purpose whatsoever;
provided, however, that after having initially conducted business at the
Demised Premises as aforesaid, Tenant, subject to the express provisions of
Section 13 hereinbelow, shall be entitled to change such aforesaid use to any
other or additional lawful retail use not inconsistent with the operation of a
shopping center similar to the Shopping Center in Dublin, California, provided

-13-

that any such other or additional use shall not (i) violate any restrictions
or covenants at the time of the change in use contained in any other lease in
the Shopping Center or any ground or underlying lease in respect of the
Shopping Center in each case of which Tenant shall have been given notice,
(ii) materially conflict with the principal use at the time of the change of
any other tenant or occupant of the Shopping Center whose premises shall
comprise more than 9,000 square feet of Gross Leasable Floor Area or (iii)
constitute a nuisance; and provided further that Tenant shall give Landlord
prior written notice not less than thirty (30) days in advance of any proposed
change in use of the Demised Premises. Nothing herein shall be construed to
restrict or prohibit the conduct in the Demised Premises of a store of the
type currently operated by Tenant under Tenant's Trade Name. Tenant agrees
that it shall use the Tenant's Trade Name on all of its initial signage at the
Demised Premises and in all advertising and other promotional material; and
that it shall use the name of the Shopping Center and display it prominently
in all of its advertising applicable to the Demised Premises. Tenant hereby
grants to Landlord the right to use Tenant's Trade Name in brochures,
advertisements and other promotional material associated with the Shopping
Center, such grant to be solely in connection with this Lease and promotion of
the Shopping Center. Tenant and Tenant's concessionaires and subtenants shall
with respect to its use and occupancy of the Demised Premises comply with the
Certificate of Occupancy relating to the Demised Premises and with all laws,
statutes, ordinances, orders, rules, regulations and requirements of all
federal, state and municipal governments and the appropriate agencies,
officers, departments, boards and commissions thereof, and the board of fire
underwriters and/or the fire insurance rating organization or similar
organization performing the same or similar functions, whether now or
hereafter in force, applicable to the Demised Premises.

12. <u>CONDUCT OF BUSINESS BY TENANT</u>. Tenant agrees for the first
two (2) years of the Term hereof to operate its business in one hundred
percent (100%) of the Demised Premises unless prevented from doing so by fire
or other casualty (and except when closed not more than two (2) days during
any calendar year for the purpose of taking inventory or when closed for the
making of permitted alterations while such alteration work is actually in
progress) and to conduct its business in a first-class and reputable manner,
in keeping with good practices as established in the retail trade, maintaining

at all times an adequate staff of employees and a full and complete stock of merchandise, and to operate its business upon the Demised Premises continuously without interruption during substantially all of the days (inclusive of Sundays) and hours when the Shopping Center is open for business. In the event that the Demised Premises shall, at any time during the Term of this Lease after the second (2nd) anniversary of the first opening thereof by Tenant for retail business to customers, be closed for business to customers for any period of nine (9) months or longer other than as a result of a cause or event referred to in Sections 22, 23, or 35 hereof, then at any time thereafter but prior to any date on which Tenant shall give notice to Landlord that Tenant shall thereafter reopen the Demised Premises for business to customers ("Tenant's Notice"), Landlord may, at its election, terminate the Term of this Lease by giving Tenant notice thereof, and the Term of this Lease shall terminate on the thirtieth (30th) day after the giving of such notice by Landlord to the same extent as if said date were the date originally set forth in Sections 3 and 41 for the expiration of the Term, except that Tenant shall be obligated to pay Fixed Rent and Additional Rent Charges hereunder for the period ending on the earlier of (a) six (6) months after the giving of such notice of termination by Landlord or (b) the date on which any subsequent tenant or occupant of the Demised Premises or a material portion thereof shall be required to commence paying rent and any additional rent charges. If Tenant shall give Tenant's Notice as aforesaid, Tenant shall open the Demised Premises for business on or before the ninetieth (90th) day after the date of Tenant's Notice. For any period(s) during which the Demised Premises shall not be open for business as provided in the second preceding sentence, the Gross Sales of the Demised Premises for such period(s) shall, for purposes of determining Percentage Rent due for such period(s) be deemed to be the Gross Sales of the Demised Premises for the corresponding period(s) during the immediately preceding Lease Year of the Term (or, if such periods(s) of closure shall continue for more than one year, for the corresponding portion(s) of the Lease Year during which the Demised Premises shall last have been open for business) (in either event such Gross Sales for such preceding corresponding period of the Term being hereinafter referred to as "Last Year's Gross"); the Last Year's Gross shall be subject to adjustment in proportion to the change in the CPI (defined in Section 19 hereof) from the last month of the Lease Year from which the Last Year's Gross shall have been determined and