the last month of each Lease Year thereafter during which the Demised Premises shall remain closed as herein provided. Tenant agrees not to use or allow the use of the Demised Premises for any auction, fire, bankruptcy or "going out of business" sales except pursuant to court order or other such authority, and Landlord similarly agrees with respect to the remainder of the Shopping Center.

13. <u>PROHIBITED USES</u>. In no event shall the Demised Premises at any time be used or occupied for the display, sale, service or warehousing of any form of consumer electronics or appliance products or any products or uses incidental thereto. Tenant shall not use the names "Circuit City" or "Circuit City Superstore", or any variant or derivative thereof, in Tenant's Trade Name or in any of Tenant's advertising, except that Tenant may identify the location of the Demised Premises in Tenant's advertising as being "adjacent to Circuit City".

14. <u>ASSIGNMENT AND SUBLETTING</u>.

A. Assignment or Subletting. Excepting (i) any such transaction which shall be made to a wholly-owned subsidiary or affiliate of Tenant or Guarantor, (ii) any transaction solely for the purpose of providing financing for Tenant, (iii) any bona fide interstate public offering of any stock of Tenant or (iv) any bona fide transaction wherein at least a substantial part of the business of Tenant located in northern California, or a substantial part of Tenant's business generally, is to be conveyed to one, financially responsible purchaser which shall have a net worth at least equal to Ten Million Dollars ($10,000,000.00), and wherein such purchaser shall have agreed in writing to assume all of Tenant's obligations under this Lease (for any of which such transactions, irrespective of how accomplished, including, without limitation, sale of assets, sale of stock, subletting, merger, consolidation or otherwise, Landlord's prior written consent shall not be required), Tenant shall not, by operation of law or otherwise, assign, sell, mortgage, pledge, or in any manner transfer this Lease or any interest therein, or sublet the Demised Premises or any part or parts thereof, or grant any concession or license or otherwise permit occupancy of all or more than twenty-five percent (25%) of the Demised Premises by any person, without the prior written consent of Landlord. Notwithstanding the foregoing, any request by Tenant for such consent of Landlord, where such consent shall be required, shall be subject to

-16-

the exercise by Landlord of a "Recapture Option" (as hereinafter defined), and if the proposed assignee, sublessee or other transferee shall be of sound financial status, have a good general reputation and experience in the business proposed to be conducted and if Landlord shall not exercise such Recapture Option such consent shall be deemed given, but shall be expressly conditioned upon compliance by Tenant with all of the provisions of this Section 14. Any transfer by Tenant not in accordance herewith shall, at Landlord's election, be absolutely and unconditionally null and void and of no force and effect whatsoever.

B. Notice. If Tenant desires to undertake any such transaction as described in Section 14A hereinabove (the "Proposed Transaction"), it shall provide Landlord with prior written notice of such desire, specifying the consideration for, and all other terms and conditions of, such Proposed Transaction and identifying the proposed assignee, mortgagee (but such notice with respect to such mortgage need not be given prior to the making of the Proposed Transaction), subtenant, licensee, concessionaire or occupant (the "Proposed Party") which notice shall be accompanied by a certified (only if Tenant shall have received the same from the Proposed Party, which Tenant shall request in any such instance) financial statement setting forth the financial condition of such Proposed Party in sufficient detail so as to permit Landlord's comprehensive assessment thereof.

C. Recapture Option. Landlord shall have the right (herein called the "Recapture Option"), at its sole option, in the event that any Proposed Transaction proposes an assignment of this Lease or subletting of all or part of the Demised Premises as to which Landlord's consent is required pursuant to Section 14A hereinabove (i) to terminate this Lease in its entirety as of the "Effective Termination Date" (as such term is hereinafter defined), or (ii) in the event of a proposed partial subletting, to terminate this Lease only as to that portion of the Demised Premises which Tenant has proposed to sublet, in which event Tenant's obligations as to Fixed Rent and applicable Additional Rent Charges (including the Percentage Rent Breakpoint, but not the Percentage Rent rate) shall be reduced, as of the Effective Termination Date, in the same proportion as the proportion of the rentable area of the portion of the Demised Premises so proposed to be sublet bears to the total rentable area of the Demised Premises. If Landlord elects to exercise the Recapture Option to terminate this Lease in whole or in part, it

-17-

shall do so by the giving of written notice thereof to Tenant within thirty (30) days after Landlord's receipt of Tenant's notice described in Section 14B hereinabove, which notice from landlord shall specify the date (herein called the "Effective Termination Date") on which such termination shall become effective; provided, however, that such date shall in no event be more than sixty (60) days after the date of the giving of such notice of termination. In the event Landlord shall exercise the Recapture Option as aforesaid, Tenant's liability for the subsequent performance of the obligations of Tenant under this Lease shall cease in respect of the whole or part of the Lease so terminated by such exercise as of the Effective Termination Date, and upon such Effective Termination Date, Landlord shall pay to Tenant the actual unamortized book value (based upon the then remaining Term of the Lease, excluding any renewal options not yet exercised, and certified by an executive officer of Tenant together with accompanying documentation therefor) of Tenant's improvements made in or to the Demised Premises as part of Tenant's Work in respect of the whole or that part of the Demised Premises recaptured by Landlord as a result of the exercise by Landlord of the Recapture Option, less any amounts then owed by Tenant to Landlord hereunder. If Landlord fails to timely exercise the Recapture Option in accordance with the provisions of the next preceding sentence, Tenant may thereafter, subject to the giving of Landlord's prior written consent, which consent shall not be unreasonably withheld (except where the same shall not be required, as above provided), proceed with the Proposed Transaction contemplated by the notice furnished to Landlord by Tenant pursuant to the provisions of Section 14B hereinabove on the same terms and conditions as set forth in said notice, provided, however, that any such consent by Landlord shall be expressly conditioned upon Tenant's compliance with the provisions of Section 14D hereinbelow.

      D. Assignment/Sublease Amendment. Landlord may, inter alia, condition its consent to any Proposed Transaction, where such consent shall be required, upon the execution of an agreement pursuant to which Tenant and the Proposed Party agree to pay to Landlord any amounts due and payable in respect of the making of any Proposed Transaction wherein (i) any economic consideration in the form of money or property shall be paid to Tenant or any Guarantor, or to any affiliate or subsidiary of Tenant or any Guarantor, either in a lump sum, periodic payment or other form of consideration, with such payment to Landlord to be made upon (and subject to) the payment thereof

-18-

to such party, and/or (ii) any Fixed Rent or Additional Rent Charges in respect of the Demised Premises which shall exceed the Fixed Rent and Additional Rent Charges payable pursuant to this Lease, provided, however, that in the event of any such economic consideration paid to Tenant or a partial subletting or other partial occupancy of the Demised Premises the amount of consideration payable to Landlord or such excess Fixed Rent or Additional Rent Charges, as the case may be, shall be calculated by subtracting from the total of such economic consideration or such Fixed Rent or Additional Rent Charges payable under such partial subletting or partial occupancy, as the case may be, all reasonable and actual out-of-pocket costs to Tenant in connection with such Proposed Transaction, including, without limitation, reasonable legal fees, brokerage commissions and alteration costs. Payment of any such excess Fixed Rent or Additional Rent Charges shall be made together with each corresponding payment of the Fixed Rent and Additional Rent Charges required under this Lease.

      E. Miscellaneous. Notwithstanding any other provision of this Section 14 to the contrary, in connection with any Proposed Transaction, (i) Tenant shall reimburse Landlord upon demand, for all actual out-of-pocket expenses, including reasonable attorneys' fees, incurred in connection with any such Proposed Transaction and (ii) Landlord, Tenant and any Proposed Party shall, within ten (10) days after notice from Landlord or Tenant, as the case may be, provide such additional information, execute and deliver to each other party such documents and take such further action as each other party may reasonably require to effect such Proposed Transaction or protect Landlord's or Tenant's right in respect of this Lease. Neither the consent of Landlord to an assignment, subletting, concession or license, nor the references in this Lease to assignees, subtenants, concessionaires or licensees, shall in any way be construed to relieve Tenant of the requirement of obtaining any required consent of Landlord to any further assignment or subletting or to the making of any assignment, subletting, concession or license for all or any part of the Demised Premises. In the event Landlord consents to any assignment of this Lease, the assignee shall execute and deliver to Landlord an agreement in form and substance satisfactory to Landlord whereby the assignee shall assume all of Tenant's obligations under this Lease. Notwithstanding any assignment or subletting, including, without limitation, any assignment or subletting permitted or consented to, the original Tenant

named herein and any other person(s) who at any time was or were Tenant shall remain fully liable on this Lease, and if this Lease shall be amended, modified, extended or renewed, the original Tenant named herein and any other person(s) who at any time was or were Tenant shall remain fully liable on this Lease as so amended, modified, extended or renewed (but in no event beyond the economic liability of Tenant under this Lease as originally written and theretofore amended). Any violation of any provision of this Lease by any assignee, subtenant or other occupant shall be deemed a violation by the original Tenant named herein, the then Tenant and any other person(s) who at any time was or were Tenant, it being the intention and meaning that the original Tenant named herein, the then Tenant and any other person(s) who at any time was or were Tenant shall all be liable to Landlord for any and all acts and omissions of any and all assignees, subtenants and other occupants of the Demised Premises, provided that the Tenant originally named in this Lease shall at all times have the right to cure any default of any Tenant hereunder, and shall be given notice by Landlord of all defaults hereunder by any such assignees. If this Lease shall be assigned or if the Demised Premises or any part thereof shall be sublet or occupied by any person or persons other than the original Tenant named herein, Landlord may collect rent from any such assignee and/or, if Tenant shall then be in default hereunder beyond the cure period following notice of such default from Landlord, any subtenants or occupants, and apply the net amounts collected to the Fixed Rent and Additional Rent Charges, but no such assignment, subletting, occupancy or collection shall by itself be deemed a waiver of any of the provisions of this Section, or the acceptance of the assignee, subtenant or occupant as Tenant, or a release of any person from the further performance by such person of the obligations of Tenant under this Lease.

15. <u>REQUIREMENTS OF LAW AND FIRE INSURANCE.</u>

A. Tenant shall, at its own expense, comply with all laws, orders, ordinances and regulations of Federal, State, County, Municipal and other governmental authorities and with directions of public officers thereunder, respecting all matters of occupancy, condition or maintenance of the Demised Premises (including specifically with respect to Tenant's improvements, remodeling and renovation thereof, but excluding all matters which are the responsibility of Landlord under this Lease), whether such

orders or directions shall be directed to Tenant or Landlord, and Tenant shall hold Landlord harmless from cost or expense on account thereof.

    B.  Tenant shall not do or permit to be done any act or thing upon the Demised Premises which will invalidate or be in conflict with fire insurance policies covering the building, the Shopping Center or any part thereof or fixtures and property therein, and shall comply in its use of the Demised Premises with all rules, orders, regulations or requirements of the Board of Fire Underwriters having jurisdiction, or any other similar body, and shall not do, or permit anything to be done, in or upon the Demised Premises, or bring or keep anything therein, which shall increase the rate of fire insurance on the building, the Shopping Center or on the property located therein.  If by reason of failure of Tenant to comply with the provisions of this paragraph, the fire insurance rate shall at any time be higher than it otherwise would be, then, in addition to the right of Landlord to the exercise of any and all other remedies available under this Lease in the event that such failure shall have caused Landlord to be unable to obtain any such fire insurance, Tenant shall reimburse Landlord on demand as an Additional Rent Charge for the part of all fire insurance premiums which shall have been then or in the future charged because of such violation by Tenant and which Landlord shall have, or may be required to have, paid on account of increase in rate in its own policies of insurance.  In any action or proceeding wherein Landlord and Tenant are parties, a schedule or "makeup" of rate for the building, Shopping Center or Demised Premises issued by the Fire Insurance Exchange having jurisdiction, or other body making fire insurance rates for said premises, shall be prima facie evidence of the facts therein stated and of the several items and changes in the fire insurance rate then applicable to said premises.  In addition to the foregoing, Tenant will, if Landlord so requests (but subject to Tenant's rights with respect to its use of the Demised Premises as a typical T.J. Maxx Store as currently operated by Tenant), cease the operation of any action or remove any objects or improvements which because of their inherent danger have resulted in the increase to Landlord's insurance premiums.

    16.  <u>REPAIRS AND MAINTENANCE</u>.  Tenant shall make all repairs and replacements to, and shall keep clean, neat, safe, sanitary, in good order, repair and condition (including all painting and decorating necessary to maintain at all times a clean and sightly appearance), ordinary wear and tear

excepted, and free of vermin, the Demised Premises, including both the inside and the outside (but not including the structure, foundation, roof and roof drainage systems thereof and utility conduits, fixtures and equipment serving the Demised Premises and other premises in common or serving the Demised Premises exclusively but located outside thereof (but Tenant shall reimburse Landlord for the cost to Landlord of any such repair to such conduits, fixtures or equipment so exclusively serving the Demised Premises but located outside thereof if the need for such repair shall not have been a result of any act or omission of Landlord), which shall be maintained, in good order, repair and condition by Landlord, except that Landlord's obligation to so maintain the roof of the Demised Premises shall be only for the first ten (10) years of the Term hereof), and any equipment, facilities and fixtures therein. In making the repairs, Tenant shall use materials equal in kind and quality to the original work. The provisions of this Section shall not apply in the case of damage by fire or other casualty or by eminent domain, in which case the obligations of the parties shall be as provided in other Sections of this Lease.

17. <u>ALTERATIONS</u>.  Tenant shall not make or cause, suffer or permit the making of any "major" (as hereinafter defined) exterior or "structural" (as hereinafter defined) alteration, addition, change, replacement or installation (an "Alteration"), or any Alteration the cost of which shall be in excess of Two Hundred Thousand Dollars ($200,000.00), exclusive of trade fixtures, furnishings and the like, in or to the Demised Premises without obtaining the prior consent of Landlord in each instance; which consent may not be unreasonably denied or withheld.  A "structural" Alteration shall be any Alteration which materially alters the (i) weight or load bearing characteristics, components or members of the Demised Premises or any portion of thereof, (ii) the roof structural system or any portion thereof (other than ordinary and customary routine maintenance thereof), (iii) the foundation of the Demised Premises or any portion thereof, or (iv) the design, engineering or performance of any other material structural component, system or member of the Demised Premises or any portion thereof.  A "major" Alteration to the exterior of the Demised Premises shall be one which either materially affects the overall architectural treatment of such exterior or changes the basic color thereof.  Tenant shall with respect to the making of any such Alterations comply generally with the requirements hereof pertaining