claiming under Landlord, subject to the terms and provisions of this Lease and to all mortgages and ground and underlying leases of record to which this Lease may be or become subject and subordinate (with non-disturbance of Tenant and recognition of this Lease as elsewhere provided in this Lease, and subject to the provisions of Section 50 hereof).

35. UNAVOIDABLE DELAYS. Except for Tenant's obligations to pay Fixed Rent and Additional Rent Charges and for the date of March 1, 1988, and the dates regarding certain periods during which the Commencement Date may not occur, provided in Sections 3 and 4 hereof, the time of Landlord or Tenant, as the case may be, to perform any of its respective obligations hereunder shall be extended if and to the extent that the performance thereof shall be prevented due to any strikes, lockouts, civil commotions, warlike operations, invasions, rebellions, hostilities, military or usurped power, governmental regulations or controls, inability to obtain labor or materials despite due diligence, acts of God, or other causes beyond control of the party whose performance is required.

36. NOTICES. All notices, approvals, demands and requests which are required or desired to be given by either party to the other hereunder shall be in writing and shall be deemed duly given if sent by United States registered or certified mail and deposited in the United States post office, return receipt requested and postage prepaid. Notices, consents, approvals, demands and requests which are served upon Landlord or Tenant in the manner provided herein shall be deemed to have been given or served for all purposes hereunder on the second (2nd) business day following the date on which such notice, consent, approval, demand or request shall have been mailed as aforesaid. All notices, consents, approvals, demands and requests given to Tenant shall be addressed to Tenant at its address set forth at the head of this Lease or at such other place as Tenant may from time to time designate in a notice given in accordance with the provisions of this Section. All notices, consents, approvals, demands and requests given to Landlord shall be in duplicate, and until such time as Landlord shall designate otherwise, one such duplicate shall be addressed to Landlord at its address set forth at the head of this Lease to the attention of Corporate Secretary, and the other duplicate shall be addressed to Landlord in care of Retail Realestate Consultants, 201 Oscawana Lake Road, Putnam Valley, New York 10579. Landlord may from time to time change the names and/or addresses to which notices, consents, approvals, demands or requests given to Landlord shall be addressed

and sent as aforesaid, by designating such other names and/or addresses in a notice given in accordance with the provisions of this Section.

37. ESTOPPEL CERTIFICATES. Each of Tenant and Landlord shall, within twenty (20) days after each and every request by the other, execute, acknowledge and deliver to the other a statement in writing (a) certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified, and stating the modifications), (b) specifying the dates to which the Fixed Rent and Additional Rent Charges have been paid, (c) stating whether or not, to the best knowledge of the certifying party, the other party is in default in performance or observation of its obligations under this Lease, and, if so, specifying each such default, (d) stating whether or not, to the best knowledge of the certifying party, any event has occurred which with the giving of notice or passage of time, or both, would constitute a default by the other party under this Lease, and, if so, specifying each such event, and (e) in the case of a certificate by Tenant, stating whether Tenant has exercised any option(s) to extend the Term of this Lease, and, if so, specifying each such extension. Any such statement delivered pursuant to this Section may be relied upon by any prospective purchaser, assignee or transferee of Landlord's or Tenant's interest in the Lease or in the building or Shopping Center or the Demised Premises.

38. BROKERAGE. Tenant represents to Landlord that, except for Soboroff/Moskowitz Company, Tenant dealt with no broker or other person in bringing about this Lease and Tenant shall pay, and shall indemnify, defend and hold harmless, Landlord from and against, any claims made by any other broker or other person for a brokerage commission, finder's fee, or similar compensation, by reason of or in connection with claims by such other broker or person regarding dealings with Tenant relating to this Lease, and any loss, liability, damage, cost and expense (including, without limitation, reasonable attorneys' fees) in connection with such claims if such other broker or other person claims to have had dealings with Tenant. Landlord shall pay all commissions, fees, charges and the like of said Soboroff/Moskowitz Company with respect hereto.

39. SHORT FORM LEASE. Tenant shall not record this Lease. Either party shall, at the request of the other, execute, acknowledge and

-44-

deliver, at any time after the date of this Lease, a short form lease prepared by the requesting party in recordable form setting forth a description of the Shopping Center and the Demised Premises, the duration of the Term and any other provisions of this Lease which either party may request, except that the provisions relating to Fixed Rent and Additional Rent Charges and any other matters specified by Landlord shall not be set forth therein unless required by law for the recording of said short form lease. Either party may record said short form lease. Such short form lease shall not change the rights and obligations of the parties under this Lease.

40. <u>MISCELLANEOUS COVENANTS</u>. Tenant shall not commit or suffer to be committed any waste upon the Demised Premises or any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant or occupant of the Shopping Center. Tenant shall regularly remove its garbage and refuse and shall pay the cost thereof. The removal of such garbage and refuse shall be subject to such uniform rules and regulations as in the judgment of Landlord are necessary for the proper operation of said Shopping Center. Tenant shall take no action which would violate any union contracts of Landlord affecting the Shopping Center, nor create any work stoppage, picketing, labor disruption or dispute, or any interference with the business of Landlord or any tenant or occupant in the Shopping Center or with the rights and privileges of any customer or other person(s) lawfully in and upon said Shopping Center, nor cause the impairment of the the good will of the Shopping Center.

41. <u>COMPETITION</u>. Tenant agrees that for so long as this Lease is in effect, should Tenant or other persons acting in concert with Tenant or under Tenant's control, engage in any similar competing store to a typical T.J. Maxx store within a radius of three (3) miles of the perimeter of the Shopping Center, and if as a result of the operation of such competing store the Gross Sales of the Demised Premises shall have decreased from the Lease Year immediately prior to the Lease Year current as of the opening of such competing store and Percentage Rent hereunder shall have declined as a result thereof (taking into account in determining whether such competing store is the cause of such decrease in Gross Sales the following factors (and such other factors as Landlord shall reasonably prove to be actually relevant in respect of such determination) for all relevant tie periods: (i) the state of the economy generally and in northern California specifically, (ii) the trend

of Tenant's sales in the Demised Premises prior to the commencement of operation of such competing store, and (iii) the trend of Tenant's sales generally and in northern California specifically), then the Gross Sales of the Demised Premises for each Lease Year during which such competing store shall be operated and the Gross Sales and Percentage Rent shall be so reduced, shall be determined in accordance with the provisions of the last sentence of Section 10E of this Lease (utilizing the Last Year's Gross and adjustment thereof in proportion to changes in the CPI as provided therein). The provisions of this Section 41 shall not, however, apply to any such competing store which (i) shall be operated by any entity, or a successor thereto, which shall have acquired Tenant's business in the Demised Premises, or (ii) which shall have been acquired by Tenant or any wholly owned subsidiary or affiliate of Tenant or Guarantor, provided that in either of such instances such competing store shall be in operation as of the date of such acquisition.

42. OPTIONS TO RENEW. Tenant shall have two (2) successive options to extend the Term of this Lease from the dates upon which it would otherwise expire for two (2) separate extended periods of five (5) years each (each such period being herein called an "Extended Period", the first of which being herein called the "First Extended Period" and the second of which being herein called the "Second Extended Period"). If Tenant elects to exercise any one or more of said options it shall do so by giving notice of such election to Landlord on or before the date which is not more than eighteen (18) months nor less than nine (9) months before the beginning of the Extended Period for which the term of this Lease is being extended by the exercise of such option. Tenant agrees that it shall have forever waived its right to exercise any such option if it shall fail for any reason whatsoever to give such notice to Landlord by the time provided for the giving of such notice, whether such failure is inadvertent or intentional, time being of the essence as to the exercise of such options. If Tenant elects to exercise any one or more of said options, the Term of this Lease shall be automatically extended for the Extended Period covered by the option so exercised without execution of an extension or renewal lease. Within twenty (20) days after request of either party after the effective exercise of such option, Landlord and Tenant shall execute, acknowledge and deliver to each other duplicate originals of an instrument in recordable form confirming that such option was effectively exercised. Each Extended Period shall be upon the same terms and conditions

**REDACTED**

(including, but not limited to, the obligation of Tenant to pay Percentage Rent) as are in effect immediately preceding the commencement of such Extended Period, except that Tenant shall have no right or option to extend the Term of this Lease for any period of time beyond the expiration of the Second Extended Period and except that (a) in the First Extended Period the Fixed Rent payable pursuant to Section 4 of this Lease shall be payable at the rate of ███████ per annum (calculated on the basis of ███ per square foot of Gross Leasable Floor Area) and (b) in the Second Extended Period the Fixed Rent payable pursuant to Section 4 of this Lease shall be payable at the rate of ███████ per annum (calculated on the basis of ███ per square foot of Gross Leasable Floor Area). Any termination, expiration, cancellation or surrender of this Lease shall terminate any right or option for the Extended Periods not yet exercised. Such option to the extend the Term of this Lease may not be severed from this Lease or separately sold, assigned or otherwise transferred.

43. **WAIVER OF JURY.** Tenant hereby waives all right to trial by jury in any summary or other action, proceeding or counterclaim arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, the Demised Premises and the use and occupancy thereof, and any claim of injury or damages.

44. **NO WAIVER.** The failure of either party to insist in any one or more cases upon the strict performance or observation of any obligation of the other hereunder or to exercise any right or option contained herein shall not be construed as waiver or relinquishment for the future of any such obligation of such other party or any right or option of the waiving party. Landlord's receipt and acceptance of Fixed Rent or Additional Rent Charges, or either party's acceptance of performance of any other obligation by the other party, with knowledge of such other party's breach of any provision of this Lease, shall not be deemed a waiver of such breach. No waiver by either party of any term, covenant or condition of this Lease shall be deemed to have been made unless expressed in writing and signed by such party.

45. **WAIVER OF LANDLORD'S LIABILITY.** Notwithstanding any provision to the contrary, Tenant shall look solely to the estate and property of Landlord in and to the Shopping Center (or the proceeds received by Landlord on a sale of such estate and property but not the proceeds of any

financing or refinancing thereof) in the event of any claim against Landlord arising out of or in connection with this Lease, the relationship of Landlord and Tenant or Tenant's use of the Demised Premises, and Tenant agrees that the liability of Landlord in damages arising out of or in connection with this Lease, the relationship of Landlord and Tenant or Tenant's use of the Demised Premises, shall be limited to such estate and property of Landlord (or sale proceeds). No other properties or assets of Landlord shall be subject to levy, execution or other enforcement procedures for the satisfaction of any judgment for damages arising out of or in connection with this Lease, the relationship of Landlord and Tenant or Tenant's use of the Demised Premises, and if Tenant shall acquire a lien or interest in any other properties or assets by judgment or otherwise to secure a money judgment against Landlord, Tenant shall promptly release such lien on or interest in such other properties and assets by executing, acknowledging and delivering to Landlord an instrument to that effect prepared by Landlord's attorneys.

46. SUCCESSORS AND ASSIGNS. The provisions of this Lease, except as herein otherwise specifically provided, shall extend to, bind and inure to the benefit of the parties hereto and their respective personal representatives, heirs, successors and permitted assigns. In the event of a sale of the Shopping Center or any assignment or transfer of Landlord's interest in this Lease, the seller, transferor or assignor, as the case may be, shall be and hereby is entirely relieved and freed of all obligations under this Lease thereafter accruing, provided that the transferee shall have expressly assumed vis-a-vis Tenant all of the obligations of Landlord hereunder.

47. INTERPRETATION. Irrespective of the place of execution or performance, this Lease shall be governed by and construed in accordance with the laws of the State in which the Demised Premises is located. If any provision of this Lease or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Lease and the application of that provision to other persons or circumstances shall not be affected but rather shall be enforced to the extent permitted by law. The table of contents, captions, headings and titles, if any, in this Lease are solely for convenience of reference and shall not affect its interpretation. This Lease shall be construed without regard to any presumption or other rule requiring

construction against the party causing this Lease to be drafted. If any words or phrases in this Lease shall have been stricken out or otherwise eliminated, whether or not any other words or phrases have been added, this Lease shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Lease and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated. All terms and words used in this Lease, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. The word "person" as used in this Lease shall mean a natural person or persons, a partnership, a corporation or any other form of business or legal association or entity.

48. NO RESERVATION. No employee or agent of Landlord, no broker, and no agent of any broker has authority to make or agree to make a lease or any other agreement or undertaking in connection herewith, including but not limited to the modification, amendment or cancellation of a lease. The mailing or delivery of this document by an employee or agent of the Landlord, any broker or the agent of any broker to a potential Tenant, its agent or attorney shall not be deemed an offer of the Landlord or a reservation of or option for the Demised Premises until such time as a lease, duly executed by both Landlord and Tenant, is delivered to such potential Tenant, its agent or attorney.

49. COMPLETE AGREEMENT. There are no representations, agreements, arrangements or understandings, oral or written, between the parties relating to the subject matter of this Lease which are not fully expressed in this Lease. This Lease cannot be changed or terminated orally or in any manner other than by a written agreement executed by both parties. In making and executing this Lease, each party has relied solely on such investigations, examinations and inspections as it has chosen to make or has made and each party acknowledges that the other has afforded to it the opportunity for full and complete investigations, examinations and inspections.