effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on _____, 19__ unless the Lease terminates earlier as provided in the Lease.

3. The date of commencement of the Second Extended Period (as such term is defined in the Lease) shall be _____, 19__ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on _____, 19__ unless the Lease terminates earlier as provided in the Lease.

4. As of the Commencement Date, the annual rate of Fixed Rent (as such term is defined in the Lease) from the Rent Commencement Date to the day before the fifth anniversary of the Commencement Date, _____, 19__ shall be $_____.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

Attest:                           CIRCUIT CITY STORES, INC.


_____       By_____
        Secretary                         Vice President
(Seal)


Attest:                           THE TJX COMPANIES, INC.


_____       By_____
        Secretary                         President
(Seal)

## EXHIBIT C

### LANDLORD'S WORK

The following work shall be provided by Landlord in and to the Demised Premises, at its cost and expense:

1. Structure:
    A. Roof, structural frame and floor slab: Will be delivered to Tenant in good and sound condition as of the Commencement Date.
    B. Walls: Two hour fire-rated demising walls comprised of sheetrock on studs will be constructed to separate the Demised Premises from the balance of the building (the "Building") of which they form a part.

2. Utilities:
    A. Electrical: Independent electrical service will be made available for Tenant's use within (or on the exterior of) the Building, by way of either a separation of the existing Building service or a new service for the Demised Premises, at Landlord's option.
    B. Water, sewer and fire sprinkler: Existing common services to the Building will remain, with Tenant to pay its pro rata share of Landlord's costs and expenses for amounts consumed or otherwise charged in respect thereto.

3. Expansion:
    Construction of the presently unenclosed portion of the Demised Premises to form an integrated, fully enclosed building with the building on the Demised Premises on the date hereof, pursuant to, and as shown upon, the working drawings captioned and listed below.

### TENANT'S WORK

Tenant's Work shall substantially be as described on the set of plans and specifications ("Tenant's Plans and Specifications") therefor which is annexed hereto as Exhibit C-1.

## EXHIBIT C-1

(Plans and specifications for Tenant's Work to be annexed)

## EXHIBIT D

### RULES AND REGULATIONS

(a) Tenant, its employees and/or agents, shall not solicit business in the parking or other Common Areas, nor shall Tenant, its employees or its agents, distribute any handbills or other advertising matter in or on the parking or other Common Areas, or in or on any automobiles parked therein.

(b) In the event that there is or shall be installed a supervised fire sprinkler alarm system for the protection of Demised Premises and of the Shopping Center, Tenant agrees to pay its pro rata share of the service charges in connection with such system.

(c) Tenant shall not carry on any trade or occupation, or operate any instrument or apparatus or equipment which emits any odor or causes any noise or sound discernible outside the Demised Premises and which may be deemed offensive in nature.

(d) Tenant shall not place or maintain any display of merchandise, or otherwise conduct any business (including the storage of any merchandise or other property of Tenant), in any areas of the Shopping Center outside of the Demised Premises.

(e) Tenant shall store or stock in the Demised Premises substantially only such goods, wares, merchandise or other property as shall be reasonably required for the conduct of Tenant's business in the Demised Premises.

(f) Tenant shall not use, permit or suffer the use of the Demised Premises, or any part thereof, as living, sleeping or lodging quarters, or other residential purpose.

(g) Tenant shall not use the plumbing facilities for any purpose other than that for which they are constructed, and no grease or foreign substance of any kind shall be disposed of therein, unless the expense of any breakage, stoppage or damage (whether on or off the Demised Premises) resulting from any breach thereof shall be borne by Tenant.

(h) Tenant shall not install or permit to be installed in, on or about the Demised Premises any audio, video or radio transmitting equipment, diathermy equipment, x-ray equipment or any other material or equipment which would cause any interference with, or interruption of, radio or television reception or transmission anywhere in the Shopping Center.

(i) No loudspeakers, televisions, phonographs, radios, flashing lights or other devices shall be used in a manner so as to be readily heard or seen outside of the Demised Premises.

(j) Tenant shall not obstruct the passageways, driveways, approachways, walks, roadways, exits and entries in, to and from and through the Common Areas and all other parts of the Shopping Center used in common with other tenants.

(k) Tenant shall keep its display windows and sales areas illuminated and its signs and exterior lights lighted each and every day of the Term during the hours it shall be open and for at least one half hour thereafter.

(l) Tenant shall operate the heating, ventilating and air-conditioning system servicing the Demised Premises in such a manner so as to provide sufficient heat during all times so as to prevent freezing of all pipes within the Demised Premises.

(m) Except in emergency, neither Tenant, its agents, employees or contractors shall without notice to Landlord enter upon or have access to any roof at the Shopping Center without Landlord's express prior consent in each instance.

(n) All trash, refuse and waste materials shall be regularly moved from the Demised Premises, and until removal shall be stored (i) in adequate containers, which such containers shall be located so as not to be visible to the general public shopping in the Shopping Center, and (ii) so as not to constitute any health or fire hazard or nuisance to any other occupant of or other person in the Shopping Center. No burning of trash, refuse or waste materials shall occur.

(o) If Tenant shall ay any time use the front of the Demised Premises for merchandise deliveries, Tenant shall cause all trucks so using the front of the Demised Premises to load and unload prior or subsequent to the hours of the Shopping Center opening for business to the general public.

(p) Tenant shall not throw, discard or deposit any paper, glass or extraneous matter of any kind, except in designated receptacles, or create litter or hazards of any kind; nor deface, damage or demolish any part of the Demised Premises or any sign, light standard or fixture, landscaping materials or other improvements within the Shopping Center, or the property of any customers, business invitees or employees situated within the Shopping Center.

(q) Tenant shall fully cooperate with Landlord in promoting the use of such trade names and slogans as Landlord may adopt for the Shopping Center.

(r) Tenant shall pay when and as due all license fees, permit fees and charges of a similar nature for the conduct by Tenant or any concessionaire of any business or undertaking authorized hereunder to be conducted in the Demised Premises (provided that Tenant shall have the right to contest any such fees or charges).

(s) If the Demised Premises be or become infested with vermin, Tenant shall at Tenant's expense (unless such infestation shall have been caused by any act or neglect of Landlord) cause the same to be exterminated from time to time.

(t) Except for facilities for its employees, Tenant shall not operate in or on the Demised Premises or in any part of the Shopping Center any coin or token operated vending machine or similar device for the sale of

merchandise other than pay telephones (including, without limitation, pay lockers, pay toilets, scales, amusement devices, and machines for the sale of beverages, foods, candy, cigarettes or other commodities).

(u) Tenant shall not permit the cleaning of any windows or other exterior maintenance and janitorial services to be performed except during reasonable hours designated by Landlord for such purpose.

(v) Any freight handling equipment (including, without limitation, fork-lift trucks, tow trucks or similar machines) used by or on behalf on Tenant in the Shopping Center shall be equipped with pneumatic rubber tires, and any such equipment which is powered shall be electrically powered.

(w) Tenant shall not place a load on any floor in the Demised Premises or the Shopping Center which shall exceed the floor load per square foot which such floor was designed to carry, and Tenant shall install any heavy items of equipment which shall be installed or maintained in the Demised Premises in such a manner so as to achieve a proper distribution of weight.

(x) Tenant shall not install, operate or maintain in the Demised Premises or the Shopping Center any electrical equipment which will overload the electrical system therein, or any part thereof, beyond its reasonable capacity for proper and safe operation as determined by Landlord in relation to the overall system and requirements therefor in the Shopping Center, or which does not bear Underwriter's approval.

EXHIBIT E

<u>SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT</u>
(Lease to Master Lease)

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT (this "Agreement") is made by and between Tenant and Owner, and affects the Property described in Exhibit A attached hereto. The terms "Tenant," "Landlord," "Owner," "Premises," "Lease," "Property" and "Master Lease" are defined in the Schedule of Definitions attached hereto as Exhibit B. This Agreement is entered into with reference to the following facts.

A. Landlord and Tenant have entered into the Lease of the Premises, which premises constitute a portion of the Property.

B. Owner is the fee owner of the Property, and has leased the Property to Landlord pursuant to the terms of the Master Lease.

C. The parties hereto desire expressly to confirm the subordinate status of the Lease to the Master Lease, and Tenant has requested that Owner agree not to disturb Tenant's possessory rights in the Premises in the event that Landlord defaults under the terms of the Master Lease and Owner succeeds to Landlord's interest under the Master Lease, and that Owner recognize generally the rights of the Tenant under the Lease and agree to attorn to Tenant in the event that the Master Lease shall for any reason be terminated, provided that Tenant agrees to attorn to Owner if requested to do so by Owner.

NOW THEREFORE, in consideration of the mutual covenants contained herein, and of ten dollars ($10) in hand paid by each to the other, and of other good and valuable consideration, the receipt and sufficiency of all of which are hereby acknowledged, the parties agree as follows:

1. <u>Subordination.</u> Notwithstanding anything to the contrary set forth in the Lease, the Lease and the leasehold interests and estate created thereby and the rights, privileges and powers of the Tenant and Landlord thereunder, including, without limitation, all rights of first refusal, purchase options and all other rights or interests of the Tenant under the Lease, shall be and the same are hereby, and with full knowledge and understanding of the effect thereof, unconditionally made and shall at all times remain subject, subordinate and inferior to the Master Lease, and all the rights, privileges and powers of the Owner thereunder and to any and all modifications, consolidations and replacements thereof, and to all renewals and extensions thereof originally provided for therein, it being expressly understood and agreed that in the event that Landlord or Owner shall terminate the Master Lease, the Lease and the leasehold estate created thereby shall be automatically terminated and be of no force and effect

-1-