(without the necessity of any further action by Owner), subject to the provisions of Paragraph 3 below.

2. <u>Acknowledgment and Agreement by Tenant</u>. Tenant acknowledges and agrees that:

(a) From and after the date hereof, in the event of any act or omission by Landlord which would give Tenant the right, either immediately or after the lapse of time, to terminate the Lease, or to claim a partial or total eviction, Tenant will not exercise any such right:

(i) until it has given written notice of such act or omission to Owner; and

(ii) until the same period of time as is given to Landlord under the Lease to cure such act or omission shall have elapsed following such giving of notice to Owner and following the time when Owner shall have become entitled under the Master Lease to remedy the same.

(b) This Agreement satisfies any condition or requirement in the Lease relating to the granting of a non-disturbance agreement by Owner.

3. <u>Owner as Landlord</u>. Owner hereby recognizes the Lease generally, and all of Tenant's rights thereunder. In the event that Owner succeeds to the interest of Landlord under the Master Lease, then:

(a) <u>Non-disturbance</u>. The Lease shall continue in full force and effect as a direct lease between the Owner and Tenant, upon and subject to all of the terms, covenants and conditions of the Lease, for the balance of the term of the Lease. Tenant hereby agrees to adhere to and accept Owner as Landlord under the Lease, and to be bound by and perform all of the obligations imposed by the Lease, and Owner will not disturb the possession of Tenant, and Owner agrees that it will adhere to and accept Tenant as tenant under the Lease, and to be bound by all of the obligations imposed on the Landlord by the Lease, provided, however, that Owner shall not be:

(i) liable for any act or omission of a prior landlord (including Landlord); or

(ii) subject to any offsets which Tenant might have against any prior landlord (including Landlord); or

(iii) bound by any rent or additional rent which Tenant might have paid in advance to any prior landlord (including Landlord) for a period in excess of one month, or by any security deposit, cleaning deposit or other prepaid charge which Tenant might have paid in advance to any prior landlord

-2-

and which shall not have been paid over to Owner (including Landlord); or

(iv) bound by any agreement or modification of the Lease hereafter made without the written consent of Owner; or

(v) obligated to cure any defaults of any prior landlord (including Landlord) which shall have occurred prior to the time that Owner shall have succeeded to the interest of such prior landlord under the Lease.

(b) <u>New Lease</u>. Upon the written request of either Owner or Tenant to the other given at the time Owner succeeds to Landlord's interest under the Master Lease, the parties agree to execute a lease of the Premises upon the same terms and conditions as the Lease between Landlord and Tenant, which lease shall cover any unexpired term of the Lease existing prior to Owner succeeding to Landlord's interest under the Master Lease.

4. <u>Acknowledgement and Agreement by Landlord</u>. Landlord, as landlord under the Lease and tenant under the Master Lease, acknowledges and agrees, for itself and its heirs, successors and assigns, that:

(a) This Agreement does not:

(i) constitute a waiver by Owner of any of its rights under the Master Lease vis-a-vis Landlord; and/or

(ii) in any way release Landlord from its obligations to comply with the terms, provisions, conditions, covenants, agreements and clauses of the Master Lease;

(b) The provisions of the Master Lease remain in full force and effect and must be complied with by Landlord

5. <u>No Obligation of Owner</u>. Owner shall have no obligation or incur any liability with respect to the erection or completion of the improvements in which the Premises are located or for completion of the Premises or any improvements for Tenant's use and occupancy, either at the commencement of the term of the Lease or upon any renewal or extension thereof or upon the addition of additional space, pursuant to any expansion rights contained in the Lease.

6. <u>Notice</u>. All notices hereunder to Owner shall be deemed to have been duly given if mailed by United States registered or certified mail, with return receipt requested, postage prepaid to each party at its address set forth in Exhibit B attached hereto (or at such other address as shall be given in writing by any party to the other parties), and shall be deemed complete upon any such mailing.

7. <u>Miscellaneous</u>.

(a) It is expressly understood and agreed that this Agreement shall supersede, to the extent inconsistent herewith, any provisions of the Lease or of the Master Lease relating to the subordination of the Lease, and the interests and estates created thereby, to the Master Lease.

(b) Owner shall have no obligations nor incur any liability with respect to any warranties of any nature whatsoever, whether pursuant to the Lease or otherwise, arising prior to Owner's succeeding to the interest of Landlord under the Master Lease, including, without limitation, any warranties respecting use, compliance with zoning, Landlord's authority, habitability, fitness for purpose or possession.

(c) Owner shall have no obligation, nor incur any liability, beyond Owner's then equity interest in the Premises, and Tenant shall look exclusively to such equity interest of Owner in the Premises, for the payment and discharge of any monetary obligations imposed upon Owner hereunder or under the Lease.

(d) This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective sucessors and permitted assigns, provided, however, that in the event of the assignment or transfer of the interest of Owner, all obligations and liabilities of Owner thereafter arising under this Agreement shall terminate, and thereupon all such obligations and liabilities shall be the responsibility of, and shall be deemed assumed by, the party to whom Owner's interest is assigned or transferred, and provided further that the interest of Tenant under this Agreement may not be assigned or transferred, except as Tenant may transfer its interest in the Lease, without the prior written consent of Owner.

(e) This Agreement shall be governed by and construed in accordance with the laws of the State in which the Property is located.

(f) Landlord and Tenant hereby agree to execute and deliver, in recordable form if necessary, any and all further documents and instruments reasonably requested by any party hereto or any title insurance company to give effect to the terms and provisions of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Subordination, Non-Disturbance and Attornement Agreement, under seal, as of _____, 1987.

TENANT:

THE TJX COMPANIES, INC., a Delaware corporation

BY:_____

    Its:_____

LANDLORD:

CIRCUIT CITY STORES, INC., a Virginia corporation

BY:_____

    Its:_____

OWNER:

<u>Concar Enterprises, Inc.</u>

<u>a California corporation</u>

BY:_____

    Its:_____

Notarial Acknowledgement for Corporation

STATE OF _____ )
                               ) SS.
COUNTY OF CALIFORNIA           )

On _____, 19__, before me, the undersigned, a Notary Public in and for said County and State, duly commissioned and sworn, personally appeared _____, and _____, personally known to me or proved to me on the basis of satisfactory evidence to be the persons who executed this instrument, acknowledged to me to be the _____ President and _____ Secretary, respectively, of _____, a _____ corporation, the corporation that executed the foregoing instrument, further acknowledged to me to be the persons who executed such instrument on behalf of such corporation, and acknowledged to me that such corporation executed the same pursuant to its By-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

_____
Notary Public

Notarial Acknowledgement for Corporation

COMMONWEALTH OF VIRGINIA )
                          ) SS.
COUNTY OF _____)

On _____, 19__, before me, the undersigned, a Notary Public in and for said County and State, duly commissioned and sworn, personally appeared _____, and _____, personally known to me or proved to me on the basis of satisfactory evidence to be the persons who executed this instrument, acknowledged to me to be the _____ President and _____ Secretary, respectively, of _____, a _____ corporation, the corporation that executed the foregoing instrument, further acknowledged to me to be the persons who executed such instrument on behalf of such corporation, and acknowledged to me that such corporation executed the same pursuant to its By-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

_____
Notary Public

Notarial Acknowledgement for Corporation

COMMONWEALTH OF MASSACHUSETTS)
                             ) SS.
COUNTY OF                    )

On _____, 19__, before me, the undersigned, a Notary Public in and for said County and State, duly commissioned and sworn, personally appeared _____, and _____, personally known to me or proved to me on the basis of satisfactory evidence to be the persons who executed this instrument, acknowledged to me to be the _____ President and _____ Secretary, respectively, of _____, a _____ corporation, the corporation that executed the foregoing instrument, further acknowledged to me to be the persons who executed such instrument on behalf of such corporation, and acknowledged to me that such corporation executed the same pursuant to its By-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

                                    _____
                                                      Notary Public

-7-

EXHIBIT A

ALL THAT CERTAIN REAL PROPERTY SITUATE IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PORTION OF PARCEL 2, AS DESIGNATED ON THAT CERTAIN MAP ENTITLED "PARCEL MAP NO. 19 IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, BEING A DIVISION OF PARCEL 2 OF PARCEL MAP NO. 9, AS RECORDED IN BOOK 4 OF PARCEL MAPS AT PAGE 21, RECORDS OF THE COUNTY OF SAN MATEO, BEING A PORTION OF NINETEENTH AVENUE PARK, UNIT NO. 1", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON MARCH 14, 1968 IN BOOK 4 OF PARCEL MAPS AT PAGE 50, SAID PORTION BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF SAID PARCEL 2; THENCE FROM SAID POINT OF BEGINNING ALONG THE WESTERLY LINE OF SAID PARCEL 2 NORTH 01° 38' 57" WEST 720.53 FEET TO THE NORTHERLY LINE OF SAID PARCEL 2; THENCE ALONG SAID NORTHERLY LINE, EASTERLY ON THE ARC OF A CURVE TO THE RIGHT, FROM A TANGENT WHICH BEARS NORTH 81° 34' 16" SAID CURVE HAVING A RADIUS OF 1712.50 FEET AND A CENTRAL ANGLE OF 3° 17' 34", AN ARC DISTANCE OF 98.42 FEET TO THE NORTHWESTERLY CORNER OF PARCEL 3, AS SAID PARCEL 3 IS SHOWN ON THE ABOVE MENTIONED PARCEL MAP; THENCE ALONG THE WESTERLY AND SOUTHERLY LINES OF SAID PARCEL 3, SOUTH 00° 26' 49" EAST 100.00 FEET AND NORTH 89° 33' 11" EAST 100.00 FEET TO THE SOUTHEASTERLY CORNER OF SAID PARCEL 3; THENCE SOUTH 00° 26' 49" EAST 100.00 FEET; THENCE NORTH 89° 33' 11" EAST 175.00 FEET TO THE EASTERLY LINE OF SAID PARCEL 2; THENCE ALONG SAID EASTERLY LINE SOUTH 00° 26' 49" EAST 528 FEET MORE OR LESS TO THE SOUTHEASTERLY CORNER OF SAID PARCEL 2; THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL 2 SOUTH 88° 21' 03" WEST 340 FEET TO THE POINT OF BEGINNING.

EXHIBIT B

Schedule of Definitions

"Owner" shall mean Concar Enterprises, Inc. , a __California__ corporation. All notices hereunder to Owner shall be mailed to:

                            with a copy to

[Address and Name]        [Second Address and Name]

"Landlord" shall mean Circuit City Stores, Inc., a Virginia corporation, having an office at 2040 Thalbro Street, Richmond, Virginia 23230.

"Master Lease" shall mean a certain lease entered into by and between Owner (f/k/a Concar Ranch and Enterprises, Inc.) and Edbro California Realty Company, Inc., dated April 1, 1970, covering the Property, as supplemented by the instruments described in the list thereof attached hereto, and the tenant's interest in which is now held, pursuant to assignment thereof dated December 29, 1986, by Landlord.

"Lease" shall mean a certain lease entered into by and among Landlord and Tenant dated as of July ___, 1987, covering the Premises.

"Premises" shall mean certain space in the improvements located in and upon the Property, as more specifically described in the Lease.

"Property" shall mean the real property described in Exhibit A attached hereto together with the improvements thereon.

"Tenant" shall mean The TJX Companies, Inc., a Delaware corporation, having an office at One Mercer Road, Natick, Massachusetts.

FRANK FRANK3

-9-

EXHIBIT F

FORM OF PERCENTAGE RENT REPORT



THE TJX COMPANIES, INC.
One Mercer Road
Natick, Massachusetts  01760

Date: _____

CIRCUIT CITY STORES, INC.
2040 Thalbro Street
Richmond, Virginia  23230

Re: T.J. Maxx # _____
    _____
    _____, California

Gentlemen:

This is to certify that "Gross Sales" (as such term is defined in the lease in respect of the captioned premises) for the above captioned premises for the lease year commencing on February 1, 19__ and ending on January 31, 19__ amounted to $_____.

We have enclosed our check in the amount of $_____ based on the following computation:

| | | |
|---|---|---|
| Gross Sales | $ | _____ |
| Less "Breakpoint" | ($ | ▉▉▉▉▉▉▉) |
| Sales Subject to Percentage Rent | $ | _____ |
| Times % Rate | x | 0.020 |
| = PERCENTAGE RENT DUE | $ | _____ |

Very truly yours,

_____
Vice President and Chief Financial Officer

## EXHIBIT G

(Plans and specifications for Tenant's initial exterior and pylon signs to be annexed)

## G U A R A N T E E

Reference is made to a lease dated July 31, 1987, between Circuit City Stores, Inc., a Virginia corporation (hereinafter referred to as "Landlord") and The TJX Companies, Inc., a Delaware corporation (hereinafter referred to as "Tenant") of certain premises within the property located at and commonly known as and numbered 1880 South Grant Street, San Mateo, California

In consideration of One Dollar and other valuable considerations paid, the receipt whereof is hereby acknowledged, Zayre Corp. hereby unconditionally guarantees to Landlord and its successors and assigns the payment of the rents provided for in said lease and the performance and observance of all agreements and conditions contained in said lease on the part of Tenant to be performed or observed. Zayre Corp. hereby agrees that it shall in no way be released from its obligations under this guarantee by any of the following actions: any assignment of said lease or any subletting of the demised premises, any waiver of default or any extension of time or other favor or indulgence granted by Landlord to Tenant or any failure to receive notice of any of said actions. Zayre Corp. hereby waives notice of non-payment or any other default in the performance or observance of any agreement or condition contained in said lease on the part of Tenant to be performed or observed and hereby waives all so-called suretyship defenses. If said lease shall be terminated on account of default thereunder by Tenant at a time when the tenant in possession shall not be Zayre Corp. or a subsidiary of Zayre Corp., then Zayre Corp. shall not be liable for the payment of any rent or for the performance or observance of any agreements or conditions to be paid, performed or observed after the date of such termination unless at the time of such termination Landlord shall have offered to Zayre Corp. in writing a lease for the balance of the term of said lease upon the provisions in said lease contained and Zayre Corp. shall have failed to accept such offer within seven (7) days after receipt thereof, provided, however, that if Landlord shall have given Zayre Corp. notice of any default by the tenant in possession and Zayre Corp. shall have cured such default and shall have been given an opportunity by Landlord and such tenant in possession to take back said lease by assignment and shall have rejected such opportunity, then such offer of a new lease to Zayre Corp. shall not be required for such default (but shall continue to be required for any other default or for any other instance of the same default).

Zayre Corp. has caused this guarantee to be executed and its corporate seal to be hereto affixed by Maurice Segall, its President, and George Freeman, its Vice President, hereunto duly authorized, all as of the 31st day of July, 1987.

ZAYRE CORP.

By _____
Maurice Segall, President

By _____
George Freeman, Vice President

5/guar