IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:    CIRCUIT CITY STORES, INC.,    Case No. 08-35653
*et al.*,    Chapter 11
Debtors.    Jointly Administered

## MEMORANDUM OPINION

The Debtors, Circuit City Stores, Inc., *et al.*,[1] filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date"). On November 12, 2008, the Court entered an Interim Order under Bankruptcy Code Sections 105(A), 363, and 366, and Bankruptcy Rule 6003 (I) Approving Debtors' Adequate Assurance of Payment, (II) Establishing Procedures for Resolving Requests by Utility Companies for Additional Assurance of Payment, (III) Scheduling a Hearing with Respect to Contested Adequate Assurance of Payment Requests, and (IV) Authorizing Debtors to Pay Claims of a Third Party Vendor (the "Interim Utility Order"). Hearing on the Motion of the Debtors for entry of the Interim Utility Order (the "Motion") was conducted on November 10, 2008 (the "Hearing"), as part of the Debtors' first day motions.[2] Utility companies that appeared at the Hearing and that objected to the Motion were excluded, or carved out, of the Interim Utility Order [docket entry # 117].[3] The Court required that notice of the entry of the Interim Utility Order be given to all of the Debtors'

---

[1] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

[2] There is often a flurry of activity during the first days of a large, complex Chapter 11 bankruptcy case. Courts are called upon to consider motions of the debtor at the commencement of the case to aid in the organization and administration of the debtor's estate and to facilitate the smooth transition into Chapter 11.

[3] At the November 10, 2008 hearing, the Court approved the Motion only on an interim basis to afford all parties in interest, including all utility companies, an opportunity to object after proper notice. *See* Fed. R. Bankr. P. 6003.

1

utility companies and set a hearing for December 5, 2008,[4] to consider the objections of any utility company to the entry of the Interim Utility Order.

In accordance with the Procedures set forth in the Interim Utility Order, numerous objections were filed by utility companies. At the December 5, 2008 hearing, Debtors' counsel represented to the Court that all objections except the objection of Accent Energy had been resolved [docket entry # 757]. The Court continued Accent Energy's objection to its next omnibus hearing date on December 22, 2008.[5] The Court entered a corrected order on December 9, 2008 (the "Corrected Order") [docket entry # 832]. At the December 22, 2008 hearing, Debtors' counsel advised the Court that all of the objections to the Motion had been resolved, including the objection of Accent Energy. The Court instructed Debtors' counsel to submit an order to that effect [docket entry # 1205].[6]

All of the objections that were filed by utility companies to the Motion were resolved consensually. Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, Florida Power & Light Company, Central Maine Power Company, Baltimore Gas & Electric Company, and Alabama Power Company (hereinafter collectively the "Appealing Utilities") never filed an objection with the Court, either to the Interim Utility Order or to the Corrected Order. Nonetheless, the Appealing Utilities have noted appeals to the Court's

---

[4] This date was selected because it afforded sufficient time (i) for service of the Interim Utility Order, (ii) for consideration of the relief requested therein and (iii) for filing of any objections thereto and was less than thirty days after the Petition Date.

[5] The Court entered an administrative procedures order pursuant to one of the Debtors' first day motions that, among other things, established dates for upcoming hearings in the case to afford counsel, many of whom are out of state, the ability to schedule their appearances in the case.

[6] As of the date of this Memorandum Opinion, neither the order including Accent Energy in the list of carve-outs nor an amended Exhibit A has been docketed. The most recent list of utilities covered by the Adequate Assurance Procedures was filed on December 10, 2008 [docket entry # 848].

2

Interim Utility Order and Corrected Order.[7]  This memorandum opinion supplements the bases for the Court's ruling as announced from the bench at the conclusion of the Hearing approving the Motion and sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure in support of the Interim Utility Order and the Corrected Order (together the "Utility Order").[8]

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

Circuit City is a specialty retailer of consumer electronics.  It operates electronics stores nationwide that sell, among other things, televisions, home theater systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.  As of the Petition Date, Circuit City was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico.  Circuit City employs approximately 39,600 employees in its stores, its corporate headquarters and its distribution centers.  Circuit City maintains an international presence through its wholly owned subsidiary InterTAN which operates with separate officers, directors and employees in Canada under the trade name "The Source By Circuit City."  InterTAN's operations consist of 770 retail stores and

---

[7] Florida Power & Light Company, Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, Alabama Power Company, and Central Maine Power Company noticed their appeal of the Interim Utility Order on November 24, 2008 [docket entry #355]. Next, Baltimore Gas & Electric noticed its appeal of the Interim Utility Order on December 5, 2008 [docket entry #727]. Finally, on December 19, 2008, Florida Power & Light Company, Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, Central Maine Power Company, Alabama Power Company and Baltimore Gas & Electric Company noticed their appeal of the Corrected Utility Order [docket entry #1129].

[8] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

3

dealer outlets in Alberta, British Columbia, Manitoba, Newfoundland, Northwest Territories, Nova Scotia, Nunavut, Ontario, Prince Edward Island, Quebec, Saskatchewan, and the Yukon.

In connection with the operation of the Debtors' business, Circuit City receives utility service from various utility companies, including providers of water, gas, electricity, telephone, and sewer service, covering a number of utility accounts at various locations. The services provided by the utility companies are essential to the continued operations of the Debtors.

In relevant part, the Debtors' Motion asked the Court to approve four types of relief. First, the Debtors requested the Court to approve the creation of a segregated account at Bank of America, N.A. ("Bank of America") containing blocked funds in the amount of $5,000,000 (the "Blocked Account").[9] The Blocked Account is to be administered in accordance with procedures set forth in the Utility Order as a means of providing utility companies with "adequate assurance of payment" under 11 U.S.C. §§ 366(b) and 366(c)(1)(A).[10] Second, the Debtors requested the Court to find that all utility companies entitled to assurance of payment under section 366 of the Bankruptcy Code be deemed to have received adequate assurance of payment pursuant to section 366(b) of the Bankruptcy Code unless the Utility Company filed an objection. Third, the Debtors requested the Court to establish "Additional Adequate Assurance

---

[9] This amount is equal to the charges incurred by all of the Debtors for approximately two weeks of utility service from all of its utility companies.

[10] The Debtors established the Blocked Account by permitting Bank of America to block their available borrowing in an amount equal to $5,000,000 and by segregating those funds in a separate account to be administered in accordance with the Utility Order. The Blocked Account will serve as a cash security deposit to provide adequate assurance of payment for utility services provided to the Debtors after the Petition Date. The Blocked Account may be drawn down by a utility company in a manner that is substantially similar to a letter of credit. In the event the Debtors fail to timely pay for postpetition utility services, a utility company is permitted to submit a payment request to Bank of America in the amount of the unpaid charges for the postpetition services rounded up to the nearest $100. Bank of America has no obligation to investigate the bona fides of the payment request. All rights as between the Debtors and the utility companies are reserved.

4

Procedures"[11] as the method for resolving disputes that might arise with particular utility companies regarding the adequacy or the form of the Debtors' proposed payment assurance. Finally, the Debtors wanted the Court to schedule a hearing, to be held on a date before the thirtieth day after the Petition Date, to resolve any disputed adequate assurance requests.

While the Court does not have the benefit of an objection filed by the Appealing Utilities that sets forth the underlying grounds for their appeal, the Court assumes that the appeals are premised upon an interpretation of § 366 of the Bankruptcy Code that concludes that a bankruptcy court may not determine the appropriate amount of adequate assurance until the debtor has first paid whatever amount the utility has demanded. *See In re Lucre*, 333 B.R. 151 (Bankr. W.D. Mich. 2005) (holding that a debtor has no recourse to request a court order modifying the assurance of payment demanded by the utility until the debtor first pays what the utility demands). Such an interpretation of § 366 is simply unworkable. It could lead to absurd results. For example, a utility may simply fail to respond to a debtor's offer of adequate assurance, or it may choose to respond on the thirtieth day. In either event, the result would be calamitous for a debtor in the throes of bankruptcy. The calamity is compounded for a debtor with thousands of utility accounts.[12] Congress cannot have intended to place in peril the entire reorganization process by prohibiting courts from fashioning reasonable procedures to implement the protections afforded under § 366 of the Bankruptcy Code. *See In re Syroco, Inc.*, 374 B.R. 60 (Bankr. D.P.R. 2007).

---

[11] The procedures established in the Utility Order (collectively, the "Procedures") include initial procedures for a utility to request payment (the "Adequate Assurance Procedures"), and also procedures to resolve disputes regarding the Adequate Assurance Procedures (the "Additional Adequate Assurance Procedures").

[12] The list of utility companies providing service to the Debtors that shall be bound by the Procedures spans 55 pages. *See* Am. Ex. A to the Utility Order [docket entry # 848].

5

The policy underlying § 366 is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that the debtor will pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Subsection (a) of § 366 sets forth the basic rule that utilities are prohibited from altering, refusing or disconnecting utility service to a debtor upon commencement of a bankruptcy case.

Bankruptcy Code § 366(a) provides:

*Except as provided in subsections (b) and (c)* of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

11 U.S.C. § 366(a) (emphasis added). This proscription against terminating utility service is subject to two exceptions—the exception contained in subsection (b) and the exception contained in subsection (c).

The first exception, § 366(b), provides that:

Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366(b).

Under § 366(b), a debtor must furnish what it considers to be adequate assurance of payment within twenty days after the petition date in the form of a deposit or other security for postpetition service. A debtor need not provide utility companies an absolute guarantee of payment. *See In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the

6

equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services."). In this case, the Debtors propose to provide utility companies with the funds in the Blocked Account to provide them with adequate assurance of payment.[13] The Blocked Account is the equivalent of a letter of credit. Accordingly, it constitutes an assurance of payment consistent with the requirements of Bankruptcy Code section 366(b).[14]

The second exception, which was enacted as part of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), is found in subsection (c) of § 366. Pursuant to § 366(c)(2), a utility company may discontinue service in a Chapter 11 case if it does not receive "during the 30-day period beginning on the date of the filing of the petition . . . adequate assurance of payment for utility service that is *satisfactory* to the utility." 11 U.S.C. § 366(c)(2) (emphasis added). Conceivably, under § 366(c)(2), the Debtors could receive a demand from a utility company at the end of such thirty-day period and be compelled to accede to the demand immediately or face termination of critical utility services. On the other hand, the Debtors could receive no demand at all and nonetheless be subject to the same fate. In order to avoid such a drastic result and impose order on an otherwise disorganized and haphazard process, the

---

[13] In a Chapter 11 case filed after BAPCPA, 11 U.S. C. § 366(c) (1) (A) defines the term "assurance of payment" to include a cash deposit, a letter of credit, or "another form of security that is mutually agreed on between the utility and the debtor."

[14] The Debtors maintain that the borrowings available under the postpetition credit facility approved by this Court pursuant to one of the Debtors' first day motions are sufficient adequate assurance of payment. However, in a Chapter 11 case, § 366(c)(1)(B) does not permit the Court to consider an administrative claim alone as adequate assurance of payment. When the administrative claim is considered in the context of (i) the Blocked Account, (ii) the Debtors' payment history and (iii) the immediate access these utility companies have to this Court for relief in the event of a default, it is clear that the assurance of payment the utility companies have been provided is adequate. Furthermore, the Appealing Utilities never objected to the amount or method of the assurance of payment they were offered by the Debtors. The Court notes that there were numerous objections filed and that each was resolved consensually.

7

Debtors' Motion asked the Court to enter the Utility Order in order to establish Procedures that would efficiently implement the provisions of § 366.

Prior to the enactment of BAPCPA, courts had the discretion under § 366 to determine the amount, if any, of adequate assurance payments or collateral required to a utility company. *See Va. Elec. & Power Co. v. Caldor, Inc.-NY*, 117 F.3d 646, 650–51 (2d Cir. 1997). Section 366(c)(3) uses language almost identical as that employed in §366(b) in allowing courts to modify the amount of adequate assurance.[15] It follows that courts retain similar discretion even after the enactment of BAPCPA. Congress is presumed to be aware of the state of the law when it amends a statute, and the legislative decision to retain the almost identical language evidences Congressional intent to maintain the state of the law post-amendment. *See Lorillard v. Pons*, 434 U.S. 575, 580–581 (1978) ("So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.").

Furthermore, the plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order. The statute does not prohibit a court from making a determination about the adequacy of an assurance payment until only after a payment "satisfactory to the utility" has been received from the debtor under § 366(c)(2). The first clause of § 366(c)(2) clearly renders the entire section subject to the court's authority outlined in

---

[15] Compare
> . . . . On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

§ 366(b), with
> On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

§366(c)(3)(A)

8

§ 366(c)(3).[16] *See* 11 U.S.C. § 366(c)(2); *see also* 3 *Collier on Bankruptcy* ¶ 366.03[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008) (stating § 366(c)(2) means that the debtor must "pay what the utility demands, unless the court orders otherwise.").[17]

Section 366(c)(3)(A) provides that "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)." Assurance of payment is defined in § 366(c)(1), and upon a request for a hearing under § 366(c)(3)(A), the court must determine whether the assurance of payment is adequate, operating within the restrictions outlined in § 366(c)(3)(B). In sum, the court is authorized to modify the assurance of payment pursuant to § 366(c)(3)(A) after notice and a hearing, and a debtor is not required to first pay a demand that is unilaterally satisfactory to the utility company.

The Court set December 5, 2008, as the hearing date for all objections and disputes concerning the Interim Utility Order. The Court required utility companies to make a request for additional adequate assurance on or before five business days before the December 5, 2008 hearing. In the event that such a request was made, the Debtors were required to advise the requesting utility company three business days prior to the December 5, 2008 hearing whether the additional adequate assurance request was acceptable. If it was unacceptable, then the Debtors had the opportunity to contest such additional adequate assurance request under § 366(c)(3)(A) at the December 5, 2008 hearing. Thus, under the Procedures, the Debtors have the opportunity to seek an order from the Court modifying any additional adequate assurance

---

[16] Section 366(c)(2) provides:
Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.
§ 366(c)(2).

[17] Further, § 105(d) provides that the Court may issue orders prescribing limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically.

9

request without first having to satisfy the demands of the utility company and without facing the prospect of termination of utility services prior to a hearing on the additional adequate assurance request.

With regard to the Debtors' rights under the Code, these Procedures provide an orderly process to determine the amount of assurance of payment that is adequate under § 366 in order to prevent cutoff of utility service. Without such Procedures, the Debtors could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize. This will protect the Debtors and their stakeholders from an attempt by a utility company to delay a request until the last minute in an attempt to force the Debtors to agree to its request or face cessation of essential services. The orderly process contemplated by these Procedures is necessary for the Debtors' smooth transition into Chapter 11, and it will ensure that all parties act in good faith by establishing a fair process that has been reviewed by the Court.

With regard to the utility companies' rights under the Code, these Procedures do not undermine the rights of the utility companies to receive adequate assurance of payment. Creation of the Blocked Account is the equivalent of a letter of credit, and as such it is an acceptable form of adequate protection as set forth in §§ 366(b) and (c)(1). The Utility Order provides that, notwithstanding the Court's determination on an interim basis that the adequate assurance proposed by the Debtors constitutes sufficient adequate assurance under § 366(b), utility companies may still request modification of such adequate assurance upon notice and a hearing, as permitted by § 366(b). Utility companies, including the Appealing Utilities, may also exercise their rights under § 366(c)(2), in accordance with the Procedures established by the

10

Court.[18] Therefore, the rights of all parties are balanced through the imposition of these Procedures, which are a practical manifestation of the policy goal embodied in § 366.

This Court and other courts within this district have entered orders establishing similar procedures for the implementation of § 366 of the Bankruptcy Code in large Chapter 11 cases subsequent to the enactment of BAPCPA. *See, e.g.*, *In re Movie Gallery, Inc., et al.*, Case No. 07-33849 (Bankr. E.D. Va. Nov. 17, 2007); *In re Storehouse, Inc.*, Case No. 06-11144 (Bankr. E.D. Va. Oct. 23, 2006); *In re Rowe Furniture, Inc.*, Case No. 06-11143 (Bankr. E.D. Va. Oct. 23, 2006); *In re The Rowe Cos.*, Case No. 06-11142 (Bankr. E.D. Va. Oct. 23, 2006).

The Court finds that the Debtors complied with § 366 of the Bankruptcy Code by proposing a means to provide an amount of adequate assurance in a motion filed at the start of the case. The Court concludes that it has the authority to enter a scheduling order setting forth an objection deadline and hearing date that allows for any dispute to be resolved prior to the 30-day deadline set forth in § 366(c)(2). As long as the Debtors provide the adequate assurance ordered by the Court by the thirtieth day, the Debtors will have complied with § 366 and the utility companies may not discontinue service. Under such circumstances it is appropriate for the Court to extend the injunction against disruption of utility service set forth in § 366(a) of the Bankruptcy Code beyond the thirtieth day after the Petition Date. *See In re Syroco, Inc.*, 374 B.R. 60 (Bankr. D.P.R. 2007) ("A contrary interpretation would make it impossible for the [debtor] to satisfy Section 366 prior to the termination of the injunction period, when a utility company maintains silence."). The Procedures set forth in the Utility Order serve to streamline

---

[18] Even after the deadline established by the Court in the Utility Order, utility companies will only be deemed to have received adequate assurance under Bankruptcy Code § 366(c)(2), which includes the 30-day deadline. Thus, this determination is subject to further review pursuant to the right of utility companies, or any party in interest, after notice and a hearing, to seek a modification of the proposed adequate assurance in accordance with Bankruptcy Code §§ 366(b) and 366(c)(3), as applicable.

11

the reorganization process and do not adversely impair the rights of any utility company. The Utility Order is designed to avoid a haphazard and chaotic process whereby each utility could make extortionate, last-minute demands for adequate assurance which the Debtors would be pressured to pay under the threat of losing critical utility service.

Accordingly, the Court approved the Debtors' Motion, and entered the Corrected Order on December 9, 2008.

ENTERED: January 14, 2009

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 1/14/09

Copies to:

Douglas M. Foley
McGuireWoods LLP
9000 World Trade Center
101 W. Main St.
Norfolk, VA  23510

Gregg M. Galardi
Ian S. Fredericks
Skadden Arps Slate Meagher & Flom LLP
One Rodney Sq.
PO Box 636
Wilmington, DE  19899

Chris L. Dickerson
Skappen Arps Slate Meagher
& Flom, LLP
333 West Wacker Drive
Chicago, IL  60606

Robert J. Feinstein
Pachulski Stang Ziehl & Jones LLP
780 Third Ave. 36th Floor
New York, NY  10017

Brad R. Godshall
Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA  90067-4100

John D. Fiero
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA  9411-4500

Lynn L. Tavenner
Paula S. Beran
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA  23219

Kevin R. McCarthy
William Douglas White
McCarthy & White PLLC
8180 Greensboro Drive, Suite 875
McLean, VA  22102

Eric T. Ray
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL  35203

# CERTIFICATE OF NOTICE

```
District/off: 0422-7          User: jafarbayj         Page 1 of 1              Date Rcvd: Jan 14, 2009
Case: 08-35653                Form ID: pdforder       Total Served: 4

The following entities were served by first class mail on Jan 16, 2009.
aty          +Gregg M. Galardi,    Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
               Wilmington, DE 19899-0636
aty          +Ian S. Fredericks,   Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
               Wilmington, DE 19899-0636
             +Chris L. Dickerson,   Skadden Arps et al,   333 West Wacker Drive,   Chicago, IL 60606-1220
             +Eric T. Ray,   Balch & Bingham LLP,   1901 Sixth Ave, North, Ste. 1500,
               Birmingham, AL 35203-4642
The following entities were served by electronic transmission.
NONE.                                                                                           TOTAL: 0
             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                           TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jan 16, 2009**                     **Signature:** _Joseph Speetjens_