Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER (1) APPROVING SALE OF AIRCRAFT FREE AND CLEAR OF
ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND
(2) GRANTING RELATED RELIEF**

This matter came before the Court on the Debt-
ors' Motion for Orders Pursuant to Bankruptcy Code Sec-
tions 105, 363 and 364 (I)(A) Approving Procedures in
Connection with Sale of All or Substantially All of the
Business (B) Authorizing Debtors to Enter into Stalking

Horse Agreements in Connection with Store Closing and Miscellaneous Asset Sales or Stalking Horse or Financing Agreements in Connection with Going Concern Transactions, (C) Approving Payment of Termination Fees in Connection Therewith, and (D) Setting Auction and Hearing Dates, (II) Approving Sale of Debtors Assets Free and Clear of All Interests and (III) Granting Related Relief (the "Sale Motion").[1]  Pursuant to the Sale Motion, the debtors and debtors in possession (collectively, the "Debtors") sought, *inter alia*, entry of orders (I)(A) approving procedures in connection with soliciting bids for a sale of all or substantially all of the business or additional post-petition financing for the business, (B) authorizing the Debtors to enter into stalking horse or financing agreements in connection with Going Concern Transactions or stalking horse agreements in connection with Store Closing and Miscellaneous Asset Sales and, (C) approving the Debtors' payment of a Termination Fee in connection therewith, and (D) scheduling Auction and Hearing Dates, (II) approving the sale of the Debtors'

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

assets free and clear of all interests, and (III) grant-

ing related relief.

On January 12, 2009, the Court signed the Or-

der (I) Approving Procedures in Connection with Sale of

All or Substantially All of the Business, (II) Authoriz-

ing Debtors to Enter into Stalking Horse Agreements in

Connection with Store Closing and Miscellaneous Asset

Sales or Stalking Horse or Financing Agreements in Con-

nection with Going Concern Transactions, (III) Approving

Payment of Termination Fees in Connection Therewith,

(IV) Setting Auction and Hearing Dates Pursuant to Bank-

ruptcy Code Sections 105 and 363 and (V) Granting Re-

lated Relief (the "Sale Procedures Order"), authorizing

the Debtors to proceed with the sale procedures set

forth therein (the "Bidding Procedures") and approving

the Termination Fee and the form of notice of the hear-

ing on the Sale Motion.

The Court having conducted a hearing on the

Sale Motion on January 16, 2009 (the "Sale Hearing); and

all parties in interest having been heard, or having had

the opportunity to be heard, regarding the Aircraft Pur-

chase and Sale Agreement (the "Purchase Agreement", at-

tached hereto as Exhibit A), and the transactions con-
templated thereby (the "Transactions"); and the Court
having reviewed and considered the Sale Motion, and the
arguments of counsel made, and the evidence adduced, at
the Sale Hearing; and it appearing that the relief re-
quested in the Sale Motion is in the best interests of
the Debtors, their estates, their creditors, and all
other parties in interest; and upon the record of the
Sale Hearing and these chapter 11 cases, and after due
deliberation thereon, and good cause appearing there-
fore; **THE COURT HEREBY FINDS DETERMINES AND CONCLUDES
THAT:**

A.   The findings and conclusions set forth
herein constitute the Court's findings of fact and con-
clusions of law pursuant to Bankruptcy Rule 7052.  To
the extent any of the following findings of fact are de-
termined to be conclusions of law, they are adopted, and
shall be construed and deemed, conclusions of law.  To
the extent any of the following conclusions of law are
determined to be findings of fact, they are adopted, and
shall be construed and deemed, as findings of fact.

B.   The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested in the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).  Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.   The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 4001 and 6004.

D.   Notice of the Sale Motion and entry of the Bidding Procedures Order has been provided to those parties entitled to notice under the Debtors' Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130; the "Case Management Order"), as well as (a) all entities known to have expressed an interest in a transaction regarding the Debtors' assets, stores or inventory during the past three (3) months; (b) all landlords and entities known to have an interest in any of the assets

to be sold; and (c) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested through the Sale Motion.

E.   Based upon the affidavits of service filed with the Court: (a) notice of the Sale Motion, the Bidding Procedures, the Sale Procedures Order, and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; and (b) a reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein was afforded to all interested persons and entities.

F.   The Aircraft is property of the Debtors' estates and title thereto is vested in the Debtors' estates.

G.   The Bidding Procedures were substantively and procedurally fair to all parties, were consented to by all parties in the chapter 11 cases, and were the re-

sult of intense arms length negotiations among the Debt-
ors, the Committee, and the DIP Agent.

H.   The Debtors and their professionals mar-
keted the Aircraft and conducted the sale process in ac-
cordance with the Bidding Procedures.  Based upon the
record of these proceedings, all creditors and other
parties-in-interest and all prospective purchasers have
been afforded a reasonable and fair opportunity to bid
for the Aircraft.

I.   After an auction held on January 14,
2009, the Debtors determined that the highest and best
Qualified Bid was that of TACALA, LLC (the "Purchaser").

J.   At the Auction, Purchaser bid $4,750,000
(the "Bid") for the Aircraft, which Bid was a valid and
proper offer pursuant to the Bidding Procedures and
Bankruptcy Code Sections 363(b) and 363(k).

K.   Subject to the entry of this Order, each
Debtor (i) has full power and authority to execute the
Purchase Agreement and all other documents contemplated
thereby, and the sale of the Aircraft by the Debtors has
been duly and validly authorized by all necessary com-
pany action of each of the Debtors, (ii) has all of the

power and authority necessary to consummate the Transac-

tions contemplated by the Purchase Agreement, (iii) has

taken all company action necessary to authorize and ap-

prove the Purchase Agreement and the consummation by

such Debtors of the Transactions.  No consents or ap-

provals, other than those expressly provided for in the

Purchase Agreement or this Order, are required for the

Debtors to close the sale of the Aircraft (the "Sale")

and consummate the Transactions.

L.   Entry into the Purchase Agreement and

consummation of the Transactions constitute the exercise

by the Debtors of sound business judgment and such acts

are in the best interests of the Debtors, their estates

and creditors, and all parties in interest. The Court

finds that the Debtors have articulated good and suffi-

cient business reasons justifying the Sale of the Air-

craft to Purchaser.  Such business reasons include, but

are not limited to, the following: (i) the Purchase

Agreement constitutes the highest and best offer for the

Aircraft; (ii) the Purchase Agreement and the closing

(the "Closing") thereon will present the best opportu-

nity to realize the value of the Aircraft; (iii) there

is substantial risk of deterioration of the value of the
Aircraft if the Sale is not consummated promptly; and
(iv) the Purchase Agreement and the Closing thereon will
provide a greater recovery for the Debtors' creditors
than would be provided by any other presently available
alternative.

          M.    The Purchase Agreement and the Transac-
tions were negotiated and have been and are undertaken
by the Debtors and Purchaser at arms' length without
collusion or fraud, and in good faith within the meaning
of Sections 363(m) and (n) of the Bankruptcy Code.  An
auction was conducted in accordance with the Sale Proce-
dures Order on January 14, 2009, at which Purchaser was
declared the highest and best bidder. The auction was
conducted at arms' length and in good faith within the
meaning of Section 363(m) of the Bankruptcy Code.  As a
result of the foregoing, the Debtors and Purchaser are
entitled to the protections of Section 363(m) of the
Bankruptcy Code.  Moreover, neither the Debtors nor Pur-
chaser engaged in any conduct that would cause or permit
the Purchase Agreement or the consummation of the Trans-

actions to be avoided, or costs or damages to be im-
posed, under Section 363(n) of the Bankruptcy Code.

N.   The total consideration provided by Pur-
chaser for the Aircraft is the highest and best offer
received by the Debtors, and the Purchase Price consti-
tutes (a) reasonably equivalent value under the Bank-
ruptcy Code and Uniform Fraudulent Transfer Act, (b)
fair consideration under the Uniform Fraudulent Convey-
ance Act, and (c) reasonably equivalent value, fair con-
sideration and fair value under any other applicable
laws of the United States, any state, territory or pos-
session, or the District of Columbia ((a), (b) and (c)
collectively, "Value"), for the Aircraft.

O.   Purchaser would not have entered into the
Purchase Agreement and would not consummate the Transac-
tions, thus adversely affecting the Debtors, their es-
tates, and their creditors, if the sale of the Aircraft
to Purchaser was not free and clear of all liens,
claims, interests and encumbrances (the "Liens, Claims,
Interests and Encumbrances"), if any, or if Purchaser
would, or in the future could, be liable for any of such
Liens, Claims, Interests and Encumbrances.  A sale of

the Aircraft other than one free and clear of Liens,
Claims, Interests and Encumbrances would adversely im-
pact the Debtors' estates, and would yield substantially
less value for the Debtors' estates, with less certainty
than the Sale.  Therefore, the Sale contemplated by the
Purchase Agreement is in the best interests of the Debt-
ors, their estates and creditors, and all other parties
in interest.

P.   The Debtors may sell the Aircraft free
and clear of all Liens, Claims, Interests and Encum-
brances, if any, because, with respect to each creditor
asserting a Lien, Claim or Interest, one or more of the
standards set forth in Bankruptcy Code § 363(f)(1)-(5)
has been satisfied.  All holders of Liens who did not
object or withdrew their objections to the Sale are
deemed to have consented to the Sale pursuant to 11
U.S.C. § 363(f)(2) and all holders of Liens are ade-
quately protected by having their Liens, Claims, Inter-
ests and Encumbrances if any, attach to the cash pro-
ceeds of the Sale ultimately attributable to the prop-
erty against or in which they claim an interest with the
same priority, validity, force, and effect as they at-

tached to such property immediately before the closing of the Sale.

Q.   There was no evidence of insider influence or improper conduct by Purchaser or any of its affiliates in connection with the negotiation of the Purchase Agreement with the Debtors.  There was also no evidence of fraud or collusion among Purchaser and its affiliates and any other bidders for the Debtors' assets, or collusion between the Debtors and Purchaser or its affiliates to the detriment of any other bidders.

R.   At no time was Purchaser or its affiliates an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Purchaser or its affiliates and any of the Debtors.  The Transactions do not amount to a consolidation, merger or *de facto* merger of Purchaser and the Debtors' and/or the Debtors' estates, there is not substantial continuity between Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and Purchaser, Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and

Purchaser does not constitute a successor to the Debtor
or the Debtors' estates.

S.   Except as otherwise expressly provided in
the Purchase Agreement, the transfer of the Aircraft to
Purchaser will be a legal, valid, and effective transfer
of the Aircraft, and will vest Purchaser with all right,
title, and interest of the Debtors to the Aircraft free
and clear of all Liens, Claims, Interests and Encum-
brances, if any, including but not limited to all Claims
arising under doctrines of successor liability.

T.   Approval of the Purchase Agreement and
consummation of the Sale of the Aircraft at this time
are in the best interests of the Debtors, their credi-
tors, their estates, and all parties in interest.  Time
is of the essence in consummating the Sale.  In order to
maximize the value of the Debtors' assets, it is essen-
tial that the sale of the Aircraft occur as soon as pos-
sible.  Accordingly, there is cause to lift the stay
contemplated by Bankruptcy Rule 6004.

Based upon all of the foregoing, and after due
deliberation, **THE COURT ORDERS, ADJUDGES, AND DECREES
THAT:**

13

1.    The relief requested in the Sale Motion
is granted with respect to the Purchase Agreement in the
manner and to the extent provided herein.

2.    The Purchase Agreement, the Bid, and the
Sale of the Aircraft to Purchaser, are hereby approved
and authorized in all respects.

3.    Pursuant to 11 U.S.C. §§ 363(b) and
363(f), upon the consummation of the Agreement, the
Seller's right, title, and interest in the Aircraft
shall be transferred to the Purchaser free and clear of
all Liens, Claims, Interests and Encumbrances with all
such Liens, Claims, Interests and Encumbrances to attach
to the cash proceeds of the Sale in the order of their
priority, with the same validity, force, and effect
which they had as against the Property immediately be-
fore such transfer, subject to any claims and defenses
the Seller may possess with respect thereto.

4.    Except as expressly provided in the Pur-
chase Agreement, Purchaser is not assuming nor shall it
or any affiliate of Purchaser be in any way liable or
responsible, as a successor or otherwise, for any li-
abilities, debts, or obligations of the Debtors in any

14

way whatsoever relating to or arising from the Debtors'
ownership or use of the Aircraft prior to the consumma-
tion of the Transactions contemplated by the Purchase
Agreement, or any liabilities calculable by reference to
the Debtors or their operations or the Aircraft, or re-
lating to continuing or other conditions existing on or
prior to the Closing, which liabilities, debts, and ob-
ligations are hereby extinguished insofar as they may
give rise to liability, successor or otherwise, against
Purchaser or any affiliate of the Purchaser.

5.    The consideration provided by Purchaser
for the Aircraft under the Purchase Agreement is fair
and reasonable and shall be deemed for all purposes to
constitute Value under the Bankruptcy Code and any other
applicable law, and the Sale may not be avoided, or
costs or damages imposed or awarded, under Section
363(n), or any other provision of the Bankruptcy Code.

6.    The Transactions are undertaken by Pur-
chaser in good faith and Purchaser is a purchaser in
good faith of the Aircraft as that term is used in Sec-
tion 363(m) of the Bankruptcy Code. Purchaser is enti-
tled to all of the protections afforded by Section

363(m) of the Bankruptcy Code; accordingly, the reversal

or modification on appeal of the authorization provided

herein to consummate the Sale shall not affect the va-

lidity of the Sale of the Aircraft to Purchaser, unless

such authorization is duly stayed pending such appeal.

      7.   Pursuant to sections 105 and 363 of the

Bankruptcy Code, the Debtors and the Purchaser are each

hereby authorized and directed to take any and all ac-

tions necessary or appropriate to: (i) consummate the

sale of the Aircraft to Purchaser (including, without

limitation, to convey to Purchaser the Aircraft) and the

Closing of the Sale in accordance with the Sale Motion,

the Purchase Agreement and this Order; and (ii) perform,

consummate, implement and close fully the Purchase

Agreement together with all additional instruments and

documents that may be reasonably necessary or desirable

to implement the Purchase Agreement, including without

limitation, take all actions and execute all documents

reasonably necessary or appropriate to effectuate any

obligations under the Purchase Agreement and to execute

and deliver such other documents and take such other ac-

tions as are necessary to effectuate the Sale contem-

plated by the Purchase Agreement.  The parties shall have no obligation to proceed with the Closing of the Purchase Agreement until all conditions precedent to their obligations to do so, including completion of the pre-purchase evaluation as set forth in Section 3 thereof, have been met, satisfied or waived.

8.  Purchaser is authorized to remit or cause to be remitted at Closing (or at such other times as provided in the Purchase Agreement), in accordance with the terms of the Purchase Agreement, to the Debtors, $4,750,000.

9.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.  No brokers were involved in consummating the Sale or the Transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the Transactions.

10.  On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Aircraft or a bill of sale transferring good and marketable title in such Aircraft to Purchaser

on the Closing Date pursuant to the terms of the Pur-
chase Agreement.

11.  This Order is and shall be binding upon
and govern the acts of all entities, including, all fil-
ing agents, filing officers, title agents, title compa-
nies, recorders of mortgages, recorders of deeds, regis-
trars of deeds, administrative agencies or units, gov-
ernmental departments or units, secretaries of state,
federal, state and local officials and all other persons
and entities who may be required by operation of law,
the duties of their office, or contract, to accept,
file, register or otherwise record or release any docu-
ments or instruments, or who may be required to report
or insure any title or state of title in or to the Air-
craft conveyed to Purchaser.  All such entities de-
scribed above in this paragraph are authorized and spe-
cifically directed to strike all recorded Liens, Claims,
Interests and Encumbrances against the Aircraft from
their records, official and otherwise.

12.  Each and every federal, state and govern-
mental agency or department, and any other person or en-
tity, is hereby directed to accept any and all documents

and instruments necessary and appropriate to consummate
the transactions contemplated by the Purchase Agreement.

13.   This Order and the Purchase Agreement
shall be binding in all respects upon all creditors and
equityholders of any of the Debtors, the Committee, all
successors and assigns of the Debtors and their affili-
ates and subsidiaries, and any trustees, examiners, "re-
sponsible persons" or other fiduciaries appointed in the
Debtors' bankruptcy chapter 11 cases or upon a conver-
sion to chapter 7 under the Bankruptcy Code, and the
Purchase Agreement shall not be subject to rejection or
avoidance under any circumstances.

14.   The Purchase Agreement and any related
agreements, documents, or other instruments may be modi-
fied amended, or supplemented by the parties thereto, in
a writing signed by the parties, and in accordance with
the terms thereof, without further order of the Court,
provided that any such modification, amendment or sup-
plement does not have a material adverse effect on the
Debtors' estates.

15.   This Order shall be effective immediately
upon entry, and any stay of orders provided for in Bank-

ruptcy Rule 6004(g) and any other provision of the Bank-

ruptcy Code or Bankruptcy Rules is expressly lifted.

16.   The provisions of this Order are nonsev-

erable and mutually dependent.

17.   To the extent permitted by section 525 of

the Bankruptcy Code, no governmental unit may revoke or

suspend any Permit relating to the operation of the Air-

craft sold, transferred or conveyed to Purchaser on ac-

count of the filing or pendency of these Chapter 11

cases or the consummation of the Sale.

18.   Each and every federal, state and local

government agency or department is directed to accept

any and all documents and instruments necessary and ap-

propriate to consummate the transfer of any of the Air-

craft, all without imposition or payment of any stamp

tax, transfer tax, or similar tax.

19.   The failure specifically to include or

make reference to any particular provisions of the Pur-

chase Agreement in this Order shall not diminish or im-

pair the effectiveness of such provision, it being the

intent of the Court that the Purchase Agreement is au-

thorized and approved in its entirety.

20.    The Court retains jurisdiction, even after the Closing of these chapter 11 cases, to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect Purchaser, or the Aircraft, from and against any of the Liens, Claims, Interests and Encumbrances; (3) compel delivery of all Aircraft to Purchaser; and (4) resolve any disputes arising under or related to the Purchase Agreement, the Sale or the Transactions, or Purchaser's peaceful use and enjoyment of the Aircraft.

Dated:  Richmond, Virginia
        January ____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

# <u>Exhibit A</u>

## AIRCRAFT PURCHASE & SALE AGREEMENT

This Aircraft Purchase Agreement is made between: TACALA, LLC, **"Purchaser"**, a limited liability company with its address is 4268 Cahaba Heights Court, Birmingham, AL 35243 (telephone: 205-443-9600, fax 205-443-9796); and Circuit City Stores, Inc. **"Seller"**, a Delaware corporation with its address is 9950 Mayland Drive, Richmond, VA 23233 (telephone: 804-486-4014, fax 804-486-4877; and Insured Aircraft Title Services **"Escrow Agent"**, an Oklahoma corporation with an address of 4848 S.W. 36th Street, Oklahoma City, OK 73179 (telephone 800-654-4882, fax 405-681-9299 fax).

Whereas the Seller agrees to sell and Purchaser agrees to purchase that certain 1996 Hawker 800XP, serial number 258293 registered as N150NC, with two Honeywell TFE 731 engines, serial numbers P107136C and P107238C, together with all of the books, logs, tags, flight and operation manuals, checklists, wiring diagrams, maintenance manuals and any other records, paperwork, warranty documentation and written data related thereto, shall hereinafter collectively be referred to as the **"Aircraft"**.

Now therefore, in consideration of the terms and conditions herein contained, the parties agree as follows:

1. Purchase Price.   $4,750,000 (Four Million Seven Hundred Fifty Thousand US Dollars) paid as provided herein.

2. Terms of Payment.   Prior to the execution of this contract, Purchaser has placed a refundable deposit in the amount of $100,000.00 (One Hundred Thousand US Dollars) (the **"Deposit"**) into the Escrow Agent's account.  Upon Purchaser's acceptance of delivery of the Aircraft, as evidenced by Purchaser's execution of the attached Aircraft Delivery in the form shown on Attachment B, Purchaser shall pay the balance of the purchase price by wire transfer of immediately available funds in the amount of $4,650,000 (Four Million Six Hundred Fifty Thousand US Dollars), to the Escrow Agent, on receipt of which the Escrow Agent shall simultaneously release the title documents to Purchaser and the Purchase Price as directed by Seller.

3. Pre-purchase Evaluation.

A.) Seller has made the Aircraft available to Purchaser at Birmingham, Alabama at Purchaser's expense, for a visual inspection of the Aircraft and its records.

B.) Purchaser shall have the right to conduct, at Purchaser's expense, a pre-purchase inspection at the Hawker Beechcraft service center located in Little Rock, Arkansas (the **"Inspection Facility"**), that will consist of a standard Hawker Beechcraft pre-purchase inspection, the scope of which is attached hereto as Exhibit D, including flight test (the **"Inspection"**).  Seller shall be responsible for movement of the Aircraft to the Inspection Facility.  Purchaser agrees to pay the cost of the pre-purchase inspection and Seller agrees to repair all discrepancies at its expense deemed as "unairworthy" in accordance with the Hawker 800XP Maintenance Manual along with all items required to be corrected in order to make the Aircraft conform to the condition described herein (the "Discrepancies") .  Purchaser's costs for these inspections must be paid in advance of initiating the Inspection.

C.) Upon completion of the Inspection, by the Inspection Facility, , a detailed list of Discrepancies revealed during the Inspection, as required in paragraph B. above will be

Seller BHR                                                                 Purchaser

provided to the parties listing Discrepancies (the **"List"**). These Discrepancies shall be repaired and completed by the Inspection Facility.  The Inspection Facility will be sole determiner of what shall be deemed repair and completion of the Discrepancies on the List.

D.)  Within five (5) business days following receipt of the List, Purchaser will deliver to Seller and Escrow Agent its acceptance or rejection of the Aircraft, in writing, by executing "Attachment A" **("Aircraft Acceptance/Rejection")** indicating in its sole discretion Purchaser's: rejection of the Aircraft; acceptance of the Aircraft as is; or acceptance of the Aircraft subject to Seller's repair of the Discrepancies appearing on the List, as limited below.  Failure by Purchaser to accept the Aircraft within five (5) business days following its receipt of the List shall constitute its rejection of the Aircraft.  Upon Seller's receipt of the Aircraft Acceptance, Seller shall authorize the Inspection Facility to commence the corrective work on the Discrepancies for Seller's account up to a maximum of $150,000 and the Deposit shall become nonrefundable to Purchaser, subject to the terms and conditions of this contract, to be applied to the Purchase Price at Closing. Seller reserves the right, but is not required to, to withdraw the Aircraft and terminate this Agreement should the discrepancies identified exceed $150,000.  In the event that Seller terminates this contract as provided in the preceding sentence, the Deposit shall be immediately returned to Purchaser and Seller shall reimburse Purchaser for all documented costs for the visual inspection and the cost of the inspection, and neither party shall have any obligation to the other with respect to the subject matter of this contract.  In the event Seller exercises the right to terminate this contract, then Purchaser may elect to agree to pay such cost to correct discrepancies in excess of $150,000, by notifying Seller of Purchaser's election to pay such excess cost.  In the event Purchaser makes such election, this contract shall not be terminated.

E.)  Absent Aircraft Acceptance, this contract shall terminate, and, provided that the Inspection Facility has issued to Seller a statement confirming that Purchaser has paid all costs and expenses of the Inspection, the Escrow Agent shall return the Deposit to Purchaser less the costs of positioning the Aircraft back to Seller's operating base (such rate shall be defined as two (2) times the cost of fuel);, subject to the foregoing.  Purchaser agrees that if the Inspection Facility does not issue a statement to Purchaser that the cost and expense of the Inspection have been paid, such costs and expenses shall be paid from the Deposit held by the Escrow Agent.

F)  Should Purchaser reject the Aircraft because the Discrepancies identified on the List, subject to the $150,000 limit set forth in paragraph 3 D above, have not been repaired due to Seller's failure to correct those items, this contract shall terminate and Purchaser shall be relieved of any financial obligation to pay the costs associated with the cost of positioning the Aircraft to the Inspection Facility and its return to the operating base and the Deposit shall be fully refundable to Purchaser.

G.)  Purchaser shall pay the cost of the movement of the Aircraft (two (2) times the cost of fuel) from the Inspection Facility if the Aircraft is rejected after the Aircraft Acceptance form has been executed and provided Seller has complied with its duties set forth herein.

4.  Closing.

After Aircraft Acceptance, and prior to closing, Seller will deliver to the Escrow Agent a fully executed FAA Aircraft Bill of Sale, a warranty bill of sale in the form of Attachment C and Release(s) of Lien(s) and/or all such other documents as may be necessary for Aircraft

Seller BHS                                          Purchaser

title to pass from Seller to Purchaser free and clear of any notations, claims, clouds, liens and/or encumbrances.  Closing shall take place within five (5) business days following notification from the Inspection Facility to Seller and Purchaser that the Aircraft is ready for delivery as evidenced by a logbook entry returning the Aircraft to service, unless agreed otherwise in writing by both Parties.  Purchaser shall execute the attached Aircraft Delivery in the form shown on Attachment B.  Closing will take place at the New Castle County Airport (ILG), Wilmington, Delaware or other mutually agreeable location to be determined by Purchaser (the "Delivery Location").  The cost of positioning the Aircraft to a Delivery Location other than the Inspection Facility shall be born by the Purchaser (at a rate of two (2) times the cost of fuel, plus the cost of returning the Seller's flight crew to Seller's domicile).  Seller agrees to not be unreasonable in its approval of an alternate Delivery Location, which location will be chosen by Purchaser taking into consideration the taxation effects of the Delivery Location.

The Aircraft when delivered shall be a) current on the manufacturer's recommended maintenance program, with all calendar and hourly inspections current through the projected date of delivery; b) with all systems functioning in accordance with the manufacturer's specifications; c) with all FAA Airworthiness Directives and manufacturer's mandatory service bulletins complies with, with no operational limitations issued against the Aircraft or non-standard repetitive inspection intervals; d) free of damage history or material corrosion; e) enrolled and current on CAMP and the Honeywell MSP program as it relates to the engines and APU.  Aircraft shall be transferred with all remaining and applicable manufacturer and vendor warranties transferred to Purchaser to the extent they are transferable at Seller's expense.

<u>Certificates and Taxes</u>.  Seller is responsible for all taxes and duties up to the date of closing.  Purchaser is responsible for all taxes and duties as a result of this sale and thereafter.  Purchaser shall remit to Seller any sales tax that Seller is required to collect under applicable State law or present to Seller a sales tax exemption certificate that is acceptable to Seller, on or before the day of Closing.

<u>Title and Liens</u>.  Seller represents and warrants that it has good title to the Aircraft and that all necessary legal steps have been taken by Seller to authorize and complete transfer of title to Purchaser pursuant to this agreement.  Seller further represents and warrants that the Aircraft shall be free of all liens and encumbrances upon sale and delivery to Purchaser and that the Seller agrees to defend Purchaser's title after closing from and against all claims created by Seller.  This warranty and covenant shall survive closing.  Purchaser shall accept and Seller shall provide the Warranty Bill of Sale as set forth in Attachment C.  Purchaser and Seller will split all closing costs and fees of the Escrow Agent.

5.  <u>Acceptance of Condition of Aircraft</u>.  Purchaser agrees to accept the Aircraft in an "As is, Where is" condition. PURCHASER HEREBY ACKNOWLEDGES THAT SELLER MAKES NO WARRANTY OF MERCHANTABILITY OF THE AIRCRAFT NOR OF ANY EQUIPMENT IN  IT OR OTHERWISE INCLUDED IN THIS SALE, AND FURTHER, THAT SELLER MAKES NO WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE WITH RESPECT TO THE AIRCRAFT.  Purchaser understands that Seller is neither manufacturer nor has been the sole owner of this Aircraft.  Purchaser hereby further acknowledges that SELLER MAKES NO WARRANTIES WHATSOEVER, EITHER EXPRESSED OR IMPLIED, WITH REGARD TO THE AIRCRAFT, ITS ENGINES, ACCESSORIES, LOG BOOKS, AND INSTALLED EQUIPMENT, PURCHASER HEREBY

Seller BHB                                                                 Purchaser

DISCLAIMS ALL WARRANTIES RESPECTING THIS AIRCRAFT EXCEPT THE WARRANTY OF TITLE SET FORTH ABOVE.

6. <u>Governing Law</u>. The laws of the State of New York, excluding their conflict of law statutes and doctrines, shall govern this contract and this transaction, and the parties further agree that venue for any matter relating to this contract shall be in the State of New York.

7. <u>Default</u>.    Upon failure of Purchaser, without default or delay by Seller, to purchase the Aircraft by closing date, Seller may elect to cancel this contract.  The Seller retains the right to dispose of the Aircraft with no further liability in accordance with this contract.    The Deposit will be retained as liquidated damages and Seller waives any other remedies that may be available to Seller at law or in equity.

Upon failure of the Seller, without default of Purchaser, to comply with the terms of this contract and deliver the Aircraft and accompanying documents as provided herein, with repairs completed as required herein, Purchaser may elect to cancel this contract and the deposit will be immediately refunded in full to Purchaser and Seller shall pay to Purchaser liquidated damages in the amount of $100,000 in addition to reimbursement to Purchaser of the cost of the Inspection.   Purchaser acknowledges and represents that Purchaser's receipt of the Deposit and the liquidated damages shall be the sole remedy available to Purchaser in the event that Seller defaults on Seller's obligations under this contract and Purchaser waives any other remedies that may be available to Purchaser at law or in equity.

8. <u>Excusable Delay</u>.  The Seller and Purchaser shall not be liable for any failure or delay in performing any of their obligations hereunder due to an act of God, the public enemy, strike or labor dispute, governmental regulation or priorities and a *force majeure* event not involving the fault or negligence of the Seller or Purchaser for a period of thirty (30) days from such occurrence; in the event of any of the preceding occurrences, Purchaser at its option may cancel this contract whereupon the Deposit shall be returned by the Escrow Agent to Purchaser and upon delivery of the Deposit to Purchaser this contract shall terminate and be of no further force or effect.

9. <u>Assignability and Modification</u>. This Agreement shall not be assigned or modified or amended except by the mutual consent of the parties in writing' provided, however, that Seller hereby consents to the assignment of Purchaser's rights in the Agreement to an affiliate entity of the Purchaser, including a Delaware entity to be formed and comprised of substantially the same owners as Purchaser.

10. <u>Partial Illegality</u>.    If any one or more provisions of this contract shall be found to be illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired.

11. <u>Cape Town (International Registry)</u>. The transaction contemplated by the Agreement may be subject to the Convention on International Interests in Mobile Equipment otherwise referred to as "The Cape Town Treaty". Seller will co-operate with Purchaser in order to register the FAA Bill-of-Sale as a Contract of Sale (as defined in the Cape Town Treaty) on the International Registry (established pursuant to the Cape Town Treaty). However, Seller will not consent to a registration on the International Registry until such time as Seller has received payment in full under this Agreement. Purchaser hereby acknowledges and agrees that, without specific authorization in writing from Seller, Purchaser will not register, or consent to or allow any registration whatsoever (including a registration of a prospective

Seller BHR                                                    Purchaser JP

international interest or prospective contract of sale) against the Aircraft pursuant to the Cape Town Treaty. Purchaser and Seller shall each take any and all action necessary to establish an account on the International Registry as a Transaction User Entity, appoint an Approved Administrator User, and designate the Escrow Agent as its Professional Unser Entity to comply with the Cape Town Treaty. At closing, Seller will consent to the registration described herein in accordance with the Cape Town Treaty.

12. <u>Seller's Warranties</u>: As a material inducement to Purchaser to enter into this Agreement and to consummate the transactions contemplated hereby, Seller hereby represents and warrants to Purchaser as follows:

    a. Seller is a Delaware corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Seller has all requisite corporate power to execute and deliver this Agreement, subject to (b) below, and, subject to the fulfillment of waiver (to the extent legally permitted) of conditions precedent to the Seller's obligations hereunder to carry out its obligations hereunder. The execution and delivery of this Agreement and the due consummation of Seller of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of Seller and this Agreement constitutes (and each document and instrument contemplated by this Agreement to be delivered to Purchaser, when executed and delivered in accordance with the provisions hereof, will constitute) a valid and legally binding obligation of Seller enforceable in accordance with its terms.

    b. Intentionally Left Blank

    c. Seller has good, valid and marketable title to the Aircraft, and the Aircraft is free and clear of all mortgages, liens, taxes, charges, encumbrances, judgments, notations and claims of every nature whatsoever, except as noted in (b) above.

    d. The Aircraft has no known major damage history or corrosion.

    e. During the time Seller has owned the Aircraft, Seller has not utilized the Aircraft for any unlawful purposes to the best of Seller's knowledge and belief, and knows of no such use prior to the time Seller acquired title to the Aircraft.

    f. The Aircraft's logs and records are complete and accurate to the best of Sellers knowledge since the Aircraft was new.

    g. There have been no improvements, alterations or repairs to the Aircraft for which the costs thereof remain unpaid.

    h. At Closing there will be no outstanding invoices for services rendered to the Aircraft, supplies or materials provided to the Aircraft, including, but not limited to, fuel, or for hangar fees or storage fees for the Aircraft.

    i   During the time Seller has owned the Aircraft, the Aircraft has not been, nor is it currently, subject of any pending litigation, and there are no unsatisfied judgments against it, to the best of Seller's knowledge and belief.

    j. During the time Seller has owned the Aircraft, the Aircraft has not been, nor is it currently, subject of any pending violations of any municipal ordinances, and of any

Seller _BHB_                                    Purchaser

Federal, state or Purchaser international statutes, laws, decrees or otherwise pertaining to the Aircraft or the use of the Aircraft, to the best of Seller's knowledge and belief.

k.  During the time Seller has owned the Aircraft, there are no outstanding or delinquent taxes, levies, or duties on the Aircraft.

l.  Neither Seller nor any of its affiliates has employed any broker or finder or incurred any liability for any brokerage fee, commissions or finder's fees in connection with the transactions contemplated other than a Aircraft Sales Management Agreement with Martinair.  Seller agrees to indemnify and hold Purchaser harmless from and against all fees, expenses, commissions and costs due and owing to Martinair and any other broker, agent or finder on account of or in any way resulting from any contract or understanding existing between Seller and such person.

13. General:

a.  In all respects, time shall be of the essence of this agreement.

b.  The following "Aircraft Acceptance", "Aircraft Delivery" and "Warrantee Bill of Sale" forms are part of this agreement.

c.  Purchaser acknowledges that the Aircraft is being delivered as a U.S. registered aircraft maintained in accordance with Part 91 of the US Federal Aeronautical Regulations.

d.  This agreement shall bind and inure to the benefit of the Parties hereto and their executors, administrators, heirs and assigns.

e.  Purchaser and Seller acknowledge that this Purchase Agreement is the product of negotiation and joint effort. Accordingly, the language, terms and conditions of this Purchase Agreement shall not be construed more strictly against either of the parties in the event a question of interpretation, construction or meaning should hereafter arise.

f.  This agreement supersedes all previous agreements, if any.

Seller _BHB_                                    Purchaser _____

IN WITNESS WHEREOF, this Agreement has been executed by Purchaser and Seller as of the date first written above.

Circuit City Stores, Inc.– Seller

By: _____

Title: __EVP, CFO_____

By: _Bruce Besanko_____

TACALA, LLC – Purchaser

By: _____

Title: _____CFO_____

By: _Joey Pierson_____

Seller _____

Purchaser _____

**"ATTACHMENT A"**
**Aircraft Acceptance/Rejection**

Pursuant to the provisions of the Aircraft Purchase and Sale Agreement dated _____, between Circuit City Stores, Inc ("Seller") and TACALA, LLC ("Purchaser"), you are hereby notified that Purchaser has performed its pre-purchase inspection of Hawker 800XP, S/N 258293, Reg. N150NC and has (initial whichever box is applicable):

☐ **Rejected the Aircraft.** Escrow Agent will be notified and directed to refund Purchaser's deposit. The Agreement is terminated.

☐ **Accepted the Aircraft.** Escrow Agent will be notified and Purchaser's deposit is non-refundable unless Seller fails to perform or Seller breaches its obligations or warranties.

☐ **Accepted the Aircraft provided that Seller fulfills its obligation to correct the airworthy discrepancies listed below, as limited by the Aircraft Purchase and Sales Agreement.** Escrow Agent will be notified and Purchaser's deposit is non-refundable unless Seller fails to perform or Seller breaches its obligations or warranties.

List of Discrepancies to be Corrected:

Ref:        Item Approval Sheet

PURCHASER:
TACALA, LLC [or its Assignee]

_____

Seller BHB

Purchaser

**"ATTACHMENT B"**
**Aircraft Delivery**

**N150NC**        **SERIAL#: 258293**        **MAKE: Hawker**        **MODEL: 800XP**

Purchaser hereby indicates and confirms to Seller that Purchaser has, at _____, on _____, 2009 at _____AM/PM, in accordance with the provisions of the Agreement accepted Hawker 800XP, S/N 258293, Reg. N150NC, together with all engines, avionics, items of equipment, furnishings, instruments, components and accessories installed therein or thereon, including the Model Honeywell TFE 731-[3C & 3D] engines, s/n P107136C and P 107238C (collectively the "Aircraft").

PURCHASER ACKNOWLEDGES THAT IT HAS INSPECTED THE AIRCRAFT AND EQUIPMENT AND THE RECORDS RELATING THERETO AND THAT THE AIRCRAFT, EQUIPMENT AND RECORDS ARE FULLY SATISFACTORY TO IT AND IN ACCORDANCE WITH THE AGREEMENT.

The undersigned, who has been duly authorized by Purchaser to do so, hereby accepts delivery of the Aircraft on behalf of Purchaser, **"AS IS, WHERE IS AND WITH ALL FAULTS"** at Purchaser's sole risk and expense. Purchaser understands Seller makes NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, MATERIAL, MANUFACTURE, WORKMANSHIP, DESIGN, AIRWORTHINESS, VALUE, CONDITION, OPERATION OR PERFORMANCE, CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR ANY OTHER MATTER CONCERNING THE AIRCRAFT, OTHER THAN THE LIMITED WARRANTY SET FORTH IN THE AIRCRAFT PURCHASE AGREEMENT AND THE WARRANTY OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE TO BE DELIVERED BY SELLER TO PURCHASER CONTEMPORANEOUSLY HEREWITH.

Purchaser hereby acknowledges that it has read and understood the above statements and that the Aircraft satisfies all of the requirements, terms and conditions of the Aircraft Purchase Agreement. By reason of the execution and delivery by Purchaser of this Delivery Receipt, (i) it is conclusively presumed that Purchaser has approved and accepted the Aircraft **"AS IS, WHERE IS"** in its then-current condition and state of repair, with all faults, limitations and defects (whether hidden or apparent), regardless of cause, and (ii) Purchaser shall have no claim against Seller for breach of any representation or warranty regarding the Aircraft, whether express or implied, other

Seller _____        Purchaser _____

than the limited warranty set forth the Aircraft Purchase Agreement and the warranty of title set forth in the Warranty Bill of Sale.

IN WITNESS WHEREOF Purchaser has caused this instrument to be executed and delivered by its duly authorized officer at the date and the time of delivery set forth above.

PURCHASER:
TACALA, LLC [or its Assignee]

_____

Seller _____

Purchaser _____

**"ATTACHMENT C"**
**Warranty Bill of Sale**

KNOWN ALL MEN BY THESE PRESENTS, that Circuit City Stores, Inc, with offices at 9950 Mayland Drive, Richmond, VA  23233 (hereinafter **"Seller"**), for good and valuable consideration paid to it by TACALA, LLC [or it's Assignee], with offices at 4268 Cahaba Heights Court. Birmingham, Alabama 35243 [or such other address as may be supplied for any Assignee] (hereinafter **"Purchaser"**), the receipt and sufficiency of which is hereby acknowledged by Seller has bargained, sold, transferred, assigned, set over and conveyed, and by these presents does hereby grant, bargain, sell, transfer, assign, set over and convey unto the Purchaser, its successors and assigns forever, all of its rights, title and interest in and to that certain Hawker 800XP, bearing the manufacturer's serial number 258293 and the U.S. civil aviation registration mark N150NC (the **"Airframe"**) with the two (2) attached Honeywell TFE 731 engines, bearing the manufacturer's serial numbers, P107136C and P107238C installed thereon (the **"Engines"**, together with all equipment, appliances, parts, instruments, appurtenances, accessories, furnishings, and other property installed in or attached to the Airframe or Engines (the **"Equipment"**), and all documents, logbooks, manuals, certificates, data, tools specific to the Aircraft, APU, all loose equipment normally delivered with the aircraft and listed on Exhibit "I" of that certain Aircraft Purchase Agreement dated _____, 2009. (The Airframe, Engines and Equipment will be collectively hereinafter referred to as the **"Aircraft"**).

TO HAVE AND TO HOLD for Purchaser, its successors' and assigns' own use forever.

Seller hereby warrants that (a) Seller is the owner and holder of and has full legal and beneficial title to the Aircraft; (b) Seller has good right and full power to sell the aircraft to Purchaser; (c) Seller's title thereto is on the date hereof good, indefeasible and marketable; and (d) Seller hereby transfers to Purchaser all its rights, title and interest in and to the Aircraft, free and clear of all liens, leases, charges, rights to purchase, mortgages or other encumbrances of any kind or nature.  Seller, its successors and assigns, covenant and agree to warrant and defend the title to the Aircraft, unto Purchaser, its successors and assigns, against all persons whomsoever.

This Warranty Bill of Sale and the rights and obligations of Seller and Purchaser hereunder (including without limitation all matters of construction, validity and performance) shall be governed by and construed in accordance with the laws of Commonwealth of Virginia.

IN WITNESS WHEREOF, SELLER has caused this Warranty Bill of Sale to be executed this _____ day of _____, 2009.


Seller: Circuit City Stores, Inc.

By: _____

Name: _____

Title: _____


Seller _BHO_                                                Purchaser _____

**"ATTACHMENT D"**
**Scope of Inspection**

N150NC                                    In reply refer to: Proposal # 8070777.02

I.    Work scope for Aircraft Serial No. 258293.

    A. Comply with the following:

| | | | |
|---|---|---|---:|
| 2. | Boroscope LH & RH Engines for FOD | $ | 850.00 |
| 3. | Visually Inspect Cockpit & Cabin Windows for Damage | $ | 170.00 |
| 4. | 24 Hour Fuel Leak Checks. (Includes 1500 gallons fuel / defuel charges.) | $ | 1,830.00 |
| 5. | Check loose equipment for any missing items. | $ | 170.00 |
| 6. | Comply with full avionics and entertainment function test | $ | 680.00 |
| 7. | Visually inspect wing and horizontal TKS panels for corrosion | $ | 680.00 |
| 8. | Visually inspect lavatory area for corrosion | $ | 340.00 |
| 9. | Comply with a boroscope of the APU | $ | 850.00 |
| 10. | Comply with Full Log Book Review for AD, SB, Time Life Components, and Airworthiness Compliance. | $ | 3,400.00 |
| 11. | 25R001 ELT NAV interface inspection | $ | 255.00 |
| 12. | 057110 No1 Engine 150/250 Hour inspection | $ | 425.00 |
| 13. | 057110 No 2 Engine 150/250 Hour inspection | $ | NA |
| 14. | 057120 No 2 Engine 300/400 Hour inspection | $ | 680.00 |
| 15. | 33R801 Lopresti Boom Beam landing light insp | $ | 170.00 |
| 16. | 120001 G-200 Lube | $ | 340.00 |
| 17. | 260008 Functional test smoke detection system | $ | 42.50 |
| 18. | 490002 APU igniter plug inspection | $ | 255.00 |
| 19. | 243154 #1 battery CAP check | $ | 425.00 |
| 20. | 240001 #1 and #2 Starter/Gen brush insp. | $ | 340.00 |
| 21. | 256005 ELT inspection | $ | 255.00 |
| 22. | 256010 ELT functional test | $ | 85.00 |
| | Total for Above | $ | 12,242.50 |

Note:   Flat Rated Labor Only. Parts and Outside Services required to accomplish
the above listed items are not included and will be reflected as additional
charges on the final invoice. Warranty items will be filed with Hawker Beechcraft
Corporation (HBC). HBC has final determination of warranty coverage. Any item(s)
not covered by warranty will be the responsibility of the customer.

2

Seller _BHB_                                        Purchaser

N150NC                                      In reply refer to: Proposal # 8070777.02

**Note: Discrepancies, including the treatment of corrosion, replacement parts and miscellaneous material associated with the above work, will be corrected on a time and material, as required basis, subject to the prior review and approval of the authorized company representative.**

**II.     Schedule**

The down time for the above work is projected to be (6) calendar days. Additional down time may be required for changes to the scope of work or for other unforeseen circumstances and is not guaranteed or warranted in any form.

**III.    Sales Tax**

Under current Arkansas State law, sales tax <u>will not</u> be added for work performed.

**IV.     Payment Terms**

Contract total plus any additional amounts associated with discrepancies, Change Order requests or optional additional work is due net thirty (30) days from issuance of invoice. All invoice amounts in excess of the customer's then available Hawker Beechcraft Corporation credit limit will be due upon completion of the work, prior to release of the aircraft.

**V.      Conditions of the Aircraft**

The pricing for the work is based on the assumption that there is adequate space, electrical interfaces and power in the aircraft as delivered and existing structures will not have to be modified in order to complete the work. Otherwise, an estimate of the additional cost and time to correct the deficiency will be submitted to you for approval.

**VI.     Changes of Work scope**

Any changes or additional work requirements noted will be documented on a Hawker Beechcraft Services Work Order Estimate Form. Our policy requires that approval of the revised Work Order Estimate Form be obtained from the customer prior to making any changes to the scope of work. Therefore, it is important to process any additional Work Order Estimates promptly, and please submit all change requests in writing to the Aircraft Services Manager or assigned service representative.

**VII.    Environmental and Miscellaneous Material Charges**

A charge equal to 2.5% of total labor (not to exceed $500 per invoice) will be added to all customer invoices to cover the cost of hazardous material handling and disposal. A charge equal to 4.5% of total labor (not to exceed $1500 per invoice) will be added to all customer invoices to cover the cost of miscellaneous consumables. These charges cover the handling

3

Seller                                     Purchaser

N150NC                                    In reply refer to: Proposal # 8070777.02

and disposal of waste oil, filters, tires, batteries and chemicals of all kinds and the use of items such as tape, solvents, shop cloths, sandpaper, cleaning compounds, brushes, grease, nitrogen, oxygen and small quantities of miscellaneous hardware such as screws, bolts and washers. These charges are included to avoid secondary billing, at a later date, for items not easily determinable at the time of original invoicing.

VIII.    Additional/Supplemental Invoicing

Due to changes in cost and availability at the time of purchase, the pricing of parts and materials found in this proposal are only estimates. The cost of parts and materials actually purchased will determine the final price of this proposal. Additionally, you will be responsible for all charges resulting from unacceptable core parts. We, as most other FBO's, may be unable to secure final vendor pricing on certain OEM parts, exchange parts, outside overhaul/repair units or fuel charges at the time we formally invoice you. This will result in additional invoicing to your company for these charges. We will make every attempt to minimize these additional invoices. Your understanding is appreciated.

IX.    Terms and Conditions

* Prices quoted are in U.S. Dollars.
* The work, associated with this proposal, will be performed at Hawker Beechcraft Services' Little Rock facility, FAA Repair Station UH6R899J, located at Adams Field, Little Rock, Arkansas, 72206.
* Any work requested that is not part of this proposal will be performed at the applicable current labor rate.
* All freight charges shall be invoiced to the customer.
* All fuel costs, including fuel/de-fuel surcharges, are the responsibility of the customer.
* All test flight costs (fuel, crew, lubricants, etc.) are the responsibility of the customer.
* Any travel time charges and expenses which may be necessary to conclude this project will be billed upon completion.
* Unless specifically stated, all equipment and furnishing removed shall become property of Hawker Beechcraft Services.
* Unless specifically stated, existing hardware will be utilized.
* Aircraft engineering documents must coincide with the current aircraft configuration.

Hawker Beechcraft Services may withdraw this proposal if not accepted within thirty (30) days.

| Proposal Accepted for | Proposal Accepted for |
|---|---|
| **Tacala LLC** | **Hawker Beechcraft Services, Inc.** |
| By: _____ | By: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
| P.O. #: _____ | |

4

Seller _BHn_                                    Purchaser _____

## ADDENDUM TO AIRCRAFT PURCHASE & SALE AGREEMENT

This Addendum forms an integral part of that certain Aircraft Purchase & Sale Agreement (the "Agreement"), by and among Tacala, LLC ("Purchaser"), Circuit City Stores, Inc. ("Seller"), and Insured Aircraft Title Services ("Escrow Agent"). All capitalized terms used herein without definition shall have the respective meanings set forth in the Agreement.

The parties acknowledge that Seller is a debtor in possession under a voluntary petition filed with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court"), initiating a case under Chapter 11 of the United States Bankruptcy Code, which case is being jointly administered with other affiliated debtors under Case No. 08-35653-KRH (collectively, the "Case"). Notwithstanding any contrary provision of the Agreement, Seller hereby agrees that the Purchaser's obligation to close the purchase and sale of the Aircraft as contemplated by the Agreement shall be subject to the condition precedent that Seller obtain from the Court a final order authorizing such sale, which final order must be reasonably acceptable to Purchaser in form and content and must confirm that title to the Aircraft shall be conveyed to Purchaser free and clear of all liens or other adverse claims of any kind or character whatsoever (the "Order"). If the Order is not entered by the Court on or before January 23, 2009, then Purchaser shall be entitled to terminate the Agreement by written notice to Seller, whereupon the Deposit shall be returned to Purchaser, the Agreement shall be terminated, and neither party shall have any further rights or obligations thereunder.

The rights of Purchaser set forth herein shall be exercisable in addition to, and not in lieu of, any and all other rights or remedies set forth in the Agreement, all of which shall remain in full force and effect.

In Witness Whereof, the undersigned parties have caused this Addendum to be duly executed and delivered as of the dates of execution set forth below.

**SELLER:**                                   **PURCHASER:**

CIRCUIT CITY STORES, INC.                     TACALA, LLC

By: _____                By: _____
    Print Name: _____                  Print Name: ___Joey Pirson___
    Title: _____                   Title: _____CEO_____

Date: _____                Date: _____1/16/09_____

1720340 v1