insurance proceeds which would have been received had Tenant carried insurance on the Improvements. The aforesaid obligations to deposit insurance proceeds with an Insurance Trustee shall not be in effect for so long as Tenant is Circuit City Stores, Inc and such Tenant has a net worth of not less than $100,000,000 00

If this Lease is terminated by Tenant pursuant to the provisions of this paragraph 15, all insurance proceeds payable and received by Tenant and/or the Insurance Trustee with respect to the Improvements not yet expended in constructing the Improvements shall be paid to Landlord (minus the amount of the Unamortized Costs which shall be paid to Tenant), and if Tenant has self insured the Improvements, Tenant shall pay to Landlord an amount equal to the insurance proceeds which would have been payable (minus the amount of the Unamortized Costs which shall be paid to Tenant) if Tenant carried insurance covering the Improvements.

(e). No Abatement: In the event of a damage or destruction to the Premises or the Improvements by any cause whatsoever, unless this Lease is terminated pursuant to this paragraph 15, none of the Base Rent or other charges payable by Tenant, nor any of Tenant's other obligations under any provisions of this Lease shall be affected thereby, and Tenant hereby specifically waives any and all rights it might otherwise have under any law or statute as a result of a fire or other casualty occurring with respect to the Premises or the Improvements or the Shopping Center

16    Condemnation.

(a)    Definition of Taking and Substantial Taking  For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises or the Shopping Center or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises or the Shopping Center or any portion thereof is taken by the condemning authority, and "Substantially All of the Premises" shall mean (i) so much of the Premises as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same

32                        H \KANER\CORR\88170_3\54/44 (5295)

VN0000000039

purposes as immediately prior to such Taking or as contemplated herein, (ii) so many of the parking spaces within the Shopping Center as reduces the parking ratio below the greater of 3.5 spaces (for full and compact sized automobiles as elsewhere provided in this Lease) per 1,000 square feet of gross leasable area in the Shopping Center or that ratio which is required by the zoning ordinance applicable to the Shopping Center, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within one hundred twenty (120) days after the Date of Taking, or (iii) so much of the Common Area Easement described in paragraph 6(b) above that access to the Premises is impeded.

(b)    Landlord's and Tenant's Rights Upon Taking or Substantial Taking In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease effective on the Date of Taking. In the event this Lease is terminated as the result of a Taking, Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking, subject, however, to the provisions of paragraph 16(f). Landlord may, at its option, if Landlord determines, exercising good faith and sound business judgment, that it is no longer economically feasible to operate the Shopping Center and all other leases, if any, in the Shopping Center are thereby terminated, terminate this Lease by giving notice to Tenant within six (6) months of receipt of notice of such Taking, effective as of the Date of Taking.

(c)    Tenant's Rights Upon Less Than Substantial Taking. In the event this Lease is not terminated as the result of a Taking, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion of the Building condemned or taken, effective as of the Date of Taking, and Landlord shall make all necessary restorations to the Common Areas, so that the portions of the Common Areas not taken are restored to their condition immediately prior to such Taking to the extent practical; and Tenant shall promptly perform Tenant's Restoration Work. If the Taking occurs within the last two (2) years of the Term and has a material impact on Tenant's ability

33

VN0000000040

to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d)     Rights Upon Temporary Taking.   In the event of a Taking of the Premises and/or the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding 180 days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect and Base Rent shall not abate during the course of such taking  All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, other than awards for any resulting damage to Landlord's property, for periods prior to the expiration of the Lease shall be payable to Tenant.  All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord.  Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of one hundred eighty (180) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable

(e)     Tenant's Right Upon Condemnation.   In the event this Lease is terminated as the result of a Taking, Tenant shall be entitled to claim compensation from the condemning authority for the value of its leasehold interest in the Premises, the "Unamortized Costs" (as hereinafter defined), relocation expenses and any other items to which Tenant is entitled under applicable law  Notwithstanding the foregoing, any award to Tenant, including without limitation, an award for the value of Tenant's leasehold interest, in excess of the Unamortized Costs and relocation expenses shall not diminish an award to Landlord for the same Taking.

17     Assignment and Subletting.

(a)     Except as expressly set forth in this Lease, Tenant shall not have the right to sublet, assign, transfer, reassign, mortgage or otherwise encumber this Lease or any interest therein nor grant concessions or licenses (a "Transfer") in all or any part of the Premises or any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent, which consent may be unreasonably withheld  In the event of such a Transfer, Tenant shall remain liable for all of Tenant's

H \KANER\CORR\88170_3\54\44 (S295)

VN0000000041

obligations to Landlord arising hereunder, provided, however, if this Lease is changed, modified or amended in any respect by Landlord and any transferee, Tenant's liability hereunder shall be limited to the terms, covenants and provisions of this Lease as originally set forth herein, except if the transferee is a parent, affiliate or subsidiary of Tenant, in which case, Tenant's liability shall extend to this Lease as so changed, modified or amended  Landlord shall not be entitled to any compensation from Tenant or any successor occupant of the Premises in connection with a Transfer

(b)  Notwithstanding anything contained herein to the contrary, Tenant shall not have the right to assign this Lease or sublet the Premises in whole or in part unless Tenant first delivers a "Transfer Notice" (as hereinafter defined) to Landlord with respect to any such Transfer. The Landlord shall have the right, to be exercised within thirty (30) days following receipt of written notice from Tenant (a "Transfer Notice") of a proposed assignment or subletting to recapture the Premises and terminate this Lease or to recapture a portion of the Premises in the event the subletting does not involve the entire Premises and to cause this Lease to be amended to refer only to the remaining portion of the Premises following any such partial recapture, which recapture shall be effective on the later of the date set forth in the Transfer Notice or ninety (90) days after the delivery of Landlord's recapture notice. The Transfer Notice shall include information which the Tenant has in its possession which may be disseminated without penalty regarding the proposed assignment or subletting, including but not limited to information regarding the proposed assignee or subtenant, the area contained within the Premises if the subletting does not involve the entire Premises, the nature of such transferee's proposed use, financial and operating information regarding such entity, the amount of the Unamortized Costs (hereinafter defined) and any other information which the Tenant may have in its possession in connection with such transaction  For any Transfer Notice to be effective, Tenant shall have delivered, at least ninety (90) days prior to the receipt by Landlord of a Transfer Notice, written notice of Tenant's intent to assign or sublease the Premises ("Tenant's Sublease Notice")  Tenant may deliver a Transfer Notice and Tenant's Sublease Notice simultaneously, provided that Landlord's obligation to respond to any Transfer Notice delivered simultaneously with Tenant's Sublease Notice will not arise until the one hundred twentieth (120th) day after delivery thereof.  In the event that

35

H \KANER\CORR\8170_3\5444 (5295)

the Landlord elects to terminate this Lease within said thirty (30) day or one hundred and twenty (120) day period, as the case may be, following delivery by Tenant of a Transfer Notice, Landlord shall pay to the Tenant (provided the Tenant is Circuit City Stores, Inc or a transferee pursuant to paragraphs 17(c) or 17(e)(x) or (y)) the value of the unamortized Improvements and Site Work, as carried on Tenant's books in accordance with generally accepted accounting principles, consistently applied, and as certified to by an officer of Tenant (the "Unamortized Costs")   The Unamortized Costs shall be paid within ten (10) days after Tenant vacates the Premises in accordance with the provisions of paragraph 26 hereof   Failure of the Landlord to respond to any Transfer Notice shall be deemed to be the election of the Landlord not to terminate the Lease or recapture the applicable portion of the Premises, as the case may be   In the event of a recapture involving only a portion of the Premises, the Landlord's liability for payment of the Unamortized Costs (in the event it elects to recapture the Premises) shall relate only to that portion of the Premises which is the subject of the subletting   In addition, in the event of a partial recapture, on the effective date of such sublease, this Lease shall be modified to reflect the reduced floor area of the Premises and the corresponding reduction in the payment of Base Rent and other charges hereunder and Landlord and Tenant shall be released from all liability accruing thereafter under this Lease with respect to the portion of the Premises so recaptured.

(c)   In the event that Tenant sends a Transfer Notice and Landlord does not exercise the right of recapture as set forth in subparagraph (b) above, then Tenant shall have the express right, without Landlord's consent, to effect the Transfer described in the Transfer Notice within one (1) year after Landlord fails to recapture pursuant to subparagraph (b), provided the following terms and conditions are fully satisfied

(i)   In the case of an assignment, it shall provide for the assignment of Tenant's entire interest of this Lease and the acceptance by the assignee of said assignment and its assumption and agreement to perform directly for the benefit of Landlord all of the terms and provisions of this Lease on Tenant's part to be performed

(ii)   In the case of a subletting, it shall be expressly subject to all of the obligations of Tenant under this Lease and the further condition and

36

VN0000000043

42

restriction that the sublease shall not be assigned, encumbered or otherwise transferred or the subleased premises further sublet by the sublessee in whole or in part, or any part thereof suffered or permitted by the sublessee to be used or occupied by others, without the provisions of this paragraph 17 being made applicable thereto, it being understood and agreed that Landlord shall have the right to recapture the Premises upon each successive Transfer

(iii)     There shall not be more than three (3) subleases in effect covering the Premises at any time during the Term and the Premises shall not consist of more than three (3) separately demised premises at any time.

(iv)     Landlord will be furnished with a true copy of the assignment or sublease within a reasonable time after its execution

(d)     Tenant may not enter into any lease, sublease, license, concession or other agreement for use, occupancy or utilization of space in the Premises which provides for a rental or other payment for such use, occupancy or utilization based in whole or in part on the net income or profits derived by any person from the property leased, occupied or utilized, or which would require the payment of any consideration which would not fall within the definition of "rents from real property", as that term is defined in Section 856(d) of the Internal Revenue Code of 1986, as amended, Landlord acknowledging that "percentage rents" are within the definition of "rents from real property"

(e)     Anything contained in this Lease to the contrary notwithstanding, Tenant shall have the right, without Landlord's consent, to assign this Lease or sublet the Premises (x) to a corporation which is a parent or subsidiary of Circuit City Stores, Inc ; or (y) to a corporation which is a successor to Circuit City Stores, Inc (including its subsidiaries and parent), by way of merger, consolidation or corporate reorganization, or by the purchase of substantially all of the assets or the "voting stock" (as hereinafter defined) of Circuit City Stores, Inc (including the assets of its subsidiaries and parent), provided that such transaction includes at least ten (10) Circuit City locations operated similarly to the Premises, or (z) to an entity which purchases at least ten (10) Circuit City stores operated similarly to the Premises, owned and operated by Circuit City Stores, Inc and its subsidiaries and parent in the states of New York, Connecticut or New

H KANER\CORR\68170_3\54/44 (5295)

VN0000000044

Jersey, provided   (a) Tenant is not then in default with respect to the payment of Base Rent beyond any applicable cure period; (b) within a reasonable time after the execution of any such assignment or subletting, a fully executed and acknowledged assignment or sublease agreement is delivered to Landlord, which assignment shall contain an assumption agreement by the assignee in favor of Landlord of the terms and provisions of this Lease, and (c) Tenant shall remain liable under this Lease.   In the event of any such assignment or subletting as set forth in this subparagraph (e), Landlord shall not have the right to recapture the Premises as elsewhere provided in this paragraph

(f)      If Tenant is a corporation or partnership and if at any time during the Term the person or persons who, on the date of this Lease, owns or own a majority of such corporation's voting shares or such partnership's partnership interests, as the case may be, ceases or cease to own a majority of such shares (whether such sale occurs at one time or at intervals so that in the aggregate, such a transfer shall have occurred), or interests, as the case may be (except as a result of transfer by gift or inheritance), then in any such event Tenant shall so notify Landlord and Landlord shall have the right, as its option, to terminate this Lease by notice to Tenant given within thirty (30) days thereafter or within ninety (90) days after Landlord shall have received other notice thereof, except that this paragraph shall not be applicable to any corporation, the majority of the outstanding voting stock of which is listed on a national securities exchange (as defined in the Securities Exchange Act of 1934, as amended) or is otherwise publicly traded  For the purposes of this subparagraph, stock ownership shall be determined in accordance with the principles set forth in Section 544 of the Internal Revenue Code of 1986, and the term "voting stock" shall refer to shares of stock regularly entitled to vote for the election of directors of the corporation  The foregoing provisions of this subparagraph shall not apply to the transfer of corporate shares or partnership interests in connection with a transaction otherwise permitted by subparagraph 17(e)(y) or (z) above  Notwithstanding anything contained in this Lease to the contrary, Tenant may, without Landlord's consent, grant licenses or concessions for the operation of departments in the Premises equal to the greater of ten percent (10%) of the selling and display floor area contained in the Premises or the same extent such departments are being operated in the majority of similar stores operated by Circuit

H\KANER\CORR\88170_3\54/44 (5295)

VN0000000045

City Stores, Inc., in the States of New York, New Jersey or Connecticut, provided such licenses and concessions operate under the business name or trade name used by Tenant at the Premises and do not have a separate means of ingress and egress to and from the exterior of the Premises

18    Use.

(a)    Tenant may initially maintain, use and operate the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular telephones, household appliances (which include, but shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners and dishwashers) and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products    (b)    Thereafter, Tenant shall have the right to use the Premises for any lawful retail use; provided, however, that the Premises shall not be used (i) for any illegal purpose, (ii) for any use prohibited under paragraph 19(a)(viii) below, or (iii) in violation of any other applicable provision of the "Permitted Encumbrances" contained in Exhibit C.

(c)    Except as may be expressly set forth in this paragraph 18, nothing contained in this Lease shall be construed to require Tenant to operate the Premises continuously either for the use first stated or for any other use.

19    Warranties and Representations

(a)    Landlord represents, warrants and covenants to Tenant that

(i)    Landlord covenants that if Tenant pays the Base Rent and all other charges provided for herein, performs all of its obligations provided for hereunder, and observes all of the other provisions hereof, Tenant shall at all times during the Term peaceably and quietly have, hold and enjoy the Premises, without any interruption or disturbance from Landlord or anyone claiming by, through or under Landlord or any Mortgagee; subject however to any matters of record title recorded prior to the date of

VN0000000046

45

the Lease and any matters an accurate survey of the Shopping Center would show Tenant's title insurance commitment reflects the encumbrances shown on Exhibit C attached hereto

(ii)    Landlord hereby represents and warrants that it is the owner of a fee simple in and to the Shopping Center and the Premises and that it has full right, title and authority to enter into and deliver this Lease and any and all documents called for pursuant hereto to the Tenant and to fully, legally and effectively bind the Landlord to the full and faithful performance of all of the terms, covenants and conditions hereof on the part of Landlord to be performed, subject, however only to matters of record title and survey matters as described in subparagraph (a)(i) above. Landlord specifically covenants and warrants that no third party with whom Landlord has privity of contract, including but not limited to any other occupant of the Shopping Center, has the right arising from any such contract (executed by Landlord (or its predecessors with respect to any contract Landlord has assumed) and such third party) to object to Tenant's tenancy hereunder, prohibit the selling, renting, servicing, repairing or warehousing of the Products in the Premises, or the right to consent to any feature of the Improvements or Tenant's signage, subject however, to matters of record title and survey matters as described in subparagraph (a)(i) above  This representation and warranty is a material inducement to the Tenant's execution of this Lease.

(iii)    Certificate of Authority. Landlord covenants that it is a duly constituted corporation under the laws of the State of New Jersey, and that its officer who is acting as its signatory in this Lease is duly authorized and empowered to act for and on behalf of the corporation. Landlord shall furnish Tenant's title company with evidence of (a) the existence of the corporation, and (b) the authority of such officer to bind the corporation as contemplated herein

(iv)    No Litigation. To the best of Landlord's knowledge, there are no pending legal proceedings against Landlord or the Shopping Center which preclude or interfere with, or would preclude or interfere with, the construction contemplated in paragraph 2 hereof or the occupancy and use of the Premises for the sale of the Products.

H KANERICORR\68170_3\54/44 (S295)

VN0000000047

(v)    Hazardous or Toxic Materials.    Landlord has not used, discharged, dumped, spilled or stored any "Hazardous Substances" (as hereinafter defined) on or about the Shopping Center, whether accidentally or intentionally, legally or illegally, and has received no notice and has no knowledge that any such condition exists at the Shopping Center except as set forth in the Phase I Environmental Site Assessment, dated April 1993, prepared by Wehran Engineering Corporation, a copy of which has been given to Tenant and except as set forth in the report, dated April 29, 1997, prepared by Raisanen & Associates, Inc ("RAI Report"). If any claim is ever made against Tenant relating to Hazardous Substances present at or around the Shopping Center, whether or not such substances are present as of the date hereof, or any Hazardous Substances are hereafter discovered at the Shopping Center (unless introduced by Tenant, its agents or employees), all costs of removal incurred by and all liability imposed upon, Tenant because of the same shall be borne by Landlord (and not Tenant, whether by the imposition of Tenant's Contribution or otherwise), and Landlord hereby, to the extent Landlord or its agents caused or permitted the discharge or presence of Hazardous Substances to occur, indemnifies and agrees to defend and hold Tenant harmless from and against all such costs, losses, liabilities and damages, including, without limitation, all third-party claims (including sums paid in settlement thereof, with or without legal proceedings) for personal injury or property damage and other claims, actions, administrative proceedings, judgments, compensatory and punitive damages, penalties, fines, costs, losses, attorneys' fees and expenses (through all levels of proceedings), consultants or experts fees and all costs incurred in enforcing this indemnity  The representation, warranty and indemnity of Landlord described in this paragraph 19(a)(v) shall survive the termination or expiration of this Lease  "Hazardous Substances" means any toxic or hazardous substances, asbestos or any other chemicals or substances in amounts which exceed standards for public health or welfare as established by any local governmental authority, the State or the United States Government.  Landlord shall, at its expense, prior to Delivery of Possession, remove from the Shopping Center, the Hazardous Substances set forth in the RAI Report, including all underground storage tanks containing same ("Report Substances") and

VN0000000048

47

remove any and all asbestos from the Existing Buildings; all in accordance with applicable laws

(vi)   Tenant's Use.   Except as provided in paragraph 18(b), Landlord covenants that it has not granted and shall not grant any exclusive right to sell or rent any goods or services in the Shopping Center which shall be binding upon the Tenant   In the event that the Landlord has granted or ever grants in the future the right, whether on an exclusive basis or otherwise, to sell any goods or services in the Shopping Center, and any claim is made against Tenant as a result thereof, except as provided in paragraph 18(b), the Landlord hereby agrees to indemnify, defend and hold the Tenant harmless from any loss, claim, cost, liability or damage resulting from the allegation of any occupant of the Shopping Center that the operations of the Tenant under this Lease violates the grant by the Landlord of such right to sell goods in the Shopping Center, unless the Landlord shall have included within the lease agreement with such future user that any exclusive use granted by the Landlord to such user shall be expressly non-binding against the Tenant, and/or that such exclusive use shall not be applicable to any leases previously executed or that it shall be applicable to only the leases subsequently executed, it being understood and agreed that any such grant by the Landlord shall not be binding upon the Tenant.

(vii)   Zoning and Subdivision.   The Premises and the Shopping Center are presently properly subdivided, in conformity with all applicable laws and zoned for retail use.

(viii)   Prohibited Activities   Landlord shall not operate or lease (or permit to be operated or leased) any building or tenant space in the Shopping Center for use as:

(A)   a bar, pub, nightclub, music hall or disco in which less than sixty percent (60%) of its space or revenue is devoted to and derived from food service;
(B)   a bowling alley;
(C)   a billiard or bingo parlor;
(D)   a flea market,
(E)   a massage parlor;
(F)   a church or funeral home;
(G)   a facility for the sale of paraphernalia for use with illicit drugs,

42

H\KANER\CORR\68170_3\54/44 (5295)

VN0000000049

(H)  a facility for the sale or display of pornographic material (as determined by community standards for the area in which the Shopping Center is located),

(I)  an off-track betting parlor,

(J)  a carnival, amusement park, shooting gallery, swimming facility or circus,

(K)  a gas station, car wash or auto repair or body shop (the parties specifically acknowledging that Tenant's car stereo installation facility is not included in this prohibition (K));

(L)  a facility for the sale of new or used trailers or mobile homes or new or used automobiles, trucks and/or sport utility vehicles;

(M)  a facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center,

(N)  a skating or roller rink;

(O)  an arcade, pinball or computer gameroom or any other facility operated solely for entertainment purposes, such as a "laser tag" or "virtual reality" theme operation (provided that retail facilities in the Shopping Center may operate no more than four (4) such electronic games incidentally to their primary operations);

(P)  service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments) or other nonretail uses except for offices and storage facilities incidental to a primary retail operation,

(Q)  a banquet hall, auditorium or other place of public assembly;

(R)  a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers);

(S)  a theater of any kind within 400 feet of the entrance to the Building;

(T)  a facility for the sale or rental of used goods (including thrift shops, secondhand or consignment stores),

(U)  a sporting event or other sports facility, including a gymnasium or health spa, within 400 feet of the entrance to the Building,

(V)  a factory; or

(W)  any industrial usage, warehouse, processing or rendering plant.

H\KANER\CORR\88170_3\54/44 (5295)

VN0000000050

In addition, no auction, fire or going-out-of-business sale shall be conducted in any building or space in the Shopping Center

(ix)   Site Covenants   With regard to the development of the Shopping Center and the uses and operations of the Shopping Center, Landlord shall have the following rights and shall be bound by the following obligations with respect thereto and makes the following representations and warranties (the "Site Covenants")

(A)   Future Improvements   No outparcels, barriers, buildings, kiosks or other structures shall be located within Tenant's Preferred Area.

(B)   Construction and Alterations   Following the end of the first Lease Year, no construction shall be permitted in the Shopping Center during the months of October, November and December, except for interior alterations not affecting the Common Areas or Tenant's business operations, except for emergency repairs   In the event of any construction within the Shopping Center, Landlord shall designate a construction access route, staging and parking areas located so as to minimize interference with customers or the operations of occupants of the Shopping Center and shall require erection of safety barriers as necessary and an opaque wall around the site of such construction of a size necessary to screen such construction from view   With regard to any construction on Landlord's Premises, Landlord shall be solely responsible for any governmentally imposed impact fees, hook-up, connection, installation or tap-in fees and other, similar construction-related charges   In no event shall the Tenant bear any of the expense of such improvements, including but not limited to any increase in Common Area maintenance costs as a result of and during the construction thereof, such as, by way of example, the cleanup of construction debris and increased security.   In effecting such improvements, the Landlord shall exercise reasonable efforts to minimize the interference with Tenant's business. Landlord shall make no changes in the Tenant's Preferred Area (including, without limitation, changes in the location of curbcuts, drive aisles, roadways, sidewalks or parking spaces

44                         H\KANER\CORR\66170_3\54\44 (6295)

or reduction of the parking ratio specified in paragraph 5) without Tenant's express written consent, which Tenant may, in its sole discretion, withhold The Landlord may change the location of access points to the Shopping Center from dedicated thoroughfares

(C)   Prohibited Uses in Common Areas    Landlord covenants that it shall not, without Tenant's express written consent, permit the following uses or activities to occur in the Common Areas    (1) advertisements or signs in the Tenant's Preferred Area except for the pylon and/or monument signs described in paragraph 8; the "for rent" signs described in paragraph 27 and traffic control signs, (2) promotional sales except those which are subject to the same limitations placed upon Tenant in this Lease; (3) operation of loudspeakers or other sound electronically amplified so as to be heard in the Common Areas; or (4) imposition of a charge for parking.  Landlord further covenants that it will not seek, nor permit any other occupant of the Shopping Center to seek, a variance or waiver from the minimum parking requirements applicable to the Shopping Center under the zoning code or other applicable ordinance establishing the ratio of parking spaces to building area or otherwise mandating the number of parking spaces required for the Shopping Center and the uses contained therein below the parking requirements of this Lease  Parking by employees of Tenant, Landlord and other occupants of the Shopping Center shall be in designated "employee parking" areas, the location of which shall be agreed upon by Landlord and Tenant.

(D)   Easements  Landlord shall not subdivide, parcel or otherwise divide the Shopping Center or create any easements in the Common Areas without Tenant's prior written consent, unless this Lease remains applicable to the subdivided parcel or easement area

(E)   Landlord's Development Rights.  Subject to all applicable limitations, restrictions and conditions of this Lease, Landlord shall have the following rights.  (i) with Tenant's consent (which shall not be unreasonably withheld) as to the time and date, to temporarily close all or

45

VN0000000052

any portion of the Common Areas, only for such limited period of time as may in the reasonable opinion of Landlord's counsel (and concurred with by Tenant's counsel) be necessary to prevent a dedication thereof or the accrual of any rights of any person or the public therein, (ii) to close all or any portion of the Common Areas temporarily to discourage non-customer use, (iii) to prohibit parking or passage of motor vehicles in areas previously designated for such, except with respect to any portion of Tenant's Preferred Area; (iv) to expand, decrease or alter the size of the Shopping Center (exclusive of the Premises); and (v) except with respect to any portion of Tenant's Preferred Area, to erect additional buildings on the Common Areas, or to change the location of buildings or other structures to any location in the Shopping Center including the Common Area (and upon such erection or change of location the portion upon which such buildings or structures have been erected shall no longer be deemed to be a part of the Common Area), provided that any such work described in subparagraphs (i) through (v) above is performed with diligence using reasonable efforts to minimize interference with the conduct of Tenant's business and provided no other applicable limitation, restriction or condition of this Lease is violated thereby

(x)    Interference with Tenant's Reception/Transmission    Landlord shall permit Tenant to install its standard telecommunications facility and Tenant may prevent any other tenant or other person anywhere in the Shopping Center from installing, with no liability to the Landlord, any radio or other transmitting equipment which would cause any interference with satellite, radio or television reception or transmission in or from the Building    Tenant shall exercise commercially reasonable efforts from interfering with other occupants' transmission facilities

(xi)    Notices Affecting the Premises    Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or from any municipal or governmental authority, in connection with

46

VN0000000053

52

any hearing or other administrative procedure relating to the use or occupancy of the Premises

(xii) Constructive Trust. Landlord covenants that all sums paid by Tenant to Landlord and intended for payment by Landlord to a third party (such as, by way of example, taxes and certain elements of CAM Charges) are given to Landlord in trust and shall be applied only for such third-party payments, as and when due.

(b) Tenant represents, warrants and covenants to Landlord that:

(i) Tenant's Authority. Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia, it has the power to enter into this Lease and perform Tenant's obligations hereunder; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

(ii) Tenant's Warranty as to Hazardous or Toxic Materials. As to Tenant's use and occupancy of the Premises and use of the Common Areas, Tenant will not introduce, discharge, dump, spill or store within the Premises or the Shopping Center any Hazardous Substances; and Tenant indemnifies and agrees to hold Landlord harmless from and against all costs, liability and damages as a result thereof, to the same extent that Landlord indemnifies and holds Tenant harmless in subparagraph (a)(v) above. The warranty and indemnity of Tenant described in this paragraph 19(b)(ii) shall survive the termination of this Lease.

(c) Landlord has made no representation, covenants or warranties with respect to the Shopping Center or the Premises except as expressly set forth in this Lease. In the event there is a condition at variance with the foregoing representations and warranties of Landlord with respect to the Premises or the Shopping Center which prevents or in any material way inhibits the use of the Premises or any part thereof for the sale of the Products or the Common Areas, for their intended purposes by Tenant or Tenant's employees, licensees, agents, suppliers, customers or invitees, or if Landlord shall default in the observance or performance of any of the foregoing representations and warranties, then, in addition to such other remedies as may be accorded Tenant at law, in equity or under the terms of this Lease, Tenant may, in addition to its other

47

H:\KANER\CORR\55170_3\54\44 (5285)

VN0000000054

53

remedies under this Lease subject to the limitations contained in paragraph 31, after thirty (30) days' notice to Landlord, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of Tenant's legal remedy and the irreparable harm which would be caused to Tenant by any such variance or default. In addition, in the event that any of the representations, warranties and covenants set forth in this paragraph 19 are untrue or incorrect, or in the event that Tenant suffers any loss, cost, liability or damage as a result of the breach of any of such covenants, representations and warranties, Landlord shall defend, indemnify and hold Tenant harmless from any of such loss, costs, liability or damage incurred as a result of Landlord's breach hereunder.

20.    Estoppel Certificates.  Without charge, at any time and from time to time hereafter, within thirty (30) days after receipt of written request by either party, the other party shall certify, by written and duly executed instrument, to any other entity ("Person") specified in such request:  (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's best knowledge, (c) as to the existence of any default hereunder, to the certifying party's best knowledge, (d) as to the existence of any offsets, counterclaims, or defenses hereto on the part of such other party, to the certifying party's best knowledge; (e) as to the commencement and expiration dates of the Term; and (f) as to any other matters which may reasonably be so requested

21    Subordination, Non-Disturbance and Attornment.  Except with respect to the initial non-disturbance and attornment agreement, delivery of which shall be controlled by the provisions of paragraph 37(a), Tenant shall subordinate this Lease to any future Mortgage or Ground Lease (as such terms are hereinafter defined), provided that Landlord shall deliver to Tenant with regard to any such Ground Leases (as defined below) and any and all of such Mortgages (as defined below) encumbering the Premises and placed thereon by Landlord, a non-disturbance and attornment agreement in the form of Exhibit D hereto attached, executed by the Landlord under any such Ground Lease ("Ground Lessor") or the holder of such Mortgage ("Mortgagee"), as applicable

48

H\KANER\CORR\85170_3\54/44 (5295)

54

In the event of a foreclosure of any Mortgage, Tenant shall attorn to a Mortgagee or any purchaser at a foreclosure sale (any such foreclosure, or deed in lieu thereof, shall be referred to as a "Foreclosure") of a Mortgage only if such Mortgagee or purchaser executes a writing in favor of Tenant which states the following (provided Tenant is not in uncured material default beyond the expiration of any applicable grace periods) (i) this Lease shall not terminate by reason of such Foreclosure, (ii) Tenant's possession of the Premises shall not be disturbed, (iii) the Mortgagee or purchaser upon such Foreclosure shall recognize Tenant and all its rights hereunder and shall be obligated to fully and completely perform Landlord's duties and obligations under the Lease arising from and after the date of such Foreclosure, including but not limited to an obligation to make all payments to Tenant and satisfy all construction obligations set forth in this Lease, (iv) Tenant shall not be named as a party in any action for foreclosure, and (v) the Mortgagee, whether or not the Mortgage is foreclosed, shall make all proceeds arising from a casualty or condemnation loss to the Premises available to Tenant for restoration of the Improvements in accordance with the terms hereof  In the event of termination of a Ground Lease (herein so called), Tenant shall attorn to any Ground Lessor from whom Tenant has received a non-disturbance agreement in accordance with this paragraph 21. For purposes of this Lease, "Ground Lease" means a lease of the Premises or the Shopping Center, as the case may be, or lease of the ground underlying the Premises or the Shopping Center, between the owner thereof, as lessor, and Landlord, as lessee, giving rise to Landlord's rights and privileges in the Premises, the Shopping Center or such underlying land  For purposes of this Lease, "Mortgage" means any mortgage, deed to secure debt, trust indenture, or deed of trust which may now or hereafter affect, encumber or be a lien upon the Premises, the Shopping Center, the real property of which the Shopping Center forms a part, or Landlord's interest therein; and any future advances made pursuant to any existing Mortgage, renewals, modifications, consolidations, replacements and extensions thereof

22    Change of Landlord    Subject to paragraph 21 above, in the event Landlord's interest in the Premises passes to a successor (the "Successor") by sale, lease, Foreclosure or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and

VN0000000056

effect as if the Successor were the landlord under the Lease, and Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant. In the event that Landlord's interest in the Premises passes to a Successor and such Successor assumes the obligations of Landlord arising from and after such transfer, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes.

23    Tenant's Financing    (a)   Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, from time to time, secure financing or general credit lines and grant to the lenders thereof ("Lender(s)"), as security therefor, (i) a security interest in Tenant's fixtures, personalty, inventory and equipment (collectively, "Personalty"), and (ii) the right to enter the Premises to realize upon any Personalty so pledged, subject to the following provisions.

If all or some of the Personalty to be installed and used by Tenant in the Premises are to be financed, Landlord hereby agrees to recognize the rights therein for such Lender, subject to the provisions of this paragraph   Subject to the provisions of this paragraph, Landlord expressly waives any claim arising by reason of any Landlord's lien, right of distraint, or otherwise with respect to the financed Personalty and agrees that any such Lender may remove and dispose of the same without reference to, and free and clear of any claim or other demand of Landlord, subject to and in accordance with the following provisions set forth in (a) through (f) below

Landlord shall, upon the request of any Lender, sign an instrument reasonably satisfactory to Landlord, evidencing the foregoing waiver and recognition, provided that such instrument contains the following provisions for the benefit of Landlord.

(i)      No foreclosure sale will take place on the Premises;

(ii)      The Lender will remove any Personalty from the Premises upon thirty (30) days written notice that this Lease has been terminated, failing which Landlord may dispose of the Personalty without accountability to any party   During said thirty (30) day period, the Lender shall pay Base Rent and all other charges due and payable hereunder to Landlord at the then applicable rates set forth in this Lease,

(iii)      The Lender will repair any damage caused by the removal of the Personalty;

50                     H\KANER\CORR\88170_3\54/44 (5295)

(iv)   Simultaneously with any notice of default sent to Tenant, the Lender will send a copy thereof to Landlord,

(v)   In the event Tenant does not cure a default under the chattel mortgage or security agreement, Landlord shall be given an additional ten (10) day written notice during which Landlord may elect to cure such default, failing which the Lender may remove the Personalty; and

(vi)   The Lender shall give Landlord at least three (3) days prior written notice before removing the Personalty and shall do so under the supervision of a representative of Landlord,

All rights granted to Tenant under this paragraph shall not in any way be construed to limit or diminish Tenant's obligations under this Lease

(b)   After completion of the Improvements by Tenant and provided that Tenant is not in monetary Default, Circuit City Stores, Inc. or a transferee pursuant to paragraph 17(e) may mortgage and/or transfer its interest in this Lease pursuant to one (1) first leasehold mortgage or other financing transaction such as, without limitation, a sale and leaseback (individually and collectively, a "Leasehold Mortgage"), subject to and in accordance with the following provisions.

1   The maturity date of the Leasehold Mortgage shall be on or before the Expiration Date of the original Term as same may be extended

2   There shall not be more than one (1) Leasehold Mortgage in effect at any time

3   No Leasehold Mortgage shall extend to or affect the estate of Landlord in and to the Premises, the Shopping Center or any portion thereof.

4.   The Leasehold Mortgage shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of Landlord herein, none of which covenants, conditions, rights interests or restrictions is or shall be waived by Landlord by reason of the right given to so mortgage Tenant's leasehold interest in this Lease, except as expressly provided herein

5   All proceeds of any Leasehold Mortgage financing shall belong solely to Tenant.

H \KANER\CORR\s170_3\54\44 (5295)

VN0000000058

6   In addition to the foregoing, the Leasehold Mortgage shall contain the following provisions

(i)   No Purchaser at any foreclosure sale shall acquire any right, title or interest in or to the Lease hereby mortgaged unless such purchaser shall, prior to taking possession of the Premises, assume and agree in writing to perform all of the terms, covenants and conditions of the Lease hereby mortgaged on Tenant's part to be performed and unless a duplicate original of said assumption agreement in form reasonably satisfactory to Landlord is delivered to Landlord immediately after the consummation of such sale

(ii)   This mortgage and all rights of the mortgagee hereunder are subject and subordinate to any Fee Mortgage or Leasehold Mortgage (if the Landlord holds a leasehold estate in the Shopping Center) placed on the Premises and/or the Shopping Center by Landlord, and to which the said Lease is or shall become subject and subordinate.

(iii)   In the event of a foreclosure of this mortgage, no sublease, permitted pursuant to the Lease, in good standing shall, without the prior written consent of the Landlord, be terminated, cut off or foreclosed

7   Unless Landlord otherwise agrees in writing, a Leasehold Mortgage which violates any of the foregoing provisions contained in this paragraph 23(b), shall be void and of no force or effect.

(c)   If Circuit City Stores, Inc or a transferee pursuant to paragraph 17(e) executes a Leasehold Mortgage and provided that such Leasehold Mortgage fully complies with the provisions of paragraph 23(b) and further provided that the mortgagee of such Leasehold Mortgage shall, within thirty (30) days of its execution, send to Landlord a true copy thereof, together with written notice specifying the name and address of the mortgagee and the pertinent recording date with respect to such Leasehold Mortgage, Landlord agrees that so long as any such Leasehold Mortgage shall remain unsatisfied of record or until written notice of satisfaction is given by the mortgagee to Landlord, the following provisions shall apply:

52                 H \KANER\CORR\88170_3\54/44 (5285)

VN0000000059

58

(y)    There shall be no cancellation or surrender of this Lease by joint action of Landlord and Tenant without the prior consent in writing of the mortgagee; and

(z)    Landlord shall, upon serving Tenant with any notice of Default, simultaneously serve a copy of such notice upon the mortgagee The mortgagee shall thereupon have the same period, after service of such notice upon it, to remedy or cause to be remedied the Defaults complained of, and Landlord shall accept such performance by or at the instigation of such mortgagee as if the same had been done by Tenant.

24    Tenant's Property and Waiver of Landlord's Lien  All of the Personalty shall be and remain the personal property of Tenant. Landlord expressly waives any statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the aforesaid property of Tenant on the Premises.

25    Memorandum of Lease; Commencement Date Agreement  Landlord and Tenant agree, at the other's request and at the sole expense of the requesting party, to execute a Memorandum of Lease in recordable form, substantially similar to that attached hereto as Exhibit E, setting forth such provisions hereof as may be required by State law  Each of Landlord and Tenant agree that the Memorandum of Lease shall contain a self-operative provision the effect of which shall act to release from record title such instrument upon the expiration of earlier termination of the Lease.  In addition, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached hereto as Exhibit F, once the Commencement Date has been established. Recording costs for either or both documents shall be borne by the party requesting recordation of the same. The provisions of this Lease shall control, however, with regard to any omissions from, or provisions hereof which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement

26    Expiration of Term and Holding Over  All of the Personalty shall be removable by Tenant any time prior to the expiration or earlier termination of this Lease

VN0000000060

and shall be so removed by Tenant   In the event Tenant fails to remove any or all of its Personalty within said period, Landlord may remove such Personalty and dispose of same in any manner whatsoever and thereafter charge Tenant for the cost of such removal together with interest thereon at the Default Rate. Those improvements that are integrated into the physical structure of the Building, except any of Tenant's trade fixtures, shall not be removed and shall become the property of Landlord   (A nonexclusive list of Tenant's removable trade fixtures is attached hereto as Exhibit G ) Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings and equipment (except for small holes caused by nails, fasteners and the like) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein ordinary wear and tear, casualty and condemnation excepted   Tenant agrees that at the expiration of this Lease, it will deliver to Landlord peaceable possession of the Premises   No holding over by Tenant nor acceptance of Base Rent or other charges by Landlord shall operate as a renewal or extension of the Lease without the written consent of Landlord and Tenant   Should Tenant hold over without the consent of Landlord, this Lease shall continue in force from month to month, subject to all of the provisions hereof and at two hundred percent (200%) of the monthly Base Rent Tenant had been paying during the preceding Lease Year   The provisions of this paragraph 26 shall survive the termination of this Lease.

27    "For Rent" Signs.  Tenant hereby permits Landlord during the last six (6) months of the Term, as the case may be (provided that no applicable ), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, on the parking lot of the Shopping Center   Tenant will also allow Landlord or its agents, upon prior written notice and accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior, to prospective tenants, purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

28    Force Majeure.  Except as otherwise specifically contemplated in this Lease or in paragraph 4 of the Construction Provisions, in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required

H \KANER\COPIR\88170_3\54\44 (5295)

VN0000000061

hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay   Lack of funds to satisfy any obligation under this Lease by either party shall not be considered an event of force majeure, nor shall any event of force majeure excuse, abate or postpone Tenant's obligations to pay Base Rent or any other sums or charges due and payable pursuant to this Lease.

29     Events of Tenant's Default   Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease.

(a)     Failure to Pay Rent, Breach   (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Base Rent, CAM Charges or Real Estate Taxes) (subject to Tenant's right of good faith contest other than with respect to Base Rent), within ten (10) days after the receipt of written notice from Landlord to Tenant that same is overdue in which event the delinquent amount shall accrue interest at the Default Rate, (ii) Tenant's failure to pay or agree to indemnify Landlord against any brokerage fee or commission as provided for in paragraph 35 below within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured, or (iii) Tenant's failure to observe or perform any other material provision of this Lease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured, provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances

(b)     Bankruptcy   Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to

H \KANER\CORR\88170_315\444 (5295)

VN0000000062

take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun

30.   <u>Landlord's Remedies</u>    After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

(a)    This Lease is subject to the following limitation   If at any time an Event of Default shall occur, then upon the happening of any one or more of the aforementioned Events of Default, Landlord may give to Tenant a notice of intention to end the Term of this Lease at the expiration of ten (10) days from the date of service of such notice of termination   At the expiration of such ten (10) days, if such Event of Default has not been cured, this Lease and the Term as well as all of the right, title and interest of the Tenant hereunder shall wholly cease and expire, and Tenant shall then quit and surrender the Premises to the Landlord   But notwithstanding such termination, surrender, and the expiration of Tenant's right, title and interest, Tenant's liability under all of the provisions of this Lease shall continue, as provided in this paragraph 30

(b)    If this Lease shall be terminated as herein provided, Landlord, or its agents or employees, may re-enter the Premises at any time and remove therefrom Tenant, Tenant's Agents, and subtenants, and any licensees, concessionaires or invitees, together with any of its or their property, either by summary dispossess proceedings or by any suitable action or proceeding at law   In the event of such termination, Landlord may repossess and enjoy the Premises   Landlord shall be entitled to the benefits of all provisions of law respecting the speedy recovery of lands and tenements held over by Tenant, or proceedings in forcible entry and detainer.   Tenant waives any rights to the service of any notice of Landlord's intention to re-enter provided for by any present or future law, provided, however, that the foregoing shall not be deemed to be a waiver of service of process in connection with the institution of any action or proceeding at law or any notice required to be given by Landlord to Tenant pursuant to paragraph 29.    Notwithstanding any such re-entry, repossession, dispossession or removal, Tenant's liability under all of the provisions of this Lease shall continue, as provided in this paragraph 30.

(c)    In case of re-entry, repossession or termination of this Lease, whether the same is the result of the institution of summary or other proceedings or not,

H \KANER\CORP\66170_3\54\44 (5295)

VN0000000063

62

Tenant shall remain liable (in addition to accrued liabilities) to the extent legally permissible for (i) the (x) Base Rent, Tenant's Contribution and Tenant's Pro Rata Share of Real Estate Taxes and all other charges provided for herein until the date this Lease would have expired (or, in the alternative, an amount equal to the Base Rent, Tenant's Contribution, Tenant's Pro Rata Share of Real Estate Taxes and such other charges, it being understood and agreed that Landlord shall have no right to accelerate the payment of any of such amounts) had such termination, re-entry or repossession not occurred, and (y) reasonable expenses to which Landlord may expend in re-entering the Premises repossessing the same; making good any Event of Default of Tenant, painting, altering, or subdividing the Premises, combining or placing the same in proper repair, reletting the same (including reasonable attorney's fees, marshal's fees and brokerage fees), minus (ii) the net proceeds of any reletting (or the amount the Landlord should have received in the event it exercised reasonable efforts to relet the Premises in the manner specifically set forth in subparagraph 30(d)).  Tenant agrees to pay to Landlord the difference between items (i) and (ii) hereinabove with respect to each month, at the end of such month   Such payment shall be made to Landlord at Landlord's notice address or such other address as Landlord may designate by giving notice to Tenant   Any suit brought by Landlord to enforce collection of such difference for any one month shall not prejudice Landlord's right to enforce the collection of any difference for any subsequent month   In addition to the foregoing, Tenant shall pay to Landlord such sums as the court which has jurisdiction thereover may adjudge reasonable as attorney's fees with respect to any successful lawsuit or action instituted by Landlord to enforce the provisions hereof

(d)    Landlord may relet the whole or any part of said Premises for the whole of the unexpired Term of this Lease, or longer, or from time to time for a shorter period, for any rental then obtainable, giving such concessions of rent and making such special repairs, alterations, decorations and paintings for any new tenant as it may in its sole and absolute discretion deem advisable   Tenant's liability as aforesaid shall survive the institution of summary proceedings and the issuance of any warrant thereunder.  Landlord shall use reasonable efforts to relet or to attempt to relet the Premises   Landlord and Tenant understand and agree that Landlord shall not be obligated to

57

H:\KANER\CORR\68170_3\54\44 (5285)

VN0000000064

63

mitigate rental loss damages by reletting the Premises to a new tenant (i) whose use of the Premises would not be reasonably consistent with the current or proposed tenant mix within the Shopping Center, (ii) which does not have at least five (5) years of retail business experience or a reputable business reputation within the community for their proposed use of the Premises, (iii) which would place an undue burden on the Common Area of the Shopping Center, such as, without limitation, a theater, school, dance hall or restaurant, (iv) which would violate Landlord's mortgage agreement with its mortgagee, or (v) whose proposed use is a "Prohibited Activity" (as set forth in paragraph 18(a)(viii)   In the event Landlord has vacant space in the Shopping Center substantially similar in size to the Premises, Landlord shall not be obligated to first relet the Premises.  In addition, Landlord shall not be obligated to use a real estate broker(s) in its efforts to relet the Premises and Landlord shall not be obligated to spend any money for outside advertising with respect to the renting of the Premises, unless Tenant pays for such outside advertising in advance, and agrees to pay the fees of such real estate broker(s) upon execution of the lease for the Premises.  Landlord shall not be obligated to relet the Premises so long as Landlord has similar vacant space in the Shopping Center nor shall Landlord be obligated to lease a portion or portions of the Premises unless Tenant shall pay to Landlord in advance all costs incurred by Landlord in such reletting, including finish-out costs, but in any event Landlord shall not be obligated to subdivide the Premises in excess of three (3) separately demised premises.

(e)     Tenant hereby expressly waives (to the extent legally permissible), for itself and all persons claiming by, through, or under it, any right of redemption or for the restoration of the operation of this Lease under any present or future law in case Tenant shall be dispossessed for any cause, or in case Landlord shall obtain possession of the Premises as herein provided.

(f)     Self-Help.  Upon the occurrence of the Event of Default by Tenant, at Landlord's option, in addition to any and all other remedies which are set forth herein, and without its actions being deemed an election of remedies or a cure of Tenant's default, Landlord may pay or perform such obligations and, subject to the delivery of the Landlord's Notice of Self-Help described below, collect from the Tenant the Landlord's reasonable and actual cost of performance, including any and all transaction costs and

VN0000000065

64

attorney's fees, plus interest at the Default Rate. The Landlord may, upon notice to the Tenant of its default, or in a subsequent notice related thereto, apprise the Tenant that it intends to exercise its self-help remedy provided for in such notice (the "Landlord's Notice of Self-Help") The Tenant shall in good faith reasonably review the Landlord's Notice of Self-Help and in the event the Tenant has cured (or commenced the cure and is diligently prosecuting same to completion) the default set forth in Landlord's Notice of Self-Help and so notifies Landlord within ten (10) days following Tenant's receipt of Landlord's Notice of Self-Help, Landlord shall not exercise its self-help remedy If Tenant has not objected to Landlord's self-help remedy, as aforesaid, Landlord shall have the right (but not the obligation) to cure such default and after completion by Landlord, Tenant shall, within thirty (30) days after receipt of copies of paid bills and a statement from Landlord, reimburse Landlord for the reasonable amount so expended by Landlord  Notwithstanding the foregoing, if after Landlord exercises its self-help remedy, Tenant disputes the exercise of self-help or the amount due to Landlord in connection therewith, such dispute shall be resolved under the provisions of any simplified procedure for court determination of disputes available under the laws of the State in which the Premises is located and if no such simplified procedure is available, then by arbitration in Newark, New Jersey in accordance with the applicable rules of the American Arbitration Association or its successor and the judgment upon the award may be entered in any court having jurisdiction thereof  The number of arbitrators to be appointed shall be three (3) and each arbitrator shall have had substantial experience in the resolution of landlord/tenant disputes arising out of shopping center leases  If, at the time such arbitration is to be held, the American Arbitration Association is not in existence and has no successor, the arbitrators shall be appointed by another arbitration association mutually agreed to by Landlord and Tenant  If it is finally determined by simplified court procedure or by arbitration that Landlord was not entitled to exercise self-help or the amount of Landlord's self-help costs are not justified, Landlord shall not be entitled to any reimbursement for such work, or shall be entitled to such reduced amount as determined in the proceeding, and same shall have been performed fully or partially at Landlord's sole cost and expense. The cost of any such simplified court procedure or arbitration shall be borne by the non-prevailing party. Notwithstanding the foregoing,

59

H \KANER\CORR\8170_3\54/44 (5295)

if Landlord exercises self-help; such exercise together with Landlord's right of collection of its costs shall be Landlord's sole remedy with respect to the Event of Default by Tenant in question.

(g)    Remedies Are Cumulative:    The various rights and remedies reserved to Landlord herein are cumulative, and Landlord may pursue any and all such rights and remedies set forth in this Lease and/or available at law or in equity, including equitable remedies of injunction and specific performance, whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease) and without its actions being deemed an election of remedies or a cure of Tenant's defaults Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process; such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.  In the event the Landlord elects any remedy not expressly provided by the terms of this Lease, no such remedy shall increase the Tenant's monetary or legal liability in excess of the permissible recoveries by Landlord, in the case of re-entry, repossession or termination, as described in subparagraph (c) above.

31    Events of Landlord's Default, Tenant's Remedies.  Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default". (a) Landlord's failure to make any payments of money due Tenant (subject to Landlord's right of good faith contest) hereunder within ten (10) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate); (b) Landlord's failure to pay, or indemnify Tenant against, any brokerage fee or commission as provided for in paragraph 35 below within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured, or (c) Landlord's failure to perform any nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be

VN0000000067

66

reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances.

Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity, and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (i) pay or perform such obligations and, subject to delivery of the Tenant's Notice of Self-Help described below, offset Tenant's reasonable and actual cost of performance, including any and all transaction costs and attorneys' fees, plus interest at the Default Rate, against the Base Rent, CAM Charges and any and all other amounts and charges due Landlord hereunder or (ii) terminate this Lease and sue for damages, including interest at the Default Rate, transaction costs and attorneys' fees as specified in subparagraph (i) above In the event of a default pursuant to subparagraph (i) above, the Tenant may, upon notice to the Landlord of its default or in a subsequent notice, apprise the Landlord that it intends to exercise its self-help remedy provided for in such notice (the "Tenant's Notice of Self-Help") The Landlord shall in good faith reasonably review the Tenant's Notice of Self-Help and in the event that the Landlord has cured (or commenced the cure and is diligently prosecuting same to completion) the default set forth in Tenant's Notice of Self-Help and so notifies Tenant within ten (10) days following Landlord's receipt of Tenant's Notice of Self-Help, Tenant shall not exercise its self-help remedy If Landlord has not objected to Tenant's self-help remedy, as aforesaid, Tenant shall have the right (but not the obligation) to cure such default and after completion by Tenant, Landlord shall, within thirty (30) days after receipt of copies of paid bills and a statement from Tenant, reimburse Tenant for the reasonable amount so expended by Tenant minus Tenant's Pro Rata Share if any, of such expenditure If Landlord fails to reimburse Tenant, as aforesaid, and if no dispute exists in connection therewith as provided below, Tenant may deduct the amount owed to it by Landlord from the next installments of Base Rent, CAM Charges and any other amounts due hereunder. Notwithstanding the foregoing, if after Tenant exercises self-help, Landlord disputes the exercise of self-help by Tenant or if Landlord disputes the

61

amount due to Tenant in connection therewith, such dispute shall be resolved under the provisions of any simplified procedure for court determination of disputes available under the laws of the State in which the Premises is located and if no such simplified procedure is available, then by arbitration in Newark, New Jersey in accordance with the applicable rules of the American Arbitration Association or its successor and the judgment upon the award rendered may be entered in any court having jurisdiction thereof  The number of arbitrators to be appointed shall be three (3) and each arbitrator shall have substantial experience in the resolution of landlord/tenant disputes arising out of shopping center leases.  If, at the time such arbitration is to be held, the American Arbitration Association is not in existence and has no successor, the arbitrators shall be appointed by another arbitration association mutually agreed to by Landlord and Tenant  If any such dispute is determined by simplified court procedure or by arbitration and if Landlord does not reimburse Tenant for the amount owed to it by Landlord, as finally determined, within ten (10) days following the final determination, Tenant may deduct such amount from the next installments of Base Rent, CAM Charges and any other amounts due hereunder   If it is finally determined by simplified court procedure or by arbitration that Tenant was not entitled to exercise self-help, Tenant shall not be entitled to any reimbursement for such work, and same shall have been performed at Tenant's sole cost and expense   The cost of any such simplified court procedure or arbitration shall be borne by the non-prevailing party   The foregoing provisions of this paragraph 31 shall govern any and all of Tenant's rights of abatement, self-help and/or offset set forth in this Lease.  The various rights and remedies reserved to Tenant herein are cumulative, and Tenant may pursue any and all rights and remedies set forth in this Lease and/or available at law or in equity, whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease) and without its actions being deemed an election of remedies or a cure of Landlord's defaults  In the event the Tenant elects any remedy not expressly provided by the terms of this Lease, no such remedy shall increase the Landlord's monetary or legal liability in excess of the permissible recoveries by Tenant set forth herein.  Notwithstanding the foregoing, if Tenant exercises self-help, such exercise together with Tenant's right of offset shall be Tenant's sole remedy with respect to the Event of Default by Landlord in question

H\KANER\CORR\88170_3\54/44 (5295)

VN0000000069

32.   Waiver.  If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Lease.  Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

33.   Compliance with Applicable Laws.  During the Term, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Shopping Center, and of the board of fire underwriters, respecting the Premises, the improvements, Tenant's use and occupancy of the Premises, Tenant's personal property and those portions of the Shopping Center which are Tenant's obligation to maintain and repair pursuant to paragraph 10 hereof.  In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent.  During the Term, Landlord shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Shopping Center respecting the Common Areas and other portions of the Shopping Center which are Landlord's obligation to maintain and repair pursuant to the applicable provisions of this Lease.  In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and deduct the reasonable cost thereof plus interest at

VN0000000070

the Default Rate from Landlord with the next installment or installments of Base Rent. The right of the Landlord and Tenant to collect the cost of any self-help remedy performed hereunder shall be subject to the provisions of paragraphs 30 and 31, as applicable, relating to the limitation of the right of offset in the event of the exercise of self-help remedies by other parties.

34.   **Notices**.   Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given when received or refused after mailing a written notice by certified mail, postage prepaid, return receipt requested or after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

If to Tenant:  CIRCUIT CITY STORES, INC.
Deep Run I
9950 Mayland Drive
Richmond, Virginia 23233
Attention: Corporate Secretary

with a copy to:  CIRCUIT CITY STORES, INC.
Deep Run I
9950 Mayland Drive
Richmond, Virginia 23233
Attention: Vice President of Real Estate

If to Landlord:  c/o Vornado Realty Trust
Park 80 West, Plaza II
Saddle Brook, New Jersey 07663
Attention: Vice President, Real Estate

with a copy to:  c/o Vornado Realty Trust
Park 80 West, Plaza II
Saddle Brook, New Jersey 07663
Attention: Chief Financial Officer

for payment of
rentals only:  All payments under this Lease should be made payable to the Landlord and addressed to Vornado Realty Trust, P.O. Box 11665, Newark, New Jersey 07101-4665, or such other payee or address as Landlord may designate.

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

64

H:\KANER\CORR\68170_354/44 (5295)


VN0000000071

70

35. Brokers. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for Garrick-Aug Associates Store Leasing, Inc., (it is understood and agreed that Garrick-Aug Associates Store Leasing, Inc. will separately compensate The Equity Group, who is also representing the Tenant in this matter), which shall be paid a commission by Landlord pursuant to their separate written agreement. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt. Failure of the indemnifying party to comply with this paragraph shall be deemed a default upon which the indemnified party may exercise any and all such remedies set forth in this Lease

36. Miscellaneous.

(a)   Headings and Gender.  All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b)   Construction. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c)   Waiver of Jury Trial. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d)   Relationship of Landlord-Tenant.  Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein

(e)   Entire Agreement; Merger   This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full

65

H:\KANER\CORR\88170_3\54\44 (5295)

and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f)   Attorneys' Fees.   In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g)   Partial Invalidity.   If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof

(h)   Consents.   Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i)   Holidays.   If the day on which rent or any other payment due hereunder is payable falls on a Saturday, Sunday or on a legal holiday, it shall be payable on the following business day.

(j)   Applicable Law.   This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

(k)   Successors and Assigns.   All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

66

VN0000000073

72

(l)   Counterparts.  This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m)   Trademarks and Trade Names.  All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

37.   Effectiveness of Lease; Tenant's Right to Terminate.  Notwithstanding the execution of this Lease or any provision hereof to the contrary, the parties hereto agree that the effectiveness of this Lease is expressly conditioned upon the complete satisfaction (or waiver) of the following condition:

Landlord's delivery of subordination, non-disturbance and attornment agreements executed by any and all existing Mortgagees in the form attached hereto as Exhibit H within twenty (20) days following the date of execution hereof.

The existence of the foregoing condition is solely for the benefit of Tenant, and Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event the foregoing condition shall not be met, satisfied or waived by the date stated, the parties hereto expressly agree that Tenant shall have the right as its sole remedy to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord, within twenty-five (25) days after the execution hereof, a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of the foregoing condition.  In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14(l), hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

The delivery of this executed Lease by Tenant to Landlord constitutes the offer of the Tenant to the Landlord to bind Landlord and Tenant to the provisions of this

67

H:\KANER\CORR\88170_3\5444 (5235)

VN0000000074

Lease, subject to the conditions set forth in this paragraph 37. It is a further condition to the effectiveness of this Lease that upon receipt of the executed Lease from Tenant, the Landlord, without delay, execute and return same to the Tenant in accordance with any instructions delivered by Tenant or its legal counsel. In the event the Landlord fails to immediately execute and return the Lease, the Tenant may at any time after delivery of the Lease as its sole remedy provide written notice to the Landlord that Tenant revokes its delivery of the executed Lease and thereupon the Landlord shall be immediately obligated to return to the Tenant all executed original counterparts as well as any copies of this Lease in the possession of the Landlord, and this Lease shall thereafter be null and void.

38.    Confidentiality.  The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of this transaction.  This confidentiality agreement extends to any developers, bankers, lawyers, accountants, employees, agents or any other persons acting on behalf of the parties hereto.  The parties hereto agree to use their best reasonable efforts to avoid discussing with, or disclosing to, any third parties (except those parties listed above) any of the terms, conditions or particulars in connection with this transaction.  It is specifically agreed by way of illustration, but not by limitation, that the covenant of confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any governmental law or ordinance, but this covenant of confidentiality shall be breached if Landlord, or any of Landlord's developers, bankers, accountants, agents, lenders, lawyers or other similar parties, discloses the content of, or delivers a copy of this Lease to, any third party without the express written consent of all parties to this Lease.  Any breach of this confidentiality agreement shall constitute an Event of Default under the terms and provisions of this Lease.

39.    Continuous Use Recapture.    Notwithstanding anything to the contrary contained in the Lease, Landlord and Tenant agree that if Tenant discontinues operation of its business in all or a portion of the Premises for a continuous period of two hundred seventy (270) days, exclusive of cessations due to assignment or subletting (provided

VN0000000075

that such assignee or sublessee must reopen the Premises for business within one hundred eighty (180) days after the expiration of said two hundred seventy (270) day period), casualty, condemnation, force majeure or remodeling, Landlord may terminate the Lease and recapture the portion of the Premises in which the Tenant has ceased operation, upon thirty (30) days notice and payment to Tenant (provided that Tenant is Circuit City Stores, Inc. or a transferee pursuant to paragraph 17(c) or 17(e)(x) or (y)) of the Unamortized Costs, which payment shall be made to Tenant within ten (10) days after Tenant vacates the Premises in accordance with the provisions of paragraph 26 hereof. In the event that the Landlord elects to recapture a portion of the Premises, this Lease shall be modified to reflect the reduced floor area of the Premises and the corresponding reductions in the payment of Base Rent and other charges hereunder and Landlord and Tenant shall be released from all liability accruing thereafter under this Lease with respect to such portion of the Premises.

40.   Liability of Landlord.   Notwithstanding anything to the contrary herein, neither Landlord, nor any director, officer, trustee or direct or indirect beneficial owner of Landlord or of any parent or other affiliate of Landlord shall have any personal liability with respect to any provision of this Lease, or any obligation or liability arising hereunder or in connection herewith and none of their assets (other than the Shopping Center) shall be subject to levy, execution or other judicial process for the satisfaction of Tenant's claims. Tenant shall look solely to the interest of the then owner of the Shopping Center in the Shopping Center or the net proceeds of the sale of the Shopping Center or to the net proceeds and profits from the operation of the Shopping Center for the satisfaction of any remedies of Tenant in the event of a breach by the Landlord of any of its obligations. Such exculpation of liability shall be absolute and without any exception whatsoever, except as set forth herein to the contrary. Notwithstanding the foregoing, such exculpation shall not apply to any fraud by the Landlord or a misappropriation by Landlord of. (i) CAM Charges; (ii) Real Estate Taxes or (iii) insurance proceeds or condemnation awards.

With respect to any provision of this Lease which provides, in effect, that Landlord shall not unreasonably withhold, condition or delay any consent or any approval, Tenant, in no event, shall be entitled to make, nor shall Tenant make, any claim for, and Tenant

H:\KANER\CORR\98170_9\54/44 (5295)

VN0000000076

hereby waives any claim for money damages; nor shall Tenant claim any money damages by way of setoff, counterclaim or defense, based upon any claim or assertion by Tenant that Landlord has unreasonably withheld or unreasonably delayed any consent or approval; but Tenant's sole remedy shall be an action or proceeding to enforce any such provision, or for specific performance, injunction or declaratory judgment.

All property belonging to Tenant and/or Tenant's Agents (whether real, personal or mixed) at any time located in or upon the Shopping Center shall be at the risk of the Tenant only, and Landlord shall not become liable for any damage to said property or to Tenant, or to any other person or property, caused by water leakage, steam, sewerage, gas or odors or for any damage whatsoever done or occasioned by or from any boiler, plumbing, gas, water, steam or other pipes, or any fixtures or equipment or appurtenances whatsoever, or for any damage arising from any act or neglect or arising by reason of the use of, or any defect in, the Premises or any of the fixtures, equipment or appurtenances therein contained, or by the act or neglect of any other person or caused in any manner whatsoever, except if caused by the negligence of Landlord, its agents, contractors or employees, subject to the provisions of paragraph 14(g) hereof.

4.1    Liability of Tenant.    With respect to any provision of this Lease which provides, in effect, that Tenant shall not unreasonably withhold, condition or delay any consent or any approval, Landlord, in no event, shall be entitled to make; nor shall Landlord make, any claim for, and Landlord hereby waives any claim for money damages, nor shall Landlord claim any money damages by way of setoff, counterclaim or defense, based upon any claim or assertion by Landlord that Tenant has unreasonably withheld or unreasonably delayed any consent or approval; but Landlord's sole remedy shall be an action or proceeding to enforce any such provision, or for specific performance, injunction or declaratory judgment.

All property belonging to Landlord and/or its agents, contractors or employees (whether real, personal or mixed) at any time located in or upon the Shopping Center shall be at the risk of the Landlord only, and Tenant shall not become liable for any damage to said property or to Landlord, or to any other person or property, caused by water leakage, steam, sewerage, gas or odors or for any damage whatsoever done or

70                        H:\KANER\CORR\66170_3\54\44 (5295)

occasioned by or from any boiler, plumbing, gas, water, steam or other pipes, or any fixtures or equipment or appurtenances whatsoever, or for any damage arising from any act or neglect or arising by reason of the use of, or any defect in, the Premises or any of the fixtures, equipment or appurtenances therein contained, or by the act or neglect of any other person or caused in any manner whatsoever, except if caused by the negligence of Tenant and/or Tenant's Agents, subject to the provisions of paragraph 14(g) hereof.

42    Operating Statements.  Tenant shall submit to Landlord, promptly after request is made therefor by Landlord, but not more often than four times per year, the amount of store sales realized from the Premises.

43.   No Offset.  Base Rent, CAM Charges and Tenant's Pro Rata Share of Real Estate Taxes shall be paid without notice, demand, counterclaim, offset, deduction, defense, or abatement, except as otherwise specifically set forth in this Lease.

44    Entry.

(a)    Upon at least three (3) business days prior written notice and during any reasonable time before and after (during non-business hours) the Commencement Date, when accompanied by a representative of Tenant, Landlord and/or any Mortgagee may enter upon the Premises, any portion thereof and any appurtenances thereto (with men and materials, if required) for the purpose of: (i) inspecting same; (ii) making such repairs, replacements or alterations which it may be required to perform as herein provided or which are required in order to comply with laws and court orders or to prevent waste or deterioration, regardless of whether Landlord is responsible for such repairs, maintenance or compliance with laws or which it may deem necessary for the Premises provided Landlord has complied with any applicable notice and cure provisions of this Lease; and (iii) during the last six (6) months of the Term, showing the Premises to prospective purchasers, mortgagees or lessees.

(b)    Tenant shall permit Landlord to maintain and repair pipes, cables, conduits, plumbing, vents and wires in, to and through the Premises as and to the extent that Landlord may now or hereafter deem to be necessary or appropriate for the proper operation and maintenance of the Shopping Center.

H:\KANE\CORR\68170_3\54/44 (5235)

VN0000000078

(c)    During any such entry by Landlord into the Premises, pursuant to subparagraphs (a) and (b) above, Landlord shall use reasonable efforts and proceed with due diligence, in order to minimize interference with the conduct of Tenant's business. Except in emergencies, or otherwise set forth above, any entry by Landlord into the Premises for repair purposes shall not be during Tenant's normal business hours and after Landlord has given Tenant at least three (3) business days prior notice, which notice shall set forth the scope of the work, the areas where such work shall be performed and the approximate commencement date of such work.

In addition, Landlord shall not place or install any utility lines, pipes, ducts, conduits or the like in the Premises, unless such work is performed in the non-selling areas of the Premises along walls or below the floor or above the hung ceiling of any portion of the Premises. If Landlord installs repairs, replaces or maintains any such items and any damage is done to the Premises or to Tenant's property, Landlord shall promptly repair such damage.

45.    **INTENTIONALLY OMITTED.**

46    Interest.  Any payment required to be made by Landlord or Tenant under the provisions of this Lease not made by Landlord or Tenant when and as due shall thereupon be deemed to be due and payable to the other on demand with interest thereon at the Default Rate computed from the date when the particular amount became due to the date of payment thereof.

47    Consequential Damages.  Landlord and Tenant agree that as to the other, Landlord and Tenant shall not have any right to sue for or collect, and Landlord and Tenant shall never have any liability or responsibility whatsoever for, any consequential, speculative or indirect damages whether proximately or remotely related to any default of the other under this Lease or any act, omission or negligence of Tenant and/or Tenant's Agents or of Landlord, its agents, contractors or employees, as the case may be, and Landlord and Tenant hereby waive any and all such rights.

48.    Additional Charges.  In addition to Base Rent, Tenant covenants and agrees to pay to Landlord all other sums and charges which are to be paid by Tenant in connection with or pursuant to the provisions of this Lease. Except as otherwise

H:\KANER\CORR\99175_8\54\44 (5285)

VN0000000079