78

T

provided in this Lease, such amounts shall be due and payable within thirty (30) days following the date on which Tenant is given notice that such charges are due.

49.   <u>Financial Statements</u>.   Tenant shall submit to Landlord, promptly after request is made therefor by Landlord in connection with a sale or financing of the Shopping Center, current financial statements certified as complete and correct by a certified public accountant.   Landlord shall accept Tenant's then current financial statement prepared in connection with the public trading of its stock.   Any cost incurred by Tenant in connection herewith shall be borne by Landlord.

50.   <u>Unamortized Costs</u>.   Tenant shall submit to Landlord, within twenty (20) days after request is made therefor by Landlord, a statement of the amount of the then Unamortized Costs.

51.   <u>Electrical Lines</u>.   If the Tenant installs any electrical equipment that overloads the lines in the Premises or the Shopping Center, Landlord may require Tenant to make whatever changes to such lines as may be necessary to render the lines in good order and repair and in compliance with all applicable legal requirements.

52   <u>Emergency Repairs</u>.   If, in an emergency, it shall become necessary to make promptly any repairs or replacements required to be made by Tenant, Landlord or any Mortgagee may, upon reasonable notice to Tenant under the circumstances, enter the Premises and proceed to have such repairs or replacements made and pay the cost of such repairs or replacements.   Within thirty (30) days after Landlord renders a bill for such repairs or replacements, Tenant shall reimburse Landlord for the reasonable costs of making such repairs.   Landlord agrees to use due diligence and reasonable efforts to make all such repairs in a timely and non-disruptive manner.

53   <u>Relocation of Premises</u>.

(a)   Landlord, at its option, at any time after the thirty-sixth (36th) month of the Term, shall have the right to relocate the then existing Premises ("Original Premises") within the Shopping Center, subject to and in accordance with the following:

(i)   Such relocation shall be due to the fact that Landlord intends to develop all or a part of the undeveloped land adjacent to the developed portion of the Shopping Center and demolish the building in which the Original Premises is located.

H:\KANER\CORR\88170_3\54/44 (5295)

VN0000000080

(ii)    If Landlord so elects to relocate Tenant to a new Premises ("New Premises"), it shall do so by notice to Tenant ("Landlord's Relocation Notice"), which notice shall be accompanied by a site plan similar to Exhibit A, attached hereto, ("New Exhibit A"), indicating the location of the New Premises. Within thirty (30) days after Tenant's receipt of such New Exhibit A, Tenant may elect to move the New Premises to another location within the areas designated as "Proposed Retail" on such New Exhibit A. If Tenant fails to choose such other location within said thirty (30) day period, Tenant shall be deemed to have accepted the location of the New Premises chosen by Landlord on such New Exhibit A. New Exhibit A shall contain the same features as are shown on Exhibit A attached hereto, including but not limited to the delineation of Tenant's Preferred Area which shall include, at a minimum, Tenant's primary parking field (consisting of at least five (5) parking spaces per 1,000 square feet of leasable area in the Building), access ways to dedicated thoroughfares and rear truck access to the New Premises.

(iii)    Landlord shall, at its expense construct the New Premises substantially similar (including all of the same features such as, without limitation, customer pick-up area, car stereo installation area, loading docks, etc.) to the Original Premises as same exists at the time Landlord sends Landlord's Relocation Notice ("Landlord's Relocation Work"), utilizing Tenant's original plans and specifications, when feasible. Landlord's Relocation Work shall not include the installation of Tenant's trade fixtures and equipment, furniture, furnishings or other personal property (collectively, "Tenant's Personalty"). Any substantial changes in the size or dimensions of the New Premises (from the layout of the Original Premises) shall be subject to the approval of Tenant.

(iv)    The layout of the New Premises shall comply with the following.

(x)    The depth and width of the New Premises shall not vary by more than five (5%) percent from the dimensions of the Original Premises;

(y)    The New Premises shall not be in an interior corner location; and

74

H:\KANER\CORR\88170_3\54/44 (5295)

(z)   The front of the New Premises shall face the major parking area of the Shopping Center.

(b)   If Landlord elects to relocate the Original Premises, as aforesaid, the following shall apply:

1.   Effective as of the "New Delivery of Possession" (as hereinafter defined), Exhibit A attached to the Lease shall be deemed to be deleted in its entirety, and all references to Exhibit A in the Lease shall be deemed to refer to the New Exhibit A.

2.   Effective as of the New Delivery of Possession, except as otherwise set forth herein and except to the extent that Tenant is still in possession of the Original Premises, all references in this Lease to the Premises shall be deemed to refer to the New Premises.

3.   Upon the performance of Landlord's Relocation Work, Tenant shall accept possession of the New Premises and shall, at its own expense, install Tenant's Personalty in the New Demised Premises. Within thirty (30) days after Landlord's receipt of a statement therefor, Landlord shall reimburse Tenant for the reasonable cost of removing (from the Original Premises) and installing (in the New Premises) Tenant's Personalty.

4.   "New Commencement Date" means the earlier to occur of. (a) the 180th day next following the New Delivery of Possession; or (b) the date Tenant opens the New Premises for business.  Promptly after the New Delivery of Possession, Tenant shall vacate and surrender the Original Premises to Landlord in accordance with the provisions of paragraph 26 including, without limitation, the removal of Tenant's signs from the Original Premises and completely relocate Tenant's Personalty and business operation previously located and conducted in the Original Premises to the New Premises ("Tenant's Relocation"). Tenant shall complete Tenant's Relocation within forty-five (45) days ("Outside Date") after the New Commencement Date, time being of the essence.  If Tenant fails to complete Tenant's Relocation on or before the Outside Date, then from and after the Outside Date, Tenant shall be deemed to be holding-over as a month-to-month tenant with respect to the Original Premises and the provisions of paragraph 26 shall apply.  Notwithstanding the foregoing, Tenant shall

75                    H KANER\CORR\68170_3\64/44 (5285)

not be obligated to perform Tenant's Relocation during the period from October 1 through January 31.

5.    For the purposes of determining the Expiration Date and the period of the Term, the provisions of paragraph 3 shall remain unchanged and the original Commencement Date shall continue to be the commencement of the Term.

6.    "New Delivery of Possession" shall mean and shall be deemed to have occurred when Landlord's Relocation Work shall have been completed to the extent Tenant may commence Tenant's Relocation and Landlord shall have tendered possession of the New Premises to Tenant.

7.    Tenant shall continue to pay Base Rent and all other charges payable pursuant to this Lease with respect to the Original Premises until the later to occur of: (i) the New Commencement Date; or (ii) the completion of Tenant's Relocation. Notwithstanding the foregoing, during any period, occurring during the thirty (30) days next following the New Commencement Date, that Tenant is performing Tenant's Relocation and Tenant is not open for business in the Original Premises, the Base Rent, Tenant's Pro Rata Share of Real Estate Taxes and Tenant's Contribution payable with respect to the Original Premises shall be abated, but in no event shall such abatement exceed the Base Rent, Tenant's Pro Rata Share of Real Estate Taxes and Tenant's Contribution due and payable for forty-five (45) days.

(c)    At any time after the giving of Landlord's Relocation Notice but prior to the New Delivery of Possession, Landlord may, at its option, elect not to proceed with the proposed relocation, in which event this Lease shall remain in full force and effect with respect to the Original Premises, and Landlord shall continue to have the right to relocate the Original Premises as provided above

54.    Existing Tenants.    Tenant acknowledges that, at the time of the execution of this Lease, one (1) of the Existing Buildings is occupied by Oak Furniture Depot, Inc ("Oak") and one (1) of the Existing Buildings is occupied by MJA Amer, Inc. ("Mr. G"). Oak and Mr. G are individually and collectively referred to as the "Existing Tenant(s)".

Landlord shall, on or before the execution of this Lease, exercise its option to terminate the tenancy of Oak as provided in the lease, executed between Landlord and Oak.

H:\KANER\CORR\85170_3\54/44 (5295)

VN0000000083

82

Landlord shall, promptly after the execution of this Lease, use reasonable efforts to enter into an agreement with Mr. G, terminating the tenancy of Mr. G upon the payment by Landlord to Mr. G of not more than $750,000.00, of which amount Landlord agrees to pay the sum of $500,000.00 ("Mr. G Termination Agreement").

Promptly after the Existing Tenants leases are terminated and the Existing Buildings are surrendered to Landlord, Landlord shall, at its expense, remove any and all asbestos from the Existing Buildings.

Within twenty (20) days after Delivery of Possession and receipt of evidence that all existing lease agreements have been terminated, Tenant shall pay to Landlord an amount up to, but not exceeding, $250,000.00, as partial reimbursement for the costs incurred by Landlord in connection with the termination of the tenancy of Mr. G.

Landlord shall use its best efforts to cause Delivery of Possession to occur within seventy (70) days after the execution and delivery of this Lease.

If Delivery of Possession has not occurred by the 180th day next following the execution and delivery of this Lease, then this Lease shall automatically terminate at 11:59 p.m. on said 180th day, as if such date was the Expiration Date set forth herein and except for accrued liabilities, neither Landlord nor Tenant shall have any further liabilities or obligations to each other pursuant to this Lease.

55. Authorized Signatory. Landlord has appointed Vornado Realty Trust ("Vornado"), whose address is Park 80 West, Plaza II, Saddle Brook, New Jersey 07663, as its authorized signatory to execute this Lease. Tenant acknowledges that Vornado will not be acting in a personal capacity, but rather in a representative capacity as the authorized signatory for Landlord. Tenant agrees that it shall look only to Landlord for the performance of Landlord's obligations under this Lease and for the satisfaction of any right of Tenant for the collection of any claim, judgment or other judicial determination (whether at law or in equity) or arbitration award requiring the payment of money, and neither Vornado nor any of its agents, incorporators, shareholders, beneficiaries, trustees, officers, directors, employees, partners, principals (disclosed or undisclosed) or affiliates or any of their respective assets or property shall be subject to any claim, judgment, levy, lien, execution, attachment or other enforcement procedure (whether at law or in equity) for the satisfaction of Tenant's rights and remedies under or with

77

H:\KANER\CORR\85170_3\54/44 (5295)

respect to this Lease, the relationship of Landlord and Tenant under this Lease or under law, or Tenant's use and occupancy of the Demised Premises or any liability or obligation of Landlord to Tenant. The limitation of Vornado's liability under this Lease, including any waiver of subrogation rights, shall apply with equal force and effect to, and as a limitation on and a waiver of any liability of, Vornado.

WITNESS the following signatures and seals:

**LANDLORD**

STAR UNIVERSAL L.L.C.,
a New Jersey limited liability company

ATTEST:

By:    Vornado Realty Trust, as its
       Authorized Signatory

Name:
Title:    JOSEPH MACNOW, VICE PRESIDENT
          CHIEF FINANCIAL OFFICER

LEE D. RATNER
ASSISTANT SECRETARY

78

H:\KANER\CORR\68170_3154\44 (5295)



VN0000000085

84

**TENANT**

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

By: _____
Benjamin B. Cummings, Jr.
Vice President

Witness _____

Witness _____

Wayne, NJ

VN0000000086

## EXHIBIT "A"

### SITE PLAN

Components:          Premises

                     Building Pad

                     Tenant's Preferred Area

1

H:\KANER\CORR\85170_3\54/44 (8295)

86

## EXHIBIT "A-1"

## SHOPPING CENTER LEGAL DESCRIPTION

ALL that tract or parcel of land and premises, situate, lying and being in the Township of Wayne, County of Passaic and State of New Jersey, more particularly described as follows:

BEGINNING at a point in the northerly right-of-way line of New Jersey State Highway Route 46 where the same is intersected by the line dividing Lots 7 and 8 in Block 400, on the Official Tax Map of the Township of Wayne, said point being distant 368.39 feet along a bearing of North 85°33'00" East from the intersection of said northerly right-of-way line of New Jersey State Highway Route 46 and the easterly right-of-way line of Galeci Drive and running thence;

1. North 06°19'58" West, along said division between Lots 7 and 8 in Block 400, distant 200.02 feet to a point; thence,

2. North 85°33'54" East, distant 7.31 feet to a point; thence,

3. North 06°20'04" West, along the easterly line of Lots 8 and 9 in Block 400, distant 86.18 feet to a point; thence,

4. North 33°36'16" West, along said easterly line of Lots 9 and 10 in Block 400, distant 484.82 feet to a point; thence,

5. North 57°08'05" East, along the southerly line of Lot 11 in Block 400, distant 160.27 feet to a point; thence,

6. North 27°39'12" East, continuing along said southerly line of Lot 11 in Block 400, distant 345.56 feet to a point; thence,

7. North 45°14'24" East, distant 56.26 feet to a point in the westerly line of North Jersey District Water Supply Commission; thence,

8. South 56°55'01" East, along said westerly line of North Jersey District Water Supply Commission, distant 300.35 feet to a point; thence,

9. South 56°35'52" East, continuing along same, distant 391.70 feet to a point; thence,

10. South 52°09'21" East, still along westerly line of North Jersey District Water Supply Commission, distant 63.92 feet to a point; thence,

11. South 42°21'49" East, still along same, distant 119.73 feet to a point; thence,

1

H:\KANER\CORR\88170_3\54\44 (5285)

12   South 26°22'12" East, still along said westerly line of North Jersey District Water Supply Commission, distant 153.44 feet to a point; thence,

13   South 11°45'50" East, still along the same, distant 109.63 feet to a point; thence,

14.   South 02°39'29" West, distant 142.07 feet to a point; thence,

15.   South 15°13'03" West, still along said westerly line of North Jersey District Water Supply Commission, distant 170.20 feet to a point; thence,

16.   South 07°48'39" West, continuing along said westerly line, distant 17.95 feet to a point in the aforementioned northerly right-of-way line of New Jersey State Highway Route 46; thence,

17.   South 88°38'39" West, along said northerly line of New Jersey State Highway Route 46, distant 100.00 feet in the line dividing Lots 1 and 2 in Block 400, thence,

18.   North 01°21'25" West, distant 200.00 feet to a point in the northerly line of Lot 2 in Block 400; thence;

19.   South 88°38'44" West, along said northerly line of Lot 2, distant 100.00 feet to a point in the line dividing Lots 2 and 3 in Block 400; thence,

20.   South 01°21'25" East, along said line dividing Lots 2 and 3 in Block 400, distant 200.03 feet to a point in the aforementioned northerly right-of-way line of New Jersey State Highway 46; thence,

21   Curving to the left, in a westerly direction, along a curve having a radius of 4,051.00 feet, an arc length of 203.18 feet, to a point of tangency; thence,

22.   South 85°33'00" West, continuing along said northerly right-of-way line of New Jersey State Highway Route 46, distant 387.30 feet to the above described point or place of BEGINNING.


Note for Information:   Being known and designated as Tax Lots 1,3,4,5,6,7 in Block 400 on the Tax Map of the Township of Wayne, County of Passaic, State of New Jersey.

Note for Information:   Being commonly known as 571 Route 46 & Brickyard Road, Wayne, New Jersey.

H:\KANER\CORP\68170_3\54\64 (5295)

VN0000000089

88

## EXHIBIT "A-2"

### LAND LEGAL DESCRIPTION

Beginning at a point in the northerly right-of-way line of New Jersey State Highway Route #46 where the same is intersected by the line dividing Lots 7 and 8 in Block 400, on the Official Tax Map of the Township of Wayne, said point being distant 368.39 feet along a bearing of North 85 degrees 33 minutes 00 seconds East from the Intersection of said northerly right-of-way line of New Jersey State Highway Route 46 and the easterly right-of-way line of Gales: Drive and running thence:

1.      North 06°-19'-58" West, along said division line between Lots 7 and 8 in Block 400, distant 200.02 feet to a point; thence,

2.      North 85°-33'-54" East, distant 7.31 feet to a point; thence,

3.      North 06°-20'-04" West, along the easterly line of Lots 8 and 9 in Block 400, distant 122.18 feet to a point; thence,

4.      North 30°-52'-39" East, distant 40.48 feet to a point of curvature; thence,

5       Northeasterly, easterly, southeasterly, along a curve to the right having a radius of 30.00 feet an arc length of 64.41 feet to a point of tangency; thence,

6.      South 19°-32'-44" East, distant 24.00 feet to a point; thence,

7.      North 70°-27'-16" East, distant 10.00 feet to a point; thence,

8       North 04°-39'-02" West, distant 24.00 feet to a point; thence,

9       North 85°-20'-58" East, distant 1.67 feet to a point of curvature; thence,

        Northeasterly, northerly, northwesterly, along a curve to the left having a radius of 3.00 feet an arc length of 4.71 feet to a point of tangency; thence,

10.     North 04°-39'-02" West, distant 3.00 feet to a point; thence,

11.     North 85°-20'-58" East, distant 20.50 feet to a point; thence,

12      South 04°-39'-02" East, distant 4.50 feet to a point of curvature; thence,

13.     Southeasterly, easterly, northeasterly, along a curve to the left having a radius of 2.00 feet an arc length of 3.14 feet to a point of tangency; thence,

14.     North 85°-20'-58" East, distant 40.00 feet to a point of curvature; thence

H:\KANER\CORR\53170_3\54\44 (5295)

VN0000000090

15      Northeasterly, northerly, northwesterly, along a curve to the left having a radius of 2.00 feet an arc length of 3.14 feet to a point of tangency; thence,

16.     North 04°-39'-02" West, distant 3.00 feet to a point; thence,

17.     North 85°-20'-58" East, distant 19.00 feet to a point; thence,

18.     South 04°-39'-02" East, distant 3.00 feet to a point of curvature; thence,

19.     Southeasterly, easterly, northeasterly, along a curve to the left having a radius of 2.00 feet an arc length of 3.14 feet to a point of tangency; thence,

20.     North 85°-20'-58" East, distant 18.50 feet to a point; thence,

21.     South 04°-39'-02" East, distant 18.50 feet to a point; thence,

22.     South 85°-34'-20" West, distant 18.92 feet to a point of curvature; thence,

23.     Southwesterly, southerly, southeasterly, along a curve to the left having a radius of 3.00 feet an arc length of 4.71 feet to a point of tangency; thence,

24.     South 04°-23'-37" East, distant 43.01 feet to a point of curvature; thence,

25.     Southeasterly, easterly, northeasterly, along a curve to the left having a radius of 3.00 feet an arc length of 4.71 feet to a point of tangency; thence,

26.     North 85°-38'-44" East, distant 351.22 feet to a point of curvature; thence,

27.     Northeasterly, easterly, southeasterly, along a curve to the right having a radius of 3.61 feet an arc length of 5.61 feet to a point of tangency; thence,

28.     South 05°-14'-21" East, distant 40.90 feet to a point of curvature; thence,

29.     Southeasterly, easterly, northeasterly, along a curve to the left having a radius of 5.51 feet an arc length of 8.29 feet to a point of tangency; thence,

30.     North 88°-30'-41" East, distant 178.35 feet to a point of curvature, thence,

31.     Northeasterly, easterly, southeasterly, along a curve to the right having a radius of 6.46 feet an arc length of 6.76 feet to a point of tangency; thence,

32.     South 31°-32'-58" East, distant 147.44 feet to a point of curvature; thence,

33.     Southeasterly, along a curve to the left having a radius of 58.50 feet an arc length of 35.20 feet to a point and the westerly line of Lot 1 in Block 100; thence,

2

VN0000000091

34    South 15°-13'-03" West, along said westerly line of Lot 1 in Block 100, distant 22.54 feet to a point; thence,

35.    Northwesterly, along a curve to the right having a radius of 95.75 feet an arc length of 63.10 feet to a point of tangency; thence,

36    North 31°-32'-58" West, distant 117.37 feet to a point of curvature; thence,

37.    Northwesterly, along a curve to the left having a radius of 15.27 feet an arc length of 3.92 feet to a point; thence,

38.    South 88°-38'-44" West, along the northerly line of Lot 2 in Block 400, distant 105.69 feet to a point; thence

39.    South 01°-21'-25" East, along the line dividing Lots 1 and 2 in Block 400, distant 200.03 feet to a point in the aforementioned northerly right-of-way line of New Jersey State Highway Route #46; thence,

40.    Curving to the left, in a westerly direction, along a curve having a radius of 4,051.00 feet an arc length of 203.18 feet, to a point of tangency; thence,

41.    South 85°-33'-00" West, continuing along said northerly right-of-way line of New Jersey State Highway Route #46, distant 387.30 feet to the above described point or place of beginning.

Containing 185,011.32 square feet or 4.25 acres

H:\KANER\CORR\88170_3154/44 (5295)

VN0000000092

# EXHIBIT "B"

## SIGN PLANS AND CRITERIA

1



VN0000000094



94

## EXHIBIT "C"

### PERMITTED ENCUMBRANCES

1.  Easement, dated June 4, 1985, executed and delivered by Vornado, Inc. to the Township of Wayne in the County of Passaic, recorded June 19, 1985, in Deed Book K 114, Page 27 of Passaic County, New Jersey.

2.  Mortgage, made and entered into by and among several mortgagors in which combined own forty-four properties, including Landlord (collectively, the "Mortgagors"), to Vornado Finance Corp., dated November 24, 1993, recorded December 1, 1993, in Mortgage Book B 140, Page 113 of Passaic County, New Jersey; assigned to Bankers Trust Company, dated November 24, 1993, recorded December 1, 1993, in Assignment Book S18, Page 1 of Passaic County, New Jersey.

3   Assignment of Leases and Rents, made and entered into by and among the Mortgagors, as borrowers, and Vornado Finance Corp., as assignee, dated November 24, 1993, recorded December 1, 1993, in Mortgage Book B 140, Page 257 of Passaic County, New Jersey.

4   UCC Financing Statement No. 062744-93, filed December 22, 1993, in Passaic County, New Jersey by Star Universal Corporation, as debtor, in favor of Vornado Finance Corp., secured party; assigned to Bankers Trust Company.

5.  UCC Financing Statement No. 0627454-93, filed December 22, 1993, in Passaic County, New Jersey, by Star Universal Corporation, as debtor, in favor of Vornado Finance Corp., secured party; assigned to Bankers Trust Company.

6   UCC Financing Statement No. 1546542, filed December 23, 1993, with the New Jersey Secretary of State, by Star Universal Corporation, as debtor, in favor of Vornado Finance Corp., secured party; assigned to Bankers Trust Company.

7.  UCC Financing Statement No. 1546543, filed December 23, 1993, with the New Jersey Secretary of State, by Star Universal Corporation, as debtor, in favor of Vornado Finance Corp., secured party, assigned to Bankers Trust Company.

        Notwithstanding anything contained in this Exhibit "C" to the contrary, nothing contained herein shall be construed to prohibit the exercise of the rights and privileges granted to the Tenant under the Lease except as otherwise set forth in the Lease.

1

H\KANER\CORR\88170_3\56/44 (5285)

VN0000000096

95

## EXHIBIT "D"

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

### (Mortgage)

THIS AGREEMENT, dated the _____ day of _____, 1997, among
_____, a _____ ("Mortgagee"),
h   a   v   i   n   g   a   n   a   d   d   r   e   s   s   a   t
_____ STAR
UNIVERSAL, L.L.C., a New Jersey limited liability company ("Landlord"), having an
address c/o Vornado Realty Trust, Park 80 West, Plaza II, Saddle Brook, New Jersey
07663, and CIRCUIT CITY STORES, INC , a Virginia corporation ("Tenant"), having an
address at Deep Run I, 9950 Mayland Drive, Richmond, Virginia 23233.

### W I T N E S S E T H :

(a) Tenant has entered into a certain lease (the "Lease") dated _____, 1997
with Landlord covering premises located within that certain property known as
_____ Shopping Center, located in the Township of Wayne, Passaic
County, New Jersey, and more particularly described in Schedule A hereto; and

(b) Mortgagee has made a loan to Landlord as evidenced and secured by a Deed
of Trust recorded _____, 199_____ in the land records of Passaic County,
New Jersey, in Book _____ at page _____ (the "Mortgage"), encumbering the property
described in Schedule A; and the parties hereto desire to set forth their agreement with
regard to the priority of the Mortgage and the effect thereof on Tenant and its leasehold
interest in the aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One
Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby
acknowledged, the parties hereby agree as follows:

1.    The Lease is and shall be subject and subordinate to the lien of the
      Mortgage insofar as it affects the real property of which the premises form
      a part, and to all renewals, modifications, consolidations, replacements and

1

H:\KANER\CORR\68170_3\54\44 (5235)

extensions thereof, to the full extent of the principal sum secured thereby and interest thereon.

2. Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the premises by deed in lieu of foreclosure, the successors and assigns of such purchasers, as its Landlord for the unexpired balance (and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease.

3. In the event that it should become necessary to foreclose the Mortgage, Mortgagee thereunder will recognize the Lease and all of Tenant's rights thereunder, and Mortgagee will not terminate the Lease nor join Tenant in summary or foreclosure proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4. Mortgagee consents to the application of casualty and condemnation proceeds in accordance with paragraphs 15 and 16 of the Lease between Landlord and Tenant, whether or not the Mortgage is then foreclosed.

5. In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:

(a) liable for any act or omission of any prior lessor (including Landlord); or

(b) liable for the return of any security deposits unless delivered to Mortgagee; or

(c) bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

H:\KANER\CORRW8170_9\5444 (5295)

VN0000000098

(d) bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

Notwithstanding the foregoing, Mortgagee acknowledges and agrees that if Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall be subject to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

6.   Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed that in the event that Mortgagee acquires title to the Shopping Center by foreclosure or otherwise, Tenant shall be entitled to effect a Transfer in accordance with the terms of the Lease.

7.   Notwithstanding anything contained in this Agreement to the contrary, Mortgagee acknowledges and agrees that if Mortgagee shall succeed to the interest of Landlord under this Lease, Mortgagee shall be subject to all of Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

8   Mortgagee, Landlord and Tenant, respectively, represent and warrant to each other that each has the requisite power and authority to enter into this Agreement; that all necessary and appropriate approvals, authorizations and other steps have been taken to effect the legality of this Agreement; that the signatories executing this Agreement on behalf of Mortgagee, Landlord and Tenant have been duly authorized and empowered to

3                              H:\KANER\CORR\55170_3154/44 (5295)

execute this Agreement on behalf of Mortgagee, Landlord and Tenant, respectively; and that this Agreement is valid and shall be binding upon and enforceable against Mortgagee, Landlord and Tenant and their successors and assigns and shall insure to the benefit of Mortgagee, Landlord and Tenant and their successors and assigns.

4

H:\KANER\CORR\88170_3134/44 (5285)

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written

**Mortgagee:**

ATTEST:

a _____

_____    By: _____
_____    Name: _____
Title: _____

**Landlord:**
ATTEST:    **CIRCUIT CITY STORES, INC.,**
a Virginia corporation

_____    By: _____
_____    Name: _____
Title: _____

**Tenant:**
ATTEST:    **STAR UNIVERSAL L.L.C.**
a New Jersey limited liability company

_____    By    Vornado Realty Trust,
Name: _____        a Maryland real estate investment
trust,

as its Authorized Signatory

By: _____
Name: _____
Title: _____

Note: Attach appropriate notary blocks for the State.

H:\KANER\CORR\88170_3\54\44 (5295)

VN0000000101

100

## EXHIBIT "E"

### MEMORANDUM OF LEASE

This **MEMORANDUM OF LEASE** (this "Memorandum of Lease") is made this _____ day of _____, 1997, between **STAR UNIVERSAL, L.L.C.,** a New Jersey limited liability company (hereinafter referred to as "Landlord"), having an address c/o Vornado Realty Trust, Park 80 West, Plaza II, Saddle Brook, New Jersey 07663 and **CIRCUIT CITY STORES, INC.,** a Virginia corporation (hereinafter referred to as "Tenant"), having an address at Deep Run I, 9950 Mayland Drive, Richmond, Virginia 23233.

### WITNESSETH:

Landlord and Tenant have entered into a Ground Lease (the "Lease") dated _____, 1997, whereby Landlord has leased to Tenant a portion of the real property (the "Property"), Township of Wayne, Passaic County, New Jersey, the legal description of which Property is set forth on **Exhibit "A"** attached hereto. The Lease contains provisions and rights appurtenant to the Property, some of which are as follows:

I.  **Term** The term of the Lease is for a period of twenty (20) years commencing on the Commencement Date (as established in the Lease based upon the earlier to occur of (i) two hundred ten (210) days after Delivery of Possession of the Property and (ii) the date Tenant opens for business at the Property, provided, however, that the Commencement Date must occur on or before _____, 1998). Thereafter, Tenant has the right under the Lease to renew and extend the term of the Lease for four (4) successive periods of five (5) years each.

II.  **Successors.** The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

III.  **Incorporation of Lease.** All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

IV.  **Conflicts with Lease.** This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease. In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

V.  **Location of Lease.** Said Lease is on file at the offices of Tenant, at the address stated above.

1

H.\KANER\CORR\83170_3\54/44 (5265)



VN0000000102

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

Landlord:

STAR UNIVERSAL, L.L.C.,
a New Jersey limited liability company

Witness·

By:   Vornado Realty Trust,
      a Maryland real estate investment trust,
      as its Authorized Signatory·

Name. _____

                                        By: _____
                                        Name: _____
                                        Title: _____

THE STATE OF _____   )
                               )
COUNTY OF _____      )

BEFORE ME, the undersigned Notary Public in and for said county and state, on this date personally appeared _____, Vice President of Vornado Realty Trust, a Maryland real estate investment trust, the trust described in, and which executed the above instrument on behalf of STAR UNIVERSAL, L.L.C., a New Jersey limited liability company; that he knows the seal of said trust; that the seal affixed to said instrument is such trust seal; that it was so affixed by order of the Board of Trustees of said trust, and that he signed his name thereto by like order.

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of _____, 1997, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of _____

My Commission Expires·

_____

_____
(Typed/Printed Name of Notary)

2                          H:\KANER\CCRR\88170_3154/44 (5295)

<u>Tenant:</u>

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

Witness:

By: _____

Name: _____      Benjamin B. Cummings, Jr.
                                        Vice President


THE STATE OF VIRGINIA          )
                               )
COUNTY OF HENRICO              )

    BEFORE ME, the undersigned Notary Public in and for said county and state, on this date personally appeared Benjamin B. Cummings, Jr., Vice President of CIRCUIT CITY STORES, INC., a Virginia corporation, known to me to be the person whose name is subscribed to the foregoing document, and acknowledged to me that he has the authority and has executed the same on behalf of CIRCUIT CITY STORES, INC., for the purposes and consideration therein expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of _____ __, 1997, to certify which witness my hand and official seal.


_____
Notary Public in and for the State of Virginia

My Commission Expires


_____        _____
                                (Typed/Printed Name of Notary)


3                          H:\KANER\CORR\83170_3154\44 (5295)

### Exhibit "A"

### Legal Description of the Property

ALL that tract or parcel of land and premises, situate, lying and being in the Township of Wayne, County of Passaic and State of New Jersey, more particularly described as follows:

BEGINNING at a point in the northerly right-of-way line of New Jersey State Highway Route 46 where the same is intersected by the line dividing Lots 7 and 8 in Block 400, on the Official Tax Map of the Township of Wayne, said point being distant 368.39 feet along a bearing of North 85°33'00" East from the intersection of said northerly right-of-way line of New Jersey State Highway Route 46 and the easterly right-of-way line of Galeci Drive and running thence;

1. North 06°19'58" West, along said division between Lots 7 and 8 in Block 400, distant 200.02 feet to a point; thence,

2. North 85°33'54" East, distant 7.31 feet to a point; thence,

3. North 06°20'04" West, along the easterly line of Lots 8 and 9 in Block 400, distant 86.18 feet to a point; thence,

4. North 33°36'16" West, along said easterly line of Lots 9 and 10 in Block 400, distant 484.82 feet to a point; thence,

5. North 57°08'05" East, along the southerly line of Lot 11 in Block 400, distant 160.27 feet to a point; thence,

6. North 27°39'12" East, continuing along said southerly line of Lot 11 in Block 400, distant 345.56 feet to a point; thence,

7. North 45°14'24" East, distant 56.26 feet to a point in the westerly line of North Jersey District Water Supply Commission; thence,

8. South 56°55'01" East, along said westerly line of North Jersey District Water Supply Commission, distant 300.35 feet to a point; thence,

9. South 56°35'52" East, continuing along same, distant 391.70 feet to a point; thence,

10. South 52°09'21" East, still along westerly line of North Jersey District Water Supply Commission, distant 63.92 feet to a point; thence,

11. South 42°21'49" East, still along same, distant 119.73 feet to a point; thence,

4

104

12. South 26°22'12" East, still along said westerly line of North Jersey District Water Supply Commission, distant 153.44 feet to a point; thence,

13. South 11°45'50" East, still along the same, distant 109.63 feet to a point; thence,

14. South 02°39'29" West, distant 142.07 feet to a point; thence,

15. South 15°13'03" West, still along said westerly line of North Jersey District Water Supply Commission, distant 170.20 feet to a point; thence,

16. South 07°48'39" West, continuing along said westerly line, distant 17.95 feet to a point in the aforementioned northerly right-of-way line of New Jersey State Highway Route 46; thence,

17. South 88°38'39" West, along said northerly line of New Jersey State Highway Route 46, distant 100.00 feet in the line dividing Lots 1 and 2 in Block 400, thence,

18. North 01°21'25" West, distant 200.00 feet to a point in the northerly line of Lot 2 in Block 400; thence,

19 South 88°38'44" West, along said northerly line of Lot 2, distant 100.00 feet to a point in the line dividing Lots 2 and 3 in Block 400; thence,

20 South 01°21'25" East, along said line dividing Lots 2 and 3 in Block 400, distant 200.03 feet to a point in the aforementioned northerly right-of-way line of New Jersey State Highway 46; thence,

21 Curving to the left, in a westerly direction, along a curve having a radius of 4,051.00 feet, an arc length of 203.18 feet, to a point of tangency; thence,

22 South 85°33'00" West, continuing along said northerly right-of-way line of New Jersey State Highway Route 46, distant 387.30 feet to the above described point or place of BEGINNING.

**Note for Information:**   Being known and designated as Tax Lots 1,3,4,5,6,7 in Block 400 on the Tax Map of the Township of Wayne, County of Passaic, State of New Jersey.

**Note for Information:**   Being commonly known as 571 Route 46 & Brickyard Road, Wayne, New Jersey.

H:\KANER\CORR\88170_3\S4\44 (5295)

VN0000000106

## EXHIBIT "F"

## COMMENCEMENT DATE AGREEMENT

THIS AGREEMENT, made as of this ____ day of _____, 1997, between STAR UNIVERSAL, L.L.C. (herein called "Landlord"), and CIRCUIT CITY STORES, INC. (herein called "Tenant").

## WITNESSETH:

WHEREAS, Landlord is the owner of certain premises situated in the Township of Wayne, Passaic County, New Jersey (herein called the "Premises"); and

WHEREAS, by that certain lease dated _____, 1997 (herein called the "Lease"), Landlord leased the Premises to Tenant; and

WHEREAS, a memorandum or short form lease in respect of the Lease was recorded in the office of the Clerk of Passaic County, New Jersey, on the ____ day of _____, 19__, in Book _____ at Page ____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Lease has commenced; and

WHEREAS, under paragraph 25 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1.    The term of the Lease commenced on, and the Commencement Date (as such term is defined in the Lease) was, _____, 1997. The term of the Lease shall expire on _____, unless (i) the Lease terminates earlier as provided in the Lease, or (ii) Tenant exercises any option to extend the term of the Lease.

2.    The date of commencement of the "First Renewal Term" (as such term is defined in the Lease) shall be _____, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on _____, unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

3.    The date of commencement of the "Second Renewal Term" (as such term is defined in the Lease) shall be _____, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on _____, unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

1

H:\KANER\CORR\S6170_3\54\44 (5295)

4.　　The date of commencement of the "Third Renewal Term" (as such term is defined in the Lease) shall be _____, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on _____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

5.　　The date of commencement of the "Fourth Renewal Term" (as such term is defined in the Lease) shall be _____, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on _____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

　　IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

Landlord:

STAR UNIVERSAL, L.L.C.,
a New Jersey limited liability company

Witness:

Name: _____

By:　Vornado Realty Trust,
　　a Maryland real estate investment trust,
　　as its Authorized Signatory

By: _____
Name: _____
Title: _____

2

VN0000000108

THE STATE OF _____ )
                                )
COUNTY OF _____ )

BEFORE ME, the undersigned Notary Public in and for said county and state, on this date personally appeared _____, Vice President of Vornado Realty Trust, a Maryland real estate investment trust, the trust described in, and which executed the above instrument on behalf of STAR UNIVERSAL, L.L.C., a New Jersey limited liability company, that he knows the seal of said trust; that the seal affixed to said instrument is such trust seal; that it was so affixed by order of the Board of Trustees of said trust; and that he signed his name thereto by like order.

SUBSCRIBED AND SWORN TO BEFORE ME on this the \_\_\_\_\_ day of _____, 1997, to certify which witness my hand and official seal.


_____
Notary Public in and for the State of _____


My Commission Expires.


_____
(Typed/Printed Name of Notary)

3                            H:\KANER\CORR\A5170_3154/44 (5295)

VN0000000109

Tenant:

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

Witness:

By: _____

Name _____              Benjamin B  Cummings, Jr.
                                                  Vice President


THE STATE OF VIRGINIA      )
                           )
COUNTY OF HENRICO          )

    BEFORE ME, the undersigned Notary Public in and for said county and state, on this date personally appeared Benjamin B. Cummings, Jr., Vice President of CIRCUIT CITY STORES, INC., a Virginia corporation, known to me to be the person whose name is subscribed to the foregoing document, and acknowledged to me that he has the authority and has executed the same on behalf of CIRCUIT CITY STORES, INC., for the purposes and consideration therein expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of _____ _, 1997, to certify which witness my hand and official seal.


_____
Notary Public in and for the State of Virginia

My Commission Expires.

_____
(Typed/Printed Name of Notary)


Wayne, NJ                                    4

## EXHIBIT "G"

### REMOVABLE TRADE FIXTURES

STORE FIXTURES
ALL STORAGE RACKING
ALL SECURITY SYSTEM ITEMS
TELEPHONES AND PAGING SYSTEMS
COMPUTER SYSTEM
OFFICE FURNITURE AND TRASH RECEPTACLES
BATTERY CHARGER
TRASH COMPACTOR
SIGNS (INTERIOR/EXTERIOR)
ANTENNA SYSTEM
ELECTRONIC SWITCHING
AIR COMPRESSOR (ROADSHOP)
SAFE
CONVEYOR
MEDECO CYLINDER LOCKS (5)
REFRIGERATOR AND MICROWAVE USED BY EMPLOYEES
TACK BOARDS
WATER COOLER
FIRE EXTINGUISHERS
AUDIO ROOM FIXTURES AND SWITCHGEAR
PICTURES
WAREHOUSE AND MATERIAL HANDLING EQUIPMENT (MOVABLE LADDERS, DOLLIES, ETC.)
TRACK LIGHTS (CANS ONLY, NOT TRACKS)

1

H:\KANER\CORR\58170_3\54\44 (5295)

VN0000000111

# EXHIBIT "H"

## EXISTING MORTGAGE SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

1

H:\KANER\CORR\88170_3\54\44 (5295)

VN0000000112

## SUBORDINATION, NONDISTURBANCE
## AND ATTORNMENT AGREEMENT

THIS AGREEMENT is made by and among Star Universal L.L.C., a New Jersey limited liability company ("Lessor"), Circuit City Stores, Inc., a Virginia corporation ("Lessee"), and Bankers Trust Company, as trustee ("Trustee") under that certain Indenture, dated as of November 24, 1993, by and between Trustee and Vornado Finance L.P., a Delaware corporation.

### W I N E S S E T H:

WHEREAS, under a certain lease dated August ____, 1997 (hereinafter referred to as the "Lease"), Lessor did lease, let and demise a portion of the property (hereinafter called the "Leased Premises"), as described in the Lease to Lessee for the period of time and upon the covenants, terms and conditions therein stated; and

WHEREAS, said Lease has not been further amended or modified; and

WHEREAS, by making a mortgage loan, Vornado Finance Corp. became the owner of an indebtedness and holder of a certain Note or Notes, secured by a Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing (hereinafter called "Mortgage"), recorded in the records of Passaic County, State of New Jersey which shall constitute a lien upon the property described in said Mortgage and as described in Exhibit A attached hereto (the "Mortgaged Premises"), and is secured by an assignment of Lessor's interest in the Lease as more particularly set forth in the Mortgage; and

WHEREAS, Lessor and Lessee jointly and severally acknowledge and agree to the aforesaid assignment of Lessor's interest in the Lease; and

WHEREAS, all of the right, title and interest of Vornado Finance Corp. in and to the Indenture and, to the extent not previously assigned to the Trustee, the Mortgage, was heretofore acquired by Vornado Finance L.P., a Delaware limited partnership ("Lender"); and

WHEREAS, Lender desires the Lease and all rights of the Lessee thereunder to be subordinate to the Mortgage and all rights of Lender thereunder, and the Lessee desires Lender's assurance not to disturb Lessee's rights of possession of the Leased Premises under the Lease in the event that Lender exercises its remedies as a mortgagee under the Mortgage;

NOW, THEREFORE, the parties hereto, in consideration of the covenants contained herein, have agreed and hereby agree as follows:

09/19/2002 THU 13:43 FAX 80...188162          PROP MGMT.                                    ☑003

1.     The Lease, as the same may heretofore and hereafter be modified, amended or extended, is and shall be subject and subordinate to the lien of the Mortgage on the Mortgaged Premises, to each and every advance made or hereafter made under the Mortgage, and to all renewals, modifications, consolidations, replacements and extensions of the Mortgage.

2.     So long as no default by Lessee has occurred and has continued to exist for such period of time (after notice, if any, required by the Lease) as would entitle Lessor to terminate the Lease (hereinafter called an "event of default"), (A) Lender shall not name Lessee as a party in any foreclosure action or proceeding which may be instituted or taken by Lender under the Mortgage by reason of any default thereunder, or evict Lessee from the Leased Premises, or terminate or disturb Lessee's leasehold estate under the Lease, and (B) none of Lessee's rights under the Lease (including, without limitation, the right to have insurance proceeds and condemnation awards disbursed in accordance with the provisions of the Lease) shall be disturbed by reason of any default under the Mortgage or other action taken by Lender under the Mortgage.

3.     Lessee shall give Lender copies of all notices and other communications given by Lessee to the Lessor under the Lease relating to defaults on the part of the Lessor under the Lease.

4.     In the event of any act or omission by Lessor which would give Lessee the right, either immediately or after the lapse of a period of time, to terminate the Lease, or to claim a partial or total eviction, Lessee will not exercise any such right (A) until it has given written notice of such act or omission to Lender by delivering such notice of such act or omission by certified mail, return receipt requested, addressed to Lender at the address specified under Section 7 hereof, and (B) until a reasonable period of time (not less than thirty (30) days nor more than one hundred and twenty (120) days) for remedying such act or omission shall have elapsed following giving of such notice, provided Lender, with reasonable diligence, shall (i) have pursued such remedies as are available to it under the Mortgage so as to be able to remedy the act or omission, and (ii) thereafter shall have commenced and continued to remedy such act or omission or cause the same to be remedied.  Lessee's agreement herein shall not apply to those situations specifically set forth in the Lease wherein Lessee has an express option to cancel and terminate the Lease.

5.     Without limitation of any of the provisions of the Lease, in the event that, by reason of any default on the part of the Lessor, Lender or its assigns shall succeed to the interest of Lessor or any successor to Lessor, then subject to the provisions of this Agreement the Lease shall nevertheless continue in full force and effect and Lessee shall attorn to Lender or its assigns and shall recognize Lender or its assigns as its landlord.  Upon request of Lender, Lessee shall execute and deliver to Lender or its assigns an agreement of attornment.  If Lender or its assigns shall succeed to the interest of Lessor or any successor to Lessor, in no event shall Lender be obligated to

2

09/19/2002 THU 13:44 FAX 80.  J8182        PROP MGMT.                                    ☑004

remedy any default by Lessor other than ongoing default(s) with respect to Lessor's obligations to repair and maintain the Shopping Center, which default(s) exist at the time of Lender's succession to the interest of Lessor or any successor to Lessor and as to which Lessee has given notice to Lender (as provided in the Lease) after such succession by Lender, nor shall Lender or its assigns have any liability under the Lease prior to the date Lender or its assigns shall succeed to the rights of Lessor or any successor to Lessor under the Lease, nor any liability for offsets or defenses which Lessee might have had against Lessor or any successor to Lessor. Lender or its assigns shall have no personal liability as successor to Lessor, and Lessee shall look only to the estate and property of Lender or its assigns in the Mortgaged Premises or the proceeds thereof for the satisfaction of Lessee's remedies for the collection of a judgment (or other judicial process) requiring the payment of money in the event of any default by Lender or its assigns as Lessor under the Lease. No other property or assets of Lender or its assigns shall be subject to levy, execution or other enforcement procedure for the satisfaction of Lessee's remedies under or with respect to the Lease, the relationship of Lessor and Lessee thereunder or Lessee's use or occupancy of the Leased Premises.

6.     Lessee has not subordinated the Lease or any of its rights under the Lease to any lien or mortgage other than the Mortgage prior to the date hereof, and it will not subordinate the Lease or the rights of the Lessee thereunder to any lien or mortgage other than the Mortgage without the prior written consent of Lender. The foregoing shall not require Lender's consent to or prohibit Lessee's "Leasehold Mortgage" financing as permitted under the Lease. If Lessee at any time acquires the interest of the Lessor under the Lease, the Lease will remain in full force and effect and the interests of the Lessee and the Lessor under the Lease will not merge.

7.     Any notices to Lessee or Lender hereunder shall be effective upon mailing to Lessee or Lender by certified mail, return receipt requested, addressed as follows:

Lessee:

9950 Mayland Drive
Richmond, Virginia 23233-1464
Attention: Corporate Secretary

, with a simultaneous copy, under separate cover, to:

9950 Mayland Drive
Richmond, Virginia 23233-1464
Attention: Vice President, Real Estate

3

SEP-19-2002  15:02              8044188162              96%       VN000000000115

09/19/2002 THU 13:44 FAX 8u...188162     PROP MGMT.                              ☑005

Lender:

      Bankers Trust Company, Trustee
      Four Albany Street
      New York, New York 10006
      Attention: Vornado Finance L.P.

, with a simultaneous copy, under separate cover, to:

      Bankers Trust Company
      3 Park Plaza
      Irvine, California 92714
      Attention: Vornado Finance L.P.

or as to each party, to such other address as the party may designate by a notice given in accordance with the requirements contained in this Section 7.

    8.   No prepayment of rent or additional rent due under the Lease of more than one month in advance, and no amendment, modification, surrender or cancellation of the Lease [other than an amendment, modification, surrender or cancellation pursuant to an express provision set forth in the Lease or permitted pursuant to the Mortgage and other than a "Non-material Modification" (as hereinafter defined)], shall be binding upon Lender, as holder of the Mortgage or as Lessor under the Lease if it succeeds to that position, unless consented to in writing by Lender. In addition, Lender as holder of the Mortgage or as Lessor under the Lease if it succeeds to that position shall in no event have any liability for the performance or completion of any work or to make improvements to the Mortgaged Premises except for (A) repairs and maintenance pursuant to specific provisions of the Lease; (B) repairs to the Mortgaged Premises or any part thereof as a result of damage by fire or other casualty to the extent that such repairs can be reasonably made from the net proceeds of any insurance actually made available to Lender, and (C) repairs to the Mortgaged Premises as a result of a partial condemnation to the extent that such repairs can be reasonably made from the net proceeds of any award made available to Lender.

    "Non-material Modification" means a modification of the Lease which does not (i) change the "Rent" payable pursuant to the Lease; (ii) change the "Term" of the Lease; (iii) change the size of the Leased Premises; (iv) materially increase Tenant's rights or materially decrease Tenant's obligations under the Lease; or (v) materially decrease Landlord's rights or materially increase Landlord's obligations under the Lease.

    9.   If at any time Lender shall notify Lessee that an Event of Default has occurred under the Mortgage and shall demand that any then unpaid rent or additional rent and any rent or additional rent thereafter payable under the Lease be paid directly

4

09/19/2002 THU 13:44 FAX 504 38162    PROP MGMT.    ☒006

to Lender, then Lessee shall thenceforth and until notified by Lender that the matter in default has been paid or remedied pay such rent or additional rent to Lender as the same becomes due under the Lease, without the necessity for further notice and without obligation on the part of Lessee to inquire whether or not default under the Mortgage occurred or has been remedied. Lessor hereby acknowledges that such payment made by the Lessee to Lender shall discharge in full Lessee's obligation to make that payment to Lessor.

10.    This Agreement may not be modified except by an agreement in writing signed by the parties hereto or their respective successors in interest. This Agreement shall apply to, bind and inure to the benefit of the parties hereto and their respective successors and assigns. As used herein "Lender" shall include any subsequent holder of the Mortgage. This Agreement shall supersede and replace any agreement entered into prior to the date hereof by Lessee (or any predecessor in interest of Lessee under the Lease) with any previous holder of a mortgage covering the Mortgaged Premises which has been assigned to Lender.

11.    This Agreement shall be construed in accordance with the laws of the State in which the Leased Premises are located.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed, sealed and delivered in their respective names and in their behalf, and if a corporation, by its officers duly authorized, this _____ day of July, 1997.

ATTEST:                                   LESSOR: Star Universal L.L.C.
                                          By: Vornado Realty Trust, as its
                                              Authorized Signatory

_____          By: _____

                                   Its: _____

                                                          [Seal]

ATTEST:                                   LESSEE: Circuit City Stores, Inc.

_____          By: _____

                                   Its: _____

                                                          [Seal]

5

SEP-19-2002  15:02          8044188162                96%        VN000000000117

ATTEST:                                 TRUSTEE:  Bankers Trust Company, as
                                                 Trustee


_____         By: _____

                                        Its:_____
                                                                    [Seal]


STATE OF New Jersey      )
                         )  SS.:
COUNTY OF Bergen         )

        On this          day of July, 1997, before me personally came
                         , to me known, who by me being duly sworn, did depose and say
that he resides at                                      and that he is a Vice
President of Vornado Realty Trust, the trust described in, and which executed the
foregoing instrument; that he knows the seal of said trust; that such trust seal was
affixed to the foregoing instrument; that it was so affixed by order of the Board of
Trustees of said trust, and who thereupon signed his name thereto by like order.


                                        _____
(Notarial Seal)                                  Notary Public


STATE OF                 )
                         )  SS.:
COUNTY OF                )

        On this          day of July, 1997, before me personally came
                         , to me known, who by me being duly sworn, did
depose and say that he resides at                              and that
he is a                            of Circuit City Stores, Inc., the corporation
described in, and which executed the foregoing instrument; that he knows the seal of
said corporation; that such corporate seal was affixed to the foregoing instrument; that
it was so affixed by order of the Board of Directors of said corporation, and who
thereupon signed his name thereto by like order.


                                        _____
(Notarial Seal)                                  Notary Public


                                 6

09/19/2002 THU 13:45 FAX 80.4188162         PROP MGMT.                                    Ø008

STATE OF                )
                        ) SS.:
COUNTY OF               )

On this        day of July, 1997, before me personally came
                        , to me known, who by me being duly sworn, did
depose and say that he resides at
that he is a                        of Banker Trust Company, the corporation    and
described in, and which executed the foregoing instrument; that he knows the seal of
said corporation; that such corporate seal was affixed to the foregoing instrument; that
it was so affixed by order of the Board of Directors of said corporation; and who
thereupon signed his name thereto by like order.


(Notarial Seal)                          _____
                                              Notary Public


                                    7

## EXHIBIT "I"

### INDEX OF DEFINITIONS

| Term | Paragraph where defined |
|------|-------------------------|
| Additional Installations | 2(d) |
| Architect | 15(e) |
| Base Rent | 4 |
| Building | 1 |
| CAM Charges | 7(b) |
| CAM Year | 7(d) |
| Commencement Date | 3(a) |
| Common Area Easement | 6(b) |
| Common Area Maintenance | 7(a) |
| Common Areas | 7(a) |
| Date of Taking | 16(a) |
| Default Rate | 9(b) |
| Delivery of Possession | 3(b) |
| Event of Default (Landlord) | 31 |
| Event of Default (Tenant) | 29 |
| Exclusive Covenant | 18.A(a) |
| Exclusive Use | 18 A |
| Existing Buildings | 2(f) |
| Existing Tenant's | 55 |
| Expiration Date | 3(c) |
| First Renewal Term | 53(a)(i) |
| Foreclosure | 21 |
| Fourth Renewal Term | 53(d)(i) |
| Ground Lessor | 21 |
| Hazardous Substances | 19(a)(v) |
| Improvements | 1 |
| Insurance Trustee | 15(d) |
| Land | 1 |

1

H\KANER\CORR\65170_3\54\44 (5295)

| | |
|---|---|
| Landlord | Introduction |
| Landlord's Notice of Self-Help | 30(f) |
| Landlord's Premises | 6(b) |
| Landlord's Relocation Notice | 54(a)(ii) |
| Landlord's Relocation Work | 54(a)(iii) |
| Lease | Introduction |
| Leasehold Mortgage | 23(b) |
| Lease Year | 3(d) |
| Lender | 23(a) |
| Mortgagee | 21(a) |
| Mr. G | 55 |
| Mr G Termination Agreement | 55 |
| New Commencement Date | 54(b)4 |
| New Delivery of Possession | 54(b)8 |
| New Premises | 54(a)(ii) |
| Oak | 55 |
| Original Premises | 54(a) |
| Outside Date | 54(b)4 |
| Permitted Encumbrances | Ex. "C" |
| Person | 20 |
| Personalty | 23(a) |
| Premises | 1 |
| Products | 18(a) |
| Prime Rate | 9(b) |
| RAI Report | 19(a)(v) |
| Real Estate Taxes | 9(a) |
| Report Substances | 19(a)(v) |
| Shopping Center | 1 |
| Site Covenants | 19(a)(ix) |
| Site Work | 2(a) |
| State | 1 |

H:\KANER\CORR\88170_3\54\44 (5295)

VN0000000121

| | |
|---|---|
| Substantially All of the Premises | 16(a) |
| Substantially Damaged | 15(b) |
| Successor | 22 |
| Second Renewal Term | 53(b)(i) |
| Taking | 16(a) |
| Tax Parcel | 9(b) |
| Tenant | Introduction |
| Tenant's Agents | 14(i)(2) |
| Tenant's Contribution | 7(c) |
| Tenant's Notice of Self-Help | 31 |
| Tenant's Personalty | 54(a)(iii) |
| Tenant's Plans | 2(a) |
| Tenant's Preferred Area | Ex. "A" |
| Tenant's Pro Rata Share | 7(c) |
| Tenant's Pro Rata Share of Real Estate Taxes | 9(f) |
| Tenant's Relocation Work | 54(b)4 |
| Tenant's Restoration Work | 15(a) |
| Tenant's Sublease Notice | 17(b) |
| Tenant's Work | 2(a) |
| Term | 3(a) |
| Third Renewal Term | 53(c)(i) |
| Transfer | 17(a) |
| Transfer Notice | 17(b) |
| Unamortized Costs | 17(b) |
| Vornado | 56 |

3

H:\KANER\CORR\68170_5\54/44 (5295)

VN0000000122

<u>Prohibited Activities</u>  Landlord shall not operate or lease (or permit to be operated or leased) any building or tenant space in the Shopping Center for use as

(A)  a bar, pub, nightclub, music hall or disco in which less than sixty percent (60%) of its space or revenue is devoted to and derived from food service;

(B)  a bowling alley;

(C)  a billiard or bingo parlor;

(D)  a flea market;

(E)  a massage parlor;

(F)  a church or funeral home;

(G)  a facility for the sale of paraphernalia for use with illicit drugs;

(H)  a facility for the sale or display of pornographic material (as determined by community standards for the area in which the Shopping Center is located);

(I)  an off-track betting parlor,

(J)  a carnival, amusement park, shooting gallery, swimming facility or circus,

(K)  a gas station, car wash or auto repair or body shop (the parties specifically acknowledging that Tenant's car stereo installation facility is not included in this prohibition (K)),

(L)  a facility for the sale of new or used trailers or mobile homes or new or used automobiles, trucks and/or sport utility vehicles;

(M)  a facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center;

(N)  a skating or roller rink;

(O)  an arcade, pinball or computer gameroom or any other facility operated solely for entertainment purposes, such as a "laser tag" or "virtual reality" theme operation (provided that retail facilities in the Shopping Center may operate no more than four (4) such electronic games incidentally to their primary operations);

(P)  service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments) or other nonretail uses except for offices and storage facilities incidental to a primary retail operation,

(Q)  a banquet hall, auditorium or other place of public assembly;

(R)  a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers);

(S)  a theater of any kind within 400 feet of the entrance to the Building;

(T)  a facility for the sale or rental of used goods (including thrift shops, secondhand or consignment stores),

(U)  a sporting event or other sports facility, including a gymnasium or health spa, within 400 feet of the entrance to the Building;

(V)  a factory; or

(W)  any industrial usage, warehouse, processing or rendering plant

VN0000000123

Vornado Realty Trust
Park 80 West  Plaza II
Saddle Brook  NJ 07663

Telephone Number (201) 587 1000
Fax Number (201) 587 0600
June 30, 1998



Ms  Sara A. Laposata, Property Management Analyst
Circuit City Stores, Inc.
9950 Maryland Drive
Richmond, VA 23233-1464

**RE:   LEASE DATED AUGUST 5, 1997 BETWEEN STAR UNIVERSAL. LLC
AND CIRCUIT CITY STORES, INC. ("LEASE"), WAYNE, NJ**

Dear Ms. Laposata

The undersigned, as Tenant under that certain Lease (hereinafter called the "Lease") dated August
5, 1997, made and entered into with Star Universal, LLC c/o Vornado Realty Trust, as Landlord,
and the undersigned, as Tenant, hereby confirms and agrees as follows (all capitalized terms used
herein shall have their same defined meanings as in the Lease)

1  The undersigned has accepted possession of and entered into occupancy of the
Demised Premises

2  The lease is in full force and effect and unless otherwise provided herein has not
been modified

3.  The Commencement Date is June 24, 1998

4  The Tenant opened its business in the Premises to the public on June 24, 1998

5  The Expiration Date is June 30, 2018

ATTEST.                                             TENANT

Circuit City Stores, Inc.

By _____

CONFIRMED

VORNADO REALTY TRUST

By: _____
Albert J Zubcak, C.S.M
Director of Property Management
AZ·bb

VN00000000001

**CIRCUIT CITY.**

July 8, 1998

Mr Albert J Zubcak, C S M
Vornado Realty Trust
Park 80 West, Plaza II
Saddle Brook, NJ  07663


RE    LEASE DATED AUGUST 5, 1997 BETWEEN STAR UNIVERSAL, LLC
AND CIRCUIT CITY STORES, INC ("LEASE"), WAYNE, NJ


Dear Mr. Zubcak

Enclosed is the signed Commencement Date Agreement   Once this is executed please
send a copy to my attention at the address above.

Thank you


Sincerely,

*Karen Anderson*

Karen Anderson
Property Administrator



VN0000000002