Court File No. 08-CL-7841

## ONTARIO

### SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

*IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED*

*AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF INTERTAN CANADA LTD. AND TOURMALET CORPORATION*

APPLICANTS

### SUPPLEMENTARY THIRD REPORT OF THE MONITOR

### ALVAREZ & MARSAL CANADA ULC

### JANUARY 13, 2009

**INTRODUCTION**

1. This report (the "**Supplementary Third Report**") is a supplement to the Third Report of the Monitor dated January 10, 2009 (the "**Third Report**") filed by Alvarez & Marsal Canada ULC in its capacity as Monitor of the Applicants.

2. The purpose of this Supplementary Third Report is to address certain matters that have arisen since the serving and filing of the Third Report on January 10, 2009 (the "**Third Report**").

3. On January 12, 2009, the Applicants served a motion returnable on January 14, 2009, seeking an extension of the Bid Deadline, approval of the Rothschild Agreement and an extension of the Stay (each as defined herein). This Supplementary Third Report addresses the relief being sought by the Applicants in their January 14, 2009 motion as well as certain other matters raised in the materials filed by the Applicants in respect of that motion.

4. All capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Third Report.

**SALE PROCESS**

(a) **Extension of the Bid Deadline**

5. As noted in paragraph 32 of the Third Report, the Sale Process Order requires potential purchasers of the Applicants' business to provide firm proposals and a mark-up of the draft asset purchase agreement by no later than 5:00 p.m. Toronto time on January 15, 2009 (the "**Bid Deadline**"). The Applicants' motion seeks an Order extending the Bid Deadline to 5:00 p.m. (Toronto time) on January 23, 2009 or such other time as determined collectively by InterTAN, Rothschild Canada and the Monitor.

6. Rothschild Canada has advised the Monitor that certain of the potential purchasers of InterTAN's business would benefit from additional time to formulate their firm proposals and mark-ups of the template purchase agreement. The Monitor understands that the proposed extension of the Bid Deadline would give the potential purchasers the additional time they seek. As the template asset purchase agreement was only provided to those parties on January 9, 2009, the Monitor concurs with the decision that the extension would be helpful in permitting bidders additional time to consider and provide their revisions to the template agreement.

7. The Monitor is of the view that the proposed extension of the Bid Deadline is consistent with the goal of maximizing the value of InterTAN for the benefit of its stakeholders and enhances and preserves the integrity of the Sale Process. Accordingly, the Monitor supports the Applicants' request for the proposed extension of the Bid Deadline.

- 3 -

### (b) Approval of Rothschild Canada Engagement Letter

8. As noted in paragraph 34 of the Third Report, the Applicants signed an engagement letter formally setting out the terms of Rothschild Canada's mandate for InterTAN with effect as of October 13, 2008 (the "**Rothschild Agreement**"). The Applicants' motion seeks an Order approving the Rothschild Agreement.

9. The Monitor has previously expressed the importance of ensuring that the Sale Process is transparent and independent with respect to the interests of InterTAN and its stakeholders. The Monitor is satisfied that the Rothschild Agreement meets these objectives.

10. The Monitor has had the opportunity to review the Rothschild Agreement. The Monitor is of the view that the remuneration provided for in the Rothschild Agreement is within the range of reasonable market rates for an engagement of this nature and size.

11. Accordingly, the Monitor supports the Applicants' motion for an Order approving the Rothschild Agreement.

## EXTENSION OF THE STAY OF PROCEEDINGS

12. The stay of proceedings in respect of the Applicants granted in the Initial Order and extended by Order of the Court dated December 5, 2008 (the "**Stay of Proceedings**") expires on January 30, 2009. The Applicants' motion seeks an Order extending the Stay of Proceedings until March 31, 2009.

13. The proposed extension of the Stay would allow the Sale Process to move forward, including the receipt and analysis of firm proposals, the negotiation and completion of a definitive purchase agreement and, ultimately, if possible, the sale of the Applicants' business and assets. In light of the progress of the Sale Process to date, the Monitor is of the view that an extension of the Stay is warranted at this time to allow the Sale Process to continue.

14. The Monitor is satisfied that the Applicants have been proceeding in good faith and acting with due diligence to complete a restructuring or sale through the Sale Process. Accordingly, the Monitor supports the Applicants' motion for an Order extending the Stay to March 31, 2009.

**STATUS OF THE CHAPTER 11 PROCEEDINGS**

15. Further to the update on the status of the Chapter 11 Proceedings provided in the Third Report, the Monitor has been advised by its U.S. counsel of the following developments in the Chapter 11 Proceedings.

16. At a hearing held on January 9, 2009, the U.S. Court approved the U.S. Debtors' proposed procedures for the sale of all or substantially all their assets, either on a going concern or piece-meal basis (the "**Sale Procedures Order**"). The U.S. Debtors had filed the motion for this Order under seal on January 5, 2009.

17. The Sale Procedures Order fixed January 10, 2009 as the date by which bids for the U.S. Debtors' assets must be received. Further, the Sale Procedures Order sets January 13 and 14, 2009 as the dates for the auction, first on a going concern basis, or, to the extent a going-concern sale is not successful, on a store-closing basis, or, to the extent a store-closing sale is not successful, on a miscellaneous asset basis (including inventory liquidation), of the assets of the U.S. Debtors.

18. The Sale Procedures Order sets January 16, 2009 as the date on which the U.S. Debtors will seek approval of any successful bids or a going concern sale. However, counsel for the U.S. Debtors indicated at the January 9, 2009 hearing that they may ultimately seek approval of further financing in connection with a bid for a going-concern sale rather than seeking approval to consummate a sale at the January 16, 2009 hearing.

19. The Monitor will provide additional information on the U.S. sale process as matters progress.

## TRANSFER OF FUNDS TO CIRCUIT CITY GLOBAL SOURCING

20. On the afternoon of January 10, 2009, counsel for the Applicants informed the Monitor that on January 9, 2009 InterTAN transferred approximately $8,000 to Circuit City Global Sourcing, Limited ("**CCGS**") to assist CCGS securing a lease of new premises in Hong Kong. The Monitor understands that InterTAN transferred these funds in its capacity as a provider of back-office services for CCGS. As this Court is aware, the Status Quo Order prohibits the Applicants from making any advances to their "U.S. debtor affiliates".

21. Counsel for the Applicant initially advised the Monitor that the payment was inadvertent and that InterTAN and CCGS have made arrangements to have the amount in question repaid by deducting that amount from the next monthly commission payable by InterTAN to CCGS.

22. The Monitor has also been advised by the Applicants that a further payment of approximately $26,000 must be made by CCGS to secure the required premises. The Applicants have proposed to advance that amount to CCGS and be repaid by further reducing the next monthly commission payable by InterTAN to CCGS.

23. Since the monthly commission payable by InterTAN to CCGS in December 2008 was approximately US$129,900, the commission payment is scheduled to be made later in January 2009 and the amounts advanced by InterTAN will be set off when the December commission is paid, the Monitor is satisfied that this arrangement will not prejudice the InterTAN estate. It is the Monitor's position that the Applicants ought to seek the Courts' approval for any future advances of this nature to CCGS.

24. Considering the quantum in question, the Applicants' immediate disclosure of the circumstances and the arrangements to have the funds repaid, the Monitor is of the view that no further steps need to be taken in this regard for the January 9, 2009 advance to CCGS.

- 6 -

All of which is respectfully submitted at Toronto, Ontario this 13th day of January, 2009.

**ALVAREZ & MARSAL CANADA ULC**
in its capacity as Court appointed Monitor of
InterTAN Canada Ltd. and Tourmalet Corporation

Per: _____
  Name: Douglas R. McIntosh
  Title: Managing Director
  I/We have the authority to bind the corporation

*Court File No.: 08-CL-7841*

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF INTERTAN CANADA LTD. AND TOURMALET CORPORATION

**ONTARIO**
***SUPERIOR COURT OF JUSTICE***
***(COMMERCIAL LIST)***

*Proceeding commenced at Toronto*

**SUPPLEMENTARY THIRD REPORT OF THE MONITOR**

***Goodmans LLP***
*Barristers & Solicitors*
*250 Yonge Street, Suite 2400*
*Toronto, Canada  M5B 2M6*

*Jay A. Carfagnini (LSUC#222936)*
*Fred Myers (LSUC#26301A)*
*L. Joseph Latham (LSCU# 32326A)*

*Tel: 416.979.2211*
*Fax: 416.979.1234*

*Solicitors for the Monitor*