**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

------------------------------------------------------- x
: 
In re: : Chapter 11
: 
CIRCUIT CITY STORES, INC., et al., : Case No. 08-35653-KRH
: 
Debtors. : Jointly Administered
: Judge Kevin R. Huennekens
------------------------------------------------------- x:

**MOTION TO COMPEL ASSUMPTION OR REJECTION OF AGREEMENTS
BETWEEN THE ASSURANT COMPANIES AND CIRCUIT CITY STORES, INC., OR
IN THE ALTERNATIVE MOTION FOR RELIEF FROM STAY TO TERMINATE
AGREEMENTS, AND MEMORANDUM IN SUPPORT**

Federal Warranty Services Corporation, Sureway, Inc., American Bankers Insurance Company of Florida, and United Service Protection, Inc. (collectively, "*Assurant*," or alternatively, the "*Assurant Companies*"), by and through their undersigned counsel, hereby move the Court (the "Motion") for the entry of an order compelling the debtor Circuit City Stores, Inc. ("*Circuit City*"), to assume or reject, no later than 10 days after entry of the order, (i) that certain Consumer Electronics Program Agreement, dated December 1, 2006, as amended (the "*CE Agreements*"), by and among Circuit City, the Assurant Companies and General Electric Company ("*GE*"), as well as all related agreements, including but not limited to that

J.R. Smith [VSB No. 41913]  
**HUNTON & WILLIAMS LLP**  
Riverfront Plaza, East Tower  
951 East Byrd Street  
Richmond, Virginia 23219-4074  
Telephone: (804) 788-8200  
Facsimile: (804) 788-8218  

*Counsel for American Bankers
Insurance Company of Florida,
Federal Warranty Service
Corporation, Sureway, Inc.,
United Service Protection, Inc.
and Assurant, Inc.*

Raul A. Cuervo [DCB No. 463718]  
**JORDEN BURT LLP**  
1025 Thomas Jefferson St., N.W.  
Suite 400 East  
Washington, DC 20007  
Telephone: (202) 965-8100  
Facsimile: (202) 965-8104

certain Consumer Electronics Program Services Agreement, dated December 1, 2006 (the "*Services Agreement*"), and (ii) that certain Second Amended and Restated Agreement, dated December 1, 2006 (the "*PC Agreement*"), by and between Circuit City and GE, and subsequently assigned and transferred by GE to the Assurant Companies. In the alternative, the Assurant Companies respectfully request that the Court enter an order lifting the automatic stay of section 362 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (as amended, the "*Bankruptcy Code*") to permit the Assurant Companies to terminate the CE Agreement, the PC Agreement, and related agreements. In support of its Motion, the Assurant Companies respectfully state as follows:

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G).

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

3. The statutory predicate for the relief sought in this Motion is found in Section 365(d)(2) of the Bankruptcy Code.

## I.  FACTUAL BACKGROUND

4. The above-captioned debtors and debtor-in-possession (collectively, the "*Debtors*") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "*Petition Date*"). Since the Petition Date, the Debtors have continued to manage their property and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtors stated in open Court on January 16 that they would liquidate their assets through a Court-approved liquidator.

2

**A.  The CE Agreement**

6. Under the CE Agreement[1], Circuit City, as agent for Assurant, is authorized to market and sell Service Contracts[2] to Consumers of Circuit City providing for repair and/or replacement services with respect to Eligible Products.  Generally "Eligible Products" are consumer electronic equipment.  Circuit City is authorized to sell the Service Contracts at their retail store locations, or by phone, mail or internet solicitations in those states and territories as agreed to under the CE Agreement.

7. Pursuant to the CE Agreement, either Assurant or GE, as applicable under the agreement, is liable to Consumers under the Service Contracts by acting as obligor and/or insurer on the Service Contracts covering Eligible Products.

8. As set forth in Article V of the CE Agreement, Circuit City is required to pay to Assurant and GE the Net Cost for each Service Contract sold by Circuit City.  The Net Cost is defined in Section 5.1 of the CE Agreement and Exhibit E to that agreement.  Such Net Cost is subject to adjustment as provided for in Article V.

9. The Net Cost from the sale of Service Contracts is reserved, as set forth in Section 8.1 of the CE Agreement.

10. Pursuant to the CE Agreement, GE invoices Circuit City within 10 days after the end of each calendar month for the Net Cost due to GE and Assurant, less any cancellations by Consumers, for Service Contracts sold by Circuit City to Consumers during that

---

[1] All of the agreements referenced herein contain confidentiality clauses, which require each party to maintain the confidentiality of certain information contained therein.  Those agreements will be made available to the Court either in camera, or under a request to maintain the agreements under seal.  Because the Debtors maintain copies of the agreements, the Debtors are not prejudiced.

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the CE Agreement.  The term of each Service Contract varies, but can remain in force for several years.

3

month.  Under the CE Agreement, Circuit City agrees to pay the invoices within 30 days of Circuit City's receipt of the monthly invoice.

11. Assurant and GE submit reports to Circuit City describing the methodology and data used to calculate the Loss Cost Estimates, which represent Assurant's estimated Loss Costs for Eligible Products.

12. As agent for the Assurant Companies, Circuit City is responsible under the CE Agreement to: (i) perform administrative services (including receipt of Consumer calls for service, and determination of service entitlement); (ii) provide repair and replacement services under the Service Contracts; and (iii) accept Service Contract cancellation forms, and to provide pro-rated refunds to consumers.  Circuit City is also responsible for canceling Service Contracts for non-payment.  Furthermore, in the event an Eligible Product is replaced, Circuit City owns the replaced product and is entitled to dispose of such product.

13. Upon each monthly payment of the Net Cost by Circuit City, Assurant reserves the aggregate of the Loss Cost Estimate and Administrative Cost Estimate paid for the month (the "CE Monthly Reserve") for payment of actual costs incurred in performance of repair or replacement and administrative services.

14. As stated above, pursuant to the Services Agreement, Assurant and GE contracted with Circuit City to perform claims administration and repair/replacement services in connection with the CE Agreement.  Accordingly, Circuit City is required to provide GE and Assurant data regarding the Administration Costs and Claim Costs associated with repair and replacement services performed by or on behalf of Circuit City and was reimbursed by Assurant as set forth in Article VI of the Services Agreement for those costs.

4

15. Pursuant to an Asset Purchase Agreement between GE as seller, and Federal Warranty Service Corporation ("*Federal Warranty*"), a wholly owned subsidiary of Assurant, as purchaser, GE sold to Federal Warranty the rights to selling, issuing, servicing and administering the Service Contracts sold by Circuit City under both the CE Agreements and PC Agreement. Accordingly, with respect to references to GE within the CE Agreements and the PC Agreement, this motion will reflect Assurant as a successor in interest to GE.

**B.    The PC Agreement**

16. Under the PC Agreement, Circuit City, as agent for GE (now Assurant), is authorized to market and sell Service Contracts[3] to Consumers of Circuit City providing for repair and/or replacement services with respect to Eligible Products as defined in the PC Agreement. Circuit City is authorized to sell the Service Contracts at their retail store locations, or by phone, mail or internet solicitations in those states and territories agreed to by the parties.

17. Either Assurant or GE, as applicable, is liable to Consumers under the Service Contracts by acting as obligor and/or insurer on the Service Contracts covering Eligible Products under the PC Agreement.

18. As set forth in Article VII of the PC Agreement, Circuit City is required to pay to GE (now Assurant) the Service Fees for each Service Contract sold by Circuit City. Services Fees are defined in Section 7.1 of the PC Agreement and are subject to adjustment as provided for in Article VII.

19. The Service Fees from the sale of Service Contracts include a Loss Cost Estimate component and an Administrative Fee Component that is reserved by the Assurant Companies for payment of claims.

---

[3]  Defined terms in the PC Agreement are incorporated herein.

5

20. Pursuant to the PC Agreement, GE (now Assurant) would invoice Circuit City within ten (10) days after the end of each month for the Service Fees due to GE and Assurant, less any cancellations, for Service Contracts sold by Circuit City during that month. Circuit City agreed to pay the invoices within thirty (30) days of Circuit City's receipt of the monthly invoice.

21. Assurant submits reports to Circuit City describing the methodology and data used to calculate the Loss Cost Estimates.

22. Under the PC Agreement, Circuit City accepts Service Contract cancellation forms, and to provide pro-rated refunds to Consumers. Circuit City is also responsible for canceling Service Contracts for non-payment.

23. Upon each monthly payment of the Service Fees by Circuit City provided for in Article VII, Assurant reserves the aggregate of the Loss Cost Estimate and Administrative Fee component paid for the month (the "*PC Monthly Reserve*") for payment of actual costs incurred in performance of repair or replacement and administrative services.

## II. BREACH BY CIRCUIT CITY

24. Circuit City is in breach of the CE Agreement, PC Agreement, and related agreements. Circuit City has sold Service Contracts, which have obligated Assurant to the Consumers who purchased Service Contract as obligor or insurer. This obligation continues for as long as the Consumer retains the Service Contract.

25. For the period from September through November 10th of 2008 Circuit City collected the amounts from Consumers for Service Contracts sold. Despite having collected those payments, Circuit City has failed to pay these amounts due for those Service Contracts to

6

GE and Assurant as required under the CE Agreement and PC Agreement. The amount unpaid is $9,417,621.97.

26. Moreover, Circuit City has publicly stated to its Consumers that those Consumers can rely on the Service Contracts Circuit City has sold despite their failure to pay Assurant the amounts due under the CE Agreement and related agreements and the PC Agreement. In addition to their breach for non-payment of collections on behalf of Assurant, Circuit City is in anticipatory breach as a result of their planned liquidation.

### III. ARGUMENT AND AUTHORITY

27. Section 365(d)(2) of the Bankruptcy Code provides, in relevant part, that:

> In a case under chapter . . . 11 . . . of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

28. Thus, upon request, the Court may fix a deadline by which Circuit City must assume or reject the CE Agreement and related agreements. *In re G-I Holdings, Inc.,* 308 B.R. 196, 212-13 (Bankr. D.N.J. 2004); *See also In re Howard Bros.*, 210 B.R. 475, 476 (Bankr. D. Idaho 1997); *In re Pub. Serv. Co. of New Hampshire*, 884 F.2d 11, 15-16 (1st Cir. 1989); *Matter of Braniff Airways, Inc.*, 783 F.2d 1283, 1285 (5th Cir. 1986) ("[T]ypical remedy of a party to an unexpired lease who is suffering economic loss as a result of bankruptcy is to move for an order compelling the bankruptcy trustee to assume or reject.")

29. Section 365(d)(2) of the Bankruptcy Code allows a non-debtor party to a contract to request the Court to set a date certain by which a contract must be assumed or

7

rejected. The right to seek a date by which a debtor must assume or reject is designed to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." H.R. REP. NO. 595, 95th Cong., 1st Sess. 348 (1977); S. REP. NO. 989, 95th Cong., 2d Sess. 59 (1978); *see also In re Kroh Bros. Dev. Co.*, 100 B.R. 480, 484 (Bankr. W.D. Mo. 1989) (citing the legislative history of Section 365(d)(2) of the Bankruptcy Code). The question whether a debtor should be required to immediately assume or reject an executory contract or unexpired lease is a matter left to the discretion of the Court. *In re Dana Corp., et al.,* 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006).

30. A debtor should only be allowed a "reasonable" amount of time in which to decide whether to assume or reject an executory contract. *Id.; In re O-Jay Foods, Inc.*, 110 B.R. 895, 897 (Bankr. D. Minn. 1989).

31. In determining what constitutes a "reasonable" amount of time under Section 365(d)(2) of the Bankruptcy Code, courts have considered several factors, including: (i) the importance of the contracts to the debtor's business and reorganization; (ii) the debtor's failure or ability to satisfy postpetition obligations; (iii) the nature of the interests at stake; (iv) the balance of potential harm to the litigants; (v) the good to be achieved; and (vi) the safeguards afforded the litigants. *Matter of Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J. 1986) (quoting *In re Midtown Skating Corp.*, 3 B.R. 194 (Bankr. S.D.N.Y. 1980)); *see also In re Dana.*, 350 B.R. at 147.

32. Here, these factors weigh in favor of requiring Circuit City to promptly assume or reject the CE Agreement, the PC Agreement and related agreements.

33. All of the contracts in question are governed by the laws of the State of New York. *See e.g.* CE Agreement at 26.10 (Exhibit 1 at p. 29). The nature of the interests at stake are thus governed by New York law.

34. Under New York law, Circuit City, as the agent for the Assurant Companies, is in a fiduciary position, and has a duty to turn over the Net Cost and other amounts required under the agreements when collected. *See e.g. Edwards v. Horsemen's Sales Co., Inc.*, 148 Misc.2d 212, 214, 560 N.Y.S2d 165, 166 (Sup. Ct., New York County 1989) (in case where auctioneers diverted moneys earned from sales, court found that "auctioneer is not in an ordinary debtor-creditor relationship such as exists ... between a buyer and a seller"). The court in *Edwards* further held that, "[e]ven if there had been no written agreement, the relationship of principal and agent would call for the impressing of a constructive trust upon funds received by the agent from the sale of the property entrusted to him." *Id.* Moreover, "the relationship of fiduciary and beneficiary 'is the normal relationship when one man asks another to sell his property or collect his debts for him.'" *United Feature Syndicate, Inc.v. Miller Features Syndicate, Inc.,* 216 F.Supp.2d 198, 218 (S.D.N.Y. 2002) (quoting *Harvey Bokerage Co. v Ambassador Hotel Corp.*, 57 F.2d 727, 729 (S.D.N.Y. 1932)).

35. The right to sell Service Contracts was entrusted to Circuit City as the Assurant Companies' agent. Circuit City has not turned over those monies collected in trust. Those monies are not property of the estate as defined in Section 541 of the Code. Section 541(d) provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

*Begier v. Internal Revenue Service*, 496 U.S. 53, 59 (1990).

36. Thus, although Circuit City has made some payments under the agreements post-petition, because Circuit City does not own an equitable interest in the monies held in trust for the Assurant Companies, it has breached the CE Agreement, the PC Agreement and related agreements by its failure to pay those funds as required.

37. Clearly, Circuit City has indicated that it intends to stop selling the Service Contracts by its intent to liquidate all of the assets of the debtors. Thus, it has no need of the CE Agreement or the PC Agreement for reorganization.

38. The Net Cost funds required to be turned over to Assurant are intended to be used by the Assurant Companies to pay for repairs or replacement and administration costs associated with the Service Contract held by Consumers. Those repairs or replacements are obviously not going to be performed by Circuit City in the future. Accordingly, by not receiving those funds, the harm done to the Assurant Companies far exceeds the potential harm to Circuit City in requiring it to assume or reject the CE Agreement and the PC Agreement at this time.

39. Moreover, in deciding to liquidate its assets, Circuit City has indicated that it will not be able to continue the administration of claims for repair or replacement which is required of them under the Services Agreement. An assumption of the CE Agreement, the PC Agreement, and related agreements would establish the relationship going forward during the liquidation process. On the other hand, a rejection would allow the Assurant Companies to quickly and efficiently determine what steps they need to take in protecting itself and the Consumers who have purchased the Service Contracts.

40. For the reasons stated above, the Assurant Companies respectfully request that the Court order Circuit City to assume or reject the CE Agreement and the PC Agreement, as

well as all related agreements, within 10 days of the entry of an order of the Court. In the alternative, the Assurant Companies respectfully request that it be given relief from the automatic stay to terminate its agreements with Circuit City for cause and begin the process of assuming the responsibilities of administration of the Service Contracts.

## IV. NOTICE

41.    Notice of this Motion will be given to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, (iii) counsel to the Official Committee of Unsecured Creditors and (iv) all parties that have requested notice of papers pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Assurant submits that no other or further notice of this Motion is required

## V. REQUEST FOR WAIVER OF LOCAL RULE 9013-1(G)

42.    The Assurant Companies respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Rule 9013-1(G) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Virginia.

## VI. NO PRIOR REQUEST

43.    No previous motion for the relief sought herein has been made to this Court or any other court.

11

**WHEREFORE**, the Assurant Companies request that the Court enter an order, substantially in the form attached hereto as Exhibit A, (i) compelling assumption or rejection of the CE Agreement, the PC Agreement and related agreements between the Assurant Companies and Circuit City Stores, Inc.; or (ii) in the alternative, lifting the automatic stay of section 362(a) of the Bankruptcy Code to authorize the termination of the CE Agreement, the PC Agreement and related agreements between the Assurant Companies and Circuit City Stores, Inc.; and (iii) granting the Assurant Companies such other and further relief as may be just and proper.

| Dated: January 26, 2009<br>    Richmond, Virginia | |
|---|---|
| | */s/ J.R. Smith*_____<br>J.R. Smith [VSB # 41913]<br>**HUNTON & WILLIAMS LLP**<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, Virginia<br>Telephone: (804) 788-8200<br>Facsimile: (804) 788-8218<br><br> - and -<br><br>Raul A. Cuervo [DCB # 463718]<br>**JORDEN BURT LLP**<br>1025 Thomas Jefferson St., N.W.<br>Suite 400 East<br>Washington, DC 20007<br>Telephone: (202) 965-8100<br>Facsimile: (202) 965-8104<br><br>Counsel for American Bankers Insurance Company of Florida, Federal Warranty Service Corporation, Sureway, Inc., United Service Protection, Inc., and Assurant, Inc. |

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing Motion has been served on the parties receiving notice via the Court's CM/ECF system and the following parties via US overnight mail, on this 26 day of January, 2009.

Douglas M. Foley, Esq.
McGuireWoods LLP
9000 World Trade Center, 101 W. Main St.
Norfolk, VA 23510

Dion W. Hayes, Esq.
McGuireWoods LLP
One James Center, 901 E. Cary St.
Richmond, VA 23219

Gregg Galardi, Esq.
Skadden Arps, Slate Meagher & Flom LLP
One Rodney Square
Box 636
Wilmington, Delaware 19899

*Counsel for the Debtors*

Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

*Office of the United States Trustee*

Lynn L. Tavenner, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219

Brad R. Godshall, Esq.
Jeffrey N. Pomerantz, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067-4100

John D. Fiero, Esq.
Pachulski Stang Ziehl & Jones, LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

Robert J. Feinstein, Esq.
Pachulski Stang Ziehl & Jones, LLP
780 Third Ave., 36th Floor
New York, NY 10017

*Counsel for Official Committee of Unsecured Creditors*


                                               */s/ J.R. Smith*_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
CIRCUIT CITY STORES, INC., et al.                       :   Case No. 08-35653-KRH
                                                        :
          Debtors.                                      :   Jointly Administered
                                                        :   Judge Kevin R. Huennekens
------------------------------------------------------- x

**ORDER GRANTING MOTION AND SUPPORTING MEMORANDUM
OF THE ASSURANT COMPANIES TO COMPEL ASSUMPTION OR REJECTION
OF AGREEMENTS BETWEEN THE ASSURANT COMPANIES AND CIRCUIT
CITY STORES, INC., OR IN THE ALTERNATIVE MOTION FOR RELIEF
FROM STAY TO TERMINATE AGREEMENTS**

This matter having come before the Court upon the Motion and Supporting Memorandum of Federal Warranty Services Corporation, Sureway, Inc., American Bankers Insurance Company of Florida, and United Service Protection, Inc. (hereinafter collectively, "*Assurant*," or alternatively, the "*Assurant Companies*")[1] for an Order (a) compelling assumption or rejection of the agreements between the Assurant Companies and Circuit City Stores, Inc. or (b) in the alternative, lifting the automatic stay of section 362(a) of the Bankruptcy Code to authorize the termination of the CE Agreement, the PC Agreement, and related agreements (the "*Motion*")

---

[1]     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion

| | |
|---|---|
| J.R. Smith [VSB No. 41913] | Raul A. Cuervo [DCB No. 463718] |
| **HUNTON & WILLIAMS LLP** | **JORDEN BURT LLP** |
| Riverfront Plaza, East Tower | 1025 Thomas Jefferson St., N.W. |
| 951 East Byrd Street | Suite 400 East |
| Richmond, Virginia 23219-4074 | Washington, DC 20007 |
| Telephone: (804) 788-8200 | Telephone: (202) 965-8100 |
| Facsimile: (804) 788-8218 | Facsimile: (202) 965-8104 |
| | |
| *Counsel for American Bankers Insurance Company of Florida, Federal Warranty Service Corporation, Sureway, Inc., United Service Protection, Inc. and Assurant, Inc.* | |

filed in the bankruptcy cases of the above-captioned debtors and debtors in possession (collectively, the "*Debtors*"), the Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) proper and adequate notice of the Motion and the opportunity for a hearing thereon has been given and no other or further notice is necessary, and (iv) good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and the arguments presented at any hearing had thereupon. Therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is **GRANTED**.

2. Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

3. The Debtor shall, within ten (10) days after entry of this Order, assume or reject CE Agreement, the PC Agreement and all related agreements by and between the Debtors and the Assurant Companies.

4 This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and to resolve any and all disputes related thereto.

ENTERED in Richmond, Virginia this _____ day of _____, 2009.

                                                  United States Bankruptcy Judge

WE ASK FOR THIS:


*/s/ J.R. Smith*_____
J.R. Smith [VSB No. 41913]
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

- and -


Raul A. Cuervo [DCB No. 463718]
**JORDEN BURT LLP**
1025 Thomas Jefferson St., N.W.
Suite 400 East
Washington, DC 20007
Telephone: (202) 965-8100
Facsimile: (202) 965-8104


*Counsel for American Bankers Insurance
Company of Florida, Federal Warranty
Service Corporation, Sureway, Inc., United
Service Protection, Inc., and Assurant, Inc*

## **LOCAL RULE 9022-1(C)(1) CERTIFICATION**

       I hereby certify that the foregoing has been either endorsed by or served upon all necessary parties, via the Court's CM/ECF system and the following parties via overnight mail, on this 26 day of January, 2009.

Douglas M. Foley, Esq.
McGuireWoods LLP
9000 World Trade Center, 101 W. Main St.
Norfolk, VA 23510

Dion W. Hayes, Esq.
McGuireWoods LLP
One James Center, 901 E. Cary St.
Richmond, VA 23219

Gregg Galardi, Esq.
Skadden Arps, Slate Meagher & Flom LLP
One Rodney Square
Box 636
Wilmington, Delaware 19899

*Counsel for the Debtors*

Robert B. Van Arsdale, Esq.
Office of the U. S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

*Office of the United States Trustee*

Lynn L. Tavenner, Esq.
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219

Brad R. Godshall, Esq.
Jeffrey N. Pomerantz, Esq.
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067-4100

John D. Fiero, Esq.
Pachulski Stang Ziehl & Jones, LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

Robert J. Feinstein, Esq.
Pachulski Stang Ziehl & Jones, LLP
780 Third Ave., 36th Floor
New York, NY 10017

*Counsel for Official Committee of Unsecured Creditors*

/s/ J.R. Smith

19