UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case No. **08-35653** |
| | ) | |
| Debtors. | ) | Jointly Administered |

## MOTION OF PLUMCHOICE, INC. FOR ORDER DIRECTING DEBTORS TO PAY ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §§ 503(b) AND 507(a) AND REQUEST FOR RELATED RELIEF

PlumChoice, Inc. ("PlumChoice"), by its counsel, Choate, Hall & Stewart LLP and Gregory Kaplan, PLC, hereby moves for the entry of an order directing Circuit City Stores, Inc. ("Circuit City") and its affiliated debtors (collectively, the "Debtors") to pay immediately, as administrative expenses pursuant to 11 U.S.C. §§ 503(b) and 507(a), (A) certain amounts, totaling $3,826,504.45, due on account of post-petition services provided and costs incurred by PlumChoice to (or on behalf of) Circuit City under that certain Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement (each as defined below),[1] each of which

---

[1] Each of the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement, by its terms, is subject to a confidentiality provision but may be disclosed with Circuit City's prior written approval. PlumChoice will produce copies of such agreements upon request with the written permission of the Debtors or order of this Court.

GREGORY KAPLAN, PLC
Troy Savenko (Va. Bar No. 44516)
Leslie A. Skiba (Va. Bar No. 48783)
7 East Second Street (23224-4253)
Post Office Box 2470
Richmond, VA   23218-2470
Phone: (804) 423-7921
Fax: (804) 230-0024

- and –

CHOATE, HALL & STEWART LLP
John F. Ventola, Esq.
Sean M. Monahan, Esq.
Two International Place
Boston, Massachusetts 02110
Tel:  (617) 248-5000
Fax:  (617) 248-4000

*Counsel to PlumChoice, Inc.*

are by and between PlumChoice and Circuit City, and (B) certain costs, totaling $43,690.76, incurred by PlumChoice in connection with the breach of the Dispatch Agreement caused by the Debtors' unilateral termination thereof without any prior notice to PlumChoice.

### PRELIMINARY STATEMENT

The Debtors have failed to pay PlumChoice for services rendered and costs incurred to (or on behalf of) Circuit City during the post-petition period under the PTS Services Agreement, the Remote Services Agreement and the Dispatch Agreement. PlumChoice's right to payment under each of these agreements arose out of a post-petition transaction with the Debtors as PlumChoice continued to provide such services after the Petition Date (as defined below). Further, the Debtors never moved to reject any of these agreements but rather required PlumChoice to perform its obligations thereunder, presumably in order to preserve the value of the Debtors' firedog$^{SM}$ assets, which the Debtors have marketed for sale. In addition, without the services provided by PlumChoice, the Debtors would have been unable to satisfy their post-petition obligations to provide such services to their customers (including Verizon), on account of which the Debtors have received an undeniable benefit, i.e. payment from their customers. As a result, PlumChoice respectfully requests that such amounts, totaling $1,139,634.21, be paid as administrative expenses of the Debtors' estates.

Moreover, on December 31, 2008, the Debtors terminated the PTS Services Agreement with full knowledge that, if they took such action, the Debtors would be obligated under the terms of the contract (A) to reimburse PlumChoice for all Infrastructure Costs (as defined below) incurred by PlumChoice in order to perform its obligations thereunder, and (B) to pay certain Wind-Down Expenses (as defined below) to compensate PlumChoice for actual services

provided and costs incurred on behalf of Circuit City during the period following termination. Presumably, the Debtors calculated that the benefit to their estates of terminating the PTS Services Agreement, and thereby decreasing the cost to the Debtors of paying PlumChoice for services provided thereunder, outweighed the Infrastructure Costs and Wind-Down Expenses due to PlumChoice upon a termination event. As a result, PlumChoice respectfully requests that such amounts, totaling $2,686,870.24, be paid as administrative expenses of the Debtors' estates.

In addition, PlumChoice respectfully requests that the Court direct the Debtors to pay, as administrative expenses, costs incurred by PlumChoice in connection with the Debtors' breach of the Dispatch Agreement. PlumChoice has faithfully provided services to the Debtors under the Dispatch Agreement during the post-petition period at the Debtors' request. Such services enabled the Debtors to satisfy their service obligations to their customers. On or about January 20, 2009, however, the Debtors unilaterally terminated the Dispatch Agreement without any prior notice to PlumChoice. As a result, the Debtors failed to comply with their obligation to provide PlumChoice with sixty (60) days' prior notice of their intent to terminate the Dispatch Agreement, thereby saving the Debtors the cost of continuing to pay amounts due to PlumChoice during the sixty (60) day notice period. In addition, the Debtors' breach of the Dispatch Agreement prevented PlumChoice from dismissing or transitioning all personnel providing services thereunder, reducing operating costs and otherwise taking the steps necessary to minimize the costs associated with ramping down the services provided under the Dispatch Agreement in an orderly fashion. Accordingly, PlumChoice respectfully requests that such costs, totaling $43,690.76, be paid as administrative expenses of the Debtors' estates.

In further support of this motion, PlumChoice respectfully states as follows:

## BACKGROUND

**A.    PlumChoice.**

1.    PlumChoice provides online computer support to businesses and individuals. For businesses like Circuit City, PlumChoice offers its array of online training, trouble-shooting and technical support services to such businesses' individual and business customers.

**B.    The Remote Services Agreement.**

2.    On or about November 8, 2005, Circuit City and PlumChoice entered into that certain Customer Technical Support Services Evaluation Agreement (as amended by that certain First Amendment to Customer Technical Support Services Evaluation Agreement dated as of February 28, 2006, and that certain Second Amendment to Customer Technical Support Services Evaluation Agreement dated as of June 1, 2006, the "Test Agreement"), pursuant to which Circuit City engaged PlumChoice to provide online, remote diagnostic services, on a test basis, to customers of Circuit City's firedog$^{SM}$ technical support service.

3.    Subsequently, on or about February 15, 2007, Circuit City and PlumChoice entered into that certain Remote Services Agreement (as amended by that certain Amendment No. 1 to Remote Services Agreement dated as of August 13, 2007, the "Remote Services Agreement"), pursuant to which Circuit City engaged PlumChoice to provide online, remote diagnostic services (the "Remote Diagnostic Services") to customers of Circuit City's firedog$^{SM}$ technical support service throughout the United States and its territories. The Remote Services Agreement replaced the Test Agreement and made PlumChoice the primary online, remote diagnostic services provider of Circuit City's customers.

4. PlumChoice provides the Remote Diagnostic Services in exchange for monthly payments in arrears. At present, Circuit City owes PlumChoice approximately $110,111.30 for Remote Diagnostic Services provided on and after the Petition Date.

C. **The Dispatch Agreement.**

5. On or about May 31, 2006, PlumChoice and Circuit City entered into that certain Services Agreement (the "Dispatch Agreement"), pursuant to which PlumChoice agreed to perform telephonic dispatch support and scheduling services (the "Dispatch Services") to Circuit City's home theater installation, home delivery and personal computer service business units. The Dispatch Agreement allows customers of Circuit City's firedog$^{SM}$ technical support service to schedule, over the telephone with a PlumChoice representative, on-site installation or technical support assistance from a third-party service provider.

6. PlumChoice provides the Dispatch Services in exchange for monthly payments in arrears pursuant to the terms of a payment schedule agreed to by PlumChoice and Circuit City. PlumChoice issues invoices at the beginning of each month for the Dispatch Services expected to be delivered during such month along with any reconciliation to billed versus actual services for the prior month. Under the terms of the Dispatch Agreement, Circuit City pays such invoices within forty-five (45) days of receipt. At present, Circuit City owes PlumChoice approximately $230,962.73 for Dispatch Services provided on and after the Petition Date.

7. Section 10.1 of the Dispatch Agreement provides that the initial term of the agreement shall be for a period of one (1) year and, at the completion of the initial term (i.e. May 31, 2007), the agreement will automatically renew for successive terms of two (2) years "unless either Party notifies the other party of its intent to allow this Agreement to expire at least ninety

5

Case 08-35653-KRH    Doc 1832    Filed 01/28/09    Entered 01/28/09 15:57:30    Desc Main
                        Document      Page 6 of 18

(90) days prior to the expiration of the period then in effect." In addition, Section 10.6 of the Dispatch Agreement provides that "PlumChoice may terminate this Agreement for its convenience upon its delivery of ninety (90) days written notice to Circuit City" and that "Circuit City may terminate this Agreement for its convenience upon its delivery of sixty (60) days written notice to PlumChoice."

8. As set forth in greater detail in the *Motion of PlumChoice, Inc. for Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(1) to Permit Termination of Dispatch Agreement* [Dkt. No. 1498], the Dispatch Agreement requires PlumChoice, among other things, to hire and train employees to perform the Dispatch Services. Such employees must be primarily dedicated to providing the Dispatch Services rather than providing other services to other customers of PlumChoice. Prior to the Petition Date, on or about November 1, 2008, PlumChoice had approximately 175 employees dedicated solely to providing Dispatch Services under the Dispatch Agreement. Subsequently, however, the Debtors requested that PlumChoice drastically reduce the number of PlumChoice personnel designated to perform Dispatch Services to approximately 35 individuals as of February 5, 2009, as the Debtors stated that they intended to transfer such services to a company other than PlumChoice.

**D.    The PTS Services Agreement.**

9. On or about May 1, 2008, Circuit City and Verizon Corporate Services Group, Inc. ("Verizon") entered into that certain General Services Agreement (the "Prime Contract"), pursuant to which Verizon engaged Circuit City to provide remote diagnostic and sales support personal computing services to Verizon's customers. See *Debtor's Motion for Order Pursuant to Bankruptcy Code Section 105 and Bankruptcy Rule 9019 Approving Agreement Between*

6

*Debtors and Verizon Corporate Services Group, Inc.* [Dkt. No. 1452]. The services provided by Circuit City thereunder were categorized as either "Premium Technical Support Services" or "Sales Support." See id. Each category had its own fee structure, pursuant to which Verizon agreed to pay Circuit City for the services it (or its subcontractor) rendered. See id.

10. In connection with the Prime Contract, Circuit City and PlumChoice entered into that certain Premium Technical Support Services Agreement dated as of May 29, 2008 (the "PTS Services Agreement"), pursuant to which Circuit City engaged PlumChoice, as a subcontractor, to fulfill Circuit City's remote technical service obligations (the "Remote PTS Services") and sales support obligations under the Prime Contract. PlumChoice provided the Remote PTS Services in exchange for monthly payments in arrears pursuant to the terms of a fee schedule agreed to by PlumChoice and Circuit City. At present, Circuit City owes PlumChoice approximately $798,560.18 for Remote PTS Services provided on and after the Petition Date.

11. Section 3.3. of the PTS Services Agreement states that "in the event either the Remote Services Agreement or [the PTS Services Agreement] is terminated prior to December 31, 2008 for Circuit City's convenience or as a result of the termination of the Prime Contract, then Circuit City shall reimburse PlumChoice for all Infrastructure Costs incurred." "Infrastructure Costs" under the PTS Services Agreement include all "of PlumChoice's non-personnel costs and expenses required to accommodate the fulfillment of Remote PTS Services to Verizon Customers." To date, PlumChoice has incurred, and Circuit City has not reimbursed, Infrastructure Costs under the PTS Services Agreement in an amount equal to $1,878,766.24.[2]

---

[2] In addition, Section 3.3 of the PTS Services Agreement provides that if Circuit City reimburses PlumChoice for Infrastructure Costs in accordance with such section, then "the Parties shall identify and PlumChoice shall transfer ownership of such physical equipment and any written materials related to project management or systems development to Circuit City and the cost of such physical equipment and written materials

7

12.   In addition, the PTS Services Agreement requires PlumChoice, in the event of the termination of the contract, to complete performance of any previously-scheduled Remote PTS Services and to work with Circuit City to resolve any outstanding disputes or requests relating to Remote PTS Services that were not resolved prior to such termination.  In the event Circuit City terminates the PTS Services Agreement because the Prime Contract has been terminated "for any reason," then Section 5.6 provides that Circuit City shall pay to PlumChoice "an amount equal to two (2) times the sum of the Committed Recurring PTS Subscription Fees and the Committed Sales Support Fees payable with respect to the month during which such termination occurs" (collectively, the "Wind-Down Expenses").  The purpose of the Wind-Down Expenses is to allow Plumchoice to reduce the Remote PTS Services provided on behalf of Circuit City in an orderly fashion and to compensate PlumChoice for actual services provided and costs incurred on behalf of Circuit City during the period following termination.

13.   Of the Wind-Down Expenses, the "Committed Recurring PTS Subscriptions Fees" are calculated based on the forecasted number of active subscriptions to Remote PTS Services by a Verizon customer that PlumChoice will be obligated to service with respect to the month during which termination occurs.  The "Committed Sales Support Fees," meanwhile, are calculated based on the forecasted number of hours that PlumChoice customer service representatives will spend providing Sales Support Services with respect to the month during which termination occurs.  Pursuant to Section 5.6 of the PTS Services Agreement, two (2) times

---

have been fully paid by virtue of such reimbursement."  PlumChoice will perform this obligation, to the extent applicable, in good faith and in accordance with the terms of the PTS Services Agreement in the event this Motion is approved and Circuit City pays the amounts sought hereunder as administrative expenses.

8

the sum of the Committed Recurring PTS Subscription Fees and the Committed Sales Support Fees payable with respect to the month ending December 31, 2008, equals $808,104.00.

**E.    The Bankruptcy Cases.**

14.    The Debtors commenced these cases on November 10, 2008 (the "Petition Date"), by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate their businesses and manage their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

15.    On and after the Petition Date, PlumChoice continued to provide, and the Debtors continued to receive and accept, services under each of the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement. Then, on December 31, 2008, Circuit City informed PlumChoice in writing and without any prior notice that Circuit City was terminating immediately the Remote Services Agreement, the PTS Services Agreement and the Prime Contract.[3] To date, the Debtors have not rejected the PTS Services Agreement, the Remote Services Agreement or any other agreement between the Debtors and PlumChoice.

16.    In addition, the Debtors have continued to utilize the Dispatch Services during the post-petition period. PlumChoice, meanwhile, wished to terminate the Dispatch Agreement in an orderly fashion as a result of the low margins, high costs and other administrative burdens associated therewith but could not reach a mutually satisfactory agreement with the Debtors with respect to the termination thereof. Therefore, on or about January 13, 2009, and out of an abundance of caution, PlumChoice filed its *Motion of PlumChoice, Inc. for Relief from the*

---

[3]    As set forth in the *Debtor's Motion for Order Pursuant to Bankruptcy Code Section 105 and Bankruptcy Rule 9019 Approving Agreement Between Debtors and Verizon Corporate Services Group, Inc.* [Dkt. No. 1452], the Debtors and Verizon have agreed that the Prime Contract terminated as of December 31, 2008.

9

*Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(1) to Permit Termination of Dispatch Agreement* [Dkt. No. 1498], pursuant to which PlumChoice seeks relief from the automatic stay to permit it to terminate the Dispatch Agreement in accordance with the notice provisions set forth therein and to otherwise stop providing the Dispatch Services to the Debtors.

17. However, on or about January 20, 2009, the Debtors unilaterally terminated the Dispatch Agreement and instructed PlumChoice to cease providing any Dispatch Services thereunder. The Debtors did not provide, as required under the express terms of the Dispatch Agreement, any prior notice to PlumChoice of their intent to terminate the Dispatch Agreement, thereby saving the Debtors the cost of continuing to pay amounts due to PlumChoice during the sixty (60) day notice period. As a result, PlumChoice was unable to dismiss or transition all personnel providing services under the Dispatch Agreement, reduce operating costs and otherwise take the steps necessary to minimize the costs associated with ramping down the services provided under the Dispatch Agreement in an orderly fashion. PlumChoice has incurred costs totaling approximately $43,690.76 as a result of the Debtors' breach of the Dispatch Agreement.

## ARGUMENT

**A.     Section 503(b) of the Bankruptcy Code.**

18. Section 503 of the Bankruptcy Code provides, in relevant part, that:

> "(b)    After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> > (1)(A)  the actual, necessary costs and expenses of preserving the estate, including wages, salaries, and commissions for services rendered after the commencement of the case."

11 U.S.C. § 503(b)(1)(A).  Together, Sections 507(a) and 503(b) "afford first priority to administrative expenses 'to encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the estate.'"  Bonapfel v. Nalley Motor Trucks (In re Carpet Ctr. Leasing Co.), 991 F.2d 682, 685 (11th Cir. 1993) (internal citation omitted).

19.    "For a claim to qualify as an administrative expense, (1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business."  Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 64 F.3d 141, 145 n.2 (4th Cir. 1995) (citations omitted); see also Devan v. Simon DeBartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.), 180 F.3d 149, 157 (4th Cir. 1999) ("test to determine actual expense is whether the claim arose out of a post-petition transaction" and "test to determine necessary expense is whether [the creditor's] consideration supporting its right to payment was 'supplied to and beneficial to' [the bankruptcy estate]").

20.    "That which is actually utilized by a Trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate [under § 503(b)] and should be accorded the priority of an administrative expense."  Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 867 (4th Cir. 1994) (quoting Broadcast Corp. v. Broadfoot (In re Subscription Television), 789 F.2d 1530, 1532 (11th Cir. 1986)).  Indeed, "[i]f the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume a contract, the debtor-in-possession is obligated to pay for the reasonable value of those

11

services." <u>NLRB v. Bildisco and Bildisco</u>, 465 U.S. 513, 531 (1984) (noting that the reasonable value of those services often is the amount specified in the applicable contract).

21. Moreover, the post-petition breach by a debtor of a prepetition contract may entitle the counterparty to the contract to an administrative expense under Section 503(b), particularly if the breach benefits the debtor by saving the estate the costs associated with the performance of the contract. <u>See</u> <u>In re Hayes Lemmerz Int'l, Inc.</u>, 340 B.R. 461, 478 (Bankr. D. Del. 2006) (holding that lessor was entitled to administrative expense claim for debtor's failure to properly store, maintain and repair leased equipment).

**B.     The Amounts Due Under the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement Constitute Administrative Expenses of the Debtors' Bankruptcy Estates.**

22. As of the date hereof, the following amounts are due under the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement:

| **Description of Amount Due:** | **Amount Due:** |
|---|---|
| Post-Petition Services under Remote Services Agreement: | $110,111.30 |
| Post-Petition Services under Dispatch Agreement: | $230,962.73 |
| Post-Petition Services under PTS Services Agreement: | $798,560.18 |
| Infrastructure Costs under PTS Services Agreement: | $1,878,766.24 |
| Wind-Down Expenses under PTS Services Agreement: | $808,104.00 |
| **Total:** | **$3,826,504.45** |

23. PlumChoice's administrative expense claims under the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement clearly arise out of a post-petition transaction between PlumChoice and the Debtors. As noted above, PlumChoice

12

provided the Remote Diagnostic Services, the Dispatch Services and the Remote PTS Services to Circuit City's customers (including Verizon's customers on behalf of Circuit City) after the Petition Date.  The Debtors never moved to reject the Remote Services Agreement, the Dispatch Agreement, the PTS Services Agreement, or any other agreement between PlumChoice and the Debtors, but rather required PlumChoice to perform its obligations thereunder.  Nevertheless, the Debtors have failed to pay for such services.

24. Similarly, the consideration supporting PlumChoice's right to payment was supplied to and beneficial to the Debtors in the operation of their businesses.  Without the services provided by PlumChoice, Circuit City would have been unable to satisfy its obligation to provide services to its customers (including, without limitation, to Verizon's customers pursuant to the terms of the Prime Contract).  The Debtors have received an undeniable benefit on account of such services, i.e. payment from their customers.  Indeed, as set forth in the *Debtor's Motion for Order Pursuant to Bankruptcy Code Section 105 and Bankruptcy Rule 9019 Approving Agreement Between Debtors and Verizon Corporate Services Group, Inc.* [Dkt. No. 1452], the Debtors have received payment in full from Verizon on account of Remote PTS Services provided by PlumChoice on behalf of Circuit City after the Petition Date.  In addition, the services provided under each of the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement preserved the value of the Debtors' firedog$^{SM}$ assets, which the Debtors now have marketed for sale.

25. Moreover, on December 31, 2008, the Debtors terminated the PTS Services Agreement with full knowledge that, if they took such action, the Debtors would be obligated under the terms of that contract (A) to reimburse PlumChoice for all Infrastructure Costs

13

incurred by PlumChoice in order to perform its obligations thereunder, and (B) to pay the Wind-Down Expenses to compensate PlumChoice for actual services provided and costs incurred on behalf of Circuit City during the period following termination. Thereafter, PlumChoice complied with its post-petition obligations under the PTS Services Agreement to complete performance of any previously-scheduled Remote PTS Services and to work with Circuit City to resolve any outstanding disputes or requests relating to Remote PTS Services that were not resolved prior to the termination date. Presumably, the Debtors calculated that the benefit to their estates of terminating the PTS Services Agreement, and thereby decreasing the cost to the Debtors of paying PlumChoice for services provided thereunder, outweighed the Infrastructure Costs and Wind-Down Expenses due to PlumChoice upon a termination event. As a result, PlumChoice respectfully requests that the Infrastructure Costs and Wind-Down Expenses be paid as administrative expenses of the Debtors' estates.

26.     In addition, the Debtors are obligated to pay for the reasonable value of the services rendered by PlumChoice during the post-petition period pending a decision by the Debtors to reject or assume the applicable contract. See Bildisco, 465 U.S. at 531. Here, in addition to amounts due in the ordinary course, Circuit City and PlumChoice agreed that Circuit City would reimburse PlumChoice for all Infrastructure Costs incurred by PlumChoice in the event Circuit City terminated the PTS Services Agreement on or prior to December 31, 2008, and further agreed that Circuit City would pay the Wind-Down Fees in the event Circuit City terminated the PTS Services Agreement because the Prime Contract was terminated. These amounts were meant to reasonably compensate PlumChoice for services rendered and costs incurred on behalf of Circuit City and allow PlumChoice to wind down the services provided to

14

Verizon's customers in an orderly fashion. Accordingly, such amounts should be paid as administrative expenses of the Debtors' estates.

### C. The Costs Incurred by PlumChoice in Connection with the Debtors' Breach of the Dispatch Agreement Constitute Administrative Expenses of the Debtors' Bankruptcy Estates.

27. PlumChoice's administrative expense claim under the Dispatch Agreement also arises out of a post-petition transaction between PlumChoice and the Debtors. As noted above, PlumChoice faithfully provided Dispatch Services to the Debtors after the Petition Date at the Debtors' request. Such services were beneficial to the Debtors in the operation of their businesses as such services enabled the Debtors to satisfy their service obligations to their customers. Further, as evidenced by its *Motion of PlumChoice, Inc. for Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(1) to Permit Termination of Dispatch Agreement* [Dkt. No. 1498], PlumChoice has at all times sought to comply with the terms of the Dispatch Agreement, including, without limitation, complying with the termination provisions set forth therein. In addition, PlumChoice has sought to abide by the Debtors' requests during the post-petition period that PlumChoice provide a certain number of personnel solely devoted to providing Dispatch Services.

28. On or about January 20, 2009, however, the Debtors unilaterally terminated the Dispatch Agreement without any prior notice to PlumChoice and instructed PlumChoice to cease providing any Dispatch Services thereunder. As a result, the Debtors failed to comply with their obligation to provide PlumChoice with sixty (60) days' prior notice of their intent to terminate the Dispatch Agreement. Immediate termination of the Dispatch Agreement enabled the Debtors—to their benefit—to save the costs of continuing to pay amounts due to PlumChoice

during the sixty (60) day notice period. In addition, the Debtors' breach of the Dispatch Agreement prevented PlumChoice from dismissing or transitioning all personnel providing services thereunder, reducing operating costs and otherwise taking the steps necessary to minimize the costs associated with ramping down the services provided under the Dispatch Agreement in an orderly fashion. Accordingly, PlumChoice respectfully requests that such costs, totaling $43,690.76, be paid as administrative expenses of the Debtors' estates.

## RESERVATION OF RIGHTS

29. PlumChoice expressly reserves any and all of its rights under the Remote Services Agreement, the PTS Services Agreement, the Dispatch Agreement, all other agreements between the parties, and applicable law. Nothing contained herein shall operate as a waiver of any of PlumChoice's claims, rights and remedies.

## NO PRIOR REQUEST

30. No previous application for the relief requested herein has been made by PlumChoice to this or any other Court.

## WAIVER OF MEMORANDUM OF LAW

31. PlumChoice respectfully requests that the Court treat this Motion as a written memorandum of points and authorities and waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as required by Local Bankruptcy Rule 9013-1(G). PlumChoice reserves the right to file a brief in reply to any objection to this Motion.

## NOTICE

32.  Notice of this Motion will be given to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, (iii) Counsel for the Official Committee of Unsecured Creditors, and (iv) all parties that have requested notice of papers with the Court's CM/ECF Noticing System pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  PlumChoice submits that no other or further notice of this Motion is required.

WHEREFORE, PlumChoice respectfully requests that this Court enter an order:

(A)  Directing the Debtors to pay immediately the amounts due on account of post-petition services provided and costs incurred by PlumChoice to the Debtors under the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement (including, without limitation, the Infrastructure Costs and Wind-Down Fees due thereunder), totaling $3,826,504.45, as administrative expenses pursuant to 11 U.S.C. §§ 503(b) and 507(a);

(B)  Directing the Debtors to pay immediately the costs incurred by PlumChoice in connection with the Debtors' breach of that Dispatch Agreement, totaling $43,690.76, as administrative expenses pursuant to 11 U.S.C. §§ 503(b) and 507(a); and

(C)  Granting PlumChoice such other and further relief as the Court deems just and proper.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY.  SIGNATURE TO FOLLOW.]

Dated:  January 28, 2009            Respectfully submitted,

/s/ Troy Savenko
GREGORY KAPLAN, PLC
Troy Savenko (Va. Bar No. 44516)
Leslie A. Skiba (Va. Bar No. 48783)
7 East Second Street (23224-4253)
Post Office Box 2470
Richmond, Virginia 23218-2470
Phone: (804) 423-7921
Fax: (804) 230-0024

 - and –

CHOATE, HALL & STEWART LLP
John F. Ventola, Esq.
Sean M. Monahan, Esq.
Two International Place
Boston, Massachusetts 02110
Tel:  (617) 248-5000
Fax:  (617) 248-4000

*Counsel to PlumChoice, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January, 2009, I caused a copy of the foregoing to be served to all parties receiving notice via the Court's CM/ECF Noticing System and by electronic mail to: (i) Counsel to the Debtors (circuitcityservice@mcguirewoods.com & project.circuitcity@skadden.com), (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division (Robert.B.Van.Arsdale@usdoj.gov), and (iii) Counsel for the Official Committee of Unsecured Creditors (bgodshall@pszjlaw.com, jfiero@pszjlaw.com, rfeinstein@pszjlaw.com, jpomerantz@pszjlaw.com, ltavenner@tb-lawfirm.com, & pberan@tb-lawfirm.com)

/s/ Troy Savenko