Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
Circuit City Stores, Inc.,    :   Case No. 08-35653(KRH)
et al.,                       :
                              :
          Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105
AND 363 APPROVING PROCEDURES TO SELL CERTAIN
MISCELLANEOUS ASSETS FREE AND CLEAR OF ALL
INTERESTS WITHOUT FURTHER ORDER OF COURT**

The debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors")[1] hereby move this Court (the "Motion") for

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc.
*(cont'd)*

entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") approving procedures by which the Debtors may sell certain miscellaneous property free and clear of all interests, including liens, claims and encumbrances. In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested here are Bankruptcy Code sections 363(b)(1)

---

*(cont'd from previous page)*
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

and 363(f)and Rules 2002(a)(2) and 2002(i) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going

3

out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

### RELIEF REQUESTED

7. By this Motion, the Debtors seek entry of an order approving certain procedures by which the Debtors may sell certain miscellaneous assets, from time to time, subject to certain notice procedures set forth herein.

### BASIS FOR RELIEF

8. The Debtors are currently in possession of certain assets that have a significant range in value and for which no one purchaser would be interested in purchasing. However, the Debtors believe that there are various potential purchases that may be interested in one item or groups of items, which the Debtors also believe they would be able to profitably sell for the benefit of their estates and creditors. For example, these assets include, but are not limited to, defective or obsolete merchandise, furniture, fixtures, owned equipment, and other personal and real property (the "Miscellaneous Assets"). In the event the Debtors are able to locate buyers for such assets, it is likely that

4

the proposed buyers' offers will be conditioned on a quick sale and a process that minimizes costs and expenses.

9. Accordingly, the Debtors desire to implement procedures pursuant to which they may sell Miscellaneous Assets, individually or in groups, on an expedited basis, without incurring the delay and costs associated with the preparation, filing, service, and hearing of a motion for approval of each such sale, free and clear of all interests, including liens, claims, and encumbrances ("Interests"), with any such Interest attaching to the sale proceeds (each an "Miscellaneous Asset Sale"). Because of the types of assets involved, the short window of opportunity often available to consummate sale transactions for such assets, and the relatively low value of the Miscellaneous Assets (in light of the size of the Debtors' estates), the Debtors believe that conducting auctions and obtaining Court approval for each proposed sale transaction will, in many cases, result in costs that are disproportionate to the anticipated sale proceeds.

10. In order to strike a balance between the desire to maximize the value of the Miscellaneous Assets to the Debtors' estates and the necessity of providing parties in interest notice and an opportunity to object to transactions out of the ordinary course of business, the Debtors propose the following procedures for the sale of Miscellaneous Assets:

(a) The Debtors are authorized to sell Miscellaneous Assets with a purchase price equal to or less than $100,000 without notice to any party or further court order; <u>provided</u> <u>however</u>, that within seven days of the closing of such sale, the Debtors shall provide a report of such sale to counsel for the DIP Agent and counsel for the Creditors' Committee, which report shall identify the purchaser, the Miscellaneous Assets sold, and the purchase price for such assets.

(b) The Debtors are authorized to sell Miscellaneous Assets with a purchase price greater than $100,000 and equal to or less than $500,000; <u>provided</u>, that the Debtors shall provide written notice (each a "Sale Notice"), by facsimile or electronic mail, of each such proposed Miscellaneous Asset Sale to (i) counsel for the Creditors' Committee, (ii) counsel for the DIP Agent, (iii) if applicable, the landlord for the premises where the Miscellaneous Assets sought to be sold are located, (iv) the taxing authority and/or counsel for the taxing authority (if known) for the jurisdictions in which the Miscellaneous Assets sought to be sold are located, and (vi) any known holder of a lien, claim, or encumbrance against the specific Miscellaneous Asset or Assets to be sold (collectively, the "Notice Parties"). The Notice Parties shall have five business days (a "Notice Period") after the Sale Notice is sent to object to such Miscellaneous Asset Sale.

(c) The Debtors are authorized to sell Miscellaneous Assets with a purchase price greater than $500,000 and equal to or less than $2,000,000; provided, that the Debtors shall send a Sale Notice, by facsimile or electronic mail, of each such proposed Miscellaneous Asset Sale to the Notice Parties. The Notice Parties shall have ten business days (also a "Notice Period") after the Sale Notice is sent to object to such Miscellaneous Asset Sale.

(d) The Sale Notice will specify (i) the asset or assets to be sold, (ii) the identity of the proposed purchaser (including a statement of any connection between the proposed purchaser and the Debtors), and (iii) the proposed sale price, and if requested by the purchaser, attach a copy of a proposed form of order.

(e) If counsel to the Debtors receives no written objection prior to the expiration of the applicable Notice Period, the Debtors shall be authorized to consummate the proposed Miscellaneous Asset Sale and to take such actions as are necessary to close the sale and obtain the sale proceeds without further order of the court; provided, however, that, if requested by the proposed purchaser, the Debtors are authorized to submit a proposed form of order approving a Miscellaneous Asset Sale without further notice or hearing.

(f) If a Notice Party objects to the proposed transaction within Notice Period and the Debtors and such objecting Notice Party are unable to achieve a consensual resolution, the Debtors will not take any further steps to consummate the Miscellaneous Asset Sale without first obtaining the Court's approval for that specific transaction, which approval may be obtained on an expedited basis, including through telephonic means, with advance notice to the Objecting Notice Party.

(g) Within fifteen days following the end of each calendar month in which a Miscellaneous Asset Sale has taken place, the Debtors will file a report of Miscellaneous Asset Sales that occurred during such calendar month.

**APPLICABLE AUTHORITY**

**I.   THE RELIEF REQUESTED IN THE MOTION REFLECTS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT.**

11. Bankruptcy Code section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

12. Assets of the Debtors may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so. In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see

8

also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

13. To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable; and (4) adequate and reasonable notice of the sale has been provided. In re WBQ P'ship, 189 B.R. at 102.

14. The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See Comm. Of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

15. Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company.'" Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

16. In the event the Court determines there is a sound business justification for the transaction, the Court may, pursuant to Bankruptcy Code section 363(f), authorize the sale of the assets free and clear of any interest. Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

10

17. Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met. See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

18. Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively. See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens."). Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace. See In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

19. As set forth above, the Debtors have a sound business justification for selling the Miscellaneous Assets and for establishing procedures to permit the Debtors to accomplish such sales in the most efficient manner possible. Indeed, allowing the Debtors to sell assets pursuant to the procedures proposed above provides the most efficient and cost-effective means of maximizing the value of the Miscellaneous Assets and, thus, is in the best interests of the Debtors' estates. Obtaining Court approval of each such sale transaction would result in administrative expenses for drafting, serving, and filing pleadings, as well as time incurred by attorneys for appearing at Court hearings. The Debtors believe that the proceeds that will be generated by many of the sale transactions for Miscellaneous Assets do not warrant incurring such expenses. The Debtors are seeking the Court's authority to sell the Miscellaneous Assets to reduce indebtedness and yield the highest possible returns to the Debtors' creditors.

20. Moreover, the procedures set forth herein will permit the Debtors to be responsive to the needs of purchasers, thereby guarding against lost sales due to

12

delay, while still providing for a review of the proposed transaction by the DIP Agent and the Creditors' Committee.  Additionally, the Debtors believe that the notice procedures set forth herein satisfy the requirements of Bankruptcy Code section 363(f).  If a holder of a lien or other encumbrance receives the requisite notice and does not object within the Notice Period, such holder will be deemed to have consented to the proposed sale and the property then may be sold free and clear of such holder's lien or other encumbrance, with such lien and encumbrance to attach to the cash proceeds of the sale in the order of their priority, with the same validity, force, and effect which they had as against the Miscellaneous Assets immediately before such transfer, subject to any claims and defenses the Debtors may possess with respect thereto.

21.    In summary, the procedures outlined above will minimize administrative costs in these cases, speed the liquidation of Miscellaneous Assets, and at the same time preserve the rights of interested parties to object to any sale that such parties do not deem appropriate.

**NOTICE**

22. Notice of this Motion has been provided to those parties who have requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130; the "Case Management Order")).

**WAIVER OF MEMORANDUM OF LAW**

23. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

24. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: February 3, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

15