UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case No. 08-35653 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**AFFIDAVIT OF DANIEL BAKER IN SUPPORT OF
MOTION OF PLUMCHOICE, INC. FOR ORDER DIRECTING
DEBTORS TO PAY ADMINISTRATIVE EXPENSES PURSUANT TO
11 U.S.C. §§ 503(b) AND 507(a) AND REQUEST FOR RELATED RELIEF**

I, Daniel Baker, hereby deposes and states as follows:

1. I am the Chief Financial Officer of PlumChoice, Inc. ("PlumChoice"), a provider of online computer support services to businesses and individuals with its principal place of business in Billerica, Massachusetts. I make this affidavit in support of the *Motion of PlumChoice, Inc. for Order Directing Debtors to Pay Administrative Expenses Pursuant to 11 U.S.C. §§ 503(b) and 507(a) and Request for Related Relief* [Dkt. No.1832] filed with this Court on January 28, 2009, in the above-referenced bankruptcy cases of Circuit City Stores, Inc. ("Circuit City") and its affiliated debtors (collectively, the "Debtors"). I have personal knowledge of the facts set forth below and, if called upon to testify, I could and would do so truthfully.

A. **The Remote Services Agreement – Amounts Due for Post-Petition Services.**

2. On or about February 15, 2007, Circuit City and PlumChoice entered into that certain Remote Services Agreement (as amended by that certain Amendment No. 1 to Remote Services Agreement dated as of August 13, 2007, the "Remote Services Agreement"), pursuant to which Circuit City engaged PlumChoice to provide online, remote diagnostic services (the

"Remote Diagnostic Services") to customers of Circuit City's firedog$^{SM}$ technical support service throughout the United States and its territories.

3. The Remote Diagnostic Services are marketed and sold to Circuit City's customers as designated product offerings under Circuit City's firedog$^{SM}$ brand ("Remote Service Products"). In particular, the Remote Service Products are marketed and sold to Circuit City's customers through various sales channels, including Circuit City's stores, online at online.firedog.com, a dedicated toll-free telephone number hosted by PlumChoice, and by Circuit City's firedog$^{SM}$ representatives as part of consumer electronics installation, repair or configuration services.

4. Circuit City and PlumChoice share in the revenues generated from the sale of Remote Service Products. Pursuant to the terms of the Remote Services Agreement, PlumChoice's portion of the price paid by a customer for a particular Remote Service Product is determined by the sales channel through which such product is sold. For example, Circuit City pays PlumChoice fifty percent (50%) of the revenue generated from the sale of a Remote Service Product at a Circuit City store (subject to adjustments as set forth in the Remote Services Agreement, such as adjustments based on the number of Remote Service Products sold at a Circuit City store in any month that a customer actually used in such month), while PlumChoice pays Circuit City twenty-five percent (25%) of the revenue generated by PlumChoice from the sale of a Remote Service Product through online.firedog.com.

5. PlumChoice provides the Remote Diagnostic Services in exchange for monthly payments in arrears. Typically, PlumChoice issues an invoice at the end of each month for services provided to Circuit City in such month. Such invoices show the retail cost of the

Remote Service Products sold minus the share of such revenues due to Circuit City and other credits (including returns). As of the date hereof and as set forth in greater detail on <u>Exhibit A</u> hereto, Circuit City owes PlumChoice $110,111.30 for Remote Diagnostic Services provided on and after November 10, 2008.

**B.    <u>The Dispatch Agreement – Amounts Due for Post-Petition Services</u>.**

6.    On or about May 31, 2006, PlumChoice and Circuit City entered into that certain Services Agreement (the "<u>Dispatch Agreement</u>"), pursuant to which PlumChoice agreed to perform telephonic dispatch support and scheduling services (the "<u>Dispatch Services</u>") to Circuit City's home theater installation, home delivery and personal computer service business units. The Dispatch Agreement allows customers of Circuit City's firedog$^{SM}$ technical support service to schedule, over the telephone with a PlumChoice representative, on-site installation or technical support assistance from a third-party service provider.

7.    PlumChoice provides the Dispatch Services in exchange for monthly payments in arrears pursuant to the terms of a fee schedule agreed to by PlumChoice and Circuit City. In particular, PlumChoice charges Circuit City a fixed amount per hour spent by a PlumChoice representative providing Dispatch Services, with PlumChoice charging a higher or lower hourly rate based on the type of Dispatch Services provided. For example, PlumChoice charges a higher rate for representatives dedicated to a specific geographical area that handle technical questions—rather than scheduling inquiries—from customers or Circuit City's in-store personnel ("<u>Geographic Dispatch Services</u>"). Similarly, PlumChoice charges a different hourly rate for technicians dedicated to fielding questions from Circuit City's on-site technicians ("<u>Tier 3 Dispatch Services</u>"). Finally, PlumChoice charges a different hourly rate for those technicians

3

kept on staff at all times at Circuit City's request—i.e., twenty four hours a day and seven days a week—to provide technical services for Circuit City customers wishing to schedule an after hours appointment (the "24x7 Services").

8.  PlumChoice issues invoices at the beginning of each month for the Dispatch Services expected to be delivered during such month along with any reconciliation to billed versus actual services for the prior month. Under the terms of the Dispatch Agreement, Circuit City pays such invoices within forty-five (45) days of receipt. As of the date hereof and as set forth in greater detail on Exhibit B hereto, Circuit City owes PlumChoice approximately $230,962.73 for Dispatch Services provided on and after November 10, 2008.

C.  **The Dispatch Agreement – Damages Due to Debtors' Breach.**

9.  Section 10.1 of the Dispatch Agreement provides that the initial term of the agreement shall be for a period of one (1) year and, at the completion of the initial term (i.e. May 31, 2007), the agreement will automatically renew for successive terms of two (2) years "unless either Party notifies the other party of its intent to allow this Agreement to expire at least ninety (90) days prior to the expiration of the period then in effect." In addition, Section 10.6 of the Dispatch Agreement provides that "PlumChoice may terminate this Agreement for its convenience upon its delivery of ninety (90) days written notice to Circuit City" and that "Circuit City may terminate this Agreement for its convenience upon its delivery of sixty (60) days written notice to PlumChoice."

10. As set forth in greater detail in the *Motion of PlumChoice, Inc. for Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(1) to Permit Termination of Dispatch Agreement* [Dkt. No. 1498], the Dispatch Agreement requires PlumChoice, among

other things, to hire and train employees to perform the Dispatch Services. Such employees must be primarily dedicated to providing the Dispatch Services rather than providing other services to other customers of PlumChoice. On or about November 1, 2008, PlumChoice had approximately 175 employees dedicated solely to providing Dispatch Services under the Dispatch Agreement.

11. At the Debtors' direction, PlumChoice provided Dispatch Services to the Debtors after the commencement of the Debtors' bankruptcy cases. PlumChoice, however, wished to terminate the Dispatch Agreement in an orderly fashion as a result of the low margins, high costs and other administrative burdens associated therewith but could not reach a mutually satisfactory agreement with the Debtors with respect to the termination thereof. Rather, on or about January 5, 2009, the Debtors directed PlumChoice to reduce drastically the number of PlumChoice personnel designated to perform Dispatch Services to approximately 35 individuals by no later than February 5, 2009, as the Debtors stated that they intended to transfer such services to a company other than PlumChoice.

12. Therefore, on or about January 13, 2009, and out of an abundance of caution, PlumChoice filed its *Motion of PlumChoice, Inc. for Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(1) to Permit Termination of Dispatch Agreement* [Dkt. No. 1498], pursuant to which PlumChoice seeks relief from the automatic stay to permit it to terminate the Dispatch Agreement in accordance with the notice provisions set forth therein and to otherwise stop providing the Dispatch Services to the Debtors.

13. On or about January 19, 2009, the Debtors informed PlumChoice that, in light of the Debtors' liquidation, the Debtors were beginning the process of winding down Circuit City's

firedog[SM] technical support service and therefore January 20, 2009, would be "the last day Circuit City will require dispatch services from PlumChoice." On January 21, 2009, PlumChoice's outside counsel, Charles J. Johnson of the law firm Choate, Hall & Stewart LLP, sent an email to Circuit City's assistant general counsel, Daniel W. Ramsey, confirming that, based on oral and written instructions from Circuit City that Circuit City had terminated the Dispatch Agreement effective January 20, 2009. Upon information and belief, Mr. Ramsey did not respond to Mr. Johnson's email of January 21, 2009. On or about January 23, 2009, PlumChoice received further instructions from Circuit City related to severing the parties' relationship, including the destruction of all materials related to firedog[SM].

14.  The Debtors did not provide, as required under the express terms of the Dispatch Agreement, any prior notice to PlumChoice of their intent to terminate the Dispatch Agreement. As a result, PlumChoice was unable to dismiss or transition all personnel providing services under the Dispatch Agreement, reduce operating costs and otherwise take the steps necessary to minimize the costs associated with ramping down the services provided under the Dispatch Agreement in an orderly fashion. Based on the cost of paying PlumChoice employees dedicated to the Circuit City account until management could reallocate such employees to another customer account (which was done as quickly as possible), PlumChoice has incurred costs totaling approximately $43,690.76 as a result of the Debtors' termination of the Dispatch Agreement.

D.   **The PTS Services Agreement – Amounts Due for Post-Petition Services.**

15.  Upon information and belief, on or about May 1, 2008, Circuit City and Verizon Corporate Services Group, Inc. ("Verizon") entered into that certain General Services Agreement

(the "Prime Contract"), pursuant to which Verizon engaged Circuit City to provide remote diagnostic computing services to Verizon's customers via the telephone and internet.

16. In connection with the Prime Contract, Circuit City and PlumChoice entered into that certain Premium Technical Support Services Agreement dated as of May 29, 2008 (the "PTS Services Agreement"), pursuant to which Circuit City engaged PlumChoice, as a subcontractor, to fulfill Circuit City's remote technical service obligations (the "Remote PTS Services"). The Remote PTS Services are marketed and sold to Verizons's customers as designated product offerings under Verizon's "PTS" brand ("PTS Service Products"). In addition to providing Remote PTS Services on Circuit City's behalf under the PTS Services Agreement, PlumChoice accepts and processes calls for the sales of PTS Service Products to Verizon's customers ("PTS Sales Support Services") and provides dispatch and scheduling services to Verizon's customers similar to the services PlumChoice provides to Circuit City's customers under the Dispatch Agreement ("PTS Dispatch Services").

17. PlumChoice provided services under the PTS Services Agreement in exchange for monthly payments in arrears pursuant to the terms of a fee schedule agreed to by PlumChoice and Circuit City. Such monthly fees included, without limitation: (a) a fixed amount for each active subscription to Remote PTS Services by a Verizon customer; (b) a fixed amount for each active subscription to Remote PTS Services by a Verizon customer that is terminated ("PTS Termination Fees"); (c) a fixed amount for each time that PlumChoice provides Remote PTS Services to a Verizon customer that does not have a subscription to such services ("One-Time PTS Fees"); (d) a fixed amount per hour spent by a PlumChoice representative providing PTS Sales Support Services; (e) a fixed amount per minute spent by PlumChoice (as calculated by

7

switch time) procuring circuits, circuit interface equipment and other telecommunications equipment necessary to provide Remote PTS Services, PTS Sales Support Services and PTS Dispatch Services to Verizon customers ("Telecommunication Costs"); (f) to the extent calls directed in error to a PlumChoice representative providing Remote PTS Services and PTS Sales Support Services account for more than five percent (5%) of the total volume of calls in a given month, a fixed fee for each such call ("Misrouted Call Fees"); and (g) a fixed amount per hour spent by a PlumChoice representative providing PTS Dispatch Services.

18.  With respect to the fees for Remote PTS Services, PTS Sales Support Services and PTS Dispatch Services only, PlumChoice issued invoices at the beginning of each month for such services expected to be delivered during such month along with any reconciliation to billed versus actual services for the prior month. With respect to all other fees, PlumChoice issued invoices at the beginning of each month for such fees incurred in the prior month. Under the terms of the PTS Services Agreement, Circuit City pays all such invoices within forty-five (45) days of receipt. As of the date hereof and as set forth in greater detail on Exhibit C hereto, Circuit City owes PlumChoice approximately $798,560.18 for services provided by PlumChoice and fees accrued under the PTS Services Agreement on and after November 10, 2008.

E.  **The PTS Services Agreement – Infrastructure Costs.**

19.  Section 3.3. of the PTS Services Agreement states that "in the event either the Remote Services Agreement or [the PTS Services Agreement] is terminated prior to December 31, 2008 for Circuit City's convenience or as a result of the termination of the Prime Contract, then Circuit City shall reimburse PlumChoice for all Infrastructure Costs incurred." "Infrastructure Costs" under the PTS Services Agreement include all "of PlumChoice's non-

8

personnel costs and expenses required to accommodate the fulfillment of Remote PTS Services to Verizon Customers." As of the date hereof and as set forth in greater detail on <u>Exhibit D</u> hereto, PlumChoice has incurred or will incur Infrastructure Costs under the PTS Services Agreement in an amount equal to $1,878,766.24.

F.   **The PTS Services Agreement – Wind-Down Expenses.**

20.   The PTS Services Agreement requires PlumChoice, in the event of the termination of the contract, to complete performance of any previously-scheduled Remote PTS Services and PTS Sales Support Services and to work with Circuit City to resolve any outstanding disputes or requests relating to Remote PTS Services and PTS Sales Support Services that were not resolved prior to such termination. In the event Circuit City terminates the PTS Services Agreement because the Prime Contract has been terminated "for any reason," then Section 5.6 provides that Circuit City shall pay to PlumChoice "an amount equal to two (2) times the sum of the Committed Recurring PTS Subscription Fees and the Committed Sales Support Fees payable with respect to the month during which such termination occurs" (collectively, the "<u>Wind-Down Expenses</u>"). The purpose of the Wind-Down Expenses is to allow PlumChoice to reduce the Remote PTS Services and PTS Sales Support Services provided on behalf of Circuit City in an orderly fashion and to compensate PlumChoice for actual services provided and costs incurred on behalf of Circuit City during the period following termination.

21.   Of the Wind-Down Expenses, the "Committed Recurring PTS Subscriptions Fees" are calculated based on the forecasted number of active subscriptions to Remote PTS Services by a Verizon customer that PlumChoice will be obligated to service with respect to the month during which termination occurs. The "Committed Sales Support Fees," meanwhile, are

calculated based on the forecasted number of hours that PlumChoice representatives will spend providing PTS Sales Support Services with respect to the month during which termination occurs.

22. On December 31, 2008, Circuit City informed PlumChoice in writing and without any prior notice that Circuit City was terminating immediately the Remote Services Agreement, the PTS Services Agreement and the Prime Contract. Pursuant to Section 5.6 of the PTS Services Agreement, two (2) times the sum of the Committed Recurring PTS Subscription Fees and the Committed Sales Support Fees payable with respect to the month ending December 31, 2008, equals $808,104.00 (i.e., two times the sum of $330,000 of Committed Recurring PTS Subscription Fees and $148,104 of Committed Sales Support Fees incurred in the month ending December 31, 2008).

Signed under the pains and penalties of perjury this 3rd day of February, 2009.

Daniel Baker

## EXHIBIT A

### Remote Services Agreement – Amounts Due for Post-Petition Services

| Date of Invoice | Invoice # | Description | Amount | Payments | Balance |
|---|---|---|---|---|---|
| 30-Nov-08 | 234A | November Sales of Remote Service Products minus Affiliate Marketing Fee[1] | 22,292.83 | (14,297.32) | 7,995.51 |
| 30-Nov-08 | 234B | November Sales of Bundled Remote Service Products | 21,455.28 | (16,373.71) | 5,081.57 |
| 31-Dec-08 | 249A | December Sales of Remote Service Products minus Affiliate Marketing Fee | 22,227.72 | | 22,227.72 |
| 31-Dec-08 | 249B | December Sales of Bundled Remote Service Products | 44,345.75 | | 44,345.75 |
| 31-Dec-08 | 249C | December Sales of CCA Value Driver Bundled Remote Service Products | 30,460.75 | | 30,460.75 |
| TOTAL | | | | | $110,111.30 |

---

[1] The Affiliate Marketing Fee represents the share of revenue from the sale of Remote Service Products due to Circuit City.

## EXHIBIT B

### Dispatch Agreement – Amounts Due for Post-Petition Services

| Date of Invoice | Invoice # | Description | Amount | Payments | Balance |
|---|---|---|---|---|---|
| 1-Jan-09 | 246 | January General Dispatch Services | 151,240.80 | | 151,240.80 |
| 1-Jan-09 | 247 | January Geographic Dispatch Services | 70,349.39 | | 70,349.39 |
| 1-Jan-09 | 248 | January 24x7 Services | 15,144.57 | | 15,144.57 |
| 1-Jan-09 | 258 | January Tier 3 Dispatch Services | 120.00 | | 120.00 |
| 31-Dec-08 | 259 | December Reconciliation for General Dispatch Services | (2,891.75) | | (2,891.75) |
| 31-Dec-08 | 260 | December Reconciliation for Geographic Dispatch Services | (2,178.82) | | (2,178.82) |
| 31-Dec-08 | 261 | December Reconciliation for Tier 3 Dispatch Services | (120.00) | | (120.00) |
| 31-Dec-08 | 262 | December Reconciliation for 24x7 Services | (701.46) | | (701.46) |
| TOTAL | | | | | $230,962.73 |

**EXHIBIT C**

**PTS Services Agreement – Amounts Due for Post-Petition Services**

| Date of Invoice | Invoice # | Description | Amount | Payments | Balance |
|---|---|---|---|---|---|
| 1-Nov-08 | 216A | Estimated November 10-18 PTS Dispatch Services | 16,307.80 | (38,051.52) | (21,743.72) |
| 1-Dec-08 | 240 | Estimated December Remote PTS Services | 330,000.00 | | 330,000.00 |
| 1-Dec-08 | 241 | November 10-30 Telecommunications Costs, Misrouted Call Fees, PTS Termination Fees and One-Time Service Fees | 127,445.60 | | 127,445.60 |
| 1-Dec-08 | 242 | November Reconciliation for PTS Sales Support Services & Estimated December PTS Sales Support Services | 157,960.00 | | 157,960.00 |
| 1-Dec-08 | 243 | Estimated December Remote PTS Services (Small Business Customers) | 56,875.00 | | 56,875.00 |
| 1-Dec-08 | 244 | November 10-30 Telecommunications Costs (Small Business Customers) | 1,077.18 | | 1,077.18 |
| 1-Dec-08 | 237A | November 10-18 Reconciliation for PTS Dispatch Services and related Telecommunications Costs | (1,821.22) | | (1,821.22) |
| 31-Dec-08 | 251 | December Telecommunications Costs and Misrouted Call Fees | 93,043.08 | | 93,043.08 |
| 31-Dec-08 | 252 | December PTS Termination Fees | 54,225.00 | | 54,225.00 |
| 31-Dec-08 | 253 | December Reconciliation for PTS Sales Support Services | (26,070.00) | | (26,070.00) |
| 31-Dec-08 | 254 | December Telecommunications Costs (Small Business Customers) | 1,385.54 | | 1,385.54 |
| 31-Dec-08 | 257 | December One-Time PTS Fees | 4,440.00 | | 4,440.00 |
| TOTAL | | | | | $798,560.18 |

# EXHIBIT D

## Infrastructure Costs

| Description | Amount |
|---|---|
| Rent | 511,404.11 |
| Taxes | 97,072.22 |
| Common Area Maintenance | 323,573.19 |
| 60 Desktops & Monitors | 29,751.00 |
| 60 Phones | 7,200.00 |
| 60 Headsets | 3,008.00 |
| Workstations | 66,154.00 |
| Wiring & Electrical | 42,054.00 |
| Data Drops | 3,745.00 |
| Security System | 23,805.00 |
| Office Furniture | 11,516.00 |
| 2 Cisco 6509 Switches | 17,250.00 |
| Aspect IP Gateway Expansion | 8,500.00 |
| 120 Trunking Licenses | 27,720.00 |
| Bomgar Licenses | 139,568.01 |
| SSL Certificates | 1,500.00 |
| FTP Server & Software | 20,000.00 |
| Web Services | 7,000.00 |
| VPN Licences | 7,500.00 |
| Security Software | 3,200.00 |
| Netsuite Licenses | 170,240.00 |
| Sandbox | 22,857.00 |
| CRM Module | 6,000.00 |
| Consultants Netsuite | 110,648.71 |
| Outsourcing factory | 120,000.00 |
| Internal Development | 97,500.00 |
| TOTAL | $ 1,878,766.24 |

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of February, 2009, I caused a copy of the foregoing to be served to all parties receiving notice via the Court's CM/ECF Noticing System and by electronic mail to: (i) Counsel to the Debtors (circuitcityservice@mcguirewoods.com & project.circuitcity@skadden.com), (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division (Robert.B.Van.Arsdale@usdoj.gov), and (iii) Counsel for the Official Committee of Unsecured Creditors (bgodshall@pszjlaw.com, jfiero@pszjlaw.com, rfeinstein@pszjlaw.com, jpomerantz@pszjlaw.com, ltavenner@tb-lawfirm.com, & pberan@tb-lawfirm.com)

/s/ Troy Savenko

---

GREGORY KAPLAN, PLC
Troy Savenko (Va. Bar No. 44516)
Leslie A. Skiba (Va. Bar No. 48783)
7 East Second Street (23224-4253)
Post Office Box 2470
Richmond, VA  23218-2470
Phone: (804) 423-7921
Fax: (804) 230-0024

- and –

CHOATE, HALL & STEWART LLP
John F. Ventola, Esq.
Sean M. Monahan, Esq.
Two International Place
Boston, Massachusetts 02110
Tel:  (617) 248-5000
Fax:  (617) 248-4000

*Counsel to PlumChoice, Inc.*