Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :  Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :  Case No. 08-35653 (KRH)
et al.,                      :
                             :
            Debtors.         :  Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDERS PURSUANT TO BANKRUPTCY CODE SEC-
TIONS 105 AND 363 AND BANKRUPTCY RULE 6004 (I) APPROVING
PROCEDURES IN CONNECTION WITH SALE OF EXCLUDED DEFECTIVE
INVENTORY, (II) APPROVING SALE OF SUCH INVENTORY FREE AND
CLEAR OF ALL INTERESTS AND (III) GRANTING RELATED RELIEF**

        The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to
sections 105 and 363 of title 11 of the United States
Code (the "Bankruptcy Code") and Rule 6004 of the Fed-
eral Rules of Bankruptcy Procedure (the "Bankruptcy
Rules") for entry of an order (I) approving procedures
for a sale (the "Sale") of the Debtors' Excluded Defec-
tive Inventory (as defined herein), (II) approving the
Sale of such inventory free and clear of all interests,
and (III) granting related relief.  In support of the
Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider
this Motion under 28 U.S.C. §§ 157 and 1334.  This is a
core proceeding under 28 U.S.C. § 157(b).  Venue of

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Dis-
tribution Company of Virginia, Inc. (2821), Circuit City Proper-
ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertis-
ing Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Ven-
ture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263), May-
land MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boule-
vard, Westminster, Colorado 80031.  For all other Debtors, the
address is 9950 Mayland Drive, Richmond, Virginia 23233.

these cases and this Motion in this District is proper
under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief
requested herein are Bankruptcy Code sections 105 and
363 and Bankruptcy Rule 6004.

### BACKGROUND

3.    On November 10, 2008 (the "Petition
Date"), the Debtors filed voluntary petitions in this
Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and oper-
ate their businesses as debtors in possession pursuant
to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the
United States Trustee for the Eastern District of Vir-
ginia appointed a statutory committee of unsecured
creditors (the "Creditors' Committee").  To date, no
trustee or examiner has been appointed in these chapter
11 cases.

6.    On January 16, 2009, the Court author-
ized the Debtors, among other things, to conduct going-
out-of-business sales at the Debtors' remaining 567
stores pursuant to an agency agreement (the "Agency

3

Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

7.    Pursuant to the Agency Agreement, the Agent will liquidate the vast majority of the Debtors' inventory through the going-out-of-business sales.  However, the Agency Agreement specifically excludes from the going-out-of-business sales inventory that is damaged, defective, incomplete, out of box, refurbished, repaired or otherwise not reasonably suitable for its intended purpose (the "Excluded Defective Inventory"). Agency Agreement at § 5.1(b).  Thus, the Agent is not responsible for selling such inventory.

**RELIEF REQUESTED**

8.    By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Order") (I) approving the Sale Process (as defined herein) for the sale of the Excluded Defective Inventory, (II) approving the Sale of such inventory free and clear of all interests upon filing the Sale Notice (as defined

4

herein) by the Debtors and (III) granting related re-

lief.[2]

### BASIS FOR RELIEF

9.    As discussed above, in light of the

Debtors' decision to liquidate the vast majority of

their inventory through going-out-of-business sales, the

Debtors have been left with various assets -- including

the Excluded Defective Inventory -- for which they have

no remaining use.  In contrast, the sale of such assets,

including the Sale of the Excluded Defective Inventory,

could yield significant proceeds for the benefit of the

Debtors' estates and creditors.

**A.    The Sale Process.**

10.    Prior to the Petition Date, in the ordi-

nary course of business, the Debtors have sold damaged,

defective and incomplete inventory, similar to the Ex-

cluded Defective Inventory.  Specifically, the Debtors

have sold new, defective, obsolete or otherwise unsold

inventory via a company-operated website, bulkauc-

---

[2]   The Debtors are also soliciting bids from liquidators to sell all
or portions of the Excluded Defective Inventory, which the Debt-
ors will seek separate approval for if they determine that such a
transaction is in the best interests of their estates and credi-
tors.

tions.tradingcircuit.com, (the "Website") since 2004.
Prior to 2004, the Debtors' sold such inventory by means
of a similar non-automated process.  The process by
which the Debtors' sell such inventory (the "Sale Proc-
ess") in the ordinary course of business is substan-
tially as described below.

11.   Any interested party may register on the
Website to be eligible to participate in auctions for
inventory.  The Website currently has over 5,000 regis-
tered users.  Inventory is divided into parcels (the
"Parcels") approximately equal to a truckload of inven-
tory.  The Debtors then hold online auctions for inven-
tory on the Website.

12.   For each Parcel, the Debtors list on the
Website information as to the general condition of the
inventory -- whether new, of varied condition, or non-
functional to be sold primarily for parts -- as well as
the brand, model, quantity, description and retail price
of products included in the Parcel.  Any registered user
of the Website may bid on any Parcel.  Auctions typi-
cally remain open for 7 days.  However, the Website in-
corporates a "popcorn bidding" function whereby, if a

bid is made within a certain time before the set close
of an auction, the auction is automatically extended for
a period of time to allow continued bidding.  This en-
sures that any last minute bidding affords other inter-
ested parties an opportunity to increase their bids by
continuing the auction for an additional time period.

13.    Following the close of an auction for a
Parcel, the winner is notified and is given an addi-
tional 7 days to pay for and pick up the Parcel.  Pay-
ment must be made by wire transfer for amounts over
$1000 to the Debtors in advance of pickup.

14.    The Debtors have designed the Sale Proc-
ess to maximize their return on inventory.  In particu-
lar, the Sale Process (i) enables the Debtors to easily
access more than 5,000 potential purchasers while allow-
ing any additional interested parties to register on the
Website and participate in the auctions, (ii) provides
transparency, as each registered user of the Website
must provide identifying information and (iii) ensures
that the auction continues until there are no more in-
terested bidders, thereby maximizing the purchase price.
Thus, the Debtors believe that conducting the Sale of

7

the Excluded Defective Inventory on the Website, in ac-
cordance with the Sale Process employed by the Debtors
in conducting such sales prior to the Petition Date,
will enable the Debtors to maximize value of the Inven-
tory and minimize expenses incurred.

15.   Accordingly, the Debtors seek authority
to sell the Excluded Defective Inventory pursuant to the
Sale Process.   Given that the Debtors sold inventory
similar to the Excluded Defective Inventory prior to the
Petition Date pursuant to the Sale Process, the Debtors
believe that the Sale of the Excluded Defective Inven-
tory in accordance with the Sale Process is a transac-
tion in the ordinary course of business.   As such, Court
authority would not be necessary under Bankruptcy Code
section 363(c)(1).

16.   Nonetheless, out of an abundance of cau-
tion, the Debtors seek authorization from the Court to
proceed with the Sale Process and the Sale.   However,
the Debtors reserve their right to modify the Sale Proc-
ess as necessary or as they deem appropriate to maximize
value for their estates and creditors.   As set forth
above, the Debtors believe that the Sale Process is ap-

propriate and will maximize the recovery for the Debtors
and their estates in connection with the Sale.

17.   The Debtors propose that any party wish-
ing to file an objection to the Sale Process or the Sale
of the Inventory to the bidder with the highest or best
bid (the "Successful Bidder" and the bid by such bidder,
the "Successful Bid") free and clear of interests, be
required to file such objection by February 11, 2009 at
4:00 p.m. (ET), and that such parties be required to
state, with specificity, the legal and factual basis of
any objection, unless otherwise ordered by this Court.

**B.   Sale Notice.**

18.   Because time is of the essence, and be-
cause the Sale Process and Sale are reflective of proce-
dures and sales previously conducted by the Debtors in
the ordinary course of business, the Debtors wish to
avoid the time and expense associated with a second
"sale hearing."  Thus, following the conclusion of the
Sale Process and the Debtors' selection of the Success-
ful Bidder(s) in accordance with Sale Process, the Debt-
ors propose to file with the Court a notice (the "Sale
Notice") (i) identifying the Successful Bidder(s), the

Inventory purchased by each Successful Bidder, and the
purchase price for such Inventory, and (ii) a statement
that the Sale was conducted in accordance with the Sale
Process, that the Successful Bidder(s) participated in
the Sale Process in good faith and without collusion,
the Successful Bidder(s) were not insiders of the Debt-
ors, and that the Successful Bid(s) represent the high-
est or otherwise best offer for the purchase of all or
portions of Inventory.

19.   The Debtors propose that the Court ap-
prove the Sale to any bidder who emerges as a Successful
Bidder pursuant to the Sale Process, conditioned upon
the Debtors' filing the Sale Notice.  Upon the filing of
the Certification, the Debtors propose that the Sale be
deemed to have been Court approved such that the Debtors
may close the transaction absent any additional hearing
or further order of the Court.

**APPLICABLE AUTHORITY**

**I.    THE SALE PROCESS IS REASONABLE AND APPROPRIATE.**

20.   Bankruptcy Code section 363(b)(1) pro-
vides that "[t]he trustee, after notice and a hearing,
may use, sell, or lease, other than in the ordinary

10

course of business, property of the estate."  11 U.S.C.

§ 363(b)(1).  Moreover, Bankruptcy Code section 105(a)

provides that "[t]he Court may issue any order, process,

or judgment that is necessary or appropriate to carry

out the provisions of this title."  11 U.S.C. § 105(a).

21.  The Debtors believe that the Sale Process

is appropriate under Bankruptcy Code sections 105 and

363 to ensure that the Sale is fair and reasonable and

represents the maximum value for their estates and

creditors.  Indeed, as discussed above, the Debtors

utilized the Sale Process prior to the Petition Date and,

based on their prior sales, believe that the Sale Proc-

ess is one method for maximizing value of defective in-

ventory, such as the Excluded Defective Inventory.

Moreover, the Debtors believe that a sale Excluded De-

fective Inventory according to the Sale Process will

avoid any deterioration of the value of the Excluded De-

fective Inventory.  Accordingly, the Debtors believe the

Court should approve the Sale Process.

**II.   APPROVAL OF THE SALE OF THE EXCLUDED DEFECTIVE IN-
VENTORY IS WARRANTED UNDER BANKRUPTCY CODE SECTIONS
105(a) AND 363(b)(1).**

22.   As set forth above, the Debtors believe

that the Sale according to the Sale Process is an ordi-

nary course transaction permitted under Bankruptcy Code

section 363(c)(1).  11 U.S.C. § 363(c)(1) (If the busi-

ness of the debtor is authorized to be operated under

section . . . 1108 . . . the [debtor] may enter into

transactions, including the sale or lease of property of

the estate, in the ordinary course of business, without

notice or a hearing  . . .").  However, even if the Sale

is considered outside of the ordinary course, assets of

the Debtors may be sold outside of the ordinary course

of business, pursuant to Bankruptcy Code section

363(b)(1), if a sound business purpose exists for doing

so.  In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va.

1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d

386, 390 (6th Cir. 1986)); see also In re W.A. Mallory

Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

23.   To satisfy the "sound business purpose

test," the debtor must demonstrate that (1) a sound

business reason or emergency justifies a pre-

12

confirmation sale; (2) the sale was proposed in good
faith; (3) the purchase price is fair and reasonable;
and (4) adequate and reasonable notice of the sale has
been provided.  In re WBQ P'ship, 189 B.R. at 102.

24.   Based upon the results of their analysis,
the Debtors' management and advisors have concluded that
the Sale of the Excluded Defective Inventory in accor-
dance with the Sale Process will maximize recoveries to
the estates and stop further deterioration, if any, of
the value of the Excluded Defective Inventory.  Further-
more, by selling the Excluded Defective Inventory, the
Debtors will be in a position to vacate and either as-
sume, assign and sell or reject the leases for their
stores and distribution centers at the conclusion of the
going-out-of-business sales, thus limiting the occupancy
costs associated with those facilities.  Maximizing as-
set value, preventing asset deterioration, and reducing
costs to the estates are sound business purposes that
warrant authorizing the proposed Sale.

25.   As described in the Sale Process, the
Debtors intend to notify those parties that have parties
in the Sale Process in the past.  In prior similar sales,

more than one bidder has participated in the Sale Proc-

ess.   Thus, the Debtors have reason to believe that the

Sale of the Excluded Defective Inventory will be subject

to competing bids, thereby enhancing the Debtors' abil-

ity to receive the highest or otherwise best value for

the Excluded Defective Inventory.   Consequently, the

fairness and reasonableness of the consideration to be

received by the Debtors will ultimately be demonstrated

by a "market check" through the Sale Process, which is

the best means for establishing whether a fair and rea-

sonable price is being paid.

        26.   Finally, in light of the circumstances,

the Debtors propose to provide notice of the Sale that

is reasonably calculated to provide timely and adequate

notice to the Debtors' major creditor constituencies,

those parties most interested in these cases, those par-

ties potentially interested in bidding on the Excluded

Defective and others whose interests are potentially im-

plicated by the proposed Sale.

### III. ANY PURCHASER SHOULD BE GRANTED THE PROTECTION OF BANKRUPTCY CODE SECTION 363(m).

27.   The disposition of the Excluded Defective Inventory pursuant to the Sale Process represents a method utilized by the Debtors prior to the Petition Date.  The Debtors have extensive experience conducting such sales and believe that the Sale Process maximizes value.

28.   Pursuant to the Sale Process, any sale will be the result of an arm's-length transaction between the Debtors and the Successful Bidder.  Indeed, the Debtors believe that the Sale Process is designed to ensure that all bidders have an equal and fair opportunity to bid on all or any portion of the Inventory.  Furthermore, following the Sale Process, the Debtors will submit the Sale Notice, stating that the sale of the Excluded Defective Inventory resulted from good faith, and arm's-length bidding.  Thus, the Debtors respectfully request that this Court find that any purchaser acted in good faith within the meaning of Bankruptcy Code section 363(m).

29.   Specifically, Bankruptcy Code section

363(m) provides that:

> [t]he reversal or modification on appeal
> of an authorization under subsection (b)
> or (c) of this section of a sale or lease
> of property does not affect the validity
> of a sale or lease under such author-
> ization to an entity that purchased or
> leased such property in good faith,
> whether or not such entity knew of the
> pendency of the appeal, unless such au-
> thorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

30.   While the Bankruptcy Code does not define

"good faith," the Fourth Circuit Court of Appeals has

"adopt[ed] the traditional equitable definition that has

been adopted by various courts of appeal: 'one who pur-

chases the assets for value, in good faith, and without

notice of adverse claims.'"  Willemain v. Kivitz, 764

F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

31.   As has been the Debtors' experience in

the past, the Sale Process ensures that a prospective

purchaser will not be able to exert any undue influence

over the Debtors.  Under the circumstances, and condi-

tional upon the Sale Notice to be filed by the Debtors

to this Court, this Court should find that (i) the Sale

16

of the Excluded Defective Inventory is the result of
good faith arm's-length transaction(s) and (ii) any ul-
timate purchaser is entitled to all of the protections
of Bankruptcy Code section 363(m).

**IV.   THE SALE OF THE EXCLUDED DEFECTIVE INVENTORY FREE
AND CLEAR OF CLAIMS, LIENS, AND ENCUMBRANCES SHOULD
BE AUTHORIZED UNDER BANKRUPTCY CODE SECTION 363(f).**

32.   To facilitate a Sale of the Excluded De-
fective Inventory, the Debtors request authorization to
sell the Excluded Defective Inventory free and clear of
any and all interests, including claims, liens, and en-
cumbrances that may be asserted against such property.

33.   Under section 363(f) of the Bankruptcy
Code, a debtor in possession may sell property free and
clear of any interest in such property if, among other
things:

> (1) applicable nonbankruptcy law permits sale
> of such property free and clear of such inter-
> est;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at
> which such property is sold is greater than
> the aggregate value of all liens on such prop-
> erty;
>
> (4) such interest is in bona fide dispute; or

17

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

35.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smoke-less Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. W. Va. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens.").  Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maxi-mum recovery on its assets in the marketplace.  See In

18

re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D.
Del. Mar. 27, 2001).

36.   Accordingly, this Court should authorize
the Debtors to sell the Excluded Defective Inventory
free and clear of any and all interests, including
claims, liens, and encumbrances, that may be asserted by
any party, with any such claims, liens, and encumbrances
attaching to the net proceeds of the Sale of the Ex-
cluded Defective Inventory in the same order and prior-
ity as they exist against the Excluded Defective Inven-
tory and in accordance with the terms and provisions of
the Debtors' post-petition financing facility.

**V.    WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY
RULE 6004 SHOULD BE WAIVED FOR ANY ORDER APPROVING
THE SALE OF THE INVENTORY.**

37.   Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of prop-
erty is stayed until the expiration of 10 days after en-
try of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).

38.   The Debtors request that the Court waive
the ten-day stay of Bankruptcy Rule 6004 with respect to
the Sale of the Excluded Defective Inventory following

19

entry of the Order.  By waiving such requirements, the

Debtors and any purchaser will be able to immediately

close the transaction(s) emerging from the Sale Process

and approved by this Court, which will in turn save the

Debtors continued accrual of administrative expenses and

thereby benefit the Debtors' estates.

**NOTICE**

39.  Notice of this Motion has been provided

to those parties who have requested notice pursuant to

Bankruptcy Rule 2002 and the Core Group (as defined in

the Order Pursuant to Bankruptcy Code Sections 102 and

105, Bankruptcy Rules 2002 and 9007, and Local Bank-

ruptcy Rules 2002-1 and 9013-1 Establishing Certain No-

tice, Case Management, and Administrative Procedures

(Docket No. 130; the "Case Management Order")), as well

as (a) all entities known to have an interest in any of

the Excluded Defective Inventory to be sold or in simi-

lar assets; all federal, state, and local regulatory or

taxing authorities or recording offices that have a

known interest in the relief requested through the Mo-

tion.  The Debtors submit that, under the circumstances,

cause exists to limit the notice as described herein and no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

40.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

41.   No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request
that the Court enter an Order, substantially in the form
annexed hereto, granting the relief requested herein and
such other and further relief as may be just and proper.

Dated: February 3, 2009
        Richmond, Virginia   SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM, LLP
                             Gregg M. Galardi, Esq.
                             Ian S. Fredericks, Esq.
                             P.O. Box 636
                             Wilmington, Delaware 19899-0636
                             (302) 651-3000

                                    - and -

                             SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM, LLP
                             Chris L. Dickerson, Esq.
                             333 West Wacker Drive
                             Chicago, Illinois 60606
                             (312) 407-0700

                                    - and -

                             MCGUIREWOODS LLP

                             /s/ Douglas M. Foley        .
                             Dion W. Hayes (VSB No. 34304)
                             Douglas M. Foley (VSB No. 34364)
                             One James Center
                             901 E. Cary Street
                             Richmond, Virginia 23219
                             (804) 775-1000

                             Counsel for Debtors and Debtors
                             in Possession