Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

                    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE EASTER DISTRICT OF VIRGINIA
                       RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
Circuit City Stores, Inc.,  :   Case No. 08-35653(KRH)
et al.,                     :
                            :
              Debtors.      :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDERS UNDER BANKRUPTCY CODE SECTIONS
105, 363, AND 365 (I) APPROVING BIDDING AND AUCTION
PROCEDURES FOR SALE OF UNEXPIRED NONRESIDENTIAL REAL
PROPERTY LEASES, (II) SETTING SALE HEARING DATES AND (III)
AUTHORIZING AND APPROVING (A) SALE OF CERTAIN UNEXPIRED
NONRESIDENTIAL REAL PROPERTY LEASES FREE AND CLEAR OF ALL
INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEX-
PIRED NONRESIDENTIAL REAL PROPERTY LEASES AND (C) LEASE
REJECTION PROCEDURES**

        The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move this Court (the "Motion") for
entry of an order, pursuant to sections 105(a), 363 and
365 of title 11 of the United States Code (the "Bank-
ruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules"), (i) approving bidding and auction procedures for
sale of certain nonresidential real property leases, (ii)
setting sale hearing dates and (iii) authorizing and ap-
proving (a) the sale of certain nonresidential real prop-
erty leases free and clear of all interests, including
liens, claims, and encumbrances, (b) the assumption and
assignment of certain unexpired nonresidential real prop-
erty leases, and (c) lease rejection procedures for any
leases that are not sold in connection with the foregoing.

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Dis-
tribution Company of Virginia, Inc. (2821), Circuit City Proper-
ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertis-
ing Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Ven-
ture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland
MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC
(3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address
is 9950 Mayland Drive, Richmond, Virginia 23233.

2

In support of the Motion, the Debtors respectfully repre-
sent:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider the
Motion under 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding under 28 U.S.C. § 157(b).  Venue of these
cases and the Motion in this district is proper under 28
U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief requested
here are Bankruptcy Code sections 105(a), 363, and 365
and Bankruptcy Rules 2002, 6004, 6006, and 9014.

### BACKGROUND

3.    On November 10, 2008 (the "Petition Date"),
the Debtors filed voluntary petitions in this Court for
relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate
their businesses as debtors in possession pursuant to
Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the
United States Trustee appointed a statutory committee of
unsecured creditors (the "Creditors' Committee").  To

date, no trustee or examiner has been appointed in these
chapter 11 cases.

**RELIEF REQUESTED**

6.    By this Motion, the Debtors seek approval
for the sale (the "Sale") of unexpired leases of non-
residential real property for all of the Debtors' remain-
ing retail store and distribution center, and other non-
corporate office locations, as identified on <u>Exhibit 2</u>
and <u>Exhibit 3</u> attached to the Bidding and Rejection Pro-
cedures Order (the "Leases").  To effect the Sale and
dispose of most remaining Leases following the conclusion
of the GOB Sales (as defined herein), the Debtors seek
three types of relief.

7.    First, at the omnibus hearing to be held
on February 13, 2009, (the "Bidding And Rejection Proce-
dures Hearing") the Debtors will seek entry of an order
substantially in the form attached hereto (the "Bidding
And Rejection Procedures Order") approving the bidding
procedures attached to the Bidding And Rejection Proce-
dures Order as <u>Exhibit 1</u> (the "Bidding Procedures"), and
the rejection procedures described more fully herein.

8.    Second, subject to the terms of the Bid-
ding and Rejection Procedures Order, at the omnibus hear-
ings to be held on February 25, 2009, March 20, 2009,
March 30, 2009 and April 14, 2009 (each, a "Sale Hear-
ing"), the Debtors will seek orders (the "Sale Orders")
authorizing and approving the Sale of certain of the
Leases to the highest or best bidder free and clear of
all interests, including liens, claims and encumbrances
(collectively, "Interests"), including the assumption and
assignment of the such Leases.

9.    Finally, the Debtors seek authority under
Bankruptcy Code sections 105(a) and 554 to abandon any
equipment, furniture, or fixtures located at the underly-
ing Lease premises on the Rejection Date (as defined
herein) (the "Abandoned Property").

## BASIS FOR RELIEF

10.    On January 16, 2009, the Court authorized
the Debtors, among other things, to conduct going out of
business sales at the Debtors' remaining 567 stores pur-
suant to an agency agreement (the "Agency Agreement") be-
tween the Debtors and a joint venture, as agent (the"
Agent").   On January 17, 2009, the Agent commenced going

5

out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

11.     Pursuant to the Agency Agreement, the Agent has commenced going out of business sales (the "GOB Sales") to sell the merchandise at each of the Debtors' 567 remaining retail stores and distribution centers (the "Closing Locations").  The Agency Agreement provides that the Agent will pay occupancy expenses for the Closing Locations, including base rent, utilities, CAM, real estate and use taxes, merchant's association dues and expenses, and building insurance due under the Leases on a per diem basis while the GOB Sales are conducted.  Monthly expenses for the Leases are approximately $28 million per month, and the Debtors accordingly intend to resolve the status of the Leases as quickly as possible following the Sale Termination Date for each Lease.

12.     The Agent has indicated (but has not provided formal notice) to the Debtors that it plans to complete the GOB Sales for certain of the Closing Locations by approximately February 16, 2009 (such locations, the "February Closing Locations" and the leases for such lo-

6

cations, the "February Leases", listed on Exhibit 2 to the Bidding and Rejection Procedures Order).

13.    The Agent plans to complete the GOB Sales for the remaining Closing Locations (such locations, the "March Closing Locations" and the leases for such locations, the "March Leases", listed on Exhibit 3 to the Bidding and Rejection Procedures Order) at various dates throughout March, but in all cases by no later than March 31, 2009. However, such date may be extended by mutual agreement of the Debtors and the Agent or shortened upon ten (10) days written notice provided by Agent to Debtors.

14.    The Agency Agreement further provides that the Agent will vacate all of the Closing Locations and shall surrender the keys and premises of each Closing Location to the Debtors within ten (10) days of providing notice of the completion the GOB Sale at such location but in any event by March 31, 2009. For each Lease, the date on which the Agent intends to vacate the Closing Location covered by such Lease is referred to herein as the "Sale Termination Date" for that Lease.

**A.    Bidding Procedures.**

15.   The Debtors believe that the proposed structure of the Bidding Procedures is the one most likely to maximize the realizable value of the Leases for the benefit of the Debtors, their estates, their stakeholders, and other interested parties.  Moreover, these procedures are consistent with those previously approved by the Court and reflect comments previously received from counsel to many of the Debtors' lessors.

16.   The Debtors wish to conduct multiple sale processes for the Leases.  This will enable the Debtors to either sell, assume and assign or reject the Leases as quickly as practicable following the Sale Termination Date for each Lease, thereby minimizing the time during which the Debtors are responsible for the occupancy costs associated with each Lease.

17.   The salient terms of the Bidding Procedures are provided below:[2]

(a)   Bid Deadline:  Bids on the February Leases must be sent to the above parties so as to be re-

---

[2]   In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary have the meanings ascribed to them in the Bidding Procedures.

ceived not later than 3:00 p.m. (ET) on February 18, 2009
(the "February Bid Deadline"). Bids on the March Leases
must be sent to the above parties so as to be received
not later than 3:00 p.m. (ET) on March 12, 2009 (the
"March Bid Deadline" and, together with the February Bid
Deadline, the "Bid Deadlines").  The Debtors may extend
the Bid Deadlines once or successively, but are not obli-
gated to do so.

   (b) Due Diligence:  All bidders shall be
afforded an opportunity to participate in the diligence
process and shall acknowledge in their bids that they had
sufficient opportunity to conduct diligence.

   (c) Bid Requirements: All bids shall be
required to include the following documents: (i) a letter
identifying the full name and identity of the proposed
assignee of each individual Lease subject to the bid, the
amount of the bid, and providing certain Adequate Assur-
ance Information and (ii) a good faith deposit equal to
the greater of 15% of the bid amount or $10,000 for each
Lease on which the bidder submits a bid.  All bids shall
be deemed to be irrevocable until the earlier to occur of
(i) the Closing (as defined herein) or (ii) forty-five
(45) days following the applicable Auction (as defined
herein).

   (d) Qualified Bids: To be a "Qualified
Bid", a bid must (i) not be conditioned upon obtaining
financing or the outcome of unperformed due diligence by
the bidder, (ii) include a commitment to consummate the
Sale within two days following the applicable Sale Hear-
ing, (iii) be received by the applicable Bid Deadline and
(iv) be an offer to purchase one or more of the Leases
for cash only, except that a Lessor may "credit bid."  In
addition, to be a Qualified Bid, each bidder must be pre-
pared to demonstrate to the Debtors (i) its ability to
consummate the purchase of the Lease(s), (ii) adequate
assurance of future performance under the Lease(s) and
(iii) its ability to otherwise fulfill its obligations
under the Lease(s).

(e)    Auction: If the Debtors receive more than one Qualified Bid for a February Lease or Leases, the Debtors will conduct an auction (the "February Lease Auction") for those February Leases at 10:00 a.m. (ET) on February 20, 2009.  If the Debtors receive more than one Qualified Bid for a March Lease or Leases, the Debtors will conduct auctions for the Leases covered by such bid(s) on March 16, 2009, March 24, 2009, and April 9, 2009 (the "March Lease Auctions" and, together with the February Lease Auction, the "Auctions") for those March Leases[3] at 10:00 a.m. (ET) on such dates.  Bids for March Leases will be subject to the next March Lease Auction following the Debtors' receipt of notice of the Sale Termination Date for those Leases, or at such subsequent Auction as the Debtors deem appropriate.

(f)    Successful Bids: After the February Lease Auction, the Debtors will announce for each February Lease for which the Debtors received a Qualified Bid which bid is the highest or otherwise best bid (the "Successful Bid") and which bid is the second highest and/or best bid, if any (the "Alternate Bid").

(g)    Sale Hearing: The Debtors will sell the Lease or Leases to the Successful Bidder(s) in the applicable Auction upon the approval of such Successful Bid(s) by the Bankruptcy Court at the next Sale Hearing following the Auction, or at such subsequent Sale Hearing as the Debtors deem appropriate.

(h)    Bids on Lease Packages: The Debtors shall have discretion to accept bids for individual February Leases or for packages of February Leases.

(i)    Closing: The Debtors request that, absent agreement by the Debtors to the contrary, the closing (the "Closing")of the Sale of a Lease  shall take place on or within two (2) business days following the

---

[3]    The Debtors reserve the right, in their sole discretion, to conduct a private sale for any Lease(s) or withdraw any Lease(s) from the auction process.

later of (i) the applicable Sale Hearing, or (ii) the
Sale Termination Date with respect to such Lease.

18.   The Debtors propose that any party wishing
to file an objection to the Bidding Procedures be re-
quired to file such objection by February 11, 2009 at
4:00 p.m. (ET), and that such parties be required to
state, with specificity, the legal and factual basis of
any objection, unless otherwise ordered by this Court.

## II.   NOTICE, CURE AND REJECTION PROCEDURES

19.   The Debtors believe that they are current
on their obligations under the Leases, except with re-
spect to the amounts (the "Proposed Cure Amounts") to be
identified by the Debtors on the Cure Schedules (as de-
fined herein).[4]

20.   The Debtors propose that, one business day
prior to each Auction, they will file a list of Leases
subject to such Auction and a schedule (each, a "Cure
Schedule") with the Court listing the Proposed Cure

---

[4]   The prepetition amounts reflected in the Cure Schedules will be
calculated based on the assumption that amounts that accrued
prepetition, including in the first nine days of November, 2008,
were properly subject to being cured if a particular Lease is as-
sumed.   The Debtors reserve the right to otherwise assert that
all amounts that were billed prepetition are prepetition obliga-
tions.

Amounts for the Leases subject to such Auction.  Concur-
rently with filing each Cure Schedule with the Court, the
Debtors will post the Cure Schedule on the website for
the Debtors' claims and noticing agent,

www.kccllc.net/circuitcity.

        21.  The Debtors propose that unless a party to
a Lease files an objection to the Proposed Cure Amount
asserting a different cure amount than the Proposed Cure
Amount listed on the applicable Cure Schedule, on or be-
fore 12:00 p.m. (ET) on the business day immediately pre-
ceding the applicable Sale Hearing, then such party
should be forever barred from asserting a cure amount
different from the Proposed Cure Amount (except for any
amounts accruing from the date of the Cure Schedule
through the date of assignment).  Any such cure disputes
caused by a valid and timely objection will be resolved,
as necessary, either at the applicable Sale Hearing or
such later date as may be agreed to among the parties or
scheduled by the Court.

        22.  The Debtors further propose to provide (by
email, if available, or U.S. first class mail) the lessor
(the "Lessor") of each Lease on which a potential pur-

chaser, other than the Lessor itself, has submitted a
Qualified Bid pursuant to the Bidding Procedures (each, a
"Potential Purchaser") with a notice of Potential Pur-
chaser substantially in the form attached as <u>Exhibit 4</u> to
the Bidding and Rejection Procedures Order (the "Poten-
tial Purchaser Notice").  The Debtors shall provide the
Potential Purchaser Notice to Lessors at the conclusion
of the Auction to which their Lease was subject.  Where
the Potential Purchaser is the Lessor, the Lessor shall
be deemed to have notice of such Potential Purchaser
without receipt of a Potential Purchaser Notice.  Leases
subject to a Potential Purchaser Notice or to a bid by
the Lessor shall not be deemed rejected on the Rejection
Date.

     23.   The Potential Purchaser Notice will iden-
tify any Potential Purchasers as potential parties to
which the Leases would be assigned.  Thus, the Potential
Purchaser Notice will give the Debtors the ability to ad-
dress promptly any adequate assurance issues that Lessors
may have with any of the Potential Purchasers of their
respective Leases.  The Debtors propose that the Lessors
of any Lease subject to a Potential Purchaser Notice be

required to file an objection to the assumption and/or assignment of the Lease (other than objections with re-spect to the Bidding Procedures described above, which must be filed by February 11, 2009 as set forth above) by 12:00 p.m. (ET) on the business day immediately preceding the Sale Hearing at which such Lease is to be assumed and assigned.  Such parties would be required to state, with specificity, the legal and factual basis of any objection. Parties may supplement their objections to assumption and assignment orally at the Sale Hearing.

24.   To ensure that the Debtors do not unneces-sarily expend estate resources on Leases that will not be assumed and assigned and have no further value to the es-tates following completion of the GOB Sales, the Debtors also propose certain rejection procedures.

25.   The Debtors propose that Leases for which either (i) no Potential Purchaser has submitted a Quali-fied Bid or (ii) the Debtors have not served a Rejection Notice (as defined below), shall be deemed rejected as of the later of (a) February 28, 2009 for February Leases or March 31, 2009 for March Leases, (b) the Sale Termination Date, or (c) the date that the Debtors have surrendered

14

the premises to the applicable Lessor by fulfilling the
Rejection Requirements (as defined herein) (such date,
the "Outside Rejection Date").

26.   In order to effectively surrender the
premises, the Debtors shall be required to use commer-
cially reasonable efforts to (i)(a) disarm the alarm, (b)
transmit alarm codes to the applicable Lessor, or (c) ad-
vise the Lessor in writing that they are unable to pro-
vide the alarm codes despite commercially reasonable ef-
forts to do so and (ii)(a) return keys to the applicable
Lessor or (b) advise the applicable Lessor that the keys
cannot be returned despite commercially reasonable ef-
forts to do so (such measures, the "Rejection Require-
ments").

27.   In the event that the Agent provides the
Debtors with notice of a Sale Termination Date that is
earlier than the Outside Rejection Date, the Debtors may
provide the Lessor with notice of rejection, substan-
tially in the form attached as Exhibit 5 to the Bidding
and Rejection Procedures Order (the "Rejection Notice").
The Rejection Notice shall specify the date of rejection,
which date shall be not less than seven (7) days from the

15

date the Rejection Notice is received by the Lessor (such
date, the "Early Rejection Date"; the Early Rejection
Date and the Outside Rejection Date, as applicable, are
collectively referred to herein as the "Rejection Date").
In the event that the Debtors provide the Lessor with a
Rejection Notice, the Debtors will surrender the premises
to the Lessor prior to the Early Rejection Date by ful-
filling the Rejection Requirements.

28.   For any Lease that is either subject to a
Potential Purchaser Notice or has been bid upon by the
Lessor and thus is withdrawn from automatic rejection un-
der the Bidding And Rejection Procedures Order, if the
Debtors elect not to sell such Lease, the Debtors request
that rejection of such Lease also be effective as of the
Rejection Date.  If necessary, the Debtors will add a
schedule of any such Leases to the applicable Sale Order.

29.   Additionally, the Debtors have determined
that the abandonment of the Abandoned Property with re-
spect to any unsold Lease that is rejected is appropriate
because such property is of inconsequential value and/or
the cost of removing and storing such property exceeds
its value to the Debtors' estates.  Moreover, the Debtors

believe that the Abandoned Property no longer is neces-
sary for the operation of the Debtors' businesses.

**III. LEASE TERMINATION AGREEMENTS**

30.   In the event that a Lessor is the success-
ful bidder for its own Lease, the Debtors request au-
thorization to enter into a Lease termination agreement
with any such Lessor.

**APPLICABLE AUTHORITY**

**I.    THE RELIEF REQUESTED IN THE MOTION REFLECTS A SOUND
EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT.**

31.   Assets of the Debtors may be sold outside
of the ordinary course of business, pursuant to Bank-
ruptcy Code section 363(b)(1), if a sound business pur-
pose exists for doing so.   In re WBQ P'ship, 189 B.R. 97,
102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v.
McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also
Committee of Equity Security Holders v. Lionel Corp. (In
re Lionel Corp.), 722 F. 2d 1063, 1070 (2d. Cir. 1983);
see also The Dai-Ici Kangyo Bank Ltd. v. Montgomery Ward
Holding Corp. (In re Montgomery Ward Holding Corp.), 242
B.R. 147, 153 (D. Del. 1999); In re W.A. Mallory Co.,
Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).   In

17

evaluating whether a sound business purpose exists, "courts consider a variety of factors which essentially represent a business judgment test." Montgomery Ward, 242 B.R. at 153.

32.  By establishing the Bidding Procedures, notice procedures and rejection procedures relating to the Sale of the Leases, the Debtors seek to implement an orderly process to sell or otherwise dispose of the Leases in an efficient manner most beneficial to their estates.  The Debtors are attempting to complete an orderly liquidation of their businesses, which maximizes the return to their creditors and stakeholders and minimizes unnecessary expenses.  Without the procedures requested herein, the Debtors could lose value associated with the Sale of the Leases and could be forced to carry the costs of leases for locations at which the Debtors no longer do business.  The orderly process contemplated by the procedures requested herein, including the Sale of the Leases pursuant to the Bidding Procedures and the rejection of any Lease not subject to a Sale, is accordingly necessary for the Debtors to maximize the value of their estates.

33.    Bankruptcy Code section 365(a) provides
that a debtor, "subject to the court's approval, may as-
sume or reject any executory contract or unexpired
lease."  11 U.S.C. § 365(a).  A debtor's determination to
assume or reject an executory contract or unexpired lease
is governed by the "business judgment" standard.  See Lu-
brizol Enterprises, Inc. v. Richmond Metal Finishers,
Inc., 756 F.2d 1043, 1046-47 (4th Cir. 1985), cert. de-
nied sub nom., Lubrizol Enters., Inc. v. Canfield, 475
U.S. 1057 (1986); In re Extraction Technologies of VA,
L.L.C., 296 B.R. 393, 399 (Bankr. E.D. Va. 2001); see
also In re HQ Global Holdings, Inc., 290 B.R. 507, 511
(Bankr. D. Del. 2003) (stating that a debtor's decision
to reject an executory contract is governed by the busi-
ness judgment standard and can only be overturned if the
decision was the product of bad faith, whim, or caprice).

34.    Once the Debtors articulate a valid busi-
ness justification, "[t]he business judgment rule 'is a
presumption that in making a business decision the direc-
tors of a corporation acted on an informed basis, in good
faith and in the honest belief that the action taken was
in the best interests of the company.'"  Official Comm.

Of Subordinated Bondholders v. Integrated Res., Inc., 147
B.R. 650, 656 (S.D.N.Y. 1992).

35.  The business judgment rule has vitality in
chapter 11 cases and shields a debtor's management from
judicial second-guessing.  See Comm. Of Asbestos-Related
Litigants and/or Creditors v. Johns-Manville Corp., 60
B.R. 612, 615 16 (Bankr. S.D.N.Y. 1986) ("[T]he Code fa-
vors the continued operation of a business by a debtor
and a presumption of reasonableness attaches to a
debtor's management decisions.").

36.  As set forth above, the Debtors have
clearly articulated a sound business purpose for seeking
the relief sought in the Motion and have thus satisfied
the business judgment test.  The Sale of the Leases at
the Auctions and the accompanying proposed Bidding Proce-
dures, rejection procedures, and notice procedures are
clearly designed to maximize the value of the Leases for
the Debtors' estates while protecting the Debtors from
incurring unnecessary costs (which may total as much as
$7 million per week) with respect to Leases that are not
readily marketable.  Accordingly, for the reasons de-
tailed herein, the Debtors have determined that the re-

lief requested in the Motion is in their best interests and the best interests of their estates, creditors and parties in interest.

## II.   LEASES SOLD PURSUANT TO A SALE SHOULD BE FREE AND CLEAR OF CLAIMS, LIENS, AND ENCUMBRANCES UNDER BANK-RUPTCY CODE SECTION 363(f)

37.   To facilitate the Sales of the Leases, the Debtors request authorization to sell the Leases free and clear of any and all Interests that may be asserted against such Leases.

38.   Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide   dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

39.  Section 363(f) permits the sale of estate
property free and clear of interests if any one of the
five conditions above is met.  See, e.g., In re Laines,
352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

40.  Courts have held that the authority of a
debtor to sell assets free and clear of interests is
broad and should be read expansively.  See In re TWA,
Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United
Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless
Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573,
582 (4th Cir. W. Va. 1996) (holding that the phrase "any
interest in property" includes more than just in rem in-
terests); In re P.K.R. Convalescent Centers, Inc., 189
B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning
of the statute demonstrates, § 363 covers more situations
than just sales involving liens.").  Moreover, courts
have noted that the purpose of the "free and clear" lan-
guage is to allow the debtor to obtain a maximum recovery
on its assets in the marketplace.  See In re TWA, Inc.,
2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27,
2001).

41.    Accordingly, this Court should authorize the Debtors to sell the Leases free and clear of any and all Interests that may be asserted by any parties, with any such Interests attaching to the net proceeds of the Sales of the Leases in the same order and priority as they exist against the such Leases and in accordance with the terms and provisions of the DIP Facility.

## III. ANY PURCHASER SHOULD BE GRANTED THE PROTECTION OF BANKRUPTCY CODE SECTION 363(m).

42.    The disposition of the Debtors' Leases pursuant to the terms reflected in any assumption, assignment and purchase agreement (an "Agreement") that results from the bids submitted for or at the Auctions, pursuant to the Bidding Procedures, represents an accepted method for the Sale of Leases that has been approved in numerous chapter 11 cases of retailers. See, e.g., In re The Rowe Companies, Case No. 06-11142 (SSM)(Bankr. E.D. Va. Dec. 20, 2006).  Under the Bidding Procedures, any Agreement would be negotiated at arm's-length.  These negotiations will likely involve substantial time and energy by the parties and their profession-

als, and any Agreement will undoubtedly reflect give-and-take and compromises by both sides.

43.    Accordingly, the Debtors should be permitted to enter into any Agreement(s) with any purchaser(s).

44.    At the Sale Hearings, the Debtors intend to present evidence that Agreements were negotiated at arm's-length and in good faith, after other parties and their qualifications and proposals were considered, and after the Auction process.  Thus, the Debtors will seek and respectfully request that this Court find that any purchaser acted in good faith within the meaning of Bankruptcy Code section 363(m).

45.    Specifically, Bankruptcy Code section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

24

46.   While the Bankruptcy Code does not define "good faith", the Fourth Circuit Court of Appeals has "adopt[ed] the traditional equitable definition that has been adopted by various courts of appeal: 'one who purchases the assets for value, in good faith, and without notice of adverse claims.'" <u>Willemain v. Kivitz</u>, 764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

47.   Additionally, the Bidding Procedures ensure that a prospective purchaser will not be able to exert any undue influence over the Debtors.  Under the circumstances, and after considering the record to be presented by the Debtors at the applicable Sale Hearing, this Court should find that (i) the Sale of the Leases pursuant to an Agreement is the result of good faith arm's-length negotiations, and (ii) the ultimate purchaser is entitled to all of the protections of Bankruptcy Code section 363(m).

**IV.   APPROVAL OF ASSUMPTION AND ASSIGNMENT OF THE LEASES IS WARRANTED UNDER BANKRUPTCY CODE SECTION 365.**

48.   Section 365(f)(2) of the Bankruptcy Code provides that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –

25

        (A)   the trustee assumes such contract or
lease in accordance with the provisions of
this section; and

        (B)   adequate assurance of future perform-
ance by the assignee of such contract or
lease is provided, whether or not there
has been a default in such contract or
lease.

11 U.S.C. § 365(f)(2).

        49.   Under section 365(a) of the Bankruptcy

Code a debtor, "subject to the court's approval, may as-

sume or reject any executory contract or unexpired lease

of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1)

of the Bankruptcy Code, in turn, codifies the require-

ments for assuming an unexpired lease or executory con-

tract of a debtor.  It provides:

        If there has been a default in an execu-
tory contract or unexpired lease of the
debtor, the trustee may not assume such
contract or lease unless, at the time of
the assumption of such contract or lease,
the trustee –

        (A)   cures, or provides adequate as-
surance that the trustee will promptly
cure, such default;

        (B)   compensates, or provides ade-
quate assurance that the trustee will
promptly compensate, a party other than
the debtor to such contract or lease, for

26

any actual pecuniary loss to such party
resulting from such default; and

(C)   provides adequate assurance of
future performance under such contract or
lease.

11 U.S.C. § 365(b)(1).

50.   Courts give the phrase "adequate assurance
of future performance" a "practical, pragmatic construc-
tion." EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g
Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592
(S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d Cir. 1993)
(presence of adequate assurance should be "determined un-
der the facts of each particular case").   To the ex-
tent that any defaults exist under any of the Leases that
are to be assumed and assigned in connection with the
Sale, the Debtors (or the Successful Bidder) would cure
any such default.

51.   The Bidding Procedures are also designed
to ensure that any Potential Purchaser has the financial
resources to perform under the Leases and is required to
provide adequate assurance of future performance under
any Lease for which they render a bid.   Moreover, if nec-
essary, the Debtors will adduce facts at the applicable

27

Sale Hearing demonstrating the financial wherewithal of any purchaser, and its willingness and ability to perform under the Lease(s) to be assumed and assigned to it.

**V.   THE ABANDONMENT OF THE ABANDONED PROPERTY SHOULD BE AUTHORIZED UNDER BANKRUPTCY CODE SECTION 554.**

52.   Bankruptcy Code section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Courts give debtors in possession great deference to their decisions to abandon under section 554.  See In re Vel Rey Props., Inc., 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters.").  Unless the property is harmful to the public, once the debtors in possession have shown that the property is burdensome or of inconsequential value and benefit, the court should approve the abandonment.  Id. at 868.

53.   The Debtors believe that the costs of moving and storing the Abandoned Property would far outweigh any benefit to their estates.  Moreover, the Debtors be-

28

lieve that any efforts to move the Abandoned Property would unnecessarily delay the rejection of the Leases. Therefore, it is in the Debtors' best interests to abandon the Abandoned Property located at the premises covered by the Leases.

**VI.    THE TEN-DAY STAYS PROVIDED BY BANKRUPTCY RULES 6004 AND 6006 SHOULD BE WAIVED FOR ANY AND ALL ORDERS APPROVING SALE(S) OF THE DEBTORS' ASSETS.**

54.    Bankruptcy Rule 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).    Similarly, Bankruptcy Rule 6006(d) provides that: "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under Sec. 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."    Fed. R. Bankr. P. 6006(d).

55.    The Debtors request that the Court waive the ten-day stays of Bankruptcy Rules 6004 and 6006 with respect to the Closing of Sales of the Leases following entry of the Sale Orders or any other order approving a Sale of the Leases.    A Closing, within two (2) business

days following the later of (i) the applicable Sale Hear-
ing date or (ii) the applicable Sale Termination Date, as
described in the Bidding Procedures, will save the Debt-
ors continued accrual of administrative expenses under
any Leases that are sold, and thus benefit the Debtors'
estates.

## NOTICE

56.  Notice of this Motion has been provided to
those parties who have requested notice pursuant to Bank-
ruptcy Rule 2002 and the Core Group (as defined in the
Order Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice, Case
Management, and Administrative Procedures (Docket No. 130;
the "Case Management Order")), as well as the Debtors'
landlords.  Under the circumstances, the Debtors submit
that no other or further notice is necessary or required.

## WAIVER OF MEMORANDUM OF LAW

57.  Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law pre-
sented in the Motion and all applicable authority is set
forth in the Motion, the Debtors request that the re-

quirement that all motions be accompanied by a separate
memorandum of law be waived.

## NO PRIOR REQUEST

58.  No previous request for the relief sought
herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request
that the Court enter the Bidding and Rejection Procedures
Order, substantially in the form annexed hereto, granting

the relief requested in the Motion and such further re-

lief as may be just and proper.

Dated: February 3, 2009
      Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                    - and -

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Chris L. Dickerson, Esq.
                              333 West Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                    - and -

                              MCGUIREWOODS LLP

                              _/s/ Douglas M. Foley_____
                              Dion W. Hayes (VSB No. 34304)
                              Douglas Foley (VSB No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and Debtors
                              in Possession