Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                  IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE EASTERN DISTRICT OF VIRGINIA
                            RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105 AND 363 (A) AUTHORIZING DEBTORS TO ENTER
INTO AGREEMENT IN CONNECTION WITH SALE OF AIRCRAFT,
SUBJECT TO HIGHER OR OTHERWISE BETTER BIDS, (B)
APPROVING SALE OF AIRCRAFT FREE AND CLEAR OF ALL
INTERESTS; AND (C) GRANTING RELATED RELIEF**

          The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to

sections 105 and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rules 4001, 6004 and

6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of an order

(A) authorizing the Debtors to enter into an agreement

with the Purchaser (as defined herein) for sale (the

"Sale") of the Debtors' Learjet aircraft (the

"Aircraft"), a copy of which is attached as Exhibit A to

the Sale Order (the "Agreement"), subject to higher or

otherwise better proposals, (B) approving the Sale of

the Aircraft free and clear of all interests, and

(C) granting related relief.  In support of the Motion,

the Debtors respectfully represent as follows:

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for Circuit City Stores West Coast, Inc. is 9250 Sheridan
      Boulevard, Westminster, Colorado 80031.  For all other Debtors,
      the address is 9950 Mayland Drive, Richmond, Virginia 23233.

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 4001, 6004 and 6006.

**BACKGROUND**

3.     On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.     On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the" Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

## RELIEF REQUESTED

7.    By this Motion, the Debtors seek an order (A) authorizing the Debtors to enter into the Agreement in connection the Sale of the Aircraft, subject to higher or otherwise better proposals, (B) approving the Sale of the Aircraft free and clear of all interests, and (C) granting related relief.

## BASIS FOR RELIEF

**A.    The Debtors' Marketing Efforts.**

8.    As discussed above, the Debtors accepted and sought court approval of the Agent's bid to liquidate the Debtors inventory through going out of business sales at the Debtors remaining stores.

4

9.     Since then, the Debtors have focused on
various issues relating to maximizing value for their
estates, including selling various assets for which they
have no remaining use.  The Debtors have identified that
Aircraft as one such asset and the Debtors have been
marketing the Aircraft.

10.     To facilitate their marketing efforts,
the Debtors engaged Martinair (the "Broker") as their
aircraft broker pursuant to an agreement (the "Brokerage
Agreement"), attached to the Sale Order as Exhibit B.
The Broker actively promoted the Aircraft, preparing
literature, brochures, mailers, email and internet
notices and distributed all such materials as necessary.
The Broker, in consultation with the Debtors, also
negotiated directly with all prospective purchasers.

11.     As a result of these marketing efforts,
the Debtors received various proposals to purchase the
Aircraft.  Upon reviewing these proposals, the Debtors
determined that the proposal submitted by the Purchaser
was the highest or otherwise best proposal of those
received.  Thus, the Debtors elected to proceed with the
Sale of the Aircraft to the Purchaser.

5

**B.    The Agreement.**

12.    The Agreement provides that AVEST LLC
(the "Purchaser")[2] shall pay $3.8 million to the Debtors,
$150,000 of which shall be deposited in escrow upon the
Debtors' acceptance of the Agreement and the balance to
be paid upon final delivery.  The Aircraft is being sold
"as is, where is" -- the Purchaser acknowledges that
there are no expressed or implied warranties with
respect to merchantability or fitness of the Aircraft
other than the existing Manufacturer's warranties.  The
Aircraft is to be delivered with less than 2900 hours of
total time since new and with a valid US Certificate of
Airworthiness.  It is to be delivered with fully paid up
and valid parts contracts for the engines and airframes.
Finally, the Debtors are to deliver the Aircraft free
and clear of any and all liens, claims, or other
encumbrances to its title.  The transaction would close
upon the approval of this Court.

---

[2]    A former insider of the Debtors has an interest in the Purchaser.

**C.   The Agreement Is Subject To Higher And Otherwise Better Proposals.**

13.   To ensure the Debtors receive the highest or otherwise best proposal for the Aircraft, the Debtors will entertain alternate proposals for the Sale of the Aircraft.  Thus, any party, including those parties that previously submitted proposals, who wishes to submit an alternate proposal for consideration by the Debtors should do so by February 11, 2009 at 4:00 p.m. (ET).  If the Debtors receive any such proposals, the Debtors will hold auction on February 12, 2009.  Upon receipt of any alternate proposal, the Debtors will advise the Purchaser and all other parties that submitted an alternate proposal of the time and place (or telephonic instructions) for an auction.

14.   Following an auction, if any, the Debtors will proceed with a hearing to approve the Sale of the Aircraft on February 13, 2009 at 10:00 a.m. (ET) (the "Hearing").

### APPLICABLE AUTHORITY

**I.   APPROVAL OF THE SALE OF THE AIRCRAFT IS WARRANTED UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 363(B)(1).**

15.   Bankruptcy Code section 363(b)(1) authorizes a trustee to "use, sell, or lease" property of the estate with the Court's approval.  11 U.S.C. § 363(b)(1).  Assets of the Debtors may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so.  <u>In re WBQ P'ship</u>, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(<u>citing</u> <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386, 390 (6th Cir. 1986)); <u>see also</u> <u>In re W.A. Mallory Co., Inc.</u>, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

16.   To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable; and (4) adequate and reasonable notice of the sale has been provided.  <u>In re WBQ P'ship</u>, 189 B.R. at 102.

8

17.   Under the Agreement, the Purchaser would pay $3.8 million in consideration for the Aircraft, with no termination fee.  And, the Purchaser has agreed to accept the Aircraft in an "as is, where is," condition without any pre-acceptance technical inspections or pre-acceptance test flights.  Based upon the results of their analysis, the Debtors' management, the Broker, and the Debtors' advisors have concluded that the sale of the Aircraft will maximize recoveries to the estates and stop any deterioration of the value of the Aircraft. Maximizing asset value and preventing deterioration are sound business purposes that warrant authorizing the proposed Sale.

18.   The Sale of the Aircraft will be subject to competing bids, thereby enhancing the Debtors' ability to receive the highest or otherwise best value for the Aircraft.  Consequently, the fairness and reasonableness of the consideration to be received by the Debtors will ultimately be demonstrated by a "market check", which is the best means for establishing whether a fair and reasonable price is being paid.

19.   Moreover, all creditors and parties in interest will receive adequate notice under the circumstances of the Hearing as set forth below.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the Aircraft and others whose interests are potentially implicated by the proposed Sale.

**II.   THE SALE PROCESS WAS REASONABLE AND APPROPRIATE.**

20.   Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

21.   The disposition of the Aircraft pursuant to the terms reflected in the Agreement results from the bids submitted for the Aircraft, pursuant to a marketing

process led by the Broker.  Conducting a marketing

process through a third party broker represents an

accepted method of selling a private aircraft.  Similar

marketing processes have been approved in other chapter

11 cases.  See, e.g., Ready v. Rice, 2006 WL 4550188 at

*3 (D. Md. 2006); see also In re Reading Broadcasting,

Inc., 386 B.R. 562, 571-72 (Bankr. E.D. Pa. 2008); In re

King-Wilson, 1998 WK 737887 at *4-5 (N.D. Cal. 1998).

Moreover, the other interested parties are provided with

an opportunity to submit a higher or otherwise better

proposal and, if necessary, the Debtors will conduct an

auction.

**III. THE PURCHASER OR ANY ALTERNATE PURCHASER SHOULD BE GRANTED THE PROTECTION OF BANKRUPTCY CODE SECTION 363(m).**

22.  Although the Purchaser was a former

insider of the Debtors, the Agreement was the result of

good faith, arm's length negotiations between the

Purchaser and the Debtors.  The negotiations involved

significant amounts of time and energy by the parties

and their professionals, and the Agreement reflected

give-and-take and compromises by both sides.

Accordingly, the Debtors respectfully request that this

Court find that the Purchaser acted in good faith within

the meaning of Bankruptcy Code section 363(m).

23.   Specifically, Bankruptcy Code section

363(m) provides that:

> [t]he reversal or modification on appeal
> of an authorization under subsection (b)
> or (c) of this section of a sale or lease
> of property does not affect the validity
> of a sale or lease under such author-
> ization to an entity that purchased or
> leased such property in good faith,
> whether or not such entity knew of the
> pendency of the appeal, unless such
> authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

24.   While the Bankruptcy Code does not define

"good faith", the Fourth Circuit Court of Appeals has

"adopt[ed] the traditional equitable definition that has

been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and

without notice of adverse claims.'"  Willemain v. Kivitz,

764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

25.   Additionally, because the Purchaser's

Agreement is subject to higher or otherwise better

proposals, the Purchaser has not (and indeed will not)

be able to exert any undue influence over the Debtors.

12

Similarly, any party that submits an alternate proposal
for the Aircraft will not be in a position to exert any
undue influence over the Debtors because the Debtors
have the benefit of the Agreement.  Under the
circumstances, this Court should find that (i) the Sale
of the Aircraft pursuant to the Agreement or otherwise,
is the result of good faith arm's-length negotiations,
and (ii) the ultimate purchaser is entitled to all of
the protections of Bankruptcy Code section 363(m).

**IV.  THE AIRCRAFT SHOULD SOLD BE FREE AND CLEAR OF ALL
INTEREST, INCLUDING CLAIMS, LIENS, AND ENCUMBRANCES,
UNDER BANKRUPTCY CODE SECTION 363(f).**

26.  To facilitate a sale of the Aircraft, the
Debtors request authorization to sell the Aircraft free
and clear of any and all interests, including claims,
liens, and encumbrances that may be asserted against
such property.

27.  Under section 363(f) of the Bankruptcy
Code, a debtor in possession may sell property free and
clear of any interest in such property if, among other
things:

> (1) applicable nonbankruptcy law permits sale
> of such property free and clear of such
> interest;

13

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide  dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

28.  Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

29.  Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc.,

14

189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens.").  Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace.  See In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

30.  Accordingly, this Court should authorize the Debtors to sell the aircraft free and clear of any and all interests, including claims, liens, and encumbrances, that may be asserted by any parties, with any such claims, liens, and encumbrances attaching to the net proceeds of the sale of the Aircraft in the same order and priority as they exist against the Aircraft and in accordance with the terms and provisions of the DIP Facility.

**V.   WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULE 6004 SHOULD BE WAIVED FOR ANY ORDER APPROVING THE SALE OF THE AIRCRAFT.**

31.  Bankruptcy Rule 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after

15

entry of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).

32.   The Debtors request that the Court waive
the ten-day stay of Bankruptcy Rule 6004 with respect to
the Sale of the Aircraft following entry of the Sale
Order.  By waiving such requirements, the Debtors and
The Purchaser (or any other purchaser) will be able to
immediately close the transaction contemplated by the
Agreement and approved by this Court, which will in turn
save the Debtors continued accrual of administrative
expenses and thereby benefit the Debtors' estates.

**NOTICE**

33.   Notice of this Motion has been provided
to those parties who have requested notice pursuant to
Bankruptcy Rule 2002 and the Core Group (as defined in
the Order Pursuant to Bankruptcy Code Sections 102 and
105, Bankruptcy Rules 2002 and 9007, and Local
Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain
Notice, Case Management, and Administrative Procedures
(Docket No. 130; the "Case Management Order")), as well
as (a) all entities known to have expressed an interest
in a transaction regarding the Aircraft during the past

16

three (3) months; and (b) all federal, state, and local
regulatory or taxing authorities or recording offices
that have a reasonably known interest in the relief
requested by the Motion.  The Debtors submit that, under
the circumstances, no other or further notice need be
given.

### WAIVER OF MEMORANDUM OF LAW

34.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors request that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

### NO PRIOR REQUEST

35.   No previous request for the relief sought
herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: February 3, 2009
    Richmond, Virginia

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
        Gregg M. Galardi, Esq.
        Ian S. Fredericks, Esq.
        P.O. Box 636
        Wilmington, Delaware 19899-0636
        (302) 651-3000

                - and -

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
        Chris L. Dickerson, Esq.
        333 West Wacker Drive
        Chicago, Illinois 60606
        (312) 407-0700

                - and -

        MCGUIREWOODS LLP

        /s/ Douglas M. Foley       .
        Dion W. Hayes (VSB No. 34304)
        Douglas M. Foley (VSB No. 34364)
        One James Center
        901 E. Cary Street
        Richmond, Virginia 23219
        (804) 775-1000

        Counsel for Debtors and Debtors in Possession

18

## <u>EXHIBIT A</u>

**(Purchase Agreement)**

## Aircraft Purchase Offer

This Aircraft Purchase Offer ("Offer") is made by AVEST LLC, a Virginia limited liability company whose address is PO BOX 42333 Richmond. VA 23242 ("Purchaser"; such term includes its successors and assigns ), to purchase the following Aircraft from CC Aviation LLC, a Virginia limited liability company, whose address is 9950 Mayland Drive, Richmond, Virginia 23233 ("Seller").

| | |
|---|---|
| **Manufacturer/Year:** | **2001** |
| **Model:** | **Learjet 45** |
| **Serial Number:** | **45-123** |
| **Registration Number:** | **N484LC** |

For purposes of this Offer, "Aircraft" includes the engines, radios, navigational devices, instrumentation, appurtenances, fixtures, accessories, spares inventory, log books, flight and component manuals, maintenance records and loose equipment,

Conditions of this Offer are as follows:

1) **Purchase Price.**

   A. The total purchase price shall be Three Million Eight Hundred Thousand ($3,800,000) (U. S. currency).  The purchase price does not include any taxes imposed on the sale, use or ownership of the Aircraft, whether imposed on Purchaser or Seller.

   B. Upon Seller's acceptance of this Offer, Purchaser will make an earnest money deposit in the amount of One Hundred Fifty Thousand Dollars ($150,000) (U. S. currency), which shall be deposited in escrow with Insured Aircraft Title Service, Inc., Oklahoma City, Oklahoma ("Escrow Agent").  The closing balance of Three Million Sic Hundred Thousand Dollars ($3,650,000) (U. S. currency) shall be payable upon final delivery.

2) **Title.**

   Seller represents and warrants to Purchaser that it is authorized to sell, and has full legal and beneficial title to, the Aircraft, subject to the approval of the United States Bankruptcy Court , Eastern Dsitrict of Virginia, Richmond Division. Seller will deliver Aircraft free and clear of any and all liens, claims, or other encumbrances to its title.

3) **Condition of Aircraft.**

   Aircraft is being sold "as is, where is". Purchaser acknowledges that there are no express or implied warranties with respect to merchantability or fitness of Aircraft other than the existing Manufacturer's warranties for the Aircraft.  Purchaser waives any pre-acceptance technical inspections for the Aircraft and, as long as the Aircraft remains in its current hangar until acceptance by Purchaser or termination of this Offer, Purchaser also waives the right to conduct any pre-acceptance test flights.

1

4) **Delivery.**

    A. Unless a later date is mutually agreed to in writing, delivery shall take place on February 15, 2009. Delivery shall be at Richmond, Virginia. Seller shall pay any out-of-pocket costs for delivery.

    B. Aircraft will be delivered with a valid US Certificate of Airworthiness. Aircraft will be delivered with all airworthiness directives, and all mandatory service bulletins performed; and will be delivered with all original logs, wiring diagrams, records, maintenance manuals and flight manuals.

5. **Conveyance of Title.**

    A. Conveyance of title will be by Federal Aviation Administration Bill of Sale and Long Form Warranty Bill of Sale accompanied by appropriate releases of any liens or other encumbrances that exist against Aircraft, its engines or equipment. Purchaser agrees to waive Cape Town International Registry requirements for this transaction.

    B. All documents necessary to convey clear unencumbered title of Aircraft, its engines, and components from Seller to Purchaser shall be pre-positioned with Escrow Agent prior to final delivery.

    C. Upon Purchaser's acceptance of Aircraft at final delivery, Purchaser shall instruct Escrow Agent to pay deposit to Seller. Purchaser shall also pay closing balance to Seller. Upon receipt of the total purchase price Seller shall instruct Escrow Agent to transfer free and clear title to Purchaser by recording all documents described in Section 6A above with the Federal Aviation Administration. Purchaser and Seller shall split the cost of fees payable to the Escrow Agent.

6. **Insurance.**

Until delivery, Seller shall keep Aircraft fully insured, and in the event of any loss, this transaction shall, at the election of the Purchaser, become null and void, the earnest money deposit promptly refunded in full to the Purchaser, and all proceeds of insurance shall be the sole property of the Seller.

7. **Special Terms and Conditions.**

    1. Aircraft shall be delivered with less than 2900 Hours Total Time Since New.

    2. Buyer recognizes the sale of the aircraft is contingent upon Bankruptcy Court approval. Subject to Section 6 above, upon approval by the United States Bankruptcy Court, Eastern District of Virginia, Richmond Division, the earnest money deposit shall become non-refundable

    3. Aircraft will delivered with fully paid up and valid Honeywell MSP and Bombardier Smart Parts contracts for the engines, APU and airframe.

8. **Date of Offer.**

The date of this Offer, if accepted, shall be the date the Seller accepts this Offer and so notifies Purchaser in writing.

9. **Time of Essence.**

If Seller does not accept this Offer on or before 12:00 PM EDT, Tuesday, February 3, 2009, this Offer shall be null and void.

**In Witness Whereof**, the parties hereto have executed this Offer the date set forth below.

AGREED AND ACCEPTED

AVEST LLC

CC Aviation LLC

By: Circuit City Stores, Inc., its manager and sole member

By: Richard L. Sharp

By: _Michelle Mosier_

Title: _____

Title: _VP Controller_

MANAGER

_Michelle Mosier_

(Signature)

(Signature)

Date: 2/3/2009

Date: 2/3/09

3