Gregg M. Galardi, Esq.　　　　　　Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.　　　　　Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &　MCGUIREWOODS LLP
FLOM, LLP　　　　　　　　　　　　One James Center
One Rodney Square　　　　　　　　901 E. Cary Street
PO Box 636　　　　　　　　　　　　Richmond, Virginia 23219
Wilmington, Delaware 19899-0636　(804) 775-1000
(302) 651-3000

　　　　　　　- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

　　　　IN THE UNITED STATES BANKRUPTCY COURT
　　　　　FOR THE EASTERN DISTRICT OF VIRGINIA
　　　　　　　　　RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:　　　　　　　　　　　　: 　Chapter 11
　　　　　　　　　　　　　　　:
CIRCUIT CITY STORES, INC.,　　: 　Case No. 08-35653 (KRH)
et al.,　　　　　　　　　　　 :
　　　　　　　　　　　　　　　:
　　　　　　　　　　Debtors.　 : 　Jointly Administered
- - - - - - - - - - - - - - - x

**ORDER (I) APPROVING SALE OF AIRCRAFT FREE AND CLEAR OF
ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND
(II) GRANTING RELATED RELIEF**

　　　　Upon consideration of the Debtors' Motion for Orders Pursuant to Bankruptcy Code Sections 105 and 363 (A) Authorizing Debtors to Enter Into Agreement in Connection with Sale of Aircraft, Subject to Higher or Otherwise Better Bids, (B) Approving Sale of Aircraft Free

and Clear of All Interests; and (C) Granting Related Relief (the "Motion");[1] and the Court having conducted a hearing on the Motion on February 13, 2009 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement, attached hereto as Exhibit A), and the transaction contemplated thereby (the "Transaction"); and the Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at the Sale Hearing; and upon the record of the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause appearing therefore:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

**THE COURT HEREBY FINDS, DETERMINES AND CONCLUDES THAT:**[2]

A.  The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.  The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105 and 363 and Bankruptcy Rule and 6004.

D.  Notice of the Motion and entry of the Sale Order has been provided to those parties entitled to notice under the Debtors' Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

3

Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130; the "Case Management Order"), as well as (a) all entities known to have expressed an interest in a transaction regarding the Aircraft during the past three (3) months and (b) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the Aircraft.

    E. Based upon the affidavits of service filed with the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

    F. The Aircraft is property of the Debtors' estates and title thereto is vested in the Debtors' estates.

4

G. The Broker, the Debtors and their professionals marketed the Aircraft and conducted the marketing and sale process as set forth in and in accordance with the Motion. Based upon the record of these proceedings, all creditors and other parties-in-interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Aircraft.

H. The fee owed to the Broker (the "Broker's Fee") is fair and reasonable and payment of such fee is in the best interests of the Debtors, their estates, and their creditors.

I. Entry into the Brokerage Agreement and the Agreement and consummation of the Transaction constitute the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors, and all other parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Aircraft to Purchaser.

J. The Agreement and the Transaction were negotiated and have been and are undertaken by the Debtors and Purchaser at arms' length without collusion or

5

fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Debtors and Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code.

K.   The consideration provided by Purchaser for the Aircraft under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes.

L.   Neither the Debtors nor Purchaser engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

M.   The Sale contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

Based upon all of the foregoing, and after due deliberation, **THE COURT ORDERS, ADJUDGES, AND DECREES THAT:**

1.   The relief requested in the Motion is GRANTED.

2.   The Agreement and the Brokerage Agreement attached hereto as Exhibits A and B, respectively, and

6

the Sale of the Aircraft to Purchaser are hereby approved and authorized in all respects.

   3. Pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Debtors's right, title, and interest in the Aircraft shall be transferred to the Purchaser free and clear of all interests, including liens, claims, and encumbrances ("Interests"), with all such Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Aircraft immediately before such transfer, subject to any claims and defenses the Debtors may possess with respect thereto.

   4. Except as may be expressly provided in the Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Aircraft prior to the consummation of the Transaction contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or or

7

the Aircraft, or relating to continuing or other conditions existing on or prior to the Closing.

5. The Transaction is undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Aircraft as that term is used in Bankruptcy Code section 363(m). The Purchaser is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

6. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the sale of the Aircraft to Purchaser and the Closing of the Sale in accordance with the Motion, the Purchase Agreement and this Order; and (ii) perform, consummate, implement and close fully the Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement.

7. The Debtors are authorized to pay the Broker's Fee in accordance with the Brokerage Agreement and this Order.

8

8. This Order is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Aircraft conveyed to Purchaser. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Interests against the Aircraft from their records, official and otherwise.

9. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

9

10.  This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rule 6004(h) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

11.  To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any Permit relating to the operation of the Aircraft sold, transferred or conveyed to Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale.

12.  This Court retains jurisdiction to hear and determine all matters arising from or related to im-

plementation or interpretation of this Order or the

Agreement.

Dated:   Richmond, Virginia
         February _____, 2009

                    _____
                    UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

      - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

      - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

11

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

# EXHIBIT A

**(Purchase Agreement)**

**Aircraft Purchase Offer**

This Aircraft Purchase Offer ("Offer") is made by AVEST LLC, a Virginia limited liability company whose address is PO BOX 42333 Richmond. VA 23242 ("Purchaser"; such term includes its successors and assigns ), to purchase the following Aircraft from CC Aviation LLC, a Virginia limited liability company, whose address is 9950 Mayland Drive, Richmond, Virginia 23233 ("Seller").

| | |
|---|---|
| **Manufacturer/Year:** | 2001 |
| **Model:** | Learjet 45 |
| **Serial Number:** | 45-123 |
| **Registration Number:** | N484LC |

For purposes of this Offer, "Aircraft" includes the engines, radios, navigational devices, instrumentation, appurtenances, fixtures, accessories, spares inventory, log books, flight and component manuals, maintenance records and loose equipment,

Conditions of this Offer are as follows:

**1) Purchase Price.**

  A. The total purchase price shall be Three Million Eight Hundred Thousand ($3,800,000) (U. S. currency). The purchase price does not include any taxes imposed on the sale, use or ownership of the Aircraft, whether imposed on Purchaser or Seller.

  B. Upon Seller's acceptance of this Offer, Purchaser will make an earnest money deposit in the amount of One Hundred Fifty Thousand Dollars ($150,000) (U. S. currency), which shall be deposited in escrow with Insured Aircraft Title Service, Inc., Oklahoma City, Oklahoma ("Escrow Agent"). The closing balance of Three Million Sic Hundred Thousand Dollars ($3,650,000) (U. S. currency) shall be payable upon final delivery.

**2) Title.**

Seller represents and warrants to Purchaser that it is authorized to sell, and has full legal and beneficial title to, the Aircraft, subject to the approval of the United States Bankruptcy Court , Eastern Dsitrict of Virginia, Richmond Division. Seller will deliver Aircraft free and clear of any and all liens, claims, or other encumbrances to its title.

**3) Condition of Aircraft.**

Aircraft is being sold "as is, where is". Purchaser acknowledges that there are no express or implied warranties with respect to merchantability or fitness of Aircraft other than the existing Manufacturer's warranties for the Aircraft. Purchaser waives any pre-acceptance technical inspections for the Aircraft and, as long as the Aircraft remains in its current hangar until acceptance by Purchaser or termination of this Offer, Purchaser also waives the right to conduct any pre-acceptance test flights.

1

4) **Delivery.**

    A. Unless a later date is mutually agreed to in writing, delivery shall take place on February 15, 2009. Delivery shall be at Richmond, Virginia. Seller shall pay any out-of-pocket costs for delivery.

    B. Aircraft will be delivered with a valid US Certificate of Airworthiness. Aircraft will be delivered with all airworthiness directives, and all mandatory service bulletins performed; and will be delivered with all original logs, wiring diagrams, records, maintenance manuals and flight manuals.

5. **Conveyance of Title.**

    A. Conveyance of title will be by Federal Aviation Administration Bill of Sale and Long Form Warranty Bill of Sale accompanied by appropriate releases of any liens or other encumbrances that exist against Aircraft, its engines or equipment. Purchaser agrees to waive Cape Town International Registry requirements for this transaction.

    B. All documents necessary to convey clear unencumbered title of Aircraft, its engines, and components from Seller to Purchaser shall be pre-positioned with Escrow Agent prior to final delivery.

    C. Upon Purchaser's acceptance of Aircraft at final delivery, Purchaser shall instruct Escrow Agent to pay deposit to Seller. Purchaser shall also pay closing balance to Seller. Upon receipt of the total purchase price Seller shall instruct Escrow Agent to transfer free and clear title to Purchaser by recording all documents described in Section 6A above with the Federal Aviation Administration. Purchaser and Seller shall split the cost of fees payable to the Escrow Agent.

6. **Insurance.**

Until delivery, Seller shall keep Aircraft fully insured, and in the event of any loss, this transaction shall, at the election of the Purchaser, become null and void, the earnest money deposit promptly refunded in full to the Purchaser, and all proceeds of insurance shall be the sole property of the Seller.

7. **Special Terms and Conditions.**

    1. Aircraft shall be delivered with less than 2900 Hours Total Time Since New.

    2. Buyer recognizes the sale of the aircraft is contingent upon Bankruptcy Court approval. Subject to Section 6 above, upon approval by the United States Bankruptcy Court, Eastern District of Virginia, Richmond Division, the earnest money deposit shall become non-refundable

    3. Aircraft will delivered with fully paid up and valid Honeywell MSP and Bombardier Smart Parts contracts for the engines, APU and airframe.

2

8. **Date of Offer.**

   The date of this Offer, if accepted, shall be the date the Seller accepts this Offer and so notifies Purchaser in writing.

9. **Time of Essence.**

   If Seller does not accept this Offer on or before 12:00 PM EDT, Tuesday, February 3, 2009, this Offer shall be null and void.

**In Witness Whereof**, the parties hereto have executed this Offer the date set forth below.

|  |  |
|---|---|
|  | AGREED AND ACCEPTED |
| AVEST LLC | CC Aviation LLC |
|  | By: Circuit City Stores, Inc., its manager and sole member |
| By: Richard L. Sharp | By: _Michelle Mosier_ |
| Title: _MANAGER_ | Title: _VP Controller_ |
| (Signature) | (Signature) |
| Date: 2/3/2009 | Date: 2/3/09 |

3

## EXHIBIT B

**(Brokerage Agreement)**

731886-Chicago Server 2A - MSW



**AIRCRAFT CHARTER/MANAGEMENT**

## *AIRCRAFT SALES MANAGEMENT AGREEMENT*

THIS AGREEMENT is made on January 16, 2009 by and between Martinair, Inc. ("Martinair") whose address is 5733 Huntsman Rd, Richmond International Airport, 23250, and Circuit City Stores, Inc. ("Circuit City") whose address is 9950 Maryland Drive, Richmond, VA 23233-1464 and its assigns. Circuit City owns or has right to sell the following aircraft: **2001 Learjet 45, serial number 45-123, Registration N484LC**, (hereinafter the "Aircraft").

Martinair agrees to undertake a promotional sales effort directed toward the sale of Circuit City's Aircraft. In consultation, and with the final approval of Circuit City, Martinair will prepare literature, brochures, mailers, email and internet notices and listings and technical specifications and will distribute all such materials as it deems necessary. Such efforts by Martinair shall be of a character, quality and quantity in accordance with industry practices for the sale of similar aircraft. Subject to the approval of Circuit City, Circuit City will pay costs of all such marketing and advertising activities incurred by Martinair.

Circuit City will assist Martinair by making the aircraft available for inspection with all information regarding the aircraft and its equipment. Martinair will advise of all written offers and after consultation with Circuit City, and under the direction of Circuit City, negotiate directly with all prospective purchasers. If an offer is accepted by Circuit City, Martinair will assist the Circuit City's legal counsel in preparing a sales agreement, oversee any pre-purchase inspections and assist in the closing of the transaction as may be requested by Circuit City.

In consideration of the above undertaking of Martinair, Circuit City hereby selects Martinair to manage the sale of the above aircraft, giving Martinair exclusive right to sell said aircraft for a period of 180 days starting on November 14, 2008. Circuit City agrees that in the event a sale is made and Circuit City receives all of the funds as set forth in the sales contract, then Martinair shall be paid a commission of **$90,000** at the time of closing. Should Martinair purchase the aircraft for its own accord or in order to facilitate any transaction, then no commission shall be payable to Martinair by Circuit City and Circuit City shall receive the net proceeds of such sale.

Circuit City agrees that it will not directly or indirectly sell or in any manner attempt to negotiate the sale of the aircraft during the term of this agreement and will refer all inquires to Martinair. If Circuit City (a) due solely to its actions, fails to close after receipt from Martinair of an offer that is accepted by Circuit City or (b) terminates this agreement for reasons other than the actions of others, prior to termination date or (c) directly or indirectly sells or leases the aircraft within 6 months after termination of the above exclusive agreement to any customer initiated, procured or contacted by Martinair during said period, then and in any of said events, Circuit City agrees to pay Martinair a commission of **$90,000**. In the event Circuit City determines to enter a Lease instead of a sale of the aircraft to a Lessee found by Martinair, Martinair shall be paid a sum equal to two (2) monthly base rental payments at time of closing from Circuit City. Circuit City and Martinair agree that the terms of this agreement and any resulting sale or lease shall remain confidential. Upon delivery of the airworthy aircraft to the new owner, Circuit City will include with the aircraft all flight manuals, all airframe and engine logbooks and records, all support equipment, spare parts and components pertaining to the aircraft.

MARTINAIR, INC.

By: _____
Title _____

CIRCUIT CITY STORES, INC.

By: _____
_____