# Exhibit 1

Original Document held by
First National Bank of Maryland
as Trustee for D.L. Peterson Trust
(12/18/98)

**MOTOR VEHICLE FLEET OPEN-END
OPERATING LEASE AGREEMENT**

LEASE NO(S). _5491_

PHH

THIS MOTOR VEHICLE FLEET OPEN-END OPERATING LEASE AGREEMENT, dated as of _January 25_ 1998 ("this Agreement"), is entered into by and between PHH VEHICLE MANAGEMENT SERVICES CORPORATION, a Maryland corporation, with offices at 307 International Circle, Hunt Valley, Maryland 21030-1337 ("Lessor"), and CIRCUIT CITY STORES, INC., with offices at 9950 Mayland Drive, Richmond, Virginia 23233-1464 ("the Lessee").

IN CONSIDERATION of the premises and the mutual covenants and conditions contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and the Lessee, each intending to be legally bound hereby, agree as follows:

1. <u>Lease of Motor Vehicles</u>.

    (a) Subject to the terms and conditions of this Agreement, Lessor agrees to lease to the Lessee, and the Lessee agrees to lease from Lessor, all of the cars, trucks, truck chassis, truck bodies, truck tractors, truck trailers, and other motor vehicles (each, "a Vehicle" or "the Vehicle," and collectively, "the Vehicles") that the Lessee from time to time requisitions from Lessor and that Lessor from time to time agrees to lease to the Lessee under this Agreement. Neither Lessor nor the Lessee shall be obligated to lease any minimum number of Vehicles; however, once a Vehicle is requisitioned from Lessor by the Lessee, the Lessee shall be obligated to lease the Vehicle under this Agreement. Lessor may, for cause and in good faith, choose to cancel any Vehicle requisition submitted pursuant to this Agreement at any time prior to delivery of the Vehicle to the Lessee or the Lessee's representative.

    (b) Lessor shall be the sole legal and equitable owner of the Vehicles. The Lessee shall have no legal or equitable interest in the Vehicles or the proceeds of sale of the Vehicles except its interest as Lessee of the Vehicles as specifically set forth in this Agreement or in the event of the purchase of a Vehicle pursuant to Section 8(e) of this Agreement.

    (c) The Vehicles shall be titled in the name of Lessor or D. L. Peterson Trust or such other name as Lessor or the trustee of D. L. Peterson Trust may designate from time to time. The certificates of title for the Vehicles may note, as lienholder Lessor or such other party as Lessor or the trustee of D. L. Peterson Trust may designate from time to time.

    (d) From time to time, the Lessee may request in writing that Lessor issue additional Lease Numbers in order to facilitate Lessee's identification and administration of this Agreement. In such event, any Vehicles ordered or leased by Lessor to or for the Lessee and identified by such additional Lease Numbers shall be governed by and subject to the terms and conditions of this Agreement the same as if these Vehicles had been identified by the original Lease Number.

    (e) Lessor and the Lessee characterize this Agreement as a lease for federal and state income tax purposes. Lessor and the Lessee agree that Lessor is the only party entitled to claim income tax deductions for asset cost recovery, or depreciation, and investment tax credits, if any, with respect to the Vehicles, under the Internal Revenue Code of 1986 and applicable state laws, as amended from time to time.

2. <u>Lease Term</u>. The lease term for a Vehicle shall commence on the date that the Lessee or its representative takes possession of the Vehicle ("Acceptance") and shall continue thereafter, except in the event of the loss, or damage beyond repair, of the Vehicle (a "Casualty Vehicle"), for a minimum term of twelve (12) months. After the minimum term, the lease term may be continued at the Lessee's election for successive monthly renewal periods until the Vehicle is returned to Lessor or its representative pursuant to Section 8 of this Agreement.

3. <u>Use of Vehicles</u>.

    (a) The Lessee shall maintain the Vehicles in good condition and repair, ordinary wear and tear excepted. The Lessee shall use or permit the use of the Vehicles in its trade or business and only for lawful purposes within the United States and for occasional trips to Canada and Mexico, but in no event shall a Vehicle be used for the transportation for hire of goods or passengers, for towing any property other than in accordance with the Vehicle manufacturer's specifications, or for transporting explosive, radioactive, flammable, or hazardous materials in quantities that require placarding under DOT

standards. The Lessee shall comply, and cause all persons operating the Vehicles to comply, with (i) all applicable requirements of law relating to the registration, leasing, insurance, use, and operation of the Vehicles, including operators' licensing requirements, and (ii) all conditions of the policies of insurance on the Vehicles. At all times, the Lessee shall supply Lessor with the names of representatives to whom the Vehicles are assigned and addresses where Vehicles are garaged.

(b) Notwithstanding the above, Lessor reserves the right to inspect the Vehicles at anytime during normal daylight business hours upon reasonable notice of its intent to do so. The Lessee shall furnish information to Lessor as to where the Vehicles may be inspected.

4. <u>Sublease or Assignment</u>. The Lessee shall not sublease or assign any of the Vehicles, except with the prior written consent of Lessor. The Lessee may have any of the Vehicles delivered to and used by representatives of a subsidiary company of the Lessee, but such arrangement shall in no way alter the Lessee's responsibilities under this Agreement with respect to the Vehicles.

5. <u>Deliveries, Disclaimer of Warranties, and Upfitting</u>.

(a) Lessor shall be responsible for obtaining and making available to designated representatives of the Lessee the Vehicles from time to time agreed to be leased as provided in Section 1; provided, however, that Lessor shall not be liable to the Lessee in the event of Lessor's inability to obtain any of the Vehicles with the exercise of reasonable diligence.

(b) The Lessee shall designate each of the Vehicles to be a 24-month, 33-month, 36-month, 40-month, 45-month, 50-month, or 60-month Vehicle (or such other designations as the parties hereto may make by amendment of this Agreement). Such designation (i) shall be known as the Depreciation Term for a Vehicle, (ii) shall be made by the Lessee on a requisition form or by an alternative method acceptable to Lessor in advance of the Acceptance of the Vehicle, and (iii) once made as to the Vehicle, may not be changed without the prior written consent of Lessor.

(c) Lessor hereby assigns, and will otherwise make available to the Lessee, all of Lessor's rights under the manufacturers' warranties of the Vehicles. Acceptance of delivery of a Vehicle by the Lessee's representative shall constitute the Lessee's acknowledgment that (i) the Vehicle is the make and model, and is equipped, as specified by the Lessee, (ii) the Vehicle is an authorized addition under this Agreement, and (iii) LESSOR HAS MADE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE VEHICLE, AND THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL LESSOR BE LIABLE FOR CONSEQUENTIAL, SPECIAL, OR INCIDENTAL DAMAGES, RESULTING FROM THE POSSESSION, USE OR OPERATION OF THE VEHICLES BY LESSEE.

(d) Upon Acceptance of a Vehicle by the Lessee, Lessor shall pay the total of all amounts required to be paid to manufacturers, dealers, and vendors in connection with the purchase and delivery of the Vehicle and for all fees and taxes related to the titling, licensing, and registration of the Vehicle. The total of all such amounts paid, as adjusted by charges assessed in accordance with Section 5(e) herein, shall be used as the basis for determining the rental payable for the Vehicle and shall hereinafter be referred to as the "Capitalized Cost."

(e) Lessor shall pay when due all vendor invoices for such Vehicle, including but not limited to the manufacturer's or dealer's invoice for the base unit, and assess the Lessee carrying cost charges for each invoice paid from the date of payment by Lessor until the date of Acceptance of the Vehicle by the Lessee. In the event that a car or light-duty truck having a gross vehicle weight less than or equal to 16,000 lbs. is delivered to a vendor for upfitting prior to Acceptance by the Lessee, carrying cost charges shall be calculated on a per diem basis (365-day-year) in accordance with the matrix contained in the Rate Schedule, as defined in Section 6, beginning on the sixteenth (16th) day following the date on which Lessor pays the invoice for the base unit at the rate of 100% of the prime interest rate charged by Bankers Trust Company of New York as of the date of Acceptance of the Vehicle. In the event a medium- or heavy-duty truck having a gross vehicle weight greater than 16,000 lbs. is delivered to a vendor at the request of the Lessee for upfitting prior to Acceptance, the carrying cost charges shall be calculated on a per diem basis (365-day-year) at the rate of 100% of the prime interest rate charged by Bankers Trust Company of New York as of the last business day of the month preceding the month in which the vendor invoice is paid. The interest rate shall be adjusted upward or downward on the last day of each subsequent month as the prime interest rate changes. Carrying cost charges for each Vehicle leased pursuant to this Agreement shall be included in the Capitalized Cost for such Vehicle.

6. <u>Rental and Rental Term</u>.

(a) Rental and other charges related to the Vehicles shall be billed by Lessor monthly in advance of the month for which they are due and paid by the Lessee to Lessor by the first calendar day of such month. Rental charges shall be determined by reference to the rates shown on the Rate Schedule in effect at the time of the Lessee's Acceptance of a Vehicle and made part of this Agreement, which rates are expressed as a percentage of the Capitalized Cost of the Vehicle. Such rental rates shall include a percentage factor, known as the Depreciation Rent Factor, of 4.17%, 3.04%, 2.78%, 2.50%, 2.25%, 2.00% or 1.67% in the case of 24, 33, 36, 40, 45, 50, or 60 month Vehicles respectively. That portion of the Lessee's monthly rental comprising the applicable Depreciation Rent Factor times the Capitalized Cost of the Vehicles shall be known as Depreciation Rent. The aggregate amount of all Depreciation Rent paid during the rental term of a Vehicle shall be known as the Accumulated Depreciation Rent.

(b) Rental and the other charges related to the Vehicles shall be subject to a late-payment charge to be paid by the Lessee to Lessor in the amount of one and one-half percent (1-1/2%) per month, or fraction of a month, for any amount not received by Lessor by the fifteenth (15th) calendar day of the month for which such amount is due. This reference to a late-payment charge does not alter the Lessee's obligation to pay all rental and other charges related to the Vehicles by the first calendar day of the month for which they are due.

(c) The rental term for a Vehicle shall commence on the first (1st) calendar day of the month in which the Vehicle is accepted by the Lessee's representative if accepted on or before the fifteenth (15th) calendar day of the month, or on the first (1st) calendar day of the following month if accepted after the fifteenth (15th) calendar day of the month. The rental term for a Vehicle shall end on the last calendar day of the month preceding the month in which the Vehicle is sold and final settlement for the Vehicle is made pursuant to Section 8 if such sale and settlement occur on or before the fifteenth (15th) calendar day of the month, or on the last calendar day of the month in which the sale and settlement occur if such sale and settlement occur after the fifteenth (15th) calendar day of the month. Provided Lessee has ordered a replacement Vehicle, Lessee shall not be required to pay more than one (1) month's rent during the month a Vehicle is surrendered to Lessor and a replacement Vehicle is accepted.

(d) The Lessee shall not prepay any rental for more than one (1) month in advance of its due date.

7. <u>Expenses, Fees, and Taxes</u>.

The Lessee shall pay all costs, expenses, fees, and charges incurred in connection with the titling and registration of the Vehicles and the use and operation of the Vehicles during their lease terms, including, but not limited to, fuel, lubricants, replacement parts and accessories, repairs, maintenance, storage, parking, tolls, fines, registration fees, license fees, tags, and all taxes whatsoever by whomsoever payable (except any tax measured by the net income of Lessor) on or relating to the Vehicles and their purchase, sale, rental, use, or operation. The Lessee shall reimburse Lessor the amount of any such costs, expenses, fees, charges, and taxes paid by Lessor, and pay the administration fee of $15.00 per parking ticket assessed by Lessor, if any, for advancing these monies. It is the intent of this Agreement that Lessor shall receive the rental hereunder as a net return on the Vehicles.

8. <u>Sale of Vehicles</u>.

(a) At anytime after the first twelve (12) months of the rental term of a Vehicle that the Lessee no longer intends to use, the Lessee may terminate the lease of the Vehicle. In such case, the Lessee shall notify Lessor and shall, at the Lessee's expense, surrender the Vehicle at a place that is mutually agreeable to the Lessee and Lessor. Any Vehicle, except a Casualty Vehicle, as defined in Section 2, that is not kept under lease for the minimum term of twelve (12) months shall be subject to a penalty of an amount equal to the monthly rent for such Vehicle less the Depreciation Rent portion of such monthly rent for each month that the Vehicle is kept under lease less than twelve (12) months. As soon as practicable, Lessor shall sell the Vehicle to a purchaser selected by, or approved by, Lessor. The rental term for the Vehicle shall end as provided in Section 6.

(b) Should the net resale proceeds exceed the difference between the Capitalized Cost and the Accumulated Depreciation Rent paid by the Lessee, Lessor shall credit the Lessee's account for such excess, or, at the Lessor's option, pay such excess to the Lessee.

(c) Should the net resale proceeds be less than the difference between the Capitalized Cost and the Accumulated Depreciation Rent paid by the Lessee, the Lessee shall pay such deficiency to Lessor; provided, however, that the Lessee

-3-

shall not be liable to pay Lessor for that portion of any such deficiency caused by the net resale proceeds being less than sixteen percent (16%) of the fair market value of the Vehicle at the time of sale subject, however, to the operation of Section 8(d). For purposes of this Section 8(c), the "fair market value" of a Vehicle shall be its Capitalized Cost if the Vehicle is sold during the period from the beginning of the thirteenth (13th) through the end of the twenty-fourth (24th) month of its rental term. If the Vehicle is sold at anytime after the twenty-fourth (24th) month of its rental term, the "fair market value" shall be the fair market value of the Vehicle at the beginning of the monthly renewal period immediately preceding the date of sale.

(d)  In the event that the net resale proceeds are less than the difference between the Capitalized Cost and the Accumulated Depreciation Rent paid by the Lessee because of damage or wear and tear to the Vehicle in excess of that which is ordinary, the Lessee shall pay Lessor the entire amount of such deficiency, and the limitation on the Lessee's obligation to pay the deficiency as set forth in Section 8(c) shall not apply.

(e)  Provided that Lessee is not then in default under this Agreement, the Lessee shall have the option to purchase, or designate a purchaser for, a Vehicle leased pursuant to this Agreement at anytime after the first twelve (12) months of the rental term of the Vehicle, upon payment to Lessor of an amount equal to the fair market value of the Vehicle, as determined by Lessor based upon the applicable percentage of the Automotive Market Report ("AMR"). This amount shall be deemed to be the net resale proceeds for the Vehicle. Notwithstanding any provision in this Agreement to the contrary, the rental term for a Vehicle sold in this manner shall continue until such payment is received by Lessor, and, further, the limitation on the Lessee's obligation to pay Lessor for any deficiency between the net resale proceeds and the difference between the Capitalized Cost and the Depreciation Rent paid by the Lessee as set forth in Section 8(c) shall not apply.

(f)  Any adjustments between Lessor and the Lessee relating to the disposition of the Vehicles shall be reflected in a statement of final settlement to be rendered by Lessor to the Lessee.

9.  **Loss of or Damage to Vehicles**.  All risk of loss or damage to a Vehicle from whatever cause shall be assumed by the Lessee from the time of Acceptance of the Vehicle by the Lessee or the Lessee's representative until the time the Vehicle is surrendered to Lessor or Lessor's representative.

10.  **Insurance**.  The Lessee shall provide insurance for the use, operation, and possession of each of the Vehicles covering liability for bodily injury and property damage during the period from Acceptance of the Vehicle by the Lessee or its representative until the Vehicle is surrendered to Lessor or its representative. Such insurance policy, which shall be with a responsible insurance company reasonably acceptable to Lessor, shall name Lessor and D. L. Peterson Trust (or such other lienholder as directed by Lessor from time to time) as additional insureds and loss payees and shall provide minimum coverages, acknowledged by such insurance company to be the primary coverage, of $250,000 per person and $500,000 per occurrence for bodily injury and $100,000 per occurrence for property damage. The Lessee shall also provide collision and comprehensive insurance in accordance with this Section 10 covering loss or damage to the Vehicles in an amount not less than the actual cash value of each of the Vehicles, with a deductible not to exceed $1,000. The Lessee may self-insure for collision and comprehensive insurance coverage. The Lessee shall furnish Lessor with a certificate of insurance or other satisfactory evidence of the required insurance coverage. Lessor shall be under no duty to examine such certificate of insurance or other evidence or to advise the Lessee in the event its insurance is not in compliance with this Agreement.

11.  **Indemnification**.  Regardless of any insurance provided pursuant to Section 10, and, except to the proportionate extent of any negligence or willful misconduct by Lessor, the Lessee shall at all times be liable to defend, indemnify, and save harmless Lessor and D. L. Peterson Trust (and any other lienholder designated by Lessor from time to time) against all claims and liabilities of whatsoever kind or nature and all costs and expenses, including attorneys' fees, incurred in connection with, relating to, or arising out of the possession, use, or operation of each of the Vehicles during the period from Acceptance of the Vehicle by the Lessee or its representative until the Vehicle is surrendered to Lessor or its representative. This indemnification obligation shall survive the surrender of the Vehicle and the termination of this Agreement.

12.  **Default**.

(a)  In the event (i) the Lessee defaults in the payment of any rental or other amounts payable under this Agreement, or defaults in the performance of the covenants or obligations of the Lessee hereunder, and should such default continue for a period of fifteen (15) days following receipt by the Lessee of written notice of default under this Agreement, (ii) there shall be filed by or against the Lessee any action under any provision of any state or federal law relating to insolvency or bankruptcy, and such action is not dismissed within sixty (60) days of the filing, (iii) a receiver or trustee shall

-4-

be appointed for the Lessee's property, and such appointment is not withdrawn within sixty (60) days of the date of appointment, (iv) the Lessee makes an assignment for the benefit of creditors, (v) the Lessee shall be in default in the payment or performance of any other indebtedness or obligation owed by the Lessee to Lessor under any other agreement or instrument, or (vi) the financial condition of the Lessee's affairs shall materially change so as to substantially impair Lessor's title to the Vehicles or substantially increase Lessor's credit risk, then Lessor may terminate this Agreement, and thereupon, all of the rights of the Lessee under this Agreement and with respect to the Vehicles shall immediately terminate.

(b) In the event of such default and notice of termination to the Lessee, the Vehicles shall be immediately surrendered to Lessor, and, if they are not, Lessor may repossess the Vehicles. Lessor may, but shall not be obligated to, sell any of the Vehicles at public or private sale or sales without notice to the Lessee at such price and upon such terms as are commercially reasonable. The rental term for each of the Vehicles so surrendered or repossessed shall terminate in accordance with the other provisions of this Agreement. Lessor may retain all rents, payments, and resale proceeds received, including any refunds and other sums, if any, otherwise payable to the Lessee under this Agreement to the extent necessary to pay Lessor all rentals and other amounts owed to Lessor under any of the provisions of this Agreement or any other agreement between the Lessee and Lessor, together with costs and expenses, including attorneys' fees, incurred by Lessor in the enforcement of its rights and remedies under this or any other provision of this Agreement. In addition to all other rights or remedies hereunder, Lessor shall be entitled to recover from the Lessee all rentals and other amounts owed by the Lessee under this Agreement, whether arising before or after such default and termination. The limitation on the Lessee's obligation to pay a deficiency upon the sale of a Vehicle as set forth in Section 8(c) shall not apply to any sales that occur after such default and termination of this Agreement.

13. **Assignment by Lessor.**

Lessor may from time to time assign and/or grant a security interest in all or any part of its right, title, and interest in this Agreement, including all monies and claims for monies due and to become due to Lessor hereunder. The Lessee's obligation to pay such monies to the assignee and/or secured party, upon prior written notice to the Lessee by the assignee and/or secured party, shall be absolute and unconditional and shall not be subject to any claim, defense, or setoff whatsoever. The Lessee hereby agrees that it will not assert against any such assignee and/or secured party any claim, defense, or setoff it may have against Lessor or any other party, whether such claim, defense, or setoff shall have accrued or arisen before or after the Lessee shall have received such notice. This Agreement and any right, title, or interest of the Lessee created in the Vehicles shall be subject, and subordinate in all respects, to any and all security interests in the Vehicles heretofore or hereafter granted by Lessor to an assignee and/or secured party subject, however, to the Lessee's right of quiet enjoyment as set forth in Section 14 of this Agreement. Notwithstanding any such assignment, Lessor shall remain responsible to Lessee for all of its obligations hereunder, and Lessee retains the right to pursue Lessor to enforce any legal rights or remedies that it may have.

14. **Quiet Enjoyment.** Notwithstanding any other provisions of this Agreement, the Lessee may retain possession and quiet enjoyment of each of the Vehicles until the expiration of the lease term of the Vehicle as long as the Lessee (i) makes due and timely payment of all rentals and other amounts due under this Agreement to Lessor or to any party to whom Lessor may assign or grant a security interest in this Agreement or the Vehicles, and (ii) performs all of its other covenants and obligations under this Agreement.

15. **Financials.** Upon Lessor's written request, the Lessee shall provide Lessor with a copy of the Lessee's end-of-year balance sheet and related statements of income and retained earnings, consolidated with its subsidiaries, if any. The Lessee shall also provide Lessor with copies of such quarterly interim financial statements of the Lessee as Lessor may request.

16. **Audit.** Either party, upon prior written notice, may audit the books, records, data and documents, whether in written or electronic format, of the other party which relate directly to this Agreement.

17. **Regulations Affecting Leased Vehicles.** Federal law (and state law, if applicable) requires that the Lessee of a leased motor vehicle disclose the mileage of the Vehicle to Lessor in connection with the transfer of ownership of the Vehicle by Lessor. Failure to complete such disclosure or making a false statement in the disclosure may result in fines and/or imprisonment.

18. **Notices.** Any notice to be given hereunder by a party shall be in writing and delivered personally or by certified mail, postage prepaid, addressed to the respective addresses of the parties as set forth in the first paragraph of this Agreement. All notices and invoices issued to Lessee pursuant to this Agreement shall be sent to the attention of Ronn Jones, Distribution..

19. **Entire Agreement.** This Agreement and the Schedules made a part of this Agreement contain the entire agreement and understanding of the parties with respect to the subject matter hereof and supersede all prior oral or written agreements and understandings related thereto. Upon execution of this Agreement, all Vehicles ordered or leased pursuant to the Letter of Intent between the parties dated January 23, 1998 shall be subject to the terms and conditions of this Agreement.

20. **Waivers, Modifications, Severability.** No waiver or modification of any of the provisions of this Agreement shall be binding unless made in writing and signed by the parties hereto. Failure of either party at any time to require performance of any provision of this Agreement shall not affect the right at a later time to enforce the provision. In the event that any provision of this Agreement shall be held invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement.

21. **Binding Effect.** This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

22. **Headings.** The headings of the Sections of this Agreement are inserted for the convenience of reference only and shall not be deemed to constitute a part hereof.

23. **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Maryland. In the event that a claim is brought under this Agreement by Lessor, the claim shall be filed in a court of competent jurisdiction in Richmond, Virginia. In the event that a claim is brought under this Agreement by Lessee, the claim shall be filed in a court of competent jurisdiction in Baltimore, Maryland.

IN WITNESS WHEREOF, Lessor and the Lessee have caused this Agreement to be executed and delivered by their respective duly authorized officers as of the date first above written.

PHH VEHICLE MANAGEMENT  
SERVICES CORPORATION

By: _Michael P. Haurila_  
~~Vice President~~  
Assistant General Counsel + Assistant Sec.

CIRCUIT CITY STORES, INC.

By: _[signature]_  
Vice President  
Print Name: _Gary Mieneski_

***

## BUSINESS USE CERTIFICATION

To comply with the requirements of Section 7701(h)(2)(C) of the Internal Revenue Code of 1986, as amended from time to time, the Lessee makes the following certification and acknowledgment as a part of the foregoing Agreement.

1. The Lessee hereby certifies, under penalty of perjury, that the Lessee intends that more than 50 percent of the use of the Vehicles under the Agreement is to be in a trade or business of the Lessee;

2. The Lessee hereby acknowledges that in accordance with Section 1(e) of the Agreement it has been advised that it will not be treated as the owner of the Vehicles under the Agreement for federal income tax purposes.

IN WITNESS WHEREOF, the Lessee has caused this certification to be executed as of the date first above written.

By: _[signature]_  
Vice President

MVFL-OE/Rev.1/96  
ccity-op.doc (4/15/98) LD2 and LD3

-6-

**PHH**

## RENTAL RATE SUPPLEMENT TO

## AGREEMENT OF LEASE NO(S). 5491

SUPPLEMENT dated as of __December 21__, 2000, to Motor Vehicle Fleet Operating Lease Agreement No. __5491__, dated __January 23__, __1988__, (the "Agreement"), by and between D.L. PETERSON TRUST, ("Lessor") and CIRCUIT CITY STORES, INC. ("Lessee"). Unless the context requires otherwise, all capitalized terms used in this Supplement without definition shall have the respective meanings assigned to them in the Agreement.

The parties hereto agree as follows:

1. The Agreement is hereby amended by deleting the third sentence of Section 6(a) and replacing it with the following:

"Such rental rates shall include a percentage factor, known as the Depreciation Rent Factor, of 8.34%, 4.17%, 3.04%, 2.78%, 2.50%, 2.25%, 2.00%, 1.67%, 1.39%, 1.20% or 1.05% in the case of 12, 24, 33, 36, 40, 45, 50, 60, 72, 84 or 96 month Vehicles respectively."

2. Except as herein amended and supplemented, the Agreement and any other previously executed Supplements to it shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Supplement to be duly executed as of the date first above written.

CIRCUIT CITY STORES, INC.

By: _____
Vice President

Print Name: __Douglas R. Duease__


D.L. PETERSON TRUST

By: _____
Attorney-in-Fact


PHH VEHICLE MANAGEMENT SERVICES, LLC

By: _____
Vice President

Terms6/OLT 6/99



## TREASURY NOTE SUPPLEMENT

### LEASE NO.(S) 5491

THIS TREASURY NOTE SUPPLEMENT, dated as of _June 26_, 1998 ("this Supplement"), to Motor Vehicle Fleet Lease Agreement No. 5491, dated _June 26_, 1998 (the "Agreement"), by and between **PHH VEHICLE MANAGEMENT SERVICES CORPORATION** ("Lessor") and **CIRCUIT CITY STORES, INC.** ("the Lessee"). Unless the context requires otherwise, all capitalized terms used in this Supplement without definition shall have the respective meanings assigned to them in the Agreement.

The parties hereto agree as follows:

1. Rental charges for all Vehicles placed under the Agreement on or after the date of execution of this Supplement shall be determined by the use of rental rates based on an interest rate that is equal to the PHH Treasury Note Rate plus 50 basis points. The "PHH Treasury Note Rate" shall be the interest rate that is quoted in the Federal Reserve Statistical Release (H.15 Report) for two year treasury constant maturities on the 15th day of the month, or the first business day thereafter if the 15th day of the month falls on a non-business day. This rate shall apply to Vehicles delivered on or after the 16th day of the month through the 15th day of the following month. The rental rates established under this paragraph shall remain in effect for the duration of the rental term of the Vehicles.

2. Except as herein supplemented, the Agreement, and other previously executed supplements and amendments to it, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Supplement to be duly executed as of the date first above written.

PHH VEHICLE MANAGEMENT SERVICES CORPORATION

By: _Michael P. Aurilio_
~~Vice President~~
Assistant General Counsel & Assistant Sec.

CIRCUIT CITY STORES, INC.

By: _____
                Vice President
Print Name: _Gary Mierenfeld_

h:circytb/LD2

**PHH**

## AMENDMENT TO AGREEMENTS

AGREEMENT NO. 5491

THIS AMENDMENT TO AGREEMENTS, dated as of September 21, 2005 (this "Amendment"), to Motor Vehicle Fleet Open-End Operating Lease Agreement, Agreement No. 5491, dated January 23, 1998 ("Lease Agreement"), Treasury Note Supplement, Lease No. 5491, dated June 26, 1998 ("Treasury Note Supplement"), and Vehicle Expense Management Services Agreement, Agreement No. 5491, dated January 23, 1998 ("Services Agreement") (collectively the "Agreements") by and between PHH VEHICLE MANAGEMENT SERVICES, LLC, successor by merger to PHH Vehicle Management Services Corporation ("PHH") and CIRCUIT CITY STORES, INC. ("Client"). Unless the context requires otherwise, all capitalized terms used in this Amendment without definition shall have the respective meanings assigned to them in the Agreements.

The parties hereby agree as follows:

1. Section 6(c) of the *Lease Agreement*, Rental and Rent Term, shall be amended by deleting the amended subsection in its entirety and inserting the following in replacement thereof:

> "(c) The rental term for a Vehicle shall commence on the first (1st) calendar day of the month after the Vehicle is accepted by the Lessee's representative. Lessee agrees that from the date the Vehicle is accepted by the Lessee's representative until the beginning of the rental term, Lessee shall pay a fee equal to the monthly rental charge for such Vehicle pro-rated on a daily basis based on the actual number of days in the month. The rental term for a Vehicle shall end on the last calendar day of the month preceding the month in which the Vehicle is sold and final settlement for the Vehicle is made pursuant to Section 8 if such sale and settlement occur on or before the fifteenth (15th) calendar day of the month, or on the last calendar day of the month in which the sale and settlement occur if such sale and settlement occur after the fifteenth (15th) calendar day of the month. Notwithstanding the foregoing, the rental term for a Vehicle surrendered, for which a replacement Vehicle ("Replacement Vehicle") is accepted, shall end on the last calendar day of the month preceding the month in which the Replacement Vehicle rental commences pursuant to this Section 6(c)."

These terms shall apply to all new Vehicle orders placed on or after October 1, 2005.

2. The second sentence of Paragraph 1. of the *Treasury Note Supplement* shall be deleted in it's entirety and replaced with the following:

> "The "PHH Treasury Note Rate" shall be the interest rate that is quoted in the Federal Reserve Statistical Release (H.15 Report) for three year treasury constant maturities on the 15th day of the month of the preceding month, or the first business day thereafter if the 15th day of the month of the preceding month falls on a non-business day."

These terms shall apply to all new Vehicle orders placed on or after October 1, 2005.

3. The *Services Agreement* shall be amended by adding Fleet Administrative Services as follows:

### ARTICLE 9A
### FLEET ADMINISTRATIVE SERVICES

9A.1   Under this program, PHH will provide the following services:

**Response Center.** PHH shall make available to Client and Drivers a toll free number for accessing a PHH Driver Consultant to answer questions and respond to inquiries pertaining to Vehicles. The use of this toll free number will also enable Client to gain access to PHH specialists with respect to the other services provided by PHH as indicated in this Agreement.

**Resource Center.** PHH shall facilitate Client's placement of Vehicle orders by assisting Client with the preparation, generation and mailing of Vehicle selectors packages. PHH will follow-up with respect to outstanding selectors to ensure their return and, upon receipt, process all returned selectors. PHH will also assist Client in the management of unassigned Vehicles, communication of driver change notices, and in carrying out bulk mailings such as those for handbooks and insurance cards.

**Driver Handbooks.** PHH shall assist Client in developing a comprehensive policy and creating a glove compartment size, quick response handbook that provides Drivers with answers and guidelines for questions that arise on the road at a cost of $N/A per handbook.

9A.2   **Client's Responsibilities.**   Client shall provide whatever reasonable and mutually agreed-upon cooperation PHH deems necessary to enable PHH to perform its obligations under this Agreement.

Following the date of the execution of this Amendment, these terms shall apply to all existing Vehicles and any new orders.

4.   The following fee shall be added to Schedule A of the *Services Agreement*:

"Fleet Administrative Services            $2.50 per Vehicle per month"

Following the date of the execution of this Amendment, this fee shall apply to all existing Vehicles and any new orders.

5.   Except as amended by this Amendment, the Agreements shall remain in full force and effect as originally executed and subsequently amended.

IN WITNESS WHEREOF, PHH and Client have caused this Amendment to be executed as of the date first above written.

PHH VEHICLE MANAGEMENT SERVICES, LLC

By: _____
    Senior Vice President

CIRCUIT CITY STORES, INC.

By: _____
Title: _____
Print Name: DAVID S_____

S:\LEGAL\CONTRACT AMENDMENTS\amendment to agreements.circuit city.cac revisions.9.15.05.doc (cac) kl3

-3-