# Exhibit 3

EQUIPMENT LEASE

Dated as of

April 19, 1999

Between

PHH Vehicle Management Services Corporation

(Lessor)

and

Circuit City Stores, Inc.

(Lessee)

## TABLE OF CONTENTS

PARAGRAPH                                                                                    Page

| | | |
|---|---|---|
| 1. | Lease of Equipment | 1 |
| 2. | Lease Term and Rent | 1 |
| 3. | Delivery and Acceptance | 1 |
| 4. | Net Lease; No Offset | 1 |
| 5. | Disclaimer of Warranties | 2 |
| 6. | Use, Maintenance, Inspection and Return of Equipment | 2 |
| 7. | Title to and Location of Equipment | 2 |
| 8. | Expenses and Taxes; Payment and Indemnification by Lessee | 2 |
| 9. | Liens and Encumbrances | 3 |
| 10. | Loss, Damage or Destruction | 3 |
| 11. | Insurance | 3 |
| 12. | Events of Default | 3 |
| 13. | Remedies of Lessor | 4 |
| 14. | Further Assurances | 4 |
| 15. | Sublease, Assignment, and Quiet Enjoyment | 4 |
| 16. | This Lease Agreement as a Lease | 5 |
| 17. | Notices | 5 |
| 18. | Business Holidays and Late Charges | 5 |
| 19. | Income Tax Indemnification | 5 |
| 20. | Foreign Tax Indemnity | 6 |
| 21. | Lessee's Purchase Option | 6 |
| 22. | Lessee's Renewal Option | 7 |
| 23. | Term & Termination | 8 |
| 24. | Early Termination | 8 |
| 25. | Lessee's Representations and Warranties | 8 |
| 26. | Counterparts | 9 |
| 27. | Miscellaneous | 9 |

EXHIBIT A - LEASE SCHEDULE

EXHIBIT B - DELIVERY AND ACCEPTANCE ACKNOWLEDGMENT

EXHIBIT C - SCHEDULE OF STIPULATED LOSS VALUES

EXHIBIT D - TERMINAL RENTAL ADJUSTMENT RIDER

EXHIBIT E - TURN-IN PROVISIONS

## EQUIPMENT LEASE

This Equipment Lease (herein called "this Lease Agreement") is entered into by and between PHH Vehicle Management Services Corporation, a Maryland corporation having its principal place of business at 307 International Circle, Hunt Valley, Maryland 21030-1337 (hereinafter called "Lessor"), and Circuit City Stores, Inc., (hereinafter called "Lessee"), a Virginia corporation with its principal place of business at 9950 Mayland Drive, Richmond, Virginia 23233-1464.

1. **Lease of Equipment**. Lessor hereby agrees to lease to Lessee, and Lessee hereby agrees to lease from Lessor, the equipment and other personal property (herein, together with all repairs, replacements, substitutions, additions, accessions, and accessories therefor and/or affixed thereto, collectively called the "Equipment" or individually called an "Item of Equipment") described in each Lease Schedule (individually called a "Schedule" and collectively called "Schedules") now or hereafter executed by Lessor and Lessee and incorporated herein by reference and made a part hereof, the form of which is attached hereto as Exhibit A, all upon the terms and conditions set forth below, as supplemented by the terms and conditions set forth in the applicable Schedule for such Equipment and in any Rider, duly executed by the parties, relating hereto or thereto. To the extent of any inconsistencies between the provisions of this Lease Agreement and any Schedule, the provisions of this Lease Agreement shall control.

2. **Lease Term and Rent**. The Lease Term of each Item of Equipment shall consist of a Basic Lease Term, and may consist of an Interim Lease Term, as specified on the Schedule therefor. For the purposes of this Lease Agreement, Basic Lease Term shall be defined as the time between the Basic Lease Term Commencement Date, as further defined below, through the date Lessee returns the Item of Equipment to Lessor in accordance with the applicable Schedule A and the return provisions of this Lease Agreement or exercises either the option to purchase the Item of Equipment pursuant to Section 21, Lessee's Purchase Option, of this Lease Agreement or the option to renew the Lease Term pursuant to Section 22, Lessee's Renewal Option, of this Lease Agreement. Basic Lease Term Commencement Date shall be defined as the first day of the month following delivery at Lessee's designated location and acceptance (as further defined below) of that Item of Equipment by Lessee. Interim Lease Term shall be defined as the time between the date of Equipment delivery and acceptance up to but excluding the Basic Lease Commencement Date. Lease Term shall be defined as the combination of any Interim Lease Term and Basic Lease Term of an Item of Equipment. The rent for each Item of Equipment described in each Schedule shall be due and payable at the times and in the amounts specified therein, and such amounts shall be specified therein as a percentage of Lessor's total cost of such Item of Equipment (herein called the "Acquisition Cost"). All rent shall be payable, without notice or demand, at the office of Lessor or at such other place as Lessor or its assigns shall designate in writing.

3. **Delivery and Acceptance**. Lessee will select the type, quantity and supplier of each Item of Equipment. Invoices for the purchase of Equipment shall be directed to Lessor, and Lessor shall pay when due all such invoices. Lessor shall not be liable to Lessee for any failure or delay in obtaining delivery of any Equipment. Upon delivery of any Equipment to Lessee at Lessee's location specified in the applicable Schedule, Lessee will forthwith inspect such Equipment to the extent that Lessee is reasonably able and, unless Lessee gives Lessor prompt written notice of any defect in or other proper objection to the Equipment, Lessee shall execute and deliver to Lessor a written acknowledgment of delivery and acceptance covering such Equipment, in the form of the "Delivery and Acceptance Acknowledgment" attached hereto as Exhibit B ("Delivery and Acceptance"). Lessee's execution of a Delivery and Acceptance Acknowledgment covering any Equipment shall conclusively establish, as between Lessor and Lessee, that such Equipment has been accepted by Lessee for all purposes of this Lease Agreement.

4. **Net Lease; No Offset**. THIS LEASE AGREEMENT IS A NET LEASE, AND ALL RENT AND ALL OTHER SUMS PAYABLE BY LESSEE HEREUNDER SHALL BE PAID UNCONDITIONALLY WHEN DUE, WITHOUT ABATEMENT, DEDUCTION, COUNTERCLAIM OR SETOFF OF ANY NATURE, INCLUDING ANY THEREOF ARISING OUT OF ANY PRESENT OR FUTURE CLAIM LESSEE MAY HAVE AGAINST LESSOR, OR ANY BENEFICIARY OR ASSIGNEE OF LESSOR, OR THE MANUFACTURER OR SUPPLIER OF THE EQUIPMENT. Notwithstanding the foregoing, Lessee waives no rights or claims Lessee may have or assert against Lessor, including without limitation, claims or rights relative to any rent or other payments hereunder. In

1

no event, unless caused by PHH's sole negligence or willful misconduct or except as otherwise expressly provided, shall this Lease Agreement terminate or shall any of Lessee's obligations be affected by reason of any defect in or damage to or loss or destruction of all or any part of the Equipment, from any cause whatsoever, or any interference with Lessee's use of the Equipment by any person or any other cause whatsoever.

5. <u>Disclaimer of Warranties</u>. LESSOR, NOT BEING THE MANUFACTURER OR THE VENDOR OF THE EQUIPMENT, HEREBY MAKES NO EXPRESS OR IMPLIED REPRESENTATION OF WARRANTY OF ANY KIND OR AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PURPOSE, ITS CAPACITY OR DURABILITY, THE QUALITY OF THE MATERIAL OR WORKMANSHIP, CONFORMITY OF THE EQUIPMENT TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER RELATING THERETO, OR ANY PATENT INFRINGEMENT OR PATENT OR LATENT DEFECTS, AND LESSEE HEREBY ACKNOWLEDGES THE FOREGOING DISCLAIMER BY LESSOR. Lessor hereby agrees to assign to Lessee the benefit of any and all manufacturers' warranties relating to the Equipment and to assist Lessee with respect to any claims Lessee may assert under such warranties.

6. <u>Use, Maintenance, Inspection and Return of Equipment</u>. Lessee agrees that the Equipment will be used in compliance with all statutes, laws, ordinances, regulations, and Lessee's insurance policy conditions. Lessee, at its own cost and expense, will keep, maintain and preserve the Equipment in as good order and condition as when delivered to Lessee hereunder, ordinary wear and tear from proper use thereof only excepted, including causing any Equipment which has been damaged, but not irreparably, to be promptly repaired and placed in such order and condition. Without Lessor's prior written consent, which will not be unreasonably withheld or delayed, Lessee shall make no addition, improvement or modification to any Equipment which will impair the originally intended function or use of the Equipment. All nonseverable additions, attachments, accessories and repairs to the Equipment shall become a part thereof and the property of Lessor. Additions, attachments and accessories to the Equipment which are owned by Lessee and easily removable from the Equipment without damage or otherwise affecting the value of the Equipment may be removed and retained by Lessee at any time and shall be and remain the property of Lessee. Upon Lessor's request and upon reasonable notice to Lessee, Lessee will permit Lessor to have access to the Equipment at all reasonable times for the purpose of inspection and examination. Upon the expiration or termination of the Lease Term of each Item of Equipment (except for any Equipment purchased by Lessee pursuant to any purchase option), Lessee, at its own expense, will return the Equipment to Lessor to the location specified on the Schedule therefor, and in the condition required by this Section 6.

7. <u>Title to and Location of Equipment</u>. All Items of Equipment shall at all times be and remain personal property notwithstanding that any such Equipment may now or hereafter be affixed to realty, and title thereto shall at all times during the Lease Term thereof remain in Lessor. The Equipment shall be delivered to the location specified in the Schedule therefor, and shall not thereafter be removed from such location without Lessor's written consent. On Lessor's request, Lessee agrees, at its cost and expense, to affix and maintain a tag or plate to each Item of Equipment showing Lessor's title thereto; provided, however, that the tag or plate may be readily removed without damaging or otherwise affecting the value of the Equipment upon the purchase, if any, by Lessee of the Equipment at the termination of the Lease Term. Under no circumstances shall the Equipment be physically located outside the United States.

8. <u>Expenses and Taxes; Payment and Indemnification by Lessee</u>. Lessee will pay when due and will indemnify and hold Lessor, its beneficiaries and its assigns harmless from and against (a) any and all liabilities, losses, damages, claims and expenses, including legal expenses, of every kind and nature whatsoever, in any way arising out of the manufacture, ordering, purchase, shipment, delivery, acceptance or rejection, ownership, titling, registration, leasing, possession, use, operation, removal, return or other disposition of the Equipment, including without limitation any of such as may arise from patent or latent defects in the Equipment (whether or not discoverable by Lessee), any claims based on absolute or strict tort liability and any claims based on patent, trademark or copyright infringement, except to the extent attributable to PHH's negligence or willful misconduct, (b) any and all taxes, qualification fees and other fees and charges of any nature (together with any interest or penalties thereon), imposed against Lessor or Lessee by any governmental authority with respect to the Equipment or upon the manufacture, ordering, purchase, shipment, delivery, acceptance, ownership, titling, registration, leasing, possession, use, operation, removal, return or other disposition thereof or upon the rents,

2

receipts or earnings arising therefrom or upon or with respect to this Lease Agreement, excepting only federal and state taxes on or measured by the net income of Lessor, its beneficiaries and assigns, and (c) all Uniform Commercial Code and other applicable filing and recording fees, and lien searches which are necessitated by Lessee's delays or actions resulting in Lessor's inability to perfect a purchase money security interest in an Item of Equipment, with respect to this Lease Agreement or any Equipment. Lessee shall forthwith upon demand reimburse Lessor, its beneficiaries and assigns for amounts expended in connection with any of the foregoing or pay such amounts directly. In the event any report or return is required to be made with respect to any obligation of Lessee under this Section 8, if Lessee may or is required to make such report or return in its name it will do so promptly and send a copy of such report or return to Lessor, or if Lessor is required to make such report or return, Lessee will promptly furnish to Lessor such data and information in such form as will enable Lessor to make and file such report or return as expeditiously as reasonably possible. Lessee's obligations under this Section 8 shall survive the expiration of or earlier termination of this Lease Agreement and the Lease Term of all Equipment.

9. <u>Liens and Encumbrances</u>. Lessee will not directly or indirectly create or permit to exist, and will promptly and at its own expense discharge, any lien, charge or encumbrance on the Equipment, except for any lien, charge or encumbrance resulting solely from the acts of the Lessor.

10. <u>Loss, Damage or Destruction</u>. Upon delivery to Lessee of any Item of Equipment and until the return to Lessor of any such Item of Equipment in accordance with Paragraph 6, <u>Use, Maintenance, Inspection and Return of Equipment</u>, of this Lease Agreement, ("Period of Possession"), Lessee shall bear all risks of loss, damage, theft, or destruction of any Item of Equipment. If, during such Period of Possession, any Item of Equipment becomes lost, stolen, destroyed, irreparably damaged, confiscated, requisitioned or commandeered (herein called an "Event of Loss"), Lessee shall promptly notify Lessor thereof in writing and shall, on the rent payment date next following the date on which such Event of Loss has occurred, pay Lessor an amount equal to the Stipulated Loss Value (determined in accordance with the Schedule of Stipulated Loss Values, the form of which is attached hereto as Exhibit C) of such Item of Equipment, plus all unpaid periodic rents owing for such Equipment through such rent payment date, plus any amounts (other than such periodic rent) then payable by Lessee hereunder with respect to such Item of Equipment and, upon such payment, the Lease Term for such Item of Equipment will terminate and Lessor will transfer to Lessee, without recourse or warranty, all of Lessor's right, title and interest in and to such Equipment.

11. <u>Insurance</u>. Lessee will maintain, at its sole expense, at all times during the Lease Term of the Equipment (a) insurance against all risks of physical loss or damage to the Equipment (including theft and collision for any Equipment consisting of motor vehicles) in an amount not less than the Stipulated Loss Value of the Equipment, such insurance coverage to contain a commercially reasonable deductible as determined in Lessee's sole discretion and (b) commercial general liability insurance in the amount specified in the Schedule for such Equipment. Such insurance policy or policies shall (i) name Lessor the first loss payee, with respect to property damage insurance, and as an additional insured with respect to commercial general liability insurance, (ii) provide that they may be or cancelled only after thirty (30) days prior written notice to Lessor, and (iii) contain such other provisions as agreed to in writing by the parties. Lessee will furnish to Lessor certificates of insurance evidencing such coverage but Lessor shall be under no duty to ascertain the existence of such coverage or to advise Lessee in the event such coverage does not comply with the requirements hereof. Lessee may self insure for collision and comprehensive insurance coverage.

12. <u>Events of Default</u>. Lessee shall be in default under this Lease Agreement upon the happening of any of the following events or conditions (herein called "Events of Default"): (a) Lessee shall fail to make any payment of rent or any other payment hereunder within fifteen (15) days after written notice from Lessor that the same is due and payable; (b) Lessee shall be in default in the payment or performance of any other indebtedness or obligation now or hereafter owed by Lessee to Lessor under any other agreement or instrument and such default continues for fifteen (15) days after notice thereof by Lessor to Lessee; (c) Lessee shall fail to perform or observe any other covenant or obligation to be performed or observed by it under this Lease Agreement, and such failure shall continue for fifteen (15) days after written notice thereof by Lessor to Lessee; (d) any representation, warranty, certification or statement made or furnished to Lessor herein or in any other document by or on behalf of Lessee proves to have been false in any material respect when made or furnished; (e) Lessee (or any guarantor of Lessee's obligations hereunder) shall make an assignment for the benefit of creditors, or bankruptcy, arrangement, reorganization, liquidation, insolvency, receivership or dissolution proceedings shall be

3

instituted by or against Lessee (or any such guarantor), and, if instituted against Lessee (or any such guarantor), shall be consented to or be pending and not dismissed for a period of thirty (30) days; or (f) the financial condition of Lessee's affairs shall change so as in the reasonable opinion of Lessor to substantially impair Lessor's title to the Equipment or substantially increase Lessor's credit risk.

13. Remedies of Lessor. Upon the occurrence of any Event of Default, and at any time thereafter so long as the same shall be continuing and shall not have been remedied, Lessor may, at its option, declare this Lease Agreement to be in default and, at any time thereafter, may exercise one or more of the following remedies, as Lessor in its sole discretion shall elect: (a) terminate this Lease Agreement as to any and all Equipment upon written notice to Lessee, without prejudice to any other remedies hereunder; (b) cause Lessee, at its expense, to promptly assemble the Equipment and return it to Lessor at the location specified in the Schedule therefor; (c) peaceably enter upon the premises where any Equipment is located and, upon written notice to Lessee, and with or without legal process, take immediate possession of such Equipment without liability to Lessor by reason of such entry or taking possession, and without such action constituting a termination of this Lease Agreement unless Lessor notifies Lessee in writing to such effect; (d) sell or re-lease the Equipment in a public or private sale or lease transaction, and become the purchaser at any such sale, and (e) proceed by appropriate action either at law or in equity to enforce performance by Lessee of the applicable covenants of this Lease Agreement or to recover damages for the breach thereof. Lessor shall also be entitled to recover as damages an amount equal to the sum of the following amounts: (i) all unpaid rents owing for each item of Equipment through the last day of the month in which Lessee pays Lessor the Stipulated Loss Value thereof; (ii) any reasonable expenses paid or incurred by Lessor in connection with the repossession, attempted repossession, holding, repair, and subsequent sale, re-lease or other disposition of any Equipment, including commissions and attorneys' fees; (iii) an amount equal to the excess, if any, of the Stipulated-Loss Value of any Equipment sold, re-leased or otherwise disposed of by Lessor, computed as of the last day of the month in which such sale, re-leasing or other disposition occurs, over the proceeds received by Lessor from such sale, re-leasing or other disposition; (iv) an amount equal to the Stipulated Loss Value of any Equipment, computed as aforesaid, which Lessee fails to return to Lessor or converts or destroys, or which Lessor is unable to repossess; plus (v) all other amounts then payable by Lessee to Lessor hereunder, including, without limitation, amounts owing for indemnification. None of Lessor's remedies under this Lease Agreement are intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to herein or otherwise available to Lessor in law or in equity. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW LESSEE WAIVES ANY AND ALL RIGHTS TO NOTICE AND TO A JUDICIAL HEARING WITH RESPECT TO THE REPOSSESSION OF THE EQUIPMENT BY LESSOR IN THE EVENT OF A DEFAULT HEREUNDER BY LESSEE.

14. Further Assurances. Lessee will promptly execute and deliver to Lessor such further documents and assurances and take such further action as Lessor may from time to time reasonably request in order more effectively to carry out the purpose of this Lease Agreement and to protect the rights and remedies of Lessor hereunder, including, without limitation, the execution and delivery of financing statements under the Uniform Commercial Code. Upon request, Lessor shall provide Lessee with copies of any and all Uniform Commercial Code financing statements and related documents made, filed or executed by Lessor pursuant to any documents delivered by Lessee in accordance with this paragraph 14.

15. Sublease, Assignment and Quiet Enjoyment. Without Lessor's prior written consent, Lessee will not assign any of Lessee's rights hereunder or sublet or transfer the Equipment, except that, upon prior written notice to Lessor, Lessee may authorize the delivery of Equipment to Lessee's subsidiaries or majority-owned affiliates. Lessor may, at any time, with or without notice to Lessee, mortgage, grant a security interest in or otherwise transfer, sell or assign this Lease Agreement or any Equipment or any rent or other sums due or to become due hereunder, and in such event, Lessor's mortgagee, transferee or assignee shall have and may exercise all of Lessor's rights and remedies hereunder. No such mortgagee, transferee or assignee shall be obligated to perform any duty or covenant required to be performed by Lessor (Lessor remaining liable therefor) except that so long as no Event of Default has occurred and is continuing Lessee shall be entitled to the quiet enjoyment of the Equipment and any such mortgage, transfer or assignment shall be subject to Lessee's rights and options, if any, hereunder. Lessee agrees that upon written notice from any assignee to Lessee, Lessee will accept and comply with the reasonable directions and demands of Lessor's assignee. THE RIGHTS OF ANY SUCH ASSIGNEE SHALL NOT BE SUBJECT TO ANY DEFENSE, COUNTERCLAIM OR SET-OFF THAT LESSEE MAY HAVE AGAINST LESSOR OR ANY BENEFICIARY THEREOF. Notwithstanding the foregoing, an

4

assignment by Lessor under this provision shall not release Lessor from its obligations to service and administer this Lease Agreement and shall not preclude Lessee from enforcing its rights hereunder against Lessor.

16. <u>This Lease Agreement as a Lease</u>. Lessor and Lessee hereby agree that this Lease Agreement is a lease, that Lessor is the owner of the Equipment and that the relationship between Lessor and Lessee shall always be only that of lessor and lessee.

17. <u>Notices</u>. All notices required hereunder shall be in writing and dispatched by prepaid registered or certified United States mail, return receipt requested, or via any national overnight mail service, and shall be deemed to have been given five (5) days after mailing or upon delivery, whichever is earlier. Notices shall be addressed to Lessor or Lessee, as the case may be, at their respective addresses as set forth below or to such other address as either of them shall from time to time designate in writing to the other:

| In the case of Lessee: | With a required copy to: |
|---|---|
| Circuit City Stores, Inc.<br>9950 Mayland Drive<br>Richmond, VA 23233-1464<br>Attn: Manager, Fleet Services | Circuit City Stores, Inc.<br>9950 Mayland Drive<br>Richmond, VA 23233-1464<br>Attn: Legal Dept. |
| In the case of Lessor: | With a required copy to: |
| PHH Vehicle Management Services Corporation<br>Mail Code CT<br>307 International Circle<br>Hunt Valley, Maryland 21030-1337<br>Attn: Manager, Financial Services | PHH Vehicle Management Services Corporation<br>Mail Code CP<br>307 International Circle<br>Hunt Valley, Maryland 21030-1337.<br>Attn: General Counsel |

18. <u>Business Holidays and Late Charges</u>. If the rent or other sum payable under this Lease Agreement shall become due on a date which is not a business day, such sum shall be payable on the next preceding business day. If Lessee fails to pay any rent or other sum under this Lease Agreement when the same becomes due, Lessee shall pay interest on such delinquent payment from the due date until paid (without regard to any grace period) at the lower of 1.0% per month or the maximum rate of interest permitted by law.

19. <u>Income Tax Indemnification</u>. Lessee represents that each item of Equipment constitutes depreciable property which, for federal income tax purposes, has the class life specified in the Lease Schedule. Lessee further agrees that Lessor shall, except to the extent attributable to Lessor's own negligence or willful misconduct (including, without limitation, errors or omissions in the preparation of or calculations used in tax forms, tax returns and other related tax documents), be entitled to (i) all federal, state and local income tax cost recovery or depreciation deductions provided for by the Code with respect to the Acquisition Cost of the Equipment as new equipment (said cost recovery or depreciation deductions being herein called the "Tax Benefits"); and (ii) an indemnity for the realization of taxable income as a result of any payment by Lessee of the costs of, or the making by Lessee of any nonseverable improvements, modifications, or additions to, the Equipment ("Income Realization"). If as a result of (i) any act or omission of Lessee, (ii) the inaccuracy of any representation or the breach of any covenant of Lessee, (iii) any change in federal tax law with an effective date that precedes the date of acceptance of the Equipment for lease by the Lessee or any other change in federal and/or state income tax law, including subsequent changes in corporate income tax rates, regulations or administrative interpretations thereof, (iv) any Event of Default by Lessee under the Lease Agreement, (v) any use of the Equipment by any government, foreign person or tax-exempt entity deriving such use, directly or remotely, from or through the Lessee, or (vi) any transfer by the Lessee of any of the Equipment, Lessor shall lose or lose the right to claim, or there shall be disallowed or recaptured, all or any portion of the Tax Benefits (herein called a "Tax Loss"), or if Lessor suffers any Income Realization, then thirty (30) days after written notice to Lessee by Lessor that any Tax Loss or Income Realization has occurred, Lessee shall pay Lessor, as an additional rental payment, a lump sum amount which, after deduction of all taxes required to be paid by Lessor with respect to the receipt of such amount, will provide Lessor with the same after-tax economic return that Lessor would have realized if such Tax

5

Loss or Income Realization had not occurred, including any interest and penalties payable by Lessor attributable to such Tax Loss or Income Realization. A Tax Loss or Income Realization shall conclusively be deemed to have occurred if (a) a deficiency shall have been proposed by the Internal Revenue Service or other taxing authority having jurisdiction, and (b) tax counsel for Lessor acceptable to Lessee has rendered an opinion to Lessor that no reasonable basis in law or fact exists for contesting that such Tax Loss or Income Realization has so occurred. Lessor hereby agrees to exercise in good faith its best efforts to avoid requiring Lessee to pay such indemnity; provided, however, that if such tax counsel's opinion is that no such reasonable basis exists for contesting, then Lessor shall have the sole discretion to determine whether or not to undertake judicial or administrative proceedings beyond the level of a federal or state auditing agent and that, if such tax counsel's opinion is that a reasonable basis does exist, the Lessor will be deemed to have used its best efforts to avoid requiring Lessee to pay such indemnity only if Lessor agrees to contest such tax matter, absent which no indemnity will be due from Lessee; and provided, further, that Lessor shall not be required to take any action pursuant to this sentence unless or until Lessee shall have agreed to indemnify Lessor for any liability or loss that Lessor may incur as a result of contesting such Tax Loss and shall have agreed to pay Lessor on demand all costs and expenses, including attorneys' fees, that Lessor may incur in contesting such Tax Loss and provided, further, that, in the event of such judicial or administrative proceedings, Lessee shall not be obligated to pay to Lessor the Tax Indemnity until issuance of a final court decree in resolution of such proceedings. Any written notice that any Tax Loss has occurred pursuant to this Paragraph 19 shall be accompanied by a written statement describing in reasonable detail such Tax Loss and the computation of the amounts payable. As used in this Section 19 and in Section 20 hereof, the term "Lessor" shall include any successor of Lessor and any member of an affiliated group of which Lessor is, or may become, a member if consolidated, joint or combined returns are filed for such affiliated group for federal, state or local income tax purposes. The foregoing indemnity shall continue in full force and effect notwithstanding the expiration or termination of the Lease Agreement or of the Lease Term of the Equipment. Notwithstanding anything to the contrary, this provision applies to this Lease Agreement only as it relates to Equipment depreciation and to no other matter whatsoever.

20. Foreign Tax Indemnity. If, as a result of the breach of Lessee's covenant not to remove the Equipment from the United States, any item of income or deduction with respect to the Equipment shall not be treated as derived from, or allocable to, sources within the United States for a given taxable year (any such event hereinafter referred to as a "Foreign Loss"), then in addition to all such other remedies as Lessor may have for the breach of such covenant, the Lessee shall pay to Lessor as an indemnity, on the next succeeding rent payment date after written notice to the Lessee, such amount which, after deduction of all taxes required to be paid by the Lessor in respect of the receipt of such amount under the laws of any federal, state or local government or taxing authority of the United States, shall equal the sum of: (1) the excess of (x) the foreign tax credits that the Lessor would have been entitled to for such year had no such Foreign Loss occurred over (y) the foreign tax credit to which the Lessor was limited as a result of such Foreign Loss and (2) the amount of any interest, penalties or additions to tax payable as a result of such Foreign Loss.

21. Lessee's Purchase Option.

a. Lessee shall have the agreed upon purchase option with respect to any item of Equipment as described in such item of Equipment's Schedule or in any proposal, Annual Determination, Rider or other agreement duly executed by the parties. In the absence of such agreed upon purchase option, Lessee's purchase option shall be in accordance with Section 21(b) below.

b. Provided that the Lease Term of the Equipment has not been terminated and that no Event of Default under the Lease Agreement has occurred and is continuing, Lessee shall have the option to purchase all (or, with Lessor's consent, a portion) of the Equipment at the end of the respective Lease Terms thereof for an amount (the "Purchase Option Price") payable in immediately available funds, equal to the then fair market value (as hereinafter determined) of the Equipment, plus an amount equal to all sales or excise taxes on or measured by the sale of the Equipment to Lessee, and provided further that Lessee shall have notified Lessor in writing of Lessee's intention to exercise such option not more than one hundred eighty (180) nor less than ninety (90) days prior to the expiration of the Lease Term of the Item(s) of the Equipment whose Lease Term first expires. If the fair market value of the Equipment shall not have been determined as hereinafter set forth prior to the expiration date of the Lease Term of each Item of the Equipment, or if the Purchase Option Price of the Equipment has not been paid to Lessor when due as aforesaid, Lessee shall continue to pay the rent for the Equipment for each full

6

month as specified in the Schedule therefor, until the earlier to occur of the date on which the Equipment has been returned to Lessor by Lessee pursuant to Section 6 of the Lease Agreement or until Lessor has received payment of the Purchase Option Price of the Equipment from Lessee. Lessor's sale of the Equipment to Lessee shall be on an AS-IS, WHERE-IS basis without recourse to, or warranty by, Lessor. The fair market value of the Equipment shall be determined on the basis of, and shall be equal in amount to the value that would be obtained in, an arm's-length transaction between an informed and willing buyer-user (other than a lessee currently in possession and a used equipment dealer) and an informed and willing seller under no compulsion to sell and, In such determination, costs of removal from the location of current use shall not be a deduction from such value. If during or after the period of thirty (30) days from Lessor's receipt of the aforesaid written notice from Lessee of Lessee's intention to exercise said purchase option, Lessor and Lessee determine that they cannot agree upon such fair market value, then such value shall be determined in accordance with the foregoing definition by a qualified independent appraiser as selected by mutual agreement between Lessor and Lessee or, failing such agreement, by a panel of three independent appraisers, one of whom shall be selected by Lessor, the second by Lessee and the third designated by the first two selected. If any party refuses or fails to appoint an appraiser or a third appraiser cannot be agreed upon by the two other appraisers, such appraiser or appraisers shall be selected in accordance with the rules for commercial arbitration of the American Arbitration Association. The appraisers shall be instructed to make such determination within a period of twenty (20) days following appointment, and shall promptly communicate such determination in writing to Lessor and Lessee. The determination of fair market value so made by the sole appraiser or by a majority of the appraisers, if there is more than one, shall be conclusively binding upon both Lessor and Lessee. All appraisal costs, fees and expenses shall be paid by Lessee.

22. Lessee's Renewal Option.

a. Lessee shall have the agreed upon renewal option with respect to any Item of Equipment as described in such Item of Equipment's Schedule or in any proposal, Annual Determination, Rider or other agreement duly executed by the parties. In the absence of such agreed upon renewal option, Lessee's renewal option shall be in accordance with Section 22(b) below.

b. In addition to any options described in any proposal, Schedule, Rider, Annual Determination or agreement duly executed by the parties, Lessee shall have the option to renew the Lease Term of all (or, with Lessor's consent, a portion) of the Equipment, at the end of the respective original Lease Terms thereof, provided that no Event of Default has occurred and is continuing hereunder and provided further that Lessee shall have notified Lessor in writing of Lessee's intention to exercise such option not more than one hundred eighty (180) nor less than ninety (90) days prior to the expiration of the original Lease Term of the item or items of the Equipment whose original Lease Term first expires. The renewal of the Equipment shall be upon the same terms, covenants and conditions set forth in the Lease Agreement, provided that (i) the renewal term shall be for a term of one year, unless the parties shall agree to a longer term or the renewal term shall be terminated in accordance with the provisions of the Lease Agreement, (ii) upon the expiration of the renewal term Lessee shall either return all of the Equipment to Lessor in the condition specified in Section 6 of the Lease Agreement or purchase all of the Equipment from Lessor upon and subject to the terms, conditions and provisions of Section 21, and (iii) the rent payable by the Lessee during each rental period of the renewal term shall be an amount equal to the then fair rental value of the Equipment for such renewal term, as hereinafter determined. The fair rental value of any Equipment shall be determined on the basis of, and shall be equal in amount to the value that would be obtained in, an arm's length transaction between an informed and willing lessee (other than a lessee currently in possession and a used equipment dealer) and an informed and willing lessor under no compulsion to lease and, in such determination, costs of removal from the location of current use shall not be a deduction from such value. If during or after the period of thirty (30) days from Lessor's receipt of the aforesaid written notice from Lessee of Lessee's intention to exercise said renewal option, Lessor and Lessee determine that they cannot agree upon such fair rental value, then such value shall be determined in accordance with the foregoing definition by a qualified independent appraiser as selected by mutual agreement between Lessor and Lessee or, failing such agreement, by a panel of three independent appraisers, one of whom shall be selected by Lessor, the second by Lessee and the third designated by the first two selected. If any party refuses or fails to appoint an appraiser or a third appraiser cannot be agreed upon by the other two appraisers, such appraiser or appraisers shall be selected in accordance with the rules for commercial arbitration of the American Arbitration Association. The appraisers shall be instructed to make such determination within a period twenty (20) days following appointment, and shall

7

promptly communicate such determination in writing to Lessor and Lessee. The determination of fair rental value so made by the sole appraiser or by a majority of appraisers, if there is more than one, shall be conclusively binding upon both Lessor and Lessee. All appraisal costs, fees and expenses shall be paid by Lessee.

23. <u>Term and Termination</u>. This Lease Agreement shall commence as of the date first written above and shall continue thereafter until terminated pursuant to Section 12, <u>Events of Default</u>, of this Lease Agreement. Notwithstanding the foregoing, either party may terminate this Agreement, at any time pursuant to this Section 23, by providing the other party with at least thirty (30) days' prior written notice; provided, however, that this Agreement shall continue in full force and effect with respect to all and unpaid fees and expenses incurred by Lessee hereunder.

24. <u>Early Termination</u>. Providing there is no event of default, the Lessee may terminate a Lease Term with respect to any Item of Equipment (a) during the first twelve (12) months of the Lease Term by returning the Item of Equipment, in accordance with the return provisions of the Lease Agreement and paying to PHH a termination payment equal to 71% of the Acquisition Cost; or (b) anytime after the 12th month of the Lease Term by paying PHH the Stipulated Loss Value for the Item of Equipment.

25. <u>Lessee's Representations and Warranties</u>. Lessee hereby represents and warrants to Lessor that:

(a) Lessee is a corporation duly organized, validly existing and in good standing under the laws of its state of incorporation and is qualified to do business in every jurisdiction in which the Equipment is located and in which the failure to so qualify could have a material adverse effect upon its business or assets; Lessee has the power and authority to execute and perform this Lease Agreement, and has duly authorized the execution, delivery and performance of this Lease Agreement;

(b) no approval is required from any regulatory body, board, authority or commission, nor from any other administrative or governmental agency, nor from any other person, firm or corporation, with respect to the execution of this Lease Agreement by Lessee and the payment and performance by Lessee of all of Lessee's obligations hereunder;

(c) this Lease Agreement constitutes the legal, valid and binding obligation of Lessee, enforceable in accordance with its terms except as the same may be affected by federal or state bankruptcy laws or laws affecting the collection of debts and creditors' rights, and the execution, delivery and performance of the same by Lessee will not violate Lessee's Charter, Certificate or Articles of Incorporation, By-Laws, or any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Lessee is a party, or by or under which Lessee or any of Lessee's property is bound, or be in conflict with, result in a breach of, or constitute (with due notice and/or lapse of time) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Lessee's property or assets;

(d) no mortgage, deed of trust, or other lien of any nature whatsoever which now covers or affects, or which may hereafter cover or affect, any property or interest therein of Lessee, now attaches or hereafter will attach to the Equipment leased under this Lease Agreement or in any manner affects or will affect adversely Lessor's right, title and interest herein;

(e) there are no suits or proceedings pending, or, to the knowledge of Lessee, threatened, in any court or before any regulatory commission, board or other administrative governmental agency against or affecting Lessee, that will have a material adverse effect on the financial condition or business of Lessee, or any subsidiary of Lessee;

(f) none of the Equipment will be attached to or otherwise affixed or become a part of the real estate at the place where it is located and none will otherwise constitute real estate or fixtures under the law of the jurisdiction in which it will be located;

(g) all balance sheets, statements of profit and loss and other financial data, including the notes, if any, thereto, that have been delivered to Lessor with respect to Lessee (i) are complete and correct in all material

8

respects, (ii) accurately present the financial condition of Lessee on the dates for which, and the results of its operations for the periods for which, the same have been furnished, and (iii) have been certified by Lessee's independent certified public accountants, in the case of the audited financial statements, and

(h) Lessee and its consolidated subsidiaries have filed all United States and state income tax returns that are required to be filed and have paid, or made provisions for the payment of, all taxes that have or may become due pursuant to said returns or pursuant to any assessment received by Lessee or such consolidated subsidiaries, except such taxes, if any, as are being contested in good faith and as to which adequate reserves have been provided.

26. **Counterparts.** This Lease Agreement and each Schedule and Rider forming a part hereof may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall together constitute but one and the same instrument.

27. **Miscellaneous.** This Lease Agreement, all Schedules, and related Riders attached hereto, which collectively constitute the Lease Agreement, set forth the entire agreement between Lessor and Lessee with respect to the Equipment and subject matter of this Lease Agreement. No term or provision of this Lease Agreement may be changed, waived, amended, discharged or terminated except by a written instrument executed by both parties. No express or implied waiver by either party of an Event of Default hereunder, or of any other matter, shall in any way be, or be construed to be, a waiver of any future or subsequent Event of Default or other matter, whether similar in kind or otherwise. If any provision of this Lease Agreement is contrary to applicable law, such provision shall be deemed ineffective without invalidating the other provisions hereof. If Lessee fails to perform any of its obligations under this Lease Agreement, Lessor may, but shall not be obligated to, perform the same without thereby waiving such default, and any reasonable amount paid or expense or liability reasonably incurred by Lessor in such performance shall be paid or reimbursed by Lessee upon Lessor's demand. Upon Lessor's request, Lessee agrees to furnish Lessor within one hundred twenty (120) days after the last day of each fiscal year of Lessee, a copy of Lessee's annual report as of the end of such year (consolidated with its subsidiaries, if any), certified by an independent certified public accounting firm of recognized standing, and such interim financial statements as Lessor may request. This Lease Agreement shall in all respects be governed by and construed in accordance with the laws of the state of Maryland. In the event that a claim is brought under this Lease Agreement by Lessor, the claim shall be filed in a court of competent jurisdiction in Richmond, Virginia. In the event that a claim is brought under this Lease Agreement by Lessee, the claim shall be filed in a court of competent jurisdiction in Baltimore, Maryland. The provisions of this Lease Agreement shall be binding upon, and shall inure to the benefit of, the permitted successors and assigns of Lessor and Lessee. Time is of the essence with respect to this Lease Agreement and its provisions. If there is more than one Lessee named herein, the liability of each Lessee shall be joint and several.

The person executing this Lease Agreement on behalf of Lessee hereby certifies that he or she is duly authorized to do so.

IN WITNESS WHEREOF, the parties hereto have executed this Lease Agreement as of the 19th day of April, 1999.

PHH Vehicle Management Services Corporation

By: _____
George J. Kilroy
Senior Vice President

Circuit City Stores, Inc.

By: _____
Gary M. Mierenfeld
Senior Vice President
Distribution & National Service

9

# EXHIBIT A

Schedule No. ___

Lessor's Identification No. PHHFS-99-

Attached to and hereby made a part of Equipment Lease dated as of April 19, 1999 between PHH Vehicle Management Services Corporation ("Lessor") and Circuit City Stores, Inc. ("Lessee").

Equipment:

| Qty. | Make and Description | Model # | Serial # | Item Cost |
|---|---|---|---|---|
| | | | | |

Original Location:

Latest Delivery Date:

Acquisition Cost of Equipment: $

Basic Lease Term: _____ Months

Commencement Date:

Basic Rent: ___% of the Acquisition Cost of Equipment, equal to $_____, payable monthly in (advance/arrears)

Interim Rent: ___% of the Acquisition Cost of Equipment per day, payable from the placed-in-service date to, but not including, the Commencement Date.

Number of Rental Payments:

Lessor's Address for Rental Payments: P. O. Box 64575
Baltimore, Maryland 21264

Recovery Class:

Return Location: Within 250 miles of original equipment location.

End of Term Option:    At the end of the Basic Lease Term, the Lessee shall have the option of: (1) Purchasing the Equipment at 20% of the Equipment's Acquisition Cost, or (2) Renewing the Lease for an additional 12 month term with monthly rentals equal to 1.9653% of the Equipment's Acquisition Cost, and at the end of the 12 month renewal period, the Lessee may purchase the Equipment from the Lessor at a purchase price of $1.00. The above Rentals are based on the yield for three year Treasury Notes as of February 26, 1999 (i.e., 5.16%) and the implicit rate may be adjusted for up to 100% of any change in that yield prior to the Basic Lease Commencement Date.

The only two individuals authorized to sign this Schedule A on Lessee's behalf are the Manager of Fleet Services and Assistant Vice President Distribution.

Dated as of _____, 1999

PHH Vehicle Management Services Corporation         Circuit City Stores, Inc.

By_____                             By:_____
Bradley S. Byers                                    Name:_____
Manager, Financial Services                         Title:_____

10

**EXHIBIT B**

Delivery and Acceptance Acknowledgment

Lessor's Identification No. PHHFS-99-
Lessor: PHH Vehicle Management Services Corporation
Equipment Lease Dated as of April 19, 1999
Schedule No.: _____
Vendor: _____
Acceptance Date: _____

The undersigned ("Lessee") hereby acknowledges that:

1. The Equipment leased under the above Equipment Lease and Schedule: (a) was selected by Lessee; (b) has been delivered to, inspected to the extent Lessee is reasonably able and accepted by the Lessee for purposes of this Lease Agreement as of the above acceptance date; (c) is, based on Lessee's reasonable inspection, in good condition (operating and otherwise) and repair; (d) is in full compliance with the terms of said Lease Agreement insofar as Lessee is able to determine based upon Lessee's reasonable inspection; (e) is, to the extent Lessee is reasonably able to determine, new personal property and no original use thereof has commenced prior to the date or dates specified in the foregoing paragraph 1(b) or a demonstration model used by the manufacturer and by no other entity except such manufacturer prior to delivery; and (f) has been marked to show Lessor's Interest, such marks having been made so as not to damage the Equipment or diminish its value and provided that the marks are readily removable if such marked Equipment is purchased by Lessee at the termination of this Lease Term. The foregoing shall not constitute a waiver of Lessee's right to make Equipment defect claims or warranty claims against the manufacturer or vendor with respect to the Equipment.

2. Unless otherwise specified on said Schedule, the obligation of the Lessee to pay rental with respect to said Equipment commences on the date of this Acknowledgment.

3. Except to the proportionate extent attributable to Lessor's negligence or willful misconduct, in the event that the Lessee shall at any time hereafter have any problems with said Equipment, it will look solely to said Vendor for satisfaction and will nevertheless continue to pay rentals to Lessor free of any setoff, counterclaim or defense.

4. Lessee further certifies that (i) no event has occurred and is continuing that constitutes an Event of Default by Lessee under the Lease Agreement, (ii) no event has occurred and is continuing which, with the giving of notice, passage of time, or both would constitute such a default by Lessee under the Lease Agreement, and (iii) that there has not occurred any material adverse change in the financial or business condition of Lessee or any guarantor of Lessee's obligations to Lessor since the date of the last financial statements submitted to Lessor by Lessee or any such guarantor. Lessee further acknowledges and understands that, based upon the foregoing, Lessor will cause the balance of the purchase price for said Equipment to be paid to said Vendor.

Dated as of the ___ day of _____, 1999.

                                        Circuit City Stores, Inc.

                                        By: _____
                                        Name: _____
                                        Title: _____

11

## EXHIBIT C

### Schedule Of Stipulated Loss Values

Lessor's Identification No. PHHFS-99-_____

Attached to and hereby made a part of Schedule No. _ to Equipment Lease dated as of April 19, 1999, between PHH Vehicle Management Services Corporation ("Lessor") and Circuit City Stores, Inc. ("Lessee").

The "Stipulated Loss Value" of any Equipment as of a particular date shall be an amount equal to the product of (x) the actual cost of such Equipment to Lessor, and (y) the percentage specified below opposite the aggregate number of full rental installments paid (other than installments paid prior to their due date) and/or then payable by Lessee to Lessor with respect to such Equipment.

| Payment Date | Payment No. | Percentage | Payment Date | Payment No. | Percentage |
|---|---|---|---|---|---|
| | | | | | |

Dated as of _____, 1999

PHH Vehicle Management Services Corporation           Circuit City Stores, Inc.

By:_____                                  By:_____
  Bradley S. Byers                                    Name:_____
  Manager, Financial Services                         Title:_____

12

**EXHIBIT D**

**TERMINAL RENTAL ADJUSTMENT RIDER**

Lessor's Identification No. PHHFS-99-____

      Provided that no Event of Default exists under the Lease Agreement dated as of April 19, 1999 between PHH Vehicle Management Services Corporation, Lessor, and Circuit City Stores, Inc., Lessee, or any schedule thereto, upon expiration of the Lease Term of each Item of Equipment listed on Schedule No.__, Lessor shall sell or otherwise dispose of the returned Equipment pursuant to Lessee's purchase option, as described in the Lease Agreement, any Schedule, Annual Determination, Rider or agreement duly executed by the parties, or otherwise in a commercially reasonable manner. If the amount received by Lessor for the returned Equipment after such sale or other disposition exceeds ___% of the Acquisition Cost for such Equipment, then such excess amount shall be remitted by Lessor to Lessee as a rental adjustment. If the amount received by Lessor for the returned Equipment after such sale or disposition is less than ___% of the Acquisition Cost, then Lessee shall pay to Lessor an amount equal to the difference between ___% of the Acquisition Cost and the price actually received by Lessor for such Equipment as a rental adjustment; provided, however, that Lessee's obligation hereunder shall in no event exceed ___% of the Acquisition Cost.

Dated as of_____, 1999

PHH Vehicle Management Services Corporation      Circuit City Stores, Inc.

By:_____      By:_____
    Bradley S. Byers                       Name:_____
    Manager, Financial Services           Title:_____

13

## EXHIBIT E

### TURN-IN PROVISIONS - EQUIPMENT

EQUIPMENT:  Lessee shall ensure that all items of Equipment returned to the Lessor at the end of the Lease Term meet the following condition requirements:

- Transmission and drive shaft, differential, axle and clutch must have no unusual sounds or vibrations that could indicate unsound mechanical condition.

- Must be no scored hydraulic cylinders.

- Tires must have at least 50% of original tire tread.

- Must be in compliance with all applicable federal, state and local laws and regulations.

- Appearance must be free of all rust and corrosion, clean with a good appearance. There must be no broken glass, and it must be free of all advertising and insignia placed thereon by Lessee.

- All systems must capably perform the function for which they were designed within manufacturer's published performance specifications.

- There must be no cracked or bent frames or undercarriage damage.

- Hoses must be free of tears and cuts.

- Hydraulic systems must be free of leaks.

- If applicable, mounting pins and pivot pins must be free moving and show no excessive wear.

- If applicable, buckets and/or blades must be free of cracks and tears.

- If applicable, forks should not be bent or broken.

- If applicable, tracks should show no more than 50% wear.

- During the Lease Term, the Equipment must be maintained by the Lessee in accordance with manufacturer's specifications and, upon request, the Lessee will make such maintenance records available to the Lessor.

PHH Vehicle Management Services Corporation         Circuit City Stores, Inc.

By:_____                          By:_____
    Bradley S. Byers                                Name:_____
    Manager, Financial Services                     Title:_____

14