**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **CIRCUIT CITY STORES, INC., et al.,** | ) | **Case No: 08-35653-KRH** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | |

**MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL FROM THE
ORDER OF THE BANKRUPTCY COURT DATED JANUARY 26, 2009,
STYLED "FINDINGS OF FACT AND CONCLUSIONS OF LAW FROM
HEARING HELD DECEMBER 22, 2008 ON MOTION TO COMPEL PAYMENT
OF POSTPETITION RENT" AND MEMORANDUM IN SUPPORT THEREOF**

COME NOW the Landlords listed on Exhibit A hereto, creditors in this chapter 11 bankruptcy (the "Landlords"), and file (a) a Motion for Leave to file an Interlocutory Appeal pursuant to 28 U.S.C. § 158(a) (this "Motion") with respect to that certain order docketed January 26, 2009, styled "Findings of Fact and Conclusions of Law From Hearing Held December 22, 2008 on Motion to Compel Payment of Postpetition Rent" (the "Findings and Conclusions") relating to the motions, either formal, informal, or raised in objections to pleadings ("Motion(s) to Compel") filed by lessors under certain of the debtors' unexpired leases of nonresidential real property to compel immediate payment of post-petition rent, including but not limited to base rent, "CAM," real estate taxes, and insurance ("Rent") for the period

---

Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
Noelle M. James, Esquire (VSB No. 76001)
Christian & Barton, L.L.P.
909 E. Main Street, Suite 1200
Richmond, Virginia 23219-309
(804) 697-4104
(804) 697-6104 (facsimile)

Counsel to Landlords listed on Exhibit A

November 10, 2008 through November 30, 2008 ("Stub Rent"), on the basis set forth in this Motion; and (b) their Memorandum in support thereof.

## FACTS

As of November 10, 2008 (the "Petition Date"),

the Debtors were parties to numerous Leases pursuant to the terms of which rental obligations for the month of November 2008 became due and payable on November 1, 2008 (the "Paid In Advance Leases") and were also parties to Leases pursuant to the terms of which rental obligations for the month of November 2008 became due and payable after the Petition Date (the "Arrears Leases").

[ ] For Leases with respect to which [the Landlords have] filed a Motion [to Compel payment of Stub Rent], the Debtors have agreed on the record that the "accrual method" will apply in these cases with respect to both Paid In Advance Leases and Arrears Leases and that such lessors have timely raised their rights under Section 365(d)(3) of the Bankruptcy Code and thus have not waived any rights that Section 365(d)(3) affords them. The Debtors contest the applicability of Section 365(d)(3) to the Stub Rent requests, but agree that Stub Rent with respect to such leases is entitled to administrative expense priority under Section 503(b) of the Bankruptcy Code. In addition, the Debtors contend that even if Section 365(d)(3) applies to the Stub Rent request, the Court has discretion not to order immediate payment.

[ ] The unpaid Stub Rent for Paid In Advance Leases is approximately $20 to $25 million. The budget under the Debtors' debtor-in-possession financing facility, as approved by this Court's Order dated December 23, 2008 (Docket No. 1262) (the "DIP Facility"), did not contemplate payment of the Stub Rent for Paid In Advance Leases, and the Debtors presented evidence that they were accordingly not authorized to make immediate payment of the Stub Rent for Paid In Advance Leases and that such payment would result in financial hardship for the Debtors and endanger their continued operations and successful restructuring.

[ ] None of the lessors under the Paid In Advance Leases has submitted any evidence that the Stub Rent is or was first due and payable under Paid In Advance Leases pursuant to the terms of such leases on a day in November subsequent to the Petition Date.[1]

---

[1] The quotation is from the Findings and Conclusions, ¶¶ B-E, attached hereto as Exhibit B.

2

## QUESTIONS FOR APPEAL

1. Whether this Court's ruling that, notwithstanding the provisions of Section 365(d)(3) of the Bankruptcy Code, this Court had discretion under the Bankruptcy Code to decline to order timely payment of the Stub Rent for Paid In Advance Leases was error.

2. Whether this Court's conclusion that to order timely payment of the Stub Rent for Paid In Advance Leases would provide the lessors under such leases with a "super-priority" claim not required under the Bankruptcy Code was error.

## RELIEF SOUGHT

The Landlords seek a ruling on appeal that Section 365(d)(3) of the Bankruptcy Code applies to the facts of this case and requires timely payment of all accrued post-petition obligations under Paid In Advance Leases. The Landlords assert that this Court's ruling to the contrary has the practical effect of "writing out" of the Bankruptcy Code Section 365(d)(3). The Landlords seek permission to appeal the Findings and Conclusions now on the basis that (i) a delay in their appeal until the conclusion of this case could involve a delay of years in their receipt of payments they assert the Bankruptcy Code requires the Debtors to make timely, and (ii) the risk that this bankruptcy case will ultimately prove to be administratively insolvent is a condition that the Bankruptcy Code, through Section 365(d)(3), does not require the Landlords to bear.

The Landlords seek this Court's leave to appeal, pursuant to Fed.R.Bankr.P. 8003(a), to the extent that the Court believes leave is required.[2] In support of its request, the Landlords state that, with respect to the Findings and Conclusions, the order (i) involves a controlling question of law, (ii) as to which there is substantial difference of opinion, and (iii) immediate appeal would

---

[2] The Landlords intend to file with this court in the immediate future a request that the court certify the appeal of the Findings and Conclusions should proceed directly to the Court of Appeals. *See* 28 U.S.C. § 158(d)(2)(A).

materially advance the termination of the litigation. *See Atlantic Textile Group, Inc. v. Neal*, 191 B.R. 652 (E.D. Va. 1996). With respect to the controlling question of law prong of the *Atlantic Textile* test, "[c]ertainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law where resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin v. CSX Transp. Inc.*, 1989 WL 42583 at *5 (4th Cir. 1989) (unpublished).

This appeal involves a controlling question of law. The interpretation of Section 365(d)(3) will determine whether the Debtors must timely pay the Landlords their Stub Rent, or whether they must wait years (potentially) to find out whether the estates of the Debtors are administratively insolvent or whether the Landlords will be paid their Stub Rent, in whole or in part.

There is substantial difference of opinion on the issues presented . On the one hand, there are cases in this district and others saying that Section 365(d)(3) requires prompt payment of Stub Rent under the "accrual method." *See Trak Auto*, 227 B.R. 655, 668 (Bankr. E.D. Va. 2002), *rev'd on other grounds* 367 F.3d 237 (4th Cir. 2004); *In re Pudgie's Dev. of NY, Inc.*, 239 B.R. 688 (S.D.N.Y. 1999); *In re Stone Barn Manhattan, LLC*, 398 B.R. 359 (Bankr. S.D.N.Y. 2008). On the other hand there are the following cases, among others, that reach other conclusions: *In re Goody's Family Clothing, Inc.*, 392 B.R. 604 (Bankr. D. Del. 2008);[3] *In re Virginia Packaging Supply Co., Inc.*, 122 B.R. 491 (Bankr. E.D. Va. 1990); *In re Rare Coin Galleries*, 72 B.R. 415 (Bankr. D. Mass. 1989).

There can be no reasonable doubt that a prompt resolution of the question whether Section 365(d)(3) requires immediate payment to the Landlords of their Stub Rent will affect

---

[3] The Third Circuit has adopted the "due date" rather than the "accrual method" for determining whether rent for the month in which a case is filed is a pre-petition or post-petition debt.

significantly the financial projections necessary to formulate and attempt to seek approval and consummation of a plan. The amount involved is between $20 million and $25 million. For the Debtors to receive a ruling at a later stage in the proceedings could alter substantially their financial planning, their disclosure statement and their liquidating plan.

## ARGUMENT

During the omnibus hearing on December 22, 2008,[4] the Landlords, by counsel, advised the Court that the Debtors had not paid the Stub Rent due to each of the Landlords pursuant to the respective leases with the Debtors. Section 365(d)(3) requires the following:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

Based on their reading of Section 365(d)(3), the Landlords asserted that the Debtors were obligated to pay Stub Rent immediately or in no event later than January 9, 2009, and they requested an order to such effect.

In response to the Landlords' Motions to Compel and related argument, the Debtors argued to the Court that the effect of granting relief to the Landlords on this issue would be to give the Landlords "super-priority" status with priority of payment above all other administrative expense claimants.

---

[4] The matter was originally on the December 5 docket but was continued by consent until December 22.

5

The Debtors' witness testified that the Debtors did not budget to pay the Post-Petition November Rent for all landlords, thus saving the Debtors' estate the necessity of borrowing an additional $20 to $25 million.

After considering the arguments of the Debtors and the Landlords, in its December 22, 2008 ruling the Court declined to grant the Landlords' Motions to Compel, stating that the Court would follow Judge Adams' reasoning in *In re Trak Auto Corp.*, 277 B.R. at 665 (the "December 22, 2008 Ruling"). On January 26, 2009, this Court entered the Findings and Conclusions on its December 22, 2008 Ruling.

In the Findings and Conclusions, this Court ruled that it would

> adhere to the determinations made in *In re Trak Auto Corp.*, and *In re Virginia Packaging Supply Co., Inc.*, that the Debtors should not be ordered to pay the Stub Rent at this time on the basis that such rent is not entitled to super-priority but rather to priority only pursuant to section 507(a) of the Bankruptcy Code.

Findings and Conclusions at ¶ 1. As a result of this ruling, the Court denied all of the Motions to Compel to the extent they sought "either immediate payment or payment within sixty days of the Petition Date." Findings and Conclusions at ¶ 3.

In *Trak Auto*, Judge Adams states that "[w]hile § 365(d)(3) requires debtor to timely fulfill all of its obligations on its executory contracts for nonresidential real property, this provision does not provide a remedy for debtor's noncompliance." *Id.* at 668. Following that statement, Judge Adams makes a distinction between rent ordered to be paid timely and rent remaining unpaid, whether in violation of a court order or not, stating that overdue rent payments do not constitute "a special category of higher priority claims." *Id.*

Despite these statements, which appear to provide support for the Court's December 22, 2008 Ruling, Judge Adams further states that the

> policy reason behind this holding is to encourage the lessors to be proactive in asserting their rights. **A landlord may move to compel payment of pre-**

6

>  **rejection rent under § 365(d)(3) or may seek to lift the automatic stay under § 362 to pursue other remedies.** However, a landlord is not permitted to sit on its rights and rely on an alleged super-priority status for its administrative rent claim.

*Id.* at 669 (emphasis added).

Judge Adams' opinion in *Trak Auto* also clearly states that

> [u]ntil debtor's leases are rejected, debtor is required to pay rent to the landlord from the date the bankruptcy petition is filed until the date the lease is rejected. This principle is established by the Code in § 365(d)(3) which requires the trustee, or as in this case, debtor-in-possession to *timely* perform all obligations under the lease. Failure to pay rent and other obligations contained in the lease gives rise to an administrative claim by the landlord. *See In re Virginia Packaging Supply Co.*, 122 B.R. 491 (Bankr. E.D. Va. 1990); *see also In re Geonex Corp.*, 258 B.R. 336 (Bankr. D. Md. 2001).

*Id.* at 665 (emphasis added).

The *Trak Auto* opinion relies on *Pudgie's* when it states that rents are due to landlords "unconditionally," explaining that landlords are not even required to establish that there is a benefit to the estate in order to require payment of administrative rent. *Id.* (quoting *Pudgie's*, *supra* at 692.

The *Trak Auto* opinion also sets out a portion of the legislative history underpinning this timely payment requirement when it states the following:

> the legislative history that accompanies the enactment of the landlord protection provisions found in § 365 indicates that Congress sought to provide special protections to lessors of a debtor. *See* 130 CONG. REC. S8894-95 (daily ed. June 29, 1984) (statements of Sen. Hatch). Debtor's continued occupation of the property confers some benefit to the estate as debtor is either using the space to further enhance the estate by continuing its operations, or enhancing the estate by avoiding the costs of storing and moving its equipment. The price of the administrative claim also [']represents the price of the trustee's opportunity to take [120] days, or in this case [210] days, to decide whether the lease is beneficial to the estate and should be continued.[']

*Id.* at 665-666 (citing *In re Geonex Corp.*, 204 B.R. at 691 (citation omitted)).

7

Thus, this Court's December 22, 2008 Ruling is inconsistent with *Trak Auto* unless the Debtors have previously failed to pay timely rent. When the Motions to Compel were filed, the Debtors could not be found to have already failed to pay timely rent. It was too early in the case. In *Trak Auto* Judge Adams found that the Landlords had sat on their rights, not bringing their requests for payment before the Court until approximately eighteen months after the Petition Date. In the present case, no one can possibly allege that the Landlords sat on their rights or failed to timely prosecute their rights under 11 U.S.C. § 365. Further the Debtors were "not allowed to fail" to pay the rent by the proactive actions of the Landlords.

"The landlord has a right to timely payment without the necessity of court action during the post-petition, pre-rejection period, but if the debtor does not pay his rent, the landlord must act to obtain payment." *Pudgie's,* 239 B.R. at 696. The Court in *Pudgie's* went on to note that a landlord has remedies should a tenant decline to pay the rent, such as moving for automatic stay relief to evict the tenant, seeking a court order directing immediate payment,[5] or a motion to convert the case, all of which actions should protect a landlord's position under Section 365(d)(3). "What a landlord cannot do is 'sit idly by and not seek either payment or recovery of the premises by relying on the fact that his contractual rent will be accorded administrative priority.'" *Id.* (*citing In re Tammey Jewels Inc.*, 116 B.R. 292, 294 (Bankr. M.D. Fla. 1990)).[6] Such protections are critical to protect landlords from ever-increasing losses during the post-petition, pre-rejection period.

Courts in this Circuit and other jurisdictions have repeatedly held that Section 365(d)(3) requires the timely payment of post-petition rent as an administrative expense at the full contract rate. *See In re Trak Auto Corp.,* 277 B.R. at 665; *see also In re Best Products Co., Inc.* 206 B.R.

---

[5] In this case this is precisely the action the Landlords took.
[6] In *Tammey Jewels*, Judge Paskay found that 365(d)(3) did not even provide an administrative expense claim for unpaid rent.

404, 406 (Bankr. E.D. Va. 1997) (Congress enacted 365(d)(3) to guarantee landlords would not be placed at disadvantage for providing post-petition services to debtor). "Until the debtor's leases are rejected, the debtor is required to pay rent to the landlord from the date the bankruptcy petition is filed until the date the lease is rejected." *Trak Auto Corp.*, 277 B.R. at 665. *See also In re Stone Barn Manhattan LLC*, supra.

It can hardly be said that the Landlords have been anything other than "proactive" in asserting their rights afforded them by Section 365. They have taken the precise actions Judge Adams suggested in the *Trak Auto* opinion: filed a motion to compel payment of rent, or, in other cases, raised the issue in various Court pleadings such as responses to the Debtors' motion to extend the time within which leases could be assumed or rejected. Many of the Landlords had the issue before this Court at the first omnibus hearing; all did as of the December 22, 2008 hearing. There was no earlier time at which the Landlords could have or should have asserted these rights. Thus, the cautionary notes in *Pudgie's* and *Trak Auto* are not applicable.

Based on statements made by the Debtors' witness at the December 22, 2008 hearing, the Debtors' failure to pay the Post-Petition November Rent owed to the Landlords has preserved between $20 and $25 million in the Debtors' budget, funds that the Debtors intend to spend on other items. The effect of this Court's ruling is that the Landlords have been made involuntary lenders to the Debtors. This is clearly a situation the 1984 amendments sought to prevent.

To the extent the leases provide that the Debtors are obligated to promptly reimburse the Landlords for all reasonable and actual legal fees incurred in connection with enforcing the leases after the Debtors default on their obligations thereunder, the Landlords request that the Debtors be directed to pay the attorneys' fees and costs incurred by the Landlords in connection with filing and prosecuting this Motion, the Requests, the December 19 Motion to Compel and the related Motion to Compel.

9

WHEREFORE, the Landlords ask that this Court: (i) grant them leave to appeal from the order of the Bankruptcy Court denying its motions to compel immediate payment of Post-Petition November Rent; and (ii) grant them such other and further relief as this Court deems just and proper.

Dated:  February 5, 2009                    LANDLORD LISTED ON EXHIBIT A

/s/ Augustus C. Epps, Jr.
Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
Noelle M. James, Esquire (VSB No. 76001)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4104
Facsimile:  (804) 697-6104

Counsel for Landlords Listed on Exhibit A

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2009, I caused a copy of the foregoing to be served by electronic means on the "2002" and "Core" lists and through the ECF system.

/s/ Augustus C. Epps, Jr.
Augustus C. Epps, Jr.

# EXHIBIT A

|     | **Landlord** |
|-----|--------------|
| 1.  | Brighton Commercial LLC |
| 2.  | Carousel Center Company, L.P. |
| 3.  | Cedar Development Ltd. |
| 4.  | Drexel Delaware Limited Partnership |
| 5.  | Fingerlakes Crossing, LLC |
| 6.  | Generation H One and Two, LP |
| 7.  | GRI-EQY (Sparkleberry Square) LLC |
| 8.  | Hamilton Crossing I, LLC |
| 9.  | Inland American Retail Management LLC |
| 10. | Inland Commercial Property Management, Inc. |
| 11. | Inland Continental Property Management Corp. |
| 12. | Inland Pacific Property Services LLC |
| 13. | Inland Southwest Management LLC |
| 14. | Inland US Management LLC |
| 15. | Kimco Realty Corporation |
| 16. | La Habra Imperial, LLC |
| 17. | Madison Waldorf LLC |
| 18. | Myrtle Beach Farms Co., Inc. |
| 19. | N.P. Huntsville Limited Liability Company |
| 20. | Rancon Realty Fund IV |
| 21. | Sangertown Square, LLC |
| 22. | Starpoint Property Management, LLC |
| 23. | UnCommon, Ltd. |

922718.2