Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

           IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
           Debtors.           :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105 AND 363 (I) AUTHORIZING DEBTORS TO ENTER INTO
AN AGREEMENT IN CONNECTION WITH SALE OF FURNITURE, FIXTURES
AND EQUIPMENT, SUBJECT TO HIGHER OR OTHERWISE BETTER
PROPOSALS; (II) APPROVING SALE OF FURNITURE, FIXTURES AND
EQUIPMENT FREE AND CLEAR OF ALL INTERESTS; AND
(III) GRANTING RELATED RELIEF**

        The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to

sections 105 and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), for entry of an order (I) authorizing the

Debtors to enter into an agreement (the "FF&E Agreement")

with the FF&E Agent (as defined herein) on the terms

described in the proposal attached to the order as

Exhibit A (the "Proposal") to serve as agent for the

sale (the "Sale") of the Debtors furnishings, trade

fixtures and equipment (collectively, the "FF&E"),

subject to higher or otherwise better proposals;

(II) approving the Sale of the FF&E free and clear of

all interests; and (III) granting related relief.  In

support of the Motion, the Debtors respectfully

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for Circuit City Stores West Coast, Inc. is 9250 Sheridan
      Boulevard, Westminster, Colorado 80031.  For all other Debtors,
      the address is 9950 Mayland Drive, Richmond, Virginia 23233.

represent as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are Bankruptcy Code sections 105 and 363 and Bankruptcy Rule 6004.

**BACKGROUND**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no

trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

### RELIEF REQUESTED

7.    By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (I) authorizing the Debtors to enter into the FF&E Agreement with the FF&E Agent in connection with the Sale of the FF&E, subject to higher or otherwise better proposals; (II) approving the Sale of the FF&E pursuant to the FF&E Agreement with the FF&E Agent free and clear of all interests; and (III) granting related relief.

**BASIS FOR RELIEF**

**A.   The Debtors' Marketing Efforts.**

8.   Since commencing the going out of
business sales at their remaining stores, the Debtors
have been focusing their efforts of maximizing the value
of their remaining assets and minimizing expenses.   In
particular, the Debtors have identified various
locations at which FF&E is located.   The locations were
used as distribution, call, and service centers located
throughout the United States,[2] in addition to the
Debtors' corporate headquarters in Richmond, Virginia
(collectively, the "Locations").

9.   At this time, the Debtors have ceased a
most and are in the process of winding down their
remaining operations at the Locations.   To that end, the
Debtors have determined that a sale of their FF&E
located therein is in the best interests of their
estates.

10.  To facilitate a sale of their FF&E, the
Debtors contacted various national liquidation firms and

---

[2]   A list of distribution, call, and service centers is attached to
the order as Exhibit B.

other parties that specialize in liquidating these types
of assets.  For those parties that executed appropriate
confidentiality agreements, the Debtors provided such
parties with due diligence materials and arranged onsite
visits to the Locations.  The Debtors also advised these
parties that bids to serve as an agent to conduct the
sale of FF&E (on a fee or equity basis) were due on or
before February 4, 2009.

11.  As a result of these marketing efforts,
the Debtors received various proposals to serve as the
FF&E agent for the Sale of the FF&E.  Upon reviewing
these proposals, the Debtors determined that the
proposal submitted by the FF&E Agent was the highest or
otherwise best proposal of those received.  Thus, the
Debtors elected to proceed with the Sale of the FF&E
pursuant to the FF&E Agreement with the FF&E Agent.

**B.    The Proposal And The FF&E Agreement.**

12.  As reflected in the Proposal, the FF&E
Agreement will provide that Liquid Asset Partners, LLC
(the "FF&E Agent") will serve as the Debtors' agent for
the sale of FF&E.

6

13.  To facilitate the sale, the FF&E Agent has agreed to: (1) deploy a team of veteran liquidators experienced in the liquidation of warehouse and office equipment; (2) conduct a comprehensive marketing effort, including local regional and international newspaper insertions, nationwide internet announcements, trade listings, web and Internet notifications, email notices, and direct telephone solicitations; and (3) handle all marketing, overseeing personnel and operational efforts, onsite liquidation execution and support services, and property removal and building clean-up supervision; provide detailed financial accounting and support documentation.  As part of its marketing efforts, the FF&E Agent will utilize a direct buyer list of over 1000 warehouse equipment dealers, over 300 conveyor and automation dealers and over 15,000 equipment end users.

14.  The Agreement proposes two similar compensation structures.  However, the Debtors have elected to proceed under the second compensation structure.  Under the second compensation structure, the FF&E Agent would receive a commission equal to 2 percent of the net proceeds of the sale.  The FF&E Agent would

also charge a buyers' premium (generally equal to 10
percent) and retain such premium.  The buyers' premium
would then not be treated as part of the gross proceeds
from the sale subject to the 2 percent commission.
Under this structure, the FF&E Agent would deduct from
the sale proceeds (subject to certain caps) direct sale
related expenses, including expenses for marketing and
advertising, accounting, labor and personnel and travel
expenses.  Thus, the Debtors would not pay any sale
expenses up front.  However, all occupancy and related
costs and expenses would remain the responsibility of
the Debtors during the sale period.

15.   The Debtors believe that the FF&E Agent
is ably qualified to perform the services described
above.  As noted in the Proposal, during the past five
year, the FF&E Agent has consulted on or purchased
equipment assets for liquidation, which generated over
$100 million in sales  Some of these transactions
include Penn Traffic's two Distribution Centers in
Columbus, Ohio (1 million Sq Ft.), Kmart's world
corporate office (1 million Sq Ft.) and warehouse in
Detroit, Michigan, 33 Office Max distribution centers,

Bugle Boys distribution center in Atlanta, Georgia
(600,000 Sq Ft.), Amazing Savings distribution center in
New Jersey, Franks Nursery distribution center in
Indianapolis, Indiana, over 300 Builders Square
Warehouse stores (120,000 Sq Ft. each), over 10,000
retail stores, and numerous other corporate offices and
distribution centers.

**C.    The FF&E Agreement Is Subject To Higher And
Otherwise Better Proposals.**

16.    To ensure the Debtors receive the
highest or otherwise best proposal for the sale of the
FF&E, the Debtors will entertain alternate proposals
therefor.  Thus, any party, including those parties that
previously submitted proposals, who wishes to submit an
alternate proposal for consideration by the Debtors
should do so by February 12, 2009 at 4:00 p.m. (ET).  If
the Debtors receive any such proposals, the Debtors will
hold auction on February 16, 2009.  Upon receipt of any
alternate proposal, the Debtors will advise the FF&E
Agent and any and all other parties that submitted
alternate proposals of the time and place (or telephonic
instructions) for an auction.

9

17.   Following an auction, if any, the
Debtors will proceed with a hearing to approve the
relief requested herein on February 17, 2009 at 10:00
a.m. (ET) (the "Hearing").

**APPLICABLE AUTHORITY**

**I.   APPROVAL OF THE SALE OF FF&E IS WARRANTED UNDER
BANKRUPTCY CODE SECTIONS 105(A) AND 363(B)(1).**

18.   Bankruptcy Code section 363(b)(1)
authorizes a  trustee to "use, sell, or lease" property
of the estate with the Court's approval.  11 U.S.C. §
363(b)(1).  Assets of the Debtors may be sold outside of
the ordinary course of business, pursuant to Bankruptcy
Code section 363(b)(1), if a sound business purpose
exists for doing so.  In re WBQ P'ship, 189 B.R. 97, 102
(Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v.
McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In
re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D.
Va. 1997).

19.   To satisfy the "sound business purpose
test," the debtor must demonstrate that (1) a sound
business reason or emergency justifies a pre-
confirmation sale; (2) the sale was proposed in good

faith; (3) the purchase price is fair and reasonable;
and (4) adequate and reasonable notice of the sale has
been provided.  In re WBQ P'ship, 189 B.R. at 102.

20.   Here, a sound business purpose exists.
The Debtors recently announced and commenced going out
of business sales at their remaining stores.  Through
these sales the Debtors are liquidating their inventory.
As part of their ongoing liquidation efforts, the
Debtors have determined that the Locations are no longer
necessary to their operations.  Thus, the Debtors
believe that liquidating the FF&E at the Locations will
maximize value and limit administrative expenses
associated with any lease or other obligations at the
Locations.  Maximizing value and limiting administrative
expenses are sound business purposes that support
approval of the sale.

21.   As reflected in the Proposal, the FF&E
Agent has both extensive experience in liquidating FF&E
and an extensive list of direct buyers.  Moreover, based
on evaluation of competing proposals, the Debtors'
management and the Debtors' advisors have concluded that
the fee based compensation structure under the FF&E

11

Agreement is not only reasonable, but represents the highest and otherwise best offer.

22.   The sale of the FF&E pursuant to the FF&E Agreement will be subject to competing bids, thereby enhancing the Debtors' ability to receive the highest or otherwise best value for their assets.   Consequently, the fairness and reasonableness of the consideration to be received by the Debtors will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid to an Agent for liquidating the FF&E.

23.   Finally, timely and adequate notice will be provided to the Debtors' major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding to serve as FF&E Agent and others whose interests are potentially implicated by the proposed sale thereof.

24.   In light of the foregoing, sale of the FF&E pursuant to an FF&E Agreement with the FF&E Agent is warranted under Bankruptcy Code section 363.

**II.   THE SALE PROCESS IS REASONABLE AND APPROPRIATE.**

25.   As noted above, Bankruptcy Code section
363(b)(1) provides that "[t]he trustee, after notice and
a hearing, may use, sell, or lease, other than in the
ordinary course of business, property of the estate."
11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code
section 105(a) provides that "[t]he Court may issue any
order, process, or judgment that is necessary or
appropriate to carry out the provisions of this title."
11 U.S.C. § 105(a).

26.   The Sale of the FF&E pursuant to the
terms reflected in the in the Proposal results from the
bids submitted for the opportunity to liquidate the
Debtors' FF&E.  The marketing process conducted by the
Debtors' advisors represents an accepted method of
selling the right to liquidate FF&E and, similarly, the
processes under the FF&E Agreement represent an accepted
method of selling FF&E.  Similar marketing processes
have been approved in other chapter 11 cases.  See, e.g.,
In re KB Toys, Inc., Case No. 08-13269 (KJC) (Bankr. D.
Del. January 14, 2009); In re WPRV-TV, Inc., 143 B.R.
315, 319 (D.P.R. 1991); In re Canyon Partnership, 55 B.R.

13

520, 524 (Bankr. S.D. Cal. 1985); In re Ancor

Exploration Co., 30 B.R. 808 (Bankr. N.D. Okla. 1983).

Moreover, other parties interested in bidding are

provided with an opportunity to submit a higher or

otherwise better proposal and, if necessary, the Debtors

will conduct an auction.

**III. THE SALE OF FF&E SHOULD BE FREE AND CLEAR OF CLAIMS, LIENS AND ENCUMBRANCES UNDER BANKRUPTCY CODE SECTION 363(f).**

27.   In the event the Court determines there

is a sound business justification for a transaction, the

Court may, pursuant to Bankruptcy Code section 363(f),

authorize the sale of the assets free and clear of any

interest.  Under section 363(f) of the Bankruptcy Code,

a debtor in possession may sell property free and clear

of any interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide   dispute; or

14

        (5) such entity could be compelled, in a legal
or equitable proceeding, to accept a money
satisfaction of such interest.

11 U.S.C. § 363(f).

    28.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  <u>See</u>, <u>e.g.</u>, <u>In re Laines</u>, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

    29.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  <u>See</u> <u>In re TWA, Inc.</u>, 322 F.3d 283, 289 (3d Cir. 2003); <u>see also</u> <u>United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)</u>, 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just <u>in rem</u> interests); <u>In re P.K.R. Convalescent Centers, Inc.</u>, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens.").  Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a

15

maximum recovery on its assets in the marketplace.  See
In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr.
D. Del. Mar. 27, 2001).

30.  As set forth above, the Debtors have a
sound business justification for selling the FF&E.
Indeed, allowing the Debtors to sell FF&E through
appointment of an agent that specializes in such sales
provides the most efficient and cost-effective means of
maximizing the value of the FF&E and, thus, is in the
best interests of the Debtors' estates.

31.  Additionally, the Debtors believe that
the notice procedures set forth herein satisfy the
requirements of Bankruptcy Code section 363(f).  If a
holder of a lien or other encumbrance receives the
requisite notice and does not object, such holder will
be deemed to have consented to the proposed sale and the
property then may be sold free and clear of such
holder's lien or other encumbrance, with such lien and
encumbrance to attach to the cash proceeds of the sale
in the order of their priority, with the same validity,
force, and effect which they had as against the FF&E
immediately before such transfer, subject to any claims

16

and defenses the Debtors may possess with respect

thereto.

32.   In summary, sale of the FF&E through the

FF&E Agent will minimize administrative costs in these

cases and speed the liquidation of FF&E.

**IV.   THE COURT SHOULD INVALIDATE ANY RESTRICTIONS IN
RESTRICTIVE DOCUMENTS THAT MAY IMPAIR THE DEBTORS'
ABILITY TO CONDUCT THE SALE OF FF&E.**

33.   In addition, the Sale should be free from

various restrictions that would impair the sale of FF&E.

The Locations are located on properties that are owned

and leased by the Debtors.  Thus, the Sale may be

inconsistent with certain provisions of such leases or

other documents (the "Restrictive Documents") with

respect to any of such leased premises (the "Premises")

that are intended to protect the image of the Location

or avoid disruption of normal commerce, including

provisions purporting to restrict or prohibit the

Debtors from conducting liquidation or similar sales

(the "Anti-Alienation Provisions").

34.   Liquidation sales, such as the Sale

described herein, are a routine part of chapter 11 cases

involving retail debtors.  Such sales are consistently

17

approved by courts, despite provisions of recorded
documents or agreements purporting to forbid such sales
in the ordinary course of business.  Indeed, Anti-
Alienation Provisions in leases have been deemed
unenforceable in other chapter 11 cases as impermissible
restraints on a debtor's ability to maximize the value
of its assets under Bankruptcy Code section 363.  See In
re R.H. Macy & Co., 170 B.R. 69, 77 (Bankr. S.D.N.Y.
1994); In re Ames Dep't Stores, Inc., 136 B.R. 357, 359
(Bankr. S.D.N.Y. 1992) (finding that "to enforce the
anti-GOB sale clause of the [l]ease would contravene
overriding federal policy requiring Debtors to maximize
estate assets by imposing additional constraints never
envisioned by Congress"); see also In re Tobago Bay
Trading Co., 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990)
(finding anti-going-out-of-business sales clause in
lease unenforceable); In re Lisbon Shops, Inc., 24 B.R.
693, 695 (Bankr. E.D. Mo. 1982) (same).

        35.  Thus, the Court should ensure that no
clause in any of the Restrictive Documents for the
Premises is an impediment to the Sale or the activities
connected therewith.  To the extent that such Anti-

18

Alienation Provisions exist in any Restrictive Documents,
they should not be permitted to interfere with, or
otherwise restrict the Debtors or the FF&E Agent from
conducting a Sale.

**V.    THE SALE SHOULD BE EXEMPT FROM CERTAIN FEDERAL,
       STATE, AND LOCAL LAWS, STATUTES, RULES AND
       ORDINANCES RELATED TO LIQUIDATION OR SIMILAR SALES.**

36.   The states in which any Sale will or may
take place may have certain requirements governing the
conduct of liquidation or similar sales that may apply
to Sale (the "Liquidation Sale Laws").  Typical statutes
and regulations provide that if a liquidation or
bankruptcy sale is court authorized, however, a company
need not comply with these Liquidation Sale Laws.
Moreover, pursuant to Bankruptcy Code section 105, the
Court has the authority to permit a Sale to proceed
notwithstanding contrary Liquidation Sale Laws.  See 11
U.S.C. § 105.

37.   The Debtors, therefore, request that,
pursuant to Bankruptcy Code § 105(a), this Court
authorize the Debtors to conduct Sale without the
necessity of, and the delay associated with, complying
with the Liquidation Sale Laws.

19

38.   Because the Debtors and their assets are subject to this Court's jurisdiction, this Court will be able to supervise Sale and the liquidation of FF&E.  The sale of the FF&E described herein is a legitimate method by which the Debtors can maximize the return from the sale of FF&E for the benefit of their estates and creditors.  Moreover, creditors are adequately protected by the notice of this Motion and the jurisdiction and supervision of this Court.  Accordingly, this Court should dispense with any requirement that the Debtors comply with technical requirements that are not intended to curtail persons from conducting sales with bankruptcy court supervision, including bulk sales laws.

39.   Moreover, 28 U.S.C. § 959, which requires trustees (and, thus, debtors in possession) to otherwise comply with state and other laws in performance of their duties, does not apply to the Sale.  Courts have held that 28 U.S.C. § 959 does not apply to debtors or their agents when they are liquidating assets.  <u>See</u>, <u>e.g.</u>, <u>Cal. State Bd. of Equalization v. Goggin</u>, 191 F.2d 726 (9th Cir. 1951) (holding that 28 U.S.C. § 959 does not apply to transactions that are in the nature of liquidation),

20

cert. denied, 342 U.S. 909 (1952); see also In re Borne

Chem. Co., Inc., 54 B.R. 1260, 135 (Bankr. D.N.J. 1984)

(holding that 28 U.S.C. § 959(b) is applicable only when

property is being managed or operated for purpose of

continuing operations).

      40.   Even if state or local law does not

expressly except bankruptcy sales from its ambit, the

Debtors submit, to the extent that such state or local

law conflicts with federal bankruptcy laws, that such

state or local law is preempted by the Supremacy Clause

of the United States Constitution.   To hold otherwise

would severely impair the relief otherwise available

under Bankruptcy Code section 363.   In concert with this

premise, bankruptcy courts have consistently recognized

that federal bankruptcy law preempts state and local

laws that contravene the underlying policies of the

Bankruptcy Code.   See, e.g., In re Shenango Group, Inc.,

186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and

debtors-in-possession have unique fiduciary and legal

obligations pursuant to the bankruptcy code . . . .  [A]

state statute [] cannot place burdens on them where the

result would contradict the priorities established by

21

the federal bankruptcy code."). While preemption of
state law is not always appropriate, as when the
protection of public health and safety is involved, it
is appropriate when, as here, the only state laws
involved concern economic regulation. In re Baker &
Drake, 35 F.3d 1348, 1353 (9th Cir. 1994)("[F]ederal
bankruptcy preemption is more likely . . . where a state
statute is concerned with economic regulation rather
than with protecting the public health and safety.").

41.   Here, Bankruptcy Code section 363, which
requires debtors to operate their businesses in a way
that maximizes recoveries for creditors, will be
severely undermined if the Court does not provide for
the waiver of the Liquidation Sale Laws. Similar relief
has been granted in other bankruptcy cases. See, e.g.,
In re FAO, Inc., Case No. 03-61826 (LK) (Bankr. D. Del.);
In re Golf Am. Stores, Inc., Case No. 02-12313 (PJW)
(Bankr. D. Del.); In re Bradlees, Inc., Case No. 00-
16033 (BRL) (Bankr. S.D.N.Y.); In re Big V Stores, Case
No. 00-4372 (PJW) (Bankr. D. Del.).

42.   Importantly, given the supervision of
this Court, the requested waiver will not unduly

22

undermine state and local requirements that would
otherwise apply to the Sale.  The Debtors only request
that this Court authorize the Debtors and/or the FF&E
Agent to conduct the Sale without the necessity of, and
the delay associated with, obtaining various state
licenses or permits, observing state and local waiting
periods or time limits, and/or satisfying any additional
requirements with respect to advertising, or conducting
a the Sale as a liquidation sale.  The Debtors fully
intend to be bound by and comply with remaining statutes
and regulations governing health and safety laws.

43.  The Debtors also request that no other
person or entity, including (but not limited to) any
lessor or federal, state, or local agency, department or
governmental authority, be allowed to take any action to
prevent, interfere with, or otherwise hinder
consummation of the Sale, or the advertising and
promotion (including through the posting of signs) of
such Sale.

23

## VI.   WAIVER OF THE TEN-DAY STAYS PROVIDED BY BANKRUPTCY RULES 6004 SHOULD BE WAIVED.

44.   Bankruptcy Rule 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

45.   The Debtors request that the Court waive the ten-day stay of Bankruptcy Rules 6004 with respect to the sale of FF&E following entry of this the Order approving such transaction.  By waiving such requirements, the Debtors and any purchaser will be able to immediately close the transactions, which will in turn save the Debtors continued accrual of administrative expenses and thereby benefit the Debtors' estates.

### NOTICE

46.   Notice of this Motion has been provided to those parties who have requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local

24

Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain

Notice, Case Management, and Administrative Procedures

(Docket No. 130; the "Case Management Order")), as well

as (a) all entities known to have expressed an interest

in a transaction regarding the FF&E; and (b) all federal,

state, and local regulatory or taxing authorities that

have a reasonably known interest in the relief requested

by the Motion.   The Debtors submit that, under the

circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

47.   Pursuant to Local Bankruptcy Rule 9013-

1(G), and because there are no novel issues of law

presented in the Motion and all applicable authority is

set forth in the Motion, the Debtors request that the

requirement that all motions be accompanied by a

separate memorandum of law be waived.

### NO PRIOR REQUEST

48.   No previous request for the relief sought

herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request
that the Court enter an Order granting the relief
requested herein, and such other and further relief as
may be just and proper.

Dated: February 6, 2009
      Richmond, Virginia   SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM, LLP
                                 Gregg M. Galardi, Esq.
                                 Ian S. Fredericks, Esq.
                                 P.O. Box 636
                                 Wilmington, Delaware 19899-0636
                                 (302) 651-3000

                                     - and -

                                 SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM, LLP
                                 Chris L. Dickerson, Esq.
                                 333 West Wacker Drive
                                 Chicago, Illinois 60606
                                 (312) 407-0700

                                     - and -

                                 MCGUIREWOODS LLP

                               /s/ Douglas M. Foley          .
                               Dion W. Hayes (VSB No. 34304)
                               Douglas M. Foley (VSB No. 34364)
                               One James Center
                               901 E. Cary Street
                               Richmond, Virginia 23219
                               (804) 775-1000

                               Counsel for Debtors and Debtors
                               in Possession

26

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                    RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363
(I) AUTHORIZING DEBTORS TO ENTER INTO AN AGREEMENT IN
CONNECTION WITH SALE OF FURNITURE, FIXTURES AND
EQUIPMENT, SUBJECT TO HIGHER OR OTHERWISE BETTER
PROPOSALS; (II) APPROVING SALE OF FURNITURE, FIXTURES
AND EQUIPMENT FREE AND CLEAR OF ALL INTERESTS; AND
(III) GRANTING RELATED RELIEF**

          Upon the motion (the "Motion")[1] of the Debtors,

for entry of an order, under Bankruptcy Code

---
[1] Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Motion.

sections 105 and 363 and Bankruptcy Rule 6004

(I) Authorizing the Debtors to Enter Into An Agreement

in Connection With Sale of Furniture, Fixtures and

Equipment, Subject to Higher or Otherwise Better

Proposals, (II) Approving Sale of Furniture, Fixtures

and Equipment Free and Clear of All Interests, and

(III) Granting Related Relief; and the Court having

reviewed the Motion; and the Court having determined

that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors,

and other parties in interest; and the Court having

conducted a hearing on the Motion on February 17. 2009;

and all parties in interest having been heard, or having

had the opportunity to be heard, regarding the Proposal

and the FF&E Agreement, and the transaction contemplated

thereby; and it appearing that proper and adequate

notice of the Motion has been given and that no other or

further notice is necessary; and upon the record herein;

and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.     The court has jurisdiction over the
Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this
matter is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2)(A).

B.     Venue of these cases and the Motion in
this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     Good and sufficient notice of the relief
sought in the Motion has been given and no further
notice is required.  A reasonable opportunity to object
or be heard regarding the relief requested in the Motion
has been afforded to those parties that requested notice
pursuant to Bankruptcy Rule 2002 and the Core Group (as
defined in the Case Management Order), as well as
(i) all entities known to have expressed an interest in
a transaction regarding the FF&E; and (ii) all federal,
state, and local regulatory or taxing authorities that
have a reasonably known interest in the relief requested
by the Motion.

---

2 Findings of fact shall be construed as conclusions of law and
  conclusions of law shall be construed as findings of fact when
  appropriate.  See Fed. R. Bankr. P. 7052.

D.   The Debtors' proposed notice as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

E.   The Debtors have demonstrated a compelling and sound business justification for authorizing the sale of the FF&E under the circumstances, timing, and procedures set forth herein and in the Motion.

F.   The process by which the Debtors and their professionals solicited bids from various national liquidation firms and other parties that specialize in liquidating FF&E and selected the highest or otherwise best proposal was fair and reasonable and in the best interests of the Debtors and their estates.

G.   Entry into the FF&E Agreement constitutes the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors, and all other parties-in-interest.

H.   The compensation of the FF&E Agent under the FF&E Agreement is fair and reasonable, and payment

4

of such fee is in the best interests of the Debtors, their estates and creditors, and all other parties-in-interest.

I.   The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties-in-interest herein; and it is therefor

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The relief requested in the Motion is GRANTED.

2.   Pursuant to Bankruptcy Code sections 105(a) and 363(b), the Debtors are authorized to enter into the FF&E Agreement, _provided_ _that_ the terms of the FF&E Agreement are consistent with the Proposal, attached hereto as Exhibit A, the Motion and this Order. The Debtors are authorized to pay the fees due to and reimburse expenses actually paid by the FF&E Agent pursuant to the FF&E Agreement.

3.   The Sale of the FF&E is hereby approved and authorized in all respects.

4.   Pursuant to Bankruptcy Code sections 363(b) and 363(f), the sale of the FF&E shall be on an

"AS IS WHERE IS" basis free and clear of all interests,

including liens, claims, and encumbrances ("Interests"),

with all such Interests to attach to the cash proceeds

of the Sale in the order of their priority, with the

same validity, force, and effect which they had as

against the FF&E immediately before such transfer,

subject to any claims and defenses the Debtors may

possess with respect thereto.

        5.   To the extent FF&E Agent is conducting

the Sale in violation of any provision of any of the

Debtors' leases, all of the Debtors' landlords are

directed to accept this Order as binding authority

authorizing the Debtors and the FF&E Agent to conduct

the Sale at the Locations, including, without limitation,

conducting and advertising of the Sale in accordance

with the Proposal, the FF&E Agreement and this Order.

        6.   No approval, license or permits of any

governmental authority shall be required to conduct the

Sale.

        7.   If any parties or persons, including but

not limited to landlords, subtenants, utility companies,

governmental agencies, sheriffs, marshals or other

public officers, creditors and all those acting for or

on their behalf, believe that cause exists to: (a)

prohibit FF&E Agent from advertising the Sale, to the

extent same is consistent with the Agency Agreement, (b)

in any way interfere with or otherwise impede the

conduct of the Sale at the Locations or the use or

maintenance of the Debtors' assets of the Debtors

located at the Locations, or (c) institute any action or

proceeding in any court or other administrative body

having as its objective the obtaining of an order or

judgment against the Debtors, FF&E Agent or a landlord

that might in any way directly or indirectly obstruct or

otherwise interfere with or adversely affect the conduct

of the Store Closing Sales and/or seek to recover

damages for breach(es) of covenants or provisions in any

lease or sublease based upon any relief authorized

herein, this Court shall retain exclusive jurisdiction

to resolve such dispute, and such parties or persons

shall take no action against the Debtors, FF&E Agent,

the landlord related the Sale until this Court has

resolved such dispute. This Court shall hear the request

of such persons or parties with respect to any such

disputes on an expedited basis, as may be appropriate
under the circumstances.

      8.    The Sale at the Locations shall be
conducted by the Debtors and FF&E Agent notwithstanding
any restrictive provision of any lease, sublease or
other agreement relative to occupancy affecting or
purporting to restrict the conduct of the Sale, the
rejection of leases, abandonment of assets or "going
dark" provisions; <u>provided</u>, <u>however</u>, that nothing in
this Order shall impact any objection a landlord may
have to assumption, assignment or rejection of their
respective lease or to any proposed cure amount or
rejection damages claim in association with such
assumption, assignment or rejection.

      9.    The Debtors and/or the FF&E Agent (as the
case may be), are authorized and empowered to transfer
the FF&E among the Locations, notwithstanding anything
in applicable non-bankruptcy law to the contrary.

      10.    No bulk sale or similar law shall
prohibit the Debtors or the FF&E Agent from taking
action contemplated by the Proposal or the FF&E
Agreement.

11.   Provided that the Sale is conducted in
accordance with the terms of this Order, the Proposal,
and the FF&E Agreement, the Debtors, their landlords and
FF&E Agent are presumed to be in compliance with the
requirements of any applicable liquidation sales, bulk
sale laws or any other laws that purport to regulate,
prohibit, restrict, or in any way limit FF&E Agent's use
of (i) signwalkers; (ii) interior Location signage and
banners; and (ii) exterior banners (each a "GOB Law,"
and together, the "GOB Laws").  To the extent there is a
dispute arising from or relating to the Sale, this Order,
the Proposal, or the FF&E Agreement (each a "Reserved
Dispute"), which dispute relates to any GOB Law, this
Court shall retain exclusive jurisdiction to hear and
determine all such Reserved Disputes.

12.   The Debtors are authorized to take any
and all actions that are necessary or appropriate to
consummate the transactions contemplated by this Order,
all without further order of this Court.

13.   This Order shall be effective immediately
upon entry, and any stay of orders provided for in

9

Bankruptcy Rule 6004(h) and any other provision of the

Bankruptcy Code or Bankruptcy Rules is expressly lifted.

14.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

15.   This Court shall retain jurisdiction with

respect to all matters arising or related to the

implementation of this Order.

Dated:  Richmond, Virginia
        February _____, 2009


_____
        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                        /s/ Douglas M. Foley

11

## <u>Exhibit A</u>

**(FF&E Proposal)**

## Liquid Asset
### Partners LLC

## Liquidations, Auctions & Negotiated Sales!
### 4700 - 36th St., Grand Rapids, MI 49512
### 616-719-5917 ph      616-719-5918 fax

February 5th, 2009

**VIA E-MAIL: <u>Scott.Stegenga@fticonsulting.com</u>**
**Mr. Scott Stegenga**

> **Re: Revised:** *Circuit City's 7 Distribution Centers, 4 Service Centers, 2 Corporate Offices, 2 Xdocks, and 1 Call Center of Equipment*

Gentlemen:

Please accept this correspondence as the proposal of  Liquid Asset Partners LLC with regard to the liquidation of the assets, including warehouse equipment, electronics and office equipment, in 7 DC's, 4 SVC's, 2 Corporate Offices, 2 X-docks, and 1 Call Center located throughout the country (the "Facilities").   We greatly appreciate this proposal opportunity and sincerely hope we will be able to provide these services on your behalf.

<u>**Introduction**</u>

As you may be aware, Liquid Asset Partners LLC is a nationwide liquidation and consulting firm, comprised of professionals with a diverse knowledge of industries. During the past 5 years, the team from Liquid Asset Partners has consulted on or purchased equipment assets (similar to this project) for liquidation which exceeded one hundred million dollars in sales.  Some of these transactions include Penn Traffic's 2 Distribution Centers in Columbus (1million Sq Ft.), Kmart's World Corporate Office(1mm Sq Ft.) & Warehouse in Detroit, 33 Office Max DC's, Bugle Boys 600,000 sq ft DC in Atlanta, Amazing Savings DC in NJ, Franks Nursery DC in Indianapolis, 300+ Builders Square Warehouse Stores (120,000 sq ft each), Over 10,000 retail stores of Fixtures & Equipment, and numerous other Corporate Offices & Distribution Centers.

Competitors may paint a blue sky picture of <u>"potential"</u> sale recovery. Is this <u>"potential"</u> recovery realistic from competitors who may be stretched thin in the current GOB environment? Although this project does hold potential for a significant upside, we base our estimates on realistic numbers. We strive to give you a conservative estimate and currently have our experienced team of Warehouse & Equipment liquidation specialists fully available to devote the proper attention to maximize this project return and upside for Circuit City.

### Approach

We strive to put together a project that provides Circuit City the cooperation, flexibility, and attention to detail required to maximize the sale of assets in the changing time frames discussed. We are prepared to deploy our team of veteran liquidators, each experienced in the liquidation of warehouse and office equipment, to each site to ensure a safe & successful sale. To maximize the net return we will utilize a comprehensive, tireless and complete marketing effort, bringing a "no stone unturned" mentality to the approach and scope of the project.  We use a multitude of media and advertising channels to insure the proper exposure to the sale and to the project overall, while always protecting the integrity and reputation of the transaction at hand.  Our marketing strategies generally include: local, regional and international newspaper insertions, nationwide internet announcement, trade listings, web and Internet notifications, email notices, and direct telephone solicitations.  Our list of direct buyers for Warehouse & Distribution Center equipment encompasses 1,000+ warehouse equipment dealers, 300+ Conveyor/Automation dealers, and 15,000+ equipment end users.

We would handle all aspects of the transaction from concept through execution, including preparing and placing all advertising and marketing materials, overseeing personnel and operational efforts, onsite liquidation execution and support services, property removal and building clean-up supervision, and providing detailed financial accounting and support documentation.  Our services generally also include securing and identifying all assets for sale, preparing the liquidation materials, and providing all other related and/or necessary services.  Finally, we carry insurance and will require that our purchasers provide proof of insurance before removing any assets from the Facilities.

### Compensation Structure

We propose two similar compensation structures. First we propose a scenario under which our compensation would be equal to nine per cent (9%) of the net proceeds of the sale and any buyers premium collected would be included in the gross sale totals.  Second we propose a commission structure under which our compensation would be equal to two per cent (2%) of the net proceeds of the sale. Under this second scenario, we would also charge buyers a customary buyer's premium (generally equal to ten per cent (10%)). Any such buyer's premium collected would be retained by us and not be treated as part of the gross proceeds from the sale subject to the commission set forth above.

Under either commission scenario, we would deduct for direct sale related expenses up to the amounts noted below from the sale proceeds. Circuit City would not be required to pay these sale expenses up front. These expenses would include expenses for marketing and advertising, accounting, labor and personnel (including supervisors), travel, and related expenses.  As noted above, all occupancy and related costs (i.e., rents, mortgages, property insurance, utilities, phone, trash, security, etc.) would remain your responsibility for the duration of the sale period.

### Costs Per Location
2 Week Service Center Liquidation: up to $9,500 per location
2 Week Distribution Center Liquidation: up to $19,500 per location
2 Week Office Complex Liquidation: up to $19,500 per location
6 Week Distribution Center Liquidation: up to $44,500 per location
6 Week Office Complex Liquidation: up to $35,500 per location

Under this scenario, assuming a start date no later than two weeks from today, we would require unrestricted access to the Facilities. We are prepared to meet your requirements for any facilities that need a 2 week sale, but we feel to maximize the return to Circuit City on this project a 6-8 week time frame would be ideal for certain DC's or Office Complex's. We understand some facilities are leased and therefore, would require consent from the court or landlord of each Facility to the sale process. Finally, the proposal is subject to the execution of a definitive agreement reasonably acceptable to the parties.

**Conclusion**

We believe that these assets will make for a terrific sale and are extremely excited about the prospects of this event.  No matter what value may exist within the Facilities, we believe that our sale methods and strategies will extract the highest recovery within the time frame allowed.  We can promise that no company or individuals will work with more vigor, attention, and diligence to assure the success of this sale.  We pride ourselves in our service philosophy and would welcome the opportunity to provide services on your behalf.

Please let me, or any other member of our group, know if you have any further questions, issues, or concerns. Thank you again for your time and continued consideration in this matter. I look forward to hearing from you.

Sincerely,

*Bill Melvin Jr.*

Bill Melvin Jr.
CEO

CC:    Bill Melvin Sr.
        Chairman

## Exhibit B

**(List of Locations)**

| List of Locations | | | | | |
|---|---|---|---|---|---|
| Location Number | Location Name | Address | City | State | Zip |
| 755 | Marion DC | 1100 Circuit City Rd | Marion | IL | 62959 |
| 353 | Industry DC | 680 S Lemon Ave | Walnut | CA | 91789 |
| 567 | Ardmore DC | 1901 Cooper Dr | Ardmore | OK | 73401 |
| 775 | Orlando DC | 19925 Independence Blvd | Groveland | FL | 34736 |
| 255 | Bethlehem DC | 4000 Township Line Rd | Bethlehem | PA | 18020 |
| 344 | Livermore DC | 400 Longfellow Court | Livermore | CA | 94550 |
| 335 | Mid-Atlantic DC | 14301 Mattawoman Dr | Brandywine | MD | 20613 |
| 73 | Atlanta Svc Ctr | 1323 West Corporate Court | Lithia Springs | GA | 30122 |
| 34 | Dallas Svc Ctr | 3738 Duncanville Rd | Dallas | TX | 75236 |
| 45 | Philadelphia Svc Ctr | 400 Crossing Drive | Bristol | PA | 19007 |
| 754 | Kearny Xdock | 136 Paris St #158 | Newark | NJ | 07105 |
| 325 | Boston Xdock 750 | 165 Grove St | Franklin | MA | 2038 |
| 754 | Kearny Xdock | 136 Paris St #158 | Newark | NJ | 07105 |
| 325 | Boston Xdock 750 | 165 Grove St | Franklin | MA | 02038 |
|  | Corporate Headquarters | 9950 Mayland Dr | Richmond | VA | 23233 |