including requirements relating to the proposed assignee's or subtenant's net worth, and (vi) the Premises are not subdivided into more than two (2) separate premises, both of which must meet defined parameters of usable, marketable space. Unless otherwise agreed to in writing by Landlord, no assignment, subletting, licensing or concessioning by Tenant shall reduce the liability of Tenant under this Lease to the extent that such liability is not increased as a result of any amendment or modification to this Lease between Landlord and any assignee. However, in the event of an assignment by Tenant to an assignee having an Adequate Net Worth (as defined below), or to an assignee whose obligations under this Lease are guaranteed by a guarantor having an Adequate Net Worth, all liability of the assigning Tenant under this Lease accruing from and after the effective date of such assignment shall terminate. "<u>Adequate Net Worth</u>" shall mean a tangible net worth, as of the effective date of such assignment, of at least Two Hundred Million Dollars ($200,000,000).

(b) Except with respect to any transaction covered under Sections 17.01(c) or 17.02, if Tenant proposes to assign this Lease or sublet all or part, in a single transaction, the whole of the Premises, it shall first give notice thereof (the "<u>Assignment/Subletting Notice</u>") to Landlord, which notice shall specify the name and address of the proposed assignee or sublessee and the proposed use of the Premises to be made by such assignee or sublessee, together with a statement certified by Tenant of the amount of the Unamortized Costs. Landlord shall have the right to terminate this Lease by giving notice to Tenant ("<u>Landlord's Termination Notice</u>") thereof within sixty (60) days after receipt of an Assignment/Subletting Notice from Tenant. If Landlord elects to terminate this Lease, then the Lease shall automatically terminate on the ninetieth (90th) day (the "<u>Termination Date</u>") after the date on which Tenant receives Landlord's Termination Notice without further liability on the part of either Landlord or Tenant, <u>except</u>: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) Landlord shall (which obligation shall survive the termination of this Lease), within thirty (30) days after receiving a statement from Tenant showing the Unamortized Costs, reimburse Tenant for the Unamortized Costs. If Landlord fails to pay to Tenant the Unamortized Costs within the thirty-day period provided for above and such failure to pay continues through the Termination Date, then Tenant shall have the option of (y) treating this Lease as being terminated, in which case Landlord's obligation to pay to Tenant the Unamortized Costs shall expressly survive the termination of this Lease, or (z) treating Landlord's Termination Notice as being null and void, in which event Landlord shall be deemed to have waived Landlord's right to terminate under this Section 17.01(b) and Tenant shall be free to assign this Lease or sublet the entire Premises in accordance with the Assignment/Subletting Notice. If Landlord does not give the Landlord's Termination Notice within the aforesaid sixty (60) day period, then Landlord shall conclusively be deemed to have waived its termination rights under this Section 17.01(b) with respect to such proposed assignment or subletting transaction, and Tenant may assign this Lease or sublet the entire Premises in accordance with its Assignment/Subletting Notice.

(c) In addition to, and not in limitation of, Tenant's other rights set forth in this Article XVII, Tenant shall have the right from time to time, without the consent of Landlord and without triggering Landlord's termination right under Section 17.01(b), to assign Tenant's interest in this Lease and/or to sublet or license all or any portion of the Premises: (i) to an Affiliate of Tenant; (ii) to any entity which purchases all or substantially all of the assets of Tenant or any of its Affiliates; (iii) to any entity which purchases Tenant's interest in the majority of stores owned or operated by Tenant or its Affiliate(s) in the States of Michigan, Ohio

34

and Illinois; (iv) in conjunction with any merger, acquisition, consolidation or public offering of stock or other interests involving Tenant or its Affiliate(s); and/or (v) as may be required by any Laws.

SECTION 17.02 Collateral Assignment. In addition to Tenant's other rights set forth in this Article XVII, a collateral assignment of Tenant's interest in this Lease by Tenant to one (1) or more Lenders (hereinafter defined), as collateral security for an indebtedness or other obligation of Tenant or its Affiliates shall be permitted and Landlord shall, at no cost to Landlord, execute all documentation reasonably requested by Tenant or any such Lender in connection therewith. In addition, Tenant shall have the right, without Landlord's consent, to grant to an Affiliate of Tenant a license to operate all of Tenant's business operations at the Premises, without such Affiliate having assumed any liability for the performance of Tenant's obligations under this Lease. "Lender" shall mean a state or federally regulated: bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender.

SECTION 17.03 Cure Rights of Original Tenant. If Tenant assigns Tenant's interest in this Lease and the assignor remains liable under this Lease following such assignment, then Landlord, when giving notice to said assignee or any future assignee in respect of any default, shall also give a copy of such notice to the Tenant originally named in this Lease (the "Original Tenant"), and no notice of default shall be effective until a copy thereof is so given to Original Tenant. Original Tenant shall have the right (but not the obligation) to cure such default, which cure period shall be the same cure period as applicable to Tenant.

SECTION 17.04 Recognition Agreement. If Tenant subleases all or 10,000 square feet or more of the Premises for a term of at least five (5) years, then, notwithstanding any other provisions of this Lease, Landlord shall, upon Tenant's request, execute and deliver an agreement among Landlord, Tenant and each such subtenant in the form of Exhibit I, in recordable form (the "Recognition Agreement").

## ARTICLE XVIII

## DEFAULT

SECTION 18.01 Tenant's Default.

(a) If Tenant defaults in the payment of any installment of Rent and such default is not cured within fifteen (15) days after receipt of notice from Landlord thereof or if Tenant defaults in the observance of any other material covenant or agreement herein contained and Tenant shall not, within thirty (30) days after receipt of notice thereof from Landlord, cure or commence to cure such default (it being intended in connection with a default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Tenant within which to cure same shall be extended for such period as may be reasonably necessary to complete same with all due diligence), then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default:

35

(i) terminate this Lease, without any right by Tenant to reinstate its rights by payment of Rent or other performance of the terms and conditions hereof and upon such termination Tenant shall immediately surrender possession of the Premises to Landlord, and Landlord shall immediately become entitled to receive from Tenant, as liquidated, agreed final damages, an amount equal to the difference between the aggregate of all rentals reserved under this Lease for the balance of the Term, and the fair rental value of the Premises for that period (both discounted to present value at an annual interest rate equal to eight percent (8%)), determined as of the date of such termination; or

(ii) with or without terminating this Lease, as Landlord may elect, re-enter and repossess the Premises, or any part thereof, and lease them to any third-party upon commercially reasonable terms and conditions, for a term within or beyond the Term; provided, however, that any such reletting prior to termination shall be for the account of Tenant, and Tenant shall remain liable for (y) Annual Minimum Rent, Tenant's Share of CAM Costs, Tenant's Share of Taxes, and other sums which would be payable hereunder by Tenant in the absence of such expiration, termination or repossession, less (z) the net proceeds, if any, of any reletting effected for the account of Tenant after deducting from such proceeds all of Landlord's reasonable expenses (which expenses shall be amortized over the term of the new tenant's lease and only the portion thereof allocable to the balance of the Term shall be so deducted by Landlord hereunder) in connection with such reletting (including, without limitation, all repossession costs, reasonable brokerage commissions, reasonable attorneys' fees and expenses, reasonable alteration costs and expenses of preparation for such reletting).

(b) If the Premises is at the time of default sublet or leased by Tenant to others, Landlord may, as Tenant's agent, collect rents due from any subtenant or other tenant and apply such rents to Rent due hereunder. Any monthly deficiencies payable by Tenant shall be paid monthly on the date herein provided for the payment of Annual Minimum Rent. After the lapse of all applicable grace periods, Landlord may cure any Tenant defaults (at Tenant's expense) and if Landlord reasonably expends any money to cure a default by Tenant, then Tenant shall, on demand, pay Landlord the amount so paid by Landlord together with interest thereon at the rate of two percent (2%) per annum in excess of the Prime Rate as established by the Wall Street Journal (the "Default Rate").

(c) Landlord shall also be entitled to all other rights and remedies available to Landlord at law, in equity or otherwise, except as otherwise expressly set forth in this Lease. Landlord expressly waives (i) any right to accelerate any element of Rent except as expressly set forth in Section 18.01(a)(i) above, (ii) any right to recover consequential or punitive damages as a result of a Tenant default or any other act or omission of Tenant, and (iii) all rights to any so-called "landlord's lien" or any similar statutory lien, granting Landlord a lien on any of Tenant's Property for the performance of any obligations of Tenant. At the request of Tenant, Landlord shall promptly confirm such waiver(s) by a writing in form satisfactory to Tenant. Anything contained in this Lease to the contrary notwithstanding, Landlord shall use all reasonable efforts to relet the Premises or any portion thereof to mitigate Landlord's damages to which Landlord would otherwise be entitled to as a result of a Tenant default. However, Landlord shall not be obligated to (a) lease the Premises to a tenant for a rent that is less than prevailing market rates,

36

(b) lease to a tenant whose use, reputation, experience or financial status Landlord deems undesirable, (c) re-let the Premises in preference to leasing other stores Landlord may have available, or (d) re-let the Premises on terms which are not satisfactory to Landlord.

SECTION 18.02 <u>Additional Landlord Remedies Due to Construction Delays by Tenant</u>.

(a) Intentionally omitted.

(b) If Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following the Possession Date, then Landlord shall be entitled to terminate this Lease upon sixty (60) days prior notice to Tenant unless Tenant, within such sixty (60) day period, achieves Substantial Completion. If Landlord terminates this Lease, then there shall be no further liability on the part of Landlord or Tenant, <u>except</u> for those obligations that expressly survive the expiration or other termination of this Lease.

SECTION 18.03 <u>Landlord's Default</u>.

(a) If Landlord shall (i) default in the observance of any material covenant or agreement herein contained, breach any material representation or warranty under this Lease, or shall fail to pay any charges or other amounts required to be paid by Landlord under this Lease (including, without limitation, any insurance premiums or any reimbursements due to Tenant) and Landlord does not cure such default within fifteen (15) days (as to a monetary default) or thirty (30) days (as to a non-monetary default), as applicable, after notice thereof by Tenant (it being intended in connection with a non-monetary default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Landlord within which to cure same shall be extended for such period as may be necessary to complete same with all due diligence), or (ii) fail to pay when due any Taxes, ground rent or any other charge or assessment, the lien of which is prior to the lien of this Lease, then Tenant shall have the right (but shall not be obligated) to:

(w) perform such obligation(s) of Landlord in accordance with the applicable provisions of this Lease on behalf of, and at the expense of Landlord, provided such work shall be done by either Tenant or an independent third party at commercially reasonable rates and Tenant provides Landlord with copies of invoices and other documentation Landlord reasonably requests;

(x) bring suit for the collection of any amounts for which Landlord is in default, seek injunctive relief, or seek specific performance for any other covenant or agreement of Landlord;

(y) offset against the Annual Minimum Rent only all amounts owed by Landlord to Tenant and/or the amounts reasonably expended by Tenant performing Landlord's obligations under this Lease, including costs and reasonable attorneys' fees, together with interest thereon at the Default Rate from the date of the outlay until paid, and, at Tenant's option, extend the Term if necessary for Tenant to fully recoup all amounts owed by Landlord to Tenant, provided that prior to Tenant offsetting against any Annual Minimum Rent, Tenant has demanded payment from Landlord and delivered to

37

Landlord copies of invoices and other reasonable documentation of such amounts and Landlord has not paid same within thirty (30) days after receipt from Tenant; and/or

(z) terminate this Lease, without waiving its rights to damages for Landlord's Default, provided that: (1) Landlord's default materially interferes with the normal conduct of any business operations in the Premises, (2) Landlord's default is not reasonably capable of being cured by Tenant, and (3) subject to Section 18.02(b), Tenant gives notice of Landlord's default to any Mortgagee of whom Landlord shall have previously given Tenant notice (including its address), and such Mortgagee shall not have cured Landlord's default within the time period provided in Section 18.02(b).

Notwithstanding the foregoing, Tenant's right of offset under clause (y) above shall be limited to fifty percent (50%) of each installment of Annual Minimum Rent next becoming due unless insufficient Term remains to fully recoup the amounts owed by Landlord to Tenant on the amounts expended by Tenant, together with interest as provided above, in which event the amount of Tenant's offset shall be increased so that Tenant is able to fully recoup all such amounts expended by Tenant, together with interest as aforesaid, prior to the expiration of the Term.

(b) If a Mortgagee shall have notified Tenant in writing that it is the holder of such lien on the Landlord's Parcel and shall so request, then Tenant shall give a similar notice to such Mortgagee and such Mortgagee shall have the same time period allowed to Landlord under this Lease to correct or remedy such default.

(c) Tenant shall also be entitled to all other rights and remedies available to Tenant at law, in equity or otherwise, except as otherwise expressly set forth in this Lease. Tenant expressly waives any right to recover consequential or punitive damages as a result of a Landlord default or any other act or omission of Landlord.

(d) Notwithstanding the foregoing, if, in Tenant's reasonable judgment, a condition posing imminent risk of liability or material harm to persons or property or material disruption to the normal conduct of any business operations in the Premises shall exist, then Tenant may exercise, at its election and without prior notice to Landlord, any or all of the remedies set forth in clauses (w), (x) and (y) above, provided, however, that Tenant shall use best efforts to contact Landlord or Landlord's property manager within 24 hours of the occurrence of such condition prior to Tenant attempting to cure or remedy such problem.

SECTION 18.04 Intentionally omitted.

SECTION 18.05 Additional Tenant Remedies Due to Landlord's Failure to Pay the Landlord Reimbursement.

(a) If Landlord fails to pay the Landlord Reimbursement in full on or before the Reimbursement Due Date, then Landlord shall be in default under this Lease, and no Rent shall be due or owing to Landlord until the Landlord Reimbursement is paid to Tenant, together with interest which shall accrue on the unpaid Landlord Reimbursement at the Default Rate commencing on the day after the Reimbursement Due Date.

38

SECTION 18.06 Waiver; Non-Exclusive Remedies. The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on any matters arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, and/or any claim of injury or damage. Tenant hereby expressly waives any and all rights of redemption granted by or under any present of future law if this Lease is terminated or Tenant is evicted or dispossessed by reason of violation by Tenant of any of the provisions of this Lease. Except as otherwise expressly set forth in this Lease, no right or remedy herein conferred upon or reserved to Landlord or Tenant is intended to be exclusive of any other right or remedy in this Lease or by law or in equity provided, but each shall be cumulative and in addition to every other right or remedy given in this Lease or now or hereafter existing at law or in equity or otherwise.

## ARTICLE XIX

## SUBORDINATION, TRANSFER OF INTEREST

SECTION 19.01 Subordination. Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any first mortgage or deed of trust for the benefit of any Mortgagee hereafter encumbering or affecting all or any portion of the Landlord's Parcel, as well as to any future ground or underlying leases encumbering or affecting all or any part of the Landlord's Parcel; provided, however, that (a) each Mortgagee shall first execute and deliver to Tenant a subordination, non-disturbance and attornment agreement in substantially the form attached as Exhibit J hereto, in recordable form, and (b) any Ground Lessor shall execute (and shall obtain the written consent of any Mortgagee) and deliver to Tenant a fee owner recognition agreement in a form reasonably satisfactory to Tenant, which shall include the following provisions: (i) provided that Tenant is not in default of any terms pursuant to this Lease, the Ground Lessor will not, in the exercise of any of the rights arising or which may arise out of such lease, disturb or deprive Tenant in or of its possession or its rights to possession of the Premises or of any right or privilege granted to or inuring to the benefit of Tenant under this Lease; (ii) in the event of the termination of the Ground Lease (as defined below), Tenant shall not be made a party in any removal or eviction action or proceeding, nor shall Tenant be evicted or removed of its possession or its right of possession of the Premises, and this Lease shall continue in full force and effect as a direct lease between the Ground Lessor and Tenant for the remainder of the Term and on the same terms and conditions as contained herein, without the necessity of executing a new lease; and (iii) Landlord and Tenant shall have the right to execute any amendment to this Lease which is specifically required hereunder and the Ground Lessor shall recognize and be bound thereto. "Ground Lessor" shall mean the landlord under any existing or future ground or underlying lease(s) affecting all or any part of the Landlord's Parcel (such ground or underlying lease(s) is referred to as the "Ground Lease(s)"). "Mortgagee" shall mean any state or federally regulated bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender, which is not an Affiliate of Landlord, and which holds a mortgage on the Landlord's Parcel or is the beneficiary under a deed of trust encumbering the Landlord's Parcel (such mortgage or deed of trust is referred to as the "Mortgage").

SECTION 19.02 Existing Mortgages and Ground Leases. If a Mortgage or any Ground Lease encumbers the Landlord's Parcel or any part thereof on the Effective Date, then, within

39

O:\dkg\Acadia\Madison Heights\Circuit City Lease\executioncopy.DOC

sixty (60) days after the Effective Date, Landlord shall deliver to Tenant, in recordable form: (a) a subordination, non-disturbance and attornment agreement substantially in the form attached as <u>Exhibit J</u>, in recordable form, executed by each and every Mortgagee, and (b) a fee owner recognition agreement in the form and content described in Section 19.01(b), in recordable form, executed by any Ground Lessor (and, as may be required, consented to by the Mortgagee). Should Landlord fail to so deliver such instrument(s) as provided above, provided Tenant shall have negotiated in good faith, Tenant shall have the right, by notice given to Landlord at any time prior to the date on which such instrument(s) are delivered, to terminate this Lease without further liability on the part of Landlord or Tenant, <u>except</u>: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) Landlord shall (which obligation shall survive the termination of this Lease), within ten (10) business days following Tenant's termination notice, reimburse Tenant for all its reasonable, third-party costs and expenses incurred in connection with this Lease (including, without limitation, costs associated with the preparation and review of plans and specifications, the performance of Tenant's Work, and attorneys' fees), not to exceed Seventy-Five Thousand Dollars ($75,000).

SECTION 19.03   Transfer of Interest. Landlord shall provide Tenant with notice upon or immediately after any sale or transfer of Landlord's interest in the Landlord's Parcel. Landlord shall require the buyer or transferee to assume in writing all of the obligations of Landlord under this Lease. Notwithstanding Section 23.13, Landlord shall continue to remain liable for all accrued liability, if any, up to the date of such sale or transfer. Notwithstanding anything contained herein to the contrary, Landlord shall continue to remain liable hereunder after such sale or transfer unless the buyer or transferee has expressly assumed in writing all of the obligations of Landlord under this Lease.

SECTION 19.04   Tenant Estoppel Certificates. Tenant agrees, within thirty (30) days of Landlord's request, to execute and deliver to Landlord, proposed purchaser or any Mortgagee, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Tenant's actual knowledge and belief that the Landlord is not in default under this Lease, and that there are no offsets or defenses to enforcement of this Lease, except as may be stated in the certificate, and (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid.

SECTION 19.05   Landlord Estoppel Certificates. Landlord agrees, within thirty (30) days of Tenant's request, to execute and deliver to Tenant or any assignee, transferee, subtenant or Lender, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Landlord's actual knowledge and belief that Tenant is not in default under this Lease, and that there are no offsets or defenses to enforcement of this Lease, except as may be stated in the certificate, and (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid.

SECTION 19.06   Payments. If Landlord shall request Tenant to execute more than one (1) subordination, attornment and recognition agreement and more than one (1) estoppel

certificate in any twelve (12) month period, then, as a condition to Tenant's obligations under Sections 19.01 or 19.04, as the case may be, Landlord shall pay to Tenant Five Hundred Dollars ($500) for each subsequent request for a subordination, attornment and recognition agreement or an estoppel certificate within such twelve (12) month period. If Tenant shall request Landlord to execute more than one (1) estoppel certificate in any twelve (12) month period, then, as a condition to Landlord's obligations under Section 19.05, Tenant shall pay to Landlord Five Hundred Dollars ($500) for each subsequent request for an estoppel certificate within such twelve (12) month period.

## ARTICLE XX

## LANDLORD'S REPRESENTATIONS, WARRANTIES AND COVENANTS

SECTION 20.01 Quiet Enjoyment. Landlord covenants and agrees that Tenant, upon paying the Rent reserved hereunder and performing and observing all of the other terms, covenants and conditions of this Lease on Tenant's part to be performed and observed hereunder during the Term, shall freely, peacefully, and quietly occupy and enjoy the use and possession of the Premises without disturbance, molestation, hindrance or ejectment of any kind whatsoever subject, nevertheless, to the terms of this Lease and to the Permitted Exceptions.

SECTION 20.02 Representations, Warranties and Covenants. In order to induce Tenant to execute this Lease and in consideration thereof, Landlord covenants, warrants and represents to Tenant as follows:

(a) As of the Effective Date and as of the Possession Date, Landlord owns the fee simple title to the Landlord's Parcel free and clear of all easements, restrictions, liens, encumbrances, leases and the like, except as described on Exhibit K and Existing Exclusives; that the Landlord's Parcel, as of the Effective Date (and as of the Possession Date), is not (and will not be) subject to the lien of any Mortgage (except such instruments where the lienor has entered into an agreement in favor of Tenant, as described in Sections 19.01 and 19.02); that Landlord has the full power, right and authority to make this Lease for the Term without the consent, joinder, or approval of any other party except for Landlord's current lender; and that Landlord will put Tenant into complete and exclusive possession of the Premises free from all orders, restrictions, covenants, agreements, leases, easements, laws, codes, ordinances, regulations or decrees (except for those matters described on Exhibit K) which would, in any way, prevent or inhibit the use of the Premises for the uses thereof by Tenant as contemplated by this Lease, or prevent or restrict the use of the Landlord Parcel Common Areas or limit ingress and egress to and from John R Road, the public thoroughfare shown on the Site Plan, by Tenant, its agents, employees or invitees.

(b) Landlord shall, on or before the Possession Date, have caused the Delivery of the Premises to occur in accordance with this Lease.

(c) As of the Effective Date there is no Affiliated Land in existence and as of the Possession Date there will not be any Affiliated Land in existence (or, if there shall be Affiliated Land in existence, Landlord shall promptly notify Tenant thereof and promptly

execute any recordable instrument reasonably requested by Tenant which memorializes the provisions of this Lease pertaining to or otherwise affecting Affiliated Land).

(d) As of the Effective Date, neither Landlord nor any Affiliate of Landlord owns any portion of the Shopping Center other than Landlord's Parcel or is in discussions to purchase any portion of the Shopping Center other than Landlord's Parcel.

SECTION 20.03 Site Covenants. In order to induce Tenant to enter into this Lease, Landlord covenants to Tenant as follows (the "Site Covenants"):

(a) Landlord shall not hereafter construct (or permit to be constructed) any buildings or other structures in the area identified on the Site Plan as the "No-Build Area" (the "No-Build Area").

(b) Landlord shall not construct (or permit to be constructed) any projections either vertical or horizontal (other than tenant signs or identifications) which will project along the front or rear of the building in which the Premises are situated in such a manner as to materially and adversely obstruct the view of Tenant's signs or its store front in any manner.

(c) The number of paved parking spaces in the Landlord's Parcel and/or paved parking spaces to which Landlord has rights under the OEA, shall be as set forth in the OEA.

(d) Intentionally omitted.

(e) If permitted pursuant to the OEA, Landlord shall not use (or permit the use of) all or any portion of the Tenant's Preferred Area for retail sales or for promotional purposes, subject to Tenant's rights under Section 2.01(c) and the rights of existing tenants.

(f) Except as may be required by Laws, Landlord shall not make (and shall not permit there to made) any changes to those Landlord Parcel Common Areas identified as "No-Change Area" on the Site Plan (the "No-Change Area") including, without limitation, changes in the location of curbcuts, drive aisles, entrances, access points, roadways, sidewalks or parking spaces or reduction of the parking ratio specified in Section 20.03(c), without Tenant's consent, which may be withheld in Tenant's sole discretion.

(g) Following Tenant's opening for business at the Premises and any initial construction on Landlord's Parcel by Landlord, Michaels, and any other tenants of Landlord, (a) Landlord shall use reasonable efforts to control any noise and dust on Landlord's Parcel (including, without limitation, during any periods of permitted construction within Landlord's Parcel) such that neither materially and adversely interferes with the normal operation of Tenant's business, and (b) Landlord shall not perform (and shall not permit there to be performed) any exterior construction in the Landlord's Parcel during the months of October, November, December and January, except to the extent permitted under Section 5.01.

(h) Landlord shall not knowingly permit any solicitation, distribution of handbills, picketing, or other public demonstration in the Landlord Parcel Common Areas, except as otherwise may be mandated by Laws.

O:\dkg\Acadia\Madison Heights\Circuit City Lease\executioncopy.DOC

(i)    Intentionally omitted.

(j)    Landlord shall not knowingly install or permit to be installed by any other tenant or other person anywhere in the Landlord's Parcel or any Affiliated Land any structure or equipment which would cause any interference with satellite, radio, telecommunications or television reception or transmission in or from the Building.

SECTION 20.04    OEA.

(a)    The term "OEA" shall collectively mean (i) that certain Operation and Easement Agreement by and between Dayton Hudson and S & M Heights, dated as of July 22, 1987 and recorded on September 1, 1987 in the Clerk's Office of the Circuit Court of Oakland County, State of Michigan in Liber 10089 at page 325, and amended in Liber 10820, page 119, Liber 10988, page 174, Liber 15911, page 724, and Liber 29951, page 44 and that (ii) certain Separate Agreement, dated July 13, 1989, by and between S & M Heights, a Michigan co-partnership and Mervyn's, a California corporation.

(b)    Landlord covenants, represents and warrants to Tenant to its actual knowledge that: (i) except as otherwise provided in (a)(i) above, the OEA has not been modified, amended or terminated; (ii) the OEA is currently in full force and effect; (iii) as of the Effective Date, no default under the OEA exists beyond any applicable notice and cure period; and (iv) the OEA is, and shall remain, superior in lien to all mortgages and related liens affecting the Landlord's Parcel and all other land which is encumbered by the OEA. Landlord and Tenant each acknowledge that this Lease is made and shall continue to be subject and subordinate to the OEA, subject to the provisions of this Section 20.04. Tenant shall comply with the terms and conditions of the OEA to the extent the same affects the Premises.

(c)    Landlord shall, during the Term: (i) perform and observe all of the terms, covenants, provisions and conditions of the OEA on Landlord's part to be performed and observed and (ii) defend, indemnify and hold harmless Tenant from and against any and all claims, demands, causes of action, suits, damages, liabilities, and expenses of any nature arising out of or in connection with the enforcement of, or a claimed breach by, Landlord of any covenant, term, condition, or provision of the OEA (unless the same was caused by the acts or omissions of Tenant or anyone acting or failing to act, by or through Tenant, in which case the Tenant shall comply with the indemnification obligations under this subsection(c)(ii)).

(d)    Whenever, pursuant to the OEA, the consent or approval of Landlord shall be required or requested, and such consent or approval could diminish the rights or increase the obligations of Tenant under the OEA or under this Lease, or could affect Tenant's use or occupancy of the Premises, or the conduct of Tenant's business therein, such consent or approval shall not be granted without the prior consent of Tenant, which consent may be withheld in its sole and absolute discretion.

(e)    Landlord shall, use reasonable efforts to, forward to Tenant and Tenant's leasehold mortgagee, if any, a copy of any and all notices and/or demands received by Landlord under or pursuant to the OEA, which relate to, or could adversely affect, the rights of Tenant under this Lease, or Tenant's use or occupancy of the Premises, or the conduct of Tenant's business therein.

(f) Landlord shall not amend or modify (or permit an amendment to or modification of) the OEA if such amendment or modification could diminish the rights or increase the obligations of Tenant under the OEA or under this Lease, or could adversely affect Tenant's use or occupancy of the Premises, or the conduct of Tenant's business therein, nor shall Landlord terminate the OEA.

(g) In the event Landlord defaults in the performance of any of its obligations under the OEA or fails to enforce the obligations of any other obligee under the OEA, and such default or failure to enforce adversely affects Tenant's rights under the OEA or under this Lease, or Tenant's use or occupancy of the Premises, or the conduct of Tenant's business therein, Tenant shall provide written notice to Landlord specifying in reasonable detail such default (except in the event of emergency, in which case no notice shall be required). Landlord shall then have forty-five (45) days to cure or cause a third party to cure such default. Notwithstanding the foregoing, if Tenant gives notice of any default which by its nature cannot reasonably be cured within the period specified in the preceding sentence, then such period shall be extended for a reasonable time period so long as Landlord has commenced to cure such default within the 45 day time period and continues to diligently and in good faith proceed to cure the same. If after providing Landlord with written notice of such default and after the expiration of the applicable cure period, Landlord has not either cured the default or commenced to cure the default (except in the event of emergency, in which case Tenant shall not have to wait until the expiration of the cure period), Tenant may, but shall not be obligated to, cure any default by Landlord under the OEA and/or enforce, in its own name, at Landlord's expense, the obligations of any other obligee under the OEA. Landlord shall, upon demand, reimburse Tenant for the reasonable costs incurred by Tenant in performing any of Landlord's obligations under the OEA or enforcing the obligations of any obligee under the OEA, together with interest thereon at the Default Rate. Tenant shall provide Landlord reasonable documentation of all such costs for reimbursement.

(h) As between Landlord and Tenant, in the event of any conflict between the OEA and this Lease, this Lease shall in all respects control.

## ARTICLE XXI

### HOLDING OVER

SECTION 21.01 <u>Holding Over</u>. If Tenant remains in possession of the Premises after the expiration of the Term without having duly exercised its right, if any, to extend or further extend the Term, such continuing possession shall create a month-to-month tenancy on the terms herein specified and such tenancy may be terminated at the end of any month thereafter by either party by giving at least thirty (30) days notice thereof to the other party. During such holdover and provided that Landlord and Tenant are not in good faith negotiations with regard to the renewal or extension of this Lease, Tenant shall be liable for Annual Minimum Rent on a monthly basis (or, if applicable, on a prorated daily basis) in an amount equal to one hundred fifty percent (150%) of the amount thereof payable by Tenant for the month immediately preceding the last day of the Term, as well as for all Additional Rent payable by Tenant under this Lease.

44

## ARTICLE XXII

### NOTICE

SECTION 22.01 <u>Where and How Given</u>. All notices or demands which either party hereto either is required to or may desire to serve upon the other shall be in writing and shall be sufficiently served upon such other party, by (a) mailing a copy thereof by certified or registered mail, postage prepaid, return receipt requested, addressed to the party to whom the notice is directed at the "<u>Notice Address</u>" of such party, or (b) by a reliable overnight courier (such as Federal Express), all charges prepaid, furnishing a receipt upon delivery, and addressed to the party to whom the notice is addressed at the Notice Address of the part. The Notice Address of each party is:

    1) Landlord:

        MDS Realty II, LLC
        c/o Acadia Realty Trust
        1311 Mamaroneck Avenue, Suite 260
        White Plains, NY 10605
        Attention: Legal Department

    with a copy to:

        c/o Klaff Realty
        122 South Michigan Avenue
        Suite 1000
        Chicago, IL 60603

        Payments shall be addressed to (if sent pursuant to the method set forth in (a) above):

        MDS Realty II, LLC
        35245 Network Place
        Chicago, IL 60673

        Payments shall be addressed to (if sent pursuant to the method set forth in (b) above):

        JPMorgan Chase
        525 West Monroe Street
        8th Floor
        Chicago, IL 60661
        Attn: MDS Realty II, LLC lockbox 35245

    2) Tenant:

        CIRCUIT CITY STORES, INC.
        9954 Mayland Drive
        Richmond, Virginia 23233
        Attention: Vice President of Real Estate

    with a copy to:

        CIRCUIT CITY STORES, INC.
        9950 Mayland Drive

Richmond, Virginia 23233
Attention: General Counsel

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

SECTION 22.02 <u>When Given</u>. Unless otherwise provided for herein, notice shall be deemed to have been served at the earlier of the date received, refused or returned as undeliverable. However, if such notice pertains to the change of address of either of the parties hereto, then such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given.

## ARTICLE XXIII

## MISCELLANEOUS

SECTION 23.01 <u>Rent Proration</u>. If this Lease is terminated prior to its natural expiration date for any reason other than a Tenant default, then Landlord shall promptly reimburse Tenant for any Rent prepaid by Tenant for periods subsequent to such termination date. This Section 23.01 shall survive the termination of this Lease.

SECTION 23.02 <u>Construction</u>. In construing this Lease, feminine or neuter pronouns shall be substituted for those masculine in form and vice versa, and plural terms shall be substituted for singular and singular for plural in any place in which the context so requires. This Lease shall be construed without regard to: (a) the identity of the party who drafted the various provisions hereof, and (b) the addition or deletion of text made during the negotiation of this Lease. Moreover, each and every provision of this Lease shall be construed as though all parties hereto participated equally in the drafting thereof. As a result of the foregoing, any rule or construction that a document is to be construed against the drafting party shall not be applicable hereto.

SECTION 23.03 <u>Section Headings</u>. The section headings in this Lease are for convenience only and do not in any way limit or simplify the terms and provisions of this Lease, nor should they be used to determine the intent of the parties.

SECTION 23.04 <u>Partial Invalidity</u>. If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, then the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 23.05 <u>Waiver</u>. The failure of either party to seek redress for violation of, or to insist upon strict performance of, any term, covenant or condition contained in this Lease shall not constitute a waiver to exercise any right or remedy with respect thereto nor prevent a similar subsequent act from constituting a default under this Lease. The receipt by Landlord of Rent with knowledge of a breach of any provision of this Lease shall not be deemed a waiver of such

46

breach. No payment by Tenant or receipt by Landlord of a lesser amount than the Rent hereby reserved shall be deemed to be other than on account of the earliest rent then unpaid, nor shall any endorsement or statement on any check or any letter accompanying any check or payment by Tenant be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent due or Landlord may pursue any other remedy in this Lease provided or by law permitted, and no waiver by Landlord in favor of any other tenant or occupant of the Landlord's Parcel shall constitute a waiver in favor of the Tenant herein.

SECTION 23.06 Governing Law. This Lease shall be governed and construed in accordance with the laws of the State.

SECTION 23.07 Successors and Assigns. This Lease shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assign of Landlord and the successors and assigns of Tenant.

SECTION 23.08 No Broker. Landlord and Tenant represent to each other that no broker or person is entitled to any commission by reason of the negotiation and execution of this Lease, other than the Broker identified in Section 1.01(D), and Landlord agrees that Landlord shall be solely responsible for the fees and commissions of the Broker. Landlord and Tenant agree to indemnify, defend and hold each other harmless against any and all claims by any other person for brokerage commissions or fees arising out of any conversation, negotiations or other dealings held by the other party with any other broker regarding this Lease.

SECTION 23.09 Memorandum of Lease. Landlord and Tenant agree to execute a Memorandum of Lease in recordable form, substantially similar to that attached as Exhibit L, setting forth such provisions hereof as may be required by State law. Either party may record such Memorandum of Lease simultaneously with the execution of this Lease. Recording costs shall be borne by the party requesting recordation of same; in addition, any transfer taxes or other fees charged by any local or state governmental authorities in connection with such recordation shall be paid by the party recording same. The provisions of this Lease shall control with regard to any omissions from, or provisions which may be in conflict with, the Memorandum of Lease.

SECTION 23.10 Entire Agreement. This instrument contains the entire and only agreement between the parties and no oral statements or representations or written matter not contained in this instrument shall have any force or effect. This Lease shall not be amended or modified in any way except by a writing executed by both parties. All of the exhibits attached to this Lease are incorporated into this Lease by reference and for all purposes are a part of this Lease.

SECTION 23.11 Relationship of Parties. The relationship between the parties hereto is solely that of landlord and tenant and nothing in this Lease shall be construed as creating a partnership or joint venture between the parties hereto, it being the express intent of Landlord and Tenant that the business of Tenant on the Premises and elsewhere, and the good will thereof, shall be and remain the sole property of Tenant.

47

SECTION 23.12 Force Majeure. If either party hereto shall be delayed or hindered in, or prevented from, the performance of any act required under this Lease by reason of strikes, lockouts, labor troubles, failure of power, riots, insurrection, war or other reasons of a like nature beyond the reasonable control of the party delayed in performing works or doing acts required under the terms of this Lease (any such delay, hindrance or prevention is referred to as "Force Majeure"), then performance of such act shall be excused for the period of the delay, and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay, except as otherwise specifically provided herein to the contrary. Notwithstanding the foregoing, Tenant's obligation to pay Rent shall not be excused by reason of Force Majeure, except as otherwise set forth in this Lease. The provisions of this Section 23.12 shall not be applicable to delays resulting from the inability of a party to obtain financing or to proceed with its obligations under this Lease because of a lack of funds.

A Tenant Delay (as defined herein) shall be deemed Force Majeure with regards to any work, obligation or responsibility of Landlord to be performed hereunder, including Landlord's Work. However, in the event of a Tenant Delay there shall be no cap or limit on the number of days for Landlord's failure to perform such work or obligation.

"Tenant Delays" shall mean:

(i) delays in the submission of "Tenant's Plans" (hereinafter defined) and delays beyond the time period permitted in this Lease for the resubmission and final completion of Tenant's Plans (if required by changes or comments made to the Tenant's Plans originally submitted);

(ii) delays caused by changes to Tenant's Plans after their approval by Landlord; and,

(iii) delays resulting from interference by Tenant or any agent or supplier of Tenant in the performance of any aspect of Landlord's Work.

SECTION 23.13 Limitation of Landlord's Liability. Except with respect to (a) insurance proceeds or condemnation awards received by Landlord which are required by the terms of this Lease to be applied to the repair or restoration of the Premises or the Landlord's Parcel, (b) Landlord's failure to pay the Landlord Reimbursement in accordance with this Lease, and (c) any monies owed by Landlord to Tenant in connection with Landlord's default in performing Landlord's Work, Tenant shall, on and after the Commencement Date, look only to Landlord's estate and property in the Landlord's Parcel (or the proceeds from the sale, financing or refinancing of all or any portion thereof) and net income derived from the Landlord's Parcel for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord hereunder, and no other property or assets of Landlord, its officers, directors, stockholders, employees, members or partners shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease. Except with respect to the limitation on personal liability hereinabove set forth, the provisions of this Section 23.13 shall not be deemed or construed to limit Tenant's rights and remedies pursuant to this Lease or which may be available at law, in equity or otherwise.

SECTION 23.14 Limitation of Tenant's Liability. Except with respect to insurance proceeds or condemnation awards received by Tenant which are required by the terms of this

48

Lease to be applied to the repair or restoration of the Premises or the Landlord's Parcel, Landlord, its successors and assigns, shall look solely to the assets, if any, of Tenant and its successors and assigns, for the satisfaction of any claim arising from or under this Lease and shall not seek to impose personal liability on any shareholder, officer, director, member or employee of Tenant or any of its Affiliates. Except with respect to the limitation on personal liability hereinabove set forth, the provisions of this Section 23.14 shall not be deemed or construed to limit Landlord's rights and remedies pursuant to this Lease or which may be available at law, in equity or otherwise.

SECTION 23.15 Consents. Except as may be otherwise expressly set forth in this Lease, whenever under this Lease provision is made for either party's securing the consent or approval of the other party, (a) such consent or approval shall be in writing and shall not be unreasonably withheld, delayed or conditioned, and (b) in all matters contained herein, both parties shall have an implied obligation of reasonableness.

SECTION 23.16 Costs. Whenever this Lease requires the performance of an act by party, such party shall perform the act at its own cost and expense, unless otherwise expressly provided to the contrary in this Lease.

SECTION 23.17 Attorneys' Fees. In any action or proceeding hereunder (whether to enforce the terms and provisions of an indemnity or otherwise), the prevailing party shall be entitled to recover from the other party the prevailing party's reasonable costs and expenses in such action or proceeding, including reasonable attorneys' fees, costs and expenses. Except as otherwise set forth herein, if either party is sued by a third party as a result of a violation of a covenant, representation or warranty herein contained by the other party hereto, then the party who has violated the covenant, representation or warranty shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees, costs and expenses.

SECTION 23.18 Survival of Obligations. The obligation to pay any sums due to either party from the other that by the terms herein would not be payable, or are incapable of calculation, until after the expiration or sooner termination of this Lease shall survive and remain a continuing obligation until paid. All indemnity obligations under this Lease shall survive the expiration or earlier termination of this Lease.

SECTION 23.19 Joint and Several Liability. If either party consists of more than one person or entity, then the persons or entities constituting such party shall be jointly and severally liable hereunder.

SECTION 23.20 Definition of Hereunder, Herein, etc.. Unless the context clearly indicates to the contrary, the words "herein," "hereof," "hereunder," "hereafter," and words of similar import refer to this Lease and all of the Exhibits attached hereto as a whole and not to any particular section, subsection, or paragraph hereof.

SECTION 23.21 Tenant's Trade Name. Landlord shall not make use of Tenant's trade name (i.e., "Circuit City"®) in any advertising or marketing material including, without limitation, on any internet website, without obtaining Tenant's prior written approval, which may

49

be withheld in Tenant's sole and absolute discretion. Notwithstanding the foregoing, Landlord may use Tenant's trade name on Landlord's website and in informational brochures, but only for the purposes of identifying Tenant as a tenant of the Landlord's Parcel.

SECTION 23.22 Counterparts. This instrument may be executed in several counterparts, each of which shall be deemed an original. The signatures to this instrument may be executed and notarized on separate pages, and when attached to this instrument, shall constitute one complete document.

SECTION 23.23 Landlord's Permits. Landlord shall obtain all permits and approvals necessary to perform Landlord's Work ("Landlord's Permits"). If Landlord does not receive such Landlord's Permits within two hundred seventy (270) days after the Effective Date, then both Landlord and Tenant shall have the right to terminate this Lease upon notice to the other party.

SECTION 23.24 Tenant's Work.

(a) Except for Landlord's Work, Tenant shall perform all work necessary to complete a "Circuit City" store including but not limited to installing its fixtures, furniture and equipment and exterior signage. Within sixty (60) days of the Effective Date, Tenant shall prepare plans and specifications for Tenant's Work and submit them to Landlord for its review and approval. Landlord shall have fifteen (15) days to review such plans and specs and provide comments to Tenant. Failure by Landlord to respond within such fifteen (15) day period shall constitute approval of the submitted plans and specs. If Landlord provides comments or revisions to such plans and specs, Tenant shall submit revised plans and specs within fifteen (15) days after receipt of Landlord's comments. Plans and specs approved by Landlord shall be deemed "Tenant's Plans". Tenant shall construct all improvements to the Premises according to Tenant's Plans. No work shall commence until Tenant has received written approval from Landlord.

(b) Tenant's Plans shall not be materially changed without the prior written approval of Landlord in each instance, which approval shall not be unreasonably withheld or delayed. No structural or exterior changes shall be made without Landlord's prior written consent, not to be unreasonably withheld, conditioned or delayed. Landlord's approval of Tenant's Plans shall not constitute an opinion or agreement by Landlord that the same are structurally sufficient or that they are in compliance with Laws. Tenant shall be responsible to obtain all approvals and permits necessary to permit Tenant's Work and to operate the Premises ("Tenant's Permits"). Once Tenant's Plans are approved by Landlord, Tenant shall promptly apply for Tenant's Permits and diligently pursue issuance of same. Except as expressly provided as Landlord's Work, Landlord is not obligated to make any improvements, changes, installations, alterations, repairs or replacements to the Premises or any portion of the Landlord's Parcel to either put Tenant in possession or to permit Tenant to open for business. However, Landlord shall cooperate with Tenant, at no cost to Landlord, in connection with Tenant's obtaining its permits and approvals.

(c) All of Tenant's Work shall be completed using new, first class materials, in a good and workmanlike manner in accordance with Tenant's Plans, all applicable provisions of the Lease, all Laws and the OEA. Tenant warrants that Tenant's Work, upon completion, will

50

comply with all Laws and the OEA and that the Landlord's Parcel shall not violate any Laws or the OEA as a result of Tenant's Work. During the performance of Tenant's Work, Tenant's equipment, materials and supplies shall be kept and stored only within the "Staging Area".

(d) Other than Tenant's Work described herein, Tenant shall not physically affect any other part of the Landlord's Parcel nor impair the structural integrity of any building nor affect the proper functioning of any systems of the Landlord's Parcel. In addition, Tenant agrees that all of Tenant's Work shall be performed in a manner which will not create any work stoppage, labor disruption or dispute and Tenant shall use commercially reasonable efforts not to interfere with the business of Landlord, or with any other tenant or occupant of the Landlord's Parcel, provided that Landlord acknowledges that Tenant's Work will necessarily cause some noise, vibrations, dust, and other disruption inherent to construction work, and that Tenant will use commercially reasonable efforts to limit the duration and extent of such disruption.

(e) If Tenant shall cause any damage to any portion of the Landlord's Parcel during the performance of Tenant's Work, Tenant shall promptly repair and restore such damage. Tenant hereby agrees to defend, pay, indemnify and save free and harmless Landlord from and against any and all claims, demands, liabilities, fines, suits, actions, proceedings, orders, decrees and judgments of any kind or nature by or in favor of anyone and from and against any and all costs and expenses, including reasonable attorneys' fees, resulting from or in connection with loss of life, bodily or personal injury or damage to property arising out of or from or on account of Tenant's Work, excluding matters caused by the negligence of Landlord, its employees, contractors or agents.

(f) Promptly following the completion of Tenant's Work, and as soon as reasonably feasible, Tenant shall obtain and furnish to Landlord all appropriate certifications from all authorities having jurisdiction (including a certificate of occupancy or permanent certificate of occupancy, as the case may be) to the effect that Tenant's Work has been performed and completed in accordance with Tenant's Plans and with all Laws.

(g) During the course of Tenant's Work, Tenant (and all of its contractors and subcontractors) will carry or cause to be carried adequate Worker's Compensation Insurance, Builders Risk, Comprehensive General Liability and such other insurance as may be required by law to be carried by Landlord or Tenant and such insurance (except the Worker's Compensation Insurance) shall name Landlord, Acadia Realty Trust, Acadia Realty Limited Partnership and all mortgagees as additional insureds.

(h) Before commencing Tenant's Work, Tenant will obtain the following, at its sole costs and expense, and deliver evidence thereof to Landlord: (a) Comprehensive general liability insurance with a combined single limit of not less than Four Million Dollars ($4,000,000) per occurrence for bodily injury and property damage, automobile liability coverage including owned and hired vehicles with a combined single limit of not less than Two Million Dollars ($2,000,000) for bodily injury and damage to property for each occurrence, naming Landlord, Acadia Realty Limited Partnership, Acadia Realty Trust and Landlord's mortgagee as additional insureds, and (b) Landlord's Hold Harmless Agreement signed by all contractors or subcontractors whereby they agree to indemnify, save and hold harmless Landlord, its agents, employees, and assigns from all liabilities, claims, losses, liens, damages and suits of whatsoever nature for personal injury, death or property damage alleged to arise out

51

of the work performed under the contract, whether by the contractor or by any subcontractor, and whether asserted against Landlord or the contractor/subcontractor.

[Signature page follows]

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be duly executed and delivered in their respective names as of the date first above written.

LANDLORD:

MDS REALTY II, LLC

Attest: *(signature)*

By: *(signature)*
Name: Stephen A. Smith
Title: Vice President

TENANT:

CIRCUIT CITY STORES, INC.

By: *(signature)*
Name: John B. Mulleady
Title: Vice President, Real Estate & Construction

53