UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**JOINT OBJECTION BY CERTAIN LANDLORDS TO
DEBTORS' MOTION FOR ORDERS UNDER BANKRUPTCY CODE
SECTIONS 105, 363 AND 365 (I) APPROVING BIDDING AND AUCTION
PROCEDURES FOR SALE OF UNEXPIRED NONRESIDENTIAL REAL
PROPERTY LEASES, (II) SETTING SALE HEARING DATE AND
(III) AUTHORIZING AND APPROVING (A) SALE OF CERTAIN
UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES FREE
AND CLEAR OF ALL INTERESTS, (B) ASSUMPTION AND
ASSIGNMENT OF CERTAIN UNEXPIRED NONRESIDENTIAL
REAL PROPERTY LEASES AND (C) LEASE REJECTION PROCEDURES**

The landlords listed on the attached Schedule A (collectively, the "Landlords"), by counsel, and for their Joint Objection to the Debtors' Motion for Orders Under Bankruptcy Code Sections 105, 363 and 365 (I) Approving Bidding and Auction Procedures for Sale of Unexpired Nonresidential Real Property Leases, (II) Setting Sale Hearing Dates and (III) Authorizing and Approving (A) Sale of Certain Unexpired Nonresidential Real Property Leases Free and Clear of All Interests, (B) Assumption and

---

Christopher L. Perkins (VSB No. 41783)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
(804) 783-7550
(804) 783-7686 facsimile

Niclas A. Ferland, Esq. (admitted pro hac vice)
Ilan Markus, Esq.
LeClairRyan, A Professional Corporation
555 Long Wharf Drive, 8th Floor
New Haven, Connecticut 06511
(203) 773-5026
(203) 773-5027 facsimile

Counsel for the Landlords

Assignment of Certain Unexpired Nonresidential Real Property Leases and (C) Lease Rejection Procedures (the "Motion") (Docket No. 1946), represent as follows:

1. On November 10, 2008 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court").

2. The Landlords lease nonresidential real property to certain of the Debtors under unexpired leases (the "Remaining Leases") for premises that are either stand-alone stores or which are located within "shopping centers" as that term is used in Bankruptcy Code § 365(b)(3).

3. In the Motion, the Debtors seek, *inter alia*, to establish a Court-authorized procedure for the auction and sale/assignment or rejection of the Remaining Leases.

4. Although the Debtors' proposed procedures for (a) auction, sale and assignment of certain of the Remaining Leases (the "Proposed Sale Procedures"), and (b) rejection of certain of the Remaining Leases and abandonment of property at those rejected locations (the "Proposed Rejection Procedures") are generally appropriate, the Landlords propose the following modifications and additions, which if incorporated by the Court, will more fairly balance the interests of the estate in maximizing assets values and minimizing claims, and the interests of the Landlords in protecting their property and minimizing damages thereto.

**Requested Modification to Proposed Sale Procedures**

5. The Landlords recognize the need for speed with respect to the assumption and assignment or rejection of the Remaining Leases. However, in one respect, the Proposed Sale Procedures timetable moves too fast.

6. If a Landlord timely files an objection to the proposed assignment of a Remaining Lease to a Successful Bidder on adequate assurance grounds, the Landlord should not be forced to litigate that objection on only two business days' notice. The Proposed Sale Procedures, however, give an objecting Landlord only two business days' advance notice of the identity of the Successful Bidder.

7. For example, with respect to February Leases,[1] the proposed sale schedule is as follows:

| | |
|---|---|
| Wednesday, February 18 | Bid deadline |
| Thursday, February 19 | List of February Leases to be auctioned is filed |
| Friday, February 20 | Auction date |
| Wednesday, February 25 | Sale hearing for February Leases |

As we have seen in this case, the date an auction commences is not necessarily the date on which it concludes. It is likely that undersigned counsel will not be in a position to meaningfully communicate to the affected Landlords the outcome of the auction and the identity of, and adequate assurance information regarding, a Successful Bidder until Monday, February 23. At that point, if the Landlord objects to the proposed assignment of its Remaining Lease, the Landlord will have less than two business days to prepare for a contested evidentiary hearing on adequate assurance of future performance of the Successful Bidder.

---

[1] Capitalized terms that are used, but not defined, herein shall have the meanings ascribed to them in the Motion.

3

8. Similarly, with respect to March Leases, the proposed sale schedules are as follows:

| | |
|---|---|
| Thursday, March 12 | Bid deadline |
| Friday, March 13 | First list of March Leases to be auctioned is filed |
| Monday, March 16 | First March Lease auction date |
| Friday, March 20 | Sale hearing for first set of March Leases |
| | |
| Thursday, March 12 | Bid deadline |
| Monday, March 23 | Second list of March Leases to be auctioned is filed |
| Tuesday, March 24 | Second March Lease auction date |
| Monday, March 30 | Sale hearing for second set of March Leases |
| | |
| Thursday, March 12 | Bid deadline |
| Wednesday, April 8 | Third list of March Leases to be auctioned is filed |
| Thursday, April 9 | Third March Lease auction date |
| Tuesday, April 14 | Sale hearing for third set of March Leases |

Again, the time period that an objecting Landlord would have to prepare for a contested evidentiary hearing on the Successful Bidder's ability to satisfy the adequate assurance requirements of Bankruptcy Code section 365 for a March Lease under the Proposed Sale Procedures ranges from less than two business days to less than four business days.

9. Accordingly, the Landlords propose that each of the sale hearing dates in the Proposed Sale Procedures be used to (a) consider approval of uncontested assignments of Remaining Leases, and (b) establish an expedited discovery schedule and future hearing date to consider approval of contested assignments of Remaining Leases.

**Requested Modifications to Proposed Rejection Procedures**

A. <u>Require Affirmative Rejection Notices for All Rejected Remaining Leases</u>

10. The Proposed Rejections Procedures provide for two alternate means for Remaining Leases to be rejected.

11. The first proposed method of lease rejection is for the Debtors to provide the relevant Landlord with a Rejection Notice. The only additional procedure that the

4

Landlords request to this first lease rejection method is for the Debtors to email a copy of the applicable Rejection Notice for a Remaining Lease to undersigned counsel to the Landlords.

12. The second proposed method of lease rejection is essentially a negative notice. The Debtors propose that for any Remaining Leases for which either (a) no Potential Purchaser has submitted a Qualified Bid or (b) the Debtors have not served a Rejection Notice, such lease be automatically deemed rejected as of February 28 (for February Leases) or March 31 (for March Leases). In essence, this procedure provides that if a Landlord receives no notice, then the Lease is deemed rejected.

13. The Landlords submit that it would be more clear and less subject to confusion and mistakes of omission if, at or about the time of the Debtors' filing of the Cure Schedule indicating Remaining Leases with respect to which Qualified Bids have been received, the Debtors were required to submit a list of those Remaining Leases for which no Qualified Bid was received and thus would be considered rejected as of February 28 (for February Leases) or March 31 (for March Leases).

14. This modification, if adopted, would clarify the record as to which Remaining Leases were rejected, for the benefit of all interested parties.

B. Implement Procedures to Protect Landlords from Damages at Rejected Locations

15. Earlier in these cases, a Landlord of a lease rejected by the Debtors retook possession of the premises and discovered substantial damage, including, without limitation: gaping holes in the ceiling, destruction of parts of the sprinkler system and attendant water damage, and a severed gas line that was emitting gas into the premises. Fortunately, the gas leak was quickly identified and the gas pipe was capped, thereby

averting a potentially disastrous situation to the premises and any persons or property in or around it. Evidently the Debtors or their agents had ripped fixtures and equipment from the walls and ceiling of the premises with little regard for damage to the premises.

16. Although that Landlord intends to assert an administrative claim with respect to those needless damages it suffered, there is little doubt that the Debtors, the Debtors' agents and the Official Committee of Unsecured Creditors will object to any such administrative claim notwithstanding the fact that the premises were clearly damaged while the Debtors were still in possession of the premises and before the effective date of the rejection of the relevant lease.

17. To reduce the chances that leased premises under the Remaining Leases are similarly damaged, the Landlords request that the Lease Rejection Procedures be supplemented, as follows:

a. Each Landlord of a Remaining Lease that is to be rejected under the Lease Rejection Procedures shall be given sufficient advance notice and granted complete access to its entire leased premises at least four (4) business days before the applicable Rejection Date for the purposes of videotaping, photographing and/or recording the physical condition of the premises;

b. The Debtors and their agents are directed to use appropriate caution when removing property of the Debtors that is located in premises leased by the Debtors and to take all reasonable efforts to minimize damage to the premises when so doing; and

c. Nothing in the Lease Rejection Procedures shall be deemed to bar any Landlord from asserting an administrative or other claim against the Debtors' estates (or

bar any party-in-interest from objecting to such a claim) for damages to leased property incurred prior to the effective date of the rejection of such lease.

18.   Notwithstanding any right the Debtors may have under the Proposed Rejection Procedures to abandon property at leased premises, the Debtors should (a) be prohibited from leaving garbage and/or debris at the Premises, and (b) be required to surrender the leased premises in the same manner as required under the relevant Remaining Lease. Additionally, nothing in the Lease Rejection Procedures should be deemed to bar any Landlord from asserting an administrative or other claim against the Debtors' estates (or bar any party-in-interest from objecting to such a claim) for damages to leased property incurred in connection with the Debtors' or its agents' failure to comply with the Lease Rejection Procedures.

19.   Finally, the proposed Rejection Requirements set forth in paragraph 27 of the Motion should be expanded to require the Debtors to provide each Landlord of a Remaining Lease that is to be rejected with: (a) electric meter numbers and account numbers; (b) gas meter numbers and account numbers; (c) water meter numbers and account numbers; (d) fire alarm company and monitoring system information.

**Joinder**

20.   The Landlords join in the objections of the other landlords to the Motion to the extent they are not inconsistent with this Objection.

**WHEREFORE**, the Landlords request that this Court enter an order sustaining this Objection, approving the Motion with the additions and modifications to the Proposed Sale Procedures and Proposed Rejection Procedures delineated herein, and granting the Landlords such other and further relief as the Court deems appropriate.

Dated: February 11, 2009
Richmond, Virginia

LeClairRyan, A Professional Corporation

/s/ Christopher L. Perkins
Christopher L. Perkins (VSB No. 41783)
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
Tel: (804) 783-7550
Fax: (804) 783-7686
christopher.perkins@leclairryan.com

- and -

Niclas A. Ferland (*admitted pro hac vice*)
Ilan Markus
555 Long Wharf Drive, 8th Floor
New Haven, CT 06511
Tel: (203) 773-5026
Fax: (203) 773-5027
niclas.ferland@leclairryan.com
ilan.markus@leclairryan.com

*Counsel for the Landlords*

## CERTIFICATE OF SERVICE

That on the 11th day of February 2009, I caused the foregoing to be (i) electronically filed with the Clerk of the Bankruptcy Court using the CM/ECF System, which causes notices of the electronic filing to be served all registered users of the CM/ECF System that have filed notices of appearance, and (ii) electronically mailed to all parties on the "Rule 2002 Service List" maintained on the website of the Debtors' Court-approved noticing agent in accordance with the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures.

/s/ Christopher L. Perkins
Christopher L. Perkins

## SCHEDULE A

| CC Store # | Landlord | Location Name or Address |
|---|---|---|
| 3203 | Circuit Investors #2 Ltd., a Texas Partnership | 4708 South Tamiami Trail, Sarasota, FL 34231 |
| 3202 | Circuit Investors #2 Ltd., a Texas Partnership | 7001 NW 4th Blvd., Gainesville, FL 32607 |
| 3100 | Circuit Investors #3 Ltd., a Virginia Partnership | 9900 West Broad St., Glen Allen, VA 23060 |
| 420 | Eastland Shopping Center LLC | 112 Plaza Drive, West Covina, CA 91790 |
| 3218 | WEA Gateway LLC | 5 Gateway Lincoln, NE 68505-2432 |
| 3662 | Trumbull Shopping Center #2 LLC | 5065 Main Street, Trumbull, CT 06611 |
| 784 | Wheaton Plaza Regional Shopping Center L.L.P. | 11160 Veirs Mill Road, Wheaton, MD 20902-1949 |
| 817 | CC - Virginia Beach, LLC | 110 South Independence Blvd., Virginia Beach, VA |
| 353 | 680 S Lemon Ave Co. LLC | 680 S. Lemon Avenue (Walnut), City of Industry, CA |
| 3112 | Circuit Investors - Yorktown, L.P. | 2900 Highland Ave., Downers Grove, IL |
| 3616 | Benenson Columbus - OH Trust | 2885 Gender Road, Columbus, OH |
| 852 | Fayetteville Developers, LLC | 5075 Morganton Road, Fayetteville, North Carolina |
| 3252 | CC Kingsport 98, LLC | 1740 Idle Hour Road, Kingsport |
| 335 | CC Brandywine Investors 1998, LLC | Mid-Atlantic Distribution, Landover Home Delivery |
| 335B | Brandywine Operating Partnership, LP | Brandywine Parking Lot Lease |
| 9039 | BrandywineGrande C, LP | CCs Office (Westmoreland Telecenter) |
| 4242 | Rosmoor Shops LLC | Rosmoor Center Superstore |