Neil D. Goldman, Esq. (VSB No. 18352)
John P. Van Beek, Esq. (VSB No. 30897)
Libeau J. Berthelot, III, Esq. (VSB 72730)
Young, Goldman & Van Beek, P.C.
510 King St., Suite 416
Alexandria, Virginia 22313
(703) 684-3260
(703) 548-4742 (facsimile)
ngoldman@ygvb.com
jvanbeek@ygvb.com
bberthelot@ygvb.com

Counsel for TSA Stores, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
In re:                                        :    Chapter 11
                                              :
CIRCUIT CITY STORES, INC.,                    :    Case No. 08-35653-KRH
et al.,                                       :
                                              :
                                              :
           Debtors.                           :    Jointly Administered
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**TSA STORES, INC.'S OBJECTION TO DEBTORS' MOTION FOR ORDERS UNDER BANKRUPTCY CODE SECTIONS 105, 363 AND 365 (I) APPROVING BIDDING AND AUCTION PROCEDURES FOR SALE OF UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES, (II) SETTING SALE HEARING DATES AND (III) AUTHORIZING AND APPROVING (A) SALE OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES FREE AND CLEAR OF ALL INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES AND (C) LEASE REJECTION PROCEDURES**

TSA Stores, Inc. ("TSA"), by its attorneys Young, Goldman & Van Beek, P.C., objects to

Debtors' Motion for Orders Under Bankruptcy Code Sections 105, 363, and 365 (I) Approving

Bidding and Auction Procedures for Sale of Unexpired Nonresidential Real Property Leases, (II)

Setting Sale Hearing Dates and (III) Authorizing and Approving (A) Sale of Certain Unexpired

Nonresidential Real Property Leases Free and Clear of All Interests, (B) Assumption and

1

Assignment of Certain Unexpired Nonresidential Real Property Leases and (C) Lease Rejection Procedures (the "Motion"). In support of its Objection, TSA states as follows:

## I. BACKGROUND

1. TSA[1] and Circuit City have contractual relationships regarding three different locations of non-residential real property:

    a. Pursuant to a Sublease Agreement, as amended, dated January 29, 1993, and extended effective February 1, 2008, TSA is a sublessor and Circuit City is TSA's subtenant for non-residential real property located in a shopping center at 1750 Highway 36, West Roseville, Minnesota, 55113 (the "Roseville Sublease").

    b. Pursuant to a Sublease, as amended, between Sportmart, Inc., the predecessor to TSA, and the John Breuner Company, dated November 9, 1993, TSA is a subtenant in a portion of a shopping center in Daly City, California (the "Daly City Sublease"). Circuit City is a subtenant at the same shopping center. The property is located at 301 Serramonte Plaza, Daly City, California, 94015. TSA serves as a de facto property manager at the shopping center. TSA and Circuit City are responsible for paying their respective pro rata shares of common area maintenance expenses, taxes, insurance, and other Master Premises Obligation costs. Pursuant to Section 9(e) of the Sublease between TSA and its sublandlord, TSA initially pays both its own and Circuit City's share of the costs. Circuit City subsequently reimburses TSA for its pro rata share.

    c. Pursuant to a Lease, as amended, between Circuit City Stores, Inc. and TSA dated July 22, 1992, as amended, TSA is a subtenant and Circuit City the sublessor of non-residential real property in a shopping center in Lawrenceville, New Jersey (the "Lawrenceville

---

[1] TSA Stores, Inc. is the successor in interest to Sportmart, Inc. with respect to the Roseville Sublease and the Daly City Sublease, and to The Sports Authority, Inc. with respect to the Lawrenceville Lease.

2

Sublease"). The property is located at 3660 Brunswick Pike, Lawrenceville, New Jersey, 08648. Relevant provisions of the above lease documents are attached as exhibits to this Objection, as Exhibits A, B, and C, respectively. Full copies of these documents are available from TSA's counsel upon reasonable request.

## II.     RELEVANT TERMS OF THE LEASES

2.     The Roseville Sublease Agreement requires Circuit City to leave the premises in broom-clean condition and remove various items from the Premises. Section 9.3 of the Roseville Sublease states in pertinent part:

> Upon the termination of this Sublease, Tenant shall surrender the Premises in a broom-clean condition, free of debris and in the same condition (subject to the alterations, changes, additions and improvements made by Tenant pursuant to this Sublease) as the premises were on the date the Tenant opened the Premises for business to the public, reasonable wear and tear and fire casualty and condemnation excepted, and shall surrender all keys for the Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks and safes in the Premises. ***During the last 30 days of such term***, Tenant shall remove all of its trade fixtures described at Exhibit I hereof, and tenant shall repair any damage to the Premises caused by such removal (emphasis added).[2]

3.     The lease documents governing each of the three locations contain certain restrictions and limitations on the uses to which the properties may be put. Specifically:

> a.     Section 1.1.10 of the Roseville Sublease states in pertinent part:
>
> So long as Landlord is operating a sporting goods store in the Building, Tenant shall not operate its business as a sporting goods store (sporting goods including specifically, but not limited thereto, athletic footwear and athletic apparel), as such is operated by Landlord from time to time; provided, however, Tenant shall not be in violation of the foregoing if it utilizes less than two thousand

---

[2] The trade fixtures listed on Exhibit I are: store fixtures; all storage racking; all security system items; telephones and paging systems; computer system; office furniture and trash receptacles; battery charger; trash compactor; signs (interior/exterior, excluding a pylon structure and all exterior sign boxes); antenna system; electronic switching; air compressor (roadshop); safe; conveyor; Medeco cylinder locks (5); refrigerator and microwave used by employees; tack boards; water cooler; fire extinguishers; audio room fixtures and switchgear; pictures; warehouse and material handling equipment (movable ladders, dollies, etc.); track lights (cans only, not tracks).

3

LITIGATION\1608706.2

(2,000) square feet of its Premises for the sale of such items, in the aggregate.

b.  Article 18(c) of the Lawrenceville Sublease states in pertinent part:

> During the term and any and all renewals thereof of this lease, the Landlord, its successors and assigns, agrees not to permit or suffer any space in the shopping center, as the same is now or hereafter constituted to be used for the sale of sporting goods; it being the intention of the parties that Tenant shall have the exclusive right in the shopping center as now or hereafter constituted, to operate and conduct in the demised premises a sporting goods business.  To that end, Landlord, its successor and assigns, shall not permit or suffer the use of any space in the shopping center as set forth in Exhibit "A" as the same are now or hereafter constituted, to operate in direct competition with Tenant such that the principal use of such store is for the operation and conduct of a sporting goods store.

c.  Paragraph 3.8(a) of the Second Amendment of Lease and Amendment of Sublease; Consent to Sublease and Attornment and Non-Disturbance Agreement, of the Daly City Sublease states in pertinent part:

> Landlord agrees that Tenant shall not suffer any leasable floor area within the Complex to be used for the sale of sporting goods, sports apparel and/or athletic footwear, provided, however, Subtenant shall not unreasonably withhold its consent to sale of sporting goods, sports apparel and/or athletic footwear by another Complex lessee occupying 10,000 square feet or more of leasable floor area if such sale is incidental to such other lessee's primary business, and further provided that at all events sale by a shoe store of athletic footwear shall be considered a primary use, except as follows: a shoe store may utilize up to one hundred square feet of leasable floor area for the display of athletic footwear, so long as such display is not used to circumvent the provisions hereof (as would be the case where such display contained each style carried by such other retailer, with the various sizes and so forth being contained in a stock room), provided, however, in all events up to 100 square feet of stock room area for athletic footwear shall be permitted.  "Incidental sales" of merchandise is defined as sales from retail display space in a tenant's premises used for display of such merchandise of a size not greater than the lesser of 1,000 square feet and five (5%) percent of such tenant's total rentable square footage.

4

LITIGATION\1608706.2

### III. DISCUSSION

4.      With respect to the Lawrenceville Sublease, TSA subleases the premises from Circuit City.  With respect to the Roseville Sublease, TSA subleases the premises to Circuit City.  With respect to the Daly City Sublease, TSA acts as the property manager at that location, and Circuit City is obligated to pay TSA for certain expenses associated with the premises.

**A.    The Sale Cannot Be Free and Clear of TSA's Interests.**

5.      Debtors request that the Court authorize the sale of Leases free and clear of any and all "Interests that may be asserted against such Leases."  *See* Motion, ¶ 37.  The Motion defines Interests broadly as follows:  "all interests including liens, claims and encumbrances."  *See* Motion, ¶ 9.  TSA assumes Debtors do not intend for the sale of the Leases at the Lawrenceville, Roseville, or Daly City locations to be free and clear of TSA's rights at those locations.  Nevertheless, out of an abundance of caution, TSA files this Objection to make sure that result does not occur.  *See, e.g., Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003)(interpreting "any interest" in section 363(f) to include possessory interest as a lessee).

6.      The Sale cannot be free and clear of TSA's interests for each of the following reasons.  First, the more specific provisions of Section 365 of the Bankruptcy Code governing assumption and assignment of leases and executory contracts control rather than the more general provisions governing the sale of assets contained in Section 363.  Second, if Section 363 applies, Debtors have failed to demonstrate that any one of the five subsections contained in Section 363(f) authorizes the sale of the Leases free and clear of TSA's interests.  Third, if Section 363 applies, TSA is entitled to adequate protection of its interests under Section 363(e) of the Bankruptcy Code.  Under the circumstances of this case, adequate protection requires that the Court prohibit the proposed sale if the sale is to be free and clear of TSA's interests.  With

5

respect to the Lawrenceville Sublease, this means TSA retains its rights as a subtenant. With respect to the Daly City Sublease, this means that any assignee of Debtors assumes Debtors' obligations to pay to TSA all maintenance and related costs associated with the Premises.

**B.  Debtors Must Provide Adequate Assurance of Both Financial Performance and Tenant Use Restrictions.**

7. With respect to adequate assurance of future performance, the Motion suggests that Debtors' focus is solely on the Potential Purchaser's financial resources. *See* Motion, ¶ 51 ("the Bidding Procedures are also designed to ensure that any Potential Purchaser has the financial resources to perform under the Leases and is required to provide adequate assurance of future performance under any Lease for which they render a bid."). Adequate assurance, however, is not limited to financial performance. In addition to financial performance, Section 365(b)(3) expressly includes tenant mix and use issues within the scope of adequate assurance:

> adequate assurance of future performance . . . includes . . . : (C) that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, financing arrangement, or master agreement relating to such shopping center; and (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

8. The applicable agreements at each of the TSA locations protect TSA by limiting the use of Circuit City's premises in ways that do not compete with TSA's retail sporting goods business. The adequate assurance provided by a Potential Purchaser must demonstrate that TSA's rights in this regard are protected.

9. With respect to financial performance adequate assurance, the procedures are inadequate because they fail to provide meaningful detail in terms of the quality of financial information to be provided. At a minimum, the Potential Purchaser should be required to

6

provide balance sheets, financial statements, bank account statements, and tax returns from January 2007 forward.

10. Further, Debtors do not propose to provide the Adequate Assurance information to TSA and other lessors in a time frame that gives them a meaningful opportunity to review the information.  TSA and other landlords should have a minimum of one week to review the Adequate Assurance information; request additional information, if appropriate; and file an objection, if necessary.

C. **If Debtors Abandon Personal Property, TSA's Rights to Pursue Claims Under Both Section 365(d)(3) and 503(b)(1) Must Be Preserved.**

11. With respect to abandonment of personal property upon rejection of the lease, Debtor proposes that Debtor be authorized "to abandon any equipment, furniture, or fixtures located at the underlying Lease premises on the Rejection Date." *See* Motion, ¶ 9.  Neither the Motion nor proposed order submitted with the Motion discusses the treatment of claims for expenses incurred by TSA and other landlords with respect to Abandoned Property.  Despite this failure to discuss treatment of such claim in the Motion and proposed order, Debtors take the liberty to include in their proposed Notice of Rejection of Unexpired Lease and Abandonment of Personal Property that such claims will not be treated as administrative expenses:  "PLEASE TAKE FURTHER NOTICE that any expenses incurred by the Lessor in the removal or disposal of Abandoned Property will not be treated as an administrative expense under section 503(b)(1) of the Bankruptcy Code."

12. Debtors' proposed language should not be allowed based on the sheer bravado of Debtors in trying to sneak this language past landlords and the Court without ever mentioning it in the Motion.  As it relates to TSA, this language also cannot be allowed because it contradicts the terms of the Roseville Sublease.  The Roseville Sublease obligates Debtors to remove

7

personal property and trade fixtures such as storage racking, security system, computer system, office furniture, signs and similar items before Debtors leave the premises. Under Section 365(d)(3), therefore, the removal of the Abandoned Property is an obligation of Debtors before rejection of the Sublease.

13. Further, it is likely a portion of the Abandoned Property may have been brought to the store post-petition for purposes of Debtors' GOB sales. The Agency Agreement approved by the Court for the GOB sales authorized Debtor's Agent "to transfer Merchandise between and among the Closing Locations …." This post-petition, pre-rejection transfer of property that Debtors now propose to abandon entitles TSA to an administrative expense claim for the cost of removal of this property. *See In re National Refractories & Minerals Corp.*, 297 B.R. 614, 620 (Bankr. N.D. Cal. 2003) (landlord is entitled to administrative claim for abandoned items of personal property brought to the premises post-petition and pre-rejection).[3]

14. TSA reserves all of its rights to recover expenses under both Sections 365(d)(3) and 503(b), and as Cure Amounts.

**D.    Cure Amounts Must Be Paid Promptly.**

15. With respect to payment of Cure Amounts, Debtors propose to pay undisputed Cure Amounts as soon as practicable following the Closings. Disputed portions would not be paid until Debtors reached agreement with the lessor or the entry of a Court order fixing the Cure Amount. TSA objects with respect to Debtors' proposal for both undisputed and disputed Cure Amounts. Under Section 365(b)(1) of the Bankruptcy Code, a lease cannot be assumed until the trustee cures or provides adequate assurance that the trustee will promptly cure. As it relates to undisputed portions of the Cure Amounts, Debtor should be required to pay such amounts at

---

[3] The personal property involved in the *National Refractories* case included but was not limited to hazardous materials. In its analysis, the *National Refractories* court did not distinguish between hazardous materials and other personal property. Therefore, it is no answer for Debtors to assert any materials it abandons may not be hazardous materials.

8

closing or within two business days following closing, not at some indeterminate future date when Debtors deem it "practicable." As it relates to disputed portions of Cure Amounts, assignment of leases should not be allowed until such disputed portions are resolved by agreement or court order. Otherwise, TSA and other Landlords can be held hostage by Debtors for significant periods of time with respect to potentially substantial portions of legitimate Cure Amounts. At a minimum, Debtors should be required to escrow sufficient proceeds to pay the full amount of disputed portions of Cure Amounts.

16.    Finally, Debtors should provide a minimum of one week for TSA and other landlords to object to Debtors' proposed Cure Amounts.

## CONCLUSION

For the foregoing reasons, the procedures requested by Debtors should not be approved and the Motion should be denied.

DATED this 11th day of February, 2009.

/s/ John P. Van Beek
Neil D. Goldman (VSB #18352)
John P. Van Beek (VSB #308987)
Libeau J. Berthelot (VSB #72730)
YOUNG, GOLDMAN & BAN BEEK, P.C.
510 King Street, Suite 416
Alexandria, VA  22314
Telephone:  (703) 684-3260
Facsimile:  (703) 548-4742
E-mail:  ngoldman@ygvb.com

Of Counsel:
Peter Cal, Esq. (not admitted in Virginia)
Sherman and Howard
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Telephone:  (303) 299-8244
Facsimile:  (303) 298-0940
E-mail:  pcal@shermanhoward.com

ATTORNEYS FOR TSA STORES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2009, a true and correct copy of the foregoing **TSA STORES, INC.'S OBJECTION TO DEBTORS' MOTION FOR ORDERS UNDER BANKRUPTCY CODE SECTIONS 105, 363 AND 365 (I) APPROVING BIDDING AND AUCTION PROCEDURES FOR SALE OF UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES, (II) SETTING SALE HEARING DATES AND (III) AUTHORIZING AND APPROVING (A) SALE OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES FREE AND CLEAR OF ALL INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES AND (C) LEASE REJECTION PROCEDURES** to be served via email pursuant to Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notices, Case Management, and Administrative Procedures by emailing the Objection to: circuitcityservice@mcquirewoods.com and project.circuitcity@skadden.com, and to all persons receiving service via the Court's ECF System.

/s/ John P. Van Beek
John P. Van Beek

LITIGATION\1608706.2