# EXHIBIT A
# (Relevant Portions of Roseville Sublease)

1/26/93
florie\real_s\sport.1]new

## SUBLEASE AGREEMENT

THIS SUBLEASE is made as of the __29__ day of January, 1993, by and between Sportmart, Inc., a Delaware corporation, ("Landlord") and Circuit City Stores, Inc., a Virginia corporation, ("Tenant").

WITNESSETH THAT, in consideration of the rents, covenants and agreements hereinafter set forth, the Landlord and Tenant enter into the following agreements:

### 1. BASIC SUBLEASE DATA:

The descriptions and amounts set forth below are qualified by their usage elsewhere in this Sublease, including those lease sections referred to in parentheses:

1.1.1   **Premises** (Section 2.1): A portion of the Building located at 1750 Highway 36, West Roseville, Minnesota (the Property). The Premises are marked on Exhibit C by diagonal lines.

1.1.2   **Area of Premises** (Section 2.1): The Premises consist of the existing space which contains approximately 22,600 square feet along with the Expansion Area (to be constructed by Tenant at the north end of the Building pursuant to the provisions of Article III hereof) consisting of approximately 9,381 square feet. In no event, however, shall the size of the Expansion Area exceed 12,000 square feet. The total square feet of the Premises shall therefore not exceed 34,600 square feet.

1.1.3   **Sublease Term** (Section 2.3): The Term of this Sublease shall commence on the Commencement Date and, shall, subject to the Tenant's options to renew the Term of this Sublease, end on January 30, 2008, ("Sublease Expiration Date") unless sooner terminated in accordance with the provisions of this Sublease.

Provided Tenant is not in default of any of the terms and conditions of this Sublease, beyond any applicable grace or cure period, and further provided the Landlord has either (i) exercised the then current option or options granted to it under the Master Lease; or (ii) it has acquired legal title to the Property and in the event of the applicability of either of such events described at (i) or (ii) above, Tenant shall have the option to renew the Term of this Sublease for four (4) consecutive five year periods.

In the event Tenant intends to exercise the option granted herein, Tenant shall notify Landlord, in writing, at least 270 days prior to the expiration of the then remaining Term. No later than 120 days after Tenant has exercised an option, Landlord shall advise Tenant if it has either: (i) exercised or intends to exercise the current option granted to it under the Master Lease; or (ii) acquired or intends to acquire legal title to the Property, pursuant to the option granted to it under the Master Lease; or (iii) elected not to exercise either such option. If Landlord fails to provide Tenant with such notice, Tenant shall, within 10 business days following the expiration of the 120 day period, provide Landlord with an Additional Notice advising Landlord of such failure. If Landlord fails to respond to the Additional Notice, it shall be presumed that Landlord has elected not to (and will not thereafter elect to) exercise such option. In the event of Landlord's failure to respond to the Additional Notice, Landlord shall be presumed to have waived its rights to exercise both such options under the Master Lease. Tenant may rely upon such presumption and waiver in determining whether or not to exercise Tenant's rights under its recognition or similar agreement with the Master Landlord. If Landlord notifies Tenant that Landlord intends to proceed pursuant to (i) or (ii) above, and thereafter fails to proceed, then Landlord shall be deemed to be in default of this Sublease if such failure to proceed was caused by Landlord.

The same terms and conditions as set forth herein shall apply, during the options, except however, the Minimum Annual Rent, Minimum Monthly Rent and Gross Sales Volumes set forth herein shall be increased in the manner set forth in Sections 1.1.7 and 1.1.13.

1.1.4   **Commencement Date** (Section 2.3): January 16, 1993.

1.1.5   **Possession Date**: The date on which Landlord will make the Premises available for commencement of Tenant's Work. The Possession Date shall occur on the date on which this Sublease is executed and delivered by Landlord and Tenant.

1.1.6   **Effective Date of Sublease**: If either: (i) this Lease is executed subsequent to January 1, 1993; or (ii) if the conditions precedent described at Section 3.5 hereof are satisfied or waived subsequent to January 1, 1993, the Tenant's obligations to pay Rent shall be deemed nevertheless to have commenced as of January 1, 1993.

1



commencing on the date that Landlord acquires such title, the Special Minimum Rent shall be increased to an amount equal to $2.75 multiplied by the Expansion Area Square Footage. Anything contained herein to the contrary notwithstanding, Tenant shall have the same right, if any, to abate or set-off against Special Minimum Rent as Tenant has to abate or offset with respect to Minimum Rent.

1.1.8   **Additional Rent**:
Common Area Costs           (Section 6.2)
Taxes                       (Section 4.6)

1.1.9   **Tenant's Pro Rata Share** shall be equal to the product obtained by multiplying, as the case may be, Common Area Maintenance Charges or Taxes by a fraction, the numerator of which shall be the leasable floor area of the Premises, and the denominator of which shall be the leasable floor area in the Building.

1.1.10  **Use, Exclusive Use and Prohibited Uses** (Section 2.5): Tenant shall initially maintain, use and operate the Premises as a retail store for the sales of consumer, office and automotive electronics products, computer and related hardware and software, entertainment software, cellular telephones, household appliances, entertainment media, and related goods, commonly sold in a majority of Tenant's other retail stores in the Minneapolis, Minnesota area, and for the servicing and warehousing of same, and for the sale and installation of motor vehicle audio, stereo and telephone systems and for ancillary office and warehouse uses. Thereafter, subject to the last paragraph of this Section 1.1.10, and, subject to receiving Landlord's written consent (as provided below), Tenant shall have the right to use the Premises for any lawful retail use.

In the event the Tenant proposes to use the Premises for any purpose which does not fully comply with the foregoing provisions, Tenant shall first give written notice to Landlord of its intention to do, which notice shall contain a specific description of Tenant's proposed use. Landlord agrees, within thirty days after receipt of such notice, to either:

(i) not unreasonably withhold or delay its consent;
(ii) terminate this Sublease, in which event this Sublease shall terminate on the ninetieth (90th) day after the Landlord's receipt of Tenant's proposed change in use. Such termination shall occur in accordance with the provisions of this Sublease relating to the surrender of the Premises at the expiration of the Term.

In the event Landlord has terminated this Sublease pursuant to the provisions of this Section 1.1.10 (ii), and it is determined that it would have been unreasonable for Landlord to have withheld its consent to the proposed change in use, then and only in such event the Landlord shall be obligated to reimburse the Tenant for the unamortized cost of Tenant's leasehold improvements in the manner and to the extent set forth at Section 13.1.B.2 of this Sublease.

With respect to "(i)" above, Landlord shall supply to Tenant the basis upon which it has withheld its consent to Tenant's proposed change of use. With respect to "(ii)" above, Landlord shall not have the right to terminate this Sublease and recapture the Premises where substantially all of Tenant's superstores in Minnesota will be changing to the same proposed different retail primary use. If Landlord shall have failed to notify Tenant in writing of Landlord's election to proceed pursuant to either "i" or "ii" above within thirty (30) days after Landlord's receipt of Tenant's notice, Tenant shall provide Landlord with a second notice and if Landlord shall thereafter fail to notify Tenant in writing of Landlord's election within the ten (10) day period following the receipt of the second notice then, Landlord shall be deemed to have consented to the proposed change in use. Notwithstanding anything contained herein to the contrary, in the event the Landlord has elected to terminate this Sublease pursuant to (ii) above, Tenant shall have the right to nullify Landlord's termination and reinstate this Sublease by notifying Landlord of Tenant's election to so reinstate this Sublease. Such election by Tenant must be made within fifteen (15) business days following the receipt of Landlord's termination notice.

So long as the Premises are primarily used for the initial uses set forth above, no other tenant or occupant of the Building shall be entitled to use more than 2,000 square feet of its premises for the sale of such items in the aggregate.

So long as Landlord is operating a sporting goods store in the Building, Tenant shall not operate its business as a sporting goods store (sporting goods including specifically, but not limited thereto, athletic footwear and athletic apparel), as such is operated by Landlord from time to time; provided, however, Tenant shall not be in violation of the foregoing if it utilizes less than two thousand (2,000) square feet of its Premises for the sale of such items, in the aggregate.

1.1.11  **Tenant's Trade Name** (Section 8.1): Tenant shall initially open its business under the trade name of Circuit City.

1.1.12  **Security Deposit** (Article XV): Intentionally Omitted.

1.1.13  **Percentage Rent** (Section 4.1):

3

as each such inspection discloses to be required and, in addition, all repairs, testing and servicing as shall be necessary or reasonably required by Landlord or Landlord's insurance underwriter. A suitable contractor shall be one who is reliable and capable of performing Tenant's obligations hereunder and reasonably approved by Landlord.

If replacement of any portion of the Premises, which Tenant is required to maintain is required, Tenant shall make such replacements with equipment, fixtures, systems and appurtenances of the same quality. If the Tenant fails to perform its maintenance, repair and replacement obligations under this section, the Landlord may, but shall not be obligated to, perform such work (after notice to Tenant and Tenant's failure to perform same in accordance with the provisions of Section 18.1 below) and add the cost of the same (on the basis of the actual cost plus ten percent (10%) for overhead and supervision) to the next installment of Minimum Monthly Rent due hereunder.

Section 9.3. Surrender of Premises.

Upon the termination of this Sublease, Tenant shall surrender the Premises in a broom-clean condition, free of debris and in the same condition (subject to the alterations, changes, additions and improvements made by Tenant pursuant to this Sublease) as the Premises were on the date the Tenant opened the Premises for business to the public, reasonable wear and tear and fire casualty and condemnation excepted, and shall surrender all keys for the Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks and safes in the Premises. During the last thirty (30) days of such Term, Tenant shall remove all of its trade fixtures described at Exhibit I hereof, and Tenant shall repair any damage to the Premises caused by such removal.

Any alterations, changes, additions and improvements made by Tenant pursuant to this Sublease shall be deemed to be abandoned by Tenant at the expiration or sooner termination of this Sublease and such abandoned property shall, become Landlord's property, and may be sold, destroyed or otherwise disposed of by Landlord without notice or obligation to compensate Tenant. Tenant shall not remove any lighting fixtures, (except as set forth on Exhibit I hereof), or the heating and air conditioning system or the pylon sign (other than Tenant's sign identification panel) unless requested, in writing, to do so by Landlord. Tenant's obligation to observe or perform the obligations of this Section 9.3 shall survive the termination of the Term.

Section 9.4. Access to Building.

Anything contained in this Sublease to the contrary notwithstanding, Tenant shall have ~~right~~ right to (AA) enter those portions of the Building not being leased to Tenant in order for Tenant to exercise its rights and/or to perform its obligations under this Sublease (including, without limitation, in connection with the performance of Tenant's Work pursuant to Article III and the performance of Tenant's maintenance obligations pursuant to Section 9.2) provided that: (a) Tenant provides Landlord with at least three (3) days' advance notice of each such entry (except in the event of emergencies); (b) Tenant does not unreasonably interfere with the business operations being conducted at such portions of the Building; and (c) Tenant performs such work as quickly as possible under the circumstances; and (d) Tenant indemnifies and saves Landlord harmless from and against any and all liabilities, liens, claims, demands, damages, expenses, reasonable attorneys' fees, costs, fines, penalties, suits, proceedings, actions and causes of action of any kind and every nature arising out of or growing out of, or in any way connection with, such entry.

ARTICLE X
LIENS, SIGNS, AWNINGS, CANOPIES

Section 10.1. Tenant Shall Discharge All Liens.

Tenant will not create, permit to be created or to remain, and will discharge, any lien (including, but not limited to, the liens of mechanics, laborers or materialmen for work or materials alleged to be done or furnished in connection with the Premises), encumbrance or other charge upon the Premises or any part thereof, upon Tenant's leasehold interest therein.

Tenant shall have the right to contest, in good faith, and by appropriate legal proceedings, the validity or amount of any mechanics', laborers' or materialmen's lien or claimed lien. In the event of such contest, Tenant shall within fifteen (15) days give to Landlord a bond or other security in form and substance as may be required by Landlord to insure payment thereof and to prevent any sale, foreclosure or forfeiture of the Premises or any part thereof by reason of such nonpayment. On final determination of such lien or such claim for lien, and upon such payment and release or satisfaction, Landlord will promptly return to Tenant such security as Landlord shall have received in connection with such contest. Landlord reserves the right to enter the Premises to post and keep posted notices of non-responsibility for any such lien. Tenant will pay, protect and indemnify Landlord within ten (10) days after demand therefor from and against all liabilities (actual or contingent), losses, claims, damages, costs and expenses, including reasonable attorneys' fees, reasonably incurred by Landlord by reason of the filing of any lien and/or the removal of the same.

Section 10.2. Signs.

Tenant shall have the right to construct and thereafter repair, replace and maintain, at its own expenses, signs in the size and with the colors and the materials and at the approximate location designated on Exhibits C and F-1 hereof. Landlord agrees that Tenant shall be entitled to install its pylon sign at the approximate location wherein the former occupant's pylon sign was located. The Tenant has been advised by the Landlord that governmental ordinances with respect to pylon signs at the Property allow a maximum of 75 square feet of signage and allow a maximum height of 20 feet. Landlord hereby consents to Tenant's proposed pylon sign

17

EXHIBIT "I"

STORE FIXTURES

ALL STORAGE RACKING

ALL SECURITY SYSTEM ITEMS

TELEPHONES AND PAGING SYSTEMS

COMPUTER SYSTEM

OFFICE FURNITURE AND TRASH RECEPTACLES

BATTERY CHARGER

TRASH COMPACTOR

SIGNS (INTERIOR/EXTERIOR) EXCLUDING, HOWEVER, THE PYLON STRUCTURE AND ALL EXTERIOR SIGN BOXES

ANTENNA SYSTEM

ELECTRONIC SWITCHING

AIR COMPRESSOR (ROADSHOP)

SAFE

CONVEYOR

MEDECO CYLINDER LOCKS (5)

REFRIGERATOR AND MICROWAVE USED BY EMPLOYEES

TACK BOARDS

WATER COOLER

FIRE EXTINGUISHERS

AUDIO ROOM FIXTURES AND SWITCHGEAR

PICTURES

WAREHOUSE AND MATERIAL HANDLING EQUIPMENT (MOVABLE LADDERS, DOLLIES, ETC.)

TRACK LIGHTS (CANS ONLY, NOT TRACKS)

[Jc\013363\002\0n0c$a26.351]
[10/08/91 4:23pm; KRAUSE_P]