# EXHIBIT B
# (Relevant Portions of Daly City Sublease)

## SUBLEASE

THIS SUBLEASE (this "Sublease") is made and entered into as of the _9th_ day of November, 1993 by and between **SPORTMART, INC.**, a Delaware corporation (hereinafter called "Subtenant"), and **THE JOHN BREUNER COMPANY**, a California corporation (hereinafter called "Sublandlord").

### Recitals:

A. By that certain Lease dated March 3, 1970, amended by a certain Consent to Sublease and Amendment of Lease ("Amendment to Prime Lease") dated as of July 14, 1989, copies of which are attached hereto as Exhibit A and by this reference made a part hereof (said lease and the Amendment to Prime Lease hereinafter collectively called the "Prime Lease"), Crocker Land Company, a California corporation ("Crocker"), leased to Sublandlord a total of approximately 120,000 square feet of ground floor and mezzanine space as depicted on Exhibit C (hereinafter called the "Master Premises"), being a portion of the shopping center commonly known as Serramonte Plaza, located at Gellert Boulevard & Serramonte Boulevard in Daly City, California and legally described on Exhibit B attached hereto (the "Shopping Center"). The initial term of the Prime Lease commenced on November 11, 1970 and will expire on November 10, 1998. Sublandlord has options ("Prime Lease Options") to extend the term for three (3) successive additional periods of five (5) years each, which, if exercised in full, would extend the expiration date of the Prime Lease to November 10, 2013.

B. Crocker's successor in interest and the current landlord under the Prime Lease is Serramonte Plaza L.P., a California limited partnership (hereinafter, together with its successors and assigns, called "Landlord").

C. A portion of the Master Premises ("Circuit City Premises"), as depicted on Exhibit C, has been subleased to Circuit City Stores, Inc. (that company, or its successor occupants of the Circuit City Premises, referred to as "Circuit City") by Sublease dated June, 1989 ("Circuit City Sublease").

D. Subject to the consent of Landlord, Subtenant desires to sublease from Sublandlord and Sublandlord desires to sublease to Subtenant the remainder of the Master Premises (hereinafter called the "Subpremises"), containing approximately 77,500 square feet (subject to remeasurement as provided in Paragraph 4(a)(i) below) and depicted on Exhibit C attached hereto and made a part hereof, all upon the terms and subject to the conditions and provisions hereinafter set forth.

LJM\LEASES\SPORTMKT\BREUNERS.5



11/04/93

lines to the building; and (iv) all costs, to the extent not reimbursed by insurance, to repair or reconstruct the building after casualty, as required under Paragraph 26 of the Prime Lease.

(d) **Taxes and Insurance**. At Sublandlord's option, Subtenant shall also (i) pay the real estate taxes which are otherwise the responsibility of Sublandlord under subparagraph 6(a)(i) above and Paragraph 29 of the Prime Lease, and (ii) obtain, maintain and pay the premiums for the insurance policies to be maintained by Sublandlord under subparagraph 6(a)(ii) above and Paragraph 30 of the Prime Lease. The costs incurred and funds expended in connection with the foregoing (including reasonable costs and fees expended in protesting any taxes) are Master Premises Obligations Costs.

(e) **Payment of Master Premises Obligations Costs**. Subtenant shall be responsible for its pro rata share of the Master Premises Obligations Costs incurred from time to time, and Circuit City shall be responsible for the balance (its pro rata share) of such Master Premises Obligations Costs. Circuit City shall pay to Subtenant Circuit City's share of the Master Premises Obligations Costs within thirty (30) days after receipt of Subtenant's invoice therefor. If Circuit City fails to make such payment within ninety (90) days after receipt of Subtenant's invoice, Subtenant may then invoice Sublandlord for such amount with interest from the date payment was due from Circuit City. If Sublandlord fails to pay such amount within thirty (30) days after receipt of Subtenant's invoice, Subtenant may deduct such amount, with interest as provided herein, from the next installment or installments of rent accruing hereunder. Sublandlord shall cooperate with Subtenant in directing Circuit City to pay its share of Master Premises Obligations Costs directly to Subtenant.

10. **Alterations**. Subtenant may, at its expense, make additions and alterations to the improvements constituting the Subpremises, provided that (i) if so required under the Prime Lease (but unless Landlord and Subtenant have agreed otherwise), Subtenant shall have first obtained the approval of Landlord, and (ii) such work shall be expeditiously completed in a good and workmanlike manner and in compliance with all applicable legal requirements, the requirements of all insurance policies required to be maintained hereunder and any other requirements under the Prime Lease. All such additions and alterations shall be and remain part of the realty and the property of Landlord, and shall be deemed part of the Subpremises and shall be subject to this Sublease. Subtenant may place upon the Property any inventory, trade fixtures, machinery or equipment belonging to Subtenant or third parties and may remove the same at any time during the term of this Sublease, provided that Subtenant shall repair any damage to the Subpremises caused by such removal. There shall be no adjustment of Minimum Rent hereunder resulting from any Subtenant alterations, additions or improvements, nor shall there be any further remeasurement of the Subpremises.

<u>SECOND AMENDMENT OF LEASE AND
AMENDMENT OF SUBLEASE;
CONSENT TO SUBLEASE AND
ATTORNMENT AND NON-DISTURBANCE AGREEMENT</u>

THIS SECOND AMENDMENT OF LEASE AND AMENDMENT OF SUBLEASE; CONSENT TO SUBLEASE AND ATTORNMENT AND NON-DISTURBANCE AGREEMENT ("Agreement") is entered into as of February _____, 1994, among **SERRAMONTE PLAZA LIMITED PARTNERSHIP**, a California limited partnership ("Landlord"), **THE JOHN BREUNER COMPANY**, a California corporation ("Tenant") and **SPORTMART, INC.**, a Delaware corporation ("Subtenant").

RECITALS

A.  On March 3, 1970, Crocker Land Company, a California corporation ("Crocker"), leased to Tenant a total of approximately 120,000 square feet of ground floor and mezzanine space of the improved real property commonly known as 301 Serramonte Plaza, Daly City, California 94015 and depicted on the site plan attached as <u>Exhibit A-1</u> (the "Leased Premises"). The building containing the Leased Premises is sometimes referred to in this Agreement as the "Building" and the Serramonte Plaza shopping center is sometimes referred to in this Agreement as the "Shopping Center". The Shopping Center is more particularly described on <u>Exhibit A-2</u> attached, and is a portion of a larger shopping complex located on the land legally described on <u>Exhibit A-3</u> attached (the "Complex").

B.  The aforesaid lease (the "Original Lease") was amended by a Consent to Sublease and Amendment of Lease dated July 14, 1989, between Investors First Staged Equity, L.P., a California limited partnership, and Tenant (the "Lease Amendment"). A copy of the Original Lease and Lease Amendment are attached to this Agreement as <u>Exhibit B</u>, and are collectively referred to in this Agreement as the "Lease".

C.  Landlord is Crocker's successor in interest and the current landlord under the Lease.

D.  Tenant has subleased approximately 29,700 square feet of ground floor space and 3,560 square feet of mezzanine space to Circuit City pursuant to a written sublease dated June, 1989 (the "Circuit City Sublease").

E.  On November 9, 1993, Tenant entered into a sublease with Subtenant, a copy of which, together with all amendments thereto, is attached as <u>Exhibit C</u> (the "Sublease"). The Sublease covers the entire remaining portion of the Leased Premises, consisting of approximately 78,237 square feet, as more specifically described in the Sublease (the "Subleased Premises").

029009.014R                              1.

days in any consecutive twelve (12) month period; (iii) subject to the other provisions of this Agreement, the Lease and the Sublease, to accommodate a change in use of the Subleased Premises or a portion thereof or pursuant to an assignment or subletting or re-letting of all or a portion of the Subleased Premises, provided that the same does not result in the Subleased Premises or such portion thereof being closed to the public for more than one hundred eighty (180) days beginning from the effective date of the assignment or subletting; or (iv) as a result of unavoidable events outside of the reasonable control of the occupant, including but not limited to, acts of God, casualty, condemnation, other governmental rules, orders, acts or requirements, war, insurrection, riot and labor disputes (but excluding the occupant's financial condition or economic conditions in general).

3.7 **Consents**. Whenever Subtenant requires Landlord's consent or approval, such consent or approval shall not be unreasonably withheld, delayed or conditioned.

3.8. **Exclusives**.

(a) Landlord agrees that Tenant shall not suffer any leasable floor area within the Complex to be used for the sale of sporting goods, sports apparel and/or athletic footwear, provided, however, Subtenant shall not unreasonably withhold its consent to sale of sporting goods, sports apparel and/or athletic footwear by another Complex lessee occupying 10,000 square feet or more of leasable floor area if such sale is incidental to such other lessee's primary business, and further provided that at all events sale by a shoe store of athletic footwear shall be considered a primary use, except as follows: a shoe store may utilize up to one hundred square feet of leasable floor area for the display of athletic footwear, so long as such display is not used to circumvent the provisions hereof (as would be the case where such display contained each style carried by such other retailer, with the various sizes and so forth being contained in a stock room), provided, however, in all events up to 100 square feet of stock room area for athletic footwear shall be permitted. "Incidental sales" of merchandise is defined as sales from retail display space in a tenant's premises used for display of such merchandise of a size not greater than the lesser of 1,000 square feet and five (5%) percent of such tenant's total rentable square footage. Landlord's sole remedy for Subtenant's failure to act reasonably shall be to obtain injunctive or other equitable relief, and in no event shall Subtenant be liable for monetary damages. Notwithstanding anything herein to the contrary, Subtenant acknowledges that Circuit City, a subtenant of Tenant, has the right to sell all merchandise customarily sold by Circuit City Stores, Inc. and that Landlord does not have the ability to enforce Subtenant's exclusive against Circuit City.

(b) The Subleased Premises shall not be used (i) primarily for the uses set forth in Exhibit G so long as the

029009.014R                                12.