**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re:

CIRCUIT CITY STORES, INC., et al.,         Case No. 08-35653-KRH
                                                          Chapter 11
                        Debtors.                 Jointly Administered

**OBJECTION OF CITRUS PARK CC, LLC, TO DEBTORS'
MOTION FOR ORDER UNDER 11 U.S.C. §§105 AND 363
APPROVING PROCEDURES TO SELL CERTAIN MISCELLANEOUS
ASSETS FREE AND CLEAR OF ALL INTERESTS WITHOUT FURTHER
<u>ORDER OF COURT (DOCKET ENTRY #1922)</u>**

Citrus Park CC, LLC ("CPCC"), a Florida limited liability company, creditor and party in interest, hereby objects to the Debtors' Motion for Order Under 11 U.S.C. §§105 and 363 Approving Procedures to Sell Certain Miscellaneous Assets Free and Clear of All Interests Without Further Order of Court (the "Motion"), upon the following grounds:

1. On or about November 10, 2008, Circuit City Stores, Inc., and certain additional related and affiliated entities (the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code, Title 11, United States Code, in this Honorable Court.

2. The Debtors are in possession of their respective estates as debtors in possession, pursuant to 11 U.S.C. §§1107 and 1108.

3. A committee of unsecured creditors has been appointed by the Office of the United States Trustee and is active in this case.

4. This is an objection to a motion filed by the Debtors and is a contested matter. The Court's jurisdiction to hear and decide the Motion and CPCC's objection thereto exists

Lawrence H. Glanzer (VSB No. 15831)
Roussos, Lassiter, Glanzer & Marcus, P.L.C.
580 East Main Street, Suite 300
Norfolk, VA 23510
757-622-9005 (voice); 757-624-9257 (fax)
Internet e-mail: glanzer@rlglegal.com
Of counsel for Citrus Park CC, L.L.C.

pursuant to 28 U.S.C. §§157 and 1334. It is a core proceeding, pursuant to 28 U.S.C. §157(b)(2)(A), (M) and (N).

5. On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at its remaining 567 stores, pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture (the "Agent"). The GOB sales are currently underway.

6. CPCC is the lessor of the Circuit City Superstore located in Tampa Florida, identified as Store No. 3269, at Citrus Park. The lease was originally entered into on or about January 10, 2003, by and between Circuit City Stores, Inc., and CC Citrus Park, LLC, a California limited liability company. The property on which Store No. 3269 is located was sold by the original lessor to CPCC on or about July 10, 2003, and notice thereof was duly given to the Lease Administrator for Circuit City Stores, Inc., on that date. A copy of the lease is appended hereto as "Exhibit A." A copy of the notification to Circuit City Stores, Inc., of the change in property ownership is appended hereto as "Exhibit B."

7. On or about February 3, 2009, the Debtors filed the Motion. In it, the Debtors seek, *inter alia*, authority to sell certain assets, described therein as the "Miscellaneous Assets," pursuant to certain expedited procedures. According to Paragraph 8 of the Motion, the Miscellaneous Assets may include "fixtures" and "other personal and real property."

8. In particular, in Paragraph 10(a) of the Motion, the Debtors seek entry of an order in which they would be

> authorized to sell Miscellaneous Assets with a purchase price equal to or less than $100,000.00 without notice to any party or further court order; provided however, that within seven days of the closing of such sale, the Debtors shall provide a report of such sale to counsel for the DIP Agent and counsel for the Creditors' Committee, which report shall identify the purchaser, the Miscellaneous Assets sold, and the purchase price for such assets.

2

9. CPCC agrees that the Debtors have the right to seek authority to sell assets and that the liquidation should be conducted in a manner that will maximize the net proceeds of such sales, in an efficient and cost-effective manner. However, the procedures that are sought to be implemented in Paragraph 10(a) of the Motion are unnecessarily summary and cavalier in nature, exposing CPCC to significant risk and loss.

10. Were the Motion to be granted and an order entered that includes the language in Paragraph 10(a) of the Motion, the Debtors would have the right and authority to sell "fixtures," including, perhaps, items and equipment that, under Florida law, have become permanently affixed to the underlying fee, with no notice to CPCC, and no opportunity afforded to CPCC to object or intervene to protect its interests, as long as the purchase price to be paid is equal to or less than $100,000.00.

11. Paragraph 2 of the lease for Store No. 3269 specifies the demised property. It states:

> Landlord hereby demises and lets to Tenant and Tenant hereby takes and leases from Landlord for the Term and upon the provisions hereinafter specified the following described property (collectively, the "Leased Premises"): (i) the premises described in Exhibit "A" attached hereto and made a part hereof together with the easements, rights and appurtenances thereunto belonging or appertaining (collectively, the "Land"); (ii) the buildings structures, fixtures and other improvements now existing on the Land or that exist in the future (collectively, the "Improvements"), together with all additions and accessions thereto, substitutions therefor and replacements thereof permitted by this Lease excepting therefrom Tenant's Trade Fixtures and all property that does not constitute real property under the laws of the State.

12. The term, "Trade Fixtures," is defined, in Paragraph 1(hh), to mean "all warehouse racking systems, counters, cases, shelving and similar fixtures, which are owned by Tenant and used in the operation of the business conducted on the Leased Premises."

13. CPCC does not object to any sale of Trade Fixtures located at Store No. 3269. It does object to a sale, with or without notice, to fixtures that are not Trade Fixtures.

14. In *Commercial Finance Co. v. Brooks Hotel Co.*, 98 Fla. 410, 414, 123 So. 814, 816 (Fla. 1929), the Supreme Court of Florida defined the term fixture to mean "an article which was a chattel, but which by being physically annexed or affixed to the realty by some one having an interest in the soil becomes part and parcel of it."

15. The Court, in *Brooks Hotel*, went on to give the analytical framework by which to determine whether a thing had become a fixture, stating that,

> in order to ascertain whether or not a particular thing is a fixture it is necessary to apply the three rules which the courts have most generally in adjudicated cases agreed upon. They are as follows: First, actual annexation to the realty or something appurtenant thereto; second, appropriateness to the use or purpose of that part of the realty with which it is connected, and third, the intention of the party making the annexation that it shall be a permanent accession to the freehold. What that intention was in making the annexation is inferred from the following facts: a, the nature of the article annexed; b, the relation of the party making the annexation; c, the structure and mode of annexation, and d, the purpose or use for which the annexation has been made.

98 Fla. at 415, 123 So. at 816.

16. The procedures of Paragraph 10(a) of the Motion would deprive CPCC of the opportunity to protect its interests in this Court and to assert the status of an item to be sold as a fixture, under Florida law, based solely on the proposed sale price of that item. CPCC recognizes that the Debtors have many stores to be liquidated, and that the claims of creditors in this case are extremely numerous and large, but that is not sufficient justification to deprive CPCC, or any landlord, of what amounts to due process of law.

17. The Motion seeks authority to sell assets with a purchase price of less than $100,000.00 (the "10(a) Assets") free and clear of liens and interests, without further notice, including, apparently, assets in which CPCC and other lessors may have an interest. It is worth

noting, here, that the procedures called for in the very next subparagraph, 10(b), pertaining to assets with a purchase price of over $100,000.00 but less than $500,000.00 ("10(b) Assets"), specifically include notice, if applicable, to the landlord of the property where the assets in question may be located. The only difference between 10(a) Assets and 10(b) Assets is the proposed price to be paid for them.

18.     Sale of assets under §363(b) free and clear of interests of third parties requires strict compliance with the provisions of §363(f). *See In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 530 (Bkrtcy. E.D.Va. 2004). If the asset to be sold constitutes a fixture in Store No. 3269, then, under Florida law, CPCC has, or may have, an interest in it. The Debtors seem to recognize the possibility that the assets to be sold are or may be subject to the interests of lessors of property, because they have provided lessors the opportunity to learn of the sale, before it may be completed, for 10(b) Assets. CPCC's rights ought not to be disregarded based solely on the arbitrary distinction drawn in the Motion with respect to purchase price.

19.     The Motion recites, accurately, the five conditions to a sale free and clear of liens and interests that are set forth, in the disjunctive, in §363(f). What it fails to do is to explain or assert under which of the five conditions it proposes to effect a sale free and clear of liens or interests as to any of the assets to be sold, let alone particular assets, particular liens or particular interests. The Court may not approve the Motion unless the Debtor satisfies at least one of these conditions as to the assets to be sold. *In re Silver*, 338 B.R. 277, 280 (Bkrtcy. E.D.Va. 2004). Of course, this cannot possibly occur unless and until it is known what the asset is that is proposed to be sold and what the interest is that is proposed to be terminated by the order approving the sale.

20. In Paragraph 20 of the Motion, the Debtors state the rationale that, they believe, justifies putting into place a procedure that dispenses with any requirement of notice to an affected party in connection with the sale of a 10(a) Asset:

> [A]llowing the Debtors to sell assets pursuant to the procedures proposed above provides the most efficient and cost-effective means of maximizing the value of the Miscellaneous Assets and, thus, is in the best interests of the Debtors' estates. Obtaining Court approval of each such sale transaction would result in administrative expenses for drafting, serving, and filing pleadings, as well as time incurred by attorneys for appearing at Court hearings. The Debtors believe that the proceeds that will be generated by many of the sale transactions for Miscellaneous Assets do not warrant incurring such expenses.

21. Even if this rationale were sufficient to trump the requirements of due process in the case of assets of nominal value, it must be remembered that the Debtors are asking for what amounts to *carte blanche* authority for selling assets for amounts of up to $100,000.00 *each*. Rule 6004(d) establishes an expedited notice procedure for a sale pursuant to §363 for estate assets that, in the aggregate, do not exceed $2,500.00 in value but, even then, some notice is required to be given. The Debtors' Motion goes far beyond mere administrative convenience: it is overreaching, in the extreme.

22. Rule 6004(c) demands that notice of the sale of property of the estate free and clear of liens or other interests be given to those who have liens or other interests in the property to be sold and, at a minimum, provide an opportunity to that party to object. "Due process under the *Fifth Amendment* requires that a secured party whose collateral is about to be sold free and clear of his lien be given fair notice of the intended action and an opportunity to be heard." *Takeout Taxi, supra*, 307 B.R. at 531 (italics in original). Here, CPCC is not asserting a security interest in collateral but, possibly, an ownership interest in property to which the Debtors may also assert a right of ownership. However, this is a distinction without a difference. *See In re*

*DeCelis*, 349 B.R. 465 (Bkrtcy. E.D.Va. 2006) (dealing with attempt to sell property free and clear of interest of co-owner of property).

23. Giving the Debtors the authority to sell unspecified 10(a) Assets free and clear of liens or interests, with no notice to parties whose liens or interests may be affected thereby and no opportunity afforded to those parties to have their claims or interests heard and adjudicated by this Court, based on considerations only of the convenience of the Debtors or their liquidating agent, and without any showing as to any of the conditions for such sales called for in 11 U.S.C. §363(f), would be to give the Debtors the ability to deprive those parties, including CPCC, of property without due process of law and in contravention of the Bankruptcy Code.

24. Having set forth its points and authorities in support of its foregoing objection, CPCC respectfully requests that the requirement of a separate memorandum in support of the objection be waived.

WHEREFORE, having demonstrated that the Motion fails to satisfy the minimum requirements of due process and for sale of assets free and clear of liens or interests under 11 U.S.C. §363(f), with respect to the 10(a) Assets, Citrus Park CC, LLC, respectfully prays that its objection be sustained and the Motion be denied, as well as for such other and further relief as to the Court may seem proper.

/s/ *Lawrence H. Glanzer*
Lawrence H. Glanzer (VSB No. 15831)
Roussos, Lassiter, Glanzer & Marcus, P.L.C.
580 East Main Street, Suite 300
Norfolk, VA 23510
757-622-9005 (voice); 757-624-9257 (fax)
Internet e-mail: glanzer@rlglegal.com
Of counsel for Citrus Park CC, L.L.C.

PROOF OF SERVICE

      I hereby certify that on February 11, 2009, I will cause the foregoing Notice of Appearance and Request for Service to be filed using the Court's CM/ECF system, which will then send a Notice of Electronic Filing to all parties to the captioned cases who are registered users of the CM/ECF system, which shall constitute completed service upon those parties, and that, in addition, copies will be served by electronic mail upon those persons whose names are included in the Core Group Service List and Rule 2002 Service List, as maintained on the website of the Debtors' Court-approved noticing agent, in accordance with the Order on Case Management.

                                      /s/ *Lawrence H. Glanzer*
                                        Lawrence H. Glanzer