# EXHIBIT A

HICKSVILLE, NEW YORK

**GROUND LEASE**

between

**CIRCUIT CITY STORES, INC.,**

as Tenant

and

**RICMAC EQUITIES CORPORATION,**

as Landlord

dated October 21, 1996

H:\RJEKR\LSE\39153_5\54/64 (5736)

## TABLE OF CONTENTS

1.   Leased Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   Construction of Building and Improvements . . . . . . . . . . . . . . . . . . . . . . . 1

3.   Lease Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4.   Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5.   Signs and Communications Equipment . . . . . . . . . . . . . . . . . . . . . . . . . 4

6.   Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7.   Maintenance, Repairs and Replacements . . . . . . . . . . . . . . . . . . . . . . . . 5

8.   Payment of Utility Bills . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9.   Alterations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10.   Mechanics' Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11.   Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12.   Damages by Fire or Other Casualty . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13.   Condemnation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14.   Assignment and Subletting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15.   Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16.   Warranties and Representations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17.   Estoppel Certificates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18.   Subordination, Non-Disturbance and Attornment . . . . . . . . . . . . . . . . . . . 16

19.   Change of Landlord . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

20.   Tenant's Financing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

21.   Tenant's Property and Waiver of Landlord's Lien . . . . . . . . . . . . . . . . . . . 18

22.   Memorandum of Lease; Commencement Date Agreement . . . . . . . . . . . . . . 18

23.   Expiration of Term and Holding Over . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

24.   Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

25.   Events of Tenant's Default  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

26.   Landlord's Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

27.   Events of Landlord's Default; Tenant's Remedies . . . . . . . . . . . . . . . . .   23

28.   Waiver  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

29.   Compliance with Applicable Laws . . . . . . . . . . . . . . . . . . . . . . . . .   24

30.   Notices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

31.   Brokers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

32.   Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

33.   Effectiveness of Lease; Tenant's Right to Terminate . . . . . . . . . . . . . . .   28

34.   Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

35.   Tenant's Financing of Improvements  . . . . . . . . . . . . . . . . . . . . . . .   30

H:\RIEKR\LSE\39153_5\54/64 (5736)

## EXHIBITS

| | |
|---|---|
| "A" | Site Plan |
| "A-1" | Legal Description |
| "B" | Index of Definitions |
| "C" | Intentionally Deleted |
| "D" | Removable Trade Fixtures |
| "E" | Intentionally Deleted |
| "F" | Permitted Encumbrances |
| "G" | Subordination, Non-Disturbance and Attornment Agreement |
| "H" | Memorandum of Lease |
| "I" | Commencement Date Agreement |
| "J" | Indemnification Agreement |

H:\RIEKR\LSE\39153_5\54/64 (5736)

HICKSVILLE, NY

## GROUND LEASE

This GROUND LEASE (this "Lease") is made as of the ____ day of October, 1996, by and between RICMAC EQUITIES CORPORATION, a New York corporation, having an address at 430-440 Plainview Road, Hicksville, New York 11801 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at Deep Run I, 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

### W I T N E S S E T H:

That for and in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    <u>Leased Property</u>.  Landlord demises and leases to Tenant and Tenant leases and takes from Landlord, commencing on Landlord's delivery of the "Land" (as defined below) to Tenant, consisting of that approximately 118,800 square foot parcel (the "Land"), on which the Building and Other Improvements (as hereinafter defined) are or will be located, as more particularly shown (approximately) outlined in red on <u>Exhibit "A"</u> hereto (the "Site Plan"), located at 217 Bethpage Road, lying and being at Hicksville, in the Town of Oyster Bay (the "City"), County of Nassau, State of New York (the "State"), and more particularly shown on the Site Plan and described by metes and bounds or platted lot legal description on <u>Exhibit "A-1"</u> attached hereto and made a part hereof for all purposes.

2.    <u>Construction of Building and Improvements</u>. Commencing on November 1, 1996 ("delivery of the Land"), Landlord shall deliver the Land and Existing Improvements (hereinafter defined) to Tenant, free of debris and free of any existing tenancies or other rights of occupancy and Tenant shall have the right, subject to compliance with all applicable laws and regulations and paragraph 33(c) hereof, to demolish the existing buildings on the Land and remove all other improvements thereon (the "Existing Improvements"), including, without limitation, the removal of all hydraulic lift areas therein (the "Lift Areas") provided, Tenant constructs on the Land, subject to compliance with all applicable laws and regulations, a one-story retail building with provisions for customer pickup, delivery and car stereo installation

H:\RIEKR\LSE\39153_5\54/64 (5736)

facilities, initially for use as a Circuit City Superstore (the "Building"), together with loading ramps, sidewalks, trash compactor, transformer pad, parking area and other such appurtenances and improvements (collectively, the "Other Improvements").   The Building and Other Improvements are sometimes collectively referred to herein as the "Improvements".   The Improvements shall be constructed in accordance with the "Plans and Specifications" to be prepared by Tenant.  Tenant shall not commence construction of the Improvements until Tenant has delivered to Landlord evidence of insurance as set forth in paragraph 11 hereof.  Tenant shall deliver to Landlord copies of all building permits, the Plans and Specifications marked to show all deviations, certificates of occupancy and fire underwriters certificates, if any, upon completion of the Improvements.  Notwithstanding anything to the contrary provided herein, title to the Building and Other Improvements shall remain vested in Tenant until the expiration or earlier termination of this Lease at which time title to the Building and Other Improvements shall vest in Landlord, without compensation to Tenant.   The Land, when improved by the Improvements, shall sometimes be referred to as the "Premises".

3.    Lease Term.  Subject to the conditions to the effectiveness of this Lease set forth in paragraph 33, the construction term (the "Construction Term") of this Lease shall commence on the date of Landlord's delivery of the Land to Tenant in accordance with, and in the condition specified in, paragraph 2, and shall end on the "Commencement Date" (as defined in paragraph 4 below).  The main term (the "Main Term") of the Lease shall commence on the Commencement Date and shall end on the last day of January following the sixtieth (60th) anniversary of the Commencement Date.

Tenant shall have the right, at Tenant's option, to terminate this Lease, effective as of the following dates:  (i) the last day of January following the twentieth (20th) anniversary of the Commencement Date; (ii) the last day of January following the twenty-fifth (25th) anniversary of the Commencement Date; (iii) the last day of January following the thirtieth (30th) anniversary of the Commencement Date; (iv) the last day of January following the thirty-fifth (35th) anniversary of the Commencement Date; (v) the last day of January following the fortieth (40th) anniversary of the Commencement Date; (vi) the last day of January following the forty-fifth (45th) anniversary of the Commencement Date; (vii) the last day of January following the fiftieth (50th) anniversary of the Commencement Date; and (viii) the last day of January following the fifty-fifth (55th) anniversary of the Commencement Date.  If Tenant elects to

exercise its right to so terminate this Lease, Tenant shall give written notice thereof to Landlord at least two hundred and seventy (270) days prior to the effective date of termination. If this Lease is so terminated, Tenant shall have no further obligations or liabilities hereunder and, upon termination, title to the Building and Other Improvements shall vest in Landlord.

The Construction Term, and the Main Term are, collectively, the "Term". The term "Lease Year" shall mean each successive period of twelve (12) consecutive calendar months, commencing on the first day of each February during the Term, except that the first Lease Year shall commence on the Commencement Date and shall end on the last day of January following the first anniversary of the Commencement Date.

4.     Rent.

(a)     Base Rent. During the Construction Term, Tenant shall have no rental obligations nor shall Tenant be responsible for any Real Estate Taxes (as defined in paragraph 6) or any similar costs, fees, rentals or expenses except as hereinafter set forth. Tenant agrees to pay base rent ("Base Rent") for the Premises in the amounts and in the manner specified hereunder, commencing on the earlier to occur of (i) Tenant opening its store for business to the general public or (ii) June 1, 1997 (the "Commencement Date"). Notwithstanding the foregoing, commencing on delivery of the Land and continuing thereafter until the Commencement Date, Tenant agrees to pay one-half (½) the amount of annual Base Rent, together with Real Estate Taxes for the Premises in the manner set forth below and as set forth herein.

Tenant shall pay, without notice, demand, offset or abatement, except as specifically set forth herein, Base Rent in equal monthly installments, in advance on the first day of each succeeding calendar month throughout the Term, with appropriate proration for any partial calendar month or Lease Year, to the address given for Landlord in paragraph 30 hereof, unless Landlord shall give Tenant written notice of a change of address or of the party to whom such rents shall be payable along with written documentation reasonably satisfactory to Tenant of such party's right to receive payment hereunder. Base Rent shall be paid pursuant to the following schedule:

(i)     First Five Years. During the first five (5) Lease Years, Tenant shall pay annual Base Rent in the amount of Three Hundred Seventy-Five Thousand and No/100 Dollars ($375,000.00), payable in equal monthly installments of Thirty-One Thousand Two Hundred Fifty and No/100 Dollars ($31,250.00).

(ii)   Increases in Base Rent.  Annual Base Rent shall increase on the first day of the sixth (6th) and every succeeding fifth (5th) Lease Year over the Base Rent charged hereunder during the immediately preceding five (5) year period by ten percent (10%).

5.   Signs and Communications Equipment.

(a)   Signs.  Tenant shall have the right, at its sole cost and expense, to construct and install upon the Premises any and all desired signage consistent with governmental regulations, and Tenant shall retain ownership of all signage.

(b)   Communications Equipment.   Subject to all applicable laws and regulations, Tenant may, from time to time, install, maintain and/or replace any satellite dishes or antennas on the roof and/or exterior walls or parapet of the Building as Tenant deems necessary or desirable, and Tenant shall retain ownership of all communications equipment.

6.   Taxes.

(a)   Taxes Contemplated Hereunder.  The term "Real Estate Taxes" shall mean all general real estate taxes and assessments and other ad valorem taxes, rates and levies paid upon or with respect to the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed in lieu of any such taxes. Nothing contained in this Lease shall require Tenant to pay any local, county, municipal, state or federal income, franchise, corporate, estate, inheritance, succession, capital levy, business or transfer tax of Landlord, or any local, county, municipal, state or federal income, profits, gross receipts, sales or renewal tax or charge upon the rent or other charges payable by Tenant under this Lease, or any increase in Real Estate Taxes as a result of Landlord's sale, transfer, financing or refinancing of the Land.  Tenant shall be required to pay any commercial rent tax or use tax based upon the rental paid by Tenant hereunder to the extent such taxes are (i) levied against Tenant directly or (ii) in lieu of or in substitution for Real Estate Taxes. In the event such taxes are levied against Landlord, Tenant and Landlord shall share the burden of such taxes equally.

(b)   Payment of Real Estate Taxes.   Subject to Tenant's rights under subparagraph (c) below, Tenant shall pay, prior to any interest or penalties being imposed, all Real Estate Taxes affecting the Premises beginning on delivery of the Land, and ending upon the expiration or earlier termination of this Lease.  Tenant shall deliver a copy of the official paid receipt or other evidence of payment of Real Estate Taxes to Landlord within forty-five (45)

4

days after the last day to pay such Real Estate Taxes without penalty. Within thirty (30) days of the date hereof, Tenant shall reimburse Landlord for all Real Estate Taxes heretofore paid by Landlord for the months of November and December, 1996.

(c)    Contest of Real Estate Taxes and/or Assessed Valuation of Premises. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith. In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall cooperate with Tenant, execute any and all documents required in connection therewith and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution thereof.

7.    Maintenance, Repairs and Replacements. Tenant, at its sole cost and expense, shall be solely responsible for maintenance of the Premises during the Term.

8.    Payment of Utility Bills. Tenant will pay directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements.

9.    Alterations. During the Term, Tenant shall have the right, at its sole discretion and its sole cost, without Landlord's consent, to make any alterations or modifications to the Premises that it may desire. Tenant shall cause all such alterations to be lien-free (in accordance with paragraph 10) and made and completed at Tenant's cost in a workmanlike manner and in compliance with all applicable law. Without cost or expense to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required in furtherance of such purposes. Tenant shall deliver to Landlord copies of its final construction plans marked to show all deviations following completion of any alterations to the Premises.

10.    Mechanics' Liens. Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any

judgment, lien or attachment to lie, as applicable, against the Premises. Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises, the party on account of whose actions such lien has been filed (the Breaching Party") shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto. If the Breaching Party does not remove or otherwise protect against execution during a good faith contest, any such lien within such thirty (30) day period, as aforesaid, the other party may discharge the same by bonding, payment of money into a court of competent jurisdiction, or payment of sums claimed to be due and the Breaching Party shall reimburse the other party for all of its out-of-pocket costs in connection therewith, including reasonable attorney's fees, within thirty (30) days of receipt of an invoice therefor.

11.     <u>Insurance</u>.

(a)     <u>Property Damage</u>.  During the Construction Term, Tenant shall keep or cause its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all such construction. During the Term, Tenant shall keep in full force and effect a policy of fire and extended coverage insurance covering loss or damage to the Premises in the amount of eighty percent (80%) of the replacement value of the Building, exclusive of excavation, footings and foundations, with a commercially reasonable deductible, for which Tenant shall be fully responsible. Landlord and Landlord's first "Mortgagee" (as defined in paragraph 18 below), shall be named in such policy or policies as additional insureds as their respective interests may appear.

(b)     <u>Liability Insurance</u>.  During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and Landlord's first Mortgagee as additional insureds as their respective interests may appear.  The limits of such commercial general liability policy shall be not less than

$3,000,000.00 combined single limit for bodily injury and property damage, with a commercially reasonable deductible.

(c)    Workers' Compensation Insurance.  To the extent required by law, Tenant shall maintain workers' compensation insurance covering its employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

(d)    Self-Insurance.  Notwithstanding anything to the contrary contained herein, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraph (a) (and to the extent then permitted by law, (c)) above, provided Tenant is then occupying the Premises and has a reported net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than Seventy-Five Million Dollars ($75,000,000), as computed in accordance with generally accepted accounting principles, consistently applied, as determinable from Tenant's public disclosures and/or regularly maintained corporate balance sheets which are generally available to shareholders (no right of Landlord to audit or conduct independent investigations being implied by this provision).

(e)    Policy Provisions.  All policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers with a Best rating of not less than B+VI.  Any insurance coverage enumerated above may be effected by a blanket policy or policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy or policies shall comply with the provisions of this paragraph 11.  An increased coverage or "umbrella" policy may be provided and utilized by Tenant to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the Premises and Tenant's liability hereunder shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 11.

(f)    Waiver of Right of Recovery and Subrogation.  To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord hereby waives any and all rights of recovery against Tenant for any loss or damage to the Premises or the contents contained therein, for loss of income on account

7

of fire or other casualty, or for injury sustained on the Premises; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

      (g)   <u>Evidence of Insurance</u>.  Subject to Tenant's right to self-insure hereunder, upon (i) commencement of the Main Term (as to property insurance), (ii) upon delivery of the Land (as to liability insurance) and (iii) no less than annually thereafter, Tenant shall cause to be issued to Landlord in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 11.  Each such certificate shall provide that no expiration, cancellation or material change in the insurance evidenced thereby shall be effective unless thirty (30) days' unconditional notice of such expiration, cancellation or material change shall have been given to Landlord (and any Mortgagee, if applicable) and an endorsement that no act or failure to act of Tenant shall invalidate the insurance coverage afforded Landlord under such policy.

      (h)   <u>Indemnities</u>.  Except if arising from the negligent or willful acts of Landlord or its agents or employees (to the extent that paragraph 11(f) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from Tenant's use thereof.

      12.   <u>Damages by Fire or Other Casualty</u>.

      (a)   <u>Less Than Forty Percent (40%)</u>.  In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements, which has a repair and reconstruction cost of less than forty percent (40%) of the then-total replacement cost of any of the Improvements, this Lease shall not terminate except as expressly set forth herein, and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof.  Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds (unless self-insured) to the extent of the damage to the Premises, Tenant shall complete reconstruction of the Building and Other Improvements, to that condition existing immediately prior to such casualty, in Tenant's reasonable discretion, with such alterations as may be desired by Tenant in its sole discretion.

8

(b)    <u>Forty Percent (40%) or More</u>. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements, which has a repair and reconstruction cost of forty percent (40%) or more of the then-total reconstruction cost of any of said areas, or in the event of any uninsured casualty, Tenant shall have the option of terminating this Lease. Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty and in the event Tenant elects to terminate this Lease, Tenant shall receive all insurance proceeds or reconstruction costs as set forth in subparagraph (a) above to the extent of the amount equal to the unamortized cost of Tenant's improvements to the Premises utilizing a twenty (20) year term (the "Unamortized Amount") and the remainder of such proceeds, if any, shall be paid to Landlord (the "Residual Amount"), or, in the event Tenant self-insures, Tenant shall pay the Residual Amount to Landlord. In addition, if Tenant elects to terminate this Lease, Tenant shall, at its cost and expense (subject to reimbursement from any insurance proceeds) raze all damaged or destroyed Improvements and clear the Premises of debris. In the event Tenant does not elect to terminate this Lease as set forth above, then, subject to force majeure, within two hundred forty (240) days after receipt by Tenant of the required governmental permits for restoration, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured) with regard to such damage or destruction, Tenant shall complete reconstruction of the Improvements to their condition existing immediately prior to such damage, in Tenant's reasonable discretion, with such alterations as may be permitted desired by Tenant in its sole discretion, and shall restore the Premises (including equipment, furniture and fixtures).

(c)    <u>Last Two (2) Years of Main Term</u>. Notwithstanding the foregoing, if any damage or destruction occurs within the last two (2) years of the Main Term and has a material impact on Tenant's ability to conduct business, as reasonably determined by Tenant, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, and Tenant, in the event Tenant elects to terminate this Lease, shall receive the proceeds of any insurance which may be payable with regard to such destruction or damage to the extent of any Unamortized Amount, or, in the event Tenant self-insures, the Residual Amount shall be paid to Landlord by Tenant.

13. <u>Condemnation</u>.

(a)    <u>Definition of Taking and Substantial Taking</u>.    For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises, or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean so much of the Land and/or Improvements as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein.

(b)    <u>Tenant's Rights Upon Taking or Substantial Taking</u>.    In the event of a Taking of Substantially All of the Premises, this Lease automatically shall terminate. All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking.

(c)    <u>Tenant's Rights Upon Less Than Substantial Taking</u>.    In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the Improvements not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated thereto). If the Taking occurs within the last two (2) years of the Main Term and has a material impact on Tenant's ability to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d)    <u>Rights Upon Temporary Taking</u>. In the event of a Taking of the Premises, or any portion thereof, for temporary use (specifically one not exceeding 90 days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect.

H:\RIEKR\LSE\39153_5\54/64 (5736)

All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking which interferes with Tenant's use of the Premises for any period in excess of ninety (90) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(e)    Tenant's Right Upon Condemnation. In the event of a Taking described in subparagraph (b) or (c) above, Tenant shall be entitled to claim compensation from the condemning authority for the value of its leasehold improvements (including, without limitation, the Building and Other Improvements), and Tenant shall be entitled to any award to the extent of any Unamortized Amount (and Landlord shall be entitled to any Residual Amount), relocation expenses and any other items to which Tenant is entitled. All such awards, damages, compensation and proceeds for periods prior to the expiration or earlier termination of the Lease shall be payable to Tenant.

14.    Assignment and Subletting. Tenant shall have the right to sublet, assign, transfer reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent. In the event of such a Transfer, Tenant shall remain liable for all of Tenant's obligations to Landlord arising hereunder so long as this Lease is not changed, modified or amended in any respect by Landlord and any transferee without Tenant's prior written consent, which consent shall not be unreasonably withheld. Landlord acknowledges and agrees that it shall be unreasonable for Landlord to withhold its consent to any Transfer hereunder for the purpose of obtaining a material amendment or modification to the terms of this Lease. Transfers to subsidiaries, affiliates, or related parties, and Transfers involving beneficial ownership interests in Tenant, shall not be deemed a Transfer hereunder and same may be effected without Landlord's knowledge or consent, provided that any transferee assumes all obligations of Tenant hereunder and Tenant remains primarily liable hereunder.

11

15.    <u>Use</u>.

(a)    Tenant may initially maintain, use and operate the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular telephones, household appliances (which include, but shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners and dishwashers) and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products.

(b)    Thereafter, Tenant shall have the right to use the Premises for any lawful use; provided, however, that the Premises shall not be used (i) for any illegal purpose, or (ii) in violation of any other applicable provision of the "Permitted Encumbrances" contained in <u>Exhibit "F"</u>.

(c)    Except as may be expressly set forth in this paragraph 15, nothing contained in this Lease shall be construed to require Tenant to operate the Premises continuously either for the use first stated or for any other use.

16.    <u>Warranties and Representations</u>.

(a)    Landlord represents, warrants and covenants to Tenant that:

(i)    <u>Quiet and Peaceful Enjoyment</u>.    Landlord and those persons executing this Lease on its behalf have the right and lawful authority to enter into this Lease and perform Landlord's obligations hereunder, and Landlord warrants, represents and covenants that, so long as Tenant is not in default hereunder beyond any applicable cure period, Tenant shall have quiet and peaceful use, enjoyment and occupancy of the Premises.

(ii)    <u>Title</u>.    Landlord's fee simple interest in the Land and Existing Improvements is free and clear of any mortgages, deeds, encumbrances, declarations, easements, agreements, leases, tenancies or restrictions, except those matters set forth on <u>Exhibit "F"</u> attached hereto and entitled "Permitted Encumbrances", or any other encumbrances which would restrict Tenant's use of the Premises for the sale of Products

H:\RJEKR\LSE\39153_5\54/64 (5736)

or would restrict in any respect the right of Tenant, its employees, customers and invitees to use the Premises in accordance with the terms of this Lease. Subject to paragraph 16(b)(ii) below, nothing contained in this Lease, including the Permitted Encumbrances and other matters disclosed on Exhibit "F", shall restrict Tenant's rights under this Lease, including but not limited to the right to operate its business in the Premises. Landlord specifically warrants that no third party, has the right to object to Tenant's tenancy hereunder, prohibit the selling, renting, servicing, repairing or warehousing of the Products, or the right to consent to any feature of the Improvements or Tenant's signage. This representation and warranty is a material inducement to Tenant's execution of this Lease.

(iii)    Certificate of Authority.    Landlord covenants that it is a duly constituted corporation under the laws of the State of New York, and that its President who is acting as its signatory in this Lease is duly authorized and empowered to act for and on behalf of the corporation.    Landlord has furnished Tenant prior hereto with evidence of (a) the existence of the corporation, and (b) the authority of the President to bind the corporation as contemplated herein.

(iv)    No Litigation.    There are no judicial, quasi-judicial, administrative or other orders, injunctions, moratoria or pending proceedings against Landlord, the Land or Existing Improvements which preclude or interfere with, or would preclude or interfere with, the construction contemplated in paragraph 2 hereof or the occupancy and use of the Premises for the purposes herein contemplated.

(v)    Hazardous or Toxic Materials.    Landlord has not used, discharged, dumped, spilled or stored any Hazardous Substances (as hereinafter defined) on or about the Land or Existing Improvements, whether accidentally or intentionally, legally or illegally, and has received no notice and has no knowledge that any such condition exists on the Land or Existing Improvements.    If any claim is ever made against Tenant relating to Hazardous Substances now present on the Land or Existing Improvements, or any Hazardous Substances are hereafter discovered on the Land or Existing Improvements (unless introduced by Tenant, its agents or employees), including, without limitation, any Hazardous Substances in, on or around the Lift Areas, all costs of removal incurred by, all liability imposed upon, or damages suffered by, Tenant because of the same shall be

H:\RIEKR\LSE\39153_5\54/64 (5736)

borne by Landlord, and Landlord hereby indemnifies and agrees to defend and hold Tenant harmless from and against all such costs, losses, liabilities and damages, including, without limitation, all third-party claims (including sums paid in settlement thereof, with or without legal proceedings) for personal injury or property damage and other claims, actions, administrative proceedings, judgments, compensatory and punitive damages, lost profits, penalties, fines, costs, losses, attorneys' fees and expenses (through all levels of proceedings), consultants or experts fees and all costs incurred in enforcing this indemnity.    The representation, warranty and indemnity of Landlord described in this paragraph shall survive the termination or expiration of this Lease. Landlord specifically covenants that it shall deliver the Land and Existing Improvements to Tenant free of any pollution or contamination from toxic or hazardous substances, asbestos or any other chemicals or substances in amounts which exceed standards for public health or welfare as established and regulated by any local governmental authority, the State or the United States Government (herein collectively referred to as "Hazardous Substances").

(vi)    Zoning and Subdivision.  The Land is presently in conformity with all applicable laws and zoned so as to permit (A) the development and operation of the Premises in accordance with the provisions of this Lease; and (B) the initial use of the Premises as described in this Lease.

(vii)    Notices Affecting the Premises.  Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises or any such neighboring property.

(b)    Tenant represents, warrants and covenants to Landlord that:

(i)    Tenant's Authority.    Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia; it has the power to enter into this Lease and perform Tenant's obligations hereunder; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

14

        (ii)    <u>Tenant's Warranty as to Hazardous or Toxic Materials</u>.  As to Tenant's use and occupancy of the Premises, Tenant will not introduce, discharge, dump, spill or store within the Premises any Hazardous Substances; and Tenant indemnifies and agrees to hold Landlord harmless from and against all costs, liability and damages as a result thereof, to the same extent that Landlord indemnifies and holds Tenant harmless in subparagraph (a)(v) above.  The warranty and indemnity of Tenant described in this paragraph shall survive the termination of this Lease.

        (c)    In the event there is a condition at variance with the foregoing representations and warranties of Landlord with respect to the Land or Existing Improvements which prevents or in any material way inhibits the use of the Premises or any part thereof for its intended purposes by Tenant or Tenant's employees, licensees, agents, suppliers, customers or invitees, or if Landlord shall default in the observance or performance of any of the foregoing representations and warranties, then, in addition to such other remedies as may be accorded Tenant at law, in equity or under the terms of this Lease, Tenant may, in addition to its other remedies under this Lease, after thirty (30) days' notice to Landlord, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of Tenant's legal remedy and the irreparable harm which would be caused to Tenant by any such variance or default.  In addition, in the event that any of the representations, warranties and covenants set forth in this paragraph are untrue or incorrect, or in the event that Tenant suffers any loss, cost, liability or damage as a result of the breach of any of such covenants, representations and warranties, Landlord shall defend, indemnify and hold Tenant harmless from any of such loss, costs, liability or damage incurred as a result of Landlord's breach hereunder.

        17.    <u>Estoppel Certificates</u>.  Without charge, at any time and from time to time hereafter, within thirty (30) days after receipt of written request by either party, the other party shall certify, by written and duly executed instrument, to any other entity ("Person") specified in such request:  (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's best knowledge; (c) as to the existence of any default hereunder, to the certifying party's best knowledge; (d) as to the existence of any offsets, counterclaims, or defenses hereto on the part of such other party, to the certifying party's best

H:\RJEKR\LSE\39153_5\54/64 (5736)

knowledge; (e) as to the commencement and expiration dates of the Term; and (f) as to any other matters which may reasonably be so requested. In addition, without charge, at any time and from time to time hereafter, within thirty (30) days after receipt of written request of Tenant, Landlord shall deliver an estoppel certificate to Tenant's assignee or subtenant that states in the event Tenant defaults under any of its obligations under this Lease following the date of any assignment or subletting hereunder, Landlord will permit such assignee or subtenant to satisfy the obligations of Tenant hereunder, including but not limited to the direct payment of rentals to Landlord. Any such certificate may be relied upon by the party requesting it and any Person to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

     18.    <u>Subordination, Non-Disturbance and Attornment.</u>

     (a)    Simultaneously with the execution hereof, Landlord shall deliver to Tenant with regard to any and all Mortgages (as defined below) encumbering the Premises and placed thereon by Landlord, a non-disturbance and attornment agreement in the form of <u>Exhibit "G"</u> hereto attached, executed by the holder of such Mortgage ("Mortgagee"). In addition, throughout the term, Landlord shall deliver to Tenant a non-disturbance and attornment agreement in the form of <u>Exhibit "G"</u> executed by Mortgagee with regard to all future Mortgages and with regard to all renewals, modifications, replacements and extensions of such Mortgages. Upon Tenant's receipt of the non-disturbance and attornment agreement, this Lease shall be subordinate to the corresponding Mortgage. Landlord specifically covenants and warrants that as of the execution hereof, there will be no Mortgage encumbering the Premises.

     In the event of a foreclosure of any Mortgage, Tenant shall attorn to a Mortgagee or any purchaser at a foreclosure sale (any such foreclosure, or deed in lieu thereof, shall be referred to as a "Foreclosure") of a Mortgage only if such Mortgagee or purchaser executes a writing in favor of Tenant which states the following (provided Tenant is not in uncured material default beyond the expiration of any applicable grace periods): (i) this Lease shall not terminate by reason of such Foreclosure, (ii) Tenant's possession of the Premises shall not be disturbed, (iii) the Mortgagee or purchaser upon such Foreclosure shall recognize Tenant and all its rights hereunder and shall be obligated to fully and completely perform Landlord's duties and obligations under the Lease arising from and after the date of such Foreclosure, (iv) Tenant shall not be named as a party in any action for foreclosure, and (v) the Mortgagee, whether or not

the Mortgage is foreclosed, shall make all proceeds arising from a casualty or condemnation loss to the Premises available to Tenant for restoration of the Improvements in accordance with the terms hereof.

Landlord shall cause any present or future Mortgagee to deliver a non-disturbance and attornment agreement in accordance with this paragraph at or prior to the time which the lien of the Mortgage is filed against record title to the Premises to the extent such Mortgage is superior to the Lease.   As used in this paragraph, the term "Mortgage" shall mean any mortgage, deed to secure debt, deed of trust, trust deed or other collateral conveyance of, or lien or encumbrance against, the Premises.

19.   Change of Landlord.   Subject to paragraph 18 above, in the event Landlord's interest in the Land passes to a successor (the "Successor") by sale, lease, Foreclosure or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and effect as if the Successor were the landlord under the Lease, and Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant.  In the event that Landlord's interest in the Premises passes to a Successor and such Successor is bound unto Tenant as set forth above, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes, except that Landlord agrees to indemnify, defend and hold Tenant harmless from and against all costs, claims, loss, liability or damage suffered by Tenant as a result of Landlord's failure to provide Tenant with notice of the transfer of its interests hereunder and/or Landlord's failure to provide Tenant with notice of such Successor.

20.   Tenant's Financing.   Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, from time to time, secure financing or general credit lines and grant the lenders thereof, as security therefor, (i) a security interest in Tenant's fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged within thirty (30) days after Landlord gains legal possession of the Premises, (iii) a lien on the Building and/or (iv) a collateral assignment of Tenant's leasehold interest in the Land, with rights of reassignment; provided, however, such collateral assignment may be made solely for the purpose of securing Tenant's indebtedness. Upon Tenant providing notice of such financing to Landlord, Landlord agrees to evidence its

consent in writing to such security interest and agreement and to give such lenders the same notice and opportunity to cure any default of Tenant as is provided Tenant hereunder (including time to foreclose or otherwise take possession of the Premises, if necessary to effect such cure). In addition, Landlord agrees to cause any Mortgagee specifically to acknowledge the rights of Tenant's lenders described herein.

21.    Tenant's Property and Waiver of Landlord's Lien.  All of the Personalty shall be and remain the personal property of Tenant.  Landlord expressly waives its statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the aforesaid property of Tenant on the Premises and further agrees to execute any reasonable instruments evidencing such waiver, at any time or times hereafter upon Tenant's request.

22.    Memorandum of Lease; Commencement Date Agreement.  Landlord and Tenant agree, at the other's request and at the sole expense of the requesting party, to execute a Memorandum of Lease in recordable form, substantially similar to that attached hereto as Exhibit "H", setting forth such provisions hereof as may be required by State law.  In addition, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached hereto as Exhibit "I", once the Commencement Date has been established.  Recording costs for either or both documents shall be borne by the party requesting recordation of the same.  The provisions of this Lease shall control, however, with regard to any omissions from, or provisions hereof which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement.  Following the execution and recording of the Memorandum of Lease, in the event that the condition of the Site Plan set forth in paragraph 33(c) has not been fulfilled and Tenant elects to terminate this Lease, Tenant shall either deliver to Landlord's attorney a Memorandum of Cancellation of Lease, or a notice waiving such condition.  Upon Site Plan approval, the Memorandum of Cancellation of Lease shall be returned to Tenant.

23.    Expiration of Term and Holding Over.  All of the Personalty shall be removable by Tenant any time prior to, or within thirty (30) days after, the expiration or earlier termination of this Lease and shall be so removed by Tenant at the request of Landlord within thirty (30) days after the expiration or termination of this Lease.  In the event Tenant fails to remove any or all of its Personalty within the said thirty (30) day period, Landlord may, at Landlord's

option, deem such Personalty abandoned and dispose of it as Landlord deems proper, at Tenant's cost and expense, or remove such Personalty, or the balance thereof, cause such Personalty to be placed into storage and thereafter charge Tenant the cost of such removal and storage, together with interest thereon at the highest rate allowed by State law. Those improvements that are integrated into the physical structure of the Building, except any of Tenant's trade fixtures, shall not be removed and shall become the property of Landlord. (A nonexclusive list of Tenant's initial removable trade fixtures is attached hereto as Exhibit "D".) Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings, signs and communications equipment (except for small holes caused by nails, fasteners and the like unless the same are in the exterior of the Building, roof or the paved areas of the Premises) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein, ordinary wear and tear, casualty and condemnation excepted. Tenant agrees that at the expiration of this Lease, it will deliver to Landlord peaceable possession of the Premises. No holding over by Tenant nor acceptance of Base Rent or other charges by Landlord shall operate as a renewal or extension of the Lease without the written consent of Landlord and Tenant. Should Tenant hold over without the consent of Landlord, Tenant's use and occupancy shall be month to month, subject to all of the provisions hereof and Tenant shall pay for same at the rate of one hundred fifty percent (150%) of the monthly Base Rent Tenant had been paying during the preceding Lease Year.

24. Force Majeure. Except as otherwise specifically contemplated in this Lease, in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required hereunder (except for the payment of Base Rent, Real Estate Taxes, insurance premiums or other amounts due hereunder) by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

25. Events of Tenant's Default. Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease:

(a)     Failure to Pay Rent; Breach.  (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Base Rent or Real Estate Taxes), within ten (10) days after the receipt of written notice from Landlord to Tenant that same is overdue; or (ii) Tenant's failure to observe or perform any other material provision of this Lease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

(b)     Bankruptcy.  Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun.

26.     Landlord's Remedies.  After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

(a)     Dispossession.  If an Event of Default as hereinabove specified in paragraph 25(a)(i) or (ii) shall occur, and shall not be cured within the time period specified in Landlord's notice, or if Tenant shall commence a cure within the thirty (30) day period as provided in paragraph 25(a)(ii) and shall fail to diligently proceed with such cure within five (5) days after receipt of written notice from Landlord, then (i) Landlord may give Tenant a ten (10) day notice of its intention to end the term of this Lease, and thereupon, at the expiration of said ten (10) day period, this Lease shall expire as fully and completely as if that day were the date herein originally fixed for the expiration of the Term, and Tenant shall then quit and surrender the Premises to Landlord but Tenant shall continue to remain liable as hereinafter provided; or, (ii) Landlord, without prejudice to any other right or remedy of Landlord, held hereunder or by operation of law, and notwithstanding any waiver of any breach of a condition or Event of Default hereunder, may, at its option and without further notice, dispossess Tenant and any legal representative or successor of Tenant or other occupant of the Premises by summary proceeding or other action or proceeding to regain possession at law or in equity and remove his, her or its

H:\RIEKR\LSE\39153_5\54/64 (5736)

effects and hold the Premises as if this Lease had not been made; and Tenant hereby expressly waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

(b) <u>Damages</u>. Notwithstanding any Event of Default, reentry, expiration and/or dispossession by summary proceeding or other action or proceeding, as provided in paragraph 26(a) above, Tenant shall continue to be liable during the full period which would otherwise have constituted the balance of the Term hereof, then Tenant shall pay as liquidated damages at the same time and in the same amount as the monthly Base Rent and other charges that become payable under the terms hereof, together with reasonable attorneys' fees, a sum equivalent to Base Rent and other charges reserved herein (less only the net proceeds of reletting as hereinafter provided), and Landlord may rent the Premises either in the name of Landlord or otherwise, reserving the right to rent the Premises for a term or terms which may be less than or exceed the period which would otherwise have been the balance of the Term of this Lease without releasing the Tenant from any liability, applying any monies collected, first to the expense of resuming or obtaining possession, next to restoring the Premises to a rentable condition, then to the payment of any brokerage commissions and equal fees in connection with the reletting of the Premises and then to the payment of Base Rent and other charges due and to become due to Landlord hereunder, together with reasonable legal fees of Landlord therefor.

Under any of the circumstances herein before mentioned in which Landlord shall have the right to hold Tenant liable to pay Landlord the equivalent of the amount of all the Base Rent and all other charges required to be paid by Tenant less net proceeds of reletting, if any, Landlord shall have the election in place and instead of holding Tenant so liable, forthwith to recover against Tenant as damages for loss of the bargain and not as a penalty an aggregated sum to be known as the "worth at time of the award." The "worth at the time of the award" shall be defined as follows:

(i) The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

(ii) The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation.

As used in this paragraph, the term, "worth at the time of the award", shall be computed by allowing simple interest at an accrual rate of six percent (6%) for past due obligations, and a discount rate to net present value of twelve percent (12%) on anticipated future obligations, on the amount of the obligations payable on the date of such calculation. In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings. Landlord shall never be entitled to dispossess Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

In the event that Landlord dispossesses Tenant pursuant to the provisions of this paragraph 26, Landlord agrees to list the Premises with a real estate broker.

(c)     Right to Perform Covenants. Upon the occurrence of an Event of Default, Landlord may, at any time after the expiration of the time periods set forth in paragraph 26(a), on reasonable written notice to Tenant, cure such breach for the account and at the expense of Tenant. If Landlord, by reason of such breach, is compelled or elects to pay any sum of money, or do any act which would require the payment of any sum of money, or incurs any expense, including reasonable attorneys' fees, in instituting, prosecuting or defending any action or proceeding to enforce Landlord's right hereunder or otherwise, the sum so paid or expenses so incurred by Landlord, together with the lesser of maximum interest allowed by State law or interest at the rate of fifteen percent (15%) per annum, shall be deemed to be additional rent hereunder, and shall be paid by Tenant to Landlord within fifteen (15) days of Landlord rendering a bill to Tenant therefor.

(d)     Reimbursement of Landlord's Costs in Exercising Remedies. Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any speculative or consequential damages caused by Tenant's failure to perform its obligations under this Lease.

(e)      Remedies Are Cumulative.  The various rights and remedies reserved to Landlord herein, are cumulative, and Landlord may pursue any and all such rights and remedies (but no others), whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease).  Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

27.   Events of Landlord's Default; Tenant's Remedies.   Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default": (a) Landlord's failure to make any payments of money due Tenant or any third party hereunder, including but not limited to the payment of brokerage commissions pursuant hereto, within ten (10) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the lesser of fifteen percent (15%) or the highest rate permitted by State law); or (b) Landlord's failure to perform any nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances.

Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity, and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (i) pay or perform such obligations and offset Tenant's reasonable and actual cost of performance, including any and all transaction costs and attorneys' fees, plus interest at highest rate allowed by State law, against the Base Rent, and any and all other amounts and charges due Landlord hereunder if the same are not paid within ten (10) days of Tenant's obtaining a judgment therefor against Landlord, provided that in the event Landlord shall have

a mortgage encumbering the Land from an institutional lender (a bank, financial institution or similar lender which is regulated by the government), then Tenant's right of offset shall not exceed fifty percent (50%) of the amount of Landlord's debt-service under its Mortgage until such Event of Default is cured, or (ii) terminate this Lease and sue for damages, including interest, transaction costs and attorneys' fees as specified in subsection (i) above. As to a breach of Landlord's warranties and representations contained herein, Tenant shall be entitled to the remedies provided therein, in addition to those remedies provided herein.  All amounts, including interest, transaction costs and attorneys' fees, arising out of uncured defaults of Landlord shall constitute liens against Landlord's interest in the Land, which may be enforced by any means available under State law, or any other applicable proceedings. The various rights and remedies reserved to Tenant herein are cumulative, and Tenant may pursue any and all rights and remedies, whether at the same time or otherwise.

28.    Waiver.  If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

29.    Compliance with Applicable Laws.  During the Term, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities (collectively, "Governmental Authority") with jurisdiction over the Improvements, and of the board of fire underwriters, respecting Tenant's ownership, use and occupancy of the Improvements. In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the highest rate allowed by State law from Tenant with the next installment or installments of Base Rent.  Landlord shall comply with all lawful requirements of any Governmental Authority respecting Landlord's ownership of the Land and Landlord's obligations

hereunder.  In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and deduct the reasonable cost thereof plus interest at the highest rate allowed by State law from Landlord with the next installment or installments of Base Rent.

30.   <u>Notices</u>.   Any notice, demand or request permitted or required to be given pursuant to this Lease shall be in writing and shall be sent by certified mail, postage prepaid, return receipt requested, or by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

If to Tenant:          CIRCUIT CITY STORES, INC.
                       Deep Run I
                       9950 Mayland Drive
                       Richmond, Virginia 23233
                       Attention:  Corporate Secretary

with a copy to:        CIRCUIT CITY STORES, INC.
                       Deep Run I
                       9950 Mayland Drive
                       Richmond, Virginia 23233
                       Attention:  Vice President of Real Estate


If to Landlord:        RICMAC EQUITIES CORPORATION
                       430-440 Plainview Road
                       Hicksville, New York  11801

with a copy to:        CERTILMAN, BALIN, ADLER & HYMEN, LLP
                       90 Merick Avenue
                       East Meadow, New York  11554
                       Attention:  Louis Soloway, Esq.


or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.  Either party may, by written notice given to the other party, designate a new address to which notices, demands and requests shall be sent and, thereafter, any of the foregoing shall be sent to the address most recently designated by such

25

party. Notices, demands and requests which shall be served upon Landlord or Tenant in the manner aforesaid shall be deemed to have been served or given for all purposes under this Lease upon the earlier to occur of the time such notice, demand or request shall be received or first refused. Any notice given by an attorney for Landlord or Tenant shall be deemed a notice given hereunder.

31.   <u>Brokers</u>. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for Garrick-Aug Associates Store Leasing, Inc./The Equity Group, which shall be paid a commission by Landlord pursuant to its separate written agreement. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

32.   <u>Miscellaneous</u>.

(a)   <u>Headings and Gender</u>. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b)   <u>Construction</u>. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c)   <u>Waiver of Jury Trial</u>. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury. In any action or proceeding for recovery of Base Rent, Tenant shall not interpose any setoff or counterclaim, except as permitted herein, unless same is required by law to preserve Tenant's rights, nor shall Tenant seek to consolidate such action or proceeding with any other action or proceeding.

(d)   <u>Relationship of Landlord-Tenant</u>. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

H:\RIEKR\LSE\39153_5\54/64 (5736)

(e)    Entire Agreement; Merger.  This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein.  This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Land-lord and Tenant.

(f)    Attorneys' Fees.  In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g)    Partial Invalidity.  If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h)    Consents.  Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i)    Holidays.  If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j)    Applicable Law.  This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

(k)    Successors and Assigns.  All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

27

(l)   <u>Counterparts</u>.  This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m)   <u>Trademarks and Trade Names</u>.  All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

33.   <u>Effectiveness of Lease; Tenant's Right to Terminate</u>.  Notwithstanding the execution of this Lease or any provision hereof to the contrary, the parties hereto agree that the effectiveness of this Lease is expressly conditioned upon the complete satisfaction (or waiver) of each and all of the following conditions:

(a)   Landlord's delivery of the Land by the date set forth in paragraph 2 hereof.

(b)   Landlord's representations, warranties and covenants, being true and accurate as of the date of delivery of the Land.

(c)   Tenant's receipt, within eight (8) months from the date hereof, of approval of the Site Plan by all necessary governmental authorities, which Tenant covenants to diligently pursue such approval; provided in the event such approval is not received within such eight (8) month period, Tenant shall have the right to terminate this Lease upon written notice to Landlord.  Tenant shall not be entitled to demolish the Existing Improvements as set forth herein (except for the removal of the Lift Areas, asbestos removal and other environmental remediation) unless and until Tenant either (i) waives its right to terminate the Lease pursuant to this subparagraph, or (ii) delivers to Landlord an indemnity agreement in the form of <u>Exhibit "J"</u> attached hereto for any costs, damages or losses incurred by Landlord resulting from the demolition of the Existing Improvements by Tenant and in the event Tenant demolishes the Existing Improvements and subsequently terminates this Lease in accordance with the provisions of this subparagraph, Tenant shall, at its sole cost and expense, reconstruct the Existing Improvements to the same condition that existed prior to such demolition.

The existence of the foregoing conditions is solely for the benefit of Tenant, and Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition(s) being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of one or more of the foregoing conditions. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth herein shall survive such termination) upon Tenant's delivery of said notice to Landlord.

The delivery of this executed lease by Tenant to Landlord constitutes the offer of Tenant to Landlord to bind Landlord and Tenant to the provisions of this Lease, subject to the conditions set forth in this paragraph 33. It is a further condition to the effectiveness of this Lease that upon receipt of the executed Lease from Tenant, Landlord, without delay, execute and return same to Tenant in accordance with any instructions delivered by Tenant or its legal counsel. In the event Landlord fails to promptly execute and return the Lease, Tenant may at any time after delivery of the Lease provide written notice to Landlord that Tenant revokes its delivery of the executed Lease and thereupon Landlord shall be immediately obligated to return to Tenant all executed original counterparts as well as any copies of this Lease in the possession of Landlord, and this Lease shall thereafter be null and void.

34.    Confidentiality. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of this transaction. This confidentiality agreement extends to any developers, bankers, lawyers, accountants, employees, agents or any other persons acting on behalf of the parties hereto. The parties hereto agree to use their best reasonable efforts to avoid discussing with, or disclosing to, any third parties (except those parties listed above) any of the terms, conditions or particulars in connection with this transaction. It is specifically agreed by way of illustration, but not by limitation, that the covenant of confidentiality set forth herein shall not be breached if such

29

information is disclosed in connection with or due to any governmental law or ordinance, but this covenant of confidentiality shall be breached if Landlord, or any of Landlord's developers, bankers, accountants, agents, lenders, lawyers or other similar parties, discloses the content of, or delivers a copy of this Lease to, any third party without the express written consent of all parties to this Lease. The parties agree that any breach of this confidentiality agreement shall not constitute an Event of Default under the terms and provisions of this Lease but shall be actionable by any remedy available to the non-breaching party at law or in equity.

35.    Tenant's Financing of Improvements. Notwithstanding anything contained in this Lease to the contrary, Landlord is aware that to facilitate a leveraged construction period lease/tax ownership operating lease transaction (a "Leaseback Transfer") Tenant may assign or transfer its interest in this Lease to a third party (the "Facilitator") who will then sublease the Premises to Tenant. Accordingly, Landlord hereby agrees that Tenant shall have the right throughout the Term of this Lease, without Landlord's consent, to assign or transfer this Lease to a Facilitator who Landlord acknowledges shall be the Tenant for all purposes under this Lease; provided, however, Tenant hereby agrees that (i) Circuit City Stores, Inc. shall remain primarily liable hereunder and (ii) Tenant shall provide Landlord with written notice of a Leaseback Transfer within thirty (30) days after completion thereof. Landlord further agrees that any Facilitator to whom this Lease is assigned shall not have any individual or personal liability hereunder or any obligations of Tenant hereunder, and (ii) Landlord shall retain any rights and remedies with respect to the maintenance, preservation or possession of the Premises that Landlord may have hereunder as a result of the occurrence of an Event of Default, including any right of termination available to Landlord under paragraph 26 hereof. Any Facilitator to whom this Lease is assigned shall thereafter have the right (A) to sublease the Premises to Tenant without Landlord's consent and (B) to further assign its interests in this Lease or sublease the Premises in the event that the Facilitator's sublease with Tenant is terminated, provided that any such assignment or sublease shall be on a recourse basis as to such assignee or sublessee without limitation on the individual or personal liability of the assignee or sublessee and in the event that the Facilitator shall terminate its sublease with Tenant, all unpaid rents and other charges due hereunder shall be paid currently with such assignment or sublease.

WITNESS the following signatures and seals:

<u>LANDLORD</u>

RICMAC EQUITIES CORPORATION,
a New York corporation

ATTEST (WITNESS):

By: _____

Name: C.R. MC DANIEL

Title: PRESIDENT

31

**TENANT**

CIRCUIT CITY STORES, INC.,
a Virginia corporation

ATTEST:

By: _____
Benjamin B. Cummings, Jr.

Its: Assistant Secretary

Vice President

Hicksville, NY

## EXHIBIT "D"

STORE FIXTURES

ALL STORAGE RACKING

ALL SECURITY SYSTEM ITEMS

TELEPHONES AND PAGING SYSTEMS

COMPUTER SYSTEM

OFFICE FURNITURE AND TRASH RECEPTACLES

BATTERY CHARGER

TRASH COMPACTOR

SIGNS (INTERIOR/EXTERIOR)

ANTENNA SYSTEM

ELECTRONIC SWITCHING

AIR COMPRESSOR (ROADSHOP)

SAFE

CONVEYOR

MEDECO CYLINDER LOCKS (5)

REFRIGERATOR AND MICROWAVE USED BY EMPLOYEES

TACK BOARDS

WATER COOLER

FIRE EXTINGUISHERS

AUDIO ROOM FIXTURES AND SWITCHGEAR

PICTURES

WAREHOUSE AND MATERIAL HANDLING EQUIPMENT (MOVABLE LADDERS, DOLLIES, ETC.)

TRACK LIGHTS (CANS ONLY, NOT TRACKS)

H:\RIEKR\LSE\39153_5\54/64 (5736)