Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors
in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC., et :    Case No. 08-35653 (KRH)
al.,                          :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OBJECTION TO AMENDED MOTION OF LEXAR MEDIA, INC.
FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT TERMINATION
OF CONSIGNMENT AGREEMENT AND FOR ENTRY OF AN ORDER
DIRECTING DEBTORS TO REJECT CONSIGNMENT AGREEMENT**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

1

"Circuit City" or the "Debtors")[1] hereby submit their
objection (the "Objection") to Lexar Media, Inc.'s ("Lexar")
Amended Motion for Relief from the Automatic Stay to Permit
Termination of Consignment Agreement and for Entry of an
Order Directing Debtors to Reject Consignment Agreement (the
"Amended Motion") (D.I. 1874).  In support of the Objection,
the Debtors respectfully represent as follows:

**BACKGROUND**

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition Date"),
the Debtors filed voluntary petitions in this Court for
relief under chapter 11 of title 11 of the United States Code
(the "Bankruptcy Code").

2.    On January 12, 2009, the Court entered an
order authorizing the Debtors to conduct auctions for a sale

---

1   The Debtors and the last four digits of their respective taxpayer
    identification numbers are as follows: Circuit City Stores, Inc.
    (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
    (0875), Ventoux International, Inc. (1838), Circuit City Purchasing
    Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company
    of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer
    Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659),
    Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs,
    Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel,
    LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR,
    LLC (5512).  The address for Circuit City Stores West Coast, Inc. is
    9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other
    Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

or sales of the Debtors' businesses as a going concern or for liquidation (D.I. 1460).

3.    At the conclusion of the auction, the Debtors' determined that the highest and otherwise best bid was that of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC, and Tiger Capital Group, LLC (collectively, the "Agent").  On January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores (D.I. 1634).  The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.

**B.    The Debtors and Lexar.**

4.    The Debtors and Lexar are parties to a consignment agreement dated as of November 3, 2008 (the "Consignment Agreement") pursuant to which Lexar provides certain goods, including compact flash memory cards and drives, to the Debtors for sale in the Debtors' retail stores on a consignment basis (the "Consigned Goods").

5.    The Consignment Agreement further requires Lexar to pay to the Debtors, at various intervals during the

3

term of the Consignment Agreement, certain marketing development funds and slotting fees (the "MDF and Slotting Fees"). Pursuant to the Consignment Agreement, Lexar was scheduled to make a $625,000 payment of MDF and Slotting Fees to the Debtors on January 31, 2009 (the "Scheduled Payment").

6.    On January 29, 2009, however, Lexar filed the Amended Motion, apparently as an attempt to avoid making the Scheduled Payment. Specifically, by the Amended Motion, Lexar seeks (i) relief from the automatic stay imposed by the Bankruptcy Code in order to terminate the Consignment Agreement as of January 26, 2009, and (ii) an order compelling the Debtors to reject the Consignment Agreement effective as of January 26, 2009. Thus, by the Amended Motion, Lexar seeks relief retroactive to January 26, 2009, a date prior to the date on which the Scheduled Payment was due.

**OBJECTION**

7.    For the reasons set forth below, the Debtors respectfully request that the Court deny the relief requested in the Amended Motion.

### ARGUMENT

8.   As set forth above, by the Amended Motion,
Lexar requests that the Court modify the stay nunc pro tunc
to January 26, 2009, so that it may terminate the Consignment
Agreement as of that date.  In that regard, Lexar contends
that under Paragraph 22(b) of the Consignment Agreement, it
may terminate the parties' relationship for cause.[2]
Additionally, Lexar requests that the Court compel the
Debtors to assume or reject the Consignment Agreement
effective as of January 26, 2009.  As demonstrated below,
the Amended Motion is procedurally improper.  More
importantly, perhaps, Lexar has not and cannot demonstrate
that cause exists to either modify the automatic stay or

---

2   The Termination Clause provides, in relevant part:

**22. TERMINATION.**

**(b) With Cause.** Either party may terminate this Agreement and the
Consignment Program hereunder immediately upon notice to the other party
if the other party (i) materially breaches any term of this Agreement
and fails to cure the breach within ten (10) business days following
receipt of notice of such breach, (ii) becomes insolvent, files (or has
filed against it) a petition in bankruptcy, makes an assignment for the
benefit of creditors or ceases normal business operations, (iii) assigns
or attempts to assign this Agreement or any of the rights and obligations
under this Agreement without first obtaining consent as required under
this Agreement, or (iv) ceases to function as a going concern or to
conduct operations in the normal course of business.

shorten the period of time in which the Debtors are permitted to determine whether to assume or reject the Consignment Agreement.

I.   **THE AMENDED MOTION IS PROCEDURALLY IMPROPER.**

   A.   **Lexar's Request For Stay Relief Is Improper.**

   9.   As this Court well knows, under Bankruptcy Code section 365(d)(2), a debtor in possession has until confirmation of a plan to assume or reject any executory contract.  11 U.S.C. § 365(d)(2).  Critically, until the debtor assumes an executory contract, the non-debtor party is prevented from enforcing the terms of that contract.  NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532 (1984) ("The filing of the petition in bankruptcy means that the . . . agreement is no longer immediately enforceable, and may never be enforceable again."); see also In re El Paso Refinery, L.P., 220 B.R. 37, 43 (Bankr. W.D. Tex. 1998) ("From the moment of filing to the moment of assumption or rejection, the non-debtor party is held to be barred from enforcing the contract and its terms."); In re Metro Transp. Co., 87 B.R. 338, 339 (Bankr. E.D. Pa. 1988) ("We hold that a formal assumption of an executory contract by a debtor is required

6

to render an executory contract enforceable against a
debtor.").

10.   The Consignment Agreement has not yet been
assumed or rejected.  Nonetheless Lexar seeks to enforce the
terms of the Consignment Agreement against the Debtors by
asserting that it may terminate the agreement under
paragraph 22 for cause.  Under such circumstances, a motion
for relief from the automatic stay is not the proper
procedural vehicle.  Instead, Lexar must first obtain an
order compelling the Debtors to assume or reject the
Agreement.  See, e.g., In re El Paso Refinery, L.P., 220 B.R.
at 44; Bistrian v. East Hampton Sand & Gravel Co., Inc. (In
re East Hampton Sand & Gravel Co., Inc.), 25 B.R. 193, 198
(Bankr. E.D.N.Y. 1982).

11.   Specifically, in El Paso, the bankruptcy
court rejected the efforts of a party to an executory
contract with a debtor to obtain relief from the automatic
stay to terminate such contract, stating that:

> By limiting the non-debtor party to the § 365
> remedies, the value of the executory contract can
> be preserved for the estate, while allowing the
> estate an appropriate period of time to evaluate
> its options.  If the contract is terminated at the

7

request (or behest) of the non-debtor party, then the estate's options are literally foreclosed, undermining the structure and intent of the drafters of the Code. A party to an executory contract has no more right to 'relief from stay' to 'terminate' a contract with the estate than does any other unsecured creditor whose contract (executory or not) has been breached.

El Paso, 220 B.R at 44; see also East Hampton, 25 B.R. at 198 (noting lessor is preempted from seeking relief from stay until debtor is required to assume or reject lease).

12.   In effect, Lexar asks this Court to authorize an end run around Bankruptcy Code section 365(d)(2), which allows the Debtors to assume or reject executory contracts at any time prior to confirmation of a plan.  11 U.S.C. § 365(d)(2).  This end run should not be countenanced, and Lexar should be required to demonstrate that "cause" exists under Bankruptcy Code section 365(d)(2) to compel the Debtors to assume or reject the Consignment Agreement.  As demonstrated below, Lexar cannot carry that burden.

**B.   The Bases For Lexar's Requested Relief Are Not Properly Adjudicated In The Context Of A Lift Stay Motion Or Motion To Compel Rejection.**

13.   As set forth more fully below, the relief request by Lexar in the Amended Motion is based on

substantive contract allegations, many of which are disputed by the Debtors. Such substantive contractual disputes are not properly addressed in the context of a motion to lift stay or compel rejection of an executory contract.  Thus, the Amended Motion should be denied on this basis as well.

14.  Specifically, as the Fourth Circuit Court of Appeals has acknowledged, hearings on motions to lift a stay are not appropriate venues for full litigation of claims. See County Fuel Co., Inc. v. Equitable Bank Corp., 832 F.2d 290, 293 (4th Cir. 1987) (stating that the merits of claims are not at issue in motion to lift automatic stay proceedings); see also In re Johnson, 756 F.2d 738, 740 (9th Cir. 1985) (holding that the validity of a claim or contract underlying a claim is not litigated during the stay hearing and that it is not appropriate to consider state law governing contractual relationships in stay litigation). Instead, proceedings on lift stay motions are summary in nature.  See 9B Am. Jur. 2d Bankruptcy § 1932 (stating that motions for relief from automatic stay are summary proceedings confined to issues of lack of adequate protection, debtor's equity in property, necessity of

property to reorganization, or existence of other cause for relief from stay).  Lexar has filed a proof of claim against the Debtors, and through the Amended Motion, should not be permitted to truncate the claims resolution process by seeking to retroactively eliminate a credit that the Debtors could setoff or negotiate as part of the claims resolution process.  These matters are properly handled through the claims resolution process and there simply is no urgency to obtain the relief Lexar is seeking at this time.

15.  Similarly, "at heart, a motion to assume should be considered a summary proceeding. . . . It is not the time or place for prolonged discovery or a lengthy trial with disputed issues."  Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp), 4 F.3d 1095, 1097 (2d Cir. 1993), cert. dismissed, 511 U.S. 1026 (1994).  See also In re Greenville Am. Ltd. P'ship, No. Civ. A. 00-00721-W, 2000 Bankr. LEXIS 2008 at *8 (Bankr. D.S.C. March 24, 2000) ("a motion to assume or reject a contract under § 365 generally should be a summary proceeding and should not become the forum of an extended breach of contract suit.").

10

16.   Lexar's arguments in support of the Amended
Motion, however, raise substantive contract issues in
dispute, such as whether there has been a material breach
of the Consignment Agreement.  Thus, even if the Court were
to permit Lexar to proceed outside an adversary proceeding,
at the very least a hearing on the Amended Motion is premature
until the Debtors can develop the underlying facts and
analyze their defenses and cross-claims to Lexar's breach
of contract claims.

17.   More importantly, perhaps, the termination
sought by Lexar also implicates other provisions of the
agreements not discussed in the Amended Motion.  For example,
paragraph 23 of the Consignment Agreement ("Effect of
Termination or Expiration") purports to require Circuit City
to return to Lexar any unsold Consigned Goods upon
termination of the agreement.  However, such a provision
would likely only be operable in the event Lexar had a
perfected security interest in the Consigned Goods.  On
information and belief, Lexar has failed to perfect its
interests, and the Debtors may need to further analyze this

issue and perhaps assert counterclaims for a declaratory judgment that Lexar is not perfected.

18.   Additionally, Exhibit C to the Consignment Agreement, regarding the treatment of over $1 million in MDF and Slotting Fees previously paid to the Debtors, purports to require the Debtors to return a pro rata portion of those MDF and Slotting Fees to Lexar upon "terminat[ion] prior to the expiration of the Initial Term" of the Consignment Agreement.   The Consignment Agreement makes no similar provision for a rejection of the agreement, and the Debtors would argue that in the case of a rejection of the agreement, the Debtors would be relieved of any such obligation.   See In re Rosenfeld, 23 F.3d 833, 839 (4th Cir. 1994) (noting in dicta that lease rejection does not necessarily amount to termination of the lease); In re Lucash, 370 B.R. 664, 670 at n. 5 (Bankr. E.D. Va. 2007) (stating that "rejection, although it constitutes a breach of the lease, does not terminate the lease") (citing Federal Realty Investment Trust v. Park (In re Park), 275 B.R. 253, 255-56 (Bankr. E.D. Va. 2002)); In re Ducane Gas Grills, Inc., 320 B.R. 341, 349 (Bankr. D.S.C. 2004) (citing authority in other

12

jurisdictions before concluding that the debtor's rejection

of certain agreements did not automatically result in their

termination).

19.   In sum, the relief sought in the Amended

Motion may not be granted without further legal and factual

development of the issues noted herein, among others, and

thus should not be granted in summary proceedings raised by

a request for stay relief or a request to compel assumption

or rejection.  Indeed, the very purpose of the automatic stay

and Bankruptcy Code section 363(d)(2) is to provide the

Debtors "breathing space to decide which contracts they wish

to assume."  In re Public Service Co. of New Hampshire, 884

F.2d 11, 15 (1st Cir. 1989);  see also  In re Dana Corp. 350

B.R. 144, 147 (Bankr. S.D.N.Y. 2006)( "it is the clear policy

of the Bankruptcy Code to provide the debtor with breathing

space following the filing of a bankruptcy petition,

continuing until the confirmation of a plan, in which to

assume or reject an executory contract").

20.   Thus, even though the Debtors are presently

liquidating their inventory, a determination to reject the

Consignment Agreement or to permit Lexar to terminate that

agreement as of January 26, 2009, is simply premature,

especially given its potential effect on the Scheduled

Payment and other estate value. Accordingly, the Amended

Motion should be denied.

## II.   IT IS PREMATURE TO COMPEL REJECTION OF THE CONSIGNMENT AGREEMENT.

21.   Absent relief from this Court, the Debtors

have until confirmation of a plan to assume or reject any

executory contract.  11 U.S.C. § 365(d)(2); In re

Wheeling-Pittsburgh Steel Corp., 54 B.R. 385, 388 (Bankr.

W.D.Pa. 1985) ("As this language clearly states, the debtor

may wait until the plan confirmation date to make its

decision to assume or reject an unexpired [executory

contract]."). "It is the clear policy of the Bankruptcy Code

to provide the debtor with breathing space following the

filing of a bankruptcy petition, continuing until the

confirmation of a plan, in which to assume or reject an

executory contract." In re Dana Corp. 350 B.R. 144, 147

(Bankr. S.D.N.Y. 2006); In re Wheeling-Pittsburgh Steel

Corp., 54 B.R. at 388 ("Permitting the debtor to make its

decision as late as the plan confirmation date enables the

14

debtor to carefully evaluate the possible benefits and burdens of an [executory contract].").

22.   Thus, where, as here, a party seeks an order shortening the time in which the debtor may decide to assume or reject an executory contract, the party making that request bears the burden of showing why the time should be shortened.  In re Dana, 350 B.R. at 147.

23.   Lexar has not and cannot carry its burden of demonstrating that the time should be shortened.  As shown below, "cause" does not exit to lift the automatic stay and, thus, it also does not exist to shorten the timeframe in which the Debtors may assume or reject the Consignment Agreement.

24.   Furthermore, Lexar provides no authority to support the proposition that it may obtain a retroactive termination or rejection of the Consignment Agreement to January 26, 2009.  Specifically, as this Court well knows, normally the date of any assumption or rejection is the date of the order authorizing such action.  See, e.g., In re Amber's Stores, 193 B.R. 819, 825 (Bankr. N.D. Tx. 1996) ("The majority of courts . . . have found that the effective date of rejection is the date of the entry of bankruptcy

court's order approving rejection").  Moreover, the balance

of equities favors the Debtors on this point because Lexar

merely seeks retroactive rejection of the Consignment

Agreement to avoid making an additional $625,000 MDF and

Slotting Fee payment due to be paid to the Debtors on January

31, 2009.

25.  The court may, but is not required to, use

its discretion to fix a deadline by which a debtor must assume

or reject an executory contract.  In re Wheeling-Pittsburg

Steel Corp., 54 B.R. at 388; see also Matter of Dunes Casino

Hotel, 63 B.R. 939, 949 (D.N.J. 1986).  Even if the court

chooses to set a deadline, however, a debtor should be

allowed a reasonable amount of time in which to decide

whether to assume or reject an executory contract.  Theatre

Holding Corp. v. Mauro, 681 F.2d 102, 105 (2d Cir. 1982);

see also Consol. Gas Elec. Light & Power Co. of Baltimore

v. United Rys. & Elec. Co. of Baltimore, 85 F.2d 799, 801-02

(4th Cir. 1936).  Here, the Debtors require a reasonable

period of time to analyze the Consignment Agreement and the

numerous issues relating to payment, breach and perfection.

Consequently, at most, the Court should direct the Debtors

to make a determination as to assumption or rejection as of

some _future_ date, after the completion of the store inventory

liquidations.

**III. CAUSE DOES NOT EXIST TO LIFT THE STAY OR SHORTEN THE
      DEBTORS' TIME TO ASSUME OR REJECT THE CONSIGNMENT
      AGREEMENT.**

26.  Even assuming that this Court were to ignore

the fact that the Consignment Agreement has not been assumed

or rejected, Lexar's request for stay relief to terminate

the Consignment Agreement should be denied because Lexar has

not, and cannot, demonstrate cause.

27.  The "automatic stay is the most fundamental

protection afforded a debtor in bankruptcy," _In re Nelco_,

264 B.R. 790, 810 (Bankr. E.D. Va. 1999), and Congress

intended the automatic stay protection to have broad

application.  _See_ H.R. Rep. No. 95-595. 95th Cong., at 340-42

(1978), _reprinted in_ 1978 U.S.C.C.A.N. 5963, 6296-97; S. Rep.

No. 95-989, at 49-51 (1978), _reprinted in_ 1978 U.S.C.C.A.N.

5787, 5840-41.  Indeed, "[t]he main purpose of the automatic

stay is to give the debtor a breathing spell from his

creditors, to stop all collection efforts, harassment and

foreclosure actions." In re Atlas Machine & Iron Works, 239
B.R. 322, 328 (Bankr. E.D. Va. 1998) (citation omitted).

28.  The burden of proof in connection with a
motion for relief from the automatic stay is a shifting one
where the moving party has the burden of going forward with
an initial showing of cause.  In re Webber, 314 B.R. 1, 5
(N.D. Ok. 2004); see also In re Milstein, 304 B.R. 208, 212
(Bankr. E.D. Pa. 2004) (requiring that the movant establish
a prima facie case that cause exists to lift the stay).

29.  In determining whether to lift the stay for
cause, bankruptcy courts generally balance the potential
prejudice to the debtor's estate against the prejudice to
the creditor seeking relief from the stay.  In re Ewald, 298
B.R. 76, 80 (Bankr. E.D. Va. 2002)(citing Robbins v. Robbins
(In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992)); see also
In re Robinson, 1993 Bankr. LEXIS 1792, at *4 (Bankr. E.D.
Va. Nov. 16, 2003), aff'd 169 B.R. 356 (E.D. Va. 1994) (the
court must attempt "to harmonize the interests of both debtor
and creditors while preserving the debtor's assets for
repayment and reorganization").  Here, the balance of harms
weighs in favor of maintaining the stay.

18

30.   In the Amended Motion, Lexar argues that
"cause exists to grant relief from the automatic stay because
the Debtors are unable to perform their obligations under
the Consignment Agreement."  <u>See</u> Amended Motion at pp. 4-5.
However, this is legally and factually incorrect.

**A.   Contractual Modification Or Termination Based On Financial Condition Of The Debtor Is Invalid.**

31.   In the Amended Motion, Lexar argues that a
certain provision in the Consignment Agreement may allow
Lexar to terminate the agreement because the Debtors have
ceased to function as a going concern or to conduct
operations in the normal course of business.  <u>See</u> Amended
Motion at pp. 4-5 (<u>citing</u> Consignment Agreement at ¶ 22).
That position is, however, incorrect.

32.   First, Bankruptcy Code section 365(e)(1)(A)
provides, in relevant part:

> Notwithstanding a provision in an executory
> contract or unexpired lease . . . an executory
> contract or unexpired lease of the debtor may
> not be terminated or modified . . . at any time
> after the commencement of the case solely
> because of a provision in such contract or
> lease that is conditioned on —

19

(A) the insolvency or financial condition of
the debtor at any time before the closing of
the case.

11 U.S.C. § 365(e)(1)(A).

33.   Thus, Bankruptcy Code section 365(e)(1) renders the provision upon which Lexar seeks relief unenforceable, even assuming <u>Bildisco</u> did not.  Therefore, paragraph 22 of the consignment Agreement cannot serve as the basis for termination or modification of the Consignment Agreement.

34.   Moreover, even assuming, <u>arguendo</u>, that Bankruptcy Code section 365(e)(1) did not render paragraph 22 unenforceable, at bottom Lexar's argument is nothing more than the assertion that the Consignment Agreement cannot be assumed and, thus, the Debtors must be compelled to reject immediately.  As demonstrated below, that position is also incorrect as a matter of law.

**B.   Lexar's Arguments Are Factually Incorrect.**

35.   Lexar also contends that cause exists to lift the stay because the Debtors have allegedly failed to make certain post-petition payments or provide certain sales and inventory reports required under the Consignment Agreement,

20

and because the Debtors are allegedly no longer in conformance with a provision that "Circuit City shall exert commercially reasonable efforts to sell the Consigned products consistent with its usual course of business as a retailer of consumer electronics and related products." See Motion at p. 5.  For those alleged breaches of contract to serve as a basis for termination of the Consignment Agreement, however, Lexar must demonstrate that they are "material" breaches under the terms of the agreement.  See Consignment Agreement at ¶ 22(b)(i) (requiring material breach and failure to cure within ten days following notice of such breach).

36.   The Debtors dispute that any of the alleged breaches are material breaches under the Consignment Agreement.  For example, with respect to the alleged failure of the Debtors to make certain payments when due, the terms of the Consignment Agreement provide a remedy for such late payments.  See Consignment Agreement at ¶ 10 ("Payment Terms").  If any such amount is not paid within twenty-one days after the due date, Lexar may charge interest on the overdue amounts.  Further, the alleged breach based on

21

failure to provide information could be cured upon proper
notice.  Moreover, the "usual course of business" argument
is precluded by Bankruptcy Code section 365(e)(1), which
invalidates contractual provisions that would terminate or
modify executory contracts based on the financial condition
of the debtor.  11 U.S.C. § 365(e)(1)(A).  In any event, none
of the alleged breaches can be determined to be "material"
breaches without a full and proper proceeding, especially
where, as here, the Consignment Agreement itself provides
remedies to certain of the alleged breaches.

        37.  Based on all of the foregoing, the balance
of harms weighs in favor of keeping the automatic stay in
place.

        **C.    The Debtors' Alleged Inability To Assume The
                Consignment Agreement Does Not Constitute Cause.**

        38.  Lexar further contends that its requested
relief should be granted because the Debtors allegedly
cannot assume the Consignment Agreement.  Motion at 6.

        39.  However, courts have consistently rejected
similar contentions in the context of determining whether
to compel rejection.  Courts reason that there is nothing

in the Bankruptcy Code that requires a court to compel rejection of an unassumable executory contract.  See In re Hernandez, 287 B.R. 795, 797, 801-02 (Bankr. D. Ariz. 2002) (holding that a court is not required to order rejection of "an unassumable executory contract pursuant to 11 U.S.C. § 365(d)(2) upon the request of the non-debtor party to the contract").  Likewise, even if the non-debtor party believes that the end of the parties' contractual relationship is inevitable, as Lexar contends in its Motion, the court need not compel rejection.  In re Physician Health Corp., 262 B.R. 290, 295 (Bankr. D. Del. 2001).

40.   Therefore, assuming, arguendo, the Debtors cannot assume the Consignment Agreement, the court should nonetheless deny Lexar's Amended Motion.

### RESERVATION OF RIGHTS

41.   The Debtors do not waive, and expressly reserve, their rights to object to the Amended Motion on any other grounds that applicable law permits and to amend and modify this objection to assert such other grounds as a further review of the applicable law and the facts obtained in discovery may support.

23

### CONCLUSION

WHEREFORE, for all of the foregoing reasons, and any additional grounds which may be established at any hearing on the Amended Motion and this Objection, the Debtors respectfully request that the Court enter an order denying the relief requested in the Amended Motion.

Dated: February 11, 2009
        Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
                - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

                - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley              .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

24