Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :  Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :  Case No. 08-35653 (KRH)
et al.,                       :
                              :
          Debtors.            :  Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' PRELIMINARY OBJECTION AND RESPONSE TO THE
MOTION OF PLUMCHOICE, INC. FOR ORDER DIRECTING DEBTORS
TO PAY ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §
503(b) AND 507(a) AND REQUEST FOR RELATED RELIEF**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

"Circuit City" or the "Debtors")[1] hereby object and

provide a preliminary response (the "Objection") to the

Motion of PlumChoice, Inc. ("PlumChoice") for Order

Directing Debtors to Pay Administrative Expenses

Pursuant to 11 U.S.C. § 503(b) And 507(a) And Request

For Related Relief (the "Motion") (D.I. 1832).  In

support of the Objection, the Debtors respectfully

represent as follows:

**BACKGROUND**

**A.    The Bankruptcy Cases**

1.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code").

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

2.   On January 12, 2009, the Court entered an order authorizing the Debtors to conduct auctions for a sale or sales of the Debtors' businesses as a going concern or for liquidation (D.I. 1460).

3.   At the conclusion of the auction, the Debtors' determined that the highest and otherwise best bid was that of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC, and Tiger Capital Group, LLC (collectively, the "Agent").  On January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores (D.I. 1634).  The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.

**B.    The PlumChoice Motion.**

4.   By the Motion, PlumChoice seeks allowance and immediate payment of administrative expense claims in the total amount of $3,826,504.45 allegedly on account of post-petition services (and related costs) provided to the Debtors under three separate agreements. See Motion at ¶ 22.

**C.    The Dispatch Agreement.**

5.    On or about May 31, 2006, Circuit City
and PlumChoice entered into a dispatch agreement
pursuant to which Circuit City engaged PlumChoice to
perform telephonic dispatch support and scheduling
services to Circuit City's home theater installation,
home delivery and personal computer service business
units (the "Dispatch Agreement").    Motion at ¶ 5.

6.    PlumChoice seeks allowance and immediate
payment of an administrative expense claim in the amount
of $230,962.73 allegedly on account of services provided
under the Dispatch Agreement on or after the Petition
Date (the "Dispatch Claim").    Motion at ¶ 6.

**D.    The Remote Services Agreement.**

7.    On or about February 15, 2007, Circuit
City and PlumChoice entered into a remote services
agreement pursuant to which Circuit City engaged
PlumChoice to provide online, remote diagnostic services
to Circuit City customers (the "Remote Services
Agreement").    Motion at ¶ 3.

8.    PlumChoice seeks allowance and immediate
payment of an administrative expense claim in the amount

4

of $110,111.30 allegedly on account of services provided
under the Remote Services Agreement on or after the
Petition Date (the "Remote Services Claim").  Motion at
¶ 4.

**E.    The PTS Services Agreement.**

9.    On or about May 29, 2008, Verizon
Corporate Services Group, Inc. ("Verizon") and Circuit
City entered into a General Services Agreement (the
"Prime Contract") pursuant to which Verizon engaged
Circuit City to provide remote diagnostic and sales
support personal computing services to Verizon's
customers.  Motion at ¶ 9.

10.    In connection with the Prime Contract,
PlumChoice and Circuit City entered into a Premium
Technical Support Services Agreement (the "PTS Services
Agreement") pursuant to which Circuit City engaged
PlumChoice as a subcontractor to provide remote
technical services ("Remote PTS Services") to Verizon
and its customers.  Motion at ¶ 10.

11.    Prior the Petition Date, Verizon sent
Circuit City correspondence wherein Verizon alleged that
Circuit City was in violation of various provisions of

the Prime Contract and threatened to terminate the such

contract.  These breaches, however, related to breaches

by PlumChoice under the PTS Services Agreement.

12.  Although Circuit City disputed that

Verizon was permitted to terminate the Prime Contract,

Verizon exercised its alleged rights and asserted that

the Prime Contract terminated shortly after the Petition

Date.  In an effort, among other things, to mitigate its

damages resulting from PlumChoice's breaches and avoid

protracted litigation with Verizon, Circuit City

negotiated a consensual resolution with Verizon and

memorialized the terms of the resolution in a letter

agreement (the "Verizon Settlement Agreement").

13.  The Verizon Settlement Agreement resolves

all issues related to the Prime Contract, other than a

final invoice.  In particular, the Debtors and Verizon

agreed that the Prime Contract was rejected and

terminated effective December 31, 2008.  Verizon agreed

to pay the Debtors a portion of amounts under the Prime

Contract that were in dispute and amounts due under a

"final invoice", which covered the period through

December 31, 2008.  And, the Debtors and Verizon agreed

that nothing in the Verizon Settlement Agreement was
intended to or would impair Circuit City's rights vis-a-
vis PlumChoice.[2]

14.    According to PlumChoice, by operation of
the PTS Services Agreement, such agreement was
automatically terminated on the same date the Prime
Contract with Verizon was terminated.

15.    By the Motion, PlumChoice seeks allowance
and immediate payment of an administrative expense claim
in the amount of $798,560.18 allegedly on account of
Remote PTS Services provided under the PTS Services
Agreement on or after the Petition Date through December
31, 2008 (the "PTS Claim").   Motion at ¶ 10.

**F.    Other Asserted Administrative Expense Claims.**

16.    PlumChoice also seeks allowance and
immediate payment of administrative expense claims in
the amount of (i) $1,878,766.24 allegedly on account of
certain contractual infrastructure costs (the
"Infrastructure Costs") relating to the purported
termination of the PTS Services Agreement, and (ii)

---

[2]    The motion to approve the Verizon Settlement Agreement is
     scheduled to be heard on February 13, 2009.

$808,104.00 allegedly on account of certain contractual wind-down expenses (the "Wind-Down Expenses") relating to the purported termination of the PTS Services Agreement.  A summary of all administrative expense claims sought by PlumChoice follows below:

| **Description** | **Amount Allegedly Due** |
| --- | --- |
| Post-Petition Services under Remote Services Agreement | $110,111.30 |
| Post-Petition Services under Dispatch Agreement | $230,962.73 |
| Post-Petition Services under PTS Services Agreement | $798,560.18 |
| Infrastructure Costs under PTS Services Agreement | $1,878,766.24 |
| Wind-Down Expenses under PTS Services Agreement | $808,104.00 |
| **Total** | **$3,826,504.45** |

**G.    Pre-petition Transfers To PlumChoice.**

17.  The Debtors' records reflect that the Debtors made at least ten pre-petition transfers to PlumChoice during the 90-day period prior to the Petition Date (collectively, the "Pre-petition

Transfers"). Relevant information relating to the Pre-petition Transfers is as follows:[3]

| Payment Date | Payment Amount | Invoice Date(s) |
|---|---|---|
| 8/21/08 | $101,689.40 | 1 Invoice dated July 31, 2008. |
| 8/28/08 | $35,713.50 | 1 Invoice dated August 1, 2008. |
| 8/28/08 | $415,901.32 | 4 Invoices dated August 1, 2008. |
| 9/23/08 | $155,074.95 | 2 Invoices dated August 31, 2008. |
| 9/25/08 | $483,987.56 | 6 Invoices dated between July 1, 2008 and September 1, 2008. |
| 9/30/08 | $157,032.61 | 1 Invoice dated September 1, 2008. |
| 10/1/2008 | $315,662.64 | 2 Invoices dated August 1, 2008. |
| 10/3/08 | $76,838.92 | 2 Invoices dated between August 1, 2008 and September 1, 2008. |
| 10/9/08 | $104,278.12 | 2 Invoices dated between June 1, 2008 and September 1, 2008. |
| 10/21/08 | $431,500.00 | 2 Invoices dated between August 1, 2008 and August 31, 2008. |

---

[3] The Debtors transferred an additional $1.8 million in wires to PlumChoice during the 90-day period, but the Debtors have thus far been unable to reconcile the wires to any invoices. The Debtors reserve the right to amend and/or supplement this information at any time as the claims reconciliation process continues.

**PRELIMINARY OBJECTION**

18.   By the Motion, PlumChoice seeks allowance
and payment of substantial administrative expense claims.
The Debtors respectfully submit that the Motion should
be denied or adjourned because it is premature and
because the Debtors require an opportunity to evaluate
and reconcile the claims asserted by PlumChoice.
Additionally, as further discussed below, even at this
stage the Debtors dispute many of PlumChoice's factual
allegations and legal conclusions, and additional
factual development and/or discovery on the issues is
necessary.

I.   **ADJUDICATION OF THE ALLOWED AMOUNT OF THE
PLUMCHOICE CLAIMS IS PREMATURE AT THIS TIME.**

19.   As discussed more fully in section III
below, the Debtors have not completed their
reconciliation of Dispatch Claim, the Remote Services
Claim or the PTS Claim.  Although the accounting system
did show amounts due to PlumChoice under the PTS
Services Agreement, the Debtors have not had sufficient
time to reconcile the discrepancy between the Debtors'
records and the PTS Claim in favor of the Debtors.

Likewise, the Debtors have not had sufficient time to
reconcile the Remote Services or Dispatch Claim and, as
of the filing of this Motion, believe that both claims
are overstated.

20.   Additionally, it appears that PlumChoice
was the recipient of the Pre-petition Transfers, which
are transfers on account of antecedent debts, made
within 90 days of the Petition Date, while the Debtors
were presumed insolvent, and that may have allowed
PlumChoice to receive more than it would have had such
transfers not been made.  Based on these facts, there is
a colorable claim that the Pre-petition Transfers are
avoidable under Bankruptcy Code section 547.  See 11
U.S.C. § 547(b) (setting forth the requirements of an
avoidable transfer thereunder).

21.   Given the potential avoidability of the
Pre-petition Transfers, Bankruptcy Code section 502(d)
provides that all of PlumChoice's asserted
administrative claims should be held in abeyance pending
resolution of any avoidance actions.  Specifically,
Bankruptcy Code section 502(d), provides as follows:

> the court shall disallow any claim of any
> entity from which property is recoverable
> under section . . . 550 . . . of this title or
> that is a transferee of a transfer avoidable
> under section . . . 547 . . . of this title,
> unless such entity or transferee has paid the
> amount, or turned over any such property, for
> which such entity or transferee is liable
> under section . . . 550 . . . of this title.

11 U.S.C. § 502(d).  Thus, section 502(d) expressly and

unequivocally applies to "any claim of any entity."  See

also Central Virginia Community College v. Katz, 546 U.S.

356, 271 (2006)(noting that, under section 502(d), if

the [creditor] has a claim against the bankrupt estate,

the avoidance determination operates to bar that claim

until the preference is turned over); In re Bob Grissett

Golf Shoppes, Inc., 50 B.R. 598, 607 (Bankr. E.D. Va.

1985)("[S]ection 502(d) requires that the court disallow

the claim of any entity that has been the recipient of

an avoidable transfer unless the entity has disgorged

the property.").

    22.  Section 502(d) "is designed to assure an

equality of distribution of the assets of the bankruptcy

estate" among similarly situated parties in interest.

Campbell v. United States (In re Davis), 889 F.2d 658,

662 (5th Cir 1989); see also Keppel v. Tiffin Sav. Bank,

197 U.S. 356, 361 (1905)(discussing Bankruptcy Act section 57g, the precursor to section 502(d), and finding that the "fundamental purpose of the provision in question was to secure an equality of distribution of the assets of a bankrupt estate"). It is further "intended to have a coercive effect of insuring compliance with judicial orders." Davis, 889 F.2d at 661.

23. In order to effectuate the purposes of 502(d), "a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer." In re Lambert Oil Co., 347 B.R. 508, 522, n. 6 (W.D. Va. 2006)(citing 4 Collier on Bankruptcy ¶ 502.05[2][a] (15th ed. rev. 2003)). Thus, disallowance under section 502(d) does not require that the transfer have been previously avoided. See also In re Red Dot Scenic, Inc., 313 B.R. 181, 185 (Bankr. S.D.N.Y. 2004)("The plain language of section 502(d) does not condition disallowance on the transferee's failure to satisfy a judgment; instead, it states that 'the court shall

disallow any claim of any entity from which property <u>is</u>
<u>recoverable</u> . . .'" (emphasis in original)).

        24.  At this time, the Debtors have not
completed their analysis of Pre-petition Transfers or
commenced any avoidance actions.  Indeed, the Debtors
are still well within the time limits set by Bankruptcy
Code section 546(a) to do so.  Notwithstanding the
foregoing, because the facts suggest that PlumChoice may
have received one or more avoidable transfers,
PlumChoice's administrative claims should be held in
abeyance pending resolution of any avoidance actions
against it.

**II.  PLUMCHOICE HAS FAILED TO ESTABLISH THAT THE WIND
      DOWN EXPENSES AND INFRASTRUCTURE COSTS ARE
      ADMINISTRATIVE EXPENSES UNDER BANKRUPTCY CODE
      SECTION 503.**

        25.  Administrative expense claims under
Bankruptcy Code section 503(b)(1)(A) are limited to "the
actual, necessary costs and expenses of preserving the
estate." 11 U.S.C. § 503(b)(1)(A).  To grant an expense
administrative priority under Bankruptcy Code section
503(b), the Court must find that the expense was an
<u>actual</u> expense of the estate <u>and</u> that payment of the

expense is <u>necessary</u> to preserve the Debtors' estate.
<u>See</u> <u>Ford Motor Credit</u>, 35 F.3d at 866 ("The modifiers
'actual' and 'necessary' must be observed with
scrupulous care[.]" (citation omitted)).

26.  As the party filing an administrative
claim, PlumChoice bears the burden of proving that its
claim is entitled to administrative priority under
Bankruptcy Code section 503.  <u>See</u>, <u>e.g.</u>, <u>In re MERRY-GO-
ROUND ENTERPRISES v. SIMON DEBARTOLO GROUP</u>, 180 F.3d 149,
157 (4th Cir. 1999) (holding that the creditor "has the
burden of proving that its administrative claim . . . is
an actual and necessary expense"); <u>Ford Motor Credit Co.
v. Dobbins</u>, 35 F.3d 860, 866 (4th Cir. 1994) (same).

27.  In addition to demonstrating that the
Wind Down Expenses and Infrastructure Costs are "actual"
and "necessary", to carry their burden, the Movants must
demonstrate that (1) the expense and right to payment
arise from a post-petition transaction with the debtor,
and (2) the consideration supporting the right to
payment provides some benefit to the estate.  <u>MERRY-GO-
ROUND</u>, 180 F.3d at 156; <u>Stewart Foods v. Broecker (In re
Stewart Foods)</u>, 64 F.3d 141, 145 n.2 (4th Cir. Va. 1995);

see also CIT Commun. Fin. Corp. v. Midway Airlines Corp.
(In re Midway Airlines Corp.), 406 F.3d 229, 236 (4th
Cir. 2005) (compiling cases that articulated
substantially similar standards).  PlumChoice has failed
to (and indeed cannot) prove either element.

**a. Plumchoice Has Failed To Prove The Existence Of
A Post-Petition Transaction With The Debtors.**

28.  PlumChioce contends that the Debtors and
PlumChoice entered into a post-petition transaction.  In
support, PlumChoice relies upon termination of the PTS
Services Agreement on December 31, 2008.  However, this
argument ignores the undisputed facts and cases directly
on point and recognized by this Court as consistent with
Fourth Circuit law.

29.  Courts have consistently held that post-
petition contractual damage claims arising from pre-
petition contracts are not entitled to administrative
priority.  See, e.g., Einstein/Noah Bagel Corp. v. Smith
(In re BCE West, L.P.), 319 F.3d 1166, 1173 (9th Cir.
2003) (holding that a breach of contract claim resulting
from post-petition conduct, but arising from a pre-
petition contract, did not arise from a post-petition

transaction with the debtor); In re Sheehan Mem. Hosp.,
377 B.R. 63, 67 (Bankr. W.D.N.Y. 2007) (concluding that
an employment termination claim arose not from post-
petition conduct, but from the execution of a pre-
petition contract).  Indeed, this Court previously
recognized that this legal principle was consistent with
Fourth Circuit law.  See In re US Airways Group, Inc.,
296 B.R. 673, 681 (E.D. Va. 2003) (noting that the 9th
Circuit Court of Appeals' decision in Einstein was
consistent with Fourth Circuit law).

30.  Guide by this principle, it becomes
evident that the Wind Down Expenses and Infrastructure
Costs are not entitled to administrative priority under
Bankruptcy Code section 503.  As described above, the
Wind Down Expenses and Infrastructure Costs resulted
from termination of the PTS Services Agreement.  As
PlumChoice concedes, the PTS Services Agreement was
executed May 21, 2006 (more than 2 years before the
Petition Date).  Additionally, the Debtors assert that
PlumChoice was in breach of the PTS Services Agreement
prior to the Petition Date.  As a result of PlumChoice's
pre-petition breaches, Verizon initiated termination of

the Prime Contract pre-petition.  Based on Verizon's
pre-petition actions, the Debtors entered into
negotiations with Verizon to attempt, among other things,
to mitigate any damages resulting from PlumChoice's
breaches.  Without dispute, all of foregoing events
occurred pre-petition.

      31.  In fact, the only transaction seemingly
related to the PTS Services Agreement that occurred
post-petition was a transaction that did not involve
PlumChoice.  Instead, the Debtors and Verizon entered
into the Verizon Settlement Agreement whereby the Prime
Contract was terminated.  Once the Prime Contract was
terminated, the PTS Services Agreement automatically
terminated.  Thus, PlumChoice is attempting to bootstrap
the Debtors' transaction with Verizon as a post-petition
transaction between the Debtors and PlumChoice.  Similar
attempts have been rejected.  See In re FP Label Co.,
2004 Bankr. LEXIS 1248, *5 (Bankr. C.D. Ill. Aug. 25,
2004) (rejecting creditor 1's attempt to "bootstrap" a
foreign transaction between the debtor and creditor 2 as
a transaction between the debtor and creditor 1 and
concluding that creditor 1 was not entitled to an

administrative claim for damages under a pre-petition

contract resulting from the transaction to which it was

a foreign party).

32.  Because PlumChoice has failed to allege a

post-petition transaction with the Debtors, PlumChoice

has failed to satisfy the first element of an

administrative claim.

**B.   PlumChoice Has Failed To Establish That The
Debtors And Their Estates Received A Post-
petition Benefit.**

33.  In addition to the foregoing, before an

administrative claim will be allowed, the movant must

establish that the Debtors and their estates received a

benefit.  MERRY-GO-ROUND, 180 F.3d at 156; Stewart Foods,

64 F.3d at 145 n.2.  In support of this element,

PlumChoice "presumes" that the Debtors believed benefits

under the Verizon Settlement Agreement outweighed any

burdens under the PTS Services Agreement.  Thus, the

Debtors estates allegedly received a benefit.

34.  However, this argument is as inadequate

as it is specious.  First, PlumChoice cannot rely on

unsubstantiated "presumptions" as factual evidence to

satisfy its burden under Bankruptcy Code section 503(b).

See, generally, Austin v. Big Ten Capital Management,

LLC (In re Austin), 2006 Bankr. LEXIS 2471 (Bankr. E.D.

Va. Sept. 21, 2006) ("Mere conclusions without factual

support are insufficient to state a claim upon which

relief can be granted.").

35.   Second, as PlumChoice concedes, the PTS

Services Agreement terminated on December 31, 2008 and

the Wind Down Expenses and Infrastructure Costs resulted

from such termination.  Contrary to PlumChoice's

assertions in the Motion, the Debtors believe that

PlumChoice ceased providing services thereunder as of

that date.  Additionally, the Debtors believe PlumChoice

was in default under the PTS Services Agreement prior to

(and after) the Petition Date and such defaults

necessitated termination of the Prime Contract with

Verizon.  Thus, neither the Debtors nor their estates

received any benefit on or after December 31, 2008 under

the PTS Services Agreement and likely were damaged prior

thereto by PlumChoice's conduct.

36.   Assuming, arguendo, the Debtors received

some benefit under PTS Services Agreement, this fact

alone is insufficient to give rise to an administrative

expense claim under Bankruptcy Code section 503(b)(1).

Ford Motor Credit, 35 F.3d at 866 (holding that the debtor must receive a "concrete" benefit).  Here, PlumChoice cannot cite a "concrete" benefit.  Instead, PlumChoice relies on vague, unsubstantiated statements in its Motion, all of which are insufficient to meet PlumChoice's burden and, at a minimum, require discovery.

37.   Consequently, the Court should deny the Motion.

## III. ADDITIONAL FACTUAL DEVELOPMENT AND/OR DISCOVERY IS NEEDED.

38.   As discussed above, the Motion should be denied because the Debtors have not reconciled PlumChoices' Dispatch, Remote Services and PTS Claims and dispute the Wind Down Expenses and Infrastructure Costs in their entirety.

39.   Moreover, the "burden of proof on an application for payment of an administrative expense is on the applicant . . . .  Administrative expenses are narrowly construed because they run counter to the central premise of bankruptcy distributions which is a pro rata distribution among all creditors."  In re

<u>Computer Learning Ctrs., Inc.</u>, 298 B.R. 569, 577 (Bankr. E.D. Va. 2003).

40.  In this case, PlumChoice has failed to meet its burden at this stage of the proceedings because there exist multiple issues of disputed law and fact that require further development, including but not limited to those set forth above and the following:[4]

41.  <u>Dispatch Agreement</u>.  The Debtors dispute PlumChoice's allegation that the Debtors unilaterally terminated the Dispatch Agreement on January 20, 2009, and that PlumChoice incurred $43,690.76 in resulting administrative expenses.

42.  <u>Infrastructure Costs</u>.  PlumChoice alleges it is entitled to $1,878,766.24 as an administrative expense claim on account of Infrastructure Costs associated with the termination of the PTS Services Agreement and Remote Services Agreement on December 31, 2008.  <u>See</u> Motion at ¶¶ 15, 25-26.  However, the section

---

[4]  As discussed above, at this time, the Debtors have not completed their reconciliation of the Remote Services, Dispatch or PTS Services Claims.  Notwithstanding the following discussion, the Debtors reserve all rights to assert that additional amounts asserted by PlumChoice are improper or invalid.

of the PTS Services Agreement relied upon by PlumChoice

in the Motion as the basis for these amounts provides

that Circuit City must pay certain Infrastructure Costs

to PlumChoice "in the event either the Remote Services

Agreement or the [the PTS Services Agreement] is

terminated prior to December 31, 2008."  See Motion at ¶

11; PTS Services Agreement § 3.3 (emphasis added).  Thus,

based on the allegations in the Motion, Circuit City

would not be required to pay the Infrastructure Costs.

43.  Moreover, section 3.3 of the PTS Services

Agreement further provides that "[w]ith respect to

Infrastructure Costs incurred in excess of Five Hundred

Thousand Dollars ($500,000) . . . the Parties hereby

agree to negotiate in good faith to determine the

appropriate cost allocations, if any, between them."

See PTS Services Agreement § 3.3.  Yet, here, PlumChoice

seeks almost $1.9 million in Infrastructure Costs under

the PTS Services Agreement without mention of the

contractual provision in its Motion.

44.  Wind-Down Expenses.  PlumChoice alleges

it is entitled to $808,104.00 as an administrative

expense claim on account of Wind-Down Expenses

associated with the termination of the PTS Services
Agreement and Remote Services Agreement on December 31,
2008.  However, it may be argued that the Wind-Down
Expenses asserted under the PTS Services Agreement are
akin to liquidated damages.  Under Virginia law, which
governs the PTS Services Agreement, "a liquidated
damages clause will be construed as an unenforceable
penalty 'when the damage resulting from a breach of
contract is susceptible of definite measurement, or
where the stipulated amount would be grossly in excess
of actual damages.'"  O'Brian v. Langley Sch., 507
S.E.2d 363, 365 (Va. 1998).  Here, PlumChoice submitted
with its Motion documentation allegedly providing
details regarding many of the administrative expense
claims, but it provided no such detail or breakdown of
the Wind-Down Expenses.

45.  Further, the "party opposing the
imposition of liquidated damages is entitled to conduct
discovery and present relevant evidence that the damages
resulting from breach of the contract are susceptible of
definite measurement or that the stipulated damages are
grossly in excess of the actual damages suffered by the

nonbreaching party.  Upon proof of either of these

elements, a liquidated damages clause becomes an

unenforceable penalty."  Id.

46.  Analysis and Reconciliation.  The Debtors

have not yet had the opportunity to analyze or reconcile

PlumChoice's allegations regarding the necessity and

value of post-petition services provided to the Debtors

pursuant to the Remote Services Agreement, the Dispatch

Agreement, and the PTS Services Agreement.  The Debtors

require the opportunity to conduct such an analysis and

reconciliation, lest PlumChoice be improperly awarded

administrative expense claims at the expense of the

other creditors in these cases.  See In re Midway

Airlines Corp., 406 F.3d 229, 241 (4th Cir. 2005) ("the

general rule is that all administrative creditors in a

bankruptcy case are to be treated equally").

47.  Debtors' Claims Against PlumChoice.  On

information and belief, PlumChoice has breached certain

of its obligations under the Remote Services Agreement

and/or the PTS Services Agreement relating to the

screening and hiring of employees to carry out

PlumChoice's obligations under those agreements.

Moreover, upon information and belief, PlumChoice's breaches of its agreements with the Debtors caused the Debtors to be in breach of related agreements with third-parties and may have caused or contributed to the termination of those agreements and subsequent damages.

48.  As demonstrated above, the Debtors need the opportunity to analyze and develop the issues raised herein and other issues which may present defenses to the alleged administrative claims.  Such analysis and development would serve to protect the other creditors in these cases from the improper depletion of the Debtors' estates.

49.  To the extent the Court does not deny the Motion outright, the Court should set a reasonable discovery and briefing schedule so at to avoid unnecessary distraction from the Debtors immediate focus of, among other things, maximizing value of the estates through liquidating their remaining assets.

## RESERVATION OF RIGHTS

50.  The Debtors do not waive and expressly reserve their rights to object to the Motion on any other grounds that applicable law permits and to amend

and modify this objection and preliminary response to

assert such other grounds as a further review of the

applicable law and the facts obtained in discovery may

support.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order denying the relief requested in the Motion.

Dated: February 11, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley          .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

28