Jesse N. Silverman (VA Bar No. 46456)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8127
Facsimile: (215) 864-9035

- and -

Thomas J. Leanse (Cal. Bar No. 084638)
Dustin P. Branch (Cal. Bar No. 174909)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **In re:** | ) ) | **Chapter 11** |
| **CIRCUIT CITY STORES, INC., et al.,** | ) ) ) | **Case No. 0835653-KRH** |
| Debtors. | ) ) ) ) | (Jointly Administered) |

**OBJECTION OF THE MACERICH COMPANY, COUSINS PROPERTIES INCORPORATED, WATT MANAGEMENT COMPANY, RREEF MANAGEMENT COMPANY, FOURSQUARE PROPERTIES, INC., KNP INVESTMENTS, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND PORTLAND INVESTMENT COMPANY OF AMERICA TO THE DEBTORS' MOTION FOR ORDERS UNDER BANKRUPTCY CODE SECTIONS 105, 363, AND 365 (I) APPROVING BIDDING AND AUCTION PROCEDURES FOR SALE OF UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES, (II) SETTING SALE HEARING DATES AND (III) AUTHORIZING AND APPROVING (A) SALE OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES FREE AND CLEAR OF ALL INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES AND (C) LEASE REJECTION PROCEDURES**

The Macerich Company, Cousins Properties Incorporated, Watt Management Company, RREEF Management Company, FourSquare Properties, Inc., KNP Investments, The Prudential Insurance Company of America, and Portland Investment Company of America (the

- 1 –

"Landlords") hereby file their objection (the "Objection") to the Debtors' Motion For Orders Under Bankruptcy Code Sections 105, 363, And 365 (I) Approving Bidding And Auction Procedures For Sale Of Unexpired Nonresidential Real Property Leases, (II) Setting Sale Hearing Dates And (III) Authorizing And Approving (A) Sale Of Certain Unexpired Nonresidential Real Property Leases Free And Clear Of All Interests, (B) Assumption And Assignment Of Certain Unexpired Nonresidential Real Property Leases And (C) Lease Rejection Procedures (the "Second Sale Motion"),[1] and respectfully represent as follows:

## I. INTRODUCTION

The Debtors' expedited auction process, followed by an almost immediate hearings after multiple auctions to approve any potential assignee, eviscerates Landlords' Lease (as defined below), Bankruptcy Code, and due process protections. Moreover, the procedures are contrary to the procedures adopted in the previous auction conducted in this case. The procedures for Landlords seeking to bid on their own Leases are discriminatory, unduly burdensome on Landlords and inconsistent with maximizing the return on lease sales to the bankruptcy estates. Finally, the proposed procedures ignore 11 U.S.C. §365. Any sale that includes non-residential real property leases must not compromise the rights of Landlords and Debtors' neighboring tenants, and must satisfy all the requirements of Bankruptcy Code. This includes that any assignee demonstrate that it will comply with the terms of the Leases, and furnish Landlords with adequate assurance of future performance evidence with sufficient time to review such information prior to any objection deadline or contested sale hearing.

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Second Sale Motion and accompanying documents.

**II.    BACKGROUND FACTS**

1.   Circuit City Stores, Inc. and its affiliated Debtor entities (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on November 10, 2008.  The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.   Landlords are the owners or managing agents of numerous shopping centers (the "Centers") throughout the United States wherein Debtors continue to operate their retail stores (the "Premises") pursuant to nonresidential real property leases (the "Leases").  The specific Landlord and location for each Lease subject to this Objection is set forth in Exhibit "A", which is incorporated herein by this reference.

3.   The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

4.   On or about February 3, 9008, the Debtors filed the Second Sale Motion, requesting approval of the bidding procedures for multiple auctions to sell their remaining leases. The proposed schedules violate principles of due process and deprive Landlords of the essential protections contained in Section 365 and under the terms of their Leases.

**III.    ARGUMENT**

  **A.  The proposed sale schedules deny Landlords due process.**

5.   The timetables proposed by the Debtors do not provide adequate time for the Landlords to respond to proposed cure amounts or assess adequate assurance of future performance information.  The Second Sale Motion proposes for the following schedules:

- February 18, 2009 @ 3:00 p.m. ET - deadline to submit bids on the February auction leases
- February 19, 2009 – deadline to submit list of leases and proposed cures for February 20th auction
- February 20, 2009 @ 10:00 a.m. ET - auction on February auction leases
- February 24, 2009 at 12:00 p.m. ET – deadline to object to cure and sale of February leases

---

[2] Unless otherwise specified, all statutory "Section" references are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

- February 25, 2009 - sale hearing on February auction leases
- March 12, 2009 @ 3:00 p.m. ET - deadline to submit bids on all March Leases.
- March 15, 2009 – deadline to submit list of leases and proposed cures for March 16th auction.
- March 16, 2009 @ 10:00 a.m. ET - auction on first round of March auction leases
- March 19, 2009 @ 12:00 p.m. ET - deadline to object to cure and sale of first round of March Leases.
- March 20, 2009 - sale hearing on first round of March auction leases
- March 23, 2009 – deadline to submit list of leases and proposed cures for March 24th auction.
- March 24, 2009 @ 10:00 a.m. ET - auction on second round of March Leases.
- March 29, 2009 @ 12:00 p.m. ET - deadline to object to cure and sale of second round of March Leases.
- March 30, 2009 - sale hearing on second round of March auction leases
- April 8, 2009 – deadline to submit list of leases and proposed cures for April 9th auction.
- April 9, 2009 @ 10:00 a.m. ET - auction on third round of March auction leases
- April 13, 2009 @ 12:00 p.m ET - deadline to object to cure and sale of third round of March Leases.
- April 14, 2009 - sale hearing on third round of March auction leases.

6. The Debtors propose to file a list of Leases subject to each auction, along with a proposed cure schedule, one business day prior to each auction. *See* Proposed Order at ¶ 5. The deadlines to object to cure amounts and the sale of any leases is 12:00 p.m. ET on the business day prior to each of the above sale hearing dates. *See* Proposed Order at ¶ 6.

7. The multiple auction schedules are confusing and unduly burdensome. The debtors should provide one set of dates that provide Landlords an adequate opportunity to review and assess cure and adequate assurance information, as well as to object to the proposed cure or sale of any Lease. As proposed, the auction schedules are unduly burdensome to Landlords, unnecessarily short, inconsistent with Section 365, and deny Landlords due process. Fundamental concepts of due process require that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). *See also* Sullivan v. Barnett, 139 F.3d 158, 171 (3rd Cir. 1998).

8. The schedules proposed by the Debtors do not preserve these concepts of due process. Under the proposed auction schedules, any adequate assurance of future performance information could only be provided one, or at most two, days prior to any sale objection deadline. Additionally, Landlords only have two to three business days to review the proposed

- 4 –

cure amounts and object if they are incorrect. This time is insufficient for Landlords to prepare meaningful objections, and there is no justification for such an expedited procedure that only serves to deprive Landlords of their rights under Section 365.

9. That notwithstanding, the Second Sale Motion does not appear to even require that the Debtors or assignee provide the Landlords with any adequate assurance of future performance prior to the hearing, rendering Section 365(b) effectively meaningless. As set forth below, any final order approving the Bidding Procedures must require that the Debtors and/or any potential assignee provide the Landlords with the adequate assurance of future performance information necessary to assess such proposed assignee's ability to perform under the Leases, as required by Section 365(b), far enough in advance of any objection deadline to permit Landlords to review the information and formulate a meaningful objection, if necessary.

10. In order to satisfy the adequate assurance of future performance burden as more fully discussed below, the Debtors and the proposed assignee will need to provide Landlords, at a minimum, the following information:

(i) the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store;
(ii) the potential assignee's intended use for the space;
(iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto;
(iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projection for the Lease subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Leases;
(v) all documents and other evidence of the potential assignee's retail experience and experience operating in-line stores in a shopping center; and
(vi) a contact person for the proposed assignee that Landlord may directly contact in connection with the adequate assurance of future performance.

11. The items set forth above constitute a non-exclusive list of the minimum information the Landlords will need to assess a potential assignee. Absent the provision of this information, the Debtors cannot carry their burden under Section 365 and Landlords cannot meaningfully assess the bona fides of any proposed assignee. Landlords reserve the right to

- 5 –

request further information that they deem necessary to make an informed decision as to the ability of a potential assignee to satisfy the requirements of Section 365.

12.     Once the Landlords receive adequate assurance information, they need sufficient time to assess the proposed assignee's ability to satisfy Section 365(b). The Landlords require at least seven business (7) days from the receipt of adequate assurance of future performance information to assess the proposed assignee and object, if necessary, prior to any sale hearing. To do otherwise deprives the Landlords of due process, and the benefits of Section 365. If the Landlords do not have sufficient information (or time) to make a determination as to the proposed assignee, or if such assignee is unacceptable, the Landlords will need to object to the proposed sale and prepare for a contested evidentiary hearing. In preparation of such evidentiary hearing, the Landlords will need to conduct expedited discovery, arrange for expert testimony, and file supplemental objections based upon the information gleaned from whatever information is actually produced. This process cannot be accomplished on Debtors' proposed schedule. The proposed schedule serves only to limit the Landlords' ability to fully assess any successful bidder, or to contest the assumption and assignment of the Leases in a prepared and informed manner.[3]

13.     The Second Sale Motion and proposed order requires that Landlords' objections must state, with specificity, the legal and factual basis of any objection to the assumption and assignment of their Leases. *See* Proposed Order at ¶ 17. Landlords need to receive adequate assurance of future performance information, with sufficient time to review such information, in order to formulate a cogent objection that sets forth the factual and legal basis for their objections. The Landlords should not suffer prejudice to their rights to have an opportunity to review and assess all information required by Section 365 due to manufactured emergencies or deadlines not of their making. The Court should not permit the Debtors to seek an assumption

---

[3] Landlords note that the bidding procedures also provide for the Debtors to accept back-up bids and seek to finalize a sale with a back-up bidder on certain circumstances. There is no provision for providing Landlords with any information on such a back-up bidder, and the Landlords reserve all rights to object to any attempt to pursue a sale with a back-up without complying with all requirements of Section 365.

and assignment of the Leases on the proposed schedule, and to the extent that any hearing goes forward under the schedules proposed by the Debtors, such hearings should serve only as a status conference to set expedited discovery, a briefing schedule, and a further evidentiary hearing for any landlords that contest the proposed assumption and assignment of their leases.

**B.     The Debtors must provide adequate assurance of future performance information.**

14.     The Debtors may not assume and assign the Leases unless they demonstrate adequate assurance of future performance by a proposed assignee under the Leases. 11 U.S.C. § 365(b)(1)(C); *See also* 11 U.S.C. § 365(f)(2). The Debtors bear the ultimate burden of persuasion as to issues under Section 365. See In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also* Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).

15.     Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See e.g.*, Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented); In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986) (court granted motion to assume and assign based on assignee's capital contribution, personal financial resources, and expressed willingness to devote sufficient funding which gave new restaurant a strong likelihood of succeeding, coupled with assignee's experience as an owner/operator of a successful restaurant and his family's planned involvement in the day-to-day management).  Without this type of information, the Landlords are denied their statutory right to conduct a meaningful analysis of any proposed assignee.

16.     The Court should require the Debtors to provide Landlords with the adequate assurance of future information for any proposed bidders as required by the Bankruptcy Code, as well as adequate time to analyze such information.  As set forth above, all information and evidence upon which the Debtors and any proposed assignee intends to rely to establish adequate assurance of future performance under Section 365 (e.g., financials, business plans, proposed

use, etc.) should be delivered to the Landlords no later than seven (7) business days prior to any deadline to object to the assumption and assignment of any Lease.

**C.   The Landlords are entitled to heightened adequate assurance under Section 365(b)(3).**

17. In this case, the Leases are shopping center leases and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Leases under Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). The heightened adequate assurance requirements that the Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);
- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and
- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

18. This adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment of a Lease under Section 365(f)(2)(B). Sun TV and Appliances, Inc., 234 B.R. at 370. As set forth above, and also in connection with the heightened adequate assurance requirement for shopping center leases, courts require a specific factual showing through competent evidence to determine whether the Debtors have provided adequate assurance of future performance. Matter of Haute Cuisine, Inc., 58 B.R. at 394.

19. The Landlords have additional adequate assurance concerns where, as here, the identity of any potential assignee of the Leases is currently unknown. Such assignee may be a newly formed entity with no financial or operating history. At this time, the Debtors have provided no information with respect to any potential assignee's structure, capitalization, principals or experience in the industry. While it may be that such assignee may be backed by

one or more other entities with industry experience and/or financing, the Landlords will require such assignee to provide some type of credit enhancement, such as: (i) a guaranty of future performance; (ii) a letter or credit; or (iii) a cash security deposit. Landlords require that an existing entity with acceptable financing guaranty the performance of any newly-formed company. In addition, pursuant to Section 365(l), the Landlords may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Leases in the event that the assignee fails to perform on a going-forward basis. This is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors are seeking approval of an assignee with no operating history.

20. For the reasons set forth above, the Landlords object to any attempt to approve an assignment of the Leases at the proposed Sale Hearing. Until adequate assurance of future performance information is provided to Landlords, Landlords reserve all rights under Section 365 to object to any proposed assignee and the sufficiency of any adequate assurance information provided.

**D.    Landlords biding on their own Leases.**

21. In connection with the first round of auctions for leases in this case, the Landlords were permitted to participate in the auction and bid on their Leases at the auction. The only requirement was that the Landlord notify the Debtors that they intended to appear at the auction and reserved the right to bid on their Leases.

22. Notwithstanding that prior procedures, and notwithstanding their fiduciary duty to maximize estate value, the bidding procedures in the Second Sale Motion materially alter the terms of bidding by Landlords and imposes restrictions on Landlord bidding that do not apply to any other bidder. Specifically, the bid procedures for Landlords are as follows:

> In the case of a Lessor bidding on a Lease(s) to which such Lessor is a party, a written offer on Lessor's corporate letterhead (or, if on behalf of Lessor by Lessor's legal counsel, then on Lessor's legal counsel's letterhead)_ for the purchase of one or more of the Leases that must include the gross amount offered for each individual Lease (if more than one Lease) including a breakdown identifying that portion which is payable in cash to the Debtors and that portion, if any, which is "credit bid". **In the event a Lessor submits an offer that**

**contemplates a credit bid, such Lessor may credit bid not less than the full Cure Amount (as defined in the Bidding and Rejection Procedures Order) and/or any rejection damages claim**; provided, that the Lesssor must included as part of its bid adequate supporting information/documentation to substantiate (i) the difference between the Proposed Cure Amount (as defined in the Bidding and Rejection Procedures Order) and the Cure Amount (the "Cure Difference") and/or (ii) such rejection damages claim; provided, further, that the Debtors shall have the right to contest the Cure Difference and/or any rejection damages claim on any grounds at the Auction and, in the Debtors' discretion, ascribe no value to any rejection damages claim and limit the amount of the credit bid to the Proposed Cure Amount. . .. (emphasis added)

23. The bidding procedures with respect to Landlords is inconsistent with the first auction process, discriminatory, unduly burdensome, and chills bidding. This is inconsistent with maximizing the potential leases' value to the bankruptcy estates.

24. The bidding procedures allow the Debtors to ascribe any value to a bid by Landlords, regardless of the amount bid or the back up provided. There is also no requirement that the Debtors accept any initial bid submitted by a Landlord. As a result, there is no reason to impose any requirement on the portion of the cure or rejection claim that Landlord submits an a bid. The bid merely allows the Landlords to participate in the auction, and increases the number of potential bidders at the auction.

25. The proposed procedures require Landlords to bid their entire cure amount (which is at least November 2008 rent), or the entirety of their rejection claim (which is at least a year's worth of rent). Based on the size of these Leases, the requirement that Landlords bid their cure amount results is a bid, on average (for November rent and charges), at least $35,000.00. No other party is required to make such a minimum bid to participate in the auctions, and this process unfairly discriminates against Landlords bidding on their own Leases.

26. Finally, the bidding procedures require the Landlords to provide back-up for the difference between their cure amount and the Debtors' proposed cure as part of any bid. However, the Debtors will not provide their proposed cure amount until well after the bid deadline, so there will not be a proposed cure against which the Landlords can compare their calculation. Therefore, the bid procedures is internally inconsistent and effectively provides Landlords with a cure deadline as of the bid deadline. Again, no other bidder is required to go

through such a process to submit a bid. The procedure is therefore discriminatory and unduly burdensome to Landlords, and no such back up should be required as part of any bid by Landlords.

27. Rather than restricting Landlord bids, the Debtors should welcome any bid by Landlords to increase the pool of potential bidders and to maximize the possibility of competitive bidding at the auction. That is the goal of the auction process and consistent with maximizing value for these estates. If a Landlord is precluded from bidding against another bidder at the auction, its only alternative in the event the potential assignee is unacceptable, is to object to the proposed assignee. If such Landlord is successful, the Debtors will receive nothing for the affected Lease. If the Landlord were able to bid on its own Lease, it may decide to bid to recapture such Lease to avoid the risk associated with an evidentiary hearing, which also increases the return to these estates.

28. For all of the above reasons, Landlords should be entitled to bid any portion of their cure or rejection claims (with respect to their own Leases) to participate in the auction. There is no reason or justification to place requirements on a Landlord's ability to bid or preclude Landlords from the auction process. The Debtors and their professionals are entitled to place any value on the bid that they choose, but any bid amount should entitle the Landlords to participate in the auction if they so choose.

**E.    Any assumption and assignment must comply with the terms of the Leases.**

29. Through the BAPCPA[4] amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

---

[4] On October 17, 2005, the Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 (the "BAPCPA") went into effect, clarifying, *inter alia*, the protections that Landlord is entitled to under 11 U.S.C. § 365.

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

30. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator. . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed.

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

31. As set forth above, bankruptcy courts must strictly enforce the use and other provisions in the Leases. This intent is echoed by comments from the House of Representatives, and the legislative history leaves no doubt that such provisions must be strictly enforced:

> Section 404(b) amends § 365(f)(1) to assure that § 365(f) does not override any part of § 365(b). Thus, § 404(b) makes a trustee's [debtor-in-possession's] authority to assign an executory contract or unexpired lease subject not only to § 365(c), but also to § 365(b), which is given full effect. <u>Therefore, for example, assumption or assignment of a lease of real property in a shopping center must be subject to the provisions of the lease, such as use clauses</u>. (Emphasis added)

H.R. Rep. No. 109-31, pt. 1, at 87, reprinted in 2005 U.S. Code Cong. & Admin. News 153.

32. The BAPCPA clarified Section 365 to reflect the Congressional intent that Section 365(f)(1) not be used by debtors to avoid lease provisions. The language of Section 365(f), and any such ability to assume and assign the Leases, is subject to the protections provided by Section 365(b)(1) and (3). Therefore, any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance, etc.

33. The revisions to Section 365 make it clear that the Debtors cannot use Section 365(f) to render lease provisions unenforceable. While such provisions may indirectly limit the assignment of the Leases, Section 365(b) specifically protects these provisions.

34. Provisions governing use, radius and the permitted conduct upon the Premises are not anti-assignment provisions. They are negotiated provisions that legitimately seek to preserve the Landlords' control over shopping center environments. Section 365(b)(3) no longer permits even insubstantial breaches of provisions such as use, radius, location or exclusivity. These critical lease terms are enforceable under Section 365(b), and this Court should deny any attempted assignment that fails to comply with such provisions.

**F.    Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations.**

35. The Second Sale Motion seeks authority for the sale the leases free and clear of liens, claims and encumbrances. *See* Second Sale Motion at ¶¶ 37 - 41. The Landlords object to any sale free and clear of the Debtors' obligations to satisfy unbilled reconciliations and adjustments that have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed. The Debtors continue to be responsible for all such unbilled charges as they come due under the Leases, and the Debtors or assignee must continue to satisfy all charges due under the Leases, including charges which have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Leases cannot cut off the Landlords' right to recover unbilled charges that have accrued, or are accruing, under the Leases.

36. Therefore, the Second Sale Motion, any sale order, and any assignment must specify that these charges will survive the assumption and assignment of any of the Leases. It should be clear that any assignee will inherit the responsibility for all unbilled charges that may come due under the Leases.

37. The Debtors must cure all existing defaults and compensate Landlords for any actual pecuniary loss as a result of those defaults in order to assume the Leases under Section

- 13 –

365(b). See 11 U.S.C. § 365(b)(1)(A) and (B). This principle is well-recognized. *See* <u>Elkton Associates v. Shelco Inc.</u> (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989). Upon Court approval of the Sale Motion, these obligations are payable immediately by Debtors and/or the successful bidder. <u>In re Tandem Group, Inc.</u>, 60 B.R. 125 127 (Bankr. C.D. Cal. 1986), *citing* <u>In Matter of Condominium Administrative Services, Inc.</u>, 55 B.R. 792 (Bankr. M.D. Fla. 1985). To the extent of any assumption and assignment, the buyer must take the assignment of any Leases subject to all their terms, as well as pay all outstanding obligations owing under such Leases.

**G.     Rejection procedures and abandonment.**

38.     The Landlords do not object to the Debtors rejecting Leases by a date certain, provided that the Debtors have properly vacated the Premises at that time. The effective date of rejection should be clarified, however, so that it is clear that no Lease is reject earlier than the date that the Debtors turn over the Premises in <u>broom clean condition</u> with all keys or "key codes" and alarm codes to the Landlords (or to the mall managers or to the mall management office where the leased premises are located) and all inventory, furnishings, fixtures and equipment ("<u>FF&E</u>") and signs are removed.

39.     In the event the Debtors seek to abandon property at any Premises (*See* Second Sale Motion at ¶¶ 52 - 53; Sale Order at ¶ 16), such abandonment can result in significant costs to Landlords for the removal of signage, inventory, supplies and FF&E. It may also result in third party leased equipment that is left at the Premises. Therefore, the Debtors should provide ten (10) days notice of any intent to abandon personal property to any party third lessor or party with a secured interest in personal property of the Debtors, which notice will expire on or before any proposed rejection date. Upon the expiration of this notice period, <u>any</u> property left at the Premises shall be deemed abandoned to the Landlords, free and clear of all liens, claims and interests of any kind, upon a rejection of such Lease, and the Landlords may thereafter dispose of such abandoned property in their sole discretion, without liability to the Debtors or <u>any</u> other party.

- 14 –

40. Finally, in light of the request for rolling dates for rejections and auctions, the Debtors should provide specific dates for landlords with rejected leases to file claims. As a result, for any Lease rejected from and after the date of entry of the order approving bidding and auction procedures, the deadline for the affected Landlord to file a proof of claim should be the later of (i) April 30, 2009, and (ii) 30 days after the effective date of rejection of the Lease.

**H.    The proposed waiver of Federal Rule of Bankruptcy Procedure 6004 is improper.**

41. Unless a consensual deal exists, the Landlords object to the waiver of requirements of Federal Rule of Bankruptcy Procedure ("Rule") 6004(g). In light of the lack of information that Landlords have with respect to any potential sale of the Leases, this request is especially inappropriate. Any order approving the Sale Motion, therefore, should not include a prospective waiver of Rule 6004(g). Subsection (g) was added to Rule 6004, specifically to *protect* the rights of the objecting parties, and thus eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under Sections 363 or 365. Landlords should not have their appellate rights compromised by an advance waiver of these protections, particularly since the Debtors have failed to establish any cause for such a waiver, and particularly where the Landlords have such a negligible amount of time between learning the identity of any proposed assignee and the hearing to approve any proposed sale.

**I.    Assumption and Amendment Agreement.**

42. Finally, to the extent any assumption and assignment to the successful bidder is eventually approved, Landlords request that the Court require the successful bidder to enter into a lease amendment and assignment agreement (the "Agreement"), in a form acceptable to Landlords, that will cause the successful bidder to become directly obligated to Landlords under the Leases. The Agreement shall include the modification of notice addresses for the parties. The Agreement is critical to Landlords for the maintenance of their lease files, and under the laws of various states, it is critical to establish privity of contract between a landlord and the assignee.

**J.   Reservation of rights to object to form of documents and to raise further objections.**

43.   Due to the lack of information available as to identity of any proposed assignee or the structure of any proposed sale, this Objection is without prejudice to Landlords' ability to raise further objections at any sale hearing and the Landlords reserve their right to raise all objections to any successful bidder under Section 365, including objections based upon adequate assurance of future performance and proposed use.  Nothing in the approval of the Bidding Procedures should waive or compromise the Landlords' rights under the Leases, or with respect to their ability to object to any document that Debtors propose in connection with the results of the auction.

44.   To the extent consistent with the relief requested herein, Landlords join in the oppositions filed by other landlords.

**IV.   <u>CONCLUSION</u>**

Under the proposed auction procedures, no contested sale should be approved at the proposed sale hearing because doing so denies the Landlords critical protections afforded by concepts of due process and the Bankruptcy Code.  Any order approving the Bidding Procedures portion of the Second Sale Motion must provide adequate time for the Landlords to assess any potential assumption and assignment of their Leases.  Moreover, no order approving the Bidding Procedure or Second Sale Motion should be approved unless it is modified to address the issues raised by this Objection, including but not limited to, allowing Landlords to bid any portion of their claim, providing adequate time for Landlords to review and analyze adequate assurance of future performance evidence, requiring the assignee to assume the obligations for unbilled reconciliations and adjustments, and granting such further relief as the Court deems proper.

Dated:  February 11, 2009          **BALLARD SPAHR ANDREWS & INGERSOLL, LLP**


By:___/s/  Jesse N. Silverman_____
    Jesse N. Silverman (VA Bar No. 46456)
    BALLARD SPAHR ANDREWS & INGERSOLL, LLP
    1735 Market Street, 51st Floor

- 16 –

Philadelphia, PA 19103
Telephone: (215) 864-8127
Facsimile: (215) 864-9035

- and –

**KATTEN MUCHIN ROSENMAN LLP**

Thomas J. Leanse (TL-8802)
Dustin P. Branch (DB-3553)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, California  90067
Phone: (310) 788-4400
Facsimile: (310) 788-4471
thomas.leanse@kattenlaw.com
brian.huben@kattenlaw.com
dustin.branch@kattenlaw.com

Attorneys for The Macerich Company, Cousins Properties Incorporated, Watt Management Company, RREEF Management Company, FourSquare Properties, Inc., KNP Investments, The Prudential Insurance Company of America, and Portland Investment Company of America

- 17 –

# **EXHIBIT A**

# **REAL PROPERTY LEASES**
# **EXHIBIT A**

| | |
|---|---|
| THE MACERICH COMPANY ||
| Lakewood Center (Store No. 408) | Lakewood, CA |
| Scottsdale | Scottsdale, AZ |
| Vintage Faire (Store No. 239) | Modesto, CA |
| COUSINS PROPERTIES ||
| Los Alto Market Center (Store No. 3373) | Long Beach, CA |
| WATT PROPERTIES ||
| Norwalk Plaza (Store No. 427) | Norwalk, CA |
| RREEF MANAGEMENT COMPANY ||
| Crossroads Center (Store No. 890) | Falls Church, VA |
| Firecreek Crossing (Store No. 271) | Reno, NV |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA ||
| Desert Crossing (Store No. 3302) | Desert Springs, CA |
| Pembrooke Crossing (Store No. 518) | Pembrooke, FL |
| PORTLAND INVESTMENT COMPANY OF AMERICA ||
| Sawmill Plaza (Store No. 3614) | Columbus, OH |
| FOURSQUARE PROPERTIES, INC. ||
| Jordan Landing Plaza (Store No. 3353) | West Jordon, Utah |
| KNP ||
| Pasadena (Store No. 406) | Pasadena, CA |