IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE: CIRCUIT CITY STORES, INC., *et al.*,    Case No. 08-35653

    Chapter 11

            Debtors.    Jointly Administered

MEMORANDUM OPINION

The debtors, Circuit City Stores, Inc., *et al.*, (the "Debtors," or "Circuit City") filed these bankruptcy cases under Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date").[1]  The Debtors' bankruptcy cases were consolidated for joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  No trustee or examiner has been appointed as of the date of this Memorandum Opinion, and Circuit City continues to manage and operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.  An Official Committee of Unsecured Creditors was appointed by the United States Trustee on November 12, 2008, pursuant to 11 U.S.C. § 1102(a).

Circuit City is a specialty retailer of consumer electronics.  Circuit City operates electronics stores nationwide that sell, among other things, televisions, home theater systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.  As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico.

---

[1]  The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc.(n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC.

In connection with the operation of its stores, the Debtors are parties to numerous unexpired leases of nonresidential real property (the "Leases").  Pursuant to the terms of most of the Debtors' Leases, the rental obligations for the month of November 2008 became due and payable on November 1, 2008.  Circuit City refers to Leases of this type as "advance payment leases" because the Debtors must pay rent in advance on the first day of the month for each monthly period in which they occupy the premises (the "Advance Leases").  The Debtors are also parties to a number of Leases whereunder the rental obligation for the month of November 2008 became due and payable at the end of the month (the "Arrears Leases").  As of the Petition Date, November 10, 2008, the Debtors had not paid any rent for the month of November under either type of Lease.

Most, if not all, of the lessors under the Debtors' Leases (the "Lessors") filed formal or informal motions or objections (the "Motions"),[2] seeking to compel immediate payment of the postpetition rent due from the Debtors for the period from November 10, 2008, through November 30, 2008 pursuant to § 365(d)(3) of the Bankruptcy Code.  The parties refer to this portion of the rent due for occupancy between the Petition Date and the end of the month in which the petition was filed as "stub rent" (the "Stub Rent").[3]  In the alternative, the Motions seek the Court to defer payment of the Stub Rent only until the date that is sixty days following

---

[2]  As used herein, the term "Motions" does not include pleadings filed by Lessors with respect to leases governed by this Court's previous Order Granting Motion of Debtors for Entry of Order Pursuant to Bankruptcy Code Sections 105, 363 and 365 (I) Assuming Agency Agreement Among Debtors, Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC and (II) Authorizing the Debtors to Continue Agency Agreement Sales Pursuant to Store Closing Agreement Sales Pursuant to Store Closing Agreement, entered on November 10, 2008 [Docket No. 82].

[3]  Section 365(d)(3) applies to all leases going forward, i.e., the Debtors' obligations to pay December rent must be timely performed pursuant to the terms of the lease in order to fulfill the requirements of § 365(d)(3).  The issues presented by the Motions relate solely to Stub Rent for November 10–30.  As used herein, Stub Rent includes all amounts owing under the Leases, including, but not limited to, common area maintenance charges, real property taxes, and such other charges as may be asserted under the Leases for the period from November 10 to November 30, 2009.  To the extent the Motions sought relief other than payment of Stub Rent, such relief is not addressed by this Memorandum Opinion and the Stub Rent Order.

2

the Petition Date.  The Debtors filed omnibus objections to the Motions on December 3, 2008,

and December 18, 2008 (the "Objections") [Docket Nos. 641 and 1100, respectively].

The Court reviewed the Motions and the Objections, and heard the testimony of one of

the Debtor's financial advisors, Stephen Coulombe of FTI Consulting Inc., at the hearing on the

Motions on December 22, 2008 (the "Hearing").

At the conclusion of the Hearing the Court ruled:

1. Section 365(d)(3) applies to requests for payment of rent due under the
   Debtors' Leases.
2. The "accrual method" applies to determine when the obligation to pay rent
   under a Lease arises for purposes of differentiating prepetition obligations
   from postpetition obligations.
3. The "accrual method" does not operate to change the time for performance
   pursuant to the Lease terms.
4. The Stub Rent due for postpetition occupancy under the Debtors' Leases are
   administrative claims under §§ 503(b) and 507(a)(2) of the Bankruptcy Code.
5. "Timely" under § 365(d)(3) shall be determined by the terms of the Lease.
6. Administrative claims for Stub Rent are not entitled to superpriority through
   immediate payment, but shall instead be paid upon the effective date of the
   plan with other administrative claims, absent further order of the Court.

The Court's ruling was without prejudice to any Lessor's right to ask for relief for cause, and the

Court reserved the Debtors' right to object to claims for payment of attorneys' fees associated

with the Leases.  The Court's ruling did not operate to extend the time for performance of any

obligation governed by § 365(d)(3).  The Court entered its order denying the Motions on

January 26, 2009 (the "Stub Rent Order").

This Memorandum Opinion supplements the bases for the Court's ruling as announced

from the bench at the conclusion of the Hearing denying the Motions and supplements the

Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of

Bankruptcy Procedure set forth in its Stub Rent Order.  The Court has jurisdiction over the

Motions pursuant to 28 U.S.C. §§ 157 and 1334, and these matters are core proceedings pursuant

to 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Venue of these cases and the Motions in this district

is proper under 28 U.S.C. §§ 1408 and 1409.

> In relevant part, § 365(d)(3) of the Bankruptcy Code provides:

> The trustee shall *timely* perform all the *obligations* of the debtor [except certain obligations not applicable in this case] *arising from and after the order for relief* under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.  The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.

11 U.S.C. § 365(d)(3) (emphasis added).  A debtor in possession has the rights, powers and

duties of a bankruptcy trustee.  11 U.S.C. § 1107(a).  As the Debtors in this case continue to

manage and operate their business as debtors in possession in accordance with 11 U.S.C.

§§ 1107 and 1108, they must timely perform the obligations that arise from and after the order

for relief under their Leases pursuant to § 365(d)(3), until any such Lease is assumed or rejected.

Absent from § 365(d)(3) is any definition of the term "timely."

Before § 365(d)(3) was enacted in its current form in 1984, a lessor's only avenue to

collect rent and other postpetition charges from a debtor in possession was by meeting the test

for administrative expense status set forth in 11 U.S.C. § 503(b)(1)(A).  *Santa Ana Best Plaza,

Ltd. v. Best Prods. Co.* (*In re Best Prods. Co.*), 206 B.R. 404, 405, 405n.1 (Bankr. E.D. Va.

1997).  Even after "maneuver[ing] through a rather cumbersome application process," lessors

were only entitled to recover "the 'reasonable value' of the debtor's 'actual use' of the premises

and remained subject to the bankruptcy court's discretion to delay payment until after a plan had

been confirmed."   *Id.* at 405 (citations and footnotes omitted) (noting the language of

§ 503(b)(1)(A) that operated to reduce the lessors' claim to less than full contract value by only

4

allowing as an administrative expense the reasonable value of the debtor's actual use of the premises after the petition was filed).

To mitigate some of the "unjustified costs on landlords throughout the country, Congress enacted 11 U.S.C. § 365(d)(3) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984." *Id.* at 406.  While this "subsection improved a landlord's ability to recover post-petition rents and charges," there is a remaining question about "whether a debtor-in-possession leasing nonresidential real property must pay in full all bills received from the landlord during the post-petition, pre-rejection period, regardless of whether some of those charges accrued pre-petition." *Id.*  That question begs another—when do charges *accrue*?  And another—if the charges *accrue* postpetition, when must those charges be paid in order to satisfy the requirement that they be paid *timely*?  "[D]eciphering § 365(d)(3) has been akin to navigating a freshly sown battlefield—like hidden mines, each clause has triggered considerable debate as to its intent and meaning." *Id.*  (C.J. Tice) (quoting Joshua Fruchter, *To Bind or Not to Bind—Bankruptcy Code § 365(d)(3): Statutory Minefield*, 68 Am. Bankr. L.J. 437, 438 (1994)).

"The Bankruptcy Code does not define when debtor's obligations 'arise' in order to determine when the obligation must be treated as a post-petition claim entitled to administrative expense priority." *In re Trak Auto Corp.*, 277 B.R. 655, 662 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004).  Resolution of that issue depends on whether this Court applies the "billing method" or the "accrual method," which are short form terms to describe two separate lines of cases that have developed to determine when an obligation "arises" under the Bankruptcy Code.  *See In re Trak Auto Corp.*, 277 B.R. 655, 662 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004) (noting that a minority of courts

have adopted the "billing method" while the majority of courts have adopted the "accrual method").

Under the billing method, the obligation to pay arises at the time that payment is due under the terms of the lease contract. When the petition date falls in the middle of a month, the obligation to pay rent will be treated entirely as a prepetition obligation if the Lease is an Advance Lease, and the obligation to pay rent will be treated entirely as a postpetition obligation if the Lease is an Arrears Lease. Alternatively, under the accrual method, the obligation to pay rent is deemed to accrue on a daily basis following the Petition Date. The Petition Date separates the prepetition obligations (general unsecured claims for the portion of the month prior to the petition date) from postpetition obligations (administrative expense claims for the portion of the month after the petition date). *See In re Trak Auto Corp.*, 277 B.R. 655, 662 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004). If the Court were to apply the billing method in this case, then the obligation to pay November rent would be deemed to have arisen when the lease required the rent to be paid. This would be November 1 if the lease were an Advance Lease. The obligation to pay November rent (including Stub Rent) would be a prepetition claim because the Petition Date was November 10, 2008. On the other hand, if the Lease were an Arrears Lease, then the obligation to pay November rent (including Stub Rent) would be a postpetition claim entitling the Lessor to administrative expense priority under 11 U.S.C. § 507.

For the Leases with respect to which a Lessor has filed a Motion, the Debtors have agreed on the record that the accrual method will apply in these cases with respect to both Advance Leases and Arrears Leases and that such Lessors have timely raised their rights under § 365(d)(3) of the Bankruptcy Code and thus have not waived any rights that § 365(d)(3) affords

to them.[4]  Even without the parties' agreement that the accrual method applies to this situation,

the controlling law in this jurisdiction compels that result, and the Court will apply this

methodology even for Leases with respect to which a Lessor did not file a Motion.  In *In re Trak*

*Auto Corp.*, 277 B.R. 655, 663n.2 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237

(4th Cir. 2004), Judge Adams noted that the United States Court of Appeals for the Fourth

Circuit has not directly addressed the issue of whether the accrual method or the billing method

applies in these circumstances, although that court apparently applied the billing method in an

unpublished opinion.  *See Rose's Stores, Inc. v. Saul Subsidiary I, L.P.* (*In re Rose's Stores,*

*Inc.*), 155 F.3d 560, No. 97-2654, 1998 WL 393984 (4th Cir. July 10, 1998) (affirming the

district court's determination that the rent payments at issue came due postpetition pursuant to

the leases and thus were obligations arising postpetition despite the fact that the rent payments

were for prepetition occupancy of the premises).

Unpublished opinions are not binding on this Court pursuant to Rule 32.1 of the Local

Rules of the United States Court of Appeals for the Fourth Circuit, and thus the Court concludes

that the accrual method applies in this jurisdiction.  *In re Trak Auto Corp.*, 277 B.R. 655, 663

(Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004) (stating that Chief

Judge Tice's opinion in *Santa Ana Best Plaza, Ltd. v. Best Prods. Co.* (*In re Best Prods. Co.*),

206 B.R. 404 (Bankr. E.D. Va. 1997), establishes the methodology to apply the accrual method).

The "intent behind the enactment of § 365(d)(3) was to prevent landlords from becoming

involuntary creditors of the debtor's estate," and "[a]dopting a method where debtor's liability

---

[4]  These matters were initially scheduled to be heard on December 5, 2008, which was the first omnibus hearing day
in the Debtors' case.  At that hearing, the Debtors and the Lessors agreed to adjourn these matters to the next
omnibus hearing on December 22, 2008.  Debtors' counsel stipulated that for purposes of analysis under *In re Trak*
*Auto Corp.*, the delay would not prejudice the Lessors' rights.  *See In re Trak Auto Corp.*, 277 B.R. 655, 669 (Bankr.
E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004) (stating that a "landlord is not permitted to sit
on its rights and rely on an alleged super-priority status for its administrative rent claim").

would turn solely on when bills are issued has the potential to create a windfall for a landlord who decides to manipulate when it bills the debtor." *Id.* at 662, 663.  Avoiding both of these inequitable results, the accrual method means that "[a]nything accruing after the entry [of] the order for relief is a post-petition charge that may be elevated to administrative priority under § 507(a)." *Id.* at 664.

Moreover, the lessor need not show that the "debtor's continued possession of its space is a benefit to the estate" in order to receive administrative expense priority under § 507(a)(2).  *See id.* at 665 (noting that the plain language of § 365(d)(3) states that it applies "notwithstanding section 503(b)(1)"); *see also In re Va. Packaging Supply Co.*, 122 B.R. 491, 494 (Bankr. E.D. Va. 2002) ("The court interprets the [phrase 'notwithstanding section 503(b)(1)'] as requiring timely payment of rent provided under the lease without regard to the 'actual, necessary costs' requirement or the necessity for notice and hearing under § 503(b)(1).").

In a case interpreting § 365(d)(10),[5] the United States Court of Appeals for the Fourth Circuit noted that "[w]hile it is clear that § 365(d)(10) and § 365(d)(3) impose on a [debtor in possession] the duty to perform all lease obligations in a timely manner, these sections do not specify a lessor's remedy should the [debtor in possession] fail to perform." *CIT Commc'ns Fin. Corp. v. Midway Airlines Corp.* (*In re Midway Airlines Corp.*), 406 F.3d 229, 235 (4th Cir. 2005).  The Fourth Circuit concluded that "a lessor is entitled to recover all payments due under the lease (including rent, taxes, interest, late fees, and attorney's fees) as an administrative expense," but the lessor "must still assert its administrative expense claim under § 503(b); it

---

[5] The United States Court of Appeals for the Fourth Circuit provided this guidance.  "Section 365(d)(10) is modeled on a very similar provision of the Code, § 365(d)(3), which requires that a trustee timely perform all obligations under a lease of nonresidential real property after an order for relief is entered.  Notably, "[b]oth sections impose a duty of timely performance on debtor[s] . . . and both expressly specify that this duty exists 'notwithstanding section 503(b)(1)' of the Code."  As a result, in construing § 365(d)(10), courts often look to decisions construing § 365(d)(3)." *CIT Commc'ns Fin. Corp. v. Midway Airlines Corp.* (*In re Midway Airlines Corp.*), 406 F.3d 229, 234 (4th Cir. 2005) (internal citations omitted) (quoting *In re E.* Agri-Sys., Inc., 258 B.R. 352, 354 (Bankr. E.D.N.C. 2000)).

simply does not assert the claim under the specific provision of § 503(b)*(1)(A)*.  This conclusion . . . avoids creating ambiguities and conflicts with respect to other provisions in the Code." *Id.* at 236 (emphasis in original).   Specifically, the court explained that "when a lessor seeks an administrative expense for 'all of the obligations' due under a lease, the 'notwithstanding § 503(b)*(1)*' proviso . . . relieves the lessor from proceeding under § 503(b)(1)(A), which would limit the recovery to an amount representing only the actual and necessary use by the estate." *Id.* at 237 (emphasis in original).   Thus, the accrual method assures payment of all obligations due under a lease for postpetition occupancy on a timely basis as an administrative expense and removes the incentive to manipulate billing cycles.

Under the accrual method the Lessors' claims for Stub Rent are entitled to administrative expense priority.   The issue before the Court is when do these claims for Stub Rent have to be paid in order to comply with § 365(d)(3).   *See In re Trak Auto Corp.*, 277 B.R. 655, 668 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004) ("This issue has caused great debate among the courts . . . .").

Section 365(d)(3) of the Bankruptcy Code requires the Debtors to *timely* perform all their obligations under their Leases.  *Timely* could mean immediately, as argued by certain Lessors in this case.  *Timely* could mean whatever period for timely performance is provided by the lease terms, as the Debtors' argue.  *Timely* could mean that payment of these administrative claims should be made with all other administrative claims—upon the effective date of the plan.  *See* 11 U.S.C. § 1129(a)(9).   *Timely* is not a defined term in the Bankruptcy Code.  This Court has addressed this problem previously.  *See In re Trak Auto Corp.*, 277 B.R. 655, 668 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004); *In re Va. Packaging Supply Co.*, 122 B.R. 491, 494–95 (Bankr. E.D. Va. 2002); *Santa Ana Best Plaza, Ltd. v. Best Prods.*

9

Co. (*In re Best Prods. Co.*), 206 B.R. 404 (Bankr. E.D. Va. 1997); *see also CIT Commc'ns Fin.*

*Corp. v. Midway Airlines Corp.* (*In re Midway Airlines Corp.*), 406 F.3d 229 (4th Cir. 2005)

("While an administrative expense under § 503(b) must be paid in cash on the effective date of

the plan in a chapter 11 proceeding, . . . bankruptcy courts have wide latitude in deciding

whether to order payment prior to these deadlines.").

The Debtors argue that in adopting the accrual method for the payment of Stub Rent, the

Court should limit the application of the methodology to elevating the Stub Rent portion of a

Lessor's claim to administrative expense status.  Adoption of the accrual method, they argue,

should not dictate the time for payment of that administrative claim or alter the time of

performance of an obligation under the Leases.  This argument rests on the assumption that the

accrual method merely creates the legal fiction that the Petition Date determines the date from

which the administrative expense claim for the payment of rent arises.  The adoption of a legal

fiction fixing the status of the claim as an administrative one should not otherwise alter or create

an independent contractual obligation for immediate payment.

The Debtors point out that the Lessors could have taken action prepetition under

applicable non-bankruptcy law to enforce the nonpayment of their November rent.  The unpaid

Stub Rent for Advance Leases is approximately $20 to $25 million.  The budget under the

Debtors' debtor in possession financing facility, as approved by this Court by order entered

December 23, 2008 (the "DIP Facility") [Docket No. 1262], did not contemplate payment of the

Stub Rent for Advance Leases.  The Debtors presented evidence that they were accordingly not

authorized to make immediate payment of the Stub Rent for Advance Leases and that such

payment would result in financial hardship for the Debtors and endanger their continued

operations and successful restructuring.

Certain of the Lessors advanced the argument that application of the accrual method requires a finding that payment of Stub Rent under Advance Leases is an obligation subject to immediate performance under § 365(d)(3), or in no event later than the date that is sixty days after the Petition Date.  Under this theory, the Lessors argued that application of the accrual method is not simply a legal fiction.  Rather, it creates a new date upon which the obligation to pay rent arises under the Lease.  That new date is the Petition Date.  This argument rests on the assumption that the accrual method, in addition to setting the date that an administrative claim arises as of the Petition Date, also changes the lease term relating to the time for performance in order to start the clock running on the Petition Date for timely performance.  Certain other Lessors advanced a slightly different argument for immediate payment—*In re Trak Auto* applies only when a Lessor sleeps on his rights and does not ask for immediate payment, and in this case all the Lessors quickly moved for immediate payment, rendering *In re Trak Auto* inapplicable. *See In re Trak Auto Corp.*, 277 B.R. 655, 669 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004) (noting that "a landlord is not permitted to sit on its rights and rely on an alleged super-priority status for its administrative rent claim").  Additionally, the Lessors argue that ordering the immediate payment of Stub Rent is consistent with the notion that rent for the month of November is not only due on November 1.  Rather, it is an obligation to pay rent that continues on November 2, November 3, and so on until the obligation is performed, even if performed after the period provided for timely performance under the lease terms.  The only reason not to order immediate payment of the Stub Rent claims, the Lessors argue, is the risk of administrative insolvency. *See In re Va. Packaging Supply Co.*, 122 B.R. 491, 495 (Bankr. E.D. Va. 2002) ("Some courts have ordered payment subject to recapture if there are not sufficient funds to pay all administrative claims.").  The Lessors argue that not ordering immediate

payment punishes the Lessors for the Debtors' failure to provide for payment of Stub Rent under the DIP Facility.

The Court concludes that the Lessors hold a claim for Stub Rent that is entitled to administrative expense priority under § 507(a)(2) of the Bankruptcy Code. The obligation to "timely" perform that is referenced in § 365(d)(3) refers to the time for performance under the lease terms. The accrual method changes the status of the obligation of the Debtor to pay Stub Rent into an administrative claim, but it does not change the temporal element of the lease term regarding payment—the time for performance of the payment obligation.

Under the accrual method, rent claims for periods of prepetition occupancy are general unsecured claims, while the payment of Stub Rent claims for periods of postpetition occupancy are administrative claims. The Debtors' Obligation to pay Stub Rent claims must be performed "timely" pursuant to § 365(d)(3). If the time for performance under the Lease has not expired (e.g. if the Lease is an Arrears Lease and the Petition Date is before the due date under the Lease), then the time for timely performance of the obligation to pay Stub Rent under the Lease is the date provided for in the Lease. If the time for performance under the lease has already passed (e.g. if the Lease is an Advance Lease and the Petition Date is after the due date under the Lease) then the time for timely performance of the obligation to pay Stub Rent is the same as for all other administrative expense claims upon confirmation of the plan pursuant to 11 U.S.C. § 1129(a)(9)(A). Section 365(d)(3) does not provide a separate remedy to effect payment. If a debtor fails to perform its obligations under § 365(d)(3), all a Lessor has is an administrative expense claim under § 365(d)(3), not a claim entitled to superpriority. *In re Va. Packaging Supply Co.*, 122 B.R. 491, 495 (Bankr. E.D. Va. 2002) ("This court holds that administrative expenses arising from § 365(d)(3) obligations retain the same priority as assigned to all

administrative expenses by § 507(a).").    This conclusion in no way extends the time for

performance of any obligation that arises within sixty days after the Petition Date; it merely

means that the Court's remedy for non-compliance with the duty under § 365(d)(3) to timely pay

obligations arising from and after the order for relief is to order the Debtors to timely perform,

and if they fail to do so, to grant relief from stay or court-ordered lease rejection.

Notwithstanding the assertion by certain Lessors with Advance Leases that § 365(d)(3)

prohibits this Court from extending the time for payment of the Stub Rent under Advance Leases

past the date that is sixty days after the Petition Date, the Court determined that under the facts

and circumstances presented here, including the resulting dire financial circumstances described

in testimony by one of the Debtors' financial advisors, the Court has discretion under the

Bankruptcy Code and the decision in *In re Trak Auto Corp.*, 277 B.R. 655, 668 (Bankr. E.D. Va.

2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004), to decline to order immediate

payment of the Stub Rent.    If the Court were to order otherwise, it would be elevating the

Lessors' administrative claim to superpriority status.    Such status is neither required nor

permitted under the Bankruptcy Code. *See In re Va. Packaging Supply Co.*, 122 B.R. 491, 494–

95 (Bankr. E.D. Va. 2002).    Therefore, this Court will adhere to the determinations made in *In re*

*Trak Auto Corp.*, and *In re Virginia Packaging Supply Co., Inc.*, that the Debtors should not be

ordered to pay the Stub Rent immediately.    Stub Rent is not entitled to superpriority but only to

administrative priority pursuant to § 507(a) of the Bankruptcy Code.    This result is in the best

interests of the Debtors and their estates, creditors, equity security holders, and all other

interested parties, and it will not impair the rights of any of the Debtors' Lessors.

Accordingly, the Motions filed with respect to Stub Rent for Advance Leases seeking

either immediate payment or payment within sixty days of the Petition Date are denied.    The

Stub Rent claims under Advance Leases are hereby accorded administrative priority expense treatment under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and such Stub Rent claims shall be payable upon the effective date of any plan of reorganization in these cases, or at such other time as the Court may order upon further motion. The Stub Rent claims under Arrears Leases are hereby accorded administrative priority expense treatment under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and such Stub Rent claims shall be timely paid pursuant to the terms of the lease.

ENTERED: _____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

Copies to:

**Douglas M. Foley**
McGuireWoods LLP
9000 World Trade Center, 101 W. Main St.
Norfolk, VA 23510

**Gregg M. Galardi**
Skadden Arps Slate Meagher
& Flom LLP, One Rodney Sq.
PO Box 636
Wilmington, DE 19899

**Chris L. Dickerson**
Skadden Arps Slate Meagher
& Flom, LLP
333 West Wacker Drive
Chicago, Illinois 60606

**Ian S. Fredericks**
Skadden Arps Slate Meagher
& Flom LLP, One Rodney Sq.
PO Box 636
Wilmington, DE 19899

**Brad R. Godshall**
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica blvd, 11th Floor
Los Angeles, CA 90067-4100

**Jeffrey N. Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067

**John D. Fiero**
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 9411-4500

**Lynn L. Tavenner**
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219

**Paula S. Beran**
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219

**Robert J. Feinstein**
Pachulski Stang Ziehl & Jones LLP
780 Third Ave. 36th Floor
New York, NY 10017

**Augustus C. Epps, Jr.**
**Michael D. Mueller**
**Jennifer M. McLemore**
**Noelle James**
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219