Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
          Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - x

**MOTION FOR ORDERS UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND BANKRUPTCY RULES 2002 AND 6004 (I) APPROVING BIDDING PROCEDURES, (II) SETTING AUCTION AND SALE HEARING DATES, (III) AUTHORIZING AND APPROVING SALE BY SELLER OF CERTAIN REAL PROPERTY LOCATED IN PHOENIX, ARIZONA FREE AND CLEAR OF LIENS AND (IV) AND GRANTING RELATED RELIEF**

Circuit City Stores West Coast, Inc. (the

"Seller," and collectively with the debtors and debtors

in possession in the above-captioned jointly administered

cases, the "Debtors")[1] hereby moves (the "Motion") for

orders pursuant to sections 105 and 363 of title 11 of

the United States Code (the "Bankruptcy Code") and Rules

2002 and 6004 of the Federal Rules of Bankruptcy Proce-

dure (the "Bankruptcy Rules") (i) approving the bidding

procedures set forth herein and attached hereto as Ex-

hibit B (the "Bidding Procedures"), (ii) setting a date

for the Auction (as defined herein) and the sale hearing

(the "Sale Hearing"), (iii) authorizing and approving the

sale (the "Sale") of certain real property of the Seller

located at 1670 and 1671 East Camelback Road, Phoenix,

Arizona,(the "Property") for $2.9 million, and (iv)

granting related relief.  The Property is being sold free

and clear of liens pursuant to the Purchase And Sale

---

[1]  The Debtors and the last four digits of their respective taxpayer
     identification numbers are as follows: Circuit City Stores, Inc.
     (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
     Inc. (0875), Ventoux International, Inc. (1838), Circuit City
     Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Dis-
     tribution Company of Virginia, Inc. (2821), Circuit City Proper-
     ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertis-
     ing Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Ven-
     ture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland
     MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC
     (3360), and Circuit City Stores PR, LLC (5512).  The address for
     Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
     Westminster, Colorado 80031.  For all other Seller, the address
     is 9950 Mayland Drive, Richmond, Virginia 23233.

Agreement (the "Agreement"),[2] attached hereto as <u>Exhibit A</u>, dated February 3, 2009 by and among the Seller and Heslin Holdings, Inc. (the "Purchaser") or to the Successful Bidder (as defined herein) submitting a higher or otherwise better bid.  The Seller is not assigning any executory contracts in connection with the Sale.  In support of this Motion, the Seller respectfully represents as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief requested here are Bankruptcy Code sections 105(a) and 363 and Bankruptcy Rules 2002 and 6004.

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

## BACKGROUND

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

**RELIEF REQUESTED**

7.    By this Motion, the Seller seeks approval
for the Sale of the Property to the Purchaser, subject to
additional competitive bidding pursuant to the proposed
Bidding Procedures attached as Exhibit B hereto.  To ef-
fect the sale, the Seller seeks entry of two types of re-
lief.  First, at the omnibus hearing to be held on March
3, 2009, the Seller will seek entry of an order substan-
tially in the form attached hereto as Exhibit C (the
"Bidding Procedures Order") approving the Bidding Proce-
dures.  Second, subject to the terms of the Bidding Pro-
cedures Order, at the omnibus hearing to be held on March
20, 2009, the Seller will seek entry of an order substan-
tially in the form attached hereto as Exhibit D (the
"Sale Approval Order") authorizing and approving the Sale
of the Property to the Purchaser or to the Successful
Bidder, as the case may be.

8.    As more fully set forth below, after a
comprehensive strategic review, the Seller believes that
the Sale represents its best opportunity under the cir-
cumstances to maximize the value of the Property.  There-

fore, the Sale is in the best interests of its estate and its stakeholders.

**BASIS FOR RELIEF**

**A.    Events Leading To The Sale.**

9.    In light of the facts forth above -- in particular, the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales -- the Seller has been left with various assets -- including the Property -- for which it has no remaining use.  In contrast, the sale of such assets, including the Sale of the Property, would result in significant proceeds for the Seller's estate and creditors.

10.    Prior to the Petition Date, the Seller began marketing the Property and it has continued marketing the Property postpetition.  Since the Petition Date, the Debtors, along with their real estate advisor, DJM Realty, LLC ("DJM"), intensified these efforts.  The Seller and DJM received and analyzed several bids and ultimately determined that the offer of the Purchaser represented the best opportunity for the Seller and its estate.

**B.    The Agreement.**

11.   Pursuant to the Agreement, the Seller would sell the Property to the Purchaser for approximately $2.9 million (the "Purchase Price").

12.   The significant terms of the Agreement are as follows:[3]

(a)   <u>General Terms</u>.  The Purchaser would acquire the Property, consisting solely of the Seller's right, title and interest in and to the property located at 1670 and 1671 East Camelback Road in Phoenix, Arizona, comprising approximately 3.5 acres, referenced as APN # 164570811 and APN # 948626130, and including (i) all rights and appurtenances pertaining to such land, (ii) all buildings, structures and other improvements on said land and (iii) electrical, mechanical, air conditioning and other fixtures attached thereto, as more fully described in Exhibit A to the Agreement, through an asset sale.

(b)   <u>Sale</u>.  The Property would be sold free and clear of all liens, charges, pledges, security interests, conditional sale agreements or other title retention agreements, leases, mortgages, security interests, options, or other encumbrances (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) and any monetary amounts which are secured by any lien (collectively, the "Liens"), except for (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise and (iv) any and

---

[3]   In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of the Agreement are controlling.

all matters that would be shown by a physical inspection
of the Property (collectively, the "Permitted Encum-
brances").

      (c)   <u>Bankruptcy Court Approval</u>.  The Sale of
the Property would be subject to approval by this Court
and competitive bidding pursuant to the Bidding Proce-
dures.

      (d)   <u>Documentation</u>.  The Sale would be effected
pursuant to the Agreement and related documentation.

      (e)   <u>Purchase Price</u>.  The Purchase Price to be
paid by the Purchaser for the Property would be $2.9 mil-
lion.

      (f)   <u>Deposit Escrow</u>.  In accordance with the
Agreement, the Purchaser has previously placed $50,000
into an escrow account.  Within two (2) business days af-
ter expiration of the Due Diligence Period (as defined
herein), the Purchaser would place an additional $250,000
into the escrow account. Upon closing of the Sale (the
"Closing"), or if the Agreement is terminated prior to
Closing because of the Purchaser's breach of the Agree-
ment (on the terms as provided in the Agreement), the
Seller would be entitled to the funds in the escrow ac-
count (the "Deposit").  Retention of the Deposit would
constitute the Seller's sole recourse in such event.

      (g)   <u>Representations And Warranties</u>.  Pursuant
to the Agreement, the Seller would provide certain stan-
dard representations and warranties relating to the Sale
of the Property and the Purchaser would provide represen-
tations and warranties generally standard in a transac-
tion of this type.  The representations and warranties of
the Purchaser survive indefinitely following the Closing
or the termination of the Agreement.  The representations
and warranties of the Seller survive for a period of six
(6) months following the Closing.

      (h)   <u>Due Diligence</u>.  The Purchaser would have a
thirty (30) day period (the "Due Diligence Period"),
which period began on February 3, 2009 and expires on
March 5, 2009, during which the Purchaser would have the

right to (i) have Seller's title to the Property examined and (ii) have the Property physically inspected to determine, in the Purchaser's sole discretion, whether the Property is acceptable to the Purchaser.  The Purchaser would have the right, through the last day of the Due Diligence Period, to terminate the agreement if Purchaser has an objection to Seller's title to the Property or if the Property is not acceptable to the Purchaser.  In the event that Purchaser has an objection to Seller's title to the Property, Seller would have no obligation to satisfy such objection; provided, however, that if Seller agrees to satisfy or cure such objection, Purchaser shall not be entitled to terminate the Agreement on the grounds of such objection.  If the Agreement is terminated at Purchaser's election on or before the last day of the Due Diligence Period pursuant to its rights as set forth above, the Deposit would be returned to the Purchaser. If Purchaser does not give notice of termination prior to 5:00 p.m. (Eastern Time) on the last day of the Due Diligence Period, the Agreement shall continue in full force and effect and the Purchaser's right to terminate the Agreement on due diligence grounds shall expire.

(i)  Termination.  The Agreement could be terminated prior to Closing in the following circumstances: (i) by Purchaser, during the Due Diligence Period as set forth above, (ii) by Purchaser, if an action is initiated to take any material portion of the Property by eminent domain proceedings, (iii) by Purchaser, in the event of damage to the Property exceeding $200,000 occurring during the period after the date of the Agreement and prior to Closing, if Seller does not repair such damage, (iv) by Purchaser, in the event that Seller shall fail to consummate the transactions contemplated by the Agreement, (v) by Seller, in the event that Purchaser shall fail to comply with the Agreement and (vi) by Seller, in order to permit Seller to accept a higher or better offer for the Property pursuant to the Bidding Procedures.

**C.   The Bidding Procedures.**

13.   The Sale of the Property would be subject to higher or otherwise better offers pursuant to the Bidding Procedures.  The Seller believes that the proposed structure of the Bidding Procedures is the one most likely to maximize the realizable value of the Property for the benefit of the Seller's estate, its stakeholders, and other interested parties.  Accordingly, the Seller seeks approval of the Bidding Procedures for the Sale of the Property.

14.   The Bidding Procedures describe, among other things, the asset available for sale, the manner in which bidders and bids become "qualified," the conduct of any subsequent Auction, the ultimate selection of the Successful Bidder, and this Court's approval thereof (the "Bidding Process").

15.   The material terms of the proposed Bidding Procedures attached hereto as Exhibit B are as follows:[4]

---

[4]   In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary have the meanings ascribed to them in the Bidding Procedures.

(a) <u>Assets To Be Sold</u>:  The asset proposed to be sold is the Property.

(b) <u>Qualified Bids</u>:  To ensure that only bidders with a serious interest in the purchase of the Property participate in the Bidding Process, the Seller would only consider the "Qualified Bids" of "Qualified Bidders".  To be considered a "Qualified Bid" for purposes of the Auction the person or entity submitting the bid would be required to submit an offer by the Bid Deadline (as defined herein) that includes: (i) an executed copy of the Agreement marked to show those amendments and modifications to the Agreement that the Qualified Bidder proposes, including modifications to the Purchase Price, which price must be at least $3,000,000 (such modified Agreement, a "Marked Agreement"), (ii) the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder, (iii) evidence, satisfactory to the Seller in its reasonable discretion (after consultation with representatives of the DIP Agent and the Creditors' Committee), of the bidder's financial wherewithal, (iv) a statement that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency, (v) a good faith deposit (the "Good Faith Deposit") equal to the greater of (A) 10% of the cash component of the purchase price or (B) $300,000 and (vi) an acknowledgement that the bidder's offer is irrevocable until two (2) business days after the Closing of the Sale of the Property.

(c) <u>Due Diligence</u>:  The Seller would afford each interested party due diligence access to the Property prior to the Bid Deadline.  Due diligence access could include access to data rooms, on-site inspections, and such other matters as a Qualified Bidder may request and as to which the Seller, in its sole discretion, may agree.  Each Qualified Bidder would be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid.

(d)  Bid Deadline:  Any person or entity
wishing to participate in the Auction would be required
to submit a Qualified Bid on or before March 13, 2009 at
5:00 p.m. (Eastern) (the "Bid Deadline").  The Seller
could extend the Bid Deadline (after consultation with
representatives of the Creditors' Committee and the DIP
Agent) to a date and time that is not later than 12:00
midnight on March 17, 2009, and could seek Court author-
ity to extend the Bid Deadline beyond such date.

(e)  Conduct Of Auction: If the Seller re-
ceives at least one Qualified Bid in addition to that of
the Purchaser, it would conduct an auction of the Prop-
erty (the "Auction") at the offices of Skadden, Arps,
Slate, Meagher & Flom LLP, Four Times Square, New York,
New York 10036, tentatively commencing at 10:00 a.m.
(Eastern) on March 18, 2009.  The Seller could extend the
commencement of the Auction (after consultation with rep-
resentatives of the Creditors' Committee and the DIP
Agent) to a date that is not later than March 19, 2009,
and could seek Court authority to extend the Bid Deadline
beyond such date.  The Auction would be conducted in ac-
cordance with the following procedures, among others: (i)
participation in the Auction would be limited to the Pur-
chaser and the Qualified Bidder(s), (ii) prior to the
commencement of the Auction, the Seller would advise the
Purchaser and all Qualified Bidders of what they believe
to be the highest or otherwise best Qualified Bid re-
ceived and (iii) bidding would begin initially with the
highest or otherwise best Qualified Bid and subsequently
continue in such minimum increments as the Seller, after
consultation with representatives of the Creditors' Com-
mittee and the DIP Agent, would determine at the Auction.

(f)  Selection Of Successful Bid:  As soon
as practicable after the conclusion of the Auction, the
Seller would review each Qualified Bid and identify the
highest or otherwise best offer(s) for the Property (the
"Successful Bid," and the bidder making such bid, the
"Successful Bidder").  The Seller would sell the Property
to the Successful Bidder for the highest or otherwise
best Qualified Bid upon the approval of such Qualified
Bid by the Bankruptcy Court after the Sale Hearing.

(g)  Sale Hearing: The Sale Hearing would
be held on March 20, 2009, at 10:00 a.m. (Eastern), but
could be adjourned or rescheduled in the Seller's sole
discretion, subject to Bankruptcy Court approval, as nec-
essary, without further notice than an announcement of
the adjourned date at the Sale Hearing.  If no Qualified
Bids other than that of the Purchaser are received, the
Seller would proceed with the Sale to the Purchaser fol-
lowing entry of the Sale Approval Order.  If the Seller
receives additional Qualified Bids, then at the Sale
Hearing, the Seller would seek approval of the Successful
Bid, as well as the second highest or best Qualified Bid
(the "Alternate Bid," and such bidder, the "Alternate
Bidder").  A bid would not be deemed accepted by the
Seller unless and until approved by the Court.  Following
approval of the Sale to the Successful Bidder, if the
Successful Bidder fails to consummate the sale for speci-
fied reasons, then the Alternate Bid would be deemed to
be the Successful Bid and the Seller would be permitted
to effectuate a Sale to the Alternate Bidder without fur-
ther order of the Court.

(h)  Return Of Good Faith Deposits:  The
Good Faith Deposits of all Qualified Bidders (except for
the Successful Bidder) would be held and all Qualified
Bids would remain open until two business days following
the Closing of the Sale (the "Return Date").  Notwith-
standing the foregoing, the Good Faith Deposit submitted
by the Successful Bidder, together with interest thereon,
if any, would be applied against the payment of the Pur-
chase Price upon Closing of the Sale to the Successful
Bidder.  If a Successful Bidder failed to consummate an
approved sale, the Seller would not have any obligation
to return such Good Faith Deposit and such deposit would
irrevocably become property of the Seller.  Subject to
the preceding sentence, on the Return Date, the Seller
would return the Good Faith Deposits of all other Quali-
fied Bidders, together with the accrued interest thereon,
if any.

(i)  Reservation Of Rights:  The Seller
would reserve the right to (i) determine in its reason-
able discretion (after consultation with representatives

of the Creditors' Committee and the DIP Agent) which of-
fer is the highest or otherwise best offer, (ii) reject
at any time prior to the Closing of a Sale, without li-
ability, any offer that the Seller in its reasonable dis-
cretion (after consultation with representatives of the
Creditors' Committee and the DIP Agent) deems to be
(x) inadequate or insufficient, (y) not in conformity
with the requirements of the Bidding Procedures or appli-
cable law or (z) contrary to the best interests of the
Seller and its estate and (iii) waive the requirements of
any of the Bidding Procedures with respect to a potential
or Qualified Bidder if the Seller determines in its busi-
ness judgment (after consultation with representatives of
the Creditors' Committee and the DIP Agent) it is in the
best interests of its estate and creditors

      16.   Objections to the Bidding Procedures, if

any, shall be filed and served no later than 4:00 p.m.

(Eastern) on February 27, 2009.   Objections to the Sale,

if any, shall be filed and served no later than 4:00 p.m.

(Eastern) on March 19, 2009 (the "Objection Deadline").

**APPLICABLE AUTHORITY**

**I.    THE BIDDING PROCEDURES ARE REASONABLE AND APPROPRI-
    ATE.**

      17.   Bankruptcy Code section 363(b)(1) provides

that "[t]he trustee, after notice and a hearing, may use,

sell, or lease, other than in the ordinary course of

business, property of the estate."   11 U.S.C. §

363(b)(1).   Moreover, Bankruptcy Code section 105(a) pro-

vides that "[t]he Court may issue any order, process, or

14

judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

18.   The Seller believes that the Bidding Procedures are appropriate under Bankruptcy Code sections 105 and 363 to ensure that the bidding and auction process is fair and reasonable and will yield the maximum value for its estate and creditors.  The Bidding Procedures permit the Seller to maximize the value of the Property.  In addition, the Bidding Procedures set deadlines for conducting the Auction and holding the Sale Hearing with respect to the transaction proposed herein.

19.   The Seller presently faces the possibility of continued financial deterioration and deterioration of its assets, including the Property.  Thus, the Seller believes that it must be permitted to conduct the Sale process in the manner and on the timetable set forth herein and in the Bidding Procedures.

20.   Accordingly, the Seller believes the Court should approve the Bidding Procedures, including the dates established therein for, inter alia, the submission of bids, the Auction and the Sale Hearing.  Similar procedures have been previously approved by this Court in

this and other cases.  See, e.g., In re Ceyoniq, Inc.,

Case No. 02-85887 (RGM) (Bankr. E.D. Va. Jan. 30, 2003);

In re The Rowe Companies, Case No. 06-11142 (SSM) (Bankr.

E.D. Va. Dec. 20, 2006).

## II.  APPROVAL OF THE SALE OF THE PROPERTY IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(b)(1).

21.  As set forth above, Bankruptcy Code sec-

tion 363(b)(1) authorizes a  trustee to "use, sell, or

lease" property of the estate with the Court's approval.

11 U.S.C. § 363(b)(1).  Assets of the Debtors may be sold

outside of the ordinary course of business, pursuant to

Bankruptcy Code section 363(b)(1), if a sound business

purpose exists for doing so.  In re WBQ P'ship, 189 B.R.

97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus.,

Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see

also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836

(Bankr. E.D. Va. 1997).

22.  To satisfy the "sound business purpose

test," the debtor must demonstrate that (1) a sound busi-

ness reason or emergency justifies a pre-confirmation

sale; (2) the sale was proposed in good faith; (3) the

purchase price is fair and reasonable; and (4) adequate

and reasonable notice of the sale has been provided.   In re WBQ P'ship, 189 B.R. at 102.

23.   Based upon the results of their analysis, the Seller's management and advisors have concluded that the Sale of the Property in accordance with the Bidding Procedures will maximize recoveries to the estate and stop further deterioration of the value of the Property. Furthermore, by selling the Property, the Seller will be able to minimize administrative expenses associated with maintaining the Property.  Maximizing asset value, preventing further deterioration, and reducing costs to the estate are sound business purposes that warrant authorizing the proposed Sale.

24.   The Sale of the Property will be subject to competing bids, thereby enhancing the Seller's ability to receive the highest or otherwise best value for the Property.  Consequently, the fairness and reasonableness of the consideration to be received by the Debtors will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

25.   Moreover, all creditors and parties in interest will receive adequate notice of the Auction and the Hearing as set forth below.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the Property and others whose interests are potentially implicated by the proposed Sale.

**III. THE PURCHASER IS A GOOD FAITH PURCHASER PURSUANT TO SECTION 363(m) OF THE BANKRUPTCY CODE AND THE TRANSACTION CONTEMPLATED BY THE AGREEMENT SHOULD CARRY THE PROTECTIONS OF SECTION 363(n) OF THE BANKRUPTCY CODE.**

26.   Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Fourth Circuit Court of Appeals

has "adopt[ed] the traditional equitable definition that has been adopted by various courts of appeal: 'one who purchases the assets for value, in good faith, and without notice of adverse claims.'" Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

27.   Section 363(n) of the Bankruptcy Code further provides, in relevant part, that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.

28.   The Seller submits, and will present evidence at the Sale Hearing, that the Agreement reflects an intensely negotiated, arm's length transaction.  Throughout the negotiations, the Purchaser has at all times acted in good faith.  Moreover, to the extent that the assets are sold to a Successful Bidder, it will be because of a well-planned competitive process and intense negotiations at arm's length to be conducted at an Auction.  As a result of the foregoing, the Seller requests

that the Court make a finding that the Purchase Price to
be paid by the Purchaser or the Successful Bidder consti-
tutes reasonably equivalent value and fair consideration
under any applicable law.

29.   The Seller, therefore, requests that this
Court make a finding that the Purchaser or the Successful
Bidder, as the case may be, has purchased the Property in
good faith within the meaning of section 363(m) of the
Bankruptcy Code.  Further, the Seller requests that this
Court make a finding that the purchase agreement reached
as a result of the Bidding Procedures necessarily will
comprise an arm's length, intensely-negotiated transac-
tion entitled to the protections of section 363(m) of the
Bankruptcy Code.  Because the Seller has shown that the
Purchaser's or Successful Bidder's bid is not the product
of fraud or collusion between the Purchaser or Successful
Bidder and other bidders or the trustee, or an attempt to
take grossly unfair advantage of other bidders, the
Seller further requests that this Court make a finding
that the transactions contemplated by the Agreement are
not avoidable under section 363(n) of the Bankruptcy
Code.

20

IV.   **THE SALE OF THE PROPERTY FREE AND CLEAR OF CLAIMS, LIENS, AND ENCUMBRANCES SHOULD BE AUTHORIZED UNDER BANKRUPTCY CODE SECTION 363(f).**

30.   To facilitate a Sale of the Property, the Seller requests authorization to sell the Property free and clear of any and all Liens except the Permitted Encumbrances.

31.   Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide  dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

32.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the

five conditions above is met.  See, e.g., In re Laines,

352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

33.  Courts have held that the authority of a

debtor to sell assets free and clear of interests is

broad and should be read expansively.  See In re TWA,

Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United

Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless

Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573,

582 (4th Cir. W. Va. 1996) (holding that the phrase "any

interest in property" includes more than just in rem in-

terests; In re P.K.R. Convalescent Centers, Inc., 189

B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning

of the statute demonstrates, § 363 covers more situations

than just sales involving liens.").  Moreover, courts

have noted that the purpose of the "free and clear" lan-

guage is to allow the debtor to obtain a maximum recovery

on its assets in the marketplace.  See In re TWA, Inc.,

2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27,

2001).

34.  Accordingly, this Court should authorize

the Seller to sell the Property free and clear of Liens,

except the Permitted Encumbrances, with any such Liens

attaching to the net proceeds of the Sale of the Property
in the same order and priority as they exist against the
Property and in accordance with the terms and provisions
of the Debtors' post-petition financing facility.

**V.    WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY
RULE 6004 SHOULD BE WAIVED FOR ANY ORDER APPROVING
THE SALE OF THE PROPERTY.**

35.   Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of prop-
erty is stayed until the expiration of 10 days after en-
try of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).

36.   The Seller requests that the Court waive
the ten-day stay of Bankruptcy Rule 6004 with respect to
the Sale of the Property following the entry of the Sale
Approval Order.   By waiving such requirements, the Seller
and the Purchaser or the Successful Bidder, as applica-
ble, will be able to immediately close the Sale, which
will in turn save the Seller continued accrual of admin-
istrative expenses and thereby benefit the Seller's es-
tate.

**NOTICE**

37.   Notice of this Motion has been provided to
those parties entitled to notice under the Order Pursuant
to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules
2002 and 9007, and Local Bankruptcy Rules 2002-1 and
9013-1 Establishing Certain Notice, Case Management, and
Administrative Procedures (D.I. 130; the "Case Management
Order"), as well as (a) all entities known to have ex-
pressed an interest in a transaction regarding the Prop-
erty during the past three (3) months; (b) all entities
known to have an interest in any of the Property; and
(c) all federal, state, and local regulatory or taxing
authorities or recording offices that have a reasonably
known interest in the relief requested through the Mo-
tion.  Notice of the entry of the Order will be provided
to the same parties.  The Debtors submit that, under the
circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

38.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law pre-
sented in the Motion and all applicable authority is set
forth in the Motion, the Seller requests that the re-

quirement that all motions be accompanied by a separate
memorandum of law be waived.

## NO PRIOR REQUEST

39.  No previous request for the relief sought
herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Seller respectfully requests that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: February 12, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636 (302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

__/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

26

**EXHIBIT A**

(Agreement)

PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of January _____, 2009, is made by and between CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("Seller"), and HESLIN HOLDINGS, INC., a Florida corporation ("Purchaser").

RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

I.     PURCHASE AND SALE

1.1     Purchase and Sale.   Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to the property located at 1670 and 1671 East Camelback Road, Phoenix, Arizona, comprising approximately 3.5 acres, referenced as APN# 164570811 and APN# 948626130, and being more particularly described on Exhibit A attached hereto and made a part hereof, together with (i) all the rights and appurtenances pertaining to such land, (ii) all buildings (including a building containing approximately 33,348 square feet), structures, and other improvements on said land, and (iii) electrical, mechanical, air conditioning and other fixtures attached thereto (herein collectively called the "Property"); provided, however, the Property shall not include any lifts or racking located in the buildings, if any (the "Excluded FF&E"), which shall be excluded from the sale.   Seller shall remove the Excluded FF&E prior to Closing, failing which such Excluded FF&E shall be deemed abandoned and become the property of Purchaser.

1

2.    PURCHASE PRICE

   2.1    <u>Purchase Price</u>.      The purchase price (the "<u>Purchase Price</u>") for the Property shall be TWO MILLION NINE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,900,000.00).  The Purchase Price, less the Deposit, shall be paid into the Escrow Agent's escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by the Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

3.    DEPOSIT

   3.1    <u>Deposit</u>.      Within three (3) business days of the execution of this Agreement, Purchaser shall deliver to Fidelity Title (the "<u>Escrow Agent</u>"), 1301 Dove Street, Suite 310, Newport Beach, CA 92660, Attention: Natalie Priestly, Phone: (949) 622-4911, Fax: (949) 477-6835, Email: <u>Natalie.priestly@fnf.com</u>, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) (which amount, together with the funds delivered pursuant to the next sentence of this Section 3.1 and all interest accrued thereon, is herein called the "<u>Deposit</u>") to be held by the Escrow Agent in an interest bearing money market account (the "<u>Escrow Account</u>").  Within two (2) business days after expiration of the Due Diligence Period, Purchaser shall deliver to Escrow Agent, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to an additional TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00), which amount shall be deemed part of the Deposit and shall be held in the Escrow Account, bringing the total Deposit to THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00).  The Deposit shall be held in an interest-bearing savings account in a federally insured financial institution in the Los Angeles, California metropolitan area, or in such other interest-bearing account or investment as the parties hereto shall direct.

   3.2    <u>Application of Deposit</u>.      If the sale of the Property is consummated under this Agreement, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 4.2, Section 4.3, Section 7.1, Section 7.2, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, the Deposit shall be returned

promptly to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations"). If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, the Deposit shall be retained by Seller and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time the notice to terminate this Agreement is given. The obligations to deliver the Reports shall survive the termination of this Agreement. In no event shall any Deposit be returned to Purchaser hereunder until all Reports have been delivered to Seller. All interest earned on the Deposit shall be reported to the Internal Revenue Service as income of Purchaser and Purchaser shall promptly execute all forms reasonably requested by the Escrow Agent regarding such interest.

4.     ITEMS DELIVERED TO PURCHASER

    4.1     Items Delivered.     Seller has delivered or will deliver to Purchaser, within five (5) days following opening of escrow with the Escrow Agent, certain information with respect to the Property, which may include, without limitation, title reports, environmental and engineering reports and real property surveys, but only to the extent Seller has reasonable access to and possession of such information.

    4.2     Title Examination.     Purchaser shall have the right to have Seller's title to the Property examined and shall give written notice to Seller within thirty (30) days from and after the date of this Agreement (the "Due Diligence Period") of any objection thereto; provided, however, Seller shall have no obligation to satisfy any such objections. Purchaser must elect, on or before the expiration of the Due Diligence Period, one of the following: (i) to waive any such objections that Seller has not agreed to satisfy at or prior to the Closing and to close the transaction in accordance with the terms of this Agreement; or (ii) to terminate this Agreement, in which event Seller shall promptly refund the Deposit to Purchaser as Purchaser's sole and exclusive remedy; provided. however, if Seller has agreed to cure or satisfy each such objection specified in the written notice, then no such election shall be required and Purchaser shall be obligated to close the transaction in accordance with the terms of this Agreement; provided, further, if Purchaser does not send a written notice of title objections prior to the expiration of the Due Diligence Period or does not make such an election on or before the expiration of the Due Diligence Period, then Purchaser shall be deemed to have waived irrevocably any and all title objections and shall be obligated to close the transaction in accordance with the terms of this Agreement.

4.3    <u>Property Inspection</u>.    Purchaser shall have through the last day of the Due Diligence Period to determine whether, in Purchaser's sole and absolute discretion, the Property is acceptable to Purchaser.   Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines in its sole and absolute discretion that the Property is not acceptable for any reason, in which event Escrow Agent shall return the Deposit to Purchaser on demand and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations.   If Purchaser does not give a notice of termination pursuant to Section 4.2 or this Section 4.3 at or prior to 5 p.m. (Eastern Standard Time) on the last day of the Due Diligence Period, this Agreement shall continue in full force and effect and Purchaser's right to terminate this Agreement pursuant to Section 4.2 and this Section 4.3 shall expire and be of no further force or effect.

On and subject to the conditions set out in this Section 4.3, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, architectural, engineering, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense.   If any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test.   Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably.    Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors.   Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained.

4

     4.4    <u>Reports</u>.    All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property in the course of Purchaser's due diligence investigation, whether before or after the date of this Agreement (collectively, the "<u>Reports</u>"), shall be treated as confidential information and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, real estate broker, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein.  Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of any due diligence investigation, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.4 shall survive the Closing or the termination of this Agreement, as applicable.

     4.5    <u>Purchaser's Representations and Warranties</u>.    Purchaser represents and warrants to Seller that (a) Purchaser is a corporation, duly organized and in good standing under the State of Florida, is authorized to do business in the State of Arizona, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms.  Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6     Seller's Representations and Warranties.    Seller    represents    and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the State of California; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined hereinafter) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances; and (e) to the best knowledge of Seller, Seller has not previously sold, leased, transferred or conveyed the Property, and Seller has not entered into any executory contract for the sale, lease, transfer of or conveyance of the Property (other than this Agreement) and there is no right of first refusal, or option to purchase, lease, transfer or convey the Property. The representations and warranties contained in this Section 4.6 shall survive the Closing for a period of six (6) months.

4.7     Further Assurances.   Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.     DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

5.1     Disclaimer.   PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL OR LIMITED WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR

CCSWCI: Phoenix, AZ Sale [1/16/2009]

6

BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY.  ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY.  PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION.  SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION

AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY. PROTECT, DEFEND. SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S CONDUCT. THE PROVISIONS OF THIS SECTION 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements (as hereinafter defined) or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments,

CCSWCI: Phoenix, AZ Sale [1/16/2009]

8

orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

     5.4   <u>Purchaser's Independent Investigations</u>.   For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

6.    CLOSING

     6.1   <u>Closing</u>.   Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "<u>Closing</u>") shall be conducted by mail or, if necessary, held at the offices of Escrow Agent not later than (i) thirty (30) days after expiration of the Due Diligence Period, or (ii) ten (10) days following entry by the Bankruptcy Court of the Sale Order, whichever is last to occur (the date on which the Closing occurs is referred to as the "<u>Closing Date</u>").

     6.2   <u>Possession</u>.   Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise, and (iv) any and all matters that would be shown by a physical inspection of the Property (collectively, the "<u>Permitted Encumbrances</u>"). Prior to the Closing, Seller shall remove the Excluded FF&E from the Property and shall repair any material damage to the Property caused by the removal of the Excluded FF&E, and any Excluded FF&E remaining in the Property after the Closing shall become the property of Purchaser.

6.3    <u>Proration</u>.    All utilities with respect to the Property for the month in which the Closing occurs, and real estate taxes and other assessments with respect to the Property for the year in which the Closing occurs, shall be prorated as of the Closing Date as follows:

(a)    All real estate taxes and assessments, both general and special, water charges and sewer rents, whether or not then due or payable, and all other normally proratable items shall be prorated to the Closing Date, based upon the latest assessments or actual invoices available.  Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.  Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

(b)    Purchaser shall cause all utility meters to be read as of the Closing Date, shall cause the transfer of all utility services for the Property to Purchaser's name as of the Closing Date, and where necessary, shall post deposits with the utility companies; provided, however, Seller shall cooperate reasonably with Purchaser in connection with switching utility services over to Purchaser's name. Seller shall be entitled to a credit of whatever deposits Seller may have with any utility companies if Purchaser receives the benefit of such deposits.  If the Closing shall occur before the actual amount of utilities and all other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the apportionment of such utilities and other operating expenses shall be upon the basis of an estimate by Seller of such utilities and other operating expenses for such month.  Subsequent to the Closing, when the actual amount of such utilities and other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the parties agree to adjust the proration of such utilities and other operating expenses and, if necessary, to refund or repay such sums as shall be necessary to effect such adjustment.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4    <u>Closing Costs</u>.    Purchaser shall pay, on the Closing Date, any and all closing expenses and costs, including, without limitation, title insurance premiums, survey costs, environmental and engineering costs, recordation fees, stamp tax and mortgage taxes and any and all other due diligence costs.  Except as otherwise provided herein, each party shall pay its own attorneys' fees.  The parties shall share equally in any

escrow fees; and, with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in Phoenix, Arizona.

> 6.5    Seller's Obligations at the Closing.    At the Closing, Seller shall deliver to Escrow Agent the following:

>> (a)    Deed. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances.

>> (b)    Foreign Person.    An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

> 6.6    Purchaser's Obligations at the Closing.    At the Closing, Purchaser shall deliver to Escrow Agent the following:

>> (a)    Purchase Price.    The Purchase Price (less the amount of the Deposit, which shall be released separately by the Escrow Agent to Seller) by wire transfer of immediately available funds.

>> (b)    Evidence of Authority.    Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

>> (c)    Taxpayer I.D. Certificate.    A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

> 6.7    Commission. Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty ("Broker"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement.   Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever.  Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction.   The provisions of the preceding sentence shall survive the Closing.

7.    RISK OF LOSS; EXISTING INSURANCE PROCEEDS

7.1    Condemnation.      If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a return of Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

7.2    Casualty.      Seller assumes all risks and liability for damage to or injury occurring to the Property by fire, storm, accident, or any other casualty or cause until the Closing has been consummated.  If the Property, or any part thereof, suffers any damage in excess of Two Hundred Thousand and No/100 Dollars ($200,000.00) after the date of this Agreement and prior to the Closing from fire or other casualty, which Seller, at its sole option, does not repair, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a refund of the Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event all of Seller's right title and interest in and to the proceeds of any insurance covering such damage (less an amount equal to any expenses and costs incurred by Seller to repair or restore the Property or to be paid on account of the loss of rents or other income from the Property for the period prior to and including the Closing Date, all of which shall be payable to Seller), to the extent the amount of such insurance does not exceed the Purchase Price, plus Seller's deductible under its insurance policy, shall be assigned to Purchaser at the Closing. If the Property, or any part thereof, suffers any damage less than Two Hundred Thousand and No/100 Dollars ($200,000.00) after the date of this Agreement and prior to the Closing, Purchaser agrees that it will consummate the Closing and accept the assignment of the proceeds of any insurance covering such damage, plus Seller's deductible under its insurance policy, and there shall be no reduction in the Purchase Price.  Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.

8.    DEFAULT

8.1    Breach by Seller.      In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may terminate this Agreement and receive a refund of the Deposit.  In no event shall Purchaser be

entitled to any remedy other than the return of its Deposit and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages.  In no event shall Purchaser be entitled to the remedy of specific performance.

        8.2    <u>Breach by Purchaser</u>.  If Purchaser fails to comply with this Agreement for any reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole remedy and relief hereunder and shall not be entitled to the remedy of specific performance.  Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.      BANKRUPTCY ISSUES

        9.1    <u>Generally</u>.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

        9.2    <u>Filing a Sale Motio</u>n. The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "<u>Sale Order</u>") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement.  Provided Purchaser has not terminated this Agreement pursuant to Section 4.2 or Section 4.3 hereof, within four (4) business days after the earlier of the expiration of the Due Diligence Period or the written waiver by Purchaser of its termination rights under Sections 4.2 and 4.3, and the transfer of the additional deposit to the Escrow Agent, Seller will file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "<u>Sale Motion</u>"). The Sale Motion shall be in form and substance consistent with this Agreement, and Seller shall be responsible for serving and providing notice of the Sale Motion.

CCSWCI: Phoenix, AZ Sale [1/16/2009]

9.3    Entry of Sale Order.   The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above.  Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

9.4    Termination.  Purchaser acknowledges that the Seller intends to solicit "higher or better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least $3,000,000.00; (b) each initial overbid must be accompanied by a deposit in an amount equal to the total aggregate Deposit; (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing  offer is received by Seller, Seller shall conduct an auction to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the auction.  The last day for submission of higher or better offers will be fixed by the Seller or established by order of the Bankruptcy Court.  As provided in Section 9.2 above, Seller will file a motion with the Bankruptcy Court seeking approval of the subject transaction subject to higher and better offers.  The Bankruptcy Court will set a date for a hearing on the sales motion and consider an entry of the sale order relating to the successful bid.  Prior to the sales hearing, Seller will conduct an auction pursuant to the approved bid procedures set forth in this Section, and will select the highest or otherwise best offer to purchase the Property.  Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to June 30, 2009 (the "Outside Date").  If this Agreement is terminated by Seller as provided in this Section 9.4, or because the Bankruptcy Court will not enter the Sale Order prior to the Outside Date, Escrow Agent shall disburse the Deposit to Purchaser.

10.    MISCELLANEOUS

10.1    Notices.       All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return

CCSWCI: Phoenix, AZ Sale [1/16/2009]

14

receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below.  For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

| | |
|---|---|
| If to Purchaser: | HESLIN HOLDINGS, INC.<br>3010 Old Ranch Parkway, Suite 420<br>Seal Beach, CA 90740<br>Attention:  Andrea Nilson, Director of Acquisitions |
| If to Seller: | CIRCUIT CITY STORES WEST COAST, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES WEST COAST, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention:  General Counsel |
| and a copy to: | KENNERLY, LAMISHAW & ROSSI, LLP<br>707 Wilshire Blvd., Suite 1400<br>Los Angeles, CA 90017<br>Attention:  Matthew I. Lamishaw, Esq. |

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

10.2    Entire Agreement.    This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3    Amendment.  This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4    Heading.      The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5    Time of Essence.      Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6    Governing Law.      This Agreement shall be governed by the laws of the State of Arizona and the laws of the United States pertaining to transactions in such State.

10.7    Successors and Assigns: Assignment.      This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller, which consent shall not be unreasonably withheld.   No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement. This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8    Invalid Provision.      If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9    Attorneys' Fees.      In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

CCSWCI: Phoenix, AZ Sale [1/16/2009]

16

10.10  Multiple Counterparts.      This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11  No Recordation.      Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12  Merger Provision.      Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13  Brokers.      Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14  Consent to Jurisdiction of Bankruptcy Court.      THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HEREO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Buyer and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Purchaser irrevocably and unconditionally waives any

objection to the laying of venue of any action, suit or proceeding arising out of this
Agreement in the Bankruptcy Court.


<u>SELLER</u>

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

By: _____
Name: _Reginald Hedgebeth_____
Title: _Chief Executive Officer_____


<u>PURCHASER</u>

HESLIN HOLDINGS, INC.,
a Florida corporation

By: _____
Name: _Matthew J. Heslin_____
Title: _President_____


By: _____
Name: _____
Title: _____

The escrow terms and conditions of this Agreement are agreed to and accepted this _____ day of _____, 2009.

ESCROW AGENT:

FIDELITY TITLE INSURANCE COMPANY


By:      _____
Name:    _____
Title:   _____


Mailing Address:

1301 Dove Street, Suite 310
Newport Beach, CA 92660
Attention: Natalie Priestly

19

## EXHIBIT A

LEGAL DESCRIPTION OF PROPERTY

(See attached)

**EXHIBIT B**

(Bidding Procedures)

**CIRCUIT CITY STORES, INC.**
**LEASE SALE BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of the interest held by Circuit City Stores West Coast, Inc. (the "Seller" and together with its affiliated chapter 11 debtors and debtors in possession, the "Debtors") in the real property, comprising approximately 3.5 acres, located at 1670 and 1671 East Camelback Road, Phoenix, Arizona,(the "Property").  On February 3, 2009, the Seller executed that certain Purchase And Sale Agreement (together with any amendments thereto, the "Agreement") with Heslin Holdings, Inc. (the "Purchaser").   The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and certain other closing conditions.

On February 24, 2009, the Seller filed its Motion For Orders Under Bankruptcy Code Sections 105 And 363 And Bankruptcy Rules 2002 And 6004 (I) Approving Bidding Procedures, (II) Setting Auction And Sale Hearing Dates And (III) Authorizing and Approving Sale By Seller of a Certain Real Property Located In Phoenix, Arizona Free And Clear Of Liens (the "Sale Motion"). On March __ 2009, the Bankruptcy Court entered an Order Under Bankruptcy Code Sections 105 And 363 And Bankruptcy Rules 2002 And 6004 (I) Approving Bidding Procedures And (II) Setting Auction And Sale Hearing Dates (the "Bidding Procedures Order").[1]

The Bidding Procedures Order set (i) March 20, 2009 or (ii) such later date as determined by the Bankruptcy Court at the hearing on March 20, 2009 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Seller to sell its interest in the Property.

The Bidding Procedures set forth herein describe, among other things, the asset available for sale, the manner in which bids become Qualified Bids (as defined herein), the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein), and the Bankruptcy Court's approval thereof.  In the event that the Seller

---

[1]    Unless otherwise defined herein, each capitalized term shall have the meaning assigned to it in the Sale Motion or the Bidding Procedures Order.

and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### ASSETS TO BE SOLD

The asset proposed to be sold is the Seller's interest in the Property.

### QUALIFIED BIDS

The Seller will consider all proposals for the Property. However, only "Qualified Bidders," *i.e.*, persons or entities submitting "Qualified Bids", may participate in the Auction. To be considered a "Qualified Bid" for purposes of the Auction the person or entity submitting the bid must submit an offer by the Bid Deadline (as defined herein) that includes:

(a) an executed copy of the Agreement marked to show those amendments and modifications to the Agreement that the Qualified Bidder proposes, including modifications to the Purchase Price (as defined in the Agreement), which price must be at least $3,000,000 (such modified Agreement, a "Marked Agreement"),[2]

(b) the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder,

(c) evidence, satisfactory to the Seller in its reasonable discretion (after consultation with representatives of the DIP Agent and the Creditors' Committee), of the bidder's financial wherewithal,

(d) a statement that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency,

(e) a good faith deposit (the "Good Faith Deposit"), in readily available funds, made payable to Circuit City Stores, Inc., equal to the greater of (i) 10% of the cash component of the purchase price or (ii) $300,000 and

(f) an acknowledgement that the bidder's offer is irrevocable until two (2) business days after the closing of the Sale of the Property.

---

[2]   As noted below, no bid may provide for a due diligence or property inspection period after the Bid Deadline.  Thus, sections 4.2 and 4.3 of the Agreement shall be automatically deemed inapplicable, regardless of bidder's modifications thereto.  Any references to sections 4.2 or 4.3 or the Due Diligence Period contained in the Agreement will likewise be considered inapplicable.

## DUE DILIGENCE

The Seller will afford each interested party due diligence access to the Property prior to the Bid Deadline.  Due diligence access may include access to data rooms, on-site inspections, and such other matters as a Qualified Bidder may request and as to which the Seller, in its sole discretion, may agree.  The Seller may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither the Seller nor any of its affiliates (or any of its respective representatives) will be obligated to furnish any information relating to the Property to any person other than to Qualified Bidders which make an acceptable preliminary proposal.

A Qualified Bid may not be contingent upon, or otherwise provide for, the completion of any due diligence or property inspection or the expiration of any due diligence or property inspection period.

Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid.

## BID DEADLINE

Any person or entity wishing to participate in the Auction must submit a Qualified Bid on or before **March 13, 2009 at 5:00 p.m. (Eastern)** (the "Bid Deadline") in writing, to:

(1) Circuit City Stores, Inc., 9950 Mayland Dr., Richmond, Virginia 23233, Attn: Reginald D. Hedgebeth (Reggie_Hedgebeth@Circuitcity.com);

(2) Counsel to the Seller, Gregg M. Galardi and Ian S. Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19801 (gregg.galardi@skadden.com and ian.fredericks@skadden.com);

(3) Counsel to the Creditors' Committee, Jeff Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California 90067-4100, (jpomerantz@pszjlaw.com);

(4) Counsel to the DIP Agent, David S. Berman, Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108, (dberman@riemerlaw.com); and

(5) DJM Realty Services, LLC, 445 Broadhollow Road, Suite 225, Melville, New York 11747, Attn: James Avallone, Fax: (631) 752-1231 (javallone@djmrealty.com).

The Seller shall announce the terms of the highest or otherwise best Qualified Bid, after consultation with representatives of the DIP Agent and Creditors' Committee, on or before the commencement of the Auction.

**THE AUCTION**

In the event that the Seller receives any Qualified Bids, an auction with respect to the Sale (the "Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, tentatively commencing at **10:00 a.m. (Eastern) on March 18, 2009**. The Purchaser and any Qualified Bidder wishing to participate in the Auction must appear in person or by phone (as may be allowed by Seller in its sole discretion) and submit its highest or otherwise best bid at the Auction.  Bidding at the Auction will continue until such time as the Purchaser and each Qualified Bidder has submitted its highest or otherwise best bid, at which point the Auction shall close.

**AUCTION PROCEDURES**

Only the Purchaser and any Qualified Bidders who have submitted Qualified Bids shall be eligible to participate at the Auction.  During the Auction, bidding shall begin initially with the highest or otherwise best Qualified Bid and subsequently continue in such minimum increments as the Seller, after consultation with representatives of the Creditors' Committee and the DIP Agent, shall determine at the Auction (such bids submitted at the Auction, the "Auction Bids").

The Seller may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures or applicable law.

**SELECTION OF THE SUCCESSFUL BID**

Upon conclusion of the Auction, the Seller, in consultation with representatives of the DIP Agent and the Creditors' Committee, shall (i) review each Auction Bid on the basis of financial and contractual terms and the factors relevant to the Sale and (ii) identify the highest or otherwise best offer (the "Successful Bid" and the bidder making such bid, the "Successful Bidder").

The Seller will sell the Property to the Successful Bidder according to the terms of the Successful Bid upon the approval of such bid by the Bankruptcy Court after the Sale Hearing.

The Seller's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Seller's acceptance of the bid.  The Seller will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

**THE SALE HEARING**

The Sale Hearing will be held before the Honorable Kevin R. Huennekens on **March 20, 2009, at 10:00 a.m. (Eastern)** in the United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219, but may be adjourned or rescheduled in the Seller's sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice than an announcement of the adjourned date at the Sale Hearing.

If the Seller does not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Seller will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a Sale to the Purchaser following entry of an order approving such Sale (the "Sale Approval Order").  If the Seller does receive additional Qualified Bids, then at the Sale Hearing the Seller will seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and the bidder making such bid, the "Alternate Bidder").

Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale because of: (i) the failure of a condition precedent beyond the control of either the Seller or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder, then the Alternate Bid will be deemed to be the Successful Bid and

5

the Seller will be permitted to effectuate a sale to the Alter-
nate Bidder subject to the terms of the Alternate Bid without
further order of the Bankruptcy Court.

### RETURN OF GOOD FAITH DEPOSIT

As noted above, all Qualified Bidders will be required
to submit Good Faith Deposits with the Seller on or before the
Bid Deadline.  The Good Faith Deposits of all Qualified Bidders
(except for the Successful Bidder) would be held and all Quali-
fied Bids would remain open until two business days following
the Closing of the Sale (the "Return Date").  Notwithstanding
the foregoing, the Good Faith Deposit submitted by the Success-
ful Bidder, together with interest thereon, if any, will be ap-
plied against the payment of the Purchase Price upon Closing of
the Sale to the Successful Bidder.  If a Successful Bidder fails
to consummate an approved sale, the Seller will not have any ob-
ligation to return such Good Faith Deposit and such deposit will
irrevocably become property of the Seller.  Subject to the pre-
ceding sentence, on the Return Date, the Seller will return the
Good Faith Deposits of all other Qualified Bidders, together
with the accrued interest thereon, if any.

### RESERVATION OF RIGHTS

The Seller reserves the right to (i) determine in its
reasonable discretion (after consultation with representatives
of the Creditors' Committee and the DIP Agent) which offer is
the highest or otherwise best offer, (ii) reject at any time
prior to the closing of a Sale, without liability, any offer
that the Seller in its reasonable discretion (after consultation
with representatives of the Creditors' Committee and the DIP
Agent) deems to be (x) inadequate or insufficient, (y) not in
conformity with the requirements of these Bidding Procedures or
applicable law or (z) contrary to the best interests of the
Seller and its estate, (iii) waive the requirements of any of
the Bidding Procedures with respect to a potential or Qualified
Bidder if the Seller determines in its business judgment (after
consultation with representatives of the Creditors' Committee
and the DIP Agent) it is in the best interests of its estate and
creditors; (iv) extend the Bid Deadline (after consultation with
representatives of the Creditors' Committee and the DIP Agent)
to a date and time that is not later than 12:00 midnight on
March 17, 2009; (v) seek Court authority to extend the Bid Dead-
line beyond such date; (vi) change the date of the Auction (af-
ter consultation with representatives of the Creditors' Commit-
tee and the DIP Agent) to a date that is no later than March 19,

2009 and (vii) seek Court authority to change the date of any
Auction beyond such date and time.

       The selection of a Successful Bidder shall be within
the reasonable business judgment of the Seller (after consulta-
tion with representatives of the Creditors' Committee and the
DIP Agent) and subject to the approval of the Bankruptcy Court,
and economic considerations shall not be the sole criteria upon
which the Seller may base its decision.  In assessing whether a
proposal constitutes a higher or otherwise better offer, the
Seller shall consider, among other things, the net economic ef-
fect upon the Seller's estate.  Prior to presentation of a pro-
posal to the Bankruptcy Court, the Seller, after consultation
with representatives of the Creditors' Committee and the DIP
Agent, may impose such other terms and conditions on Qualified
Bidders as the Seller may determine to be in the best interests
of the Seller, its estate, creditors, and other parties in in-
terest.

**EXHIBIT C**

(Bidding Procedures Order)

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND
BANKRUPTCY RULES 2002 AND 6004 (I) APPROVING BIDDING
PROCEDURES AND (II) SETTING AUCTION AND SALE HEARING
DATES IN CONNECTION WITH THE SALE OF CERTAIN REAL
PROPERTY LOCATED IN PHOENIX, ARIZONA**

Upon the motion (the "Motion")[1] of Circuit City

Stores West Coast, Inc. (the "Seller," and collectively

with the debtors and debtors in possession in the above-

_____

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

captioned jointly administered cases, the "Debtors") for

orders pursuant to Bankruptcy Code sections 105 and 363

and Bankruptcy Rules 2002 and 6004 (i) approving the

bidding procedures set forth herein and attached hereto

as Exhibit 1 (the "Bidding Procedures"), (ii) setting a

date for the Auction (as defined herein) and the sale

hearing (the "Sale Hearing") and (iii) authorizing and

approving the sale (the "Sale") of certain real property

of the Seller located at 1670 and 1671 East Camelback

Road, Phoenix, Arizona,(the "Property") for $2.9 million;

and the Court having reviewed the Motion; and the Court

having determined that the relief requested in the Mo-

tion is in the best interests of the Seller, its estate,

its creditors, and other parties in interest; and it ap-

pearing that proper and adequate notice of the Motion

has been given and that no other or further notice is

necessary; and upon the record herein; and after due de-

liberation thereon; and good and sufficient cause ap-

pearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.   The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.   Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.   Good and sufficient notice of the relief sought in the Motion has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the proposed Sale Process and Sale) has been afforded to those parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order"), as well as (a) all entities known to have

---

2 Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

3

expressed an interest in a transaction regarding the
Property during the past three (3) months; (b) all enti-
ties known to have an interest in any of the Property;
and (c) all federal, state, and local regulatory or tax-
ing authorities or recording offices that have a rea-
sonably known interest in the relief requested through
the Motion.

      D.   The Sellers' proposed notice of the Bid-
ding Procedures, the Auction and the Sale Hearing, as
set forth in the Motion, is appropriate and reasonably
calculated to provide all interested parties with timely
and proper notice, and no other or further notice is re-
quired.

      E.   The Seller has articulated good and suf-
ficient reasons for the Court to (i) approve the Bidding
Procedures and (ii) schedule the Auction and the Sale
Hearing.

      F.   The Bidding Procedures are reasonable and
appropriate and represent the best method for maximizing
the realizable value of the Property.

      G.   The entry of this Order is in the best
interests of the Seller and its estates, creditors, and

interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Bidding Procedures, as set forth on Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern all proceedings relating to the Agreement, any subsequent bids for the Property and the Auction, if applicable.

2.   The Seller may: (a) determine, in its business judgment, which Qualified Bid is the highest or otherwise best offer and (b) reject at any time, before entry of an order of the Court approving a Qualified Bid, any bid (other than the Purchaser's bid) which, in the Seller's sole discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or applicable law or (iii) contrary to the best interests of the Seller, its estate or its stakeholders.  The Seller is authorized (x) to terminate the Bidding Process or the Auction at any time if it determines, in its business judgment, that the Bidding Process will not maximize the value of the Property

5

to be realized by the Seller's estate and (y) seek Court approval of the Agreement with Purchaser.

3.   Subject to paragraph 5 below, the Court shall hold a Sale Hearing on **March 20, 2009 at 10:00 a.m. (Eastern)** in the United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219, at which time the Court shall consider the sale aspect of the Motion.  Objections to the Sale, if any, shall be filed and served no later than 4:00 p.m. (Eastern) on March 19, 2009 (the "Objection Deadline").

4.   The failure of any objecting person or entity to timely file its objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, the Auction, or the Seller's consummation and performance of the Agreement or a purchase agreement with the Successful Bidder (including, in either case, the transfer of the Property free and clear of liens), if authorized by the Court.

5.   The Sale Hearing, or any portion thereof, may be adjourned by the Debtors from time to time with-

6

out further notice to creditors or parties in interest
other than an announcement of the adjournment in open
court or on the Court's calendar on the date scheduled
for the Sale Hearing or any adjourned date.

6.      The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

7.      This Court shall retain jurisdiction with
respect to all matters arising or related to the imple-
mentation of this Order.

Dated:  Richmond, Virginia
        March __, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                        /s/ Douglas M. Foley

**Exhibit 1**

**(Bidding Procedures)**

**EXHIBIT D**

(Sale Approval Order)

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND
BANKRUPTCY RULES 2002 AND 6004 APPROVING SALE BY SELLER
OF CERTAIN REAL PROPERTY LOCATED IN PHOENIX, ARIZONA
FREE AND CLEAR OF LIENS**

        Upon the motion (the "Motion")[1] of Circuit City

Stores West Coast, Inc. (the "Seller," and collectively

with the debtors and debtors in possession in the above-

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

captioned jointly administered cases, the "Debtors") for

orders pursuant to Bankruptcy Code sections 105 and 363

and Bankruptcy Rules 2002 and 6004 (i) approving bidding

procedures (the "Bidding Procedures"), (ii) setting a

date for the Auction (as defined herein) and the sale

hearing (the "Sale Hearing") and (iii) authorizing and

approving the sale (the "Sale") of certain real property

of the Seller located at 1670 and 1671 East Camelback

Road, Phoenix, Arizona,(the "Property") free and clear

of liens pursuant to the Purchase And Sale Agreement

(the "Agreement"), attached hereto as <u>Exhibit 1</u>, dated

February 3, 2009 by and among the Seller and Heslin

Holdings, Inc. (the "Purchaser") or a Successful Bidder

(as defined in the Bidding Procedures"); and the Court

having entered its Order (I) Approving Bidding Proce-

dures And (II) Setting Auction And Sale Hearing Dates In

Connection With The Sale Of Certain Real Property Lo-

cated In Phoenix, Arizona on _____, 2009 (the "Bid-

ding Procedures Order") (Docket No.___); and the Sale

Hearing having been held on March 20, 2009, at which

time all interested parties were offered an opportunity

to be heard with respect to the Motion; and the Court

2

having reviewed the Motion; and the Court having deter-
mined that the relief requested in the Motion is in the
best interests of the Seller, its estate, its creditors
and other parties in interest; and it appearing that
proper and adequate notice of the Motion has been given
and that no other or further notice is necessary; and
upon the record herein; and after due deliberation
thereon; and good and sufficient cause appearing there-
for, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.   The Court has jurisdiction over the Mo-
tion pursuant to 28 U.S.C. §§ 157 and 1334, and this
matter is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2)(A).

B.   Venue of these cases and the Motion in
this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.   As evidenced by the affidavits of service
previously filed with the Court, and based on the repre-
sentations of counsel at the Sale Hearing, (i) proper,

---

2 Findings of fact shall be construed as conclusions of law and
  conclusions of law shall be construed as findings of fact when
  appropriate.  See Fed. R. Bankr. P. 7052.

timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, and the Auction as approved herein has been provided in accordance with Bankruptcy Code sections 102(l) and 363 and Bankruptcy Rules 2002 and 6004, (ii) such notice was good, sufficient, and appropriate under the circumstances and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline and the Auction is necessary or shall be required.

D.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Seller has marketed the Property and conducted the sale process in compliance with the Bidding Procedures Order.

E.    The Seller has full power and authority to execute the Agreement and all other applicable documents contemplated thereby.  The transfer and conveyance of the Property by the Seller have been duly and validly authorized by all necessary action of the Seller. The Seller has all of the power and authority necessary to consummate the transactions contemplated by the Agree-

4

ment and has taken all action necessary to authorize and approve the Agreement and to consummate the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for in the Agreement, are required for the Seller to consummate such transactions.

F.   The Seller has demonstrated good, suffi-cient, and sound business purpose and justification for the Sale because, among other things, the Seller and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Property and determined that (a) the terms and con-ditions set forth in the Agreement, (b) the transfer to the Purchaser of the Property pursuant thereto and (c) the Purchase Price agreed to as reflected in the Agree-ment are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Property.

G.   A reasonable opportunity to object or be heard with respect to the Motion and the relief re-quested therein has been afforded to all interested per-sons and entities, including without limitation: (a) those parties entitled to notice under the Order Pursu-

5

ant to Bankruptcy Code Sections 102 and 105, Bankruptcy
Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1
and 9013-1 Establishing Certain Notice, Case Management,
and Administrative Procedures (D.I. 130; the "Case Man-
agement Order"), (b) all entities known to have ex-
pressed an interest in a transaction regarding the Prop-
erty during the past three (3) months; (c) all entities
known to have an interest in any of the Property; and
(d) all federal, state, and local regulatory or taxing
authorities or recording offices that have a reasonably
known interest in the relief requested through the Mo-
tion.

      H.    The Purchaser is not an "insider" of any
of the Debtors as that term is defined in 11 U.S.C. §
101(31).

      I.    This Sale Approval Order and the consum-
mation of the contemplated transactions are supported by
good business reasons, and will serve the best interests
of the Seller, its estate and creditors by maximizing
the value to be obtained from the Property.

      J.    The Agreement was negotiated, proposed,
and entered into by the Seller and the Purchaser without

collusion, in good faith, and from arm's-length bargain-
ing positions.   Neither the Seller nor the Purchaser has
engaged in any conduct that would cause or permit the
Sale to be avoidable under Bankruptcy Code section
363(n).

    K.    The Purchaser is a good faith purchaser
under Bankruptcy Code section 363(m) and, as such, is
entitled to all of the protections afforded thereby.
The Purchaser will be acting in good faith within the
meaning of Bankruptcy Code section 363(m) in closing the
transactions contemplated by the Agreement at all times
after the entry of this Sale Approval Order.

    L.    The consideration provided by the Pur-
chaser for the Property pursuant to the Agreement (i) is
fair and reasonable, (ii) is the highest or otherwise
best offer for the Property, (iii) will provide a
greater recovery for the Seller's stakeholders than
would be provided by any other practical available al-
ternative and (iv) constitutes reasonably equivalent
value and fair consideration under the Bankruptcy Code
and under the laws of the United States, any state, ter-

7

ritory, or possession thereof, or the District of Colum-
bia.

M.   The Sale must be approved and consummated
promptly to obtain the value provided under the terms of
the Agreement.

N.   The transfer of the Property to the Pur-
chaser is a legal, valid, and effective transfer of the
Property, and shall vest the Purchaser with all right,
title, and interest of the Seller to the Property free
and clear of any lien (including tax liens and any
statutory or common law liens, possessory or otherwise),
charge, pledge, security interest, conditional sale
agreement or other title retention agreement, lease,
mortgage, security interest, option or other encumbrance
(including the filing of, or agreement to give, any fi-
nancing statement under the Uniform Commercial Code of
any jurisdiction) and any monetary amounts which are se-
cured by any lien (collectively, the "Liens"), except
for (i) liens for real property taxes that are not yet
due and payable, (ii) zoning ordinances, building codes
and other land use laws and applicable governmental
regulations, (iii) all covenants, agreements, conditions,

easements, restrictions and rights, whether of record or
otherwise and (iv) any and all matters that would be
shown by a physical inspection of the Property (collec-
tively, the "Permitted Encumbrances").

O.    If the Sale of the Property by the Seller
were not free and clear of any Liens, except for the
Permitted Encumbrances, as set forth in the Agreement
and this Sale Approval Order, or if the Purchaser would,
or in the future could, be liable for any of the Liens,
the Purchaser would not have entered into the Agreement
and would not consummate the Sale contemplated by the
Agreement, thus adversely affecting the Seller, its es-
tate, and its stakeholders.

P.    The Seller may sell its interest in the
Property free and clear of all Liens (except the Permit-
ted Encumbrances) because, in each case, one or more of
the standards set forth in Bankruptcy Code sections
363(f)(1)-(5) has been satisfied.   All holders of Liens
who did not object or withdrew their objections to the
Sale are deemed to have consented to the Sale pursuant
to 11 U.S.C. § 363(f)(2) and all holders of Liens are
adequately protected by having their Liens, if any, at-

tach to the cash proceeds of the Sale ultimately attrib-

utable to the property against or in which they claim an

interest with the same priority, validity, force, and

effect as they attached to such property immediately be-

fore the closing of the Sale.

Q.   Approval of the Agreement and consumma-

tion of the Sale of the Property at this time are in the

best interests of the Seller, its estate, its stake-

holders and other parties in interest; and it is there-

fore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Motion is GRANTED.  Any and all ob-

jections to the Motion not waived, withdrawn, settled,

adjourned or otherwise resolved herein are hereby over-

ruled and denied with prejudice.

**A.    Approval Of The Agreement.**

2.   Pursuant to Bankruptcy Code section

363(b), the Agreement and all of the terms and condi-

tions thereof are hereby approved.

3.   Pursuant to Bankruptcy Code section

363(b), the Seller is authorized, but not directed, to

perform its obligations under the Agreement and comply

10

with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4.      The Seller is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Property as contemplated by the Agreement.

5.      This Sale Approval Order and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Seller, all affiliates and subsidiaries of the Seller, and any subsequent trustees appointed in the Seller's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code.  To the extent that any provision of this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order shall govern.

11

6.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

**B.    Sale And Transfer Of The Property.**

7.    Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in the Property shall be transferred to the Purchaser free and clear of all Liens except the Permitted Encumbrances, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Property immediately before such transfer, subject to any claims and defenses the Seller may possess with respect thereto.

8.    If any person or entity which has filed
financing statements, mortgages, mechanic's liens, <u>lis</u>
<u>pendens</u>, or other documents or agreements evidencing
Liens on or against the Property shall not have deliv-
ered to the Seller prior to the Closing of the Sale, in
proper form for filing and executed by the appropriate
parties, termination statements, instruments of satis-
faction, releases of all Liens that the person or entity
has with respect to the Property, or otherwise, then (a)
the Seller is hereby authorized to execute and file such
statements, instruments, releases, and other documents
on behalf of the person or entity with respect to the
Property and (b) the Purchaser is hereby authorized to
file, register, or otherwise record a certified copy of
this Sale Approval Order, which, once filed, registered,
or otherwise recorded, shall constitute conclusive evi-
dence of the release of all Liens on or against the
Property of any kind or nature whatsoever except for the
Permitted Encumbrances.

9.    This Sale Approval Order (a) shall be ef-
fective as a determination that, upon the Closing of the
Sale, all Liens of any kind or nature whatsoever exist-

13

ing as to the Seller or the Property prior to the Clos-

ing of the Sale, except for the Permitted Encumbrances,

have been unconditionally released, discharged, and ter-

minated (other than any surviving obligations), and that

the conveyances described herein have been effected and

(b) shall be binding upon and shall govern the acts of

all entities including, without limitation, all filing

agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars

of deeds, administrative agencies, governmental depart-

ments, secretaries of state, federal, state, and local

officials, and all other persons and entities who may be

required by operation of law, the duties of their office,

or contract, to accept, file, register, or otherwise re-

cord or release any documents or instruments, or who may

be required to report or insure any title or state of

title in or to any of the Property.

10.   All persons and entities, including, but

not limited to, all debt security holders, equity secu-

rity holders, governmental, tax, and regulatory authori-

ties, lenders, trade stakeholders, and other stake-

holders, holding Liens of any kind or nature whatsoever

14

against or in the Seller or the Property, except the
Permitted Encumbrances (whether legal or equitable, se-
cured or unsecured, matured or unmatured, contingent or
non-contingent, senior or subordinated) arising under or
out of, in connection with, or in any way relating to
the Property prior to the Closing of the Sale, or the
transfer of the Property to the Purchaser, hereby are
forever barred, estopped, and permanently enjoined from
asserting against the Purchaser, its successors or as-
signs, its property, or the Property, such persons' or
entities' Liens.  Nothing in this Sale Approval Order or
the Agreement releases or nullifies any liability to a
governmental agency under any environmental laws and
regulations that any entity would be subject to as owner
or operator of any Property after the date of entry of
this Sale Approval Order.  Nothing in this Sale Approval
Order or the Agreement bars, estops, or enjoins any gov-
ernmental agency from asserting or enforcing, outside
the Court, any liability described in the preceding sen-
tence.  Notwithstanding the above, nothing herein shall
be construed to permit a governmental agency to obtain

penalties from the Purchaser for days of violation of environmental laws and regulations prior to Closing.

**C.    Additional Provisions**

11.    The consideration provided by the Purchaser for the Property under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

12.    Upon the Closing of the Sale, this Sale Approval Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all the Property or a bill of sale transferring good and marketable title in the Property to the Purchaser pursuant to the terms of the Agreement.

13.    The transactions contemplated by the Agreement are undertaken by the Seller and the Purchaser at arm's-length, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy

16

Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to consum-
mate the sale of the Property shall not affect the va-
lidity of the Sale to the Purchaser, unless such au-
thorization is duly stayed pending such appeal.  The
Purchaser is a purchaser in good faith, within the mean-
ing of section 363(m) of the Bankruptcy Code, of the
Property, and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

      14.  The consideration provided by the Pur-
chaser for the Property under the Agreement is fair and
reasonable and the Sale may not be avoided under section
363(n) of the Bankruptcy Code.

      15.  The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Approval Order shall not diminish or impair
the effectiveness of such provision, it being the intent
of the Court that the Agreement be authorized and ap-
proved in its entirety.

16.    The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

17.    This Court retains exclusive jurisdiction
to interpret, construe, enforce, and implement the terms
and provisions of this Sale Approval Order, the Agree-
ment, all amendments thereto, any waivers and consents
thereunder, and of each of the agreements executed in
connection therewith in all respects, including, but not
limited to, retaining jurisdiction to (a) compel deliv-
ery of the Property to the Purchaser, (b) compel deliv-
ery of the purchase price or performance of other obli-
gations owed to the Seller pursuant to the Agreement, (c)
resolve any disputes arising under or related to the
Agreement, (d) interpret, implement, and enforce the
provisions of this Sale Approval Order, and (e) protect
the Purchaser against any Lien against the Seller or the
Property of any kind or nature whatsoever, except for
Permitted Encumbrances, which Liens, valid and timely
perfected, shall attach to the proceeds of the Sale.

Dated:  Richmond, Virginia
        March __, 2009


        _____
        UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

19

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

**Exhibit 1**

**(Agreement)**