Ian S. Fredericks, Esq.                Dion W. Hayes (VSB No. 34304)
SKADDEN, ARPS, SLATE, MEAGHER &        Douglas M. Foley (VSB No. 34364)
FLOM, LLP                              MCGUIREWOODS LLP
One Rodney Square                      One James Center
PO Box 636                             901 E. Cary Street
Wilmington, Delaware 19899-0636        Richmond, Virginia 23219
(302) 651-3000                         (804) 775-1000

         - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - -x
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08- 35653 (KRH)
et al.,                         :
                                :
           Debtors.             :    Jointly Administered
- - - - - - - - - - - - - - - -x
```

**MOTION OF DEBTORS UNDER BANKRUPTCY CODE SECTION
366 TO MODIFY UTILITY ORDER**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC

hereby move ("Motion") this Court for entry of an order (the "Order"), under section 366 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), modifying the Utility Order (as defined herein).  In support of the Motion, the Debtors respectfully represent:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief requested herein are Bankruptcy Code section 366.

---

Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

2

**BACKGROUND**

**A.   The Bankruptcy Cases.**

3.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.   On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.

**B. The DIP Facility**

7. On November 12, 2008, the Court entered an interim order authorizing the Debtors to enter into a post-petition financing facility (the "DIP Facility"), governed by a credit agreement (the "DIP Credit Agreement") between the Debtors, Bank of America, N.A., as agent (the "DIP Agent"), and the Debtors' post-petition secured lenders (the "DIP Lenders") (D.I. 83).

8. Subsequently, the Debtors amended the DIP Credit Agreement (the "First Amendment"). Among other things, the First Amendment modified the DIP Credit Agreement to expressly provide for a $5 million reserve under the Debtors' general borrowing base (the "Utility Blocked Account"). Additionally, the First Amendment required the Debtors to obtain an order amending the Utility Order to clarify how the Utility Blocked Account was to be established and administered.

**C. The Utilities Proceedings.**

9. On the Petition Date, the Debtors filed a motion, among other things, to furnish utilities with adequate assurance of payment and establish procedures to address additional adequate assurance of payment requests. (D.I. 8, the "Utility Motion").[2] On November

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Motion.

4

12, 2008, the Court entered an order granting the relief requested in the Utility Motion (as corrected by D.I. 832, the "Utility Order").

10. As described above, the First Amendment to the DIP Credit Agreement required that the Debtors correct the Utility Order by clarifying that the Utility Blocked Account was not a segregated account, but rather a reserve under the general borrowing base of the DIP Facility. Thereafter, the Debtors submitted a corrected version of the Utility Order to the Court, and, on December 9, 2008, the Court entered such order.

11. Pursuant to the Utility Order, the Debtors established a reserve under the DIP Credit Agreement in the amount of $5 million (the "Utility Blocked Account"). However, if the Debtors entered into separate agreements with Utility Companies, the Debtors were authorized, but not directed, to reduce the Utility Blocked Account in the amount corresponding to the two-week average pertaining to each such Utility Company.

12. The Utility Blocked Account served two purposes. First, by establishing the Utility Blocked Account, the Debtors were deemed to have "furnished" adequate assurance of payment to all Utility Companies. Like a letter of credit, if the Debtors failed to timely pay for post-petition Utility Services, a Utility Company

to which such payment was due could submit a Payment Request to the Debtors and the DIP Agent.  The DIP Agent was then required satisfy the Payment Request with funds from the Utility Blocked Account and thereafter replenish amounts drawn against such account, provided that the Debtors had sufficient availability under the DIP Facility to re-establish such amount.

13.    Second, the Utility Order established a procedure whereby those Utility Companies that sought additional adequate assurance could submit a request and, if necessary, have their matter heard before the Bankruptcy Court.  To receive such additional assurance, a Utility Company was required to submit an "Additional Adequate Assurance Request" pursuant to and in accordance with the Utility Order.  All "Additional Adequate Assurance Requests" were due on or before December 1, 2008.  For any Utility Company that did not submit such a request, the Utility Blocked Account was deemed satisfactory to such other Utility Companies.

14.    Various Utility Companies submitted Additional Adequate Assurance Requests (the "AAAR Utility Companies"), all of which were resolved by the Debtors with separate agreements ("Adequate Assurance Resolutions").

15.  From time to time, certain Utility Companies were also excluded from the relief granted by the Utility Order (collectively, the "Excluded Utility Companies").  The Debtors entered into separate agreements with the Excluded Utility Companies concerning issues related to Bankruptcy Code section 366 (also referred to as "Adequate Assurance Resolutions").

16.  As a result of the Adequate Assurance Resolutions with the AAAR Utility Companies and the Excluded Utility Companies, such Utility Companies received approximately $2.6 million as adequate assurance of payment and have no rights to the Utility Blocked Account.  Additionally, the Debtors were authorized, but not directed, to reduce the amount of the Utility Blocked Account by not less than approximately $1.1 million, which amount corresponded to the two-week average attributable to the AAAR Utility Companies and the Excluded Utility Companies.

### RELIEF REQUESTED

17.  By this Motion, the Debtors seek entry of an order modifying the Utility Order by altering the nature of the Utility Blocked Account such that the amount is limited to $5 million and is not subject to replenishment.  Given this change in the amount of the

7

Utility Blocked Account, the Debtors further seek to modify the Order to relieve the DIP Agent of certain obligations no longer applicable to the Utility Blocked Account.

**BASIS FOR RELIEF**

18.  In conjunction with this Motion, the Debtors filed a motion to approve a third amendment (the "Third Amendment") to the DIP Credit Agreement.  The Third Amendment provides that the DIP Agent, the DIP Lenders and the Debtors agree that the Utility Blocked Account is modified such that, upon the entry of an interim order amending the Utility Order, the DIP Agent shall fund Utility Blocked Account in the amount of $5 million and hold such funds in a segregated account.  The Third Amendment also provides that the DIP Agent and the DIP Lenders shall be released of any further obligation with respect to the Utility Blocked Account, including, without limitation, any funding or replenishment thereof.  Accordingly, by this Motion, the Debtors' seek entry of an order modifying the Utility Order in satisfaction of their obligation under the

Third Amendment to the DIP Credit Agreement and Bankruptcy Code section 366.

19. Implicit in the Third Amendment is the recognition that the Debtors are winding down operations and, as early as mid-February, will begin to closing their remaining stores, distribution, call, and service centers, and certain other locations. As a result, the Debtors' need for Utility Services at nearly all of their locations will cease in the coming months. In the meantime, notwithstanding the Debtors' intent to timely pay for the Utility Services provided, their obligation to provide adequate assurance of payment under Bankruptcy Code 366 remains.

20. To balance the reality of the Debtors' pending liquidation with the obligation to provide adequate assurance of payment until Utility Services cease, the Debtors propose to modify the Utility Blocked Account as described herein and in the accompanying Order. Initially, the Utility Blocked Account will be funded in the amount of $5 million. Unlike the Utility Blocked Account under the Utility Order, the Utility Blocked Account, as modified, will be an entirely

separate account specifically designated to provide adequate assurance of payment and satisfy Payment Requests of the Utility Companies (other than the AAAR and Excluded Utility Companies) (the "Covered Utility Companies").

21.  Under the Debtors' proposal, the DIP Agent's obligation to satisfy Payment Requests pursuant to the Utility Order would not change.  However, as stated in the Third Amendment, the DIP Agent would no longer have the obligation to replenish the Utility Blocked Account to $5 million as (and if) the Utility Blocked Account is reduced by satisfaction of Payment Requests.

## APPLICABLE AUTHORITY

22.  Under Bankruptcy Code section 366(c)(3)(A), "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of adequate assurance of payment."  11 U.S.C. § 366(c)(3)(A).  See, e.g., In re Haven Eldercare, LLC, 2008 WL 139543 (Bankr. D. Conn. 2008) (holding the modified amount of assurance of payment satisfactory under 366(c)(2) and, accordingly,

granting the debtors' § 366(c)(3)(A) request).  In considering a request, the Court should be guided by the general principle that a debtor is not obligated to guarantee payment.  <u>In re Circuit City Stores, Inc.</u>, 08-35653 (KRH) (Bankr. E.D. Va. Jan. 14, 2008) (stating that "a debtor need not provide utility companies an absolute guarantee of payment.").  Among other things, the Court may consider the Debtors post-petition payment history.  <u>See</u> 11 U.S.C. § 366(c)(3)(A) (providing that the court may not consider pre-petition payment history, but making no reference to considering post-petition payment history).

23. The relief requested in this Motion is appropriate under section 366(c)(3)(A) for four primary reasons.

24. First, and foremost, the Debtors they have been current (or nearly current) in respect of their post-petition payment obligations to the Covered Utility Companies, which total approximately 800 Utility Companies and over 4,000 accounts.  Indeed, since the Petition Date, the Debtors have received few (if any) valid Payment Requests.  Given the Debtors' strong post-petition payment history, there is no reason to anticipate that modifying the Utility Blocked Account

11

will be inadequate to assure post-petition payment to the Covered Utility Companies.

    25. Second, the Utility Blocked Account covers less Utility Companies than originally estimated and has a cushion of approximately $1.1 million.  When the Debtors first established the Utility Blocked Account, they intended for such account to satisfy Payment Requests of and provide adequate assurance for all Utility Companies.  However, since the Utility Blocked Account was established, the Debtors have entered into Adequate Assurance Resolutions with the Excluded Utility Companies and the AAAR Utility Companies.  Pursuant to the Adequate Assurance Resolutions, the Excluded Utility Companies and the AAAR Utility Companies have no rights in the Utility Blocked Account, relying instead on entirely different security for adequate assurance of payment. As a result, the number of Utility Companies with rights to the Utility Blocked Account is significantly fewer than on the Petition Date.  By contrast, the amount of the Utility Blocked Account has not been reduced by the amount corresponding to the two week average for the AAAR and

Excluded Utilities.  Thus, in certain respects, the Covered Utility Companies are receiving greater adequate assurance of payment protections under the modified Utility Blocked Account.

26.  Third, the Debtors should have adequate funds to continue to meet their post-petition payment obligations because the Debtors will be reimbursed for a significant portion of such obligations.  As this Court is well aware, on January 17, 2009, the Debtors commenced going out of business sales at their remaining 567 retail store locations.  Under the Agency Agreement, the Agent is unconditionally obligated to reimburse the Debtors for, among other expenses, utility charges.  Thus, the Debtors have the resources to continue to meet their post-petition payment obligations to their Utility Companies.

27.  Finally, in the coming weeks, the Debtors will be closing their retail stores, as well as most distribution, call, and services centers and other locations.  With the Debtors' need for Utility Services quickly waning, the risk of non-payment is further reduced.

13

28. Because the Debtors will be closing their remaining retail locations in the coming weeks and have (or will) cease operations at nearly all of their other remaining locations, the Debtors further request that as Utility Services are terminated at such stores and locations the Debtors should be permitted to reduce the amount of the Utility Blocked Account accordingly. Once all such Utility Services are terminated, the Debtors will maintain sufficient funds in the Utility Blocked Account to cover the two week average corresponding to Utility Services provided by the remaining Covered Utility Companies.

29. Even if the relief requested is granted, the Covered Utility Companies' are not without rights. Indeed, any such Utility Company may move this Court for relief to further modify the adequate assurance of payment provided by the Debtors under Bankruptcy Code section 366(c)(3)(A).

30. For the reasons stated above, this Court should modify the Utility Blocked Account consistent with the relief requested herein.

**NOTICE**

31. Notice of this Motion has been provided to those parties who have requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130; the "Case Management Order")) and the Covered Utility Companies. The Debtors submit that, under the circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

32. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

33. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: February 12, 2009
      Richmond, Virginia  SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM, LLP
                                     Gregg M. Galardi, Esq.
                                     Ian S. Fredericks, Esq.
                                     P.O. Box 636
                                   Wilmington, Delaware 19899-0636
                                   (302) 651-3000

                                         - and -

                                   SKADDEN, ARPS, SLATE, MEAGHER &
                                   FLOM, LLP
                                   Chris L. Dickerson, Esq.
                                   333 West Wacker Drive
                                   Chicago, Illinois 60606
                                   (312) 407-0700

                                         - and -

                                   MCGUIREWOODS LLP

                                   _/s/ Douglas M. Foley___
                                   Dion W. Hayes (VSB No. 34304)
                                   Douglas M. Foley (VSB No. 34364)
                                   One James Center
                                   901 E. Cary Street
                                   Richmond, Virginia 23219
                                   (804) 775-1000

                                   Counsel for Debtors and Debtors
                                   in Possession