Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

                  - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                         :    Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :    Case No. 08-35653 (KRH)
et al.,                        :
                               :
            Debtors.           :    Jointly Administered
- - - - - - - - - - - - - - - x

**SECOND AMENDED ORDER (1) APPROVING SALE OF AIRCRAFT FREE
AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUM-
BRANCES; AND (2) GRANTING RELATED RELIEF**

          This matter came before the Court on the Debt-

ors' Motion for Orders Pursuant to Bankruptcy Code Sec-

tions 105, 363 and 364 (I)(A) Approving Procedures in

Connection with Sale of All or Substantially All of the

Business (B) Authorizing Debtors to Enter into Stalking

Horse Agreements in Connection with Store Closing and
Miscellaneous Asset Sales or Stalking Horse or Financing
Agreements in Connection with Going Concern Transac-
tions, (C) Approving Payment of Termination Fees in Con-
nection Therewith, and (D) Setting Auction and Hearing
Dates, (II) Approving Sale of Debtors Assets Free and
Clear of All Interests and (III) Granting Related Relief
(the "Sale Motion").[1]  Pursuant to the Sale Motion, the
debtors and debtors in possession (collectively, the
"Debtors") sought, *inter alia*, entry of orders (I)(A)
approving procedures in connection with soliciting bids
for a sale of all or substantially all of the business
or additional post-petition financing for the business,
(B) authorizing the Debtors to enter into stalking horse
or financing agreements in connection with Going Concern
Transactions or stalking horse agreements in connection
with Store Closing and Miscellaneous Asset Sales and,
(C) approving the Debtors' payment of a Termination Fee
in connection therewith, and (D) scheduling Auction and
Hearing Dates, (II) approving the sale of the Debtors'

---

[1]   Capitalized terms not otherwise defined herein shall have the
      meanings ascribed to such terms in the Sale Motion.

assets free and clear of all interests, and (III) grant-
ing related relief.

On January 12, 2009, the Court signed the Or-
der (I) Approving Procedures in Connection with Sale of
All or Substantially All of the Business, (II) Authoriz-
ing *Debtors to Enter into Stalking Horse Agreements in*
Connection with Store Closing and Miscellaneous Asset
Sales or Stalking Horse or Financing Agreements in Con-
nection with Going Concern Transactions, (III) Approving
Payment of Termination Fees in Connection Therewith,
(IV) Setting Auction and Hearing Dates Pursuant to Bank-
ruptcy Code Sections 105 and 363 and (V) Granting Re-
lated Relief (the "Sale Procedures Order"), authorizing
the Debtors to proceed with the sale procedures set
forth therein (the "Bidding Procedures") and approving
the Termination Fee and the form of notice of the hear-
ing on the Sale Motion.

The Court having conducted a hearing on the
Sale Motion on January 16, 2009 (the "Sale Hearing); and
all parties in interest having been heard, or having had
the opportunity to be heard, regarding the Aircraft Pur-
chase and Sale Agreement (the "Purchase Agreement", at-

tached hereto as Exhibit A), and the transactions con-

templated thereby (the "Transactions")

The Court having entered the Order and the

Amended Order (1) Approving Sale Of Aircraft Free And

Clear Of All Liens, Claims, Interests And Encumbrances;

And (2) Granting Related Relief (the "Amended Order");

and, following entry of the Amended Order, the Debtors

and the Purchaser having entered into the first amend-

ment to the Purchaser Agreement (the "First Amendment"

and together with the Purchase Agreement, the "Amended

Purchase Agreement"), a copy of which is attached as Ex-

hibit B; and the Court having reviewed and considered

the Sale Motion, and the arguments of counsel made, and

the evidence adduced, at the Sale Hearing; and it ap-

pearing that the relief requested in the Sale Motion is

in the best interests of the Debtors, their estates,

their creditors, and all other parties in interest; and

upon the record of the Sale Hearing and these chapter 11

cases, and after due deliberation thereon, and good

cause appearing therefore; **THE COURT HEREBY FINDS DETER-**

**MINES AND CONCLUDES THAT:**

A.   The findings and conclusions set forth
herein constitute the Court's findings of fact and con-
clusions of law pursuant to Bankruptcy Rule 7052.  To
the extent any of the following findings of fact are de-
termined to be conclusions of law, they are adopted, and
shall be construed and deemed, conclusions of law.  To
the extent any of the following conclusions of law are
determined to be findings of fact, they are adopted, and
shall be construed and deemed, as findings of fact.

B.   The Court has jurisdiction to hear and
determine the Sale Motion and to grant the relief re-
quested in the Sale Motion pursuant to 28 U.S.C.
§§ 157(b)(1) and 1334(b).  Venue of these cases and the
Sale Motion in this district is proper under 28 U.S.C.
§§ 1408 and 1409.  This is a core proceeding within the
meaning of 28 U.S.C. § 157(b)(2).

C.   The statutory predicates for the relief
requested in the Sale Motion are Bankruptcy Code sec-
tions 105 and 363 and Bankruptcy Rules 4001 and 6004.

D.   Notice of the Sale Motion and entry of
the Bidding Procedures Order has been provided to those
parties entitled to notice under the Debtors' Order Pur-

suant to Bankruptcy Code Sections 102 and 105, Bank-

ruptcy Rules 2002 and 9007, and Local Bankruptcy Rules

2002-1 and 9013-1 Establishing Certain Notice, Case Man-

agement, and Administrative Procedures (Docket No. 130;

the "Case Management Order"), as well as (a) all enti-

ties known to have expressed an interest in a transac-

tion regarding the Debtors' assets, stores or inventory

during the past three (3) months; (b) all landlords and

entities known to have an interest in any of the assets

to be sold; and (c) all federal, state, and local regu-

latory or taxing authorities or recording offices that

have a reasonably known interest in the relief requested

through the Sale Motion.

         E.    Based upon the affidavits of service

filed with the Court: (a) notice of the Sale Motion, the

Bidding Procedures, the Sale Procedures Order, and the

Sale Hearing was adequate and sufficient under the cir-

cumstances of these chapter 11 cases and these proceed-

ings and complied with the various applicable require-

ments of the Bankruptcy Code and the Bankruptcy Rules;

and (b) a reasonable opportunity to object and be heard

with respect to the Sale Motion and the relief requested

6

therein was afforded to all interested persons and enti-
ties.

F.   The Aircraft is property of the Debtors'
estates and title thereto is vested in the Debtors' es-
tates.

G.   The Bidding Procedures were substantively
and procedurally fair to all parties, were consented to
by all parties in the chapter 11 cases, and were the re-
sult of intense arms length negotiations among the Debt-
ors, the Committee, and the DIP Agent.

H.   The Debtors and their professionals mar-
keted the Aircraft and conducted the sale process in ac-
cordance with the Bidding Procedures. Based upon the
record of these proceedings, all creditors and other
parties-in-interest and all prospective purchasers have
been afforded a reasonable and fair opportunity to bid
for the Aircraft.

I.   After an auction held on January 14,
2009, the Debtors determined that the highest and best
Qualified Bid was that of TACALA, LLC (the "Purchaser").

J.   At the Auction, Purchaser bid $4,750,000
(the "Bid") for the Aircraft, which Bid was a valid and

proper offer pursuant to the Bidding Procedures and

Bankruptcy Code Sections 363(b) and 363(k).

K.    Subject to the entry of this Order, each

Debtor (i) has full power and authority to execute the

Amended Purchase Agreement and all other documents con-

templated thereby, and the sale of the Aircraft by the

Debtors has been duly and validly authorized by all nec-

essary company action of each of the Debtors, (ii) has

all of the power and authority necessary to consummate

the Transactions contemplated by the Amended Purchase

Agreement, (iii) has taken all company action necessary

to authorize and approve the Amended Purchase Agreement

and the consummation by such Debtors of the Transac-

tions.  No consents or approvals, other than those ex-

pressly provided for in the Amended Purchase Agreement

or this Order, are required for the Debtors to close the

sale of the Aircraft (the "Sale") and consummate the

Transactions.

L.    Entry into the Amended Purchase Agreement

and consummation of the Transactions constitute the ex-

ercise by the Debtors of sound business judgment and

such acts are in the best interests of the Debtors,

8

their estates and creditors, and all parties in inter-
est. The Court finds that the Debtors have articulated
good and sufficient business reasons justifying the Sale
of the Aircraft to Purchaser.  Such business reasons in-
clude, but are not limited to, the following: (i) the
Amended Purchase Agreement constitutes the highest and
best offer for the Aircraft; (ii) the Amended Purchase
Agreement and the closing (the "Closing") thereon will
present the best opportunity to realize the value of the
Aircraft; (iii) there is substantial risk of deteriora-
tion of the value of the Aircraft if the Sale is not
consummated promptly; and (iv) the Amended Purchase
Agreement and the Closing thereon will provide a greater
recovery for the Debtors' creditors than would be pro-
vided by any other presently available alternative.

          M.    The Amended Purchase Agreement and the
Transactions were negotiated and have been and are un-
dertaken by the Debtors and Purchaser at arms' length
without collusion or fraud, and in good faith within the
meaning of Sections 363(m) and (n) of the Bankruptcy
Code.  An auction was conducted in accordance with the
Sale Procedures Order on January 14, 2009, at which Pur-

chaser was declared the highest and best bidder. The auction was conducted at arms' length and in good faith within the meaning of Section 363(m) of the Bankruptcy Code. As a result of the foregoing, the Debtors and Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code. Moreover, neither the Debtors nor Purchaser engaged in any conduct that would cause or permit the Amended Purchase Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

N.    The total consideration provided by Purchaser for the Aircraft is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia ((a), (b) and (c) collectively, "Value"), for the Aircraft.

10

O.    Purchaser would not have entered into the Amended Purchase Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Aircraft to Purchaser was not free and clear of all liens, claims, interests and encumbrances (the "Liens, Claims, Interests and Encumbrances"), if any, or if Purchaser would, or in the future could, be liable for any of such Liens, Claims, Interests and Encumbrances.  A sale of the Aircraft other than one free and clear of Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale.  Therefore, the Sale contemplated by the Amended Purchase Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

P.    The Debtors may sell the Aircraft free and clear of all Liens, Claims, Interests and Encumbrances, if any, because, with respect to each creditor asserting a Lien, Claim or Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5)

11

has been satisfied.   All holders of Liens who did not

object or withdrew their objections to the Sale are

deemed to have consented to the Sale pursuant to 11

U.S.C. § 363(f)(2) and all holders of Liens are ade-

quately protected by having their Liens, Claims, Inter-

ests and Encumbrances if any, attach to the cash pro-

ceeds of the Sale ultimately attributable to the prop-

erty against or in which they claim an interest with the

same priority, validity, force, and effect as they at-

tached to such property immediately before the closing

of the Sale.

Q.   There was no evidence of insider influ-

ence or improper conduct by Purchaser or any of its af-

filiates in connection with the negotiation of the

Amended Purchase Agreement with the Debtors.   There was

also no evidence of fraud or collusion among Purchaser

and its affiliates and any other bidders for the Debt-

ors' assets, or collusion between the Debtors and Pur-

chaser or its affiliates to the detriment of any other

bidders.

R.   At no time was Purchaser or its affili-

ates an "insider" or "affiliate" of any of the Debtors,

12

as those terms are defined in the Bankruptcy Code, and
no common identity of incorporators, directors or stock-
holders existed between Purchaser or its affiliates and
any of the Debtors.  The Transactions do not amount to a
consolidation, merger or de facto merger of Purchaser
and the Debtors' and/or the Debtors' estates, there is
not substantial continuity between Purchaser and the
Debtors, there is no continuity of enterprise between
the Debtors and Purchaser, Purchaser is not a mere con-
tinuation of the Debtors or the Debtors' estates, and
Purchaser does not constitute a successor to the Debtor
or the Debtors' estates.

S.   Except as otherwise expressly provided in
the Amended Purchase Agreement, the transfer of the Air-
craft to Purchaser will be a legal, valid, and effective
transfer of the Aircraft, and will vest Purchaser with
all right, title, and interest of the Debtors to the
Aircraft free and clear of all Liens, Claims, Interests
and Encumbrances, if any, including but not limited to
all Claims arising under doctrines of successor liabil-
ity.

T.    Approval of the Amended Purchase Agree-
ment and consummation of the Sale of the Aircraft at
this time are in the best interests of the Debtors,
their creditors, their estates, and all parties in in-
terest.  Time is of the essence in consummating the
Sale.  In order to maximize the value of the Debtors'
assets, it is essential that the sale of the Aircraft
occur as soon as possible.  Accordingly, there is cause
to lift the stay contemplated by Bankruptcy Rule 6004.

Based upon all of the foregoing, and after due
deliberation, **THE COURT ORDERS, ADJUDGES, AND DECREES
THAT**:

1.    The relief requested in the Sale Motion
is granted with respect to the Amended Purchase Agree-
ment in the manner and to the extent provided herein.

2.    The Amended Purchase Agreement, the Bid,
and the Sale of the Aircraft to Purchaser, are hereby
approved and authorized in all respects.

3.    Pursuant to 11 U.S.C. §§ 363(b) and
363(f), upon the consummation of the Agreement, the
Seller's right, title, and interest in the Aircraft
shall be transferred to the Purchaser free and clear of

14

all Liens, Claims, Interests and Encumbrances with all

such Liens, Claims, Interests and Encumbrances to attach

to the cash proceeds of the Sale in the order of their

priority, with the same validity, force, and effect

which they had as against the Property immediately be-

fore such transfer, subject to any claims and defenses

the Seller may possess with respect thereto.

4.    Except as expressly provided in the

Amended Purchase Agreement, Purchaser is not assuming

nor shall it or any affiliate of Purchaser be in any way

liable or responsible, as a successor or otherwise, for

any liabilities, debts, or obligations of the Debtors in

any way whatsoever relating to or arising from the Debt-

ors' ownership or use of the Aircraft prior to the con-

summation of the Transactions contemplated by the

Amended Purchase Agreement, or any liabilities calcula-

ble by reference to the Debtors or their operations or

the Aircraft, or relating to continuing or other condi-

tions existing on or prior to the Closing, which li-

abilities, debts, and obligations are hereby extin-

guished insofar as they may give rise to liability, suc-

15

cessor or otherwise, against Purchaser or any affiliate
of the Purchaser.

     5.    The consideration provided by Purchaser
for the Aircraft under the Amended Purchase Agreement is
fair and reasonable and shall be deemed for all purposes
to constitute Value under the Bankruptcy Code and any
other applicable law, and the Sale may not be avoided,
or costs or damages imposed or awarded, under Section
363(n), or any other provision of the Bankruptcy Code.

     6.    The Transactions are undertaken by Pur-
chaser in good faith and Purchaser is a purchaser in
good faith of the Aircraft as that term is used in Sec-
tion 363(m) of the Bankruptcy Code. Purchaser is enti-
tled to all of the protections afforded by Section
363(m) of the Bankruptcy Code; accordingly, the reversal
or modification on appeal of the authorization provided
herein to consummate the Sale shall not affect the va-
lidity of the Sale of the Aircraft to Purchaser, unless
such authorization is duly stayed pending such appeal.

     7.    Pursuant to sections 105 and 363 of the
Bankruptcy Code, the Debtors and the Purchaser are each
hereby authorized and directed to take any and all ac-

tions necessary or appropriate to: (i) consummate the sale of the Aircraft to Purchaser (including, without limitation, to convey to Purchaser the Aircraft) and the Closing of the Sale in accordance with the Sale Motion, the Amended Purchase Agreement and this Order; and (ii) perform, consummate, implement and close fully the Amended Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Amended Purchase Agreement, including without limitation, take all actions and execute all documents reasonably necessary or appropriate to effectuate any obligations under the Amended Purchase Agreement and to execute and deliver such other documents and take such other actions as are necessary to effectuate the Sale contemplated by the Amended Purchase Agreement.  The parties shall have no obligation to proceed with the Closing of the Amended Purchase Agreement until all conditions precedent to their obligations to do so, including completion of the pre-purchase evaluation as set forth in Section 3 thereof, have been met, satisfied or waived.

8.   Purchaser is authorized to remit or cause
to be remitted at Closing (or at such other times as
provided in the Amended Purchase Agreement), in accor-
dance with the terms of the Amended Purchase Agreement,
to the Debtors, $4,500,000.

9.   No bulk sales law or any similar law of
any state or other jurisdiction shall apply in any way
to the Sale and the Transactions.

10.   The Debtors are authorized to pay fees to
their broker that become due and payable as a result of
the sale of the Aircraft.

11.   On the Closing Date, this Order shall be
construed and shall constitute for any and all purposes
a full and complete general assignment, conveyance and
transfer of the Aircraft or a bill of sale transferring
good and marketable title in such Aircraft to Purchaser
on the Closing Date pursuant to the terms of the Amended
Purchase Agreement.

12.   This Order is and shall be binding upon
and govern the acts of all entities, including, all fil-
ing agents, filing officers, title agents, title compa-
nies, recorders of mortgages, recorders of deeds, regis-

trars of deeds, administrative agencies or units, gov-
ernmental departments or units, secretaries of state,
federal, state and local officials and all other persons
and entities who may be required by operation of law,
the duties of their office, or contract, to accept,
file, register or otherwise record or release any docu-
ments or instruments, or who may be required to report
or insure any title or state of title in or to the Air-
craft conveyed to Purchaser.  All such entities de-
scribed above in this paragraph are authorized and spe-
cifically directed to strike all recorded Liens, Claims,
Interests and Encumbrances against the Aircraft from
their records, official and otherwise.

13.  Each and every federal, state and govern-
mental agency or department, and any other person or en-
tity, is hereby directed to accept any and all documents
and instruments necessary and appropriate to consummate
the transactions contemplated by the Amended Purchase
Agreement.

14.  This Order and the Amended Purchase
Agreement shall be binding in all respects upon all
creditors and equityholders of any of the Debtors, the

19

Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Amended Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.

15.   The Amended Purchase Agreement and any related agreements, documents, or other instruments may be modified amended, or supplemented by the parties thereto, in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

16.   This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rule 6004(g) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

17.   The provisions of this Order are nonseverable and mutually dependent.

20

18.   To the extent permitted by section 525 of
the Bankruptcy Code, no governmental unit may revoke or
suspend any Permit relating to the operation of the Air-
craft sold, transferred or conveyed to Purchaser on ac-
count of the filing or pendency of these Chapter 11
cases or the consummation of the Sale.

19.   Each and every federal, state and local
government agency or department is directed to accept
any and all documents and instruments necessary and ap-
propriate to consummate the transfer of any of the Air-
craft, all without imposition or payment of any stamp
tax, transfer tax, or similar tax.

20.   The failure specifically to include or
make reference to any particular provisions of the
Amended Purchase Agreement in this Order shall not di-
minish or impair the effectiveness of such provision, it
being the intent of the Court that the Amended Purchase
Agreement is authorized and approved in its entirety.

21.   The Court retains jurisdiction, even af-
ter the Closing of these chapter 11 cases, to:
(1) interpret, implement and enforce the terms and pro-
visions of this Order (including the injunctive relief

21

provided in this Order) and the terms of the Purchase

Agreement, all amendments thereto and any waivers and

consents thereunder; (2) protect Purchaser, or the Air-

craft, from and against any of the Liens, Claims, Inter-

ests and Encumbrances; (3) compel delivery of all Air-

craft to Purchaser; and (4) resolve any disputes arising

under or related to the Amended Purchase Agreement, the

Sale or the Transactions, or Purchaser's peaceful use

and enjoyment of the Aircraft.

Dated:   Richmond, Virginia
         February ___, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

    Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                    /s/ Douglas M. Foley
                    Douglas M. Foley

## **Exhibit A**

## AIRCRAFT PURCHASE & SALE AGREEMENT

This Aircraft Purchase Agreement is made between: TACALA, LLC, **"Purchaser"**, a limited liability company with its address is 4268 Cahaba Heights Court, Birmingham, AL 35243 (telephone: 205-443-9600, fax 205-443-9796); and Circuit City Stores, Inc. **"Seller"**, a Delaware corporation with its address is 9950 Mayland Drive, Richmond, VA 23233 (telephone: 804-486-4014, fax 804-486-4877; and Insured Aircraft Title Services **"Escrow Agent"**, an Oklahoma corporation with an address of 4848 S.W. 36th Street, Oklahoma City, OK 73179 (telephone 800-654-4882, fax 405-681-9299 fax).

Whereas the Seller agrees to sell and Purchaser agrees to purchase that certain 1996 Hawker 800XP, serial number 258293 registered as N150NC, with two Honeywell TFE 731 engines, serial numbers P107136C and P107238C, together with all of the books, logs, tags, flight and operation manuals, checklists, wiring diagrams, maintenance manuals and any other records, paperwork, warranty documentation and written data related thereto, shall hereinafter collectively be referred to as the **"Aircraft"**.

Now therefore, in consideration of the terms and conditions herein contained, the parties agree as follows:

1. <u>Purchase Price</u>.   $4,750,000 (Four Million Seven Hundred Fifty Thousand US Dollars) paid as provided herein.

2. <u>Terms of Payment</u>.   Prior to the execution of this contract, Purchaser has placed a refundable deposit in the amount of $100,000.00 (One Hundred Thousand US Dollars) (the **"Deposit"**) into the Escrow Agent's account.  Upon Purchaser's acceptance of delivery of the Aircraft, as evidenced by Purchaser's execution of the attached Aircraft Delivery in the form shown on Attachment B, Purchaser shall pay the balance of the purchase price by wire transfer of immediately available funds in the amount of $4,650,000 (Four Million Six Hundred Fifty Thousand US Dollars), to the Escrow Agent, on receipt of which the Escrow Agent shall simultaneously release the title documents to Purchaser and the Purchase Price as directed by Seller.

3. <u>Pre-purchase Evaluation</u>.

A.) Seller has made the Aircraft available to Purchaser at Birmingham, Alabama at Purchaser's expense, for a visual inspection of the Aircraft and its records.

B.) Purchaser shall have the right to conduct, at Purchaser's expense, a pre-purchase inspection at the Hawker Beechcraft service center located in Little Rock, Arkansas (the **"Inspection Facility"**), that will consist of a standard Hawker Beechcraft pre-purchase inspection, the scope of which is attached hereto as Exhibit D, including flight test (the **"Inspection"**).  Seller shall be responsible for movement of the Aircraft to the Inspection Facility.  Purchaser agrees to pay the cost of the pre-purchase inspection and Seller agrees to repair all discrepancies at its expense deemed as "unairworthy" in accordance with the Hawker 800XP Maintenance Manual along with all items required to be corrected in order to make the Aircraft conform to the condition described herein (the "Discrepancies") .  Purchaser's costs for these inspections must be paid in advance of initiating the Inspection.

C.)  Upon completion of the Inspection, by the Inspection Facility, , a detailed list of Discrepancies revealed during the Inspection, as required in paragraph B. above will be

Seller BH    Purchaser

provided to the parties listing Discrepancies (the "List"). These Discrepancies shall be repaired and completed by the Inspection Facility.  The Inspection Facility will be sole determiner of what shall be deemed repair and completion of the Discrepancies on the List.

D.) Within five (5) business days following receipt of the List, Purchaser will deliver to Seller and Escrow Agent its acceptance or rejection of the Aircraft, in writing, by executing "Attachment A" ("Aircraft Acceptance/Rejection") indicating in its sole discretion Purchaser's: rejection of the Aircraft; acceptance of the Aircraft as is; or acceptance of the Aircraft subject to Seller's repair of the Discrepancies appearing on the List, as limited below.  Failure by Purchaser to accept the Aircraft within five (5) business days following its receipt of the List shall constitute its rejection of the Aircraft.  Upon Seller's receipt of the Aircraft Acceptance, Seller shall authorize the Inspection Facility to commence the corrective work on the Discrepancies for Seller's account up to a maximum of $150,000 and the Deposit shall become nonrefundable to Purchaser, subject to the terms and conditions of this contract, to be applied to the Purchase Price at Closing.  Seller reserves the right, but is not required to, to withdraw the Aircraft and terminate this Agreement should the discrepancies identified exceed $150,000.  In the event that Seller terminates this contract as provided in the preceding sentence, the Deposit shall be immediately returned to Purchaser and Seller shall reimburse Purchaser for all documented costs for the visual inspection and the cost of the inspection, and neither party shall have any obligation to the other with respect to the subject matter of this contract.  In the event Seller exercises the right to terminate this contract, then Purchaser may elect to agree to pay such cost to correct discrepancies in excess of $150,000, by notifying Seller of Purchaser's election to pay such excess cost.  In the event Purchaser makes such election, this contract shall not be terminated.

E.) Absent Aircraft Acceptance, this contract shall terminate, and, provided that the Inspection Facility has issued to Seller a statement confirming that Purchaser has paid all costs and expenses of the Inspection, the Escrow Agent shall return the Deposit to Purchaser less the costs of positioning the Aircraft back to Seller's operating base (such rate shall be defined as two (2) times the cost of fuel);, subject to the foregoing.  Purchaser agrees that if the Inspection Facility does not issue a statement to Purchaser that the cost and expense of the Inspection have been paid, such costs and expenses shall be paid from the Deposit held by the Escrow Agent.

F) Should Purchaser reject the Aircraft because the Discrepancies identified on the List, subject to the $150,000 limit set forth in paragraph 3 D above, have not been repaired due to Seller's failure to correct those items, this contract shall terminate and Purchaser shall be relieved of any financial obligation to pay the costs associated with the cost of positioning the Aircraft to the Inspection Facility and its return to the operating base and the Deposit shall be fully refundable to Purchaser.

G.) Purchaser shall pay the cost of the movement of the Aircraft (two (2) times the cost of fuel) from the Inspection Facility if the Aircraft is rejected after the Aircraft Acceptance form has been executed and provided Seller has complied with its duties set forth herein.

4.  Closing.

After Aircraft Acceptance, and prior to closing, Seller will deliver to the Escrow Agent a fully executed FAA Aircraft Bill of Sale, a warranty bill of sale in the form of Attachment C and Release(s) of Lien(s) and/or all such other documents as may be necessary for Aircraft

Seller BHR                                              Purchaser

title to pass from Seller to Purchaser free and clear of any notations, claims, clouds, liens and/or encumbrances. Closing shall take place within five (5) business days following *notification from the Inspection Facility to Seller and Purchaser that the Aircraft is ready for delivery* as evidenced by a logbook entry returning the Aircraft to service, unless agreed otherwise in writing by both Parties. Purchaser shall execute the attached Aircraft Delivery in the form shown on Attachment B. Closing will take place at the New Castle County Airport (ILG), Wilmington, Delaware or other mutually agreeable location to be determined by Purchaser (the "Delivery Location"). The cost of positioning the Aircraft to a Delivery Location other than the Inspection Facility shall be born by the Purchaser (at a rate of two (2) times the cost of fuel, plus the cost of returning the Seller's flight crew to Seller's domicile). Seller agrees to not be unreasonable in its approval of an alternate Delivery Location, which location will be chosen by Purchaser taking into consideration the taxation effects of the Delivery Location.

The Aircraft when delivered shall be a) current on the manufacturer's recommended maintenance program, with all calendar and hourly inspections current through the projected date of delivery; b) with all systems functioning in accordance with the manufacturer's specifications; c) with all FAA Airworthiness Directives and manufacturer's mandatory service bulletins complies with, with no operational limitations issued against the Aircraft or non-standard repetitive inspection intervals; d) free of damage history or material corrosion; e) enrolled and current on CAMP and the Honeywell MSP program as it relates to the engines and APU. Aircraft shall be transferred with all remaining and applicable manufacturer and vendor warranties transferred to Purchaser to the extent they are transferable at Seller's expense.

Certificates and Taxes.   Seller is responsible for all taxes and duties up to the date of closing. Purchaser is responsible for all taxes and duties as a result of this sale and thereafter. Purchaser shall remit to Seller any sales tax that Seller is required to collect under applicable State law or present to Seller a sales tax exemption certificate that is acceptable to Seller, on or before the day of Closing.

Title and Liens.   Seller represents and warrants that it has good title to the Aircraft and that all necessary legal steps have been taken by Seller to authorize and complete transfer of title to Purchaser pursuant to this agreement. Seller further represents and warrants that the Aircraft shall be free of all liens and encumbrances upon sale and delivery to Purchaser and that the Seller agrees to defend Purchaser's title after closing from and against all claims created by Seller. This warranty and covenant shall survive closing. Purchaser shall accept and Seller shall provide the Warranty Bill of Sale as set forth in Attachment C. Purchaser and Seller will split all closing costs and fees of the Escrow Agent.

5. Acceptance of Condition of Aircraft.  Purchaser agrees to accept the Aircraft in an "As is, Where is" condition. PURCHASER HEREBY ACKNOWLEDGES THAT SELLER MAKES NO WARRANTY OF MERCHANTABILITY OF THE AIRCRAFT NOR OF ANY EQUIPMENT IN IT OR OTHERWISE INCLUDED IN THIS SALE, AND FURTHER, THAT SELLER MAKES NO WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE WITH RESPECT TO THE AIRCRAFT. Purchaser understands that Seller is neither manufacturer nor has been the sole owner of this Aircraft. Purchaser hereby further acknowledges that SELLER MAKES NO WARRANTIES WHATSOEVER, EITHER EXPRESSED OR IMPLIED, WITH REGARD TO THE AIRCRAFT, ITS ENGINES, ACCESSORIES, LOG BOOKS, AND INSTALLED EQUIPMENT, PURCHASER HEREBY

Seller _BHG_                                          Purchaser

DISCLAIMS ALL WARRANTIES RESPECTING THIS AIRCRAFT EXCEPT THE WARRANTY OF TITLE SET FORTH ABOVE.

6. Governing Law. The laws of the State of New York, excluding their conflict of law statutes and doctrines, shall govern this contract and this transaction, and the parties further agree that venue for any matter relating to this contract shall be in the State of New York.

7. Default. Upon failure of Purchaser, without default or delay by Seller, to purchase the Aircraft by closing date, Seller may elect to cancel this contract. The Seller retains the right to dispose of the Aircraft with no further liability in accordance with this contract. The Deposit will be retained as liquidated damages and Seller waives any other remedies that may be available to Seller at law or in equity.

Upon failure of the Seller, without default of Purchaser, to comply with the terms of this contract and deliver the Aircraft and accompanying documents as provided herein, with repairs completed as required herein, Purchaser may elect to cancel this contract and the deposit will be immediately refunded in full to Purchaser and Seller shall pay to Purchaser liquidated damages in the amount of $100,000 in addition to reimbursement to Purchaser of the cost of the Inspection. Purchaser acknowledges and represents that Purchaser's receipt of the Deposit and the liquidated damages shall be the sole remedy available to Purchaser in the event that Seller defaults on Seller's obligations under this contract and Purchaser waives any other remedies that may be available to Purchaser at law or in equity.

8. Excusable Delay. The Seller and Purchaser shall not be liable for any failure or delay in performing any of their obligations hereunder due to an act of God, the public enemy, strike or labor dispute, governmental regulation or priorities and a force majeure event not involving the fault or negligence of the Seller or Purchaser for a period of thirty (30) days from such occurrence; in the event of any of the preceding occurrences, Purchaser at its option may cancel this contract whereupon the Deposit shall be returned by the Escrow Agent to Purchaser and upon delivery of the Deposit to Purchaser this contract shall terminate and be of no further force or effect.

9. Assignability and Modification. This Agreement shall not be assigned or modified or amended except by the mutual consent of the parties in writing' provided, however, that Seller hereby consents to the assignment of Purchaser's rights in the Agreement to an affiliate entity of the Purchaser, including a Delaware entity to be formed and comprised of substantially the same owners as Purchaser.

10. Partial Illegality. If any one or more provisions of this contract shall be found to be illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired.

11. Cape Town (International Registry). The transaction contemplated by the Agreement may be subject to the Convention on International Interests in Mobile Equipment otherwise referred to as "The Cape Town Treaty". Seller will co-operate with Purchaser in order to register the FAA Bill-of-Sale as a Contract of Sale (as defined in the Cape Town Treaty) on the International Registry (established pursuant to the Cape Town Treaty). However, Seller will not consent to a registration on the International Registry until such time as Seller has received payment in full under this Agreement. Purchaser hereby acknowledges and agrees that, without specific authorization in writing from Seller, Purchaser will not register, or consent to or allow any registration whatsoever (including a registration of a prospective

Seller BHZ                                              Purchaser

International interest or prospective contract of sale) against the Aircraft pursuant to the *Cape Town Treaty*. Purchaser and Seller shall each take any and all action necessary to establish an account on the International Registry as a Transaction User Entity, appoint an Approved Administrator User, and designate the Escrow Agent as its Professional Unser Entity to comply with the *Cape Town Treaty*. At closing, Seller will consent to the registration described herein in accordance with the *Cape Town Treaty*.

12. <u>Seller's Warranties</u>: As a material inducement to Purchaser to enter into this Agreement and to consummate the transactions contemplated hereby, Seller hereby represents and warrants to Purchaser as follows:

    a.  Seller is a Delaware corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Seller has all requisite corporate power to execute and deliver this Agreement, subject to (b) below, and, subject to the fulfillment of waiver (to the extent legally permitted) of conditions precedent to the Seller's obligations hereunder to carry out its obligations hereunder. The execution and delivery of this Agreement and the due consummation of Seller of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of Seller and this Agreement constitutes (and each document and instrument contemplated by this Agreement to be delivered to Purchaser, when executed and delivered in accordance with the provisions hereof, will constitute) a valid and legally binding obligation of Seller enforceable in accordance with its terms.

    b.  Intentionally Left Blank

    c.  Seller has good, valid and marketable title to the Aircraft, and the Aircraft is free and clear of all mortgages, liens, taxes, charges, encumbrances, judgments, notations and claims of every nature whatsoever, except as noted in (b) above.

    d.  The Aircraft has no known major damage history or corrosion.

    e.  During the time Seller has owned the Aircraft, Seller has not utilized the Aircraft for any unlawful purposes to the best of Seller's knowledge and belief, and knows of no such use prior to the time Seller acquired title to the Aircraft.

    f.  The Aircraft's logs and records are complete and accurate to the best of Sellers knowledge since the Aircraft was new.

    g.  There have been no improvements, alterations or repairs to the Aircraft for which the costs thereof remain unpaid.

    h.  At Closing there will be no outstanding invoices for services rendered to the Aircraft, supplies or materials provided to the Aircraft, including, but not limited to, fuel, or for hangar fees or storage fees for the Aircraft.

    i  During the time Seller has owned the Aircraft, the Aircraft has not been, nor is it currently, subject of any pending litigation, and there are no unsatisfied judgments against it, to the best of Seller's knowledge and belief.

    j.  During the time Seller has owned the Aircraft, the Aircraft has not been, nor is it currently, subject of any pending violations of any municipal ordinances, and of any

Seller _BHB_                                                                 Purchaser

Federal, state or Purchaser international statutes, laws, decrees or otherwise pertaining to the Aircraft or the use of the Aircraft, to the best of Seller's knowledge and belief.

k. During the time Seller has owned the Aircraft, there are no outstanding or delinquent taxes, levies, or duties on the Aircraft.

l. Neither Seller nor any of its affiliates has employed any broker or finder or incurred any liability for any brokerage fee, commissions or finder's fees in connection with the transactions contemplated other than a Aircraft Sales Management Agreement with Martinair. Seller agrees to indemnify and hold Purchaser harmless from and against all fees, expenses, commissions and costs due and owing to Martinair and any other broker, agent or finder on account of or in any way resulting from any contract or understanding existing between Seller and such person.

13. General:

a. In all respects, time shall be of the essence of this agreement.

b. The following "Aircraft Acceptance", "Aircraft Delivery" and "Warrantee Bill of Sale" forms are part of this agreement.

c. Purchaser acknowledges that the Aircraft is being delivered as a U.S. registered aircraft maintained in accordance with Part 91 of the US Federal Aeronautical Regulations.

d. This agreement shall bind and inure to the benefit of the Parties hereto and their executors, administrators, heirs and assigns.

e. Purchaser and Seller acknowledge that this Purchase Agreement is the product of negotiation and joint effort. Accordingly, the language, terms and conditions of this Purchase Agreement shall not be construed more strictly against either of the parties in the event a question of interpretation, construction or meaning should hereafter arise.

f. This agreement supersedes all previous agreements, if any.

Seller  B+B

Purchaser

IN WITNESS WHEREOF, this Agreement has been executed by Purchaser and Seller as of the date first written above.

Circuit City Stores, Inc.– Seller

By: _____

Title: _EVP, CFO_____

By: _Bruce Besanko_____


TACALA, LLC – Purchaser

By: _____

Title: _CFO_____

By: _Joey Pierson_____


Seller _TYHB_

Purchaser

"ATTACHMENT A"
Aircraft Acceptance/Rejection

Pursuant to the provisions of the Aircraft Purchase and Sale Agreement dated
_____, between Circuit City Stores, Inc ("Seller") and TACALA, LLC ("Purchaser"),
you are hereby notified that Purchaser has performed its pre-purchase inspection of Hawker
800XP, S/N 258293, Reg. N150NC and has (initial whichever box is applicable):

☐   **Rejected the Aircraft.** Escrow Agent will be notified and directed to refund
    Purchaser's deposit. The Agreement is terminated.

☐   **Accepted the Aircraft.** Escrow Agent will be notified and Purchaser's deposit is
    non-refundable unless Seller fails to perform or Seller breaches its obligations or
    warranties.

☐   **Accepted the Aircraft provided that Seller fulfills its obligation to correct
    the airworthy discrepancies listed below, as limited by the Aircraft
    Purchase and Sales Agreement.**   Escrow Agent will be notified and
    Purchaser's deposit is non-refundable unless Seller fails to perform or Seller
    breaches its obligations or warranties.

List of Discrepancies to be Corrected:

Ref:      Item Approval Sheet


                              PURCHASER:
                              TACALA, LLC [or its Assignee]

                              _____


Seller _BHB_                                      Purchaser _____

**"ATTACHMENT B"**
**Aircraft Delivery**

**N150NC**      **SERIAL#: 258293**      **MAKE: Hawker**      **MODEL: 800XP**

Purchaser hereby indicates and confirms to Seller that Purchaser has, at
_____, on _____, 2009 at _____AM/PM, in accordance
with the provisions of the Agreement accepted Hawker 800XP, S/N 258293, Reg. N150NC,
together with all engines, avionics, items of equipment, furnishings, instruments, components
and accessories installed therein or thereon, including the Model Honeywell TFE 731-[3C & 3D]
engines, s/n P107136C and P 107238C (collectively the "Aircraft").

PURCHASER ACKNOWLEDGES THAT IT HAS INSPECTED THE AIRCRAFT AND
EQUIPMENT AND THE RECORDS RELATING THERETO AND THAT THE AIRCRAFT,
EQUIPMENT AND RECORDS ARE FULLY SATISFACTORY TO IT AND IN ACCORDANCE
WITH THE AGREEMENT.

The undersigned, who has been duly authorized by Purchaser to do so, hereby
accepts delivery of the Aircraft on behalf of Purchaser, **"AS IS, WHERE IS AND WITH
ALL FAULTS"** at Purchaser's sole risk and expense.  Purchaser understands Seller
makes NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE
MERCHANTABILITY, MATERIAL, MANUFACTURE, WORKMANSHIP, DESIGN,
AIRWORTHINESS, VALUE, CONDITION, OPERATION OR PERFORMANCE,
CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE
OR ANY OTHER MATTER CONCERNING THE AIRCRAFT, OTHER THAN THE
LIMITED WARRANTY SET FORTH IN THE AIRCRAFT PURCHASE AGREEMENT
AND THE WARRANTY OF TITLE SET FORTH IN THE WARRANTY BILL OF SALE
TO BE DELIVERED BY SELLER TO PURCHASER CONTEMPORANEOUSLY
HEREWITH.

Purchaser hereby acknowledges that it has read and understood the above
statements and that the Aircraft satisfies all of the requirements, terms and conditions of
the Aircraft Purchase Agreement.  By reason of the execution and delivery by
Purchaser of this Delivery Receipt, (i) it is conclusively presumed that Purchaser has
approved and accepted the Aircraft **"AS IS, WHERE IS"** in its then-current condition
and state of repair, with all faults, limitations and defects (whether hidden or apparent),
regardless of cause, and (ii) Purchaser shall have no claim against Seller for breach of
any representation or warranty regarding the Aircraft, whether express or implied, other

Seller _____                                          Purchaser _____

than the limited warranty set forth the Aircraft Purchase Agreement and the warranty of title set forth in the Warranty Bill of Sale.

IN WITNESS WHEREOF Purchaser has caused this instrument to be executed and delivered by its duly authorized officer at the date and the time of delivery set forth above.

PURCHASER:
TACALA, LLC [or its Assignee]

_____

Seller _____    Purchaser _____

**"ATTACHMENT C"**
**Warranty Bill of Sale**

KNOWN ALL MEN BY THESE PRESENTS, that Circuit City Stores, Inc, with offices at 9950 Mayland Drive, Richmond, VA 23233 (hereinafter "Seller"), for good and valuable consideration paid to it by TACALA, LLC [or it's Assignee], with offices at 4268 Cahaba Heights Court, Birmingham, Alabama 35243 [or such other address as may be supplied for any Assignee] (hereinafter "Purchaser"), the receipt and sufficiency of which is hereby acknowledged by Seller has bargained, sold, transferred, assigned, set over and conveyed, and by these presents does hereby grant, bargain, sell, transfer, assign, set over and convey unto the Purchaser, its successors and assigns forever, all of its rights, title and interest in and to that certain Hawker 800XP, bearing the manufacturer's serial number 258293 and the U.S. civil aviation registration mark N150NC (the "Airframe") with the two (2) attached Honeywell TFE 731 engines, bearing the manufacturer's serial numbers, P107136C and P107238C installed thereon (the "Engines", together with all equipment, appliances, parts, instruments, appurtenances, accessories, furnishings, and other property installed in or attached to the Airframe or Engines (the "Equipment"), and all documents, logbooks, manuals, certificates, data, tools specific to the Aircraft, APU, all loose equipment normally delivered with the aircraft and listed on Exhibit "I" of that certain Aircraft Purchase Agreement dated _____, 2009. (The Airframe, Engines and Equipment will be collectively hereinafter referred to as the "Aircraft").

TO HAVE AND TO HOLD for Purchaser, its successors' and assigns' own use forever.

Seller hereby warrants that (a) Seller is the owner and holder of and has full legal and beneficial title to the Aircraft; (b) Seller has good right and full power to sell the aircraft to Purchaser; (c) Seller's title thereto is on the date hereof good, indefeasible and marketable; and (d) Seller hereby transfers to Purchaser all its rights, title and interest in and to the Aircraft, free and clear of all liens, leases, charges, rights to purchase, mortgages or other encumbrances of any kind or nature. Seller, its successors and assigns, covenant and agree to warrant and defend the title to the Aircraft, unto Purchaser, its successors and assigns, against all persons whomsoever.

This Warranty Bill of Sale and the rights and obligations of Seller and Purchaser hereunder (including without limitation all matters of construction, validity and performance) shall be governed by and construed in accordance with the laws of Commonwealth of Virginia.

IN WITNESS WHEREOF, SELLER has caused this Warranty Bill of Sale to be executed this _____ day of _____, 2009.

Seller: Circuit City Stores, Inc.

By: _____

Name: _____

Title: _____


Seller _____                                    Purchaser _____

**"ATTACHMENT D"**
**Scope of Inspection**

N150NC                                    In reply refer to: Proposal # 1070777.02

I.    Work scope for Aircraft Serial No. 258293.

    A. Comply with the following:

| | | | |
|---|---|---|---|
| 2. | Boroscope LH & RH Engines for FOD | $ | 850.00 |
| 3. | Visually Inspect Cockpit & Cabin Windows for Damage | $ | 170.00 |
| 4. | 24 Hour Fuel Leak Checks. (Includes 1500 gallons fuel / defuel charges.) | $ | 1,830.00 |
| 5. | Check loose equipment for any missing items. | $ | 170.00 |
| 6. | Comply with full avionics and entertainment function test | $ | 680.00 |
| 7. | Visually inspect wing and horizontal TKS panels for corrosion | $ | 680.00 |
| 8. | Visually inspect lavatory area for corrosion | $ | 340.00 |
| 9. | Comply with a boroscope of the APU | $ | 850.00 |
| 10. | Comply with Full Log Book Review for AD, SB, Time Life Components, and Airworthiness Compliance. | $ | 3,400.00 |
| 11. | 25R001 ELT NAV Interface inspection | $ | 255.00 |
| 12. | 057110 No1 Engine 150/250 Hour inspection | $ | 425.00 |
| 13. | 057110 No 2 Engine 150/250 Hour inspection | $ | NA |
| 14. | 057120 No 2 Engine 300/400 Hour inspection | $ | 680.00 |
| 15. | 33R801 Lopress Boom Beam landing light insp | $ | 170.00 |
| 16. | 120001 G-200 Lube | $ | 340.00 |
| 17. | 260008 Functional test smoke detection system | $ | 42.50 |
| 18. | 490002 APU igniter plug inspection | $ | 255.00 |
| 19. | 243154 #1 battery CAP check | $ | 425.00 |
| 20. | 240001 #1 and #2 Starter/Gen brush insp. | $ | 340.00 |
| 21. | 256005 ELT inspection | $ | 255.00 |
| 22. | 256010 ELT functional test | $ | 85.00 |
| | Total for Above | $ | 12,242.50 |

Note:  Flat Rated Labor Only. Parts and Outside Services required to accomplish the above listed items are not included and will be reflected as additional charges on the final invoice. Warranty items will be filed with Hawker Beechcraft Corporation (HBC). HBC has final determination of warranty coverage. Any item(s) not covered by warranty will be the responsibility of the customer.

2

Seller BHB                                    Purchaser

N15GNC                                                    In reply refer to: Proposal # 8070777.02

*Note: Discrepancies, including the treatment of corrosion, replacement parts and miscellaneous material associated with the above work, will be corrected on a time and material, as required basis, subject to the prior review and approval of the authorized company representative.*

II.    **Schedule**

The down time for the above work is projected to be (6) calendar days.  Additional down time may be required for changes to the scope of work or for other unforeseen circumstances and is not guaranteed or warranted in any form.

III.   **Sales Tax**

Under current Arkansas State law, sales tax will not be added for work performed.

IV.    **Payment Terms**

Contract total plus any additional amounts associated with discrepancies, Change Order requests or optional additional work is due net thirty (30) days from issuance of invoice. All invoice amounts in excess of the customer's then available Hawker Beechcraft Corporation credit limit will be due upon completion of the work, prior to release of the aircraft.

V.     **Conditions of the Aircraft**

The pricing for the work is based on the assumption that there is adequate space, electrical interfaces and power in the aircraft as delivered and existing structures will not have to be modified in order to complete the work. Otherwise, an estimate of the additional cost and time to correct the deficiency will be submitted to you for approval.

VI.    **Changes of Work scope**

Any changes or additional work requirements noted will be documented on a Hawker Beechcraft Services Work Order Estimate Form. Our policy requires that approval of the revised Work Order Estimate Form be obtained from the customer prior to making any changes to the scope of work. Therefore, it is important to process any additional Work Order Estimates promptly, and please submit all change requests in writing to the Aircraft Services Manager or assigned service representative.

VII.   **Environmental and Miscellaneous Material Charges**

A charge equal to 2.5% of total labor (not to exceed $500 per invoice) will be added to all customer invoices to cover the cost of hazardous material handling and disposal. A charge equal to 4.5% of total labor (not to exceed $1500 per invoice) will be added to all customer invoices to cover the cost of miscellaneous consumables. These charges cover the handling

3

Seller                                               Purchaser

N150NC                                      In reply refer to: Proposal # 8070777.02

and disposal of waste oil, filters, tires, batteries and chemicals of all kinds and the use of
items such as tape, solvents, shop cloths, sandpaper, cleaning compounds, brushes, grease,
nitrogen, oxygen and small quantities of miscellaneous hardware such as screws, bolts and
washers. These charges are included to avoid secondary billing, at a later date, for items not
easily determinable at the time of original invoicing.


VIII.    Additional/Supplemental Invoicing

Due to changes in cost and availability at the time of purchase, the pricing of parts and
materials found in this proposal are only estimates. The cost of parts and materials actually
purchased will determine the final price of this proposal. Additionally, you will be
responsible for all charges resulting from unacceptable core parts. We, as most other
FBO's, may be unable to secure final vendor pricing on certain OEM parts, exchange parts,
outside overhaul/repair units or fuel charges at the time we formally invoice you. This will
result in additional invoicing to your company for these charges. We will make every
attempt to minimize these additional invoices. Your understanding is appreciated.

IX.    Terms and Conditions
   * Prices quoted are in U.S. Dollars.
   * The work, associated with this proposal, will be performed at Hawker Beechcraft
     Services' Little Rock facility, FAA Repair Station UH6R899U, located at Adams Field,
     Little Rock, Arkansas, 72206.
   * Any work requested that is not part of this proposal will be performed at the
     applicable current labor rate.
   * All freight charges shall be invoiced to the customer.
   * All fuel costs, including fuel/de-fuel surcharges, are the responsibility of the customer.
   * All test flight costs (fuel, crew, lubricants, etc.) are the responsibility of the customer.
   * Any travel time charges and expenses which may be necessary to conclude
     this project will be billed upon completion.
   * Unless specifically stated, all equipment and furnishing removed shall become
     property of Hawker Beechcraft Services.
   * Unless specifically stated, existing hardware will be utilized.
   * Aircraft engineering documents must coincide with the current aircraft configuration.

Hawker Beechcraft Services may withdraw this proposal if not accepted within thirty (30) days.

Proposal Accepted for                       Proposal Accepted for
Tacala LLC                                  Hawker Beechcraft Services, Inc.

By: _____         By: _____

Title: _____        Title: _____

Date: _____         Date: _____

P.O. #: _____

                              4

Seller _BHJ_                                           Purchaser _____

### ADDENDUM TO AIRCRAFT PURCHASE & SALE AGREEMENT

This Addendum forms an integral part of that certain Aircraft Purchase & Sale Agreement (the "Agreement"), by and among Tacala, LLC ("Purchaser"), Circuit City Stores, Inc. ("Seller"), and Insured Aircraft Title Services ("Escrow Agent"). All capitalized terms used herein without definition shall have the respective meanings set forth in the Agreement.

The parties acknowledge that Seller is a debtor in possession under a voluntary petition filed with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court"), initiating a case under Chapter 11 of the United States Bankruptcy Code, which case is being jointly administered with other affiliated debtors under Case No. 08-35653-KRH (collectively, the "Case"). Notwithstanding any contrary provision of the Agreement, Seller hereby agrees that the Purchaser's obligation to close the purchase and sale of the Aircraft as contemplated by the Agreement shall be subject to the condition precedent that Seller obtain from the Court a final order authorizing such sale, which final order must be reasonably acceptable to Purchaser in form and content and must confirm that title to the Aircraft shall be conveyed to Purchaser free and clear of all liens or other adverse claims of any kind or character whatsoever (the "Order"). If the Order is not entered by the Court on or before January 23, 2009, then Purchaser shall be entitled to terminate the Agreement by written notice to Seller, whereupon the Deposit shall be returned to Purchaser, the Agreement shall be terminated, and neither party shall have any further rights or obligations thereunder.

The rights of Purchaser set forth herein shall be exercisable in addition to, and not in lieu of, any and all other rights or remedies set forth in the Agreement, all of which shall remain in full force and effect.

In Witness Whereof, the undersigned parties have caused this Addendum to be duly executed and delivered as of the dates of execution set forth below.

**SELLER:**                                    **PURCHASER:**

CIRCUIT CITY STORES, INC.                      TACALA, LLC

By: _____               By: _____
     Print Name: _____                   Print Name: _Joey Prow_
     Title: _____                  Title: _CEO_

Date: _____                 Date: _1/14/09_

1720340 v1

# **Exhibit B**

**FIRST AMENDMENT TO AIRCRAFT PURCHASE & SALE AGREEMENT**

This FIRST AMENDMENT TO AIRCRAFT PURCHASE & SALE AGREEMENT (this "Amendment") is made and entered into as of the ___ day of February, 2009 by and among TACALA, LLC with an address of 4268 Cahaba Heights Court, Birmingham, AL 35243 (hereinafter referred to as the "Purchaser") and Circuit City Stores, Inc. with an address of 9950 Maryland Drive, Richmond, VA 23233 (hereinafter referred to as the "Seller").

WHEREAS, Seller and Purchaser are parties to that certain Aircraft Purchase and Sale Agreement (the "Agreement") approved by the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division as of the 20th day of January, 2009 for the sale of that certain 1996 Hawker 800XP aircraft, serial number 258293, registered as N150NC (the "Order");

WHEREAS, the Agreement may not be modified except by mutual consent in writing; and,

WHEREAS, it is the agreement among the parties that Purchaser shall be responsible for the cost to correct any Discrepancies and that the Purchase Price shall be reduced by the amount of Five Hundred Fifty Thousand U.S. Dollars (US$550,000).    TWO    $250,000

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    Definitions: All capitalized terms used herein which are not otherwise defined herein shall have the meaning given to such terms in the Agreement.

2.    Modification of Terms:

    2.1    In Paragraph 1, the Purchase Price shall be Four Million Two *Five* Hundred Thousand U.S. Dollars (US$4,200,0000)    $4,500,000

    2.2    In Paragraph 2, the Balance of the Purchase Price shall be Four Million One *Four* Hundred Thousand U. S. Dollars (US$4,100,000);    $4,400,000

    2.3    In the sixth line of Paragraph 3(B), delete the word "Seller";

    2.4    *Delete Paragraphs 3 (D), (E), (F) and (G).*

    2.5    Purchaser agrees to close the transaction immediately upon the return to service of the Aircraft following the correction of all Discrepancies, approval of the Amendment by the Court, and delivery of the Aircraft to Wilmington, Delaware.    *(if required)*

3.    Miscellaneous:

3.1    All provisions of the Agreement, except as modified by this Amendment, shall remain in full force and effect and are reaffirmed. Other than as stated in this Amendment, this Amendment shall not operate as a waiver of any condition or obligation imposed on the parties under the Agreement. In the event of any conflict, inconsistency, or incongruity between any provision of this Amendment and any provision of the Agreement, the provisions of this Amendment shall govern and control.

3.2    This Amendment, together with the Agreement (including any Schedules or Exhibits attached hereto or thereto) constitutes the final, complete, and exclusive statement of the terms of the Agreement between the parties pertaining to the subject matter of this Amendment and supersedes all prior and contemporaneous understandings or agreements of the parties. No party has been induced to enter into this Amendment by, nor is any party relying on, any representation or warranty outside those expressly set forth in this Amendment.

3.3    The Parties acknowledge that Seller is a debtor in possession under a voluntary petition filed in the aforementioned court under Case No. 08-35653-KRH, which Court entered the Order approving the Agreement.    Seller agrees to immediately seek an amendment to said Order specifically approving this Amendment under the same terms as the original Order.  In the event that the Court refuses to amend the Order to approve this Amendment, then the Agreement is terminated in accordance with the terms of the Agreement.    *if required*

*(if required)*

IN WITNESS WHEREOF, Seller and Purchaser, each pursuant to due authority, have each caused this Amendment to be duly executed as of the day and year first above written.

Purchaser:                                Seller:

TACALA, LLC                              Circuit City Stores, Inc.

By:                                      By:
Name:    *Saylesson*                     Name:    *[signature]*
Title:    CFO                            Title:    *[illegible]*

*Notwithstanding any contrary provision hereof, under no circumstances shall Purchaser be obligated to close the purchase and sale contemplated by the Agreement unless the Seller shall provide evidence acceptable to the Purchaser that the Court has approved this Amendment in all respects and made all such modifications to the Order as may be required in order to permit transfer of the Aircraft to Purchaser free and clear of all liens, claims and encumbrances.*

*as amended by the First Amendment to Aircraft Purchase & Sale Agreement dated February 3, 2009,*

**"ATTACHMENT A"**
Aircraft Acceptance/Rejection

*& approved by the U.S. Bankruptcy Court for the Eastern District of Virginia, Richmond Division as*

Pursuant to the provisions of the Aircraft Purchase and Sale Agreement ~~dated~~ *of the 20th day of January, 2009* _____ between Circuit City Stores, Inc ("Seller") and TACALA, LLC ("Purchaser"), you are hereby notified that Purchaser has performed its pre-purchase inspection of Hawker 800XP, S/N 258293, Reg. N150NC and has (initial whichever box is applicable):

☐ **Rejected the Aircraft.** Escrow Agent will be notified and directed to refund Purchaser's deposit. The Agreement is terminated.

☒ **Accepted the Aircraft.** Escrow Agent will be notified and Purchaser's deposit~~is~~ *shall become* non-refundable unless Seller fails to perform or Seller breaches its obligations or warranties. *upon final approval of the First Amendment to the Purchase & Sale Agreement by the Court in a manner acceptable to Purchaser,*

☐ **Accepted the Aircraft** provided that Seller fulfills its obligation to correct the airworthy discrepancies listed below, as limited by the Aircraft Purchase and Sales Agreement. Escrow Agent will be notified and Purchaser's deposit is non-refundable unless Seller fails to perform or Seller breaches its obligations or warranties.

List of Discrepancies to be Corrected:

Ref:        Item Approval Sheet

PURCHASER:
TACALA, LLC [or its Assignee]

*CFO*

Seller *BHB*                                    Purchaser