Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

                    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                        RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
              Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY CODE
SECTION 1121(d) EXTENDING EXCLUSIVE PERIODS DURING WHICH
DEBTORS MAY FILE AND SOLICIT ACCEPTANCES OF A PLAN OF
LIQUIDATION**

          The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), for entry of

an order, pursuant to section 1121(d) of title 11 of the

United States Code (the "Bankruptcy Code") extending the

exclusive periods during which the Debtors may file and

solicit acceptances of a plan of liquidation.  In

support of the Motion, the Debtors respectfully

represent as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this District is proper

under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicate for the relief

requested herein is Bankruptcy Code section 1121(d).

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

**BACKGROUND**

3.     On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.     On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

**A.     The Debtors' Operations**.

6.     As of the Petition Date, Circuit City was the second largest consumer electronics retailer in the United States, operating a nationwide chain of electronics stores that sold, among other things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging and telecommunications products, and other audio and video electronics.

7.    The Debtors operated a massive and complex retail network and the Debtors' chapter 11 cases have been correspondingly large and complex.   In particular, as of the Petition Date:

- The Debtors operated approximately 712 Superstores and 9 outlet stores throughout the United States and Puerto Rico.

- The Debtors also maintained two websites -- www.circuitcity.com and www.firedog.com -- as well as a phone-order call center -- 1 800 THE CITY.

- The Debtors' workforce was comprised of approximately 39,600 full and part-time employees in their stores, their corporate headquarters and their distribution centers.

- The Debtors maintained an international presence through a wholly-owned Canadian subsidiary, InterTAN Canada Ltd.

- The Debtors had more than $3 billion in assets and more than $2 billion in liabilities.

- The Debtors had hundreds of thousands of creditors and other parties in interest, including vendors, customers, landlords, utilities, taxing authorities, independent contractors and others.

8.    The Debtors received approval of a general bar date of January 30, 2009 and a governmental claims bar date of May 11, 2009.   The Debtors have not

yet set an administrative claims bar date.  As of

January 31, 2009, parties in interest had submitted

approximately 10,270 proofs of claim for claims totaling

approximately $6.6 billion.  Of this amount, close to

$500 million alone is attributable to claims arising

under section 503(b)(9) of the Bankruptcy Code.

Preliminary reconciliation efforts suggest that such

claims may amount to over $215 million.  However, the

reconciliation process with respect to all categories of

claims is in its early stages.  The Debtors will be

continuing such efforts in the coming weeks and months.

**B.    The Debtors' Restructuring Efforts.**

9.    In filing their chapter 11 cases, the

Debtors were hopeful that the bankruptcy process would

enable them to restructure their businesses and to

emerge as a going concern.  Thus, after the Petition

Date, the Debtors continued their pre-petition efforts

to formulate a feasible restructuring or, in the

alternative, to sell substantially all of the their

assets as a going concern.  To that end, the Debtors

worked to streamline their operations, by, among other

things, closing unprofitable stores and rejecting costly

leases and contracts.  At the same time, Debtors'
advisors actively marketed the Debtors' businesses and
operations and compiled a list of potential purchasers
and strategic partners for the Debtors' businesses or
any portion thereof.

10.   The Debtors ultimately determined that a
sale of the Debtors' assets represented the Debtors'
best option for maximizing the value of the estates for
their creditors and parties in interest, and, thus,
focused their efforts on maximizing the return from such
a sale.

11.   On January 9, 2009, the Debtors'
unsealed their motion seeking authorization to conduct
auctions for a sale or sales of the Debtors' businesses
as a going concern or for liquidation, or of
miscellaneous of the Debtors' assets (D.I. 1423, the
"Sale Motion").

12.   On January 12, 2009, the Court entered
an order authorizing the Debtors to solicit bids and
conduct auctions, as well as other procedural aspects of
the Sale Motion (D.I. 1460; the "Sale Procedures Order").

Pursuant to the Sale Procedures Order, the Debtors held auctions on January 13, 14 and 15, 2009.

13.   Based on certain indications of interest, the Debtors remained hopeful that they would be able to consummate a sale of the Debtors' businesses as a going concern.  Unfortunately, despite the Debtors' intensive efforts, the auction did not yield a feasible going concern bid.  Instead, the Debtors, in consultation with the Creditors Committee and the agent under the DIP Facility, determined that the only alternative was to pursue a liquidation of the Debtors' businesses. Accordingly, the Debtors' determined that the highest or otherwise best bid received at the auction was that of a joint venture (collectively, the "Agent").  The Debtors entered into an agency agreement (the "Agency Agreement") with the Agent on January 15, 2009.

14.   On January 16, 2009, the Court approved the Debtors' entry into the Agency Agreement (D.I. 1634). On January 17, 2009, the Agent commenced going-out-of-business sales (the "GOB Sales") pursuant to the Agency Agreement at the Debtors' remaining stores.  The GOB Sales are continuing as of the date hereof.  On January

17, 2009, the Debtors also began parallel efforts to
wind-down their operations and sell their remaining
assets (collectively, the "Liquidation").

## RELIEF REQUESTED

15.  By this Motion, the Debtors request entry
of an order (i) extending the Plan Period (as defined
below) until July 8, 2009, a date that is one hundred
and twenty (120) days after the expiration of the
current Plan Period, and the Solicitation Period (as
defined below) until September 6, 2009, a date that is
sixty (60) days after the expiration of the proposed one
hundred and twenty (120) day extension of the current
Plan Period.  If granted, the extension of the Exclusive
Periods (as defined below) will be without prejudice to
(i) the right of the Debtors to seek further extensions
of the Exclusive Periods or (ii) the right of any party
in interest to seek to reduce the Exclusive Periods for
cause.

## BASIS FOR RELIEF

16.  Bankruptcy Code section 1121(b) provides
for an initial 120-day period after the Petition Date
within which the Debtors have the exclusive right to

file a plan or plans of reorganization in their cases

(the "Plan Period").  Bankruptcy Code section 1121(c)

further provides for an initial 180-day period after the

Petition Date within which the Debtors have the

exclusive right to solicit and obtain acceptances of a

plan filed by the Debtors during the Plan Period (the

"Solicitation Period" and, together with the Plan Period,

the "Exclusive Periods").  Thus, the Plan Period is set

to expire on March 10, 2009, and the Solicitation Period

is set to expire on May 9, 2009.

17.  At this point, the Debtors are continuing

to seek to maximize returns from the Liquidation for

their estates and creditors and to reconcile and

evaluate the various claims of creditors.  Given the

Debtors' substantial efforts since the Petition Date and

the short time that has elapsed since the Court's

approval of the Agency Agreement and the Liquidation,

the Debtors believe that they should be granted

additional time to undertake these asset liquidation and

claims reconciliation efforts and to develop an

appropriate plan of liquidation without the distraction

of competing plans filed by other parties in interest.

18.   The Debtors, along with their advisors, are currently analyzing their alternatives in connection with any plan of liquidation, including evaluating their claims and assets.   Furthermore, as previously noted, the Debtors have only recently obtained approval of the Liquidation and have, just within the past few weeks entered into the Agency Agreement.   The extension requested in this Motion will provide the Debtors and their advisors the opportunity to analyze the Debtors' post-Liquidation financial circumstances and develop a liquidating plan that maximizes returns to parties in interest.   As set forth more fully below, the Debtors believe that the requested extension is reasonable in light of the circumstances.

19.   Accordingly, the Debtors request that the Court (a) extend the Exclusive Periods as set forth above and (b) prohibit any party, other than the Debtors, from filing a competing plan and/or soliciting acceptances of any such competing plan during the extended Exclusive Periods.

## APPLICABLE AUTHORITY

20.   Under Bankruptcy Code section 1121(d),
the Court may extend the Exclusive Periods for cause.
Specifically, section 1121(d) provides:

> [O]n request of a party in interest made
> within the respective periods specified in
> subsections (b) and (c) of this section
> and after notice and a hearing, the court
> may for cause . . . increase the 120-day
> period or the 180-day period referred to
> in this section.

11 U.S.C. § 1121(d)(1).

21.   Courts have identified several key
factors relevant to a determination of whether cause
exists under Bankruptcy Code section 1121(d), including
the following:

(a)   The size and complexity of a debtor's
case;

(b)   The amount of time that has elapsed since
the debtor filed its bankruptcy case;

(c)   Whether unresolved contingencies exist
that affect the debtor's ability to
reorganize;

(d)   The debtor's progress in resolving issues
facing its estate; and

(e)   Whether an extension of time will harm
the debtor's creditors or other
interested parties.

See In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr.
E.D. Mich. 1997); In re Express One Int'l, Inc., 194 B.R.
98, 100 (Bankr. E.D. Tex. 1996); In re Gibson & Cushman
Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re
McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y.
1987); see also In re Adelphia Comm. Corp., 336 B.R. 610,
674 (Bankr. S.D.N.Y. 2006).

22.   In determining whether to grant a
requested extension of exclusivity, courts also consider
whether a debtor has had a reasonable opportunity to
negotiate an acceptable plan with various interested
parties and to prepare adequate financial and non-
financial information concerning the ramifications of
any proposed plan for disclosure to creditors.  See
McLean, 87 B.R. at 833-34; In re Texaco, Inc., 76 B.R.
322, 327 (Bankr. S.D.N.Y. 1987).

23.   In evaluating whether an extension under
Bankruptcy Code section 1121(d) is warranted, courts are
given maximum flexibility to review the particular facts
and circumstances of each case.  See In re Amko Plastics,
Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996)
("[A]pplying the 'flexibility' in dealing with the

12

question of extension of exclusivity which the cases

suggest . . . , we hold that debtor has shown cause for

the extension."); In re Pub. Serv. Co., 88 B.R. 521, 534

(Bankr. D.N.H. 1988) ("[T]he legislative intent [is] to

promote maximum flexibility."); H.R. Rep. No. 95-595, at

232 (1978) ("[T]he bill allows the flexibility for

individual cases that is unavailable today."), reprinted

in 1978 U.S.C.C.A.N. 5963, 6191.

24.  As set forth herein, the one hundred and

twenty (120) day extension of the Exclusive Periods is

warranted here because, among other things:

> (a)  The Debtors' cases are large and complex,
>       and certain substantial issues remain
>       unresolved, including but not limited to
>       the validity, amount, and priority of
>       claims and the measure of the Debtors'
>       assets;
>
> (b)  The Debtors have made significant, good-
>       faith progress in resolving many of the
>       issues facing the Debtors' estates,
>       including the ultimate disposition of the
>       Debtors' assets through a liquidation of
>       substantially all of the Debtors' assets
>       and the reconciliation of claims; and
>
> (c)  An extension of the Exclusive Periods
>       will give the Debtors a reasonable
>       opportunity to develop, negotiate, and
>       ultimately confirm a consensual plan,
>       without prejudicing any party in interest.

I.    **THE DEBTORS' CASES ARE LARGE AND COMPLEX**

25.   The size and complexity of the Debtors'
chapter 11 cases constitute cause to extend the
Exclusive Periods.  See Express One, 194 B.R. at 100
("The traditional ground for cause is the large size of
the debtor and the concomitant difficulty in formulating
a plan of reorganization."); see also Bunch v. Hoffinger
Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R.
639, 644 (B.A.P. 8th Cir. 2003) (affirming extension of
exclusivity period to over eighteen months because of
"the complexity of the debtor's case"); In re Highland
Park Assocs. L.P. I, 130 B.R. 55, 60 (Bankr. N.D. Ill.
1991) (finding that "the complexities of this case
warrant an extension"); H.R. Rep. No. 95-595, at 232
(1978) ("[I]f an unusually large company were to seek
reorganization under chapter 11, the court would
probably need to extend the time in order to allow the
debtor to reach an agreement."), reprinted in 1978
U.S.C.C.A.N. 5963, 6191.

26.   The Debtors' cases are among the largest
retail bankruptcy cases to date.  As set forth above,
the Debtors operated hundreds of retail stores

14

nationwide, employing close to 40,000 employees.
Accordingly, the Debtors' chapter 11 cases involve
thousands of parties in interest with billions of
dollars of claims at stake.  At the latest count,
parties had filed roughly 10,270 proofs of claim for
claims amounting to over $6 billion.

27.  In addition to the sheer size of these
cases and the Debtors' businesses, the Debtors have
faced certain complex issues, many of which still remain
to be resolved.  As noted above, the Debtors closed on
the Agency Agreement, providing for the liquidation of
substantially all of their inventory, less than one
month ago.  Since the closing date, the Debtors have
worked to analyze their remaining assets for potential
recoveries, negotiated with potential purchasers
regarding those assets, and begun the process of
establishing and obtaining approval of bidding
procedures designed to maximize returns on the sale of
those assets.  The Debtors and their advisors have also
begun the time-consuming process of claim reconciliation
through, among other things, the establishment of bar

dates.  Both of these processes are ongoing as of the
date of this Motion.

28.  Although the Debtors have accomplished a
great deal in a relatively brief span of time, the
Debtors and their professionals require additional time
to assess the validity and amount of the vast number of
claims against the estate, including administrative
claims asserted or to be asserted against the Debtors.
Moreover, as described below, the Debtors require
additional time to reconcile assets and liabilities.

## II.  THE DEBTORS HAVE MADE SUBSTANTIAL PROGRESS IN THEIR CASES IN A RELATIVELY SHORT AMOUNT OF TIME.

29.  Although certain significant issues
remain unresolved in these cases, the Debtors have made
substantial progress in their cases.  Initially, in
addition to the Debtors' efforts towards a successful
reorganization, the Debtors' management focused on
stabilizing the Debtors' businesses and responding to
the many time-consuming demands that inevitably
accompany the commencement of chapter 11 cases,
including responding to myriad inquiries and demands
from employees, vendors, taxing authorities, utilities,

16

landlords, customers, and other parties in interest.
Working within the budget imposed by the terms of the
Debtors' post-petition financing and the liquidity needs
of the Debtors' ongoing businesses, the Debtors'
management and professionals worked to ease the concerns
of such parties.  The Debtors and their professionals
have also worked to implement procedures to comply with
the substantial reporting and disclosure requirements
imposed on debtors in possession.

30.  As set forth above, in addition to the
significant demands of day-to-day management of the
Debtors' cases, the Debtors and their professionals
worked diligently to maximize the value of the Debtors'
businesses, including by closing a number of
unprofitable stores and rejecting certain personal and
real property leases and executory contracts, and by
actively marketing the Debtors' businesses and
negotiating with various parties with respect to
potential restructurings or sales.  While these efforts
did not lead to the going concern sale the Debtors had
hoped for, they did culminate in the Agency Agreement,

which the Debtors believe promises the best possible
outcome under the circumstances.

31.   The Agency Agreement was approved by this
Court just over two months after the Petition Date and
less than one month prior to the date hereof.  In the
brief period since the Court's approval of the Agency
Agreement and the Liquidation, the Debtors have taken
steps to liquidate the Debtors' remaining assets and
wind down their businesses.  In particular, the Debtors
recently sought and obtained approval of procedures to
sell or reject the Debtors' remaining leases upon
conclusion of the GOB Sales and to sell certain
miscellaneous assets of the Debtors and are currently
seeking approval of procedures to sell certain of the
Debtors' furniture, fixtures and equipment.  The Debtors
have also obtained approval for sales of their corporate
aircraft.  Thus, the Debtors' efforts to liquidate their
assets in a manner that will maximize recovery for the
estates are ongoing.  On a parallel path, the Debtors
have commenced efforts to evaluate and reconcile claims,
including more than $500 million of claims seeking
administrative priority pursuant to section 503(b)(9) of

the Bankruptcy Code, and these efforts are likewise
ongoing.

32.   The Debtors believe that their employees
and their advisors have undertaken substantial efforts
to bring these bankruptcy cases to a conclusion as
quickly as possible in order to minimize administrative
expenses and maximize the recovery available to the
Debtors' creditors.   There can be no doubt that the
Debtors have acted diligently throughout these
reorganization cases.   The Debtors submit that their
demonstrated progress in their chapter 11 cases to date
is ample cause to extend the Exclusive Periods.

**III. THE EXTENSION SOUGHT WILL NOT HARM ANY PARTY AND
INDEED WILL BENEFIT THE DEBTORS' STAKEHOLDERS.**

33.   This Motion is the Debtors' first request
for an extension of their Exclusive Periods.   It cannot
reasonably be asserted that the Debtors are seeking an
extension of the Exclusive Periods to unfairly prejudice
or pressure the Debtors' creditors.   Instead, the
extension requested herein by the Debtors is an exercise
of prudent business judgment and an attempt to have
adequate time to negotiate terms of a liquidating plan

(or plan(s)) of reorganization that (i) reflects the
details of the Liquidation, including any asset sales,
and (ii) provides for an equitable distribution of the
assets of the Debtors' estates to the holders of valid
claims against the Debtors' estates.

34.   The request for an extension of the
Exclusive Periods set forth herein is reasonable,
particularly in light of the complexity of the Debtors'
cases, the recently approved Liquidation, and the
substantial progress demonstrated by the Debtors in the
prosecution of these bankruptcy cases.  The requested
extension of the Exclusive Periods will not prejudice
the legitimate interests of any party in interest in
these bankruptcy cases.  Rather, the extension will
further the Debtors' effort to preserve value.

35.   In particular, the Debtors require
additional time to evaluate claims against their estates,
to assess the extent of the distributable assets of
their estates, to liquidate those assets pursuant to a
value-maximizing process and to determine the optimal
distribution of those assets.  Allowing the Debtors

sufficient time to accomplish these tasks is in the best
interest of all parties in interest.

36.   In sum, the requested extension of the
Exclusive Periods will facilitate the Debtors' efforts
to maximize the value of their estates by providing the
Debtors with a full and fair opportunity to formulate,
propose, and seek acceptances of a plan of liquidation.
The Debtors submit that the extension requested herein
will increase the likelihood of a greater distribution
to creditors than would be possible if the Debtors were
required to file a plan prior to having such an
opportunity.

37.   Similar relief to that requested herein
has been granted in other large, liquidating chapter 11
cases.   See, e.g.,In re Sharper Image Corp., Case No.
08-10322 (KG)(Bankr. D. Del. Jul. 16, 2007); In re SN
Liquidation, Inc., Case No. 07-11666 (KG)(Bankr. D. Del.
Mar. 28, 2008); In re Tweeter Home Entm't Group, Inc.,
Case No. 07-10787 (PJW)(Bankr. D. Del. Oct. 9, 2007).

38.   Accordingly, for these reasons, the
Debtors should be allowed additional time to draft,

negotiate, file, and solicit acceptances of a feasible
plan or plans of liquidation in these bankruptcy cases.

## NOTICE

39.  Notice of this Motion has been provided
to those parties entitled to notice under this Court's
Order Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (D.I.
130).  The Debtors submit that, under the circumstances,
no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

40.  Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors request that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

## NO PRIOR REQUEST

41.  No previous request for the relief sought
herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: February 18, 2009
      Richmond, Virginia   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley          .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession