Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &        MCGUIREWOODS LLP
FLOM, LLP                              One James Center
One Rodney Square                      901 E. Cary Street
PO Box 636                             Richmond, Virginia 23219
Wilmington, Delaware 19899-0636        (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

             IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                       RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                         :   Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :   Case No. 08-35653 (KRH)
et al.,                        :
                               :
              Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER (I) APPROVING SALE OF AIRCRAFT FREE AND CLEAR OF
ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND
(II) GRANTING RELATED RELIEF**

Upon consideration of the Debtors' Motion for
Orders Pursuant to Bankruptcy Code Sections 105 and 363
(A) Authorizing Debtors to Enter Into Agreement in Con-
nection with Sale of Aircraft, Subject to Higher or Oth-
erwise Better Bids, (B) Approving Sale of Aircraft Free

and Clear of All Interests; and (C) Granting Related Re-
lief (the "Motion");[1] and the Debtors having held an auc-
tion on February 12, 2009 (the "Auction"); and the Court
having conducted a hearing on the Motion on February 13,
2009 (the "Sale Hearing"); and all parties in interest
having been heard, or having had the opportunity to be
heard, regarding the Motion; and the Court having re-
viewed and considered the Motion, and the arguments of
counsel made, and the evidence adduced, at the Sale
Hearing; and upon the record of the Sale Hearing and
these chapter 11 cases, and after due deliberation
thereon, and good cause appearing therefore:

**THE COURT HEREBY FINDS, DETERMINES AND CON-
CLUDES THAT:**[2]

A.    The Court has jurisdiction to hear and
determine the Motion and to grant the relief requested

---

[1]   Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Sale Motion.

[2]   The findings and conclusions set forth herein constitute the
Court's findings of fact and conclusions of law pursuant to Bank-
ruptcy Rule 7052.  To the extent any of the following findings of
fact are determined to be conclusions of law, they are adopted,
and shall be construed and deemed, conclusions of law.  To the
extent any of the following conclusions of law are determined to
be findings of fact, they are adopted, and shall be construed and
deemed, as findings of fact.

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.   Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.   The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105 and 363 and Bankruptcy Rule and 6004.

D.   Notice of the Motion and entry of the Sale Order has been provided to those parties entitled to notice under the Debtors' Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130; the "Case Management Order"), as well as (a) all entities known to have expressed an interest in a transaction regarding the Aircraft during the past three (3) months and (b) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the Aircraft.

E.    Based upon the affidavits of service
filed with the Court: (a) notice of the Motion and the
Sale Hearing was adequate and sufficient under the cir-
cumstances of these chapter 11 cases and these proceed-
ings and complied with the various applicable require-
ments of the Bankruptcy Code and the Bankruptcy Rules;
and (b) a reasonable opportunity to object and be heard
with respect to the Motion and the relief requested
therein was afforded to all interested persons and enti-
ties.

F.    The Aircraft is property of the Debtors'
estates and title thereto is vested in the Debtors' es-
tates.

G.    The Broker, the Debtors and their profes-
sionals marketed the Aircraft and conducted the market-
ing and sale process as set forth in and in accordance
with the Motion.  Based upon the record of these pro-
ceedings, all creditors and other parties-in-interest
and all prospective purchasers have been afforded a rea-
sonable and fair opportunity to bid for the Aircraft.

H.    The fee owed to the Broker (the "Broker's
Fee") is fair and reasonable and payment of such fee is

in the best interests of the Debtors, their estates, and their creditors.

     I.   The procedures announced on the record at the Auction and by which the Auction was conducted were substantively and procedurally fair to all parties.

     J.   After an auction held on February 12, 2009, the Debtors determined that (i) the highest and best bid was that of Omni Air Transport, LLC (the "Purchaser"), which is reflected in the purchase agreement attached hereto as Exhibit A (as modified and confirmed on the record at the Auction, the "Agreement"); and (ii) the next highest and bid was that of Meisner Aircraft LLC and Jet Sales Stuart, LLC (the "Next Highest Bidder"),[3] which is reflected in the purchase agreement attached hereto as Exhibit B (as modified and confirmed on the record at the Auction, the "Next Highest Bid").[4]

     K.   The Next Highest Bidder has agreed to keep the Next Highest Bid open until the Omni Air Trans-

---

[3]  Reference to Purchaser shall be a reference to the Next Highest Bidder in the event Omni Air Transport does not close the Transaction contemplated by its purchase agreement.

[4]  Reference to the Agreement shall be a reference to the Next Highest Bid in the event Omni Air Transport does not close the Transaction contemplated by its purchase agreement.

port Transaction closes and is ready willing and able to close the Transaction contemplated by the Next Highest Bid.

L.   Entry into the Brokerage Agreement (a copy of which is attached as Exhibit C) and the Agreement and consummation of the transaction contemplated by the Agreement (the "Transaction") constitute the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors, and all other parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Aircraft to Purchaser.

M.   The Agreement and the Transaction were negotiated and have been and are undertaken by the Debtors and Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Debtors and Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code.

N.   The consideration provided by Purchaser for the Aircraft under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes.

O.   Neither the Debtors nor Purchaser engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

P.   The Sale contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

Based upon all of the foregoing, and after due deliberation, **THE COURT ORDERS, ADJUDGES, AND DECREES THAT:**

1.   The relief requested in the Motion is GRANTED.

2.   The Agreement and the Brokerage Agreement and the Sale of the Aircraft to Purchaser are hereby approved and authorized in all respects.

3.   In the event Omni Air Transport, LLC does not close the transaction contemplated by its agreement, the Debtors are hereby authorized to close the transac-

tion with the Next Highest Bidder as contemplated by the
Next Highest Bid without further order of this Court.

4.    Pursuant to 11 U.S.C. §§ 363(b) and
363(f), upon the consummation of the Agreement, the
Debtors' right, title, and interest in the Aircraft
shall be transferred to the Purchaser free and clear of
all interests, including liens, claims, and encumbrances
("Interests"), with all such Interests to attach to the
cash proceeds of the Sale in the order of their prior-
ity, with the same validity, force, and effect which
they had as against the Aircraft immediately before such
transfer, subject to any claims and defenses the Debtors
may possess with respect thereto.

5.    Except as may be expressly provided in
the Agreement, Purchaser is not assuming nor shall it or
any affiliate of Purchaser be in any way liable or re-
sponsible, as a successor or otherwise, for any liabili-
ties, debts, or obligations of the Debtors in any way
whatsoever relating to or arising from the Debtors' own-
ership or use of the Aircraft prior to the consummation
of the Transaction contemplated by the Agreement, or any
liabilities calculable by reference to the Debtors or or

the Aircraft, or relating to continuing or other condi-
tions existing on or prior to the Closing.

6.    The Transaction is undertaken by the Pur-
chaser in good faith and the Purchaser is a good faith
purchaser of the Aircraft as that term is used in Bank-
ruptcy Code section 363(m).  The Purchaser is entitled
to all of the protections afforded by Section 363(m) of
the Bankruptcy Code.

7.    Pursuant to sections 105 and 363 of the
Bankruptcy Code, the Debtors and the Purchaser are each
hereby authorized to take any and all actions necessary
or appropriate to: (i) consummate the sale of the Air-
craft to Purchaser and the Closing of the Sale in accor-
dance with the Motion, the Purchase Agreement and this
Order; and (ii) perform, consummate, implement and close
fully the Purchase Agreement together with all addi-
tional instruments and documents that may be reasonably
necessary or desirable to implement the Purchase Agree-
ment.

8.    The Debtors are authorized to pay the
Broker's Fee in accordance with the Brokerage Agreement
and this Order.

9.   This Order is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Aircraft conveyed to Purchaser.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Interests against the Aircraft from their records, official and otherwise.

10.   Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

11. The Debtors shall pay $92,664.84 (the "Claimed Amount") for ad valorem taxes assessed against the Aircraft to Henrico County from the proceeds from sale of the Aircraft at the closing of the sale thereof or as soon thereafter as practicable. If the Claimed Amount is paid after March 31, 2009, statutory interest at the rate of 4% will be paid by the debtor's estate. All of the Debtors' rights to challenge the Claimed Amount and Henrico County's interest, if any, in the Aircraft are expressly preserved, and nothing herein shall be deemed to be, construed as or constitute a waiver of such rights.

12. This Order shall be effective immediately upon entry, and any stay of orders provided for in Bank-ruptcy Rule 6004(h) and any other provision of the Bank-ruptcy Code or Bankruptcy Rules is expressly lifted.

13. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any Permit relating to the operation of the Air-craft sold, transferred or conveyed to Purchaser on ac-count of the filing or pendency of these Chapter 11 cases or the consummation of the Sale.

11

14.    This Court retains jurisdiction to hear
and determine all matters arising from or related to im-
plementation or interpretation of this Order or the
Agreement.

Dated:    Richmond, Virginia
          February _____, 2009
          Feb 17 2009


              /s/ Kevin Huennekens
              UNITED STATES BANKRUPTCY JUDGE


          Entered on Docket:  2/17/09

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -


/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

SEEN AND CONSENTED TO BY:


/s/ Rhysa Griffith South
Rhysa Griffith South
Assistant Henrico County Attorney
Office of County Attorney
County of Henrico
P.O. Box 90775
Henrico, Virginia 23273-0775
(804) 501-5091
(804) 501-4140 fax

Counsel for County of Henrico, Virginia


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

## EXHIBIT A

**(Purchase Agreement)**

## Aircraft Purchase Offer

This Aircraft Purchase Offer (this "Offer") is made by Omni Air Transport, LLC, an Oklahoma limited liability company whose address is 3303 N. Sheridan Road, Tulsa, Oklahoma 74115 ("Purchaser"; such term includes its successors and assigns), to purchase the following aircraft from CC Aviation LLC, a Virginia limited liability company, whose address is 9950 Maryland Drive, Richmond, Virginia 23233 ("Seller").

| | |
|---|---|
| **Manufacturer/Year:** | **2001** |
| **Model:** | **Learjet 45** |
| **Serial Number:** | **45-123** |
| **Registration Number:** | **N484LC** |

For purposes of this Offer, the term "Aircraft" includes the engines, radios, navigational devices, instrumentation, appurtenances, fixtures, accessories, spares inventory, log books, flight and component manuals, maintenance records and loose equipment.

Conditions of this Offer are as follows:

1. **Purchase Price.**

    A.    The total purchase price shall be Three Million Eight Hundred Seventy-Five Thousand ($3,875,000) (U. S. currency).  The purchase price does not include any taxes imposed on the sale, use or ownership of the Aircraft, whether imposed on Purchaser or Seller.

    B.    Upon Seller's acceptance of this Offer, Purchaser will make an earnest money deposit in the amount of Two Hundred Fifty Thousand Dollars ($250,000) (U. S. currency), which will be deposited in escrow with Insured Aircraft Title Service, Inc., Oklahoma City, Oklahoma ("Escrow Agent").  The closing balance of Three Million Six Hundred Twenty-Five Thousand Dollars ($3,625,00) (U. S. currency) shall be payable upon final delivery.

2. **Title.**

    Seller represents and warrants to Purchaser that it is authorized to sell, and has full legal and beneficial title to, the Aircraft, subject to the approval of the United States Bankruptcy Court, Eastern District of Virginia, Richmond Division.  Seller will deliver the Aircraft free and clear of any and all liens, claims and other encumbrances to its title.

3. **Condition of Aircraft.**

    The Aircraft is being sold "as is, where is."  Purchaser acknowledges that there are no express or implied warranties with respect to merchantability or fitness of the Aircraft other than the existing Manufacturer's warranties for the Aircraft.  Purchaser waives any

pre-acceptance technical inspections for the Aircraft, and, as long as the Aircraft remains in its current hangar until acceptance by Purchaser or termination of this Offer, Purchaser also waives the right to conduct any pre-acceptance test flights.

**4.     Delivery.**

A.     Unless a later date is mutually agreed to in writing, delivery shall take place on February 17, 2009.  Delivery shall be at Richmond, Virginia.  Seller shall pay any out-of-pocket costs for delivery.

B.     The Aircraft will be delivered with a valid US Certificate of Airworthiness.  The Aircraft will be delivered with all airworthiness directives, and all mandatory service bulletins performed, and will be delivered with all original logs, wiring diagrams, records, maintenance manuals and flight manuals.

**5.     Conveyance of Title.**

A.     Conveyance of title will be by Federal Aviation Administration Bill of Sale and Long Form Warranty Bill of Sale accompanied by appropriate releases of any liens or other encumbrances that exist against the Aircraft, its engines or equipment.  Purchaser agrees to waive Cape Town International Registry requirements for this transaction.

B.     All documents necessary to convey clear unencumbered title of the Aircraft, its engines, and components from Seller to Purchaser shall be pre-positioned with Escrow Agent prior to final delivery.

C.     Upon Purchaser's acceptance of the Aircraft at final delivery, Purchaser shall instruct Escrow Agent to pay the deposit to Seller.  Purchaser shall also pay the closing balance to Seller.  Upon receipt of the total purchase price, Seller shall instruct Escrow Agent to transfer free and clear title to Purchaser by recording all documents described in Section 5A above with the Federal Aviation Administration.  Purchaser and Seller shall split the cost of fees payable to Escrow Agent.

**6.     Insurance.**

Until delivery, Seller shall keep the Aircraft fully insured, and, in the event of any loss, this transaction shall, at the election of Purchaser, become null and void, the earnest money deposit promptly refunded in full to Purchaser, and all proceeds of insurance shall be the sole property of Seller.

**7.     Special Terms and Conditions.**

A.     The Aircraft shall be delivered with less than 2900 Hours Total Time Since New.

2

B.   Purchaser recognizes the sale of the Aircraft is contingent upon Bankruptcy Court approval.   Subject to Section 5 above, upon approval by the United States Bankruptcy Court, Eastern District of Virginia, Richmond Division, the earnest money deposit shall become non-refundable.

C.   The Aircraft will be delivered with fully paid up and valid Honeywell MSP and Bombardier Smart Parts contracts for the engines, APU and airframe.

**8.   Date of Offer.**

The date of this Offer, if accepted, shall be the date Seller accepts this Offer and so notifies Purchaser in writing.

**9.   Time of Essence.**

If Seller does not accept this Offer on or before 11:59 PM EST, Friday, February 13, 2009, this Offer shall be null and void.

**In Witness Whereof,** the parties hereto have executed this Offer on the dates set forth below.

AGREED AND ACCEPTED

Omni Air Transport, LLC                    CC Aviation LLC

By:  Circuit City Stores, Inc., its manager
and sole member

By: _____              By: _____
Daniel S. Burnstein                              Name: _____
President                                          Title: _____
Date: 2/11/09                                   Date: _____

3

**<u>EXHIBIT B</u>**

**(Next Highest Bid)**

Aircraft Purchase Offer

This Aircraft Purchaser Offer ("Offer") is made by Meisner Aircraft Inc, a Wisconsin company and Jet Sales Stuart LLC, a Delaware company ("Purchaser"), such term includes its successors and assigns), to purchase the following Aircraft from CC Aviation LLC, a Virginia Limited liability company, whose address is 9950 Mayland Drive, Richmond, Virginia 23233 ("Seller")

| | |
|---|---|
| **Manufacturer/Year:** | **2001** |
| **Model:** | **Learjet 45** |
| **Serial Number:** | **45-123** |
| **Registration Number:** | **N484LC** |

For purpose of this Offer "Aircraft" includes the engines, radios, navigational devices, instrumentation, appurtenances, fixtures, accessories, spares, inventory, log books, flight and component manuals, maintenance records and loose equipment.

Conditions of this Offer are as follows:

1) **Purchase Price**

   A. The total purchase prices shall be Three Million Nine Hundred Thousand (3,900,000) US Currency). The purchase price does not include any taxes imposed on the sale, use or ownership of the Aircraft whether imposed on Purchaser or Seller.

   B. Upon Seller's acceptance of this Offer, Purchaser has made an earnest money deposit in the amount of One Hundred Fifty Thousand Dollars ($150,000) (US Currency), which shall be deposited in escrow with Insured Aircraft Title Service, Inc. Oklahoma City, Oklahoma ("Escrow Agent"). The closing balance of Three Million Six Hundred Thousand Dollars ($3,750,000) (US Currency) shall be payable upon final delivery.

2) **Title**

   Seller represents and warrants to Purchaser that it is authorized to sell, and has full legal and beneficial title to, the Aircraft, subject to the approval of the United States Bankruptcy Court, Eastern District of Virginia, Richmond Division. Seller will deliver Aircraft free and clear of any and all liens, claims, or other encumbrances to its title.

3) **Condition of Aircraft**

   Aircraft is being sold "as is, where is". Purchaser acknowledges that there are no express or implied warranties with respect to merchantability or fitness of Aircraft other than the existing Manufacturer's warranties for the Aircraft. Purchaser acknowledges that there are no express or implied warranties with respect to merchantability or fitness of Aircraft other than the existing Manufacturer's warranties for the Aircraft. Purchaser waives any pre-acceptance technical inspections for the Aircraft and, as long as the Aircraft remains in its current hangar until acceptance by Purchaser or termination of this Offer, Purchaser also waives the right to conduct any pre-acceptance test flights.

4) **Delivery**

A. Unless a later date is mutually agreed to in writing, delivery shall take place within Three (3) business days from the final Court Order. Delivery shall be at Richmond, Virgina. Seller shall pay any out-of-pocket costs for delivery.

B. Aircraft will be delivered with a valid US Certificate of Airworthiness. Aircraft will be delivered with all Airworthiness directives, and all mandatory service bulletins performed; and will be delivered with all original logs, wiring diagrams, records, maintenance manuals and flight manuals

5) **Conveyance of Title**

A. Conveyance of title will be by Federal Aviation Administration Bill of Sale and Long Form Warranty Bill of Sale accompanied by appropriate releases of any liens or other encumbrances that exist against Aircraft, its engines or equipment. Purchaser agrees to waive Cape Town International Registry requirements for this transaction.

B. All documents necessary to convey clear unencumbered title of Aircraft, its engines, and components from Seller to Purchaser shall be pre-positioned with Escrow Agent prior to final delivery.

C. Upon Purchaser's acceptance of Aircraft at final delivery, Purchaser shall instruct Escrow Agent to pay deposit to Seller. Purchaser shall also pay closing balance to Seller. Upon receipt of the total purchase price Seller shall instruct Escrow Agent to transfer free and clear title to Purchaser by recording all documents described in Section 6A above with Federal Aviation Administration. Purchaser and Seller shall split the cost and fees payable to the Escrow Agent.

6) **Insurance**
Until delivery, Seller shall keep Aircraft fully insured, and in the event of any loss, this transaction shall at the election of the Purchaser, become null and void, the earnest money deposit promptly refunded in full to the Purchaser, and all proceeds of insurance shall be the sole property of the Seller.

7) **Special Terms and Conditions**

1. Aircraft shall be delivered with less than 2900 Hours Total Time Since New.

2. Buyer recognizes the sale of the aircraft is contingent upon Bankruptcy Court approval. Subject to Section 6 above, upon approval by the United States Bankruptcy Court Eastern District of Virginia, Richmond Division, the earnest money deposit shall become non-refundable.

3. Aircraft will be delivered with fully paid up and valid Honeywell MSP and Bombardier Smart Parts contracts for the engines, APU and airframe.

8) **Date of Offer**
The Date of this Offer, if accepted, shall be the date the Seller accepts this Offer and so notifies Purchaser in writing.

9) **Time of Essence**

If Seller does not accept this Offer on or before 12:00 PM EDT, February 18, 2009, this Offer Shall be null and void.

**In Witness Whereof**, the parties hereto have executed this Offer the date set forth below.

**AGREED AND ACCEPTED**

Meisner Aircraft Inc.

CC Aviation LLC

By: Circuit City Stores, Inc., its manager and sole member

By _GARY B MEISNER_

Title _Pres_

Signature _(signature)_

Date _2/11/09_

By _____

Title _____

Signature _____

Date _____

Jet Sales Stuart, LLC

_(signature)_

W. Dennis Martin

Member/Manager

2-11-09

**<u>EXHIBIT C</u>**

**(Brokerage Agreement)**

# MARTINAIR INC.
## AIRCRAFT CHARTER/MANAGEMENT

### *AIRCRAFT SALES MANAGEMENT AGREEMENT*

THIS AGREEMENT is made on January 16, 2009 by and between Martinair, Inc. ("Martinair") whose address is 5733 Huntsman Rd, Richmond International Airport, 23250, and Circuit City Stores, Inc. ("Circuit City") whose address is 9950 Maryland Drive, Richmond, VA 23233-1464 and its assigns. Circuit City owns or has right to sell the following aircraft: **2001 Learjet 45, serial number 45-123, Registration N484LC,** (hereinafter the "Aircraft").

Martinair agrees to undertake a promotional sales effort directed toward the sale of Circuit City's Aircraft. In consultation, and with the final approval of Circuit City, Martinair will prepare literature, brochures, mailers, email and internet notices and listings and technical specifications and will distribute all such materials as it deems necessary. Such efforts by Martinair shall be of a character, quality and quantity in accordance with industry practices for the sale of similar aircraft. Subject to the approval of Circuit City, Circuit City will pay costs of all such marketing and advertising activities incurred by Martinair.

Circuit City will assist Martinair by making the aircraft available for inspection with all information regarding the aircraft and its equipment. Martinair will advise of all written offers and after consultation with Circuit City, and under the direction of Circuit City, negotiate directly with all prospective purchasers. If an offer is accepted by Circuit City, Martinair will assist the Circuit City's legal counsel in preparing a sales agreement, oversee any pre-purchase inspections and assist in the closing of the transaction as may be requested by Circuit City.

In consideration of the above undertaking of Martinair, Circuit City hereby selects Martinair to manage the sale of the above aircraft, giving Martinair exclusive right to sell said aircraft for a period of 180 days starting on November 14, 2008. Circuit City agrees that in the event a sale is made and Circuit City receives all of the funds as set forth in the sales contract, then Martinair shall be paid a commission of **$90,000** at the time of closing. Should Martinair purchase the aircraft for its own accord or in order to facilitate any transaction, then no commission shall be payable to Martinair by Circuit City and Circuit City shall receive the net proceeds of such sale.

Circuit City agrees that it will not directly or indirectly sell or in any manner attempt to negotiate the sale of the aircraft during the term of this agreement and will refer all inquires to Martinair. If Circuit City (a) due solely to its actions, fails to close after receipt from Martinair of an offer that is accepted by Circuit City or (b) terminates this agreement for reasons other than the actions of others, prior to termination date or (c) directly or indirectly sells or leases the aircraft within 6 months after termination of the above exclusive agreement to any customer initiated, procured or contacted by Martinair during said period, then and in any of said events, Circuit City agrees to pay Martinair a commission of **$90,000**. In the event Circuit City determines to enter a Lease instead of a sale of the aircraft to a Lessee found by Martinair, Martinair shall be paid a sum equal to two (2) monthly base rental payments at time of closing from Circuit City. Circuit City and Martinair agree that the terms of this agreement and any resulting sale or lease shall remain confidential. Upon delivery of the airworthy aircraft to the new owner, Circuit City will include with the aircraft all flight manuals, all airframe and engine logbooks and records, all support equipment, spare parts and components pertaining to the aircraft.

**MARTINAIR, INC.**

By: _____

Title _____

**CIRCUIT CITY STORES, INC.**

By: _____

# CERTIFICATE OF NOTICE

```
District/off: 0422-7          User: jafarbayj         Page 1 of 1            Date Rcvd: Feb 17, 2009
Case: 08-35653                Form ID: pdforder       Total Served: 1

The following entities were served by first class mail on Feb 19, 2009.
aty          +Gregg M. Galardi,   Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
              Wilmington, DE 19899-0636

The following entities were served by electronic transmission.
NONE.                                                                        TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                        TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Feb 19, 2009                    Signature:    _Joseph Speetjens_