BAN    K OF AMERICA, N.A.

By_____
Print Name:_____
Title:_____

BANK OF AMERICA, N.A. (acting
through its Canada branch)

By_____
Print Name:_____
Title:_____

WACHOVIA CAPITAL FINANCE
CORPORATION (CENTRAL)

By_____
Print Name:_____
Title:_____

GENERAL ELECTRIC CAPITAL
CORPORATION

By_____
Print Name:_____
Title:_____

JPMORGAN CHASE BANK, N.A.

By_____
Print Name:_____
Title:_____

NATIONAL CITY BUSINESS CREDIT,
INC.

By_____
Print Name:_____
Title:_____

20

GMA   C COMMERCIAL FINANCE, LLC


By_____
Print Name:_____
Title:_____

WELLS FARGO RETAIL FINANCE, LLC

By_____
Print Name:_____
Title:_____

BURDALE FINANCIAL, LTD.


By_____
Print Name:_____
Title:_____

FIFTH THIRD BANK

By_____
Print Name:_____
Title:_____

TEXTRON FINANCIAL CORPORATION

By_____
Print Name:_____
Title:_____

SUNTRUST BANK

By_____
Print Name:_____
Title:_____

21

UPS CAPIT   AL CORPORATION

By_____
Print Name:_____
Title:_____

WEBSTER BUSINESS CREDIT
CORPORATION

By_____
Print Name:_____
Title:_____

PNC BANK, N.A.

By_____
Print Name:_____
Title:_____

UBS LOAN FINANCE LLC

By_____
Print Name:_____
Title:_____

CAPITAL ONE LEVERAGE FINANCE
CORP.

By_____
Print Name:_____
Title:_____

1129567.7

# APPENDIX "C"

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

------------------------------------------------------- :
In re:                                                  :    Chapter 11
                                                        :
CIRCUIT CITY STORES, INC., et al.                       :    Case Nos. 08-35653 through 08-35670
Debtors                                                 :    Jointly Administered
                                                        :
                                                        :
------------------------------------------------------- :

**FINAL ORDER APPROVING THIRD AMENDMENT TO SENIOR SECURED SUPER-
PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT AND MODIFYING
FINAL ORDER ENTERED PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363
AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS
OF POST-PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL
SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2)
GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE
DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR
ADEQUATE PROTECTION AND (4) MODIFYING THE AUTOMATIC STAY**

THIS MATTER having come before this Court upon the motion (the "**Motion**") by

Circuit City Stores, Inc. and its affliated debtors, each as debtors and debtors-in-possession

(collectively, the "**Debtors**"), in the above captioned chapter 11 cases (collectively, the

"**Cases**"), seeking, among other things:

(i)     entry of a final order (this "**Final Order**") authorizing the Debtors to enter into and deliver that certain Third Amendment to Senior Secured Super-Priority Debtor-in-Possession Credit Agreement in substantially the form annexed to the Motion (the "**Third Amendment**") and perform their obligations thereunder, to be effective *nunc pro tunc* as of January 17, 2009; and

(ii)     Waive any applicable stay (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure) and provide for immediate effectiveness of this Final Order.

The Bankruptcy Court having considered the Motion and the evidence submitted at the hearing on this Final Order held on February 17, 2009 and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Bankruptcy Court, due and proper notice of the Motion and the hearing having been given; a hearing having been held and concluded on February 17, 2009; and it appearing that approval of the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     **Petition Date**. On November 10, 2008 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Virginia (the "**Court**"). The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases. On the Petition Date, InterTAN Canada Ltd. and certain of its subsidiaries filed a notice seeking an initial order under the Companies' Creditors Arrangement Act (Canada) ("**CCAA**").

B.     **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     **Committee Formation**. On November 13, 2008, the United States Trustee for the Eastern District of Virginia appointed an official committee of unsecured creditors in the Cases (the "**Statutory Committee**").

D.     **Borrowing Order**. On December 22, 2008, the Court entered a Final Order Pursuant To 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of The Federal Rules Of Bankruptcy Procedure (1) Authorizing Incurrence By The Debtors of Post-Petition Secured Indebtedness With Priority Over All Secured Indebtedness and With Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use Of Cash Collateral By The Debtors Pursuant To 11 U.S.C. Section 363 and Providing For Adequate Protection and (4) Modifying The Automatic Stay (the "**Final DIP Order**"). Pursuant to the Final DIP Order, the Debtors were authorized to, and did, enter into that certain Senior Secured Super-Priority Debtor-In-Possession Credit Agreement (as amended, modified or supplemented prior to entry of, and in accordance with the terms of, this Final Order (including, without limitation pursuant to that certain letter agreement dated as of December 4, 2008 and the Second Amendment to

3

Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of December 19, 2008, collectively, the "**Prior DIP Amendments** ") and as hereafter amended, modified or supplemented and in effect from time to time, the "**DIP Credit Agreement**"), by and between, among others, Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., Circuit City Stores PR, LLC, and InterTAN Canada Ltd. (collectively, the "**Borrowers**"), Bank of America, N.A., as administrative agent and collateral agent (the "**U.S. DIP Agent**"), Bank of America, N.A. (acting through its Canada branch) as Canadian administrative agent ("**Canadian DIP Agent**") (collectively with the U.S. DIP Agent, the "**DIP Agents**"), and the Lenders party thereto (the "**DIP Lenders**," collectively with the DIP Agents, the "**DIP Secured Parties**"), and (II) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, the "**DIP Financing Agreements**"); and (b) incur the "**Obligations**" under and as defined in the DIP Credit Agreement (collectively, the "**DIP Obligations**").

     E.    **Sale Order**.  On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going-out-of-business sales at the Debtors' remaining 567 stores pursuant to an Agency Agreement between the Debtors and a joint venture, as Agent (the "**Sale Order**"). On January 17, 2009, the Agent commenced going-out-of-business sales pursuant to the Agency Agreement.  As a result of the entry of the Sale Order and the commencement of the going-out-

of-business sales, the Debtors were unable to obtain loans under the DIP Credit Agreement as a result of the Debtors' inability to comply with the conditions precedent thereunder.

F.    **Funding of Wind Down Budget**.  Since the commencement of the going-out-of-business sales, the DIP Lenders and the Debtors have been negotiating an amendment to the DIP Credit Agreement to provide for repayment of the DIP Obligations and the funding of the expenses of sale and the Debtors' wind down expenses through February 28, 2009 in accordance with the Wind Down Budget attached to the Motion and the Third Amendment.   Pending finalization of such negotiations and the entry of this Final Order, the DIP Lenders have made loans and advances to the Debtors and have permitted the Debtors to use certain cash which would otherwise secure outstanding letter of credit obligations ("Cash"), in each case, to fund such expenses.  The Debtors and the Required Lenders (as defined in the DIP Credit Agreement) have agreed to the terms of the Third Amendment.

G.    **Relief Requested**.  The Final DIP Order provided that the Debtors and the DIP Agents may amend, modify, supplement or waive any provision of the DIP Financing Agreements without further approval of the Court unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the Total Commitments of the DIP Lenders under the DIP Financing Agreements, (iii) changes the maturity date, or (iv) effects a material change to the terms of the DIP Financing Agreements.   The Debtors and the DIP Lenders believe that (i) the Third Amendment "effects a material change to the terms of the DIP Financing Agreements", and (ii) that certain provisions of the Final Borrowing Order must be amended to conform to the terms of the Third Amendment.

---

All capitalized terms used herein and not otherwise defined have the same meaning herein as in the Final DIP Order.

H.    **Notice**.  The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 9013-1.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on February 12, 2009, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) counsel to the Pre-Petition Agent (as defined below), (iii) the Pre-Petition Agent, (iv) counsel to the DIP Agents, (v) counsel to the Statutory Committee, (vi) the Securities and Exchange Commission, (vii) all secured creditors of record, (viii) all parties which have filed prior to February 12, 2009 a request for notices in the Cases, (ix) the office of the United States Trustee, (x) the Internal Revenue Service, and (xi) all of the Debtors' current landlords.  Such notice of the Final Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Bankruptcy Court.

I.    **Findings Regarding the Post-Petition Financing**.

(i)    **Need for Post-Petition Financing**.  An immediate need exists for the Debtors to obtain funds from the DIP Facility and to use Cash in order to continue operations and to administer and preserve the value of their estate.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility and the use of Cash, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders and the sale of the Debtors' assets.

(ii)    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (A) unsecured credit allowable under Bankruptcy Code section 503(b)(1)

as an administrative expense, (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b), (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement, as amended by the Third Amendment, the Final DIP Order, and this Final Order.

J.    **Use of Proceeds of the DIP Facility**. Proceeds of the DIP Facility and Cash shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Wind Down Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the Third Amendment), solely for (a) working capital and general corporate purposes, and (b) payment of costs of administration of the Cases, in each case, to the extent set forth in the Wind Down Budget.

K.    **Extension of Financing**. The DIP Secured Parties have indicated a willingness to provide financing to certain of the Debtors and to permit the Debtors to use certain Cash in accordance with the Third Amendment, the DIP Credit Agreement and the Wind Down Budget subject to (i) the entry of this Final Order, and (ii) findings by this Court that such financing is essential to the Debtors' estate, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Final DIP Order, this Final Order and the DIP Facility (including the Third Amendment) will not be affected by any subsequent reversal, modification, vacatur or amendment of the Final DIP Order, this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

L.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the Third Amendment are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the Third Amendment was negotiated in good faith and at arms' length between the Debtors and the DIP Secured Parties, and (iii) use of the proceeds to be extended under the DIP Facility, as modified by the Third Amendment, will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

M.    **Relief Essential; Best Interest**.  The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates that the Debtors be allowed to enter into the Third Amendment.

N.    **Entry of Final Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, and with the consent of the Debtors, the Statutory Committee, the Pre-Petition Secured Parties and the DIP Secured Parties to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The Motion is granted in accordance with the terms and conditions set forth in this Final Order and the Third Amendment.

2.    **Approval of Entry Into Third Amendment**.

The DIP Financing Agreements, as modified by the Third Amendment and this Final Order, are hereby approved on a final basis. The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the Third Amendment and on a final basis to incur and to perform the DIP Obligations (including, without limitation, the payment of any expenses or fees required therein) in accordance with, and subject to, the terms of the Final DIP Order, this Final Order and the DIP Financing Agreements (including the Third Amendment) and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors hereunder and thereunder. The DIP Financing Agreements, as amended by the Third Amendment represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

3.    **Amendments to Final DIP Order**.

Effective as of January 17, 2009, the Final DIP Order is hereby amended as follows:

(a)    All references to the "DIP Credit Agreement" shall mean and refer to that certain Senior Secured Super-Priority Debtor-In-Possession Credit Agreement (as amended, modified or supplemented pursuant to that certain letter agreement dated as of December 4, 2008, the Second Amendment to Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of December 19, 2008, and the Third Amendment) and as hereafter amended, modified or supplemented and in effect from time to time.

(b)    All references to the "Budget" shall mean and refer to both the "Budget" and the "Wind Down Budget" (as each is defined in the Third Amendment).

(c)    The provisions of Paragraph 2(b) of the Final DIP Order are hereby deleted in their entirety and the following substituted in their stead:

9

(c)    In order to enable them to continue to operate their business, subject to the terms and conditions of this Final Order, the DIP Credit Agreement, the other DIP Financing Agreements, the Final DIP Order, and the Wind Down Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtors are hereby authorized under the DIP Facility to borrow (A) up to the aggregate commited amount of $1,100,000,000 (consisting of $1,050,000,000 for the Debtors and $50,000,000 for InterTAN Canada Ltd. (to be guaranteed by the Debtors)) through and including December 29, 2008, (B) up to the aggregate committed amount of $900,000,000 (consisting of $850,000,000 for the Debtors and $50,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) on December 30, 2008 and December 31, 2008, (C) up to the aggregate committed amount of $910,000,000 (consisting of $850,000,000 for the Debtors and $60,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) for the period January 1, 2009 through and including January 16, 2009, (D) up to the aggregate committed amount of $900,000,000 (consisting of $850,000,000 for the Debtors and $50,000,000 for borrowings by InterTAN Canada Ltd. (to be guaranteed by the Debtors)) for the period January 17, 2009 through and including February 15, 2009 (E) up to the aggregate committed amount of $265,000,000 (of which $225,000,000 shall be Domestic Commitments and $40,000,000 shall be Canadian Commitments (to be guaranteed by the Debtors)) from February 16, 2009 through February 27, 2009, and (F) thereafter, $140,000,000 (of which $100,000,000 shall be Domestic Commitments and $40,000,000 shall be Canadian Commitments (to be guaranteed by the Debtors)), all in accordance with the terms and conditions of the DIP Credit Agreement and the Wind Down Budget,

it being acknowledged that after payment in full in cash of all Loans, the DIP Lenders shall have no obligation to make further Loans or credit extensions to the Debtors and the Debtors may use Cash to the extent permitted in the Third Amendment.

(d)    The provisions of Paragraph 2(c) of the Final DIP Order are hereby deleted in their entirety and the following substituted in their stead:

The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) and any Cash shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget  (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement) solely for (a) working capital and general corporate purposes and (b) payment of costs of administration of the Cases, in each case, to the extent set forth in the Budget.

(e)    The provisions of Paragraph 8 of the Final DIP Order are hereby deleted in their entirety and the following substituted in their stead.

(a)    Subject to the terms and conditions contained in this paragraph 8, the DIP Liens, DIP Superpriority Claims, the Pre-Petition Liens, the Pre-Petition Replacement Liens, the Pre-Petition Indemnity Accounts and the Pre-Petition Superpriority Claims are subordinate only to allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6) (the "**Carve Out**").

(b)    The Carve Out shall not extend to (i) the allowed actual and necessary expenses incurred by members of the Statutory Committee and allowed actual and necessary expenses (but excluding legal fees for services rendered) incurred by such members' counsel in connection with the members' service on the Statutory Committee; or (ii)

11

allowed fees and expenses of attorneys, financial advisors and investment bankers

employed by the Debtors and any official committee(s) of creditors pursuant to Sections

327 and 1103 of the Bankruptcy Code (the "**Case Professionals**").  Any such fees and

expenses shall be paid only upon the request of the Debtors made on or before February

28, 2009 and  then only to the extent and in the amounts specified in the Wind Down

Budget and permitted by the Third Amendment, *provided* that any such fees and

expenses shall not be required to be paid to the extent (x) incurred in connection with the

assertion or joinder in any claim, counterclaim, action, proceeding, application, motion,

objection, defenses or other contested matter, the purpose of which is to seek any order,

judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or

subordinating, in whole or in part, (i) the DIP Obligations, (ii) the Pre-Petition Debt, (iii)

the Pre-Petition Liens in the Pre-Petition Collateral, or (iv) the DIP Agents' or DIP

Secured Parties' Liens in the DIP Collateral, or (B) preventing, hindering or delaying,

whether directly or indirectly, the DIP Agents', DIP Secured Parties' or Pre-Petition

Secured Parties' assertion or enforcement of their Liens, security interest or realization

upon any DIP Collateral, Pre-Petition Collateral, the Pre-Petition Replacement Liens, or

the Pre-Petition Indemnity Accounts, provided, however, that such exclusion does not

encompass any investigative work conducted by the Case Professionals prior to bringing

any action relating to the foregoing, (y) in using cash collateral of the DIP Agents or the

DIP Secured Parties, selling or otherwise disposing of any other DIP Collateral, or

incurring any indebtedness not permitted under the DIP Credit Agreement, without the

DIP Agents' express written consent or (z) arising after the conversion of any of the

Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.  Nothing contained

in this Final Order shall be deemed a consent by the Pre-Petition Secured Parties, or DIP

Secured Parties to any charge, lien, assessment or claim against the DIP Collateral, the

Pre-Petition Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity

Accounts under Section 506(c) of the Bankruptcy Code or otherwise.  Nothing herein

shall be construed to obligate the Pre-Petition Secured Parties, or DIP Secured Parties, in

any way, to pay the professional fees or U.S. Trustee Fees, or to assure that the Debtors

have sufficient funds on hand to pay any professional fees or U.S. Trustee Fees.  The

Debtors shall be permitted to pay compensation and reimbursement of expenses allowed

and payable under sections 330 and 331 of the Bankruptcy Code and in accordance with

the Budget (subject to any variances thereto permitted under the terms and conditions of

the DIP Credit Agreement), as the same may be due and payable.  The payment of the

Carve Out shall not reduce the amount of the DIP Obligations or the Pre-Petition Debt.

Notwithstanding the foregoing, the Debtors shall request payment of approved

professional fees of both the Debtors' and the Statutory Committee's professionals up to

the amounts set forth in the Budget.

(f)  The provisions of Paragraph 13 of the Final DIP Order are hereby deleted in their entirety

and the following substituted in their stead:

All (i) DIP Obligations shall be immediately due and payable, and (ii) authority to

use the proceeds of the DIP Financing Agreements and to use cash collateral shall cease,

both on the date that is the earliest to occur of: (i) with respect to the Domestic

Borrowers, (A) the earlier of (x) April 30, 2009 and (y) the termination or completion of

the Sale (as defined in the Agency Agreement as defined in the DIP Credit Agreement),

(B) the date on which the maturity of the Loans are accelerated and the Commitments are

terminated in accordance with the DIP Credit Agreement, and (C) the Consummation Date (as defined in the DIP Credit Agreement), and (ii) with respect to the Canadian Borrower, (A) the earlier of (x) June 30, 2009 and (y) the consummation of a sale of the Canadian Loan Parties or substantially all of their assets, (B) the date on which the maturity of the Loans are accelerated and the Commitments are terminated in accordance with the DIP Credit Agreement, and (C) the Consummation Date (the "**Commitment Termination Date**").

(g)    The Final DIP Order is further amended by adding the following:

The Debtors shall promptly furnish counsel to the Statutory Committee with copies of all reports furnished to the DIP Lenders under Section 5.01 of the DIP Credit Agreement, as amended by the Third Amendment.

4.    **Other Rights and Obligations**.

(a)    **Continued Effectivenss of Final DIP Order and DIP Credit Agreement.** Except as expressly provided herein, (i) all provisions of the Final DIP Order remain in full force and effect.  Without limiting the foregoing, the DIP Secured Parties shall continue to be entitled to all DIP Protections to secure the DIP Obligations and the Pre-Petition Secured Parties shall continue to be entitled to all Adequate Protection granted thereunder, and (ii) all provisions of the DIP Credit Agreement and the other DIP Financing Agreements remain in full force and effect.  Without limitng the foregoing, nothing contained herein or in the Third Amendment shall be deemed to constitute a modification or waiver of, or extension of time set forth in, any provision of the DIP Credit Agreement, the Final DIP Order, or any other DIP Financing Agreement which requires the Debtors to cash collateralize and/or repay the Letters of Credit Outstanding or other Obligations (as each is defined in the DIP Credit Agreement), each

14

of which provisions remain in full force and effect as written. Nothing contained herein shall permit the Debtors to use any Cash after February 28, 2009.

      (b)    **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Final Order**. The DIP Agent and the DIP Lenders each have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of the Final DIP Order and this Final Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted therein and herein, with respect to any such claim. Since the loans made pursuant to the DIP Credit Agreement are made in reliance on the Final DIP Order and this Final Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of the Final DIP Order or this Final Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and

claims granted to the DIP Secured Parties under the Final DIP Order, this Final Order and/or the

DIP Financing Agreements.

(c)      **Binding Effect**.  The provisions of this Final Order shall be binding upon

and inure to the benefit of the DIP Secured Parties and the Pre-Petition Secured Parties, the

Debtors, and their respective successors and assigns (including any trustee or other fiduciary

hereinafter appointed as a legal representative of the Debtors or with respect to the property of

the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of

any such chapter 11 or chapter 7 Case.

(d)      **No Third Party Rights**.  Except as explicitly provided for herein, this

Final Order does not create any rights for the benefit of any third party, creditor, equity holder or

any direct, indirect, or incidental beneficiary.

(e)      **Survival of Final Order**.  The provisions of this Final Order and any

actions taken pursuant hereto shall survive entry of any order which may be entered (i)

confirming any Plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of

the Bankruptcy Code, or (iii) to the extent authorized by Applicable Law, dismissing any of the

Cases, (iv) withdrawing of the reference of any of the Cases from this Court, or (v) providing for

abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms

and provisions of this Final Order shall continue in full force and effect notwithstanding the

entry of such order.

(f)      **Inconsistency**.  In the event of any inconsistency between the terms and

conditions of the DIP Financing Agreements, as amended by the Third Amendment, and the

Final DIP Order, as amended by this Final Order, the provisions of the Final DIP Order, as

amended by this Final Order shall govern and control. The Final DIP order and this Final Order constitute one composite order relating to the DIP Financing and Adequate Protection.

(g) **Enforceability**. This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to January 17, 2009 immediately upon execution hereof.

(h) **Objections Overruled**. All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

(i) **No Waivers or Modification of Final Order**. The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Agents and the Pre-Petition Agent and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agents and the Pre-Petition Agent.

(j) **Waiver of any Applicable Stay**. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

(k) **Retention of Jurisdiction**. The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

SO ORDERED by the Bankruptcy Court this 17th day of February, 2009.

Feb 17 2009

/s/ Kevin R. Huennekens

UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:  2/17/09

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                               /s/ Douglas M. Foley
                               Douglas M. Foley

18

**Circuit City Stores, Inc**
**Weekly Cash Flow to Banks (2 3 09 4pm)**
**Initial GOB Sale Wind Down Period**
**($ in 000's)**

| Description | 11 Week GOB Sale (only 6 Wks shown) | | | | | | Total |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Week 1 24-Jan | Week 2 31-Jan | Week 3 7-Feb | Week 4 14-Feb | Week 5 21-Feb | Week 6 28-Feb | First 6 Wks Wks 1-6 |
| **A. PROCEEDS FROM SALE OF ASSETS** | | | | | | | |
| GOB Sales Receipts | 187,496 | 164,060 | 125,137 | 146,595 | 125,286 | 105,234 | 853,807 |
| Rent | | | 24,741 | | | | 24,741 |
| Occupancy Expenses per Schedule 4.1(a) | 4,445 | 4,445 | 4,445 | 4,445 | 4,445 | 4,445 | 26,672 |
| Payroll & Taxes | | 2,381 | 21,432 | 2,381 | 21,432 | 2,381 | 50,008 |
| Advertising / Other | 5,000 | 4,500 | 4,000 | 3,500 | 3,000 | 3,000 | 23,000 |
| GOB Store Expenses | 9,445 | 11,327 | 54,619 | 10,327 | 28,877 | 9,827 | 124,421 |
| GOB Net Recovery Proceeds @ 70.5% | 178,051 | 152,733 | 70,518 | 136,268 | 96,408 | 95,407 | 729,386 |
| **Proceeds from Sale of Assets** | | | | | | | |
| Sharing Proceeds from GOB | | | | | | | - |
| Net Proceeds from Canada | | | | | | | |
| Corporate Jet - Hawker | 4,500 | | | | | | 4,500 |
| Misc Fixed Assets | | | | | | | - |
| A/R Float | 1,000 | 3,000 | | | | | 4,000 |
| Cash in Stores | 2,600 | | | | | | 2,600 |
| Per Diem Rent GOB | 5,986 | 5,986 | | | | | 11,972 |
| Proceeds from Other Assets | 14,086 | 8,986 | - | - | - | - | 23,072 |
| **Total Initial Cash Proceeds** | 192,136 | 161,719 | 70,518 | 136,268 | 96,408 | 95,407 | 752,457 |
| **B. REDUCTIONS TO INITIAL PROCEEDS** | | | | | | | |
| *Corporate Office Costs During GOB* | | | | | | | |
| Payroll & Taxes | 3,473 | 3,473 | 3,473 | 3,473 | 3,473 | 3,473 | 20,838 |
| Rent & Utilities | - | 556 | - | - | - | 556 | 1,112 |
| General Operating | 1,725 | 1,725 | 1,725 | 1,725 | 525 | 525 | 7,950 |
| IBM / Other IT Costs | 4,350 | 6,625 | 250 | 250 | 250 | 6,625 | 18,350 |
| Subtotal | 9,548 | 12,379 | 5,448 | 5,448 | 4,248 | 11,179 | 48,250 |
| *DC & Service Costs During GOB* | | | | | | | |
| Payroll & Taxes | 1,704 | 1,704 | 1,704 | 1,704 | 1,704 | 1,704 | 10,224 |
| Rent & Utilities | 246 | 1,617 | 246 | 246 | 246 | 1,617 | 4,218 |
| Other / General Operating | 725 | 725 | 725 | 725 | 450 | 450 | 3,800 |
| Subtotal | 2,675 | 4,046 | 2,675 | 2,675 | 2,400 | 3,771 | 18,242 |
| *Other Admin Claims During GOB* | | | | | | | |
| Post Petition Trade Credit / AP Accruals | 11,000 | 11,000 | 11,000 | 7,000 | | | 40,000 |
| Management Incentive Plan | | | | | | | - |
| Customer Rebates | 1,635 | 1,635 | 1,635 | | | | 4,906 |
| Customer Deposits | 6,000 | 6,000 | 6,000 | 6,000 | | | 24,000 |
| Gift Cards (and sales returns) | 9,000 | 9,000 | 9,000 | | | | 27,000 |
| Payroll for week(s) prior to GOB | 30,000 | | 12,500 | | | | 42,500 |
| Fund Utilities Reserve | | 5,000 | | | | | 5,000 |
| Sales Tax for Sales Prior to GOB | 4,062 | 14,817 | - | 49 | 9,629 | 5,816 | 34,373 |
| Vacation for Store Employees | 750 | 750 | 750 | 750 | 750 | 750 | 4,500 |
| Debtors' Professional Fees per DIP Budget | | 4,920 | - | - | | 2,220 | 7,140 |
| Committee's Professional Fees per DIP Budget | | 1,380 | - | - | | 580 | 1,960 |
| Subtotal | 62,447 | 54,502 | 40,885 | 13,799 | 10,379 | 9,366 | 191,379 |
| **GOB Related Admin Expenses** | 74,670 | 70,927 | 49,008 | 21,922 | 17,027 | 24,316 | 257,871 |
| **C. SECURED DEBT & CASH ROLL FWD** | | | | | | | |
| Bank Fees and Expenses | 2,250 | | | 2,250 | | | 4,500 |
| Taxing Authorities | 5,000 | | | | | | 5,000 |
| Bank Professionals | 1,000 | | | | | | 1,000 |
| Secured Claims (excl bank debt) | 8,250 | - | - | 2,250 | - | - | 10,500 |
| **Net Cash Flow Related to GOB** | 109,216 | 90,792 | 21,510 | 112,096 | 79,381 | 71,091 | 484,086 |
| Beginning Loan Balance | 436,630 | 327,414 | 236,622 | 215,112 | 103,016 | 23,635 | 436,630 |
| Less: Net Cash Flow Related to GOB | (109,216) | (90,792) | (21,510) | (112,096) | (79,381) | (23,635) | (436,630) |
| Ending Loan Balance | 327,414 | 236,622 | 215,112 | 103,016 | 23,635 | | - |
| Beginning Cash Balance | - | - | - | - | - | | - |
| Plus: Net Cash Flow Related to GOB | - | - | - | - | - | 47,456 | 47,456 |
| Ending Cash Balance | - | - | - | - | - | 47,456 | 47,456 |
| LC Balance (not cash collateralized) | 92,217 | 92,217 | 92,217 | 92,217 | 92,217 | 92,217 | 92,217 |

*Court File No.: 08-CL-7841*

*IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF INTERTAN CANADA LTD. AND TOURMALET CORPORATION*

*ONTARIO*

**SUPERIOR COURT OF JUSTICE**
*(COMMERCIAL LIST)*

*Proceeding commenced at Toronto*

**FIFTH REPORT OF THE MONITOR**

**Goodmans LLP**
*Barristers & Solicitors*
*250 Yonge Street, Suite 2400*
*Toronto, Canada  M5B 2M6*

*Jay A. Carfagnini (LSUC#222936)*
*Fred Myers (LSUC#26301A)*
*L. Joseph Latham (LSCU# 32326A)*

*Tel: 416.979.2211*
*Fax: 416.979.1234*

*Solicitors for the Monitor*

\5687134