LOCATION:  GREENFIELD, WISCONSIN

*Jim D. Howe*

# COPY

*Store # 3176*

## LEASE

between

## CIRCUIT CITY STORES, INC.,

as Tenant

and

## DENTICI FAMILY LIMITED PARTNERSHIP,

as Landlord

dated ~~April~~ May 2 , 1995

C:\CIRCUIT.CTY\GRE

**EXHIBIT**

*A*

## TABLE OF CONTENTS

1.    Leased Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.    Construction of Building and Improvements . . . . . . . . . . . . . 1

3.    Lease Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4.    Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5.    Clearing of Premises by Landlord . . . . . . . . . . . . . . . . . . . 5

6.    Easements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7.    Signs and Communications Equipment . . . . . . . . . . . . . . . . 5

8.    Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9.    Maintenance, Repairs and Replacements . . . . . . . . . . . . . . . 8

10.   Payment of Utility Bills . . . . . . . . . . . . . . . . . . . . . . . . . 9

11.   Alterations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12.   Mechanics' Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13.   Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14.   Damages by Fire or Other Casualty . . . . . . . . . . . . . . . . . 13

15.   Condemnation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16.   Assignment and Subletting . . . . . . . . . . . . . . . . . . . . . . 17

17.   Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18.   Warranties and Representations . . . . . . . . . . . . . . . . . . . 18

19.   Estoppel Certificates. . . . . . . . . . . . . . . . . . . . . . . . . . 21

20.   Subordination, Non-Disturbance and Attornment . . . . . . . . . . 21

21.   Change of Landlord . . . . . . . . . . . . . . . . . . . . . . . . . . 22

22.   Tenant's Financing . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

23.   Tenant's Property and Waiver of Landlord's Lien . . . . . . . . . . 23

24.   Memorandum of Lease; Commencement Date Agreement . . . . . . 23

25.   Expiration of Term and Holding Over . . . . . . . . . . . . . . . . 24

26.   "For Rent" Signs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

27.   Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28.   Events of Tenant's Default . . . . . . . . . . . . . . . . . . . . . . 25

29.   Landlord's Remedies . . . . . . . . . . . . . . . . . . . . . . . . . 26

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

30.    Events of Landlord's Default; Tenant's Remedies . . . . . . . . . . . . . . . . . . . 28

31.    Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

32.    Compliance with Applicable Laws . . . . . . . . . . . . . . . . . . . . . . . . . . 29

33.    Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

34.    Brokers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

35.    Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

36.    Effectiveness of Lease; Tenant's Right to Terminate . . . . . . . . . . . . . . . . 32

37.    Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

38.    Demolition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

## EXHIBITS

| | |
|---|---|
| "A" | Site Plan |
| "A-1" | Legal Description |
| "B" | Index of Definitions |
| "C" | Construction Provisions |
| "D" | Removable Trade Fixtures |
| "E" | Sign Plans |
| "F" | Permitted Encumbrances |
| "G" | Subordination, Non-Disturbance and Attornment Agreement |
| "H" | Memorandum of Lease |
| "I" | Commencement Date Agreement |
| "J" | Indemnification Agreement |

GREENFIELD, WI

## LEASE

This LEASE is made as of the ___2___ day of ~~April~~ may, 1995, by and between DENTICI FAMILY LIMITED PARTNERSHIP, a Wisconsin limited partnership, having an address in care of James P. Dentici at 3405 S. Waterville Rd., Oconomowoc, Wisconsin    53066 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

W I T N E S S E T H :

That for and in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Leased Property.  Landlord demises and leases to Tenant and Tenant leases and takes from Landlord, commencing on Landlord's delivery of the "Land" (as defined below) to Tenant, all those certain "Premises" consisting of the "Building" and "Other Improvements" (both as defined in paragraph 2), as and when same are constructed and that approximately 3.81 acre parcel (the "Land"), on which the Building and Other Improvements are or will be located, as more particularly shown (approximately) outlined in red on Exhibit "A" hereto (the "Site Plan"), and described by metes and bounds or platted lot legal description on Exhibit "A-1" attached hereto and made a part hereof for all purposes.  The description of the Premises may be adjusted in accordance with Tenant's final bid set of Plans and Specifications as described in Exhibit "C" attached hereto.

2.    Construction of Building and Improvements.  Commencing immediately upon "delivery of the Land" (as defined in the Construction Provisions (herein so called) attached hereto as Exhibit "C" and incorporated herein by reference for all purposes), Tenant shall have the right to construct on the Land a one-story retail building, containing approximately 42,460 square feet of ground-floor gross leasable area plus mezzanine, with provisions for customer pickup, delivery and car stereo installation facilities, initially for use as a Circuit City Superstore (the "Building"), together with loading ramps, sidewalks, trash compactor, transformer pad and other such appurtenances and improvements (collectively, the "Other Improvements"), as more

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

1

particularly set forth in the Construction Provisions.  The Building and Other Improvements are sometimes collectively referred to herein as the "Improvements".  The Improvements shall be constructed in accordance with the "Plans and Specifications" to be prepared by Tenant as specified in the Construction Provisions.  Except as otherwise provided herein, title to the Improvements shall be deemed transferred to Landlord upon full payment of the "Tenant Improvement Allowance", as defined in the Construction Provisions.

   3.   Lease Term.  Subject to the conditions to the effectiveness of this Lease set forth in paragraph 36, the construction term (the "Construction Term") of this Lease shall commence on the date of Landlord's delivery of the Land to Tenant in accordance with, and in the condition specified in, the Construction Provisions, and shall end on the "Commencement Date" (as defined in paragraph 4 below).  The main term (the "Main Term") of the Lease shall commence on the Commencement Date and shall end on the last day of January following the twentieth (20th) anniversary of the Commencement Date.

   In addition to the Main Term, Tenant shall have the option (each such right referred to herein as a "Renewal Option") to renew and extend the Lease for four (4) consecutive five (5) year periods (each such period referred to as an "Option Period" and collectively as the "Option Periods") immediately following the Main Term, at the rent specified below.  Tenant shall give Landlord written notice of its election to exercise any Renewal Option at least one hundred eighty (180) days prior to the expiration of the Main Term or any then-current Option Period, as applicable; provided, however, that in order to avoid any forfeiture or inadvertent lapse of such Renewal Option, if Tenant shall fail to give any such notice within the one hundred eighty (180) day time limit and shall not have given Landlord prior written notice of its intent not to exercise its Renewal Option, then and as often as the same shall occur, Tenant's right to exercise such Renewal Option shall nevertheless continue, as shall its tenancy hereunder (under the same terms and conditions as theretofore in effect and notwithstanding that the Main Term or then-current Option Period shall have expired), until ten (10) business days after Landlord shall have given Tenant a written notice of Landlord's election to terminate the Renewal Option, during which period Tenant may exercise its Renewal Option at any time prior to the expiration of such ten (10) business day period.  Upon the giving of notice of renewal and extension in accordance with the foregoing provisions, the Term (defined below) of this Lease shall thereupon be

renewed and extended in accordance with such notice without further act by Landlord or Tenant, the same as if such notice had been timely given hereunder.

The Construction Term, Main Term and Option Periods are, collectively, the "Term". The term "Lease Year" shall mean each successive period of twelve (12) consecutive calendar months, commencing on the first day of each February during the Term, except that the first Lease Year shall commence on the Commencement Date and shall end on the last day of January following the first anniversary of the Commencement Date.

4.   Rent.

(a)   Construction Rent.  Commencing on May 1, 1995 or forty-five (45) days after the delivery of the Land, whichever is later, and until the payment of Base Rent commences, Tenant shall pay to Landlord Construction Rent (herein so called) in the amount of Ten Thousand an No/100 Dollars ($10,000.00) per month (prorated for any partial month). The Construction Rent shall be payable in the manner specified hereunder for the payment of Base Rent.  Tenant shall have no responsibility for any Real Estate Taxes (as defined in · paragraph 8) or any similar costs, fees, rentals or expenses during the Construction Term.

(b)   Ground Rent.  Tenant agrees to pay ground rent ("Ground Rent") for the Premises in the amounts and in the manner specified hereunder, commencing (subject to the provisions of paragraph 4 of the Construction Provisions) on the earlier of (i) the date on which Tenant opens the Premises for business or (ii) the later of (x) the date which is two hundred ten (210) days following the date Landlord delivers the Land or (y) October 1, 1995 (the "Commencement Date").

During the Main Term and each Option Period, Tenant shall pay to Landlord annual Ground Rent in the amount of One Hundred Fifty-Six Thousand Seven Hundred Ninety-Four and No/100 Dollars ($156,794.00), except that during that portion of the first Lease Year following the first calendar anniversary of the Commencement Date until the expiration of the first Lease Year (hereafter the "Stub Year"), Tenant shall pay, in addition to the $156,794.00 due for the first twelve (12) calendar months of the first Lease Year (paid in equal monthly installments over said twelve (12) months), additional Ground Rent at the rate of $13,066.17 per month (during the Stub Year).

(c)   Building Rent.  Commencing on the date on which Landlord makes payment of the Tenant Improvement Allowance as set forth in the Construction Provisions, but

in no event earlier than the date Tenant opens for business, Tenant shall pay to Landlord annual Building Rent (herein so called) in the amounts and manner specified below:

| Lease Year | Amount of Building Rent per Lease Year | Ground Rent per Lease Year | Base Rent per Lease Year |
|---|---|---|---|
| 1 | $263,206, less the total Construction Rent paid by Tenant under Paragraph 4(a) above ($50,000 estimate) (paid in equal installments over 12 months), except that, in addition to said amount, during the Stub Year, Tenant shall also pay Building Rent in a monthly amount equal to said amount divided by 12. | $156,794 | $370,000 (estimate) +Stub Year amounts |
| 2 - 5 | $280,202 | $156,794 | $436,996 |

[handwritten: 36,416.33/mo
+10% 40,057.97
+10  44,063.76]

The Ground Rent and Building Rent are collectively, the "Base Rent."

Tenant shall pay Base Rent in equal monthly installments, in advance on the first day of each succeeding calendar month throughout the Main Term, and each Option Period with appropriate proration for any partial calendar month or Lease Year, to the address given for Landlord in paragraph 33 hereof, unless Landlord shall give Tenant written notice of a change of address or of the party to whom such rents shall be payable along with written documentation reasonably satisfactory to Tenant of such party's right to receive payment hereunder.  If any Lease Year is other than twelve (12) months in length, annual Base Rent during such Lease Year shall be the product of the applicable monthly Base Rent times the number of months in such Lease Year, with appropriate proration for any partial calendar month therein.

(d)    Increases in Building Rent.  Effective on the first day of the sixth and every succeeding fifth Lease Year, including each and every Option Period, annual Building Rent payable hereunder for the Lease Year immediately preceding each such adjustment date

shall be increased by the lesser of (i) ten percent (10%) or (ii) two and one-half (2 1/2) times the percentage increase, if any, of the United States Department of Labor, Bureau of Labor Statistics Consumer Price Index for All Urban Consumers, U.S. City Average, (1982-84=100), hereafter the "CPI-U", for the month of December then most recently ended over the CPI-U for the month of December five years prior thereto. A decrease in the CPI-U shall not result in a decrease in Building Rent. In the event the base years of the CPI-U are changed, an arithmetic proration of the old and new index numbers shall be utilized. In the event the Bureau ceases to publish the CPI-U, Landlord and Tenant shall accept as a substitute index that official government index most similar thereto.

5.    Clearing of Premises by Landlord.  Landlord covenants to clear of all existing improvements and deliver the Premises to Tenant in accordance with the Construction Provisions. Landlord shall cause Landlord's Work (defined in the Construction Provisions) to be performed in a good and workmanlike manner, lien-free in accordance with paragraph 12 below, and Landlord hereby agrees to indemnify, defend and hold Tenant harmless from any loss or damage suffered by Tenant as a result of Landlord's Work. Landlord shall not permit construction traffic over that portion of the Premises upon which Tenant's building pad is to be constructed, and Landlord shall refrain from interfering with the conduct of Tenant's Work.

6.    Easements.  In addition to and simultaneously with the lease of the Premises, Landlord agrees to use its best efforts to obtain and shall fully cooperate with Tenant's efforts to obtain an easement for ingress and egress to and from and across the Premises, across the property adjacent to the Premises and the streets and highways abutting, or adjacent to the Premises, including, but not limited to, Layton Avenue. Landlord also agrees to use its best efforts to obtain and shall fully cooperate with Tenant's efforts to obtain a storm sewer easement with General Mills d/b/a Red Lobster across the property located to the south-southeast of the Premises. It shall be a condition to the effectiveness of this Lease that Tenant shall be entitled to drain storm water run-off from the Premises across adjacent property by dedicated easement.

7.    Signs and Communications Equipment.

(a)    Signs.  Tenant, at its sole cost and expense, shall have the right to construct and install upon the Premises, illuminated and other signs on the exterior of the Premises and panels on the pylon sign structure (with electrical wired box installed) having sufficient space thereon for inclusion of doublesided "face panels" and a "readerboard"

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

identifying Tenant's store, at the location so shown on the Site Plan, with positions and dimensions to be mutually agreed upon by Landlord and Tenant, subject to the approval and ordinances of the City of Greenfield (the "City"). Tenant shall also have the right, subject to City approval, to utilize for advertising purposes at least one (1) full side (to be selected by Tenant subject to the approval of the owner of the billboard and the rights of the present lessee(s) thereof) of the existing billboard located on the Premises, at no cost or expense to Tenant, except for billboard display production costs. Attached as a portion of <u>Exhibit "E"</u> are plans and specifications for Tenant's current prototypical pylon face panels and for Tenant's building signage, which Landlord hereby approves upon its execution of this Lease. Notwithstanding the foregoing, Tenant shall be entitled without Landlord's consent, but subject to City requirements, as aforesaid, to replace any and all of its signs with signage consistent with Tenant's then-current prototypical sign plans. In the event of an assignment or subletting as a result of which Tenant is no longer occupying any portion of the Premises, Tenant's signs may be replaced by signs identifying the appropriate assignee or subtenant, provided that the specific design of such signage shall be subject to Landlord's approval, which approval shall not be unreasonably withheld, conditioned or delayed.

(b)    <u>Communications Equipment</u>.  Tenant may, from time to time, install, maintain and/or replace any satellite dishes or antennas on the roof and/or exterior walls or parapet of the Building as Tenant deems necessary or desirable, provided same shall not adversely and materially affect the roof or the structural elements thereof. Upon removal by Tenant of any satellite dishes or antennas, Tenant shall promptly repair any damage done in connection with such removal.

8.    <u>Taxes</u>.

(a)    <u>Taxes Contemplated Hereunder</u>.  The term "Real Estate Taxes" shall mean all general real estate taxes and assessments and other ad valorem taxes, rates and levies paid upon or with respect to the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed partially or wholly in lieu of any such taxes.  Nothing contained in this Lease shall require Tenant to pay any local, county, municipal, state or federal income, franchise, corporate, estate, inheritance, succession, capital levy, business or transfer tax of Landlord, or any local, county, municipal, state or federal income, profits, gross receipts, sales or renewal tax or charge upon the rent or other

charges payable by Tenant under this Lease, unless such charges are imposed wholly or partially in lieu of ad valorem taxes whether or not there is a concomitant reduction in gross ad valorem taxes.

(b)    <u>Payment of Real Estate Taxes</u>.    Tenant shall pay all Real Estate Taxes levied against the tax parcel or parcels comprising the Premises (the "Tax Parcel") when due; provided, however, if Landlord's Mortgagee requires escrow of taxes, Tenant will comply.  The Real Estate Taxes shall be net of any early-payment discounts available at the time Tenant's payment is due.  Landlord shall deliver all tax statements therefor to Tenant within thirty (30) days after Landlord's receipt thereof.  Tenant shall pay, or cause the payment of, all Real Estate Taxes before any fine, penalty, interest or cost may be added thereto, become due or be imposed by operation of law for the nonpayment or late payment thereof.  Real Estate Taxes shall be prorated as of the Commencement Date and the expiration or earlier termination of this Lease.

(c)    <u>Contest of Real Estate Taxes and/or Assessed Valuation of Property</u>. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within five (5) days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction.  In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall cooperate with Tenant, execute any and all documents required in connection therewith and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution thereof.

(d)    <u>Payment Following Appeal</u>.  Upon the termination of the proceedings set forth in subparagraph (c) above (unless the taxing authority requires that Real Estate Taxes be paid under protest prior to commencement of such proceedings or unless Landlord's Mortgagee requires deposit with Landlord's Mortgagee), Tenant shall pay such Real Estate Taxes as finally determined in such proceedings, the payment or partial payment of which may have been deferred during the prosecution of such proceedings.  Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises, as well as a reimbursement from the taxing authority to the extent provided by law of all costs, fees and

expenses it incurs in such protest or reassessment. Penalties or interest assessable by reason of Tenant's contest are to be paid by Tenant.

      9.    <u>Maintenance, Repairs and Replacements</u>. Except (i) for costs covered by the Landlord's insurance required to be maintained hereunder, (ii) for condemnation proceeds to be received by Tenant, or (iii) for obligations arising from the negligent acts or omissions or willful misconduct of Landlord (or its agents or employees or the owner of the billboard, its agents or employees), Tenant shall be <u>solely responsible for maintenance in good</u> condition and repair of the Building and Other Improvements, including, but not limited to, repairs and/or replacements to plumbing, heating, electrical and air conditioning systems which serve the Premises. During the last five (5) years of the Term of the Lease (without consideration to the exercise of any additional Renewal Options) Tenant shall be obligated to so install or construct alterations or incur expenditures pursuant to this paragraph; provided, however, that if Tenant is required to expend any sum in satisfaction of its obligations hereunder, and if the resulting improvement to the Improvements cannot be fully amortized in accordance with generally accepted accounting principles, or the Internal Revenue Code and Regulations, over the remainder of the Term (without consideration to the exercise of any additional Renewal Options), then Tenant shall give written notice thereof to Landlord, and Landlord shall within twenty (20) days thereafter either (i) notify Tenant of its election that Tenant is relieved of such obligation to so install or construct alterations or incur expenditures pursuant to this paragraph or (ii) elect to cause Tenant to make such capital expenditure in which event Tenant shall be reimbursed, within thirty (30) days following the expiration of the Term, by Landlord by that amount of the cost associated with such repairs, construction or alteration for the period beyond the remainder of the Term; provided, however, that, in the event of the subsequent exercise of any Renewal Options, (i) the aforesaid amount shall be recalculated so as to extend the applicable period of amortization over the Term with consideration to the exercise of all Renewal Options and (ii) no amount shall be due from Landlord until the time fixed for the exercise of any unexercised Renewal Options shall have expired. Should Tenant fail to perform its obligations under this paragraph 9, Landlord may, at its option, effect such maintenance, replacements or repairs, provided that Landlord shall have given Tenant at least thirty (30) days' prior written notice, except in the case of emergencies (in which event only such notice as may be reasonable under the circumstances shall be required); but further provided that such thirty (30) day period (or reasonable period in event

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

of emergencies) shall be extended in respect of any cure that cannot with reasonable diligence be accomplished within such period so long as Tenant has commenced such cure within such thirty (30) day period (or reasonable period in event of emergencies) and thereafter diligently prosecutes such cure to completion. Tenant shall reimburse Landlord on demand for the reasonable and actual amount so expended (as evidenced by detailed invoice), plus interest at the lesser of 12% per annum, or the maximum nonusurious rate of interest (the "Default Rate"). However, in the event of emergency repairs, no interest shall accrue if reimbursed within thirty (30) days of request (including detailed invoice) for reimbursement. All maintenance, repairs or replacements shall be done by Tenant lien-free and in a good and workmanlike manner consistent with the quality of labor and materials used in originally constructing the Improvements and in accordance with all applicable law.

10.    Payment of Utility Bills.    Tenant will pay directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements. ·

11.    Alterations.    During the Term, Tenant shall have the right, at its discretion and its sole cost, without Landlord's consent, to make (i) any alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly sized stores and (ii) any interior nonstructural alterations or modifications it may desire. With Landlord's consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall have the right, at its sole cost, to alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements. Tenant shall cause all such alterations to be lien-free (in accordance with paragraph 12) and made and completed at Tenant's cost in a good and workmanlike manner and in compliance with all applicable law. Should Landlord's consent be required, conceptual plans and specifications for such work shall be provided to Landlord prior to commencement of any such work. Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within fifteen (15) days following Tenant's delivery of such plans and specifications to Landlord. Without cost or expense to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or

alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required in furtherance of such purposes.

12.   Mechanics' Liens.  Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lie, as applicable, against the Premises.  Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises, the party on account of whose actions such lien has been filed shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto, and, if applicable, Landlord's Mortgagee.

13.   Insurance.

(a)   Property Damage.  During the Construction Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all such construction.  During the Main Term and all Option Periods, Tenant shall keep in full force and effect a policy of fire and extended coverage insurance covering loss or damage to the Premises in the amount of the greater of (i) eighty percent (80%) of the replacement value of the Building, exclusive of excavation, footings and foundations (which initial amount shall be not less than the Tenant Improvement Allowance) or (ii) such coverage as shall be reasonably required by Landlord's "Mortgagee" (as defined in paragraph 20 below), with a commercially reasonable deductible, for which Tenant shall be fully responsible.  Landlord and any "Mortgagee" shall be named in such policy or policies as additional insureds as their respective interests may appear.

(b)   Liability Insurance.  During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and any Landlord's first Mortgagee as additional insureds as their respective interests

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

may appear. The limits of such commercial general liability policy shall be not less than $3,000,000.00 combined single limit for bodily injury and property damage, with a commercially reasonable deductible.

(c)    Workers' Compensation Insurance.   To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

(d)    Self-Insurance. Notwithstanding anything to the contrary contained herein, if permitted by Landlord's Mortgagee, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided Tenant is then occupying the Premises and has a reported net worth, as of the end of Tenant's most recent quarterly reporting period, in excess of Seventy-Five Million Dollars ($75,000,000), as computed in accordance with generally accepted accounting principles, consistently applied, as determinable from Tenant's public disclosures and/or regularly maintained corporate balance sheets which are generally available to shareholders (no right of Landlord to audit or conduct independent investigations being implied by this provision).

(e)    Insurance During Landlord's Construction.   During any period in which Landlord is conducting construction activities at the Premises, Landlord shall require its general contractor to keep in full force and effect a policy of builder's risk, general liability ($1,000,000 per occurrence) and workers' compensation (statutory limits) insurance covering loss or damage to the Premises for the full replacement value of all such construction. To the fullest extent Tenant has an insurable interest, such liability policy shall name Tenant an additional insured and such builder's risk policy shall name Tenant a loss payee.

(f)    Policy Provisions.   All policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers with a Best rating of not less than B+XV. Any insurance coverage enumerated above may be effected by a blanket policy or policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy or policies shall

comply with the provisions of this paragraph 13. Landlord shall not be entitled to self-insure against any of the risks recited herein, except the amount of any commercially reasonable deductible shall be deemed to be self-insurance. An increased coverage or "umbrella" policy may be provided and utilized by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the Premises and Tenant's or Landlord's liability hereunder shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 13. Neither Landlord nor Tenant shall materially alter any of the coverages required hereunder without the consent of the other party.

(g)   Waiver of Right of Recovery and Subrogation.   To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord and Tenant hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(h)   Evidence of Insurance.   Subject to Tenant's right to self-insure hereunder, upon (i) commencement of the Main Term (as to casualty insurance), (ii) upon delivery of the Land (as to liability insurance) and (iii) no less than annually thereafter, Tenant and Landlord shall cause to be issued to each other in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 13. Each such certificate shall provide that no expiration, cancellation or material change in the insurance evidenced thereby shall be effective unless thirty (30) days' unconditional notice of such expiration, cancellation or material change shall have been given to the certificate-holder (and any Mortgagee, if applicable).

(i)   Indemnities.   Except if arising from the negligent or willful acts of Landlord or its agents or employees (to the extent that paragraph 13(g) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs,

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

12

liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from Tenant's use thereof.

Except if arising from the negligent or willful acts of Tenant or its agents or employees (to the extent that paragraph 13(g) is inapplicable thereto), Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises resulting from the acts thereof by Landlord, its agents or employees.

14.    <u>Damages by Fire or Other Casualty.</u>

(a)    <u>Less Than Thirty-Five Percent (35%)</u>.  In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements, which has a repair and reconstruction cost of less than thirty-five percent (35%) of the then-total replacement cost of any of the Improvements, this Lease shall not terminate except as expressly set forth herein, and Construction Rent, Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof.  Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds (unless self-insured) to the extent of the damage to the Premises, Tenant shall complete reconstruction of the Building and Other Improvements, to that condition existing immediately prior to such casualty, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 11 hereof and shall restore the Premises (including equipment, furniture and fixtures).  In the event, subject to force majeure, the Premises, are not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by Tenant within two hundred forty (240) days after receipt of any required governmental permits, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured), then Landlord, at its option, by giving written notice to Tenant, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event Tenant shall make available to Landlord all applicable insurance proceeds for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction.

(b)    <u>Thirty-Five Percent (35%) or More</u>.  In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements which has a repair and reconstruction cost of thirty-five percent (35%) or more of the then-total reconstruc-

tion cost of any of the Improvements, or in the event of any uninsured casualty, Tenant shall have the option of terminating this Lease.  Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty and shall thereupon make available to Landlord all insurance proceeds or reconstruction costs as set forth in subparagraph (a) above.  In the event Tenant does not elect to terminate this Lease as set forth above, then, subject to force majeure, within two hundred forty (240) days after receipt by Tenant of any required governmental permits, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured) with regard to such damage or destruction, Tenant shall complete reconstruction of the Improvements to their condition existing immediately prior to such damage, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 11, and shall restore the Premises (including equipment, furniture and fixtures).  In the event, subject to force majeure, the Premises, are not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by Tenant within two hundred forty (240) days after receipt of any required governmental permits, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured), then Landlord, at its option, by giving written notice to Tenant, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event Tenant shall make available to Landlord all applicable insurance proceeds for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction.

   (c) <u>Last Two (2) Years of Main Term or Option Period</u>.  Notwithstanding the foregoing, if any such damage or destruction occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business, as reasonably determined by Tenant, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, and Landlord shall receive the proceeds of any insurance (together with any applicable deductible) which may be payable with regard to such destruction or damage or, in the event Tenant self-insures, the amount necessary for reconstruction of the Improvements.

15.   Condemnation.

(a)   Definition of Taking and Substantial Taking.   For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises, or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, (ii) a Taking resulting in the reduction of more than fourteen (14) parking spaces within the Premises or a violation of that ratio which is required by the zoning ordinance applicable to the Premises, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking, or (iii) so much of the Premises that access to the Building is impeded, and Landlord's failure to provide substantially equivalent access within sixty (60) days after such Taking.

(b)   Tenant's Rights Upon a Taking of Substantially all of the Premises.   In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease.   All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking; provided, however, that any award to Tenant shall not reduce Landlord's award for the value of the real estate in connection with such Taking, but Tenant shall be entitled to relocation expenses and the excess of Tenant's investment in the Premises over the Tenant Improvement Allowance.

(c)   Tenant's Rights Upon Less Than Substantial Taking.   In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion condemned or taken, effective as of

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the Improvements not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated thereto) and the portion of Landlord's award as shall be reasonably necessary for such restoration, which Landlord shall make available to Tenant. If the Taking occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d)   Rights Upon Temporary Taking. In the event of a Taking of the Premises, or any portion thereof, for temporary use (specifically one not exceeding one-hundred twenty (120) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of one-hundred twenty (120) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(e)   Taking of the Pylon Sign(s). In the event of a taking, whether permanent or temporary, of any pylon or monument sign (as contemplated by paragraph 7) Tenant may install a pylon on a substitute site (reasonably acceptable to Landlord).

(f)   Tenant's Right Upon Condemnation. In the event of a Taking described in subparagraph (b), (c) or (e) above, Tenant shall be entitled to claim compensation from the condemning authority for the value of its leasehold interest in the Premises, its unamortized leasehold improvements paid for by Tenant, relocation expenses and any other items to which Tenant is entitled under applicable law; provided, however, that any award to Tenant shall not reduce Landlord's award for the value of the real estate in connection with such Taking, but Tenant shall be entitled to relocation expenses, and the excess of Tenant's investment in the

Premises over the Tenant Improvement Allowance, each to be prorated in the event of a partial taking.

16.   <u>Assignment and Subletting</u>.  Tenant shall have the right to sublet, assign, transfer reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent.  In the event of such a Transfer, Tenant shall remain liable for all of Tenant's obligations to Landlord arising hereunder so long as this Lease is not changed, modified or amended in any respect by Landlord and any transferee, unless Tenant shall consent thereto.

Transfers to subsidiaries, affiliates, or related parties, and Transfers involving beneficial ownership interests in the Tenant, shall not be deemed a Transfer hereunder and same may be effected without Landlord's knowledge or consent, provided Tenant shall not be relieved of liability herein.

Any assignment or subletting of this Lease by Tenant shall be executed by Tenant and the assignee or sublessee.  Each assignee or sublessee, for the benefit of Landlord, shall agree to assume, be bound by, and perform all terms, covenants, and conditions of this Lease to be kept and performed by Tenant.  After execution of the assignment or sublease, Tenant will forward a completed copy thereof to Landlord.

In the event any assignment or subletting (whether one or more) generates "Excess Rent" (whether fixed or percentage), thirty-five percent (35%) of such Excess Rent shall be paid by Tenant to Landlord upon receipt thereof during the entire term of the subletting or assignment. Excess Rent shall mean the excess, if any, of the rent payable by the assignee or sublessee (whether fixed or percentage) over the amount derived when the Base Rent payable hereunder for a comparable period is multiplied by that ratio the numerator of which is the gross leasable area of the Premises assigned or sublet and the denominator of which is the gross leasable area of the entire Building, plus any costs incurred by Tenant in such assignment or subletting transaction (one time credit per each assignment), including brokerage commissions and improvement costs.

17.   <u>Use</u>.

(a)   Tenant shall initially maintain, use and operate the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular telephones, household appliances (which include, but shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners and dishwashers) and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products.

(b)     Thereafter, Tenant shall have the right to use the Premises for any lawful retail use; provided, however, that the Premises shall not be used (i) for any illegal purpose, or (ii) in violation of any other applicable provision of the "Permitted Encumbrances" contained in Exhibit "F".

(c)     Except as may be expressly set forth in this paragraph 17, nothing contained in this Lease shall be construed to require Tenant to operate the Premises continuously either for the use first stated or for any other use.

18.   Warranties and Representations.

(a)     Landlord represents, warrants and covenants to Tenant that:

(i)     Quiet and Peaceful Enjoyment. Landlord has the right and lawful authority to enter into this Lease and perform Landlord's obligations hereunder, and Landlord warrants, represents and covenants that, so long as Tenant is not in default hereunder beyond any applicable cure period, Tenant shall have quiet and peaceful use, enjoyment and occupancy of the Premises.

(ii)     Title. Landlord's fee simple interest in the Premises is free and clear of any mortgages, deeds, encumbrances, declarations, easements, agreements, leases, tenancies or restrictions, except those matters set forth on Exhibit "F" attached hereto and entitled "Permitted Encumbrances", or any other encumbrances which would restrict Tenant's use of the Premises for the sale of Products or would restrict in any respect the right of Tenant, its employees, customers and invitees to use the Premises in accordance with the terms of this Lease. (Tenant acknowledges that the standard printed exceptions on an owner's policy of title insurance are not encumbrances for the purpose of this paragraph 18(a)(ii) and do not need to be included in Exhibit "F"). Nothing contained in this Lease, including the Permitted Encumbrances and other matters

disclosed on Exhibit "F", shall restrict Tenant's right to sell the Products from the Premises. Landlord specifically covenants and warrants that no third party, has the right to object to Tenant's tenancy hereunder, prohibit the selling, renting, servicing, repairing or warehousing of the Products, or the right to consent to any feature of the Improvements or Tenant's signage. This representation and warranty is a material inducement to the Tenant's execution of this Lease.

(iii)   Certificate of Authority. Landlord covenants that it is a duly constituted limited partnership under the laws of the State of Wisconsin, and that its general partners who are acting as its signatories in this Lease are duly authorized and empowered to act for and on behalf of the limited partnership. Landlord has furnished Tenant prior hereto with evidence of (a) the existence of the limited partnership, and (b) the authority of the general partners to bind the limited partnership as contemplated herein.

(iv)   No Litigation. There are no judicial, quasi-judicial, administrative or other orders, injunctions, moratoria or pending proceedings against Landlord or the Premises which preclude or interfere with, or would preclude or interfere with, the construction contemplated in paragraph 2 hereof or the occupancy and use of the Premises for the purposes herein contemplated.

(v)   Hazardous or Toxic Materials. Landlord has not used, discharged, dumped, spilled or stored any Hazardous Substances (as defined in the Construction Provisions) on or about the Premises, whether accidentally or intentionally, legally or illegally, and has received no notice and has no knowledge that any such condition exists at the Premises, except for any Hazardous Substance involved in the prior use of the Premises as a car dealership, including the remediation of certain underground storage tanks. If any claim is ever made against Tenant relating to Hazardous Substances present at or around the Premises, whether or not such substances are present as of the date hereof, or any Hazardous Substances are hereafter discovered at the Premises (unless introduced by Tenant, its agents, employees, licensees and suppliers), all costs of removal incurred by, all liability imposed upon, or damages suffered by, Tenant (but not consequential damages) because of the same shall be borne by Landlord, and Landlord hereby indemnifies and agrees to defend and hold Tenant harmless from and against all

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

19

such costs, losses, liabilities and damages, including, without limitation, all third-party claims (including sums paid in settlement thereof, with or without legal proceedings) for personal injury or property damage and other claims, actions, administrative proceedings, judgments, compensatory and punitive damages, penalties, fines, costs, losses, attorneys' fees and expenses (through all levels of proceedings), consultants or experts fees and all costs incurred in enforcing this indemnity (exclusive of lost profits and consequential damages). The representation, warranty and indemnity of Landlord described in this paragraph 18(a)(v) shall survive the termination or expiration of this Lease.

(vi) <u>Zoning and Subdivision</u>. The Premises is presently properly subdivided, in conformity with all applicable laws and zoned so as to permit (A) the development and operation of the Premises in accordance with the provisions of this Lease; and (B) the initial use of the Premises described in paragraph 17 of this Lease.

(vii) <u>Notices Affecting the Premises.</u> Each party shall promptly forward to the other any notice or other communication affecting the Premises received by either from any owner of property adjoining, adjacent or nearby to the Premises or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises or any such neighboring property.

(viii) <u>Constructive Trust</u>. Landlord covenants that all sums paid by Tenant to Landlord and intended for payment by Landlord to a third party are given to Landlord in trust and shall be applied only for such third party, as and when due.

(b) Tenant represents, warrants and covenants to Landlord that:

(i) <u>Tenant's Authority</u>. Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia; it has the power to enter into this Lease and perform Tenant's obligations hereunder; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

(ii) <u>Tenant's Warranty as to Hazardous or Toxic Materials</u>. As to Tenant's use and occupancy of the Premises, neither Tenant nor its agents, employees, licensees, suppliers or invitees will introduce, discharge, dump, spill or store within the Premises any Hazardous Substances; and Tenant indemnifies and agrees to defend and hold Landlord harmless from and against all costs, losses, liabilities and damages as a

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

result thereof, to the same extent that Landlord indemnifies and holds Tenant harmless in subparagraph (a)(v) above. The warranty and indemnity of Tenant described in this paragraph 18(b)(ii) shall survive the termination or expiration of this Lease.

(c)    In the event there is a condition at variance with the foregoing representations and warranties of Landlord or Tenant with respect to the Premises which prevents or in any material way inhibits the use of the Premises or any part thereof for their intended purposes by either Landlord or Tenant or Tenant's employees, licensees, agents, suppliers, customers or invitees, or if Tenant or Landlord shall default in the observance or performance of any of the foregoing representations and warranties, then, in addition to such other remedies as may be accorded Tenant or Landlord at law, in equity or under the terms of this Lease, Tenant or Landlord may, in addition to their other remedies under this Lease, after thirty (30) days' written notice to the defaulting party, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of the non-defaulting party's legal remedy and the irreparable harm which would be caused to such party by any such variance or default.    In addition, in the event that any of the representations, warranties and covenants set forth in this paragraph 18 are untrue or incorrect, or in the event that Tenant or Landlord suffers any loss, cost, liability or damage as a result of the breach of any of such covenants, representations and warranties, the breaching party shall defend, indemnify and hold the other party harmless from any of such loss, costs, liability or damage incurred as a result of its breach hereunder.

19.    Estoppel Certificates.    Without charge, at any time and from time to time hereafter, within ten (10) days after receipt of written request by either party, the other party shall certify, by written and duly executed instrument, to any other entity ("Person") specified in such request:    (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's best knowledge; (c) as to the existence of any default hereunder, to the certifying party's best knowledge; (d) as to the existence of any offsets, counterclaims, or defenses hereto on the part of such other party, to the certifying party's best knowledge; (e) as to the commencement and expiration dates of the Term; and (f) as to any other matters which may reasonably be so requested.    Any such certificate may be relied upon

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

by the party requesting it and any Person to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

    20.    <u>Subordination, Non-Disturbance and Attornment.</u>

    (a)    Landlord represents and warrants that there are no existing ground leases or existing Mortgages (as defined below) encumbering the Premises.  In addition, upon recording of any Mortgage throughout the Term, Landlord shall deliver to Tenant a subordination, non-disturbance and attornment agreement substantially in the form of <u>Exhibit "G"</u> executed by the holder of Mortgage ("Mortgagee") with regard to all future Mortgages and with regard to all renewals, modifications, replacements and extensions of such Mortgages.  Upon Tenant's receipt of the subordination, non-disturbance and attornment agreement, this Lease shall be subordinate to the corresponding Mortgage.

    (b)    In the event of a foreclosure of any Mortgage, Tenant shall attorn to a Mortgagee or any purchaser at a foreclosure sale (any such foreclosure, or deed in lieu thereof, shall be referred to as a "Foreclosure") of a Mortgage only if such Mortgagee or purchaser · executes a writing in favor of Tenant which states the following (provided Tenant is not in uncured material default beyond the expiration of any applicable grace periods): (i) this Lease shall not terminate by reason of such Foreclosure, (ii) Tenant's possession of the Premises shall not be disturbed, (iii) the Mortgagee or purchaser upon such Foreclosure shall recognize Tenant and all its rights hereunder and shall be obligated to fully and completely perform Landlord's duties and obligations under the Lease arising from and after the date of such Foreclosure, including but not limited to an obligation to make all payments to Tenant and satisfy all construction obligations set forth in this Lease, (iv) Tenant shall not be named as a party in any action for foreclosure, and (v) the Mortgagee, whether or not the Mortgage is foreclosed, shall make all proceeds arising from a casualty or condemnation loss to the Premises available to Tenant for restoration of the Improvements in accordance with the terms hereof.

    (c)    Landlord shall cause any present or future Mortgagee to deliver a non-disturbance and attornment agreement in accordance with this paragraph 20 at or prior to the time which the lien of the Mortgage is filed against record title to the Premises.  As used in this paragraph 20, the term "Mortgage" shall mean any mortgage, deed to secure debt, deed of trust, trust deed or other collateral conveyance of, or lien or encumbrance against, the Premises.

21.    <u>Change of Landlord</u>.  Subject to paragraph 20 above, in the event Landlord's interest in the Premises passes to a successor (the "Successor") by sale, lease, Foreclosure or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and effect as if the Successor were the landlord under the Lease, and Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant.  In the event that Landlord's interest in the Premises passes to a Successor and such Successor is bound unto Tenant as set forth above, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes, except that Landlord agrees to indemnify, defend and hold Tenant harmless from and against all costs, claims, loss, liability or damage suffered by Tenant as a result of Landlord's failure to notify Tenant of the change in Landlord's right to receive rentals hereunder.

22.    <u>Tenant's Financing</u>.  Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, from time to time, secure financing or general credit lines and grant the lenders thereof, as security therefor, (i) a security interest in Tenant's trade fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged, and/or (iii) a collateral assignment of Tenant's leasehold interest in the Premises, with rights of reassignment; provided, however, such collateral assignment may be made solely for the purpose of securing Tenant's indebtedness.  Upon Tenant providing notice of such financing to Landlord, Landlord agrees to evidence its consent in writing to such security interest and agreement and to give such lenders the same notice and opportunity to cure any default of Tenant as is provided Tenant hereunder (provided Landlord has notice of such lender and its address).  In addition, Landlord agrees to cause any Mortgagee specifically to acknowledge the rights of Tenant's lenders described herein and in paragraph 23 below.

23.    <u>Tenant's Property and Waiver of Landlord's Lien</u>.  All of the Personalty shall be and remain the personal property of Tenant.  Landlord expressly waives its statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the aforesaid property of Tenant on the Premises and further agrees to

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

23

execute any reasonable instruments evidencing such waiver, at any time or times hereafter upon Tenant's request.

24.     <u>Memorandum of Lease; Commencement Date Agreement</u>.  Landlord and Tenant agree, at the other's request and at the sole expense of the requesting party, to execute a Memorandum of Lease in recordable form, substantially similar to that attached hereto as <u>Exhibit "H"</u>, setting forth such provisions hereof as may be required by State law.  In addition, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached hereto as <u>Exhibit "I"</u>, once the Commencement Date has been established.  Recording costs for either or both documents shall be borne by the party requesting recordation of the same.  The provisions of this Lease shall control, however, with regard to any omissions from, or provisions hereof which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement.

25.     <u>Expiration of Term and Holding Over</u>.  All of the Personalty shall be removable by Tenant any time prior to the expiration or earlier termination of this Lease.  In the event Tenant fails to so remove any or all of its Personalty, Landlord may remove such Personalty, or the balance thereof, cause such Personalty to be placed into storage and thereafter charge Tenant the cost of such removal and storage, together with interest thereon at the Default Rate. Those improvements that are integrated into the physical structure of the Building, except any of Tenant's trade fixtures, shall not be removed and shall be deemed the property of Landlord. (A nonexclusive list of Tenant's removable trade fixtures is attached hereto as <u>Exhibit "D"</u>.) Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings and equipment (except for small holes caused by nails, fasteners and the like) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein, ordinary wear and tear, casualty and condemnation excepted.  Tenant agrees that at the expiration of this Lease, it will deliver to Landlord peaceable possession of the Premises.  No holding over by Tenant nor acceptance of Construction Rent, Base Rent or other charges by Landlord shall operate as a renewal or extension of the Lease without the written consent of Landlord and Tenant. Should Tenant hold over without the consent of Landlord, this Lease shall continue in force from month to month, subject to all of the provisions hereof and at the monthly Base Rent Tenant had been paying during the preceding Lease Year.

26.   "For Rent" Signs.   Tenant hereby permits Landlord during the last ninety (90) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, on the parking lot of the Premises.   Tenant will also allow Landlord or its agents, upon prior written notice and accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior, to prospective tenants, purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

27.   Force Majeure.   Except as otherwise specifically contemplated in this Lease or in paragraph 4 of the Construction Provisions, in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, that in connection with the construction of the Improvements, the consequences of delays by the other party shall be governed by paragraph 4 of the Construction Provisions.

28.   Events of Tenant's Default.   Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease:

(a)   Failure to Pay Rent; Breach.   (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Construction Rent, Base Rent, or Real Estate Taxes (subject as to such Real Estate Taxes to Tenant's right of good faith contest) within ten (10) days after the receipt of written notice from Landlord to Tenant that same is overdue; or (ii) Tenant's failure to observe or perform any other material provision of this Lease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

25

to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

(b)    Bankruptcy.    Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun.

29.    Landlord's Remedies.    After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

(a)    Continue Lease.    Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Construction Rent or Base Rent and other charges when due, including any sums due for any Option Period for which a Renewal Option has been exercised. In the alternative, Landlord shall have the right to peaceably re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Premises, or any part thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums shall not be realized or secured, in Landlord's exercise of reasonable efforts to mitigate its damages (which Landlord hereby agrees to make), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as provided by applicable law. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8