Circuit City Stores. Inc.
Southridge Site
STS Project No. 84612A
Draft Copy

    D. Prepare a Site Health & Safety Manual as required to perform the work. Refer to a report entitled "Exemption Request" as prepared by STS Consultants, Ltd, dated February 23, 1995 and addressed to Mr. Bizhan Sheikholeslami of the Wisconsin Department of Natural Resources for available information on underground conditions at the site. Inspect the buildings to be demolished to determine applicable health and safety requirements for building demolition. OSHA has instituted strict standards for safety within construction excavations. These standards are outlined in OSHA Health and Safety Standards for Excavations, 29 CFR, Part 1926 and other OSHA regulations. Please refer to this publication for more details regarding safety considerations for construction excavations. At this site, the soils encountered in our exploratory investigation are primarily fill. OSHA recommends that the least competent soils be assumed when applying the OSHA regulations. The fill soils are considered Type C soils when applying the OSHA regulations. OSHA recommends a maximum slope inclination of 1.5 horizontal to 1 vertical for Type C soils, for excavations that are less than 20 feet in depth. The Contractor shall be solely responsible for the health and safety of its employees and subcontractors.

3.02   <u>Demolition</u>

    A. Perform demolition work in a systematic manner. Minimize interference with operations at adjacent properties.

    B. Use methods that minimize release of dust from demolition operations. Provide a positive means to control and minimize release of dust which might be created as a result of demolition activities.

    C. Concrete, steel, and masonry structures shall be demolished in small sections. Bracing and shores shall be used where necessary to avoid collapse of the structure.

    D. Remove obstructions, foundation walls, and footings to a minimum depth of 2 feet below final planned site grades as shown on the Utility Plan prepared by National Survey and Engineering, except as modified by Article 3.02 E below.

    E. In areas where new utilities and buildings are planned, remove foundation walls, footings, and other obstructions to a minimum distance of 5 feet horizontally from the ground surface to an elevation of at least 1 foot below the invert elevation of the new facility.

    F. Remove all concrete slabs-on-grade.

    G. Remove all asphaltic pavement and any concrete curb and gutter sections found within property boundaries.

    H. Identify, disconnect, and cap existing utilities which are scheduled for removal, where they enter the property. The disconnected utility lines within the property shall be either excavated and removed, or abandoned in-place. The ends of open, abandoned in-place utility piping with a diameter of 4" and smaller shall be plugged with concrete or the piping shall be filled with a portland cement grout to prevent soil infiltration into pipes. Storm sewers that

Circuit City Stores. Inc.
Southridge Site
STS Project No. 84612A
Draft Copy

are abandoned in-place shall be completely filled with grout along the full abandoned length.

I.   Notify the Testing Agency if uncharted utilities are encountered.  Do not proceed with demolition operations in these areas until approval to resume is provided by the Testing Agency.

J.   Backfill. compact. and rough grade areas affected by demolition work per the requirements shown on the site grading plans prepared by National Survey & Engineering.   The Testing Agency will perform density testing at selected locations to check that required densities are obtained.   Backfill not meeting requirements will be reworked and retested as necessary.

K.   If hazardous or contaminated materials are encountered, immediately stop work in the area affected and report the condition to the Owner and Engineer.  Do not resume operations in these areas until directed.

3.03   Removal and Disposal

A.   Demolished materials, rubbish, and debris shall be promptly removed and salvaged, recycled, or legally disposed of off-site as it accumulates., subject to Section 1.01(B) above.

B.   Do not burn or bury materials on site.

C.   Demolition debris that can not be recycled, such as glass, fluorescent lighting, and miscellaneous building rubble shall be properly disposed of in a licensed landfill or facility.

D.   Hazardous or contaminated materials and other regulated waste which may be encountered during the demolition process (e.g. petroleum contaminated materials and foundry sand) shall be disposed of at a licensed sanitary landfill. Demolition work will be monitored by the Testing Agency.   If visual or olfactory indications of contamination or observed by the Testing Agency, the suspect excavated material shall be segregated by drumming or stockpiling in accordance with NR700 WAC requirements.   The Testing Agency will perform preliminary field tests (as feasible) and may retain samples for additional analytical laboratory testing.   Preliminary field testing will include use of a photo-ionization detector to screen materials for the presence of volatile organic compounds.   If testing confirms that contaminated materials are present, handling, removal and disposal of such materials shall be performed in accordance with applicable local, state, and federal regulations.

F.   Leave premises neat, clean, and orderly.

G.   Remove temporary work installed under 3.01 A.

### END OF SECTION 02050

ATTACHMENT "6"

Certification of Delivery of the Land


To:  Circuit City Stores Inc.
     9950 Mayland Drive
     Richmond, Virginia  23233

     Attention: Vice President-Real Estate

     Via UPS Overnight service

Re: Circuit City Store/Greenfield, Wisconsin-Lease Agreement dated
    May 2,1995


Ladies and Gentleman:


     The undersigned, as landlord under the Lease has caused
"Delivery of the Land" to occur, all in accordance with the
terms of the lease on June 20,1995.

     We certify that all elements of the Delivery of the Land have
been satisfied in accordance with the Lease.


Dentici Family Ltd. Partnership


_____  6/20/95

James Dentici
General Partner

Attachment "6"

Certification of Delivery of the Land


To:    Circuit City Stores
       9950 Mayland Drive
       Richmond, Virginia  23233
       Attention:  Vice President-Real Estate


       Re: Circuit City Store/[Location]-Lease Agreement dated _____

Ladies and Gentlemen:

       The undersigned, as Landlord under the Lease has caused "Delivery of the Land" to
occur, all in accordance with the terms of the Lease.

       We certify that all elements of the Delivery of the Land have been satisfied in accordance
with the Lease.

       [LANDLORD]

<u>Attachment "7"</u>

Utilities Specifications

Tenant will provide the following temporary utilities to within five (5) feet of the Premises no later than the date for completion of such temporary utilities set forth in the Construction Schedule:

> water (2" line, with sufficient pressure that pumping is not necessary) and electric power (200 amps, 1-phase, 4-wire, 120 volts, with weatherproof and rainproof fused disconnect switch) for use by Tenant in its construction of the Improvements.

CIRCUIT CITY
STORES INC.
9050 MAYLAND DRIVE
RICHMOND VA. 23233



ATTACHMENT "11"

TYPICAL FRONT ELEVATION

CIRCUIT CITY
STORES INC.
9950 MAYLAND DRIVE
RICHMOND VA. 23233

<u>EXHIBIT "F"</u>

## PERMITTED ENCUMBRANCES

A.  Existing Billboard Lease between James Dentici and Universal Outdoor, Inc., dated July 7, 1990, a copy of which is attached to this <u>Exhibit "F"</u> as <u>Attachment "1"</u> - subject to all leasehold, access, and maintenance rights heretofore granted by Landlord to the owner and/or the lessee of a presently existing billboard located on the premises and all extensions, renewals, and/or renegotiations thereof, whether with the present lessee or successor lessees and assigns, including the right to replace and reconstruct the presently existing billboard. Landlord and assigns reserve the right to enter upon the premises for purposes of access to and repair, maintenance, and replacement of said billboard.

B.  Permitted Title Exceptions:

1.  Utility Easement granted by an instrument recorded in the Office of the Register of Deeds for Milwaukee County, Wisconsin as Document No. 1441509.

2.  Utility Easement granted by an instrument recorded as Document No. 1724394.

3.  Utility Easement granted by an instrument recorded as Document No. 3977750.

4.  Utility Easement granted by an instrument recorded as Document No. 4849633.

5.  Utility Easement granted by an instrument recorded as Document No. 4947894.

6.  Covenants, conditions and restrictions contained in Quit Claim Deed recorded as Document No. 4439858.

**Notwithstanding anything contained in this <u>Exhibit "F"</u> to the contrary, nothing contained herein shall be construed to prohibit the exercise of the rights and privileges granted to the Tenant under the Lease.**

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

Attachment "A" to
Exhibit "F"

UNIVERSAL OUTDOOR, INC.

**DATE:** July 9, 1990

1.   **James Dentici** ("Lessor"), hereby leases and grants exclusive rights for outdoor advertising to Universal Outdoor, Inc. ("Lessee") on a portion of the real estate commonly known as Rear Lot of 4595 South 76th Street , in the County of Milwaukee , in the state of Wisconsin , having the Permanent Property Index Number of 505-9946-001 legal description attached as Exhibit "A", (Leased Premises) for the purpose of erecting and maintaining an advertising sign structure, including supporting structures, devices, power poles, illumination facilities and connections, service ladders, and other appurtenances, with the right of ingress to and egress from the Leased Premises. The face(s) of the sign structure will not exceed the approximate dimensions of 14 by 48 feet, except for any extensions that are incidental to the outdoor advertising industry with the exact placement of the sign structure pole(s) to be approved by the Lessor prior to construction.

2.   The lease shall be for a term of five (5) years commencing on the date of Lessors execution of this lease, and it shall be automatically renewed for a like term of five (5) years provided that the current tenant renews its lease which is also for a five (5) year period. If the tenant does not renew its lease the property owner, Lessor, has the option on 60 days notice by registered mail to cancel this lease.

     On each annual anniversary of the lease, and any extensions thereof the annual rental will be adjusted to reflect the increase in the Consumer Price Index.

     This adjusted rental will be based on the Base Rent multiplied by the percentage increase in the Consumer Price Index (Milwaukee Avenue for all Urban Consumers). The base date for future changes in rental will be computed from each previous annual anniversary date.

3.   Lessee shall pay to Lessor upon Lessor's execution of this lease rent in the amount of $50.00 per month, for the period of time prior to construction of the advertising sign structure. On the date such construction is completed, rent shall commence to accrue for the term of this lease at the rate of Ten Thousand Dollars ($10,000) per year paid in equal monthly installments.

     Rent shall be paid monthly upon or before the Tenth (10th) day of the month, provided however, that rent for the month in which construction is completed shall be due and payable on the date such construction is completed on a pro-rata basis.

4.   By execution hereof, Lessor gives Universal Outdoor, Inc. its permission and limited power of attorney to act in its behalf for the purpose of performing every act deemed necessary by Lessee to apply for and secure at its own expense the state and local building and sign permits, zoning variances, special uses, or changes in the zoning law relating to signs, necessary to erect and maintain the advertising sign structure on the leased premises.

5.   All structures, displays and materials placed upon the Leased Premises by Lessee are Lessee's trade fixtures, trade names and trademarks, and shall be and remain Lessee's personal property, and may be removed by Lessee at any time prior to or within a reasonable time after the termination of this lease or any extension thereof. Without Lessee's prior written consent, Lessor agrees that no liens or encumbrances may be placed upon or be permitted to remain upon Lessee's personal property.

6.   Lessee shall indemnify and hold harmless Lessor from all liability to persons or property by reason of accidents resulting from the negligent acts of Lessee, its agents, employees or others employed in the erection, maintenance, operation, repair or removal of the advertising sign structure. Further, Lessee agrees to supply Lessor with a certificate of insurance.

7.   Lessor represents and warrants that it is the owner or title holder of the Leased Premises or the agent of such owner or title holder and has had full authority to execute this lease and agrees to indemnify and save harmless Lessee from any and all claims and/or liability caused by Lessor's breach of this warranty.

8.   In the event that: (a) the advertising sign structure becomes partially or entirely obstructed; (b) the value of the location for advertising purposes becomes diminished by the change in highway or traffic conditions; (c) necessary state or local permits are refused or invalidated; (d) erection, maintenance, illumination or modification of the sign structure is prevented or restricted by state or local statute, rule, ordinance or regulation presently in effect or subsequently enacted, thereby diminishing the value or increasing the cost of Lessee's use of the leased Premises for advertising; or (e) for any other legitimate reason, Lessee has the option on ten (10) days notice to Lessor by registered mail to terminate this lease. Further, if such an obstruction or impairment is the fault of Lessor or its tenants, agents, employees, or other persons acting on Lessor's behalf, Lessee shall have the right to remove such obstruction or other impairment on ten (10) days notice to Lessor and set off against future rental payments to Lessor the cost of such removal so long as such obstruction or impairment continues.

9.   This lease shall inure to the benefit of and be binding upon the personal representatives, successors, and assigns of the parties hereto. Upon request, the parties agree to execute a recordable memorandum of this lease and further agree to execute any documents necessary to effectuate this lease, including any documents necessary for the assignment of this lease. This lease may be assigned by either party without prior notice to or approval of the other party.

10.  This lease, including each exhibit and addendum attached hereto, shall constitute the sole agreement of the parties relating to the leased premises. Neither party will be bound by any statements, warranties, or promises, oral or written, unless such statements, warranties, or promises are set forth specifically in this lease.

11.  If any provision of this lease is or becomes illegal, invalid or unenforceable because of present or future statutes, ordinances, rules or regulations of any governmental authority, or becomes unenforceable for any reason, the intention of the

ADDENDUM TO

SIGN LEASE BETWEEN JAMES DENTICI AND UNIVERSAL OUTDOOR, INC.
DATED JULY 9, 1990
FOR PROPERTY AT 4506 SOUTH 76TH STREET

1. Lessee shall provide at no charge the use of the West facing (facing West) of the proposed sign to the tenant leasing said property from property owner. Such use shall commence upon the completion of construction and shall continue for the term of the lease.

2. Lessee shall provide at no charge one 14' x 48' advertising display to the tenant. This display is for use on the West facing as outlined and will remain the property of Universal if its use is terminated. Included in this display at no charge are all design services and painting every eighteen (18) months for the term of the lease. Said display will be illuminated from dusk to midnight each day.

3. Tenant shall have the option to have said advertising display relocated to another available lessee location from proposed sign by giving lessee 60-days notice.

4. Display shall be relocated to location selected by tenant and remain at said location on a preemptible basis. In the event said location is contracted for by a paying advertiser tenant shall select an available lessee location and display shall be relocated at no charge to tenant. Tenant shall be entitled to one tenant initiated relocation each year. Subsequent relocations shall be charged to the tenant at the established rate.

5. Any time as tenant elects to relocate its advertising display from the West facing of the proposed sign, lessee shall have the right to contract with other advertisers for said facing and shall receive and be entitled to all rental proceeds.

6. Any time as West facing of proposed sign becomes available tenant may again elect to occupy said facing.

7. If at any time the tenant is of the opinion that Lessee does not have suitable availabilities at which to place tenants display, Lessee shall store said display at no charge to tenant and reinstall display at such time as tenant is of the opinion that suitable availabilities again exist.

8. At such time as Lessee is no longer required to provide advertising display and available space outlined in conditions one (1) through seven (7) above, Lessee shall increase Lessor's current annual lease rate by $1,000.00.

9. Size of the sign is contingent upon the approval of Wisconsin Electric Power Company setback restrictions.

ACCEPTED BY: _____    ACCEPTED BY: _____

UNIVERSAL OUTDOOR, INC.                    JAMES DENTICI

DATE: _____        DATE: _____ 7 - 9 - 9 0

                                          TENANT: _____

                                          DATE: _____

12. As used herein, the word "it(s)" shall include Lessors and the word "it(s)" shall
also refer to a natural person.

13. All notices and correspondence from Lessor to Lessee are to be sent to the following
address unless Lessee notifies Lessor in writing of another address:

    Universal Outdoor, Inc.
    6005 W. Martin Drive
    P.O. Box 13305
    Milwaukee, WI  53213-0305

All rental payments, notices and correspondence from Lessee to Lessor are to be made
payable to and sent to the following address unless Lessor notifies Lessee in writing
of another address:

    James Dentici
    1405 S. Waterville Road
    Oconomowoc, Wisconsin  53066


LESSEE: UNIVERSAL OUTDOOR, INC.          LESSOR: James Dentici
                                                 (Print name/title)
BY: _____          BY: _____
                                                 (Signature)
TITLE: _____          DATE:  7-9-90

DATE: _____          PHONE: _____

WITNESS: _____          TAX I.D. OR S.S.#: 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

## EXHIBIT "G"

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

### (Mortgage)

THIS AGREEMENT, dated the _____ day of _____, 199____, between

_____, a _____ ("Mortgagee"), and

CIRCUIT CITY STORES, INC., a Virginia corporation ("Tenant").

W I T N E S S E T H :

(a) Tenant has entered into a certain lease (the "Lease") dated _____, _____

with _____

("Landlord"), covering premises located within that certain property known as

_____ located in the City of _____, _____

County, _____, and more particularly described in Schedule A hereto; and

(b) Mortgagee has made a loan to Landlord as evidenced and secured by a Deed of Trust

recorded _____, 199____ in the land records of _____ County,

_____, in Book _____ at page _____ (the "Mortgage"), encumbering the property

described in Schedule A; and the parties hereto desire to set forth their agreement with regard

to the priority of the Mortgage and the effect thereof on Tenant and its leasehold interest in the

aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar

($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged,

the parties hereby agree as follows:

1.     The Lease is and shall be subject and subordinate to the lien of the Mortgage
       insofar as it affects the real  property of which the premises form a part, and to
       all renewals, modifications, consolidations, replacements and extensions thereof,
       to the full extent of the principal sum secured thereby and interest thereon.

2.     Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure
       sale under the Mortgage, any transferee who acquires the premises by deed in
       lieu of foreclosure, the successors and assigns of such purchasers, as its Landlord

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

1

for the unexpired balance (and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease.

3.     In the event that it should become necessary to foreclose the Mortgage, Mortgagee thereunder will not terminate the Lease nor join Tenant in summary or foreclosure proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4.     Mortgagee consents to the application of casualty and condemnation proceeds in accordance with paragraphs 14 and 15 of the Lease between Landlord and Tenant, whether or not the Mortgage is then foreclosed.

5.     In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:

(a) liable for any act or omission of any prior lessor (including Landlord); or

(b) liable for the return of any security deposits unless delivered to Mortgagee; or

(c) bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

(d) bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

6.     Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed that in the event that Landlord defaults in the payment of the Tenant Improvement Allowance, as defined in the Lease, and Mortgagee acquires title to the Premises by foreclosure or otherwise, Mortgagee shall become liable for payment of the Tenant Improvement Allowance to Tenant, and Tenant shall otherwise be entitled to effect a Transfer all in accordance with the terms of the Lease.

7.     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their successors and assigns.

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.


ATTEST:                           CIRCUIT CITY STORES, INC.,
                                  a Virginia corporation


_____        By: _____
_____            _____


ATTEST:                           COMPANY NAME


_____        By: _____
_____            _____


Note: Attach appropriate notary blocks for the State.

## EXHIBIT "H"

## MEMORANDUM OF LEASE

This Memorandum of Lease is made this _____ day of _____, 199___, between DENTICI FAMILY LIMITED PARTNERSHIP, a _____, having an address in care of James P. Dentici at 3405 S. Waterville Rd., Oconomowoc, Wisconsin 53066 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

## W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated _____, 199___, whereby Landlord has leased to Tenant a portion of the real property (the "Property"), _____, _____ County, _____, the legal description of which Property is set forth on Exhibit "A-1" attached hereto. The Lease contains provisions and rights appurtenant to the Property, some of which are as follows:

I.    <u>Term</u>.  The term of the Lease is for a period of _____ (____) years, commencing on the Commencement Date (as established in the Lease based upon the substantial completion of the improvements upon the Property).  Thereafter, Tenant has the right under the Lease to renew and extend the term of the Lease for four (4) successive periods of five (5) years each.

II.    <u>Successors</u>.  The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

III.    <u>Incorporation of Lease</u>.  All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

IV.    <u>Conflicts with Lease</u>.  This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease.  In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

1

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

LANDLORD:

DENTICI FAMILY LIMITED PARTNERSHIP,
a Wisconsin limited partnership

WITNESS:


_____        By:_____
                                           James P. Dentici,
_____                its General Partner


WITNESS:


_____        By:_____
                                           John P. Dentici,
_____                its General Partner


TENANT:

CIRCUIT CITY STORES, INC.,
Attest:                            a Virginia corporation


By:_____       By:   _____
       Secretary                   Name: _____
                                   Title: _____


Note: Attach appropriate notary blocks for the State.

## EXHIBIT "I"

## COMMENCEMENT DATE AGREEMENT

THIS AGREEMENT, made as of this ____ day of _____, 19__, between DENTICI FAMILY LIMITED PARTNERSHIP, a _____, having an address in care of James P. Dentici at 3405 S. Waterville Rd., Oconomowoc, Wisconsin 53066 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

## W I T N E S S E T H:

WHEREAS, Landlord is the owner of certain premises situated in _____, _____ County, Wisconsin (herein called the "Premises"); and

WHEREAS, by that certain lease dated _____, 19__ (herein called the "Lease"), Landlord leased the Premises to Tenant; and

WHEREAS, a memorandum or short form lease in respect of the Lease was recorded in the office of the Clerk of _____ County, Wisconsin, on the ____ day of _____, 19__, in Book _____ at Page ____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Lease has commenced; and

WHEREAS, under Paragraph 25 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1. The term of the Lease commenced on, and the Commencement Date (as such term is defined in the Lease) was, _____, 19__.  The term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to extend the term of the Lease or unless the Lease terminates earlier as provided in the Lease.

2. The date of commencement of the first "Option Period" (as such term is defined in the Lease) shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

3. The date of commencement of the second Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

1

Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

4. The date of commencement of the third Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

5. The date of commencement of the fourth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

6. The date of commencement of the fifth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless the Lease terminates earlier as provided in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

<u>LANDLORD</u>:

DENTICI FAMILY LIMITED PARTNERSHIP,
a Wisconsin limited partnership

WITNESS:

_____    By:_____
                                                James P. Dentici,
_____                its General Partner

WITNESS:

_____    By:_____
                                                John P. Dentici,
_____                its General Partner

<u>TENANT</u>:

Attest:                                      CIRCUIT CITY STORES, INC.

_____    By    _____
Assistant Secretary                              Vice President

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

## EXHIBIT "J"

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement is made this _____ day of _____, 199__, between DENTICI FAMILY LIMITED PARTNERSHIP, a _____, having an address in care of James P. Dentici at 3405 S. Waterville Rd., Oconomowoc, Wisconsin 53066 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

## WITNESSETH

Landlord and Tenant have entered into a Lease (the "Lease") dated _____ whereby Landlord has leased to Tenant a portion of the real property located in _____, _____ County, Wisconsin and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Tenant Improvement Allowance as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.      The Tenant hereby indemnifies and agrees to hold the Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises.  In the event that any mechanic, materialman or other claimant makes claim against the Premises based upon materials or services provided under contract with the Tenant, the Tenant shall hold harmless and protect the Landlord from any loss, payment, claim or expense related thereto.

2.      The Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure by any other means, the Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises. This indemnity and hold harmless shall not apply to any liens or claims caused by the Landlord or Landlord's agents.

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

EXECUTED this _____ day of _____, 199__.

<u>LANDLORD</u>:

DENTICI FAMILY LIMITED PARTNERSHIP,
a Wisconsin limited partnership

WITNESS:


_____              By:_____
                                              James P. Dentici,
_____                     its General Partner


WITNESS:


_____              By:_____
                                              John P. Dentici,
_____                     its General Partner


<u>TENANT</u>

CIRCUIT CITY STORES, INC.,
a Virginia corporation


                                       By:      _____
                                       Name:    _____
                                       Title:   _____

# CIRCUIT CITY

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA  23233-1464
(804) 527-4088

May 15, 1995

**VIA FACSIMILE 414/593-2627**

Mr. James Dentici
King Motor Sports
105 East Main Street
Sullivan, Wisconsin  53178

> Re:   Lease (the "Lease") by and between Circuit City Stores, Inc. ("Circuit City") and
> Dentici Family Limited Partnership, a Wisconsin limited partnership ("Landlord")
> for Greenfield, Wisconsin (the "Property"); Our File No. 52-58

Dear Mr. Dentici:

Pursuant to paragraph 36 of the Lease, Circuit City hereby acknowledges that the conditions of the following paragraphs have been satisfied:  36(a), 36(c), 36(e), 36(f), 36(g) and 36(h).

Very truly yours,

**CIRCUIT CITY STORES, INC.**

By:  _____
     Benjamin B. Cummings, Jr.

:tm

cc:   Don Kozlovsky (via facsimile – 414/272-4840)
      Mark Miller
      Stan Heller
      Raymond J. Kane
      Karen A. Cox

C:\TM\CC\DENTICI\DENTICI.WVR

Post-It™ brand fax transmittal memo 7671 | # of pages ▶ |
To MR. JIM Dentici | From S. Heller
Co.

# CIRCUIT CITY ═══════════════════════════════

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA  23233-1464
(804) 527-4088


May 25, 1995


**VIA FACSIMILE 414/593-2627**

Mr. James Dentici
King Motor Sports
105 East Main Street
Sullivan, Wisconsin  53178

> Re:    Lease (the "Lease") by and between Circuit City Stores, Inc. ("Circuit City") and
> Dentici Family Limited Partnership, a Wisconsin limited partnership ("Landlord")
> for Greenfield, Wisconsin (the "Property"); Our File No. 52-58

Dear Mr. Dentici:

Pursuant to your request, Circuit City is satisfied with the completion of all environmental assessments and analyses, including completion of the Phase II assessment in paragraph 1(b)(ii) of Exhibit "C" of the Lease, and the environmental analysis of stockpiled soil in paragraph 1(b)(iv) of Exhibit "C" of the Lease.

Very truly yours,

**CIRCUIT CITY STORES, INC.**

By:  _Mark A. Miller_

Mark A. Miller

:tm

cc:    Don Kozlovsky (via facsimile - 414/272-4840)
Stan Heller
Raymond J. Kane
Karen A. Cox

C:\TM\CC\DENTICI\DENTICI.WV2

(b)    Landlord Work. Landlord's obligation to commence demolition of existing site improvements is conditioned upon the satisfaction or waiver in writing of each of the following:

(i)    receipt from the Wisconsin Department of Natural Resources of the foundry sand exemption;

(ii)    completion of all environmental assessments and analyses to Tenant's satisfaction, including completion of the Phase II assessment;

(iii)    conditions 36(a), 36(f), 36(g) and 36(h) of the Lease having been satisfied or waived by Tenant in writing; and

(iv)    receipt of Tenant's demolition plans being prepared by National Surveying and engineering and specifications dated March 31, 1995, prepared by STS Consultants, Ltd., a copy of such specifications being attached as Attachment "4" to this Exhibit "C" (collectively the "Demolition Plans and Specifications") and Tenant's environmental analysis of stockpiled soil.

Landlord shall, at its sole cost and expense, within twenty-eight (28) days after the aforesaid conditions have been satisfied or waived in writing, subject to force majeure, with extensions equal to the period of each such force majeure delay, demolish all existing site improvements, including footings and foundations that will affect Tenant's Building pad. "Delivery of the Land" shall be deemed to occur when Landlord shall have completed such demolition.

Upon completion of such demolition, Landlord shall give Tenant written notice of Delivery of the Land in the form of Attachment "6". Landlord shall, at its sole cost and expense, within forty-five (45) days after the aforesaid conditions have been satisfied or waived in writing, subject to force majeure, with extensions as aforesaid, (i) remove such of the remaining site improvements, including such footings and foundations as are required to be removed pursuant to Tenant's Demolition Plans and Specifications so that Tenant may thereafter commence site grading, installation of utilities and other work necessary to commence construction of the Building and (ii) utilize existing stockpiled soil located on the Premises, subject to Tenant's environmental analysis thereof, in the leveling of the portion of the site which will require future fill materials. All of the Landlord Work shall be completed in accordance with the Demolition Plans and Specifications. As used herein, force majeure shall

C:\CIRCUIT.CTY\GREENFIE\LEASE.RV8

3

## MEMORANDUM OF LEASE

This Memorandum of Lease is made this _2nd_ day of ___MAY___, 199_5_, between DENTICI FAMILY LIMITED PARTNERSHIP, a Wisconsin limited partnership, having an address in care of James P. Dentici at 3405 S. Waterville Rd., Oconomowoc, Wisconsin 53066 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

### W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated _MAY 2_, 199_5_, whereby Landlord has leased to Tenant a portion of the real property (the "Property") located at 76th Street and Highway 894, Greenfield, Milwaukee County, Wisconsin, the legal description of which Property is set forth on Exhibit "A-1" attached hereto. The Lease contains provisions and rights appurtenant to the Property, some of which are as follows:

I.   Term. The term of the Lease is for a period of twenty (20) years, commencing on the Commencement Date (as established in the Lease based upon the substantial completion of the improvements upon the Property). Thereafter, Tenant has the right under the Lease to renew and extend the term of the Lease for four (4) successive periods of five (5) years each.

II.  Successors. The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

III. Incorporation of Lease. All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

IV.  Conflicts with Lease. This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease. In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

1

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

<u>LANDLORD</u>:

DENTICI FAMILY LIMITED PARTNERSHIP,
a Wisconsin limited partnership

WITNESS:

By: _____
   James P. Dentici,
   its General Partner

WITNESS:

By: _____
   John P. Dentici,
   its General Partner

THE STATE OF WISCONSIN  §
            §
COUNTY OF _Milwaukee_ §

  On  _May 2,_ _____, 1995, before me, the undersigned, a Notary Public in and for said State, personally appeared James P. Dentici, General Partner of Dentici Family Limited Partnership, a Wisconsin limited partnership, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

My Commission Expires:

 Permanent Commission

_____
Notary Public in and for said County and
State

DONALD V. KOZLOVSKY
NOTARY PUBLIC
STATE OF WISCONSIN

2

THE STATE OF WISCONSIN    §
                          §
COUNTY OF _Milwaukee_     §

On _____May 2_____, 1995, before me, the undersigned, a Notary Public
in and for said State, personally appeared John P. Dentici, General Partner of Dentici Family
Limited Partnership, a Wisconsin limited partnership, personally known to me or proved to me
on the basis of satisfactory evidence to be the person whose name is subscribed to the within
instrument and acknowledged to me that he executed the same in his authorized capacity, and
that by his signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

My Commission Expires:                    Notary Public in and for said County and
                                          State
       Permanent Commission
_____          _____

NOTARY PUBLIC
DONALD V.
KOZLOVSKY
STATE OF WISCONSIN

3

**TENANT:**

CIRCUIT CITY STORES, INC.,
a Virginia corporation

Attest:

By: _Joseph V. Jozshman_                    By: _Benjamin B. Cummings Jr._
Ass't. Secretary                            Name: Benjamin B. Cummings, Jr.
                                            Title: Vice President


THE STATE OF VIRGINIA          §
                               §
COUNTY OF HENRICO              §

    On _April 17_____, 1995, before me, the undersigned, a Notary Public in and for said State, personally appeared Benjamin B. Cummings, Jr., Vice President of Circuit City Stores, Inc., a Virginia corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by this signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

_Joyce C. Woolsen_
Notary Public in and for said County and State

My Commission Expires:

_5/31/95_

4

# INDEMNIFICATION AGREEMENT

This Indemnification Agreement is made this 16th day of November, 1995, between Dentici Family Limited Partnership, a Wisconsin limited partnership (hereinafter referred to as "Landlord") and CIRCUIT CITY STORES, INC., a Virginia corporation (Hereinafter referred to as "Tenant").

## WITNESSETH

Landlord and Tenant have entered into a Lease (the "Lease") dated May 2, 1995 whereby Landlord has leased to Tenant a portion of the real property located in Greenfield, Milwaukee County, Wisconsin (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Tenant Improvement Allowance as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    The Tenant hereby indemnifies and agrees to hold the Landlord and its Mortgagee harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises and the Shopping Center. In the event that any mechanic, materialman or other claimant makes claim against the Premises or Shopping Center based upon materials or services provided under contract with the Tenant, the Tenant shall hold harmless and protect the Landlord and its Mortgagee from any loss, payment, claim or expense related thereto.

2.    The Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises or the Shopping Center by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure by any other means, or should any Mortgagee request such bond or payment by Tenant, the Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's and Mortgagee's interest in the Premises and the Shopping Center. This indemnity and hold harmless shall not apply to any liens or claims caused by the Landlord or Landlord's agents.

1

EXECUTED this 16th day of November, 1995.

**LANDLORD**

Dentici Family Ltd. Partnership

By: _James P. Dentici_

Name: JAMES P. DENTICI

Title: GEN. PARTNER.

**TENANT**

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Benjamin B. Cummings Jr._

Name: Benjamin B. Cummings, Jr.

Title: Vice President, Real Estate

2

Legal Description


PARCEL 1:
A part of the Southeast One-quarter (1/4) of Section Twenty-one (21), Township
Six (6) North, Range Twenty-one (21) East, in the City of Greenfield, Milwaukee
County, Wisconsin, bounded and described as follows:  Commencing at a point
660.00 feet North of the South line and 60.00 feet West of the East line of
said 1/4 Section; thence North and parallel to the East line of said 1/4
Section, 117.59 feet to a point in the South line of the Milwaukee County
expressway, thence South 81°52'10" West along said expressway, 252.23 feet to
a point; thence South and parallel to the East line of said 1/4 Section, 86.70
feet to a point that is 660.00 feet North of the South line of said 1/4
Section; thence North 88°53'50" East, and parallel to the South line of said
1/4 Section, 250.00 feet to the place of beginning.

PARCEL 2:
Outlot "A" of Certified Survey Map No. 4893, being a redivision of Parcel A of
Certified Survey Map No. 3080, being a part of the Southeast One-quarter (1/4)
of the Southeast One-quarter (1/4) of Section Twenty-one (21), in Township Six
(6) North, Range Twenty-one (21) East, in the City of Greenfield, Milwaukee
County, Wisconsin, recorded in the Office of the Register of Deeds for
Milwaukee County, on February 26, 1987 in Reel 2048, Image 1813 as Document No.
6026347.

PARCEL 3:
Parcel E of Certified Survey Map No. 2220, a Redivision of Parcel 2 of
Certified Survey Map No. 1218 and Parcel "B" in Certified Survey Map No. 2052,
being a part of the Southeast One-quarter (1/4) of the Southeast One-quarter
(1/4) of Section Twenty-one (21), Township Six (6) North, Range Twenty-one (21)
East, in the City of Greenfield, Milwaukee County, Wisconsin, recorded on
November 9, 1973, in Reel 755, Image 303 as Document No. 4804802.

PARCEL 4:
Parcel "B" of Certified Survey Map No. 3080, being a division of Parcel "B" of
Certified Survey Map No. 2480, which is a division of Parcel "C" of
Certified Survey Map No. 2220, being a redivision of Parcel 2 of Certified
Survey Map No. 1218 and Parcel "B" in Certified Survey Map No. 2052, being a
part of the Southeast One-quarter (1/4) of the Southeast One-quarter (1/4) of
Section Twenty-one (21), Township Six (6) North, Range Twenty-one (21) East,
and a division of Parcel "B" of Certified Survey Map No. 2470, being a
redivision of Parcel "D" of Certified Survey Map No. 2220, being a part of the
Southeast One-quarter (1/4) of the Southeast One-quarter (1/4) of Section
Twenty-one (21), Township Six (6) North, Range Twenty-one (21) East, in the
City of Greenfield, Milwaukee County, Wisconsin, recorded on June 10, 1977 in
Reel 1022, Image 1361 as Document No. 5109042.