| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| One Rodney Square | One James Center |
| PO Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 |
| (302) 651-3000 | (804) 775-1000 |

– and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
: 
In re: : Chapter 11
:
CIRCUIT CITY STORES, INC., : Case No. 08-35653 (KRH)
et al., :
:
Debtors. : Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 365(a) AND BANKRUPTCY RULE 6006 AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES OF PERSONAL PROPERTY BETWEEN THE DEBTORS, INTERNATIONAL BUSINESS MACHINES CORPORATION AND IBM CREDIT LLC**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion") for entry of an order, pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to reject certain unexpired leases of personal property between the Debtors International Business Machines Corporation and IBM Credit LLC (together, "IBM") associated with personal property located, stored, or used at the Locations (as defined herein) set forth on Exhibit A, which personal property leases include (without limitation) those set forth on Exhibit B (collectively, the "IBM Leases" or the "Leases"),[2] and

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]  Exhibit B sets forth the list of IBM Leases associated with the Locations based on the Debtors' latest information.  However, the Debtors believe that certain Supplements associated with the Locations may have been inadvertently omitted.  To ensure that
*(cont'd)*

any guaranties thereof, effective as of the Rejection Date (as defined herein).  In support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 365(a) and Bankruptcy Rule 6006.

**BACKGROUND**

**A.   The Chapter 11 Cases.**

3.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

---

*(cont'd from previous page)*
all Supplements associated with the Locations are rejected, the Debtors are seeking to reject all IBM Leases for Equipment stored in or used at the Locations listed on Exhibit A, whether or not such Leases are specifically listed by Supplement number on Exhibit B.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going-out-of-business sales (the "GOB Sales") pursuant to the Agency Agreement at the Debtors' remaining stores.

**B.    The IBM Leases.**

7. Circuit City and IBM are parties to those certain Term Lease Master Agreements (the "Master Lease Agreements"), entered into on December 23, 2005 and April 27, 2007, as amended from time to time, and those

certain supplements to the Master Lease Agreements (each, a "Supplement"),[3] pursuant to which IBM leases certain point-of-sale and other equipment to Circuit City. Copies of the Master Lease Agreements are attached hereto as Exhibit C and Exhibit D.

8. Pursuant to the Master Lease Agreements and certain of the Supplements, Circuit City leased equipment from IBM, which has been or currently is used in Circuit City's retail stores.

9. Certain of the leased equipment that is not currently being used in retail stores is being held in distribution centers that the Debtors intend to vacate by the end of February (the "Distribution Centers").

10. As set forth above, on January 16, 2009, the Court authorized the Debtors' entry into the Agency Agreement. Pursuant to the Agency Agreement, the Agent has commenced GOB Sales to liquidate the merchandise at

---

[3] Each Supplement is a contract entirely separate from and severable from all other Supplements. Each Supplement fully incorporates the terms of the Master Lease Agreements and, hereinafter, references to a Supplement shall include the Master Lease Agreements as incorporated therein.

each of the Debtors' 567 remaining retail stores and distribution centers (the "Closing Locations"). The Agency Agreement provides that the Agent will pay occupancy expenses for the Closing Locations on a per diem basis while the GOB Sales are conducted. The Agency Agreement further provides that the Agent may complete GOB Sales at Closing Locations, vacate the Closing Locations, and return responsibility for occupancy expenses at such Closing Locations upon ten (10) days written notice to the Debtors.

    11. The Agent has provided notice to the Debtors that it plans to complete the GOB Sales for certain of the Closing Locations at various dates in February and early March (the "Early Closing Locations" and together with the Distribution Centers, the "Locations"). The date on which the Agent intends to vacate each Early Closing Location is referred to herein as the "Sale Termination Date" for that Location.

    12. Equipment leased from IBM pursuant to the Master Lease Agreements and the Supplements is located at all or substantially all of the Locations (the "Equipment"). The Debtors currently have no need for

the Equipment in the Distribution Centers and, following the Sale Termination Date at each Early Closing Location, the Debtors will have no need for the Equipment in such Locations.

**C.    Rejection Of The Locations' Leases.**

13.    In addition, on February 13, 2009, the Debtors filed their Third Omnibus Motion For Order Pursuant To Bankruptcy Code Sections 105(a), 365 And 554 And Bankruptcy Rule 6006 Authorizing Rejection Of Certain Unexpired Leases Of Nonresidential Real Property And Abandonment Of Personal Property (D.I. 2178, the "Third Omnibus Rejection Motion").  And, on February 17, 2009, the Debtors filed their Fourth Omnibus Motion For Order Pursuant To Bankruptcy Code Sections 105(a), 365 And 554 And Bankruptcy Rule 6006 Authorizing Rejection Of Certain Unexpired Leases Of Nonresidential Real Property And Abandonment Of Personal Property (the "Fourth Omnibus Rejection Motion" and together with the Third Omnibus Rejection Motion, the "Rejection

Motions").[4]  Pursuant to the Rejection Motions, the Debtors seek Court authorization to reject the underlying real property leases for the majority of the Locations.  For the those real property leases not included in the Rejection Motions, the Debtors will seek to dispose of such real property leases in accordance with the lease sale and rejection procedures order (D.I. 2242; the "Lease Procedures Order").

### RELIEF REQUESTED

14.  By this Motion, the Debtors request the entry of an order under Bankruptcy Code sections 105(a) and 365(a) and Bankruptcy Rule 6006 authorizing the Debtors to reject the IBM Leases, effective as of the Rejection Date.

15.  The Debtors are currently performing their review and evaluation of other unexpired leases and subleases that are not the subject of this Motion. As this process continues, the Debtors may identify additional leases to be assumed or rejected. Accordingly, the Debtors reserve the right to seek to

---

[4]  The Fourth Omnibus Rejection Motion was amended on February 19, 2009.

assume or reject additional leases in the future. Except with respect to the IBM Leases associated with the Locations that were not expressly identified on Exhibit B, this Motion should not be construed as a request or determination that any leases not listed herein are to be assumed or rejected. For the avoidance of doubt, the Debtors are not seeking to reject the Master Lease Agreements at this time.

**BASIS FOR RELIEF**

16. Because occupancy expenses for the Locations total approximately $2.4 million per month (or $75,000 per day), the Debtors are working to vacate each Location as quickly as possible following the applicable Sale Termination Date. To accomplish this goal, the Debtors filed the Rejection Motions seeking to reject the real property leases associated with the Locations.

17. In a further effort to avoid any unnecessary post-petition administrative costs, in the exercise of the Debtors' sound business judgment, the Debtors hereby move to reject the IBM Leases, as set forth herein. Upon the Sale Termination Date, the Debtors will have no productive use for the Equipment.

However, the Debtors continue to be obligated to pay rent under the IBM Leases.

18. By rejecting the IBM Leases at this time, the Debtors will avoid incurring additional unnecessary administrative charges for equipment that provides no tangible benefit to the Debtors' estates. Indeed, the Debtors will be relieved from paying further lease payments to IBM, as well as other costs, including taxes, insurance, maintenance and other future related charges associated with the IBM Leases. The resulting savings from the rejection of the IBM Leases will increase the Debtors' future cash flow and assist the Debtors in managing their estates. In addition, rejection of the IBM Leases will ensure that the Debtors effectively reject the real property leases for the Locations promptly after the Sale Termination Date in accordance with the Rejection Motions and the Lease Procedures Order, thereby reducing the associated occupancy expenses.

19. The Debtors have analyzed each of the IBM Leases to determine the appropriate date of rejection, in order to minimize unnecessary costs to the estate.

Based on this analysis, the Debtors hereby request that the Court authorize rejection of the IBM Leases on the date listed on Exhibit B for each Lease (the "Rejection Date").[5] In each case, the Rejection Date coincides with or follows closely the date of rejection of the underlying real property leases.

20. In considering their options with respect to the IBM Leases, the Debtors have determined in their business judgment that the costs associated with delaying rejection of the Leases would be substantial and would constitute an unnecessary drain on the Debtors' cash resources.

21. Accordingly, the Debtors believe that rejection of the Leases as of the Rejection Date is in the best interests of their estates, their creditors, and other parties in interest.

**APPLICABLE AUTHORITY**

22. Bankruptcy Code section 365(a) provides that a debtor, "subject to the court's approval, may

---

[5] With respect to any IBM Leases not specifically listed on Exhibit B, the Rejection Date shall be the date listed on Exhibit A for the Location associated with such Lease.

11

assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). A debtor's determination to reject an executory contract is governed by the "business judgment" standard. See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1046-47 (4th Cir. 1985), cert. denied sub nom., Lubrizol Enters., Inc. v. Canfield, 475 U.S. 1057 (1986); In re Extraction Technologies of VA, L.L.C., 296 B.R. 393, 399 (Bankr. E.D. Va. 2001); see also In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice).

23. Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. Of Subordinated Bondholders v. Integrated

Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

24.  The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing.  See Comm. Of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

25.  As set forth above, the Debtors have satisfied the "business judgment" standard for rejecting the IBM Leases.  The Leases are financially burdensome and unnecessary to the Debtors' estates.  Rejection of the IBM Leases is in the Debtors' best interests because the Debtors no longer have any use for the Equipment covered by the Leases nor for the Locations at which the Equipment is kept.  As such, the IBM Leases provide no economic benefit to the Debtors, nor are the IBM Leases a source of potential value for the Debtors' estates and creditors.  To the contrary, any delay in rejecting the IBM Leases beyond the Rejection Date could represent a

substantial drain on the Debtors' estates in the form of continued rental payments under the IBM Leases. Accordingly, rejection of the Leases reflects an exercise of the Debtors' sound business judgment.

26. The Debtors also respectfully request that the Court enter an order setting the effective date of rejection of the Leases as the Rejection Date.

27. Although the Debtors are seeking to reject the IBM Leases expeditiously, the Debtors have been and will continue to work with IBM to provide them with contact information for the landlords for the Locations and otherwise assist IBM in its recovery of the Equipment, all as in the best interests of these estates and consistent with the Debtors' fiduciary obligations. Thus, IBM should be in a position to recover its Equipment through direct arrangements with the applicable landlord or otherwise. In light of the foregoing, the Debtors submit that rejection of the IBM Leases as of the Rejection Date will not unduly harm or otherwise prejudice IBM. Moreover, by rejection, IBM will be relieved of its own obligations under the IBM

14

Leases, allowing it to cease performance thereunder and recover the Equipment.

28. As noted above, the Debtors will cease their use of the Equipment as of the Rejection Date. Thus, the Debtors will not benefit from further use of the Equipment. To the contrary, however, delay in rejecting the Equipment will benefit IBM because the Debtors would likely incur in further administrative expenses owed to IBM (and potentially other parties).

29. In summary, the Debtors believe that the proposed rejection of the IBM Leases is tailored to minimize administrative expense, maximize distributions to creditors in these chapter 11 cases, and return control of the Equipment to IBM. In the exercise of their sound business judgment, the Debtors thus seek authority to reject the IBM Leases effective as of the Rejection Date.

30. Numerous courts, including those in this district, have authorized similar relief. See, e.g., In re Movie Gallery, Inc., et al., Case No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007); In re Storehouse, Inc., Case No. 06-11144 (Bankr. E.D. Va. Nov. 21, 2006); In re Rowe

Furniture, Inc., Case No. 06-11143 (Bankr. E.D. Va. Nov. 21, 2006); In re The Rowe Cos., Case No. 06-11142 (Bankr. E.D. Va. Nov. 21, 2006); In re US Airways Group, Inc., Case No. 02-83984 (Bankr. E.D. Va. Aug. 12, 2002).

**NOTICE**

31.  Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130) and to IBM.  The Debtors submit that, under the circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

32.  Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

33. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: February 20, 2009  
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP  
Gregg M. Galardi, Esq.  
Ian S. Fredericks, Esq.  
P.O. Box 636  
Wilmington, Delaware 19899-0636  
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP  
Chris L. Dickerson, Esq.  
333 West Wacker Drive  
Chicago, Illinois 60606  
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley          .  
Dion W. Hayes (VSB No. 34304)  
Douglas M. Foley (VSB No. 34364)  
One James Center  
901 E. Cary Street  
Richmond, Virginia 23219  
(804) 775-1000

Counsel for Debtors and Debtors in Possession