Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :
              Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363
(I) AUTHORIZING DEBTORS TO ENTER INTO AN AGREEMENT IN
CONNECTION WITH SALE OF FURNITURE, FIXTURES AND
EQUIPMENT, SUBJECT TO HIGHER OR OTHERWISE BETTER
PROPOSALS; (II) APPROVING SALE OF FURNITURE, FIXTURES
AND EQUIPMENT FREE AND CLEAR OF ALL INTERESTS; AND
(III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Debtors,

for entry of an order, under Bankruptcy Code

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

sections 105 and 363 and Bankruptcy Rule 6004

(I) Authorizing the Debtors to Enter Into An Agreement
in Connection With Sale of Furniture, Fixtures and
Equipment, Subject to Higher or Otherwise Better
Proposals, (II) Approving Sale of Furniture, Fixtures
and Equipment Free and Clear of All Interests, and
(III) Granting Related Relief; and the Debtors having
held an auction on February 17, 2009 (the "Auction");
and the Court having reviewed the Motion; and the Court
having determined that the relief requested in the
Motion is in the best interests of the Debtors, their
estates, their creditors, and other parties in interest;
and the Court having conducted a hearing on the Motion
on February 17 and February 18, 2009; and all parties in
interest having been heard, or having had the
opportunity to be heard, regarding the Proposal and the
FF&E Agreement, and the transaction contemplated thereby;
and it appearing that proper and adequate notice of the
Motion has been given and that no other or further
notice is necessary; and upon the record herein; and
after due deliberation thereon; and good and sufficient
cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.   The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.   Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.   Good and sufficient notice of the relief sought in the Motion has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to those parties that requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Case Management Order), as well as (i) all entities known to have expressed an interest in a transaction regarding the FF&E; and (ii) all federal, state, and local regulatory or taxing authorities that have a reasonably known interest in the relief requested by the Motion.

---

2 Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

D.    The Debtors' proposed notice as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

E.    The Debtors have demonstrated a compelling and sound business justification for authorizing the sale of the FF&E under the circumstances, timing, and procedures set forth herein and in the Motion.

F.    The process by which the Debtors and their professionals solicited bids from various national liquidation firms and other parties that specialize in liquidating FF&E and selected the highest or otherwise best proposal was fair and reasonable and in the best interests of the Debtors and their estates.

G.    The procedures announced on the record at the Auction and by which the Auction was conducted were substantively and procedurally fair to all parties.

H.    After an auction held on February 17, 2009, the Debtors determined that (i) the highest and best bid was that of Liquid Asset Partners, LLC (the "FF&E Agent"), which is reflected in the agency

4

agreement attached hereto as Exhibit B (the "FF&E Agreement"); and (ii) the next highest and bid was that of a Joint Venture consisting of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC, Tiger Capital Group, LLC and JG Resources, LLC (the "Next Highest Bidder",[2] and its bid, the "Next Highest Bid").[3]

I.    The Next Highest Bidder has agreed to keep the Next Highest Bid open until Liquid Asset Partners starts the process set forth in the Agreement and is ready willing and able to start the process contemplated by the Next Highest Bid.

J.    Entry into the FF&E Agreement constitutes the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors, and all other parties-in-interest.

---

[2]  Reference to FF&E Agent shall be a reference to the Next Highest Bidder in the event Liquid Asset Partners does not start the process contemplated by its agency agreement.

[3]  Reference to the FF&E Agreement shall be a reference to the Next Highest Bid in the event Liquid Asset Partners does not start the process contemplated by its agency agreement.

K.    The compensation of the FF&E Agent under the FF&E Agreement is fair and reasonable, and payment of such fee is in the best interests of the Debtors, their estates and creditors, and all other parties-in-interest.

L.    The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties-in-interest herein; and it is therefor

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is GRANTED.

2.    Pursuant to Bankruptcy Code sections 105(a) and 363(b), the Debtors are authorized to enter into the FF&E Agreement attached hereto as Exhibit A. The Debtors are authorized to pay the fees due to and reimburse expenses actually paid by the FF&E Agent pursuant to the FF&E Agreement.

3.    The Sale of the FF&E is hereby approved and authorized in all respects.  For the avoidance of doubt, the FF&E does not include Oracle licensed

software, which will be extracted from any FF&E being
sold prior to sale.

4.    Pursuant to Bankruptcy Code sections
363(b) and 363(f), the sale of the FF&E shall be on an
"AS IS WHERE IS" basis free and clear of all interests,
including liens, claims, and encumbrances ("Interests"),
with all such Interests to attach to the cash proceeds
of the Sale in the order of their priority, with the
same validity, force, and effect which they had as
against the FF&E immediately before such transfer,
subject to any claims and defenses the Debtors may
possess with respect thereto.

5.    To the extent FF&E Agent is conducting
the Sale in violation of any provision of any of the
Debtors' leases, all of the Debtors' landlords are
directed to accept this Order as binding authority
authorizing the Debtors and the FF&E Agent to conduct
the Sale at the Locations, including, without limitation,
conducting and advertising of the Sale in accordance
with the Proposal, the FF&E Agreement and this Order.

6.   No approval, license or permits of any
governmental authority shall be required to conduct the
Sale.

7.   If any parties or persons, including but
not limited to landlords, subtenants, utility companies,
governmental agencies, sheriffs, marshals or other
public officers, creditors and all those acting for or
on their behalf, believe that cause exists to: (a)
prohibit FF&E Agent from advertising the Sale, to the
extent same is consistent with the Agency Agreement, (b)
in any way interfere with or otherwise impede the
conduct of the Sale at the Locations or the use or
maintenance of the Debtors' assets of the Debtors
located at the Locations, or (c) institute any action or
proceeding in any court or other administrative body
having as its objective the obtaining of an order or
judgment against the Debtors, FF&E Agent or a landlord
that might in any way directly or indirectly obstruct or
otherwise interfere with or adversely affect the conduct
of the Store Closing Sales and/or seek to recover
damages for breach(es) of covenants or provisions in any
lease or sublease based upon any relief authorized

herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, FF&E Agent, the landlord related the Sale until this Court has resolved such dispute. This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

8.   The Sale at the Locations shall be conducted by the Debtors and FF&E Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions; provided, however, that nothing in this Order shall impact any objection a landlord may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection.

9.   The Debtors and/or the FF&E Agent (as the case may be), are authorized and empowered to transfer

the FF&E among the Locations, notwithstanding anything
in applicable non-bankruptcy law to the contrary.

10.   No bulk sale or similar law shall
prohibit the Debtors or the FF&E Agent from taking
action contemplated by the Proposal or the FF&E
Agreement.

11.   Provided that the Sale is conducted in
accordance with the terms of this Order, the Proposal,
and the FF&E Agreement, the Debtors, their landlords and
FF&E Agent are presumed to be in compliance with the
requirements of any applicable liquidation sales, bulk
sale laws or any other laws that purport to regulate,
prohibit, restrict, or in any way limit FF&E Agent's use
of (i) signwalkers; (ii) interior Location signage and
banners; and (ii) exterior banners (each a "GOB Law,"
and together, the "GOB Laws").  To the extent there is a
dispute arising from or relating to the Sale, this Order,
the Proposal, or the FF&E Agreement (each a "Reserved
Dispute"), which dispute relates to any GOB Law, this
Court shall retain exclusive jurisdiction to hear and
determine all such Reserved Disputes.

12.  The Debtors are authorized to take any
and all actions that are necessary or appropriate to
consummate the transactions contemplated by this Order,
all without further order of this Court.

13.  This Order shall be effective immediately
upon entry, and any stay of orders provided for in
Bankruptcy Rule 6004(h) and any other provision of the
Bankruptcy Code or Bankruptcy Rules is expressly lifted.

14.  The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

15.  This Court shall retain jurisdiction with
respect to all matters arising or related to the
implementation of this Order.

Dated:  Richmond, Virginia
        February _____, 2009
        Feb 19 2009

                    /s/ Kevin Huennekens
                    _____
                    UNITED STATES BANKRUPTCY JUDGE


                    Entered on Docket:  2/19/09

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                        /s/ Douglas M. Foley

**<u>Exhibit A</u>**

**(FF&E Proposal)**

# Liquid Asset
## Partners LLC

### Liquidations, Auctions & Negotiated Sales!
4700 - 36th St., Grand Rapids, MI 49512
616-719-5917 ph      616-719-5918 fax

February 5th, 2009

**VIA E-MAIL: <u>Scott.Stegenga@fticonsulting.com</u>**
**Mr. Scott Stegenga**

> **Re: Revised:** *Circuit City's 7 Distribution Centers, 4 Service Centers, 2 Corporate Offices, 2 Xdocks, and 1 Call Center of Equipment*

Gentlemen:

Please accept this correspondence as the proposal of  Liquid Asset Partners LLC with regard to the liquidation of the assets, including warehouse equipment, electronics and office equipment, in 7 DC's, 4 SVC's, 2 Corporate Offices, 2 X-docks, and 1 Call Center located throughout the country (the "Facilities").   We greatly appreciate this proposal opportunity and sincerely hope we will be able to provide these services on your behalf.

### <u>Introduction</u>

As you may be aware, Liquid Asset Partners LLC is a nationwide liquidation and consulting firm, comprised of professionals with a diverse knowledge of industries. During the past 5 years, the team from Liquid Asset Partners has consulted on or purchased equipment assets (similar to this project) for liquidation which exceeded one hundred million dollars in sales.  Some of these transactions include Penn Traffic's 2 Distribution Centers in Columbus (1million Sq Ft.), Kmart's World Corporate Office(1mm Sq Ft.) & Warehouse in Detroit, 33 Office Max DC's, Bugle Boys 600,000 sq ft DC in Atlanta, Amazing Savings DC in NJ, Franks Nursery DC in Indianapolis, 300+ Builders Square Warehouse Stores (120,000 sq ft each), Over 10,000 retail stores of Fixtures & Equipment, and numerous other Corporate Offices & Distribution Centers.

Competitors may paint a blue sky picture of <u>"potential"</u> sale recovery. Is this <u>"potential"</u> recovery realistic from competitors who may be stretched thin in the current GOB environment? Although this project does hold potential for a significant upside, we base our estimates on realistic numbers. We strive to give you a conservative estimate and currently have our experienced team of Warehouse & Equipment liquidation specialists fully available to devote the proper attention to maximize this project return and upside for Circuit City.

**Approach**

    We strive to put together a project that provides Circuit City the cooperation, flexibility, and attention to detail required to maximize the sale of assets in the changing time frames discussed. We are prepared to deploy our team of veteran liquidators, each experienced in the liquidation of warehouse and office equipment, to each site to ensure a safe & successful sale. To maximize the net return we will utilize a comprehensive, tireless and complete marketing effort, bringing a "no stone unturned" mentality to the approach and scope of the project.  We use a multitude of media and advertising channels to insure the proper exposure to the sale and to the project overall, while always protecting the integrity and reputation of the transaction at hand.  Our marketing strategies generally include: local, regional and international newspaper insertions, nationwide internet announcement, trade listings, web and Internet notifications, email notices, and direct telephone solicitations.  Our list of direct buyers for Warehouse & Distribution Center equipment encompasses 1,000+ warehouse equipment dealers, 300+ Conveyor/Automation dealers, and 15,000+ equipment end users.

    We would handle all aspects of the transaction from concept through execution, including preparing and placing all advertising and marketing materials, overseeing personnel and operational efforts, onsite liquidation execution and support services, property removal and building clean-up supervision, and providing detailed financial accounting and support documentation.  Our services generally also include securing and identifying all assets for sale, preparing the liquidation materials, and providing all other related and/or necessary services.  Finally, we carry insurance and will require that our purchasers provide proof of insurance before removing any assets from the Facilities.

    **Compensation Structure**

    We propose two similar compensation structures. First we propose a scenario under which our compensation would be equal to nine per cent (9%) of the net proceeds of the sale and any buyers premium collected would be included in the gross sale totals.  Second we propose a commission structure under which our compensation would be equal to two per cent (2%) of the net proceeds of the sale. Under this second scenario, we would also charge buyers a customary buyer's premium (generally equal to ten per cent (10%)). Any such buyer's premium collected would be retained by us and not be treated as part of the gross proceeds from the sale subject to the commission set forth above.

    Under either commission scenario, we would deduct for direct sale related expenses up to the amounts noted below from the sale proceeds. Circuit City would not be required to pay these sale expenses up front. These expenses would include expenses for marketing and advertising, accounting, labor and personnel (including supervisors), travel, and related expenses.  As noted above, all occupancy and related costs (i.e., rents, mortgages, property insurance, utilities, phone, trash, security, etc.) would remain your responsibility for the duration of the sale period.

    **Costs Per Location**
    2 Week Service Center Liquidation: up to $9,500 per location
    2 Week Distribution Center Liquidation: up to $19,500 per location
    2 Week Office Complex Liquidation: up to $19,500 per location
    6 Week Distribution Center Liquidation: up to $44,500 per location
    6 Week Office Complex Liquidation: up to $35,500 per location

Under this scenario, assuming a start date no later than two weeks from today, we would require unrestricted access to the Facilities. We are prepared to meet your requirements for any facilities that need a 2 week sale, but we feel to maximize the return to Circuit City on this project a 6-8 week time frame would be ideal for certain DC's or Office Complex's. We understand some facilities are leased and therefore, would require consent from the court or landlord of each Facility to the sale process. Finally, the proposal is subject to the execution of a definitive agreement reasonably acceptable to the parties.

**<u>Conclusion</u>**

We believe that these assets will make for a terrific sale and are extremely excited about the prospects of this event.  No matter what value may exist within the Facilities, we believe that our sale methods and strategies will extract the highest recovery within the time frame allowed.  We can promise that no company or individuals will work with more vigor, attention, and diligence to assure the success of this sale.  We pride ourselves in our service philosophy and would welcome the opportunity to provide services on your behalf.

Please let me, or any other member of our group, know if you have any further questions, issues, or concerns. Thank you again for your time and continued consideration in this matter. I look forward to hearing from you.

Sincerely,

*Bill Melvin Jr.*

Bill Melvin Jr.
CEO

CC:    Bill Melvin Sr.
        Chairman

## **Exhibit B**

**(FF&E Agreement)**



## Liquidations, Auctions & Negotiated Sales!
### 4700 - 36th St., Grand Rapids, MI 49512
### 616-719-5917 ph     616-719-5918 fax

February 17, 2009

<u>**VIA EMAIL**</u>
Circuit City Stores, Inc.
c/o Kevin Regan
FTI Consulting, Inc.
3 Times Square, 11th Floor
New York, NY 10036
Email: Kevin.Regan@FTIConsulting.com

Re:    <u>Bid to Liquidate Furniture, Fixtures and Equipment</u>

Dear Mr. Regan:

This letter serves to memorialize the agreement (this "Agreement") between Circuit City Stores, Inc. and certain of its subsidiaries, each a debtor and debtor in possession in the bankruptcy case styled <u>In re Circuit City Stores, Inc., et al.</u>, Case No. 08-35653 (Bankr. E.D. Va. 2008) (collectively, the "Debtors"), and Liquid Asset Partners LLC (4700  36th Street, Grand Rapids, MI 49512) (the "Agent").

By this Agreement, the Agent agrees to serve as agent to the Debtors for the purpose of liquidating through one or more sales (collectively, the "Sale") all of the Debtors' furniture, fixtures and equipment ("FF&E") located at the distribution centers, service centers, xdocks, corporate offices, and call centers identified on Schedule 1 attached hereto.  The Agent agrees to use its best efforts to conduct the Sale in a manner that will maximize value for the Debtors and their estates.

Additionally, the Agent acknowledges and agrees that any Sale of the FF&E at the Locations must be concluded by the dates referenced in Schedule 1 (with respect to each such Location, the "Sale Closing Date"); <u>provided that</u>, any Sale Closing Date may be extended by the Debtors in their sole discretion.

**Expense  Cap**.  The Agent agrees that expenses of the Sale shall be the Agent's sole responsibility, which expenses the Agent has agreed shall be capped at $300,000 (the "Expense Cap") for the purposes of calculating the Agent Fee (as defined below).  For the sake

1

of clarity, the Agent and Debtors agree that the Agent is not responsible for occupancy expenses with respect to the Locations and that such occupancy expenses are excluded from the Expense Cap. Agent's out of pocket expenses subject to the Expense Cap shall be paid weekly and deducted from the collected proceeds by Agent. In the event that the Agent's actual expenses exceed the Expense Cap, payment of and any liability associated with any expenses in excess of the Expense Cap shall be the sole responsibility of the Agent. If the Debtors incurred any expenses that are otherwise the obligation of the Agent, then either the Agent shall reimburse the Debtors or the Debtors may deduct such expenses from the Agent's Fee. The expense cap is predicated on the Schedule 1 closing dates. If the closing dates are extended, the parties will mutually agree to an increase in the amount of the Expense Cap

**Taxes**. Agent shall be responsible for the collection on behalf of the Debtors, as applicable, of all sales and other applicable taxes ("Taxes") related to any sale of FF&E permitted hereunder.

**Agent's Fee**. In consideration of the foregoing, Agent shall be paid a fee equal to gross proceeds of the Sale (including any buyer's premium(s), the "Sale Proceeds"), less the Agent's actual expenses associated with the Sale (capped at the Expense Cap), multiplied by 3% (the "Agent's Fee"). For the avoidance of doubt, Taxes shall not constitute Sale Proceeds.

Sale Proceeds and Taxes from the Sale shall be held by the Debtors. The Agent's Fee shall be paid at the conclusion (within 15 days of the closing date per location) of the Sale from the Sale Proceeds. The Agent shall collect the proceeds and shall provide weekly reporting and reconciliation and shall turnover Sale Proceeds and Taxes collected by the Agent to the Debtors on a weekly basis.

By executing this Agreement, both parties represent and warrant that they have the requisite authority to bind the entities on whose behalf they so sign to and such entities hereby agrees to be bound by the terms and conditions hereof, which representation and warranty shall survive execution of this Agreement.

Very truly yours,
Liquid Asset Partners LLC, on behalf of the Agent

William Melvin
CEO

Encl.

Cc w/ encl.:   James Marcum (Jim_Marcum@circuitcity.com)
                    For the Debtors
              Scott Stegenga (Scott.Stegenga@fticonsulting.com)
                    Financial Advisor to the Debtors
              Gregg M. Galardi (Gregg.Galardi@skadden.com)
              Ian S. Fredericks (Ian.Fredericks@skadden.com)

2

Counsel to the Debtors
Stanley E. Goldich (sgoldich@pszjlaw.com)
Counsel to the Creditors' Committee
Michael Atkinson (michael.atkinson@protiviti.com)
Financial Advisor to the Creditors' Committee

ACCEPTED AND AGREED TO BY:
CIRCUIT CITY STORES, INC., on behalf
of the Debtors

[James Marcum]
[CEO & Vice Chairman]

**Circuit City Stores, Inc.**
**FF&E - Locations & Closing Dates**
**Schedule I**

| Location Number | Location Name | Address | City | State | Square Feet (main buildings) | Vacate Date |
|---|---|---|---|---|---|---|
| **Distribution Centers** | | | | | | |
| 567 | Ardmore DC | 1901 Cooper Dr | Ardmore | OK | 754,000 | 3/21/2009 |
| 255 | Bethlehem DC | 4000 Township Line Rd | Bethlehem | PA | 640,000 | 3/21/2009 |
| 353 | Industry DC | 680 S Lemon Ave | Walnut | CA | 918,848 | 2/28/2009 |
| 344 | Livermore DC | 400 Longfellow Court | Livermore | CA | 615,078 | 3/21/2009 |
| 755 | Marion DC | 1100 Circuit City Rd | Marion | IL | 1,078,450 | 3/21/2009 |
| 335 | Mid-Atlantic DC | 14301 Mattawoman Dr | Brandywine | MD | 394,492 | 2/28/2009 |
| 775 | Orlando DC | 19925 Independence Blvd | Groveland | FL | 710,000 | 3/21/2009 |
| 379 | Walnut DC | 501 S. Cheryl Lane | Walnut | CA | 404,492 | 3/21/2009 |
| **Service Centers** | | | | | | |
| 73 | Atlanta Svc Ctr | 1323 West Corporate Court | Lithia Springs | GA | 130,000 | 2/28/2009 |
| 34 | Dallas Svc Ctr | 3738 Duncanville Rd | Dallas | TX | 40,000 | 2/28/2009 |
| 45 | Philadelphia Svc Ctr | 400 Crossing Drive | Bristol | PA | 60,509 | 2/28/2009 |
| **Xdocks** | | | | | | |
| 754 | Kearny Xdock | 136 Paris St #158 | Newark | NJ | 19,965 | 2/28/2009 |
| 325 | Boston Xdock 750 | 165 Grove St | Franklin | MA | 8,198 | 2/28/2009 |
| **Corporate Offices & Call Centers** | | | | | | |
| 9101 | Corporate Headquarters | 9950 Mayland Dr | Richmond | VA | 306,284 | 2/28/2009 |
| 9103 | Corporate Headquarters | 9954 Mayland Dr | Richmond | VA | 382,579 | 4/15/2009 |
| 9039 | Westmoreland | 1957 Westmoreland Street | Westmoreland | VA | 121,815 | 2/28/2009 |

# CERTIFICATE OF NOTICE

```
District/off: 0422-7          User: jafarbayj          Page 1 of 1              Date Rcvd: Feb 19, 2009
Case: 08-35653               Form ID: pdforder         Total Served: 1
```

```
The following entities were served by first class mail on Feb 21, 2009.
aty          +Gregg M. Galardi,    Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,   PO Box 636,
              Wilmington, DE 19899-0636
```

```
The following entities were served by electronic transmission.
NONE.                                                                        TOTAL: 0

      ***** BYPASSED RECIPIENTS *****
NONE.                                                                        TOTAL: 0
```

```
Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Feb 21, 2009**                    **Signature:**    _Joseph Speetjens_