**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

In re

Circuit City Stores, Inc., *et al.,*

        Debtors.

Case No.:  08-35653-KRH
(Jointly Administered)

Chapter 11

---

**UNITED STATES TRUSTEE'S OBJECTION TO
THE DEBTORS' MOTION FOR AN ORDER
APPROVING A WIND DOWN INCENTIVE AND RETENTION
PLAN AND AUTHORIZING PAYMENT OF WIND DOWN
INCENTIVE AND RETENTION PAY**

---

In support of this Objection to the Debtors' Motion for an Order Approving a Wind Down Incentive and Retention Plan and Authorizing Payment of Wind down Incentive and Retention Pay, (the "Motion"), W. Clarkson McDow, Jr., United States Trustee for Region 4 (the "U.S. Trustee"), by and through the undersigned counsel, states as follows:

**INTRODUCTION**

1.  This Court has jurisdiction to hear the above-referenced objection.

2.  Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

Robert B. Van Arsdale, Esq., AUST, VSB 17483
Shannon Franklin Pecoraro, Esq., VSB 46864
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
(804) 771-2310

3.  Pursuant to Bankruptcy Code § 307, the U.S. Trustee has standing to be heard with regard to the above-referenced Objection.

## SUMMARY

4.  On November 10, 2008, the above-referenced debtors (collectively, the "Debtors") filed the petitions in these cases.  On that same day, this Court entered an Order providing for the joint administration of these cases under Case No. 08-35653-KRH.

5.  On or about November 12, 2008, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

6.  A  trustee has not been appointed in these cases.

7.  The Debtors seek approval of the Wind Down Incentive and Retention Plan (the "Plan") and authorization to make payments under the Plan.

8.  The Plan proposed by the Debtors contains three distinct levels of participation.

9.  Tier I covers bonuses to be paid to sixteen (16) employees that the Debtors admit on page 8 of its Motion  "...may be considered 'insiders'" under § 101(31) of the Bankruptcy Code. The maximum total amount of Tier I bonuses is approximately $2.3 million.

10.  Tier II covers retention bonuses to be paid to one hundred thirty-seven (137) non-insider employees of the Debtors.

11.  The third level consists of a discretionary bonus pool for paying bonuses to employees who are not in Tier I.

## OBJECTION

12.  The U.S. Trustee hereby objects only to Tier 1 of the Debtors's Plan.

13.  The sixteen (16) employees covered by Tier I include the Chief Executive Officer, General Counsel, Chief Accounting Officer, the Senior Vice-President and Chief Merchandising Officer, and twelve other vice-presidents with different areas of responsibility. The members of Tier I appear to be the core management group for the Debtors.

14.  With the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act

of 2005 ("BAPCPA"), Congress has expressed its intent to limit payments to management in

bankruptcy cases.  The Debtors have not demonstrated in the Motion that the payments proposed

to be paid to the Tier I group are appropriate under § 503(c) of the Bankruptcy Code.


### *Tier I of the Plan Is governed by 11 U.S.C. 503(c)(1)*

15.  The U.S. Trustee objects to the Motion on the grounds that the proposed payments to

be paid under the Plan do not comply with § 503(c) of the Bankruptcy Code.

16.  Section 101(31) of the Bankruptcy Code defines an "insider" of a corporation as an

"officer," a "director" or a "person in control."  Based on the information provided in the

Motion, the Tier I participants are insiders.

17.  Section 503(c)(1) provides, in pertinent part, as follows:

(1) a transfer made to, or an obligation incurred for the benefit of, <u>an insider of
the debtor </u>for the purpose of inducing such person to remain with the debtor's
business, absent a finding by the court <u>based on evidence in the record</u> that:

> (A) The transfer or obligation is essential to retention of the person
> because the individual has a bona fide job offer from another
> business at the same or greater rate of compensation;

> (B) The services provided by the individual are essential to the
> survival of the business; and

> (C) either (I) the amount of the transfer made to, or obligation
> incurred for the benefit of, the person is not greater than an amount
> equal to 10 times the amount of the mean transfer or obligation of
> a similar kind given to <u>non-management employees </u>for any
> purpose during the calendar year in which the transfer is made or
> the obligation is incurred; or (ii) if no such similar transfers were
> made to, or obligations were incurred for the benefit of, such <u>non-
> management employees</u> during such calendar year, the amount of
> the transfer or obligation is not greater than an amount equal to 25
> percent of the amount of any similar transfer or obligation made to
> or incurred for the benefit of such insider for any purpose during
> the calendar year before the year in which such transfer is made or
> obligation is incurred;

11 U.S.C. § 503(c)(1) (2009) (emphasis added).

18.  Under § 503(c)(1) of the Bankruptcy Code, the Debtors must demonstrate all three of

the required elements set forth in § 503(c)(1) "based on evidence in the record."

19.  The Debtors have the burden of demonstrating that all three elements under Section

503(c)(1) are present.

20.  Rather than meeting this burden or even attempting to meet this burden, the Debtors have simply stated that Bankrupcy Code § 503(c)(1) does not apply.

21.  It is instructive that the Debtors have labeled the Plan as a "Wind down Incentive and Retention Plan."  Even if Tier I of the Plan contains elements of incentive, such incentives do not work unless the Debtors retain those sixteen (16) employees through the wind down period. Because the element of retention is central to the Plan, Bankruptcy Code § 503(c)(1) governs its implementation.

22.  The Debtors have the burden of proof with respect to the Motion.  *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147 (D. Del. 1999).   This examination is typically based upon the totality of the circumstances and the court   " . . . should consider all salient factors pertaining to the proceeding and accordingly, act to further the diverse interest of the debtor, creditors and equity holders alike." *Id.*

23.  The case law that has developed under Bankruptcy Code § 503(c)(1) since the enactment of BAPCPA suggests that, in order for a debtor to avoid running afoul of  Bankruptcy Code § 503(c)(1)'s restriction on retention pay, the debtor must demonstrate that its bonus plan is tied to significant hurdles which are difficult to achieve.  *See In re Dana Corp.*, 358 B.R. 567, 582 (Bankr. S.D.N.Y. 2006) (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly not 'lay-ups'"); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan 19, 2006) (plan that provided for payments upon improvement to "stalking horse" bid did not violate 11 U.S.C. § 503(c)(1)).

24.  In the Plan, twenty (20) different "incentive tasks" are enumerated.  Each of the sixteen (16) core management members are allocated one or more of these tasks with bonus targets of 100%, 75% , 50%, or 0% of a stated amount. If each member of Tier I earns 100% of all available bonuses, the total cost to the Debtors is not more than $2.3 million.   As detailed in an exhibit showing more details of the Plan, these sixteen (16) core management members would receive bonuses ranging from $33,900.00 to $375,000.00 if the 100 % targets are met.

25.  While these twenty (20) tasks initially appear to be "hurdles" that the insiders need

4

to overcome to earn their respective bonuses, a close inspection of some of these elements shows that at least some of these "hurdles" are illusory.

26. For example, Task XVI is to "successfully obtain court approval of sale of Canadian assets prior to: 2/28/09 (100%); 3/31/09 (75%); 4/30/09 (50%)." The total bonus that would be paid by the Debtors if this task were accomplished on the 100% level is $78,000.00. However, this task will be accomplished whether an incentive is offered or not. Furthermore a timing trigger such as this could cause conflicting interests between the two executives responsible for this task (they want to get Court approval quickly) and the interests of the estates (to get the best possible price even if it takes a little longer.)

27. This exact same problem exists with Task XVII, "Successfully obtain Court approval of sale of internet assets prior to 2/28/09 (100%); 3/31/09 (75%); 4/30/09 (50%)." The total bonus amount for Task XVII is $88,875.00, which is to be awarded to the same two officers provided for in Task XVI. Again, this task will be accomplished whether an incentive is offered or not. It also presents the same problem of potentially causing divergent interests between the executives and the estates.

28. Different problems arise in analyzing other tasks. For example, Task IV, "Pay down senior lender per the time line in the wind down budget within -14 days (100%); -7 days (75%); 0 days (50%)," assigns a 50% bonus for achieving timing goals already in place for these officers as set forth in the wind down budget, which was included in the Motion For Order Under 11 U.S.C. Sections 105, 361, 362, 363, 364 and 503 and Fed. R. Bankr. P. 2002, 4001 and 6004 Approving Amendment To Debtor-In-Possession Credit Agreement Effective as of January 17, 2009 filed with this Court on February 12, 2009 (the "Third Amended DIP Motion"). The Third Amended DIP Motion was approved by Order entered on February 17, 2009.

30. Moreover, upon information and belief, the senior lender has already been paid off so that implementation of this "goal" would cause the estates to incur an expense of $157,610.00 without obtaining any further benefit.

31. Tasks IIa, IIb, and IIc all involve keeping expenses within the wind down budget

already in place. As is the case in Task IV, the officers who achieve this "goal" will be awarded
$155,261.00 for doing what they have already committed to do.  The control of expenses is an
integral part of their jobs.  Top managers should not expect to receive incentive bonuses to
perform ordinary tasks.

32.  A careful analysis of the remaining tasks raises two general questions: (a) In those
instances where bonuses are being awarded based on the time of completion of a task, is there
any correlative monetary benefit  to the estates?  If not, or if the potential benefit to the estates is
small when compared to the amount of the bonus, then an award of a bonus is not justified; and
(b) In those instances where the bonuses relate to the liquidation of the merchandise of the
Debtors, are the estates not already paying a liquidator substantial fees and expenses to
maximize the liquidation process?

33.  While the Plan certainly appears complicated based on the number of tasks set forth
and the combinations of officers assigned to the tasks, the Plan on the whole does not appear to
involve difficult tasks that warrant a potential outlay of $2.3 million to these sixteen (16)
officers.

34.  As is shown above, many aspects of Tier I of the Debtors' Plan are not truly
incentivizing.  Under these conditions, therefore, the Plan is subject to analysis as a retention
plan under the provisions of Bankruptcy Code § 503(c)(1).

### *Additional Payments to Officers Are Not*
### *Justified Under Facts and Circumstances*

35.  The Debtors' argument that § 503(c)(3) merely imposes the "business judgment"
standard is misplaced as it ignores congressional intent to rein in unchecked retention and bonus
plans, which are structured to compensate debtors' management at the expense of their creditors.

36.  Bankruptcy Code § 503(b)(1)(A)(i) provides, in relevant part, that after notice and a
hearing, "the actual, necessary costs and expenses of preserving the estate, including wages,
salaries, and commissions for services rendered after the commencement of the case" shall be

allowed as administrative expenses. 11 U.S.C § 503(b)(1)(A)(i) (2009).

37.   The U.S. Trustee does not dispute that the payment of  "wages, salaries, and commissions for services rendered after the commencement of the case" to the Debtors' employees are valid administrative expense claims for "the actual, necessary costs and expenses of preserving the estate."  *See* 11 U.S.C. § 503(b).  However, Bankruptcy Code § 503(c) imposes certain limitations on such payments in that "[n]otwithstanding subsection (b), there shall neither be allowed, nor paid . . ." certain transfers to insiders and members of debtors' management unless certain conditions are met.

38.  Accordingly, prior to making such payments, the Debtors must demonstrate the required elements set forth in § 503(c) "based on evidence in the record."

39.  Bankruptcy Code § 503(c)(3) provides, in pertinent part, as follows:

There shall neither be allowed, nor paid —

. . .

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C § 503(c)(3) (2009) (emphasis added).

40.  Administrative expenses are given priority status and paid ahead of other unsecured claims.  See 11 U.S.C. § 507.  *See In re Insilco Technologies, Inc.,* 309 B.R. 111, 114 (Bankr. D. Del. 2004).  In order to hold administrative expenses to a minimum and to maximize the value of the estate, Bankruptcy Code § 503(b) is narrowly construed.  *See In re N.P. Mining Co.,* 963 F.2d 1449, 1454 (11th Cir. 1992).  To qualify for administrative priority status, an expense must arise from a transaction that accorded the estate an actual benefit.  *See Insilco Technologies*, 309 B.R. at 114 (citing *Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532-533 (3d Cir. 1999).

41.  Finally, the Debtors state in the Motion that "[t]he Debtors estimate that if the Tasks

are completed at the 100% bonus level, the Debtors' estates will receive incremental proceeds of approximately $250,000,000.00."

42. Without anything more than an assertion that these additional assets will flow from implementation of the Plan, this conclusion should not be considered in this matter.

43. Certainly such a bald assertion cannot alone satisfy the Debtors' burden of showing that the bonuses are justified by the facts and circumstances of the case in light of the types of concerns about the so-called incentives raised in this Objection.

44. Accordingly, the Motion does not contain sufficient information for this Court to conclude that the Program payments are justified.

45. The Motion should, accordingly, be denied.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an Order denying the Debtors' Motion and granting such other and further relief as this Court deems appropriate, fair and just.

<div style="margin-left: 50%;">

Respectfully submitted

W. Clarkson McDow, Jr.
United States Trustee
Region Four


By:   /s/Robert B. Van Arsdale
       Robert B. Van Arsdale
       Assistant U.S. Trustee

</div>

<div style="text-align: center;">CERTIFICATE</div>

I certify that on February 24, 2009,  a true copy of the foregoing was delivered via electronic mail, pursuant to II.B.4 of the Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the Eastern District of Virginia. to all necessary parties.

<div style="margin-left: 50%;">

/s/Robert B. Van Arsdale
Robert B. Van Arsdale

</div>