UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC., et al., | ) | Case No. **08-35653** |
| | ) | |
| Debtors. | ) | Jointly Administered |

**PLUMCHOICE, INC.'S REPLY TO DEBTORS' PRELIMINARY OBJECTION AND RESPONSE TO MOTION OF PLUMCHOICE, INC. FOR ORDER DIRECTING DEBTORS TO PAY ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §§ 503(b) AND 507(a) AND REQUEST FOR RELATED RELIEF**

PlumChoice, Inc. ("PlumChoice"), by its counsel, Choate, Hall & Stewart LLP and Gregory Kaplan, PLC, hereby files this Reply to the Debtors' Preliminary Objection and Response to Motion of PlumChoice Inc. for Order Directing Debtors to Pay Administrative Expenses Pursuant to 11 U.S.C. §§ 503(b) and 507(a) and Request for Related Relief [Dkt. No. 2068] (the "Objection").[1]  As set forth in detail in the Motion, PlumChoice requests an order directing Circuit City Stores, Inc. ("Circuit City") and its affiliated debtors (collectively, the "Debtors") to pay immediately, as administrative expenses, (A) certain amounts, totaling

---

[1]    Capitalized terms used herein shall have the meanings ascribed to them in the Motion of Plumchoice Inc. for Order Directing Debtors to Pay Administrative Expenses Pursuant to 11 U.S.C. §§ 503(b) and 507(a) and Request for Related Relief  [Dkt. No. 1832] (the "Motion").

Troy Savenko (Va. Bar No. 44516)
Leslie A. Skiba (Va. Bar No. 48783)
GREGORY KAPLAN, PLC
7 East Second Street (23224-4253)
Post Office Box 2470
Richmond, VA   23218-2470
Phone: (804) 423-7921
Fax: (804) 230-0024

- and –

John F. Ventola, Esq.
Sean M. Monahan, Esq.
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Phone:  (617) 248-5000
Fax:  (617) 248-4000

*Counsel to PlumChoice, Inc.*

$3,826,504.45, due on account of valuable post-petition services provided, and substantial costs incurred, by PlumChoice to (or on behalf of) Circuit City pursuant to the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement (the "Agreements"), and (B) certain costs, totaling $43,690.76, incurred by PlumChoice as a direct result of the Debtors' unilateral termination -- without the contractually required notice -- and breach of the Dispatch Agreement.

## PRELIMINARY STATEMENT

PlumChoice is a relatively small, privately-held company that provides individuals and businesses, such as Circuit City, with a wide range of online computer support services. Circuit City was, by far, PlumChoice's largest customer, representing approximately 85% of its annual revenue. Not surprisingly, Circuit City's bankruptcy has caused a significant disruption in PlumChoice's business. PlumChoice currently is owed nearly $1.9 million for services rendered prior to the Petition Date, and nearly $3.9 million for services rendered, and costs incurred, on or after the Petition Date, pursuant to the Agreements. PlumChoice's administrative expenses arise from a post-petition transaction with the Debtors which benefited the Debtors' estates by satisfying Circuit City's obligations to provide services to its customers. Recovering these administrative expenses is important to the continued operation of PlumChoice's business and there is no valid justification to delay ordering the immediate payment of such claims.

The Debtors object to PlumChoice's request for immediate payment on its $3.9 million administrative expense claims on essentially on two grounds. First, the Debtors argue that 11 U.S.C. § 502(d) requires the Court to hold the administrative claims "in abeyance" pending the resolution of any *potential* preference actions brought against PlumChoice by the Debtors. This

argument is without merit.  As discussed below, the heavy weight of authority holds that Section 502(d) is not applicable to Section 503(b) administrative expense claims.  The Court should follow the majority rule because the statutory analysis and policy considerations behind such decisions are compelling.

Second, the Debtors contend that PlumChoice's request is premature because the Debtors require additional time to evaluate and reconcile PlumChoice's claims, which are set forth in detail in the Motion and a sworn affidavit from PlumChoice's Chief Financial Officer ("CFO"), Daniel Baker.[2]  This request is a red herring.  Although the Debtors make several conclusory allegations in an attempt to manufacture potential disputes, they provide no evidence refuting the validity of PlumChoice's administrative expenses.  The Objection is not properly supported with evidence and does not justify further delaying the payment of millions of dollars to PlumChoice which arose from valuable post-petition services provided to the Debtors.  The Court should overrule the Debtors' Objection and grant PlumChoice's Motion in its entirety.[3]

## ARGUMENT

**A.   Section 502(d) Does Not Preclude The Court From Ordering The Debtors To Immediately Pay PlumChoice's Administrative Expenses Under Section 503(b).**

1.   The Debtors contend that Section 502(d)[4] mandates that PlumChoice's

---

[2]   *See* Affidavit of Daniel Baker In Support of the Motion of PlumChoice Inc. for Order Directing Debtors to Pay Administrative Expenses Pursuant to 11 U.S.C. §§ 503(b) and 507(a) and Request for Related Relief  [Dkt. No.1942] (the "Baker Affidavit").

[3]   The Debtors also incorrectly allege that PlumChoice has taken the position that the PTS Services Agreement "automatically terminated" on the same date that Verizon and Circuit City agreed to terminate the Prime Contract.  *See* Objection, ¶ 14.  Rather, as set forth in the Motion, on December 31, 2008, Circuit City informed PlumChoice in writing and without any prior notice that Circuit City was terminating immediately, among other agreements, the PTS Services Agreement.

[4] Section 502(d) provides, in pertinent part:

administrative expenses "be held in abeyance pending resolution of any avoidance actions" concerning certain payments allegedly received by PlumChoice during the ninety days prior to the Petition Date.  *See* Objection, ¶ 21.  The Debtors do not allege that any payment actually constitutes an avoidable transfer under 11 U.S.C. § 547.  Instead, they assert that the mere fact that PlumChoice received payments during the ninety-day period provides the Debtors with a "colorable claim" that the transfers are avoidable, and that this alone is sufficient to delay payment of nearly $3.9 million in administrative expenses indisputably owed to PlumChoice.  The Court should reject this argument because Section 502(d) does not apply to PlumChoice's administrative expenses.

2. The vast majority of courts that have addressed the issue have held that Section 502(d) does not apply to Section 503(b) administrative expenses. *In re Plastech Engineered Prod., Inc.*, 394 B.R. 147, 161 (Bankr. E.D. Mich. 2008) ("the Court rejects the Debtor's contention that § 502(d) applies generally to § 503(b) administrative expenses"); *In re USA Labs, Inc.,* No. 04-41587, 2006 Bankr. LEXIS 2394 (Bankr. S.D. Fla. Apr. 13, 2006) (expressing strong support for cases that hold § 502(d) not applicable); *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443, 476 (Bankr. S.D. Ohio 2004) (§ 502 is not a barrier to the allowance of an administrative expense); *Phoenix Restaurant Group, Inc. v. Proficient Food Co. (In re Phoenix Restaurant Group, Inc.),* Nos. 301-12036, 303-0568A, 2004 WL 3113719, *20 (Bankr. M.D. Tenn. Dec. 16, 2004) (same); *Beasley Forest Prod., Inc. v. Durango Georgia Paper Co. (In re Durango Georgia Paper Co.),* 297 B.R. 326, 331 (Bankr. S.D. Ga. 2003)

---

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542,  543, 550, or 553 of this title.

(same); *In re Lids Corp.*, 260 B.R. 680, 683-84 (Bankr. D. Del. 2001) ("administrative expense claims are accorded special treatment under the Bankruptcy Code and are not subject to Section 502(d)."); *Camelot Music, Inc. v. MHW Adver. and Public Relations, Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141 (Bankr. D. Del. 2000) (§ 502(d) inapplicable to administrative expense claim for services provided post-petition); *In re Rand Energy Co.*, 256 B.R. 712, 719 (Bankr. N.D. Tex. 2000) ("§ 502(d) does not apply to motions for administrative expense under § 503").

    3.    The statutory analysis supporting these decisions is convincing:

> While the language of § 502 expressly applies to *claims* filed under § 501, § 502 contains no language connecting it with allowance or disallowance of § 503 administrative expenses. Likewise, § 503 contains no provision conditioning allowance of its administrative expense claims upon § 502(d). In fact, § 503 contains no reference to § 502 whatsoever except to specify that 'claims allowed under § 502(f)' are *not* governed by § 503's mandatory allowance. To construe § 502(d)'s disallowance as applicable to expenses allowable under § 503 -- a section with its own scope, purpose, and conditions -- is to expand the scope of § 502(d)'s disallowance beyond its plain meaning.

*Beasley Forest Prod.*, 297 B.R. at 330 (emphasis in original); s*ee also In re Plastech Engineered Prod.,* 394 B.R. 161 (noting that this line of cases "preserve intact the separateness of the provisions governing allowance and payment of expenses incurred in connection with the administration of a bankruptcy case."); *In re Lids Corp,* 260 B.R. at 680 ("Congress' inclusion of five post-petition claims to which Section 502(d) expressly applies . . . demonstrates that Section 502(d) does not apply to other post-petition claims.").

    4.    Moreover, there are strong policy reasons for not extending Section 502(d) to administrative expense claims. *See In re Lids Corp.*, 260 B.R. at 684 ("extension of Section 502(d) to administrative claims could have devastating effects on a debtor's ability to reorganize."). In particular, vendors that are crucial to a debtor's reorganization will be less

likely to provide post-petition goods and services if Section 502(d) can be invoked to delay payment by several months, or even years, simply because they (unsurprisingly) received payments during the ninety-day period prior to the petition date. *Id.* (noting that vendors would be extremely reluctant to extend post-petition credit to a debtor); *see also Camelot Music,* 264 B.R. at 159 ("attempts to apply the coercive effect of § 502(d) in an effort to dislodge preference payments by disallowing otherwise legitimate administrative expense payments under § 503 subverts the priority scheme in bankruptcy to no practical effect.").

5. Although certain courts have extended Section 502(d) to apply to administrative expenses, none of the cases cited by the Debtors actually support their position. *See Cent. Virgina Cmty. College v. Katz*, 546 U.S. 356 (2006) (addressing whether adversary proceeding brought by trustee to set aside alleged preferential transfers to state agencies was barred by the agencies' sovereign immunity);[5] *In re Lambert Oil Co., Inc.*, 347 B.R. 508, 521-22 (W.D. Va. 2006) (§ 502(d) did not preclude president of debtor from setting-off amounts received by bank after foreclosing on property that secured loan to debtor from amounts president borrowed from debtor); *In re Red Dot Scenic, Inc.*, 313 B.R. 181, 185 (S.D.N.Y. 2004) (disallowing pre-petition claim under § 502(d) where debtor obtained judgment against creditor for fraudulent transfer and judgment had been affirmed by Second Circuit).

6. Likewise, *In re Bob Grissett Golf Shoppes*, *Inc.*, 50 B.R. 598, 607 (E.D. Va. 1985) is distinguishable. There, the debtor and a landlord agreed -- without obtaining court approval -- that the landlord could apply excess monies received from the debtor post-petition towards the debtor's unpaid, pre-petition rent. *Id.* at 607. Since there was no dispute that the transfers were

---

[5] *Cent. Virginia Cmty. College v. Katz* does not discuss Section 503(b) administrative expense claims, much less whether Section 502(d) applies to such claims. 546 U.S. at 371.

4419927                                                                 6

avoidable as unauthorized *post-petition* transfers of estate property, the court stated that, "[a]s a practical matter," [it] will offset against the amount allowed as administrative rent the amount paid toward pre-petition rent." *Id.* The case contains no analysis concerning whether Section 502(d) generally applies to administrative expenses. This is clearly different from the case at bar - where the Debtors are attempting to delay the payment of millions of dollars of administrative expenses that arise from valuable post-petition services provided to the Debtors based solely on allegations that PlumChoice received payments during the ninety-day period.

7. Even if § 502(d) did apply to administrative expenses -- and for the reasons stated above it does not -- courts routinely find that a creditor must be held liable before a debtor can invoke the provision. *See, e.g., In re Lids Corp.*, 260 B.R. at 684 (citing cases and stating that "a debtor wishing to avail itself of the benefits of Section 502(d) must first obtain a judicial determination on the preference complaint."). Even the cases cited by the Debtors acknowledge that a judicial determination is required to prevent an abuse of Section 502(d). *See In re Lambert Oil Co., Inc.*, 347 B.R. at 522 n.6. The Debtors have not offered sufficient evidence for the Court to make a judicial determination concerning whether any payments received by PlumChoice during the ninety-day period are preferences. The Objection is not supported by any affidavits or documentary evidence concerning these alleged payments.

8. The Court should follow the majority of cases and find that Section 502(d) does not apply to PlumChoice's administrative expenses under Section 503(b).

B.  **The Debtors' Have Not Produced Evidence Sufficient To Rebut PlumChoice's Administrative Claims, And Their Request For Additional Time To Evaluate And Reconcile PlumChoice's Claims Is Nothing More Than A Classic Delay Tactic.**

9. The Debtors urge the Court to delay the payment of millions of dollars of administrative expenses owed to PlumChoice until they have an opportunity to evaluate and reconcile PlumChoice's claims arising under the Agreements. This argument requires little discussion.

10. PlumChoice established in its Motion and the Baker Affidavit that it is entitled to the administrative expenses set forth therein.[6] Consequently, the burden shifts to the Debtors to produce evidence sufficient to negate the prima facie validity of PlumChoice's claims. *Toma Steel Supply, Inc. v. Transamerican Natural Gas Corp. (In re Transamerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Circ. 1993); *In re Fortune Natural Resources Corp.*, 366 B.R. 558, 562 (Bkrtcy. E.D. La., 2007); *In re Coastal Carriers Corp.*, 128 B.R. 400, 404-05 (Bankr. D. Md. 1991). It is well-established that "[m]ere allegations, unsupported by the evidence, are insufficient to rebut the movant's prima facie case." *Toma Steel Supply*, 978 F.2d at 1416.

11. A review of the Objection demonstrates that the Debtors have failed to satisfy their burden to rebut PlumChoice's claims. Indeed, the Debtors have produced no evidence, in the form of affidavits, documents, or otherwise, which refutes PlumChoice's administrative expenses. The Debtors simply lodged a "preliminary objection" that contains unspecified -- and

---

[6] The only claims the Debtors attempt to dispute are the Infrastructure Costs and Wind Down Expenses. Contrary to the Debtors' assertions, PlumChoice has established that both qualify as administrative expenses under Section 503(b). As explained in the Motion, the Debtors terminated the PTS Services Agreement with full knowledge that the Debtors would have to (a) reimburse PlumChoice for all Infrastructure Costs incurred by PlumChoice in order to perform its obligations thereunder, and (B) pay the Wind-Down Expenses to compensate PlumChoice for services provided and costs incurred during the period following termination. Apparently, the Debtors determined that the benefit to the estates of terminating the PTS Services Agreement outweighed the costs of paying the Infrastructure Costs and Wind-Down Expenses.

4419927                                    8

unsupported -- allegations and attorney argument concerning various purported (potential) disputes relating to the amounts owed to PlumChoice. This is fatal to the Debtors' Objection.

12. The Debtors' failure to produce evidence refuting PlumChoice's claims is unsurprising. The parties had an established business relationship pursuant to which PlumChoice provided services to (or on behalf of) Circuit City, and Circuit City paid PlumChoice millions of dollars, for several years without significant dispute. This applied equally to the valuable services PlumChoice provided during the post-petition period that enabled Circuit City to fulfill its obligations to its customers, including Verizon. For example, earlier in these bankruptcy cases the Debtors paid PlumChoice approximately $1,430,188.62 on account of post-petition services provided to (or on behalf of) Circuit City under the Agreements, even though the Debtors allege in their Objection that Verizon notified them prior to the Petition Date that breaches under the PTS Services Agreement had occurred. The Debtors never formally notified PlumChoice that they were disputing any of the invoices and/or other documentation supporting PlumChoice's claims. Likewise, the Debtors have never articulated any basis for the conclusory allegations made ("on information and belief") in the Objection that "the Debtors believe" that PlumChoice breached the Agreements or caused the Debtors to be in breach of the agreement with Verizon. The total lack of evidence concerning the allegations set forth in the Objection is remarkable.

13. Moreover, the Debtors have refused PlumChoice's offers to address any legitimate questions the Debtors may have concerning the amount or origin of PlumChoice's claims. For example, PlumChoice offered to make its CFO available at any time to respond to the Debtors' inquiries concerning its administrative expenses. The Debtors never responded to this offer.

14. There is no simply no evidence before the Court that negates PlumChoice's claims. If such evidence exists, surely the Debtors would have included it in their Objection. A laundry list of generalized and unsupported assertions of *potential* issues is not a valid objection to PlumChoice's claims. The Debtors' request for additional time to reconcile the claims should be rejected as nothing more than a delay tactic to avoid paying PlumChoice the amounts to which it is entitled.

15. Delaying the immediate payment of PlumChoice's administrative expense claims, however, could materially prejudice PlumChoice. As set forth in the weekly cash flow budget attached to the order entered in these bankruptcy cases on February 17, 2009 [Dkt. No. 2214], approving, *inter alia*, the Third Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement, the Debtors have budgeted limited funds to pay post-petition vendors, like PlumChoice, that provided valuable services to the Debtors' bankruptcy estates. The Debtors – despite their assertions that they intend to reconcile and, at some point, pay PlumChoice's claim – have not budgeted for any such payments to trade vendors beyond the week ending February 14, 2009. As a result, it is apparent that the Debtors intend to continue to delay paying PlumChoice the amounts to which it is entitled for an indefinite period of time. Therefore, PlumChoice respectfully asks this Court to direct the Debtors to pay immediately PlumChoice's administrative expense claims in order to avoid any prejudice to PlumChoice that could result from the Debtors' delay tactics.

## **CONCLUSION**

16. For the reasons set forth above, and in the Motion and Baker Affidavit, PlumChoice respectfully requests an order directing the Debtors to pay immediately, as

4419927                                                                 10

administrative expenses, (A) certain amounts, totaling $3,826,504.45, due on account of valuable post-petition services provided, and substantial costs incurred, by PlumChoice under the Agreements, and (B) certain costs, totaling $43,690.76, incurred by PlumChoice as a direct result of the Debtors' breach of the Dispatch Agreement.

Dated:  February 24, 2009  			Respectfully submitted,

/s/ Troy Savenko        ____
Troy Savenko (Va. Bar No. 44516)
Leslie A. Skiba (Va. Bar No. 48783)
GREGORY KAPLAN, PLC
7 East Second Street (23224-4253)
Post Office Box 2470
Richmond, Virginia 23218-2470
Phone: (804) 423-7921
Fax: (804) 230-0024

 - and –

John F. Ventola, Esq.
G. Mark Edgarton, Esq.
Sean M. Monahan, Esq.
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Phone:  (617) 248-5000
Fax:  (617) 248-4000

*Counsel to PlumChoice, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 24th day of February, 2009, I caused a copy of the foregoing to be served to all parties receiving notice via the Court's CM/ECF Noticing System and by electronic mail to: (i) Counsel to the Debtors (circuitcityservice@mcguirewoods.com & project.circuitcity@skadden.com), (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division (Robert.B.Van.Arsdale@usdoj.gov), and (iii) Counsel for the Official Committee of Unsecured Creditors (bgodshall@pszjlaw.com, jfiero@pszjlaw.com, rfeinstein@pszjlaw.com, jpomerantz@pszjlaw.com, ltavenner@tb-lawfirm.com, & pberan@tb-lawfirm.com).

                                                 /s/ Troy Savenko