**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)**

| | |
|---|---|
| *In re:* | Chapter 11 |
| Circuit City Stores, Inc. *et al.,* | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

**MOTION OF THE AT&T ENTITIES FOR ENTRY OF AN ORDER: (A) ALLOWING AND COMPELLING THE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM TO AT&T; AND (B) COMPELLING ASSUMPTION OR REJECTION OF EQUIPMENT LEASE, OR IN THE ALTERNATIVE, LIFTING THE AUTOMATIC STAY TO PERMIT TERMINATION OF THE EQUIPMENT LEASE AND REPOSSESSION <u>OF EQUIPMENT</u>**

AT&T Capital Services, Inc. ("<u>AT&T Capital</u>"), and Sterling Commerce, Inc. ("<u>Sterling</u>", and collectively, with AT&T Capital, the "<u>AT&T Entities</u>") by and through their counsel, Lowenstein Sandler PC and Quagliano Seeger, P.C., hereby move this Court for entry of an Order: (i) pursuant to §§ 365(d)(5) and 503(b)(1) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), compelling payment of administrative expenses to the AT&T Entities on account of their Equipment Lease and Sterling SOW (hereinafter defined); (ii) pursuant to § 365(a) of the Bankruptcy Code, compelling Circuit City Stores, Inc. *et al.* ("<u>Circuit City</u>" or the "<u>Debtors</u>") to assume or reject the Equipment Lease; or, alternatively, pursuant to § 362(d)(1) of the Bankruptcy Code and Fed.R.Bankr.P. 4001, vacating the automatic stay to permit AT&T Capital to terminate the Equipment Lease and repossess the Equipment (the "<u>Motion</u>").  In support of the Motion, the AT&T Entities respectfully represent as follows:

**JURISDICTION**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory basis for

relief requested herein is 11 U.S.C. §§ 362, 365 and 503(b), and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On November 10, 2008, (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").

3. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4. Prior to the Petition Date, AT&T Capital, a wholly-owned subsidiary of AT&T Inc., leased certain equipment (the "Equipment") and provided related services to the Debtors pursuant to a certain Master Lease Agreement (the "Equipment Lease") between the Debtors and AT&T Capital dated August 4, 2008.

5. The Debtors remain in possession of the Equipment. The Debtors currently owe AT&T Capital the sum of approximately $44,123.00 (the "AT&T Capital Administrative Claim") on account of post-petition services provided by AT&T Capital under the Equipment Lease.

6. In addition, prior to the Petition Date, and continuing thereafter, Sterling, a wholly-owned subsidiary of AT&T Inc., implemented and effectuated a store inventory management system and provided onsite and offsite technical support to the Debtors pursuant to a certain Statement of Work (the "Sterling SOW") between the Debtors and Sterling dated September 28, 2007.

7. Sterling is currently owed $187,937.18 (the "Sterling Administrative Claim", and collectively with the AT&T Capital Administrative Claim, the "AT&T Administrative Claims"[1]) for post-petition services rendered to the Debtors under the Sterling SOW that remain unpaid.

**RELIEF REQUESTED**

8. By this Motion, the AT&T Entities respectfully seek (i) immediate payment of the AT&T Administrative Claims as administrative expenses, and (ii) the entry of an order compelling the Debtors to assume or reject the Equipment Lease, or, in the alternative, lifting the automatic stay to allow AT&T Capital to retrieve the Equipment.

**ARGUMENT**

**I**

**THE DEBTORS SHOULD BE COMPELLED TO PAY THE AT&T ENTITIES FOR THEIR USE OF THE EQUIPMENT AND SERVICES PROVIDED AS AN ADMINISRATIVE EXPENSE**

9. The AT&T Entities are entitled to allowance and payment of the AT&T Administrative Claims pursuant to §§ 365(d)(5) and 503(b)(1)(A) of the Bankruptcy Code. Section 365(d)(5) requires the debtor-in-possession in a chapter 11 case to:

> timely perform all of the obligations of the debtor ... first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ... until such lease is assumed or rejected notwithstanding section 503(b)(1)[.]

11 U.S.C. § 365(d)(5).[2] The provisions in § 365(d)(5) were added to the Bankruptcy Code in 1994 to make it easier for lessors of personal property to recover post petition lease payments

---

[1] The AT&T Administrative Claims reflect amounts due as of the date of this Motion. AT&T reserves all rights, including the right to amend these amounts, should additional amounts owing be uncovered.

[2] The provision requiring a trustee to timely perform all of the obligations of the debtor under an unexpired lease of personal property was added to the Bankruptcy Code in 1994 as § 365(d)(10). In re Midway Airlines

-3-

prior to acceptance or rejection of a lease by the trustee or debtor-in-possession. In re Lakeshore Const. Co. of Wolfeboro, Inc., 390 B.R. 751, 755-56 (Bankr. D.N.H. 2008) (citing In re Midway Airlines Corporation, 406 F.3d 229, 234 (4th Cir.2005)). The language was modeled after the language in § 365(d)(3) requiring post petition lease payments to lessors of nonresidential real property. Both subsections impose a duty of timely performance on trustees and debtors-in-possession and both subsections provide that this duty exists "notwithstanding section 503(b)(1)" of the Bankruptcy Code. Id.

        10. As recently explained by the Bankruptcy Court in Lakeshore,

> An examination of the language of § 365(d)(5) leads to three conclusions regarding the treatment of such claims. First, the phrase "notwithstanding section 503(b)(1) of this title" eliminates any requirement for an order expressly authorizing payment of an administrative rent claim becoming due between the sixtieth day after the filing of the bankruptcy petition and the acceptance or rejection of the lease. Second, the same clause eliminates the "actual and necessary" test under § 503(b)(1). Third, personal property lessors may assert administrative claims under § 365(d)(5) based upon the terms of the lease and not the benefit to the bankruptcy estate.

In re Lakeshore Const. Co. of Wolfeboro, Inc., 390 B.R. at 756 (citing In re PYXSYS Corp., 288 B.R. 309, 313 (Bankr. D.Mass. 2003)).

        11. Based on the foregoing, AT&T Capital is statutorily entitled to an administrative expense claim for all lease payments due following the sixtieth day following the Petition Date until the date on which the Equipment Lease is assumed or rejected, regardless of whether the Debtor actually used or benefited from the Equipment. Id.; see also, In re Wyoming Sand and Stone Co., 393 B.R. 359 (Bankr. M.D.Pa. 2008).

---

Corporation, 406 F.3d 229, 234 (4th Cir.2005). BAPCPA amended § 365 by renumbering former § 365(d)(10) as § 365(d)(5). However, BAPCPA did not alter or amend the language of former § 365(d)(10).

12. Although the timing of a debtor's payment of an administrative expense claim is generally within the court's discretion, see In re Midway Airlines Corp., 406 F.3d 229, 242 (4th Cir.2005), it has been held that when the debtor is operating post-petition and is paying its other administrative expense claims, payments under § 365(d)(5) must be made absent extraordinary circumstances. In re Lakeshore Const. Co. of Wolfeboro, Inc., 390 B.R. at 760.

13. AT&T Capital is also entitled to allowance and payment of rent due under the Equipment Lease for the first 60 days of the Debtors' chapter 11 cases. The basis for this request derives from § 503(b)(1)(A) of the Bankruptcy Code. Section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including … the actual, necessary costs and expenses of preserving the estate[.]" The principal purpose of § 503(b)(1)(A) is to give creditors the incentive to continue dealing with the debtor-in-possession and supply it goods and services. See *e.g.*, In re Southern Soya Corp., 251 B.R. 302 (Bankr.D.S.C.2000)(citing Merry-Go-Round Enter. v. Simon DeBartolo Group (In re Merry-Go-Round Enter.), 180 F.3d 149, 158 (4th Cir. 1999)). In order for a claim to be granted administrative expense status, the party claiming entitlement to such status must establish: (1) that the claim arose out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) that the claim directly and substantially benefited the estate. *See* In re Merry-Go-Round Enter., 180 F.3d at 157; Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.), 66 F.3d 1091, 1094 (9th Cir. 1995).

14. It is clear the Debtors' continued to use the Equipment during the first 60 days of the Debtors' cases (*i.e.*, post-petition) and received an actual benefit from such use. Indeed, the equipment and related services provided by AT&T Capital to the Debtors serve a critical function in the Debtors' communications structure. Accordingly, AT&T Capital has

satisfied both elements for entitlement to administrative expense status for lease payments due during that sixty day period pursuant to § 503(b)(1)(A) of the Bankruptcy Code. Moreover, for the reasons set forth above, "absent extraordinary circumstances," these expenses should be paid immediately. In re Lakeshore Const. Co. of Wolfeboro, Inc., 390 B.R. at 760.

15. In addition, Sterling has satisfied both elements for entitlement to administrative expense status for post-petition services provided to the Debtors pursuant to § 503(b)(1)(A) of the Bankruptcy Code. Sterling was contracted by the Debtors to implement and effectuate a store inventory management program, and provide onsite and offsite technical support to the Debtors under this program, thereby providing a direct benefit to the estate.

16. Accordingly, the AT&T Entities should immediately be paid the outstanding AT&T Administrative Claims as administrative expenses.

**II**

### THE DEBTORS SHOULD BE COMPELLED TO ASSUME OR REJECT THE EQUIPMENT LEASE

17. In a case under chapter 11 of the Bankruptcy Code, the trustee or debtor in possession is afforded until confirmation to determine whether to assume or reject executory contracts. 11 U.S.C. § 365(d)(2). However, "the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." Id. *See* also In re FBI Distribution Corp., 330 F.3d 36 (1st Cir. 2003). The question of whether such a deadline should be ordered is left to the court's discretion, with no statutory guidelines. See In re Resource Technology Corp., 254 B.R. 215 (Bankr. N.D.Ill. 2000) (upholding court's fixing of deadline); But See Data-Link Systems, Inc. v. Whitcomb & Keller Mortgage Co. (In re Whitcomb & Keller Mortgage Co.), 715 F.2d 375, 379 (7th Cir.1983) (upholding bankruptcy court's denial of request to set deadline).

18.   The Debtors should be required to make an immediate election to assume or reject the Equipment Lease.  AT&T Capital has a significant stake in having the Equipment Lease assumed or rejected. The value of the equipment declines over time therefore the Debtor's continued possession must be coupled with its undeniable responsibility to timely pay its administrative obligations as they become due.}   Until the Debtors make an election to assume or reject the Equipment Lease, AT&T Capital is forced to suffer continual decline in the equipment's value and risk the deterioration or loss of the equipment without receiving payment. Therefore, any additional delays in compelling payment by the debtor will necessarily increase AT&T Capital's losses.  On the other hand, the Debtors do not stand to gain or benefit the estate by delaying their decision to assume or reject the Equipment Lease.  If the Equipment Lease is rejected later in time, the result will be a larger capital drain on the Debtor's estate due to AT&T Capital's greater administrative expense claim (as the post-petition administrative expense period is extended until the point of rejection under § 365(d)(5), as discussed above).  Alternatively, assumption will not create unneeded administrative expenses because the Debtors will only be required to satisfy lease obligations associated with the beneficial Equipment Lease.  Clearly, any delay caused by the Debtors' failure to assume or reject the Equipment Lease will continue to cause AT&T Capital to suffer losses.

19.   As noted above, the Debtors have failed to meet their obligations under the Equipment Lease. Thus, the Debtors are not current on their post-petition obligations under the Equipment Lease and AT&T Capital continues to incur losses.

20.   Therefore, AT&T Capital requests that the Court enter an order compelling the Debtors to assume or reject the Equipment Lease.  In the circumstance that the

Debtors assume the Equipment Lease, AT&T Capital requests that the Court compel the Debtor to cure the Administrative Claim, as well as any pre-petition amounts due and owing.

## III

### THE AUTOMATIC STAY SHOULD BE VACATED TO PERMIT AT&T CAPITAL TO TERMINATE THE EQUIPMENT LEASE AND REPOSSESS THE EQUIPMENT

21. Alternatively (with respect to point II above), this Court should lift the automatic stay to permit AT&T Capital to terminate the Equipment Lease and repossess the Equipment. Section 362 of the Bankruptcy Code governs, among other things, motions seeking relief from the automatic stay. Subsection (d) of that section provides, in pertinent part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay
>
> (1)   for cause[…]

11 U.S.C. § 362(d)(1).

22. The determination of "cause" under subsection (d)(1) is not subject to a rigid test; courts instead balance the competing interests of the parties on a case-by-case basis.

23. Some courts have held cause exists for relief from the automatic stay when the debtor fails to comply with the requirements of § 365 (d)(5). See *e.g.*, In Re Future Growth Enterprises, Inc., 61 B.R. 469, 472 (Bankr. E.D. PA. 1986) ("[u]nder § 362 (d)(1) cause for relief from the automatic stay is present when the lessor proves that the debtor is significantly in default under the lease") (citations omitted); In Re Rush, 9 B.R. 197 (Bankr. E.D. PA. 1981) (debtors failure to pay rent for four months was breach of lease and was cause to modify stay to permit landlord to bring action to recover leased premises).

24. Here, the Debtors failed to comply with, among other things, § 365 (d)(5) because they failed to make post-petition lease payments to AT&T Capital pursuant to the Equipment Lease, while AT&T Capital is subject to decline in the equipment's value. Accordingly, stay relief is warranted so that AT&T Capital may exercise its rights under the Equipment Lease.

## NOTICE

25. Notice has been provided to (a) the Debtors (b) counsel to the Debtors, (c) the United States Trustee, (d) counsel to the Creditors Committee, (e) counsel to the agents for the Debtors' prepetition lenders, (f) counsel to the agents for the Debtors' post-petition lenders (g) all other parties on the Core Group Service List (as defined in the Case Management Order dated November 13, 2008) and (f) all parties who have requested and are receiving notices through the Bankruptcy Court's electronic filing system.

26. No previous request for the relief sought in this Motion has been made to this or any other Court.

27. The AT&T Entities submit that no novel issue of law is presented with respect to the matters contained herein and respectfully requests that the requirement of a memorandum of law be waived.

## CONCLUSION

28. Based on the foregoing, the AT&T Entities respectfully request the entry of an order: (i) allowing and compelling payment of administrative expenses to the AT&T Entities on account of the Equipment Lease and the Sterling SOW; and (ii) compelling the Debtors to assume or reject the Equipment Lease, or, alternatively, lifting the automatic stay to permit AT&T Capital to terminate the Equipment Lease and repossess the Equipment.

Dated: February 24, 2009

Respectfully submitted,

By: /s/ Julie Quagliano
**QUAGLIANO SEEGER, P.C.**
Julie Quagliano Westemeier, Esq.
2620 P Street, NW
Washington DC  20007
Telephone: (202) 822-8838
Facsimile: (202) 822-6982
*Local Counsel for AT&T*
AND
**LOWENSTEIN SANDLER PC**
Vincent A. D'Agostino, Esq.
Eric H. Horn, Esq.
65Livingston Avenue
Roseland, New Jersey  07068-1791
Telephone: (973) 597-2500
Facsimile:  (973) 597-2400
*Counsel for AT&T*

## Certificate of Service

I hereby certify that on February 24, 2009, a copy of the foregoing was filed via electronic mail on the following: (i) the Core Group, which includes the Debtors, co-counsel to the Debtors, the Office of the United States Trustee, co-counsel for any committee, counsel to the agents for the Debtors' prepetition lenders, and counsel to the agents for the Debtors' postpetition lenders; (ii) the 2002 List; and (iii) those additional parties as required by the Case Management Order (all of which are defined in the Case Management Order).

/s/ Julie Quagliano
Julie Quagliano, Esquire