Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
                                :
In re:                          :   Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :   Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' OBJECTION TO MOTION OF DIRECTV, INC. FOR RELIEF
FROM THE AUTOMATIC STAY TO EFFECT SETOFF AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

1

"Circuit City" or the "Debtors")[1] hereby submit their objection (the "Objection") to the Motion of DIRECTV, Inc. For Relief From The Automatic Stay To Effect Setoff And Memorandum Of Points And Authorities In Support Thereof (the "Motion").  In support of the Objection, the Debtors respectfully represent:

**BACKGROUND**

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

3.   On November 12, 2008, the Office of the
United States Trustee for the Eastern District of
Virginia appointed a statutory committee of unsecured
creditors (the "Creditors' Committee").  To date, no
trustee or examiner has been appointed in these chapter
11 cases.

4.   On January 16, 2009, the Court authorized
the Debtors, among other things, to conduct going-out-
of-business sales at the Debtors' remaining stores
pursuant to an agency agreement (the "Agency Agreement")
between the Debtors and a joint venture, as agent (the
"Agent").  On January 17, 2009, the Agent commenced
going-out-of-business sales at the Debtors' remaining
stores pursuant to the Agency Agreement.

**B.   The Debtors' Agreements with DIRECTV.**

5.   Circuit City Stores, Inc. ("Circuit City"
or "Debtor") and DIRECTV, Inc. ("DIRECTV") entered into
to a referral and commission arrangement in 2007.  Upon
the start of this relationship, they became parties to
the Authorized Retailer Agreement [Interim] dated June 1,
2007 (the "June Retailer Agreement").  The parties used
this agreement as a temporary measure to memorialize the

terms of their relationship until they finalized a new
order fulfillment process, which they anticipated would
be complete in October of 2007.   June Retailer Agreement
Section C.

6.    As planned, upon transitioning to the new
order fulfillment process, the parties rememorialized
their relationship to conform to the revised order
fulfillment process.   They did this through an
Authorized Retailer Agreement dated October 23, 2007
(the "October Retailer Agreement", and together with the
June Retailer Agreement, the "Retailer Agreements"),
which contained essentially the same terms as the June
Retailer Agreement.

7.    Pursuant to the Retailer Agreements,
Circuit City marketed and promoted DIRECTV receivers,
service, and programming packages in its stores.
Circuit City's main compensation under the Retailer
Agreements was commissions.   Circuit City received three
types of commissions: programming commissions,
programming commissions for orders through prospective
referral customers, and additional compensation for
orders through prospective referral customers.

See October Retailer Agreement Sections 7, 8, 9; June Retailer Agreement Sections 7, 9, 10. Circuit City received these commissions for persuading customers to purchase DIRECTV programming packages, referring prospective customers to DIRECTV, and referring subscribers to the DIRECTV website via a Circuit City website. Id.

8.   Circuit City and DIRECTV are also parties to a Master Dealer Agreement ("Dealer Agreement", and, collectively with the Retailer Agreements, "the Agreements") dated April 2005. The Dealer Agreement provides that Circuit City will act as an independent retailer for DIRECTV broadcast satellite service. See Dealer Agreement, Recitals. Specifically, under the Dealer Agreement, Circuit City purchased hardware from DIRECTV for set prices for Circuit City to sell in its stores. This hardware was primarily DIRECTV Receiver Systems. Circuit City was permitted to sell the receivers in its stores at prices fixed by Circuit City.

C.    **Prepetition Transactions Between DIRECTV And
      Circuit City.**

9.    Pursuant to the Dealer Agreement, DIRECTV
sold hardware to Circuit City for Circuit City to sell
in its stores (the "Hardware Sales").  DIRECTV then
invoiced Circuit City for that hardware.  DIRECTV claims
the Debtors owe $488,075 for these pre-petition Hardware
Sales (the "Hardware Claim").  See Motion ¶ 8; Lorenz
Declaration Exhibit 1.

10.   Separately, Circuit City promoted DIRECTV
programming services to customers in Circuit City stores,
pursuant to the June and October Retailer Agreements.
Circuit City invoiced DIRECTV for commissions for
DIRECTV programming packages that customers activated or
purchased through Circuit City stores.  Pre-petition,
Circuit City requested payments from DIRECTV under the
Retailer Agreements for commissions totaling $405,000,
which amount was due and payable by DIRECTV as of the
Petition Date and remains outstanding (the "Commission
Claim").  See Motion ¶ 9; Eichler Declaration Exhibit 1.

## SUMMARY OF OBJECTION

11.  By the Motion, DIRECTV asks this Court
for relief from the automatic stay to permit DIRECTV to
setoff and/or recoup its Hardware Claim against the
Debtors' Commission Claim.  The Debtors contend that the
Motion should be denied on three grounds.  First, the
Motion is procedurally improper because none of the
Agreements has yet been either assumed or rejected and,
thus, DIRECTV's request is premature.  Second, even if
the Motion was procedurally proper, DIRECTV cannot
satisfy the standards for relief from the automatic stay
and setoff.  Third, DIRECTV cannot satisfy the
requirements for recoupment.  Therefore, the Court
should deny the Motion.

## ARGUMENT

**I.   A MOTION FOR RELIEF FROM THE AUTOMATIC STAY IS A
      PROCEDURALLY IMPROPER VEHICLE TO ENFORCE CONTRACT
      RIGHTS.**

12.  DIRECTV has asked this Court for relief
from the automatic stay to enforce its rights under the
Retailer Agreements and Dealer Agreement by permitting
setoff.  Motion ¶ 4 (requesting "relief from the
automatic stay to set off $405,000").  A motion for

relief from the automatic stay is not the procedurally
proper vehicle for DIRECTV to enforce these Agreements.
Instead, DIRECTV should have moved to compel assumption
or rejection of these contracts.

13.   A debtor in possession has until
confirmation of a plan to assume or reject an executory
contract.  11 U.S.C. § 365(d)(2); In re Wheeling-
Pittsburgh Steel Corp., 54 B.R. 385, 388 (Bankr. W.D.Pa.
1985) ("As this language clearly states, the debtor may
wait until the plan confirmation date to make its
decision to assume or reject an unexpired [executory
contract].").  "It is the clear policy of the Bankruptcy
Code to provide the debtor with breathing space
following the filing of a bankruptcy petition,
continuing until the confirmation of a plan, in which to
assume or reject an executory contract."  In re Dana
Corp., 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006); In re
Wheeling-Pittsburgh Steel Corp., 54 B.R. at 388
("Permitting the debtor to make its decision as late as
the plan confirmation date enables the debtor to
carefully evaluate the possible benefits and burdens of
an [executory contract].").

14.   The non-debtor party may not enforce the
terms of a contract until the debtor chooses to assume
or reject that contract.   NLRB v. Bildisco & Bildisco,
465 U.S. 513, 532 (1984); In re Alongi, 272 B.R. 148,
152 (Bankr. D.Md. 2001) (citing In re El Paso Refinery,
L.P., 220 B.R. 37, 48 (Bankr. W.D.Tex. 1998)); In re St.
Francis Physician Network, Inc., 213 B.R. 710, 714
(Bankr. N.D.Ill. 1997) ("it is settled law that a pre-
bankruptcy contract is not enforceable against the
debtor until it is assumed, but may be enforced by the
debtor even before it is assumed") (emphasis in
original).

15.   The Debtors have not assumed either the
Retailer Agreements or the Dealer Agreement.   Thus,
because DIRECTV seeks to enforce the Agreements by
obtaining an order permitting setoff or recoupment
allegedly under the terms of those Agreements (see
Motion ¶ 5), a motion for relief from the automatic stay
is not the proper procedural means to do so.   Instead,
DIRECTV must first obtain an order compelling the
Debtors to assume or reject the Agreements.   See, e.g.,
In re El Paso Refinery, 220 B.R. at 43 (noting that

motion to compel or reject, not motion for relief from
the automatic stay, is the appropriate mechanism to
enforce contract rights, even if debtor is not
performing contract obligations).

16.   Therefore, the Court should deny the
Motion because it is procedurally improper.  Indeed,
until the Debtors assume or reject the Agreements,
DIRECTV's request to setoff or recoup the Hardware
Claims against the Commission Claim or any other claims
the Debtors may hold against DIRECTV is premature.
Accordingly, the Motion should be denied without
prejudice to DIRECTV seeking similar relief after the
Debtors assume or reject the Agreements.

**II.   DIRECTV HAS NOT SATISFIED EITHER STANDARD FOR
        RELIEF FROM THE AUTOMATIC STAY.**

17.   DIRECTV cannot establish that it is
entitled to relief from the automatic stay under either
Bankruptcy Code section 362(d)(1) or 362(d)(2).

**A.   DIRECTV Has Not Established Cause To Modify
       The Automatic Stay Under 362(d)(1).**

18.   DIRECTV asserts that it is entitled to
relief from the automatic stay under section 362(d)(1)
for cause to setoff its Hardware Claim against the

Debtors' Commission Claim.  Motion ¶ 27.  During the automatic stay, a creditor may not setoff "any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. 362(a)(7).  A court may grant relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. 362(d)(1).

19.  In the context of stay relief motion to offset or setoff, cause exists to modify the automatic stay where (1) the moving party establishes a valid right of setoff or offset, (2) neither the debtor nor the estate would be prejudiced by the modification, and (3) the hardship to the plaintiff from continuing the stay outweighs the hardship to the debtor by modifying the stay.  See In re Fernstrom Storage & Van Co., 100 B.R. 1017, 1023 (Bankr. N.D.Ill. 1989).  The party seeking relief from the stay bears the burden of showing "cause" exists.  In re Prop. Techs., Ltd., 263 B.R. 750, 753 (Bankr. E.D.Va. 2001); In re Trius Corp., 47 B.R. 3, 5 (Bankr. D.S.C. 1984).

20.   DIRECTV has not met its burden to show cause exists to modify the fundamental protection of the automatic stay, and the Court should deny its Motion.

**(1)   DIRECTV should not be permitted to setoff its Hardware Claim against the Debtors' Commission Claim.**

21.   DIRECTV has not shown that is has a valid legal or equitable right of setoff.

22.   In order for a creditor to employ the right of setoff preserved in section 553, "it must meet four conditions: 1) the creditor must hold a pre-petition claim against the debtor; 2) the creditor must owe a debt to the debtor that arose pre-petition; 3) the obligations are mutual; 4) the obligations are valid and enforceable." In re Vance, 298 B.R. at 267; In re Camellia Food Stores, Inc., 287 B.R. 52, 59 (Bankr. E.D.Va. 1989).   DIRECTV bears the burden of proving these elements by a preponderance of the evidence.   In re EBW Laser, Inc., No. 07-2004, 2009 WL 116995, at *2 (Bankr. M.D.N.C. Jan. 15, 2009).   DIRECTV cannot do so.

23.   Setoff permits parties who owe money to each other to "apply their mutual debts against each other." Citizens Bank of Maryland v. Strumpf, 516 U.S.

16, 18 (1995).  Specifically, the requirement of
mutuality mandates that the offsetting debts be due from
the same parties, in the <u>same capacities</u>.  <u>See, e.g.</u>, <u>In
re Thompson</u>, 182 B.R. at 152; <u>Westinghouse Credit Corp.</u>,
278 F.3d at 149.  DIRECTV has not met its burden to show
the debts are mutual.  Thus, setoff does not apply and
the Court should deny the Motion.

24.  DIRECTV and Circuit City did not act in
the same capacities under the Retailer Agreements and
Dealer Agreement.  Under the Retailer Agreements,
Circuit City acted as a commissioned agent that only
received payment upon activating DIRECTV programming for
a customer.  Under the Dealer Agreement, Circuit City
purchased hardware from DIRECTV and received payment
regardless of whether Circuit City subsequently sold the
products to retail customers.

25.  As such, Circuit City acted in two
different capacities – as a sales agent paid by
commission, and as a retail hardware seller.  Similarly,
DIRECTV acted in two different capacities – as a service
and programming provider, and as a seller of hardware.

Thus, the requirement of mutuality is not satisfied, and DIRECTV cannot satisfy a valid right of setoff.

26.   Without such a right, there is no cause for this Court to modify the automatic stay.  See In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 838 (Bankr. S.D.N.Y. 1990) (denying relief from automatic stay to exercise setoff rights where creditor could not establish elements of setoff, noting "the courts have uniformly ruled that cause under section 362(d)(1) requires the establishment of a legally sufficient basis for the action sought").  Accordingly, the Court should deny DIRECTV's request to modify the automatic stay under section 362(d)(1) to permit setoff.

**(2)   DIRECTV will not be prejudiced by waiting until the Debtors assume or reject the Agreements.**

27.   There is no reason to modify the stay at this time because DIRECTV will not suffer any prejudice if the stay is not lifted.

28.   DIRECTV concedes that it owes Circuit City over $400,000.  See Motion ¶ 9 ("As of the commencement of Circuit City's bankruptcy case, DIRECTV owed Circuit City $405,000 (the 'Circuit City Claim') on

account of DIRECTV obligations.").  DIRECTV simply asks

that it be allowed to setoff that amount out of an

amount that Circuit City owes DIRECTV.  However, Circuit

City has not instituted an action seeking payment of the

receivable and DIRECTV is free to assert offset as a

defense, when and if Circuit City does so.

29.  At this time, nothing requires the Court

to permit DIRECTV to offset, or for the matter to be

dealt with prior to the Debtors' decision to assume or

reject the DIRECTV Agreements.  DIRECTV will not be

prejudiced by waiting until the Debtors can review their

records to determine how much the Debtor might owe

DIRECTV. Therefore, denying this Motion is appropriate

and will not prejudice DIRECTV.

> **(3)  The hardship to Debtors from modifying
> the stay outweighs the hardship to
> DIRECTV from continuing the stay.**

30.  "The automatic stay is one of the most

fundamental debtor protections supplied by the

bankruptcy code."  In re Thompson, 182 B.R. at 146

(quoting University Med. Ctr. v. Sullivan (In re

University Med. Ctr.), 973 F.2d 1065, 1074 (3d Cir.

1992).  "The automatic stay is key to the collective and

preservative nature of bankruptcy proceedings.  It protects debtors and creditors alike . . ."  In re Drexel Burnham Lambert Group, 113 B.R. at 837.  The Debtors should not be denied the protection of the breathing room of the automatic stay to assess the validity and amount of DIRECTV's claims.

31.  As noted above, the Debtors still need time to review their records and determine how much DIRECTV might owe the Debtors, and how much the Debtors may owe DIRECTV.  If the stay is modified, it would eviscerate the purpose of the automatic stay to provide the Debtors breathing room to permit them time to review claims and ensure ratable distribution to creditors of established claims.  In re Drexel Burnham Lambert Group, 113 B.R. at 837. (noting automatic stay protects debtors and creditors by preserving estate property and ensuring distribution pursuant to the plan); In re ABC-NACO, Inc., 294 B.R. 832, 836 n.2 (Bankr. N.D.Ill. 2003) (pointing out that setoff violates normal distribution by effectively granting a "higher priority" to unsecured claims).  If the stay continues, DIRECTV will be in the same position it currently is, and thus suffers no

hardship from the stay remaining in place.  On the other
hand, if the stay is modified, the Debtors will be
denied one of the fundamental protections of the
Bankruptcy Code and the bankruptcy priority scheme may
be disrupted.  Because the balance of the equities and
hardships favors the Debtors, the Court should deny the
Motion.

> **B.   DIRECTV Has Not Demonstrated That The Debtors
>       Lack Equity To Justify Modifying The Automatic
>       Stay Under 362(d)(2).**

32.   Alternatively, DIRECTV asserts that it is
entitled to relief from the automatic stay under section
362(d)(2).  Motion ¶ 28.  It is not.

33.   Bankruptcy Code section 362(d)(2)
provides that a court may modify the automatic stay:

> with respect to a stay of an act against
> property under subsection (a) of this section
> if-
>
> (A) the debtors does not have an equity in
> such property; and
>
> (B) such property is not necessary to an
> effective reorganization. . .

11 U.S.C. § 362(d)(2).

34.   Both conditions (A) and (B) must be
satisfied for a court to grant relief from the stay.  In

re Prop. Techs., Ltd., 263 B.R. 750, 754 (Bankr. E.D.Va.
2001) (denying relief from stay when movant only was
unable to show that debtor lacked equity); Chrysler LLC
v. Plastech Engineered Prods. (In re Plastech), 382 B.R.
90, 109 (Bankr. E.D.Mich. 2008) (relief under 362(d)
"requires a showing of both elements").

35.  Initially, there is a threshold legal
question whether Bankruptcy Code section 362(d)(2)
applies to a creditor's request to modify the stay to
setoff.  Setting that aside and assuming arguendo it
applies, with respect to element A, DIRECTV bears the
burden of proving the Debtors lack equity.  11 U.S.C.
362(g); In re Prop. Techs., 263 B.R. at 753-54
("plaintiff has the burden or proof on the issue of
debtor's lack of equity in the property").  DIRECTV has
not met this burden.

36.  As demonstrated above, DIRECTV cannot
show that it has a legal right to setoff.  Therefore,
DIRECTV cannot show that the Debtors lack equity in the
amounts due from DIRECTV.  Indeed, because DIRECTV has
not established that the amount due from the Debtors
should be applied to offset the amount due to the

Debtors, the Debtors have "equity" -- $405,000 worth -- in the amount due from DIRECTV.  Therefore, DIRECTV has not met its burden.

37.  Additionally, DIRECTV does not provide any factual support for its conclusion that the Debtors' lack equity.  See Motion ¶ 28 ("In the alternative, DIRECTV is entitled to relief from the stay under 11 U.S.C. § 362(d)(2) because Circuit City has no equity in the DIRECTV Claim to the extent of DIRECTV's right of setoff . . .").  Mere conclusory statements are not sufficient to satisfy the burden of proof.  See In re Texaco Inc., 81 B.R. 820, 829 (Bankr. S.D.N.Y. 1988); see also In re Prop. Techs., 263 B.R. at 754 (plaintiff failed to carry burden of showing lack of equity when he did not present any evidence to that effect).  Because DIRECTV has not provided any factual support and relies instead on conclusory statements in support of relief under Bankruptcy Code section 361(d)(2), DIRECTV has not met its burden to show Debtors lack equity.

38.  Accordingly, DIRECTV's request to terminate or modify the automatic stay should be denied.

### III. DIRECTV MAY NOT PROPERLY RECOUP THE HARDWARE CLAIM OUT OF THE COMMISSION IT OWES TO THE DEBTORS.

39.  As an alternative to setoff, DIRECTV contends that it may recoup the Hardware Claim out of the amounts owed to the Debtors for the Commission Claim. Motion ¶ 4 ("DIRECT seeks to recoup or, in the alternative for relief from the automatic stay to set off").  This argument should also be rejected.

40.  "Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." First Nat'l Bank of Louisville v. Master Auto Serv. Corp., 693 F.2d 308, 310 n.1 (4th Cir. 1982).  For recoupment to apply, a party must demonstrate two elements:  (1) the source of the creditor's claim must be a contract, and (2) the debtor's and creditor's claims must arise out of the same contract.  In re Vance, 298 B.R. 262, 267 (Bankr. E.D.Va. 2003); Thompson v. Board of Trs. of Fairfax County Police Officers Ret. Sys. (In re Thompson), 182 B.R. 140, 147 (Bankr. E.D.Va. 1995).

41.  To meet the second element of the test, the debtor's claim must arise from the "very contract giving rise to" the creditor's claim.  First Nat'l Bank, 693 F.2d at 310 n.1. In that regard, the Fourth Circuit looks to whether the claims arise from the "same transaction" analysis.  See In re Camellia Food Stores, Inc., 287 B.R. 52, 61 (Bankr. E.D.Va. 1989); see also In re St. Francis Physician Network, 213 B.R. at 716 ("the essential element of recoupment is that it is a demand arising from the same transaction as the debtor's claim").  Thus, under the doctrine of recoupment the division between prepetition and postpetition claims is not relevant; instead, the Court is called upon to determine whether the claims arise out of the same transaction.

42.  Consequently, because the doctrine of recoupment allows a creditor to ignore the distinction between pre-filing and post-filing claims, and thereby potentially diminish the recovery of other creditors, courts have generally held that recoupment is a limited doctrine that should be narrowly construed.  See, e.g., In re Camellia, 287 B.R. at 61; Westinghouse Credit Corp.

v. D'Urso, 287 F.3d 138, 147 (2d Cir. 2002); In re St.
Francis Physician Network, 213 B.R. at 716-17 (noting
"[t]he difficulty with recoupment is that it leads to
results inconsistent with the bankruptcy code and
fundamental bankruptcy policies").  As demonstrated
below, DIRECTV may not recoup the Hardware Claim out of
the Commission Claim.

        43.  DIRECTV's debt to Circuit City for the
Commission Claim arises out of the Retailer Agreements.
By contrast, the Debtors' liability to DIRECTV for the
Hardware Claim arises out of the Dealer Agreement and
Circuit City's purchase of DIRECTV hardware for retail
sale.  Therefore, the debts arise out of distinct
contracts, and DIRECTV cannot recoup its Hardware Claim
out of the Debtors' Commission Claim.   In re Camellia,
287 B.R. at 62 ("The acts giving rise to [the recoupment
claim] occurred under distinct contracts and did not
arise from the same acts").

        44.  Nor should this Court accept DIRECTV's
contention that although the Retailer Agreements and the
Dealer Agreement are separate contracts, they still
constitute the "same transaction".  See Motion ¶ 15.

First, this argument entirely ignores that fact that
both of the Retailer Agreements contain an integration
clause that expressly states that the agreement is
distinct from other agreements.  See June Retailer
Agreement Section 27.2 ("INTEGRATION.  This Interim
Agreement replaces any prior agreement, understanding
and commitment between the parties regarding Circuit
City's appointment and performance as a commissioned
retailer/referral contractor for DIRECTV."); October
Retailer Agreement Section 24.2 ("ENTIRE AGREEMENT.
This Agreement shall be the entire agreement between
Circuit City and DIRECTV with regard to the subject
matter thereof.").

45.  Furthermore, the material terms of the
Retailer Agreements and the Dealer Agreement are not the
same, which indicates the parties did not intend them to
be integrated.  In re Vance, 298 B.R. at 269 (finding
that same material terms in separate agreements
indicated that the agreements were integrated).

46.  Finally, the Dealer Agreement was made
over two years before the Retailer Agreements, further

indicating that the parties did not view these as an integrated transaction.

47.   Thus, this is not a case where "both debts [] arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligation."  University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1081 (3d Cir. 1992). Therefore, the doctrine of recoupment simply does not apply to DIRECTV's Hardware Claim because DIRECTV cannot meet the second element of the recoupment test. Consequently, the Court should not grant the Motion on this alternative basis.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) denying the relief requested in the Motion, and (ii) granting the Debtors such other and further relief as is just and proper.

Dated: February 26, 2009
      Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

__/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession