Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
Circuit City Stores, Inc.,    :   Case No. 08-35653(KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OBJECTION TO MOTION AND SUPPORTING MEMORANDUM OF POLARIS CIRCUIT CITY, LLC FOR AN ORDER (A) COMPELLING DEBTOR TO IMMEDIATELY PAY ADMINISTRATIVE RENT PURSUANT TO 11 U.S.C. §§ 365(d)(3) AND 503(b), AND (B) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors"),[1] hereby submit this objection (this "Objection") to the Motion and Supporting Memorandum of Polaris Circuit City, LLC for an Order (A) Compelling Debtor to Immediately Pay Administrative Rent Pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b), and (B) Granting Related Relief (D.I. 2071) (the "Motion").  In support of this Objection, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

BACKGROUND

**The Bankruptcy Cases.**

1.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

2.   On January 12, 2009, the Court entered an order authorizing the Debtors to conduct auctions for a

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

sale or sales of the Debtors' businesses as a going concern or for liquidation (D.I. 1460).

3.   At the conclusion of the auction, the Debtors determined that the highest and otherwise best bid was that of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC, and Tiger Capital Group, LLC (collectively, the "Agent").   On January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores (D.I. 1634).   The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.

**Polaris And The Other Lessors.**

4.   Certain real property lessors moved this Court, via motions or objections to relief requested by the Debtors (collectively, the "Stub Rent Motions"), for immediate payment of post-petition rent for the period from November 10, 2008 through November 30, 2008 (the "Stub Rent Requests").   The Debtors filed omnibus objections to the Stub Rent Motions on December 3, 2008 and December 18, 2008 (together, the "Stub Rent Objections") (D.I.s 641, 1100).

5.   On December 3, 2008, Polaris Circuit City,
LLC ("Polaris") filed its Motion and Supporting
Memorandum of Polaris Circuit City, LLC for an Order (A)
Compelling Debtor to Immediately Pay Administrative Rent
Pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b), and
(B) Granting Related Relief (D.I. 647).

6.   The Stub Rent Requests (including Polaris)
and Stub Rent Objections were considered by the Court on
December 22, 2008.  After hearing the arguments, the
Court denied the Stub Rent Motions, concluding that
although the Stub Rent Requests are accorded priority
treatment under sections 503(b)(3) and 507(a) of title 11
of the United States Code (the "Bankruptcy Code"), the
Debtors are not obligated to pay the Stub Rent Requests
immediately pursuant to Bankruptcy Code section 365(d)(3)
or otherwise.  Instead, the Court concluded that the Stub
Rent Requests are administrative expenses that may be
paid by the Debtors upon the effective date of a
confirmed plan of reorganization pursuant to sections
507(a) and 1129(a) of the Bankruptcy Code, or such
earlier date as the Court may direct for cause.
Accordingly, the Court denied the Stub Rent Motions,

4

without prejudice to the landlord's right to seek earlier payment for their Stub Rent Request for cause.  <u>See</u> December 22, 2008 Transcript, at pp. 82-83.

7.   On January 2, 2009, in response to the Court's decision, certain lessors filed the Landlords' Motion for Rehearing and/or Reconsideration and/or to Alter or Amend the Judgment Regarding Payment of November Rent, and Memorandum in Support Thereof (D.I. 1347) (the "Reconsideration Motion").  Polaris subsequently filed its joinder to the Reconsideration Motion (D.I. 1392) on January 7, 2009.

8.   On January 16, 2009, the Court denied the Reconsideration Motion and reiterated that "Debtors were not obligated to pay the stub rent immediately pursuant to Section 365(d)(3)."  <u>See</u> January 16, 2009 Transcript, at pp. 55-58.

9.   On January 26, 2009, the Court issued its Findings of Fact and Conclusions of Law from Hearing Held December 22, 2008 on Motions to Compel Payment of Postpetition Rent (D.I. 1781), clarifying its decision regarding the post-petition rental obligation for the period from November 10, 2008 through November 30, 2008

(the "Stub Rent").  The Court denied the lessors' motions
and ruled "that the Debtors should not be ordered to pay
the Stub Rent at this time on the basis that such rent is
not entitled to a superpriority but rather to priority
only pursuant to Section 507(a) of the Bankruptcy Code."

10.  On February 12, 2009, the Court issued its
Memorandum Opinion (the "Opinion") supplementing its
rulings from the December 22, 2008 hearing (D.I. 2107).
The Court reiterated its decision that the Debtors are
not required to pay the Stub Rent immediately and that
the Stub Rent claims shall be payable upon confirmation
of a plan pursuant to section 1129(a)(9)(A) of the
Bankruptcy Code.

**The Polaris Lease.**

11.  Polaris and Circuit City Stores, Inc.
("Circuit City") are parties to a lease agreement dated
June 15, 2004, for premises located in Columbus, Ohio
(the "Lease").

12.  The Debtors are currently performing their
review, evaluation, and marketing of unexpired leases and
subleases, including Polaris' Lease.  The Lease is
subject to the Bidding Procedures Order (D.I. 2242) and

the Lease is identified in the Bidding Procedures Order as a March Lease.  The March Leases are scheduled for auction on March 10, 2009 with a sale hearing scheduled for March 13, 2009.  Pursuant to paragraph 11 of the Bidding Procedures Order, any March Lease for which no potential purchaser has submitted a bid and the Debtors have not filed a rejection notice, shall be deemed rejected as of the later of March 31, 2009, the sale termination date, or the date that the Debtors surrender the premises to lessor by fulfilling the rejection requirements.

### SUMMARY OF ARGUMENT

13.  By the Motion, Polaris alleges that the Debtors owe post-petition rent and real estate taxes to Polaris in the amount of $61,692.79, plus $205.69 per day accruing after February 28, 2009.  Polaris specifically requests that this Court order the Debtors to immediately pay: (1) the unpaid rent and real estate taxes accrued from the period from the Petition Date through November 30, 2008 (the "November Stub Rent and Taxes"); (2) real estate taxes for the period from December 1, 2008 through

February 28, 2009, in the amount of $18,494.60, [2] plus

$205.69 per day for each day the Debtors remain in

possession of the leased property beyond February 28,

2009 (the "Post-Petition Real Estate Taxes"); and (3)

attorney's fees and costs incurred in connection with

this Motion.  See Motion at ¶¶ 8, 15.  The Debtors object

to each of Polaris' requests.

14.  First, pursuant to the Court's Opinion,

the request for November Rent and Taxes should be

overruled absent a showing of changed circumstances.

Polaris failed in its Motion to establish a change in

circumstances sufficient to permit payment of the

November Rent and Taxes.  Additionally, the real estate

taxes accrued from the Petition Date through November 30,

2008 are not yet due.  Second, the Debtors have no timely

obligation to pay the Post-Petition Real Estate Taxes as

they are not yet due and payable pursuant to Bankruptcy

---

[2]  This figure was derived by adding the tax liability for the
period from December 1, 2008 through December 30, 2008 (which was
calculated by dividing the total 2008 real estate tax liability
of $75,075.97 by 366 (the number of days in 2008) and multiplying
the resulting number by 31 (the number of days in December)) to
Polaris' request for its estimated tax liability from January 1,
2009 onwards ($12,135.71, plus $205.69 per day for each day the
Debtors remain in possession of the leased property beyond
February 28, 2009).

Code section 365(d)(3).  Moreover, the Post-Petition Real

Estate Taxes are not administrative expenses entitled to

immediate payment as they are neither actual nor

necessary as required by Bankruptcy Code section

503(b)(1).  Even assuming _arguendo_ that the Post-Petition

Real Estate Taxes are administrative expenses pursuant to

section 503(b)(1), they need not be paid until

confirmation of a plan, consistent with the Court's

Opinion and Bankruptcy Code section 507.

      15.  For these reasons, as set forth more fully

below, the Motion should be denied and the Objection

should be sustained.

### OBJECTION

**I.   POLARIS' REQUEST FOR IMMEDIATE PAYMENT FOR NOVEMBER
STUB RENT AND TAXES SHOULD BE DENIED.**

      16.  Courts in this District, including this

Court in its Opinion, have consistently held that

authorizing immediate payment of administrative expenses

to landlords would be tantamount to giving landlords

"superpriority" claims.  _See_, _e.g._, Opinion at 13

("decline[ing] to order immediate payment of the Stub

Rent" because "[i]f the Court were to order otherwise, it

would be elevating the Lessors' administrative claim to superpriority status"); In re Trak Auto Corp., 277 B.R. 655, 668 (Bankr. E.D. Va. 2002) rev'd. on other grounds, 367 F.3d 237 (4th Cir. 2004) (holding that awarding a landlord immediate payment of administrative expenses would grant the landlord "super-priority" claim status); In re Virginia Packaging Supply Co., 122 B.R. 491, 494 (Bankr. E.D. Va. 1990) (rejecting a request for immediate payment of lease obligations because it would have the effect of granting landlords a "super-priority" status). However, there is nothing in the Bankruptcy Code that supports treating landlords as superpriority administrative creditors. See Virginia Packaging Supply, 122 B.R. at 495 (concluding that "super-priority" treatment was not "intended" by the Bankruptcy Code). Accordingly, courts in this District have repeatedly rejected immediate payment requests. See, e.g., Trak Auto, 277 B.R. at 668; In re Virginia Packaging Supply Co., 122 B.R. at 494.

17. Polaris seeks immediate payment of its November Stub Rent and Taxes. However, the Court already ruled that obligations for rent and related expenses,

including real estate taxes, from the Petition Date
through November 30, 2008 are not entitled to immediate
payment.[3]  See Opinion at 2 n.3 ("As used herein, Stub
Rent includes all amounts owing under the Leases,
including, but not limited to, common area maintenance
charges, real property taxes, and such other charges as
may be asserted under the Leases for the period from
November 10 to November 30, 200[8].") (emphasis added);
Opinion at 12 ("the time for timely performance of the
obligation to pay Stub Rent is the same as for all other
administrative expense claims upon confirmation of the
plan pursuant to 11 U.S.C. § 1129(a)(9)(A)").  Allowance
and payment of the November Stub Rent and Taxes should
await confirmation of a plan pursuant to
11 U.S.C. § 1129(a)(9)(A) to facilitate equal treatment
of holders of other administrative claims.  See id.  As
no plan has yet been confirmed, Polaris is not entitled

---

[3]    Even if the Court had not ruled in its Opinion that the November
       Stub Rent and Taxes were not immediately payable, the real estate
       taxes accrued from the Petition Date through November 30, 2008
       would still not be immediately payable because they are not yet
       due.  As stated in further detail below in Section II.A., Polaris
       has yet to be billed for its tax liability from the second half
       of 2008.

to immediate payment of its November Stub Rent and Taxes claim.

18.   Moreover, there has been no change in circumstances which would allow for immediate payment of the November Stub Rent and Taxes.

19.   At the December 22, 2008 hearing, the Court ruled that the Stub Rent claims are not entitled to superpriority status and the Debtors are not obligated to immediately pay them.  See December 22, 2008 Transcript, at pp. 82-83.  The Court further stated that its decision is "without prejudice to any landlord being able to come back for cause and requesting an earlier payment as developments in the case may dictate."  See Id. at p.83.

20.   Polaris asserts that because the "[leased] Premises are listed on the March Closing Stores List[, that]. . . is a sufficient change in circumstances justifying another request for immediate payment of the stub rent."  Motion at ¶ 18.

21.   Polaris is mistaken as there was no change in circumstances that would merit this third attempt by Polaris to receive immediate payment of its Stub Rent.

22.  "The budget under the Debtors' debtor in possession financing facility, as approved by this Court by order entered December 23, 2008 (the "DIP Facility") [Docket No. 1262], did not contemplate payment of the Stub Rent for Advance Leases."  Opinion at 10.  The Debtors would need approximately $20 to $25 million to cover these Stub Rent payments.  If they were forced to make immediate payments, as requested by lessors, that "would result in financial hardship for the Debtors and endanger their continued operations and successful restructuring."  Id.  Taking the "dire financial circumstances" into consideration, the Court exercised its discretion "to decline to order immediate payment of the Stub Rent."  Id. at 13.

23.  On February 17, 2009, this Court issued the Final Order Approving Third Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement (D.I. 2214) (the "Final DIP Order").  The Final DIP Order amends the DIP Facility to allow the Debtors to complete its liquidation.

24.  The Final DIP Order approved a post-January 16, 2009 budget that does not provide for the

approximately $20 to $25 million needed to immediately pay Stub Rent claims. Moreover, the budget anticipated to be approved for the period from February 28 through April 4, 2009 will also not permit payment of the Stub Rent claims. The mere fact that the Debtors are currently undergoing liquidation procedures is not the change in circumstances sufficient to permit immediate payment of the November Stub Rent and Taxes.

25. Nothing has changed to permit Polaris to request immediate payment of its November Stub Rent and Taxes. The Debtors still do not have the financing necessary to satisfy all the lessors' claims for immediate payment of Stub Rent, which was the basis for the Court's decision to deny the Stub Rent Motions.

26. Accordingly, the Court should deny Polaris' _third_ request for the immediate payment of its Stub Rent claims and its corresponding request for immediate payment its November real estate taxes.

II.   THE DEBTORS SHOULD NOT BE REQUIRED TO MAKE AN
      IMMEDIATE PAYMENT FOR THE POST-PETITION REAL ESTATE
      TAXES.

A.    The Immediate Payment Of The Post-Petition Real
      Estate Taxes Is Not Required Under The Lease.

27.   The Motion requests the immediate payment of the Post-Petition Real Estate Taxes, defined above as Polaris' real estate tax liability from December 1, 2008 through 2009.  This request should be denied because the Post-Petition Real Estate Taxes are not yet due under the terms of the Lease.

28.   The Lease provides that "Tenant shall pay to Landlord Tenant's Pro Rata Share of Real Estate Taxes within twenty (20) days after Tenant's receipt of Landlord's statement (or within the same time period granted to the Landlord to pay such tax bill – e.g., if Landlord is delivered a copy of the bill 30 days in advance of its due date by the applicable governmental entity, then Tenant shall have 30 days after receipt of a copy of the tax bill from Landlord), accompanied by the tax bill on the basis of which such statement is rendered."  Lease at ¶ 9(b).

29.   Pursuant to the terms of the Lease, the
Debtors have no obligation to reimburse Polaris for Post-
Petition Real Estate Taxes until such taxes are due to
the respective governmental entity.  The only bill that
Polaris presented to the Debtors was the bill requesting
payment of real estate taxes from the first half of 2008.
Though this bill provides the amount of the Debtors'
liability for the second half of 2008, it does not
require payment for such taxes.  Additionally, Polaris
has not presented any tax bills to the Debtors covering
the 2009 tax period.

30.   Upon information and belief, the Post-
Petition Real Estate Taxes are not yet due to the
respective governmental entity.  Accordingly, pursuant to
the Court's prior rulings, the Debtors are not obligated
to make an immediate payment for the Post-Petition Real
Estate Taxes because they are not yet due.

31.   The terms of the Lease do not require an
accelerated payment of the Post-Petition Real Estate
Taxes.  Accordingly, the Court should deny Polaris'
request for the immediate payment of the Post-Petition

Real Estate Taxes as they are not yet due under the terms
of the Lease.

    **B.    The Immediate Payment Of The Post-Petition Real
Estate Taxes Is Not Required Under Either
Sections 365(d)(3) Or 503(b)(1) Of The
Bankruptcy Code.**

        **(1)   Bankruptcy Code section 365(d)(3)
does not require immediate payment of
the Post-Petition Real Estate Taxes.**

32.   Pursuant to section 365(d)(3) of the
Bankruptcy Code, the Debtors must "timely perform all the
obligations of the debtor . . . arising from and after
the order for relief under any unexpired lease of
nonresidential real property. . . ."  11 U.S.C. 365(d)(3).

33.   As this Court has pointed out, the
Bankruptcy Code does not define what it means to "timely"
perform.  <u>See</u> Opinion at 9 ("*Timely* is not a defined term
in the Bankruptcy Code.").  However, the Court ruled that
"timely" as used in section 365(d)(3) "refers to the time
of performance under the lease terms."  Opinion at 12.
Additionally, the Court ruled that, "the accrual method
assures payment of all obligations due under a lease for
postpetition occupancy on a timely basis as an
administrative expense and removes the incentive to

manipulate billing cycles."  Opinion at 9.  Thus, as this
Court has already ruled, pursuant to section 365(d)(3),
the Debtors have an obligation to make an immediate
payment for administrative expenses only for obligations
that have both accrued and are due under the terms of the
Lease.  See Opinion at 12 (holding that the accrual
method "does not change the temporal element of the lease
term regarding payment — the time for performance of the
payment obligation"); In re Pudgie's Development of NY,
Inc., 239 B.R. 688, 694 ("The plain meaning of section
365(d)(3) requires that the landlord obtain payment as
lease obligations become due."); In re Ernst Home Center,
Inc., 209 B.R. 955, 964 (W.D. Wash. 1997) (refusing to
order debtor to pay taxes not yet due under the lease
because "[s]ection 365(d)(3) does not require
acceleration of tax payments," but rather payment only
when such obligations are due under the lease); see also,
In re Metals USA, Inc., 2004 WL 771096, at *5 (Bankr. S.D.
Tex. Jan. 15, 2004) (denying landlord rent where not yet
due and payable under conditions of the lease).

34.  Moreover, ordering the Debtors to pay the
obligations that are not yet due under the lease would

not serve the purpose behind the enactment of section
365(d)(3).  As the Fourth Circuit has recognized, "[t]he
intent behind the enactment of section 365(d)(3) was to
prevent landlords from becoming involuntary creditors of
the debtor's estate," such that landlords "cannot be
required to provide post-petition services without
current services."  Trak Auto, 277 B.R. at 622.  Where
the Post-Petition Real Estate Taxes are not due to
Polaris under the Lease, nor to the respective
governmental entity from Polaris, Polaris is not being
deprived of any of its rights.  Thus, Polaris can hardly
be considered a creditor at all, much less an involuntary
creditor.

        35.  Finally, refusing to order the Debtors to
make immediate payment of obligations under section
365(d)(3) before such obligations are both accrued and
due respects the longstanding principle that bankruptcy
law does not alter the contractual rights of parties
absent some overriding federal interest.  See Tidewater
Finance Co. v. Kenney, 531 F.3d 312 (4th Cir. 2008)
(refusing to grant creditor rights greater than those
afforded under contract with debtor); Butner v. United

States, 440 U.S. 48, 55 (1979) ("Unless some federal

interest requires some different results, there is no

reason why [property] interests should be analyzed

differently simply because an interested party is

involved in a bankruptcy proceeding.").  The principle of

respecting non-bankruptcy contract rights is particularly

important in this instance - not only is there no

overriding federal interest in allowing Polaris to

receive payment of the Post-Petition Real Estate Taxes

from the Debtors, but the federal interests promoted by

the Bankruptcy Code demand that Polaris is not to receive

superpriority over other administrative expense creditors.

See, e.g., Opinion at 13; Trak Auto, 277 B.R. at 668;

Virginia Packing Supply, 122 B.R. at 495.

        36.  As stated above, the Post-Petition Real

Estate Taxes are not yet due under the Lease.  Therefore,

the Court should deny Polaris' request for immediate

payment of the Post-Petition Real Estate Taxes pursuant

to Bankruptcy Code section 365(d)(3).

> **(2)  Bankruptcy Code section 503(b)(1)
>        does not require immediate payment of
>        the Post-Petition Real Estate Taxes.**

37.  Administrative expense claims under
Bankruptcy Code section 503(b)(1)(A) are limited to "the
actual, necessary costs and expenses of preserving the
estate."  11 U.S.C. § 503(b)(1)(A).  For an expense to be
granted administrative priority under Bankruptcy Code
section 503(b), the Court must find that the expense was
an actual expense of the estate and that payment of the
expense is necessary to preserve the Debtors' estate.
See Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 866
(4th Cir. 1994) ("The modifiers 'actual' and 'necessary'
must be observed with scrupulous care[.]") (citation
omitted).

38.  As the party filing an administrative
claim, Polaris bears the burden of proving that its claim
is entitled to administrative priority under Bankruptcy
Code section 503.  See, e.g., In re Merry-Go-Round
Enterprises v. Simon Debartolo Group, 180 F.3d 149, 157
(4th Cir. 1999) (holding that the creditor "has the
burden of proving that its administrative claim . . . is

an actual and necessary expense"); Ford Motor Credit Co.,
35 F.3d at 866 (same).

        39.   Moreover, "[a]dministrative expenses are
narrowly construed because they run counter to the
central premise of bankruptcy distributions which is a
pro rata distribution among all creditors." In re
Computer Learning Ctrs., Inc., 298 B.R. 569, 577 (Bankr.
E.D. Va. 2003).

        40.   The Post-Petition Real Estate Taxes
requested in the Motion are not an "actual" cost of
preserving the estate because Polaris has not yet been
billed for them.  See Trak Auto, 277 B.R. at 664 (stating
that an amount claimed as an administrative expense "must
be for an actual expense and cannot be based on an
estimate"); see also, In re HNRC Dissolution Co., 371 B.R.
210, 225 (E.D. Ky. 2007), aff'd 536 F.3d 683 (6th Cir.
2008) (finding that prospective expenses are not "actual"
because they are "not yet realized"); In re Federated
Dept. Stores, Inc., 270 F.3d 994, 1001 (6th Cir. 2001)
("[A] tax is incurred when it accrues and becomes a fixed
liability.").

41.  Even if Polaris has an idea as to the
total amount of its real estate tax liability for the
second half of 2008, it has yet to be billed for it.
Thus, these taxes are not an "actual" cost of preserving
the estate.  Moreover, Polaris has absolutely no
knowledge as to its 2009 real estate tax liability.
Despite this lack of knowledge, the Motion specifically
sought $12,135.71 for the period from January 1, 2009
through February 28, 2009, and $205.69 per day thereafter.
See Motion at ¶ 8.  Polaris appears to have arrived at
these figures by using an estimation based on its 2008
real estate tax liability.

42.  Nor are the Post-Petition Real Estate
Taxes "necessary" to preserve the estate because before
the Debtors would be obligated to pay such taxes under
the Lease, the Debtors will have likely rejected the
Lease.  Cf. HNRC Dissolution, 371 B.R. at 226 (finding no
administrative expense priority when the claimed expenses
would be realized only after the estate had terminated).
Indeed, the Debtors would violate their duties to
preserve their estates by prematurely paying the Post-
Petition Real Estate Taxes before they are due.

43.  The estimated Post-Petition Real Estate Taxes cannot be an "actual" or even a "necessary" cost of preserving the estate because there is no obligation on any party to pay these taxes at this time.  As such, the prospective Post-Petition Real Estate Taxes should not be accorded administrative priority expense treatment under section 503(b)(1).

44.  Even if this Court ultimately decides that the Post-Petition Real Estate Taxes should be accorded administrative priority expense treatment under section 503(b)(1), the Court has previously ruled that the immediate payment of section 503(b) claims are not warranted.  See Opinion at 13-14 ("The Stub Rent claims under Advance Leases are hereby accorded administrative priority expense treatment under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, and such Stub Rent claims shall be payable upon the effective date of any plan of reorganization in these cases, or at such other time as the Court may order upon further motion."); see also, In re Midway Airlines Corp., 406 F.3d 229, 242 (4th Cir. 2005) (noting that "[w]hile an administrative expense under § 503(b) must be paid in cash on the effective date

24

of the plan in a chapter 11 proceeding, . . . bankruptcy
courts have wide latitude in deciding whether to order
payment prior to these deadlines").

45. Accordingly, the Court should deny
Polaris' request for the immediate payment of the Post-
Petition Real Estate Taxes as an administrative expense
claim under section 503(b)(1).

**III. POLARIS' REQUEST FOR THE IMMEDIATE PAYMENT OF
ATTORNEY'S FEES AND COSTS SHOULD BE DENIED.**

**A.   Attorney's Fees Are Not Immediately Payable.**

46. Polaris demands prompt payment of
attorney's fees and costs associated with filing and
prosecution of this Motion.  See Motion at ¶ 15.  In
support of this request, Polaris cites the Lease, which
provides for the recovery of attorney's fees and costs
incurred as a result of a party's breach of the Lease to
a prevailing party.  See Lease at ¶ 34(f) ("In the event
either party shall be required to commence or defend any
action or proceeding against any other party by reason of
any breach or claimed breach of any provision of this
Lease, . . . the prevailing party in such action or
proceeding shall be entitled to recover from or to be

25

reimbursed by the other party for the prevailing party's
reasonable and actual attorneys' fees and costs through
all levels of proceedings.").

47.   As discussed below, the Debtors believe
Polaris is not entitled to attorney's fees in connection
with the prosecution of this Motion or its previous
failed attempts to obtain the same relief sought herein.

48.   However, even if Polaris were able to
establish that it was entitled to attorney's fees (which
it cannot), any such fees would not be not be immediately
payable, as Polaris demands in its Motion.  As set forth
above, supra sections I and II, this Court has previously
ruled that payment of administrative expense claims shall
await confirmation of a plan.  See Opinion at 12 ("the
time for timely performance of the obligation to pay Stub
Rent is the same as for all other administrative expense
claims upon confirmation of the plan pursuant to 11 U.S.C.
§ 1129(a)(9)(A)").  Moreover, the Court has specifically
ruled that the landlords' request for payment of
attorney's fees is premature, explaining that "[w]ith
regard to the payment of attorney's fees, the Court is
not going to require the payment of attorney's fees

at . . . this time."  December 22, 2008 Transcript at

p.83.  Accordingly, the request for attorney's fees

should be denied.

   **B.  Attorney's Fees Are Not A "Timely Obligation"
        Entitled to Payment Under 365(d)(3).**

   49.  The Polaris attorney's fees claim should

be denied because attorney's fees are not "timely

obligations" entitled to payment under Section 365(d)(3).

   50.  As further discussed below, post-petition

attorney's fees may only be allowed under two sections of

the Bankruptcy Code, section 506(b) and section 503(b)(4).

Nonetheless, Polaris contends that it is entitled to

immediate payment of its attorney's fees claim based on

section 365(d)(3), but cites no authority in support of

its position.  See Motion at ¶ 15.

   51.  The Debtors maintain that the better

reasoned view, and the view that more easily fits with

Congressional intent under 11 U.S.C. § 365(d)(3), was

expressed by the court in In re Pudgie's Dev. Of NY, Inc.,

202 B.R. 832 (Bankr. S.D.N.Y. 1996).  In that case, the

court denied a request for attorney's fees as an

administrative expense under section 365(d)(3), reasoning

as follows:

> Given the fact that section 365(d)(3)
> mandates a departure from the normal
> priority of claims, it should be strictly
> construed. While the statutory obligation
> of "timely" performance is unambiguous with
> respect to rent, the obligation with
> respect to counsel fees is not.  The
> language employed in section 365(d)(3)
> suggests a Congressional purpose to grant
> landlords a preferred position with respect
> to those obligations arising under the
> lease in a contractually determined time
> frame.  Thus, the statute refers in the
> first sentence to 'all the obligations . . .
> arising from and after the order for
> relief . . . until such lease is assumed or
> rejected'.  This articulation makes sense
> in the context of the rent obligation; it
> does not with respect to an obligation to
> pay attorneys' fees, which may fortuitously
> arise before or after the time period in
> question.  Similarly, the statute says the
> trustee "shall timely perform", using an
> adverb which is contractually meaningful as
> to rent, but not as to attorneys' fees. The
> legislative history provides further
> support for this interpretation . . . ."

In re Pudgie's Dev. Of NY, Inc., 202 B.R. at 837.

52.  The above reasoning with respect to

section 365(d)(3) is the reasoning that best squares with

Congressional intent to "grant landlords a preferred

position with respect to those obligations arising under

the lease in a contractually determined time frame."  Id.

Allowing attorney's fees claims under the same pretext
stretches that intent beyond meaning.  Consequently, the
Court should deny the Polaris attorney's fees claim.

### C.  Statutory Authority Does Not Support Payment Of The Attorney's Fees Claim.

53.  Polaris' claim for attorney's fees and
costs should be denied because it is not made pursuant to
either sections 506(b) or 503(b)(4) of the Bankruptcy
Code.

54.  Congress has expressly provided creditors
or other entities with the right to be reimbursed
reasonable attorney's fees for post-petition services in
only two sections of the Bankruptcy Code.  The first such
instance is specified in section 506(b), pursuant to
which a creditor holding an oversecured claim may receive
"reasonable fees, costs or charges provided for under the
agreement or State statue under which such [oversecured]
claim arose."  11 U.S.C. § 506(b).  The second instance
is section 503(b)(4), pursuant to which the Court is
directed to allow an administrative expense for
"reasonable compensation for professional services
rendered by an attorney . . .", but which limits such an

expense only to those "entit[ies] whose expense is
allowable under subparagraph (A), (B), (C), (D), or (E)
of" 503(b)(3).  See 11 U.S.C. § 503(b)(4).

55.  By expressly limiting the payment of post-
petition attorney's fees to only those entities
satisfying the requirements of sections 506(b) and
503(b)(4), Congress is presumed to have excluded the
awarding of post-petition attorney's fees under any other
section of the Bankruptcy Code under the principle of
statutory construction of *expressio unius est exclusio
alterius*.  See In re Electric Mach. Enters., 371 B.R. 549,
550 (Bankr. M.D. Fla. 2007) (recognizing that "a number
of courts have focused on the plain language of section
506(b) and applied the legal maxim[] of *expressio unius
est exclusio alterius* to hold that unsecured creditors
are not entitled to post-petition attorney's fees and
costs")(emphasis in original); Bronze Group, Ltd. v.
Sender (In re Hedged-Investments Assocs., Inc.), 293 B.R.
523, 526 (D. Colo. 2003) (analyzing undersecured
creditor's claim for postpetition attorneys' fees and
noting that the language of section 506(b) "demonstrates
Congressional intent to disallow the recovery of post-

petition fees and costs by creditors whose claims are not oversecured").

56.   Therefore, under well established principles of statutory construction, because Polaris' attorney's fees claim is not based on sections 506(b) or 503(b)(4), it cannot be allowed or paid pursuant to section 365(d)(3).

**D.   Polaris Fails To Establish That It Is Entitled To Attorney's Fees Under The Lease Or The Bankruptcy Code.**

57.   Even if the Court were to determine that, in the abstract, a party could obtain attorney's fees upon establishing such a claim, Polaris falls woefully short of meeting its burden to provide any such proof.

**(1)   Polaris is not entitled to attorney's fees under the Lease.**

58.   Polaris has the burden of establishing its entitlement to payment of attorney's fees.  <u>See</u> <u>In re Shangra-La, Inc.</u>, 167 F.3d 843, 849 (4th Cir. 1999) (stating "[e]ntitlement to attorneys' fees, however, is dependent on the terms of the lease and on state law"); Lease at ¶ 32(j) ("This Lease shall be construed in accordance with the laws of the State [Ohio] . . . .");

Painters Supply & Equip. Co. v. Wagner, No. L-07-1320,
2008 WL 203576, at *3 (Ohio Ct. App. Jan. 25, 2008)
("Ultimately, '[t]he burden of establishing the amount
and basis for an award of attorney fees rests with the
party claiming entitlement to the fees.'") (citations
omitted).

59.    The Lease provides that a prevailing party
may recover reasonable and actual attorney's fees and
costs incurred as a result of a party's breach of the
Lease.    See Lease at ¶ 34(f) ("In the event either party
shall be required to commence or defend any action or
proceeding against any other party by reason of any
breach or claimed breach of any provision of this
Lease, . . . the prevailing party in such action or
proceeding shall be entitled to recover from or to be
reimbursed by the other party for the prevailing party's
reasonable and actual attorneys' fees and costs through
all levels of proceedings.") (emphasis added).    Polaris
does not satisfy this burden.

60.    As demonstrated above, there is no breach
of the Lease with respect to the November Stub Rent and
Taxes or the Post-Petition Real Estate Taxes.    Thus, any

32

claim for attorney's fees incurred by Polaris in prosecuting the Motion should be denied.  Moreover, this is Polaris' _third_ attempt to recover immediate payment of its Stub Rent claims.  Surely the Lease does not contemplate payment of attorney's fees and costs for repeatedly bringing the same failed claims.

61.  Accordingly, the Court should deny Polaris' requests for attorney's fees and costs. Furthermore, the Debtors specifically reserve their rights under the Lease to seek attorney's fees from Polaris in connection with the prosecution of the Motion and all prior and future disputes relating to the Lease.

### (2)  Polaris fails to establish it incurred reasonable and actual attorney's fees.

62.  In order to recover attorney's fees under the Lease and applicable law, Polaris must overcome its burden to establish that it is seeking reasonable and actual attorney's fees.  _See_ _Boleman Law Firm, P.C. v. U.S. Trustee_, 355 B.R. 548, 553 (E.D. Va. 2006) ("The burden of proof as to the reasonableness of the requested [attorney's fees] rests with the applicant."); _See also_

33

In re Kyle Trucking, Inc., 239 B.R. 198, 203 (Bankr. N.D.
Ind. 1999) ("the lessor still has the burden of proving
the reasonable amount of those fees.  This requires
information concerning the nature of counsel's services,
the time devoted to the matter and counsel's hourly rate;
the same type of information that one expects in
connection with any request for attorney fees."); In re
Gantos, Inc., 181 B.R. 903, 908 (Bankr. W.D. Mich. 1995)
(denying claimant's request for attorneys' fees, in part,
because claimant "failed to specify what post-petition,
pre-rejection services it provided, [and therefore]
failed to support its claim for attorneys' fees pursuant
to 11 U.S.C. § 365(d)(3)").  Similarly, in In re Kyle
Trucking, the court disallowed claimant's administrative
expense claim for attorney fees under section 365(d)(10)
because the claimant did not provide sufficient
information to prove its claim.  See In re Kyle Trucking,
Inc., 239 B.R. at 203.

     63.  The Motion is entirely bereft of any
detail regarding the alleged attorney's fees.  Polaris
provides no detail regarding the scope of the work
allegedly performed, the number or identity of the

attorneys performing such work, the billing rates charged
for any such work, or the amount of time spent on this
matter.  Polaris does not even provide a range or
estimate of the total amount of attorney's fees it seeks.
It is impossible to determine from the Motion whether the
asserted attorney's fees are actual and/or reasonable.

        64.  Accordingly, Polaris' attorney's fees
claim should be denied.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) sustain this Objection, (ii) deny the Motion and (iii) grant the Debtors such other and further relief as is just and proper.

Dated: February 26, 2009
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP


_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors
in Possession