Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and –

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

Gary T. Holtzer, Esq.
Joseph W. Gelb, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

- and –

Michael A. Condyles (VSB No. 27807)
Kimberly A. Pierro (VSB No. 71362)
KUTAK ROCK LLP
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700

Attorneys for Bank One Delaware, National
Association, n/k/a Chase Bank USA, National
Association

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

-------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **CIRCUIT CITY STORES, INC.**, *et al.*, | : | **Case No. 08-35653 (KRH)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**STIPULATION, AGREEMENT AND ORDER FOR THE**
**REJECTION AND TERMINATION OF CONSUMER CREDIT CARD PROGRAM**
**AGREEMENT**

4813-2767-4371.1

## RECITALS:

A. Chase Bank USA, National Association, successor by merger with Bank One Delaware, National Association ("Chase") and Circuit City Stores, Inc. ("Debtor") are parties to that certain Consumer Credit Card Program Agreement, dated as of January 16, 2004 (as amended from time to time, the "Program Agreement"). Unless otherwise defined, capitalized terms and other terms utilized herein shall have the meanings ascribed to such terms in the Program Agreement. Debtor and any entities designated as Authorized Entities under the Program Agreement shall be referred to, collectively, as "Circuit City."

B. Pursuant to the Program Agreement, Chase has operated a credit card program with Circuit City (the "Program") involving, among other things, the issuance by Chase of both private label credit cards and co-branded credit cards, each bearing the name and/or marks of Circuit City (both private label and co-branded cards, collectively, the "Circuit City Credit Cards") to individuals ("Cardholders"). Additional background facts relating to the parties' relationship may be found in the Initial Stipulation (as defined in Recital D. below) and are incorporated herein by reference.

C. On November 10, 2008, Circuit City and seventeen (17) of its subsidiaries (collectively with Circuit City, the "Debtors") each commenced in this Court cases (collectively, the "Chapter 11 Cases") under chapter 11, of title 11, of the United States Code (the "Bankruptcy Code").

D. On December 11, 2008, Chase and the Debtors entered into that certain Stipulation, Agreement and Order Pursuant to Section 105(a) of the Bankruptcy Code Regarding Credit Card Program and for Related Relief and the Court approved it on December 23, 2008 (the "Initial Stipulation") (Docket Number 1271).

E. As of February 12, 2009, Chase estimates that Circuit City owes to Chase approximately $13,667,000, and Chase estimates that it owes to Circuit City approximately $6,800,000.

F. In accordance with the Initial Stipulation, Circuit City Credit Cards no longer are being accepted at Circuit City.

G. Under the Third Amendment to the Program Agreement, Chase paid to Circuit City a sum of $7,000,000 for its support of Chase's platform conversion. For a variety of reasons, Circuit City still currently houses several years of image data related to the Program that Chase needs to, among other things, meet legal and contractual obligations to customers. Circuit City is in the process of, and has agreed to finish, transferring such data to Chase (such activities, the "Data Project").

H. Chase asserts that it may be paid for amounts owed by Circuit City through deductions from the Reserve (such amounts and future such amounts, "Reserve Deductions"), some of which it has already taken, including:

2

i. chargebacks including customer disputes relating to Circuit City's goods, services and rewards, first payment defaults, and merchandise returns and credits given by Circuit City to Cardholders (estimated to be approximately $4,181,700, as of February 12, 2009),

ii. Circuit City employee fraud, if any, in respect of Chase Credit Cards;

iii. failure to remit to Chase in-store payments on Chase Credit Cards or, if not remitted to Chase, failure to report in-store payments accurately, if any;

iv. Credit Promotions Fees in respect of December, 2008 and January, 2009 (estimated to be approximately $8,732,000);

v. fees in respect of Non-Conforming Promotional Sales (e.g., customer advised of a 18-month interest free promotion and Chase advised of, and charged for, a 12-month interest free promotion), if any;

vi. Circuit City's agreed upon allocation of costs associated with retaining, at Circuit City's request, Stratmar, a third party vendor, to expand the field staff available to train and otherwise provide guidance to Circuit City in respect of the Program (capped at $103,000);

vii. costs associated with the purchase and disposition of credit card plastics and pre-printed "Welcome Kit" materials with Circuit City logo purchased by Chase prior to notification of the Complete Liquidation (as defined in the Initial Stipulation) (capped at $190,000);

viii. costs associated with Chase's assistance, (under that certain agreement set forth in a letter from Daniel P. Tierney to Reginald Hedgebeth, dated as of February 13, 2009, and as subsequently discussed), in the temporary storage and disposition of documents containing personally identifiable information (as required by law and the Program Agreement), including fees and payments by Chase to Iron Mountain on Circuit City's behalf, as well as for Chase's out-of-pocket costs related to arranging and monitoring the process (estimated, in the aggregate, to be approximately $400,000);

ix. the amount of Circuit City's obligation under Section 2.3(b) of the Program Agreement in respect of "Take One" in-store marketing collateral costs for January, 2009 (capped at $85,000); and

3

      x.  Circuit City's mutually agreed upon allocation of costs for statement inserts for January, 2009 (capped at $8,000).

I.      In January 2009, Circuit City commenced a Complete Liquidation..

J.      On January 20, 2009, Chase moved (a) pursuant to section 365(d)(2) of the United States Code (the "Bankruptcy Code"), to compel the rejection of the Program Agreement under which such credit cards were issued, and (b) pursuant to section 362(d) of the Bankruptcy Code, to obtain limited relief from the automatic stay (the "<u>Motion</u>").

K.      On January 27, 2009, the Debtors asserted that they needed more time to analyze the implications of any rejection and termination of the Program Agreement and filed an objection to the Motion.

L.      On January 29, 2009, Chase and the Debtors agreed to adjourn the hearing on the Motion to February 13, 2009 and, during the interim, to work to resolve the Motion amicably.

M.      In light of the Complete Liquidation (as defined in the Initial Stipulation), and after adequate time to consider rejection and termination of the Program Agreement, Circuit City has concluded that it has no further need of or use for the continuance of the Program Agreement and shall reject it.

N.      For good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties have agreed to resolve the Motion as stated herein.

O.      Notice of this Stipulation, Agreement and Order has been given to (i) the Office of the United States Trustee for the Eastern District of Virginia, (ii) counsel to the official committee of unsecured creditors, (iii) counsel to the agents for the Debtors' prepetition lenders, and (iv) counsel to the agents for the Debtors' postpetition lenders.

NOW, THEREFORE, it is hereby STIPULATED, CONSENTED AND AGREED TO, by and among the duly authorized attorneys for the respective parties hereto, as follows:

1.    <u>Agreement Rejection and Termination</u>.  The Program Agreement shall be deemed rejected by Circuit City and terminated as of February 28, 2009.  The foregoing notwithstanding, Circuit City shall complete its obligations in respect of the Data Project.

2.    <u>Due Tos</u>.  Chase may continue to deduct from the Reserve the Reserve Deductions, as provided in the Initial Stipulation, regardless of whether they are characterized as prepetition or postpetition

4

amounts, and will provide Circuit City with notice of such deductions within five (5) Business Days after the end of each calendar month.  For the avoidance of doubt, Chase may deduct from the Reserve any amounts owed after the rejection of the Program Agreement relating to transactions that occurred prior to the rejection of the Program Agreement but only to the extent such amounts do not arise out of the rejection of the Program Agreement.  Chase shall pay to Circuit City the positive balance, if any, of the Reserve promptly after satisfaction of all of the foregoing obligations in accordance with Paragraph 3 below.  With respect to each of the specific categories of Reserve Deductions set forth in subsections (i) through (x) of Recital H above, Circuit City may dispute the accuracy of the specific amounts deducted by Chase (e.g., $10 dollar credit by Chase to Customer X), but agrees that each such category (a) is not Rejection Damages (as defined below), and (b) may be debited against the Reserve as Reserve Deductions.  With respect to any categories of deductions that Chase asserts should be included as Reserve Deductions in addition to those categories listed in subsections (i) through (x) of Recital H above, Circuit City may object to such inclusion on any grounds including, but not limited to, amount and whether or not such amounts are Rejection Damages (as defined below).

3. <u>Reconciliation</u>.  Within five (5) Business Days after February 28, 2009, Chase shall deliver to Circuit City a report indicating the balance of the Reserve and all credits and debits thereto (a "<u>Reserve Report</u>") as of February 28, 2009.  Within five (5) Business Days after April 30, 2009, Chase shall deliver to Circuit City a Reserve Report as of such date and, provided that Circuit City has completed its obligations in respect of the Data Project, shall pay to Circuit City the balance, if positive, of the

5

4813-2767-4371.1

Reserve Account less $2,000,000. If Circuit City has not completed its obligations in respect of the Data Project or the balance of the Reserve Account as of April 30 is less than $2,000,000, the balance of the Reserve, if positive, shall be paid to Circuit City on the later of June 30, 2009 or the date that Circuit City has completed its obligations in respect of the Data Project and a final Reserve Report shall be provided. If Circuit City does not complete the Data Project, Chase shall retain the $2,000,000. The foregoing notwithstanding, Chase shall advise Circuit City of additional deductions from the Reserve as specified in (A), (B) and (C) within five (5) Business Days after making the determinations to take such deductions: (A) if Chase determines to deduct from the Reserve any amounts not included in a category identified in subsections (i) through (x) of Recital H above, (B) the amount deducted as of February 12, 2009 pursuant to subsection (i) of Recital H is greater than 15% of the amount specified for such date in said Recital, or (C) the amount deducted for Credit Promotions Fees in respect of December 2008 and January 2009 specified in subsection (iv) of Recital H is greater than 15% of the amount specified in such Recital for such periods. With respect to any such additional deduction in (A) above, Circuit City may dispute whether the category is a proper Reserve Deduction or a Rejection Damage, and as to (A), (B) and (C) above, the accuracy of the amount deducted by Chase.

4. <u>Rejection Damages</u>. Chase is authorized to file a proof of claim pursuant to section 365 of the Bankruptcy Code and Rule 3002 of the Federal Rules of Bankruptcy Procedure to recover damages resulting from the rejection of the Program Agreement, including attorneys' fees to the extent allowed under the Program Agreement and applicable law, severance

6

4813-2767-4371.1

for employees related to the Program Agreement, expenses relating to closing or modification of facilities to service the Program, step-down costs associated with its contract with Paymentech as a result of early contract termination, and costs associated with early termination of vendor contracts relating to the Program, including contracts with FNI and AT&T (collectively, "Rejection Damages"). In accordance with the Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof, Chase shall have until April 30, 2009 to file such a proof of claim. Circuit City may object to all or part of the amounts and/or items of the Rejection Damages specified in Chase's proof of claim. No claim for rejection damages under this paragraph 4 may be deducted from the Reserve or asserted as an off set or recoupment to amounts Chase owes to Circuit City.

5. Disposition of Accounts. As provided in the Initial Stipulation, Chase may take any actions in respect of Accounts that it determines in its discretion. Such actions may include endorsing the Company's name on checks in payment of Accounts as provided in Section 11.15(a) of the Program Agreement.

6. Notice. The Notice of this Stipulation, Agreement and Order given to the persons identified in Recital O above is sufficient and no further notice, hearing or motion is necessary or required.

7. Effective Date. This Stipulation, Agreement and Order shall become effective as of February 28, 2009, and shall not be stayed by operation of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

7

4813-2767-4371.1

       8.      <u>Binding Effect</u>.  This Stipulation, Agreement and Order shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Dated: Richmond, Virginia
       February 24, 2009

STIPULATED AND AGREED TO:

CIRCUIT CITY STORES, INC., et al.
as Debtors and Debtors in Possession

By Counsel:

McGUIREWOODS LLP


By:  /s/ Douglas M. Foley
      Douglas M. Foley (VSB No. 34364)
      One James Center
      901 E. Cary Street
      Richmond, Virginia 23219
      (804) 775-1000

    -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE 19801
(302) 651-3000

    -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS)
333 West Wacker
Chicago, Illinois 60606-1285
(312) 407-0700


BANK ONE DELAWARE, National Association,
n/k/a CHASE BANK USA, National Association

By Counsel:

KUTAK ROCK LLP

8

4813-2767-4371.1

By: /s/ Michael A. Condyles
Michael A. Condyles (VSB No. 27807)
Bank of America Center
1111 East Main Street, 8th Floor
Richmond, Virginia 23219
(804) 644-1700

-and-

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

* * *

## ORDER

Upon consideration of the foregoing, it is hereby:

ORDERED, that the Stipulation is APPROVED in all respects and incorporated herein so that the recitals contained in the Stipulation are incorporated in this Order as findings of fact and that the agreements contained in the Stipulation are So Ordered; and it is further

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the Stipulation.

February _____, 2009

_____
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

Pursuant to rule 9022-1(C), I hereby certify under penalty of perjury that all necessary parties have endorsed this Stipulation and Order.

Dated: Richmond, Virginia    Respectfully submitted,

February 24, 2009

By:   /s/ Michael A. Condyles
Michael A. Condyles, Esq. (Va. Bar No. 27807)
KUTAK ROCK, LLP
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer, Esq.
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
*Attorneys for Bank One Delaware, National Association, n/k/a Chase Bank USA, National Association*

10

4813-2767-4371.1