Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
Circuit City Stores, Inc.,  :   Case No. 08-35653(KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' OBJECTION TO MOTION FOR AN ORDER GRANTING
ADEQUATE PROTECTION AND GRANTING ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors"),[1] hereby submit this objection (the

"Objection") to the Motion for Entry of an Order Granting

Adequate Protection and Granting Allowance and Payment of

Administrative Expense Claim (D.I. 2115) (the "Motion")

by Cole CC Taunton MA, LLC, Cole CC Aurora CO, LLC, Cole

CC Mesquite TX, LLC and Cole CC Groveland FL, LLC

(collectively, "Cole").  In support of the Objection, the

Debtors respectfully represent:

### BACKGROUND

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition Date"),

the Debtors filed voluntary petitions in this Court for

relief under chapter 11 of the Bankruptcy Code.

2.    On January 12, 2009, the Court entered an

order authorizing the Debtors to conduct auctions for a

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9950 Mayland Drive, Richmond, Virginia 23233.

sale or sales of the Debtors' businesses as a going concern or for liquidation (D.I. 1460).

3.   At the conclusion of the auction, the Debtors determined that the highest and otherwise best bid was that of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC, and Tiger Capital Group, LLC (collectively, the "Agent").  On January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores (D.I. 1634).  The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.

**B.   Cole And The Other Lessors.**

4.   Certain real property lessors moved this Court, with motions or objections to relief requested by the Debtors (collectively, the "Stub Rent Motions"), for immediate payment of post-petition rent for the period from November 10, 2008 through November 30, 2008 (the "Stub Rent Requests").  The Debtors filed omnibus objections to the Stub Rent Motions on December 3, 2008 and December 18, 2008 (together, the "Stub Rent Objections") (D.I.s 641, 1100).

5.    On December 12, 2008, Cole CC Groveland FL, LLC and Cole CC Aurora CO, LLC filed a Motion for an Order Compelling the Debtor to Perform Timely All Lease Obligations Including the Payment of Post-Petition Rent Pursuant to 11 U.S.C. §§ 365(d)(3) (D.I. 975).   On January 12, 2009, Cole Taunton MA, LLC filed its Motion for an Order Compelling the Debtor to Perform Timely All Lease Obligations Including the Payment of Post-Petition Rent Pursuant to 11 U.S.C. §§ 365(d)(3) (D.I. 1465).

6.    The Stub Rent Requests (including those of Cole) and Stub Rent Objections were considered by the Court on December 22, 2008.  After hearing the arguments, the Court denied the Stub Rent Motions, concluding that although the Stub Rent Requests are accorded priority treatment under sections 503(b)(3) and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), the Debtors are not obligated to pay the Stub Rent Requests immediately pursuant to Bankruptcy Code section 365(d)(3) or otherwise.  Instead, the Court concluded that the Stub Rent Requests are administrative expenses that may be paid by the Debtors upon the effective date of a confirmed plan pursuant to sections 507(a) and

4

1129(a)(9)(A) of the Bankruptcy Code, or such earlier

date as the Court may direct for cause.  Accordingly, the

Court denied the Stub Rent Motions, without prejudice to

the landlord's right to seek earlier payment for their

Stub Rent Request for cause.  See December 22, 2008

Transcript, at pp. 82-83.

7.   On January 2, 2009, in response to the

Court's decision, certain lessors filed the Landlords'

Motion for Rehearing and/or Reconsideration and/or to

Alter or Amend the Judgment Regarding Payment of November

Rent, and Memorandum in Support Thereof (D.I. 1347) (the

"Reconsideration Motion").  On January 14, 2009, the

Debtors filed their Objection to the Reconsideration

Motion (D.I. 1514).

8.   On January 16, 2009, the Court denied the

Reconsideration Motion and reiterated that "Debtors were

not obligated to pay the stub rent immediately pursuant

to Section 365(d)(3)."  See January 16, 2009 Transcript,

at pp. 55-58.

9.   On January 26, 2009, the Court issued its

Findings of Fact and Conclusions of Law from Hearing Held

December 22, 2008 on Motions to Compel Payment of

Postpetition Rent (the "Findings and Conclusions," D.I. 1781), clarifying its decision regarding post-petition rental obligations for the period from November 10, 2008 through November 30, 2008 (the "Stub Rent").  Explaining its denial of the Stub Rent Motions, the Court stated that "the Debtors should not be ordered to pay the Stub Rent at this time on the basis that such rent is not entitled to a super-priority but rather to priority only pursuant to Section 507(a) of the Bankruptcy Code." Findings and Conclusions at ¶ 1.

10.  On February 12, 2009, the Court issued its Memorandum Opinion (the "Opinion") supplementing its rulings from the December 22, 2008 hearing (D.I. 2107). The Court reiterated its decision that the Debtors are not required to pay the Stub Rent immediately and that the Stub Rent claims shall be payable upon confirmation of a plan pursuant to section 1129(a)(9)(A) of the Bankruptcy Code.

**C.    The Cole Leases.**

11.  Each of the four Cole entities is party to a lease with Circuit City Stores, Inc. ("Circuit City"). Cole CC Taunton MA, LLC ("Cole Taunton") leases property

in Taunton, MA (the "Taunton Property")to Circuit City.

Cole CC Aurora CO, LLC ("Cole Aurora") leases property in

Aurora, CO (the "Aurora Property") to Circuit City.  Cole

CC Mesquite TX, LLC ("Cole Mesquite") leases property in

Mesquite, TX (the "Mesquite Property") to Circuit City.

And Cole CC Groveland FL, LLC ("Cole Groveland") leases

property in Groveland, FL (the "Groveland Property") to

Circuit City.

        12.   The Debtors are currently reviewing,

evaluating and marketing their remaining unexpired leases

and subleases, including their leases with the Cole

entities.  The Debtors' leases for the Taunton Property,

the Aurora Property and the Mesquite Property are subject

to the Bidding Procedures Order (D.I. 2242) and these

leases are identified in the Bidding Procedures Order as

March leases (each, a "March Lease").  The March Leases

are scheduled for auction on March 10, 2009 with a sale

hearing scheduled for March 13, 2009.  Pursuant to

paragraph 11 of the Bidding Procedures Order, any March

Lease for which no potential purchaser has submitted a

bid and the Debtors have not filed a rejection notice,

shall be deemed rejected as of the later of March 31,

2009, the sale termination date, or the date that the
Debtors surrender the premises to lessor by fulfilling
the rejection requirements.

13.  The Debtors' lease with Cole Groveland for
the Groveland Property is not subject to the Bidding
Procedures Order nor is it subject to any pending lease
rejection motion.

### SUMMARY OF ARGUMENT

14.  By the Motion, Cole alleges that the
Debtors owe post-petition real estate taxes (the "Taxes")
to each of the Cole entities and asks for three different
forms of relief.  First, Cole requests that the Court
order the Debtors to <u>immediately</u> pay real estate taxes
owed (i) to Cole Mesquite that accrued during the period
from the Petition Date through November 30, 2008 in the
amount of $11,233.50 (the "Mesquite Stub Taxes") and
those accruing during the month of December 2008 in the
amount of $15,936.07 and (ii) to Cole Taunton, for the
period from January 1, 2009 through March 31, 2009, in
the amount of $20,020.45 (the "Taunton Taxes").  Second,
Cole asks the Court to grant allowed administrative
expense claims on account of monthly real property tax

obligations, payable during each month of 2009 that the Debtors remain in possession of the respective properties (the "2009 Taxes") (i) to Cole Mesquite, in the amount of $15,936.07 per month, (ii) to Cole Aurora, in the amount of $5,808.05 per month and (iii) to Cole Groveland, in the amount of $25,397.52 per month.  Finally, Cole asks that the Court order the Debtors to provide adequate protection of Cole's property interests by making monthly payments to Cole retroactive to January 2009 of (i) $15,936.07 for the Mesquite Property, (ii) $5,808.05 for the Aurora Property and (iii) $25,397.52 for the Groveland Property.  See Motion at ¶¶ A-G.  The Debtors object to each of Cole's requests.

15.  First, pursuant to the Court's Opinion, the request for immediate payment of the Mesquite Stub Taxes should be overruled.  As for the real estate taxes owed to Cole Mesquite for the period from December 1, 2008 through December 31, 2008, the Debtors acknowledge that $16,197.32 is currently due and accrued and have paid $16,197.32 to Cole Mesquite via wire transfer.

16.  Second, the Debtors have no obligation to pay the Taunton Taxes to the extent these taxes have not

yet accrued under Bankruptcy Code section 365(d)(3).

Even assuming arguendo that the Taunton Taxes are

entitled to administrative expense priority, they need

not be paid until confirmation of a plan, consistent with

the Court's Opinion and Bankruptcy Code section 507.  As

for the Taunton Taxes accruing from the period from

January 1, 2009 through February 28, 2009, the Debtors

acknowledge that $11,760.49[2] is currently due and accrued

and have paid $11,760.49 to Cole Taunton via wire

transfer.  Similarly, the Debtors acknowledge that they

will pay $199.33 per day for each day in March, once a

determination is made as to how many days the Debtors

occupied the Taunton Property.

17.  Third, Cole's request for allowance of

administrative expense claims on account of the 2009

Taxes should be denied because the Debtors have no timely

obligation to pay the 2009 Taxes as they are not yet due

---

[2]   Pursuant to a separate agreement between the Debtors and Cole
Taunton, Cole agreed to accept a total of $36,078.80 for real
estate taxes accruing from January 1, 2009 through June 30, 2009.
The figure owing for January and February 2009 is derived by
dividing $36,078.80 by 181 (the number of days from January 1,
2009 through June 30, 2009), which equals $199.33 accruing each
day, and then multiplying $199.33 by 59, the number of days in
January and February.

and payable under the leases pursuant to section 365(d)(3).  Moreover, the 2009 Taxes are not administrative expenses as they are neither actual nor necessary as required by Bankruptcy Code section 503(b)(1).

18.  Finally, Cole's request for adequate protection should be denied because the Debtors have already provided any adequate protection that may be deemed necessary by paying all lease obligations pursuant to section 365(d)(3) as they become both due and accrued.

19.  For these reasons, as set forth more fully below, the Motion should be denied.

**OBJECTION**

**I.   COLE'S REQUEST FOR IMMEDIATE PAYMENT OF THE MESQUITE STUB TAXES SHOULD BE DENIED PURSUANT TO THE COURT'S MEMORANDUM OPINION.**

20.  Courts in this district, including this Court in its Opinion, have consistently held that authorizing immediate payment of administrative expenses to landlords would be tantamount to giving landlords "super-priority" claims.  See, e.g., Opinion at 13 ("decline[ing] to order immediate payment of the Stub Rent" because "[i]f the Court were to order otherwise, it

would be elevating the Lessors' administrative claim to super-priority status"); In re Trak Auto Corp., 277 B.R. 655, 668 (Bankr. E.D. Va. 2002) rev'd. on other grounds, 367 F.3d 237 (4th Cir. 2004) (same); In re Virginia Packaging Supply Co., 122 B.R. 491, 494 (Bankr. E.D. Va. 1990) (same).  However, there is nothing in the Bankruptcy Code that supports treating landlords as super-priority administrative creditors.  See Virginia Packaging Supply, 122 B.R. at 495 (concluding that "super-priority" treatment was not intended by the Bankruptcy Code).  Accordingly, courts in this District have repeatedly rejected immediate payment requests.  See Trak Auto, 277 B.R. at 668.

21.  Cole seeks immediate payment of the Mesquite Stub Taxes.  However, the Court has already ruled that obligations for rent and related expenses, including real estate taxes, from the Petition Date through November 30, 2008 are not entitled to immediate payment.  See Opinion at 2 n.3 ("As used herein, Stub Rent includes all amounts owing under the Leases, including, but not limited to, common area maintenance charges, real property taxes, and such other charges as

12

may be asserted under the Leases for the period from
November 10 to November 30, 200[8].") (emphasis added);
Opinion at 12 ("the time for timely performance of the
obligation to pay Stub Rent is the same as for all other
administrative expense claims upon confirmation of the
plan pursuant to 11 U.S.C. § 1129(a)(9)(A)").  Allowance
and payment of the Mesquite Stub Taxes should await
confirmation of a plan pursuant to 11 U.S.C.
§ 1129(a)(9)(A) to facilitate equal treatment of holders
of other administrative claims.  See id.  As no plan has
yet been confirmed, Cole is not entitled to immediate
payment of the Mesquite Stub Taxes.

        22.  Accordingly, the Court should deny Cole's
request for the immediate payment of the Mesquite Stub
Taxes.

## II.  COLE'S REQUEST FOR IMMEDIATE PAYMENT OF THE UN-ACCRUED TAUNTON TAXES SHOULD BE DENIED BASED ON THIS JURISDICTION'S ADOPTION OF ACCRUAL METHOD.

        23.  The Motion requests the immediate payment
of the Taunton Taxes, defined above as Cole Taunton's
real estate tax liability from January 1, 2009 through
March 31, 2009, taxes that are due to the respective
governmental entity on February 1, 2009.  The Debtors

object to Cole's request for payment of the taxes
attributable to the month of March (the "Un-Accrued
Taunton Taxes") because, though billed on February 1,
2009, these taxes have not yet accrued as of the time of
filing of this Objection and may not all accrue if the
Debtors reject the lease associated with Taunton Property
before March 31, 2009.

24.  Cole's request for immediate payment of
the Un-Accrued Taunton Taxes implicitly asks the Court to
adopt the billing date method.  However, courts in this
jurisdiction have consistently held that the accrual
method should be used to determine a debtor's liability
to its landlord for real estate taxes.  See Opinion at 7;
Trak Auto, 277 B.R. at 663 ("Based upon the fairness that
results from the accrual method, we adopt that
approach."); In re Best Prods. Co., Inc., 206 B.R. 404,
407 (Bankr. E.D. Va. 1997) ("[D]ebtor's obligation under
the lease to pay its share of real estate taxes as
'additional rent' accrues on a daily basis.").  As the
Trak Court explained, "[a]dopting a method where debtor's
liability would turn solely on when bills are issued has
the potential to create a windfall for a landlord."  Trak

Auto, 277 B.R. at 663.  In this instance, ordering the Debtors to pay the Un-Accrued Taunton Taxes would result in exactly such a windfall - the Debtors will likely reject their lease with Cole Taunton before March 31, 2009, eliminating Cole's right to receive payment of any lease obligations and yet Cole would have been paid for the post-rejection period through March 31, 2009.

25.  Even if this Court ultimately decides that the Un-Accrued Taunton Taxes constitute a current obligation of the Debtors under section 365(d)(3) and, consequently, should be accorded administrative expense treatment under section 503(b)(1), as discussed above, this Court has previously ruled that the immediate payment of section 503(b) claims is not warranted.  See Opinion at 12-14 (acknowledging administrative claims for section 365(d)(3) Stub Rent obligations but refusing to order immediate payment as such would grant the landlords a super-priority claim in contravention of the Bankruptcy Code); see also Trak Auto, 277 B.R. at 668.

26.  Accordingly, the Court should deny Cole's request for immediate payment of the Un-Accrued Taunton Taxes.

III. **COLE'S REQUEST FOR ALLOWANCE OF ADMINISTRATIVE
     EXPENSE CLAIMS ON ACCOUNT OF THE 2009 TAXES SHOULD
     BE DENIED.**

   A.   **Cole Is Not Entitled To Administrative Expense
        Claims On Account Of 2009 Taxes Not Due Under
        The Leases.**

        27.   The Motion requests the allowance of
administrative expense claims on account of the 2009
Taxes, defined above as the Debtors' monthly real
property tax obligations, payable during each month of
2009 that the Debtors remain in possession of the
respective properties (the "2009 Taxes").  This request
should be denied because the 2009 Taxes are not due under
the terms of the leases.  Cole implicitly admits this
much by requesting allowance of administrative expense
claims for the 2009 Taxes rather than immediate payment.

        28.   Pursuant to the terms of the Debtors'
lease with Cole Mesquite (the "Mesquite Lease"), the
Debtors have no obligation to reimburse Cole Mesquite for
2009 Taxes until such taxes are due to the respective
governmental entity.  Specifically, the Mesquite Lease
provides that:

        At such intervals as Landlord is required to
        pay the Real Estate Taxes, Tenant shall pay
        Real Estate Taxes levied against the Land. . . .

16

> Tenant shall pay Real Estate Taxes within
> thirty (30) days after Tenant's receipt of
> Landlord's statement therefore (but in no event
> more than fifteen (15) days before Landlord
> shall either lose the benefit of any discount
> given by the taxing authority for early payment
> or incur any penalty for late payment),
> accompanied by the tax bill on the basis of
> which such statement is rendered.

Mesquite Lease at ¶ 9(b).

29.   Cole Mesquite has not presented any tax bills to the Debtors covering the 2009 tax period.  The only bill that Cole Mesquite presented to the Debtors was the bill requesting payment of real estate taxes from 2008.  And upon information and belief, the 2009 Taxes are not due to the respective governmental entity until January 31, 2010.  Accordingly, pursuant to the Court's prior rulings, the Debtors are not obligated to pay the 2009 Taxes because the 2009 Taxes are not due.

30.   Pursuant to the terms of the Debtors' lease with Cole Aurora (the "Aurora Lease"), the Debtors have no obligation to pay the 2009 Taxes until such taxes are due to the respective governmental entities, before interests and penalties become due.  Specifically, the Aurora Lease provides that:

> Tenant shall, . . . before interest and penalties are due thereon, pay and discharge all Taxes.  Landlord shall promptly deliver to Tenant any bill or invoice it receives with respect to any Tax. . . . In the event that any assessment against any of the Leased Premises may be paid in installments, Tenant shall have the option to pay such assessment in installments; and in such event, Tenant shall be liable only for those installments which become due and payable in respect of the Term.

Aurora Lease at ¶ 7(a).

31.  Cole Aurora has not presented any tax bills to the Debtors covering the 2009 tax period.  The only bill that Cole Aurora presented to the Debtors was the bill requesting payment of real estate taxes from 2008.  Upon information and belief, the 2009 Taxes are not due to the respective governmental entity until April 30, 2010.[3]  Accordingly, pursuant to the Court's prior rulings, the Debtors are not obligated to pay the 2009 Taxes because the 2009 Taxes are not due.

---

[3]  The tax authority governing the Aurora Property provides the option of paying the 2009 Taxes in two installments, the first due March 3, 2009.  However, pursuant to the Aurora Lease, it is the Debtors that have the right to accept this option and pay in installments.  In this instance, the Debtors have not elected to pay the taxes in installments.  Accordingly, under the Aurora Lease, the 2009 Taxes are due on April 30, 2009.

32.   The applicable provision of Debtors' lease with Cole Groveland (the "Groveland Lease") is identical to the Aurora Lease.   See Groveland Lease at ¶ 7(a). Thus, pursuant to the terms of the Groveland Lease, the Debtors have no obligation to pay the 2009 Taxes until such taxes are due to the respective governmental entities, before interests and penalties become due. Cole Groveland has not presented any tax bills to the Debtors covering the 2009 tax period.  The only bill that Cole Groveland presented to the Debtors was the bill requesting payment of real estate taxes from 2008.  Upon information and belief, the 2009 Taxes are not due to the respective governmental entity until March 31, 2010. Accordingly, pursuant to the Court's prior rulings, the Debtors are not obligated to pay the 2009 Taxes because the 2009 Taxes are not due.

33.   The terms of the Mesquite Lease, the Aurora Lease and the Groveland Lease do not require an accelerated payment of the 2009 Taxes.  Accordingly, the Court should deny Cole's request for allowance of administrative expense claims on account of the 2009

Taxes, taxes as they are not due under the terms of the

Leases.

**B.    Neither Section 365(d)(3) Nor 503(b)(1) Justify An Administrative Expense Claims On Account Of 2009 Taxes.**

**(1)    Bankruptcy Code section 365(d)(3) does not require payment of the 2009 Taxes.**

34.    Pursuant to section 365(d)(3) of the

Bankruptcy Code, the Debtors must "timely perform all the

obligations of the debtor . . .  arising from and after

the order for relief under any unexpired lease of

nonresidential real property. . . ." 11 U.S.C. 365(d)(3).

35.    As this Court has pointed out, the

Bankruptcy Code does not define what it means to "timely"

perform. <u>See</u> Opinion at 9 ("*Timely* is not a defined term

in the Bankruptcy Code."). However, the Court ruled that

"timely" as used in section 365(d)(3) "refers to the time

of performance under the lease terms."  Opinion at 12.

Thus, as this Court has already ruled, pursuant to

section 365(d)(3), the Debtors have an obligation to make

immediate payment for administrative expenses only for

obligations that have both accrued and are due under the

terms of the Leases. <u>See</u> Opinion at 12 (holding that the

accrual method "does not change the temporal element of
the lease term regarding payment — the time for
performance of the payment obligation"); In re Pudgie's
Development of NY, Inc., 239 B.R. 688, 694 (S.D.N.Y. 1999)
("The plain meaning of section 365(d)(3) requires that
the landlord obtain payment as lease obligations become
due."); In re Ernst Home Center, Inc., 209 B.R. 955, 964
(W.D. Wash. 1997) (refusing to order debtor to pay taxes
not yet due under the lease because "[s]ection 365(d)(3)
does not require acceleration of tax payments," but
rather payment only when such obligations are due under
the lease); see also In re Metals USA, Inc., 2004 WL
771096 at *5 (Bankr. S.D. Tex. Jan. 15, 2004) (denying
landlord rent where not yet due and payable under
conditions of the lease).

36.  Moreover, granting Cole allowed
administrative expense claims on account of obligations
that are not yet due under the Leases would not serve the
purpose behind the enactment of section 365(d)(3).  As
the Fourth Circuit has recognized, "[t]he intent behind
the enactment of section 365(d)(3) was to prevent
landlords from becoming involuntary creditors of the

debtor's estate," such that landlords "cannot be required to provide post-petition services without payment for such current services." Trak Auto, 277 B.R. at 662. Where the 2009 Taxes are not due to Cole under the Leases, nor to the respective governmental entity from Cole, Cole is not being deprived of any of its rights. Thus, Cole can hardly be considered a creditor at all, much less an involuntary creditor. See id. at 663 (noting that a debtor's taxes are a sunk cost of the landlord, not a current expense of allowing the debtor to remain in possession of the leased premises and, as a corollary, that the debtor's continued occupancy did not increase the landlord's burden or make the landlord an involuntary creditor).

37. Finally, refusing to grant an allowed administrative expense on account of obligations under section 365(d)(3) before such obligations are both due and accrued respects the longstanding principle that bankruptcy law does not alter the contractual rights of parties absent some overriding federal interest. See Tidewater Finance Co. v Kenney, 531 F.3d 312 (4th Cir. 2008) (refusing to grant creditor rights greater than

those afforded under contract with debtor); <u>Butner v.</u>
<u>United States</u>, 440 U.S. 48, 55 (1979) ("Unless some
federal interest requires some different results, there
is no reason why [property] interests should be analyzed
differently simply because an interested party is
involved in a bankruptcy proceeding.")  The principal of
respecting non-bankruptcy contract rights is particularly
important in this instance - not only is there no
overriding federal interest in allowing Cole to receive
payment of the 2009 Taxes from the Debtors, but the
federal interests promoted by the Bankruptcy Code demand,
again, that Cole must not receive super-priority over
other administrative expense creditors.  <u>See</u>, <u>e.g.</u>,
Opinion at 13; <u>Trak Auto</u>, 277 B.R. at 668; <u>Virginia</u>
<u>Packaging Supply</u>, 122 B.R. at 495.

        38.  As stated above, the 2009 Taxes are not
yet due under the Leases.  Therefore, the Court should
deny Cole's request for allowance of administrative
expense claims on account of the 2009 Taxes.

> **(2)   The 2009 Taxes do not constitute
> administrative expenses under Bankruptcy
> Code section 503(b)(1).**

39.   Administrative expense claims under
Bankruptcy Code section 503(b)(1)(A) are limited to "the
actual, necessary costs and expenses of preserving the
estate."  11 U.S.C. § 503(b)(1)(A).  For an expense to be
granted administrative priority under Bankruptcy Code
section 503(b), the Court must find that the expense was
an <u>actual</u> expense of the estate <u>and</u> that payment of the
expense is <u>necessary</u> to preserve the Debtors' estate.
<u>See</u> <u>Ford Motor Credit Co. v. Dobbins</u>, 35 F.3d 860, 866
(4th Cir. 1994) ("The modifiers 'actual' and 'necessary'
must be observed with scrupulous care[.]") (citation
omitted).

40.   As the party filing an administrative
claim, Cole bears the burden of proving that its claim is
entitled to administrative priority under Bankruptcy Code
section 503.   <u>See</u>, <u>e.g.</u>, <u>In re Merry-Go-Round Enterprises
V. Simon Debartolo Group</u>, 180 F.3d 149, 157 (4th Cir.
1999) (holding that the creditor "has the burden of
proving that its administrative claim . . . is an actual

and necessary expense"); Ford Motor Credit Co., 35 F.3d at 866 (same).

41.   Moreover, "[a]dministrative expenses are narrowly construed because they run counter to the central premise of bankruptcy distributions which is a pro rata distribution among all creditors." In re Computer Learning Ctrs., Inc., 298 B.R. 569, 577 (Bankr. E.D. Va. 2003).

42.   The 2009 Taxes requested in the Motion are not "actual" costs of preserving the estate because Cole has not yet been billed for them.  See Trak Auto, 277 B.R. at 664, (stating that an amount claimed as an administrative expense "must be for an actual expense and cannot be based on an estimate"); see also In re HNRC Dissolution Co., 371 B.R. 210, 225 (E.D. Ky. 2007), aff'd 536 F.3d 683 (6th Cir. 2008) (finding that expenses are not "actual" because they are "not yet realized"); In re Federated Dept. Stores, Inc., 270 F.3d 994, 1001 (6th Cir. 2001) ("[A] tax is incurred when it accrues and becomes a fixed liability.").

43.   Cole has absolutely no knowledge as to its 2009 real estate tax liability.  Despite this lack of

knowledge, the Motion specifically seeks $15,936.07 per month for the Mesquite Property, $5,808.05 per month for the Aurora Property and $25,397.52 per month for the Groveland Property.  See Motion at ¶¶ E-F.  Cole appears to have arrived at these figures by using an estimation based on its 2008 real estate tax liability.

44.  Nor are the 2009 Taxes "necessary" to preserve the estate because before the Debtors would be obligated to pay such Taxes under the Lease, the Debtors will have likely rejected the Lease.  Cf. HNRC Dissolution, 371 B.R. at 226 (finding no administrative expense priority when the claimed expenses would be realized only after the estate had terminated).  Indeed, the Debtors would violate their duties to preserve their estates by prematurely pay the 2009 Taxes before they are due.

45.  Accordingly, the Court should deny Cole's request for allowance of administrative expense claims on account of the 2009 Taxes under section 503(b)(1).

**IV.  COLE'S REQUEST FOR ADEQUATE PROTECTION SHOULD BE DENIED BECAUSE NO EVIDENCE SUGGESTS THE DEBTORS WILL ABROGATE THEIR OBLIGATIONS UNDER SECTION 365(d)(3).**

46.   Though Cole offers no statutory basis or legal authority for its request for adequate protection, Cole is presumably relying on Bankruptcy Code section 363(e).  Section 363(e) states that "on request of an entity that has an interest in property used, sold, or leased . . . by the trustee, the court . . . shall . . . condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

47.   The Debtors disagree, as a general principle, that landlords are entitled to seek adequate protection of their interests under section 363(e).  See In re O-Jay Foods, Inc., 110 B.R. 895, 897-98 (Bankr. D. Minn. 1989); In re Wheeling-Pittsburgh Steel Corp., 54 B.R. 385, 390 (Bankr. W.D. Pa. 1985); In re Sweetwater, 40 B.R. 733, 745 (Bankr. D. Utah 1984).  Rather landlords must rely solely on the protections granted to them in section 365.  See Wheeling-Pittsburgh, 54 B.R. at 390; Sweetwater, 40 B.R. at 745.

48.   In 1994, Section 363(e) was amended to add the language stating that the subsection "also applies to property that is subject to any unexpired lease of personal property."  11 U.S.C. § 363(e).  As multiple courts have reasoned, the explicit inclusion of personal property lessors - without the inclusion of real property lessors - suggests that Congress did not intend for section 363(e) to grant real property lessors the right to adequate protection.  See Sweetwater, 40 B.R. at 743. This interpretation is appropriate given that a debtor need not make lease payments to personal property lessors during the first 60 days of the case, whereas the debtor is not similarly excused from performing current obligations under real property leases.  Compare 11 U.S.C. § 365(d)(10) with 11 U.S.C. § 365(d)(3).  Moreover, section 361, specifying appropriate forms of adequate protection may be provided, refers sections 362, 363 and 364 but does not refer to section 365, that which governs unexpired nonresidential real property leases.  11 U.S.C. § 361.

49.   Even assuming section 363(e) grants
landlords the right to seek adequate protection, Cole's
request should be denied.

50.   As the basis for its request for adequate
protection, Cole merely asserts that the Debtors are in
the process of liquidating and going out of business and
that the Debtors have not even suggested administrative
expense claims will be paid in full.   Motion at 3.   First,
the Debtors believe they have no obligation to suggest
administrative expense claims will be paid in full.   The
Debtors could not make such an assertion at this point in
time when the administrative claim bar date has not even
been established.   And, if, in the end, the Debtors could
not pay all administrative expense claims in full, there
is no justification for providing Cole with super-
priority treatment as would result if the Court granted
Cole's adequate protection request.

51.   Ironically, it appears that court-ordered
adequate protection would not even provide what Cole its
requested relief - that is, full payment of taxes not yet
due.   See Ernst Home, 209 B.R. at 966-67 ("[A]dequate
protection is not meant to be a guarantee that a creditor

29

is to be paid in full." (citing In re Mellor, 734 F.2d
1396, 1401 (9th Cir. 1984); In re Martin, 761 F.2d 472,
477 (8th Cir. 1985)).

     52.   The Debtors have already or are arranging
to make payment for all obligations under the Leases that
are both accrued and due.  Accordingly, the Debtors have
satisfied section 365(d)(3).  Moreover, courts in other
jurisdictions have held that far less than full payment
due under a lease constitutes adequate protection.  See
In re Reice, 88 B.R. 676, 685-86 (Bankr. E.D. Penn. 1988)
(refusing to hold that "adequate protection requires
payment of the full monthly lease payments" while
accepting debtor's payments amounting to just more than
half of the payments originally due as adequate
protection); Ernst Home, 209 B.R. at 966 (denying
landlord's request that funds be escrowed or claims be
given section 364(c)(1) priority because landlord was
adequately protected under section 365(d)(3) and section
507(a) based on debtor's ability to pay real estate taxes
and fact that debtor was current on lease payments); cf.
In re RB Furniture, Inc., 141 B.R. 706, 713 (Bankr. C.D.
Cal 1992) (noting that to the extent that rent is not

<u>paid</u>, section 363(e) requires some form of adequate

protection, possibly less than required under the lease).

53.   Accordingly, for the reasons stated above,

the Court should deny Cole's request for adequate

protection.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) sustain this Objection, (ii) deny the Motion and (iii) grant the Debtors such other and further relief as is just and proper.

Dated: February 27, 2009
      Richmond, Virginia

                  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                  Gregg M. Galardi, Esq.
                  Ian S. Fredericks, Esq.
                  P.O. Box 636
                  Wilmington, Delaware 19899-0636
                  (302) 651-3000

                        - and -

                  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
                  Chris L. Dickerson, Esq.
                  333 West Wacker Drive
                  Chicago, Illinois 60606
                  (312) 407-0700

                        - and -

                  MCGUIREWOODS LLP

                  /s/ Douglas M. Foley      .
                  Dion W. Hayes (VSB No. 34304)
                  Douglas M. Foley (VSB No. 34364)
                  One James Center
                  901 E. Cary Street
                  Richmond, Virginia 23219
                  (804) 775-1000

                  Counsel for Debtors and Debtors in Possession