Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
                              :
          Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a) AND 365(a) AND BANKRUPTCY RULE 6006
AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES OF
PERSONAL PROPERTY BETWEEN THE DEBTORS, INTERNATIONAL
BUSINESS MACHINES CORPORATION AND IBM CREDIT LLC**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion") for entry of

an order, pursuant to sections 105(a) and 365(a) of

title 11 of the United States Code (the "Bankruptcy

Code") and Rule 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), authorizing the

Debtors to reject certain unexpired leases of personal

property between the Debtors International Business

Machines Corporation and IBM Credit LLC (together, "IBM")

associated with personal property located, stored, or

used at the Remaining Locations (as defined herein) set

forth on Exhibit A, which personal property leases

include (without limitation) those set forth on Exhibit

B (collectively, the "IBM Leases" or the "Leases"),[2] and

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for Circuit City Stores West Coast, Inc. is 9250 Sheridan
      Boulevard, Westminster, Colorado 80031.  For all other Debtors,
      the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2]   Exhibit B sets forth the list of IBM Leases associated with the
      Locations based on the Debtors' latest information.  However, the
      Debtors believe that certain Supplements associated with the
      Locations may have been inadvertently omitted.  To ensure that
                                                              *(cont'd)*

any guaranties thereof, effective as of the Rejection

Date (as defined herein).  In support of the Motion, the

Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this district is proper

under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105(a) and

365(a) and Bankruptcy Rule 6006.

### BACKGROUND

**A.    The Chapter 11 Cases.**

3.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

_____

*(cont'd from previous page)*
    all Supplements associated with the Locations are rejected, the
    Debtors are seeking to reject all IBM Leases for Equipment stored
    in or used at the Locations listed on <u>Exhibit A</u>, whether or not
    such Leases are specifically listed by Supplement number on
    <u>Exhibit B</u>.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going-out-of-business sales (the "GOB Sales") pursuant to the Agency Agreement at the Debtors' remaining stores.

**B.    The IBM Leases.**

7.    Circuit City and IBM are parties to those certain Term Lease Master Agreements (the "Master Lease Agreements"), entered into on December 23, 2005 and April 27, 2007, as amended from time to time, and those

4

certain supplements to the Master Lease Agreements (each, a "Supplement"),[3] pursuant to which IBM leases certain point-of-sale and other equipment to Circuit City. Copies of the Master Lease Agreements are attached hereto as Exhibit C and Exhibit D.

8.    Pursuant to the Master Lease Agreements and certain of the Supplements, Circuit City leased equipment from IBM, which has been or currently is used in Circuit City's retail stores.

9.    As set forth above, on January 16, 2009, the Court authorized the Debtors' entry into the Agency Agreement.  Pursuant to the Agency Agreement, the Agent has commenced GOB Sales to liquidate the merchandise at each of the Debtors' 567 remaining retail stores and distribution centers (the "Closing Locations").  The Agency Agreement provides that the Agent will pay occupancy expenses for the Closing Locations on a per diem basis while the GOB Sales are conducted.  The

---

[3]   Each Supplement is a contract entirely separate from and severable from all other Supplements.  Each Supplement fully incorporates the terms of the Master Lease Agreements and, hereinafter, references to a Supplement shall include the Master Lease Agreements as incorporated therein.

Agency Agreement further provides that the Agent may complete GOB Sales at Closing Locations, vacate the Closing Locations, and return responsibility for occupancy expenses at such Closing Locations upon ten (10) days written notice to the Debtors.

10. On February 23, 2009, the Agent provided notice to the Debtors that it planned to complete the GOB Sale and vacate one of the Closing Locations on March 4, 2009 (the "March 4 Closing Location"). On February 26, 2008, the Agent provided notice to the Debtors that it intended to complete GOB Sales and vacate all of the remaining roughly 503 Closing Locations on March 8, 2009 (the "March 8 Closing Locations" and together with the March 4 Closing Location, the "March Closing Locations"). The date on which the Agent intends to vacate each March Closing Location is referred to herein as the "Sale Termination Date" for that Location.

11. Equipment leased from IBM pursuant to the Master Lease Agreements and the Supplements is located at all or substantially all of the March Closing Locations (the "Equipment"). Following the Sale

Termination Date at each March Closing Location, the
Debtors will have no need for the Equipment in such
Locations.

12.   On March 5, 2009, the Court entered the
Stipulation, Agreement and Order By and Among the
Debtors, International Business Machines Corporation and
IBM Credit LLC Regarding Sale of Equipment, Rejection of
Equipment Leases and for Related Relief (the
"Stipulation").  Pursuant to the Stipulation, IBM sold
certain of its equipment to the Debtors and the Debtors
rejected the Supplements associated therewith.
Accordingly, the Debtors now seek to reject the
Supplements associated with the Equipment used in or
kept at the remaining March Closing Locations, listed on
Exhibit A hereto (the "Remaining Locations" and the
Equipment therein, the "Remaining Equipment"), including
(but not limited to) the Supplements listed on Exhibit B
hereto.

**C.   Rejection Of The March Closing Locations' Leases.**

13.   In addition, on February 19, 2009, the
Court approved certain procedures for the sale or
rejection of the Debtors' real property leases for the

7

Closing Locations (D.I. 2242, the "Lease Procedures Order").  The Lease Procedures Order authorizes the Debtors solicit bids and conduct auctions with respect to the Debtors' real property leases.  The Lease Procedures Order further provides procedures whereby the Debtors may reject those real property leases for which the Debtors do not receive bids or which the Debtors otherwise wish to reject by providing seven-days written notice to the landlord (the "Rejection Notice"), without further notice or hearing.

14.  Pursuant to the Lease Procedures Order, the Debtors have provided a Rejection Notice to the landlord for the March 4 Closing Location that they intend to reject the lease for that Location on March 6, 2009.  The Debtors have also provided Rejection Notices to the landlords for the March 8 Closing Locations, pursuant to which they seek to reject the leases for the March 8 Closing Locations on March 10, 2009, March 11, 2009 or March 12, 2009.  Pursuant to the Lease Procedures Order, the Debtors must remove or abandon all personal property located at the March Closing Locations,

including the Remaining Locations, prior to the date of rejection specified in the applicable Rejection Notice.

## RELIEF REQUESTED

15.   By this Motion, the Debtors request the entry of an order under Bankruptcy Code sections 105(a) and 365(a) and Bankruptcy Rule 6006 authorizing the Debtors to reject the IBM Leases, effective as of the Rejection Date.

16.   The Debtors are currently performing their review and evaluation of other unexpired leases and subleases that are not the subject of this Motion. As this process continues, the Debtors may identify additional leases to be assumed or rejected. Accordingly, the Debtors reserve the right to seek to assume or reject additional leases in the future. Except with respect to the IBM Leases associated with the Remaining Locations that were not expressly identified on Exhibit B, this Motion should not be construed as a request or determination that any leases not listed herein are to be assumed or rejected.  For the avoidance of doubt, the Debtors are not seeking to reject the Master Lease Agreements at this time.

9

## BASIS FOR RELIEF

17.   Because occupancy expenses for the
Remaining Locations total approximately $6.2 million per
month (or approximately $207,000 per day), the Debtors
are working to vacate each Location as quickly as
possible following the applicable Sale Termination Date.
To accomplish this goal, the Debtors filed the Rejection
Notices seeking to reject the real property leases
associated with the Remaining Locations.

18.   In a further effort to avoid any
unnecessary post-petition administrative costs, in the
exercise of the Debtors' sound business judgment, the
Debtors hereby move to reject the IBM Leases, as set
forth herein.  Upon the Sale Termination Date, the
Debtors will have no productive use for the Remaining
Equipment.  However, the Debtors continue to be
obligated to pay rent under the IBM Leases.

19.   By rejecting the IBM Leases at this time,
the Debtors will avoid incurring additional unnecessary
administrative charges for equipment that provides no
tangible benefit to the Debtors' estates.  Indeed, the
Debtors will be relieved from paying further lease

payments to IBM, as well as other costs, including taxes,
insurance, maintenance and other future related charges
associated with the IBM Leases.  The resulting savings
from the rejection of the IBM Leases will increase the
Debtors' future cash flow and assist the Debtors in
managing their estates.  In addition, rejection of the
IBM Leases will ensure that the Debtors effectively
reject the real property leases for the Remaining
Locations promptly after the Sale Termination Date in
accordance with the Rejection Notices and the Lease
Procedures Order, thereby reducing the associated
occupancy expenses.

20.  The Debtors have analyzed each of the IBM
Leases to determine the appropriate date of rejection,
in order to minimize unnecessary costs to the estate.
Based on this analysis, the Debtors hereby request that
the Court authorize rejection of the IBM Leases on the
date listed on Exhibit A for each Remaining Location
(the "Rejection Date").  In each case, the Rejection
Date coincides with the date of rejection of the
underlying real property leases.

21.    In considering their options with respect
to the IBM Leases, the Debtors have determined in their
business judgment that the costs associated with
delaying rejection of the Leases would be substantial
and would constitute an unnecessary drain on the
Debtors' cash resources.

22.    Accordingly, the Debtors believe that
rejection of the Leases as of the Rejection Date is in
the best interests of their estates, their creditors,
and other parties in interest.

## APPLICABLE AUTHORITY

23.    Bankruptcy Code section 365(a) provides
that a debtor, "subject to the court's approval, may
assume or reject any executory contract or unexpired
lease."  11 U.S.C. § 365(a).  A debtor's determination
to reject an executory contract is governed by the
"business judgment" standard.  See Lubrizol Enterprises,
Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043,
1046-47 (4th Cir. 1985), cert. denied sub nom., Lubrizol
Enters., Inc. v. Canfield, 475 U.S. 1057 (1986); In re
Extraction Technologies of VA, L.L.C., 296 B.R. 393, 399
(Bankr. E.D. Va. 2001); see also In re HQ Global

Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003)
(stating that a debtor's decision to reject an executory
contract is governed by the business judgment standard
and can only be overturned if the decision was the
product of bad faith, whim, or caprice).

24.   Once the Debtors articulate a valid
business justification, "[t]he business judgment rule
'is a presumption that in making a business decision the
directors of a corporation acted on an informed basis,
in good faith and in the honest belief that the action
taken was in the best interests of the company.'"
Official Comm. Of Subordinated Bondholders v. Integrated
Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting
Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

25.   The business judgment rule has vitality
in chapter 11 cases and shields a debtor's management
from judicial second-guessing.  See Comm. Of Asbestos-
Related Litigants and/or Creditors v. Johns-Manville
Corp., 60 B.R. 612, 615 16 (Bankr. S.D.N.Y. 1986)
("[T]he Code favors the continued operation of a
business by a debtor and a presumption of reasonableness
attaches to a debtor's management decisions.").

13

26.   As set forth above, the Debtors have satisfied the "business judgment" standard for rejecting the IBM Leases.   The Leases are financially burdensome and unnecessary to the Debtors' estates.   Rejection of the IBM Leases is in the Debtors' best interests because the Debtors no longer have any use for the Remaining Equipment covered by the Leases nor for the Remaining Locations at which the Remaining Equipment is kept.   As such, the IBM Leases provide no economic benefit to the Debtors, nor are the IBM Leases a source of potential value for the Debtors' estates and creditors.   To the contrary, any delay in rejecting the IBM Leases beyond the Rejection Date could represent a substantial drain on the Debtors' estates in the form of continued rental payments under the IBM Leases.   Accordingly, rejection of the Leases reflects an exercise of the Debtors' sound business judgment.

27.   The Debtors also respectfully request that the Court enter an order setting the effective date of rejection of the Leases as the Rejection Date.

28.   Although the Debtors are seeking to reject the IBM Leases expeditiously, the Debtors have

14

been and will continue to work with IBM to provide them
with contact information for the landlords for the
Remaining Locations and otherwise assist IBM in its
recovery of the Remaining Equipment, all as in the best
interests of these estates and consistent with the
Debtors' fiduciary obligations.  Thus, IBM should be in
a position to recover its Equipment through direct
arrangements with the applicable landlord or otherwise.
In light of the foregoing, the Debtors submit that
rejection of the IBM Leases as of the Rejection Date
will not unduly harm or otherwise prejudice IBM.
Moreover, by rejection, IBM will be relieved of its own
obligations under the IBM Leases, allowing it to cease
performance thereunder and recover the Remaining
Equipment.

29.  As noted above, the Debtors will cease
their use of the Remaining Equipment as of the Rejection
Date.  Thus, the Debtors will not benefit from further
use of the Equipment.  To the contrary, however, delay
in rejecting the Equipment will benefit IBM because the
Debtors would likely incur in further administrative
expenses owed to IBM (and potentially other parties).

15

30.   In summary, the Debtors believe that the proposed rejection of the IBM Leases is tailored to minimize administrative expense, maximize distributions to creditors in these chapter 11 cases, and return control of the Remaining Equipment to IBM.  In the exercise of their sound business judgment, the Debtors thus seek authority to reject the IBM Leases effective as of the Rejection Date.

31.   Numerous courts, including those in this district, have authorized similar relief.  See, e.g., In re Movie Gallery, Inc., et al., Case No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007); In re Storehouse, Inc., Case No. 06-11144 (Bankr. E.D. Va. Nov. 21, 2006); In re Rowe Furniture, Inc., Case No. 06-11143 (Bankr. E.D. Va. Nov. 21, 2006); In re The Rowe Cos., Case No. 06-11142 (Bankr. E.D. Va. Nov. 21, 2006); In re US Airways Group, Inc., Case No. 02-83984 (Bankr. E.D. Va. Aug. 12, 2002).

### NOTICE

32.   Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy

Rules 2002-1 and 9013-1 Establishing Certain Notice,

Case Management, and Administrative Procedures (Docket

No. 130) and to IBM.  The Debtors submit that, under the

circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

33.  Pursuant to Local Bankruptcy Rule 9013-

1(G), and because there are no novel issues of law

presented in the Motion and all applicable authority is

set forth in the Motion, the Debtors request that the

requirement that all motions be accompanied by a

separate memorandum of law be waived.

### NO PRIOR REQUEST

34.  No previous request for the relief sought

herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: March 6, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley    .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

**EXHIBIT A**

**(Remaining Locations)**

**EXHIBIT B**

**(Supplements for Remaining Locations)**

**EXHIBIT C**

**(December 23, 2005 Master Lease Agreement)**

**EXHIBIT D**

**(April 27, 2007 Master Lease Agreement)**