Neil D. Goldman, Esq. (VSB No. 18352)
John P. Van Beek, Esq. (VSB No. 30897)
Young, Goldman & Van Beek, P.C.
510 King Street, Suite 416
Alexandria, Virginia 22313
(703)684-3260
(703)548-4742 (facsimile)
ngoldman@ygvb.com
jvanbeek@ygvb.com

Counsel for TSA Stores, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
CIRCUIT CITY STORES, INC.,                              :    Case No. 08-35653-KRH
et al.,                                                 :
                                                        :
        Debtors.                                        :    Jointly Administered
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**LIMITED OBJECTION OF TSA STORES, INC. TO DEBTORS' NOTICE OF REJECTION OF UNEXPIRED LEASES AND ABANDONMENT OF PERSONAL PROPERTY**

TSA Stores, Inc. ("TSA"), by its attorneys Sherman & Howard, L.L.C. and Young, Goldman & Van Beek, P.C., submits the following Limited Objection to the Notice of Rejection of Unexpired Leases and Abandonment of Personal Property, which was filed by Circuit City Stores, Inc. ("Circuit City" or "Debtor"), one of the debtors in the above-captioned bankruptcy cases. In support of this Motion, TSA states as follows:

### I.    INTRODUCTION

1.    On March 3, 2009, Circuit City filed a Notice of Rejection of Unexpired Leases and Abandonment of Personal Property. The Notice listed as rejected two leases involving TSA. One lease governs a piece of non-residential real property in Roseville, Minnesota at which TSA

is a sublandlord and Circuit City a subtenant (the "Roseville Sublease"). The other involves a piece of non-residential real property in Lawrenceville, New Jersey at which Circuit City is a sublandlord and TSA a subtenant (the "Lawrenceville Sublease").

2. TSA objects to the Notice of Rejection insofar as it allows Circuit City to reject the Roseville Sublease without paying the full amount of rent and other expenses owed by Circuit City for the month of March 2009 under the terms of the Sublease. TSA also objects to reserve its rights to require Circuit City to pay as an administrative expense under Section 503(b) of the Bankruptcy Code the cost of any damages incurred by TSA as a result of Circuit City's failure to leave the premises in the condition mandated by the Roseville Sublease. Finally, TSA has paid to Debtors rent and other expenses for the full month of March 2009 under the Lawrenceville Sublease. TSA understands that Debtor intends to refund to TSA the pro rata portion of March rent for the period subsequent to the rejection. *See* Debtors' Fifth Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 365(a) and 554 and Bankruptcy Rule 6006 Authorizing Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property (D.I. 2484) (the "Fifth Omnibus Rejection Notice"), ¶ 8 n.2. TSA requests this Court to order Circuit City to remit to TSA the portion of TSA's payment that is allocable to the post-rejection period.

## II.    BACKGROUND

3. TSA and Circuit City have contractual relationships regarding two locations of non-residential real property that are relevant to this Objection:[1]

---

[1] TSA, Inc. is the successor in interest to Sportmart, Inc. with respect to the Roseville Sublease. TSA, Inc. is the successor in interest to The Sports Authority, Inc. with respect to the Lawrenceville Sublease.

a. Pursuant to a Sublease Agreement, as amended, dated January 29, 1993, and extended effective February 1, 2008, TSA is a sublessor and Circuit City is TSA's subtenant for non-residential real property located in a shopping center at 1750 Highway 36, West Roseville, Minnesota, 55113.

b. Pursuant to a Lease, as amended, between Circuit City Stores, Inc. and TSA, dated July 22, 1992, TSA is a subtenant and Circuit City the sublessor of non-residential real property in a shopping center in Lawrenceville, New Jersey. TSA and Circuit City executed on the same day a Maintenance Agreement for the property ("Maintenance Agreement"). The property is located at 3360 Brunswick Pike, Lawrenceville, New Jersey, 08648. Relevant provisions of the above lease documents are attached as exhibits to this Objection as Exhibits A and B, respectively. Full copies of these documents are available from TSA's counsel upon reasonable request.[2]

4. Circuit City filed a Notice of Rejection on March 3, 2009 that rejected the Roseville Sublease effective March 10, 2009. *See* Notice of Rejection of Unexpired Leases and Abandonment of Personal Property at Ex. A [hereinafter "Rejection Notice]. The Rejection Notice also rejected the lease between Circuit City and Farmingdale-Grocery, LLC, the master landlord at the Lawrenceville, New Jersey location ("Lawrenceville Master Lease"). *Id.* TSA and Circuit City agree that Circuit City's rejection of the Lawrenceville Master Lease effective March 10, 2009 also terminates the lease between TSA and Circuit City on the same date.[3]

---

[2] TSA will file a motion seeking payment of November stub rent and other administrative expenses pursuant to Section 365(d)(3) and Section 503(b) of the Bankruptcy Code.
[3] On March 9, 2009, Debtor filed its Fifth Omnibus Rejection Notice which rejects, among others, the Lawrenceville Sublease between Debtors and TSA.

5. In the Rejection Notice, Debtors state that Debtors will pay lease obligations for the month of March only on a per diem basis. In addition, Debtors state that personal property remaining at the premises will be deemed abandoned.

### III. RELEVANT TERMS OF THE LEASES

#### A. Roseville

6. The Roseville Sublease requires Circuit City to pay rent on the first day of each month. Section 4.1 says:

> Tenant covenants and agrees to pay to Landlord, without notice or demand, and without deduction or set-off of any kind unless otherwise set forth herein, at Landlord's Notice Address, as rent for the Premises:
> (i) The Minimum Annual Rent and Special Minimum Rent, designated at Section 1.1.7, *in advance upon the first day of each and every month* . . . .

(Emphasis added).

7. Additionally, Circuit City is required to pay real estate taxes ("RET") for the Roseville location in advance on the first day of each month. The relevant portion of Section 4.6 of the Roseville Sublease reads as follows:

> . . . Tenant shall pay to landlord *monthly, in advance, on the first day of each month*, as Additional Rent, an amount equal to one-twelfth (1/12th) of the estimated Taxes subject to adjustment when the amount of such Taxes are computed.[4]

(Emphasis added).

8. Circuit City is also required to pay its pro rata share of care and maintenance charges ("CAM") on the first day of each month. Section 6.2 of the Roseville Sublease says:

---

[4] Under Section 4.6 of the Roseville Sublease Agreement, Circuit City is required to pay a portion of RET on the first day of the month if either (i) Circuit City's reported net worth is less than $100,000,000 as computed in accordance with Generally Accepted Accounting Principles, or (ii) Circuit City failed on more than two occasions during any sixty (60) month period of the Term to pay its pro rata share of Taxes within the time provided elsewhere in Section 4.6.

4

> Tenant shall commence to pay, as Additional Rent, Tenant's Pro Rata Share of Landlord's Common Area Costs in monthly installments, without offset, deduction or setoff of any kind in amounts estimated from time to time by Landlord, unless otherwise provided herein, ***one such installment being due on the first day of each month of each calendar year***.

(Emphasis added).

9.  Under these provisions, Debtor is required each month to pay $22,974.52 in rent, $2,000 in CAM, and $5,000 in real estate taxes for the Roseville location.

10. The Roseville Sublease requires Circuit City to leave the premises in broom-clean condition and remove various items from the Premises. Significantly, the Roseville Sublease expressly obligates Circuit City to remove trade fixtures (defined broadly) and to repair all damage caused by the removal. Section 9.3 of the Roseville Sublease states in pertinent part:

> Upon the termination of this Sublease, Tenant shall surrender the Premises in a broom-clean condition, free of debris and in the same condition (subject to the alterations, changes, additions and improvements made by Tenant pursuant to this Sublease) as the premises were on the date the Tenant opened the Premises for business to the public, reasonable wear and tear and fire casualty and condemnation excepted, and shall surrender all keys for the Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks and safes in the Premises. ***During the last 30 days of such term***, Tenant shall remove all of its trade fixtures described at Exhibit I hereof, and tenant shall repair any damage to the Premises caused by such removal.[5]

(Emphasis added).

### B.  Lawrenceville

11. Under Section 3 of the Lawrenceville Sublease, TSA is obligated to pay rent "in equal monthly installments on the first day of each month, in advance, commencing on the first

---

[5] The trade fixtures listed on Exhibit I are: store fixtures; all storage racking; all security system items; telephones and paging systems; computer system; office furniture and trash receptacles; battery charger; trash compactor; signs (interior/exterior, excluding a pylon structure and all exterior sign boxes); antenna system; electronic switching; air compressor (roadshop); safe; conveyor; Medeco cylinder locks (5); refrigerator and microwave used by employees; tack boards; water cooler; fire extinguishers; audio room fixtures and switchgear; pictures; warehouse and material handling equipment (movable ladders, dollies, etc.); track lights (cans only, not tracks).

day of the lease term . . . ." Exhibit F of the Lawrenceville Sublease states that TSA is obligated to pay Circuit City $50,507.83 for rent for March 2009.

12. Section 4(a) of the Maintenance Agreement requires TSA to pay "monthly installments in advance on the first day of each calendar month of one-twelfth (1/12th) of [TSA]'s 'Share' of the amount estimated by Circuit City for the cost of common area maintenance." For March 2009, the amount owed by TSA was $3,150.00. TSA was also required to pay $12,000.00 for real estate taxes under Section 4 of the Lawrenceville Sublease and $41.97 for Pylon Sign Electricity. In sum, TSA paid $65,699.80 to Circuit City for March 2009 under the Lawrenceville Sublease and the Maintenance Agreement.

## IV.   DISCUSSION

### A.   Circuit City is liable for the full amount of March Rent, CAM and RET payments due under the Roseville Sublease.

13. This Court should require Circuit City to pay the full amount of March Rent, CAM and real estate taxes that was due March 1 under the terms of the Roseville Sublease. Section 365(d)(3) of the Bankruptcy Code says:

> The trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

14. The duty to timely perform all obligations of the debtor includes the obligation to submit full payment of monthly rent and related obligations when they become due under the terms of an applicable lease. *See Ha-Lo Indus., Inc. v. Centerpoint Props. Trust*, 342 F.3d 794, 798 (7th Cir. 2003); *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 989-90 (6th Cir. 2000).

6

This obligation includes a duty to pay the full amount of post-petition rent owed for the month in which Debtor rejects the applicable lease, even though Debtor does not occupy the premises for the full month. *Ha-Lo Indus.*, 342 F.3d at 799. The Debtor is obligated to pay full rent for the month of rejection because, unlike rent allocable to the pre-petition period, "[p]ostpetition rent covering a period of time that extends into the postrejection period is 'not a sunk cost that relates to a time before the bankruptcy case, but a charge for the consumption of a resource during the administration of the case.'" *Ha-Lo Indus.*, 342 B.R. at 799 (quoting *In re Comdisco, Inc.*, 272 B.R. 671, 674-75 (Bankr. N.D. Ill. 2002). *Ha-Lo* is particularly relevant because the Seventh Circuit rejected the argument that using the accrual approach for pre-petition "sunk costs" (such as first month's stub rent) applies to payment in full of a "rent obligation that arose entirely post petition and pre-rejection, but which covers in part a period of time that extends beyond rejection of the lease." *Id.*

15.   TSA acknowledges that this Court relied upon *In re Trak Auto Corp.,* 277 B.R. 2002 (Bankr. E.D. Va. 2002), r*ev'd. on other grounds,* 367 F.3d 237 (4th Cir. 2004), in ruling that Debtor does not need to pay first month's stub rent immediately. TSA also acknowledges that *Trak Auto* adopts the accrual method for purposes of determining whether obligations under leases are prepetition or post-petition obligations. TSA respectfully submits, however, that the issue of payment of rent under Section 365(d)(3) requires a different analysis and result where, as here, Debtors choose to reject a lease in the middle of the month. Significantly, in adopting the accrual method, *Trak Auto* relied heavily upon the Seventh Circuit decision in *In re Handy Andy Home Improvement Ctrs., Inc.,* 144 F.3d 1125 (7th Cir. 1998). Subsequent to *Trak Auto,* the Seventh Circuit decision in *Ha-lo* makes clear that, notwithstanding *Handy Andy*, a different result obtains, and Debtors should be required to pay the full month's rent when they reject a

7

lease in the middle of the month. Requiring the Debtor to pay the full amount of rent, real estate taxes and CAM for the month of March serves another purpose of Section 365(d)(3), which is to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." *Koenig Sporting Goods*, 203 F.3d at 989.

16. Circuit City controlled the timing of its rejection of the Roseville Sublease and, as such, had ultimate control over whether it was required to pay rent for the month of March. Circuit City chose to reject the lease effective March 10, thereby making Circuit City responsible for payments that were due before that time. "In this case, involving a month-to-month, payment-in-advance lease, where the debtor had complete control over the obligation, we believe that equity as well as the statute favors full payment . . . ." *Koenig Sporting Goods*, 203 F.3d at 989.

17. Indeed, under the express terms of the Roseville Sublease and Section 365(d)(3) of the Bankruptcy Code, Debtor was obligated to pay the full month's rent on March 1, 2009. The Bankruptcy Code does not and should not allow Debtor to violate its obligations under Section 365(d)(3) by unilaterally deciding to pay only a portion of the month's rent.

18. This Court should therefore order Circuit City to pay the full amount of rent, CAM and RET due under the terms of the Roseville Sublease. The total amount due for the month of March 2009 is $29,974.52.

> **B.  TSA is entitled to an administrative claim for the cost of removing abandoned property and fixtures, and for other damages incurred as a result of Circuit City's failure to leave the Premises in the condition required by the Roseville Sublease.**

19. The Notice of Rejection and Removal filed by Circuit City says that "Debtors will have until the Rejection Date to remove property belonging to the Debtors from the leased premises. To the extent that any property remains in the leased premises after the Rejection Date, such property will be deemed Abandoned Property and shall be deemed abandoned by the Debtors." Notice of Rejection of Unexpired Leases and Abandonment of Personal Property ¶ 3.

20. TSA reserves its right to file an administrative expense claim under Section 365(d)(3) and 503(b) of the Bankruptcy Code for damages incurred as a result of TSA's storage, removal and/or disposal of property abandoned by the Debtors pursuant to the Notice of Rejection and this Court's order approving its terms.

21. First, it is likely that at least a portion of the abandoned property came to the Roseville location post-petition, since the Agency Agreement approved by this Court for the GOB sales authorized the Debtor's Agent to transfer merchandise between closing locations. *See* Order Approving Agency Agreement, Store Closing Sales and Related Relief, Agency Agreement § 9.1(f). TSA is entitled to an administrative expense claim for the cost of removal of this property. *See In re Nat'l Refractories & Minerals Corp.*, 297 B.R. 614, 620 (Bankr. N.D. Cal. 2003) (landlord is entitled to administrative claim for abandoned items of personal property brought to the premises post-petition and pre-rejection).

22. Section 9.3 of the Roseville Sublease imposes a number of other requirements on Circuit City, including:

    a. A duty to surrender the Premises in a broom-clean condition, free of debris and in the same condition (subject to the alterations, changes, additions and improvements

9

made by Tenant pursuant to this Sublease) as the premises were on the date the Tenant opened the Premises for business to the public;

      b.    A duty to surrender keys to the premises and inform TSA of all combinations on all locks and safes on the premises;

      c.    A duty to remove all of Debtor's trade fixtures on the premises and repair any damage caused by such removal.

23.    The rejection should not be effective until Debtor has turned over the keys and other information necessary for a smooth transfer. TSA reserves the right to file an administrative expense claim for damages incurred as a result of Circuit City's failure to comply with the above requirements of Section 9.3 of the Roseville Sublease. Section 9.3 unequivocally states that Circuit City is required to perform all of these functions ***during the last thirty days of the lease term***, meaning that Circuit City's failure to do so is properly attributable to the post-petition, pre-rejection period. The court in *Nat'l Refractories* recognized that the determination of whether a counterparty to rejected lease is entitled to an administrative claim depends on whether the damage to the property accrues before or after the rejection becomes effective. 297 B.R. at 619-20 ("[W]hether [creditor] is entitled to an administrative claim for the Repair Costs depends on when the damage occurred . . . . [O]nce the damage to the Leased Premises was done, the Debtor's obligation to repair it became fixed."). Here, because the obligation to restore the property accrued during the thirty days prior to Circuit City's rejection, this Court should find that any damages caused by Circuit City's failure to comply with Section 9.3 of the Roseville Sublease are properly attributable to the thirty days preceding Circuit City's rejection. As such, this Court should order Circuit City to pay the cost of any damages incurred by TSA as an

administrative expense pursuant to Section 365(d)(3) and Section 503(b) of the Bankruptcy Code.

### C. This Court should order Circuit City to refund to TSA the March rent and CAM allocable to the post-rejection period under the Lawrenceville Sublease and Maintenance Agreement.

24. As noted above, Circuit City has provided notice that it will reject its master lease with Farmingdale-Grocery, LLC at the Lawrenceville location effective March 10. The parties agree that the rejection of the master lease also terminates the Lawrenceville Sublease and the associated Maintenance Agreement.

25. TSA has submitted rent for the full month of March 2009, as required by Section 3 of the Lawrenceville Sublease. TSA has also submitted the monthly CAM payment required by Section 4(a) of the Maintenance Agreement. However, Circuit City's rejection of the Master Lease, and the resulting termination of the Lawrenceville Sublease, mean that Circuit City and TSA will be in a sublandlord-subtenant relationship only through March 9, 2009. Circuit City should therefore be allowed to retain only the portion of TSA's rent and CAM payment that is allocable on a *per diem* basis to the first nine days of March, and this Court should require Circuit City to remit the remainder of the March 2009 rent and CAM payment to TSA. To hold otherwise would permit Circuit City to enjoy an undeserved windfall for services that it has not provided and for a breach by Circuit City of its obligations to TSA. In fact, in "Debtors' Fifth Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 365(a) and 554 and Bankruptcy Rule 6006 Authorizing Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Personal Property" (Docket No. 2484) at page 5, n2, Circuit City expressly stated that it will return overpayments for the period subsequent to rejection to the subtenants who made payment.

26.   The total amount of rent, CAM and real estate taxes allocable to the post-rejection period is $46,625.66.  This Court should order Circuit City to remit that amount to TSA.

27.   Under section 365 (b)(1)(A)(i) of the Bankruptcy Code, TSA elects to treat the Lawrenceville Sublease as terminated by the rejection of the Sublease.  TSA reserves all claims associated with the Lawrenceville Sublease, including rejection damage claims.

## V.   CONCLUSION

For the foregoing reasons, this Court should order Circuit City to pay in full the $29,974.52 of March rent, CAM and RET due under the Roseville Sublease, should award TSA an administrative claim for the full amount of damages incurred as a result of Circuit City's failure to comply with Section 9.3 of the Roseville Sublease, and should order Circuit City to remit to TSA $46,625.66 of March rent and CAM that is attributable on a *per diem* basis to the post-rejection period under the Lawrenceville Sublease and Maintenance Agreement.

March 10, 2009

/s/ John P. Van Beek
Neil D. Goldman (VSB #18352)
John P. Van Beek (VSB #308987)
YOUNG, GOLDMAN & VAN BEEK, P.C.
510 King Street, Suite 416
Alexandria, VA  22314
Telephone:  (703) 684-3260
Facsimile:  (703) 548-4742
E-mail:  ngoldman@ygvb.com

Peter Cal, Esq.,
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Telephone:  (303) 299-8244
Facsimile:  (303) 298-0940
E-mail:  pcal@shermanhoward.com

ATTORNEYS FOR TSA STORES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March, 2009, a true and correct copy of the foregoing **LIMITED OBJECTION OF TSA STORES, INC. TO DEBTORS' NOTICE OF REJECTION OF UNEXPIRED LEASES AND ABANDONMENT OF PERSONAL PROPERTY** to be served via email pursuant to Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notices, Case Management, and Administrative Procedures by emailing the Objection to: circuitcityservice@mcguirewoods.com and project.circuitcity@skadden.com, and to all persons receiving service via the Court's ECF System.

/s/
John P. Van Beek

LITIGATION\1662961.2