# EXHIBIT A

This document prepared by: Bagby & Russell Electric Co., Inc.

513 WEST I-65 SERVICE Rd N.
MOBILE, AL. 36608

STATE OF ALABAMA          *
                          *
BALDWIN COUNTY            *

## VERIFIED STATEMENT OF LIEN

NOW COMES, BAGBY & RUSSELL ELECTRIC CO., INC., and files this statement in writing, verified by the oath of Richard A. Russell, President of Bagby & Russell Electric Co., Inc., who has personal knowledge of the facts set forth herein:

That Bagby & Russell Electric Co., Inc. claims a lien upon the following property situated in Baldwin County, Alabama, to-wit:

**Circuit City #4227 – 31000 Bass Prod Drive, Spanish Fort, AL 36572**

This lien is claimed, separately and severally, as to the land, buildings, and the improvements thereon.

That the said lien is claimed to secure an indebtedness of $103,771.00, plus interest and attorney's fees from, to wit: (insert date) for (described work, labor, and materials furnished).

The name of the owner or proprietor of the aforesaid property is Cypress/Spanish Fort I, L.P.. (The General Contractor is The Stewart/Perry Company, Inc.. The Sub-Contractor is Bagby & Russell Electric Co., Inc.).

BAGBY & RUSSELL ELECTRIC CO., INC.

By: _____

Richard A. Russell, President

BALDWIN COUNTY, ALABAMA
JUDGE ADRIAN T. JOHNS
Filed/cert. 12/12/2008  3:02 PM
TOTAL      $    16.00
  2 Pages



STATE OF ALABAMA        *
                                       *
MOBILE     COUNTY        *


      Before me, a Notary Public in and for said County, in said State, personally appeared <u>Richard A. Russell</u>, who being sworn, does depose and say:  That he has personal knowledge of the facts set forth in the foregoing Verified Statement of Lien, and that the same are true and correct to the best of her knowledge and belief.

_____
Richard A. Russell, President


      Subscribed and sworn to before me on this the <u>24th</u> day of <u>November</u>, 2008, by said Affiant.

_____
Notary Public
My Commission Expires:<u>12/22/2009</u>

  

# Bagby & Russell Electric Company, Inc.

513 WEST I-65 SERVICE RD., N., MOBILE, ALABAMA 36608 • P.O. BOX 7098 36670-7098 • (251) 344-5987 • FAX (261) 344-0308

www.bagrus.com

Certified Mail: **7008 0150 0002 6224 3127**

To:

Cypress/Spanish Fort I, L.P.
15601 N. Dallas Pkwy. #400
Addison, TX 75001

Notice is hereby given that the undersigned, Bagby & Russell Electric Co, Inc. intends to file a mechanic's lien for *AMOUNT OWED ($103,771.00)* on real property owned by you and commonly known as *Circuit City #4227, 31000 Bass Pro Drive, Spanish, Fort, AL 36572.*

The filing of said lien, pursuant to Section 35-11-210, Code of Alabama (1975), is for the purpose of securing payment of amounts due for electrical work performed by the undersigned in accordance with the written agreement entered into on *June 23, 2008* between your contractor, The Stewart/Perry Company, Inc. and the undersigned.

Date: November 17, 2008

BAGBY & RUSSELL ELECTRIC CO., INC.

By:
Its: Richard A. Russell, President

Cc:
Certified Mail:  7008 0150 0002 6224 3134
The Stewart/Perry Company, Inc.
4855 Overton Road
Birmingham, AL 35210

Certified Mail:  7008 0150 0002 6224 3141
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, VA 23233





# Bagby & Russell Electric Company, Inc.

513 WEST I-65 SERVICE RD., N., MOBILE, ALABAMA 36608 • P.O. BOX 7098 36670-7098 • (251) 344-5997 • FAX (251) 344-0308

www.bagrus.com

Date: November 10, 2008

**VIA U.S. MAIL, RETURN RECEIPT 7008 0150 0002 6224 3080**

To:
**Cypress/Spanish Fort I, L.P.**
**15601 N. Dallas Pkwy. #400**
**Addison, TX 75001**

Take notice that the undersigned is about to or has furnish The Stewart/Perry Company, Inc., your contractor or subcontractor, certain materials and/or services for the construction, or for repairing, altering or beautifying of a building or buildings, or improvement or improvements, as follows:

Electrical Work

on the following described property:

Circuit City #4227, 31000 Bass Pro Drive, Spanish Fort, AL 36572

There will become due to the undersigned on account thereof the price of the materials and/or services, for the payment of which the undersigned will claim a lien pursuant to Section 35-11-210, Code of Alabama (1975). The lien will be claimed on the above-described property and improvements thereon in the sum of $103,771.00, plus interest, costs and attorney's fees, for furnishing the materials and/or services listed above. If, however, any portion of the materials and/or services listed above is provided by the undersigned prior to your receipt of this notice, any unpaid balance that you owe to your general contractor will be subject to this lien.

BAGBY & RUSSELL ELECTRIC CO., INC.

By: _____
Richard A. Russell, President

Cc:
Certified Mail:  7008 0150 0002 6224 3097
Circuit City Stores, Inc.
9950 Mayland Drive, Richmond, VA 23233

Certified Mail:  7008 0150 0002 6224 3110
The Stewart/Perry Company, Inc.
4855 Overton Road, Birmingham, AL 35210

**ORIGINAL**

THIS AGREEMENT made this   23rd   day of   JUNE   , 20   08   by and between _____

### BAGBY & RUSSELL ELECTRIC CO., INC.

, whose principal office is at

### 513 WEST I-65 SERVICE ROAD NORTH, MOBILE, ALABAMA 36608

hereinafter called the "Subcontractor", and The Stewart/Perry Co. Inc., a corporation whose principal office is at 4855 Overton Road, Birmingham, Alabama 35210, hereinafter called the "Contractor".

#### *Witnesseth:*

For the consideration hereinafter named, the Subcontractor and Contractor agree and bind themselves as follows:

**SECTION 1.** (a) The subcontractor agrees to furnish all labor, materials and equipment and perform all work necessary to fully perform and complete the following part or parts of the work of the General Contract in all respects as is therein required of the Contractor; and all work incidental thereto necessary for a complete job, hereinafter sometimes called the "Work", namely: (description of Work)

### THE SCOPE AS DEFINED IN "ATTACHMENT A"

FOR THE:   CIRCUIT CITY #4227 – 31000 BASS PRO DRIVE, SPANISH FORT, AL 36572 _____ ("Project"),
FOR:   CIRCUIT CITY STORES, INC. – 9950 MAYLAND DRIVE, RICHMOND, VA 33233 _____, (the "Owner"),
with whom the contractor has heretofore entered into a General Contract to furnish all labor and materials and perform all work required for the Project, strictly according to the plans, specifications, addenda (        ), and alternates (        )
        ATTACHMENT "A-1"

as prepared by    CASCO CORPORATION, 10877 WATSON ROAD, ST. LOUIS, MO  63127

which are made a part of said General Contract, and which are hereby made a part of this Subcontract insofar as they relate to the Work undertaken herein by Subcontractor.
        (b) Subcontractor shall procure at his expense all necessary permits and licenses.
        (c) Subcontractor shall furnish all rigging, hoisting, plant and equipment, operators, scaffolding, staging, temporary protection, small tools, and everything necessary to perform the Work for this Subcontract.
        (d) Subcontractor shall furnish all layout and engineering as required to perform the Work of this Subcontract.

**SECTION 2.** Contractor agrees that it will pay to the Subcontractor, in accordance with the provisions of Section 8, and subject to the provisions of Section 9 and subject to any increase or decrease resulting from changes pursuant to 4 (d) below, the sum of

### ONE HUNDRED SEVENTEEN THOUSAND EIGHT HUNDRED DOLLARS AND 00/100        ($117,800.00)

**SECTION 3.** (a) Time is of the essence for this Subcontract. The Subcontractor is to execute this Subcontract with sufficient speed and diligence to enable the General Contractor and other subcontractors to comply with their schedules. The Subcontractor shall give his personal superintendence to the Work, or have a competent foreman or superintendent satisfactory to Contractor on the Work at all times during the progress of the Work with authority to act for the Subcontractor.
        (b) All required shop drawings, erection drawings, samples, test reports, and/or certificates, submittals and all other data as required will be submitted for approval as soon as possible and in ample time to secure approval and meet the scheduled delivery, installation and completion dates for the Work. Subcontractor must inform Contractor, in writing, of any deviations in the shop drawings and the samples from the requirements of the General Contract; provided, no such notice of a deviation shall relieve Subcontractor of its obligation to perform the Work in accordance with the requirements of the General Contract unless specifically approved in writing by the Contractor, Owner and Architect/Engineer.

**SECTION 4.** (a) The Subcontractor  agrees to begin work when notified by the Contractor and will carry forward and complete his Work as rapidly as the Contractor may judge that the progress of the Work will permit, and so that Subcontractor's Work will not cause delay in the progress of Contractor's work or other branches of the Work carried on by other subcontractors. Contractor may require Subcontractor to prosecute some portion of the Work in preference to other portions of the Work as Contractor may specify.
        (b) Subcontractor shall be liable to Contractor for any and all actual damages incurred by the Contractor as a result of the Subcontractor's default or breach of any provision of this Subcontract, including, but not limited to, actual damages caused by Subcontractor's delay; actual damages shall include, but not be limited to, any liquidated damages incurred by the Contractor as a result of Subcontractor's default, breach or delay.
        (c) Contractor shall not be liable to Subcontractor for delay to Subcontractor's Work caused by the act, neglect or default of the Owner or the Architect/Engineer, or by reason of fire or other casualty, or on account of riots or of strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause beyond the Contractor's control.
        (d) Claims for extras will only be allowed when written authorization has been given prior to execution of the work. When such authority is given without a proposal, the fully documented claim must be submitted promptly upon completion of the extra work. Contractor may order changes in the Work without notice to Subcontractor's sureties consisting of additions, deletions, or modifications, such changes to be authorized by written order of the Contractor only; when so made, the Subcontract sum shall be adjusted accordingly. Where work is required to be done and the parties cannot agree as to whether such work is extra work or as to the valuation by reason of any modification as herein provided, the performance of same shall not be delayed, but Subcontractor shall nevertheless proceed with the work upon the written order of Contractor, it being understood that the progress of the work shall not be delayed by any controversy between the parties.

**SECTION 5.** (a) If the Subcontractor should be adjudged bankrupt, or (b) if he should make a general assignment for the benefit of his creditors, or (c) if a receiver should be appointed on account of his insolvency, or (d) if the Subcontractor should fail to carry forward and complete his Work as provided in this Subcontract as rapidly as the Contractor may judge that the progress of the Work will permit, or (e) if he should become insolvent or should fail to make prompt payment for materials or labor used on the job, or (f) should he fail to comply with instructions of the Architect or Engineer or with applicable portions of laws, or (g) if he should otherwise be guilty of a breach of this Subcontract, or (h) if it is amended, as said Act applies to the employers and employees of the construction industry, and a citation of violation is issued by said governmental agency which is not abated by the Subcontractor within the time provided by law, then the Contractor may, after giving Subcontractor written notice in the manner specified in Section 19 hereof, without prejudice to any other right or remedy it may then have, proceed as follows: (1) provide, or have others provide, such materials, supplies, equipment and labor as may be necessary to complete the Work, pay for same and deduct the amount so paid from any money then or thereafter due Subcontractor; or (2) withhold payment of any estimate, pending a curing of the default satisfactory to Contractor, other provisions of this Subcontract notwithstanding; or (3) terminate the Work of the Subcontractor, enter upon the premises and take possession, for use of others, and not be liable to Subcontractor for any further payments under this Subcontract until final payment is due, and then only if and to the extent that the unpaid balance of the amount to be paid under this Subcontract exceeds the expense of Contractor in completing the Work or having the Work completed by others.
        If the amount expended by Contractor under (1) above, or the cost of completing the Work under (3) above, (such amounts or costs to include, but not be limited to, compensation for additional managerial, legal and administration services), exceeds the unpaid balance of the Subcontract price, such excess shall be paid by Contractor to such excess; if the unpaid balance of the Subcontract shall exceed said amount expended by Contractor or cost of completing the Work, the excess shall be paid to the Subcontractor. No rights and remedies granted to Contractor under this section and pursuant to other provision of this Subcontract shall be cumulative, and are not intended to be in lieu of any legal right or remedy which Contractor may have against Subcontractor for breach of this Subcontract or default hereunder. The exercise by Contractor of any of its remedies shall not release Subcontractor from its obligations under this Subcontract.

SUBCONTRACT#:   0814 16001 3        VENDOR#:   6831     CONTACT: _____

FAX:   251-344-0308
PHONE:   251-344-5987
CELL:

SECTION 7. The Subcontractor agrees that he has read and is familiar with the General Contract, including plans, drawings, specifications, general conditions, supplementary conditions, special conditions and provisions, addenda and other documents incident thereto (herein collectively called the "General Contract") and affecting this Work, and Subcontractor agrees to be bound to the Contractor by the terms thereof insofar as they relate in any way to the Work undertaken herein by Subcontractor, and agrees to assume toward Contractor all the obligations and responsibilities which the Contractor, by the terms of the General Contract, assumes toward the Owner and Architect/Engineer. Anything pertaining to the Subcontractor's Work that is mentioned in the specifications but not shown in the plans or drawings, or shown in the plans or drawings but not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. Subcontractor will be bound by all rulings, determinations and directives of the Architect/Engineer and/or Owner to the same extent Contractor is so bound. In the event Contractor is required by the terms of the General Contract to arbitrate any controversy with the Owner or with any other prime or subcontractor or supplier and such controversy involves, in whole or in part, the work or materials of Subcontractor, then Subcontractor agrees to participate in the prosecution or defense of such controversy in said arbitration and to be bound by the result thereof; otherwise, this Subcontract shall not be subject to arbitration; the Subcontractor, in doing the Work, acts as an independent contractor and not as an agent or employee of the Contractor. In case of conflict between the provisions of the General Contract between the Owner and the Contractor and the provisions of this Subcontract, the provisions of this Subcontract shall prevail in any matter between the Contractor and the Subcontractor.

SECTION 8.(a) The Contractor shall pay the Subcontractor for the Work performed during the month less 10% retainer on or about the 20th of the following month; provided, not withstanding anything to the contrary that may be contained within any of the contract documents including but not limited to the General Contracts, no payment, partial or final, shall be due or payable to the Subcontractor from Contractor or Contractor's surety unless and until, as a condition precedent, Contractor receives payment for Subcontractor's Work from the Owner. The amount of each progress payment to the Subcontractor shall be equal to the percentage of completion allowed to the Contractor for the Work of the Subcontractor applied to the contract sum of the Subcontractor plus the amount allowed for material and equipment suitably stored by the Subcontractor less the percentage retained from payment to the Contractor. Final payment shall be due 30 days after completion of the project provided it shall not be due or payable from Contractor or Contractor's surety until, as conditions precedent (1) the Subcontractor has met the requirements and conditions of this Subcontract, and (2) Contractor has received final payment for Subcontractor's work from the Owner. From any amount otherwise owed Subcontractor, the Contractor is expressly entitled and authorized to withhold and deduct a reasonable sum based upon the breach of any provision of this Subcontract by the Subcontractor, or based upon the assertion of any lien, claim, garnishment, attachment, or other levy of a nature covered by Section 9 of this Subcontract, until such breach, controversy, lien, claim garnishment, attachment or other levy has been resolved by the parties hereto or by a court. It is hereby expressly agreed that the Contractor may set off against amounts owed by the Contractor to the Subcontractor on any Contract or Contracts between them any amount or amounts owed, or claimed to be owed, to the Contractor by the Subcontractor under any contract or contracts between the Contractor and the Subcontractor. No payment to Subcontractor shall be interpreted as an approval of the Work, or materials, or any part thereof. All payments received by Subcontractor from Contractor shall be held as a trust fund and shall not be used to satisfy or secure any indebtedness other than one owed by the Subcontractor to a person or entity furnishing labor or materials for use in performing the Subcontractor's Work. Acceptance of final payment by the Subcontractor constitutes a general release of the Contractor and the Contractor's surety from all claims and liability of whatever nature.
   (b) Subcontractor shall, as often as requested by Contractor, and as a condition precedent to any payment hereunder: (1) Furnish sworn statements showing all parties who furnished labor or materials to Subcontractor with reference to the Work, together with their names and addresses and the amount due or to become due each party; like statements may be required from any subcontractors of the Subcontractor. (2) Furnish Contractor with evidence or documentation satisfactory to Contractor (including but not limited to affidavits, receipts, releases, and/or lien waivers) that Subcontractor has paid in full for all labor, materials and supplies used in the Work through the date of the payment request, whether the request is for interim or final payment.
   (c) The Subcontractor shall pay all persons or parties who have furnished labor or material for use in and about the Work covered by this Subcontract; provided, however, the Contractor reserves the right to pay any part of all of any payment or payments due Subcontractor by checks made payable jointly to Subcontractor and any person or party supplying labor or materials or services to Subcontractor or solely to any such person or party, and any such joint or sole payment shall apply as a payment on this subcontract.

SECTION 9. (a) Subcontractor covenants and agrees to defend, indemnify, exonerate, and hold harmless the Owner and the Contractor with respect to (1) every claim or action for breach of contract or otherwise filed or presented by the Owner arising out of, or related to, any work or operation performed by, for or on behalf of, the Subcontractor, (2) every lien notice, lien affidavit and lien suit filed or presented by any materialman, laborer or subcontractor of Subcontractor, in connection with the Subcontract Work, (3) every other claim or action of any kind whatsoever, filed or presented by any materialman, laborer or subcontractor of Subcontractor, in connection with the Subcontract Work, and (4) every garnishment, attachment or other levy made by a creditor of Subcontractor against the assets or funds of Subcontractor in the hands or custody of the Owner or the Contractor. It is agreed that the Subcontract price as stated in Section 2 above, shall be offset or reduced by the amount necessary and proper to defend, indemnify, exonerate and hold harmless the Contractor and the Owner with respect to any of the foregoing described claims, notices, affidavits, actions, garnishments, attachments and levies. This indemnity shall include all payments made by the Contractor and all reasonable expenses, attorney's fees, and other costs incurred by Contractor in connection therewith. Subcontractor agrees to give Contractor notice and furnish it copies of any claim, action or lien within three (3) days of receipt of same by Subcontractor.
   (b) The Subcontractor warrants that title to all Work, material and equipment covered by any application for payment will pass to the Owner either by incorporation in the construction or upon the receipt of payment by the Subcontractor, whichever occurs first, free and clear of all liens, claims, security interest or other encumbrances.

SECTION 10. The Subcontractor shall not assign, sublet or transfer this Subcontract, or portion of this Subcontract, or any portion of the proceeds thereof, without first obtaining the written consent and approval of an officer of the Contractor. The Contractor shall not be obligated in any wise to accept or acknowledge any such assignment unless the Contractor has so approved.

SECTION 11.(a) Subcontractor is wholly responsible for the safety of his own employees. As to his own employees, the Subcontractor shall be solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work performed or to be performed by his employees: (I) as stated in the general conditions of the General Contract, (II) as required by OSHA, and (III) as required by all applicable Federal, State and local laws. In connection with its Subcontract Work and at its work site, the Subcontractor shall erect, establish and maintain, as required by existing laws, conditions, and progress of the Work, all reasonable safeguards for safety and protection, this includes posting danger signs and other warning against hazards, promulgating safety regulations, and notifying the Owner and user of adjacent utilities or facilities.'
   (b) Prior to commencing its work at the job site, Subcontractor shall designate a responsible employee at the site whose duty shall be the prevention of accidents. This employee shall be the Subcontractor's job superintendent (or foreman, if there is no superintendent), unless otherwise designated in writing by the Subcontractor to the Contractor.
   (c) Subcontractor assumes exclusive liability and covenants and agrees to defend, indemnify and hold harmless the Owner and Contractor as to any penalties assessed against the Owner or Contractor by the United States Department of Labor for violation of the Occupational Safety and Health Act of 1970 and for violation of any applicable statute, law or ordinance which are determined by a governmental agency to have been committed by the Subcontractor or its employees.

SECTION 12. The Subcontractor hereby covenants and agrees to defend, save-harmless, indemnify and exonerate the Contractor, the Owner, and the Architect/Engineer (and their respective agents and employees) as to and from all liability, claims, lawsuits and demands (including all judgments and settlements made at arm's length and all reasonable attorneys' fees and litigation expenses connected therewith) for personal injury, death (including personal injury or death to the Subcontractor's own employee, whether or not said personal injury or death is compensable under an applicable Worker's Compensation law, the immunity protection of which Subcontractor hereby waives as to this indemnity agreement) and/or property damage arising out of any work or operation performed by, for, or on behalf of the Subcontractor. The foregoing covenant and agreement shall include all such liabilities, claims, lawsuits, demands, judgments, settlements, reasonable attorneys' fees and litigation expenses, where it is charged, alleged, or proven that the Contractor, the Owner and/or the Architect/Engineer (or its agents or employees) was/were negligent in causing or contributing to such injury, death or property damage. The Subcontractor's liability insurance policies shall each contain contractual insurance coverage which protects the Subcontractor, the Contractor, the Owner, and the Architect/Engineer (and their respective agents and employees) as to the covenants contained in this subsection. Any provision in this subsection that is or has been judicially determined to be invalid or void under the laws of the state in which this contract is to be performed shall be deemed modified to the extent necessary, or deleted if absolutely necessary so as to render the subsection valid, and so that the indemnity provision shall apply to the maximum extent permitted under said state's laws and carry out the intentions of the parties, as expressed herein, to the maximum possible extent.

SECTION 13. No work is to be performed or deliveries made after regular working hours, or on Saturday or Sunday without the prior written permission of Contractor and a representative of Contractor being present.

SECTION 14. Should Subcontractor default in any of the provisions of this Subcontract, and should Contractor employ an attorney to enforce any provision hereof, or to collect damages for breach of this Subcontract, Subcontractor agrees to pay Contractor such reasonable attorneys' fees as Contractor may incur or expend therein. As against the obligations here contained Subcontractor waives all rights of exemption.

SECTION 15. This Subcontract contains the entire agreement between the parties and any additions thereto or changes therein must be made in writing and signed by an officer of Contractor and shall be void and of no efficacy unless so made.

SECTION 16. Subcontractor agrees to include the necessary clauses as required by the General Contract in all agreements entered into by Subcontractor with his subcontractors, suppliers, materialmen and vendors.

SECTION 17. This Subcontract shall be governed by the law of the State of _____ALABAMA_____

SECTION 18. The failure of Contractor to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

SECTION 19. Any notice required to be given by either party to this Subcontract to the other shall be in writing and may be given by personal delivery or telegram to the other party or by mailing by registered or certified mail (postage prepaid) to the other party at the address stated in this Subcontract. Any such notice shall be considered given and effective immediately upon personal delivery, delivery (whether oral or written) of the telegram, or depositing said notice in the mail, as the case may be._

### SECTION 20. INSURANCE

(a) Subcontractor's Insurance: The Subcontractor will maintain such insurance as will protect him from claims under Workmen's Compensation Acts and from any other claims for property damage and claims for personal injury, including death, which may arise from operations under this Subcontract, whether such operations be by himself or any of his subcontractors or anyone directly or indirectly employed by either of them, with minimum limits of liability as follows:

| | | | |
|---|---|---|---|
| (b) Workmen's Compensation Insurance: | | Statutory limits as required by applicable State or Federal Law | |
| Employer's Liability | Limits: | Each accident | $500,000.00 |
| | | Disease Policy Limit | $500,000.00 |
| | | Disease Each Employee | $500,000.00 |
| (c) Commercial General Liability-Bodily Injury and Property Damage Insurance: | Limits: | General Aggregate | $2,000,000.00 |
| | | Products/Completed Operations Aggregate | $2,000,000.00 |
| | | Personal and Advertising Injury | $1,000,000.00 |
| | | Each Occurrence | $1,000,000.00 |
| (d) Automobile Liability-Bodily Injury and Property Damage Insurance, combined single limit: | Limits: | Combined Single Limit or Bodily Injury (Each Person) | $1,000,000.00 |
| | | Bodily Injury (Each Accident) | |
| | | Property Damage | |
| (e) Umbrella (excess insurance on all above liability insurance): | Limits: | Each Occurrence | $3,000,000.00 |
| | | Aggregate | |

(f) Equipment Floater Insurance insuring equipment used by the Subcontractor on the Project at its full replacement value.

(g) The Subcontractor's commercial general liability and automobile liability insurance shall be written to provide the following coverages; (1) the general liability coverage shall include the following coverages: premises/operations including blasting, collapse and underground, products liability, completed operations, independent contractors, broad-form property damage, personal injury, and contractual liability insurance coverage, the latter being as contemplated in Section 12 of the Subcontract, and (2) the automobile liability coverage shall include the following coverage: all owned autos, hired autos, and non-owned autos. Limits of liability under general and automobile liability insurance coverage shall be written on an occurrence basis for both bodily injury liability and property damage liability. The Contractor, the Owner, and the Architect shall be named as additional insureds on the Subcontractor's policies (except the Workman's Compensation) for this Project, and the Subcontractor's policies shall be endorsed to specify that such insurance will be primary insurance for the Contractor, Owner, and Architect that have been named as additional insureds. The limits and coverages set forth in this Paragraph A are the minimum limits and coverages required by this Subcontract and are not an indication of the type of coverage and limits the Subcontractor might need to protect the Subcontractor. All Subcontractor's insurance policies shall be written with insurance companies that are acceptable to Contractor. Completed operations insurance shall be maintained for at least one year after completion of this Subcontractor's work pursuant to this Subcontract. Umbrella coverage can be used to satisfy the limits of basic general liability and automobile liability limits.

(h) Certificates of Insurance: The Subcontractor will submit to the Contractor Three (3) copies of Certificates of Insurance certifying the type and the amount of coverage and that the insurance policies carried by him were in force before the work started and certifying that these policies will not be canceled or materially changed during the period of construction by an endorsement added to the policies and certificates reading substantially as follows: "The policy herein referred to is not cancelable or subject to a reduction of coverage by the Insurer during the 20 day period after THE STEWART/PERRY COMPANY, INC. has received written notice (as evidenced by return receipt of registered letter) of the Insurer's intention to cancel or reduce the coverage." The certificate shall indicate the coverage above as specified, shall state that the Contractor, Owner, and Architect are additional insureds and that the insurance coverage afforded to the additional insureds is primary insurance.

(i) The Contractor will not carry insurance coverage for the theft of any materials, tools or equipment on the job site nor will it carry any type insurance covering casualties to any materials, tools or equipment of the Subcontractor. The Subcontractor therefore assumes the risk of theft of its materials, tools, and equipment stored, installed or used on the job site and the risk of all other casualties to its tools, materials, and equipment.

(j) Contractor's job superintendent has been advised that subcontractors are not to begin work until such time as certificates of insurance have been furnished and a copy of this subcontract has been executed by the Subcontractor and returned to the Contractor.

(k) Subcontractor shall require its subcontractors to maintain insurance coverages as specified above, including but not limited to requiring that: (I) Subcontractor, Contractor and Owner be named as additional insureds on such policies for this Project, and (II) such policies shall be endorsed to specify that such insurance will be primary for the Subcontractor, Contractor, and Owner that have been named as additional insureds.

### SECTION 21.
Subcontractor shall provide safe and sufficient facilities at all times for inspection of Subcontractor's work by Contractor, the Architect, the Engineer or their duly authorized representatives, and shall upon 24 hours' written notice from Contractor, proceed promptly to take down all portions of the work and remove from the grounds and buildings all material, whether work or unwork, which the Architect and/or Engineer shall condemn or fail to approve and Subcontractor shall promptly make good all such work and all other work damaged or destroyed in removing or making good said condemned or unapproved work.

### SECTION 22.
Subcontractor shall notify the contractor immediately of any accident involving injury to Subcontractor's employee and furnish all information for filing of an accident and injury report by Contractor to its insurers. Subcontractor is to see that all injuries involving its employee(s) receive proper and prompt attention.

### SECTION 23.
The Subcontractor shall be responsible for delivery, unloading, storage and protection of all materials and/or equipment supplied or used in connection with the work under this Subcontract. All deliveries, location of job sites, storage facilities and office trailers, and job-site parking must be coordinated with Contractor's on-site project superintendent.

### SECTION 24.
When progress meetings are held on site, all principal subcontractors shall attend. Your office will be advised of the time and date of these meetings and you shall be represented at these meetings by someone authorized to make decisions during these meetings for you.

### SECTION 25.
Subcontractor shall maintain a competent foreman or superintendent, satisfactory to Contractor, on the site of the work at all times during the progress of the work with authority to act for the Subcontractor. Subcontractor shall notify Contractor in writing, prior to commencement of work at the job site of the names of the foreman or superintendent who will be on-site, and of the name of the employee who will be in charge of office work. Notification in writing shall be given to the Contractor prior to the subcontractor making any changes in said individuals. Subcontractor shall coordinate its work with all other contractors, subcontractors, and suppliers on the Project so as not to delay, or be delayed on, the Project.

### SECTION 26.
The Subcontractor shall take necessary precautions to properly protect the Subcontractor's work and the work of others from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the work or property of the Owner, the Contractor or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor, or the Contractor may so remedy and deduct the cost thereof from any amounts due or to become due the Subcontractor.

### SECTION 27.
Until final completion of the Project, the Subcontractor agrees not to perform any work directly, for the Owner or any tenants thereof, or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by the Contractor. All work for this Project performed by the Subcontractor shall be processed exclusively by the Contractor.

### SECTION 28.
The Subcontractor warrants to the Contractor and the Owner that all materials and equipment furnished under this Subcontract will be new unless otherwise specified, and that all work will be of good quality, free from faults and defects, fit, safe, sufficient for the purposes intended, and in conformance with the plans and specifications. All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective and the Subcontractor shall be responsible if any such defective work. The Subcontractor further agrees to warrant its work as called for in the General Contract. The warranties and guarantees set forth herein are in addition to any other warranties or guarantees provided by law or by separate agreement. The Subcontractor further agrees to execute any special guarantis or warranties that shall be required for the Subcontractor's work prior to final payment.

### SECTION 29.
Subcontractor shall clean all debris resulting from his work and shall remove it from the job site. The Subcontractor shall broom clean each work area prior to continuing work in said area. This cleaning will be done by the Subcontractor at no expense to the Contractor and the clean-up is to meet the job superintendents approval. In case it becomes necessary, after notifying the Subcontractor in writing, for the Contractor to clean up the debris left by the Subcontractor, then any cost involved will be backcharged the Subcontractor.

### SECTION 30.
Should the Owner suspend or terminate the General Contract or any part of the General Contract which includes the Subcontractor's work, the Contractor shall so notify the Subcontractor in writing and upon receipt of said notice the said Subcontractor shall immediately stop the Subcontractor's work. In the event of such Owner suspension or termination, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the General Contract. The Subcontractor agrees to cooperate with the Subcontractor, at the Subcontractor's sole expense, in the prosecution of any subcontractor claim arising out of an Owner suspension or termination and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor.

SECTION 31. Should there be insufficient number of Skilled Workers to perform the work covered by this Subcontract with promptness and diligence in accordance with Sections 3(a), 3(b), and Section 4(a) of this Subcontract. Should any workers performing work covered by this Subcontract engage in a strike or should stoppage or cease to work due to picketing or a labor dispute of any kind, Contractor may, at its option and without prejudice to any other remedies it may have, after twenty-four hours' written notice to Subcontractor provide any such labor and deduct the cost thereof from any monies then due or hereafter to become due Subcontractor. Further, Contractor may at its option, without prejudice to any other remedies it may have, exercise its remedies, including but not limited to termination, pursuant to Section 5 of this Subcontract.

SECTION 32. The Contractor may, at any time, by written notice to Subcontractor, terminate (without prejudice to any other right or remedy of Contractor or) the whole or any portion of this Subcontract for the convenience of the Contractor. Upon the receipt of such a written notice, Subcontractor will cease all on-site construction, if any, with regard to the portion (or all as the case may be) of the subcontract that is terminated. Subcontractor shall (1) cause such steps to be taken as necessary to protect the Work in place, material and equipment; (2) assign such of its purchase orders to the Contractor as contractor may direct; (3) notify all subcontractors of the order to stop operations and cancel or assign such subcontracts to the Contractor as directed by the Contractor; (4) cooperate in every way to minimize the cost to the Contractor in stopping and securing the Work and documentation to another Subcontractor as directed by the Contractor; (5) transfer title to all work, services, uncompleted work, supplies, or any other material produced or services performed or acquired for the Work terminated as Contractor may direct; (6) transfer any plans, drawing, information and the like (completed or not) as Contractor may direct; and (7) complete performance of any Work not terminated. In such event, Subcontractor will be compensated only for the reasonable cost of, add a reasonable overhead and profit on, the acceptable work performed and/or materials furnished to the date of termination, less any payments theretofore made to the Subcontractor by Contractor on account thereof, provided, however, no payment, partial or final shall be due or payable to the Subcontractor from Contractor or Contractor's surety unless and until, as a condition precedent, Contractor receives payment for Subcontractor's Work from the Owner. In no event shall the total sums paid to Subcontractor exceed the Subcontract price. In the event any exercise by Contractor of its remedies under Section 5 of this Subcontract shall be determined to have been wrongful, such exercise shall be deemed a termination for the convenience of the Contractor under this paragraph.

SECTION 33. Should Subcontractor be delayed in its work by Contractor, then Contractor shall owe Subcontractor therefore only an extension of time and not any compensation or damages; such extension of time shall be equal to the delay caused by the Contractor; any claim for such an extension of time must be made by Subcontractor to Contractor within forty-eight hours from the time of the beginning of the delay and if not so made shall be deemed waived.

SECTION 34. The provisions of this Subcontract are severable in whole or in part. If any provision or part hereof is found to be invalid or unenforceable, the remainder of the Subcontract shall continue in full force and effect and such provision may be limited in such a manner as to make it valid and enforceable.

SECTION 35. Subcontractor, at the option of Contractor, shall submit to Contractor within thirty (30) days from the date of this Subcontract, and before first payment hereunder is due, a correct breakdown showing estimated cost of each part of the work, the total of which shall equal the subcontractor amount; and such breakdown when approved by Contractor, and Architect or Owner, shall be used as a basis for verification of periodic estimates for partial payments. Subcontractor's statement, in form approved by Contractor, shall be delivered by Subcontractor to Contractor not later than the twenty-fifth day of any month during which the Subcontractor has performed work or furnished materials to the job, for which Subcontractor requests payment. Subcontractor recognizes that changes may be made in the schedule of the Work and agrees to comply with such changes without additional compensation. Contractor may withhold from any progress or final payment any amount reasonably necessary to protect Contractor if a third party asserts a claim against Contractor arising out of the work of Subcontractor or evidence reasonably indicates that such a claim(s) may be filed.

SECTION 36. Subcontractor, in addition to its responsibilities under Section 11 of this Subcontract, and not in lieu thereof, agrees to abide by and enforce Contractor's "Construction Site Safety Program" a copy of which is located in field office for your review and at the office of THE STEWART/PERRY COMPANY, 1400 Urban Center Drive, Suite 440, Birmingham, Alabama 35242 and made a part of this Subcontract. Contractor shall have no duty to monitor Subcontractor's practices or performance of the Work for safety, and shall have no duty to stop any unsafe practices of Subcontractor or to insure that Subcontractor's practices or methods of performing the Work are safe.

SECTION 37. If this subcontract is for electrical, mechanical, plumbing, fire sprinkler, and/or site work, Subcontractor shall be responsible for: (a) making all final connections to supply lines; (b) excavation, back-fill, compaction, and restoration of grades associated with the Work; (c) cutting, patching, dewatering, supports, and penetrations associated with the Work; and (d) fire stop, draft stop, and fire proof of all penetrations so as not to diminish and/or void the fire rating through assembles in accordance with any applicable building code, rules or regulations.

SECTION 38. If Contractor has another subcontract with Subcontractor and Subcontractor defaults in any manner under that subcontract, then at Contractor's option, such may be also treated as a default under this subcontract. In that event, Contractor, at its option, may take any action or exercise any remedy available to it under this subcontract or alternatively, Contractor may terminate this subcontract.

SECTION 39. If this subcontract requires Subcontractor to furnish payment and/or performance bond(s), such bond(s) shall be in form and substance, and from a surety company, acceptable to Contractor.

SECTION 40. Assignment. Subcontractor hereby assigns to Contractor (and its assigns) all of its interest in any subcontractors and/or purchase orders now existing or hereinafter entered into by Subcontractor for performance of any part of the Work which assignment will be effective upon acceptance by Contractor in writing and only as to those subcontracts and/or purchase orders which Contractor designates in said writing. It is agreed and understood that Contractor may accept said assignment at any time during the course of construction prior to final completion. It is further agreed that all subcontracts and/or purchase orders shall provide that they are freely assignable by Subcontractor to Contractor and assigns. It is further agreed that such assignment is part of the consideration to Contractor for entering into this subcontract with Subcontractor and may not be withdrawn prior to final completion.

SECTION 41. Material Safety Data Sheets (MSDSs) are hereby requested on any and all materials involved in the scope of Subcontractor's work that are considered hazardous to health under OSHA's Hazard Communication Standards 1926.59.

SECTION 42. No provision of this subcontract shall be construed more harshly or disfavorably against either the Contractor or the Subcontractor regardless of which party drafted the provision or for whose benefit such provision was included.

In Witness Whereof, the parties hereto have executed this agreement the day and year first above written.

Bagby & Russell Electric Co., Inc.
(Subcontractor)

By: _____
Richard A. Russell
Its: President

| SUBCONTRACTOR PLEASE COMPLETE |
| --- |
| ☐ Proprietorship |
| ☐ Partnership |
| ☒ Corporation |
| # 63-0942738 |
| FEDERAL I.D. # IF NOT A CORPORATION |

THE STEWART/PERRY COMPANY, INC.

By: _____

Its: _____

## ATTACHMENT "A"

DATE: 6-21-08                    SUBCONTRACT #: 0814-16001-00

SUBCONTRACTOR:          BAGBY & RUSSELL ELECTRIC COMPANY, INC.
                                513 WEST I-65 SERVICE ROAD. NORTH
                                MOBILE, ALABAMA 36608
                                251-344-5987 OFC
                                251-344-0308 FAX

AMOUNT:    $ 117,800.00

PROJECT: CIRCUIT CITY # 4227, SPANISH FORT, ALABAMA

THE SCOPE OF THIS AGREEMENT IS AS FOLLOWS:

Furnish all supervision, labor, materials, and equipment as required for a full turnkey
execution of the Electrical work shown or implied anywhere in the Contract Documents
and including, but not limited to, the following:

The Work also includes:
1] Cleanup daily to dumpster provided by the GC
2] All permits, tests, and inspections required by the local authorities including city
   and county licenses.
3] All sealing of voids made in walls.
4] Fire-stopping of penetrations through rated partitions.
5] All electrical work shown on the architectural, structural,
   plumbing, electrical, mechanical, and fire protection drawings.
6] Where permitted by code, use of MC cable is allowed. Notify GC before
installation if specifications do not allow its use.
7] All empty conduits to have pull strings and all boxes to have cover plates on
   before all final inspections.
8] TEMPORARY POWER AND LIGHTING FOR GENERAL CONSTRUCTION
   AND TRAILER.
9.] SECONDARY ELECTRICAL CONDUCTORS FROM A TRANSFORMER
   LOCATED AS SHOWN ON THE DRAWINGS.
10] Foreman is to be onsite during the Grand Opening and EC is to coordinate and
assist the signage contractor with the final connections.
The Work Excludes:
1] Utility company charges, excavation or removal of rock, concrete, asphalt,
unsuitable soils, excess fill, site lighting, UTILITY COMPANY CHARGES,
METERS, METER ENCLOSURES AND CT'S, power and light fixture materials,
and Novar or EMS packages AND TRANSFORMER PAD.

Also required is the following:

RECEIVED
JUL 28 2008
STEWART PERRY

- Subcontractor is responsible for their own safety precautions per OSHA requirements and is also responsible for adherence to all applicable building codes. Subcontractor is responsible to protect their own work.
- All required Submittals are to be made in conformance with the Contract Documents. Submit 6 sets no later than <u>NA</u>
- Subcontractor accepts the ATTACHED Project Schedule as an integral part of this agreement and further agrees to proceed to the fullest extent allowable by the structure as determined by the Superintendent.
- If a change in the scope of work is requested, a detailed breakdown of all anticipated incurred costs is to be submitted with an allowance for overhead and profit not to exceed 10%.
- Subcontractor is to inform the Superintendent of any perceived cost or schedule problem before the work is commenced. Any charges for extra work must be authorized in writing by a Stewart Perry representative before the extra work is commenced.
- This agreement takes precedence. All prior proposals are null and void.

**Circuit City #4227**
31000 Bass Pro Drive
Spanish Fort, AL  36577

**Project Manual Dated April 28, 2008** (table of contents attached)
Prepared By:
Casco Corporation
10877 Watson Road
St. Louis, MO  63127

| Sheet | Description | Latest Revision Date |
|---|---|---|
| T1.0 | Title Sheet | |
| **Civil** | | |
| CE-G2 | Site Plan (For Reference Only) | 2/25/2008 |
| CE-G3 | Horizontal Control Plan (For Reference Only) | 2/25/2008 |
| CE-G6 | Overall Grading Plan (For Reference Only) | 2/25/2008 |
| CE-G8 | Grading Plan (For Reference Only) | 2/25/2008 |
| CE-G9 | Grading Plan (For Reference Only) | 2/25/2008 |
| CE-G11 | Overall Grading Plan (For Reference Only) | 2/25/2008 |
| CE-G12 | Grading Plan (For Reference Only) | 2/25/2008 |
| CE-G14 | Grading Plan (For Reference Only) | 2/25/2008 |
| CE-G15 | Grading Plan Sheet 9 (For Reference Only) | 2/25/2008 |
| CE-G16 | Grading Plan (For Reference Only) | 2/25/2008 |
| CE-G26 | Subgrade Identification Plan (For Reference Only) | 2/25/2008 |
| PP-10 | Paving Plan/Profile (For Reference Only) | 2/25/2008 |
| PP-11 | Paving Plan/Profile (For Reference Only) | 2/25/2008 |
| PP-33 | Paving Plan (Area 4) (For Reference Only) | 2/25/2008 |
| PP-36 | Paving Plan (Area 7) (For Reference Only) | 2/25/2008 |
| PP-37 | Paving Plan (Area 8) (For Reference Only) | 2/25/2008 |
| PP-38 | Paving Plan (Area 9) (For Reference Only) | 2/25/2008 |
| PP-39 | Paving Plan Area 10 Plan (For Reference Only) | 2/25/2008 |
| PP-40/41 | Paving Plan Area 11/12 (For Reference Only) | 2/25/2008 |
| PP-43 | Paving Plan Area 14 (For Reference Only) | 2/25/2008 |
| PP-65 | Paving Identification Plan (For Reference Only) | 2/25/2008 |
| PP-68/69 | Paving Details (For Reference Only) | 3/1/2007 |
| PP-95 | Signing and Striping Plan - Area 11 (For Reference Only) | 2/25/2008 |
| PP-97 | Signing and Striping Plan - Area 14 (For Reference Only) | 11/19/2007 |
| PP-98/99 | Signing and Striping Details (For Reference Only) | 3/1/2007 (98) 11/19/2007 (99) |
| **Structural** | | |
| CE-U5 | Sanitary Sewer System Plan (For Reference Only) | 11/19/2007 |
| CE-U25 | Sanitary Sewer System Plan & Profile (For Reference Only) | 12/6/2007 |
| CE-U35 | Storm Sewer System Plan (For Reference Only) | 2/25/2008 |
| CE-U49,57/59 | Storm Sewer System Plan & Profile (For Reference Only) | 2/25/2008 |
| CE-U75 | Water Main System Plan (For Reference Only) | 2/25/2008 |
| CE-U103/104 | Water Main Plan & Profile (For Reference Only) | 2/25/2008 |
| U120/121/122 | Utility Details (For Reference Only) | 8/29/2005 (120) 6/15/2007 (121) 1/26/2007 (122) |

CIRCUIT CITY STORES, INC.

## CONTENTS

### DIVISION 0 - ADMINISTRATION

| | |
|---|---|
| 00100 | Instructions to Bidders |
| 00300 | Bid Proposal Form |
| 00400 | Bid Form Supplement |
| 00450 | Subcontractor List |
| 00500 | Agreement Form |
| | Stipulated Sum Contract |
| 00810 | Supplementary Conditions |
| | Subwaiver |
| | Lien Release Checklist |
| 00820 | Special Conditions |
| | Notice to Proceed (Exhibit F) |
| | Memorandum: Procedures - Field Order, Change Order, and Payment Application |
| | Change Order |
| | Field Order |
| | Application and Certificate for Payment |
| | Affidavit (Stored Materials) |
| | Waiver and Release of Liens and Lien Release Checklist |
| | Agreement of Final Payment |
| | Certificate of Substantial Completion |
| | Project Closeout Requirements and Checklist |
| | Contractor Certification |
| | STS Site Requirements |
| | Weekly Progress Photos Requirement |
| | Report of Store Condition at Start of Fixturing |
| | Fixture Installation Sequence |
| | General Contractor Warranty Form |
| | Sub Contractor Warranty Form |
| 00840 | Warranty Manual |
| 00850 | Drawing Index (Under Separate Cover) |
| 00900 | Geotechnical Information |
| 00910 | Hazardous Material Information |

### DIVISION 1 - GENERAL REQUIREMENTS

| | |
|---|---|
| 01010 | General Scope of Work |
| 01020 | Furnished By Owner Items |
| 01040 | Coordination |
| 01045 | Cutting and Patching |
| 01300 | Prerequisites for Payment |
| | Agreement of Final Payment |
| 01310 | Critical Path Schedule |
| 01340 | Shop Drawings, Samples and Submittals |
| 01400 | Quality Assurance Testing and Inspection |
| 01500 | Temporary Facilities |
| 01600 | Material and Equipment |
| 01700 | Contract Closeout |
| 01710 | Clean-Up and Disposal |

### DIVISION 2 - SITEWORK

| | |
|---|---|
| 02200 | Earthwork for Buildings and National Pollutant Discharge Elimination System (NPDES) Compliance |
| 02282 | Termite Control |

### DIVISION 3 - CONCRETE

| | |
|---|---|
| 03300 | Cast-in-Place Concrete |
| 03600 | Non-Shrink Grout |

---

**CIRCUIT CITY | 4227**
206266 | Spanish Fort, AL

CIRCUIT CITY STORES, INC.

SECTION 00010
CONTENTS

CIR

## DIVISION 4 - MASONRY

04201        Unit Masonry

## DIVISION 5 - METALS

| | |
|---|---|
| 05120 | Structural Steel (FBO) |
| 05210 | Steel Joist Girders (FBO) |
| 05220 | Steel Joists (FBO) |
| 05300 | Metal Roof Deck (FBO) |
| 05400 | Cold-Formed Metal-Framing |
| 05500 | Metal Fabrications (FBO) |

## DIVISION 6 - WOOD AND PLASTICS

| | |
|---|---|
| 06100 | Rough Carpentry |
| 06200 | Finish Carpentry |
| 06402 | Interior Architectural Woodwork |

## DIVISION 7 - THERMAL AND MOISTURE PROTECTION

| | |
|---|---|
| 07190 | Water Repellant |
| 07200 | Miscellaneous Building Insulation |
| 07241 | Exterior Insulation and Finish System |
| 07534 | Single-Ply TPO Membrane Roofing (FBO) |
| 07600 | Flashing and Sheet Metal (FBO) |
| 07700 | Roof Accessories (FBO) |
| 07900 | Joint Sealers |

## DIVISION 8 - DOORS AND WINDOWS

| | |
|---|---|
| 08110 | Steel Doors and Frames (FBO) |
| 08330 | Rolling Fire Doors (FBO) |
| 08331 | Overhead Coiling Security Grilles (FBO) |
| 08332 | Overhead Coiling Service Doors (FBO) |
| 08410 | Aluminum Entrances and Storefronts |
| 08460 | Automatic Entrance Doors (FBO) |
| 08700 | Finish Hardware (FBO) |
| 08800 | Glass and Glazing |

## DIVISION 9 - FINISHES

| | |
|---|---|
| 09260 | Gypsum Drywall |
| 09310 | Ceramic Tile (FBO) |
| 09510 | Acoustical Ceilings |
| 09655 | Resilient Flooring (FBO) |
| 09680 | Carpeting (FBO) |
| 09900 | Painting |
| 09986 | Fiberglass Reinforced Plastic Panels (FBO) |

## DIVISION 10 - SPECIALTIES

| | |
|---|---|
| 10150 | Toilet Partitions (FBO) |
| 10445 | Interior Signage |
| 10520 | Fire Extinguishers |
| 10529 | Security Box |
| 10607 | Chain Link Fence |
| 10670 | Wire Shelving |
| 10800 | Toilet and Bath Accessories (FBO) |

## DIVISION 11 - EQUIPMENT

11160        Loading Dock Equipment (FBO)

CIRCUIT CITY STORES, INC.

SECTION 00010
CONTENTS

**DIVISION 12 - FURNISHINGS**

12690    Floor Mats (FBO)

**DIVISION 13 - NOT USED**

**DIVISION 14 - NOT USED**

**DIVISION 15 - MECHANICAL**

15000    Mechanical Requirements
15100    General Mechanical Requirements
15400    Plumbing
15500    Fire Protection and Fire Pump (FBO)
15770    Heating, Ventilating and Air-Conditioning (FBO - limited)

**DIVISION 16 - ELECTRICAL**

16010    Electrical General Provisions
16110    Raceways
16120    Conductors
16130    Outlet Boxes
16140    Wiring Devices
16145    Track Busway System (FBO)
16150    Cable Tray (FBO)
16151    Flexible Wiring Systems for Lighting (FBO)
16152    Flexible Wiring Systems for Power (FBO)
16160    Switchgear (FBO)
16450    Grounding
16500    Lighting (FBO)
16700    Fire Alarm System (FBO)
16710    Energy Management System

END OF SECTION

# STEWART PERRY

## MASTER SCHEDULE

**CIRCUIT CITY STORE #4427**
**SPANISH FORT, AL**



Master schedule Gantt chart spanning JUN 2008 – JAN 2009.

### CONSTRUCTION

| Act ID | Description | Orig Dur | Rem Dur | Pred | Succ |
|---|---|---|---|---|---|
| 5400 | RTU Delivery | 26 | 26 | 9400 | 9900 |
| 5450 | Roofing | 5 | 5 | 3900, 9100 | 5390, 9100 |
| 6200 | Automatic Entrances | 5 | 5 | 6100 | 6900 |
| 6800 | All OH Doors & Dock Equipment | 5 | 5 | 6800 | 6000 |
| 7000 | Coping, Gutters & Downspouts | 5 | 5 | 5000 | 9000 |
| 7200 | Compactor | 5 | 5 | 9000 | 9900 |
| 7350 | Switchgear Delivery | 41 | 41 | 9700 | 7400 |
| 7700 | Security Grilles | 5 | 5 | 8700 | 6900 |
| 7900 | Off Fine Protection Rough In | 10 | 10 | 7750 | 7700 |
| 8000 | Carpet & VCT | 5 | 5 | 8800, 9050 | 9050, 9400 |
| 8900 | Prepare Punchlist | 2 | 2 | 9000 | 9900 |
| 9600 | Fixtures | 12 | 12 | 9500 | 8700 |

| Act ID | Description | Orig Dur | Rem Dur | Pred | Succ |
|---|---|---|---|---|---|
| 1000 | Layout Building | 1 | 1 | | 1500 |
| 1500 | Stone Building Pad | 6 | 6 | 1000 | 2000 |
| 2000 | Concrete Foundations / Walls | 6 | 6 | 1500 | 2500 |
| 2010 | CMU Delivery | 14 | 14 | | 2200 |
| 2200 | Loadbearing CMU | 10 | 10 | 2000, 2010 | 3000 |
| 3000 | Steel / Joist / Deck Erection | 6 | 6 | 2200 | 3800 |
| 3800 | Exterior Light Gauge Steel Framing | 5 | 5 | 3000 | 3900 |
| 3900 | Balance of Light Gauge Framing at Main Entry | 5 | 5 | 3800 | 5450 |
| 4000 | MEP Slab Rough In | 3 | 3 | | 4800 |
| 4800 | Prep & Pour SOG | 3 | 3 | 4000 | |
| 4900 | Dock Footings & Walls | 7 | 7 | | 4800 |

Early bar
Target bar
Progress bar
Critical bar
Start milestone point
Finish milestone point

CCSPFORT (SUREETRAK)
Proj. Info: CCSPFT
LAYOUT LETTER
JOB# 07116
FILTER: ALL ACTIVITIES

WSS
WILSHIRE
SCHEDULING
SERVICES,
INC.

RUN DATE: 10JUN08
DATA DATE: 16JUN08
JOB# 07116
PAGE 1A OF 4A



CIRCUIT CITY STORE #4427
SPANISH FORT, AL

RUN DATE: 10JUN08
DATA DATE: 16JUN08
CROW 0771-6
PAGE 2A OF 4A

WSS
WOLVERINE
SCHEDULING
SERVICES,
INC.

| Act ID | Description | Orig Dur | Rem Dur | Pred | Succ |
|--------|-------------|----------|---------|------|------|
| 5000 | Exterior Concrete Paving | 15 | 15 | | 4490 |
| 5100 | Roof Blocking | 5 | 5 | 5200 | 540 |
| 5200 | Roof Curbs | 2 | 2 | 3000 | 5300 |
| 5300 | Set RTU's | 2 | 2 | 5300, 5400 | 5300, 5400 |
| 5500 | Gas Lines on Roof | 5 | 5 | 5100 | 5300 |
| 5700 | Rock Coast Veneer Material Delivery | 23 | 23 | M108 | 5600 |
| 5800 | Masonry Veneer | 7 | 7 | | 5900 |
| 5900 | EIFS | 4 | 4 | | 9130 |
| 6000 | Exterior Walls | 4 | 4 | | 6000 |
| 6100 | Storefront | 15 | 15 | | 6200, 630L |
| 6300 | Exterior Block Fill | 15 | 15 | | 6400 |
| 6400 | Foam Walls | 2 | 2 | | 6300 |
| 6500 | Prep Exterior CMU for Finish Paint | 2 | 2 | 6400 | 6600 |
| 6600 | First Coat of Exterior CMU Paint | 2 | 2 | | 6600 |
| 6700 | Exterior Hollow Metal Doors | 5 | 5 | 6000 | 6000 |
| 6900 | Building Dry | 0 | 0 | | 6500, 670L |
| 7050 | Final Coat Paint Exterior CMU | 5 | 5 | 7000 | 7000 |
| 7100 | Fence at Loading Dock | 2 | 2 | 7200 | 9600 |
| 7400 | Set Switchgear | 2 | 2 | 7200 | 7300 |
| 7450 | Secondary Conductors from Gear to Xfrmr | 3 | 3 | 7400 | 7500 |
| 7500 | Make Up Panels | 5 | 5 | 7400, 7500 | 7500 |
| 7550 | Permanent Power to Switchgear | 5 | 5 | 7300, 7550 | 8700 |
| 7600 | Startup RTU's | 5 | 5 | | |
| 7650 | Interior Stud Framing | 15 | 15 | 4600 | 7700, 7000 |
| 7750 | Overhead MEP Rough In | 15 | 15 | 4300 | 7000, 7000 |
| 7850 | Dry Wall Paint Deck & Structure | 3 | 3 | | 7770, 7800 |

CCSFCRT (SureTrak0)
REPORT: CSF1
LAYOUT: LAYTER
FILTER: ALL ACTIVITIES

| Act ID | Description | Orig Dur | Rem Dur | Pred | Succ |
|--------|-------------|----------|---------|------|------|

Early bar
Target bar
Progress bar
Critical bar
Start milestone point
Finish milestone point

| ACT ID | DESCRIPTION | ORIG DUR | REM DUR | PRED | SUCC |
|---|---|---|---|---|---|
| 7900 | IN WALL MEP ROUGH IN | 5 | 5 | 7800 | 8000 |
| 8000 | HANG, TAPE & FINISH DRYWALL | 6 | 6 | 7900 | 8100 |
| 8050 | INTERIOR STOREFRONTS & ENTRANCES | 7 | 7 | 7700 | 8350 |
| 8100 | PRIME PAINT WALLS | 2 | 2 | 8000 | 8150 8200 |
| 8150 | CERAMIC TILE | 3 | 3 | 8100 | 8600 |
| 8200 | PLUMBING FIXTURES | 3 | 3 | 8100 | 8350 |
| 8250 | ACOUSTICAL CEILING FRAMING | 4 | 4 | 8100 | 8300 |
| 8300 | MEP CEILING TRIM OUT | 5 | 5 | 8250 | 8550 |
| 8350 | TOUCH UP WALLS | 4 | 4 | 8050 8200 | 8400 8500 |
| 8400 | FINISH PAINT WALLS & TRIM - FIRST COAT | 4 | 4 | 8350 | 8450 |
| 8450 | SPECIALTIES | 10 | 10 | 8400 | 8550 |
| 8500 | MEP WALL TRIM OUT | 5 | 5 | 8350 | 8600 |
| 8550 | FINISH PAINT WALLS & TRIM - FINAL COAT | 3 | 3 | 8300 8450 | 8600 |
| 8600 | FINAL MEP INSPECTIONS | 1 | 1 | 8150 8500 8550 | 8700 |
| 8650 | SEAL CONCRETE FLOORS | 1 | 1 | 8600 | 8700 |
| 8700 | ACOUSTICAL CEILING TILE | 2 | 2 | 8650 | 8750 |
| 8750 | INTERIOR DOORS & HARDWARE | 5 | 5 | 8700 | 8900 |
| 9000 | FINAL CLEANUP | 3 | 3 | 8750 | 9500 |
| 9500 | READY FOR PUNCHLIST & FIXTURING | 0 | 0 | 9000 | 9700 |
| 9700 | FINAL COMPLETION / CERTIFICATE OF OCCUPANCY | 1 | 1 | 9600 | 9900 |
| 9900 | WORK OFF PUNCHLIST | 12 | 12 | 9700 | |

**CONTRACT MILESTONES**

| ACT ID | DESCRIPTION | ORIG DUR | REM DUR | PRED | SUCC |
|---|---|---|---|---|---|
| M100 | START OF CONSTRUCTION | 0 | 0 | | 100 |
| M110 | FIXTRAY INSTALLATION COMPLETE | 0 | 0 | | |
| M200 | READY FOR EXTERIOR SIGNS | 0 | 0 | | |

Early bar
Progress bar
Critical bar
Start milestone point
Finish milestone point

CIRCUIT CITY STORE #4427
SPANISH FORT, AL

CCSFORT (SureTrak)
REPORT: CSFI
LAYOUT: LISTIER
FILTER: ALL ACTIVITIES

WSS
WOOLARD
SCHEDULING
SERVICES,
INC.

RUN DATE: 10JUN08
DATA DATE: 10JUN08
Job# 0716
PAGE 3A OF 4A

| ACT ID | DESCRIPTION | Orig Dur | Rem Dur | Pred | Succ |
|---|---|---|---|---|---|
| M290 | TELEPHONE EQUIPMENT ROOM READY | 0 | 0 | N30B | |
| M300 | READY FOR WAREHOUSE RACKING | 0 | 0 | M290 | M310 |
| M310 | READY FOR NOVAR / ENTEC STARTUP | 0 | 0 | M300 | |
| M320 | AVAILABLE TO START STORE FIXTURES | 0 | 0 | | N100, N130 |
| M400 | READY FOR STORE FIXTURING | 0 | 0 | | M660 |
| M500 | FIXTURES COMPLETE | 0 | 0 | M660 | |
| M600 | CERTIFICATE OF OCCUPANCY | 0 | 0 | | |
| M900 | SUBSTANTIAL COMPLETION | 0 | 0 | | M260, N10B |
| M990 | READY FOR MERCHANDISING | 0 | 0 | N10B | |
| M990 | 18 W6209 | 125 | 125 | | |

CIRCUIT CITY STORE #4427
SPANISH FORT, AL.

2008    2009

JUN   JUL   AUG   SEP   OCT   NOV   DEC   JAN

19SEP08 ◆ TELEPHONE EQUIPMENT ROOM READY
19SEP08 ◆ READY FOR WAREHOUSE RACKING
22SEP08 ◆ READY FOR NOVAR / ENTEC STARTUP
26SEP08 ◆ AVAILABLE TO START STORE FIXTURES
07OCT08 ◆ READY FOR STORE FIXTURING
16OCT08 ◆ FIXTURES COMPLETE
16OCT08 ◆ CERTIFICATE OF OCCUPANCY
24OCT08 ◆ SUBSTANTIAL COMPLETION
20OCT08 ◆ READY FOR MERCHANDISING
18OCT08 ◆

RUN DATE: 10JUN09
DATA DATE: 16JUN09
JOB# 0716
PAGE 4A OF 4A

CCSFORT (SSRET/KAD)
REPORT: CSF1
LAYOUT: LETTER
FILTER: ALL ACTIVITIES

WSS
WOLVERINE
SCHEDULING
SERVICES,
INC.

Early bar
Target bar
Progress bar
Critical bar
Start milestone point
Finish milestone point

# AMENDMENT TO CONTRACT

The following amendment becomes part of the attached contract.

NOTICE TO OWNER WILL BE SENT BY BAGBY & RUSSELL
ELECTRIC COMPANY, INC., IN COMPLIANCE WITH THE CODE
OF ALABAMA 35-11-210, AND IN NO WAY IS INTENDED TO
REFLECT NEGATIVELY ON THE CREDIT OR WORKMANSHIP
OF OUR CUSTOMERS.

_____          _____
       CONTRACTOR                      BAGBY & RUSSELL ELECTRIC CO.

## AMENDMENT TO CONTRACT

The following amendment becomes part of the attached contract.

BAGBY & RUSSELL ELECTRIC COMPANY, INC. PERSONNEL
ARE NOT ALLOWED TO DO ANY CHANGE ORDERS TO THIS
CONTRACT WITHOUT PRIOR SIGNED AUTHORIZATON FROM
YOUR HOME OFFICE.

_____                    _____
     CONTRACTOR                            BAGBY & RUSSELL ELECTRIC CO.

## AMENDMENT TO CONTRACT

The following amendment becomes part of the attached contract.

IF MULTI-EMPLOYER OSHA FINES ARE IMPOSED ON US FOR

ITEMS THAT ARE NOT ELECTRICAL, BAGBY & RUSSELL

ELECTRIC COMPANY, INC. WILL REQUIRE A CHANGE ORDER

TO THIS CONTRACT TO COVER SUCH FINES.

_____
CONTRACTOR

_____
BAGBY & RUSSELL ELECTRIC CO.

# STATE OF ALABAMA

CONTROL NO.

## 110526

**MOBILE** County

LICENSE NO.

**2008-005006**

ACCOUNT NO.

JS-ID: 98002485

| LICENSE YEAR |
|---|
| **2007-2008** |

ISSUED TO:

BAGBY & RUSSELL ELECTRIC COMPANY INC
RUSSELL FRANKLIN D CEO
513 WEST I-65 SERVICE RD N
MOBILE AL  36608 0000

| DATE ISSUED | | |
|---|---|---|
| 10 | 19 | 2007 |
| MO. | DAY | YR. |

| LICENSE TYPE | |
|---|---|
| STORE LICENSE | |
| CHAIN STORE LICENSE | |
| OCCUPATIONAL LICENSE | XX |

BUSINESS LOCATION:
513 WEST I-65 SERVICE RD N
MOBILE AL  36608 0000

**EXPIRES
SEPTEMBER 30, 2008**

TELLER: b153
REC-ID: 1-240703

| TION | BUSINESS TYPE | LICENSE AMOUNT | FEE | PENALTY | CITATION | INTEREST | TOTAL |
|---|---|---|---|---|---|---|---|
| 1.0 | CONTRACTOR MAX | 375.00 | 1.00 | | | | 376.00 |

**TRANSFER OF LICENSE**

Evidence having been adduced before me that a bona fide
of the business licensed by this certificate has been made
censee, this license is transferred to said purchaser.

*Robert L. Childree*
State Comptroller

*Thomas Surtes*
Commissioner of Revenue

Name of Purchaser

CAROL R. NORRIS

| | |
|---|---|
| TOTAL | 376.00 |
| MAIL FEE | 1.00 |
| TOTAL WITH MAIL FEE | 377.00 |

Issuing Authority                    Issuing Authority

# SPANISH FORT, ALABAMA
## *Business License 2008*

| Mailing Name and Address: | | |
|---|---|---|
| Pearl L. Walker | THIS LICENSE EXPIRES : | 12/2008 |
| Bagby & Russell Electric Company, Inc. | Taxpayer ID Number : | 785 |
| P.O. Box 7098 | Location Number : | 1 |
| | Date License Issued : | 02/01/2008 |
| Mobile        AL      36670-7098 | License Number : | 2003-6713 |

Bagby & Russell Electric Company, Inc.

513 West I-65 Service Road N.

Mobile        AL      36670-7098

The firm, corporation, organization, business or person whose name appears above has paid the required
license fees and is authorized to engage in business in Spanish Fort, Alabama, as indicated below:

| Code | Description |
|---|---|
| 117 | CONTRACTOR - ELECTRICIAN |

**If** business activity is discontinued in Spanish Fort, Alabama, notify the City within 30 days.

Issued By : _Mary A. Williams_        **CITY CLERK**

Business License Receipt
Bagby & Russell Electric Company, Inc.

License Number
2003-6713

FOR CITY OF SPANISH FORT, ALABAMA        SID:     2008

| Code | Description | Amount |
|---|---|---|
| 117 | CONTRACTOR - ELECTRICIAN | $60.00 |

| | | |
|---|---|---|
| | Total License(s) | $60.00 |
| | Total Penalty | $0.00 |
| | Total Interest | $0.00 |
| Total Issue Fee        $5.00 | Total Amount Remitted | $65.00 |

STATE OF ALABAMA

# State Licensing Board for General Contractors



## THIS IS TO CERTIFY THAT

BARRY & RUSSELL ELECTRIC CO INC

MOBILE, AL 36670

is hereby licensed a General Contractor in the State of Alabama and is authorized to

perform the following type(s) of work:

E: ELECTRICAL

LICENSE NO.: 16577

TYPE: RENEWAL

BID LIMIT: U

AMOUNT: UNLIMITED

until    November 30, 2008    when this Certificate expires.

Witness our hands and seal of the Board dated Montgomery, Ala.,

1 st    day of    NOVEMBER    2007



SECRETARY-TREASURER    CHAIRMAN

034032