Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**FIRST APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM NOVEMBER 10, 2008 THROUGH JANUARY 31, 2009**

McGuireWoods LLP ("MW"), in its capacity as co-counsel

to the debtors and debtors in possession in the above-

captioned jointly administered cases (collectively, the

"Debtors"),[1] submits the following as its First Application

for Compensation and Reimbursement of Expenses for Services

Rendered from November 10, 2008 through January 31, 2009

(the "Application") pursuant to 11 U.S.C. §§ 330, 331 and

503(b) and Federal Rule of Bankruptcy Procedure 2016.  MW

certifies that the Debtors have received a copy of this

Application, but have not completed their review.  In

addition, MW certifies that a copy of this Application has

been served on the Office of the United States Trustee and

counsel for the Official Committee of Unsecured Creditors.

For its Application, MW seeks the entry of an order,

substantially in the form attached hereto as <u>Exhibit A</u>,

granting interim approval of compensation in the amount of

$906,193.25 and reimbursement of expenses in the amount of

$37,355.52 for services rendered by MW from November 10,

2008 through January 31, 2009 (the "Application Period").

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC
(5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia,
Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address is 9950
Mayland Drive, Richmond, Virginia 23233.

In support of the Application, MW respectfully represents as follows:

## **JURISDICTION**

1.    This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The bases for the relief requested herein are sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2016.

## **BACKGROUND**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.   On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent.  On January 17, 2009, the agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores.

## MCGUIREWOODS LLP'S EMPLOYMENT

7.   On November 18, 2008, MW filed an Application to Employ and Retain McGuireWoods LLP as Counsel for the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 329 (Docket No. 191) (the "Employment Application").

8.   On December 8, 2008, the Court entered an order authorizing the employment of MW as counsel to the Debtors (Docket No. 791) (the "Employment Order").

9.   By this Application, MW is seeking, _inter alia_, interim approval of its compensation and reimbursement of expenses pursuant to the Employment Order and pursuant to sections 330, 331 and 503(b) of the Bankruptcy Code for the period of November 10, 2008 through January 31, 2009.

10.  MW charges legal fees on an hourly basis at its attorneys' and paraprofessionals' hourly rates, which rates are set in accordance with the attorney's or paraprofessional's seniority and experience and are adjusted from time to time.  MW also charges the Debtors for its actual out-of-pocket expenses incurred including, but not limited to, photocopying, long distance telephone calls, messenger services, computer research, travel expenses, overnight mail and court fees.  MW's fee structure and expense reimbursement policies were disclosed in MW's Employment Application, to which no party objected and this Court approved.  See Docket Nos. 191, 791.

11.  The names of all MW attorneys and paraprofessionals who have worked on this matter and their respective hourly rates are set forth on Exhibit B hereto.

12.  MW currently holds a retainer from the Debtors in the approximate amount of $348,500.00.

13.  To the best of MW's knowledge, and upon information and belief, the Debtors have paid or will pay undisputed postpetition operating expenses in the ordinary course.

14.  To the best of MW's knowledge, and upon information and belief, the Debtors have sufficient funds on

hand to pay the compensation and reimbursement of expenses
requested herein.

15.   To the best of MW's knowledge, and upon
information and belief, the Debtors have filed with the
United States Trustee all monthly operating reports
presently due, and have paid all quarterly fees to the
United States Trustee that are presently due.

### FEE PROCEDURES AND MONTHLY FEE STATEMENTS

16.   On December 9, 2008, this Court entered an Order
Under Bankruptcy Code Sections 105(a) and 331 Establishing
Procedures for Interim Compensation (Docket No. 830) (the
"Interim Compensation Order"), which approved the interim
compensation procedures attached thereto (the "Interim
Compensation Procedures").   Pursuant to paragraph (d) of the
Interim Compensation Procedures, interim applications for
compensation and reimbursement of expenses must be filed on
or before March 17, 2009.   Moreover, in accordance with
paragraphs (a) and (d) of the Interim Compensation
Procedures, MW will serve a copy of this Application upon
the Notice Parties (as defined therein).   Moreover, notice
of the Application will be served on the parties as required
by the Case Management Order (Docket No. 130).

17.   Pursuant to the Interim Compensation Procedures, approximately on or after the tenth (10th) day of each month following the month for which compensation was sought, MW submitted a monthly statement to the Notice Parties (as defined in the Interim Compensation Procedures).  The parties had twenty (20) days to review any such statement. If there were no objections, at the expiration of the twenty (20) day period, the Debtors were ordered to promptly pay eighty-five percent (85%) of the fees and one hundred percent (100%) of the expenses identified in each monthly statement.  MW submitted monthly statements for each month during the Application Period and no objections were received.  Accordingly, MW has been paid approximately 85% of its total requested fees and approximately 100% of its expenses during the Application Period.  A chart summarizing these payments and the monthly statements is attached hereto as Exhibit C.

## REQUESTED FEES AND REIMBURSEMENT OF EXPENSES

18.   MW has played an important role in advising the Debtors and handling the day to day administration of the Debtors' chapter 11 cases.  As a result of its efforts during the Application Period, MW now seeks interim allowance of $906,193.25 in fees calculated at the

applicable guideline hourly billing rates of the firm's
personnel who have worked on the cases, and $37,355.52 in
expenses actually and necessarily incurred by MW while
providing services to the Debtors during the Application
Period.

19.   In staffing this case, in budgeting and incurring
charges and disbursements, and in preparing and submitting
this Application, MW has been mindful of the need to be
efficient while providing full and vigorous representation
to the Debtors.  MW also has been especially cognizant of
the standards established by this Court for compensation of
professionals and reimbursement of charges and
disbursements.  As described in detail herein, MW believes
that the requests made in this Application comply with this
Court's standards in the context of the unique circumstances
surrounding these large and complex chapter 11 cases.

**SUMMARY OF SERVICES PROVIDED DURING THE APPLICATION PERIOD**

**A.    General Case Administration.**

20.   <u>Description</u>.  MW assisted with, <u>inter alia</u>, the
review, analysis and preparation of correspondence,
documents, pleadings and notices; handled the day to day
administration of the Debtors' chapter 11 cases; prepared
and maintained a case calendar, hearing planners and omnibus

hearing agendas used by the Debtors and their professionals
in these chapter 11 cases; prepared for and participated in
all court hearings in these chapter 11 cases; regularly
participated in meetings and telephone conferences with
officers and employees of the Debtors and the Debtors'
financial and other advisors regarding the foregoing as well
as other operational, organizational and strategic issues
arising in the cases; regularly participated in meetings and
telephone conferences with professionals for the Committee,
creditors and other parties in interest regarding the
foregoing and various other issues arising in these cases;
assisted the Debtors with the service of relevant documents
on appropriate parties, and the organization of information
and document requests from various parties; handled issues
relating to electronic case filing; regularly communicated
with the Clerk's office, Chambers and the U.S. Trustee's
office regarding various case administration issues; handled
the internal coordination of motions, responses, objections
and other related matters; coordinated the establishment and
maintenance of a MW's telephone hotline to assist in
responding to the numerous inquiries from creditors and
other parties in interest that these cases have generated;

and researched responses to each message and otherwise
responded to all inquiries tendered through the hotline.

21.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors in the
administration and prosecution of these complex chapter 11
cases.

22.   <u>Status</u>.   These and other general case
administration matters will continue until the chapter 11
cases are closed.

23.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 1094.1 hours during the Application Period for a
total of $343,054.50.   The complete narrative, time detail
of the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**B.    Restructuring and General Strategy.**

24.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, the
resolution of various issues and the development of various
strategies regarding the Debtors' chapter 11 cases; analyzed
issues and strategy regarding the Debtors' sale procedures,
auction and liquidation; reviewed, drafted and handled the
filing of pleadings regarding the foregoing; handled
inquiries regarding the sale of assets; and participated in

meetings and telephone conferences with the Debtors and
their professionals regarding the foregoing.

25.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors in the
administration and prosecution of these complex chapter 11
cases.

26.   <u>Status</u>.   These matters will continue as the need
arises.

27.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 114.1 hours during the Application Period for a
total of $52,660.00.   The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**C.   Corporate Governance.**

28.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, the
analysis of board policies and director correspondence;
participated in board committee meetings; and prepared board
minutes.

29.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors with corporate
governance issues that arose as a result of the filing of
the chapter 11 cases.

30.  <u>Status</u>.  These matters will continue as the need arises.

31.  <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 34.2 hours during the Application Period for a total of $20,966.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**D.    Schedules and SOFAS.**

32.  <u>Description</u>.  MW assisted the Debtors and their professionals with, <u>inter alia</u>, the preparation of and filing of the Debtors' Schedules of Assets and Liabilities and the Debtors' Statements of Financial Affairs.

33.  <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with compliance with the Bankruptcy Code, local bankruptcy rules and the United States Trustee's guidelines.

34.  <u>Status</u>.  These matters will continue as the need arises.

35.  <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 16.3 hours during the Application Period for a total of $7,043.00.  The complete narrative, time detail of

the hours incurred and the value of the matter by

professional is attached hereto as <u>Exhibit E</u>.

**E.    Monthly Operating Reports.**

36.  <u>Description</u>.  MW assisted the Debtors and their

professionals with, <u>inter</u> <u>alia</u>, the preparation of and

filing of the Debtors' Monthly Operating Reports.

37.  <u>Necessity and Benefit to the Estates</u>.  These

services were necessary to assist the Debtors with

compliance with the Bankruptcy Code, local bankruptcy rules

and the United States Trustee's guidelines.

38.  <u>Status</u>.  These matters will continue as the need

arises.

39.  <u>Hours Spent and Compensation Requested</u>.  In

connection with the foregoing matters, MW's professionals

expended 2.8 hours during the Application Period for a total

of $1,120.00.  The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as <u>Exhibit E</u>.

**F.    Professional Retention/Fee Applications.**

40.  <u>Description</u>.  Pursuant to the requirements of the

Interim Compensation Order, MW has prepared detailed monthly

fee statements for distribution to the Notice Parties and

handled inquires from all of the professionals regarding

monthly fee statements.  Moreover, MW assisted with, <u>inter
alia</u>, various issues pertaining to the retention and payment
of various professionals employed by the Debtors and the
Committee in connection with the Debtors' bankruptcy cases,
including bankruptcy counsel, special counsel, accountants,
financial advisors and ordinary course professionals;
reviewed, analyzed, drafted and filed various employment
applications on behalf of the Debtors; reviewed and analyzed
various employment applications filed by the Committee;
coordinated the employment of ordinary course professionals
and filed affidavits on behalf of ordinary course
professionals according to the procedures established by
this Court; and communicated with the Office of the United
States Trustee regarding the foregoing.

41.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to comply with the Bankruptcy Code,
the Interim Compensation Order and the United States
Trustee's guidelines.  Additionally, access to qualified
professionals is critical to the Debtors' chapter 11 cases.

42.  <u>Status</u>.  These matters will continue as the need
arises.

43.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals

14

expended 70.9 hours during the Application Period for a total of $29,490.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**G.   Creditors Committee.**

44.  Description.  MW assisted with, inter alia, the organization of and preparation for the section 341 meeting of creditors; researched issues regarding a confidentiality agreement with the Committee; responded to information requests by the Committees' professionals; and communicated with the Committees' professionals regarding the progress and status of the cases, specific pleadings and various other issues.

45.  Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors and to maintain open communication with the Committee and its professionals.

46.  Status.  These matters will continue as the need arises.

47.  Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 3.8 hours during the Application Period for a total of $1,765.00.  The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as Exhibit E.

**H.   Automatic Stay.**

48.   Description.  MW assisted with, inter alia, the

review, analysis and preparation of correspondence,

documents, pleadings and notices relating to motions for

relief from the automatic stay; negotiated settlements with

various parties seeking to lift the automatic stay;

reviewed, analyzed and drafted pleadings for various

ordinary course professionals regarding the filing of

suggestions in bankruptcy in litigation in which the Debtors

and/or their current and/or former employees are parties;

drafted correspondence and participated in meetings and

telephone conferences regarding violations of the automatic

stay; and conducted research regarding various issues

related to automatic stay matters.

49.   Necessity and Benefit to the Estates.  These

services were necessary to assist the Debtors in enforcing

the automatic stay, reducing the administrative burden on

the Debtors' management and reducing expenses incurred by

the Debtors' bankruptcy estates by resolving potential

automatic stay related matters.

50.   Status.   These and other automatic stay related matters will continue until a chapter 11 plan is confirmed.

51.   Hours Spent and Compensation Requested.   In connection with the foregoing matters, MW's professionals expended 76.8 hours during the Application Period for a total of $34,247.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**I.   Cash Collateral.**

52.   Description.   MW assisted with, inter alia, the analysis of cash collateral issues and payment of administrative claims; and participated in telephone conferences with counsel for the bank regarding the foregoing.

53.   Necessity and Benefit to the Estates.   These services were necessary to assist the Debtors with cash collateral issues that arose during the chapter 11 cases.

54.   Status.   These matters will continue as the need arises.

55.   Hours Spent and Compensation Requested.   In connection with the foregoing matters, MW's professionals expended 0.4 hours during the Application Period for a total of $220.00.   The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as Exhibit E.

**J.    Credit Cards.**

56.  Description.  MW assisted with, inter alia, the

analysis of issues related to the Debtors' credit card

provider; and participated in telephone conferences with the

Debtors and their professionals regarding the foregoing.

57.  Necessity and Benefit to the Estates.  These

services were necessary to assist the Debtors with issues

pertaining to the Debtors' credit card provider.

58.  Status.  These matters will continue as the need

arises.

59.  Hours Spent and Compensation Requested.  In

connection with the foregoing matters, MW's professionals

expended 1.0 hours during the Application Period for a total

of $497.50.  The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as Exhibit E.

**K.    Employment and Compensation.**

60.  Description.  MW assisted with, inter alia, the

review and analysis of pleadings regarding executive

compensation and workers' compensation.

61.   <u>Necessity and Benefit to the Estates</u>.   These

services were necessary to assist the Debtors with issues

pertaining to various employee related matters.

62.   <u>Status</u>.   These and other employee related matters

will continue as the need arises.

63.   <u>Hours Spent and Compensation Requested</u>.   In

connection with the foregoing matters, MW's professionals

expended 0.5 hours during the Application Period for a total

of $175.00.   The complete narrative, time detail of the

hours incurred and the value of the matter by professional

is attached hereto as <u>Exhibit E</u>.

**L.   Executory Contracts.**

64.   <u>Description</u>.   MW assisted with, <u>inter alia</u>, the

review and analysis of various executory contracts and the

development of various strategies regarding the possible

assumption or rejection of certain executory contracts;

researched, drafted, reviewed and analyzed pleadings

regarding (i) the extension of time to assume or reject

executory contracts, (ii) the assumption and rejection of

certain executory contracts, (iii) motions to compel the

assumption and rejection of certain executory contracts, and

(iv) motions for adequate protection; negotiated matters

related to the assumption and rejection of certain executory

contracts; and regularly participated in meetings and telephone conferences with the Debtors, their professionals and opposing counsel regarding the foregoing.

65. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in developing and implementing a strategy for assuming and rejecting various executory contracts.

66. <u>Status</u>.  These matters will continue as the need arises.

67. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 22.1 hours during the Application Period for a total of $10,190.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E.</u>

**M.  Litigation.**

68. <u>Description</u>.  MW historically represented the Debtors in various litigation matters and in connection therewith, prepared suggestions in bankruptcy and handled inquires regarding the bankruptcy filing.  MW also assisted with, <u>inter</u> <u>alia</u>, the strategy and negotiations regarding responding to third party subpoenas; continued prosecution of litigation matters in which the Debtors are plaintiffs,

and other litigation that could affect the Debtors and/or
their current and/or former employees; collected,
maintained, analyzed, reviewed and summarized documents in
connection with discovery related to the Debtors'
postpetition financing; prepared for depositions regarding
the Debtors' postpetition financing and a potential
contested hearing; prepared objections to and responded to
discovery in connection with the Debtors' postpetition
financing; corresponded with the Debtors' management and the
Debtors' professionals regarding the foregoing; and
corresponded and negotiated with Committee counsel regarding
the foregoing.

    69.  Necessity and Benefit to the Estates.  These
services were necessary to assist the Debtors with various
litigation matters.

    70.  Status.  These matters will continue as the need
arises.

    71.  Hours Spent and Compensation Requested.  In
connection with the foregoing matters, MW's professionals
expended 865.45 hours during the Application Period for a
total of $228,089.25.  The complete narrative, time detail
of the hours incurred and the value of the matter by
professional is attached hereto as Exhibit E.

**N.    Vendor Matters.**

72.    Description.  MW assisted with, inter alia,
developing and implementing strategies for handling vendor
related issues; reviewed, analyzed and responded to
correspondence received from various vendors and their
counsel; researched, reviewed, analyzed and drafted
pleadings regarding vendors; reviewed and analyzed various
vendor related contracts and negotiated with vendors and
their counsel to resolve various vendor related issues; and
participated in meetings and telephone conferences with the
Debtors, the Debtors' professionals and counsel for various
vendors regarding the foregoing.

73.    Necessity and Benefit to the Estates.  These
services were necessary to assist the Debtors in developing
and implementing a strategy for resolving various vendor
related issues.

74.    Status.  These matters will continue as the need
arises.

75.    Hours Spent and Compensation Requested.  In
connection with the foregoing matters, MW's professionals
expended 21.0 hours during the Application Period for a
total of $10,532.50.  The complete narrative, time detail of

the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**O.   Real Estate.**

76.   <u>Description</u>.  MW historically represented the Debtors on various real estate matters and continue to handle the review, negotiation and drafting of various leases and agreements related thereto.  MW also assisted with, <u>inter alia</u>, the review, analysis and drafting of correspondence, documents and pleadings regarding real property leases and stub rent issues; reviewed and analyzed real property leases and rent default notices; researched and analyzed various matters regarding real property leases; participated in meetings and telephone conferences with the Debtors and their professionals, landlords and their counsel, and other parties in interest regarding the foregoing.

77.   <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in various real estate and related matters.

78.   <u>Status</u>.  These matters will continue as the need arises.

79.   <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals

expended 149 hours during the Application Period for a total of $65,304.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**P.    Financing.**

80.  <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review, analysis, drafting and filing of various debtor in possession financing pleadings; and participated in telephone conferences with the Debtors and their professionals regarding the foregoing and related matters.

81.  <u>Necessity and Benefit to the Estates</u>.  These services were necessary to comply with the Debtors' debtor in possession financing agreement.

82.  <u>Status</u>.  These matters will continue as the need arises.

83.  <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 13.8 hours during the Application Period for a total of $6,292.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**Q.    Reclamation Matters.**

84.  <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>,
developing and implementing a global procedure for
receiving, reviewing, analyzing, responding to, and
resolving reclamation demands; reviewed, analyzed and
responded to numerous claimants' communications; and
participated in telephone conferences with the Debtors,
their professionals and reclamation claimants and their
counsel regarding the foregoing.

85.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors regarding
their legal obligations under the reclamation procedures
approved by this Court and in resolving various reclamation
claims.

86.  <u>Status</u>.  These matters will continue as the need
arises.

87.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 13.5 hours during the Application Period for a
total of $5,647.50.  The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**R.    Utilities Matters.**

88.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, developing and implementing a global procedure for receiving, reviewing, analyzing, responding to, and resolving utility requests for adequate assurances; reviewed, analyzed and responded to numerous utilities' communications; handled issues related to various utilities' appeals; and communicated with the Debtors, their professionals and counsel for various utilities regarding the foregoing.

89.   <u>Necessity and Benefit to the Estates</u>.   These services assisted the Debtors in developing and implementing a strategy for resolving various utility demands and minimizing disruptions to the Debtors' business operations.

90.   <u>Status</u>.   These matters will continue as the need arises.

91.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 10.9 hours during the Application Period for a total of $4,597.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**S.    Insurance Matters.**

92.    Description.  MW assisted with, inter alia, the
review and analysis of various workers compensation and
general liability policy related issues; researched issues
regarding the foregoing; and developed strategies regarding
postpetition insurance obligations.

93.    Necessity and Benefit to the Estates.  These
services were necessary to ensure that the Debtors were in
compliance with their insurance obligations.

94.    Status.  These matters will continue as the need
arises.

95.    Hours Spent and Compensation Requested.  In
connection with the foregoing matters, MW's professionals
expended 22.1 hours during the Application Period for a
total of $9,187.50.  The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as Exhibit E.

**T.    Tax Matters.**

96.    Description.  MW historically represented the
Debtors in connection with various tax matters, including an
IRS audit, tax audit appeals and related tax matters, which
are ongoing.  MW also assisted with, inter alia, research
and analysis regarding strategy and authority to pay

prepetition taxes under first day orders; reviewed, analyzed
and prepared correspondence, documents and pleadings
regarding various tax matters; participated in the analysis
and researched issues regarding the Debtors' strategies
regarding overall tax procedures and protocols for tax
issues that impact the Debtors' estates; and participated in
meetings and telephone conferences with the Debtors and
various taxing authorities regarding the foregoing.

97. <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in connection
with resolving tax related issues.

98. <u>Status</u>.  These matters will continue as the need
arises.

99. <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 92.1 hours during the Application Period for a
total of $35,136.50.  The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**U.   Claims Administration.**

100. <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the
review and analysis of and responses to numerous claimants'
communications; developed a strategy for handling 503(b)(9)

claims objections; reviewed and analyzed potential claims
issues; participated in telephone conferences with counsel
regarding the filing of proofs of claim.

101. <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors in developing
and implementing a claims resolution strategy and responding
to claimants regarding claims related issues.

102. <u>Status</u>.   These matters will continue as the need
arises.

103. <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 15.0 hours during the Application Period for a
total of $6,402.50.   The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**V.   Employee Benefits/Pensions.**

104. <u>Description</u>.   MW historically represented the
Debtors in connection with various employee benefit and
pension matters, which are ongoing.   MW also assisted with,
<u>inter alia</u>, the review and analysis of compensation and
benefit compliance; handled issues regarding reportable
events to the Pension Benefit Guaranty Corporation; and

participated in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

105. <u>Necessity and Benefit to the Estates</u>. These services were necessary to assist the Debtors with various employee benefit and pension matters.

106. <u>Status</u>. These matters will continue as the need arises.

107. <u>Hours Spent and Compensation Requested</u>. In connection with the foregoing matters, MW's professionals expended 55.8 hours during the Application Period for a total of $23,731.00. The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**W.    Intellectual Property Matters.**

108. <u>Description</u>. MW has historically represented the Debtors in connection with various trademark and intellectual property matters, including, <u>inter</u> <u>alia</u>, filing applications for various marks; defending oppositions to various marks; and participating in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

109. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various intellectual property matters.

110. <u>Status</u>.  These matters will continue as the need arises.

111. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 36.1 hours during the Application Period for a total of $9,843.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

<b><u>APPLICABLE LEGAL STANDARD</u></b>

112. The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals employed by the debtor.  The format for fee applications is set forth in the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under section 330 of the Bankruptcy Code (the "Guidelines").

113. Under section 330 of the Bankruptcy Code, the Court may award counsel to the Debtors reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services

rendered, time spent on such services and the cost of
comparable services other than in a bankruptcy case.
Furthermore, the Court may award reimbursement for actual,
necessary expenses.

114. The expenses incurred by MW, as set forth herein,
are reasonable and necessary charges for items including,
but not limited to, photocopying, long distance telephone
calls, messenger services, computer research, travel
expenses, overnight mail and court fees.  Photocopy charges
are assessed at ten cents ($.10) per page, which MW believes
to be competitive for professional firms in this geographic
area.  Some larger copy and mailing projects may have been
performed at an outside copy center at a lower per page
rate.  In all cases, MW has passed through the costs of the
outsourced copy or mailing projects to the estate without
markup.  MW incurred messenger service charges when such
delivery was more economical or when prompt delivery was
necessary in a given circumstance.

115. Under the "lodestar" approach, the Court should
consider the number of hours of service reasonably devoted
to the case multiplied by the attorney's reasonable rates.
Courts frequently consider the specific "lodestar" factors
enumerated in Johnson v. Georgia Highway Express, Inc., 488

F.2d 714 (5th Cir. 1974).  These lodestar factors were
adopted by the Fourth Circuit in _Barber v. Kimbrells, Inc._,
577 F.2d 216, 226 (4th Cir.), _cert._ _denied_, 439 U.S. 934
(1978), and in _Anderson v. Morris_, 658 F.2d 246, 249 (4th
Cir. 1981), where the Fourth Circuit held that the district
court should employ the lodestar approach, and then adjust
the fee on the basis of the remaining _Johnson_ factors in the
case.  The following are the _Johnson_ factors:

　　　　(a)  the time and labor required;

　　　　(b)  the novelty and difficulty of the questions;

　　　　(c)  the skill requisite to perform the legal
service properly;

　　　　(d)  the preclusion of other employment by the
attorney due to acceptance of the case;

　　　　(e)  the customary fee;

　　　　(f)  whether the fee is fixed or contingent;

　　　　(g)  time limitations imposed by the client or the
circumstances;

　　　　(h)  the amount involved and the results obtained;

　　　　(i)  the experience, reputation and ability of the
attorneys;

　　　　(j)  the "undesirability" of the case;

　　　　(k)  the nature and length of the professional
relationship with the client; and

　　　　(_l_)  awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

116. MW believes that the services rendered to the Debtors and the out-of-pocket expenses incurred therewith were both necessary and reasonable in view of the Debtors' obligations in these cases, and the size and complexity of these cases.

117. Moreover, MW has worked closely with the Debtors' other professionals to be very efficient and avoid the duplication of services in these chapter 11 cases.

118. MW is the largest law firm in the Commonwealth of Virginia and among the largest law firms in the country, and has substantial expertise in bankruptcy, business law, commercial litigation and other substantive areas, which has allowed MW to effectively and efficiently address issues arising in a national bankruptcy case. Further, the rates charged by MW are significantly less than rates charged by other law firms in comparable national chapter 11 cases and MW's rates are consistent with rates charged to other clients in non bankruptcy matters.[2] MW has efficiently assisted the Debtors by employing a streamlined case management structure that generally consists of a core team

---

[2] Dion W. Hayes and Douglas M. Foley are both board certified by the American Board of Certification as specialists in the field of Business Bankruptcy Law. See 11 U.S.C. § 330(a)(3)(E).

with various other attorneys and paraprofessionals assigned
to other discrete tasks to avoid the performance of
duplicative or unnecessary work.  MW believes the fees
requested herein satisfy the Johnson factors as set forth
above.

### SUMMARY OF EXHIBITS

119. A proposed order approving the Application is
attached hereto as Exhibit A.

120. Attached hereto as Exhibit B is a list of all
attorneys and paraprofessionals who have worked on these
cases, by name, year of admission (where applicable), hourly
rate, hours expended on these cases, and total fees
incurred.

121. Pursuant to the Interim Compensation Order, MW has
received approximately eighty-five percent (85%) of its
monthly fees and approximately one hundred percent (100%) of
its monthly disbursements for services rendered in November
10-30, 2004, December 2004 and January 2005.  In total, MW
has received $770,272.76 in fees and $37,347.02 in
disbursements.  See Exhibit C attached hereto for a
statement of those payments.  Pursuant to the Interim
Compensation Order, approximately fifteen percent (15%) of
MW's total fees, totaling $135,920.49, have been withheld by

the Debtors pending approval of this Application.  Moreover,

MW is owed $8.50 in unpaid expenses for the Application

Period.

122. A summary of all actual and necessary expense

disbursements is attached hereto as <u>Exhibit D</u>.

123. A chronological itemization of time categorized by

task performed is attached hereto as <u>Exhibit E</u>.  MW has made

every effort to place all time entries in the proper service

category; however, it should be noted that in some

circumstances an entry could have been properly placed in

more than one of the service categories.  In such

circumstances, MW has used its best efforts to place the

time entry in the service category that represents the

primary purpose of the services rendered.  Time entries do

not appear in more than one service category.

## **NOTICE**

124. Pursuant to the Interim Compensation Order, MW has

served copies of the Application on the Notice Parties (as

defined therein).  In addition, MW has served notice of the

hearing on the Application on the parties required by the

Case Management Order.  MW submits that no other or further

notice need be given.

## **WAIVER OF MEMORANDUM OF LAW**

125. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in this Application, the Debtors request that this Court waive the requirement that all motions be accompanied by a written memorandum of law.

## **NO PRIOR REQUEST**

126. No prior request for the relief sought herein has been made to this Court in these bankruptcy cases.  This is MW's first interim application for compensation and reimbursement of expenses.

WHEREFORE, MW respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, (i) approving the compensation and reimbursement of expenses requested herein on an interim basis, (ii) authorizing and directing the Debtors to pay such amounts, and (iii) granting MW such other and further relief as is just and proper.

Dated: March 17, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley            .
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

## EXHIBIT A

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
            Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - X

**ORDER GRANTING FIRST APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM NOVEMBER 10, 2008 THROUGH JANUARY 31, 2009**

Upon consideration of the First Application for

Compensation and Reimbursement of Expenses of McGuireWoods

LLP, Co-counsel to the Debtors, for Services Rendered from

November 10, 2008 through January 31, 2009 (the

"Application"); and the Court having reviewed the

Application and the Court having determined that the relief

requested in the Application is necessary and appropriate;

and it appearing that proper and adequate notice of the

Application has been given and that no other or further

notice is necessary; and upon the record herein; and after

due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

1.    The Application meets the requirements of the

Bankruptcy Code and the compensation and reimbursement of

expenses sought in the Application is both fair and

reasonable.

2.    The Application is hereby approved in its

entirety, and compensation for the Application Period in the

total amount of $906,193.25 is hereby approved, and the

Debtors are hereby authorized and directed to pay

McGuireWoods LLP the unpaid portion of such compensation.

3.    The reimbursement of expenses for the Application

Period in the total amount of $37,355.52 is hereby approved,

and the Debtors are hereby authorized and directed to pay

McGuireWoods LLP any unpaid portion of such reimbursements.

4.   This Court will retain jurisdiction with respect

to any dispute concerning the relief granted hereunder.

Dated:  Richmond, Virginia
_____, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

Active\8067446

## EXHIBIT B

## Summary of Timekeepers

In re Circuit City Stores, Inc., <u>et</u> <u>al.</u>
Case No. 08-35653 (Jointly Adminstered)

Name of Applicant:  McGuireWoods LLP
Role: Co-counsel to the Debtors

First Interim Application:
    Fees Requested: $906,193.25
    Expenses Requested: $37,355.72

<u>Summary of Timekeepers</u>

| Attorneys | Year Admitted | 2008 Rate | 2009 Rate | 2008 Hours | 2009 Hours | Amount |
|---|---|---|---|---|---|---|
| Bell, Craig D. | 1983 | $495.00 | $530.00 | 6.0 | 6.3 | $6,309.00 |
| Bernhardt, Brian C. | 1997 | $400.00 | $475.00 | 5.3 | 0.0 | $2,120.00 |
| Blair, Richard F. | 2008 | $275.00 | $325.00 | 6.8 | 0.0 | $1,870.00 |
| Blanks, Daniel F. | 2002 | $350.00 | $375.00 | 319.4 | 120.8 | $157,090.00 |
| Boehm, Sarah B. | 2000 | $400.00 | $450.00 | 250.3 | 145.9 | $165,775.00 |
| Burrus Jr., Robert L. | 1958 | $700.00 | $805.00 | 7.1 | 15.0 | $17,045.00 |
| Christian, Michelle M. | 2004 | $285.00 | $335.00 | 126.0 | 0.0 | $35,910.00 |
| Cipolla, Robert M. | 1998 | $465.00 | $525.00 | 1.8 | 0.0 | $837.00 |
| Cohen, Zachary D. | 2007 | $190.00 | $250.00 | 0.0 | 15.9 | $3,975.00 |
| Dabbs, David F. | 1991 | $405.00 | $475.00 | 4.8 | 0.0 | $1,944.00 |
| DeLuca, Katherine K. | 2006 | $245.00 | $315.00 | 7.3 | 0.0 | $1,788.50 |
| Diller, Elizabeth A. | 2008 | $245.00 | $275.00 | 1.0 | 2.4 | $905.00 |
| Elbert, Regina Johnson | 2005 | $245.00 | $345.00 | 1.7 | 0.0 | $416.50 |
| Feller, Howard | 1978 | $545.00 | $575.00 | 5.5 | 0.8 | $3,457.50 |
| Finkelson, David E. | 1999 | $410.00 | $460.00 | 0.6 | 0.0 | $246.00 |
| Foley, Douglas M. | 1992 | $525.00 | $550.00 | 267.2 | 124.5 | $208,755.00 |
| Gregory, Patrick L. | 2006 | $245.00 | $300.00 | 16.2 | 0.0 | $3,969.00 |
| Greth Jr., Warren E. | 2006 | $255.00 | $300.00 | 17.6 | 0.0 | $4,488.00 |
| Harmon, T. Craig | 1986 | $495.00 | $525.00 | 8.6 | 0.0 | $4,257.00 |
| Hayes, Dion W. | 1992 | $525.00 | $600.00 | 51.9 | 0.0 | $27,247.50 |
| Hodges, Robert L. | 1990 | $460.00 | $500.00 | 4.0 | 0.0 | $1,840.00 |
| Justus, J. Brent | 2000 | $375.00 | $450.00 | 1.7 | 0.0 | $637.50 |

**EXHIBIT B**

## Summary of Timekeepers

| Attorneys | Year Admitted | 2008 Rate | 2009 Rate | 2008 Hours | 2009 Hours | Amount |
|---|---|---|---|---|---|---|
| Lias-Booker, Ava E. | 1986 | $550.00 | $605.00 | 0.6 | 0.0 | $330.00 |
| Lipkowitz, Michelle N. | 2002 | $350.00 | $425.00 | 2.9 | 0.0 | $1,015.00 |
| Long, Suzanne S. | 2001 | $305.00 | $350.00 | 31.1 | 0.0 | $9,485.50 |
| Martin, Eric B. | 2002 | $310.00 | $310.00 | 35.9 | 0.0 | $11,129.00 |
| McCollough, Aaron G. | 2005 | $325.00 | $375.00 | 8.7 | 0.0 | $2,827.50 |
| McCray, Anne Bentley | 1994 | $425.00 | $500.00 | 44.6 | 0.0 | $18,955.00 |
| McElligott Jr., James P. | 1974 | $590.00 | $635.00 | 24.5 | 0.0 | $14,455.00 |
| Menthe, Darrel C. | 1996 | $415.00 | $435.00 | 29.4 | 0.0 | $12,201.00 |
| Moyer, Tracy Evans | 1998 | $415.00 | $435.00 | 10.5 | 0.0 | $4,357.50 |
| Pittman, Edmund S. | 1992 | $400.00 | $450.00 | 19.0 | 20.0 | $16,600.00 |
| Riopelle, Brian C. | 1989 | $525.00 | $580.00 | 0.7 | 0.0 | $367.50 |
| Scott, Lori Michelle | 2003 | $295.00 | $295.00 | 0.0 | 1.5 | $442.50 |
| Sellers, Jane Whitt | 1980 | $540.00 | $595.00 | 4.0 | 0.0 | $2,160.00 |
| Sharp, Lisa M. | 2005 | $255.00 | $315.00 | 39.1 | 0.0 | $9,970.50 |
| Sheerin, Joseph S. | 2001 | $400.00 | $450.00 | 6.0 | 0.0 | $2,400.00 |
| Smith, Douglas B. | 2006 | $250.00 | $295.00 | 12.3 | 3.0 | $3,960.00 |
| Stark, Bryan A. | 2007 | $295.00 | $295.00 | 4.8 | 0.0 | $1,416.00 |
| Swicegood, Martha J. | 2001 | $335.00 | $390.00 | 3.5 | 0.0 | $1,172.50 |
| Tennant, J. Christian | 2005 | $245.00 | $285.00 | 9.5 | 0.0 | $2,327.50 |
| Tyler, Robert M. | 1994 | $435.00 | $500.00 | 5.5 | 0.0 | $2,392.50 |
| Weber, Scott Lawrence | 2003 | $310.00 | $350.00 | 11.5 | 0.0 | $3,565.00 |
| Williams, Lisa M. | 2003 | $305.00 | $350.00 | 2.0 | 0.0 | $610.00 |
| **ATTORNEY TOTALS:** | | | | **1416.9** | **456.1** | **$773,022.00** |

**Paraprofessionals and Contract Attorneys**

| | | | | | | |
|---|---|---|---|---|---|---|
| Allen, Paul J. | | $130.00 | $150.00 | 25.0 | 0.0 | $3,250.00 |
| Anderson, Patricia C. | | $125.00 | $125.00 | 8.4 | 0.0 | $1,050.00 |
| Bailey, Wanda C. | | $175.00 | $175.00 | 5.1 | 0.0 | $892.50 |
| Bendall, Deborah L. | | $90.00 | $90.00 | 1.8 | 0.0 | $162.00 |
| Bragunier, Victoria L. | | $75.00 | $75.00 | 12.5 | 0.0 | $937.50 |
| Burgeson, Bruce | | $75.00 | $75.00 | 6.3 | 0.0 | $472.50 |
| Cain, Karen B. | | $175.00 | $195.00 | 152.1 | 90.8 | $44,323.50 |
| Christie, Kathryn M. | | $75.00 | $75.00 | 21.0 | 0.0 | $1,575.00 |
| Condyles, Martha S. | | $75.00 | $75.00 | 6.0 | 0.0 | $450.00 |

## EXHIBIT B

## Summary of Timekeepers

| Attorneys | Year Admitted | 2008 Rate | 2009 Rate | 2008 Hours | 2009 Hours | Amount |
|---|---|---|---|---|---|---|
| Conway, Emily S. | | $75.00 | $75.00 | 15.8 | 0.0 | $1,185.00 |
| Dagrosa, Gloria K. | | $200.00 | $225.00 | 41.2 | 0.0 | $8,240.00 |
| Dylak, Margaret E. | | $145.00 | $165.00 | 15.2 | 0.0 | $2,204.00 |
| Gilbert, Cameron | | $75.00 | $75.00 | 4.5 | 0.0 | $337.50 |
| Gokey, Kymberleigh B. | | $145.00 | $160.00 | 0.2 | 0.0 | $29.00 |
| Hannan, Dorothy J. | | $215.00 | $245.00 | 5.3 | 8.7 | $3,271.00 |
| Heishman, Michelle | | $75.00 | $75.00 | 9.75 | 0.0 | $731.25 |
| Hoyle, Todd | | $75.00 | $75.00 | 12.0 | 0.0 | $900.00 |
| Jordan, Linda T. | | $200.00 | $225.00 | 2.6 | 0.0 | $520.00 |
| Kane, Nancy Warren | | $75.00 | $75.00 | 1.5 | 0.0 | $112.50 |
| Luong, Cuong | | $75.00 | $75.00 | 5.4 | 0.0 | $405.00 |
| Markey, Michael | | $75.00 | $75.00 | 5.0 | 0.0 | $375.00 |
| Morrison de Lopez, Diane E. | | $180.00 | $195.00 | 36.4 | 3.2 | $7,176.00 |
| Morrison, Kathryn C. | | $75.00 | $75.00 | 27.3 | 0.0 | $2,047.50 |
| Neilson, Linda J. | | $165.00 | $185.00 | 114.1 | 26.5 | $23,729.00 |
| Oberc, Alan M. | | $75.00 | $75.00 | 18.3 | 0.0 | $1,372.50 |
| Philipp, Pamela B. | | $130.00 | $150.00 | 0.0 | 0.9 | $135.00 |
| Pruden, James Richard | | $75.00 | $75.00 | 19.5 | 0.0 | $1,462.50 |
| Razo Jr., Gilbert V. | | $75.00 | $75.00 | 0.4 | 0.0 | $30.00 |
| Rupert, Jeremiah I. | | $75.00 | $75.00 | 27.3 | 0.0 | $2,047.50 |
| Sakats, Thomas W. | | $200.00 | $225.00 | 34.7 | 0.0 | $6,940.00 |
| Shah, Avani | | $75.00 | $75.00 | 1.5 | 0.0 | $112.50 |
| Smith, Frances C. | | $190.00 | $215.00 | 0.0 | 69.7 | $14,985.50 |
| Steele, Jason | | $75.00 | $75.00 | 13.8 | 0.0 | $1,035.00 |
| Stoewe, Ralph A. | | $75.00 | $75.00 | 9.0 | 0.0 | $675.00 |
| **PARAPROFESSIONAL TOTALS:** | | | | **658.95** | **199.8** | **$133,171.25** |
| | | | | | | |
| **TOTALS:** | | | | **2075.85** | **655.9** | **$906,193.25** |

**BLENDED HOURLY RATE:**              $436.54

**EXHIBIT C**

Summary of Monthly Fee Statements

| Period Covered | Total Fees Incurred | Total Fees Requested Pursuant to Interim Compensation Order | Fees Paid | Holdback | Total Expenses Incurred | Total Expenses Requested Pursuant to Interim Compensation Order | Expenses Paid | Holdback |
|---|---|---|---|---|---|---|---|---|
| November 10, 2008 to November 30, 2008 | $227,581.00 | $193,443.85 | $193,443.80 | $34,137.20 | $9,558.65 | $9,558.65 | $9,558.65 | $0.00 |
| December 1, 2008 to December 31, 2008 | $415,940.00 | $353,549.00 | $353,549.05 | $62,390.95 | $14,668.60 | $14,668.60 | $14,668.60 | $0.00 |
| December 1, 2008 to December 31, 2008* | $11,921.25 | $10,133.06 | $10,133.06 | $1,788.19 | $78.95 | $78.95 | $78.95 | $0.00 |
| January 1, 2009 to January 31, 2009 | $250,751.00 | $213,138.35 | $213,146.85 | $37,604.15 | $13,049.32 | $13,049.32 | $13,040.82 | $8.50 |
| **TOTALS:** | **$906,193.25** | **$770,264.26** | **$770,272.76** | **$135,920.49** | **$37,355.52** | **$37,355.52** | **$37,347.02** | **$8.50** |

\* McGuireWoods issued a supplemental invoice in December 2008 for fees and expenses incurred
in December 2008 that were submitted after the original December 2008 invoice had been generated.

**EXHIBIT D**

**Summary of Expenses**

| **Disbursement** | **Amount** |
| --- | --- |
| Copy Charges | $13,053.30 |
| Overnight Delivery | $403.24 |
| Messenger Services | $219.41 |
| Telephone and Teleconference Charges | $3,218.99 |
| Computer Research | $1,633.86 |
| Working Meals | $1,361.44 |
| Travel and Transportation | $9,740.15 |
| Court Costs | $1,869.60 |
| Court Reporter and Transcript Fees | $3,178.83 |
| Overtime | $1,914.00 |
| Professional Services | $762.90 |
| **TOTAL:** | **$37,355.72** |