# EXHIBIT B

As of October 13, 2008

James A. Marcum
Vice Chairman and Acting Chief Executive Officer
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233



Dear Mr. Marcum:

This letter (the "Agreement") will confirm the terms and conditions of the agreement by and among Circuit City Stores, Inc. ("Circuit City"), InterTAN, Inc. and InterTAN Canada Ltd. (collectively "InterTAN" and together with Circuit City and their respective direct and indirect subsidiaries (the "Company") and Rothschild Inc., collectively with its affiliates, successors and assignees, as appropriate ("Rothschild") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with any Plan, New Capital Raise, Recapitalization Transaction, M&A Transaction and/or Liquidation (each as defined below and collectively, a "Transaction").

Section 1   Services to be Rendered. In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild deems necessary, appropriate and feasible and as requested by the Company:

(a)   review and analyze the Company's assets and the operating and financial strategies of the Company;

(b)   review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)   evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(d)   identify and/or initiate potential Transactions;

(e)   develop a list of potential buyers for the Company or any portion thereof and contact such potential buyers regarding their interest in pursuing a M&A Transaction;

(f)   develop a list of potential Plan (as defined below) sponsors for the Company and contact such potential Plan sponsors regarding their interest in pursuing a Recapitalization Transaction;

(g)   advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Circuit City Stores, Inc.
As of October 13, 2008
Page 2



      (h)    review and analyze any proposals the Company receives from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing ("DIP"), as appropriate;

      (i)    assist in soliciting DIP and/or exit financing should the Company and/or any of its direct or indirect subsidiaries seek protection under the Bankruptcy Code or the CCAA (each as defined below);

      (j)    assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

      (k)    advise the Company with respect to, and attend meetings of, the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

      (l)    in the event the Company determines to commence Chapter 11 cases or similar proceedings under the CCAA, and if requested by the Company, participate in hearings before the court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and

      (m)    render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

      As used herein, the term "Recapitalization Transaction" shall mean, collectively, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code"), the Companies' Creditors Arrangement Act ("CCAA") or otherwise; (a) any transaction or series of transactions that effects material amendments to or other material changes in any of the Company's outstanding indebtedness, and other liabilities including any exchange or repurchase of the Company's indebtedness; (b) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction, whether or not pursuant to a Plan; or (c) any transaction similar to any of the foregoing.

      As used herein, the term "M&A Transaction" shall mean, (a) pursuant to §363 of the Bankruptcy Code, the CCAA or otherwise (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or

Circuit City Stores, Inc.
As of October 13, 2008
Page 3



indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), whether in a single transaction, multiple transactions or a series of transactions, of (A) other than in the ordinary course of business, any material portion of the assets, business or operations of the Company or (B) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting, participating in or pursuing a recapitalization or change of control of the Company or (b) any transaction similar to any of the foregoing. Notwithstanding any other provision of this Agreement, the term "M&A Transaction" as used herein shall include any transaction described above in which consideration includes a credit or other bid involving consideration other than cash, in whole or in part, such as pre- and post-petition loans, trade claims, leases, other outstanding pre- and post-petition indebtedness or other non-cash consideration.

As used herein, the term "Liquidation" shall mean any liquidation of all or substantially all of the Company's assets pursuant to Chapter 11 or Chapter 7 of the Bankruptcy Code.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other Transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Section 2    Information Provided by the Company.

(a)    The Company understands and agrees that the services to be rendered by Rothschild pursuant to Paragraph 1 of this Agreement and the advice, whether formal or informal, relating thereto are solely for the benefit and use of the Company. The Company agrees that any reports, recommendations or opinions, which are provided to the Company in the context of this engagement, shall not be summarized, excerpted from, disclosed publicly, made available to third parties (other than the Company and its subsidiaries' boards of directors and the Company's advisors who agree to be bound by the provisions of this Section 2(a)) or otherwise referred to, in whole or in part, without the prior written consent of Rothschild. Any reference to Rothschild in a press release or other document shall be submitted to Rothschild for its approval prior to the distribution or dissemination thereof.

(b)    The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services

Circuit City Stores, Inc.
As of October 13, 2008
Page 4



contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(c) The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore, such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that, to the extent Rothschild utilizes such commercially reasonable procedures, Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with (i) the electronic communication of information to the Company or (ii) the Company's reliance on such information.

Section 3    Application for Retention of Rothschild.  In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to §§ 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable provisions of the CCAA, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement, (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case and/or CCAA proceeding, as applicable, was commenced, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in §328(a) of the Bankruptcy Code and/or the corresponding provision(s) of the CCAA, if any and as applicable, and not subject to the standard of review set forth in § 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the

Circuit City Stores, Inc.
As of October 13, 2008
Page 5



Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under § 328(a) of the Bankruptcy Code and/or the corresponding provision(s) of the CCAA, as applicable, and any order approving Rothschild's retention; (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any, provided, however, that the Company shall use its best efforts (including the filing of any necessary motions sufficiently in advance of the closing of any Transaction or similar transaction, or confirmation and effectiveness of a Plan) to provide for the payment of the fees set forth in Section 4 hereof to Rothschild simultaneously with the closing of such transaction or Transaction or Plan effectiveness, as applicable.

In agreeing to seek Rothschild's retention under § 328(a) of the Bankruptcy Code and/or the corresponding provision(s) of the CCAA, as applicable, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Retainer, Monthly Fee, the New Capital Fee, the Recapitalization Fee, the M&A Fee, the InterTan M&A Fee and the Liquidation Fee (each as defined below), are reasonable regardless of the number of hours to be expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4  Fees of Rothschild. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees, payable in cash:

(a)  A retainer (the "Retainer") of $200,000, payable upon the execution of this Agreement, to be applied against the fees and expenses of Rothschild under this Agreement.

(b)  Commencing as of the date hereof, and whether or not a Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be pro-rated based on the commencement of services as of the date hereof and shall be payable by the Company upon the execution of this Agreement by Rothschild and the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

Circuit City Stores, Inc.
As of October 13, 2008
Page 6



    (c)    A new capital fee (the "New Capital Fee") equal to the following percentages of the gross cash proceeds of any new capital raised: 1.0% for all senior and junior secured debt issued, including any senior and junior DIP financing and 3.0% for any senior or subordinated unsecured debt, equity capital or hybrid capital raised (each, a "New Capital Raise"). Notwithstanding the above, a New Capital Fee shall not be earned with respect to any DIP financing where Bank of America has acted as lead agent or exit financing solely provided by the Company's DIP lenders, except in the case where one or more of such lenders provides an incremental commitment above the then existing DIP commitment in which case such incremental amount shall be subject to a New Capital Fee. The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company.

    (d)    A recapitalization fee (the "Recapitalization Fee") of $5.0 million, payable in cash upon the earlier of (i) the confirmation and effectiveness of a Plan or (ii) the substantial consummation of another Recapitalization Transaction. In the event the Company enters into a single Transaction that constitutes both a Recapitalization Transaction and a M&A Transaction, Rothschild shall be paid the higher of the Recapitalization Fee and the M&A Fee.

    (e)    A M&A fee (the "M&A Fee") equal to the greater of $5.0 million or 1.0% of Aggregate Consideration (as defined below) received in connection with such M&A Transaction, which fee shall be payable at the closing of any M&A Transaction; provided, that in no event shall the M&A Fee (excluding any InterTan M&A Fee (as defined below)), exceed $8.0 million. Notwithstanding the foregoing, in the event that the Company consummates a M&A Transaction solely involving InterTan, the M&A Fee payable at closing to Rothschild in connection with such M&A Transaction shall equal the greater of $1.5 million or 1.0% of the Aggregate Consideration received in connection with such M&A Transaction (the "InterTAN M&A Fee").

    For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash plus the total value (as determined pursuant hereto) of all securities, contractual arrangements (including, without limitation, any lease arrangements or put or call agreements) and other consideration, including, without limitation, any contingent or earned consideration, paid or payable, directly or indirectly, in connection with a M&A Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term liabilities and any long-term liabilities of the Company (including, without limitation, the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid,

Circuit City Stores, Inc.
As of October 13, 2008
Page 7



defeased or retired, directly or indirectly, in connection with or in anticipation of a M&A Transaction or (y) existing on the Company's balance sheet at the time of a M&A Transaction (if such M&A Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a M&A Transaction (if such M&A Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the M&A Transaction will be used. In the event such M&A Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such M&A Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such M&A Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such M&A Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such M&A Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of an M&A Transaction. The value of securities that are not freely tradable or have no established public market, or if the consideration consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by the Company and Rothschild, provided, however, that all debt securities shall be valued at their stated principal amount without applying a discount thereto. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. Aggregate Consideration shall also include the face amount of any liabilities tendered as purchase price in connection with any credit bid.

(f) A liquidation fee ("Liquidation Fee") in the event the Company pursues a Liquidation equal to $2.0 million less any Monthly Fees and New Capital Fees paid.

(g) Notwithstanding the foregoing, total fees (excluding the InterTAN M&A Fee) paid to Rothschild by the Company shall not be less than $2.0 million (the "Minimum Fee") or exceed $9.0 million.

(h) To the extent the Company requests Rothschild to perform additional services not contemplated by this Agreement, such additional fees shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The Company and Rothschild acknowledge and agree that (i) the hours worked; (ii) the results achieved and (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Circuit City Stores, Inc.
As of October 13, 2008
Page 8



Section 5  Credit. To the extent not otherwise credited hereunder, Rothschild shall credit (a) 50% of any Monthly Fees paid under Section 4(b) in excess of $600,000 in the aggregate (the "Monthly Fee Credit") against the Recapitalization Fee, M&A Fee (other than the InterTAN M&A Fee) or New Capital Fee; and (b) 50% of any New Capital Fees paid under Section 4 (c) (the "New Capital Fee Credit") against the Recapitalization Fee or M&A Fee (other than the InterTAN M&A Fee). In addition, to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of this Agreement, the Retainer shall be credited against any fees due to Rothschild hereunder. The sum of the Monthly Fee Credit and the New Capital Fee Credit; however, shall not exceed the relevant Transaction fee against which it is to be credited.

Section 6  Expenses. Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including without limitation the reasonable fees, disbursements and other charges of Rothschild's counsel. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. In the event the Company becomes a debtor and/or a debtor-in-possession in a Chapter 11 case and/or similar provision under the CCAA, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7  Indemnity. The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8  Term. The term of Rothschild's engagement shall extend until the earlier of the confirmation and effectiveness of a Plan or the substantial consummation of a Transaction. This Agreement may be terminated by either the Company or Rothschild after ninety days (90) by providing thirty (30) days advance notice in writing. If terminated, Rothschild shall be entitled to payment of any fees for any monthly period which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(b) hereof); however, such amounts will be pro-rated for any incomplete monthly period of service, and Rothschild will be entitled to reimbursement of any and all reasonable expenses described in Section 6. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, the Recapitalization Fee, M&A Fee, InterTan M&A Fee, Liquidation Fee and/or New Capital Fee, as the case may be, shall be payable in the event that the engagement is terminated by the Company and a Plan, New Capital

Circuit City Stores, Inc.
As of October 13, 2008
Page 9



Raise, Recapitalization Transaction, M&A Transaction, Liquidation or other Transaction is consummated at anytime prior to the expiration of one year after such termination, or a definitive agreement with respect thereto is executed at any time prior to one year after such termination (which definitive agreement subsequently results in the consummation of a Plan, New Capital Raise, Recapitalization Transaction, M&A Transaction, Liquidation or other Transaction, as the case may be.

Section 9    Miscellaneous.

(a)    *Administrative Expense Priority*.  In the event the Company determines to commence Chapter 11 cases and/or similar proceedings under the CCAA in order to pursue a Transaction, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under § 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and/or similar provisions under the CCAA and shall be entitled to the benefits of any "carve-outs" for professional fees, to the extent the Minimum Fee and expenses have not been paid, in effect in such Chapter 11 cases and/or similar proceedings under the CCAA pursuant to one or more financing orders entered by the Bankruptcy Court.

(b)    *Survival, Successors & Assigns*.  Sections 6 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns.

(c)    *Benefit of Agreement; No Reliance by Third Parties*.  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates.

(d)    *Nature of Relationship*.  The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including security holders, creditors or employees of the Company.

(e)    *Rothschild Affiliates*. Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment

Circuit City Stores, Inc.
As of October 13, 2008
Page 10



banking institutions located worldwide (the "Affiliated Entities"). None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities. Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f) *Required Information.* For your information, Rothschild may screen the Company against various databases to verify its identity.

(g) *Public Announcements.* The Company acknowledges that Rothschild may at its option and expense, after announcement of the Transaction, place announcements and advertisements or otherwise publicize the Transaction in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such Transaction. The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities, provided such use or display is in the nature of a public record or tombstone announcement in relation to the Transaction.

(h) *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY OF (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR <u>FORUM NON CONVENIENS</u> AND HEREBY CONSENTS TO THE

Circuit City Stores, Inc.
As of October 13, 2008
Page 11



GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT THE GENERAL COUNSEL OF THE COMPANY SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(i) *Waiver of Jury Trial.* Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Plan, New Capital Raise, Recapitalization Transaction, M&A Transaction, Liquidation or other Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented expressly or otherwise that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j) *Entire Agreement.* This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(k) *Authority.* Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(l) *Counterparts.* This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(m) *Notices.* Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth above, Attn: James A. Marcum and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Steven Tishman and Neil Augustine, and a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.

Circuit City Stores, Inc.
As of October 13, 2008
Page 12



      If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

      Very truly yours,

      ROTHSCHILD INC.

By: *[signature: Steven Tishman]*
      Steven Tishman
      Managing Director

By: *[signature]*
      Neil Augustine
      Managing Director

Accepted and Agreed to as of
the date first written above:

CIRCUIT CITY STORES, INC.

By: *[signature]*
Name: James Marcum
Title: Acting CEO & President

INTERTAN, INC.

By: *[signature]*
Name: Reginald Hedgebeth
Title: Vice President

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or (b) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, if requested by Rothschild, assume the defense of any such Action including the employment of counsel reasonably satisfactory to

Circuit City Stores, Inc.
As of October 13, 2008
Exhibit A - Page 2

Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; <u>provided</u> that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful

Circuit City Stores, Inc.
As of October 13, 2008
Exhibit A - Page 3

misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.