or to such other address or to the attention of such other person as hereafter shall be designated in writing by the applicable party sent in accordance herewith. Any such notice or communication shall be deemed to have been given and received either at the time of personal delivery or, in the case of delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or in the case of confirmed telegram, telex or telecopy, upon receipt.

12.    <u>Modification</u>. This Agreement may not be modified orally or in any manner other than by an agreement in writing signed by the parties hereto or their respective successors in interest.

13.    <u>Successor Mortgagee</u>. The term "Mortgagee" as used throughout this Agreement includes any successor or assign of Mortgagee and any holder(s) of any interest in the indebtedness secured by the Deed of Trust.

14.    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, and any purchaser or purchasers at foreclosure of the Mortgaged Premises, and their respective heirs, personal representatives, successors and assigns.

15.    <u>Paragraph Headings</u>. The paragraph headings contained in this Agreement are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several paragraphs hereof.

16.    <u>Gender and Number</u>. Within this Agreement, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural and words in the plural number shall be held and construed to include the singular, unless the context otherwise requires.

17.    <u>Applicable Law</u>. This Agreement and the rights and duties of the parties hereunder shall be governed by all purposes by the law of the State of Illinois and the law of the United States applicable to transactions within such state.

33544 00056 REALEST 74187

IN WITNESS WHEREOF, the parties hereto have hereunto caused this Agreement to be duly executed as of the day and year first above written.

Tenant:

CIRCUIT CITY STORES, INC.
a Virginia corporation


By: _____
      Name:_____
      Title:_____


Lender:

GUARANTY FEDERAL BANK, F.S.B., a
federal savings bank


By: _____
      Name:_____
      Title:_____


Landlord:

_____


By: _____
      Name:_____
      Title:_____

33544 00056 REALEST 74187

THE STATE OF VIRGINIA       )

                           )

COUNTY OF _____    )

This instrument was acknowledged before me on _____, 1996 by _____, _____ of Circuit City Stores, Inc., a Virginia corporation on behalf of said corporation.

_____
Notary Public, State of Virginia

_____
(printed name)

My commission expires:

_____.


THE STATE OF TEXAS        )

                          )

COUNTY OF DALLAS        )

This instrument was acknowledged before me on _____, 1996 by _____, _____ of Guaranty Federal Bank, F.S.B., a federal savings bank, on behalf of said federal savings bank.

_____
Notary Public, State of Texas

_____
(printed name)

My commission expires:

_____.

THE STATE OF _____        )
                               )
COUNTY OF _____          )

This instrument was acknowledged before me on _____, 1996 by
_____, _____ of
_____, a _____, on behalf of said
_____.


_____
Notary Public, State of _____


_____
(printed name)

My commission expires:

_____.


After recording, return to:

Juliet N. Carter
Thompson & Knight, P.C.
1700 Pacific Avenue, Suite 3300
Dallas, Texas  75201

33544 00056 REALEST 74187

8

## EXHIBIT H
## Memorandum of Lease

## EXHIBIT "H"

## MEMORANDUM OF LEASE AGREEMENT

This Memorandum of Lease is made this _____ day of _____, 1996, between PARKER CENTRAL PLAZA, LTD., a Texas limited partnership (hereinafter referred to as "Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation (hereinafter referred to as "Tenant").

### W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated _____, 1996, whereby Landlord has leased to Tenant a portion of the real property (the "Property"), located in the City of Plano, Collin County, Texas, the legal description of which Property is set forth on Exhibit "A-1" attached hereto. The Lease contains provisions and rights appurtenant to the Property, some of which are as follows:

1.     Term.  The term of the Lease is for a period of twenty (20) years, commencing on the Commencement Date (as established in the Lease based upon the substantial completion of the improvements upon the Property).  Thereafter, Tenant has the right under the Lease to renew and extend the term of the Lease for four (4) successive periods of five (5) years each.

2.     Exclusive Use Rights.  The Lease provides that no tenant or occupant of the Property other than Tenant shall be entitled to use more than five hundred (500) square feet of its premises for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular telephones, household appliances (which include, but shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners and dishwashers) and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems (all of such items being herein collectively referred to as the

"Products"), or (ii) rental of consumer, office and automotive electronics equipment, computer hardware and appliances, or repair of the Products.

3.    Successors. The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

4.    Incorporation of Lease. All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

5.    Conflicts with Lease. This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease. In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

LANDLORD: PARKER CENTRAL PLAZA, LTD.,
a Texas limited partnership

ATTEST:           By:    Parker Central Partners, LLC, a Texas limited liability company

By:_____
Its:_____

By:_____
       Name: Wayne L. Nash
       Title: Manager

Attest:         TENANT: CIRCUIT CITY STORES, INC., a Virginia corporation

_____    By: _____
Its: Assistant Secretary        Vice President

(SEAL)

H-2

STATE OF VIRGINIA     )
                      )ss.
COUNTY OF HENRICO    )

       The foregoing instrument was acknowledged before me this day of _____ 19__, by _____, _____ of Circuit City Stores, Inc., a Virginia corporation, on behalf of the corporation.


              _____
              Notary Public in and for said County and State


My commission expires: _____


(SEAL)


STATE OF TEXAS      )
                   )ss.
COUNTY OF COLLIN    )

       The foregoing instrument was acknowledged before me this ___ day of _____ 19__, by Wayne L. Nash, _____ of _____, a Texas limited liability company on behalf of the limited liability company.


              _____
              Notary Public in and for said County and State


My commission expires: _____    (SEAL)


H-3

EXHIBIT I
Commencement Date Agreement

<u>EXHIBIT "I"</u>

## <u>COMMENCEMENT DATE AGREEMENT</u>

THIS AGREEMENT, made as of this ____ day of _____, 19__, between PARKER CENTRAL PLAZA, LTD. (herein called "Landlord"), and CIRCUIT CITY STORES, INC. (herein called "Tenant").

## W I T N E S S E T H:

WHEREAS, Landlord is the owner of certain premises situated in the City of Plano, Collin County, Texas (herein called the "Premises"); and

WHEREAS, by that certain lease dated _____, 19__, (herein called the "Lease"), Landlord leased the Premises to Tenant; and

WHEREAS, a memorandum or short form lease in respect of the Lease was recorded in the office of the Clerk of _____ County, _____, on the ____ day of _____ 19__, in Book _____ at Page ____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Lease has commenced; and

WHEREAS, under Paragraph ____ of the Lease Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1. The term of the Lease commenced on, and the Rent Commencement Date (as such term is defined in the Lease) was, _____, 19__. The term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to extend the term of the Lease or unless the Lease terminates earlier as provided in the Lease.

2. The date of commencement of the first "Option Period" (as such term is defined in the Lease) shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

3. The date of commencement of the second Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

4. The date of commencement of the third Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

5. The date of commencement of the fourth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

PARKER CENTRAL PLAZA, LTD.,
a Texas limited partnership

ATTEST:

By: Parker Central Partners, LLC, a Texas limited liability company

By:_____
Its:_____

By:_____
Name:  Wayne L. Nash
Title:  Manager

Attest:

CIRCUIT CITY STORES, INC., a Virginia corporation

_____
Assistant Secretary

By: _____
Vice President

I-2

u(4313):\circuit\plano\lease.004

EXHIBIT J
Indemnity Agreement

## EXHIBIT "J"

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement (this "Agreement) is made this _____ day of
_____ 1996, between PARKER CENTRAL PLAZA, LTD., a Texas limited
partnership (hereinafter referred to as "Landlord") and CIRCUIT CITY STORES, INC., a
Virginia corporation (hereinafter referred to as "Tenant").

## W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated
_____ whereby Landlord has leased to Tenant a portion of the real property
located in the City of Plano, Collin County, Texas (the "Shopping Center") and Tenant has
constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Tenant Improvement
Allowance as defined in the Lease and other good and valuable consideration, the receipt of
which is hereby acknowledged, the parties hereto agree as follows:

1.     Tenant hereby indemnifies and agrees to defend and hold Landlord harmless
from any loss, payment, claim or expense as the result of mechanics and materialmen filing
liens or otherwise making claims against Landlord's interest in the Premises and the
Shopping Center based upon materials or services provided under contract with Tenant or
otherwise arising out of or in connection with the construction by Tenant of the Premises
within the Shopping Center.  In the event that any mechanic, materialman or other claimant
makes claim against the Premises or Shopping Center based upon materials or services
provided under contract with Tenant, Tenant shall defend, hold harmless and protect
Landlord from any loss, payment, claim or expense related thereto, including attorney's fees
and court costs incurred by Landlord.

2.     Tenant reserves the right to contest in good faith the amount of any claim or
lien assessed against the Premises or the Shopping Center by any of such claimants;
provided, however, should the holder or holders of such claim or lien attempt to enforce
their lien by foreclosure by any other means, Tenant shall bond around, pay or remove such
lien by any manner reasonably necessary to protect Landlord's interest in the Premises and
the Shopping Center.  This Agreement to indemnify, defend and hold harmless Landlord
shall not apply to any liens or claims caused by Landlord or Landlord's agents.

3.     This Agreement may be assigned by Landlord and shall be binding upon, and
shall inure to the benefit of, Landlord and Tenant and their respective successors and assigns.

EXECUTED this _____ day of _____, 1996.

u(4313):\circuit\plano\lease.004

**LANDLORD**

PARKER CENTRAL PLAZA, LTD.,
a Texas limited partnership

By: Parker Central Partners, LLC, a Texas
limited liability company

       By:_____
       Name:  Wayne L. Nash
       Title:  Manager


**TENANT**

CIRCUIT CITY STORES, INC., a Virginia
corporation


By:_____
Name:_____
Title:_____


J-2

EXHIBIT "A-1"

Being a tract of land situated in the City of Plano, Texas, out of the Daniel Rowlett Survey, Abstract No. 738, said tract includes Tract A and Part of Tract B of Las Tiendas Subdivision, an addition to the City of Plano as recorded in Volume 9, Page 59 of the Map Records of Collin County, Texas, and being more particularly described as follows:

COMMENCING at a 1" iron rod found for point in the southeast line of U.S. Highway No. 75, said point being the most westerly corner of Fairview Farm Marketplace Addition, according to the recorded map thereof, in Drawer G, Page 630 in the Map Records, Collin County, Texas;

THENCE South 24 deg. 15 min. 35 sec. West along the East line of said U.S. Highway No. 75, a distance of 283.95 feet to a 1/2" iron rod set for corner;

THENCE South 65 deg. 44 min. 25 sec. East a distance of 11.78 feet to a 1/2" iron rod for corner;

THENCE South 80 deg. 00 min. 00 sec. East a distance of 256.72 feet to a 1/2" iron rod set for corner and THE POINT OF BEGINNING;

THENCE South 80 deg. 00 min. 00 sec. East a distance of 219.13 feet to a 1/2" iron rod set for corner;

THENCE South 10 deg. 00 min. 00 sec. West a distance of 89.23 feet to a 1/2" iron rod set for corner;

THENCE South 80 deg. 00 min. 00 sec. East a distance of 341.51 feet to a point for corner and intersecting a curve concave to the east and having a central angle of 04 deg. 57 min. 21 sec., a radius of 2914.93 feet, and a chord bearing of South 07 deg. 43 min. 19 sec. West, said point also being in the westerly right-of-way line of a 100 foot Dart right-of-way;

THENCE Southerly along said curve and the westerly Dart right-of-way line a distance of 247.04 feet to a concrete monument found for corner in the north right-of-way line of Parker Road;

THENCE North 87 deg. 37 min. 25 sec. West along the north right-of-way line of Parker Road a distance of 597.72 feet to a 1/2" iron rod found for corner;

THENCE North 17 deg. 10 min. 47 sec. West a distance of 119.14 feet to a 1/2" iron rod found for corner;

THENCE North 32 deg. 45 min. 11 sec. East a distance of 10.04 feet to a 1/2" iron rod set for corner;

THENCE South 80 deg. 00 min. 00 sec.  East a distance of 23.45 feet to a 1/2" iron rod set for corner;

THENCE North 10 deg. 00 min. 00 sec.  East a distance of 21.29 feet to a 1/2" iron rod set for corner;

THENCE South 80 deg. 00 min. 00 sec.  East a distance of 32.49 feet to a 1/2" iron rod set for corner;

THENCE North 10 deg. 00 min. 00 sec.  East a distance of 86.16 feet to a 1/2" iron rod set for corner;

THENCE North 13 deg. 26 min. 32 sec.  East a distance of 86.07 feet to a 1/2" iron rod set for corner;

THENCE North 20 deg. 46 min. 48 sec.  East a distance of 61.03 feet to a 1/2" iron rod set for corner;

THENCE North 10 deg. 00 min. 00 sec.  East a distance of 46.73 feet to the POINT OF BEGINNING and containing 190,347 square feet or 4.3698 acres.

Attest:                                    TENANT: CIRCUIT CITY STORES, INC., a Virginia
                                           corporation


Its  Assistant Secretary               By: _____
                                              Vice President

(SEAL)



STATE OF VIRGINIA    )
                    )ss.

COUNTY OF HENRICO    )

    The foregoing instrument was acknowledged before me this day of _Febuary 6_
1996, by _Benjamin B. Cummins Jr._, _Vice President_ of Circuit City Stores, Inc., a Virginia
corporation, on behalf of the corporation.

_____
Notary Public in and for said County and State


My commission expires: _7-31-97_____


(SEAL)




STATE OF TEXAS    )
                    )ss.

COUNTY OF COLLIN    )


    The foregoing instrument was acknowledged before me this _2th_ day of
_February_____ 1996, by Wayne L. Nash, manager of Parker Central Partners, LLC, a
Texas limited liability company, on behalf of the limited liability company.

_____
Notary Public in and for said County and State

```
******************************
*  NOTARY PUBLIC             *
*     ★         PAULETTE HUBBARD        *
*            Notary Public, State of Texas    *
*            My Commission Expires Jan. 31, 1999 *
******************************
```

My commission expires: _____    (SEAL)


[4313]:\circuit\plano\lease.mem

After Recording Return To:                    RTT 96R00280 CR7 $21.00 (5)
McGuire, Woods, Battle & Boothe
One James Center
901 East Cary Street
Richmond, VA 23219-4030

0018036
1-96

## MEMORANDUM OF LEASE AGREEMENT

This Memorandum of Lease is made this __9th__ day of February, 1996, between
PARKER CENTRAL PLAZA, LTD., a Texas limited partnership (hereinafter referred to as
"Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation (hereinafter
referred to as "Tenant").

## W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated February _9_,
1996, whereby Landlord has leased to Tenant a portion of the real property (the "Property"),
located in the City of Plano, Collin County, Texas, the legal description of which Property is
set forth on Exhibit "A-1" attached hereto.  The Lease contains provisions and rights
appurtenant to the Property, some of which are as follows:

1.     Term.  The term of the Lease is for a period of twenty (20) years,
commencing on the Commencement Date (as established in the Lease based upon the
substantial completion of the improvements upon the Property).  Thereafter, Tenant has the
right under the Lease to renew and extend the term of the Lease for four (4) successive
periods of five (5) years each.

2.     Exclusive Use Rights.  The Lease provides that no tenant or occupant of the
Property other than Tenant shall be entitled to use more than five hundred (500) square feet
of its premises for (i) the sale of consumer, office and automotive electronics products
(which include, but shall not be limited to, televisions, stereos, speakers and video recorders
and players), computer hardware and software, entertainment software and entertainment
media (which include, but shall not be limited to, records, game cartridges, video tapes,
cassettes and compact discs), cellular telephones, household appliances (which include, but
shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners
and dishwashers) and related goods and the sale and installation of motor vehicle audio,
stereo and telephone systems (all of such items being herein collectively referred to as the
"Products"), or (ii) rental of consumer, office and automotive electronics equipment,
computer hardware and appliances, or repair of the Products, subject only to the rights of

/

Computer City to use its premises for the following uses: (i) the sale, lease, service or supply of computers, computer software, computer tools, computer peripherals, and components thereof, and (ii) the sale, lease, service and supply of any other product or device that has an office, home-office or personal productivity use or application (including, by way of example and without limitation, paper goods, ribbons, calculators, personal organizers, hand-held electronic devices, hand-held computers, copiers, facsimile machines, cellular phones and office furniture).  The foregoing exception to Tenant's exclusive use shall be in effect only if any exclusive use provisions of Computer City shall not be applicable to Tenant, and only so long as Computer City is open and operating for business in the shopping center in which the Property is located.

     3.    Successors.  The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

     4.    Incorporation of Lease.  All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

     5.    Conflicts with Lease.  This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease.  In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

     IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

LANDLORD: PARKER CENTRAL PLAZA, LTD.,
a Texas limited partnership

ATTEST:          By:   Parker Central Partners, LLC, a Texas limited
                  liability company

By:_____
Its:_____

               By:_____
               Name:  Wayne L. Nash
               Title: Manager

2

Attest:                           TENANT: CIRCUIT CITY STORES, INC., a Virginia
                                  corporation


_____          By: _____
Its: Assistant Secretary              Vice President





STATE OF VIRGINIA            )
                                        )ss.
COUNTY OF HENRICO        )

The foregoing instrument was acknowledged before me this day of ~~February 6~~
1996, by ~~Benjamin B Cummins Jr.~~, ~~Vice President~~ of Circuit City Stores, Inc., a Virginia
corporation, on behalf of the corporation.

_____
Notary Public in and for said County and State

My commission expires: 7-31-97

(SEAL)

STATE OF TEXAS            )
                                      )ss.
COUNTY OF COLLIN        )

The foregoing instrument was acknowledged before me this ~~2nd~~ day of
~~February~~ 1996, by Wayne L. Nash, manager of Parker Central Partners, LLC, a
Texas limited liability company, on behalf of the limited liability company.

_____
Notary Public in and for said County and State

My commission expires: _____        (SEAL)

[4313]:\circuit\plano\lease.mem

4

EXHIBIT "A-1"

Being a tract of land situated in the City of Plano, Texas, out of the Daniel Rowlett Survey, Abstract No. 738, said tract includes Tract A and Part of Tract B of Las Tiendas Subdivision, an addition to the City of Plano as recorded in Volume 9, Page 59 of the Map Records of Collin County, Texas, and being more particularly described as follows:

COMMENCING at a 1" iron rod found for point in the southeast line of U.S. Highway No. 75, said point being the most westerly corner of Fairview Farm Marketplace Addition, according to the recorded map thereof, in Drawer G, Page 630 in the Map Records, Collin County, Texas;

THENCE South 24 deg. 15 min. 35 sec. West along the East line of said U.S. Highway No. 75, a distance of 283.95 feet to a 1/2" iron rod set for corner;

THENCE South 65 deg. 44 min. 25 sec. East a distance of 11.78 feet to a 1/2" iron rod for corner;

THENCE South 80 deg. 00 min. 00 sec. East a distance of 256.72 feet to a 1/2" iron rod set for corner and THE POINT OF BEGINNING;

THENCE South 80 deg. 00 min. 00 sec. East a distance of 219.13 feet to a 1/2" iron rod set for corner;

THENCE South 10 deg. 00 min. 00 sec. West a distance of 89.23 feet to a 1/2" iron rod set for corner;

THENCE South 80 deg. 00 min. 00 sec. East a distance of 341.51 feet to a point for corner and intersecting a curve concave to the east and having a central angle of 04 deg. 57 min. 21 sec., a radius of 2914.93 feet, and a chord bearing of South 07 deg. 43 min. 19 sec. West, said point also being in the westerly right-of-way line of a 100 foot Dart right-of-way;

THENCE Southerly along said curve and the westerly Dart right-of-way line a distance of 247.04 feet to a concrete monument found for corner in the north right-of-way line of Parker Road;

THENCE North 87 deg. 37 min. 25 sec. West along the north right-of-way line of Parker Road a distance of 597.72 feet to a 1/2" iron rod found for corner;

THENCE North 17 deg. 10 min. 47 sec. West a distance of 119.14 feet to a 1/2" iron rod found for corner;

THENCE North 32 deg. 45 min. 11 sec. East a distance of 10.04 feet to a 1/2" iron rod set for corner;

THENCE South 80 deg. 00 min. 00 sec.  East a distance of 23.45 feet to a 1/2" iron rod set for corner;

THENCE North 10 deg. 00 min. 00 sec.  East a distance of 21.29 feet to a 1/2" iron rod set for corner;

THENCE South 80 deg. 00 min. 00 sec.  East a distance of 32.49 feet to a 1/2" iron rod set for corner;

THENCE North 10 deg. 00 min. 00 sec.  East a distance of 86.16 feet to a 1/2" iron rod set for corner;

THENCE North 13 deg. 26 min. 32 sec.  East a distance of 86.07 feet to a 1/2" iron rod set for corner;

THENCE North 20 deg. 46 min. 48 sec.  East a distance of 61.03 feet to a 1/2" iron rod set for corner;

THENCE North 10 deg. 00 min. 00 sec.  East a distance of 46.73 feet to the POINT OF BEGINNING and containing 190,347 square feet or 4.3698 acres.

After Recording Return To:

Republic Title of Texas, Inc.
300 Crescent Court #100
Dallas, TX 75201

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE
DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND
UNENFORCEABLE UNDER FEDERAL LAW
(THE STATE OF TEXAS)                    (COUNTY OF COLLIN)
I hereby certify that this instrument was FILED in the File Number Sequence
on the date and the time stamped hereon by me; and was duly RECORDED,
on the Official Public Records of Real Property of Collin County, Texas on

MAR 0 5 1996

*Helen Starnes*

COUNTY CLERK, COLLIN COUNTY, TEXAS

Filed for Record in:
COLLIN COUNTY, TX
HONORABLE HELEN STARNES

On  1996/03/05

At  4:02P

Number: 96- 0018036
Type : MR    21.00

7

After Recording Return To:
Mr. Bryan Cary
McGuire, Woods, Battle & Boothe
One James Center
901 East Cary Street
Richmond, VA 23219-4030

Case 08-35653-KRH   Doc 2660-4   Filed 03/19/09   Entered 03/19/09 19:04:57   Desc
Exhibit(s) A - Part 4   Page 26 of 45

## MEMORANDUM OF LEASE AGREEMENT

This Memorandum of Lease is made this __9th__ day of February, 1996, between PARKER CENTRAL PLAZA, LTD., a Texas limited partnership (hereinafter referred to as "Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation (hereinafter referred to as "Tenant").

### W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated February 9, 1996, whereby Landlord has leased to Tenant a portion of the real property (the "Property"), located in the City of Plano, Collin County, Texas, the legal description of which Property is set forth on Exhibit "A-1" attached hereto. The Lease contains provisions and rights appurtenant to the Property, some of which are as follows:

1.  Term. The term of the Lease is for a period of twenty (20) years, commencing on the Commencement Date (as established in the Lease based upon the substantial completion of the improvements upon the Property). Thereafter, Tenant has the right under the Lease to renew and extend the term of the Lease for four (4) successive periods of five (5) years each.

2.  Exclusive Use Rights. The Lease provides that no tenant or occupant of the Property other than Tenant shall be entitled to use more than five hundred (500) square feet of its premises for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular telephones, household appliances (which include, but shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners and dishwashers) and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems (all of such items being herein collectively referred to as the "Products"), or (ii) rental of consumer, office and automotive electronics equipment, computer hardware and appliances, or repair of the Products, subject only to the rights of

Computer City to use its premises for the following uses: (i) the sale, lease, service or supply of computers, computer software, computer tools, computer peripherals, and components thereof, and (ii) the sale, lease, service and supply of any other product or device that has an office, home-office or personal productivity use or application (including, by way of example and without limitation, paper goods, ribbons, calculators, personal organizers, hand-held electronic devices, hand-held computers, copiers, facsimile machines, cellular phones and office furniture). The foregoing exception to Tenant's exclusive use shall be in effect only if any exclusive use provisions of Computer City shall not be applicable to Tenant, and only so long as Computer City is open and operating for business in the shopping center in which the Property is located.

3.    <u>Successors</u>. The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

4.    <u>Incorporation of Lease</u>. All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

5.    <u>Conflicts with Lease</u>. This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease. In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

LANDLORD: PARKER CENTRAL PLAZA, LTD.,
a Texas limited partnership

ATTEST:                        By:    Parker Central Partners, LLC, a Texas limited
                                      liability company

By:_____
Its:_____

                               By:_____
                               Name:   Wayne L. Nash
                               Title: Manager

# SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT

THIS AGREEMENT made this _28th_ day of February, 1996, between GUARANTY FEDERAL BANK, F.S.B., a federal savings bank (hereinafter called "Mortgagee"), CIRCUIT CITY STORES, INC. (hereinafter called "Tenant") and PARKER CENTRAL PARTNERS, LTD., a Texas limited partnership ("Landlord").

## W I T N E S S E T H   T H A T :

WHEREAS, Mortgagee is now or will be the owner and holder of a Deed of Trust and Security Agreement (hereinafter called the "Deed of Trust") dated February _28_ , 1996, covering the real property described in Exhibit A, the buildings and improvements thereon and other property described therein (hereinafter collectively called the "Mortgaged Premises"), securing the payment of a promissory note in the stated principal amount of $11,910,738.00 payable to the order of Mortgagee;

WHEREAS, Tenant is the tenant under the lease (hereinafter called the "Lease") dated February _____, 1996, made by Parker Central Partners, Ltd., a Texas limited partnership, as landlord (said landlord and its successors and assigns occupying the position of landlord under the Lease hereinafter called "Landlord"), covering certain property (hereinafter called the "Demised Premises") consisting of all or a part of the Mortgaged Premises; and

WHEREAS, Tenant and Mortgagee desire to confirm their understanding with respect to the Lease and the Deed of Trust;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, Mortgagee and Tenant hereby agree and covenant as follows:

1.    Subordination.  The Lease now is, and shall at all times and for all purposes continue to be, subject and subordinate, in each and every respect, to the lien of the Deed of Trust, it being understood and agreed that the foregoing subordination shall apply to any and all increases, renewals, modifications, extensions, substitutions, replacements and/or consolidations of the Deed of Trust, provided that any and all such increases, renewals, modifications, extensions, substitutions, replacements and/or consolidations shall nevertheless be subject to the terms of this Agreement.

2.    Non-Disturbance.  So long as (i) Tenant is not in default (beyond any period given Tenant to cure such default) in the payment of rent or additional rent or in the performance of any of the other material terms, covenants or conditions of the Lease on Tenant's part to be performed, (ii) the Lease is in full force and effect according to its

33544 00056 REALEST 75239

/

original terms, or with such amendments or modifications as Lender shall have approved, and (iii) Tenant attorns to Mortgagee or a purchaser of the Mortgaged Premises as provided in Paragraph 3, then (a) Tenant's possession, occupancy, use and quiet enjoyment of the Demised Premises under the Lease, or any extensions or renewals thereof or acquisition of additional space which may be effected in accordance with any option therefor in the Lease, shall not be terminated, disturbed, diminished or interfered with by Mortgagee in the exercise of any of its rights under the Deed of Trust, and (b) Mortgagee will not join Tenant as a party defendant in any action or proceeding for the purpose of terminating Tenant's interest and estate under the Lease because of any default under the Deed of Trust. The Mortgagee shall be bound and abide by the terms of the Lease upon succeeding to the interest of the Landlord under the Lease, including but not limited to those provisions controlling the treatment of casualty and condemnation proceeds.

3.   Attornment. If Mortgagee shall become the owner of the Mortgaged Premises or the Mortgaged Premises shall be sold by reason of foreclosure or other proceedings brought to enforce the Deed of Trust or the Mortgaged Premises shall be conveyed by deed in lieu of foreclosure, the Lease shall continue in full force and effect as a direct Lease between the then owner of the Mortgaged Premises, who shall succeed to the rights and duties of Landlord, and Tenant, and Tenant shall attorn to Mortgagee or such purchaser, as the case may be, upon any such occurrence and shall recognize Mortgagee or such purchaser, as the case may be, as the Landlord under the Lease. Such attornment shall be effective and self–operative without the execution of any further instrument on the part of any of the parties hereto. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the reasonable request of Landlord or of any holder(s) of any of the indebtedness or other obligations secured by the Deed of Trust or any such purchaser, any instrument or certificate which is necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment. Tenant hereby waives the provisions of any statute or rule of law, now or hereafter in effect, which may give or purport to give Tenant any right or election to terminate or otherwise adversely affect the Lease and the obligations of Tenant thereunder as a result of any such foreclosure or deed in lieu of foreclosure.

4.   Obligations and Remedies. If Mortgagee shall become the owner of the Mortgaged Premises or the Mortgaged Premises shall be sold by reason of foreclosure or other proceedings brought to enforce the Deed of Trust or the Mortgaged Premises shall be conveyed by deed in lieu of foreclosure, Mortgagee or such purchaser, as the case may be, shall have the same remedies in the event of any default by Tenant (beyond any period given Tenant to cure such default) that Landlord had or would have had if Mortgagee or such purchaser had not succeeded to the interest of Landlord. Upon attornment by Tenant as provided herein, Mortgagee or such purchaser shall be bound to Tenant under all the terms, covenants and conditions of the Lease and Tenant shall have the same remedies against Mortgagee or such purchaser for the breach of an agreement contained in the Lease that Tenant might have had under the Lease against Landlord if Mortgagee or such purchaser had

not succeeded to the interest of Landlord; provided, however, that Mortgagee or such purchaser shall not be liable or bound to Tenant:

(a)     for any act or omission of any prior landlord (including Landlord); or

(b)     for any offsets or defenses which Tenant might have against any prior landlord (including Landlord) unless Mortgagee was provided notice of the default creating the right of offset or such defense and was given the same opportunity to cure such default as provided Landlord under the Lease; or

(c)     for or by any rent or additional rent which Tenant might have paid for more than the current month to any prior landlord (including Landlord); or

(d)     for any security deposit, rental deposit or similar deposit given by Tenant to a prior landlord (including Landlord) unless such deposit is actually paid over to Mortgagee or such purchaser by the prior landlord; or

(e)     for any moving, relocation or refurbishment allowance; or

(f)     by any notice given by Tenant to a prior landlord (including Landlord) unless a copy thereof was also then given to Mortgagee; or

(g)     for payment of the Tenant Improvement Allowance (as defined in Exhibit C to the Lease); provided, however, the foregoing shall not affect Tenant's rights to (i) reduce or abate any rent payments due to Landlord under the Lease; (ii) offset any unpaid portion of the Tenant Improvement Allowance against any rental payments due to Landlord under the Lease; or (iii) convert the Lease to a ground lease as provided therein.

Except as set out above, the person or entity to whom Tenant attorns shall be liable to Tenant under the Lease only for matters arising during such person's or entity's period of ownership.

5.     No Abridgment.  Nothing herein contained is intended, nor shall it be construed, to abridge or adversely affect any right or remedy of Landlord or Tenant under the Lease in the event of any default by either Landlord or Tenant (beyond any period given Landlord or Tenant to cure such default) in the performance of any of the terms, covenants or conditions of the Lease.

6.     Notices of Default to Mortgagee.  Tenant agrees to give Mortgagee a copy of any default notice sent by Landlord under the Lease to Tenant or by Tenant to Landlord.

7.    Representations by Tenant.  Tenant represents and warrants to Mortgagee that Tenant has validly executed the Lease; the Lease is valid, binding and enforceable and is in full force and effect in accordance with its terms; the Lease has not been amended except as stated herein; no rent under the Lease has been paid more than thirty (30) days in advance of its due date; Tenant is unaware of any defaults existing under the Lease; and Tenant, as of this date, has no existing charge, lien, counterclaim or claim of offset under the Lease, or otherwise, against the rents or other charges due or to become due under the Lease.

8.    Rent Payment.  If Mortgagee shall become the owner of the Mortgaged Premises or the Mortgaged Premises shall be sold by reason of foreclosure or other proceedings brought to enforce the Deed of Trust or the Mortgaged Premises shall be conveyed by deed in lieu of foreclosure, Tenant agrees to pay all rents directly to Mortgagee or such purchaser, as the case may be, in accordance with the Lease immediately upon notice of Mortgagee or such purchaser, as the case may be, succeeding to Landlord's interest under the Lease.  Tenant further agrees to pay all rents directly to Mortgagee immediately upon notice that Mortgagee is exercising its rights to such rents under the Deed of Trust or any other loan documents (including but not limited to any Assignment of Leases and Rents) following a default by Landlord or other applicable party.   Landlord consents to such payment directly to Mortgagee upon receipt by Tenant of such notice.

9.    Notice of Deed of Trust.  To the extent that the Lease shall entitle Tenant to notice of any mortgage or security agreement, this Agreement shall constitute such notice to the Tenant with respect to the Deed of Trust and to any and all other mortgages and security agreements which may hereafter be subject to the terms of this Agreement.

10.    Landlord Defaults.  Tenant agrees with Mortgagee that effective as of the date of this Agreement, Tenant shall not take any steps to terminate the Lease for any default by Landlord or any succeeding owner of the Mortgaged Premises until after giving Mortgagee a copy of any notice of default required to be provided to Landlord under the Lease and allowing Mortgagee the opportunity to cure such default within the time period allowed Landlord to cure under the Lease.

11.    Notice.  Any notice or communication required or permitted hereunder shall be given in writing, sent by (a) personal delivery, or (b) expedited delivery service with proof of delivery, or (c) United States mail, postage prepaid, registered or certified mail, or (d) confirmed telegram, telex or telecopy, addressed as follows:

To Mortgagee:                    Guaranty Federal Bank, F.S.B.
                                 8333 Douglas Avenue
                                 Dallas, Texas  75225
                                 Attention:  Commercial Real Estate Lending
                                 Division

33544 00056 REALEST 75239

4

To Tenant:                    Circuit City Stores, Inc.
                              9950 Mayland Drive
                              Richmond, Virginia  23233
                              Attention:  Vice President of Real Estate

or to such other address or to the attention of such other person as hereafter shall be designated in writing by the applicable party sent in accordance herewith.  Any such notice or communication shall be deemed to have been given and received either at the time of personal delivery or, in the case of delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or in the case of confirmed telegram, telex or telecopy, upon receipt.

    12.    Modification.  This Agreement may not be modified orally or in any manner other than by an agreement in writing signed by the parties hereto or their respective successors in interest.

    13.    Successor Mortgagee.  The term "Mortgagee" as used throughout this Agreement includes any successor or assign of Mortgagee and any holder(s) of any interest in the indebtedness secured by the Deed of Trust.

    14.    Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, and any purchaser or purchasers at foreclosure of the Mortgaged Premises, and their respective heirs, personal representatives, successors and assigns.

    15.    Paragraph Headings.  The paragraph headings contained in this Agreement are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several paragraphs hereof.

    16.    Gender and Number.  Within this Agreement, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural and words in the plural number shall be held and construed to include the singular, unless the context otherwise requires.

    17.    Applicable Law.  This Agreement and the rights and duties of the parties hereunder shall be governed by all purposes by the law of the State of Illinois and the law of the United States applicable to transactions within such state.

33544 00056 REALEST 75239

18.   _Counterparts._  This Agreement may be executed in multiple counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be one and the same instrument with the same effect as if all parties to this agreement had signed the same signature page.

IN WITNESS WHEREOF, the parties hereto have hereunto caused this Agreement to be duly executed as of the day and year first above written.

**Tenant:**

**CIRCUIT CITY STORES, INC.**
a Virginia corporation

By: _____
Name: Benjamin B. Cummings, Jr.
Title: Vice President

**Lender:**

**GUARANTY FEDERAL BANK, F.S.B.,** a
federal savings bank

By: _____
Jim J. Johnson, Vice President

**Landlord:**

**PARKER CENTRAL PLAZA, LTD.,** a Texas
limited partnership

By:  Parker Central Partners, LLC, a Texas
limited liability company, its Managing General
Partner

By: _____
Wayne L. Nash, Manager



THE STATE OF VIRGINIA        )
                             )
COUNTY OF Henrico            )

This instrument was acknowledged before me on February 6 , 1996 by
Benjamin B. Cummings, Jr. , Vice President of Circuit City Stores, Inc., a
Virginia corporation on behalf of said corporation.

Dixon R. Phillips
Notary Public, State of Virginia

Dixon R. Phillips
(printed name)

My commission expires:

7-31-97 .


THE STATE OF TEXAS          )
                            )
COUNTY OF DALLAS            )

This instrument was acknowledged before me on February 3-1 _____ , 1996 by Jim J.
Johnson, Vice President of Guaranty Federal Bank, F.S.B., a federal savings bank, on
behalf of said federal savings bank.

Donna J. Kirkland
Notary Public, State of Texas

_____
(printed name)

My commission expires:

_____ .

DONNA J. KIRKLAND
Notary Public, State of Texas
My Commission Expires 7-19-99

335-44 00056 REALEST 75239

7

THE STATE OF TEXAS        )
                          )
COUNTY OF DALLAS          )

                                        3 - 1

 This instrument was acknowledged before me on ~~February~~ ____, 1996 by Wayne L. Nash, Manager of Parker Central Partners, LLC, a Texas limited liability company, on behalf of said limited liability company in its capacity as General Partner of Parker Central Partners, Ltd., a Texas limited partnership.


Notary Public, State of Texas

DONNA J. KIRKLAND
Notary Public, State of Texas
My Commission Expires 7-19-99

My commission expires:

_____.


After recording, return to:


Juliet N. Carter
Thompson & Knight, P.C.
1700 Pacific Avenue, Suite 3300
Dallas, Texas  75201

33544 00056 REALEST 75239

8

EXHIBIT "A-1"

TRACT 1

Being a tract of land situated in the City of Plano, Texas, out of the Daniel Rowlett Survey, Abstract No. 738, said tract includes TRACT A and Part of TRACT B of Las Tiendas Subdivision, an addition to the City of Plano as recorded in Volume 9, Page 59 of the Map Records of Collin County, Texas, and being more particularly described as follows:

BEGINNING at a 1 inch iron rod found for point in the southeast line of U. S. Highway No. 75, said point being the most westerly corner of Fairview Farm Marketplace Addition, according to the recorded map thereof, in Drawer G, Page 630 in the Map Records, Collin County, Texas;

THENCE South 89 degrees 40 minutes 25 seconds East along the south line of said Fairview Farm Marketplace Addition, a distance of 815.12 feet to a 1 inch iron rod found for corner in the westerly line of a 100 foot Dart Railroad right-of-way;

THENCE South 18 degrees 57 minutes 48 seconds West along said right-of-way line, a distance of 58.51 feet to the beginning of a curve to the left having a central angle of 13 degrees 40 minutes 07 seconds, a radius of 2,914.93 feet and a tangent length of 349.36 feet to an 1/2 inch iron rod set for corner;

THENCE along said curve to the left, an arc length of 695.40 feet to a point in the north line of Parker Road (100 foot R.O.W.), to a concrete monument set for corner;

THENCE North 87 degrees 37 minutes 25 seconds West, along said north line of Parker Road, a distance of 597.72 feet to an 1/2 inch iron rod set for corner;

THENCE North 17 degrees 10 minutes 47 seconds West, a distance of 119.14 feet to a 1 inch iron rod found for corner;

THENCE North 57 degrees 14 minutes 48 seconds West, a distance of 113.32 feet to a 1/2 inch iron rod set for corner;

THENCE North 66 degrees 42 minutes 15 seconds West, a distance of 100.71 feet to a 1 inch iron rod found for corner;

THENCE North 21 degrees 13 minutes 20 seconds West, a distance of 70.06 feet to a point in the southeast line of U. S. Highway No. 75, a 1 inch iron rod found for corner;

THENCE North 24 degrees 15 minutes 35 seconds East along said line of said Highway, a distance of 475.15 feet to THE POINT OF BEGINNING and containing 575,596.48 square feet or 13.2139 acres of land.

9

Exhibit A   (Continued)

TRACT 2:  EASEMENT ESTATE

Being a Non-exclusive, continuous and perpetual easement and right-of-way for
underground drainage, including, but not limited to, the installation of pipes,
culverts and other drainage facilities, in, upon, under and across the
property, together with the right of ingress, egress and regress over the
Easement Tract (as defined therein) for the purpose of constructing, improving,
operating, inspecting, maintaining, repairing, replacing, reconstructing,
removing and relocating any Drainage Facilities (as defined therein) located
with the Easement Tract and the right to remove (or to prevent the construction
or growth of, as applicable) all trees, shrubs, structures, improvements or any
encroachment or obstructions which endanger or may interfere with the
efficiency of use of any Drainage Facilities, as granted or purported to be
granted in Drainage Easement dated August 28, 1995, recorded under County
Clerk's File No. 95-0063684 and County Clerk's File No. 95-0063685 of the Land
Records of Collin County, Texas, and as shown on Survey Plat date January
1996, prepared by Needham Wright Laskey Engineers Inc., Robert M. Needham,
R.P.L.S. No. 3759.  Said easement is described on Exhibit C of County Clerk's
File Nos. 95-0063684 and 94-0063685, said property being described as follows:

BEING a tract of land in the City of Plano, Texas, out of the Daniel Rowlett
Survey, ABS No. 738, Collin County, Texas and being more particularly described
as follows:

COMMENCING at a 1" iron rod found at the southeast corner of Fairview Farm
Market Place Addition according to the recorded map thereof, in Drawer G, Page
630 in the Map Records of Collin County, Texas;

THENCE North 89 degrees 40 minutes 25 seconds West along the south line of said
Fairview Farm Market Place Addition a distance of 77.42 feet to a point;

THENCE North 00 degrees 19 minutes 35 seconds East a distance of 5.00 feet to a
point for the POINT OF BEGINNING;

THENCE northeasterly along a curve that has an interior angle of 34 degrees 36
minutes 12 seconds a radius of 169.52 feet, a chord bearing of North 59 degrees
04 minutes 24 seconds East and an arch length of 102.38 feet to a point;

THENCE South 18 degrees 57 minutes 48 seconds West a distance of 55.20 feet;

THENCE North 89 degrees 40 minutes 25 seconds West a distance of 68.56 feet to
the POINT OF BEGINNING and containing 1275 square feet or 0.0293 acres.

NOW KNOWN AS being part of Lot 1, Block A of FAIRVIEW FARM MARKETPLACE, an
Addition to the City of Plano, Texas, according to the Map thereof recorded in
Volume G, Page 630, Map Records of Collin County, Texas.

/0

EXHIBIT "A-3"

BEING an 8.6023 acre tract of land situated in the Daniel Rowlett Survey Abstract 738, in the City of Plano, Collin County, Texas, and being all of Lot 1, Block A, and part of Lot 2, Block A of Fairview Farm Marketplace, an Addition to the City of Plano, according to the Plat recorded in Cabinet G, page 630 & 631 of the Map Records, Collin County, Texas and being more particularly described as follows:

BEGINNING at the southwest corner of said lot 1 of the aforementioned Addition said point being in the Easterly Right-of-Way of U.S. Hwy. No. 75 (a 300 foot ROW, commonly known as North Central Expressway), an iron rod found for corner;

THENCE N 24 degrees 15 minutes 35 seconds E, along said ROW line of U.S. Hwy. 75, passing at 294.30 feet an iron rod found for the most Westerly Northwest corner of said Lot 1, same being the most Southwest corner of said Lot 2, in all a distance of 548.56 feet, an iron rod set for corner;

THENCE S 65 degrees 44 minutes 25 seconds E, departing said Easterly ROW line, a distance of 70.00 feet, an iron rod set for corner;

THENCE S 89 degrees 40 minutes 25 seconds E, passing iron rods at 200.85 feet and 344.31 feet, said points being the most Northerly Northwest and Northeast corners, respectively, of said Lot 1, in all a distance of 688.12 feet to a point in the Westerly ROW line of D.A.R.T. (a 100 foot ROW), an iron rod set for corner;

THENCE S 18 degrees 57 minutes 48 seconds W, along said westerly ROW line, passing at 215.29 feet, an iron rod for the most Easterly Northeast corner of said Lot 1, same being the Southeast corner of said Lot 2, in all a distance of 499.18 feet, to the Southeast corner of said Lot 1, an iron rod found for corner;

THENCE N 89 degrees 40 minutes 25 seconds W, a distance of 815.11 feet to the POINT OF BEGINNING and containing 8.6023 Acres of land.

//

After Recording Return To:

Republic Title of Texas, Inc.
300 Crescent Court #100
Dallas, TX 75201

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE
DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND
UNENFORCEABLE UNDER FEDERAL LAW
[THE STATE OF TEXAS]                          (COUNTY OF COLLIN)
I hereby certify that this instrument was FILED in the File Number Sequence
on the date and the time stamped hereon by me; and was duly RECORDED,
on the Official Public Records of Real Property of Collin County, Texas on

MAR 0 5 1996

COUNTY CLERK, COLLIN COUNTY, TEXAS

Filed for Record in:
COLLIN COUNTY, TX
HONORABLE HELEN STARNES

On  1996/03/05

At  4:02P

Number: 96- 0018042
Type : S2    31.00

/2

**CIRCUIT CITY STORES, INC.**
a Virginia corporation
9950 Mayland Drive
Richmond, Virginia 23233

~~January~~ _9_ , 1996
February

Guaranty Federal Bank, F.S.B.
8333 Douglas Avenue
Dallas, Texas 75225
Attention: Commercial Real Estate Lending Division

Re:   Guaranty Federal Bank, F.S.B., a federal savings bank - $11,600,000.00 loan to
Parker Central Plaza, Ltd., a Texas limited partnership, to be secured, inter alia,
by a square foot shopping center located in Plano, Texas, known as Parker
Central Plaza

Ladies and Gentlemen:

The undersigned (herein sometimes called "Lessee") hereby confirms, warrants and
represents to Guaranty Federal Bank, F.S.B., a federal savings bank, (herein called "Lender")
and covenants with Lender as follows:

February
1.   Lessee is the lessee under that certain lease (herein called the "Lease") dated
~~January~~ _9_, 1996, between Circuit City Stores, Inc., a Virginia corporation, as Lessor (said
Lessor and its successors and assigns occupying the position of landlord under the Lease
hereinafter called "Lessor") and the undersigned as Lessee covering the property (herein called
the "Leased Property") described therein located in Plano, Collin County, Texas.

2.   The Lease has not been changed, modified or amended.

3.   A true, correct and complete copy of the Lease is attached hereto as Exhibit A.

4.   Lessor has fulfilled all of its duties of an inducement nature and has complied
fully and completely with all of Lessor's covenants, warranties and other undertakings and
obligations under the Lease to this date, and is not in default in any manner in the performance
of any of the terms, covenants or provisions of the Lease to be performed by Lessor.

5.   The Lease is in full force and effect and Lessee is fully obligated to pay the rent
and other charges due thereunder on the date such payments become due, and is fully obligated
to perform, and is performing, all of the other obligations of Lessee under the Lease, without
right of counterclaim, credit or offset.

6.      There are no offsets, counterclaims and/or credits against rentals payable under the Lease and specifically Lessee has made no advancement for or on behalf of Lessor for which it has the right to deduct from or offset against future rentals as of the date hereof and has not paid rent, and will not pay rent, for more than the current month during which this representation is made.

7.      The term of the Lease has not commenced. The primary term of the Lease will expire on the last day of January following the twentieth (20th) anniversary of the Rent Commencement Date as set forth in the Lease. There are no rental concessions or inducements granted Lessee in connection with the Lease, except as expressly set forth in the Lease.

8.      Lessee is not in default in any manner in the payment of rent or any other sums payable by Lessee under the Lease or in the performance of any of the other terms, covenants and provisions of the Lease to be performed by Lessee. There exists no state of facts or event which with the passage of time or the giving of notice or both would constitute a "default" under the Lease on the part of Lessee.

9.      Lessee has no notice of an assignment, hypothecation or pledge of the Lease or the rents thereunder, except to Lender.

10.     Lessee understands and acknowledges the (i) Lessor intends to execute an Assignment of Leases and Rents in favor of Lender as a source of future payment for a loan (herein called the "Loan") to Lessor; and (ii) notwithstanding said Assignment of Loans and Rents, all rental and other payments due under the Lease shall continue to be paid in accordance with the terms of the Lease until and unless Lessee is notified to the contrary in writing by Lender, and (iii) Lender assumes no duty, liability or obligation under the Lease, either by virtue of said Assignment of Leases and Rents, the exercise of remedies thereunder, or any subsequent receipt or collection of rental or any other sums due under the Lease.

11.     Lessee shall comply with and be bound by all of the terms and provisions of the Lease. No cancellation or modification of the Lease or prepayment or reduction in rent under the Lease shall be effective without the prior written consent and approval of Lender.

12.     This letter shall inure to the benefit of Lender and its successors and assigns and shall be binding upon Lessee and its heirs, personal representatives, successors and assigns. This letter shall not be deemed to alter or modify any of the terms and conditions of the Lease, except to the extent specifically set forth herein.

DRR1D264 28740-6

The above statements are made upon the understanding that Lender will rely on them in connection with the making of the Loan.

Very truly yours,

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____

Name: Benjamin B. Cummings Jr.

Title: V. P.



DRR1D264 28740-6

CIRCUIT CITY STORES, INC.
a Virginia corporation
9950 Mayland Drive
Richmond, Virginia 23233

~~January~~ *February* 9 , 1996

Heller Financial, Inc.
500 West Monroe Street
Chicago, Illinois 60661
Attention: Mr. Lang Baumgarten, Vice-President

    Re:    Heller Financial, Inc. - $2,500,000.00 loan to Parker Central Plaza, Ltd., a
Texas limited partnership, to be secured, inter alia, by a shopping center to be
known as Parker Central Plaza located in Plano, Texas.

Ladies and Gentlemen:

    The undersigned (herein sometimes called "Lessee") hereby confirms, warrants and
represents to Heller Financial, Inc. (herein called "Lender"), and covenants with Lender as
follows:

    *February* 1.    Lessee is the lessee under that certain lease (herein called the "Lease") dated
~~January~~ 9 , 1996, between Circuit City Stores, Inc., a Virginia corporation, as Lessor (said
Lessor and its successors and assigns occupying the position of landlord under the Lease
hereinafter called "Lessor") and the undersigned as Lessee covering the property (herein called
the "Leased Property") described therein located in Plano, Collin County, Texas.

    2.    The Lease has not been changed, modified or amended.

    3.    A true, correct and complete copy of the Lease is attached hereto as Exhibit A.

    4.    Lessor has fulfilled all of its duties of an inducement nature and has complied
fully and completely with all of Lessor's covenants, warranties and other undertakings and
obligations under the Lease to this date, and is not in default in any manner in the performance
of any of the terms, covenants or provisions of the Lease to be performed by Lessor.

    5.    The Lease is in full force and effect and Lessee is fully obligated to pay the rent
and other charges due thereunder on the date such payments become due, and is fully obligated
to perform, and is performing, all of the other obligations of Lessee under the Lease, without
right of counterclaim, credit or offset.

DRR:D26F 28740-6

6.     There are no offsets, counterclaims and/or credits against rentals payable under the Lease and specifically Lessee has made no advancement for or on behalf of Lessor for which it has the right to deduct from or offset against future rentals as of the date hereof and has not paid rent, and will not pay rent, for more than the current month during which this representation is made.

7.     The term of the Lease has not commenced.  The primary term of the Lease will expire on the last day of January following the twentieth (20th) anniversary of the Rent Commencement Date as set forth in the Lease.  There are no rental concessions or inducements granted Lessee in connection with the Lease, except as expressly set forth in the Lease.

8.     Lessee is not in default in any manner in the payment of rent or any other sums payable by Lessee under the Lease or in the performance of any of the other terms, covenants and provisions of the Lease to be performed by Lessee.  There exists no state of facts or event which with the passage of time or the giving of notice or both would constitute a "default" under the Lease on the part of Lessee.

9.     Lessee has no notice of an assignment, hypothecation or pledge of the Lease or the rents thereunder, except to Lender.

10.     Lessee understands and acknowledges the (i) Lessor intends to execute an Assignment of Leases and Rents in favor of Lender as a source of future payment for a loan (herein called the "Loan") to Lessor; and (ii) notwithstanding said Assignment of Loans and Rents, all rental and other payments due under the Lease shall continue to be paid in accordance with the terms of the Lease until and unless Lessee is notified to the contrary in writing by Lender, and (iii) Lender assumes no duty, liability or obligation under the Lease, either by virtue of said Assignment of Leases and Rents, the exercise of remedies thereunder, or any subsequent receipt or collection of rental or any other sums due under the Lease.

11.     Lessee shall comply with and be bound by all of the terms and provisions of the Lease.  No cancellation or modification of the Lease or prepayment or reduction in rent under the Lease shall be effective without the prior written consent and approval of Lender.

12.     This letter shall inure to the benefit of Lender and its successors and assigns and shall be binding upon Lessee and its heirs, personal representatives, successors and assigns.  This letter shall not be deemed to alter or modify any of the terms and conditions of the Lease, except to the extent specifically set forth herein.

The above statements are made upon the understanding that Lender will rely on them in connection with the making of the Loan.

Very truly yours,

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____

Name: __Benjamin B. Cummings, Jr.__

Title: __V.P.__

