Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | : : : | Chapter 11 |
| CIRCUIT CITY STORES, INC., <u>et al</u>., | : : : | 1Case No. 08-35653 (KRH) |
| Debtors. | : : | Jointly Administered |

**STIPULATION AND ORDER BY AND BETWEEN
CIRCUIT CITY STORES, INC. AND PLUMCHOICE, INC.**

This Stipulation (this "<u>Agreement</u>"), dated as of March 10, 2009, is agreed and entered into by and between Circuit City Stores, Inc. ("<u>Circuit City</u>"), on behalf of itself and its affiliated Debtors (collectively, the "<u>Debtors</u>"), and PlumChoice, Inc. ("<u>PlumChoice</u>") to resolve (i) certain claims asserted by PlumChoice against the Debtors and (ii) the objections to such claims filed by the Debtors.

## RECITALS

### PlumChoice

WHEREAS, PlumChoice provides online computer support to businesses and individuals and, for businesses like Circuit City, PlumChoice offers its array of online training, trouble-shooting and technical support services to such businesses' individual and business customers;

### The Dispatch Agreement

WHEREAS, on or about May 31, 2006, PlumChoice and Circuit City entered into that certain Services Agreement (the "Dispatch Agreement"), pursuant to which PlumChoice agreed to perform telephonic dispatch support and scheduling services to Circuit City's home theater installation, home delivery and personal computer service business units;

### The Remote Services Agreement

WHEREAS, on or about February 15, 2007, Circuit City and PlumChoice entered into that certain Remote Services Agreement (as amended by that certain Amendment No. 1 to Remote Services Agreement dated as of August 13, 2007, the "Remote Services Agreement"), pursuant to which Circuit City engaged PlumChoice to provide online, remote diagnostic services to customers of Circuit City's firedog$^{SM}$ technical support service throughout the United States and its territories;

### The PTS Services Agreement.

WHEREAS, on or about May 1, 2008, Circuit City and Verizon Corporate Services Group, Inc. ("Verizon") entered into that certain General Services Agreement (the "Prime Contract"), pursuant to which Verizon engaged Circuit City to provide remote diagnostic and sales support personal computing services to Verizon's customers;

WHEREAS, in connection with the Prime Contract, Circuit City and PlumChoice entered into that certain Premium Technical Support Services Agreement dated as of May 29, 2008 (the

2

"PTS Services Agreement"), pursuant to which Circuit City engaged PlumChoice, as a subcontractor, to fulfill Circuit City's remote technical service obligations and sales support obligations to Verizon under the Prime Contract;

### PlumChoice Capital Stock Held By Circuit City

WHEREAS, Circuit City is the beneficial owner of 342,671 shares of the Series B Preferred Stock of PlumChoice, 26,455 shares of the Series A-2 Preferred Stock of PlumChoice and 207,680 shares of the Series B-1 Preferred Stock of PlumChoice (collectively, the "Capital Stock");

WHEREAS, PlumChoice and certain of its investors, including Circuit City, are party to that certain Right of First Refusal and Co-Sale Agreement dated as of August 13, 2007, pursuant to which Circuit City, among other things, unconditionally and irrevocably granted PlumChoice a right of first refusal to purchase all or any portion of the Capital Stock that Circuit City proposes to transfer to any third party at the same price and on the same terms and conditions as those offered to the proposed transferee;

### The Debtors' Bankruptcy Petition

WHEREAS, on November 10, 2008 (the "Petition Date"), Circuit City and the other Debtors each filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court");

WHEREAS, since the Petition Date, the Debtors have continued to operate their businesses and manage their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

### PlumChoice's Motion for Payment of Administrative Expenses

WHEREAS, on and after the Petition Date, PlumChoice provided, and the Debtors received and accepted, services under the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement;

WHEREAS, on December 31, 2008, Circuit City informed PlumChoice in writing that Circuit City was terminating immediately the Remote Services Agreement, the PTS Services Agreement and the Prime Contract;

WHEREAS, on or about January 28, 2009, PlumChoice filed its *Motion for Order Directing Debtors to Pay Administrative Expenses Pursuant to 11 U.S.C. Sections 503(b) and 507(a)* [Dkt. No. 1832] (the "Administrative Expense Motion"), whereby PlumChoice sought the entry of an order directing the Debtors to pay immediately, as administrative expenses pursuant to Sections 503(b) and 507(a) of the Bankruptcy Code: (1) $1,139,634.21 on account of post-petition services provided by PlumChoice to (or on behalf of) Circuit City under the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement (the "Services Claim"); (2) $808,104.00 on account of certain wind-down expenses due to PlumChoice upon the termination of the PTS Services Agreement (the "Wind-Down Claim"); (3) $1,878,766.24, due upon termination of the PTS Services Agreement, to reimburse PlumChoice for all non-personnel costs and expenses required to accommodate the fulfillment of services under the PTS Services Agreement (the "Infrastructure Claim"); and (4) $43,690.76 on account of costs incurred in connection with the Debtors' unilateral termination and resulting breach of the Dispatch Agreement (the "Dispatch Claim");

WHEREAS, on or about February 11, 2009, the Debtors' filed their *Preliminary Objection and Response to the Motion of PlumChoice, Inc. for Order Directing Debtors to Pay Administrative Expenses Pursuant to II U.S.C. Sections 503(b) and 507(a)* [Dkt. No. 2068] (the

4

"Debtor's Preliminary Objection"), pursuant to which the Debtors, among other things, requested that the Bankruptcy Court enter an order denying the relief sought in the Administrative Expense Motion;

WHEREAS, on or about February 24, 2009, PlumChoice filed its *Reply* to *Debtors' Preliminary Objection and Response to Motion of PlumChoice Inc. for Order Directing Debtors to Pay Administrative Expenses Pursuant to 11 U.S.C. Sections 503(b) and 507(a)* [Dkt. No. 2288], pursuant to which PlumChoice petitioned the Bankruptcy Court to overrule the Debtors' Preliminary Objection and grant the relief requested in the Administrative Expense Motion;

### PlumChoice's Motion for Relief from the Automatic Stay

WHEREAS, on or about January 13, 2009, PlumChoice filed its *Motion for Relief from the Automatic Stay Pursuant to Bankruptcy 11 U.S.C. Section 362(d)(1) to Permit Termination of Dispatch Agreement* [Dkt. No. 1498] (the "Motion for Relief"), pursuant to which PlumChoice, among other things, moved for the entry of an order granting PlumChoice relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to allow PlumChoice to terminate the Dispatch Agreement in accordance with the terms thereof and to otherwise discontinue the provision of services thereunder to the Debtors;

WHEREAS, on or about February 11, 2009, the Debtors' filed the *Debtors' (I) Response to the Motion of PlumChoice, Inc. for Relief from the Automatic Stay Pursuant to 11 U.S.C. Section 362(d)(1) to Permit Termination of Dispatch Agreement and Request for Related Relief Including Approval of Shortened Notice Period and (II) Cross Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rule 6006 Authorizing Nunc Pro Tunc Rejection of a Certain Executory Contract* [Dkt. No. 2069], pursuant to which the Debtors requested that the Bankruptcy Court enter an order (1) lifting the stay for the limited purpose of

5

allowing PlumChoice to terminate the Dispatch Agreement as of January 20, 2009, and (2) authorizing the Debtors to reject the Dispatch Agreement *nunc pro tunc* as of the same date;

### PlumChoice Proof of Claim

WHEREAS, on or about January 28, 2009, PlumChoice timely filed a proof of claim against Circuit City, pursuant to which PlumChoice asserts a general unsecured claim in the amount of $1,894,292.25, plus a contingent and unliquidated amount to be determined, on account of services provided and costs incurred by PlumChoice to (or on behalf of) Circuit City under the Remote Services Agreement, the Dispatch Agreement and the PTS Services Agreement prior to the Petition Date (the "Proof of Claim"); and

WHEREAS, the Debtors and PlumChoice have engaged in extensive arms-length, good faith negotiations, including but not limited to, extensive written and telephonic communications and exchanges of numerous documents and, taking into account the fair, cost-effective and assured method of resolving the Administrative Expense Motion, the Motion for Relief and the Debtors' objections thereto provided by this Agreement, have determined that it is in their respective best interests to settle such matters in accordance with the terms and conditions of this Agreement.

**NOW THEREFORE**, for and in consideration of the mutual agreements and covenants contained herein, and subject to the approval of the Bankruptcy Court, Circuit City, on behalf of itself and its affiliated Debtors, and PlumChoice hereby stipulate and agree as follows:

1. Incorporation of Recitals.  The recital paragraphs set forth above are incorporated herein by reference.

2. Allowance and Fixing of the Services Claim.  The Services Claim shall be reduced and allowed in favor of PlumChoice against the Debtors and paid as an administrative expense of the

6

Debtors' estates pursuant to Sections 503(b) and 507(a) of the Bankruptcy Code in the amount of $1,062,834.84 (the "Allowed Claim").

3. Payment of the Allowed Claim. The Debtors shall pay to PlumChoice an amount equal to the Allowed Claim in one (1) lump sum cash payment (the "Settlement Payment") within three (3) business days after of the "Effective Date" as hereinafter defined. For the purposes of this Agreement, the "Effective Date" shall be the first business day which is eleven calendar days after the Bankruptcy Court approves this Agreement with no appeal having been filed, or, if an appeal has been filed, the first business day after which the Bankruptcy Court's order approving this Agreement has been affirmed, and no further rights of appeal shall exist. Notwithstanding anything contained herein to the contrary, if an appeal is filed, the Debtors shall reserve the entire amount of the Allowed Claim. The Settlement Payment shall be made by wire transfer, pursuant to wire instructions to be provided to the Debtors by PlumChoice.

4. Waiver of All Administrative Expense Claims. Except for the Allowed Claim, PlumChoice shall waive and release all other claims for administrative expenses, included but not limited to, those asserted in the Administrative Expense Motion: the Wind-Down Claim, the Infrastructure Claim, the Dispatch Claim, and the Services Claim to the extent not allowed herein.

5. Return of Capital Stock. In exchange for the waiver set forth in Section 4, the Debtors shall deliver to PlumChoice or its designee, within (3) business days after the Effective Date, all of the shares of capital stock of PlumChoice held by the Debtors as of the date hereof, including, without limitation, the Capital Stock.

6. Survival of Claims. Except as provided in Section 4 above, PlumChoice shall retain its right to seek allowance of the prepetition general unsecured claims set forth in its Proof of Claim, excluding the Wind-Down Claim, the Infrastructure Claim, the Dispatch Claim, and the Services

7

Claim to the extent not allowed herein; provided, however, that the Debtors shall reserve any and all rights, defenses and objections with respect to such Proof of Claim. The Debtors also expressly reserve all rights, claims, and remedies the Debtors' estates may have against PlumChoice under chapter 5 of the Bankruptcy Code, including but not limited to, any preference claims under section 547 of the Bankruptcy Code.

7. Termination of Agreements. The Remote Services Agreement and the PTS Services shall be deemed terminated as of December 31, 2008, and the Dispatch Agreement shall be deemed terminated as of January 20, 2009.

8. Governing Law; Retention of Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without giving effect to its conflict of law provisions or choice of law rules. The Bankruptcy Court shall retain sole and exclusive jurisdiction to hear and determine any matter or dispute arising from this Agreement.

9. No Admission. This Agreement does not constitute an express or implied admission as to liability on any issue of fact or law.

10. No Reliance. The Debtors and PlumChoice each represent that they each have reviewed this Agreement, have consulted with legal counsel of their choosing regarding its contents and fully understand its contents, and that they each are executing this Agreement of their own will and accord and for the purposes and consideration herein expressed.

11. Copies. This Agreement may be executed in multiple copies, each of which constitutes an original. All such copies shall constitute one agreement.

12. Severability. If any term or terms of this Agreement is held to be inoperative, invalid or void, the remainder shall be effective as if such term had not been contained herein.

13. <u>Integration and Modification.</u>  This Agreement represents the full agreement of the parties hereto.  No oral agreements are recognized or accepted.  No modifications shall be made except in writing and executed by all the parties hereto.

14. <u>Headings.</u>  The headings contained herein are for ease of reference and in no way control or impact on the interpretation of this document.

15. <u>Authority.</u>  PlumChoice represents and warrants that it has the full authority to execute this Agreement.  The Debtors represent and warrant that, subject to approval by the Bankruptcy Court of this Agreement and the entry of an order by the Bankruptcy Court authorizing the Debtors to enter into and perform under this Agreement, the Debtors have full authority to execute this Agreement.

16. <u>Binding Effect.</u>  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, including as to Circuit City and its affiliated Debtors and any trustee appointed under Chapter 11 or Chapter 7 of the Bankruptcy Code.

17. <u>Amendments and Waivers.</u>  The terms of this Agreement may be amended only with the written consent of all of the parties hereto and approval of the Bankruptcy Court.

18. <u>Survival.</u>  The terms and conditions of this Agreement shall survive the entry of any order confirming any Chapter 11 plan of reorganization, the appointment of a trustee or any conversion of the Debtors' bankruptcy cases from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code.

19. <u>Bankruptcy Court Approval.</u>  This Agreement is subject to approval by the Bankruptcy Court.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the Circuit City, on behalf of itself and its affiliated debtors, and PlumChoice have executed this Agreement as of the date first written above.

                                                CIRCUIT CITY STORES, INC.

Date: March 10, 2009                By: /s/ Michelle Mosier              .
                                                Name:  Michelle Mosier
                                                Title:   VP, Controller

                                                PLUMCHOICE, INC.

Date: March 10, 2009                By: /s/ Daniel Baker                .
                                                Daniel Baker
                                                Chief Financial Officer

**ORDER**

Upon consideration of the foregoing, it is hereby:

ORDERED, that the Stipulation is hereby approved in its entirety; and it is further

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Stipulation and Order.

Dated: Richmond, Virginia
_____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and
Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing order has been endorsed by or served upon all necessary parties.

                                        /s/ Douglas M. Foley
                                        Douglas M. Foley