Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                        RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
              Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND
BANKRUPTCY RULES 2002 AND 6004 APPROVING SALE BY SELLER
OF CERTAIN REAL PROPERTY LOCATED IN PHOENIX, ARIZONA
FREE AND CLEAR OF LIENS**

Upon the motion (the "Motion")[1] of Circuit City

Stores West Coast, Inc. (the "Seller," and collectively

with the debtors and debtors in possession in the above-

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

captioned jointly administered cases, the "Debtors") for

orders pursuant to Bankruptcy Code sections 105 and 363

and Bankruptcy Rules 2002 and 6004 (i) approving bidding

procedures (the "Bidding Procedures"), (ii) setting a

date for the Auction (as defined herein) and the sale

hearing (the "Sale Hearing") and (iii) authorizing and

approving the sale (the "Sale") of certain real property

of the Seller located at 1670 and 1671 East Camelback

Road, Phoenix, Arizona,(the "Property") free and clear

of liens pursuant to the Purchase And Sale Agreement

dated February 3, 2009 by and among the Seller and

Heslin Holdings, Inc. ("Heslin") or a Successful Bidder

(as defined in the Bidding Procedures"); and the Court

having entered its Order (I) Approving Bidding

Procedures And (II) Setting Auction And Sale Hearing

Dates In Connection With The Sale Of Certain Real

Property Located In Phoenix, Arizona on March 3, 2009

(the "Bidding Procedures Order") (Docket No.2401; and

the Sale Hearing having been held on March 20, 2009, at

which time all interested parties were offered an

opportunity to be heard with respect to the Motion, and

at which counsel for the Debtors advised the Court that

the Debtors, after consultation with representatives of

the DIP Agent and the Official Committee of Unsecured

Creditors (the "Committee"), have determined in the

exercise of their business judgment that BRG PROPERTIES,

LLC (the "Successful Bidder") submitted the highest and

best offer for the Property in the amount of $4,105,000

(the "Winning Bid") and that FRESH & EASY NEIGHBORHOOD

MARKET INC. (the "Alternate Bidder") submitted the

second highest and best bid for the Property in the

amount of $4,101,000 (the "Alternate Bid"); and the

Court having reviewed the Motion; and the Court having

determined that the relief requested in the Motion, as

modified by this Sale Approval Order, is in the best

interests of the Seller, its estate, its creditors and

other parties in interest; and it appearing that proper

and adequate notice of the Motion has been given and

that no other or further notice is necessary; and upon

the record herein; and after due deliberation thereon;

and good and sufficient cause appearing therefor, it is

hereby

**FOUND AND DETERMINED THAT:**[2]

A.   The Court has jurisdiction over the
Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this
matter is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2)(A).

B.   Venue of these cases and the Motion in
this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.   As evidenced by the affidavits of service
previously filed with the Court, and based on the
representations of counsel at the Sale Hearing, (i)
proper, timely, adequate, and sufficient notice of the
Motion, the Sale Hearing, the Sale, the Bid Deadline,
and the Auction as approved herein has been provided in
accordance with Bankruptcy Code sections 102(l) and 363
and Bankruptcy Rules 2002 and 6004, (ii) such notice was
good, sufficient, and appropriate under the
circumstances and (iii) no other or further notice of
the Motion, the Sale Hearing, the Sale, the Bid Deadline
and the Auction is necessary or shall be required.

---

2 Findings of fact shall be construed as conclusions of law and
  conclusions of law shall be construed as findings of fact when
  appropriate.  See Fed. R. Bankr. P. 7052.

D.    As demonstrated by (i) the testimony and
other evidence proffered or adduced at the Sale Hearing
and (ii) the representations of counsel made on the
record at the Sale Hearing, the Seller has marketed the
Property and conducted the sale process in compliance
with the Bidding Procedures Order.

E.    The Seller has full power and authority
to execute the agreement submitted by the Successful
Bidder, a copy of which is annexed hereto as Exhibit 1
(the "Successful Bidder's Agreement") and all other
applicable documents contemplated thereby.  The transfer
and conveyance of the Property by the Seller have been
duly and validly authorized by all necessary action of
the Seller. The Seller has all of the power and
authority necessary to consummate the transactions
contemplated by the Successful Bidder's Agreement and
has taken all action necessary to authorize and approve
the Successful Bidder's Agreement and to consummate the
transactions contemplated thereby.  No consents or
approvals, other than those expressly provided for in
the Successful Bidder's Agreement, are required for the
Seller to consummate such transactions.

F.   The Seller has demonstrated good,
sufficient, and sound business purpose and justification
for the Sale because, among other things, the Seller and
its advisors diligently and in good faith analyzed all
other available options in connection with the
disposition of the Property and determined that (a) the
terms and conditions set forth in the Successful
Bidder's Agreement, (b) the transfer to the Successful
Bidder of the Property pursuant thereto and (c) the
purchase price agreed to by the Successful Bidder,
$4,105,000, are all fair and reasonable and together
constitute the highest or otherwise best value
obtainable for the Property.

G.   A reasonable opportunity to object or be
heard with respect to the Motion and the relief
requested therein has been afforded to all interested
persons and entities, including without limitation: (a)
those parties entitled to notice under the Order
Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (D.I. 130;

the "Case Management Order"), (b) all entities known to

have expressed an interest in a transaction regarding

the Property during the past three (3) months; (c) all

entities known to have an interest in any of the

Property; and (d) all federal, state, and local

regulatory or taxing authorities or recording offices

that have a reasonably known interest in the relief

requested through the Motion.

H.   The Successful Bidder is not an "insider"

of any of the Debtors as that term is defined in 11

U.S.C. § 101(31).

I.   This Sale Approval Order and the

consummation of the contemplated transactions are

supported by good business reasons, and will serve the

best interests of the Seller, its estate and creditors

by maximizing the value to be obtained from the Property.

J.   The Successful Bidder's Agreement was

negotiated, proposed, and entered into by the Seller and

the Successful Bidder without collusion, in good faith,

and from arm's-length bargaining positions.  Neither the

Seller nor the Successful Bidder has engaged in any

conduct that would cause or permit the Sale to be

avoidable under Bankruptcy Code section 363(n).

K.    The Successful Bidder is a good faith

purchaser under Bankruptcy Code section 363(m) and, as

such, is entitled to all of the protections afforded

thereby.  The Successful Bidder will be acting in good

faith within the meaning of Bankruptcy Code section

363(m) in closing the transactions contemplated by the

Successful Bidder's Agreement at all times after the

entry of this Sale Approval Order.

L.    The consideration provided by the

Successful Bidder for the Property pursuant to the

Successful Bidder's Agreement and the Winning Bid (i) is

fair and reasonable, (ii) is the highest or otherwise

best offer for the Property, (iii) will provide a

greater recovery for the Seller's stakeholders than

would be provided by any other practical available

alternative and (iv) constitutes reasonably equivalent

value and fair consideration under the Bankruptcy Code

and under the laws of the United States, any state,

territory, or possession thereof, or the District of

Columbia.

M.   The Sale must be approved and consummated promptly to obtain the value provided under the terms of the Successful Bidder's Agreement and the Winning Bid.

N.   The transfer of the Property to the Successful Bidder is a legal, valid, and effective transfer of the Property, and shall vest the Successful Bidder with all right, title, and interest of the Seller to the Property free and clear of any lien (including tax liens and any statutory or common law liens, possessory or otherwise), charge, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) and any monetary amounts which are secured by any lien (collectively, the "Liens"), except for those items defined in the Successful Bidder's  Agreement(and which are referred to hereinafter) as the "Permitted Encumbrances".

O.   If the Sale of the Property by the Seller were not free and clear of any Liens, except for the

Permitted Encumbrances, as set forth in the Successful

Bidder's Agreement and this Sale Approval Order, or if

the Successful Bidder would, or in the future could, be

liable for any of the Liens, the Successful Bidder would

not have entered into the Successful Bidder's Agreement

or submitted a bid for the Property and would not

consummate the Sale contemplated by the Successful

Bidder's Agreement, thus adversely affecting the Seller,

its estate, and its stakeholders.

   P. The Seller may sell its interest in the

Property free and clear of all Liens (except the

Permitted Encumbrances) because, in each case, one or

more of the standards set forth in Bankruptcy Code

sections 363(f)(1)-(5) has been satisfied.  All holders

of Liens who did not object or withdrew their objections

to the Sale are deemed to have consented to the Sale

pursuant to 11 U.S.C. § 363(f)(2) and all holders of

Liens are adequately protected by having their Liens, if

any, attach to the cash proceeds of the Sale ultimately

attributable to the property against or in which they

claim an interest with the same priority, validity,

force, and effect as they attached to such property
immediately before the closing of the Sale.

Q.    Approval of the Successful Bidder's
Agreement and consummation of the Sale of the Property
at this time are in the best interests of the Seller,
its estate, its stakeholders and other parties in
interest; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion, as modified by the terms of
this Sale Approval Order, is GRANTED.  Any and all
objections to the Motion not waived, withdrawn, settled,
adjourned or otherwise resolved herein are hereby
overruled and denied with prejudice.

**A.    Approval Of The Successful Bidder's Agreement.**

2.    Pursuant to Bankruptcy Code section
363(b), the Successful Bidder's Agreement and all of the
terms and conditions thereof are hereby approved.

3.    Pursuant to Bankruptcy Code section
363(b), the Seller is authorized and directed, to
perform its obligations under the Successful Bidder's
Agreement and comply with the terms thereof and
consummate the Sale in accordance with and subject to

the terms and conditions of the Successful Bidder's

Agreement.

4.    The Seller is authorized, but not

directed, to execute and deliver, and empowered to

perform under, consummate, and implement, the Successful

Bidder's Agreement, together with all additional

instruments and documents as may be reasonably necessary

or desirable to implement the Successful Bidder's

Agreement, and to take all further actions as may be

requested by the Successful Bidder for the purpose of

assigning, transferring, granting, conveying, and

conferring to the Successful Bidder or reducing to

possession the Property as contemplated by the

Successful Bidder's Agreement.

5.    This Sale Approval Order and the

Successful Bidder's Agreement and the Winning Bid shall

be binding in all respects upon the Seller, all

stakeholders (whether known or unknown) of the Seller,

all affiliates and subsidiaries of the Seller, and any

subsequent trustees appointed in the Seller's chapter 11

case or upon a conversion to chapter 7 under the

Bankruptcy Code.  To the extent that any provision of

this Sale Approval Order is inconsistent with the terms
of the Successful Bidder's Agreement, this Sale Approval
Order shall govern.

6.   The Successful Bidder's Agreement and any
related agreements, documents, or other instruments may
be modified, amended, or supplemented by the parties
thereto, in a writing signed by such parties, and in
accordance with the terms thereof, without further order
of the Court; <u>provided</u> that any such modification,
amendment, or supplement is disclosed to the Creditors'
Committee and does not have a material adverse effect on
the Seller's estate, in the good faith business judgment
of the Seller.

**B.   Sale And Transfer Of The Property.**

7.   Pursuant to Bankruptcy Code sections
363(b) and 363(f), upon the consummation of the
Successful Bidder's Agreement, the Seller's right, title,
and interest in the Property shall be transferred to the
Successful Bidder free and clear of all Liens except the
Permitted Encumbrances, with all such Liens to attach to
the cash proceeds of the Sale in the order of their
priority, with the same validity, force, and effect

which they had as against the Property immediately
before such transfer, subject to any claims and defenses
the Seller may possess with respect thereto.

8.   If any person or entity which has filed
financing statements, mortgages, mechanic's liens, <u>lis</u>
<u>pendens</u>, or other documents or agreements evidencing
Liens on or against the Property shall not have
delivered to the Seller prior to the Closing of the Sale,
in proper form for filing and executed by the
appropriate parties, termination statements, instruments
of satisfaction, releases of all Liens that the person
or entity has with respect to the Property, or otherwise,
then (a) the Seller is hereby authorized to execute and
file such statements, instruments, releases, and other
documents on behalf of the person or entity with respect
to the Property and (b) the Successful Bidder is hereby
authorized to file, register, or otherwise record a
certified copy of this Sale Approval Order, which, once
filed, registered, or otherwise recorded, shall
constitute conclusive evidence of the release of all
Liens on or against the Property of any kind or nature
whatsoever except for the Permitted Encumbrances.

9.    This Sale Approval Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Liens of any kind or nature whatsoever existing as to the Seller or the Property prior to the Closing of the Sale, except for the Permitted Encumbrances, have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

10.  All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders, and other stakeholders, holding Liens of any kind or nature whatsoever against or in the Seller or the Property, except the Permitted Encumbrances (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to the Property prior to the Closing of the Sale, or the transfer of the Property to the Successful Bidder, hereby are forever barred, estopped, and permanently enjoined from asserting against the Successful Bidder, its successors or assigns, its property, or the Property, such persons' or entities' Liens.  Nothing in this Sale Approval Order or the Successful Bidder's Agreement releases or nullifies any liability to a governmental agency under any environmental laws and regulations that any entity would be subject to as owner or operator of any Property after the date of entry of this Sale Approval Order.  Nothing

in this Sale Approval Order or the Successful Bidder's
Agreement bars, estops, or enjoins any governmental
agency from asserting or enforcing, outside the Court,
any liability described in the preceding sentence.
Notwithstanding the above, nothing herein shall be
construed to permit a governmental agency to obtain
penalties from the Successful Bidder for days of
violation of environmental laws and regulations prior to
Closing.

**C.    Additional Provisions**

11.   The consideration provided by the
Successful Bidder's for the Property under the
Successful Bidder's Agreement and the Winning Bid is
hereby deemed to constitute reasonably equivalent value
and fair consideration under the Bankruptcy Code, the
Uniform Fraudulent Conveyance Act, the Uniform
Fraudulent Transfer Act, and under the laws of the
United States, and any state, territory, or possession
thereof, or the District of Columbia.

12.   Upon the Closing of the Sale, this Sale
Approval Order shall be construed as and shall
constitute for any and all purposes a full and complete

general assignment, conveyance, and transfer of all the
Property or a bill of sale transferring good and
marketable title in the Property to the Successful
Bidder pursuant to the terms of the Successful Bidder's
Agreement.

13.  The transactions contemplated by the
Successful Bidder's Agreement are undertaken by the
Seller and the Successful Bidder at arm's-length,
without collusion and in good faith, as that term is
used in section 363(m) of the Bankruptcy Code, and
accordingly, the reversal or modification on appeal of
the authorization provided herein to consummate the sale
of the Property shall not affect the validity of the
Sale to the Successful Bidder, unless such authorization
is duly stayed pending such appeal.  The Successful
Bidder is a purchaser in good faith, within the meaning
of section 363(m) of the Bankruptcy Code, of the
Property, and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

14.  The consideration provided by the
Successful Bidder for the Property under the Successful

Bidder's Agreement and the Winning Bid is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

15.   The failure specifically to include or to reference any particular provision of the Successful Bidder's Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Successful Bidder's Agreement and the Winning Bid be authorized and approved in their entirety.

16.   If the Successful Bidder fails to close on the purchase of the Property in accordance with the terms of the Successful Bidder's Agreement due to no fault of and Seller is not in default of its obligations under such Agreement, then Seller's counsel shall file with the Court and serve upon the Successful Bidder, the Alternate Bidder and their counsel, and counsel for the DIP Agent and for the Committee, a notice of such default, which shall include a copy of the Alternate Bidder's agreement upon which the Seller will then close, in which case (i) Seller shall be deemed authorized to close on the sale of the Property with the Alternate

Bidder on ten (10) days' advance written notice to the

Alternate Bidder, and (ii) the Alternate Bidder shall be

afforded all of the protections originally afforded to

the Successful Bidder under this Sale Approval Order and

the findings herein as to adequacy and fairness of

consideration paid and good faith shall be deemed to

apply to the Alternate Bidder, its Alternate Bid, and

its purchase and sale agreement with the Seller, without

the necessity of further order of this Court.

17.   All deposits submitted to the Seller for

the Property shall be returned to the bidder that

submitted it no later than the sooner of (i) two

business days after the closing of the sale with the

Successful Bidder (or the Alternate Bidder, as the case

may be) or (ii) June 30, 2009, except in the case of a

bidder who closed on the sale of the Property or who was

required to close in accordance with the terms of this

Sale Approval Order but failed to do so in breach of its

contractual obligations through no fault of the Seller.

18.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

19.   This Court retains exclusive jurisdiction
to interpret, construe, enforce, and implement the terms
and provisions of this Sale Approval Order, the
Successful Bidder's Agreement, all amendments thereto,
any waivers and consents thereunder, and of each of the
agreements executed in connection therewith in all
respects, including, but not limited to, retaining
jurisdiction to (a) compel delivery of the Property to
the Successful Bidder, (b) compel delivery of the
purchase price or performance of other obligations owed
to the Seller pursuant to the Successful Bidder's
Agreement, (c) resolve any disputes arising under or
related to the Successful Bidder's Agreement, the
Alternate Bid, and any deposit delivered to Seller by a
bidder for the Property, (d) interpret, implement, and
enforce the provisions of this Sale Approval Order, and
(e) protect the Successful Bidder against any Lien
against the Seller or the Property of any kind or nature
whatsoever, except for Permitted Encumbrances, which
Liens, valid and timely perfected, shall attach to the
proceeds of the Sale.

Dated:  Richmond, Virginia
        March __, 2009


                    _____
                    UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession
 **CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                    /s/ Douglas M. Foley
                    _____

**Exhibit 1**

**(Successful Bidder's Agreement)**

572475-Wilmington Server 1A - MSW

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of March 20, 2009, is made by and between CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("Seller"), and BRG PROPERTIES, LLC, a Delaware limited liability company ("Purchaser").

## RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court and this Agreement is submitted in connection with Seller's pending motion for certain orders in connection with Seller's intent to sell the Property (defined below). As contemplated by Section 9.2 of this Agreement, Seller will seek approval by the Bankruptcy Court of this Agreement at the hearing on Seller's currently filed motion scheduled for March 20, 2009.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    Purchase and Sale. Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to the property located at 1670 East Camelback Road, Phoenix, Arizona, comprising approximately 3.5 acres, referenced as APN# 164570811 and APN# 948626130, and being more particularly described on Exhibit A attached hereto and made a part hereof, together with (i) all the rights and appurtenances pertaining to such land, (ii) all buildings (including a building containing approximately 33,348 square feet), structures, and other improvements on said land, and (iii) electrical, mechanical, air conditioning and other fixtures attached thereto (herein collectively called the "Property"); provided, however, the Property shall not include any lifts or racking located in the buildings, if any (the "Excluded FF&E"), which shall be excluded from the sale. Seller shall remove the Excluded FF&E prior to Closing, failing which such Excluded FF&E shall be deemed abandoned and become the property of Purchaser.

2.    PURCHASE PRICE

2.1    Purchase Price. The purchase price (the "Purchase Price") for the Property shall be FOUR MILLION ONE HUNDRED FIVE THOUSAND AND 00/100 DOLLARS ($4,105,000.00). The Purchase Price, less the Deposit, shall be paid into the Escrow Agent's escrow account in cash by Purchaser by wire transfer in accordance with wire transfer

1

instructions to be provided by the Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

3.      DEPOSIT

        3.1      Deposit. Contemporaneous with the submission to Seller of this Agreement signed by Purchaser, Purchaser submits the sum of THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00) by wire transfer for the account of Seller pursuant to the instructions from the Broker designated below, which Seller shall deliver to Fidelity Title (the "Escrow Agent"), 1301 Dove Street, Suite 310, Newport Beach, CA 92660, Attention: Natalie Priestly, Phone: (949) 622-4911, Fax: (949) 477-6835, Email: Natalie.priestlyafnf.com, (which amount, together with all interest accrued thereon, is herein called the "Deposit. The Deposit shall be held in an interest-bearing savings account in a federally insured financial institution in the Los Angeles, California metropolitan area, or in such other interest-bearing account or investment as the parties hereto shall direct.

        3.2      Application of Deposit. If the sale of the Property is consummated under this Agreement, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price. If Purchaser terminates this Agreement in accordance with Section 7.1, Section 7.2, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, or if Seller has closed on the sale of fee title to the Property to a party other than Purchaser, the Deposit shall be returned promptly to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations"). If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, the Deposit shall be retained by Seller and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time the notice to terminate this Agreement is given. The obligations to deliver the Reports shall survive the termination of this Agreement. In no event shall any Deposit be returned to Purchaser hereunder until all Reports have been delivered to Seller. All interest earned on the Deposit shall be reported to the Internal Revenue Service as income of Purchaser and Purchaser shall promptly execute all forms reasonably requested by the Escrow Agent regarding such interest.

4.      ITEMS DELIVERED TO PURCHASER

        4.1      Items Delivered. Seller has delivered or will deliver to Purchaser, within five (5) days following opening of escrow with the Escrow Agent, all information with respect to the Property and the shopping center of which the Property forms a part, which may include, without limitation, title reports, environmental and engineering reports and real property surveys, but only to the extent Seller has reasonable access to and possession of such information.

        4.2      Title. Escrow Agent provided Purchaser with a copy of that certain Title Commitment Escrow Agent prepared for Heslin Holdings, Inc. This Agreement is not to be conditioned on the outcome of unperformed due diligence by Purchaser, including without limitation a title examination of the Property.  Purchaser hereby waives irrevocably any and all title objections and shall be obligated to close the transaction in accordance with the terms of this

Agreement.

      4.3     <u>Property Inspection.</u> Purchaser approves the condition of the Property.

      4.4     <u>Reports.</u> All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property in the course of Purchaser's investigation of the Property , whether before or after the date of this Agreement (collectively, the <u>"Reports"),</u> shall be <u>treated</u> as <u>confidential information</u> and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, real estate broker, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein. Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of any due diligence investigation, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.4 shall survive the Closing or the termination of this Agreement, as applicable.

      4.5     <u>Purchaser's Representations and Warranties.</u> Purchaser represents and warrants to Seller that (a) Purchaser is a limited liability company, duly organized and in good standing under the State of Delaware, and is now or as of the Closing will be authorized to do business in the State of Arizona, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms. Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

      4.6     <u>Seller's Representations and Warranties.</u> Seller represents and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the State of California; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined hereinafter) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; (d) at the Closing, Seller shall convey to Purchaser fee simple title to

the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances (defined at Paragraph 6.2 below); and (e) to the best knowledge of Seller, Seller has not previously sold, leased, transferred or conveyed the Property, and Seller has not entered into any executory contract for the sale, lease, transfer of or conveyance of the Property (other than this Agreement) and there is no right of first refusal, or option to purchase, lease, transfer or convey the Property. The representations and warranties contained in this Section 4.6 shall survive the Closing for a period of six (6) months.

      4.7   <u>Further Assurances.</u> Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.    DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

      5.1   <u>Disclaimer.</u> PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL OR LIMITED WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (1) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY

TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY. PROTECT, DEFEND. SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S CONDUCT. THE PROVISIONS OF THIS SECTION 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §260I et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements (as hereinafter defined) or the common law, or any other applicable laws relating to the Property. Hazardous Materials

5

shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3     Environmental Requirements."Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4     Purchaser's Independent Investigations. For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has conducted its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

6.     CLOSING

6.1     Closing. Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "Closing") shall be conducted by mail or, if necessary, held at the offices of Escrow Agent not later than (i) March 31, 2009, or (ii) ten (10) days following entry by the Bankruptcy Court of the Sale Order, whichever is last to occur (the date on which the Closing occurs is referred to as the "Closing Date").

6.2     Possession. Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, conditions, easements, restrictions and rights, whether of record or otherwise, ,and (iv) any and all matters that would be shown by a physical inspection of the Property (collectively, the "Permitted Encumbrances"). Prior to the Closing, Seller shall remove the Excluded FF&E from the Property and shall repair any material damage to the Property caused by the removal of the Excluded FF&E, and any Excluded FF&E remaining in the Property after the Closing shall become the property of Purchaser.

6.3     Proration. All utilities with respect to the Property for the month in which the Closing occurs, and real estate taxes and other assessments with respect to the Property for the year in which the Closing occurs, shall be prorated as of the Closing Date as follows:

(a)     All real estate taxes and assessments, both general and special, water charges and sewer rents, whether or not then due or payable, and all other normally proratable

6

items shall be prorated to the Closing Date, based upon the latest assessments or actual invoices available. Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment. Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

(b)     Purchaser shall cause all utility meters to be read as of the Closing Date, shall cause the transfer of all utility services for the Property to Purchaser's name as of the Closing Date, and where necessary, shall post deposits with the utility companies; provided, however, Seller shall cooperate reasonably with Purchaser in connection with switching utility services over to Purchaser's name. Seller shall be entitled to a credit of whatever deposits Seller may have with any utility companies if Purchaser receives the benefit of such deposits. If the Closing shall occur before the actual amount of utilities and all other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the apportionment of such utilities and other operating expenses shall be upon the basis of an estimate by Seller of such utilities and other operating expenses for such month. Subsequent to the Closing, when the actual amount of such utilities and other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the parties agree to adjust the proration of such utilities and other operating expenses and, if necessary, to refund or repay such sums as shall be necessary to effect such adjustment.

(c)     Seller and Purchaser shall use reasonable efforts to cause all sums due under that certain Reciprocal Easement and Operation Agreement dated December 20, 2002 and recorded on December 26, 2002 as document number 2002-1400110 in the Recorder's Office of Maricopa County, Arizona ("REOA" hereafter) to be prorated as of the Closing based upon information available to Seller and Purchaser at the Closing.   Where Seller has paid any portion of the operating costs on an estimated basis subject to annual reconciliation, Seller and Buyer shall agree upon a proration of the operating costs prior to the Closing such that Seller shall have paid those operating costs accruing before the Closing and Purchaser shall have paid those operating costs accruing on and after the Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4     Closing Costs. Purchaser shall pay, on the Closing Date, any and all closing expenses and costs, including, without limitation, title insurance premiums, survey costs, environmental and engineering costs, recordation fees, stamp tax and mortgage taxes and any and all other due diligence costs. Except as otherwise provided herein, each party shall pay its own attorneys' fees. The parties shall share equally in any escrow fees; and, with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in Phoenix, Arizona.

6.5     Seller's Obligations at the Closing. At the Closing, Seller shall deliver to Escrow Agent the following:

(a)     Deed. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances.

(b)     Foreign Person. An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

(c)     Court Order. A certified, genuine copy of an order of the Bankruptcy Court in a format and substance in substantially the same form as attached hereto as Exhibit C hereto authorizing the sale of the Property by Seller to Purchaser pursuant to and under this Agreement.

6.6     Purchaser's Obligations at the Closing. At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)     Purchase Price. The Purchase Price (less the amount of the Deposit, which shall be released separately by the Escrow Agent to Seller) by wire transfer of immediately available funds.

(b)     Evidence of Authority. Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(c)     Taxpayer I.D. Certificate. A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

6.7     Commission. Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty and its agent Jim Avallone (collectively "Broker"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement between Seller and Broker. Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

6.8     Exclusive Possession, Keys and Files. On or before the Closing Date, the Seller shall deliver to the Buyer exclusive possession of the Property and possession of the keys in Seller's possession to all entrance doors to the improvements on the Property. Seller shall use its best efforts to properly tag the keys for identification. Additionally, on or before the Closing Date, Seller shall use reasonable efforts to release and deliver to Purchaser all files and documents (including when available, originals) in the possession or control of Seller relating to the Property, the shopping center in which it is located, the REOA or the Permitted Encumbrances. The provisions of this Section 6.8 shall survive the Closing.

7.      RISK OF LOSS; EXISTING INSURANCE PROCEEDS

8

7.1     <u>Condemnation.</u> If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a return of Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.   Purchaser will have seven (7) days after receipt of Seller's written notice of the triggering event to make its election under this Section 7.1.

7.2     <u>Casualty.</u> Seller assumes all risks and liability for damage to or injury occurring to the Property by fire, storm, accident, or any other casualty or cause until the Closing has been consummated. If the Property, or any part thereof, suffers any damage in excess of Two Hundred Thousand and No/100 Dollars ($200,000.00) after the date of this Agreement and prior to the Closing from fire or other casualty, which Seller, at its sole option, does not repair, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a refund of the Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event all of Seller's right title and interest in and to the proceeds of any insurance covering such damage (less an amount equal to any expenses and costs incurred by Seller to repair or restore the Property or to be paid on account of the loss of rents or other income from the Property for the period prior to and including the Closing Date, all of which shall be payable to Seller), to the extent the amount of such insurance does not exceed the Purchase Price, plus Seller's deductible under its insurance policy, shall be assigned to Purchaser at the Closing. If the Property, or any part thereof, suffers any damage less than Two Hundred Thousand and No/100 Dollars ($200,000.00) after the date of this Agreement and prior to the Closing, Purchaser agrees that it will consummate the Closing and accept the assignment of the proceeds of any insurance covering such damage, plus Seller's deductible under its insurance policy, and there shall be no further reduction in the Purchase Price. Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.   Purchaser will have seven (7) days after receipt of Seller's written notice of the triggering event to make its election under this Section 7.1.

8.      DEFAULT

8.1     <u>Breach by Seller.</u> In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may terminate this Agreement and receive a refund of the Deposit. In no event shall Purchaser be entitled to any remedy other than the return of its Deposit and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages. In no event shall Purchaser be entitled to the remedy of specific performance.

8.2     <u>Breach by Purchaser.</u> If Purchaser fails to comply with this Agreement for any

9

reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole remedy and relief hereunder and shall not be entitled to the remedy of specific performance. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.    BANKRUPTCY ISSUES

    9.1    Generally.Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

    9.2    Sale Order. The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") in the form that has been agreed upon by Seller and Purchaser.

    9.3    Entry of Sale Order. The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above. Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

    9.4    Termination. Purchaser acknowledges that the Seller intends to solicit other offers for the Property, including entertaining other offers from competing bidders. To the extent Purchaser is an Alternate Bidder (as defined in the first paragraph of the proposed order attached to this Agreement as Exhibit C), Purchaser shall have the right to terminate this Agreement if the closing on the sale of the Property has not occurred on or prior to June 30, 2009 (the "Outside Date"). If this Agreement is terminated by Seller as provided in this Section 9.4, or because the Bankruptcy Court will not enter the Sale Order prior to the Outside Date, Escrow Agent shall disburse the Deposit to Purchaser.

10.    MISCELLANEOUS

    10.1    Notices. All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below. For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

|                   |                                               |
|-------------------|-----------------------------------------------|
| If to Purchaser   | BRG Properties, LLC                           |
|                   | 433 N. Camden Dr., Suite 1070                 |
|                   | Beverly Hills, CA 90210                       |
|                   | Attention: Sam Rosenwald                      |
|                   |                                               |
| with a copy to    | Paul D. Rubin, Esq.                           |
|                   | Herrick, Feinstein LLP                        |
|                   | 2 Park Avenue                                 |
|                   | New York, NY 10016                            |
|                   |                                               |
| with a copy to    | Paul R. Torre, Esq.                           |
|                   | Law Offices of Paul R. Torre                  |
|                   | 15915 Ventura Blvd., Penthouse 2              |
|                   | Encino, CA 91436                              |
|                   |                                               |
| If to Seller      | CIRCUIT CITY STORES WEST COAST, INC.          |
|                   | 9950 Mayland Drive                            |
|                   | Richmond, Virginia 23233                      |
|                   | Attention: Vice President of Real Estate      |
|                   |                                               |
| with a copy to    | CIRCUIT CITY STORES WEST COAST, INC.          |
|                   | 9950 Mayland Drive                            |
|                   | Richmond, Virginia 23233                      |
|                   | Attention: General Counsel                    |
|                   |                                               |
| with a copy to    | KENNERLY, LAMISHAW & ROSSI, LLP               |
|                   | 707 Wilshire Blvd., Suite 1400                |
|                   | Los Angeles, CA 90017                         |
|                   | Attention: Matthew I. Lamishaw, Esq.          |

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

10.2 Entire Agreement. This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3 Amendment. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4 Heading. The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5 Time of Essence. Time is of the essence of this Agreement; however, if the final

date *of* any period which is set out in any provision *of* this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday, except that the Closing shall be not occur on a Monday or the day after a legal holiday.  If the Closing would otherwise occur while Purchaser is considering any election it has under this Agreement, the Closing shall be continued until three (3) days after the expiration of that election period granted to Purchaser hereunder so that Purchaser may have the full benefit of that period to make its election.

10.6 <u>Governing Law.</u> This Agreement shall be governed by the laws of the State of Arizona and the laws of the United States pertaining to transactions in such State.

10.7 <u>Successors and Assigns: Assignment.</u> This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller, which consent shall not be unreasonably withheld. No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement. This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8 <u>Invalid Provision.</u> If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall he fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9 <u>Attorneys' Fees.</u> In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10 <u>Multiple Counterparts.</u> This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11 <u>No Recordation.</u> Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies

12

notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12 <u>Merger Provision.</u> Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13 <u>Brokers.</u> Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14 <u>Consent to Jurisdiction of Bankruptcy Court.</u> THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Buyer and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

SELLER

CIRCUIT CITY STORES WEST COAST, INC., a California corporation

By: _____
Name: _____
Title: _____

PURCHASER

**BRG PROPERTIES, LLC,** a Delaware limited liability company

By: _____
    SAM ROSENWALD, Manager

13

The escrow terms and conditions of this Agreement are agreed to and accepted this _____ day of _____, 2009.

ESCROW AGENT:

FIDELITY TITLE INSURANCE COMPANY


By: _____
Name: _____
Its: _____


Mailing Address:

1301 Dove Street, Suite 310
Newport Beach, CA 92660
Attention: Natalie Priestly

EXHIBIT A
Legal Description
Insert Circuit City's Legal

15

Exhibit "A"

The Land

THAT PORTION OF LOT 13, OF ADAMS AND GRAHAM SUBDIVISION OF THE SOUTHWEST QUARTER OF SECTION 15, TOWNSHIP 2 NORTH, RANGE 3 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, A SUBDIVISION, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 2 OF MAPS, PAGE 1, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF SAID SECTION 15; THENCE NORTH 89° 40' 12" EAST ALONG THE SOUTH LINE OF SAID SECTION 15, A DISTANCE OF 659.77 FEET; THENCE DEPARTING FROM SAID SOUTH SECTION LINE NORTH 00° 02' 14" EAST 42.44 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF CAMELBACK ROAD AND THE TRUE POINT OF BEGINNING:

THENCE CONTINUING NORTH 00° 02' 14" EAST 343.55 FEET;

THENCE SOUTH 89° 41' 33" WEST 8.00 FEET;

THENCE NORTH 00° 02' 14" EAST 274.50 FEET;

THENCE SOUTH 89° 41' 33" WEST 97.96 FEET TO A POINT ON A NONTANGENTIAL CURVE CONCAVE TO THE NORTHWEST WHOSE RADIUS POINT BEARS NORTH 40° 01' 20" WEST, 130.00 FEET DISTANT;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 23° 46' 21", 53.94 FEET TO A POINT OF NONTANGENCY;

THENCE SOUTH 89°41' 33" WEST 127.65 FEET;

THENCE SOUTH 00° 04' 20" WEST 141.06 FEET;

THENCE SOUTH 89°57' 46" EAST 66.27 FEET;

THENCE SOUTH 00° 02' 14" WEST 193.43 FEET;

THENCE NORTH 89° 57' 46" WEST 65.83 FEET;

THENCE SOUTH 00° 16' 39" WEST 246.11 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF CAMELBACK ROAD, SAID POINT BEING 55.00 FEET NORTH OF THE SAID SOUTH LINE OF SECTION 15;

THENCE NORTH 89° 40' 12" EAST ALONG SAID NORTHERLY RIGHT-OF-WAY LINE 96.78 FEET TO AN ANGLE POINT IN SAID RIGHT-OF-WAY;

THENCE ALONG SAID RIGHT-OF-WAY SOUTH 85° 45' 13" EAST 150.40 FEET TO AN ANGLE POINT IN SAID RIGHT-OF-WAY,

THENCE ALONG SAID RIGHT-OF-WAY SOUTH 89° 23' 58" EAST 34.73 FEET TO THE

POINT OF BEGINNING.

SAID PARCEL CONTAINS 152,540 SQUARE FEET OR 3.5018 ACRES MORE OR LESS.