Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - -        x
In re:                             :      Chapter 11
                                   :
CIRCUIT CITY STORES, INC., et al., :      Case No. 08-35653 (KRH)
                                   :
             Debtors.              :
- - - - - - - - - - - - - -        :      Jointly Administered
                                   x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363 (I) APPROVING THE SALE BY CIRCUIT CITY STORES WEST COAST, INC. AND VENTOUX INTERNATIONAL, INC. OF CERTAIN ASSETS FREE AND CLEAR OF ALL INTERESTS; (II) APPROVING INTERTAN, INC.'S AUTHORIZATION OF INTERTAN CANADA LTD.'S SALE OF SUBSTANTIALLY ALL OF ITS ASSETS; (III) APPROVING THE INTERCOMPANY AGREEMENT; (IV) APPROVING THE FOTO SOURCE SETTLEMENT AGREEMENT; AND (V) GRANTING RELATED RELIEF**

Upon the motion dated March 6, 2009 (D.I. 2466; the "Motion")[1] of InterTAN, Inc. ("InterTAN"), Circuit City Stores West Coast, Inc. ("West Coast"), and Ventoux International, Inc. ("Ventoux" and together with InterTAN and West Coast, the "Movants" and, collectively with the debtors and debtors in possession in the above-captioned jointly administered cases, the "Debtors"), for entry of an order pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (I) approving the sale or licensing, as applicable, (the "Sale") of (A) certain trade-marks and licensed trade-marks by West Coast (the "Trade-marks")[2] and (B) the shares in Circuit City Global Sourcing, Limited ("CCGS," such shares in CCGS, the "CCGS Shares" and together with the Trade-marks and the InterTAN Canada Assets, the "Purchased Assets") by Ventoux to 4458729 Canada Inc. or its designee or designees (the "Purchaser") free and clear of all Interests (defined below), (II) approving InterTAN's authorization (the "Authorization") for InterTAN Canada Ltd. ("InterTAN Canada") to sell substantially all of its assets (the "InterTAN Canada Assets") to the Purchaser, (III) approving the Intercompany Agreement, (IV) approving the Foto Source Settlement Agreement and (V) granting related relief; and the Court having conducted a hearing on the Motion on March 20, 2009 (the "Sale

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2]    A schedule of the Trade-marks is attached as Exhibit 1.

Hearing"); and all parties in interest having been heard, or having had the

opportunity to be heard, regarding the asset purchase agreement between InterTAN

Canada, West Coast, Ventoux, the Purchaser and Bell Canada (the "Agreement"),

the Intercompany Agreement, the Foto Source Settlement Agreement and the

transactions contemplated thereby (the "Transactions"); and the Court having

reviewed and considered the Motion, and the arguments of counsel made, and the

evidence adduced, at the Sale Hearing; and upon the record of the Sale Hearing and

these chapter 11 cases, and after due deliberation thereon, and good cause appearing

therefor, it is hereby

### FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to hear and determine the Motion

and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1)

and 1334(b).

B.    Venue of these cases and the Motion in this district is proper

under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief requested in the Motion

are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002, 4001, 6004

and 9019.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be
construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

D.      Notice of the Motion and entry of the Sale Order has been provided to (i) all entities known to have asserted any Interest in the Purchased Assets, (ii) all federal, state, and local regulatory or taxing authorities or recording offices, which have a reasonably known interest in the relief requested by the Motion and (iii) all parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order").

E.      Based upon the affidavits of service filed with the Court, notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Case Management Order.

F.      A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.  No objections to the Motion or the relief requested in the Motion were filed with the Court.

G.      The Agreement was approved in the Canadian Case by virtue of that Approval and Vesting Order issued March 10, 2009.

H.      The Trade-marks are property of West Coast's estate and title thereto is vested solely in West Coast's estate.

4

I.      The CCGS Shares are property of Ventoux's estate and title thereto is solely vested in Ventoux's estate.

J.      InterTAN is the sole shareholder of InterTAN Canada.

K.      The Movants, InterTAN Canada and their professionals marketed the Purchased Assets as set forth in the Motion.  Any and all other parties interested in bidding on or acquiring the Purchased Assets were provided, upon request, sufficient information by InterTAN Canada, the Debtors and the Monitor to permit them to bid on the Purchased Assets.  The process employed by InterTAN Canada, the Debtors and the Monitor in connection with the CCAA Sale Process was adequate and reasonable to obtain the highest and best bid for the Purchased Assets.

L.      The Movants have determined, after a full and reasonable marketing process, that the highest and best offer for the Purchased Assets was that of Purchaser.  The Debtors and their creditors will receive a significant benefit from the Transactions.

M.      Subject to the entry of this Order, the Debtors, in general, and each of West Coast and Ventoux (together, the "Sellers"), in particular, (i) has full power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale of the Trade-marks and the CCGS Shares (together, the "US Assets") has been duly and validly authorized by all necessary company action of each of the Sellers, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Agreement and (iii) has taken all company action necessary to authorize and approve the Agreement and the consummation by

each of the Transactions.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Sellers to close the Sale and consummate the Transactions.

N.    Subject to entry of this Order, the Debtors, in general, and InterTAN, in particular, (i) has full power and authority to provide the Authorization of the sale of the InterTAN Canada Assets by InterTAN Canada, (ii) has all of the power and authority to authorize InterTAN Canada's consummation of the Transactions contemplated by the Agreement and (iii) has taken all company action necessary to provide the Authorization.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for InterTAN to authorize InterTAN Canada to close the Sale and consummate the Transactions.

O.    The Agreement and the Transactions were negotiated and have been and are undertaken by the Sellers, InterTAN Canada, Bell Canada and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code.  As a result of the foregoing, each of the Sellers, InterTAN Canada, Bell Canada, the Purchaser and their affiliates are entitled to the protections of Section 363(m) of the Bankruptcy Code.

P.    Neither the Movants, the Purchaser nor Bell Canada engaged in any conduct that would cause or permit the Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

Q.      The bid by the Purchaser for the Purchased Assets is the

highest and best offer received by the Debtors, and the Agreement provides (a)

reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent

Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act,

and (c) reasonably equivalent value, fair consideration and fair value under any other

applicable laws of the United States, any state, territory or possession, or the District

of Columbia  ((a), (b)  and (c) collectively, "Value"), for the Purchased Assets.

R.      Purchaser would not have entered into the Agreement and

would not consummate the Transactions, thus adversely affecting the Debtors, their

estates, and their creditors, if the sale of the Purchased Assets to Purchaser was not

free and clear of all Interests (as defined herein), or if Purchaser would, or in the

future could, be liable for any of such Interests.  A sale of the Purchased Assets other

than one free and clear of all Interests would adversely impact the Debtors' estates,

and would yield substantially less value for the Debtors' estates, with less certainty

than the Sale.

S.      The sale of the CCGS Shares and the Trade-marks and the

license of the Licensed Trade-marks (the "License Agreement") is an integral part of

the Agreement and cannot be severed from the sale of the remainder of the assets

being sold by InterTAN Canada.  Without a sale of the CCGS Shares and the Trade-

marks and the license of the Licensed Trade-marks, Purchaser would not purchase

any of the Purchased Assets.

T.      There are no licenses or rights to use the Trade-marks that conflict with any of the licenses or rights to use the Trade-marks in the manner contemplated by the Agreement.

U.      Purchaser is only purchasing or licensing, as applicable, the Purchased Assets and is not acquiring any of the Excluded Assets.  Purchaser is not assuming any of the debts, liabilities or obligations of the Debtors, and Purchaser shall not in any way be liable or responsible for any liabilities, commitments or obligations in any way related to the Debtors, InterTAN Canada or the Purchased Assets arising before the date and time of the closing under the Agreement (the "Closing Date"), except as expressly set forth in the Agreement.  No executory contracts or unexpired leases are being assumed or assigned to Purchaser pursuant to Bankruptcy Code section 365 in connection with the Agreement.

V.      The Purchaser (i) is not an "insider" or "affiliate" of the Sellers, (ii) is not a successor to the Sellers and (iii) has no continuity of enterprise with the Sellers.  The Transactions do not amount to, or otherwise constitute, a consolidation, merger or de factor merger of Purchaser with the Sellers.  The Debtors and Purchaser do not have any common controlling shareholders or senior management.

W.      West Coast may sell and/or license the Trade-marks, Ventoux may sell the CCGS Shares, and InterTAN may authorize the sale of the InterTAN Canada Assets free and clear of all Interests, because, with respect to each creditor asserting an Interest in the Purchased Assets, one or more of the standards set forth

in Bankruptcy Code § 363(f)(1)-(5) has been satisfied.  Those holders of Interests

who did not object or who withdrew their objections to the Sale or the Motion are

deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code §

363(f)(2). Those holders of Interests who did object fall within one or more of the

other subsections of Bankruptcy Code Section 363(f).

X.     The payment of the US Assets Purchase Price was the result of

negotiations between Circuit City, the Sellers and InterTAN Canada.  The US Assets

Purchase Price is fair and reasonable under the circumstances and constitutes Value

for the US Assets.

Y.     Subject to the entry of this Order, the Debtors, in general, and

each of Circuit City and the Sellers, in particular, (i) has full power and authority to

execute the Intercompany Agreement and all other documents contemplated thereby,

and entry into the Intercompany Agreement has been duly and validly authorized by

all necessary company action of each of the Sellers and (ii) has taken all company

action necessary to authorize and approve the Intercompany Agreement.  No

consents or approvals, other than those expressly provided for in the Intercompany

Agreement or this Order, are required for Circuit City and the Sellers to enter into

the Intercompany Agreement.

Z.     The Intercompany Agreement will provide the Debtors with

US$15 million in immediate funds upon the Closing of the Agreement as the US

Assets Purchase Price, as well as certain additional funds pursuant to the Loan.  The

terms of the Intercompany Agreement are fair and reasonable in the circumstances.

Accordingly, entry into the Intercompany Agreement is in the best interests of Circuit City and the Sellers.

AA.    The Foto Source Settlement Agreement is fair and reasonable under the circumstances and West Coast will not be responsible for payment of the settlement amount.  Moreover, entry into the Foto Source Settlement Agreement is a condition precedent to Closing of the Agreement and cannot be severed from the Agreement. Without approval and consummation of the Foto Source Agreement, Purchaser would not purchase any of the Purchased Assets.  Accordingly, entry into the Foto Source Settlement Agreement is in the best interest of West Coast.

BB.    Subject to the entry of this Order, the Debtors, in general, and West Coast, in particular, (i) has full power and authority to execute the Foto Source Settlement Agreement and all other documents contemplated thereby, and entry into the Foto Source Settlement Agreement has been duly and validly authorized by all necessary company action of West Coast and (ii) has taken all company action necessary to authorize and approve the Foto Source Settlement Agreement.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Sellers to close the Sale and consummate the Transactions.

CC.    The Court finds that the Movants have articulated good and sufficient business reasons justifying the sale of the Purchased Assets to Purchaser. Such business reasons include, but are not limited to, the following: (i) the Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the

Agreement and the Closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid decline and devaluation of the Purchased Assets; (iii) there is a risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Agreement and the Closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

DD.    Time is of the essence in consummating the Sale.  In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004.

EE.    The Sale, the Authorization, the Intercompany Agreement and the Foto Source Settlement Agreement are in the best interests of the Debtors and their estates, creditors, and Interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is GRANTED.

2.    Pursuant to Bankruptcy Code sections 105 and 363, the Agreement and the Sale of the US Assets to Purchaser free and clear of all Interests (including license of the Licensed Trade-marks) are hereby approved and authorized in all respects.

3.      Pursuant to Bankruptcy Code sections 105 and 363, the Authorization and the InterTAN Resolution, attached hereto as <u>Exhibit 2</u>, are hereby approved and authorized in all respects.

4.      Pursuant to Bankruptcy Code sections 105 and 363, the Intercompany Agreement, attached hereto as <u>Exhibit 3</u>, is hereby approved and authorized in all respects.

5.      Pursuant to Bankruptcy Rule 9019, the Foto Source Settlement Agreement, attached hereto as <u>Exhibit 4</u>, is hereby approved and authorized in all respects.

6.      Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Sale, Sellers' right, title, license to and interest in the US Assets shall be transferred to the Purchaser free and clear of all interests, including (without limitation) any lien (statutory or other), mortgage, charge, hypothec, pledge, security interest, easement, prior assignment, option, warrant, lease, sublease, license, right to possession, restrictive covenant, claim, prior claim, or right or restriction, interest or any other encumbrance (collectively, "Interests"), with all such Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they had as against the US Assets immediately before such transfer, subject to any claims and defenses the Sellers may possess with respect thereto.

7.      Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any

Excluded Liability or any other liabilities, debts, or obligations of the Sellers in any way whatsoever relating to or arising from the ownership or use of the US Assets by the Sellers prior to the consummation of the Transactions contemplated by the Agreement, or any liabilities calculable by reference to the Sellers or the US Assets, or relating to continuing or other conditions existing on or prior to the Closing.

8.      All persons are enjoined from in any way pursuing the Purchaser, Bell Canada, their affiliates or the US Assets by suit or otherwise to recover on any Interests which such person had, has or may have against the Sellers or the US Assets, or any Excluded Liability.

9.      The Transactions were undertaken by the Purchaser and Bell Canada in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m).  The Purchaser, Bell Canada and their affiliates are entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

10.      Pursuant to sections 105 and 363 of the Bankruptcy Code, the Movants and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Sale of the US Assets to Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; and (ii) perform, consummate, implement and close fully the Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, including, but not limited to, the Intercompany Agreement and the Foto Source Settlement Agreement.

13

11.     Notwithstanding anything to the contrary in the Senior Secured Super-Priority Debtor-in-Possession Credit Agreement dated as of November 12, 2008 by, among others, InterTAN Canada, Circuit City and other borrowers party thereto, and Bank of America, N.A., as amended from time to time, the proceeds from the Transactions contemplated by the Agreement shall be distributed as set forth in this Order.

12.     This Order is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the US Assets conveyed to Purchaser.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens against the US Assets from their records, official and otherwise.

13.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Agreement.

14.     This Court requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance as may be necessary or desirable to give effect to this Order.

15.     Any portion of the Agreement, the Intercompany Agreement and the Foto Source Settlement Agreement, and any related agreements may be waived, modified, amended, or supplemented by written agreement of the parties thereto without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates the respective Agreement.

16.     West Coast may not reject the License Agreement pursuant to Section 365 of the Bankruptcy Code.

17.     The failure specifically to include any particular provisions of the Agreement, the InterTAN Resolution, the Intercompany Agreement, the Foto Source Settlement Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and Purchaser that the Agreement, the InterTAN Resolution, the Intercompany Agreement, the Foto Source Settlement Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order before the Closing Date.

18.     This Order shall be effective immediately upon entry, and any

stay of orders provided for in Bankruptcy Rules 6004(h) and any other provision of

the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

19.     To the extent permitted by section 525 of the Bankruptcy

Code, no governmental unit may revoke or suspend any right, license, trademark or

other permission relating to the use of the Purchased Assets sold, transferred or

conveyed to Purchaser on account of the filing or pendency of these chapter 11 cases

or the consummation of the Sale.

20.     The Court retains jurisdiction, even after the Closing, of these

chapter 11 cases, to: (1) interpret, implement and enforce the terms and provisions of

this Order (including the injunctive relief provided in this Order) and the terms of the

Agreement, the Intercompany Agreement, the Foto Source Settlement Agreement,

all amendments thereto and any waivers and consents thereunder; (2) protect

Purchaser, or the US Assets, from and against any of the Interests; (3) compel

delivery of the US Assets to Purchaser; and (4) resolve any disputes arising under or

related to the Agreement, the Sale, the Authorization, the Transactions or

Purchaser's peaceful use and enjoyment of the US Assets.

Dated:  Richmond, Virginia

March ___, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

  - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

  - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

  Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

       /s/ Douglas M. Foley

## **EXHIBIT 1**

**(Schedule of Trade-marks)**

## SCHEDULE 8

### TRADEMARKS AND LICENSED TRADE-MARKS

## Trade-marks

| Trademark | App./Reg. No. | Comments |
|---|---|---|
| THE SOURCE | 1372924 | |
| THE SOURCE & DESIGN  | 1372925 | |
| SOURCE REWARDS | 1385275 | |

## Licensed Trade-marks

| Trade-mark | Application Number | Registration Number |
|---|---|---|
| CIRCUIT CITY | 0680646 | TMA407148 |
| CIRCUIT CITY | 0608678 | TMA427363 |
| CIRCUIT METRO | 0608679 | TMA481169 |
| CIRCUIT CITY EXPRESS | 0743999 | TMA508369 |
| CIRCUIT CITY & DESIGN | 0792254 | TMA508806 |
| CIRCUIT CITY DIRECT | 0795658 | TMA523186 |
| THE SOURCE BY CIRCUIT CITY | Withdrawn | |
| THE SOURCE BY CIRCUIT CITY & DESIGN | Withdrawn | |
| thesourcecc.ca | Domain name | |
| thesourcecc.com | Domain name | |
| lasourcecc.ca | Domain name | |
| lasourcecc.com | Domain name | |

## **EXHIBIT 2**

**(InterTAN Resolution)**

**InterTAN Canada Ltd.**
**(the "Corporation")**

**RESOLUTION OF THE SHAREHOLDER**

**RECITALS:**

A.    It is desirable and in the best interests of InterTAN, Inc., the sole shareholder of the Corporation (the "**Shareholder**"), to cause the Corporation to agree to sell certain assets and assign certain liabilities to 4458729 Canada Inc. (the "**Purchaser**") and the Purchaser has agreed to purchase certain assets and assume certain liabilities for cash consideration (the "**Transaction**") on the terms and conditions set forth in an asset purchase agreement and certain ancillary agreements.

B.    It is desirable and in the best interests the Shareholder to cause the Corporation to agree to lend certain funds to Circuit City Stores, Inc. (the "**Parent**") from the proceeds of the Transaction to the Parent on the terms and conditions set forth in a intercompany agreement.

C.    It is desirable and in the best interests of the Shareholder to cause the Corporation to agree to settle certain intellectual property disputes between the Corporation, Circuit City Stores West Coast, Inc. ("**West Coast**") and Foto Source Canada Inc. ("**Foto Source**") on the terms and conditions set forth in a settlement and coexistence agreement.

**RESOLVED THAT:**

1.    The entering into by the Corporation of an asset purchase agreement between the Corporation, West Coast, Ventoux International, Inc. ("**Ventoux**") and the Purchaser (the "**Asset Purchase Agreement**"), in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

2.    The entering into by the Corporation of an escrow agreement between the Corporation, the Purchaser and Alvarez & Marsal Canada ULC (the "**Escrow Agreement**"), in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

3.    The entering into by the Corporation of a conveyance and assumption of obligations agreement between the Corporation and the Purchaser (the "**Conveyance and Assumption of Obligations Agreement**"), in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

4.    The entering into by the Corporation of a confirmatory assignment of trade-marks (the "**Confirmatory Assignment of Trade-marks**") in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

5.  The entering into by the Corporation of an assignment and assumption of real property leases agreement between the Corporation and the Purchaser (the "**Assignment and Assumption of Real Property Leases Agreement**"), in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

6.  The entering into by the Corporation of a license termination agreement between the Corporation and West Coast (the "**License Termination Agreement**"), in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

7.  The entering into by the Corporation of an intercompany agreement between the Corporation, West Coast, Ventoux and the Parent (the "**Intercompany Agreement**"), in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

8.  The entering into by the Corporation of a settlement and coexistence agreement between the Corporation, West Coast and Foto Source (the "**Settlement and Coexistence Agreement**"), in the form presented to the Shareholder and the performance by the Corporation of its obligations thereunder, are hereby authorized and approved.

9.  Any officer or director of the Corporation, acting alone (each an "**Authorized Signatory**") is authorized and directed to negotiate, finalize, execute and deliver any and all such further documents, agreements, authorizations, certificates, elections or other instruments, including, the Asset Purchase Agreement, the Escrow Agreement, the Conveyance and Assumption of Obligations Agreement, the Confirmatory Assignment of Trade-marks, the Assignment and Assumption of Real Property Leases Agreement, the License Termination Agreement, the Intercompany Agreement and the Settlement and Coexistence Agreement (the "**Agreements**"), with or without the corporate seal affixed, and to take any and all such further action as the Authorized Signatory, in its sole discretion may deem necessary or desirable in order to complete the transactions contemplated in this resolution, the execution and delivery of any such documents, agreements, authorizations, elections or other instruments, including the Agreements, or the doing of any such other act or thing by such Authorized Signatory to be conclusive evidence of such determination.

10. All actions previously taken by an officer or director of the Corporation relating to or in connection with any of the transactions described above are approved, ratified and confirmed.

*[The remainder of this page has intentionally been left blank]*

The foregoing resolutions are passed as evidenced by the signature of the Shareholder of the Corporation pursuant to the provisions of the *Business Corporations Act* (Ontario) and in accordance with the power vested in the Shareholder by virtue of a Declaration of the Shareholder made as of October 7, 2008.

**DATED** February 23, 2009.

INTERTAN, INC.

By: *Michell Mosier*
————————————————
Michelle Mosier
Chief Financial Officer and Treasurer

TOR_A2G:3606844.3

## **EXHIBIT 3**

**(Intercompany Agreement)**

# INTERCOMPANY AGREEMENT

**THIS AGREEMENT** is made as of February 23, 2009

**B E T W E E N :**

**InterTAN Canada Ltd.**, a corporation governed by the laws of Ontario

("**InterTAN**")

- and -

**Circuit City Stores, Inc.**, a corporation governed by the laws of Virginia

("**Circuit City**")

- and -

**Circuit City Stores West Coast, Inc.**, a corporation governed by the laws of California

("**West Coast**")

- and -

**Ventoux International, Inc.**, a corporation governed by the laws of Delaware

("**Ventoux**")

**RECITALS:**

A.    InterTAN is an indirect, wholly-owned subsidiary of Circuit City.

B.    West Coast and Ventoux are each wholly-owned subsidiaries of Circuit City.

C.    On November 10, 2008, Circuit City and certain of its U.S. subsidiaries voluntarily commenced bankruptcy proceedings under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Eastern District of Virginia (the "**Chapter 11 Proceedings**") and InterTAN and Tourmalet Corporation, an unlimited liability corporation governed by the laws of Nova Scotia, commenced a voluntary proceeding under the *Companies' Creditors Arrangement Act* (Canada) in the Province of Ontario (the "**CCAA Proceeding**").

D.    InterTAN, West Coast, Ventoux, 4458729 Canada Inc. and Bell Canada have entered into an Asset Purchase Agreement dated February 23, 2009 ("APA"), whereby InterTAN has agreed to sell substantially all of its assets to the Purchaser (as defined in the APA), and

the Purchaser has agreed to purchase such assets and to assume certain of InterTAN's liabilities.

E.      West Coast is the owner of certain Trademarks (as defined in the APA) related to InterTAN's Business (as defined in the APA).

F.      Ventoux is the owner of all of the issued and outstanding shares of Circuit City Global Sourcing, Limited ("**CCGS**"), a company incorporated under the laws of Hong Kong.

G.      Pursuant to the APA, the Purchaser intends to acquire ownership of and obtain a license of the Trademarks currently owned by West Coast and to acquire the Shares of CCGS.

H.      Subject to approval of the U.S. Bankruptcy Court and the CCAA Court (both as defined in the APA) and subject to the terms set forth herein, Circuit City may wish to borrow funds from InterTAN from the proceeds of sale of the transaction contemplated by the APA to assist Circuit City to pay certain expenses in connection with the wind down of its operations.

**NOW, THEREFORE**, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties intending to be lawfully bound agree as follows:

1.      **Payment to West Coast and Ventoux.**  InterTAN agrees that, in connection with the closing of the transaction contemplated by the APA (the "**Closing**"), the amount to be paid to West Coast to acquire and/or licence the Trademarks and to Ventoux to acquire the shares of CCGS shall be no more than the Canadian Dollar equivalent of U.S.$15,000,000 in the aggregate (less any applicable withholding taxes in respect of the Licensed Trademarks), such payment to be made to West Coast, to Ventoux, or as they may otherwise direct in writing, from the proceeds of sale under the APA, and provided that such amount may be allocated between West Coast and Ventoux as they deem appropriate.  For greater certainty, nothing herein shall prevent Circuit City and its affiliates from agreeing to any other allocation of proceeds received from InterTan or the Closing (excluding any loan made in furtherance of paragraph 2 hereof, if any) among West Coast, Ventoux or other entities.

2.      **Loan to Circuit City.**  InterTAN agrees to make available a loan to Circuit City from the Sale Proceeds in an amount up to CAD$35,000,000 (the "**Loan**"), on terms that are satisfactory to Circuit City, InterTAN and the Monitor (as defined in the APA), each acting reasonably, and subject to the following conditions precedent being met to the reasonable satisfaction of both InterTAN and the Monitor:

    (a)      This Agreement shall be approved by both the U.S. Bankruptcy Court and the CCAA Court.

    (b)      Circuit City shall furnish to both InterTAN and the Monitor cash flows demonstrating that the amount of any Loan is necessary to assist Circuit City to conclude the wind down of its operations.

- 3 -

(c)     Both InterTAN and the Monitor shall be satisfied with the mechanics and timing for repayment of any Loan and the ability of Circuit City to make full repayment thereof.

(d)     InterTAN and Circuit City shall enter into a loan agreement or Circuit City shall provide InterTAN with a promissory note to evidence the Loan, and Circuit City shall cause any of its subsidiaries and affiliates to provide any guarantee that may be reasonably requested by InterTAN and the Monitor with respect to the Loan, each of which shall be in form and substance satisfactory to InterTAN and the Monitor acting reasonably, which loan agreement or promissory note and any Loan provided thereunder, and which guarantees, shall be approved by both the U.S. Bankruptcy Court and the CCAA Court on terms satisfactory to InterTan and the Monitor, acting reasonably, before the making of any such Loan.

(e)     The obligation to repay the Loan by Circuit City and the guarantee of such repayment of the Loan by the subsidiaries and affiliates of Circuit City, shall be secured by all the property, assets, and undertaking of Circuit City and its subsidiaries or affiliates, as applicable (the "**Security**").

(f)     The Security (and the priority of such Security) shall be satisfactory to InterTAN and the Monitor, acting reasonably and be approved by the U.S. Bankruptcy Court and the CCAA Court on notice to all affected creditors or as InterTAN and/or the Monitor may direct.

(g)     Circuit City shall furnish to both InterTAN and the Monitor evidence showing that the property, assets and undertaking of Circuit City and its subsidiaries and affiliates pledged as Security to InterTAN to secure the obligation for repayment of the Loan are adequate and sufficient to secure full payment of the Loan, which evidence shall be satisfactory to InterTan and the Monitor, acting reasonably.

3.     **Assignment.**  Except as expressly provided herein, the parties hereto may not assign or transfer, whether absolutely, by way of security or otherwise, all or any part of their respective rights or obligations under this Agreement without the prior written consent of the other parties.

4.     **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein.

5.     **Successors and Assigns.**  This Agreement shall enure to the benefit of, and be binding upon, the Parties and their respective successors and permitted assigns.

6.     **Counterparts.**  This Agreement may be delivered by facsimile transmission and be executed in any number of counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same instrument.

*[The remainder of this page has been intentionally left blank]*

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the date first written above.

INTERTAN CANADA LTD.

By: _____

Name: *MARK WONG*

Title: *VICE PRESIDENT, GENERAL*
*COUNSEL AND SECRETARY*

CIRCUIT CITY STORES, INC.

By: _____

Reginald D. Hedgebeth

Senior Vice President, General Counsel and Secretary

CIRCUIT CITY STORES WEST COAST, INC.

By: _____

Reginald D. Hedgebeth

Chairman/CEO

*Intercompany Agreement*

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the date first written above.

**INTERTAN CANADA LTD.**

By:    InterTAN, Inc.

By: _____

Name:

Title:

**CIRCUIT CITY STORES, INC.**

By: _____

Reginald D. Hedgebeth

Senior Vice President, General Counsel and Secretary

**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____

Reginald D. Hedgebeth

Chairman/CEO

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the date first written above.

**INTERTAN CANADA LTD.**

By:    InterTAN, Inc.

     By: _____

       Name:

       Title:


**CIRCUIT CITY STORES, INC.**

By: _____

    Reginald D. Hedgebeth

    Senior Vice President, General Counsel and Secretary


**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____

    Reginald D. Hedgebeth

    Chairman/CEO

*Intercompany Agreement*

- 2 -

**VENTOUX INTERNATIONAL, INC.**

By: _____
    Reginald D. Hedgebeth
    *Vice President and Secretary*

*Intercompany Agreement*

## **EXHIBIT 4**

**(Foto Source Settlement Agreement)**

## SETTLEMENT AND COEXISTENCE AGREEMENT

**THIS AGREEMENT** is made as of February 20, 2009

**BETWEEN:**

> **FOTO SOURCE CANADA INC.**, a company incorporated pursuant to the laws of the Province of Ontario, having its principal office at 2333 Wyecroft Road, Oakville, Ontario, Canada

> - and –

> **INTERTAN CANADA LTD.**, a corporation incorporated pursuant to the laws of the Province of Ontario, having its principal office at 279 Bayview Drive, Barrie, Ontario, Canada

> - and –

> **CIRCUIT CITY STORES WEST COAST, INC.**, a corporation incorporated pursuant to the laws of the State of California, having its principal office at 9520 Sheridan Boulevard, Westminster, Colorado, U.S.A.

**RECITALS**:

A.    Unless otherwise indicated, all capitalized terms have the meanings ascribed to them in paragraph 1 below.

B.    By entering into this Agreement, Foto Source, InterTAN and CCSWC intend to fully and finally settle all issues arising from, or in any way related to the Action.

**THEREFORE**, the parties agree as follows:

1.    Whenever used in this Agreement, the following words and terms shall have the meanings set out below:

> (a)    **"Action"** means the action commenced in the Federal Court of Canada by Foto Source against InterTAN and Circuit City under Court File No. T-2243-06.

> (b)    **"CCSWC"** means Circuit City Stores West Coast, Inc.

(c)     "**CCSWC Marks**" means the trade-mark THE SOURCE and any other word or design trade-mark which includes the word SOURCE (other than the Foto Source Marks and the trade-marks prohibited in paragraph 8 below), and includes the following trade-marks:

(i)     THE SOURCE BY CIRCUIT CITY which is the subject matter of Canadian trade-mark application number 1252450;

(ii)     THE SOURCE BY CIRCUIT CITY & DESIGN which is the subject matter of Canadian trade-mark application number 1253279;

(iii)     SOURCE REWARDS which is the subject matter of Canadian trade-mark application number 1385275;

(iv)     THE SOURCE which is the subject matter of Canadian trade-mark application number 1372924; and

(v)     THE SOURCE & DESIGN which is the subject matter of Canadian trade-mark application number 1372925.

(d)     "**CCSWC Releasees**" means CCSWC, and any related and affiliated corporations and entities, and all successors and assigns (including, for greater certainty, any assignee of the CCSWC Marks), as the case may be, and all of the officers, directors, employees and agents, as the case may be, of any of the foregoing.

(e)     "**CIPO**" means the Canadian Intellectual Property Office and includes the Trade-marks Office.

(f)     "**Claims**" means any claims, actions, causes of action, damages, losses, debts, demands and liabilities of absolutely any kind whatsoever, whether known or not, contingent or otherwise, that a party ever had, now has or may hereinafter have in respect of any matter existing as of the present in any way relating to the CCSWC Marks, the Foto Source Marks or the issues raised in the Action and including oppositions or Section 45 Proceedings that have been or could have been commenced before CIPO in relation to the CCSWC Marks or the Foto Source Marks.

(g)     "**Deposit Deadline**" means 5:00 p.m. Eastern Standard Time on the fifth business day following the execution of this Agreement by all parties.

(h)     "**Foto Source**" means Foto Source Canada Inc.

(i)     "**Foto Source Releasees**" means Foto Source, and any related and affiliated corporations and entities, and all successors and assigns (including, for greater certainty, any assignee of the Foto Source Marks), as the case may be, and all of the officers, directors, employees and agents, as the case may be, of any of the foregoing.

(j)     "**Foto Source Marks**" means the trade-marks FOTO SOURCE and YOUR DIGITAL SOURCE, and any word or design trade-mark which includes FOTO

SOURCE or YOUR DIGITAL SOURCE, and includes the following trade-marks:

(i)     FOTO SOURCE DESIGN, which is the subject matter of Canadian trade-mark registration number TMA462312 and application number 0752606-01 amending TMA462312;

(ii)    FOTO SOURCE, which is the subject matter of Canadian trade-mark registration number TMA467248 and application number 0752605-01 amending TMA467248;

(iii)   FOTO SOURCE & LOGO DESIGN which is the subject matter of Canadian trade-mark registration number TMA725112;

(iv)    DESIGN ICON which is the subject matter of Canadian trade-mark registration number TMA467035;

(v)     YOUR DIGITAL SOURCE & DESIGN which is the subject matter of Canadian trade-mark registration number TMA622437 and application number 1174850-01 amending TMA622437;

(vi)    YOUR DIGITAL SOURCE which is the subject matter of Canadian trade-mark application number 1319511; and

(vii)   LE SPÉCIALISTE DU NUMÉRIQUE & DESIGN which is the subject matter of Canadian trade-mark registration number TMA622328.

(k)     "**GET IT RIGHT Marks**" means the trade-mark GET IT RIGHT, FROM THE FOTO SOURCE and the trade-mark GET IT RIGHT, FROM FOTO SOURCE.

(l)     "**InterTAN**" means InterTAN Canada Ltd.

(m)     "**InterTAN Releasees**" means InterTAN, and any related and affiliated corporations and entities, as the case may be, and all of the officers, directors, employees and agents, as the case may be, of any of the foregoing.

(n)     "**Phase Out Deadline**" means 1 year from the date on which InterTAN pays the Settlement Amount, should InterTAN pay the Settlement Amount.

(o)     "**Section 45 Proceedings**" means proceedings pursuant to section 45 of the *Trade-marks Act*.

(p)     "**Settlement Amount**" means the sum of $450,000 CDN.

(q)     "**Settlement Payment Deadline**" means 5:00 p.m. Eastern Standard Time on September 30, 2009.

(r)     "**Withdrawal Deadline**" means 20 days from the date on which InterTAN pays the Settlement Amount, should InterTAN pay the Settlement Amount.

### Settlement Amount

2.

    (a)    InterTAN shall pay to Foto Source prior to the Deposit Deadline the sum of $50,000 CDN.

    (b)    At any time prior to the Settlement Payment Deadline, InterTAN may, if it chooses to do so, pay the Settlement Amount to Foto Source. InterTAN is under no obligation to pay the Settlement Amount to Foto Source. If InterTAN pays the Settlement Amount to Foto Source prior to the Settlement Payment Deadline, paragraphs 3 to 21 immediately become effective. If InterTAN does not pay the sum of $50,000 to Foto Source by the Deposit Deadline, or InterTAN does not pay the Settlement Amount to Foto Source prior to the Settlement Payment Deadline:

        (i)    paragraphs 3 to 21 never become effective and are of no force and effect; and

        (ii)    the parties agree that the Agreement and all negotiations leading up to its execution are without prejudice communications (with the exception of the possible use by Foto Source of this Agreement in the proceedings relating to InterTAN under the *Companies' Creditors Arrangement Act*).

    (c)    Notwithstanding the foregoing, prior to the Settlement Payment Deadline, InterTAN will not sell, transfer, lease, convey, assign or otherwise dispose of all or substantially all of its assets, or otherwise dispose of its assets as a part of a going concern transaction, unless:

        (i)    the Settlement Payment has already been paid to Foto Source or will be paid to Foto Source at or immediately following such sale; and

        (ii)    InterTAN assigns this Agreement to the purchaser of all or substantially all of its assets, or the acquiror of its assets as part of a going concern sale, as the case may be, and such purchaser or acquiror agrees to be bound by this Agreement.

### Foto Source Marks and Activities

3.    InterTAN and CCSWC have no objection to:

    (a)    Foto Source or its successors or assigns using, licensing others to use, or assigning to others the right to use, the Foto Source Marks, and the GET IT RIGHT Marks, in association with any of the wares or services specified in the registrations and applications listed in subparagraph 1(j) above, or any other wares or services; and

    (b)    Foto Source or its successors or assigns filing applications in Canada to register any of the Foto Source Marks, including the GET IT RIGHT Marks.

4.    Foto Source will withdraw its Canadian trade-mark application number 1275762 for the trade-mark GET IT RIGHT, FROM THE SOURCE and will do so by filing with CIPO the appropriate documentation prior to the Withdrawal Deadline.  Foto Source hereby authorizes and directs its trade-mark agents to execute and file such documentation prior to the Withdrawal Deadline. Foto Source or its trade-mark agents will provide a copy of such documentation to InterTAN and CCSWC, date stamped by CIPO to confirm its filing date.

5.    Foto Source and its licensees will cease all use of the trade-mark GET IT RIGHT, FROM THE SOURCE by no later than the Phase Out Deadline.  After the Phase Out Deadline, Foto Source and its licensees will not directly or indirectly use, or licence others to use, the trade-mark GET IT RIGHT, FROM THE SOURCE.

6.    With the exception of the Foto Source Marks and the GET IT RIGHT Marks, Foto Source will not directly or indirectly use, or apply to register, any trade-mark that includes SOURCE, unless SOURCE is immediately preceded by FOTO.

### CCSWC Marks and Activities

7.    Except as set out in paragraph 8 below, Foto Source has no objection to:

(a)    CCSWC or InterTAN or their respective successors or assigns using, licensing others to use, or assigning to others the right to use, the CCSWC Marks in association with any of the wares or services specified in the applications listed in subparagraph 1(c) above, or any other wares or services;

(b)    CCSWC or InterTAN or their respective successors or assigns filing applications in Canada to register any of the CCSWC Marks; and

(c)    Without limiting the generality of the foregoing, and for greater certainty, Foto Source has no objection to CCSWC, InterTAN or their successors and assigns, including any assignee of the CCSWC Marks, using or registering any SOURCE-formative mark, except as specifically prohibited in paragraph 8 below.

8.    Neither CCSWC nor InterTAN nor their respective successors or assigns will directly or indirectly:

(a)    use, or licence others to use, or apply to register, any trade-mark that includes FOTO;

- 6 -

(b)     use, or licence others to use, or apply to register, any trade-mark that includes
both PHOTO (or any word that includes PHOTO such as PHOTOGRAPHER)
and SOURCE separated by five or fewer words;

(c)     use, or licence others to use, or apply to register, any trade-mark that includes
DIGITAL (or any word that includes DIGITAL such as DIGITALLY) and
SOURCE separated by five or fewer words;

(d)     use, or licence others to use, or apply to register, any trade-mark that includes
both GET IT and SOURCE;

9.      CCSWC will withdraw its Canadian trade-mark application number 1261117 for the
trade-mark GET IT RIGHT FROM THE SOURCE and will do so by filing with CIPO
the appropriate documentation prior to the Withdrawal Deadline.   CCSWC hereby
authorizes and directs its trade-mark agents to execute and file such documentation prior
to the Withdrawal Deadline. CCSWC or its trade-mark agents will provide a copy of such
documentation to Foto Source, date stamped by CIPO to confirm its filing date.

### *Withdrawal of Oppositions*

10.     To the extent that InterTAN or CCSWC have opposed any applications by Foto Source
for the Foto Source Marks or initiated any Section 45 Proceedings as against any
registrations for Foto Source Marks, InterTAN or CCSWC as the case may be, will
withdraw such oppositions or Section 45 Proceedings prior to the Withdrawal Deadline.
InterTAN and CCSWC hereby authorize and direct their respective trade-mark agents, to
execute and file such documentation prior to the Withdrawal Deadline. InterTAN,
CCSWC or their respective trade-mark agents will provide a copy of such documentation
to Foto Source, date stamped by CIPO to confirm its filing date.

11.     To the extent that Foto Source has opposed any applications to register any of the
CCSWC Marks or initiated any Section 45 Proceedings as against any registrations for
CCSWC Marks, Foto Source will withdraw such oppositions or Section 45 Proceedings
prior to the Withdrawal Deadline.  Foto Source hereby authorizes and directs its trade-
mark agents to execute and file such documentation prior to the Withdrawal Deadline.
Foto Source or its trade-mark agents will provide a copy of such documentation to
CCSWC, date stamped by CIPO to confirm its filing date.

### *Not To Oppose Any Future Applications or Use*

12.     To the extent that CCSWC or its successors or assigns apply to register any CCSWC Marks, Foto Source will not oppose such applications and if required, will consent to such applications.  Foto Source will not take any steps to stop, or seek relief to stop the use of any CCSWC Marks by InterTAN, CCSWC and any successors and assigns, including any assignee of the CCSWC Marks.

13.     To the extent that Foto Source or its successors or assigns apply to register any Foto Source Marks or the GET IT RIGHT Marks, neither InterTAN nor CCSWC will oppose such applications and if required, will consent to such applications.  Neither InterTAN nor CCSWC will take any steps to stop, or seek relief to stop the use of any Foto Source Marks or the GET IT RIGHT Marks by Foto Source and any successors and assigns.

### *Business Names, etc.*

14.     To the extent that a party has agreed herein not to apply to register a particular trade-mark, or not to use a particular trade-mark, that prohibition shall extend to business names, trade names, domain names and corporate names.

15.     To the extent that a party has agreed herein not to oppose any application for a particular trade-mark, that prohibition shall extend to opposing or challenging the corresponding business names, trade names, domain names and corporate names.

16.     For greater certainty, the parties acknowledge and agree that:

(a)     the use of the domain names THESOURCE.CA, THESOURCECC.CA, THESOURCECC.COM, LASOURCECC.CA, LASOURCECC.COM, and any other domain name using the word SOURCE (except those prohibited by paragraph 8) by CCSWC, InterTAN or their successors or assigns, including any assignee of the CCSWC Marks, is acceptable, and Foto Source will not challenge or oppose such use; and

(b)     the use of the domain names FOTOSOURCE.CA and FOTOSOURCE.COM and any other domain name using the word SOURCE immediately preceded by the word FOTO by Foto Source or its successors or assigns is acceptable, and neither CCSWC nor InterTAN will challenge or oppose such use.

- 8 -

### The Action

17.    The parties consent to an order dismissing the Action, on consent, without costs.  The motion for such an order will be brought by Foto Source and will be brought prior to the Withdrawal Deadline.

### Release by Foto Source

18.    Without any admission of liability, Foto Source:

(a)    releases and discharges the InterTAN Releasees and the CCSWC Releasees from all Claims;

(b)    acknowledges and agrees that such release shall be effective and enure to the benefit of all successors and assigns of the InterTAN Releasees and the CCSWC Releasees (and, for greater certainty, any assignee of the CCSWC Marks);

(c)    agrees not to assist any person, corporation or entity to assert any Claims against any of the InterTAN Releasees or the CCSWC Releasees with respect to the Claims that are released and discharged pursuant to this paragraph;

(d)    agrees not to assert, or to assist any person, corporation or entity to assert, any Claims, including taking any proceedings, against any other person, corporation or entity who might claim contribution or indemnity or other similar relief from any of the InterTAN Releasees and the CCSWC Releasees with respect to the Claims that are released and discharged pursuant to this paragraph; and

(e)    agrees to execute a separate confirmatory release (effective as of the date of the payment by InterTAN to Foto Source of the Settlement Amount) in favour of any assignee of the CCSWC Marks, the wording of which will be in all material respects the same as in this paragraph.  At any time after the payment by InterTAN of the Settlement Amount, InterTAN or CCSWC may provide written notice to Foto Source (or its solicitors) of an intention on the part of CCSWC to assign the CCSWC Marks and the name of the assignee, in which case the confirmatory release shall be executed by Foto Source and delivered to CCSWC (or its solicitors) as soon as possible.  Contemporaneously with the assignment by CCSWC of the CCSWC Marks, or at any time afterwards, CCSWC (or its solicitors) may deliver the confirmatory release to the assignee.

### Release by InterTAN and CCSWC

19.    Without any admission of liability, InterTAN and CCSWC each:

(a)    releases and discharges the Foto Source Releasees from all Claims;

(b)    acknowledges and agrees that such release shall be effective and enure to the benefit of all successors and assigns of the Foto Source Releasees;

- 9 -

(c)     agrees not to assist any person, corporation or entity to assert any Claims against any of the Foto Source Releasees with respect to the Claims that are released and discharged pursuant to this paragraph; and

(d)     agrees not to assert, or to assist any person, corporation or entity to assert, any Claims, including taking any proceedings, against any other person, corporation or entity who might claim contribution or indemnity or other similar relief from any of the Foto Source Releasees with respect to the Claims that are released and discharged pursuant to this paragraph.

### *Geographic Scope*

20.     Paragraphs 3 to 16 apply to activities in Canada, including display on the Internet.

### *Mediation*

21.     In the event one party believes that another party is in breach of this Agreement, prior to commencing legal proceedings, the following steps must be taken:  Written notice shall be given to the party alleged to be in breach of the Agreement.  If within 15 days of such notice being given, the matter has not been satisfactorily resolved, senior business people from each of the parties involved in the particular matter will meet within 30 days of the original notice being given to discuss the matter and ascertain whether it can be resolved.  If at the end of that 30 day period the matter has not been satisfactorily resolved, any party may commence legal proceedings.

The foregoing does not apply in the event a party commences legal proceedings and immediately seeks an interim and/or interlocutory injunction.  Following the procedure set out above shall not in any way prevent a party from seeking an interim and/or interlocutory injunction.

### *Assignment*

22.     This Agreement shall enure to the benefit of and be binding upon the parties and their respective successors (including any successor by reason of amalgamation of any party) and assigns.  Any of the parties may assign the Agreement without consent.  Without limiting the generality of the forgoing:

(a)     InterTAN may assign the Agreement to a purchaser of some or all of its assets; and

(b)     CCSWC may assign the Agreement to an assignee of the CCSWC Marks.

TOR_A2G:3607002.4

23.     Neither Foto Source nor any of its successors or assigns will assign the Foto Source Marks unless it also assigns this Agreement to the assignee of the Foto Source Marks and such assignee agrees to be bound by this Agreement.

24.     Neither CCSWC nor any of its successors or assigns will assign any of the CCSWC Marks unless it also assigns this Agreement to the assignee of the CCSWC Marks and such assignee agrees to be bound by this Agreement.

25.     CCSWC hereby represents and warrants that at this time: CCSWC is the owner of the CCSWC Marks; InterTAN is the sole licensee of the CCSWC Marks (InterTAN having sublicensed the CCSWC Marks); and, CCSWC has not otherwise licensed the CCSWC Marks and has not assigned any of its rights in the CCSWC Marks.

26.     InterTAN will not assign any of its rights (such as licence rights) in respect of the CCSWC Marks unless it also assigns this Agreement to the assignee of such rights, and such assignee agrees to be bound by this Agreement.

27.     In the event that InterTAN has not paid the Settlement Payment to Foto Source by the Settlement Payment Deadline, then paragraphs 23, 24 and 26 cease to be effective and are no longer of any force or effect.

### *Deferral of Opposition Proceedings and Section 45 Proceedings*

28.     To the extent that there are currently any opposition proceedings or Section 45 Proceedings pending in respect of any Foto Source Marks or CCSWC Marks and there are any deadlines in such opposition proceedings or Section 45 Proceedings prior to the Withdrawal Deadline, the parties hereby consent to a request or requests to CIPO that it extend such deadlines, ultimately until November 30, 2009.  Unless required to do so by CIPO, neither party shall file materials, or take steps to advance or respond to such opposition proceedings or Section 45 Proceedings unless and until:

(a)     InterTAN fails to pay $50,000 to Foto Source by the Deposit Deadline; or

(b)     InterTAN fails to pay the Settlement Amount by the Settlement Payment Deadline; or

(c)     InterTAN advises Foto Source in writing that it does not intend to pay the Settlement Amount by the Settlement Deadline (the foregoing does not affect the

- 11 -

obligations of InterTAN prior to the Settlement Payment Deadline as set out in subparagraph 2(c) above).

***Certain Rules of Interpretation***

29.     In this Agreement:

(a)     **Currency** - Unless otherwise specified, all references to money amounts are to the lawful currency of Canada.

(b)     **Governing Law** - This Agreement is a contract made under and shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable in the Province of Ontario**.**

(c)     **Headings** - Headings have been inserted for convenience of reference only and shall not affect the construction or interpretation of this Agreement**.**

(d)     **Including** - Where the word "including" or "includes" is used in this Agreement, it means "including (or includes) without limitation".

(e)     **No Strict Construction** – The language used in this Agreement is the language chosen by the parties to express their mutual intent, and no rule of strict construction shall be applied against any party.

(f)     **Number and Gender** – Unless the context otherwise requires, words importing the singular include the plural and vice versa and words importing gender include all genders.

(g)     **Severability** – If, in any jurisdiction, any provision of this Agreement or its application to any party or circumstance is restricted, prohibited or unenforceable, such provision shall, as to such jurisdiction, be ineffective only to the extent of such restriction, prohibition or unenforceability without invalidating the remaining provisions of this Agreement and without affecting the validity or enforceability of such provision in any other jurisdiction and without affecting its application to other parties or circumstances.

***Entire Agreement***

30.     This Agreement and the Schedules hereto (if any) constitute the entire agreement between the parties and set out all the covenants, promises, warranties, representations, conditions, understandings and agreements between the parties pertaining to the subject matter of this Agreement and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written.  There are no covenants, promises, warranties, representations, conditions, understandings or other agreements, oral or written, express, implied or collateral between the parties in connection with the subject

- 12 -

matter of this Agreement except as specifically set forth in this Agreement and any document required to be delivered pursuant to this Agreement.

### Amendment

31.      No amendment, supplement, modification or waiver or termination of this Agreement and, unless otherwise specified, no consent or approval by any party, shall be binding unless executed in writing by the party to be bound thereby.

### Further Assurances

32.      The parties shall with reasonable diligence do all such things and provide all such reasonable assurances as may be required to consummate the transactions contemplated by this Agreement, and each party shall provide such further documents or instruments required by any other party as may be reasonably necessary or desirable to effect the purpose of this Agreement and carry out its provisions.

### Execution and Delivery

33.      This Agreement may be executed by the parties in counterparts and may be executed and delivered by fax or e-mail and all such counterparts shall together constitute one and the same agreement.

**[the rest of this page has been left intentionally blank]**

- 13 -

**IN WITNESS OF WHICH** the parties have duly executed this Agreement.

**FOTO SOURCE CANADA INC.**

By: _____

"I have authority to bind the Corporation"

Name (print): _JOHN CREWSON_

Title: _PRESIDENT_

Date: _FEB 20 2009_

**INTERTAN CANADA LTD.**

By: _____

"I have authority to bind the Corporation"

Name (print): _____

Title: _____

Date: _____

**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____

"I have authority to bind the Corporation"

Name (print): _____

Title: _____

Date: _____

- 13 -

**IN WITNESS OF WHICH** the parties have duly executed this Agreement.

**FOTO SOURCE CANADA INC.**

By: _____

"I have authority to bind the Corporation"

Name (print): _____

Title: _____

Date: _____


**INTERTAN CANADA LTD.**

By: _~~_M_~~_____

"I have authority to bind the Corporation"

Name (print): _MARK   WONG_____

Title: _VICE  PRESIDENT  GENERAL COUNSEL AND
                                              SECRETARY_

Date: _February  23, 2009_____


**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____

"I have authority to bind the Corporation"

Name (print): _____

Title: _____

Date: _____

- 13 -

**IN WITNESS OF WHICH** the parties have duly executed this Agreement.

**FOTO SOURCE CANADA INC.**

By: _____

"I have authority to bind the Corporation"

Name (print): _____

Title: _____

Date: _____


**INTERTAN CANADA LTD.**

By: _____

"I have authority to bind the Corporation"

Name (print): _____

Title: _____

Date: _____


**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____

"I have authority to bind the Corporation"

Name (print): Reginald D. Hedgebeth

Title: Chairman & Chief Executive Officer

Date: _____