Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

         IN THE UNITED STATES BANKRUPTCY COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                  RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :   Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :   Case No. 08-35653 (KRH)
et al.,                      :
                             :
              Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363
AND BANKRUPTCY RULE 9019 (I) APPROVING COMMUTATION AND
RELEASE AGREEMENT BETWEEN CIRCUIT CITY STORES, INC. AND
NORTHERN NATIONAL INSURANCE LTD., (II) AUTHORIZING
CIRCUIT CITY STORES, INC. TO ENGAGE IN AFFILIATE
TRANSACTIONS WITH NORTHERN NATIONAL INSURANCE LTD., AND
(III) APPROVING CIRCUIT CITY STORES, INC.'S
AUTHORIZATION OF NORTHERN NATIONAL INSURANCE LTD.'S
COMMENCEMENT OF LIQUIDATION PROCEEDINGS**

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. ("Circuit City") and its affiliated debtors

and debtors in possession in the above-captioned jointly

administered cases (collectively with Circuit City, the

"Debtors"), for entry of an order pursuant to sections

105 and 363 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for entry

of an order (I) approving the Commutation and Release

Agreement between Circuit City and Northern National In-

surance Ltd. ("Northern National"), (II) authorizing

Circuit City to engage in affiliate transactions with

Northern National, and (III) approving Circuit City's

authorization of Northern National's commencement of

liquidation proceedings; and all parties in interest

having been heard, or having had the opportunity to be

heard, and the transactions contemplated thereby (the

"Transactions"); and the Court having reviewed and con-

sidered the Motion, and after due deliberation thereon,

and good cause appearing therefore it is hereby

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The relief requested in the Motion is GRANTED.

2.   Pursuant to Bankruptcy Code sections 105 and Bankruptcy Rule 9019, the Commutation and Release Agreement attached hereto as Exhibit 1 is hereby approved and authorized in all respects.

3.   Pursuant to Bankruptcy Code sections 105 and 363, the Authorization for Northern National Insurance Ltd. to commence liquidation proceedings is hereby approved and authorized in all respects.

4.   Pursuant to Bankruptcy Code sections 105 and 363, the Affiliate Transactions are hereby approved and authorized in all respects.

5.   Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Commutation and Release Agreement, the Authorization, and the Affiliate Transactions; and (ii) perform, consummate, and implement such transactions together with all additional instruments and documents that may be reasonably necessary or desirable to

implement the Commutation and Release Agreement, the Affiliate Transactions, and the Authorization.

6.    The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

7.   This Court retains jurisdiction to hear

and determine all matters arising from or related to

Commutation and Release Agreement, the Affiliate Trans-

actions, the Authorization, and this Order

Dated:  Richmond, Virginia

_____, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000
Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

**EXHIBIT 1**

**(Commutation and Release Agreement)**

## COMMUTATION AND RELEASE AGREEMENT

THIS COMMUTATION AND RELEASE AGREEMENT (the "Agreement") is made as of the 1st. day of March, 2009 between Northern National Insurance Ltd., a company incorporated under the laws of Bermuda and whose registered office is at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda (hereinafter called "the Insurer") of the first part and Circuit City Stores Inc., a company incorporated under the laws of the State of Virginia in the United States of America and whose registered office is at 9954 Mayland Drive, Richmond, Virginia 23233, U.S.A. (hereinafter called "the Insured") of the second part.

WHEREAS:-

(A)     The Insurer is a party to various contracts of insurance with the Insured (the "Contracts") as more particularly set forth in the schedule annexed hereto ("Schedule A").

(B)     The Insurer wishes to be discharged from all liabilities and obligations owed to the Insured under the Contracts.

(C)     The Insured, in consideration of acquiring the Insurer's rights under the Contracts, has agreed to assume all liabilities thereunder.

(D)     The Insured has consented and agreed to release the Insurer from any and all liabilities and obligations under the Contracts.

NOW THIS AGREEMENT WITNESSETH AS FOLLOWS:-

1.     The Insurer shall be deemed to have ceased to be a party to the Contracts as of 12:01 a.m. Eastern Standard Time on the 1st. day March, 2009.

2.     Upon receipt by the Insured of the Commutation Amount (as defined below) and with no further action required, the Contracts will be irrevocably commuted and terminated, and the Insured hereby releases and discharges the Insurer from any and all liability of whatever kind or character arising out of, or in connection with, the Contracts.

3.     The Insured covenants with, and undertakes that, it will meet all the former liabilities of the Insurer howsoever arising under the Contracts and hereby undertakes to assume all liabilities arising from all claims, proceedings, costs, demands, expenses, charges, losses or liabilities of whatever kind or character in connection therewith.

4.     Pursuant to the assumption by the Insured of any and all outstanding liabilities under the Contracts, the Insurer, in consideration of the Insured assuming such liabilities, hereby agrees to transfer, to the account of the Insured, at Wachovia Bank, account number: 2055275431509 (ABA# 05140049) the sum of US$6,392,755 (US Dollars six million, three hundred and ninety-two thousand, seven hundred and fifty-five) (the "Commutation Amount"), within 60 business days of the execution of this Agreement by both the Insurer and the Insured, in full and final settlement of all liabilities, costs and expenses whether known or unknown as at the assumption date in relation to the Contracts.

5.     Notwithstanding any other provisions of this Agreement, in the event the Insurer fails to transfer the foregoing funds in the amount and manner specified in Clause 4, the Insured may, at its

discretion, rescind this Agreement by written notice to the Insurer at its address set forth above, and this Agreement shall then be null and void.

6.      Payment of the full Commutation Amount by the Insurer in accordance with clause 4 above shall constitute between the Parties, their predecessors, successors, affiliates, subsidiaries, agents, officers, directors, shareholders, and assigns an irrevocable mutual release and discharge from any and all rights, liabilities, duties and obligations, present and future payment obligations, adjustments, executions, offsets, actions, causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgements, claims, demands, and/or losses, whatsoever and howsoever arising under or in connection with the Contracts, whether in contract, tort, equity or otherwise, and whether presently known or unknown, certain or contingent, reported  or unreported, present, past or future, and whether or not the amount thereof is fixed or unliquidated, or the Contracts are void or voidable.

7.      The rights, duties and obligations set forth herein shall inure to the benefit of and be binding upon any and all the predecessors, parents, successors, affiliates, officers, directors, employees, subsidiaries, stockholders, liquidators, receivers and assigns of the parities hereto.

Warranties

Each of the Parties expressly represents and warrants that

(i)     it has not assigned or purported to assign any of its rights or obligations under any of the Contracts; and

(ii)    it is duly incorporated with power to enter into this Agreement and to exercise rights and perform obligations under it; all necessary authorisations and approvals, required to enable it to enter into and perform and comply with its obligations under this Agreement have been obtained and are in full force and effect; the persons executing this Agreement have the necessary and appropriate authority to do so; and the making and performance of this Agreement will not violate any provisions of applicable law or its articles of incorporation or bylaws (or similar organizational documents).

Avoidance

None of the Parties shall seek to re-open or set aside this Agreement or any of the Contracts on any grounds whatsoever, including, without limitation, that this Agreement or any of the Contracts are void or voidable or on the basis that any of the parties in the future has become aware of any mistake of law (including any such mistake arising as a result of a subsequent change in the law, which shall include a settled understanding of the law which is subsequently departed from by judicial decision) or any mistake of fact in any way whatsoever connected with or related to this Agreement or the Contracts.

Entire Agreement

This Agreement constitutes the entire Agreement between the parties with regard to its subject matter and supercedes all and any previous such Agreements. In entering into this Agreement and consenting to its terms, no Party has relied on any statement, warranty or representation made by or on behalf of another Party other than as contained in this Agreement.

Parties

This Agreement and all of its terms are binding on, and inure only to the benefit of, the Parties, their predecessors. successors and permitted assigns. This Agreement is not intended to benefit any other person or entity.

Variation

No variation of this Agreement shall be valid unless it is in writing and signed by or on behalf of each of the Parties.

Assignment

No Party may assign any rights, obligations or benefits arising under or in connection with this Agreement without the prior written consent of the other Parties.

Governing Law and Jurisdiction

This Agreement shall be interpreted under and governed by the laws of Bermuda. The Parties agree to submit to the exclusive jurisdiction of the Bermuda Courts in respect of any dispute arising out of or in connection with this Agreement.

Execution

This Agreement may be executed in counterpart originals with the same force and effect as if signed in an original document.  All counterparts shall constitute one document, notwithstanding the parties are not signatories of the same counterpart.  Signatures on each counterpart may be sent via facsimile transmission, and any facsimile transmission of such signature shall be deemed to have the same force and effect as an original signature.

**IN WITNESS WHEREOF** this Agreement has been executed by or on behalf of the Insurer and the Insured:

        **THE INSURER**                                **THE INSURED**

_____         _____
Authorised Representative                  Authorised Representative

_____         _____
Title                                   Title

_____         _____
Date                                    Date

# NORTHERN NATIONAL INSURANCE LTD.

### Open Policies

### SCHEDULE A

| Policy Number | Policy Year |
|---|---|
| NNILWCALGL - 015* | 01 Oct 2006 - 01 Oct 2007 |
| NNIL 1-10001-00* | 01 Oct 2007 - 31 Dec 2008 |

* Applies to liabilities or obligations relating to workers' compensation losses under (i) Contract NNILWCALGL – 015, with respect to policy year 1st. October, 2006 – 1st. October, 2007 (but only with respect to losses occurring on/after 1st. January, 2007), and (ii) Contract NNIL 1-10001-00, with respect to policy year 1st. October, 2007 – 31st. December, 2008 (as to losses occurring during the entire policy year), in each case up to a limit of US$100,000 any one loss and/or occurrence, as may be more fully defined in the overlying workers' compensation policy(ies) under such Contracts.