UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA


IN RE:                         . Case No. 08-35653(KRH)
                               .
CIRCUIT CITY STORES, INC.,     .
                               .
                    Debtor.    . 701 East Broad Street
                               . Richmond, VA 23219
                               .
                               . March 3, 2009
. . . . . . . . . . . . . . . . 10:05 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Debtor:              McGuire Woods LLP
                         By:  DOUGLAS FOLEY, ESQ.
                              DANIEL BLANKS, ESQ.
                         9000 World Trade Center
                         101 W. Main Street
                         Norfolk, VA 23510


For DL Peterson:         DLA Piper LLP
                         By:  KEVIN KOBBE, ESQ.
                         6225 Smith Avenue
                         Baltimore, MD 21209


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**
**(609) 586-2311  Fax No.  (609) 587-3599**

```
APPEARANCES (Contd'):


For Dentici Family
Limited Partnership:        Cantor Arkema, PC
                            By:  NEIL McCULLAGH
                            1111 East Main Street
                            16th Floor
                            Richmond, VA 23219

For Cole Landlords:         Kutak Rock
                            By:  KIMBERLY PIERRO, ESQ.
                            Richmond Petersburg Turnpike
                            Richmond, VA 23219

                                 _- - -
```

3

1          THE CLERK:  In the matter of Circuit City Stores,

2 Inc. hearings on Items 1 through 30 as set out on debtor's

3 amended agenda.

4          MR. FOLEY:  Good morning, Your Honor.  Doug Foley on

5 behalf of the debtors.  With me at counsel table is Dan Blanks

6 with McGuire Woods for Circuit City.

7          THE COURT:  Good morning, Mr. Foley.

8          MR. FOLEY:  We have 30 items on the agenda this

9 morning, Your Honor, but I believe it will be relatively brief.

10 The weather has certainly helped with resolving things and

11 people not wanting to have to travel to be here today.  If we

12 could just go through the items quickly, Your Honor, on the

13 agenda.

14          Item Number 1 is the Graystone complaint that had

15 been previously filed with respect to certain alleged

16 constructive trust funds under insurance policies that we had

17 with Federal Warranty.  They have withdrawn that complaint so

18 it can be stricken from the docket, Your Honor.

19          THE COURT:  All right.  It will be withdrawn.

20          MR. FOLEY:  Your Honor, Items Number 2, 3 and 4, the

21 National Retail Property, the Holy Oak Crossings LP and the

22 Columbia Plaza matters were all requests for timely payment of

23 lease obligations under 365(d)(3).  We have resolved the

24 matters with all of those landlord parties and have paid them.

25 So those matters can be removed from the docket.

4

1          THE COURT:  All right.

2          MR. FOLEY:  Your Honor, Item Number 5 similarly is

3  the MDS Realty Two matter.  Again, this is a request for

4  payments of certain amounts owed post-petition.  We've

5  reconciled the amounts and have paid the amounts due, and that

6  matter can also be removed from the docket.

7          THE COURT:  All right.

8          MR. FOLEY:  Your Honor, Item Number 6 is our motion

9  for sell down procedures for trading and equities, securities

10  and claims.  We are still working with the committee on

11  language for the form of an order that we may submit with

12  respect to that and we've agreed with the committee to adjourn

13  that matter once again to the March 30th omnibus hearing date.

14          THE COURT:  All right, very good.

15          MR. FOLEY:  Your Honor, Item Number 7 --

16          THE COURT:  Has the response of the Securities and

17  Exchange Commission been resolved with regard to that issue?

18          MR. FOLEY:  Yes, Your Honor, I believe it has been

19  resolved.

20          THE COURT:  Thank you.

21          MR. FOLEY:  Your Honor, with respect to Item Number

22  7, this was our initial motion to reject certain leases and

23  subleases that was filed in November.  There were some

24  responses that we had carried over several months from some

25  sub-landlord -- or sub-tenants.  Mr. Schwartzchild (phonetic)

1 represents several of them.

2        We believe we have resolved the date of rejection

3 with respect to those subleases which will likely be the end of

4 November, and we're going to work with Mr. Schwartzchild on

5 trying to get a stipulation that deals with the rejection date

6 but then preserves any issues relating to any claims those

7 sub-tenants may have with respect to any workout or work around

8 arrangement they dealt with, with the other landlord, whether

9 they had to pay more rent or pay double rent.  All claim issues

10 will be reserved.

11        We are working on that stipulation but he has

12 requested and we've agreed to adjourn once again these matters

13 until the March 30th omnibus hearing date.  But, we hope to

14 submit a stipulation before that.

15        THE COURT:  All right.  Very good, it will be

16 continued to March 30.

17        MR. FOLEY:  Your Honor, the Item Number 8 is the

18 TomTom matter motion for relief from stay to do setoff and

19 recoupment with respect to certain credits and amounts back and

20 forth that are owed.  We are in the process of -- we have a

21 stipulation drafted, but the numbers have not yet been

22 reconciled.  We are trying to reconcile the credits with the

23 503(b)(9) claim.  We hope that we are going to be able to also

24 get that one submitted before the March 30th omnibus hearing

25 date, but until then TomTom has agreed and requested that we

26 carry their motion over to the March 30th date.

6

1           THE COURT:  It will be adjourned until March 30.

2           MR. FOLEY:  Your Honor, Items Number 9 and 10, these

3    are the Motorola matter and the General Instrument matter.

4    These are 503(b)(9) requests for payment of administrative

5    claims.  They have both requested, and we have agreed to

6    adjourn these two matters, 9 and 10, until the April 14th

7    omnibus hearing date, Your Honor.

8           We are in the process of reconciling 503(b)(9) claims

9    right now including filing some objections and we will probably

10   be asking the Court to set an administrative bar date, as well,

11   coming up in the next 60 days or so.  So, they've requested to

12   just put these off until the April omnibus date.

13          THE COURT:  All right.  Very good, they will be

14   continued to April 14.

15          MR. FOLEY:  Your Honor, Item Number 11.  This is our

16   motion with respect to IBM to approve a settlement under 9019.

17   The issue here, Your Honor, they've requested, and so has the

18   committee, that we adjourn this matter until the April 14th

19   omnibus hearing date.  The issue that we're trying to work

20   through is pending a sale of the debtor's intellectual property

21   assets which may have an affect on the IBM claim, the IBM

22   settlement, until that gets resolved, they do not want to go

23   forward with seeking formal Court approval of the 9019

24   settlement motion yet.  So, that's the basis for the request to

25   carry this matter over to the April 14th docket, Your Honor.

26          THE COURT:  All right.  Then it will be continued to

7

1  April 14.

2          MR. FOLEY:  Your Honor, two matters that are not --

3  that are related, but aren't in order on the docket, are Items

4  Number 12 and Item Number 16.  These are the two motions by

5  Plum Choice, one for relief from stay and one for payment of

6  administrative claim.

7          THE COURT:  I thought you said last time we were here

8  that those two items were resolved?

9          MR. FOLEY:  They are resolved in principle.  The only

10 thing that we are trying to do now is reconcile about $200,000

11 worth of administrative claim.  And we would have had that

12 resolved yesterday, but the relevant business people of the

13 client were out of the office yesterday because of the weather

14 in Richmond and snow, so we weren't able to get that last piece

15 reconciled.

16          But, as soon as that is done, we do have an agreement

17 in principle.  We just need to figure out the exact amount that

18 we're going to pay them as part of the settlement.

19          THE COURT:  All right.

20          MR. FOLEY:  So, we will submit a stipulation, Your

21 Honor, on that.  We've requested -- they've requested and

22 agreed because we want to keep the urgency to get this one

23 resolved, although the March 13th hearing date is really only

24 for leases, and we will have some leases sales going forward

25 because we did get some bids yesterday, so there will be a

8

hearing on the 13th of March, we would ask that Items Number 12

and Items Number 16, the Plum Choice matters, be adjourned only

to the March 13th hearing date, again with the hopes that we

will be submitting a stipulation before then so that they won't

be on the docket.

THE COURT:  All right.  Items Number 12 and 16 will

be continued to March 13th.

MR. FOLEY:  Thirteenth, thank you, Your Honor.  Items

Number 13 and 14, these are the AOL motion and the Platform A

motion for payment of administrative claims.  We are

reconciling the numbers with respect to their claims and

hopefully we will resolve those soon.  They have agreed and

requested an adjournment of their motions until the March 30th

omnibus hearing date.

THE COURT:  All right.  That will be granted.  Both

of those matters will be continued to March 30.

MR. FOLEY:  Your Honor, Item Number 15 is the Federal

Warranty motion to compel assumption or rejection.  As we

reported last time we were here, we had a meet and confer in

person with Federal Warranty and their counsel here in Richmond

on the 26th of February.  And as a result of that, we met most

of the afternoon with them, not only do we think we are heading

toward a complete resolution of this particular motion, but

there are ancillary issues and claims relating to a fund that

the debtors may have some rights to in the millions of dollars

1  range that we are hoping to have a global settlement on this

2  but we need some time to document it.  So, Federal Warranty has

3  agreed to adjourn this matter to the March 30th hearing date.

4          THE COURT:  All right.  That will be continued to

5  March 30.

6          MR. FOLEY:  Your Honor, the Item Number 17, this is

7  Congressional North Associates Limited Partners' motion.  We

8  are again trying to work through the reconciliation of the

9  amounts that they allege, and given the timing of when we may

10  reject that lease and any claims that may accrue up until

11  rejection, they've requested that we adjourn their matter to

12  the April 28th omnibus hearing date so that we can deal with

13  all their claims issues at the same time.

14          THE COURT:  April 28.  That will be continued to

15  April 28.

16          MR. FOLEY:  Thank you, Your Honor.  Item Number 18 is

17  the GMS Golden Valley Ranch motion.  Your Honor, again we are

18  trying to reconcile the amounts that they are owed with respect

19  to their lease and they've requested an adjournment and we've

20  agreed to the March 30th hearing date, Your Honor.

21          THE COURT:  All right.  That matter will be continued

22  to March 30.

23          MR. FOLEY:  Your Honor, Item Number 19 again is our

24  motion for lease bidding procedures and we did receive some

25  bids yesterday so we're simply asking that this matter be held

10

1  actually on the March 13th hearing date.

2          THE COURT:  All right.  So, that will be continued to

3  March 13.

4          MR. FOLEY:  Your Honor, Item Number 20 is the Applied

5  Predicted Technologies' request for administrative claim.

6  Again, our client is working on reconciling the numbers that

7  they've alleged that are owed and they've requested and we've

8  agreed to adjourn the matter to the March 30th hearing date.

9          THE COURT:  All right.  That will be continued to

10  March 30.

11          MR. FOLEY:  Your Honor, Item Number 21 is the Polaris

12  matter and we've been in discussions with counsel for Polaris,

13  and this one also has a wrinkle to it that it may resolve

14  itself or the issues may crystalize depending on the timing of

15  rejection of the lease.  They've requested similarly as the

16  previous matter for Congressional North Associates that this be

17  adjourned until the April 28th hearing date.

18          We've agreed with them as the docket reflects that

19  they can file an amended motion by April 14th which will

20  hopefully reflect whatever issues transpire with respect to

21  rejection between now and then.  And we will file a

22  supplemental response by the April 24th date, and hopefully

23  have this matter resolved or heard on the April 28th hearing

24  docket.

25          THE COURT:  All right.  That item number will be

1  continued to April 28.

2       MR. FOLEY:  Your Honor, Item Number 22, this is the

3  motion for relief from the automatic stay by Direct TV.  We

4  request that this matter be carried over to the March 30th

5  hearing date.  However, we are in the process of, we believe,

6  resolving this matter through the return of goods under the

7  Court's existing reclamation procedures order.  And the issues

8  that we have with Direct TV, if enough of product gets returned

9  to them during this time frame, their pre-petition claim will

10 essentially be satisfied which would alleviate the need for a

11 setoff or recoupment and they would pay us the amount that they

12 owe us.  So we hope this matter will just simply sort itself

13 out in the next month.  That's why we ask the Court to carry it

14 over to the March 30th date.

15      THE COURT:  All right.  So it will be continued to

16 March 30.

17      MR. FOLEY:  Your Honor, Item Number 23 on the docket.

18 This was a matter that we reported to the Court at the last

19 hearing that we may need a Court order on depending on whether

20 the committee consented to the alternative form of sale that we

21 conducted through the auction that was -- we had the transcript

22 that was submitted into evidence at the last hearing.

23      The Unsecured Creditors' Committee has consented to

24 that form.  The purchaser, and the committee and the debtors

25 have worked with respect to having the sale notice filed today

12

1   and I believe the purchaser and the committee prefer to have a

2   -- I don't want to call it a comfort order, but sort of a belt

3   and suspenders order that approves the form and certain tweaks

4   to the sale procedure that we have negotiated with them.

5          So, this afternoon we may be in a position to be

6   BOPSing an order to Your Honor that would have to be, if Your

7   Honor is available this afternoon, to be entered today.

8          THE COURT:  Well, I will certainly be here today, but

9   the earlier you can get me the order, the better.

10          MR. FOLEY:  Thank you, Your Honor.  We will try to

11   have something by one or two o'clock at the very latest.

12          THE COURT:  All right.  Then I can certainly get it

13   entered today if I get it in that time frame.

14          MR. FOLEY:  Okay.  Thank you, Your Honor.  Your

15   Honor, Item Number 24.  This is our motion to sell certain real

16   property in Phoenix, Arizona.  And we set it up with a stalking

17   horse bidder, but there is no expense reimbursement or breakup

18   fee associated with the stalking horse bid.  There is a due

19   diligence out by this bidder that they can exercise until

20   tomorrow.  We don't know if they will or not.

21          But, we intend to go forward even if the stalking

22   horse bidder exercises their due diligence out to go forward

23   with an auction in any event.  There's been no other responses

24   to the motion so we would ask the Court to grant this

25   particular procedures motion.

13

1              THE COURT:  All right.  That I am granting.

2              MR. FOLEY:  Thank you, Your Honor.  Your Honor, Item

3    Number 25 again is our fourth omnibus motion to reject certain

4    leases and we have not received any responses.  I don't believe

5    there is any counsel that needs -- wants to address the Court,

6    we would ask the Court to grant that motion.

7              THE COURT:  Any party wish to be heard in connection

8    with Item Number 25 on the docket?

9              All right, that motion will be granted.

10             MR. FOLEY:  Your Honor, Item Number 26 is our motion

11   to extend the exclusive periods to file a plan and solicit

12   acceptance to a plan.  We've worked with the committee on

13   discussing the appropriate time frames and there has been no

14   objection to this particular motion.  If the Court grants the

15   motion, the period by which the debtors will have to file a

16   plan for liquidation will be July 8th and the time period for

17   solicitation will be extended to September 6th.  And I don't

18   believe there's been any responses, Your Honor.  We would ask

19   the Court to grant that motion, as well.

20             THE COURT:  Any party wish to be heard on the

21   debtor's motion to extend the exclusive periods?

22             All right.  That motion will be granted.

23             MR. FOLEY:  Thank you, Your Honor.  Item Number 27 is

24   our motion, Your Honor, with respect to certain IBM point of

25   sale equipment, personal property leases that we are seeking to

1  reject.  There are essentially two master leases with multiple

2  schedules, depending on what equipment is in what stores and

3  distribution centers.  We've made a couple of tweaks to the

4  order simply to allow IBM to file a unitary proof of claim with

5  respect to the various rejections of the leased equipment.

6       They did not contest our view that this lease was --

7  these master leases were severable based upon the schedules.

8  So, the property is essentially being taken out of the

9  locations as we finish with them.  Again, this is point of sale

10 equipment in the various stores.  So, with that, Your Honor, we

11 ask -- we'd like to submit an order.  We don't believe there

12 has been any opposition to this motion.  We'd like the Court to

13 grant it.

14      THE COURT:  Any party wish to be heard in connection

15 with Item Number 27?

16      Okay, that motion will be granted.

17      MR. FOLEY:  Your Honor, Item Number 28 is the DL

18 Peterson motion and counsel for the movant is here.  We have

19 agreed to a stipulation and consent order resolving the motion

20 that we will be submitting later today.  It provides for the

21 payment of various amounts that are due under the lease.  And

22 it also provides a mechanism by which the business people can

23 consult with one another.  The issue here, Your Honor, is we

24 have certain batteries in forklifts that are owned and leased.

25 Sometimes the leased batteries are in the owed forklifts or the

1  owned batteries are in the leased forklifts, and we need -- in

2  the distribution center, so this provides mechanism whereby the

3  parties can sort out what goes where.  And we've -- again,

4  we've resolved it and we'd like to submit the stipulation this

5  afternoon.

6          THE COURT:  This was the issue with -- they were

7  contending that you were selling some of their equipment and so

8  the equipment that was at issue were batteries that were

9  located in property that the debtor owned.

10         MR. FOLEY:  Exactly, Your Honor.  We've agreed

11  obviously in the stipulation that we will not sell their

12  property and over the next seven days we're going to work

13  through trying to sort out getting the right batteries into the

14  right places.

15         THE COURT:  All right.  Very good.

16         MR. KOBBE:  Good morning, Your Honor.  Kevin Kobbe on

17  behalf of the movant.  The batteries are one component of what

18  we're dealing with here.  We've also got vehicles and we've got

19  forklifts, as well.  And so, happily we have resolved the

20  issues with respect to the vehicles and the lifts, it's just

21  the batteries, the smallest component, that we're still working

22  on.

23         THE COURT:  All right.  Very good.

24         MR. KOBBE:  Thank you, Your Honor.

25         THE COURT:  All right.  So, I'll look for that

16

1  stipulation.

2      MR. FOLEY:  Thank you, Your Honor.  Your Honor, Items

3  Number 29 and 30.  If we could take 30 first because I believe

4  that's been partially resolved.  Your Honor, that's the --

5  that's Mr. McCullagh's motion.  Your Honor, this involves both

6  a request to compel payment of certain taxes, as well as

7  attorneys' fees.  We've agreed to pay the taxes for a portion

8  of the request and carry over the issue of whether or not the

9  attorneys' fees are appropriately payable until the March 30th

10 hearing date, provided we get some backup support for the

11 amounts that are allegedly incurred by March 20th.  I believe

12 that is the resolution.

13     MR. McCULLAGH:  That is accurate, Your Honor.  Neil

14 McCullagh for the movant Dentici Family Limited Partnership.

15     THE COURT:  All right.  So, it's been resolved with

16 regard to the rent issue and then the attorneys' fee issue will

17 be carried over to March 30.

18     MR. FOLEY:  Yes, Your Honor.  The issue that we

19 resolved was the taxes.  We will pay the taxes.

20     THE COURT:  The taxes.

21     MR. FOLEY:  Your Honor, I believe that leaves the

22 Cole CC Taunton matter.  I don't know if there is anything left

23 to go forward on that, but counsel is here.  I'll have --

24     THE COURT:  All right.  Very good.

25     MS. PIERRO:  Good morning, Your Honor.  Kimberly

1  Pierro on behalf of the various Cole Capital Partners, the

2  landlords, I believe that they are referred to as the Cole

3  Landlords in the motion, representing the premises located in

4  Taunton, Aurora, Mesquite and Groveland.  And this motion is

5  seeking adequate --

6          THE COURT:  Is this one lease that covers these four

7  locations, or are they four separate leases?

8          MS. PIERRO:  They are four separate leases, Your

9  Honor.

10          THE COURT:  Okay.

11          MS. PIERRO:  The relief breaks down into separate

12  types.  I know that the debtor's response has referenced

13  certain payments that have been made since the filing of this

14  motion.  I'd like to just briefly address those.

15          The first, with regard to the Cole Taunton third

16  quarter 2008 taxes, the debtors have indicated that payments, I

17  believe, have been made for January and February.  These came

18  due February 1st, I believe, and have indicated that they will

19  pay a certain amount per day for however long they are in the

20  premises from March.

21          THE COURT:  And this is the taxes, right?

22          MS. PIERRO:  This is -- yes, these are the taxes.

23  I'm referring specifically to Paragraph A of the motion, Cole's

24  motion requesting relief.  So, with regard to the Cole Taunton

25  third quarter 2008 taxes, as I said, the debtors have indicated

18

1  that they have paid January and February and will pay March for

2  the number of days that they are in the store for March, which

3  is undetermined at this point as they are finalizing the

4  liquidation process.  And what Cole Taunton would request is

5  some sort of assurance of that March payment for taxes.

6      We don't -- it's not indicated in the debtor's motion

7  whether this would be amounts that would be escrowed or exactly

8  how that would be set aside for payment of however many days.

9  So, with regard to that, that seems to be mostly resolved with

10  the exception of some sort of assurance of how exactly is that

11  money being set aside for payment of however many days they are

12  in March -- they are there in March.

13      With regard to the Cole Mesquite --

14      THE COURT:  The issue though being the obligation of

15  the debtors under 365(d)(3) to timely perform their obligation

16  under that lease.  So, it would be payable whenever the lease

17  would say it was due, which I assume is at the end of the

18  month?

19      MS. PIERRO:  For Cole Taunton these are due at the

20  end of the month, but as I am working from what the debtors

21  have indicated that they will promise to do is pay as many days

22  as they are in.  I believe the debtors have objected to paying

23  through the 31st of March saying that they are likely not going

24  to be there to that point.  And the issue that we have with

25  their proposal as set forth in their answer to the motion as to

1  here's a pro rata daily rate for the taxes in March and we will

2  pay as many of those pro rata days as we are there is just --

3  we don't understand where -- if that is going to be money that

4  is specifically set aside in an escrow account, if it will be

5  paid over March so a little more clarity on that.  And I think

6  that would likely resolve the issue, but we would want some

7  sort of clarity.

8          THE COURT:  How about with regard to the March taxes

9  that we carry that over to March 30 and then by that time you

10  can see whether or not you've been paid or how many days the

11  debtor has been there and we can actually have an answer?

12          MS. PIERRO:  So, carry that portion of the third

13  quarter?

14          THE COURT:  The March tax issue with regard to Cole

15  Taunton to March 30 date.

16          MS. PIERRO:  Okay.  And the next issue, and I'm

17  skipping down to our request for relief C regarding the Cole

18  Mesquite taxes for the post-petition 2008 taxes that came due.

19  Again, the debtors in their response have referenced a payment

20  made in December.  So, I think at issue is really the amounts

21  for November 10th through November 30th.

22          THE COURT:  The stub rent period.

23          MS. PIERRO:  And that is how it is being

24  characterized in -- by the debtors.  However, this tax bill

25  came due in the post-petition period.  So, the Mesquite -- it

1  is correct that this particularly -- that's why it is important

2  to know that these were four separate leases -- the Mesquite

3  lease is one that is -- it was a pay in advance lease.

4  However, the tax bill came due post-petition.  So, it is Cole's

5  position that that November 10th, November 30th portion of the

6  taxes would be due and is not part of the stub rent issue.

7          In other words, the tax bill came due.  The debtors

8  paid December and -- but the tax bill came due for November as

9  well and, of course, Cole would want to prorate that for the

10 10th through the 30th of November.  But, it's Cole's position

11 that that is not so much a stub rent issue as it is, again, the

12 tax bill came due post-petition.

13         So, therefore, it is a post-petition obligation that

14 came due and it needs to be paid by the debtors, with regard

15 to, like I said, that one Mesquite portion.

16         THE COURT:  What does the lease say?

17         MS. PIERRO:  As far as what's due when -- when it's

18 due?  Let's see.  It's -- the lease says that the tenant shall

19 pay the real estate taxes within 30 days of tenant's receipt of

20 landlord's statement, accompanied by the tax bill.  So, it

21 indicates a payment by the debtor when the tax bill is received

22 which was received post-petition.  And, as I said, I don't

23 think there is any question on Cole's part that anything prior

24 to November 10th would not be part of that, but that November

25 portion would be due and payable now as a current post-petition

21

1  obligation.

2          THE COURT:  Okay.

3          MS. PIERRO:  Then the remainder of the relief

4  requested by Cole is really in the form of adequate protection

5  that there are 2009 taxes that are going to be due well after

6  the debtor is no longer in business.  I don't think that there

7  is any question about that.  They are currently liquidating and

8  the real concern that Cole has is that the real property taxes

9  operate as a lien and will remain a lien if unpaid.

10         Whereas, the debtor is incurring the benefit of use

11 and possession of the leased properties to conduct the

12 remainder of the liquidating sales, and that there is really no

13 assurance that there is going to be money available to pay the

14 portions of real estate taxes that are currently operating as a

15 lien.  So, you've got a creditor with -- or a landlord with

16 increasingly encumbered property and the debtor enjoying the

17 use of that property and needing the use of that property.

18         And there is no tax bill yet.  There won't be until

19 2010 likely.  At the beginning of the year, we'll know what the

20 2009 taxes are.  But, there is no assurance that even if these

21 are couched as administrative claims that they will be paid

22 given the posture of the case and where the case currently

23 stands.  So, what the Cole Landlords are requesting is some

24 form of adequate protection for payment of those taxes and have

25 suggested a pro rata monthly payment using 2008 as a guide.

1  So, we're not looking -- it's not so much a prepayment of taxes

2  that is not accrued, it is some type of assurance that the

3  money is going to be available to pay off these liens that are

4  on the properties.

5       THE COURT:  Does the lease require that they prorate

6  the payment of taxes over the monthly period?

7       MS. PIERRO:  There's no requirement in the lease for

8  this.  This is really couched as protection of the landlord for

9  liens that are being -- that are attached to the property in

10  the event that there isn't money to pay even administrative

11  claims in the case.

12       And what's happening is, the debtor is using the

13  benefit of the property and if there isn't enough for any --

14  for all of the administrative claims after the liquidation,

15  after all is said and done, then the landlord is left with a

16  lien against his property and would have to shoulder that

17  burden.  And that's not something that the landlord needs to

18  shoulder as much as the debtor needs to provide adequate

19  protection for use of the property.  And we're suggesting that

20  this is one form that that adequate protection can take.

21       I believe that the debtors have gone back and forth

22  in the alternative and talked about administrative expense

23  claims.  And I think that that is couched as another

24  alternative for adequate protection.  It could be an

25  administrative expense claim and that could be the type of

23

1  protection that could be used.  But, that is -- Cole would

2  request something more than that in the chance that the

3  liquidation just doesn't -- isn't able to fund all of the

4  administrative claims against the estate.

5      THE COURT:  Isn't it a bit premature though at this

6  point?  I mean, because we don't know whether your leases are

7  going to be assumed and assigned through the sale process that

8  the debtor has got in place right now, or whether ultimately it

9  is going to be rejected.

10     And if it is assumed, obviously they are going to

11  have to cure and that would be part of your cure amount.  If

12  it's rejected, then you'd be entitled to file the lease

13  rejection damages claim, a portion of it which would be

14  entitled to perhaps administrative priority for these taxes

15  that you are talking about, and isn't that the procedure that

16  we would do?  And, I guess, we might even have to have an

17  estimation hearing or something about the amount of your claim.

18  But, I'm just trying to figure out why we'd decide this right

19  now.

20     MS. PIERRO:  I think, one, I believe the -- I want to

21  say the Groveland lease that debtors have indicated are not

22  part of the bidding.  One of the leases is not part of the

23  bidding process currently so there are -- the other leases, I

24  believe, are involved in the process you've discussed and I

25  believe the auction on that is March 10th.  And that all is a

24

1 possibility and I think it's precisely the uncertainty that

2 shakes the landlords right now is whether -- we don't know if

3 these are going to be bid, and historically speaking there

4 hasn't been a lot of success in that process.

5      So, we don't -- so the landlords are left with a lot

6 of uncertainty with these liens that are currently in place.

7 And again, there is a possibility if it is rejected, then there

8 would be an administrative claim.  But, at the same time, there

9 is an issue of whether or not that actually is going to resolve

10 the matter and that there would be funding available.  And by

11 the time we realize that funding may not be available for all

12 of the administrative claims, it just may be too late.

13      So, the Cole Landlords wanted to act now and put it

14 out there saying, we need some sort of protection for these

15 liens, for payment of these liens that are on the leased

16 property for the use that you are getting for at least the

17 first three months of the year, and that's really what is

18 making them nervous, making them need to request from the Court

19 adequate protection of their interest at this point.  There is

20 a lot of uncertainty with this case, a whole lot can happen.

21      THE COURT:  Let's assume -- and I think I understand

22 what you are saying.  You are concerned that if you file an

23 administrative claim and it's allowed, then that might not be

24 sufficient monies to pay the administrative claim in full.

25      MS. PIERRO:  Right, that is correct.

1         THE COURT:  All right.  And so if I fashion some sort

2    of relief now then you wouldn't have to face that uncertainty.

3         MS. PIERRO:  And it's the uncertainty that we're

4    guarding against, and that's the point of the adequate

5    protection.

6         THE COURT:  Wouldn't that be granting you a super

7    priority of some sort with regard to your administrative

8    status?  Because even if I was to grant you the relief that you

9    are asking for and the same scenario came down where there

10   wasn't enough money to pay all administrative claims, your

11   claim would be subject to disgorgement, wouldn't it?

12        MS. PIERRO:  Well, I think that it is not so much

13   payment on a claim.  It's some sort of form of protection.  And

14   as I said that form can -- it can take -- adequate protection

15   in this instance can take many forms.  Ideally, Cole would like

16   some sort of immediate payment and that's what we're

17   requesting.  But, if that form comes in, the form of some sort

18   of administrative claim, then perhaps that is the solution.

19   But, what they are asking for is relief to the extent that the

20   portion of these tax liens would be reimbursed for the benefit

21   that the debtor is receiving from conducting these store

22   closing sales for this first three months of the year.

23        So, it's not so much a super priority of an

24   administrative claim, as much as it is something to relieve the

25   uncertainty that is just inherent in the situation.

1           THE COURT:  All right.  Thank you.  Let me hear from

2   Mr. Foley.

3           MR. FOLEY:  Your Honor, with respect to the issue of

4   the taxes for the stub, the stub taxes for November, as Your

5   Honor is aware the Court has adopted the accrual method in this

6   case, not the billing date approach.  Our view is there is no

7   distinction between the taxes which are an additional rent

8   obligation.  We are not directly liable for the taxes.  It's a

9   pass-through obligation on a lease as additional rent.

10          So, we've adopted the proration approach.  We've been

11  following that.  We are treating the November stub taxes the

12  same as the November stub rent which is tied up on the appeal

13  that's proceeding hopefully directly to the Fourth Circuit.

14  Your Honor, there is no dispute that we've paid December, we've

15  paid January, we've paid February.  We'll pay March when the

16  taxes accrue and are due.  That's when we'll pay them under

17  365(d)(3) which is the remedy that landlords have.  The issue

18  about --

19          THE COURT:  So, you are saying that those taxes were

20  -- although they accrued in November, they were actually due

21  pre-petition under the terms of the lease?

22          MR. FOLEY:  Yes, Your Honor, because it is a November

23  -- it would be a paid in advance lease, it's not a paid in

24  arrears lease.  There are some landlords that have paid in

25  arrears leases where all the obligations are paid -- become due

1  at the end of the month.  This was a paid in advance lease.

2          With respect to the request for adequate protection,

3  again, I think this is just a -- it's a novel argument, but I

4  don't believe there is any legal support for 363(e) applying to

5  landlords under 365.  I mean, there is certain provisions in

6  the code about personal property leases, but this is

7  essentially a request for us to pay in advance or escrow in

8  advance funds for particular landlords for unaccrued and undue

9  taxes.  There is no reason to carve out these landlords for the

10  super priority, as Your Honor called it.  So, we would ask that

11  that relief be denied.

12          Once we get to March 30th we will know with respect

13  to all of these leases when they were rejected, when we vacated

14  and what our obligation is to pay through what date.  And,

15  again, we've paid everything for December, January, February,

16  March, so I just think this is a little too much nervousness on

17  behalf of the landlord and would request that the Court deny

18  the relief that they are requesting.

19          THE COURT:  All right.  Thank you.  Any other party

20  wish to be heard in connection with this motion?  Ms. Pierro,

21  do you wish to respond to Mr. Foley?

22          MS. PIERRO:  With regard to the stub rent issue, I

23  just wanted to clarify again that the Mesquite lease is a pay

24  in advance lease; however, the tax bill as a whole was received

25  post-petition and that's why December was paid, as well.  So, I

1  think again we are dealing with that particular 20-day period.

2  I just wanted to clarify that for the Court.  But, other than

3  that, unless the Court has additional questions, I have nothing

4  further.

5       THE COURT:  All right.  Thank you.  All right, the

6  Court is going to deny the motion for adequate protection with

7  regard to the payment of the 2009 taxes.  I think that would be

8  granting an administrative super priority, which the Court has

9  previously indicated it would not do.  I find no basis for that

10 in the bankruptcy code and so -- but that's without prejudice

11 to the landlord's filing administrative claims at the

12 appropriate time for these and they can be brought up in the

13 claims process if these facilities are, in fact -- the leases

14 are rejected.

15      With regard to the payment of the taxes for November

16 10 through November 30, the -- I think there is a factual

17 dispute.  Mr. Foley says that it is an advance payment and that

18 these were due as part of the rent.  Ms. Pierro says that they

19 are due when the tax bill is submitted, which would be put in

20 the post-petition period.  And I think I need to look at the

21 lease and make that determination.  Is the lease one of the

22 exhibits to your motion, Ms. Pierro?

23      MS. PIERRO:  I don't believe so, Your Honor.

24      THE COURT:  Do you have a copy of the lease that you

25 can submit to the Court?

29

1          MS. PIERRO:  I can make that available once I get

2  back.

3          THE COURT:  All right.  If you would submit a copy of

4  the lease and the Court will review the lease and make a

5  decision regarding the payment.

6          MR. FOLEY:  Thank you.  That concludes the items that

7  are on the agenda for today.

8          THE COURT:  Okay.  Is there any other business we

9  need to take up then this morning?

10         MR. FOLEY:  There is not, Your Honor.

11         THE COURT:  All right.  I was going to say we don't

12  want to wish for more snow coming forward, but obviously it's

13  had a good impact on today's docket.

14                     * * * * *

15              **C E R T I F I C A T I O N**

16         I, LYNN SCHMITZ, court approved transcriber,

17  certify that the foregoing is a correct transcript from

18  the official electronic sound recording of the proceedings

19  in the above-entitled matter.

20  /s/ Lynn Schmitz                    Date:  March 26, 2009

21  LYNN SCHMITZ

22  J&J COURT TRANSCRIBERS, INC.

23

24

25  (CR)