UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

```
IN RE:                    .      Case No. 08-35653(KRH)
                          .
                          .
                          .
CIRCUIT CITY STORES       .      701 East Broad Street
INC.,                     .      Richmond, VA 23219
                          .
                          .
          Debtor.         .      March  13, 2009
. . . . . . . . . . . ..          12:12 p.m.
```

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:           McGuireWoods LLP
                          By:  DOUGLAS FOLEY, ESQ.
                          9000 World Trade Center
                          101 W. Main St.
                          Norfolk, VA  23510

                          McGuireWoods LLP
                          By:  SARAH B. BOEHM, ESQ.
                          One James Center
                          901 East Cary Street
                          Richmond, VA  23219

                          Skadden Arps Slate Meagher & Flom LLP
                          By:  IAN FREDERICKS, ESQ.
                          One Rodney Sq.
                          Wilmington, DE 19899

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311   Fax No. (609) 587-3599

**APPEARANCES (Contd'):**

For PlumChoice:            Gregory Kaplan, PLC
                           By:  TROY SAVENKO, ESQ.
                           7 East Second Street
                           Richmond, VA  23224

For Glimcher Properties:   Christian & Barton, LLP
                           By:  AUGUSTUS C. EPPS, JR., ESQ.
                           909 East Main Street
                           Suite 1200
                           Richmond, VA  23219

For Cole Landlords:        Kutak Rock, LLP
                           By:  KIMBERLY A. PIERRO, ESQ.
                           Suite 800
                           Bank of America Center
                           1111 East Main Street
                           Richmond, VA  23219

For TSA Stores:            NEIL GOLDMAN, ESQ.

For Carousel Center        Christian & Barton, LLP
Superstore:                By:  MICHAEL MUELLER, ESQ.
                           909 East Main Street
                           Suite 1200
                           Richmond, VA  23219

For East Brunswick         By:  WILLIAM GRAY, ESQ.
Video:

For Walmart:               By:  CHARLES HENDRICKS, ESQ.
                           (Appearing telephonically)

For Cameron Group          Hirschler Fleischer
Associates:                By:  ROBERT S. WESTERMANN, ESQ.
                           The Edgeworth Building
                           2100 E. Cary Street
                           Richmond, VA  23223

For 36 Monmouth Plaza:     Seyfarth Shaw
                           By:  RHETT E. PETCHER, ESQ.
                           975 F Street, N.W.
                           Washington, D.C.  20004

For Sea Properties:        Clement & Wheatley
                           By:  DARREN W. BENTLEY, ESQ.
                           549 Main Street
                           Danville, VA  24543

**APPEARANCES (Contd'):**

| | |
|---|---|
| For Gateway Center<br>Properties III &<br>SMR Gateway III: | Christian & Barton, LLP<br>By:  MICHAEL MUELLER, ESQ.<br>909 East Main Street<br>Suite 1200<br>Richmond, VA  23219 |
| For Whitestone<br>Development: | Christian & Barton, LLP<br>By:  MICHAEL MUELLER, ESQ.<br>909 East Main Street<br>Suite 1200<br>Richmond, VA  23219 |
| For P.C. Richard<br>& Son: | Farrell Fritz, P.C.<br>By:  TED A. BERKOWITZ, ESQ.<br>EAB Plaza<br>West Tower – 14th Floor<br>Uniondale, NY  11556 |
| For Union Square<br>Retail Trust: | Christian & Barton, LLP<br>By:  MICHAEL MUELLER, ESQ.<br>909 East Main Street<br>Suite 1200<br>Richmond, VA  23219 |
| For Burbank Mall<br>Associates: | Williams Mullen<br>By:  PAUL S. BLILEY, JR., ESQ.<br>James Center Two<br>1021 East Cary Street<br>Richmond, VA  23219 |
| For the Committee: | Tavenner & Beran, PLC<br>By:  MS. TAVENNER, ESQ.<br>20 North Eighth Street<br>Second Floor<br>Richmond, VA  23219 |

**J&J COURT TRANSCRIBERS, INC.**

4

# I N D E X

                                                           **PAGE**

**WITNESS FOR THE DEBTOR**
JAMES AVALLONE
  Direct Examination by Mr. Fredericks            55
  Cross Examination by Mr. Bentley                58




| **EXHIBITS** | | **ID.** | **EVD.** |
|---|---|---|---|
| A | Notice of Auction Results | 11 | 11 |
| B | Transcript | 15 | 15 |
| SP-1 | Sea Properties' Bid | 46 | 46 |
| SP-2 | Sea Properties' e-mails | 46 | 47 |

**J&J COURT TRANSCRIBERS, INC.**

5

1           THE CLERK:  In the matter of Circuit City Stores,

2  Incorporated.  Hearings on Items 1 through 3, as set out on

3  debtors' amended agenda.

4           MR. FOLEY:  Good afternoon, Your Honor.  Doug Foley

5  with McGuireWoods on behalf of debtor.  With me at counsel

6  table is Ian Fredericks from Skadden Arps.  Also with me in the

7  courtroom today is Sarah Boehm from our firm and Michelle

8  Mosier who's the CFO of the company, Your Honor.

9           Your Honor, our agenda today, although it's brief, we

10  do have a few matters to cover.  Items Number 1 and 2 I'll be

11  addressing with the Court.  Items Number 3 and the objections

12  will be addressed by Mr. Fredericks and the various landlord

13  counsel that are in the courtroom today.

14          Your Honor, Items Number 1 and 2, if Your Honor

15  recalls, involve the matters relating to Plum Choice.  There

16  were two motions filed by Plum Choice, one for relief from the

17  automatic stay and one to compel payment of an administrative

18  claim.  We have reached a settlement with Plum Choice and we

19  have actually documented that settlement.  It is subject to

20  committee review and non-objection to that.  Their next meeting

21  is next Wednesday the 18th.  And based upon my conversations

22  with counsel for the Committee this morning, they are prepared

23  to make that recommendation to not object to this settlement

24  and stipulation and order that we intend to present to Your

25  Honor after we have that confirmation.

**J&J COURT TRANSCRIBERS, INC.**

6

1          But, just to summarize basically what the terms of

2    this resolution are, Your Honor, we were parties to multiple

3    agreements with Plum Choice.  One was called the Dispatch

4    Agreement in which Plum Choice agreed to perform certain

5    telephone dispatch support and scheduling services to Circuit

6    City's home theater, installation, home delivery and personal

7    services -- personal computer service business units.  That was

8    one agreement, dispatch agreement.

9          We were also parties to the remote services agreement

10   in which we provided -- Plum Choice provided online remote

11   diagnostic services to customers of Circuit City's Firedog

12   technical support services throughout the United States and its

13   territories.

14         The third agreement, Your Honor, that we are parties

15   to with Plum Choice is called the PTS Services Agreement, which

16   is essentially a subcontract relating to the Verizon

17   relationship that we had in which in order to fill our

18   obligation to Verizon, the Verizon contract, Plum Choice was

19   fulfilling our remote technical services obligations and sales

20   support obligations under the Verizon Prime contract.  Your

21   Honor, when the Verizon Prime contract was terminated at the

22   end of last year, that sort of set in motion a lot of issues

23   relating to Plum Choice that we have through negotiations with

24   counsel, have resolved, but there were several claims asserted.

25   One is their pre-petition claim in the approximate amount of

7

1  $1.8 million.  And then they asserted four post-petition

2  claims, one under the services agreement for approximately $1.1

3  million, one under -- two under the PTS services agreement, one

4  called the wind down claim we refer to in the stipulation in

5  the amount of approximately $808,000, and the infrastructure

6  claim in the amount of $1.8 million.  And under the dispatch

7  agreement they asserted a claim of $43,000 for additional

8  amounts that they say were damages caused from the basically

9  deconstruction of the Verizon contract.  All of these amounts

10 were asserted to be administrative priority and we're asking

11 for payment for that.

12        Your Honor, we also happen, as part of our

13 arrangement with Plum Choice, we own -- Circuit City owns

14 approximately 14 percent of the capital stock of Plum Choice,

15 which is subject to a right of first refusal and co-sale

16 agreement under which, if we were ever offered, we offered the

17 stock to a third party, they would be able to match it at

18 whatever that price is.  So, what we've constructed, Your

19 Honor, is we've reconciled the amounts owed through the end of

20 December under the services agreement and we've agreed on a

21 number with respect to that and that number is $1,062,834.84.

22 And that will be paid upon entry of a final order, within three

23 days of entry of a final, non-appealable order.

24        Your Honor, Plum Choice has also agreed to waive all

25 of their administrative claims that they have asserted in

**J&J COURT TRANSCRIBERS, INC.**

8

1   exchange for our return to them of the capital stock that we

2   own in Plum Choice.

3           Your Honor, we've also agreed to preserve whatever

4   rights they have to assert their pre-petition, general

5   unsecured claim and our rights to object to the same, as well

6   as any avoidance actions or Chapter 5 claims that we might have

7   against them.

8           But, in sum and substance, that's the essence of the

9   settlement.  We've, again, discussed all the details and the

10  rationale for it with the Committee.  Committee counsel is

11  prepared to recommend that to the Committee at their next

12  meeting, which is next Wednesday.  We would like, again, being

13  optimistic, that the Committee will not object to the terms of

14  the settlement to be able to take these matters off the docket,

15  and then once we receive confirmation that the Committee does

16  not object to the terms of the settlement, submit the

17  stipulation and order for entry.

18          THE COURT:  That will be approved and the motions

19  will be resolved as you've set forth on the record.

20          MR. FOLEY:  Thank you, Your Honor.

21          MR. SAVENKO:  Your Honor, may I just -- Troy Savenko,

22  enter an appearance on the record for PlumChoice and agree with

23  everything that Mr. Foley's represented.

24          THE COURT:  All right.  Thank you, Mr. Savenko.

25          MR. FOLEY:  Your Honor, that resolves Items 1 and 2.

**J&J COURT TRANSCRIBERS, INC.**

1  That leaves Item 3 on the docket, Your Honor.

2             THE COURT:  All right.  Thank you.

3             MR. FREDERICKS:  Good morning, Your Honor.  Ian

4  Fredericks of Skadden, Arps, Slate, Meagher and Flom, LLP.  We

5  are here today on the debtors' motion to establish lease and

6  bidding procedures and ultimately approve the sale of certain

7  leases of unexpired -- or unexpired leases of real property.

8  For the record today, Your Honor, I have both Michelle Mosier,

9  who is the principal financial officer, as well as the vice

10 president and comptroller of Circuit City, and I also have Jim

11 Avallone, a senior managing director of DJM Realty.  At a point

12 during this presentation I will ask the Court whether or not

13 it's acceptable to proffer their testimony.  I just wanted to

14 let you know they're both present in the courtroom at this

15 point.

16            By way of background, we originally came before the

17 Court on February 13th to seek approval to establish the lease

18 bidding and rejection procedures.  We dealt with one aspect of

19 this, I believe -- the procedures were set up such that leases

20 were broken down into kind of two categories.  There were

21 leases we would receive bids on in February, and there were

22 leases we would receive bids on in March.  Other than perhaps

23 one or two bids from landlords for February leases, there were

24 no other leases that were marketed during that period that the

25 debtors were able to receive bids on.  For the March leases,

1  the bid deadline was originally set as March 5th at 4 p.m.  As

2  you may recall from the last hearing, we asked Your Honor -- or

3  I believe it was the February 25th hearing -- we asked Your

4  Honor to move up that deadline after consultation with DJM and

5  the Committee to March 3rd, but the debtors could agree to

6  extend that deadline before or after it expired on a

7  case-by-case basis.

8          With that short presentation, I guess I would at this

9  point like to ask if it's acceptable to proffer the testimony

10  of Michelle Mosier and Jim Avallone.

11          THE COURT:  You may.

12          MR. FREDERICKS:  Ms. Mosier and Mr. Avallone would

13  testify that on or before March 3rd, 2009, at 4 p.m., the

14  debtors received various bids for various March leases.

15  Approximately three-quarters of those bids were received from

16  landlords bidding on their own leases and the other quarter

17  were from third parties.  They would further testify that also

18  before and after the March 3rd deadline, the debtors received

19  requests from certain parties interested in bidding on leases

20  and granted requests -- or, to extend the bid deadline and

21  granted requests on a case-by-case basis.  I believe all

22  requests were granted and the outside date was March 5th, 2009

23  at 4 p.m.  On or before that deadline the debtors received some

24  additional bids.

25          Thereafter, in consultation with the Committee, DJM

1  the debtors, determined which bids constituted the highest or

2  otherwise best bids for purposes of starting an auction, and on

3  March 10th, the debtors held an auction.

4       They would further testify that during the auction

5  there was active bidding on approximately four locations.  The

6  remainder of the locations -- two of the locations were -- I'm

7  sorry -- one of the locations was withdrawn at the auction

8  because the debtors determined that the bid was not an

9  acceptable bid given the circumstances and desire to re-market

10 that particular lease.  All of the landlord bids were accepted

11 as the highest or otherwise best bid presented at the auction,

12 with one caveat.  All of those, and they would testify that

13 with respect to all of those, those were the highest or

14 otherwise best bids presented at the auction.  They would

15 further testify that with respect to locations -- I actually

16 have a chart if it's okay if I hand it up to Your Honor?

17              THE COURT:  Yes.

18              MR. FREDERICKS:  I guess I would like to mark this

19 chart as Exhibit A.  This was the notice of auction results

20 that was put on KCC's website following the auction.

21              THE COURT:  Does any party in the courtroom have any

22 objection to this being received as Exhibit A?

23              (No audible response).

24              THE COURT:  Okay.  It is received.

25              MR. FREDERICKS:  With respect to Store Number 854,

**J&J COURT TRANSCRIBERS, INC.**

1  Ms. Mosier and Mr. Avallone would testify that there was active

2  bidding on this particular location and that ultimately

3  Vanguard Management Services presented the highest or otherwise

4  best bid, which was a bid in the amount of $435,000.  They

5  would further testify that with respect to Store Number 3561

6  this was one bid that was -- this was a situation where one bid

7  had been presented by Best Buy Stores, Inc.  The landlord did

8  not bid on this particular location.  Best Buy bid the final

9  cure amount as determined by the Court or agreement of the

10  parties and that bid was accepted as the highest or otherwise

11  best bid.

12        They would further testify that with respect to Store

13  Number 3663, which is the Gateway Mini Superstore, there was

14  very active bidding between both Best Buy and P.C. Richard &

15  Son, Inc.  On this particular location at the conclusion of the

16  auction, the highest or otherwise best bid was ten and a half

17  million dollars, and that was presented by Best Buy Stores,

18  Inc.

19        They would further testify that with respect to Store

20  Number 3669 this was a location where P.C. Richard & Son, Inc.,

21  was the only bidder for this particular location and that this

22  location was -- the bid price was $100,000.  With respect to

23  Store Number 3670, again, P.C. Richard & Son was the only

24  bidder on this particular location.  After negotiations with

25  the debtors, the parties agreed that this particular bid would

**J&J COURT TRANSCRIBERS, INC.**

13

1  be increased from 100,000 to 110,000.

2         With respect to Store Number 3679, this was a

3  situation where the landlord had credit bid its cure out at the

4  particular time, and other parties had also submitted bids on

5  this particular location.  At the conclusion of the auction,

6  the landlord presented the highest or otherwise best bid which

7  resulted in total consideration of $470,000, a piece of which

8  will be the cure amount and the remainder of which will be in

9  cash consideration.

10        Later on in the presentation I'll address how we're

11 going to deal with the cure amounts.  But, suffice it to say

12 that will be the difference between the cure amount as agreed,

13 or the Court, and $470,000 be paid by them as cash

14 consideration.

15        With respect to Store Number 3690, P.C. Richard & Son

16 again was the only bidder on this particular location, and for

17 this location they bid $250,000.  With respect to 3692, again,

18 P.C. Richard & Son was the only bidder, and on this particular

19 location the bid was $100,000.

20        With respect to 3692 -- I'm sorry -- 3697, this was a

21 location where the debtors had received multiple bids.  After

22 competitive bidding at the auction ultimately the highest or

23 otherwise best bid was presented by P.C. Richard & Son in the

24 amount of $3.3 million.

25        For all of the other locations, except for Store

14

1  Number 805, at the auction the debtors determined that this bid

2  was the highest or otherwise best bid presented at the auction

3  in accordance with the bid procedures and the reservations that

4  were put on the record at the auction.  Following the auction

5  the debtors determined that that bid was simply inadequate to

6  proceed forward with at this hearing, so they withdrew that

7  lease from consideration.  I believe that there is an objection

8  pending today on that and I think we can address that later,

9  but after both Ms. Mosier and Mr. Avallone would testify that

10  with respect to that location the bid was simply inadequate.

11        With respect to Store Number 3699 and 4305, the

12  debtors have agreed to adjourn that until the March 20th

13  hearing.  And the landlords have agreed to waive claims beyond

14  today until the Court ultimately approves or otherwise disposes

15  of those two locations.

16        With respect to all the remaining locations that the

17  debtors are going forward with, Ms. Mosier and Mr. Avallone

18  will testify that the bids presented were the highest or

19  otherwise best bids, that the leases were marketed in

20  accordance with the bidding procedures, that the auction was

21  conducted in accordance with the bidding procedures, that the

22  debtors consulted with the Committee at various aspects of the

23  process, including during the auction, and ultimately consulted

24  with the Committee on which they had presented the highest or

25  otherwise best bid.

Case 08-35653-KRH   Doc 2871   Filed 03/31/09   Entered 03/31/09 15:32:31   Desc Main
Document   Page 15 of 70

15


1           The debtors would testify that with respect to these

2   parties, the debtors have negotiated with the bidders in good

3   faith, there has been no collusion.  That the parties should be

4   entitled to the protections under both 363(m) and 363(n), and

5   that approval of the motion with respect to Location Number 375

6   -- or 852, 854, 859, 3150, 3203, 3207, 3343, 3549, 3561, 3563,

7   3669, 3670, 3679, 3690, 3692, 3697 and 3682(a) -- let me just

8   make sure I got that -- are in the best interest of the estate,

9   should be approved based on an exercise of the debtors'

10  business judgment.  And with that, that would conclude the

11  proffers of those particular two instances, and I would move to

12  admit Exhibit A into evidence.

13          THE COURT:  I don't see 3682(a) on the chart that

14  you've tendered to the Court.  Is that --

15          MR. FREDERICKS:  It's the last location, it's out of

16  order.  I apologize.  It's at the bottom.

17          THE COURT:  I see it.  Very good, thank you.  Does

18  any party wish to examine either of these two witnesses?

19          (No audible response).

20          THE COURT:  All right, the proffer will be accepted.

21          MR. FREDERICKS:  Okay.  Additionally, Your Honor, I

22  have here a transcript of the results of the auction, and at

23  this time I would -- there was a court reporter present at the

24  auction, and at this time I would move the admission of the

25  transcript into evidence.

**J&J COURT TRANSCRIBERS, INC.**

16

1          THE COURT:  Any objection?  Okay, it will be received

2     as Exhibit B.

3          MR. FREDERICKS:  Exhibit B.  Thank you, Your Honor.

4          With that, Your Honor, I think it probably makes

5     sense to proceed, I guess, in two ways.  First, there were some

6     objections to the motion relating to rejection of certain

7     leases.  With respect to those objections, with some of the

8     objectors we agreed prior to the hearing to adjourn until March

9     20th.  We would propose adjourning the remainder of them until

10    March 20th, try to work them out.  To the extent they can't be

11    worked out, we'd come back on the 20th.  And unless a party has

12    an objection or the Court has an objection, we'd like to

13    proceed that way.

14         THE COURT:  That will be fine.  Just so that we have

15    it on the record, which objections now are we adjourning under

16    that procedure?  You've got them listed in your proposed agenda

17    A through Q.

18         MR. FREDERICKS:  This would be letter E.

19         THE COURT:  All right.  So, that E will be continued

20    to the 20th.

21         MR. FREDERICKS:  This would be letter H, and this

22    would be letter M.

23         THE COURT:  All right.  And that's with the consent

24    of those -- or do you wish to be heard on that, sir?

25         UNIDENTIFIED SPEAKER:  I didn't understand.  Did you

**J&J COURT TRANSCRIBERS, INC.**

1  say M as in Mike or N as in November for the last one?

2          MR. FREDERICKS:  M as in Mike.

3          UNIDENTIFIED SPEAKER:  Thank you.

4          THE COURT:  All right.  Thank you.  Mr. Epps, do you

5  wish to be heard with regard to this?

6          MR. EPPS:  Your Honor, with regard to Objection M --

7  A.C. Epps Jr., on behalf of Glimcher Properties -- and Mr.

8  Fredericks' suggestion is perfectly acceptable.  Thank you.

9          THE COURT:  All right, very good.  Ms. Pierro?

10         MS. PIERRO:  Kimberly Pierro on behalf of the Cole

11 Landlords.  Under Subsection (8), we have no objection to

12 continuing this to March 20th to try and work it out.

13         THE COURT:  All right.  Thank you.

14         MR. GOLDMAN:  Good afternoon, Your Honor.  Neil

15 Goldman for TSA Stores, which is Item E.  We have no objection

16 to continuing to the 20th.  I would only note that I have not

17 -- I didn't get contact from debtors' counsel and would have

18 preferred to have heard from them about the request.  But, we

19 have no objection.

20         THE COURT:  All right, very good.  Thank you.

21         MR. FREDERICKS:  I apologize for that, Your Honor.

22 The debtors could go -- I mean, the debtors are prepared to go

23 forward today, you know, if he wants to.  It's been a very

24 hectic couple of days dealing with the assumption of

25 assignments and I apologize to counsel.  If he'd prefer to go

18

1  forward today, we can do so at the end of the hearing.  It's

2  entirely up to him.

3       THE COURT:  Mr. Goldman, since you are here today and

4  have been inconvenienced in that regard, if you want to proceed

5  on your objection today, the Court will be pleased to take it

6  up.  If you would prefer to have it continued to the 20th to

7  try to work it out though, the Court will continue it.  I'll

8  leave that up to you.

9       MR. GOLDMAN:  I'm willing to continue it, Your Honor.

10       THE COURT:  All right, thank you, sir.

11       MR. FREDERICKS:  And again, my apologies to the Court

12  and to Mr. Goldman regarding not contacting him prior to the

13  hearing.

14       THE COURT:  Mr. Mueller?

15       MR. MUELLER:  Good morning -- or, good afternoon,

16  Your Honor.  Mike Miller on behalf of Carousel Center

17  Superstore with respect to this particular proceeding right

18  now.  I was not sure.  Is 3150 being continued to the 20th?  Is

19  that one of the stores that's being continued to the 20th?

20       THE COURT:  Right now we're only dealing with the

21  objection of TSA Stores, the objection of Cole, Taunton

22  (phonetic) and the unlimited objection of Glimcher Properties.

23       MR. MUELLER:  All right.  The reason I ask, Your

24  Honor -- and perhaps I can just have a second with Mr.

25  Fredericks.

**J&J COURT TRANSCRIBERS, INC.**

1                    (Off the record conversation)

2            MR. MUELLER:  I apologize, Your Honor.  Thank you.

3            THE COURT:  All right.  Thank you.  All right, so,

4    Mr. Fredericks, then what we've done is we've resolved on the

5    objections E, H and M by continuing each of those matters to

6    the Court's 20th, March 20 docket.

7            MR. FREDERICKS:  Yes, Your Honor, that's correct.

8            THE COURT:  All right.

9            MR. FREDERICKS:  Okay.  Turning to, I guess matter A

10   first.  Well, let me, I guess, give a little bit of background

11   of the way that we're trying to do this with the particular

12   orders.  What we've done in the order is set up a procedure to

13   address the cure objections.  As I understand it, there are no

14   objections, and I'm sure someone will correct me if I'm wrong,

15   there are no objections to adequate assurance of performance

16   for the bidders that are non-landlord bidders.  So for those

17   particular locations I believe the only issues, if there are

18   any, are issues with respect to cures.  And I believe those are

19   the objections that are pending before this Court.

20           What we have set up in the order to do is what I've

21   seen is fairly typical in these types of orders is to set up an

22   undisputed and a disputed cure amount and to pay the undisputed

23   cure amount within a specific number of days -- in this

24   instance, five business days -- to the landlord, and to set up

25   an escrow with the undisputed piece, which will be released to

1    either the debtors or the landlord after agreement of the

2    parties or resolution or an order of the Court, a final order

3    of the Court.

4           So, that's why these are all listed as status

5    conferences.  Today we'd propose to go forward on -- the 20th

6    is the day that we would propose.  I don't believe we got an

7    opportunity speak with all the landlords about whether or not

8    that date works for them.  We're happy to negotiate a date

9    that's mutually acceptable.  If the 20th works, we'd like to

10   use that particular date.

11          So, those are the objections I think that we're

12   dealing with here today.  The way that the order is set up is

13   that the order -- that upon entry of the order, the debtors are

14   deemed to have cured their obligations in accordance with

15   paying this undisputed amount within five days and paying the

16   undisputed, or escrowing the undisputed amount within five

17   days.  That cure -- with that, the debtors are released from

18   any further liability and the landlord can't go back against

19   the assignee for any liability.  Because that's effective on

20   the entry of the order and the debtors, and yet the debtors

21   aren't paying or escrowing until five days thereafter, we have

22   put in a provision that provides that a landlord can come back

23   and enforce the rights to the extent the debtors don't comply

24   with those particular obligations, they can enforce those

25   obligations against the debtors.

**J&J COURT TRANSCRIBERS, INC.**

1          The debtors have every reason to believe they will be

2   able to comply with those, but that's just to make it so that

3   we can close with these particular assignees, the assignment

4   can be effective as of the date of the closing and you know,

5   all defaults are cured under the lease, et cetera.  So that's

6   the way that we've structured it in the particular order.

7          Now with respect to most of these agreements --

8          THE COURT:  You're saying particular order.  You

9   anticipate a separate order for each one of these locations?

10         MR. FREDERICKS:  Yes.  And for -- the way we've done

11  it is, some landlords have asked for termination agreements,

12  some landlords have asked for assumption and assignment

13  agreements to their designee, so we're doing a separate order

14  with respect to each one of these particular locations, and

15  then with the assignees that are taking, the third party

16  assignees, we've also done separate orders with those.  For the

17  most part, we have -- we circulated all those orders either

18  Wednesday, late Wednesday night or early Thursday morning, with

19  the exception of one particular landlord and I'm sure we will

20  address this here today, too.  Every landlord has gotten back

21  to us with comments to the extent they have any, and I believe

22  with a few exceptions we have arrived on final language with

23  respect to the termination agreements and with respect to the

24  proposed forms of order.  To the extent that we haven't yet,

25  we'll continue to negotiate with those parties following the

22

1  hearing and hopefully arrive at a consensual resolution on

2  language in those particular agreements and those particular

3  orders.

4         With respect to -- so I guess with that, Your Honor,

5  I would turn it over to the objectors and their particular

6  objections and I think we can address them on a one off basis.

7         THE COURT:  All right.  And this applies then to all

8  of the other lettered objections that are on the docket for

9  matter Number 3?

10        MR. FREDERICKS:  Yes.  The first objection is the

11 objection of Madison Waldorf, LLC, Objection Letter A.  I don't

12 know if counsel's here or not.

13        THE COURT:  All right.  Does anybody wish to be heard

14 in connection with the objection of Madison Waldorf?

15        MR. EPPS:  Your Honor, can we have a moment with Mr.

16 Fredericks?

17        THE COURT:  Yes.

18             (Off the record conversation)

19        MR. FREDERICKS:  I think that what -- if there's no

20 objection or if they're not here pressing the objection, we're

21 certainly not moving forward to resolve their cure today.  I'll

22 communicate with counsel to see whether or not the 20th works.

23 And if it doesn't work, we'll agree on another date.

24        THE COURT:  All right.  So, as I understand it then,

25 with regard to Item A, I'm approving -- you're asking me to

1 approve the assumption and assignment of this lease with the

2 understanding that you will cure the undisputed portion of the

3 cure amount within five days.

4          MR. FREDERICKS:  Yes.

5          THE COURT:  And that the disputed portion of the cure

6 amount is going to be set down for a hearing on March 20 to

7 address that.  But, if that time is inconvenient, that you'll

8 set it for another time with the counsel with the landlord to

9 address the disputed amount of the cure amount, that the

10 disputed amount will be put into an escrow and will not be

11 released to either the debtor or to the landlord until such

12 time as the parties either agree or the Court so orders.

13          MR. FREDERICKS:  That's correct, Your Honor.

14          THE COURT:  Okay.  I think I understand that then.

15 Any party wish to be heard in connection with that procedure

16 with regard to Madison Waldorf?

17          (No audible response).

18          THE COURT:  Okay, that will be -- for Item A then

19 that will be approved.

20          MR. FREDERICKS:  With respect to Item B, the

21 objection of East Brunswick, we would propose to treat that one

22 similarly.

23          THE COURT:  All right.  Any counsel here for East

24 Brunswick?  Mr. Gray?

25          MR. GRAY:  Good afternoon, Your Honor.  William Gray

**J&J COURT TRANSCRIBERS, INC.**

24

1   for East Brunswick Video.  Yes, we do agree to it.  I have sent

2   my comments about the order to Mr. Fredericks and we haven't

3   yet resolved those.  I would mention one quick thing that I was

4   concerned about.  The undisputed part, I assume and would argue

5   that that undisputed part should be the difference between --

6   excuse me, Your Honor -- the disputed part, that should be the

7   difference between the undisputed and the amount that we have

8   put in our objection to cure.  We filed a statement that

9   objected to the undisputed part, and so I believe that the

10  disputed escrow would be the difference between those two

11  figures.

12          THE COURT:  I don't know what else it could possibly

13  be.

14          MR. FREDERICKS:  I think that's the way the order

15  provides, Your Honor.

16          THE COURT:  All right.  It's got to be whatever you

17  say it is and he says it is.  To the extent you both agree,

18  that's the undisputed part.  To the extent you disagree, that's

19  the disputed part.

20          MR. GRAY:  Correct, correct.

21          THE COURT:  Okay.

22          MR. GRAY:  I didn't think the order was that clear on

23  that.

24          THE COURT:  Okay.

25          MR. GRAY:  But, otherwise, the continuance to the

**J&J COURT TRANSCRIBERS, INC.**

1  20th should be okay.

2            THE COURT:  All right.  Very good.

3            MR. FREDERICKS:  With respect to this location, and I

4  guess with respect to all the P.C. Richard & Son locations,

5  there is one issue, Your Honor.  P.C. Richard is prepared to

6  close today and if we can get orders docketed today, and I'm

7  not sure what the remaining language issues are, but we did

8  bring redlines over to the Court to address these kind of

9  issues with landlords.  If P.C. Richards were to close today,

10 it would result in approximately $3.8 million coming into the

11 estate today.  They're here, they're prepared to close and so

12 there is going to be one issue where one landlord may have an

13 objection to that.  So, I think we can deal with that later.

14 But, I just wanted to advise the Court that we are going to try

15 to get these particular orders for P.C. Richard to you today

16 and we hope to have orders that are fully consensual.  To the

17 extent they're not, we'll certainly advise chambers of those

18 particular issues that are in dispute.

19           THE COURT:  All right.  And let me advise counsel of

20 just a potential problem is that we've had it on our website

21 for some time now, we've noticed, everyone, that we're doing an

22 upgrade to the ECF computer system this weekend, so the system

23 goes down at five o'clock.  There have been certain procedures

24 that the Clerk's Office has implemented about closing out the

25 day early today in order to accomplish that.  If you can get to

1   me an order that I can sign by three o'clock today, I have no

2   problem making sure that it gets docketed today.

3           MR. FREDERICKS:  Okay.  That would be our goal, Your

4   Honor.

5           THE COURT:  Okay.

6           MR. FREDERICKS:  I appreciate the Court accommodating

7   that for us.

8           THE COURT:  Okay.  So, we've taken care of then,

9   Items A and B.  Are both A and B orders that I'm going to be

10  looking for, trying to get entered today?

11          MR. FREDERICKS:  Let me just see.  I'm not sure which

12  location A relates to.  I apologize for that, Your Honor.

13          THE COURT:  B is one of them.

14          MR. FREDERICKS:  So, then I believe, if it is matter

15  A, I'll certainly advise the Court as soon as I figure that

16  out.  But, definitely with respect to matter B.

17          THE COURT:  All right.

18          MR. FREDERICKS:  With respect to matter C, which is

19  the objection of 444 Connecticut Avenue, LLC, this is a P.C.

20  Richard location, Store Number 3690.  Again, we propose to

21  treat the cure the same way as we previously described it.

22          THE COURT:  All right.  Does anyone wise to appear on

23  behalf of 444 Connecticut Avenue?

24          (No audible response).

25          THE COURT:  All right.  That procedure will be

1  approved, as well.

2  MR. FREDERICKS:  With respect to Matter D, which is

3  the objection of Joe E. Tetters (phonetic).  We propose to

4  treat that particular objection the same way.

5  THE COURT:  Is counsel here on behalf of Joe G.

6  Tetter?

7  (No audible response).

8  THE COURT:  All right, that procedure will be

9  approved with regard to that location, as well.

10  MR. FREDERICKS:  With respect to letter F, which is

11  Walmart's cure objection.  This is a credit bid, so I think

12  that there will not be an escrowing.  Ultimately, it will just

13  be a determination of what the appropriate credit bid is and I

14  can advise the Court that I've been in discussions with counsel

15  for the landlord throughout yesterday and today.  There may or

16  may not be some significant issues to resolve, but we can

17  certainly do so at the March 20th hearing subject to counsel's

18  availability.

19  THE COURT:  All right.  So, we're not approving the

20  assumption and assignment of this lease today, all we're doing

21  is carrying it over until the 20th to determine the appropriate

22  cure amount and then we'll deal with it, is that what you're

23  proposing?

24  MR. FREDERICKS:  I think -- yes, I mean, I think that

25  we would still like to have -- yes, we can adjourn the whole

1    thing.   I think that makes the most sense, Your Honor.

2           MR. HENDRICKS:   Your Honor, if I may, Chuck Hendricks

3    on behalf of Walmart Stores and Walmart Stores, Inc.

4           THE COURT:   Yes, Mr. Hendricks.   I approved your

5    appearance today by telephone and you may proceed.

6           MR. HENDRICKS:   Thank you, Your Honor.   I'm advised

7    by my client, and I know Mr. Fredericks has been negotiating

8    with another attorney for the landlord on this matter, but I'm

9    advised that the form that was sent by Mr. Fredericks this

10   morning is acceptable to Walmart and I think it is a final cure

11   amount credit bid and I don't believe there should be any

12   further issues on that.

13          MR. FREDERICKS:   With that, Your Honor, then I guess

14   we would seek approval of it today and I guess based on that

15   the objection would be resolved.

16          THE COURT:   Okay, it will be approved.

17          MR. HENDRICKS:   Thank you, Your Honor.

18          THE COURT:   Thank you, Mr. Hendricks.

19          MR. FREDERICKS:   The next objection would be the

20   objection of the Cameron Group Associates, letter I.

21          THE COURT:   What are we doing with G?

22          MR. FREDERICKS:   I'm sorry, G, I skipped over it, I

23   apologize.   The limited objection of -- I apologize that it

24   doesn't say in the title either -- again with letter G, we

25   propose to treat it the same way.

**J&J COURT TRANSCRIBERS, INC.**

1              THE COURT:  According to the docket you say you've

2    resolved this matter with counsel.

3              MR. FREDERICKS:  Oh, I apologize, Your Honor.  Yes,

4    this matter has been resolved.  I do recall this one now.

5              THE COURT:  Okay.

6              MR. FREDERICKS:  Sorry for the confusion, Your Honor.

7              THE COURT:  All right.  So, the Court will note that

8    that's been resolved.  Okay.

9              MR. FREDERICKS:  The next one, I guess, would be

10   letter I, which is the Cameron Group Associates cure objection

11   and we propose to treat this one the same way that we had

12   treated the others.  And obviously to the extent it's a

13   landlord bid, there won't be an escrow, but we'll ultimately

14   determine on what the appropriate credit bid amount should be.

15             THE COURT:  All right, very good.  Do you wish to be

16   heard?

17             MR. WESTERMANN:  Briefly, Your Honor, good afternoon.

18   Robbie Westermann on behalf of the Cameron Group.  I also have

19   Mr. Andrew Brumbee (phonetic) on the phone who was admitted pro

20   hac vice who's just listening in.  Actually, I believe this is

21   one where Best Buy was the successful bidder at the auction.  I

22   understand from the negotiations, we're very close on both the

23   disputed and the undisputed cure amount figures, as well to the

24   form of the proposed order.  So, we are fine with approving the

25   assumption and assignment and continuing the cure hearing to

1  next Friday.

2           THE COURT:  All right, very good.

3           MR. WESTERMANN:  Thank you.

4           THE COURT:  So, the procedure will be approved as to

5  Item I, as well.

6           MR. FREDERICKS:  Yes, and as I recall, that order

7  will differ slightly.  The way that that -- and I thank you,

8  counsel, for refreshing my memory -- with respect to that

9  location, Best Buy had credit -- had bid the cure amount as

10 ultimately determined by the Bankruptcy Court or the landlord.

11 So, with that, I think the way that the order will work is Best

12 Buy will be the one that will be paying an undisputed or

13 disputed piece, but obviously to the extent they resolve it

14 there will be no disputed piece.  So, it won't be the debtors

15 with that obligation, it will be Best Buy.

16          THE COURT:  All right, very good.

17          MR. FREDERICKS:  The next objection is that of

18 Burbank Mall Associates.  It's letter J.

19          THE COURT:  Mr. Bliley?

20          MR. BLILEY:  Good afternoon, Your Honor.  Paul

21 Bliley, I represent Burbank Mall Associates.  The big issue

22 here was we didn't know who the assignee was going to be,

23 they're creating a new entity for that.  I did e-mail them the

24 information this morning.  This is a credit bid, we objected to

25 the cure amount, but since it's a credit bid, it's probably

1  moot.  So, I think we can -- I think the order will be

2  approved, and I don't think there's any reason to carry this

3  over.

4            THE COURT:  So, I should just enter this as moot?

5            MR. BLILEY:  Well, I think the cure amount would be

6  moot.

7            THE COURT:  Your objection?

8            MR. BLILEY:  Correct.

9            THE COURT:  Okay.

10           MR. BLILEY:  Your Honor, also, I did not file a

11 formal objection of another client which is CC Investors, 1997-

12 4, which is location 3343.  The main objection we had there

13 was, the way the auction was explained is that the debtor had

14 the right to withdraw the bid anytime before today.  The debtor

15 hasn't done that.  We could object today orally to the cure

16 amount, but again, this is another credit bid amount I think

17 that's going to be moot.  I'm working on the order with the

18 debtor, I don't think I'll have any problem.  It's not on the

19 docket, so there's no reason to carry it over, but I think it

20 will be resolved.

21           THE COURT:  All right, thank you, Mr. Bliley.

22           MR. BLILEY:  Thank you, sir.

23           THE COURT:  The Court's going to note that that's

24 been resolved as moot.

25           MR. FREDERICKS:  Okay.  The next objection would be

1 letter K, which is 36 Monmouth Plaza, LLC.

2          MR. PETCHER:  Rhett Petcher, Your Honor, Seyfarth

3 Shaw for 36 Monmouth Plaza, LLC.  I believe actually that

4 during the early part of this hearing we reached an agreement

5 in principal on both the order and the cure amounts, so I'm

6 pretty sure that we're going -- that this objection is at this

7 point moot because we will be entering an agreed order.

8          THE COURT:  All right.  So, you want to see it be

9 resolved as moot.

10          MR. PETCHER:  Thank you, Your Honor.

11          MR. FREDERICKS:  Thank you, Your Honor.  The next

12 objection would be objection letter L.  I apologize again,

13 there's no entity name listed there.  To the extent that it

14 hasn't been resolved, Your Honor, and I apologize for just not

15 having that information, we would propose adjourning it to the

16 20th, we can certainly advise the Court if it has been resolved

17 prior thereto or on the agenda for the hearing for the 20th.

18          THE COURT:  I'm advised this is Carousel Center.

19          MR. FREDERICKS:  I believe again this is a credit

20 bid.

21          MR. MUELLER:  That's correct.

22                (Off the record comments)

23          MR. MUELLER:  Your Honor, Mike Mueller on behalf of

24 Carousel Center Superstore.  My co-counsel in New Jersey spoke

25 with colleagues of Mr. Fredericks' this morning, and I believe

33

1 Mr.  Fredericks.  And we have some concerns about the language

2 of the lease termination agreement and the order approving the

3 lease termination agreement.  We're going to make every effort

4 to try and resolve that later this afternoon after this hearing

5 and hopefully we'll have something to -- before the BOPS closes

6 down.

7        THE COURT:  All right.

8        MR. FREDERICKS:  I guess, Your Honor, to the extent

9 that we don't resolve this one, Your Honor, I would actually

10 propose adjourning the whole hearing to the 20th on this one

11 given that it's a lease termination.

12        THE COURT:  All right.  So, just so it's on the

13 docket, I'll continue it to the 20th, but Mr. Mueller, if you

14 would work it out today and we enter the order, then obviously

15 it's taken off the docket, it doesn't need to go forward on the

16 20th.

17        MR. MUELLER:  Yes, sir, Your Honor.  And we have no

18 problem with putting it on the docket for the 20th.

19        THE COURT:  All right, thank you.

20        MR. MUELLER:  Thank you.

21        MR. FREDERICKS:  Thank you.  With that, Your Honor,

22 that brings us up to letter N, which is, I believe we have

23 adjourned letter M as in Michael.  That brings us up to letter

24 N, which is the Sea Properties I, LLC's objection.

25        MR. BENTLEY:  Good afternoon, Your Honor.  Darren

34

1   Bentley of Clement and Wheatley and we're representing Sea

2   Properties I, LLC.  I think it makes sense to continue that

3   forward to the March 20th date and perhaps further out than

4   that if our objection today doesn't moot the issue on the cure

5   amounts.  I would ask, however, since I have about a five-hour

6   round trip drive that I be permitted to participate in that

7   upcoming hearing telephonically if there's no objection on

8   that.

9         MR. FREDERICKS:  I mean I -- can you give us one

10   second, Your Honor?

11         THE COURT:  Yes.

12            (Off the record conversation)

13         MR. FREDERICKS:  That's fine.  All right, thank you,

14   Your Honor.  That works for us.  There is one aspect of this,

15   just so you know, that we will be going forward with later on

16   in the auction or later on in the hearing or we can do it now.

17         THE COURT:  As I understand it there was an objection

18   about whether or not this particular --

19         MR. FREDERICKS:  The auction was --

20         THE COURT:  -- whether you had the right to remarket

21   -- continue to market this property --

22         MR. FREDERICKS:  Yes.

23         THE COURT:  -- after the bid was rejected, and is

24   that what you're asking needs to go forward later?

25         MR. FREDERICKS:  Yes, Your Honor.


**J&J COURT TRANSCRIBERS, INC.**

35

1          THE COURT:  Okay.  So, do you want to -- well, we'll

2     come back to that after we go through all the rest and then

3     we'll come up and address that issue.

4          MR. BENTLEY:  Thank you, Your Honor.

5          MR. FREDERICKS:  Thank you, Your Honor.

6          THE COURT:  All right.

7          MR. FREDERICKS:  Letter O is the objection of Gateway

8     Center Properties III.  This is Location Number 3663.  I

9     believe that what we have agreed to with counsel is, we will

10    continue to work with counsel on a form of assumption and

11    assignment agreement and order and we will try to present that

12    to the Court by Monday.  This is a situation -- this is the

13    lease that results in the largest net return to the estate, ten

14    and a half million dollars.  From the debtors' perspective, the

15    debtors will work, obviously with the landlord and with Best

16    Buy.  But, to the extent that the parties cannot reach an

17    agreement on a proposed form of order in an expeditious manner,

18    we would propose being able to submit competing forms of order

19    to the Court for consideration so that we can close on this

20    location as quickly as possible and the estate can realize the

21    consideration that Best Buys provide.

22         THE COURT:  All right.  And the competing form of

23    order that you would be submitting would be much along the

24    lines that you've outlined with regard to the others about

25    escrowing any disputed portion of a cure amount?

**J&J COURT TRANSCRIBERS, INC.**

Case 08-35653-KRH   Doc 2871   Filed 03/31/09   Entered 03/31/09 15:32:31   Desc Main
Document    Page 36 of 70

36

1          MR. FREDERICKS:  Yes, Your Honor, that's correct.

2          THE COURT:  Okay, very good.  Mr. Mueller?

3          MR. MUELLER:  Good afternoon, Your Honor.  Mike

4   Mueller appearing on behalf of the landlords, Gateway Center

5   Properties III, LLC and SMR Gateway III, LLC.  Mr. Fredericks'

6   representation to the Court is accurate, Your Honor.  We are

7   going to work in earnest to try and get the form of the order

8   approving the assumption, and assignment and sale of the lease

9   in acceptable form so that we can get the order to the Court as

10  quickly as possible so that we can close and the estate can

11  realize the ten and a half million dollars.

12         I will note in that regard, my co-counsel in New

13  York, Mr. Kushnick with the law firm of Greenberg Traurig, who

14  I believe is attending telephonically, sent to Mr. Fredericks

15  and his colleagues revisions to the proposed order at 12:13

16  this afternoon.

17         THE COURT:  All right, very good.

18         MR. MUELLER:  Thank you, Your Honor.

19         THE COURT:  Thank you, Mr. Mueller.  All right, so

20  the Court then will then adjourn the hearing on the cure

21  amounts to March 20 and will anticipate an agreed order as to

22  language for assumption and assignment, and if there is no

23  agreement we'll look for competing forms of the orders and then

24  the Court will enter the one that it thinks is appropriate.

25         MR. FREDERICKS:  Okay.  And to assist the Court with

37

1 reviewing those orders what we'll do is submit a redline

2 comparing the two orders so you can see where the differences

3 are and obviously to the extent the Court has any questions, we

4 would certainly make ourselves available to the Court at its

5 convenience.

6          THE COURT:  That would be most helpful.  Thank you.

7          MR. FREDERICKS:  Thank you, Your Honor.  The next

8 objection is letter O, which is Whitestone Development.  This

9 has similar --

10         THE COURT:  This is Item P.

11         MR. FREDERICKS:  -- I'm sorry, Item P.  This has

12 similar -- there are similar issues here, it's the same

13 landlord.  And the difference here is that P.C. Richard would

14 like to -- and the debtors -- would like to close today.  We've

15 prepared to do so.  The issue -- the primary issue here is that

16 we would like to have the Court docket the order today, but at

17 this point we have not seen counsel's comments to the form of

18 order that was circulated early yesterday morning.

19         THE COURT:  That's because you were in court

20 apparently when you received them.

21         MR. FREDERICKS:  I think they may have sent them

22 while we've been in court.  I haven't obviously checked my

23 Blackberry, but as of 11:30 they had still not turned the

24 document before we came over to court.  I'm not sure exactly

25 how the Court would like to proceed here.  We would --

1          THE COURT:  The Court would proceed the same way as

2  the last one, if it's the same landlord -- well, I'll hear Mr.

3  Mueller -- but, you know, if you can't agree on a form of the

4  order, if you each submit your own with a blackline and get it

5  to me, you know, by three o'clock this afternoon, I will do my

6  best to get that docketed the way I need to get it later today.

7          MR. FREDERICKS:  That would be acceptable to the

8  debtors.

9          THE COURT:  Mr. Mueller?

10          MR. MUELLER:  Thank you, Your Honor.  Good afternoon.

11  Michael Mueller on behalf of the landlord.  It's actually a

12  different landlord, it's Whitestone Development Partners, LP.

13  It just happens to be represented by the same counsel at

14  Greenberg Traurig and Christian and Barton.

15          Your Honor, Mr. Fredericks is correct, we've been

16  unable to agree on the language of the assumption and

17  assignment and sale agreement and the order approving it.

18  We've been working diligently to turn that around as quickly as

19  possible.  However, this landlord is a sophisticated client,

20  they have their own in-house counsel, they have partners that

21  have to look at it.  We received the order Wednesday night, we

22  reviewed it yesterday with our clients, all day yesterday, and

23  I've been working on collating their comments and have been

24  working as diligently as possible to get those comments, as I

25  noted earlier, to Mr. Fredericks.  We are going to make every

 1 effort to try and resolve that by today because we understand

 2 that the purchaser would like to close P.C. Richard today, but

 3 it may not be possible if we're unable to agree on the form of

 4 the order.  And we would ask for the Court's indulgence to

 5 submit that where we will make every effort to do so by three

 6 on a consensual basis today, but we would ask the Court's

 7 indulgence to do so, if necessary, at a date subsequent to

 8 three o'clock today.  Again, we just got the order Wednesday

 9 night and we have been working in all haste to accomplish this.

10         THE COURT:  Mr. Fredericks?

11         MR. BERKOWITZ:  Good morning, Judge.  Ted Berkowitz

12 from Farrell Fritz in New York on behalf of, it's P.C. Richard

13 & Son.

14         THE COURT:  Okay.

15         MR. BERKOWITZ:  Mr. Fredericks had a lot of fun with

16 that name during the auction, had to say it over and over and

17 over again.

18         MR. FREDERICKS:  I think it may be Richard, but,

19 because I've been told subsequently --

20         MR. BERKOWITZ:  It was Richard in 1907.  Judge, this

21 is the problem.  We've had the order and several other orders

22 since Wednesday, as well.  We've turned around our comments,

23 we've looked at all the other landlords' comments, we've gotten

24 our comments back to the debtor.  This is $3.3 million to the

25 estate, which they could have today, accrue the interest,

1   invest it any way they want under 545.  From our point of view,

2   one of the things we bargained for was the ability to get in

3   today.  We want the keys, we want the codes.  We have our

4   workers ready to enter premises and start redoing the stores

5   tomorrow.  And, in fact, the reason why we paid so much for

6   this location in particular is, we need to get in there and

7   keep all of the Circuit City customers that were going to this

8   location so that they could walk in and see another consumer

9   electronics location.  And every day that goes by, and now

10  we're talking not about just today, we're talking about

11  Saturday and Sunday, the two biggest selling days of the entire

12  week.  Of course, we're not going to sell right now, but every

13  day that we're not in there are days we're going to lose.  So,

14  we need to close today so that we can get them the money and

15  get our workers in there.

16          The issue is not between the assignee and the

17  landlord, the issue is a cure issue between the debtor and the

18  landlord.  And so we'll look at their comments, but there has

19  to be some mechanism upon which we can get an order effective

20  today which would permit us to rely upon it, get them the money

21  and they can give us the keys.  The 3 p.m. deadline in my mind

22  is not as important as the deadline upon which Your Honor is

23  leaving for the weekend, because you can sign the order, the

24  order may not get docketed until the ECF system gets back up

25  and running, but it's effective really upon your signature.

**J&J COURT TRANSCRIBERS, INC.**

41

1 So, I guess we need to know your availability so we need to

2 know if we can get in a conference room over at McGuire and get

3 this done today.  Thank you.

4         THE COURT:  Thank you.  Mr. Mueller, we're talking

5 about your objection is to the cure amount, as I read it.  So,

6 why can't there be a mechanism that can be put into place that

7 reserves your rights with regard to cure amount, you know, that

8 escrows it and takes care of it along the lines Mr. Fredericks

9 has recited.

10        MR. MUELLER:  Your Honor, I don't know that there

11 can't be, and I would echo counsel's comments about perhaps

12 there's a way we can submit the order after the three o'clock

13 deadline, if necessary.  The objection to the cure amount --

14        THE COURT:  I'm not as confident as he is that that

15 is effective if it's not docketed.

16        MR. MUELLER:  Okay.

17        THE COURT:  But, that's a different issue.

18        MR. MUELLER:  I understand, Your Honor.  You are

19 correct that there is an objection to the cure amount and I

20 have every confidence that we'll be able to work that out.

21 When we filed the objection to the cure amount, we weren't

22 aware that we were going to be unable to work out the language

23 with respect to the proposed assumption and assignment

24 agreement and the order approving the assumption and assignment

25 agreement.  We were still looking at our comments, we had no

                    **J&J COURT TRANSCRIBERS, INC.**

1  idea whether those comments would be acceptable or rejected by

2  debtors' counsel and counsel for P.C. Richard.  And we're still

3  working through that process.  And in all candor and respect to

4  the Court, Your Honor, one day is not a lot of time to go

5  through a 25-page order that has substantive rights for our

6  client and under due process concerns, we think we should be

7  entitled to make sure that that order provides what we believe

8  it should provide.  We're a party to this proceeding and --

9       THE COURT:  And I realize that, Mr. Mueller.  But,

10 you know, the Court's concern is, I mean, there's nothing

11 unusual about this order, I mean, we've all seen these kinds of

12 orders many, many times before.  The Court's looked at the

13 order, the form of the order.  Nothing jumped out at me as

14 being, you know, unusual about it.  Now, I can understand

15 parties wanting to negotiate language and that sort of thing,

16 but that should be something that we should be able to resolve.

17 And the big issue that you've raised in your objection as to

18 the cure amount, I think that we can protect your client to

19 make sure that you're totally protected and allow this to close

20 today.

21      MR. MUELLER:  I agree, Your Honor, with respect to

22 the cure.

23      THE COURT:  So, what I'm going to do on this one is

24 I'm going to do exactly the same thing we did with the

25 objection on O and that is that I'd like to get a consent order

**J&J COURT TRANSCRIBERS, INC.**

between the two of you by three o'clock today.  If I can't,

then give me your version that you want me to enter and I'll

look at Mr. Fredericks' order and Mr. Fredericks said he'd give

me a blackline between the two and then I'll look at it and

then I'll make a decision today so that we can get it closed

today.

    MR. MUELLER:  Yes, sir, Your Honor.  Thank you.

    THE COURT:  Thank you, Mr. Mueller.

    MR. FREDERICKS:  Thank you, Your Honor.  We

appreciate the Court's consideration in that regard.

    I believe that brings us to the last objection, which

is the objection of Union Square which is also represented by

the same firm.  We have, this is the situation where the

landlord credit bid its cure amount plus cash consideration as

a result of bidding at the auction and we have agreed to push

this, similar to the Gateway Store, until Monday.

    The issue with going beyond Monday from the debtors'

perspective is that it only benefits the landlord to have this

drag on any further, because every day that it drags on the

landlord -- there is further administrative claims.  We've

asked the landlord to agree to consent that beyond Monday to

waive any claims against the estate to the extent that this

cannot be resolved by then.  And the landlord has, at least

prior to the hearing, my understanding was, denied that

request.  So, this would be a similar situation where we would

1  ask to try to work this out by Monday and in the event we

2  cannot, submit the competing form of orders.

3         THE COURT:  That would be fine.  Mr. Mueller, do you

4  want to be heard?

5         MR. MUELLER:  Good afternoon, Your Honor.  Mike

6  Mueller on behalf of Union Square Retail Trust.  Mr. Fredericks

7  is right, we are going to endeavor to submit a consensual order

8  by Monday.

9         THE COURT:  Okay.

10        MR. MUELLER:  And if we are unable to do so, we will

11 submit competing orders as Your Honor suggests.

12        THE COURT:  All right, very good.  Thank you, Mr.

13 Mueller.

14        MR. MUELLER:  Thank you, Your Honor.

15        THE COURT:  That procedure is acceptable to the

16 Court.

17        MR. FREDERICKS:  Okay.  With that, Your Honor, I

18 believe that concludes the objections.  I'd like to inform the

19 Court that we have resolved, that we have completely resolved,

20 as far as form of order, agreement and the like, you know,

21 approximately half of these particular bids.  We are very close

22 on almost all of the rest.  I think there are about -- there

23 are five maybe that are outstanding, including the three that

24 relate to Mr. Mueller's clients.  So, we are hopeful that we

25 can get them over to you today before three, those that are

45

1  done.   In the event we can't, we'll submit those on Monday.

2          THE COURT:  All right, very good.  And I understand

3  we have one other matter we need to take up then, which is the

4  Sea Properties I, LLC objection.  I'm wondering if everybody

5  else might want to be excused so they can go work on the form

6  of the order so that we can get these in to me by three o'clock

7  while we are taking up this matter.  So, that if anybody wants

8  to leave at this point to go and address those kinds of issues,

9  you may do so.

10          (At this time some attorneys exit.)

11          THE COURT:  All right.  Sir, you may proceed on your

12  objection.  This is in relation to Sea Properties I.  This is

13  Objection N on the proposed agenda today.

14          MR. BENTLEY:  Thank you, Your Honor.  And as

15  previously stated, my name is Darren Bentley of Clement and

16  Wheatley and we represent Sea Properties I, LLC.  Your Honor,

17  this is a situation where my client, Sea Properties, is the

18  landlord of a ground lease on a property located in

19  Chesterfield, Virginia.  It is a -- there is a building on top

20  of that property that was put on their subsequent to the ground

21  lease being entered into.  My client is, of course, interested

22  in getting the lease back and terminating that lease.  And so

23  on March 2nd, they did go ahead and submit a defensive bid in

24  writing, Your Honor.  And I have some documents, if there

25  aren't objections from counsel, I'd like to get them put in as

46

1   evidence.  And the first document I'd like to get put in as

2   evidence is the bid, the written bid, that was submitted, Your

3   Honor.

4          THE COURT:  No objection.  Okay, then the Court will

5   receive it.

6          MR. BENTLEY:  And I would move to have that marked as

7   Exhibit A or whatever --

8          THE COURT:  We'll, do it as Sea Properties Exhibit 1.

9          MR. BENTLEY:  Thank you, Your Honor.

10         THE COURT:  Thank you.

11         MR. BENTLEY:  And in that particular bid, Your Honor,

12  we made a credit bid for the final cure amount, which as yet is

13  undetermined, but we estimated at that time as being

14  approximately $56,745 as of the auction date of March 10th,

15  2009.  That's what we estimated that it would be, Your Honor.

16  The following date, Your Honor, we received the statement of

17  bids that was filed in the case that listed all of the

18  properties for which bids had been received at that point, and

19  ours was listed on that list.  So, we followed up with contact

20  to debtors' counsel to confirm that we were, in fact,

21  considered a qualified bid on our lease, and we were told that

22  we were, in fact, considered such.  And I have some e-mails

23  that I received from their law firm, and again, I'd like to

24  submit them into evidence if there aren't any objections.

25                      (Pause)


                    **J&J COURT TRANSCRIBERS, INC.**

1          MR. FREDERICKS:  No objection, Your Honor.

2          THE COURT:  Okay, there being no objection, the Court

3  will receive this as Sea Properties Exhibit Number 2.

4          MR. BENTLEY:  And, Your Honor, just for the record,

5  the first e-mail is a response to an e-mail from me.  It's a

6  response from Jessica Kumar at Skadden Arps on March 9th at

7  6:20 p.m., and in her response to me she states that, "There

8  are no other qualified bidders for Lease 805 at this time."

9          THE COURT:  All right.

10          MR. BENTLEY:  I'd also refer to the other e-mail, and

11  it is a response to my request for information from Kellen

12  Grant (phonetic), also at Skadden Arps.  It's dated March 6th,

13  2009 at 3:33 p.m.  And in that response he states, "We have no

14  other qualified bids on Location 805.  There are no extensions

15  pending.  Your client is a qualified bidder."

16          Now, Your Honor, we looked carefully at the bidding

17  procedure order that was entered on February 19.  We also

18  looked carefully at the supplemental order which basically

19  pushed the bid deadline back to March 3rd, but it also had

20  amended bidding procedures attached to that, that then became

21  the effective bidding procedures for the case.  And I think

22  that's where the rub lies.  Let me give you a little bit of the

23  factual background on this.

24          So, we have a qualified bid out there.  We contact

25  counsel for Circuit City the date the prior to the sale to find

1    out if there's been any other qualified bid because we have not

2    yet received adequate assurance documents and we had not

3    received any notification of any other proposed bids.  And we

4    want to confirm we're the only bid out there and if that's the

5    case, whether we can short circuit the sale process and get a

6    termination prior to the auction.  And the response is that,

7    no, we're going to go ahead and proceed with the auction, there

8    are no other bidders, you're the sole bidder, but we're going

9    to proceed with the auction.

10            So, we employ counsel in New York over at Chadwin and

11   Park and have them appear physically at the auction on the

12   10th, and we also telephonically appear at that auction on the

13   10th.  And it was previously admitted as Exhibit A to this

14   overall hearing today, but I suspect it would be a good idea to

15   introduce it into this segment as an exhibit, as well, unless

16   it's already a part of the larger case.

17            THE COURT:  I assume the transcript is what you're

18   talking about, or the exhibit?

19            MR. BENTLEY:  The results from the lease auction, yes

20   -- actually I'm referring to the results from the lease

21   auction.  I believe that was --

22            UNIDENTIFIED SPEAKER:  Exhibit A.

23            MR. BENTLEY:  -- Exhibit A.

24            THE COURT:  Exhibit A.  It's already an exhibit, so

25   you can rely on Exhibit A.

**J&J COURT TRANSCRIBERS, INC.**

49

1            MR. BENTLEY:  Thank you, Your Honor.  And then I

2  would refer the Court to the third line item and the first line

3  item, Your Honor.  And we heard from Mr. Fredericks earlier on

4  that the first line item, store location Number 232, at least

5  this was my understanding and please correct me if I

6  misunderstood what you stated, the San Mateo Superstore

7  location, that lease was withdrawn prior to the auction.  Okay,

8  805, which is the lease that involves my client was withdrawn,

9  but that was withdrawn after the hammer had fallen.  Okay?  And

10 so unfortunately for my client, they are alone in this.  They

11 are the only lessor or landlord that had a lease, their bid

12 rejected post-auction.

13            So, after the auction -- before we were aware of --

14 before this had been posted, before Exhibit A had been posted

15 on the website at KCC, we contacted them to ask them to send us

16 a copy of the form, lease termination agreement, so we could

17 review it and have our clients endorse it.

18            The first response back was, okay, we'll get it to

19 you, but make sure you understand that it's not going to be

20 final until the Court says it's going to be final.  To which we

21 responded, fine, that's great, go ahead and send it over to us

22 so we can review it.  Just shortly after that we got a second

23 response that said, no, we're not going to send you a lease

24 termination agreement, we're reviewing our options at this

25 time.

50

1              Another day transpired, and then yesterday -- I

2    believe it was yesterday -- I apologize, Your Honor -- two days

3    ago we got confirmation from them in the evening that they

4    were, in fact, not going to consider our bid, at all.  So, in

5    essence, they had rejected our bid post-auction, Your Honor.

6    And in looking at the bidding procedures, a rejected bid is no

7    bid at all, so we believe that this auction went through with

8    no bid at all, which according to the bidding procedures means

9    that they've got to go ahead and reject that lease.

10             I'm going to read some of the specific language from

11   the amended bidding instructions, Your Honor.  The first

12   reference I would make, and I would ask the Court to take

13   judicial notice of this document.  This is the supplemental

14   order under bankruptcy code.  And I have a copy that I can

15   provide to the Court.

16             MR. FREDERICKS:  Your Honor, for the record, it's

17   letter D of the related documents on the agenda.  I don't know

18   if the Court has a green binder, but --

19             THE COURT:  I'll receive it.

20             MR. BENTLEY:  And, Your Honor, the first remarks or

21   sections I'm looking at are on Page 18 of the amended bidding

22   instructions under the heading of, "Selection of Successful

23   Bid."  And, Your Honor, I'm relying upon that section and the

24   definition of successful bid to indicate that my client, in

25   fact, was the successful bidder.

**J&J COURT TRANSCRIBERS, INC.**

51

1           We've heard Mr. Fredericks state that the Creditors

2    Committee had a chance to look at it, DGM had a chance to look

3    at it and they opened the bid stating that we had the highest

4    and best offer.  In fact, we had the sole offer.  And so we

5    were the successful bidder at that auction.  And so that

6    triggers the next thing, Your Honor, which is if the debtor is

7    going to decide not to accept the successful bid and this is

8    very broad and gives the debtors a great bit of latitude, which

9    is understood in a Chapter 11 bankruptcy case, but once it was

10   determined that we were a successful bidder, the only way they

11   could change that was by rejecting our bid.  And I'm looking

12   now at Page 19, the first full paragraph, Your Honor.

13           THE COURT:  And that's where it says they can reject

14   it at any time prior to the entry of the order of this Court.

15           MR. BENTLEY:  Correct, Your Honor.  And then we're

16   going down then to the last paragraph on that same page where

17   it talks about sale hearings, and the last sentence that begins

18   on Page 19 says that if the debtors do not receive any

19   qualified bids for the March lease or leases by the March bid

20   deadline, which they had pushed up on us to March 3rd, then the

21   debtors will proceed with the rejection of such March lease.

22   And that's the situation that we have here.  It's unique

23   because we were the only one that actually went all the way

24   through with the auction and were a successful bidder.  And the

25   only way to get rid of a successful bid is to reject it.  And

52

1  so when they at that point rejected our bid, there was no

2  qualified bidder.  And so they are now required to reject that

3  lease, Your Honor, and that is the crux of the argument, Your

4  Honor.

5       We've already been asked to jump through hoops like a

6  circus dog on this thing, and now they're telling us that they

7  want to continue marketing the property until I don't know

8  when.  I know there's an end date out there of June 8th that

9  they have to do something by June 8th.  But, we've already

10 spent the money and gone through an entire auction process, and

11 now they're asking us to spend the money and go through I don't

12 know how many more auction processes.  If the Court interprets

13 this to mean that they can have 20 auctions on the same

14 property and every time with a successful bidder they can say,

15 nope, we don't like it, we're going to have another auction,

16 we'll have yet another auction until -- and we're going to keep

17 this up until June 8th.  And that can't be the way that this

18 order is set up, Your Honor.

19      I could understand if they would have said before the

20 auction that, look, this is -- we can do better, this is not

21 the highest and best bid that we can draw on this property,

22 let's go ahead and continue the date for the auction, let's go

23 ahead and extend the deadline for the bid on this.  They had

24 already rejected the vast majority of the properties at this

25 point in time.  They only had 22 or maybe 24 properties that

53

1  went to auction.  They certainly could have with regard to the

2  two that they withdrew the lease offers on, they certainly

3  could have, on those two, moved the Court for a new auction

4  date and set out a new proposed deadline for bids, but they

5  didn't do so.  And so once they went ahead and said, we're

6  going forward with the auction, and once they called the

7  auction and once the hammer fell, they had made a choice at

8  that point.  And their remaining options, once that had

9  occurred, was to either accept our bid as the successful bid

10  for whatever we had bid upon, or to reject it outright.  And so

11  that's what we're asking for the Court to enter an order, to

12  sustain our objection on this matter and to order them to

13  either go ahead and sustain our bid as being the successful bid

14  and give us a lease termination agreement on the terms that

15  were agreed upon when the hammer fell, or in the alternative,

16  to reject our successful bid, there is no qualified bidder, and

17  go ahead and reject that lease back to my client.

18        THE COURT:  Your argument necessarily depends on the

19  fact that if they reject a qualified bid, that then this

20  language says that they've never received a qualified bid in

21  the first place, but they did receive a qualified bid, they

22  just decided to reject it.

23        MR. BENTLEY:  Right, Your Honor.  And what I'm saying

24  is that, that can't be -- that interpretation can't be the

25  right interpretation.  To force us to jump through this hoop

Avallone - Direct                              54

1  however -- if they want to have an auction every week, for

2  example, just for sake of argument, if they wanted to have an

3  auction every week and give us a short fuse on when to get our

4  bids submitted, they could drag this out until June 8th the way

5  that things are set up right now, and we could spend thousands

6  upon thousands of dollars in this.  And that's not economical

7  and it certainly, at the end of the day, if there is a higher

8  bidder, they're going to have to pay a whole bunch of more

9  money on this in attorneys' fees and other costs that have been

10 incurred pursuant to this lease.

11        THE COURT:  But, then you'll be made whole at that

12 point, right?

13        MR. BENTLEY:  If that happens, Your Honor.

14 Otherwise, we've got a property that's sitting right now, it's

15 vacant, it's my understanding, the property needs -- something

16 needs to be done with the property, it needs to be flipped.  So

17 there's not just a matter of what we're losing on the ground

18 lease, there's a matter of the value of the property declining.

19        THE COURT:  All right.  Thank you, sir.

20        MR. BENTLEY:  Thank you, Your Honor.

21        MR. FREDERICKS:  Your Honor, this is probably a

22 little bit unconventional, but I think it will help give the

23 Court some context, and Mr. Avallone from DJM is still in the

24 room.  What I'd propose to do is call Mr. Avallone as a

25 witness, reopen his testimony and address some of the factual

**J&J COURT TRANSCRIBERS, INC.**

Avallone - Direct                                    55

1  matters that were addressed by counsel.

2              THE COURT:  You may proceed.

3              MR. FREDERICKS:  At this time the debtors would call

4  Mr. Avallone.

5                JAMES AVALLONE, WITNESS, SWORN

6                      DIRECT EXAMINATION

7  BY MR. FREDERICKS:

8  Q    Good afternoon, Mr. Avallone.

9  A    Good afternoon.

10 Q    Can you just for the record state your name and spell your

11 last name?

12 A    Sure.  My name is James Avallone.  It's A-v as in Victor,

13 a-l-l-o-n as in Nancy, e.

14 Q    And by whom are you currently employed?

15 A    DJM Realty Services, LLC.

16 Q    And what is your title?

17 A    Senior Managing Director.

18 Q    And how have you been involved in the Circuit City lease

19 marketing process?

20 A    I've been the point of contact between the debtor and

21 debtors' counsel and for the marketing of all of the Circuit

22 City properties.

23 Q    And in particular have you marketed what we'll refer to as

24 Store Number 805?

25 A    Yes, I have.

Avallone - Direct                          56

1  Q    And can you tell us a little bit about the lease

2  associated with that store?

3       MR. BENTLEY:  Your Honor, if I may, I would propose

4  an objection to any -- to the relevance of any testimony as to

5  the value of this particular property.  We're talking about a

6  mechanical situation.  The value of the property I don't think

7  is germane to the arguments that I've made, because the issue

8  is really whether or not they followed the bidding procedures

9  or not.  They certainly had opportunities to do other things.

10 But, as far as the value of the property or how it's been

11 marketed, I don't think those are relevant at this point in

12 time.

13      THE COURT:  All right, thank you.  The Court

14 understands the objection to the relevance, but I think that

15 the Court can certainly weigh that at the appropriate time and

16 we'll allow the question.

17      MR. FREDERICKS:  Can you repeat the question, is that

18 possible?  No, okay.

19 Q    I think that the question was, have you marketed the --

20 A    Background about the lease?

21 Q    -- the lease, yes.  Can you --

22 A    Sure.  This is a ground lease in Charlottesville,

23 Virginia.  If I can remember correctly, the building's 45,000

24 and change square feet.  They're paying approximately $235,000

25 a year on a ground lease that is approximately -- I'm guessing

**J&J COURT TRANSCRIBERS, INC.**

Avallone - Cross/Bentley                           57

1  right now, I don't have it with me -- ten years old, or so.  My

2  understanding, there is also a purchase option that is part of

3  this contract.  So, the debtor feels, and in consultation with

4  DJM, we feel that the offer that was submitted by the landlord

5  is an inadequate offer for us to proceed to a termination.

6  Q    In particular, with respect to the ground lease, is there

7  a structure currently on that location?

8  A    Correct.

9  Q    And who -- do you know who put that structure --

10 A    If it was a ground lease, and my assumption would be that

11 Circuit City would have built the building and the landlord

12 just owns the land.

13        MR. BENTLEY:  I'm going to object to any assumptions,

14 Your Honor.

15        THE COURT:  Objection sustained.

16 Q    With respect to the building and the ground lease, do you

17 know whether or not at the end of the ground lease term, who

18 the building goes to?

19 A    I can only assume.  I don't have a copy of the contract in

20 front of me.  Typically, in a ground lease, the building would

21 revert back to the landowner.

22 Q    And, Mr. Avallone, were you -- just give me one second.

23        MR. FREDERICKS:  May I have one second, Your Honor?

24                    (Pause)

25        MR. FREDERICKS:  I don't believe I have any further


**J&J COURT TRANSCRIBERS, INC.**

Avallone - Cross/Bentley                          58

1   questions for Mr. Avallone.

2              THE COURT:  Okay, thank you.  Any cross examination

3   for this witness?

4              MR. BENTLEY:  A couple questions if I may, Your

5   Honor.

6              THE COURT:  Yes, you may.

7                      CROSS EXAMINATION

8   BY MR. BENTLEY:

9   Q    Good afternoon, Mr. Avallone.  It's my understanding, and

10  correct me if I'm wrong, you had some involvement in

11  determining the value of this property prior to the auction?

12  A    Yes.

13  Q    And you were in direct contact with counsel for Circuit

14  City, is that correct?

15  A    With respect to?

16  Q    With respect to the value of the property.

17  A    Correct.

18  Q    Did you also have discussions -- you also had discussions

19  pertaining to the value of the property with the Creditors'

20  Committee or representatives from the Creditors' Committee?

21  A    Indirectly.

22  Q    Okay.  And so prior to following through with the auction,

23  you -- did you feel that our bid was inadequate at that time of

24  the Sea Properties' bid was inadequate prior to the auction?

25  A    Prior to the auction, we felt that your bid would not be a

Avallone - Cross/Bentley                               59

1  bid that we should accept and we should withdraw the property

2  from the auction and not reject your bid.

3  Q    But, you went through with the auction.

4  A    But just withdraw -- we went through with the auction, but

5  we withdrew your property from the auction.

6  Q    You went through with the auction and the hammer fell on

7  our bid?

8  A    The hammer did not fall on your bid.  We withdrew the

9  property from the auction on your particular location.

10 Q    Let me refer you back.

11        MR. BENTLEY:  Do you have Exhibit A?

12 Q    There were two properties that the lessees were withdrawn

13 on, and testimony -- or argument earlier was that the lease was

14 withdrawn prior to the auction on store location Number 232,

15 which was the San Mateo Superstore.

16 A    That was not withdrawn prior to, that was withdrawn during

17 the auction.

18 Q    Withdrawn during the auction before the hammer fell?

19 A    The bids on that location were inadequate so we withdrew

20 the property and did not move forward with the assignment or

21 termination of that lease.  We determined that the value was

22 greater than what was -- than what we were receiving at the

23 auction.

24        MR. BENTLEY:  I have no further questions.

25        THE COURT:  Thank you.  Any follow up?


                    **J&J COURT TRANSCRIBERS, INC.**

1            MR. FREDERICKS:  No, Your Honor.

2            THE COURT:  Does the Committee have any questions for

3    this witness?  Ms. Tavenner, do you wish to examine this

4    witness?

5            MS. TAVENNER:  No, Your Honor.

6            THE COURT:  You may step down, sir.

7            THE WITNESS:  Thank you.

8            MR. FREDERICKS:  With that, Your Honor, I guess I

9    would proceed to brief oral argument.

10           THE COURT:  Can you direct the Court to where in the

11   transcript that you handed up as Debtors' Exhibit Number B, the

12   auction of this location occurs?

13           MR. FREDERICKS:  Yes, Your Honor.  It is on Page --

14   what's Page Number 136 in the upper right-hand corner -- I'm

15   sorry, Page Number 137 it starts.

16           THE COURT:  Does Mr. Bentley have a copy of the

17   transcript?

18           MR. BENTLEY:  I do not, Your Honor.  I have not yet

19   seen a copy of the transcript.  I assume that one's been

20   created, but I have not yet seen it.

21           MR. FREDERICKS:  Here you go.

22           MR. BENTLEY:  Page 137?

23           MR. FREDERICKS:  Yes.  As the transcript will

24   reflect, and it is, the lease was not withdrawn during the

25   auction, contrary to Mr. Avallone's testimony.  As the record

**J&J COURT TRANSCRIBERS, INC.**

1   reflects, the bid was accepted, and this goes slightly to oral

2   argument.  The bid was accepted as the highest or otherwise

3   best at the auction.  There was a caveat put on the record

4   there consistent with the bid procedures that the debtors

5   reserve the right to reopen the auction, that the debtors

6   reserve the right to not proceed with Court approval, and that

7   the debtors -- and with that it was all consistent with their

8   fiduciary duties in the best interest of their estates and

9   after a consultation with the Committee.  And, in fact, that

10  particular reservation was put on the record with respect to

11  every lease at the auction.

12          THE COURT:  I've reviewed the transcript.

13          MR. FREDERICKS:  After consulting with the Committee,

14  and what you basically have here is a ground lease, and

15  assuming the typical situations are correct, Circuit City

16  constructed a building.  Upon termination of this particular

17  ground lease, the building, under typical situation would

18  revert back to the landlord.  I don't think they can contest

19  that that's the situation.  I apologize for not having the

20  lease here, but I would assume that that would be the way that

21  this would work.  So, in this instance, what the landlord has

22  done is they have credit bid some particular amount of

23  arrearages and --

24          THE COURT:  Approximately $56,745.

25          MR. FREDERICKS:  So, approximately $56,745 have been

**J&J COURT TRANSCRIBERS, INC.**

62

1  credit bid to receive a building and a ground lease.  The

2  bidding procedures couldn't be clearer in the fact that the

3  debtors had the right to withdraw this particular location from

4  the auction to reject the qualified bid in the event they

5  didn't think it was in the best interest of their estate.  I

6  think that everything's clear in that respect.

7        What counsel's essentially asking this Court to do is

8  to substitute a landlord's business judgment or pecuniary

9  interest for that of the debtors and ask us -- and force us to

10  reject a lease that can only be rejected either by operation of

11  365(d)(4) or after a hearing on the debtor's business judgment

12  that the lease should be rejected.  Those are the standards

13  under which a lease can be rejected.

14        Here, I'm not exactly sure why -- I understand the

15  expenses counsel has incurred, they were made available and did

16  actually participate by telephone.  They had additional counsel

17  there, that was not necessary in the debtors' regard.

18        In fact, the debtors have not told them they will

19  hold an auction once a week.  And what the debtors are going to

20  do and this was going to be the subject of a separate -- most

21  likely the subject of a separate motion is try to auction the

22  lease or remarket it and auction it before the end of March.

23  To the extent that the debtors cannot do so, the debtors will

24  seek relief from their current order to market the lease beyond

25  the end of March.  But, under the way that the current

63

1  rejection procedures order works, if the lease isn't assumed

2  and assigned, terminated or rejected prior to March 31st, it's

3  deemed rejected as of March 31st.

4      So, essentially, what counsel's asking to do now is

5  to cut off the remaining half of the month, allow us not to

6  market the lease and try to auction it, get a windfall to the

7  landlord, that they may ultimately get if we cannot locate

8  somebody to purchase this lease.  And to the extent we seek

9  relief for my order, counsel can come here and be heard in that

10 regard.  But, we just don't think it's a situation here where

11 the debtor should be compelled or even can be compelled to

12 reject the lease that they have determined in their business

13 judgment does not makes sense to reject at this particular

14 time.  Unless the Court has any questions.

15     THE COURT:  Do you wish to address the argument that

16 Mr. Bentley raised with regard to the language in the bid

17 procedures that he says compels you to proceed to reject the

18 lease if you don't receive a qualified bid.

19     MR. FREDERICKS:  I don't -- which particular section

20 of the bid -- I don't think there is a particular section that

21 compels us to move forward with rejection.

22     THE COURT:  The language Mr. Bentley's talking about

23 is found on Page 19 of the procedures and it says if the

24 debtors do not receive any qualified bids for the March lease

25 or leases by the March bid deadline, the debtors will proceed

1  with rejection of such March leases as set forth in the sale

2  motion.

3         MR. FREDERICKS:  Again, Your Honor, I still think

4  it's subject to the business judgment standard.  And I'm not

5  sure that there's been any evidence either one way or the other

6  whether or not this would be in or not in the debtor's business

7  judgment.  I mean, I think ultimately I understand what the

8  particular language says, I think it, you know -- but I don't

9  think that the Court has an adequate record upon which to rule

10 that the particular lease should be rejected as of today.

11        THE COURT:  All right, thank you, sir.

12        MR. FREDERICKS:  Thank you, Your Honor.

13        THE COURT:  Ms. Tavenner, do you wish to be heard on

14 this?

15        MS. TAVENNER:  No, Your Honor.

16        THE COURT:  All right, Mr. Bentley, you may reply.

17        MR. BENTLEY:  Briefly, Your Honor.  Your Honor, the

18 debtors' statements in closing missed the point.  We're not

19 saying that they didn't have the ability to continue the

20 auction out or have it at a different time or something like

21 that.  We're saying that once they decided to go forward with

22 the auction, and once they sold it, once the hammer fell, they

23 only had two available options.  That's what we're saying.

24        We're in a situation where we had the successful bid

25 and that successful bid was rejected, and that rejection is

1 | what triggers the requirement that they now must also reject
2 | the lease.  That's what we're talking about here.
3 |     He states that in response to our allegations or our
4 | assertions under Page 19 of the supplemental bidding or amended
5 | bidding procedures that he believes that that was subject to
6 | their business discretion as well, or business judgment, as
7 | well.  And I would tell the Court, it's not.  I mean if you
8 | look through the bidding procedures and the order itself, just
9 | about everything in there has a caveat that says subject to the
10 | business judgments of the debtor or in the sole discretion of
11 | the debtor.  This particular does not.  It's not in their
12 | discretion.  They must reject.  And so for those reasons, Your
13 | Honor, we would ask --
14 |     THE COURT:  Where does it say that though?  I mean,
15 | because I understand that that's your argument, but that's not
16 | really what this language says, is it?
17 |     MR. BENTLEY:  It's not precisely what the language
18 | says, Your Honor.  But, it can't be interpreted any other way.
19 | I don't see how it could be interpreted any other way.  To
20 | interpret it any other way would permit them to, as I said and
21 | he's right, they haven't told me they're going to have an
22 | auction every week, but they certainly could.  If that's the
23 | way that the Court understands this to read, then they can push
24 | the bid deadline.  They can have as many auctions as they want
25 | and let the hammer fall as many times as they want and keep

1 | doing it until they get something that they think is their --

2 | the "highest and best offer".

3 |       THE COURT:  Okay.  But, you don't dispute that they -

4 | - the debtor has the right to reject at any time --it says, in

5 | the bidding procedures, at any time prior to the entry of the

6 | order of this Court approving the bid, any bid in their sole

7 | discretion which they deem to be inadequate or insufficient.

8 | And that's because when we do these kinds of sales, the sales

9 | aren't final when the hammer falls at the auction, the sale is

10 | final when I approve it.  And up until the time that I approve

11 | it, the sale is not final.

12 |       Now, then the question is, okay, well then what

13 | happens if either I don't approve it?  Because they could

14 | submit it to me and I could say no, I'm not going to approve

15 | this bid even if Mr. Fredericks was right by your side saying

16 | yes I want you to approve it, Judge, I could say, no, I'm not

17 | going to approve this sale.  And does that mean then under your

18 | theory that they would immediately have to reject this lease

19 | because I wouldn't let them approve a sale that I thought was

20 | inadequate?

21 |       MR. BENTLEY:  Yeah, I believe that's the right

22 | reading of it, Your Honor.  The way that this is crafted, I

23 | believe that's correct because --

24 |       THE COURT:  But, let's look at the language.

25 |       MR. BENTLEY:  Yes, Your Honor?

1          THE COURT:  It says if the debtors do not receive any

2    qualified bids, then they're going to proceed to reject it.

3    But, they did receive a qualified bid, as you've argued.  They

4    received it and they rejected it, because they thought in their

5    business judgement it was not adequate.  And even if they had

6    accepted it, this Court independently could say, that qualified

7    bid is not acceptable and so then it's not.  But, they did

8    receive a qualified bid which then doesn't require them to

9    proceed to the rest of the language of that sentence.

10          MR. BENTLEY:  That's not my understanding.  The way I

11   looked at this, Your Honor, I don't see how it could be

12   interpreted any other way but to require them to reject.

13   Because they had -- in their sole discretion and in their

14   business judgment they had the ability to, at any time prior to

15   having the hammer fall, I agree with the Court, they had the

16   ability to say, we're going to push the deadlines out, we're

17   going to do whatever, we're going to take this bid off of the

18   table, as they did for one of the other bids, I think it was

19   232, the San Mateo store.  I wouldn't be here today if they had

20   done that with 805, but they didn't do that with 805.  They

21   opened it for bid, they had a bid, the hammer fell.

22          I'm saying that once the hammer fell, we've got a

23   successful bid.  You don't have a successful bid in any of the

24   other leases.  This is the only one where you have a successful

25   bid, which forces them at that point if they don't like it,

1  they've got to reject it.  And when they reject, which this is

2  the only lease that they had to do that on, then --

3              THE COURT:  Well, they could do two things.  They

4  could either reject it, or they could ask the Court to approve

5  it.

6              MR. BENTLEY:  Or they could ask the Court to approve

7  it, correct, Your Honor.

8              THE COURT:  And I could either approve it or

9  disapprove it.

10             MR. BENTLEY:  I agree.  And if they had gone that

11 route instead and you had denied it, then I think that they

12 would have had other options.

13             THE COURT:  Well, I don't understand why their

14 rejection means that they don't have -- they didn't receive a

15 qualified bid in the first place.

16             MR. BENTLEY:  That's my understanding of this, Your

17 Honor.

18             THE COURT:  All right, thank you.

19             MR. BENTLEY:  Thank you, Your Honor.

20             THE COURT:  Mr. Fredericks, anything further?

21             MR. FREDERICKS:  Yes.  Very brief, Your Honor.  I

22 agree with you and I apologize, I was initially looking at a

23 different provision.  But, I would agree with the Court's

24 interpretation of this particular language.  The second part of

25 the sentence only applies in the event the debtors did not

1   receive a qualified bid.  In this particular circumstance the

2   debtors acknowledge that this was a qualified bid and they,

3   indeed, accepted it at the auction subject to rights to

4   withdraw it.  But, I don't believe this provision is even

5   applicable here given that we did receive a qualified bid.

6           THE COURT:  All right, thank you.

7           MR. FREDERICKS:  Thank you, Your Honor.

8           THE COURT:  All right.  Mr. Bentley, I'm going to

9   overrule your objection.  I think that the language is clear

10  that the debtor received a qualified bid in this case and

11  they're not compelled by this language to proceed with

12  rejection, whatever that means, unless they didn't receive a

13  qualified bid.

14          And I would note for the record that even had they

15  not received a qualified bid and they wanted to proceed with

16  rejection, rejection is still subject to the approval of this

17  Court and I would need to have evidence of the debtors'

18  exercise of its business judgment before I would approve a

19  rejection of the lease and I simply don't have that evidence

20  here today.  So, the Court's not going to compel that at this

21  point in time.  So the objection will be overruled, I'll ask,

22  Mr. Fredericks, will you please prepare the order in that

23  regard.  Any questions regarding the Court's ruling?

24          MR. FREDERICKS:  No, Your Honor.  And we'll prepare

25  the form of order.

70

1         THE COURT:  All right.  Thank you.  Is there any

2  other business we need to take up this afternoon, Mr.

3  Fredericks?

4         MR. FREDERICKS:  No, Your Honor.  Thank you very much

5  for the Court's indulgence.  I apologize that the hearing did

6  not go as smoothly as others.  It's been a very hectic couple

7  of days and --

8         THE COURT:  I totally understand.  It's probably

9  going to be a very hectic hour and ten minutes if you can get

10 me those orders that you've promised me for this afternoon.

11        MR. FREDERICKS:  It is, and we will.  Thank you, Your

12 Honor.

13                    *  *  *  *  *

14            **C E R T I F I C A T I O N**

15        I, RITA BERGEN, court approved transcriber, certify

16 that the foregoing is a correct transcript from the official

17 electronic sound recording of the proceedings in the

18 above-entitled matter, and to the best of my ability.

19

20 /s/ Rita Bergen                DATE:  March 31, 2009

21 RITA BERGEN

22 J&J COURT TRANSCRIBERS, INC.

23

24

25 (CR)


                    **J&J COURT TRANSCRIBERS, INC.**