UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA


IN RE:                        .       Case No. 08-35653(KRH)
                              .
                              .
                              .
CIRCUIT CITY STORES           .       701 East Broad Street
INC.,                         .       Richmond, VA 23219
                              .
                              .
            Debtor.           .       March  20, 2009
. . . . . . . . . . . . ..             10:13 a.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:           McGuireWoods LLP
                          By:  DOUGLAS FOLEY, ESQ.
                          9000 World Trade Center
                          101 W. Main St.
                          Norfolk, VA  23510

                          McGuireWoods LLP
                          By:  SARAH B. BOEHM, ESQ.
                          One James Center
                          901 East Cary Street
                          Richmond, VA  23219

                          Skadden Arps Slate Meagher & Flom LLP
                          By:  IAN FREDERICKS, ESQ.
                          One Rodney Sq.
                          Wilmington, DE 19899


Proceedings recorded by electronic sound recording, transcript
produced by transcription service

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

**APPEARANCES (CONT'D):**

| | |
|---|---|
| For Engineered Structures: | Seyfarth Shaw<br>By:  DANIEL WIERZBA, ESQ.<br>975 F Street, N.W.<br>Washington, D.C.  20004 |
| For BRG Properties: | Wiley Rein, LLP<br>By:  DYLAN TRACHE, ESQ.<br>7925 Jones Branch Drive<br>Suite 6200<br>McLean, VA  22102 |
| For Alvarez and Marsal Canada: | Hunton and Williams<br>By:  J.R. SMITH, ESQ.<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA  23219 |
| For Bank of America: | LeClairRyan<br>By:  RICHARD D. SCOTT, ESQ.<br>1800 Wachovia Tower<br>Roanoke, VA  24006 |
| For the Committee: | Tavenner & Beran, PLC<br>By:  MS. TAVENNER, ESQ.<br>20 North Eighth Street<br>Second Floor<br>Richmond, VA  23219 |
| For Carousel Center Co.: | Christian & Barton, LLP<br>By:  MICHAEL MUELLER, ESQ.<br>909 East Main Street<br>Suite 1200<br>Richmond, VA  23219 |
| For Glimcher Properties: | Christian & Barton, LLP<br>By:  AUGUSTUS C. EPPS, JR., ESQ.<br>909 East Main Street<br>Suite 1200<br>Richmond, VA  23219 |
| For Sea Properties: | Clement & Wheatley<br>By:  DARREN W. BENTLEY, ESQ.<br>549 Main Street<br>Danville, VA  24543 |
| For Cole Landlords: | Kutak Rock, LLP<br>By:  KIMBERLY A. PIERRO, ESQ.<br>Suite 800<br>Bank of America Center<br>1111 East Main Street<br>Richmond, VA  23219 |

## **I N D E X**

| **EXHIBITS** | | **EVID.** |
|---|---|---|
| Debtor's Exhibit-A | Transcript | 8 |

**J&J COURT TRANSCRIBERS, INC.**

1             THE CLERK:  In the matter of Circuit City Stores,

2    Incorporated.  Hearing on Items one through nine as set out on

3    debtors' agenda.

4             MR. FOLEY:  Good morning, Your Honor.  Doug Foley and

5    Sarah Boehm with McGuireWoods on behalf of Circuit City.  With

6    me at counsel table is Ian Fredericks from Skadden Arps.  Also

7    today in court, Your Honor, from Circuit City is Jim Larkin the

8    vice chairman and chief executive officer and Michelle Mosier,

9    chief financial officer.

10            Your Honor, there are nine items on the agenda today.

11   There's only, there's a handful of substantive matters that

12   we'd like to go forward on.  We'd like to deal with the

13   procedural matters first if that's okay with the Court.  Items

14   Number 2 and Items Number 4 are motions to shorten time and

15   notice period with respect to the motion pertaining to the sale

16   of the Canadian assets as well as the motion to settle our

17   disputes with Hilco and Gordon Brothers.  Unless the Court has

18   questions or if somebody would like to address either of those

19   two motions, we'd ask that they be granted.

20            THE COURT:  Does any party have any objection to the

21   debtors' motions to shorten time in connection with the sale of

22   the Canadian assets or with the settlement of the issues with

23   Gordon Brothers?

24                      (No audible response)

25            THE COURT:  All right, both of those will be granted.


**J&J COURT TRANSCRIBERS, INC.**

5

1             MR. FOLEY:  Thank you, Your Honor.  Items Number 5

2    and Number 7 on the agenda also deal with the motion to

3    sellers, it's with Hilco and Gordon Brothers.  One is our

4    motion to expedite the hearing for today and the other is to

5    seal the letter agreement with Gordon Brothers that constitutes

6    the settlement, Your Honor.  The document that we are seeking

7    to seal has been provided to the Court in chambers as well as

8    the Office of the United States Trustee and the Creditors'

9    Committee has obviously seen it and as you will hear when we

10   address the motion, they have no objection to the contents of

11   the settlement.

12             THE COURT:  All right.  Any party wish to be heard in

13   connection with those two motions?

14                       (No audible response)

15             THE COURT:  All right, they will be granted.

16             MR. FOLEY:  Your Honor, Item Number 8 on the agenda

17   is the motion by ESI.  Counsel is here today and I believe an

18   order has been submitted to the Court that we have agreed to

19   and I believe that can be removed from the docket.

20             MR. WIERZBA:  Good morning, Your Honor.  Daniel

21   Wierzba on behalf of Engineered Structures.  Counsel is correct

22   that an order has been submitted.  I believe it was submitted

23   to the Court on Wednesday and other than that, this matter

24   should be good to go.

25             THE COURT:   Okay.  So that will be noted as

**J&J COURT TRANSCRIBERS, INC.**

1   resolved.

2           MR. WIERZBA:   Thank, Your Honor.

3           MR. FOLEY:   Thank, Your Honor.   That leaves Items

4   Number 1, which is the sale of the Phoenix property, which Mr.

5   Fredericks will address in a moment.   Items Number 3, which is

6   the motion dealing with the Canadian assets.   Item Number 6,

7   which is approval of the settlement with Hilco and Gordon

8   Brothers, and Item Number 9, which is the carryover from last

9   week with respect to leased cure disputes, and I believe only

10  sub-matter F, the Cole matters will be going forward with

11  respect to that as well as potentially Sea Properties, I

12  understand that they have called in.   So, Your Honor, we'll go

13  forward with the Phoenix sale.

14          THE COURT:   All right, thank you.

15          MR. FREDERICKS:   Good morning, Your Honor.   Ian

16  Fredericks of Skadden, Arps, Slate, Meagher and Flom.   We are

17  here today to seek approval of the sale of the Phoenix

18  property.   Just by way of background, Your Honor, actually

19  before I -- present in the courtroom today, as Mr. Foley

20  mentioned, Mr. Marcum as well as Mr. Avallone from DJM Realty,

21  the company's real estate advisor.

22          By way of background, this motion was originally

23  filed on February 12th.   It sought two types of relief, it

24  sought approval of a stalking horse agreement and bidding

25  procedures.   It also sought ultimate approval of a sale of the

7

1  property.  That motion was filed on February 12th.  On March

2  3rd, the Court entered an order approving the stalking horse

3  agreement which did not contain traditional bid protections and

4  established bidding procedures including a March 13th bid

5  deadline and an auction date of March 18th.

6           Prior to, I guess at this point I would like to

7  proffer both the testimony of Mr. Marcum and Mr. Avallone.

8           THE COURT:  You may.

9           MR. FREDERICKS:  And they would testify that prior to

10  the bid deadline the stalking horse bidder exercised its due

11  diligence out under the agreement and decided not to proceed.

12  Thereafter, on or prior to the bid deadline, the debtors

13  received two qualified bids.  One was that presented by Fresh

14  and Easy and the other was that presented by BRG Properties.

15  Pursuant to the bid procedures, those bids needed to be at

16  least $3 million.  They needed not to be subject to due

17  diligence, and they needed to include a good faith deposit.

18  Both bidders complied with those requirements and thus were

19  deemed to be qualified bids.

20           The debtors would further testify that -- Mr. Marcum

21  and Mr. Avallone would further testify that they marketed the

22  assets in accordance with the bid procedures and the motion and

23  that they held an auction on March 18th, 2009 at which both

24  bidders appeared.  There was competitive bidding and ultimately

25  the highest or otherwise best bid at the conclusion of the

1  auction was that presented by BRG Properties in the amount of

2  $4,105,000, that the next highest or otherwise best bid was

3  that presented by Fresh and Easy in the amount of $4,101,000.

4  The debtors would further testify -- or Mr. Marcum

5  and Mr. Avallone would further testify that neither BRG or

6  Fresh and Easy are insiders of the debtor, that they have

7  exhausted their marketing efforts and these are the only two

8  options by which the property can be sold, that the sale of the

9  property is an exercise of their sound business judgment, that

10 the consideration presented by BRG is the highest value for the

11 property and the consideration presented by Fresh and Easy

12 would be the next highest value for the property, that the

13 considerations are reasonable, that there are no kind of due

14 diligence outs under the agreements.  The agreements were

15 revised to incorporate a new closing date, in the case of BRG,

16 I believe it's March 30th, in the case of Fresh and Easy it

17 would be March 31st.

18 Under the sale order in the event that the debtors

19 did not close for whatever reason with BRG, Fresh and Easy

20 would be prepared to close on ten days notice.   Mr. Marcum and

21 Mr. Avallone would finally testify that the agreements between

22 BRG and Fresh and Easy were both negotiated in good faith at

23 arm's length and without collusion and the entry into the BRG

24 agreement is in the best interest of the estates, and in the

25 event they were unable to close with BRG, entry into the Fresh

1  and Easy agreement would be in the best interest of their

2  estates.  With that, that would conclude the testimony of Mr.

3  Marcum and Mr. Avallone.

4        THE COURT:  Does any party in the courtroom wish to

5  cross examine Mr. Marcum or Mr. Avallone?  All right, the

6  proffer is accepted.

7        MR. FREDERICKS:  Additionally, Your Honor, I have a

8  -- there was a court reporter present at the auction and I have

9  a transcript of the auction which I'd like to move into

10 evidence as Exhibit A.

11        THE COURT:  It will be received.

12        MR. FREDERICKS:  Thank you, Your Honor.

13        THE COURT:  This has been marked as the Debtors'

14 Exhibit A.

15        MR. FREDERICKS:  With that, Your Honor, we would

16 request approval of the highest and best bid presented by BRG

17 Properties, and at the same time the next highest or best bid

18 presented by Fresh and Easy.  I believe the parties are in a

19 position to close the BRG sale on March 30th of this year.

20        THE COURT:  All right.  Does any party wish to be

21 heard in connection with the motion to approve the bid of BRG

22 Properties?

23        MR. TRACHE:  Your Honor, Dylan Trache from Wiley Rein

24 appearing on behalf of BRG Properties.  We would support entry

25 of the order for all the reasons stated by Mr. Fredericks.

1 Thank you.

2          THE COURT:  All right.  Thank you, sir.  Any other

3 party wish to be heard in connection with the motion?  All

4 right, the motion will be approved and the, for both the bid of

5 BRG and the backup bid as well.

6          MR. FREDERICKS:  I believe an order has been

7 submitted this morning through the BOPS system, so with that

8 I'll turn it back over to Mr. Foley.  Thank, Your Honor.

9          THE COURT:  All right.

10          MR. FOLEY:  Your Honor, the next item on the agenda

11 is Item Number 3, which is our motion to deal with the Canadian

12 assets.  Your Honor, by way of background and further

13 introduction, in the courtroom today is Peter Teddy who's from

14 Rothschild, he's director at Rothschild in Toronto, Canada and

15 I will be proffering some of his testimony in support of the

16 factual basis set forth in the motion.  Also in the courtroom

17 today, Your Honor, are representatives from Bell Canada, the

18 purchaser, as well as their counsel, Jim LeShaw and Tim Bass

19 are here and they will be proffering some evidence to the Court

20 as well on behalf of Curtis Millen (phonetic) who's a

21 representative from Bell Canada who's also here in the

22 courtroom today.

23          Your Honor, the relief that we're seeking today has,

24 in this motion, has three components to it.  All of which to

25 the extent necessary have been approved in the CCA proceeding

1  in Canada on March 10th.  As Your Honor is aware, InterTan

2  Canada, LTD and Tourmalet are proceeding under their own

3  insolvency proceeding in the Canadian jurisdiction.

4          The three different aspects of the motion that we're

5  seeking relief on today are all interrelated.  One is the

6  approval of InterTan Inc, the U.S. entity's consent to the sale

7  of substantially all the assets of InterTan Canada, LTD.  And

8  I'll go through that in a moment and proffer the testimony of

9  Rothschild with respect to that.  The second aspect of the

10 relief we're seeking Your Honor, is approval of an inter-

11 company agreement dated February 23rd by and between Circuit

12 City -- Circuit City West Coast Stores Inc., then to and

13 InterTan Canada that deals with the allocation of certain

14 purchase price of the U.S. assets.  And the last aspect of the

15 relief that we're seeking, Your Honor, which is important to

16 the first two is approval of the Photo Source settlement and

17 coexistence agreement dated February 20th, 2009 between

18 InterTan Canada, Circuit City West Coast and Photo Source.

19         Your Honor, Mr. Tetee (phonetic), if he was called to

20 testify would testify with respect to the marketing efforts

21 that the debtors undertook and InterTan Canada undertook as

22 part of a sales process that was approved by the Canadian Court

23 on December the 5th.  He would testify to all of the efforts

24 that the debtors made with respect to the marketing efforts,

25 including the factual basis set forth in Paragraphs 10, 11, 12,

1  13, 14, 15 and 16 of our motion that resulted in the agreement

2  that we're seeking approval of today, Your Honor.  There were

3  several confidentiality agreements entered into with respective

4  purchasers.  There was a data room set up with respect to due

5  diligence, and there were specific question and answer sessions

6  set up with Canadian management team for those serious that

7  were interested in bidding.

8         The asset purchase agreement identified in the

9  motion, he would testify as a result of extensive marketing

10 efforts, pre and post-petition and arm's length good faith

11 bargaining negotiation that has gone on for quite some time and

12 that Bell Canada's bid was the best overall bid received, and

13 that Bell Canada is not an insider or an affiliate or sellers

14 of the sellers' and is proceeding in good faith and is entitled

15 to, and therefore would be entitled to a finding under 363(m)

16 of the Bankruptcy Code.

17        Your Honor, the relief that we're actually seeking

18 includes the sale of certain -- sale and licensure of certain

19 intellectual property assets and trademarks of Circuit City

20 West Coast that relate to the term, The Source and The Source

21 by Circuit City.  Some of those assets are actually being sold

22 to the purchaser here, some of them are being licensed with the

23 right of West Coast to be able to sell those at a later date

24 provided that there is assurance that Bell Canada will receive

25 a royalty free license going forward.

**J&J COURT TRANSCRIBERS, INC.**

13

1          Also, Your Honor, as part of the asset purchase

2   agreement, the shares of Circuit City Global Sourcing, LTD from

3   Vinto (phonetic), which is the Hong Kong purchasing agent

4   through which InterTan Canada sources its private label

5   products from factories in Asia and utilizes certain office

6   space in Hong Kong for merchandising and quality control

7   issues.   Those shares are being sold as part of the asset

8   purchase agreement.

9          And then, Your Honor, InterTan Inc., which is the

10  U.S. entity, the parent of InterTan Canada Inc., is consenting,

11  obviously, to the entry of the asset purchase agreement by its

12  subsidiary.   The terms of the sale would include a $15 million

13  deposit, Bell Canada guaranteeing the obligations under the

14  asset purchase agreement, closing date to occur between June

15  30th and July 31st, and the assumption of certain liabilities

16  including real estate leases and other assumed obligations that

17  are set forth in the motion.

18         As Your Honor may be aware, in Canada, under Canada

19  insolvency law, landlord consent is required for the transfer,

20  assumption and assignment of leases, and that's part of some of

21  the preconditions to closing that need to happen before the

22  asset purchase agreement can close.

23         Your Honor, the second aspect of the relief that

24  we're seeking is approval of the intercompany agreement between

25  Circuit City West Coast, Vento and InterTan Canada.   Your

1 Honor, the relief as part of this agreement includes a $15

2 million payment from the proceeds upon closing to come from the

3 Canadian entities to the U.S. entities.  This is described as

4 the U.S. asset purchase price as set forth in the motion.

5 There potentially is going to be a future distribution on the

6 U.S. entity's equity interest in Canada after payment of all

7 the creditors in the Canadian proceeding.  So one way to look

8 at this $15 million payment is essentially a down payment on

9 future -- and with a potential for future consideration.

10 Also, the consideration that is set forth in the

11 motion includes an agreement by the Canadian entities and the

12 monitor to loan the U.S. entities up to $35 million, the terms

13 of which will be subject to further documentation and approval

14 by this Court.  But that is also part of the consideration for

15 the consent that InterTan is giving to allow its subsidiary to

16 enter into this agreement.

17 Your Honor, the last aspect of the relief that we're

18 seeking is the Photo Source settlement agreement and

19 coexistence agreement.  This involves a settlement of a

20 trademark infringement action by Photo Source.  The purpose of

21 this, and it's critical to Bell Canada's receiving essentially

22 clean use of the intellectual property from West Coast and West

23 Coast family of what we call The Source Trademark Assets.  The

24 settlement agreement provides that the settlement payment to

25 Photo Source will be a $500,000 payment being made not by the

**J&J COURT TRANSCRIBERS, INC.**

1    U.S. entities, but by the Canadian entities, InterTan Canada.

2    Historically, InterTan Canada has used those trademarks even

3    though they belong to the U.S. entities, without compensation,

4    so the justification for the settlement payment coming from

5    InterTan Canada was to make up for that historical use of that

6    property.

7            Your Honor, the other terms -- other than the terms

8    that are disclosed in the motion with respect to the asset

9    purchase agreement, they are confidential for strategic and

10   competitive reasons relating to Bell Canada's interest in

11   purchasing the assets, as well as I mentioned, Your Honor, the

12   other preconditions to closing which include certain consents

13   needed to transfer of executory contracts with lease parties.

14           And with that, Your Honor, I would ask the Court to

15   accept my proffer of Peter Tetee's testimony unless anybody has

16   any cross examination for him.

17           THE COURT:  Any party wish to cross examine the

18   proffered witness?

19                      (No audible response)

20           THE COURT:  All right, the proffer's accepted, Mr.

21   Foley.

22           MR. FOLEY:  Your Honor, with that I would turn the

23   podium over to counsel for Bell Canada.

24           THE COURT:  All right.

25           MR. BASS:  Good morning, Your Honor.  Tim Bass, I'm

1  Virginia counsel for Bell Canada.  With me today is Jim LeShaw

2  who's been admitted pro hac, and I'll allow Mr. LeShaw to

3  introduce the witness, Chris Millen, to make the proffer.

4          THE COURT:  All right, very good.  Welcome.

5          MR. LeSHAW:  Thank, Your Honor.  Mr. Millen, a

6  director from Bell Canada is in the courtroom is prepared to

7  testify if necessary, but with Your Honor's permission, I'd

8  like to proffer his testimony.

9          THE COURT:  you may proceed.

10          MR. LeSHAW:  Mr. Millen is a director at Bell Canada

11  and his responsibilities include mergers, acquisitions and

12  strategic dispositions.  He's familiar with the sale motion,

13  he's read the asset purchase agreement, he was the person with

14  primary day to day responsibility for negotiating the terms of

15  the asset purchase agreement and the various transactions that

16  are contemplated by the asset purchase agreement.

17          Mr. Millen would testify that Bell Canada is the

18  largest communications company in Canada.  It currently has

19  unrestricted cash on hand of approximately $3 billion Canadian

20  dollars, which is more or less, $2.5 billion U.S. dollars.

21  That's important because there is no financing contingency in

22  this agreement and that's cash that's available for closing the

23  transaction.  The purchaser under the asset purchase agreement

24  is a company called 4458729 Canada Inc.  Mr. Millen would

25  testify that that company is a special purpose entity that was

1 set up by Bell Canada, it's a wholly owned subsidary of Bell

2 Canada and it was set up for purposes of acting as the

3 purchaser under this agreement.

4      I'll refer to the two companies, Bell Canada and

5 4458729 just as the buyer or the purchaser.  Mr. Millen

6 estimates that the closing date will be June 30th, 2009.  The

7 purchaser is able to close the transactions contemplated by the

8 purchase agreement and intends to live up to each of its

9 obligations under the purchase agreement.  Mr. Millen has read

10 and is familiar with the Photo Source settlement agreement and

11 he believes that it's fair, it's reasonable and it's an

12 integral part of the asset purchase agreement.  In fact, one of

13 the conditions to the purchaser's obligations under the asset

14 purchase agreement is consummation of the Photo Source

15 settlement agreement.  In all likelihood if that agreement were

16 not consummated for some reason, the purchaser likely would not

17 consummate the transactions under the asset purchase agreement.

18      The purchaser is not an insider or an affiliate of

19 Bell Canada.  The asset purchase agreement was negotiated at

20 arm's length and in good faith as were all of the other

21 transactions relating to the asset purchase agreement, and Mr.

22 Millen believes that the purchaser is entitled to a good faith

23 finding under Section 363(m) and requests that Your Honor

24 approve the asset purchase agreement.

25      THE COURT:  All right, thank you.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. LeSHAW:  Thank you, Your Honor.

2          THE COURT:  Any party wish to cross examine Mr.

3    Millen?

4                    (No audible response)

5          THE COURT:  All right, the proffer is accepted.

6          MR. FOLEY:  Your Honor, with that, counsel for the

7    Canadian Monitor is also here today, Your Honor, and obviously

8    is familiar with the proceedings that have occurred in Canada

9    with respect to the relief that we're seeking here.

10         Your Honor, I did want to point out one paragraph in

11   the order, that is also in the order that was entered in

12   Canada.  It's Paragraph 14.  Paragraph 14 provides that this

13   Court request the aid and recognition of any court tribunal,

14   regulatory or administrative body having jurisdiction in Canada

15   or in the United States to give effect to this order, all

16   courts, tribunals, regulatory or administrative bodies are

17   hereby respectfully requested to make such orders and to

18   provide such assistance as may be necessary or desirable to

19   give effect to this order.  There's a similar paragraph in the

20   Canadian order that says to the extent -- we hope we won't need

21   any further orders with respect to this transaction because of

22   the complexity and it being cross-border, but there may be a

23   need for a future order, more dealing with the Canadian lawyers

24   with respect to that, Your Honor.

25         With that, Your Honor, I believe all the relief that

1  we requested in the motion should be approved by the Court.

2  All of the standards set forth on the case law under Rule 9019

3  with respect to the Photo Source settlement and coexistence

4  agreement we believe are satisfied.  We believe the

5  intercompany agreement is fair and reasonable and that the

6  asset purchase agreement provides for fair value being received

7  by the estate.

8          THE COURT:  All right, thank you.  Any party wish to

9  be heard in connection with the motion?

10          MR. SMITH:  Good morning, Your Honor.  J.R. Smith

11  from Hunton and Williams on behalf of Alvarez Marsal Canada,

12  the monitor appointed in the CCAA proceeding.  Two quick

13  points, Your Honor.  First, with respect to the intercompany

14  agreement that Mr. Foley referenced to Your Honor earlier, his

15  characterization of that agreement is accurate and the terms of

16  the obligation to loan are subject to further documentation as

17  agreed by the parties and of course this Court's approval.

18          Also, Your Honor, just to point out, one note with

19  respect to the bar dates that would be imposed by the Canadian

20  proceeding against the U.S. Circuit City entities and then visa

21  versa, the U.S. bar dates that would be imposed against the

22  Canadian subsidiary, by agreement, Your Honor, the two parties

23  have agreed to extend those bar dates subject to the earlier

24  stipulation that this Court entered.  As it stands, there is no

25  bar date that would apply to either one of the entities, and I

1  think that's probably how it would proceed for the indefinite

2  future.

3           THE COURT:  All right, thank you.  Mr. Smith.

4           MR. SMITH:  Thank, Your Honor.

5           MR. FOLEY:  That's correct, Your Honor, with respect

6  to the bar dates.

7           THE COURT:  All right, thank you, Mr. Foley.  Any

8  other party wish to be heard?

9           MR. SCOTT:  Good morning, Your Honor.  Richard Scott

10 from LeClaireRyan on behalf of the Bank of America's the agent

11 for the post-petition lender group.  Very briefly, Your Honor,

12 just for the record, we would advise the Court that the

13 post-petition lender group supports the motion and agrees in

14 the best interest of the estate to approve the sale and the

15 other matters raised in the debtors' motion.

16          THE COURT:  All right, thank you, sir.

17          MR. SCOTT:  Thank you, Your Honor.

18          THE COURT:  Any other party wish to be heard?

19          MR. FOLEY:  Your Honor, we obviously have neglected

20 to mention that we have consulted with the Committee with

21 respect to all the terms of the transaction, they have no

22 objection to it.

23          THE COURT:  I was assuming from Ms. Tavenner's

24 silence that that was the case, but I'm glad that we've made

25 that clear on the record.

1          MR. FOLEY:  I don't think she has laryngitis though.

2          THE COURT:  Okay.

3          MS. TAVENNER:  I have no laryngitis, Your Honor, that

4    is the case.

5          THE COURT:  All right, thank you.  All right, Mr.

6    Foley, the Court has reviewed the motion, the proposed order

7    and the copy of the asset purchase agreement that was delivered

8    to chambers for in camera review and the Court will approve the

9    transaction.

10         MR. FOLEY:  Thank you, Your Honor.  Your Honor, the

11   leaves the last two items on the agenda, Items Number 6, which

12   is the approval of the settlement agreement with Hilco and

13   Gordon Brothers and then the resolution of the lease cure

14   disputes in Matter Number 9.

15         Your Honor, with respect to the Hilco/Gordon Brothers

16   settlement motion, as Your Honor recalls, there was a first

17   round of store closing sales that occurred from November 5th

18   through the end of last year, approximately 155 stores.  The

19   liquidating agent under that agency agreement was Hilco and

20   Gordon Brothers.  The dispute that we're seeking Court

21   approval to settle today under Rule 9019 involves the final

22   reconciliation of the amounts due and owing between the

23   parties, and we've been in negotiations, extensive negotiations

24   for a couple of months with respect to that.

25         In the courtroom today,  Your Honor, is Kevin Regan

22

1  from FTI Consulting and I would proffer -- I'd like to proffer

2  his testimony if Your Honor please.

3          THE COURT:  You may proceed.

4          MR. FOLEY:  Your Honor, if Mr. Regan was called to

5  testify, he would discuss that the dispute between the estates

6  and the liquidation agent under the agency agreement involved

7  certain adjustments to the cost value of the inventory and

8  alleged concomitant adjustments necessary to the guaranteed

9  percentage.  As Your Honor recalls, the agency agreement that

10 the Court approved essentially established a waterfall under

11 which the proceeds would first be used to pay the expenses of

12 sale, expenses incurred by the agent as well as expenses

13 incurred by Circuit City.  And then it would go to pay a

14 guaranteed percentage of the cost value of the debtors'

15 inventory.  And in this agreement that was 72 percent.  Then

16 the proceeds would then trickle down to pay the agent's fee of

17 3.5 percent of the cost value of the debtors' inventory, and

18 then after that the proceeds would be shared 50/50 between the

19 agent and the estate.

20         We are pleased to report that as a result of that

21 sale, we are into the 50/50 sharing.  But now in trying to do

22 the final reconciliation, issues have arisen regarding the

23 information contained and used from certain cost files that the

24 estate's provided to the agent that they allege were used to

25 price the deal, and that the cost file values showed retail

1  prices that were not the same as retail prices at the store

2  levels given that certain open box, clearance item and display

3  items were discounted essentially at the point of sale.  And so

4  through the negotiations, we disputed that for a variety of

5  reasons as to how aggressively they did the discounting, what

6  cost files numbers they should have used, what percentage

7  discounts they should have applied, and we've been negotiating

8  with them for quite a while.  They agreed to a final resolution

9  of the number.  Mr. Regan would testify that this has been a

10  very difficult negotiation, but that we were able to settle the

11  amount for less than half of what the agent was originally

12  asserting was due and owing to them as a result of these

13  adjustments.

14        And we filed the letter agreement under seal, Your

15  Honor, because as Your Honor is aware, we have a much larger

16  agreement involving many more stores that may have similar

17  issues with respect to the cost file and we did not want the

18  amount of the settlement agreement with Hilco and Gordon

19  Brothers to unduly influence the negotiations with respect to

20  Great American on the larger agency agreement.

21        The letter agreement has been provided to the Court

22  in camera, the Committee has reviewed in detail the contents of

23  the settlement and has been involved in some of the

24  negotiations, the U.S. Trustee has been provided the amount.

25  We believe that the amount is fair and reasonable and avoids a

24

1  lot of litigation and cleans the matter up with respect to the

2  initial store closing sale.  And we would ask the Court to

3  approve, I would ask the Court to accept Mr. Regan's testimony

4  in that regard and to approve the relief that we're seeking in

5  the motion.

6         THE COURT:  All right.  Does any party wish to cross

7  examine Mr. Regan?

8                    (No audible response)

9         THE COURT:  All right, the proffer will be accepted.

10  Any party wish to be heard in connection with the debtors'

11  motion to approve the agreement?

12                    (No audible response)

13        THE COURT:  All right, there being no opposition, Mr.

14  Foley, the Court will grant the motion.

15        MR. FOLEY:  Thank you, Your Honor.  That leaves Item

16  Number 9, Mr. Fredericks will address the Court.

17        MR. FREDERICKS:  Good morning again, Your Honor.  Ian

18  Fredericks for the record.  We are back before the Court today

19  on the lease procedures.  Specifically we are here today to

20  seek approval of a few additional bids as well as to, I

21  believe, address only one contested objection that's left.

22  Over the last couple of days we either resolved or agreed to

23  adjourn other objections or in one instance, I believe, an

24  objection was withdrawn and I'll go through that shortly.

25            Before we proceed there I'd like to proceed with

1  approval of three additional -- two additional bids and then

2  one backup bid.  To do so, I propose reopening the testimony of

3  Ms. Mosier and Mr. Avallone who testified at the last hearing.

4  If that's acceptable to the Court, I'd proceed with an

5  additional proffer on those locations.

6         THE COURT:  That's fine with the Court, you may

7  proceed.

8         MR. FREDERICKS:  First, with respect to Store

9  Location Number 3150, Ms. Mosier and Mr. Avallone would testify

10  that the debtors received one bid, that was a bid from the

11  landlord.  The bid provided for a waiver of cure amounts

12  arising prior to -- or on or prior to February 28th, 2009 and

13  provided for a general lease with respect to the lease and the

14  premises.  Since that proposal was made at the auction, it was

15  accepted as the highest or otherwise best bid, since then the

16  debtors, in consultation with the Committee have negotiated

17  with the landlord.  There has been an agreement on a mutual

18  release between the parties as well as the Syracuse Industrial

19  Development Agency.  With respect to the lease and the

20  premises, the landlord has also agreed to waive ten percent of

21  any rejection damage lease termination claim.  The landlord has

22  preserved its rights to seek payment of March rent through the

23  termination date, which is described as the date by which we

24  surrender the premises.  I believe today we'll be surrendering

25  the premises in accordance with the lease procedures order.

26

1           With that, we would request -- Ms. Mosier and Mr.

2   Avallone would further testify that the parties negotiated in

3   good faith at arm's length and without collusion and that this

4   proposal represents the highest or otherwise best bid, it's in

5   the best interest of the debtors' estate and a reasonable

6   exercise of the debtors' sound business judgment.  And as I

7   mentioned, we have been in the consultation with the Committee

8   throughout this process and I believe they support the relief

9   requested.  That would conclude the proffered testimony with

10  respect to Location Number 3150.

11          THE COURT:  All right, Mr. Fredericks, Store Number

12  3150, which docket number on your agenda does that refer to?

13          MR. FREDERICKS:  That refers to Docket Number -- it's

14  the Carousel location, I apologize.  I'm sorry, it's Letter H.

15          THE COURT:  Letter H, okay.  Thank you.  Does anybody

16  wish to cross examine the proffered witness?

17                    (No audible response)

18          THE COURT:  All right, the proffer is accepted.  Does

19  anybody wish to be heard on the motion?   Mr. Mueller, you wish

20  to be heard?

21          MR. MUELLER:  Briefly, Your Honor.  Mike Mueller with

22  Christian and Barton on behalf of Carousel Center Company, LP,

23  which is the landlord for Store Number 3150.  Mr. Fredericks is

24  correct, we resolved the issues with respect to the landlord's

25  limited objection under Item H and we've added the Syracuse

**J&J COURT TRANSCRIBERS, INC.**

1  Industrial Development Authority as a party to the settlement

2  agreement.

3           THE COURT:  All right, very good, thank you, sir.

4           MR. FREDERICKS:  Thank you, Your Honor.

5           THE COURT:  Any other party wish to be heard in

6  connection with the Carousel Center?

7                   (No audible response)

8           THE COURT:  All right, that will be approved.

9           MR. FREDERICKS:  At this point -- thank you, Your

10 Honor -- at this point I'd propose to proffer Ms. Mosier and

11 Mr. Avallone's testimony with respect to Store Location 3699.

12          THE COURT:  And which number is this on the agenda?

13          MR. FREDERICKS:  There is no actual objection.  It's

14 up for cure.  It's just noted at the bottom in the general

15 status as something we'd be going forward with respect to

16 approval.

17          THE COURT:  All right.

18          MR. FREDERICKS:  For this location, Ms. Mosier and

19 Mr. Avallone would testify that the debtors received one bid,

20 that was the bid of the landlord.  The bid proposed to waive

21 any pre-petition amounts due, to waive any rejection damage or

22 termination damage claim, but the landlord expressly preserve

23 the right to assert administrative claims for rent due,

24 including rent for the stub period of November.  Ms. Mosier and

25 Mr. Avallone would testify that this was the highest or

28

1   otherwise best bid presented at the auction and that entry into

2   this proposal is in the best interest of the debtors, their

3   estates, and as a reasonable exercise of their sound business

4   judgment.  And with that, Your Honor, that would conclude the

5   proffer of Ms. Mosier and Mr. Avallone with respect to Location

6   3699.

7         THE COURT:  Does any party wish to cross examine the

8   proffered witnesses in connection with Store Location 3699?

9                    (No audible response)

10        THE COURT:  All right, the proffer will be accepted.

11        MR. FREDERICKS:  With respect to Store Location 4305,

12  Your Honor, there's actually already been an order entered on

13  this particular location, so I apologize, but it was listed in

14  the general section as going forward.  We've learned since then

15  that an order's already been entered.

16        That would bring us back to, and this is not on the

17  agenda, Location Number 854.  As Your Honor may recall, at the

18  last hearing we sought approval of the highest or otherwise

19  best bid which was that presented by Vanguard Management

20  Services for Location 854.  I believe the bid amount was

21  $435,000.  The parties have entered into the assumption and

22  assignment agreement.  Vanguard and the effective date was

23  deemed to be March 17th, the date the Court entered an order

24  approving it.  At this point, Vanguard has not remitted payment

25  of the amount.  We have been in discussions with their counsel.

29

1  They were under the mistaken assumption that they had 30 days

2  to remit payment.  They've advised us that they are going to

3  either remit payment by today or Monday.  In the event they

4  don't remit payment, the debtors would like to seek approval of

5  the backup, the alternative bidder, which was Micro Electronics

6  which also does business as Micro Center.  Micro Center's bid

7  was $425,000.

8          Ms. Mosier and Mr. Avallone would further testify

9  that this was the second, the next highest or otherwise best

10  bid presented at the auction.  It's $10,000 below the bid

11  presented by the highest or otherwise best bidder.  Micro

12  Electronics stands ready, willing and able to close this

13  transaction and is actually excited about the possibility that

14  it may happen.  The debtors remain optimistic that they will be

15  able to close with Vanguard by Monday at the latest, and in the

16  event they don't, they will -- they may seek to close with

17  Micro Electronics.  They would further testify that entry into

18  or acceptance of this bid as the next highest or otherwise best

19  bid would be an exercise of their sound business judgment in

20  the best interest of their estates.  And with that, that would

21  conclude the testimony for the alternate bid on Location Number

22  854.

23          THE COURT:  Does any party wish to cross examine the

24  proffered witness?

25                    (No audible response)


**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right, the proffers will be accepted.

2    Does any party wish to be heard in connection with approval of

3    the backup bid?

4                    (No audible response)

5          THE COURT:  Seeing none, that will be approved.

6          MR. FREDERICKS:  I would like to add one other

7    statement for the record.  We have been in contact with the

8    landlord.  We did advise the landlord of the current

9    circumstances.  While the landlord has a preference for

10   Vanguard, they did have no objection to Micro Center as a

11   tenant on adequate assurance basis in the event it comes to

12   that.

13         THE COURT:  Thank you.

14         MR. FREDERICKS:  With that, Your Honor, I believe

15   that concludes the matter with respect to locations where we

16   would like to seek approval.  At this point I guess I'll turn

17   to the objections that are, both objections A and B have been

18   resolved.  Objection C has been adjourned.  Objection D has

19   been resolved.  Objection E has been adjourned.  Objection F

20   will be going forward, I propose to move that one until the

21   end.

22         THE COURT:  That's fine.

23         MR. FREDERICKS:  Objection G has been resolved.  As

24   we mentioned earlier, Objection H has now been resolved.

25   Objection I has been withdrawn without prejudice.  I believe

**J&J COURT TRANSCRIBERS, INC.**

31

1  counsel's here.  I'm not sure if they, without prejudice to

2  both parties.  I'm not sure if counsel.

3         THE COURT:  Anybody wish to be heard in connection

4  with Agenda Item I?  Mr. Epps?

5         MR. EPPS:  Good morning, Your Honor.  A.C. Epps Jr.,

6  on behalf of Glimcher Properties.  Your Honor, we've agreed

7  with the debtors to withdraw the objection of Glimcher

8  Properties without prejudice to either side to any issue that

9  was brought up on the merits, but just determined this was not

10 the appropriate time.

11        THE COURT:  All right, thank you, sir.

12        MR. EPPS:  Thank you.

13        THE COURT:  All right, so that will be deemed

14 withdrawn.

15        MR. FREDERICKS:  The remaining three objections noted

16 on the agenda, J, K and L have all been adjourned.  I believe

17 that counsel for Seaford Properties is on the phone.  I don't

18 believe his objection was listed on here.

19        THE COURT:  It was not and I had granted his request

20 to appear telephonically today last time we were here.

21        MR. FREDERICKS:  The debtors understood that at the

22 last hearing Your Honor overruled the objection.  Thus I,

23 that's the reason why it wasn't listed on the agenda.  I wasn't

24 aware until this morning when I was advised by a representative

25 of your chambers that this would be back on the agenda today.

**J&J COURT TRANSCRIBERS, INC.**

1  I'm not sure in what context it's back on the agenda.

2          THE COURT:  I'm assuming it has to do with the cure

3  amounts.  But I'll let Mr. Bentley advise us.  Mr. Bentley, are

4  you on the phone?

5          MR. BENTLEY:  I am, Your Honor.  Good morning.

6          THE COURT:  Would you please identify yourself for

7  the record?

8          MR. BENTLEY:  Yes.  My name is Darren W. Bentley.

9  I'm an attorney with Clement and Wheatley and we represent Sea

10 Properties I, LLC, which I'll refer to as Sea Properties.

11         THE COURT:  Very good.  And what is the basis for

12 your objection this morning?

13         MR. BENTLEY:  Your Honor is correct.  We had

14 originally objected on two grounds.  One of those, failure to

15 follow bidding procedures, was argued and decided upon at the

16 hearing on March 13th.  The other matter regarded our objection

17 to the cure amount that was proposed by the debtors, and that

18 was adjourned over to today at ten a.m., Your Honor.

19         And if I can speak briefly on that issue, Your Honor,

20 I think it makes sense since there is no sale pending on this

21 property and there are no bids on this property to go ahead and

22 adjourn the hearing for a determination of whatever that final

23 cure amount is going to be, to go and adjourn that to whenever

24 we have a sale hearing on Lease Number 805, which is my

25 client's lease, they're the landlord on that.

1          There is, however, one matter that I wanted to bring

2    to the Court's attention today because it involves non-payment

3    for March rents, which is required under 365(d)(3).  And we did

4    allege that in our initial objection, at Paragraph 12, that the

5    debtor had failed to pay the landlord for its March 2009 rent.

6    We have not yet received payment for those March rents in the

7    approximate amount of $20,000.  And we have sent the notice

8    pursuant to the Court's order that was entered at Docket Number

9    882, the order under Bankruptcy Code Section 365(d)(4),

10   extending time within which debtors may assume or reject

11   unexpired leases of non-residential real property.  And in that

12   order, the Court at Paragraph 7 ordered the debtors to timely

13   perform obligations under the leases pursuant to Bankruptcy

14   Code 365(d)(3), with, of course, the exception of the stub

15   rents, and we understand that.  But we did send out a 365(d)(3)

16   notice on March 17th via e-mail and facsimile to debtors'

17   counsel and to the Committee of Creditors and have not yet

18   received any read receipts or responses from debtors' counsel

19   as to the March payment.  And so what we'd like to see happen

20   on that, Your Honor, and we think it's reasonable, is that the

21   post-petition rents for March be paid within five days of the

22   entry of an order, or in the alternative, that the lease be

23   rejected.

24          THE COURT:  All right, thanks, Mr. Bentley.

25          MR. FREDERICKS:  Your Honor, first with respect to

**J&J COURT TRANSCRIBERS, INC.**

1 the adjournment, I have no objection to adjourning the cure

2 until either a sale hearing or a subsequent date agreed upon by

3 the parties.  If we ultimately proceed with a sale for this

4 particular location, if it makes sense for the Court's docket,

5 we could adjourn it to the 30th, and subsequently agree to

6 adjourn for hearing dates until we go forward with a sale of

7 this particular lease.

8          THE COURT:  It would probably make sense to keep it

9 on the docket just so that we don't lose it and then, you know,

10 obviously we'll just keep adjourning it until we have a sale

11 and then we can take it up at the appropriate time if that

12 makes sense to counsel.

13          MR. FREDERICKS:  Yes, and we will contact counsel,

14 you know, prior to each hearing.  Counsel will be obviously

15 notified to the extent we set up a new process or receive

16 additional bids, we'll provide them to counsel in accordance

17 with the lease procedures order.  So the landlord will be kept

18 apprised of bids or determinations we make as we make them.

19 But we'll certainly contact him prior to hearings to advise him

20 that at this point we're going to continue to adjourn the cure.

21          THE COURT:  All right.  And then this was a ground

22 lease, and you want to keep the lease going forward so that you

23 have an opportunity to market and sell the building that's

24 located on the leased property.

25          MR. FREDERICKS:  Yes.


**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.  So now with regard to the

2   March rents, you're still in possession of this property, is it

3   the debtors' intention to make the rent payment?

4          MR. FREDERICKS:  Yes, I actually just talked with my

5   client.  We're not aware today whether or not rent has been

6   paid.  We were originally only paying rent on -- we were going

7   to pay rent following the date that we rejected or sold the

8   lease, because this one is an unusual circumstance, this may

9   have slipped through the cracks.  But I've confirmed with my

10  client that we will, if rent has not been paid for the month of

11  March we will pay it in full either today or Monday.  And with

12  that, I believe that should resolve that issue for the

13  landlord.

14         THE COURT:  I think it resolves the issue as well.

15  I'm not going to enter a separate order ordering the debtor to

16  do that.  I think that the order that I have previously entered

17  covers that.  And so that's without prejudice to Mr. Bentley

18  being able to, you know, come back before this Court on a

19  motion for relief from stay if for some reason he does not

20  receive the rent in a timely fashion.

21         MR. FREDERICKS:  Thank you, Your Honor.  That's

22  acceptable to the debtors obviously.

23         THE COURT:  All right.  Anything further, Mr.

24  Bentley?

25         MR. BENTLEY:  No, Your Honor.  Thank you.  That

36

1  sounds fine.  Just for my confirmation, the next hearing that

2  we're going to continue the cure amount objection to will be

3  April 30th at ten a.m., was that correct?

4          MR. FREDERICKS:  I believe it's March 30th at ten

5  a.m.

6          MR. BENTLEY:  Thank you.  All right.  Well, thank,

7  Your Honor.

8          THE COURT:  All right.

9          MR. FREDERICKS:  With that, I believe the only

10 remaining item is Matter F, which is the objection of Cole CC

11 and related entities and I'll turn the podium over to counsel.

12         MS. PIERRO:  Good morning, Your Honor.  Kimberly

13 Pierro on behalf of the Cole landlords.  This objection

14 concerns three leases, Taunton, Mesquite and Aurora and I am

15 pleased to first report to the Court that we have had some

16 movement on resolving these issues.  About a day and a half ago

17 we've entered into some dialogue with the debtors and for all

18 three leases, Taunton, Mesquite and Aurora, one of the items

19 requested for relief was payment of March rent through the

20 rejection date, and I'm told that payment has been made on

21 Taunton from March 1st to March 10th and on Mesquite and Aurora

22 from March 1st to March 11th, and I just want to clarify that

23 on the prayer for relief in the motion, Aurora has two items.

24 One had called for immediate payment of real property taxes.

25 That's an error in the body of the motion.  Aurora was seeking

1  payment of the post-petition March rent through rejection date.

2  So I want to clarify that and I've clarified that in my

3  discussions with the debtors.

4          So those items have been resolved with just the one

5  reservation of rights if the debtor does not have an objection

6  to, we're still confirming that those premises have been

7  properly surrendered as provided under the rejection procedures

8  order.  So if that's not the case, we'd like to be able to

9  bring that back.  And that would just be a matter of

10  calculation of the days.  But we're comfortable with stating to

11  the Court that that matter is resolved.

12          Then the remaining items, with respect to the Taunton

13  lease, involve payment of real property taxes which came due

14  post-petition and payment of a reconciled amount of CAM charges

15  that also came due post-petition.  These are in the prayer for

16  relief Items one and two under subparagraph A for the Taunton

17  lease.  And we've been in discussions with the debtors and

18  we've started exchanging calculations, and I do think that we

19  would be able to resolve this with the debtors to make a

20  payment or some sort or arrangements that are agreeable to both

21  parties with regard to the Taunton lease.  And I would suggest

22  that we continue those items over to March 30th.  I believe

23  that is also the date that we had continued the tax issue --

24  payment of the tax issue in Taunton previously from our

25  previous motion for adequate protection.  So if the debtors do

1  not have an objection to continuance of those two items, and in

2  the meantime we can see if we can resolve that.

3       The remaining items therefore involve the Mesquite

4  lease and the Aurora lease.  Two items, first with regard to

5  the Mesquite lease, the Cole landlords are seeking to condition

6  rejection of the lease on allowance of an administrative claim

7  for the stub period rent in the amount of 35,862.67.  In

8  addition, for both the Mesquite and Aurora leases, the

9  landlords are seeking allowance of an administrative expense

10 claim for real property taxes that have accrued on the property

11 since January 1st through the rejection date.  But I will state

12 that those tax bills have not been received by the taxing

13 authorities.  However, Cole's position is that the taxes have

14 accrued, they're a part of rent, and Cole's seeking an allowed

15 administrative, it's seeking to condition rejection on the

16 allowance of an administrative claim for use of the property

17 and as part of that use, taxes have accrued.  But as I have

18 said, the bill has not --

19       THE COURT:  But you don't know what they are yet.

20       MR. PIERRO:  That is correct.  We suggested using

21 2008 as a model for the amount of the claim, but I think that

22 there are two issues there, the allowance of an administrative

23 claim for those taxes and what that amount may be.  We've

24 suggested using 2008 as a basis for estimating those claims,

25 but I think that they are broken down into those two issues.

**J&J COURT TRANSCRIBERS, INC.**

1        THE COURT:  Why can't you just file a claim for

2  administrative expense?  I don't understand what you said, a

3  condition of rejection.  Are you suggesting that the debtor

4  cannot reject the lease without somehow, you know, having

5  satisfied the claims of the landlord?

6        MS. PIERRO:  I don't think we're asking for

7  satisfaction.  With the remaining issues, there isn't a request

8  for immediate payment, but these are outstanding issues that

9  the landlords are seeking to have resolved before there's a

10  final rejection, and specifically just the administrative

11  claims and the allowance of that.  But that is what the

12  landlords are seeking is to condition the rejection on

13  allowance of those administrative items.

14        THE COURT:  But we reject leases all the time and

15  then there are lease rejection damage claims that flow from

16  that and you do that through the claim process by filing a

17  claim, a proof of claim with the Court or request for payment

18  of administrative expense.  Why is this different?  I guess I'm

19  having trouble understanding that.

20        MS. PIERRO:  I think it's just a matter of assurance

21  for the landlord that wanting to bring these issues before the

22  Court in the most expedient manner, and that is why it is

23  couched in this term of objection.  A conditional objection in

24  the sense that the landlord's seeking that the condition be

25  conditioned on these items.  However, there will be an

1 administrative claims process.  I do agree with that.

2          THE COURT:  Okay.  And is this the same issue with

3 regard to the Aurora lease?

4          MS. PIERRO:  Yes, yes.  I broke it down into issues,

5 so yes.

6          THE COURT:  Okay, very good.  Let me hear from Mr.

7 Fredericks.

8          MS. PIERRO:  Certainly, thank you.

9          MR. FREDERICKS:  Thank you, Your Honor.  Ian

10 Fredericks for the record again.  I think Your Honor hit the

11 nail on the head, and this was precisely our point in

12 discussions with counsel is these are really claims issues.

13 The only issue for rejection is whether the debtors have

14 satisfied their business judgment.  We believe that we have.  I

15 also would object to having any of the matters raised in this

16 objection to a rejection motion adjourned to a subsequent

17 hearing.  To the extent -- Cole has two things by way of

18 context.  They have the motion they filed previously, and there

19 may be overlap with these issues.  Maybe they're asking for all

20 these same issues and the Court's already decided on some of

21 them at the March, I believe three hearing, but this isn't the

22 proper method by which to ask for allowance or payment of an

23 administrative expense.  To the extent that Cole has already

24 asked for that relief and it's been ruled upon, we ask for the

25 Court to live by its prior ruling.  To the extent some matter

1 has been adjourned to March 30th, we have no objection to that

2 being heard.  But to the extent that Cole's asking for new

3 relief here, we think the appropriate method would be for Cole

4 to file a motion for allowance and payment of administrative

5 expense on proper notice to the debtors and allow the debtors

6 to, you know, appropriately respond.  With that, we ask for

7 Your Honor to overrule the objection.

8         THE COURT:  All right, thank you.  Anything further,

9 Ms. Pierro?

10        MS. PIERRO:  No, Your Honor.  But again, just to

11 clarify where we stand as far as March 30th from the previous

12 motion for adequate protection, the one piece, the Taunton tax

13 piece was continued over to the 30th and I think that is on the

14 basis that that tax bill had come due and it was a matter of

15 what date was the rejection happening so we could actually talk

16 about determination of --

17        THE COURT:  So that's not up for today, that's up for

18 March 30th.

19        MS. PIERRO:  Right.  But a piece of that, the Taunton

20 tax piece is, it is overlapping as Mr. Fredericks indicated.

21 So I think that that should at least be continued over to the

22 30th, and the other matter --

23        THE COURT:  Okay, I'm confused.  Has the Taunton

24 lease real property tax issue already been adjourned to March

25 30 or not?

**J&J COURT TRANSCRIBERS, INC.**

42

1          MS. PIERRO:  Yes.

2          THE COURT:  It has.  Okay.

3          MS. PIERRO:  Yes.

4          THE COURT:  Okay.  So what is the overlapping piece

5    I'm missing?

6          MS. PIERRO:  I'm sorry.  That was previously

7    adjourned on our previous motion that was heard I believe the

8    third.

9          THE COURT:  Okay.  So that's not before me?

10         MS. PIERRO:  Exactly.  But the issue there was that

11   there was no way to determine the amounts, because that lease

12   hadn't been rejected as of the third.  It has since been, so

13   this particular motion was setting an amount to that as a

14   continuation.  So I think that it does properly belong on the

15   third as -- I'm sorry, on the 30th to deal with the payment of

16   the Taunton post-petition tax bill.

17         MR. FREDERICKS:  I think my point, Your Honor, was

18   was that there may be, what they're asking for here today in

19   this objection may be some overlap on the 30th.  To the extent

20   they've already filed a motion and it's going forward on the

21   30th, then I think their motion should go forward on the 30th.

22         THE COURT:  And that's what I think too.  And so I'm

23   just trying to figure out what that was.

24         MR. FREDERICKS:  Yes.

25         THE COURT:  Okay.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. FREDERICKS:  But I don't believe any part of this

2     particular objection to this motion should be continued to the

3     30th.   In other words, they have their pending motion, they can

4     assert whatever rights they have with respect to that motion,

5     but any new rights or anything that kind of overlaps with this,

6     this matter should be resolved, I believe, today, unless the

7     Court determines otherwise.

8          THE COURT:  You want these three leases to be

9     rejected today.

10          MR. FREDERICKS:  Yes, rejected today and for this

11     objection to be overruled today.

12          THE COURT:  Okay, very good.  The Court is going to

13     approve the rejection of the three leases today, and I ask Mr.

14     Fredericks to please submit an order to that effect.  To the

15     extent that we have anything carried over as far as any claims

16     that have been asserted that the Court needs to consider or has

17     previously been docketed for the 30th, we'll hear those on the

18     30th.  But I just don't think it's appropriate to raise

19     objections to a rejection motion by way of requesting

20     administrative claims.  I think those are two separate

21     procedures.

22          MR. FREDERICKS:  Thank you, Your Honor.  One point of

23     clarification.  Under the rejection procedures order, the

24     leases were deemed rejected on a particular -- as of the

25     running of the time period in the notice.  Would you like us to

44

1    submit a form of order on these three leases or can we stand on

2    the notice that was filed?

3              THE COURT:  If you're comfortable standing on the

4    notice that was filed, the Court certainly is.

5              MR. FREDERICKS:  All right.  We are.  Thank you, Your

6    Honor.

7              THE COURT:  All right.

8              MR. FREDERICKS:  With that, Your Honor, I believe

9    that concludes the matters on the agenda.

10             THE COURT:  Is there any other business we need to

11   take up then this morning?

12             MR. FREDERICKS:  I don't believe so.

13             THE COURT:  All right.  Very good.

14             MR. FREDERICKS:  Thank you for your time this

15   morning, Your Honor.

16             THE COURT:  Thank you.

17                         *  *  *  *  *

18                **C E R T I F I C A T I O N**

19             I, RITA BERGEN, court approved transcriber, certify

20   that the foregoing is a correct transcript from the official

21   electronic sound recording of the proceedings in the above-

22   entitled matter, and to the best of my ability.

23   /s/ Rita Bergen                    DATE:  March 31, 2009

24   RITA BERGEN

25   J&J COURT TRANSCRIBERS, INC.


                    **J&J COURT TRANSCRIBERS, INC.**