Hearing Date:    April 28, 2009 at 10:00 a.m.
Objections Due:    April 21, 2009

Scott E. Blakeley, Esq. (Cal. Bar No. 141418)
Ronald A. Clifford, Esq. (Cal. Bar No. 246542)
BLAKELEY & BLAKELEY LLP
4685 MacArthur Court, Suite 421
Newport Beach, California 92660
(949) 260-0611

Richard I. Hutson, Esq. (VSB No. 71097)
FULLERTON & KNOWLES, P.C.
12644 Chapel Rd., #206
Clifton, CA 20124
(703) 818-2602

Counsel to Export Development Canada

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

---------------------------------------------------X
In re:                                           :    Chapter 11
                                                 :
CIRCUIT CITY STORES, INC., et al.,               :    Case No. 08-35653
                                                 :
           Debtors.                              :
                                                 :    Jointly Administered
---------------------------------------------------X

### MOTION FOR ALLOWANCE OF THE LATE FILED ADMINISTRATIVE EXPENSE CLAIM OF EXPORT DEVELOPMENT CANADA

Export Development Canada ("EDC") hereby moves this Court for entry of an order allowing its late filed administrative expense claim, and as grounds for its motion states as follows:

/ / /

/ / /

/ / /

1

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue in these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 503(b)(9), 503(a), 507(a)(2) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

**BACKGROUND**

3. Circuit City Stores, Inc., et al. (the "Debtors") filed voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on November 10, 2008 (the "Petition Date").

4. On November 10, 2008, the Debtors filed a motion requesting that the Court establish a bar date for filing requests for payment of administrative expense claims under Bankruptcy Code §§ 105 and 503(b)(9), which bar date was to be thirty (30) days from the service of the bar date notice on creditors of the Debtors (the "Bar Date Motion"). The Court entered an order approving the Bar Date Motion on November 12, 2008.

5. The Debtors filed a proof of service of the Notice of Bar Date on their creditors, including TechCraft Manufacturing, Inc. ("TechCraft"), on November 13, 2008, just three (3) days after the Petition Date, giving creditors, under the terms of the Bar Date Motion, until December 19, 2008 to file proofs of claim regarding any claims under § 503(b)(9) with the Debtors' claims agent Kurtzman Carson Consultants, LLC.

6. TechCraft, a Canadian corporation, shipped goods to the Debtors on credit within twenty (20) days preceding the Petition Date with an invoice value of $551,624.90. True and correct copies of the invoices and bills of lading are attached hereto as Exhibit "1" and incorporated herein by reference.

7. Export Development Canada ("EDC") provides, *inter alia*, credit insurance to Canadian companies that export goods to companies located in the United States. Under the terms of the credit insurance policy, EDC pays the insured should its customer file bankruptcy.

8. EDC insured TechCraft's pre-petition credit sales to the Debtors.

9. TechCraft filed an Application for Payment on its claim against the Debtors with EDC on November 25, 2008. TechCraft entered an Assignment Agreement, whereby TechCraft assigned its claims against the Debtors in the instant bankruptcy case to EDC on January 16, 2009. EDC paid TechCraft on the Application for Payment on January 21, 2009.

10. Neither EDC nor TechCraft filed a proof of claim for the § 503(b)(9) claim before the December 19, 2008 deadline. As stated supra, there was a fifty-two (52) day window in which TechCraft applied for payment with EDC, and when EDC was assigned TechCraft's claim. The Bar Date expired during this reconciliation period.

11. TechCraft did not file a § 503(b)(9) proof of claim because it had filed the Application for Payment with EDC on November 25, 2008, and forwarded EDC the Bar Date Notice on December 11, 2008.

12. EDC is a large entity, and many insurance claims similar to TechCraft's are filed with it. It is possible for information in fast-paced bankruptcy cases to be

delayed in reaching those within EDC that perform functions such as filing proofs of claim due to its size, the sheer number of claims being filed in today's economic climate and the lengthy claims reconciliation process. EDC regularly contacts counsel for the debtor in bankruptcy cases it has a claim assigned to it in to determine if bar dates have been established to ensure that it does not miss important dates due to the above-stated factors.

13. Jo-Ann Keech-Barker ("Barker"), an employee of EDC, out of an abundance of caution, sent an e-mail to counsel for the Debtors, Sarah Beckett-Boehm ("Boehm"), on December 2, 2008, seventeen (17) days prior to the bar Date, inquiring as to the bar date for filing proofs of claim. A true and correct copy of the e-mail is attached hereto as Exhibit "2" and incorporated herein by reference. Boehm responded to Barker's e-mail stating that "[t]he general bar date for filing proofs of claim has not yet been established." Boehm never mentioned the § 503(b)(9) Bar Date, or that a separate § 503(b)(9) Bar Date had been set by the Court on November 12, 2008, even though the Court's on-line docket lists Boehm as the attorney that filed the motion. A true and correct copy of the Court's docket is attached hereto as Exhibit "3" and incorporated herein by reference. This material omission on the part of Boehm is at least partially responsible for failure of EDC to realize that a § 503(b)(9) proof of claim needed to be filed in short order.

14. Barker also reviewed the claims agent's website on December 2, 2008, and did not find any information regarding the § 503(b)(9) Bar Date at that time.

15. Once EDC did become aware that the § 503(b)(9) Bar Date had passed after the assignment of TechCraft's claim to it, it immediately filed a proof of claim on

4

the § 503(b)(9) claim and general unsecured claim of TechCraft on January 21, 2009. A copy of the proof of filing of the claim from the creditor register of the claims agent is attached hereto as Exhibit "4" and incorporated herein by reference.

### RELIEF REQUESTED

16. By this Motion, EDC requests that the Court extend the deadline in which it must file a proof of claim for its § 503(b)(9) claim to January 21, 2009, thereby preventing the barring of its § 503(b)(9) claim on the basis of a tardy filing.

### BASIS FOR RELIEF

**A.    EDC Has A Valid 503(b)(9) Claim**

17. Section 503(b)(9) of the Bankruptcy Code provides:

[A]fter notice and a hearing, there shall be allowed administrative expenses, including, the value of goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business.

18. Here, TechCraft sold goods totaling $551,624.90 to the Debtors in the ordinary course of the Debtors' business within the twenty (20) days preceding the Debtors' filing of its bankruptcy petition. As assignee of TechCraft's claim against the Debtors, EDC has a valid § 503(b)(9) claim against the Debtors.

**B.    The Deadline In Which EDC Must File Its § 503(b)(9) Claim Should Be Extended Due To Excusable Neglect**

19. The Court may "allow the late filing of [a] claim after [the] bar date has expired if claimant's failure to file earlier was [the] result of excusable neglect." *In re Enron Corp.*, 298 B.R. 513, 521 (S.D.N.Y. 2003); *In the Matter of Papp International,*

5

*Inc.*, 189 B.R. 939 (Bankr. Neb. 1995). "Whether [a] creditor's neglect in failing to file [a] proof of claim prior to expiration of [the] claims bar date is [the] result of excusable neglect, so as to permit [the] court to accept [the] creditor's late-filed proof of claim, is [an] equitable determination, that takes [into] account all relevant circumstances surrounding [the] creditor's omission, including the following: (1) danger of prejudice to the debtor; (2) length of delay and its potential impact on judicial proceedings; (3) reason for delay, including whether it was within [the] creditor's reasonable control; and (4) whether [the] creditor acted in good faith." *In re Enron Corp.*, 298 B.R. at 525; *See also Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). "Not all factors need to favor [the] moving creditor to warrant acceptance of [the] creditor's late-filed proof of claim on [the] 'excusable neglect' theory." *Id.* "In deciding whether to accept [the] creditor's late-filed proof of claim on 'excusable neglect' theory, [the] court should not accord controlling weight to any single circumstance or simply proceed down a checklist ticking off traits; rather, courts are to look for synergy of several factors that conspire to push [the] analysis one way or the other." *Id.*

  **1. Danger of Prejudice to the Debtors**

  20. In determining whether prejudice exists, courts have weighed a number of considerations, including (1) the size of the late claim in relation to the estate, (2) whether a disclosure statement or plan of reorganization has been filed or confirmed with knowledge of the existence of the claim, and (3) the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated or negotiated. *Id.*

6

21. EDC's late-filed § 503(b)(9) claim totals $551,624.90. According to the Debtors' petitions, they have more than 100,000 creditors holding more than $1 billion in liabilities. The Debtors also have more than $1 billion in assets. EDC's § 503(b)(9) claim is particularly small in relation to the estate's assets and liabilities.

22. The Debtors have not filed a disclosure statement or plan with the Court. In fact, the Court entered an order on March 3, 2009, approving the Debtors' motion requesting an extension of the period of exclusivity to file a disclosure statement and plan until July 8, 2009.

23. The allowance of EDC's late-filed claim will have no effect on the filing of any such plan.

**2.    Length of Delay and Its Potential Impact on Judicial Proceedings**

24. The length of delay here was thirty-three (33) days. This is a minimal delay. In a leading case, *In re Enron*, the court held that prejudice is found when the length of delay is six (6) months. 298 B.R. at 526. Thirty-three (33) days in a case the size of the instant one is minimal and will have virtually no impact on the judicial proceedings.

**3.    Reason for Delay**

25. EDC and TechCraft were in the process of assignment of TechCraft's claims against the Debtors and payment of the insurance claim when the Bar Date passed. With the assignment pending, neither party filed the required proof of claim. It is reasonable for such errors to occur when both parties to the assignment are in the midst of transferring ownership of the bankruptcy claim, and the Bar Date is aggressively set days after the case was filed.

7

26.     Further, Barker of EDC took the steps to contact Boehm, the attorney for the Debtors that filed the § 503(b)(9) Bar Date Motion, to inquire as to whether a proof of claim bar date had been set on December 2, 2008.  Boehm stated that "[t]he general bar date for filing proofs of claim has not yet been established."  No mention of the looming § 503(b)(9) Bar Date was mentioned, which would have alerted Barker that the § 503(b)(9) Bar Date was less than three (3) weeks away.  EDC is a large insurance entity with many claims filed in the times of late, and the claims reconciliation process can be lengthy in some cases.  Information regarding these cases can sometimes be slow in reaching those within EDC that make decisions such as the filing of proofs of claim.  For this reason, Barker contacted counsel for EDC as stated above.  Counsel for the Debtors must be able to be relied upon for providing information to creditors upon request.  Mailings of information can be delayed in reaching its destination or unintelligible to creditors.  Barker relied upon the information, or lack thereof, of Boehm.  Without an indication of the looming date from Boehm, EDC saw no reason to rush to file any proofs of claim in the instant case prior to assignment of TechCraft's claim.  This was, at least in part, a reason for the delay in filing the proof of claim.

27.     In the case *In re Nutri Bevco, Inc.*, a creditor asserted that the claims bar date should be extended because counsel for the debtor failed to disclose a pending claims bar date in a telephone conversation.  117 B.R. 771, 788 (Bkrtcy. S.D.N.Y. 1990).  Specifically, the creditor inquired as to whether a mailing had been made, and what the nature of any such mailing was.  *Id.*  Counsel for the debtor verified that a mailing had been made, but failed to mention that a claims bar date order was contained in the mailing.  *Id.*  The court held that this omission alone did not give rise to the type of

8

conduct that would allow the claims bar date to be extended, but went on to state that an important fact leading to its holding was that the creditor never specifically asked whether a claims bar date had been fixed during the phone conversation. *Id.*

28. In the instant case, on December 2, 2008, Barker specifically asked "when is the Bar Date for filing proof of claims." Unlike the *Nutri Bevco* case, a direct question regarding the claims bar date was posed to Boehm, and the § 503(b)(9) Bar Date was never mentioned. EDC had no reason to believe that it needed to act within the seventeen (17) days following that conversation because Boehm did not disclose the § 503(b)(9) Bar Date.

29. Barker also reviewed the claims agent's website and did not find any information regarding the § 503(b)(9) Bar Date.

30. The moment EDC took assignment of the claim it began to review the claim, realized that the Bar Date for § 503(b)(9) claims had passed, and immediately prepared and filed a proof of claim on January 21, 2009.

### 4. **Good Faith**

31. EDC acted in the up most good faith in filing the § 503(b)(9) claim. There are no facts to suggest that EDC or TechCraft have acted in bad faith at any time in the instant case.

### C. **Cause Exists for the Court to Extend the Time in Which EDC Must File Its Section 503(b)(9) Proof of Claim**

32. Section 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file a request for payment of an administrative expense, *or may tardily file such request if permitted by the court for cause*." (emphasis added). Courts have held that the

9

"broad term 'cause' gives the presiding court wide discretion to allow such belated filings in the interest of justice." *In re Heartland Steel, Inc.*, 2003 WL 23100035 (S.D. Ind. 2003). Courts have further held that where it is in the interest of justice, and no violence is done to other interests in procedural regularity, late-filed requests for administrative expenses may be allowed. *Id.* at 4.

33. As provided supra, EDC has a valid § 503(b)(9) claim. The time period in which EDC analyzes claims, and eventually determines whether or not they should be paid, overlapped with the Bar Date for § 503(b)(9) claims in this case. The motion on the Bar Date in this case was filed concurrently with the petition. These are unusual circumstances present in that this bar date was established in this case three (3) days after the petition was filed, and the swift approach the Debtors have taken in the instant case necessarily results in situations such as the one EDC faces. Fairness and equity require that the Court extend the Bar Date for EDC to file its claim. The relief requested herein will not work to prejudice the rights of the Debtors or other creditors, and so should be granted.

///

///

///

## CONCLUSION

WHEREFORE, EDC respectfully requests that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other relief as may be just and proper.

Dated:  April 6, 2009                FULLERTON & KNOWLES, P.C.

By: /s/Richard I. Hutson
Richard I. Hutson, Esq.
12644 Chapel Rd., #206
Clifton, VA 20124

*-and-*

BLAKELEY & BLAKELEY LLP

Ronald A. Clifford, Esq.
Scott E. Blakeley, Esq.
1000 Quail Street, Suite 200
Newport Beach, CA 92660
(949) 260-0611

*Attorneys for Export Development Canada*

## Certificate of Service

      I hereby certify that on April 8, 2009, a copy of the foregoing was filed electronic mail on the following: (i) the Core Group, which includes the Debtors, co-counsel to the Debtors, the Office of the United States Trustee, co-counsel for any committee, counsel to the agents for the Debtors' pre-petition lenders, and counsel to the agents for the Debtors' post-petition lenders; (ii) the 2002 List; and (iii) those additional parties as required by the Case Management Order (all of which are defined in the Case Management Order).

                                            /s/Ronald A. Clifford__
                                            Ronald A. Clifford, Esq.