| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & | MCGUIREWOODS LLP |
| FLOM, LLP | One James Center |
| One Rodney Square | 901 E. Cary Street |
| PO Box 636 | Richmond, Virginia 23219 |
| Wilmington, Delaware 19899-0636 | (804) 775-1000 |
| (302) 651-3000 | |

– and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
         Debtors.             :   Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363(b) AND 503(c)(3) APPROVING ADDITIONAL COMPENSATION FOR ELIGIBLE EMPLOYEES**

The debtors and debtors in possession in the above-captioned, jointly administered cases

(collectively, the "Debtors")[1] hereby move for entry of an order, under sections 105, 363(b) and, to the extent applicable, 503(c), of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, payment of the Stipend (as defined herein) to Eligible Employees (as defined herein).  In support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

2. The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105, 363(b) and, to the extent applicable, 503(c)(3).

**BACKGROUND**

3. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going-out-of-business sales at the Debtors' remaining stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going-out-of-business sales at the Debtors' remaining stores pursuant to the Agency Agreement.

**RELIEF REQUESTED**

7. By this Motion, the Debtors seek entry of an order under Bankruptcy Code sections 105, 363(b) and, to the extent applicable, 503(c) (i) authorizing, but not directing, payment of the Stipend to Eligible Employees, and (iii) allowing all payments of the Stipend as administrative expenses of these estates.

8. As set forth herein, the Debtors do not believe that the Stipend implicates Bankruptcy Code section 503(c).  However, to the extent that section 503(c) is applicable, the Debtors believe that such payments are justified by the facts and circumstances of their bankruptcy cases.

**BASIS FOR RELIEF**

9. Prior to the Petition Date, the Debtors provided their employees with a number of employee benefit programs (the "Employee Benefit Programs"), including health insurance, dental insurance, vision insurance, life insurance, short and long term disability insurance, an employee stock purchase program, an employee assistance program, a 401-K program, a supplemental 401-K program, and an associate discount program, each as more fully enumerated in the Debtors' Motion for Order Pursuant to Bankruptcy Code

Sections 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rule 6003 Authorizing Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits (Dkt. No. 6, the "Employee Benefits Motion"). The Employee Benefit Programs were funded to varying degrees by contributions from the Debtors and participating employees.

   10. By the Court's Order Pursuant to Bankruptcy Code Section 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rules 6003 Authorizing Debtors to Pay Prepetition Wages, Compensation, and Employee Benefits (Dkt. No. 80, the "Employee Benefit Order"), the Debtors received authorization, but not direction, to continue most of the Employee Benefit Programs in the ordinary course of business.  Pursuant to the Employee Benefit Order, the Debtors continued to provide certain Employee Benefit Programs after the Petition Date.

   11. As this Court is aware, and as set forth above, on January 16, 2009, the Debtors commenced liquidating their assets.  As of the date hereof, the Debtors have closed all of their retail stores and are in

5

the process of selling their remaining assets and winding down their estates.

12.  Given the liquidation, the Debtors have, by necessity, drastically reduced their workforce. Indeed, over 99% of the Debtors' workforce is no longer with the company, and as of April 1, 2009, the Debtors employed approximately 162 employees, including certain remaining officers (the "Eligible Employees").  Due to this workforce reduction, the Debtors estimated that continuing certain of the Employee Benefit Programs could cost the Debtors and their estates approximately $1 million per month.  Given the cost to the estates, the Debtors determined to cease the Employee Benefit Programs (to the extent not already frozen) effective March 31, 2009.

13.  As a result of the loss of the Employee Benefit Programs, the Eligible Employees have lost significant non-cash compensation.  Additionally, to the extent Eligible Employees wish to obtain alternate employee benefits previously provided by the Employee Benefit Programs, such as health, dental, or vision insurance or other lost benefits, the Eligible Employees will need to use their cash compensation to purchase

replacement benefits from third parties.  Thus, the Eligible Employees compensation could be further reduced if they purchase any such benefits.

14.  To attempt to minimize the lost compensation and/or defray costs associated with obtaining alternate benefits, and in order to avoid further deterioration of employee morale during the difficult wind-down period, the Debtors seek to pay each Eligible Employee a stipend of an additional $200 per week or $400 per pay period (the "Stipend").  All of the Eligible Employees are paid bi-weekly, leading to an estimated cost of approximately $320,000 for the remaining eight months of fiscal year 2009.

15.  As noted, the Stipend will take the form of a pre-tax cash addition to each Eligible Employee's paycheck.  On a post-tax basis, each Eligible Employee will thus be able to use the Stipend to defray any additional costs incurred in replacing the benefits previously provided by the Employee Benefit Programs, or for any other purpose which the Employee chooses.

16.  The Debtors believe the Stipend will achieve the proper balance between the need to reduce the expenses of the estates as much as possible, in order to preserve value, and the need to prevent further

7

deterioration of employee morale throughout the wind-down process.

17. As this Court is aware, the Debtors are now operating with minimal staff under less than ideal conditions. The loss of the Employee Benefit Programs, while necessary from a cost perspective, risks leaving employees without the safety net of health insurance and poses a significant risk to further loss in employee morale at a critical stage in the these cases – the wind-down period. Thus, the Debtors believe the Stipend is necessary to counteract the deterioration of employee morale caused by the loss of the Employee Benefit Programs while still allowing for a reduction in costs to the estates.

18. Accordingly, the Debtors request that the Court approve payment of the Stipend to the Eligible Employees, as set forth above.

**APPLICABLE AUTHORITY**

**I.   PAYMENT OF THE STIPEND IS A VALID EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT AND WARRANTED UNDER BANKRUPTCY CODE SECTION 363(B).**

19. Bankruptcy Code section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

20. Under Bankruptcy Code section 363, this Court may approve a debtor's request for relief when the debtor demonstrates a sound business justification for seeking such relief. In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

21. Once a debtor articulates a valid business justification for a particular form of relief, the Court reviews the debtor's request under the "business judgment rule." The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule "'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" See id.

22. As set forth above, the Debtors have articulated valid business reasons for payment of the Stipend. Among other things, the Stipend represents a lower-cost alternative to continuation of the Employee

9

Benefit Programs while providing the Eligible Employees with additional compensation that may be used for any purpose, including the purchase of lost employee benefits such as health insurance. In addition, the Stipend will have the added benefit of preserving (or, at a minimum, limiting the loss of) employee morale, notwithstanding the termination of the Employee Benefit Programs. Accordingly, the Debtors believe that valid business reasons exist for the payment of the Stipend to the Eligible Employees and, thus, that the Stipend should be approved.

## II. PAYMENT OF THE STIPEND DOES NOT CONFLICT WITH BANKRUPTCY CODE SECTION 503(c)(1) or (c)(2).

23. The Stipend does not conflict with Bankruptcy Code section 503(c)(1). That section applies only to payments that are meant to induce insiders to "remain with the [debtors'] business." 11 U.S.C. § 503(c)(1). The Stipend is not intended to "induce" any Eligible Employee to "remain with the [debtors'] business." Instead, it is aimed at compensating such Employees for the lost non-cash compensation and decreased compensation in the event such Employees desire to purchase lost employee benefits from third parties. Consequently, the Stipend is simply an alternate compensation structure -- shifting payments from the more

expensive Employee Benefit Programs to the less costly Stipends -- not a retention plan for insiders subject to the requirements of Bankruptcy Code section 503(c)(1).

24.  Nor is the Stipend a severance program for insiders subject to the provisions of Bankruptcy Code Section 503(c)(2).  See 11 U.S.C. § 503(c)(2).  Specifically, the Stipend is payable to Eligible Employees only until termination of their employment with the Debtors.  Under the proposed terms of the Stipend, Eligible Employees will simply receive the Stipend payments along with payment of their regular paycheck.  Therefore, the Stipend is not a severance plan subject to the requirements of Bankruptcy Code section 503(c)(2).

### III. THE STIPEND IS JUSTIFIED UNDER THE FACTS AND CIRCUMSTANCES UNDER BANKRUPTCY CODE SECTION 503(c)(3).

25.  Bankruptcy Code section 503(c)(3) provides:

> [There shall neither be allowed, nor paid--]
> (3) other transfers or obligations that are outside the ordinary courts of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3).

26.  Courts have held that the requirement that transfers or obligations be "justified by the facts and circumstances of the case" is a reiteration of the business judgment test (or sound business judgment test) incorporated into Bankruptcy Code section 363(b) (and as set forth above) and under which courts traditionally evaluated executive compensation programs prior to recent amendments to the Bankruptcy Code.  See In re Dana Corp., 567 B.R. at 576; In re Nobex Corp., Case No. 05-20050 (Walrath, J.) (Bankr. D. Del. Jan. 12, 2006) ("So I do read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside the ordinary course of business are those that are justified by the facts and circumstances of the case.  Nothing more – no further guidance being provided to the Court by Congress, I find it quite frankly nothing more than a reiteration of the standard under 363 . . . under which courts had previously authorized transfers outside the ordinary course of business and that is, based on the business judgment [sic] of the debtor, the court always considered the facts and circumstances of the case to determine whether it was justified."); In re Calpine Corp., Case No. 05-60200 (Lifland, J.) (approving an incentive plan under Bankruptcy Code section 503(c)(3) pursuant to the business judgment test); 4 Collier on

12

Bankruptcy ¶ 503.17[3] (15th rev. ed. 2006) (indicating that the standard for approval under Bankruptcy Code section 503(c)(3) is "unlikely to be much different than the standard for approval that would otherwise be applied by the court").

27.  As demonstrated above, the Debtors have established a sound business justification for payment of the proposed Stipend.  The Stipend will reduce costs to the estate and shore up employee morale among the Eligible Employees in the face of the loss of the Employee Benefit Programs.  Additionally, the Stipend is designed to maximize value for the Debtors' estates and creditors by reducing costs previously associated with the Employee Benefit Programs.

28.  Finally, the Stipend is fair and reasonable and does not discriminate among members of the Debtors' workforce, as it provides payments to all of the Eligible Employees, who comprise all of the employees remaining with the Debtors as of **April 1, 2009**.  Moreover, the total amount of the Stipends is reasonable, and in fact represents a notable cost-savings to the Debtors' estates as compared to the Employee Benefit Programs.

IV.  **PAYMENT OF THE STIPEND IS ALSO APPROPRIATE UNDER BANKRUPTCY CODE SECTION 105(A).**

29.  Bankruptcy Code section 105 provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

30.  As set forth in detail above, the Stipend is critical to the Debtors' efforts to minimize costs and maximize value for their estates throughout the wind down process. The efforts of the Eligible Employees in facilitating the wind down process are essential to the Debtors. Therefore, the costs associated with the Stipend are more than offset by the elimination of the costs associated with the Employee Benefit Programs.

31.  For all the foregoing reasons, the Debtors submit that the Stipend should be approved.

V.  **WAIVER OF THE TEN-DAY STAYS PROVIDED BY BANKRUPTCY RULE 6004 SHOULD BE WAIVED.**

32.  Bankruptcy Rule 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

33.  The Debtors request that the Court waive the ten-day stay of Bankruptcy Rules 6004 with respect to the Stipend following entry of the Order approving such

plan.  By waiving such requirements, the Debtors will be able to immediately provide the Stipend to the Eligible Employees.  This is particularly important as the Debtors have already terminated the Employee Benefit Programs.

## NOTICE

34.  Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (Docket No. 130).  The Debtors submit that, under the circumstances, no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

35.  Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate written memorandum of law be waived.

## NO PRIOR REQUEST

36.  No previous request for the relief sought in this Motion has been made to this Court or any other Court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: April 8, 2009          SKADDEN, ARPS, SLATE, MEAGHER &
      Richmond, Virginia    FLOM, LLP
                                       Gregg M. Galardi, Esq.
                                       Ian S. Fredericks, Esq.
                                       P.O. Box 636
                                       Wilmington, Delaware 19899-0636
                                       (302) 651-3000

                                            - and -

                                       SKADDEN, ARPS, SLATE, MEAGHER &
                                       FLOM, LLP
                                       Chris L. Dickerson, Esq.
                                       333 West Wacker Drive
                                       Chicago, Illinois 60606
                                       (312) 407-0700

                                            - and -

                                       MCGUIREWOODS LLP

                                       /s/ Douglas M. Foley          .
                                       Dion W. Hayes (VSB No. 34304)
                                       Douglas M. Foley (VSB No. 34364)
                                       One James Center
                                       901 E. Cary Street
                                       Richmond, Virginia 23219
                                       (804) 775-1000

                                       Counsel for Debtors and Debtors
                                       in Possession