UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| IN RE: | . | Case No. 08-35653(KRH) |
| | . | |
| | . | |
| | . | |
| CIRCUIT CITY STORES | . | 701 East Broad Street |
| INC., | . | Richmond, VA 23219 |
| | . | |
| | . | |
| Debtor. | . | March  30, 2009 |
| . . . . . . . . . . . . .. | | 11:06 a.m. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          McGuireWoods LLP
                         By:  DOUGLAS FOLEY, ESQ.
                         9000 World Trade Center
                         101 W. Main St.
                         Norfolk, VA  23510

                         McGuireWoods LLP
                         By:  SARAH B. BOEHM, ESQ.
                         One James Center
                         901 East Cary Street
                         Richmond, VA  23219

                         Skadden Arps Slate Meagher & Flom LLP
                         By:  GREGG M. GALARDI, ESQ.
                         One Rodney Sq.
                         Wilmington, DE 19899

Proceedings recorded by electronic sound recording, transcript
produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311   Fax No. (609) 587-3599**

**APPEARANCES (CONT'D):**

| | |
|---|---|
| For the Official<br>Committee of Unsecured<br>Creditors: | Tavenner & Beran, PLC<br>By:  PAULA BERAN, ESQ.<br>20 North Eighth Street<br>Second Floor<br>Richmond, VA  23219 |
| | By:  ROBERT FEINSTEIN, ESQ. |
| For Various Landlords: | Christian & Barton, LLP<br>By:  AUGUSTUS C. EPPS, JR., ESQ.<br>909 East Main Street<br>Suite 1200<br>Richmond, VA  23219 |
| For Lexar Media: | Law Office of Valerie Morrison<br>Suite 6200<br>7925 Jones Branch Drive<br>Mclean, VA  22102 |
| For TSA Stores: | NEIL GOLDMAN, ESQ. |
| For TJ Maxx: | Sands Anderson<br>By:  LISA TAYLOR HUDSON, ESQ.<br>801 East Main Street<br>Suite 1800<br>Richmond, VA  23219 |
| For the Joint Venture: | Wachtell, Lipton, Rosen & Katz<br>By:  JOSHUA A. FELTMAN, ESQ.<br>51 West 52nd Street<br>New York, NY  10019 |
| For Various Landlords: | Williams Mullen<br>By:  WILLIAM SCHWARZCHILD, ESQ.<br>1021 East Cary Street<br>Richmond, VA  23218 |

3

1          THE CLERK:  In the matter of Circuit City Stores,

2  Incorporated.  Case Number 08-35653.  Hearing on Items one

3  through 41 as set out on debtors' amended agenda.

4          MR. FOLEY:  Good morning, Your Honor.  Doug Foley

5  with McGuireWoods on behalf of the debtors.  Your Honor, with

6  me at counsel table is Sarah Boehm with McGuireWoods as well as

7  Gregg Galardi from Skadden Arps.  With us in court today is

8  Michelle Mosier, who's the CFO of the company

9          THE COURT:  All right.

10         MR. FOLEY:  Your Honor, if Your Honor is okay with

11 the procedure, we would like to take a matter out of order.  We

12 appreciate the Court granting our expedited hearing to set the

13 motion to approve the settlement agreement with the Great

14 American Joint Venture.  There are representatives from the

15 liquidators here today as well as some other people who've

16 traveled out of town and need to catch some flights.  We were

17 hoping to try to do that matter first and take it out of order.

18 There are a couple preliminary matters associated with it that

19 Your Honor has not ruled on yet.  One is obviously the motion

20 to shorten the notice period to have it heard today and the

21 other, and that's Item Number 38 on the docket.  Item Number 39

22 is also the motion to seal the actual letter agreement.

23         I have spoken to Mr. VanArsdale, who's not here

24 today, he had a personal appointment out of the office this

25 morning, but he advised me yesterday that I could advise the

**J&J COURT TRANSCRIBERS, INC.**

4

1 Court that he does, notwithstanding his admonishment of me and

2 my firm proliferating motions to seal things, and we talked

3 through this one and he understood the rationale for it and

4 advised that I could represent to the Court that the Office of

5 the U.S. Trustee does not have an objection to Item Number 39,

6 which is our motion to seal with respect to the joint venture

7 settlement motion.

8        So if Your Honor would -- if those two items, Items

9 Number 38 and 39 could be granted, Mr. Galardi would address

10 the Court with respect to Item Number 40.

11        THE COURT:  All right.  Does any party wish to be

12 heard in connection with the Debtors' motion to shorten the

13 notice period and limiting notice of debtors' motion?

14                (No audible response)

15        THE COURT:  Okay, Item Number 38 then will be

16 granted.  And the Court has reviewed your motion to file the

17 documents under seal and the Court will approve that one as

18 well.

19        MR. FOLEY:  Thank you, Your Honor.

20        MR. GALARDI:  Good morning, Your Honor.  For the

21 record, Gregg Galardi of Skadden Arps on behalf of the debtors.

22 Your Honor, the motion before Your Honor is to do a

23 confidential settlement with the joint venture of Great

24 American S.B. Capital and certain other liquidators.  Your

25 Honor is aware of the number that we have filed under seal.

**J&J COURT TRANSCRIBERS, INC.**

1   Just to briefly give Your Honor some background.   In the

2   courtroom today is Mr. Kevin Regan who has also been proffered

3   for other settlements of the firm of FTI.   In addition, Mr.

4   Feltman of Wachtell Lipton is in, as well as Mr. Raskin, who

5   represents the joint venture.

6           Your Honor, I think our papers said it, but I think

7   it's important, and if called as a witness, Mr. Regan would

8   testify that essentially, the agreement that we had provided

9   had two components to it.   One is a fee-based component and one

10  was an FF&E component.   Your Honor, there was no dispute with

11  respect to the FF&E component, and so it really went to the fee

12  component.

13          Your Honor, going through the fee component, Your

14  Honor heard a little bit about this with Hilco, but obviously

15  this agreement has much more significance, because there was

16  approximately $1.1 billion of inventory to be sold through the

17  sales.   Your Honor may recall that there were two schedules in

18  the agency agreement, one where there had to be an inventory

19  threshold and another where we have what's called a cost

20  factor.   The cost factor schedule is the one that was of

21  concern with respect to the settlement, although the threshold

22  issues obviously aren't affected here.

23          Your Honor, as the company proceeded, both with

24  respect to the first auction and with respect to the second

25  auction, the company was giving out a cost file, and as Your

**J&J COURT TRANSCRIBERS, INC.**

1  Honor may know, during the course of leading up to the filing
2  of the bankruptcy, the company had gone to a new advertising
3  scheme called the one price policy.  With that there are many,
4  and it is a very large company and was a very large company,
5  there were many price files.  We thought we had come up to a
6  single price file and given the liquidators the correct price
7  file.  But unfortunately, certain of those price file
8  information and cost information was not accurate as to the
9  actual amounts and the discounts that have been taken.  That
10 therefore has an effect, Your Honor on what we call the
11 schedule, called the cost factor schedule, and indeed, Mr.
12 Regan would testify as would Mr. Raskin, the one thing that
13 both parties agree is that when you come to bid on the pricing
14 of a deal, and in particular, the guaranteed amount of the
15 deal, the one thing that is most important -- there's two
16 things really most important -- but one is the cost factor
17 which shows the current discount so that you can do a cadence
18 for store closings.

19       And then the second is how much inventory there,
20 because they base their model on how long they would have to do
21 these sales, what the expenses would be and therefore, what
22 they can guarantee.  And as Your Honor may recall, there was a
23 guaranteed amount here.

24       As a result of the cost file error, which the company
25 has investigated, there was a potential for the cost factor

7

1  scheduled to actually drop off the schedule below even the

2  schedule number.  As a result, as soon as, as the sale started

3  to proceed, much to the joint venture's credit, Your Honor,

4  within, I think, probably the first seven days of the sale

5  process, the joint venture advised us that there was -- they

6  had noticed a problem and that they had done a price check.

7       We had at that point, both through FTI and through my

8  firm, one, alerted to the Committee about the potential

9  problem, and two, began to discuss a resolution of that

10 potential problem with the joint venture.  I will say the joint

11 venture shared with us immediately what their expectations for

12 the sale was.  But we were caught into the dilemma of whether

13 you discontinue the sale, bring up certain legal actions, such

14 as reformation, mutual mistake and all of those matters, but at

15 that point it would have probably been somewhat devastating and

16 possibly to the detriment of the estates to have stopped the

17 sales and taken such legal actions, and we received, much to

18 their credit, the joint venture's sort of soft assurances that

19 this would all be worked out.

20       In addition, Your Honor, I guess there's some dumb

21 luck involved.  We had a 90/10 split in this agreement which,

22 as long as the sales went well, to a large extent, the sharing

23 that we negotiated under this agreement would mitigate the

24 potential disaster.  So it turned out that when we did our

25 analysis during this period of time, the only time this would

1 have been what I would have called a very, very dramatic,

2 although I can't say it's not dramatic what we have, but the

3 most dramatic had these sales not gone particularly well.

4       Fortunately, Your Honor, the sales did in fact

5 proceed very well.  The liquidator's cadence was faster than

6 expected, the expenses were less than expenses, and so then we

7 came to an end point with a reconciliation.  Your Honor, we

8 then evaluated, we had asked the liquidators for what would be

9 the price for which to resolve all of these matters and to not

10 go through what can be a time consuming and other expense of

11 all reconciliations with respect to shrinkage and the other

12 matters.

13       The liquidators proposed a number, and I'm really

14 speaking with respect to the fee, because the FF&E was a

15 straight calculation, a fee that would have reflected a number,

16 what I will say, on the chart of the cost factor.  So the issue

17 -- one of the issues was whether they would go beyond that

18 chart and whether we would have a fight over whether that was a

19 maximum or minimum and all that.

20       They resolved that issue.  In addition, they agreed

21 that, you know, we would not do the reconciliation with respect

22 to other amounts such as shrinkage, the loss property, and of

23 those amounts which could have been very detrimental to us.  I

24 think it's fair to say, and we did some analysis and shared

25 that analysis with the Committee.  The Committee has looked at

1   our analysis and tested our analysis and then did a memo based

2   upon our analysis.

3          I think it's fair to say, Your Honor, that if they

4   had pressed every issue, we could be tens of millions more in

5   terms of a fee.  If we had pressed every issue, I think we

6   would have been less than $10 million lower in the fee.  As a

7   result of that analysis and the legal analysis that we had done

8   behind that, the debtors determined in their business judgment

9   to make a settlement on the number that's there.

10          Importantly, I think, Your Honor, to understand about

11   that, is although we can all do mathematical analysis and say

12   what this mistake could have cost us, it's not clear that the

13   mistake actually costs you anything, although other than the

14   fees, because had the right cost file been given, the bidding

15   would have been different, the amounts would have been

16   different.  Had perfect information been out there, now partly

17   the reason you put a cost factor schedule is for mistakes, but

18   not of the sort where it's the wrong file, it's when discounts

19   and things of that had happened.  So we really can't say for

20   sure what, you know, would have happened had the right cost

21   files done in this sale or the other sale.

22          But in the context of thinking about the issue, and

23   again, based upon, you know, various legal advice and analysis,

24   what we did was to look and say, what would have been, in basic

25   contract terms, the expectation value had the sales gone as

1  well as they did, what we believed the liquidators would have

2  obtained.  And we think this number is right around what they

3  would have obtained with these successful sales and the

4  structure.

5          As Your Honor may recall, there was a guarantee of

6  three percent and then a one percent sharing.  And we think

7  this number is actually right within that range of what an

8  expectation value is.  I think we had, you know, I will say,

9  said firmly to the liquidators that had they gone beyond the

10  numbers to the numbers that they were doing it, it would have

11  been an unfair advantage as a result of a mistake.  I think

12  they agreed with that.  They've been very reasonable.  And so,

13  Your Honor, we would ask Your Honor to approve the settlement

14  on those terms.

15          Again, Mr. Regan is in the courtroom today and can go

16  through the details about the costs and expense of the

17  reconciliation.  Again, the liquidators are interested in

18  receiving the $100 million return of the LC, which is why we

19  did this on expedited relief.  I think no party is really

20  interested in reconciling, if at all possible, all of the

21  pluses and minuses on a hundred, on the account given this is a

22  quick settlement, I think it is in the best interest of the

23  estate.

24          And again, Your Honor, with respect to the amount,

25  again, I think that with respect to what Mr. Regan would

**J&J COURT TRANSCRIBERS, INC.**

1 testify, to the extent that there is any damage from the

2 factor, clearly it is a fair and reasonable settlement, indeed

3 it may be at the lowest end of what we could have actually paid

4 to them, and I think the company has done well and I think the

5 Committee has analyzed it and agreed with that.  And we would

6 ask Your Honor to approve the settlement and 9019, and to do

7 so, obviously, on an expedited basis, because much of this deal

8 is to return that letter of credit and put finality to this at

9 this point.  I don't know if Your Honor has any questions.

10        THE COURT:  Does any party wish to examine Mr. Regan

11 in connection with the proffered testimony?

12                (No audible response)

13        THE COURT:  All right, that proffer will be accepted.

14 Does any party wish to be heard in connection with the motion

15 approving the letter agreement?

16        MS. BERAN:  Good morning, Your Honor.  For the

17 record, Paula Beran of the law firm of Tavenner and Beran as

18 co-counsel to the Official Committee of Unsecured Creditors.

19 And I believe with me today on the phone is Mr. Robert

20 Feinstein as co-counsel to the Committee.

21        The Committee has studied the underlying issue and

22 the resolution of the same, Your Honor.  And although this is

23 more than just a typical reconciliation given what happened and

24 the resolution, the Committee does truly appreciate the

25 debtors' and the liquidators' efforts in resolving this.  And

1  based on the proposed resolution to Your Honor and the

2  settlement that's before the Court, the Committee has no

3  objection to the same.

4        THE COURT:  All right, thank you, Ms. Beran.  Any

5  other party wish to be heard in connection with the motion?

6                  (No audible response)

7        THE COURT:  All right, Mr. Galardi, the Court has

8  reviewed the letter agreement, and as well as your motion, and

9  the Court will grant the motion to approve the agreement.

10       MR. GALARDI:  Thank you, Your Honor.  And just, we

11 have modified the order in one respect as of last night, Your

12 Honor, just to go through.  There are certain third parties, we

13 are in fact giving a release pursuant to this from the debtors

14 are giving a release to the JV, the JV is giving a release to

15 the debtors.

16       Other than that expense element, which is highlighted

17 in the motion, there are potential third party claims.  For

18 example, we've already been on notice that some landlord may

19 say we sold something that was not a fixture.  We intend -- we

20 have now included language whereby with respect to third party

21 claims, the indemnity provisions are still in effect with

22 respect to the parties, and that's one change to the black line

23 order that we would like to have approved, Your Honor.  That

24 was negotiated, we have given it to the Creditors' Committee.

25 I think Mr. Feinstein sent an e-mail this morning to confirm

**J&J COURT TRANSCRIBERS, INC.**

1 that the revised form of order is acceptable to the Committee.

2 Again, the JV has consented to the language as have we, Your

3 Honor, so there will be one black line to the form of order.

4          THE COURT:  All right, very good.

5          MR. GALARDI:  And, Your Honor, then I would ask that

6 at least the New York and other counsel, Delaware counsel, be

7 excused today.  It will save the estate some money and we can

8 go fly back to our respective --

9          THE COURT:  Everyone that can save the estate some

10 money is now excused.

11          MR. GALARDI:  Well, I'll take Mr. Foley as well with

12 me, Your Honor.

13          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

14          THE COURT:  Thank you.

15          UNIDENTIFIED SPEAKER:  Should we count it by the

16 hundreds?  Thank you, Your Honor.

17          MR. FOLEY:  Thank you, Your Honor.  Just going back

18 to the balance of the agenda.  The first ten items are matters

19 that we have resolved as of the hearing today.  The first two

20 items are related.  The first is motion for payment of an

21 administrative claim by AOL.  The second one is by Platform A.

22 We have actually reconciled and paid and those movants have

23 asked that their motions be deemed withdrawn from the Court's

24 docket.

25          THE COURT:  All right, they'll be deemed withdrawn.

**J&J COURT TRANSCRIBERS, INC.**

1           MR. FOLEY:  Your Honor, Item Number three is a motion

2   for relief from stay, a motion to compel payment, compel

3   rejection or assumption of executory contract by Lexar Media.

4   Counsel for Lexar is here today.  We're pleased to report to

5   the Court that we have reached a resolution of this matter now

6   that the store closing sales are over, we'll be submitting an

7   order later today, Your Honor, that reconciles the amount of

8   the post-petition administrative claim to $1,877,973.71 against

9   which a credit of $625,000 will be applied for a net payment

10  due of $1,252,973.71, which will be paid 11 days from entry of

11  Your Honor's order.

12          THE COURT:  All right, very good.

13          MS. MORRISON:  Good morning, Your Honor.  I'll just

14  note my appearance.  Valerie Morrison for Lexar Media.

15          THE COURT:  All right, thank you.

16          MS. MORRISON:  Thank you.

17          MR. FOLEY:   Your Honor, just one additional item as

18  to that order.  Because we've essentially resolved that the

19  contract will be rejected and these amounts will be paid as

20  administrative amounts due, the relief from stay portion of the

21  motion, as Your Honor recalls, will be deemed moot as part of

22  this order.  So there will be no ruling with respect to that.

23          THE COURT:  Very good.

24          MR. FOLEY:  Your Honor, Item Number four, GMS Golden

25  Valley Ranch motion for payment of an administrative rent.  We

**J&J COURT TRANSCRIBERS, INC.**

1 have reconciled and resolved that amount and paid it so that

2 that item can be removed from the docket.

3          THE COURT:  All right.

4          MR. FOLEY:  Your Honor, Item Number five is the

5 motion by Applied Protective Technologies for payment of

6 administrative claims.  We have resolved this one as well.

7 We're working on getting an endorsement to an order which we

8 will submit hopefully later today, Your Honor.

9          THE COURT:  All right.

10          MR. FOLEY:  Item Number six, this is a motion for

11 adequate protection for payment of administrative claim by Cole

12 Taunton (phonetic).  Your Honor, this is a carryover from a

13 previous hearing.  As Your Honor recalls, we've reconciled the

14 tax amounts due for the time period, so that matter can be

15 removed from the docket.

16          THE COURT:  All right.

17          MR. FOLEY:  Your Honor, Item Number seven is the --

18          THE COURT:  Are we just removing that or are you

19 going to be submitting an order on that?

20          MR. FOLEY:  Not, it's been paid, Your Honor, it can

21 be removed.

22          THE COURT:  All right.

23          MR. FOLEY:  Your Honor, Item Number seven is the

24 Dentisi (phonetic) Family partnership.  And this had two

25 components to it.  One related to taxes and one related to

1 attorneys' fees.  The taxes that they have asserted due have

2 been reconciled and they either have been or will be paid -- I

3 don't believe counsel's here today -- but the attorney fee

4 request has been already withdrawn on the record without

5 prejudice to bring it up again at a future date.  But there

6 won't be any further orders with respect to that one, Your

7 Honor.  That can be removed from the docket.

8          THE COURT:  All right.

9          MR. FOLEY:  Your Honor, with respect to Item Number

10 eight and Number nine, these are Port Arthur Holdings III, LTD

11 in San Felipe, a motion and corrected motion with respect to

12 payment of administrative rent.  These items have been resolved

13 and the amounts have been paid and they can be removed from the

14 docket.

15          Your Honor, Item Number ten is 610 in San Felipe,

16 again for rent under Section 365(d)(3), we have reconciled and

17 paid that amount.  This motion can also be removed from the

18 docket.

19          That brings us to the items that we're seeking to

20 adjourn, Your Honor, to a future hearing.  Number 11 is a

21 matter that we've carried for some time, this is our motion for

22 sell down procedures for trading and equity securities and

23 claims.  We're still in discussions with the Creditors'

24 Committee as to the need for the relief set forth in this

25 motion, but we have agreed to adjourn this matter until the

1    April 28th omnibus hearing date.

2              THE COURT:  All right, it will be adjourned until

3    April 28th?

4              MR. FOLEY:    Your Honor, Item Number 12 on the docket

5    is, again, another old item that's been carried over for

6    several times now.  This is our initial motion to reject

7    certain real estate leases.  There were several objections

8    filed by some subtenants and some over-landlords relating to

9    those locations.  We have resolved with Mr. Schwarzchild, who

10   is here today, items, the objections relating to Golf Galaxy,

11   which is Item Number B and Dollar Tree, which is Item Number C.

12   We have agreed that the effective date of rejection for those

13   subleases will be November 30th.

14              If Your Honor recalls, this was a situation where

15   rent was paid in advance by the subtenant.  We filed on the

16   tenth, we did not pay the over-landlord.  There are still

17   lingering claim issues, obviously, relating to the month of

18   November and potentially other claims that these subtenants may

19   want to raise.  And this resolution is without prejudice to any

20   claims that they may want to raise in that regard as well as

21   our defenses with respect to those claims.  But Items Number B

22   and C can be resolved.

23              Your Honor, Item Number A, which is Dick's Sporting

24   Goods, which is related to the Galleria landlord location and

25   Items Number D and E, which are the two over-landlord joinders

**J&J COURT TRANSCRIBERS, INC.**

1 to their objection, we're asking that those matters be

2 adjourned to the April 14th hearing date, but we expect to

3 reach the exact same resolution, we just haven't gotten

4 confirmation from the over-landlords on that yet as of Friday

5 afternoon or this morning.  But we hope that we'll have the

6 exact same resolution on the 14th with respect to the remaining

7 objections.

8          THE COURT:  All right.  And just to be clear, with

9 the Dick's Sporting Goods, you have the status on the agendas

10 had been resolved, really we're carrying that over to April 14

11 with the expectation that it will be resolved as of that date.

12          MR. FOLEY:  Yes, Your Honor.  I spoke to -- that was

13 a clarification that Mr. Schwarzchild and I reached this

14 morning.

15          THE COURT:  All right, very good.

16          MR. FOLEY:  Your Honor, Item Number 13 is the motion

17 by Navarre under 363 (e) for adequate protection.  They have

18 asked and we have consented to adjourn that matter to the April

19 14th omnibus hearing date.

20          THE COURT:  All right.

21          MR. FOLEY:  Your Honor, Item Number 14 is a motion

22 for setoff and recoupment by TomTom.  We are still trying to

23 reconcile the amounts alleged to be entitled to setoff.

24 There's a pretty large gap right now between the parties'

25 claims.  We hope to get that matter resolved by the 14th, but

1  if not, I'm told by counsel for TomTom that they would like to

2  go forward on that date, so we'll be prepared to go forward on

3  that date if necessary.

4           THE COURT:  All right, very good.

5           MR. FOLEY:  Your Honor, Item Number 15 is the motion

6  by Federal Warranty Service Corp., and Assurant.  Your Honor,

7  we are very close to a global settlement with respect to

8  Federal Warranty and Assurant that will result in quite a

9  substantial amount of funds coming to the estate.  We hope to

10 have that documented by the April 14th omnibus hearing date, so

11 we would ask that that be adjourned until that date.

12          THE COURT:  All right.

13          MR. FOLEY:  Your Honor, Item Number 16, this is our

14 motion, as Your Honor's aware, to establish bid procedures and

15 disposition of the leases and dealing with the remaining cure

16 disputes that we've had earlier in this month.  The items that

17 are listed as the objections, A, which is 444 Caan Avenue, B,

18 which is the Sports Authority stores, D, which is Gateway

19 Center Properties, E, which is Whitestone Development Partners,

20 and F which is Union Square Retail Trust, all of those parties

21 have asked that their cure disputes be adjourned until the

22 April 28th hearing date.  We're working on -- we believe we

23 resolved all but two and we're working on the form of escrow

24 agreements with respect to the disputed cure amount.

25          As Your Honor is aware, we set up a procedure where

20

1    we've paid the undisputed cure amount, we agreed to escrow the

2    disputed cure amount.  Some of the parties were okay with us

3    having it simply segregated in our own account, others wanted

4    escrow agreements, so we're working through that.  But we're

5    also trying to reconcile the disputed amounts and we hope to

6    have those resolved by the April 28th hearing date.

7            The one item, Sea Properties, which is Item Number C,

8    they've asked that their matter only be adjourned until the

9    April 14th hearing date.

10           THE COURT:  All right.

11           MR. FOLEY:  Your Honor, Item Number 17 is a motion

12   from relief from stay by Directv.  Again, I think we reported

13   to the Court before that this may work itself out such that the

14   503(b)(9) amount is burned off and we should know more by the

15   April 14th hearing date.  So they've asked and we've agreed

16   that that matter be adjourned until that day.

17           THE COURT:  All right.  Very good.

18           MR. FOLEY:  Your Honor, Item Number 18, which is the

19   motion by Sony Pictures for administrative expense claim.

20   Again, this involves a reconciliation of various claims, and it

21   may turn out that the estate is actually owed money as a result

22   of this, and everybody will agree to it.  So we're still

23   working through that, but they've asked that we adjourn the

24   matter until the April 14th hearing date with the hopes that it

25   be resolved by that date.

**J&J COURT TRANSCRIBERS, INC.**

1              THE COURT:  All right.

2              MR. FOLEY:  Your Honor, Item Number 19 is the motion

3    by AT&T.  We have actually reached an agreement with them and

4    we're working on consent orders that address the payment of the

5    amounts due post-petition and the rejection dates with respect

6    to those contracts.  We're simply waiting for endorsements on

7    those orders and we'll hopefully have those submitted before

8    the April 14th hearing date.  But until then, we'd ask the

9    Court to adjourn it until that date.

10             THE COURT:  All right.

11             MR. FOLEY:  Your Honor, I'm going to take a couple

12   items here out of order, only because they're related to one

13   store location that was under construction at the time that we

14   filed.  These are Items Number 20, Cleveland construction

15   motion for relief from stay, Item Number 28 which is John Boor

16   (phonetic) Contracting, motion for relief from stay, Item

17   Number 29, which is Hillson Electric (phonetic), motion for

18   relief from stay, Item Number 30, which is Lang Construction's

19   motion for relief from stay.  And I believe those are the ones

20   relating to this one location.  They are essentially mechanics'

21   liens types request for relief.  We're working on forms of

22   order very similar to the ESI order that Your Honor's already

23   entered, and we expect to have those orders submitted to your

24   chambers before the April 14th hearing date, but until then we

25   would ask Items Number 20, 28, 29 and 30 be adjourned until the

1  April 14th hearing date.

2         THE COURT:  That will be fine, Mr. Foley.

3         MR. FOLEY:  Thank you, Your Honor.  Items Number 21,

4  22, 23, 24, 25, 26 and 27 are all motions described to us by

5  the respective landlord, landlord's counsel as prophylactic in

6  nature to preserve their rights.  They are Goodmill, LLC,

7  Goldenberg Management on behalf of Red Rose Commons, Brett

8  Services on behalf of PR Christiana LLC, Brett Services on

9  behalf of PRGL Paxton, LP, Goldenberg Management on behalf of

10 Boulevard North Associates, and Parkside Realty and Marple XYZ

11 Associates.  All of those landlords and landlords' counsel have

12 requested, now that we have May hearing dates from the Court,

13 to adjourn all of their motions until the May 28th hearing

14 date, Your Honor.

15        THE COURT:  Okay, as opposed to the April 28 hearing

16 date.

17        MR. FOLEY:  Yes, Your Honor.

18        THE COURT:  That will be fine.

19        MR. FOLEY:  Your Honor, that brings us to Item Number

20 31 on the docket, which is Prosite Business Solutions' motion

21 for an administrative claim.  We are very close to reconciling

22 the correct amount to pay here and they've requested and we've

23 agreed to adjourn the matter to the April 14th hearing date.

24        THE COURT:  Okay, that will be fine.

25        MR. FOLEY:  Your Honor, Ms. Boehm will address Items

**J&J COURT TRANSCRIBERS, INC.**

1  Number 32 and 35 on the docket which relate to our claimant

2  objection process.

3       THE COURT:  All right, thank you.

4       MS. BOEHM:  Good morning, Your Honor.  Sarah Boehm

5  from McGuireWoods on behalf of the debtors.  Number 32 on the

6  agenda is the debtors' first omnibus objection to certain

7  duplicative 503(b)(9) claims and certain amended 503(b)(9)

8  claims.  This objection was filed on February the 13th at

9  Docket Number 2171.  We began a review of the claims with our

10 initial focus on the 503(b)(9) claims and had filed the first

11 omnibus objection to try to knock out some of the amended and

12 duplicative claims.  This objection included 22 duplicative

13 claims for a total of 9.9 million and nine amended claims for a

14 total of over 125 million.  We did not receive any responses

15 docketed with the Clerk's Office, but we did receive one

16 informal response that we will submit a separate order on that

17 just clarifies which claim is surviving versus which claim is

18 being disallowed.

19      And with that, Your Honor, we would ask that the

20 claims that were identified on the exhibits be disallowed with

21 the surviving claims also identified on the exhibits being the

22 ones that remain.

23      THE COURT:  All right.  Does any party wish to be

24 heard in connection with the debtors' first omnibus objection

25 to duplicative claims and certain amended claims?

**J&J COURT TRANSCRIBERS, INC.**

1                     (No audible response)

2         THE COURT:  All right, that motion will be granted.

3         MS. BOEHM:  Thank you, Your Honor.  Skipping ahead to

4 Number 35 on the agenda is the debtors' motion for an order

5 approving procedures for filing future omnibus objections and

6 approving the form of matter of notice of the omnibus

7 objections.  This was filed on March 10th at Docket Number

8 2505.  As of the date that we filed that motion, there were

9 over 11,500 claims filed with the claims and noticing agent.  I

10 believe as of yesterday, there was well over 12,000 approaching

11 13,000.  So we wanted to go ahead and get these procedures put

12 in place so that we could streamline the claim objection

13 process as well as make it as most cost effective as possible.

14 But also at the same time keeping in mind the new rule 3007 and

15 the purpose to protect the creditors' due process rights as

16 well as provide transparency to the process.

17        In doing this, we model these off of the procedures

18 that were followed and approved in the Movie Gallery with a

19 customized notice being prepared by the claims' agent that will

20 identify the exhibit and the claim and the name, et cetera, as

21 well as a notice that will be identifying the response date,

22 what they need to include in the response and all the relevant

23 material.

24        We did not receive any objections to the motion

25 docketed with the Clerk's Office, but we did receive one

1 informal response from counsel for some landlords and we have

2 revised the procedures with respect to some of his comments.  I

3 have a black line that I can hand up.  But basically the main

4 thing that we revised had to do with the content of the

5 response.  We weren't trying to set it up as a trap for people

6 to fall into that if they didn't include certain things in the

7 response that, you know, that we would somehow ding them, so we

8 just modified the language slightly to make it that they had to

9 substantially comply with these procedures and try to include

10 as much information as possible, et cetera.

11        The other changes that we made with respect to the

12 procedure that was set forth in Movie Gallery was we clarified

13 two things.  One is that we could object on grounds that were

14 not specifically identified in Rule 3007, which I think they

15 did in Movie Gallery, it just didn't say it, so we wanted to

16 point that out.  And the other thing is with respect to the

17 hearings.  We set it so that if you file a response, the next

18 omnibus hearing would be a status hearing and you don't have to

19 attend.  Basically we're just trying to not clog the docket

20 with claim objection responses when we will work to resolve and

21 if we get to a point where we can't, then we'll set it for a

22 special evidentiary hearing.  So we just tried to streamline

23 that process as well and keep the costs down from counsel

24 having to constantly attend hearings to just say it's been

25 continued further.  So those were the two main differences with

1 those as well.

2       THE COURT:  All right, very good.  Does any party

3 wish to be heard in connection with the debtors' motion for an

4 order approving procedures for filing omnibus objections to

5 claims?  Mr. Epps?

6       MR. EPPS:  Good morning, Your Honor.  A. C. Epps,

7 Jr., on behalf of a group of landlords.  We are in fact the

8 group that Ms. Boehm identified.  When we saw their opposed

9 procedures rather than first file an objection, we first

10 contacted counsel to see if we couldn't work out something.

11 Our particular worry was, as Ms. Boehm said, that we were

12 worried about what I would call a "gotcha," if you didn't do

13 this or you didn't do that, you were automatically out on a

14 non-substantive ground.  I think that we have approached it

15 perfectly fairly.  I must say that counsel was wonderful in

16 dealing with us on this and we are completely content with what

17 we have and I'm pleased it happened that way and I would join

18 in a request that it be approved as modified.  Thank you very

19 much.

20       THE COURT:  All right, thank you.  Any other party

21 wish to be heard in connection with the motion?

22             (No audible response)

23       THE COURT:  All right, Ms. Boehm, the Court will

24 grant the debtors' motion.

25       MS. BOEHM:  Thank you.  I'll just hand up this black

**J&J COURT TRANSCRIBERS, INC.**

1  line so that you can have a copy to review.  Thank you.

2          THE COURT:  Thank you.

3          MR. FOLEY:  Thank you, Your Honor.  Item Number 33 on

4  the agenda is our motion to reject additional equipment that we

5  lease from IBM at our store locations.  As Your Honor is aware,

6  many more store locations closed this month and we have been

7  trying to be prudent and expeditious as how we reject the

8  supplements to the master lease agreements with IBM to save the

9  estate administrative rent with respect to this equipment.  The

10  locations to which the equipment pertains is listed on Exhibit

11  A to our motion and the various supplements to the master lease

12  agreement are set forth on Exhibit B to the motion, and we have

13  not received any objections to the relief sought on Item Number

14  33, I would ask the Court to grant the rejection motion.

15          THE COURT:  Does any party wish to be heard in

16  connection with the debtors' motion to reject certain unexpired

17  leases of personal property?

18                  (No audible response)

19          THE COURT:  All right, that will be granted.

20          MR. FOLEY:  Thank you, Your Honor.  With respect to

21  Item Number 34, this is our fifth omnibus motion to reject

22  certain real estate lease locations.  Your Honor, we've been

23  able to resolve the response and objection filed by the

24  Sporting Authority.  Your Honor, the resolution of that, just

25  to give the Court some background, the Sports Authority is a

**J&J COURT TRANSCRIBERS, INC.**

28

1  subtenant with respect to one particular location.  They paid

2  full month's rent for March.  We obviously rejecting it in the

3  middle of the month -- toward the beginning of the month.

4  We've agreed with them to repay to them by wire transfer by

5  April 3rd, 21 days rent prorated for the month of March.  They,

6  just as a protective measure, wanted to have their pending

7  objection carried over to the 14th for the sole purpose of

8  being able at that point to argue if we haven't paid back the

9  money yet.  We've agreed with respect to that, that we have no

10 problem with that, but otherwise, they are fine with that

11 resolution, Your Honor.  So the relief otherwise can be granted

12 in that motion.

13        THE COURT:  Does any party wish to be heard in

14 connection with this motion to authorize rejection?

15        MR. GOLDMAN:  Yes, Your Honor.  Neil Goldman for TSA

16 Stores, Your Honor.  There's one other element to this.  There

17 is an order that was worked on over the weekend.  There's a

18 dispute between the owner of the property and our client as to

19 whether or not our client's --

20        THE COURT:  Who's your client, sir?

21        MR. GOLDMAN:  TSA Stores, Sports Authority.  As to

22 whether or not they're there pursuant to a sublease or a prime

23 lease with the owner, and that issue is being reserved and I

24 believe with the order being submitted incorporates that

25 reservation.

**J&J COURT TRANSCRIBERS, INC.**

29

1            THE COURT:  All right, very good.

2            MR. FOLEY:  That's correct, Your Honor.  Other than

3    establishing the bar date for any rejection damages should that

4    issue come out some other way, any other issues are being

5    reserved, Your Honor.

6            THE COURT:  All right, very good.  Just so I'm clear,

7    we are then carrying this over to the 14th of April or are you

8    going to be submitting a consent order?

9            MR. FOLEY:  Well, we will be submitting a consent

10   order that approves the rejection that we've sought.

11           THE COURT:  But TSA wants to make sure that it stays

12   on the docket in the unlikely event that you default and don't

13   actually pay them what you said you were going to pay them in

14   this order?

15           MR. FOLEY:  That's correct, Your Honor.

16           THE COURT:  All right.

17           MR. FOLEY:  So if we could just continue it on the

18   docket until then, as soon as that payment is confirmed we will

19   remove it from the next agenda that we file.

20           THE COURT:  Very good.

21           MR. FOLEY:  Your Honor, that brings us to Item Number

22   36, I believe, on the agenda, which is our sixth motion to

23   reject certain real estate leases.  Your Honor, this motion

24   only covers four locations which are set forth on Exhibit A to

25   the motion.  Store Locations Number 344, 379, 755 and 775,

                      **J&J COURT TRANSCRIBERS, INC.**

30

1  which are the Livermoor Distribution Center, the Walnut

2  Distribution Center, the Merrian Distribution Center, and the

3  Orlando Distribution Center.  Your Honor, we have not received

4  any responses to the sixth motion to reject these leases and we

5  would ask the Court to grant the relief requested.

6      THE COURT:  Any party wish to be heard in connection

7  with this motion?

8              (No audible response)

9      THE COURT:  All right, the motion is granted.

10     MR. FOLEY:  Thank you, Your Honor.  Item Number 37 is

11 our third motion to reject certain executory contracts, which

12 again, are set forth on Exhibit A to the motion.  Your Honor,

13 again, this is essentially as a result of the store closing

14 sales finishing through the month of March.  We have not

15 received any responses to our request to reject these

16 contracts.  We would ask the Court to grant the relief

17 requested in the motion.

18     THE COURT:  Any party wish to be heard in connection

19 with the debtors' motion to authorize rejection of certain

20 executory contracts at Item Number 37?

21              (No audible response)

22     THE COURT:  All right, that motion will be granted.

23     MR. FOLEY:  Your Honor, I believe that brings us to

24 the last item on the agenda, which is Item Number 41.  This is

25 a motion that we filed to modify with respect to certain

**J&J COURT TRANSCRIBERS, INC.**

1    leases.  The procedures that the Court previously approved that

2    would have otherwise automatically resulted in a rejection as

3    of tomorrow.  As Your Honor recalls, the last round of store

4    closing sales involved some 567 locations and many of those

5    locations, hundreds of those locations have already been, those

6    locations have been rejected, several more have been

7    essentially sold back to the landlords, others have been sold

8    to third parties that Your Honor has already approved.  In

9    going through the remaining leases prior to this deadline of

10   March 31, the debtors and the debtors' professionals and their,

11   and DJM Asset Management, which is their real estate

12   consultants, identified several locations that we have

13   concluded from a cost benefit analysis, it makes sense to

14   continue to try to market these locations.  They are listed on

15   the exhibit to the motion.  They are Store Number 232, which is

16   the San Mateo Superstore.  The landlord there is CarmCar

17   (phonetic) Enterprises, Inc.  The next one is Store Number 567,

18   which is Ardmore Distribution Center.  The landlord there is

19   Ardmore Development Authority.  The next one is Store Number

20   805, which is the Chesterfield Superstore.  The landlord there

21   is Sea Properties I, LLC.  Store Number 3125, Bloomingdale

22   Superstore, which is Assignment Property Group II, LP.  Store

23   Number 3140, St. Cloud Superstore, which is St. Cloud

24   Associates is the landlord.  3364, which is Fullerton

25   Superstore, Orange Fair Marketplace, LLC is the landlord.

1          And then we have four subleases, Your Honor, that are

2  related to these previous locations.  One is, again, with San

3  Mateo, we've identified that -- we identify that internally as

4  6116 sublease.  TJ Maxx is a subtenant there who has filed an

5  objection that Your Honor will hear shortly.  The St. Cloud

6  Superstore, which is sublease Number 6410 with TBI Inc., doing

7  business as Savers.  And then Sublease Number 6411, also at the

8  St. Cloud Superstore, this is Consolidated Stores Corporation

9  doing business as Big Lots.  And then 6484 Sublease, which is

10 at the Bloomingdale Superstore with Dollar Tree Stores as a

11 subtenant.  And then finally, Your Honor, Store Number 91 --

12 it's not a store, it's the headquarters building, 9103, Circuit

13 City corporate headquarters, which was also referred to as DR3.

14 There's a ground lease there that we're looking at preserving

15 value with respect to, and that's Inland Western Richmond

16 Mainland, LLC.  This motion is only seeking relief to modify

17 the procedures as to these locations so that they are not

18 automatically deemed rejected as of tomorrow.

19         So we'll be seeking to ask the Court to enter an

20 order today to approve that so that those lease locations are

21 not rejected.  Otherwise, Your Honor, we're not seeking to

22 change the procedures.  If these locations are not otherwise

23 assumed or rejected prior to the 210-day period provided in the

24 bankruptcy code, they will be deemed rejected as of that date.

25 Again, we will provide seven days notice of any rejection to

1  the effected parties, and the effective parties have the right

2  to respond to that notice and raise whatever issues they would

3  like to raise, and otherwise, Your Honor, we think that

4  nobody's substantive rights are being prejudiced here.  The

5  estate, again, has made the calculation that from a cost

6  benefit analysis with the subtenants paying subrent, in one

7  case, more than we pay on the overlease, that there's minimal

8  cost to the estate to preserving the optionality of hopefully

9  trying to find some value here with respect to these leases.

10        THE COURT:  All right.  Very good.  Does any party

11  wish to be heard in connection with the debtor's motion?

12        MS. HUDSON:  Yes, Your Honor.  May it please the

13  Court.  Lisa Hudson on behalf of one of those subtenants, TJ

14  Maxx of California, LLC.  To the extent that the relief today

15  is solely not to have that automatic rejection tomorrow, we

16  recognize that we are probably one of these profitable

17  anomalies and that it is in our best interest, but we also

18  filed a prophylactic type objection and demand for adequate

19  assurance, because we hold a 25,000 square foot sublease, and

20  things such as seven days notice when you have an operational

21  store with deliveries and staff and that sort of thing would

22  not really be doable.  We would need far more time to vacate a

23  store, find a new store, that sort of thing.  And we were also

24  a qualified bidder and a deposit is being held, and it's

25  ambiguous in the procedures to us what happens with the

**J&J COURT TRANSCRIBERS, INC.**

34

withdrawn property from the auction.  So I think we can agree

to allow the relief being sought in the limited representation

today and perhaps carve out this sublease and submit some sort

of agreed order just resolving what we have.  We just seek

simply to protect our possessory interest as a subtenant and

not have any substantive impairment.  And I'm hearing Mr. Foley

say that that's not being sought today.  We just simply didn't

have the time to resolve that prior to today's hearing.

THE COURT:  What is the issue with the deposit?  You

said that they're holding a deposit of yours on a --

MS. HUDSON:  It's our understanding they have 45 days

after the end of the auction to return the deposit, but when

you have been withdrawn from the auction and there may be a

substantive auction or auctions after auctions, at what point,

we just want specificity, when would that deposit be returned?

I think we're an anomaly from the way the procedures are set

forth simply because our lease has been withdrawn and is being

separately marketed.

THE COURT:  Okay.  And so if I understand, you have

that issue, and then the other issue is that you want more than

seven days notice?

MS. HUDSON:  The other issue is under 363(105) and

365, they're going to seek to sell free and clear, we want our

subtenant interest to be protected and not substantively

impaired.  If they're going to seek to assign it, we also want

1   the right to elect, but that's premature today, they haven't

2   even identified an assignee.  If they seek to reject it, then

3   yes, Your Honor, we seek more than seven days simply because

4   we're an operational store of a huge capacity, and seven days

5   is just not business industry standard for us.  We were trying

6   to go back and forth on a number of days, but I still need to

7   hear from my client what's realistic and what's reasonable.

8   Seven days is not, and the number of days that we were trying

9   to negotiate prior to today's hearing is not there yet either.

10          But given the representations today, I do believe

11  that we could come to some sort of agreement on a carve out,

12  maybe even by an e-mail such that we understand that the relief

13  being tendered in the order today is not the impairments that

14  we feared.

15          THE COURT:  Well, I mean, as I understand it, if the

16  debtor decides to reject, all they're going to do is give seven

17  days notice to your client, to you, and then you've got that

18  seven days, you can come in and you can raise whatever

19  objections regarding the reasonableness of that notice,

20  regarding whether all these different operational issues that

21  you're raising, wouldn't that be the context to raise that as

22  opposed to raising it now, because now it's sort of

23  speculative, we don't even know if this lease is going to be

24  rejected, and in fact, I would suspect that if I asked Mr.

25  Foley, he'd say he hoped it wouldn't be, because he perceives

**J&J COURT TRANSCRIBERS, INC.**

1  that there's some value there.

2          MS. HUDSON:  Our hope too.  Prophylactic, Your Honor,

3  belts and suspenders, and in all candor, these things were done

4  because -- to address ambiguities and in the abundance of

5  caution.  And the dialogue has started and we do believe that

6  it can be reserved.  So you're correct that at this point it's

7  probably premature.

8          THE COURT:  All right, very good.

9          MS. HUDSON:  We just want to reserve those rights.

10         THE COURT:  All right.  Thank you.  Mr. Foley, is the

11 Court correct on seven days that you just give that notice and

12 at that point we can raise these issues if they come up if they

13 are issues at that point?

14         MR. FOLEY:  Your Honor's exactly right.  Again, this

15 is the one location where the subtenant is paying us more than

16 we're paying the over-landlord.  So I would hope that we would

17 find a home for this, with this lease and there won't be a

18 rejection.  But if there is a rejection, and again, this part

19 of the procedures is not changing, there was no objection to

20 the seven-day rejection notice before.  We haven't sought to

21 change that.  Again, the only thing we're changing here is the

22 automatic rejection that happens tomorrow if Your Honor doesn't

23 enter this order to preserve the optionality of preserving some

24 more value, getting some more value out of these leases.  With

25 respect to --

                    **J&J COURT TRANSCRIBERS, INC.**

37

1          THE COURT:  What about the issue about the deposit?

2          MR. FOLEY:  The deposit, Your Honor, I don't believe

3   there's anything in the procedures that we're changing with

4   respect to the deposits to the extent that they made a bid and

5   they made a deposit and it was withdrawn from the auction. The

6   auction was in the middle of the March and there's a 45-day

7   period, it will be returned.

8          THE COURT:  Within the 45-day period.

9          MR. FOLEY:  Within the 45-day period.

10         THE COURT:  That's not changing as a result of this.

11         MR. FOLEY:  That's not changing either, Your Honor.

12         THE COURT:  All right, very good.  Anything further?

13                    (No audible response)

14         THE COURT:  All right, the Court's going to grant the

15  motion, and that's without prejudice to TJ Maxx being able to

16  come in at some later date if it doesn't think that seven days

17  is appropriate or if at the end of the 45-day period originally

18  approved you haven't received your deposit back, obviously none

19  of your rights are impaired.  At any point you can come in and

20  ask for relief at that point in time.  But I think that at this

21  point the only thing that I'm modifying is that this lease

22  isn't going to be automatically rejected tomorrow and then that

23  time frame is going to go out to the full extent of the 210

24  days that the debtor otherwise had.

25         MS. HUDSON:  Thank you, Your Honor.

38

1          THE COURT:  Any question on the Court's ruling?

2          MR. FOLEY:  Thank you, Your Honor.  And this

3   particular order and as well as the order approving the Great

4   American Joint Venture settlement, we will try to get to Your

5   Honor as soon as possible for entry today.

6          THE COURT:  Okay, thank you.

7          MR. FOLEY:  But that concludes the items on the

8   agenda for today, Your Honor.

9          THE COURT:  All right, thank you.

10                         * * * * *

11               **C E R T I F I C A T I O N**

12          I, RITA BERGEN, court approved transcriber, certify

13  that the foregoing is a correct transcript from the official

14  electronic sound recording of the proceedings in the above-

15  entitled matter, and to the best of my ability.

16

17  /s/ Rita Bergen                  DATE:  April 5, 2009

18  RITA BERGEN

19  J&J COURT TRANSCRIBERS, INC.

20

21

22

23

24

25

**J&J COURT TRANSCRIBERS, INC.**