**Hearing Date:  April 28, 2009, at 10:00 a.m.**
**Objection Deadline:  April 24, 2009**

Malcolm M. Mitchell, Jr. (VSB No. 18098)
Kara D. Lehman (VSB No. 68359)
Vorys, Sater, Seymour and Pease LLP
277 South Washington Street, Suite 310
Alexandria, VA 22314
Telephone:  703-837-6999
Facsimile:  703-549-4492
mmmitchell@vorys.com
*Counsel for Polaris Circuit City, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

```
---------------------------------------------------------x
                                    )
In re:                              )        Chapter 11
                                    )
CIRCUIT CITY STORES, INC., et al.,  )        Case No. 08-35653-KRH
                                    )
            Debtors.                )        Jointly Administered
                                    )        Judge Kevin R. Huennekens
---------------------------------------------------------x
```

## AMENDED MOTION, REPLY AND SUPPORTING MEMORANDUM
## OF POLARIS CIRCUIT CITY, LLC, FOR ALLOWANCE
## OF ADMINISTRATIVE EXPENSE CLAIM AND
## GRANTING RELATED RELIEF

**COMES NOW** Polaris Circuit City, LLC ("Polaris"), by and through its counsel, Vorys,

Sater, Seymour and Pease LLP, and hereby replies to Circuit City Stores, Inc.'s (the "Debtor")

Objection filed in response to Polaris' Motion for an order authorizing and directing the Debtor

to immediately pay outstanding administrative rent and hereby amends its motion seeking entry

of an order allowing its administrative expense claims for unpaid rent, additional rents and other

charges under its lease with the Debtor for non-residential real property which accrued from the

Debtor's petition date to the lease rejection date.

## BACKGROUND

1.      Polaris is the lessor and landlord of certain nonresidential real property located in Columbus, Ohio (the "premises").

2.      Pursuant to a lease dated June 15, 2004 (the "Lease"), Polaris leased the premises to the Debtor.  A true and accurate copy of the Lease was attached to Polaris' previously filed Motion as "Exhibit A."[1]

3.      Pursuant to the Lease, the Debtor was required to pay, on the first day of November 2008, base rent and other monthly charges in the total aggregate amount of $55,516.00 (the "November Rent").

4.      On November 10, 2008 (the "Petition Date"), the Debtor and various of its debtor affiliates filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court").

5.      The Lease was rejected by the Debtor by Notice of Rejection effective March 10, 2009 (the "Rejection Date").

6.      In its February 12, 2009 *Memorandum Opinion*, Docket No. 2107, this Court held that Stub Rent claims under Advance Leases such as the Lease between Polaris and the Debtor, are accorded administrative priority expense treatment under  § 503(b) and § 507(a)(2) of the Bankruptcy Code.  Therefore, Polaris submits that pursuant to this Court's foregoing Opinion, the unpaid Stub Rent owed by the Debtor to Polaris, amounting to $38,861.20, should be an allowed administrative claim payable upon the effective date of the Debtor's plan.  Polaris' bill to the Debtor for the November 2008 base rent and CAM and the calculation of the Stub Rent is attached hereto as Exhibit 1.

---

[1] *See* Exhibit A to Polaris' Motion found at Docket No. 2071.

7.     The Lease requires the Debtor to pay, as additional rent, its pro rata share of the real estate taxes for the premises.  "Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes levied against the tax parcel or parcels comprising the Shopping Center."  *See* Paragraph 9(b) of the Lease that is contained on Pages 12 and 13 of the Lease, which is attached hereto as Exhibit 2.  As hereinafter set forth, Polaris will also seek the allowance of administrative expense claims for unpaid real estate taxes accruing from the Petition Date to the Rejection Date, which are payable under the Lease by the Debtor to Polaris as additional rent.

## REAL ESTATE TAXES

8.     The Debtor has failed to pay the real estate taxes that have accrued under the Lease for the period November 10, 2008 through March 10, 2009 in the prorated amount of $24,888.49, and Polaris is seeking allowance of an administrative claim that includes this amount.  The foregoing amount is calculated as shown in Exhibit 3, which also includes the 2008 real estate tax bills for the two parcels comprising the premises, and a bill from Polaris to the Debtor for the full year 2008.  The Debtor's pro rata share of the two real estate tax bills is 85.51%.

9.     Based on this Court's Memorandum Opinion in this case entered on February 12, 2009, Docket No. 2107, Polaris submits that the real estate taxes which are additional rent under the Lease that accrued from the Petition Date on November 10, 2008, to the Rejection Date on March 10, 2009, should be allowed administrative claims pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

10.    Upon information and belief, the real estate taxes assessed and levied by the applicable taxing authorities for the premises for calendar year 2009 will be at least as much as the real estate taxes levied on the premises for calendar year 2008.

11.    The Debtor may argue that the real estate taxes owed by the Debtor pursuant to

the Lease are not yet due and payable because the Landlord has not paid them.  Real estate taxes

in Ohio are due and payable as follows:

DUE & PAYABLE

| | |
|---|---|
| Second Half 2008 Real Estate Taxes | July 10, 2009 |
| First Half 2009 Real Estate Taxes | February 10, 2010 |

12.    The premises are comprised of a building on two parcels of land and real estates

taxes accrue on these two parcels at the rate of $205.69 per day.  Copies of the real estate tax

bills for 2008 are attached hereto as part of Exhibit 3.

13.    It is significant that pursuant to Ohio Rev. Code Ann. § 323.11, real estate taxes

which are levied for 2008 become a lien against the premises as of January 1, 2008.  A copy of

said Ohio Code Section is attached hereto as Exhibit 4.  Accordingly, the real estate taxes which

were levied for 2008 attached as a lien against the premises effective January 1, 2008, and the

real estate taxes that will be levied for 2009 are a lien against the premises effective January 1,

2009.  Accordingly, the premises are currently impaired by tax liens, which include the

administrative claim of Polaris of $24,888.49, for which the Debtor is responsible under the

Lease.

14.    The Court in *In re Trak Auto Corp.*, 277 B.R. 655, 663 (Bankr. E.D. Va. 2002),

dealt with an Illinois real estate statute which mirrors to the Ohio statute at issue here.[2]  The

Illinois stores' real property taxes were billed in arrears and the landlord in *Trak Auto* sought the

---

[2]  The *Trak Auto* Court described the manner in which Illinois bills for its real estate taxes as follows: "Illinois bills
for its real estate taxes in arrears.  Thus, for example, tax bills for the year 1998 are not billed until 1999 and even
then are done in two installments. 35 ILL. COMP. STAT.. 200/1-155; 35 ILL. COMP. STAT.. 100/21-30; 35 ILL
COMP. STAT.. 200/20-210." *Id.* at 662.  The manner described by the Court in *Trak Auto* is the same manner in
which the State of Ohio bills for its real estate taxes.

"payment of all taxes that have accrued since the filing of debtor's bankruptcy petition...." *Id.* at 659.

15.    In adopting the accrual method, the Court in *Trak Auto* held that the "debtor's obligation under the lease to pay it share of real estate taxes as 'additional rent' ***accrues on a daily basis....*" *Id.* at 663 (emphasis added). The Court further reasoned that "[a]dopting a method where debtor's liability would turn solely on when bills are issued has the potential to create a windfall for a landlord who decides to manipulate when it bills the debtor for taxes and CAM charges so that the amounts due become a post-petition claim." *Id.*

16.    Therefore it is appropriate in this case for the all post-petition, pre-rejection real estate taxes sought by Polaris to be accorded administrative expense priority. As in *Trak Auto*, this Court has adopted the accrual method.[3] As a result, the Debtor has an obligation under the Lease to pay its share of real estate taxes as 'additional rent' which accrues on a daily basis as an administrative claim.

17.    The Debtor remained in possession of the Leased Property and operated its business, conducted a going-out-of business sale and enjoyed the benefits of possession from the Petition Date of November 10, 2008 to the Rejection Date of March 10, 2009. During the period of time that Debtor remained in possession of the Property, it became obligated to the Landlord pursuant to the Lease for the payment of rent and additional rent, including real estate taxes. The Debtor's obligation to pay real estate taxes accruing during the post-petition, pre-rejection period, while the Debtor remained in possession of the Property, represents an integral component of additional rent due to Polaris.

18.    The 2008 real estate taxes levied on the premises for the period of the Debtor's possession from November 10, 2008 through December 31, 2008 amounts to $10,695.88. Using

---

[3] *See Memorandum Opinion* entered on February 12, 2009, Docket No. 2107.

the same 2008 per diem rate, the real estate taxes accruing on the premises for the period of the

Debtor's possession from January 1, 2009 to the Rejection Date on March 10, 2009 is

$14,192.61. Accordingly, the total of Polaris' administrative claim attributable to real estate

taxes is $24,888.49.

19.       Additionally, the language in the Lease regarding the Debtor's responsibility for

real estate taxes (Paragraph 9(b)) supports the conclusion that upon termination, the Debtor is

required to pay its pro rata share of real estate taxes which accrued up to termination.

Specifically, Paragraph 9(b) of the Lease states in relevant part:

> Real Estate Taxes shall be prorated as of the Commencement Date and the
> expiration or earlier termination of this Lease (i.e., such that Tenant shall not
> be required to pay for any Real Estate Taxes which are levied or assessed
> for periods prior to the Commencement Date or after the expiration or
> earlier termination of this Lease), and Landlord shall promptly return to
> Tenant any overpayment made by Tenant not attributable to the period of
> Tenant's possession of the Premises.

> *See* Exhibit 2.

20.       This Lease provision makes it clear that just as the Debtor is not required to pay

real estate taxes for days not included in the lease term, the Debtor *is* required to pay the prorated

portion of the real estate taxes for *each day* between the Commencement Date through the day of

the expiration or earlier termination of the Lease while the Debtor is in possession.

21.       In its *Memorandum Opinion* issued on February 12, 2009, this Court concluded

that the accrual method applies in this jurisdiction and in the present matter.  In applying the

accrual method within the context of real estate taxes in *In re Trak Auto Corp.*, 277 B.R. 655,

663 (Bankr. E.D. Va. 2002), the Court sets forth as follows: "[b]ased upon the fairness that

results from the accrual method, we adopt that approach to the debtor's liability to its landlords.

Chief Judge Tice set forth the methodology in *In re Best Products Co.*: 'debtor's obligation

under the lease to pay its share of real estate taxes as additional rent accrues on a daily basis and

that, under § 365(d)(3), post petition bills must be prorated so that the debtor pays as an

administrative expense only those charges which accrued during the post-petition, pre-rejection

period.'" *Trak Auto,* citing *Best Products*, 206 B.R. 404, 407 (Bankr. E.D. Va. 1997).

22.    The Debtor has argued that the timing of payment of real estate taxes is not

changed by a default leading to termination or, as in this case, by rejection leading to termination

on March 10, 2009.  Polaris submits that the Debtor's construction of the Lease is wrong and

ignores the language of the Lease set forth in paragraph 9(b) and the proper application of the

accrual method.

23.    The point being ignored by the Debtor is when this accrual and pro-ration are to

occur.  Polaris submits that the accrual occurs during the period from the Petition Date to the

Rejection Date and the pro-ration occurs as of the Rejection Date.  Therefore, the Debtor should

be required to pay for its share of the real estate taxes pro-rated for the period in which the

Debtor has been in possession.  To determine the proper administrative claim amount attributable

to real estate taxes, it should be the rate payable in 2008 applied to Debtor's post-petition

possession of the Premises from November 10, 2008 to March 10, 2009.[4]

24.    Because the premises are impressed with a lien securing the unpaid real property

taxes accruing from and after January 1, 2008 and January 1, 2009, the failure of the Debtor to

fund and pay such taxes will impair and harm a real property interest owned by Polaris, and the

Debtor will be unjustly enriched equal in amount to the harm inflicted upon Polaris.

---

[4] The Debtor effectively recognized this point by attaching a chart to the Agency Agreement (approved by Order of this Court entered January 16, 2009, Docket No. 1634, setting forth a per diem responsibility of the Agent for Polaris' premises, Store No. 3572, for rent, CAM, real estate taxes and other expenses up to the time of rejection.

25.    Polaris is seeking an administrative claim for only those real estate taxes that accrued on the premises during the post-petition, pre-rejection period.  Based on the Lease, the above-cited case law and the language set forth in the applicable Ohio Code Section (323.11), Polaris should be awarded an administrative claim for the real estate taxes that accrued during the relevant time period.

26.    Furthermore, Paragraph 34(f) of the Lease provides that the Debtor is obligated to promptly reimburse Polaris for all reasonable and actual legal fees incurred in connection with enforcing the Lease after the Debtor defaults on its obligations under the Lease.  Accordingly, Polaris requests that the Debtor be directed to pay the attorneys' fees and costs incurred by Polaris in connection with filing and prosecution of its motions in this case as an administrative claim.  When Polaris filed its first motion seeking payment of the November Stub Rent and rent for December 2008, the Debtor had taken the position that the billing method applied.  Thereafter, the Debtor paid the December base rent and CAM and conceded that the accrual method applies in this case.  Polaris requests that it be allowed by the Court to submit copies of the invoices for its attorneys' fees and expenses at a later hearing, if this part of Polaris' administrative claim cannot be resolved by consent, because those fees will continue to accrue up through the hearing and because the invoices contain information which is protected by the attorney-client privilege and the attorney work product doctrine.

## NOTICE

27.    Notice of this Motion will be given to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, and (iii) all parties that have requested notice of papers pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  Polaris submits that no other or further notice of this Reply is required.

## WAIVER OF MEMORANDUM OF LAW

28.     Polaris respectfully requests that this Court treat this Reply and Amended Motion

as a written memorandum of points and authorities or waive any requirement that this Reply be

accompanied by a written memorandum of points and authorities as described in Rule 9013-1(G)

of the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Virginia.

WHEREFORE, Polaris respectfully requests entry of an order, substantially in the form

attached hereto as Exhibit 5, (i) allowing Polaris an administrative expense claim for the

following: (a) the unpaid Stub Rent owed to by the Debtor to Polaris, totaling $38,861.20, (b) the

real estate taxes owed as additional rent from the Petition Date through the Rejection Date,

totaling $24,888.49, (c) Polaris' reasonable and actual attorneys' fees and costs incurred in

preparing and prosecuting its motions in this case for sums owed by the Debtor under the Lease,

the amount of which shall be determined at a later hearing if necessary, and (ii) granting such

other and further relief as the Court deems just and proper.


Dated:   April 14, 2009             /s/ Malcolm M. Mitchell, Jr.
         Alexandria, Virginia       Malcolm M. Mitchell, Jr. (VSB No. 18098)
                                    Kara D. Lehman (VSB No. 68359)
                                    Vorys, Sater, Seymour and Pease LLP
                                    277 South Washington Street, Suite 310
                                    Alexandria, VA 22314
                                    Telephone:  703-837-6999
                                    Facsimile:  703-549-4492
                                    mmmitchell@vorys.com
                                    *Counsel for Polaris Circuit City, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2009, a true and complete copy of the foregoing, *Amended Motion, Reply and Supporting Memorandum of Polaris Circuit City, LLC, for Allowance of Administrative Expense Claim and Granting Related Relief was* served by electronic delivery to all of the parties through ECF.

/s/ Malcolm M. Mitchell, Jr.

04/14/2009 Alexandria 8613128.9

Circuit City Center
c/o Grubb & Ellis|Adena Realty Advisors
8800 Lyra Drive, Suite 150
Columbus, OH  43240
(614) 436-9800

**INVOICE**    

Circuit City Stores, Inc. Store #3572
Vice President of Real Estate
Deep Run I
9950 Maryland Drive
Richmond, VA  23233

| | DATE | ACCOUNT NUMBER |
|---|---|---|
| | 11/1/2008 | Circuit    1 |

INVOICE #: 339873
Circuit City Stores, Inc. Store #3572

MAKE CHECKS PAYABLE TO:  **Circuit City Center**
**Grubb & Ellis/Adena Realty**
**Dept. 8502-06, PO Box 30516**
**Lansing      MI      48909-8016**

| Date | Code | Description | Charges | Payments | Amount Due | Date | Code | Amount Due |
|---|---|---|---|---|---|---|---|---|
| 11/1/2008 | REC | AUTOCHRG @T11/30/2008 | 2,905.00 | 0.00 | 2,905.00 | 11/1/2008 | REC | 2,905.00 |
| 11/1/2008 | RNT | AUTOCHRG @T11/30/2008 | 52,611.00 | 0.00 | 52,611.00 | 11/1/2008 | RNT | 52,611.00 |

| Current | 30 | 60 | 90 | 120 | BALANCE DUE |
|---|---|---|---|---|---|
| 55,516.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55,516.00 |

BALANCE DUE    55,516.00

$55,516.00 ÷ 30 days = $1,850.5333

x21

November Administrative Rent: $ 38,861.20



**EXHIBIT**

1

structure, Tenant's current prototypical face panels and for Tenant's building signage, as presented to the Polaris Design Review Committee, which Landlord hereby approves. Tenant, its successors, subtenants and assigns shall be entitled with Landlord's and Polaris Design Review Committee's consent, and subject to governmental requirements, to replace all of its signs with signage consistent with Tenant's (or its successors' subtenants' or assigns') then-current prototypical sign plans.

(b)   **Communications Equipment**.   Tenant may install, maintain and/or replace any satellite dishes, antennas, cellular and PCS towers and poles on the roof and/or exterior walls or parapet of the Building as Tenant deems necessary or desirable, provided (i) same shall not adversely and materially affect the roof or its structural elements, (ii) any such rooftop equipment shall be screened with materials consistent with the Tenant's Building design, and (iii) Tenant, not Landlord, shall be responsible for any roof maintenance, repair or replacement necessitated by the installation, penetration, operation and/or removal of such equipment. Tenant shall use the same roof contractor as used on the base Building when making any roof penetrations to maintain any roof warranty.

9.   **Taxes**.

(a)   **Taxes Contemplated Hereunder**.   The term "**Real Estate Taxes**" shall mean all general real estate taxes and assessments and other ad valorem taxes, rates and levies paid upon or with respect to the Shopping Center, including the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed in lieu of any such taxes. Nothing contained in this Lease shall require Tenant to pay any local, county, municipal, state or federal income, franchise, corporate, estate, inheritance, succession, capital levy, business or transfer tax of Landlord, or any local, county, municipal, state or federal income, profits, gross receipts, sales or renewal tax or charge upon the rent or other charges payable by Tenant under this Lease.

(b)   **Payment of Real Estate Taxes**.   After the Commencement Date has occurred, at such intervals as Landlord is required to pay the Real Estate Taxes, Tenant shall pay Tenant's Pro Rata Share (calculated in the same manner as Tenant's Pro Rata Share of CAM Charges in paragraph 7(c)) of Real Estate Taxes levied against the tax parcel or parcels comprising the Shopping Center (the "**Tax Parcel**"). For purposes of determining Tenant's Pro Rata Share of Real Estate Taxes, Real Estate Taxes shall be reduced by any early-payment discounts available at the time Tenant's payment is due and any real estate tax and assessment amounts which are paid directly by other tenants or occupants of the Shopping Center to the applicable taxing authority. Tenant's Pro Rata Share of Real Estate Taxes for the first Lease Year of the Term are unlikely to exceed Two and 00/100 Dollars ($2.00) per square foot of ground-floor gross leasable area of the Building. Tenant shall pay to Landlord Tenant's Pro Rata Share of Real Estate Taxes within twenty (20) days after Tenant's receipt of Landlord's statement (or within the same time period granted to the Landlord to pay such tax bill – e.g., if Landlord is delivered a copy of the bill 30 days in advance of its due date by the

12

EXHIBIT

tabbies®

2

applicable governmental entity, then Tenant shall have 30 days after receipt of a copy of the tax bill from Landlord), accompanied by the tax bill on the basis of which such statement is rendered. Landlord shall pay, or cause the payment of, all Real Estate Taxes before any fine, penalty, interest or cost are added, become due, or are imposed by operation of law for nonpayment or late payment. In no event shall Tenant be liable for any discount forfeited or penalty incurred as a result of late payment by another tenant or by Landlord. Real Estate Taxes shall be prorated as of the Commencement Date and the expiration or earlier termination of this Lease (i.e., such that Tenant shall not be required to pay for any Real Estate Taxes which are levied or assessed for periods prior to the Commencement Date or after the expiration or earlier termination of this Lease), and Landlord shall promptly return to Tenant any overpayment made by Tenant not attributable to the period of Tenant's possession of the Premises. Landlord shall remain primarily responsible for such payment notwithstanding the fact that such payment may be made by a tenant of Landlord's Premises or other third party pursuant to an agreement to which Tenant is not a party. In addition, should Landlord fail to pay such Real Estate Taxes before same become delinquent, Tenant shall have the right, at its election, to cure such failure by payment of delinquent Real Estate Taxes and any interest and penalties due and in such event Tenant may deduct the cost, plus interest at the lesser of ten percent (10%) per annum or the highest rate permitted by State law (the "**Default Rate**"), from the next installment(s) of Base Rent and other charges due.

(c)     **Contest of Real Estate Taxes and/or Assessed Valuation of Property**. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within ten (10) days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction. In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall reasonably cooperate with Tenant, execute all documents reasonably required and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution.

(d)     **Payment Following Appeal**. Upon the termination of the proceedings set forth in subparagraph (c) above (unless the taxing authority requires that Real Estate Taxes be paid under protest prior to commencement of such proceedings), Tenant shall pay Tenant's Pro Rata Share of such Real Estate Taxes as finally determined in such proceedings, the payment of which may have been deferred during the prosecution of such proceedings. Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises, as well as a reimbursement from the appropriate taxing authority of all costs, fees and expenses it incurs in such protest or reassessment.

10.     **Maintenance, Repairs and Replacements**.  Except (i) for costs covered by Landlord's insurance required to be maintained, (ii) for condemnation proceeds to be received by Tenant, (iii) for obligations arising from the negligent acts or omissions or willful misconduct of

13

Calculation of
Post Petition Accrued
Real Estate
Taxes Owed Polaris
Circuit City, LLC
By
Circuit City Stores, Inc.

For Store No. 3572


Annual Real Estate Taxes for 2008 = $75,075.97
$75,075.97 ÷ 365 days = $205.69 per day

November 10, 2008 through December 31, 2008 is          10,695.88
52 days x $205.69 per day

January 1, 2009 through March 10, 2009 is
69 days x $205.69 per day                               14,192.61

                                                        24,888.49

EXHIBIT

3

**STATEMENT OF ACCOUNT**                                    1

**DALE M. WILGUS**
**DELAWARE COUNTY TREASURER**
140 N. Sandusky St.
Delaware, Ohio 43015

Phone: (740) 833-2480

ADDRESSEE

NP LIMITED/CIRCUIT CITY   58 2 180
C/O GRUBB & ELLIS/ADENA
8800 LYRA DR STE 150
COLUMBUS OH  43240-2148

| PERIOD-YEAR | PARCEL NUMBER |
|---|---|
| 1ST HALF  2008 | 318-434-01-024-918 |

| TAX DISTRICT | |
|---|---|
| | 45 CITY OF COLUMBUS |

| TAX RATE | HALF YEAR/FULL YEAR |
|---|---|
| 81.91 | HALF YEAR |

| EFFECTIVE TAX RATE | TAXES DUE | PENALTY & INTEREST AFTER |
|---|---|---|
| 54.293078 | 36,543.04 | 02/10/2009 |

| DATE PAID | CHECK NUMBER | AMOUNT PAID |
|---|---|---|
| | | |

NOTICE:
IF TAXES ARE NOT PAID WITHIN ONE YEAR FROM THE DATE THEY ARE DUE, THE PROPERTY IS SUBJECT TO FORECLOSURE FOR TAX DELINQUENCY UNDER CHAPTER 5721 OF THE OHIO REVISED CODE.

# REAL ESTATE

## TAX DISTRICT AND DESCRIPTION

PROPERTY ADDRESS:
8655 LYRA DR COLUMBUS OH 43240
LANDS 18 3 4 12 13   SEE -000 FOR TAX VALUE

| | | ACRES |
|---|---|---|
| LAND | 466,240 | |
| BUILDING | 879,900 | 5.09 |
| TOTAL | 1,346,140 | |

| | |
|---|---|
| School District | 29,676.60 |
| Township | 0.00 |
| Municipal | 6,866.44 |
| Joint Vocational School | 0.00 |
| County | 0.00 |
| Fire | 0.00 |
| Library | 0.00 |
| Special | 0.00 |
| MR/DD | 0.00 |
| Park District | 0.00 |
| 911 | 0.00 |
| Special Asse | 0.00 |

LENDER CC
CAUV REC         0 . *
CAUV SAVII
          s
OFFICE H

### SUMMARY OF CHARGES

| | 1ST HALF | FULL YEAR |
|---|---|---|
| GROSS REAL ESTATE TAX | 55,131.16 | 110,262.32 |
| - REDUCTION AMOUNT | 18,588.12 | 37,176.24 |
| SUB TOTAL | 36,543.04 | 73,086.08 |
| - 10% ROLLBACK | 0.00 | 0.00 |
| - 2.5% ROLLBACK | 0.00 | 0.00 |
| - HOMESTEAD | 0.00 | 0.00 |
| REAL ESTATE NET | 36,543.04 | 73,086.08 |
| + PENALTY | 0.00 | 0.00 |
| +CURRENT ASSESSMENTS | 0.00 | 0.00 |
| + DELQ ASSESSMENT | 0.00 | 0.00 |
| + DELQ REAL ESTATE | 0.00 | 0.00 |
| LESS: PAYMENTS | 0.00 | 0.00 |
| TOTAL TAX | 36,543.04 | 73,086.08 |

| DUE DATE | TOTAL TAXES DUE |
|---|---|
| 02/10/2009 | 36,543.04 |

* 10% PENALTY IF NOT PAID BY DUE DATE

73,086·08+         s
14,711·80+    )4:30 P.M.

002

87,797·88+    E ENCLOSED ENVELOPE.

LANDS       87,797·88×  ILUE
            85·51%
            75,075·97*+

NP LIM
C/O GF
8800  L
COLUM

| REAL ESTATE | PARCEL NUMBER |
|---|---|
| 73,086.08 FULL YEAR | 318-434-01-024-918 |

| DUE DATE | PAY THIS AMOUNT |
|---|---|
| 02/10/2009 | 36,543.04 |

## MAKE CHECK PAYABLE & REMIT TO:

DALE M. WILGUS/DELAWARE COUNTY TREASURER
140 N. Sandusky St.
Delaware, Ohio 43015

DO NOT MARK BELOW THIS LINE
FOR TREASURER'S OFFICE USE ONLY

Please DO NOT fold, staple, tape or paper clip your check or bill





19398



**DALE M. WILGUS**
**DELAWARE COUNTY TREASURER**
140 N. Sandusky St.
Delaware, Ohio 43015

Phone: (740) 833-2480

ADDRESSEE

POLARIS CIRCUIT CITY LLC    58 2 198
C/O GRUBB & ELLIS/ADENA
8800 LYRA DR STE 150
COLUMBUS OH 43240-2148

| STATEMENT OF ACCOUNT | | 1 |
|---|---|---|
| PERIOD-YEAR | PARCEL NUMBER | |
| 1ST HALF  2008 | 318-434-01-024-000 | |

| TAX DISTRICT |
|---|
| 45 CITY OF COLUMBUS |

| TAX RATE | HALF YEAR/FULL YEAR |
|---|---|
| 81.91 | HALF YEAR |

| EFFECTIVE TAX RATE | TAXES DUE | PENALTY & INTEREST AFTER |
|---|---|---|
| 54.293078 | 7,355.90 | 02/10/2009 |

| DATE PAID | CHECK NUMBER | AMOUNT PAID |
|---|---|---|
| | | |

NOTICE:
IF TAXES ARE NOT PAID WITHIN ONE YEAR FROM THE DATE THEY ARE DUE, THE PROPERTY
IS SUBJECT TO FORECLOSURE FOR TAX DELINQUENCY UNDER CHAPTER 5721 OF THE OHIO
REVISED CODE.

# REAL ESTATE

| TAX DISTRICT AND DESCRIPTION |
|---|
| PROPERTY ADDRESS: |

8655 LYRA DR COLUMBUS OH 43240
18 3 4 12,13    1.692 IN LOT 12    3.398 IN LOT 13    SEE
-918 FOR TIF VAL

| | | |
|---|---|---|
| LAND | 270,970 | ACRES |
| BUILDING | 0 | 5.09 |
| TOTAL | 270,970 | |

| | |
|---|---|
| School District | 5,973.99 |
| Township | 0.00 |
| Municipal | 264.52 |
| Joint Vocational School | 310.49 |
| County | 423.33 |
| Fire | 0.00 |
| Library | 5.42 |
| Special | 0.00 |
| MR/DD | 277.98 |
| Park District | 80.17 |
| 911 | 0.00 |
| Special Assessments | 0.00 |

LENDER CODE
CAUV RECOUP        0.00
CAUV SAVINGS       0.00
    SEE REVERSE SIDE FOR PAYMENT INSTRUCTIONS
OFFICE HOURS: MONDAY THROUGH FRIDAY 8:30 A.M. TO 4:30 P.M.

| SUMMARY OF CHARGES | | |
|---|---|---|
| | 1ST HALF | FULL YEAR |
| GROSS REAL ESTATE TAX | 11,097.58 | 22,195.16 |
| - REDUCTION AMOUNT | 3,741.68 | 7,483.36 |
| SUB TOTAL | 7,355.90 | 14,711.80 |
| - 10% ROLLBACK | 0.00 | 0.00 |
| - 2.5% ROLLBACK | 0.00 | 0.00 |
| - HOMESTEAD | 0.00 | 0.00 |
| REAL ESTATE NET | 7,355.90 | 14,711.80 |
| + PENALTY | 0.00 | 0.00 |
| +CURRENT ASSESSMENTS | 0.00 | 0.00 |
| + DELQ ASSESSMENT | 0.00 | 0.00 |
| + DELQ REAL ESTATE | 0.00 | 0.00 |
| LESS: PAYMENTS | 0.00 | 0.00 |
| TOTAL TAX | 7,355.90 | 14,711.80 |

| | TOTAL TAXES DUE |
|---|---|
| 02/10/2009 | 7,355.90 |

* 10% PENALTY IF NOT PAID BY DUE DATE

---

TO INSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION IN THE ENCLOSED ENVELOPE.

| LEGAL DESCRIPTION |
|---|

18 3 4 12,13    1.692 IN LOT 12    3.398 IN LOT 13
SEE -918 FOR TIF VAL

POLARIS CIRCUIT CITY LLC
C/O GRUBB & ELLIS/ADENA
8800 LYRA DR SUITE 150
COLUMBUS OH 43240

| REAL ESTATE | PARCEL NUMBER |
|---|---|
| 14,711.80 FULL YEAR | 318-434-01-024-000 |

| DUE DATE | PAY THIS AMOUNT |
|---|---|
| 02/10/2009 | 7,355.90 |

**MAKE CHECK PAYABLE & REMIT TO:**

DALE M. WILGUS/DELAWARE COUNTY TREASURER
140 N. Sandusky St.
Delaware, Ohio 43015

DO NOT MARK BELOW THIS LINE
FOR TREASURER'S OFFICE USE ONLY
Please DO NOT fold, staple, tape or paper clip your check or bill





19414

Circuit City Center
c/o Grubb & Ellis|Adena Realty Advisors
8800 Lyra Drive, Suite 150
Columbus, OH  43240
(614) 436-9800

**INVOICE**    

Circuit City Stores, Inc. Store #3572
Vice President of Real Estate
Deep Run I
9950 Maryland Drive
Richmond, VA  23233

DATE        ACCOUNT NUMBER
1/26/2009              Circuit    I
INVOICE #:  346988
Circuit City Stores, Inc. Store #3572

MAKE CHECKS PAYABLE TO:  **Circuit City Center**
**Grubb & Ellis/Adena Realty**
**Dept. 8502-06, PO Box 30516**
**Lansing        MI     48909-8016**

| Date | Code | Description | Charges | Payments | Amount Due | Date | Code | Amount Due |
|------|------|-------------|---------|----------|------------|------|------|------------|
| 1/26/2009 | PYR | 2008 Full Year Taxes | 75,075.97 | 0.00 | 75,075.97 | 1/26/2009 | PYR | 75,075.97 |

| Current | 30 | 60 | 90 | 120 | BALANCE DUE |
|---------|----|----|----|-----|-------------|
| 75,075.97 | 0.00 | 0.00 | 0.00 | 0.00 | 75,075.97 |

BALANCE DUE        75,075.97

## 323.11 State's lien for taxes attaches and continues until paid.

The lien of the state for taxes levied for all purposes on the real and public utility tax list and duplicate for each year shall attach to all real property subject to such taxes on the first day of January, annually, or as provided in section 5727.06 of the Revised Code, and continue until such taxes, including any penalties, interest, or other charges accruing thereon, are paid.

Taxes may be apportioned in case of transfer of a part of any tract or lot of real estate, in which case the lien of such taxes shall extend to the transferred part and the remaining parts only to the extent of the amounts allocated to such respective parts.

Effective Date: 07-02-1984

EXHIBIT

4

Malcolm M. Mitchell, Jr. (VSB No. 18098)
Kara D. Lehman (VSB No. 68359)
Vorys, Sater, Seymour and Pease LLP
277 South Washington Street, Suite 310
Alexandria, VA 22314
Telephone:  703-837-6999
Facsimile:  703-549-4492
mmmitchell@vorys.com
*Counsel for Polaris Circuit City, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

---------------------------------------------------x
                                                   )
In re:                                             )          Chapter 11
                                                   )
CIRCUIT CITY STORES, INC., *et al.*,               )          Case No. 08-35653-KRH
                                                   )
            Debtors.                               )          Jointly Administered
                                                   )          Judge Kevin R. Huennekens
---------------------------------------------------x

**ORDER GRANTING AMENDED MOTION OF POLARIS CIRCUIT CITY, LLC**
**FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE**
**CLAIM AND FOR RELATED RELIEF**

This matter having come before the Court upon the Amended Motion and Supporting

Memorandum of Polaris Circuit City, LLC ("Polaris") for an Order allowing Polaris an

administrative expense claim for the following: the unpaid Stub Rent owed to by the Debtor to

Polaris, totaling $38,861.20, the real estate taxes owed as additional rent from the Petition Date

through the Rejection Date, totaling $24,888.49, and Polaris' reasonable and actual attorneys'

fees and costs incurred in preparing and prosecuting its motions in this case for rent and other

sums owed by the Debtor under the Lease.  The Court finds that (i) it has jurisdiction over the

matters raised in the Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) proper and adequate notice of the

EXHIBIT
5

Amended Motion and the opportunity for a hearing thereon has been given and no other or

further notice is necessary, and (iv) good and sufficient cause exists for the granting of the relief

requested in the Amended Motion after having given due deliberation upon the Amended Motion

and the arguments presented at any hearing had thereupon.  Therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Amended Motion is **GRANTED**.

2.      Unless otherwise defined herein each capitalized term shall have the meaning

ascribed to it in the Amended Motion.

3.      Polaris Circuit City, LLC is granted an administrative expense claim against the

Debtor, Circuit City Store, Inc., for the following:

(a)  the unpaid Stub Rent owed to by the Debtor to Polaris, totaling $38,861.20,

(b)  the real estate taxes owed as additional rent from the Petition Date through the

Rejection Date, totaling $24,888.49, and

(c)  Polaris' reasonable and actual attorneys' fees and costs incurred in preparing and

prosecuting its motions in this case for sums owed by the Debtor under the Lease, the amount of

which shall be determined at a later hearing if necessary.

4.      This Court retains jurisdiction to enforce and implement the terms and provisions

of this Order and to resolve any and all disputes related thereto.

**ENTERED** in Richmond, Virginia, this _____ day of _____, 2009.


_____

United States Bankruptcy Judge

WE ASK FOR THIS:

/s/  Malcolm M. Mitchell, Jr.
Malcolm M. Mitchell, Jr. (VSB No. 18098)
Kara D. Lehman (VSB No. 68359)
Vorys, Sater, Seymour and Pease LLP
277 South Washington Street, Suite 310
Alexandria, VA 22314
Telephone:  703-837-6999
Facsimile:  703-549-4492
mmmitchell@vorys.com
*Counsel for Polaris Circuit City, LLC*

### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1 (C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing *Order* has been endorsed by or served upon all necessary parties.

/s/       Malcolm M. Mitchell, Jr.