including, without limitation, providing the assistance necessary or desirable to transfer the domain names conveyed to Buyer pursuant to this Agreement.

SECTION 5.05.    Service. Each of the Sellers shall (and shall cause its Subsidiaries to) timely serve notice of the Bid Procedures and Sale Motion and the Sale Notice on all Persons legally entitled to such notices and in a manner otherwise consistent with Applicable Law.

SECTION 5.06.    Circuit City Data. With respect to the transfer Circuit City Data from Sellers to Buyer, Buyer (at a minimum) agrees (a) to adopt and comply with the Privacy Policy with respect to the Circuit City Data; (b) to use PII for the same purpose(s) as are specified in the Privacy Policy; (c) that, prior to making any material change to the Privacy Policy with respect to Circuit City Data or the use or disclosure of PII different from that specified in the Privacy Policy, Buyer will notify the persons whose PII is included in the Circuit City Data by mail or email and afford such persons the opportunity to opt-out of the changes to the Privacy Policy or the new uses of their Data; (d) to employ appropriate information security controls and procedures (technical, operational, and managerial) to protect the Circuit City Data; (e) to abide by all applicable U.S. laws and regulations; (f) to take such additional reasonable actions as may be agreed between Sellers and Buyer or recommended or requested by the CPO, and (g) to grant Seller a non-exclusive, perpetual, royalty free, worldwide right to use the Circuit City Data in connection with the offer for sale and sale of renewals of extended warranties sold by Circuit City to its customers.

SECTION 5.07.    Bid Procedures and Sale Motion.

(a)    Within five (5) Business Days following execution of this Agreement by both parties, the Sellers will file a motion (the "Bid Procedures and Sale Motion") for entry of (A) an order, in a form attached hereto as Exhibit B, (i) authorizing the Sellers to enter into this Agreement, subject to higher or otherwise better proposals; (ii) establishing notice, bidding and sale procedures (such sale procedures being the "Auction" and the procedures being the "Bid Procedures"); (iii) approving payment of the Break-up Fee and the Expense Reimbursement if, and only if (1) Buyer is not in breach of or default under this Agreement, (2) this Agreement is not conditioned on conducting any further, or completing, due diligence, and (3) the Sellers consummate a transaction with a higher or otherwise better bidder at the Auction for the sale of all or substantially all of the Acquired Assets; and (iv) setting a sale hearing (such order, the "Bid Procedures Order"); and (B) an order, in the form attached hereto as Exhibit C, authorizing and approving the Agreement and the sale of the Acquired Assets (the "Sale Order"). The Sellers shall use their reasonable best efforts to schedule a hearing to consider the Bid Procedures Order and a hearing to consider the Sale Order (the "Sale Hearing") as soon as possible so as to obtain the entry by the Bankruptcy Court of the Bid Procedures Order no later than April 30, 2009, and entry by the Bankruptcy Court of the Sale Order no later than May 29, 2009.

(b)    Buyer and the Sellers shall cooperate with filing and prosecuting the Bid Procedures and Sale Motion, and obtaining entry of the Bid Procedures Order and the Sale Order, and the Sellers shall deliver to Buyer prior to filing, and as early in advance as is practicable to permit adequate and reasonable time for Buyer and its counsel to review and comment, copies of all proposed pleadings, motions, notices, statements schedules, applications,

13

reports and other papers to be filed by the Sellers in connection with such motions and relief requested therein.

SECTION 5.08. _Publicity_. From the date hereof through the Closing Date, no public release or announcement concerning the Transactions shall be issued by any party without the prior consent of Buyer and the Sellers (which consent shall not be unreasonably withheld), except as such release or announcement may be required by law, in which case the party required to make the release or announcement shall allow the other parties reasonable time to comment on such release or announcement in advance of such issuance; _provided_, _however_, that the Sellers and Buyer may, in consultation with each other, make internal announcements to their respective employees that are consistent with the parties' prior public disclosures regarding the Transactions after reasonable prior notice to and consultation with the other.

SECTION 5.09. _Canadian Trademarks_. Buyer shall, subject to the terms and conditions set forth in that certain Asset Purchase Agreement, dated as of February 23, 2009, among BELL CANADA, 4458729 CANADA INC., INTERTAN CANADA LTD., CIRCUIT CITY STORES WEST COAST, INC. and VENTOUX INTERNATIONAL, INC. (the "Canada APA"), execute and deliver to the parties to the Canada APA, in connection with the closing of the transactions contemplated in the Canada APA, a Circuit City Trade-mark License Agreement in the form attached to the Canada APA with regard to those Circuit City Marks constituting "Licensed Trade-marks" as defined in the Canada APA (the "Canada License"). Intending to be legally bound, Buyer hereby irrevocably constitutes and appoints each Seller, and any officer thereof, acting alone, as the true and lawful attorney-in-fact of Buyer, with full power and authority in Buyer's name, place and stead, to execute and deliver the Canada License to each party to the Canada APA, or, if determined advisable by such attorney-in-fact, to deliver to each party to the Canada APA the executed copy thereof delivered to Seller pursuant to Section 6.03(e), in each case in connection with the closing of the transactions contemplated in the Canada APA. The foregoing power of attorney is coupled with an interest and irrevocable.

SECTION 5.10. _Employees_. Notwithstanding any of the terms and conditions to the contrary herein or in the Non-Disclosure Agreement, dated January 23, 2009, between Buyer and the Company (the "_Non-Disclosure Agreement_"), Buyer may (i) request a list from Sellers of former officers, employees or independent contractors of Sellers primarily related to the Business, and (ii) solicit any current or former officer, employee or independent contractor of Sellers primarily related to the Business for the purpose of discussing the potential retention of such individuals by Buyer following the Closing.

SECTION 5.11. _Access to Information_. From the date hereof until the Closing Date, Sellers shall afford to Buyer and its authorized personnel and representatives reasonable access during normal business hours to make such reasonable investigation of the assets, properties, business and operations of Sellers (including, without limitation, the Circuit City Data and Alpine Data) to the extent they relate to the Business, and such examination of the relevant books and records of the Business as Buyer may reasonably request and to discuss the affairs, finances and accounts of the Business with the personnel thereof. Any such investigation or examination shall be conducted at times reasonably acceptable to Sellers and upon reasonable prior notice to Sellers identifying any personnel of Sellers with whom Buyer desires to discuss the above referenced matters. Sellers may designate any Person to be present for any such

14

discussion. To the extent reasonably practical, from the date hereof until the Closing Date, Sellers shall promptly inform Buyer of any and all material matters that arise during such period affecting the Business. Notwithstanding anything herein to the contrary, no such investigation or examination shall be permitted to the extent that it would require Sellers or any Affiliate to disclose information subject to attorney-client privilege or conflict with any confidentiality obligations to which Sellers or any Affiliates are bound, from which Sellers will use commercially reasonable efforts to be released.

SECTION 5.12.    Cessation of Use, Removal of Marks. Sellers shall cease all use of, and destroy all material including signage displaying or referencing, the Marks acquired by the Buyer as of the Closing Date.

SECTION 5.13.    Trademark and Patent Prosecution and Maintenance. From the date hereof to the Closing Date, Sellers shall use commercially reasonable efforts in the ordinary course of Business to protect and preserve the Circuit City Marks and the Patents and shall not license, transfer or assign any of such marks, or license, transfer or assign any of the City Marks or the Patents to any Person, in the case of the Circuit City Marks and the City Marks other than pursuant to the Circuit City Trade-mark License Agreement in the form attached to the Canada APA with regard to those Circuit City Marks constituting "Licensed Trade-marks" as defined in the Canada APA.

## ARTICLE VI

## CONDITIONS PRECEDENT

SECTION 6.01.    Conditions to Each Party's Obligation. The respective obligations of each party to effect the Transactions is subject to the satisfaction or waiver on or prior to the Closing of the following conditions:

(a)    Governmental Approvals. All authorizations, consents, orders or approvals of, or declarations or filings with, or expirations of waiting periods imposed by, any Governmental Entity necessary for the consummation of the Transactions shall have been obtained or filed or shall have occurred, as applicable.

(b)    No Injunctions or Restraints. No Applicable Law or injunction enacted, entered, promulgated, enforced or issued by any Governmental Entity or other legal restraint or prohibition preventing the consummation of the Transactions shall be in effect.

(c)    Bankruptcy Court Orders. The Bankruptcy Court shall have entered the Sale Order and any other orders necessary to permit and consummate the Transactions, each such other order to be in form and substance reasonably satisfactory to Buyer and all such orders shall be Final Orders; provided, that it shall be a condition only to the obligations of Buyer, and shall not be a condition to the obligations of Sellers, that any order, including the Sale Order, be a Final Order.

SECTION 6.02.    Conditions to Obligations of Buyer. The obligation of Buyer to effect the Transactions is further subject to the satisfaction (or waiver by Buyer) on or prior to the Closing Date of the following conditions:

(a) <u>Representations and Warranties of the Sellers</u>. The representations and warranties of the Sellers in this Agreement shall be true and correct as of the date hereof and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct on and as of such earlier date), without regard to any materiality or "Seller Material Adverse Effect" qualifiers contained in such representations and warranties, in each case except for failures of such representations and warranties to be true and correct that, (i) individually or in the aggregate, have not had and would not reasonably be expected to have a Seller Material Adverse Effect; or (ii) relate solely to liabilities which are Excluded Liabilities or assets which are Excluded Assets.

(b) <u>Performance of Obligations</u>. The Sellers shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Sellers at or prior to the Closing.

(c) <u>Officer's Certificate</u>. Buyer shall have received a certificate, dated the Closing Date, of an officer of the Company to the effect that the conditions specified in Section 6.02(a) and (b) above have been fulfilled.

(d) <u>Consents</u>. All consents listed in Section 3.02 of the Seller Disclosure Schedules shall have been obtained and in full force and effect as of the Closing and without imposing any obligations, financial or otherwise, on Buyer.

(e) <u>No Seller Material Adverse Effect</u>. Between the date hereof and the Closing Date, there shall not have been a Seller Material Adverse Effect.

(f) <u>Documents; Actions</u>. At the Closing, and contemporaneously with all other actions provided for herein, the appropriate Sellers shall have executed and delivered the documents referenced in Section 2.02.

(g) <u>Sale Order</u>. The Sale Order shall be a Final Order or Final Orders entered by the Bankruptcy Court in form attached hereto.

SECTION 6.03. <u>Conditions to Obligation of the Sellers</u>. The obligations of the Company and the Sellers to effect the Transactions are subject to the satisfaction (or waiver by the Company) on or prior to the Closing Date of the following conditions:

(a) <u>Representations and Warranties</u>. The representations and warranties of Buyer in this Agreement shall be true and correct as of the date hereof and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct on and as of such earlier date), without regard to any materiality or "Buyer Material Adverse Effect" qualifiers contained in such representations and warranties, in each case except for failures of such representations and warranties to be true and correct that, individually or in the aggregate, have not had and would not reasonably be expected to have a Buyer Material Adverse Effect.

(b)  <u>Performance of Obligations of Buyer</u>. Buyer shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by Buyer by the time of the Closing.

(c)  <u>Officer's Certificate</u>. The Sellers shall have received a certificate, dated the Closing Date, of an officer of Buyer to the effect that the conditions specified in subsections 6.03(a) and (b) above have been fulfilled.

(d)  <u>Documents; Actions</u>. At the Closing, and contemporaneously with all other actions provided for herein, the Buyer shall have executed, or caused to have been executed, and delivered the documents referenced in Section 2.02.

(e)  <u>Canada License</u>. Buyer shall have executed and delivered to Sellers the Canada License.

## ARTICLE VII

## TERMINATION, AMENDMENT AND WAIVER

SECTION 7.01.    Termination.

(a)  Notwithstanding anything to the contrary in this Agreement, this Agreement may be terminated and the Transactions abandoned at any time prior to the Closing:

(i)  by mutual written consent of the Sellers and Buyer;

(ii)  upon written notice, by either Buyer or the Sellers, if the Closing shall not have occurred on or before the earlier of (i) consummation of an alternate transaction, (ii) thirty (30) days after the Sale Hearing or (iii) July 15, 2009 (the "<u>Drop Dead Date</u>"); <u>provided</u>, <u>however</u>, that, if the Closing shall not have occurred on or before the Drop Dead Date due to a material breach of this Agreement by Buyer or the Sellers, the breaching party may not terminate this Agreement pursuant to this Section 7.01(a);

(iii)  by Sellers, if any condition to the obligations of Seller set forth in Section 6.01 or 6.03 shall have become incapable of fulfillment other than as a result of a breach by Sellers of any covenant or agreement contained in this Agreement, and such condition is not waived by Sellers in writing;

(iv)  by Buyer, if any of the conditions to the obligations of Buyer set forth in Section 6.01 or 6.02 shall have become incapable of fulfillment other than as a result of a breach of any representation, warranty, covenant or agreement contained in this Agreement by Buyer, and such condition is not waived by Buyer in writing;

(v)  by the Sellers, if Buyer shall have breached or failed to perform in any material respect any of its respective representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform (i) would give rise to the failure of a condition set forth in Section 6.01 or 6.03, as applicable, and (ii) cannot be or has not been cured prior to the date that is five (5) days from the date

that Buyer is notified by the Company of such breach or failure to perform; <u>provided, however</u>, that the Sellers shall not have a right to terminate this Agreement under this Section 7.01(a)(v) if any Seller is then in material breach of this Agreement;

(vi)    by Buyer, if the Sellers shall have breached or failed to perform in any material respect any of its respective representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform (i) would give rise to the failure of a condition set forth in Section 6.01 or 6.02, as applicable, and (ii) cannot be or has not been cured prior to the date that is five (5) days from the date that the Seller is notified by Buyer of such breach or failure to perform; <u>provided, however</u>, that Buyer shall not have a right to terminate this Agreement under this Section 7.01(a)(vi) if Buyer is then in material breach of this Agreement;

(vii)    by Buyer, upon written notice to the Sellers, if the Bid Procedures Order is not entered on or before twenty (25) days following the filing of a motion to seek approval of the Bid Procedures Order, or is stayed, reversed, amended or vacated; <u>provided, however</u>, that Buyer shall not have a right to terminate this Agreement under this Section 7.01(a)(vii) if Buyer is then in material breach of this Agreement;

(viii)    by Buyer, upon written notice to the Sellers, if the Sale Order has not been entered within forty-five (45) days after the entry of the Bid Procedures Order, or if after such entry, such Sale Order has not, within eleven (11) days after its entry, become final, non appealable and no longer subject to appeal, reconsideration or stay; <u>provided, however</u>, that Buyer shall not have a right to terminate this Agreement under this Section 7.01(a)(viii) if (a) Buyer is then in material breach of this Agreement or (b) Buyer is not determined by the Sellers, in their sole discretion, to be the highest or otherwise best bidder at the Auction;

(ix)    by either the Sellers or Buyer, if an Applicable Law or injunction which shall have become final and nonappealable is in effect preventing the consummation of the Transactions; and

(x)    by the Sellers if the Sellers terminate the bidding process or the Auction for the Acquired Assets.

(b)    In the event of termination by the Company or Buyer pursuant to this Section 7.01, written notice thereof shall forthwith be given to the other parties and the Transactions shall be terminated, without further action by any party. If the Transactions are terminated as provided herein:

(i)    Buyer shall, upon request, return to the Company or destroy all documents and other material received from the Sellers relating to the Transactions, whether so obtained before or after the date hereof; and

(ii)    all confidential information received by Buyer with respect to the business of the Company and its subsidiaries shall be treated in accordance with the Non-Disclosure Agreement, which shall remain in full force and effect notwithstanding the termination of this Agreement.

18

SECTION 7.02.    Effect of Termination. If this Agreement is terminated and the Transactions are abandoned as described in Section 7.01(a), (a) this Agreement shall become null and void and of no further force and effect, except for the provisions of this Article VII; and (b) except as set forth in clause (a) of this Section 7.02, there shall be no liability hereunder on the part of Buyer, the Sellers, or their respective officers, directors, shareholders, managers, members or partners, provided that no termination shall relieve any party of liability for any material breach of any provision of this Agreement occurring prior to such termination.

SECTION 7.03.    Amendments and Waivers. This Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties hereto. By an instrument in writing, Buyer may waive compliance by the Sellers with any term or provision of this Agreement that the Sellers were or are obligated to comply with or perform. By an instrument in writing, the Sellers may waive compliance by Buyer with any term or provision of this Agreement that Buyer was or is required to comply with or perform.

## ARTICLE VIII

## GENERAL PROVISIONS

SECTION 8.01.    Expenses. Except as set forth in this Agreement and whether or not the Transactions are consummated, each party shall bear all costs and expenses incurred or to be incurred by such party in connection with this Agreement and the consummation of the Transactions.

SECTION 8.02.    No Survival of Representations and Warranties. The parties agree that the representations and warranties contained in this Agreement shall not survive the Closing hereunder, and none of the parties shall have any liability to each other after the Closing for any breach thereof.

SECTION 8.03.    Assignment. This Agreement and the rights and obligations hereunder shall not be assignable or transferable by any party without the prior written consent of the other parties hereto; provided, however, that, Buyer may assign its rights and obligations hereunder, in whole or in part, to one or more designees of Buyer, provided that no such assignment shall relieve Buyer of its liabilities and obligations hereunder if such assignee does not perform such obligations and, provided, further, that this Agreement may be assigned to one or more trustees appointed by the Bankruptcy Court to succeed to the rights of the Sellers; provided, however, that any such assignment shall not affect Buyer's rights hereunder. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and except as otherwise expressly provided herein, no other Person shall have any right, benefit or obligation hereunder.

SECTION 8.04.    No Third Party Beneficiaries. This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any Person, other than the parties hereto and such assigns, any legal or equitable rights hereunder.

SECTION 8.05.    Remedies.    Except as otherwise expressly provided in this Agreement, any and all remedies expressly conferred upon a party to this Agreement shall be cumulative with, and not exclusive of, any other remedy contained in this Agreement, at law or in equity and the exercise by a party to this Agreement of any one remedy shall not preclude the exercise by it of any other remedy. In addition, the parties agree that irreparable damage would occur in the event that the parties fail to perform their obligations in accordance with the terms of this Agreement and each party shall be entitled to specific performance in such event, in addition to any other remedy at law or in equity.

SECTION 8.06.    Notices.    All notices or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by hand or sent by facsimile or sent by overnight courier service and shall be deemed given when so delivered by hand, or after one Business Day in the case of overnight courier service or, if faxed, on the day confirmation of successful facsimile transmission is obtained by the sender thereof, as follows:

(a)    if to Buyer,

Systemax Inc.
11 Harbor Park Drive
Port Washington, New York  11050
Attention: Larry Reinhold, Chief Financial Officer
Tel: (516) 608-3118
Fax:

with a copy to:

Systemax Inc.
11 Harbor Park Drive
Port Washington, New York  11050
Attention: Curt Rush, General Counsel
Tel: (516) 608-6708
Fax:

and with a further copy to:

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York  10036
Attention: Eric Lerner
Tel: (212) 715-9494
Fax: (212) 715-8000

(b)    if to the Sellers,

Circuit City Stores, Inc.
9950 Mayland Avenue

20

Richmond, VA 23233
Attn: Danny W. Ramsey, Esq.
Tel: (804) 486-2937
Fax: (804) 486-8248

with a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square P.O. Box 636
Wilmington DE 19801
Attn: Gregg M. Galardi, Esq.
Tel: (302) 651-3000
Fax: (302) 651-3001

**SECTION 8.07.**     Interpretation; Exhibits and Schedules; Certain Definitions.

(a)     The headings contained in this Agreement, in any Exhibit or Schedule hereto and in the table of contents to this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein, shall have the meaning as defined in this Agreement. When a reference is made in this Agreement to a Section, Exhibit or Schedule, such reference shall be to a Section of, or an Exhibit or Schedule to, this Agreement unless otherwise indicated.

(b)     For all purposes hereof:

"affiliate" of any Person means another Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person.

"Alpine Data" means the Data collected by Sellers via Sellers' retail channels other than the circuit city.com website (including without limitation historical sales data by SKU and via each of Sellers' sales channels, and including retail store sales data by store and SKU), and is commonly referred to by Sellers as the "Alpine database," but does not mean (i) such Data **(a)** as is included within the definition of "Circuit City Data" or (b) that concerns consumers whose Data is included within the definition of "Circuit City Data"; (ii) personally identifiable consumer records on backup tapes and on paper copies of sales tickets; (iii) credit card account numbers and other financial records; and (iv) records of individuals whose addresses are outside the United States.

"Assumed Liens" means, to the extent they would not be eliminated by the Sale Order, the Liens described in Section 3.03.

"Bankruptcy Code" means title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Virginia.

21

"Break-up Fee" means $250,000, which is subject to Bankruptcy Court approval and is payable only to the extent and under the circumstances set forth in this Agreement.

"Business" means the entirety of that portion of the business of Seller and its Affiliates that is comprised of the ownership and/or operation of Circuit City commercial websites, including, without limitation, www.circuitcity.com, all of which websites are listed in the annexed Schedule 1.02, it being understood that such ownership and operation includes, without limitation, the advertising, promotion, marketing, transfer and sale of goods and services, and entry into agreements and arrangements with customers, suppliers, service providers and other parties in connection therewith, but does not include Sellers' Firedog business.

"Business Day" shall mean any day other than a Saturday, Sunday or any other day on which banks in New York, NY are authorized or required by law or executive order to remain closed.

"Buyer Material Adverse Effect" means the occurrence of a material adverse effect on the ability of Buyer to perform its obligations under this Agreement.

"Circuit City Data" means (a) the Data collected by Sellers via the circuit city.com website and (b) Data collected by Sellers via Sellers' retail channels other than the circuit city.com website (including without limitation historical sales data by SKU and via each of Sellers' sales channels, and including retail store sales data by store and SKU) that concerns consumers who have made a purchase via the circuitcity.com website, but does not mean (i) personally identifiable consumer records on backup tapes and on paper copies of sales tickets; (ii) credit card account numbers and other financial records; (iii) records of individuals whose addresses are outside the United States; and (iv) "cookie" information collected from persons visiting the circuitcity.com web site.

"Contract" means all contracts, agreements, leases, licenses, indentures, notes, bonds, mortgages, deeds of trust, loan agreements, credit agreements, pledges, encumbrances, guarantees, reciprocal easement agreements, financing agreements, commitments, conditional sales contracts, collective bargaining agreements, permits, instruments, bids, orders, proposals and other legally binding arrangements, whether written or oral.

"CPO" means a "consumer privacy ombudsman" as defined in the Bankruptcy Code.

"CPO Report" means the report, if any, filed with the Bankruptcy Court by a CPO.

"Data" means customer data (including, without limitation, customer names, email addresses, mailing addresses, methods of contact and historical sales data with respect to each such customer) in a standard electronic format usable for direct marketing purposes.

"Excluded Liabilities" means Liabilities of the Sellers or any of their affiliates.

"Expense Reimbursement" means the actual, reasonable, and documented attorney's fees and expenses incurred by Buyer on or after January 23, 2009 and related to the Transactions in an amount not to exceed $75,000, which is subject to Bankruptcy Court approval and is payable only to the extent and under the circumstances set forth in this Agreement.

"Final Order" means an order of the Bankruptcy Court or other court of competent jurisdiction: (a) as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion or alter or amend judgment, motion for rehearing or motion for new trial has been timely filed or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject order in all material respects without the possibility for further appeal or rehearing thereon; (b) as to which the time for instituting or filing an appeal, motion for rehearing or motion for new trial shall have expired; and (c) as to which no stay is in effect; provided, however, that the filing or pendency of a motion under Federal Rule of Bankruptcy Procedure 9024 shall not cause an order not to be deemed a "Final Order" unless such motion shall be filed within ten (10) days of the entry of the order at issue.

"including" means including, without limiting the generality of the foregoing.

"Liabilities" means, as to any Person, all debts, adverse claims, liabilities, commitments, responsibilities and obligations of any kind or nature whatsoever, direct, indirect, absolute or contingent, matured or unmatured of such Person, whether accrued, vested or otherwise, whether known or unknown, foreseen or unforeseen, and whether or not actually reflected, or required to be reflected, in such Person's balance sheets or other books and records.

"Liens" means mortgages, liens, security interests, charges, easements, leases, subleases, covenants, rights of way, options, claims, restrictions or encumbrances of any kind.

"Person" means any individual, firm, corporation, partnership, limited liability company, trust, joint venture, Governmental Entity or other entity.

"PII" means "personally identifiable information" as defined in the Bankruptcy Code.

"Privacy Policy" means Sellers' privacy policies attached as Exhibit D.

"Proceeding" means any claim, action, suit, proceeding or investigation in or before any Governmental Entity, whether brought, initiated, asserted or maintained by a Governmental Entity or any other Person or entity.

"Sale Notice" means the notice given pursuant to the Bid Procedures Order.

"Seller Material Adverse Effect" means the occurrence of a material adverse effect on the ability of any Seller to perform its obligations under this Agreement.

"subsidiaries" of any Person means another Person, an amount of the voting securities, other voting ownership or voting partnership interests of which is sufficient to elect at least a majority of its Board of Directors or other governing body (or, if there are no such voting interests, 50% or more of the equity interests of which) is owned directly or indirectly by such first Person or by another of its subsidiaries.

"Transactions" means the transactions contemplated by this Agreement.

23

"Transfer Taxes" means any transfer, documentary, sales, use, stamp, privilege, registration and other such taxes, any conveyance fees, any recording charges and any other similar fees and charges (including penalties, interest and additions in respect thereof).

SECTION 8.08.    Counterparts. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

SECTION 8.09.    Entire Agreement. This Agreement and the Non-Disclosure Agreement, along with the Schedules and Exhibits thereto, contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter. None of the parties shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein or in the Non-Disclosure Agreement.

SECTION 8.10.    Severability. If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any Person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining portion thereof) or the application of such provision to any other Persons or circumstances.

SECTION 8.11.    Exclusive Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions. Any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.06 hereof.

SECTION 8.12.    Governing Law. This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and the internal laws of the Commonwealth of Virginia applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

SECTION 8.13.    Waiver of Jury Trial. Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or the Transactions. Each party (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section 8.13.

**SECTION 8.14.**     <u>Bankruptcy Court Approval</u>. This Agreement shall not be binding on the Sellers until the Sale Order is entered, other than Article V (other than covenants to be performed after the Closing) and Article VIII, which shall be binding upon entry of the Bid Procedures Order.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**SYSTEMAX INC.**

By: _____
    Name:
    Title:

**CIRCUIT CITY STORES, INC.**

By: _____
    Name:
    Title:

**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

SYSTEMAX INC.

By: _____
  Name:
  Title:

CIRCUIT CITY STORES, INC.

By: _*[signature]*_
  Name: James A. Marcum
  Title: Vice Chairman Acting CEO and President

CIRCUIT CITY STORES WEST COAST, INC.

By: _____
  Name:
  Title: