Gregg M. Galardi, Esq.  
Ian S. Fredericks, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
One Rodney Square  
PO Box 636  
Wilmington, Delaware 19899-0636  
(302) 651-3000  

Dion W. Hayes (VSB No. 34304)  
Douglas M. Foley (VSB No. 34364)  
MCGUIREWOODS LLP  
One James Center  
901 E. Cary Street  
Richmond, Virginia 23219  
(804) 775-1000  

- and –

Chris L. Dickerson, Esq.  
SKADDEN, ARPS, SLATE, MEAGHER &  
FLOM, LLP  
333 West Wacker Drive  
Chicago, Illinois 60606  
(312) 407-0700  

Counsel to the Debtors and  
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT  
FOR THE EASTERN DISTRICT OF VIRGINIA  
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - -x
In re:                         :  Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :  Case No. 08-35653 (KRH)
et al.,                        :
                               :
            Debtors.           :  Jointly Administered
- - - - - - - - - - - - - - - -x
```

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 332 AND 363 (I) APPROVING PROCEDURES IN CONNECTION WITH SALE OF INTELLECTUAL PROPERTY, INTERNET-RELATED PROPERTY AND CUSTOMER INFORMATION, (II) AUTHORIZING SELLERS TO ENTER INTO STALKING HORSE AGREEMENT IN CONNECTION THEREWITH, (III) APPROVING CERTAIN BID PROTECTIONS IN CONNECTION THEREWITH, (IV) APPROVING FORM AND MANNER OF SALE NOTICE AND (V) SETTING AUCTION AND SALE HEARING DATES**

Upon the motion (the "Motion")[1] of Circuit City

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Stores West Coast, Inc., and Circuit City Stores, Inc. (the "Sellers" and, collectively with the debtors and debtors in possession in the above-captioned jointly administered cases, the "Debtors"), for entry of orders under Bankruptcy Code sections 105, 332 and 363 and Bankruptcy Rules 2002 and 6004, (I)(A) approving procedures in connection with soliciting bids for a sale (the "Sale") of certain of the Sellers' intellectual property, internet-related property and customer information (collectively the "Intellectual Property and Internet Assets"), (B) authorizing the Sellers to enter into a stalking horse agreement in connection therewith, (C) approving certain Bid Protections (as defined below) in connection therewith, (D) approving the form and manner of sale notice (the "Notice Procedures") and (E) scheduling Auction and Sale Hearing dates (each as defined below); (II) authorizing the U.S. Trustee to appoint a consumer privacy ombudsman; (III) approving the Sale of the Intellectual Property and Internet Assets free and clear of all Interests and (IV) granting related relief; and the Court having reviewed the Motion; and the Court having determined that the relief re-

quested in the Motion is in the best interests of the Sellers, their estates, their creditors, and other parties in interest; and the Court having entered an order authorizing the U.S. Trustee to appoint a consumer privacy ombudsman (the "CPO") on April 10, 2009; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A. The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C. The statutory and legal predicates for the relief requested in the Motion are Bankruptcy Code

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

3

sections 105, 332 and 363 and Bankruptcy Rules 2002 and 6004.

  D. Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Bidding Procedures and Bid Protections) has been afforded to those parties that requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Case Management Order).

  E. The Sellers' proposed notice, substantially in the form attached to the Motion as <u>Exhibit D</u>, of the Bidding Procedures, the Auction (if necessary) and the Sale Hearing (the "Sale Notice"), as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

  F. The Bidding Procedures, substantially in the form attached hereto as <u>Exhibit 1</u>, are fair, reasonable, and appropriate and are designed to maximize the

4

recovery with respect to the Sale of the Intellectual Property and Internet Assets.

G.   The Sellers have demonstrated a compelling and sound business justification for authorizing the Sale of the Intellectual Property and Internet Assets, entry into the Agreement (as defined herein) as a stalking horse agreement and the payment of the Bid Protections under the circumstances, timing, and procedures set forth herein and in the Motion.

H.   Entry into the Asset Purchase Agreement (the "Agreement") with Systemax Inc. (the "Purchaser" or the "Stalking Horse Bidder"), a copy of which is attached hereto as <u>Exhibit 2</u>, is in the best interest of the Sellers and the Sellers' estates and creditors.  The Agreement will enable the Sellers to secure an adequate floor for the Auction and will provide a clear benefit to the Sellers' estates.

I.   The Break-up Fee and Expense Reimbursement (each as defined herein) are fair and reasonable and provide a benefit to the Sellers' estates and creditors.

Case 08-35653-KRH    Doc 3071    Filed 04/16/09 Entered 04/16/09 17:03:30    Desc Main
Document    Page 6 of 20

  J. The Sellers' payment of the Bid Protections under the conditions set forth in the Motion and the Agreement is (a) an actual and necessary cost of preserving the Sellers' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Sellers' estates and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed Agreement to undertake the Sale of the Intellectual Property and Internet Assets.

  K. The entry of this Order is in the best interests of the Sellers and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

  **ORDERED, ADJUDGED AND DECREED THAT:**

  1. The Bidding Procedures attached hereto as <u>Exhibit 1</u> with respect to the Qualified Bidders and conducting the sale of the Intellectual Property and Internet Assets are hereby APPROVED.

2. The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Intellectual Property and Internet Assets and the Auction.

3. The Sellers (after consultation with counsel to the Creditors' Committee) are authorized to terminate the bidding process or the Auction at any time if they determine, in their business judgment, that the bidding process will not maximize the value of the Sellers' Intellectual Property and Internet Assets to be realized by the Sellers' estates.

4. Subject to the Bidding Procedures and approval of the Sale at the Sale Hearing, the Sellers are authorized to enter into the Agreement attached hereto as <u>Exhibit 2</u>. The Agreement will serve as the "stalking horse agreement."

5. The Sellers are further authorized to pay a break-up fee of $250,000 (the "Break-Up Fee") and to reimburse the actual, reasonable and documented attorney's fees and expenses incurred by Purchaser on or after January 23, 2009 and related to the Agreement, in an amount not to exceed $75,000 (the "Expense Reimbursement" and together with the Break-up Fee, the "Bid Pro-

7

tections") if, and only if, (i)(A) Purchaser is not in breach of or default under the Agreement, (B) the Agreement is not conditioned on conducting any further, or completing, due diligence or any financing contingency, and (C) Sellers consummate the Sale for all or substantially all of the Intellectual Property and Internet Assets with a higher or otherwise better bidder following the Auction and the Sale Hearing, or (ii) the Sellers terminate the bidding process or the Auction as set forth in paragraph 3 hereof.

6. The Sellers shall post the results of the Auction at www.kccllc.net/circuitcity following the conclusion of the Auction.

7. A hearing (the "Sale Hearing"), at which the Sellers shall seek approval of the Successful Bid shall be held in this Court on May 13, 2009, at 10:00 a.m. (Eastern). The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

8. The CPO will file its report pursuant to Bankruptcy Code section 332 at least ten (10) days prior to the Sale Hearing to assist the Court in evaluating

Case 08-35653-KRH    Doc 3071    Filed 04/16/09 Entered 04/16/09 17:03:30    Desc Main
Document      Page 9 of 20

the facts, circumstances and conditions of the Sale with respect to any personally identifiable information.

9. Notice of the transactions contemplated by the Motion shall be deemed adequate if (i) within five (5) business days of entry of this Bidding Procedures Order (or as soon as reasonably practicable thereafter), the Sellers (or their agent) serve the Sale Notice, in substantially the form attached to the Motion as <u>Exhibit D</u>, by electronic mail, if possible, or first-class mail, postage prepaid, upon (A) all entities reasonably known to have expressed an interest in a transaction with respect to the Intellectual Property and Internet Assets during the past three (3) months, (B) all entities reasonably known to have asserted any Lien upon the Intellectual Property and Internet Assets, (C) all federal, state, and local regulatory or taxing authorities or recording offices, which have a reasonably known interest in the relief requested by the Motion, and (D) all parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Man-

agement, and Administrative Procedures (D.I. 130; the "Case Management Order") and (ii) the Sellers publish a form substantially similar to the Sale Notice in the Wall Street Journal (International Edition), the New York Times and the Richmond Times Dispatch within five (5) business days of entry of this Bidding Procedures Order or as soon as practicable thereafter.

    10.  Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale of the Intellectual Property and Internet Assets shall file a formal objection that complies with this Order on or before May 12, 2009 at 4:00 p.m. (Eastern). Each objection shall state the legal and factual basis of such objection and may be orally supplemented at the Hearing.

    11.  Any and all written objections as contemplated by this Order must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Eastern District of Virginia, and the Case Management Order, (c) be filed with Bankruptcy Court and (d) served in accordance with the Case

Management Order so as to be **received** on or before the appropriate deadline as set forth above.

      12.  In the event there is a conflict between this Order and the Motion or the Agreement, this Order shall control and govern.

      13.  The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

      14.  Nothing in this Order, the Agreement or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

      15.  This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

Dated:  Richmond, Virginia
        _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

11

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                                        /s/ Douglas M. Foley
                                        Douglas M. Foley

# EXHIBIT 1

**(Bidding Procedures)**

## EXHIBIT 1

### BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of the interests held by Circuit City Stores West Coast, Inc. and Circuit City Stores, Inc. (collectively, the "Sellers" and together with their affiliated chapter 11 debtors and debtors in possession, the "Debtors") in certain trademarks, service marks, Internet domain names, toll-free telephone numbers, website content and customer information (collectively, the "Intellectual Property and Internet Assets").

On April 5, 2009, the Sellers executed that certain Asset Purchase Agreement (together with any amendments thereto, the "Agreement") with Systemax Inc. (the "Purchaser"). The transactions contemplated by the Agreement are subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and certain other closing conditions. The terms of the Agreement shall constitute the stalking horse bid (the "Stalking Horse Bid").

### ASSETS TO BE SOLD

The assets proposed to be sold are the Intellectual Property and Internet Assets, as more fully described in the Agreement and on Schedule 1.02 to the Agreement.

### QUALIFIED BIDS

The Sellers will consider proposals for the Intellectual Property and Internet Assets.

Only "Qualified Bidders," _i.e._, persons or entities submitting "Qualified Bids", may participate in the Auction (as defined herein). To be considered a "Qualified Bid" for purposes of the Auction, the person or entity submitting the bid must submit an offer, including a proposed purchase agreement, by the Bid Deadline (as defined herein) that includes:

(a) a redline of the proposed purchase agreement marked against the Agreement;
(b) the purchase price, which price must have a value equivalent to that of the Stalking Horse Bid, plus at least $350,000 (the "Initial Minimum Overbid"). In the event the Initial Minimum Overbid is comprised of cash and other consideration, the bidder must submit information concerning its valuation of the Initial Minimum Overbid; _provided_, _however_, that the Debtors (in consultation with

their advisors) will evaluate such valuation and determine, in their business judgment, whether such bid is the equivalent of at least the Initial Minimum Overbid; <u>provided</u>, <u>further</u>, that prior to or during the Auction, in the event the Debtors determine that such bid is not so equivalent, the Debtors will give the bidder guidance and an opportunity to enhance its bid to meet the Initial Minimum Overbid requirement;

(c) the identity of the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder;

(d) that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency;

(e) a good faith deposit equal to 10% of the cash component of the purchase price;

(f) that the bidder's offer is irrevocable until the later of (i) two (2) business days after the Intellectual Property and Internet Assets have been disposed of pursuant to the Bidding Procedures or (ii) thirty (30) days after the Sale Hearing (as defined herein); and

(g) a signed copy of the Circuit City Trade-mark License Agreement, in the form attached hereto as <u>Exhibit 1</u>, to be held in escrow by Circuit City pending and to be unconditionally released upon closing of the transactions under that certain Asset Purchase Agreement, dated February 23, 2009, among Bell Canada, 4458729 Canada, Inc., InterTAN Canada, Ltd., Circuit City Stores West Coast, Inc. and Ventoux International, LLC.

Any person or entity that submits a bid is deemed to have consented to serving as the Alternate Bidder (as defined below) and having its bid considered the Alternate Bid, provided that such bid is determined by the Sellers to be the second highest or otherwise best bid.

**BID DEADLINE**

Any person or entity wanting to participate in the Auction must submit a Qualified Bid on or before **May 6, 2009 at 5:00 p.m. (Eastern)** (the "Bid Deadline") in writing, to:

(1) Circuit City Stores, Inc., 9954 Mayland Dr., Richmond, Virginia 23233, Attn: Michelle Mosier, (<u>Michelle_Mosier@Circuitcity.com</u>);

(2) Counsel to the Sellers, Gregg M. Galardi and Ian S. Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19801, (<u>gregg.galardi@skadden.com</u> and <u>ian.fredericks@skadden.com</u>);

(3) Financial advisor to the Sellers, Nicholas Barnes, Rothschild, Inc., 1251 Avenue of the Americas, 51st Floor, New York, NY 10020, (<u>nicholas.barnes@us.rothschild.com</u>)

(4) Counsel to the Creditors' Committee, Jeff Pomerantz and Stanley E. Goldich, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Floor, Los Angeles,

2

California 90067-4100, (jpomerantz@pszjlaw.com and sgoldich@pszjlaw.com); and

(5) Counsel to the DIP Agent, David S. Berman, Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108, (dberman@riemerlaw.com).

The Sellers shall announce the terms of the highest or otherwise best Qualified Bid, after consultation with representatives of the Creditors' Committee, at or before the commencement of the Auction.

## THE AUCTION

In the event that the Sellers receive any Qualified Bids, an auction with respect to the Sale (the "Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036, tentatively commencing at **10:00 a.m. (Eastern) on May 11, 2009** or such later time or other place as the Sellers notify all Qualified Bidders who have submitted Qualified Bids.

## AUCTION PROCEDURES

Only a Qualified Bidder who has submitted a Qualified Bid shall be eligible to participate at the Auction. Bidding shall commence with the highest or otherwise best Qualified Bid.

The Purchaser and any Qualified Bidder (or its representative) wishing to participate in the Auction must appear in person or by phone (as may be allowed by Sellers in their sole discretion) and submit its highest or otherwise best bid at the Auction (such bids submitted at the Auction, the "Auction Bids").

Each Auction Bid must exceed the previous Auction Bid by a minimum value of $25,000 (the "Subsequent Minimum Overbid"); provided, however, that the Sellers reserve the right in their sole discretion, after consultation with counsel to the Creditors' Committee, to adjust the Subsequent Minimum Overbid as necessary in the best interests of their estates.

Bidding at the Auction will continue until such time as the Purchaser and each Qualified Bidder has submitted its highest or otherwise best bid, at which point the Auction shall close. The Sellers reserve the right to re-open the Auction in the event doing so would be in the best interests of the Sellers, their creditors, and their estates.

The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures or applicable law.

3

**NO COMBINATION BIDDING**

Bidders may not form joint ventures or partnerships to submit bids with respect to the Sale, without the prior written consent of the Sellers (after consultation with representatives of the Creditors' Committee). Without limiting the generality of the foregoing, separate bidders may not combine their bids without the prior written approval of the Sellers (after consultation with representatives of the Creditors' Committee).

**SELECTION OF THE SUCCESSFUL BID**

Upon conclusion of the Auction, the Sellers, in consultation with representatives of the Creditors' Committee, shall (i) review each Auction Bid on the basis of financial and contractual terms and the factors relevant to the Sale and (ii) identify the highest or otherwise best offer, in terms of net value to the Sellers' estates (the "Successful Bid" and the bidder making such bid, the "Successful Bidder").

The selection of a Successful Bidder shall be within the reasonable business judgment of the Sellers (after consultation with representatives of the Creditors' Committee) and subject to the approval of the Bankruptcy Court, and economic considerations shall not necessarily be the sole criteria upon which the Sellers may base their decision. In assessing whether a proposal constitutes a higher or otherwise better offer, the Sellers shall be entitled to consider, among other things, the net economic effect upon the Sellers' estates.

The Sellers will sell the Intellectual Property and Internet Assets to the Successful Bidder according to the terms of the Successful Bid upon the approval of such bid by the Bankruptcy Court after the Sale Hearing.

The Sellers' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid. The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

**THE SALE HEARING**

A hearing (the "Sale Hearing") will be held before the Honorable Kevin R. Huennekens on **May 13, 2009, at 10:00 a.m. (Eastern)** in the United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219, but may be adjourned or rescheduled in the Sellers' sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice other than an announcement of the adjourned date at the Sale Hearing.

If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Sellers may cancel the Auction and will report the same to the Bankruptcy Court at

4

the Sale Hearing and will proceed with a Sale to the Purchaser following entry of an order approving such Sale (the "Sale Approval Order"). If the Sellers do receive additional Qualified Bids, then, at the Sale Hearing, the Sellers will seek approval of the Successful Bid, as well as, in the Sellers' sole discretion, the second highest or otherwise best Qualified Bid (the "Alternate Bid," and the bidder making such bid, the "Alternate Bidder").

Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale because of: (i) the failure of a condition precedent beyond the control of either the Sellers or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be permitted to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid without further order of the Bankruptcy Court.

### RETURN OF GOOD FAITH DEPOSIT

As noted above, all Bidders will be required to submit good faith deposits (the "Good Faith Deposits") with the Sellers on or before the Bid Deadline. Such Good Faith Deposits shall be equal to 10% of the cash component of the purchase price. Good Faith Deposits of all Qualified Bidders shall be held in a separate account until a proposal is no longer irrevocable as provided herein, at which time they will be returned to the Qualified Bidder (the "Return Date"). Notwithstanding the foregoing, the Good Faith Deposit submitted by the Successful Bidder, together with interest thereon, if any, will be applied against the payment of the Purchase Price upon Closing of the Sale to the Successful Bidder. If a Successful Bidder fails to consummate an approved Sale, the Sellers will not have any obligation to return such Good Faith Deposit and such deposit will irrevocably become property of the Sellers. Subject to the preceding sentence, on the Return Date, the Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon, if any.

### RESERVATION OF RIGHTS

The Sellers reserve the right (after consultation with representatives of the Creditors' Committee) to (i) determine at their reasonable discretion which offer is the highest or otherwise best offer, (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any offer that the Sellers, in their sole discretion, deem to be (x) inadequate or insufficient, (y) not in conformity with the requirements of these Bidding Procedures or applicable law, or (z) contrary to the best interests of the Sellers and their estates, (iii) waive any of the requirements of the Bidding Procedures with respect to a potential or Qualified Bidder if the Sellers determine in their business judgment it is in the best interests of their estates and creditors; (iv) extend the Bid Deadline before or after such

5

deadline has expired; (vi) change the date of any Auction and (viii) seek Court authority to adjourn the Sale Hearing.

At or before the Auction and the Sale Hearing, the Sellers, after consultation with representatives of the Creditors' Committee, may impose such other terms and conditions on Qualified Bidders as the Sellers may determine to be in the best interests of the Sellers, their estates, their creditors, and other parties in interest.

6

# EXHIBIT 2

**(Agreement)**