IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

SYSTEMAX INC.

By: _____
    Name:
    Title:

CIRCUIT CITY STORES, INC.

By: _____
    Name:
    Title:

CIRCUIT CITY STORES WEST COAST, INC.

By: _/s/ Daniel W. Ramsey_____
    Name: Daniel W. Ramsey
    Title: President

# EXHIBIT A

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

This BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of _____, 2009 (this "Agreement"), is by and among Systemax Inc., a Delaware corporation ("Buyer"), Circuit City Stores West Coast, Inc., a California corporation ("CCWC"), and Circuit City Stores, Inc., a Virginia corporation (the "Company", and together with CCWC, the "Sellers"). Except as expressly defined herein, capitalized terms used in this Agreement shall have the meaning ascribed to them in the Asset Purchase Agreement, dated as of April 5, 2009 (the "Purchase Agreement"), by and between Buyer and the Sellers.

WHEREAS, Buyer and the Sellers entered into the Purchase Agreement providing for the sale of the Acquired Assets (as defined in the Purchase Agreement) from the Sellers to Buyer;

WHEREAS, the Sellers desire to assign to Buyer, and Buyer desires to obtain and assume from the Sellers, the Acquired Assets; and

WHEREAS, the sale of the Acquired Assets has been approved by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants contained herein and in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1. <u>Transfer of Assets and Assumption of Liabilities</u>.

(a) Subject to Section 1(c) below, the Sellers hereby provide Buyer, its successors and assigns a non-exclusive, perpetual, royalty free, worldwide right to use the Alpine Data, and assign, transfer, convey and deliver to Buyer, its successors and assigns, all of the Sellers' respective right, title and interest, as the same exists on the date hereof, in and to the following tangible and intangible assets, rights and claims set forth below:

(i) The "Circuit City" and related trademarks and domain names set forth on <u>Schedule A</u> and all goodwill associated with such trademarks (the "Circuit City Marks");

(ii) "The City" and related trademarks and domain names set forth on <u>Schedule B</u> and all goodwill associated with such trademarks (the "City Marks"), it being understood that notwithstanding anything in the Purchase Agreement to the contrary, the City Marks are being sold, assigned, conveyed, transferred or delivered to Buyer on an "as is" basis, and all warranties, express or implied, including warranties of

merchantability and fitness for use, are excluded from the sale and transfer of the City Marks.  In addition, Sellers make no representations or warranties of any nature with respect to the City Marks;

    (iii)  The other miscellaneous domain names set forth on Schedule C;

    (iv)  The toll-free number set forth on Schedule D;

    (v)  The patents, and registrations and applications therefor, set forth on Schedule E;

    (vi)  The website content described in Schedule F;

    (vii)  Subject to the terms of Section 5.02(g) and Section 5.06 of the Purchase Agreement, and Bankruptcy Court approval, the Circuit City Data.

  (b)  Buyer hereby accepts the foregoing assignment, transfer, conveyance and delivery.

  (c)  Notwithstanding anything to the contrary in this Agreement and for the avoidance of doubt, the Sellers are not selling, conveying, assigning, transferring or delivering to Buyer any assets or rights other than those specifically identified in Section 1(a).

2.  Miscellaneous.

  (a)  Counterparts.  This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

  (b)  Entire Agreement.  This Agreement and the Non-Disclosure Agreement, along with the Schedules and Exhibits thereto, contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter.  None of the parties shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein or in the Non-Disclosure Agreement.

  (c)  Severability.  If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining portion thereof) or the application of such provision to any other persons or circumstances.

  (d)  Exclusive Jurisdiction.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder.  Any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and

maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.06 of the Purchase Agreement.

(e)  <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and the internal laws of the Commonwealth of Virginia applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

(f)  <u>Waiver of Jury Trial</u>.  Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement.  Each party (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section 2(f).

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**SYSTEMAX INC.**

By: _____
     Name:
     Title:

**CIRCUIT CITY STORES, INC.**

By: _____
     Name:
     Title:

**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____
     Name:
     Title:

## EXHIBIT B

| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| One Rodney Square | One James Center |
| PO Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 |
| (302) 651-3000 | (804) 775-1000 |

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - - x
In re:                            :    Chapter 11
                                  :
CIRCUIT CITY STORES, INC.,        :    Case No. 08-35653 (KRH)
et al.,                           :
                                  :
            Debtors.              :    Jointly Administered
- - - - - - - - - - - - - - - - - x

ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 332 AND
363 (I) APPROVING PROCEDURES IN CONNECTION WITH SALE OF
INTELLECTUAL PROPERTY AND INTERNET-RELATED PROPERTY,
SOFTWARE, HARDWARE AND CUSTOMER INFORMATION, (II)
AUTHORIZING SELLERS TO ENTER INTO STALKING HORSE
AGREEMENT IN CONNECTION THEREWITH, (III) GRANTING
CERTAIN BID PROTECTIONS IN CONNECTION THEREWITH, (IV)
APPROVING FORM AND MANNER OF SALE NOTICE AND (V) SETTING
AUCTION AND HEARING DATES

Upon the motion (the "Motion")[1] of Circuit City

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

KL2 2599397.1

Stores West Coast, Inc., and Circuit City Stores, Inc. (the "Sellers" and, collectively with the debtors and debtors in possession in the above-captioned jointly administered cases, the "Debtors"), for entry of orders under Bankruptcy Code sections 105, 332 and 363 and Bankruptcy Rules 2002, 4001 and 6004, (I)(A) approving procedures in connection with soliciting bids for a sale (the "Sale") of the Sellers' intellectual property and internet-related property, software, hardware, and customer information (collectively the "Intellectual Property and Internet Assets"), (B) authorizing the Sellers to enter into a stalking horse agreement in connection with the Sale of the Intellectual Property and Internet Assets, (C) approving certain Bid Protections (as defined below) in connection therewith, (D) approving the form and manner of sale notice (the "Notice Procedures") and (E) scheduling Auction and Sale Hearing dates (each as defined below); (II) approving the Sale of the Intellectual Property and Internet Assets free and clear of all interests, and (III) granting related relief; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion

is in the best interests of the Sellers, their estates, their creditors, and other parties in interest; and the Court having entered an order appointing a consumer privacy ombudsman (the "CPO") on [_____], 2009; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[2]

A.  The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.  The statutory and legal predicates for the relief requested in the Motion are Bankruptcy Code

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

3

sections 105, 332 and 363 and Bankruptcy Rules 2002, 4001 and 6004.

D.  Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Bidding Procedures and Bid Protections) has been afforded to those parties that requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Case Management Order).

E.  The Sellers' proposed notice, substantially in the form attached hereto as Exhibit C, of the Bidding Procedures, the Auction (if necessary) and the Sale Hearing (the "Sale Notice"), as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

F.  The Bidding Procedures, substantially in the form attached hereto as Exhibit A, are fair, reasonable, and appropriate and are designed to maximize the

4

KL2 2599397.1

recovery with respect to the Sale of the Intellectual Property and Internet Assets.

G.  The Sellers have demonstrated a compelling and sound business justification for authorizing the Sale of the Intellectual Property and Internet Assets, entry into the Agreement (as defined herein) as a stalking horse agreement and the payment of the Bid Protections under the circumstances, timing, and procedures set forth herein and in the Motion.

H.  Entry into the Asset Purchase Agreement (the "Agreement") with Systemax Inc. (the "Purchaser" or the "Stalking Horse Bidder"), a copy of which is attached hereto as Exhibit B, is in the best interest of the Sellers and the Sellers' estates and creditors. The Agreement will enable the Sellers to secure an adequate floor for the Auction and will provide a clear benefit to the Sellers' estates.

I.  The Break-up Fee and Expense Reimbursement (each as defined herein) are fair and reasonable and provide a benefit to the Sellers' estates and creditors.

5

KL2 2599397.1

J. The Sellers' payment of the Bid Protections under the conditions set forth in the Motion and the Agreement is (a) an actual and necessary cost of preserving the Sellers' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Sellers' estates and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed Agreement to undertake the Sale of the Intellectual Property and Internet Assets.

K. The entry of this Order is in the best interests of the Sellers and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Bidding Procedures attached to the Motion as <u>Exhibit A</u> with respect to the Qualified Bidders and conducting the sale of the Intellectual Property and Internet Assets are hereby APPROVED.

6

KL2 2599397.1

2.  The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Intellectual Property and Internet Assets and the Auction.

3.  The Sellers (after consultation with counsel to the Creditors' Committee and counsel to the DIP Agent) are authorized to terminate the bidding process or the Auction at any time if they determine, in their business judgment, that the bidding process will not maximize the value of the Sellers' Intellectual Property and Internet Assets to be realized by the Sellers' estates.

4.  Subject to the Bidding Procedures and approval of the Sale at the Sale Hearing, the Sellers are authorized to enter into the Agreement attached hereto as <u>Exhibit B</u>.  The Agreement will serve as the "stalking horse agreement."

5.  The Sellers are further authorized to pay a break-up fee of $250,000 (the "Break-Up Fee") and to reimburse the actual, reasonable and documented attorney's fees and expenses incurred by Purchaser on or after January 23, 2009 and related to the Agreement, in an amount not to exceed $75,000 (the "Expense Reimburse-

7

KL2 2599397.1

ment" and together with the Break-up Fee, the "Bid Protections") if, and only if, (i)(A) Purchaser is not in breach of or default under the Agreement, (B) the Agreement is not conditioned on conducting any further, or completing, due diligence or any financing contingency, and(C) Sellers consummate the Sale for all or substantially all of the Intellectual Property and Internet Assets with a higher or otherwise better bidder following the Auction and the Sale Hearing, or (ii) the Sellers terminate the bidding process or the Auction as set forth in paragraph 3 hereof.

6. The Sellers shall post the results of the Auction at www.kccllc.net/circuitcity following the conclusion of the Auction.

7. A hearing (the "Sale Hearing"), at which the Sellers shall seek approval of the Successful Bid shall be held in this Court on [_____], 2009, at 10:00 a.m. (Eastern). The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

8. The CPO will file its report pursuant to Bankruptcy Code section 332 at least ten (10) days prior

8

KL2 2599397.1

to the Sale Hearing to assist the Court in evaluating the facts, circumstances and conditions of the Sale with respect to any personally identifiable information.

        9.    Notice of the transactions contemplated by the Motion shall be deemed adequate if (i) within five (5) business days of entry of this Bidding Procedures Order (or as soon as reasonably practicable thereafter), the Sellers (or their agent) serve the Sale Notice, in substantially the form attached hereto as <u>Exhibit C</u>, by electronic mail, if possible, or first-class mail, postage prepaid, upon (A) all entities reasonably known to have expressed an interest in a transaction with respect to the Intellectual Property and Internet Assets during the past three (3) months, (B) all entities reasonably known to have asserted any Lien upon the Intellectual Property and Internet Assets, (C) all federal, state, and local regulatory or taxing authorities or recording offices, which have a reasonably known interest in the relief requested by the Motion, and (D) all parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1

9