interest having been heard, or having had the opportunity to be heard, regarding the agreement attached hereto as Exhibit A (the "Agreement"), by and among the Sellers and Systemax Inc. (the "Purchaser") and the transactions contemplated thereby (the "Transactions"); and the Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at the Sale Hearing; and upon the record of the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause appearing therefore it is hereby

FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

C.   The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 332 and 363 and Bankruptcy Rules 2002, 4001 and 6004.

D.   Notice of the Motion and entry of the Sale Order has been provided to (A)(i) all entities known to have expressed an interest in a transaction with respect to the Intellectual Property and Internet Assets during the past three (3) months, (ii) all entities known to have asserted any Lien upon the Intellectual Property and Internet Assets, (iii) all federal, state, and local regulatory or taxing authorities or recording offices, which have a reasonably known interest in the relief requested by the Motion and (iv) all parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order") and (B) other parties through publication of the Sale Notice, all in accordance with and as provided by the Bidding Procedures Order.

4

E.    Based upon the affidavits of service and publication filed with the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and the Bidding Procedures Order; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

F.    The Intellectual Property and Internet Assets are property of the Sellers' estates and title thereto is vested in the Sellers' estates.

G.    The Sellers and their professionals marketed the Intellectual Property and Internet Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Intellectual Property and Internet Assets.

H.    After an auction held on [_____], 2009 (the "Auction"), the Sellers determined that the highest and best Qualified Bid was that of Purchaser and the next highest and best Qualified Bid (the "Alternate Bid") was that of [_____] (the "Alternate Bidder").[2]  The Alternate Bidder has agreed to keep the Alternate Bid open until consummation of the Transactions contemplated by the Agreement with the Purchaser.

I.    Subject to the entry of this Order, each Seller (i) has full power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Intellectual Property and Internet Assets by the Sellers has been duly and validly authorized by all necessary company action of each of the Sellers, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Agreement, (iii) has taken all company action necessary to authorize and approve the Agreement and the consumma-

---

[2]  In the event the Sellers do not consummate the Transactions with the Purchaser contemplated by the Agreement, all references (other than references in this footnote) to the Purchaser shall be a reference to the Alternate Bidder and all references to the Agreement shall be a reference to the Alternate Bid.  No further court order shall be required for the Sellers to close the transactions contemplated by the Alternate Bid with the Alternate Bidder.

tion by the Sellers of the Transactions.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Sellers to close the Sale and consummate the Transactions.

J.   The Agreement and the Transactions were negotiated and have been and are undertaken by the Sellers and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Sellers and the Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code.

K.   The total consideration provided by the Purchaser for the Intellectual Property and Internet Assets is the highest and best offer received by the Sellers, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer  Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of

7

Columbia  ((a), (b)  and (c) collectively, "Value"), for the Intellectual Property and Internet Assets.

L.   The Purchaser would not have entered into the Agreement and would not consummate the Transactions, thus adversely affecting the Sellers, their estates and creditors, if the sale of the Intellectual Property and Internet Assets to the Purchaser was not free and clear of all Interests (as defined herein), or if the Pur-chaser would, or in the future could, be liable for any of such Interest.  A sale of the Intellectual Property and Internet Assets other than one free and clear of all Interests would adversely impact the Sellers' estates, and would yield substantially less value for the Debt-ors' estates, with less certainty than the Sale.  There-fore, the Sale contemplated by the Agreement is in the best interests of the Sellers, their estates and credi-tors, and all other parties in interest.

M.   The Sellers may sell the Intellectual Property and Internet Assets free and clear of all In-terests, because, with respect to each creditor assert-ing a Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied.

KL2 2599402.1

Those holders of Interest who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2). Those holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f).

N.    Neither the Sellers nor Purchaser engaged in any conduct that would cause or permit the Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

O.    The Purchaser is not holding itself out to the public as a continuation of the Sellers and is not an "insider" or "affiliate" of any of the Debtors.

P.    Entry into the Agreement and consummation of the Transactions constitute the exercise by the Sellers of sound business judgment and such acts are in the best interests of the Sellers, their estates and creditors, and all parties in interest.  The Court finds that the Sellers have articulated good and sufficient business reasons justifying the Sale of the Intellectual Property and Internet Assets to Purchaser.  Such busi-

ness reasons include, but are not limited to, the fol-

lowing: (i) the Agreement constitutes the highest and

best offer for the Intellectual Property and Internet

Assets; (ii) the Agreement and the closing thereon will

present the best opportunity to realize the value of the

Intellectual Property and Internet Assets and avoid de-

cline and devaluation of the Intellectual Property and

Internet Assets; (iii) there is substantial risk of de-

terioration of the value of the Intellectual Property

and Internet Assets if the Sale is not consummated

promptly; and (iv) the Agreement and the closing thereon

will provide a greater recovery for the Sellers' credi-

tors than would be provided by any other presently

available alternative.

Q.   Upon due consideration, and upon review

of the report of the CPO filed on _____, 2009 (as may

have been modified, the "CPO Report"), the facts, cir-

cumstances and conditions of the sale of the Circuit

City Data (as defined in the Agreement), including any

personally identifiable information ("PII") incorporated

therein, warrant approval of the Sale under Bankruptcy

Code section 363(b)(1)(B).

10

R.    The Alpine Data (as defined in the Agree-
ment), including any PII, is not subject to a privacy
policy.  Thus, relief under Bankruptcy Code section
363(b)(1) is warranted without the need for the Debtors
or any other party to comply with Bankruptcy Code sec-
tion 363(b)(1)(A) or (B).

S.    Time is of the essence in consummating
the Sale.  In order to maximize the value of the Sell-
ers' assets, it is essential that the sale of the Intel-
lectual Property and Internet Assets occur within the
time constraints set forth in the Agreement.  Accord-
ingly, there is cause to lift the stay contemplated by
Bankruptcy Rule 6004.

T.    The Sale contemplated by the Agreement is
in the best interests of the Debtors and their estates,
creditors, interest holders and all other parties in in-
terest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is
GRANTED.

2.    Pursuant to Bankruptcy Code sections 105
and 363, the Agreement attached hereto as Exhibit A and

11

the Sale of the Intellectual Property and Internet As-
sets to Purchaser are hereby approved and authorized in
all respects.

3.   Pursuant to Bankruptcy Code sections
363(b) and 363(f), upon the consummation of Transactions
contemplated by the Agreement, the Sellers' right, ti-
tle, and interest in the Intellectual Property and
Internet Assets shall be transferred to the Purchaser
free and clear of all interests, including (without
limitation) all liens, mortgages, security interests,
charges, easements, leases, subleases, covenants, rights
of way, options, claims, restrictions or encumbrances of
any kind, except the Assumed Liens (as defined in the
Agreement), (the "Liens") and all debts, adverse claims,
liabilities, commitments, responsibilities and obliga-
tions of any kind or nature whatsoever, direct, indi-
rect, absolute or contingent, matured or unmatured,
whether accrued, vested or otherwise, whether known or
unknown, foreseen or unforeseen, and whether or not ac-
tually reflected, or required to be reflected, in a
party's balance sheets or other books and records (the
"Liabilities" and together with the Liens, the "Inter-

ests"), with all such Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they had as against the Intellectual Property and Internet Assets immediately before such transfer, subject to any claims and defenses the Sellers may possess with respect thereto.

4.    Except as may be expressly provided in the Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or re-sponsible, as a successor or otherwise, for any liabili-ties, debts, or obligations of the Sellers in any way whatsoever relating to or arising from the Sellers' own-ership or use of the Intellectual Property and Internet Assets prior to the consummation of the Transaction con-templated by the Agreement, or any liabilities calcula-ble by reference to the Sellers or the Intellectual Property and Internet Assets, or relating to continuing or other conditions existing on or prior to the Closing.

5.    The Transactions were undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Intellectual Property and Inter-

K1.2 2599402.1

net Assets as that term is used in Bankruptcy Code sec-

tion 363(m).  The Purchaser is entitled to all of the

protections afforded by Section 363(m) of the Bankruptcy

Code.

      6.    Pursuant to sections 105 and 363 of the

Bankruptcy Code, the Sellers and the Purchaser are each

hereby authorized to take any and all actions necessary

or appropriate to: (i) consummate the Sale of the Intel-

lectual Property and Internet Assets to Purchaser and

the Closing of the Sale in accordance with the Motion,

the Agreement and this Order; and (ii) perform, consum-

mate, implement and close fully the Agreement together

with all additional instruments and documents that may

be reasonably necessary or desirable to implement the

Agreement.

      7.    Pursuant to Bankruptcy Code section

363(b)(1)(B), with respect to the transfer of the Cir-

cuit City Data and any associated PII, the Purchaser

shall (i) adopt and comply with the privacy policy at-

tached as Schedule G to the Agreement (the "Privacy Pol-

icy") with respect to the Circuit City Data; (ii) use

PII for the same purpose(s) as are specified in the Pri-

14

KL2 2599402.1

vacy Policy; (iii) prior to making any material change to the Privacy Policy with respect to the Circuit City Data or the use or disclosure of PII different from that specified in the Privacy Policy, notify the persons whose PII is included in the Circuit City Data by mail or email and afford such persons the opportunity to opt-out of the changes to the Privacy Policy or the new uses of their Data; (iv) employ appropriate information security controls and procedures (technical, operational, and managerial) to protect the Circuit City Data; and (v) abide by all applicable US laws and regulations.

8.    This Order is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report

15

or insure any title or state of title in or to the In-
tellectual Property and Internet Assets conveyed to Pur-
chaser.  All such entities described above in this para-
graph are authorized and specifically directed to strike
all recorded Interests against the Intellectual Property
and Internet Assets from their records, official and
otherwise.

9.    Each and every federal, state and govern-
mental agency or department, and any other person or en-
tity, is hereby directed to accept any and all documents
and instruments necessary and appropriate to consummate
the transactions contemplated by the Agreement.

10.   This Order shall be effective immediately
upon entry, and any stay of orders provided for in Bank-
ruptcy Rule 6004(h) or any other provision of the Bank-
ruptcy Code or Bankruptcy Rules is expressly lifted.

11.   To the extent permitted by section 525 of
the Bankruptcy Code, no governmental unit may revoke or
suspend any right, license, trademark or other permis-
sion relating to the use of the Intellectual Property
and Internet Assets sold, transferred or conveyed to

16

Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale.

12. The Agreement and any related agreements, documents or instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of this Court.

13. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of the Agreement and such documents shall govern.

14. The Court retains jurisdiction, even after the closing of these chapter 11 cases, to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the Intellectual Property and Internet Assets, from and against any

17

KL2 2599402.1