Gregg M. Galardi, Esq. Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq. Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER & MCGUIREWOODS LLP
FLOM, LLP One James Center
One Rodney Square 901 E. Cary Street
PO Box 636 Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

   - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:    : Chapter 11
       :
CIRCUIT CITY STORES, INC., : Case No. 08-35653 (KRH)
et al.,    :
       :
    Debtors. : Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 363 AND 365 (A) AUTHORIZING DEBTORS TO
ENTER INTO AGREEMENT IN CONNECTION WITH SALE AND
ASSIGNMENT OF UNEXPIRED LEASE AND SUBLEASE OF
NONRESIDENTIAL REAL LEASES, SUBJECT TO HIGHER OR
OTHERWISE BETTER BIDS, (B) APPROVING TERMINATION FEE IN
CONNECTION THEREWITH, (C) APPROVING SALE OF LEASE AND
SUBLEASE FREE AND CLEAR OF ALL INTERESTS, AND
(D) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to

sections 105, 363 and 365 of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 2002, 6004

and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), for entry of an order

(A) authorizing the Debtors to enter into an agreement

with the Purchaser (as defined herein) for the

assumption, assumption, and sale (the "Sale") of certain

of the Debtors' Leases (as defined herein), a copy of

which is attached as Exhibit A to the Sale Order (the

"Agreement"), subject to higher or otherwise better

proposals, (B)  approving the Termination Fee (as

defined below) in connection therewith, (C) approving

the Sale of the Leases free and clear of all interests

and (D) granting related relief.  In support of the

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address is 9954 Mayland Drive, Richmond, Virginia 23233.

Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

## BACKGROUND

**A.    The Bankruptcy Cases.**

3.     On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.     On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no

3

trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of on or about March 8, 2009, the going out of business sales concluded.

**B.    The Lease Procedures Order**

7.    On February 19, 2009, the Court approved procedures for the sale or rejection of the Debtors' real property leases for the Debtors remaining retail stores and certain other locations (D.I. 2242, the "Lease Procedures Order").  The Lease Procedures Order authorized the Debtors to solicit bids and conduct auctions with respect to the Debtors' real property leases.  The Lease Procedures Order further provided procedures whereby the Debtors may reject those real

4

property leases for which the Debtors do not receive
bids or that the Debtors otherwise wish to reject by
providing seven-days written notice to the landlord (the
"Rejection Notice"), without further hearing.

8.   On March 30, 2009, the Court approved
modifications to the Lease Procedures Order (D.I. 2855,
the "Modified Lease Procedures Order"), granting the
Debtors additional time to market the certain of the
Debtors' leases, including the Leases that are the
subject of this Motion, beyond the March 31, 2009
automatic rejection date established in the Lease
Procedures Order.   The Modified Lease Procedures Order
also authorizes the Debtors to establish new bid
deadlines and auction dates for these same leases.

**C.   The Leases.**

9.   Circuit City Stores West Coast, Inc.
("Tenant"), as successor to Edbro California Realty
Company, is party to a ground lease dated April 30, 1970
with Concar Enterprises, Inc. ("Landlord") for the
premises (the "Premises") located at 1880 South Grant
Street in San Mateo, California (the "Ground Lease").

10.   Circuit City Stores West Coast, Inc.
subleases the Premises to TJ Maxx of CA, LLC
("Sublessee") pursuant to a sublease dated July 31, 1987
(the "Sublease," together, with the Ground Lease, the
"Leases").

### RELIEF REQUESTED

11.   By this Motion, the Debtors seek an
order (A) authorizing the Debtors to enter into the
Agreement in connection the Sale of the Leases, subject
to higher or otherwise better proposals, (B) approving
the Termination Fee in connection therewith,
(C) approving the of the Sale of the Leases free and
clear of all interests, and (D) granting related relief
(the "Sale Order").

12.   As more fully set forth below, after a
comprehensive review, the Debtors believe that the
assumption, assignment, and sale represents their best
opportunity under the circumstances to maximize the
value of the Leases.  Therefore, the Sale is in the best
interests of the Debtors' estates and stakeholders.

6

**BASIS FOR RELIEF**

**A.    Events Leading To The Sale.**

13.   In light of the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales, as described above, the Debtors have been left with various assets -- including the Leases -- for which they have no remaining use.  In contrast, the sale of such assets, including the Sale of the Leases, would result in significant proceeds for the Debtors' estate and creditors.  The Leases are among the Debtors' most valuable real property leases because they generate a net positive cash-flow annually.

14.   Since the Petition Date, the Debtors, along with their real estate advisor, DJM Realty, LLC ("DJM"), have been marketing the Leases.  As a result of these marketing efforts, the Debtors received various proposals to purchase the Leases.  Upon reviewing these proposals, the Debtors determined that the proposal submitted by the Purchaser was the highest or otherwise best proposal of those received.  Thus, the Debtors

elected to proceed with the Sale of the Leases to the Purchaser.

**B.    The Agreement.**

15.    The Agreement provides that Merchant Equity NY, Inc. (the "Purchaser") shall pay $235,000.00 to the Debtors, $35,250.00 of which has been deposited in escrow and the balance to be paid upon closing of the Sale.  As adequate assurance of future performance, the Purchaser has provided federal tax returns for 2007, which have been forwarded to the Landlord.  Additionally, the Sublease results in positive annual cash flow.

**C.    Termination Fee.**

16.    The Debtors have agreed to pay the Purchaser a break-up fee of $20,000.00 (the "Termination Fee") if, and only if (i) Purchaser is not in breach of or default under the Agreement, (ii) the Agreement is not conditioned on conducting any further, or completing, due diligence and (iii) the Debtors consummate the Sale of the Leases with a higher or otherwise better bidder at the Auction.

17.    The Purchaser has expended, and likely will continue to expend, considerable time, money, and

8

energy pursuing the Sale and has engaged in arm's length
and good faith negotiations regarding a possible sale of
the Leases.  The Agreement is the culmination of these
efforts.

18.   In recognition of this expenditure of
time, energy, and resources, the Debtors have agreed to
the Termination Fee.  Specifically, the Agreement
provides for, and the Debtors respectfully request that
the Sale Order approve, the Termination Fee payable by
the Debtors to the Purchaser in the amount of $20,000.00
if the Debtors terminate the Agreement to close an
alternative transaction, so long as the Purchaser is not
in breach of the Agreement and the Agreement is not
conditioned on conducting or completing any further due
diligence.

19.   The Debtors believe that the proposed
Termination Fee is fair and reasonable in view of
(a) the analysis, due diligence investigation, and
negotiation undertaken by the Purchaser in connection
with the Sale and (b) the fact that the Purchaser's
efforts would maximize the value of the Leases for the
benefit of all stakeholders, whether as a result of

consummating the Sale pursuant to the Agreement or by
generating a higher or otherwise better offer.

20.   The Purchaser is unwilling to keep open
its offer to purchase the Leases under the terms of the
Agreement unless this Court authorizes payment of the
Termination Fee.  Thus, absent entry of the Sale Order
with approval of the Termination Fee, the Debtors may
lose the opportunity to obtain what they believe to be
the highest or otherwise best offer for the Leases.  And,
as described below, the Agreement is subject to higher
or otherwise better proposals.  Approving the
Termination Fee will thus commit the Purchaser to
purchase the Leases under the Agreement, and the
Agreement would serve to start any additional bidding
for the Leases at a fair and reasonable purchase price.

21.   Payment of the Termination Fee will not
diminish the Debtors' estates.  The Debtors would not
expect to pay the Termination Fee unless they do so to
accept an alternative proposal, which would result in
even greater value to the Debtors' estates and their
stakeholders.  This is particularly true given the
Initial Minimum Overbid requirement (as defined below),

10

which ensures that other proposals represent higher or
otherwise better offers for the Leases taking into
account payment of the Termination Fee.  The Debtors
thus request that this Court authorize payment of the
Termination Fee pursuant to the terms and conditions of
the Agreement.

**D.    The Bidding Procedures.**

22.    To ensure the Debtors receive the
highest or otherwise best proposal for the Leases, the
Debtors will entertain alternate proposals for the Sale
of the Leases.  The Debtors accordingly request that
this Court order that any parties, including those
parties that previously submitted proposals, who wish to
submit an alternate proposal for consideration by the
Debtors be required to do so by May 6, 2009 at 4:00 p.m.
(ET) (the "Bid Deadline").  Upon receipt of any
alternate proposal that the Debtors deem to be a
Qualified Bid (as defined herein), the Debtors will
provide the Landlord with Adequate Assurance Information
(as defined herein) from the party who submits a
Qualified Bid.

23.   If the Debtors receive any Qualified
Bids, the Debtors would hold an auction (the "Auction")
on May 11, 2009, either telephonically or at the offices
of Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times
Square, New York, NY.  The Debtors will advise the
Purchaser, the Landlord, the Sublessee, and all other
parties that submitted a Qualified Bid of the Auction.

24.   At the conclusion of any Auction, the
Debtors, in consultation with their advisors (and
representatives of the Creditors' Committee), would
determine the highest or otherwise best bid (the
"Successful Bid") and would provide the Landlord with
notice of the Successful Bid.

25.   Following the Auction, if any, the
Debtors intend to proceed with a hearing to approve the
Sale of the Leases on May 13, 2009 at 10:00 a.m. (ET)
(the "Sale Hearing").

26.   If no Qualified Bids other than the bid
of the Purchaser are received, the Debtors would proceed
with the Sale to the Purchaser following entry of the
Sale Order.  If the Debtors receive additional Qualified
Bids, then at the Sale Hearing, the Debtors would seek

12

approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder"). A bid would not be deemed accepted by the Debtors unless and until approved by the Court.

27.    Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and the Debtors would be permitted to effectuate a sale and assignment to the Alternate Bidder without further order of the Court.

28.    To ensure that only bidders with a serious interest in the purchase of the Leases participate in the bidding process, the Debtors would only consider the "Qualified Bids" of "Qualified Bidders." To be considered a "Qualified Bid" and a "Qualified Bidder" for purposes of the Auction, the person or entity submitting the bid would be required to submit an offer by the Bid Deadline that includes:

> (a)   an executed copy of the Agreement marked to show those amendments and modifications to the Agreement that the

13

Qualified Bidder proposes (such modified Agreement, a "Marked Agreement"), including modifications to the Purchase Price, which price must be at least $260,000.00 (the "Initial Minimum Overbid"); The Landlord may credit bid the Proposed Cure Amount (as defined below) as part of its Initial Minimum Overbid.  Any additional amounts credit bid by the Landlord will be taken into consideration by the Debtors (after consultation with their advisors and the Creditors' Committee's advisors) in evaluating whether such Landlord's bid is higher or otherwise better and whether the Initial Minimum Overbid requirement of the Qualified Bid requirements has been satisfied.

(b)   the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder;

(c)   evidence, satisfactory to the Debtors in their reasonable discretion (after consultation with representatives of the Creditors' Committee), of the bidder's financial wherewithal, including, but not limited to: (a) federal tax returns for two years, a current audited financial statement and/or bank account statements, (b) a description of intended use, and (c) any other information that the Debtors may reasonably request (the "Adequate Assurance Information");

(d)   a statement that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency;

(e)   a good faith deposit (the "Good Faith Deposit") equal to 15% of the cash

14

component of the purchase price; <u>provided</u>,
<u>however</u>, that if the Landlord were to bid
on its own Lease it would be exempt from
this requirement.

(f)  an acknowledgement that the bidder's
offer is irrevocable until two (2)
business days after the closing of the
Sale of the Leases; and

(g)  an acknowledgement that, in the event the
bidder is the Alternate Bidder, the
bidder will proceed with the purchase of
the Leases pursuant to the terms the
Marked Agreement.

29.  The Debtors reserve the right to
(i) determine in their reasonable discretion (after
consultation with representatives of the Creditors'
Committee) which offer is the highest or otherwise best
offer; (ii) reject at any time prior to the closing of a
Sale, without liability, any offer that the Debtors in
their reasonable discretion (after consultation with
representatives of the Creditors' Committee) deem to be
(x) inadequate or insufficient, (y) not in conformity
with the requirements of the bidding procedures or
applicable law or (z) contrary to the best interests of
the Debtors and their estates; (iii) re-open the Auction,
(iv) withdraw the Leases from the Auction, and (v) waive
the requirements of any of the bidding procedures with

15

respect to a potential or Qualified Bidder if the
Debtors determine in their business judgment (after
consultation with representatives of the Creditors'
Committee) it is in the best interests of their estates
and creditors.

**D.    Cure Procedures.**

30.    The Debtors believe that they are current
on their obligations under the Ground Lease, except with
respect to the amount of $40,514.37 (the "Proposed Cure
Amount").

31.    The Debtors propose that unless the
Landlord files an objection to the Proposed Cure Amount
asserting a different cure amount than the Proposed Cure
Amount, on or before May 10, 2009 at 4:00 p.m. (ET),
then Landlord should be forever barred from asserting a
cure amount different from the Proposed Cure Amount
(except for any amounts accruing from the date of the
filing of this Motion through the date of assignment).
Any such cure dispute caused by a valid and timely
objection will be resolved, as necessary, either at the
applicable Sale Hearing or such later date as may be
agreed to among the parties or scheduled by the Court.

16

**APPLICABLE AUTHORITY**

**I.    APPROVAL OF THE SALE OF THE LEASES IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

32.  As set forth above, Bankruptcy Code section 363(b)(1) authorizes a  trustee to "use, sell, or lease" property of the estate with the Court's approval.  11 U.S.C. § 363(b)(1).  Assets of the Debtors may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so.  In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

33.  To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable; and (4) adequate and reasonable notice of the sale has been provided.  In re WBQ P'ship, 189 B.R. at 102.

34.   Based upon the results of their analysis, the Debtors' management and advisors have concluded that the Sale of the Leases pursuant to the Agreement or a higher or otherwise better offer would maximize the value of the Leases for the estate.  Maximizing asset value is a sound business purpose that warrants authorizing the proposed Sale and Assignment.

35.   The Sale and Assignment of the Leases will be subject to competing bids, thereby enhancing the Debtors' ability to receive the highest or otherwise best value for the Leases.  Consequently, the fairness and reasonableness of the consideration to be received by the Debtors will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

36.   Moreover, the Debtors propose to provide adequate notice of the Auction and the Sale Hearing as set forth below.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these

18

cases, those parties potentially interested in bidding on the Leases and others whose interests are potentially implicated by the proposed Sale and Assignment.

## II.   THE SALE PROCESS IS REASONABLE AND APPROPRIATE.

37.   Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

38.   The disposition of the Leases pursuant to the terms reflected in the Agreement resulted from the bids submitted for the Leases, pursuant to a marketing process led by DJM.  Conducting a marketing process through a third party broker represents an accepted method of selling Leases.  Similar marketing processes have been approved in other chapter 11 cases.  See, e.g., Ready v. Rice, 2006 WL 4550188 at *3 (D. Md. 2006); see also In re Reading Broadcasting, Inc., 386 B.R. 562,

19

571-72 (Bankr. E.D. Pa. 2008); In re King-Wilson, 1998

WK 737887 at *4-5 (N.D. Cal. 1998).

39.   In addition, bid procedures similar those

Bid Procedures outlined above have been approved by this

Court in this case.

40.   Finally, the other interested parties are

provided with an opportunity to submit a higher or

otherwise better proposal and, if necessary, the Debtors

will conduct an auction.

41.   In light of the foregoing, the Debtors

submit that the Sale process is reasonable and

appropriate.

**III. THE TERMINATION FEE REQUESTED HEREIN IS REASONABLE
     AND SHOULD BE APPROVED.**

42.   In connection with Sale of the Leases,

the Court should authorize the Sellers to pay the

Termination Fee.

43.   Agreements to provide termination fees

and other bidding incentives are designed to compensate

a potential acquirer who serves as a catalyst that may

attract higher and better offers, and have been approved

in bankruptcy to encourage bidding. See In re Ryan, 261

B.R. 867, 870 (Bankr. E.D. Va. 2001).  Termination fees

can be advantageous to both buyers and sellers because

they encourage bidding to ensure that sellers receive

the highest or otherwise best offer while compensating

the buyer for the risk of being outbid.  See id.

      44.  Termination fee fees are allowed as an

administrative expense claim against the estate if they

satisfy the standard of section 503(b)(1).  In re Tropea,

352 B.R. 766, 768 (Bankr. N.D.W.Va. 2006).  Thus, the

fee must reflect the actual and necessary cost of

preserving the estate.  See 11 U.S.C. § 503(b)(1).  See

also In re Tropea, 352 B.R. at 768.  In Calpine Corp. v.

O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy,

Inc.), 181 F.3d 527 (3d Cir. 1999), the United States

Court of Appeals for the Third Circuit explained how the

section 503(b)(1) standard applied to termination fees.

The Third Circuit Court of Appeals held that even though

bidding incentives are measured against a business

judgment standard in non-bankruptcy transactions, the

administrative expense provisions of Bankruptcy Code

section 503(b) govern in the bankruptcy context.

Accordingly, to be approved, bidding incentives must

21

provide some postpetition benefit to the debtor's estate.
See id. at 533; see also In re Lamb, 2002 WL 31508913
(Bankr. D. Md. 2002) (implicitly adopting the
administrative expense standard set forth in O'Brien).

45.   The O'Brien Court identified at least two
instances in which bidding incentives may provide
benefit to the estate.  First, benefit may be found if
"assurance of a break-up fee promoted more competitive
bidding, such as by inducing a bid that otherwise would
not have been made and without which bidding would have
been limited."  Id. at 537.  Second, when the
availability of bidding incentives induce a bidder to
research the value of the debtor and submit a bid that
serves as a minimum or floor bid on which other bidders
can rely, "the bidder may have provided a benefit to the
estate by increasing the likelihood that the price at
which the debtor is sold will reflect its true worth."
Id.

46.   Here, the Debtors seek authority to use
the Termination Fee in the event that the Purchaser is
not ultimately the Successful Bidder.  The proposed
Termination Fee is appropriate under Bankruptcy Code

22

section 503.  The Termination Fee is fair and reasonable in amount, particularly in view of the efforts that will have to be expended by the Purchaser.  Moreover, the Agreement, including the Termination Fee provided for therein, will enable the Debtors to secure an adequate floor for an auction and, thus, insist that competing bids be materially higher or otherwise better than the purchase price pursuant to the Agreement (as incorporated in the Initial Minimum Overbid requirement), a clear benefit to the Debtors' estates.

47.  In sum, the Debtors' ability to offer the Termination Fee enables them to ensure the Sale of the Leases to a contractually-committed bidder at a price that they believe to be fair while, at the same time, providing them with the potential of even greater benefit to the estates.

48.  Thus, the Termination should be approved.

**IV.   THE PURCHASER OR SUCCESSFUL BIDDER SHOULD BE
AFFORDED THE PROTECTIONS OF SECTION 363(n) OF THE
BANKRUPTCY CODE.**

49.  Section 363(m) of the Bankruptcy Code provides:

23

> The reversal or modification on appeal of
> an authorization under subsection (b) or
> (c) of this section of a sale or lease of
> Leases does not affect the validity of a
> sale or lease under such authorization to
> an entity that purchased or leased such
> property in good faith, whether or not
> such entity knew of the pendency of the
> appeal, unless such authorization and
> such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not

define "good faith," the Fourth Circuit Court of Appeals

has "adopt[ed] the traditional equitable definition that

has been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and

without notice of adverse claims.'" Willemain v. Kivitz,

764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

50. Section 363(n) of the Bankruptcy Code

further provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

24

51.   The Debtors submit, and will present evidence at the Sale Hearing, that the Agreement reflects an intensely negotiated, arm's length transaction.   Throughout the negotiations, the Purchaser has at all times acted in good faith.   Moreover, to the extent that the assets are sold to a Successful Bidder, it will be because of a well-planned competitive process and negotiations at arm's length to be conducted at an auction.   As a result of the foregoing, the Debtors request that the Court make a finding that the Purchase Price to be paid by the Purchaser or the Successful Bidder constitutes reasonably equivalent value and fair consideration under any applicable law.

52.   The Debtors, therefore, request that this Court make a finding that the Purchaser or the Successful Bidder, as the case may be, has purchased the Leases in good faith within the meaning of section 363(m) of the Bankruptcy Code.   Further, the Debtors request that this Court make a finding that the Agreement or any purchase agreement reached as a result of the bidding procedures necessarily will comprise an arm's length, intensely-negotiated transaction entitled to the

25

protections of section 363(m) of the Bankruptcy Code.

Because the Debtors have shown that the Purchaser's or

Successful Bidder's bid is not the product of fraud or

collusion between the Purchaser or Successful Bidder and

other bidders or the trustee, or an attempt to take

grossly unfair advantage of other bidders, the Debtors

further request that this Court make a finding that the

transactions contemplated by the Agreement are not

avoidable under section 363(n) of the Bankruptcy Code.

**V.   THE SALE OF THE LEASES FREE AND CLEAR OF ALL
       INTERESTS SHOULD BE AUTHORIZED UNDER BANKRUPTCY
       CODE SECTION 363(f).**

        53.   To facilitate a sale of the Leases, the

Debtors request authorization to sell the Leases free

and clear of any and all interests, including claims,

liens, and encumbrances (collectively, all "Interests")

that may be asserted against such property.

        54.   Under section 363(f) of the Bankruptcy

Code, a debtor in possession may sell property free and

clear of any interest in such property if, among other

things:

            (1) applicable nonbankruptcy law permits sale
            of such property free and clear of such
            interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide   dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

55.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

56.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc.,

189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain
meaning of the statute demonstrates, § 363 covers more
situations than just sales involving liens."). Moreover,
courts have noted that the purpose of the "free and
clear" language is to allow the debtor to obtain a
maximum recovery on its assets in the marketplace. See
In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr.
D. Del. Mar. 27, 2001).

57. Accordingly, this Court should authorize
the Debtors to sell the Leases free and clear of any and
all Interests that may be asserted by any parties, with
any such Interests attaching to the net proceeds of the
sale of the Leases in the same order and priority and
subject to the same defenses as they exist against the
Leases.

**VI.  APPROVAL OF ASSUMPTION AND ASSIGNMENT OF THE LEASES
     IS WARRANTED UNDER BANKRUPTCY CODE SECTION 365.**

58. Under section 365(a) of the Bankruptcy
Code a debtor, "subject to the court's approval, may
assume or reject any executory contract or unexpired
lease of the debtor." 11 U.S.C. § 365(a). Section
365(b)(1) of the Bankruptcy Code, in turn, codifies the

28

requirements for assuming an unexpired lease or

executory contract of a debtor.  It provides:

> If there has been a default in an
> executory contract or unexpired lease of
> the debtor, the trustee may not assume
> such contract or lease unless, at the
> time of the assumption of such contract
> or lease, the trustee –
>
> (A)  cures, or provides adequate
> assurance that the trustee will promptly
> cure, such default;
>
> (B)      compensates, or provides
> adequate assurance that the trustee will
> promptly compensate, a party other than
> the debtor to such contract or lease, for
> any actual pecuniary loss to such party
> resulting from such default; and
>
> (C)      provides adequate
> assurance of future performance under
> such contract or lease.

11 U.S.C. § 365(b)(1).

59.  Section 365(f)(2) of the Bankruptcy Code

provides that:

> The trustee may assign an executory contract
> or unexpired lease of the debtor only if –
>
> (A)  the trustee assumes such contract or
> lease in accordance with the provisions
> of this section; and
>
> (B)  adequate assurance of future
> performance by the assignee of such
> contract or lease is provided, whether or

> not there has been a default in such
> contract or lease.

11 U.S.C. § 365(f)(2).

60.   To the extent that any defaults exist under any of the Leases that are to be assumed and assigned in connection with the Sale, the Debtors (or the Successful Bidder) would cure any such default.

61.   Moreover, the bidding procedures are also designed to ensure that the Purchaser (or the Successful Bidder) has the financial resources to perform under the Leases and is required to provide adequate assurance of future performance under the Leases.

62.   Courts give the phrase "adequate assurance of future performance" a "practical, pragmatic construction." EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d Cir. 1993) (presence of adequate assurance should be "determined under the facts of each particular case"). Adequate assurance does not require a debtor to provide a guarantee of future performance; assurance is deemed adequate as long as performance is more probable than

30

not.  See Cinicola v. Scharffenberger, 248 F.3d 110, 120

n. 10 (3d Cir. 2001) ("Although no single solution will

satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of

performance." (quotations and citations omitted)); In re

Weirton Steel Corp., 2007 WL 2021896 at *5 (Bankr. N.D.

W. Va. July 6, 2007) ("Assurance is adequate if

performance is likely; that is more probable than not.").

63.  Moreover, under section 365(f)(2)(B), the

primary determinant of adequate assurance of future

performance is whether rent will be paid.  In re Martin

Paint Stores, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996)

("[T]he primary focus of adequate assurance concerns the

assignee's ability to fulfill the financial obligations

under the lease.").

64.  The bidding procedures require the

Purchaser (or the Successful Bidder) to submit evidence

of its financial wherewithal to perform under the Leases,

which is all that is necessary to satisfy the adequate

assurance of future performance requirement.  See In re

Sapolin Paints, Inc., 5 B.R. 412, 416-417, 420 (Bankr.

E.D.N.Y. 1980) (finding adequate assurance where

31

economic conditions definitively demonstrated assignee
would perform on contract and assignee submitted
statements showing positive net worth and income).
Moreover, because the income generated from rents
collected from the Sublessee exceeds the rent due to the
Landlord under the Ground Lease, it is likely and more
probable than not that the Purchaser (or the Successful
Bidder) would be able to perform under the Ground Lease.
See Ramco-Gershenson Properties, L.P. v. Service
Merchandise Company Inc., 293 B.R. 169, 178 (M.D. Tenn.
2003) (finding debtor made good faith effort to provide
adequate assurance by showing the sublease was
generating enough rent to exceed the payments under the
lease).

        65.  Finally, if necessary, the Debtors will
adduce facts at the Sale Hearing demonstrating the
financial wherewithal of any purchaser, and its
willingness and ability to perform under the Leases to
be assumed and assigned to it.

**VII.  WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY
       RULES 6004 AND 6006 SHOULD BE WAIVED FOR ANY ORDER
       APPROVING THE SALE AND ASSIGNMENT OF THE LEASES.**

66.   Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of
property of the estate is stayed until the expiration of
10 days after entry of the order, unless the court
orders otherwise."  Fed. R. Bankr. P. 6004(h).
Similarly, Bankruptcy Rule 6006(d) provides that: "[a]n
order authorizing the trustee to assign an executory
contract or unexpired lease under Sec. 365(f) is stayed
until the expiration of 10 days after the entry of the
order, unless the court orders otherwise."  Fed. R.
Bankr. P. 6006(d).

67.   The Debtors request that the Court waive
the ten-day stay of Bankruptcy Rules 6004 and 6006 with
respect to the Sale of the Leases following the entry of
the Sale Order.  By waiving such requirements, the
Debtors and the Purchaser or the Successful Bidder, as
applicable, will be able to immediately close the Sale,
which will result in a more immediate benefit to the
Debtors' estate.  Indeed, the Debtors will avoid any
further costs associated with obligations under the

33

Leases and realize the value from the Successful Bid
immediately.

## NOTICE

68.  Notice of this Motion has been provided
to those parties entitled to notice under the Order
Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (D.I. 130;
the "Case Management Order"), as well as (a) all
entities known to have expressed an interest in a
transaction regarding the Leases during the past three
(3) months; and (b) all entities reasonably known to
have an interest in the Leases.  Notice of the entry of
the Order will be provided to the same parties.  The
Debtors submit that, under the circumstances, no other
or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

69.  Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors requests that the

34

requirement that all motions be accompanied by a

separate memorandum of law be waived.

### NO PRIOR REQUEST

70.  No previous request for the relief sought

herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: April 19, 2009
      Richmond, Virginia   SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                        - and -

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Chris L. Dickerson, Esq.
                              333 West Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                        - and -

                              MCGUIREWOODS LLP

                              ___/s/ Douglas M. Foley_____
                              Dion W. Hayes (VSB No. 34304)
                              Douglas M. Foley (VSB No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and Debtors
                              in Possession

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                         :    Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :    Case No. 08-35653-KRH
et al.,                        :
                               :
              Debtors.         :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER AUTHORIZING DEBTORS TO ASSUME, ASSIGN AND SELL
UNEXPIRED LEASE AND SUBLEASE OF NON-RESIDENTIAL REAL
PROPERTY**

        Upon consideration of the motion (the

"Motion")[1] of the Debtors for an order pursuant to

sections 105, 363 and 365 of title 11 of the United

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to them in the Motion.

States Code (the "Bankruptcy Code") and Rules 2002, 6004

and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), for entry of an order

(A) authorizing the Debtors to enter into an agreement

with the Purchaser for Sale of the Debtors' Leases,

subject to higher or otherwise better proposals,

(B) approving the Termination Fee in connection

therewith, (C) approving the Sale and Assignment of the

Leases free and clear of all interests and (D) granting

related relief; and the Court having entered the Order

under Bankruptcy Code Sections 105, 363, and 365

Approving Amended Bid Deadline In Connection With

Bidding And Auction Procedures For Sale Of Unexpired

Nonresidential Real Property Leases (the "Modified Lease

Procedures Order"), which granted the Debtors additional

time to market the Leases beyond the March 31, 2009

automatic rejection date established in the Lease

Procedures Order and authorized the Debtors to establish

new bid deadlines and auction dates for the Leases; and

upon the record of the auction conducted on April 21,

2009 (the "Auction") and the hearing held on April 28,

2009 (the "Sale Hearing"); and upon the after due

2

deliberation thereon, and sufficient cause appearing

therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    The Court has jurisdiction to hear and

determine the Motion and to grant the relief requested

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and

1334(b).

B.    Venue of these cases and the Motion in

this district is proper under 28 U.S.C. §§ 1408 and

1409.  This is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief

requested in the Motion are Bankruptcy Code sections

105, 363, and 365 and Bankruptcy Rules 2002, 6004, 6006,

and 9014.

D.    The notice of the Motion, the Auction,

and the Sale Hearing given by the Debtors constitutes

due and sufficient notice thereof.

---

[2]    Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  See Fed. R. Bankr. P. 7052.

E.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Leases.

F.    A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities, including Concar Enterprises, Inc. as landlord (the "Landlord") for the ground lease related to store number 232 located at 1880 South Grant Street, San Mateo, California (together with any and all related lease documents and subleases associated therewith (the "Lease") and TJ Maxx CA, LLC, as sublesse (the "Sublessee"), under the sublease (together with any and all related sublease documents and sub-subleases associated therewith, if any, the "Sublease" and together with the Lease, the "Leases").

G.    The Debtors and their professionals marketed the Leases and conducted a sale process as set forth in and in accordance with the Motion.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have

4

been afforded a reasonable and fair opportunity to bid
for the Leases.

H.   After an auction held on May 11, 2009,
the Debtors determined in their business judgment, that
the highest and best Qualified Bid was that of the
Assignee (as defined herein).

I.   The Assignment Agreement (as defined
herein) and the sale of the Leases was negotiated and
has been and is undertaken by the Debtors and the
Assignee at arms' length without collusion or fraud, and
in good faith within the meaning of Sections 363(m) of
the Bankruptcy Code.  As a result of the foregoing, the
Debtors and the Assignee are entitled to the protections
of Section 363(m) of the Bankruptcy Code.

J.   Neither the Debtors nor the Assignee
engaged in any conduct that would cause or permit the
Assignment Agreement or the consummation of the Sale to
be avoided, or costs or damages to be imposed, under
Section 363(n) of the Bankruptcy Code.

K.   The Total Consideration (as defined
herein) provided by the Assignee for the Leases is the
highest and best offer received by the Debtors, and the

5

consideration constitutes (a) reasonably equivalent
value under the Bankruptcy Code and Uniform Fraudulent
Transfer Act, (b) fair consideration under the Uniform
Fraudulent Conveyance Act, and (c) reasonably equivalent
value, fair consideration and fair value under any other
applicable laws of the United States, any state,
territory or possession, or the District of Columbia,
for the Leases.

L.   The Debtors have demonstrated good,
sufficient, and sound business purpose and justification
for the assumption, assignment, and sale of the Leases.

M.   The assumption, assignment, and sale of
the Leases to Merchant Equity NY, Inc. (the "Assignee")
under sections 105, 363, and 365 of the Bankruptcy Code
is in the best interests of the Debtors, their estates,
and their creditors.

N.   Pursuant to sections 365(b)(1)(C),
365(f)(2)(B) and, if applicable, 365(b)(3), the Debtors
and the Assignee have demonstrated adequate assurance of
future performance by the Assignee under the Leases.

O.   The Cure Amount is deemed the entire cure
obligation due and owing on the Lease under section 365

6

of the Bankruptcy Code and there is no cure obligation
with respect to the Sublease.

P.   Upon the payment of the Cure Amount,
there are no outstanding defaults of the Debtors and
their estates under the Leases.

Q.   Upon the assignment to the Assignee, the
Leases shall be deemed valid and binding, in full force
and effect in accordance with their terms, subject to
the provisions of this Order and, pursuant to section
365(k) of the Bankruptcy Code, the Debtors and their
estates shall be relieved from any further liability
thereunder, including for any breach of the Leases.

R.   Based on the foregoing findings of fact
and conclusions of law,[3] **IT IS ORDERED, ADJUDGED, AND
DECREED THAT:**

1.   The Motion is granted as set forth
herein.

2.   All objections with regard to the relief
sought in the Motion as it pertains to the Leases, that

---

[3]   Statements made by the Court from the bench at the hearing on the
Motion shall constitute additional conclusions of law and
findings of fact as appropriate.

have not been withdrawn, waived, or settled, are
overruled on the merits.

3.    Under section 365 of the Bankruptcy Code,
the Debtors are authorized to assume the Leases and to
assign the Leases to the Assignee, which assignment
shall take place on and be effective as of the Effective
Date (as defined herein).

4.    Under Bankruptcy Code section 363, the
Debtors are authorized to sell the Leases to the
Assignee.

5.    The Debtors are authorized to execute the
Sale, Assumption and Assignment Agreement, in
substantially the form attached hereto as Exhibit A (the
"Assignment Agreement").

6.    The consummation of the transactions with
respect to the Leases contemplated hereunder shall take
place on the later of (i) the date that is two (2)
business days after the date of entry of this Order or
(ii) such other date as agreed upon between the Debtors
and the Assignee (the "Effective Date").

7.    Upon the occurrence of the Effective
Date, subject to the provisions of this Order, the

8

Assignee shall succeed to the entirety of Debtors'
rights and obligations in the Leases due, accruing,
arising or attributable to the time period occurring on
or after the Effective Date and shall have the rights of
the tenant (and sublandlord) thereunder.

8.   On the Effective Date, the Assignee shall
pay to the Debtors, in cash or otherwise immediately
available funds, $235,000.00 (the "Total
Consideration"), less $35,250.00 that has been deposited
in escrow.

9.   Upon the Effective Date, neither the
Assignee, the Debtors, nor the Debtors' estates shall
have liability for cure claims of, from, or related to
the Leases for any defaults or monetary obligations
thereunder, except that the Debtors shall be liable for
the following: (a) within five (5) business days after
the Effective Date Debtors shall pay to the Landlord the
"Cure Amount" for the Lease, which amount totals
$40,514.37.

10.  Upon the entry of this Order, (i) all
defaults under the Leases through the Effective Date
shall be deemed cured, (ii) no other amounts will be

owed by Debtors or their estates with respect to the
Leases, (iii) no amounts will be owed by the Assignee
with respect to the Leases for obligations relating or
attributable to the period prior to the Effective Date,
(iv) any and all persons or entities shall be forever
barred and estopped from asserting a claim against the
Debtors or their estates that any additional amounts are
due or defaults exist under the Leases, and (v) any and
all persons or entities shall be forever barred and
estopped from asserting a claim against the Debtors,
their estates, and the Assignee that any additional
amounts are due or defaults exist under the Leases that
arose or accrued, relate to or are attributable to the
period prior to the Effective Date.

      11.   The Assignee takes the Leases "as is."

      12.   Pursuant to section 365(f) of the
Bankruptcy Code, notwithstanding any provision to the
contrary in the Leases, or in applicable nonbankruptcy
law, that prohibits, restricts, or conditions the
assignment of the Leases, the Debtors may assign the
Leases to the Assignee.

13.   Upon the occurrence of the Effective
Date, subject to the provisions of this Order, the
Assignee shall assume all obligations under the Leases
attributable to, or arising or accruing during, the time
period occurring on or after the Effective Date or
related to the period subsequent to the Effective Date.

14.   Upon the occurrence of the Effective
Date, the Assignee shall be entitled to the protections
of section 363(m) of the Bankruptcy Code.

15.   Upon the assignment authorized herein,
and under section 365(k) of the Bankruptcy Code, the
Debtors and their estates shall have no further
liability under the Leases.

16.   Upon the assignment to the Assignee, the
Leases shall be deemed valid and binding, in full force
and effect in accordance with their terms, subject to
the provisions of this Order.

17.   To the extent that any of the Debtors
acts as a guarantor of the Leases (a "Debtor-
Guarantor"), the Debtor-Guarantor(s) shall have no
obligations with respect to the Leases after the
Effective Date.

18.   Pursuant to Bankruptcy Code section
363(f), the sale and corresponding assumption and
assignment of the Leases authorized hereunder shall be
free and clear of all Interests, with all such Interests
attaching only to the amount paid under the Assignment
Agreement for the Leases and the related premises on
which such Interests had been attached previously, in
the same order and priority, and with the same validity
and enforceability, as same may have had prior to the
sale, assumption and assignment of the Leases, subject
to any and all available defenses.

19.   Any mechanic's lien filed against the
Debtors with respect to the premises associated with the
Leases is hereby released, discharged, and terminated,
and the Assignee, the Landlord, and/or the Subtenant are
hereby authorized to file, register, or otherwise record
a certified copy of this Order and each and every
federal, state, and local governmental agency or
department is hereby directed to accept a certified copy
of this Order as conclusive evidence of the release,
discharge, and termination of any mechanic's lien filed
against the Debtors with respect to the premises

associated with the Leases and shall remove such
mechanic's lien from record.  Any interest released,
discharged and/or terminated under this paragraph shall
attach solely to the amount paid under the Assignment
Agreement for the Leases and the related premises on
which such interest had previously attached, subject to
any and all available defenses.

20.  Except for the Debtors with respect to
their rights under the Assignment Agreement and this
Order, all parties to the Lease and Sublease, and to any
other agreements relating to the Leases, other than the
Assignment Agreement, are forever barred from raising or
asserting against the Assignee any default or breach
under, or any claim or pecuniary loss arising under or
related to the Leases or such other agreements, arising,
accruing or incurred prior to the Effective Date.

21.  Except for (i) the Debtors with respect
to their rights under the Assignment Agreement and this
Order and (ii) the Landlord with respect to payment of
the Cure Amount, all parties to the Leases, and to any
other agreements relating to the Leases, other than the
Assignment Agreement, are forever barred from raising or

13

asserting against the Debtors or their estates any
default or breach under, or any claim or pecuniary loss,
arising under or related to, the Leases or such other
agreements.

    22.   Any obligations arising under the Leases
which arise, accrue, are incurred or relate to periods
on or subsequent to the Effective Date, including but
not limited to any tax, utility, common area charges or
insurance payments, shall be the obligation of the
Assignee, and no party (including the Assignee) shall
have a claim against the Debtors or their estates for
such obligations.

    23.   The Landlord, the Sublessee, and any
governmental agency shall accept and honor the
assignment of the Leases to the Assignee in accordance
with the Assignment Agreement and this Order.

    24.   The Landlord and the Sublessee shall
cooperate and expeditiously execute and deliver, upon
the reasonable requests of the Assignee, and shall not
charge the Assignee for, any instruments, applications,
consents, or other documents which may be required by
any public or quasi-public authority or other party or

entity, for the purpose of obtaining any permits,
approvals or other necessary documents required for the
alteration, installation of signage, opening and
operating of the premises associated with the Leases.

25.   Pursuant to Bankruptcy Code section 554,
the Debtors are authorized to abandon any and all
Debtor-owned improvements, furniture, fixtures,
equipment, inventory and/or any other personal property
("Abandoned Property") located on the Premises, and such
Abandoned Property is deemed abandoned on the Effective
Date to the Assignee free and clear or all liens, claims
and other interests.  The Assignee may, in its sole
discretion and without further notice, use, transfer or
dispose of such Abandoned Property without liability to
the Debtors or any third parties claiming an interest in
such Abandoned Property.

26.   This Order shall be effective and
enforceable immediately upon entry and shall not be
stayed pursuant to Rules 6004(h) or 6006(d).

15

27.   The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

28.   To the extent that any provisions in the Assignment Agreement conflict with this Order, the Order shall govern.

29.   The Debtors and their estates are authorized to take all actions and execute all documents necessary or appropriate to effectuate the assumption and assignment of the Leases consistent with this Order.

30.   This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order or the assumption and assignment of the Lease and Sublease.

Dated:  Richmond, Virginia
        May 13, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

17

Counsel to the Debtors and
Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                    /s/ Douglas M. Foley___
                    Douglas M. Foley

## <u>EXHIBIT A</u>

**ASSIGNMENT AGREEMENT**

## SALE, ASSUMPTION, AND ASSIGNMENT AGREEMENT

**THIS SALE, ASSUMPTION, AND ASSIGNMENT AGREEMENT** (this "**Agreement**") is made as of **April [   ], 2009**, by and among **MERCHANT EQUITY NY, INC.** ("**Assignee**"), on the one hand, and **CIRCUIT CITY STORES WEST COAST, INC.**, a California corporation ("**Assignor**"), on the other hand.

## RECITALS:

**WHEREAS**, on November 10, 2009, Assignor and certain of its direct and indirect subsidiaries filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

**WHEREAS**, on April __, 2009, the United States Bankruptcy Court for the Eastern District of Virginia (the "**Bankruptcy Court**") entered an order (the "**Order**") approving the sale, assumption, and assignment of (i) that certain Ground Lease dated April 1, 1970 between Concar Enterprises, Inc., as landlord, and Assignor, as successor-in-interest to EDBRO California Realty Company, Inc., as tenant, and (ii) that certain Lease dated July 31, 1987 between Assignor, as landlord, and TJ Maxx of CA, LLC, as tenant, both for the premises located at 1880 South Grant Street in San Mateo, California (as the same may have been amended, assigned, supplemented or extended from time to time collectively, the "**Leases**"); and

**WHEREAS**, (i) Assignee desires that Assignor transfer, assign and set over to Assignee, and Assignee take assignment of, all of Assignor's right, title and interest in and to the Leases and the estates created thereby, and (ii) Assignor is willing to transfer, assign and set over to Assignee all of Assignor's right, title and interest in and to the Leases and the estates created thereby, subject to the terms and conditions of this Sale, Assumption and Assignment Agreement.

**NOW, THEREFORE,** in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Sale, Assumption and Assignment Agreement and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and intending to be legally bound hereby, Assignor and Assignee hereby agree as follows:

1.      _Effective Date_.  The Effective Date of this Agreement shall be the later of (i) the date that is two (2) business days after the date of entry of this Order or (ii) such other date as agreed upon between the Debtors and the Assignee.

2.      _Assignment of Lease_.  As of the Effective Date, Assignor does hereby transfer, assign and set over to Assignee, and Assignee does hereby take assignment of, all of Assignor's right, title and interest in and to the Leases and the estates created thereby.  In consideration thereof, on the Effective Date, Assignee shall pay to Assignor the sum of $235,000.00, less $35,250.00 which Assignee has placed in escrow for the benefit of Assignor.

3.      _Assumption of Obligations_.  Assignee does hereby assume and does hereby agree to observe, perform, fulfill and discharge, all of Assignor's duties, obligations, and liabilities of whatever nature that are required to be performed, that accrue, or that relate to the period on or after the Effective Date under the Leases and the Order.

4.      _Representations and Warranties_.  Assignee hereby acknowledges and agrees the Leases are transferred, assigned and set over to Assignee AS IS, WHERE IS, without representations or

1

warranties of any kind whatsoever and that the premises covered by the Leases will be delivered AS IS, WHERE IS on the Effective Date, notwithstanding any contrary provision of the Leases.

        5.    <u>Indemnification</u>. Assignee hereby agrees to indemnify, protect, defend and hold Assignor harmless from and against all claims, damages, losses, costs and expenses (including attorneys' fees) arising in connection with the Leases and relating to the period on or after the Effective Date.

        6.    <u>Estoppels</u>. Assignor shall request estoppels from Concar Enterprises, Inc. and TJ Maxx of CA, LLC and deliver any such estoppels to Assignee on the Effective Date; <u>provided however,</u> this Agreement and closing are not conditioned on delivery such estoppels by Assignor to Assignee.

        7.    <u>Bid Protection</u>. Assignor agrees to pay Assignee a break-up fee of $20,000 (the "Break-Up Fee") and if, and only if (i) Assignee is not in breach of or default under this Agreement, (ii) the Agreement is not conditioned on conducting any further, or completing, due diligence and (iii)(a) the Bankruptcy Court does not approve this Agreement or (b) Assignor consummates an assignment or other transfer of the Leases with a higher or otherwise better bidder following an auction. In the event the Assignee is not the highest or otherwise best bidder, but is the next highest or otherwise best bidder, the Assignee agrees to keep this proposal open until the closing of a transaction with the highest or otherwise best bidder and close with the Assignor if the Assignor does not close with such higher or otherwise better bidder.

        8.    <u>Notices</u>. Any notice, demand, consent, approval, direction, agreement or other communication required or permitted hereunder or under any other documents in connection herewith shall be in writing and shall be directed as follows:

        If to Assignor:

        Circuit City Stores, Inc.
        Attn: Director of Real Estate
        9954 Mayland Drive
        Richmond, VA 23233

        with a copy to:

        Skadden, Arps, Slate, Meagher & Flom LLP
        Attn: Gregg M. Galardi, Ian S. Fredericks, Chris L. Dickerson and T. Kellan Grant
        One Rodney Square
        Wilmington, DE 19889

        If to Assignee:

        Merchant Equity NY, Inc.
        Attn:

        9.    <u>Entire Agreement</u>. This Agreement and the Order sets forth the entire agreement and understanding of Assignor and Assignee with respect to the matters contemplated by the Order and this Agreement.

        10.    <u>Parties Bound</u>. This Agreement shall bind and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

2

11.     <u>Applicable Law</u>.  This Agreement shall be governed by and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent, the internal laws of the State of Virginia without giving effect to the principles of conflicts of law thereof.  The Bankruptcy Court shall have exclusive jurisdiction over this Agreement with respect to disputes between Assignor and Assignee.

12.     <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts for the convenience of the parties hereto, all of which together shall constitute one and the same instrument.

*[SIGNATURE PAGE FOLLOWS]*

3

**IN WITNESS WHEREOF,** this Agreement has been duly executed and delivered by the duly authorized officers of Assignor and Assignee as of the date and year first written above.

**CIRCUIT CITY STORES, INC., on behalf of itself and its direct and indirect subsidiaries, as debtors and debtors in possession**

By: _____
Name:
Title:


**MERCHANT EQUITY NY, INC.**

By: _____
Name:   JOHN B. MANNIX
Title:

4