Hearing Date: May 13, 2009, at 2:00 p.m.
Objection Deadline: May 6, 2009

Malcolm M. Mitchell, Jr. (VSB No. 18098)
Kara D. Lehman (VSB No. 68359)
Vorys, Sater, Seymour and Pease LLP
277 South Washington Street, Suite 310
Alexandria, VA 22314
Telephone: 703-837-6999
Facsimile: 703-549-4492
mmmitchell@vorys.com
*Counsel for Advance Real Estate Management, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

---------------------------------------------------------x
                                                         )
In re:                                                   )    Chapter 11
                                                         )
CIRCUIT CITY STORES, INC., *et al.*,                     )    Case No. 08-35653-KRH
                                                         )
         Debtors.                                        )    Jointly Administered
                                                         )    Judge Kevin R. Huennekens
---------------------------------------------------------x

## MOTION AND SUPPORTING MEMORANDUM
## OF ADVANCE REAL ESTATE MANAGEMENT, LLC,
## FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM AND
## GRANTING RELATED RELIEF

**COMES NOW** Advance Real Estate Management, LLC ("Advance"), by and through its counsel, Vorys, Sater, Seymour and Pease LLP, and for its motion seeking entry of an order allowing its administrative expense claims for unpaid rent, additional rents and other charges under its lease with Circuit City Stores, Inc. (the "Debtor") for non-residential real property which accrued from the Debtor's petition date to the lease rejection date.

## BACKGROUND

1.      Advance is the lessor and landlord of certain nonresidential real property located in McHenry, Illinois (the "premises").

2.      Pursuant to a lease dated June 7, 2001 (the "Lease"), Rubloff McHenry East, L.L.C. ("Rubloff") leased the premises to the Debtor. The Lease was assigned by Rubloff to Advance by Assignment and Assumption Agreement dated February 9, 2006 (the "Assignment"). A true and accurate copy of the Lease and Assignment are attached hereto collectively as "Exhibit 1."

3.      Pursuant to the Lease, the Debtor was required to pay, on the first day of November 2008, base rent and other monthly charges in the total aggregate amount of $44,538.37 (the "November Rent").

4.      On November 10, 2008 (the "Petition Date"), the Debtor and various of its debtor affiliates filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court").

5.      The Lease was rejected by the Debtor by Notice of Rejection effective March 11, 2009 (the "Rejection Date").

6.      In its February 12, 2009 *Memorandum Opinion*, Docket No. 2107, this Court held that Stub Rent claims under Advance Leases such as the Lease between Advance and the Debtor, are accorded administrative priority expense treatment under § 503(b) and § 507(a)(2) of the Bankruptcy Code. Therefore, Advance submits that pursuant to this Court's foregoing Opinion, the unpaid Stub Rent owed by the Debtor to Advance, amounting to $31,176.81, should be an

allowed administrative claim payable upon the effective date of the Debtor's plan. Advance's calculation of the Stub Rent is attached hereto as <u>Exhibit 2</u>.

7. The Lease requires the Debtor to pay, as additional rent, its pro rata share of the real estate taxes for the premises. " . . . Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes . . . levied against the tax parcel or parcels comprising the Shopping Center." *See* Paragraph 9(b) of the Lease that is contained on Pages 11 and 12 of the Lease, which is attached hereto as <u>Exhibit 1</u>. As hereinafter set forth, Advance will also seek the allowance of administrative expense claims for unpaid real estate taxes accruing from the Petition Date to the Rejection Date, which are payable under the Lease by the Debtor to Advance as additional rent.

## **<u>REAL ESTATE TAXES</u>**

8. The Debtor has failed to pay the real estate taxes that have accrued under the Lease for the period November 10, 2008 through March 11, 2009 in the prorated amount of $29,871.47, and Advance is seeking allowance of an administrative claim that includes this amount. The foregoing amount is calculated as shown in <u>Exhibit 3</u>, which also includes the 2007 real estate tax bill for the parcel comprising the premises. The Debtor's pro rata share of the real estate tax bill is 35.09255%.

9. Based on this Court's Memorandum Opinion in this case entered on February 12, 2009, Docket No. 2107, Advance submits that the real estate taxes which are additional rent under the Lease that accrued from the Petition Date on November 10, 2008, to the Rejection Date on March 11, 2009, should be allowed administrative claims pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

10. Upon information and belief, the real estate taxes assessed and levied by the applicable taxing authorities for the premises for calendar years 2008 and 2009 will be at least as much as the real estate taxes levied on the premises for calendar year 2007.

11. The Debtor may argue that the real estate taxes owed by the Debtor pursuant to the Lease are not yet due and payable because the Landlord has not paid them. Real estate taxes in Illinois are due and payable as follows:

|  | DUE & PAYABLE |
|---|---|
| Second Half 2008 Real Estate Taxes | September 3, 2009 |
| First Half 2009 Real Estate Taxes | June 3, 2010 |

12. The premises are comprised of a building on one parcel of land and real estate taxes accrue on the parcel at the rate of $247.156 per day. A copy of the real estate tax bill for 2007 is attached hereto as part of Exhibit 3 and will be replaced by the tax bill for 2008 prior to the hearing on this matter and the claimed real estate taxes will be adjusted if necessary.

13. It is significant that pursuant to Illinois Code Section 35 ILCS 200/21-75 real estate taxes which are levied for 2008 become a lien against the premises as of January 1, 2008. A copy of said Illinois Code Section is attached hereto as Exhibit 4. Accordingly, the real estate taxes which are levied for 2008 will attach as a lien against the premises effective January 1, 2008, and the real estate taxes that will be levied for 2009 are a lien against the premises effective January 1, 2009. Thus, the premises will be impaired by tax liens, which include the administrative claim of Advance of $29,871.47, for which the Debtor is responsible under the Lease.

14. The Court in *In re Trak Auto Corp.*, 277 B.R. 655, 663 (Bankr. E.D. Va. 2002), dealt with the same Illinois real estate tax statute issue here.[1] The Illinois stores' real property taxes were billed in arrears and the landlord in *Trak Auto* sought the "payment of all taxes that have accrued since the filing of debtor's bankruptcy petition...." *Id.* at 659.

15. In adopting the accrual method, the Court in *Trak Auto* held that the "debtor's obligation under the lease to pay it share of real estate taxes as 'additional rent' *accrues on a daily basis....*" *Id.* at 663 (emphasis added). The Court further reasoned that "[a]dopting a method where debtor's liability would turn solely on when bills are issued has the potential to create a windfall for a landlord who decides to manipulate when it bills the debtor for taxes and CAM charges so that the amounts due become a post-petition claim." *Id.*

16. Therefore it is appropriate in this case for the all post-petition, pre-rejection real estate taxes sought by Advance to be accorded administrative expense priority. As in *Trak Auto*, this Court has adopted the accrual method.[2] As a result, the Debtor has an obligation under the Lease to pay its share of real estate taxes as 'additional rent' which accrues on a daily basis as an administrative claim.

17. The Debtor remained in possession of the Leased Property and operated its business, conducted a going-out-of business sale and enjoyed the benefits of possession from the Petition Date of November 10, 2008 to the Rejection Date of March 11, 2009. During the period of time that Debtor remained in possession of the Property, it became obligated to the Landlord pursuant to the Lease for the payment of rent and additional rent, including real estate taxes. The Debtor's obligation to pay real estate taxes accruing during the post-petition, pre-rejection

---

[1] The *Trak Auto* Court described the manner in which Illinois bills for its real estate taxes as follows: "Illinois bills for its real estate taxes in arrears. Thus, for example, tax bills for the year 1998 are not billed until 1999 and even then are done in two installments. 35 ILL. COMP. STAT.. 200/1-155; 35 ILL. COMP. STAT.. 100/21-30; 35 ILL COMP. STAT.. 200/20-210." *Id.* at 662.

[2] *See Memorandum Opinion* entered on February 12, 2009, Docket No. 2107.

period, while the Debtor remained in possession of the Property, represents an integral component of additional rent due to Advance.

18.  Using the 2007 real estate tax rate, the estimated 2008 real estate taxes to be levied on the premises for the period of the Debtor's possession from November 10, 2008 through December 31, 2008 amounts to $12,570.53. Using the same 2007 per diem tax rate, the real estate taxes accruing on the premises for the period of the Debtor's possession from January 1, 2009 to the Rejection Date on March 11, 2009 is $17,300.94. Accordingly, the total of Advance's administrative claim attributable to real estate taxes is $29,871.47.

19.  Additionally, the language in the Lease regarding the Debtor's responsibility for real estate taxes (Paragraph 9(b)) supports the conclusion that upon termination, the Debtor is required to pay its pro rata share of real estate taxes which accrued up to termination. Specifically, Paragraph 9(b) of the Lease states in relevant part:

> Real Estate Taxes shall be prorated as of the Commencement Date and the expiration or earlier termination of this Lease (i.e., such that Tenant shall not be required to pay for any Real Estate Taxes which are levied or assessed for periods prior to the Commencement Date or after the expiration or earlier termination of this Lease), and Landlord shall promptly return to Tenant any overpayment made by Tenant not attributable to the period of Tenant's possession of the Premises.

Furthermore, the Lease contemplates the Debtor's payment of real estate taxes based on the rate of taxes payable in the prior year: *See* Lease, Page 12, Paragraph 9(b): "(which may be the prior year's tax bill if the current year's tax statement is not yet received by Landlord, to be adjusted when actual taxes for that year are known)."

*See* Exhibit 1.

20.  This Lease provision makes it clear that just as the Debtor is not required to pay real estate taxes for days not included in the lease term, the Debtor *is* required to pay the prorated

portion of the real estate taxes for *each day* between the Commencement Date through the day of the expiration or earlier termination of the Lease while the Debtor is in possession.

21.  In its *Memorandum Opinion* issued on February 12, 2009, this Court concluded that the accrual method applies in this jurisdiction and in the present matter. In applying the accrual method within the context of real estate taxes in *In re Trak Auto Corp.*, 277 B.R. 655, 663 (Bankr. E.D. Va. 2002), the Court sets forth as follows: "[b]ased upon the fairness that results from the accrual method, we adopt that approach to the debtor's liability to its landlords. Chief Judge Tice set forth the methodology in *In re Best Products Co.*: 'debtor's obligation under the lease to pay its share of real estate taxes as additional rent accrues on a daily basis and that, under § 365(d)(3), post petition bills must be prorated so that the debtor pays as an administrative expense only those charges which accrued during the post-petition, pre-rejection period.'" *Trak Auto,* citing *Best Products*, 206 B.R. 404, 407 (Bankr. E.D. Va. 1997).

22.  The Debtor has argued that the timing of payment of real estate taxes is not changed by a default leading to termination or, as in this case, by rejection leading to termination on March 11, 2009. Advance submits that the Debtor's construction of the Lease is wrong and ignores the language of the Lease set forth in paragraph 9(b) and the proper application of the accrual method.

23.  The point being ignored by the Debtor is when this accrual and pro-ration are to occur. Advance submits that the accrual occurs during the period from the Petition Date to the Rejection Date and the pro-ration occurs as of the Rejection Date. Therefore, the Debtor should be required to pay for its share of the real estate taxes pro-rated for the period in which the Debtor has been in possession. To determine the proper administrative claim amount attributable

to real estate taxes, it should be the rate payable in 2007 applied to Debtor's post-petition possession of the Premises from November 10, 2008 to March 11, 2009.[3]

24.     Because the premises are impressed with a lien securing the unpaid real property taxes accruing from and after January 1, 2008 and January 1, 2009, the failure of the Debtor to fund and pay such taxes will impair and harm a real property interest owned by Advance, and the Debtor will be unjustly enriched equal in amount to the harm inflicted upon Advance.

25.     Advance is seeking an administrative claim for only those real estate taxes that accrued on the premises during the post-petition, pre-rejection period. Based on the Lease, the above-cited case law, and the language set forth in the applicable Illinois code section, Advance should be awarded an administrative claim for the real estate taxes that accrued during the relevant time period.

26.     Furthermore, Paragraph 34(f) of the Lease provides that the Debtor is obligated to promptly reimburse Advance for all reasonable and actual legal fees incurred in connection with enforcing the Lease after the Debtor defaults on its obligations under the Lease. Accordingly, Advance requests that the Debtor be directed to pay the attorneys' fees and costs incurred by Advance in connection with filing and prosecution of its motion in this case as an administrative claim. Advance requests that it be allowed by the Court to submit copies of the invoices for its attorneys' fees and expenses at a later hearing, if this part of Advance's administrative claim cannot be resolved by consent, because those fees will continue to accrue up through the hearing and because the invoices contain information which is protected by the attorney-client privilege and the attorney work product doctrine.

---

[3] The Debtor effectively recognized this point by attaching a chart to the Agency Agreement (approved by Order of this Court entered January 16, 2009, Docket No. 1634, setting forth a per diem responsibility of the Agent for Advance's premises, Store No. 3792, for rent, CAM, real estate taxes and other expenses up to the time of rejection.

## NOTICE

27.     Notice of this Motion will be given to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the Eastern District of Virginia, Richmond Division, and (iii) all parties that have requested notice of papers pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Advance submits that no other or further notice of this Motion is required.

## WAIVER OF MEMORANDUM OF LAW

28.     Advance respectfully requests that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Rule 9013-1(G) of the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Virginia.

WHEREFORE, Advance respectfully requests entry of an order, substantially in the form attached hereto as Exhibit 5, (i) allowing Advance an administrative expense claim for the following: (a) the unpaid Stub Rent owed to by the Debtor to Advance, totaling $31,176.81, (b) the real estate taxes owed as additional rent from the Petition Date through the Rejection Date, totaling $29,871.47, (c) Advance's reasonable and actual attorneys' fees and costs incurred in preparing and prosecuting its motion in this case for sums owed by the Debtor under the Lease, the amount of which shall be determined at a later hearing if necessary, and (ii) granting such other and further relief as the Court deems just and proper.

Dated:  April 22, 2009                    /s/ Malcolm M. Mitchell, Jr.
        Alexandria, Virginia              Malcolm M. Mitchell, Jr. (VSB No. 18098)
                                          Kara D. Lehman (VSB No. 68359)
                                          Vorys, Sater, Seymour and Pease LLP
                                          277 South Washington Street, Suite 310

>Alexandria, VA 22314
>Telephone: 703-837-6999
>Facsimile: 703-549-4492
>mmmitchell@vorys.com
>*Counsel for Advance Real Estate Management, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2009, a true and complete copy of the foregoing, *Motion and Supporting Memorandum of Advance Real Estate Management, LLC, for Allowance of Administrative Expense Claim and Granting Related Relief was* served by electronic delivery to all of the parties through ECF.

>_____/s/ Malcolm M. Mitchell, Jr._____