Premises and business operated by Tenant, which shall name
Landlord and any Mortgagee as additional insureds as their
respective interests may appear.  The limits of such commercial
general liability policy shall be not less than $3,000,000
combined single limit for bodily injury and property damage, with
a commercially reasonable deductible.

(c)   Worker's Compensation Insurance.  Tenant shall
maintain workers' compensation insurance in statutory limits.

(d)   Self-Insurance.  Notwithstanding anything to the
contrary contained herein, Tenant shall have the right to
self-insure against any of the risks or portions thereof set
forth in subparagraphs (a) and (b) (and to the extent then
permitted by  law, (c)) above, provided Tenant is stll liable
under this Lease and has a reported net worth, as of the end of
Tenant's most recent quarterly reporting period, of not less than
Seventy-Five Million Dollars ($75,000,000), as computed in
accordance with generally accepted accounting principles
consistently applied.

(e)   Common Area Liability Insurance.  During the Term,
Landlord shall keep (or cause to be kept) in full force and
effect, in a form reasonably acceptable to Tenant, a policy of
commercial general liability insurance with bodily injury and
property damage insurance with respect to the Common Areas, which
shall name Tenant as an additional insured.  The limits of such
policy shall be the same as those set forth in (b) above.  The
cost of the premium therefor shall be an element of CAM Charges,

[J:\013363\048\29ndof3e.v51;
[10/11/93 6:04pm; MOORE_M]

provided that Tenant shall not be liable for its pro rata share
of any premium for coverage in excess of that coverage which is
customary among owners of like shopping centers in the St. Cloud,
Minnesota metropolitan area.

(f)   Policy Provisions.  All policies of insurance
(other than self-insurance) enumerated above shall be provided by
insurance carriers with a Best rating of not less than B+.XV.
Any insurance coverage enumerated above may be effected by a
blanket policy or policies of insurance or under so-called "all
risk" or "multi-peril" insurance policies, provided that the
total amount of insurance available with respect to the Building
and Tenant's or Landlord's liability hereunder shall be at least
the equivalent of separate policies in the amounts herein
required, and provided further that in other respects any such
policy or policies shall comply with the provisions of this
paragraph 14.  An increased coverage or "umbrella" policy may be
provided and utilized by either party to increase the coverage
provided by individual or blanket policies in lower amounts, and
the aggregate coverage provided by all such policies with respect
to the Building and Tenant's or Landlord's liability hereunder
shall be satisfactory provided that such policies otherwise
comply with the provisions of this paragraph 14.  It shall not be
necessary for either party to deliver the original of any such
blanket or other policy to the other, but the other party shall
be furnished with a certificate or duplicate of such policy
reasonably acceptable to such other party upon (i) commencement

(J:\013363\048\29rdo13e.w51)
(10/11/93 6:04pm; MOORE_M)

of the Main Term (as to casualty insurance), (ii) upon delivery of the Land (as to liability insurance) and (iii) no less than annually thereafter.

(g) Waiver of Right of Recovery and Subrogation. Landlord and Tenant hereby agree that to the extent that a loss is covered by insurance or is self-insured (with the deductible under any policy being deemed to be self-insured), they hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises or the Common Areas; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(h) Evidence of Insurance. Subject to Tenant's right to self-insure hereunder, Tenant and Landlord shall cause to be issued to each other appropriate certificates of insurance evidencing compliance with the applicable covenants of this paragraph 14. Each such certificate shall provide that no expiration, cancellation or material change in the insurance evidenced thereby shall be effective unless thirty (30) days' unconditional notice of such expiration, cancellation or material change shall have been given to the certificate-holder (and any Mortgagee, if applicable) except with respect to cancellation due to non-payment of premium in which case then (10) days' unconditional notice shall be required.

{J:\013363\048\29nddf3e.w512
(10/11/93 6:04pm; MOORE_W}

(i)   Indemnities.   Except if arising from the negligent
or willful acts of Landlord or Master Landlord or their
respective agents or employees (to the extent that subparagraph
(g) is inapplicable thereto), Tenant hereby agrees to indemnify
Landlord from all claims, costs, liability, damage or expense,
including attorneys' fees, for any death, damage or injury to
persons or property occurring on the Premises or resulting from
Tenant's use thereof.

Except if arising from the negligent or willful acts of
Tenant or its agents or employees (to the extent that
subparagraph (g) is inapplicable thereto), Landlord agrees to
indemnify Tenant from any and all claims, costs, liability,
damage or expense, including attorneys' fees, for any death,
damage or injury to persons or property occurring in, on or
around the Common Areas within Landlord's Premises or resulting
from the use thereof by Landlord or Master Landlord or their
respective agents or employees, provided, however, that should
Landlord or any Affiliate of Landlord become the owner or ground
lessee of, or in any manner control, the balance of the Shopping
Center (or any portion thereof), then such indemnity shall also
apply to such other portions of the Shopping Center.

15.   Damages to the Premises by Fire or Other Casualty.

(a)   Less Than Twenty-Five Percent (25%).   In the event
of fire, earthquake or other casualty, causing destruction or
damage to the Building which has a repair and reconstruction cost
of less than twenty-five percent (25%) of the then-total

(J:\013363\048\29ndcrf3e.W51)
(10/11/93 6:04pm; MOORE_M)

replacement cost of the portion of the Building occupied by Tenant, this Lease shall not terminate except as expressly set forth herein, and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof. Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds to the extent of the damage to the Premises (unless Tenant self-insures), Tenant shall complete reconstruction of the Building as nearly possible to their condition and character immediately prior to such casualty, with such alterations as may be permitted under paragraph 12 hereof, and shall restore the Premises (including Tenant's equipment, furniture and fixtures). In the event, subject to force majeure, the Premises are not substantially repaired and reconstructed by Tenant within two hundred forty (240) days after receipt by Tenant of the required governmental permits for restoration with regard to such destruction or damage, for which permits Tenant shall make prompt application following such destruction or damage, then Landlord may, at its option, by giving written notice to Tenant within thirty (30) days after the expiration of said period, undertake completion of such reconstruction, in which event Tenant shall make available to Landlord for such reconstruction all applicable insurance proceeds (including any applicable deductible) or, if Tenant self-insures, the amount necessary for such reconstruction.

(J:\0185e3\u0484.29mazr3e.u511)
[10/11/93 6:04pm; MOORE_M]

(i) <u>Application of Funds</u>. All insurance or
(self-insurance) proceeds received on account of such damage or
destruction, less the cost, if any, of such recovery, shall be
applied pursuant to the terms of this Lease to the payment of the
cost of such restoration, repair, replacement, rebuilding, or
alteration (the "Work"), including expenditures made for
temporary repairs or for the protection of property pending the
completion of permanent restoration, repair, replacement,
rebuilding, or alteration to the Building, and, if required by
any Mortgagee, shall be held by such Mortgagee or a mutually
agreeable third-party escrow agent (either of which is, for these
purposes, the "Escrow Agent"), in an interest-bearing account in
a federally insured financial institution, to be paid out, as
provided below, from time to time (but no more often than once
monthly), as the Work progresses, upon Tenant's written request,
accompanied by a certificate of the architect or engineer in
charge of the Work (the "Certificate"), dated not more than seven
(7) days prior to such request, stating that the sum then
requested either has been paid by Tenant or is justly due to the
named contractors, subcontractors, materialmen, engineers,
architects, or other persons (whose addresses shall also be
stated) who have rendered services or furnished materials for
certain portions of the Work. The Certificate shall give a brief
description of such services and materials, shall list the
several amounts so paid or owing to each of such persons, shall
state the cost of the Work at the date of the requisition, and

[U:\013363\048\29ndof3a.45!!
{10/11/93 6:04pm; MOORE_M}

shall state that no part of such expenditures has been or is being made the basis for any other request for payment. The Certificate shall state also that, except for the amounts listed therein, there is no outstanding indebtedness known to such architect or engineer, after due inquiry, for labor, wages, materials, supplies, or services in connection with the Work which, if unpaid, might become the basis of a vendor's, mechanic's, laborer's, materialman's, or similar lien upon the Work or upon the Premises or any part thereof.

(ii)  Disbursement.  Upon compliance with the foregoing provisions of subparagraph 15(a)(i), the Escrow Agent shall pay, out of the escrowed funds, to the persons named in the Certificate the respective amounts stated to be due to them or shall pay to Tenant the amount stated to have been paid by Tenant; provided, however, that such payments shall not exceed in amount the cost of the relevant Work as stated in the Certificate. If the insurance proceeds or reconstruction funds paid by Tenant to the Escrow Agent exceed the amount required to pay the total cost of the Work, Tenant, after payment of all costs of the Work, shall be entitled to receive or retain, as applicable, such excess. If the insurance proceeds or reconstruction funds are less than the amount required to pay the total cost of the Work, Tenant shall be responsible for any such deficiency.

(b)  Twenty-Five Percent (25%) or More.  In the event of fire, earthquake or other casualty, causing destruction or

(:\[:\3\3363\048\29\do\Se.\45\\
[\0/\\/93 $:04am; \0056_\\

damage to the Building which has a repair and reconstruction cost
of twenty-five percent (25%) or more of the then-total
reconstruction cost of the portion of the Building occupied by
Tenant), Tenant shall have the option of terminating this Lease.
Tenant shall notify Landlord of its exercise of such option
within sixty (60) days following the occurrence of such casualty
and shall thereupon make available to Landlord all insurance
proceeds or reconstruction costs as set forth in subparagraph (a)
above.  In the event Tenant does not elect to terminate this
Lease as set forth above, then, subject to force majeure, within
two hundred forty (240) days after receipt by Tenant of the
required governmental permits for restoration with regard to such
damage or destruction, for which permits Tenant shall make prompt
application following such destruction or damage, Tenant shall
complete reconstruction of the Building as nearly as possible to
their condition and character immediately prior to such damage,
with such alterations as may be permitted under paragraph 12, and
shall restore the Premises (including Tenant's equipment,
furniture and fixtures).

          (c)  Last Two (2) Years of Main Term or Option Period.
Notwithstanding the foregoing, if any such casualty loss occurs
within the last two (2) years of the Main Term or of any Option
Period and has a material impact on Tenant's ability to conduct
business, as reasonably determined by Tenant, Tenant shall be
under no obligation to restore the Building, in which case this
Lease shall terminate at Tenant's option, and Landlord shall

                                                    U:\013363\048\29-dir/3e.4511
          - 14 -                                    (10/11/93 6:04pm; MOORE_-1

receive the proceeds of any insurance (together with any
applicable deductible) which may be payable with regard to such
destruction or damage or, in the event Tenant self-insures, the
amount necessary for reconstruction of the Building.

16.   Condemnation.

(a)   Definition of Taking and Substantial Taking.   For
the purpose of this Lease, a "Taking" shall mean any condemnation
or exercise of the power of eminent domain by any authority
vested with such power and any other taking for public use,
including a private purchase in lieu of condemnation by an
authority vested with the power of eminent domain; the "Date of
Taking" shall mean the earlier of the date upon which title to
the Premises, the Shopping Center or any portion thereof so taken
is vested in the condemning authority or the date upon which
possession of the Premises, the Shopping Center, or any portion
thereof is taken by the condemning authority; and "Substantially
All of the Premises" shall mean (i) so much of the Building as,
when taken, leaves the untaken portion unsuitable, in Tenant's
reasonable opinion, for the continued feasible and economic
operation of the Premises (or the portion thereof occupied by
Tenant) for the same purposes as immediately prior to such taking
or as contemplated herein, (ii) so many of the parking spaces
within the Shopping Center as reduces the parking ratio below the
greater of five (5.0) spaces (for full-sized automobiles) per
1000 square feet of gross leasable area or that ratio which is
required by the zoning ordinance applicable to the Shopping

-35-

Center, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such taking, or (iii) so much of the Common Area Easement described in paragraph 6 above that access to the Premises is impeded.

(b) Rights Upon Taking or Substantial Taking. In the event of a Taking of Substantially All of the Premises, Tenant may, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, have the right to terminate this Lease. All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such condemnation.

(c) Rights Upon Less Than Substantial Taking. In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and justly in accordance with the portion condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Building and the Premises so that the portions of the Building and the Premises not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Premises and not to Tenant's personal property, intangibles or out-of-pocket expenses

-36-

[J:\013363\048\29ndof3e.W51)
(10/11/93 6:04pm; MOORE_M]

unrelated thereto) and the portion of Landlord's award allocable to the Premises, which Landlord shall make available to Tenant for such restoration. If required by a Mortgagee, such awards shall be escrowed and disbursed in accordance with the procedure set forth in paragraph 15(a) above. If the Taking occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option.

(d) Rights Upon Temporary Taking. In the event of a Taking of the Premises or any portion thereof, for temporary use, without the taking of the fee simple title thereto, this Lease shall remain in full force and effect, and the Taking shall not relieve Tenant from its duty and obligation fully and completely to keep, observe, perform, satisfy and comply with each and every agreement, term, covenant, condition, requirement, provision and restriction of this Lease. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of six (6) months may, at Tenant's option, be deemed a permanent Taking and shall be governed by (b) or (c) above, as applicable.

(e) <u>Taking of the Pylon Sign(s)</u>.  In the event of a taking, whether permanent or temporary, of any pylon sign (as contemplated by paragraph 8) on which Tenant has installed identification panels, Landlord shall provide a substitute site therefor, with adequate electrical power, located so as to be visible to vehicular traffic or roadways adjacent to the Shopping Center and/or at entrances to the Shopping Center.

(f) <u>Tenant's Right Upon Condemnation</u>.  In the event of a Taking described in subparagraph (b) or (c) above, Tenant shall be entitled to claim compensation from the condemning authority for the value of its leasehold interest in the Premises, its unamortized leasehold improvements paid for by Tenant, relocation expenses and any other items to which Tenant is entitled under applicable law.

17. <u>Assignment and Subletting</u>.  Tenant shall have the right, without the consent of Landlord, to sublet, assign, transfer and reassign all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, and Tenant shall remain liable for all of Tenant's obligations to Landlord arising hereunder.  Tenant may also grant licenses and/or concessions without the consent of Landlord. Notwithstanding the foregoing, the Premises may not be used by any such sublessee, assignee, transferee, licensee or concessionaire for any use that violates paragraph 18(i)-(iii).

Any assignment of this Lease or subletting of all or a portion of the Premises shall be executed by the assignor or

sublessor and the assignee or sublessee. Each assignee shall,
for the benefit of Landlord, agree to assume, be bound by, and
perform all terms, covenants, and conditions of this Lease to be
kept and performed by Tenant. After execution of the assignment
or sublease, Tenant will forward a completed copy thereof to
Landlord.

18. Use. Tenant shall initially maintain, use and operate
approximately 33,000 square feet of the Premises for the sales,
service, warehousing (and, if Tenant desires, installation in
motor vehicles) of consumer, business and automotive electronics
products, computer and related software, cellular telephones,
household appliances and other related items ("Initial Use").
Tenant shall have the right to (a) thereafter use such 33,000
square feet of the Premises for any lawful use, and/or (b) at any
time use the balance of the Premises for any lawful use;
provided, however, that the Premises shall not be used (i) for
any illegal purpose, (ii) for any use prohibited under paragraph
19(a)(viii) below, or (iii) in violation of any other applicable
provision of the "Permitted Encumbrances" contained in Exhibit
"F," as long as none of the foregoing prevent the Premises from
being used from the Initial Use. Except as may be expressly set
forth in this paragraph 18, nothing contained in this Lease shall
be construed to require Tenant to operate the Premises
continuously either for the use first stated or for any other
use.

19.   Warranties and Representations.

(a)   Landlord represents, warrants and covenants to Tenant that:

(i)   Quiet and Peaceful Enjoyment.   Landlord and those persons executing this Lease on its behalf have the right and lawful authority to enter into this Lease and perform Landlord's obligations hereunder, and Landlord warrants and represents that, so long as Tenant is not in default hereunder beyond any applicable cure period, it shall have quiet and peaceful use, enjoyment and occupancy of the Premises.   In furtherance of the foregoing but not in limitation thereof, the lease with the former tenant (i.e., K-Mart Corporation or affiliate thereof) of the Premises (such former tenant is hereafter called "K-Mart") has been terminated and such tenant has no rights in and to the Premises.

(ii)   Title.   Master Landlord owns the land comprising Tract I in fee simple absolute and Landlord owns all improvements on such land (including, without limitation, the Building) in fee simple absolute.   The Shopping Center and Landlord's interest in Tract I are free and clear of any mortgages, deeds, declarations, agreements, leases, tenancies or restrictions, except those matters set forth on Exhibit "F" attached hereto and entitled "Permitted Encumbrances," or any other encumbrances which would restrict Tenant's use of the Premises for the sale of items specifically referred to in paragraph 18 hereof or would restrict in any respect the right of

(J:\013363\048\2P=co43e.457)
(10/11/93 6:04pm; *DOPE_*1

Tenant, its employees, customers, and invitees to use the Common Areas in accordance with the terms of this Lease or would restrict the alterations and renovations to be performed by Tenant as contemplated under the terms of this Lease.

(iii)  Certificate of Authority.  Landlord covenants that it is a duly constituted limited partnership under the laws of the State of Pennsylvania, and that its general partner who is acting as its signatory in this Lease is duly authorized and empowered to act for and on behalf of the partnership.  Landlord has furnished Tenant prior hereto with evidence of (a) the existence of the partnership, and (b) the authority of the general partner to bind the partnership as contemplated herein.

(iv)  No Litigation.  To the best knowledge and belief of Landlord, there are no judicial, quasi-judicial, administrative or other orders, injunctions, moratoria or pending proceedings against Landlord or the Shopping Center which preclude or interfere with, or would preclude or interfere with, the construction contemplated in paragraph 2 hereof or the occupancy and use of the Premises for the purposes herein contemplated.

(v)  Hazardous or Toxic Materials.  Landlord has not used, discharged, dumped, spilled or stored any Hazardous Substances (as defined in Exhibit "C") on or about the Shopping Center, whether accidentally or intentionally, legally or illegally, and has received no notice and has no knowledge of the

-41-

same.  If any such Hazardous Substances are discovered on Tract I
or any other portion of the Shopping Center now or hereafter
owned, leased or otherwise controlled by Landlord or any
Affiliate of Landlord (unless introduced by Tenant, its agents or
employees), all costs of removal incurred by, all liability
imposed upon, or damages suffered by, Tenant because of the same
shall be borne by Landlord, and Landlord hereby indemnifies and
agrees to hold Tenant harmless from and against all such costs,
liability and damages, including, without limitation, all
third-party claims (including sums paid in settlement thereof,
with or without legal proceedings) for personal injury or
property damage, actions, administrative proceedings, judgments,
compensatory and punitive damages, penalties, fines, costs,
losses, attorneys' fees (through all levels of proceedings),
consultants' or experts' fees and all costs incurred in enforcing
this indemnity.  This representation, warranty and indemnity
shall survive the termination of this Lease.

(vi)  Tenant's Exclusive Use.  So long as any
portion of the Premises are used for any of the uses constituting
the Initial Use, no other tenant or occupant of Tract I shall be
entitled to use its premises for the Initial Use (including,
without limitation, the sale of consumer electronics and
household appliances).  If Landlord or any Affiliate of Landlord
becomes the owner or ground lessee of, or in any manner controls,
the balance of the Shopping Center (or any portion thereof),
then, this exclusive shall apply thereto, subject to the rights

(J:\013363\048\29ndof3e.W51)
(10/11/93 6:04pm; #DORE_M)

granted to any tenants under leases existence as of the date
Landlord or Landlord's Affiliate becomes the owner or ground
lessee of, or otherwise controls, the balance of the Shopping
Center (or any portion thereof).

   (vii) <u>Zoning and Subdivision</u>.  The Premises and
the Shopping Center are presently properly subdivided, in
conformity with all applicable laws and zoned so as to permit (i)
the development and operation of the Premises in accordance with
the provisions of this Lease; and (ii) the initial use of the
Premises described in paragraph 18 of this Lease.

   (viii) <u>Prohibited Activities</u>.  Landlord shall not
operate or lease (or permit to be operated or leased) any
building or tenant space in any portion of the Shopping Center
now or hereafter owned, leased or otherwise controlled by
Landlord or any Affiliate of Landlord for use as (A) a bar, pub,
nightclub, music hall or disco in which less than fifty percent
(50%) of its space or revenue is devoted to or derived from food
service, (B) a bowling alley, (C) a billiard or bingo parlor, (D)
a flea market, (E) a massage parlor, (F) a funeral home, (G) a
facility for the sale of paraphernalia for use with illicit
drugs, (H) a facility for the sale or display of pornographic
material (as determined by community standards for the area in
which the Shopping Center is located), (I) an off-track betting
parlor, (J) a carnival, amusement park or circus, (K) a gas
station, car wash or auto repair or body shop (the parties
specifically acknowledging that Tenant's car stereo installation

-43-

facility is not included in this prohibition (K)), (L) a facility for the sale of new or used motor vehicles, trailers or mobile homes, (M) any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center, (N) a skating rink, (O) an arcade, pinball or computer gameroom (provided that retail facilities in the Shopping Center may operate or display for sale no more than four (4) such electronic games incidentally to their primary operations), (P) service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments) or other nonretail uses except for offices and storage facilities incidental to a primary retail operation, (Q) a banquet hall, auditorium or other place of public assembly, (R) a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers), (S) a theater of any kind, or (T) a gymnasium, sport or health club or spa. Landlord shall further not operate, lease or permit to be operated or leased any restaurant within any building on any portion of the Shopping Center now or hereafter owned, leased or otherwise controlled by Landlord or an Affiliate thereof which abuts "Tenant's Preferred Area" (as shown on Exhibit "A-6") or which is located within three hundred (300) feet of the front entrance to

the Building.  In addition, no auction, fire or going-out-of business sale shall be conducted in the Shopping Center.

(ix)  Site Covenants.  With regard to the development of the Shopping Center and the uses and operations of the Common Areas, Landlord makes the following representations and warranties (the "Site Covenants"):

A.  Building Height and Location.  Subject to the applicable provisions of the REA, no building adjacent to the Premises now or hereafter owned, leased or otherwise controlled by Landlord or an affiliate of Landlord shall exceed twenty-eight (28) feet in height above finished grade, nor shall it be positioned so as to project beyond the portion of the front wall of the Building immediately adjacent thereto.  No outparcels, barriers, buildings, kiosks or other structures, either temporary or permanent, shall be located within Tenant's Preferred Area, and, subject to the applicable provisions of the REA, no building located on an outparcel elsewhere in the Shopping Center shall exceed the size necessary in order for such outparcel to maintain, within its boundaries, the parking ratio required for its use under the applicable zoning code without use of parking spaces located in the Common Areas.

B.  Construction and Alterations.  Following the end of the First Lease Year, no construction shall be permitted within any portion of the Shopping Center now or hereafter owned, leased or otherwise controlled by Landlord or an Affiliate of Landlord during the months of October, November and

-45-

December, except for interior alterations not affecting the operations of any other occupant of the Shopping Center and except for emergency repairs. In the event of any construction within any such portion of the Shopping Center now or hereafter owned, leased or otherwise controlled by Landlord or an Affiliate of Landlord, a construction access route, staging and parking areas shall be designated so as to minimize interference with customers or the operations of other occupants of the Shopping Center, and safety barriers, as necessary, and an opaque wall shall be erected around the site of such construction. With regard to any construction on Landlord's Premises, Landlord shall be solely responsible for any governmentally imposed impact fees, hook-up, connection, installation or tap-in fees and other, similar construction-related charges. No changes shall be made in the Common Areas now or hereafter owned, leased or otherwise controlled by Landlord (including, without limitations, changes in the location of curbcuts, drive aisles, roadways, sidewalks or parking spaces or reduction of the parking ratio specified in paragraph 5) without Tenant's consent, which Tenant may, in its sole discretion, withhold.

C. Prohibited Uses in Common Areas.

Landlord covenants that it shall not, without Tenant's express written consent, permit the following uses or activities to occur in the Common Areas located in those portions of the Shopping Center now or hereafter owned, leased or otherwise controlled by Landlord or any Affiliate of Landlord and shall use reasonable

-46-

efforts to prohibit such uses in the Common Areas located in the
balance of the Shopping Center not owned, leased or otherwise
controlled by Landlord or any Affiliate of Landlord: (1)
advertisements or signs except for the pylon signs described in
paragraph 8, the "for rent" signs described in paragraph 27 and
traffic control signs; (2) display or sale of merchandise; (3)
operation of loudspeakers or other sound electronically amplified
so as to be heard in the Common Areas; or (4) imposition of a
charge for parking.  Landlord further covenants that it will not
seek (and shall use reasonable efforts to prevent any other
owners or occupant of the balance of the Shopping Center to seek)
a variance or waiver from the minimum parking requirements
applicable to the Shopping Center under the zoning code or other
applicable ordinance establishing the ratio of parking spaces to
building area or otherwise mandating the number of parking spaces
required for the Shopping Center and the uses contained therein.
Parking by employees of Tenant, Landlord and other occupants of
those portions of the Shopping Center now or hereafter owned,
leased or otherwise controlled by Landlord shall be in designated
"employee parking" areas, the location of which shall be agreed
upon by Landlord and Tenant.

(x)    Interference with Tenant's

Reception/Transmission.  Landlord shall not install or permit to
be installed by Landlord, any other tenant or other person
anywhere in Tract I, any radio transmitting equipment which would
cause any interference with radio or television reception or

(J:\013363\048\29ndo#3e.W51]
(10/11/93 6:04pm; MOORE_M)

transmission in or from the Building, and, with respect to the balance of the Shopping Center, Landlord shall use reasonable efforts to prevent such installation and/or interference.

(xi)    Notices Affecting the Premises.    Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises or the Shopping Center, received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or the Shopping Center or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use of the Premises, Shopping Center or any such neighboring property.

(xii)    Constructive Trust.    Landlord covenants that all sums paid by Tenant to Landlord and intended for payment by Landlord to a third party (such as, by way of example, taxes and certain elements of CAM Charges) are given to Landlord in trust and shall be applied only for such third-party payments, as and when due.

(xiii)    REA.    With respect to the REA, Landlord represents, warrants, covenants and agrees that:  (A) the REA is in full force and effect without any changes, modifications or amendments thereto; (B) the REA does not prohibit, prevent or interfere with the Initial Use; (C) to the best of Landlord's knowledge, no party to the REA is in default thereof; (D) the REA does not prohibit, interfere or restrict the construction or operation of the Circuit City Superstore; (E) Landlord shall not agree to any modifications, changes or amendments to, or the

-43-

termination of, the REA without Tenant's approval, which approval
shall not be unreasonably withheld, except with respect to any
modifications, changes or amendments relating to the layout of
the Common Areas (including, without limitation, the parking
areas, traffic flow and ingress/egress patterns to public
streets) lighting, use restrictions, parking ratio, height
restrictions, expansion of existing or construction of new
buildings, structures, kiosks or other improvements (temporary or
permanent), or any other modification, change or amendment which
may adversely affect or impair access to or from, or visibility
of, the Premises or the operation of Tenant's business at the
Premises, in which event Tenant's approval may be withheld in its
sole and absolute discretion; (F) in the event Landlord is
requested to grant its consent or approval with respect to a
request from another owner subject to the REA, Landlord shall not
grant (either by Landlord's act or failure to act) any consent or
approval to Tenant without first sending such request to Tenant,
and Tenant shall have the right to direct Landlord whether or not
to grant its consent or approval to such request; (G) Landlord
shall send to Tenant immediately any and all notices received by
or sent by Landlord under the REA; and (H) Tenant, at its option
and at its expense, shall be permitted, either in its name or in
the name of Landlord, to exercise and/or enforce any rights
and/or remedies that Landlord has under the REA.

                    (xiv)        Master Lease.  (A) Landlord is the
ground lessee of the Land under the Master Lease and a complete

                    -49-                    [J:\013363\048\29ndof3e.u511
                                            (10/11/93 6:04pm; MOORE_M)

copy of the Master Lease (together with any and all modifications and amendments thereto, if any) is attached hereto as Exhibit "K", (B) the Master Lease is valid and binding and in full force and effect, (C) the Master Lease expires no sooner than what will be the day following the last day of the last Option Period hereunder, (D) neither Landlord nor Master Landlord is in default under the Master Lease with or without regard to the giving of notice or the extension of time or both, (E) Landlord has obtained (or shall obtain within the time periods permitted herein) the written consent and approval of Master Landlord to terminate the K-Mart lease and enter into this Lease pursuant to the terms hereof which consent and approval shall be in form and substance substantially similar to the form attached hereto as Exhibit "L", and (F) Landlord shall not do any act or fail to do any act during the term of this Lease which would constitute a violation of the Master Lease or otherwise cause Landlord to be in breach or default thereunder.

(b)   Tenant represents, warrants and covenants to Landlord that:

(i)   Tenant's Authority.  Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia; it has the power to enter into this Lease and perform Tenant's obligations hereunder; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

-50-

(ii)   Tenant's Warranty as to Hazardous or Toxic
Materials.   As to Tenant's use and occupancy of the Premises and
use of the Common Areas, Tenant will not introduce, discharge,
dump, spill or store within the Premises or the Shopping Center
any Hazardous Substances; and Tenant indemnifies and agrees to
hold Landlord harmless from and against all costs, liability and
damages as a result thereof, to the same extent that Landlord
indemnifies and holds Tenant harmless in subparagraph (a)(v)
above.   This warranty and indemnity shall survive the termination
of this Lease.

(c)   In the event there is a condition at variance with
the foregoing representations and warranties of Landlord which
prevents or in any material way inhibits the use of the Premises
or any part thereof or the Common Areas for their intended
purposes by Tenant or Tenant's employees, licensees, agents,
suppliers, customers or invitees, or if Landlord shall default in
the observance or performance of any of the foregoing
representations and warranties, then, in addition to such other
remedies as may be accorded Tenant at law, in equity or under the
terms of this Lease, Tenant may, after thirty (30) days' notice
to Landlord, obtain an injunction or writ of specific performance
to enforce such term or covenant, the parties hereby
acknowledging the inadequacy of Tenant's legal remedy and the
irreparable harm which would be caused to Tenant by any such
default.   Landlord shall be entitled to a corresponding remedy
for breach of Tenant's warranty regarding Hazardous Substances.

{J:\013363\048\29ndof3e.w511}
{10/11/93 6:04pm; MOORE_M}

20.   Estoppel Certificates.  Without charge, at any time and
from time to time hereafter, within ten (10) days after receipt
of written request by either party, the other party shall
certify, by written and duly executed instrument, to any present
or proposed mortgagee, purchaser, sublessee or assignee, any
other individual, partnership, corporation, trust, unincorporated
association or joint venture, government or any department or
agency thereof, or any other entity ("Person") specified in such
request:  (a) as to whether this Lease has been supplemented or
amended, and, if so, the substance and manner of such supplement
or amendment; (b) as to the validity, force and effect of this
Lease, in accordance with its tenor as then constituted, to the
best knowledge of the party so certifying; (c) as to the
existence of any default thereunder, to the certifying party's
best knowledge; (d) as to the existence of any offsets,
counterclaims, or defenses thereto on the part of such other
party, to the certifying party's best knowledge; (e) as to the
commencement and expiration dates of the Term; and (f) as to any
other matters which may reasonably be so requested.  Without any
charge, at any time and from time to time hereafter, within ten
(10) days after receipt of written request by Tenant, Landlord
shall certify and shall use reasonable efforts to cause Master
Landlord to certify by a written and duly executed instrument, as
to the matters set forth in clauses (a) to (f) above with respect
to the Master Lease.  Any such certificate may be relied upon by
the party requesting it and any person to whom the same may be

- 52 -

exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

> 21. Subordination, Nondisturbance and Attornment.

(a)   This Lease shall be subject and subordinate to the lien of any and all Mortgages (as defined below) now or hereafter encumbering the Premises to all renewals, modifications, replacements and extensions of such Mortgages; provided, however, that the subordination herein contained shall not be effective with respect to any Mortgage unless the Mortgagee (as defined below) shall execute and deliver a subordination, nondisturbance and attornment agreement, in form satisfactory to Tenant, providing that, in the event the Mortgage shall be foreclosed or the Mortgagee shall accept a deed in lieu thereof (either of which events shall be a "Foreclosure"), so long as Tenant shall not then be in default beyond any cure period provided herein, so long as Tenant shall attorn to the Mortgagee or purchaser upon Foreclosure, (i) the Lease shall not terminate by reason of such Foreclosure, (ii) Tenant's possession of the Premises shall not be disturbed, (iii) the Mortgagee or purchaser upon such Foreclosure, its or his successors or assigns, shall recognize Tenant and all its rights hereunder and shall be obligated to fully and completely perform Landlord's duties and obligations under this Lease arising from and after the date of such Foreclosure, (iv) Tenant shall not be named as a party in any action for Foreclosure, and (v) the Mortgagee, whether or not the Mortgage is foreclosed, shall make all net proceeds arising from

-53-

casualty or condemnation loss to the Premises available to Tenant
for restoration of the Building in accordance with the terms
hereof.  Landlord agrees that it shall obtain in form and
substance acceptable to Tenant a nondisturbance and attornment
agreement from all existing Mortgagees and a recognition
agreement from Master Landlord prior to or simultaneously with
the execution hereof, as set forth in paragraph 37(b) below,
provided, however, that Landlord shall have a period of fifteen
(15) days after Lease execution to obtain an executed
nondisturbance and attornment agreement from the Prudential
Insurance Company of America.  As used in this Lease, (i) the
term "Mortgage" shall mean any mortgage, deed to secure debt,
deed of trust, trust deed or other collateral conveyance of, or
lien or encumbrance against, Tract I (or any portion thereof or
any of the improvements thereon), or against Landlord's interest
in, to or under the Master Lease, and (ii) the term "Mortgagee"
shall mean the holder of any Mortgage.  Examples of a
nondisturbance and attornment agreement from the holder(s) of the
Mortgage(s) encumbering the land and from the holder of the
Mortgage encumbering the buildings and improvements and a
recognition agreement from Master Landlord acceptable to Tenant
are attached hereto and made a part hereof as Exhibit "G-1", "G-
2" and "G-3", respectively.

          (b)  As a part of such subordination, nondisturbance
and attornment agreement which Tenant agrees to execute from time
to time during the Term, if requested by any Mortgagee, Tenant
shall agree to provide to such Mortgagee (simultaneously with
notice to Landlord) notice of Landlord's defaults and the same
periods for such Mortgagee to cure such defaults as those
provided Landlord herein, together with such agreements as are

{J:\013363\048\2ad/$63e.W51}
{10/13/93 3:43pm; KRAUSE_P}

typically found in nondisturbance and attornment agreements with institutional lenders as may be satisfactory to Tenant.

(c)  Landlord shall obtain or cause to be obtained for the benefit of Tenant from any future holder of any Mortgage placed upon Tract I (or any portion thereof or any of the improvements thereon) or any other portion of the Shopping Center now or hereafter owned, leased or otherwise controlled by Landlord or an Affiliate of Landlord, a nondisturbance and attornment agreement by such Mortgagee in the form and substance as contained in Exhibit "G-1."

22.  Change of Landlord.  In the event the Landlord's interest in the Premises passes to a successor ("Successor") by sale, lease, Foreclosure or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and effect as if the Successor were the Landlord under the Lease, and the Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant, but without the execution of any further instrument on the  part of either of the parties hereto immediately upon the Successor's succeeding to the interest of Landlord under the Lease; provided, however, that in order for the foregoing to be effective against Tenant, such Successor must be bound to Tenant in respect of all of Landlord's duties and obligations hereunder, such binding effect on the Successor to be effective and self-operative without the execution of any further

instrument on the part of either of the parties hereto (except notice as required above), immediately upon the Successor's succeeding to the interest, duties and obligations of Landlord under this Lease.  In the event that Landlord's interest in the Premises passes to a Successor and such Successor is bound unto Tenant as set forth above, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes except that Landlord agrees to indemnify and hold Tenant harmless from and against all claims, loss or damage suffered by Tenant as a result of Landlord's failure to provide Tenant with notice of such Successor.

23.  Tenant's Financing.  Tenant may, from time to time, provided that Tenant is not then in default hereunder beyond the applicable cure period, secure financing or general credit lines and grant the lenders thereof, as security therefor, (i) a security interest in Tenant's fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged, and/or (iii) a collateral assignment of Tenant's leasehold interest in the Premises, with rights of reassignment; provided, however, such collateral assignment may be made solely for the purpose of securing Tenant's indebtedness.  If Tenant is not then in default hereunder beyond the applicable cure period, Landlord agrees, upon written request by Tenant, to evidence Landlord's consent in writing to such security interest and assignment, and to give such lenders the same notice and opportunity to cure any default

-56-

of Tenant as is provided Tenant hereunder (including time to
foreclose or otherwise take possession of the Premises, if
necessary to effect such cure).  In addition, Landlord agrees to
cause any Mortgagee specifically to acknowledge the rights of
Tenant's lenders described herein and in paragraph 24 below.

24.  <u>Tenant's Property and Waiver of Landlord's Lien</u>.  All
of the Personalty shall be and remain the personal property of
Tenant, removable by Tenant any time prior to, or within thirty
(30) days after, the expiration or earlier termination of this
Lease and shall be so removed by Tenant at the request of
Landlord within thirty (30) days after the expiration or
termination of this Lease.  Those improvements that are
integrated into the physical structure of the Building shall not
be removed and shall become the property of Landlord.  (A
nonexclusive list of Tenant's removable trade fixtures is
attached hereto as Exhibit "D.")  Tenant agrees promptly to
repair any damage to the Premises occasioned by the removal of
Tenant's trade fixtures, furnishings and equipment (except for
small holes caused by nails, fasteners and the like) and to
surrender the Premises broom clean, in as  good condition as on
the date of Tenant's opening for business therein, ordinary wear
and tear, casualty and condemnation excepted.  Landlord expressly
waives its statutory or common law landlord's lien and any and
all rights granted under any present or future laws to levy or
distrain for rent (whether in arrears or in advance) against the
aforesaid property of Tenant on the Premises and further agrees

[J:\G13363\048\29rwdofle.w51]
[10/11/93 6:04pm; MOORE_H1

to execute any reasonable instruments evidencing such waiver, at
any time or times hereafter upon Tenant's request. If any such
lien is imposed upon the Personalty by operation of law, Landlord
agrees that such lien shall be subordinate to the lien of any
security interest described in paragraph 23 above, provided that
such security interest was granted at a time when Tenant was not
in default hereunder beyond any applicable cure period.

    25.  <u>Memorandum of Lease; Commencement Date Agreement</u>.
Landlord agrees, at Tenant's request and Tenant's sole expense,
to execute a Memorandum of Lease in recordable form,
substantially similar to that attached hereto as Exhibit "H,"
setting forth such provisions hereof as may be required by
Minnesota law.  In addition, Landlord and Tenant shall execute a
Commencement Date Agreement in the form attached hereto as
Exhibit "I," once the Rent Commencement Date has been
established.  Recording costs for either or both documents shall
be borne by the party requesting recordation of the same.

    26.  <u>Holding Over</u>.  Tenant agrees that at the expiration of
this Lease, it will deliver to Landlord peaceable possession of
the Premises.  No holding over by Tenant nor acceptance of Base
Rent or other charges by Landlord shall operate as a renewal or
extension of the Lease without the written consent of Landlord
and Tenant.  Should Tenant hold over without the consent of
Landlord, this Lease shall continue in force from month to month,
subject to all of the provisions hereof, provided, however, that
commencing with the second month of such holdover tenancy,

                                                    [J:\013363\048\29rdaf3e.w51]
                                                    [10/11/93 6:04pm; MOORE_M]

monthly Base Rent shall increase to 150% of monthly Base Rent Tenant had been paying during the preceding Lease Year.

27.  "For Rent" Signs.  Tenant hereby permits Landlord during the last ninety (90) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, on the parking lot of the Shopping Center.  Tenant will also allow Landlord or its agents, accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior, to prospective tenants, purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

28.  Force Majeure.  Except as otherwise specifically contemplated in paragraph 4 of Exhibit "C," in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay; and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, that in connection with the construction of the Circuit City

(J:\01\3593\048\27ndorf3e.v51)
(10/11/95 6:04pm; MOORE_1)

Superstore, the consequences of delays by the other party shall
be governed by paragraph 4 of Exhibit "C."

29.   Events of Tenant's Default.   Any of the following
occurrences, conditions or acts by Tenant shall constitute an
"Event of Default" under this Lease:

(a)   Failure to Pay Rent; Breach.   (i) Tenant's failure
to make any payment of money required by this Lease (including
without limitation Base Rent, CAM Charges or taxes) within ten
(10) days after the receipt of written notice from Landlord to
Tenant that same is overdue; or (ii) Tenant's failure to observe
or perform any other material provision of this Lease within
thirty (30) days after receipt of written notice from Landlord to
Tenant specifying such default and demanding that the same be
cured; provided that, if such default cannot with due diligence
be wholly cured within such thirty (30) days, Tenant shall have
such longer period as is reasonably necessary to cure the
default, so long as Tenant proceeds promptly to commence the cure
of same within such thirty (30) day period and diligently
prosecutes the cure to completion and provided further that in
the case of an emergency, Landlord shall be required to give only
such notice as is reasonable under the circumstances.

(b)   Bankruptcy.   (i) Tenant's adjudication as bankrupt
or insolvent, or the appointment of a receiver, trustee in
involuntary bankruptcy or other, similar officer to take charge
of any substantial part of Tenant's property, which proceeding is
not dismissed within one hundred twenty (120) days after it is

-60-

begun; or (ii) Tenant's voluntarily filing a petition in
bankruptcy or for reorganization under any existing or future
provisions of the  Bankruptcy Code, providing a plan for a debtor
to settle, satisfy or extend the time for the payment of debts;
or (iii) Tenant's voluntary assignment for the benefit of its
creditors; if, as a result of any of the foregoing occurrences,
the covenants to be performed by Tenant under this Lease
(including the covenant to pay rent) are not being performed by
Tenant or a party claiming through Tenant.

    30.  <u>Landlord's Remedies</u>.  After the occurrence of an Event
of Default, Landlord shall have the right to exercise the
following remedies:

    (a)  <u>Continue Lease</u>.  Landlord may, at its option,
continue this Lease in full force and effect, without terminating
Tenant's right to possession of the Premises, in which event
Landlord shall have the right to collect Base Rent and other
charges when due, including any due for any Option Period for
which a Renewal Option has been exercised.  In the alternative,
Landlord shall have the right to peaceably re-enter the Premises
on the terms set forth in subparagraph (b) below, without such
re-entry's being deemed a termination of the Lease or an
acceptance by Landlord of a surrender thereof.  Landlord shall
also have the right, at its option, from time to time, without
terminating this Lease, to relet the Premises, or any part
thereof, with or without legal process, as the agent, and for the
account, of Tenant upon such terms and conditions as Landlord may

(J:\013363\048\29mcai3e.W5/)
[10/11/93 6:04pm; MOORE_W]

deem advisable, in which event the rents received on such
reletting shall be applied (i) first to the reasonable and actual
expenses of such reletting and collection, including without
limitation necessary renovation and alterations of the Premises,
reasonable and actual attorneys' fees, any reasonable and actual
real estate commissions paid, and (ii) thereafter toward payment
of all sums due or to become due Landlord hereunder.  If a
sufficient sum to pay such expenses and sums shall not be
realized or secured, in Landlord's exercise of reasonable efforts
to mitigate its damages, (which Landlord hereby agrees to make),
then Tenant shall pay Landlord any such deficiency monthly, and
Landlord may bring an action therefor as such monthly deficiency
shall arise.  Nothing herein, however, shall be construed to
require Landlord to re-enter and relet in any event, except as
provided by Minnesota law.  The Landlord shall not, in any event,
be required to pay Tenant any sums received by Landlord on a
reletting of the Premises in excess of the rent provided in this
Lease, but such excess shall reduce any accrued present or future
obligations of Tenant hereunder.  Landlord's re-entry and
reletting of the Premises without termination of this Lease shall
not preclude Landlord from subsequently terminating this Lease as
set forth below.

      (b)  <u>Terminate Lease</u>.  Landlord may terminate this
Lease by written notice to Tenant specifying a date therefor,
which shall be no sooner than twenty (20) days following receipt
of such notice by Tenant, and this Lease shall then terminate on

[U:\0\3365\048429ndofIe.451)
(10/11/93 6:04pm; MOORE_M)

the date so specified as if such date had been originally fixed
as the expiration date of the Term.  In the event of such
termination, Landlord shall be entitled to recover from Tenant
all of the following:

(i)  The "worth at the time of award" (defined
below) of any obligation which has accrued prior to the date of
termination;

(ii)  The worth at the time of the award of the
amount by which the unpaid Base Rent and all other charges which
would have accrued after termination until the time of award
exceeds the amount of any sums which Landlord has (or Tenant
proves that Landlord could have) received in mitigation.  As used
in this subparagraph 30(b), the term, "worth at the time of the
award," shall be computed by allowing interest at the Default
Rate on the amount of the obligations set forth therein.  In the
event this Lease shall be terminated as provided above, by
summary proceedings or otherwise, Landlord, its agents, servants
or representatives may immediately or at any time thereafter
peaceably re-enter and resume possession of the Premises and
remove all personalty and property therefrom, either by summary
dispossess proceedings or by other suitable action or proceeding
at law without liability for damages therefor.

(c)  Reimbursement of Landlord's Costs in Exercising
Remedies.  Landlord may recover from Tenant, and Tenant shall pay
to Landlord upon demand, such reasonable and actual expenses as
Landlord may incur in recovering possession of the Premises,

(J:\013363\04B\29ndof3e.w51]
(10/11/93 6:04pm; MOORE_M)

placing the same in good order and condition and repairing the
same for reletting, all other reasonable and actual expenses,
commissions and charges incurred by Landlord in exercising any
remedy provided herein or as a result of any Event of Default by
Tenant hereunder (including without limitation reasonable
attorneys' fees), and any other amount necessary to compensate
Landlord for any detriment proximately caused by Tenant's failure
to perform its obligations under this Lease.

(d)  Remedies Are Cumulative.  The various rights and
remedies reserved to Landlord herein, including those not
specifically described by law in force and effect at the time of
the execution hereof, are cumulative, and Landlord may pursue any
and all such rights and remedies, whether at the same time or
otherwise.

31.  Events of Landlord's Default; Tenant's Remedies.  Any
of the following occurrences, conditions or acts by Landlord
shall constitute an "Event of Default": (a) Landlord's failure to
make any payments of money due Tenant hereunder within ten (10)
days after the receipt of written notice from Tenant that same is
overdue; or (b) Landlord's failure to perform any nonmonetary
obligation of Landlord hereunder within thirty (30) days after
receipt of written notice from Tenant to Landlord specifying such
default and demanding that the same be cured; provided that, if
such default cannot with due diligence be wholly cured within
such thirty (30) days, Landlord shall have such longer period as
may be reasonably necessary to cure the default, so long as

[J:\013363\048\29ndof3e.451]
[10/11/93 6:04pm; MOORE_v]

Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion) and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances.

Upon the occurrence of an Event of Default, at Tenant's option, in addition to any other remedies which it may have, and without its actions being deemed a cure of Landlord's default, Tenant may do all or any of the following: (i) pay or perform such obligations and offset Tenant's reasonable and actual cost of performance, plus interest at the Default Rate, against the Base Rent, CAM Charges and other charges due Landlord hereunder or (ii) withhold Base Rent, CAM Charges and any other payments due to Landlord under this Lease until such Event of Default is cured by Landlord, or (iii) terminate this Lease and sue for damages. Notwithstanding the foregoing, if Landlord fails to pay Tenant the Repair Allowance in a timely manner, Tenant shall be entitled to the rights and remedies set forth in Exhibit "C" in addition to those provided herein; and, as to a breach of the warranties and representations contained in paragraph 19, Tenant shall be entitled to the remedies provided therein.

32. Waiver. If Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present and future, of this Lease. Either party may accept late payment or performance

{J:\013363\048\29ndo#3e.49!;
(10/11/93 6:04pm; MOORE_~}

by the other without waiving any Event of Default which may then have accrued.

33. <u>Compliance with Applicable Laws</u>. During the Term, to the extent that the Premises are affected thereby, Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Building, and of the board of fire underwriters, respecting Tenant's unique and special use of the Building, and Landlord shall be responsible for complying with all other lawful requirements, at Landlord's sole cost and expense. If Tenant, after notice from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent, after thirty (30) days' prior written notice to Tenant (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) and Tenant's failure to cure or commence to cure during such thirty (30) days and diligently prosecute the cure to completion.

34. <u>Notices</u>. Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three

(J:\013363\048\29rdof3e.W51)
(10/11/93 6:04pm; MOORE_M)

(3) business days after mailing a written notice by certified
mail, postage prepaid, return receipt requested, or one (1)
business day after sending by Federal Express or other comparable
overnight express courier service (with proof of receipt
available), addressed to the parties as follows:

If to Tenant:            CIRCUIT CITY STORES, INC.
                         9950 Mayland Drive
                         Richmond, Virginia 23233
                         Attn:   Corporate Secretary

with a copy to:          CIRCUIT CITY STORES, INC.
                         9950 Mayland Drive
                         Richmond, Virginia 23233
                         Attn:  Vice President of Real Estate

If to Landlord:          St. Cloud Associates
                         c/o Adam Kauffman
                         1521 Locust Street, 5th Floor
                         Philadelphia, PA 19102

or to such other addressees as any party hereto shall from time
to time give notice thereof to any other party.

     35.  Brokers.  Landlord and Tenant each covenant that they
have not dealt with any real estate broker or finder with respect
to this Lease, except for Roger Lenahan of the Cambridge Group
and John Johannson of The Welsh Companies (the "Brokers") who
shall equally split any and all commissions paid or payable by
Landlord, Tenant and K-Mart in connection with or in any way
related to the real estate transaction of which this Lease is a
part (such commissions, in the aggregate, is hereinafter referred
to as the "Total Commission").  Tenant shall contribute Sixty-Six
Thousand Dollars ($66,000) towards the Total Commission and
Landlord and/or K-Mart shall also contribute a combined total of
at least Sixty-Six Thousand Dollars ($66,000) such that the Total
Commission shall equal at least One Hundred Thirty-Two Thousand
Dollars ($132,000) and each of the Brokers shall receive at least
Sixty-Six Thousand Dollars ($66,000).  Any additional amount
which has been or is hereafter paid by either Landlord, Tenant or
K-Mart to either of the Brokers shall be deemed part of the Total
Commission and split evenly between the Brokers.  Each of the
Brokers have executed this Lease for the sole purpose of
indicating their consent and agreement to the provisions of this
Paragraph 35.  Except for the foregoing, Landlord and Tenant
shall each hold the other harmless from all damages, claims,
liabilities or expenses, including reasonable and actual
attorneys' fees (through all levels of proceedings), resulting
from any claims that may be asserted against the other party by

any real estate broker or finder with whom the indemnifying party
has or purportedly has dealt.

   36.  <u>Miscellaneous</u>.

       (a)  <u>Headings and Gender</u>.  Any paragraph headings,
titles or captions contained in this Lease are for convenience
only and shall not be deemed a part of this Lease and shall not
in any way limit or amplify the terms and provisions of this
Lease.    The masculine, feminine or neuter gender and the
singular or plural number shall be deemed to include the others
whenever the context so requires or indicates.

       (b)  <u>Construction</u>.  The parties hereto agree that all
the provisions hereof are to be construed as covenants and
agreements as though the words importing such covenants and
agreements were used in each separate paragraph hereof.

       (c)  <u>Waiver of Jury Trial</u>.  In the event of any court
action arising out of this Lease, each party hereby expressly
waives its right to trial by jury.

       (d)  <u>Relationship of Landlord-Tenant</u>.  Nothing
contained in this Lease shall be deemed or construed by the
parties hereto or by any third person to create the relationship
of principal and agent or of partnership or of joint venture or
of any association between Landlord and Tenant other than the
landlord-tenant relationship.

       (e)  <u>Entire Agreement; Merger</u>.  This Lease, including
all exhibits hereto (which are hereby incorporated herein by
reference), covers, in full, each and every final agreement of

-63-

every kind and nature whatsoever between the parties hereto
concerning the subject matter of this Lease, and all preliminary
negotiations and agreements of whatsoever kind or nature are
merged herein.  This Lease cannot be changed or modified in any
manner other than a written amendment or modification executed by
Landlord and Tenant.

(f)  <u>Attorneys' Fees</u>.  In the event either party shall
be required to commence or defend any action or proceeding
against any other party by reason of any breach or claimed breach
of any provision of this Lease, to commence or defend any action
or proceeding in any way connected with this Lease or to seek a
judicial declaration of rights under this Lease, the party
prevailing in such action or proceeding shall be entitled to
recover from or to be reimbursed by the other party for the
prevailing party's reasonable and actual attorneys' fees and
costs through all levels of proceedings.

(g)  <u>Partial Invalidity</u>.  If any provision of this
Lease or the application thereof to any person or circumstance
shall be deemed invalid or unenforceable, the remainder of this
Lease and its application to other persons or circumstances shall
not be affected by such partial invalidity but shall be enforced
to the fullest extent permitted by law.

(h)  <u>Consents</u>.  Any consent or approval granted by
either party hereunder shall be deemed a consent or approval only
as to the matter on which such consent or approval was requested
and shall not waive the consenting or approving party's right to

[J:\013363\048\29ndef3e.v51]
[10/11/93 6:04pm; MOORE_*]

give or withhold consent or approval to any subsequent matter.
If Landlord's consent or approval is required for any reason or
under any circumstances pursuant to the terms of this Lease, such
consent or approval shall not be unreasonably withheld or delayed
or conditioned, unless otherwise specifically provided herein.
In the event Landlord fails to consent to or approve of, or to
not consent to or to disapprove of, any item requiring consent or
approval pursuant to the Lease within fourteen (14) days
following Tenant's request, Landlord shall be deemed to have
consented to or approved same.

   (i)   Holidays.  If the day on which rent is payable
falls on a Sunday or on a legal holiday, it shall be payable on
the following business day.

   (j)   Applicable Law.  This Lease shall be construed in
accordance with the laws of the State of Minnesota, and the
parties agree that jurisdiction shall lie therein.

   (k)   Successors and Assigns.  All rights, obligations
and liabilities herein given to or imposed upon any party hereto
shall extend to the permitted successors and assigns of such
party.  Any reference in this Lease to Master Landlord shall mean
the current "landlord" under the Master Lease and its successors
and assigns.                    or any limited or general partner of
                                Landlord or any combination thereof

   (l)   Definition of Affiliate.  For the purposes of the
Lease, the term "Affiliate" shall mean Landlord's parent or any
division, subsidiary or affiliate of Landlord or Landlord's
parent, or any other entity under common control or ownership as

                        -70-

Landlord, Landlord's parent or any successor to any of the
aforesaid.

(m)  Counterparts.  This Lease may be executed in
counterparts, each of which shall be deemed an original when
exchanged, and all of the counterparts taken together shall
constitute one and the same Lease.

37.  Effectiveness of Lease; Tenant's Right to Terminate.
Notwithstanding the execution of this Lease or any provision
hereof to the contrary, the parties hereto agree that the
effectiveness of this Lease is expressly conditioned upon the
complete satisfaction (or waiver) of each and all of the
following conditions:

(a)  Tenant's receipt, simultaneously with execution
hereof, of (i) Landlord's most current policy or commitment of
title insurance for the Shopping Center; (ii) copies of all
underlying documents referred to in said title policy or
commitment; and (iii) Landlord's most current survey and aerial
photograph, if available, of the Shopping Center; all of which
shall be approved or disapproved by Tenant in writing within
thirty (30) days after receiving all of said documents.  Landlord
further agrees, at Tenant's request, to execute title affidavits
typically and reasonably required by Tenant's title insurer in
connection with Tenant's application for and the issuance of its
leasehold title policy.

(b)  Landlord's delivery of fully executed
nondisturbance and attornment agreements and recognition

-71-

agreements as contemplated by Paragraph 21(a) executed by any and all existing ground lessors and Mortgagees (including, without limitation, Master Landlord, State National Bank of Maryland and the Prudential Insurance Company of America) in form and substance satisfactory to Tenant prior to or simultaneously with the execution hereof, provided, however, Landlord shall have a period of fifteen (15) days after execution of this Lease to deliver the nondisturbance and attornment agreement to be executed by Prudential Insurance Company of America.

(c)  Landlord's delivery of the Premises to Tenant by the date and in the condition specified in Exhibit "C."

(d)  Tenant's obtaining (i) written confirmation from appropriate local authorities, by January 1, 1994, that site plan approval, public access and building permit approvals can be obtained and any required specific use permits or any other permits or approvals required to renovate and develop the Premises as contemplated in this Lease can be obtained; and (ii) the required City, County and State permits and approvals to construct and/or renovate the Building as contemplated in this Lease no later than January 1, 1994.  Tenant agrees to apply for such permits promptly as provided herein, to use due diligence and to expend any necessary application or other fees to secure such permits and approvals; provided, however, that the foregoing shall not be deemed to require Tenant to initiate litigation or to agree to any conditions imposed upon issuance of any such permit or approval.

(e)  Landlord's representations, warranties and covenants, as set forth in paragraph 19 herein, being true and accurate as of the date of delivery of the Land.

-72-

[J:\013363\048\2adf$63e.W51]
(10/13/93 3:43pm; KRAUSE_P]

(f)    Prior to delivery of the Premises to Tenant, Tenant's obtaining from Landlord copies of soils and Hazardous Substances reports satisfactory to Tenant.

(g)    Tenant's obtaining satisfactory assurances, within thirty (30) days of execution hereof, that adequate utility services (including gas, electricity, telephone, domestic water, fire protection water, storm sewer and sanitary sewer) are available for connection at the Premises or in close proximity thereto.

(h)    Landlord's delivery to Tenant, within seven (7) days after the execution of this Lease, of the lease termination agreement between Landlord and K-Mart wherein K-Mart has terminated its lease for the Premises and relinquishes any and all of its rights in and to the Premises and a written consent and approval (as contemplated by Paragraph 19(a)(xiv)), executed by Master Landlord, authorizing the termination of K-Mart lease and the execution of this Lease.

(i)    Landlord's delivery to Tenant, within seven (7) days after execution of this Lease, of a binding commitment letter, or other evidence reasonably satisfactory to Tenant, that Landlord has obtained financing adequate to fund "Landlord's Work" (as defined in Exhibit "C") and the Repair Allowance.

(j)    Landlord's delivery to Tenant prior to or simultaneously with the execution hereof, an estoppel certificate executed and acknowledged by Master Landlord, in recordable form, and in form and substance substantially similar to the form

(J:\013363\048\29ndo#3e.w5!!
(10/15/93 6:04pm; #0075_#!

estoppel certificate attached hereto and made a part hereof as Exhibit "M", certifying that the Master Lease is unmodified and in full force and effect (or if there have been modifications, that it is in full force and effect as modified and stating the modifications), and the dates to which minimum rent and other charges have been paid in advance, if any, and stating that neither party is in default in the performance of any covenant, agreement of condition contained in the Master Lease (or, if there is a default, specifying each such default).

The existence of the foregoing conditions is solely for the benefit of Tenant, which may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which states the condition(s) being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at any time prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of one or more of the foregoing conditions. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect (and the parties shall have no further liability except that the indemnification set forth in

(J:\013363\048\29ndof3e.V51)
[10/11/93 6:04pm; MOORE_M]

Paragraph 14(i) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

    38. <u>Notice and Consent - Master Lease</u>.

    (a)  Landlord shall promptly send to Tenant copies of any notices received from Master Landlord including, without limitation, any notices concerning a default or alleged default under the Master Lease.  Landlord shall use its best efforts to obtain compliance by Master Landlord under the Master Lease and, upon request by Tenant, shall exercise and enforce any rights that Landlord may have under the Master Lease, all at Landlord's sole cost and expense.  Any breach or default of Landlord under the Master Lease and/or termination of the Master Lease by Landlord shall be deemed to be a default by Landlord under this Lease.  Landlord shall not, during the term of this Lease, exercise any right that Landlord may have to cancel or terminate the Master Lease unless Tenant, in its sole discretion, has exercised any corresponding right that Tenant may have to cancel and terminate this Lease.  Any such cancellation and termination by Landlord, without the aforesaid cancellation and termination of this Lease by Tenant, shall be deemed to be a default by Landlord under this Lease.

    (b)  If Master Landlord is required to obtain, or otherwise requests, the prior consent or approval of Landlord with respect to any matter, Landlord shall immediately notify Tenant thereof and request Tenant's approval to such matter.  Landlord shall not grant its consent or approval to any such

-75-

matter unless Tenant has granted its consent or approval thereto. Tenant shall cooperate with Landlord to notify Landlord of its approval or disapproval to any such matter within any applicable time period, provided that Landlord gives Tenant reasonable advance notice thereof.   Landlord shall not amend or otherwise modify the Master Lease without obtaining Tenant's prior written approval to any such amendment or modification.

[Remainder of Page Intentionally Left Blank]

[J:\013363\048\29ndof3e.W51]
(10/11/93 6:04pm; MOORE_M]

IN WITNESS WHEREOF, this Lease has been duly executed on the day and year first above written.

LANDLORD:
ST. CLOUD ASSOCIATES, a
Pennsylvania limited partnership

WITNESS:

By: _____
Adam Kauffman
Its: General Partner

TENANT:

CIRCUIT CITY STORES, INC., a
Virginia corporation

ATTEST:

By: _____
Its: _____

IN WITNESS WHEREOF, the Brokers, by their respective execution below, hereby consent and agree to the terms and provisions of Paragraph 35 hereof.

WITNESS:

JOHN JOHANNSON, in his individual
capacity and on behalf of The Welsh
Companies

_____

Date: _____

WITNESS:

ROGER LENAHAN, in his individual
capacity and on behalf of The
Cambridge Group

_____

Date: _____