or its legal successor, permitted assignee or transferee, (i) any non-structural alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly sized stores and (ii) any interior nonstructural alterations or modifications it may desire except that Tenant shall not alter the exterior of the Additional Retail while the same is occupied by any party other than Tenant without Landlord's consent, which shall not be unreasonably conditioned or delayed. With Landlord's consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall have the right, at its sole cost, to alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements, provided that such modification does not impair the structural integrity of the Building, significantly modify its shape or expand its size. Landlord's withholding of consent as to any structural alteration or modification shall be deemed reasonable only if same is materially inconsistent with the then-existing architecture of the Shopping Center, materially affects the parking in the Shopping Center, or impairs the structural integrity of the Building. Tenant shall cause all such alterations to be lien-free (in accordance with paragraph 13) and made and completed at Tenant's cost in a workmanlike manner and in compliance with all applicable law. Should Landlord's consent be required, conceptual plans and specifications for such work shall be provided to Landlord prior to commencement of any such work. Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within fifteen (15) business days following Tenant's delivery of such plans and specifications to Landlord. Without cost or expense to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required in furtherance of such purposes.

13. <u>Mechanics' Liens</u>. Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises or the Shopping Center as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises or the Shopping Center for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lie, as applicable, against the Premises or the Shopping Center. Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises or Shopping Center, the

party on account of whose actions such lien has been filed shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto.

14. <u>Insurance</u>.

(a) <u>Property Damage</u>. During the Construction Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all such construction. During the Main Term and all Option Periods, Tenant shall keep in full force and effect a policy of fire and extended coverage insurance covering loss or damage to the Premises (including earthquake coverage, if available) in the amount of full replacement value of the Building, exclusive of excavation, footings and foundations (which initial amount shall be not less than the Tenant Improvement Allowance), with a commercially reasonable deductible, for which Tenant shall be fully responsible. Landlord and any "Mortgagee" (as defined in paragraph 21 below), shall be named in such policy or policies as additional insureds as their respective interests may appear. Landlord shall not construct, or permit to be constructed, any improvement in the Shopping Center, nor conduct any activity, or permit the conduct of any activity, in the Shopping Center which will prevent Tenant from being able to obtain insurance coverage at commercially reasonable rates, including, without limitation, a fully-sprinklered fire insurance rate. Should either Landlord or Tenant cause or permit any insurance rate increase to occur relating to coverages required hereunder, the party causing such increase shall reimburse the other for the additional premium required, subject to Tenant's right to self-insure (in which event Landlord will contribute to Tenant's self insurance fund to cover increased actuarial risks).

(b) <u>Liability Insurance</u>. During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and any Mortgagee as additional insureds as their respective interests may appear. The limits of such commercial general liability policy shall be not less than $5,000,000.00 (or such

greater limit as may be customary for comparable shopping centers in the Portland, Oregon metropolitan area) combined single limit for bodily injury and property damage, with a commercially reasonable deductible.

(c) <u>Workers' Compensation Insurance.</u> To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

(d) <u>Self-Insurance.</u> Notwithstanding anything to the contrary contained herein, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided Tenant is then occupying the Premises and has a reported net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than Seventy-Five Million Dollars ($75,000,000), as computed in accordance with generally accepted accounting principles, consistently applied, as determinable from Tenant's public disclosures and/or regularly maintained corporate balance sheets which are generally available to shareholders (no right of Landlord to audit or conduct independent investigations being implied by this provision).

(e) <u>Common Area, Additional Area and Third Party Tenant Insurance and Insurance During Landlord's Construction.</u> During the Term, Landlord shall keep in full force and effect, in form reasonably acceptable to Tenant, policies of commercial general liability insurance, with bodily injury and property damage insurance, and fire and extended coverage insurance, with respect to the Common Areas and with respect to all other areas of the Shopping Center over which Landlord from time to time has present possessory rights (or has the right under any lease to provide insurance coverage because of a tenant's failure to maintain such required coverage) but which do not constitute a portion of the Common Areas (such areas here sometimes collectively referred to as the "Additional Areas"). The Additional Areas shall include, without limitation: (i) as yet unconstructed portions of the Shopping Center intended for tenant occupancy, (ii) constructed but unoccupied portions of the Shopping Center, (iii) vacated or otherwise uninsured tenant space, whether by reason of lease expiration, default or otherwise, and (iv) constructed and occupied portions of the Shopping Center. Said policies shall name Tenant, and any lender secured under the Lease, which is designated by Tenant from time to time, as an additional insured to the fullest extent Tenant and such stakeholder have insurable

interests. The limits of such policies shall no less than those set forth in subparagraphs (a) and (b) above, as applicable. The cost of the premiums for coverages relating to Common Areas shall be an element of CAM Charges, provided that Tenant shall not be liable for its pro rata share of any premium for coverage which is in excess of standard premiums for that coverage which is customary among owners of like shopping centers in the City. Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center, including the Additional Areas and areas leased to third party tenants or sold to third party occupants, are insured with substantially similar coverages to those required for the Premises and the Common Areas, such that in the event of any destruction or damage to any portion of the Shopping Center whatsoever Tenant may be assured that the Shopping Center will be reconstructed in equal or superior condition within the time frame set forth in paragraph 15. During any period in which Landlord is conducting construction activities at the Shopping Center, Landlord shall keep in full force and effect with regard to the Shopping Center, in form reasonably acceptable to Tenant, at least the minimum insurance coverages set forth below:

1) Workers' Compensation - statutory limits;
2) Employers Liability - $500,000; and
3) Comprehensive General and Comprehensive Auto Liability as follows:
   a) Bodily Injury - $1,000,000 per occurrence;
   b) Property Damage - $1,000,000 per occurrence;
   c) Independent Contractors Liability or Owner's Protective Liability; same coverage as set forth in subparagraphs (a) and (b) above;
   d) Products/Completed Operations Coverage which shall be kept in effect for two (2) years after completion of work with a limit of $1,000,000;
   e) "XCU" Hazard Endorsement, if applicable;
   f) "Broad Form" Property Damage Endorsement;
   g) "Personal Injury" Endorsement; and
   h) "Blanket Contractual Liability" Endorsement.

Additionally, Landlord shall keep or require its general contractor to keep in full force and effect a policy of builder's risk insurance covering loss or damage to the Shopping Center for the full replacement value of all such construction. To the fullest extent Tenant has an insurable interest, such liability policy shall name Tenant an additional insured and such builder's risk policy shall name Tenant a loss payee.

(f) Policy Provisions. All policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers with a Best rating of not less than A-XV. Any insurance coverage enumerated above may be effected by a blanket policy or

policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy or policies shall comply with the provisions of this paragraph 14. Landlord shall not be entitled to self-insure against any of the risks recited herein, except the amount of any commercially reasonable deductible shall be deemed to be self-insurance. An increased coverage or "umbrella" policy may be provided and utilized by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the Premises and Tenant's or Landlord's liability hereunder shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 14.

(g)     *Waiver of Right of Recovery and Subrogation*.  To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord and Tenant hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises or the Common Areas; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(h)     *Evidence of Insurance*. Subject to Tenant's right to self-insure hereunder, upon (i) commencement of the Main Term (as to casualty insurance), (ii) upon delivery of the Land (as to liability insurance) and (iii) no less than annually thereafter, Tenant and Landlord shall cause to be issued to each other in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 14. Each such certificate shall provide that no expiration, cancellation or material change in the insurance evidenced thereby shall be effective unless thirty (30) days' unconditional notice of such expiration, cancellation or material change shall have been given to the certificate-holder (and any Mortgagee, if applicable).

(i) <u>Indemnities</u>. Except if arising from the negligent or willful acts of Landlord or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from Tenant's use thereof.

Except if arising from the negligent or willful acts of Tenant or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring in, on or around the Shopping Center, exclusive of the Premises, or other buildings within Landlord's Premises or resulting from the use thereof by Landlord, its agents or employees.

15. <u>Damages by Fire or Other Casualty</u>.

(a) <u>Less Than Fifty Percent (50%)</u>. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements and/or Common Areas, which has a repair and reconstruction cost of less than fifty percent (50%) of the then-total replacement cost of any of the Improvements and/or Common Areas, this Lease shall not terminate except as expressly set forth herein, and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof. Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds (unless self-insured) to the extent of the damage to the Premises, or the Common Areas or Additional Areas, as applicable, Tenant shall complete reconstruction of the Building and Other Improvements, and Landlord shall complete reconstruction of the Common Areas and Additional Areas (including substantially equivalent value in equipment, furniture and fixtures), to that condition existing immediately prior to such casualty, in the reconstructing party's reasonable discretion, with, in event of any Tenant reconstruction, such alterations as may be permitted under paragraph 12 hereof. In the event, subject to force majeure, the Premises, Common Areas and/or Additional Areas, as applicable, are not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by the party with repair and restoration obligations within two hundred forty (240) days after receipt of any required governmental permits, for which permits the party with repair obligations shall make prompt application following such destruction or damage, and insurance

proceeds (if not self-insured), then the other party, at its option, by giving written notice to the party with repair obligations, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event the party with repair obligations shall make available to the notifying party all applicable insurance proceeds for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction.

(b) <u>Fifty Percent (50%) or More</u>. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements and/or Common Areas, which has a repair and reconstruction cost of fifty percent (50%) or more of the then-total reconstruction cost of any of said areas, or in the event of any uninsured casualty, Tenant shall have the option of terminating this Lease. Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty and shall thereupon make available to Landlord all insurance proceeds or reconstruction costs as set forth in subparagraph (a) above. In the event Tenant does not elect to terminate this Lease as set forth above, then, subject to force majeure, within two hundred forty (240) days after receipt by Tenant of the required governmental permits for restoration, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured) with regard to such damage or destruction, Tenant shall complete reconstruction of the Improvements to their condition existing immediately prior to such damage, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 12, and shall restore the Premises (including equipment, furniture and fixtures). Should Tenant elect to maintain this Lease in full force and effect, Landlord shall reconstruct all Common Areas and Additional Areas in the manner specified by subparagraph (a) above regardless of the amount of damage to same. Additionally, Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center leased to third party tenants or sold to third party occupants are subject to substantially similar reconstruction obligations to those of the Premises, Common Areas and Additional Areas, such that in the event of any destruction or damage to any portion of the Shopping Center whatsoever, in the event Tenant elects to maintain this Lease in force, Tenant shall be assured that the Shopping Center as a whole will be reconstructed in accordance with this paragraph 15.

(c) **Last Five (5) Years of Main Term or Option Period.** Notwithstanding the foregoing, in the event of an insured fire, earthquake or other casualty causing destruction or damage to the Improvements, Common Areas, and/or Additional Areas which has a repair and reconstruction cost of fifty percent (50%) or more of the then total reconstruction cost of any of said areas, or in the event of any uninsured casualty, either Landlord or Tenant shall have the option of terminating this Lease; provided, however, in the event that the Tenant elects to exercise the next ensuing Option Period, the Landlord's right to terminate the Lease shall be null and void and of no further force or effect. In such event, either Landlord or Tenant shall notify the other of its exercise of such option to terminate within sixty (60) days following the occurrence of such casualty (and within thirty (30) days after receipt of such notice from Landlord, Tenant shall notify Landlord of its intention to exercise the next ensuing Option Period, if any) and if this Lease shall thereupon terminate, the Tenant shall make available to Landlord all insurance proceeds or reconstruction costs as set forth in subparagraph (a) above. In the event that either Landlord or Tenant does not elect to terminate this Lease, or the Tenant elects to exercise the next ensuing Option Period, all of such damaged improvements shall be reconstructed in accordance with paragraph 15 above.

(d) **Last Two (2) Years of Main Term or Option Period.** Notwithstanding the foregoing, if any such damage or destruction occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business, as reasonably determined by Tenant, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, and Landlord shall receive the proceeds of any insurance (together with any applicable deductible) which may be payable with regard to such destruction or damage or, in the event Tenant self-insures, the amount necessary for reconstruction of the Improvements.

16. **Condemnation.**

(a) **Definition of Taking and Substantial Taking.** For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, the Shopping Center

or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises, the Shopping Center, or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements and/or Shopping Center and Common Areas as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, (ii) so many of the parking spaces within the Shopping Center as reduces the parking ratio below the greater of five (5) spaces (for full-sized automobiles) per 1000 square feet of ground-floor gross leasable area or that ratio which is required by the zoning ordinance applicable to the Shopping Center, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking, or (iii) so much of the Common Area Easement described in paragraph 6(d) above that access to the Premises is impeded.

(b)  <u>Tenant's Rights Upon Taking or Substantial Taking</u>. In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease. All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking.

(c)  <u>Tenant's Rights Upon Less Than Substantial Taking</u>. In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the Improvements not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated thereto) and the portion of Landlord's award allocable to the Premises, which Landlord shall make available to Tenant for such restoration. If the Taking occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business as reasonably determined by Tenant, this

Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d) <u>Landlord's Obligations Upon Any Taking</u>. In the event of any Taking following which the Lease continues in effect, Landlord shall make all necessary restorations to all portions of the Common Areas and Additional Areas such that they each constitute a complete architectural unit and serve the function originally intended. Additionally, Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center leased to third party tenants or sold to third party occupants are subject to substantially similar reconstruction obligations to those of the Premises, Common Areas and Additional Areas, such that in the event of any condemnation of any portion of the Shopping Center whatsoever, and in the event Tenant elects to maintain this Lease in force, Tenant shall be assured that the Shopping Center will be reconstructed to its former condition within reasonable time.

(e) <u>Rights Upon Temporary Taking</u>. In the event of a Taking of the Premises, the Common Areas and/or any other area within the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding 60 days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, or relating to the Common Areas but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of sixty (60) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(f) <u>Taking of the Pylon Sign(s)</u>. In the event of a taking, whether permanent or temporary, of any pylon or monument sign (as contemplated by paragraph 8) on which Tenant has installed identification panels, Landlord shall provide a substitute site (reasonably acceptable to Tenant) therefor, with adequate electrical power, located so as to be visible to vehicular traffic or roadways adjacent to the Shopping Center and/or at entrances to the Shopping Center, and Landlord shall replace and/or rebuild any of such signage so taken at its sole cost.

(g) <u>Tenant's Right Upon Condemnation</u>. In the event of a Taking described in subparagraph (b) or (c) above, Tenant shall be entitled to claim compensation from the

condemning authority for the value of its unamortized leasehold improvements paid for by Tenant, relocation expenses and any other items to which Tenant is entitled under applicable law.

17. <u>Assignment and Subletting</u>. Tenant shall have the right to sublet, assign, transfer reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term with Landlord's prior consent which consent shall not be unreasonably withheld, conditioned or delayed, provided that any sublessee, assignee, transferee or licensee of Tenant agrees to comply with the terms and provisions of this Lease. No consent of the Landlord shall be required for a Transfer by the Tenant to any party related to, or under common control with, the Tenant. The Landlord may consider, among other things, upon notification from the Tenant that the Tenant intends to assign or sublet hereunder, the nature of the business proposed by such successor tenant, the compatibility of the proposed business with the tenant mix in the Shopping Center, the quality of store operations of such tenant, the ability of such proposed successor tenant to operate its business in the Premises and the financial strength of the proposed successor tenant. Tenant shall remain liable for all of Tenant's obligations to Landlord arising under this Lease so long as this Lease is not changed, modified or amended in any respect adverse to the interests of Tenant hereunder by Landlord and any such sublessee, assignee, transferee or licensee. In the event that the Landlord's consent is required for a Transfer hereunder, the Tenant shall provide to the Landlord notice of any proposed assignment or subletting at least sixty (60) days with respect to the Additional Retail, and one hundred eighty (180) days with respect to the balance of the Premises, in advance of the date of such proposed assignment or subletting and the Landlord shall have the right, during such sixty (60) day period (or one hundred eighty (180) day period, as the case may be), to recapture the Premises upon payment to the Tenant, in cash, of the cost of all unamortized improvements to the Premises, including renovations and remodeling of the Premises occurring after the date of opening of Tenant's business in the Premises, which amounts have not be previously reimbursed by Landlord to Tenant. The amortization period for the purposes of such repayment shall be equal to the Main Term of the Lease. The Tenant shall notify the Landlord of the value of improvements made to the Premises in excess of the Tenant Improvement Allowance; provided, however, in no event shall the obligation of the Landlord to reimburse the Tenant exceed the sum of $400,000.00 including the

Improvements installed by the Tenant prior to the opening of its store facility. Upon such recapture, this Lease shall terminate and neither Landlord nor Tenant shall have further liability hereunder, one to the other, subsequent to the date of payment by Landlord to Tenant of any amount due hereunder with respect to the portion of the Building so recaptured. Notwithstanding any language in this paragraph 17 to the contrary, if Tenant proposes a sublease of less than all of the Premises for less than the entire remaining Term (including options which have been exercised), Landlord shall have no right to recapture the portion of the Premises so proposed to be subleased. Should Tenant wish to be relieved of its obligations hereunder upon a Transfer, Landlord's and Mortgagee's prior consent to a Transfer shall be required. Landlord acknowledges and agrees that it shall be unreasonable for Landlord to withhold its consent to any Transfer hereunder for the purpose of obtaining a material amendment or modification to the terms of this Lease. Sales, assignments, mergers and acquisitions involving related entities or entities under common control with Tenant or involving beneficial ownership interests in the Tenant shall not be deemed a Transfer hereunder and same may be effected without Landlord's knowledge or consent and without Landlord having a right of recapture under this paragraph.

Any assignment or subletting of this Lease by Tenant shall be executed by Tenant and the assignee or sublessee. Each assignee or sublessee, for the benefit of Landlord, shall agree to assume, be bound by, and perform all terms, covenants, and conditions of this Lease to be kept and performed by Tenant. After execution of the assignment or sublease, Tenant will forward a completed copy thereof to Landlord.

18.     Use.

(a)     Tenant shall initially maintain, use and operate approximately 41,510 square feet of the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular telephones, household appliances (which include, but shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners and dishwashers) and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products.

(b)     Thereafter, Tenant shall have the right to use the Premises for any lawful retail use; provided, however, that the Premises shall not be used (i) for any illegal purpose, (ii) for any use prohibited under paragraph 19(a)(viii) below, (iii) in violation of any exclusive use restriction granted a tenant or other occupant of the Shopping Center pursuant to a lease or restrictive covenants executed prior to this Lease and shown on Exhibit "F", or (iv) in violation of any other applicable provision of the "Permitted Encumbrances" contained in Exhibit "F". In the event that the Tenant changes its use pursuant to this provision, such use by the Tenant shall not amount to an exclusive use in the Shopping Center unless such use is approved by the Landlord, and the Landlord agrees that it will not unreasonably withhold, condition or delay its consent to such exclusive use by the Tenant hereunder.

(c)     Except as may be expressly set forth in this paragraph 18, nothing contained in this Lease shall be construed to require Tenant to operate the Premises continuously either for the use first stated or for any other use. Notwithstanding the foregoing, upon the cessation of operations in the Premises by the Tenant for a period of two hundred ten (210) consecutive days, which cessation is not attributable to casualty, condemnation or remodeling of the Premises, the Landlord shall, by ninety (90) days prior written notice to the Tenant, be entitled to terminate the Lease with respect to the portion of the Premises consisting of the Additional Retail and recapture the portion of the Premises consisting of the Additional Retail. Upon such recapture of the Additional Retail, the Base Rent set forth in the Lease shall decrease to an amount equal to the Base Rent then payable pursuant to the terms of the Lease multiplied by a quotient, the numerator of which is the gross leasable area of that portion of the Premises which is exclusive of the Additional Retail and the denominator of which is the gross leasable area of the Premises.

19.  **Warranties and Representations.**

(a)     Landlord represents, warrants and covenants to Tenant that:

(i)     **Quiet and Peaceful Enjoyment.**  Landlord and those persons executing this Lease on its behalf have the right and lawful authority to enter into this Lease and perform Landlord's obligations hereunder, and Landlord warrants, represents and covenants that, so long as Tenant is not in default hereunder beyond any applicable cure period, Tenant shall have quiet and peaceful use, enjoyment and occupancy of the Premises.

(ii) <u>Title</u>. Landlord's fee simple interest in the Shopping Center is free and clear of any mortgages, deeds, encumbrances, declarations, easements, agreements, leases, tenancies or restrictions, except those matters set forth on <u>Exhibit "F"</u> attached hereto and entitled "Permitted Encumbrances", or any other encumbrances which would restrict Tenant's use of the Premises for the sale of Products or would restrict in any respect the right of Tenant, its employees, customers and invitees to use the Common Areas in accordance with the terms of this Lease. Nothing contained in this Lease, including the Permitted Encumbrances and other matters disclosed on <u>Exhibit "F"</u>, shall restrict Tenant's rights under this Lease, including but not limited to the right to operate its business in the Premises. Landlord specifically covenants and warrants that no third party, including but not limited to any other occupant of the Shopping Center, has the right to object to Tenant's tenancy hereunder, prohibit the selling, renting, servicing, repairing or warehousing of the Products, or the right to consent to any feature of the Improvements or Tenant's signage. This representation and warranty is a material inducement to the Tenant's execution of this Lease.

(iii) <u>Certificate of Authority</u>. Landlord covenants that it is a duly constituted limited partnership under the laws of the State of California, and that its general partner who is acting as its signatory in this Lease is duly authorized and empowered to act for and on behalf of the limited partnership. Landlord has furnished Tenant prior hereto with evidence of (a) the existence of the limited partnership, and (b) the authority of the general partner or other legally appointed signatory to bind the limited partnership as contemplated herein.

(iv) <u>No Litigation</u>. There are no judicial, quasi-judicial, administrative or other orders, injunctions, moratoria or pending proceedings against Landlord or the Shopping Center which preclude or interfere with, or would preclude or interfere with, the construction contemplated in paragraph 2 hereof or the occupancy and use of the Premises for the purposes herein contemplated.

(v) <u>Hazardous or Toxic Materials</u>. Landlord has not used, discharged, dumped, spilled or stored any Hazardous Substances (as defined in the Construction Provisions) on or about the Shopping Center, whether accidentally or intentionally, legally or illegally, and has received no notice and has no knowledge that any such

condition exists at the Shopping Center. If any claim is ever made against Tenant relating to Hazardous Substances present at or around the Shopping Center, whether or not such substances are present as of the date hereof, or any such Hazardous Substances are hereafter discovered at the Shopping Center (unless introduced by Tenant, its agents or employees), all costs of removal incurred by, all liability imposed upon, or damages suffered by, Tenant because of the same shall be borne by Landlord, and Landlord hereby indemnifies and agrees to defend and hold Tenant harmless from and against all such costs, losses, liabilities and damages, including, without limitation, all third-party claims (including sums paid in settlement thereof, with or without legal proceedings) for personal injury or property damage and other claims, actions, administrative proceedings, judgments, compensatory and punitive damages, lost profits, penalties, fines, costs, losses, attorneys' fees and expenses (through all levels of proceedings), consultants or experts fees and all costs incurred in enforcing this indemnity. The representation, warranty and indemnity of Landlord described in this paragraph 19(a)(v) shall survive the termination or expiration of this Lease.

(vi) <u>Tenant's Exclusive Use</u>. So long as the Premises are used for the initial uses set forth in paragraph 18, no other tenant or occupant of the Shopping Center shall be entitled to sell or rent (or rent to own) any of the Products, subject only to (A) the rights of any tenants or occupants of the Shopping Center to use not more than 200 square feet of sales area to sell or rent (or rent to own) any of the Products (the right of other tenants to sell minor household electrical goods incidental to another primary use shall be permissible); and (B) the right of any single tenant that leases no more than 12,000 square feet of ground-floor leasable area in the Shopping Center to sell video entertainment software and entertainment media, such as Blockbuster Video.

(vii) <u>Zoning and Subdivision</u>. The Premises and the Shopping Center are presently properly subdivided, in conformity with all applicable laws and zoned so as to permit (A) the development and operation of the Premises and the Shopping Center in accordance with the provisions of this Lease; and (B) the initial use of the Premises described in paragraph 18 of this Lease.

31  C:\CIRCUIT\BEAVERTON\LEASE.R10

(viii) <u>Prohibited Activities</u>. Landlord shall not operate or lease (or permit to be operated or leased) any building or tenant space in the Shopping Center for use as:

(A) a bar, pub, nightclub, music hall or disco in which less than fifty percent (50%) of its space or revenue is devoted to and derived from food service;

(B) a bowling alley;

(C) a billiard or bingo parlor;

(D) a flea market;

(E) a massage parlor;

(F) a funeral home;

(G) a facility for the sale of paraphernalia for use with illicit drugs;

(H) a facility for the sale or display of pornographic material (as determined by community standards for the area in which the Shopping Center is located);

(I) an off-track betting parlor;

(J) a carnival, amusement park or circus;

(K) a gas station, car wash or auto repair or body shop (the parties specifically acknowledging that Tenant's car stereo installation facility is not included in this prohibition (K));

(L) a facility for the sale of new or used motor vehicles, trailers or mobile homes;

(M) a facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center;

(N) a skating rink;

(O) an arcade, pinball or computer gameroom (provided that retail facilities in the Shopping Center may operate no more than four (4) such electronic games incidentally to their primary operations);

(P) no more than five thousand (5,000) square feet of service-oriented offices (such as, by way of example, medical or employment offices, travel agencies, real estate agencies or dry cleaning establishments) or other nonretail uses except for offices and storage facilities incidental to a primary retail operation;

(Q) a banquet hall, auditorium or other place of public assembly;

(R) a training or educational facility (including, without limitation, a beauty school, barber college, reading room, school or other facility catering primarily to students or trainees rather than customers);

(S) a theater of any kind; or

(T) a gymnasium, sport or health club or spa.

In addition to the foregoing, Landlord shall not operate, lease or permit to be operated or leased any restaurant within any building on Landlord's Premises which abuts

"Tenant's Preferred Area" (as shown on the Site Plan) or which is located within three hundred (300) feet of the front entrance to the Building. In addition, no auction, fire or going-out-of-business sale shall be conducted in the Shopping Center.

(ix) <u>Site Covenants</u>. With regard to the development of the Shopping Center and the uses and operations of the Common Areas, Landlord makes the following representations and warranties (the "Site Covenants"):

(A) <u>Building Height and Location.</u> All initial construction shall be completed substantially in accordance with the Site Plan Submission.

(B) <u>Construction and Alterations</u>. Following the end of the first Lease Year, no construction shall be permitted in the Shopping Center during the months of October, November and December, except for interior alterations not affecting the operations of any other occupant of the Shopping Center and except for emergency repairs. In the event of any construction within the Shopping Center, Landlord shall designate a construction access route, staging and parking areas located so as to minimize interference with customers or the operations of other occupants of the Shopping Center and shall require erection of safety barriers as necessary and an opaque wall around the site of such construction of a size necessary to screen such construction from ground level view. With regard to any construction on Landlord's Premises, Landlord shall be solely responsible for any governmentally imposed impact fees, hook-up, connection, installation or tap-in fees and other, similar construction-related charges. Landlord shall make no changes in the Common Areas located within Tenant's Preferred Area (including, without limitation, changes in the location of curbcuts, drive aisles, roadways, sidewalks or parking spaces or reduction of the parking ratio specified in paragraph 5) without Tenant's express written consent, which Tenant may, in its sole discretion, withhold.

(C) <u>Prohibited Uses in Common Areas</u>. Landlord covenants that it shall not, without Tenant's express written consent, permit the following uses or activities to occur in the Common Areas: (1) advertisements or signs except for the pylon signs described in paragraph 8, the "for rent" signs described

33                                C:\CIRCUIT\BEAVERTON\LEASE.R10

in paragraph 27 and traffic control signs; (2) display or sale of merchandise, except on the sidewalks in front of the store selling such goods, provided such outside promotional activities do not exceed two (2) sales per year, each not longer than one (1) week in duration; (3) operation of loudspeakers or other sound electronically amplified so as to be heard in the Tenant's Preferred Area; or (4) imposition of a charge for parking. Landlord further covenants that it will not seek, nor permit any other occupant of the Shopping Center to seek, a variance or waiver from the minimum parking requirements applicable to the Shopping Center under the zoning code or other applicable ordinance establishing the ratio of parking spaces to building area or otherwise mandating the number of parking spaces required for the Shopping Center and the uses contained therein. Parking by employees of Tenant, Landlord and other occupants of the Shopping Center shall be in designated "employee parking" areas, the location of which shall be located in the most southerly and easterly parking spaces within the Tenant's Preferred Area for Tenant's employees and located within the southernmost parking spaces outside of the Tenant's Preferred Area for employees of the Landlord and all other occupants of the Shopping Center.

(D) <u>Easements</u>. Except for any subdivision pursuant to the establishment of tax parcels, Landlord shall not subdivide, parcel or otherwise divide the Shopping Center or create any easements in the Common Areas without Tenant's prior written consent.

(x) <u>Interference with Tenant's Reception/Transmission</u>. Landlord shall not install or permit to be installed by Landlord, any other tenant or other person anywhere in the Shopping Center, any radio or other transmitting equipment which would cause any interference with satellite, radio or television reception or transmission in or from the Building.

(xi) <u>Notices Affecting the Premises.</u> Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises or the Shopping Center received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or the Shopping Center or from any municipal or governmental authority,

in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises, Shopping Center or any such neighboring property.

(xii) <u>Constructive Trust</u>. Landlord covenants that all sums paid by Tenant to Landlord and intended for payment by Landlord to a third party (such as, by way of example, taxes and certain elements of CAM Charges) are given to Landlord in trust and shall be applied only for such third-party payments, as and when due.

(b) Tenant represents, warrants and covenants to Landlord that:

(i) <u>Tenant's Authority</u>. Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia; it has the power to enter into this Lease and perform Tenant's obligations hereunder; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

(ii) <u>Tenant's Warranty as to Hazardous or Toxic Materials</u>. As to Tenant's use and occupancy of the Premises and use of the Common Areas, Tenant will not introduce, discharge, dump, spill or store within the Premises or the Shopping Center any Hazardous Substances; and Tenant indemnifies and agrees to hold Landlord harmless from and against all costs, liability and damages as a result thereof, to the same extent that Landlord indemnifies and holds Tenant harmless in subparagraph (a)(v) above. The warranty and indemnity of Tenant described in this paragraph 19(b)(ii) shall survive the termination of this Lease.

(iii) <u>Building Height and Location</u>. All initial construction of the Premises shall be completed substantially in accordance with the Sites Plan Submission.

(iv) <u>Construction and Alterations</u>. Following the end of the first Lease Year, no construction shall be permitted in the Shopping Center during the months of October, November and December, except for interior alterations not affecting the operations of any other occupant of the Shopping Center, and except for emergency repairs, except for Tenant's finish out for the Additional Retail.

(v) <u>Prohibited Uses In Common Areas</u>. Tenant covenants shall it not, without Landlord's express written consent, permit the following uses or activities to occur in the Common Areas adjacent to the Premises: (1) advertisements or signs except for the pylon signs described in paragraph 8, the "for rent" signs described in paragraph 27 and traffic control signs; (2) display or sale of merchandise, except on the sidewalks in front of the Premises,

provided such outside promotional activities do not exceed two (2) displays or sales per year, each not longer than one (1) week in duration; and (3) operation of loudspeakers or other sound electronically amplified so as to be heard in the Common Areas of the Shopping Center. Parking by employees of Tenant, Landlord and other occupants of the Shopping Center shall be in designated "employee parking" areas, the location of which shall be in the most southerly and easterly parking spaces within the Tenant's Preferred Area for Tenant's employees and located within the southern most parking spaces outside of the Tenant's Preferred Area for employees of the Landlord and all other occupants of the Shopping Center. The Landlord shall be entitled to designate the six (6) parking spaces abutting the east side of Building 1 as exclusively for the use of the occupants of Building 1 and the Landlord shall also be entitled to designate six (6) parking spaces located within the parking island between Building 1 and the Premises as one hour parking. Tenant agrees that in the event it subleases any portion of the Building not originally occupied by Tenant, it shall locate at least one of such subtenant's public entrances within either (i) fifty (50) feet of the southwest corner of the Building or (ii) on the southern face of the Building, at Tenant's election.

(vi) <u>Interference with Reception/Transmission</u>. Tenant shall exercise reasonable efforts to avoid the installation of any radio or other transmitting equipment which would cause any interference with satellite, radio, television reception or transmission in or from the remainder of the Shopping Center.

(vii) <u>Notices Affecting the Premises</u>. Tenant shall promptly forward to Landlord any notice or other communication affecting the Premises received by Tenant from any owner of property adjoining, adjacent or near by the Premises or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises or any such neighboring property.

(viii) <u>Prohibited Activities</u>. The Tenant shall not operate or lease (or permit to be operated or leased) any building or tenant space within the Premises for use as any of the prohibited activities set forth in paragraph 19(a)(viii) above.

(c) In the event there is a condition at variance with the foregoing representations and warranties of Landlord or Tenant with respect to the Premises or the Shopping Center which prevents or in any material way inhibits the use of the Premises or any part thereof or the Common Areas for their intended purposes by Landlord or Tenant or their employees, licensees,