agents, suppliers, customers or invitees, or if Landlord or Tenant shall default in the observance or performance of any of the foregoing representations and warranties, then, in addition to such other remedies as may be accorded the non-breaching at law, in equity or under the terms of this Lease, the non-breaching party may, in addition to its other remedies under this Lease, after thirty (30) days' notice to the breaching party, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of such party's legal remedy and the irreparable harm which would be caused to such party by any such variance or default. In addition, in the event that any of the representations, warranties and covenants set forth in this paragraph 19 are untrue or incorrect, or in the event that the non-breaching party suffers any loss, cost, liability or damage as a result of the breach of any of such covenants, representations and warranties, the breaching party shall defend, indemnify and hold the non-breaching party harmless from any of such loss, costs, liability or damage incurred as a result of such breach hereunder.

20. <u>Estoppel Certificates.</u>  Without charge, at any time and from time to time hereafter, within ten (10) days after receipt of written request by either party, the other party shall certify, by written and duly executed instrument, to any other entity ("Person") specified in such request: (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's best knowledge; (c) as to the existence of any default hereunder, to the certifying party's best knowledge; (d) as to the existence of any offsets, counterclaims, or defenses hereto on the part of such other party, to the certifying party's best knowledge; (e) as to the commencement and expiration dates of the Term; and (f) as to any other matters which may reasonably be so requested. Any such certificate may be relied upon by the party requesting it and any Person to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

21. <u>Subordination, Non-Disturbance and Attornment</u>.

Simultaneously with the execution hereof, Landlord shall deliver to Tenant with regard to any and all Ground Leases (as defined below) and any and all Mortgages (as defined below) encumbering the Premises and placed thereon by Landlord, a subordination, non-disturbance and attornment agreement substantially in the form of <u>Exhibit "G"</u> hereto attached, executed by the Landlord under any such Ground Lease ("Ground Lessor") or the holder of such

Mortgage ("Mortgagee"), as applicable. In addition, throughout the term, Landlord shall deliver to Tenant a subordination, non-disturbance and attornment agreement substantially in the form of Exhibit "G" executed by Ground Lessor or Mortgagee (as applicable) with regard to all future Ground Leases and Mortgages and with regard to all renewals, modifications, replacements and extensions of such Ground Leases or Mortgages. Upon Tenant's receipt of the non-disturbance and attornment agreement, this Lease shall be subordinate to the corresponding Ground Lease or Mortgage.

In the event of a foreclosure of any Mortgage, Tenant shall attorn to a Mortgagee or any purchaser at a foreclosure sale (any such foreclosure, or deed in lieu thereof, shall be referred to as a "Foreclosure") of a Mortgage only if such Mortgagee or purchaser executes a writing in favor of Tenant which states the following (provided Tenant is not in uncured material default beyond the expiration of any applicable grace periods): (i) this Lease shall not terminate by reason of such Foreclosure, (ii) Tenant's possession of the Premises shall not be disturbed, (iii) the Mortgagee or purchaser upon such Foreclosure shall recognize Tenant and all its rights hereunder and shall be obligated to fully and completely perform Landlord's duties and obligations under the Lease arising from and after the date of such Foreclosure, including but not limited to an obligation to make all payments to Tenant and satisfy all construction obligations set forth in this Lease, (iv) Tenant shall not be named as a party in any action for foreclosure, except as may be required by applicable law in order to effect such foreclosure, and (v) the Mortgagee, whether or not the Mortgage is foreclosed, shall make all proceeds arising from a casualty or condemnation loss to the Premises available to Tenant for restoration of the Improvements in accordance with the terms hereof. In the event of termination of the Ground Lease, Tenant shall attorn to any Ground Lessor from whom Tenant has received a non-disturbance agreement in accordance with this paragraph 21.

Landlord shall cause any present or future Mortgagee to deliver a subordination, non-disturbance and attornment agreement in accordance with this paragraph 21 at or prior to the time which the lien of the Mortgage is filed against record title to the Premises, as set forth in paragraph 37(b) below. As used in this paragraph 21, the term "Mortgage" shall mean any mortgage, deed to secure debt, deed of trust, trust deed or other collateral conveyance of, or lien or encumbrance against, the Premises, and the term "Ground Lease" shall mean any ground lease or master lease affecting the Premises.

22. <u>Change of Landlord</u>. Subject to paragraph 21 above, in the event Landlord's interest in the Premises passes to a successor (the "Successor") by sale, lease, Foreclosure or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and effect as if the Successor were the landlord under the Lease, and Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant. In the event that Landlord's interest in the Premises passes to a Successor and such Successor is bound unto Tenant as set forth above, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes, except that Landlord agrees to indemnify, defend and hold Tenant harmless from and against all costs, claims, loss, liability or damage suffered by Tenant as a result of Landlord's transfer of its interests hereunder and/or Landlord's failure to provide Tenant with notice of such Successor. The foregoing shall not be deemed to limit the Tenant's obligation to pay Real Estate Taxes due to any increase in valuation of the tax parcel of which the Premises comprises a portion attributable to a sale of the Shopping Center.

23. <u>Tenant's Financing</u>. Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, from time to time, secure financing or general credit lines and grant the lenders thereof, as security therefor, (i) a security interest in Tenant's fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged, and/or (iii) a collateral assignment of Tenant's leasehold interest in the Premises, with rights of reassignment; provided, however, such collateral assignment may be made solely for the purpose of securing Tenant's indebtedness. Upon Tenant providing notice of such financing to Landlord, Landlord agrees to use best efforts to evidence its consent in writing to such security interest and agreement and to give such lenders the same notice and opportunity to cure any default of Tenant as is provided Tenant hereunder (including time to foreclose or otherwise take possession of the Premises, if necessary to effect such cure). In addition, Landlord agrees to use its best efforts to cause any Mortgagee specifically to acknowledge the rights of Tenant's lenders described herein and in paragraph 24 below.

24. <u>Tenant's Property and Waiver of Landlord's Lien</u>. All of the Personalty shall be and remain the personal property of Tenant. Landlord expressly subordinates its statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any

and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the aforesaid property of Tenant on the Premises and further agrees to execute any reasonable instruments evidencing such waiver, at any time or times hereafter upon Tenant's request. Notwithstanding the foregoing the Landlord expressly waives its statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the Tenant's inventory which may be located upon the Premises from time to time.

25. <u>Memorandum of Lease; Commencement Date Agreement</u>. Landlord and Tenant agree, at the other's request and at the sole expense of the requesting party, to execute a Memorandum of Lease in recordable form, substantially similar to that attached hereto as <u>Exhibit "H"</u>, setting forth such provisions hereof as may be required by State law. In addition, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached hereto as <u>Exhibit "I"</u>, once the Commencement Date has been established. Recording costs for either or both documents shall be borne by the party requesting recordation of the same. The provisions of this Lease shall control, however, with regard to any omissions from, or provisions hereof which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement.

26. <u>Expiration of Term and Holding Over</u>. All of the Personalty shall be removable by Tenant any time prior to the expiration or earlier termination of this Lease and shall be so removed by Tenant at the request of Landlord upon the expiration or termination of this Lease. In the event Tenant fails to so remove any or all of its Personalty, Landlord may remove such Personalty, or the balance thereof, cause such Personalty to be placed into storage and thereafter charge Tenant the cost of such removal and storage, together with interest thereon at the Default Rate. Those improvements that are integrated into the physical structure of the Building, except any of Tenant's trade fixtures, shall not be removed and shall become the property of Landlord. (A nonexclusive list of Tenant's removable trade fixtures is attached hereto as <u>Exhibit "D"</u>.) Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings and equipment (except for holes not more than 1/4 inch in diameter caused by nails, fasteners and the like) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein, ordinary wear and

tear, casualty and condemnation excepted. Tenant agrees that at the expiration of this Lease, it will deliver to Landlord peaceable possession of the Premises. No holding over by Tenant nor acceptance of Base Rent or other charges by Landlord shall operate as a renewal or extension of the Lease without the written consent of Landlord and Tenant. Should Tenant hold over without the consent of Landlord, this Lease shall continue in force from month to month, subject to all of the provisions hereof and at an amount equal to one hundred fifty percent (150%) of the monthly Base Rent Tenant had been paying during the preceding Lease Year.

27. "For Rent" Signs. Tenant hereby permits Landlord during the last one hundred eighty (180) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, on the parking lot of the Shopping Center. Tenant will also allow Landlord or its agents accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior, to prospective tenants, purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

28. Force Majeure. Except as otherwise specifically contemplated in this Lease or in paragraph 4 of the Construction Provisions, and with the exception of any payment of money required hereunder, in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, that in connection with the construction of the Improvements, the consequences of delays by the other party shall be governed by paragraph 4 of the Construction Provisions.

29. Events of Tenant's Default. Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease:

(a) Failure to Pay Rent; Breach. (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Base Rent, CAM Charges or Real Estate Taxes) (subject to Tenant's right of good faith contest), within ten (10) days after the

receipt of written notice from Landlord to Tenant that same is overdue (provided that commencing with the third and each subsequent default notice provided by the Landlord during any Lease Year, the Tenant shall, in addition to any other remedy of the Landlord set forth below, pay to the Landlord a penalty equal to five percent (5%) of the payment of Base Rent then due, without the imposition of such penalty affecting the requirement that Tenant be provided with written notice and an opportunity to cure alleged defaults as provided herein prior to any alleged default constituting an Event of Default); or (ii) Tenant's failure to observe or perform any other material provision of this Lease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances.

    (b) <u>Bankruptcy</u>. Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun.

    30. <u>Landlord's Remedies</u>. After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

    (a) <u>Continue Lease</u>. Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Base Rent and other charges when due, including any sums due for any Option Period for which a Renewal Option has been exercised. In the alternative, Landlord shall have the right to peaceably re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Premises, or any part thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such

reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums shall not be realized or secured, in Landlord's exercise of reasonable efforts to mitigate its damages (which Landlord hereby agrees to make), then Tenant shall pay Landlord the amount described in subparagraph (b)(ii) below. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

(b)    *Terminate Lease*.  Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than ten (10) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following:

(i)    The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

(ii)    The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the date originally fixed as the expiration date of the Term exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation.

As used in this paragraph 30(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at an accrual rate of twelve percent (12%) for past due obligations, and a discount rate to net present value of six percent (6%) on anticipated future obligations, on the amount of the obligations payable on the date of such calculation. In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property

therefrom, by summary dispossession proceedings. Landlord shall never be entitled to dispossess the Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

(c) <u>Reimbursement of Landlord's Costs in Exercising Remedies</u>. Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any speculative damages relating to any diminution in value of the Shopping Center caused by Tenant's failure to perform its obligations under this Lease.

(d) <u>Remedies Are Cumulative</u>. The various rights and remedies reserved to Landlord herein, are cumulative, and Landlord may pursue any and all such rights and remedies (but no others than those set forth in this Lease), whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease). Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

31. <u>Events of Landlord's Default; Tenant's Remedies</u>. Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default": (a) Landlord's failure to make any payments of money due Tenant hereunder within ten (10) days after the receipt of written notice from Tenant to Landlord and its Mortgagee that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate); or (b) Landlord's failure to perform any nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord and its Mortgagee specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently

prosecutes the cure to completion and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances.

Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity, and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (i) pay or perform such obligations and offset Tenant's reasonable and actual cost of performance, including any and all transaction costs and attorneys' fees, plus interest at the Default Rate, against the Base Rent, CAM Charges and any and all other amounts and charges due Landlord hereunder or (ii) withhold Base Rent, CAM Charges and any other payments due to Landlord under this Lease until such Event of Default, including payment of interest and transaction costs specified in subsection (i) above, is cured by Landlord, or (iii) , if the Landlord's actions resulted in an actual or constructive eviction of the Tenant under Oregon law, or if such right is otherwise available in this Lease or under Oregon law, Tenant may terminate this Lease and sue for damages, including interest, transaction costs and attorneys' fees as specified in subsection (i) above. Notwithstanding anything contained herein to the contrary, the Tenant may not offset more than fifty percent (50%) of any monthly installment of Base Rent hereunder; provided, however, all amounts not recovered by the Tenant in a current monthly period shall accumulate and accrue interest at the Default Rate until such sums have been fully recovered by the Tenant, including all interest due hereunder. If Landlord fails to pay Tenant the Tenant Improvement Allowance in a timely manner, Tenant shall be entitled to the rights and remedies set forth in the Construction Provisions in addition to those provided herein; and, as to a breach of the warranties and representations contained in paragraph 19, Tenant shall be entitled to the remedies provided therein, in addition to those remedies provided herein. All amounts, including interest, transaction costs and attorneys' fees, arising out of uncured defaults of Landlord shall constitute liens against Landlord's interest in the Shopping Center, which may be enforced by non-judicial means available under State law, or any other applicable proceedings. The various rights and remedies reserved to Tenant herein are cumulative, and Tenant may pursue any and all rights and remedies, whether at the same time or otherwise.

32.  **Waiver**.  If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor

be held to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

33.   Compliance with Applicable Laws. During the Term, Landlord and Tenant shall comply with all lawful requirements of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Improvements, and of the board of fire underwriters, respecting Tenant's use and occupancy of the Improvements. In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent. In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and deduct the reasonable cost thereof plus interest at the Default Rate from Landlord with the next installment or installments of Base Rent, subject to the limitations on offsets set forth in paragraph 31 above.

34.   Notices. Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), or by facsimile to the number provided below, and by hard copy follow up to such facsimile notice delivered via first-class United States mail addressed to the parties as follows:

| | |
|---|---|
| If to Tenant: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Corporate Secretary<br>Fax: (804) 527-4186 |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate<br>Fax: (804) 527-4186 |
| If to Landlord: | BEIM & JAMES PROPERTIES, III<br>15 S.W. Colorado Avenue<br>Suite G<br>Bend, Oregon 97702<br>Attention: Mr. John K. James<br>Fax: (503) 388-5414 |

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

35. <u>Brokers</u>. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for Norris, Beggs and Simpson, and Grubb & Ellis, which shall be paid a commission by Landlord pursuant to their separate written agreements. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

36. <u>Miscellaneous</u>.

(a) <u>Headings and Gender</u>. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b) <u>Construction</u>. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c) <u>Waiver of Jury Trial</u>. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d) <u>Relationship of Landlord-Tenant</u>. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e) <u>Entire Agreement; Merger</u>. This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f) <u>Attorneys' Fees</u>. In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings, including appeals.

(g) <u>Partial Invalidity</u>. If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h) <u>Consents</u>. Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i) <u>Holidays</u>. If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j)  **Applicable Law**.  This Lease shall be construed in accordance with the laws of the State of Oregon, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

(k)  **Successors and Assigns**.  All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l)  **Counterparts**.  This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m)  **Trademarks and Trade Names**.  All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

37.  **Effectiveness of Lease; Tenant's Right to Terminate**.  Notwithstanding the execution of this Lease or any provision hereof to the contrary, the parties hereto agree that the effectiveness of this Lease is expressly conditioned upon the complete satisfaction (or waiver) of the following condition:

(a)  Landlord's representations, warranties and covenants, including but not limited to those set forth in paragraph 19 herein, being true and accurate as of the date of delivery of the Land (as defined in the Construction Provisions).

The existence of the foregoing condition is solely for the benefit of Tenant, and Tenant may waive such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition being waived by Tenant.

Notwithstanding anything contained herein to the contrary, Landlord recognizes that Tenant usually requires evidence of financing adequate to fund the Tenant Improvement Allowance and development of the remainder of the Shopping Center prior to Lease execution. Notwithstanding the foregoing, Landlord represents and warrants to the Tenant that it owns the real property upon which the Shopping Center shall be constructed free and clear of all indebtedness. Landlord further represents and warrants to the Tenant that upon obtaining construction financing the Landlord shall not finance the value of that portion of the Shopping

Center attributable to the Improvements or the real property in the Shopping Center, unless the construction financing provides funding for the Tenant Improvement Allowance, and that a portion of Landlord's permanent financing will be intended to fund the Tenant Improvement Allowance.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of the foregoing condition. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14(i), 19(a)(v) and 19(b)(ii) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

38.   Confidentiality. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of this transaction. This confidentiality agreement extends to any developers, bankers, lawyers, accountants, employees, agents or any other persons acting on behalf of the parties hereto. The parties hereto agree to use their best reasonable efforts to avoid discussing with, or disclosing to, any third parties (except those parties listed above) any of the terms, conditions or particulars in connection with this transaction. It is specifically agreed by way of illustration, but not by limitation, that the covenant of confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any governmental law or ordinance, but this covenant of confidentiality shall be breached if Landlord, or any of Landlord's developers, bankers, accountants, agents, lenders, lawyers or other similar parties, discloses the content of, or delivers a copy of this Lease to, any third party without the express written consent of all parties to this Lease. Any breach of this confidentiality agreement shall constitute an Event of Default under the terms and provisions of this Lease, but shall not entitle Tenant to terminate this Lease.

WITNESS the following signatures and seals:

LANDLORD

BEIM & JAMES PROPERTIES III,
a California limited partnership

ATTEST (WITNESS): *[signature]*

By: *[signature]*
Name: JOHN K. JAMES
Title: GENERAL PARTNER

                                                       **TENANT**

                                                       CIRCUIT CITY STORES, INC.,
                                                       a Virginia corporation

ATTEST:

_/s/ Joseph V. Jugdmun_                            By: _/s/ Benjamin B. Cummings, Jr._
Its Assistant Secretary                                    Name: Benjamin B. Cummings, Jr.
                                                         Title: V.P.

## EXHIBIT "A"

SITE PLAN

| | |
|---|---|
| Components: | Premises (outlined in red) |
| | Tenant's Preferred Area |
| | Permissible Building Areas |
| | Customer Pick-Up |
| | Pylon/Monument Signage |
| | Truck Well(s)/Trash Compactor |
| | Staging Area |



EXHIBIT "A-1"

LEGAL DESCRIPTION

PARCEL 1: That certain property located in the County of Washington and State of Oregon, more particularly described as follows, to-wit:

Beginning at the West one-quarter Section corner of Section 26, Township 1 South, Range 1 West, Willamette Meridian; and running thence North 0 degrees 16' East 1320.0 feet to a point; thence South 89 degrees 39' East 1802.62 feet to a double barrel shotgun barrel; thence South 0 degrees 42' 10" West, 1346.86 feet to an iron rod, said iron rod marking the Southwest corner of that certain tract conveyed to the City of Portland by Deed recorded in Book 361, Page 608, Deed Records of Washington County, said point being the true point of beginning of the tract herein described; thence continuing South 0 degrees 42' 10" West a distance of 100.43 feet to an iron rod at the Northeasterly right of way line of Southwest Hall Boulevard (County Road No. 1165); thence South 64 degrees 27' East, along the Northeasterly right of way line of Southwest Hall Boulevard, a distance of 670.64 feet to an iron pipe; thence North 0 degrees 13' East along the East line of that tract conveyed to William M. Comstock et ux by Deed Recorded September 25, 1933 in Book 152, Page 65, Records of Washington County, Oregon a distance of 390 feet, more or less, to the Southeast corner of that certain tract conveyed to the City of Portland by Deed recorded in Book 361, Page 613, Deed Records of Washington County; thence West along the South lines of the two City of Portland Tracts, a distance of 605.11 feet, more or less, to the true point of beginning.

EXCEPTING THEREFROM the following described parcel:

Beginning at the West one-quarter section corner of Section 26, Township 1 South, Range 1 West of the Willamette Meridian in Washington County, Oregon, and running thence North 0 degrees 16' East 1320.0 feet to a point; thence South 89 degrees 39' East 1802.62 feet to a double barrell shotgun barrel; thence South 0 degrees 42' 10" West 1346.86 feet to an iron rod, said iron rod marking the true point of beginning of this description; thence continuing South 0 degrees 42' West 100.43 feet to an iron rod; set in the Northeasterly right of way line of State Highway No. 217, (County Road No. 1165); thence following said right of way line South 64 degrees 27' East 142 feet to an iron rod; thence North 25 degrees 32' East 179.27 feet to an iron rod on the South line of that tract conveyed to the City of Portland by Deed Book 361, Page 608; thence due West 204.35 feet to the true place of beginning.

Also excepting therefrom that portion of State Highway No. 217 lying Southerly of the Northerly line of the tract described in Deed to Washington County, recorded September 26, 1988, Fee No. 88042724.

PARCEL 2: Part of the Southwest one-quarter of Section 26, Township 1 South, Range 1 West, Willamette Meridian, in the County of Washington and State of Oregon, and being a portion of that property described in Fee No. 79021047, Deed Records, said county, and being described as follows:

Beginning at a 5/8 inch by 30 inch iron rod with "Waker Associates" plastic cap on the Northerly right of way line of S.W. Oleson Road (County Road No. 2056), said point being 45.00 feet from the centerline (when measured as right angles) of said S.W. Oleson Road, said point also being the most Southerly corner of the tract described in the deed to B & G Investment Associates IV, recorded September 14, 1983, Fee No. 83033686; thence South 55 degrees 47' 30" West on said Northerly right of way line a distance of 26.33 feet to a similar iron rod marking the

CONTINUED

beginning of a tangent 403.10 foot radius curve left; thence on said curve through a central angle of 15 degrees 40' 06" (the long chord of which bears South 47 degrees 57' 24" West, 109.89 feet) an arc distance of 110.23 feet to a similar iron rod; thence South 55 degrees 47' 30" West a distance of 33.51 feet to a point on the Northeasterly right of way line of S.W. Hall Boulevard (County Road No. 1165), said point being 50.00 feet (when measured at right angles) from the centerline of S.W. Hall Boulevard; thence North 63 degrees 39' 00" West on said Northwesterly right of way line a distance of 338.88 feet to a similar iron rod on the East line of the tract described in Contract in favor of Beim & James Properties, II, recorded April 1, 1981, Fee No. 81011035; thence North 01 degrees 07' 00" East (called North 00 degrees 13' East in said last mentioned instrument) along said East line 367.23 feet to a 5/8 inch iron rod at the Northeast corner of said last mentioned tract; thence South 89 degrees 05' 40" East 321.16 feet along the Southerly line of the City of Portland tract described in deed recorded October 20, 1954 in Book 361, Page 611, to a 5/8 inch by 30 inch iron rod with "Waker Associates", plastic cap marking the Northwest corner of said B & G Investments Associates IV tract; thence South 00 degrees 54' 20" West 243.00 feet (called North 01 degrees 04' 50" East in the last mentioned tract) to a similar iron rod marking an angle point on the Westerly line of said last mentioned tract; thence South 34 degrees 12' 30" East 196.35 feet (called North 34" 02' 00" West in said last mentioned tract) to the point of beginning.