EXHIBIT "B"

INDEX OF DEFINITIONS

| Term | Paragraph where defined |
|---|---|
| Assessment(s) | Exh. "C", para. 1(a) |
| Base Rent | 4(a) |
| Building | 2 |
| CAM Charges | 7(b) |
| CAM Year | 7(c) |
| Certificate | 15(a)(i) |
| City | 1 |
| Commencement Date | 4 |
| Common Area Easement | 6(d) |
| Common Area Maintenance | 7(a) |
| Common Areas | 7(a) |
| Construction Term | 3 |
| CPI-U | 4(a)(iii) |
| Date of Taking | 16(a) |
| Default Rate | 9(b) |
| Delivery of the Land | Exh. "C", para. 1(b) |
| Event of Default (Landlord) | 31 |
| Event of Default (Tenant) | 29 |
| Foreclosure | 21(a) |
| Grading Plans | Exh. "C", para. 1(b) |
| Ground Lessor | 21(a) |
| Ground Rent | 4 |
| Hazardous Substances | Exh. "C", para. 1(a) |
| Improvements | 2 |
| Land | 1 |
| Landlord | Introduction |

C:\CIRCUIT\BEAVERTON\LEASE.R10

| | |
|---|---|
| Landlord's Premises | 1 |
| Landlord Work | Exh. "C", para. 1(d) |
| Lease Year | 3 |
| Main Term | 3 |
| Modified Proctor | Exh. "C", para. 2(a) |
| Mortgage | 21(a) |
| Mortgagee | 21(a) |
| Option Periods | 3 |
| Other Improvements | 2 |
| Permissible Building Areas | Exhibit "A" |
| Permitted Encumbrances | Exhibit "F" |
| Person | 20 |
| Personalty | 23 |
| Plans and Specifications | Exh. "C", para. 2(b) |
| Premises | 1 |
| Real Estate Taxes | 9(a) |
| Renewal Option | 3 |
| Shopping Center | 1 |
| Site Covenants | 19(a)(ix) |
| Site Plan Submission | Exh. "C", page 1 |
| Site Work | Exh. "C", para. 1(b) |
| Site Plan | 1 |
| Staging Area | 6(a) |
| State | 1 |
| Substantial Completion | Exh. "C", para. 2(e) |
| Substantially All of the Premises | 16(a) |
| Successor | 22 |
| Taking | 16(a) |
| Tax Parcel | 9(b) |
| Tenant | Introduction |
| Tenant Improvement Allowance | Exh. "C", para. 3 |

C:\CIRCUIT\BEAVERTON\LEASE.R10

| **Term** | **Paragraph where defined** |
|---|---|
| Tenant's Pad Area | Attachment 3 to Exh. "C" |
| Tenant's Preferred Area | Exhibit "A" |
| Tenant's Pro Rata Share | 7(c) |
| Term | 3 |
| Transfer | Exh. "C", para. 3 |
| Utility and Drainage Plan | Exh. "C", para. 1(c) |
| Work | 15(a)(i) |
| Worth at the time of the award | 30(b) |

C:\CIRCUIT\BEAVERTON\LEASE.R10

[WASHINGTON GREEN]

## EXHIBIT "C"
### CONSTRUCTION PROVISIONS

THESE CONSTRUCTION PROVISIONS (herein so called) are hereby made a part of the Lease between Landlord and Tenant to which these Construction Provisions are attached as Exhibit "C". For purposes of the Lease and the Construction Provisions, references to elements comprising the Shopping Center include, among other things, those certain Preliminary Washington Green Plans dated December 23, 1993, and prepared by Ankrim Moison Associated Architects consisting of Sheets A1 and A2 (last revised March 16, 1994), A3 and A4 (last revised February 14, 1994), C1 (entitled Preliminary Grading Plan), C2 and L1 (last revised March 21, 1994), and C-1 (entitled Grading and Erosion Control Plan) (last revised March 23, 1994) collectively referred to herein as the "Site Plan Submission" and attached hereto as Attachment "1"). All defined terms shall have the meanings attributed to them in the Lease unless otherwise specifically defined in these Construction Provisions. The Site Plan Submission is hereby approved by Tenant.

1.    Landlord's Delivery of the Land; Other Landlord Work.

All of the work set forth in subparagraphs (a), (b) and (c) below is, collectively, the "Landlord Work":

(a)    Hazardous Substances. Landlord shall deliver the Land to Tenant free of any pollution or contamination from toxic or hazardous substances, asbestos or any other chemicals or substances in amounts which exceed standards for public health or welfare as established and regulated by any local governmental authority, the State or the United States Government (herein collectively referred to as "Hazardous Substances"). Landlord hereby grants Tenant and its agent access to the Land and Shopping Center to enable Tenant to conduct such soil and environmental tests as its deems necessary.

(b)    Site Work. Landlord, at its sole cost and expense, shall: (i) cause the Land to be free and clear of any known or unknown (which, but for Landlord's failure to discover same, should be removed prior to delivery of the Land to Tenant) obstructions, foundations, footings, utilities, easements, improvements and tenancies; (ii) complete grading of the Land, the Staging Area and the construction access road to the Land in accordance with

1                          C:\CIRCUIT\BEAVERTON\LEASE.R10

upon completion of such requirements (collectively "delivery of the Land"), Tenant shall be able, subject to issuance of its building permit and matters within Tenant's control, to commence construction of the Improvements.

Landlord acknowledges that Tenant's ability to obtain a building permit for its construction may be delayed due to the failure by Landlord to obtain necessary approvals or permits or to pay necessary fees for its construction and development of the Shopping Center. Landlord agrees that delivery of the Land shall not be deemed to have occurred until all such aforesaid approvals and permits shall have been obtained and all such fees, including but not limited to impact fees, system development charges and assessments, shall have been paid, if and to the extent that such approvals, permits and fees for Landlord's construction shall be prerequisites to the issuance of Tenant's building permit. Landlord agrees to pay or cause to be paid all impact fees and system development charges charged against the Shopping Center, including the Premises. Landlord agrees to keep Tenant advised in writing on a monthly basis as to Landlord's progress in completing the Site Work. Upon the delivery of the Land, Landlord shall certify to Tenant that all elements of the Site Work have been completed in the form of the Site Work Certificate attached hereto as Attachment "6".

Should the Site Work require minor adjustments in order to be in accordance with Attachments "3" and/or "3A", Tenant may direct its contractor to make such adjustments, the total cost of which shall be reimbursed by Landlord to Tenant upon demand in a sum not to exceed Five Thousand Dollars ($5,000.00), provided Tenant has notified Landlord of such adjustment and has allowed Landlord's contractors three (3) business days to correct same.

(c)    Paving, Lighting, Utilities, Landscaping and Drainage. Landlord, at its sole cost and expense, and in accordance with Attachment "5", shall cause a contractor licensed in the State to complete (i) grading of the Common Areas in accordance with Attachment "3", Landlord's geotechnical report attached hereto as Exhibit "3A", and installation of temporary utilities, as described in the "Utilities Specifications" attached hereto as Attachment "7"; (ii) the construction and installation within five (5) feet of the Building, of permanent telephone service and permanent utilities, including but not limited to gas, electric, domestic water and fire water (in size sufficient to satisfy local fire codes), each at Tenant's required entry points shown in the Site Plan Submission, at depths adequate for Tenant's tie-in without additional cost above the cost of a sump pump in Tenant's truck dock and other costs contemplated by the "Plans and

C:\CIRCUIT\BEAVERTON\LEASE.R10

Specifications" (as defined in paragraph 2(b) below); (iii) the construction and installation of the storm water drainage system at Tenant's required location shown on the Site Plan Submission; (iv) the construction and installation of asphalt paving (including heavy-duty paving in the truck access and delivery areas), and curbing for parking areas (including sidewalk curb in front of the Building), vehicular access and service roads, and driveways, in accordance with the "Paving Specifications" attached hereto as Attachment "9"; (v) the completion of landscaping at the Shopping Center in accordance with Landlord's governmentally approved landscaping plan; (vi) the construction and installation of lighting in the Shopping Center to standards no less than those set forth in the "Shopping Center Lighting Specifications" attached hereto as Attachment "10"; and (vii) Landlord's installation of the pylon sign(s) identifying the Shopping Center as described in paragraph 8 of the Lease, all no later than the dates established therefor in Attachment "5".

(d)    Landlord Work.  All of the work described to be performed by Landlord in this paragraph 1 is collectively referred to as the "Landlord Work".  All Landlord Work shall be performed in accordance with all applicable laws and this Lease, in a good and workmanlike manner, as appropriate by engineers, surveyors, architects and consultants, who are licensed in the State and of good reputation.  Landlord's general contractor shall be R&H Construction Co. or another general contractor approved by Tenant within thirty (30) days following lease execution.  In the event that Landlord defaults at any time in completion of any component of the Landlord Work, and the cure of such default is not commenced and completed within five (5) business days following receipt of written notice of such default (provided Landlord shall have such longer period of time to correct such default if diligently pursued to completion, not to exceed ten (10) business days), Tenant shall have the right, but not the obligation, to perform at Landlord's sole cost and expense, all or any part of Landlord's Work.  Tenant shall exercise this right by providing Landlord and its Mortgagee (the identity and address of which must be provided by Landlord to Tenant in writing) with written notice thereof, which notice shall reasonably detail those portions of the Landlord Work which Tenant elects to complete.  Tenant may exercise the rights set forth in this paragraph 1(d) from time to time so long as Tenant provides Landlord notice specified herein (i) within a reasonable amount of time prior to the date upon which Landlord would otherwise commence that portion of the Landlord Work, or (ii) at such other time where it is feasible for Tenant to take over that portion of the Landlord Work

C:\CIRCUIT\BEAVERTON\LEASE.R10

from Landlord.  In the event and to the extent that Tenant exercises its right hereunder, Landlord agrees to cooperate in good faith and provide Tenant with reasonable assistance so that Tenant can complete said portions of the Landlord Work.  Landlord agrees to reimburse Tenant for any and all costs incurred by Tenant in connection with any portion of the Landlord Work which Tenant is in the process of completing within fifteen (15) days after receipt of written request from Tenant, which request shall be reasonably supported by invoices and/or written description of the Landlord Work performed.  In the event that the Landlord does not timely reimburse Tenant as hereinabove contemplated, Tenant shall be entitled to deduct the costs of such Landlord Work from rentals and other payments due under the Lease, together with interest at the Default Rate from the date of expenditure by Tenant until paid in full, subject to the limitation on offsets set forth in paragraph 31 of the Lease.

      2.     Tenant Improvements.

      (a)     Building Construction.  Upon completion of all requirements therefor, Landlord shall give Tenant written notice (which shall include any required third party certifications, including but not limited to those required by Attachment "3") of delivery of the Land in the form of Attachment "6".  Tenant shall promptly notify Landlord if any such requirement has not been met to Tenant's reasonable satisfaction, provided the Tenant does not elect its self-help remedies set forth in this Lease.  Upon completion of any such previously unmet requirements, Tenant shall promptly commence and pursue to completion with due diligence the construction of the Improvements and the issuance of its certificate of occupancy.  The construction work on the Improvements shall be performed by a duly licensed general contractor chosen by Tenant from among Turner Construction Co., Baugh Construction Co., or another general contractor approved by Landlord, shall be done in a good and workmanlike manner, in compliance with all applicable laws and in substantial accordance with the "Plans and Specifications" (defined below).  Provided that the Land is delivered on or before the date set forth on Attachment "5", Tenant covenants and agrees to use reasonable efforts and due diligence to achieve "Substantial Completion" (as defined below) on or before the date which is seven (7) months thereafter.  Tenant shall reasonably cooperate with Landlord in its scheduling to allow Landlord's timely construction of Landlord's Work described in paragraph 1 above.  The Tenant shall indemnify and hold the Landlord harmless from any damage which

5

the Tenant or its contractors or agents cause to the Landlord Work during construction of the Premises.

(b)     Plans and Specifications. Tenant shall prepare and furnish to Landlord by May 6, 1994 for its approval, not to be unreasonably withheld, conditioned or delayed, complete architectural drawings and specifications and building elevations (the "Plans and Specifications") prepared by Leidenfrost/Horowitz & Associates for the construction of the Building and Other Improvements (specifically, including all retaining walls within Tenant's Pad Area, concrete ramps and drainage facilities within the truck dock and ramp, and sidewalks adjacent to the Building), incorporating therein the items specified and shown in the Site Plan Submission. Landlord agrees that it will approve the Plans and Specifications, so long as they are materially consistent with the Site Plan Submission, within fifteen (15) business days after receipt thereof. If the Plans and Specifications are not disapproved by Landlord within fifteen (15) days of delivery thereof to Landlord, they will be deemed approved. The Plans and Specifications shall not be changed, other than minor modifications, by Tenant without the prior written consent of the Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.

(c)     Permits. Tenant, at its sole cost and expense, shall obtain or cause to be obtained those certain building permits, licenses, other governmental approvals and temporary and permanent certificates of occupancy which may be required for the lawful construction and occupancy of the Premises as a retail shopping facility in accordance with the Plans and Specifications. Landlord agrees to assist and cooperate fully with Tenant at no cost to Landlord in obtaining such permits, licenses, approvals and certificates. Landlord shall be responsible for any other permits necessary for the development of the Shopping Center.

(d)     Landlord Inspections. During the course of construction of the Improvements, Landlord may, at its own risk and in cooperation with Tenant's contractor, enter upon the Land for purposes of inspecting the work, provided that such inspections shall not interfere with Tenant's construction.

(e)     Substantial Completion. Substantial completion of the Improvements ("Substantial Completion") shall be deemed to occur when a certificate of occupancy, whether temporary and subject to minor items to be completed, or permanent, as the case may be, has been issued by the applicable governmental authority. The foregoing shall not be deemed to

6                                                              C:\CIRCUIT\BEAVERTON\LEASE.R10

relieve Tenant of its responsibility to complete the Improvements in accordance with the Plans and Specifications.

      3.  <u>Costs</u>.  Upon Substantial Completion and Tenant's furnishing to Landlord (i) the certificates of insurance required under paragraph 14 of the Lease, (ii) an indemnity in the form of <u>Exhibit "J"</u> attached hereto against any exception in Landlord's or its Mortgagee's policy of title insurance with respect to mechanics' liens arising out of Tenant's construction, and (iii) a bill of sale conveying title to the Improvements to Landlord, Landlord shall pay to Tenant a "Tenant Improvement Allowance" in an amount equal to Two Million Seven Hundred Twenty-Five and No/100 Dollars ($2,725,000.00), payable by wire transfer of funds by Landlord to Tenant's account no later than thirty (30) days after Substantial Completion. If Landlord fails to pay the Tenant Improvement Allowance in full within sixty (60) days after the date (the "TIA Due Date") which is the later of the date on which Substantial Completion occurs and the date on which Landlord receives all of items (i), (ii) and (iii) above, the Landlord shall be in default hereunder, no Base Rent shall be due or owing to Landlord until the same is paid to Tenant; however, the obligation to pay Ground Rent shall continue as hereafter modified. Commencing on the sixty-first (61st) day after the TIA Due Date, Tenant shall pay reduced Ground Rent ("Reduced Ground Rent") in the amount of Two Hundred Sixty Thousand Eight Hundred and No/100 Dollars ($260,800.00) per annum, and interest shall accrue on the unpaid Tenant Improvement Allowance at twelve percent (12%) per annum, until the date of payment of the Tenant Improvement Allowance. Tenant shall then be entitled to offset against the Tenant Improvement Allowance plus interest thereon, the difference between monthly Base Rent and monthly Reduced Ground Rent; provided, however, that if Landlord has not tendered payment of the Tenant Improvement Allowance by that date which is one hundred twenty (120) days from the TIA Due Date, then (i) no Base Rent, Ground Rent or Reduced Ground Rent shall be payable until payment of the Tenant Improvement Allowance, and (ii) the Tenant may offset all payments of Base Rent and other sums due in satisfaction of the Landlord's default in payment of the Tenant Improvement Allowance, until Tenant fully recovers the Tenant Improvement Allowance plus interest thereon at fifteen percent (15%) per annum commencing one hundred twenty (120) days after the TIA Due Date until the Tenant Improvement Allowance plus all accrued and unpaid interest has been paid to Tenant in full. CAM Charges and Real Estate Taxes are not subject to offset under this paragraph.

C:\CIRCUIT\BEAVERTON\LEASE.R10

4. <u>Construction Delays</u>.

     (a)    <u>Delays by Landlord</u>. In the event, subject to force majeure, Landlord shall fail to complete the Site Work and accomplish delivery of the Land in the condition specified by May 31, 1994, Landlord agrees that it shall reimburse Tenant for its fixed and ascertainable costs incurred as a result thereof in the exercise of all reasonable efforts to open for business by November 15, 1994. Such liquidated costs ("Liquidated Damages") shall be limited to Two Thousand and No/100 Dollars ($2,000.00) per day for the first fifteen (15) days of such delay and commencing on the sixteenth (16th) day, such liquidated damage amount shall accrue at Five Thousand and No/100 Dollars ($5,000.00) per day. In no event shall the Landlord be obligated to pay in excess of $100,000.00 in Liquidated Damages hereunder.

     In the event, subject to force majeure, Landlord shall fail to accomplish delivery of the Land by the date which is thirty (30) days following the date Landlord should have delivered the Land, or to complete any element of the Landlord Work by the completion date established therefor in <u>Attachment "5"</u>, Tenant, at its option and upon five (5) days' prior written notice to Landlord and its Mortgagee, which notice may be given prior to or at any time after the applicable date for performance, may in addition to any other rights and remedies set forth herein, enter the Shopping Center and perform any task required for delivery of the Land or, as applicable, any element of the Landlord Work which has not been timely completed, and Landlord shall reimburse Tenant for its reasonable and actual costs thereof, including interest on such costs at twelve percent (12%) per annum. If such costs are not reimbursed to Tenant prior to the Commencement Date, Tenant may offset such amounts against Base Rent otherwise due until such costs and accrued interest are reimbursed in full, subject to paragraph 31 of the Lease.

     In addition to any other rights and remedies set forth herein, if the Landlord fails to timely deliver the Land or any element of the Site Work as of July 1, 1994, and regardless of force majeure, Tenant may elect to delay opening of its store facility for a period not to exceed nine (9) months from its scheduled opening date, during which time Tenant shall pay no Base Rent, Taxes or CAM Charges. In such event, Landlord shall deliver the Land and complete the Site Work on the date required by Tenant, and Landlord shall pay to Tenant on demand an amount equal to all costs incurred by Tenant in the development of its store facility (the "Postponement Damages"), including, but not limited to, costs of materials and all engineering,

architectural and legal fees, as compensation to Tenant for the loss of store revenues due to Landlord's delays hereunder, up to the maximum amount of One Hundred Thousand and No/100 Dollars ($100,000.00). In the event, for any reason whatsoever and regardless of force majeure, Landlord shall fail to complete delivery of the Land to Tenant by September 15, 1994, Tenant shall be entitled to terminate this Lease at any time prior to such delivery, and in addition Tenant shall be entitled to receive only Liquidated Damages. In no event shall the total of Liquidated Damages and Postponement Damages due Tenant from Landlord exceed One Hundred Thousand and No/100 Dollars ($100,000.00).

       (b)     <u>Delays by Tenant; Ground Rent</u>. If, subject to force majeure, Tenant shall fail to commence its construction by that date which is ninety (90) days following delivery of the Land, Landlord at its option, upon prior written notice to Tenant, may require Tenant to proceed with its construction and commence payment of Ground Rent on December 1, 1994.

If, subject to force majeure, Tenant shall fail to commence construction by that date which is sixty (60) days following delivery of the Land, the dates set forth in items 5 through 10 on Attachment "5" shall be extended one day for every day between the sixty-first (61st) day following delivery of the Land and the day on which Tenant commences construction.

If, subject to force majeure, Tenant shall fail to achieve Substantial Completion by that date which is two hundred ten (210) days following delivery of the Land, Landlord, at its option, upon prior written notice to Tenant, may require Tenant to proceed with its construction, commence payment of Ground Rent on December 1, 1994, and reimburse Landlord for its fixed and ascertainable costs incurred as a result thereof. Such costs shall be limited to Landlord's out-of-pocket expenses of construction overtime, acceleration charges and bonuses paid to Landlord's contractors or subcontractors, charges for the scheduling of construction crews on days on which work cannot be performed on account of the aforesaid delays by Tenant, the cost of erecting barricades around Tenant's unfinished work and construction period interest charges to the extent that such charges exceed those which would have accrued without such delay and any permanent financing costs Landlord has incurred. In addition, provided Landlord is not in default in payment of the Tenant Improvement Allowance, Tenant shall be obligated to pay Ground Rent commencing on Tenant's store opening until payment of the Tenant Improvement Allowance. In no event shall any sum payable hereunder by the Tenant due to its delay exceed the amount of $100,000.00.

C:\CIRCUIT\BEAVERTON\LEASE.R10

In the event, for any reason whatsoever and regardless of force majeure, Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following delivery of the Land, Landlord shall be entitled to terminate this Lease and receive only Liquidated Damages of One Hundred Thousand and No/100 Dollars ($100,000.00) upon sixty (60) days prior written notice to Tenant, during which sixty (60) day period Tenant may cure any such default hereunder. Landlord and Tenant have agreed to the above provisions concerning the payment of Liquidated Damages. Landlord and Tenant agree that it would be impractical and extremely difficult to estimate damages which may be suffered. Therefore, Landlord and Tenant agree that said Liquidated Damages are reasonable estimates of the total detriment which may be suffered by the respective party. Said amounts are the full agreed and liquidated damages for breach, and all other claims to damages relating to this paragraph 4 except as set forth herein are expressly waived by each party. The payment of Liquidated Damages is not intended as a forfeiture or penalty, but is intended to constitute liquidated damages to the aggrieved party.

(c)    Miscellaneous. Notwithstanding the foregoing, a delay by any party in exercising its cure rights or other remedies hereunder shall not be deemed an event of force majeure for purposes of extending the date(s) established for performance by the party whose actions or omissions gave rise to such cure rights or remedies. All sums owing to Tenant under paragraph 1 hereof and/or subparagraph (a) above shall, to the extent applicable, be added to the Tenant Improvement Allowance and paid simultaneously therewith; and, if not so paid, Tenant shall be entitled to offset all such costs, plus interest at the Default Rate, against Base Rent and Ground Rent in accordance with paragraph 3 above. All sums owing to Landlord under subparagraph (b) above shall, to the extent applicable and except for Base Rent and CAM Charges, be deducted from the Tenant Improvement Allowance.

Notwithstanding anything contained herein to the contrary, Landlord covenants that it shall complete its construction and delivery obligations in accordance with the "Completion Dates" set forth in the Construction Schedule. In the event that the Landlord fails to complete its construction and delivery obligations in accordance with such Completion Dates, Tenant may, at its sole election, exercise such remedies as are set forth in this Exhibit "C" and the Lease.

5.    Attachments.

"1"    Site Plan Submission

"2"    Intentionally Deleted

C:\CIRCUIT\BEAVERTON\LEASE.R10

| | |
|---|---|
| "3" | Standards for Grading Work |
| "3A" | Landlord's Geotechnical Report |
| "4" | Intentionally Deleted |
| "5" | Construction Schedule |
| "6" | Site Work Certification |
| "7" | Utilities Specifications |
| "8" | Intentionally Deleted |
| "9" | Paving Specifications |
| "10" | Shopping Center Lighting Specifications |

C:\CIRCUIT\BEAVERTON\LEASE.R10



Site Plan Submission
Attachment "I"
To Exhibit "C"

# WASHINGTON GREEN RETAIL CENTER
DEVELOPMENT REVIEW DRAWINGS

## WASHINGTON COUNTY, OREGON



WASHINGTON GREEN
WASHINGTON COUNTY, OREGON

FOR:
ANKROM MOISAN ASSOCIATED ARCHITECTS
SITE PLAN

A1





WASHINGTON GREEN RETAIL CENTER
GRADING AND EROSION CONTROL PLAN
WASHINGTON COUNTY          OREGON





WASHINGTON GREEN RETAIL CENTER
PRELIMINARY COMPOSITE UTILITY PLAN



WASHINGTON GREEN RETAIL CENTER
PRELIMINARY LANDSCAPE PLAN