IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**(Richmond Division)**

_____

| | |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC., *et al.*, | Case No. 08-35653-KRH |
| | (Jointly Administered) |
| Debtors. | |

_____

**MOTION OF CARDINAL COURT, LLC FOR IMMEDIATE PAYMENT
OF CERTAIN LEASE OBLIGATIONS AND ALLOWANCE OF LEASE
OBLIGATIONS AS ADMINISTRATIVE EXPENSES PURSUANT
TO SECTIONS 365(d)(3) and 503(b) OF THE BANKRUPTCY CODE**
_____

Cardinal Court, LLC ("Cardinal Court"), through its attorneys, hereby moves the Court (the "Motion"), pursuant to Sections 365(d)(3) and 503(b) of the Bankruptcy Code, for entry of an order directing immediate payment of certain lease obligations and allowing lease obligations as administrative expenses. In support of the Motion, Cardinal Court states as follows:

### **JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

William A. Gray, Esquire VSB # 46911
Lisa Taylor Hudson, Esquire VSB # 45484
SANDS ANDERSON MARKS & MILLER, P.C.
801 E. Main Street, Ste. 1800
(P.O. Box 1998)
Richmond, Virginia 23219 (23218-1998)
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
  *Local Counsel for Cardinal Court, LLC*

## FACTUAL BACKGROUND

2. On November 10, 2008 (the "Petition Date"), the above-captioned jointly-administered debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Bankruptcy Code.

3. Cardinal Court is the owner of certain nonresidential real property located at 2301 East Springs Drive, Madison, Wisconsin 53704 (the "Premises").

4. On October 18, 1995, Circuit City Stores, Inc.[1] (one of the Debtors in this case), as tenant, entered into a lease agreement (as amended, the "Lease") with Centres Ventures Madison East, Ltd., as landlord, for the Premises. A copy of the Lease is attached hereto and incorporated herein by reference as **Exhibit A.**

5. On or about November 28, 2006, Cardinal Court became the landlord under the Lease. Evidence of the assignment of the Lease from Centres Ventures Madison East, Ltd. to Cardinal Court in the form of the Assignment of Leases and Rents, the Tenant Estoppel Certificate, and the Assignment and Assumption of Lease is attached hereto and incorporated herein by reference as **Exhibit B.**

6. The Debtors rejected the Lease effective March 10, 2009 (the "Rejection Date") pursuant to a *Notice of Rejection of Unexpired Leases and Abandonment of Personal Property* (the "Lease Rejection Notice") dated March 3, 2009, and filed in the above-styled case by Debtors.

---

[1] The defined term "Debtors" is used interchangeably herein to refer to the jointly-administered Debtors or to Circuit City Stores, Inc. as the context so requires.

2

7. Following the Petition Date and prior to the Rejection Date, the Debtors enjoyed continuous use and possession of the Premises.

8. To date, the Debtors have failed to fully and timely perform their post-petition, pre-rejection obligations under the Lease as required by Section 365(d)(3) of the Bankruptcy Code. Specifically, the Debtors failed to pay: (a) rent for the post-petition period of November 10 through November 30, 2008 (the "November Stub Rent") in the amount of $27,090.39; (b) accrued real estate taxes in the amount of $41,516.45 relating to the Premises for the time period of November 10, 2008 to March 10, 2009; (c) utilities bills, including water and sewer bills in the amount of $1,378.20 relating to the Premises, certain of which bills, if unpaid, create a lien on the Premises; and (d) repair, clean-up, and related costs for damage to the Premises caused by the Debtors during the post-petition, pre-rejection term of the Lease.

## CARDINAL COURT'S ADMINISTRATIVE CLAIM

**A.    November Stub Rent.**

9. Pursuant to Section 4 of the Lease, the Debtors were required to pay Base Rent (as defined in the Lease) in advance on the first day of each calendar month, with appropriate proration for any partial calendar month or Lease Year (as defined in the Lease) pursuant to a rent schedule set forth in Sections 4(a)-(b) of the Lease.

3

10. To date, the Debtors have failed to pay the November Stub Rent in the amount of $27,090.39 despite maintaining continuous possession and enjoyment of the Premises during such time period.

**B.    2008 Post-Petition Real Estate Taxes.**

11. Real Estate Taxes are defined in Section 7(a) of the Lease as:

> [A]ll general real estate taxes and assessments and other ad valorem taxes, rates and levies paid upon or with respect to the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed in lieu of such taxes.

12. The Lease provides, in relevant part, as follows with respect to the payment of Real Estate Taxes on the Premises:

> At such intervals as Landlord is required to pay the Real Estate Taxes, Tenant shall pay to Landlord all Real Estate Taxes levied against the tax parcel or parcels comprising the Premises (the "Tax Parcel"). The Real Estate Taxes shall be net of any early-payment discounts available at the time Tenant's payment is due, provided Tenant makes such payments in sufficient time for Landlord to take advantage of such discounts. Tenant shall pay the Real Estate Taxes within thirty (30) days after Tenant's receipt of Landlord's statement therefor, accompanied by the tax bill on the basis of which such statement is rendered.

13. The Real Estate Taxes on the Premises for 2008 total $125,236.13. A copy of the Real Property Tax Bill for 2008 (the "Tax Bill") is attached hereto and incorporated herein by reference as **Exhibit C.** Of the total amount owed for 2008 Real Estate Taxes, $17,841.86 is attributable to 2008 Real Estate Taxes

4

accrued during the period of November 10, 2008 through December 31, 2008 (the "2008 Post-Petition Real Estate Taxes").[2]

14.    The Debtors received the Tax Bill from Cardinal Court on December 15, 2008.

15.    To date, Cardinal Court has not received payment for the 2008 Post-Petition Real Estate Taxes, despite the fact that the Debtors maintained continuous possession and enjoyment of the Premises during the time period that the 2008 Post-Petition Real Estate Taxes were accrued.

**C.    2009 Pre-Rejection Real Estate Taxes.**

16.    As described above, the Lease provides for the Debtors to pay Cardinal Court for the Real Estate Taxes on the Premises.

17.    The Debtors remained on the Premises prior to the Rejection Date, which includes a portion of 2009 (January 1, 2009 through March 10, 2009).

18.    During that time period, Real Estate Taxes continued to accrue on the Premises in the approximate amount of $23,674.59.[3]

19.    Consistent with the "accrual method" as followed by this Court, the Debtors are responsible for paying the portion of Real Estate Taxes that are

---

[2] The portion of 2008 Real Estate Taxes that accrued pre-petition ($107,394.27) have been asserted in a general unsecured proof of claim filed by Cardinal Court in the Circuit City Stores, Inc. bankruptcy case [Claim No. 7132].

[3] Because Cardinal Court will not receive a 2009 real estate tax bill until the end of 2009, this number is an estimate based on 2008 taxes. The estimate is based on the following calculation: $125,236.13/365 days = $343.11/day; 69 days on property in 2009 x $343.11/day = $23,674.59.

5

attributable to the portion of 2009 prior to the Rejection Date (the "2009 Pre-Rejection Real Estate Taxes").

20. To date, Cardinal Court has not received payment for the 2009 Pre-Rejection Real Estate Taxes, despite the fact that the Debtors enjoyed continuous possession and enjoyment of the Premises during the time period that the 2009 Pre-Rejection Real Estate Taxes were accrued.

**D.   Unpaid Utilities Bills.**

21. Pursuant to Section 9 of the Lease, the Debtors were required to pay "directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements."[4]

22. The Debtors failed to pay for certain utilities, including, without limitation,[5] water, sewer, land fill remediation, storm water, and fire protection utilities (collectively, the "Utilities") owed to Madison Municipal Services in relation to the Premises. The total amount owed by the Debtors for unpaid Utilities is $1,378.20. A copy of the bill showing overdue Utilities payments owed to Madison Municipal Services is attached hereto and incorporated herein by reference as **Exhibit D**.

---

[4] The term "Improvements" as used in the Lease includes the Building (as defined in the Lease), together with loading ramps, sidewalks, trash compactor, transformer pad and other such appurtenances and improvements.

[5] It is further possible that the Debtors owe payments for other utilities of which Cardinal Court is presently unaware but which Cardinal Court herein expressly reserves the right to later claim in supplementation of this claim and pleading.

6

23. Pursuant to Section 66.0809(3) of the Wisconsin Statutes, all unpaid water and sewer charges become a lien on the Premises by operation of law. Accordingly, Cardinal Court will be forced to pay such charges owed by Debtors in order to avoid or remove a lien on the Premises.

24. To date, Cardinal Court has not received (and the Utilities' providers have not received) payment for the Utilities, despite the fact that the Debtors enjoyed continuous possession and enjoyment of the Premises during the time period that the Utilities charges accrued.

**E.    Damage and Clean-Up Costs.**

25. Section 8 of the Lease provides, in pertinent part, as follows with respect to maintenance and repair of the Premises: " . . .Tenant shall be solely responsible for maintenance of the Premises and shall keep the Premises in good order, condition and repair."

26. Section 24 of the Lease provides that:

Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings and equipment (except for small holes caused by nails, fasteners and the like) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein, ordinary wear and tear, casualty and condemnation excepted.

27. As the photographs attached hereto and incorporated herein as **Exhibit E** show, the Premises was not maintained in good order, condition and repair, and it most certainly was not returned in "broom clean" condition. Among other things, the Debtors left the Premises filthy, with a broken window and

7

numerous potholes in the parking lot. In addition, the Debtors failed to return the keys to the warehouse portion of the Premises despite their counsel's representations in Court that keys and/or security access codes would be tendered back to landlords.

28. The estimated clean-up costs for removing the Debtors' abandoned garbage and cleaning up the Premises to a reasonable condition is $3,560.00. An estimate for such clean-up services is attached hereto and incorporated herein by reference as **Exhibit F**.

29. The estimate for repairing the broken window is $717.00. An estimate for such broken-window repair is attached hereto and incorporated herein by reference as **Exhibit G**.

30. The estimate for repairing the potholes in the parking lot is $12,170.00. An estimate for such pothole repair is attached hereto and incorporated herein by reference as **Exhibit H**.

31. The cost for changing the locks for the warehouse portion of the Premises was $94.95. The invoice for changing such locks is attached hereto and incorporated herein by reference as **Exhibit I**.

32. To date, Cardinal Court has not received payment for the above-described damage and clean-up costs, despite the fact that the Debtors enjoyed a benefit from incurring such damage and clean-up costs. The total amount owed by the Debtors for damage and clean-up costs is $16,541.95.

**F.     Attorneys' Fees.**

33.     Section 34(f) of the Lease provides as follows with respect to attorneys' fees:

> In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

34.     Cardinal Court has incurred, and continues to incur, post-petition attorneys' fees in connection with the Debtors' failure to pay amounts owed to Cardinal Court pursuant to the Lease and the Bankruptcy Code, as set forth herein. To the extent that Cardinal Court prevails in all or a portion of this action, Cardinal Court is entitled to reimbursement of its actual and reasonable attorneys' fees incurred.

## LAW AND ARGUMENT

**A.     Pursuant to Section 365(d)(3) of the Bankruptcy Code, the Debtors are Required to Immediately Pay Cardinal Court for November Stub Rent, 2008 Post-Petition Real Estate Taxes, 2009 Pre-Rejection Real Estate Taxes, Utilities, and Damage and Clean-Up Costs.**

35.     Cardinal Court is entitled to immediate payment of November Stub Rent in the amount of $27,090.39, the 2008 Post-Petition Real Estate Taxes in the amount of $17,841.86, the 2009 Pre-Rejection Real Estate Taxes in the estimated amount of $23,674.59, Utilities in the amount of $1,378.20, and damage and clean-up costs in the amount of $16,541.95.

9

36. Section 365(d)(3) of the Bankruptcy Code provides, in part, that:

> The trustee shall timely perform all obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

37. It is clear that Section 365(d)(3) requires the Debtors to pay post-petition lease obligations as they come due, thereby balancing the Debtors' need to retain the leasehold, and Cardinal Court's inability to evict the Debtors. *See El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 69 (10th Cir. (B.A.P.) 2002).

38. Pursuant to Section 365(d)(3), the Debtors are required to pay the November Stub Rent, the 2008 Post-Petition Real Estate Taxes, the 2009 Pre-Rejection Real Estate Taxes, and the damage and clean-up costs immediately. *See, e.g., In re Trak Auto Corp.*, 277 B.R. 655, 662 (Bankr. E.D. Va. 2002), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004); *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 361-68 (Bankr. S.D.N.Y. 2008); *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 208-09 (3d Cir. 2001) (noting that Congress, in adopting Section 365(d)(3), intended a debtor to perform all leasehold obligations as they came due).

39. The Debtors enjoyed continuous use of the Premises during the time period in which the November Stub Rent, the 2008 Post-Petition Real Estate Taxes, the 2009 Pre-Rejection Real Estate Taxes, the Utilities, and the damage and

clean-up costs were incurred, and all such costs were incurred during the post-petition, pre-rejection period.

40. In light of the foregoing, Cardinal Court is entitled to immediate payment of the November Stub Rent, the 2008 Post-Petition Real Estate Taxes, the 2009 Pre-Rejection Real Estate Taxes, the Utilities, and the damage and clean-up costs in the amount of $86,526.99.

**B. The November Stub Rent, the 2008 Post-Petition Real Estate Taxes, the 2009 Pre-Rejection Real Estate Taxes, the Utilities, and All Damage and Clean-Up Costs Are Allowable as Administrative Claims Pursuant to Section 503(b) of the Bankruptcy Code.**

41. The November Stub Rent, the 2008 Post-Petition Real Estate Taxes, the 2009 Pre-Rejection Real Estate Taxes, the Utilities, and all damage and clean-up costs described in this Motion constitute allowable administrative expenses pursuant to Section 503(b) of the Bankruptcy Code, which provides that there shall be allowed administrative expenses for the "actual, necessary costs and expenses of preserving the estate."

42. This Court has already determined that stub rent claims are entitled to administrative expense status under Sections 503(b) and 507(a) of the Bankruptcy Code. *See Findings of Fact and Conclusions of Law from Hearing Held December 22, 2008, on Motions to Compel Payment of Post-petition Rent*, at ¶ 3 (Docket No. 1781).

11

43. The Debtors benefited by having control of the Premises during the time period in which the November Stub Rent, the 2008 Post-Petition Real Estate Taxes, the 2009 Pre-Rejection Real Estate Taxes, and the Utilities were accrued.

44. In addition, Cardinal Court should be allowed a Chapter 11 administrative expense claim for the damage and clean-up costs, as evidenced by **Exhibits F-I** hereto. Such costs were incurred by the Debtors post-petition and pre-rejection, and the Debtors' estates were benefitted by neglecting to perform their lease obligations with respect to the maintenance and clean-up of the Premises.

45. In light of the foregoing, Cardinal Court is entitled to an allowed administrative claim for the November Stub Rent, the 2008 Post-Petition Real Estate Taxes, the 2009 Pre-Rejection Real Estate Taxes, the Utilities, and all damage and clean-up costs in the combined amount of $86,526.99.

**C. The Debtors Are Required to Reimburse Cardinal Court for its Attorneys' Fees Incurred in Connection with the Debtors' Failure to Pay Their Lease Obligations.**

46. Pursuant to the Lease, Cardinal Court is entitled to payment of the attorneys' fees it has incurred (and will continue to incur) in connection with the Debtors' failure to pay their Lease obligations. *See, e.g.*, *Travelers Cas. & Surety Co. v. Pacific Gas and Elec. Co.*, 127 S.Ct. 119, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re Beltway Medical, Inc.*, 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to

12

perform the primary obligation under the lease (i.e., to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation."); *In re Exchange Resources, Inc.* 214 B.R. 366, 371 (Bankr. D. Minn. 1997) (legal fees incurred by landlord in collection of post-petition rent "give[s] rise to a priority administrative-expense claim allowable and payable now").

47. Based on the foregoing, Cardinal Court is entitled to the entry of an order directing the Debtors to pay Cardinal Court's reasonable and actual attorneys' fees associated with the Debtors' failure to pay their Lease obligations. To facilitate the process of awarding such attorneys' fees, Cardinal Court will promptly provide to the Debtors and this Court, redacted invoices detailing such attorneys' fees at such time as this action is decided, or at such other time as this Court so directs.

WHEREFORE, by reason of the foregoing and any argument at hearing, Cardinal Court, by counsel, respectfully requests that the Court grant this Motion and enter an order:

A. Compelling the Debtors to immediately pay to Cardinal Court $86,526.99 pursuant to Section 365(d)(3) of the Bankruptcy Code;

B. Granting Cardinal Court an allowed administrative claim in the amount of $86,526.99 pursuant to Section 503(b) of the Bankruptcy Code;

C.   Awarding Cardinal Court's actual attorneys' fees in an amount to be determined; and

D.   Granting Cardinal Court such other and further relief as this Court deems appropriate, just, and proper.

**Respectfully Submitted,**

**CARDINAL COURT, LLC,**

**By Counsel**

/s/ Lisa Taylor Hudson
_____
William A. Gray, Esquire VSB # 46911
Lisa Taylor Hudson, Esquire VSB # 45484
SANDS ANDERSON MARKS & MILLER, P.C.
801 E. Main Street, Ste. 1800
(P.O. Box 1998)
Richmond, Virginia 23219 (23218-1998)
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
   *Local Counsel for Cardinal Court, LLC*

### CERTIFICATE OR PROOF OF SERVICE

I hereby certify that on this 30th day of April, 2009, a true and accurate copy of the foregoing Motion was electronically filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, using the CM/ECF system, which thereby caused the above to be served electronically on all registered users of the ECF system that have filed notices of appearance in this matter, and was mailed, by U.S. Mail, first class, postage prepaid, to all persons on the below Service List.

   /s/ Lisa Taylor Hudson

## SERVICE LIST

Daniel F. Blanks, Esquire
Douglas M. Foley, Esquire
McGuire Woods LLP
9000 World Trade Center
101 W. Main Street
Norfolk, VA 23510
    *Counsel for Debtors*

Dion W. Hayes, Esquire
James S. Sheerin, Esquire
Sarah Beckett Boehm, Esquire
McGuire Woods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
    *Counsel for Debtors*

Gregg M. Galardi, Esquire
Skadden Arps Slate Meagher & Flom, LLC
One Rodney Square
Post Office Box 636
Wilmington, Delaware 19899-0636
    *Counsel for Debtors*

Chris L. Dickerson, Esquire
Skadden Arps Slate Meagher & Flom, LLC
333 West Wacker Drive
Chicago, IL 60606
    *Counsel for Debtors*

Robert Van Arsdale, Esquire
Assistant U.S. Trustee
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
    *Office of the U.S. Trustee*

Linda K. Myers, Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, Illinois 60601
 *Special Counsel for Debtors*

David S. Berman, Esquire
Riemer & Braunstein, LLP
Three Center Plaza, 6th Floor
Boston, Massachusetts 02108
 *Counsel for Bank of America, N.A.*

Bruce Matson, Esquire
LeClair Ryan
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
 *Counsel for Bank of America, N.A.*

Lynn L. Tavenner, Esquire
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
 *Counsel for the Official Committee of Unsecured Creditors*

Jeffrey N. Pomerantz, Esquire
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067
 *Counsel for the Creditors Committee*

Robert J. Feinstein, Esquire
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 26th Floor
New York, New York 10017
 *Counsel for the Creditors Committee*