# EXHIBIT A

LOCATION: East Towne, Madison, Wisconsin
EXECUTION COPY

**LEASE**

between

CIRCUIT CITY STORES, INC.,

as Tenant

and

CENTRES VENTURES MADISON EAST, LTD.,

as Landlord

dated  October 18 , 1995

**EAST TOWNE MALL**

1.  Leased Property . . . . . . . . . . . . . . . . . . . . .  1
2.  Construction of Building and Improvements . . . . . . . .  1
3.  Lease Term . . . . . . . . . . . . . . . . . . . . . . .   2
4.  Rent . . . . . . . . . . . . . . . . . . . . . . . . . .   3
5.  Easements . . . . . . . . . . . . . . . . . . . . . . .    5
6.  Signs and Communications Equipment . . . . . . . . . . .   5
7.  Taxes . . . . . . . . . . . . . . . . . . . . . . . . .    6
8.  Maintenance, Repairs and Replacements . . . . . . . . .    8
9.  Payment of Utility Bills . . . . . . . . . . . . . . . .   9
10. Alterations . . . . . . . . . . . . . . . . . . . . . .    9
11. Mechanics' Liens . . . . . . . . . . . . . . . . . . . .  10
12. Insurance . . . . . . . . . . . . . . . . . . . . . . .   11
13. Damages by Fire or Other Casualty . . . . . . . . . . .   15
14. Condemnation . . . . . . . . . . . . . . . . . . . . . .  17
15. Assignment and Subletting . . . . . . . . . . . . . . .   20
16. Use . . . . . . . . . . . . . . . . . . . . . . . . . .   20
17. Warranties and Representations . . . . . . . . . . . . .  21
18. Estoppel Certificates . . . . . . . . . . . . . . . . .   32
19. Subordination, Non-Disturbance and Attornment . . . . .   33
20. Change of Landlord . . . . . . . . . . . . . . . . . . .  33
21. Tenant's Financing . . . . . . . . . . . . . . . . . . .  34
22. Tenant's Property and Waiver of Landlord's Lien . . . .   35
24. Expiration of Term and Holding Over . . . . . . . . . .   35
25. "For Rent" Signs . . . . . . . . . . . . . . . . . . . .  36
26. Force Majeure . . . . . . . . . . . . . . . . . . . . .   37
27. Events of Tenant's Default . . . . . . . . . . . . . . .  37

28. Landlord's Remedies . . . . . . . . . . . . . . . . . 38
29. Events of Landlord's Default; Tenant's Remedies . . . . 41
30. Waiver . . . . . . . . . . . . . . . . . . . . . . . . 42
31. Compliance with Recorded Instruments and Applicable Laws . . . . . . . . . . . . . . . . . . . . . . . . . 42
32. Notices . . . . . . . . . . . . . . . . . . . . . . . 43
33. Brokers . . . . . . . . . . . . . . . . . . . . . . . 44
35. Effectiveness of Lease; Tenant's Right to Terminate . . 46
36. Confidentiality . . . . . . . . . . . . . . . . . . . 47

EXHIBITS

| | |
|---|---|
| "A" | Site Plan |
| "A-1" | Legal Description |
| "B" | Index of Definitions |
| "C" | Construction Provisions |
| "D" | Removable Trade Fixtures |
| "E" | Sign Plans |
| "F" | Permitted Encumbrances |
| "G" | Subordination, Non-Disturbance and Attornment Agreement |
| "H" | Memorandum of Lease |
| "I" | Commencement Date Agreement |
| "J" | Indemnification Agreement |

East Towne Mall, Madison, Wisconsin

LEASE

This LEASE is made as of the 19th day of October, 1995, by and between CENTRES VENTURES MADISON EAST, LTD., a Florida limited partnership, having an address at 3315 North 124th Street, Suite E, Brookfield, Wisconsin 53005 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

W I T N E S S E T H :

That for and in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Leased Property**. Landlord demises and leases to Tenant and Tenant leases and takes from Landlord, commencing on Landlord's delivery of the "Land" (as defined below) to Tenant, all those certain "Premises" consisting of the "Building" and "Other Improvements" (both as defined in paragraph 2), as and when same are constructed or renovated and that approximately two hundred ten thousand, three hundred ninety-five (210,395) square foot parcel (the "Land"), on which the Building and Other Improvements are or will be located, as more particularly shown (approximately) outlined in red on Exhibit "A" hereto (the "Site Plan") together with the easements described in paragraph 5 below, lying and being in the City of Madison (the "City"), County of Dane, State of Wisconsin (the "State"), and more particularly shown and described by metes and bounds or platted lot legal description on the Site Plan attached hereto as Exhibit "A-1" and made a part hereof for all purposes.

2. **Construction of Building and Improvements**. Commencing immediately upon "delivery of the Land" (as defined in the Construction Provisions (herein so called) attached hereto as Exhibit "C" and incorporated herein by reference for all purposes),

Tenant shall have the right to construct within the Premises a one-story retail building, containing approximately thirty-three thousand and fifty-three (33,053) square feet of ground-floor gross leasable area plus mezzanine, with provisions for customer pickup, delivery and car stereo installation facilities, initially for use as a Circuit City Superstore (the "Building"), together with loading ramps, sidewalks, trash compactor, transformer pad and other such appurtenances and improvements (collectively, the "Other Improvements"), as more particularly set forth in the Construction Provisions. The Building and Other Improvements are sometimes collectively referred to herein as the "Improvements". The Improvements shall be constructed in accordance with the "Plans and Specifications" to be prepared by Tenant as specified in the Construction Provisions. Except as otherwise provided herein, title to the Improvements shall be deemed transferred to Landlord upon full payment of the "Tenant Improvement Allowance", as defined in the Construction Provisions.

3. Lease Term. Subject to the conditions to the effectiveness of this Lease set forth in paragraph 35, the construction term (the "Construction Term") of this Lease shall commence on the date of Landlord's delivery of the Land to Tenant in accordance with, and in the condition specified in, the Construction Provisions, and shall end on the "Commencement Date" (as defined in paragraph 4 below). The main term (the "Main Term") of the Lease shall commence on the Commencement Date and shall end on the last day of January following the twentieth (20th) anniversary of the Commencement Date.

In addition to the Main Term, provided there are no continuing Events of Default under this Lease, Tenant shall have the option (each such right referred to herein as a "Renewal Option") to renew and extend the Lease for four (4) consecutive five (5) year periods (each such period referred to as an "Option Period" and collectively as the "Option Periods") immediately following the Main Term, at the rent specified below. Tenant shall give Landlord written notice of its election to exercise any Renewal Option at

least one hundred eighty (180) days prior to the expiration of the Main Term or any then-current Option Period, as applicable; provided, however, that in order to avoid any forfeiture or inadvertent lapse of such Renewal Option, if Tenant shall fail to give any such notice within the one hundred eighty (180) day time limit and shall not have given Landlord prior written notice of its intent not to exercise its Renewal Option, then and as often as the same shall occur, Tenant's right to exercise such Renewal Option shall nevertheless continue, as shall its tenancy hereunder (under the same terms and conditions as theretofore in effect and notwithstanding that the Main Term or then-current Option Period shall have expired), until ten (10) business days after Landlord shall have given Tenant a written notice of Landlord's election to terminate the Renewal Option, during which period Tenant may exercise its Renewal Option at any time prior to the expiration of such ten (10) business day period. Upon the giving of notice of renewal and extension in accordance with the foregoing provisions, provided there are no continuing Events of Default hereunder, the Term (defined below) of this Lease shall thereupon be renewed and extended in accordance with such notice without further act by Landlord or Tenant, the same as if such notice had been timely given hereunder.

The Construction Term, Main Term and Option Periods are, collectively, the "Term". The term "Lease Year" shall mean each successive period of twelve (12) consecutive calendar months, commencing on the first day of each February during the Term, except that the first Lease Year shall commence on the Commencement Date and shall end on the last day of January following the first anniversary of the Commencement Date.

4. <u>Rent</u>. During the Construction Term, Tenant shall have no rental obligations nor shall Tenant be responsible for any Real Estate Taxes (as defined in paragraph 7) or any similar costs, fees, rentals or expenses. In the event the Tenant Improvement Allowance has not been paid to Tenant on or before the date Tenant opens for business, commencing on the date Tenant opens for

business Tenant shall pay annual ground rent in an amount equal to One Hundred Ninety-four Thousand Four Hundred Ninety-two and 00/100 Dollars ($194,492.00), in equal monthly installments in the manner set forth in the next paragraph. Tenant agrees to pay base rent ("Base Rent") for the Premises in the amounts and in the manner specified hereunder, commencing (subject to the provisions of paragraph 4 of the Construction Provisions) upon the payment of the Tenant Improvement Allowance by Landlord (the "Commencement Date").

Tenant shall pay Base Rent in equal monthly installments, in advance on the first day of each succeeding calendar month throughout the Term, without notice, demand, set off or presentment except as expressly provided herein, with appropriate proration for any partial calendar month or Lease Year, to the address given for Landlord in paragraph 32 hereof, unless Landlord shall give Tenant written notice of a change of address or of the party to whom such rents shall be payable along with written documentation reasonably satisfactory to Tenant of such party's right to receive payment hereunder. Unless adjusted as provided in paragraph 3 of the Construction Provisions, Base Rent shall be paid pursuant to the following schedule:

(a) *First Ten Years*. During the first ten (10) Lease Years, Tenant shall pay annual Base Rent in an amount equal to Four Hundred Twenty-two Thousand One Hundred Eighty-eight and 00/100 Dollars ($422,188), payable in equal monthly installments.

(b) *Increases in Base Rent*. (i) Annual Base Rent shall increase on the first day of the eleventh Lease Year, over the initial Base Rent charged hereunder by the lesser of ten percent (10%) or two times (2x's) the percentage increase in the "CPI-U" (as defined below) during the five (5) year period ending on October 31 of the tenth Lease Year. As used herein, the CPI-U shall be the United States Department of Labor, Bureau of Labor Statistics Consumer Price Index for All Urban Consumers, U.S. City Average. If at any time during the Term the CPI-U shall be discontinued, Landlord and Tenant shall mutually and reasonably agree to substitute an existing official index published by the

Bureau of Labor Statistics or its successor or another similar index most nearly equivalent to the CPI-U.

(ii) Annual Base Rent shall increase on the first day of the sixteenth Lease Year, and every fifth Lease Year thereafter, over the previous Base Rent charged hereunder by the lesser of five percent (5%) or two times (2x's) the percentage increase in the CPI-U during the five (5) year period ending on October 31 of the fifteenth (or, as applicable, any succeeding fifth) Lease Year.

5. Easements. During the Term, upon prior reasonable request of Tenant (following the initial "Landlord Work" as set forth in the Construction Provisions), Landlord agrees reasonably to cooperate with Tenant, at Tenant's sole cost and expense, in seeking to obtain such underground, public or private utility easements as Tenant deems reasonably necessary for the benefit of the Premises. As part of Landlord's Work, Landlord shall at its expense cause a 40-foot grading easement to be granted benefitting the Premises in a location satisfactory to Tenant.

6. Signs and Communications Equipment.

(a) Signs. Tenant shall be entitled without Landlord's consent, but subject to governmental requirements, to install at its sole cost and expense (but which may be included as part of Tenant's work reimbursed by the Tenant Improvement Allowance) illuminated and other signs on the Premises. In the event of an assignment or subletting as a result of which Tenant is no longer occupying any portion of the Premises, Tenant's signs may be replaced by signs identifying the appropriate assignee or subtenant, provided that such signage shall be subject to all applicable laws. Tenant shall be obligated to maintain all signs in good order and repair while they are installed.

(b) Communications Equipment. Tenant may, at Tenant's sole expense, from time to time, install, maintain and/or replace any satellite dishes or antennas on the roof and/or exterior walls or parapet of the Building as Tenant deems necessary or desirable, provided same shall comply with the applicable laws. Tenant shall

be obligated to maintain all satellite dishes and antennas in good order and repair while they are installed. Upon removal by Tenant of any satellite dishes or antennas, Tenant shall repair any damage done in connection with such removal.

7. Taxes.

(a) Taxes Contemplated Hereunder. The term "Real Estate Taxes" shall mean all general real estate taxes and assessments and other ad valorem taxes, rates and levies paid upon or with respect to the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed in lieu of any such taxes. Nothing contained in this Lease shall require Tenant to pay any local, county, municipal, state or federal income, franchise, corporate, estate, inheritance, succession, capital levy, business or transfer tax of Landlord, or any local, county, municipal, state or federal income, profits, gross receipts, sales or renewal tax or charge upon the rent or other charges payable by Tenant under this Lease.

(b) Payment of Real Estate Taxes. At such intervals as Landlord is required to pay the Real Estate Taxes, Tenant shall pay to Landlord all Real Estate Taxes levied against the tax parcel or parcels comprising the Premises (the "Tax Parcel"). The Real Estate Taxes shall be net of any early-payment discounts available at the time Tenant's payment is due, provided Tenant makes such payments in sufficient time for Landlord to take advantage of such discounts. Tenant shall pay the Real Estate Taxes within thirty (30) days after Tenant's receipt of Landlord's statement therefor, accompanied by the tax bill on the basis of which such statement is rendered. Landlord shall pay, or cause the payment of, all Real Estate Taxes before any fine, penalty, interest or cost may be added thereto, become due or be imposed by operation of law for the nonpayment or late payment thereof. In no event shall Tenant be liable for any discount forfeited or penalty incurred as a result of late payment by Landlord, unless resulting from Tenant's failure to comply with the terms and conditions of this section. Real Estate Taxes shall be prorated as of the Commencement Date and the

expiration or earlier termination of this Lease, and Landlord shall promptly return to Tenant any overpayment made by Tenant not attributable to the period of Tenant's possession of the Premises. In addition, should Landlord fail to pay such Real Estate Taxes before same become delinquent, unless such results from Tenant's failure to comply with the terms and conditions of this section, Tenant shall have the right, at its election, to cure such failure by payment of delinquent Real Estate Taxes and any interest and penalties due thereon and in such event Tenant may deduct the cost thereof, plus interest at the lesser of fifteen percent (15%) per annum or the highest rate permitted by State law (the "Default Rate"), from the next installment(s) of Base Rent and other charges due hereunder.

(c) <u>Contest of Real Estate Taxes and/or Assessed Valuation of Property</u>. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within five (5) days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction. In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall reasonably cooperate with Tenant, at Tenant's expense, and execute any and all documents reasonably required in connection therewith and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution thereof. Tenant's right to contest shall not relieve Tenant of the obligation to pay Real Estate Taxes when due.

(d) <u>Payment Following Appeal</u>. Upon the termination of the proceedings set forth in subparagraph (c) above (unless the taxing authority requires that Real Estate Taxes be paid under protest prior to commencement of such proceedings), Tenant shall

pay the Real Estate Taxes as finally determined in such proceedings, the payment or partial payment of which may have been deferred during the prosecution of such proceedings (if such deferral is available under applicable law). Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises.

8.  **Maintenance, Repairs and Replacements.** Except (i) for costs covered by the Landlord's insurance required to be maintained hereunder, (ii) for condemnation proceeds to be received by Tenant, (iii) for obligations arising from the negligent acts or omissions or willful misconduct of Landlord (or its agents, employees or other tenants), or (iv) as otherwise set forth in this Lease, Tenant shall be solely responsible for maintenance of the Premises and shall keep the Premises in good order, condition and repair. During the last five (5) years of the Term of the Lease (without consideration to the exercise of any additional Renewal Options) Tenant's obligation to install or construct alterations or incur expenditures pursuant to this paragraph shall be limited such that Tenant is not required to expend any sum in satisfaction of its obligations hereunder if the resulting improvement to the Improvements cannot be fully amortized in accordance with generally accepted accounting principles, or the Internal Revenue Code and Regulations, over the remainder of the Term (without consideration to the exercise of any additional Renewal Options), unless Landlord elects to reimburse Tenant upon Tenant's election not to renew the Term hereof for that amount of the cost associated with such repairs, construction or alteration for the period beyond the remainder of the Term (without consideration to the exercise of any additional Renewal Options). Should Tenant fail to perform its obligations under this paragraph 8 except as set forth in the immediately previous sentence, Landlord may, at its option, effect such maintenance, provided that Landlord shall have given Tenant thirty (30) days' prior written notice, except in the case of emergencies (in which event only such notice as may be reasonable under the circumstances shall be required), and if Tenant shall

have failed to cure such default by the end of the thirty (30) day period (or reasonable period in event of emergencies), Landlord shall provide Tenant with an additional five (5) days' written notice for Tenant to cure the defect, except in the case of emergencies (in which event only such notice as may be reasonable under the circumstances shall be required). Further, the thirty (30) day period following the first notice (or reasonable period in event of emergencies) shall be extended in respect of any cure that cannot with reasonable diligence be accomplished within such period so long as Tenant has commenced such cure within such thirty (30) day period (or reasonable period in event of emergencies) and thereafter diligently prosecutes such cure to completion. Tenant shall reimburse Landlord on demand for the reasonable and actual amount so expended (as evidenced by detailed invoice), plus interest at the Default Rate. All maintenance, repairs or replacements shall be done by Tenant lien-free and in a good and workmanlike manner consistent with the quality of labor and materials used in originally constructing the Improvements and in accordance with all applicable law. In order for Tenant to effectively perform its maintenance, repair and replacement obligations hereunder, Landlord shall assign to Tenant any and all manufacturers' and contractors' warranties relating to such work performed on behalf of Tenant. Upon request by Landlord, at the end of the Term, Tenant shall re-assign to Landlord any and all manufacturers' and contractors' warranties relating to such work.

    9. <u>Payment of Utility Bills</u>. Tenant will pay directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements.

    10. <u>Alterations</u>. During the Term, Tenant shall have the right, at its discretion and its sole cost, without Landlord's consent, to make (i) any alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly sized stores and (ii)

any interior nonstructural alterations or modifications it may desire. With Landlord's consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall have the right, at its sole cost, to alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements. Landlord's withholding of consent as to any structural alteration or modification shall be deemed reasonable only if same is materially inconsistent with the then-existing architecture of the Building or materially, adversely affects the future retail use of the Building. Tenant shall cause all such alterations to be lien-free (in accordance with paragraph 11) and made and completed at Tenant's cost in a workmanlike manner and in compliance with all applicable law. Should Landlord's consent be required, conceptual plans and specifications for such work shall be provided to Landlord prior to commencement of any such work. Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within fifteen (15) days following Tenant's delivery of such plans and specifications to Landlord. Without cost or expense to Landlord, Landlord shall reasonably cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required in furtherance of such purposes.

11. _Mechanics' Liens_. Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lie, as applicable, against the Premises. Should any lien of any nature, including but not limited to the foregoing, be filed against the Premises, the party on account of whose actions such lien has been filed shall, within thirty (30)