days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto.

12. Insurance.

(a) Property Damage. During the Construction Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all such construction. During the Main Term and all Option Periods, Tenant shall keep in full force and effect a policy of fire and extended coverage insurance covering loss or damage to the Premises for the full replacement value of the Building, exclusive of excavation, footings and foundations (which initial amount shall be not less than the Tenant Improvement Allowance) with a commercially reasonable deductible, for which Tenant shall be fully responsible. Landlord and any "Mortgagee" (as defined in paragraph 19 below) (as mortgage-holder), shall be named in such policy or policies as additional insureds as their respective interests may appear.

(b) Liability Insurance. During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and any Mortgagee (as mortgage-holder) as additional insureds as their respective interests may appear. The limits of such commercial general liability policy shall be not less than $3,000,000.00 combined single limit for bodily injury and property damage, with a commercially reasonable deductible.

(c) Workers' Compensation Insurance. To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in

statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

(d) <u>Self-Insurance</u>. Notwithstanding anything to the contrary contained herein, except for builder's risk insurance, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided (i) Tenant is then occupying the Premises, (ii) Tenant has a reported net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than Seventy-Five Million Dollars ($75,000,000), as computed in accordance with generally accepted accounting principles, consistently applied, as determinable from Tenant's public disclosures and/or regularly maintained corporate balance sheets which are generally available to shareholders (no right of Landlord to audit or conduct independent investigations being implied by this provision), (iii) Tenant provides Landlord with written notice, in a form reasonably acceptable to Landlord and its Mortgagee, of the required coverages for which Tenant is self-insured, setting forth the amounts, limits and scope of each type covered self-insurance, and (iv) Tenant agrees to defend, indemnify and hold harmless Landlord and its Mortgagee from and against any loss or expense that would have been covered by the insurance policy replaced by such self-insurance pursuant to instruments of indemnification reasonably acceptable to Landlord and its Mortgagee.

(e) <u>Insurance During Construction</u>. During any period in which Landlord is conducting construction activities on the Premises, Landlord shall keep, or cause its general contractor to keep, in full force and effect with regard to the Premises, in form reasonably acceptable to Tenant, at least the minimum insurance coverages set forth below:

(1) Workers' Compensation - statutory limits;
(2) Automotive Liability for all vehicles with limits of $3,000,000 and

  (3) Commercial General Liability to include premises operations and products/completed operations coverage with limits of $3,000,000.

Additionally, any party conducting construction activities shall keep or require its general contractor to keep in full force and effect a policy of builder's risk insurance covering loss or damage to the Premises for the full replacement value of all such construction. To the fullest extent the party not conducting any construction (the "non-constructing party") has an insurable interest, such liability policy shall name the non-constructing party as an additional insured and such builder's risk policy shall name the non-constructing party as a loss payee.

 (f) <u>Policy Provisions</u>. All policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers with a Best rating of not less than B+XII. Any insurance coverage enumerated above may be effected by a blanket policy or policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy or policies shall comply with the provisions of this paragraph 12. Landlord shall not be entitled to self-insure against any of the risks recited herein, except the amount of any commercially reasonable deductible shall be deemed to be self-insurance. An increased coverage or "umbrella" policy may be provided and utilized by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the Premises and Tenant's or Landlord's liability hereunder shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 12.

 (g) <u>Waiver of Right of Recovery and Subrogation</u>. To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy

being deemed to be self-insured), Landlord and Tenant hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(h) *Evidence of Insurance*. Subject to Tenant's right to self-insure hereunder, upon (i) commencement of the Main Term (as to property insurance), (ii) upon delivery of the Land (as to liability insurance) and (iii) no less than annually thereafter, Tenant and Landlord shall cause to be issued to each other in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 12. Each such certificate shall provide that no expiration, cancellation or material change in the insurance evidenced thereby shall be effective unless thirty (30) days' unconditional notice of such expiration, cancellation or material change shall have been given to the certificate-holder (and any Mortgagee, if applicable).

(i) *Indemnities*. Except if arising from the negligent or willful acts of Landlord or its agents or employees (to the extent that paragraph 12(g) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from the use thereof by Tenant, its agents, employees, invitees and customers.

Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring in, on or around the Premises resulting from the negligent or willful acts of Landlord, its

agents or employees (to the extent that paragraph 14(g) is inapplicable thereto).

13. <u>Damages by Fire or Other Casualty</u>.

(a) <u>First Ten Years of Term</u>. In the event of fire, earthquake or other casualty, causing destruction or damage to the Premises within the first ten (10) Lease Years, this Lease shall not terminate and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof. Within a reasonable time after such casualty, subject to force majeure, applicable building codes and the procurement of building permits, Tenant shall complete reconstruction of the Building and Other Improvements to that condition existing immediately prior to such casualty, in the Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 10 hereof. In the event, subject to force majeure, the Premises is not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by Tenant within two hundred forty (240) days after receipt of any required governmental permits, for which permits Tenant shall make prompt application following such destruction or damage, then Landlord, at its option, by giving written notice to Tenant, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event Tenant shall make available to the Landlord all applicable insurance proceeds for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction.

(b) <u>Tenant's Rights After First Ten Years of Term</u>.

(i) <u>Less Than Forty Percent (40%)</u>. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements after the first ten (10) Lease Years, which has a repair and reconstruction cost of less than forty percent (40%) of the then-total reconstruction cost of any of said areas, this Lease shall not terminate and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof. Within a reasonable time after such

casualty, subject to force majeure, applicable building codes and the procurement of building permits, Tenant shall complete reconstruction of the Building and Other Improvements to that condition existing immediately prior to such casualty, in the Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 10 hereof. In the event, subject to force majeure, the Premises is not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by Tenant within two hundred forty (240) days after receipt of any required governmental permits, for which permits Tenant shall make prompt application following such destruction or damage, then Landlord, at its option, by giving written notice to Tenant, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event Tenant shall make available to the Landlord all applicable insurance proceeds for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction.

    (ii) <u>Forty Percent (40%) or More</u>. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements after the first ten (10) Lease Years, which has a repair and reconstruction cost of forty percent (40%) or more of the then-total reconstruction cost of any of said areas, or in the event of any uninsured casualty, Tenant shall have the option of terminating this Lease. Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty and shall thereupon make available to Landlord all insurance proceeds or reconstruction costs as set forth in subparagraph (a) above. In the event Tenant does not elect to terminate this Lease as set forth above, then, subject to force majeure, within two hundred forty (240) days after receipt by Tenant of the required governmental permits for restoration, for which permits Tenant shall make prompt application following such destruction or damage, Tenant shall complete reconstruction of the Improvements to their condition existing immediately prior to such

damage, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 10, and shall restore the Premises (including equipment, furniture and fixtures).

(c) <u>Last Two (2) Years of Main Term or Option Period</u>. Notwithstanding the foregoing, if any such damage or destruction occurs within the last two (2) years (i) of the Main Term or (ii) of any Option Period and has a material impact on Tenant's ability to conduct business, as reasonably determined by Tenant, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, and Landlord shall receive the proceeds of any insurance (together with any applicable deductible) which may be payable with regard to such destruction or damage or, in the event Tenant self-insures, the amount necessary for reconstruction of the Improvements.

14. <u>Condemnation</u>.

(a) <u>Definition of Taking and Substantial Taking</u>. For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, or (ii) so many of the parking spaces within the Premises as reduces the parking ratio below the greater of five (5) spaces (for full-sized automobiles) per 1000 square feet of ground-floor gross leasable

area or that ratio which is required by the zoning ordinance applicable to the Premises, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking.

    (b) *Tenant's Rights Upon Taking or Substantial Taking*. In the event of a Taking of Substantially All of the Premises as defined in 14(a)(i) above, either party, at its option upon thirty (30) days' written notice to the other party, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease. In the event of a Taking of Substantially All of the Premises as defined in 14(a)(ii) above, only Tenant may terminate the Lease, provided Tenant complies with the notice provisions set forth in this paragraph 14(b). All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the date of Tenant's discontinuation of operations in the Premises as a result of such Taking (less a pro rata portion of such sums attributable to any unusable portion of the Premises from the Date of Taking), and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking.

    (c) *Tenant's Rights Upon Less Than Substantial Taking*. In the event of a Taking of less than Substantially All of the Premises or a Taking of Substantially All of the Premises in connection with which Tenant has elected not to exercise its option to terminate this Lease, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the Improvements not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated thereto) and the portion of Landlord's award allocable to the

Premises, which Landlord shall make available to Tenant for such restoration. If the Taking occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, which shall be given no later than sixty (60) days following the Taking.

(d) <u>Rights Upon Temporary Taking</u>. In the event of a Taking of the Premises or any portion thereof, for temporary use (specifically one not exceeding 60 days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect with no abatement of Base Rent or other charges hereunder. All awards, damages, compensation and proceeds payable by the condemnor by reason of such temporary Taking relating to the Premises for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of sixty (60) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(e) <u>Condemnation Proceeds</u>. Except as otherwise set forth above, in the event of a Taking described in subparagraph (b) or (c) above, the proceeds of such Taking shall be distributed first, to Landlord in an amount equal to the greater of the then fair market value (as determined by the condemning authority) of the Premises (less the value of the Improvements if Landlord fails to fund the Tenant Improvement Allowance) or the outstanding balance of Landlord's Mortgage, second, to Tenant in an amount equal to the then fair market value (as determined by the condemning authority) of its leasehold interest hereunder and the unamortized leasehold improvements paid for by Tenant (all of the value of the Improvements if Landlord fails to fund the Tenant

Improvement Allowance), and, third, the balance of any such proceeds shall be paid to Landlord. Tenant may make a separate claim for the value of its leasehold interest in the Premises, the unamortized leasehold improvements paid for by Tenant, relocation expenses and any other items to which Tenant is entitled under applicable law, provided any such separate claim does not reduce Landlord's award as set forth in the preceding sentence.

15. <u>Assignment and Subletting</u>. Tenant shall have the right to sublet, assign, transfer reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent. In the event of such a Transfer, Tenant shall remain liable for all of Tenant's obligations to Landlord arising hereunder except to the extent this Lease is materially or adversely changed, modified or amended in any respect by Landlord and any transferee. Landlord acknowledges and agrees that it shall be unreasonable for Landlord to withhold its consent to any Transfer hereunder for the purpose of obtaining a material amendment or modification to the terms of this Lease. Transfers to subsidiaries, affiliates, or related parties, and Transfers involving beneficial ownership interests in the Tenant, shall not be deemed a Transfer hereunder and same may be effected without Landlord's knowledge or consent provided Tenant remains liable for all of Tenant's obligations to Landlord arising under this Lease.

Any assignment or subletting of this Lease by Tenant shall be executed by Tenant and the assignee or sublessee. Each assignee or sublessee, for the benefit of Landlord, shall agree to assume, be bound by, and perform all terms, covenants, and conditions of this Lease to be kept and performed by Tenant. After execution of the assignment or sublease, Tenant will forward a completed copy thereof to Landlord.

16. <u>Use</u>.

(a) Tenant shall initially maintain, use and operate the Premises as a retail store for (i) the sale of consumer, office and

automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular telephones, household appliances (which include, but shall not be limited to, refrigerators, freezers, stoves, microwave ovens, vacuum cleaners and dishwashers) and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products.

(b)  Thereafter, Tenant shall have the right to use the Premises for any lawful retail use; provided, however, that the Premises shall not be used (i) for any illegal purpose, (ii) for any use prohibited under paragraph 17(a)(vi) below, or (iii) in violation of any other applicable provision of the "Permitted Encumbrances" contained in Exhibit "F".

(c)  Except as may be expressly set forth in this paragraph 16, nothing contained in this Lease shall be construed to require Tenant to operate the Premises continuously either for the use first stated or for any other use.

17.  Warranties and Representations.

(a)  Landlord represents, warrants and covenants to Tenant that:

(i) Quiet and Peaceful Enjoyment.  Landlord and those persons executing this Lease on its behalf have the right and lawful authority to enter into this Lease and perform Landlord's obligations hereunder, and Landlord warrants, represents and covenants that, so long as Tenant is not in default hereunder beyond any applicable cure period, Tenant shall have quiet and peaceful use, enjoyment and occupancy of the Premises.

(ii) Title.  Upon Landlord's acquisition of the Premises, Landlord's fee simple interest in the Premises will

be free and clear of any mortgages, deeds, encumbrances, declarations, easements, agreements, leases, tenancies or restrictions, except the "Permitted Encumbrances." Landlord agrees that during the Term, without the prior written consent of Tenant, Landlord shall not modify or consent to the modification of the Permitted Encumbrances and shall not grant or convey any additional encumbrances, declarations, easements, agreements, leases, tenancies or restrictions other than the Permitted Encumbrances. This shall not be interpreted to limit Landlord's right to sell or mortgage its interest in the Premises subject to the terms of this Lease.

(iii) Certificate of Authority. Landlord covenants that it is a duly constituted limited partnership under the laws of the State of Florida, and that its general partner who is acting as its signatory in this Lease is duly authorized and empowered to act for and on behalf of the limited partnership. Landlord has furnished Tenant prior hereto with evidence of (a) the existence of the limited partnership, and (b) the authority of the general partner to bind the limited partnership as contemplated herein.

(iv) No Litigation. There are no judicial, quasi-judicial, administrative or other orders, injunctions, moratoria or pending proceedings against Landlord or, to the best of Landlord's actual knowledge, the Premises, and Landlord has received no written notice of any of the foregoing, which preclude or interfere with, or would preclude or interfere with, the construction contemplated in paragraph 2 hereof or the occupancy and use of the Premises for the purposes herein contemplated.

(v) Zoning and Subdivision. To the best knowledge of Landlord, the Premises is properly subdivided, in conformity with all applicable laws and zoned so as to permit (A) the development and operation of the Premises in accordance with the provisions of this Lease; and (B) the

initial use of the Premises described in paragraph 18 of this Lease.

       (vi) <u>Prohibited Activities</u>.  Landlord shall not operate or lease (or permit to be operated or leased) any building or tenant space on land adjoining the Premises, now owned or later acquired by the Landlord, for any use in violation of any instrument described on <u>Exhibit "F"</u> attached hereto, or for use as:

(1) a bar, pub, nightclub, music hall or disco in which less than fifty percent (50%) of its space or revenue is devoted to and derived from food service;
(2) a billiard or bingo parlor;
(3) a flea market;
(4) a massage parlor;
(5) a funeral home;
(6) a facility for the sale of paraphernalia for use with illicit drugs;
(7) a facility for the sale or display of pornographic material (as determined by community standards for the area in which the Premises is located);
(8) an off-track betting parlor;
(9) a carnival, amusement park or circus;
(10) a gas station, car wash or auto repair or body shop (the parties specifically acknowledging that Tenant's car stereo installation facility is not included in this prohibition (10));
(11) a facility for the sale of new or used motor vehicles, trailers or mobile homes;
(12) a facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with integrated, community-oriented retail and commercial operation;
(13) a skating rink;
(14) an arcade, pinball or computer gameroom (provided that retail facilities may operate no more than four (4) such electronic games incidentally to their primary operations).

In addition to the foregoing, no auction, fire or going-out-of-business sale shall be conducted on any land adjoining the Premises, now owned or later acquired by Landlord.

(vii) **Easements**. Landlord shall not subdivide, parcel or otherwise divide the Premises without Tenant's prior written consent. Tenant agrees to reasonably cooperate with Landlord in seeking to obtain such underground, public or private utility easements as may be reasonably necessary for the benefit of any adjoining parcel owned by Landlord.

(viii) **Interference with Tenant's Reception/Transmission**. Landlord shall not install or permit to be installed by Landlord, and shall use its best efforts to prevent any other tenant or other person from installing, anywhere on adjacent land, now owned or later acquired by Landlord, any radio or other transmitting equipment which would cause any interference with satellite, radio or television reception or transmission in or from the Building.

(ix) **Notices Affecting the Premises.** Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises or any such neighboring property.

(x) **Constructive Trust**. Landlord covenants that all sums paid by Tenant to Landlord and intended for payment by Landlord to a third party (such as, by way of example, taxes) are given to Landlord in trust and shall be applied only for such third-party payments, as and when due, provided no Event of Default is continuing. In the event of and during the continuance of an Event of Default, the sums may be applied to Tenant's obligations under this Lease as Landlord, in its sole discretion, may elect.

Notwithstanding the foregoing, Tenant acknowledges that Tenant is fully familiar with the Land, the physical condition thereof and the Permitted Exceptions. Tenant accepts the Land in the existing condition and state of repair, subject only to the improvement work required to be performed by Landlord hereunder and, except as otherwise expressly set forth in this Lease, no other representations, statements, or warranties, express or implied, have been made by or on behalf of Landlord in respect of the Premises, the status of title thereof, the physical condition thereof, the zoning or other laws, regulations, rules and orders applicable thereto, taxes, or the use that may be made of the Premises, and Tenant has relied on no such representation, statements or warranties.

(b) Tenant represents, warrants and covenants to Landlord that:

(i) <u>Tenant's Authority</u>. Tenant is a duly constituted corporation organized under the laws of the Commonwealth of Virginia; it has the power to enter into this Lease and perform Tenant's obligations hereunder; and the Vice President executing this Lease on Tenant's behalf has the right and lawful authority to do so.

(c) In the event there is a default in the observance or performance of the foregoing covenants, representations and warranties of Landlord with respect to the Premises, or a condition at variance with the same, which prevents or in any material way inhibits the use or enjoyment of the Premises or any part thereof for its intended purposes by Tenant or Tenant's employees, licensees, agents, suppliers, customers or invitees, then, in addition to such other remedies as may be accorded Tenant at law, in equity or under the terms of this Lease, Tenant may, in addition to its other remedies under this Lease, after thirty (30) days' notice to Landlord, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of Tenant's legal remedy and the irreparable harm