which would be caused to Tenant by any such variance or default. In addition, in the event that any of the representations, warranties and covenants set forth in this paragraph 17 are untrue or incorrect, or in the event that either party suffers any loss, cost, liability or damage as a result of the breach of any of such covenants, representations and warranties, the breaching party shall defend, indemnify and hold the other party harmless from any of such loss, costs, liability or damage incurred as a result of the breaching parties breach hereunder.

(d) Hazardous Materials.

(i) "Hazardous Materials" shall mean any materials, substances or wastes that are defined as "hazardous substances," "hazardous materials," "toxic substances" or "hazardous wastes" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. § 9601, et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq.; all corresponding and related State of Wisconsin and local statutes, ordinances and regulations, including without limitation any dealing with underground storage tanks; and in any other environmental law, regulation or ordinance now existing or hereinafter enacted (collectively, "Hazardous Materials Laws"). The term Hazardous Materials shall also include petroleum, petroleum by-products and dielectric or other fluids containing greater than fifty (50) parts per million polychlorinated biphenyls. The definition of Hazardous Material shall not include, (A) de minimis amount of fluids leaked from vehicles parked on the Premises, (B) properly stored janitorial supplies used in the maintenance of the Premises, or (C) properly stored materials and supplies customarily used by Tenant in its operations.

(ii) Landlord hereby represents and warrants to Tenant as follows, which representations are made as of the date of this Lease:

(1) Neither Landlord nor, to the best of Landlord's knowledge, any other parties have stored, spilled, generated, discharged, released or threatened to release any Hazardous Substances in, under or over the Premises.

(2) Landlord has not received any request for information, notice, demand letter, administrative inquiry or formal or informal complaint or claim from or by any public or private agency or entity concerning any release or discharge of any Hazardous Materials on, under, about or off of the Premises or any alleged violation of any Hazardous Materials Laws involving the Premises. No litigation is pending or, to the best of Landlord's knowledge, threatened, with respect to the Premises concerning any Hazardous Materials or any Hazardous Materials Laws. No lien has been imposed or, to the best knowledge of Landlord, threatened to be imposed against the Premises by any governmental agency or entity in connection with the presence of Hazardous Materials or violation of any Hazardous Materials Laws on or off the Premises.

(iii) Tenant hereby agrees that Tenant and its agents, contractors, subcontractors, invitees, customers, successors and assigns (for purposes of this Section, referred to collectively herein as "Tenant's Representatives") shall not use, generate, manufacture, refund, produce, process, store or dispose of, on, under or about the Premises or transport to or from the Premises in the future for the purpose of generating, manufacturing, refining, producing, storing, handling, transferring, processing or transporting Hazardous Materials, except in compliance with all applicable

Hazardous Materials Laws. Furthermore, Tenant shall, at its own expense, procure, maintain in effect and comply with all material conditions of any and all permits, licenses and other governmental and regulatory approvals required for the storage or use by Tenant or any of Tenant's Representatives of Hazardous Materials on the Premises, including without limitation, discharge of (appropriately treated) materials or wastes into or through any sanitary sewer serving the Premises.

    (iv) If at any time during the Main Term or any Option Period any contamination of the Premises by Hazardous Materials shall occur, or be discovered, and such contamination is caused by the act or omission of Tenant or Tenant's Representatives, or by Landlord or its agents, contractors, subcontractors, successors and assigns, or by unrelated third parties on or near the Premises other than as a direct result of Tenant's operation and use of the Premises ("Landlord's Representatives") (as appropriate, the "Contamination"), then Tenant, if caused by Tenant's Representatives, or Landlord, if caused by Landlord's Representatives (as appropriate, the "Contaminator"), as its sole cost and expense, shall promptly and diligently remove such Hazardous Materials from the Premises or the groundwater underlying the Premises to the extent reasonably possible in accordance with the requirements of the applicable Hazardous Materials Laws and industry standards then prevailing in the Hazardous Materials management and remediation industry in Wisconsin. However, the Contaminator shall not take any required remedial action in response to any Contamination in or about the Premises or enter into any settlement agreement, consent, decree or other compromise in respect to any claims relating to any Contamination without first notifying the other party of its intention to do so and affording the other party the opportunity to appear, intervene or otherwise appropriately assert and protect its interest with respect

thereto. In addition to all other rights and remedies of the non-contaminating party hereunder, if the Contaminator does not promptly and diligently take all steps to prepare and obtain all necessary approvals of a remediation plan for any Contamination, and thereafter commence the required remediation of any Hazardous Materials released or discharged in connection with Contamination within sixty (60) days after the non-contaminating party has reasonably approved the Contamination remediation plan and all necessary approvals and consents have been obtained and thereafter continue to prosecute said remediation to completion in accordance with the approved remediation plan, the non-contaminating party, at its sole discretion, shall have the right, but not the obligation, to cause said remediation to be accomplished, and the Contaminator shall reimburse the non-contaminating party within fifteen (15) business days of the non-contaminating party's demand for reimbursement of all amounts reasonably paid by the non-contaminating party (together with interest on said amounts at the Default Rate until paid), when said demand is accompanied by proof of payment by the non-contaminating party of the amounts demanded. The Contaminator shall promptly deliver to the non-contaminating party copies of hazardous waste manifests reflecting the legal and proper disposal of all Hazardous Materials removed from the Premises as part of the Contaminator's remediation of any Contamination.

(v) Except as discharged into the sanitary sewer or otherwise removed from the Premises in strict accordance and conformity with all applicable Hazardous Materials Laws, the Contaminator shall cause any and all Hazardous Materials removed from the Premises as part of the required remediation of the Contamination to be removed and transported solely by duly licensed haulers to duly licensed facilities for final disposal of such materials and wastes.

(vi) Each party hereto (for purposes of this Section, "Notifying Party") shall immediately notify the other party (the "Notice Recipient") in writing of: (i) any enforcement, clean-up, removal or other governmental or regulatory action instituted, contemplated or threatened concerning the Premises pursuant to any Hazardous Materials Laws; (ii) any claim made or threatened by any person against the Notifying Party or the Premises relating to damage contribution, cost recovery, compensation, loss or injury resulting from or claimed to result from any Hazardous Materials on or about the Premises; and (iii) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by the Notifying Party of actual knowledge of any of the foregoing matters. Notifying Party shall also supply to Notice Recipient as promptly as possible, and in any event within five (5) business days after Notifying Party first received or sends the same, with copies of all claims, reports, complaints, notices, warnings or asserted violations relating in any way to the Premises.

(vii) Tenant shall indemnify, defend (by counsel reasonably acceptable to Landlord), protect, and hold Landlord, and each of Landlord's partners (if applicable), employees, agents, attorneys, shareholders, officers, directors, trustees, successors and assigns (Landlord, together with all of such persons and entities being hereinafter collectively referred to as the "Landlord Indemnified Parties"), free and harmless from and against any and all claims, actions, causes of action, liabilities, penalties, forfeitures, damages, losses or expenses (including, without limitation, attorneys' fees and costs through litigation and all appeals) or death of or injury to any person or damage to any property whatsoever, arising from

or caused in whole or in part, directly or indirectly by (i) any Contamination by Tenant's Representatives, (ii) Tenant's failure to comply with any material provisions of any Hazardous Materials Laws with respect to the Premises, or (iii) a breach of any covenant, warranty or representation of Tenant under Section 20 hereof. Tenant's obligations hereunder shall include, without limitation, and whether foreseeable or unforeseeable, all costs of any required for necessary repair, clean-up or detoxification or decontamination of the Premises, and the preparation and implementation of any closure, remedial action or other required plans in connection therewith. For purposes of the indemnity provisions hereof, any acts or omissions of Tenant or by employees, agents, assignees, lessees, sublessees, contractors or subcontractors of Tenant or others acting for or on behalf of Tenant (whether or not they are negligent, intentional, willful or unlawful) shall be strictly attributable to Tenant. The foregoing indemnity shall survive the expiration or sooner termination of this Lease but shall not extend to conditions not attributable to Tenant or Tenant's Representatives prior to the commencement of the Term of this Lease.

(viii) Landlord shall indemnify, defend (by counsel reasonably acceptable to Tenant), protect, and hold Tenant, and each of Tenant's Affiliates, employees, agents, attorneys, shareholders, officers, directors, trustees, successors and assigns (Tenant, together with all of such persons and entities being hereinafter collectively referred to as the "Tenant Indemnified Parties"), free and harmless from and against any and all claims, actions, causes of action, liabilities, penalties, forfeitures, damages, losses or expenses (including, without limitation, attorneys' fees and costs through litigation and all appeals) or death of or injury to any person or damage to any property whatsoever, arising from or caused in whole or in part, directly or

indirectly by (i) a breach of any covenant, warranty or representation of Landlord set forth above in Section 20 hereof, (ii) any Hazardous Materials contamination introduced onto the Premises after Landlord's acquisition of the Premises but prior to the commencement of the Term of this Lease. Landlord's obligations hereunder shall include, without limitation, and whether foreseeable or unforeseeable, all costs of any required or necessary repair, clean-up or detoxification or decontamination of the Premises and the preparation and implementation of any closure, remedial action or other required plans in connection therewith. For purposes of the indemnity provisions hereof, any acts or omissions of Landlord, or of employees, agents, assignees, lessees, sublessees, contractors or subcontractors of Landlord or others acting for or on behalf of Landlord, or unrelated third parties on or near the Premises other than as a direct result of Tenant's operation and use of the Premises (whether or not they are negligent, intentional, willful or unlawful) shall be strictly attributable to Landlord. The foregoing indemnity shall survive the expiration or sooner termination of this Lease.

18. **Estoppel Certificates**. Without charge, at any time and from time to time hereafter, within ten (10) days after receipt of written request by either party, the other party shall certify, by written and duly executed instrument, to any other entity ("Person") specified in such request: (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's best knowledge; (c) as to the existence of any default hereunder, to the certifying party's best knowledge; (d) as to the existence of any offsets, counterclaims, or defenses hereto on the part of such other party, to the certifying party's best knowledge; (e) as to the commencement and expiration dates of the Term; and (f) as to any other matters which may reasonably be so requested. Any such

certificate may be relied upon by the party requesting it and any Person to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

19. <u>Subordination, Non-Disturbance and Attornment</u>.

Simultaneously with the execution hereof, Landlord shall deliver to Tenant with regard to any and all Ground Leases (as defined below) and any and all Mortgages (as defined below) encumbering the Premises and placed thereon by Landlord, a subordination, non-disturbance and attornment agreement in the form of <u>Exhibit "G"</u> hereto attached, executed by the Landlord under any such Ground Lease ("Ground Lessor") or the holder of such Mortgage ("Mortgagee"), as applicable. In addition, throughout the term, Landlord shall deliver to Tenant a non-disturbance and attornment agreement in the form of <u>Exhibit "G"</u> executed by Ground Lessor or Mortgagee (as applicable) with regard to all future Ground Leases and Mortgages and with regard to all renewals, modifications, replacements and extensions of such Ground Leases or Mortgages. Upon Tenant's receipt of the subordination, non-disturbance and attornment agreement, this Lease shall be subordinate to the corresponding Ground Lease or Mortgage.

Landlord shall cause any present or future Mortgagee to deliver a subordination, non-disturbance and attornment agreement in accordance with this paragraph 19 at or prior to the time which the lien of the Mortgage is filed against record title to the Premises, as set forth in paragraph 35(b) below. As used in this paragraph 19, the term "Mortgage" shall mean any mortgage, deed to secure debt, deed of trust, trust deed or other collateral conveyance of, or lien or encumbrance against, Landlord's fee estate in the Premises, and the term "Ground Lease" shall mean any ground lease or master lease affecting the Premises.

20. <u>Change of Landlord; Personal Liability</u>.

(a) Subject to paragraph 19 above, in the event Landlord's interest in the Premises passes to a successor (the "Successor") by sale, lease, Foreclosure (as defined in <u>Exhibit</u>

"G") or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and effect as if the Successor were the landlord under the Lease, and Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant. In the event that Landlord's interest in the Premises passes to a Successor and such Successor is bound unto Tenant as set forth above, and provided the transferring Landlord has given Tenant written notice of such Successor as set forth above, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes, except that Landlord agrees to indemnify, defend and hold Tenant harmless from and against all costs, claims, loss, liability or damage suffered by Tenant as a result of Landlord's transfer of its interests hereunder and/or Landlord's failure to provide Tenant with notice of such Successor.

(b) Except in cases of fraud or other illegal behavior on the part of Landlord, its agents or employees, Landlord's liability to Tenant for any default by Landlord under the terms of this Lease shall be limited to the interest of Landlord in the Premises and Tenant agrees to look solely to Landlord's interest in the Premises (and the proceeds of sale, insurance, and condemnation awards) for the recovery of any judgment against the Landlord, it being intended that neither Landlord nor any partner of Landlord shall be personally liable for any judgment or deficiency.

21. Tenant's Financing. Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, from time to time, secure financing or general credit lines and grant the lenders thereof, as security therefor, (i) a security interest in Tenant's fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged, and/or (iii) in the event Landlord defaults in its obligation to provide the Tenant Improvement Allowance as and when required hereunder, a collateral assignment of Tenant's leasehold interest in the Premises, with

rights of reassignment; provided, however, such collateral assignment may be made solely for the purpose of securing Tenant's indebtedness. Upon Tenant providing notice of such financing to Landlord, Landlord agrees to evidence its consent in writing to such security interest and agreement and to give such lenders the same notice and opportunity to cure any default of Tenant as is provided Tenant hereunder (including time to foreclose or otherwise take possession of the Premises, if necessary to effect such cure). In addition, Landlord agrees to cause any Mortgagee specifically to acknowledge the rights of Tenant's lenders described herein and in paragraph 22 below.

22. **Tenant's Property and Waiver of Landlord's Lien**. All of the Personalty shall be and remain the personal property of Tenant. Landlord expressly waives its statutory or common law landlord's liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the aforesaid property of Tenant on the Premises and further agrees to execute any reasonable instruments evidencing such waiver, at any time or times hereafter upon Tenant's request.

23. **Memorandum of Lease; Commencement Date Agreement**. Landlord and Tenant agree, at the other's request and at the sole expense of the requesting party, to execute a Memorandum of Lease in recordable form, substantially similar to that attached hereto as **Exhibit "H"**, setting forth such provisions hereof as may be required by State law. In addition, Landlord and Tenant shall execute a Commencement Date Agreement in the form attached hereto as **Exhibit "I"**, once the Commencement Date has been established. Recording costs for either or both documents shall be borne by the party requesting recordation of the same. The provisions of this Lease shall control, however, with regard to any omissions from, or provisions hereof which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement.

24. **Expiration of Term and Holding Over**. All of the Personalty shall be removable by Tenant any time prior to, or

within thirty (30) days after, the expiration or earlier termination of this Lease and shall be so removed by Tenant at the request of Landlord within thirty (30) days after the expiration or termination of this Lease. In the event Tenant fails to remove any or all of its Personalty within the said thirty (30) day period, Landlord may remove such Personalty, or the balance thereof, cause such Personalty to be placed into storage and thereafter charge Tenant the cost of such removal and storage, together with interest thereon at the Default Rate. Those improvements that are integrated into the physical structure of the Building, except any of Tenant's trade fixtures, shall not be removed and shall become the property of Landlord. (A nonexclusive list of Tenant's removable trade fixtures is attached hereto as <u>Exhibit "D"</u>.) Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings and equipment (except for small holes caused by nails, fasteners and the like) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein, ordinary wear and tear, casualty and condemnation excepted. Tenant agrees that at the expiration of this Lease, it will deliver to Landlord peaceable possession of the Premises. No holding over by Tenant nor acceptance of Base Rent or other charges by Landlord shall operate as a renewal or extension of the Lease without the written consent of Landlord and Tenant. Should Tenant hold over without the consent of Landlord, this Lease shall continue in force from month to month, subject to all of the provisions hereof and at one hundred fifty percent (150%) the monthly Base Rent Tenant had been paying during the preceding Lease Year; provided that such increase in Base Rent shall not take effect if Landlord and Tenant are negotiating in good faith for a renewal of this Lease.

25. <u>"For Rent" Signs</u>. Tenant hereby permits Landlord during the last ninety (90) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in

size, on the parking lot of the Premises. Tenant will also allow Landlord or its agents, upon prior written notice, which may be given by telecopier, and accompanied by a representative of Tenant designated by Tenant, or unescorted if a representative is not available within twenty-four (24) hours or Tenant's notice, to show the Premises, exterior and interior, to prospective tenants, purchasers, or mortgagees during reasonable business hours, provided such visit does not interfere with the conduct of Tenant's business.

26. Force Majeure. Except as otherwise specifically contemplated in this Lease or in paragraph 4 of the Construction Provisions, in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay; provided, however, that in connection with the construction of the Improvements, the consequences of delays by the other party shall be governed by paragraph 4 of the Construction Provisions. A Force Majeure will not relieve Tenant of its obligations to pay Base Rent or its other monetary obligations hereunder when due.

27. Events of Tenant's Default. Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease:

   (a) Failure to Pay Rent; Breach. (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Base Rent and Real Estate Taxes) (subject to Tenant's right of good faith contest), within ten (10) days after written notice from Landlord to Tenant that same is overdue; or (ii) Tenant's failure to observe or perform any other material

provision of this Lease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances. Tenant's failure to pay Base Rent or any other monetary obligation hereunder within ten (10) days of Landlord's written notice that same is overdue shall result in a late charge in the amount of five percent (5%) of the amount of such overdue payment.

(b) Bankruptcy. Tenant's filing of a voluntary petition in bankruptcy, if not dismissed in sixty (60) days after initiation of the proceedings, or the filing of an involuntary petition or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, any of which is not dismissed within one hundred twenty (120) days after initiation of the proceeding.

28. Landlord's Remedies. After the occurrence of an Event of Default by Tenant, Landlord shall have the right to exercise the following remedies:

(a) Continue Lease. Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Base Rent and other charges when due, including any sums due for any Option Period for which a Renewal Option has been exercised. In the alternative, Landlord shall have the right to peaceably re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this

Lease, to relet the Premises, or any part thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums shall not be realized or secured, in Landlord's exercise of reasonable efforts to mitigate its damages (which Landlord hereby agrees to make), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

    (b) <u>Terminate Lease</u>. Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than twenty (20) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following:

    (i) The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

    (ii) The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which

would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has received in mitigation if relet, or the reasonable rental value of the Premises, discounted to present value in the manner provided for in the following paragraph.

As used in this paragraph 28(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at an accrual rate equal to the Default Rate for past due obligations, and a discount rate to net present value of two times (2x's) the average CPI-U increase for the geographical area in which the Premises is located during each year of the Term prior to the year of default, on the amount of the obligations payable on the date of such calculation. In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings. Landlord shall never be entitled to dispossess the Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

(c) <u>Reimbursement of Landlord's Costs in Exercising Remedies</u>. Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable actual and consequential damages, expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation attorneys' fees), provided that any consequential damages, expenses, commissions and charges are related to the Premises only and not to any other real property or unrelated interest of Landlord and Tenant is provided with a reasonably detailed itemization of such items, and provided further that in no event shall Tenant be obligated to compensate Landlord for any