speculative or consequential damages, except as provided above, caused by Tenant's failure to perform its obligations under this Lease.

(d)  <u>Remedies Are Cumulative</u>.  The various rights and remedies reserved to Landlord herein, are cumulative, and Landlord may pursue any and all such rights and remedies (but no others), whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease). Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

29.  <u>Events of Landlord's Default; Tenant's Remedies</u>.  Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default": (a) Landlord's failure to make any payments of money due Tenant hereunder within ten (10) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate); or (b) Landlord's failure to perform any nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances.

Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which

it may have at law and/or in equity, and without its actions being
deemed an election of remedies or a cure of Landlord's default,
Tenant may pay or perform such obligations and offset Tenant's
reasonable and actual cost of performance, including any and all
transaction costs and attorneys' fees, plus interest at the Default
Rate, against the Base Rent and any and all other amounts and
charges due Landlord hereunder.  If Landlord fails to pay Tenant
the Tenant Improvement Allowance in a timely manner, Tenant shall
be entitled to the rights and remedies set forth in the
Construction Provisions in addition to those provided herein; and,
as to a breach of the warranties and representations contained in
paragraph 17, Tenant shall be entitled to the remedies provided
therein, in addition to those remedies provided herein.  All
amounts, including interest, transaction costs and attorneys' fees,
arising out of uncured defaults of Landlord shall constitute liens
against Landlord's interest in the Premises, which may be enforced
by non-judicial means available under State law, or any other
applicable proceedings.  The various rights and remedies reserved
to Tenant herein are cumulative, and Tenant may pursue any and all
rights and remedies, whether at the same time or otherwise.

    30.  <u>Waiver</u>.  If either Landlord or Tenant fails to insist on
the strict observance by the other of any provisions of this Lease,
neither shall thereby be precluded from enforcing nor be held to
have waived any of the obligations, past, present or future, of
this Lease.  Either party may accept late payment or performance by
the other without waiving any Event of Default which may then have
accrued.

    31.  <u>Compliance with Recorded Instruments and Applicable Laws</u>.
During the Term, Landlord and Tenant shall comply with the terms
and conditions of all of the Permitted Encumbrances set forth on
<u>Exhibit "F"</u> attached hereto and with all lawful requirements of the
local, county and state health boards, police and fire departments,
municipal and state authorities and any other governmental
authorities with jurisdiction over the Improvements, and of the
board of fire underwriters, respecting Tenant's use and occupancy

of the Improvements. In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent. In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and deduct the reasonable cost thereof plus interest at the Default Rate from Landlord with the next installment or installments of Base Rent.

32. <u>Notices</u>. Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

If to Tenant:          CIRCUIT CITY STORES, INC.
                       9950 Mayland Drive
                       Richmond, Virginia 23233
                       Attention:  Corporate Secretary

with a copy to:        CIRCUIT CITY STORES, INC.
                       9950 Mayland Drive
                       Richmond, Virginia 23233
                       Attention:  Vice President of Real Estate

If to Landlord:      CENTRES VENTURES MADISON·EAST, LTD.
                     3315 North 124th Street, Suite E
                     Brookfield, Wisconsin 53005
                     Attention:  Michelle Nennig

or to such other addressees as any party hereto shall from time to
time give notice to the other party in accordance with this
paragraph.

    33.  <u>Brokers</u>.   Landlord and Tenant each covenant that they
have not dealt with any real estate broker or finder with respect
to this Lease, except for Koll/Bradford, which shall be paid a
commission by Landlord pursuant to their separate written
agreement. Except for the foregoing, each party shall hold the
other party harmless from all damages, claims, liabilities or
expenses, including reasonable and actual attorneys' fees (through
all levels of proceedings), resulting from any claims that may be
asserted against the other party by any real estate broker or
finder with whom the indemnifying party either has or is purported
to have dealt.

    34.  <u>Miscellaneous</u>.

        (a)  <u>Headings and Gender</u>. All paragraph headings, titles
or captions contained in this Lease are for convenience only and
shall not be deemed a part of this Lease and shall not in any way
limit or amplify the terms and provisions of this Lease.  The
masculine, feminine or neuter gender and the singular or plural
number shall be deemed to include the others whenever the context
so requires or indicates.

        (b)  <u>Construction</u>. The parties hereto agree that all the
provisions hereof are to be construed as covenants and agreements
as though the words importing such covenants and agreements were
used in each separate paragraph hereof.

        (c)  <u>Waiver of Jury Trial</u>. Landlord and Tenant mutually,
expressly, irrevocably and unconditionally waive trial by jury for
any proceedings arising out of or in connection with this Lease, or
any conduct or course of dealing of the parties, statements
(whether oral or written) or actions of any person.  This waiver is
a material inducement to Landlord to enter into this Lease.

(d)  Relationship of Landlord-Tenant.  Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e)  Entire Agreement; Merger.  This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein.  This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f)  Attorneys' Fees.  In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g)  Partial Invalidity.  If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h)  Consents.  Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on

which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i) Holidays. If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j) Applicable Law. This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

(k) Successors and Assigns. All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l) Counterparts. This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m) Trademarks and Trade Names. All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

35. Effectiveness of Lease; Tenant's Right to Terminate. Notwithstanding the execution of this Lease or any provision hereof to the contrary, the parties hereto agree that the effectiveness of this Lease is expressly conditioned upon the complete satisfaction (or waiver) of each and all of the following conditions:

(a) The Premises shall be properly subdivided, in conformity with all applicable laws and zoning ordinances so as to permit (A) the development and operation of the Premises in accordance with the provisions of this Lease; and (B) the initial use of the Premises described in paragraph 18 of this Lease, as of the date of delivery of Tenant's Pad Area (as defined in the Construction Provisions).

(b) Landlord shall have acquired title to the real estate of which the Land is a part within seven (7) days of the execution of this Lease.

The existence of the foregoing conditions is solely for the benefit of Tenant, and Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition(s) being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of one or more of the foregoing conditions. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 12(i) and 17(d) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord.

36. <u>Confidentiality</u>. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of this transaction. This confidentiality agreement extends to any developers, bankers, lawyers, accountants, employees, agents or any other persons acting on behalf of the parties hereto. The parties hereto agree to use their best reasonable efforts to avoid discussing with, or disclosing to, any third parties (except those parties listed above) any of the terms, conditions or particulars in connection with this transaction. It is specifically agreed by way of illustration, but not by limitation, that the covenant of

confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any governmental law or ordinance, but this covenant of confidentiality shall be breached if Landlord, or any of Landlord's developers, bankers, accountants, agents, lenders, lawyers or other similar parties, discloses the content of, or delivers a copy of this Lease to, any third party without the express written consent of all parties to this Lease.    Any breach of this confidentiality agreement shall constitute an Event of Default under the terms and provisions of this Lease.

WITNESS the following signatures and seals:

ATTEST (WITNESS):

CENTRES VENTURES MADISON EAST, LTD.
a Florida limited partnership

By:
Name:
Title:

ATTEST:

Its: Assistant Secretary

TENANT

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:
Name: BENJAMIN B. CUMMINGS JR.
Title: VP.

AMENDMENT TO LEASE

THIS AMENDMENT TO LEASE is entered into by and between GMPA TRUST, as Landlord, and CIRCUIT CITY STORES, INC., as Tenant.

WHEREAS, Tenant and the predecessor to Landlord (Centres Ventures Madison East, Ltd.) entered into a lease dated as of October 18, 1995 (the "Lease") with respect to certain property located in Madison, Wisconsin, which property is more particularly described in the Lease (the "Property"): and

WHEREAS, the City of Madison intends to take by eminent domain a portion of the Property for the purpose of constructing a highway ramp; and

WHEREAS, Landlord and Tenant have agreed upon the distribution of proceeds of the condemnation and have agreed to modify the Lease to delete from the property description attached to the Lease that portion of the Property being transferred in fee to the City of Madison.

NOW THEREFORE, in consideration of the premises and the agreements contained herein, Landlord and Tenant agree as follows:

1.      The Lease is amended to add to Exhibit A-1 the following:

"Excluding therefrom the following described property:

Beginning at the Southeast corner of Lot 1 of Certified Survey Map No. 9526, recorded in Volume 54 on Pages 214 to 219; thence South 62°50'10" West 42.49 feet along the south line of said Lot 2 to the beginning of a 11,257.16 foot radius non-tangent curve to the right, whose chord bears South 18°10'11" East, 108.97 feet; thence southerly along the arc of said curve, 108.97 feet to a point of non-tangency; thence South 27°44'48" East, 231.91 feet to the westerly line of Interstate Highway 39/90/94 and to a point on a 11,299.16 foot radius non-tangent curve to the left, whose chord bears North 17°36'24" West, 344.31 feet, thence northerly along the arc of said curve and along said westerly line, 344.32 feet to the point of beginning. This parcel contains 0.22 acres, more or less."

2.      Landlord and Tenant acknowledge that there will also be a temporary taking for the purpose of construction, grading and sloping as set forth in the form of deed attached hereto as Exhibit A. It is understood by the parties that the City of Madison, upon completion of the construction work, shall restore and stabilize the temporary limited easement area in a manner satisfactory to each.

1

3.    Landlord and Tenant agree that the proceeds from said taking shall be disbursed as follows:

      a. Fee Acquisition ($77,014) to Landlord (or its mortgagee)
      b. Temporary Limited Easement ($2,300) to Tenant
      c. Retaining Wall ($6,750) to Tenant
      d. Landscaping ($5,750) to Tenant

4.    This Amendment to Lease may be executed in counterparts.

5.    All other terms of the Lease not modified herein shall remain in full force and effect.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Amendment to Lease as of the date set beneath each signature.

GMPA TRUST

By:_____

Name: _Andrew Panteleakis_____
Title:_____
Date:__1/04/04_____

CIRCUIT CITY STORES, INC.

By:_____

Name:_____
Title:_____
Date:_____

2

3.    Landlord and Tenant agree that the proceeds from said taking shall be disbursed as follows:

      a.  Fee Acquisition ($77,014) to Landlord (or its mortgagee)
      b.  Temporary Limited Easement ($2,300) to Tenant
      c.  Retaining Wall ($6,750) to Tenant
      d.  Landscaping ($5,750) to Tenant

4.    This Amendment to Lease may be executed in counterparts.

5.    All other terms of the Lease not modified herein shall remain in full force and effect.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Amendment to Lease as of the date set beneath each signature.

GMPA TRUST

By:_____

Name:_____
Title:_____
Date:_____

CIRCUIT CITY STORES, INC.

By:_____

R. BRUCE LUCAS

Name:_____
          Vice President Construction/Real Estate
Title:_____
Date:_____

2

**EXHIBIT "A-1"**

That part of Lot Four (4), Certified Survey map No. 7472, recorded
in the office of the Register of Deeds for Dane County, Wisconsin,
on June 9, 1994, in Volume 38 of Certified Survey Maps, pages 268-
271, as Document No. 2608355, being a part of the Northwest 1/4 and
Southwest 1/4 of the Northeast 1/4, the Northwest 1/4 and Southwest
1/4 of the Southeast 1/4, the Northeast 1/4 of the Southwest 1/4
and the Southeast 1/4 of the Northwest 1/4 of Section 27, Township
8 North, Range 10 East, in the City of Madison, Dane County,
Wisconsin, bounded and described as follows:

Beginning at the Southwesterly corner of said Lot 4; thence North
46°10'20" West along the West line of said Lot 4 aforesaid 260.00
feet to a point; thence North 43°49'40" East 80.15 feet to a point,
thence North 50°05'35" East 436.46 feet to a point; thence North
62°49'38" East 235.00 feet to a point on the East line of said Lot
4; thence Southeasterly 354.41 feet along said East line and the
arc of a curve whose center lies to the Southwest, whose radius is
11299.20 feet and whose chord bears South 17°38'00" East 354.40
feet to a point, thence South 62°49'38" West 539.00 feet to a
point; thence South 43°49'40" West 57.25 feet to the point of
beginning.

1

## EXHIBIT "A"

SITE PLAN

4342\circuit\easttown\lease.007

## EXHIBIT "A"

SITE PLAN

4342\circuit\easttown\lease.007

## EXHIBIT "A-1"

That part of Lot Four (4), Certified Survey map No. 7472, recorded
in the office of the Register of Deeds for Dane County, Wisconsin,
on June 9, 1994, in Volume 38 of Certified Survey Maps, pages 268-
271, as Document No. 2608355, being a part of the Northwest 1/4 and
Southwest 1/4 of the Northeast 1/4, the Northwest 1/4 and Southwest
1/4 of the Southeast 1/4, the Northeast 1/4 of the Southwest 1/4
and the Southeast 1/4 of the Northwest 1/4 of Section 27, Township
8 North, Range 10 East, in the City of Madison, Dane County,
Wisconsin, bounded and described as follows:

Beginning at the Southwesterly corner of said Lot 4; thence North
46°10'20" West along the West line of said Lot 4 aforesaid 260.00
feet to a point; thence North 43°49'40" East 80.15 feet to a point,
thence North 50°05'35" East 436.46 feet to a point; thence North
62°49'38" East 235.00 feet to a point on the East line of said Lot
4; thence Southeasterly 354.41 feet along said East line and the
arc of a curve whose center lies to the Southwest, whose radius is
11299.20 feet and whose chord bears South 17°38'00" East 354.40
feet to a point, thence South 62°49'38" West 539.00 feet to a
point; thence South 43°49'40" West 57.25 feet to the point of
beginning.