EXHIBIT "B"

INDEX OF DEFINITIONS

| Term | Paragraph where defined |
|---|---|
| Assessment(s) | Ex. "C", para. 1(a) |
| Base Rent | 4(a) |
| Building | 2 |
| City | 1 |
| Commencement Date | 4 |
| Construction Term | 3 |
| CPI-U | 4(a)(iii) |
| Date of Taking | 14(a) |
| Default Rate | 7(b) |
| Delivery of the Land | Ex. "C", para. 1(b) |
| Event of Default (Landlord) | 29 |
| Event of Default (Tenant) | 27 |
| Foreclosure | 20(a) |
| Grading Plans | Ex. "C", para. 1(b) |
| Ground Lessor | 19(a) |
| Hazardous Materials | 17(d) |
| Hazardous Substances | Ex. "C", para.1(a) |
| Improvements | 2 |
| Land | 1 |
| Landlord | Introduction |
| Landlord's Premises | 1 |
| Landlord Work | Ex. "C", para. 1(d) |
| Lease Year | 3 |
| Main Term | 3 |
| Modified Proctor | Ex. "C", para. 2(a) |
| Mortgage | 19(a) |
| Mortgagee | 19(a) |
| Option Periods | 3 |
| Other Improvements | 2 |
| Permitted Encumbrances | Ex. "F" |

1                                            4342\circuit\easttown\lease.007

| | |
|---|---|
| Person | 18 |
| Personalty | 21 |
| Plans and Specifications | Ex. "C", para. 2(b) |
| Premises | 1 |
| Real Estate Taxes | 7(a) |
| Renewal Option | 3 |
| Schematic Floor Plan and Elevation | Ex. "C", para. 2(b) |
| Site Work | Ex. "C", para. 1(b) |
| Site Plan | 1 |
| Soils Report | Ex. "C", para 1(b) |
| Staging Area | 6(a) |
| State | 1 |
| Substantial Completion | Ex. "C", para. 2(e) |
| Substantially All of the Premises | 14(a) |
| Successor | 20 |
| Taking | 14(a) |
| Tax Parcel | 7(b) |
| Tenant | Introduction |
| Tenant Improvement Allowance | Ex. "C", para. 3 |
| Term | 3 |
| Transfer | 15 |
| Utility and Drainage Plan | Ex. "C", para. 1(c) |
| Worth at the time of the award | 28(b) |

EAST TOWNE, MADISON, WISCONSIN
EXHIBIT "C"
CONSTRUCTION PROVISIONS

THESE CONSTRUCTION PROVISIONS (herein so called) are hereby made a part of the Lease between Landlord and Tenant to which these Construction Provisions are attached as Exhibit "C". All defined terms shall have the meanings attributed to them in the Lease unless otherwise specifically defined in these Construction Provisions.

1. Landlord's Delivery of the Land; Other Landlord Work. All of the work set forth in subparagraphs (a), (b) and (c) below is, collectively, the "Landlord Work":

(a) Hazardous Substances. Landlord shall deliver the Land to Tenant free of any pollution or contamination from toxic or hazardous substances, asbestos or any other chemicals or substances in amounts which exceed standards for public health or welfare as established and regulated by any local governmental authority, the State or the United States Government (herein collectively referred to as "Hazardous Substances"). Landlord hereby grants Tenant and its agent access to the Land to enable Tenant to conduct such soil and environmental tests as its deems necessary.

Tenant, at its sole cost and expense, shall provide a copy of Tenant's environmental site assessment(s) (the "Assessment(s)") of the Premises, prepared by a qualified third-party environmental engineer, in the form commonly known as a "Phase I" or "Phase II" assessment, as appropriate, including a concise presentation of all information gathered during the investigation and organized in a logical progression, as well as a description of the methodology used by the preparer. The Assessment shall summarize the significant findings and shall identify and evaluate actual and potential environmental impairment, risks and liabilities.

(b) Site Work. Landlord, at its sole cost and expense, shall: (i) verify its proposed development of the Land and compliance of its civil engineering plans with Tenant's geotechnical evaluation of the Land dated July 15, 1995 and prepared by STS Consultants (the "Soils Report") with the "Scope of

1                                              4342\circuit\easttown\lease.007

Geotechnical Evaluation" shown on <u>Attachment "2"</u> attached hereto; (ii) cause the Land to be free and clear of any known or unknown (which, but for Landlord's failure to discover same, should be removed prior to delivery of the Land to Tenant) obstructions, foundations, footings, utilities, easements, improvements and tenancies; (iii) complete grading of the Land and the Common Areas in accordance with the Soils Report and the "Standards for Grading Work" attached hereto as <u>Attachment "3"</u>, and with the final plans prepared by the civil engineer approved by Tenant (the "Grading Plans"), which Grading Plans are described on <u>Attachment "4"</u> hereto, and which are subject to Tenant's written approval, which approval shall not be unreasonably withheld or delayed; (iv) completion of Tenant's building pad strictly in accordance with Tenant's geotechnical report; (v) obtain approvals for all curbcuts indicated on the Grading Plans and all on and off-site permits required for any work to be performed by Landlord necessary to develop the Land which permits may be a prerequisite for issuance of Tenant's building permit; (vi) complete (A) all curbcuts for Tenant's Preferred Area, (B) the Staging Area, which shall be either paved or stone, and (C) an all-weather construction access road to the Land, and along the perimeter of the Land to and around the Building perimeter, no less than twenty-four (24) feet in width, connecting the existing dedicated roadway adjacent to the Land with the Tenant's Pad Area, all in accordance with the Grading Plans; (vii) obtain site plan approval and conditional use approval, if any, from governmental authorities having jurisdiction over the Land, permitting Tenant's construction of the Premises (subject to issuance of Tenant's building permit); and (viii) cause a 40-foot grading easement to be granted benefitting the Premises in a location satisfactory to Tenant. All of the work described in (i) through (viii) above is, collectively, the "Site Work". No changes shall be made to any of the Site Work, including but not limited to any plans and specifications therefor, without Tenant's prior written consent. The Site Work shall be performed in accordance with the construction schedule attached hereto as <u>Attachment "5"</u> (sometimes referred to herein as the "Construction Schedule"). Landlord specifically covenants and agrees that any

problems or delays it encounters in grading the Premises in satisfaction of the Site Work requirements set forth above in connection with the condition of the soils, including environmental or hazardous waste issues, subsidence sinking, surface waters, subsurface waters, unforeseen site conditions or the like shall be its sole responsibility, shall not cause a force majeure delay, and in no event shall the cost associated with such problems or conditions be passed on to Tenant in any manner.

Landlord will maintain the construction access road in good condition throughout the construction of the Common Areas. If the items of Site Work to be performed on the Land are completed earlier than forty-five (45) days prior to Tenant's scheduled commencement of construction of the Improvements (as provided below), the Land shall be overbuilt and sloped to drain and, within such forty-five (45) day period, shall be regraded and recompacted.

Subject to force majeure, Landlord covenants and agrees to complete, at its sole cost and expense, each item of the Site Work and to provide temporary utilities to within fifty (50) feet of the building pad at Tenant's designated points of entry as set forth in the Plans and Specifications, as contemplated in paragraph 1(c) below, and temporary telephone service to the Premises and the Staging Area, in accordance with the dates established therefor in Attachment "5", to the end that promptly upon completion of such requirements (collectively "delivery of the Land"), Tenant shall be able, subject to issuance of its building permit and matters within Tenant's control, to commence construction of the Improvements.

Landlord acknowledges that Tenant's ability to obtain a building permit for its construction may be delayed due to the failure by Landlord to obtain necessary approvals or permits or to pay necessary fees for its construction and development of the Premises. Landlord agrees that delivery of the Land shall not be deemed to have occurred until all such aforesaid approvals and permits shall have been obtained and all such fees, including but not limited to impact fees and assessments, shall have been paid, if and to the extent that such approvals, permits and fees for Landlord's construction shall be prerequisites to the issuance of Tenant's building permit. Landlord agrees to keep Tenant advised

3                                    4342\circuit\easttown\lease.007

in writing on a monthly basis as to Landlord's progress in completing the Site Work. Upon the delivery of the Land, Landlord shall certify to Tenant that all elements of the Site Work have been completed in the form of the Site Work Certificate attached hereto as <u>Attachment "6"</u>.

Should the Site Work require minor adjustments in order to be in accordance with <u>Attachments "3"</u> and/or <u>"4"</u>, Tenant may direct its contractor to make such adjustments, the total cost of which shall be reimbursed by Landlord to Tenant upon demand in a sum not to exceed Five Thousand Dollars ($5,000.00).

(c) <u>Paving, Lighting, Utilities, Landscaping and Drainage</u>. Landlord, at its sole cost and expense, and in accordance with <u>Attachment "5"</u>, shall cause a contractor licensed in the State to complete (i) installation of temporary utilities, as described in the "Utilities Specifications" attached hereto as <u>Attachment "7"</u>; (ii) the construction and installation within five (5) feet of the Building, of permanent telephone service and permanent utilities, including but not limited to gas, electric, domestic water and fire water (in size sufficient to satisfy local fire codes), each at Tenant's required entry points shown in the "Utility and Drainage Plan" described on <u>Attachment "8"</u> hereto (the "Utility and Drainage Plan"), at depths adequate for Tenant's tie-in without additional cost above that contemplated by the "Plans and Specifications" (as defined in paragraph 2(b) below); (iii) the construction and installation of the storm water drainage system at Tenant's required location shown on the Utility and Drainage Plan; (iv) the construction and installation of paving (including heavy-duty paving), and curbing for parking areas (including sidewalk curb in front of the Building), vehicular access and service roads, and driveways, in accordance with the "Paving Specifications" attached hereto as <u>Attachment "9"</u>; (v) the completion of landscaping in accordance with Landlord's governmentally approved landscaping plan; and (vi) the construction and installation of lighting to standards no less than those set forth in the "Shopping Center Lighting Specifications" attached hereto as <u>Attachment "10"</u>, all no later than the dates established therefor in <u>Attachment "5"</u>.

(d) <u>Landlord Work</u>. All of the work described to be performed by Landlord in this paragraph 1 is collectively referred to as the "Landlord Work". All Landlord Work shall be performed in accordance with all applicable laws and this Lease, in a good and workmanlike manner, as appropriate by engineers, surveyors, architects and consultants, who are bondable, licensed in the State and of good reputation. Landlord's general contractor shall be experienced in shopping center development and in phasing and coordinating construction schedules with major anchors and national retailers. In the event that Landlord defaults at any time in completion of any component of the Landlord Work, Tenant shall have the right, but not the obligation, to perform at Landlord's sole cost and expense, all or any part of Landlord Work. Tenant shall exercise this right by providing Landlord and its general contractor with ten (10) days' written notice thereof, which notice shall reasonably detail those portions of the Landlord Work which Tenant elects to complete. Tenant may exercise the rights set forth in this paragraph 1(d) from time to time so long as Tenant provides Landlord notice specified herein (i) within a reasonable amount of time prior to the date upon which Landlord would otherwise commence that portion of the Landlord Work, or (ii) at such other time where it is feasible for Tenant to take over that portion of the Landlord Work from Landlord. In the event and to the extent that Tenant exercises its right hereunder, Landlord agrees to cooperate in good faith and provide Tenant with reasonable assistance so that Tenant can complete said portions of the Landlord Work. Landlord agrees to reimburse Tenant for any and all costs incurred by Tenant in connection with any portion of the Landlord Work which Tenant is in the process of completing within five (5) days after receipt of written request from Tenant, which request shall be reasonably supported by invoices and/or written description of the Landlord Work performed. In the event that the Landlord does not timely reimburse Tenant as hereinabove contemplated, Tenant shall be entitled to deduct the costs of such Landlord Work from rentals and other payments due under the Lease, together with interest at the Default Rate from the date of expenditure by Tenant until paid in full.

2. <u>Tenant Improvements</u>.

(a) <u>Building Construction</u>. Upon completion of all requirements therefor, Landlord shall give Tenant written notice (which shall include any required certifications, including but not limited to those required by <u>Attachment "3"</u>) of delivery of the Tenant's Pad Area in the form of <u>Attachment "6"</u>. Tenant shall promptly notify Landlord if any such requirement has not been met to Tenant's reasonable satisfaction, provided the Tenant does not elect its self-help remedies set forth in this Lease. Upon completion of any such previously unmet requirements, Tenant shall promptly commence and pursue to completion with due diligence the construction of the Improvements. The construction work on the Improvements shall be performed by a duly licensed contractor chosen by Tenant, shall be done in a good and workmanlike manner, in compliance with all applicable laws and in substantial accordance with the "Plans and Specifications" (defined below). Provided that the Tenant's Pad Area and the Site Work is delivered on or before the dates set forth on <u>Attachment "5"</u>, Tenant covenants and agrees to use reasonable efforts and due diligence to achieve "Substantial Completion" (as defined below) on or before the date which is seven (7) months thereafter.

(b) <u>Plans and Specifications</u>. Tenant shall prepare and furnish to Landlord for its approval, not to be unreasonably withheld, conditioned or delayed, complete architectural drawings and specifications and building elevations (the "Plans and Specifications") for the construction of the Building and Other Improvements, incorporating therein the items specified and shown in the "Schematic Floor Plan and Elevation" (which are hereby approved by Landlord) attached hereto as <u>Attachment "11"</u>. Landlord agrees that it will approve the Plans and Specifications, so long as they are materially consistent with the Schematic Floor Plan and Elevation, within ten (10) business days after receipt thereof. If the Plans and Specifications are not disapproved by Landlord within fifteen (15) days of delivery thereof to Landlord, they will be deemed approved. The Plans and Specifications shall not be substantially changed by Tenant without the prior written consent of the Landlord, which consent shall not be unreasonably withheld,

6                                            4342\circuit\easttown\lease.007

conditioned or delayed. Tenant agrees to provide Landlord with two (2) copies of Tenant's final "as-built" Plans and Specifications within thirty (30) days of Tenant's opening for business in the Premises.

(c) **Permits**. Tenant, at its sole cost and expense, shall obtain or cause to be obtained those certain building permits, licenses, other governmental approvals and temporary and permanent certificates of occupancy which may be required for the lawful construction and occupancy of the Premises as a retail shopping facility in accordance with the Plans and Specifications. Landlord agrees to assist and cooperate fully with Tenant in obtaining such permits, licenses, approvals and certificates. Landlord shall be responsible for any other permits necessary for the development of the Land.

(d) **Landlord Inspections**. During the course of construction of the Improvements, Landlord may, at its own risk and in cooperation with Tenant's contractor, enter upon the Land for purposes of inspecting the work, provided that such inspections shall not interfere with Tenant's construction.

(e) **Substantial Completion**. Substantial completion of the Improvements ("Substantial Completion") shall be deemed to occur when Tenant's architect has provided written certification that the Improvements have been completed substantially in accordance with the Plans and Specifications and a certificate of occupancy, whether temporary and subject to minor items to be completed, or permanent, as the case may be, has been issued by the applicable governmental authority. The foregoing shall not be deemed to relieve Tenant of its responsibility to complete the Improvements in accordance with the Plans and Specifications.

3. **Costs**. Upon Substantial Completion and Tenant's furnishing to Landlord (i) the certificates of insurance required under paragraph 14 of the Lease, (ii) an indemnity in the form of **Exhibit "J"** attached hereto against any exception in Landlord's or its Mortgagee's policy of title insurance with respect to mechanics' liens arising out of Tenant's construction, and (iii) if requested by Landlord, confirmation from Tenant that Landlord holds title to the Improvements (in form reasonably acceptable to Landlord and

7                                                    4342\circuit\easttown\lease.007

Tenant), Landlord shall pay to Tenant a "Tenant Improvement Allowance" in an amount equal to One Million Nine Hundred Thousand Five Hundred Forty-eight and 00/100 Dollars ($1,900,548.00), payable by wire transfer of funds by Landlord to Tenant's account no later than thirty (30) days after Substantial Completion. If Landlord fails to pay the Tenant Improvement Allowance in full within thirty (30) days after Substantial Completion and receipt of items (i), (ii) and (iii) above, the Landlord shall be in default hereunder, no Base Rent or CAM Charges shall be due or owing to Landlord until the same is paid to Tenant, and interest shall accrue on the unpaid Tenant Improvement Allowance at the Default Rate commencing on the thirty-first (31st) day following Substantial Completion until the date of payment of the Tenant Improvement Allowance; provided, however, that if Landlord has not tendered payment of the Tenant Improvement Allowance by that date which is one (1) year from Substantial Completion (the "Substantial Completion Anniversary"), then (i) such date shall become the Commencement Date; (ii) Base Rent shall be reduced to ground rent equal to Seventy-Five Thousand and No/100 Dollars ($75,000.00) per annum during the first year following the Substantial Completion Anniversary, Fifty Thousand and No/100 Dollars ($50,000.00) per annum during the second year following the Substantial Completion Anniversary, and Twenty-Five Thousand and No/100 Dollars ($25,000.00) per annum thereafter during the Term of the Lease; and (iii) this Lease shall be converted to a ground lease, with ownership of the Improvements remaining with Tenant, and Landlord's and any Mortgagees' names being removed as additional insureds or mortgagees on any casualty insurance described in paragraph 14(a) of the Lease. Landlord and Tenant covenant and agree that upon the reasonable written request of either the Tenant or Landlord, the Landlord and Tenant shall execute such documentation as necessary to formalize the conversion of this Lease to a ground lease upon the Substantial Completion Anniversary.

    4. <u>Construction Delays</u>.

        (a) <u>Delays by Landlord</u>. In the event, subject to force majeure (excluding winter conditions), Landlord shall fail to complete the Site Work and accomplish delivery of the Tenant's Pad

Area in the condition specified by October 15, 1995 and the balance of the Site Work (excluding landscaping provided Tenant shall be able to obtain at least a temporary certificate of occupancy upon Landlord's providing the applicable governmental entity with a satisfactory letter of credit to secure the completion of the landscaping) by December 31, 1995, Landlord agrees that it shall reimburse Tenant for its fixed and ascertainable costs incurred as a result thereof in the exercise of all reasonable efforts to open for business by April 30, 1996. Such costs shall be limited to Tenant's out-of-pocket expenses of construction overtime, acceleration charges and bonuses paid to Tenant's contractors or subcontractors, charges for the scheduling of construction crews on days on which work cannot be performed due to the delays by Landlord and construction period interest charges actually incurred to the extent that such charges exceed those which would have accrued without such delay.

In the event, subject to force majeure (excluding winter conditions), Landlord shall fail to complete the preparation of Tenant's Pad Area in the condition specified on <u>Attachment "3"</u> hereto, but such failure only requires that minor adjustments be made to Tenant's Pad Area for completion, Landlord either (i) shall promptly make such adjustments or (ii) agrees that Tenant may upon written notice to Landlord, which notice may be given prior to or at any time after the applicable date for performance, in addition to any other rights and remedies set forth herein, enter the Land and perform such minor adjustments, and Landlord shall reimburse Tenant for its reasonable and actual costs thereof, including interest on such costs at the Default Rate, in an amount not to exceed $5,000.00.

In the event, subject to force majeure (excluding winter conditions), Landlord shall fail to accomplish any other element of the delivery of the Land by the date which is fifteen (15) days following the date Landlord should have delivered the Land, or to complete any element of the Landlord Work by the completion date established therefor in <u>Attachment "5"</u>, Tenant, at its option and upon ten (10) days' prior written notice to Landlord, which notice may be given prior to or at any time after the applicable date for

performance, may in addition to any other rights and remedies set forth herein, enter the Land and perform any task required for delivery of the Land or, as applicable, any element of the Landlord Work which has not been timely completed, and Landlord shall reimburse Tenant for its reasonable and actual costs thereof, including interest on such costs at the Default Rate. Landlord hereby grants Tenant the right, as its agent, to directly contact and contract with Landlord's contractors, on behalf of Landlord, to complete such work, all at Landlord's cost and expense. Landlord covenants, upon Tenant's request, to provide Tenant with duplicate sets of all plans, specifications and contracts prepared in connection with Landlord's Work, as well as schedules of all contractors, subcontractors and suppliers. If such costs are not reimbursed to Tenant prior to the Commencement Date, Tenant may offset such amounts against Base Rent and CAM Charges otherwise due until such costs and accrued interest are reimbursed in full.

In the event, for any reason whatsoever and regardless of force majeure, Landlord shall fail to complete delivery of the Land or any element of the Site Work by February 15, 1996, Tenant may elect to delay opening of its store facility for a period not to exceed nine (9) months, during which time Tenant shall pay no Base Rent, Real Estate Taxes or CAM Charges. In such event, Landlord shall deliver the Land and complete the Site Work on the date required by Tenant, and Landlord shall pay to Tenant on demand an amount equal to all costs incurred by Tenant in the development of its store facility, including, but not limited to, costs of materials and all engineering, architectural and legal fees, as compensation to Tenant for the loss of store revenues due to Landlord's delays hereunder.

(b) <u>Delays by Tenant</u>. If, subject to force majeure, Tenant shall fail to commence its construction by that date which is thirty (30) days following delivery of the Tenant's Pad Area, or having commenced, to prosecute diligently such construction to completion, Landlord shall no longer be responsible for the payment of additional costs incurred in the completion of the Site Work due to winter conditions and, in any event, until payment of the Tenant Improvement Allowance, Tenant shall commence payment of Ground Rent

(as hereinafter defined) on the earlier to occur of Tenant's opening for business or April 1, 1996.

In the event, for any reason whatsoever and regardless of force majeure, Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following delivery of the Land, Landlord shall be entitled to terminate this Lease upon sixty (60) days prior written notice to Tenant, during which sixty (60) day period Tenant may cure any such default hereunder.

For purposes hereof, Ground Rent shall equal a ten percent (10%) per annum return to the Landlord on the Landlord's actual costs incurred in the delivery of the Land, including the proportionate amount of land costs, construction costs and carrying costs incurred by the Landlord relating solely to delivery of the Land.

(c) **Miscellaneous**. Notwithstanding the foregoing, a delay by any party in exercising its cure rights or other remedies hereunder shall not be deemed an event of force majeure for purposes of extending the date(s) established for performance by the party whose actions or omissions gave rise to such cure rights or remedies. All sums owing to Tenant under paragraph 1 hereof and/or subparagraph (a) above shall, to the extent applicable, be added to the Tenant Improvement Allowance and paid simultaneously therewith; and, if not so paid, Tenant shall be entitled to offset all such costs, plus interest at the Default Rate, against Base Rent and CAM Charges otherwise due hereunder. All sums owing to Landlord under subparagraph (b) above shall, to the extent applicable and except for Base Rent and CAM Charges, be deducted from the Tenant Improvement Allowance.

Notwithstanding anything contained herein to the contrary, Landlord covenants that it shall complete its construction and delivery obligations in accordance with the "Completion Dates" set forth in the Construction Schedule. In the event that the Landlord fails to complete its construction and delivery obligations in accordance with such Completion Dates, Tenant may, at its sole election, exercise such remedies as are set forth in this **Exhibit "C"** and the Lease.

5. **Attachments**.

11    4342\circuit\easttown\lease.007

"1"  Intentionally Deleted
"2"  Intentionally Deleted
"3"  Standards for Grading Work
"4"  Grading Plans
"5"  Construction Schedule
"6"  Site Work Certification
"7"  Utilities Specifications
"8"  Utility and Drainage Plan
"9"  Paving Specifications
"10" Shopping Center Lighting Specifications
"11" Schematic Floor Plan and Elevation

"1"  Intentionally Deleted
"2"  Intentionally Deleted
"3"  Standards for Grading Work
"4"  Grading Plans
"5"  Construction Schedule
"6"  Site Work Certification
"7"  Utilities Specifications
"8"  Utility and Drainage Plan
"9"  Paving Specifications
"10" Shopping Center Lighting Specifications
"11" Schematic Floor Plan and Elevation

## Attachment "1"

Intentionally Deleted