





SECTION SIGNS E & F

CIRCUIT CITY
STORES INC.
9950 MAYLAND DRIVE
RICHMOND VA. 23233

Customer Pick-Up
NON-ELECTRIC.

SIGN E LAYOUT

CIRCUIT CITY
Car Stereo Installation
NON-ELECTRIC.

SIGN F LAYOUT

SIGNS E & F
MANUFACTURE TWO (2) SINGLE FACED NON ELECTRIC LOZENGE SHAPED BUILDING
MOUNTED SIGNS AS PER OUR DRAWING :

MESSAGES:  SIGN E - (1) 16' X 8'-0" - CUSTOMER PICK-UP
           SIGN F - (1) 30" X 8'-0" - CIRCUIT CITY CAR STEREO INSTALLATION

MATERIALS:
SIGNS FABRICATED OF ALUMINUM OVER ALUMINUM ANGLE SPRAYED BEXICALL RED
#42-214 ON ALL SURFACES.

COPY AND INSET BORDER OF BRUSHED ALUMINUM VINYL.

MOUNT SIGNS ON RESPECTIVE BACKGROUNDS WITH CONCEALED FASTENERS.



**CIRCUIT CITY STORES INC.**
9950 MAYLAND DRIVE
RICHMOND VA. 23233

ALL WIRING AND MATERIALS
USED WILL BE U.L. APPROVED
AND IN ACCORDANCE WITH N.E.C.

SECTION SIGN ⑤

JUNCTION BOX

W/C ALUMINUM INTERIOR WITH .032 SQUARE ALUM.
BACK-UP PLATES

(NOTE: ACCESS MUST BE PROVIDED TO THIS AREA BY OTHERS)

SIGN ⑤ LAYOUT

2½" CROSS ALUMINUM RETAINER BOARD

12'-0"

(8 AMPS)

FACES OF 3/16" #7328 WHITE PLEXIGLAS SUSPENDED FROM TOP TRACK AND WITH CLEAR PLASTIC TRACKS CEMENTED ON FACE TO HOLD (4) LINES OF 10" E-Z CHANGE STANDARD BLACK SOLID BLOCK LETTERS

5'-0"

Note: NOT SHOWN ON ELEVATION DRAWINGS

SIGN G - READER BOARD
MANUFACTURE ONE (1) 5'-0" X 12'-0" SINGLE FACED INTERNALLY ILLUMINATED PLASTIC FACED READER BOARD SIGN TO ACCOMMODATE FOUR (4) LINES OF 10" COPY AS PER OUR DRAWING

MATERIALS:
SIGN CABINET CONSTRUCTED OF INNER ANGLE IRON FRAMING COVERED WITH .063 ALUMINUM AND SPRAYED BRUSHED ALUMINUM #41-342 ON ALL EXTERIOR SURFACES AND WHITE ENAMEL ON INTERIORS.

LIGHTING FROM AN INTERNAL SOURCE OF T-12 DAYLIGHT HIGH OUTPUT FLUORESCENT LAMPS POWERED BY 800 MA BALLASTS.    ALL WIRING AND MATERIALS WILL BE U.L. APPROVED.

FACE OF 3/16" WHITE #7328 PLEXIGLAS SUSPENDED FROM TOP TRACK.  FACE WILL HAVE CLEAR PLASTIC TRACK FOR 10" COPY. (4 ROWS)

MOUNT SIGN FLAT AGAINST ALUCABOND FACIA WITH HARDWARE THROUGH EXPOSED CLIPS.

ELECTRIC TO SIGN LOCATION BY OTHERS.  ONE (1) 20 AMP 120 VOLT CIRCUIT REQUIRED.

ACCESSORIES: ONE (1) 400 FONT OF 10" E-Z CHANGE STANDARD BLOCK STYLE SOLID STROKE BLACK LETTERS, TWO (2) STORAGE CABINETS (300 CAP.), AND ONE (1) 6' TO 10' MECHANICAL HAND.

CIRCUIT CITY
SQUARE FOOTAGE CALCULATIONS


I.    36" CIRCUIT CITY

OPTION A - CALCULATIONS ON EACH OWRD

    3' X 19      57 )
                    ) 90 SQ. FT. PER SET
    3' X 11'     33 )


OPTION B - CALCULATIONS ON FOUR LINES

    7' X 19'     133 SQ. FT.


OPTION C - CALCULATIONS ON EIGHT LINES

    3' X 19'     57 )
                    ) 101 SQ. FT.
    4' X 11'     44 )


OPTION D - CALCULATIONS BASED ON SIZE OF EACH LETTER

    C - 32-1/2 - 8.13 SQ. FT.      C - 32-1/2 - 8.13
    I - 11-1/4 - 2.81             I - 11-1/4 - 2.81
    R - 32     - 7.98            T - 31     - 7.74
    C - 32-1/2 - 8.13            Y - 37-1/2 - 9.38
    U - 32     - 7.98                        -----
    I - 11-1/4 - 2.81                        28.06
    T - 31       7.74
               -----
               45.58
               28.06
               -----
               73.64 SQ. FT. X 2 =

**CIRCUIT CITY**
**SQUARE FOOT CALCULATIONS**

II.    31" CIRCUIT CITY

OPTION A – 31" X 16'    41.28 )
                                     )   69.66 SQ. FT.
              31' X 11'    28.38 )

OPTION B –  6' X 16'                96 SQ. FT.

OPTION C – 31" X 16    41.28 )
                                     )   72.06 SQ. FT.
              41" X 9      30.78 )

CIRCUIT CITY
SQUARE FOOT CALCULATIONS

III.    24" AUDIO VIDEO APPLIANCES

OPTION A - CALCULATIONS ON EACH WORD

| | | | | | |
|---|---|---|---|---|---|
| AUDIO | - 2' X 9'-7" | - | 19.16 SQ. FT. | | |
| VIDEO | - 2' X 9'-8" | - | 19.32 SQ. FT. | | |
| APPLIANCES | - 2' X 19'-4" | - | 38.66 SQ. FT. | _____ | 77.14 SQ. FT. |
| COMPUTERS | 2' X 20' | - | 40. SQ. FT. | | |

--------------
117.14 SQ. FT.

OPTION B - CALCULATIONS ON 4 LINES
W/OUT "COMPUTERS"        2' X 53'        106    SQ. FT.

WITH "COMPUTERS"        2' X 80'-8"    161.32 SQ. FT.

OPTION C - CALLCULATIONS BASED ON SIZE OF EACH LETTER

| A - 22-1/2" | - 3.75 SQ. FT. | A - 22-1/2" | - 3.75 SQ. FT. | C - 22" | - 3.6 SQ. FT. |
|---|---|---|---|---|---|
| U - 19 | - 3.16 | P - 19 | - 3.16 | O - 23 | - 3.84 |
| D - 21 | - 3.5 | P - 19 | - 3.16 | M - 24-1/2 | - 4.08 |
| I - 5 | - .84 | L - 17 | - 2.84 | P - 19 | - 3.16 |
| O - 23 | - 3.84 | I - 5 | - .84 | U - 19 | - 3.17 |
| | | A - 22-1/2 | - 3.75 | T - 20 | - 3.32 |
| V - 22 | - 3.66 | N - 20-1/2 | - 3.4 | E - 18 | - 3. |
| I - 5 | - .84 | C - 22 | - 3.6 | R - 20 | - 3.32 |
| D - 21 | - 3.5 | E - 18 | - 3. | S - 20 | - 3.32 |
| E - 18 | - 3. | S - 20 | - 3.32 | | |
| O - 23 | - 3.84 | | | | |
| | ----- | | ----- | | ----- |
| | 29.93 | | 30.82 | | 30.8 |

-----------------------------------------------------------------
91.55 SQUARE FEET

CIRCUIT CITY
SQUARE FOOT CALCULATIONS

IV.    CUSTOMER PICK-UP

OPTION A - 9" X 4'-0"        3 SQ. FT.

OPTION B - 16" X 8'-0"    10.64 SQ. FT.


CIRCUIT CITY
SQUARE FOOT CALCULATIONS

V.    CIRCUIT CITY CAR STEREO INSTALLATION

OPTION A - 16" X 8'-0"    10.64 SQ. FT. (NO CIRCUIT CITY)

OPTION B - 30" X 8'-0"      20 SQ. FT.


CIRCUIT CITY
SQUARE FOOT CALCULATIONS

VI.    READER BOARD

5'0" X 12'-0"      60 SQ. FT.

## EXHIBIT "F"

### PERMITTED ENCUMBRANCES

1.  The lien of General Taxes for the year 1995 and thereafter.

2.  The lien of any Special Taxes or Assessments not shown on the current status register dated August 31, 1995.

3.  Covenants, Conditions and Restrictions contained in an instrument recorded April 27, 1987 in Volume 9891 of Records, page 64, Document No. 2013034 and as noted on Certified Survey Map No. 7472, to the extent that said instrument applies to the land which is the subject of this Commitment.

4.  Grant of Easement to Madison Gas and Electric Company, recorded May 14, 1982 in Volume 3578 of Records, page 29, as Document No. 1739914 and as shown on Certified Survey Map No. 7472.

5.  Building setback lines as shown on Certified Survey Map No. 7472. Affects: Northeasterly 42 feet.

6.  No vehicular access to Interstate 90-94 as shown on Certified Survey Map No. 7472.

7.  Affidavit of Correction and the terms and conditions thereof and 30 foot wide landscape screening buffer set forth therein, recorded June 16, 1994 in Volume 27720 of Records, page 4, as Document No. 2610014.

8.  Drainage swale requirement as noted on recorded Certified Survey Map.

9.  Note on Certified Survey Map No. 7472 - Elevations given are for property corners at ground level, and shall be maintained by the lot owner.

10. Declaration of Restrictions, recorded January 5, 1995 in Volume 29145 of Records, page 56, as Document No. 2654032.

11. Restrictive Covenants, recorded August 3, 1994 in Volume 38106 of Records, page 71, as Document No. 2622006.

12. Grant of Easement to Madison Gas and Electric Company, recorded October 12, 1994 in Volume 28612 of Records, page 21, as Document No. 2637888.

13. Easement for public utilities and incidental purposes disclosed by Certified Survey Map No. 7472. Affects: Southwesterly 10 feet.

4342\circuit\easttown\lease.007

14. The following matters revealed by Plat of Survey by Donald C. Chaput, R. L. S., dated July 10, 1995.

   A)   Guy wires
   B)   Barbed wire fences

15. Terms and Conditions of the lease in favor of Circuit City Stores, Inc., as lessee.

16. Declaration of Use Restriction between Raymond C. Zeier and Loraine Zeier, to be recorded contemporaneously with and preceding the recordation of the Memorandum of Lease respecting Lease, in the form previously agreed to by Tenant.

17. Easement and Joint Driveway Agreement between Raymond C. Zeier and Loraine A. Zeier and Centres Ventures Madison East, Ltd., to recorded contemporaneously with and preceding recordation of the Memorandum of Lease respecting this Lease, in the form previously agreed to by Tenant.

   Notwithstanding anything contained in this Exhibit "F" to the contrary, nothing contained herein shall be construed to prohibit the exercise of the rights and privileges granted to the Tenant under the Lease, including but not limited to the Tenant's exclusive use rights set forth in paragraph 18 of the Lease.

4342\circuit\easttown\lease.007

## EXHIBIT "G"
### SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

4342\circuit\easttown\lease.007

## SUBORDINATION, NON-DISTURBANCE
## AND ATTORNMENT AGREEMENT

THIS AGREEMENT is made as of the ___ day of September, 1995 between NationsBank of Florida, N.A. (the "Mortgagee"), whose address is NationsBank of Florida, N.A., a national banking association, whose address is P.O. Box 010831, Fl-950-05-01, Miami, Florida 33101-0831, Attention: Real Estate Administration, and Circuit City Stores, Inc. (the "Tenant"), whose address is 9950 ~~Maryland Avenue~~, Richmond, Virginia 23233 .

### RECITALS

A.      The Mortgagee has agreed to make a $4,140,000.00 loan (the "Loan") to Centres Ventures Madison East, Ltd., a Florida limited partnership (the "Mortgagor").

B.      The Loan is secured, in part, by a first mortgage (the "Mortgage") from Mortgagor to Mortgagee encumbering certain land and the improvements, fixtures and personalty located thereon (the "Premises") and is evidenced by and repayable in accordance with a promissory note (the "Note") executed by Mortgagor and made payable to Mortgagee in the face amount of $4,140,000.00 and a construction loan agreement (the "Loan Agreement") between Mortgagor and Mortgagee, which Loan Agreement has a Loan Budget attached thereto.

C.      Pursuant to the Mortgage, the Mortgagor has also assigned to the Mortgagee all of the leases, rents, profits and security deposits affecting or arising in connection with the Premises or any part thereof.

D.      Tenant is a tenant on the Premises pursuant to a lease dated September__, 1995 (the "Lease").

### AGREEMENT

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter contained, the parties hereto do mutually covenant and agree as follows:

1.      The Recitals are true and correct and are made a part hereof.

2.      Tenant hereby agrees that all rights of Tenant under the Lease are and shall at all times continue to be subordinate to the lien of the Mortgage, as said Mortgage may be amended, renewed, increased, modified, consolidated, replaced, or extended.

3.     Mortgagee agrees that during the term of the Lease and any extended term thereof, so long as the Tenant is not in default thereunder beyond the expiration of any applicable grace or cure periods, Tenant's possession of the demised premises (as described in the Lease) shall not be disturbed and Tenant's rights and privileges under the Lease shall not be diminished or interfered with by the Mortgagee upon any proceeding to foreclose the Mortgage, and Mortgagee will not join Tenant as a party defendant in any proceeding to foreclose the Mortgage for the purpose of terminating the Lease.

4.     In the event that, by reason of the foreclosure of the Mortgage for any reason, Mortgagee or any successor or assignee of Mortgagee succeeds to the interest of the Mortgagor under the Lease then upon receipt of notice from the Mortgagee or such successor or assignee that it has succeeded to the rights of the Mortgagor under the Lease, Tenant hereby agrees to recognize Mortgagee or such successor or assignee as Tenant's landlord under the Lease and hereby agrees to attorn to Mortgagee or such successor or assignee.  Said attornment is to be effective and self-operative without the execution of any other instrument immediately upon Mortgagee or any successor or assignee of Mortgagee succeeding to the rights of the Mortgagor under the Lease, and the Lease shall continue in accordance with its terms between Tenant, as tenant, and Mortgagee or any successor or assignee of Mortgagee, as landlord; provided, however, that Mortgagee or any successor or assignee of Mortgagee shall not:  (i) be bound by any prepayment of rent or additional rent, deposit, rental security or any other sums paid to any prior landlord under the Lease including, without limitation, the Mortgagor unless received and receipted for by Mortgagee or its successor or assignee; (ii) be bound by any amendment or modification of the lease made without the consent of Mortgagee or its successor or assignee; (iii) be personally liable under the Lease and Mortgagee's or its successor's or assignee's liability under the Lease shall be limited to the interest of Mortgagee or its successor or assignee in the Premises; (iv) be liable for any act or omission of any prior landlord under the Lease including, without limitation, the Mortgagor; (v) be bound by any rent or additional rent which Tenant might have paid for more than one (1) month in advance to any prior landlord under the Lease, including Mortgagor; and (vi) be subject to any offsets or defenses which Tenant might have against any prior landlord under the Lease including Mortgagor which would exceed one (1) month's rent.

5.     Tenant hereby certifies that:  (i) there are no defaults on the part of the landlord (including, without limitation, the Mortgagor) under the Lease, (ii) the Lease is a complete statement of the agreement of the parties thereto with respect to the letting of the Premises, and (iii) the Lease is in full force and effect.

6.     Following the occurrence of an event of default under the Lease which would entitle Tenant to cancel the Lease or abate the rent payable thereunder and the Landlord's failure to cure such default prior to the expiration of any applicable grace or cure period, Tenant will notify Mortgagee of such default and Tenant agrees that notwithstanding any provision of the Lease, no notice of cancellation thereof and no abatement of rent thereunder shall be effective unless the Mortgagee has received the notice as aforesaid and has failed within ten (10) business days of the date thereof to cure such default or if such default cannot be cured within ten business (10) days, has failed to

commence and diligently to prosecute the cure of the Mortgagor's/Landlord's default which gave rise to such right of cancellation or abatement.

7.    Tenant will not surrender or consent to the modification or amendment of any of the terms of the Lease ~~thereof~~, or to the termination thereof by Mortgagor without the prior written consent of Mortgagee, which consent, if granted, shall be obtained in writing thirty (30) days in advance by Mortgagor. Any such purported action without such consent shall be void as against Mortgagee.

8.    From and after the date hereof, Tenant shall send notice to Mortgagee (in the manner provided in the Lease and to the address set forth in the preamble to this Agreement) a copy of any notice or statement sent to Mortgagor by Tenant asserting a default under the Lease or seeking to assign or sublet any portion of the Premises.

9.    The provisions of the Mortgage relative to the rights of Mortgagee with respect to proceeds arising from an eminent domain taking or proceeding (including a voluntary conveyance by Mortgagee) and/or insurance payable by reason of damage to or destruction of the Premises shall at all times br prior ans superior to and shall control over any contrary provisions in the Lease; provided, however, that:

   (a)    If a casualty occurs to the Premises, and if (i) Tenant elects to repair or restore the portion of the Premises so damaged (if any), (ii) Tenant does not exercise any termination rights which otherwise might be available to Tenant as a result of the casualty, and (iii) the Lease remains in full force and effect, then, promptly following Mortgagee's receipt of evidence satisfactory to Mortgagee that Tenant will repair or has repaired the damaged portion of the Premises (if any) and that the Lease will remain in full force and effect, Mortgagee will permit Mortgagor to utilize, from any insurance proceeds payable as a result of such casualty, funds in the amount sufficient to enable Mortgagor to repair any damage, caused by such; and

   (b)    In the event of any such casualty to the Premises and in the event that insurance proceeds from the insurance policies which Tenant or Tenant's general contractor is required to maintain under the terms of ~~Section ___ of~~ the Lease are deposited into escrow pursuant to the terms of ~~Section ___ of the Lease~~ applicable lease terms, then:

      (i)    if Tenant elects to utilize such insurance proceeds ~~... repair~~ the portion of the Premises damaged by such casualty, Mortgagee will permit the utilization of the insurance proceeds for such repair or restoration; or

      (ii)    if Tenant is not required to ~~utilize such insurance proceeds for the repair or restoration of the portion of the Premises damaged by such casualty and Tenant~~ elects to ~~...~~ utilize the

- 3 -

insurance proceeds to reimburse Tenant for the unamortized cost of Tenant's
improvements (including without limitation, tenant improvements and fixtures
(other than removable trade fixtures and inventory) for which Tenant has not
previously been reimbursed so long as (1) the insurance coverage maintained by
Tenant or Tenant's general contractor (or Tenant's self-insurance coverage) is in an
amount equal to or greater than the full replacement cost of the Premises, exclusive
of excavations, foundations, site work and footing (with such deductible amount as
may be approved by Mortgagee), (2) Mortgagee is named as a loss payee in such
insurance policies, as Mortgagee's interest may appear and (3) following such
reimbursement to Tenant, Tenant shall permit the balance of the insurance proceeds
to be paid over to Mortgagee, up to an amount equal to the amount advanced by
Mortgagee with respect to the construction of Tenant's improvements, to be applied
in accordance with the applicable Loan documents .

10.    This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their
respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year
first above written.

Signed, sealed and delivered
in the presence of:

**TENANT:**

CIRCUIT CITY STORES, INC., a Virginia
corporation

By:_____ (SEAL)

Print Name:_____

Title:_____

_____
Witness Signature

_____
Print Name of Witness

_____
Witness Signature

_____
Print Name of Witness

**MORTGAGEE:**

NATIONSBANK OF FLORIDA, N.A. a
national association

By:_____

Print Name:_____

Title:_____

_____
Witness Signature

_____
Print Name of Witness

_____
Witness Signature

Print Name of Witness

(Acknowledgments appear on next page)

STATE OF VIRGINIA          )
                           ) SS:
COUNTY OF _____       )

     The foregoing instrument was acknowledged before me this _____ day of September, 1995, by _____, as _____ of Circuit City Stores, Inc., a Virginia corporation, on behalf of the corporation.

_____
Signature of Notary Public

_____
Print, Type or Stamp Commissioned Name of Notary Public

Personally Known ___ or Produced Identification ___ Type of Identification Produced _____

STATE OF FLORIDA           )
                           ) SS:
COUNTY OF DADE             )

     The foregoing instrument was acknowledged before me this _____ day of September, 1995, by _____, the _____ President of NationsBank of Florida, N.A., a national banking association, on behalf of the association.

_____
Signature of Notary Public, State of Florida

_____
Print, Type or Stamp Commissioned Name of Notary Public

Personally Known ___ or Produced Identification ___ Type of Identification Produced _____

V:\WPDOCS\20002-95.17\SUBNATTN.6RL

## EXHIBIT "H"

### MEMORANDUM OF LEASE

This Memorandum of Lease is made this _____ day of _____, 1995, between CENTRES VENTURES MADISON EAST, LTD., a Florida limited partnership, having an address at 3315 North 124th Street, Suite E, Brookfield, Wisconsin 53005 ("Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

### W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated as of the date hereof, whereby Landlord has leased to Tenant a portion of the real property (the "Property"), located in the City of Madison, Dane County, Wisconsin, the legal description of which Property is set forth on Exhibit "A-1" attached hereto. The Lease contains provisions and rights appurtenant to the Property, some of which are as follows:

I.   _Term._  The term of the Lease is for a period of twenty (20) years, commencing on the Commencement Date (as established in the Lease based upon the substantial completion of the improvements upon the Property). Thereafter, Tenant has the right under the Lease to renew and extend the term of the Lease for four (4) successive periods of five (5) years each.

II.  _Successors._  The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

III. _Incorporation of Lease._  All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

IV.  _Conflicts with Lease._  This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease. In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

                                        CENTRES VENTURES MADISON EAST,
                                        LTD., a Florida limited
                                        partnership

Attest:

By:_____      By:_____
      Secretary                          Name:_____
                                         Title:_____



                                        CIRCUIT CITY STORES, INC.,
Attest:                                  a Virginia corporation


By:_____      By:_____
      Secretary                          Name:_____
                                         Title:_____



STATE OF _____)
                          )  SS.
COUNTY OF _____ )

     I, _____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that _____, personally known to me to be the _____ of _____, and personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as _____ of said corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

     GIVEN under my hand and notarial seal this ___ day of _____, 1995.


                              _____
                                      Notary Public

                              My Commission Expires:_____


                                       3                    4342\circuit\easttown\lease.007

COMMONWEALTH OF VIRGINIA)
                      ) SS.
COUNTY OF HENRICO     )

     I, _____, a Notary Public in
and for said County, in the State aforesaid, DO HEREBY CERTIFY that
_____, personally known to me to be the
_____ of Circuit City Stores, Inc., and
personally known to me to be the same person whose name is
subscribed to the foregoing instrument, appeared before me this day
in person and acknowledged that he signed and delivered said
instrument as _____ of said corporation, as his free and
voluntary act, and as the free and voluntary act and deed of said
corporation, for the uses and purposes therein set forth.

     GIVEN under my hand and notarial seal this ___ day of
_____, 1995.


                                          _____
                                          Notary Public

## EXHIBIT "I"

### COMMENCEMENT DATE AGREEMENT

THIS AGREEMENT, made as of this ____ day of _____, 19___, between _____ (herein called "Landlord"), and CIRCUIT CITY STORES, INC. (herein called "Tenant").

### W I T N E S S E T H:

WHEREAS, Landlord is the owner of certain premises situated in _____, _____ County, _____ (herein called the "Premises"); and

WHEREAS, by that certain lease dated _____ __, 19___ (herein called the "Lease"), Landlord leased the Premises to Tenant; and

WHEREAS, a memorandum or short form lease in respect of the Lease was recorded in the office of the Clerk of _____ County, _____, on the ____ day of _____, 19___, in Book _____ at Page ____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Lease has commenced; and

WHEREAS, under Paragraph 25 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1. The term of the Lease commenced on, and the Commencement Date (as such term is defined in the Lease) was, _____, 19___. The term of the Lease shall expire on January 31, ____, unless Tenant exercises any option to extend the term of the Lease or unless the Lease terminates earlier as provided in the Lease.

2. The date of commencement of the first "Option Period" (as such term is defined in the Lease) shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

3. The date of commencement of the second Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

4342\circuit\easttown\lease.007

4.  The date of commencement of the third Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

5.  The date of commencement of the fourth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

6.  The date of commencement of the fifth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless the Lease terminates earlier as provided in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

Attest or Witness:            _____

_____        By_____

Attest:                       CIRCUIT CITY STORES, INC.


_____        By_____
Assistant Secretary                    Vice President

## EXHIBIT "J"

### INDEMNIFICATION AGREEMENT

This Indemnification Agreement is made this _____ day of
_____, 199__, between _____,
a _____ (hereinafter referred to as "Landlord"),
_____, a _____
(hereinafter referred to as "Mortgagee"), and CIRCUIT CITY STORES,
INC., a Virginia corporation (hereinafter referred to as "Tenant").

### WITNESSETH

Landlord and Tenant have entered into a Lease (the "Lease")
dated _____ whereby Landlord has leased to Tenant a
portion of the real property located in _____,
_____ County, _____ (the "Shopping Center")
and Tenant has constructed on such real property a store premises
(the "Premises").

NOW, THEREFORE, in consideration of the payment of the Tenant
Improvement Allowance as defined in the Lease and other good and
valuable consideration, the receipt of which is hereby
acknowledged, the parties hereto agree as follows:

1.  The Tenant hereby indemnifies and agrees to hold the
Landlord, Mortgagee and their successors and assigns harmless from
any loss, payment, claim or expense as the result of mechanics and
materialmen filing liens or otherwise making claims against
Landlord's interest in the Premises and the Shopping Center.  In
the event that any mechanic, materialman or other claimant makes
claim against the Premises or Shopping Center based upon materials
or services provided under contract with the Tenant, the Tenant
shall hold harmless and protect the Landlord from any loss,
payment, claim or expense related thereto.

2.  The Tenant reserves the right to contest in good faith
the amount of any claim or lien assessed against the Premises or
the Shopping Center by any of such claimants; provided, however,
should the holder or holders of such claim or lien attempt to
enforce their lien by foreclosure by any other means, the Tenant

shall bond around, pay or remove such lien by any manner reasonably acceptable to landlord and Mortgagee. This indemnity and hold harmless shall not apply to any liens or claims caused by the Landlord or Landlord's agents.

EXECUTED this _____ day of _____, 199__.

**LANDLORD**

_____

By:_____
Name:_____
Title:_____


**MORTGAGEE**

_____

By:_____
Name:_____
Title:_____


**TENANT**

CIRCUIT CITY STORES, INC.,
a Virginia corporation


By:_____
Name:_____
Title:_____

2                    4342\circuit\easttown\lease.007