## Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

---------------------------x

In re:              : Chapter 11
CIRCUIT CITY STORES, INC., : Case No. 08-35653
et al.,             :
        Debtors.: Jointly Administered
---------------------------x

December 22, 2008
Richmond, Virginia
VOLUME II (Afternoon Hearing)

Transcript of motions in the above when
heard before the Honorable Kevin R. Huennekens, Judge.

COOK & WILEY, INC.
Registered Professional Reporters
3751 Westerre Parkway, Suite D-1
Richmond, Virginia  23233
804.359.1984

## Page 2

APPEARANCES:

Gregg M. Galardi, Esquire
Ian S. Fredericks, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
Wilmington, Delaware  19899-0636
302.651.3000
Gregg.Galardi@skadden.com
Counsel for the debtors
dfoley@mcguirewoods.com

Douglas M. Foley, Esquire
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia  23219
804.775.1000
Counsel for the debtors

## Page 3

1    MR. GALARDI:  Good afternoon, Your Honor.
2  For the record, Gregg Galardi on behalf of Circuit
3  City debtors.
4    Your Honor, we had provided Your Honor a
5  separate agenda for the matters at 1:00.  I'm going
6  to go through the matters on the amended notice of
7  agenda for the 1:00 matters.
8    My understanding is that the first matter on
9  the agenda is a demand by Green 521 Fifth Avenue,
10  and that that has been resolved.  If we have
11  resolved it, we'll either submit an order or it's
12  been withdrawn after the hearing, Your Honor.
13    THE COURT:  Very good.
14    MR. GALARDI:  The next matter on the agenda
15  is the motion of Raymond & Main Retail.  My
16  understanding is that is also resolved.  We've
17  worked on an order.  And our intention, again, would
18  be to submit the order after the hearing.
19    >>:  Good afternoon, Judge.  Neil McCullough
20  for Raymond & Main Retail, LLC.  That's correct.
21  I'm just waiting to see the final version of the
22  order, and we expect to tender it.
23    THE COURT:  Thank you very much.
24    MR. GALARDI:  Your Honor, similarly, the
25  matter Number 3 on the agenda is Triangle Equities

## Page 4

1  Junction LLC.  We have resolved that, and we would
2  again submit an order or a stipulation, if
3  necessary.
4    THE COURT:  Very good.
5    MR. GALARDI:  Your Honor, the next matter on
6  the agenda is an uncontested matter which is the
7  debtors' motion.  It's Number 4 on the agenda to
8  reject certain -- to approve assumption and
9  assignments of various unexpired non-residential
10  real property leases and the sale of equipment.  We
11  have no objections to that.  It was -- the objection
12  deadline with December 18th.  And we would ask Your
13  Honor first to grant the motion to shorten -- I
14  believe we put it on shortened notice -- and then to
15  grant the motion to assume and assign those property
16  leases that are subject to it.
17    THE COURT:  Okay.  The Court will grant the
18  expedited motion, and also grant the relief.
19    MR. GALARDI:  Your Honor, moving to Number 5
20  on the agenda, it is the same motion to assume and
21  assign and sell certain property with respect to the
22  Illinois Partnership.  Again, I think these are some
23  of the subleases -- oh, we have withdrawn this
24  motion because the party that we actually were going
25  to do it no longer wanted the assumption of

Page 5

1   assignment. So Number 5 we would withdraw, Your
2   Honor.
3       THE COURT: All right. It will be withdrawn.
4       MR. GALARDI: Number 6, Your Honor, is a
5   motion that is uncontested. Again, we have a motion
6   to shorten the time. It is a motion to assume and
7   assign various non-residential real property leases.
8   We have -- received no objections. It was to the
9   Delaware trust or its nominees. I think we've
10  resolved the objection, and ask that Your Honor
11  approve it.
12      MS. MILLER: Your Honor, Calena Miller on
13  behalf of Bond CC. I just wanted to confirm.
14      THE COURT: All right. Very good.
15      MR. GALARDI: Your Honor, that now brings us
16  to matter 7 on the agenda, which are contested
17  matters. Your Honor, this matter has been carried
18  since the first day. It is our motion to reject a
19  number of properties which we attempted to reject
20  effective as of November 10.
21      We have a number of objections that are
22  outstanding. Some have been resolved; some have not
23  been resolved. I think probably the best way to go
24  through it is just from top to bottom on the
25  objections to see if they're resolved or not, and do

Page 6

1   the objections, and then we can respond accordingly,
2   if that works for Your Honor.
3       THE COURT: That is my preference.
4       MR. GALARDI: Your Honor, the first objection
5   is the objection of Landover Crossing, LLC. My
6   understanding is -- as reflected in the amended
7   agenda -- that that matter -- that objection has now
8   been resolved.
9       And I don't know if counsel is here.
10      MS. MCLEMORE: Good afternoon. Jen McLemore
11  from Christian & Barton here on behalf of Landover
12  Crossing. This has been resolved.
13      THE COURT: Very good.
14      MR. GALARDI: Your Honor, the next matter is
15  the objection of Cardinal Capital Partners. My
16  understanding is that's an objection that is, in
17  fact, going forward.
18      I'm not sure how -- many of the objections
19  overlap, Your Honor. I don't know how we want to
20  do -- how do we want to go? We can just do it one
21  by one.
22      Your Honor, this also relates to the matter
23  where we had a motion to assume and assign a
24  contract and assume the lease. We ended up
25  withdrawing it back on November 4. I guess I'll let

Page 7

1   Cardinal raise their objection, and I can respond
2   accordingly.
3       THE COURT: I think that would be
4   appropriate.
5       >>: Your Honor, Nicholas Ferlan (phonetic)
6   for Cardinal Capital. And that objection has been
7   withdrawn -- or shall be withdrawn.
8       THE COURT: All right. Very good.
9       MR. GALARDI: Let him set precedent here. He
10  was just scared of my response, Your Honor. I know
11  him too well.
12      (Laughter)
13      The next matter is the objection of -- I
14  think it's Balogh Companies. It's Objection C. My
15  understanding is that's going forward.
16      THE COURT: All right.
17      >>: I carry that, one, too.
18      MR. GALARDI: All right.
19      >>: Nicholas Ferlan for the Balogh Companies
20  again. That objection is also withdrawn.
21      THE COURT: All right. Very good.
22      MR. GALARDI: You wouldn't happen to
23  represent the Leben family, too, would you?
24      (Laughter)
25      Objection D is the objection of the Leben

Page 8

1   family. I have that one as going forward.
2       MS. MCLEMORE: Good afternoon again, Your
3   Honor. Jen McLemore for the Leben Family Limited
4   Partnership.
5       As I understand it, the subtenant in this
6   case paid both November and December rent directly
7   to the debtors. And the Leben Family Limited
8   Partnership is asking that rejection be effective
9   January 1 to preserve the rights that they have to
10  try and collect these obligations. We just want to
11  preserve an administrative claim, because clearly
12  the debtor has collected rent from the subtenants;
13  but they have not bothered to pass it on to us at
14  this point. And that includes taxes and some of the
15  other issues. We're trying to preserve our own
16  rights, because we're not sure exactly where we
17  stand in this situation.
18      THE COURT: All right. Your issue being that
19  you just want to collect whatever rents were paid to
20  the debtor post petition?
21      MS. MCLEMORE: We would. Alternatively, we
22  would also -- if we have the rejection effective
23  January 1, it would give us the rights to
24  administrative claims during those time periods, and
25  it might clean up the issue.

Page 9

1    THE COURT: All right. But if I grant the
2  motion to reject, then the debtor wouldn't be
3  entitled to keep the rents; would it?
4    MS. MCLEMORE: Well, at this point, part of
5  the problem with that is collecting it back. As we
6  understand, the debtors were going to pay the
7  December rent, no questions asked.
8    But the November rent leaves us in a
9  precarious position, because they have collected all
10 of November's rent, and they've just left us with --
11 they've told us we are entitled to file an admin
12 claim for the November rent; but they may or may not
13 take issue with it down the road, because they will
14 have rejected it effective November 10.
15    So they will have all the money for it. And
16 it puts them -- I believe Mr. Galardi even referred
17 to it at the last hearing as sort of a windfall
18 situation. We don't know where we stand under that
19 circumstance. So the cleaner resolution from my
20 client's perspective is to have the rejection
21 effective January 1.
22    THE COURT: All right. Thank you.
23    MR. GALARDI: Your Honor, I think the cleaner
24 perception would be what I think I had offered at
25 the last hearing.

Page 10

1    Your Honor, we clearly did collect November
2  rents, and we collected that pre-petition. But it
3  is less than -- I believe it is less than the amount
4  of rent that we would pay. And I did describe that
5  as a windfall for November. So that's not a
6  disagreement.
7    With respect to December, what we have
8  offered people is that if we did, in fact, receive
9  the December rent from the subtenant, we would turn
10 that rent over, because our position is that these
11 leases were rejected as of November 10th. There is
12 no dispute as to our giving notice to both the
13 subtenant and the tenant on these matters. So we
14 think under the case law the effective rejection
15 date is November 10th.
16    I have no problem with their reserving a
17 right to a certain administrative claim for any of
18 the November rent, if they so choose. But I don't
19 think having it effective January 1st is really the
20 proper date. I think we complied with the Court's
21 order. We gave notice. I don't think there's a
22 dispute about that. We would like to have it
23 rejected as of November 10th, all rights reserved to
24 administrative claims for any rents we collected.
25 And then with respect to this one in particular, if

Page 11

1  we collected December rent, it was what I said on
2  the record the last time: We would be turning over
3  any subrent we got for the month of December, and we
4  will pay that over to the tenant. We were not
5  intending to try to keep that money.
6    THE COURT: All right. Very good.
7  Ms. McLemore, I'm going to confirm the rejection as
8  of November 10, but reserve your right to make an
9  administrative claim for the November rent in
10 whatever fashion you deem appropriate.
11    MS. MCLEMORE: Thank you.
12    MR. GALARDI: Your Honor, that then moves to
13 Objection E, which is the objection of Inland US
14 Management LLC. My understanding is that's going
15 forward.
16    MS. MCLEMORE: Jen McLemore for Inland US
17 Management. That actually has been resolved.
18    THE COURT: Okay. Very good.
19    MR. GALARDI: Your Honor, the next objection
20 is Objection F, which is the limited objection of CK
21 Richmond Business. I have this matter as going
22 forward. I don't know if it was resolved during the
23 break.
24    MR. PERKINS: Your Honor, Chris Perkins.
25 This matter has been withdrawn.

Page 12

1    THE COURT: It's been resolved?
2    MR. PERKINS: We're withdrawing the
3  objection.
4    THE COURT: Withdrawn. Okay. Very good.
5    MR. GALARDI: Your Honor, I'm now up to
6  Objection G, which is the objection of Inland
7  Commercial Property. My understanding is this was
8  resolved over the break.
9    THE COURT: We should have more breaks.
10   (Laughter)
11    MR. GALARDI: Your Honor, I am now up to
12 Objection H, which is the objection of Carrollton
13 Arms. I have this matter as going forward. I don't
14 see counsel here.
15    Your Honor, this is a -- my understanding is
16 that there is no dispute that we handed over the
17 keys on November 10th, or pursuant to the November
18 10th order. I think that their position was that we
19 had not surrendered the premises because the
20 sublessee continued to occupy the premises; again,
21 and that we were obligated to remove the sublessee's
22 property from the premises.
23    Your Honor, again, we think under the case
24 law that if we gave unequivocal notice to both the
25 sublessee and the overlord, that that was an

COOK & WILEY, INC.

Page 13

1  effective rejection. We did so on November 10th. I
2  don't think there was a factual dispute with respect
3  to that. We'd ask that that objection be overruled.
4        THE COURT: The objection is overruled.
5        MR. GALARDI: Your Honor, the next one is
6  Objection I, which is the Premier Retail Interiors
7  objection. Is it resolved?
8        MS. MCLEMORE: Your Honor, Jen McLemore for
9  Premier Retail Interiors. I understand from my
10 client's perspective this has been resolved, but
11 there is another party in interest. I don't know if
12 they're here. Mr. Bailey, I believe, represents
13 potentially another party in interest. I believe he
14 has filed something to reserve his rights, but my
15 client has resolved this issue.
16       THE COURT: This is only the objection of
17 your client?
18       MS. MCLEMORE: Correct.
19       THE COURT: And it's been resolved?
20       SPEAKER 3: Correct.
21       THE COURT: All right.
22       MR. GALARDI: Your Honor, the next objection
23 is the objection of Generation One, which is
24 Objection J on my agenda. I have that matter going
25 forward.

Page 14

1        >>: It's resolved.
2        MR. GALARDI: It's resolved? You can stay up
3  here and just resolve them all. I have no problem
4  with that. So J is resolved.
5        The next objection is the objection of Dick's
6  Sporting Goods. We have continued that to January
7  29th.
8        Now on to Objection L, which is the limited
9  objection of Golf Galaxy. That is also -- the
10 parties have agreed to adjourn that matter over to
11 January 29th.
12       MR. CARRIGAN: Your Honor --
13       THE COURT: Yes.
14       MR. CARRIGAN: Good afternoon, Your Honor.
15 My name is Daniel Carrigan. I'm here on behalf of
16 actually Matter O under this matter, and matter 25
17 further on in the docket.
18       I understand that apparently Golf Galaxy,
19 which is our client's subtenant, apparently has
20 agreed to adjourn the hearing on this particular
21 matter till January 29; is it?
22       MR. GALARDI: Yes.
23       MR. CARRIGAN: And I think if you look at
24 Matter O, we're listed in the same box, essentially,
25 probably because we joined in their objection as

Page 15

1  opposed to filing a separate one. However, the
2  docket -- the agenda was the first indication I had
3  that we had agreed to adjourn it. I don't have an
4  objection to adjourning it; however, it does tie in
5  to matter 24 -- or rather, matter 25, because it's
6  the same issue, at least, as to the payment of the
7  stub rent that flows throughout. And maybe by the
8  time we get to matter 25, it may not matter; but at
9  least I'd like to preserve that piece of the
10 objection.
11       MR. GALARDI: No problem.
12       THE COURT: It's preserved.
13       MR. CARRIGAN: Thank you, Your Honor.
14       MR. GALARDI: Your Honor, matter number --
15 Letter M, I guess, is the next one that I am up to.
16 It's the OLP 6609 Grand. That objection has been
17 resolved.
18       THE COURT: All right.
19       MR. GALARDI: The next matter I have is
20 Objection N by Dollar Tree Stores. That, the
21 parties have agreed to adjourn that over to the
22 January 29th hearing.
23       THE COURT: Very good.
24       MR. GALARDI: Objection O, which was the
25 joinder of the landlord to 120 -- I guess that's

Page 16

1  what we just addressed there where we're agreeing to
2  adjourn it as a joinder.
3        The Objection P, which is the limited
4  objection of Melvin Walton Hone, my understanding is
5  I have resolved that. Counsel is in the courtroom.
6        >>: Good afternoon, Your Honor. David
7  Pollock on behalf of Melvin Hone, Trustee. This
8  matter was resolved I think on the record at the
9  hearing on December 5th.
10       THE COURT: Very good.
11       MR. GALARDI: Your Honor, that brings us to
12 Letter Q, which is the objection of Bond C. C. I
13 Delaware Business Trust. My understanding is that
14 that objection has been resolved. So she doesn't
15 have to -- she's nodding her head yes.
16       THE COURT: It's resolved.
17       MR. GALARDI: Thank you.
18       That was Q. Now I have objections R and S.
19 Objection of Manufacturers Trading to the debtors'
20 motion to reject. That matter is going forward.
21 And then I have an objection and joinder in the
22 objections of Manufacturers Trust. Both of those
23 objections are going forward.
24       THE COURT: All right.
25       MS. MCLEMORE: Good afternoon. Jen McLemore

Page 17

1  for Manufacturers and Traders Trust Company.
2  Your Honor, Manufacturers and Traders is a
3  trustee in a securitized investment related to 41
4  different leases. And at the moment -- this is
5  somewhat complicated. The landlords in the stores
6  have given all of their rights up to us to protect
7  them. And at the moment, we are unable to determine
8  when the debtors may or may not have left the
9  premises.
10  So we filed a placeholder objection to
11  preserve while we try to figure out who's in, and
12  who's out, and when. And we're still in the process
13  of doing that. So while this is going, maybe we can
14  carry it over. I apologize I didn't ask to do this
15  earlier. That may be the best resolution.
16  THE COURT: So you're not aware of whether or
17  not the debtor has left your premises?
18  MS. MCLEMORE: For the places that they're
19  trying to reject, we are at the moment still trying
20  to figure out exactly when they left. And the
21  communication between the trustee for these
22  investments, it's a -- it's a bit of a convoluted
23  connection between the landlords and the trustees.
24  So they're just trying to do their due diligence and
25  figure out what exactly has happened at the

Page 18

1  locations that --
2  THE COURT: Mr. Galardi, do you have any
3  objection to continuing this out to January 29?
4  MR. GALARDI: Your Honor, I guess I don't.
5  But we do have a witness that would testify that we
6  turned over the keys, that these premises are
7  vacated, and that we complied with your first day
8  order with respect to November 10th. So I'm not
9  sure adjourning it does anything more than keeping
10  space on the agenda. Our witness is here.
11  THE COURT: If you want to proceed on it, I'm
12  prepared to listen to it this afternoon.
13  MS. MCLEMORE: Honestly, I can't refute -- if
14  he has evidence for it, I don't have anything --
15  MR. GALARDI: Why don't we adjourn it for the
16  time being, and I'll let her talk to our witness so
17  that we may be able to resolve this.
18  THE COURT: Okay. So we'll just drop it down
19  on the docket.
20  MR. GALARDI: We'll just drop it down to
21  later, Your Honor. Thank you --
22  Your Honor, that leaves us with the final
23  objection on this matter, which is the joinder of
24  Galleria Plaza. And my understanding is that that
25  has been continued over to the January 29th hearing.

Page 19

1  THE COURT: All right.
2  MR. GALARDI: That finishes those matters.
3  Your Honor, now we have a series -- and probably it
4  is -- it is -- there are a number of matters that
5  are now on the agenda from 8 on that go to, I think,
6  one fundamental issue. So for the sake of clarity
7  and argument, I think there's a legal issue, and
8  then we can get into details.
9  Your Honor may recall -- and then I'll let
10  each party come up and make their arguments --
11  obviously, the law with respect to stub rent --
12  which I think is the only issue that is really open
13  in most of these; although I'll reserve everybody's
14  rights to come up and obviously argue that there may
15  be taxes or something.
16  The big issue that has come up is that we --
17  I don't think anybody disputes we did not pay our
18  November 1st rent when it was due and payable. Now,
19  we have gone through some growing pains, so to
20  speak, through the month of November, because as we
21  found out and has been determined, some rents
22  weren't due November 1st; rather, they were due at
23  the end of November and paid in arrears. It's at
24  least our understanding that we have paid all of
25  that rent in arrears, unless somebody has refused to

Page 20

1  accept it. But we have only paid what I call the
2  stub rent period, the period from November 10th to
3  November 30th.
4  As I stood before Your Honor at -- I think it
5  was the December 5th hearing -- I advised Your Honor
6  that we would agree with the objecting landlords
7  that the accrual method applies. And I think
8  that's -- the accrual method is the method that this
9  Court has used in prior cases to assess whether
10  there is a post-petition obligation to pay rent. So
11  we have reserved our rights on billing date with
12  respect to other landlords. But with respect to
13  landlords that raised objections, we have agreed to
14  the accrual method.
15  We also agreed, Your Honor, that
16  notwithstanding the fact that they filed motions --
17  and now having read the Track Auto case a little bit
18  more, I understand better why they wanted this --
19  the mere fact that they didn't go forward the first
20  time on these motions does not prejudice in any way
21  the timeliness of their request for an
22  administrative claim.
23  So what I think we are faced with today, Your
24  Honor, with a lot of them -- and we can take a legal
25  argument first and then also a factual argument --

Page 21

1  is whether or not the period of time from November
2  10th to November 30th, one, I think we have agreed
3  with the accrual method, that it is an
4  administrative claim.  So really the only issue is
5  when do you have to pay that claim?  We have taken
6  the position that we are not required to pay it,
7  that it is an administrative claim, and can be paid
8  under 507(a) and 1129(a)(9)(a) at the end of the
9  case.  The landlords want timely payment, and want
10 timely payment now.
11     I do have a witness in court today that could
12 testify with respect to the DIP and the need and the
13 financial availability.  And I could put that
14 proffered testimony on.  That probably doesn't
15 necessarily -- there's two ways Your Honor could see
16 it.  If Your Honor sees it as a simple legal
17 issue -- that if it's 365(d)(3), it has to be paid
18 now, pay it.  It doesn't matter what our DIP budget
19 says, what our financial availability is; you have
20 to pay it now.
21     Or Your Honor can see, as I read Track Auto,
22 that Your Honor has some discretion with respect to
23 that; that with respect to anything post December,
24 we have to pay that under 365(d)(3).  But Your Honor
25 could have discretion and say, I understand that

Page 22

1  this was actually something due and payable
2  pre-bankruptcy.  We have this fiction called the
3  accrual method which does it every day; but that I
4  can, in fact, have the discretion as to the timing
5  of that payment, since it is an administrative
6  claim.  And I can pay it at the end of the case, or
7  I could order you to pay it under certain
8  circumstances at any time during the case.
9     The debtors' position is it is a matter of
10 your discretion, that you can order us today to pay
11 it; but you can also order that it not be paid
12 today, and leave it to the circumstances, whether it
13 be paid at the planned period of time or any day
14 sooner.
15     With respect to the testimony of the witness,
16 if called to testify on our behalf, Mr. Steve
17 Coulombe of FTI would testify that the budget that
18 we submitted both in the interim and that we have
19 been using for the final budget did not include the
20 payment of stub rents for those leases that was due
21 November 1st to cover the November period.
22     As Your Honor heard this morning, he would
23 also testify that performance of the business has
24 been weak over the course of the first six weeks of
25 this case where same store sales or margins or sales

Page 23

1  have fallen 40 to 48 percent.  That if called -- if
2  required to pay the stub rent, the stub rent
3  obligation that is outstanding to many of these
4  landlords is approximately 20 to 25 million dollars.
5     Mr. Coulombe would also testify that in the
6  negotiations that Your Honor heard about this
7  morning between the Committee, the bank group, and
8  the debtors, there was a discussion and negotiations
9  regarding increased availability -- which Your Honor
10 heard today taking out the minimum availability
11 covenants -- but Mr. Coulombe would also testify
12 that the negotiations were to increase availability
13 to pay current pay obligations, but not to include
14 stub rent.
15     Indeed, Mr. Coulombe would further testify
16 that in the event that the Court orders the debtors
17 to pay stub rent, it is not permitted under the
18 current DIP facility to pay it; and that we would
19 have to go back to the required lenders, and could
20 cause a default.  Either we'll be in default of the
21 order, or we'll be in default in the DIP.  And we
22 can have no assurances that the DIP lender -- the
23 required lenders that would be required to pay it
24 would approve such a payment.
25     Your Honor, Mr. Coulombe would also testify

Page 24

1  that over the next six weeks as we try to get to a
2  restructuring scenario, liquidity is tight and
3  unpredictable; and that, therefore, that at least
4  for the period of time for the next six weeks or to
5  the end of January, that it is in the best interest
6  of the debtors to maintain its availability; and
7  thus, not to pay the stub rent.
8     That would be the testimony.  I'd pass him on
9  as a witness, Your Honor, to anyone.  But I think
10 most of this comes down to a legal issue.
11     THE COURT:  Does any party wish to cross
12 examine Mr. Coulombe?
13     MR. CARRIGAN:  Yes, Your Honor.
14     THE COURT:  Mr. Coulombe, if you'd come
15 forward and be sworn, please.
16
17     STEPHEN COULOMBE, a Witness, first being
18 duly sworn, testified as follows --
19
20     MR. CARRIGAN:  Daniel Carrigan, Your Honor,
21 McKenna Long & Aldridge for the Orchard landlords.
22     THE COURT:  All right.  You may proceed.
23     MR. CARRIGAN:  Thank you, Your Honor.
24
25

Page 25

1          EXAMINATION BY MR. CARRIGAN:
2
3
4      Q.   Good afternoon, sir.  How are you?
5           You have to answer out loud.
6      A.   Fine.  Thank you.
7      Q.   Thank you.  You indicated that -- the proffer
8  indicated that --
9           THE COURT:  You might want to identify the
10  witness.
11     Q.   I'm sorry.  Could you identify yourself,
12  please?
13     A.   Sure.  Stephen Coulombe with FTI Consulting.
14     Q.   And what function do you perform for the
15  debtors?
16     A.   I'm a senior managing director with FTI; and
17  FTI is the financial advisor to the debtors.
18     Q.   How long have you served in that capacity?
19     A.   We were originally hired by the company in
20  mid-August, and continued on since then.
21     Q.   I'm sorry, since what date?
22     A.   Mid-August.
23     Q.   Mid-August of this year, 2008?
24     A.   That's correct.
25     Q.   And you indicated that there was -- or the

Page 26

1  proffer indicated that there was a budget -- and a
2  revised budget, perhaps -- that had been submitted to
3  the lenders; is that correct?
4      A.   Just the original budget that I think was
5  presented to the Court on the first day.
6      Q.   And did you have any part in creating that
7  budget?
8      A.   I did.
9      Q.   Were you the principal person in creating
10  that budget?
11     A.   The principal person from FTI, along with our
12  company.
13     Q.   And who else at the company?
14     A.   A number of people from the company's finance
15  staff and other parts of the organization.
16     Q.   The chief financial officer, would that be
17  one of them?
18     A.   That's correct.
19     Q.   All right, sir.  And how far in advance did
20  you create this budget -- of the bankruptcy filing, that
21  is?
22     A.   The DIP budget was created, you know, within
23  a week of the bankruptcy filing, and finalized
24  immediately prior to the filing.
25     Q.   So November 3rd it was created?

Page 27

1      A.   We worked on the final version from
2  November 3rd up until the time of the filing.
3      Q.   And prior to that, when did the drafts of the
4  budget begin?
5      A.   I don't recall the exact date.
6      Q.   Before November 1?
7      A.   Yes.
8      Q.   At any time with -- do you understand what
9  the term "stub rent" means?
10     A.   I do.
11     Q.   Was that discussed in putting together your
12  final budget?
13     A.   It was.
14     Q.   Was it discussed in putting together the
15  prior versions of that budget?
16     A.   It was discussed in the final week leading up
17  to the last budget that we did.  I don't recall the
18  date.
19     Q.   Could it have been before November 1?
20     A.   I just don't recall.
21     Q.   At what point did you know that the November
22  1 rents would not be paid to the landlord?
23     A.   At the end of October at the time when the
24  company would typically begin to issue the checks, we
25  knew that we wouldn't be paying the November 1st rent.

Page 28

1      Q.   And you also knew that the company would be
2  accepting the rental payments from the subtenants at
3  that point, but not returning it?
4      A.   We assumed that we would continue to get
5  rents from the subtenants, but didn't know for sure.
6      Q.   And did you also assume that you wouldn't be
7  repaying that subrent to the subtenants?
8      A.   At that point in time it wasn't certain that
9  we would file for bankruptcy.
10     Q.   It wasn't certain on October 31st that you
11  wouldn't file for bankruptcy?
12     A.   No.
13     Q.   When did it become certain?
14     A.   The company was working on several things.
15  And it hoped to avoid filing for bankruptcy, but
16  ultimately did file on the date that it did.
17     Q.   What things in between October 31 and
18  November -- what change between October 31 and
19  November 10?
20          MR. GALARDI:  Your Honor, I don't want to --
21  I think this goes outside the scope of the direct
22  proffer as to the simple budget aspects.  I'd object
23  to the line of questioning.
24          MR. CARRIGAN:  May I be heard, Your Honor?
25          THE COURT:  Yes, you may.

Page 29

1    MR. CARRIGAN:  Your Honor, the argument
2 that's being made here is that the Court has
3 discretion.  And part of that argument is --
4 basically, what it boils down to is the debtor can't
5 get the money from the lenders.  And if the debtor
6 is required to pay the stub rent, that there's going
7 to be a default under the line -- under the DIP
8 facility.
9    Now, did they know about it going in, or did
10 they know about it going out?  Was there a -- was
11 there an expectation that they would be able to get
12 this subrent in and put it into the system and rely
13 upon it; and at the same time not pay the November 1
14 rent when they went into this exercise?
15    It seems, given the timing, that that is
16 quite material to this whole exercise, because if
17 they -- if the parties to the bankruptcy came in and
18 planned on not paying the rent -- which it appears
19 that they did not -- and they also planned on
20 accepting the subrent, then it's a little
21 disingenuine to say it's not in the budget anymore,
22 because that was the plan.
23    THE COURT:  All right.  Mr. Galardi?
24    MR. GALARDI:  Your Honor, just briefly.  I
25 didn't realize we were going to argue the subrent.

Page 30

1    On the subrent point, Your Honor, I think he
2 may have an equitable argument that he can raise in
3 the individual circumstance.  I think that the
4 direct testimony simply went to whether as a general
5 matter equitably we have to pay that rent.
6    If he's trying to raise -- I would ask him to
7 put on a witness about the subrent.  But I didn't
8 have the direct testimony to what the -- whether we
9 were collecting the subrent, and whether that was
10 the basis for not paying the stub rent.  We
11 collected it.  We understand that.  We understand
12 the equitable argument.  But I'm not sure how that
13 relates to whether we have to pay the stub rent in
14 this circumstance under -- well, I know I'm not
15 being articulate here.
16    I think it goes outside the direct, Your
17 Honor, because the issue is not whether we received
18 the subrent.  It's whether we have the ability right
19 now to pay the stub rent, whether or not we
20 collected that rent, which was a DIP budget item,
21 which is the sole basis of the direct testimony.
22    THE COURT:  And I believe that he could be
23 called as his own witness, too.  So I'm going to
24 allow this line of questioning.
25    But let's try to tailor it to the specific

Page 31

1 items that you were talking about.
2    MR. CARRIGAN:  Yes, Your Honor.
3    THE COURT:  So the witness may answer.
4    MR. CARRIGAN:  Do you recall the question?
5    THE WITNESS:  Could you repeat it, please?
6    MR. CARRIGAN:  Could you read it back,
7 please?
8
9    (Last question read back by the court
10 reporter)
11
12    THE WITNESS:  We finalized the budget between
13 October 31st and the 10th.  And the assumption was
14 that we would collect the sublease income, and we
15 would not pay the stub rent.
16    MR. CARRIGAN:  Thank you, sir.  Appreciate
17 it.
18    THE COURT:  All right.
19    MR. CARRIGAN:  Thank you, Your Honor.
20    THE COURT:  Any other party wish to
21 cross-examine this witness?
22    All right.  Mr. Coulombe, you may step down.
23 Thank you, sir.
24
25    (Witness stood aside)

Page 32

1
2    THE COURT:  Mr. Galardi, will there be any
3 further evidence?
4    MR. GALARDI:  No, Your Honor.
5    THE COURT:  Does any other party wish to put
6 on any evidence?
7    All right.  Well, then, I'll hear your
8 arguments.
9    MR. GALARDI:  Your Honor, again, I think that
10 the Track Auto case directly addresses this point.
11 What the landlords are seeking by the payment of the
12 subrent period is essentially a Super Priority
13 claim.  What the Court ruled in Track Auto was yes,
14 landlords cannot sit on their rights.  They must
15 make these motions to compel.  We have no objection
16 to that.  We have no objection to saying it's an
17 administrative claim.  The question is when the
18 timing of that payment is to occur.
19    By seeking the current payment of it right
20 now, Your Honor, we think that they are seeking a
21 Super Priority claim; a priority claim that would be
22 paid before the banks and even secured creditors.
23 As the banks were entitled to with the funding, it
24 didn't provide for that in the budget.  And as to
25 the actual circumstances right now, it would

Page 33

1    actually have a negative effect on the estate.
2        And Your Honor, we would ask Your Honor to
3    rule that such payments can await either a further
4    order of the Court, or confirmation of the plan to
5    be paid under 507(a); and is not entitled to be
6    treated as a Super Priority claim to be paid first
7    in line at this time.
8        THE COURT: Mr. Galardi, are you giving up
9    your argument that this Court should consider the
10   Fourth Circuit's unreported decision in Roses Stores
11   case that the payment should be triggered by the
12   contractual obligation, as opposed to the accrual
13   method?
14       MR. GALARDI: Your Honor, for -- yes, we will
15   give up that argument to go with the accrual method,
16   Your Honor. Having then just looked at another
17   opinion out of the Southern District of New York, we
18   believe that the accrual method is obviously the
19   most fair and easy to calculate. The billing date
20   creates all sorts of problems.
21       So I think in this case, as I said with the
22   first landlords, I believed Your Honor would follow
23   the accrual method in governing this case.
24       THE COURT: All right. Very good. Thank
25   you. Anybody wish to reply?

Page 34

1        MR. POLLOCK: Good afternoon, Your Honor.
2    David Pollock on behalf of various landlords noted
3    of record; and, as I think you'll hear when I'm
4    finished, also on behalf of several of my colleagues
5    here this afternoon.
6        I guess I made a mistake this morning when
7    Mr. Galardi and I were emailing, and he said he
8    agreed, and I said we agreed all too much. On this
9    issue, we don't agree.
10       I don't know if Your Honor -- I know Your
11   Honor was at the bench -- but I don't know if you
12   heard the part where we suggested on our panel that
13   maybe Montgomery Ward ought to be overruled,
14   because, in fact, proration was really the fair and
15   the equitable way. Since we've passed that point in
16   this case, I don't think we need to argue it.
17       I think the issue comes down to really a
18   legal argument, as Mr. Galardi suggested. And the
19   legal argument is: Payment now or payment later.
20   The payment later approach is really the
21   administrative claim approach. And the
22   administrative claim approach is one that comes up
23   under the billing date approach where the
24   Court -- such as Judge Shaunty (phonetic) in the
25   Goody's case cited in our pleading -- said, Well,

Page 35

1    yes, even though it's billing date approach, you can
2    still have an administrative claim; but it's a
3    timing issue.
4        We're no longer -- and this is where
5    Mr. Galardi and I disagree -- we're no longer at a
6    timing issue, because he has agreed that this is a
7    proration, an accrual method.
8        Proration accrual method, we then look to the
9    statute. And the statute says you pay the
10   obligations timely. Timely. We're not in the issue
11   of: Oh, this is an admin claim, and you get a 507
12   claim later on. You pay timely.
13       There is one exception to the timely in 365,
14   Your Honor. That exception is the Court, on the
15   motion of the debtor, may extend the time to pay for
16   a period of 60 days, but not beyond that 60 days.
17   So the section already addresses when payment gets
18   made if you are making payment under 365. And we
19   are making -- as the debtors have agreed -- payment
20   under 365.
21       So the question, then, is: Do we get paid
22   today, or does Your Honor consider the proffer as a
23   request for an extension till the end of the 60
24   days, and give the debtors until January 8th or
25   January 9th to make the payment? That, in our mind,

Page 36

1    is the only decision. It is a timing issue, yes;
2    but it is not a timing issue of an administrative
3    claim. 365 says you timely pay the obligations.
4    They have agreed that that applies, and that it is
5    the proration approach.
6        Given that, we don't get into administrative
7    claims. We don't get into the discretion. The only
8    discretion in our mind that the Court has is: Do I
9    order payment today, or do I order payment by the
10   end of the 60-day period, assuming -- for the sake
11   of argument -- an oral motion has been made to grant
12   that extension.
13       Very simple argument, Your Honor. I don't
14   think any more really needs to be said on the issue.
15   It's not an administrative claim. They have given
16   up that issue. It's a payment under 365 on a
17   proration basis. And what is equitable is that they
18   pay for the period of time.
19       And my clients, roughly -- we had 29; some of
20   them rejected -- we're talking a half a million
21   dollars or so in rent. I understand the debtors'
22   dilemma. But that's a dilemma that this Court
23   doesn't need to face, that the debtor needed to
24   face, and the billion-dollar lender needed to face.
25   They're using property. They have used property.

Page 37

1    They should have taken that into consideration.
2        I've been before many a bankruptcy court
3    where the Court has said, This is not the place to
4    arrange your financing. You need to arrange it
5    before you come here. And that's what they needed
6    to do. GE or the lending group can decide, Well,
7    yeah, we want this case to go on. We're going to
8    put that into the budget; or they can decide not to.
9    But that's not the issue before the Court. The
10   issue before the Court is strictly: What does 365
11   say in light of the debtors' concession that this
12   is, for the purposes of this case, a proration
13   accrual method case.
14       And that's our argument, Your Honor. Thank
15   you.
16       THE COURT: Thank you.
17       MR. EPPS: Your Honor, A.C. Epps, Jr. from
18   the firm of Christian & Barton. We have filed
19   several dozen landlords. And Mr. Pollock was
20   specifically authorized to make the argument on our
21   behalf today. We would adopt it. Thank you very
22   much. All our clients adopt it. Thank you.
23       >>: Good afternoon. Sheila Dellacruz,
24   counsel for Woodlawn Trustees, Inc., 502-12 86th
25   Street LLC, and Zeal Limited Liability Company.

Page 38

1        My clients are in a very similar situation as
2    Mr. Pollock's clients. And we concur with
3    Mr. Pollock's argument, and authorize him to make
4    the same for our clients.
5        THE COURT: All right. Thank you.
6        >>: Good afternoon, Your Honor. Michael
7    Condealis (phonetic) on behalf of Cole CC Groveland
8    Florida, LLC and Cole CC Aurora Company, LLC. We
9    have motions to compel payment before the Court on
10   both of those, as well.
11       A lot of the points that I wanted to make
12   were said previously, that it is 365(d)(3) that
13   really controls in this instance. And if you look
14   at Track Auto, Your Honor, that has no real
15   application here, because the facts are
16   distinguishable. And that -- that involved a
17   situation where the debtor did sleep on its rights.
18   After rejection came, they came in and asked for
19   365(d)(3) rights for payment immediately of the
20   amounts that were owed. And the Court found that
21   that wasn't appropriate at that time; and that they,
22   if anything, were just entitled to an administrative
23   claim.
24       So in this instance, we're coming under
25   365(d)(3), which requires the debtor to perform

Page 39

1    under the lease for all post-petition -- for all
2    obligations that are due under the lease.
3        THE COURT: It says that the debtor shall
4    timely perform. That doesn't say -- what does
5    timely mean?
6        >>: Well, the Courts have been clear on what
7    timely means. It's to perform in accordance with
8    the terms of the lease agreement itself. And that's
9    all we're asking that be done in this instance.
10       The original objection to the motions to
11   compel payment that were filed previously by the
12   different landlords in this case, and that were
13   heard at the prior omnibus hearing, had an objection
14   filed to it -- as Your Honor correctly pointed out
15   -- citing extensively the Roses Fourth Circuit
16   decision and other authority taking a billing method
17   approach in this case. And the reason was because
18   they wanted to cut off as much of the pre-petition
19   rent that was due, as the vast majority of leases we
20   doubt are on the 1st day of November. So they cut
21   off the rent that was due on November 1st. And only
22   for those people that came in, and paid their
23   attorneys to come in and object, did they then
24   decide to give them accrual rent going forward.
25       So that double position is being taken in

Page 40

1    this case. The debtor has gotten the advantage of a
2    billing method approach. And unless that order is
3    to be rescinded if now they switch positions and say
4    an accrual method is appropriate, then we ought to
5    be consistent. And the law of the case ought to be
6    what they have previously drilled down on most of
7    the tenants under with regard to a billing method
8    approach. And that ought to be what's adopted as
9    reflected by the authority of the unpublished
10   decision by the Fourth Circuit.
11       So I think it's unreasonable for the debtor
12   in this instance to be initially arguing extensively
13   in subjection of billing method approach; and now,
14   after its gotten the benefit of that, to turn around
15   and say, Okay, well, we really meant an accrual
16   approach. And now that we're talking about
17   end-of-the-month stub rent instead of
18   beginning-of-the-month stub rent, we're going to
19   take the other position, and beat down the landlords
20   in that instance so that they're not entitled to the
21   full month's rent.
22       THE COURT: All right. Thank you.
23       >>: Thank you, Your Honor.
24       MR. GRAY: Good afternoon, Your Honor.
25   William Gray for a number of the landlords that are

COOK & WILEY, INC.

Page 41

1   also part of this argument.
2       I agree with what has been said prior to me.
3   I would just emphasize, too, about the part that if
4   we're not in the billing method jurisdiction --
5   we're in the accrual -- the billing method is when
6   you kick over to preserve or fill the gap.  And
7   certain cases have said fill the stub rent gap; then
8   look to the 503; and then expense claim.  We don't
9   get there.  This should be the 365(d)(3) only.
10      There was a very recent case this past week
11  in the Southern District of New York, Judge Gropper.
12  That decision is mostly:  Is it billing or accrual?
13  And I would commend that to Your Honor's reading.
14  It's 2008 Westlaw 5265739.  Judge Gropper does
15  discuss also about a fair reading of due and payable
16  after the petition date is that it accrues every
17  single day.  And Judge Gropper also talks about the
18  jurisdictions that do the billing date.  Then they
19  fill the gap by the 503.  But that contradicts
20  365(d)(3) that has the notwithstanding 503.  You
21  shouldn't require landlords to get into the 503
22  discussion part there.
23      As to Super Priority claim, also, Your Honor,
24  I would mention that I did not hear anything here
25  that there's any risk of administrative

Page 42

1   insolvency -- which I believe, for example, Judge
2   Tyson's Virginia Packaging case, a fair reading of
3   that indicates that he was concerned about some sort
4   of administrative insolvency.  So I don't believe we
5   need to go to that, either.
6       And for all those reasons we do ask that
7   you -- right here you enter an order that says that
8   they must pay the stub rent, so we don't get into
9   asserting it later.
10      THE COURT:  So you don't think I should
11  follow the rule that Judge Tyson previously
12  established?
13      >>:  Well, again, Your Honor, I don't think
14  that is totally applicable, again, because there's
15  no evidence here that we're on the verge of any kind
16  of administrative insolvency.
17      THE COURT:  All right.  Thank you.  You think
18  that that's the only standard is administrative
19  insolvency, as opposed to taking into consideration
20  liquidity issues?
21      >>:  If you get to the 503, Your Honor.  My
22  point is that you don't get there.  It's a
23  365(d)(3).  All of the landlords here have timely
24  made their demand for it.  And so, we shouldn't be
25  put into the 503 box.

Page 43

1       THE COURT:  Okay.
2       MR. STEIN:  Good afternoon, Your Honor.  R.A.
3   Stein on behalf of Annapolis Plaza, LLC.  We had
4   filed a Motion to Compel payment under 365(d)(3).
5       And again, not to belabor the points
6   previously made by counsel, I join in all those
7   arguments.  And I believe Your Honor had pointed
8   out -- asked the question about the timely
9   performance.  What does timely mean?
10      And there's several cases that speak to that.
11  And I'll just cite to one, the Child World case,
12  which is 161 B.R. 571.  And that case says
13  explicitly that Section 365(d)(3) fixes the amount
14  to be paid by the debtor pending assumption of
15  rejection of the lease at the amount provided in the
16  lease, and requires these payments to be paid at the
17  time required in the lease.
18      So timely performance I believe under
19  365(d)(3) requires the debtor to make payments, you
20  know, now, as opposed to waiting till further order
21  of the Court or confirmation of the plan, as the
22  debtor would request.
23      THE COURT:  But that language would suggest
24  that you would make the payment on November 1, and
25  then not again until December 1 when the payment

Page 44

1   would be due.  And that was what I was asking
2   Mr. Galardi, if he was giving up that argument and
3   going with the accrual method.
4       If we're doing the accrual method, don't we
5   really have a legal fiction that we're creating
6   saying that we've created a block of time in which
7   we're going to say is due to the landlords.
8       But then we said it's a timely performance.
9   What does that mean?  That was what my question
10  was coming -- when does the debtor have to perform
11  that legal fiction obligation?
12      >>:  Right.  Obviously, it can't be as timely
13  as was required under the lease, because that time
14  is long gone.
15      MR. GALARDI:  Right.
16      >>:  But better late than never.
17      THE COURT:  So I have to set it for some
18  time?
19      >>:  Yes.
20      THE COURT:  And you're saying I should set it
21  for now?
22      >>:  Yes.
23      THE COURT:  And I guess when I keep
24  looking -- everybody says I have to look at the
25  statute.  But I don't see where in the statute it

Page 45

1    tells me -- it's just not that clear to me.
2         >>: Well, I guess I can agree that this
3    section of the code, together with many other
4    sections, could have been written a bit more clear.
5    But I guess we have -- we have to deal with what we
6    have to deal with.
7         THE COURT: All right.
8         >>: Just one other issue -- and I don't
9    think it's been dealt with yet. I'm not sure if
10   it's going to be dealt with separately. We've also
11   asked for payment of attorney's fees. And under
12   Track Auto, we believe that that's required to be
13   paid as part of the stub rent. And I don't know if
14   the debtors -- I believe the debtors' position is
15   that it's not to be paid now. I don't know if we
16   want to argue it now or later.
17        THE COURT: You can argue it, if you like.
18        >>: I mean, I don't think it's much of an
19   argument. I think under Track Auto where the lease
20   provides for attorney's fees, we will uphold the
21   terms of the contract. The lease between Annapolis
22   Plaza and the debtor specifically provides for
23   attorney's fees in this kind of situation; and,
24   therefore, we believe that, in addition to the
25   amounts owed under the -- for the actual lease,

Page 46

1    there's also our attorney's fees which need to be
2    paid under the Bankruptcy Code.
3         THE COURT: And what specifically does the
4    lease say with regard to obligations to pay
5    attorney's fees?
6         >>: I don't have it up here with me. I have
7    it back there. But it says in the event that there
8    is a -- that the lessor needs to take any action to
9    enforce payment of the rent, the lessee agrees to be
10   liable for all reasonable expenses incurred in
11   prosecuting that action. And it explicitly includes
12   attorney's fees.
13        THE COURT: Okay. Thank you.
14        >>: Good afternoon, Your Honor. Paul
15   Bliley. I represent several of the landlords:
16   Burbank Mall Associates, Crown CCI, Hayward 880,
17   LLC, Save Mart Supermarkets, CC-Investors 1997, and
18   the Lucknow Landlords. I join in Mr. Pollock's
19   argument.
20        THE COURT: All right. Thank you,
21   Mr. Bliley.
22        >>: Good afternoon, Your Honor. Malcolm
23   Mitchell on behalf of Polaris, Circuit City LLC.
24        I believe, Your Honor, with regard to this
25   timely issue -- timeliness issue -- that Section

Page 47

1    365(d)(3) does, in fact, talk to or speak to -- it
2    says, Timely perform all obligations of the debtor.
3    It does say that the Court may extend for cause the
4    time for performance of any such obligation that
5    arises within 60 days after the date of the order
6    for relief; but the time for performance shall be
7    extended beyond such -- sorry. But the time for
8    performance shall not be extended beyond such 60-day
9    period.
10        So I believe, Your Honor, and submit to you,
11   that it is clear that the legislature spoke to the
12   issue of timeliness. So that if it comes due -- if
13   the obligation arises, as has been conceded, on an
14   accrual basis -- as counsel for the debtor has
15   conceded, the obligation arose on November the 10th
16   for the subrent. And the furthest that that could
17   be extended would be for 60 days.
18        And so, for the rent that comes due for the
19   period November the 10th through November the 30th,
20   we would submit that, as has been previously argued,
21   January the 9th would be the 60th day. And that
22   would be what the Court should rule, that that
23   obligation should be extended only to the end of
24   that period.
25        THE COURT: All right. Thank you.

Page 48

1         MS. MILLER: Good afternoon, Your Honor.
2    Calena Miller on behalf of two landlords: First
3    Industrial Realty Trust, Inc. and General Orlando
4    Aviation Authority.
5         My clients, Your Honor, were among the group
6    of objecting landlords at the prior hearing before
7    the Court here on December the 5th. And I just
8    wanted to maintain the request of my clients that
9    the Court order the debtors to immediately pay any
10   amounts due to them for the stub period; and wanted
11   the record to reflect that my clients continue to
12   preserve their right to an administrative claim for
13   the amounts that are due for the stub period.
14        And we have an agreement with the debtors
15   that to the extent the court orders payment of such
16   rent and finalizes the timing of such payment, we'll
17   work with them to reconcile the amounts that are due
18   and owing. And if we cannot reach an agreement,
19   we'll schedule an evidentiary hearing at a later
20   date.
21        THE COURT: All right. Thank you.
22        >>: Good afternoon, Your Honor. My name is
23   Pete Carl (phonetic). I'm here on behalf of
24   PrattCenter, LLC and Valley Corners Shopping Center,
25   LLC.

Page 49

1      Your Honor, first of all, I'd like to join in
2  the arguments that have been made thus far on behalf
3  of my clients; and then point out some language
4  that's also in the Track Auto case which I think is
5  instructive.
6      Quoting from the Pudgie's Development of New
7  York case, the Judge states that Section 365(d)(3)
8  advances the landlord to the head of the line for
9  current payment of ongoing expenses in recognition
10 of his unique and voluntary creditor status.
11     It then goes on to state about whether this
12 should be treated as a Super Priority or not.  In
13 that particular instance, the Court said no.  I
14 think that this case is clearly distinguished from
15 that case in that that case was filed on July 5th or
16 '01, I believe.  I'm not sure when the motions were
17 actually filed, but the decision was rendered in
18 March of '02.  I'm going to assume that some time
19 had passed between the filing of the motion by the
20 landlord and the rendering of the decision.
21     And the Pudgie's case states that one of the
22 reasons behind the holding is to encourage lessors
23 to be proactive in asserting their rights.  And I
24 think clearly that is the case here, Your Honor.
25 The landlords have been proactive.  And as a result,

Page 50

1  we believe 365(d)(3) dictates that they should be
2  moved to the head of the line and paid for the stub
3  rent.
4      The argument raised by the debtor regarding
5  defaults under the DIP facility I'm not sure works
6  here.  The debtor made the decision, obviously, in
7  coming up with his budget not to pay stub rent.
8  They could have just as easily submitted a budget
9  that contemplated stub rent, and had that as part of
10 their DIP agreement, presumably.  We don't believe
11 that the landlord should be penalized for not
12 including that in their initial budget.
13     THE COURT:  Thank you.
14     >>:  Thank you, sir.
15     >>:  Good afternoon, Your Honor.  David
16 Caucus (phonetic) on behalf of the landlord, Port
17 Arthur Holdings, III, Limited.
18     Much of my argument has now been made perhaps
19 more persuasively than I would have by others on
20 behalf of the landlords.
21     I did want to emphasize the liquidity issue
22 again.  It seems to me that to the extent that the
23 debtor made an assumption that they would not have
24 to pay currently for the right to stay on the
25 premises while they earned revenue from that, that

Page 51

1  is a self-inflicted problem that should not now be
2  used as argument that should advance the cause that
3  they shouldn't honor the obligations that legally
4  they have under Section 365(d)(3).
5      I should also note that to the extent -- we
6  hope the Court will not rule that they are an
7  administrative expense; but to the extent the Court
8  does so, I believe the deadline may have been Friday
9  to file an administrative claim.  So certainly we'd
10 need to make sure to the extent -- because I know we
11 did not treat our stub rent as an administrative
12 claim, and we don't believe it is.  But to the
13 extent that the Court should rule otherwise, we'd
14 want to make sure that the landlords are provided
15 ample opportunity to file their claims timely.
16     Thank you, Your Honor.
17     >>:  Good afternoon, Your Honor.  Neil
18 McCullough (phonetic).  I'm here on behalf of two of
19 the landlords:  Panattoni Northglenn and Panattoni
20 Denton.  They're Items Number 15 and 17 on the
21 agenda for this afternoon.
22     I address the Court only to state my clients
23 agree with the arguments made by counsel so far, and
24 to join in that agreement.
25     THE COURT:  All right.  Thank you.

Page 52

1      >>:  Good afternoon, Your Honor.  Robert
2  LeHane; Kelley, Drye & Warren.  I represent
3  Developers Diversified, General Growth, Weingarten
4  Realty, Vasser, Phillips, Regency Centers -- six or
5  seven other landlords, Your Honor, with a total of
6  79 locations that are going forward.
7      I certainly agree with all the comments that
8  Mr. Pollock put on the record.  I would just like to
9  add that we believe the accrual method is entirely
10 consistent with congressional intent.  It's current
11 payment for post-petition services.  It's consistent
12 with the relevant case law -- Track Auto, Best
13 Products.  And it's consistent with the overall
14 purposes of the Code.
15     With respect to the timing question that you
16 have asked for several folks, what does 365(d)(3)
17 mean with respect to timely performance, I think
18 what you could find in almost all these leases is
19 that if the rent doesn't commence on the first day
20 of the month, then it shall be due and payable on
21 the first day of the following month.
22     And to the extent that you impose this legal
23 fiction that we have been discussing on the
24 Bankruptcy Code, you have the pre-petition portion,
25 and then you have post-petition rent due.  To the

Page 53

1  extent it's not due on the first day of the month,
2  it should be due timely on the first day of the next
3  month. But to the extent that the argument -- you
4  know, that the statute provides for the latest day
5  of the timing here would be January 9th, we ask at
6  the latest that the Court order that the debtor pay
7  the stub rent on January 9th.
8      We also did file the joinder, Your Honor.
9  And we attached to that a copy of the Memorandum of
10 Opinion that Judge Gropper just issued in the
11 Southern District of New York on Stone Barn.
12     THE COURT: All right. Thank you.
13     >>: Good afternoon, Your Honor. Mary House
14 on behalf of Birch Street -- CIM/Birch Street. We
15 join in the arguments that have been made this
16 morning.
17     >>: Nicholas Ferlan (phonetic), Your Honor.
18 I thought I was going to be last, but somebody else
19 came in behind me.
20     THE COURT: You can go back.
21        (Laughter)
22     >>: I, too, represent a number of landlords
23 who were objecting landlords to preserve their
24 rights at the December 5th hearing for this specific
25 issue today. Due to a number of other factors, it

Page 54

1  appears that the number of leases that I've got at
2  this point are down to about six or seven that are
3  affected by this issue; West Field, Cardinal Capital
4  has a couple, Bennetton (phonetic) Capital may be a
5  couple also.
6      Your Honor, I adopt and fully support the
7  well-raised arguments of both Mr. LeHane and
8  Mr. Pollock and the others who have come up here
9  today. This is an issue that has gone and come back
10 in a lot of ways. This issue started as a -- the
11 Courts were generally uniform in believing that this
12 was -- the pro rata approach was correct. There was
13 a swing toward the billing date method. And now I
14 believe the courts are swinging back conclusively
15 toward the accrual or pro rata method.
16     And I think that the Court ought to -- ought
17 to go with the -- substantially with the Track Auto
18 case. Thank you very much, Your Honor.
19     THE COURT: Thank you, sir.
20     MR. CARRIGAN: Good afternoon, Your Honor,
21 again. Daniel Carrigan; McKenna, Long & Aldridge,
22 with Orchard Park leaseholders. It's Number 25 on
23 this afternoon's agenda.
24     Our client is in the prime release with a
25 lease to the debtor, and then leases between the

Page 55

1  debtor and subtenants both -- whatever -- at this
2  stage.
3      Your Honor, the debtors' argument in its
4  omnibus objection and omnibus response to these
5  various motions that are kind of put together for
6  purposes of the hearing really rely on two cases:
7  K-Mart; and they rely on the case that K-Mart relied
8  on, Chatlos, out of Delaware.
9      There are two pieces to these cases that we
10 respectfully suggest that the Court can consider.
11 One is with respect to K-Mart. This was a situation
12 where the debtor had not been paid under the
13 sublease; and, in fact, the prime landlord in that
14 case -- or overlord, as the debtor characterizes it
15 -- had been paid by the sublessee. These were not
16 situations where the debtor had been paid and then
17 had retained the payments, and yet had not paid the
18 amounts due under the prime lease.
19     And, in fact, in the K-Mart case -- and as
20 noted in one of the pleadings to which we joined --
21 and I might say at this point before I forget it: I
22 join in everything that the landlord body has said
23 here today.
24     THE COURT: I was confident of that.
25     MR. CARRIGAN: Somehow I thought you were,

Page 56

1  Your Honor.
2      Your Honor, may I approach with copies of
3  orders from the K-Mart case? And these are
4  referenced in --
5      THE COURT: Give it to the security officer.
6      MR. CARRIGAN: Thank you, Your Honor. I have
7  copies for counsel.
8      Someone was helpful enough to mark these up
9  for me to -- before I got a hold of them -- to
10 illustrate. They are cited in the Golf Galaxy
11 response to the motion to reject that was filed at
12 one of the first day motions.
13     If the Court would turn to the second -- the
14 one that does not have the reference to Shilo,
15 Redcliff, Warrick and Super Value -- either the 2nd
16 or the 1st, depending on which you have. There is a
17 provision on page 2, paragraph 3, which says that,
18 The rights of any subtenant on the premises subject
19 of any real property lease under 365(h) of the Code
20 are preserved with respect to the debtors only.
21 Provided, however, with respect to any real property
22 lease subject to a sublease, the debtor, subject to
23 and after reconciling the subtenant's accounting
24 against any outstanding amounts owed to the debtors
25 under the applicable sublease, and applying any such

Page 57

1    rentals received against any such outstanding
2    amounts, shall turn over to the applicable landlord
3    any and all rentals collected by the debtors from
4    the subtenant of the premises subject to such real
5    property lease for rental periods arising from and
6    after the effective date of the rejection.
7        If you tie that to the pro rata -- the
8    pro-rated view that we're using in this case per
9    agreement with the debtor, what that would suggest
10   is that anything that the debtor has collected with
11   respect to a post rejection, post-petition period --
12   and remember, the debtor seeks to reject effective
13   as of November 10 or 11 or 12 -- whatever the date
14   is -- that those monies should be paid over to the
15   prime landlord.
16       So K-Mart -- which is one of the prime cases
17   they rely upon in this situation -- is factually
18   different, at least in the sense that there was --
19   in the particular lease that was considered in the
20   cited case, the post-rejection payments -- sublease
21   payments -- had been made to the prime landlord.
22   And in this case, essentially the rejections of
23   these subleases and the prime lease were conditioned
24   upon the pay over of monies that the debtor had
25   actually received. It's not clear from this, and

Page 58

1    there is some -- it's somewhat equivocal as to what
2    exactly they're talking about here. But it does
3    say, and it does recognize in principle that if
4    you're going to take the advantage of having the
5    rights as a lessee and as a sublessor, and you take
6    the benefits from the sublease, then you should have
7    to disgorge those benefits as a condition of getting
8    your earlier rejection date.
9        THE COURT: Do you know whether or not the
10   order that you referenced the Court, whether this
11   was something that was contested and this was a
12   decision of the Court; or whether this was an
13   agreement of the parties that commemorated -- and
14   the Court was commemorating the agreement of the
15   parties; or how this all came before the Court?
16       MR. CARRIGAN: I do not, Your Honor; only
17   what's recited in the order itself.
18       THE COURT: All right. Thank you.
19       MR. CARRIGAN: Two separate sections where it
20   was -- two separate orders where it was recited.
21       In addition, Your Honor, because K-Mart
22   relied so much upon Chatlos, if you look at the --
23   very near the end of the District Court's decision
24   in Chatlos, it's basically the last two paragraphs.
25   I'm sorry I have a version that has pages 1 through

Page 59

1    5, and that's not the B.R. It's 147 B.R. 96. It's
2    near the end of the case at page -- it looks like
3    it's at page 101.
4        What it describes is that, in fact, during
5    the hearing on the -- for the District Court on this
6    particular matter, what came up was that the debtor
7    had been paid post petition and post rejection by
8    the -- for periods of time post petition. And what
9    the decision says at the end -- it says, It further
10   appears -- and Chatlos apparently concedes this
11   point -- that Chatlos is liable to Kaplan for
12   approximately 60 days' administrative rent from the
13   period April 8, 1991, to June 7, 1991.
14   Additionally, Chatlos must pay to Kaplan any funds
15   paid to Chatlos by PS as rental payments, including
16   approximately $81,000 of said funds to which the
17   parties referred during oral argument before this
18   Court on May 29, 1992.
19       Again, Chatlos is recognizing the principle
20   that if you want an earlier rejection date on both
21   the prime lease and on the sublease, you must
22   disgorge that which is attributable to the
23   post-rejection period.
24       Now, in this case, again, since it was
25   November 10 is the date that they're looking for as

Page 60

1    the rejection date, then the amount attributable
2    that they have been paid to the remainder of the
3    month ought to be paid over to the prime landlord.
4    And that, Your Honor, is not so far from what the
5    debtor has done in those situations where there has
6    been a GOB sale ongoing in a lease premises where
7    they're selling the -- where they're selling the
8    inventory, and what have you, that's on site. What
9    they've done in reliance upon their pre-petition
10   agreement with the GOB sales agent, or liquidator,
11   or what have you, is that there is a provision that
12   the debtor is reimbursed for the expenses of the GOB
13   sale; and those reimbursements include rental
14   payments -- sort of stub rentals, if you will --
15   from the time of the filing until the time they
16   complete the GOB sale.
17       Now, what's the difference, really,
18   economically whether you get paid in arrears or you
19   get paid in advance? The debtors acknowledge it
20   would be unfair, it would be inequitable, and it
21   would be inappropriate to take the money, and then
22   on these GOB sales situations to not pass it through
23   to the landlords. Why, then, is it inequitable,
24   unfair or otherwise for them to have been paid in
25   advance, and not pass it through to the

Page 61

1  post-petition period between the date they want as
2  the rejection date and the end of the month?
3      And that basically, Your Honor -- I mean, the
4  debtor cites a lot of cases, and engages in a lot of
5  discussion in their briefs about how, to do so,
6  they're not allowed to make those payments. They're
7  not allowed to make those reimbursements because of
8  the Bankruptcy Code. Well, at least two Courts have
9  recognized that they are allowed. They're allowed
10  because it's within the Court's discretion to
11  condition their rejection upon making those
12  payments.
13      And that's what we asked for here. The
14  debtor has -- in its opening briefs on the first day
15  in its first day declarations, they essentially
16  provided to the Court and to the creditor body a
17  whole lot of reasons to disregard the priority
18  scheme set up in the Code, and the distribution
19  scheme set up in the Code. And it's based on things
20  like the Doctrine of Necessity. It's based on
21  things like Business Judgment. It's based on things
22  like: If we don't do this, the reorganization of
23  the debtor is going to be hampered, and the ultimate
24  detriment of all the creditors and stakeholders in
25  the case. Your Honor -- and those arguments -- the

Page 62

1  Court has accepted those arguments and so ruled; and
2  frankly, they make a lot of sense in those cases.
3  But it does upset the statutory scheme.
4      What the K-Mart case did, and what Chatlos
5  did, was to take the statutory scheme, and to find a
6  way to reconcile it with the facts and with the
7  payments that have been made. And what they
8  essentially did was to say: You can get your
9  rejection date, but you can't keep the money that
10  you were paid already for your post-petition periods.
11      And that's all we're asking to be done here,
12  Your Honor, in the case of the overlord
13  sublessor/sublessee situation. Thank you, Your
14  Honor.
15      THE COURT: Thank you, Mr. Carrigan.
16      MR. CARRIGAN: Your Honor, if I may, thank
17  you on behalf of our clients and our firm and my
18  colleague -- who I believe is on the phone -- for
19  allowing us to appear pro hac vice. And may we wish
20  the Court and its staff a Happy Holiday.
21      THE COURT: Thank you, sir.
22      MR. CARRIGAN: Thank you, Your Honor.
23      >>: Good afternoon, Your Honor. I'm Janet
24  Myberger (phonetic). I'm appearing on behalf of
25  Ricmac, R-I-C-M-A-C, Equities Corporation.

Page 63

1      Your Honor, I filed an objection to the
2  debtors' motion to extend the time to assume or
3  reject my client's lease, Docket Number 597. It was
4  on the agenda for the December 5 omnibus hearing,
5  which I attended. I did not note my appearance for
6  the record. I did want to do that today, though,
7  Your Honor, because my client's objection, which was
8  primarily based on the debtors' failure to comply
9  with Section 365(d)(3) and failure to timely perform
10  their post-petition obligations under my client's
11  lease. My client's objection was resolved. And it
12  was stated on the record it was resolved -- as were
13  the objections of the other landlords -- except with
14  respect to the stub rent. And that issue was
15  carried forward to today. It's not on the agenda
16  technically. But I did want to make clear that it
17  was agreed and stated on the record on December 5
18  that the landlords who objected to the motion to
19  extend, their objections would be treated as motions
20  to compel payment of the stub rent and taken up
21  today, along with those other motions.
22      So I'm noting my appearance for the record.
23  And obviously, Your Honor, I agree with the other
24  comments of the landlords' attorneys.
25      THE COURT: Thank you very much.

Page 64

1      >>: Good afternoon, Your Honor. My name is
2  Daniel (inaudible). I'm here on behalf of several
3  landlords, including Amcap Northpoint and Amcap
4  Overland. And I'd just like to join on the record
5  the arguments of both Mr. LeHane and Mr. Pollock.
6      I thought I was the last, but I guess not.
7      >>: Good afternoon, Your Honor, Sheila
8  Dellacruz again. I am counsel also for Altamonte
9  Springs Real Estate Development.
10      Very similar to what prior counsel has said
11  regarding filing an objection to the debtors' motion
12  to extend the time to assume or reject leases,
13  Altamonte also filed an objection, which, pursuant
14  to the December 5th hearing, Mr. Galardi did
15  represent that whether you filed a Motion to Compel
16  -- as many here have already done -- or an objection
17  as my clients, that all would be treated as a Motion
18  to Compel.
19      So on behalf of Altamonte Springs, whose
20  separate issue was the only thing left to resolve in
21  their objection from the December 5th hearing, we'd
22  also like to join in with the other landlords and
23  request stub payment at this time, Your Honor.
24      THE COURT: All right. Thank you very much.
25  Mr. Galardi? So I guess for the Court's

Page 65

1  understanding -- because we're taking up a lot of
2  these matters together on the agenda --
3      MR. GALARDI: And I think we'll go through
4  the agenda one by one after that, because I think we
5  have to do that.
6      One issue that seemed common to all of
7  them --
8      THE COURT: Is the stub rent.
9      MR. GALARDI: And so, the first thing with
10 respect to the two counsel that got up that did not
11 get listed on the agenda, but did raise this in the
12 365(d)(4) objection, I affirm that I didn't require
13 a motion to go and make this argument. I thought we
14 had plenty of those.
15     Your Honor, you've heard a lot about the
16 Southern District of New York. You've heard a lot
17 about the Third Circuit. And you heard a lot last
18 time about the Track Auto case. But everybody seems
19 to want to forget one part about Track Auto. And
20 that's where the Court specifically said -- finding
21 that Pudgie's, out of the Bankruptcy Court Southern
22 District of New York, we find this reasoning
23 persuasive, and agree that the remedy for untimely
24 performance of the 365(d)(3) is not Super Priority.
25     So even if everything they say is correct,

Page 66

1      and even if 365(d)(3) is the statute that we are
2  going under, they're asking for Super Priority
3  claim. And this circuit or this jurisdiction -- as
4  opposed to Delaware, as opposed to New York, as
5  opposed to the Sixth Circuit, as opposed to K-Mart,
6  as opposed to every other jurisdiction -- has a
7  different standard. That's part of the problem.
8  That's why landlords show up at every jurisdiction,
9  because they want one standard. And, frankly, from
10 a debtors' perspective, we do, too. But we're
11 living with the Autotrack. And Autotrack says it's
12 not necessarily a Super Priority claim.
13     Getting back to, I think, what Your Honor
14 asked, is the simplest question here: What is
15 timely performance? 365 says timely performance.
16 Well, the Child's World case that started this says,
17 Well, what's the lease say? Well, what the lease
18 says was this rent was due November 1st. So,
19 therefore, this timely obligation is not a timely
20 obligation that can be paid whatsoever.
21     So we're not going under the lease. So we're
22 now creating a legal fiction. What Courts have done
23 with the accrual method is created a legal fiction.
24 And the legal fiction basically says what? It says,
25 well, there's this period of time after you fail to

Page 67

1      timely perform that there is a day-to-day essential
2  benefit to the estate, but we don't have to worry
3  about 503(d), because we're going to do accrual.
4  Basically, it says notwithstanding 503(d), you're
5  going to have to perform the obligation.
6      Now, all we've said is with respect to that
7  period of time, nothing under any lease under any
8  contract is an obligation that has to be performed,
9  except for the legal fiction. So this Court has the
10 authority to decide: When do you pay that amount?
11     What Autotrack says is it's not entitled to
12 Super Priority. That to me says it's an
13 administrative claim. So Your Honor has -- and they
14 even go through and use 507(a) analysis. And they
15 say it doesn't have to satisfy the benefit to the
16 estate under 503(d), but it is still an
17 administrative claim. It is still a 503(d)(1)
18 expense. You just don't have to show benefit to the
19 estate because either it's so obvious or need not be
20 said that if you're in a premises occupying those
21 premises, it's an actual and necessary cost of doing
22 business. The accrual method works. So given
23 507(a) priority -- and that means paying 1129(a)(9).
24 You can pay it at that point.
25     So I think the first aspect is

Page 68

1      notwithstanding what Judge Gropper says in New York,
2  and notwithstanding what the Sixth Circuit says, and
3  notwithstanding what the Third Circuit says, this
4  Court has already said it does not have to be
5  treated as a Super Priority claim, whether it's
6  365(d)(3) or not.
7      Now, Your Honor -- and I appreciate
8  Mr. Pollock giving me to January 9th. I actually
9  think that's an incorrect reading. So although we
10 agree about many things, I actually don't think that
11 365 -- and I'll gladly say that at the earliest I
12 would pay it January 9th. But I don't think that
13 that's what 365(d)(3) says. It says, The Court may
14 extend for cause the time for performance of any
15 obligation that arises within the 60 days after the
16 order for relief.
17     Again, our view is this obligation did not
18 arise under any contract in that 60-day period. It
19 arose on November 1st. So I don't get only to
20 January 9th. I get what 507(a) says I get. I get
21 to the confirmation of a plan, whether it's
22 365(d)(3) -- so I put two things together. I put
23 the Autotrack together. And it says even if it's
24 365(d)(3) it says -- and everybody up here wanted to
25 get Autotrack, Autotrack, Autotrack. Now they don't

Page 69

1   want it, because it says it's not a Super Priority
2   claim. I don't have to pay it right now.
3   365(d)(3), it's not a time -- an obligation that
4   arose after the 60 days. It's a legal fiction.
5   It's not an obligation. The Court has basically
6   said, We agree that it's 365(d)(3), but it doesn't
7   go to establish the priority. It follows the
8   Pudgie's Development case, and says it doesn't tell
9   you when the priority is. It doesn't tell you the
10  established priority. It does tell you that it's
11  not a Super Priority. And so, I come back to: Your
12  Honor has the discretion under the circumstances to
13  decide when this payment has to be made.
14      Now, what we have done -- now, many people
15  will say, Well, we should put on evidence that we
16  might be administratively insolvent. Well, that
17  would seem to me counterintuitive, because if we're
18  administratively insolvent, I'd be far more
19  sympathetic to the landlords paying now, because you
20  don't want them to take the risk.
21      The whole point of the Track Auto case was to
22  say, Come in. Don't sit back on your rights.
23  Assert your claim. Get it asserted. We have agreed
24  that we would not have it subject to disgorgement.
25  That was the big conversation on 365(d)(3). We'll

Page 70

1   agree you have an administrative claim. We'll agree
2   it's not subject to disgorgement. What we haven't
3   agreed to -- and what I don't think Track Auto says,
4   I don't think 365(d)(3) says, and I don't think any
5   opinion says -- even Judge Gropper's opinion didn't
6   say, You have to pay it now. You have to pay it on
7   today. And timely obligation here doesn't make
8   sense when the timely obligation was pre-petition.
9   The landlords put it back to pre-petition. It was
10  10 days. They didn't act pre-petition. Timely
11  performance under the lease cannot happen now.
12      And Your Honor has both precedent, plus
13  discretion, plus no statute that precludes that
14  allows you determine the timing of the payment. And
15  all we've asked is the timing of the payment is not
16  now. The timing of the payment may be January 9th.
17  It may be January 16th. It may be the effective
18  date of the plan. But it is nothing required by
19  statute that says it's today.
20      And we are asking you to not order it today,
21  to deny the motion without prejudice to come back
22  with change in circumstances -- and again, I don't
23  need the parade of landlords on a weekly basis --
24  but we think that at least at this point since it's
25  not Super Priority, they have the protection that

Page 71

1   they're not going to be subject to disgorgement that
2   they have to share with others, that we would ask
3   the Court to say it's a 507(a) administrative claim.
4   365(d)(3) does not require that we timely pay it
5   right now. We agree to the accrual method which
6   created a legal fiction. We don't concede that
7   we've conceded that the accrual method says it's a
8   timely obligation. To agree with the accrual method
9   is to say we understand it's a post-petition
10  expense. It's not to say that there is an
11  obligation to be bound to pay it, and to timely
12  perform it. We agree it's an obligation. We agree
13  it's an administrative expense. If we had pushed
14  the billing date approach, we would have pushed
15  it -- this isn't even an administrative claim. It
16  would have been a pre-petition claim, as the Sixth
17  Circuit said.
18      So we're agreeing to compromise and say it's
19  an administrative claim, but we don't think
20  365(d)(3) requires payment. And we think simply the
21  Track Auto case says it's not entitled to Super
22  Priority, which is to pay it in advance of other
23  administrative claims, or in advance of the secured
24  lenders. And we would ask Your Honor to deny the
25  request for stub rent without prejudice if there's a

Page 72

1   change in circumstance; but to say that it's a
2   507(a) claim, just as it says in Track Auto, and
3   that it can be paid in accordance with when 507(a)
4   claims are paid, which is the effective date of the
5   plan, unless the Court orders otherwise.
6       That's our response, Your Honor.
7       THE COURT: All right. Thank you.
8   Mr. Pollock, you don't agree with that?
9       MR. POLLOCK: No, Your Honor. Since this is
10  really a landlord motion, might I just reply to two
11  points that were made subsequent to my initial
12  argument?
13      THE COURT: I'll let you.
14      MR. POLLOCK: Thank you, Your Honor.
15      First, just to clarify one thing that was
16  said, somebody raised an issue about a Friday bar
17  date for administrative claims. That was a
18  507(b)(9) claim. So there is no --
19      MR. GALARDI: It's a 503(b)(9), Your Honor.
20  It wasn't an administrative claim.
21      THE COURT: I was aware of that.
22      MR. POLLOCK: I didn't want everybody to be
23  rushing in and filing administrative claims.
24      Your Honor, the two points that were raised
25  were this sort of Super Priority and legal fiction

Page 73

1   issue. I don't think it's either. There is no
2   legal fiction. The legal fiction is that the rent
3   is only due on the 1st of the month. That presumes
4   that if the debtor doesn't pay, or any tenant
5   doesn't pay, the rent goes away. He doesn't have to
6   pay it. On the 2nd of the month he can walk in and
7   say, I didn't pay you on the 1st. I don't have to
8   pay you till next month.
9       THE COURT: There's no question that the rent
10  is going away. I mean, everybody acknowledges that
11  the rent is due for the stub rent.
12      The question is: What does timely perform
13  mean? And that was the question I think people were
14  trying to answer. And Mr. Galardi suggested that
15  the obligation to perform occurred on the 1st of the
16  month, if that's what the rent -- the lease says; or
17  if it has some other date, whatever that date is.
18  And that's what timely perform means. And then if
19  that date has come and gone, then it's up to the
20  Court to try to figure out: Okay, when does the
21  debtor -- when is the debtor required to perform.
22      MR. POLLOCK: And that's what I'm suggesting
23  to Your Honor is incorrect, that the rent may be due
24  on the 1st; but the rent continues to be due
25  throughout the period, throughout the month. The

Page 74

1   rent does not just -- it's not just due on the 1st.
2   The rent is due until it is paid. And the
3   pro-ration method separates the pre-petition versus
4   the post-petition. And in essence, as Mr. LeHane
5   indicated, most of the leases say the lease doesn't
6   begin on the 1st of the month, and you pay from that
7   day till the end of the month. And that's what we
8   have. The rent doesn't go away. The fiction is
9   that the rent was only due, and is therefore a
10  pre-petition obligation. What I'm saying to
11  you is --
12      THE COURT: That's not what we're saying at
13  all. We're saying that it's a post-petition
14  obligation for the stub rent.
15      MR. POLLOCK: Correct.
16      THE COURT: And that it is payable to the
17  landlords. And it's at least entitled to a 507
18  administrative claim.
19      Now, the question is: When does it have to
20  be paid? And that's the thing that I'm struggling
21  with, because if the obligation occurred on the 1st
22  of the month to pay it, then, you know, when is the
23  time fixed? And what does timely perform
24  obligations that arise after commencement of the
25  case, what does that mean?

Page 75

1       MR. POLLOCK: And that's what I'm suggesting
2   to Your Honor, is that under virtually every lease,
3   that obligation is a continuing obligation. And the
4   timeliness of it doesn't go away on that 1st of the
5   month. The timeliness goes -- begins or accrues
6   essentially each day. And on the first day of the
7   filing there is a timely obligation -- there's still
8   an obligation to timely pay.
9       The outside of that timely obligation -- and
10  I read that section quite differently than
11  Mr. Galardi suggests -- the outside obligation is 60
12  days. The Court, like I say, cannot go beyond that
13  period. And that goes back to the original
14  congressional intent when the 1984 amendments were
15  passed where the oft-cited comments of Senator
16  Hatch, that the landlord is to be paid and not have
17  to wait for the payment of the rent. Things are to
18  be done on a timely basis. And that's what this was
19  all about in the first instance.
20      Could we have written it more clearly?
21  Absolutely. Would we like to see it changed so it
22  is clear and we don't have these fights going
23  forward? Absolutely. But as others have said, this
24  is what we have to deal with today, and that's the
25  basis that Your Honor has to reach an ultimate

Page 76

1   decision.
2       THE COURT: Of course, this is probably the
3   most amended section in the entire Bankruptcy Code.
4       MR. POLLOCK: Oh, we've tried to amend it
5   even more, Your Honor, but have not been successful.
6       (Laughter)
7       MR. GALARDI: You're trying to get it right;
8   right, David?
9       MR. POLLOCK: I'm still trying.
10      Those are really the only two points, Your
11  Honor: The 60-day -- my disagreement with 60 days,
12  that being the outside date for timeliness; and the
13  other argument with regard to --
14      THE COURT: All right. Thank you, sir.
15      MR. POLLOCK: Thank you, Your Honor.
16      >>: If I may, Your Honor, Michael Condealis
17  again on behalf of Cole Partners.
18      There is a distinction that our clients have
19  in this instance; and that is that our rent came due
20  at the end of the month instead of the beginning of
21  the month. So on November 31st is when our rent was
22  due.
23      So all the arguments Mr. Galardi is making
24  that there is this legal fiction does not apply in
25  our instance; and that, instead, we are

Page 77

1  post-petition obligation. And that's why we feel
2  it's important that the debtor first having taken
3  the position that the billing method applies, would
4  make the rent for the entire month due. But at a
5  minimum, if the Court adopts the accrual method,
6  then we would at least be obligated to receive the
7  rent for the period from November 10th to the end of
8  the month.
9       THE COURT: So your lease provided that on
10 December 1, the November rent was due?
11      >>: No. On November 31st, the November rent
12 was due.
13      THE COURT: Okay.
14      >>: Thank you, Your Honor. Pete Carl again.
15      Just a couple of follow-up points. In Judge
16 Gropper's decision, Your Honor, in talking about --
17 I realize the Court is wrestling with the question
18 of timeliness. It's In Re: Stone Barn Manhattan,
19 LLC, formerly known as Steve & Barry. Judge Gropper
20 says that, The Court remains convinced that the
21 proper construction of 365(d)(3) is to hold the
22 debtors responsible for the stub rent measured on a
23 daily basis as it accrued after the date of the
24 orders for relief, and until the end of that month.
25      So I would concur in the argument that --

Page 78

1       THE COURT: So we're saying the
2  response before -- I mean, there's no question about
3  that. Just when are you then required to make the
4  payment for which you're responsible?
5       >>: Well, then I go back to the language in
6  Track Auto that I cited before which quoted that
7  portion of the Pudgie's case that does indicate that
8  landlords are brought to the top of the line. I
9  believe it says advance the landlord to the head of
10 the line for current payment of ongoing expenses.
11 And then it seems to condition that on the landlord
12 being proactive in exercising his rights.
13      And again, I believe that is absolutely the
14 case here. These landlords have come in on a
15 proactive basis to exercise their rights; and as a
16 result, should have what in effect is a Super
17 Priority type claim.
18      THE COURT: But Judge Adams in the Track Auto
19 case, he said that it wasn't entitled to a Super
20 Priority.
21      >>: Understood. But I think you need to
22 look at the time frame there. As I read this case,
23 that case was filed again in July of '01. I don't
24 think it references in here when the motions were
25 filed. But the decision wasn't until March of '02.

Page 79

1  He said, The statute does not allow the landlord
2  should permit his right to lapse into a claim for
3  accrued amounts and later attempt to assert the
4  claim on a Super Priority basis.
5       So I think a distinguishing characteristic
6  here is that there was no delay. There was no
7  waiting. And the landlords came in right away to
8  assert their claims.
9       THE COURT: Okay. Thank you.
10      >>: Thank you, sir.
11      MR. GALARDI: Your Honor, I didn't address
12 two points. Again, we would rest on the Track Auto
13 as far as that goes. The Court is pretty clear as
14 to what the debate was. It says what the debate was
15 on the payment. And then it says, you know, it
16 would be unfair to similarly-situated creditors to
17 grant it anything more. So it didn't grant a Super
18 Priority claim.
19      The one topic that I did not address was the
20 attorney's fees issue. Just briefly, Your Honor,
21 none of the landlords -- they all put through their
22 leases. And fortunately or unfortunately, I've been
23 through this argument as well. The leases are never
24 as clear as the landlords say they are. And it's
25 not always clear that they're enforcing breaches of

Page 80

1  the leases or the Bankruptcy Code.
2       So we would like to reserve rights on all of
3  those. We think -- but nothing here would prejudice
4  their claims. Indeed, Your Honor, even the counsel
5  who was up here said the fees had to be reasonable.
6       We've taken the position -- at least in other
7  cases, and wouldn't be surprised if we take it
8  here -- that the post-petition attorney's fees,
9  notwithstanding Autotrack, need not be paid. But
10 even if they're paid, they are restricted to the
11 specific term of the lease. An invoice would have
12 to be sent. And we would reserve our right to see
13 the invoice and object to that, Your Honor.
14      Again, Your Honor, what the landlords
15 basically want to say is that each and every day
16 post-petition is a new lease, a new transaction --
17 whether it's daily, weekly, by the second. And they
18 want us to pay as we go each and every day. We
19 don't see that in our leases. And Mr. Pollock and
20 Mr. LeHane get up and say, Well, all of these leases
21 probably do that, and you have to pay it the next
22 time. Well, there's many contracts that are
23 pre-petition contracts that carry that over, and you
24 don't have to pay it. If the first -- the way in
25 which the Courts have looked at this is: What's the

Page 81

1   day that the obligation first arose? The obligation
2   first arose on November 1st. No one has objected to
3   that. And so, even though we have the fiction, the
4   metaphysical fiction of cutting each day to a day
5   that you're getting benefits -- Your Honor, again,
6   Track Auto just simply says, That's fine, but we
7   don't have to pay that as a Super Priority claim.
8       So we'd ask Your Honor to deny the motions
9   for stub rent.
10      THE COURT: Mr. Galardi, would you comment on
11  Mr. Condealis' lease?
12      MR. GALARDI: Sure.
13      THE COURT: He has one which the obligation
14  arose on November 31 for the stub rent that would be
15  paid in November.
16      MR. GALARDI: Right. Your Honor, and again,
17  there were other ones that we settled last time.
18  And what we have agreed to do is if it arose on --
19  if the obligation was November 30th for the entire
20  month of November, what we have agreed to is to pay
21  under the accrual method the 20 days.
22      What Mr. Condealis is arguing is: Well, I
23  don't really like the accrual method on this
24  particular point. I like the billing date approach
25  so I can get the full November approach.

Page 82

1       Your Honor, what we have said as to in this
2   case we'll be governed by -- Your Honor asked me
3   whether I'm going to step away from the billing date
4   approach -- given Track Auto, and given how
5   everything has developed, and given that I think
6   close to 80 percent of the landlords are here
7   anyway, we decided to stay away from the billing
8   date approach.
9       So with respect to that, his argument if the
10  accrual method is going to govern this case, our
11  view is the same. If it's due on November 30th, we
12  pay the post-petition portion from November 10th to
13  November 30th. I think that gentleman wants all the
14  way back to November 10th.
15      And we would say the accrual method, if
16  you're going to only do for post petition will
17  benefit post-petition occupancy, then at least for
18  this period of time we would make that payment only,
19  the 20-day payment. Thank you.
20      THE COURT: All right. Thank you.
21      The Court has looked at this matter. The
22  statute could be a lot clearer than it is. The
23  Court is going to follow the Track Auto and Judge
24  Tyson's prior decision that has been established in
25  this district, and not order the debtor to pay the

Page 83

1   stub rent at this time on the basis that it's not
2   entitled to Super Priority.
3       It is entitled to priority in the
4   administrative claim under Section 507(a). The only
5   question is when the timing of the payment should be
6   made. And the timing of that payment would be, as
7   Mr. Galardi says, of the effective date of the plan.
8   But that's without prejudice to any landlord being
9   able to come back for cause and requesting an
10  earlier payment as developments in the case may
11  dictate.
12      With regard to the payment of attorney's
13  fees, the Court is not going to require the payment
14  of attorney's fees at that time -- at this time; and
15  again reserving the right of the debtor to object to
16  the claims that come due and the claims that are
17  made, and will take them up on an individual basis
18  depending on the contract language set forth in the
19  lease.
20      With regard to leases that provide for the
21  obligation to pay rent arising after the
22  commencement of the case, the debtor will be
23  responsible for paying the stub rent, but only the
24  20-day portion of the rent for November. And that
25  obligation became due on November 31, or whatever

Page 84

1   day it was set forth in the lease. And so that rent
2   would have to be paid.
3       Are there any other issues that I failed to
4   mention, Mr. Galardi?
5       MR. GALARDI: I think on the broad issues, I
6   think if we run through the agenda things may come
7   up now, Your Honor. I think that's the best way to
8   approach it.
9       THE COURT: And we can discuss, then, how
10  we're going to -- you know, with regard to that
11  finding, as well. But let's go through the agenda
12  at this point.
13      MR. GALARDI: Sure. The matter that started
14  this all was the motion of Burbank Mall. I think
15  that addresses all of the Burbank Mall issues.
16      THE COURT: That's Number 8.
17      >>: This is Paul Bliley, Your Honor. I
18  think that's correct.
19      MR. GALARDI: Your Honor, I guess this is as
20  good a time as any to discuss how to do orders on
21  these matters. Should we just submit individual
22  orders that deny it on the grounds set forth in the
23  record with respect to this particular one, and then
24  we can deal with that? Is that acceptable to you?
25      >>: That's fine with me.

Page 85

1      THE COURT:  Okay.  That's fine with the
2  Court.
3      MR. GALARDI:  Thank you, Your Honor.
4      Your Honor, the next matter is Matter 9,
5  which is the motion of Crown CCI.  Again, I think it
6  was the same sort of Motion to Compel.  I don't know
7  if we have addressed all of the issues.
8      >>:  Paul Bliley for CCI.  That's correct;
9  it's been addressed.
10      THE COURT:  Okay.
11      MR. GALARDI:  The next motion on the agenda
12  is Item Number 10.  It's the motion of Woodlawn
13  Associates; again, a Motion to Compel.  I'm not
14  sure; I think it was only a stub rent issue.
15      >>:  Sheila Dellacruz.  Yes, it was a stub
16  rent issue.
17      But could Your Honor clarify -- I couldn't
18  hear in the back -- do we need to submit individuals
19  orders for the motions?
20      MR. GALARDI:  It's fine by me to submit --
21  just to give you a form of order denying the motion
22  for the reasons set forth on the record, if that's
23  the easiest thing for you.
24      >>:  That's fine.  Thank you.
25      THE COURT:  Thank you.

Page 86

1      MR. GALARDI:  Your Honor, the next one is
2  Item 11, which is the motion by 502-12 86th.  I
3  believe that this is -- the only outstanding issue
4  on this was the stub rent, because I believe we paid
5  the December rent, which got caught up.  I don't
6  know if counsel is here.
7      >>:  That's true for 11 and 12 coming up.
8      MR. GALARDI:  And that obviously takes care
9  of Matter 12 as well, the motion of Basile Limited
10  Liability Company.
11      Your Honor, the next matter on the agenda was
12  Item Number 13, which was the motion by the debtors
13  to establish bidding procedures.  We have resolved
14  all of the matters, because there were a number of
15  objections to cure amounts, which obviously since
16  we -- let me give some background, Your Honor.
17      We had basically a process where we were
18  going to auction those leases -- I think it was
19  roughly 100 or so, or 155 of the ones that were
20  store closings.  Unfortunately, given the retail
21  environment I believe in general, and many big boxes
22  being on the market, we got only one bid by one
23  party for the lease.  So we canceled the auction
24  with respect to that.
25      The one objection that we have is the

Page 87

1  objection of Rio Associates, which is Item B on page
2  16.  My understanding is that that is now resolved
3  with Rio.  And so, there would be no other
4  objections.  And I think there's no order that Your
5  Honor has to enter, unless we have a stipulation
6  order with Rio that may resolve that objection.
7  Your Honor has already approved the procedures.
8  This was actually just carry-over matters.
9      THE COURT:  All right.  Very good.
10      >>:  Your Honor, to go back to the decision
11  the Court made after the discussions with
12  Mr. Pollock and so forth, we would respectfully ask
13  if the Court will make the findings and conclusions
14  as to that issue, and either consider today or
15  consider at a very early date a request for either
16  an interlocutory direct appeal or interlocutory
17  appeal to the extent the Court does not believe it's
18  a final order -- a final decision, because we think
19  it's important.
20      THE COURT:  The Court will issue findings
21  about conclusions of law.
22      >>:  Thank you very much.  I apologize for
23  interrupting.
24      MR. GALARDI:  I'm usually the one asking for
25  orders to take appeal.  So I'm sympathetic to that.

Page 88

1      The motion -- Number 14, Your Honor, is the
2  motion for supporting memorandum of CCDC.  I believe
3  that is actually listed on the agenda as resolved.
4      MR. WESTERMAN:  Good afternoon, Your Honor.
5  Robbie Westerman on behalf of CCDC Marion.  That's
6  correct; we resolved that matter with the debtors.
7  That motion is withdrawn.
8      THE COURT:  Okay.  Thank you.
9      MR. GALARDI:  Your Honor, the next matter on
10  the agenda was Panattoni Denton's Motion to Compel.
11  I think the only outstanding issue under that one
12  that has not been consensually resolved was the stub
13  rent.  And with Your Honor's decision, I believe
14  that is now resolved.
15      >>:  Correct.  Your Honor, Neil McCullough on
16  behalf of Panattoni.  That's true with respect to
17  Number 15 and Number 17.
18      THE COURT:  And 17?
19      >>:  Yes, sir.
20      THE COURT:  All right.
21      MR. GALARDI:  Your Honor, the next objection
22  is objection of landlords -- I can't read my own
23  writing as to what this was.  I believe this, too,
24  was a stub rent issue.  It's Docket Number 627. I
25  don't know if counsel is here.

Page 89

1   THE COURT: Yes.
2       MR. GRAY: Good afternoon again, Your Honor.
3   William Gray for Ray Musey's, Inc.; 146 Millbury,
4   LLC, Interstate Augusta Properties, LLC; E & A
5   Northeast Limited Partnership; and NPP Development,
6   LLC.
7       The issue was the stub rent. Thank you, Your
8   Honor.
9       THE COURT: All right. Thank you.
10      MR. GALARDI: The next matter that we have
11  not addressed is Item Number 18, which is the motion
12  and supporting memorandum of Polaris Circuit City.
13  I have that noted that that was simply a stub rent
14  issue, as well.
15      >>: That's correct, Your Honor.
16      THE COURT: All right. Thank you.
17      MR. GALARDI: Number 19, Your Honor, is the
18  Motion of Hayward 880, LLC. Your Honor, we actually
19  have two issues here. One was stub rent. The other
20  was that the landlord had also wanted us to pay
21  taxes. And my understanding, those are estimated
22  taxes. And obviously, given Your Honor's opinion --
23  decision and also the Autotrack, we think it's not
24  appropriate for us to be ordered to pay estimated
25  taxes at this point.

Page 90

1       THE COURT: All right.
2       >>: Paul Bliley for Hayward 880. I assume
3   your ruling would apply to that.
4       THE COURT: It would, yes.
5       MR. GALARDI: I guess you're Number 22.
6       >>: 20.
7       MR. GALARDI: The next one is the motion of
8   Save Mart Supermarkets; again, a request to pay
9   rent, CAM and related charges. Your Honor, that
10  also had the stub rent issues. It also had an issue
11  with respect to late charges and potential interest.
12      Your Honor, we didn't argue that one. The
13  debtors would believe that those are not -- that
14  they're not entitled to administrative expense
15  priority. I'm sure that counsel will. What I would
16  suggest is that we simply reserve that issue in a
17  claim, if that works for you.
18      >>: That's fine.
19      THE COURT: All right. So those issues will
20  be reserved.
21      >>: Paul Bliley for Save Mart, Your Honor.
22      MR. GALARDI: The next one is Matter Number
23  21, which is CC-Investors 1997, LLC. My
24  understanding is that was simply a stub rent
25  request.

Page 91

1       >>: Judge, Paul Bliley again for
2   CC-Investors. I think this is one where the payment
3   was due on November the 25th. Under what
4   Mr. Condealis said, I assume that would apply to
5   that.
6       THE COURT: It would. So you'd be entitled,
7   then, to the payment for the 15 days in that case.
8       MR. GALARDI: Well, I think your 25th covers
9   the entire November; right?
10      >>: Correct.
11      MR. GALARDI: So I think it's still -- even
12  though it's the 25th, I think it's 20 days post
13  filing. We'll make sure it's whatever it covers,
14  but I think it's the 25th for the entire month.
15      >>: Correct.
16      THE COURT: I misspoke.
17      MR. GALARDI: Moving to Matter 22, that is
18  the motion of Lucknow Landlords. Again, there is a
19  late issue. December, I think, has been taken care
20  of. I may be wrong.
21      >>: Correct.
22      MR. GALARDI: And November is in arrears. So
23  we would make the same arrangements: All rights
24  reserved on the late fees and the administrative
25  status. I think this is a November paid in arrears

Page 92

1   lease. So we'd still do the period of time. And
2   November is the November in arrears. So it's
3   actually not due and payable yet. But we would pay
4   it timely for the entire month of December, as
5   opposed to the issue right now.
6       >>: Correct.
7       THE COURT: All right.
8       MR. GALARDI: Your Honor, moving to 23, that
9   is the motion by Annapolis Plaza LLC. My
10  understanding is the only outstanding issue was the
11  November stub rent. The December rent has been
12  paid.
13      >>: That's correct, Your Honor. R.A. Stein
14  on behalf of Annapolis Plaza.
15      THE COURT: Thank you.
16      MR. GALARDI: Your Honor, Matter Number 24 is
17  the Memorandum of Law of Baker Natick and a number
18  of landlords. As noted in the status, there was
19  really only -- the only open issue was one location,
20  which was Baker Natick. And I believe that the only
21  issue there was the stub rent. And I think Your
22  Honor's decision disposes of this matter.
23      THE COURT: Mr. Gray?
24      MR. GRAY: Good afternoon, Your Honor.
25  William Gray for the movants on this motion.

Page 93

1    There were seven clients that were included
2 in this. Seven of them have been resolved. So Your
3 Honor's ruling would pertain to Baker Natick
4 Promenade LLC. All the rest of the clients on that
5 motion have been resolved.
6    THE COURT: All right. Thank you.
7    MR. GALARDI: Your Honor, the next matter is
8 25, which is the order compelling payment and
9 joinder by 120 Orchard. I believe this is the
10 gentleman that has raised the stub rent sublease
11 issue, Your Honor.
12    THE COURT: And I think we probably need to
13 re-address that.
14    MR. GALARDI: I think that's probably
15 correct, Your Honor. I think from the debtors'
16 position, again, we may have a disagreement. We did
17 collect November rent. Clearly with respect to the
18 rejection and any December rent, we have no
19 objection to turning over rents we collected post
20 petition.
21    I think if you look carefully at the language
22 from K-Mart -- and again, I'm not sure this is the
23 case, but it was amounts, I think, collected post
24 the effective date. In either event, here we have a
25 November -- I think this is a November 10th -- it

Page 94

1 may not be, but I think this was a November 10th
2 rejection. If we recovered rents or actually were
3 paid money post petition, that's why we were
4 prepared to give up the December. We collected the
5 November rent pre-petition.
6    I understand that there may be a certain
7 unfairness to that. But at the same time, I don't
8 think with the comingling and everything that we and
9 the Committee have discussed, that it is our
10 obligation to turn that over.
11    In addition, since we are rejecting effective
12 November 10th, we don't think that we have a
13 post-petition expense. But I'll let the gentleman
14 discuss the issue.
15    THE COURT: Address the argument that was
16 made that the Court can condition the payment of the
17 rents that you collected in connection with ordering
18 or granting the motion to reject the lease.
19    MR. GALARDI: Your Honor, again, procedurally
20 I think it's improper because the motion to reject
21 is a simple 365 decision that is the business
22 judgment of the debtors. To condition it would mean
23 that if we didn't pay it, what happens? No
24 rejection. No assumption until that amount was
25 paid.

Page 95

1    Really, it is a claim issue. It is a Motion
2 to Compel payment or a request for an administrative
3 expense. There are other statutory avenues for
4 counsel to pursue on that behalf. I don't think
5 it's a valid objection to a rejection that you have
6 to pay such amounts. That's to preserve all rights
7 with respect to amounts, be them administrative or
8 unsecured; but I think it's actually a counterclaim,
9 if you wanted to go through all the legal
10 maneuvering.
11    So it's procedurally not proper to therefore
12 condition it on that, because all it would do is
13 burden the estate for an additional expense until it
14 paid it, or until it was litigated to pay it. And
15 we obviously don't think it was due and payable,
16 Your Honor.
17    That does not at all preclude them from
18 arguing an equitable trust or some grounds for
19 saying that they should be able to get back from us
20 the rent we received pre-bankruptcy from the
21 subtenant.
22    THE COURT: All right. Thank you.
23    MR. CARRIGAN: Daniel Carrigan, Your Honor,
24 for the Orchard landlords.
25    Quite contrary, Your Honor; it's not just a

Page 96

1 question of a counterclaim or a constructive trust
2 complaint, or some other sort of thing. It goes to
3 the fundamental decision by the Court whether to
4 recognize the rejection as of the 10th of November
5 as a valid exercise of the debtors' business
6 judgment. And as Judge Tyson said, as Judge
7 Mitchell said, as the Ames case has said -- Fourth
8 Circuit in an old case has said -- the debtors'
9 business judgment is a shield, not a sword. And
10 what -- the effect of interpreting the exercise of
11 the debtors' business judgment here is both a shield
12 and a sword.
13    The rejection is supposed to protect the
14 debtor from ongoing obligations. And it is not to
15 enable to debtor to collect money, as they knew when
16 they were going to file. They knew that they were
17 going to take in the money from the subtenants.
18 They knew they weren't going to pay their November
19 rent; yet they took it in. It is not supposed to be
20 a weapon against the landlords, or any other
21 creditor, for that matter.
22    And when business judgment is used as a sword
23 as well as a shield, then it tips the balance that's
24 been structured by the Bankruptcy Code. And then --
25 and in those circumstances the Ames Court said --

Page 97

1    and again, as Judge Tyson and Judge Mitchell have
2    said -- in the context of the Doctrine of Necessity,
3    then it's an improper use of the debtors' exercise
4    of business judgment.
5        And the way the Court can correct that is the
6    way that the Chatlos Court corrected it, and the way
7    the K-Mart Court corrected it. And what it says
8    was: Debtor, if you want the benefit of the
9    rejection and the exercise of your business judgment
10   at a date earlier than when you have had the
11   benefit -- the full benefit for the entire month of
12   the subrent that was paid, and the taxes that were
13   paid, and the CAM charges that were paid; then your
14   exercise of the business judgment is going to be
15   conditioned on paying that money over to the
16   landlord. Alternatively, you can wait until the end
17   of the month to have your effective date of
18   rejection.
19       I'd point out also -- and this is somewhat
20   the confusion here that's created by the -- of the
21   other piece of this puzzle, which is the objection
22   to the original motion to reject. That's now set
23   for hearing on January 29th as a result of the
24   objection by the subtenant and our joinder in that
25   objection.

Page 98

1        But the principle is fundamentally the same.
2    We're not arguing about getting back to November 1.
3    We recognize that if we're going to use the
4    allocation of pro-rating method, that November 1
5    through November 10 is whatever it is. But for the
6    remainder of the month, the debtor can get value out
7    of that sublease in two ways -- or the lease in two
8    ways -- one: It occupies the space and continues to
9    sell out of it, GOB sale or otherwise.
10       That's not what they did here. What they did
11   was got the economic value of that, 100 cents on the
12   dollar up front. What's the difference economically
13   between having been paid in advance and being paid
14   later?
15       There is none. There is none, Your Honor.
16   And that's why this situation is unique. And that's
17   why the business judgment of the debtor should not
18   be allowed to be used to upset the balance, and
19   should not be allowed to be used as a sword instead
20   of just a shield. We don't -- the shield part of
21   it, yes. From November or December 1 forward, if
22   they want to cut it off at that point, fine. I
23   mean, that's within their business judgment to say
24   that the whole arrangement is burdensome.
25       But to take the money and then want it cut

Page 99

1    off at that point, and also want to keep the money,
2    Your Honor, that's fundamentally wrong.
3        THE COURT: Why isn't it just a claim? The
4    debtor had the money. It was required -- everybody
5    acknowledges that it was required to pay a lot of
6    creditors in this case. Why isn't it just a claim?
7        MR. CARRIGAN: Well, it is a claim, Your
8    Honor.
9        THE COURT: Okay.
10       MR. CARRIGAN: But it's also -- it is also --
11   but that claim -- Section 365 is supposed to provide
12   in the context of unexpired leases and executory
13   contracts a bridge between the pre-petition time and
14   the post-petition time. If the debtor stays in
15   there and gets the burden -- gets the benefit of
16   that unexpired lease or the executory contract, then
17   it is incumbent upon the debtor to pay for that
18   privilege.
19       Now, we may be back to the timing exercise
20   there as to whether it's an administrative claim
21   that needs to be paid now or later, but it has the
22   overlay of this bridge that's being put there.
23       What the debtor wants to do is: We got the
24   money. We want to get out -- now that we've got the
25   money and we haven't paid for it, we want to get out

Page 100

1    of this lease. Your Honor, that's where the
2    exercise of the Court's discretion as to business
3    judgment comes in. And the business judgment should
4    not be allowed to inflict -- to be used as a sword
5    and not as a shield.
6        Everything in bankruptcy is a claim. I mean,
7    the landlord's request for payments under 365(d)(3)
8    is a claim. It's a claim under 503. It's a claim
9    under 507. If it's a pre-petition claim, it's a
10   claim under 502 and 365 because the rejection is
11   effective as of the filing date in some
12   circumstances. It's all a claim.
13       But as Your Honor has pointed out, it's
14   really a question of timing, if it's just a claim.
15   But it's not just a claim. This is also about the
16   exercise of the debtors' business judgment. And it
17   is being used here both as a sword and a shield.
18   And it was only to be used as a shield.
19       And it's not just the law of unintended
20   consequences. You heard the testimony from the
21   debtors' expert. They knew going in what it was
22   going to look like. To do that, and to allow them
23   to do that, is to allow them to exercise their
24   business judgment improperly. And that's why the
25   K-Mart Court and that's why the Chatlos Court

Page 101

1   conditioned it upon repayment, or payment over to
2   the prime landlord. Alternatively, you could move
3   the date of the rejection out to the end of the
4   month. And that's an issue for January 29, I
5   suppose.
6       Let me say one other thing, Your Honor, if I
7   may: The reason is -- let's look at it in terms of
8   the post-petition. The debtors' claims -- the
9   debtors' professional claims for fees, for
10  reimbursement of expenses -- those are all claims of
11  a sort. They're a particular kind of claim.
12  They're administrative claims. The claims for
13  people who are providing the coffee in the offices,
14  the people who are delivering goods to the debtors;
15  those are all claims. Now, those are all getting
16  paid in the ordinary course.
17      And, in fact, what we do in some
18  circumstances, especially with the professionals --
19  and this is an entirely appropriate thing to do --
20  is that the fact that they haven't been appointed
21  Day One to represent the debtor doesn't change the
22  fact that between Day One and the time they are
23  appointed, that they are allowed to be compensated.
24  Can the debtor just say, Well, you didn't get
25  appointed until December 15th, then you're out of

Page 102

1   luck for the first month and-a-half of the case?
2   No, of course not. That's not appropriate. Nor is
3   it appropriate in this case to deny payment to the
4   landlords when the debtor has had the benefit of it
5   in the most tangible way that you can identify,
6   which is they got the money. And they got it in
7   advance. Under those circumstances, the exercise of
8   business judgment by the debtor is inappropriate to
9   try to get the benefit of cutting off their
10  obligations on a going-forward basis, and yet to
11  retain the money.
12      And frankly, the remedies that are being
13  proposed is -- as I think has been mentioned in the
14  prior argument -- is if we get back to constructive
15  trust, if we get to tracing and all that other sort
16  of stuff, what does a landlord like ours have that
17  has $55,000 in pro-rated payments for the month of
18  November, what can that landlord legitimately --
19  forget legitimately -- pragmatically, practically do
20  about it? Not much. All we can do is argue to the
21  Court that they shouldn't be able to keep the money
22  and reject our lease. And that is not an
23  appropriate exercise in business judgment.
24      Thank you, Your Honor.
25      THE COURT: Thank you, sir.

Page 103

1       MR. GALARDI: Your Honor, I don't think we're
2   actually using business judgment as a sword and
3   shield. And I don't quite understand that.
4       If we only rejected the sublease, the
5   sublessee would have to pay us rent for the entire
6   month, and could have remained there. If we reject
7   the lease, we don't have to pay rent. So we're
8   putting two things together here. But we can
9   reject, and then that's our pre-petition claim.
10  There's -- you know, and the money went into the
11  system. There's no nefarious conduct. Perhaps we
12  knew that this would come in. Yes. Maybe it was in
13  the model. But at the same time, the objection is,
14  the landlords don't even have to accept that rent,
15  if they didn't want to. They have the right to
16  throw that subtenant out of those premises. It just
17  so happens that this particular landlord wants to
18  accept that rent.
19      The business judgment is quite simple: One,
20  we made a business judgment to reject the sublease.
21  We have been paid the rent. That subtenant could
22  stay there if we hadn't also rejected the overlord.
23      Two, we made a business judgment to reject
24  the overlord's lease. We don't have to pay that
25  rent. We understand that they may have an equitable

Page 104

1   argument. We understand that they may say, Well,
2   because this subtenant stayed there, we're entitled
3   to that. That's what they have a basis for making a
4   claim; but it doesn't defeat either our argument
5   business judgment with respect to the rejection, or
6   with respect to rejection of the sublease. And the
7   money issue is simply a separate issue. And it's a
8   claim, as Your Honor said. Do we have a claim that
9   because we rejected our subtenant, stayed in the
10  landlord's premises, do they have a claim? Well,
11  they may have a claim against us. They may have a
12  claim against the subtenant. The subtenant should
13  have vacated the premises. But that's not something
14  that's appropriate as a response to our motion to
15  reject.
16      So we'd ask Your Honor to approve our motion
17  to reject, all rights reserved about their seeking a
18  claim for any subrent that we would have received on
19  November 1st or prior to the filing.
20      THE COURT: Am I ruling today on the motion
21  to reject, or is that being carried over? I thought
22  I was just being asked to rule on the Motion to
23  Compel payment of the --
24      MR. GALARDI: Well, I would only ask for the
25  ruling on the Motion to Compel payment. If you want

COOK & WILEY, INC.

Page 105

1  to hold the date of rejection over to the 29th,
2  that's perfectly fine.
3      THE COURT: Is that what I'm being asked to
4  do?
5      MR. CARRIGAN: Your Honor, that was my
6  understanding coming in. That's why I addressed it
7  up front, is that --
8      THE COURT: That's what I thought.
9      MR. CARRIGAN: -- the rejection motion was
10 held over to the 29th. The compelling of the rent
11 now or in the near future is the issue for today.
12     THE COURT: Okay. And so, consistent with my
13 ruling earlier this afternoon, I'm not going to
14 compel the payment of the post-petition rent at this
15 time.
16     MR. GALARDI: Thank you, Your Honor.
17     THE COURT: And that's without prejudice to
18 being able to come back and ask for it as changes
19 might occur.
20     MR. GALARDI: And when we decide the actual
21 rejection date, which is -- that's for the January
22 29th hearing.
23     THE COURT: That's my understanding.
24     MR. CARRIGAN: Thank you, Your Honor. May I
25 be excused?

Page 106

1      THE COURT: You may. Thank you, sir.
2      MR. CARRIGAN: Thank you, Your Honor.
3      MR. GALARDI: The next item is Item Number
4  26, which is the Motion to Compel rent of McAlister.
5  My understanding that the only issue there was the
6  stub rent and taxes. I don't know if counsel --
7      MR. GRAY: William Gray on behalf of
8  McAlister Square. I think this is one of the store
9  closing ones. This matter has been resolved.
10     THE COURT: Okay. Very good.
11     MR. GALARDI: Thank you, Your Honor.
12     The next one is Item Number 27, which is a
13 long list of landlords, starting with Amherst VF.
14 My understanding, Your Honor, is this was a stub
15 rent issue, and I think has been addressed by Your
16 Honor's decision.
17     MR. GRAY: William Gray on behalf of --
18     THE COURT: You don't have to say them all.
19     MR. GRAY: -- the ten landlords that are a
20 part of the motion. One landlord, Vornado Gun Hill
21 Road, has been resolved. Your ruling would apply to
22 the remaining nine.
23     THE COURT: All right. Thank you.
24     MR. GALARDI: Your Honor, the next one is
25 Number 28, which is the Cole CC Groveland FL,

Page 107

1  Florida. And I believe this was a stub rent, but it
2  was the accrual method of -- I think this was -- if
3  I'm not mistaken, this is the one where we pay at
4  the end of the month for the entire month. So I
5  think Your Honor's ruling is that we should be
6  paying the 20 days for November timely now for those
7  periods, but need not pay November 1 to 10?
8      THE COURT: That's correct.
9      >>: Thank you, Your Honor.
10     MR. GALARDI: Your Honor, Item Number 29 is
11 the Colonial Heights Holdings, LLC. My
12 understanding is that this is resolved.
13     >>: That's correct, Your Honor. This was a
14 payment in arrears. Rent was due on the last
15 business day of the month, and they have agreed to
16 pay.
17     THE COURT: All right. Thank you.
18     >>: Thank you.
19     MR. GALARDI: Number 30, Your Honor, is the
20 motion of CIM/Birch Street. My understanding is
21 this was only an issue of stub rent, and I think
22 it's been addressed by your decision.
23     >>: That's correct, Your Honor.
24     THE COURT: All right. Thank you.
25     MR. GALARDI: Number 31, Your Honor, is the

Page 108

1  motion of Principal Life Insurance. It's stub rent,
2  and I believe this is payable in arrears, and there
3  was an interest issue.
4      I think Your Honor's decision with respect
5  to -- this is what I got -- it is payable in
6  arrears. November 30th to November 10th we'll pay.
7  And I would reserve all rights on whether interest
8  on that amount is due and payable, unless counsel
9  has an objection to that.
10     THE COURT: All right. That is the ruling.
11     MR. GALARDI: The next matter is 32, which is
12 the motion of the PrattCenter, LLC. My
13 understanding is that the only open issue on this
14 one was the payment of stub rent, which was
15 addressed by Your Honor's decision.
16     >>: Your Honor, that is correct; however, as
17 stated in the motion, there was a second reason for
18 requesting payment. And it relates to an objection
19 that was filed by three landlords: UTC 1, LLC,
20 PrattCenter LLC, and Valley Corner Shopping Center;
21 two of which are the subject of the Court's ruling
22 today.
23     There was a limited objection filed to the
24 debtors' motion basically assuming the agency
25 agreement among the debtors and Hilco Merchant

Page 109

1  Resources, Gordon Brothers, LLC; and authorizing the
2  debtor to continue the agency agreement sales --
3  agency agreement sales pursuant to the store closing
4  agreement.
5       In negotiating the resolution of that
6  objection, we reached agreement with the debtor
7  which in effect said that the stub rent for all
8  three of those locations would be paid. And
9  attached as Exhibit D to the motion is an email
10 exchange between myself and debtors' counsel to that
11 effect.
12      We wrote that, "This shall confirm that the
13 above-referenced landlords agree to withdraw their
14 pending objection in exchange for payment of the
15 stub rent for November and the modifications of the
16 GOB procedures as agreed to by Stephen Petro,
17 counsel for Gordon Brothers; and reserving all
18 additional rights." We then received a responsive
19 email saying, "Confirmed. We will try to have the
20 November stub rent paid by next Friday, December
21 12th."
22      When we inquired about having payment for
23 PrattCenter and Valley Corners the response was,
24 Well, we didn't have authority to pay stub rent for
25 those two locations. So we're not planning on

Page 110

1  paying it. They did pay for UTC 1, but have not
2  paid the other two.
3       And we would ask that the Court enforce that
4  settlement.
5       MR. GALARDI: Are these all -- just so I can
6  clarify, because we have paid -- Your Honor, as I
7  remember we told you with respect to the store
8  closing motion, that when we -- if they were covered
9  by the agency agreement, we --
10      >>: UTC 1, that has been paid.
11      MR. GALARDI: That has been paid?
12      >>: Correct.
13      MR. GALARDI: Are these other two covered
14 by -- are these store closings, too?
15      >>: They were not store closings.
16      MR. GALARDI: And that's why we didn't pay
17 the other two, Your Honor.
18      >>: Understood. The rationale for including
19 them in the objection was because we believe there
20 may be relief that went beyond strictly those stores
21 listed on the store closing procedure exhibit. And
22 obviously, we withdrew the objection with the
23 understanding that all three would be paid.
24      MR. GALARDI: And Your Honor, I see the
25 email. I don't dispute that somebody may have sent

Page 111

1  that email. The issue simply came to our attention
2  that we thought they were all three governed by the
3  Hilco agreement. They weren't. And so, that is our
4  fault for having done that.
5       But we have always taken the position in this
6  Court that if it were not governed by the Hilco
7  agreement, we were going to be fighting the stub
8  rent payment. So I apologize for that. Your Honor
9  can rule however; but I understand that that was a
10 simple misstatement in an email from one of our
11 associates to theirs that it would be paid. I'm
12 thinking that it was all three were governed by the
13 same Hilco agreement.
14      THE COURT: All right. I haven't seen what
15 is there. I think what we ought to do is carry this
16 over to the next omnibus date, set it down for it,
17 because we'll probably need some evidence if you're
18 going to try to enforce the settlement agreement --
19 what was agreed to, and the like. And, of course,
20 that would give Mr. Galardi an opportunity to
21 respond to it, as well.
22      >>: Thank you, Your Honor.
23      THE COURT: You're welcome.
24      MR. GALARDI: The next matter on is Matter
25 Number 33, Your Honor, which is, again, a debtors'

Page 112

1  motion authorizing the rejection of certain
2  unexpired leases.
3       There were three objections to that motion.
4  The first two -- one by Carmax Business Service --
5  has been resolved. The second by Food Lion, LLC has
6  been resolved. And the third was an objection by
7  Kennesaw, I believe -- Cole CC Kennesaw, which is a
8  subtenant. And I believe that matter is going
9  forward.
10      THE COURT: All right.
11      >>: Your Honor, Paul Bliley again. I
12 represent Carmax Business Services, and it has been
13 resolved as to us.
14      THE COURT: Very good.
15      MR. WESTERMAN: Good afternoon, Your Honor.
16 Robbie Westerman on behalf of Food Lion. Our
17 objection has been resolved, as well. I believe
18 that some revised language is being circulated, and
19 a revised order is going to be submitted for Your
20 Honor's consideration.
21      THE COURT: Very good. Thank you.
22      >>: Good afternoon, Your Honor. Michael
23 Condealis on behalf of Cole CC Kennesaw Georgia,
24 LLC.
25      We are objecting to the date in which the

Page 113

1   lease is determined to be rejected. And the debtor
2   is looking for the rejection date to be effective
3   when the pleadings were filed.
4        This is a subtenant case, Your Honor, where
5   rent was collected by the debtor on the first of the
6   month from the landlord. On the 31st of this month,
7   there is rent that is due to Cole of $124,000 --
8   plus taxes, utilities, insurance, maintenance, and
9   so forth. The debtor is getting the benefit of the
10  property for the full month, and it received the
11  rent for the full month. This is, in that sense,
12  similar to the argument that Your Honor just heard
13  previously.
14       There is also some distinguishing factors
15  here, because the lease agreement itself provides
16  specifically for an assignment and transfer of any
17  rents that are due from Circuit City to the
18  landlord. So upon the occurrence of that -- of the
19  default -- upon the occurrence of the bankruptcy
20  filing, default occurred under the lease in which it
21  mandated that the lease payments be made, and an
22  assignment of all rights and interest in those lease
23  payments was made to Cole in that instance, which
24  entitled it to the payment of the rents that are
25  owed.

Page 114

1        In November, there was -- the lease payments
2   were received. In December -- we're not at the end
3   of the month yet, so the payments haven't been
4   received. But the appropriate time for any
5   rejection would be on -- effective December 31st
6   when the rent payment is due, and when the period in
7   which the existing subtenant's rent is completed.
8        So we'd ask that the debtor be ordered to pay
9   the rent, that it be effective as of that time, and
10  that the lease not be rejected until that time, and
11  that we'd be entitled to the rent that's owed.
12       THE COURT: Mr. Galardi?
13       MR. GALARDI: Your Honor, we don't have any
14  objection to the rejection being effective
15  December -- I think your rent is due December 31st.
16       >>: Correct.
17       MR. GALARDI: This is an odd situation where
18  the subtenant pays at the beginning of the month.
19  We pay at the end of the month. I don't think -- so
20  we would reject it effective December 31st. And
21  given all Your Honor's rulings and what we've said
22  about this, we will pay the full month of December
23  on December 31st. I think that resolves his
24  objection.
25       THE COURT: All right. Very good.

Page 115

1        >>: Thank you, Your Honor. And that would
2   include the maintenance and utilities and the
3   amounts that are due under the lease.
4        MR. GALARDI: Again, Your Honor, I
5   think we're going to reserve our right -- the base
6   rent, yes. As to the maintenance, utilities, and
7   what periods they cover, I think that goes to the
8   stub rent. If it's only for the month of December,
9   yes.
10       >>: Okay. Thank you, Your Honor. And we'd
11  ask that the order itself contain a provision that
12  the rejection is effectively a termination of the
13  lease so we don't have to come in for relief of stay
14  or any further action.
15       MR. GALARDI: I think it's a breach of the
16  lease. I don't think rejection is a termination.
17       >>: Well, that's why we're asking for that
18  determination, Your Honor, so we don't have to then
19  come in for separate relief of stay.
20       THE COURT: Is that motion before me?
21       >>: No.
22       THE COURT: Okay. You can negotiate the
23  order. That's fine.
24       >>: Thank you, Your Honor.
25       MR. GALARDI: We'll discuss it, yes.

Page 116

1        THE COURT: Otherwise, you'll need to file a
2   motion.
3        >>: Thank you, Your Honor.
4        MR. GALARDI: Your Honor, the next is the
5   informal response of Barbara Goldsmith, which I
6   understood has been resolved.
7        >>: Yes.
8        THE COURT: Did you understand it has been
9   resolved?
10       MR. GALARDI: My understanding is that it has
11  been resolved, Your Honor.
12       MS. MILLER: I represent a different --
13       MR. GALARDI: I think they're getting ready
14  for the next stub rent.
15       THE COURT: Okay. Sorry.
16       MR. GALARDI: So that takes care of matter
17  33, Your Honor.
18       Oh, I'm sorry.
19       MS. MILLER: Thank you. Calena Miller again,
20  Your Honor, on behalf of General Orlando Aviation
21  Authority.
22       My client did not file a formal objection to
23  Matter 33, but we have a resolution and agreement
24  with the debtors that the effective date of my client will
25  rejection for the particular lease of my client will

Page 117

1  be December the 31st. So I just wanted to make sure
2  that's reflected on the record. That's with respect
3  to Location 5166 East Colonial Drive in Orlando,
4  Florida.
5        THE COURT: Thank you, ma'am.
6        MR. GALARDI: I've been informed that that's
7  correct, Your Honor.
8        THE COURT: All right.
9        MR. GALARDI: Your Honor, Number 34 is the --
10  that concludes the matters under 33.
11        Matter 34 was the motion of Port Arthur
12  Holdings. Again, it was a stub rent payment, and
13  I'm authorized to say that the matters -- all
14  matters as to 34 have been resolved by your ruling.
15        THE COURT: All right. Very good.
16        MR. GALARDI: Your Honor, going back, there
17  was one matter that was left open.
18        THE COURT: Yes.
19        MR. GALARDI: Back on 7 there were objections
20  r. and s., I believe.
21        THE COURT: Yes.
22        MR. GALARDI: We have agreed that the
23  rejection date is November 10th, 2008; but that
24  the -- M & T reserves the right to a certain
25  administrative claim on the basis that there is a

Page 118

1  holdover tenant, because we did not surrender. So
2  we'll leave open the claim issue with them; but the
3  rejection date is, in fact, November 10th. And that
4  resolves -- those two --
5        THE COURT: Ms. McLemore, is that your
6  understanding?
7        MS. MCLEMORE: That is my understanding with
8  one express reservation, that if anything changes
9  with regard to the stub rent issue going forward,
10  that we would reserve our right to file a Motion to
11  Compel the payment of stub rent, as opposed to the
12  --
13        MR. GALARDI: I assume that goes without
14  saying for all the landlords.
15        THE COURT: Yes, it does.
16        MS. MCLEMORE: Thank you, Your Honor.
17        MR. GALARDI: And that actually does conclude
18  the matters on my agenda, I believe.
19        THE COURT: All right. On the issue
20  concerning the nonpayment of the stub rent, I would
21  like the debtors to submit proposed findings of fact
22  and conclusions of law. My understanding is you're
23  submitting individual orders, but I think that that
24  can be one that addresses all of them, and just
25  style it that way.

Page 119

1        MR. GALARDI: That's fine. Thank you, Your
2  Honor. I have no further business today, Your
3  Honor.
4        THE COURT: Okay. We had one matter that was
5  from this morning, Item Number 4, which, Mr. Foley,
6  you had said that you were trying to resolve. Is
7  that being carried over?
8        MR. GALARDI: Your Honor, what we would
9  propose to do -- that was the DJM matter that we
10  were trying to deal with. I don't believe we will
11  get a resolution on this today. We have another
12  meeting tomorrow.
13        What I would propose to do, Your Honor, is
14  to: One, have authority -- there is an objection as
15  to the fee structure, as there have been with
16  professionals. In the event that we can come to an
17  agreement with the Committee, we'd like to submit
18  under certification of counsel a stipulated order
19  resolving that.
20        If not, I'd like to put it on the next
21  available hearing date, which may not be the omnibus
22  date. It may be an earlier date if we can get it,
23  because their activity is going on very rapidly as
24  we speak. And so, the sooner I can get an order in
25  for them, if it's agreed to, the sooner we -- the

Page 120

1  better we'd all feel.
2        So I would like to simply not carry that to a
3  date certain right now, but have the right to ask
4  the Court to put that on an expedited basis with an
5  expedited hearing in early January, if we're unable
6  to do a consensual order.
7        THE COURT: And then, of course, if you
8  submit a consensual order with the Committee, the
9  Court will certainly entertain that.
10        MR. GALARDI: Thank you very much, Your
11  Honor. That does now conclude the matters. Thank
12  you.
13        THE COURT: Very good. Thank you all.
14        MR. GALARDI: Thank you again. Have a Happy
15  Holiday.
16        THE COURT: You, too.
17
18        (Proceedings concluded, 3:51 p.m.)
19
20              * * * * *
21
22
23
24
25

Page 121

1
2                  CERTIFICATE OF COURT REPORTER
3
4              I, Lisa M. Blair, hereby certify that
5    I, having been duly sworn, was the court reporter in the
6    United States Bankruptcy Court for the Eastern District
7    of Virginia, Richmond Division, on December 22, 2008, at
8    the time of the hearing herein; further, that the
9    foregoing is a true and accurate record of the testimony
10   and other incidents of the hearing herein.
11             Given under my hand this 19th day of
12   January, 2009.
13
14
15             Lisa M. Blair, RPR
               Notary Public for the
16             State of Virginia at Large
17
18   My Commission expires:
     October 31, 2012
19   Notary registration #:  253150
20
21
22
23
24
25