<u>Attachment "1"</u>

Construction Schedule

| **Landlord's Task** | **Completion Date** |
| --- | --- |

1.  Landlord's delivery of full and complete civil
    engineering plans for the portions of the
    Shopping Center designed as of the Effective
    Date and proposed elevations for the remainder
    of the Shopping Center

    May 12, 2003

I.  SITE DELIVERY WORK

    Landlord's Delivery of the Land to Tenant with
    pad certification; construction of all-weather
    construction access road to the Premises, staging
    area and curbcuts in Tenant's Preferred Area;
    installation of temporary utilities; and completion
    of Site Delivery Work, including approval for
    all curbcuts.

    May 12, 2003

II. REMAINDER OF LANDLORD WORK

    Construction and installation of: permanent utilities
    including permanent telephone service and
    storm water drainage.

    July 1, 2003

    Construction and installation of: paving (including
    heavy-duty paving), curbing, and exterior lighting.

    August 1, 2003

    Construction and installation of: landscaping,
    and pylon sign(s) identifying the Shopping Center.

    September 1, 2003

MW 4/21/03
\\REA\140800.6

<u>Attachment "2"</u>

Site Delivery Work Certification

To:    Circuit City Stores, Inc.
       Deep Run I
       9950 Mayland Drive
       Richmond, Virginia 23233
       Attention: Vice President-Real Estate

      Re:    Circuit City Store
              Hamburg, Kentucky Lease Agreement dated _____

Ladies and Gentlemen:

      The undersigned, as Landlord under the Lease has caused "Delivery of the Land" to occur on _____, ____, and accordingly, completion of the Site Delivery Work, all in accordance with the terms of the Lease. Specifically the undersigned hereby certifies that: (i) the grading of the Land and Common Areas has occurred in accordance with the Circuit City Specifications, attached to the Lease, and Tenant's building pad has been prepared strictly in accordance with Tenant's Soils Report; (ii) the Staging Area has been completed and (iii) an all-weather construction access road to the Land no less than 24 feet width has been prepared and is ready for your use.

      All conditions precedent to issuance of your building permit have been satisfied by Landlord, and we certify that all elements of the Site Delivery Work and Delivery of the Land have been satisfied in accordance with the Lease.

<u>LANDLORD</u>:

        SIR BARTON PLACE, LLC
        a Kentucky limited liability company

        By: _____
        Name: _____
        Title: _____

MW 4/21/03
\\REA\140800.6

Attachment "3"

Schematic Floor Plan and Elevations

(attached)

MW 4/21/03
\\REA\140800.6





EXHIBIT "C-1"

CIRCUIT CITY SPECIFICATIONS

for a proposed

Circuit City Superstore

Sir Barton Place Shopping Center

Hamburg, Kentucky

to be developed by

SIR BARTON PLACE, LLC

Dated _____, 2003

1 – Ex. "C-1"

I.   STANDARDS FOR GRADING WORK

    A.   <u>Grading Requirements</u>.   The Land and the Shopping Center shall be graded in accordance with the following:

        1.   The Civil Plans shall show contours in accordance with standard engineering practice and these contours shall be shown with the existing (shown as a dashed line) and final (shown as a solid line) elevations. Whether existing or proposed, all buildings, improvements, roads and highways, including those adjacent to the Shopping Center, shall be shown in their true locations.

        2.   The Building will be accessible by grade level parking only.  Steps and stairs are not permitted.

        3.   Sidewalk at the Building will slope away from the Building with grade of no less than 1.5% and no more than 3.0%. All water shall be sheet drained away from Tenant's doors.

        4.   Asphalt paving areas will be graded to avoid ponding water with slopes no less than 1.5% and no more than 4.0%.  Entrances and access drives shall have a maximum slope of 6.0%.

        5.   Surface drainage swales will not be allowed without prior approval of Tenant. Such swales must have a grade of not less than 0.5% and no more than 3.5% and shall be constructed of concrete.

        6.   The cut and fill on the Shopping Center site should be balanced, if practical.  All fill material must be of a select grade and sources for acquisition of fill material, as well as locations for cut material, must be identified.

        7.   No retaining walls or embankments causing breaks in grade shall be permitted unless specifically approved by Tenant.   Tenant hereby approves a retaining wall and berm along Pink Pigeon Parkway.

    B.   <u>Tenant's Pad Area</u>:  "Tenant's Pad Area" shall be defined as the area extending fifteen (15) feet beyond the Building walls, truck dock and ramp area and the Car Stereo Installation area, or to the back of curbing around the Building, whichever is further.   The Site Work shall comply with the following additional requirements:

        1.   Landlord shall be responsible for preparing Tenant's Pad Area subgrades to within plus or minus one-tenth of a foot as set by Tenant's architect.

2 – Ex. "C-1"

Tenant's subgrades are 8" below finished floor elevation. Landlord will complete compaction in accordance with the appropriate engineering standards and building code requirements, but in no event less than ninety-eight percent (98%) of the standard proctor soil test for water content and compaction levels ("Standard Proctor") on the Land, so as to enable Tenant to perform construction work necessary to provide completed Improvements in accordance with the "Plans and Specifications" (defined in the Construction Provisions), with standard spread footings and without the necessity of pilings or other extraordinary foundation work; provided, however, that soils below the top 12 inches of Tenant's pad may be compacted to as little as 95% Standard Proctor. Tenant's minimum slab thickness and under slab fill will be established in accordance with Tenant's Soil Report. All compacted areas of the site shall be verified by an independent professional soils engineering test laboratory and a certificate from such independent laboratory indicating compliance with Tenant's Soils Report and shall be furnished to Tenant upon completion of the Site Work.

2.      Tenant's Pad Area soil shall have a minimum bearing capacity of 2,500 pounds per square foot. Earth stabilization and/or replacement shall be performed by Landlord as necessary to meet this minimum requirement.

3.      During the preparation of Tenant's Pad Area, Landlord shall at its expense have an independent professional soils engineering test laboratory monitor and certify the preparation of Tenant's Pad Area in accordance with Tenant's Soils Report. Landlord shall perform one in-place compaction test per 5,000 square feet of pad area per lift.

4.      On or before the date of Delivery of the Land, Landlord shall provide Tenant with:

   a.      An independent soils engineer's written certification that all pad work was completed in accordance with Tenant's Soils Report, Civil Plans and the Plans and Specifications. This report shall include the results of all compaction and other tests performed during the pad preparation phase and any tests performed prior to the date of such certification. A copy of such certification shall be delivered to Tenant's Vice President-Construction at Tenant's address set forth in paragraph 32.

   b.      A surveyor's written elevation certification stating that Tenant's Pad Area is at the prescribed elevation within the stated tolerance of plus or minus one-tenth of a foot. This certification shall be based upon an "as-prepared" survey which shall accompany such

3 – Ex. "C-1"                          MW 4/21/03
                                       \\REA\140800.6

## Exhibit D

**A.      Tenant exclusive uses:**

*Johnny Carino's County Italian Restaurant:*

During the term of this Lease and any extension thereof, Landlord shall not allow the use, at any time, of (i) more than one other space, parcel or lot in Hamburg Place Mall as a full service dining restaurant with full service alcohol, or (ii) more than two (2) other restaurants serving been and wine in Hamburg Place Mall; provided, however, none of the restaurants allowed hereunder can be Italian, or predominately Italian, and Landlord can permit only one pizza restaurant that is primarily carryout such as Papa John's or Dominos.

**B.      Permitted Title Exceptions:**

1.   Open-End Mortgage, Assignment of Rents and Leases and Security Agreement dated November 4, 2002 from Sir Barton Place, LLC, a Kentucky limited liability company, to Fifth Third Bank, Kentucky, Inc., securing the original principal amount of $3,500,000.00, of record in Mortgage Book 3991, Page 573, in the Fayette County Clerk's Office.

2.   Subject to covenants, easements, restrictions, notes and all other matters appearing on the plat of the subject property of record in Plat Cabinet L, Slide 801 and Plat Cabinet L, Slide 516, in the Fayette County Clerk's Office.

3.   Declaration of Covenants, Conditions and Restrictions for Hamburg Place Community dated September 29, 1999, of record in Deed Book 2083, Page 131, in the Fayette County Clerk's Office.

4.   Land Use Restrictions of record in Land Use Restriction Book 10, Page 720, in the Fayette County Clerk's Office.

5.   Thirty foot (30') force main easement dated February 11, 1980, of record in Deed book 1247, Page 602, in the Fayette County Clerk's Office.

6.   Subject to the terms and conditions of that certain Reciprocal Construction, Operation and Easement Agreement dated as of June 29, 1995, by and between Meijer Realty Company and Preston W. Madden et al, of record in Deed Book 1794, Page 1, in the Fayette County Clerk's Office, as amended by First Amendment to Reciprocal Construction, Operation and Easement Agreement, Certification of Payment and Release of Construction Assessments and Satisfaction of Precondition of Easement, dated April 28, 1998, of record in Deed Book 1974, Page 546, in the aforesaid Clerk's Office.

7.   Easement Agreement by and between Preston W. Madden, et al. and Kentucky American Water Company dated June 25, 1996, of record in Deed Book 1860, Page 706, in the Fayette County Clerk's Office.

Notwithstanding anything contained in this Exhibit "D" to the contrary, nothing contained herein shall be construed to prohibit the exercise of the rights and privileges granted to Tenant under the Lease, including but not limited to Tenant's exclusive use rights set forth in paragraph 18 of the Lease.

# LIGHTING PLAN

# ATTACHMENT IV A.2

Did not keep copy –
Prepared by Quest Engineers

# EXHIBIT "D"

## INTENTIONALLY DELETED

1 – Ex. "D"

# EXHIBIT "E"

## SIGN PLANS AND CRITERIA

(attached)

1 – Ex. "E"





SERVICE
NEON
SIGNS
INC.

6611 IRON PLACE
SPRINGFIELD, VA 22151
(703) 354-3000 TELEPHONE
(703) 354-5910 FAX

SIDE VIEW

8" DEEP

CHANNEL LETTERS
& RING W/ WHITE
PLASTIC FACES ON
RED BACKGROUND

CHANNEL LETTERS & RING W/ RED BACKGROUND



**circuit City**

SEAM

SEAM

17°

A

B

D

F

G

| | A | B | C | D | E | F | G | AREA ○ | AREA □ |
|---|---|---|---|---|---|---|---|---|---|
| | 16"-0" | 16" | 5 1/2" | 62" | 20 5/8" | 6 3/8" | 82 1/4" | 201 | 256 |
| | 14'-0" | 14" | 4 3/4" | 54" | 18" | 5 1/2" | 72" | 154 | 196 |

## Channel, Ring & Letters on Red Background (CCBKGD):

WHITE FACES ON ALL BACKGROUNDS:

- SMALL CHANNELS "circuit" CONSTRUCTED OF .040 ALUMINUM RETURNS. LARGE CHANNELS "city" AND RING CONSTRUCTED OF .040 ALUMINUM RETURNS, RETURNS TO BE 8" DEEP SPRAYED MATTHEWS 313 DK. BRONZE ON ALL EXTERIOR SURFACES. INTERIOR OF CHANNELS SPRAYED WHITE. ALL CHANNELS AND RING BACKS CONSTRUCTED OF .063 ALUMINUM.

- LIGHTING FROM MULTIPLE ROWS OF 13 MM & 15MM #6500 WHITE TUBING POWERED BY 30 MA SELF-CONTAINED ELECTRONIC TRANSFORMERS FROM VENTEX. ALL WIRING AND MATERIALS USED WILL BE U.L. APPROVED.

- FACES OF 1/8" & 3/16" WHITE PLEXIGLAS #7328. FACES BANDED WITH ONE INCH WHITE SILVATRIM MOLDING AND ATTACHED TO CHANNELS WITH #8 STAINLESS STEEL SCREWS.

- RED PMS # 485 BACKGROUND PAINTED ON .090 ALUMINUM MOUNTING PANEL.

- SEE ELECTRICAL SHEETS FOR NUMBER OF 20 AMP 120 VOLT CIRCUITS REQUIRED

SEAM PATTERN FOR .090 BACKGROUND PANELS

16'-0"

14'-0"

| CUSTOMERS NAME | STORE #5802 | | |
|---|---|---|---|
| **circuit City** | | | |

| LOCATION | | | |
|---|---|---|---|

| DRAWING # 12-02-485 | DATE 12-30-02 | | |

| GEORGE B. MARINO, Jr | | | |

| WORK ORDER # | REVISIONS | | APPROVAL |
|---|---|---|---|

| SCALE 1"=1'-0" | | | |



## Installation Center

S/F NON-ELECTRIC WALL SIGN E

| SQ. FT. | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 10.66 | 16" | 96" | 9" | 72" | 84" | 6" |

Installation Center Sign:
(CCINST1L)
Logo with one Line of Copy

MESSAGE:     (logo)   Installation Center

MATERIALS:
SIGN CONSTRUCTED OF .090"
ALUMINUM PANELS WITH 2" RETURNS.

BACKGROUND AND EDGES PAINTED
MATTHEWS N-202 MATTE WHITE.

LOGO APPLIED USING DIGITALLY
PRINTED SCOTCHPRINT ONTO
WHITE VINYL.

COPY APPLIED USING 3M #220-13
TOMATO RED VINYL.

MOUNT SIGN FLAT AGAINST WALL WITH
CONCEALED FASTENERS AS SHOWN.

3/8" ALUMINUM
BOLT W/ WASHER

.090 ALUMINUM

1/4" LAGS AND
SHIELDS

CONCEALED
ALUMINUM CLIP
DRILLED & TAPPED

2"

SIGN DETAIL

SERVICE SIGNS NEON INC

6811 IRON PLACE
SPRINGFIELD, VA. 22151

(703) 354-3000 TELEPHONE
(703) 354-5810 FAX

circuit city

CUSTOMER'S NAME

STORE #S/82

LOCATION

DRAWN #   12-02-485
DATE   12-30-02

GEORGE B. MARINO, Jr

WORK ORDER #

REVISIONS

SCALE   1"=1'-0"



## EXHIBIT "F"

**A.** **Tenant exclusive uses:**

*Johnny Carino's County Italian Restaurant:*

During the term of this Lease and any extension thereof, Landlord shall not allow the use, at any time, of (i) more than one other space, parcel or lot in Hamburg Place Mall as a full service dining restaurant with full service alcohol, or (ii) more than two (2) other restaurants serving been and wine in Hamburg Place Mall; provided, however, none of the restaurants allowed hereunder can be Italian, or predominately Italian, and Landlord can permit only one pizza restaurant that is primarily carryout such as Papa John's or Dominos.

**B.** **Permitted Title Exceptions:**

1. Open-End Mortgage, Assignment of Rents and Leases and Security Agreement dated November 4, 2002 from Sir Barton Place, LLC, a Kentucky limited liability company, to Fifth Third Bank, Kentucky, Inc., securing the original principal amount of $3,500,000.00, of record in Mortgage Book 3991, Page 573, in the Fayette County Clerk's Office.

2. Subject to covenants, easements, restrictions, notes and all other matters appearing on the plat of the subject property of record in Plat Cabinet L, Slide 801 and Plat Cabinet L, Slide 516, in the Fayette County Clerk's Office.

3. Declaration of Covenants, Conditions and Restrictions for Hamburg Place Community dated September 29, 1999, of record in Deed Book 2083, Page 131, in the Fayette County Clerk's Office.

4. Land Use Restrictions of record in Land Use Restriction Book 10, Page 720, in the Fayette County Clerk's Office.

5. Thirty foot (30') force main easement dated February 11, 1980, of record in Deed book 1247, Page 602, in the Fayette County Clerk's Office.

6. Subject to the terms and conditions of that certain Reciprocal Construction, Operation and Easement Agreement dated as of June 29, 1995, by and between Meijer Realty Company and Preston W. Madden et al, of record in Deed Book 1794, Page 1, in the Fayette County Clerk's Office, as amended by First Amendment to Reciprocal Construction, Operation and Easement Agreement, Certification of Payment and Release of Construction Assessments and Satisfaction of Precondition of Easement, dated April 28, 1998, of record in Deed Book 1974, Page 546, in the aforesaid Clerk's Office.

7. Easement Agreement by and between Preston W. Madden, et al. and Kentucky American Water Company dated June 25, 1996, of record in Deed Book 1860, Page 706, in the Fayette County Clerk's Office.

Notwithstanding anything contained in this Exhibit "F" to the contrary, nothing contained herein shall be construed to prohibit the exercise of the rights and privileges granted to Tenant under the Lease, including but not limited to Tenant's exclusive use rights set forth in paragraph 18 of the Lease.

MW 4/7/03
\\REA\140800.5

EXHIBIT "G"

After recording return to:

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
(Mortgage)

This SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT, dated the _____ day of _____, _____, between _____, a _____ ("Mortgagee"), and CIRCUIT CITY STORES, INC., a Virginia corporation ("Tenant").

### WITNESSETH:

(a)    Tenant has entered into a certain lease (the "Lease") dated _____, 2003, with Sir Barton Place, LLC ("Landlord"), covering premises located within that certain property known as Sir Barton Place Shopping Center, located in the City of _____ _____ County, Kentucky and more particularly described in Schedule A hereto; and

(b)    Mortgagee has made a loan to Landlord as evidenced and secured by a Deed of Trust recorded _____, _____ in the land records of _____ County, _____, in Book _____ at page _____ (the "Mortgage"), encumbering the property described in Schedule A; and the parties hereto desire to set forth their agreement with regard to the priority of the Mortgage and the effect thereof on Tenant and its leasehold interest in the aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1.    The Lease is and shall be subject and subordinate to the lien of the Mortgage insofar as it affects the real property of which the premises form a part, and to all renewals, modifications, consolidations, replacements and extensions thereof, to the full extent of the principal sum secured thereby and interest thereon.

2.    Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the premises by deed in lieu of foreclosure, the successors and assigns of such purchasers, as its Landlord for the unexpired balance (and any

1 – Ex. "G"

extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease.

3.     In the event that it should become necessary to foreclose the Mortgage, Mortgagee thereunder will not terminate the Lease nor join Tenant in summary or foreclosure proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4.     Mortgagee consents to the application of casualty and condemnation proceeds in accordance with paragraphs 15 and 16 of the Lease between Landlord and Tenant, whether or not the Mortgage is then foreclosed.

5.     In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:

        (a)     liable for any act or omission of any prior lessor (including Landlord); or

        (b)     liable for the return of any security deposits unless delivered to Mortgagee; or

        (c)     bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

        (d)     bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

6.     Notwithstanding the foregoing, Mortgagee acknowledges and agrees that if Mortgagee shall succeed to the interest of Landlord under this Lease, Mortgagee shall be subject to Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

7.     Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed that in the event that Landlord defaults in the payment of the Tenant Improvement Allowance, as defined in the Lease, and Mortgagee acquires title to the Shopping Center by foreclosure or otherwise, Mortgagee shall become liable for payment of the Tenant Improvement Allowance to Tenant, and Tenant shall otherwise be entitled to effect a Transfer all in accordance with the terms of the Lease.

8.     Mortgagee, Landlord and Tenant, respectively, represent and warrant to each other that each has the requisite power and authority to enter into this Agreement; that all necessary and appropriate approvals, authorizations and other steps have been taken to effect the legality of this Agreement; that the signatories executing this Agreement on behalf of Mortgagee,

2 – Ex. "G"                                      MW 4/21/03
                                                \\REA\140800.6

Landlord and Tenant have been duly authorized and empowered to execute this Agreement on behalf of Mortgagee, Landlord and Tenant, respectively; and that this Agreement is valid and shall be binding upon and enforceable against Mortgagee, Landlord and Tenant shall inure to the benefit of the parties hereto, and their successors and assigns.

9.    Tenant hereby agrees that, upon the occurrence of an Event of Default (as defined in the Lease), Mortgagee shall have the same time period for cure of such default as is given Landlord in accordance with the terms of the Lease, following notice given by Tenant to Mortgagee at the following address, in the same method for notice as is required under the Lease:

10.    All notices between the parties hereto shall be in writing and comply with the terms of paragraph 32 of the Lease.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

MORTGAGEE:

COMPANY NAME

ATTEST:

_____

Its: _____

By: _____
Name: _____
Title: _____

TENANT:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

ATTEST:

_____

Its: _____

By:    _____
       R. Bruce Lucas, Vice President

**[Note: Attach appropriate notary blocks for the State]**

3 – Ex. "G"

MW 4/21/03
\\REA\140800.6

## EXHIBIT "G"

After recording return to:

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
### (Ground Lease)

This SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT, dated the _____ day of _____, _____, between _____, a _____ ("Ground Lessor"), and CIRCUIT CITY STORES, INC., a Virginia corporation ("Tenant").

### W I T N E S S E T H:

(a)     Tenant has entered into a certain lease (the "Lease") dated _____, _____ with _____ ("Landlord"), covering premises located within that certain property known as _____ Shopping Center, located in the City of _____, _____ County, _____, and more particularly described in Schedule A hereto; and

(b)     Ground Lessor has entered into a Lease with Landlord as evidenced and recorded _____, _____ in the land records of _____ County, _____, in Book _____ at page _____ (the "Ground Lease"), covering the property described in Schedule A; and the parties hereto desire to set forth their agreement with regard to the priority of the Ground Lease and the effect thereof on Tenant and its leasehold interest in the aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1.     The Lease is a sublease and shall be subordinate to the Ground Lease insofar as it affects the real property of which the premises form a part thereof.

2.     Tenant agrees that it will attorn to Ground Lessor and any successor to the Ground Lessor by deed or otherwise as its Landlord for the unexpired balance (and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease, in the event of a termination of the Ground Lease.

3.     In the event that it should become necessary to terminate the Ground Lease, Ground Lessor thereunder will not terminate the Lease nor join Tenant in summary proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

MW 4/21/03
\\REA\140800.6

4.      Ground Lessor consents to the application of casualty and condemnation proceeds in accordance with paragraphs 15 and 16 of the Lease between Landlord and Tenant, whether or not the Ground Lease has been terminated.

5.      In the event that Ground Lessor shall succeed to the interest of Landlord under the Lease, Ground Lessor shall not be:

(a)    liable for any act or omission of any prior lessor (including Landlord); or

(b)    liable for the return of any security deposits unless delivered to Ground Lessor; or

(c)    bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or

(d)    bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

Notwithstanding the foregoing, Ground Lessor acknowledges and agrees that if Ground Lessor shall succeed to the interest of Landlord under this Lease, Ground Lessor shall be subject to Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

6.      Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed that in the event that Landlord defaults in the payment of the Tenant Improvement Allowance, as defined in the Lease, and Ground Lessor terminates the Lease, Ground Lessor shall become liable for payment of the Tenant Improvement Allowance to Tenant, and Tenant shall otherwise be entitled to effect a Transfer all in accordance with the terms of the Lease.

7.      This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their successors and assigns.

8.      Tenant hereby agrees that, upon the occurrence of an Event of Default (as defined in the Lease), Ground Lessor shall have the same time period for cure of such default as is given Landlord in accordance with the terms of the Lease, following notice given by Tenant to Ground Lessor at the following address, in the same method for notice as is required under the Lease:

_____

_____

_____

5 – Ex. "G"

MW 4/21/03
\\REA\140800.6

9.     All notices between the parties hereto shall be in writing and comply with the terms of paragraph 32 of the Lease.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

<u>MORTGAGEE</u>:

COMPANY NAME

ATTEST:

_____

Its: _____

By: _____
Name: _____
Title: _____

<u>TENANT</u>:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

ATTEST:

_____

Its: _____

By: _____
Name: _____
Title:   Vice President

[Note: Attach appropriate notary blocks for the State]

6 – Ex. "G"

EXHIBIT "H"

After recording, return to:
McGuireWoods LLP
One James Center
Richmond, Virginia 23219
Attn: Russell T. Aaronson, III

## MEMORANDUM OF LEASE

This MEMORANDUM OF LEASE is made this _____ day of _____,
2003, between **SIR BARTON PLACE, LLC**, a Kentucky limited liability company, having an
address of 2030 Winchester Road, Lexington, Kentucky 40505 (hereinafter referred to as
"Landlord"), and **CIRCUIT CITY STORES, INC.**, a Virginia corporation, having an address
of Deep Run I, 9950 Mayland Drive, Richmond, Virginia 23233 (hereinafter referred to as
"Tenant").

### W I T N E S S E T H:

Landlord and Tenant have entered into a Lease (the "Lease") dated _____,
2003, whereby Landlord has leased to Tenant a portion of the real property (the "Property")
commonly known as the Sir Barton Place Shopping Center in Hamburg, Lexington-Fayette
County, Kentucky, the legal description of which Property is set forth on Exhibit "A-1" attached
hereto, together with certain non-exclusive easements in, over, upon, across, under and through
certain areas of the Property defined in the Lease as Landlord's Premises, and all easements and
rights pertaining thereto, including, without limitation, those certain rights and non-exclusive
easements granted to or inuring to the benefit of Landlord under that certain (REA or OEA and
other easement estates of record) recorded in Book ____, beginning at Page ____ of the real
property records of _____ County, _____, in, over, upon, across, under and through the land
described therein. The Lease contains provisions and rights appurtenant to the Property, some of
which are as follows:

I.    <u>Term</u>.  The term of the Lease is for a period of fifteen (15) years, commencing on the
      Commencement Date (as established in the Lease based upon the substantial completion
      of the improvements upon the Property). Thereafter, Tenant has the right under the Lease
      to renew and extend the term of the Lease for three (3) successive periods of five (5)
      years each.

II.   <u>Exclusive Use Rights</u>.  The Lease provides that Tenant shall enjoy the sole and exclusive
      privilege within the Property to sell, rent, service, repair or rent to own consumer,

1 – Ex. "H"

business and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video and audio recorders and players and cameras), computers and computer related hardware and software and related software services, including internet access services, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment), cellular and wireless telephones and telecommunication devices and related goods, and the sale and installation of motor vehicle audio, stereo and telephone systems and technological evolutions of the foregoing (all of such items being herein collectively referred to as the "Products"), and the renting, servicing, repairing and warehousing of the Products.

III.    <u>Successors</u>.  The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

IV.    <u>Incorporation of Lease</u>.  All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

V.    <u>Conflicts with Lease</u>.  This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter, modify, expand, diminish or supplement the provisions of the Lease.  In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

<u>LANDLORD</u>:

SIR BARTON PLACE, LLC,
a Kentucky limited liability company

By: _____
Name: _____
Title: _____

**Note: Attach appropriate notary block for the State]**

2 – Ex. "H"

TENANT:

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

By: _____

      R. Bruce Lucas, Vice President

**COMMONWEALTH OF VIRGINIA**    )
                                     ) ss,

**COUNTY OF HENRICO**                 )

      I certify that on _____, _____, before me, the undersigned, a Notary Public in and for said State, personally appeared R. Bruce Lucas, Vice President of **CIRCUIT CITY STORES, INC.,** a Virginia corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and on oath acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person or the entity upon behalf of which he acted executed the instrument.

      **WITNESS** my hand and official seal.

                                    _____
                                    Notary Public in and for the Commonwealth of
                                    Virginia, residing at _____
                                    My commission expires: _____

                                    _____
                                    [Type or Print Notary Name]

MW 4/21/03
\\REA\140800.6

EXHIBIT "I"

COMMENCEMENT DATE AGREEMENT

This COMMENCEMENT DATE AGREEMENT, made as of this ____ day of
_____, _____ between SIR BARTON PLACE, LLC, a Kentucky limited liability company
(herein called "Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation (herein
called "Tenant").

WITNESSETH:

WHEREAS, Landlord is the owner of certain premises situated in Hamburg, Lexington-
Fayette County, Kentucky (herein called the "Premises"); and

WHEREAS, by that certain Lease dated _____, 2003 (herein called the
"Lease"), Landlord leased the Premises to Tenant; and

WHEREAS, a memorandum or short form lease in respect of the Lease was recorded in
the office of the Clerk of Lexington-Fayette County, Kentucky, on the ____ day of
_____, 2003, in Book _____ at Page ____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Lease has
commenced; and

WHEREAS, under Paragraph 24 of the Lease, Landlord and Tenant agreed to enter into
an agreement setting forth certain information in respect of the Premises and the Lease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1.     The term of the Lease commenced on, and the Commencement Date (as such
term is defined in the Lease) was, _____, _____. The term of the Lease shall expire
on January 31, ____ unless Tenant exercises any option to extend the term of the Lease or unless
the Lease terminates earlier as provided in the Lease.

2.     The date of commencement of the first "Option Period" (as such term is defined
in the Lease) shall be February 1, ____ if Tenant effectively exercises its option in respect
thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless
Tenant exercises any option to further extend the term of the Lease or the Lease terminates
earlier as provided in the Lease.

3.     The date of commencement of the second Option Period shall be February 1,
____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term
of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further
extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

MW 4/21/03
                                                                                         \\REA\140800.6

4.     The date of commencement of the third Option Period shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, _____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

5.     The date of commencement of the fourth Option Period shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, _____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

6.     The date of commencement of the fifth Option Period shall be February 1, _____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, _____ unless the Lease terminates earlier as provided in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

LANDLORD:

**SIR BARTON PLACE, LLC**
a Kentucky limited liability company

By: _____
Name: _____
Title: _____

TENANT:

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

By: _____
R. Bruce Lucas, Vice President

2 – Ex. "I"

MW 4/21/03
\\REA\140800.6

## EXHIBIT "J"

## INDEMNIFICATION AGREEMENT

This INDEMNIFICATION AGREEMENT is made this _____ day of _____, _____, between SIR BARTON PLACE, LLC, a Kentucky limited liability company (hereinafter referred to as "Landlord") and CIRCUIT CITY STORES, INC., a Virginia corporation (hereinafter referred to as "Tenant").

### WITNESSETH:

Landlord and Tenant have entered into a Lease (the "Lease"), dated _____ whereby Landlord has leased to Tenant a portion of the real property located in _____, _____ County, _____ (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Tenant Improvement Allowance as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    Tenant hereby indemnifies and agrees to hold Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises and the Shopping Center as a result of Tenant's construction activities at the Shopping Center. In the event that any mechanic, materialman or other claimant makes claim against the Premises or Shopping Center based upon materials or services provided under contract with Tenant, Tenant shall hold harmless and protect Landlord from any loss, payment, claim or expense related thereto.

2.    Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises or the Shopping Center by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure or by any other means, Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises and the Shopping Center. This indemnity and hold harmless shall not apply to any liens or claims caused by Landlord or Landlord's agents.

EXECUTED this _____ day of _____, _____.

### LANDLORD:

**SIR BARTON PLACE, LLC,**
a Kentucky limited liability company

By: _____
Name: _____
Title: _____

1 – Ex."J"

MW 4/21/03
\\REA\140800.6

TENANT:

**CIRCUIT CITY STORES, INC.,**
**a Virginia corporation**

By: _____

      R. Bruce Lucas, Vice President

**2 – Ex."J"**

## EXHIBIT "K"

## RULES AND REGULATIONS

The use of the Premises and the Common Areas by Tenant, its employees, agents, customers and invitees shall be subject at all times during the Term to the following Rules and Regulations, as they may be reasonably amended and modified from time to time by Landlord provided that such Rules and Regulations shall be applied to all tenants of the Shopping Center in a uniform and non-discriminatory manner:

(a)     All garbage and refuse shall be kept either inside the Premises or shall be placed outside of the Premises in containers approved by Tenant's garbage collection service provider.

(b)     Except for customary promotional activities conducted by Tenant (such as periodic Bose promotions) or Tenant's car stereo installation business, no loud speaker, television, phonograph, compact disc player, radio, tape player or other devices shall be used in a manner so as to be heard or seen outside of the Premises without the prior written consent of Landlord.

(c)     The plumbing facilities shall not be used for any purpose other than that for which they are constructed. No foreign substance of any kind shall be thrown therein, and the expense of any breakage, stoppage or damage resulting from a violation of this rule and regulation shall be borne by Tenant. All grease traps, if any, shall be installed and maintained in accordance with Landlord's requirements.

(d)     Tenant shall, at its sole cost and expense, contract for period termite and pest extermination services covering the Premises, on at least a semi-annual basis. Tenant shall furnish to Landlord a certificate evidencing such coverage showing both the beginning and the termination date. The certificate shall be kept current during the Term.

(e)     Tenant shall not burn any trash or garbage of any kind in the Premises or within the Shopping Center.

(f)     Tenant shall keep and maintain the Premises (including, without limitation, exterior and interior portions of all windows, doors and all other glass) in a neat and clean condition.

(g)     Tenant shall pay before delinquency all license or permit fees and charges of a similar nature for the conduct of any business in the Premises.

(h)     Tenant shall not perform any act or carry on any practice which may damage, mar or deface the Premises or the Shopping Center.

(i)     Tenant shall not (i) place a load on any floor in the interior delivery system, the Premises, or the Shopping Center, exceeding the floor load which such floor was designed to

1 – Ex."K"

carry, and (ii) install, operate or maintain therein, any heavy item or equipment, except in such manner as to achieve a proper distribution of weight.

(j)    Tenant shall not suffer, allow or knowingly permit any vibration, noise, light, odor or other effect to emanate from the Premises, any machine or other installation therein, or otherwise suffer, allow or permit the same to constitute a nuisance or otherwise interfere with the safety, comfort and convenience of Landlord or any other tenant of the Shopping Center or their employees, customers, agents or invitees, or any others lawfully in or at the Shopping Center. Upon notice by Landlord to Tenant that any of the aforesaid is occurring, Tenant shall forthwith remove or control the same.

(k)    Tenant shall cause its employees, agents and persons selling to Tenant to park in spaces reasonably designated by Landlord for such parking.

(l)    Except for promotional activities permitted by Tenant's lease agreement with Landlord, Tenant, its employees, agents, customers and invitees shall not solicit in the Common Areas.

(m)    Tenant, and its employees, shall not possess or maintain any illegal drugs or drug paraphernalia on, at or in the Premises.

2 – Ex."K"

MW 4/21/03
\\REA\140800.6