Landlord. Real Estate Taxes shall be prorated as of the Commencement Date and the expiration or earlier termination of this Lease, and Landlord shall promptly return to Tenant any overpayment made by Tenant not attributable to the period of Tenant's possession of the Premises. Landlord shall remain primarily responsible for such payment notwithstanding the fact that such payment may be made by a tenant of Landlord's Premises or other third party pursuant to an agreement to which Tenant is not a party. In addition, should Landlord fail to pay such Real Estate Taxes before same become delinquent, Tenant shall have the right, at its election, to cure such failure by payment of delinquent Real Estate Taxes and any interest and penalties due thereon and in such event Tenant may deduct the cost thereof, plus interest at the lesser of fifteen percent (15%) per annum or the highest rate permitted by State law (the "Default Rate"), from the next installment(s) of Base Rent and other charges due hereunder.

(c) <u>Contest of Real Estate Taxes and/or Assessed Valuation of Property</u>. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within ten (10) days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction. In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall cooperate with Tenant, execute any and all documents required in connection therewith and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution thereof.

(d) <u>Payment Following Appeal</u>. Upon the termination of the proceedings set forth in subparagraph (c) above (unless the taxing authority requires that Real Estate Taxes be paid under protest prior to or during such proceedings), Tenant shall pay Tenant's Pro Rata Share of such Real Estate Taxes as finally determined in such proceedings, the payment or partial payment of which may have been deferred during the prosecution of such proceedings. Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises, as well as a reimbursement from the appropriate taxing authority of all costs, fees and expenses it incurs in such protest or reassessment.

10. <u>Maintenance, Repairs and Replacements</u>. Except (i) for costs covered by Landlord's insurance required to be maintained hereunder, (ii) for condemnation proceeds to be received by Tenant, (iii) for obligations arising from the negligent acts or omissions or willful misconduct of Landlord (or its agents, employees or other tenants), or (iv) as otherwise set forth in this Lease, Tenant shall be solely responsible for maintenance of, including all heating and cooling equipment, electrical and plumbing systems, plate glass, doors and paint, when necessary, the exterior and interior non-structural elements of the Building. Tenant shall, at all times, maintain the Premises in good condition and repair. Notwithstanding the foregoing, Tenant shall have no obligation to install or construct alterations or incur expenditures pursuant to this paragraph during the last five (5) years of the Lease Term; provided however that if Tenant is required to expend any sum in satisfaction of its obligations hereunder, and if the resulting improvement to the Improvements cannot be fully amortized in accordance with generally accepted accounting principles, or the Internal Revenue Code and Regulations, over the remainder of the Term (without consideration to the exercise of any additional Renewal Options), then Tenant shall so notify Landlord and Landlord shall either (A) direct Tenant that Landlord elects not to cause Tenant to make such capital replacements, and Tenant shall thereby be relieved of any liability for such replacement obligation unless such capital replacement is required to sustain a Building system critical to Tenant's operations, in which event Landlord shall be deemed to have elected (B) immediately following, or (B) direct Tenant to make such capital expenditure in which event Tenant shall be reimbursed by Landlord by that amount of the cost associated with such repairs, construction or alteration for the period beyond the remainder of the Term (without consideration to the exercise of any additional Renewal Options). Landlord shall maintain all structural elements of the Premises (whether or not same serve only the Premises), including, without limitation, the roof, roof structure, flooring system, floor slab, foundation, load bearing walls and exterior structural walls. In addition, Landlord agrees to maintain the Other Improvements immediately surrounding the Building, as well as sidewalks and landscaping. Should either party fail to perform its obligations under this paragraph 10, the other party may, at its option, effect such maintenance, replacements or repairs, provided that such curing party shall have given the nonperforming party thirty (30) days' prior written notice, except in the case of emergencies (in which event only such notice as may be reasonable under the

13

circumstances shall be required); but further provided that such thirty (30) day period (or reasonable period in event of emergencies) shall be extended in respect of any cure that cannot with reasonable diligence be accomplished within such period so long as the party required to effect such cure has commenced such cure within such thirty (30) day period (or reasonable period in event of emergencies) and thereafter diligently prosecutes such cure to completion. The nonperforming party shall reimburse the other party on demand for the reasonable and actual amount so expended (as evidenced by detailed invoice), plus interest at the Default Rate. However, in the event of emergency repairs, no interest shall accrue if reimbursed within thirty (30) days of request (including detailed invoice) for reimbursement. All maintenance, repairs or replacements shall be done by Tenant or Landlord lien-free and in a good and workmanlike manner consistent with the quality of labor and materials used in originally constructing the Improvements and in accordance with all applicable law. In order for Landlord and Tenant to effectively perform their maintenance, repair and replacement obligations hereunder, Tenant and Landlord, as applicable, shall provide to the other party any and all manufacturers' and contractors' warranties relating to such work performed on behalf of the other party to the party who is required to maintain same under the Lease. Notwithstanding anything contained herein to the contrary, Tenant shall be responsible for all structural elements of the Premises for the one (1) year period which is covered by Tenant's general contractor's warranty.

11. <u>Utility Service Provider: Payment of Utility Bills</u>. Tenant shall be entitled, subject to State law, to select the utility service provider which shall provide water, electric, gas, cable, and telecommunication services to the Premises. Tenant will pay directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements. Landlord shall pay when due all utility charges incurred in the operation of the Common Areas (which shall be included within CAM Charges) and the Shopping Center.

12. <u>Alterations</u>. During the Term, Tenant shall have the right, at its discretion and its sole cost, without Landlord's consent, to make (i) any alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly sized stores, but no alterations shall be permitted to the extent that they increase or decrease the gross

14

263761_8 (00051.42 [11992])

leasable area or the height of the Building, adversely affect the structural integrity of the Building. or are inconsistent with the then-existing architectural theme of the Shopping Center and (ii) any interior nonstructural alterations or modifications it may desire. In the event Tenant makes exterior changes to the Building, Tenant shall provide Landlord with notice of such changes and a copy of its plans and specifications for such exterior changes. With Landlord's consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall otherwise have the right, at its sole cost, to otherwise alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements. Landlord's withholding of consent as to any exterior or structural alteration or modification shall be deemed reasonable only if same is materially inconsistent with the then-existing architecture of the Shopping Center. Should Landlord's consent be required, conceptual plans and specifications for such work shall be provided to Landlord prior to commencement of any such work. Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within fifteen (15) days following Tenant's delivery of such plans and specifications to Landlord. Without cost or expense to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required in furtherance of such purposes.

13.    <u>Mechanics' Liens</u>. Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises or the Shopping Center as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises or the Shopping Center for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lie, as applicable, against the Premises or the Shopping Center. Should any lien of any nature, including, but not limited to, the foregoing, be filed against the Premises or Shopping Center, the party on account of whose actions such lien has been filed shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related

15

transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto.

14. Insurance.

(a) Property Damage. During the Construction Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all such construction. During the Main Term and all Option Periods, Tenant shall keep the Premises insured against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage in the amount of full replacement value of the Building, exclusive of excavation, footings and foundations (which initial amount shall be not less than Tenant Improvement Allowance), with a commercially reasonable deductible, for which Tenant shall be fully responsible. Landlord and Landlord's first "Mortgagee" (as defined in paragraph 21 below), shall be named in such policy or policies as additional insureds as their respective interests may appear. Landlord shall not construct, or permit to be constructed, any improvement in the Shopping Center, nor conduct any activity, or permit the conduct of any activity, in the Shopping Center which is not customarily found in similar shopping centers and which will prevent Tenant from being able to obtain insurance coverage at commercially reasonable rates. Should Landlord cause or permit any insurance rate increase to occur, Landlord will reimburse Tenant for the additional premium required, subject to Tenant's right to self-insure (in which event Landlord will contribute to Tenant's self insurance fund to cover increased actuarial risks).

(b) Liability Insurance. During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and Landlord's first Mortgagee as additional insureds as their respective interests may appear. The limits of such commercial general liability policy shall be not less than $3,000,000.00 combined single limit for bodily injury and property damage, with a commercially reasonable deductible.

(c) Workers' Compensation Insurance. To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

16

263761_8 (000051:42 [11992])

(d) <u>Self-Insurance</u>. Notwithstanding anything to the contrary contained herein, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided Tenant has a reported net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than One Hundred Fifty Million Dollars ($150,000,000).

(e) <u>Common Area, Additional Area and Third Party Tenant Insurance and Insurance During Landlord's Construction</u>. During the Term, Landlord shall keep in full force and effect, in form reasonably acceptable to Tenant, policies of (1) commercial general liability insurance, and (2) property insurance insuring against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage, with respect to the Common Areas and with respect to all other areas of the Shopping Center over which Landlord from time to time has present possessory rights (or has the right under any lease to provide insurance coverage because of a tenant's failure to maintain such required coverage) but which do not constitute a portion of the Common Areas (such areas here sometimes collectively referred to as the "Additional Areas"). The Additional Areas shall include, without limitation: (i) as yet unconstructed portions of the Shopping Center intended for tenant occupancy, (ii) constructed but unoccupied portions of the Shopping Center, (iii) vacated or otherwise uninsured tenant space, whether by reason of lease expiration, default or otherwise, and (iv) constructed and occupied portions of the Shopping Center. Said policies shall name Tenant, and any lender, investor or other stakeholder which is designated by Tenant from time to time, as an additional insured to the fullest extent Tenant and such stakeholder have insurable interests. The limits of such policies shall be the same as those set forth in subparagraphs (a) and (b) above, as applicable. The cost of the premiums for coverages relating to Common Areas shall be an element of CAM Charges, provided that Tenant shall not be liable for its pro rata share of any premium for coverage in excess of that coverage which is customary among owners of like shopping centers in the City. Any deductible amount for Common Area insurance coverage shall be reasonable in amount given the nature of the risk insured and probable frequency of claims made under such coverage, but in no event shall such deductible amount exceed $5,000 for Common Area liability coverage. Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center, including the Additional Areas and areas leased to third party tenants

17

or sold to third party occupants located within the "Reconstruction Area" (herein so called) shown on the Site Plan are insured with substantially similar coverages to those required for the Premises and the Common Areas, such that in the event of any destruction or damage to any portion of the Shopping Center whatsoever Tenant may be assured that the Shopping Center will be reconstructed in equal or superior condition within the time frame set forth in paragraph 15. During any period in which Landlord is conducting construction activities at the Shopping Center, Landlord shall keep in full force and effect, with regard to the Shopping Center, in form reasonably acceptable to Tenant, at least the minimum insurance coverages set forth below:

1)  Workers' Compensation - Statutory Limits;
    Employers Liability - $500,000;

2)  Automobile Liability for all vehicles with limits of $3,000,000; and

3)  Commercial General Liability to include premises operations and products/completed operations coverage with limits of $3,000,000.

Additionally, Landlord shall keep or require its general contractor to keep in full force and effect a policy of builder's risk insurance covering loss or damage to the Shopping Center for the full replacement value of all such construction. To the fullest extent Tenant has an insurable interest, such liability policy shall name Tenant an additional insured.

(f) Policy Provisions. All policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers with a Best rating of not less than A-VIII. Any insurance coverage enumerated above may be effected by a blanket policy or policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and provided further that in other respects any such policy or policies shall comply with the provisions of this paragraph 14. Landlord shall not be entitled to self-insure against any of the risks recited herein, except the amount of any commercially reasonable deductible shall not be deemed to be self-insurance. An increased coverage or "umbrella" policy may be provided and utilized by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the

18

263761_8 (000 51.42 (11992))

aggregate coverage provided by all such policies with respect to the limits required herein shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 14.

(g) <u>Waiver of Right of Recovery and Subrogation</u>. To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord and Tenant hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises or the Common Areas; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

(h) <u>Evidence of Insurance</u>. Subject to Tenant's right to self-insure hereunder, upon (i) commencement of the Main Term (as to property insurance), (ii) upon Delivery of the Land (as to liability insurance), and (iii) prior to expiration thereof, Tenant and Landlord shall cause to be issued to each other in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 14. Each such certificate shall provide that coverage shall not be cancelled without thirty (30) days notice to the certificate-holder (and any Mortgagee, if applicable).

(i) <u>Indemnities</u>. Except if arising from the negligent or willful acts of Landlord or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from Tenant's use thereof.

Except if arising from the negligent or willful acts of Tenant or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including attorneys' fees, for any death, damage or injury to persons or property occurring in, on or around the Shopping Center, exclusive of the Premises, or other buildings within Landlord's Premises or resulting from the use thereof by Landlord, its agents or employees.

15. <u>Damages by Fire or Other Casualty</u>.

(a) <u>Less Than Twenty-Five Percent (25%)</u>. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements, Tenant's Preferred Area and/or Reconstruction Area, which has a repair and reconstruction cost of less than twenty-five percent (25%) of the then-total replacement cost of any of the Improvements, Tenant's Preferred Area and/or Reconstruction Area, this Lease shall not terminate except as expressly set forth herein, and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof. Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds (unless self-insured) to the extent of the damage to the Premises, or the Tenant's Preferred Area or Reconstruction Area, as applicable, Tenant shall complete reconstruction of the Building and Other Improvements, and Landlord shall complete reconstruction of the Tenant's Preferred Area and Reconstruction Area (including substantially equivalent value in equipment, furniture and fixtures), to that condition existing immediately prior to such casualty, in the reconstructing party's reasonable discretion, with, in event of any Tenant reconstruction, such alterations as may be permitted under paragraph 12 hereof. In the event, subject to force majeure, the Premises, Tenant's Preferred Area and/or Reconstruction Area, as applicable, are not substantially repaired and reconstructed, and equipment, furniture and fixtures restored or replaced, by the party with repair and restoration obligations within two hundred forty (240) days after receipt of any required governmental permits, for which permits the party with repair obligations shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured), then the other party, at its option, by giving written notice to the party with repair obligations, within thirty (30) days after the expiration of said period, may undertake completion of such reconstruction, in which event the party with repair obligations shall make available to the notifying party all insurance proceeds received by the non-performing party for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction.

(b) <u>Twenty-Five Percent (25%) or More</u>. In the event of an insured fire, earthquake or other casualty, causing destruction or damage to the Improvements, Tenant's Preferred Area and/or Reconstruction Area, which has a repair and reconstruction cost of twenty-five percent

20

(25%) or more of the then-total reconstruction cost of any of said areas, or in the event of any uninsured casualty, Tenant shall have the option of terminating this Lease. Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty and shall thereupon make available to Landlord (i) all insurance proceeds paid by the insurance carrier issuing the policy of insurance required to be maintained pursuant to paragraph 14(a) above, or (ii) if self-insured, an amount equal to the reconstruction costs of the Improvements or, if the Improvements are not being reconstructed, an amount equal to the actual value of the Improvements (not to exceed, however, an amount equal to the reconstruction costs of the Improvements), to the extent such amounts would have been payable under the insurance outlined in paragraph 14(a) above. In the event Tenant does not elect to terminate this Lease as set forth above, then, subject to force majeure, within two hundred forty (240) days after receipt by Tenant of the required governmental permits for restoration, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured) with regard to such damage or destruction, Tenant shall complete reconstruction of the Improvements to their condition existing immediately prior to such damage, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 12, and shall restore the Premises (including equipment, furniture and fixtures). Should Tenant elect to maintain this Lease in full force and effect, Landlord shall reconstruct all of the Tenant's Preferred Area and Reconstruction Area in the manner specified by subparagraph (a) above regardless of the amount of damage to same. Additionally, Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center leased to third party tenants or sold to third party occupants are subject to substantially similar reconstruction obligations to those of the Premises, Tenant's Preferred Area and Reconstruction Area, such that in the event of any destruction or damage to any portion of the Shopping Center whatsoever, in the event Tenant elects to maintain this Lease in force, Tenant shall be assured that the Shopping Center as a whole will be reconstructed in accordance with this paragraph 15.

   (c) <u>Last Two (2) Years of Main Term or Option Period</u>. Notwithstanding the foregoing, if any such damage or destruction occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business, as

reasonably determined by Tenant, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, and Landlord shall receive (i) the proceeds of any insurance (together with any applicable deductible) which are paid by the insurance carrier issuing the policy of insurance required to be maintained pursuant to paragraph 14(a) above, or (ii) if self-insured, an amount equal to the reconstruction costs of the Improvements or, if the Improvements are not being reconstructed, an amount equal to the actual value of the Improvements (not to exceed, however, an amount equal to the reconstruction costs of the Improvements), to the extent such amounts would have been payable under the insurance outlined in paragraph 14(a) above.

16. Condemnation.

(a) Definition of Taking and Substantial Taking. For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, the Shopping Center or any portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises, the Shopping Center, or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements and/or Shopping Center and Common Areas as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, (ii) so many of the parking spaces within the Shopping Center as reduces the parking ratio below the greater of five (5) spaces (for full-sized automobiles) per 1,000 square feet of ground-floor gross leasable area or that ratio which is required by the zoning ordinance applicable to the Shopping Center, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within sixty (60) days after such Taking, or (iii) so much of the Common Area Easement described in paragraph 6 above that access to the Premises is adversely impeded.

(b) <u>Tenant's Rights Upon Taking or Substantial Taking</u>. In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease. All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking, and neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking.

(c) <u>Tenant's Rights Upon Less Than Substantial Taking</u>. In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the Improvements not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated thereto) and the portion of Landlord's award allocable to the Premises, which Landlord shall make available to Tenant for such restoration. If the Taking occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord.

(d) <u>Landlord's Obligations Upon Any Taking</u>. In the event of any Taking following which the Lease continues in effect, Landlord shall make all necessary restorations to all portions of the Tenant's Preferred Area and Reconstruction Area such that they each constitute a complete architectural unit and serve the function originally intended. Additionally, Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center leased to third party tenants or sold to third party occupants are subject to substantially similar reconstruction obligations to those of the Premises, Tenant's Preferred Area and Reconstruction Area, such that in the event of any condemnation of any portion of the Shopping Center whatsoever,

23

263761_8 (00051-42 [11992])

and in the event Tenant elects to maintain this Lease in force, Tenant shall be assured that the Shopping Center will be reconstructed to its former condition within reasonable time.

(e) <u>Rights Upon Temporary Taking</u>. In the event of a Taking of the Premises, the Common Areas and/or any other area within the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding sixty (60) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect. All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, or relating to the Common Areas but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of sixty (60) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(f) <u>Taking of the Pylon Sign(s)</u>. In the event of a taking, whether permanent or temporary, of any pylon or monument sign (as contemplated by paragraph 8) on which Tenant has installed identification panels, Landlord shall provide within ninety (90) days a substitute site (reasonably acceptable to Tenant) therefor, with adequate electrical power, located so as to be visible to vehicular traffic or roadways adjacent to the Shopping Center and/or at entrances to the Shopping Center, and Landlord shall replace and/or rebuild any of such signage so taken at its sole cost.

(g) <u>Tenant's Right Upon Condemnation</u>. In the event of a Taking described in subparagraph (b) or (c) above, Tenant shall be entitled to claim compensation from the condemning authority for the value of its leasehold interest in the Premises, its unamortized leasehold improvements paid for by Tenant, relocation expenses and any other items to which Tenant is entitled under applicable law.

17. <u>Assignment and Subletting</u>. Tenant shall have the right to sublet, assign, transfer reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent. In the event of such a Transfer, Tenant shall remain liable for all of Tenant's obligations to Landlord arising hereunder so long as this Lease is not changed, modified or amended in any

respect by Landlord and any transferee. Transfers to subsidiaries, affiliates, or related parties, and Transfers involving beneficial ownership interests in Tenant, shall not be deemed a Transfer hereunder and same may be effected without Landlord's knowledge or consent.

18.  Use.

(a)   Tenant may initially maintain, use and operate the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular and wireless telephones and telecommunication devices, and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems and technological evolutions of the foregoing (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products.

(b)   Tenant shall also have the right to use the Premises for any lawful retail use; provided, however, that the Premises shall not be used (i) for any illegal purpose, (ii) for any use prohibited under paragraph 19(a)(viii) below, (iii) in violation of any exclusive use restriction granted a tenant or other occupant of the Shopping Center pursuant to a lease or restrictive covenants executed prior to this Lease and shown on Exhibit "F", or (iv) in violation of any other applicable provision of the "Permitted Encumbrances" contained in Exhibit "F".

(c)   Nothing contained in this Lease shall be construed to require Tenant to operate the Premises continuously either for the use first stated or for any other use.

19.  Warranties, Representations and Covenants.

(a)   Landlord represents, warrants and covenants to Tenant that:

(i)   Quiet and Peaceful Enjoyment. Tenant shall have quiet and peaceful use, enjoyment and occupancy of the Premises.

(ii)   Title. Landlord's fee simple interest in the Shopping Center is free and clear of any mortgages, deeds, encumbrances, declarations, easements, agreements, leases, tenancies or restrictions, except those matters set forth on Exhibit "F" attached hereto and entitled "Permitted Encumbrances", or any other encumbrances which would restrict Tenant's use of the Premises for

25

the sale of Products or would restrict in any respect the right of Tenant, its employees, customers and invitees to use the Common Areas in accordance with the terms of this Lease. Nothing contained in this Lease, including the Permitted Encumbrances and other matters disclosed on Exhibit "F", shall restrict Tenant's rights to sell the Products, subject to Tenant's obtaining a letter agreement (the "Office Depot Agreement") with Office Depot concerning its exclusive use restriction. Landlord specifically covenants and warrants that no third party, including, but not limited to, any other occupant of the Shopping Center, has the right to object to Tenant's tenancy hereunder, prohibit the selling, renting, servicing, repairing or warehousing of the Products (subject to receipt of the Office Depot Agreement), or the right to consent to any feature of the Improvements or Tenant's signage. This representation, warranty and covenant is a material inducement to Tenant's execution of this Lease.

    (iii)    Certificate of Authority. Landlord covenants that it is a duly constituted limited partnership under the laws of the State of Texas, and that its general partner who is acting as its signatory in this Lease is duly authorized and empowered to act for and on behalf of the partnership. Landlord has furnished Tenant prior hereto with evidence of (a) the existence of the partnership, and (b) the authority of the general partner to bind the partnership as contemplated herein.

    (iv)    No Litigation. There are no judicial, quasi-judicial, administrative or other orders, injunctions, moratoria or pending proceedings against Landlord or the Shopping Center which preclude or interfere with, or would preclude or interfere with, the construction contemplated herein or the occupancy and use of the Premises for the purposes herein contemplated.

    (v)    Hazardous or Toxic Materials. Landlord has not used, discharged, dumped, spilled or stored any Hazardous Substances (as defined in the Construction Provisions) on or about the Shopping Center, whether accidentally or intentionally, legally or illegally, and has received no notice and has no knowledge that any such condition exists at the Shopping Center. If any claim is ever made against Tenant relating to Hazardous Substances present at or around the Shopping Center, whether or not such substances are present as of the date hereof, or any Hazardous Substances are hereafter discovered at the Shopping Center (unless introduced by Tenant, its agents or employees), all costs of removal incurred by, all liability imposed upon, or damages suffered by,