or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

33. Broker. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for Moody Rambin Interests, Inc. ("Broker"), each of which shall be paid a commission by Landlord pursuant to their separate written agreement. Landlord agrees that, if Landlord fails to pay such Broker its commission when due, Tenant may pay same in accordance with the terms of Landlord's separate written agreement and offset such amount against the amounts then next becoming due from Tenant to Landlord hereunder. Landlord agrees that Broker is representing Tenant with respect to this leasing transaction, and, although Landlord is responsible for payment to Broker of the Broker's commission, the Broker owes no fiduciary's, agent's or other duty whatsoever to Landlord. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

34. Miscellaneous.

(a) Headings and Gender. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b) Construction. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c) Waiver of Jury Trial. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d) Relationship of Landlord-Tenant. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of

263761_8 (00051.42 [11992])

principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e)  Entire Agreement: Merger. This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f)  Attorneys' Fees. In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g)  Partial Invalidity. If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h)  Consents. Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i)  Holidays. If the day on which rent or any other payment due hereunder is payable falls on a Saturday, Sunday or on a legal holiday, it shall be payable on the following business day.

(j)  Applicable Law. This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

263761_8 (00051-42 (11992))

(k)    Successors and Assigns. All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l)    Counterparts. This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m)    Trademarks and Trade Names. All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

(n)    Exhibits. All of the exhibits to this Lease are hereby incorporated herein by reference for all purposes and are part of this Lease.

(o)    No Construction Against Either Party. This Agreement shall be interpreted to give it fair meaning and shall not be construed against either party.

(p)    Effective Date. This Lease shall be effective on the date (the "Effective Date") on which it is fully executed by all parties.

35.    Tenant's Right to Terminate. The parties agree that the following conditions must be met to Tenant's complete satisfaction (or waived) as set forth herein:

(a)    Landlord's delivery of subordination, non-disturbance and attornment agreements and estoppel letters executed by any and all existing Mortgagees and Ground Lessors in a form satisfactory to Tenant simultaneously with the execution hereof.

(b)    Landlord's Delivery of the Land by the date and in the condition specified in the Construction Provisions.

(c)    Tenant's obtaining: (i) written confirmation from appropriate local authorities that current zoning and use regulations allow construction of the Improvements on the Premises; and (ii) the required City, County, State and other necessary governmental agency permits and approvals to construct said Improvements on the Premises no later than July 1, 2001. Tenant agrees to apply for such permits promptly as provided herein, to use due diligence and to expend any necessary application or other fees to secure such permits and approvals; provided, however, that the foregoing

45    263761_8 {00051-42 [11992]}

shall not be deemed to require Tenant to initiate litigation or to agree to any conditions imposed upon issuance of any such permit or approval.

(d) Landlord's representations, warranties and covenants, including, but not limited to, those set forth in paragraph 19 herein, being true and accurate as of the date of Delivery of the Land (as defined in the Construction Provisions).

(e) Tenant's obtaining satisfactory written assurances that Landlord has obtained financing adequate to fund the Tenant Improvement Allowance and development of the remainder of the Shopping Center prior to the Delivery Date.

The existence of the foregoing conditions is solely for the benefit of Tenant, and Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by Tenant which specifically states the condition(s) being waived by Tenant.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived within the time periods set forth therein for the satisfaction of such conditions, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of one or more of the foregoing conditions. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14(i), 19(a)(v) and 19(b)(ii) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord. All conditions contained in this paragraph except subparagraphs (a) and (g) unless previously waived or satisfied shall expire as of the date of Tenant's store opening.

The delivery of this executed Lease by Tenant to Landlord constitutes the offer of Tenant to Landlord to bind Landlord and Tenant to the provisions of this Lease, subject to the conditions set forth in this paragraph 35. It is a further condition to the effectiveness of this Lease that upon receipt of the executed Lease from Tenant, Landlord execute and return same to Tenant within ten (10) days following receipt thereof by Landlord. In the event Landlord fails to execute and return the Lease within such ten (10) day period, Tenant may at any time after delivery of the Lease provide written

notice to Landlord that Tenant revokes its delivery of the executed Lease and thereupon Landlord shall be immediately obligated to return to Tenant all executed original counterparts as well as any copies of this Lease in the possession of Landlord, and this Lease shall thereafter be null and void.

36. <u>Landlord's Access</u>. Landlord and its agents shall have the right to enter the Premises at all reasonable times, upon not less than 72 hours prior notice except in case of emergency, (i) to examine the Premises, (ii) to show the Premises to prospective purchasers, mortgagees or ground lessors of the Shopping Center and (iii) to make any repairs, alterations or additions to the Premises or the Shopping Center that Landlord is required or permitted to make pursuant to the provisions hereof. In making any such entry, Landlord shall use all reasonable efforts to minimize interference with the conduct of business by Tenant in the Premises.

37. <u>Confidentiality</u>. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of the terms, conditions, particulars of this transaction. This confidentiality agreement extends to any developers, lenders, lawyers, accountants, employees, brokers, prospective purchasers, agents or any other persons acting on behalf of the parties hereto; provided, however that Landlord and Tenant may disclose the content of, or deliver a copy of this Lease to any of their respective partners, investors, affiliates, lenders, accountants, agents, lawyers, prospective purchasers or other persons acting on behalf of either Landlord or Tenant (a "Receiving Party") as long as the disclosing or delivering party notifies the Receiving Party that the terms, conditions and particulars of this Lease are confidential and may not be disclosed to any third party without the express written consent of Landlord and Tenant. The parties hereto agree to use their best reasonable efforts to avoid discussing with, or disclosing to, any third parties (except any Receiving Party, as provided above) any of the terms, conditions or particulars of this Lease. It is specifically agreed by way of illustration, but not by limitation, that the covenant of confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any governmental law or ordinance, or in a general reference to the fact that Tenant signed a lease with respect to the Shopping Center, but this covenant of confidentiality shall be breached if either party fails to notify any Receiving Party, when it discloses the content of, or delivers a copy of this Lease to any such party, that this Lease is confidential and may not be disclosed to any third party without the express written consent of both

parties to this Lease. Notwithstanding the foregoing, and without limiting the other disclosure rights specifically described in this paragraph 37, Landlord shall have the right to disclose to existing, future and prospective tenants of the Shopping Center the terms of this Lease which are intended to regulate or restrict the activities of such tenants in the Shopping Center, such as the terms of Tenant's exclusive use rights and any use restrictions applicable to such tenants. Further, Landlord shall have the right to disclose to such tenants the size, dimensions and appearance of Tenant's building, the proposed use to be made of the Premises by Tenant and Tenant's right to change uses in the Premises.

WITNESS the following signatures and seals:

LANDLORD

A.D.D. HOLDINGS, L.P.,
a Texas limited partnership

By:  A.D.D. Development, L.L.C.,
     it's general partner

WITNESS:

_____
Lynne K. Mottley

By: _____
    Artemio De La Vega,
    Manager

Landlord's Tax ID Number: 74-2770909

WITNESS:

*[signature]*

Lynda Capehart

TENANT

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: *[signature]*

Benjamin B. Cummings, Jr.,
Vice President

[EL PASO, TEXAS/LEASE]


EXHIBIT "A-1"

LEGAL DESCRIPTION

The parcel of land herein described is a 60,460-acre portion of Lot 1, Block 337, Vista Del Sol Unit Sixty Nine Replat E (Book 71, Pages 70 and 70A, Plat Records, El Paso County, Texas), Tracts 1B5 and 1B9, O.A. Danielson Survey 309 (May 22, 1970, Book 295, Page 1643, Deed Records, El Paso County, Texas), and Tract 2C, R.L. Chinn Survey (May 22, 1970, Book 295, Page 1643, Deed Records, El Paso County, Texas), El Paso, El Paso County, Texas, and is more particularly described by metes and bounds as follows:

COMMENCING at a city monument at the centerline intersection of Rojas Drive (120-foot-right-of-way per the plat of Vista Granada Unit Two, Book 56, Page 13, Plat Records, El Paso County, Texas) and George Dieter Drive (120-foot right-of-way) per the plat of Vista Del Sol Unit Sixty Nine, Book 56, Page 44, Plat Records, El Paso County, Texas); Thence, South 89°27'13" West, along the centerline of Rojas Drive, a distance of 88.80 feet, from which a city monument at the centerline intersection of Trudy Elaine Drive (60-foot right-of-way) and Rojas Drive bears North 66°57'58" West, a distance of 746.62 feet; Thence, South 00°32'47" East, a distance of 60.00 feet to the northerly right-of-way of Rojas Drive and the POINT OF BEGINNING of this description;

THENCE, North 89°27'13" East, along said right-of-way, a distance of 8.81 feet;

THENCE, 31.41 feet along the arc of a curve to the right, having a radius of 20.00 feet, a central angle of 89°59'36", and a chord which bears South 45°32'59" East, a distance of 28.28 feet to the westerly right-of-way of George Dieter Drive;

THENCE, South 00°33'11" East, along said right-of-way, a distance of 1207.05 feet;

THENCE, 753.83 feet continuing along said right-of-way and along the arc of a curve to the right, having a radius of 1312.82 feet, a central angle of 32°53'59", and a chord which bears South 15°53'49" West, a distance of 743.52 feet;

THENCE, South 32°20'48" West, continuing along said right-of-way, a distance of 15.99 feet to the common boundary between Vista Del Sol Unit Sixty Nine Replat E and Tract 1B3, O.A. Danielson Survey 309 (March 25, 1955, Book 1224, Page 276, Deed Records, El Paso County, Texas);

THENCE, North 89°58'12" West, along said boundary, a distance of 705.77 feet to the easterly right of U.S. Interstate Highway No. 10 (March 16, 1955, Book 1220, Page 206, Deed Records, El Paso County, Texas);

THENCE, North 41°35'01" West, along said right-of-way, a distance of 483.87 feet;

THENCE, 44.76 feet along the arc of a curve to the left, having a radius of 66.24 feet, a central angle of 38°43'18", and a chord which bears North 67°47'32" East, a distance of 43.92 feet;

THENCE, North 48°25'49" East, a distance of 231.96 feet;

1 - Ex. "A-1"  263761_8 (00051/42 (11992))

THENCE, 34.49 feet along the arc of a curve to the left, having a radius of 21.00 feet, a central angle of 94°06'04", and a chord which bears North 01°22'47" East, a distance of 30.74 feet;

THENCE, 21.02 feet along the arc of a curve to the right, having a radius of 291.40 feet, a central angle of 04°07'58", and a chord which bears North 43°36'16" West, a distance of 21.01 feet;

THENCE, North 41°39'01" West, a distance of 189.11 feet;

THENCE, South 48°25'49" West, a distance of 293.38 feet to the easterly right of U.S. Interstate Highway No. 10;

THENCE, North 41°35'01" West, along said right-of-way, a distance of 271.96 feet to the boundary of that certain parcel described December 11, 1998, in Book 3498, Page 1507, Deed Records, El Paso County, Texas;

THENCE, along said boundary, the following courses:

    North 48°22'20" East, a distance of 293.16 feet;

    North 41°39'01" West, a distance of 255.98 feet;

    32.95 feet along the arc of a curve to the left, having a radius of 20.47 feet, a central angle of 92°13'21", and a chord which bears South 88°54'30" West, a distance of 29.50 feet;

    South 48°22'20" West, a distance of 215.67 feet;

    68.75 feet along the arc of a curve to the left, having a radius of 59.62 feet, a central angle of 66°04'10", and a chord which bears South 15°48'03" West, a distance of 65.00 feet to the easterly right-of-way of U.S. Interstate Highway No. 10;

THENCE, North 41°35'01" West, along said right-of-way, a distance of 342.09 feet to the southerly boundary of that certain parcel of land described November 6, 1998, in Book 3478, Page 75, Deed Records, El Paso County, Texas;

THENCE, North 48°24'59" East, along said boundary, a distance of 338.14 feet to the common boundary between Lot 1, Block 335A and Lot 1, Block 337, Vista Del Sol Unit Sixty Nine Replat E;

THENCE, along said boundary, the following courses:

    South 41°35'01" East, a distance of 211.46 feet;

    54.03 feet along the arc of a curve to the left, having a radius of 30.00 feet, a central angle of 103°11'34", and a chord which bears North 86°49'12" East, a distance of 47.02 feet;

    North 35°13'25" East, a distance of 1127.89 feet;

87.78 feet along the arc of a curve to the right, having a radius of 521.27 feet, a central angle of 09°38'54", and a chord which bears North 40°02'52" East, a distance of 87.68 feet;

North 44°52'19" East, a distance of 24.76 feet;

45.62 feet along the arc of a curve to the left, having a radius of 30.00 feet, a central angle of 87°07'41", and a chord which bears North 01°18'29" East, a distance of 41.35 feet to the southerly right-of-way of Rojas Drive;

THENCE, 837.09 feet along said right-of-way and along the arc of a curve to the left, having a radius of 993.19 feet, a central angle of 48°17'25", and a chord which bears South 66°24'04" East, a distance of 812.53 feet to the POINT OF BEGINNING of this description.

Said parcel of land contains 60.460 acres (2,633,624 square feet) of land more or less.