

# MASTER SERVICES AGREEMENT

This **MASTER SERVICES AGREEMENT** (the "MSA" or "Agreement"), dated as of August 27, 2007 (the "Effective Date"), is made by and between **Infogain Corporation** maintaining an office at 475 Alberto Way, Los Gatos, CA 95032 (the "Supplier"), and **Circuit City Stores, Inc.**, maintaining its principal office at 9950 Mayland Drive, Richmond VA 23233-1464 ("Circuit City", and together with the Supplier, the "Parties"), consists of this MSA and any fully executed Statements of Work. This MSA contemplates a variety of arrangements under which the Supplier may provide various Services to Circuit City.

A specific project will be defined and agreed to in writing by its own Statement of Work ("SOW") and attached to this MSA. Each SOW together with this MSA forms a separate agreement between the Parties to this Agreement.

## 1.0 PURPOSE OF AGREEMENT

1.1 The purpose of the MSA is to confirm the present mutual intentions of the Parties concerning a proposed arrangement pursuant to which the Supplier will provide certain Services to Circuit City. The Parties also confirm the exchange, receipt and adequacy of consideration hereunder.

## 2.0 AGREEMENT STRUCTURE

**2.1** **Structure**. The structure of the MSA is as follows:

**(a)** MSA defines the basic terms and conditions of the contractual relationship between the Supplier and Circuit City.

**(b)** Each SOW describes a specific project. Each SOW shall reference the MSA and may include additional terms and conditions for a specific project.

**2.2** **Conflicting Terms**. If there is a conflict of terms between the MSA and any SOW or other document, the terms of the MSA shall prevail, unless the conflicting document expressly states that the document modifies such terms.

**2.3** **Amendments**. Amendments to this MSA or a SOW must be in writing and signed by an authorized representative for each Party.

**2.4** **No Commitment**. This MSA is not a commitment by either Party to execute a SOW.

**2.5** **No Exclusivity**. The Parties agree that nothing in the Agreement should be construed as creating an exclusive relationship between them.



EXHIBIT A



## 3.0 DEFINITIONS

**3.1** **Deliverables**. Deliverables are Supplier Deliverables and Circuit City Deliverables, if any, respectively.

**(a)** Supplier Deliverables are any items or work prepared for, or delivered by the Suppler to, Circuit City under a SOW.

**(b)** Circuit City Deliverables are any items or work prepared or provided by Circuit City under a SOW.

**3.2.** **Personnel**. Consists of the Circuit City's and Supplier's (or either of their Subsidiaries') employees, agents, affiliates, representatives, and authorized subcontractors working under the MSA and any SOW.

**3.3** **Services**. Any reasonable effort expended by the Parties or their Personnel to perform the work described in a SOW.

**3.4** **Subsidiary**. Means a company owned or controlled by Circuit City or Supplier during the Term of the Agreement. For the purpose of this Section "controlled" means direct or indirect control of more than fifty percent (50%) of voting stock or decision-making power.

## 4.0 RELATIONSHIP OF THE PARTIES

**4.1** The Parties to this Agreement are independent of one another. This Agreement does not create any relationship of franchise, joint venture, association, partnership, or any other form of business organization. Neither Party shall have any right, power or authority to bind the other or to assume, create, or incur any expenses, liability or obligation, express or implied, on behalf of the other. Circuit City shall not be responsible for payment of Supplier Personnel's salary, benefits, expenses, insurance, taxes, workers' compensation, unemployment insurance or any other employee benefits, but such responsibility shall be that of the Supplier. Furthermore, the Supplier shall be fully responsible for withholding any and all Federal, state or local income and employment taxes in connection with Supplier Personnel's compensation.

**4.2** The Supplier may subcontract its obligations under this MSA or any SOW to a third party with the prior written consent of Circuit City. For further limitations see also Section 4.8 of this Agreement.

**4.3** During the term of this Agreement and during any renewal term and for three (3) years thereafter neither Party shall use (except for the purpose of implementing this Agreement) or disclose to any third party (except a Party's subcontractors and independent contractors for the purpose of implementing this Agreement and who are bound by confidentiality obligations at least as restrictive as those contained in this section), without the prior written permission of the



disclosing party, any confidential or proprietary information disclosed hereunder (hereinafter "Confidential Information"), except as may be required by a court of law or government action. Confidential Information includes, but is not limited to, all information, whether written or oral, and in any form, including without limitation, information relating to the terms of this Agreement, research, development, products, methods of manufacture, trade secrets, business plans, customers, vendors, finances, personnel data, third party proprietary or confidential information (including the confidential information of a Party's subcontractor), and other material or information declared in writing as proprietary by the disclosing party, or which a reasonably prudent person would consider to be confidential and proprietary to the disclosing party and relating to the current or anticipated business which is disclosed directly or indirectly to the receiving party. Neither Party shall be liable to the other for Confidential Information which: (i) is already lawfully known to the receiving party at the time of disclosure; (ii) is in or subsequently enters the public domain (or is or becomes publicly available) without any violation of this Agreement by the receiving party; (iii) the receiving party obtains from a third party source not under a known obligation of confidentiality to the disclosing party; or (iv) which is independently developed or acquired without use or reference to the Confidential Information, as evidenced by appropriate documentation or other competent evidence. Each Party shall use all reasonable efforts to obligate its Personnel to comply with this confidentiality provision. Nothing herein shall be construed as granting or conferring any right by license or otherwise to the receiving party in/to any Confidential Information disclosed hereunder except as specifically set forth herein. Upon the earlier of a Party's request or any termination of this Agreement, the receiving party shall return to the disclosing party the Confidential Information and all copies thereof of the disclosing party. Should the Supplier engage an approved subcontractor to perform any of its obligations under the terms of this MSA or any SOW hereunder, the Supplier shall obtain a Confidentiality Agreement from the subcontractor containing terms to protect Circuit City's Confidential Information similar to those stated herein. Notwithstanding the above, any such Confidentiality Agreement executed by a subcontractor shall not relieve the Supplier from its confidentiality obligations set forth in this Section 4.3.

**4.4** Neither Party relies on any promises, inducements, or representations made by the other or expectations of any future business dealings except as expressly provided in this MSA or any associated SOW.

**4.5** The Supplier shall:

**(a)** Perform Services and provide its Deliverables according to the schedule in a given SOW or as otherwise agreed to in writing by the Parties. Circuit City has the right to evaluate a Deliverable in accordance with the time frame specified in the SOW prior to accepting it to verify that such Deliverable meets the requirements and specifications set forth in such SOW.

**(b)** Comply with reasonable rules and regulations of Circuit City when its Personnel are on Circuit City's premises.



(c) Have appropriate agreements with its Personnel and third parties who perform obligations under the MSA and any SOW.

**4.6** The Supplier shall maintain the following insurance with an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category of at least Class VIII: (a) a policy of commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products – completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of not less than $2,000,000 each occurrence and at least $7,000,000 in aggregate liability; (b) commercial auto liability insurance to include all owned, non-owned and hired vehicles, with limits of liability not less than $1,000,000 each accident; (c) workers compensation insurance to the extent required by law and employer's liability insurance, with limits of at least $1,000,000 each accident/disease; and (d) professional liability insurance with limits of at least $2,000,000 per occurrence. All policies except for (c) and (d) above shall name Circuit City Stores, Inc. as an "Additional Insured". All certificates will provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to under this Agreement ( with the exception of cancellation due to non payment of premium which will be upon ten (10) days written notice to Circuit City) as well as notification of "Additional Insured". A certificate of insurance meeting the above requirements will be delivered to Circuit City (i) upon execution of this Agreement, (ii) upon renewal of the insurance policy and annually thereafter, and (iii) upon reasonable request.

**4.7** To the extent necessary to perform the Services, Circuit City will provide the Supplier with the workspace, facilities and supplies reasonably required to perform the Services. Circuit City shall have no liability for any claims, losses, damages, injuries, costs, expenses or any other liabilities of any kind or character whatsoever arising out of, resulting from or in any way connected with providing the Supplier with workspace, facilities and supplies in connection with the Services, except to the extent caused by the negligent or willful acts or omissions of Circuit City.

**4.8** Circuit City reserves the right to approve in advance any Personnel performing Services. At any time, Circuit City shall have the right to deem the proposed Personnel unacceptable for any reason. At Circuit City's request, the Supplier will use commercially reasonable efforts to replace any Personnel with another of appropriate capacity and experience.

## 5.0 OWNERSHIP RIGHTS

**5.1** **Ownership of Intellectual Property**. Each Party shall continue to be the sole owner of, without limitation, all its current patents, copyrights, trade secrets, trade marks, system design, tools, modules, functionalities, features, database schema or tables, functions, stored procedures, processes or templates and other intellectual property rights ("Intellectual Property") unless otherwise set forth in this MSA or any related SOW. The Party that owns such Intellectual



Property included in a Deliverable shall continue to be free to use such property in other projects and works, without restriction and without any obligation to the other Party (provided that no Confidential Information of the other Party is contained therein), except as may be otherwise specifically agreed to by the Parties in a SOW. A Party shall have no rights of ownership in the Intellectual Property of the other Party and its subcontractors, and shall only have the right to use such property as specifically provided for in this MSA or an applicable SOW; provided, however, that to the extent Intellectual Property is contained in or required to implement a Supplier Deliverable, the Supplier grants Circuit City a worldwide, perpetual, non-revocable and free license to use such Intellectual Property. Except as otherwise specified herein or may be otherwise specified in a SOW, this MSA does not grant either Party rights to use the other Party's trademarks, trade names or service marks

5.2 **Work Product**. Unless and except as otherwise agreed to in a SOW, upon Supplier's receipt of full payment for the applicable services, all materials and documents (including, but not limited to, reports, summaries and information compilations) written, assembled or produced by Supplier (or, where applicable, consultants working under an SOW) and all products, ideas, concepts, techniques, work product, inventions, processes, or works of authorship developed or created by Supplier (or, where applicable, consultants working under an SOW) during the course of providing Services to Circuit City hereunder ("**Work Product**") and all copyrights, patents, trade secrets, trade marks or other intellectual property rights associated with Work Product shall belong exclusively to Circuit City. Circuit City will have no obligation of nondisclosure or nonuse or otherwise with respect to Work Product or to any other information disclosed to Circuit City hereunder. Upon it's receipt of full payment for such services, Supplier automatically assigns (and where applicable will cause all individual consultants to assign) at the time of creation of the Work Product and without any requirement of further consideration, any right title or interest Supplier (or, where applicable, consultants working under an SOW) may have in such Work Product, including any copyrights, patent rights or other intellectual property rights pertaining thereto. Upon request of Circuit City, Supplier shall take (and where applicable shall cause individual consultants to take) such further actions, including execution and delivery of instruments of conveyance, as may be appropriate to give full and proper effect to such assignment.

Furthermore, and notwithstanding anything to contrary in the Agreement, to the extent that the Services are deemed in any way to fall within the definition of "work made for hire", as such term is defined in 17 U.S.C. §101, such Services shall be considered "work made for hire", the copyright of which shall be owned solely, completely and exclusively by Circuit City or shall be deemed to be fully, completely and exclusively assigned to Circuit City, as the case may be upon full payment to Supplier.

## 6.0 REPRESENTATIONS AND WARRANTIES

6.1 The Supplier represents, warrants, and covenants that (i) it will comply with all applicable



federal, state and local laws, rules and regulations in carrying out its obligations set forth hereunder and in any SOW hereto; (ii) it has the power and authority to execute and deliver this MSA and any associated SOW, and to perform its obligations there under; (iii) the execution, delivery and performance of this MSA has been duly and validly authorized and approved; and (iv) its Intellectual Property and Pre-Existing Property do not infringe on or dilute the intellectual property of any third party.

**6.2** The Supplier warrants that it will perform Services using reasonable care and skill and in a professional and workmanlike manner.

**6.3** Additional representations and warranties of the Parties may be set forth in a SOW.

**7.0 INDEMNIFICATION AND LIMITATION OF LIABILITY**

**7.1 Indemnity.**

**(a)** The Supplier agrees, at its sole expense, to indemnify, defend and hold harmless Circuit City, its affiliates and Subsidiaries, and all their respective officers, directors, agents and employees (collectively, the "Circuit City Indemnified Parties"), from and against any and all actions, suits, proceedings, judgments, settlements, losses, claims, damages, costs or liabilities, including reasonable attorneys' fees and costs of suit (collectively, "Claims") which the Circuit City Indemnified Parties may incur as a result of Supplier's or Supplier Personnel's acts or omissions in the performance of Services under this Agreement.

(b) Circuit City shall be given the opportunity to participate in the defense of any such Claims; however, it shall not have any right to control the defense, consent to judgment, or agree to settle any such Claims; except with the written consent of the Supplier. The Supplier shall reasonably appraise Circuit City of all significant developments relating to the defense of the Claims. Additionally, Circuit City shall cooperate fully in the investigation and defense of any such Claims, at Supplier's expense.

**7.2 Limitation of Liability.** EXCEPT WITH RESPECT TO (I) INDEMNIFICATION OBLIGATIONS (II) GROSS NEGLIGENCE, (III) WILLFUL MISCONDUCT, AND (IV) BREACH OF CONFIDENTIALITY, NEITHER PARTY HERETO SHALL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS, PUNITIVE, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, TORT, OR OTHERWISE, AND WHETHER OR NOT THE PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL EITHER PARTIES'



LIABILITY EXCEED THE FEES PAID TO THE SUPPLIER UNDER THIS AGREEMENT DURING THE PREVIOUS TWELVE (12) MONTHS.

**8.0 <u>TERM AND TERMINATION</u>**

**8.1** This Agreement shall become effective on the Effective Date and shall remain in effect until it is terminated by either Party upon providing no less than thirty (30) days' written notice of such termination (except that the date of termination cannot be prior to the expiration date of any SOW hereunder), unless otherwise terminated in accordance with the termination provisions more specifically set forth herein. The effective date of termination shall be deemed the "Termination Date".

**8.2** A SOW shall specify the effective date(s) of the particular Services described therein. A SOW shall continue until completed in accordance with its terms, unless terminated in accordance with the termination provisions of this MSA or as more specifically set forth in a SOW. If any SOW remains in effect for a period of time beyond the Termination Date of this MSA, this MSA shall be automatically extended through the last day that the SOW remains in effect.

**8.3** The Supplier shall have the right to terminate this Agreement or any or all SOW(s) without penalty if Circuit City is in breach of any material term of the Agreement and/or any SOW provided, however, that the Supplier shall first give Circuit City thirty (30) days written notice of said alleged breach and an opportunity to correct the same during said thirty (30) day period of time.

**8.4** Circuit City may immediately terminate this Agreement and all SOWs without penalty upon written notice to the Supplier in the event that (a) the Supplier becomes insolvent, enters into receivership, is the subject of a voluntary or involuntary bankruptcy proceeding, or makes an assignment for the benefit of creditors; or (b) a substantial part of the Supplier's property is or becomes subject to any levy, seizure, assignment or sale for or by any creditor or governmental agency.

**8.5** The Supplier may immediately terminate this Agreement and all SOWs without penalty upon written notice to Circuit City in the event that (a) Circuit City becomes insolvent, enters into receivership, is the subject of a voluntary or involuntary bankruptcy proceeding, or makes an assignment for the benefit of creditors; or (b) a substantial part of Circuit City's property is or becomes subject to any levy, seizure, assignment or sale for or by any creditor or governmental agency.

**8.6** Circuit City may terminate a SOW hereunder effective upon written notice to the Supplier.

**8.7** In the event of any termination hereunder, Circuit City's sole responsibility with respect to professional fees and related expenses shall be to pay those undisputed professional fees and



related expenses earned or incurred through the Termination Date, unless otherwise stated in a SOW. In addition, all Supplier Deliverables created up to the point of termination shall promptly be provided to Circuit City.

## 9.0 PRICES, PAYMENT, TAXES, AND AUDIT

**9.1** The Supplier shall be compensated by Circuit City in connection with the Services provided under this MSA and each SOW for its professional fees and expenses, as described more fully in each SOW. All payments shall be made in US dollars. The Supplier shall be obligated to pay for any and all travel and related expenses incurred by the Supplier in the provision of Services, unless otherwise specifically agreed to in writing by Circuit City or included in a SOW. Any approved travel and related expenses billed to Circuit City shall be subject to Circuit City's Travel and Expense Policy. The Supplier shall also be responsible for payment of all taxes of any kind and description relating to the Services under any SOW (apart from sales and use taxes, if any, which shall be paid by Circuit City). The Supplier agrees that any payment it receives in full and in accordance with terms specifically set forth in writing under the MSA and any SOW is considered full and complete consideration for Services provided under the MSA and the applicable SOW.

**9.2** The Supplier shall submit invoices in accordance with the terms set forth in the SOW. Invoices will list Services, goods and taxes, if applicable, separately. Circuit City will pay the undisputed invoices within forty-five (45) days of receipt of said invoice. The SOW will define any particular information required for an invoice.

## 10.0 GENERAL PROVISIONS

**10.1** No delay or failure by the Parties hereto in the performance of any obligation of this MSA or any SOW shall be deemed a breach of this MSA or any SOW nor shall it create any liability, if the same shall arise by reason of any cause beyond the reasonable control of the affected Party, including, but not limited to, labor disputes, strikes, wars, riots, insurrection, civil commotion, accident, shortage of materials or equipment, unanticipated government regulations, fire, flood, storm, or any other acts of God, including defects and/or breakdowns of equipment and programming errors not within the reasonable control of the affected Party, provided that the Party so affected shall use its best efforts to avoid or remove such cause of nonperformance and shall continue performance as soon as practicable. In the event such cause occurs and exceeds thirty (30) calendar days, the Party not so impeded may cancel the applicable SOW upon written notice and without penalty.

**10.2** Each of the Parties shall render its commercially reasonable cooperation to the other in fulfilling and performing the terms of this MSA and any SOW. To that end, each shall give to the other, in a timely manner, all consents and information and execute all documents which may be reasonably required.



**10.3** This MSA, including all Exhibits, Appendices, and SOW(s), contains the entire agreement of the Parties with respect to the subject matter herein/therein, and all prior discussions, negotiations, letters of intent and understandings regarding such subject matter are merged herein and shall not survive. All Exhibits, Appendices, and SOW(s), as amended in writing by the Parties, are an integral part of this MSA. This MSA and any SOW(s) may only be amended or modified in a writing duly signed by both Parties. Should any term/clause appearing on any Purchase Order / Invoice conflict with the terms as set forth within this MSA, the terms of this MSA shall control. Invoices and purchase orders are used for administrative purposes only. Any terms and conditions on these documents are replaced by this MSA or an applicable SOW.

**10.4** This Agreement shall inure to and benefit the Parties hereto and their permitted successors and assigns. Neither Party may assign this Agreement without the prior written consent of the other Party, which consent shall not be unreasonably withheld. Notwithstanding the above Circuit City may, without the need for consent from the Supplier transfer or assign this Agreement (a) to an Affiliate (as defined below) of such Party provided that all the persons obligated to fulfill the assigning Party's obligations under the Agreement after the assignment have substantially equivalent financial capability to that of all other persons obligated to fulfill the assigning Party's obligations under the Agreement before the assignment, or (b) to any person or entity succeeding to all or substantially all of the assets of such Party; provided, however, that any such assignee shall agree to be bound by the terms and conditions hereof. As used herein, "Affiliate" shall mean with respect to any person, any other person (other than an individual) that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such person. For purposes of the foregoing definitions, "control" means the direct or indirect ownership of more than fifty percent (50%) of the outstanding capital stock or other equity interests having ordinary voting power.

**10.5** This MSA and any SOW shall bind the Parties and their successors and assigns.

**10.6** Any waiver of any provision shall be valid only in the instance for which given and shall not be deemed a continuing waiver nor otherwise construed as a waiver of any other provision.

**10.7** If any provision of this MSA is held invalid or unenforceable as written, such provision shall be construed and enforced to the extent practicable and lawful as if it has been more narrowly drawn so as not to be invalid or unenforceable or otherwise shall be severed from the other provisions of this MSA, and the remaining provisions of this MSA shall remain in effect and be enforceable in accordance with their terms.

**10.8** The confidentiality, ownership of Intellectual Property, Representations and Warranties, and indemnification obligations hereunder, or under any SOW that by their nature are intended to survive termination shall survive termination or expiration of this MSA or any applicable SOW.



**10.9** This MSA and any associated SOW shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to those provisions governing conflicts of law.

**10.10** All correspondence and notices hereunder shall be in writing and will be deemed to be given if delivered via facsimile transmission (and confirmed with an original copy by overnight courier), registered or certified mail (return receipt requested), or mailed personally by overnight courier to the addresses specified below, or at such other address as may hereafter be furnished in writing in a SOW or otherwise to the notifying Party.

To Circuit City:

Circuit City Stores, Inc.
Attn: Pat O'Reilly
9950 Mayland Drive
Richmond, VA 23233-1464
Fax Number: 804-486-2145

With copy to:

Circuit City Stores, Inc.
Attn: Legal Department/Commercial
9950 Mayland Drive
Richmond, VA 23233-1464
Fax Number: 804-418-8248

To Supplier:

Infogain Corporation
Attn: CFO
475 Alberto Way
Los Gatos, CA 95032
Fax Number: 408-355-7000

**10.11** Both Parties will maintain auditable records regarding the subject matter of this MSA and any associated SOW to support invoices issued or payments made to the other. The records will be retained and made reasonably available for two (2) years from the date of the related payment or invoice. If a Party reasonably requests, the other Party will make the records available to an independent auditor chosen and compensated by the requesting Party. All requests shall be in writing and will not occur more than once a year. The auditor will sign an agreement to protect the audited Party's Confidential Information. The auditor shall only disclose to the requesting Party any payments due and payable for the period examined.



**10.12** Facsimile signatures are deemed binding under the terms of this Agreement. Captions are inserted only for reference, and in no way define or limit neither the scope nor the intent of any provision of this Agreement. The singular of any term herein shall include the plural, and vice versa, as dictated by context.

**10.13** Neither Party shall, without the prior written consent of the other Party, in connection with this MSA or an applicable SOW, refer to the other Party or attribute any information to the other Party in any external communication for any purpose, including without limitation press releases, web sites, offering memoranda, and conversations with analysts.

**10.14** Both parties agree not to actively solicit for employment any employee or representative of the other party during the term of a SOW and for a period of one (1) year following the date of termination or completion of a SOW without the prior written consent of Circuit City.

**10.15** EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RIGHT TO A TRIAL BY JURY AND, INSTEAD, AGREES TO LITIGATE ANY DISPUTE DIRECTLY WITH A JUDGE SITTING AS A TRIER OF BOTH FACT AND LAW.



**IN WITNESS WHEREOF,** the said Parties hereto executed this MSA in duplicate, each to have the full force and effect of any original, all as of the Effective Date hereof.

| CIRCUIT CITY STORES, INC. | INFOGAIN CORPORATION |
|---|---|
| By: [signature] | By: [signature] |
| Print Name: William McCorey | Print Name: Dean C. Wohlwend |
| Title: Sr VP – CIO | Title: CFO |
| Date: 9/27/07 | Date: 9/27/07 |