```
                   UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF VIRGINIA


IN RE:                    .      Case No. 08-35653 (KRH)
                          .
                          .
                          .
CIRCUIT CITY STORES,      .      701 East Broad Street
INC.,                     .      Richmond, VA 23219
                          .
                          .
          Debtor.         .      April 28, 2009
. . . . . . . . . . . ..          10:06 a.m.


                     TRANSCRIPT OF HEARING
             BEFORE HONORABLE KEVIN R. HUENNEKENS
             UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:          McGuire Woods LLP
                         By:  DOUGLAS FOLEY, ESQ.
                              DANIEL BLANKS, ESQ.
                         9000 World Trade Center
                         101 W. Main Street
                         Norfolk, VA 23510

                         Skadden Arps Slate Meagher & Flom, LLP
                         By:  IAN FREDERICKS, ESQ.
                         One Rodney Square
                         Wilmington, DE 19899
```

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES: (cont'd)

For the Trustee:          Office of United States Trustee
                          By:  ROBERT B. VAN ARSDALE, ESQ.
                          701 East Broad Street
                          Richmond, VA 23219

For Export Development    Hutson & Powell
Canada:                   By:  RICHARD M. HUTSON, II, ESQ.
                          300 West Morgan Street
                          Durham, NC

1              COURTROOM DEPUTY:  All rise.  The United States

2   Bankruptcy Court for the Eastern District of Virginia is now in

3   session.  The Honorable Kevin R. Huennekens presiding.  Please

4   be seated and come to order.

5              COURT CLERK:  In the matter of Circuit City Stores,

6   Incorporated, hearings on Items 1 through 30 as set out on

7   debtors' agenda.

8              MR. FOLEY:  Good morning, Your Honor, Doug Foley from

9   McGuire Woods on behalf of the debtors.

10             THE COURT:  Good morning, Mr. Foley.

11             MR. FOLEY:  With me at counsel table is Dan Blanks

12  with McGuire Woods and Ian Fredericks from Skadden Arps.  Also

13  today in the courtroom is Michelle Mosier, Chief Financial

14  Officer of the debtors.  Your Honor, we have 30 items on the

15  agenda today.  We should be relatively brief we believe.  We've

16  been able to resolve some things or agreed to adjournments with

17  most of the parties to try to continue to work through

18  potential resolutions.

19             Your Honor, the first three items, Item Number 1 is a

20  motion by AT&T to reject certain equipment leases and to compel

21  payment of some rental payments.  We've been working with

22  counsel from AT&T and we've agreed to an order that partially

23  resolves this motion.  It resolves the motion in a way that

24  sets the rejection date as of March 31st.  We've paid through

25  that date equipment rental.  What they wanted to reserve and

1  have this motion carried over -- the balance of this motion

2  carried over to the May 28th docket is their request -- their

3  right that they wanted to reserve to assert that we owe rental

4  payments for the month of April and our right to dispute that.

5  So we're going to try to work through that over the next month.

6  If we can't resolve it then we'll have a hearing on May 28th as

7  to that piece of the motion.

8          THE COURT:  All right, very good.  So I'll look for

9  that order.

10          MR. FOLEY:  Your Honor, Items Number 2 and 3, the TKG

11  Coffee 365(d)(3) motion and the Action Link Administrative

12  Expense Claim motion we have reconciled the amounts of those

13  two claimants and they've authorized us to report to the Court

14  that they are withdrawing those motions from the Court's

15  docket.

16          THE COURT:  All right, very good.

17          MR. FOLEY:  Your Honor, Item Number 4 is the pretrial

18  conference on the Mondragon WARN Act lawsuit.  Your Honor, we

19  appreciate Your Honor entering the order we submitted yesterday

20  with respect to continuing the pretrial conference to the May

21  28th docket and setting up a briefing schedule with respect to

22  our motion to dismiss which will be due on May 1st.  Their

23  reply -- response will be on May 15th and our reply, if we

24  choose to file one, will be on May 22nd.  And we'll have that

25  matter heard again on the May 28th docket.

5

1              THE COURT:  All right.

2              MR. FOLEY:  Your Honor, Item Number 5 is again on a

3    claims trading and sell down procedures motion which we've been

4    carrying on the docket for a long time now.  The company and

5    the committee are still evaluating whether the value of the NOL

6    can be used with respect to a plan of liquidation.  So we've

7    agreed with the committee to continue this again to the May

8    13th hearing date.

9              THE COURT:  All right.

10             MR. FOLEY:  Item Numbers 6 and 7, Your Honor, these

11   are Motorola and General Instruments 503(b)(9) motions for

12   payment of their alleged 503(b)(9) claims.  Those two parties

13   have requested that their motions be adjourned to the May 28th

14   hearing date and we have agreed to that request.  Item Number

15   8, Your Honor, this is our motion to settle certain issues with

16   IBM under Rule 9019.  The resolution of this -- the

17   presentation of this motion won't be ripe until we finish the

18   IP Sale procedures process which is still ongoing.  The bids

19   are due on April 6th and the auction to the extent we get

20   competing bids will be on May 11th.  So we've asked -- IBM has

21   asked that we continue this matter until the May 13th hearing

22   date.

23             THE COURT:  All right.

24             MR. FOLEY:  Your Honor, Item Number 9 which is the

25   Federal Warranty and Assurant matter, we have a couple counter

6

1  proposals out to them on a global settlement.  It involves

2  whether or not we're going to have an earn out of the proceeds

3  of some warranty sales versus a lump sum payment.  And so we're

4  still negotiating with that party and they've requested, and

5  we've agreed to continue their motion over to the May 13th

6  hearing date.

7           THE COURT:  All right.

8           MR. FOLEY:  Your Honor, Item Number 10 is a motion by

9  Congressional North Associates which is a landlord under

10 365(d)(3).  Most of the landlords have agreed, as you will see

11 further down on the docket, to have these matters carried over

12 to the May 28th hearing date.  We're still trying to reconcile

13 various issues related to CAM and taxes.

14          Your Honor, Item Number 11 which is the remaining

15 cure disputes under our lease disposition procedures order, all

16 of the matters there Items Number -- sub-Item A, B, C, D, E,

17 and F, all of those parties have agreed to adjourn their

18 objections to the May 28th hearing date so we can continue to

19 reconcile the CAM issues and taxes.  There will be some issues

20 related to attorney's fees with respect to each of the

21 landlords under the leases that we're trying to resolve as

22 well.

23          Your Honor, actually Item Number B on Page 10, the

24 limited objection of the TSA Stores, that one actually has been

25 resolved.  So that can be removed from the court's docket.

1           THE COURT:  All right.

2           MR. FOLEY:  Your Honor, Items Number 12 and 13 are

3    similar, DIRECTV as motion for relief on the automatic stay to

4    set off or recoup various amounts as well as Sony's request for

5    payment of administrative claims.  We have with both of these

6    vendors participated and allowed some reclamation to occur with

7    respect to their product.  And we believe that at the end of

8    the day when we reconcile these two motions or these two

9    vendors' claims that there'll actually be money coming back to

10   the estate, some significant amounts.  DIRECTV, maybe as much

11   as a half million dollars, and Sony may be as much as a million

12   dollars.  So we're still working through that.  They have both

13   requested, and we have agreed, to continue their motions to the

14   May 13th hearing day.

15          THE COURT:  All right.

16          MR. FOLEY:  Your Honor, Item Numbers 14 and 15 are

17   motions for request to permit the late filing of proof of

18   claim.  Number 14 is the Chalifoux matter which is a general

19   unsecured claim.  Number 15 is the Sennheiser Electric Corp.

20   matter which is an alleged 503(b)(9) claim.  Counsel for

21   Chalifoux is here and they have agreed to adjourn their motion

22   for the reasons that we have stated in our papers with respect

23   to the need for discovery and not having to -- not wanting to

24   incur those costs unless, until we have to, to the June 23rd

25   hearing date.  And that's Number 14.  And with respect to

8

1  Number 15 the Sennheiser Electric Corp. matter they have agreed

2  to adjourn their matter until the May 13th hearing date for

3  now.  We will probably seek a further adjournment of that.

4          THE COURT:  All right.

5          MR. FOLEY:  Number 16, Your Honor, is the SouthPeak

6  Interactive, LLC alleged 503(b)(9) claim.  This involves

7  approximately $184,000.  They have agreed also to adjourn their

8  matter -- their motion until the May 13th hearing date.

9          THE COURT:  All right.  Very good.

10          MR. FOLEY:  Your Honor, Item Number 17 this involves

11  Google and Postini's motion to reject and motion for payment.

12  We have resolved the issue with Postini with respect to the

13  motion to reject which will be heard at Item Number 28 on the

14  docket.  But we have also reconciled the amounts owed to Google

15  and payments are being processed to them.  It's almost a couple

16  million dollars.  The Postini amounts are still being

17  reconciled although that's a much smaller number.  But they

18  have agreed to adjourn -- Mr. Campson has agreed that this

19  matter can be adjourned until the May 13th hearing date.

20          THE COURT:  All right.

21          MR. FOLEY:  Your Honor, Items Number 18 and 19 are

22  two more landlord motions.  This is the RLV Village Plaza

23  motion and the Geenen DeKock properties motion.  These are

24  under 365(d)(3) request for payments of administrative claims

25  similar to the other landlord matters, Your Honor.  They have

1 agreed to adjourn their motions until the May 28th hearing

2 date.

3        THE COURT:  All right.

4        MR. FOLEY:  Similarly, Your Honor, Item Number 20

5 involves the Lea Company which is again a landlord alleging an

6 administrative claim under 365(d)(3) and 503(b).  They've

7 similarly have requested, and we've agreed to adjourn their

8 motion until the May 28th hearing date.

9        THE COURT:  All right.

10        MR. FOLEY:  Your Honor, Item Number 21 Crossways

11 Financial Associates request for administrative claim under

12 365(d)(3) again similarly to the previous landlord motion

13 they've all agreed to adjourn their motion until the May 28th

14 hearing date.

15        THE COURT:  All right.

16        MR. FOLEY:  Your Honor, Item Number 22 is the motion

17 by Vertis to allow the late filing of proof of claim.  This is

18 a general unsecured claim and they have agreed to adjourn their

19 request until the May 13th hearing date.

20        THE COURT:  All right.

21        MR. FOLEY:  Your Honor, Item Number 23 --

22                    (Pause)

23        MR. FOLEY:  Your Honor, Item Number 23, I believe, is

24 Polaris' amended motion under 365(d)(3) which involves a

25 request for payment of stub rent taxes on certain CAM and

1 | attorney's fees charges.  Mr. Fredericks advises me that

2 | although they've agreed to adjourn this matter until the May

3 | 13th hearing date they will probably wish to proceed on that

4 | date.  So just wanted to advise the Court that that one

5 | probably will go forward.

6 |         THE COURT:  All right.

7 |         MR. FOLEY:  Your Honor, that takes care of matters

8 | that are being continued, Your Honor.  Items Number 24 through

9 | 30 are the matters that we've asked the Court to address today.

10 | Item Number 24, Your Honor, is our motion to settle certain

11 | business interruption claims as a result of Hurricane Gustav

12 | with certain of our insurance carriers.  The settlement amount

13 | is very close to what we originally demanded.  We originally

14 | demanded $166,000, they've agreed to $136,000.  Unfortunately

15 | there's $100,000 deductible so the net to the estate is only

16 | 36,000.  But the settlement is fair and reasonable and

17 | satisfies the standard under Rule 9019.  We've received no

18 | objections or responses to the motion and would ask the Court

19 | to approve that settlement.

20 |         THE COURT:  Does any party wish to be heard in

21 | connection with the settlement of the insurance claim?  All

22 | right, that'll be approved, Mr. Foley.  Submit an order,

23 | please.

24 |         MR. FOLEY:  Thank you, Your Honor.  Item Number 25,

25 | Your Honor, we filed our response with respect to that motion

1  for relief from stay from the alleged class claimants, the Ada

2  Alicea matter.   As a result of our filing of our response

3  counsel for the movant has agreed to an order denying the

4  motion for relief from stay which we have BOPSed in this

5  morning.   So as soon as Your Honor, gets to that order this can

6  be removed from the docket.

7           THE COURT:   All right.   Thank you.

8           MR. FOLEY:   Your Honor, Item Number 26 is a

9  procedural request by us to seal certain information in the

10  Streambank retention application that relates to certain

11  compensation methodology that they would receive in assisting

12  with the sale of the IP assets.   I've spoken to the Office of

13  the United States Trustee with respect to that and as Your

14  Honor is aware from reviewing the pleadings only certain

15  amounts are redacted.   The purpose of our request to seal that

16  information is to make sure that the bidding is not influenced

17  one way or the other by how the expert who is assisting with

18  the sale process may value the transaction.   And so my

19  understanding is that the Office of United States Trustee does

20  not have an objection to the seal motion.   We would ask that

21  that be granted, Your Honor.

22           THE COURT:   Does any party which to be heard in

23  connection with the seal motion?   All right, the motion will be

24  granted.

25           MR. FOLEY:   Your Honor, Mr. Fredericks will deal with

1  the actual retention application itself.

2         MR. FREDERICKS:  Good morning, Your Honor, Ian

3  Fredericks from Skadden Arps Slate Meagher & Flom.  We are here

4  today on matter Number 27 which is the debtor's application to

5  retain Streambank as its intellectual property dispossession

6  consultant.  As set forth in the application Streambank will

7  essentially be serving a dual role.  They will be marketing

8  together with Rothschild the intellectual property assets that

9  are the subject of the current motion where Systemax is the

10 stalking horse bidder.  They will be compensated to the extent

11 they bring new parties to the table who bid in excess of

12 Systemax's current bid.  There is a small group of people which

13 are set forth on an exhibit to the motion that are expressly

14 excluded from that role.  Those are parties that Rothschild had

15 been in discussions with during the sale process.

16        The second role is basically to help the company

17 identify and market it's remaining intellectual property assets

18 most notably the Fire Dog related trademarks and intellectual

19 property.  And Streambank will be compensated differently than

20 the way it's compensated for what they call, I believe, the

21 Group 1 Assets for these Group 2 Assets.  The debtors believe

22 that the retention of an intellectual property consultant is in

23 the best interest of the estates.  It'll maximize value and

24 that the fees and charges are reasonable in light of the

25 services that Streambank will provide.  Notably Streambank will

1  be compensated for most of Streambank's compensation.  It's any

2  nonbillable -- or any nonbillable hour work will be compensated

3  and paid under Section 328.  Any billable -- any hourly work

4  that Streambank does will be reimbursed or paid under Section

5  330.

6          There was one informal -- or agreement reached

7  between the committee and Streambank.  This related to a

8  discretionary success fee.  Originally I believe this fee was

9  payable after consultation with the committee.  Streambank has

10 agreed that this will only be paid after -- or with the

11 committee's consent.  And with that change which we will note

12 in the revised order the debtors would request that the Court

13 approve the application

14         THE COURT:  All right.  Does any party wish to be

15 heard in connection with the application to employ Streambank?

16 All right, there being no objection that motion will be

17 approved.

18         MR. FREDERICKS:  Thank you, Your Honor.  If it is

19 acceptable to the Court I'd like to jump ahead to the document

20 destruction motion which is the last item on the agenda, matter

21 Number 30.

22         THE COURT:  You may.

23         MR. FREDERICKS:  There was an informal response --

24 this motion basically asked the Court to set up procedures

25 whereby the debtors will abandon or destroy documents that they

1  no longer need, obviously business records, financial documents

2  they no longer need once that time comes.  Essentially what it

3  does is set up a procedure whereby we file a notice and parties

4  have five business days to object.  And if there's no objection

5  then the debtors are free to proceed with abandoning or

6  destroying the records.  At the outset shortly after the

7  hearing we will be filing a notice to abandon and destroy a

8  large number of records that are very out of date most of

9  which, if not all of which, have been stored on backup tapes or

10  electronically that are currently -- where the debtors are

11  currently incurring significant amounts of storage costs and

12  these records are no longer necessary.  So that will kind of be

13  the first wave of documents that will leave.  But that will

14  obviously be subject to the procedures.

15       We did receive an informal response from Old

16  Republic.  Old Republic is, I believe, the debtor's largest

17  insurer.  And Old Republic was concerned that five business

18  days was not adequate notice.  We were able to talk with them.

19  We agreed to add them as a notice party and advise them that to

20  the extent they needed additional time they could certainly

21  file an objection or reach out to us to discuss those issues,

22  but we didn't think it made sense to extend the deadline

23  globally in the event that there may never be an issue.  Old

24  Republic agreed with that so we're adding them as a notice

25  party, specifically their counsel.

1    In addition, as I went back and looked at the order I

2   realized that given the procedures that are in place it's easy

3   enough to add the (indiscernible) 2002 to the list given that

4   everything's served by email or fax.  So we are going to add

5   them as notice parties as well.  And with those changes to the

6   order I believe that resolves the informal objection, and I

7   don't believe there are any other objections.  We'd ask that

8   the Court approve the procedures.

9    THE COURT:  So if you issued a notice Old Republic's

10  going to be on the list now of recipients to receive that, and

11  they raise some objection then it would just delay the process

12  and we'd have an opportunity to have a hearing on that to

13  decide whether or not those records should be destroyed.

14   MR. FREDERICKS:  Yes.  I mean the way that the

15  procedure's set out that's absolutely the way that it would

16  work.  We would initially obviously try to work with Old

17  Republic.  To the extent they just needed a few more days or

18  some additional information on the categories of documents that

19  were to be destroyed, you know, we would work to try to resolve

20  that.  To the extent we couldn't reach a resolution I believe

21  the procedures provide for a -- that we can come in on an

22  expedited basis including to be heard telephonically.

23   THE COURT:  But the default is that if somebody

24  raises an objection within the five days they don't have to

25  come in and get a hearing from the Court.  The default is

1    nothing's destroyed until we can resolve it.

2              MR. FREDERICKS:  That's absolutely correct, Your

3    Honor.

4              THE COURT:  Very good.  Does any party wish to be

5    heard in connection with the motion?  Mr. Van Arsdale.

6              MR. VAN ARSDALE:  Your Honor, I would only request

7    that the privacy ombudsman be added as one of the notice

8    parties in this case as we do have one.  That's Lucy Thomson.

9              THE COURT:  All right.  And I assume your office is

10   also include on the list.

11             MR. VAN ARSDALE:  It is.

12             THE COURT:  All right.  Thank you.

13             MR. FREDERICKS:  And that's acceptable to the debtors

14   as well.  Just to give the Court a little bit of an update on

15   that we have been working with the privacy ombudsman on the

16   intellectual property sale and she has raised concerns with

17   other document retentions which we've told her we would discuss

18   separately as those issues arose.  So we are in discussions

19   with her providing her with information that she's requested

20   for the IP sale and I think that process is moving along

21   nicely.

22             THE COURT:  All right, very good.  All right, well

23   let's add her to the list of notice parties.  And with that

24   change the Court will approve that order.

25             MR. FREDERICKS:  Thank you, Your Honor.  With that

1  I'll turn it back over to Mr. Foley.  Thank you.

2           THE COURT:  Thank you, Mr. Fredericks.

3           MR. FOLEY:  Your Honor, that leaves two items on the

4  agenda this morning.  The first one is Item Number 28 which is

5  our fifth omnibus objection to reject certain executory

6  contracts.  Your Honor, I referenced this earlier.  There are

7  three contracts listed in the motion.  One is with Avaya World

8  Services, one is Foresight Solutions Group, Inc., and one is

9  the Postini one which is a wholly-owned subsidiary of Google

10  which I mentioned earlier, Your Honor.  All of these are

11  essentially customer service agreements.  And the rejection

12  date with respect to these the company is no longer using the

13  services provided for under these contracts is April 28th.

14  Your Honor, we've not received any responses or objections to

15  the motion which we believe sets -- meets the standards of

16  Section 365 and the Court should authorize us to reject these

17  agreements.

18           THE COURT:  Does any party wish to be heard on the

19  debtor's fifth omnibus motion to reject these lease?  All

20  right, that will be granted.

21           MR. FOLEY:  Thank you, Your Honor.  Your Honor, that

22  leaves, I believe, the motion of Export Development of Canada's

23  motion.  Your Honor, we requested and offered an adjournment as

24  we did with the other parties that were seeking to -- the

25  allowance of or timeliness of a late filed claim.  We wanted

 1  the adjournment to be without prejudice to our rights or

 2  without prejudice to them asserting that we somehow should have

 3  done discovery during the interim because the whole point, Your

 4  Honor, is that we don't know yet whether or not we'll need to

 5  get into the factual nuances of excusable neglect argument

 6  which as Your Honor is aware is very fact intensive inquiry.

 7  But they did not agree to that.  So at this point we would ask

 8  the Court to deny the motion.  We think it's probably one of

 9  the least sympathetic cases of all of the ones that have been

10  filed so far.  But I believe counsel for EDS is here, at least

11  their local counsel.

12          THE COURT:  All right.  Thank you.

13          MR. HUTSON:  Good morning, Your Honor.

14          THE COURT:  Good morning.

15          MR. HUTSON:  Richard Hutson on behalf of Export

16  Development.

17          THE COURT:  I'm sorry, your name again, sir?

18          MR. HUTSON:  Richard Hutson on behalf of Export

19  Development, Your Honor.

20          THE COURT:  Thank you, Mr. Hutson.

21          MR. HUTSON:  Your Honor, we had filed a motion for

22  pro hac to allow for our national counsel to make it here from

23  California to proceed on this matter, however the debtors filed

24  a late amended opposition -- objection to our motion which our

25  counsel did not receive until Monday morning, yesterday

1  morning.

2          THE COURT:  They filed an objection to the pro hac

3  motion?

4          MR. HUTSON:  Oh, no, Your Honor.

5          THE COURT:  Okay.

6          MR. HUTSON:  To our motion to allow --

7          THE COURT:  To allow the claim.  Okay.  I've read the

8  papers.  I'm familiar with your motion and their response.

9          MR. HUTSON:  Right.  And so our national counsel did

10  not make it here today because they did not feel that they had

11  sufficient time to respond to the debtor's amended objection

12  which was filed so late.

13          THE COURT:  Why didn't they agree just to adjourn it

14  as Mr. Foley had suggested?

15          MR. HUTSON:  Well, Your Honor, we would like to

16  adjourn it but if you look at the debtor's response to our

17  motion they never disputed any of the facts, they never argued

18  in opposition.  Their response was pretty much that they needed

19  for the time to conduct discovery.  Our response to that is

20  well, if we're going to adjourn this matter anyway why not use

21  that time -- utilize that time to conduct the discovery that is

22  needed?  We looked at this situation as though we pretty much

23  put forward all the evidence and all the facts that is needed.

24  We don't see the need for the discovery.  However, --

25          THE COURT:  Let me ask.  What are you asking me for

1  this morning.  Are you asking to go forward on your motion or

2  are you asking that it be set down at another time and you're

3  asking for discovery, or what are you asking me to do?

4        MR. HUTSON:  I'm asking to adjourn this matter to set

5  it down for another time and that the debtors be allowed to use

6  that time to conduct the discovery that is needed so that our

7  client is not spending further litigation expenses on this

8  matter further on into the future.  The debtors first ask for

9  this matter to be pushed off until they confirmed the

10 liquidation plan.  They also then asked that in the alternative

11 that this matter be continued out so they can conduct

12 discovery.  We're pretty much granting them their second

13 request which is push it out so that they can conduct

14 discovery.

15       THE COURT:  Why shouldn't this matter be addressed in

16 connection with plan confirmation process?  I mean, that's when

17 if you have an administrative expense which is I understand

18 what you want to say.

19       MR. HUTSON:  Yes, Your Honor.

20       THE COURT:  If you have an administrative expense it

21 was late filed and we have to litigate the issue of excusable

22 neglect.  I mean, that claim's not going to be paid until the

23 effective date of the plan at the earliest anyway, why do we

24 need to take the resources, the limited resources this debtor

25 has now and spread them even more broadly by resolving these

21

1   issues?

2          MR. HUTSON:  Well, Your Honor, we're sensitive to

3   that, however we believe that it is Export's right to have this

4   Court make such a determination.  It's within this Court's

5   discretion to do so.  And so that Export is not expending

6   further litigation expenses they need to know now, we believe,

7   whether or not their claim will be allowed or not.

8          THE COURT:  Why?

9          MR. HUTSON:  Because in terms of the amount of the

10  litigation expenses they've put on this anyway we believe first

11  that the debtor helped contribute to this type -- to the late

12  filing of this so we need to make -- we need this Court to make

13  that type of determination as to whether or not they can

14  actually bring the claim so that they're not focusing on this

15  anymore and they can write it off if need be.

16         THE COURT:  Any other reasons?

17         MR. HUTSON:  Your Honor, we believe that we've stated

18  all those in our brief.  And we just ask that the debtor not be

19  allowed to -- I don't want to say waste our time, but I mean,

20  not, you know, force our client to expend further litigation

21  expenses on this.

22         THE COURT:  Now when do you want -- what are you

23  asking me to adjourn this to?

24         MR. HUTSON:  At the very earliest the May 28th

25  hearing date.

22

1          THE COURT:  All right.  Thank you.  Let me hear again

2     from Mr. Foley.

3          MR. FOLEY:  Your Honor, is correct, we don't want to

4     waste anyone's time or resources which is why we think this

5     matter need not be litigated at the present time just like the

6     other movants who have requested permission to have their

7     claims be deemed timely filed.  They're so, you know, each one

8     is factually different and unique and it requires evidentiary

9     proof.  They obviously don't have that evidentiary proof today.

10    To the extent that they are simply relying on the facts alleged

11    in the motion we think that's insufficient in and of its face.

12    We think the only thing the Court could do today if it were to

13    rule on the motion would be to deny it.

14         But the point is there shouldn't be -- in order for

15    us to vet whether or not they can meet the excusable neglect

16    standard we would need to do discovery, and there's no point in

17    doing it at this point when we don't know what the

18    ramifications are going to be with respect to the unsecured

19    creditor body or with respect to the administrative claimants

20    as Your Honor points out.  The earliest the claim could be paid

21    even if it's deemed timely filed, you know, we haven't even

22    addressed the substance of the claim.  If Your Honor recalls

23    from reading the papers this is a credit insurer who paid off

24    Tech Craft.  This is a $550,000 alleged 503(b)(9) claim.  And

25    so there isn't -- there may be some issues with Tech Craft and

23

1 doing discovery with them and who got what notice when.

2 There's just no point in incurring this litigation cost at this

3 point.  So we are okay with adjourning to May 28th or June

4 23rd, but we're simply going to ask the Court again at that

5 time to adjourn it further.  We're not going to engage in any

6 discovery prior to that time because they're not being

7 prejudiced.  They're not prejudiced at all.  They're not being

8 asked to expend any resources.  Their motion's on file, it can

9 sit until it needs to be addressed and they won't be prejudiced

10 as part of the plan process because we will have to address it

11 at that time.

12        THE COURT:  All right, thank you.  Does any other

13 party wish to be heard in connection with this matter?  Mr.

14 Hutson, you wish to respond?

15        MR. HUTSON:  Yes, Your Honor.  Your Honor, I think

16 we're -- I understand the debtor's need to proceed with further

17 discovery, however, you know, I think our main response is that

18 we pretty much have put forward all of the evidence that's

19 needed in this case.  I understand, you know, --

20        THE COURT:  Well, you're not going to ask me to

21 decide it today, because --

22        MR. HUTSON:  No, no.

23        THE COURT:  -- because if you do I think Mr. Foley's

24 correct, I don't have, you know, the evidence that I could

25 allow to your claim at this point.

1          MR. HUTSON:  No.  I certainly understand that, Your

2    Honor.

3          THE COURT:  Okay.

4          MR. HUTSON:  My point is that we've put forth all the

5    evidence that the debtors need to consider.  They, you know,

6    this is not a very fact intensive -- as very fact intensive as

7    Mr. Foley makes this out to be, because the evidence is very

8    simple.  The facts are very simple.  We set them forward in our

9    brief.  The debtors only need consider whether or not this --

10   it should be allowed or shouldn't.

11         THE COURT:  Well, excusable neglect is a very fact

12   intensive matter, and certainly I don't have the facts that I

13   would need to have in order to make such a finding at this

14   point.

15         MR. HUTSON:  That's correct.

16         THE COURT:  And if you're going to go forward on that

17   they debtor is going to need to do some discovery on that to

18   find out why this neglect, which obviously we have, is

19   excusable, and apply the proper standard on that which

20   obviously the parties have agreed is the Supreme Court case.

21   But that being said I am going to go ahead and adjourn this

22   matter to the 28th of May.  I'm not going to allow any

23   discovery to go forward between now and then on the matter.  I

24   would like you to consult with the debtor about, you know, how

25   this matter should be resolved.  But the Court feels very

1 strongly it should be part of the claims overall resolution

2 process be dealt with as part of the plan confirmation process

3 so that this can be done in an orderly fashion and not a

4 piecemeal fashion.  If you need to come back on the 28th and

5 represent to me why that should be the case I'll certainly hear

6 you on the 28th.  But I'm just telling you what the Court's

7 inclination is.

8           MR. HUTSON:  Thank you, Your Honor.

9           THE COURT:  So this will be continued until the 28th

10 of May.  Mr. Foley, do we have anything further we need to take

11 up today?

12           MR. FOLEY:  Your Honor, if I could have one minute to

13 talk to --

14           THE COURT:  Yes.

15                     (Pause)

16           MR. FOLEY:  Your Honor, there's no more items on the

17 agenda, but there is one item with respect to some briefing

18 that you may be expecting with respect to the Tom Tom matter

19 that Mr. Fredericks can address.

20           THE COURT:  All right.  Thank you.

21           MR. FREDERICKS:  Good morning again, Ian Fredericks

22 for the record, Your Honor.  As you may recall I believe at the

23 last hearing stipulation was entered into with TomTom whereby

24 the parties set up a briefing schedule in addition to some

25 other resolutions they had reached.  We believe we've reached a

1 global resolution in principle with TomTom.  The debtors are

2 still considering it and we want to share it with the committee

3 before we go forward.  But in the interim we've agreed with

4 counsel of Tom Tom to postpone the briefing schedule.  So Your

5 Honor shouldn't expect to receive any briefs on that.  I

6 believe our opening brief was due last Friday.

7        THE COURT:  So I won't have to resolve that issue.

8 That's good.

9        MR. FREDERICKS:  Not yet.

10       THE COURT:  Not yet.  Still more to come.

11       MR. FREDERICKS:  I believe so.

12       THE COURT:  All right, very good.  While I

13 congratulate you, however I encourage you to get that one

14 resolved at least and we'll postpone that as long as possible

15 as well.

16       MR. FREDERICKS:  All right, thank you, Your Honor.

17       THE COURT:  All right, thank you.

18       COURT DEPUTY:  All rise.  The Court is now adjourned.

19                    * * * * *

20

21

22

23

24

25

27

1          **C E R T I F I C A T I O N**

2                    I, KIMBERLY UPSHUR, court approved transcriber,

3     certify that the foregoing is a correct transcript from the

4     official electronic sound recording of the proceedings in the

5     above-entitled matter, and to the best of my ability.

6

7     /s/ Kimberly Upshur                    DATE:  May 13, 2009

8     KIMBERLY UPSHUR

9     J&J COURT TRANSCRIBERS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25