Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (04) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

        IN THE UNITED STATES BANKRUPTCY COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                 RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER (I) APPROVING SALE OF INTELLECTUAL PROPERTY,
INTERNET-RELATED PROPERTY AND CUSTOMER INFORMATION FREE
AND CLEAR OF ALL INTERESTS; AND (II) GRANTING RELATED
RELIEF**

        Upon the motion (the "Motion")[1] of Circuit City

Stores West Coast, Inc., and Circuit City Stores, Inc.

(the "Sellers" and, collectively with the debtors and

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

debtors in possession in the above-captioned jointly ad-

ministered cases, the "Debtors"), for entry of orders

under Bankruptcy Code sections 105, 332 and 363 and

Bankruptcy Rules 2002 and 6004, (I)(A) approving proce-

dures in connection with soliciting bids for a sale (the

"Sale") of certain of the Sellers' intellectual prop-

erty, internet-related property and customer information

(collectively the "Intellectual Property and Internet

Assets"), (B) authorizing the Sellers to enter into a

stalking horse agreement in connection therewith,

(C) approving certain Bid Protections in connection

therewith, (D) approving the form and manner of sale no-

tice and (E) scheduling Auction and Sale Hearing dates

(each as defined below); (II) authorizing the U.S. Trus-

tee to appoint a consumer privacy ombudsman (the "CPO");

(III) approving the Sale of the Intellectual Property

and Internet Assets free and clear of all Interests and

(IV) granting related relief; and the Court having con-

ducted a hearing on the Motion on May 13, 2009 (the

"Sale Hearing"); and all parties in interest having been

heard, or having had the opportunity to be heard, re-

garding the agreement, as amended, attached hereto as

2

Exhibit 1 (the "Agreement"), by and among the Sellers

and Systemax Inc. (the "Purchaser") and the transactions

contemplated thereby (including the transactions contem-

plated by the Side Letter (defined below), the "Transac-

tions"); and the Court having reviewed the letter agree-

ment, dated May 12, 2009, between Circuit City Stores

West Coast, Inc., Ventoux International, Inc., InterTan,

Inc., InterTan Canada Ltd., Bell Canada, and 4458729

Canada Inc. (the "Side Letter"), which is incidental to

and intended to facilitate consummation of the Agree-

ment; and the Court having reviewed and considered the

Motion, the Side Letter and the arguments of counsel

made, and the evidence adduced, at the Sale Hearing; and

upon the record of the Sale Hearing and these chapter 11

cases, and after due deliberation thereon, and good

cause appearing therefore it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.   The Court has jurisdiction to hear and

determine the Motion and to grant the relief requested

---

[2]  Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  See Fed. R. Bankr. P. 7052.

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.   Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.   The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 332 and 363 and Bankruptcy Rules 2002 and 6004.

D.   Notice of the Motion and entry of the Sale Order has been provided to (A)(i) all entities known to have expressed an interest in a transaction with respect to the Intellectual Property and Internet Assets during the past three (3) months, (ii) all entities known to have asserted any Lien upon the Intellectual Property and Internet Assets, (iii) all federal, state, and local regulatory or taxing authorities or recording offices, which have a reasonably known interest in the relief requested by the Motion and (iv) all parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and

4

9013-1 Establishing Certain Notice, Case Management, and
Administrative Procedures (D.I. 130; the "Case Manage-
ment Order") and (B) other parties through publication
of the Sale Notice, all in accordance with and as pro-
vided by the Bidding Procedures Order.

E.   Purchaser has agreed to provide addi-
tional notice of the Sale through the Opt Out Process
(as defined herein) to persons that are included in the
definition of Circuit City Data and Alpine Data (collec-
tively, the "Consumers").

F.   Based upon the affidavits of service and
publication filed with the Court and the Opt Out Process
provided for herein: (a) notice of the Motion and the
Sale Hearing was adequate and sufficient under the cir-
cumstances of these chapter 11 cases and these proceed-
ings and complied with the various applicable require-
ments of the Bankruptcy Code and the Bankruptcy Rules
and the Bidding Procedures Order; (b) a reasonable op-
portunity to object and be heard with respect to the Mo-
tion and the relief requested therein was afforded (or
will be afforded) to all interested persons and enti-
ties; and (c) additional notice will be afforded to the

Consumers to accommodate any rights such Consumers may have as parties in interest.  Under the circumstances, good and sufficient notice of the Side Letter has been given to all necessary parties.

G.   The Intellectual Property and Internet Assets are property of the Sellers' estates and title thereto is vested in the Sellers' estates.

H.   The Sellers and their professionals marketed the Intellectual Property and Internet Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Intellectual Property and Internet Assets.

I.   After an auction held on May 11, 2009 (the "Auction"), the Sellers determined that the highest and best Qualified Bid was that of Purchaser and the next highest and best Qualified Bid (the "Alternate Bid") was that of PC Mall, Inc. (the "Alternate Bid-

der").[2]  The Alternate Bidder has agreed to keep the Alternate Bid open until consummation of the Transactions contemplated by the Agreement with the Purchaser.

    J.    Subject to the entry of this Order, each Seller (i) has full power and authority to execute the Agreement and all other documents contemplated thereby including the Side Letter, and the sale of the Intellectual Property and Internet Assets by the Sellers has been duly and validly authorized by all necessary company action of each of the Sellers, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Agreement and Side Letter, (iii) has taken all company action necessary to authorize and approve the Agreement and the consummation by the Sellers of the Transactions.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Sellers to close the Sale and consummate the Transactions.

---

[2]   In the event the Sellers do not consummate the Transactions with the Purchaser contemplated by the Agreement, all references (other than references in this footnote) to the Purchaser shall be a reference to the Alternate Bidder and all references to the Agreement shall be a reference to the Alternate Bid.  No further court order shall be required for the Sellers to close the transactions contemplated by the Alternate Bid with the Alternate Bidder.

7

K.   The Agreement and the Transactions were negotiated and have been and are undertaken by the Sellers, the Purchaser and the parties to the Side Letter at arms' length without collusion or fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Sellers, the Purchaser and the parties to the Side Letter are entitled to the protections of Section 363(m) of the Bankruptcy Code.

L.   The total consideration provided by the Purchaser for the Intellectual Property and Internet Assets is the highest and best offer received by the Sellers, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer  Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia  ((a), (b)  and (c) collectively, "Value"), for the Intellectual Property and Internet Assets.

M.   The Purchaser would not have entered into the Agreement and would not consummate the Transactions, thus adversely affecting the Sellers, their estates and creditors, if the sale of the Intellectual Property and Internet Assets to the Purchaser was not free and clear of all Interests (as defined in the Agreement), if the Purchaser would, or in the future could, be liable for any of such Interests, or if the transactions contemplated by the Side Letter were not consummated.  A sale of the Intellectual Property and Internet Assets other than one free and clear of all Interests would adversely impact the Sellers' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale.  Therefore, consummation of the Transactions is in the best interests of the Sellers, their estates and creditors, and, subject to the Opt Out Process, all other parties in interest.

N.   Subject to the Opt Out Process, the Sellers may sell the Intellectual Property and Internet Assets and transfer the property that is the subject of the Side Letter free and clear of all Interests, because, with respect to each creditor asserting a Inter-

9

est, one or more of the standards set forth in Bank-
ruptcy Code § 363(f)(1)-(5) has been satisfied.  Those
holders of Interests who did not object or who withdrew
their objections to the Sale or the Motion are deemed to
have consented to the Motion and Sale pursuant to Bank-
ruptcy Code § 363(f)(2). Those holders of Interests who
did object fall within one or more of the other subsec-
tions of Bankruptcy Code Section 363(f).

O.   Neither the Sellers, Purchaser nor the
parties to the Side Letter engaged in any conduct that
would cause or permit the Agreement or the consummation
of the Transactions to be avoided, or costs or damages
to be imposed, under Section 363(n) of the Bankruptcy
Code.

P.   The Purchaser is not holding itself out
to the public as a continuation of the Sellers and is
not an "insider" or "affiliate" of any of the Debtors.

Q.   Entry into the Agreement and Side Letter
and consummation of the Transactions constitute the ex-
ercise by the Sellers of sound business judgment and
such acts are in the best interests of the Sellers,
their estates and creditors, and all other parties in

interest.  The Court finds that the Sellers have articu-
lated good and sufficient business reasons justifying
the Sale of the Intellectual Property and Internet As-
sets to Purchaser.  Such business reasons include, but
are not limited to, the following: (i) the Agreement
constitutes the highest and best offer for the Intellec-
tual Property and Internet Assets; (ii) the Agreement
and the closing thereon will present the best opportu-
nity to realize the value of the Intellectual Property
and Internet Assets and avoid decline and devaluation of
the Intellectual Property and Internet Assets; (iii)
there is substantial risk of deterioration of the value
of the Intellectual Property and Internet Assets if the
Sale is not consummated promptly; and (iv) the Agreement
and the closing thereon will provide a greater recovery
for the Sellers' creditors than would be provided by any
other presently available alternative.

R.    The Debtors have also articulated a good
business justification for entry into the Side Letter,
including that it will facilitate the closing of the
transactions contemplated by the Agreement and the
transactions contemplated by the Canada APA.

11

S.    The Purchaser is in materially the same line of business as the Debtors.

T.    Upon due consideration, and upon review of the interim report of the CPO filed on May 11, 2009 and the final report of the CPO filed on May 13, 2009 (collectively, the "CPO Report"), the facts, circumstances and conditions of the sale of the Circuit City Data, including any personally identifiable information ("PII") incorporated therein, warrant approval of the Sale under Bankruptcy Code section 363(b)(1)(B)(i).

U.    Based on all of the protections provided under this Order, and the absence of any objection with respect to the relief granted by this Order, there has been no showing that the transfer of the PII provided for herein violates any federal, state, international, and any other applicable nonbankruptcy laws, including (without limitation) laws prohibiting unfair or deceptive practices "UDAP," data breach, privacy, "do-not-call," and "no spam" laws.  Accordingly, the sale satisfies the requirements of bankruptcy code section 363(b)(1)(B)(ii).

V.    The Alpine Data, including any PII, is
not subject to a privacy policy, and there has been no
showing that the sale of such PII violates any federal,
state, international, and any other applicable nonbank-
ruptcy laws, including (without limitation) laws prohib-
iting unfair or deceptive practices "UDAP," data breach,
privacy, "do-not-call," and "no spam" laws.  Thus, re-
lief under section 363(b)(1) is warranted.

W.    Time is of the essence in consummating
the Sale.  In order to maximize the value of the Sell-
ers' assets, it is essential that the sale of the Intel-
lectual Property and Internet Assets occur within the
time constraints set forth in the Agreement.  Accord-
ingly, there is cause to lift the stay contemplated by
Bankruptcy Rule 6004 with respect to the Transactions.

X.    Informal objections to the Motion were
received by the Debtors from the Attorney Generals for
the States of the United States (the "Attorney Gener-
als").

Y.    The Sale contemplated by the Agreement
and the transactions contemplated by the Side Letter in
the best interests of the Debtors and their estates,

13

creditors, interest holders and all other parties in in-

terest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is

GRANTED.

2.    Based on modifications to this Order, the

Attorney Generals have determined not to file objections

to this Order or the Transactions.  All other objec-

tions, to the extent not resolved, are hereby OVERRULED.

3.    Pursuant to Bankruptcy Code sections 105

and 363, the Agreement and the Transactions are hereby

approved and authorized in all respects, unless other-

wise ordered herein.

4.    Pursuant to Bankruptcy Code sections

363(b) and 363(f), upon the consummation of Transac-

tions, (i) the Sellers' right, title, and interest in

the Intellectual Property and Internet Assets shall be

transferred to the Purchaser free and clear of all in-

terests, including (without limitation) all liens, mort-

gages, security interests, charges, easements, leases,

subleases, covenants, rights of way, options, claims,

restrictions or encumbrances of any kind, except the As-

14

sumed Liens (as defined in the Agreement), (the "Liens")
and all debts, adverse claims, liabilities, commitments,
responsibilities and obligations of any kind or nature
whatsoever, direct, indirect, absolute or contingent,
matured or unmatured, whether accrued, vested or other-
wise, whether known or unknown, foreseen or unforeseen,
and whether or not actually reflected, or required to be
reflected, in a party's balance sheets or other books
and records (the "Liabilities" and together with the
Liens, the "Interests"), and (ii) the Debtors' right,
title and interest in the property that is the subject
of the Side Letter shall be transferred to InterTan Can-
ada Ltd. free and clear of all Interests, with all such
Interests to attach to the cash proceeds of the Sale in
the order of their priority, with the same validity,
force, and effect that they had as against the Intellec-
tual Property and Internet Assets immediately before
such transfer, subject to any claims and defenses the
Sellers may possess with respect thereto.

    5.    Except as may be expressly provided in
the Agreement, Purchaser is not assuming nor shall it or
any affiliate of Purchaser be in any way liable or re-

15

sponsible, as a successor or otherwise, for any liabili-
ties, debts, or obligations of the Sellers in any way
whatsoever relating to or arising from the Sellers' own-
ership or use of the Intellectual Property and Internet
Assets prior to the consummation of the Transaction con-
templated by the Agreement, or any liabilities calcula-
ble by reference to the Sellers or the Intellectual
Property and Internet Assets, or relating to continuing
or other conditions existing on or prior to the Closing.

      6.   The Purchaser and its assigns are hereby
prohibited from (a) communicating with persons who were
customers of Circuit City (the "Warranty Customer") and
to whom a warranty contract was issued for any product
sold by Circuit City under any agreement between Circuit
City and any third party pursuant to which warranty con-
tracts were issued prior to March 31, 2009 (each a "War-
ranty Contract") with respect to or in connection with
any issue related to any such Warranty Contract, except
if the inquiry or contact is initiated by such Warranty
Customer in which case the Purchaser or its assign shall
direct the Warranty Customer to the present obligor or
administrator for such Warranty Contract, (b) soliciting

any Warranty Customer to cancel an existing Warranty Contract, or (c) soliciting any Warranty Customer to renew or replace any existing Warranty Contract; <u>provided</u>, <u>however</u>, that neither the Purchaser nor its assigns are prohibited from contacting any such Warranty Customer for any other purpose.

7.   The Transactions were undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Intellectual Property and Internet Assets as that term is used in Bankruptcy Code section 363(m).  The Purchaser is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

8.   Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Transactions including the Sale of the Intellectual Property and Internet Assets to Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; and (ii) perform, consummate, implement and close fully the Agreement and Transactions together with all

17

additional instruments and documents that may be rea-
sonably necessary or desirable to implement the Agree-
ment.

　　　　9.   At the Closing (as defined in the Agree-
ment), Seller shall deliver, or cause to be delivered,
to Epsilon Data Management, LLC ("Epsilon") on behalf of
Purchaser, the Circuit City Data and the Alpine Data.
At Purchaser's cost and expense, Epsilon shall conduct
an email notification program (the "Opt Out Process")
with respect to Consumers for whom there is a valid
email address.  The Opt Out Process shall include a no-
tice, prepared by the Purchaser and reviewed by the CPO:

　　　　a. notifying Consumers that there has been a
　　　　　　change in corporate ownership and manage-
　　　　　　ment of the website located at
　　　　　　[http://www.circuitcity.com](http://www.circuitcity.com) (the "Website");
　　　　　　and

　　　　b. providing Consumers the ability to opt out
　　　　　　of the transfer of their PII to Purchaser
　　　　　　and/or from receiving future email communi-
　　　　　　cations from Purchaser.

The Opt Out Process shall commence after the Purchaser

18

has relaunched the Website and continue for a period of
fourteen (14) days (the "Opt Out Period") after notice
of the Opt Out Process has been sent to Consumers.  Ex-
cept with respect to the Alpine Data and the Circuit
City Data, which will be transferred to Epsilon in ac-
cordance with this paragraph, all other Intellectual
Property and Internet Assets shall be transferred to
Purchaser at Closing.

     10.  At the conclusion of the Opt Out Period,
Epsilon shall (a) file an accounting with the Court
identifying the number of Consumers that elected not to
have their PII transferred to Purchaser; (b) delete all
records of those Consumers that elected not to have
their PII transferred to the Purchaser; (c) transfer the
Circuit City Data and the Alpine Data, absent informa-
tion of Consumers who elected not to have their PII
transferred to Purchaser, encrypted using S-FTP or
physically in a separate file; and (d) file a certifica-
tion with the Court confirming that it has conducted the
Opt Out Process in accordance with this Order.

     11.  With respect to the transfer of the Cir-
cuit City Data and the Alpine Data, the Purchaser shall:

19

a.  With respect to the Alpine Data, the Pur-
    chaser has agreed to comply with the Cir-
    cuit City Privacy Policy ("Circuit City
    Privacy Policy"), attached as Schedule G to
    the Agreement, to the extent set forth
    herein, without determining whether it is
    required under the Bankruptcy Code.

b.  adopt and comply with the Circuit City Pri-
    vacy Policy except that in the case of the
    Alpine Data, notice to Consumers shall be
    by notice on the Website for those persons
    for whom the Purchaser does not have a
    valid email address.

c.  use PII for the same purpose(s) as are
    specified in the Circuit City Privacy Pol-
    icy;

d.  prior to making any material change to the
    Circuit City Privacy Policy or the use or
    disclosure of PII different from that
    specified in the Circuit City Privacy Pol-
    icy, notify the persons whose PII is in-
    cluded in the Circuit City Data by mail or

20

email (if available), as appropriate and in the Purchaser's sole discretion as to which method of notification to be used, and the persons included in the Alpine Data by a notice on the Website or by email if a valid email address is available and afford such persons the opportunity to opt out of the changes to the Circuit City Privacy Policy or the new uses of their data;

e.   place a clear and conspicuous notice of the change in corporate ownership on the home page of the Website for a period of one year from the date of the relaunch by the Purchaser of the Website;

f.   Notify websites that maintain eCommerce ratings of the change in corporate owner-ship of the Website;

g.   employ appropriate information security controls and procedures (technical, opera-tional, and managerial) to protect the Cir-cuit City Data and the Alpine Data; and

      h.  abide by all applicable federal, state, and

         international laws, including laws prohib-

         iting unfair or deceptive practices "UDAP,"

         data breach, privacy, "do-not-call," and

         "no spam" laws.

    12.  This Order is and shall be binding upon

and govern the acts of all entities, including, all fil-

ing agents, filing officers, title agents, title compa-

nies, recorders of mortgages, recorders of deeds, regis-

trars of deeds, administrative agencies or units, gov-

ernmental departments or units, secretaries of state,

federal, state and local officials and all other persons

and entities who may be required by operation of law,

the duties of their office, or contract, to accept,

file, register or otherwise record or release any docu-

ments or instruments, or who may be required to report

or insure any title or state of title in or to the In-

tellectual Property and Internet Assets conveyed to Pur-

chaser.  All such entities described above in this para-

graph are authorized and specifically directed to strike

all recorded Interests against the Intellectual Property

and Internet Assets and the property that is the subject

of the Side Letter from their records, official and oth-

erwise.

13.   Each and every federal, state and govern-

mental agency or department, and any other person or en-

tity, is hereby directed to accept any and all documents

and instruments necessary and appropriate to consummate

the Transactions.

14.   This Order shall be effective immediately

upon entry, and any stay of orders provided for in Bank-

ruptcy Rule 6004(h) or any other provision of the Bank-

ruptcy Code or Bankruptcy Rules is expressly lifted.

15.   The Agreement and any related agreements,

documents or instruments may be modified or supplemented

by the parties thereto in accordance with the terms

thereof, without further order of this Court, to the ex-

tent such modification is not material.

16.   Except as provided in this Order, to the

extent this Order is inconsistent with any prior order

or pleading with respect to the Motion in these chapter

11 cases, the terms of this Order shall govern.  Except

as provided in this Order, to the extent there is any

inconsistency between the terms of this Order and the

terms of the Agreement (including all ancillary docu-

ments executed in connection therewith), the terms of

this Order shall govern.

17.  Notwithstanding anything to the contrary

set forth in this Order or the Agreement, (i) the intel-

lectual property set forth on the Schedule attached

hereto as Exhibit 2 constitutes an Excluded Asset and

is, therefore, not an Acquired Asset or Intellectual

Property and Internet Asset, (ii) the Canada License is

an Assumed Lien and, therefore, not a Lien, Interest or

Liability, (iii) the Amended and Restated Trademark and

Service Mark License Agreement between CCWC and InterTAN

Canada Ltd. dated May 11, 2009 (the "Existing Canadian

License") is an Assumed Lien and, therefore, not a Lien,

Interest or Liability, and (iv) InterTAN Canada Ltd. may

continue to use the trademarks and service marks li-

censed to it pursuant to the Existing Canadian License

(the "Canadian Licensed IP") in Canada in accordance

with the Existing Canadian License and shall not be re-

quired to destroy any material in Canada relating to the

Canadian Licensed IP.

18.   At Closing, the Purchaser shall deliver
an executed copy of the Canada License in accordance
with Section 2.03(d) of the Agreement, and shall deliver
an executed copy of the Canada License to 4458729 Canada
Inc. at the closing of the transactions contemplated in
the Canada APA (as defined in the Agreement) in accor-
dance with 5.09 of the Agreement.

19.   The Court retains jurisdiction, even af-
ter the closing of these chapter 11 cases, to:
(1) interpret, implement and enforce the terms and pro-
visions of this Order (including the injunctive relief
provided in this Order) and the terms of the Agreement,
all amendments thereto and any waivers and consents
thereunder; (2) protect the Purchaser, or the Intellec-
tual Property and Internet Assets, from and against any
of the Interests; (3) compel delivery of all Intellec-
tual Property and Internet Assets to Purchaser; and
(4) resolve any disputes arising under or related to the
Agreement, the Sale or the Transactions or Purchaser's
peaceful use and enjoyment of the Intellectual Property
and Internet Assets.

Dated:    Richmond, Virginia
          May 14, 2009

                         /s/ Kevin R. Huennekens
                         UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

    Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

                            /s/ Douglas M. Foley
                            Douglas M. Foley

### EXHIBIT 1

**(Agreement)**

## EXHIBIT 2

**(IP Constituting Excluded Assets)**