Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :    Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :    Case No. 08-35653 (KRH)
et al.,                      :
                             :
                             :    Jointly Administered
          Debtors.           x
- - - - - - - - - - - - - -

**MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 362 AND 363 (I) AUTHORIZING CIRCUIT CITY STORES, INC. AND CIRCUIT CITY STORES WEST COAST, INC. TO ENTER INTO AGREEMENT MODIFYING PRE-PETITION CONTRACT WITH REGENCY CENTERS, L.P., AND (II) LIFTING AUTOMATIC STAY IN CONNECTION THEREWITH**

Circuit City Stores, Inc. and Circuit City

West Coast, Inc. (collectively "Circuit City" or the

"Movants") and their affiliated debtors and debtors in

possession in the above-captioned jointly administered

cases (the "Debtors")[1] hereby move (the "Motion"), pursu-

ant to sections 362 and 363 of title 11 of the United

States Code (the "Bankruptcy Code"), and Rule 6004 of

the Federal Rules of Bankruptcy Procedure (the "Bank-

ruptcy Rules"), for entry of an order (I) Authorizing

Circuit City Stores, Inc. and Circuit City Stores West

Coast, Inc. to enter into the Second Amendment to Lease

Termination Agreement with Regency Centers, L.P., and,

to the extent necessary, (II) Lifting the Automatic Stay

in connection therewith.  In support of the Motion, the

Debtors respectfully represent as follows:

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Dis-
      tribution Company of Virginia, Inc. (2821), Circuit City Proper-
      ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertis-
      ing Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Ven-
      ture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland
      MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC
      (3360), and Circuit City Stores PR, LLC (5512).  The address for
      Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
      Westminster, Colorado 80031.  For all other Debtors, the address
      was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is
      4951 Lake Brook Drive, Glen Allen, VA 23060.

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are Bankruptcy Code sections 362 and 363 and Bankruptcy Rule 6004.

**BACKGROUND**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    On January 12, 2009, the Court entered an order authorizing the Debtors to conduct auctions for a sale or sales of the Debtors' businesses as a going con-cern or for liquidation (D.I. 1460).

5.    At the conclusion of the auction, the Debtors determined that the highest and otherwise best bid was that of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC, and Tiger Capital Group, LLC (collectively, the "Agent").  On

3

January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores (D.I. 1634). The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.

### RELIEF REQUESTED

6.  By this Motion, the Movants seek entry of an order, substantially in the form attached hereto as Exhibit A (the "Order") (I) authorizing, but not requiring, Circuit City to enter into the Second Amendment to Lease Termination Agreement with Regency Centers, L.P., and to comply with its obligations thereunder, and, to the extent necessary, (II) lifting the automatic stay in connection therewith. Entry into the Second Amendment to Lease Termination Agreement will result in the payment of approximately $2.8 Million to the Debtors' estates.

7.  The Movants also request that the Court waive the ten-day stay of Bankruptcy Rule 6004 with respect to execution of the Second Amendment and lifting the automatic stay to effect the setoffs contemplated therein.

4

**BASIS FOR RELIEF**

8.   Throughout the course of their relation-
ship, Circuit City Stores, Inc., Circuit City Stores
West Coast, Inc., and Regency Centers, L.P. ("Regency")
have been parties to a series of leases and lease termi-
nation agreements.   The various leases and lease termi-
nation agreements are described more fully herein.

**A.   The Lease Agreements.**

9.   On August 15, 2005, Regency, as landlord,
and Circuit City Stores West Coast, Inc., as tenant, en-
tered into a lease agreement (the "Santa Barbara Lease")
for the premises located at Paseo Del Sol Shopping Cen-
ter, 3759-3763 State Street, Santa Barbara, CA  93101
(the "Premises").[2]

10.   Moreover, the Debtors, as tenants, and
Regency, as landlord, are also parties to a lease agree-
ment for store no. 240, located at Powell Street Plaza,

---

[2]   The term "Santa Barbara Lease", as defined herein, includes the
lease on the Premises located at 3759-3763 State Street, Santa
Barbara, CA  93101, as well as an older lease (the "Original
Lease") at a different address (the "Existing Premises").   The
Original Lease was assumed in March 1985 by Circuit City Stores,
Inc. as tenant.   Regency is the landlord of that property as well.
Any reference to the "Santa Barbara Lease" shall also include the
Original Lease.

5795 Christie Avenue, Emeryville, CA (the "Powell Street Lease").  The landlord and tenant under the Powell Street Lease are the same as under the Santa Barbara Lease.

11.  In August 2008, Regency approached Circuit City about the possibility of negotiating an early termination of the Santa Barbara Lease.[3]  On August 28, 2008, Regency, Circuit City Stores, Inc., and Circuit City Stores West Coast, Inc., entered into a lease termination agreement (the "Lease Termination Agreement"), attached hereto as Exhibit B.  Some of the pertinent terms of the Lease Termination Agreement are as follows:

(a) Termination of Leases and Original Lease Termination Agreement.  Circuit City and Regency agree that the Santa Barbara Lease shall terminate on and effective as of February 29, 2009 (the "Termination Date").  See Lease Termination Agreement, ¶1(a).

(b) On the Termination Date, Circuit City shall deliver the Premises to Regency free of all of Circuit City's personal property and broom clean, but otherwise in the then "as is" condition.  Id., at ¶1(b).

(c) As of the Termination Date, (i) Regency releases Circuit City Stores West Coast, Inc., and Circuit City Stores West Coast, Inc. releases Regency, from any obligations and liabilities under the Santa

---

[3]  The parties negotiated an earlier lease termination agreement, (the "Original Lease Termination Agreement") which is rendered null and void by the Second Amendment.

Barbara Lease, including without limitation, any party's
obligation to pay any sums to the other except as de-
scribed in the Lease Termination Agreement, and (ii) Re-
gency releases Circuit City Stores, Inc., and Circuit
City Stores, Inc. releases Regency, from any obligations
and liabilities under the Santa Barbara Lease, including
without limitation, any party's obligation to pay any
sums to the other except as described in this Lease Ter-
mination Agreement.  Id., at ¶1(c).

(d) Lease Termination Fee.  Regency shall
pay Circuit City a fee in the aggregate amount of Six
Million and No/100 Dollars ($6,000,000.00) (the "Lease
Termination Fee").

12.  Under the terms of the Lease Termination

Agreement, Circuit City agreed to early termination of

the Santa Barbara Lease in exchange for an agreed upon

Lease Termination Fee to be paid by Regency.  The Lease

Termination Fee was payable in two installments, each in

the amount of $3,000,000.00.  Regency paid the first in-

stallment (the "First Installment") into an escrow ac-

count in cash and obtained a standby letter of credit in

the amount of the second installment (the "Second In-

stallment").

13.  The First Installment was to be paid

three (3) business days after the expiration of the con-

tingency period, which was defined as "the period of

time commencing with the Effective Date of this Agree-

7

ment [August 28, 2008] and ending 5:00 p.m. PST on the date which is thirty (30) days after the Effective Date . . . ."  Lease Termination Agreement, ¶2.

14.  As long as Circuit City was not in default of the Lease Termination Agreement, the Second Installment of the Lease Termination Fee was due to be paid within three (3) business days after the later of (1) the Termination Date [February 29, 2009] or (2) the date Circuit City Stores, Inc. vacates the Existing Premises in compliance with the terms of the Lease Termination Agreement.  Unless Regency notified Circuit City and Chicago Title Company in writing that Circuit City was in default of the Lease Termination Agreement, Chicago Title was authorized to issue the Second Installment to Circuit City on March 3, 2009.

15.  If before payment of the Second Installment of the Lease Termination Fee, Circuit City was in default of the Lease Termination Agreement, Regency would notify Chicago Title Company of the default, and Chicago Title Company would be authorized and directed to retain the Second Installment until joint instruc-

8

tions, executed by Regency and Circuit City, were delivered to Chicago Title Company.

**B.   The First Amendment to Lease Termination Agreement.**

16.   Regency and Circuit City were unable to complete execution of the Lease Termination Agreement by the expiration date of the contingency period, Monday, September 29, 2008.  Consequently, the parties entered into the First Amendment to Lease Termination Agreement, attached hereto as Exhibit C, in September 2008.

17.   The First Amendment to Lease Termination Agreement extended the contingency period by fifteen (15) days.  The new contingency period was scheduled to end on Tuesday, October 14, 2008 at 5:00 p.m. PST.  Regency paid the First Installment prior to the end of the contingency period.

18.   The First Amendment to Lease Termination Agreement did not modify any other provisions of the Lease Termination Agreement.

**C.   Events Occurring Before Payment of the Second Installment of the Lease Termination Fee.**

19.   As set forth above, the Termination Date under the Lease Termination Agreement was February 29,

2009.  Therefore, pursuant to the terms of the Lease

Termination Agreement, Circuit City retained liability

for taxes, utilities, insurance, common area maintenance

expenses, and/or other monetary obligations in accor-

dance with the terms of the Santa Barbara Lease after

the Petition Date.

20.  On or about February 24, 2009, Regency

informed Circuit City and Chicago Title Company that it

considered Circuit City to be in default of the Lease

Termination Agreement.  Specifically, Regency claimed

that Circuit City failed to pay Regency certain fees un-

der the Santa Barbara Lease arising after the Petition

Date, and that Circuit City failed to return the Exist-

ing Premises to Regency in the condition required under

the terms of the Lease Termination Agreement.  Regency

notified Chicago Title Company that it was not author-

ized to release the Second Installment of the Lease Ter-

mination Fee to Circuit City until such time as it re-

ceived joint instructions from Regency and Circuit City.

21.  After reviewing the Debtors' books and

records, the applicable leases, and the Lease Termina-

tion Agreement, the Debtors concede that various sums

are due and payable to Regency under the Santa Barbara
Lease and Lease Termination Agreement.  Specifically,
Circuit City agrees that it owes Regency fees under the
Santa Barbara Lease in the aggregate amount of
$107,153.95 (the "Santa Barbara Fees").

22.  Moreover, as set forth above, the Debtors,
as tenants, and Regency, as landlord, are also parties
to the Powell Street Lease.  The Debtors rejected the
Powell Street Lease pursuant to 11 U.S.C. § 365(a) of
the Bankruptcy Code on March 12, 2009.  The Debtors and
Regency agree that Regency is owed post-petition unpaid
fees under the Powell Street Lease in the amount of
$37,941.19 (the "Powell Street Fees").

23.  In order to terminate their remaining re-
lationship in an expeditious and efficient manner, Re-
gency and Circuit City have agreed to make provision for
the payment of the Santa Barbara Fees and the Powell
Street Fees in the total amount of $145,095.14, (collec-
tively the "Offset/Recoupment Amount") as part of the
Lease Termination Agreement.

24.  Specifically, Regency and Circuit City
have agreed to credit the Offset/Recoupment Amount of

$145,095.14 against the Second Installment of the Lease Termination Fee.  As a result, once the Off-set/Recoupment Amount is credited against the Second Installment of the Lease Termination Fee, Regency will pay Circuit City the sum of $2,854,904.86 pursuant to the terms of the Lease Termination Agreement, as modified by the Second Amendment described below.

**D.   The Second Amendment to Lease Termination Agreement.**

25.   To memorialize the parties' agreement, Circuit City and Regency negotiated a second amendment to the Lease Termination Agreement (the "Second Amend-ment"), in substantially the form attached hereto as Ex-hibit D.  The significant terms of the Second Amendment are as follows:[4]

(a) Offset/Recoupment.  Circuit City would agree to pay Regency the aggregate sum of $145,095.14, which sum would be offset against and/or recouped from the second installment of $3,000,000.00.  The offset and/or recoupment pay-ment is comprised of valid charges due and owing to Regency as of the Effective Date of the Second Amendment;

---

[4]   In the event of any discrepancy between the Second Amendment to Lease Termination Agreement and this summary of the Second Amend-ment to Lease Termination Agreement, the provisions of the Second Amendment to Lease Termination Agreement are controlling.

(b) <u>Return of Letter of Credit/Payment of
the Second Installment/Termination of Memorandum of
Lease</u>.  Simultaneously with the approval of the
Second Amendment, Circuit City and Regency would
cause Chicago Title Insurance Company to execute a
joinder to the Second Amendment, and Regency would
cause the Letter of Credit to be cancelled and ter-
minated.  Circuit City would execute any and all
documents in order to facilitate the cancellation
and termination of the Letter of Credit.  Simulta-
neously with the return to Regency and cancellation
of the Letter of Credit, Regency would wire to Cir-
cuit City an amount equal to $2,854,904.86 (the
Second Installment minus the Offset/Recoupment
Amount) in full and final satisfaction of all obli-
gations of Regency under the Second Amendment;

(c) <u>Mutual Release of Claims</u>.  Effective
as of the receipt by Circuit City of the Final Ter-
mination Payment (the "Termination Payment Date"),
Circuit City and Regency each release the other in
accordance with the terms agreed upon in Section
1(c) of the Lease Termination Agreement except that
as of the Termination Payment Date, Circuit City
and Regency would be released from their respective
obligations under the Santa Barbara Lease to reim-
burse the other party for overpayment or underpay-
ments, as the case may be, for taxes, utilities,
insurance, common area maintenance expenses and/or
other similar charges in accordance with the Santa
Barbara Lease.

(d) Effective as of the Termination Pay-
ment Date, Regency would waive and release Circuit
City from all post-petition claims arising under or
related to the Powell Street Lease;

26.  In light of the foregoing, Circuit City

has determined, in its business judgment, that the Sec-

ond Amendment is in the best interests of the Debtors
and their estates.

27.   Accordingly, Circuit City is requesting:
(1) the authority to execute the Second Amendment, and
(2) relief from the automatic stay, if necessary, so
that it may effect the setoffs contemplated by the Sec-
ond Amendment.

**APPLICABLE AUTHORITY**

**I.   ENTRY INTO THE SECOND AMENDMENT IS WARRANTED UNDER
BANKRUPTCY CODE SECTION 363(b)(1).**

28.   Under Bankruptcy Code section 363, a
bankruptcy court is empowered to authorize a chapter 11
debtor to expend funds in the bankruptcy court's discre-
tion outside the ordinary course of business.  See 11
U.S.C. § 363.  In order to obtain approval for the use
of estate assets outside the ordinary course of business,
the debtor must articulate a valid business justifica-
tion for the requested use.  See In re Ionosphere Clubs,
Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1985).

29.   Approval of the Second Amendment is ap-
propriate in order to facilitate an expedient and or-
derly liquidation of the Debtors' assets for the benefit

14

of the Debtors' estates and all of their stakeholders. The Second Amendment will enable the Debtors to realize a substantial pecuniary gain for the benefit of their creditors and other parties in interest.  Moreover, the Debtors concede that the Offset/Recoupment Amount is comprised of valid charges due and owing to Regency under the various leases and lease termination agreements. Because the Debtors must pay these charges during the course of their bankruptcy proceedings in any event, the Debtors have agreed to credit the Offset/Recoupment Amount against the Second Installment payment.  Consequently, neither the Debtors' bankruptcy estates nor their creditors and other parties in interest would be harmed as a result of the Second Amendment.  Thus, there is a more than sufficient business justification for entry into the Second Amendment, even if such agreements and the payments thereunder were deemed to be outside the ordinary course of business.  See id., at 175.

30.  Based on the foregoing, the Debtors submit that modifying the Lease Termination Agreement between Circuit City and Regency, as set forth in the Second Amendment, is beneficial to their estates and their

15

creditors and that the Court should authorize Circuit
City to enter into the Second Amendment.  Accordingly,
granting the relief requested herein is justified under
Bankruptcy Code section 363.

**II.  THE AUTOMATIC STAY SHOULD BE LIFTED UNDER SECTION 362(d)(1) TO PERMIT THE DEBTORS TO EFFECT THE SET-OFFS CONTEMPLATED BY THE SECOND AMENDMENT.**

31.  Section 362(d)(1) of the Bankruptcy Code
provides that "[o]n request of a party in interest and
after notice and a hearing, the court shall grant relief
from the stay provided under subsection (a) of this sec-
tion, such as by terminating annulling, modifying, or
conditioning such stay – (1) for cause . . . ."

32.  While section 362(d)(1) does not explic-
itly define "cause" sufficient to modify the stay, gen-
erally courts must consider the particular circumstances
of each case and make a determination of what is just to
the claimants, the debtors, and the estate.  See In re
Robbins, 964 F.2d 342, 345 (4th Cir. 1992) ("The court
must balance potential prejudice to the bankruptcy
debtor's estate against the hardships that will be in-
curred by the person seeking relief from the automatic
stay if relief is denied.").

16

33.  In determining whether cause exists to modify the automatic stay, courts in this district consider various factors, including:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

Id., at 345.

34.  The relevant factors weigh in favor of modifying the automatic stay to permit Circuit City and Regency to effect the setoffs contemplated by the Second Amendment.  As previously discussed, entry into the Second Amendment will result in the expedited payment of $2.8 million into the Debtors' estates.

35.  In addition, modifying the automatic stay will not interfere with these Chapter 11 cases or prejudice the rights of other parties in interest.  The modification merely allows the Debtors to fulfill the terms of the Lease Termination Agreement.  While the Off-

17

set/Recoupment Amount reduces the amount of the Second

Installment payment, the reduction does not harm or

prejudice the Debtors' creditors or other parties in in-

terest because it is comprised of valid charges that

would have to be paid to Regency out of funds from the

Debtors' estates in any case.  Accordingly, granting the

relief requested herein is justified under Bankruptcy

Code section 362(d)(1).

**III. THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULE 6004(h) SHOULD BE WAIVED FOR ANY ORDER AUTHORIZING CIRCUIT CITY TO ENTER INTO THE SECOND AMENDMENT AND GRANTING RELIEF FROM THE AUTOMATIC STAY TO EFFECT THE SETOFFS CONTEMPLATED BY THE SECOND AMENDMENT.**

36.  Bankruptcy Rule 6004(h) provides that:

"[a]n order authorizing the use, sale, or lease of prop-

erty is stayed until the expiration of 10 days after en-

try of the order, unless the court orders otherwise."

Fed. R. Bankr. P. 6004(h).

37.  The Movants request that the Court waive

the ten-day stay of Bankruptcy Rule 6004 with respect to

execution of the Second Amendment and lifting the auto-

matic stay to effect the setoffs contemplated thereunder

following entry of any order approving such transactions.

By waiving such requirements, Circuit City and Regency

18

will be able to effectuate the terms of the Second

Amendment approved by such order, which will result in a

more expedient payment of the Second Installment into

the Debtors' bankruptcy estates.  Accordingly, waiving

the ten-day stay is in the best interests of the Debtors,

their estates, and other parties in interest.

## NOTICE

38.  Notice of this Motion has been provided

to those parties entitled to notice under the Order Pur-

suant to Bankruptcy Code Sections 102 and 105, Bank-

ruptcy Rules 2002 and 9007, and Local Bankruptcy Rules

2002-1 and 9013-1 Establishing Certain Notice, Case Man-

agement, and Administrative Procedures (D.I. 130; the

"Case Management Order").  The Debtors submit that, un-

der the circumstances, no other or further notice need

be given.

## WAIVER OF MEMORANDUM OF LAW

39.  Pursuant to Local Bankruptcy Rule 9013-

1(G), and because there are no novel issues of law pre-

sented in the Motion and all applicable authority is set

forth in the Motion, the Movants request that the re-

quirement that all motions be accompanied by a separate

memorandum of law be waived.

### NO PRIOR REQUEST

40.  No previous request for the relief sought

herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: May 20, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and –

MCGUIREWOODS LLP

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

**<u>EXHIBIT A</u>**

**(Order)**

Gregg M. Galardi, Esq.               Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.              Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &      MCGUIREWOODS LLP
FLOM, LLP                            One James Center
One Rodney Square                    901 E. Cary Street
PO Box 636                           Richmond, Virginia 23219
Wilmington, Delaware 19899-0636      (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                       :    Chapter 11
                             :
CIRCUIT CITY STORES, INC.,   :    Case No. 08-35653 (KRH)
et al.,                      :
                             :
              Debtors.       :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 362 AND 363
(I) AUTHORIZING CIRCUIT CITY STORES, INC. AND CIRCUIT
CITY STORES WEST COAST, INC. TO ENTER INTO AGREEMENT
MODIFYING PRE-PETITION CONTRACT WITH REGENCY CENTERS,
L.P., AND (II) LIFTING AUTOMATIC STAY IN CONNECTION
THEREWITH**

        Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. and Circuit City Stores West Coast, Inc.

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

("Circuit City") and their affiliated debtors and debt-

ors in possession in the above-captioned jointly admin-

istered cases (collectively with Circuit City, the

"Debtors"), for entry of an order pursuant to sections

362 and 363 of title 11 of the United States Code (the

"Bankruptcy Code"), and Rule 6004 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), (I)

Authorizing Circuit City Stores, Inc. and Circuit City

Stores West Coast, Inc. to enter into the Second Amend-

ment to Lease Termination Agreement with Regency Cen-

ters, L.P., and, to the extent necessary, (II) Lifting

the Automatic Stay in connection therewith; and the

Court having reviewed and considered the Motion, and af-

ter due deliberation thereon, and good cause appearing

therefore it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is

GRANTED.

2.    Pursuant to Bankruptcy Code section 363

Circuit City is authorized to execute the Second Amend-

ment, attached hereto as Exhibit 1.

3.    Pursuant to section 363 of the Bankruptcy Code, the Debtors are hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Second Amendment; and (ii) perform, consummate, and implement such transactions together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Second Amendment.

4.    The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is modified to the extent necessary to permit Circuit City and Regency, jointly or in their individual capacities, to effect the setoffs contemplated by the Second Amendment.

5.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

6.    The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

7.    This Court retains jurisdiction to hear

and determine all matters arising from or related to the

Second Amendment, and this Order.

Dated:  Richmond, Virginia
        June ___, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

 /s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

## **EXHIBIT 1**

**(Commutation and Release Agreement)**

## EXHIBIT B

**(Lease Termination Agreement)**

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement ("**Agreement**") is made and entered into as of the 2 th day of August, 2008 ("**Effective Date**") by and among REGENCY CENTERS, L.P., a Delaware limited partnership ("**Landlord**"), CIRCUIT CITY STORES INC., a Virginia corporation ("**CCS**"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("**CC West**").

### RECITALS

A.     Landlord and CC West entered into that certain Lease dated August 15, 2005 ("**New Lease**") covering those certain premises ("**New Premises**") described in the New Lease in the shopping center (the "**Shopping Center**") being more particularly described on Exhibit A attached thereto.

B.     Frank Fickett, as landlord, ("**Fickett**") and The Akron, as tenant ("**Akron**") entered into that certain Lease (the "**Original Akron Lease**") dated January 25, 1972 covering those certain premises described in the Original Akron Lease (the "**Existing Premises**"). The Original Akron Lease was modified pursuant to: (i) that certain First Amendment to Lease dated July 18, 1973 ("**First Amendment**"); (ii) that certain Second Amendment to Lease dated March 25, 1985 ("**Second Amendment**"); and (iii) that certain Third Amendment to Lease dated October 17, 1986 ("**Third Amendment**"). The Original Akron Lease, as amended by the First Amendment, Second Amendment and Third Amendment, is hereinafter referred to as the "**Original Lease**." As of the date of the Second Amendment, Akron assigned its interest in and to the Original Akron Lease, as then amended, to CCS. After the date of the Third Amendment, Fickett assigned its interest in and to the Original Lease to Landlord.

C.     On or about the same time Landlord and CC West entered into the New Lease, Landlord and CCS entered into that certain Lease Termination Agreement (the "**Original Lease Termination Agreement**"), wherein it was contemplated that upon completion by CC West of the New Premises, (i) CC West would commence operations of a "Circuit City" store in the New Premises, (ii) CCS would vacate the Existing Premises and (iii) the Original Lease would then be terminated, all as more particularly described in the Original Lease Termination Agreement.

D.     Subject to the satisfaction of certain conditions precedent more particularly set forth in this Agreement, Landlord, CCS and CC West (collectively, "**Circuit City**") now desire to terminate the New Lease and the Original Lease upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants of the parties set forth herein, it is hereby agreed as follows:

### AGREEMENT

1.     Termination of Leases and Original Lease Termination Agreement.

a.     Subject to the terms and conditions set forth in this Agreement, Landlord and Circuit City hereby agree that, notwithstanding the provisions of the New Lease or the Original Lease, the New Lease and the Original Lease each shall terminate on and effective as of February 28, 2009 (the "**Termination Date**"). Prior to the Termination Date, the Original Lease shall remain in full force and effect in accordance with its terms, except as expressly modified by this Agreement.

b.     On the Termination Date, Circuit City shall deliver the Existing Premises to Landlord vacant, free of all of Tenant's personal property (including its furnishing, trade fixtures and equipment), and broom clean, but otherwise in their then "as is" condition, notwithstanding any contrary terms or conditions of the Original Lease or Original Lease Termination Agreement. Tenant may leave any other fixtures (i.e., other than trade fixtures) in the Existing Premises upon its surrender of the Existing Premises.

c.     As of the Termination Date, (i) Landlord hereby releases CC West, and CC West hereby releases Landlord, from any obligations and liabilities under the New Lease, including without limitation, any party's obligation to pay any sums to the other except as described in this Agreement, and (ii) Landlord hereby releases CCS, and CCS hereby releases Landlord, from any obligations and liabilities under the Original Lease, including without limitation, any party's obligation to pay any sums to the other except as described in this Agreement; provided, however, nothing contained herein shall be deemed to release CCS from its obligations under the Original Lease through, or for events or occurrences arising or accruing on or prior to, the Termination Date, including without limitation, any obligation to indemnify and defend Landlord from or for events or occurrences arising on or prior to the Termination Date pursuant to the terms of the Original Lease, all of which shall survive the Termination Date to the extent set forth in the Original Lease, and nothing contained herein shall be deemed to release CCS or Landlord for their respective obligations under the Original Lease to reimburse the other party for overpayment or underpayments, as the case may be, for taxes, utilities, insurance, common area maintenance expenses and/or other monetary obligations in accordance with the terms of the Original Lease.

d.     The Original Lease Termination Agreement is hereby rendered null and void and of no further force or effect unless this Agreement terminates, in which case the Original Lease, New Lease and Original Lease Termination Agreement shall be immediately reinstated without any further action on the part of the parties thereto.

2.     Contingency Period. The "**Contingency Period**" is the period of time commencing with the Effective Date of this Agreement and ending 5:00 p.m. PST on the date which is thirty (30) days after the Effective Date, provided that if the 30th day falls on a weekend or federal holiday, the Contingency Period shall extend to 5:00 p.m. PST on the next business day. If, during the Contingency Period, Landlord determines, in Landlord's sole and absolute discretion, that it does not elect to proceed with the transactions contemplated by this Agreement, then Landlord may terminate this Agreement by giving written notice to Circuit City no later than 5:00 p.m. PST on the date of the expiration of the Contingency Period, in which case (a) the Original Lease Termination Agreement and the New Lease shall be deemed to be reinstated in accordance with their original terms, without the need for any further action on the part of

Landlord or Circuit City, and (b) neither Landlord nor Circuit City shall have any further rights or obligations under this Agreement. If, during the Contingency Period, Landlord determines, in Landlord's sole and absolute discretion, that it elects to proceed with the transactions contemplated by this Agreement, then prior to the expiration of the Contingency Period, Landlord shall notify Circuit City in writing that it elects to proceed. If, prior to the expiration of the Contingency Period, Landlord fails to deliver any written notice indicating that it elects to proceed with the transactions contemplated by this Agreement, Landlord shall be deemed to have elected not to proceed and the provisions of subsections (a) and (b) of this Section 2 of this Agreement applicable to termination prior to the expiration of the Contingency Period shall apply.

3.   Lease Termination Fee. As consideration for this Agreement, Landlord shall pay Circuit City a fee in the aggregate amount of Six Million and No/100 Dollars ($6,000,000.00) (the "**Lease Termination Fee**"). The Lease Termination Fee shall be payable as follows:

a.   Unless this Agreement has then been terminated (or is deemed to have been terminated) pursuant to Section 2 above, Landlord shall deposit the full Lease Termination Fee, in escrow, with Chicago Title Company (700 S. Flower Street, Suite 800, Los Angeles, CA 90017 (213) 488-4300, Attention:  Maggie Watson) ("**Escrow Holder**"), on or before the expiration of the Contingency Period, to be paid to Circuit City as follows:

(i)   Three Million and No/100 Dollars ($3,000,000.00) (the "**First Installment**") shall be paid within three (3) business days after the expiration of the Contingency Period; and

(ii)   Provided Circuit City is not in default under this Agreement, Three Million and No/100 Dollars ($3,000,000.00) (the "**Second Installment**") shall be paid within three (3) business days after the later of (1) the Termination Date or (2) the date CCS vacates the Existing Premises in compliance with the requirements of Section 1.b of this Agreement.  Unless Landlord previously notifies Circuit City and Escrow Holder in writing that Circuit City is in default under this Agreement, Escrow Holder is hereby authorized and directed to disburse the Second Installment to Circuit City on March 3, 2009, without the need for any further written instructions from Landlord or Circuit City.  If Landlord timely notifies Circuit City and Escrow Holder that Circuit City is in default under this Agreement, Escrow Holder is hereby authorized and directed to retain the Second Installment until joint instructions, executed by both Landlord and Circuit City, have been executed and delivered to Escrow Holder.

Notwithstanding the foregoing, in lieu of depositing the full Lease Termination Fee with Escrow Holder on or before the expiration of the Contingency Period, Landlord may elect to deposit the First Installment in cash and deliver to Escrow Holder an irrevocable, standby letter of credit payable to Circuit City in the amount of the Second Installment (the "**LOC**").  The LOC shall be issued by Wells Fargo, N.A. (or by another financial institution the accounts of which are insured by the FDIC with an office in northern or central

Virginia or the Washington D.C. area where the LOC can be presented at the counter of such other financial institution) and shall be in a form approved by Circuit City in advance, such approval not to be unreasonably withheld. The LOC shall have a term of not less than six (6) months from the expiration of the Contingency Period. The LOC shall be held by Escrow Holder to secure Landlord's obligation to pay the Second Installment as and when due hereunder. Circuit City shall be entitled demand that Escrow Holder deliver the LOC to Circuit City and thereafter to draw on the LOC if Landlord fails to pay the Second Installment to Circuit City as and when due hereunder, which failure continues for three (3) business days' after Landlord's receipt of written notice that such payment is past due (a **"Payment Default"**); provided, however, if Landlord timely notifies Circuit City and Escrow Holder that Circuit City is in default under this Agreement, Escrow Holder is hereby authorized and directed to retain the LOC until joint instructions, executed by both Landlord and Circuit City, have been executed and delivered to Escrow Holder. Landlord shall execute any additional instructions that are reasonably required by the Escrow Holder to permit the delivery of the LOC to Circuit City following a Payment Default. If Landlord pays the Second Installment to Circuit City, the LOC shall be returned to Landlord immediately by Escrow Holder and Circuit City shall execute any additional instructions that are reasonably required by the Escrow Holder to permit the return of the LOC to Landlord.

      b.     Simultaneously with the execution of this Agreement, Landlord and Circuit City shall execute any supplemental instructions the Escrow Holder requires with respect to the handling of the Lease Termination Fee and LOC and shall cause Escrow Holder to join in the execution of this Agreement for the sole purpose of acknowledging and accepting the role of Escrow Holder hereunder.

      4.     <u>Interim Obligations; Effective Modification of Original Lease</u>. Prior to the Termination Date, the Original Lease shall remain in full force and effect in accordance with its terms; provided, however, effective as of the date the First Installment is paid to Circuit City (the **"Modification Date"**), the Original Lease shall be deemed modified and amended such that the term of the Original Lease shall be deemed to expire as of the Termination Date. Landlord and CCS shall each be obligated to comply with their respective rights and obligations under the Original Lease and shall be entitled to exercise all rights and remedies available under the Original Lease in the event of a breach or default (as defined in the Original Lease). Further, if CCS has failed to pay any rent or other monetary sum due under the Original Lease as of the Termination Date, Landlord may offset any such rent or other sums against the Second Installment.

      5.     <u>Circuit City Default</u>. Circuit City shall be in default under this Agreement if Circuit City fails to deliver the Existing Premises to Landlord on the Termination Date in the condition required by Section 1.b. of this Agreement. If Circuit City is in default under this Agreement, then so long as Landlord is not in default under this Agreement, Landlord shall have the right, at its sole option, and as its sole and exclusive remedies, either: (a) to recover (i) the full amount of the Lease Termination Fee previously paid to Circuit City, together with interest thereon at the Default Rate set forth in the New Lease from the date originally paid until the date

re-paid to Landlord, and (ii) terminate this Agreement, together with such additional actual damages as Landlord may suffer as a result of Circuit City's default; or (b) to pursue the other remedies set forth in this Agreement. If Landlord elects to pursue the remedies set forth in clause (a) of the immediately preceding sentence, the Original Lease, New Lease and Original Lease Termination Agreement shall nevertheless remain in full force and effect in accordance with their terms (or, if after the Modification Date, shall be deemed reinstated in accordance with its original terms notwithstanding the effective modification of the Original Lease pursuant to Section 4 above).

6.     Landlord Default.   Provided Landlord has not terminated this Agreement in accordance with Section 2 hereof, Landlord shall be in default under this Agreement if, after the expiration of the Contingency Period, Landlord fails to pay the Lease Termination Fee, including either the First Installment or the Second Installment, to Circuit City as and when required. If Landlord is in default under this Agreement, then so long as Circuit City is not in default under this Agreement, Circuit City shall be entitled to pursue an action for specific performance against Landlord, including (a) payment of the Lease Termination Fee (net of any portion thereof previously paid) as liquidated damages, it being agreed that Circuit City's actual damages for Landlord's default would be difficult if not impossible to ascertain, and (b) termination of the Original Lease, the New Lease and the Original Lease Termination Agreement in accordance with the terms hereof.

7.     Cooperation with Door Enlargement and Other Approvals.   CCS acknowledges that Landlord intends to request necessary governmental approvals to enlarge the front door to the Existing Premises (the **"Door Enlargement Approvals"**). CCS agrees to cooperate with Landlord, at Landlord's expense, to obtain the Door Enlargement Approvals and any other entitlements or approvals Landlord may desire to obtain in connection with proposed renovation of the Existing Premises after the Termination Date, including promptly executing and returning to Landlord any and all applications or other submittals required to be delivered in connection therewith; provided, however, that Circuit City shall not be obligated to incur any liability or costs in connection with such applications or submittals and shall not be obligated to execute any applications or submittals which would impose liability or costs on Circuit City.

8.     Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute but one and the same instrument.

9.     Entirety.   This Agreement represents the entire and final agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior discussions, negotiations and writings with respect thereto. This Agreement may only be amended by written instrument signed by the parties hereto.

10.     Construction.   Each of the parties has participated in the drafting and negotiation of this Agreement. Accordingly, in the event of a dispute among the parties with respect to the interpretation or enforcement of the terms hereof, no provision shall be construed so as to favor or disfavor any party hereto. In the event the terms and conditions of this Agreement conflict with the terms of the Original Lease, the New Lease or the Original Lease Termination Agreement, the terms of this Agreement shall control.

11.    Attorneys' fees.  In the event of a dispute among the parties hereto with respect to the interpretation or enforcement of the terms hereof, the prevailing party shall be entitled to collect from the other its reasonable attorneys' fees and costs, including its costs and fees on appeal.

12.    No Brokers.  Landlord and Circuit City each represents and warrants that they have not engaged any broker, finder or other person who would be entitled to any commission or fees with respect to the negotiation, execution or delivery of this Agreement.

13.    Captions.  The captions are included in this Agreement for convenience of reference only and shall not be construed so as to define, limit or modify in any manner any of the terms hereof.

14.    Governing Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California.

*[signatures follow on next page]*

IN WITNESS WHEREOF, the parties hereby execute this Agreement as of the day and year first set forth above.

REGENCY CENTERS, L.P., a Delaware limited partnership

By: Regency Centers Corporation, a Florida corporation
Its: General Partner

By: _____
Name: _Edwin Berg_____
Title: _Senior V.P._____

"CC West"                    CIRCUIT CITY STORES WEST COAST, INC., a California corporation

By: _____
Name: _Chris Crowe_____
Title: _Dir of RE_____

"CCS"                        CIRCUIT CITY STORES INC., a Virginia corporation

By: _____
Name: _Chris Crowe_____
Title: _Dir of RE_____

## JOINDER BY ESCROW HOLDER

The undersigned, referred to in this Agreement as the "Escrow Holder", hereby joins in the execution of this Agreement for the sole purpose of (a) acknowledging receipt of a fully executed copy of this Agreement and (b) agreeing that, upon receipt, it will hold and disburse the Lease Termination Fee (and, if applicable, the LOC) in accordance with the terms of this Agreement.

CHICAGO TITLE COMPANY


By:_____
Name:_____
Title:_____

## <u>EXHIBIT C</u>

**(First Amendment to Lease Termination Agreement)**

## FIRST AMENDMENT TO LEASE TERMINATION AGREEMENT

This FIRST AMENDMENT TO LEASE TERMINATION AGREEMENT ("Amendment") dated as of September ___, 2008 is entered into by and among REGENCY CENTERS, L.P., a Delaware limited partnership ("Landlord"), CIRCUIT CITY STORES, INC., a Virginia corporation ("CCS"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("CC West"). CCS and CC West shall collectively be referred to herein as "Circuit City".

### RECITALS:

A.    Landlord and Circuit City are parties to that certain Lease Termination Agreement dated as of August 28, 2008 (the "Agreement"), pursuant to which Landlord and Circuit City agreed that the New Lease and the Original Lease shall terminate effective as of the Termination Date, as more specifically set forth in the Agreement.

B.    Defined terms which are used in this Amendment without definition have the meanings given to them in the Agreement.

C.    Landlord and Circuit City desire to amend the Agreement upon the terms and conditions hereinafter set forth.

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and agreements contained in this Amendment and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Circuit City hereby agree as follows:

1.    Extension of Contingency Period.  Pursuant to the Agreement, the Contingency Period is scheduled to end on Monday, September 29, 2008 at 5:00 p.m. PST.  Landlord and Circuit City hereby agree that the Contingency Period shall be extended by fifteen (15) days, to Tuesday, October 14, 2008 at 5:00 p.m. PST.

2.    No Other Modification.  Landlord and Circuit City agree that except as otherwise specifically modified in this Amendment, the Agreement has not been modified, supplemented, amended, or otherwise changed in any way and the Agreement remains in full force and effect between the parties hereto as modified by this Amendment.  To the extent of any inconsistency between the terms and conditions of the Agreement and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall apply and govern the parties.  This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one in the same Amendment.

*[signatures follow on next page]*

IN WITNESS WHEREOF, the parties have each executed this Amendment as of the date set forth above.

"LANDLORD"                          REGENCY CENTERS, L.P.,
                                    a Delaware limited partnership

                                    By:    Regency Centers Corporation,
                                           a Florida corporation,
                                           Its:  General Partner

                                           By: _____
                                           Name: _____ Erwin Buy _____
                                           Title: _____ Senior V.P. _____


"CC West"                           CIRCUIT CITY STORES WEST COAST, INC.,
                                    a California corporation

                                    By: _____
                                    Name: _____ Chris Crowe _____
                                    Title: _____ Director of Real Estate _____



"CCS"                               CIRCUIT CITY STORES INC.,
                                    a Virginia corporation

                                    By: _____
                                    Name: _____ Chris Crowe _____
                                    Title: _____ Director of Real Estate _____

## <u>EXHIBIT D</u>

**(Second Amendment to Lease Termination Agreement)**

## SECOND AMENDMENT TO LEASE TERMINATION AGREEMENT

This SECOND AMENDMENT TO LEASE TERMINATION AGREEMENT (this **"Second Amendment"**) dated as of May __, 2009 is entered into by and among REGENCY CENTERS, L.P., a Delaware limited partnership (**"Landlord"**), CIRCUIT CITY STORES, INC., a Virginia corporation (**"CCS"**), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation (**"CC West"**). CCS and CC West shall collectively be referred to herein as **"Circuit City"**, and Landlord and Circuit City are sometimes collectively referred to herein as the **"Parties"**.

## R E C I T A L S

A.     Landlord and Circuit City are parties to that certain Lease Termination Agreement dated as of August 28, 2008 (the **"Lease Termination Agreement"**), pursuant to which Landlord and Circuit City agreed that the New Lease and the Original Lease shall terminate effective as of the Termination Date in consideration for the payment by Landlord of the Lease Termination Fee, as more specifically set forth therein.

B.     Pursuant to the First Amendment to Lease Termination Agreement (the **"First Amendment"**) dated as of September __, 2008, the parties agreed to extend the Contingency Period through September 29, 2008 (the Lease Termination Agreement as modified by the First Amendment is collectively referred to as the **"Agreement"**).

C.     Pursuant to Section 3 of the Agreement, Landlord has paid the First Installment to Circuit City and the Second Installment is due and payable on the later of: (i) the Termination Date; or (ii) the date Circuit City vacates the Existing Premises in accordance with Section 1.b. of the Agreement provided Circuit City is not in default under the Agreement.

D.     Pursuant to Section 3.a.(ii) of the Agreement and following Landlord's written election to waive all contingencies, Landlord deposited the LOC with Escrow Holder to secure Landlord's obligation to pay the Second Installment.

E.     Landlord and Circuit City are also parties to a lease for real property located at 5795 Christie Avenue in Powell Street Plaza in Emeryville, California (the **"Powell Street Lease"**).

E.     Pursuant to Section 4 of the Agreement, Landlord is entitled to offset the total amount of any unpaid rent and other charges due and owing under the Original Lease as well as other sums due to Landlord arising under the Powell Street Lease after November 10, 2008 (the **"Petition Date"**) against the Second Installment, which Landlord and CCS agree totals $145,095.14 (the **"Offset Amount"**).

F.     On the Petition Date, Circuit City and certain of its affiliates filed voluntary Chapter 11 petitions for relief in the United States Bankruptcy Court for the Eastern District of Virginia (the **"Court"**), thereby commencing a case under Chapter 11 of the United Stated Bankruptcy Code (the **"Code"**) designated as case number 08-35653 (KRH), which case has been assigned to Judge Kevin Huennekens.

G.    Circuit City has requested and Landlord, subject to the terms set forth herein, has agreed to pay the Second Installment less the Offset Amount to Circuit City in accordance with the terms and conditions of this Second Amendment

H.    Defined terms which are used in this Second Amendment without definition have the meanings given to them in the Agreement.

## A G R E E M E N T

NOW, THEREFORE, in consideration of the foregoing Recitals which are incorporated herein by reference, the mutual covenants and agreements contained in this Second Amendment and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Circuit City hereby agrees as follows:

1.    Offset Amount.    The Offset Amount is valid and owing to Landlord and totals $145,095.14.

2.    Return of the LOC/Payment of the Second Installment/Termination of Memorandum of Lease.

a.    Simultaneously with the approval of this Second Amendment by the Bankruptcy Court pursuant to a Final Order (as subsequently defined), the Parties shall cause Chicago Title Insurance Company ("**Escrow Holder**") to execute the joinder to this Second Amendment set forth below and, if necessary, shall issue joint written instructions to Escrow Holder in the form attached hereto as Exhibit A, and Landlord shall cause the LOC to be cancelled and terminated. Circuit City shall cooperate with Landlord and shall execute any and all documents reasonably necessary to cause the LOC to be cancelled and of no further force or effect including, without limitation, the execution and delivery of a termination notice to the issuing financial institution in the form attached hereto as Exhibit B. Return to Landlord and cancellation of the LOC and the issuance of a Final Order (as hereafter defined) by the Court approving this Second Amendment are express conditions precedent to Landlord's obligation to remit to Circuit City the Final Termination Payment (defined below). As used herein, "Final Order" means an order of the Court that is not subject to reversal, is not stayed and as to which the time to appeal from or to seek review or rehearing has expired. For avoidance of doubt, an order of the Court approving this Second Amendment shall be a Final Order: (i) upon its entry if no objections have been made to the Approval Motion (as hereafter defined), or if such objections have been made, they have been withdrawn, and the Court has waived the stay to the effectiveness of such order as set forth in Rule 6004(g) of the Federal Rules of Bankruptcy Procedure, or (ii) on the 11th day after its entry if no notice of appeal of such order has been filed.

b.    Simultaneously with the return to Landlord and cancellation of the LOC, Landlord shall wire to Circuit City an amount equal to $2,854,904.86 (the Second Installment less the Offset Amount) (the "**Final Termination Payment**") in full satisfaction of all obligations of Landlord under the Agreement. The Final Termination Payment shall be sent by wire transfer to Circuit City in accordance with the wire instructions attached hereto as Exhibit C whereupon each of the Original Lease and the New Lease shall terminate and be of no further

force and effect, and the Agreement shall be deemed amended such that the Termination Date shall be deemed to be the date the wire is received by Circuit City.

3.    Mutual Release of Claims.

a.    Effective as of the receipt by Circuit City of the Final Termination Payment (the "**Termination Payment Date**"), Circuit City and Landlord each release the other in accordance with the terms agreed upon in Section 1(c) of the Lease Termination Agreement, except that as of the Termination Payment Date, Circuit City and Landlord shall be released from their respective obligations under the Original Lease to reimburse the other party for overpayment or underpayments, as the case may be, for taxes, utilities, insurance, common area maintenance expenses and/or other similar charges in accordance with the Original Lease.

b.    Effective as of the Termination Payment Date, Landlord waives and releases Circuit City from all post-petition claims arising under or related to the Powell Street Lease.

3.    Court Approval.  As soon as practicable following the execution of this Second Amendment by the Parties, Circuit City shall file a motion with the Court seeking entry of an order approving this Second Amendment, in form and substance reasonably acceptable to each of the Parties hereto.

4.    No Other Modification.  Except as otherwise specifically modified in this Second Amendment, the Agreement has not been modified, supplemented, amended, or otherwise changed in any way and the Agreement remains in full force and effect between the Parties as modified by this Second Amendment.  To the extent of any inconsistency between the terms and conditions of the Agreement and the terms and conditions of this Second Amendment, the terms and conditions of this Second Amendment shall apply and, govern the parties.

5.    Due Authorization.  The Parties each represent and warrant that it has the right and authority to enter into this Second Amendment and each of the persons executing this Second Amendment on behalf of each of the Parties is authorized to do so.

6.    Incorporation of the Terms of the Agreement.  Sections 8-14 of the Agreement are specifically incorporated herein by reference as if the same were fully set forth herein; provided however that all references to the "Agreement" made in those Sections shall be deemed to refer to this Second Amendment.

7.    Binding on Successors.  This Agreement is valid and binding upon the Parties and their successors and assigns, including any subsequently appointed trustee or statutorily appointed committee.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Parties have each executed this Second Amendment as of the date first set forth above.

"LANDLORD"                          REGENCY CENTERS, L.P.,
                                    a Delaware limited partnership

                                    By:    Regency Centers Corporation,
                                           a Florida corporation,
                                           Its:  General Partner

                                           By: _____
                                           Name: _____
                                           Title: _____

"CC West"                           CIRCUIT CITY STORES WEST COAST, INC.,
                                    a California corporation

                                    By: _____
                                    Name: _____
                                    Title: _____

"CCS"                               CIRCUIT CITY STORES INC.,
                                    a Virginia corporation

                                    By: _____
                                    Name: _____
                                    Title: _____

[SIGNATURE PAGE TO SECOND AMENDMENT TO LEASE TERMINATION]

### JOINDER BY ESCROW HOLDER

The undersigned, referred to in this Second Amendment as the "Escrow Holder", hereby joins in the execution of this Second Amendment for the sole purpose of (a) acknowledging receipt of a fully executed copy of this Second Amendment and (b) agreeing that, upon entry of a Final Order approving this Second Amendment and the further direction of the Parties, it will return the LOC to Landlord in accordance with the terms of this Second Amendment.

CHICAGO TITLE INSURANCE
COMPANY

By:_____
Name:_____
Title:_____

NY01:CAR:/1329118.8

5

O:\Documents and Settings\saltaker\Local Settings\Temporary Internet Files\OLK3\NY01-1329118-v8-Second Amendment to Lease Termination Agreement.DOC

MSW - Draft May 15, 2009 - 10:03 AM

**Exhibit A**

**Joint Notice to Escrow Holder**

Chicago Title Company
700 S. Flower Street, Suite 800
Los Angeles, California 90017
Attn: Maggie Watson

      Re:     Letter of Credit No. NZS591515 (the "LOC") in favor of _____
(the "Beneficiary") issued by Wells Fargo, N.A. on the account of Regency Centers, L.P. held in
Escrow by Chicago Title Company ("Escrow Holder") pursuant to the Lease Termination
Agreement (the "Agreement") dated as of August 28, 2008 among Beneficiary, Landlord and
Escrow Holder.

Ladies & Gentlemen:

      The undersigned in accordance with the Agreement hereby jointly authorize and direct
you to immediately return the LOC to Landlord at the following address:

          _____
          _____
          _____


      REGENCY CENTERS, L.P.,
      a Delaware limited partnership

      By:    Regency Centers Corporation,
           a Florida corporation,
           Its: General Partner

           By: _____
           Name: _____
           Title: _____

      CIRCUIT CITY STORES WEST COAST, INC.,
      a California corporation

      By: _____
      Name: _____
      Title: _____


*Signatures continue on next page*

NY01:\ARLI\1329115.8                                6
O:\Documents and Settings\sabaker\Local Settings\Temporary Internet Files\OLK3\NY01-1329115-v8-Second Amendment to Lease Termination
Agreement.DOC
                                 MSW - Draft May 15, 2009 - 10:03 AM

CIRCUIT CITY STORES INC.,
a Virginia corporation

By:_____
Name:_____
Title:_____

*Signature page to Joint Notice to Escrow Holder*

**Exhibit B**
**LOC Termination Notice**

**(LETTERHEAD OF BENEFICIARY)**

(DATE)

Wells Fargo Bank, N.A.
Trade Services Division, Northern California
One Front Street, 21st Floor
San Francisco, California 94111

Subject:  Cancellation of Letter of Credit No. NZS591515 in favor of Parcel 6, LLC  (the "Beneficiary")

Ladies and Gentlemen:

Enclosed is the original Letter of Credit (the "Credit") identified above.   The undersigned, a person authorized to sign for the above named Beneficiary, hereby requests on behalf of the Beneficiary that this Wells Fargo Bank, N. A. ("Wells Fargo") Credit be canceled effective immediately.  This request for cancellation is unconditional and irrevocable.

Thank you for your assistance in this matter.

Sincerely,

Parcel 6, LLC

By: _____

NY01:1329115 8
J:\Documents and Settings\salaker\Local Settings\Temporary Internet Files\OLK3\NY01-1329115-v8-Second Amendment to Lease Termination Agreement.DOC
MSW - Draft May 15, 2009 - 10:03 AM

**Exhibit C**

**Circuit City Wire Instructions**

NY01:CARLF1-429115-8
Q:\Documents and Settings\mbaker\Local Settings\Temporary Internet Files\OLK3\NY01-1429115-v8-Second Amendment to Lease Termination
Agreement.DOC                                                                                    MSW - Draft May 15, 2009 - 10:33 AM