Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 363 AND 365 (A) AUTHORIZING DEBTORS TO
ENTER INTO AGREEMENT IN CONNECTION WITH SALE AND
ASSIGNMENT OF UNEXPIRED LEASE AND SUBLEASE OF
NONRESIDENTIAL REAL PROPERTY, SUBJECT TO HIGHER OR
OTHERWISE BETTER BIDS, (B) APPROVING TERMINATION FEE IN
CONNECTION THEREWITH, (C) APPROVING SALE OF LEASE AND
SUBLEASE FREE AND CLEAR OF ALL INTERESTS, AND
(D) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to

sections 105, 363 and 365 of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 2002, 6004

and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), for entry of an order

(A) authorizing the Debtors to enter into an agreement

with the Purchaser (as defined herein) for the

assumption, assumption, and sale (the "Sale") of certain

of the Debtors' Leases (as defined herein), a copy of

which is attached as Exhibit A to the Sale Order (the

"Agreement"), subject to higher or otherwise better

proposals, (B)  approving the Termination Fee (as

defined below) in connection therewith, (C) approving

the Sale of the Leases free and clear of all interests

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for Circuit City Stores West Coast, Inc. is 9250 Sheridan
      Boulevard, Westminster, Colorado 80031.  For all other Debtors,
      the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
      currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

and (D) granting related relief.  In support of the

Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this District is proper

under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105, 363

and 365 and Bankruptcy Rules 2002, 6004 and 6006.

### BACKGROUND

**A.     The Bankruptcy Cases.**

3.     On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to manage and

operate their businesses as debtors in possession

pursuant to Bankruptcy Code sections 1107 and 1108.

5.     On November 12, 2008, the Office of the

United States Trustee for the Eastern District of

Virginia appointed a statutory committee of unsecured

creditors (the "Creditors' Committee").  To date, no
trustee or examiner has been appointed in these chapter
11 cases.

      6.    On January 16, 2009, the Court
authorized the Debtors, among other things, to conduct
going out of business sales at the Debtors' remaining
567 stores pursuant to an agency agreement (the "Agency
Agreement") between the Debtors and a joint venture, as
agent (the "Agent").  On January 17, 2009, the Agent
commenced going out of business sales pursuant to the
Agency Agreement at the Debtors remaining stores.  As of
on or about March 8, 2009, the going out of business
sales concluded.

**B.    The Lease Procedures Order**

      7.    On February 19, 2009, the Court approved
procedures for the sale or rejection of the Debtors'
real property leases for the Debtors remaining retail
stores and certain other locations (D.I. 2242, the
"Lease Procedures Order").  The Lease Procedures Order
authorized the Debtors to solicit bids and conduct
auctions with respect to the Debtors' real property
leases.  The Lease Procedures Order further provided

procedures whereby the Debtors may reject those real
property leases for which the Debtors do not receive
bids or that the Debtors otherwise wish to reject by
providing seven-days written notice to the landlord (the
"Rejection Notice"), without further hearing.

8.   On March 30, 2009, the Court approved
modifications to the Lease Procedures Order (D.I. 2855,
the "Modified Lease Procedures Order"), granting the
Debtors additional time to market the certain of the
Debtors' leases, including the Leases that are the
subject of this Motion, beyond the March 31, 2009
automatic rejection date established in the Lease
Procedures Order.  The Modified Lease Procedures Order
also authorizes the Debtors to establish new bid
deadlines and auction dates for these same leases.

**C.   The Leases.**

9.    Circuit City Stores, Inc. ("Tenant"), as
successor to Service Merchandise Company, Inc., is party
to a ground lease dated September 19, 1986 with Simon
Property Group (Illinois) LP ("Landlord"), as successor
to C.Y.A., Inc., for the premises (the "Premises")

located at 340 West Army Trail Road in Bloomingdale,
Minnesota (the "Lease").

10.   Circuit City Stores, Inc. subleases the
Premises to Dollar Tree Stores, Inc. ("Sublessee")
pursuant to a sublease dated January, 2004 (the
"Sublease," together, with the Lease, the "Leases").

## RELIEF REQUESTED

11.   By this Motion, the Debtors seek an
order (A) authorizing the Debtors to enter into the
Agreement in connection the Sale of the Leases, subject
to higher or otherwise better proposals, (B) approving
the Termination Fee in connection therewith,
(C) approving the of the Sale of the Leases free and
clear of all interests, and (D) granting related relief
(the "Sale Order").

12.   As more fully set forth below, after a
comprehensive review, the Debtors believe that the
assumption, assignment, and sale represents their best
opportunity under the circumstances to maximize the
value of the Leases.   Therefore, the Sale is in the best
interests of the Debtors' estates and stakeholders.

**BASIS FOR RELIEF**

**A.    Events Leading To The Sale.**

13.    In light of the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales, as described above, the Debtors have been left with various assets -- including the Leases -- for which they have no remaining use.  In contrast, the sale of such assets, including the Sale of the Leases, would result in significant proceeds for the Debtors' estate and creditors.

14.    Since at or about the time the going-out-of-business sales were commenced, the Debtors, along with their real estate advisor, DJM Realty, LLC ("DJM"), have been marketing the Leases.  As a result of these marketing efforts, the Debtors received various proposals to purchase the Leases.  Upon reviewing these proposals, the Debtors determined that the proposal submitted by the Purchaser was the highest or otherwise best proposal of those received.  Thus, the Debtors elected to proceed with the Sale of the Leases to the Purchaser.

7

**B.    The Agreement.**

15.    The Agreement provides that Creative Realty Management LLC (the "Purchaser") shall pay $175,000.00 to the Debtors, $26,250.00 of which has been deposited in escrow and the balance to be paid upon closing of the Sale.  As adequate assurance of future performance, the Purchaser has provided federal tax returns for the years 2007 and 2008, which have been forwarded to the Landlord.

**C.    Termination Fee.**

16.    The Debtors have agreed to pay the Purchaser a break-up fee of $40,000.00 (the "Termination Fee") if, and only if (i) Purchaser is not in breach of or default under the Agreement, (ii) the Agreement is not conditioned on conducting any further, or completing, due diligence and (iii) the Debtors consummate the Sale of the Leases with a higher or otherwise better bidder at the Auction.

17.    The Purchaser has expended, and likely will continue to expend, considerable time, money, and energy pursuing the Sale and has engaged in arm's length and good faith negotiations regarding a possible sale of

the Leases.  The Agreement is the culmination of these efforts.

18.  In recognition of this expenditure of time, energy, and resources, the Debtors have agreed to the Termination Fee.  Specifically, the Agreement provides for, and the Debtors respectfully request that the Sale Order approve, the Termination Fee payable by the Debtors to the Purchaser in the amount of $40,000.00 if the Debtors terminate the Agreement to close an alternative transaction, so long as the Purchaser is not in breach of the Agreement and the Agreement is not conditioned on conducting or completing any further due diligence.

19.  The Debtors believe that the proposed Termination Fee is fair and reasonable in view of (a) the analysis, due diligence investigation, and negotiation undertaken by the Purchaser in connection with the Sale and (b) the fact that the Purchaser's efforts would maximize the value of the Leases for the benefit of all stakeholders, whether as a result of consummating the Sale pursuant to the Agreement or by generating a higher or otherwise better offer.

20.    The Purchaser is unwilling to keep open
its offer to purchase the Leases under the terms of the
Agreement unless this Court authorizes payment of the
Termination Fee.    Thus, absent entry of the Sale Order
with approval of the Termination Fee, the Debtors may
lose the opportunity to obtain what they believe to be
the highest or otherwise best offer for the Leases.    And,
as described below, the Agreement is subject to higher
or otherwise better proposals.    Approving the
Termination Fee will thus commit the Purchaser to
purchase the Leases under the Agreement, and the
Agreement would serve to start any additional bidding
for the Leases at a fair and reasonable purchase price.

21.    Payment of the Termination Fee will not
diminish the Debtors' estates.    The Debtors would not
expect to pay the Termination Fee unless they do so to
accept an alternative proposal, which would result in
even greater value to the Debtors' estates and their
stakeholders.    This is particularly true given the
Initial Minimum Overbid requirement (as defined below),
which ensures that other proposals represent higher or
otherwise better offers for the Leases taking into

account payment of the Termination Fee.  The Debtors

thus request that this Court authorize payment of the

Termination Fee pursuant to the terms and conditions of

the Agreement.

**D.    The Bidding Procedures.**

22.    To ensure the Debtors receive the

highest or otherwise best proposal for the Leases, the

Debtors will entertain alternate proposals for the Sale

of the Leases.  The Debtors accordingly request that

this Court order that any parties, including those

parties that previously submitted proposals, who wish to

submit an alternate proposal for consideration by the

Debtors be required to do so by June 2, 2009 at 4:00 p.m.

(ET) (the "Bid Deadline").  Upon receipt of any

alternate proposal that the Debtors deem to be a

Qualified Bid (as defined herein), the Debtors will

provide the Landlord with Adequate Assurance Information

(as defined herein) from the party who submits a

Qualified Bid.

23.    If the Debtors receive any Qualified

Bids, the Debtors would hold an auction (the "Auction")

on June 3, 2009 at a time to be determined and at a

place to be determined in Richmond, Virginia (or telephonically).  The Debtors will advise the Purchaser, the Landlord, the Sublessee, and all other parties that submitted a Qualified Bid of the Auction.

24.   At the conclusion of any Auction, the Debtors, in consultation with their advisors (and representatives of the Creditors' Committee), would determine the highest or otherwise best bid (the "Successful Bid") and would provide the Landlord with notice of the Successful Bid.

25.   Following the Auction, if any, the Debtors intend to proceed with a hearing to approve the Sale of the Leases on June 3, 2009 at 2:00 p.m. (ET) (the "Sale Hearing").

26.   If no Qualified Bids other than the bid of the Purchaser are received, the Debtors would proceed with the Sale to the Purchaser following entry of the Sale Order.  If the Debtors receive additional Qualified Bids, then at the Sale Hearing, the Debtors would seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder").  A bid would not

be deemed accepted by the Debtors unless and until
approved by the Court.

27.    Following approval of the Sale to the
Successful Bidder, if the Successful Bidder fails to
consummate the sale for specified reasons, then the
Alternate Bid would be deemed to be the Successful Bid
and the Debtors would be permitted to effectuate a sale
and assignment to the Alternate Bidder without further
order of the Court.

28.    To ensure that only bidders with a
serious interest in the purchase of the Leases
participate in the bidding process, the Debtors would
only consider the "Qualified Bids" of "Qualified
Bidders."  To be considered a "Qualified Bid" and a
"Qualified Bidder" for purposes of the Auction, the
person or entity submitting the bid would be required to
submit an offer by the Bid Deadline that includes:

> (a)    an executed copy of the Agreement marked
> to show those amendments and
> modifications to the Agreement that the
> Qualified Bidder proposes (such modified
> Agreement, a "Marked Agreement"),
> including modifications to the Purchase
> Price, which price must be at least
> $230,000 (the "Initial Minimum Overbid");
> The Landlord may credit bid the Proposed

Cure Amount (as defined below) as part of
its Initial Minimum Overbid.  Any
additional amounts credit bid by the
Landlord will be taken into consideration
by the Debtors (after consultation with
their advisors and the Creditors'
Committee's advisors) in evaluating
whether such Landlord's bid is higher or
otherwise better and whether the Initial
Minimum Overbid requirement of the
Qualified Bid requirements has been
satisfied.

(b)   the potential bidder and the officer(s)
      or authorized agent(s) who will appear on
      behalf of such bidder;

(c)   evidence, satisfactory to the Debtors in
      their reasonable discretion (after
      consultation with representatives of the
      Creditors' Committee), of the bidder's
      financial wherewithal, including, but not
      limited to: (a) federal tax returns for
      two years, a current audited financial
      statement and/or bank account statements,
      (b) a description of intended use, and (c)
      any other information that the Debtors
      may reasonably request (the "Adequate
      Assurance Information");

(d)   a statement that the bid shall not be
      conditioned on the outcome of unperformed
      due diligence by the bidder or any
      financing contingency;

(e)   a good faith deposit (the "Good Faith
      Deposit") equal to 15% of the cash
      component of the purchase price; _provided_,
      _however_, that if the Landlord were to bid
      on its own Lease it would be exempt from
      this requirement.

(f)   an acknowledgement that the bidder's
      offer is irrevocable until two (2)

14

business days after the closing of the
Sale of the Leases; and

(g)   an acknowledgement that, in the event the
bidder is the Alternate Bidder, the
bidder will proceed with the purchase of
the Leases pursuant to the terms the
Marked Agreement, as may be modified at
the Auction.

29.   The Debtors reserve the right to

(i) determine in their reasonable discretion (after

consultation with representatives of the Creditors'

Committee) which offer is the highest or otherwise best

offer; (ii) reject at any time prior to the closing of a

Sale, without liability, any offer that the Debtors in

their reasonable discretion (after consultation with

representatives of the Creditors' Committee) deem to be

(x) inadequate or insufficient, (y) not in conformity

with the requirements of the bidding procedures or

applicable law or (z) contrary to the best interests of

the Debtors and their estates; (iii) re-open the Auction,

(iv) withdraw the Leases from the Auction, and (v) waive

the requirements of any of the bidding procedures with

respect to a potential or Qualified Bidder if the

Debtors determine in their business judgment (after

consultation with representatives of the Creditors'

Committee) it is in the best interests of their estates and creditors.

30.    Any objections to the Sale must be in writing and filed by June 2, 2009 at 4:00 p.m. (ET).

**D.    Cure Procedures.**

31.    The Debtors believe that they are current on their obligations under the Ground Lease, except with respect to the amount of $154,111.58 (the "Proposed Cure Amount").

32.    The Debtors propose that unless the Landlord files an objection to the Proposed Cure Amount asserting a different cure amount than the Proposed Cure Amount, on or before June 2, 2009 at 4:00 p.m. (ET), then Landlord should be forever barred from asserting a cure amount different from the Proposed Cure Amount (except for any amounts accruing from the date of the filing of this Motion through the date of assignment). Any such cure dispute caused by a valid and timely objection will be resolved, as necessary, either at the applicable Sale Hearing or such later date as may be agreed to among the parties or scheduled by the Court.

## APPLICABLE AUTHORITY

**I.   APPROVAL OF THE SALE OF THE LEASES IS WARRANTED
UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

33.   As set forth above, Bankruptcy Code
section 363(b)(1) authorizes a  trustee to "use, sell,
or lease" property of the estate with the Court's
approval.  11 U.S.C. § 363(b)(1).  Assets of the Debtors
may be sold outside of the ordinary course of business,
pursuant to Bankruptcy Code section 363(b)(1), if a
sound business purpose exists for doing so.  In re WBQ
P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing
Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th
Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214
B.R. 834, 836 (Bankr. E.D. Va. 1997).

34.   To satisfy the "sound business purpose
test," the debtor must demonstrate that (1) a sound
business reason or emergency justifies a pre-
confirmation sale; (2) the sale was proposed in good
faith; (3) the purchase price is fair and reasonable;
and (4) adequate and reasonable notice of the sale has
been provided.  In re WBQ P'ship, 189 B.R. at 102.

35.    Based upon the results of their analysis,
the Debtors' management and advisors have concluded that
the Sale of the Leases pursuant to the Agreement or a
higher or otherwise better offer would maximize the
value of the Leases for the estate.   Maximizing asset
value is a sound business purpose that warrants
authorizing the proposed Sale and Assignment.

36.    The Sale and Assignment of the Leases
will be subject to competing bids, thereby enhancing the
Debtors' ability to receive the highest or otherwise
best value for the Leases.   Consequently, the fairness
and reasonableness of the consideration to be received
by the Debtors will ultimately be demonstrated by a
"market check" through the auction process, which is the
best means for establishing whether a fair and
reasonable price is being paid.

37.    Moreover, the Debtors propose to provide
adequate notice of the Auction and the Sale Hearing as
set forth below.   In light of the circumstances, such
notice is reasonably calculated to provide timely and
adequate notice to the Debtors' major creditor
constituencies, those parties most interested in these

cases, those parties potentially interested in bidding
on the Leases and others whose interests are potentially
implicated by the proposed Sale and Assignment.

**II.    THE SALE PROCESS IS REASONABLE AND APPROPRIATE.**

38.    Bankruptcy Code section 363(b)(1)
provides that "[t]he trustee, after notice and a hearing,
may use, sell, or lease, other than in the ordinary
course of business, property of the estate."  11 U.S.C.
§ 363(b)(1).  Moreover, Bankruptcy Code section 105(a)
provides that "[t]he Court may issue any order, process,
or judgment that is necessary or appropriate to carry
out the provisions of this title."  11 U.S.C. § 105(a).

39.    The disposition of the Leases pursuant to
the terms reflected in the Agreement resulted from the
bids submitted for the Leases, pursuant to a marketing
process led by DJM.  Conducting a marketing process
through a third party broker represents an accepted
method of selling Leases.  Similar marketing processes
have been approved in other chapter 11 cases.  See, e.g.,
Ready v. Rice, 2006 WL 4550188 at *3 (D. Md. 2006); see
also In re Reading Broadcasting, Inc., 386 B.R. 562,

571-72 (Bankr. E.D. Pa. 2008); In re King-Wilson, 1998

WK 737887 at *4-5 (N.D. Cal. 1998).

40.   In addition, bid procedures similar those

Bid Procedures outlined above have been approved by this

Court in this case.

41.   Finally, the other interested parties are

provided with an opportunity to submit a higher or

otherwise better proposal and, if necessary, the Debtors

will conduct an auction.

42.   In light of the foregoing, the Debtors

submit that the Sale process is reasonable and

appropriate.

**III. THE TERMINATION FEE REQUESTED HEREIN IS REASONABLE
     AND SHOULD BE APPROVED.**

43.   In connection with Sale of the Leases,

the Court should authorize the Sellers to pay the

Termination Fee.

44.   Agreements to provide termination fees

and other bidding incentives are designed to compensate

a potential acquirer who serves as a catalyst that may

attract higher and better offers, and have been approved

in bankruptcy to encourage bidding. See In re Ryan, 261

B.R. 867, 870 (Bankr. E.D. Va. 2001).  Termination fees

can be advantageous to both buyers and sellers because

they encourage bidding to ensure that sellers receive

the highest or otherwise best offer while compensating

the buyer for the risk of being outbid.  See id.

45.  Termination fee fees are allowed as an

administrative expense claim against the estate if they

satisfy the standard of section 503(b)(1).  In re Tropea,

352 B.R. 766, 768 (Bankr. N.D.W.Va. 2006).  Thus, the

fee must reflect the actual and necessary cost of

preserving the estate.  See 11 U.S.C. § 503(b)(1).  See

also In re Tropea, 352 B.R. at 768.  In Calpine Corp. v.

O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy,

Inc.), 181 F.3d 527 (3d Cir. 1999), the United States

Court of Appeals for the Third Circuit explained how the

section 503(b)(1) standard applied to termination fees.

The Third Circuit Court of Appeals held that even though

bidding incentives are measured against a business

judgment standard in non-bankruptcy transactions, the

administrative expense provisions of Bankruptcy Code

section 503(b) govern in the bankruptcy context.

Accordingly, to be approved, bidding incentives must

provide some postpetition benefit to the debtor's estate. See id. at 533; see also In re Lamb, 2002 WL 31508913 (Bankr. D. Md. 2002) (implicitly adopting the administrative expense standard set forth in O'Brien).

46.   The O'Brien Court identified at least two instances in which bidding incentives may provide benefit to the estate.   First, benefit may be found if "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."   Id. at 537.   Second, when the availability of bidding incentives induce a bidder to research the value of the debtor and submit a bid that serves as a minimum or floor bid on which other bidders can rely, "the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth." Id.

47.   Here, the Debtors seek authority to use the Termination Fee in the event that the Purchaser is not ultimately the Successful Bidder.   The proposed Termination Fee is appropriate under Bankruptcy Code

section 503.  The Termination Fee is fair and reasonable
in amount, particularly in view of the efforts that will
have to be expended by the Purchaser.  Moreover, the
Agreement, including the Termination Fee provided for
therein, will enable the Debtors to secure an adequate
floor for an auction and, thus, insist that competing
bids be materially higher or otherwise better than the
purchase price pursuant to the Agreement (as
incorporated in the Initial Minimum Overbid requirement),
a clear benefit to the Debtors' estates.

48.   In sum, the Debtors' ability to offer the
Termination Fee enables them to ensure the Sale of the
Leases to a contractually-committed bidder at a price
that they believe to be fair while, at the same time,
providing them with the potential of even greater
benefit to the estates.

49.   Thus, the Termination Fee should be
approved.

**IV.   THE PURCHASER OR SUCCESSFUL BIDDER SHOULD BE
    AFFORDED THE PROTECTIONS OF SECTION 363(m) OF THE
    BANKRUPTCY CODE.**

50.   Section 363(m) of the Bankruptcy Code
provides:

> The reversal or modification on appeal of
> an authorization under subsection (b) or
> (c) of this section of a sale or lease of
> Leases does not affect the validity of a
> sale or lease under such authorization to
> an entity that purchased or leased such
> property in good faith, whether or not
> such entity knew of the pendency of the
> appeal, unless such authorization and
> such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not

define "good faith," the Fourth Circuit Court of Appeals

has "adopt[ed] the traditional equitable definition that

has been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and

without notice of adverse claims.'"  Willemain v. Kivitz,

764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

        51.  Section 363(n) of the Bankruptcy Code

further provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

52.    The Debtors submit, and will present
evidence at the Sale Hearing, that the Agreement
reflects an intensely negotiated, arm's length
transaction.   Throughout the negotiations, the Purchaser
has at all times acted in good faith.   Moreover, to the
extent that the assets are sold to a Successful Bidder,
it will be because of a well-planned competitive process
and negotiations at arm's length to be conducted at an
auction.   As a result of the foregoing, the Debtors
request that the Court make a finding that the Purchase
Price to be paid by the Purchaser or the Successful
Bidder constitutes reasonably equivalent value and fair
consideration under any applicable law.

53.    The Debtors, therefore, request that this
Court make a finding that the Purchaser or the
Successful Bidder, as the case may be, has purchased the
Leases in good faith within the meaning of section 363(m)
of the Bankruptcy Code.   Further, the Debtors request
that this Court make a finding that the Agreement or any
purchase agreement reached as a result of the bidding
procedures necessarily will comprise an arm's length,
intensely-negotiated transaction entitled to the

protections of section 363(m) of the Bankruptcy Code.

Because the Debtors have shown that the Purchaser's or

Successful Bidder's bid is not the product of fraud or

collusion between the Purchaser or Successful Bidder and

other bidders or the trustee, or an attempt to take

grossly unfair advantage of other bidders, the Debtors

further request that this Court make a finding that the

transactions contemplated by the Agreement are not

avoidable under section 363(n) of the Bankruptcy Code.

**V.    THE SALE OF THE LEASES FREE AND CLEAR OF ALL
INTERESTS SHOULD BE AUTHORIZED UNDER BANKRUPTCY
CODE SECTION 363(f).**

54.   To facilitate a sale of the Leases, the

Debtors request authorization to sell the Leases free

and clear of any and all interests, including claims,

liens, and encumbrances (collectively, all "Interests")

that may be asserted against such property.

55.   Under section 363(f) of the Bankruptcy

Code, a debtor in possession may sell property free and

clear of any interest in such property if, among other

things:

> (1) applicable nonbankruptcy law permits sale
> of such property free and clear of such
> interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide  dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

56.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

57.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc.,

189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain
meaning of the statute demonstrates, § 363 covers more
situations than just sales involving liens.").  Moreover,
courts have noted that the purpose of the "free and
clear" language is to allow the debtor to obtain a
maximum recovery on its assets in the marketplace.  See
In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr.
D. Del. Mar. 27, 2001).

58.  Accordingly, this Court should authorize
the Debtors to sell the Leases free and clear of any and
all Interests that may be asserted by any parties, with
any such Interests attaching to the net proceeds of the
sale of the Leases in the same order and priority and
subject to the same defenses as they exist against the
Leases.

## VI.   APPROVAL OF ASSUMPTION AND ASSIGNMENT OF THE LEASES IS WARRANTED UNDER BANKRUPTCY CODE SECTION 365.

59.  Under section 365(a) of the Bankruptcy
Code a debtor, "subject to the court's approval, may
assume or reject any executory contract or unexpired
lease of the debtor."  11 U.S.C. § 365(a).  Section
365(b)(1) of the Bankruptcy Code, in turn, codifies the

requirements for assuming an unexpired lease or

executory contract of a debtor.  It provides:

> If there has been a default in an
> executory contract or unexpired lease of
> the debtor, the trustee may not assume
> such contract or lease unless, at the
> time of the assumption of such contract
> or lease, the trustee –
>
> (A)  cures, or provides adequate
> assurance that the trustee will promptly
> cure, such default;
>
> (B)        compensates, or provides
> adequate assurance that the trustee will
> promptly compensate, a party other than
> the debtor to such contract or lease, for
> any actual pecuniary loss to such party
> resulting from such default; and
>
> (C)        provides adequate
> assurance of future performance under
> such contract or lease.

11 U.S.C. § 365(b)(1).

60.  Section 365(f)(2) of the Bankruptcy Code

provides that:

> The trustee may assign an executory contract
> or unexpired lease of the debtor only if –
>
> (A)  the trustee assumes such contract or
> lease in accordance with the provisions
> of this section; and
>
> (B)  adequate assurance of future
> performance by the assignee of such
> contract or lease is provided, whether or

> not there has been a default in such
> contract or lease.

11 U.S.C. § 365(f)(2).

61.   To the extent that any defaults exist under any of the Leases that are to be assumed and assigned in connection with the Sale, the Debtors (or the Successful Bidder) would cure any such default.

62.   Moreover, the bidding procedures are also designed to ensure that the Purchaser (or the Successful Bidder) has the financial resources to perform under the Leases and is required to provide adequate assurance of future performance under the Leases.

63.   Courts give the phrase "adequate assurance of future performance" a "practical, pragmatic construction." EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d Cir. 1993) (presence of adequate assurance should be "determined under the facts of each particular case"). Adequate assurance does not require a debtor to provide a guarantee of future performance; assurance is deemed adequate as long as performance is more probable than

not.  See Cinicola v. Scharffenberger, 248 F.3d 110, 120

n. 10 (3d Cir. 2001) ("Although no single solution will

satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of

performance." (quotations and citations omitted)); In re

Weirton Steel Corp., 2007 WL 2021896 at *5 (Bankr. N.D.

W. Va. July 6, 2007) ("Assurance is adequate if

performance is likely; that is more probable than not.").

        64.  Moreover, under section 365(f)(2)(B), the

primary determinant of adequate assurance of future

performance is whether rent will be paid.  In re Martin

Paint Stores, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996)

("[T]he primary focus of adequate assurance concerns the

assignee's ability to fulfill the financial obligations

under the lease.").

        65.  The bidding procedures require the

Purchaser (or the Successful Bidder) to submit evidence

of its financial wherewithal to perform under the Leases,

which is all that is necessary to satisfy the adequate

assurance of future performance requirement.  See In re

Sapolin Paints, Inc., 5 B.R. 412, 416-417, 420 (Bankr.

E.D.N.Y. 1980) (finding adequate assurance where

31

economic conditions definitively demonstrated assignee

would perform on contract and assignee submitted

statements showing positive net worth and income).

Moreover, the rent the Purchaser would collect from the

Sublessee would cover substantially all of the rent the

Purchaser would owe to the Landlord.  Finally, if

necessary, the Debtors will adduce facts at the Sale

Hearing demonstrating the financial wherewithal of any

purchaser, and its willingness and ability to perform

under the Leases to be assumed and assigned to it.

**VII. WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULES 6004 AND 6006 SHOULD BE WAIVED FOR ANY ORDER APPROVING THE SALE AND ASSIGNMENT OF THE LEASES.**

66.  Bankruptcy Rule 6004(h) provides that:

"[a]n order authorizing the use, sale, or lease of

property of the estate is stayed until the expiration of

10 days after entry of the order, unless the court

orders otherwise."  Fed. R. Bankr. P. 6004(h).

Similarly, Bankruptcy Rule 6006(d) provides that: "[a]n

order authorizing the trustee to assign an executory

contract or unexpired lease under Sec. 365(f) is stayed

until the expiration of 10 days after the entry of the

order, unless the court orders otherwise." Fed. R.
Bankr. P. 6006(d).

67.   The Debtors request that the Court waive
the ten-day stay of Bankruptcy Rules 6004 and 6006 with
respect to the Sale of the Leases following the entry of
the Sale Order.  By waiving such requirements, the
Debtors and the Purchaser or the Successful Bidder, as
applicable, will be able to immediately close the Sale,
which will result in a more immediate benefit to the
Debtors' estate.  Indeed, the Debtors will avoid any
further costs associated with obligations under the
Leases and realize the value from the Successful Bid
immediately.  Even more importantly, the Debtors two-
hundred ten (210) day deadline under section 365(d)(4)
to assume or reject the Leases expires on June 8, 2009.
Accordingly, waiver of the ten-day stays of Bankruptcy
Rules 6004 and 6006 is necessary to enable the Debtors
to close the Sale transaction in advance of the
expiration of the section 365(d)(4) deadline.

## NOTICE

68.   Notice of this Motion has been provided
to those parties entitled to notice under the Order

Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (D.I. 130;
the "Case Management Order"), as well as (a) all
entities known to have expressed an interest in a
transaction regarding the Leases during the past three
(3) months; and (b) all entities reasonably known to
have an interest in the Leases.  Notice of the entry of
the Order will be provided to the same parties.  The
Debtors submit that, under the circumstances, no other
or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

69.  Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors requests that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

### NO PRIOR REQUEST

70.  No previous request for the relief sought
herein has been made to this Court or any other court.

34

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: May 29, 2009
      Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM, LLP
                            Gregg M. Galardi, Esq.
                            Ian S. Fredericks, Esq.
                            P.O. Box 636
                            Wilmington, Delaware 19899-
                            0636 (302) 651-3000

                                  - and -

                            SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM, LLP
                            Chris L. Dickerson, Esq.
                            333 West Wacker Drive
                            Chicago, Illinois 60606
                            (312) 407-0700

                                  - and -

                            MCGUIREWOODS LLP

                            _/s/ Douglas M. Foley_____
                            Dion W. Hayes (VSB No. 34304)
                            Douglas Foley (VSB No. 34364)
                            One James Center
                            901 E. Cary Street
                            Richmond, Virginia 23219
                            (804) 775-1000

                            Counsel for Debtors and
                            Debtors in Possession