Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
           Debtors.           :   Jointly Administered
- - - - - - - - - - - - - - - x
```

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 365 (A) AUTHORIZING DEBTORS TO ENTER INTO AGREEMENT IN CONNECTION WITH SALE AND ASSIGNMENT OF UNEXPIRED LEASE AND SUBLEASES OF NONRESIDENTIAL REAL PROPERTY, (B) APPROVING SALE OF LEASE AND SUBLEASES FREE AND CLEAR OF ALL INTERESTS, AND (C) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (A) authorizing the Debtors to enter into an agreement, a copy of which is attached as <u>Exhibit A</u> to the Sale Order (the "Agreement"), with the Purchaser (as defined herein) for the assumption, assignment (the "Assignment"), and sale (the "Sale") of certain of the Debtors' Leases (as defined herein), (B) approving the Sale of the Leases free and clear of all interests and (C) granting related relief.  In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

**BACKGROUND**

**A.   The Bankruptcy Cases.**

3.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no

trustee or examiner has been appointed in these chapter 11 cases.

      6.   On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of on or about March 8, 2009, the going out of business sales concluded.

**B.   The Lease Procedures Order**

      7.   On February 19, 2009, the Court approved procedures for the sale or rejection of the Debtors' real property leases for the Debtors remaining retail stores and certain other locations (D.I. 2242, the "Lease Procedures Order").  The Lease Procedures Order authorized the Debtors to solicit bids and conduct auctions with respect to the Debtors' real property leases.  The Lease Procedures Order further provided procedures whereby the Debtors may reject those real

4

property leases for which the Debtors do not receive bids or that the Debtors otherwise wish to reject by providing seven-days written notice to the landlord (the "Rejection Notice"), without further hearing.

8.  On March 30, 2009, the Court approved modifications to the Lease Procedures Order (D.I. 2855, the "Modified Lease Procedures Order"), granting the Debtors additional time to market the certain of the Debtors' leases, including the Leases that are the subject of this Motion, beyond the March 31, 2009 automatic rejection date established in the Lease Procedures Order.  The Modified Lease Procedures Order also authorizes the Debtors to establish new bid deadlines and auction dates for these same leases.

**C.    The Leases.**

9.  Circuit City Stores, Inc. ("Tenant") is party to (i) that certain lease dated November 2, 1993 between St. Cloud Associates, as landlord, and Circuit City Stores, Inc., as tenant (the "Prime Lease"); (ii) that certain lease dated February 21, 1997 between Circuit City Stores, Inc., as sublessor, and TVI, Inc., as sublessee (the "TVI Sublease"); and (iii) that

5

certain lease dated March 2, 2000 between Circuit City Stores, Inc., as sublessor and Consolidated Stores Corporation, as sublessee (the "Consolidated Sublease" and together with the TVI Sublease, the "Subleases"), all for the premises (the "Premises") located at 3316 Division Street, St. Cloud, Minnesota (the Prime Lease and the Subleases, collectively, as the same may have been amended, assigned, supplemented or extended from time to time, the "Leases").

## RELIEF REQUESTED

10. By this Motion, the Debtors seek an order (A) authorizing the Debtors to enter into the Agreement in connection the Sale of the Leases, (B) approving the of the Sale of the Leases free and clear of all interests, and (C) granting related relief (the "Sale Order").

11. As more fully set forth below, after a comprehensive review, the Debtors believe that the assumption, assignment, and sale represents their best opportunity under the circumstances to maximize the value of the Leases. Therefore, the Sale is in the best interests of the Debtors' estates and stakeholders.

**BASIS FOR RELIEF**

**A.    Events Leading To The Sale.**

12.  In light of the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales, as described above, the Debtors have been left with various assets -- including the Leases -- for which they have no remaining use.  In contrast, the sale of such assets, including the Sale of the Leases, would result in significant proceeds for the Debtors' estate and creditors.

13.  Since at or about the time the going-out-of-business sales were commenced, the Debtors, along with their real estate advisor, DJM Realty, LLC ("DJM"), have been marketing the Leases.  As a result of these marketing efforts, the Debtors received an initial proposal to purchase the Leases from the Purchaser.  Upon reviewing this proposal and following further negotiations with the Purchaser, the Debtors determined that the proposal submitted by the Purchaser, as revised pursuant to negotiations with the Purchaser, was the highest or otherwise best offer for the Leases.  Thus,

7

the Debtors elected to proceed with the Sale of the Leases to the Purchaser.  Prior to and since receiving the proposal from the Purchaser, the Debtors and DJM have continued to market the Leases and to solicit bids from interested purchasers.  These marketing efforts have not yielded any additional bids and the Debtors do not believe further marketing would produce a competing bid.  To the extent other parties are interested in bidding on the Leases, please contact Debtors' undersigned counsel or DJM.

**B.    The Agreement.**

14.    The Agreement provides that the St. Cloud Associates (the "Purchaser") shall waive, release and forever discharge any and all claims it may have against the Debtors, including claims under Bankruptcy Code sections 365, 502 and 503, and all year end adjustments for 2009 and all prior years and any obligations or liabilities that would otherwise survive assignment of the Leases (the "Total Consideration").

15.    The Agreement further provides that, in exchange for the Total Consideration, the Purchaser shall succeed to the entirety of Debtors' rights and

obligations in the Leases due, accruing, arising or attributable to the time period occurring on or after the Effective Date and shall have the rights of the tenant (and sublandlord) thereunder.

16. The Agreement further provides that, on or prior to the Effective Date (as defined in the Agreement), the Debtors shall pay to the Purchaser, in cash or otherwise immediately available funds, $72,841.23 (the "Tax Payment"), which represents taxes owed through the Effective Date. In the event the Debtors subsequently receive amounts under the Subleases attributable to the period of time after the Effective Date, the Debtors shall promptly forward such amounts to Purchaser in accordance with the Agreement.

17. Finally, the Agreement provides that, upon the Effective Date, neither the Purchaser, the Debtors, nor the Debtors' estates shall have liability for cure claims of, from, or related to the Leases for any defaults or monetary obligations thereunder, except for the Tax Payment.

**APPLICABLE AUTHORITY**

**I.     APPROVAL OF THE SALE OF THE LEASES IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

18.  As set forth above, Bankruptcy Code section 363(b)(1) authorizes a trustee to "use, sell, or lease" property of the estate with the Court's approval.  11 U.S.C. § 363(b)(1).  Assets of the Debtors may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so.  In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

19.  To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable; and (4) adequate and reasonable notice of the sale has been provided.  In re WBQ P'ship, 189 B.R. at 102.

20. Based upon the results of their analysis, the Debtors' management and advisors have concluded that the Sale of the Leases pursuant to the Agreement would maximize the value of the Leases for the estate. Maximizing asset value is a sound business purpose that warrants authorizing the proposed Sale and Assignment.

21. The Sale and Assignment of the Leases is the result of a lengthy and comprehensive marketing process, thereby ensuring that the Debtors received the highest or otherwise best value for the Leases. Consequently, the fairness and reasonableness of the consideration to be received by the Debtors has been demonstrated by a "market check", which is the best means for establishing whether a fair and reasonable price is being paid.

22. Moreover, the Debtors have provided adequate notice of the Modified Lease Procedures Order and will provide adequate notice of this Motion, as set forth below. In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these cases, those

11

parties whose interests are potentially implicated by the proposed Sale and Assignment.

**II. THE PURCHASER SHOULD BE AFFORDED THE PROTECTIONS OF SECTION 363(m) OF THE BANKRUPTCY CODE.**

23. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of Leases does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Fourth Circuit Court of Appeals has "adopt[ed] the traditional equitable definition that has been adopted by various courts of appeal: 'one who purchases the assets for value, in good faith, and without notice of adverse claims.'" Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

24. Section 363(n) of the Bankruptcy Code further provides, in relevant part, that:

> The trustee may avoid a sale under this section if the sale price was controlled

12

>by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.

25. The Debtors submit, and will present evidence at the Sale Hearing, that the Agreement reflects an intensely negotiated, arm's length transaction. Throughout the negotiations, the Purchaser has at all times acted in good faith. As a result of the foregoing, the Debtors request that the Court make a finding that the Total Consideration to be provided by the Purchaser constitutes reasonably equivalent value and fair consideration under any applicable law.

26. The Debtors, therefore, request that this Court make a finding that the Purchaser has purchased the Leases in good faith within the meaning of section 363(m) of the Bankruptcy Code. Further, the Debtors request that this Court make a finding that the Agreement comprises an arm's length, intensely-negotiated transaction entitled to the protections of section 363(m) of the Bankruptcy Code. Because the

13

Debtors have shown that the Purchaser's bid is not the product of fraud or collusion between the Purchaser and the trustee, or an attempt to take grossly unfair advantage of any other party, the Debtors further request that this Court make a finding that the transactions contemplated by the Agreement are not avoidable under section 363(n) of the Bankruptcy Code.

### III. THE SALE OF THE LEASES FREE AND CLEAR OF ALL INTERESTS SHOULD BE AUTHORIZED UNDER BANKRUPTCY CODE SECTION 363(f).

27. To facilitate a sale of the Leases, the Debtors request authorization to sell the Leases free and clear of any and all interests, including claims, liens, and encumbrances (collectively, all "Interests") that may be asserted against such property.

28. Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;

14

>    (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
>    (4) such interest is in bona fide dispute; or
>
>    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

29. Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met. See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

30. Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively. See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more

15

situations than just sales involving liens."). Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace. See In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

31. Accordingly, this Court should authorize the Debtors to sell the Leases free and clear of any and all Interests that may be asserted by any parties, with any such Interests attaching to the net proceeds of the sale of the Leases in the same order and priority and subject to the same defenses as they exist against the Leases.

**IV. WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULES 6004 AND 6006 SHOULD BE WAIVED FOR ANY ORDER APPROVING THE SALE AND ASSIGNMENT OF THE LEASES.**

32. Bankruptcy Rule 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property of the estate is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) provides that: "[a]n order authorizing the trustee to assign an executory

contract or unexpired lease under Sec. 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

33.  The Debtors request that the Court waive the ten-day stay of Bankruptcy Rules 6004 and 6006 with respect to the Sale of the Leases following the entry of the Sale Order.  By waiving such requirements, the Debtors and the Purchaser or the Successful Bidder, as applicable, will be able to immediately close the Sale, which will result in a more immediate benefit to the Debtors' estate.  Indeed, the Debtors will avoid any further costs associated with obligations under the Leases and realize the value from the Successful Bid immediately.  Even more importantly, the Debtors two-hundred and ten (210) day deadline under Bankruptcy Code section 365(d)(4) to assume or reject the Leases expires on June 8, 2009.  Accordingly, waiver of the ten-day stays of Bankruptcy Rules 6004 and 6006 is necessary to enable the Debtors to close the Sale transaction in advance of the expiration of the section 365(d)(4) deadline.

**NOTICE**

34.   Notice of this Motion has been provided to those parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order"), as well as (a) all entities known to have expressed an interest in a transaction regarding the Leases during the past three (3) months; and (b) all entities reasonably known to have an interest in the Leases.  Notice of the entry of the Order will be provided to the same parties.  The Debtors submit that, under the circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

35.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors requests that the requirement that all motions be accompanied by a separate memorandum of law be waived.

**NO PRIOR REQUEST**

36. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: May 28, 2009
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession