Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 363 AND 365 (A) AUTHORIZING DEBTORS TO
ENTER INTO AGREEMENT IN CONNECTION WITH SALE AND
ASSIGNMENT OF UNEXPIRED LEASE OF NONRESIDENTIAL REAL
PROPERTY, SUBJECT TO HIGHER OR OTHERWISE BETTER BIDS,
(B) APPROVING TERMINATION FEE IN CONNECTION THEREWITH,
(C) APPROVING SALE OF LEASE FREE AND CLEAR OF ALL
INTERESTS, AND (D) GRANTING RELATED RELIEF**

          The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), pursuant to
sections 105, 363 and 365 of title 11 of the United
States Code (the "Bankruptcy Code") and Rules 2002, 6004
and 6006 of the Federal Rules of Bankruptcy Procedure
(the "Bankruptcy Rules"), for entry of an order
(A) authorizing the Debtors to enter into an agreement,
a copy of which is attached as Exhibit A to the Sale
Order (the "Agreement"), with the Purchaser (as defined
herein) for the assumption, assumption, and sale (the
"Sale") of the Lease (as defined herein), subject to
higher or otherwise better proposals, (B)  approving the
Termination Fee (as defined below) in connection
therewith, (C) approving the Sale of the Lease free and
clear of all interests and (D) granting related relief.

---

[1]   The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2

In support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

**BACKGROUND**

**A.      The Bankruptcy Cases.**

3.      On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.      On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured

3

creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.     On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  The going out of business sales concluded on or about March 8, 2009.

**B.    The Lease Procedures Order**

7.     On February 19, 2009, the Court approved procedures for the sale or rejection of the Debtors' real property leases for the Debtors remaining retail stores and certain other locations (D.I. 2242, the "Lease Procedures Order").  The Lease Procedures Order authorized the Debtors to solicit bids and conduct auctions with respect to the Debtors' real property leases.  The Lease Procedures Order further provided

4

procedures whereby the Debtors may reject those real property leases for which the Debtors do not receive bids or that the Debtors otherwise wish to reject by providing seven-days written notice to the landlord (the "Rejection Notice"), without further hearing.

8.    On March 30, 2009, the Court approved modifications to the Lease Procedures Order (D.I. 2855, the "Modified Lease Procedures Order"), granting the Debtors additional time to market the certain of the Debtors' leases, including the Lease that are the subject of this Motion, beyond the March 31, 2009 automatic rejection date established in the Lease Procedures Order.  The Modified Lease Procedures Order also authorizes the Debtors to establish new bid deadlines and auction dates for these same leases.

**C.    The Lease.**

9.    Circuit City Stores, Inc. ("Tenant"), is party to a ground lease dated June 15, 1995 with SEA Properties I, LLC ("Landlord") for the premises (the "Premises") located at 1321 Huguenot Road, Midlothian, Virginia (the "Lease").

MSW - Draft May 21, 2009 - 4:49 PM

**RELIEF REQUESTED**

10.   By this Motion, the Debtors seek an order (A) authorizing the Debtors to enter into the Agreement in connection the Sale of the Lease, subject to higher or otherwise better proposals, (B) approving the Termination Fee in connection therewith, (C) approving the of the Sale of the Lease free and clear of all interests, and (D) granting related relief (the "Sale Order").

11.   As more fully set forth below, after a comprehensive review, the Debtors believe that the assumption, assignment, and sale represents their best opportunity under the circumstances to maximize the value of the Lease.  Therefore, the Sale is in the best interests of the Debtors' estates and stakeholders.

**BASIS FOR RELIEF**

**A.   Events Leading To The Sale.**

12.   In light of the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales, as described above, the Debtors have been left with various assets -- including the Lease --

6

for which they have no remaining use.  In contrast, the sale of such assets, including the Sale of the Lease, would result in significant proceeds for the Debtors' estate and creditors.

13.   Since at or about the time the going-out-of-business sales were commenced, the Debtors, along with their real estate advisor, DJM Realty, LLC ("DJM"), have been marketing the Lease.  As a result of these marketing efforts, the Debtors received various proposals to purchase the Lease.  Upon reviewing these proposals, the Debtors determined that the proposal submitted by the Purchaser was the highest or otherwise best proposal of those received.  Thus, the Debtors elected to proceed with the Sale of the Lease to the Purchaser.

**B.    The Agreement.**

14.   The Agreement provides that Creative Realty Management LLC (the "Purchaser") shall pay $175,000.00 to the Debtors, $26,250.00 of which has been deposited in escrow and the balance to be paid upon closing of the Sale.  As adequate assurance of future performance, the Purchaser has provided federal tax

7

returns for the years 2007 and 2008, which have been
forwarded to the Landlord.

**C.    Termination Fee.**

15.    The Debtors have agreed to pay the
Purchaser a break-up fee of $40,000.00 (the "Termination
Fee") if, and only if (i) Purchaser is not in breach of
or default under the Agreement, (ii) the Agreement is
not conditioned on conducting any further, or completing,
due diligence and (iii) the Debtors consummate the Sale
of the Lease with a higher or otherwise better bidder at
the Auction.

16.    The Purchaser has expended, and likely
will continue to expend, considerable time, money, and
energy pursuing the Sale and has engaged in arm's length
and good faith negotiations regarding a possible sale of
the Lease.  The Agreement is the culmination of these
efforts.

17.    In recognition of this expenditure of
time, energy, and resources, the Debtors have agreed to
the Termination Fee.  Specifically, the Agreement
provides for, and the Debtors respectfully request that
the Sale Order approve, the Termination Fee payable by

8

the Debtors to the Purchaser in the amount of $40,000 if the Debtors terminate the Agreement to close an alternative transaction, so long as the Purchaser is not in breach of the Agreement and the Agreement is not conditioned on conducting or completing any further due diligence.

18.   The Debtors believe that the proposed Termination Fee is fair and reasonable in view of (a) the analysis, due diligence investigation, and negotiation undertaken by the Purchaser in connection with the Sale and (b) the fact that the Purchaser's efforts would maximize the value of the Lease for the benefit of all stakeholders, whether as a result of consummating the Sale pursuant to the Agreement or by generating a higher or otherwise better offer.

19.   The Purchaser is unwilling to keep open its offer to purchase the Lease under the terms of the Agreement unless this Court authorizes payment of the Termination Fee.   Thus, absent entry of the Sale Order with approval of the Termination Fee, the Debtors may lose the opportunity to obtain what they believe to be the highest or otherwise best offer for the Lease.   And,

9

as described below, the Agreement is subject to higher or otherwise better proposals.  Approving the Termination Fee will thus commit the Purchaser to purchase the Lease under the Agreement, and the Agreement would serve to start any additional bidding for the Lease at a fair and reasonable purchase price.

20.  Payment of the Termination Fee will not diminish the Debtors' estates.  The Debtors would not expect to pay the Termination Fee unless they do so to accept an alternative proposal, which would result in even greater value to the Debtors' estates and their stakeholders.  This is particularly true given the Initial Minimum Overbid requirement (as defined below), which ensures that other proposals represent higher or otherwise better offers for the Lease taking into account payment of the Termination Fee.  The Debtors thus request that this Court authorize payment of the Termination Fee pursuant to the terms and conditions of the Agreement.

**D.    The Bidding Procedures.**

21.  To ensure the Debtors receive the highest or otherwise best proposal for the Lease, the

10

Debtors will entertain alternate proposals for the Sale of the Lease.  The Debtors accordingly request that this Court order that any parties, including those parties that previously submitted proposals, who wish to submit an alternate proposal for consideration by the Debtors be required to do so by June 2, 2009 at 4:00 p.m. (ET) (the "Bid Deadline").  Upon receipt of any alternate proposal that the Debtors deem to be a Qualified Bid (as defined herein), the Debtors will provide the Landlord with Adequate Assurance Information (as defined herein) from the party who submits a Qualified Bid.

22.   If the Debtors receive any Qualified Bids, the Debtors would hold an auction (the "Auction") on June 3, 2009 at a time to be determined and at a place to be determined in Richmond, Virginia (or telephonically).  The Debtors will advise the Purchaser, the Landlord, and all other parties that submitted a Qualified Bid of the Auction.

23.   At the conclusion of any Auction, the Debtors, in consultation with their advisors (and representatives of the Creditors' Committee), would determine the highest or otherwise best bid (the

11

"Successful Bid") and would provide the Landlord with notice of the Successful Bid.

24.    Following the Auction, if any, the Debtors intend to proceed with a hearing to approve the Sale of the Lease on June 3, 2009 at 2:00 p.m. (ET) (the "Sale Hearing").

25.    If no Qualified Bids other than the bid of the Purchaser are received, the Debtors would proceed with the Sale to the Purchaser following entry of the Sale Order.  If the Debtors receive additional Qualified Bids, then, at the Sale Hearing, the Debtors would seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder").  A bid would not be deemed accepted by the Debtors unless and until approved by the Court.

26.    Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and the Debtors would be permitted to effectuate a sale

12

and assignment to the Alternate Bidder without further order of the Court.

27.    To ensure that only bidders with a serious interest in the purchase of the Lease participate in the bidding process, the Debtors would only consider the "Qualified Bids" of "Qualified Bidders."  To be considered a "Qualified Bid" and a "Qualified Bidder" for purposes of the Auction, the person or entity submitting the bid would be required to submit an offer by the Bid Deadline that includes:

(a)    an executed copy of the Agreement marked to show those amendments and modifications to the Agreement that the Qualified Bidder proposes (such modified Agreement, a "Marked Agreement"), including modifications to the Purchase Price, which price must be at least $230,000 (the "Initial Minimum Overbid"); The Landlord may credit bid the Proposed Cure Amount (as defined below) as part of its Initial Minimum Overbid.  Any additional amounts credit bid by the Landlord will be taken into consideration by the Debtors (after consultation with their advisors and the Creditors' Committee's advisors) in evaluating whether such Landlord's bid is higher or otherwise better and whether the Initial Minimum Overbid requirement of the Qualified Bid requirements has been satisfied.

13

(b)  the potential bidder and the officer(s)
or authorized agent(s) who will appear on
behalf of such bidder;

(c)  evidence, satisfactory to the Debtors in
their reasonable discretion (after
consultation with representatives of the
Creditors' Committee), of the bidder's
financial wherewithal, including, but not
limited to: (a) federal tax returns for
two years, a current audited financial
statement and/or bank account statements,
(b) a description of intended use, and (c)
any other information that the Debtors
may reasonably request (the "Adequate
Assurance Information");

(d)  a statement that the bid shall not be
conditioned on the outcome of unperformed
due diligence by the bidder or any
financing contingency;

(e)  a good faith deposit (the "Good Faith
Deposit") equal to 15% of the cash
component of the purchase price; _provided_,
_however_, that if the Landlord were to bid
on its own Lease it would be exempt from
this requirement.

(f)  an acknowledgement that the bidder's
offer is irrevocable until two (2)
business days after the closing of the
Sale of the Lease; and

(g)  an acknowledgement that, in the event the
bidder is the Alternate Bidder, the
bidder will proceed with the purchase of
the Lease pursuant to the terms the
Marked Agreement, as may be modified at
the Auction.

28.  The Debtors reserve the right to

(i) determine in their reasonable discretion (after

14

consultation with representatives of the Creditors'
Committee) which offer is the highest or otherwise best
offer; (ii) reject at any time prior to the closing of a
Sale, without liability, any offer that the Debtors in
their reasonable discretion (after consultation with
representatives of the Creditors' Committee) deem to be
(x) inadequate or insufficient, (y) not in conformity
with the requirements of the bidding procedures or
applicable law or (z) contrary to the best interests of
the Debtors and their estates; (iii) re-open the Auction,
(iv) withdraw the Lease from the Auction, and (v) waive
the requirements of any of the bidding procedures with
respect to a potential or Qualified Bidder if the
Debtors determine in their business judgment (after
consultation with representatives of the Creditors'
Committee) it is in the best interests of their estates
and creditors.

29.  Any objections to the Sale must be made
in writing and filed on or before June 2, 2009 at 4:00
p.m. (ET).

**D.    Cure Procedures.**

30.    The Debtors believe that they are current on their obligations under the Lease, except with respect to the amount of $48,946.85 (the "Proposed Cure Amount").

31.    The Debtors propose that unless the Landlord files an objection to the Proposed Cure Amount asserting a different cure amount than the Proposed Cure Amount, on or before June 2, 2009 at 4:00 p.m. (ET), then Landlord should be forever barred from asserting a cure amount different from the Proposed Cure Amount (except for any amounts accruing from the date of the filing of this Motion through the date of assignment). Any such cure dispute caused by a valid and timely objection will be resolved, as necessary, either at the applicable Sale Hearing or such later date as may be agreed to among the parties or scheduled by the Court.

**APPLICABLE AUTHORITY**

**I.    APPROVAL OF THE SALE OF THE LEASE IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

32.    As set forth above, Bankruptcy Code section 363(b)(1) authorizes a  trustee to "use, sell,

16

or lease" property of the estate with the Court's approval.  11 U.S.C. § 363(b)(1).  Assets of the Debtors may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so.  In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

33.  To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable; and (4) adequate and reasonable notice of the sale has been provided.  In re WBQ P'ship, 189 B.R. at 102.

34.  Based upon the results of their analysis, the Debtors' management and advisors have concluded that the Sale of the Lease pursuant to the Agreement or a higher or otherwise better offer would maximize the value of the Lease for the estate.  Maximizing asset

17

value is a sound business purpose that warrants authorizing the proposed Sale and Assignment.

35.   The Sale and Assignment of the Lease will be subject to competing bids, thereby enhancing the Debtors' ability to receive the highest or otherwise best value for the Lease.  Consequently, the fairness and reasonableness of the consideration to be received by the Debtors will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

36.   Moreover, the Debtors propose to provide adequate notice of the Auction and the Sale Hearing as set forth below.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the Lease and others whose interests are potentially implicated by the proposed Sale and Assignment.

18

## II.   THE SALE PROCESS IS REASONABLE AND APPROPRIATE.

37. Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

38. The disposition of the Lease pursuant to the terms reflected in the Agreement resulted from the bids submitted for the Lease, pursuant to a marketing process led by DJM.  Conducting a marketing process through a third party broker represents an accepted method of selling Lease.  Similar marketing processes have been approved in other chapter 11 cases.  See, e.g., Ready v. Rice, 2006 WL 4550188 at *3 (D. Md. 2006); see also In re Reading Broadcasting, Inc., 386 B.R. 562, 571-72 (Bankr. E.D. Pa. 2008); In re King-Wilson, 1998 WK 737887 at *4-5 (N.D. Cal. 1998).

754852.01-Chicago Server 2A                                    MSW - Draft May 21, 2009 - 4:49 PM

39.   In addition, bid procedures similar those Bid Procedures outlined above have been approved by this Court in this case.

40.   Finally, the other interested parties are provided with an opportunity to submit a higher or otherwise better proposal and, if necessary, the Debtors will conduct an auction.

41.   In light of the foregoing, the Debtors submit that the Sale process is reasonable and appropriate.

**III. THE TERMINATION FEE REQUESTED HEREIN IS REASONABLE AND SHOULD BE APPROVED.**

42.   In connection with Sale of the Lease, the Court should authorize the Sellers to pay the Termination Fee.

43.   Agreements to provide termination fees and other bidding incentives are designed to compensate a potential acquirer who serves as a catalyst that may attract higher and better offers, and have been approved in bankruptcy to encourage bidding. See In re Ryan, 261 B.R. 867, 870 (Bankr. E.D. Va. 2001).  Termination fees can be advantageous to both buyers and sellers because

20

they encourage bidding to ensure that sellers receive the highest or otherwise best offer while compensating the buyer for the risk of being outbid.  See id.

44.  Termination fees are allowed as an administrative expense claim against the estate if they satisfy the standard of section 503(b)(1).  In re Tropea, 352 B.R. 766, 768 (Bankr. N.D.W. Va. 2006).  Thus, the fee must reflect the actual and necessary cost of preserving the estate.  See 11 U.S.C. § 503(b)(1).  See also In re Tropea, 352 B.R. at 768.  In Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit explained how the section 503(b)(1) standard applied to termination fees. The Third Circuit Court of Appeals held that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of Bankruptcy Code section 503(b) govern in the bankruptcy context. Accordingly, to be approved, bidding incentives must provide some postpetition benefit to the debtor's estate. See id. at 533; see also In re Lamb, 2002 WL 31508913

21

(Bankr. D. Md. 2002) (implicitly adopting the administrative expense standard set forth in O'Brien).

45.   The O'Brien Court identified at least two instances in which bidding incentives may provide benefit to the estate.  First, benefit may be found if "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  Id. at 537.  Second, when the availability of bidding incentives induce a bidder to research the value of the debtor and submit a bid that serves as a minimum or floor bid on which other bidders can rely, "the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth." Id.

46.   Here, the Debtors seek authority to use the Termination Fee in the event that the Purchaser is not ultimately the Successful Bidder.  The proposed Termination Fee is appropriate under Bankruptcy Code section 503.  The Termination Fee is fair and reasonable in amount, particularly in view of the efforts that will

22

have to be expended by the Purchaser.  Moreover, the

Agreement, including the Termination Fee provided for

therein, will enable the Debtors to secure an adequate

floor for an auction and, thus, insist that competing

bids be materially higher or otherwise better than the

purchase price pursuant to the Agreement (as

incorporated in the Initial Minimum Overbid requirement),

a clear benefit to the Debtors' estates.

47.   In sum, the Debtors' ability to offer the

Termination Fee enables them to ensure the Sale of the

Lease to a contractually-committed bidder at a price

that they believe to be fair while, at the same time,

providing them with the potential of even greater

benefit to the estates.

48.   Thus, the Termination Fee should be

approved.

**IV.   THE PURCHASER OR SUCCESSFUL BIDDER SHOULD BE
AFFORDED THE PROTECTIONS OF SECTION 363(m) OF THE
BANKRUPTCY CODE.**

49.   Section 363(m) of the Bankruptcy Code

provides:

>    The reversal or modification on appeal of
>    an authorization under subsection (b) or
>    (c) of this section of a sale or lease of

23

> Lease does not affect the validity of a
> sale or lease under such authorization to
> an entity that purchased or leased such
> property in good faith, whether or not
> such entity knew of the pendency of the
> appeal, unless such authorization and
> such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not
define "good faith," the Fourth Circuit Court of Appeals
has "adopt[ed] the traditional equitable definition that
has been adopted by various courts of appeal: 'one who
purchases the assets for value, in good faith, and
without notice of adverse claims.'"  <u>Willemain v. Kivitz</u>,
764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

50.  Section 363(n) of the Bankruptcy Code
further provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

51.  The Debtors submit, and will present
evidence at the Sale Hearing, that the Agreement
reflects an intensely negotiated, arm's length

24

transaction.  Throughout the negotiations, the Purchaser
has at all times acted in good faith.  Moreover, to the
extent that the assets are sold to a Successful Bidder,
it will be because of a well-planned competitive process
and negotiations at arm's length to be conducted at an
auction.  As a result of the foregoing, the Debtors
request that the Court make a finding that the Purchase
Price to be paid by the Purchaser or the Successful
Bidder constitutes reasonably equivalent value and fair
consideration under any applicable law.

        52.  The Debtors, therefore, request that this
Court make a finding that the Purchaser or the
Successful Bidder, as the case may be, has purchased the
Lease in good faith within the meaning of section 363(m)
of the Bankruptcy Code.  Further, the Debtors request
that this Court make a finding that the Agreement or any
purchase agreement reached as a result of the bidding
procedures necessarily will comprise an arm's length,
intensely-negotiated transaction entitled to the
protections of section 363(m) of the Bankruptcy Code.
Because the Debtors have shown that the Purchaser's or
Successful Bidder's bid is not the product of fraud or

collusion between the Purchaser or Successful Bidder and
other bidders or the trustee, or an attempt to take
grossly unfair advantage of other bidders, the Debtors
further request that this Court make a finding that the
transactions contemplated by the Agreement are not
avoidable under section 363(n) of the Bankruptcy Code.

**V.    THE SALE OF THE LEASE FREE AND CLEAR OF ALL
       INTERESTS SHOULD BE AUTHORIZED UNDER BANKRUPTCY
       CODE SECTION 363(f).**

53.    To facilitate a sale of the Lease, the
Debtors request authorization to sell the Lease free and
clear of any and all interests, including claims, liens,
and encumbrances (collectively, all "Interests") that
may be asserted against such property.

54.    Under section 363(f) of the Bankruptcy
Code, a debtor in possession may sell property free and
clear of any interest in such property if, among other
things:

> (1) applicable nonbankruptcy law permits sale
> of such property free and clear of such
> interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at
> which such property is sold is greater than

26

the aggregate value of all liens on such
property;

(4) such interest is in bona fide   dispute;
or

(5) such entity could be compelled, in a legal
or equitable proceeding, to accept a money
satisfaction of such interest.

11 U.S.C. § 363(f).

55.  Section 363(f) permits the sale of estate
property free and clear of interests if any one of the
five conditions above is met.  See, e.g., In re Laines,
352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

56.  Courts have held that the authority of a
debtor to sell assets free and clear of interests is
broad and should be read expansively.  See In re TWA,
Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United
Mine Workers of Am. 1992 Benefit Plan v. Leckie
Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99
F.3d 573, 582 (4th Cir. 1996) (holding that the phrase
"any interest in property" includes more than just in
rem interests); In re P.K.R. Convalescent Centers, Inc.,
189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain
meaning of the statute demonstrates, § 363 covers more
situations than just sales involving liens.").  Moreover,

27

courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace.  See In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

57.  Accordingly, this Court should authorize the Debtors to sell the Lease free and clear of any and all Interests that may be asserted by any parties, with any such Interests attaching to the net proceeds of the sale of the Lease in the same order and priority and subject to the same defenses as they exist against the Lease.

**VI.  APPROVAL OF ASSUMPTION AND ASSIGNMENT OF THE LEASE IS WARRANTED UNDER BANKRUPTCY CODE SECTION 365.**

58.  Under section 365(a) of the Bankruptcy Code a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor.  It provides:

> If there has been a default in an
> executory contract or unexpired lease of

28

the debtor, the trustee may not assume
such contract or lease unless, at the
time of the assumption of such contract
or lease, the trustee –

 (A) cures, or provides adequate
assurance that the trustee will promptly
cure, such default;

 (B) compensates, or provides
adequate assurance that the trustee will
promptly compensate, a party other than
the debtor to such contract or lease, for
any actual pecuniary loss to such party
resulting from such default; and

 (C) provides adequate assurance of
future performance under such contract or
lease.

11 U.S.C. § 365(b)(1).

 59. Section 365(f)(2) of the Bankruptcy Code

provides that:

The trustee may assign an executory contract
or unexpired lease of the debtor only if –

(A) the trustee assumes such contract or
lease in accordance with the provisions
of this section; and

(B) adequate assurance of future
performance by the assignee of such
contract or lease is provided, whether or
not there has been a default in such
contract or lease.

754852.01-Chicago Server 2A                              MSW - Draft May 21, 2009 - 4:49 PM

11 U.S.C. § 365(f)(2).

60. To the extent that any defaults exist under the Lease that is to be assumed and assigned in connection with the Sale, the Debtors (or the Successful Bidder) would cure any such default.

61. Moreover, the bidding procedures are also designed to ensure that the Purchaser (or the Successful Bidder) has the financial resources to perform under the Lease and is required to provide adequate assurance of future performance under the Lease.

62. Courts give the phrase "adequate assurance of future performance" a "practical, pragmatic construction." EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d Cir. 1993) (presence of adequate assurance should be "determined under the facts of each particular case"). Adequate assurance does not require a debtor to provide a guarantee of future performance; assurance is deemed adequate as long as performance is more probable than not. See Cinicola v. Scharffenberger, 248 F.3d 110, 120

754852.01-Chicago Server 2A                    MSW - Draft May 21, 2009 - 4:49 PM

n. 10 (3d Cir. 2001) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance." (quotations and citations omitted)); In re Weirton Steel Corp., 2007 WL 2021896 at *5 (Bankr. N.D. W. Va. July 6, 2007) ("Assurance is adequate if performance is likely; that is more probable than not.").

63.   The bidding procedures require the Purchaser (or the Successful Bidder) to submit evidence of its financial wherewithal to perform under the Lease, which is all that is necessary to satisfy the adequate assurance of future performance requirement. See In re Sapolin Paints, Inc., 5 B.R. 412, 416-417, 420 (Bankr. E.D.N.Y. 1980) (finding adequate assurance where economic conditions definitively demonstrated assignee would perform on contract and assignee submitted statements showing positive net worth and income).

64.   Finally, if necessary, the Debtors will adduce facts at the Sale Hearing demonstrating the financial wherewithal of any purchaser, and its willingness and ability to perform under the Lease to be assumed and assigned to it.

31

## VII. WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULES 6004 AND 6006 SHOULD BE WAIVED FOR ANY ORDER APPROVING THE SALE AND ASSIGNMENT OF THE LEASE.

65. Bankruptcy Rule 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property of the estate is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) provides that: "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under Sec. 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

66. The Debtors request that the Court waive the ten-day stays of Bankruptcy Rules 6004 and 6006 with respect to the Sale of the Lease following the entry of the Sale Order. By waiving such requirements, the Debtors and the Purchaser or the Successful Bidder, as applicable, will be able to immediately close the Sale, which will result in a more immediate benefit to the Debtors' estate. Indeed, the Debtors will avoid any further costs associated with obligations under the

32

Lease and realize the value from the Successful Bid immediately.  Even more importantly, the two-hundred ten (210) day deadline under Bankruptcy Code section 365(d)(4) by which the Debtors must assume or reject the Lease expires on June 8, 2009.  Accordingly, waiver of the ten-day stays of Bankruptcy Rules 6004 and 6006 is necessary to enable the Debtors to close the Sale transaction in advance of the expiration of the section 365(d)(4) deadline.

## NOTICE

67.  Notice of this Motion has been provided to those parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order"), as well as (a) all entities known to have expressed an interest in a transaction regarding the Lease during the past three (3) months; and (b) all entities reasonably known to have an interest in the Lease.  Notice of the entry of the Order will be provided to the same parties.  The

33

Debtors submit that, under the circumstances, no other
or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

68.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Debtors requests that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

### NO PRIOR REQUEST

69.   No previous request for the relief sought
herein has been made to this Court or any other court.

34

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: May 28, 2009  
      Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP  
Gregg M. Galardi, Esq.  
Ian S. Fredericks, Esq.  
P.O. Box 636  
Wilmington, Delaware 19899-0636 (302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP  
Chris L. Dickerson, Esq.  
333 West Wacker Drive  
Chicago, Illinois 60606  
(312) 407-0700

- and -

MCGUIREWOODS LLP

_/s/ Douglas M. Foley_____  
Dion W. Hayes (VSB No. 34304)  
Douglas Foley (VSB No. 34364)  
One James Center  
901 E. Cary Street  
Richmond, Virginia 23219  
(804) 775-1000

Counsel for Debtors and Debtors in Possession

35