Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

                - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                        RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
            Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 362 AND 363
(I) AUTHORIZING CIRCUIT CITY STORES, INC. AND CIRCUIT
CITY STORES WEST COAST, INC. TO ENTER INTO AGREEMENT
MODIFYING PRE-PETITION CONTRACT WITH REGENCY CENTERS,
L.P., AND (II) LIFTING AUTOMATIC STAY IN CONNECTION
THEREWITH**

            Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. and Circuit City Stores West Coast, Inc.

_____

[1] Capitalized terms not otherwise defined herein shall have the
    meanings ascribed to such terms in the Motion.

("Circuit City") and their affiliated debtors and debt-

ors in possession in the above-captioned jointly admin-

istered cases (collectively with Circuit City, the

"Debtors"), for entry of an order pursuant to sections

362 and 363 of title 11 of the United States Code (the

"Bankruptcy Code"), and Rule 6004 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), (I)

Authorizing Circuit City Stores, Inc. and Circuit City

Stores West Coast, Inc. to enter into the Second Amend-

ment to Lease Termination Agreement with Regency Cen-

ters, L.P., and, to the extent necessary, (II) Lifting

the Automatic Stay in connection therewith; and the

Court having reviewed and considered the Motion, and af-

ter due deliberation thereon, and good cause appearing

therefore it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is

GRANTED.

2.    Pursuant to Bankruptcy Code section 363

Circuit City is authorized to execute the Second Amend-

ment, attached hereto as Exhibit 1.

3.      Pursuant to section 363 of the Bankruptcy Code, the Debtors are hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Second Amendment; and (ii) perform, consummate, and implement such transactions together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Second Amendment.

4.      The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is modified to the extent necessary to permit Circuit City and Regency, jointly or in their individual capacities, to effect the setoffs contemplated by the Second Amendment.

5.      This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) and any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

6.      The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

7.    This Court retains jurisdiction to hear

and determine all matters arising from or related to the

Second Amendment, and this Order.

Dated:  Richmond, Virginia
        June ____, 2009

Jun 10 2009                /s/ Kevin Huennekens
                        _____
                        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.          Entered on Docket:  6/10/09
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

 /s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

4

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

## EXHIBIT 1

**(Commutation and Release Agreement)**

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement ("**Agreement**") is made and entered into as of the 2?th day of August, 2008 ("**Effective Date**") by and among REGENCY CENTERS, L.P., a Delaware limited partnership ("**Landlord**"), CIRCUIT CITY STORES INC., a Virginia corporation ("**CCS**"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("**CC West**").

### RECITALS

A.    Landlord and CC West entered into that certain Lease dated August 15, 2005 ("**New Lease**") covering those certain premises ("**New Premises**") described in the New Lease in the shopping center (the "**Shopping Center**") being more particularly described on Exhibit A attached thereto.

B.    Frank Fickett, as landlord, ("**Fickett**") and The Akron, as tenant ("**Akron**") entered into that certain Lease (the "**Original Akron Lease**") dated January 25, 1972 covering those certain premises described in the Original Akron Lease (the "**Existing Premises**"). The Original Akron Lease was modified pursuant to: (i) that certain First Amendment to Lease dated July 18, 1973 ("**First Amendment**"); (ii) that certain Second Amendment to Lease dated March 25, 1985 ("**Second Amendment**"); and (iii) that certain Third Amendment to Lease dated October 17, 1986 ("**Third Amendment**"). The Original Akron Lease, as amended by the First Amendment, Second Amendment and Third Amendment, is hereinafter referred to as the "**Original Lease**." As of the date of the Second Amendment, Akron assigned its interest in and to the Original Akron Lease, as then amended, to CCS. After the date of the Third Amendment, Fickett assigned its interest in and to the Original Lease to Landlord.

C.    On or about the same time Landlord and CC West entered into the New Lease, Landlord and CCS entered into that certain Lease Termination Agreement (the "**Original Lease Termination Agreement**"), wherein it was contemplated that upon completion by CC West of the New Premises, (i) CC West would commence operations of a "Circuit City" store in the New Premises, (ii) CCS would vacate the Existing Premises and (iii) the Original Lease would then be terminated, all as more particularly described in the Original Lease Termination Agreement.

D.    Subject to the satisfaction of certain conditions precedent more particularly set forth in this Agreement, Landlord, CCS and CC West (collectively, "**Circuit City**") now desire to terminate the New Lease and the Original Lease upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants of the parties set forth herein, it is hereby agreed as follows:

### AGREEMENT

1.    Termination of Leases and Original Lease Termination Agreement.

       a.      Subject to the terms and conditions set forth in this Agreement, Landlord and Circuit City hereby agree that, notwithstanding the provisions of the New Lease or the Original Lease, the New Lease and the Original Lease each shall terminate on and effective as of February 28, 2009 (the "**Termination Date**"). Prior to the Termination Date, the Original Lease shall remain in full force and effect in accordance with its terms, except as expressly modified by this Agreement.

       b.      On the Termination Date, Circuit City shall deliver the Existing Premises to Landlord vacant, free of all of Tenant's personal property (including its furnishing, trade fixtures and equipment), and broom clean, but otherwise in their then "as is" condition, notwithstanding any contrary terms or conditions of the Original Lease or Original Lease Termination Agreement. Tenant may leave any other fixtures (i.e., other than trade fixtures) in the Existing Premises upon its surrender of the Existing Premises.

       c.      As of the Termination Date, (i) Landlord hereby releases CC West, and CC West hereby releases Landlord, from any obligations and liabilities under the New Lease, including without limitation, any party's obligation to pay any sums to the other except as described in this Agreement, and (ii) Landlord hereby releases CCS, and CCS hereby releases Landlord, from any obligations and liabilities under the Original Lease, including without limitation, any party's obligation to pay any sums to the other except as described in this Agreement; provided, however, nothing contained herein shall be deemed to release CCS from its obligations under the Original Lease through, or for events or occurrences arising or accruing on or prior to, the Termination Date, including without limitation, any obligation to indemnify and defend Landlord from or for events or occurrences arising on or prior to the Termination Date pursuant to the terms of the Original Lease, all of which shall survive the Termination Date to the extent set forth in the Original Lease, and nothing contained herein shall be deemed to release CCS or Landlord for their respective obligations under the Original Lease to reimburse the other party for overpayment or underpayments, as the case may be, for taxes, utilities, insurance, common area maintenance expenses and/or other monetary obligations in accordance with the terms of the Original Lease.

       d.      The Original Lease Termination Agreement is hereby rendered null and void and of no further force or effect unless this Agreement terminates, in which case the Original Lease, New Lease and Original Lease Termination Agreement shall be immediately reinstated without any further action on the part of the parties thereto.

   2.    <u>Contingency Period</u>. The "**Contingency Period**" is the period of time commencing with the Effective Date of this Agreement and ending 5:00 p.m. PST on the date which is thirty (30) days after the Effective Date, provided that if the 30th day falls on a weekend or federal holiday, the Contingency Period shall extend to 5:00 p.m. PST on the next business day. If, during the Contingency Period, Landlord determines, in Landlord's sole and absolute discretion, that it does not elect to proceed with the transactions contemplated by this Agreement, then Landlord may terminate this Agreement by giving written notice to Circuit City no later than 5:00 p.m. PST on the date of the expiration of the Contingency Period, in which case (a) the Original Lease Termination Agreement and the New Lease shall be deemed to be reinstated in accordance with their original terms, without the need for any further action on the part of

Landlord or Circuit City, and (b) neither Landlord nor Circuit City shall have any further rights or obligations under this Agreement. If, during the Contingency Period, Landlord determines, in Landlord's sole and absolute discretion, that it elects to proceed with the transactions contemplated by this Agreement, then prior to the expiration of the Contingency Period, Landlord shall notify Circuit City in writing that it elects to proceed. If, prior to the expiration of the Contingency Period, Landlord fails to deliver any written notice indicating that it elects to proceed with the transactions contemplated by this Agreement, Landlord shall be deemed to have elected not to proceed and the provisions of subsections (a) and (b) of this Section 2 of this Agreement applicable to termination prior to the expiration of the Contingency Period shall apply.

3.    <u>Lease Termination Fee</u>. As consideration for this Agreement, Landlord shall pay Circuit City a fee in the aggregate amount of Six Million and No/100 Dollars ($6,000,000.00) (the "**Lease Termination Fee**"). The Lease Termination Fee shall be payable as follows:

a.    Unless this Agreement has then been terminated (or is deemed to have been terminated) pursuant to Section 2 above, Landlord shall deposit the full Lease Termination Fee, in escrow, with Chicago Title Company (700 S. Flower Street, Suite 800, Los Angeles, CA 90017 (213) 488-4300, Attention: Maggie Watson) ("**Escrow Holder**"), on or before the expiration of the Contingency Period, to be paid to Circuit City as follows:

(i)    Three Million and No/100 Dollars ($3,000,000.00) (the "**First Installment**") shall be paid within three (3) business days after the expiration of the Contingency Period; and

(ii)    Provided Circuit City is not in default under this Agreement, Three Million and No/100 Dollars ($3,000,000.00) (the "**Second Installment**") shall be paid within three (3) business days after the later of (1) the Termination Date or (2) the date CCS vacates the Existing Premises in compliance with the requirements of Section 1.b of this Agreement. Unless Landlord previously notifies Circuit City and Escrow Holder in writing that Circuit City is in default under this Agreement, Escrow Holder is hereby authorized and directed to disburse the Second Installment to Circuit City on March 3, 2009, without the need for any further written instructions from Landlord or Circuit City. If Landlord timely notifies Circuit City and Escrow Holder that Circuit City is in default under this Agreement, Escrow Holder is hereby authorized and directed to retain the Second Installment until joint instructions, executed by both Landlord and Circuit City, have been executed and delivered to Escrow Holder.

Notwithstanding the foregoing, in lieu of depositing the full Lease Termination Fee with Escrow Holder on or before the expiration of the Contingency Period, Landlord may elect to deposit the First Installment in cash and deliver to Escrow Holder an irrevocable, standby letter of credit payable to Circuit City in the amount of the Second Installment (the "**LOC**"). The LOC shall be issued by Wells Fargo, N.A. (or by another financial institution the accounts of which are insured by the FDIC with an office in northern or central

Virginia or the Washington D.C. area where the LOC can be presented at the counter of such other financial institution) and shall be in a form approved by Circuit City in advance, such approval not to be unreasonably withheld. The LOC shall have a term of not less than six (6) months from the expiration of the Contingency Period. The LOC shall be held by Escrow Holder to secure Landlord's obligation to pay the Second Installment as and when due hereunder. Circuit City shall be entitled demand that Escrow Holder deliver the LOC to Circuit City and thereafter to draw on the LOC if Landlord fails to pay the Second Installment to Circuit City as and when due hereunder, which failure continues for three (3) business days' after Landlord's receipt of written notice that such payment is past due (a "**Payment Default**"); provided, however, if Landlord timely notifies Circuit City and Escrow Holder that Circuit City is in default under this Agreement, Escrow Holder is hereby authorized and directed to retain the LOC until joint instructions, executed by both Landlord and Circuit City, have been executed and delivered to Escrow Holder. Landlord shall execute any additional instructions that are reasonably required by the Escrow Holder to permit the delivery of the LOC to Circuit City following a Payment Default. If Landlord pays the Second Installment to Circuit City, the LOC shall be returned to Landlord immediately by Escrow Holder and Circuit City shall execute any additional instructions that are reasonably required by the Escrow Holder to permit the return of the LOC to Landlord.

b.       Simultaneously with the execution of this Agreement, Landlord and Circuit City shall execute any supplemental instructions the Escrow Holder requires with respect to the handling of the Lease Termination Fee and LOC and shall cause Escrow Holder to join in the execution of this Agreement for the sole purpose of acknowledging and accepting the role of Escrow Holder hereunder.

4.       Interim Obligations; Effective Modification of Original Lease.  Prior to the Termination Date, the Original Lease shall remain in full force and effect in accordance with its terms; provided, however, effective as of the date the First Installment is paid to Circuit City (the "**Modification Date**"), the Original Lease shall be deemed modified and amended such that the term of the Original Lease shall be deemed to expire as of the Termination Date. Landlord and CCS shall each be obligated to comply with their respective rights and obligations under the Original Lease and shall be entitled to exercise all rights and remedies available under the Original Lease in the event of a breach or default (as defined in the Original Lease). Further, if CCS has failed to pay any rent or other monetary sum due under the Original Lease as of the Termination Date, Landlord may offset any such rent or other sums against the Second Installment.

5.       Circuit City Default.  Circuit City shall be in default under this Agreement if Circuit City fails to deliver the Existing Premises to Landlord on the Termination Date in the condition required by Section 1.b. of this Agreement. If Circuit City is in default under this Agreement, then so long as Landlord is not in default under this Agreement, Landlord shall have the right, at its sole option, and as its sole and exclusive remedies, either: (a) to recover (i) the full amount of the Lease Termination Fee previously paid to Circuit City, together with interest thereon at the Default Rate set forth in the New Lease from the date originally paid until the date

re-paid to Landlord, and (ii) terminate this Agreement, together with such additional actual damages as Landlord may suffer as a result of Circuit City's default; or (b) to pursue the other remedies set forth in this Agreement. If Landlord elects to pursue the remedies set forth in clause (a) of the immediately preceding sentence, the Original Lease, New Lease and Original Lease Termination Agreement shall nevertheless remain in full force and effect in accordance with their terms (or, if after the Modification Date, shall be deemed reinstated in accordance with its original terms notwithstanding the effective modification of the Original Lease pursuant to Section 4 above).

6.   Landlord Default.   Provided Landlord has not terminated this Agreement in accordance with Section 2 hereof, Landlord shall be in default under this Agreement if, after the expiration of the Contingency Period, Landlord fails to pay the Lease Termination Fee, including either the First Installment or the Second Installment, to Circuit City as and when required. If Landlord is in default under this Agreement, then so long as Circuit City is not in default under this Agreement, Circuit City shall be entitled to pursue an action for specific performance against Landlord, including (a) payment of the Lease Termination Fee (net of any portion thereof previously paid) as liquidated damages, it being agreed that Circuit City's actual damages for Landlord's default would be difficult if not impossible to ascertain, and (b) termination of the Original Lease, the New Lease and the Original Lease Termination Agreement in accordance with the terms hereof.

7.   Cooperation with Door Enlargement and Other Approvals.   CCS acknowledges that Landlord intends to request necessary governmental approvals to enlarge the front door to the Existing Premises (the "Door Enlargement Approvals"). CCS agrees to cooperate with Landlord, at Landlord's expense, to obtain the Door Enlargement Approvals and any other entitlements or approvals Landlord may desire to obtain in connection with proposed renovation of the Existing Premises after the Termination Date, including promptly executing and returning to Landlord any and all applications or other submittals required to be delivered in connection therewith; provided, however, that Circuit City shall not be obligated to incur any liability or costs in connection with such applications or submittals and shall not be obligated to execute any applications or submittals which would impose liability or costs on Circuit City.

8.   Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute but one and the same instrument.

9.   Entirety.   This Agreement represents the entire and final agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior discussions, negotiations and writings with respect thereto. This Agreement may only be amended by written instrument signed by the parties hereto.

10.   Construction.   Each of the parties has participated in the drafting and negotiation of this Agreement. Accordingly, in the event of a dispute among the parties with respect to the interpretation or enforcement of the terms hereof, no provision shall be construed so as to favor or disfavor any party hereto. In the event the terms and conditions of this Agreement conflict with the terms of the Original Lease, the New Lease or the Original Lease Termination Agreement, the terms of this Agreement shall control.

849874.06/DC
R6821103VS-2102cc03ma

11.    Attorneys' fees.  In the event of a dispute among the parties hereto with respect to the interpretation or enforcement of the terms hereof, the prevailing party shall be entitled to collect from the other its reasonable attorneys' fees and costs, including its costs and fees on appeal.

12.    No Brokers.  Landlord and Circuit City each represents and warrants that they have not engaged any broker, finder or other person who would be entitled to any commission or fees with respect to the negotiation, execution or delivery of this Agreement.

13.    Captions.  The captions are included in this Agreement for convenience of reference only and shall not be construed so as to define, limit or modify in any manner any of the terms hereof.

14.    Governing Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California.

*[signatures follow on next page]*

IN WITNESS WHEREOF, the parties hereby execute this Agreement as of the day and year first set forth above.

REGENCY CENTERS, L.P., a Delaware limited partnership

By: Regency Centers Corporation, a Florida corporation
Its: General Partner

By: _____
Name: _____
Title: _____

"CC West"

CIRCUIT CITY STORES WEST COAST, INC., a California corporation

By: _____
Name: _____
Title: _____

"CCS"

CIRCUIT CITY STORES INC., a Virginia corporation

By: _____
Name: _____
Title: _____

## JOINDER BY ESCROW HOLDER

The undersigned, referred to in this Agreement as the "Escrow Holder", hereby joins in the execution of this Agreement for the sole purpose of (a) acknowledging receipt of a fully executed copy of this Agreement and (b) agreeing that, upon receipt, it will hold and disburse the Lease Termination Fee (and, if applicable, the LOC) in accordance with the terms of this Agreement.

CHICAGO TITLE COMPANY


By:_____
Name:_____
Title:_____

## EXHIBIT C

**(First Amendment to Lease Termination Agreement)**

## FIRST AMENDMENT TO LEASE TERMINATION AGREEMENT

This FIRST AMENDMENT TO LEASE TERMINATION AGREEMENT ("Amendment") dated as of September ___, 2008 is entered into by and among REGENCY CENTERS, L.P., a Delaware limited partnership ("**Landlord**"), CIRCUIT CITY STORES, INC., a Virginia corporation ("**CCS**"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("**CC West**"). CCS and CC West shall collectively be referred to herein as "Circuit City".

### R E C I T A L S :

A.    Landlord and Circuit City are parties to that certain Lease Termination Agreement dated as of August 28, 2008 (the "**Agreement**"), pursuant to which Landlord and Circuit City agreed that the New Lease and the Original Lease shall terminate effective as of the Termination Date, as more specifically set forth in the Agreement.

B.    Defined terms which are used in this Amendment without definition have the meanings given to them in the Agreement.

C.    Landlord and Circuit City desire to amend the Agreement upon the terms and conditions hereinafter set forth.

### A G R E E M E N T :

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and agreements contained in this Amendment and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Circuit City hereby agree as follows:

1.    Extension of Contingency Period. Pursuant to the Agreement, the Contingency Period is scheduled to end on Monday, September 29, 2008 at 5:00 p.m. PST. Landlord and Circuit City hereby agree that the Contingency Period shall be extended by fifteen (15) days, to Tuesday, October 14, 2008 at 5:00 p.m. PST.

2.    No Other Modification. Landlord and Circuit City agree that except as otherwise specifically modified in this Amendment, the Agreement has not been modified, supplemented, amended, or otherwise changed in any way and the Agreement remains in full force and effect between the parties hereto as modified by this Amendment. To the extent of any inconsistency between the terms and conditions of the Agreement and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall apply and govern the parties. This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one in the same Amendment.

*[signatures follow on next page]*

IN WITNESS WHEREOF, the parties have each executed this Amendment as of the date set forth above.

"LANDLORD"

REGENCY CENTERS, L.P.,
a Delaware limited partnership

By:    Regency Centers Corporation,
       a Florida corporation,
       Its: General Partner

       By: _____
       Name: ERWIN BUY
       Title: Senior V.P.

"CC West"

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

By: _____
Name: Chris Crowe
Title: Director of Real Estate

"CCS"

CIRCUIT CITY STORES INC.,
a Virginia corporation

By: _____
Name: Chris Crowe
Title: Director of Real Estate

-2-

<u>**EXHIBIT D**</u>

**(Second Amendment to Lease Termination Agreement)**

## SECOND AMENDMENT TO LEASE TERMINATION AGREEMENT

This SECOND AMENDMENT TO LEASE TERMINATION AGREEMENT (this **"Second Amendment"**) dated as of May ___, 2009 is entered into by and among REGENCY CENTERS, L.P., a Delaware limited partnership ("**Landlord**"), CIRCUIT CITY STORES, INC., a Virginia corporation ("**CCS**"), and CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("**CC West**"). CCS and CC West shall collectively be referred to herein as "**Circuit City**", and Landlord and Circuit City are sometimes collectively referred to herein as the "**Parties**".

## R E C I T A L S

A.    Landlord and Circuit City are parties to that certain Lease Termination Agreement dated as of August 28, 2008 (the "**Lease Termination Agreement**"), pursuant to which Landlord and Circuit City agreed that the New Lease and the Original Lease shall terminate effective as of the Termination Date in consideration for the payment by Landlord of the Lease Termination Fee, as more specifically set forth therein.

B.    Pursuant to the First Amendment to Lease Termination Agreement (the "**First Amendment**") dated as of September ___, 2008, the parties agreed to extend the Contingency Period through September 29, 2008 (the Lease Termination Agreement as modified by the First Amendment is collectively referred to as the "**Agreement**").

C.    Pursuant to Section 3 of the Agreement, Landlord has paid the First Installment to Circuit City and the Second Installment is due and payable on the later of: (i) the Termination Date; or (ii) the date Circuit City vacates the Existing Premises in accordance with Section 1.b. of the Agreement provided Circuit City is not in default under the Agreement.

D.    Pursuant to Section 3.a.(ii) of the Agreement and following Landlord's written election to waive all contingencies, Landlord deposited the LOC with Escrow Holder to secure Landlord's obligation to pay the Second Installment.

E.    Landlord and Circuit City are also parties to a lease for real property located at 5795 Christie Avenue in Powell Street Plaza in Emeryville, California (the "**Powell Street Lease**").

E.    Pursuant to Section 4 of the Agreement, Landlord is entitled to offset the total amount of any unpaid rent and other charges due and owing under the Original Lease as well as other sums due to Landlord arising under the Powell Street Lease after November 10, 2008 (the "**Petition Date**") against the Second Installment, which Landlord and CCS agree totals $145,095.14 (the "**Offset Amount**").

F.    On the Petition Date, Circuit City and certain of its affiliates filed voluntary Chapter 11 petitions for relief in the United States Bankruptcy Court for the Eastern District of Virginia (the "**Court**"), thereby commencing a case under Chapter 11 of the United Stated Bankruptcy Code (the "**Code**") designated as case number 08-35653 (KRH), which case has been assigned to Judge Kevin Huennekens.

G.    Circuit City has requested and Landlord, subject to the terms set forth herein, has agreed to pay the Second Installment less the Offset Amount to Circuit City in accordance with the terms and conditions of this Second Amendment

H.    Defined terms which are used in this Second Amendment without definition have the meanings given to them in the Agreement.

## A G R E E M E N T

NOW, THEREFORE, in consideration of the foregoing Recitals which are incorporated herein by reference, the mutual covenants and agreements contained in this Second Amendment and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Circuit City hereby agrees as follows:

1.    Offset Amount.    The Offset Amount is valid and owing to Landlord and totals $145,095.14.

2.    Return of the LOC/Payment of the Second Installment/Termination of Memorandum of Lease.

a.    Simultaneously with the approval of this Second Amendment by the Bankruptcy Court pursuant to a Final Order (as subsequently defined), the Parties shall cause Chicago Title Insurance Company ("**Escrow Holder**") to execute the joinder to this Second Amendment set forth below and, if necessary, shall issue joint written instructions to Escrow Holder in the form attached hereto as Exhibit A, and Landlord shall cause the LOC to be cancelled and terminated. Circuit City shall cooperate with Landlord and shall execute any and all documents reasonably necessary to cause the LOC to be cancelled and of no further force or effect including, without limitation, the execution and delivery of a termination notice to the issuing financial institution in the form attached hereto as Exhibit B. Return to Landlord and cancellation of the LOC and the issuance of a Final Order (as hereafter defined) by the Court approving this Second Amendment are express conditions precedent to Landlord's obligation to remit to Circuit City the Final Termination Payment (defined below). As used herein, "Final Order" means an order of the Court that is not subject to reversal, is not stayed and as to which the time to appeal from or to seek review or rehearing has expired. For avoidance of doubt, an order of the Court approving this Second Amendment shall be a Final Order: (i) upon its entry if no objections have been made to the Approval Motion (as hereafter defined), or if such objections have been made, they have been withdrawn, and the Court has waived the stay to the effectiveness of such order as set forth in Rule 6004(g) of the Federal Rules of Bankruptcy Procedure, or (ii) on the 11th day after its entry if no notice of appeal of such order has been filed.

b.    Simultaneously with the return to Landlord and cancellation of the LOC, Landlord shall wire to Circuit City an amount equal to $2,854,904.86 (the Second Installment less the Offset Amount) (the "**Final Termination Payment**") in full satisfaction of all obligations of Landlord under the Agreement. The Final Termination Payment shall be sent by wire transfer to Circuit City in accordance with the wire instructions attached hereto as Exhibit C whereupon each of the Original Lease and the New Lease shall terminate and be of no further

force and effect, and the Agreement shall be deemed amended such that the Termination Date shall be deemed to be the date the wire is received by Circuit City.

    3.    <u>Mutual Release of Claims</u>.

    a.    Effective as of the receipt by Circuit City of the Final Termination Payment (the **"Termination Payment Date"**), Circuit City and Landlord each release the other in accordance with the terms agreed upon in Section 1(e) of the Lease Termination Agreement, except that as of the Termination Payment Date, Circuit City and Landlord shall be released from their respective obligations under the Original Lease to reimburse the other party for overpayment or underpayments, as the case may be, for taxes, utilities, insurance, common area maintenance expenses and/or other similar charges in accordance with the Original Lease.

    b.    Effective as of the Termination Payment Date, Landlord waives and releases Circuit City from all post-petition claims arising under or related to the Powell Street Lease.

    3.    <u>Court Approval</u>.  As soon as practicable following the execution of this Second Amendment by the Parties, Circuit City shall file a motion with the Court seeking entry of an order approving this Second Amendment, in form and substance reasonably acceptable to each of the Parties hereto.

    4.    <u>No Other Modification</u>.  Except as otherwise specifically modified in this Second Amendment, the Agreement has not been modified, supplemented, amended, or otherwise changed in any way and the Agreement remains in full force and effect between the Parties as modified by this Second Amendment.  To the extent of any inconsistency between the terms and conditions of the Agreement and the terms and conditions of this Second Amendment, the terms and conditions of this Second Amendment shall apply and, govern the parties.

    5.    <u>Due Authorization</u>.  The Parties each represent and warrant that it has the right and authority to enter into this Second Amendment and each of the persons executing this Second Amendment on behalf of each of the Parties is authorized to do so.

    6.    <u>Incorporation of the Terms of the Agreement</u>.  Sections 8-14 of the Agreement are specifically incorporated herein by reference as if the same were fully set forth herein; provided however that all references to the "Agreement" made in those Sections shall be deemed to refer to this Second Amendment.

    7.    <u>Binding on Successors</u>. This Agreement is valid and binding upon the Parties and their successors and assigns, including any subsequently appointed trustee or statutorily appointed committee.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Parties have each executed this Second Amendment as of the date first set forth above.

"LANDLORD"                    REGENCY CENTERS, L.P.,
                              a Delaware limited partnership

                              By:    Regency Centers Corporation,
                                     a Florida corporation,
                                     Its: General Partner

                                     By:_____
                                     Name:_____
                                     Title:_____

"CC West"                     CIRCUIT CITY STORES WEST COAST, INC.,
                              a California corporation

                              By:_____
                              Name:_____
                              Title:_____

"CCS"                         CIRCUIT CITY STORES INC.,
                              a Virginia corporation

                              By:_____
                              Name:_____
                              Title:_____

[SIGNATURE PAGE TO SECOND AMENDMENT TO LEASE TERMINATION]

## JOINDER BY ESCROW HOLDER

The undersigned, referred to in this Second Amendment as the "Escrow Holder", hereby joins in the execution of this Second Amendment for the sole purpose of (a) acknowledging receipt of a fully executed copy of this Second Amendment and (b) agreeing that, upon entry of a Final Order approving this Second Amendment and the further direction of the Parties, it will return the LOC to Landlord in accordance with the terms of this Second Amendment.

CHICAGO TITLE INSURANCE
COMPANY

By: _____
Name: _____
Title: _____

### Exhibit A

### Joint Notice to Escrow Holder

Chicago Title Company
700 S. Flower Street, Suite 800
Los Angeles, California 90017
Attn: Maggie Watson


      Re:    Letter of Credit No. NZS591515 (the "LOC") in favor of
(the "Beneficiary") issued by Wells Fargo, N.A. on the account of Regency Centers, L.P. held in
Escrow by Chicago Title Company ("Escrow Holder") pursuant to the Lease Termination
Agreement (the "Agreement") dated as of August 28, 2008 among Beneficiary, Landlord and
Escrow Holder.

Ladies & Gentlemen:

      The undersigned in accordance with the Agreement hereby jointly authorize and direct
you to immediately return the LOC to Landlord at the following address:

                     REGENCY CENTERS, L.P.,
                     a Delaware limited partnership

                     By:    Regency Centers Corporation,
                            a Florida corporation,
                            Its:  General Partner

                            By: _____
                            Name: _____
                            Title: _____

                     CIRCUIT CITY STORES WEST COAST, INC.,
                     a California corporation

                     By: _____
                     Name: _____
                     Title: _____

*Signatures continue on next page*

NY\1341\ARL1\1329115.8
O:\Documents and Settings\sdraker\Local Settings\Temporary Internet Files\OLK8\NY01-1329115-v8-Second Amendment to Lease Termination
Agreement.DOC
                                    MSW • Draft May 15, 2009 - 10:03 AM

CIRCUIT CITY STORES INC.,
a Virginia corporation

By:_____
Name:_____
Title:_____

*Signature page to Joint Notice to Escrow Holder*

NY01:ARJ013:20115.8
Q:\Documents and Settings\ashaker\Local Settings\Temporary Internet Files\OLK3\NY01-1320118-v8-Second Amendment to Lease Termination
Agreement.DOC
MSW - Draft May 13  2009 - 10:03 AM

**Exhibit B**
**LOC Termination Notice**

**(LETTERHEAD OF BENEFICIARY)**

(DATE)

Wells Fargo Bank, N.A.
Trade Services Division, Northern California
One Front Street, 21st Floor
San Francisco, California 94111

Subject:  Cancellation of Letter of Credit No. NZS591515 in favor of Parcel 6, LLC  (the "Beneficiary")

Ladies and Gentlemen:

Enclosed is the original Letter of Credit (the "Credit") identified above.   The undersigned, a person authorized to sign for the above named Beneficiary, hereby requests on behalf of the Beneficiary that this Wells Fargo Bank, N. A. ("Wells Fargo") Credit be canceled effective immediately.  This request for cancellation is unconditional and irrevocable.

Thank you for your assistance in this matter.

Sincerely,

Parcel 6, LLC

By: _____

NY01/ARLEE/2943518
J:\Documents and Settings\salaker\Local Settings\Temporary Internet Files\OLK3\NY01-1329115-v8-Second Amendment to Lease Termination Agreement. DOC
MSW - Draft May 15, 2009 - 10:03 AM

<u>**Exhibit C**</u>

**Circuit City Wire Instructions**

NY01/CARLL/1294138.8
Q:\Documents and Settings\subaher\Local Settings\Temporary Internet Files\OLK3\NY01-1359115-v8-Second Amendment to Lease Termination
Agreement.DOC

9

MSW - Draft May 15, 2009 - 10:43 AM

# CERTIFICATE OF NOTICE

```
District/off: 0422-7          User: jafarbayj          Page 1 of 1              Date Rcvd: Jun 10, 2009
Case: 08-35653                Form ID: pdforder        Total Noticed: 1

The following entities were noticed by first class mail on Jun 12, 2009.
aty           +Gregg M. Galardi,    Skadden Arps Slate Meagher,   & Flom LLP, One Rodney Sq.,    PO Box 636,
               Wilmington, DE 19899-0636

The following entities were noticed by electronic transmission.
NONE.                                                                          TOTAL: 0

         ***** BYPASSED RECIPIENTS *****
NONE.                                                                          TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 12, 2009**                    **Signature:**       *Joseph Speetjens*