IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., et al. | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtor. | ) | Jointly Administered |

**RESPONSE OF GRAPHIC COMMUNICATIONS, INC. RESPONSE TO DEBTORS' FIFTH OMNIBUS OBJECTION TO CERTAIN MISCLASSIFIED NON-GOODS 503(b)(9) CLAIMS**

Graphic Communications, Inc. ("Graphic"), by counsel, hereby responds to Debtors' Fifth Omnibus Objection to Certain Misclassified Non-Goods 503(b)(9) Claims ("Fifth Omnibus Objection"), by counsel, as follows:

1. Graphic admits that jurisdiction and venue are proper for this core proceeding.

2. Graphic timely filed its Section 503(b)(9) claiming administrative priority in the amount of $175,195.74 (Claim No. 1053) for necessary charges associated with the production of more than 10,000,000 of Circuit City's November 16, 2008 promotional flyers, the primary subject of the parties' agreement. (See invoices attached as <u>Exhibit A</u>.) Graphic separately billed Circuit City outside the 20-day priority period for the paper products used in the production of the flyers. (*See* Declaration of John Drake submitted in support hereof as <u>Exhibit B</u>.)

3. Graphic's invoices and Proof of Claim are for "goods" provided to Circuit City for which Graphic is entitled to Section 503(b)(9) priority payment.

4. Debtors propose by their Fifth Omnibus Objection to reclassify the claim as a General Unsecured Claim. (*See* Docket No. 3310 at 2.)

5. Debtors seek to reclassify Graphic's claim to the extent it is said to be for "advertising services" and argue that such claims are not properly to be afforded priority status under Section 503(b)(9).

6. Graphic opposes the proposed reclassification of its claim as set forth in Debtors' Fifth Omnibus Objection and hereby requests a hearing on the issue.

### *Goods v. Services*: Advertising can be a "Good"

The goods provided by Graphic to Circuit City for which it claims administrative priority are properly classified as "goods" as that terms is used in Section 503(b)(9) and the Uniform Commercial Code.  What Graphic provided to Circuit City is materially different from "yellow book" advertising and was, instead, part of the production of over 10,000,000 newspaper advertising flyers used and distributed by Circuit City in promotion of a particular sales event.

Circuit City relies exclusively on a case out of the Southern District of Mississippi, *In re Deer*, 2007 Bankr. LEXIS 4676 (S.D. Miss. June 14, 2007) (denying advertising claims as non-goods).  The *Deer* court ruled that Section 503(b)(9) should be looked at within the framework of the definition of "goods" in U.C.C. § 9-201, and was persuaded that the advertising in dispute, one for advertising within a "Yellow Book" directory, did not qualify as goods within the plain language of the U.C.C.  *In re Deer,* 2007 Bankr. LEXIS 4676 at *5-6.  The Mississippi court cited only yellow book advertising cases in support of its conclusion.  2007 Bankr. LEXIS 4676 at *6.

Yellow book advertising is inherently different than other forms of advertising such as newspaper inserts (at issue here), pamphlets, and brochures.  In each of these other forms, companies are paying for a product, rather than just an advertisement.  The court in *Directory*

*Publishers Inc. v. Lake Country Hearth & Leisure*, 193 Misc.2d 799, 800-01 (N.Y. City Ct. 2002), explicitly recognizes the distinction between the two types of advertising. (A copy of the *Directory Publishers* opinion is provided as Exhibit C.) The *Directory Publishers* court compiles and distinguishes several opinions from multiple jurisdictions which consider "pamphlets, magazines, and brochures" as well as at least one instance upholding an agreement for the printing itself as one for "goods" under the U.C.C. *Directory Publishers Inc.*, 193 Misc.2d at 801, citing, *inter alia, Gross Valentino Print Co. v. Clarke*, 458 N.E.2d 1027 (Ill. App. Ct. 1983) (agreement for printing of magazines is one for "goods" subject to U.C.C.)

In *Gross Valentino,* a publisher of a magazine entered into a contract for printing of the magazine. *Gross Valentino Printing Co. v. Clarke*, 458 N.E.2d 1027 (Ill. App. Ct. 1983). (A copy of the *Gross Valentino* opinion is provided as Exhibit D.) Citing to the *Lake Wales* and *Colony Press* cases (*see infra*), the *Gross Valentino* court ruled that the contract was for a sale of goods because the primary subject of the contract was the tangible printed magazines and not "printing services." *Gross Valentino,* 458 N.E.2d at 1029-30. The *Gross Valentino* court looked at the origination of the contract, noting that the defendant was simply interested in determining which company could get him the magazines, the final product, at the lowest price. 458 N.E.2d at 1029-30. The *Gross Valentino* court distinguished cases cited by the defendant that the contract was for services, saying that in those cases, "the responsibility of the publisher went beyond the simple printing of the material. Each of the contracts in the cited cases required more independent judgment, skill, and service than the contract in the case at bar." *Gross Valentino,* 458 N.E.2d at 1030.

Such is the case before the Court here as well. Circuit City was paying for the production

of promotional flyers, not any sort of advertising services such as the development of a campaign, etc.

In addition, a number of cases have dealt with the question of goods versus services in light of the U.C.C. definition and ruled that advertising can be a good rather than a service. In *Lake Wales Publishing, Inc. v. Florida Visitor, Inc.*, 335 So. 2d 335 (Fla. Dist. Ct. App. 2d 1976), the Florida state court ruled that the U.C.C. applied to a contract to compile, edit, and publish pamphlets and other printed materials. The court stressed the concept of movability in the definition of goods, holding that the pamphlets were goods because they were "specifically produced or manufactured and were movable." 335 So. 2d at 336. Any services rendered in relation to the production of the pamphlets were covered as goods under the UCC as they "were of necessity directed at publication of the items." 335 So. 2d at 336.

In *Colony Press, Inc. v. M.J. Fleeman*, 308 N.E.2d 78 (Ill. App. Ct. 1st 1974), in a case involving the same form of printed advertising at issue here, the Illinois court discussed printed advertising inserts in an Ohio newspaper as "goods" within the meaning and application of the U.C.C. The court, which ruled on the issue of whether Ohio had jurisdiction to hear the case, used the word "goods" to describe the newspaper inserts eleven times throughout the four-page opinion. *Colony Press*, 308 N.E.2d at 78.

Other cases holding advertising as a service can be distinguished from the newspaper inserts produced for Circuit City by Graphic. In *Incomm v. Thermo-Spa, Inc.,* 595 A.2d 954 (Conn. Super. Ct. 1991), for instance, the court held that a contract between an advertising agency and a spa manufacturer was not one for a sale of goods because "the defendant . . . ultimately wished to obtain a physical layout of a brochure that it could take to a printer. It is

4

clear that it did not expect the plaintiff to produce the printed brochure itself." *Incomm,* 595 A.2d at 956. The contract in *Incomm*, therefore, was merely for advertising services because no brochures were actually produced under the terms of the contract, unlike the final printed product expected by Circuit City to be produced by Graphic. In addition, in *Mail Concepts, Inc. v. Foote & Davis*, 409 S.E.2d 567, 569 (Ga. Ct. App. 1991), the court ruled that the primary purpose of the contract in dispute was for the rendering of services, even though goods were furnished as part performance. The contract was to imprint, box, and ship magazines that had been created and printed <u>by other sources</u>. *Mail Concepts,* 409 S.E.2d at 569. The contract was thus not for the printed product, but rather strictly for performing a service to ready the goods for shipment and sale.

  In circumstances such as this, Section 503(b)(9) applies to the provision of advertising or printing related thereto as "goods." Where, as here, the primary purpose is to produce newspaper flyer inserts and printing was "of necessity directed at publication of the items", the printing itself is considered "goods" under the UCC and, therefore, under Section 503(b)(9) as well.

  WHEREFORE, in light of the foregoing, Graphic's claim is properly entitled to priority treatment under Section 503(b)(9) and should be deemed allowed as such, and Circuit City's request to reclassify Graphic's administrative claim as a general unsecured claim should be denied.

                Respectfully submitted,
                Graphic Communication, Inc.
                By counsel,

/s/ Thomas W. Repczynski
Thomas W. Repczynski (VSB No. 39967)
trepczynski@beankinney.com
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., 7th Floor
Arlington, Virginia  22201
(703) 525-4000; (703) 525-2207 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2009, the foregoing Response of Graphic Communications, Inc. to Debtors' Fifth Omnibus Objection to Certain Misclassified Non-Goods 503(b)(9) Claims is being filed with the Court using the Court's CM/ECF system and is to be served electronically upon all receiving notice thereby.

/s/ Thomas W. Repczynski
Thomas W. Repczynski