Case 08-35653-KRH    Doc 3600-3    Filed 06/15/09    Entered 06/15/09 09:25:49    Desc Exhibit(s) C (Directory Publishers opinion)    Page 1 of 3

Page 1


Click Here & Upgrade
Expanded Features
Unlimited Pages
Documents
Complete
PDF

**LexisNexis**

LEXSEE 193 MISC.2D 799

**Directory Publishers Inc., Plaintiff, v. Lake Country Hearth & Leisure, Defendant.**

**DOCKET # CI 02 0384**

**CITY COURT OF NEW YORK, AUBURN**

*193 Misc. 2d 799*; *753 N.Y.S.2d 660*; *2002 N.Y. Misc. LEXIS 1564*; *49 U.C.C. Rep. Serv. 2d (Callaghan) 395*

**December 5, 2002, Decided**

**SUBSEQUENT HISTORY:**    [***1]    Counsel and Opinion Corrected December 26, 2002.

**DISPOSITION:**    Judgement granted to the plaintiff.

**HEADNOTES**

   Contracts - Breach or Performance of Contract - Yellow Page Advertisements - UCC Warranties Inapplicable to Contracts for Services

   A contract for yellow page advertisements of defendant's business in plaintiff's phone book is a contract for a service, and is not a contract for the sale of goods within the meaning of *UCC 2-105*. Consequently, defendant may not assert as a defense a breach of the implied warranty for a particular purpose (*UCC 2-315*) based upon the omission of defendant's new store in the first edition of plaintiff's white page listings. In addition, defendant failed to establish that the payment made to plaintiff by check was in full satisfaction of the entire debt. Furthermore, the mere fact that defendant failed to receive additional invoices does not result in a waiver by plaintiff of the balance due and owing.

**COUNSEL:** *John P. Doyle, Jr.,* Auburn, for defendant. *Paul M. Aloi,* Rochester, for plaintiff.

**JUDGES:** Hon. Michael F. McKeon, City Court Judge.

**OPINION BY:** Michael F. McKeon

**OPINION**

   [**661]   [*799]   Michael F. McKeon, J.

   In an action seeking monies due and owing on a contract for yellow page advertisements in a phone book, the defendant raises as a defense a breach of the implied warranty for a particular purpose pursuant to *Uniform Commercial Code § 2-315*. The issue before this court, one of apparent first impression in New York, is whether a contract for yellow page advertising [**662] is [*800] a contract for the sale of goods as that term is defined in *UCC 2-105*. That determination is crucial to the outcome of this case since if this court holds to the contrary, the implied warranty for a particular purpose is [***2] not available as a defense.

   The plaintiff and defendant entered into a contract for yellow page advertisements of the defendant's business in a publication entitled "The Phone Book." In persuading the defendant to advertise, the plaintiff marketed the book as a publication that would be published and distributed before the publication date of the phone book published by the public utility serving the area, in this case Verizon. The book published was to be distributed in both Seneca and Cayuga Counties, an additional selling point since to obtain the same coverage with Verizon, yellow page advertisements would have to be purchased in two separate phone books at a greater cost.

   Upon publication and receipt of the book, the defendant noticed that the white page listings for Seneca County were missing including his listing for his new store in Waterloo, New York. In September of 2000, the plaintiff published a second edition which contained the white pages omitted in the first phone book. Defendant made no claim that his yellow page advertisement was listed in error. At trial the defendant claimed the plaintiff breached the warranty of fitness for a particular purpose for this error.

   [***3] New York courts have consistently held that the UCC does not apply to contracts which are predominately for the rendition of work, labor and services rather

Case 08-35653-KRH    Doc 3600-3    Filed 06/15/09    Entered 06/15/09 09:25:49    Desc
Exhibit(s) C (Directory Publishers opinion)    Page 2 of 3

Page 2
193 Misc. 2d 799, *; 753 N.Y.S.2d 660, **;
2002 N.Y. Misc. LEXIS 1564, ***; 49 U.C.C. Rep. Serv. 2d (Callaghan) 395

that for the sale of goods *(Amendola v Basement Waterproofing Co., 203 A.D.2d 403, 610 N.Y.S.2d 313* [1994]).

To determine whether a contract is one for services or for the sale of goods, it is necessary to look to the essence of the agreement between the parties to see if services predominate over any sale of goods aspect (*Manes Org. Inc. v Standard Dyeing & Finishing Co., 472 F. Supp. 687* [S.D. N.Y. 1979]; *Levine v Sears Roebuck & Co. 200 F. Supp. 2d 180* [E.D.N.Y. 2002]).

What constitutes goods within the means of the UCC has spawned a large number of cases with widely diverse results and the production of written materials is no exception.

In *Big Farmer Inc. v Agridata Resources, Inc. (221 Ill. App. 3d 244, 163 Ill. Dec. 629, 581 N.E.2d 783* [Ill. App. Ct. 3d Dist 1991]), the court there held that the purchase and sale of mailing lists and demographic information to an agricultural magazine publisher was "goods" under the UCC.  See also *Carpel vs. Saget Studios Inc. (326 F. Supp. 1331* [*801]    [***4]    [ED Pa 1971]) where wedding pictures were deemed goods under *UCC 2-105*.  In *Gross Valentino Print. Co.  v Clarke (120 Ill. App. 3d 907, 458 N.E.2d 1027, 76 Ill. Dec. 373*), an agreement for the printing of magazines was goods and thus subject to the provisions of the UCC.  In addition, pamphlets and leaflets and recipe brochures have also been held to be goods under the UCC.  (*Lake Wales Publ. Co., Inc. v Florida Visitor, Inc., 335 So. 2d 335* [Fla. App. 1976]; *Colony Press, Inc. v Fleeman 17 Ill. App. 3d 14, 308 N.E.2d 78*; *Comark Merchandising, Inc. v Highland Group, 932 F. 2d 1196* [7th Cir. 1991].)

Other courts have reached the opposite conclusion, holding that brochures, pamphlets and magazines are contracts for services and not goods under the UCC (*Incomm., Inc. v Thermo-Spa Inc., 41 Conn. Supp. 566, 595 A.2d 954* [Conn. Super. Ct 1991]; *Mail Concepts, Inc. v Foote & Davies Inc., 200 Ga. App. 778, 409 S.E.2d 567* [1991]).

 [**663]  While the above cases dealt with the production of pamphlets, magazines and brochures by a publisher as goods under the UCC, left unanswered is the question as to whether [***5]  advertisements published within these magazines and brochures would constitute goods under *UCC 2-105*.  Since no New York case could be found on point it is necessary to examine other state courts decisions for authority and guidance.

In a case similar factually, in *Lochabay vs. Southwestern Bell Media, Inc. (828 S W. 2d 167* [Tex. App. Austin 1992]), a Texas court held that yellow page advertisements were services and not goods under the UCC.  In explaining its decision, the court stated (at 171) in pertinent part that, "under the record [in this case], Lochabay sought and purchased nothing from Bell except one service--that of *publishing* an advertisement." As is the case herein, *Lochabay* involved an advertiser dissatisfied with the quality of the advertisement that was placed in the yellow pages.  See also *Southwestern Bell Tel. Co. v FDP Corp. 811 S.W. 2d 572, 34 Tex. Sup. Ct. J. 690 (Tex. 1991)* where the court held that yellow page advertisements were services and not goods. Along similar lines a contract for radio advertising was deemed services and not the sale of goods under the UCC *( WJRB Val. Broadcasting Co., Inc. v Mills Morris Appliance Co.,  1984 Tenn. App. LEXIS 2856* [1984]).

 [***6]  In examining the contract received into evidence, it is clear to the court that it is a contract for a service--that of publishing a yellow page advertisement. Defendant was seeking to advertise his business not only in Cayuga County but Seneca County as well, a service that could be provided by the  [*802]  plaintiff's phone book. Unlike *Mayo v Caldwell (145 Misc. 2d 533, 547 N.Y.S.2d 207* [1989]), where the primary purpose was the creation of a magnetic sign to be used as advertising, the primary purpose here was to provide the defendant advertising space in a publication with a two-county circulation--clearly a service and not goods.

Having found the UCC inapplicable, the defense of warranty for a particular purpose must fail.  This however does not resolve this case, since the defendant also claims there was an accord and satisfaction reached between the parties as evidenced by a $ 1,500 check dated December 8, 2002 payable to the plaintiff and marked "paid in full." Interestingly however, neither party claimed authorship of this notation and neither could explain how the notation was placed on the check.  To complicate matters, the plaintiff introduced into evidence [***7]  a copy of the check, copied at the time of tender which lacked the notation. In comparing the copy and the original, it is clear to the court that covering the notation and then copying the check could not have been possible without also covering a portion of the memo line printed on the check.  As such the check is not an accord and satisfaction of the original debt.

This does not end the inquiry since the defendant also claimed that this $ 1,500 was in full satisfaction of the entire debt and would not have paid this amount if not the case.  The plaintiff testified to the contrary and submitted a December 5, 2002 letter indicating the payment only brought the account current.  Significant for the court is the fact that defendant sent this check for $ 1,500 on or about December 8, 2000 *after* the December 5th letter.  This payment brought his payments current at the time.  While the defendant may have believed he was paid in full, the written record clearly indicates to the contrary.  Finally, the mere fact that the defendant failed

Case 08-35653-KRH    Doc 3600-3    Filed 06/15/09    Entered 06/15/09 09:25:49    Desc
Exhibit(s) C (Directory Publishers opinion)    Page 3 of 3

Page 3

193 Misc. 2d 799, *; 753 N.Y.S.2d 660, **;
2002 N.Y. Misc. LEXIS 1564, ***; 49 U.C.C. Rep. Serv. 2d (Callaghan) 395

to receive additional invoices without more, does not result in a [**664] waiver by the plaintiff of the balance due and owing. (*See Engel vs Cook, 198 A.D.2d 88, 605 N.Y.S.2d 839* [1993].)

[***8] Accordingly judgment is granted to the plaintiff in the amount of $ 750, together with interest, costs and disbursements.