Case 08-35653-KRH    Doc 3600-4    Filed 06/15/09    Entered 06/15/09 09:25:49    Desc
Exhibit(s) D (Gross Valentino opinion)    Page 1 of 4

Page 1

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete



LEXSEE 120 ILL APP 3D 907

**GROSS VALENTINO PRINTING COMPANY, Plaintiff-Appellee, v. FREDERICK
S. CLARKE, d/b/a Cinefantastique, Defendant-Appellant**

**No. 83-0780**

**Appellate Court of Illinois, First District, First Division**

*120 Ill. App. 3d 907*; *458 N.E.2d 1027*; *1983 Ill. App. LEXIS 2678*; *76 Ill. Dec. 373*; *37
U.C.C. Rep. Serv. (Callaghan) 1460*

**December 27, 1983, Filed**

**PRIOR HISTORY:**    [***1]  Appeal from the Circuit
Court of Cook County; the Hon. Thomas R. Rakowski,
Judge, presiding.

**DISPOSITION:**    Judgment affirmed.

**COUNSEL:** Mark. W. Solock, of Chicago, for appel-
lant.

Leoris & Cohen, of Highland Park (Richard J. Friedman,
of counsel), for appellee.

**JUDGES:** JUSTICE GOLDBERG delivered the opinion
of the court.  McGLOON and CAMPBELL, JJ., concur.

**OPINION BY:** GOLDBERG

**OPINION**

    [*907]  [**1028]   Gross Valentino Printing Com-
pany (plaintiff) brought this action  [*908]  against Fre-
derick S. Clarke, doing business as Cinefantastique (de-
fendant), based on an alleged breach of contract.  Defen-
dant asserted three affirmative defenses: lack of consid-
eration, fraudulent or innocent misrepresentation, and
business compulsion.

    Plaintiff moved for summary judgment. Both plain-
tiff and defendant filed depositions in support of their
theories.  The trial court granted plaintiff's motion with
regard to the first and third defenses and allowed defen-
dant to amend its pleadings with regard to the affirmative
defense of fraud.  Plaintiff then renewed its motion for
summary judgment. After a hearing, the trial court
granted plaintiff's motion and entered judgment of $
5,116.20 for plaintiff.  [***2]  Defendant appeals.

    Defendant publishes a magazine. After discussion,
in July of 1979, plaintiff sent defendant a letter for print-
ing the magazine including a price quotation of $ 6,695.
Defendant accepted the terms.  On August 8, 1979, the
parties met to discuss the layout. The parties' depositions
diverge as to the substance of that meeting.  Because
plaintiff was the movant for summary judgment, "the
court will construe the pleadings, depositions, admis-
sions and affidavits strictly against the movant and liber-
ally in favor of the opponent" to determine if the sum-
mary judgment was proper. *Kolakowski v. Voris (1980),
83 Ill. 2d 388, 398, 415 N.E.2d 397*.

    According to defendant's deposition, he brought ma-
terials for printing the magazine to plaintiff's office on
August 8, 1979.  Defendant discussed problems concern-
ing the layout with an agent of plaintiff corporation.  The
agent told defendant the job could still be done "in
house" despite the problems.  He also told defendant the
price would remain the same over the next six issues of
the magazine.

    Defendant also stated the parties had a telephone
conversation on August 14, 1979.  Defendant was in-
formed the job "was going [***3]  to cost more than we
thought." Plaintiff's agent told defendant the higher cost
was incurred because plaintiff had to "send the stripping
out." Defendant did not inform plaintiff's agent he
wanted to get another printer because defendant did not
believe he could meet his deadline if he changed printers.
Defendant was also afraid plaintiff would not return de-
fendant's materials if defendant argued about the price.
Those materials were necessary for continued printing of
defendant's magazine.

    Defendant also deposed that sometime thereafter
plaintiff sent defendant a letter dated August 15, 1979.

Click Here & Upgrade
PDF Complete
Expand Your Limits
Unlimited Pages
Documents

Case 08-35653-KRH    Doc 3600-4    Filed 06/15/09    Entered 06/15/09 09:25:49    Desc
Exhibit(s) D (Gross Valentino opinion)    Page 2 of 4

Page 2

120 Ill. App. 3d 907, *; 458 N.E.2d 1027, **;
1983 Ill. App. LEXIS 2678, ***; 76 Ill. Dec. 373

The letter specified the same work as represented in the parties' earlier contract. However the [**1029] price was increased to $ 9,300. Defendant made no objection to [*909] this increase until a later date.

On August 30, 1979, plaintiff delivered the first 5,000 magazines to defendant. Defendant signed the purchase order reflecting the new price and paid plaintiff $ 4,650 on account of the purchase. Defendant subsequently received the complete shipment of 15,000 magazines. However, on October 28, 1979, defendant informed plaintiff he would not accept the price [***4] increase.

I

Lack Of Consideration

The parties agree that the sufficiency of defendant's first affirmative defense of lack of consideration depends on the determination of whether the transactions at issue are subject to the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1981, ch. 26, par. 1 -- 101 *et seq.*). Under the UCC a modification of an existing contract "within this Article needs no consideration to be binding." (Ill. Rev. Stat. 1981, ch. 26, par. 2 -- 209(1).) The parties also agree that the applicability of the UCC depends on the determination of whether they contracted for "goods" or "services."

The UCC defines "goods" as (Ill. Rev. Stat. 1981, ch. 26, par. 2 -- 105(1)):

"'Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2 -- 107)."

The parties have not cited, and our research [***5] has not disclosed, any case in Illinois in which the court specifically applied the above definition to printed magazines. However, in *Colony Press, Inc. v. Fleeman (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78*, we dealt with the printing and sale of advertising leaflets. Although the issue before the court was jurisdiction over an Ohio defendant, we stated:

"Defendant was aware or should have been aware that the printing would be done in Illinois. Finally, plaintiff was required to ship the goods, f.o.b. Chicago, Illinois, directing the carrier to make delivery to the Canton, Ohio, newspaper in which it would appear. Plaintiff's obligation, title and risk of loss in the goods ceased then on the delivery to the carrier in Illinois. [*910] (Sections 2 -- 401(2)(a) and 2 -- 509 (1)(a) of the Illinois Uniform Commercial Code, Ill. Rev. Stat. 1971, ch. 26, pars. 2 -- 401(2)(a) and 2 -- 509(1)(a).)" *17 Ill. App. 3d 14, 18.*

According to the language in *Colony Press*, the court implied that the printed advertising leaflets were "goods" and that the UCC applied to the contract. We find a similar implication in *Goshen Litho, Inc. v. Kohls* (Docket No. 81 Civ. 3362 -- [***6] CSH, (S.D.N.Y. filed May 12, 1983),    F. Supp.   .

Closer to the point is *Lake Wales Publishing Co. v. Florida Visitor, Inc. (Fla. App. 1976), 335 So. 2d 335.* There, the court specifically addressed the issue of whether a contract to compile, edit, and publish printed material constituted a sale of goods. The court concluded that it did (*335 So. 2d 335, 336*):

"We focus then on whether the printed materials which appellant allegedly furnished to appellee were 'goods' under the U.C.C., *Fla. Stat. § 672.2 -- 105(1)*, which defines 'goods' as:

'. . . all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 678) and things in action.'

The specific point has not been passed on by the Florida courts; however, the Official Comment to U.C.C. § 2 -- 105 states that the definition of goods is based upon the concept of their movability. The items allegedly furnished by the appellant were specially produced or manufactured

Click Here & Upgrade
PDF
Complete
Expand your productivity
Unlimited Pages

Case 08-35653-KRH    Doc 3600-4    Filed 06/15/09    Entered 06/15/09 09:25:49    Desc
Exhibit(s) D (Gross Valentino opinion)    Page 3 of 4

Page 3

120 Ill. App. 3d 907, *; 458 N.E.2d 1027, **;
1983 Ill. App. LEXIS 2678, ***; 76 Ill. Dec. 373

and were movable. Moreover, [**1030] any services rendered were of necessity directed [***7] to production of the items."

See also *Cardozo v. True (Fla. App. 1977), 342 So. 2d 1053, 1055*, where the court stated "[t]he definition of 'goods' under the U.C.C. is sufficiently broad to include books."

The court in *Lake Wales* relied on *Carpel v. Saget Studios, Inc. (E.D. Pa. 1971), 326 F. Supp. 1331*. There the court determined that a contract for a photographer to provide photographs, was a contract for goods. *326 F. Supp. 1331, 1333*.

In the case at bar, we conclude that the primary subject of the contract was the tangible printed magazines and not "printing services." Defendant's deposition indicates he worked with plaintiff in arriving at the "layout" of the magazine. Furthermore, defendant's deposition indicates he "shopped" for printers based solely on which printer submitted the lowest price estimate. Such an admission suggests that to defendant the "printing services" were largely fungible or interchangeable and were merely incidental to delivery of the final [*911] product. It is clear that defendant was simply interested in determining who could get him the magazines, the ultimate product, at the lowest possible price.

Defendant relies on three [***8] cases. We find them inapposite to the case at bar:

In *Mallin v. University of Miami (Fla. App. 1978), 354 So. 2d 1227*, the court held a contract between an author and a publisher was a contract for services. The court stressed that "[t]his transaction did not involve a sale of goods by the publisher to the author" (*354 So. 2d 1227, 1229*). In fact there was no sale of books except from the publisher to the eventual consumer.

In *For Children, Inc. v. Graphics International, Inc. (S.D.N.Y. 1972), 352 F. Supp. 1280*, the court held damages for breach of a contract for the publishing of "pop-up" children's books were not governed by the UCC. The court indicated the manufacture of pop-up books was "a limited field." (*352 F. Supp. 1280, 1284*.) Therefore, the publishing at issue in *For Children* was in the nature of a specialty. Such specialized printing requires greater skill and expertise than the simple printing of a magazine as in the case at bar.

In *Curtis Publishing Co. v. Sheridan (S.D.N.Y. 1971), 53 F.R.D. 642*, the court denied summary judgment in an action based on a contract for the publication of books. The court concluded there were disputed facts regarding [***9] whether the contract was for goods or services. (*53 F.R.D. 642, 643*.) However, the court noted that the contract included various responsibilities of the publisher other than printing, such as financing and marketing of the books.

In all of these cases the responsibility of the publisher went beyond the simple printing of the material. Each of the contracts in the cited cases required more independent judgment, skill, and service than the contract in the case at bar. Therefore we hold that the agreement between these parties for printing the magazines was subject to the provisions of the UCC. It follows that proof of consideration was unnecessary. The trial court properly struck the first affirmative defense.

II

Fraud

The elements of fraud are specified in *Soules v. General Motors Corp. (1980), 79 Ill. 2d 282, 402 N.E.2d 599*. To state a cause of action for fraud defendant must allege a false statement of material fact by plaintiff, which plaintiff knew or believed was false, made with [*912] intent to induce defendant to act, upon which defendant justifiably relied, and which resulted in damage to defendant. (*79 Ill. 2d 282, 286*.) A statement as to future events [***10] or circumstances is not a basis for fraud. ( *Steinberg v. Chicago Medical School (1977), 69 Ill. 2d 320, 334, 371 N.E.2d 634*.) Allegations of fraud must be made with specificity to sustain a cause of action. *Waterford Condominium* [**1031] *Association v. Dunbar Corp. (1982), 104 Ill. App. 3d 371, 376, 432 N.E.2d 1009*.

Our study of the pleadings convinces us that defendant has failed to allege a cause of action for fraud. At best, defendant has simply alleged possible misstatements of future circumstances, such as the ability of plaintiff to complete the job "in house," and the eventual cost of the job. Defendant did not allege plaintiff's agent knew any statements were false. In fact, defendant does not specify any statements made by plaintiff's agent, which were allegedly false at the time they were made. In addition, defendant did not adequately allege damage. For example, defendant did not allege what the cost of the printing would have been had defendant not "relied" on plaintiff's representations and hired a different printer. It follows that the second affirmative defense failed to allege fraud. Summary judgment was proper in this regard.

III

[***11] Business Compulsion

Click Here & Upgrade

PDF
Complete

Expanded Features
Unlimited Pages

Case 08-35653-KRH    Doc 3600-4    Filed 06/15/09    Entered 06/15/09 09:25:49    Desc
Exhibit(s) D (Gross Valentino opinion)    Page 4 of 4

Page 4

120 Ill. App. 3d 907, *; 458 N.E.2d 1027, **;
1983 Ill. App. LEXIS 2678, ***; 76 Ill. Dec. 373

Similarly, defendant has failed to allege sufficient facts to sustain the affirmative defense of business compulsion. "Economic duress is present where one is induced by a wrongful act of another to make a contract under circumstances which deprive him of the exercise of free will." ( *Alexander v. Standard Oil Co. (1981), 97 Ill. App. 3d 809, 814, 423 N.E.2d 578.*) "The bare allegation of 'legal duress' is not sufficient even as an allegation of ultimate fact." *Scoa Industries, Inc. v. Howlett (1975), 33 Ill. App. 3d 90, 96, 337 N.E.2d 305.*

"[T]he defense of duress cannot be predicated upon a demand which is lawful or upon doing or threatening to do that which a party has a legal right to do. * * * Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated on the basis of duress." ( *Alexander v. Standard Oil Co. (1981), 97 Ill. App. 3d 809, 815.*) To show compulsion, one must indicate how legal redress would be inadequate. *Kaplan v. Keith (1978), 60 Ill. App. 3d 804, 807, 377 N.E.2d 279, appeal denied* (1978), *71 Ill. 2d 609.*

In the [***12] case at bar, defendant has failed to indicate how his "free [*913] will" was overcome by any wrongdoing of plaintiff. As shown above, defendant has failed to show plaintiff was guilty of any fraud or wrongdoing. Defendant does not show how he would have been so damaged by possibly missing a deadline as to overcome his free will. Finally, defendant does not show how legal redress for possible breach of the original contract would have been inadequate.

For these reasons the summary judgment in favor of plaintiff is affirmed.

Summary judgment affirmed.