Richard I. Hutson, Esq., VSB# 71097
Fullerton & Knowles, P.C.
12642 Chapel Road
Clifton, VA 20124
(703) 818-2600
FAX: (703) 818-2602
rhutson@fullertonlaw.com
*Counsel for US Signs, Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CIRCUIT CITY STORES, INC. | ) | Case No. 08-35653-KRH |
| | ) | |
| Debtor. | ) | |
| | ) | |

**U.S. SIGNS' RESPONSE TO DEBTORS' FIFTH OMNIBUS OBJECTION TO CERTAIN MISCLASSIFIED NON-GOODS 503(B)(9) CLAIMS**

COMES NOW U.S. SIGNS, INC. (hereinafter "U.S. Signs"), by counsel, and hereby responds to the Debtors, Circuit City Stores, Inc.'s (hereinafter "Circuit" or "Debtors"), Fifth Omnibus Objection to Certain Misclassified Non-Goods 503(b)(9) Claims (hereinafter "Fifth Omnibus Objection") and states as follows:

**BACKGROUND**

1. US Signs is a Texas corporation engaged in business as a national full service sign company.

2. Circuit entered into a contract on an open account basis (hereinafter referred to as "Contract") with US Signs whereby US Signs agreed to manufacture, supply and install signs for Circuit and Circuit agreed to pay for said labor or materials necessary to construct signs at

1

various Circuit City retail store locations throughout the country (hereinafter referred to as the "Projects").

3. Pursuant to the Contract, US Signs provided substantial labor or materials which was incorporated into the Projects and added substantial value thereto.

4. Circuit breached the Contract by failing or refusing to pay a balance due to US Signs for Work supplied to Circuit.

5. Circuit filed its Bankruptcy Petition under Chapter 11 of the Bankruptcy Code in this Court on or about November 10, 2008 ("Petition Date").

6. As of the Petition Date, US Signs was owed substantial amounts by Circuit on the Projects.

7. Pursuant to the 503(b)(9) Bar Date Order dated November 12, 2008, and the 503(b)(9) Bar Date Notice, the bar date for filing proofs of claim asserting administrative priority claims pursuant to Bankruptcy Code section 503(b)(9) was 5:00 p.m. (PT) on December 19, 2008 (the "503(b)(9) Bar Date").

8. U.S. Signs filed its 503(b)(9) claim ("Claim No. 1309") in accordance with the Bar Date Order, which was received by Debtors on December 18, 2008, claiming administrative priority in the amount of $108,844.38 for necessary charges associated with the manufacture, supply and installation of Circuit City signs in various Circuit City retail store locations within 20 days prior to the Petition Date, and the primary subject of the parties' agreement.

9. Claim No. 1309 represents the total value of goods received by the Debtors within 20 days of the Petition Date.

10. A true and accurate copy of the Purchase Orders and Invoices associated with Claim No. 1309 is attached hereto as Exhibit A.

2

11.     Debtors do not dispute that Claim No. 1309 was timely filed. Debtors object to Claim No. 1309 as not properly to be afforded priority status under Section 503(b)(9).

12.     U.S. Signs' Contract and Claim No. 1309 are for the sale of specially manufactured "goods" provided to Circuit City for which U.S. Signs is entitled to Section 503(b)(9) priority payment.

### U.S. SIGNS' CLAIM IS BASED UPON THE SALE OF "GOODS" WITHIN THE MEANING OF § 503(B)(9)

Section 503(b)(9) of the Bankruptcy Code provides in part:

(b) After notice and a hearing, there shall be allowed administrative expenses . . . including –

> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

*11 U.S.C. § 503(b)(9).*

The language of the statute provides for the allowance of an administrative claim provided the claimant establishes: (1) the vendor sold "goods" to the debtor; (2) the goods were received by the debtor within twenty days prior to filing; and (3) the goods were sold to the debtor in the ordinary course of business. In its Fifth Omnibus Order, Debtors argue that the Contract does not constitute the sale of "goods" within the meaning of section 503(b)(9) and, therefore, Claim No. 1309 is improperly classified. The Debtors' assertions as to Claim No. 1309 are inaccurate and plain wrong.

### *The Term "Goods" in Section 503(b)(9) Is Controlled By The U.C.C. Definition*

Resolving the meaning of Section 503(b)(9) begins with the language of the statute itself.

3

*United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). The right to a 503(b)(9) administrative expense is limited to vendors of "goods." 11 USC § 503(b)(9). However, "goods" is not defined in the Bankruptcy Code. "When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992). Rather, "where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59, 31 S. Ct. 502, 55 L. Ed. 619 (1911); *see also Neder v. United States*, 527 U.S. 1, 21, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)("It is a well established rule of construction that '[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992)).

Debtors admit that the proper meaning of "goods" as defined in Section 503(b)(9) can be found in Section 105 of the Uniform Commercial Code (the "U.C.C."). *See Fifth Omnibus Objection*, at ¶ 24. US Signs does not dispute this assertion.

Article 2 of the U.C.C. governs sales of goods in 49 states. *See* U.C.C. §§ 2-101 (short title of Article 2 is "Sales"), and 2-102 (scope of Article 2 covers "transactions in goods"). Section 2-105(1) provides the following:

> Goods" means all things (***including specially manufactured goods***) which are ***movable at the time of identification to the contract*** for sale other than the money in which the price is to be paid, investment securities (chapter 8 of this title) and things in action.

*U.C.C. § 2-105(1)* [Emphasis added].

Use of the U.C.C. Article 2's definition of "goods" in interpreting section 503(b)(9) has been

4

adopted by bankruptcy courts examining this issue. *In re Plastech Engineered Prods.*, 397 B.R. 828, 836 (Bankr. E.D. Mich. 2008) (adopting U.C.C. Article 2 definition of goods for 503(b)(9) claims). Given the near unanimous nationwide adoption of Article 2 of the U.C.C., the Court concludes that the term "goods" in section 503(b)(9) conforms with the meaning given in U.C.C. § 2-105(1): "goods" are something that is "moveable" "This approach is supported by the perhaps surprising fact that the definition of 'goods' set forth in the UCC is consistent with the ordinary, 'non legal' meaning of the word: 'property or possessions; esp. moveable property.'" *In Re Goody's Family Clothing, Inc.*, 401 B.R. 131, 134 (Bankr. Del. 2009). Further, it is also clear that the term "goods" includes "specially manufactured goods." The U.C.C. offers some indication of the definition of specially manufactured goods in Section 2-201, which states that goods specially manufactured for the buyer "are not suitable for sale to others in the ordinary course of the seller's business...." *See U.C.C. § 2-201*.

### *The Signs Constitute Goods Within The Meaning Of the U.C.C.*

The signs themselves are moveable and constitute "goods" within the meaning of U.C.C. § 2-105(1). U.S. Signs does not install signs that it did not create and manufacture in the ordinary course of business.

Further, the primary purpose of the Contract between Debtors and U.S. Signs was to create, manufacture and install signs at various Circuit City retail store locations. *See* Exhibit A. Debtors contracted for and purchased goods. The installation services for the signs were secondary to the creation of the signs themselves. There can be no installation without the creation of the signs. Debtors' cannot now separate the installation services rendered from the creation and manufacturing of the signs. The value of the goods and services were billed and paid as one in the same. Thus, the installation services are inseparable from the goods sold.

5

### *The Goods Sold Debtors Are Specially Manufactured Goods Under The U.C.C.*

Moreover, a review of the Purchase Orders shows that the signs constitute specially manufactured goods within the meaning of the U.C.C. *See* Exhibit A. Debtors admit that specially manufactured goods constitute "goods" within the meaning of the Bankruptcy Code. *See Fifth Omnibus Objection*, at ¶ 25. Debtors requested and purchased specially manufactured signs for various retail store locations in the ordinary course of business. Pursuant to the terms of the Contract and at the request of Debtors, U.S. Signs manufactured signs specifically made for Circuit City retail store locations. *See* Invoices attached hereto as apart of Exhibit A. As part of the same transaction, Debtors purchased electrical cables, switches, conduit, pipes, panels, and other electrical materials and signage ("Materials"). *See id.* These materials were necessary to the construction of the signs and were sold to Debtors as part and parcel of the same transaction in the ordinary course of U.S. Signs' business as a sign company. U.S. Signs supplied the materials, manufactured the signs and installed the signs into various Circuit City retail store locations pursuant to the terms of the Contract. *See* Exhibit A. Once manufactured and installed, the signs were not suitable for sale to others in the ordinary course of U.S. Signs business and thus constitute specifically manufactured goods within the meaning of *U.C.C. §§ 2-105(1) and 2-201*.

Further, the Materials supplied and used to manufacture the signs constitute "goods" within the meaning of the U.C.C. and thereby the Bankruptcy Code. The Materials were all "moveable" property at the time of identification to the contract and within the meaning of U.C.C. Section 2-105(1). *See* Exhibit A.

Debtors' argument is thereby flawed. The value of Materials and the manufacture of the signs were billed and paid by Debtors as one in the same. As such, Debtors essentially paid for

specially manufactured signs, which is defined as goods under the U.C.C. and thereby Section 509(b)(9) of the Bankruptcy

WHEREFORE, in light of the foregoing, U.S. Signs, Inc.'s Claim is properly entitled to priority treatment under §503(b)(9) of the Bankruptcy Code and should be deemed allowed as such, and any request of the Debtors to reclassify Claim No. 1309 as a general unsecured claim should be denied.

US SIGNS, INC.
By Counsel

/s/ Richard I. Hutson
Richard I. Hutson, Esq.
VSB# 71097
Fullerton & Knowles, P.C.
12642 Chapel Road
Clifton, VA 20124
(703) 818-2600
FAX: (703) 818-2602
rhutson@fullertonlaw.com
Counsel for US Signs, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Response of U.S. Signs to the Debtors, Circuit City Stores, Inc.'s Fifth Omnibus Objection to Certain Misclassified Non-Goods 503(b)(9) Claims was sent electronically using the Court's CM/ECF system and is to be served electronically upon all receiving notice thereby, and also via first class mail, postage prepaid, to the following on this, the 15th day of June 2009:

Office of the U.S. Trustee
701 E. Broad St.
Suite 4304
Richmond, Virginia 23219-1888
Attn: Robert B. Van Arsdale

The United States Trustee

Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Attn: Gregg M. Galardi, Esq.

McGuireWoods LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
Attn: Dion W. Hayes, Esq.

*Counsel for the Debtors and Debtors in Possession*

                                                /s/ Richard I. Hutson
                                                Richard I. Hutson, Esq.