IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC., *et al.*,[1] | ) | Case No. 08-35653 |
| | ) | Chapter 11 |
| Debtors. | ) | Petition Date: November 10, 2008 |
| | ) | (Jointly Administered Cases) |
| | ) | Honorable Kevin Huennekens |
| | ) | |

**SECOND INTERIM AND FINAL APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF ROTHSCHILD INC., AS FINANCIAL
ADVISOR AND INVESTMENT BANKER TO THE DEBTORS FOR THE PERIOD
FROM NOVEMBER 10, 2008 THROUGH MAY 19, 2009**

| | |
|---|---|
| Name of Applicant: | Rothschild Inc. |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | Effective as of October 13, 2008 by order entered January 9, 2009 |
| Period for which Final Compensation and Reimbursement is Sought: | October 13, 2008 through May 19, 2009 |
| Amount of Final Compensation Sought as Actual, Reasonable and Necessary: | $3,077,794.68 |
| Amount of Final Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $103,034.43 |
| Period for which Interim Compensation and Reimbursement is Sought: | February 1, 2009 through May 19, 2009 |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

| | |
|---|---|
| Amount of Interim Compensation Sought as Actual, Reasonable and Necessary: | $2,537,794.68 |
| Amount of Interim Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $26,337.01 |

This is a:     __ Monthly          _x_ Interim          _x_ Final application.

If this is not the first application filed, disclose the following for prior application:

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| 3/17/2009 | 11/10/2008 - 12/31/2008 | $340,000.00 | $36,325.96 | $340,000.00 | $36,325.96 |
| 3/17/2009 | 01/01/2009 - 01/31/2009 | 200,000.00 | 40,371.46 | 200,000.00 | 40,371.46 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC., *et al.*, | ) | Case No. 08-35653 |
| | ) | Chapter 11 |
| Debtors. | ) | Petition Date: November 10, 2008 |
| | ) | (Jointly Administered Cases) |
| | ) | Honorable Kevin Huennekens |
| | ) | |

**SECOND INTERIM AND FINAL APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF ROTHSCHILD INC., AS FINANCIAL
ADVISOR AND INVESTMENT BANKER TO THE DEBTORS FOR THE PERIOD
FROM NOVEMBER 10, 2008 THROUGH MAY 19, 2009**

1.   Pursuant to sections 105(a) and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (collectively, the "Bankruptcy Rules"), the Order of this Court, dated December 22, 2008 granting Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 327, 330 and 331 Authorizing Debtors to Employ Professionals Utilized in the Ordinary Course of Business (the "Fee Procedures Order") and the Order of this Court, dated January 9, 2009 Authorizing the Employment and Retention of Rothschild Inc. as Financial Advisor and Investment Banker for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date (the "Retention Order") attached hereto as Exhibit A, Rothschild Inc. ("Rothschild" or the "Applicant"), financial advisor and investment banker to Circuit City Stores, Inc. (together with its debtor subsidiaries in the above-captioned cases, the "Debtors"), hereby submits its Second Interim Application for Compensation and for Reimbursement of Expenses for the Period from February 1, 2009 through May 19, 2009 (the "Second Interim Application") and its Final Application for Compensation and for Reimbursement of Expenses for the Period from November 10, 2008 through May 19, 2009 (the "Final Application", together with the Second Interim Application, the "Application"). In support of this Application, Rothschild respectfully represents as follows:

2.    Pursuant to the Retention Order, the Debtors were authorized to employ and retain Applicant pursuant to the terms of a letter agreement dated as of October 13, 2008 between the Debtors and Applicant, subject to certain modifications by this Court (the "Engagement Letter"), attached hereto as Exhibit B.  Under the Engagement Letter as modified, Applicant is entitled, among other things, to payment of (i) a retainer fee of $200,000.00 (the "Retainer"), (ii) a cash advisory fee of $200,000.00 per month (the "Monthly Fee"), (iii) a payment of a transaction fee of $2,000,000.00 upon the liquidation of the Debtors (the "Minimum Recap Fee") less a credit equal to 50% of Monthly Fees in excess of $600,000.00 (the "Monthly Fee Credit"), (iv) payment of an M&A fee based on a percentage of aggregate consideration received[2] and (v) reimbursement of Applicant's out-of-pocket expenses.

3.    Under the Engagement Letter, the M&A Fee for any M&A Transaction involving aggregate consideration below $50,000,000.00 was to be agreed upon by Rothschild, the professionals retained by the Official Committee of Unsecured Creditors appointed in these cases (the "Committee Professionals") and the Company in good faith.  The Debtors, the Applicant and the Committee Professionals executed a Revised Engagement Letter dated as of March 25, 2009, also attached as Exhibit B.  The Revised Engagement Letter provided for, among other things, (i) a reduction of the Monthly Fee to $100,000.00 per month (the "Revised Monthly Fees") for March and April 2009 only (and termination of Monthly Fees thereafter), plus (ii) payment of a contingent transaction fee for the sale of certain intellectual property and online assets (the "IP Assets M&A Fee") less a credit equal to 100% of the Revised Monthly Fees ("Revised Monthly Fee Credits") and (iii) reimbursement of Applicant's out-of-pocket expenses.

---

2  Rothschild is also entitled to the payment of a $1.5 million transaction fee upon the sale of a the Debtors' InterTAN unit the "InterTAN M&A Fee") pursuant to a separate engagement letter between InterTAN Canada Ltd., Rothschild Inc. and N M Rothschild & Sons Canada Securities Limited

## RELIEF REQUESTED

4.   By this Application, and pursuant to the Fee Procedures Order, Applicant seeks an Order (i)

granting interim approval of $2,537,794.68 in fees and $26,337.01 in expenses during the period

from February 1, 2009 through May 19, 2009 (the "Second Interim Period"), for a total Second

Interim Compensation Amount of $2,564,131.69 in compensation, which amount reflects (a)

Monthly Fees in the amount of $200,000.00 plus (b) Revised Monthly Fees of $200,000.00, (c)

IP Assets M&A Fee of $499,085.00 less Revised Monthly Fee Credit of $200,000.00, (d)

Minimum Recap Fee of $2,000,000.00 less Monthly Fee Credits of $161,290.32 and (e)

reimbursement of expenses in the amount of $26,609.10, (ii) granting final allowance and

approval of (a) compensation for professional services rendered by Applicant during the period

from November 10, 2008 through May 19, 2009 (the "Retention Period") as investment banker

and financial advisor to the Debtors in the amount of $3,077,794.68 and (b) reimbursement of

reasonable and necessary expenses incurred during the Retention Period in the amount of

$103,034.43, for a total Final Fee Amount of $3,180,829.11, (iii) ratifying and confirming any

amounts previously received by Applicant pursuant to the Fee Procedures Order and the

Retention Order approved by this Court, (iv) authorizing and directing the Debtors to pay to

Applicant $2,343,928.03, representing amounts not yet received by Rothschild and (v) granting

such other and further relief as this Court deems just and proper.  While this application

constitutes Rothschild's final application with respect to fees due in connection with its

engagement by the debtors, Rothschild reserves the right to seek further payments in respect of

expense reimbursement or indemnification to the extend permitted by the terms of its

engagement.

5.   Annexed hereto as Exhibits C, D, E, and F are the invoices detailing the total compensation

accrued and expenses incurred by Applicant during the Retention Period; a breakdown of

Applicant's expenses incurred during the Retention Period; a daily time log detailing the

activities and services performed by Applicant on behalf of the Debtors during the Retention Period and biographies of key team members.

6.    Senior level professionals with extensive experience in the area of investment banking and bankruptcy services have directed the Applicant's team.  The investment banking services set forth above were performed primarily by Neil Augustine, Managing Director, Steven Tishman, Managing Director, Bernard Douton, Managing Director, Nicholas Barnes, Vice President, Marcelo Messer, Vice President, Lisa Kwiatkowski, Associate, David Lechner, Associate, Elana Caplan, Analyst and Ryan Kohan, Analyst as well as other professionals and paraprofessionals, as needed, including Applicant's team in Canada consisting of Peter Teti, Director, Nicholas Belanger, Associate and Jeff Schneider, Analyst.  The Applicant's general staffing policy is to assign senior bankers, experienced intermediate bankers, financial associates and analysts to each restructuring assignment.  The senior bankers, Neil Augustine, Steven Tishman and Bernard Douton, have overall responsibility for the case.  They are primarily responsible for developing strategy with respect to the case, directing negotiations and interfacing with the other senior professionals involved with the case.  The experienced intermediate bankers, in this case Nicholas Barnes and Marcelo Messer, are responsible for day-to-day coordination of the case and the review of all financial analyses and work closely with the financial associates and analysts, in this case Lisa Kwiatkowski, David Lechner, Elana Caplan and Ryan Kohan who assist in the day-to-day coordination of the case and perform financial analyses.  Steven Tishman, Nicholas Barnes, Lisa Kwiatkowski and Elana Caplan are the primary personnel responsible for conducting the IP Asset sales.  The Applicant's team in Canada along with Steven Tishman and Nicholas Barnes were the primary parties involved in executing the InterTAN M&A transaction.  The senior bankers, experienced intermediate bankers and financial associates and analysts coordinate their actions so as to not duplicate efforts.  Given that the senior bankers, the experienced intermediate bankers and the financial associates and analysts have different roles in the case but have overlapping responsibilities, there are frequent times where it is appropriate for two or more bankers to be present at a meeting.

7.   The amount of fees and expenses sought in this application and Applicant's billing processes

are consistent with market practices for investment banking firms both in and out of bankruptcy.

Applicant does not bill its clients based on the number of hours expended by its professionals.  It

bills clients on a retainer basis (generally monthly), plus transaction fees.  Accordingly,

Applicant does not have hourly rates for its professionals and Applicant's professionals generally

do not maintain time records for the work performed for its clients.  Applicant's policy, for all

engagements in or out of bankruptcy, is to dedicate the appropriate number of professionals to

the assignment to complete the work as efficiently as possible.  Applicant has, however,

maintained a daily time log detailing the activities and services performed by Applicant on

behalf of the Debtors during the Retention Period.  These records, attached hereto as Exhibit E,

describe the time expended by each professional for the Second Interim and Retention periods.

8.   Given the size and complexity of this case, the complicated corporate and financial structure

of the Debtors, the degree of activity during the Retention Period and the high level of services

rendered by Applicant to the Debtors, Applicant believes that the compensation sought is fair

and reasonable.

## JURISDICTION AND VENUE

9.   This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

10. On November 10, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition in

the United States Bankruptcy Court for the Eastern District of Virginia Richmond Division (the

"Court") under chapter 11 of Title 11 of the Bankruptcy Code.  By an order entered on

November 10, 2008, the Debtors' chapter 11 cases are being jointly administered. The Debtors

are authorized to continue to operate their businesses and manage their properties as debtors in

possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the

appointment of a trustee or examiner has been made in these chapter 11 cases and no plan of

reorganization has been filed.

11. The Debtors are a leading specialty retailer of consumer electronics and operate large

nationwide electronics stores throughout the United States and Puerto Rico that sell, among other

things, televisions, home theatre systems, computers, camcorders, furniture, software, imaging

and telecommunications products, and other audio and video electronics.


## SUMMARY OF REASONABLE AND NECESSARY SERVICES RENDERED BY APPLICANT

12. As more fully described in the Engagement Letter, the Applicant performed the following

services to the extent the Applicant deems necessary, appropriate and feasible and as requested

by the Debtors:

a.  Review and analyze the Debtors' assets and the operating and financial strategies of the
    Debtors;

b.  Review and analyze the Debtors' business plans and financial projections prepared by the
    Debtors including, but not limited to, testing assumptions and comparing those
    assumptions to historical Debtor and industry trends;

c.  Evaluate the Debtors' debt capacity in light of its projected cash flows and assist in
    determination of an appropriate capital structure for the Debtors;

d.  Identify and/or initiate potential Transactions;

e.  Develop a list of potential buyers for the Debtors or any portion thereof and contact such
    potential buyers regarding their interest in pursuing a M&A Transaction;

f.  Develop a list of potential Plan sponsors for the Debtors and contact such potential Plan
    sponsors regarding their interest in pursuing a Recapitalization Transaction;

g.  Advise the Debtors on the risks and benefits of considering a Transaction with respect to
    the Debtors' intermediate and long-term business prospects and strategic alternatives to
    maximize the business enterprise value of the Debtors;

h. Review and analyze any proposals the Debtors receive from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing ("DIP"), as appropriate;

i. Assist in soliciting DIP and/or exit financing should the Debtors and/or any of its direct or indirect subsidiaries seek protection under the Bankruptcy Code or the CCAA;

j. Assist or participate in negotiations with the parties of interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a Transaction;

k. Advise the Debtors with respect to, and attend meetings of, the Debtors' Board of Directors, creditor groups, official constituencies and other interest parties, as necessary;

l. Participate in Chapter 11 hearings (or similar proceedings under the CCAA) before the court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and

m. Render such other financial advisory and investment banking services as may be agreed upon by Applicant and the Debtors.

13. All services rendered by Applicant during the Retention Period were performed at the request or direction of the Debtors or professionals of Skadden Arps, Slate, Meagher & Flom LLP ("Skadden") and McGuireWoods LLP ("McGuireWoods"). Applicant has provided a broad range of necessary financial advisory services, and Applicant respectfully refers this Court to Exhibit E for a detailed recitation of the daily activities of its professionals during the Retention Period. In summary, the main categories of services performed during the period prior to and including the Retention Period are described below:

a. Conducted a review of strategic alternatives available to the Company given liquidity constraints

    i) Performed analysis of current liquidity position and financial projections

    ii) Evaluated key stakeholder considerations

    iii) Provided recommendation with respect to restructuring proposals to Board of Directors

    iv) Presented findings to key stakeholders

b.   Assisted FTI Consulting, Inc. ("FTI") in developing projections utilized in DIP budgeting

c.   Assisted the Debtors in coordinating ongoing creditor due diligence

d.   Assisted management and FTI in developing and updating the Company's short-term and long-term financial projections

   i)   Discussed with third parties the Debtors' actual performance compared to the financial projections

e.   Conducted going concern M&A process for the Debtors' U.S. business

   i)   Identified and contacted potential buyers

   ii)   Assisted management in preparing and presenting management presentations

   iii)   Facilitated due diligence by potential buyers

   iv)   Evaluated and negotiated bids by potential buyers and assisted them in structuring potential M&A transactions

   v)   Met with key stakeholders, including the Debtors' DIP lenders and vendors, in order to structure potential M&A transactions

f.   Conducted parallel going concern M&A process for InterTAN, Inc.

   i)   Identified and contacted potential buyers

   ii)   Assisted management in preparing and presenting management presentations

   iii)   Facilitated due diligence by potential buyers

   iv)   Evaluated and negotiated bids by potential buyers and assisted them in structuring potential M&A transactions

   v)   Met with key stakeholders in order to structure potential M&A transactions

g.   Conducted sale process for certain intellectual property and online assets

   i)   Identified and contacted potential buyers

   ii)   Facilitated due diligence by potential buyers

   iii)   Evaluated and negotiated bids by potential buyers and assisted them in structuring potential M&A transactions

   iv)   Met with key stakeholders in order to structure potential M&A transactions

        v)     Assisted in conducting Section 363 auction for the assets

h.   Participated in meetings/teleconferences of the Debtors' Board of Directors and Executive Committee on the following dates to provide updates on chapter 11 progress and M&A processes:

      i)      October 21, 2008

      ii)     October 23, 2008

      iii)    November 4, 2008

      iv)    November 5, 2008

      v)      November 7, 2008

      vi)     November 9, 2008

      vii)    November 12, 2008

      viii)  November 20, 2008

      ix)     December 4, 2008

      x)      January 8, 2009

      xi)     January 9, 2009

      xii)    January 13, 2009

      xiii)   January 15, 2009

      xiv)   January 22, 2009

      xv)    February 21, 2009

      xvi)   April 6, 2009

i.    Interacted with key stakeholders such as:

      i)      Debtors' pre and post-petition lenders

      ii)     Debtors' critical vendors

      iii)    Official Committee of Unsecured Creditors and their advisors

      iv)    Companies' Creditor Arrangement Act Monitor

j.   Facilitated due diligence for:

    i)     Debtors' pre and post-petition lenders

    ii)    Debtors' critical vendors

    iii)   Official Committee of Unsecured Creditors and their advisors

k.  Participated in significant meetings/teleconferences with the Official Committee of Unsecured Creditors and their advisors on the following dates:

    i)     November 19, 2008

    ii)    November 21, 2008

    iii)   November 25, 2008

    iv)   December 2, 2008

    v)    December 4, 2008

    vi)   December 12, 2008

    vii)  December 22, 2008

    viii) December 23, 2008

    ix)   February 2, 2009

    x)    February 21, 2009

    xi)   May 6, 2009

l.  Participated in meetings/teleconferences with the DIP lenders on the following dates:

    i)     December 12, 2008

    ii)    January 5, 2009

    iii)   January 6, 2009

    iv)   January 8, 2009

    v)    January 12, 2009

    vi)   January 13, 2009

    vii)  January 14, 2009

    viii) January 15, 2009

## SUMMARY OF EXPENSES INCURRED

14. During the Second Interim and Retention Periods, Applicant incurred reasonable and necessary out-of-pocket expenses aggregating $26,337.01 and $103,034.43 respectively. Details of the expenses incurred during the Second Interim Period are also provided in Exhibit D. Applicant submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual costs incurred.

15. Applicant's charges for expenses to the Debtors are determined in the same manner as for clients in non-bankruptcy matters. Out-of-pocket expenses incurred by Applicant are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Applicant does not factor general overhead expenses into disbursements charged to clients in connection with chapter 11 cases. Applicant has followed its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions fully explained:

   a. Applicant often retains outside legal counsel in connection with Applicant's retention in chapter 11 cases. In this case, Applicant retained Debevoise & Plimpton LLP ("Debevoise") as legal counsel to assist Applicant with the preparation of the Engagement Letter and Applicant's application for retention. In addition, given the negotiations that took place with respect to Applicant's retention, Debevoise assisted Applicant with the negotiation and documentation regarding the retention. Pursuant to the Retention Order, Applicant is entitled to reimbursement for expenses incurred in connection with outside counsel;

   b. Applicant's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints. Applicant's employees are permitted to order meals in the office if Applicant's employee is required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays. Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost;

   c. Messengers and couriers are used by Applicant to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise, Applicant uses the regular postal system. Any charges for either messengers or couriers are billed to the client at cost;

d. All airfare and other transportation charges incurred by Applicant's employees directly in connection with services to the client are billed to client at cost;

e. The research/database category consists of the cost of using databases (e.g., Disclosure, Securities Data Corporation, Dow Jones, Lexis-Nexis, etc.) to which Applicant subscribes to search for and obtain information used in Applicant's financial analyses. Applicant pays the vendor's standard rate for such database services. In certain instances, Applicant has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis. Such annual or monthly services are allocated to clients based on such clients' use of each service. The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by Applicant;

f. Applicant bills photocopying charges at the rate of $0.10 per page for black and white copies and $1.00 per page for color copies;

g. With respect to local travel, Applicant's general policy enables employees to travel by taxi or, in certain circumstances, by private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. This policy is based on Applicant's determination that travel by taxi or private car service is the most efficient use of a professional's time. Applicant's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 8:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters;

h. Telephone expenses are charged based on Applicant's actual cost of telephone charges with respect to client matters; and

i. Word processing charges represent actual costs incurred by Applicant's in-house vendor and actual cost of overtime secretarial support in connection with client matters.

## **REQUESTED RELIEF**

16. By this Second Interim and Final Fee Application, Applicant requests that the Court (i) approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by Applicant during the Second Interim Period and (ii) approve the final allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by Applicant during the Retention Period.

17. At all relevant times, Applicant has been a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code and has not represented or held an interest adverse to the interest of the Debtors.

18. All services for which compensation is requested by Applicant were performed for or on behalf of the Debtors and not on behalf of any committee, creditor, or other person.

19. Applicant has not entered into any agreement, express or implied, with any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

20. The professional services and related expenses for which Applicant requests final allowance of compensation and reimbursement of expenses were rendered and incurred in connection with this case in the discharge of Applicant's professional responsibilities as financial advisor and investment bank for the Debtors in this case.  Applicant's services have been necessary and beneficial to the Debtors and its estate, creditors, and other parties in interest.

## CONCLUSION

21. WHEREFORE, Applicant respectfully requests that the Court enter an order, substantially in the form attached hereto, (i) granting interim approval of $2,537,794.68 in fees and $26,337.01 in expenses during the Second Interim Period, for a total Second Interim Compensation Amount of $2,564,131.69 in compensation, which amount reflects (a) Monthly Fees in the amount of $200,000.00 plus (b) Revised Monthly Fees of $200,000.00, (c) IP Assets M&A Fee of $499,085.00 less Revised Monthly Fee Credit of $200,000.00, (d) Minimum Recap Fee of $2,000,000.00 less Monthly Fee Credits of $161,290.32 and (e) reimbursement of expenses in the amount of $26,337.01, (ii) granting final allowance and approval of (a) compensation for professional services rendered by Applicant during the Retention Period as investment banker and financial advisor to the Debtors in the amount of $3,077,794.68 and (b) reimbursement of reasonable and necessary expenses incurred during the Retention Period in the amount of

$103,034.43, for a total Final Fee Amount of $3,180,829.11, (iii) ratifying and confirming any amounts previously received by Applicant pursuant to the Fee Procedures Order and the Retention Order approved by this Court, (iv) authorizing and directing the Debtors to pay to Applicant $2,343,928.03, representing amounts not yet received by Rothschild and (v) granting such other and further relief as this Court deems just and proper.

*        *        *

Dated:  June 15, 2009          ROTHSCHILD INC.


_____
Bernard Douton, Managing Director

# VERIFICATION

STATE OF NEW YORK      §

                                     §

NEW YORK CITY      §

BERNARD DOUTON, after being duly sworn according to law, deposes and says:

1.   I am a Managing Director with the applicant firm, Rothschild Inc. ("Rothschild"), which firm maintains offices for providing financial advisory and investment banking services at 1251 Avenue of the Americas, New York, NY 10020.  Rothschild has acted as financial advisor and investment banker to and rendered professional services on behalf of the Debtors.

2.   I have personally performed many of the financial advisory and investment banking services rendered by Rothschild as financial advisor and investment banker to the Debtors and am thoroughly familiar with all other work performed on behalf of the Debtors by the professionals in the firm.

3.   I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed the United States Trustee Guidelines For Reviewing Applications For Compensation And Reimbursement Of Expenses Filed Under 11 U.S.C. § 331 (the "Guidelines") and the Application substantially complies with these Guidelines.

370943_7.DOC

_____

Bernard Douton, Managing Director


SWORN AND SUBSCRIBED before me this 15th day of June 2009.


_____

Notary Public My Commission Expires:


DONNA GRASSO SHANDLEY
Notary Public, State Of New York
No.01GR6058322
Qualified In Westchester County
Commission Expires May 7, 20 11

370943_7.DOC