Gregg M. Galardi, Esq.       Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.      Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                 One James Center
One Rodney Square         901 E. Cary Street
PO Box 636                Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
              Debtors.      :   Jointly Administered
- - - - - - - - - - - - - - x
```

**DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO CLAIMS
(RECLASSIFICATION OF CERTAIN NON-GOODS 503(B)(9)
CLAIMS TO GENERAL UNSECURED NON-PRIORITY CLAIMS)**

    The debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors")[1], hereby file

---

[1]  The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc.
(0875), Ventoux International, Inc. (1838), Circuit City Purchasing

the Debtors' Fourteenth Omnibus Objection to Claims (Reclassification of Certain Non-Goods 503(b)(9) Claims to General Unsecured Non-Priority Claims (the "Non-Goods Claims Objection" or the "Objection"), and hereby move this Court, pursuant to sections 105 and 503(b)(9) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, for an order, the proposed form of which is attached hereto as Exhibit A, granting the relief sought by this Objection.  In support of the Objection, the Debtors respectfully state as follows:

---

Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Proper ties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, Virginia 23060.

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider this Objection under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 503(b)(9), Bankruptcy Rule 3007, and Local Bankruptcy Rule 3007-1.

**BACKGROUND**

2.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

3.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

4.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

5.    On November 12, 2008, the Court appointed

3

Kurtzman Carson Consultants LLC ("KCC") as claims, noticing and balloting agent for the Debtors in these chapter 11 cases pursuant to 28 U.S.C. § 156(c).

6.    On November 12, 2008, this Court entered that certain Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107)(the "503(b)(9) Bar Date Order").

7.    Pursuant to the 503(b)(9) Bar Date Order, this Court approved the form and manner of the 503(b)(9) bar date notice, which was attached as Exhibit A to the 503(b)(9) Bar Date Order (the "503(b)(9) Bar Date Notice"). Pursuant to the 503(b)(9) Bar Date Order and the 503(b)(9) Bar Date Notice, the bar date for filing proofs of claim asserting administrative priority claims pursuant to section 503(b)(9) of the Bankruptcy Code was December 19, 2008 (the "503(b)(9) Bar Date").

8.    On November 19, 2008, KCC served a copy of the 503(b)(9) Bar Date Notice on all parties who filed notices of appearance pursuant to Bankruptcy Rule 2002, all

4

of the Debtors' scheduled creditors in these cases, the Debtors' equity holders, and certain other parties (Docket No. 358). In addition, the Debtors published the 503(b)(9) Bar Date Notice in The New York Times (Docket No. 549), The Wall Street Journal (Docket No. 548),and The Richmond Times-Dispatch (Docket No. 547).

9. On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores. As of March 8, 2009, the going out of business sales at the Debtors' remaining stores had been completed.

10. On April 1, 2009, this Court entered an Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections (Docket No. 2881)(the "Omnibus Objection Procedures Order")

## RELIEF REQUESTED

14.  By this Objection, the Debtors seek entry of
an order, in substantially the form annexed as <u>Exhibit A</u>,
pursuant to Bankruptcy Code sections 105(a) and 503(b)(9)
and Bankruptcy Rule 3007, reclassifying each of the
seventeen (17) claims identified on <u>Exhibit B</u> allegedly
entitled to administrative priority under Bankruptcy Code
section 503(b)(9) and asserted against the Debtors (the
"Non-Goods Claims") to general unsecured, non-priority
claims.

15.  For ease of reference, attached as <u>Exhibit B</u>
is an alphabetical listing of all claimants whose Non-Goods
Claims are included in this Objection (the "Claimants"),
with a cross-reference by claim number.

16.  At this time, the Debtors have not completed
their review of the validity of all claims/expenses filed
against their estates, including the Non-Goods Claims.
Accordingly, the Non-Goods Claims may be the subject of
additional subsequently filed objections.  To that end, the
Debtors reserve the right to further object to any and all
claims, whether or not the subject of this Objection, for
allowance, voting, and/or distribution purposes, and on any

other grounds.  Furthermore, the Debtors reserve the right
to modify, supplement and/or amend this Objection as it
pertains to any claim or claimant herein.

## BASIS FOR RELIEF REQUESTED

17.  Currently, the Debtors are engaged in a
thorough review of all claims filed against their estates,
including administrative expense claims, to determine the
validity of such claims.  As part of this process, the
Debtors are diligently reviewing claims filed pursuant to
Bankruptcy Code section 503(b)(9).

18.  After reviewing numerous 503(b)(9) claims,
their supporting documentation and the Debtors' books and
records, the Debtors have determined that the Non-Goods
Claims identified on Exhibit B do not satisfy the
requirements of Bankruptcy Code section 503(b)(9).

19.  Specifically, the Non-Goods Claims are based
on, among other things, payment for:  installation
services; construction and maintenance services; utility
services; advertising services; professional services,
including consulting services, legal services, and IT
services; customer services; freight charges; litigation;
rental obligations for property leased by the Debtors;

employee services; vendor services; employee claims for wages and benefits; and various taxes. However, none of these categories of claims constitute "goods" provided to the Debtors by the Claimants within the 20 days before the Petition Date.

20. Accordingly, the Debtors object to the classification of these Non-Goods Claims as administrative expenses under Bankruptcy Code section 503(b)(9) and request that all such expenses be reclassified as general unsecured, non-priority claims.

## APPLICABLE AUTHORITY

**I.   THE NON-GOODS CLAIMS ARE NOT CLAIMS BASED ON THE SALE OF GOODS THAT QUALIFY FOR ADMINISTRATIVE EXPENSE PRIORITY UNDER § 503(B)(9).**

21. Bankruptcy Code section 503(b)(9) provides in pertinent part as follows:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, . . . including . . .
>
> > (9) the value of any <u>goods</u> received by the debtor within 20 days before the commencement of the case under this title in which the goods have been <u>sold to the debtor</u> in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9) (emphasis added).

22.   The Fourth Circuit Court of Appeals has repeatedly held that the claimant has the burden of proof on all elements of an administrative expense claim.  <u>See</u>, <u>e.g.</u>, <u>Ford Motor Credit Co. v. Dobbins</u>, 35 F.3d 860, 866 (4th Cir. 1994) (quoting <u>In re Mid Region Petroleum, Inc.</u>, 1 F.3d 1130, 1132 (10th Cir. 1993) ("the party claiming entitlement to administrative expense priority [under § 503(b)] has the burden of proof"); <u>see</u> <u>also</u> <u>In re Wetco Rest. Group, LLC</u>, No. 07-51169, 2008 WL 1848779, *4 (Bankr. W.D. La. Apr. 23, 2008) (the claimant has the "burden to establish that the value of the 20-Day Goods qualifies for administrative expense treatment under section 503(b)(9)").

23.   Moreover, in evaluating administrative expense requests, "[t]he presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors.  Thus, statutory priorities must be narrowly construed."  <u>Ford Motor Credit</u>, 35 F.3d at 865 (quoting <u>In re James B. Downing & Co.</u>, 94 B.R. 515, 519 (Bankr. N.D. Ill. 1988); <u>see</u> <u>also</u> <u>City of White Plains v. A&S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.)</u>, 270 F.3d 994, 1000 (6th Cir. 2001).

24.   This Court should therefore interpret section 503(b)(9) narrowly and in accordance with its plain meaning.  See Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6, (2000) "Congress says in a statute is what it means and means in a statute what it says there." (internal quotations omitted)); In re NVR, LP, 189 F.3d 442, 457 (4th Cir. 1999) (holding that the Bankruptcy Code must be interpreted in accordance with its plain meaning using the ordinary understanding of words); In re Amireh, 2008 WL 52706, *4 (Bankr. E.D. Va. 2008) ("The court will not expand the reach of the statute beyond the language chosen by Congress.").

25.   Bankruptcy Code section 503(b)(9) plainly provides that only claims for the value of "goods" received by the debtor within the 20 days prior to the Petition Date are entitled to administrative priority treatment.  11 U.S.C. § 503(b)(9) (emphasis added).  As documented below, the Non-Goods Claims identified on Exhibit B and C are based on something other than the sale of "goods" to the Debtors in the ordinary course of business and, therefore, should be reclassified as general unsecured non-priority claims.

**A.    Section 503(B)(9) Is Limited To The Value Of
"Goods" Sold To The Debtors, Not Services
Provided.**

26.   Consistent with the plain language of the
statute, allowed administrative expenses under section
503(b)(9) should only be claims arising from a claimant's
sale and delivery of goods to the Debtors, not from the
claimant providing services.  See Brown & Cole Stores, LLC
v. Associated Grocers, Inc. (In re Brown & Cole Stores,
LLC), 375 B.R. 873, 878 (B.A.P. 9th Cir. 2007) ("By the
plain terms of the statute, a vendor's right to assert an
administrative claim is limited [in that] the vendor must
have provided goods (not services)"); In re Goody's Family
Clothing, Inc., 401 B.R. 131, 135 (Bankr. D. Del. 2009)
("[B]ased upon the distinction between 'goods' and
'services' throughout in the Bankruptcy Code, a claim for
an administrative expense under section 503(b)(9) cannot be
a claim for services provided."); In re Samaritan Alliance,
LLC, No. 07-50735, 2008 Bankr. LEXIS 1830 at *6-7 (Bankr.
E.D. Ky June 20, 2008) (finding section 503(b)(9)
inapplicable because claimant provided what was "more
properly characterized as a 'service.'").  As one court
explained:

11

> § 503(b)(9) administrative expense priority
> extends only to the value of <u>goods</u> received by
> the debtor in the ordinary course of its business
> within 20 days before the bankruptcy case.  It
> does not extend to the value of the <u>services</u>
> rendered to a debtor during this 20 day time
> frame.  Nor does it extend to the value of goods
> that a debtor may have received in this time
> frame if such goods were not received in the
> <u>ordinary course</u> of the debtor's business.

<u>In re Plastech Engineered Prods.</u>, 394 B.R. 197, 151 (Bankr.
E.D. Mich. 2008) (emphases in original).

27.  This distinction between goods and services
is supported by the fact that in some places the Bankruptcy
Code uses the word "goods" and the word "services"
separately, <u>see</u>, <u>e.g.</u>, 11 U.S.C. §§ 522(d)(3),
524(k)(3)(F), 546(c)(1) ("goods"); 11 U.S.C. §§ 503((b)(4),
(5), 326(a), 327(a), 330(a)(1)(A) ("services"), and in
other instances the phrase "goods or services".  <u>See</u>, <u>e.g.</u>,
11 U.S.C. § 101(4A) ("The term 'bankruptcy assistance'
means any <u>goods or services</u> sold or otherwise provided . .
. ." (emphasis added)).[2]

---

[2] Other references include but are not limited to, sections
101(49) ("goods . . . or services"), 507(a)(4)(B) (two
references to "goods or services"), 523(a)(2)(C)(i)(I)
("goods or services"), 523(a)(2)(C)(iI)(II) (two
references to "goods or services"), 547(a)(2) ("goods
[or] services"), and 1104(c)(2) ("goods [or] services").

28.   In light of Congress' use of the words "good" and "services", it is clear that Congress distinguished between "goods" and "services."  The Supreme Court recognizes, when Congress referenced one, but not the other, the missing term must have been intentionally omitted.  See Gozlon-Peretz v. U.S., 498 U.S. 395, 404 (1991) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").  Therefore, "goods", as used in section 503(b)(9), must not include "services".

**B.    The Term "Goods" In Section 503(b)(9) Should Be Construed In Conformity With The Definition Of "Goods" In The UCC.**

29.   Although the term "goods" is not defined in the Bankruptcy Code, it must be construed narrowly and consistent with Congressional intent.  See Ron Pair Enter., 489 U.S. at 242 (reasoning that statutes should be interpreted based on their plain meaning and in accordance with Congressional intent); see also Ford Motor Credit Co. v. Dobbins, 35 F.3d at 865 (holding that statutory priorities under the Bankruptcy Code must be narrowly

construed); In re Federated Dep't Stores, Inc., 270 F.3d at

1000 (noting that administrative expense claims under

section 503(b) should be strictly construed).  The Debtors

submit that the proper meaning of "goods" is that meaning

found in section 2-105 of the Uniform Commercial Code (the

"UCC").

30.  The UCC defines "goods", in pertinent part,

as "all things (including specially manufactured goods)

which are movable at the time of identification to the

contract for sale other than the money in which the price

is to be paid . . . and things in action . . . ."  UCC § 2-

105(1).[3]  Interpreting the term "goods" contained in section

503(b)(9) in conformity with the UCC's definition of

"goods" is supported by the limited legislative history of

section 503(b)(9).

31.  Specifically, section 503(b)(9) was enacted

as part of section 1227 of the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005 ("BAPCPA"), by which

Congress sought to amend the provisions of the Bankruptcy

Code that addressed reclamation claims.  See BAPCPA,

---

[3]   Virginia has adopted the UCC's definition of "goods."  See Va. Code
     Ann. §8.2-105 (2008).

14

section 1227; see also 11 U.S.C. §§ 546(c) & 503(b)(9);

Kenneth N. Klee, Chapter 11 Business Reorganizations: The

Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 – Business Bankruptcy Amendments, Course No. SK092

ALI-ABA Course of Study Materials (2005)(section 503(b)(9)

"appears to be intended to allow certain sellers that do

not properly seek reclamation in accordance with section

546(c) to have an administrative expense claim for the

value of such goods."). As this Court is well aware, the

right to make a reclamation claim is grounded in UCC

section 2-702. See Matter of Adventist Living Centers,

Inc., 52 F.3d 159, 162 n.1 (7th Cir. 1995) ("The right to

reclamation arises under § 2-702 of the U.C.C. That right

is both protected and limited by 11 U.S.C. § 546 . . . .");

see also In re Coast Trading Co., Inc., 744 F.2d 686, 689

(9th Cir. 1984); In re Dana Corp., 367 B.R. 409, 414

(Bankr. S.D.N.Y. 2007); In re Georgetown Steel Company,

LLC, 318 B.R. 336, 339 (Bankr. D.S.C. 2004).

32. Consequently, to the extent Congressional

intent may be discerned, the legislative history supports

limiting section 503(b)(9) to apply only to those claims

for the value of "goods" (as defined in the UCC) that could

15

have been, but were not, subject to a valid reclamation
claim.   Thus, the scant legislative history that exists
supports the conclusion that section 503(b)(9) was intended
to apply only to a sale of "goods" as the term is used in
the UCC.

33.   Furthermore, since the enactment of section
503(b)(9), a number of courts have looked to the UCC to
determine the meaning of "goods."   See In re Goody's Family
Clothing Inc., 401 B.R. at 134 ("Use of the UCC Article 2's
definition of "goods" in interpreting section 503(b)(9) is
suggested in a leading treatise and has been adopted by
bankruptcy courts examining this issue.   Given the near
unanimous nationwide adoption of Article 2 of the UCC, the
Court concludes that the term "goods" in section 503(b)(9)
conforms with the meaning given in U.C.C. § 2-105(1);
"goods" are something that is "moveable.") (citing In re
Plastech Engineered Prods., 397 B.R. 828, 836 (Bankr. E.D.
Mich. 2008) (adopting UCC Article 2 definition of goods for
503(b)(9) claims); see also In re Samaritan Alliance, LLC,
2008 WL 2520107, at *3 (Bankr. E.D. Ky. 2008) (same); In re
Deer, No. 06-02460, 2008 WL 723982, **1-2 (Bankr. S.D.
Miss. June 14, 2007) (adopting UCC Article 9 definition of

goods for 503(b)(9) claims); 4 <u>Collier on Bankruptcy</u> ¶
503.16[1] (15th ed. rev. 2008) ("Goods is not defined in
the Code and so the definition used in Article 2 of the UCC
is likely to be used")).

34.   Additionally, in other contexts, Courts have
interpreted the meaning of words in the Bankruptcy Code
with reference to the UCC.  <u>See</u> <u>In re Price</u>, __ F.3d __,
2009 WL 975796, *3 (4th Cir. 2009) (relying on North
Carolina law, which adopted the UCC, to define the
Bankruptcy Code's use of "purchase money security
interest"); <u>In re Ellingsen MacLean Oil Co., Inc.</u>, 834 F.2d
599, 605 (6th Cir. 1987) (relying on UCC to supply the
definition for "good faith" contained in 11 U.S.C. §
364(e)); <u>Haywin Textile Prods., Inc. v. Bill's Dollar</u>
<u>Stores, Inc. (In re Bill's Dollar Stores, Inc.)</u>, 164 B.R.
471, 474 (Bankr. D. Del. 1994)(adopting UCC's definition of
the term "receipt" because the Bankruptcy Code does not
define the term and the right of reclamation is derived
from the UCC).

35.   Accordingly, for the reasons set forth
herein, the definition of "goods" contained in UCC Article
2 should be used to interpret section 503(b)(9).

C.   **The Non-Goods Claims Are Based On Services And
Other Non-Goods.**

36.   As noted above, each of the Non-Goods Claims

falls into a category that, on its face, appears not to be

"goods".  Courts addressing these issues have reinforced

this conclusion.  Specifically, Courts have concluded that

the following categories of the Non-Goods Claims constitute

something other than "goods" as that term is used in the

UCC:

> (1) utility services.  See In re Samaritan
> Alliance, LLC, 2008 Bankr. LEXIS 1830 at
> *6-7 (holding that utility company
> supplies a service and not a good under
> section 503(b)(9)); see also 11 U.S.C. §
> 366 (characterizing utilities as
> providing services and specifically
> stating that a "utility may not alter,
> refuse, or discontinue service" on
> account of a "debt owed by the debtor to
> such utility for service rendered before
> [the petition date]);
>
> (2) advertising services.  See In re Deer,
> 2007 Bankr. LEXIS 4676, *5 (Bankr. S.D.
> Miss. June 14, 2007) (holding that sale
> of advertising is not a "good" under the
> UCC);
>
> (3) professional services, including
> consulting services, legal services, and
> IT services.  See R.J. Longo Const. Co.,
> Inc. v. Transit America, Inc., 921
> F.Supp. 1295, 1309-10 (D.N.J. 1996)
> holding that the UCC does not apply to
> fees for professional services because

they are not "goods"); <u>Snyder v. ISC
Alloys, Ltd.</u>, 772 F.Supp. 244, 252-53
(W.D. PA. 1991) (same);

(4) freight charges.  <u>See</u> <u>In re CFLC, Inc.</u>,
166 F.3d 1012, 1015 (9th Cir. 1999)
(holding that contract for shipping was
not a transaction for the sale of
"goods"); and,

(5) litigation claims.  <u>C.f.</u> <u>U.S. Test, Inc.
v. NDE Environmental Corp.</u>, 196 F.3d
1376, 1383 (Fed. Cir. 1999) (holding that
the term "goods" in the UCC does not
include commercial tort claims).

37.  Moreover, section 503(b), as well as other

sections of the Bankruptcy Code, specifically

differentiates between the following categories of claims

and "goods":

(1) employee claims for wages and benefits.
<u>See</u> 11 U.S.C. § 503(b)(1)(A) (describing
post-petition work performed by employees
as "services"); <u>see also</u> 11 U.S.C. §
507(a)(5)(A) (describing contributions to
an employee benefit plan as being made on
account of "services rendered");

(2) taxes.  <u>See</u> 11 U.S.C. § 1104(c)(2)
(distinguishing between "goods, services,
[and] taxes");

(3) customer claims.  <u>See</u>, <u>generally</u>, 11
U.S.C. § 507(a)(7) (describing the
relationship between the debtor and its
customers as one by which individuals
"purchase, lease, or rent[] property, or
purchase [] services . . ." and not by

which individuals sell goods to the
debtor);

(4) rental obligations for property leased by
the Debtors.  See 11 U.S.C. § 365(d)(3);
130 CONG. REC. S8887, S8894-95 (daily ed.
June 29, 1984) (remarks of Senator Hatch)
(describing background of section
365(d)(3) of the Code) ("These payments
include rent due the landlord and common
area charges which are paid by all the
tenants according to the amount of space
they lease. In this situation, the
landlord is forced to provide current
services-the use of its property,
utilities, security, and other services")
(emphasis added); accord In re Best
Products Co., Inc., 206 B.R. 404, 407
(Bankr. E.D. Va. 1997) ("Congress enacted
§ 365(d)(3) to guarantee that landlords
would not be placed at a disadvantage for
providing post-petition services to the
debtor.") (emphasis added); In re Stone
Barn Manhattan LLC, 398 B.R. 359,361
(Bankr. S.D.N.Y. 2008) (describing
landlords as service providers).

38.  Because Congress was aware of these services

and other categories of non-goods and expressly referred to

many of them in the same section of the Bankruptcy Code, it

is clear that Congress intended to exclude these services

and other categories of non-goods from the sale of "goods"

specifically referred to in section 503(b)(9).  See, e.g.,

Gozlon-Peretz v. U.S., 498 U.S. 395, 404 (1991) (holding

that where Congress includes particular language in one

20

section of a statute but omits it in another section of the

same statute, it is presumed that Congress acts

intentionally and purposefully).  Therefore, such claims

should be reclassified as general unsecured non-priority

claims.

**D.   Various Non-Goods Claims Are Predominantly Based on Services Rendered And Not On The Sale Of Goods.**

39.  Any Non-Good Claim that is based on a

transaction that may in part include "goods" should also be

reclassified because the underlying claim arose from a

mixed transactions that was predominantly based on services

rendered rather than the sale of "goods."

40.  Specifically, in determining whether a mixed

transaction is a sale of goods, rather than the rendering

of services, courts look to the predominant purpose of the

transaction; that is, "whether the contract primarily

concerns the furnishing of goods or the rendering of

services."  Princess Cruises, Inc. v. General Elec. Co.,

143 F.3d 828, 833 (4th Cir. 1998).  As explained by the

Fourth Circuit:

> [t]he test for inclusion or exclusion is not
> whether [the transactions] are mixed but,
> granting that they are mixed, whether their

predominant factor, their thrust, their purpose,
reasonably stated, is the rendition of service,
with goods incidentally involved (e.g., contract
with artist for painting) or is a transaction of
sale, with labor incidentally involved . . . .

Id., (quoting Bonebrake v. Cox, 499 F.2d 951 (8th Cir.

1974).

41.   In order to discern the predominant purpose

of a transaction, courts consider the following factors:

"(1) the language of the contract, (2) the nature of the

business of the supplier, and (3) the intrinsic worth of

the materials."  Id.

42.   Various Non-Goods claimants filed 503(b)(9)

claims based on the installation of equipment; the

construction and maintenance of buildings; and the shipment

of products to the Debtors for resale in the Debtors'

retail stores.   The transactions underlying these claims

are in the nature of rendering services, not selling goods.

Indeed, Courts have held that transactions similar to these

Non-Goods Claims were predominantly for services rendered,

and not for "goods" sold under the predominant purpose

test.   See Princess Cruises, Inc. v. General Elec. Co., 143

F.3d 828, 833 (4th Cir. 1998) (holding that contract for

installation, repairs, and maintenance is not governed by

UCC); <u>BMC Industries, Inc. v. Barth Industries, Inc.</u>, 160 F.3d 1322, 1331 n.15 (11th Cir. 1998) ("Although construction contracts typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant."); <u>Imperial Woodworking Co. v. Christian Bernard Stores Corp.</u>, 1985 WL 2712, *5 (N.D. Ill. 1985) ("The UCC does not expand the concept of sale of goods to include a construction contract even though goods are thereby furnished and incorporated into a structure."); <u>In re CFLC, Inc.</u>, 166 F.3d 1012, 1015 (9th Cir. 1999) (holding that contract for shipping was not a transaction for the sale of "goods").  As such, these Non-Goods Claims involving mixed transactions are not sales of goods under the UCC and, thus, not entitled to administrative expense priority under Bankruptcy Code section 503(b)(9).

**II.   THE NON-GOODS CLAIMS SHOULD BE RECLASSIFIED.**

43.   Bankruptcy Code section 105 provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

23

44.   In order for the Debtors to efficiently and expeditiously craft a comprehensive plan of liquidation, it is essential for the Debtors to establish the proper liabilities asserted against them.   Indeed, it is even more critical that the Debtors confirm the administrative liabilities that can be properly asserted against the Debtors' estates.   In order to achieve the imperative of finality required by the claims process, the Debtors request that the Non-Goods Claims be reclassified at this time to general unsecured non-priority claims.

### RESERVATION OF RIGHTS

45.   As noted above, the Debtors reserve their rights to file objections to the Non-Goods Claims at a later time on any grounds that bankruptcy or non-bankruptcy law permits.   The Debtors likewise reserve the right to modify, supplement and/or amend this Objection as it pertains to any claim or claimant herein.

### NOTICE AND PROCEDURE

46.   Notice of this Objection has been provided to all claimants with claims that are the subject to this Objection as identified on <u>Exhibit B and C</u>, and to other parties-in-interest in accordance with the Court's Order

24

Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules
2002-1 and 9013-1 Establishing Certain Notice, Case
Management and Administrative Procedures (Docket No. 130)
(the "Case Management Order").

47. Furthermore, the Debtors submit that the
following methods of service upon the Claimants should be
deemed by the Court to constitute due and sufficient
service of this Objection: (a) service in accordance with
Bankruptcy Rules 3007, 7004, and 9006; (b) to the extent
counsel for a Claimant is not known to the Debtors, by
first class mail, postage prepaid, on the signatory of the
Claimant's proof of claim form or other representative
identified in the proof of claim form or any attachment
thereto at least 30 days before the hearing date; or (c) by
first class mail, postage prepaid, on any counsel that has
appeared on the Claimant's behalf in the Debtors'
bankruptcy cases at least 30 days before the hearing date.
The Debtors are serving the Claimant with this Objection
and the Exhibit(s) on which the Claimant's claim is listed.

48. To the extent any Claimant timely files and
properly serves a response to this Objection by **4:00 p.m.**

**on July 16, 2009** as required by the Case Management Order and under applicable law, and the parties are unable to otherwise resolve the Objection, the Debtors request that the Court conduct a status conference with respect to any such responding claimant at **11:00 a.m. on July 23, 2009** and thereafter schedule the matter for a future hearing as to the merits of this Objection to such Non-Goods claim. However, to the extent any Claimant fails to timely file and properly serve a response to this Objection as required by the Case Management Order and applicable law, the Debtors request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, reclassifying as a general unsecured non-priority claim in the same amount as the asserted Non-Goods Claim.

### COMPLIANCE WITH BANKRUPTCY RULE 3007 AND THE OMNIBUS OBJECTION PROCEDURES ORDER

49.   This Objection complies with Bankruptcy Rule 3007(e).   Additionally, the Debtors submit that this Objection is filed in accordance the Omnibus Objection Procedures Order.

## WAIVER OF MEMORANDUM OF LAW

50.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion, the Debtors request that the requirement that all motions be accompanied by a written memorandum of law be waived.

## NO PRIOR RELIEF

51.   No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors request the Court to enter the Order sustaining this Objection and granting such other and further relief as the Court deems appropriate.

```
Dated: Richmond, Virginia     SKADDEN, ARPS, SLATE, MEAGHER &
       June 18, 2009           FLOM, LLP
                               Gregg M. Galardi, Esq.
                               Ian S. Fredericks, Esq.
                               P.O. Box 636
                               Wilmington, Delaware 19899-0636
                               (302) 651-3000

                                      - and -

                               SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP
                               Chris L. Dickerson, Esq.
                               333 West Wacker Drive
                               Chicago, Illinois 60606
                               (312) 407-0700

                                      - and -

                               MCGUIREWOODS LLP

                               _/s/ Douglas M. Foley_____
                               Dion W. Hayes (VSB No. 34304)
                               Douglas M. Foley (VSB No. 34364)
                               One James Center
                               901 E. Cary Street
                               Richmond, Virginia 23219
                               (804) 775-1000

                               Counsel for Debtors and Debtors
                               in Possession
```

## EXHIBIT A

| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & | MCGUIREWOODS LLP |
| FLOM, LLP | One James Center |
| One Rodney Square | 901 E. Cary Street |
| PO Box 636 | Richmond, Virginia 23219 |
| Wilmington, Delaware 19899-0636 | (804) 775-1000 |
| (302) 651-3000 | |

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
          Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x
```

### ORDER SUSTAINING DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO CLAIMS (RECLASSIFICATION OF CERTAIN NON-GOODS 503(B)(9) CLAIMS TO GENERAL UNSECURED NON-PRIORITY CLAIMS)

THIS MATTER having come before the Court on the

Debtors' Fourteenth Omnibus Objection to Claims

(Reclassification of Certain Non-Goods 503(b)(9) Claims

to General Unsecured Non-Priority Claims (the "Non-Goods

Claims Objection" or the "Objection"), which requested,

among other things, that the claims specifically

identified on <u>Exhibit B</u> attached to the Objection be

reclassified as general unsecured non-priority claims

for those reasons set forth in the Objection; and it

appearing that due and proper notice and service of the

Objection as set forth therein was good and sufficient

and that no other further notice or service of the

Objection need be given; and it further appearing that

no response was timely filed or properly served by the

Claimants being affected by this Order; and it appearing

that the relief requested on the Objection is in the

best interest of the Debtors, their estates and

creditors and other parties-in-interest; and after due

deliberation thereon good and sufficient cause exists

for the granting of the relief as set forth herein,

     IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:

     1.    The Objection is GRANTED.

     2.    The Claims identified on <u>Exhibit A – Non-Goods</u>

<u>Claims</u> as attached hereto and incorporated herein, are

reclassified as general unsecured non-priority claims.

3.    The Debtors' rights to amend, modify, or
supplement the Objection, to file additional objections
to the Non-Goods Claims (filed or not) that have been or
may be asserted against the Debtors, and to seek
reduction of any Claim to the extent such Claim has been
paid, are preserved.

Dated: Richmond, Virginia
       July _____, 2009

_____
HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -


_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession


### CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

     Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                        __/s/ Douglas M. Foley____
                        Douglas M. Foley

\9470188.1

In re: Circuit City Stores, Inc, et al.                                                                 Fourteenth Omnibus Objection to Claims
Case No. 08-35653 (KRH)

Exhibit B - Claimants and Related Claims Subject To Fourteenth Omnibus Objection to Claims

| Claim Holder | Claim | Exhibit |
|---|---|---|
| AQUAPERFECT INC | 480 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| BEAUMONT ENTERPRISE | 834 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| BOSTON FIXTURES LLC | 1483 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| COLUMBUS PRODUCTIONS INC | 1069 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| DAILY CAMERA | 1082 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| DIGITAL MEDIA SOLUTIONS INC | 1429 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| ELECTRONIC PARTS UNLIMITED INC | 158 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| FOXS CLEANERS | 1043 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| HOUSTON CHRONICLE | 829 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| I O MAGIC | 188 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| J & F MANUFACTURING INC | 622 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| J&B ELECTRONICS | 461 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| PRIORITY CARE INC | 798 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| PRIVACY & INFORMATION MGMT SER | 1458 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| STANDARD COFFEE SERVICE | 1075 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| STANDARD COFFEE SERVICE | 1180 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |
| UNITED RADIO INC | 1844 | EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY |

**EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 480<br>Date Filed:   12/03/2008<br>Docketed Total:     $569.70<br>Filing Creditor Name and Address:<br>  AQUAPERFECT INC<br>  2061 N MORLEY<br>  MOBERLY, MO 65270 | Claim Holder Name and Address<br><br>  AQUAPERFECT INC          Docketed Total:          $569.70<br>  2061 N MORLEY<br>  MOBERLY, MO 65270<br><br>Case Number          503(b)(9)          Unsecured<br>                              569.70 | Modified Total:          $569.70<br><br><br>Case Number          503(b)(9)          Unsecured<br>                                              $569.70 |
| Claim: 834<br>Date Filed:   12/15/2008<br>Docketed Total:   $9,618.17<br>Filing Creditor Name and Address:<br>  BEAUMONT ENTERPRISE<br>  801 TEXAS AVE<br>  HOUSTON, TX 77002 | Claim Holder Name and Address<br><br>  BEAUMONT ENTERPRISE          Docketed Total:          $9,618.17<br>  801 TEXAS AVE<br>  HOUSTON, TX 77002<br><br>Case Number          503(b)(9)          Unsecured<br>                              9,618.17 | Modified Total:          $9,618.17<br><br><br>Case Number          503(b)(9)          Unsecured<br>                                              $9,618.17 |
| Claim: 1483<br>Date Filed:   12/16/2008<br>Docketed Total:     $570,468.36<br>Filing Creditor Name and Address:<br>  BOSTON FIXTURES LLC<br>  79 BROOK ST<br>  NEW BEDFORD, MA 02746 | Claim Holder Name and Address<br><br>  BOSTON FIXTURES LLC          Docketed Total:          $570,468.36<br>  79 BROOK ST<br>  NEW BEDFORD, MA 02746<br><br>Case Number          503(b)(9)          Unsecured<br>                              570,468.36 | Modified Total:          $570,468.36<br><br><br>Case Number          503(b)(9)          Unsecured<br>                                              $570,468.36 |
| Claim: 1069<br>Date Filed:   12/19/2008<br>Docketed Total:     $143,420.91<br>Filing Creditor Name and Address:<br>  COLUMBUS PRODUCTIONS INC<br>  4580 CARGO DR<br>  COLUMBUS, GA 31907-1958 | Claim Holder Name and Address<br><br>  COLUMBUS PRODUCTIONS INC          Docketed Total:          $143,420.91<br>  4580 CARGO DR<br>  COLUMBUS, GA 31907-1958<br><br>Case Number          503(b)(9)          Unsecured<br>                              143,420.91 | Modified Total:          $143,420.91<br><br><br>Case Number          503(b)(9)          Unsecured<br>                                              $143,420.91 |

\*     "UNL" denotes an unliquidated claim.

### EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 1082<br>Date Filed:   12/19/2008<br>Docketed Total:    $3,816.66<br>Filing Creditor Name and Address:<br>DAILY CAMERA<br>PO BOX 591<br>BOULDER, CO 80306-0591 | Claim Holder Name and Address<br><br>DAILY CAMERA          Docketed Total:          **$3,816.66**<br>PO BOX 591<br>BOULDER, CO 80306-0591<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                    3,816.66 | Modified Total:          **$3,816.66**<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                              $3,816.66 |
| Claim: 1429<br>Date Filed:   12/19/2008<br>Docketed Total:    $3,770.70<br>Filing Creditor Name and Address:<br>DIGITAL MEDIA SOLUTIONS INC<br>707 E WELLESLY AVE<br>SPOKANE, WA 99207 | Claim Holder Name and Address<br><br>DIGITAL MEDIA SOLUTIONS INC          Docketed Total:          **$3,770.70**<br>707 E WELLESLY AVE<br>SPOKANE, WA 99207<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                    3,770.70 | Modified Total:          **$3,770.70**<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                              $3,770.70 |
| Claim: 158<br>Date Filed:   12/01/2008<br>Docketed Total:    $4,001.80<br>Filing Creditor Name and Address:<br>ELECTRONIC PARTS UNLIMITED<br>INC<br>2629 US HWY 19<br>HOLIDAY, FL 34691 | Claim Holder Name and Address<br><br>ELECTRONIC PARTS UNLIMITED          Docketed Total:          **$4,001.80**<br>INC<br>2629 US HWY 19<br>HOLIDAY, FL 34691<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                    4,001.80 | Modified Total:          **$4,001.80**<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                              $4,001.80 |
| Claim: 1043<br>Date Filed:   12/09/2008<br>Docketed Total:    $2,800.00<br>Filing Creditor Name and Address:<br>FOXS CLEANERS<br>1102 W MAIN ST<br>MARION, IL 62959 | Claim Holder Name and Address<br><br>FOXS CLEANERS          Docketed Total:          **$2,800.00**<br>1102 W MAIN ST<br>MARION, IL 62959<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                    2,800.00 | Modified Total:          **$2,800.00**<br><br>_Case Number_          _503(b)(9)_          _Unsecured_<br>                              $2,800.00 |

\*      "UNL" denotes an unliquidated claim.

### EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 829<br>Date Filed:    12/15/2008<br>Docketed Total:    $190,253.75<br>Filing Creditor Name and Address:<br>HOUSTON CHRONICLE<br>801 TEXAS AVE<br>HOUSTON, TX 77002 | Claim Holder Name and Address<br><br>HOUSTON CHRONICLE    Docketed Total:    $190,253.75<br>801 TEXAS AVE<br>HOUSTON, TX 77002<br><br>Case Number    503(b)(9)    Unsecured<br>190,253.75 | Modified Total:    $190,253.75<br><br>Case Number    503(b)(9)    Unsecured<br>$190,253.75 |
| Claim: 188<br>Date Filed:    12/05/2008<br>Docketed Total:    $60,630.23<br>Filing Creditor Name and Address:<br>I O MAGIC<br>4 MARCONI<br>IRVINE, CA 92618 | Claim Holder Name and Address<br><br>I O MAGIC    Docketed Total:    $60,630.23<br>4 MARCONI<br>IRVINE, CA 92618<br><br>Case Number    503(b)(9)    Unsecured<br>60,630.23 | Modified Total:    $60,630.23<br><br>Case Number    503(b)(9)    Unsecured<br>$60,630.23 |
| Claim: 622<br>Date Filed:    12/08/2008<br>Docketed Total:    $438,704.37<br>Filing Creditor Name and Address:<br>J & F MANUFACTURING INC<br>104 46 DUNKIRK ST<br>JAMAICA, NY 11412 | Claim Holder Name and Address<br><br>J & F MANUFACTURING INC    Docketed Total:    $438,704.37<br>104 46 DUNKIRK ST<br>JAMAICA, NY 11412<br><br>Case Number    503(b)(9)    Unsecured<br>438,704.37 | Modified Total:    $438,704.37<br><br>Case Number    503(b)(9)    Unsecured<br>$438,704.37 |
| Claim: 461<br>Date Filed:    12/01/2008<br>Docketed Total:    $300.00<br>Filing Creditor Name and Address:<br>J&B ELECTRONICS<br>725 KNOX BLVD<br>RADCLIFF, KY 40160 | Claim Holder Name and Address<br><br>J&B ELECTRONICS    Docketed Total:    $300.00<br>725 KNOX BLVD<br>RADCLIFF, KY 40160<br><br>Case Number    503(b)(9)    Unsecured<br>300.00 | Modified Total:    $300.00<br><br>Case Number    503(b)(9)    Unsecured<br>$300.00 |

\*    "UNL" denotes an unliquidated claim.

In re Circuit City Stores, Inc, et al. Case 08-35653-KRH    Doc 3672    Filed 06/18/09    Entered 06/18/09 19:30:35    Desc Main

Case No. 08-35653 (KRH)    Document    Page 37 of 38    Fourteenth Omnibus Claims Objection

### EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 798<br>Date Filed:   12/11/2008<br>Docketed Total:     $40.00<br>Filing Creditor Name and Address:<br>  PRIORITY CARE INC<br>  3010 WESTLAKE RD<br>  ERIE, PA 16505 | Claim Holder Name and Address<br><br>  PRIORITY CARE INC    Docketed Total:    **$40.00**<br>  3010 WESTLAKE RD<br>  ERIE, PA 16505<br><br>Case Number    503(b)(9)    Unsecured<br>   40.00 | Modified Total:    **$40.00**<br><br><br>Case Number    503(b)(9)    Unsecured<br>   $40.00 |
| Claim: 1458<br>Date Filed:   12/16/2008<br>Docketed Total:   $1,425.60<br>Filing Creditor Name and Address:<br>  PRIVACY & INFORMATION<br>  MGMT SER<br>  4355 COBB PKY STE J 280<br>  ATLANTA, GA 30339 | Claim Holder Name and Address<br><br>  PRIVACY & INFORMATION MGMT    Docketed Total:    **$1,425.60**<br>  SER<br>  4355 COBB PKY STE J 280<br>  ATLANTA, GA 30339<br><br>Case Number    503(b)(9)    Unsecured<br>   1,425.60 | Modified Total:    **$1,425.60**<br><br><br>Case Number    503(b)(9)    Unsecured<br>   $1,425.60 |
| Claim: 1180<br>Date Filed:   12/15/2008<br>Docketed Total:     $166.12<br>Filing Creditor Name and Address:<br>  STANDARD COFFEE SERVICE<br>  PO BOX 4836<br>  FLORENCE, SC 29501 | Claim Holder Name and Address<br><br>  STANDARD COFFEE SERVICE    Docketed Total:    **$166.12**<br>  PO BOX 4836<br>  FLORENCE, SC 29501<br><br>Case Number    503(b)(9)    Unsecured<br>   166.12 | Modified Total:    **$166.12**<br><br><br>Case Number    503(b)(9)    Unsecured<br>   $166.12 |
| Claim: 1075<br>Date Filed:   12/15/2008<br>Docketed Total:     $90.90<br>Filing Creditor Name and Address:<br>  STANDARD COFFEE SERVICE<br>  PO BOX 62291<br>  NEW ORLEANS, LA 70162 | Claim Holder Name and Address<br><br>  STANDARD COFFEE SERVICE    Docketed Total:    **$90.90**<br>  PO BOX 62291<br>  NEW ORLEANS, LA 70162<br><br>Case Number    503(b)(9)    Unsecured<br>   90.90 | Modified Total:    **$90.90**<br><br><br>Case Number    503(b)(9)    Unsecured<br>   $90.90 |

\*    "UNL" denotes an unliquidated claim.

**EXHIBIT C - 503(b)(9) NON-GOODS TO MODIFY**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED* | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 1844<br>Date Filed:    12/22/2008<br>Docketed Total:      $3,234.52<br>Filing Creditor Name and Address:<br>    UNITED RADIO INC<br>    5703 ENTERPRISE PKY<br>    E SYRACUSE, NY 13057 | Claim Holder Name and Address<br><br>UNITED RADIO INC          Docketed Total:          $3,234.52<br>5703 ENTERPRISE PKY<br>E SYRACUSE, NY 13057<br><br>Case Number          503(b)(9)          Unsecured<br>                              3,234.52 | Modified Total:          $3,234.52<br><br>Case Number          503(b)(9)          Unsecured<br>                                                   $3,234.52 |

**Total Claims To Be Modified: 17**

**Total Amount As Docketed:**          $1,433,311.79

**Total Amount As Modified:**          $1,433,311.79

\*        "UNL" denotes an unliquidated claim.