Bruce H. Matson (VSB No. 29874)
Christopher L. Perkins (VSB No. 41783)
LECLAIRRYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, VA 23219
Telephone: (804) 783-2003
Facsimile: (804) 783-2994

*Counsel for Creative Realty Management, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

------------------------------------------------------------ x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
Circuit City Stores, Inc., et al.,                           :    Case No. 08-35653
                                                             :
                        Debtors.                             :    Jointly Administered
                                                             :
------------------------------------------------------------ X

**OBJECTION OF CREATIVE REALTY MANAGEMENT, LLC TO MOTION OF
THE DEBTORS FOR ORDER (I) PURSUANT TO U.S.C. §105 AND
FED. R. BANKR. P. 9020 (A) FINDING CREATIVE REALTY MANAGEMENT, LLC
IN CIVIL CONTEMPT AND (B) COMPELLING COMPLIANCE WITH ORDER AND
IMPOSING SANCTIONS FOR VIOLATIONS THEREOF, OR (II) GRANTING
THE DEBTORS RELIEF UNDER FED. R. BANKR. P. 9024 AND FED. R. CIV. P. 60
FROM ORDER ASSUMING, ASSIGNING, AND SELLING CERTAIN LEASES
TO CREATIVE REALTY MANAGEMENT, LLC AND MOTION OF THE DEBTORS
PURSUANT TO 11 U.S.C. §105, AND LOCAL BANKRUPTCY RULE 9013-1(M) FOR
<u>AN ORDER SETTING AN EXPEDITED HEARING</u>**

Creative Realty Management, LLC ("**Creative Realty**") by its undersigned counsel,

respectfully submits this objection ("**Objection**") to the (i) Motion Of The Debtors For Order (I)

Pursuant To U.S.C. §105 and Fed. R. Bankr. P. 9020 (A) Finding Creative Realty Management,

LLC In Civil Contempt And (B) Compelling Compliance With Order And Imposing Sanctions

For Violations Thereof, Or (II) Granting The Debtors Relief Under Fed. R. Bankr. P. 9024 and

Fed. R. Civ. P. 60 From Order Assuming, Assigning, And Selling Certain Leases To Creative Realty Management, LLC ("**Contempt Motion**") and to the (ii) Motion Of The Debtors Pursuant To 11 U.S.C. §105, And Local Bankruptcy Rule 9013-1(M) For An Order Setting An Expedited Hearing ("**Motion to Expedite**"), and in support thereof, respectfully states:

## PRELIMINARY STATEMENT

1. As discussed more fully herein, there is no emergency which necessitates an expedited hearing on the Contempt Motion.[1] The Debtors' sole bases for the emergent nature of the Contempt Motion is alleged diversion of time and resources of the Debtors' professionals and the requirement that the Debtors pay a cure amount under a prior order. Neither assertion is sufficient to create a true need for an emergency hearing which deprives Creative Realty of sufficient time to prepare its response and permit its witnesses to attend the hearing. Moreover, the Motion to Expedite sought an expedited hearing on <u>both</u> the Contempt Motion and the Debtors' Emergency Motion to Stay ("**Stay Order**") the execution of a June 11, 2009 Assignment Order ("**Assignment Order**") based on an alleged Assignment Agreement ("**Agreement**") between Creative Realty and the Debtors. Creative Realty respectfully submits that if the Stay Order is entered (and Creative Realty supports it), there will certainly be no need for an emergency hearing on the Contempt Motion as it will alleviate the Debtors from the requirement to provide the cure amount.

2. To the extent the Court permits the Debtors to proceed with the Contempt Motion on an emergency basis, Creative Realty objects on the grounds that the Assignment Order is not a valid order and the Debtors are not entitled to the relief requested regarding contempt and related sanctions. Indeed, the Contempt Motion is another effort by the Debtors to saddle

---

[1] Creative Realty recognizes that the Court entered an Order on June 18, 2009, granting the Motion to Expedite (which was filed just one day prior) and respectfully suggests that the granting of that order was premature as it relates solely to the Contempt Order.

2

Creative Realty with an agreement and order that were hastily prepared and do not reflect a consensual accord between the parties. That there was a lack of a "meeting of the minds" between the parties with respect to the Agreement and Assignment Order is implicitly conceded by the Debtors in the alternate relief sought by the Contempt Motion: vacate the Assignment Order pursuant to Fed. R. Civ. P. 60. Creative Realty submits vacating the Assignment Order is the proper result and whole-heartedly supports the Debtors' request, in that regard.

3. Not surprisingly, given the exceedingly narrow time frame for the Debtors to consummate the assignment[2], multiple iterations of the Assignment Order and Agreement were drafted by the Debtors both prior to and after the sale hearing on June 9, 2009. Creative Realty did not have an opportunity to review, much less agree, to the terms of the Assignment Order, as entered by the Court. Specifically, Creative Realty, from the outset of its stalking horse offer, insisted on specific landlord estoppel provisions as a term of the assignment. The Debtors continually promised but failed to deliver such language.

4. Upon the filing of the landlord's objection on June 2, 2009, regarding the proposed use and potential subdivision of the property, it became even more critical to Creative Realty that satisfying landlord estoppel language be obtained. On June 8, 2009, Creative Realty twice recommended the Debtors not go forward with the sale hearing on June 9, 2009, until such time as all parties could obtain a "consensus." Even after the hearing, the Debtors sent Creative a revised agreement that did not reflect Creative Realty's intent. The Debtors ignored Creative Realty's repeated requests, choosing instead to push forward with an order that does not accurately reflect an agreement between the parties.

---

[2] Creative Realty's stalking horse offer was made on May 21, 2009 with an auction and expedited sale hearing set for June 3, 2009 (which was postponed until June 9 but only with the stipulation of the landlord to extend the Debtors' §365(d)(4) deadline).

3

**BACKGROUND**

5. On November 10, 2008, the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

6. By Order dated February 19, 2009, the Court granted the Debtors' motion to approve certain bid and auction procedures for the sale of unexpired nonresidential real property leases ("Bid Procedures Order"). The Bid Procedures Order established March 31, 2009 as an outside rejection date and required that all bids <u>expressly</u> state that they are irrevocable.

7. By Order dated March 30, 2009, modifying the Bid Procedures Order, the Court granted the Debtors' motion to exempt 7 specific leases (and related subleases) from the March 31, 2009 outside rejection date. Under this order, the new rejection date was not to exceed the time period under Bankruptcy Code section 365(d)(4), which was June 8, 2009, in the case of the lease that is the subject of the Contempt Motion.

8. Having obtained an additional two months to market these leases, the Debtors targeted Creative Realty's principal John Mannix ("Mannix"), a long time real estate client of McGuire Woods, LLP. *See* Mannix Affidavit attached hereto as **Exhibit 1**. Mannix and his affiliated companies agreed to serve as a stalking horse bidder on at least three of the leases. Two of those lease sales resulted in competitive bidding netting the Debtors' estates a profit (and Mannix's affiliates, a break-up fee). The third, the Bloomingdale, Illinois lease ("**Lease**") is the subject of the instant Stay Motion and Contempt Motion.

9. At no time prior to June 8, 2009, did Mannix or his affiliates seek representation from outside counsel with respect to this transaction, nor were they advised to do so. Instead, Mannix and his affiliates relied on their relationship with McGuire Woods, LLP to guide them throughout the process.

10. The Lease was set to expire in February 2010 but contained options for renewal. Mannix subsequently learned that the landlord, Simon Property Group (Illinois) LP. ("**Landlord**") had entered into negotiations to lease the space to a new tenant, PetSmart.

11. On May 21, 2009, one of Mannix's affiliated companies submitted a stalking horse offer on the Lease. *See* Letter attached as **Exhibit 2**. Among the contingencies in the offer were estoppels from both the Landlord and Dollar Tree, a subtenant on the property. Given the relatively short time remaining under the Lease term and the Landlord's active negotiations with a potential new tenant, the landlord estoppel was a material consideration for Mannix. Notably, the stalking horse offer does not expressly provide that it is irrevocable.

12. The Debtors' immediate response to the offer was to remove the contingencies, given the "extremely compressed time frame." *See* May 21, 2009 email from Kelly Lazaroff attached as **Exhibit 3**. The following day, the Debtors recanted, and promised to add landlord and tenant estoppels to the Order to "allay [Creative Realty's] concerns." *See* May 22, 2009 email from Kelly Lazaroff attached as **Exhibit 4.** The Debtors' promised that the estoppels would be "coming soon." *See* May 22, 2009 email from Kelly Lazaroff attached as **Exhibit 5.**

13. In fact, the Debtors failed to produce a proposed landlord estoppel to Creative Realty until June 10, 2009, the day after the sale hearing was approved. On two occasions in late May and early June, the Debtors provided Creative Realty with proposed consent orders which contained a reference to an Exhibit B purporting to be a landlord estoppel, but without the actual exhibit, Creative Realty could not knowingly consent to the arrangement.

14. The Debtors' pushed Creative Realty to quickly execute an Assignment Agreement, which Creative executed and delivered on Friday, May 29, 2009. That same date, the Debtors filed (i) their motion to approve the assignment ("**Sale Motion**") with a scheduled

5

auction for June 3, 2009, the following Wednesday, and (ii) their motion to shorten the notice period and (iii) motion for an expedited sale hearing on June 3, 2009.

15. On Tuesday, June 2, 2009, the Landlord filed an objection to the Sale Motion. In its objection, the Landlord opposed the cure amount, requested adequate assurance of future performance of the Lease to include the use and tenant mix of the property, and specifically objected to the subdivision of the property.

16. At a hearing on June 3, 2009, the Court granted the Debtors' request to shorten the notice period and upon the stipulation of the Landlord, continued the Sale Motion to a hearing on June 9, 2009 and extended the section 365(d)(4) period to June 10, 2009.

17. Between June 3 and June 8, the Debtors and Landlord attempted to resolve the Landlord's objection. When it became apparent that no resolution was possible, Mannix sent two written requests to the Debtors to adjourn the June 9, 2009 hearing given the "confusion on the Bloomingdale lease assignment" so that a "consensus can be reached." *See* June 8, 2009 email from John Mannix attached as **Exhibit 6**. Mannix noted that the issues raised by the Landlord were contrary to Creative Realty's "intent" in entering into the Agreement. *See* June 8, 2009 email from John Mannix attached as **Exhibit 7.**

18. Despite an obvious lack of a consensus between the parties as to the terms of the deal, and Mannix's repeated requests to adjourn the hearing, the Debtors ignored the realities of the situation and pressed forward with the sale hearing on June 9, 2009.

19. On June 9, 2009, the Debtors sent a proposed revised Assignment Agreement to Creative Realty with the suggestion that the May 29 signature page be substituted. The revisions to the Assignment Agreement included a new paragraph that the Debtors would make "commercially reasonable efforts" to obtain the landlord estoppel. As the landlord estoppel was

6

critical to Mannix from day one, and given that the Debtors had promised to include it in the order, Creative Realty would not agree to this changed proposal which appeared to play fast and loose with the assignment process.

20. On or around 10:40 a.m. on June 10, 2009, the Debtors sent an email to Creative Realty which indicated that an Order would be tendered to the Court by <u>noon</u>. *See* June 10, 2009 email from Kelly Lazaroff attached as **Exhibit 8**. The email failed to contain a proposed order and failed to explain which order would be tendered. Mannix was unavailable but his assistant immediately opposed the submission of any Order and any potentially altered Agreement without an opportunity to review both first and reiterated their request for landlord estoppel which had been promised but never delivered.

21. At 3:56 p.m. on June 10, 2009, the Court entered the Assignment Order, which Creative had not reviewed nor approved. Counsel for the Debtors misrepresented that the only change to the order submitted to the court involved the deposit. *See* June 11, 2009 email from Douglas Foley attached as **Exhibit 9**. To the contrary, a side by side comparison reveals that the Assignment Order differs vastly from the proposed orders given to Creative Realty in late May and early June.

22. By email dated June 11, 2009, Creative Realty reminded the Debtors that it had not consented to the entry of the order on the previous day given the last minute changes to the Assignment Order and Agreement, and the failure to provide a landlord estoppel.

23. On June 17, 2009, at 11:08 p.m. the Debtors filed the Contempt Motion, Stay Motion, and Motion to Expedite, scheduling each for a hearing on June 23, 2009.

24. On June 18, 2009, the Debtors obtained a signed estoppel from the Landlord but failed to transmit it to Creative Realty.

7

Document    Page 8 of 13

25. As discussed more fully below, the Contempt Motion should not be heard on an emergency basis, particularly in light of the Stay Motion, and given the prejudice it will create to Creative Realty in its efforts to prepare for and present evidence at the hearing. Even if the Contempt Motion were to be heard, it is without support as it lacks a valid order as its basis, given Creative Realty's consistent objections to its entry. Instead, the Debtors' request to vacate the Assignment Order is the precise relief that should be granted given the lack of a meeting of the minds between the parties.

## ARGUMENT

### I. There is no emergency necessitating an expedited hearing on the Contempt Motion.

26. Local Bankruptcy Rule 9013-1(N) requires that the party requesting an expedited hearing demonstrate a "true need for an emergency hearing." The Motion To Expedite relies on two grounds for the alleged emergency: (1) Creative's position with respect to the Assignment Order is diverting the time and resources of the Debtors and their professionals; and (2) the Debtors are required under the Assignment Order to pay the Landlord a cure amount.

27. The first ground fails to convey any true need for an emergency hearing as the alleged diversion of the Debtors and their professionals is not material. By way of example, it is clear the Debtors are handling a great deal of issues other than this contract dispute, to wit: (1) as of June 22, 2009, there are over 3,600 entries on the case docket; (2) the June 23 omnibus hearing docket contains 57 items, only two of which relate to the instant dispute; and (3) on June 19, 2009 alone, the Debtors filed 8 different pleadings, including Debtors Fifteenth, Sixteenth, Seventeenth, and Eighteenth Omnibus Objections to Claims. As all of this activity amply demonstrates, the Debtors cannot honestly be said to be materially diverted from the case. This dispute is but a minor issue among the myriad of activities pursued by the Debtors. A brief delay

in its adjudication will not prejudice the Debtors whereas moving forward on an emergency basis is prejudicial to Creative Realty's ability to prepare its defense.

28. The second ground for the alleged emergency – that the Debtors must pay the Landlord the cure amount under the Assignment Order – is alleviated by the Stay Motion. Indeed, it is obvious the Debtors contemplated this very fact by drafting and filing the Stay Motion and Creative Realty supports its entry. Upon entry, there will be no emergency requiring and expedited hearing on the Contempt Motion – and thus Creative Realty can be afforded a reasonable opportunity to respond and prepare its evidence and testimony for presentation to the Court.

## II. The Relief sought by the Contempt Motion is inappropriate given the lack of a valid order.

29. The Debtors correctly point out that in order to establish civil contempt, the moving party must first establish the existence of a valid decree. Contempt Motion at ¶27.

30. As demonstrated by the factual background recited above, the Assignment Order entered by the Court on June 10, 2009, is invalid as it (1) was not reviewed, much less agreed to, by Creative Realty and (2) fails to accurately reflect an agreement between the parties. Indeed, there was no meeting of the minds with respect to the materials terms of the Assignment Order and Agreement.

31. There is no dispute that this transaction was rushed and hastily thrown together in order to meet the Debtors' section 365(d)(4) deadline of June 8, 2009. The Debtors repeatedly pushed Creative into making a bid, initially rejecting but then agreeing to Creative Realty's demand for landlord estoppel, hurriedly filling the Sale Motion and shortening the usual notice period, and pressing forward with the hearing on June 9 despite the Landlord's objection and Creative Realty's two requests on June 8 that the matter be adjourned until the parties could

reach a "consensus" because the deal at that point was not reflective of Creative Realty's "intent."

32.  Importantly, Creative Realty did not have the benefit of outside counsel in connection with the transaction. As an accommodation to its long-time firm, McGuire Woods, LLP (which had gone to great lengths to exclude 7 targeted leases from the original outside lead rejection date) Mannix agreed to allow his affiliated companies to serve as stalking horse bidders in an effort to create a positive recovery for the Estate. Relying on a ten-year relationship with McGuire Woods, LLP with respect to Mannix's real estate dealings, Mannix expected his company's rights would be protected. Only on June 8, 2009, when the Debtors refused to continue the sale hearing despite obvious disconnect among the Landlord, the Debtors, and Creative Realty, did Mannix realize that his law firm was not looking out for his companies' best interests. At that point it was too late. The Debtors pushed forward with the hearing the following day, then submitted an order to the Court over Creative Realty's objection and without an opportunity for Creative Realty to review.

33.  Given all of the above, the Assignment Order is not valid and cannot form the basis of the Contempt Motion. The Assignment Order does not reflect Creative Realty's agreement as Assignee of the Lease because, among other things, it does not contain the landlord estoppel requested by Mannix from day one, and promised by the Debtors.

**III.  The alternative relief sought by the Contempt Motion – vacate the Assignment Order pursuant to Fed. R. Civ. P. 60 – is wholly appropriate.**

34.  The Debtors implicitly recognize the defects in the Assignment Order by alternatively requesting that the Court vacate the Assignment Order. Creative Realty agrees with the Debtors that this is the proper result to be had in this circumstance, but for reasons other than those cited by the Debtors.

35. Pursuant to Fed. R. Civ. P. 60(b) (made applicable to this proceeding by Bankruptcy Rule 9024), on motion and just terms, the court may relieve a party from a final judgment or order for the following reasons, among others:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence;

(3) fraud, misrepresentation, or misconduct by an opposing party; or

. . . .

(6) any other reason that justifies relief

36. The Debtors suggest that Creative Realty's refusal to comply with the Assignment constitutes newly discovered evidence sufficient to support vacating the order under subsection (b)(2); that Creative Realty defrauded the Debtors, thus triggering subsection (b)(3); and that equity supports vacating the order under subsection (b)(6).

37. To the contrary, Creative Realty respectfully suggests to the Court that it was Debtors' actions that justify vacating the Assignment Order. It was the Debtors, based on their counsel's long history of real estate transactions with John Mannix, who sought out Creative Realty and pushed it into making a bid, then ignored Mannix's repeated objections to the form of the agreement and the form of the order, and Mannix's opposition to going forward with a sale hearing in the face of the Landlord's objection and lacking a "consensus" among the parties. These actions at best constitute surprise or excusable neglect under subsection (b)(1) and at worst amount to misrepresentations or misconduct under subsection (b)(3) sufficient to justify vacating the order.

38. Setting aside the issue of who is at fault, Creative Realty Management, LLC agrees that the circumstances here support vacating the order under subsection (b)(6). Given the lack of a meeting of the minds of the parties, the Assignment Order does not reflect a consensual

assignment. Moreover, as the Debtors point out, the Landlord opposed the relief and would not be prejudiced thereby.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, Creative Realty respectfully requests that the Court grant the Debtors' Stay Motion; deny the Debtors' Motion to Expedite the Contempt Order; and to the extent the Court grants the Motion to Expedite the Contempt Motion, deny the relief requested therein with respect to the contempt and sanctions, but grant the relief as it relates to the Rule 60 relief and vacate the Assignment Order.

                              CREATIVE REALTY MANAGEMENT, LLC

                              /s/ Christopher L. Perkins
                              Counsel

Bruce H. Matson (Va. Bar No. 29874)
Christopher L. Perkins (Va. Bar No. 41783)
LECLAIRRYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 783-2003

*Counsel for Creative Realty Management, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of June 2009, a true and correct copy of the foregoing was served by electronic mail on all including the following:

>Robert B. Van Arsdale
>Office of the United States Trustee
>701 East Broad St. Suite 4304
>Richmond, Virginia 23219
>>*Assistant United States Trustee*

>Douglas M. Foley
>Dion W. Hayes
>McGuireWoods LLP
>One James Center
>901 East Cary Street
>Richmond, Virginia 23219
>>*Counsel for the Debtors*

>Gregg M. Galardi
>Ian S. Fredericks
>Skadden, Arps, Slate, Meagher & Flom, LLP
>P. O. Box 636
>Wilmington, DE 19899
>>*Counsel for the Debtors*

>>/s/ Christopher L. Perkins

A/72781162.4