# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| Circuit City Stores, Inc., et al., | : | Case No. 08-35653 |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

------------------------------------------------------------ X

**AFFIDAVIT OF JOHN B. MANNIX IN SUPPORT OF OBJECTION OF CREATIVE
REALTY MANAGEMENT, LLC TO MOTION OF
THE DEBTORS FOR ORDER (I) PURSUANT TO U.S.C. §105 AND
FED. R. BANKR. P. 9020 (A) FINDING CREATIVE REALTY MANAGEMENT, LLC
IN CIVIL CONTEMPT AND (B) COMPELLING COMPLIANCE WITH ORDER AND
IMPOSING SANCTIONS FOR VIOLATIONS THEREOF, OR (II) GRANTING
THE DEBTORS RELIEF UNDER FED. R. BANKR. P. 9024 AND FED. R. CIV. P. 60
FROM ORDER ASSUMING, ASSIGNING, AND SELLING CERTAIN LEASES
TO CREATIVE REALTY MANAGEMENT, LLC AND MOTION OF THE DEBTORS
PURSUANT TO 11 U.S.C. §105, AND LOCAL BANKRUPTCY RULE 9013-1(M) FOR
<u>AN ORDER SETTING AN EXPEDITED HEARING</u>**

|  |  |
|---|---|
| STATE OF NEW YORK | : |
|  | : SS |
| COUNTY OF NEW YORK | : |

The undersigned, being first duly sworn, deposes and states as follows:

1.      I am legally competent to testify under oath to the matters stated herein and I am not
under any legal disability which would prevent me from testifying.

1

2.      I am a principal in one of the two equal members of Creative Realty Management, LLC ("Creative Realty").  I have been involved in the real estate industry for over twenty (20) years, including retail development, redevelopment, management and ownership.  Companies with which I have been affiliated have been represented by McGuireWoods, LLP and its predecessor ("McGuireWoods") for over ten (10) years.

3.      Earlier this year, I was approached by representatives of McGuireWoods and Circuit City about their desire that one or more of my affiliated companies act as a "stalking horse" for lease assignment bids in order to create value for the Debtor.  I was told that it would be a win-win situation for my affiliated company and the Debtor, as it would force the landlords and others to bid for leases in excess of the stalking horse proposed purchase price (in which case the stalking horse would be paid a termination fee) or my affiliated company would be able to take an assignment of the valuable leasehold interests.  I was told that my affiliated companies would be able to act as the stalking horse selectively, based upon our perceived value of the leases.  I agreed to pursue such an arrangement, relying heavily upon my longstanding relationship with McGuireWoods.

4.      One of my affiliated companies submitted a stalking horse offer for a ground lease in San Mateo, California, for which another party (I believe the landlord) was the successful bidder.  An affiliated company also submitted a stalking horse offer for a lease in Chesterfield, Virginia, for which another party was the successful bidder.

5.      In May 2009, representatives of McGuireWoods and/or the Debtor brought to my attention Debtor's ground lease for property in Bloomingdale, Illinois, which they thought had substantial value but was subject to being deemed rejected soon, without any benefit to the estate of the Debtor.  On May 21, 2009, one of my affiliated companies submitted a stalking horse offer for that lease assignment.  Debtor's counsel responded on May 22, 2009 by saying that a company satisfying "adequate assurances" would have to be the stalking horse, the timeframes would have to be compressed and the contingencies removed (one of which was estoppels), but added that she would "add provisions to the order asking the court for landlord and tenant estoppels to allay your concerns." (See Exhibit 4 attached to Objection of Creative).

2

6.    Shortly thereafter, I received a draft order that stated in paragraphs 25 and 26:

"25.    The Landlord shall executed (sic) an estoppel, in substantially the form attached hereto as <u>Exhibit B.</u>

26.    The Sublessee shall executed (sic) an estoppel, in substantially the form attached hereto as <u>Exhibit C</u>."

That language did allay some of my concerns, as I understood it to mean that I would be able to review, approve and receive the estoppels before the Assignment Order would be submitted and signed.  The May 22, 2009 transmittal email confirmed my thoughts as it concluded "Estoppels coming soon." (See Exhibit 5 attached to Objection of Creative). However, I never received from Debtor's counsel or Debtor the proposed estoppels until June 10, 2009, shortly before the Assignment Order was entered by this Court.

7.    To persuade me about the economic benefits of the assignment of the ground lease, on May 28, 2009 Debtor sent me a copy of a proposed letter of intent to lease a portion of the demised premises which was submitted to the landlord by a national retailer. On May 29, 2009, Creative Realty signed and submitted a written Sale, Assumption and Assignment Agreement ("Agreement").

8.    On June 2, 2009, I was informed that the June 3, 2009 auction would not proceed as scheduled because  no bids were received, but I was informed the landlord filed on or before June 2, 2009 objections to the proposed assignment of the ground lease to Creative Realty.

9.    Between June 3 and June 8, it became increasingly clear to Creative Realty that the relationship between landlord and the Debtor's counsel was strained, and on June 8, 2009, I sent two email to express my concern. In the first email to Douglas Foley of McGuireWoods, I said "[w]e obviously now have some concern that we are stepping into a messy situation with Simon, which is not (nor ever has been) our intent." (See Exhibit 7 attached to Objection of Creative). In the second email I sent to all parties involved, I expressed my concerns and opinion that the hearing on the assumption should not go forward until some kind of consensus could be breached with regard to all

3

questions on the table.  My request was summarily dismissed by Debtor's counsel. (See Exhibit 6 attached to Objection of Creative).

10.     On June 9, 2009, when I was not available, my office received a revised Sale, Assumption and Assignment Agreement, to which it was suggested that my signature page (from the May 28, 2009 Agreement I signed) would be attached.  Upon learning what appeared to be transpiring, my office immediately advised Debtor's counsel that such action was invalid and not acceptable.

11.     On June 10, 2009 before the proposed Assignment Order was submitted, Debtor's counsel knew of our concerns and that the deposit had not been paid, and requested confirmation that funds would be wired upon entering of the order.  Creative did not so confirm because of the dispute regarding the proposed Assignment Order, the failure to submit estoppels for our approval, and the confusion generated by unauthorized changes to the Sale, Assumption and Assignment Agreement.  The final estoppels were not delivered to us until shortly before the Assignment Order was to be delivered to this Court at noon June 10, 2009. (See Exhibit 8 attached to Objection of Creative).

12.     On June 11, 2009, I reiterated my objection to the submission of the Assignment Order that was not consistent with our understanding or what was delivered to me on May 22, 2009, that the "signature page swap" was invalid, and that the landlord estoppel was never delivered as agreed upon.  Instead of addressing my concerns immediately, Debtor's counsel responded by threatening litigation, misleadingly asserting that the "only change to the order was to clarify that you owed the entire purchase price since you never paid the deposit."  (See Exhibit 9 attached to Objection of Creative). In fact, many changes were made to the proposed Assignment Order given to me on May 22, 2009, which changes were not accepted by Creative, including the important estoppel language in paragraphs 25 and 26.

13.    Creative Realty never agreed to the terms of the Assignment Order or estoppels submitted to this Court for approval, and the terms of those documents were critical elements of Creative Realty's decision to sign and submit the Agreement. Creative Realty would not have submitted the Agreement if Debtor had informed Creative Realty that the proposed Assignment Order would be changed without the consent of Creative or that the estoppels would not be in a form acceptable to Creative Realty.

John B. Mannix

Sworn to before me and subscribed in my presence on this 23rd day of June, 2009.

ALEXANDRIA J. LUCAS
NOTARY PUBLIC, STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01LU6025826
COMMISSION EXPIRES _____

NOTARY PUBLIC

5