| | |
|---|---|
| William H. Schwarzschild, III – VSB No. 15274 | Scott R. Kipnis |
| W. Alexander Burnett – VSB No. 68000 | Nicholas B. Malito |
| **WILLIAMS MULLEN** | **HOFHEIMER GARTLIR & GROSS, LLP** |
| Two James Center, 16th Floor | 530 Fifth Avenue |
| 1021 East Cary Street | New York, New York  10036 |
| P.O. Box 1320 | Phone: 212.818.9000 |
| Richmond, Virginia  23218-1320 | Fax: 212.897.4999 |
| Phone: 804.783.6489 | skipnis@hgg.com |
| Fax: 804.783.6507 | nmalito@hgg.com |
| tschwarz@williamsmullen.com | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

-----------------------------------------------------------x
: 
In re: : Chapter 11
: 
CIRCUIT CITY STORES, INC., *et al.*, : Case No. 08-35653 (KRH)
: 
Debtors. : (Jointly Administered)
: 
: Related to Docket No. 3664
: 
-----------------------------------------------------------x

**RESPONSE OF DOLLAR TREE STORES, INC. TO DEBTORS' MOTION FOR ORDER (I) PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 9020 (A) FINDING CREATIVE REALTY MANAGEMENT LLC IN CIVIL CONTEMPT AND (B) COMPELLING COMPLIANCE WITH ORDER AND IMPOSING SANCTIONS FOR VIOLATIONS THEREOF, OR (II) GRANTING DEBTORS RELIEF UNDER FED. R. BANKR. P. 9024 AND FED. R. CIV. P. 60 FROM ORDER ASSUMING, ASSIGNING, AND SELLING CERTAIN LEASES TO CREATIVE REALTY MANAGEMENT LLC**

Dollar Tree Stores, Inc. ("Dollar Tree"), a creditor and party-in-interest in the above-captioned jointly administered chapter 11 cases, by and through its undersigned counsel, hereby submits this response (the "Response") to, <u>inter alia</u>, Debtors' Motion For Order (I) Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9020 (A) Finding Creative Realty Management LLC In Civil Contempt and (B) Compelling Compliance With Order and Imposing Sanctions For Violations Thereof, or (II) Granting Debtors Relief Under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60 from Order Assuming, Assigning, and Selling Certain Leases to Creative

{ 05670/077/01193668:5-NBM}

Realty Management LLC (the "Motion").[1]  In support of this Response, Dollar Tree respectfully represents as follows:

## BACKGROUND

1. On November 10, 2008 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. Circuit City Stores, Inc., one of the aforementioned Debtors, subleases a portion of the premises located at 340 West Army Trail Road in Bloomingdale, Illinois (the "Premises") to Dollar Tree pursuant to a sublease dated January 2004 (the "Sublease").

3. Dollar Tree remains in possession of the Premises and, upon information and belief, the Debtors continue to enjoy the benefits of Dollar Tree's subtenancy.

4. Dollar Tree became aware of the Debtors' motion (the "Sale Motion") to sell and assign the Lease and Sublease for the Premises to Creative Realty Management LLC (the "Assignee") subsequent to the date it was filed. Dollar Tree informed the Debtors that it had no objection to the sale and assignment, but that it required certain changes to the form of the sublessee estoppel (the "Sublessee Estoppel") and the form of the order. Dollar Tree and the Debtors consensually resolved their differences with minor modification to the Sublessee Estoppel and the form of the order, none of which adversely affected the Assignee or Simon Property Group, Inc. (the "Landlord").

5. On June 9, 2009, the Court held a contested hearing on the Sale Motion. Dollar Tree's counsel attended the hearing in person and telephonically, with the Court's permission. The Sale Motion was approved and the Court entered the sale and assignment order on June 10,

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Motion.

2009 (the "Assignment Order").

6. Pursuant to the Assignment Order, the "Effective Date" of the assumption, assignment, and sale of the Leases was June 9, 2009 and the closing was to take place immediately. See Assignment Order ¶ 8; Assignment Agreement ¶ 2. The Debtors did not assume the Leases <u>conditionally</u> and the sale closing was not conditioned upon any other acts (<u>i.e.</u>, whether the cure or any other amounts were paid). Additionally, pursuant to the Assignment Order, and section 365 of the Bankruptcy Code, the Debtors became liable for the undisputed cure amount.

7. Pursuant to the Sublessee Estoppel[2] and the Assignment Order, Dollar Tree was assured that it was not in default under the Sublease and that the Sublease was in full force and effect. Dollar Tree has relied on the Debtors' affirmations and the Court's findings in the Assignment Order.

8. On June 11, 2009, the Debtors first informed Dollar Tree that the Assignee was unwilling to comply with the Assignment Order.[3] Subsequently, Dollar Tree and the Debtors remained in contact regarding the status of the negotiations between the Debtors and the Assignee. Dollar Tree was not a part of these negotiations.

## RESPONSE

**Debtors' Request for Relief under Fed. R. Civ. P. 60(b)**

9. The Debtors request to vacate the Assignment Order should not be granted because there is no basis to do so. The Debtors present their request for relief as a

---

[2] The Sublessee Estoppel as signed by Dollar Tree was to be held in escrow and not to be effective until it was countersigned by the Debtors.

[3] Dollar Tree has not seen any evidence to contradict the Debtors' contention that the Assignee has unlawfully refused to comply with the Assignment Order. Given the short notice upon which the Motion is being heard, Dollar Tree reserves its rights as to any arguments put forth in papers not yet filed or at the hearing.

{ 05670/077/01193668:5-NBM}    3

straightforward Rule 60(b) analysis, wholly ignoring the well known and universally accepted heightened degree of finality accorded to unstayed sale orders and the general rule prohibiting review of such sale orders. The Debtors assumed the Leases and by doing so created an administrative expense priority for any claims related to the Leases. As shown below, the Court is prohibited as a matter of law and public policy to review the unstayed Assignment Order.

10. Even if the Court believes that it is not prohibited from reconsidering the Assignment Order as a matter of law, the Debtors have not articulated a basis for the relief requested. The Debtors' analysis under Rule 60(b) is entirely lacking of the factual elements necessary to grant the relief requested. Depending on which side is to be believed, either the Debtors or the Assignee is in breach of its agreement. This is a straightforward question for which monetary relief or specific performance is a sufficient remedy.

11. Nonetheless, the Debtors' chief concern, and the one that they wisely attempt to downplay, is that they have assumed the Leases. By assuming the Leases, the Debtors have created an administrative expense priority for the claims of Landlord and Dollar Tree--to the extent either party has a claim that is required to be cured in order to complete the assumption process under section 365 of the Bankruptcy Code or in the event that the Assignee is not ordered to comply with the Assignment Order and the Debtors reject the Leases. The real reason that the Debtors want the Court to vacate the Assignment Order is so they can avoid administrative expense liability that was created to protect parties such as the Landlord and Dollar Tree in this type of situation. However, the Debtors' carelessness in failing to obtain an escrow of the deposit and thereafter the sale price prior to assuming the Leases is not a valid reason to vacate the Assignment Order. The Debtors drafted the Assignment Order; had they thought it necessary to stay entry of the Assignment Order, pending a condition subsequent, they

could have drafted the Assignment Order accordingly.

12.     Additionally, the Assignment Order may have put the Assignee and Dollar Tree in privity.  Any breach of the Assignment Order by the Assignee may be a breach of that privity.  Dollar Tree has upwards of 50 years of lease control at issue here.  If the breach continues and the closing does not happen, Dollar Tree will have a significant claim for damages to its leasehold rights—a claim which Dollar Tree is prepared to fully prosecute if necessary.  If the Court vacates the Assignment Order not only will Dollar Tree not have a post-petition claim against the Debtors it may not have a claim against the Assignee as well.

A.     **The Motion Must be Denied Because Review of the Assignment Order In the Manner Requested by the Debtors is Prohibited as a Matter of Law**

13.     Section 363(m) of the Bankruptcy Code and well-settled case law unequivocally limit review over an unstayed sale order to the narrow issue of whether the property was sold to a good faith purchaser.  Section 363(m) provides:

> The reversal or modification on appeal of an authorization … of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

14.     Additionally, Bankruptcy Rules 6004(h), which stays an order authorizing the use, sale, or lease or property until 10 days after entry of the order, and 6006(d), which stays an order authorizing the assignment of an executory contract or unexpired lease until 10 days after the entry of the order, were waived by the Court at the request of the Debtors.  See Fed. R. Bankr. P. 6004(h) and 6006(d).

15.     Presumably aware of these obstacles, the Debtors seek an end-run around these

limitations, that they sought as part of the Sale Motion (See Sale Motion ¶¶ 66-67) and as part of the Assignment Order (See Assignment Order ¶ 28), by seeking an order of this Court to vacate the Assignment Order.

16.     Courts have uniformly recognized the statutory limitation imposed by Section 363(m), noting that regardless of an appellant's challenge to a sale order, a court may neither reverse nor modify the judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted.  Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); In re Gucci, 105 F.3d 837, 840 (2d Cir. 1997) (citing U.S. v. Salerno, 932 F.2d 117 (2d Cir. 1991)); In re Stadium Mgmt Corp., 895 F.2d 845, 847-48 (1st Cir. 1990); In re Gilchrist, 891 F.2d 559, 560 (5th Cir. 1990); In re The Charter Co., 829 F.2d 1054, 1056 (11th Cir. 1987); In re Vetter Corp., 724 F.2d 52, 55-56 (7th Cir. 1983); In re Baker, 339 B.R. 298, 303 (E.D.N.Y. 2005) (dismissing request to review unstayed sale order based on well settled law).

17.     "Although a strict reading of Section 363(m) limits its application to appeals, courts have extended the principle of it to motions to reconsider and to Rule 60(b) motions." In re Summit Ventures, Inc., 161 B.R. 9, 11 (D. Vt. 1993) (citations omitted).  Moreover, a motion under Rule 60(b)(6) is not a substitute for a timely appeal.  In re Teligent, Inc., 326 B.R. 219, 227 (S.D.N.Y. 2005).

18.     There is no dispute that the Debtors assumed the Leases, that Assignment Order has been approved by this Court as a final order, and that no stay has been sought or granted with respect to that order.  The Debtors specifically asked the Court to waive the stay imposed by Bankruptcy Rules 6004(h) and 6006(d).  Consequently, review of the Assignment Order is statutorily limited to determining whether the Assignee purchased in good faith.

19.     In its findings of fact and conclusions of law, this Court found that the assumption

and assignment were made in good faith. In the Assignment Order the Court stated that:

> The Assignment Agreement (as defined herein) and the sale of the Leases was negotiated and has been and is undertaken by the Debtors and the Assignee at arms' length without collusion or fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code. As a result of the foregoing, the Debtors and the Assignee are entitled to the protections of Section 363(m) of the Bankruptcy Code.
>
> Neither the Debtors nor the Assignee engaged in any conduct that would cause or permit the Assignment Agreement or the consummation of the Sale to be avoided….

Assignment Order ¶¶ I & J.

20. Notably, the Debtors have not argued lack of good faith in the Motion. There is no dispute that the Debtors have conducted a months long elaborate sale procedure and that sufficient due diligence was done with respect to the Assignee. Upon information and belief, the Assignee was provided with an opportunity to review and object to the form of the Sale Motion and the form of the Assignment Order. The Court subsequently found that "[a] reasonable opportunity to object or be heard regarding the relief in this [Assignment] Order has been afforded to all interested persons and entities…." The fact that the Assignee did not object at the hearing is to no avail. Based on the Court's findings it is apparent that neither party engaged in any illicit behavior. The present dispute is simply a question of whether the Debtors or the Assignee have breached—a question for which application of Rule 60(b) is not appropriate.

21. As the Court is aware, there is a strong public policy favoring finality and against modifying unstayed sale orders. See In re Gucci, 105 F.3d at 840; In re Stadium Mgmt. Corp., 895 F.2d at 847-48; In re CGI Industries, Inc., 27 F.3d 296, 299 (7th Cir. 1994) (finality of sale orders is critical to bankruptcy sales process therefore making for a strong public policy in favor

{ 05670/077/01193668:5-NBM}    7

of the sanctity of sale orders).[4] In an attempt to create an exception to this longstanding rule, parties seeking review of unstayed sale orders have attempted to make a distinction between sales that have closed and those that have not closed as of the date the party seeks review of the sale order in question. "[S]ection 363(m) does not require the purchaser to take irreversible steps consummating the sale before the absence of a stay will render [review] moot." In re Southwest Products, Inc., 144 B.R. 100, 105 (BAP 9th Cir. 1992) (citing In re Exennium, Inc., 715 F.2d 1401 (9th Cir. 1983)). Rather, "[t]he critical step is approval by the bankruptcy court, not closing." In re Baker, 339 B.R. at 304; see also In re Stadium Mgmt. Corp., 895 F.2d at 849; In re Vetter Corp., 724 F.2d at 55-56.

22. The Debtors argue that since the Assignee has not paid the purchase price (i.e., closed the sale) there will be no harm to undoing the sale. See Motion ¶ 41. However, the Debtors ignore that they assumed the Leases, that the sale and assignment became effective on June 9, 2009, that the Assignee and Dollar Tree are now in privity, and that if the Assignment Order is vacated Dollar Tree's tenancy will be harmed. There is simply no basis to argue that the Assignee's failure to complete the closing is grounds to undo the sale. As the Assignment Order has clearly been entered with respect to the Leases, review on the issues raised by the Debtors in the Motion is not permitted.

23. For the reasons stated above, it is impermissible as a matter of law and public policy, respectfully, for the Court to review the Assignment Order in the manner and for the reasons requested by the Debtors. Respectfully, Dollar Tree requests that the Court honor the

---

[4] The limitation on review of unstayed sale orders, however, even applies where the party seeking review believes the sale has been wrongly authorized. See In re Stadium Mgmt. Corp., 895 F.2d at 849 (quoting In re Sax, 796 F.2d 994, 997-98 (7th Cir. 1986)) ("Section 363(m) does not say that the sale must be *proper* under §363(b); it says that the sale must be *authorized* under §363(b) ... [I]t matters not whether the authorization was correct or incorrect."). Thus, neither the Debtors nor the Assignee can argue that the sale was wrongly authorized.

integrity of the sale process and the sanctity of the Assignment Order.  Obviously if the Debtors cannot perform as expected because of the actions of the Assignee then they have remedies that they can seek against the Assignee.  However, these remedies do not include vacating the Assignment Order.

   **B.   The Motion Must Be Denied Because There Is No Legal Basis To Vacate The Sale Order Under FRCP 60(b)(2), (b)(3), or (b)(6)**

   24.   Even if the Debtors are able to get past the strict limitation on review of sale orders approved pursuant to section 363 of the Bankruptcy Code, they would not be able to meet the stringent requirements of Rule 60(b).  The Debtors liberally construe when relief under Rule 60(b), made applicable hereto by Bankruptcy Rule 9024, may be granted.  The Fourth Circuit has recognized that the movant must establish four threshold requirements: (1) that the motion is timely; (2) that the movant has a meritorious claim; (3) that the non-moving party will not be unfairly prejudiced; and (4) that exceptional circumstances exist.  Dowell v. State Farm Fire & Cas. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993); Boyd v. Commonwealth, 905 F.2d 764, 769 (4th Cir. 1990); Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979).  If these threshold requirements are met then the court can then look to Rule 60(b) to determine if relief is warranted.  Motions under Rule 60(b) are for an extraordinary remedy and are generally granted only upon a showing of exceptional circumstances.  In re Parker, 341 B.R. 547, 553 (E.D. Va. 2006) (citing Boyd v. Commonwealth, 905 F.2d 764, 769 (4th Cir. 1990)); Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990), aff'd on other grounds, 501 U.S. 115 (1991); In re Waugh, 367 B.R. 361 (Bankr. E.D.N.Y. April 10, 2007) (quoting Mendell as the appropriate standard for a bankruptcy court to review requests under Rule 60(b)).

   25.   Here, the Debtors discuss the prejudice to the Assignee and the Landlord, but ignore the prejudice to Dollar Tree.  Additionally, there are no "exceptional circumstances" that

justify relief under Rule 60(b).  Debtors have alleged no "exceptional circumstances", but rather rely on the misbegotten belief that they will have to pay the cure amount and get nothing in return.  This is simply not true.  If the Assignee's refusal to comply with the Assignment Order is in fact unjust and illegal, then the Debtors have a damages claim equal to at least as much as the Assignee was required to pay pursuant to the Assignment Order.  A breach of contract claim is hardly "exceptional circumstances" warranting the Assignment Order to be vacated.

26.     First, the Debtors argue that the Assignment Order should be vacated pursuant to Rule 60(b)(2), which provides for relief from a final order or judgment based on " newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  The Debtors contend that the Assignee's failure to comply with the Assignment Order is newly discovered evidence.  It is not.  It is simply a breach of contract.  Notably, the Debtors do not identify any "newly discovered evidence," but rather judge the Assignee's actions as "newly discovered evidence."

27.     Second, the Debtors contend that the Assignee misrepresented its intent to proceed with the sale of the Leases.  Rule 60(b)(3) provides that a party can obtain relief based on the misrepresentation or misconduct of the opposing party.  Fed. R. Civ. P. 60(b)(3).  This is directly contrary to the findings that the Court made concerning the intent of the parties (See Assignment Order ¶¶ I & J).  Moreover, the June 11 Email makes clear that the Assignee believes the Debtors breached the Assignment Agreement.  (See Exhibit 2 to the Motion at 2.)  It is hard to imagine that the Assignee's allegation of breach against the Debtors could be construed as the Assignee misrepresenting its intent to proceed with the sale of the Leases.

28.     Lastly, the Debtors contend that relief should be granted under Rule 60(b)(6) for additional reasons, including the prejudice and inequity that would result to the Debtors and their

estates if the Assignment Order is not vacated.

29.     Relief under Rule 60(b)(6) "is not lightly granted, and the movant must demonstrate that 'extraordinary circumstances' are present in order to prevail." In re Waugh, 367 B.R. at 369 (citing Grace v. Bank Leumi Trust Co., 443 F.3d 180 (2d Cir. 2006)); Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001) (applying extraordinary circumstances standard to Rule 60(b)(6) analysis). Here, the Debtors offer nothing more than a balancing of the equities argument (i.e., the harm to the Debtors and the estate). The real reason that the Debtors want relief from the Assignment Order is because by assuming the Leases they have elevated the related claims to administrative expense priority. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532 (1984) (Upon assumption, "the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate."); Adventure Resources v. Holland, 137 F.3d 786, 793, 798 (4th Cir. 1998); Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.), 78 F.3d 18, 22 (2d Cir. 1996) (citing cases); In re New York Trap Rock Corporation, 137 B.R. 568, 573-74 (Bankr. S.D.N.Y. 1992) (once an executory contract or unexpired lease is assumed post-petition, all expenses incurred are transformed into administrative expense priority). Additionally, if they reject the Leases post-assumption the rejection claim will be treated as an administrative expense, rather than a pre-petition unsecured claim. See Adventure Resources v. Holland, 137 F.3d 786, 793, 798 (4th Cir. 1998); Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.), 78 F.3d 18, 22-23 (2d Cir. 1996) (citing cases); Elliot v. Four Seasons Props. (In re Frontier Props., Inc.) 979 F.2d 1358, 1365-67 (9th Cir. 1992). The Debtors would like to avoid these costs. However, that is the risk that the Debtors took by not asking that the Assignment Order be conditioned on first receiving payment from the Assignee. The entire amount owed could have been placed in escrow pending approval

of the Assignment Order. This was not done. Now the Debtors want the Assignment Order vacated because of the harm to the Debtors and the estate. The Debtors fail to explain that this harm is speculative or that actual harm may befall upon Dollar Tree.

30. As noted above, if the Assignee has in fact breached then the Debtors have a damages claim equal to at least as much as the Assignee was required to pay pursuant to the Assignment Order. Therefore, any harm to the Debtors or the estate warranting extraordinary relief under Rue 60(b)(6) is speculative at this stage of the proceedings.

**WHEREFORE**, Dollar Tree respectfully requests that the Court deny the aspect of the Debtors' Motion seeking relief under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b) from the Assignment Order, and grant such other and further relief that the Court deems just and proper.

Dated:  Richmond, Virginia
          June 23, 2009

**DOLLAR TREE STORES, INC.**

By: __/s/ W. Alexander Burnett_____

William H. Schwarzschild, III – VSB No. 15274
W. Alexander Burnett – VSB No. 68000
**WILLIAMS MULLEN**
1021 East Cary Street, 17th Floor
P.O. Box 1320
Richmond, Virginia  23218-1320
Phone: 804.783.6489
Fax: 804.783.6507
tschwarz@williamsmullen.com

Scott R. Kipnis
Nicholas B. Malito
**HOFHEIMER GARTLIR & GROSS, LLP**
530 Fifth Avenue
New York, New York  10036
Phone: 212.818.9000
Fax: 212.897.4999
skipnis@hgg.com
nmalito@hgg.com
   *Counsel for Dollar Tree Stores, Inc.*
6541007_5.DOC

## CERTIFICATE OF SERVICE

       I hereby certify that on June 23, 2009, a true and complete copy of the foregoing Response of Dollar Tree Stores, Inc. to Debtors' Motion For Order (I) Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9020 (A) Finding Creative Realty Management LLC In Civil Contempt and (B) Compelling Compliance With Order and Imposing Sanctions For Violations Thereof, or (II) Granting Debtors Relief Under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60 from Order Assuming, Assigning, and Selling Certain Leases to Creative Realty Management LLC was served upon all necessary parties electronically using the Court's ECF System, was sent by electronic mail to circuitcityservice@mcguirewoods.com and project.circuitcity@skadden.com, and was sent by first class mail, postage prepaid, to the entities at the addresses indicated below:

**Dion W. Hayes**
McGuireWoods LLP
One James Center, 901 E. Cary St.
Richmond, VA 23219
dhayes@mcguirewoods.com

**Douglas M. Foley**
McGuireWoods LLP
9000 World Trade Center, 101 W. Main St.
Norfolk, VA 23510
dfoley@mcguirewoods.com

**Ian S. Fredericks**
Skadden Arps Slate Meagher
& Flom LLP
One Rodney Sq.
PO Box 636
Wilmington, DE 19899
ian.fredericks@skadden.com

**Chris L. Dickerson**
Skadden Arps Slate Meagher
& Flom LLP
333 West Wacker Drive
Chicago, IL 60606
chris.dickerson@skadden.com

**Robert J. Feinstein**
Pachulski Stang Ziehl & Jones LLP
780 Third Ave. 36th Floor
New York, NY 10017
(212) 561-7710
rfeinstein@pszjlaw.com

**Jeffrey N. Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067
jpomerantz@pszjlaw.com

**John D. Fiero**
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 9411-4500
jfiero@pszjlaw.com

**Lynn L. Tavenner**
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
ltavenner@tb-lawfirm.com

**Paula S. Beran**
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
pberan@tb-lawfirm.com

**Robert B. Van Arsdale**
Office of the U. S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Robert.B.Van.Arsdale@usdoj.gov

| | |
|---|---|
| **Brad R. Godshall** | **Gregg Galardi, Esq.** |
| Pachulski Stang Ziehl & Jones, LLP | Skadden Arps, Slate Meagher & Flom LLP |
| 10100 Santa Monica blvd, 11th Floor | One Rodney Square |
| Los Angeles, CA 90067-4100 | Box 636 |
| bgodshall@pszjlaw.com | Wilmington, Delaware 19899 |

*/s/ W. Alexander Burnett*

_____

6541007_5.DOC