1. TO:
United States Bankruptcy Court
Debtor: CIRCUIT CITY STORES, INC.
Case #: 08-35653
Debtor's Eighth Omnibus Objection to Certain Late Claims

2. FROM:
Taylor B Phillips
Owed $38,080.00 as an administration claim owed post 11/10/2008.

3. REASON BANKRUPCY COURT SHOULD NOT SUSTAIN THE OMNIBUS OBJECTION:
In good faith, all documents were mailed to our address on record. Due to temporary housing relocation to California, missed deadline by one day.

4. DOCUMENTATION:
Separation Agreement
Temporary Housing Contract

5. DECLARATION:
I, Noelle B. Phillips, declare that my husband, Taylor B. Phillips, accepted a new job, and was relocated to California on 11/16/08.

x *Noelle B. Phillips* (signature)

6. NOTICE ADDRESSES:
Taylor B. Phillips
8875 Costa Verde Blvd Apt 511
San Diego, CA 92122
(858)761-2395
Fax: (858) 638-2230

Thank you,

*Taylor B. Phillips* (signature)
Taylor B. Phillips
6/20/2009

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CIRCUIT CITY STORES, INC., et al., | : | Case No. 08-35653 (KRH) |
| | : | |
| Debtors. | : | Jointly Administered |

## NOTICE OF DEBTORS' EIGHTH OMNIBUS OBJECTION TO CERTAIN LATE CLAIMS

**PLEASE TAKE NOTICE THAT** the above-captioned Debtors (the "Debtors") filed the Debtors' Eighth Omnibus Objection to Certain Late Claims (the "Omnibus Objection") with the Bankruptcy Court. A copy of the Omnibus Objection is attached to this notice (this "Notice"). By the Omnibus Objection, the Debtors are seeking to disallow certain claims on the ground that the claims were filed after the applicable bar date.

**PLEASE TAKE FURTHER NOTICE THAT** on April 1, 2009, the Bankruptcy Court entered the Order Establishing Omnibus

## Critical Information for Claimants
## Choosing to File a Response to the Omnibus Objection

Who Needs to File a Response:  If you oppose the reclassification of your Claim(s) listed above and if you are unable to resolve the Omnibus Objection with the Debtors before the deadline to object, then you must file and serve a written response (the "Response") to the Omnibus Objection in accordance with this Notice.

If you do not oppose the reclassification of your Claim(s) listed above, then you do not need to file a written Response to the Omnibus Objection and you do not need to appear at the hearing.

Response Deadline:  The Response Deadline is **4:00 p.m. (Eastern Time) on June 29, 2009 (the "Response Deadline")**.

THE BANKRUPTCY COURT WILL ONLY CONSIDER YOUR RESPONSE IF YOUR RESPONSE IS FILED, SERVED AND RECEIVED BY THE RESPONSE DEADLINE.

Your Response will be deemed timely filed only if the Response is **actually received** on or before the Response Deadline by the Bankruptcy Court at the following address:

> Clerk of the Bankruptcy Court
> United States Bankruptcy Court
> 701 East Broad Street - Room 4000
> Richmond, Virginia 23219

2. the claimant's name and an explanation for the amount of the Claim(s);

3. a concise statement setting forth the reasons why the Bankruptcy Court should not sustain the Omnibus Objection, including, without limitation, the specific factual and legal bases upon which the claimant will rely in opposing the Omnibus Objection;

4. a copy of any other documentation or other evidence of the Claim, to the extent not already included with the Claim, upon which the claimant will rely in opposing the Omnibus Objection at the hearing;

5. a declaration of a person with personal knowledge of the relevant facts that support the Response; and

6. your name, address, telephone number and facsimile number and/or the name, address, telephone number and facsimile number of your attorney and/or designated representative to whom the attorneys for the Debtors should serve a reply to the Response, if any (collectively, the "Notice Addresses"). If a Response contains Notice Addresses that are different from the name and/or address listed on the Claim, the Notice Addresses will control and will become the service address for future service of papers with respect to all of your Claims listed in the Omnibus Objection (including all Claims to be reclassified) and only for those Claims in the Omnibus Objection.

**Additional Information**. To facilitate a resolution of the Omnibus Objection, your Response should also include the name, address, telephone number and facsimile number of the party with authority to reconcile, settle or otherwise resolve the Omnibus Objection on the claimant's behalf (the "Additional Addresses"). Unless the Additional Addresses are the same as the Notice Addresses, the Additional Addresses will not become the service address for future service of papers.

Dated: June 3, 2009
   Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

MCGUIREWOODS LLP

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession

\9284192.1

7



Legal Department

Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233
tel 804.486.4000
fax 804.486.8259

October 10, 2008

Taylor B. Phillips
8712 Rockcrest Court
Richmond, VA 23235

**Re:   Termination of Employment
Separation Agreement and General Release**

Dear Taylor:

This letter confirms that your employment with Circuit City Stores, Inc. ("Circuit City" or the "Company") will be terminated on October 10, 2008. You will be paid your regular base pay through your termination date and according to the Company's regular payroll practices.

Circuit City would like to provide you with assistance during this period of transition. We are offering you a Separation Agreement and General Release ("Agreement) on the terms set forth in this letter, which you may accept by signing below and returning. This offer will expire thirty (30) days after your last date of employment. The terms and conditions are as follows:

1.    Circuit City will pay you severance equal to three (3) months of your annual base pay of $176,800.00, totaling $44,200.00 (gross). After Circuit City receives this Agreement signed by you, your severance payments will be paid on a bi-weekly basis and according to the Company's regular payroll practices until paid in full. If you are offered or you accept another employment opportunity with Circuit City during the severance payments period, your severance payments will be terminated.

2.    Also in exchange for the promises herein, Circuit City agrees to provide you with the benefit of three (3) months of outplacement services, following your termination of employment. You should contact Yvette Parham, HR Administration, for additional information regarding services. Outplacement services must be used within six (6) months of your termination of employment or be forfeited.

3.    You acknowledge and agree that the severance payments and benefits that you are receiving under this Agreement exceed those that you would have been entitled to receive upon your separation from employment had you not agreed to the terms of this Agreement. In exchange for your severance payments, you hereby release Circuit City and all its affiliated or related companies, and its officers, stockholders, directors, employees and agents, insurers and reinsures, and its successors, heirs, and assigns (collectively, the Releasees), from all claims and demands of every kind or character whatsoever, whether presently known or unknown, under state, federal or local laws, which you now have against the Releasees. Specifically included in this Agreement are any claims in connection with your employment and/or the

Taylor B. Phillips
October 10, 2008

termination of your employment, including, but not limited to, claims due to alleged breach of contract, libel, slander, wrongful discharge, payment (or non-payment) of wages and/or overtime, intentional infliction of emotional harm, any other state or federal tort, the Age Discrimination in Employment Act of 1967, the Older Worker Benefits Protection Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, as amended in 1991, the Worker Adjustment and Retraining Notification Act of 1988, the Sarbanes Oxley Act of 2002, and/or any other federal, state or local law relating in any way to employment rights or benefits of your employment with Circuit City. The parties recognize, however, that nothing contained in this Agreement shall prohibit either party from instituting legal action to enforce any of the provisions of this Agreement.

4. You acknowledge and agree that except as specified in paragraphs 1 and 2 above, all compensation, benefits, and other obligations due you by the Company, whether by contract or law, have been paid or otherwise satisfied in full.

5. You understand and agree that prior to the date of your termination, you must return to the Company all of its property in your possession or control.

6. You agree to keep confidential and not disclose any of the terms or provisions of this Agreement to anyone, unless such disclosure is required by law or consented to in writing by Circuit City.

7. You are also reminded that you are still bound under the Circuit City Code of Business Conduct and you agree not to disclose to any person or entity Circuit City's confidential information learned during the course of your employment.

8. If any clause or provision of this Agreement is illegal, invalid or unenforceable under present or future laws, then the remainder of this Agreement shall not be affected thereby, and in lieu of each clause or provision of this Agreement which is illegal, invalid or unenforceable, there shall be added, as part of this Agreement, a clause or provision as similar in terms to such illegal, invalid, or unenforceable clause or provision as may be possible and as may be legal, valid and enforceable.

9. A waiver by any party of a breach of any of the provisions of this Agreement shall not operate or be construed as a waiver of any other provision of this Agreement or of any subsequent breach of the same or any other provision of this Agreement. The understandings and representations of the parties set forth in this Agreement shall survive any breach of this Agreement and be enforceable by any non-breaching party.

10. You acknowledge that you have been given at least 21 days to review this Agreement and its terms and to reflect upon them. You further acknowledge that you have been advised in writing to consult with an attorney about the terms of this Agreement and that you have had the opportunity to consult with an attorney in connection with your decision to enter into this Agreement. You understand these terms, are satisfied with them, and knowingly, freely and voluntarily agree to them, without reliance on any representations by Circuit City.

11. This Agreement does not waive any rights or claims that may arise after the effective date of this Agreement.

2

Taylor B. Phillips
October 10, 2008

12. This Agreement sets forth the entire agreement between you and Circuit City relating to your employment and termination and supersedes any other prior agreements or understandings between you and Circuit City.

13. This Agreement shall be construed, interpreted, and enforced according to Virginia law, without regard to the choice of law provisions thereof.

Very truly yours,

*Laurie Lambert Gaffney*

Laurie Lambert-Gaffney
Vice President, HR Operations

By signing below, I agree to the above terms.

_____          __10/10/08_____
Taylor B. Phillips                                                Date

**\*\*Return this signed agreement in the enclosed self-addressed stamped envelope to Circuit City Stores, Inc., HR Administration, 9954 Mayland Drive, Deep Run III, Second Floor, Richmond, VA 23233.**

3



**PASHA CORPORATE HOUSING**

**SUBLEASE AGREEMENT**

This Lease Agreement is made this October 22, 2008 by and between Pasha Management, Inc. d.b.a. Pasha Corporate Housing (Pasha), and sometimes referred to as Sublessor and:

| | |
|---|---|
| Sublessee: | PETCO Animal Supplies Inc. |
| Sublessee Contact Name/Title: | PETCO Animal Supplies Inc. |
| Sublessee Billing Information: | Attn: Accounts Payable  9125 Rehco Road  San Diego, CA 92121 |
| Sublessee Contact Phone #: | 858-453-7845 |
| Sublessee Contact Fax #: | 858-453-6585 |
| Resident Name(s): | Taylor Phillips |

1. Pasha Management, Inc. hereby leases to Sublessee the premises, together with the furnishings therein, located at 8875 Costa Verde Blvd #511 San Diego, CA 92122 at the premises commonly known as Costa Verde Towers. Check in time is 3:00pm. Please note that apartment address and/or unit number is subject to change prior to arrival.

2. **TERM/HOLDOVER TENANCY/UNAUTHORIZED PETS.** The term of the Agreement shall be for a period of 180 days commencing on **Nov 16, 2008** and ending at 12:00 PM on **May 14, 2009**, the minimum term. Any holdover by Sublessee after the Minimum Term will be on a month-to-month basis with possible rent increases. **In all circumstances (even if Sublessee has to terminate the Agreement at the end of the Minimum Term), Sublessee shall give Pasha a 30-day written notice prior to vacating using the Intent-To-Vacate Notice form, which is only accepted Monday through Friday 8:00 to 5:00pm. Please remember that you must obtain a signed copy of your Intent-To-Vacate Notice form, which confirms the date you have given is correct and has been entered; with out a signed copy from a Pasha Management representative, that form is not valid.** If Sublessee fails to give such written notice prior to vacating, Sublessee shall be responsible for all outstanding amounts due, and once the required written notice is provided, amounts due will continue to accrue through the notice period. This Agreement is also subject to termination by Pasha upon 30 days notice after expiration of the Minimum Term. If the Sublessee or Guest(s) remain(s) in the unit after the end of the term (once notice has been given) without the written consent of Pasha Management, it shall be deemed a holdover tenancy and Pasha management may recover, as additional rent, damages from the client in an amount equal to **THREE (3)** times the then current daily rental rate or monthly rental rate, prorated on a daily basis, for each day the Sublessee or guest(s) remain(s) in possession of the Unit after the end of Term, or the maximum amount permitted by law. If the Sublessee or any Guest brings a pet into the unit without the prior knowledge and permission of Pasha Management, Pasha Management may, by providing written notice to Sublessee/Guest, require removal of such pet from the Unit and the Community immediately. Failure to remove any pet after notice will be grounds for termination of this Reservation and any rights the Sublessee/Guest has to occupy the Unit, however, the Sublessee/Guest will still be held rent responsible through the term of the lease as well as be charged a $250.00 cleaning fee for the unauthorized pet.



3. **RENTAL PAYMENT.** The first rent payment of **$3570.00** covering **Nov 16, 2008** through **Dec 15, 2008** shall be due prior to move-in. Thereafter, rent shall be due on the 1st of each month equal to the rate of **$119.00/Day** times the number of remaining days in the month. Any partial months shall be charged at a rate of **$119.00/day**, plus any applicable tax, and shall also be payable on the 1st of the month. Any payments due, pursuant to this Agreement, shall be paid to Pasha Corporate Housing Payment Center P.O. Box 910111, San Diego, CA 92191-0111. Unless otherwise mutually agreed upon in writing, all such payments shall be billed to Sublessee's credit card on the 1st of each month pursuant to the Credit Card Authorization Addendum, attached hereto and made part of this Agreement. All credit card charges will include a 3% processing fee per transaction.



4. **UTILITIES.** Pasha Management Inc. will pay for Electricity and Gas up to ($100/Month for a Three-Bedroom, $80/Month for a Two-bedroom and $60/Month for a One-bedroom), Cable, Water up to ($50/Month for an apartment and $75/Month for a house), and all local phone calls (12-mile radius) are included in the rent. High-speed Internet and DSL are included in the rate. It is Sublessee's responsibility to return all equipment on the day of move out according to the **Internet Modem Procedures Form**, Sublessee will be responsible for all internet equipment not turned in. All other charges will be billed to the credit card number provided.

5. **KEYS.** The Sublessee will be given key/keys to the apartment, mailbox, amenity, gate and/or any other keys/permits/remotes required to obtain at the above property. The number of keys/permits/remotes given to the Sublessee will be noted at the time of move-in. **All keys need to be returned to Pasha Management, Inc. by 12:00pm on the day of departure (vacate procedures vary by area, please call your sales representative for detailed instructions). If all keys/permits/remotes are not returned to Pasha Management Inc. on the day of departure, the Tenant shall be charged for the full amount to replace any and all keys/permits/remotes (charges may vary). Tenant will also be responsible for the daily rent accrued from the date of departure to the date that all keys are returned per the holdover tenant agreement.**

6. **UNIT CONDITION/FURNISHINGS.** Furniture, Houswares, Utilities, Basic Cable, HS Internet, DSL, and Basic Telephone Service-Included in total rental charges. It shall be conclusively presumed that the Premises was in good condition and repair, and clean at the time of occupancy, unless the Sublessee/Guest notifies sublessor to the contrary within two (2) days of assuming occupancy of the premises, The Sublessee/Guest agrees not to make any alterations, installations, repairs, or redecorations of any kind, whether permitted by law or otherwise, to any Corporate Apartment without written permission from Pasha Management.

7. **ADDITIONAL FURNISHINGS.** Sublessee agrees to full responsibility for payment of all long distance, cable upgrades, additional furniture/housewares, housekeeping and all other additions to our standard package (charges vary).

8. **ENTRY AND INSPECTIONS.** Pasha or its agents shall have the right to enter and inspect the premises at any time upon reasonable prior notice to the Sublessee. Pasha Management, Inc. and its vendors shall enter only during normal business hours. Normal business hours shall be defined as 8:00 AM to 5:00 PM Monday through Friday. If however, Sublessor and/or the owner/landlord of the apartment community reasonably believes that an emergency exists (such as fire or flood) which requires immediate entry, such entry may be made without prior notice to Sublessee. The owner/landlord will be responsible for general maintenance and repairs of the facilities provided, however, repairs required due to damage caused, permitted or suffered by Sublessee, its employees, agents, invitees and guests shall be charged to Sublessee as additional rent.