Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                         :   Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :   Case No. 08-35653 (KRH)
et al.,                        :
                               :
              Debtors.         :   Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS
105, 363 AND 503 AND BANKRUPTCY RULES 2002 AND 6004
(A) AUTHORIZING SELLER TO ENTER INTO AGREEMENT FOR SALE
OF CERTAIN REAL PROPERTY IN VIRGINIA BEACH, VIRGINIA
SUBJECT TO HIGHER OR OTHERWISE BETTER BIDS,
(B) APPROVING TERMINATION FEE IN CONNECTION THEREWITH,
(C) APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF
ALL INTERESTS AND (D) GRANTING RELATED RELIEF**

          Circuit City Stores, Inc. (the "Seller," and

collectively with the debtors and debtors in possession

in the above-captioned jointly administered cases, the

"Debtors")[1] hereby move (the "Motion"), pursuant to

sections 105, 363 and 503 of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 2002 and

6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of an order (the "Sale

Order") (A) authorizing the Seller to enter into the

Agreement (as defined herein),[2] a copy of which is

attached as Exhibit A to the Sale Order, with the

Purchaser (as defined herein) for the sale (the "Sale")

of certain of the Seller's real property located in the

Virginia Beach Shopping Center, 110 South Independence

Boulevard, Virginia Beach, Virginia (the "Property"),

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for Circuit City Stores West Coast, Inc. is 9250 Sheridan
      Boulevard, Westminster, Colorado 80031.  For all other Debtors,
      the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
      currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[2]   Capitalized terms used but not otherwise defined herein have the
      meanings ascribed to them in the Agreement.

subject to higher or otherwise better proposals,
(B) approving the Termination Fee (as defined below) in
connection therewith, (C) approving the Sale free and
clear of all Liens (as defined below) and (D) granting
related relief.  In support of the Motion, the Seller
respectfully represents as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider
this Motion under 28 U.S.C. §§ 157 and 1334.  This is a
core proceeding under 28 U.S.C. § 157(b).  Venue of
these cases and this Motion in this District is proper
under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief
requested herein are Bankruptcy Code sections 105, 363
and 503 and Bankruptcy Rules 2002 and 6004.

**BACKGROUND**

**A.    The Bankruptcy Cases.**

3.    On November 10, 2008 (the "Petition
Date"), the Debtors filed voluntary petitions in this
Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores. The going out of business sales concluded on or about March 8, 2009.

**RELIEF REQUESTED**

7.    By this Motion, the Seller seeks entry of the Sale Order (A) authorizing the Seller to enter

into the Agreement in connection the Sale of the
Property, subject to higher or otherwise better
proposals, (B) approving the Termination Fee in
connection therewith, (C) approving the Sale of the
Property free and clear of all Liens, and (D) granting
related relief.

8.    As more fully set forth below, after a
comprehensive review, the Seller believes that the Sale
of the Property represents its best opportunity under
the circumstances to maximize the value of the Property.
Therefore, the Sale of the Property is in the best
interests of its estate and stakeholders.

**BASIS FOR RELIEF**

**A.    The Property.**

9.    The Seller owns the Property, comprising
an outparcel of approximately .5711 acres, adjacent to
the premises at which the Seller previously leased a
retail store location.

**B.    Events Leading To The Sale.**

10.    In light of the failure to obtain any
going concern bids and the decision to liquidate the
Debtors' inventory through going out of business sales,

the Seller has been left with various assets --
including the Property -- for which it has no remaining
use.  However, the sale of such assets, including the
Sale of the Property, would result in significant
proceeds for the Seller's estate and creditors.

11.  Since around the time of commencement of
the going out of business sales, the Seller, along with
its real estate advisor, DJM Realty, LLC ("DJM"), has
been marketing the Property.  As a result of these
marketing efforts, the Seller received various proposals
to purchase the Property.  Upon reviewing these
proposals, the Seller determined that the proposal
submitted by the Purchaser was materially higher or
otherwise better than the alternate proposals received.
Thus, the Seller elected to proceed with the Sale of the
Property to the Purchaser.

**C.    The Agreement.**

12.  On May 11, 2009, the Seller entered into
a Purchase and Sale Agreement (the "Original Agreement")
with Cardinal Capital Partners, Inc. (the "Purchaser")
for the Sale of the Property.  On June 1, 2009, the
Seller and the Purchaser entered into the First

6

Amendment to Purchase and Sale Agreement (the "First

Amendment") pursuant to which the parties agreed to

extend the due diligence period provided by the Original

Agreement for an additional seven (7) days.  On June 12,

2009, the Seller and the Purchaser entered into the

Second Amendment to Purchase and Sale Agreement (the

"Second Amendment"), pursuant to which the parties

agreed to modify the Purchase Price (as defined herein),

to reduce the Initial Minimum Overbid (as defined herein)

and to extend the period by which the Sale Order must be

entered.  On June 26, 2009, the Seller and the Purchaser

entered into the Third Amendment to Purchase and Sale

Agreement (the "Third Amendment" and together with the

Original Agreement, the First Amendment and the Second

Amendment, the "Agreement"), pursuant to which the

parties agreed to further extend the date by which the

Sale Order must be entered.

          13.   Pursuant to the Agreement, the Seller

would sell the Property to the Purchaser for $439,000.00

(the "Purchase Price"), plus a waiver of certain pre-

petition claims held by an affiliate of the Purchaser

(the "Additional Consideration" and together with the

Purchase Price, the "Total Consideration").

    14.   The significant terms of the Agreement

are as follows:[3]

    (a)  <u>General Terms</u>.  The Purchaser would
acquire the Property, consisting solely of the Seller's
right, title and interest in and to the Property,
together with all the rights and appurtenances
pertaining thereto.

    (b)  <u>Sale</u>.  The Property would be sold free
and clear of all liens (including the liens of the
Seller's post-petition lenders and liens for past-due
real property taxes), claims and encumbrances
(collectively, the "Liens"), except for (i) liens for
real property taxes and assessments that are not yet due
and payable, (ii) zoning ordinances, building codes and
other land use laws and applicable governmental
regulations, (iii) all covenants, agreements, conditions,
easements, restrictions and rights, of record and
(iv) any and all matters that would be shown by a
current survey of the Property (collectively, the
"Permitted Encumbrances").

    (c)  <u>Total Consideration</u>.  The Total
Consideration for the Sale of the Property would be
comprised of the Purchase Price and the Additional
Consideration.  The Purchase Price would be $439,000.00.
As Additional Consideration, the Purchaser would cause
its affiliate, CC-Virginia Beach, LLC, solely with
respect to its pre-petition claims relating to its lease
with the Seller for the store located at 110 South
Independence Boulevard, Virginia Beach, Virginia, to
agree at Closing (as defined herein) (a) to the

---

[3]   In the event of any discrepancy between the Agreement and this
summary of the Agreement, the provisions of the Agreement are
controlling.

disallowance of its presently filed proof of claim,
dated January 27, 2009, in the total amount of
$26,655.59 and (b) (1) to waive its right to file a
proof of claim for lease rejection damages pursuant to
section 502(b)(6) of the Bankruptcy Code and (2) to the
disallowance of its filed proof of claim dated March 27,
2009, in the total amount of $593,864.77.

    (d)   <u>Bankruptcy Court Approval</u>.  The Sale of
the Property would be subject to approval by this Court
and competitive bidding pursuant to the Bidding
Procedures (as defined below).

    (e)   <u>Deposit</u>.   In accordance with the
Agreement, the Purchaser has previously delivered to an
escrow agent the amount of $52,500 (the "Deposit"). If
the Sale is consummated under the Agreement, the Deposit
shall be applied to the Purchase Price.  If the
Agreement is terminated prior to Closing of the Sale
because of the Purchaser's breach of the Agreement (on
the terms as provided in the Agreement), the Seller
would be entitled to retain the Deposit as the Seller's
sole recourse.

    (f)   <u>Documentation</u>.  The Sale would be
effected pursuant to the Agreement and related
documentation.

    (g)   <u>Representations And Warranties</u>.  Pursuant
to the Agreement, the Seller would provide certain
standard representations and warranties relating to the
Sale of the Property and the Purchaser would provide
representations and warranties generally standard in a
transaction of this type.  The representations and
warranties of the Seller would expire and be
extinguished at the Closing.  The representations and
warranties of the Purchaser would survive indefinitely
following the Closing or the termination of the
Agreement.

    (h)   <u>Closing</u>.  The closing of the Sale of the
Property (the "Closing") shall occur on the date which
is five (5) days after the later of (i) the expiration

9

of the due diligence period or (ii) the date of entry by
the Court of the Sale Order.

(i)  Termination.  The Agreement could be
terminated prior to Closing in the following
circumstances:  (i) by the Purchaser, if an action is
initiated to take any material portion of the Property
by eminent domain proceedings, (ii) by the Purchaser, in
the event that the Seller shall fail to consummate the
transactions contemplated by the Agreement, (iii) by the
Seller, in the event that the Purchaser shall fail to
consummate the transactions contemplated by the
Agreement, (iv) by the Seller, in order to permit the
Seller to accept a higher or better offer for the
Property pursuant to the Bidding Procedures and (v) by
the Purchaser or the Seller in the event that the Court
has not entered the Sale Order by July 17, 2009.

**D.    Termination Fee.**

15.   The Seller has agreed to pay the

Purchaser a break-up fee of $15,000.00 (the "Termination

Fee") if, and only if (i) the Purchaser is not in breach

of or default under the Agreement and (ii) the Seller

consummates the Sale of the Property with a higher or

otherwise better bidder following the Auction (as

defined herein) and upon approval by the Bankruptcy

Court.

16.   The Purchaser has expended, and likely

will continue to expend, considerable time, money, and

energy pursuing the Sale and has engaged in arm's length

and good faith negotiations regarding a possible sale of

the Property.  The Agreement is the culmination of these

efforts.

17.  In recognition of this expenditure of

time, energy, and resources, the Seller has agreed to

the Termination Fee.  Specifically, the Agreement

provides for, and the Seller respectfully requests that

the Sale Order approve, the Termination Fee payable by

the Seller to the Purchaser in the amount of $15,000.00

if the Seller terminates the Agreement to close an

alternate transaction, so long as the Purchaser is not

in breach of the Agreement.

18.  The Seller believes that the proposed

Termination Fee is fair and reasonable in view of

(a) the analysis, due diligence investigation, and

negotiation undertaken by the Purchaser in connection

with the Sale and (b) the fact that the Purchaser's

efforts would maximize the value of the Property for the

benefit of all stakeholders, whether as a result of

consummating the Sale pursuant to the Agreement or by

generating a higher or otherwise better offer.

19.  The Purchaser is unwilling to keep open

its offer to purchase the Property under the terms of

the Agreement unless this Court authorizes payment of
the Termination Fee.  Thus, absent entry of the Sale
Order with approval of the Termination Fee, the Seller
may lose the opportunity to obtain what it believes to
be the highest or otherwise best offer for the Property.
And, as described below, the Agreement is subject to
higher or otherwise better proposals.  Approving the
Termination Fee will thus commit the Purchaser to
purchase the Property under the Agreement, and the
Agreement would serve to start any additional bidding
for the Property at a fair and reasonable purchase price.

20.  Payment of the Termination Fee will not
diminish the Seller's estate.  The Seller would not
expect to pay the Termination Fee unless it does so to
accept an alternate proposal, which would result in even
greater value to the Seller's estate and its
stakeholders.  This is particularly true given the
Initial Minimum Overbid requirement (as defined below),
which ensures that other proposals represent higher or
otherwise better offers for the Property taking into
account payment of the Termination Fee.  The Seller thus
requests that this Court authorize payment of the

Termination Fee pursuant to the terms and conditions of
the Agreement.

**E.    The Bidding Procedures.**

21.    To ensure that the Seller receives the
highest or otherwise best proposal for the Property, the
Seller will entertain alternate proposals for the Sale
of the Property pursuant to the procedures set forth
below (the "Bidding Procedures").   The Seller
accordingly requests that this Court order that any
parties, including those parties that previously
submitted proposals, who wish to submit an alternate
proposal for consideration by the Debtors be required to
do so by July 10, 2009 at 4:00 p.m. (ET) (the "Bid
Deadline").

22.    If the Seller receives any Qualified
Bids (as defined herein), the Seller would hold an
auction (the "Auction") on July 14, 2009 at 10:00 a.m.
(ET) at the offices of McGuireWoods LLP, One James
Center, 901 E. Cary Street, Richmond, Virginia 23219.
The Seller will advise the Purchaser and all other
parties that submitted a Qualified Bid of the Auction.

23.   At the conclusion of any Auction, the Seller, in consultation with its advisors (and representatives of the Creditors' Committee), would determine which bid constitutes the highest or otherwise best bid (the "Successful Bid").

24.   Following the Auction, if any, the Seller intends to proceed with a hearing to approve the Sale of the Property on July 16, 2009 at 11:00 a.m. (ET) (the "Sale Hearing").

25.   If no Qualified Bids other than the bid of the Purchaser are received, the Seller would proceed with the Sale to the Purchaser following entry of the Sale Order.  If the Seller receives additional Qualified Bids, then at the Sale Hearing, the Seller would seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder").  A bid would not be deemed accepted by the Seller unless and until approved by the Court.

26.   Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the

Alternate Bid would be deemed to be the Successful Bid and the Seller would be permitted to effectuate a sale to the Alternate Bidder without further order of the Court.

27.    To ensure that only bidders with a serious interest in the purchase of the Property participate in the bidding process, the Seller would only consider the "Qualified Bids" of "Qualified Bidders."  To be considered a "Qualified Bid" and a "Qualified Bidder" for purposes of the Auction, the person or entity submitting the bid would be required to submit an offer by the Bid Deadline that includes:

(a)    an executed copy of the Original Agreement, marked to show those amendments and modifications to the Agreement that the Qualified Bidder proposes (such modified Agreement, a "Marked Agreement"), including modifications to the Purchase Price, which price must be at least $490,000.00 (the "Initial Minimum Overbid");

(b)    the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder;

(c)    a statement that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency;

      (d)   a good faith deposit (the "Good Faith
           Deposit") equal to at least ten (10)
           percent of the Purchase Price in cash;

      (e)   an acknowledgement that the bidder's
           offer is irrevocable until two (2)
           business days after the Closing of the
           Sale of the Property; and

      (f)   an acknowledgement that, in the event the
           bidder is the Alternate Bidder, the
           bidder will proceed with the purchase of
           the Property pursuant to the terms the
           Marked Agreement.

      28.  The Seller reserves the right to
(i) determine in its reasonable discretion (after
consultation with representatives of the Creditors'
Committee) which offer is the highest or otherwise best
offer for the Property; (ii) reject at any time prior to
the Closing of a Sale, without liability, any offer that
the Seller in its reasonable discretion (after
consultation with representatives of the Creditors'
Committee) deems to be (x) inadequate or insufficient,
(y) not in conformity with the requirements of the
Bidding Procedures or applicable law or (z) contrary to
the best interests of the Seller and its estate; (iii)
re-open the Auction, (iv) withdraw the Property from the
Auction, (v) waive the requirements of any of the
Bidding Procedures with respect to a potential or

Qualified Bidder if the Seller determines, in its

business judgment (after consultation with

representatives of the Creditors' Committee), it is in

the best interests of its estate and creditors, and (vi)

establish bid increments at the Auction, after

consultation with the Creditors' Committee.  The

Purchaser has agreed to all of the terms of the Bidding

Procedures, including (without limitation) the terms (e)

and (f) of the Qualified Bid requirements.

      29.  Objections to the Sale, if any, must be

filed and served no later than 4:00 p.m. (ET) on July 9,

2009.

### APPLICABLE AUTHORITY

**I.   APPROVAL OF THE TRANSACTIONS FOR THE SALE OF THE PROPERTY IS WARRANTED UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

      30.  As set forth above, Bankruptcy Code

section 363(b)(1) authorizes a trustee to "use, sell, or

lease" property of the estate with the Court's approval.

11 U.S.C. § 363(b)(1).  Assets of the Debtors may be

sold outside of the ordinary course of business,

pursuant to Bankruptcy Code section 363(b)(1), if a

sound business purpose exists for doing so.  <u>In re WBQ</u>

P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)(citing

Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th

Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214

B.R. 834, 836 (Bankr. E.D. Va. 1997).

31.  To satisfy the "sound business purpose

test," the debtor must demonstrate that (1) a sound

business reason or emergency justifies a pre-

confirmation sale; (2) the sale was proposed in good

faith; (3) the purchase price is fair and reasonable;

and (4) adequate and reasonable notice of the sale has

been provided.  In re WBQ P'ship, 189 B.R. at 102.

32.  Based upon the results of their analysis,

the Seller's management and advisors have concluded that

the Sale of the Property pursuant to the Agreement or a

higher or otherwise better offer would maximize the

value of the Property for the Seller's estate.

Maximizing asset value is a sound business purpose that

warrants authorizing the proposed Sale.

33.  The Sale of the Property will be subject

to competing bids, thereby enhancing the Seller's

ability to receive the highest or otherwise best value

for the Property.  Consequently, the fairness and

reasonableness of the consideration to be received by the Seller will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

34.   Moreover, the Seller proposes to provide adequate notice of the Auction and the Sale Hearing as set forth below.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Seller's major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the Property and others whose interests are potentially implicated by the proposed Sale.

## II.   THE SALE PROCESS IS REASONABLE AND APPROPRIATE.

35.   Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

36. The disposition of the Property pursuant to the terms reflected in the Agreement resulted from the bids submitted for the Property, pursuant to a marketing process led by DJM. Conducting a marketing process through a third party broker represents an accepted method of selling property. Similar marketing processes have been approved previously in this case and in other chapter 11 cases. See, e.g., In re Circuit City Stores, Inc., Case No. 08-35653 (KRH)(Bankr. E.D. Va. Mar. 20, 2009) (D.I. 2710); Ready v. Rice, 2006 WL 4550188 at *3 (D. Md. 2006); see also In re Reading Broadcasting, Inc., 386 B.R. 562, 571-72 (Bankr. E.D. Pa. 2008); In re King-Wilson, 1998 WK 737887 at *4-5 (N.D. Cal. 1998).

37. In addition, bid procedures similar those Bid Procedures outlined above have been approved by this Court in this case. See, e.g., In re Circuit City Stores, Inc., Case No. 08-35653 (KRH)(Bankr. E.D. Va. Mar. 3, 2009) (D.I. 2401).

20

38.  Finally, other interested parties have been and will be provided with an opportunity to submit higher or otherwise better proposals and, if necessary, the Seller will conduct an auction.

39.  In light of the foregoing, the Seller submits that the sale process is reasonable and appropriate.

## III. THE TERMINATION FEE REQUESTED HEREIN IS REASONABLE AND SHOULD BE APPROVED.

40.  In connection with Sale of the Property, the Court should authorize the Seller to pay the Termination Fee.

41.  Agreements to provide termination fees and other bidding incentives are designed to compensate a potential acquirer who serves as a catalyst that may attract higher and better offers, and have been approved in bankruptcy to encourage bidding.  See In re Ryan, 261 B.R. 867, 870 (Bankr. E.D. Va. 2001).  Termination fees can be advantageous to both buyers and sellers because they encourage bidding to ensure that sellers receive the highest or otherwise best offer while compensating the buyer for the risk of being outbid.  See id.

21

42.   Termination fees are allowed as an
administrative expense claim against the estate if they
satisfy the standard of section 503(b)(1).   In re Tropea,
352 B.R. 766, 768 (Bankr. N.D.W.Va. 2006).   Thus, the
fee must reflect the actual and necessary cost of
preserving the estate.   See 11 U.S.C. § 503(b)(1).   See
also In re Tropea, 352 B.R. at 768.   In Calpine Corp. v.
O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy,
Inc.), 181 F.3d 527 (3d Cir. 1999), the United States
Court of Appeals for the Third Circuit explained how the
section 503(b)(1) standard applied to termination fees.
The Third Circuit Court of Appeals held that even though
bidding incentives are measured against a business
judgment standard in non-bankruptcy transactions, the
administrative expense provisions of Bankruptcy Code
section 503(b) govern in the bankruptcy context.
Accordingly, to be approved, bidding incentives must
provide some post-petition benefit to the debtor's
estate.   See id. at 533; see also In re Lamb, 2002 WL
31508913 (Bankr. D. Md. 2002) (implicitly adopting the
administrative expense standard set forth in O'Brien).

43.   The O'Brien Court identified at least two
instances in which bidding incentives may provide
benefit to the estate.   First, benefit may be found if
"assurance of a break-up fee promoted more competitive
bidding, such as by inducing a bid that otherwise would
not have been made and without which bidding would have
been limited."   Id. at 537.   Second, when the
availability of bidding incentives induce a bidder to
research the value of the debtor and submit a bid that
serves as a minimum or floor bid on which other bidders
can rely, "the bidder may have provided a benefit to the
estate by increasing the likelihood that the price at
which the [asset] is sold will reflect its true worth."
Id.

44.   Here, the Seller seeks authority to pay
the Termination Fee in the event that the Purchaser is
not ultimately the Successful Bidder.   The proposed
Termination Fee is appropriate under Bankruptcy Code
section 503 as it is fair and reasonable in amount,
particularly in view of the efforts that will have to be
expended by the Purchaser.   Moreover, the Agreement,
including the Termination Fee provided for therein, will

enable the Seller to secure an adequate floor for an
auction and, thus, insist that competing bids be
materially higher or otherwise better than the Purchase
Price pursuant to the Agreement (as incorporated in the
Initial Minimum Overbid requirement), a clear benefit to
the Seller's estate.

45.   In sum, the Seller's ability to offer the
Termination Fee enables it to ensure the Sale of the
Property to a contractually-committed bidder at a price
that they believe to be fair while, at the same time,
providing them with the potential of even greater
benefit to the estates.

46.   Thus, the Termination Fee should be
approved.

**IV.   THE PURCHASER OR SUCCESSFUL BIDDER SHOULD BE
AFFORDED THE PROTECTIONS OF SECTION 363(m) OF THE
BANKRUPTCY CODE AND THE TRANSACTIONS CONTEMPLATED
BY THE AGREEMENT SHOULD CARRY THE PROTECTIONS OF
SECTION 363(n) OF THE BANKRUPTCY CODE.**

47.   Section 363(m) of the Bankruptcy Code
provides:

> The reversal or modification on appeal of
> an authorization under subsection (b) or
> (c) of this section of a sale or lease of
> property does not affect the validity of
> a sale or lease under such authorization

24

> to an entity that purchased or leased
> such property in good faith, whether or
> not such entity knew of the pendency of
> the appeal, unless such authorization and
> such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not

define "good faith," the Fourth Circuit Court of Appeals

has "adopt[ed] the traditional equitable definition that

has been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and

without notice of adverse claims.'" Willemain v. Kivitz,

764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

48. Section 363(n) of the Bankruptcy Code

further provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

49. The Seller submits, and will present

evidence at the Sale Hearing, that the Agreement

reflects a negotiated, arm's length transaction.

Throughout the negotiations, the Purchaser has at all

times acted in good faith.  Moreover, to the extent that
the Property is sold to a Successful Bidder, it will be
because of a well-planned competitive process and
negotiations at arm's length to be conducted at an
auction.  As a result of the foregoing, the Seller
requests that the Court make a finding that the total
consideration to be paid by the Purchaser or the
Successful Bidder constitutes reasonably equivalent
value and fair consideration under any applicable law.

50.  The Seller, therefore, requests that this
Court make a finding that the Purchaser or the
Successful Bidder, as the case may be, has purchased the
Property in good faith within the meaning of section
363(m) of the Bankruptcy Code.  Further, the Seller
requests that this Court make a finding that the
Agreement or any purchase agreement reached as a result
of the Bidding Procedures necessarily will comprise an
arm's length, negotiated transaction entitled to the
protections of section 363(m) of the Bankruptcy Code.
Because the Seller has shown that the Purchaser's or
Successful Bidder's bid is not the product of fraud or
collusion between the Purchaser or Successful Bidder and

other bidders or the trustee, or an attempt to take

grossly unfair advantage of other bidders, the Seller

furthers request that this Court make a finding that the

transactions contemplated by the Agreement are not

avoidable under section 363(n) of the Bankruptcy Code.

**V.    THE SALE OF THE PROPERTY FREE AND CLEAR OF ALL
INTERESTS SHOULD BE AUTHORIZED UNDER BANKRUPTCY
CODE SECTION 363(f).**

51.    To facilitate a sale of the Property, the

Seller requests authorization to sell the Property free

and clear of any and all Liens that may be asserted

against such Property, except the Permitted Encumbrances.

52.    Under section 363(f) of the Bankruptcy

Code, a debtor in possession may sell property free and

clear of any interest in such property if, among other

things:

> (1) applicable nonbankruptcy law permits sale
> of such property free and clear of such
> interest;

> (2) such entity consents;

> (3) such interest is a lien and the price at
> which such property is sold is greater than
> the aggregate value of all liens on such
> property;

> (4) such interest is in bona fide dispute; or

27

(5) such entity could be compelled, in a legal
or equitable proceeding, to accept a money
satisfaction of such interest.

11 U.S.C. § 363(f).

53. Section 363(f) permits the sale of estate

property free and clear of interests if any one of the

five conditions above is met. See, e.g., In re Laines,

352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

54. Courts have held that the authority of a

debtor to sell assets free and clear of interests is

broad and should be read expansively. See In re TWA,

Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United

Mine Workers of Am. 1992 Benefit Plan v. Leckie

Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99

F.3d 573, 582 (4th Cir. 1996) (holding that the phrase

"any interest in property" includes more than just in

rem interests); In re P.K.R. Convalescent Centers, Inc.,

189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain

meaning of the statute demonstrates, § 363 covers more

situations than just sales involving liens.").  Moreover,

courts have noted that the purpose of the "free and

clear" language is to allow the debtor to obtain a

maximum recovery on its assets in the marketplace.  See

28

In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

55.   Accordingly, this Court should authorize the Seller to sell the Property free and clear of any and all Liens, except the Permitted Encumbrances, that may be asserted by any parties, with any such Liens attaching to the net proceeds of the sale of the Property in the same order and priority and subject to the same defenses as they exist against the Property.

**VIII. WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULE 6004 SHOULD BE WAIVED FOR ANY ORDER APPROVING THE SALE OF THE PROPERTY.**

56.   Bankruptcy Rule 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property of the estate is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

57.   The Seller requests that the Court waive the ten-day stay of Bankruptcy Rule 6004 with respect to the Sale of the Property following the entry of the Sale Order.  By waiving such requirements, the Seller and the Purchaser or the Successful Bidder, as applicable, will

be able to immediately close the Sale, which will result in immediate proceeds to the Seller's estate.

58.   Accordingly, the stay under Bankruptcy Rule 6004(h) should be waived.

**NOTICE**

59.   Notice of this Motion has been provided to those parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order"), as well as (a) all entities known to have expressed an interest in a transaction regarding the Property during the past three (3) months; and (b) all entities reasonably known to have a Lien on the Property; and (c) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion.   The Seller submits that, under the circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

60.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Seller requests that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

61.   No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Seller respectfully request that the Court (i) enter an Sale Order, substantially in the form annexed hereto, granting the relief requested herein, and (ii) such other and further relief as may be just and proper.

Dated: June 26, 2009
       Richmond, Virginia

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors
in Possession

Gregg M. Galardi, Esq.         Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.        Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                      One James Center
One Rodney Square              901 E. Cary Street
PO Box 636                     Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363, 365 AND
503 AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND
APPROVING THE SALE BY SELLER OF CERTAIN REAL PROPERTY
LOCATED IN VIRGINIA BEACH, VIRGINIA FREE AND CLEAR OF
LIENS AND INTERESTS**

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

---

[1]  Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Motion.

debtors and debtors in possession in the above-captioned
jointly administered cases, the "Debtors") for entry of
an order pursuant to sections 105, 363 and 503 of title
11 of the United States Code (the "Bankruptcy Code") and
Rules 2002 and 6004 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), (A) authorizing the
Seller to enter into the Agreement with the Cardinal
Capital Partners, Inc. (the "Purchaser") for the sale
(the "Sale") of certain of the Seller's real property
located in the Virginia Beach Shopping Center, at 110
South Independence Boulevard, Virginia Beach, Virginia
(the "Property"), subject to higher or otherwise better
proposals, (B) approving the Termination Fee in
connection therewith, (C) approving the Sale free and
clear of all Liens and (D) granting related relief; and
upon the record of the auction conducted on July 14,
2009 (the "Auction") and the hearing held on July 16,
2009 (the "Sale Hearing"); and after due deliberation
thereon, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.     The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.     Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.     The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 503 and Bankruptcy Rules 2002 and 6004.

D.     The notice of the Motion, the Auction, and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.     The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property.

---

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

F.     A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities.

G.     The Seller and its professionals marketed the Property and conducted a sale process as set forth in and in accordance with the Motion and the Bidding Procedures.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid on the Property.

H.     The Seller has demonstrated good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Seller and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Property and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Property pursuant thereto and (c) the Total Consideration agreed to by the Purchaser are fair and reasonable and constitute the highest or otherwise best value obtainable for the Property.

I.    The Seller has full power and authority
to execute the agreement submitted by the Purchaser, a
copy of which is annexed hereto as <u>Exhibit A</u> (the
"Agreement") and all other applicable documents
contemplated thereby.  The transfer and conveyance of
the Property by the Seller have been duly and validly
authorized by all necessary action of the Seller.  The
Seller has all of the power and authority necessary to
consummate the transactions contemplated by the
Agreement and has taken all action necessary to
authorize and approve the Agreement and to consummate
the transactions contemplated thereby.  No consents or
approvals, other than those expressly provided for in
the Agreement, are required for the Seller to consummate
such transactions.

J.    The Agreement and the Sale of the
Property were negotiated and have been and are
undertaken by the Seller and the Purchaser at arms'
length without collusion or fraud, and in good faith
within the meaning of Sections 363(m) of the Bankruptcy
Code.  As a result of the foregoing, the Seller and the

Purchaser are entitled to the protections of Section
363(m) of the Bankruptcy Code.

K.    Neither the Seller nor the Purchaser
engaged in any conduct that would cause or permit the
Agreement or the consummation of the Sale to be avoided,
or costs or damages to be imposed, under Section 363(n)
of the Bankruptcy Code.

L.    The Total Consideration provided by the
Purchaser for the Property is the highest and best offer
received by the Seller, and the Total Consideration
constitutes (a) reasonably equivalent value under the
Bankruptcy Code and Uniform Fraudulent Transfer Act,
(b) fair consideration under the Uniform Fraudulent
Conveyance Act, and (c) reasonably equivalent value,
fair consideration and fair value under any other
applicable laws of the United States, any state,
territory or possession, or the District of Columbia,
for the Property.

M.    The Sale must be approved and consummated
promptly to obtain the value provided under the terms of
the Agreement.

N.    The transfer of the Property to the Purchaser is a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of the Seller to the Property free and clear of all liens (including the liens of the Seller's post-petition lenders and liens for past-due real property taxes), claims and encumbrances (collectively, the "Liens"), except for those items defined in the Agreement(and which are referred to hereinafter) as the "Permitted Encumbrances".

O.    If the Sale of the Property by the Seller were not free and clear of any Liens, except for the Permitted Encumbrances, as set forth in the Agreement and this Sale Order, or if the Purchaser would, or in the future could, be liable for any of the Liens, the Purchaser would not have entered into the Agreement and would not consummate the Sale contemplated by the Agreement, thus adversely affecting the Seller, its estate, and its stakeholders.

P.    The Seller may sell its interest in the Property free and clear of all Liens (except the Permitted Encumbrances) because, in each case, one or

more of the standards set forth in Bankruptcy Code
sections 363(f)(1)-(5) has been satisfied.  All holders
of Liens, if any, who did not object or withdrew their
objections to the Sale are deemed to have consented to
the Sale pursuant to 11 U.S.C. § 363(f)(2) and all
holders of Liens are adequately protected by having
their Liens, if any, attach to the cash proceeds of the
Sale ultimately attributable to the property against or
in which they claim an interest with the same priority,
validity, force, and effect as they attached to such
property immediately before the Closing of the Sale.

Q.   Based on the foregoing findings of fact
and conclusions of law,[3]

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Motion is GRANTED.

2.   Any and all objections to the Motion not
waived, withdrawn, settled, adjourned or otherwise
resolved herein are hereby overruled on the merits and
denied with prejudice.

---

[3]   Statements made by the Court from the bench at the hearing on the
Motion shall constitute additional conclusions of law and
findings of fact as appropriate.

**A.    Approval Of The Agreement.**

3.    Pursuant to Bankruptcy Code section
363(b), the Agreement and all of the terms and
conditions thereof are hereby approved.

4.    Pursuant to Bankruptcy Code section
363(b), the Seller is authorized and approved to perform
its obligations under the Agreement and comply with the
terms thereof and consummate the Sale in accordance with
and subject to the terms and conditions of the Agreement.

5.    The Seller is authorized, but not
directed, to execute and deliver, and empowered to
perform under, consummate, and implement all additional
instruments and documents as may be reasonably necessary
or desirable to implement the Agreement, and to take all
further actions as may be requested by the Purchaser for
the purpose of assigning, transferring, granting,
conveying, and conferring to the Purchaser or reducing
to possession the Property as contemplated by the
Agreement.

6.    This Sale Order and the Agreement shall
be binding in all respects upon the Seller, all
stakeholders (whether known or unknown) of the Seller,

all affiliates and subsidiaries of the Seller, and any

subsequent trustees appointed in the Seller's chapter 11

case or upon a conversion to chapter 7 under the

Bankruptcy Code.  To the extent that any provision of

this Sale Order is inconsistent with the terms of the

Agreement, this Sale Order shall govern.

        7.    The Agreement and any related agreements,

documents, or other instruments may be modified, amended,

or supplemented by the parties thereto, in a writing

signed by such parties, and in accordance with the terms

thereof, without further order of the Court; provided

that any such modification, amendment, or supplement is

disclosed to the Creditors' Committee and does not have

a material adverse effect on the Seller's estate, in the

good faith business judgment of the Seller.

**B.    Sale And Transfer Of The Property.**

        8.    Pursuant to Bankruptcy Code sections

363(b) and 363(f), upon the consummation of the

Agreement, the Seller's right, title, and interest in

the Property shall be transferred to the Purchaser free

and clear of all Liens except the Permitted Encumbrances,

with all such Liens to attach to the cash proceeds of

the Sale in the order of their priority, with the same

validity, force, and effect which they had as against

the Property immediately before such transfer, subject

to any claims and defenses the Seller may possess with

respect thereto.

9.    If any person or entity which has filed

financing statements, mortgages, mechanic's liens, <u>lis</u>

<u>pendens</u>, or other documents or agreements evidencing

Liens on or against the Property shall not have

delivered to the Seller prior to the Closing of the Sale,

in proper form for filing and executed by the

appropriate parties, termination statements, instruments

of satisfaction, releases of all Liens that the person

or entity has with respect to the Property, or otherwise,

then (a) the Seller is hereby authorized to execute and

file such statements, instruments, releases, and other

documents on behalf of the person or entity with respect

to the Property and (b) the Purchaser is hereby

authorized to file, register, or otherwise record a

certified copy of this Sale Order, which, once filed,

registered, or otherwise recorded, shall constitute

conclusive evidence of the release of all Liens on or

against the Property of any kind or nature whatsoever
except for the Permitted Encumbrances.

10.   This Sale Order (a) shall be effective as
a determination that, upon the Closing of the Sale, all
Liens of any kind or nature whatsoever existing as to
the Seller or the Property prior to the Closing of the
Sale, except for the Permitted Encumbrances, have been
unconditionally released, discharged, and terminated
(other than any surviving obligations), and that the
conveyances described herein have been effected and (b)
shall be binding upon and shall govern the acts of all
entities including, without limitation, all filing
agents, filing officers, title agents, title companies,
recorders of mortgages, recorders of deeds, registrars
of deeds, administrative agencies, governmental
departments, secretaries of state, federal, state, and
local officials, and all other persons and entities who
may be required by operation of law, the duties of their
office, or contract, to accept, file, register, or
otherwise record or release any documents or instruments,
or who may be required to report or insure any title or
state of title in or to any of the Property.

11.   All persons and entities, including, but
not limited to, all debt security holders, equity
security holders, governmental, tax, and regulatory
authorities, lenders, trade stakeholders, and other
stakeholders, holding Liens of any kind or nature
whatsoever against or in the Seller or the Property,
except the Permitted Encumbrances (whether legal or
equitable, secured or unsecured, matured or unmatured,
contingent or non-contingent, senior or subordinated)
arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Order or the Agreement releases or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of the Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any

governmental agency from asserting or enforcing, outside

the Court, any liability described in the preceding

sentence.  Notwithstanding the above, nothing herein

shall be construed to permit a governmental agency to

obtain penalties from the Purchaser for days of

violation of environmental laws and regulations prior to

Closing.

**D.   Additional Provisions**

12.   The Total Consideration provided by the

Purchaser for the Property under the Agreement is hereby

deemed to constitute reasonably equivalent value and

fair consideration under the Bankruptcy Code, the

Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the

United States, and any state, territory, or possession

thereof, or the District of Columbia.

13.   The Total Consideration provided by the

Purchaser for the Property under the Agreement is fair

and reasonable and the Sale may not be avoided under

section 363(n) of the Bankruptcy Code.

14.   Upon the Closing, this Sale Order shall

be construed as and shall constitute for any and all

purposes a full and complete general assignment,
conveyance, and transfer of the Property or a bill of
sale transferring good and marketable title in the
Property to the Purchaser pursuant to the terms of the
Agreement.

15.   The transactions contemplated by the
Agreement are undertaken by the Seller and the Purchaser
at arm's length, without collusion and in good faith, as
that term is used in section 363(m) of the Bankruptcy
Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to
consummate the Sale of the Property shall not affect the
validity of the Sale to the Purchaser, unless such
authorization is duly stayed pending such appeal.   The
Purchaser is a purchaser in good faith, within the
meaning of section 363(m) of the Bankruptcy Code, of the
Property and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

16.   The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Order shall not diminish or impair the

effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

      17.   If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of
the Agreement due to no fault of the Seller and Seller
is not in default of its obligations under such
Agreement, then Seller's counsel shall file with the
Court and serve upon the Purchaser, [_____] (the
"Alternate Bidder") and their counsel, a notice of such
default, which shall include a copy of the Alternate
Bidder's agreement upon which the Seller will then close,
in which case (i) Seller shall be deemed authorized to
close on the Sale of the Property with the Alternate
Bidder on ten (10) days' advance written notice to the
Alternate Bidder, and (ii) the Alternate Bidder shall be
afforded all of the protections originally afforded to
the Purchaser under this Sale Order and the findings
herein as to adequacy and fairness of consideration paid
and good faith shall be deemed to apply to the Alternate
Bidder, its Alternate Bid, and its purchase and sale

agreement with the Seller, without the necessity of
further order of this Court.

18.   All deposits submitted to the Seller for
the Property, if any, shall be returned to the bidders
that submitted such deposits no later than two business
days after the Closing of the Sale with the Purchaser
(or the Alternate Bidder, as the case may be), except in
the case of a bidder who closed on the Sale of the
Property or who was required to close in accordance with
the terms of this Sale Order but failed to do so in
breach of its contractual obligations through no fault
of the Seller.

19.   This Order shall be effective and
enforceable immediately upon entry and shall not be
stayed pursuant to Rule 6004(h).

20.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

21.   This Court retains exclusive jurisdiction
to interpret, construe, enforce, and implement the terms
and provisions of this Sale Order, the Agreement, all
amendments thereto, any waivers and consents thereunder,

17

and of each of the agreements executed in connection
therewith in all respects, including, but not limited to,
retaining jurisdiction to (a) compel delivery of the
Property to the Purchaser, (b) compel delivery of the
purchase price or performance of other obligations owed
to the Seller pursuant to the Agreement, (c) resolve any
disputes arising under or related to the Agreement, the
Alternate Bid, and any deposit delivered to Seller by a
bidder for the Property, (d) interpret, implement, and
enforce the provisions of this Sale Order, and
(e) protect the Purchaser against any Lien against the
Seller or the Property of any kind or nature whatsoever,
except for Permitted Encumbrances, which Liens, valid
and timely perfected, shall attach to the proceeds of
the Sale.

Dated:  Richmond, Virginia
        _____, 2009


        _____
        UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                        /s/ Douglas M. Foley

**Exhibit A**

**(Agreement)**

<u>PURCHASE AND SALE AGREEMENT</u>

THIS PURCHASE AND SALE AGREEMENT (this "<u>Agreement</u>"), dated as of May _|| , 2009, is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation, its permitted assignees or designees ("Purchaser").

RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "<u>Bankruptcy Court</u>"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion (as defined below) seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    <u>Purchase and Sale</u>.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to that certain outparcel located in the Virginia Beach Shopping Center, 110 South Independence Boulevard, Virginia Beach, Virginia, containing approximately .683 of an acre, and being more particularly shown on <u>Exhibit A</u> attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land (herein collectively called the "<u>Property</u>").

2.    PURCHASE PRICE; ADDITIONAL CONSIDERATION

2.1    <u>Purchase Price</u>.    The purchase price (the "<u>Purchase Price</u>") for the Property shall be FIVE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($525,000.00). At Closing (as defined below), the Purchase Price, less the Deposit (as defined below), shall be paid into the Escrow Agent's escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

2.2     Additional Consideration.     In the event the Bankruptcy Court enters the Sale Order and Closing thereafter occurs as set forth in this Agreement, Purchaser, as additional consideration for Seller agreeing to sell and convey the Property to Purchaser pursuant to this Agreement, shall cause CC-Virginia Beach, LLC, an affiliate of Purchaser ("Purchaser's Affiliate"), solely with respect to its prepetition claims relating to its lease with Seller for Seller's store located at 110 South Independence Boulevard, Virginia Beach, Virginia, to agree at Closing (a) to the disallowance of its presently filed proof of claim dated January 27, 2009 in the total amount of $26,655.59 and (b) to waive its right to file a proof of claim for lease rejection damages pursuant to section 502(b)(6) of the Bankruptcy Code or to the disallowance of any such filed proof of claim, which proof of claim would be in the total amount of approximately $593,864.77 (collectively, the "Purchaser's Affiliate's Bankruptcy Claims").     Notwithstanding the foregoing, nothing contained in this Section 2.2 shall affect the right of Purchaser's Affiliate with respect to any administrative claims it may have against Seller pursuant to sections 365(d)(3) or 502(b) and the right of Purchaser's Affiliate to assert and recover on such administrative claims is expressly reserved unto Purchaser's Affiliate.

3.     DEPOSIT

3.1     Deposit.     Concurrently with execution of this Agreement, Purchaser shall deliver to Republic Title of Texas, Inc. ("Escrow Agent"), 2626 Howell Street, 10th Floor, Dallas, Texas 75204, Attention: Cathy Moeller,  Phone: (214) 855-8871, Fax: (214) 855-8889, Email: cmoeller@republictitle.com, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to FIFTY-TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($52,500.00) (which amount, together with all interest accrued thereon, is herein called the "Deposit") to be held by Escrow Agent in an interest-bearing account in a federally insured financial institution in the Dallas, Texas metropolitan area, or in such other interest-bearing account or investment as the parties hereto shall direct.

3.2     Application of Deposit.     If the sale of the Property is consummated under this Agreement, at Closing, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 4.2, Section 4.3, Section 7.1, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations").  If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, Escrow Agent shall pay the Deposit to Seller, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to

2

deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) promptly after the notice to terminate this Agreement is given. The obligation to deliver the Reports shall survive the termination of this Agreement. All interest earned on the Deposit shall be reported to the Internal Revenue Service as income of Purchaser, and Purchaser shall promptly execute all forms reasonably requested by Escrow Agent regarding such interest.

4.     ITEMS DELIVERED TO PURCHASER

4.1     Items Delivered.     Seller has delivered or will deliver to Purchaser, within five (5) days following Seller's execution of this Agreement, all title policies and commitments (including copies of all underlying title documents referenced therein), surveys, environmental reports, zoning reports and tax bills regarding the Property that are in Seller's possession or control.

4.2     Title Examination.     Purchaser shall have the right to have Seller's title to the Property examined and shall give written notice to Seller within twenty-one (21) days from and after the date of this Agreement (the "Due Diligence Period") of any objection thereto; provided, however, Seller shall have no obligation to satisfy any such objections. Purchaser must elect, on or before the expiration of the Due Diligence Period, one of the following: (i) to waive any such objections that Seller has not agreed to satisfy at or prior to the Closing and to close the transaction in accordance with the terms of this Agreement; or (ii) to terminate this Agreement, in which event Escrow Agent shall promptly return the Deposit to Purchaser as Purchaser's sole and exclusive remedy; provided, however, if Seller has agreed to cure or satisfy each such objection specified in the written notice, then no such election shall be required and Purchaser shall be obligated to close the transaction in accordance with the terms of this Agreement; provided, further, if Purchaser does not send a written notice of title objections prior to the expiration of the Due Diligence Period or does not make such an election on or before the expiration of the Due Diligence Period, then Purchaser shall be deemed to have waived irrevocably any and all title objections and shall be obligated to close the transaction in accordance with the terms of this Agreement.

4.3     Property Inspection.     Purchaser shall have through the last day of the Due Diligence Period to determine whether, in Purchaser's sole and absolute discretion, the Property is acceptable to Purchaser. Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines that the Property is not acceptable for any reason, in which event Escrow Agent shall promptly return the Deposit to Purchaser and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations. If Purchaser does not give a

3

notice of termination pursuant to Section 4.2 or this Section 4.3 at or prior to 5 p.m. (local time in Virginia Beach, Virginia) on the last day of the Due Diligence Period, this Agreement shall continue in full force and effect and Purchaser's right to terminate this Agreement pursuant to Section 4.2 and this Section 4.3 shall expire and be of no further force or effect.

Subject to the conditions set out in this Section 4.3, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense. I f any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test. Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably. Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors. Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained. Purchaser's restoration and indemnification obligations set forth in this Section 4.3 shall survive the Closing or termination of this Agreement, as applicable.

4.4   Reports.   All information provided by Seller to Purchaser relating to the Property whether before or after the date of this Agreement and any title commitments, surveys and environmental reports relating to the Property obtained by Purchaser pursuant to Section 4.2 and Section 4.3 above are hereinafter collectively referred to as the "Reports". All environmental reports relating to the Property, whether previously obtained by Seller and provided to Purchaser pursuant to Section 4.1 above or obtained by Purchaser pursuant to Section 4.3 above (collectively, the "Environmental Reports"), shall be treated as confidential information and shall not be disclosed to any

4

third parties except for Purchaser's attorneys, engineers, lenders, prospective tenants and other business associates who need to know the information contained in the Environmental Reports in furtherance of this transaction, and then only if they agree to maintain such information in strict confidence as provided herein.   Purchaser shall be liable to Seller for any loss, damage or liability incurred by Seller as a result of the unauthorized disclosure of the confidential information by or through Purchaser.   In the event this Agreement is terminated for any reason prior to Closing, the provisions of this Section 4.4 shall survive such termination.

4.5    Purchaser's Representations and Warranties.       Purchaser represents and warrants to Seller that (a) Purchaser is a corporation, duly organized and in good standing under the laws of the State of Texas, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement, and Purchaser or its permitted assignee or designee at Closing will be authorized to do business in the Commonwealth of Virginia; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any permitted assignee or designee of Purchaser, is a party or by which Purchaser, any permitted assignee or designee of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms.   Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any material inaccuracies which prevent the Closing shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6    Seller's Representations and Warranties.    Seller    represents    and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the

5

liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances. The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

      4.7    <u>Further Assurances</u>.   Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.      DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

      5.1    <u>Disclaimer</u>.   PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY

6

ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY, PROTECT, DEFEND, SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S CONDUCT. THE PROVISIONS OF THIS SECTION 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

7

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4    Purchaser's Independent Investigations.    For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the date of this Agreement, and Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.  Purchaser is also entitled to

8

access the Property following the expiration of the Due Diligence Period and prior to Closing, subject to Seller's reasonable consent and subject to Purchaser's restoration and indemnification obligations set forth in Section 4.3 above.

6.    CLOSING

6.1    Closing.    Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "Closing") shall be conducted in escrow through the offices of the Escrow Agent or, if necessary, held at a location to be mutually agreed upon by the parties, on the date which is five (5) days after the later of (i) the expiration of the Due Diligence Period, or (ii) the date of entry by the Bankruptcy Court of the Sale Order (the date on which the Closing occurs is referred to as the "Closing Date").

6.2    Possession.    Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes and assessments that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, of record, and (iv) any and all matters that would be shown by a current survey of the Property (collectively, the "Permitted Encumbrances").

6.3    Prorations.    All real estate taxes and assessments, both general and special, for the year in which the Closing occurs, whether or not then due or payable, and all other normally proratable items shall be prorated as of the Closing Date, based upon the latest assessments or actual invoices available.    Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.    Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4    Closing Costs.    Purchaser shall pay all title examination costs, title insurance premiums, survey costs, environmental and engineering costs, and any and all other due diligence costs.    Purchaser shall also pay the grantee's tax imposed on the Deed (as defined below) pursuant to the Virginia Code and any other recording fees associated with the recordation of the Deed.    Seller shall pay the grantor's tax imposed on the Deed pursuant to the Virginia Code.    Except as otherwise provided herein, each party shall pay its own attorneys' fees.    The parties shall each pay one-half (1/2) of all transfer and

9

recordation costs and any escrow fee charged by Escrow Agent; and, with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in the Commonwealth of Virginia.

     6.5    <u>Seller's Obligations at the Closing</u>.  At the Closing, Seller shall deliver to Escrow Agent the following:

     (a)    <u>Deed</u>. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject only to the Permitted Encumbrances.

     (b)    <u>Foreign Person</u>.   An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

     (c)    <u>Transfer Tax Returns</u>. All state, county or local declarations, affidavits, or transfer tax statements that are required to be executed by a grantor in connection with the recording of the Deed in the county and state where the Property is located, if any.

     (d)    <u>Closing Statement</u>.  A closing statement executed by Seller.

     (e)    <u>Additional Documents</u>.  Such other documents as may be required by this Contract or reasonably required by the Title Company, provided that any documents required by the Title Company must be in a form acceptable to Seller.

     6.6    <u>Purchaser's Obligations at the Closing</u>.   At the Closing, Purchaser shall deliver to Escrow Agent the following:

     (a)    <u>Purchase Price</u>.   The Purchase Price (less the amount of the Deposit, which shall be released separately by Escrow Agent to Seller), by wire transfer of immediately available funds.

     (b)    <u>Purchaser's Affiliate's Bankruptcy Claims</u>. A document duly executed by Purchaser's Affiliate, in a form reasonably acceptable to Seller, addressing the disallowance and waiver, respectively, of the Purchaser's Affiliate's Bankruptcy Claims in accordance with the terms of Section 2.2 above.

     (c)    <u>Evidence of Authority</u>.   Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

10

        (d)    <u>Taxpayer I.D. Certificate</u>.   A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

        (e)    <u>Transfer Tax Returns</u>. All state, county or local declarations, affidavits, or transfer tax statements that are required to be executed by a grantee in connection with the recording of the Deed in the county and state where the Property is located, if any.

        (f)    <u>Additional Documents</u>.   Such other documents as may be required by this Contract or reasonably required by the Title Company, provided that any documents required by the Title Company must be in a form acceptable to Purchaser.

    6.7    <u>Commission</u>. Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty (the "<u>Broker</u>"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement.   Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever.   Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction.   The provisions of the preceding sentence shall survive the Closing.

7.    RISK OF LOSS

    7.1    <u>Condemnation</u>.    If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement, in which case the Deposit shall be returned to Purchaser by Escrow Agent and neither party shall have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which case the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

8.    DEFAULT

    8.1    <u>Breach by Seller</u>.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy, except as otherwise provided below, may terminate this Agreement and demand the return of the Deposit from Escrow Agent.   In no event, except as otherwise provided below, shall

11

Purchaser be entitled to any remedy other than the return of the Deposit from Escrow Agent, and Escrow Agent and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages.    In the event that the Sale Order has been obtained and Seller shall fail to consummate the transactions contemplated by this Agreement for any reason other than pursuant to a provision of this Agreement permitting Seller to do so, then (and only in such event) Purchaser shall be entitled to the remedy of specific performance.

8.2    Breach by Purchaser.  In the event that Purchaser shall fail to consummate the transactions contemplated by this Agreement for any reason, except Seller's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Seller, as its sole and exclusive remedy, may terminate this Agreement and thereupon shall be entitled to payment of the Deposit from Escrow Agent as liquidated damages.  Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and because the parties believe that the Deposit represents a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.    BANKRUPTCY ISSUES

9.1    Generally.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2    Filing a Sale Motion. The  obligation  of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement.    Promptly following the expiration of the Due Diligence Period, Seller will file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "Sale Motion"). The Sale Motion shall be in form and substance consistent with this Agreement and shall be in a form and substance reasonably satisfactory to Purchaser.    Seller shall be responsible for serving and providing notice of the Sale Motion.

12

9.3     Entry of Sale Order.   The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above.   Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

9.4     Termination.   Purchaser acknowledges that the Seller intends to solicit "higher or better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least $550,000.00 shall be required; (b) each initial overbid must be accompanied by a deposit in an amount equal to at least ten percent (10%) of the amount of such overbid); (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing  offer is received by Seller, Seller shall conduct an auction to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the auction.   The last day for submission of higher or better offers will be fixed by Seller or established by order of the Bankruptcy Court. Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order within thirty (30) days following the expiration of the Due Diligence Period.   Subject to the approval of the Bankruptcy Court, if this Agreement is terminated by Seller in order to permit Seller to accept a "higher or better" offer for the Property, Seller shall pay Purchaser a fee of $15,000.00 as a "break-up" fee and reimbursement for all costs and expenses incurred by Purchaser in connection with this Agreement, which fee shall be Purchaser's sole recourse and remedy in the event of such termination.

10.    MISCELLANEOUS

10.1    Notices.     All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at

13

the address specified below.  For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

| | |
|---|---|
| If to Purchaser: | CARDINAL CAPITAL PARTNERS, INC.<br>8214 Westchester Dr., Ninth Floor<br>Dallas, Texas 75225<br>Attention: Scott S. Riley |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Kamran Moattar |
| and a copy to: | LeClairRyan<br>555 Long Wharf Drive, Eighth Floor<br>New Haven, Connecticut 06511<br>Attention: Niclas A. Ferland |
| If to Seller: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>P. O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention:  General Counsel |
| and a copy to: | MCGUIREWOODS LLP<br>One James Center<br>901 East Cary Street<br>Richmond, Virginia 23219<br>Attention: Edmund S. Pittman, Esq. |

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

14

10.2   Entire Agreement.   This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3   Amendment. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4   Heading.   The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5   Time of Essence.   Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6   Governing Law.   This Agreement shall be governed by the laws of the Commonwealth of Virginia.

10.7   Successors and Assigns: Assignment.   This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller, such consent not to be unreasonably withheld. No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement. Purchaser may designate one or more entities to take title to the Property. This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8   Invalid Provision.   If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

15

10.9   Attorneys' Fees.      In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10   Multiple Counterparts.      This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11   No Recordation.      Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12   Merger Provision.      Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13   Brokers.      Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14   Consent to Jurisdiction of Bankruptcy Court.      THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HEREO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Buyer and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or

16

proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

[SIGNATURE PAGE ATTACHED]

17

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: *Michelle Mosier*
Name: *Michelle Mosier*
Title: *VP & Controller*

PURCHASER

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _____
Title: _____

18

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

PURCHASER

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _____Mitzi Patin_____
Title: _____Secretary_____

18

The escrow terms and conditions of this Agreement are agreed to and accepted this 11th
day of _____ May _____, 2009.

ESCROW AGENT:

REPUBLIC TITLE OF TEXAS, INC.

By: _____

Name: _____

Title: _____

Mailing Address:

2626 Howell Street, 10th Floor
Dallas, Texas _75204_
Attention: Cathy Moeller

19

EXHIBIT A

PLAT DEPICTING PROPERTY

(See attached)

S 87° 49' 56" E   50.

EXIST 22' INGRESS
EGRESS EASEMENT

S 87° 49' 56" E 63.00'

PARCEL B

THE PROPERTY

EXCLUSIVE PARKING EASEMENT.
WITHIN THE PROPERTY.

N 87° 49' 56" W  18.00'

NON-EXCLUSIVE PARKING
EASEMENT NOT WITHIN
THE PROPERTY.

NON-EXCLUSIVE
PARKING EASEMENT

INDEPENDENCE BOULEVARD
VARIABLE WIDTH RIGHT-OF-WAY

N 87° 49' 56" W
110.29'

EXIST SANITARY SEWER
EASEMENT DEDICATED
TO THE CITY OF VIRGINIA
BEACH

LIMITS OF CONSTRUCTION
STAGING AND CONSTRUCTION
TRAFFIC ROUTE NON-
EXCLUSIVE EASEMENT

THE PARTIES ACKNOWLEDGE THAT THE
ABOVE-HATCHED AREA IS APPROXIMATE AND
THE PARTIES SHALL AGREE UPON A
MORE COMPLETE DESCRIPTION OF THE
PROPERTY DURING THE DUE DILIGENCE
PERIOD. IT BEING INTENDED THAT
SELLER CONVEY ALL OF ITS TITLE AND
INTEREST IN THE PROPERTY HEREUNDER.

N 81° 12' 19" W
228.93'

S 66° 13' 12" W

FIRST AMENDMENT TO
PURCHASE AND SALE AGREEMENT

THIS FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "Amendment") is made effective as of the 1st day of June, 2009 (the "Amendment Effective Date"), by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation ("Purchaser").

RECITALS

A.      Seller and Purchaser entered into that certain Purchase and Sale Agreement dated as of May 11, 2009 (the "Purchase Contract"), pursuant to which Seller agreed to sell to Purchaser and Purchaser agreed to purchase from Seller, subject to the terms and conditions set forth in the Purchase Contract, certain real property located in the Virginia Beach Shopping Center, 110 South Independence Boulevard, Virginia Beach, Virginia and more particularly described in the Purchase Contract (the "Property").

B.      Through the course of its due diligence, Purchaser has determined that the Property contains 0.5711 acres rather than the approximately 0.683 acres set forth in the Purchase Contract, and Purchaser has requested that Seller agree, prior to the expiration of the Due Diligence Period, to an adjusted purchase price for the Property of $439,000.00 (the "Adjusted Purchase Price").

C.      The Due Diligence Period expires on the Amendment Effective Date.

D.      Seller and Purchaser have agreed to an extension of the Due Diligence Period for the sole purpose of permitting Seller sufficient time to evaluate Purchaser's request for the Adjusted Purchase Price.

AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual provisions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Defined Terms.  Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned thereto in the Purchase Contract.

2.      Extension of Due Diligence Period.  Notwithstanding anything contained in Section 4.2 of the Purchase Contract to the contrary, for the sole purpose of permitting Seller sufficient time to evaluate Purchaser's request for the Adjusted Purchase Price, the Due Diligence Period shall be extended so that the expiration of the Due Diligence Period shall be the date which is seven (7) days following the Amendment Effective Date (the "Due Diligence Period Extension").  If Seller fails to agree to Purchaser's request for the Adjusted Purchase Price prior to the expiration of the Due Diligence Period Extension, Purchaser shall have the right to terminate the Purchase Contract in accordance with Section 4.3 thereof.

3.      Title Examination and Property Inspections. Purchaser has completed its examination of title to the Property and all other inspections Purchaser desires regarding the Property, and Purchaser hereby waives any right Purchaser may have to terminate the Purchase Contract pursuant to Section 4.2 and Section 4.3 thereof based upon the results of such title examination and inspections.

4.      Ratification of Purchase Contract.    Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

5.      Governing Law.   This Amendment shall be governed by the laws of the Commonwealth of Virginia.

6.      Multiple Counterparts.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

SELLER:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:    _Michell Mosier_
Name:  _Michelle Mosier_
Title: _VP & Controller_

PURCHASER:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By:    _____
Name:  _Mitzi Patton_
Title: _Secretary_

2

## SECOND AMENDMENT TO
## PURCHASE AND SALE AGREEMENT

THIS SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "Amendment") is made effective as of the _12th_ day of June, 2009 (the "Amendment Effective Date"), by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation ("Purchaser").

### RECITALS

A.    Seller and Purchaser entered into that certain Purchase and Sale Agreement dated as of May 11, 2009, as amended by that certain First Amendment to Purchase and Sale Agreement dated effective as of June 1, 2009 (collectively, the "Purchase Contract"), pursuant to which Seller agreed to sell to Purchaser and Purchaser agreed to purchase from Seller, subject to the terms and conditions set forth in the Purchase Contract, certain real property located in the Virginia Beach Shopping Center, 110 South Independence Boulevard, Virginia Beach, Virginia and more particularly described in the Purchase Contract (the "Property").

B.    Seller and Purchaser have agreed to (i) a reduction in the purchase price for the Property, (ii) a reduction in the amount of the initial minimum overbid required to be made by a competing bidder for the Property and (iii) an extension of the date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual provisions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Defined Terms.    Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned thereto in the Purchase Contract.

2.    Reduction in Purchase Price.    Notwithstanding anything contained in Section 2.1 of the Purchase Contract to the contrary, the Purchase Price for the Property shall be reduced from Five Hundred Twenty-Five Thousand and No/100 Dollars ($525,000.00) to Four Hundred Thirty-Nine Thousand and No/100 Dollars ($439,000.00).

3.    Reduction in Initial Minimum Overbid.    Notwithstanding anything contained in item (a) of the second sentence of Section 9.4 of the Purchase Contract to the contrary, the amount of the initial minimum overbid required to be made by a competing bidder for the Property shall be at least $464,000.00.

4.    Extension of Date for Entry of Sale Order.    Notwithstanding anything contained in item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract to the contrary, the

date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract shall be extended from the date which is thirty (30) days following the expiration of the Due Diligence Period to the date which is thirty (30) days following the Amendment Effective Date.

     5.    <u>Ratification of Purchase Contract</u>.    Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

     6.    <u>Governing Law</u>.  This Amendment shall be governed by the laws of the Commonwealth of Virginia.

     7.    <u>Multiple Counterparts</u>.  This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

    IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

          SELLER:

          CIRCUIT CITY STORES, INC.,
          a Virginia corporation

          By:    *Michelle Mosier*
          Name:  *Michelle Mosier*
          Title:  *VP & Controller*

          PURCHASER:

          CARDINAL CAPITAL PARTNERS, INC.,
          a Texas corporation

          By:    _____
          Name:  _____
          Title:  _____

2

date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract shall be extended from the date which is thirty (30) days following the expiration of the Due Diligence Period to the date which is thirty (30) days following the Amendment Effective Date.

     5.    <u>Ratification of Purchase Contract</u>.   Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

     6.    <u>Governing Law</u>.   This Amendment shall be governed by the laws of the Commonwealth of Virginia.

     7.    <u>Multiple Counterparts</u>.   This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

    IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

<u>SELLER</u>:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

<u>PURCHASER</u>:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _Mitzi Patin_____
Title: _Secretary_____

2

### THIRD AMENDMENT TO
### PURCHASE AND SALE AGREEMENT

THIS THIRD AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "Amendment") is made effective as of the 26th day of June, 2009 (the "Amendment Effective Date"), by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation ("Purchaser").

### RECITALS

A.      Seller and Purchaser entered into that certain Purchase and Sale Agreement dated as of May 11, 2009, as amended by that certain First Amendment to Purchase and Sale Agreement dated effective as of June 1, 2009 and that certain Second Amendment to Purchase and Sale Agreement dated effective as of June 12, 2009(collectively, the "Purchase Contract"), pursuant to which Seller agreed to sell to Purchaser and Purchaser agreed to purchase from Seller, subject to the terms and conditions set forth in the Purchase Contract, certain real property located in the Virginia Beach Shopping Center, 110 South Independence Boulevard, Virginia Beach, Virginia and more particularly described in the Purchase Contract (the "Property").

B.      Seller and Purchaser have agreed to an extension of the date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual provisions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Defined Terms.  Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned thereto in the Purchase Contract.

2.      Extension of Date for Entry of Sale Order.  Notwithstanding anything contained in item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract to the contrary, the date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract shall be extended to July 17, 2009.

3.      Ratification of Purchase Contract.   Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

4.      Governing Law.  This Amendment shall be governed by the laws of the Commonwealth of Virginia.

5.    <u>Multiple Counterparts</u>.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

<u>SELLER</u>:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

<u>PURCHASER</u>:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _Gil L. Besing_____
Title: _President_____

2

5.    Multiple Counterparts.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

SELLER:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:     *Michelle Mosier*
Name:     *Michelle Mosier*
Title:     *VP, Controller*

PURCHASER:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By:     _____
Name:     _____
Title:     _____