**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CIRCUIT CITY STORES, INC., *et al.*, | Case No. 08-35653 (KRH) |
| Debtors. | Jointly Administered |

**VERIFIED RESPONSE OF MIKAEL SALOVAARA TO DEBTORS'**
**SEVENTH OMNIBUS OBJECTION TO CERTAIN LATE CLAIMS**

Mikael Salovaara ("Salovaara"), by and through his undersigned counsel, submits his Verified Response to the Debtors' Seventh Omnibus Objection to Certain Late Claims (the "Objection") and states as follows:

**BACKGROUND**

1.      On November 10, 2008 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      Salovaara is a former member of the board of directors of Circuit City Stores, Inc., one of the Debtors herein.  Salovaara resigned from the board of directors prior to the Petition Date.

3.      As of the Petition Date, the Debtors owed Salovaara deferred cash compensation arising from Salovaara's services as a member of the board of directors.

4.      In connection with their chapter 11 petitions, the Debtors listed Salovaara on Circuit City Stores, Inc.'s filed Schedule F as a creditor holding a general unsecured claim for deferred cash compensation arising from his services as a member of the board of directors.  Significantly, the Debtors did not identify Salovaara's claim as disputed on Schedule F, but

1626602

merely indicated that it was contingent and unliquidated.   A copy of the relevant page of Schedule F is attached hereto as Exhibit A.

5.      On December 10, 2008, the Court entered an Order establishing January 30, 2009 (the "Bar Date") as the bar date for the filing of non-governmental claims against the Debtors' estates which arose prior to the Petition Date.

6.      Prior to the Bar Date, Salovaara filed two proofs of claims against the Circuit City Stores, Inc.'s estate: (i) a claim based on unpaid deferred cash compensation owed to him as a member of the board of directors (the "Cash Claim") and (ii) a claim based on vested, but unexercised, stock options granted to him as member of the board of directors (the "Options Claim" and, collectively with the Cash Claim, the "Proofs of Claims").

7.      Salovaara simultaneously mailed the Proofs of Claims on January 15 or 16, 2009 to the Debtors' claims agent, KCC, by first class mail from a U.S. Post Service mail dropbox in his hometown, Bernardsville, New Jersey.

8.      Although the two Proofs of Claims were mailed simultaneously approximately two weeks before the Bar Date, KCC returned to Salovaara a copy of the Options Claim stamped "received January 21, 2009" and a copy of the Cash Claim stamped "received February 2, 2009". Returned copies of the Proofs of Claims are attached hereto as Exhibit B.

9.      On February 3 2009, after having received from KCC the stamped "received" copy of the Options Claim, but before receiving the stamped "received" copy of the Cash Claim, Salovaara e-mailed the Debtors' then Assistant General Counsel, Jay Oakey, Esq., to inquire why the Debtors had not acknowledged the receipt of the Cash Claim.   In a response e-mail of the same date, Mr. Oakey advised Salovaara that he should just wait for the acknowledgement of the Debtors' receipt of the Cash Claim to arrive.   Notably, not only did Mr. Oakey not advise

Salovaara that the Debtors disputed the Cash Claim, but Mr. Oakey actually confirmed that the Debtors' records reflected that Salovaara was owed deferred cash compensation. A copy of Salovaara's e-mail exchange with Mr. Oakey on February 3, 2009 is attached hereto as Exhibit C.

10. At the time Salovaara prepared the Cash Claim, in accordance with the instructions he had received from the Debtors, he listed the amount of the claim as unknown. Since then, Salovaara has had an opportunity to review the records that were provided to him by the Debtors and has determined that the amount of the Cash Claim is $73,503.43.

11. Since filing Schedule F, the Debtors have neither amended it with respect to Salovaara's Cash Claim to change its status to disputed nor otherwise indicated that they dispute the merits of the Cash Claim.

12. Instead, on June 3, 2009, the Debtors filed the Objection, which included the Cash Claim among the claims to which the Debtors objected on the grounds of alleged untimely filing.

13. On June 22, 2009, Salovaara's co-counsel, Sills Cummis & Gross P.C. contacted Debtors' co-counsel MCGUIREWOODS LLP, explained the facts underlying the filing of the Cash Claim set forth above, and requested that, in light of such facts, the Debtors withdraw their Objection. Salovaara's counsel suggested to the Debtors' counsel that it would be a more productive use of the estates' and Salovaara's resources to resolve the allowed amount of the Cash Claim rather than litigate whether it was filed late. Unfortunately, the Debtors' counsel did not agree, thus forcing Salovaara to file this Response.

## **RELIEF REQUESTED**

**The Objection Should Be Denied Because the Cash Claim Was Timely Filed**

14.     The Debtors contention that Salovaara filed the Cash Claim late lacks merit. Salovaara simultaneously mailed both of his Proofs of Claims from the same mail dropbox in Bernardsville, N.J. to KCC's address in El Segundo, California listed on the notice of Bar Date approximately two weeks before the Bar Date.   According to the U.S. Post Office website, the estimated time of delivery of a letter-size envelope by first class mail from Bernardsville, New Jersey to El Segundo, California is three days. *See, http://postcalc.usps.gov.*   Thus, Salovaara mailed the Proofs of Claim so that they would be delivered to KCC well in advance of the Bar Date.

15.     Although the two Proofs of Claims were mailed simultaneously from the same location, and, presumably, should have arrived at KCC at the same time, KCC stamped the Options Claim "received January 21, 2009" and the Cash Claim "received February 2, 2009" – three days past the Bar Date.

16.     Salovaara submits that, in light of the facts that he mailed both Proofs of Claims at the same time and that KCC acknowledged the receipt of one of them – the Options Claim – on January 21, 2009, the stamping of the Cash Claim "received February 2, 2009" likely resulted from a clerical error by KCC.  Salovaara diligently mailed the Cash Claim approximately two weeks before the Bar Date and he should not be prejudiced by KCC's likely clerical error.

17.     Accordingly, Salovaara requests that the Objection be denied and the Cash Claim be deemed timely filed.

**Alternatively, to the Extent the Court Finds that the Cash Claim Was Filed Late,
the Cash Claim Should Still Be Allowed Based on Excusable Neglect**

18.      Under Federal Rule of Bankruptcy Procedure 9006(b)(1), "if a party moves for

permission to act after having missed a deadline, the court 'may at any time in its discretion . . .

permit the act to be done where the failure to act was the result of excusable neglect.'" *Pioneer*

*Investment Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380, 399 (1993).      While

Salovaara asserts that, for the reasons set forth above, the Cash Claim was timely filed, should

the Court find otherwise, Salovaara requests that this Response be deemed a request pursuant to

Rule 9006(b)(1) to allow the Cash Claim as late filed.

19.      "By empowering the courts to accept late filings 'where the failure to act was the

result of excusable neglect,' Rule 9006(b)(1), Congress plainly contemplated that the courts

would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or

carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507

U.S. at 388.

20.      As the Supreme Court has explained, the determination of what constitutes

excusable neglect is largely an equitable one, requiring courts to take into account all relevant

circumstances surrounding a party's failure to file a proof of claim prior to the bar date. *Pioneer*,

507 U.S. at 394-95. The factors that must be weighed include: (1) the danger of prejudice to the

debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason

for the delay, including whether it was within the reasonable control of the movant and; (4)

whether the movant acted in good faith. *See In re US Airways, Inc.,* 2005 Bankr. LEXIS 2828,

10-11 (Bankr. E.D. Va. 2005) *(citing Pioneer,* 507 U.S. at 394-95).

21.      The application of the four *Pioneer* factors to the instant case warrants allowing

the Cash Claim as late filed.

22.     Allowing the Cash Claim does not pose a danger of prejudice to the Debtors.  The

Debtors were on notice of the Cash Claim since the day they filed their petitions for relief.  In

fact, the Debtors acknowledged the Cash Claim as an undisputed claim on their Schedule F, only

asserting that it was contingent and unliquidated.  In addition, the Debtors are yet to propose a

plan of liquidation and, therefore, appear to be a substantial time away from making

distributions, if any, to unsecured creditors.  *See In re Ginther*, 2008 Bankr. LEXIS 1728 (Bankr.

S.D. Tex. 2008) (citing *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737-738 (5th Cir. 1995) ("Where

the late filed claim is anticipated by the debtor before it negotiates and confirms a plan of

reorganization, the debtor is not prejudiced by the granting of the leave to amend.").  Further, the

Cash Claim represents a miniscule fraction of the total liabilities asserted against the Debtors'

estates and, therefore, if allowed, will not have any meaningful impact on distributions to other

creditors.

23.     The short length of the alleged delay – only three days past the bar date – also

weighs in favor of allowing the Cash Claim.  Moreover, allowing the Cash Claim as late filed

will not have an adverse effect on the judicial proceedings.  While the Debtors have commenced

the process of objecting to and reconciling proofs of claims, this process will likely continue for

a substantial period of time before its conclusion.  Thus, addressing the merits of the Cash Claim

as part of this on-going claims allowance process will not cause any material delay in the

administration of these estates.

24.     As set forth above, to the extent KCC did not receive the Cash Claim until

February 2, 2009, the reason for the delay was beyond Salovaara's control.  By mailing the

Proofs of Claims approximately two weeks prior to the Bar Date, Salovaara was diligent in his

effort to ensure that the Proofs of Claims reached KCC well before the Bar Date.  He also

reached out to the Debtors' Assistant General Counsel prior to the Bar Date to express his concern that the Debtors had only acknowledged the timely receipt of the Options Claim and was reassured that his claims were reflected in the Debtors' records and that such acknowledgement of the Cash Claim would be forthcoming.  Given Salovaara's diligent efforts to ensure the timely filing of the Cash Claim, Salovaara should not be penalized for the mere three day delay in KCC's receipt of the Cash Claim that was occasioned by the factors beyond Salovaara's control (assuming, *arguendo*, that the Cash Claim was not timely filed).

25.      Similarly, the facts clearly demonstrate that Salovaara acted in good faith.  He did not wait till the last moment to mail the Cash Claim from New Jersey to California, risking that it might be delivered to KCC after the Bar Date.  To the contrary, Salovaara mailed the Cash Claim to KCC approximately two weeks before the Bar Date, which was plenty of time in advance given that the U.S. Post Office's estimated time of delivery of first class letter-size mail from Bernardsville, New Jersey to El Segundo, California is three days.

26.      Finally, it should be noted that the Debtors have not asserted any objection to the merits of the Cash Claim.  In fact, as set forth in Schedule F, the Debtors have not disputed the validity of the Cash Claim.  Therefore, if the Cash Claim is allowed as late filed, should the parties fail to reach an amicable resolution of the amount of the Cash Claim, the Court will only be required to liquidate the amount of the claim.

27.      In sum, the foregoing application of the *Pioneer* factors demonstrates that ample cause exists to allow the Cash Claim as late filed based upon Salovaara's excusable neglect.

WHEREFORE, based upon the foregoing, Salovaara respectfully requests that the

Objection be denied as to the Cash Claim.

Dated: June 29, 2009

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000

-and-

DURRETTE BRADSHAW PLC
600 East Main Street, 20th Floor
Richmond, Virginia 23219
804-916-6559

Co-Counsel to Mikael Salovaara

By:  /s/ Elizabeth L. Gunn
Elizabeth L. Gunn, VSB No. 71044
DurretteBradshaw PLC
600 E. Main Street, 20th Floor
Richmond, VA 23219
(804) 775-6900
Fax: (804) 775-6911
egunn@durrettebradshaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2009, the Verified Respone of Mikael
Salovaara to Debtors' Seventh Omnibus Objection to Certain Late Claims was filed
electronically via the Court's ECF system, thus satisfying the service requirements on the
Debtors as set forth in the Order Establishing Omnibus Objection Procedures and Approving the
Form and Manner of Notice of Omnibus Objections.

 /s/ Elizabeth L. Gunn

## VERIFICATION

Mikael Salovaara, of full age, states as follows:

1.      I am authorized to make this Verification.

2.      I have read the within Verified Response to the Debtors' Seventh Omnibus
Objection to Certain Late Claims and, to the best of my knowledge, information and belief, the
facts contained therein are true and accurate.

3.      I am aware that if any of the foregoing statements are willfully false, I am subject
to punishment.

Dated: June 29, 2009

MIKAEL SALOVAARA