**PRODUCT ADDENDUM**
DELIVERY TO FOREIGN PORT FOR U.S. IMPORT BY CIRCUIT CITY
("Verge" Brand Products – Letter of Credit)

THIS PRODUCT ADDENDUM ("Product Addendum") is entered into as of the 16th day of October, 2008 (the "Effective Date") between **CIRCUIT CITY STORES, INC.**, and its affiliates and subsidiaries ("Circuit City") and **SLAM BRANDS, INC.** ("Vendor") pursuant to the Master Dealer Agreement between Circuit City and Vendor dated as of March 1, 2008 (the "Agreement") to set forth certain terms of sale to Circuit City by Vendor of the Products referenced in the attached pricing grid schedule(s) (the "Pricing Grid"). Capitalized terms not otherwise defined in this Product Addendum will have the meaning set forth in the Agreement.

1. **"VERGE"; USE OF MARKS.**

    1.1    The Products sold under this Product Addendum shall be branded using Circuit City's "Verge" brand. As more particularly set forth in the Trademark License Agreement between Vendor and Circuit City dated as of May 15, 2008 (the "License Agreement"), the Products and any written materials such as user's manuals bearing the "Verge" brand must be tested/reviewed by Circuit City in advance of production. In the event of any conflict between the terms of the Agreement (including without limitation this Product Addendum) and the terms of the License Agreement, the terms of the License Agreement will control. The remedies set forth in the License Agreement shall not be exclusive.

    1.2    Vendor agrees to package the Products in accordance with Circuit City's packaging guidelines for "Verge" branded products, including specifications and material requirements, as supplied by Circuit City to Vendor from time to time. Vendor shall permit Circuit City or its designee to monitor compliance with such specifications and usage requirements at Vendor's or its designee's manufacturing facilities.

2. **PRICE AND PAYMENT TERMS.**

    2.1    The price for each Product sold under this Product Addendum is set forth on the attached Pricing Grid as of the Effective Date. Vendor may amend the price for the Products with prior notice to Circuit City. Except as otherwise stated herein, the price for all Products purchased hereunder shall be the price as stated on the Circuit City Purchase Order. In the event of an increase in Vendor's price to Circuit City, Circuit City will pay the lower price for all Products ordered under open Purchase Orders.

    2.2    Any listing of suggested retail prices is for point of reference only. This is not an agreement to sell the Products at a certain price, and Circuit City reserves the right, in its sole discretion, to establish the price at which it will sell the Products.

    2.3    Circuit City shall make payment to Vendor in US Dollars. Circuit City shall provide Vendor with a letter of credit under which payment shall be available to Vendor on or after sixty (60) days from the date that Vendor (i) tenders the Products covered by a Purchase Order under such letter of credit to Circuit City's broker or carrier; and (ii) presents all necessary supporting documentation as required by Circuit City's financial institution designated in the letter of credit, provided that Circuit City's financial institution confirms the completeness and accuracy of such supporting documents. The letter of credit will only be payable with respect to an invoice reflecting the Payment Discount specified in Section 2.4 and which invoice must match Circuit City's original Purchase Order number and the Products and purchase price listed therein.

2.4     In consideration of Circuit City's payment by letter of credit as provided in Section 2.3, Vendor agrees that Circuit City shall be entitled to receive a payment discount equal to two percent (2%) of the total amount otherwise due and payable under each invoice ("Payment Discount"). Vendor agrees to reflect on each invoice provided to Circuit City hereunder (i) the gross invoice cost, (ii) the amount of the applicable Payment Discount, and (iii) the net invoice cost actually payable on the invoice (i.e. the gross cost less the Payment Discount).

3.     **FREIGHT TERMS**. Unless otherwise set forth by Circuit City in a Purchase Order, freight will be FOB applicable Port as indicated on the Purchase Order, as enumerated in the INCO terms designated by the International Chamber of Commerce. If Vendor is unable to tender the goods in order to ensure shipment within the Circuit City freight forwarder's specified shipping window as provided on the Purchase Order, Vendor shall be responsible for the costs of any expedited shipping necessary to meet Circuit City's U.S. expected domestic arrival date.

4.     **SHIPMENT SHORTAGES**. In the event that Circuit City determines upon receipt of Products at its distribution centers that there are shortages in the number of Products shipped under a Purchase Order, Circuit City shall have the right to deduct the invoice cost of the shorted Products from any accounts payable balance owed by Circuit City to Vendor under any Product Addendum between Circuit City and Vendor pursuant to the Agreement or any other written agreement between Circuit City and Vendor. In the event any such shipment shortages create a debit balance, such amounts will be payable in accordance with the terms of the Agreement.

5.     **RETURNS OF NONCONFORMING PRODUCTS**. In addition to any other rights it may have at law or in equity, Circuit City may refuse and/or return, at Vendor's expense, any Products (i) which are nonconforming with the applicable Purchase Order or that are shipped contrary to or not in accordance with the terms of the Purchase Order or any other instruction provided by Circuit City; (ii) that are shipped in excess of or not covered by the Purchase Order; (iii) that are not shipped in standard packaging or containers; (iv) against which an allegation is made that the use of such Products infringe on any patent, trademark, trade secret, trade dress, copyright, right of privacy or publicity, or any other tangible or intangible proprietary or intellectual property right; (v) that are not designed, manufactured, packaged or labeled in accordance with industry standards and/or all applicable laws, ordinances, rules and regulations; (vi) that have caused injury to person or property; or (vii) that are subject to a government directed recall or statutory seizure (collectively, "Nonconforming Products"). Vendor will repay Circuit City for 100% of the invoice price paid by Circuit City for such Nonconforming Products and will reimburse Circuit City for its reasonable expenses relating to such Nonconforming Products (collectively, "Nonconforming Product Amounts"). Nonconforming Products will be shipped in accordance with Section 8 of this Product Addendum. Circuit City shall have the right to deduct all Nonconforming Product Amounts from any accounts payable balance owed by Circuit City to Vendor under any Product Addendum between Circuit City and Vendor pursuant to the Agreement or any other written agreement between Circuit City and Vendor. In the event the Nonconforming Product Amounts create a debit balance, Vendor will make payment of any such amounts in accordance with the terms of the Agreement.

6.     **CUSTOMER RETURNS: DESTROY IN FIELD**. Vendor and Circuit City acknowledge and agree that Vendor will not be obligated to accept returns of Products returned to Circuit City under its customer return policies as they may exist from time to time ("Customer Returns"). Vendor and Circuit City acknowledge that Circuit City has the right, but not the obligation, to destroy in field any Customer Returns or any other Product purchased by Circuit City under this Product Addendum.

7.     **EPIDEMIC FAILURE**. Notwithstanding Section 6 above, in the event that defective returns for the Products exceed a rate of three and one-half percent (3.5%) for a specific defect (other than customer

dissatisfaction), Circuit City, at its option, may return all inventory of the Products to Vendor at Vendor's expense. All return shipments will be sent in accordance with Section 8 of this Product Addendum. Circuit City shall receive a credit or refund from Vendor in an amount equal to 100% of the invoice price paid for such returned Products. In the event any reduction in the accounts payable balance creates a debit balance, Vendor will make payment of any such amounts in accordance with the terms of the Agreement.

8.    **PROCEDURES FOR RETURNS.**    All Products returned to Vendor for any reason in accordance with this Product Addendum (collectively, "Returned Products") will be returned in accordance with the procedures established by Circuit City from time to time, including but not limited to procedures for resolution of discrepancies in Product quantity and models. No return authorizations will be required; however, Vendor will, upon request by Circuit City, provide a blanket authorization for the same. Without limiting the generality of the foregoing, Returned Products will be packed by Circuit City to avoid damage in transit, but the Returned Products' original packaging is not required. No deduction or credit memo will be taken by Vendor for any missing parts. In the event the return of any Returned Products creates a debit balance, Vendor will make payment of any such amounts in accordance with the terms of the Agreement.

9.    **MANUFACTURER'S WARRANTY.**    Circuit City, or its affiliates or subsidiaries, shall provide a limited product warranty to the original purchaser that the Product is free from defects. Circuit City shall supply Vendor with the form of all written customer warranty documents covering the Products to be included with the Product packaging.

10.    **FACTORY INSPECTIONS.**    Vendor acknowledges and agrees that Circuit City or Circuit City's designee(s) may conduct announced factory inspections (i) during production at Vendor's or its designee's production facilities; (ii) after production but prior to shipping Product from Vendor's or its designee's production facilities; or (iii) otherwise prior to Product delivery to Circuit City's freight forwarder/ocean carrier. Vendor agrees to pay all costs incurred by Circuit City or its designee relating to such factory inspections. If the results of a factory inspection do not meet Circuit City's requirements, Circuit City reserves the right to request the Vendor to correct the related issues or problems regarding the Product and/or terminate this Product Addendum upon thirty (30) days' written notice to the Vendor.

11.    **REPRESENTATIONS AND WARRANTIES.**

11.1    Vendor warrants good and marketable title to the Products free of any lien or encumbrance. Without limiting the generality of the foregoing, Vendor represents and warrants that (i) it is the owner or valid licensee of any and all intellectual property or other proprietary rights pertaining to the Products, except as Product trademarks and/or tradenames have been licensed by Circuit City to Vendor under this Product Addendum and the License Agreement; (ii) it has the full and sufficient right, power and authority to sell the Products to Circuit City under this Product Addendum; (iii) the Products do not violate any other rights of third parties; (iv) Vendor has timely paid and will continue to timely pay throughout the term of this Product Addendum all licenses and/or royalties related to the Products (Vendor shall provide Circuit City evidence of payment of all such licenses and royalties prior to delivery of Product); and (v) Vendor is ISO 9002 certified, or certified by similarly recognized standards.

11.2    Vendor represents and warrants that all Products will be manufactured, processed, packaged, labeled, tagged, tested, certified, accurately marked, weighed, inspected, shipped, repaired, serviced and sold in compliance with all applicable industry standards and all applicable federal, state, provincial and local laws, treaties and regulations, including, without limitation, all laws and regulations relating to health, safety, environment, serial and identification numbers, manufacturing, packaging, labeling and country of origin designation, all toxic substances, OSHA and EPA regulations, customs and

importation requirements, and the Foreign Corrupt Practices Act. Vendor also represents and warrants that all Products shall be manufactured, processed, packaged, labeled, tagged, tested, certified, accurately marked, weighed, inspected, and sold in compliance with any mandatory compliance certifications or any voluntary compliance certifications as may required by Circuit City in writing from time to time in its sole discretion (e.g., Underwriter's Laboratories, Inc., CE, CSE, etc.). Vendor shall provide Circuit City with evidence of all such certifications prior to delivery of Product.

12. **PROHIBITION AGAINST FORCED LABOR, CHILD LABOR AND TRANS-SHIPMENTS.** Vendor certifies that the Products are not produced, manufactured, assembled or packaged by the use of forced labor, prison labor or child labor, and that the Products were not trans-shipped for the purpose of mislabeling or evading quota or country of origin restrictions. If Vendor or any supplier, subcontractor or agent of Vendor engages in such practices, Circuit City may, in addition to terminating this Product Addendum and all outstanding Purchase Orders hereunder, immediately terminate the Agreement and all other Product Addenda thereunder and all other current and future business relationship with Vendor and its supplier, subcontractor or agent. In addition, all parties involved and all information obtained may be turned over for prosecution under applicable law. Circuit City or its designees may conduct announced inspections to verify the certifications contained in this Section 12. Vendor agrees to pay all costs and expenses incurred by Circuit City or its designee(s) relating to such inspections.

13. **TERM AND TERMINATION.** The term of this Product Addendum will commence on the Effective Date and will continue until August 31, 2009. Notwithstanding the foregoing, this Product Addendum may be terminated with or without cause by either party without liability or obligation upon not less than forty-five (45) days' written notice to the other party. Additionally, this Product Addendum will terminate automatically upon termination of the Agreement.

14. **RETURNED UNIT RESALE; RECYCLE.** Any resale and/or recycle of Products returned to Vendor for any reason hereunder will be subject to the reasonable procedures established by Circuit City from time to time, or in the absence thereof, subject to Circuit City's prior written consent. Products returned to Vendor can be resold by Vendor inside or outside of the United States only if the packaging box, user manual, product labels, product identification stickers, and any other item that references "Verge" or Circuit City, is removed. In the event that Products are resold inside or outside of the United States without prior removal of such Circuit City trademarks or references, Vendor acknowledges and agrees that Circuit City shall be entitled to recover damages from Vendor in order to compensate Circuit City for deterioration of its brand in addition to any rights available to Circuit City under the Agreement and this Product Addendum, at law or in equity. Circuit City shall also have the option to purchase such returned Products from Vendor at a reasonable salvage value.

15. **RECORDKEEPING; AUDIT.**

15.1  Vendor agrees to keep accurate books and records relating to all transactions relevant to this Product Addendum. All such books of account, records and databases shall be kept available for at least two (2) years after any expiration or termination of this Agreement, howsoever occasioned.

15.2  During the term of this Product Addendum, Circuit City may cause an audit to be made of Vendor's books and records and an inspection to be made of Vendor's facilities and procedures for purposes of compliance with this Product Addendum. Circuit City shall be required to provide Vendor with prior notice of any audit and/or inspection, after which Circuit City shall have the right to conduct the audit and/or inspection at any time within thirty (30) business days thereafter, so long as the audit and/or inspection is conducted during regular business hours at Vendor's facilities. Vendor shall provide the auditing party's designated audit or inspection team with access to the relevant Vendor records and

facilities. Vendor will pay the reasonable and necessary cost of any such audit or inspection only once per year. Circuit City's designated auditors may be escorted by Vendor personnel when on Vendor premises, and shall not unreasonably interfere with Vendor's normal course of business.

16. **NOTICES**. Any notice required or permitted under this Product Addendum and not otherwise addressed pursuant to specific instructions provided herein shall be given pursuant to the instructions for giving notices set forth in the Agreement.

17. **MISCELLANEOUS**. This Product Addendum shall be governed by the terms and conditions of the Agreement, unless otherwise specifically provided herein. The laws of the Commonwealth of Virginia (other than its conflicts of laws provisions) shall govern this Product Addendum. Sections 1, 4 through 9 inclusive, 11, 12, 14, 15 and 17 shall survive the expiration or earlier termination of this Product Addendum. This Product Addendum may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together shall constitute one and the same instrument. For purposes of calculating the date on which any obligation is required or performance is due hereunder, in the event that a day expressed as a date certain, or the last day of any time period expressed as a certain number of days, would otherwise fall on a Saturday, a Sunday or any other day recognized as a public holiday by the Federal government of the United States (a "Non-Business Day"), such date of obligation or time period will be extended such that it will occur or end on the next occurring day that is not a Non-Business Day. Facsimile signatures shall be binding upon receipt, and the Parties agree to exchange original signature pages as soon as reasonably possible after facsimile transmission.

IN WITNESS WHEREOF, the Parties have caused this Product Addendum to be executed as of the date and year first above written.

| Circuit City: | Vendor: |
|---|---|
| **CIRCUIT CITY STORES, INC.** | **SLAM BRANDS, INC.** |
| By: _____ | By: _[signature]_ |
| Name: _____ | Name: Jerry Levelson |
| Title: _____ | Title: President |
| Date: _____ | Date: 10/28/08 |

## PRICING GRID

| CLASS | BRAND | MODEL | DESCRIPTION | INVOICE COST (US$) |
|---|---|---|---|---|
| 117 | Verge | VRNDFT40 | 40" wood and glass TV stand mount | $66.19 |
| 117 | Verge | VCURVE52 | 52" metal and glass TV stand | $101.12 |
| 117 | Verge | VTRACMT44 | 44" metal and glass TV stand with mount | $124.23 |
| 117 | Verge | VWCGR45 | 45" wood TV stand | $104.18 |
| 117 | Verge | VWHNY41 | 41" wood TV stand | $63.41 |