UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | | |
|---|---|---|
| **In re:** | * | |
| **CIRCUIT CITY STORES, INC., et al.,** | * | Case No: 08-35653-KRH |
| | | **Chapter 11** |
| Debtors, | * | (Jointly Administered) |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**RESPONSE OF (I) ALLIANCE ENTERTAINMENT LLC, NOW KNOWN AS SOURCE INTERLINK DISTRIBUTION, LLC; AND (II) SOURCE INTERLINK MEDIA, LLC TO DEBTOR'S TENTH OMNIBUS OBJECTION TO CERTAIN DUPLICATIVE CLAIMS**

Alliance Entertainment, LLC, now known as Source Interlink Distribution, LLC, ("Alliance") and Source Interlink Media, LLC ("SIM") (Alliance and SIM shall collectively be referred to as "Source"), hereby submit this Response to the Debtor's Tenth Omnibus Objection to Certain Duplicative Claims (the "Response"), and in support thereof, state:

**Background**

1. Alliance and Circuit City Stores, Inc. ("Circuit City") are parties to a Retail Product Services and Supply Agreement, dated June 15, 2007, as amended by Amendment No. 1, dated April 29, 2008, and Amendment No. 2, dated September 15, 2008 (collectively, with

---

Bradford F. Englander, VSB# 36221
Brian M. Nestor, VSB# 77133
Whiteford, Taylor & Preston LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9081 (tel)
(703) 280-3370 (fax)
benglander@wtplaw.com

*Counsel for Alliance Entertainment LLC,
now known as Source Interlink Distribution, LLC, and
Source Interlink Media, LLC*

exhibits and schedules, the "Alliance Agreement").[1] Under the Alliance Agreement, Alliance sells or provides supply chain services to Circuit City with respect to compact discs ("CDs"); digital video discs ("DVDs") and video games ("Gaming").

2.  SIM and Circuit City are parties to an agreement dated July, 2006 (the "SIM Agreement").  Under the SIM Agreement, SIM sells books and magazines (the "Books" and "Magazines" to Circuit City (collectively, the CDs, DVDs, and Gaming products and Books and Magazines are referred to herein as the "Goods").

3.  Prior to the Petition Date (defined below), Alliance and SIM delivered Goods and provided services to the Debtors for which no payment was made by the Debtors (the "Source Claims").  These Goods and services were provided with respect to the Debtors' nationwide fleet of stores, depending on inventory levels and demand at a particular location.

4.  Debtor Circuit City and its related entities (the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on November 10, 2009 ("Petition Date").

5.  On November 12, 2008, this Court entered its Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007 (Docket No. 107)(the "503(b)(9) Bar Date Order").

6.  Pursuant to the 503(b)(9) Bar Date Order, the Court approved the form and manner of the 503(b)(9) bar date notice, which was attached as Exhibit A to the 503(b)(9) Bar Date Order (the "503(b)(9) Bar Date Notice"). Pursuant to the 503(b)(9) Bar Date Order and the 503(b)(9) Bar Date Notice, the bar date for filing proofs of claim asserting administrative

---

[1] By Consent Order entered January 23, 2009, the Debtors and Source agreed, and the Court ordered, that the Alliance and SIM Agreements, exhibits and contents thereof would be held and maintained in confidence under seal. A copy of the agreements can be provided upon request, subject to the Consent Order referenced herein.

priority claims pursuant to section 503(b)(9) of the Bankruptcy Code was December 19, 2008 (the "503(b)(9) Bar Date").

7. On December 10, 2009, the Court entered its Order Pursuant to Bankruptcy Code Sections 105 and 502 and Bankruptcy Rules 2002, 3003(c)(3), and 9007 (I) Setting General Bar Date and Procedures for Filing Proofs of Claim; and (II) Approving Form and Manner of Notice Thereof (Docket No. 890) (the "Claims Bar Date Order").

8. Pursuant to the Claims Bar Date Order, the deadline for filing all "claims" (as defined in 11 U.S.C. §105(5)) arising before November 10, 2008 against the Debtors by any non-governmental entity was 5:00 p.m. (Pacific) on January 30, 2009 (the "General Bar Date"). This Court also approved the form and manner of the General Bar Date notice ("General Bar Date Notice"), which was attached to the Claims Bar Date Order.

9. On April 1, 2009, this Court entered an Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of Notice of Omnibus Objections (Docket No. 2881) (the "Omnibus Objection Procedures Order").

10. Prior to filings its claims against the various Debtor entities, counsel for Source informally requested information from counsel for the Debtors with respect to the various Debtors' stores and corresponding Debtors' bankruptcy cases. The basis for the requests was to ensure that claims were filed in the appropriate bankruptcy cases. Source has not yet received the requested information.

11. Source complied with the Court's 503(b)(9) Bar Date Order and Claims Bar Date Order with respect to timing and filing requirements for asserting its claims against the various Debtors entities. Source filed the following claims against the Debtors:[2]

---

[2] The General Bar Date Notice stated:

3

a. "Alliance 503(b)(9) Claim" filed on December 17, 2008 as follows: (i) $4,010,658.44 for the value of Goods delivered by Alliance during the 20-day period prior to the Petition Date against Circuit City PR, LLC; (ii) $4,010,658.44 for the value of Goods delivered by Alliance during the 20-day period prior to the Petition Date against Circuit City Stores West Coast, Inc.; and (iii) $4,010,658.44 for the value of Goods delivered by Alliance during the 20-day period prior to the Petition Date against Circuit City Stores, Inc.;

b. "SIM 503(b)(9) Claim" filed on December 17, 2008 as follows: (i) $360,345.31 for the value of Goods delivered by SIM during the 20-day period prior to the Petition Date against Circuit City Stores West Coast, Inc.; and (ii) $360,345.31 for the value of Goods delivered by SIM during the 20-day period prior to the Petition Date against Circuit City Stores, Inc.;

c. "Alliance Unsecured Claim" filed on January 30, 2009 as follows: (i) $10,996,107 for unpaid goods and services against Circuit City PR, LLC; (ii) $10,996,107 for unpaid goods and services against Circuit City

---

[a] creditor's proof of claim may be filed without the writings and/or documentation upon which the claim is based, as required by Bankruptcy Rule 3001(c) and (d); provided, however, that, upon the request of the Debtors or any other party in interest in these cases, any such creditor will be required to transmit promptly such writings and/or documentation to the Debtors or the other party in interest, but in no event later than ten (10) days from the date of such request.

Source filed the Alliance Unsecured Claim, Alliance Secured Claim and SIM Unsecured Claim without the voluminous spreadsheets and CD-ROM attachments. Upon the request of a representative of the Debtors, the support was delivered in June.

     Stores West Coast, Inc.; and (iii) $11,646,519.00 for goods, services and other contractual/indemnity claims against Circuit City Stores, Inc.;

  d. "Alliance Secured Claim" filed on January 30, 2009 as follows: (i)$1,028,153.34 secured claim for unpaid storage and carrier services against Circuit City Stores West Coast, Inc.; and (ii) $1,028,153.34 secured claim for unpaid storage and carrier services against Circuit City Stores, Inc.; and

  e. SIM Unsecured Claim filed on January 30, 2009 as follows: (i) $875,724.31 for unpaid goods and services provided against Circuit City Stores West Coast, Inc.; and (ii) $875,724.31 for unpaid goods and services provided against Circuit City Stores, Inc.

### The Objection: Duplicative Source Claims

12. On June 4, 2009, the Debtors filed their Tenth Omnibus Objection to Certain Duplicative Claims (the "Objection"). As set forth in the Objection, the Debtors seek the disallowance of certain duplicate claims, including alleged duplicative claims relating to the Alliance Unsecured Claim, the Alliance Secured Claim and the SIM Unsecured Claim (the "Duplicative Source Claims"), as more fully set forth in Exhibit A to this Response.[3] Moreover, the Debtors provide that the claims that are the subject of this Objection may be the subject to additional subsequently filed objections.

13. The Debtors objected to the Alliance Unsecured Claim and the Alliance Secured Claim on the grounds that the claims were filed in two (2) or more proofs of claim against the same Debtor, in the same amount, asserting the same liability, based upon the same underlying

---

[3] The Debtors have subsequently filed their 20th, 22nd and 23rd omnibus objections to claims that overlap with this Objection or relate to the remainder of the Source Claims.

5

basis and claim, and asserting the same classification (the "Same Debtor Duplicate Claims"). *See* Objection Exhibit C.

14. The Debtors objected to the SIM Unsecured Claim on the grounds that the claims were filed in two (2) or more proofs of claim against different Debtors, in essentially the same amount, asserting essentially the same liability, based upon the same underlying basis and claim, and asserting the same classification (the "Different Debtor Duplicate Claims")(the "Same Debtor Duplicate Claims and the Different Debtor Duplicate Claims are collectively, the "Duplicate Claims"). *See* Objection Exhibit D.[4]

15. The Debtors allege that they have reviewed the Different Debtor Duplicate Claims and reconciled the alleged debt obligations solely as to the proper Debtor entity. The alleged broad grounds for the Objection are that the amounts and basis of the Duplicate Claims also are set forth in another proof of claim filed by the same Claimant.

16. The Debtors provide that the Duplicate Claims listed on Exhibit C and Exhibit D listed under "Claim to Be Disallowed" should be disallowed for all purposes in these bankruptcy cases.

17. The claims listed under "Surviving Claim" on Exhibit C and Exhibit D (the "Surviving Claims") shall remain in effect and are not affected by the Objection; provided, however, that such Surviving Claim may be the subject of a separate objection.

## Argument

18. Source does not intend to have multiple recoveries for the same Goods. However, without more information with respect to the ownership and operation of each store

---

[4] Considering the character of the Alliance Unsecured Claim and the Alliance Secured Claim and the nature of the objection asserted, it is likely that these claims should have been scheduled on Exhibit D instead of Exhibit C.

6

and the corresponding dollar value of Goods and services provided by Source to each store, the Debtors' Objection is at best, premature.

19. While Source and the Debtors are parties to the Alliance and SIM Agreements, and certain contract damages claims exist, to the extent that Goods and services were provided to a store owned by a respective Debtor entity other than Circuit City (i.e., Circuit City Stores West Coast, Inc. ("Circuit City West"), damages under additional legal and equitable theories of reliance, unjust enrichment, quantum meruit and the like may exist against the owner of the stores who benefited from the delivery of the respective Goods and provision of services.

20. As set forth above, the Debtors intend on consolidating all of the Duplicative Source Claims against Circuit City. The Debtors do not offer any evidence to support their assertions that the Duplicative Source Claims alleged to be disallowed are in the amounts and basis as set forth in another proof of claim filed by the same claimant. The Debtors merely provide a table that incorporates claim numbers and amounts that appear to be similar. The Duplicative Source Claims should be allowed in each of the respective cases because Source believes that liability may be determined against each entity to the extent it received or benefited from the delivery of Goods or provision of services- a different basis for each Debtor entity.

21. To establish an objection to a claim, both liability and specific amount must be proven. The initial burden of proof relative to the Debtors' liability to Source and the specific amount due Source is naturally upon Source, the claimant.

22. Under 11 U.S.C. § 502(a)[5] and Bankr.R. 3001(f),[6] a properly executed and documented proof of claim filed by a creditor in a bankruptcy case constitutes prima facie

---

[5] Section 502(a) of the Bankruptcy Code provides the following: (a) A claim or interest, proof of which is

7

evidence of the correctness of that claim.  However, when an objecting party presents contradictory evidence at least equal to that contained in the proof of claim the burden shifts. Once an objector clears the initial hurdle, it is up to the creditor to prove first, that the debtor is in fact indebted to the claimant; and secondly, how much is owed.[7]

23. Bankruptcy Rule 3001(f) accords prima facie validity to a properly filed proof of claim, and this presumption is subject to the threshold requirement that the proof of claim satisfy Bankruptcy Rule 3001(a).  This subsection requires that a proof of claim conform substantially to Official Form No. 10, which, in turn, requires that a claimant provide information as to the amount of his claim, and its basis. *See Hutton v. Coffman*, 100 F.2d 640, 642 (9th Cir. 1938)("The proof of unsecured debt filed by the appellant was defective because it failed to itemize the consideration for the debt upon which the claim was filed, merely reciting 'services rendered.' No referee in bankruptcy would be justified in allowing such a claim without further particulars."); *Snakard v. Kennedy*, 164 F.2d 299, 302 (7th Cir. 1947) (Claim disallowed where claim merely stated debt owed but failed to provide accounting); *In re A.H. Robbins Company Inc.*, 862 F.2d 1092, 1095 (4th Cir. 1988), Cert. Denied, 110 S.Ct. 331 (1989) ("The form with which a claimant must comply in filing a 'proof of claim' is defined in Bankruptcy Rule 3001(a) as 'a written statement setting forth a creditor's claim.' In its Official Forms, the Bankruptcy Rules amplify on this requirement . . . . Simple notice of a claim accordingly will not satisfy this requirement").

24. Here, Source submitted such evidence to the Debtors.  The supporting documentation provided by Source provided evidence establishing how the amount of the

---

filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under Chapter 7 of this title, objects.   11 U.S.C. §502(a).
[6] Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.
[7] *See* Lawrence P. King, 3 COLLIER ON BANKRUPTCY, § 502.01(3) at 502-17 (15th Ed. 1991).

Duplicative Source Claims were computed, and attached sufficient declarations or other verifications in support of or authentication of the amounts claimed.  In contrast, the Objection contains no evidence or basis to substantiate the Objection, or refute the Duplicative Source Claims.  Thus, in the absence of further evidence establishing the amount and basis of the Objection, the Duplicative Source Claims should be allowed as they comply with Bankruptcy Rule 3001(a).

25. The filing of a proof of claim constitutes prima facie evidence of the validity of a claim and is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  To be deemed prima facie valid, the proof of claim must be legally sufficient which, under the Bankruptcy Rules, means that it must: (a) be in writing: (b) make a demand on the debtor's estate: (c) express the intent to hold the debtor liable for the debt; (d) be properly filed; and (e) be based upon facts which would allow, as a matter of equity, the document to be accepted as a proof of claim. *In re Scholz*, 57 B.R. 259, 261 (Bankr. N.D. Ohio 1986).

26. Under the fifth requirement discussed above, the allegations in the proof of claim must "set forth all necessary facts to establish a claim" and must not be self-contradictory. 3 Lawrence P. King, COLLIER ON BANKRUPTCY, n. 502.2, p. 502-22 (15th ed. 1991).  The prima facie validity of the claim does not attach unless the claim is in compliance with the Federal Rules of Bankruptcy Procedure, including Rule 3001, "and set[s] forth the facts necessary to support the claim." 8 COLLIER, par. 3001.05, p. 3001-22.  These requirements for legal sufficiency are consistent with the idea that "the proof of claim itself is to be scrutinized with an eye to credibility." *In re Summa T. Corp. Int.*'1, 73 B.R. 388, 394 (Bankr. E.D. Ark. 1987).

27. The legal sufficiency of a proof of claim must be determined judicially.  The role of the Bankruptcy Courts vis-a-vis disputed claims is well established.  The Bankruptcy Court has

9

"full power to inquire into any claim asserted against the estate and to disallow it if the claim is without lawful existence." *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281 (1939). When an objection is well founded is a judicial function to be exercised by the court. 3 COLLIER, n. 502.01, p. 502.9.

28. The party objecting to the claim bears the initial burden of producing evidence to place the claimant's entitlement in issue: e.g., establishing the existence of facts sufficient to show that an actual dispute exists regarding the validity of the claim. *In re Hydorn*, 94 B.R. 608 (Bankr. W.D. Mo. 1988).

29. The amount of proof necessary to rebut the prima facie showing of validity of a proof of claim is not difficult to meet, but must consist of more than a mere denial of the claim. *In re Allegheny International Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992); *In re Circle J. Dairy, Inc.*, 112 B.R. 297, 299 (Bankr. W.D. Ark. 1989); *In re Schaumberg Hotel Owner Ltd. Partnership*, 97 B.R. 943, 950 (Bankr. N.D. I11. 1989). Further, the objecting party is not required to disprove the claim. *In re Kahn*, 114 B.R. 40 (Bankr. S.D.N.Y. 1990). *See also In re Consolidated Pioneer Mortgage*, 178 B.R. 222 (9th Cir. BAP 1995).

30. To the extent that Source has contractual damage claims against Circuit City and an unjust enrichment claim against Circuit City West, completely different grounds exist for liability and completely different entities are liable to Source.

31. The proof of claims and supporting documentation provided with respect to the Duplicative Source Claims provided evidence authenticating and establishing how the amount of the Duplicative Source Claims were computed and the basis for the claims. In contrast the Objection contains no evidence or basis to substantiate the Objection, or refute the Duplicative

10

Source Claims. Thus, in the absence of further evidence establishing the amount and basis of the Objection, the Duplicative Source Claims should be allowed.

### Request for Hearing

32. Pursuant to Local Bankruptcy Rule 3007-1(B), Source requests that the Court grant it a hearing on its Response to the Debtor's Tenth Omnibus Objection to Certain Duplicative Claims on a date and time to be set by this Court consistent with the Court's Order Establishing Omnibus Objection Procedures and Approving the Form and Manner of the Notice of Omnibus Objections or as soon thereafter as it may be heard.

Wherefore, Source prays that this Court enter an order: (a) sustaining the Objection; (b) allowing the Duplicative Source Claims in amounts and against the Debtor entities as filed; and (c) for such other and further relief as the Court deems just and proper.

Dated:  June 29, 2009                               Respectfully submitted,


/s/ Bradford F. Englander
Bradford F. Englander
Virginia Bar No. 36221
Brian M. Nestor
Virginia Bar No. 77133
Whiteford, Taylor & Preston LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9081 (tel)
(703) 280-3370 (fax)
benglander@wtplaw.com


Counsel for Alliance Entertainment, LLC, now known as Source Interlink Distribution, LLC, and Source Interlink Media, LLC

**Exhibit A**
**Duplicative Source Claims**

| CLAIM TO BE DISALLOWED: | | SURVIVING CLAIM: | |
|---|---|---|---|
| Claim No: 8315 | Debtor: Circuit City Stores West Coast, Inc. (08-35654) | Claim No: 8315 | Debtor: Circuit City Stores, Inc. (08-35653) |
| Filed: 1/30/2009<br>Creditor: Alliance Entertainment, LLC | | Filed: 1/30/2009<br>Creditor: Alliance Entertainment, LLC | |
| Status: Secured<br>    Unsecured | Amount: $1,028,153.34<br>Amount: UNL | Status: Secured<br>    Unsecured | Amount: $1,028,153.34<br>Amount: UNL |
| Claim No: 8387 | Debtor: Circuit City Stores PR, LLC (08-35660) | Claim No: 9640 | Debtor: Circuit City Stores, Inc. (08-35653) |
| Filed: 1/30/2009<br>Creditor: Alliance Entertainment, LLC | | Filed: 1/30/2009<br>Creditor: Alliance Entertainment, LLC | |
| Status: Unsecured | Amount: $10,996,107.00 | Status: Unsecured | Amount: $11,646,519.00 |
| Claim No: 9033 | Debtor: Circuit City Stores West Coast, Inc. (08-35654) | Claim No: 9640 | Debtor: Circuit City Stores, Inc. (08-35653) |
| Filed: 1/30/2009<br>Creditor: Alliance Entertainment, LLC | | Filed: 1/30/2009<br>Creditor: Alliance Entertainment, LLC | |
| Status: Unsecured | Amount: $10,996,107.00 | Status: Unsecured | Amount: $11,646,519.00 |
| Claim No: 8308 | Debtor: Circuit City Stores West Coast, Inc. (08-35654) | Claim No: 9637 | Debtor: Circuit City Stores, Inc. (08-35653) |
| Filed: 1/30/2009<br>Creditor: Source Interlink Media, LLC | | Filed: 1/30/2009<br>Creditor: Source Interlink Media, LLC | |
| Status: Unsecured | Amount: $875,724.31 | Status: Unsecured | Amount: $875,724.31 |

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing Response was mailed by overnight delivery and electronic mail, this 29th day of June, 2009, to the following:

| | |
|---|---|
| Greg M. Galardi, Esq.<br>Ian S. Fredericks, Esq.<br>Skadden Arps, Slate, Meagher & Flom, LLP<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, DE 19899-0636<br>Counsel for the Debtors<br>gregg.galardi@skadden.com<br>ian.fredericks@skadden.com | Dion W. Hayes, Esq.<br>Douglas M. Foley, Esq.<br>McGuireWoods LLP<br>One James Center<br>901 East Cary Street<br>Richmond, VA 23219<br>Counsel for the Debtors<br>dfoley@mcguirewoods.com<br>dhayes@mcguirewoods.com |
| Robert J. Feinstein, Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>780 Third Avenue<br>36th Floor New York, NY 10017<br>Counsel for the Creditors' Committee Case<br>rfeinstein@pszjlaw.com | Chris L. Dickerson, Esq.<br>Skadden, Arps, Slate, Meagher & Flom, LLP<br>333 West Wacker Drive<br>Chicago, IL 60606<br>Counsel for the Debtors<br>chris.dickerson@skadden.com |
| Lynn L. Tavenner, Esq.<br>Tavenner & Beran, PLC<br>20 North Eighth Street Second Floor<br>Richmond, VA 23219<br>Counsel for the Creditors' Committee<br>ltavenner@tb-lawfirm.com | Robert B. Van Arsdale, Esq.<br>Office of the United States Trustee<br>701 East Broad Street, Suite 4304<br>Richmond, VA 23219<br>Robert.B.Van.Arsdale@usdoj.gov |

and that the foregoing Response was also filed electronically via the Court's CM/ECF system on this date such that it would be served electronically on those parties entitled to receive such notice in this case.

                                                                                       /s/Brian M. Nestor<br>
                                                                                       Brian M. Nestor