# GROUND LEASE

between

## CIRCUIT CITY STORES, INC.,

as Tenant

and

## THE WOODLANDS CORPORATION

as Landlord

dated April 24, 1997

THE WOODLANDS, TEXAS

**EXHIBIT A**

## TABLE OF CONTENTS

1. Leased Property .......................................................... 1
2. Construction of Building and Improvements .............................. 1
3. Lease Term .............................................................. 2
4. Tenant's Right to Terminate ............................................. 3
5. Landlord's Right to Terminate ........................................... 3
6. Base Rent ............................................................... 4
7. Development of Outparcels ............................................... 5
8. Construction of Improvements by Tenant .................................. 8
9. Signs and Communications Equipment ..................................... 10
10. Impositions ............................................................ 11
11. Net Lease .............................................................. 13
12. Maintenance and Repairs ................................................ 13
13. Payment of Utility Bills ............................................... 14
14. Compliance With Laws and Covenants ..................................... 14
15. Mechanics' Liens ....................................................... 14
16. Insurance .............................................................. 15
17. Indemnities ............................................................ 17
18. Casualty ............................................................... 17
19. Condemnation ........................................................... 18
20. Assignment and Subletting .............................................. 20
21. Use .................................................................... 21
22. Warranties, Representations, and Covenants ............................. 22
23. Estoppel Certificates .................................................. 28

24. Subordination, Non-Disturbance and Attornment . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
25. Change of Landlord . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
26. Tenant's Financing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
27. Tenant's Property and Waiver of Landlord's Lien . . . . . . . . . . . . . . . . . . . . . . . . . . 29
28. Memorandum of Lease; Commencement Date Agreement . . . . . . . . . . . . . . . . . . . 29
29. Expiration of Term and Holding Over . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
30. "For Rent" Signs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
31. Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
32. Events of Tenant's Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
33. Landlord's Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
34. Events of Landlord's Default; Tenant's Remedies . . . . . . . . . . . . . . . . . . . . . . . . . 34
35. Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
36. Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
37. Brokers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
38. Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
39. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
40. Art Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
41. Tenant's Financing of Improvements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
42. Right of Entry and Inspection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
43. Surrender. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
44. Parties Bound. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
45. Prior Leases Superseded. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
46. Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
47. Time is of the Essence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

48. <u>Exhibits</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

49. <u>Day</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

50. <u>Ownership of Title Company</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

<u>EXHIBITS</u>

| | |
|---|---|
| "A" | Site Plan |
| "A-1" | Legal Description of Land |
| "B" | Permitted Encumbrances |
| "C" | Development Criteria |
| "D" | Plans and Specifications/Sign Plans |
| "E" | Removable Trade Fixtures |
| "F" | Subordination, Nondisturbance and Attornment Agreement |
| "G" | Memorandum of Lease |
| "H" | Rent Commencement Date Agreement |
| "I" | Assignment of Rights, Benefits, Interests and Obligations |

H:\KOSTASP\LSE\43514_7 [54-77 (6083)]

# INDEX OF DEFINITIONS

| Term | Paragraph where defined |
|---|---|
| Access Roads | 7 |
| Alternate Accessway | 7 |
| Assessment(s) | Ex. "C", para. 1(a) |
| Base Rent | 6 |
| Building | 2 |
| Concept Plans | Ex. "C", para. 2(b) |
| Construction Term | 3 |
| Date of Taking | 16(a) |
| Default Rate | 32 |
| Event of Default (Landlord) | 32 |
| Event of Default (Tenant) | 32 |
| Final Plans | Ex. "C", para. 1(d) |
| Hazardous Substances | Ex. "C", para. 1(a) |
| Improvements | 2 |
| Land | 1 |
| Landlord | Introduction |
| Landlord Work | Ex. "C", para. 1(a)(b)(c) |
| Lease Year | 3 |
| Main Term | 3 |
| Mortgage | 24 |
| Mortgagee | 24 |
| Option Periods | 3 |
| Outparcels | 7 |
| Permitted Encumbrances | Ex. "B" |
| Person | 23 |
| Personalty | 26 |

| | |
|---|---|
| Plans and Specifications | 9(c) |
| Premises | 1 |
| Renewal Option | 3 |
| Rent Commencement Date | 4 |
| Ring Road | 7 |
| Shopping Center | 1 |
| Site Work | Ex. "C", para. 1(b) |
| Site Plan | 1 |
| Substantial Completion | Ex. "C", para. 2(e) |
| Substantially All of the Premises | 19(a) |
| Successor | 25 |
| Taking | 19(a) |
| Tenant | Introduction |
| Tenant's Preferred Area | Ex. "A" |
| Term | 3 |
| Worth at the time of the award | 30(b) |

## GROUND LEASE

This GROUND LEASE (this "Lease") is made as of the 24th day of April, 1997 (the "Effective Date") by and between THE WOODLANDS CORPORATION, a Delaware corporation ("Landlord"), having an address at 2201 Timberloch Place, The Woodlands, Texas 77380, and CIRCUIT CITY STORES, INC., a Virginia corporation having an address at Deep Run I, 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant").

### WITNESSETH:

That for and in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Leased Property**. Landlord demises and leases to Tenant and Tenant leases and takes from Landlord, commencing on the Effective Date, all that certain real property consisting of that approximately 173,804 square foot (3.99 acres) parcel (the "Land") shown (approximately) as outlined on the Site Plan attached hereto as Exhibit "A" (the "Site Plan") and described on Exhibit "A-1" attached hereto, together with buildings and improvements to be constructed thereon in accordance with the provisions of this Lease (collectively, the "Premises"), together with all rights, privileges, easements and appurtenances thereto belonging to Landlord and pertaining to the Land. The Land is located near the intersection of Pinecroft Drive and Lake Woodlands Drive, lying and being in The Woodlands, Montgomery County, Texas and is situated as an outparcel on the north side of The Woodlands Mall (the "Mall"). This Lease is subject to the exceptions, reservations and restrictions set out in Exhibit "B" and Exhibit "C" attached hereto ("Permitted Encumbrances").

2. **Construction of Building and Improvements**. Commencing on the Effective Date and subject to the terms hereof, Tenant shall have the right to construct on the Land a one-story retail building containing approximately 33,862 square feet of gross leasable area but no more than 36,500 square feet of gross leasable area, with provisions for customer pickup, delivery and car stereo installation facilities, initially for use as a Circuit City Superstore (the "Building"), together with loading ramps, sidewalks, trash compactor, transformer pad, parking area (with the parking ratio for the Land being no less than five (5) spaces per 1,000 square feet of gross

leasable area of the Building) and other such appurtenances and improvements, constructed in accordance with the terms of this Lease (collectively, the Building and other improvements constructed by Tenant are referred to herein as the "Improvements"). During the Term of this Lease, or until this Lease is earlier terminated in accordance with the terms hereof, the Improvements shall belong to Tenant. Tenant shall not construct a building taller than one (1) story without Landlord's prior written consent.

    3. <u>Lease Term</u>. The construction term (the "Construction Term") of this Lease shall commence on the Effective Date and shall end on the "Rent Commencement Date" (as defined in paragraph 6 below). The main term (the "Main Term") of the Lease shall commence on the Rent Commencement Date and shall end on the last day of January following the twentieth (20th) anniversary of the Rent Commencement Date.

    In addition to the Main Term, and subject to the provisions hereof, Tenant shall have the option (a "Renewal Option") to renew and extend the Lease for four (4) consecutive five (5) year periods (the "Option Periods") immediately following the Main Term, at the rent specified below. Tenant shall give Landlord written notice of its election to exercise any Renewal Option at least two hundred ten (210) days prior to the expiration of the Main Term or any then-current Option Period, as applicable; provided, however, that in order to avoid any forfeiture or inadvertent lapse of any right to renew or extend as aforesaid, if Tenant shall fail to give any such notice within the aforesaid time limit and shall not have given Landlord prior written notice of its intention not to renew or extend as aforesaid, then and as often as the same shall occur, Tenant's right to exercise such Renewal Option shall nevertheless continue, as shall its tenancy hereunder (under the same terms and conditions (with the applicable increase in Base Rent) as theretofore in effect and notwithstanding that the Main Term or then-current Option Period shall have expired) until ten (10) business days after Landlord shall have given Tenant written notice of Landlord's election to terminate the Renewal Option, and Tenant may exercise its Renewal Option at any time prior to expiration of said ten (10) business day period. Upon the giving of notice of renewal and extension in accordance with the foregoing provisions, the term of this Lease shall thereupon be renewed and extended on the terms and conditions set forth herein (including the adjustment in Base Rent herein provided) without further act by Landlord or Tenant, the same as if such notice had been timely given hereunder. Tenant's option to renew and extend this Lease is expressly conditioned upon this Lease not having expired or having been

terminated pursuant to any provision hereof. Notwithstanding anything contained hereinabove to the contrary, in the event Landlord delivers to Tenant the aforementioned notice of election prior to expiration of the Main Term or the then-current Option Period and Tenant does not elect to renew the Lease within ten (10) business days following delivery of said notice, the Lease Term shall nonetheless be extended the number of days necessary to prevent the Lease Term from expiring less than one hundred eighty (180) days from the date of Landlord's notice, and Base Rent will increase to the amount due during said one hundred eighty (180) day period on the date which it otherwise would have increased had a Renewal Option been exercised by Tenant.

The Construction Term, Main Term and Option Periods are, collectively, the "Term". The term "Lease Year" shall mean each successive period of twelve (12) consecutive calendar months, commencing on the first day of each February during the Term, except that the first Lease Year shall commence on the Rent Commencement Date and shall end on the last day of January following the first anniversary of the Rent Commencement Date.

On the expiration, or sooner termination, of the Term, Tenant shall quit and surrender the Premises in accordance with the terms of this Lease and in good order, condition and repair, ordinary wear and tear excepted. Tenant shall leave the Premises in broom clean condition and shall deliver all keys for the Premises to the person and at the place specified by Landlord, and inform Landlord of all combinations on locks, safes and any vaults in the Premises.

4. <u>Tenant's Right to Terminate</u>. Anything herein to the contrary notwithstanding, it is expressly understood and agreed that Tenant shall be entitled to terminate this Lease by written notice delivered to Landlord prior to the expiration of sixty (60) days from the Effective Date hereof, in the event Landlord does not deliver the Land to Tenant upon execution of this Lease free of tenancies, obstructions, footings, foundations, improvements and Hazardous Substances and such defective condition or conditions cannot be reasonably cured within seventy-five (75) days of their discovery.

5. <u>Landlord's Right to Terminate</u>. In the event Tenant ceases to operate its store located on the Premises at any time after the Rent Commencement Date during the Main Term or any

Option Period for a period greater than one hundred fifty (150) days for any reason other than casualty, condemnation, or remodeling of the Improvements, or events of force majeure, Landlord shall have the right, in its sole discretion, to recapture the Premises and terminate this Lease (subject to the extension granted below) by giving Tenant thirty (30) days prior written notice and making the payment to Tenant required below; provided however, if, within said thirty (30) day period, Tenant gives Landlord written notice and evidence satisfactory to Landlord that Tenant is in good faith actively negotiating a sublease or assignment with a third party, the aforementioned termination date shall be extended sixty (60) days, and if within said sixty (60) days Tenant enters into a sublease or assignment, the termination notice theretofore delivered by Landlord shall be null and void and of no further effect. In the event Landlord recaptures the Premises pursuant to this paragraph during the Main Term or the first Option Period, such recapture and the events giving rise to Landlord's right to recapture shall not constitute a default by Tenant hereunder, but shall be deemed a termination of this Lease effective thirty (30) days after delivery of the aforementioned notice (subject to the 60-day extension permitted as set forth above) and Landlord's payment to Tenant of the then unamortized costs of the Improvements at the time of termination, based on a Two Million Four Hundred Thousand and No/100 Dollars ($2,400,000.00) initial cost of the Improvements, plus additional substantiated hard costs related to improvements, replacements and modifications, amortized over a twenty (20) year period using a declining straight line amortization method and generally accepted accounting procedures (the "Unamortized Costs"), whereupon the parties hereto shall have no further obligation one to the other hereunder except as specifically set forth in this Lease as surviving termination and except with respect to any sums accrued and owing one to the other prior to the date of termination. Upon termination of this Lease, all Improvements except for Removable Trade Fixtures (herein so called) described in Exhibit "E" attached hereto shall become the property of Landlord.

6. <u>Base Rent</u>. Tenant agrees to pay annual base rent ("Base Rent") for the Premises in the amounts and in the manner specified hereunder, commencing (subject to events of force majeure and Landlord failing to deliver the Premises to Tenant in the condition or in the manner required by this Lease, and other delays caused by Landlord, all of which events shall cause a day-for-day delay in Tenant's obligation to commence payment of Base Rent) on the earlier to occur of the following: (i) March 1, 1998, or (ii) the date Tenant opens for business to the

public at the Premises (the "Rent Commencement Date"). If the Rent Commencement Date occurs later than March 1, 1998 due to any of the aforementioned delays, Tenant shall, prior to March 1, 1998, notify Landlord in writing of the nature of the delays and number of days thereof which Tenant believes to be applicable. Once Tenant opens for business at the Premises, the condition in which the Land was delivered to Tenant by Landlord shall no longer be a basis for delay in payment of rent, but Tenant shall nonetheless be entitled to all remedies otherwise available to Tenant under this Lease as a result of Landlord's failure.

Tenant shall pay Base Rent in equal monthly installments, in advance on the first day of each succeeding calendar month throughout the Term, with appropriate proration for any partial month or Lease Year, to the address given for Landlord in paragraph 36 hereof, unless Landlord shall give Tenant written notice of a change of address or of the party to whom such rents shall be payable along with written documentation reasonably satisfactory to Tenant of such party's right to receive payment hereunder. Base Rent shall be paid pursuant to the following schedule:

(i) <u>First Eight Years</u>. During the first eight (8) Lease Years, Tenant shall pay annual Base Rent in the amount of One Hundred Seventy Six Thousand Sixty Three and No/100 Dollars ($176,063.00), payable in equal monthly installments of Fourteen Thousand Six Hundred Seventy-One and 92/100 Dollars ($14,671.92).

(ii) <u>Increases in Base Rent</u>. Annual Base Rent shall increase on the first day of the ninth, eleventh and every succeeding fifth Lease Year, over the initial Base Rent charged hereunder by the lesser of ten percent (10%) or two (2) times the percentage increase in the "CPI-U" (as defined below) during the five (5) year period ending on October 31 of the eighth, tenth or any succeeding fifth Lease Year, as applicable. As used herein, the CPI-U shall be the United States Department of Labor, Bureau of Labor Statistics Consumer Price Index for All Urban Consumers, U.S. City Average. If at any time during the Term the CPI-U shall be discontinued, Landlord and Tenant shall mutually and reasonably agree to substitute an existing official index published by the Bureau of Labor Statistics or its successor or another similar index most nearly equivalent to the CPI-U.

7. <u>Development of Outparcels</u>. Landlord and Tenant hereby acknowledge that development and maintenance of, and activities conducted within, the outparcel lots adjacent to the Mall (the "Outparcels") are governed in part by restrictive covenants set forth in that certain

Declaration of Restrictions and Agreement dated January 24, 1994 between Landlord and The Woodlands Mall Associates recorded under Clerk's File No. 9404800 of the Real Property Records of Montgomery County, Texas (the "Declaration"). Upon execution of this Lease, Landlord agrees to execute the Assignment of Rights, Benefits, Interests and Obligations attached hereto as Exhibit "I" (the "Assignment"), which shall be executed and recorded by Tenant, conferring certain benefits and obligations upon Tenant as described therein. If the Declaration is modified without Tenant's prior written consent (which consent is not required by the terms hereof), Landlord and The Woodlands Corporation shall not seek to enforce any such modification against Tenant unless a third party obtains a final non-appealable judicial determination that Tenant is bound thereby and seeks to enforce such modification against Tenant and/or Landlord, whereupon Tenant's failure to abide thereby following notice from Landlord to Tenant and an opportunity to cure as provided in this Lease shall constitute a default hereunder, and Tenant shall pay Landlord's and The Woodlands Corporation's actual damages resulting from such non-compliance.

(a) <u>Ring Road and Access Roads Easement</u>. Landlord hereby grants to Tenant during the Term, for the benefit of the Premises, the non-exclusive right, privilege and easement to use the ring road and accessways shown in part on the Site Plan and described in the Declaration (hereinafter referred to respectively as the "Ring Road" and "Access Roads") to permit Tenant and its employees, agents, assignees, subtenants, licensees, suppliers, customers and invitees to use same without payment of any fee or other charge therefor (except payment of the maintenance fee payable under the Declaration) for purposes of vehicular, pedestrian, service and construction access, ingress and egress to, from and between the Premises, the Mall, the Outparcels, and the streets and highways abutting and adjacent to the Outparcels. Upon execution of this Lease, Landlord hereby agrees to execute the Assignment to confer to Tenant certain non-exclusive rights and benefits with respect to the Access and Utility Easement attached as Exhibit "B" to that Special Warranty Deed dated December 30, 1993 from Landlord to The Woodlands Mall Associates recorded under Clerk's File No. 9401007 of the Real Property Records of Montgomery County, Texas (the "Access Easement") and certain rights and benefits and obligations relating to the Ring Road and Access Roads set forth in the Declaration, all as described and set forth in the Assignment. In the event the "Alternate Accessway" provided for in subparagraph (b) below is constructed, the term "Access Roads" shall mean and include the Alternate Accessway.

(b) <u>Alternate Accessway</u>. In the event Tenant's access to the Premises through means of the Ring Road or the Access Roads immediately adjacent to the Land is ever adversely impaired for any reason other than temporary partial impairment for repair purposes, Landlord hereby agrees to construct, at Landlord's sole expense and in accordance with plans and specifications delivered to Landlord by Tenant (the cost of which shall be reimbursed by Landlord to Tenant within fifteen (15) days of delivery to Landlord of an invoice therefor), two (2) accessways into the Premises from Lake Woodlands Drive as shown on the Site Plan (together the "Alternate Accessway"). Landlord agrees to commence construction of the Alternate Accessway within thirty (30) days of receipt of Tenant's notification that such accessway has become necessary in accordance with the terms set forth above, and to diligently pursue completion of the construction thereof. In no event shall completion of the Alternate Accessway occur more than forty-five (45) days following the aforementioned commencement of construction, subject to events of force majeure. Landlord hereby represents and warrants that, as of the date hereof, construction of the Alternate Accessway is permitted under the governing rules, regulations, restrictions, declarations and codes pertinent to the Outparcels and the Mall. In the event the Alternate Accessway cannot be constructed due to a change in applicable governmental regulations or laws, Tenant may, upon thirty (30) days' notice to Landlord, terminate this Lease. If Landlord fails to commence or complete construction within the time frames, or in accordance with the terms, set forth above, or if such access is in fact adversely impaired as set forth above, at Tenant's election (of which Tenant shall give Landlord notice in writing prior to commencement of Tenant's construction), Tenant may construct the Alternate Accessway and Landlord shall reimburse to Tenant all of Tenant's reasonable and actual costs incurred in connection therewith. Landlord hereby agrees to cooperate fully in Tenant's obtaining all necessary permits and governmental approvals for construction of the Alternate Accessway and to construct the same in a good and workmanlike manner, lien-free, and with as little disturbance to Tenant's operation and use of the Premises as possible. Landlord additionally agrees to notify Tenant in writing promptly upon Landlord becoming aware that the Ring Road or Access Roads adjacent to the Land is intended to be closed other than temporarily or partially for repair purposes.

(c) <u>Utility Easement</u>. Landlord hereby agrees to grant to utility providers easements necessary or desirable, in Tenant's reasonable discretion, to provide present and future utility service to the Premises.

(d) <u>Blockbuster Agreement</u>. Landlord has entered into a Declaration of Easements dated October 31, 1996 recorded under County Clerk's File No. 9668564 in the Real Property Records of Montgomery County, Texas (the "Blockbuster Agreement") providing for

respect to the access drive off the Ring Road shown on the Site Plan abutting the easternmost boundary of the Premises. Landlord agrees to execute the Assignment upon execution of this Lease to confer upon Tenant certain non-exclusive benefits and rights, and certain obligations under the Blockbuster Agreement as they pertain to the Land, as described in the Assignment, and Tenant hereby agrees to execute the Assignment to evidence its acceptance of such benefits and obligations.

(e) Separate Instrument of Assignment. Landlord and Tenant hereby agree to execute the Assignment as a separate instrument, in recordable form. Said instrument shall be in form and substance identical to that attached hereto as Exhibit "I" and shall be executed simultaneously with execution of the Lease and delivered to Tenant for recordation. Landlord agrees to cooperate fully with Tenant in Tenant enforcing the rights and benefits conferred and assigned.

8. Construction of Improvements by Tenant.

(a) Conditions. Tenant shall have the right to construct the Improvements on the Premises, subject to the following conditions:

(i) The cost of construction of the Improvements (or of any change, remodeling, addition or alteration to the Improvements) shall be borne and paid for by Tenant;

(ii) The Improvements shall comply with all the terms and conditions of the development criteria attached hereto as Exhibit "C" (the "Development Criteria");

(iii) Tenant shall obtain all permits, licenses, and approvals necessary for the construction of the Improvements;

(iv) Landlord's prior written approval, if required by subparagraph (d) below, shall be obtained; and

(v) Tenant shall comply with the provisions of paragraphs 14 and 15 below.

(b) Commencement of Construction. Tenant shall commence construction of the Improvements on the Premises within ninety (90) days following the Effective Date, so long as the Premises are delivered in the condition required by this Lease, and shall thereafter proceed with diligence and continuity to complete construction of the Improvements in accordance with the plans and specifications approved by Landlord; provided, however, said ninety (90) day

8    H:\KOSTASP\LSE\43514_7 [54-77 (6083)]

period shall be extended by the number of days equal to the number of days Tenant is delayed due to acts or omissions of Landlord, including, without limitation, failure to deliver the Premises in the condition required hereunder.

(c) <u>Plans and Specifications</u>. Landlord hereby acknowledges that it has approved complete architectural drawings and specifications and building elevations (the "Plans and Specifications") for the Premises prepared by a licensed architect, including, without limitation, Tenant's architectural drawings, specifications and building elevations for construction of the Improvements and Tenant's building signage and monument signs for the Premises. The Plans and Specifications are more particularly described on the title page (abstract) thereof attached hereto as Exhibit "D." Any Improvement not in compliance with such approved Plans and Specifications shall promptly be brought into compliance by Tenant upon written notification thereof by Landlord. The Plans and Specifications shall not be changed without the prior written consent of Landlord if affecting any of the items set forth in subparagraphs (i), (ii) and (iii) of paragraph 8(d) below, in which case Landlord's consent shall be subject to Landlord's sole reasonable good faith discretion.

(d) <u>Changes, Remodeling, Addition or Alteration</u>. No material change, remodeling, addition or alteration of any of the Improvements shall be commenced unless and until plans and specifications covering the proposed change, remodeling, addition or alteration prepared by a licensed architect shall have been first submitted to and approved in writing by Landlord as provided herein. If the plans and specifications are not disapproved by Landlord within thirteen (13) business days of delivery thereof to Landlord, they will be deemed approved. For purposes of this paragraph, "material change, remodeling, addition or alteration of any of the Improvements" shall mean any change, remodeling, addition or alteration affecting (i) the structural integrity of the Improvements, <u>or</u> (ii) adversely the value of the Improvements and/or the Premises or (iii) the exterior appearance of the Improvements (it being intended that the exterior of the Building maintain architectural harmony with the Mall and the Outparcels adjacent to the northern half of the Ring Road), except for alterations or modifications necessary to bring the signage thereon into conformity with Tenant's then-prototypical signage, so long as such then-current prototype signs are not larger than the existing signs. All changes, remodeling, additions and/or alterations shall comply with the conditions set forth in subparagraph (a) above, and any noncompliance with the approved plans and specifications for