be in the condition warranted by Landlord herein, or should it contain Hazardous Substances at the time of execution of this Lease, Landlord hereby agrees to pay Tenant's costs incurred during the Construction Term by Tenant in the exercise of all reasonable efforts to open for business despite the delay caused by Landlord not delivering the Land in the condition required. Such delay costs shall be limited to costs of performing Landlord's obligations and Tenant's out-of-pocket expenses incurred in connection with construction overtime, acceleration charges and bonuses paid to Tenant's contractors or subcontractors, charges for the scheduling of construction crews on days on which work cannot be performed due to the delays by Landlord and construction period interest charges actually incurred to the extent that such charges exceed those which would have accrued without such delay; however, Tenant's reimbursable costs resulting from the delay (but not costs of performing Landlord's obligations) shall not exceed the aggregate amount of $50,000.00, and additionally, Tenant shall be entitled to a day-for-day delay in the Rent Commencement Date as set forth in paragraph 6 above, and shall additionally be reimbursed its actual costs of bringing the Land into conformity with the required conditions if Tenant elects its remedy of self-help.

(vi) Exclusive Uses. Landlord hereby agrees not to grant any other party operating in the outparcels of The Woodlands Mall, Pinecroft I Shopping Center or Pinecroft II Shopping Center (which shopping centers are across from The Woodlands Mall) the exclusive right to sell consumer electronics and appliances so long as the Lease is in effect and Circuit City Stores, Inc. or a similar successor retailer is operating in the Property.

(vii) Subdivision. The Land is presently properly subdivided, in conformity with all applicable laws. The Land is currently not subject to any zoning laws.

(viii) Notices Affecting the Premises. Landlord shall promptly forward to Tenant any notice or other communication affecting the Premises received by Landlord from any owner of property adjoining, adjacent or nearby to the Premises or from any municipal or governmental authority, in connection with any hearing or other administrative procedure relating to the use or occupancy of the Premises, the Ring Road or the Access Roads.

(ix) CONDITION OF PREMISES. EXCEPT AS PROVIDED IN THIS LEASE, AND SPECIFICALLY IN PARAGRAPH (v) OF THIS PARAGRAPH 22(a), WITH RESPECT TO THE PHYSICAL CONDITION OF THE PREMISES, THE PREMISES IS BEING LEASED HEREUNDER "AS IS" AND "WITH ALL FAULTS", WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER BY LANDLORD EXCEPT AS EXPRESSLY SET FORTH HEREIN. EXCEPT AS EXPRESSLY STATED IN THIS LEASE, LANDLORD HAS NOT MADE AND DOES NOT HEREBY MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION ANY REPRESENTATION OR WARRANTY REGARDING MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, AND TENANT ACKNOWLEDGES THAT TENANT IS ENTERING INTO THIS LEASE WITHOUT RELYING UPON ANY SUCH REPRESENTATION OR WARRANTY MADE BY LANDLORD, ITS EMPLOYEES, AGENTS OR CONTRACTORS, OR BY ANY OTHER PERSON(S).

(b) Tenant represents, warrants and covenants to Landlord that:

(i) Tenant's Authority. Tenant covenants that it is a duly constituted corporation under the laws of the Commonwealth of Virginia, and that its Vice President who is acting as its signatory in this Lease is duly authorized and empowered to act for and on behalf of the corporation.

(ii) No Litigation. There are no judicial, quasi-judicial, administrative, or other orders, injunctions, moratoria or pending proceedings against Tenant which would preclude or interfere with Tenant's ability to perform its obligations as set forth herein.

(iii) Tenant's Warranty as to Hazardous or Toxic Materials. Tenant and Tenant's employees, agents, contractors concessionaires and licensees shall not introduce, discharge, dump, spill or store within the Premises any Hazardous Substances; and

Tenant indemnifies and agrees to defend and hold Landlord harmless from and against all costs, liability and damages as a result thereof, Tenant hereby agreeing to clean-up or cause to be cleaned-up any such contamination. The warranty and indemnity of Tenant described in this paragraph 22(b)(iii) shall survive the termination of this Lease. Tenant additionally agrees that it will clean-up Hazardous Substances introduced directly onto the Premises by third parties other than Landlord, and Landlord's employees, contractors, and agents to a Standard One level, but Landlord shall bear the cost of same in excess of Fifty Thousand and No/Dollars ($50,000.00) and (other than with respect to said $50,000.00) shall be responsible for clean-up following expiration of the term of this Lease. Landlord shall execute any contract executed by Tenant to clean-up the aforementioned third-party contamination to evidence Landlord's obligation to pay any clean-up costs exceeding $50,000.00 and to release Tenant from any obligation to pay such costs exceeding $50,000.00 and from any obligations under said contacts occurring after expiration of the term of this Lease other than with respect to any portion of the first $50,000.00 of costs incurred in connection with such contract which may become payable following expiration of the term. Additionally, no such cleanup shall be subject to a risk reduction standard and no deed recordation notice shall be recorded by Tenant against the Premises.

(c) In the event there is a condition at variance with the foregoing representations and warranties of Landlord and Tenant which prevents or in any material way inhibits the use of the Premises or such party's performance under this Lease or if Landlord or Tenant shall default in the observance or performance of any of the foregoing representations and warranties, then, in addition to such other remedies as may be accorded such party at law, in equity or under the terms of this Lease, such party may, in addition to its other remedies under this Lease, after thirty (30) days' notice to the other party, obtain an injunction or writ of specific performance to enforce such term or covenant, the parties hereby acknowledging the inadequacy of such party's legal remedy and the irreparable harm which would be caused to such party by any such variance or default. In addition, in the event that any of the representations, warranties and covenants set forth in this paragraph 22 are untrue or incorrect, or in the event that Tenant or Landlord suffers any loss, cost, liability or damage as a result of the breach of any of such covenants, representations and warranties, the party so harmed shall defend, indemnify and hold

the other party harmless from any of such loss, costs, liability or damage incurred as a result of such breach hereunder.

23. <u>Estoppel Certificates</u>. Without charge, at any time and from time to time hereafter, within thirty (30) days after receipt of written request by either party, the other party shall certify, by written and duly executed instrument, to any other entity ("Person") specified in such request: (a) as to whether this Lease has been supplemented or amended, and, if so, the substance and manner of such supplement or amendment; (b) as to the validity, force and effect of this Lease, to the certifying party's actual knowledge; (c) as to the existence of any default hereunder, to the certifying party's actual knowledge; (d) as to the existence of any offsets, counterclaims, or defenses hereto on the part of such other party, to the certifying party's actual knowledge; (e) as to the commencement and expiration dates of the Term; and (f) as to any other matters which may reasonably be so requested. In addition, without charge, at any time and from time to time hereafter, within thirty (30) days after receipt of written request of Tenant, Landlord shall deliver an estoppel certificate to Tenant's assignee or subtenant permitted pursuant to paragraph 20 above that states in the event Tenant defaults under any of its obligations under this Lease following the date of any assignment or subletting hereunder, the Landlord will permit such assignee or subtenant to satisfy the obligations of Tenant hereunder, including but not limited to the direct payment of rentals to the Landlord. Any such certificate may be relied upon by the party requesting it and any Person to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same.

24. <u>Subordination, Non-Disturbance and Attornment</u>. Landlord shall cause any future holder of a Mortgage against the Land ("Mortgagee") to deliver a non-disturbance and attornment agreement in substantially the form attached hereto as Exhibit "F" at or prior to the time which the lien of the Mortgage is filed against record title to the Premises. As used in this paragraph, the term "Mortgage" shall mean any mortgage, deed to secure debt, deed of trust, trust deed or other collateral conveyance of, or lien or encumbrance against, the Premises.

25. <u>Change of Landlord</u>. Subject to paragraph 24 above, in the event Landlord's interest in the Premises passes to a successor (the "Successor") by sale, lease, foreclosure or in any other manner, Tenant shall be bound to the Successor under all of the terms of this Lease for the balance of the Term with the same force and effect as if the Successor were the landlord

under the Lease, and Tenant hereby agrees to attorn to the Successor as its Landlord, such attornment to be effective upon written notice thereof given by Landlord to Tenant. In the event that Landlord's interest in the Premises passes to a Successor and such Successor is bound unto Tenant as set forth above, Landlord shall be released from all obligations to Tenant hereunder arising after the date Landlord's interest so passes, except (i) those contained in the Assignment, and (ii) that Landlord agrees to indemnify, defend and hold Tenant harmless from and against all costs, claims, loss, liability or damage suffered by Tenant as a result of Landlord's failure to provide Tenant with notice of such Successor.

26. <u>Tenant's Financing</u>. Notwithstanding any other provisions of this Lease, Tenant may, without Landlord's consent, from time to time, secure financing or general credit lines and grant the lenders thereof, as security therefor, (i) a security interest in Tenant's trade fixtures, personalty, inventory and equipment (collectively, "Personalty"), (ii) the right to enter the Premises to realize upon any Personalty so pledged, and/or (iii) a collateral assignment of Tenant's leasehold interest in the Premises, with rights of reassignment; provided, however, such collateral assignment may be made solely for the purpose of securing Tenant's indebtedness. Upon Tenant providing notice of such financing to Landlord, Landlord agrees to evidence its consent in writing to such security interest and agreement and to give such lenders the same notice and opportunity to cure any default of Tenant as is provided Tenant hereunder (including time to foreclose or otherwise take possession of the Premises, if necessary to effect such cure).

In addition, Landlord agrees to cause any Mortgagee specifically to acknowledge the rights of Tenant's lenders described herein and in paragraph 41 below.

27. <u>Tenant's Property and Waiver of Landlord's Lien</u>. All of the Personalty shall be and remain the personal property of Tenant. Landlord expressly waives its statutory or common law landlord's-liens (as same may be enacted or may exist from time to time) and any and all rights granted under any present or future laws to levy or distrain for rent (whether in arrears or in advance) against the aforesaid property of Tenant on the Premises and further agrees to execute any reasonable instruments evidencing such waiver, at any time or times hereafter upon Tenant's request.

28. <u>Memorandum of Lease; Commencement Date Agreement</u>. Landlord and Tenant agree to execute a Memorandum of Lease in recordable form, substantially similar to that attached hereto as <u>Exhibit "G"</u>. In addition, Landlord and Tenant shall execute a Rent

Commencement Date Agreement in the form attached hereto as Exhibit "H", once the Rent Commencement Date has been established. Recording costs for both documents shall be shared equally. The provisions of this Lease shall control, however, with regard to any omissions from, or provisions hereof which may be in conflict with, the Memorandum of Lease or Commencement Date Agreement.

It is further agreed and understood that Tenant and Landlord shall execute, upon termination of this Lease, an affidavit evidencing such termination and such affidavit shall promptly be recorded in the Real Property Records of Montgomery County, Texas.

29. Expiration of Term and Holding Over. All of the Personalty other than Building mechanical systems shall be removable by Tenant any time prior to, or within thirty (30) days after, the expiration or earlier termination of this Lease and shall be so removed by Tenant at the request of Landlord within thirty (30) days after the expiration or termination of this Lease other than Building mechanical systems. In the event Tenant fails to remove any or all of its Personalty other than Building mechanical systems within the said thirty (30) day period (during which period Tenant shall comply with all obligations under this Lease including, but not limited to, the payment of Base Rent and additional rent). Landlord may remove such Personalty, or the balance thereof, cause such Personalty to be placed into storage and thereafter charge Tenant the cost of such removal and storage, together with interest thereon at the Default Rate, or may treat the Personalty as abandoned. Those improvements that are integrated into the physical structure of the Building, except any of Tenant's trade fixtures, shall not be removed and shall become the property of Landlord. (A nonexclusive list of Tenant's removable trade fixtures is attached hereto as Exhibit "E".) Tenant agrees promptly to repair any damage to the Premises occasioned by the removal of Tenant's trade fixtures, furnishings and equipment (except for small holes caused by nails, fasteners and the like) and to surrender the Premises broom clean, in as good condition as on the date of Tenant's opening for business therein, ordinary wear and tear, casualty and condemnation excepted. Tenant agrees that at the expiration of this Lease, it will deliver to Landlord peaceable possession of the Premises. No holding over by Tenant nor acceptance of Base Rent or other charges by Landlord shall operate as a renewal or extension of the Lease. If Tenant shall hold over in possession of the Premises after the expiration of the Main Term or any exercised Option Periods, Tenant shall be deemed to be occupying the Premises from month to month as a tenant-at-sufferance and shall pay to Landlord

upon demand the then current Base Rent plus fifty percent (50%) of such amount and all other charges provided for herein as additional rent, and otherwise subject to all of the other terms, covenants and conditions of this Lease. No holding over by Tenant shall operate to extend the Term of this Lease. In the event of a holding over by Tenant, Tenant shall indemnify Landlord against all claims made against Landlord for losses incurred by Landlord resulting from delay by Landlord in delivering possession of the Premises to a tenant or prospective tenant with whom a bona fide lease has been entered into with respect to all or a portion of the Premises, of which Tenant has been notified by Landlord at least thirty (30) days prior to termination of the Lease.

30. "For Rent" Signs. Tenant hereby permits Landlord during the last ninety (90) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, on the parking lot of the Premises. Tenant will also allow Landlord or its agents, upon prior written notice and accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior, to prospective tenants, purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

31. Force Majeure. Except as otherwise specifically contemplated in this Lease in the event that Landlord or Tenant shall be delayed or hindered in, or prevented from, the performance of any act required hereunder, except any of Tenant's obligation to pay any sum of money subsequent to the Rent Commencement Date, by reason of strikes, lockouts, labor troubles, inability to procure materials, delay by the other party, failure of power or unavailability of utilities, riots, insurrection, war or other reason of a like nature not the fault of such party or not within its control, then performance of such act shall be excused for the period of delay, and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay.

32. Events of Tenant's Default. Any of the following occurrences, conditions or acts by Tenant shall constitute an "Event of Default" under this Lease:

(a) Failure to Pay Rent; Breach. (i) Tenant's failure to make any payment of money required by this Lease (including without limitation Base Rent or additional rent) (subject to Tenant's right of good faith contest as set forth herein), within ten (10) days after the receipt

of written notice from Landlord to Tenant that same is overdue; provided, however, with respect to any Base Rent past due, Tenant shall not be entitled to receive from Landlord written notice and ten (10) days in which to cure more than two (2) times in any one year or twenty-five (25) times during the Main Term, or more than two (2) times in any year during an Option Period; or (ii) Tenant's failure to observe or perform any other provision of this Lease within thirty (30) days after receipt of written notice from Landlord to Tenant specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Tenant shall have such longer period as is reasonably necessary to cure the default, so long as Tenant proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Landlord shall be required to give only such notice as is reasonable under the circumstances. Base Rent and any other sums due Landlord hereunder past due more than ten (10) days shall accrue interest at the highest rate allowed by applicable law (the "Default Rate") from the date due until paid.

(b) <u>Bankruptcy</u>. Tenant's adjudication as bankrupt or insolvent, or the appointment of a receiver, trustee in involuntary bankruptcy or other, similar officer to take charge of any substantial part of Tenant's property, which proceeding is not dismissed within one hundred twenty (120) days after it is begun.

33. <u>Landlord's Remedies</u>. Upon the occurrence of an Event of Default by Tenant, Landlord shall have the right, at Landlord's option, to exercise any of the following remedies in addition to any and all other remedies which it may have at law and/or in equity (except as specifically limited hereinbelow) without its actions being deemed an election of remedies or a cure of Tenant's default:

(a) <u>Continue Lease</u>. Landlord may, at its option, continue this Lease in full force and effect, without terminating Tenant's right to possession of the Premises, in which event Landlord shall have the right to collect Base Rent and other charges when due, including any sums due for any Option Period for which a Renewal Option has been exercised. In the alternative, Landlord shall have the right to peaceably re-enter the Premises on the terms set forth in subparagraph (b) below, without such re-entry being deemed a termination of the Lease or an acceptance by Landlord of a surrender thereof. Landlord shall also have the right, at its option, from time to time, without terminating this Lease, to relet the Premises, or any part

thereof, with or without legal process, as the agent, and for the account, of Tenant upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied (i) first to the reasonable and actual expenses of such reletting and collection, including without limitation necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums shall not be realized or secured, in Landlord's exercise of reasonable efforts to mitigate its damages (which Landlord hereby agrees to make), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below.

(b) <u>Terminate Lease</u>. Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than thirty (30) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following:

(i) The "worth at the time of the award" (defined below) of any obligation which has accrued prior to the date of termination; and

(ii) The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation.

As used in this paragraph 33(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at the Default Rate for past due obligations, and a discount rate to net present value of ten percent (10%) on anticipated future obligations, on the amount of the obligations payable on the date of such calculation. In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents,

servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings. Landlord shall never be entitled to dispossess the Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

(c) <u>Reimbursement of Landlord's Costs in Exercising Remedies</u>. Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including without limitation attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any speculative damages caused by Tenant's failure to perform its obligations under this Lease.

(d) <u>Remedies Cumulative</u>. Subject to the specific limitations set forth in this paragraph 33, the various rights and remedies reserved to Landlord hereinabove are cumulative, and Landlord may pursue any and all such rights and remedies and any others available to Landlord at law or in equity, whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease). As to a breach of the warranties and representations contained in paragraph 22, Landlord shall be entitled to the remedies provided therein, in addition to those remedies provided herein. Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review. The foregoing waiver shall only apply, however, to Circuit City Stores, Inc. and entities related to Circuit City Stores, Inc.

34. <u>Events of Landlord's Default; Tenant's Remedies</u>. Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default": (a) Landlord's failure to make any payments of money due Tenant or any brokerage commissions pursuant to paragraph 37 hereof when due, within ten (10) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate from the date due); or (b) Landlord's failure to perform any

nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances.

Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity (except as specifically limited herein), and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (a) pay or perform such obligations and be reimbursed by Landlord the sums paid or Tenant's reasonable and actual cost of performance, as applicable, and, in the event Landlord's Event of Default is due to its failure to construct the Alternate Accessway or there has been a non-appealable final judgment entered by a court which states that Landlord owes Tenant money, Tenant shall then have the right to setoff such sums from the Base Rent, including attorneys' fees and interest at the Default Rate from the date expended by Tenant until paid, or (b) terminate this Lease and sue for damages and attorneys' fees, plus interest at the Default Rate from the date due until paid. Tenant shall not be permitted to recover speculative damages from Landlord. As to a breach of the warranties and representations contained in paragraph 22, Tenant shall be entitled to the remedies provided therein, in addition to those remedies provided herein. The various rights and remedies reserved to Tenant herein are cumulative, and Tenant may pursue any and all rights and remedies, whether at the same time or otherwise.

35. <u>Waiver</u>. If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor be held to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

36. <u>Notices</u>. Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified

mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express or other comparable overnight express courier service (with proof of receipt available), addressed to the parties as follows:

| | |
|---|---|
| If to Tenant: | CIRCUIT CITY STORES, INC.<br>Deep Run I<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Corporate Secretary |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>Deep Run I<br>9950 Mayland Drive<br>Richmond, Virginia 23233<br>Attention: Vice President of Real Estate |
| If to Landlord: | THE WOODLANDS CORPORATION<br>2201 Timberloch Place<br>The Woodlands, Texas 77380<br>Attention: Vice President of Property Management |
| with a copy to: | THE WOODLANDS CORPORATION<br>2002 Timberloch Place<br>The Woodlands, Texas 77380<br>Attention: Legal Department |

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

37. <u>Brokers</u>. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for CB Commercial, which shall be paid a commission by Landlord pursuant to their separate written agreement. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

38. <u>Miscellaneous</u>.

(a) <u>Headings and Gender</u>. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others

whenever the context so requires or indicates.

(b) Construction. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c) Waiver of Jury Trial. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d) Relationship of Landlord-Tenant. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e) Entire Agreement; Merger. This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f) Attorneys' Fees. In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g) Partial Invalidity. If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

(h) Consents. Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not

waive the consenting party's right to give or withhold consent to any subsequent matter.

(i) <u>Holidays</u>. If the day on which rent or any other payment due hereunder is payable falls on a Sunday or on a legal holiday, it shall be payable on the following business day.

(j) <u>Applicable Law</u>. This Lease shall be construed in accordance with the laws of the State of Texas, and the parties agree that (i) jurisdiction for all actions hereunder shall lie therein and (ii) this Lease is performable in Montgomery County, Texas.

(k) <u>Successors and Assigns</u>. All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l) <u>Counterparts</u>. This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m) <u>Trademarks and Trade Names</u>. All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant and Landlord in its businesses shall at all times remain the exclusive property of said party and the other party shall have no right, interest in, or title to any of such party's trademarks, trade names, service marks, signs or other marks of identification of the other party.

39. <u>Confidentiality</u>. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their reasonable efforts to preserve the confidentiality of the terms and conditions of this transaction. The parties hereto agree to use their reasonable efforts to avoid discussing with, or disclosing to, any third parties (except those parties listed below) any of the terms, conditions or particulars in connection with this transaction. It is specifically agreed that the covenant of confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any governmental law or ordinance, or to the parties' developers, potential purchasers, assignees or sublessees, bankers, accountants, agents, lenders, lawyers or other similar parties, provided that, the parties hereto shall have first advised the foregoing parties of the confidential nature of this Lease. Any breach of this confidentiality agreement shall constitute an Event of Default under the terms and provisions of this Lease, for which neither party may terminate this Lease as a result thereof.

40. <u>Art Fund</u>. Tenant agrees to pay to Landlord upon execution of this Lease a one-time fee in an amount equal to one quarter of one percent (.0025%) of Tenant's cost in constructing the Building (said amount estimated to be $4,281.21), said funds to be used by Landlord to purchase sculpture art in public places in The Woodlands, Texas.

41. <u>Tenant's Financing of Improvements</u>. Notwithstanding anything contained in this Lease to the contrary, Landlord is aware that to facilitate a leveraged construction period lease/tax ownership operating lease transaction (a "Leaseback Transfer") Tenant may assign or transfer its interest in this Lease to a third party (the "Facilitator") who will then sublease the Premises to Tenant. Accordingly, Landlord hereby agrees that Tenant shall have the right throughout the Term of this Lease, without Landlord's consent, to assign or transfer this Lease to a Facilitator who Landlord acknowledges shall be the Tenant for all purposes under this Lease; provided, however, Tenant hereby agrees that (i) Circuit City Stores, Inc. shall not be released from any liability hereunder by reason of such Leaseback Transfer and (ii) Tenant shall provide Landlord with written notice of a Leaseback Transfer within thirty (30) days after completion thereof. Landlord further agrees that any Facilitator to whom this Lease is assigned shall not have any individual or personal liability hereunder or any obligations of Tenant hereunder; provided, however, that Landlord shall retain any rights and remedies with respect to the maintenance, preservation or possession of the Premises that Landlord may have hereunder as a result of the occurrence of an Event of Default, including any right of termination available to Landlord under Section 33 hereof. Any Facilitator to whom this Lease is assigned shall thereafter have the right (A) to sublease the Premises to Tenant without Landlord's consent and (B) to further assign its interests in this Lease or sublease the Premises in the event that the Facilitator's sublease with Tenant is terminated, provided that any such assignment or sublease shall be in accordance with the terms of paragraph 20 of this Lease on a recourse basis as to such assignee or sublessee without limitation on the individual or personal liability of the assignee or sublease.

42. <u>Right of Entry and Inspection</u>. Tenant shall permit Landlord or Landlord's agents, representatives, or employees to enter on the Premises at reasonable times and upon having given Tenant reasonable advance notice as to the exact date and time thereof for the purpose of inspection, to determine whether Tenant is in compliance with the terms of this Lease, or, for the purpose of showing the Premises to prospective purchasers, mortgagees, or beneficiaries