under trust deeds or within the last ninety (90) days of the Term for the purpose of showing the Premises to prospective tenants. Any inspections of the Premises pursuant to this paragraph shall be at Landlord's cost and expense, shall be conducted in a manner so as to not interfere with Tenant's business operations or damage the Premises in any manner and Landlord shall allow an authorized employee of Tenant to be present and accompany Landlord on such inspections. In the event it is determined by Landlord that an environmental study should be conducted on the Premises and said environmental study determines that Tenant has not substantially complied with all then existing environmental laws, Tenant shall reimburse Landlord for the cost of the study within thirty (30) days after receipt of an invoice setting forth the cost, and Tenant shall promptly take all action necessary to remedy any noncompliance discovered by such study in accordance with the provisions of this Lease.

43. Surrender. Upon the expiration or termination of this Lease, Tenant shall surrender the Premises and the Improvements to Landlord, at no cost to Landlord (except as specifically provided in this Lease). Landlord agrees that Tenant's delivery of the Premises shall be "AS IS" and "WITH ALL FAULTS," without representation or warranty by Tenant of any kind, except that the Premises shall comply with Tenant's obligations with respect to Hazardous Substances herein contained.

44. Parties Bound. This Lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns where permitted by this Lease.

45. Prior Leases Superseded. This Lease constitutes the sole and only Lease of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

46. Amendment. No amendment, modification, or alteration of the terms hereof shall be binding unless the same be in writing, dated subsequent to the date hereof and duly executed by Landlord and Tenant or their successors and assigns.

47. Time is of the Essence. Time is of the essence of this Lease.

48. Exhibits. Exhibits are referred to in this Lease are hereby incorporated herein by reference and made a part hereof for all purposes.

49. Day. Unless otherwise specified herein, all reference to "days" herein shall mean calendar days.

50. <u>Ownership of Title Company</u>. Tenant acknowledges that Landlord has disclosed to Tenant that Landlord owns fifty percent (50%) of the Stewart Title of Montgomery County, Inc.

WITNESS the following signatures and seals:

LANDLORD:

THE WOODLANDS CORPORATION,
a Delaware corporation

[AKW/BBB]

By: _[signature]_
Name: STEVE McPHETRIDGE
Title: VICE PRESIDENT

TENANT

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
    Benjamin B. Cummings, Jr.
    Vice President

Woodlands, TX

## EXHIBIT "A"

## SITE PLAN

Components:  Land

Pylon/Monument Signage

Case 08-35653-KRH    Doc 3867-4    Filed 06/30/09    Entered 06/30/09 16:11:07    Desc
Exhibit(s) Exhibit A - Lease (Part 4)    Page 6 of 15

**EXHIBIT A**

33,862 s.f.

LAKE WOODLANDS DRIVE (140' WIDE)

Alternate Accessway

PINECROFT

FOREST PRESERVE

## EXHIBIT "A-1"

## LEGAL DESCRIPTION

## THE LAND

### THE WOODLANDS TOWN CENTER
### 3.990 ACRES

Being a 3.990 acre tract of land situated in Montgomery County, Texas in the Walker County School Land Survey, A-599, out of The Woodlands Mall as recorded in Cabinet "H", Sheet 46-B of the Montgomery County Map Records and being more particularly described by metes and bounds as follows with all control referred to the Texas State Plane Coordinate System, Lambert Projection, South Central Zone;

BEGINNING at the most easterly cutback corner of Pinecroft Drive located in the south right-of-way line of Lake Woodlands Drive as recorded in Cabinet "F", Sheet 32-A of the Montgomery County Map Records located in the north line of that certain 86.46 acre tract of land owned by The Woodlands Mall Associates as recorded in File No. 9401007 of the Montgomery County Real Property Records, same being the north line of said The Woodlands Mall. Said POINT OF BEGINNING having a Texas State Plane Coordinate Value of X= 3,119,325.45, Y= 865,525.10 and being S 61°39'46" E, 3,282.79 feet from the northwest corner of said Walker County School Land Survey, A-599;

THENCE with the south right-of-way line of said Lake Woodlands Drive common to the north line of said 86.46 acre tract along a curve to the right an arc distance of 642.03 feet based on a radius of 1,777.16 feet, a central angle of 20°41'57" and having a chord which bears N 82°47'54" E a chord distance of 638.54 feet to a point of tangency;

THENCE continuing along said common line S 86°51'07" E, 67.98 feet to the northwest corner of that certain 2.03 acre Inter-Company Sale No. 3666 by The Woodlands Corporation;

THENCE along the west line of said 2.030 acre tract S 03°08'53" W, 250.00 feet to its southwest corner;

THENCE N 86°51'07" W, 67.98 feet to a point of curvature;

THENCE along a curve to the left an arc distance of 558.77 feet based on a radius of 1,527.16 feet, a central angle of 20°57'50" and having a chord which bears S 82°39'58" W a chord distance of 555.66 feet to a point for corner;

THENCE N 63°58'31" W, 31.51 feet to a point for corner;

THENCE N 20°08'10" W, 188.32 feet to a point for corner;

THENCE N 26°08'35" E, 55.56 feet to the POINT OF BEGINNING and containing 3.990 acres of land.

## EXHIBIT "B"
## PERMITTED ENCUMBRANCES

This Ground Lease is made, executed and delivered by Landlord and accepted by Tenant SUBJECT TO the following, Tenant agreeing to be bound thereby:

1. All oil, gas and mineral reservations or conveyances of record, and the reservation by Landlord, for itself, its successors and assigns, of all oil, gas and other minerals owned by Landlord, on, in and under, or that may be produced from the Premises, provided, however, that as to any mineral interest to which the title shall remain vested in Landlord by virtue of this reservation, Landlord hereby expressly waives all rights to use of the surface of the Premises for the propose of exploring for, developing or producing said minerals.

2. The reservation by Landlord, for itself and its successors and assigns, of all of the subterranean waters in or under the Premises, including, without limitation, all percolating waters and underground reservoirs, and all rights appurtenant to the full use and enjoyment thereof, and all rights appurtenant to all underground streams in or under the Premises that are characterized by definite channels; provided, however, that Landlord hereby waives all rights to use the surface of the Premises for the purpose of removing subterranean water.

3. The Declaration of Covenants, Conditions and Restrictions of The Woodlands Commercial Owners Association, filed for record in the Office of the County Clerk of Montgomery County, Texas, under File No. 9357930; the Premises having been annexed and made subject thereto by Annexation of Additional Lands to the Property subject to The Declaration of Covenants, Conditions and Restrictions of The Woodlands Commercial Owners Association, filed for record in the Office of the County Clerk of Montgomery County, Texas, under File No. _____ ("WCOA Covenants").

4. Declaration of Restrictions and Agreement, dated January 24, 1994, made and entered into by and between Landlord and The Woodlands Mall Associates, recorded January 26, 1994, under Clerk's File No. 9404800 of the Real Property Records of Montgomery County, Texas.

5. All restrictions, set back lines, easements and other matters set out in that certain plat of The Woodlands Mall, a subdivision in The Woodlands, Montgomery County, Texas, recorded in Cabinet H, Sheet 46-B, of the Map Records of Montgomery County, Texas.

6. Sanitary Sewer Line Easement, dated October 11, 1994, made and entered into by and between Landlord and The Woodlands Metro Center Municipal Utility District, recorded under County Clerk's No. 9457570 of the Real Property Records of Montgomery County, Texas.

7. One-half of all the oil, gas and other minerals, the royalties, bonuses, rentals and all other rights in connection with same, as set forth in Deed, dated June 5, 1950, executed and delivered by James C. Baldwin and Robert H. Baldwin, as grantors, recorded in Volume 300, Page 93 of the Real Property Records of Montgomery County, Texas, as modified by Surface Use Agreement, dated October 29, 1985, recorded November 1, 1985, under Clerk's File No. 8549571 of the Real Property Records of Montgomery County, Texas, and as amended by Amendment to Surface Use Agreement, dated December 2, 1986, recorded under Clerk's File No. 8717471 of the Real Property Records of Montgomery County, Texas, as amended and restated by Amended and Restated Surface Use Agreement, dated February 25, 1993, recorded under Clerk's File No. 9312816 of the Real Property Records of Montgomery County, Texas.

8. An undivided 3/32nds non-participating royalty interest in and to all oil, gas and other minerals, as set forth in Deed, dated April 30, 1965, executed and delivered by Robert C. Baldwin, as grantor, to Fred Cochran and Tycon Corporation, as grantees, recorded under Clerk's File No. 177831, in Volume 595, Page 230, of the Real Property Records of Montgomery County, Texas.

9. Restated Declaration of Covenants, Conditions, and Restrictions (Town Center Landscape Area), dated September 14, 1994, executed and delivered by Landlord, recorded September 15, 1994, under Clerk's File No. 9452470 of the Real Property Records of Montgomery County, Texas, as amended by Amendment to Restated Declaration of Covenants, Conditions, and Restrictions (Town Center Landscape Area), dated August 26, 1996, executed and delivered by Landlord, recorded August 26, 1996, under Clerk's File No. 9652900 of the Real Property Records of Montgomery County, Texas, as corrected by that certain Correction Amendment to Restated Declaration of Covenants, Conditions and Restrictions (Town Center Landscape Area) dated April 9, 1997 recorded under Clerk's File No. 9720922 of the Real Property Records of Montgomery County, Texas.

10. Water line easement 5 feet wide along the northerly property line of the subject property as imposed by the map and dedication recorded in Cabinet H, Sheet 46B of the Map Records of Montgomery County, Texas.

11. No building shall be located closer than 10 feet to any adjoining property line nor closer than 25 feet to the Ring Road nor 35 feet to any Access Road as set forth in instrument recorded under County Clerk's File No. 9404800 of the Real Property Records of Montgomery County, Texas.

12. Building line 25 feet wide along the northerly property line of the subject property as imposed by the map and dedication recorded in Cabinet H, Sheet 46B of the Map Records of Montgomery County, Texas.

## EXHIBIT "C"
## DEVELOPMENT CRITERIA

[attached]

DEVELOPMENT CRITERIA  
PARCEL 2Q-3b, 3.99 ACRES  
TOWN CENTER

12 AUGUST, 1996

## COMMERCIAL - RETAIL

### I. GENERAL CONDITIONS

The architect and owner shall consult with the Planning Division of Seller concerning the use of this document in the preparation of all development plans and their submission for review by the Community Standards Committee (CSC) in accordance with The Woodlands Commercial Owners Association (WCOA) Covenants. The CSC approvals are required at three stages in the design process. They are:

1. Concept
2. Preliminary
3. Final (plans and specifications)

CSC approved final plans and specifications must be submitted to the Planning Department of Seller, or of CSC and approved before any clearing or construction is commenced. Plans must be in compliance with the codes and standards adopted by the CSC (Standards).

### II. SPECIAL REQUIREMENTS

The building design and site layout must be in accordance with the Standards.

In addition, all proposed improvements (including buildings, accessory structures, paving, landscaping, lighting and signage) must be architecturally identical with Blockbuster Video (the east, adjacent site). The building footprint may be different.

### III. CRITERIA

A. Lot Coverage:

1. The building slab, parking, drives and entry walk (i.e., all hard surfaces) shall cover no more than 90% of the net area of the site. The net area of the site is that portion within the perimeter forest preserves.

B. Setbacks

1. The primary paving and building setbacks shall be as follows:

|   |   | Paving | Building |
|---|---|---|---|
| a. | North (Lake Woodlands Dr.) | 45' | 55' |
| b. | East | 0' | 25' |
| c. | South (Mall Ring Road) | 25' | 35' |
| d. | West (Mall Access Rd.) | 25' | 35' |

C. Forest Preserve (FP) and Natural Landscape Area (NLA)

1. Forest Preserves shall coincide with the paving setbacks as per Item III.B. b., c., and d. above. Existing natural vegetation is to be retained in these zones and no clearing, paving, buildings, material storage, or other improvements or construction is permitted in said zones. No clearing on the site will occur unless a clearing plan is approved and a clearing permit is issued. The CSC will review the clearing plan to ensure utility connections to the site are adjacent to entries or consolidated, where possible. The width of clearings will be a maximum of 8 feet for utilities, 5 feet for one-story building construction and 2 feet beyond pavement. The clearing area will be marked with a continuous white ribbon.

2. Natural Landscape Area has been reserved on a strip of land forty-five (45) feet in width along the north boundary of the property and are identical to forest preserves except that limited view corridor clearing of midgrowth vegetation can be allowed for building visibility. This clearing and maintenance in this area is to be performed in accordance with the I-45 Landscape Declaration.

3. The Forest Preserves and Natural Landscaped Areas are of particular importance to the philosophy of development in The Woodlands.

   To help maintain this vegetation, the contractor will be required to furnish and install protective 6' cyclone fencing around the entire perimeter of the forest preserves prior to clearing. In addition, interior vegetation islands and pockets will be similarly protected. The fence will be installed after the clearing is complete and prior to any other

1

C .LOPMENT CRITERIA  
PARCEL 2Q-3b, 3.99 ACRES  
TOWN CENTER

12 AUGUST, 1996

construction activity. The fence is to remain until completion of construction and landscaping is begun. The contractor is required to notify the CSC if the fence is required to be removed any time during the construction process. If this is not done the CSC may stop construction at the site until these fencing requirements are complied with.

4. The owner is required to survey significant trees to be used toward the 10% landscape area required.

5. The Forest Preserve and Natural Landscape Areas may not be cleared for construction of pavement or building except for utility, signage, pathways, and access drives. The owners/architects need to design buildings and pavement such that construction access and maintenance will not encroach into setback areas.

6. Burning on-site of vegetation will not be allowed.

D. Landscape Plan

1. A preliminary landscape plan must accompany the preliminary submission. A comprehensive landscape plan will be required with the final submission.

E. Easements

1. A 10' utility easement will be reserved around the interior edge of the north, south, and west property perimeter.

2. A pathway easement (P.E.) will be reserved along the north, south, and west sides of the property within the forest preserve (see exhibit).

F. Site Drainage

1. Run-off to be collected on this site must be piped to the existing storm drainage system (see master drainage plans).

2. Drainage from this site will not be permitted to flow onto an adjacent site.

G. Vehicular Circulation and Parking

1. Three (3) vehicular entries will be permitted to the site (see exhibit).

2. All vehicular areas must be paved with asphalt. The pavement should be kept back a minimum distance of 20' from the building face so as to provide for landscaping.

3. All parking needs must be accommodated on-site. No parking will be permitted along the street. 5.0 car spaces for each 1,000 square feet of leasable area is required.

H. Building

1. The building height shall not exceed one story.

2. The building is to be a minimum of 50% mall brick material and color.

3. All roof top mechanical equipment will be screened from public view.

I. Signage

1. All exterior signs, both temporary and permanent, require the approval for design and location of the CSC. The owner/contractor is encouraged to contact the CSC for standards and assistance in the design and location of signage prior to submittal for approval.

2. A comprehensive signage program has been formulated for these north mall parcels. All permanent exterior signage for this site will be required to adhere to this program.

3. A 6' X 9' ground sign will be permitted on the north side of the property to match signs on the north side of Lake Woodlands Drive. A 4' X 8' sign will be permitted on the south side of the property. Maximum 4' high building signs will be permitted on the south and west sides of the building.

DEVELOPMENT CRITERIA  
PARCEL 2Q-3b, 3.99 ACRES  
TOWN CENTER

12 AUGUST, 1996

J. Lighting

1. All exterior lighting for this site must match that of the Pinecroft Center. The specifications will be provided by The Woodlands Corporation.

K. Exhibits

Attached hereto is a Development Criteria Exhibit dated 12 August, 1996, which depicts the site, access points, easements and setbacks.

IV. VARIANCES

Variances may be granted to the Standards and the Development Criteria provided that (1) the applicant's plans and specifications taken as a whole are in substantial compliance with such Standards and Development Criteria and (2) the granting of such variances either creates a design improvement or is otherwise in the best interests of The Woodlands community. The CSC will make a determination of variances on a case by case basis and a variance in one case will not be cause for a variance in other cases.

This Development Criteria complies with the C/I Standards of the CSC.

_Robert Heineman_  
Robert Heineman, Chairman

3B.TC

3



Development Criteria Exhibit
The Woodlands Corporation
Scale 1"=100'

Date 
File Name 

## EXHIBIT "D"
### PLANS AND SPECIFICATIONS/SIGN PLANS