EXHIBIT "D"

## LIST OF DRAWINGS

T1.0    TITLE SHEET

### CIVIL
- C1.0    SITE LAYOUT PLAN
- C2.0    SITE UTILITIES PLAN
- C3.0    SITE GRADING PLAN
- C4.0    NOTES AND DETAILS

### LANDSCAPE
- L1.0    LANDSCAPE PLANTING PLAN
- L2.0    IRRIGATION PLAN

### ARCHITECTURAL
- A2.0    LIFE SAFETY PLAN
- A2.1    FLOOR PLAN
- A2.2    FIXTURE PLAN
- A2.3    ROOF PLAN AND DETAILS
- A2.4    FINISH SCHEDULE
- A2.5    DOOR SCHEDULE AND DETAILS
- A2.6    STOREFRONT ELEVATIONS & DETAILS
- A2.7    WAREHOUSE SHELVING & MISCELLANEOUS DETAILS
- A3.1    EXTERIOR ELEVATIONS ← *includes signage (building + monuments)*
- A3.2    WALL SECTIONS
- A3.3    TOWER WALL SECTIONS AND DETAILS
- A3.4    TOWER WALL SECTIONS AND DETAILS
- A4.1    VESTIBULE PLAN AND DETAILS
- A4.2    ENLARGED PLANS AND DETAILS
- A4.3    SECTIONS
- A5.1    INTERIOR ELEVATIONS
- A5.2    INTERIOR ELEVATIONS
- A6.1    REFLECTED CEILING PLAN

### STRUCTURAL
- S0.1    GENERAL NOTES AND TYPICAL DETAILS
- S1.1    FOUNDATION PLAN
- S1.2    FOUNDATION DETAILS
- S1.3    FOUNDATION DETAILS
- S1.1A    FOUNDATION PLAN ALTERNATE
- S1.2A    FOUNDATION DETAILS ALTERNATE
- S1.3A    FOUNDATION DETAILS ALTERNATE
- S2.1    ROOF FRAMING PLAN
- S2.2    ROOF FRAMING DETAILS
- S2.3    ROOF FRAMING DETAILS

### MECHANICAL
- M1.0    ROOF PLAN, SCHEDULES AND NOTES
- M2.0    HVAC FLOOR PLAN

### PLUMBING
- P1.0    GENERAL NOTES AND PLUMBING SCHEDULES
- P2.0    PLUMBING FLOOR PLAN
- P3.0    PLUMBING DETAILS

### ELECTRICAL
- E1.0    LIGHTING PLAN
- E2.0    STS PLAN - ALARM, SOUND, POS & TELEPHONE PROVISION
- E2.1    STS PLAN - ANTENNA AND CAMERA COAX CABLE PROVISION
- E3.0    STS DIAGRAMS & DETAILS
- E4.0    POWER PLAN AND DETAILS
- E5.0    UNDERFLOOR ROUGH-IN
- E6.0    RISER DIAGRAM & PANEL SCHEDULES
- E7.0    E.M.S AND CONTROL WIRING
- E8.0    ELECTRICAL SITE PLAN

---

**CIRCUIT CITY**®
9950 MAYLAND DRIVE, RICHMOND, VA 23233
804-527-4000 / 800-627-8274

**KIRKSEY AND PARTNERS ARCHITECTS**
6909 San Felipe Suite 300 Houston, TX 77057
Phone: 713.850.9600  Fax: 713.850.7308

Phase: CONSTRUCTION
Drawing Description: TITLE SHEET
Market/Project Name: HOUSTON
State/Area/Address: TX-WOODLANDS
Site Name/County, State: MALL OUTPARCEL
ProtoType: SUPERSTORE
Store #/CC#/Project #: 3253
Site #: 1
State: TX
Architect/Engineer: KPA
A/E Project No: 96161

Sheet No.: **T1.0**
C1

## EXHIBIT "E"
## REMOVABLE TRADE FIXTURES

STORE FIXTURES
ALL STORAGE RACKING
ALL SECURITY SYSTEM ITEMS
TELEPHONES AND PAGING SYSTEMS
COMPUTER SYSTEM
OFFICE FURNITURE AND TRASH RECEPTACLES
BATTERY CHARGER
TRASH COMPACTOR
SIGNS (INTERIOR/EXTERIOR)
ANTENNA SYSTEM
ELECTRONIC SWITCHING
AIR COMPRESSOR (ROADSHOP)
SAFE (IF NOT LOCATED IN FOUNDATION)
CONVEYOR
MEDECO CYLINDER LOCKS (5)
REFRIGERATOR AND MICROWAVE USED BY EMPLOYEES
TACK BOARDS
WATER COOLER
FIRE EXTINGUISHERS
AUDIO ROOM FIXTURES AND SWITCHGEAR
PICTURES
WAREHOUSE AND MATERIAL HANDLING EQUIPMENT (MOVABLE LADDERS, DOLLIES, ETC.)
TRACK LIGHTS (CANS ONLY, NOT TRACKS)

EXHIBIT "F"
## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
(Mortgage)

THIS AGREEMENT, dated the _____ day of _____, 199___, between _____, a _____ ("Mortgagee"), and CIRCUIT CITY STORES, INC., a Virginia corporation ("Tenant").

WITNESSETH:

(a) Tenant has entered into a certain lease (the "Lease") dated _____, _____ with _____ ("Landlord"), Montgomery County, Texas, and more particularly described in Schedule A hereto; and

(b) Mortgagee has made a loan to Landlord as evidenced and secured by a Deed of Trust recorded _____, in the land records of _____ County, _____, under County Clerk's File No. _____ (the "Mortgage"), encumbering the property described in Schedule A; and the parties hereto desire to set forth their agreement with regard to the priority of the Mortgage and the effect thereof on Tenant and its leasehold interest in the aforesaid premises, as set forth below.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

1. The Lease is and shall be subject and subordinate to the lien of the Mortgage insofar as it affects the real property of which the premises form a part, and to all renewals, modifications, consolidations, replacements and extensions thereof, to the full extent of the principal sum secured thereby and interest thereon.

2. Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the premises by deed in lieu of foreclosure, the successors and assigns of such purchasers, as its Landlord for the unexpired balance (and any extensions, if exercised) of the term of the Lease upon the same terms and conditions set forth in the Lease.

3. In the event that it should become necessary to foreclose the Mortgage, Mortgagee thereunder will recognize this Lease and all of Tenant's rights hereunder, and Mortgagee will not terminate the Lease nor join Tenant in summary or foreclosure proceedings so long as Tenant is not in default under any of the material terms, covenants, or conditions of the Lease, beyond any applicable cure period provided in the Lease.

4. Mortgagee consents to the application of casualty and condemnation proceeds in accordance with paragraphs 18 and 19 of the Lease between Landlord and Tenant, whether or not the Mortgage is then foreclosed.

5.  In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:
    (a) liable for any act or omission of any prior lessor (including Landlord); or
    (b) liable for the return of any security deposits unless delivered to Mortgagee; or
    (c) bound by any rent or other periodic payments which Tenant might have paid for more than the current month to any prior lessor (including Landlord); or
    (d) bound by any amendment or modification of the Lease made without its consent, which consent shall not be unreasonably withheld or delayed.

6.  Notwithstanding anything contained in this Agreement, Mortgagee acknowledges and agrees that if Mortgagee shall succeed to the interest of Landlord under this Lease, Mortgagee shall be subject to all of Tenant's remedies properly exercised under the Lease, including but not limited to Tenant's rights of self-help and/or setoff for any default, obligation, act or omission of any prior lessor (including Landlord) as provided in the Lease and that such rights of Tenant are not limited or impaired in any way by the terms and provisions of this Agreement.

7.  Mortgagee, Landlord and Tenant, respectively, represent and warrant to each other that each has the requisite power and authority to enter into this Agreement; that all necessary and appropriate approvals, authorizations and other steps have been taken to effect the legality of this Agreement; that the signatories executing this Agreement on behalf of Mortgagee, Landlord and Tenant have been duly authorized and empowered to execute this Agreement on behalf of Mortgagee, Landlord and Tenant, respectively; and that this Agreement is valid and shall be binding upon and enforceable against Mortgagee, Landlord and Tenant and their successors and assigns and shall inure to the benefit of Mortgagee, Landlord and Tenant and their successors and assigns.

8.  Mortgagee consents to the assignment and subletting right set forth in paragraph 20 of the Lease.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

ATTEST:                                                          CIRCUIT CITY STORES, INC.,
                                                                 a Virginia corporation

_____         By: _____
_____              _____


ATTEST:                                                          COMPANY NAME


_____         By: _____
_____              _____


Note: Attach appropriate notary blocks for the State.

3 - Ex. "F"
(Mortgage)                                                                H:\KOSTASP\LSE\43514_7 [54-77 (6083)]

## EXHIBIT "G"

## MEMORANDUM OF LEASE

This Memorandum of Lease is made this ____ day of April, 1997, between THE WOODLANDS CORPORATION, a Delaware corporation (hereinafter referred to as "Landlord"), and CIRCUIT CITY STORES, INC., a Virginia corporation (hereinafter referred to as "Tenant").

### WITNESSETH:

Landlord and Tenant have entered into a Lease (the "Lease") dated April ____, 1997, whereby Landlord has leased to Tenant the property (the "Property") shown on the Site Plan attached hereto, located in Montgomery County, Texas, the legal descriptions of which Property is set forth on Exhibit "A-1" attached hereto. The Lease contains provisions and rights appurtenant to the Property, some of which are as follows:

I. Term. The term of the Lease is for a period of twenty (20) years, commencing on the Commencement Date (as established in the Lease). Thereafter, Tenant has the right under the Lease to renew and extend the term of the Lease for four (4) successive periods of five (5) years each.

II. Exclusive Use Rights. Landlord has agreed not to grant any other party operating in the outparcels of The Woodlands Mall, Pinecroft I Shopping Center or Pinecroft II Shopping Center (which shopping centers are across from The Woodlands Mall) the exclusive right to sell consumer electronics and appliances so long as the Lease is in effect and Circuit City Stores, Inc. or a similar successor retailer is operating in the Property.

III. Successors. The covenants, conditions and agreements made and entered into by the parties hereto shall be binding upon and inure to the benefits of their respective heirs, administrators, executors, representatives, successors and assigns.

IV. Incorporation of Lease. All terms and conditions of the Lease are hereby incorporated herein by reference as if fully set forth herein.

V. Conflicts with Lease. This Memorandum of Lease is solely for notice and recording purposes and shall not be construed to alter modify, expand, diminish or supplement the provisions of the Lease. In the event of any inconsistency between the provisions of this Memorandum of Lease and the provisions of the Lease, the provisions of the Lease shall govern.

IN WITNESS WHEREOF, this Memorandum of Lease has been duly executed by the parties hereto as of the day and year first above written.

1 - Ex. "G"                    H:\KOSTASP\LSE\43514_7 [54-77 (6083)]

THE WOODLANDS CORPORATION
a Delaware corporation

By: _____
Name: _____
Title: _____

STATE OF TEXAS            §
                          §
COUNTY OF MONTGOMERY      §

This instrument was acknowledged before me on _____, 1997, by _____
_____, _____ of THE WOODLANDS CORPORATION, a Delaware corporation, on behalf of said corporation.

_____
Notary Public, State of Texas

## EXHIBIT "A-1"

### THE LAND
THE WOODLANDS TOWN CENTER
3.990 ACRES

Being a 3.990 acre tract of land situated in Montgomery County, Texas in the Walker County School Land Survey, A-599, out of The Woodlands Mall as recorded in Cabinet "H", Sheet 46-B of the Montgomery County Map Records and being more particularly described by metes and bounds as follows with all control referred to the Texas State Plane Coordinate System, Lambert Projection, South Central Zone;

BEGINNING at the most easterly cutback corner of Pinecroft Drive located in the south right-of-way line of Lake Woodlands Drive as recorded in Cabinet "F", Sheet 32-A of the Montgomery County Map Records located in the north line of that certain 86.46 acre tract of land owned by The Woodlands Mall Associates as recorded in File No. 9401007 of the Montgomery County Real Property Records, same being the north line of said The Woodlands Mall. Said POINT OF BEGINNING having a Texas State Plane Coordinate Value of X= 3,119,325.45, Y= 865,525.10 and being S 61°39'46" E, 3,282.79 feet from the northwest corner of said Walker County School Land Survey, A-599;

THENCE with the south right-of-way line of said Lake Woodlands Drive common to the north line of said 86.46 acre tract along a curve to the right an arc distance of 642.03 feet based on a radius of 1,777.16 feet, a central angle of 20°41'57" and having a chord which bears N 82°47'54" E a chord distance of 638.54 feet to a point of tangency;

THENCE continuing along said common line S 86°51'07" E, 67.98 feet to the northwest corner of that certain 2.03 acre Inter-Company Sale No. 3666 by The Woodlands Corporation;

THENCE along the west line of said 2.030 acre tract S 03°08'53" W, 250.00 feet to its southwest corner;

THENCE N 86°51'07" W, 67.98 feet to a point of curvature;

THENCE along a curve to the left an arc distance of 558.77 feet based on a radius of 1,527.16 feet, a central angle of 20°57'50" and having a chord which bears S 82°39'58" W a chord distance of 555.66 feet to a point for corner;

THENCE N 63°58'31" W, 31.51 feet to a point for corner;

THENCE N 20°08'10" W, 188.32 feet to a point for corner;

THENCE N 26°08'35" E, 55.56 feet to the POINT OF BEGINNING and containing 3.990 acres of land.

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
    Benjamin B. Cummings, Jr.
    Vice President

STATE OF VIRGINIA    §
    §
COUNTY OF HENRICO    §

    This instrument was acknowledged before me on _____, 1997, by Benjamin B. Cummings, Jr., Vice President of CIRCUIT CITY STORES, INC., a Virginia corporation, on behalf of said corporation.

_____
Notary Public, State of Virginia

## EXHIBIT "H"

## RENT COMMENCEMENT DATE AGREEMENT

THIS AGREEMENT, made as of this ____ day of _____, 19__, between _____ (herein called "Landlord"), and CIRCUIT CITY STORES, INC. (herein called "Tenant").

### WITNESSETH:

WHEREAS, Landlord is the owner of certain premises situated in _____, _____ County, _____ (herein called the "Premises"); and

WHEREAS, by that certain lease dated _____, 19__ (herein called the "Lease"), Landlord leased the Premises to Tenant; and

WHEREAS, a memorandum or short form lease in respect of the Lease was recorded in the office of the Clerk of _____ County, _____, on the ____ day of _____, 19__, in Book _____ at Page ____; and

WHEREAS, Tenant is in possession of the Premises and the term of the Lease has commenced; and

WHEREAS, under Paragraph 28 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease;

NOW, THEREFORE, Landlord and Tenant agree as follows:

1. The term of the Lease commenced on _____, 1997, and the Rent Commencement Date (as such term is defined in the Lease) was, _____, 19__. The term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to extend the term of the Lease or unless the Lease terminates earlier as provided in the Lease.

2. The date of commencement of the first "Option Period" (as such term is defined in the Lease) shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

3. The date of commencement of the second Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

4. The date of commencement of the third Option Period shall be February 1, ____ if

Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

    5. The date of commencement of the fourth Option Period shall be February 1, ____ if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the term of the Lease shall expire on January 31, ____ unless Tenant exercises any option to further extend the term of the Lease or the Lease terminates earlier as provided in the Lease.

    IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

Attest or Witness:

By: _____

Attest:                               CIRCUIT CITY STORES, INC.

_____     By: _____
Assistant Secretary                        Vice President

## EXHIBIT "I"

## ASSIGNMENT OF RIGHTS, BENEFITS, INTERESTS AND OBLIGATIONS

This Assignment of Rights, Benefits, Interests and Obligations ("Assignment") is made effective as of the ___ day of April, 1997, by THE WOODLANDS CORPORATION, a Delaware Corporation ("TWC") to CIRCUIT CITY STORES, INC., a Virginia corporation ("Circuit City").

## W I T N E S S E T H :

WHEREAS, TWC has entered into that certain Declaration of Restrictions and Agreement, dated January 24, 1994, filed for record under County Clerk's File No. 9404800 in the Real Property Records, Montgomery County, Texas ("Declaration"); and

WHEREAS, TWC has entered into that certain Declaration of Easements, dated October 31, 1996, filed for record under County Clerk's File No. 9668564 in the Real Property Records, Montgomery County, Texas ("Driveway Easement"); and

WHEREAS, TWC has reserved certain non-exclusive access rights as set forth in the Access and Utility Easement ("Access Easement") attached as Exhibit "B" to that certain Special Warranty Deed ("Deed") dated December 30, 1993, filed under County Clerk's File No. 9401007 in the Real Property Records, Montgomery County, Texas; and

WHEREAS, simultaneously with execution of this Assignment, TWC and Circuit City are entering into a Ground Lease of even date herewith (the "Lease") whereby TWC leases to Circuit City that certain tract of land described on Exhibit "A" attached hereto and incorporated herein (the "Land"); and

WHEREAS, in consideration of Circuit City entering into the Lease, and as an inducement to Circuit City to enter into the Lease, TWC has agreed to, and does hereby, assign to Tenant certain rights, interests and benefits under the Declaration, Driveway Easement and Access Easement that are pertinent to the Land or that otherwise pertain to or benefit the Land, as more particularly set forth hereinbelow.

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Circuit City and TWC hereby agree as follows:

1. TWC does hereby assign, transfer and set over unto Circuit City all of the rights, interests and benefits of TWC with respect to the perpetual non-exclusive access easement reserved by TWC under the Access Easement, together with the rights, interests and benefits relating thereto set forth in paragraph 9 of the Declaration, said assignment to be non-exclusive to Circuit City. Circuit City shall have the right to enforce the rights, interests and benefits herein assigned in its own name or the name of TWC, as is necessary to ensure access to the Land over, upon and through the "Ring Road" and "Access Roads" (as defined in the Declaration) and

## EXHIBIT "A"

### THE LAND
THE WOODLANDS TOWN CENTER
3.990 ACRES

Being a 3.990 acre tract of land situated in Montgomery County, Texas in the Walker County School Land Survey, A-599, out of The Woodlands Mall as recorded in Cabinet "H", Sheet 46-B of the Montgomery County Map Records and being more particularly described by metes and bounds as follows with all control referred to the Texas State Plane Coordinate System, Lambert Projection, South Central Zone;

BEGINNING at the most easterly cutback corner of Pinecroft Drive located in the south right-of-way line of Lake Woodlands Drive as recorded in Cabinet "F", Sheet 32-A of the Montgomery County Map Records located in the north line of that certain 86.46 acre tract of land owned by The Woodlands Mall Associates as recorded in File No. 9401007 of the Montgomery County Real Property Records, same being the north line of said The Woodlands Mall. Said POINT OF BEGINNING having a Texas State Plane Coordinate Value of X= 3,119,325.45, Y= 865,525.10 and being S 61°39'46" E, 3,282.79 feet from the northwest corner of said Walker County School Land Survey, A-599;

THENCE with the south right-of-way line of said Lake Woodlands Drive common to the north line of said 86.46 acre tract along a curve to the right an arc distance of 642.03 feet based on a radius of 1,777.16 feet, a central angle of 20°41'57" and having a chord which bears N 82°47'54" E a chord distance of 638.54 feet to a point of tangency;

THENCE continuing along said common line S 86°51'07" E, 67.98 feet to the northwest corner of that certain 2.03 acre Inter-Company Sale No. 3666 by The Woodlands Corporation;

THENCE along the west line of said 2.030 acre tract S 03°08'53" W, 250.00 feet to its southwest corner;

THENCE N 86°51'07" W, 67.98 feet to a point of curvature;

THENCE along a curve to the left an arc distance of 558.77 feet based on a radius of 1,527.16 feet, a central angle of 20°57'50" and having a chord which bears S 82°39'58" W a chord distance of 555.66 feet to a point for corner;

THENCE N 63°58'31" W, 31.51 feet to a point for corner;

THENCE N 20°08'10" W, 188.32 feet to a point for corner;

THENCE N 26°08'35" E, 55.56 feet to the POINT OF BEGINNING and containing 3.990 acres of land.

maintenance of the Ring Road and Access Roads as intended by said instruments. In connection with the foregoing assignment, Circuit City hereby agrees to pay the annual fee for maintenance of the Ring Road and Access Roads by The Woodlands Mall Associates as set forth in paragraph 9 of the Declaration and TWC agrees that it will not amend, modify or waive, in whole or part, any of the aforementioned rights, interests and benefits assigned to Circuit City, nor modify paragraph 9 of the Declaration so as to increase the obligation of Circuit City undertaken with respect thereto, without Circuit City's prior written consent.

2. TWC does hereby assign, transfer and set over unto Circuit City all of the rights, interests and benefits of the Driveway Easement as they pertain to the Land, together with the obligations thereunder relative to the Land, which obligations are hereby assumed by Circuit City. Circuit City shall have the right to enforce the rights, interests and benefits herein assigned in its own name or the name of TWC, as necessary to ensure access to the Land through the accessway described in said instrument and proper maintenance of said accessway, as intended by said instrument. TWC agrees that it will not amend, modify or waive, in whole or part, any of the aforementioned rights, interests and benefits assigned to Circuit City under this paragraph 2 nor the obligation of Circuit City undertaken with respect thereto, without Circuit City's prior written consent.

3. TWC does hereby assign to Tenant the nonexclusive right to enforce the restrictive covenants contained in the Declaration in Circuit City's or TWC's name.

4. TWC agrees to cooperate fully with Circuit City with respect to Circuit City's enforcement of the rights and benefits herein conferred and assigned; provided, however, TWC shall not be required to expend funds to enforce such rights.

5. If the Declaration is modified without Circuit City's prior written consent (which consent is not required by the terms hereof), The Woodlands Corporation shall not seek to enforce any such modification against Circuit City unless a third party obtains a final non-appealable judicial determination that Circuit City is bound thereby and seeks to enforce such modification against Circuit City and/or TWC, whereupon Circuit City's failure to abide thereby following notice from TWC to Circuit City and an opportunity to cure as provided in the Lease shall constitute a default thereunder, and Circuit City shall pay TWC's actual damages resulting from such non-compliance.

6. Whenever this Assignment allows Tenant to enforce certain rights in its own name or that of TWC, Tenant agrees to only act in TWC's name when necessary to enforce the right assigned, e.g., Tenant would otherwise lack standing to enforce the right in its own name.

7. This Assignment shall be binding upon TWC and Circuit City and their respective successors and assigns, so long as the Lease is in effect.

<u>ASSIGNOR</u>:

THE WOODLANDS CORPORATION,
a Delaware corporation

By: _____

Name: _____

Title: _____

STATE OF TEXAS        §
                      §
COUNTY OF MONTGOMERY  §

This instrument was acknowledged before me on _____, 1997, by _____
_____, _____ of THE WOODLANDS CORPORATION, a
Delaware corporation, on behalf of said corporation.

_____
Notary Public, State of Texas

3 - Ex. "I"    H:\KOSTASP\AGR\70907_1[54-77 (6083)]

ASSIGNEE:

CIRCUIT CITY STORES, INC.

By: _____
Benjamin B. Cummings, Jr.,
Vice President

STATE OF VIRGINIA § 
§
COUNTY OF HENRICO §

This instrument was acknowledged before me on _____, 1997, by Benjamin B. Cummings, Jr., Vice President of CIRCUIT CITY STORES, INC., a Virginia corporation, on behalf of said corporation.

_____
Notary Public, State of Virginia