Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

            IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                     RICHMOND DIVISION

- - - - - - - - - - - - - - x
                           :
In re:                     :   Chapter 11
                           :
CIRCUIT CITY STORES, INC., :   Case No. 08-35653 (KRH)
et al.,                    :
                           :
            Debtors.       :   Jointly Administered
- - - - - - - - - - - - - - x

**MOTION FOR ORDERS UNDER BANKRUPTCY CODE SECTIONS 105, 363
AND 503 AND BANKRUPTCY RULES 2002 AND 6004
(I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF CERTAIN
REAL PROPERTY IN MORENO VALLEY, CALIFORNIA,
(B) AUTHORIZING SELLERS TO ENTER INTO AGREEMENT IN
CONNECTION THEREWITH SUBJECT TO HIGHER AND BETTER
PROPOSALS (C) APPROVING EXPENSE REIMBURSEMENT IN
CONNECTION THEREWITH (D) SETTING AUCTION AND SALE HEARING
DATES; (II) APPROVING SALE OF PROPERTY FREE AND CLEAR OF
LIENS; AND (III) AND GRANTING RELATED RELIEF**

            Circuit City Stores West Coast, Inc. (the

"Seller," and collectively with the debtors and debtors

in possession in the above-captioned jointly administered cases, the "Debtors")[1] hereby moves (the "Motion") for orders pursuant to sections 105, 363 and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (I)(a) approving the bidding procedures set forth herein and attached hereto as Exhibit A (the "Bidding Procedures") for the sale (the "Sale") of the Seller's real property located at 12530 Day Street in Moreno Valley, California, including all vested signage rights of the Seller in connection with such real property and the building located thereon (including, without limitation rights to signage granted to the Seller pursuant to that certain Development Agreement dated as of October 24, 2003 by and among Gateway Company,

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

L.C. and Seller) (the "Property") (b) authorizing the

Sellers to enter into Purchase and Sale Agreement (as

amended, the "Agreement"), dated as of May 15, 2009 by

and among the Seller and 99¢ Only Stores (the "Pur-

chaser"), a copy of which is attached hereto as Exhibit B,

subject to higher and better proposals, (c) approving the

Expense Reimbursement (as defined herein) in connection

therewith, and (d) scheduling auction and sale hearing

dates; (II) approving the Sale of the Property free and

clear of all interests; and (III) granting related relief

In support of this Motion, the Seller respectfully repre-

sents as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider the

Motion under 28 U.S.C. §§ 157 and 1334.  This is a core

proceeding under 28 U.S.C. § 157(b).  Venue of these

cases and the Motion in this district is proper under 28

U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief requested

here are Bankruptcy Code sections 105(a), 363 and 503 and

Bankruptcy Rules 2002 and 6004.

**BACKGROUND**

3.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores.

## RELIEF REQUESTED

7.    By this Motion, the Seller seeks approval
for the Sale of the Property to the Purchaser, subject to
additional competitive bidding pursuant to the proposed
Bidding Procedures.  The Seller seeks entry of two types
of relief.  First, at the omnibus hearing to be held on
July 23, 2009, substantially in the form attached hereto
as Exhibit C (the "Bidding Procedures Order") approving
the Bidding Procedures, entry into the Agreement and the
Expense Reimbursement.  Second, subject to the terms of
the Bidding Procedures Order, at the omnibus hearing to
be held on August 27, 2009, the Seller will seek entry of
an order substantially in the form attached hereto as Ex-
hibit D (the "Sale Approval Order") authorizing and ap-
proving the Sale of the Property to the Purchaser or to
the Successful Bidder, as the case may be.

8.    As more fully set forth below, after a
comprehensive strategic review, the Seller believes that
the Sale represents its best opportunity under the cir-
cumstances to maximize the value of the Property.  There-
fore, the Sale is in the best interests of its estate and
its stakeholders.

**BASIS FOR RELIEF**

**A.    Events Leading To The Sale.**

9.    In light of the facts forth above -- in particular, the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales -- the Seller has been left with various assets -- including the Property -- for which it has no remaining use.  In contrast, the sale of such assets, including the Sale of the Property, would result in significant proceeds for the Seller's estate and creditors.

10.   Since around the time of commencement of the going out of business sales, the Seller, along with its real estate advisor, DJM Realty, LLC ("DJM"), has been marketing the Property.  As a result of these marketing efforts, the Seller received various proposals to purchase the Property.  Upon reviewing these proposals, the Seller determined that the proposal submitted by the Purchaser was materially higher or otherwise better than the alternate proposals received.  Thus, the Seller elected to proceed with the Sale of the Property to the Purchaser.

**B.    The Agreement.**

11.  On May 15, 2009, the Seller entered into the Agreement[2] by and between the Seller and the Purchaser.

12.  Pursuant to the Agreement, the Seller would sell the Property to the Purchaser for $2.25 million (the "Purchase Price").

13.  The significant terms of the Agreement are as follows:[3]

(a)  <u>General Terms</u>.  The Purchaser would acquire the Property, consisting solely of the Seller's right, title and interest in and to the property located at 12530 Day Street, Moreno Valley, California, consisting of approximately 3.53 acres, and including (i) all rights and appurtenances pertaining to such land, (ii) all buildings, structures and other improvements on said land and (iii) electrical, mechanical, air conditioning and other fixtures attached thereto, (iv)  all vested signage rights of the Seller in connection with such real property and the building located thereon (including, without limitation rights to signage granted to the Seller pursuant to that certain Development Agreement dated as of October 24, 2003 by and among Gateway Company, L.C. and Seller), and (v) to the extent assignable, plans, specifications, permits, reports, development rights and title insurance as more fully described in Exhibit A to the Agreement through an asset sale.

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

[3]  In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of the Agreement are controlling.

(b) <u>Sale</u>.  The Property would be sold free and
clear of all liens, charges, pledges, security interests,
conditional sale agreements or other title retention
agreements, leases, mortgages, security interests, op-
tions, or other encumbrances (including the filing of, or
agreement to give, any financing statement under the Uni-
form Commercial Code of any jurisdiction) and any mone-
tary amounts which are secured by any lien (collectively,
the "Liens"), except for (i) liens for real property
taxes that are not yet due and payable, (ii) zoning ordi-
nances, building codes and other land use laws and appli-
cable governmental regulations, (iii) all covenants,
agreements, conditions, easements, restrictions and
rights, whether of record or otherwise (excluding, how-
ever, mortgages, deeds of trust, mechanics liens, tax
liens, judgment liens, any other liens securing monetary
amounts, leases, licenses, any other similar agreements
conveying possessory rights, purchase option rights,
rights of first refusal and any other similar rights of
purchase and (iv) any and all matters that would be shown
by a physical inspection of the Property (collectively,
the "Permitted Encumbrances").

(c) <u>Bankruptcy Court Approval</u>.  The Sale of
the Property would be subject to approval by this Court
and competitive bidding pursuant to the Bidding Proce-
dures.

(d) <u>Documentation</u>.  The Sale would be effected
pursuant to the Agreement and related documentation.

(e) <u>Purchase Price</u>.  The Purchase Price to be
paid by the Purchaser for the Property would be $2.25
million.

(f) <u>Deposit Escrow</u>.  In accordance with the
Agreement, the Purchaser has previously placed $225,000
into an escrow account.  Upon closing of the Sale (the
"Closing"), or if the Agreement is terminated prior to
Closing because of the Purchaser's breach of the Agree-
ment (on the terms as provided in the Agreement), the
Seller would be entitled to the funds in the escrow ac-

count (the "Deposit").  Retention of the Deposit would
constitute the Seller's sole recourse in such event.

      (g)  <u>Representations And Warranties</u>.  Pursuant
to the Agreement, the Seller would provide certain stan-
dard representations and warranties relating to the Sale
of the Property and the Purchaser would provide represen-
tations and warranties generally standard in a transac-
tion of this type.  The representations and warranties of
the Purchaser survive the Closing or the termination of
the Agreement.  The representations and warranties of the
Seller shall expire and be extinguished at the closing.

      (h)  <u>Termination</u>.  The Agreement could be ter-
minated prior to Closing in the following circumstances:
(i) by Purchaser, if an action is initiated to take any
material portion of the Property by eminent domain pro-
ceedings, (ii) by Purchaser, in the event of damage to
the Property exceeding $200,000 occurring during the pe-
riod after the date of the Agreement and prior to Closing,
if Seller does not repair such damage, (iii) by Purchaser,
in the event that Seller shall fail to consummate the
transactions contemplated by the Agreement, (iv) by
Seller, in the event that Purchaser shall fail to comply
with the Agreement and (v) by Seller, in order to permit
Seller to accept a higher or better offer for the Prop-
erty pursuant to the Bidding Procedures.

**D.**    **Expense Reimbursement.**

      14.  In the event the Purchaser is not permit-

ted to purchase the Property pursuant to the sale process

outlined in this Motion, in addition to the Deposit being

disbursed to the Purchaser, the Seller has agreed to re-

imburse the Purchaser for its reasonable out-of-pocket

third-party due diligence expenses and reasonable attor-

neys' fees and costs incurred in connection with the

Agreement (the "Expense Reimbursement").  Under the
Agreement, the Expense Reimbursement would not exceed
thirty-five thousand dollars ($35,000) in the aggregate
amount.  The Purchaser has expended, and likely will con-
tinue to expend, considerable time, money, and energy
pursuing the Sale and has engaged in arm's length and
good faith negotiations regarding a possible sale of the
Property.  The Agreement is the culmination of these ef-
forts.

15.   In recognition of this expenditure of
time, energy, and resources, the Seller has agreed to the
Expense Reimbursement.  Specifically, the Agreement pro-
vides for, and the Seller respectfully requests that the
Sale Order approve, the Expense Reimbursement payable by
the Seller to the Purchaser in an amount not to exceed
$35,000 if the Purchaser is unable to purchaser the Prop-
erty pursuant to the sale process outlined in this Mo-
tion.

16.   The Seller believes that the proposed Ex-
pense Reimbursement is fair and reasonable in view of
(a) the analysis, due diligence investigation, and nego-
tiation undertaken by the Purchaser in connection with

the Sale and (b) the fact that the Purchaser's efforts
would maximize the value of the Property for the benefit
of all stakeholders, whether as a result of consummating
the Sale pursuant to the Agreement or by generating a
higher or otherwise better offer.

17.   The Purchaser is unwilling to keep open
its offer to purchase the Property under the terms of the
Agreement unless this Court authorizes payment of the Ex-
pense Reimbursement.  Thus, absent entry of the Bidding
Procedures Order with approval of the Expense Reimburse-
ment, the Seller may lose the opportunity to obtain what
it believes to be the highest or otherwise best offer for
the Property.  And, as described below, the Agreement is
subject to higher or otherwise better proposals.  Approv-
ing the Expense Reimbursement will thus commit the Pur-
chaser to purchase the Property under the Agreement, and
the Agreement would serve as a floor for any additional
bidding for the Property at a fair and reasonable pur-
chase price.

18.   Payment of the Expense Reimbursement will
not diminish the Seller's estate.  The Seller would not
expect to pay the Expense Reimbursement unless it does so

11

to accept an alternate proposal, which would result in even greater value to the Seller's estate and its stakeholders.  This is particularly true given the Initial Minimum Overbid requirement (as defined below), which ensures that other proposals represent higher or otherwise better offers for the Property taking into account payment of the Expense Reimbursement.  The Seller thus requests that this Court authorize payment of the Expense Reimbursement pursuant to the terms and conditions of the Agreement.

**D.   The Bidding Procedures.**

19.  The Sale of the Property would be subject to higher or otherwise better offers pursuant to the Bidding Procedures.  The Seller believes that the proposed structure of the Bidding Procedures is the one most likely to maximize the realizable value of the Property for the benefit of the Seller's estate, its stakeholders, and other interested parties.  Accordingly, the Seller seeks approval of the Bidding Procedures for the Sale of the Property.

20.  The Bidding Procedures describe, among other things, the asset available for sale, the manner in

which bidders and bids become "qualified," the conduct of

any subsequent Auction, the ultimate selection of the

Successful Bidder, and this Court's approval thereof (the

"Bidding Process").

21.   The material terms of the proposed Bidding

Procedures are as follows:[4]

(a)   <u>Assets To Be Sold</u>:   The asset proposed
to be sold is the Property.

<u>Qualified Bids</u>:   To ensure that only bidders
with a serious interest in the purchase of the Property
participate in the Bidding Process, the Seller would only
consider the "Qualified Bids" of "Qualified Bidders".   To
be considered a "Qualified Bid" for purposes of the Auc-
tion the person or entity submitting the bid would be re-
quired to submit an offer by the Bid Deadline (as defined
herein) that includes: (i) an executed copy of the Agree-
ment marked to show those amendments and modifications to
the Agreement that the Qualified Bidder proposes, includ-
ing modifications to the Purchase Price, which price must
be at least $2,350,000(such modified Agreement, a "Marked
Agreement"), (ii) a statement that the bid does not pro-
vide for any due diligence period or property inspection
period, (iii) the potential bidder and the officer(s) or
authorized agent(s) who will appear on behalf of such
bidder, (iv) evidence, satisfactory to the Seller in its
reasonable discretion (after consultation with represen-
tatives the Creditors' Committee), of the bidder's finan-
cial wherewithal, (v) a statement that the bid shall not
be conditioned on the outcome of unperformed due dili-
gence by the bidder or any financing contingency, (vi) a

---

[4]   In the event of any conflict between the Bidding Procedures and
this summary of the Bidding Procedures, the provisions of the
Bidding Procedures control.   Capitalized terms used but not oth-
erwise defined in this summary have the meanings ascribed to them
in the Bidding Procedures.

good faith deposit (the "Good Faith Deposit") equal to
the greater of (x) 10% of the cash component of the pur-
chase price or (y) $235,000, (vii) an acknowledgement
that the bidder's offer is irrevocable until two (2)
business days after the Closing of the Sale of the Prop-
erty; and (vii) an acknowledgement that, in the event the
bidder is the Alternate Bidder, the bidder will proceed
with the purchase of the Property pursuant to the terms
the Marked Agreement, as may be modified at the Auction.

       (b)  <u>Due Diligence</u>:  The Seller shall have
the right to hold a one-day "open house" event for any
interested parties to physically examine the Property and
improvements.  Each Qualified Bidder would be deemed to
acknowledge and represent that it has had an opportunity
to conduct any and all due diligence regarding the Prop-
erty prior to making its offer, that it has relied solely
upon its own independent review, investigation, and/or
inspection of any documents and/or the Property in making
its bid.  However, as stated above, to be considered a
Qualified Bid, a bid must contain a statement that the
bid does not provide for any due diligence period or
property inspection period.

       (c)  <u>Bid Deadline</u>:  Any person or entity
wishing to participate in the Auction would be required
to submit a Qualified Bid on or before August 13, 2009 at
5:00 p.m. (Eastern) (the "Bid Deadline").  The Seller
could extend the Bid Deadline (after consultation with
representatives of the Creditors' Committee) to a date
and time that is not later than 12:00 midnight on August
19, 2009, and could seek Court authority to extend the
Bid Deadline beyond such date.

       (d)  <u>Conduct Of Auction</u>: If the Seller re-
ceives at least one Qualified Bid in addition to that of
the Purchaser, it would conduct an auction of the Prop-
erty (the "Auction") at the offices of Skadden, Arps,
Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box
636, Wilmington, DE 19801, tentatively commencing at
10:00 a.m. (Eastern) on August 20, 2009.  The Seller
could extend the commencement of the Auction (after con-
sultation with representatives of the Creditors' Commit-

tee) to a date that is not later than August 24, 2009,
and could seek Court authority to extend the Bid Deadline
beyond such date.  The Auction would be conducted in ac-
cordance with the following procedures, among others:
(i) participation in the Auction would be limited to the
Purchaser and the Qualified Bidder(s), (ii) prior to the
commencement of the Auction, the Seller would advise the
Purchaser and all Qualified Bidders of what it believes
to be the highest or otherwise best Qualified Bid re-
ceived and (iii) bidding would begin initially with the
highest or otherwise best Qualified Bid and subsequently
continue in such minimum increments as the Seller, after
consultation with representatives of the Creditors' Com-
mittee, would determine at the Auction, provided, how-
ever, such minimum increments would not exceed $50,000.

       (e)  <u>Selection Of Successful Bid</u>:  As soon
as practicable after the conclusion of the Auction, the
Seller would review each Qualified Bid and identify the
highest or otherwise best offer(s) for the Property (the
"Successful Bid," and the bidder making such bid, the
"Successful Bidder").  The Seller would sell the Property
to the Successful Bidder for the highest or otherwise
best Qualified Bid upon the approval of such Qualified
Bid by the Bankruptcy Court after the Sale Hearing.

       (f)  <u>Sale Hearing</u>: The Sale Hearing would
be held on August 27, 2009, at 11:00 a.m. (Eastern), but
could be adjourned or rescheduled in the Seller's sole
discretion, subject to Bankruptcy Court approval, as nec-
essary, without further notice other than an announcement
of the adjourned date at the Sale Hearing.  If no Quali-
fied Bids other than that of the Purchaser are received,
the Seller would proceed with the Sale to the Purchaser
following entry of the Sale Approval Order.  If the
Seller receives additional Qualified Bids, then at the
Sale Hearing, the Seller would seek approval of the Suc-
cessful Bid, as well as the second highest or best Quali-
fied Bid (the "Alternate Bid," and such bidder, the "Al-
ternate Bidder").  A bid would not be deemed accepted by
the Seller unless and until approved by the Court.  Fol-
lowing approval of the Sale to the Successful Bidder, if
the Successful Bidder fails to consummate the sale for

specified reasons, then the Alternate Bid would be deemed
to be the Successful Bid and the Seller would be permit-
ted to effectuate a Sale to the Alternate Bidder without
further order of the Court.

        (g) <u>Return Of Good Faith Deposits</u>:  The
Good Faith Deposits of all Qualified Bidders (except for
the Successful Bidder) would be held and all Qualified
Bids would remain open until two business days following
the Closing of the Sale (the "Return Date").  Notwith-
standing the foregoing, the Good Faith Deposit submitted
by the Successful Bidder, together with interest thereon,
if any, would be applied against the payment of the Pur-
chase Price upon Closing of the Sale to the Successful
Bidder.  If a Successful Bidder failed to consummate an
approved sale, the Seller would not have any obligation
to return such Good Faith Deposit and such deposit would
irrevocably become property of the Seller.  Subject to
the preceding sentence, on the Return Date, the Seller
would return the Good Faith Deposits of all other Quali-
fied Bidders, together with the accrued interest thereon,
if any.

        (h) <u>Reservation Of Rights</u>:  The Seller
would reserve the right to (i) determine in its reason-
able discretion (after consultation with representatives
of the Creditors' Committee) which offer is the highest
or otherwise best offer, (ii) reject at any time prior to
the Closing of a Sale, without liability, any offer that
the Seller in its reasonable discretion (after consulta-
tion with representatives of the Creditors' Committee)
deems to be (x) inadequate or insufficient, (y) not in
conformity with the requirements of the Bidding Proce-
dures or applicable law or (z) contrary to the best in-
terests of the Seller and its estate and (iii) waive the
requirements of any of the Bidding Procedures with re-
spect to a potential or Qualified Bidder if the Seller
determines in its business judgment (after consultation
with representatives of the Creditors' Committee) it is
in the best interests of its estate and creditors

22.  Objections to the Bidding Procedures, if any, should be filed and served no later than 4:00 p.m. (Eastern) on July 16, 2009.  The Debtors request that the Court order that objections to the Sale, if any, be filed and served no later than 4:00 p.m. (Eastern) on August 21, 2009.

## APPLICABLE AUTHORITY

### I.    THE BIDDING PROCEDURES ARE REASONABLE AND APPROPRIATE.

23.  Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

24.  The Seller believes that the Bidding Procedures are appropriate under Bankruptcy Code sections 105 and 363 to ensure that the bidding and auction process is fair and reasonable and will yield the maximum value for its estate and creditors.  The Bidding Proce-

dures permit the Seller to maximize the value of the
Property.  In addition, the Bidding Procedures set dead-
lines for conducting the Auction and holding the Sale
Hearing with respect to the transaction proposed herein.

25.  The Seller presently faces the possibility
of continued deterioration of its assets, including the
Property.  Thus, the Seller believes that it must be per-
mitted to conduct the Sale process in the manner and on
the timetable set forth herein and in the Bidding Proce-
dures.

26.  Accordingly, the Seller believes the Court
should approve the Bidding Procedures, including the
dates established therein for, <u>inter alia</u>, the submission
of bids, the Auction and the Sale Hearing.  Similar pro-
cedures have been previously approved by this Court in
this and other cases.  <u>See</u>, <u>e.g.</u>, <u>In re Circuit City
Stores, Inc.</u>, Case No. 08-35653 (KRH)(Bankr. E.D. Va.
Mar. 3, 2009) (D.I. 2401); <u>In re The Rowe Companies</u>, Case
No. 06-11142 (SSM) (Bankr. E.D. Va. Dec. 20, 2006); <u>In re
Ceyoniq, Inc.</u>, Case No. 02-85887 (RGM) (Bankr. E.D. Va.
Jan. 30, 2003).

II.  **APPROVAL OF THE SALE OF THE PROPERTY IS WARRANTED
     UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

27.  As set forth above, Bankruptcy Code sec-
tion 363(b)(1) authorizes a  trustee to "use, sell, or
lease" property of the estate with the Court's approval.
11 U.S.C. § 363(b)(1).  Assets of the Debtors may be sold
outside of the ordinary course of business, pursuant to
Bankruptcy Code section 363(b)(1), if a sound business
purpose exists for doing so.  In re WBQ P'ship, 189 B.R.
97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus.,
Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see
also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836
(Bankr. E.D. Va. 1997).

28.  To satisfy the "sound business purpose
test," the debtor must demonstrate that (1) a sound busi-
ness reason or emergency justifies a pre-confirmation
sale; (2) the sale was proposed in good faith; (3) the
purchase price is fair and reasonable; and (4) adequate
and reasonable notice of the sale has been provided.  In
re WBQ P'ship, 189 B.R. at 102.

29.  Based upon the results of their analysis,
the Seller's management and advisors have concluded that

the Sale of the Property in accordance with the Bidding
Procedures will maximize recoveries to the estate and
prevent further deterioration of the value of the Prop-
erty.  Furthermore, by selling the Property, the Seller
will be able to minimize administrative expenses associ-
ated with maintaining the Property.  Maximizing asset
value, preventing further deterioration, and reducing
costs to the estate are sound business purposes that war-
rant authorizing the proposed Sale.

      30.  The Sale of the Property will be subject
to competing bids, thereby enhancing the Seller's ability
to receive the highest or otherwise best value for the
Property.  Consequently, the fairness and reasonableness
of the consideration to be received by the Debtors will
ultimately be demonstrated by a "market check" through
the auction process, which is the best means for estab-
lishing whether a fair and reasonable price is being
paid.

      31.  Moreover, all creditors and parties in in-
terest will receive adequate notice of the Auction and
the Hearing as set forth below.  In light of the circum-
stances, such notice is reasonably calculated to provide

timely and adequate notice to the Debtors' major creditor
constituencies, those parties most interested in these
cases, those parties potentially interested in bidding on
the Property and others whose interests are potentially
implicated by the proposed Sale.

**III. THE EXPENSE REIMBURSEMENT REQUESTED HEREIN IS
REASONABLE AND SHOULD BE APPROVED.**

32.    In connection with Sale of the Property,
the Court should authorize the Seller to pay the Expense
Reimbursement.

33.    Agreements to provide expense reimburse-
ments and other bidding incentives are designed to com-
pensate a potential acquirer who serves as a catalyst
that may attract higher and better offers, and have been
approved in bankruptcy to encourage bidding.  See In re
Ryan, 261 B.R. 867, 870 (Bankr. E.D. Va. 2001).  Expense
reimbursements can be advantageous to both buyers and
sellers because they encourage bidding to ensure that
sellers receive the highest or otherwise best offer while
compensating the buyer for the risk of being outbid.  See
id.

34.   Expense reimbursements are allowed as an administrative expense claim against the estate if they satisfy the standard of section 503(b)(1).  In re Tropea, 352 B.R. 766, 768 (Bankr. N.D.W.Va. 2006).  Thus, the fee must reflect the actual and necessary cost of preserving the estate.  See 11 U.S.C. § 503(b)(1).  See also In re Tropea, 352 B.R. at 768.  In Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit explained how the section 503(b)(1) standard applied to expense reimbursements. The Third Circuit Court of Appeals held that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of Bankruptcy Code section 503(b) govern in the bankruptcy context.  Accordingly, to be approved, bidding incentives must provide some post-petition benefit to the debtor's estate.  See id. at 533; see also In re Lamb, 2002 WL 31508913 (Bankr. D. Md. 2002) (implicitly adopting the administrative expense standard set forth in O'Brien).

35.   The O'Brien Court identified at least two
instances in which bidding incentives may provide benefit
to the estate.   First, benefit may be found if "assurance
of a break-up fee promoted more competitive bidding, such
as by inducing a bid that otherwise would not have been
made and without which bidding would have been limited."
Id. at 537.   Second, when the availability of bidding in-
centives induce a bidder to research the value of the
debtor and submit a bid that serves as a minimum or floor
bid on which other bidders can rely, "the bidder may have
provided a benefit to the estate by increasing the like-
lihood that the price at which the [asset] is sold will
reflect its true worth."   Id.

36.   Here, the Seller seeks authority to pay
the Expense Reimbursement in the event that the Purchaser
is not ultimately the Successful Bidder.   The proposed
Expense Reimbursement is appropriate under Bankruptcy
Code section 503 as it is fair and reasonable in amount,
particularly in view of the efforts that have been and
will have to be expended by the Purchaser.   Moreover, the
Agreement, including the Expense Reimbursement provided
for therein, will enable the Seller to secure an adequate

floor for an auction and, thus, ensure that competing
bids be materially higher or otherwise better than the
Purchase Price pursuant to the Agreement (as incorporated
in the Initial Minimum Overbid requirement), a clear
benefit to the Seller's estate.

37.    In sum, the Seller's ability to offer the
Expense Reimbursement enables it to ensure the Sale of
the Property to a contractually-committed bidder at a
price that it believes to be fair while, at the same
time, providing the Seller with the potential of even
greater benefit to the estates.

38.    Accordingly, the Expense Reimbursement
should be approved.

IV.    **THE PURCHASER OR ANY OTHER SUCCESSFUL BIDDER IS A
GOOD FAITH PURCHASER PURSUANT TO    SECTION 363(m) OF
THE BANKRUPTCY CODE AND THE TRANS    ACTION
CONTEMPLATED BY THE AGREEMENT SHOULD CARRY THE
PROTECTIONS OF SECTION 363(n) OF THE BANKRUPTCY
CODE.**

39.    Section 363(m) of the Bankruptcy Code pro-
vides:

> The reversal or modification on appeal of
> an authorization under subsection (b) or
> (c) of this section of a sale or lease of
> property does not affect the validity of a
> sale or lease under such authorization to
> an entity that purchased or leased such

> property in good faith, whether or not
> such entity knew of the pendency of the
> appeal, unless such authorization and such
> sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not

define "good faith," the Fourth Circuit Court of Appeals

has "adopt[ed] the traditional equitable definition that

has been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and with-

out notice of adverse claims.'" Willemain v. Kivitz, 764

F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

40.  Section 363(n) of the Bankruptcy Code fur-

ther provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders at
> such sale, or may recover from a party to
> such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys' fees,
> or expenses incurred in avoiding such sale
> or recovering such amount.

41.  The Seller submits, and will present evi-

dence at the Sale Hearing, that the Agreement reflects an

intensely negotiated, arm's length transaction.  Through-

out the negotiations, the Purchaser has at all times

acted in good faith.  Moreover, to the extent that the

assets are sold to a Successful Bidder, it will be be-
cause of a well-planned competitive process and intense
negotiations at arm's length to be conducted at an Auc-
tion.  As a result of the foregoing, the Seller requests
that the Court make a finding that the Purchase Price to
be paid by the Purchaser or the Successful Bidder consti-
tutes reasonably equivalent value and fair consideration
under any applicable law.

      42.  The Seller further requests that this
Court make a finding that the Purchaser or the Successful
Bidder, as the case may be, has purchased the Property in
good faith within the meaning of section 363(m) of the
Bankruptcy Code.  Further, the Seller requests that this
Court make a finding that the purchase agreement reached
as a result of the Bidding Procedures necessarily will
comprise an arm's length, intensely-negotiated transac-
tion entitled to the protections of section 363(m) of the
Bankruptcy Code.  Because the Seller has shown that the
Purchaser's or Successful Bidder's bid is not the product
of fraud or collusion between the Purchaser or Successful
Bidder and other bidders or the trustee, or an attempt to
take grossly unfair advantage of other bidders, the

Seller further requests that this Court make a finding

that the transactions contemplated by the Agreement are

not avoidable under section 363(n) of the Bankruptcy

Code.

**V.    THE SALE OF THE PROPERTY FREE AND CLEAR OF CLAIMS,
        LIENS, AND ENCUMBRANCES SHOULD BE AUTHORIZED UNDER
        BANKRUPTCY CODE SECTION 363(f).**

43.    To facilitate a Sale of the Property, the

Seller requests authorization to sell the Property free

and clear of any and all Liens except the Permitted En-

cumbrances.

44.    Under section 363(f) of the Bankruptcy

Code, a debtor in possession may sell property free and

clear of any interest in such property if, among other

things:

> (1) applicable nonbankruptcy law permits
> sale of such property free and clear of
> such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price
> at which such property is sold is greater
> than the aggregate value of all liens on
> such property;
>
> (4) such interest is in bona fide    dis-
> pute; or

> (5) such entity could be compelled, in a
> legal or equitable proceeding, to accept a
> money satisfaction of such interest.

11 U.S.C. § 363(f).

45.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

46.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. W. Va. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens.").  Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace.  See In re TWA, Inc.,

2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27,
2001).

47.   Accordingly, this Court should authorize
the Seller to sell the Property free and clear of Liens,
except the Permitted Encumbrances, with any such Liens
attaching to the net proceeds of the Sale of the Property
in the same order and priority as they exist against the
Property and in accordance with the terms and provisions
of the Debtors' post-petition financing facility.

**VI.   WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY
RULE 6004 SHOULD BE WAIVED FOR ANY ORDER APPROVING
THE SALE OF THE PROPERTY.**

48.   Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of prop-
erty is stayed until the expiration of 10 days after en-
try of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).

49.   The Seller requests that the Court waive
the ten-day stay of Bankruptcy Rule 6004 with respect to
the Sale of the Property following the entry of the Sale
Order.  By waiving such requirements, the Seller and the
Purchaser or the Successful Bidder, as applicable, will
be able to immediately close the Sale, which will result

29

in immediate proceeds to the Seller's estate as well as immediate cessation of accrual of further administrative expenses related to the Property.

### NOTICE

50.   Notice of this Motion has been provided to those parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order"), as well as (a) all entities known to have expressed an interest in a transaction regarding the Property during the past three (3) months; (b) all entities known to have an interest in any of the Property, including Gateway Company, L.C.; and (c) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested through the Motion.  Notice of the entry of the Order will be provided to the same parties.  The Debtors submit that, under the circumstances, no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

51.   Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Seller requests that the requirement that all motions be accompanied by a separate memorandum of law be waived.

## NO PRIOR REQUEST

52.   No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Seller respectfully requests
that the Court enter an Order, substantially in the form
annexed hereto, granting the relief requested herein and
such other and further relief as may be just and proper.

Dated: July 2, 2009
      Richmond, Virginia     SKADDEN, ARPS, SLATE, MEAGHER &
                                        FLOM, LLP
                                        Gregg M. Galardi, Esq.
                                        Ian S. Fredericks, Esq.
                                        P.O. Box 636
                                        Wilmington, Delaware 19899-0636
                                        (302) 651-3000

                                            - and -

                                        SKADDEN, ARPS, SLATE, MEAGHER &
                                        FLOM, LLP
                                        Chris L. Dickerson, Esq.
                                        155 North Wacker Drive
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                          - and -

                                        MCGUIREWOODS LLP

                                        __/s/ Douglas M. Foley_____
                                        Dion W. Hayes (VSB No. 34304)
                                        Douglas M. Foley (VSB No. 34364)
                                        One James Center
                                        901 E. Cary Street
                                        Richmond, Virginia 23219
                                        (804) 775-1000

                                        Counsel for Debtors and Debtors
                                        in Possession