# EXHIBIT A

(Bidding Procedures)

**CIRCUIT CITY STORES WEST COAST, INC.**
**MORENO VALLEY BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of the interest held by Circuit City Stores West Coast, Inc. (the "Seller" and together with its affiliated chapter 11 debtors and debtors in possession, the "Debtors") in the real property, comprising approximately 3.5 acres, located at 12530 Day Street, Moreno Valley, California, including rights to signage granted to the Seller pursuant to that certain Development Agreement dated as of October 24, 2003 by and between Gateway Company, L.C. and Seller (the "Property"). On May 15, 2009, the Seller executed that certain Purchase And Sale Agreement (together with any amendments thereto, the "Agreement") with 99¢ Only Stores (the "Purchaser"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and certain other closing conditions.

On July 1, 2009, the Seller filed its Motion For Orders Under Bankruptcy Code Sections 105 And 363 And Bankruptcy Rules 2002 And 6004 (I)(A) Approving Bidding Procedures For the Sale Of Certain Real Property Located In Moreno Valley, California, (B) Authorizing Seller To Enter Agreement In Connection Therewith, (C) Approving Expense Reimbursement In Connection Therewith, (D) Setting Auction And Sale Hearing Dates; (II) Approving Sale Of Property Located Free And Clear Of Liens; and (III) Granting Related Relief (the "Sale Motion"). On July 23, 2009, the Bankruptcy Court entered an Order Under Bankruptcy Code Sections 105 And 363 And Bankruptcy Rules 2002 And 6004 (I) Approving Bidding Procedures For Sale Of Certain Real Property, (II) Authorizing Seller To Enter Into Agreement In Connection Therewith, (III) Approving Expense Reimbursement In Connection Therewith and (IV) Setting Auction And Sale Hearing Dates (the "Bidding Procedures Order").[1]

The Bidding Procedures Order set (i) August 27, 2009 or (ii) such later date as determined by the Bankruptcy Court as the date when the Bankruptcy Court will conduct a hearing (the "Sale

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning assigned to it in the Sale Motion or the Bidding Procedures Order.

Hearing") to authorize the Seller to sell its interest in the Property.

The Bidding Procedures set forth herein describe, among other things, the asset available for sale, the manner in which bids become Qualified Bids (as defined herein), the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein), and the Bankruptcy Court's approval thereof.  In the event that the Seller and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## ASSETS TO BE SOLD

The asset proposed to be sold is the Seller's interest in the Property.

## QUALIFIED BIDS

The Seller will consider all proposals for the Property.  However, only "Qualified Bidders," i.e., persons or entities submitting "Qualified Bids", may participate in the Auction.  To be considered a "Qualified Bid" for purposes of the Auction the person or entity submitting the bid must submit an offer by the Bid Deadline (as defined herein) that includes:

(a) an executed copy of the Agreement marked to show those amendments and modifications to the Agreement that the Qualified Bidder proposes, including modifications to the Purchase Price (as defined in the Agreement), which price must be at least $2,350,000 (such modified Agreement, a "Marked Agreement"),[2]

(b) the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder,

(c) evidence, satisfactory to the Seller in its reasonable discretion (after consultation with representatives of the Creditors' Committee), of the bidder's financial wherewithal,

---

[2] As noted below, no bid may provide for a due diligence or property inspection period after the Bid Deadline.  Thus, sections 4.2 and 4.3 of the Agreement shall be automatically deemed inapplicable, regardless of bidder's modifications thereto.  Any references to sections 4.2 or 4.3 or the Due Diligence Period contained in the Agreement will likewise be considered inapplicable.

2

(d) a statement that the bid shall not be conditioned on the outcome of unperformed due diligence by the bidder or any financing contingency,

(e) a good faith deposit (the "Good Faith Deposit"), in readily available funds, made payable to Circuit City Stores, Inc., equal to the greater of (i) 10% of the cash component of the purchase price or (ii) $235,000,

(f) an acknowledgement that the bidder's offer is irrevocable until two (2) business days after the closing of the Sale of the Property, and

(g) an acknowledgement that, in the event the bidder is the Alternate Bidder, the bidder will proceed with the purchase of the Property pursuant to the terms the Marked Agreement, as may be modified at the Auction.

## DUE DILIGENCE

The Seller will afford each interested party due diligence access to the Property prior to the Bid Deadline. Due diligence access may include access to data rooms, on-site inspections, and such other matters as a Qualified Bidder may request and as to which the Seller, in its sole discretion, may agree. The Seller may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither the Seller nor any of its affiliates (or any of its respective representatives) will be obligated to furnish any information relating to the Property to any person other than to Qualified Bidders which make an acceptable preliminary proposal.

A Qualified Bid may not be contingent upon, or otherwise provide for, the completion of any due diligence or property inspection or the expiration of any due diligence or property inspection period.

Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid.

3

**BID DEADLINE**

Any person or entity wishing to participate in the Auction must submit a Qualified Bid on or before **August 13, 2009 at 5:00 p.m. (Eastern)** (the "Bid Deadline") in writing, to:

(1) Circuit City Stores, Inc., 4951 Lake Brook Drive, Glen Allen, VA 23060, Attn: Jim Marcum (Jim_Marcum@ccswinddown.com);
(2) Counsel to the Seller, Gregg M. Galardi and Ian S. Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19801 (gregg.galardi@skadden.com and ian.fredericks@skadden.com);
(3) Counsel to the Creditors' Committee, Jeff Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California 90067-4100, (jpomerantz@pszjlaw.com); and
(4) DJM Realty Services, LLC, 445 Broadhollow Road, Suite 225, Melville, New York 11747, Attn: James Avallone, Fax: (631) 752-1231 (javallone@djmrealty.com).

The Seller shall announce the terms of the highest or otherwise best Qualified Bid, after consultation with representatives of the Creditors' Committee, on or before the commencement of the Auction.

**THE AUCTION**

In the event that the Seller receives any Qualified Bids, an auction with respect to the Sale (the "Auction") will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE 19801, tentatively commencing at **10:00 a.m. (Eastern) on August 20, 2009**. The Purchaser and any Qualified Bidder wishing to participate in the Auction must appear in person or by phone (as may be allowed by Seller in its sole discretion) and submit its highest or otherwise best bid at the Auction. Bidding at the Auction will continue until such time as the Purchaser and each Qualified Bidder has submitted its highest or otherwise best bid, at which point the Auction shall close.

**AUCTION PROCEDURES**

Only the Purchaser and any Qualified Bidders who have submitted Qualified Bids shall be eligible to participate at the Auction. During the Auction, bidding shall begin initially with

4

the highest or otherwise best Qualified Bid and subsequently continue in such minimum increments as the Seller, after consultation with representatives of the Creditors' Committee, shall determine at the Auction (such bids submitted at the Auction, the "Auction Bids") but not to exceed $50,000.

The Seller may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures or applicable law.

### SELECTION OF THE SUCCESSFUL BID

Upon conclusion of the Auction, the Seller, in consultation with representatives of the Creditors' Committee, shall (i) review each Auction Bid on the basis of financial and contractual terms and the factors relevant to the Sale and (ii) identify the highest or otherwise best offer (the "Successful Bid" and the bidder making such bid, the "Successful Bidder").

The Seller will sell the Property to the Successful Bidder according to the terms of the Successful Bid upon the approval of such bid by the Bankruptcy Court after the Sale Hearing.

The Seller's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Seller's acceptance of the bid. The Seller will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

### THE SALE HEARING

The Sale Hearing will be held before the Honorable Kevin R. Huennekens on **August 27, 2009, at 11:00 a.m. (Eastern)** in the United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219, but may be adjourned or rescheduled in the Seller's sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice than an announcement of the adjourned date at the Sale Hearing.

If the Seller does not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Seller will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a Sale to the Purchaser following entry of an order

5

approving such Sale (the "Sale Approval Order").  If the Seller does receive additional Qualified Bids, then at the Sale Hearing the Seller will seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and the bidder making such bid, the "Alternate Bidder").

Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale because of: (i) the failure of a condition precedent beyond the control of either the Seller or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder, then the Alternate Bid will be deemed to be the Successful Bid and the Seller will be permitted to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid without further order of the Bankruptcy Court.

## RETURN OF GOOD FAITH DEPOSIT

As noted above, all Qualified Bidders will be required to submit Good Faith Deposits with the Seller on or before the Bid Deadline.  The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) would be held and all Qualified Bids would remain open until two business days following the Closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit submitted by the Successful Bidder, together with interest thereon, if any, will be applied against the payment of the Purchase Price upon Closing of the Sale to the Successful Bidder.  If a Successful Bidder fails to consummate an approved sale, the Seller will not have any obligation to return such Good Faith Deposit and such deposit will irrevocably become property of the Seller.  Subject to the preceding sentence, on the Return Date, the Seller will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon, if any.

## RESERVATION OF RIGHTS

The Seller reserves the right to (i) determine in its reasonable discretion (after consultation with representatives of the Creditors' Committee) which offer is the highest or otherwise best offer, (ii) reject at any time prior to the closing of a Sale, without liability, any offer that the Seller in its reasonable discretion (after consultation with representatives of the Creditors' Committee) deems to be (x) inadequate or insufficient, (y) not in conformity with the requirements of these Bidding Procedures or applicable law or (z) contrary to the best interests of the Seller and its estate, (iii) waive the require-

ments of any of the Bidding Procedures with respect to a potential or Qualified Bidder if the Seller determines in its business judgment (after consultation with representatives of the Creditors' Committee) it is in the best interests of its estate and creditors; (iv) extend the Bid Deadline (after consultation with representatives of the Creditors' Committee) to a date and time that is not later than 12:00 midnight on August 19, 2009; (v) seek Court authority to extend the Bid Deadline beyond such date; (vi) change the date of the Auction (after consultation with representatives of the Creditors' Committee) to a date that is no later than September 22, 2009 and (vii) seek Court authority to change the date of any Auction beyond such date and time.

The selection of a Successful Bidder shall be within the reasonable business judgment of the Seller (after consultation with representatives of the Creditors' Committee) and subject to the approval of the Bankruptcy Court, and economic considerations shall not be the sole criteria upon which the Seller may base its decision.  In assessing whether a proposal constitutes a higher or otherwise better offer, the Seller shall consider, among other things, the net economic effect upon the Seller's estate.  Prior to presentation of a proposal to the Bankruptcy Court, the Seller, after consultation with representatives of the Creditors' Committee, may impose such other terms and conditions on Qualified Bidders as the Seller may determine to be in the best interests of the Seller, its estate, creditors, and other parties in interest.