**EXHIBIT B**

(Agreement)

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of May 15, 2009, is made by and between CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("Seller"), and 99¢ Only Stores, a California corporation ("Purchaser").

## RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    Purchase and Sale.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to the property located at 12530 Day Street, Moreno Valley, California, comprising approximately 3.53 acres, and being more particularly described on Exhibit A attached hereto and made a part hereof, together with (i) all the rights and appurtenances pertaining to such land, (ii) all buildings (including a building containing approximately 33,970 square feet), structures, and other improvements on said land, (iii) electrical, mechanical, air conditioning and other fixtures attached thereto, (iv) to the extent assignable, plans, specifications, permits, reports, development rights, and title insurance pertaining to such land, and (v) all other personal property situated on such land or in such buildings on the Closing Date (herein collectively called the "Property"); provided, however, the Property shall not include any lifts or racking located in the buildings, if any (the "Excluded FF&E"), which shall be excluded from the sale. Seller shall remove the Excluded FF&E prior to Closing and repair all material damage caused thereby, failing which such Excluded FF&E shall be deemed abandoned and become the property of Purchaser. For purposes of this Agreement, the "Effective Date" shall mean and refer to the date on which this Agreement is signed by both Purchaser and Seller, as indicated on the signature page hereto.

2.    PURCHASE PRICE

2.1    Purchase Price.    The purchase price (the "Purchase Price") for the Property shall be TWO MILLION TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS

1

($2,250,000.00). The Purchase Price, less the Deposit, shall be paid into the Escrow Agent's escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by the Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

3.    DEPOSIT

        3.1    Deposit.        Within two (2) business days after the Effective Date, Purchaser shall deliver to Stewart Title of California (the "Escrow Agent" and "Title Company"), 16830 Ventura Boulevard, Suite M, Encino, California 91436, Attention: Andrea Mendoza Telephone: (818) 906-5300, Fax: (818) 906-5310, Email: AMendoza@stewart.com, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to NINETY-NINE THOUSAND NINE HUNDRED NINETY NINE AND 99/100 DOLLARS ($99,999.99) (which amount, together with the funds delivered pursuant to the next sentence of this Section 3.1 and all interest accrued thereon, is herein called the "Deposit") to be held by the Escrow Agent in an interest bearing money market account in a federally insured financial institution in the Los Angeles, California metropolitan area (or in such other interest-bearing account or investment as the parties hereto shall mutually direct) (the "Escrow Account"). Within two (2) business days after expiration of the Due Diligence Period (unless Purchaser elects or is deemed to have elected to terminate this Agreement pursuant to Section 4.2 or Section 4.3 hereof), Purchaser shall deliver to Escrow Agent, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to an additional ONE HUNDRED TWENTY-FIVE THOUSAND AND 01/100 DOLLARS ($125,000.01), which amount shall be deemed part of the Deposit and shall be held in the Escrow Account, bringing the total Deposit to TWO HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($225,000.00). The Deposit shall be held in the Escrow Account.

        3.2    Application of Deposit.        If the sale of the Property is consummated under this Agreement, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price. If Purchaser terminates this Agreement in accordance with Section 4.2, Section 4.3, Section 7.1, Section 7.2, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, the Deposit shall be returned promptly to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations"). If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, the Deposit shall be retained by Seller as liquidated damages pursuant to Section 8.2 and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time Purchaser's notice to terminate this Agreement is given, provided that Purchaser shall not have any obligation to deliver (i) any survey prepared for Purchaser unless Seller reimburses Purchaser for the cost thereof, (ii) any Reports if this Agreement is terminated due to Seller's breach or default, (iii) any Report if the written contract which Purchaser entered into with the consultant who prepared such Report specifically forbids dissemination thereof to others, and/or (iv) any items which constitute attorney's work product.

2

market or financial studies, or other proprietary or privileged matters.  Notwithstanding anything to the contrary in this Agreement, Purchaser makes no representations or warranties of any kind whatsoever to Seller as to the accuracy or completeness of the Reports delivered to Seller, and Purchaser shall not have any liability or responsibility to Seller with respect to the accuracy or completeness of any such Reports.  The obligations to deliver the Reports shall survive the termination of this Agreement.  All interest earned on the Deposit shall be reported to the Internal Revenue Service as income of Purchaser and Purchaser shall promptly execute all forms reasonably requested by the Escrow Agent regarding such interest.

4.    ITEMS DELIVERED TO PURCHASER

4.1    Items Delivered.    Seller has delivered or will deliver to Purchaser, within three (3) business days following opening of escrow with the Escrow Agent, certain information with respect to the Property, which may include, without limitation, title reports, environmental and engineering reports and real property surveys, but only to the extent Seller has reasonable access to and possession of such information. In addition, Seller will authorize Purchaser, at no cost to Seller, to seek information regarding permits and approvals from applicable governmental agencies as Purchaser may request in connection with Purchaser's intended use of the Property and to discuss the possibility of obtaining permits and approvals from the applicable governmental agencies, provided that the entire cost and liability associated therewith shall be at Purchaser's sole cost, and so long as Purchaser does not tender any applications and/or seek any written approvals prior to Closing.  The provisions of this Section 4.1 shall survive the Closing or any termination hereof.

4.2    Title Examination.    Purchaser shall have the right to have Seller's title to the Property examined by Title Company and shall give written notice to Seller within thirty (30) days from and after the Effective Date (the "Due Diligence Period") of any objection thereto; provided, however, Seller shall have no obligation to satisfy any such objections, except that Seller shall remove, on or before the Closing, all monetary liens affecting the Property other than non-delinquent real property taxes and non-delinquent assessments.  Purchaser must elect, on or before the expiration of the Due Diligence Period, one of the following: (i) to waive any such objections that Seller has not agreed to satisfy at or prior to the Closing and to close the transaction in accordance with the terms of this Agreement; or (ii) to terminate this Agreement, in which event Escrow Agent shall promptly refund the Deposit to Purchaser as Purchaser's sole and exclusive remedy and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations; provided, further, if Purchaser does not send a written notice of waiver of title objections prior to the expiration of the Due Diligence Period (which notice may, notwithstanding anything to the contrary in this Agreement, be delivered by facsimile and such notice shall be deemed delivered upon confirmed receipt of facsimile transmission by Seller's counsel, provided that Purchaser shall also send a copy of such notice by one of the other delivery methods set forth below in Section 10.1), then Purchaser shall be deemed to have elected to terminate this Agreement, in which event Escrow Agent shall promptly refund the Deposit to Purchaser as Purchaser's sole and exclusive remedy and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations.

3

4.3    Property Inspection.  Purchaser shall have through the last day of the Due Diligence Period to determine whether, in Purchaser's sole and absolute discretion, the Property is acceptable to Purchaser.   Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines that the Property is not acceptable for any reason, in which event Escrow Agent shall promptly return the Deposit to Purchaser and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations.  If Purchaser does not give a notice waiving its due diligence contingency pursuant to Section 4.2 and this Section 4.3 at or prior to 5 p.m. (Pacific Time) on the last day of the Due Diligence Period, then Purchaser shall be deemed to have elected to terminate this Agreement, in which event Escrow Agent shall promptly refund the Deposit to Purchaser as Purchaser's sole and exclusive remedy and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations.  Notwithstanding anything to the contrary in this Agreement, Purchaser may deliver its due diligence contingency waiver notice by facsimile and such notice shall be deemed delivered upon confirmed receipt of facsimile transmission by Seller's counsel (provided that Purchaser shall also send a copy of such notice by one of the other delivery methods set forth below in Section 10.1).

On and subject to the conditions set out in this Section 4.3, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, architectural, engineering, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense.  If any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test.  Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably.  Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors; provided, however, in no event shall the foregoing indemnity, defense, protection and hold harmless obligations apply to any claim, loss, damage, liability, injury or damage arising or resulting from any of the following:  (a) acts or omissions of Seller or its agents, employees or contractors; and/or (b) the mere discovery of matters, facts or conditions related to or affecting the Property during Purchaser's investigation of the Property, including, but not limited to, any diminution in value in the Property arising therefrom, latent defects in the Property, and/or the release or spread of any Hazardous Materials which are discovered (but not deposited) on or under the Property by Purchaser.  Purchaser agrees to maintain (or to cause all parties entering the Property at Purchaser's instance to maintain) adequate and appropriate insurance to cover risks of the type

4

described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained and to add or cause Seller to be added as an additional insured on all such policies. Seller agrees that the following insurance maintained by Purchaser or parties entering the Property at Purchaser's instance shall constitute "adequate and appropriate insurance" for purposes of this Agreement: (i) a comprehensive general liability and property damage policy in an amount of not less than Three Million Dollars ($3,000,000), with a deductible (or self-insured retention) in an amount reasonably acceptable to Seller, covering the activities of Purchaser and its agents and consultants on the Property and naming Seller as an additional insured thereunder, and (ii) workers' compensation in accordance with the provisions of California law. This Section 4.3 shall survive the Closing or the termination of this Agreement, as applicable.

4.4     Reports.     All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property in the course of Purchaser's due diligence investigation, whether before or after the Effective Date (collectively, the "Reports"), shall be treated as confidential information and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, real estate broker, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein. Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of Purchaser's due diligence investigation, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom; provided, however, in no event shall the foregoing indemnity, defense, protection and hold harmless obligations apply to any claim, loss, damage, liability, injury or damage arising or resulting from any of the following: (a) acts or omissions of Seller or its agents, employees or contractors; and/or (b) the mere discovery of matters, facts or conditions related to or affecting the Property during Purchaser's investigation of the Property, including, but not limited to, any diminution in value in the Property arising therefrom, latent defects in the Property, and/or the release or spread of any Hazardous Materials which are discovered (but not deposited) on or under the Property by Purchaser. This Section 4.4 shall survive the Closing or the termination of this Agreement, as applicable.

4.5     Purchaser's Representations and Warranties.     Purchaser represents and warrants to Seller that (a) Purchaser is a corporation, duly organized and in good standing under the State of California, is authorized to do business in the State of California, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the

5

consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms. Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6    Seller's Representations and Warranties.    Seller represents and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the State of California; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order (as defined hereinafter) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances. The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

4.7    Further Assurances.    Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement, provided that there is no material increase in the parties' respective obligations hereunder nor material impairment or delay in the parties' respective rights hereunder.

5.    DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

5.1    Disclaimer.    PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE WARRANTY OF TITLE AS SET OUT IN THE DEED OR IMPLIED IN THE DEED PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1113, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES

6

WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE
COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS,
RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL
AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY,
MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF
THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR
MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER,
QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H)
COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER
DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS
MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO
THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS
AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER
ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION,
AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING
THE PROPERTY WITHOUT WAIVER OF SELLER'S EXPRESS REPRESENTATIONS OR
WARRANTIES SET OUT IN THE DEED OR IMPLIED IN THE DEED PURSUANT TO
CALIFORNIA CIVIL CODE SECTION 1113 OR, WITHOUT WAIVER OF SELLER'S
EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT
WITH RESPECT TO THE TRANSACTION CONTEMPLATED HEREIN, THE
TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION,
WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE
BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING
UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER
ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY
TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN
INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED
OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE
CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER
(INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION)
ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS
MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND
AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH
RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND
THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR
VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS
TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH
INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY
VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION
PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY
ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR
OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO
THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS
PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND

7

BASIS WITH ALL FAULTS.   IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING.   PURCHASER HEREBY AGREES TO INDEMNIFY, PROTECT, DEFEND, SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY OR DEFEND SELLER FROM OR AGAINST ANY DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (I) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF MATTERS OR EVENTS ARISING PRIOR TO THE CLOSING EXCEPT TO THE EXTENT CAUSED BY THE ACTS OR OMISSIONS OF PURCHASER OR ITS EMPLOYEES, CONTRACTORS, OR AGENTS, OR (II) ATTRIBUTABLE TO THE ACTS OR OMISSIONS OF SELLER OR ITS EMPLOYEES, CONTRACTORS OR AGENTS.   THE PROVISIONS OF THIS ARTICLE 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

    5.2    Hazardous Materials.  "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements (as hereinafter defined) or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

    5.3    Environmental Requirements.      "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of

8

the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4     Purchaser's Independent Investigations.     For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

5.5     General Release.  With regard to the waivers and releases set forth in Article 5, Purchaser agrees as follows:

PURCHASER HEREBY ACKNOWLEDGES THAT IT HAS READ AND IS FAMILIAR WITH THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542 ("SECTION 1542"), WHICH IS SET FORTH BELOW:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

BY INITIALING BELOW, PURCHASER HEREBY WAIVES THE PROVISIONS OF SECTION 1542 SOLELY IN CONNECTION WITH THE MATTERS WHICH ARE THE SUBJECT OF THE FOREGOING WAIVERS AND RELEASES:

_____
Purchaser's Initials

The foregoing waivers and releases by Purchaser shall survive the Closing and shall not be deemed merged into the Deed upon its recordation.

6.     CLOSING

6.1     Closing.     Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "Closing") shall be conducted by mail or, if necessary, held at the offices of Escrow Agent not later than the date that is ten (10) days following the later to occur of (i) the expiration of the Due Diligence Period, or (ii) entry by the Bankruptcy Court of the Sale Order, unless such later of date is a Monday or Friday, in which event the Closing

shall occur on the next day on which the Riverside County Recorder's Office is open to the public for business (the date on which the Closing occurs is referred to as the "Closing Date").

6.2   Possession.   Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise (excluding, however, mortgages, deeds of trust, mechanics liens, tax liens, judgment liens, any other liens securing monetary amounts, leases, licenses, any other similar agreements conveying possessory rights (other than easements and similar rights), purchase option rights, rights of first refusal and any other similar rights of purchase, unless approved by Purchaser pursuant to clause (v) below), (iv) any and all matters that would be shown by a physical inspection of the Property, and (v) the matters and exceptions approved or waived by Purchaser pursuant to Section 4.2 above   (collectively, the "Permitted Encumbrances").   Prior to the Closing, Seller shall remove the Excluded FF&E from the Property and shall repair any material damage to the Property caused by the removal of the Excluded FF&E, and any Excluded FF&E remaining in the Property after the Closing shall be deemed abandoned and included in the definition of "Property" hereunder and shall become the property of Purchaser.   At the Closing, the Title Company shall issue and deliver an ALTA owner's extended coverage policy of title insurance (the "Title Policy"), dated as of the Closing Date, with liability equal to the Purchase Price, showing fee title to the Property vested in Purchaser and subject only to: (x) the matters and exceptions approved or waived by Purchaser pursuant to Section 4.2 above, including, without limitation, any standard exceptions included within the commitment provided by the Title Company; and (y) Permitted Encumbrances.

6.3   Proration.   All utilities with respect to the Property for the month in which the Closing occurs, and real estate taxes and other assessments with respect to the Property for the year in which the Closing occurs, shall be prorated as of the Closing Date as follows:

   (a)   All real estate taxes and assessments, both general and special, water charges and sewer rents, whether or not then due or payable, and all other normally proratable items shall be prorated to the Closing Date, based upon the latest assessments or actual invoices available.   Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be entitled to receive on demand, a payment from the other correcting such malapportionment.   Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

   (b)   Purchaser shall cause all utility meters to be read as of the Closing Date, shall cause the transfer of all utility services for the Property to Purchaser's name as of the Closing Date, and where necessary, shall post deposits with the utility companies; provided, however, Seller shall cooperate reasonably with Purchaser in connection with switching utility services over to Purchaser's name. Seller shall be entitled to a credit of whatever deposits Seller may have with any utility companies if Purchaser receives the benefit of such deposits.   If the

Closing shall occur before the actual amount of utilities and all other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the apportionment of such utilities and other operating expenses shall be upon the basis of an estimate by Seller of such utilities and other operating expenses for such month. Subsequent to the Closing, when the actual amount of such utilities and other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the parties agree to adjust the proration of such utilities and other operating expenses and, if necessary, to refund or repay such sums as shall be necessary to effect such adjustment.

(c)    Seller and Purchaser shall use reasonable efforts to cause all sums due under that certain Declaration of Covenants, Conditions and Restrictions and Reciprocal Rights dated January 30, 2002 and recorded on January 30, 2002 as Document No. 2002-059049 (the "Declaration") in the Official Records of Riverside County, California (the "Official Records") to be prorated as of the Closing based upon information in the possession of Seller and Purchaser at Closing. Where Seller has paid any portion of the amounts due under the Declaration on an estimated basis subject to annual reconciliation, Seller and Purchaser shall agree upon a proration of the amounts due under the Declaration prior to the Closing such that Seller shall have paid those amounts due under the Declaration accruing before the Closing and Purchaser shall have paid those amounts due under the Declaration accruing on and after the Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4    <u>Closing Costs.</u>    Seller and Purchaser shall each pay one-half of the escrow fee; provided, however, that neither Seller's nor Buyer's portion of the escrow fee and any other fees or costs of Escrow Agent shall exceed $2,000.00 in the aggregate. Seller shall pay all documentary transfer taxes payable in connection with the sale of the Property as are imposed by the state and county in which the Property is located, and Purchaser shall pay all documentary transfer taxes payable in connection with the sale of the Property as are imposed by the city in which the Property is located. Purchaser shall pay the title insurance premiums for its Title Policy for the Property (including any endorsements thereto), as well as the costs for any survey which Purchaser may wish to obtain. Except as otherwise provided herein, each party shall pay its own attorneys' fees. With regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in Moreno Valley, California.

6.5    <u>Seller's Obligations at the Closing.</u>    The obligation of Seller to consummate the transaction contemplated hereunder is conditioned upon Purchaser's having performed its obligations under this Agreement. At least one (1) business day prior to the Closing, Seller shall deliver to Escrow Agent the following:

(a)    <u>Sale Order.</u>    A court certified copy of the Sale Order in a form acceptable for recordation in the Official Records and substantially similar to the form attached hereto as <u>Exhibit E</u>.

11

(b)    Deed.  A grant deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances (the "Deed"), in the form attached hereto as Exhibit B.

(c)    Foreign Person.    An affidavit or certificates duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended, and is not subject to withholding under Sections 18805 and 26131 of the California Revenue and Taxation Code.

(d)    Owner's Affidavit.    An affidavit in the form attached hereto as Exhibit C.

(e)    Bill of Sale.  A bill of sale, duly executed by Seller, conveying any abandoned personal property and Excluded FF&E pursuant to Section 1.1 ("Bill of Sale"), in the form attached hereto as Exhibit D.

6.6    Purchaser's Obligations at the Closing.    The obligation of Purchaser to consummate the transaction contemplated hereunder is conditioned upon Seller's having performed its obligations under this Agreement.  At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)    Purchase Price.    The balance of the Purchase Price and any Closing costs which are Purchaser's responsibility hereunder, plus or minus prorations as provided herein, by wire transfer of immediately available funds.

(b)    Evidence of Authority.    Such  organizational  and  authorizing documents of Purchaser as shall be reasonably required by the Title Company authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(c)    Taxpayer I.D. Certificate.    A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

6.7    Escrow Agent's Duties Upon Closing.  When the Escrow Agent has received all documents and funds required for the Closing and has received written notification from Purchaser and Seller that all conditions to the Closing have been satisfied or waived, and when the Title Company is irrevocably committed to issue the Title Policy, then the Escrow Agent shall:

(a)    Record the Sale Order, the Grant Deed and any other documents which the parties may mutually direct to be recorded in the Official Records and shall obtain conformed copies thereof for prompt distribution to Purchaser and Seller;

(b)    Cause the Title Company to issue to Purchaser the Title Policy; 

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

        (c)     Deliver to Purchaser (i) a conformed copy of each of the Grant Deed and Sale Order, (ii) the signed original Bill of Sale, and (iii) the appropriate escrow closing statement; and

        (d)     Deliver to Seller (i) the Purchase Price, less Seller's share of the Closing costs (including applicable proration adjustments, if any), and (ii) the appropriate escrow closing statement.

    6.8    Commission.  Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty ("Broker"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement. Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

7.     RISK OF LOSS; EXISTING INSURANCE PROCEEDS

    7.1    Condemnation.     If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a return of Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

    7.2    Casualty.     Seller assumes all risks and liability for damage to or injury occurring to the Property by fire, storm, accident, or any other casualty or cause until the Closing has been consummated. If the Property, or any part thereof, suffers any damage in excess of Two Hundred Thousand and No/100 Dollars ($200,000.00) after the Effective Date and prior to the Closing from fire or other casualty, which Seller, at its sole option, does not repair prior to the Closing, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a refund of the Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event (i) all of Seller's right title and interest in and to the proceeds of any insurance covering such damage (less an amount equal to any out-of-pocket expenses and costs incurred by Seller to repair or restore the Property, to the extent the amount of such insurance does not exceed the Purchase Price, shall be assigned to Purchaser at the Closing, and (ii) the Purchase Price shall be reduced by the amount of Seller's deductible under its insurance policy, except to the extent Seller has paid any amounts on account of such deductible. If the Property, or any part thereof, suffers any damage less than Two Hundred Thousand and No/100 Dollars ($200,000.00) after the Effective Date and prior to the Closing, Purchaser agrees that it will consummate the Closing and accept the assignment of the proceeds of any insurance covering such damage and the Purchase Price shall be reduced by the amount of Seller's deductible under its insurance policy, except to the

extent Seller has paid any amounts on account of such deductible. Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.

7.3    California Civil Code Section 1662 Waiver. Seller and Purchaser each expressly waive the provisions of California Civil Code Section 1662 and hereby agree that the provisions of Sections 7.1 and 7.2 above shall govern the parties' obligations in the event of any damage or destruction to the Property or the taking of all or any part of the Property, as applicable.

8.    DEFAULT

8.1    Breach by Seller.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may elect to either (a) seek specific performance of Seller's obligations to sell the Property pursuant to the terms of this Agreement (provided that Purchaser is ready, willing and able to deposit the entire Purchase Price (less the amount of the Deposit) into Escrow), or (b) terminate this Agreement and receive a refund of the Deposit. In no event shall Purchaser be entitled to any remedy other than as set forth in the immediately preceding sentence, and in no event shall Seller be liable to Purchaser for any actual, punitive, speculative or consequential damages.

8.2    Breach by Purchaser. If Purchaser fails to comply with this Agreement for any reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole and exclusive remedy and relief hereunder and shall not be entitled to the remedy of specific performance and Purchaser shall not be liable to Seller for any actual, punitive, speculative or consequential damages. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. SAID AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY PURCHASER.    THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

Purchaser's initials

Seller's initials

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

14

extent Seller has paid any amounts on account of such deductible. Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.

7.3     <u>California Civil Code Section 1662 Waiver</u>. Seller and Purchaser each expressly waive the provisions of California Civil Code Section 1662 and hereby agree that the provisions of <u>Sections 7.1 and 7.2</u> above shall govern the parties' obligations in the event of any damage or destruction to the Property or the taking of all or any part of the Property, as applicable.

## 8.     DEFAULT

8.1     <u>Breach by Seller</u>.     In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may elect to either (a) seek specific performance of Seller's obligations to sell the Property pursuant to the terms of this Agreement (provided that Purchaser is ready, willing and able to deposit the entire Purchase Price (less the amount of the Deposit) into Escrow), or (b) terminate this Agreement and receive a refund of the Deposit. In no event shall Purchaser be entitled to any remedy other than as set forth in the immediately preceding sentence, and in no event shall Seller be liable to Purchaser for any actual, punitive, speculative or consequential damages.

8.2     <u>Breach by Purchaser</u>. If Purchaser fails to comply with this Agreement for any reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole and exclusive remedy and relief hereunder and shall not be entitled to the remedy of specific performance and Purchaser shall not be liable to Seller for any actual, punitive, speculative or consequential damages. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. SAID AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY PURCHASER.   THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

_____                 _____
Purchaser's initials                            Seller's initials

14

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

9.   BANKRUPTCY ISSUES

9.1   Generally.   Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2   Filing a Sale Motion. The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement.  Provided Purchaser has not terminated or be deemed to have terminated this Agreement pursuant to Section 4.2 or Section 4.3 hereof, then within two (2) business days after the earlier of the expiration of the Due Diligence Period or the written waiver by Purchaser of its termination rights under Sections 4.2 and 4.3, and the transfer of the additional deposit to the Escrow Agent, Seller at its sole cost and expense will file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "Sale Motion"). The Sale Motion shall be in form and substance consistent with this Agreement, and Seller shall be responsible for serving and providing notice of the Sale Motion and for all costs and expenses in association therewith.

9.3   Entry of Sale Order.   The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above.  Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable. Seller shall promptly inform Purchaser of the entry by the Bankruptcy Court of the Sale Order.

9.4   Termination.   Purchaser acknowledges that the Seller intends to solicit "higher or better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least TWO MILLION THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($2,350,000.00); (b) Purchaser and other qualified bidders will have a right to bid against the initial and successive other overbids in minimum increments not to exceed FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00); (c) each initial overbid must be accompanied by a deposit in an amount equal to the total aggregate Deposit; (d) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (e) if an acceptable competing offer is received by Seller, Seller shall conduct an auction to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the auction.  During the Due Diligence Period, Seller shall have the right to hold a one-day "open house" event for any prospective purchasers to physically examine the Property and

15

improvements and Seller will use commercially reasonable efforts to give Purchaser not less than two (2) business days prior verbal and/or electronic mail notice of such "open house" event. Seller shall not otherwise knowingly permit any prospective purchasers to physically examine the Property. The last day for submission of higher or better offers will be fixed by the Seller or established by order of the Bankruptcy Court. Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to September 30, 2009 (the "Outside Date"). If this Agreement is terminated by Seller as provided in this Section 9.4, or because the Bankruptcy Court will not enter the Sale Order prior to the Outside Date, Escrow Agent shall disburse the Deposit to Purchaser and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. In addition, if Purchaser is not permitted to purchase the Property through the Bankruptcy Court proceedings, then, in addition to the Deposit being disbursed to Purchaser, Seller shall reimburse Purchaser for its reasonable out-of-pocket third-party due diligence expenses and reasonable attorneys' fees and costs incurred in connection with this Purchase Agreement, in an amount not to exceed [Thirty-Five Thousand and No/100 Dollars ($35,000.00)] in the aggregate.

10.    MISCELLANEOUS

10.1    Notices.    All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below. For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

|  |  |
|---|---|
| If to Purchaser: | 99¢ Only Stores<br>4000 Union Pacific Avenue<br>City of Commerce, CA 90023<br>Attention:  Real Estate Department |
| with a copy to: | Greenwald Pauly Foster & Miller, APC<br>1299 Ocean Avenue, Suite 400<br>Santa Monica, CA  90401<br>Attention:  Christy M. Morcomb, Esq. |
| If to Seller: | If sent by nationally recognized overnight delivery service or<br>delivered personally: |

CIRCUIT CITY STORES WEST COAST, INC.
4951 Lake Brook Drive
Glen Allen, Virginia 23060-9279
Attention: Vice President of Real Estate

If sent by certified or registered mail, return receipt requested:
CIRCUIT CITY STORES WEST COAST, INC.
P.O. Box 5695
Glen Allen, Virginia 23058-5695
Attention: Vice President of Real Estate

with a copy to:     If sent by nationally recognized overnight delivery service or
delivered personally:
CIRCUIT CITY STORES WEST COAST, INC.
4951 Lake Brook Drive
Glen Allen, Virginia 23060-9279
Attention: General Counsel

If sent by certified or registered mail, return receipt requested:
CIRCUIT CITY STORES WEST COAST, INC.
P.O. Box 5695
Glen Allen, Virginia 23058-5695
Attention: General Counsel

and a copy to:     KENNERLY, LAMISHAW & ROSSI, LLP
707 Wilshire Blvd., Suite 1400
Los Angeles, CA 90017
Attention: Matthew I. Lamishaw, Esq. and Anne S. Moyer, Esq.
Fax No.: (213) 312-1266 (for purposes of Section 4.1 and Section
4.2 hereof)

The addresses to which notices and demands shall be delivered or sent may be changed
from time to time by notice served, as hereinbefore provided, by either party upon the other
party.

10.2    Entire Agreement.    This Agreement embodies the entire agreement between
the parties relative to the subject matter hereof, and there are no oral or written agreements
between the parties, nor any representations, promises or inducements made by either party
relative to the subject matter hereof, which are not expressly set forth herein.

10.3    Amendment.    This Agreement may be amended only by a written instrument
executed by the party or parties to be bound thereby.

17

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

10.4   Heading.   The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5   Time of Essence.   Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6   Governing Law.   This Agreement shall be governed by the laws of the State of California and the laws of the United States pertaining to transactions in such State.

10.7   Successors and Assigns: Assignment.   This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns.   Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller.   No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement.   This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8   Invalid Provision.   If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9   Attorneys' Fees.   In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10   Multiple Counterparts.   This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11   No Recordation.   Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall

constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12  Merger Provision.    Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13  Brokers.    Except as contemplated by Section 6.8, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14  Consent to Jurisdiction of Bankruptcy Court.    THE       BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

SELLER

CIRCUIT CITY STORES WEST COAST,
INC.,
a California corporation

By:_____
Name:_____
Title:_____

Date:      May ____, 2009

PURCHASER

99¢ ONLY STORES,
a California corporation

By:_____
Name:    Richard J. Frick
Title:      Vice President, Real Estate

Date:      May 2-7, 2009

constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12   Merger Provision.   Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13   Brokers.   Except as contemplated by Section 6.8, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14   Consent to Jurisdiction of Bankruptcy Court.   THE   BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

SELLER

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

By: _Michelle Mosier_
Name: _Michelle Mosier_
Title: _VP & Controller_

Date: ~~28~~ May 27 , 2009

PURCHASER

99¢ ONLY STORES,
a California corporation

By: _Richard Frick_
Name:   Richard J. Frick
Title:    Vice President, Real Estate

Date:    May 2.7, 2009

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

The escrow terms and conditions of this Agreement are agreed to and accepted this _____ day of May, 2009.

ESCROW AGENT:

STEWART TITLE OF CALIFORNIA

By: _____

Name: _____

Title: _____

Mailing Address:

16830 Ventura Boulevard, Suite M
Encino, California 91436
Attention:  Andrea Mendoza

## EXHIBIT A

### LEGAL DESCRIPTION OF PROPERTY

PARCEL A OF LOT LINE ADJUSTMENT NO. 933, AS EVIDENCED BY A LOT
LINE ADJUSTMENT RECORDED OCTOBER 14, 2003 AS INSTRUMENT NO.
2003-805311 OF OFFICIAL RECORDS, BEING THAT PORTION OF PARCELS 4, 5,
AND 6 OF PARCEL MAP NO. 30278, AS SHOWN BY PARCEL MAP ON FILE IN
BOOK 200 PAGES 59 THROUGH 62 OF PARCEL MAPS, RECORDS OF
RIVERSIDE COUNTY CALIFORNIA, MORE PARTICULARLY DESCRIBED AS
FOLLOWS:

PARCELS 4, 5, AND 6 OF PARCEL MAP NO. 30278 AS SHOWN BY MAP ON FILE
IN BOOK 200 OF PARCEL MAPS AT PAGES 59 THROUGH 62, INCLUSIVE
THEREOF, RECORDS OF RIVERSIDE COUNTY CALIFORNIA;

EXCEPTING THEREFROM, THE NORTHERLY 29.75 FEET OF THE WESTERLY
168.56 FEET OF SAID PARCEL 6.

SAID PARCEL CONTAINS 3.53 ACRES.

APN: 291-590-004-4 and 291-590-005-5 and 291-590-006-6

<u>EXHIBIT B</u>

FORM OF GRANT DEED

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

MAIL TAX STATEMENTS TO:

APNs:                                    SPACE ABOVE LINE FOR RECORDER'S USE ONLY

### **GRANT DEED**

**Documentary transfer tax is not shown pursuant to Revenue and Taxation Code Section 11932.**

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, CIRCUIT CITY STORES WEST COAST, INC., a California corporation ("**Grantor**"), hereby grants to _____ ("**Grantee**"), all that certain real property located in the City of Moreno Valley County of Riverside, State of California, more particularly described on <u>Exhibit "A"</u> attached hereto and incorporated herein by this reference, together with all improvements and all of Grantor's right, title and interest in and to all rights and appurtenances pertaining to such real property, including any right, title and interest of Grantor in and to adjacent streets, alleys or rights-of-way, subject to (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise (excluding, however, mortgages, deeds of trust, mechanics liens, tax liens, judgment liens, any other liens securing monetary amounts, leases, licenses, any other similar agreements conveying possessory rights (other than easements and similar rights), purchase option rights, rights of first refusal and any other similar rights of purchase), and (iv) any and all matters that would be shown by a physical inspection of the Property (the "<u>Property</u>").

This grant deed is made pursuant to that certain "[insert title of Sale Order]".

*[Remainder of page intentionally left blank.]*

22

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

IN WITNESS WHEREOF, this Grant Deed has been executed this \_\_\_\_
day of _____.

   "GRANTOR"

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

By:_____
Name:_____
Title: _____

State of _____
County of _____} *ss.*

On _____ before me, _____, Notary Public,
personally appeared _____
_____, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

             (seal)

23

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

## EXHIBIT "A" to GRANT DEED

Property Legal Description

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

<u>EXHIBIT C</u>

FORM OF OWNER'S AFFIDAVIT

The undersigned hereby declares that to the undersigned's actual knowledge, without investigation, as follows:

1.  Declarant ("Owner") is the owner or lessee, as the case may be, of certain premises located at _____, further described as follows: See Preliminary Report/Commitment No. _____ for full legal description (the "Land").

2.  Intentionally Deleted.

3.  The Land is currently in use as unoccupied commercial property; and the following are all of the leases or other occupancy rights affecting the land: None.

4.  There are no other persons or entities that assert an ownership interest in the Land, nor has the undersigned received actual notice of unrecorded easements, claims of easement, or boundary disputes that affect the Land.

5.  There are no outstanding options to purchase or rights of first refusal affecting the Land.

This declaration is made subject to all matters set forth in that certain "[insert title of Sale Order]".

This declaration is made with the intention that Stewart Title Insurance Company (the "Company") and its policy issuing agents will rely upon it in issuing their title insurance policies and endorsements.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on _____ __, 2009 at Richmond, Virginia.

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

By: _____

Print Name: _____

Title: _____

891018.5 -- 89079.076

EXHIBIT D

FORM OF BILL OF SALE

BILL OF SALE

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, _____ ("Seller"), in connection with the sale of certain real property located in the _____, California, which is more particularly described on Exhibit "A" attached hereto and by this reference incorporated herein ("Property"), hereby grants, assigns, transfers, conveys and delivers to _____ (collectively, "Buyer"), all of Seller's right, title and interest in and to the personal property ("Personal Property") situated on the Property.  The Personal Property is being transferred on an "as is" basis, without any representations or warranties, express, implied or statutory, of any kind whatsoever by Seller, including, without limitation, any warranty of title, merchantability, or fitness for a particular purpose.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of _____, 20__.

CIRCUIT CITY STORES WEST COAST, INC.,
a California corporation

By:_____
Name:_____
Title: _____

891018.5 -- 89079.076

EXHIBIT "A"

LEGAL DESCRIPTION

PARCEL A OF LOT LINE ADJUSTMENT NO. 933, AS EVIDENCED BY A LOT
LINE ADJUSTMENT RECORDED OCTOBER 14, 2003 AS INSTRUMENT NO.
2003-805311 OF OFFICIAL RECORDS, BEING THAT PORTION OF PARCELS 4, 5,
AND 6 OF PARCEL MAP NO. 30278, AS SHOWN BY PARCEL MAP ON FILE IN
BOOK 200 PAGES 59 THROUGH 62 OF PARCEL MAPS, RECORDS OF
RIVERSIDE COUNTY CALIFORNIA, MORE PARTICULARLY DESCRIBED AS
FOLLOWS:

PARCELS 4, 5, AND 6 OF PARCEL MAP NO. 30278 AS SHOWN BY MAP ON FILE
IN BOOK 200 OF PARCEL MAPS AT PAGES 59 THROUGH 62, INCLUSIVE
THEREOF, RECORDS OF RIVERSIDE COUNTY CALIFORNIA;

EXCEPTING THEREFROM, THE NORTHERLY 29.75 FEET OF THE WESTERLY
168.56 FEET OF SAID PARCEL 6.

SAID PARCEL CONTAINS 3.53 ACRES.

APN: 291-590-004-4 and 291-590-005-5 and 291-590-006-6

EXHIBIT E

FORM OF SALE ORDER

| | |
|---|---|
| Gregg M. Galardi, Esq. | Dion W. Hayes (VSB No. 34304) |
| Ian S. Fredericks, Esq. | Douglas M. Foley (VSB No. 34364) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP | MCGUIREWOODS LLP |
| One Rodney Square | One James Center |
| PO Box 636 | 901 E. Cary Street |
| Wilmington, Delaware 19899-0636 | Richmond, Virginia 23219 |
| (302) 651-3000 | (804) 775-1000 |

- and -

Chris L. Dickerson, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

333 West Wacker Drive

Chicago, Illinois 60606

(312) 407-0700

Counsel to the Debtors and

Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

- - - - - - - - - - - - - - x

In re:                          :    Chapter 11

                                :

CIRCUIT  CITY  STORES,  INC.,:    Case No. 08-35653 (KRH)
et al.,

                                :

                                :

              Debtors.

                                :    Jointly Administered

- - - - - - - - - - - - - -

                                x


**ORDER UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND
BANKRUPTCY RULES 2002 AND 6004 APPROVING SALE BY SELLER
OF CERTAIN REAL PROPERTY LOCATED IN MORENO VALLEY,
CALIFORNIA FREE AND CLEAR OF LIENS**

Upon the motion (the "Motion")[1] of Circuit City

Stores West Coast, Inc. (the "Seller," and collectively

with the debtors and debtors in possession in the above-

captioned jointly administered cases, the "Debtors") for

orders pursuant to Bankruptcy Code sections 105 and 363

and Bankruptcy Rules 2002 and 6004 (i) approving bidding

---

[1] Capitalized terms not otherwise defined herein shall
have  the  meanings  ascribed  to  such  terms  in  the
Motion.

29

procedures (the "Bidding Procedures"), (ii) setting a

date for the Auction (as defined herein) and the sale

hearing (the "Sale Hearing") and (iii) authorizing and

approving the sale (the "Sale") of certain real property

of the Seller located at12530 Day Street, Moreno Valley,

California,(the "Property") free and clear of liens

pursuant to the Purchase And Sale Agreement (the

"Agreement"), attached hereto as Exhibit 1, dated May [

], 2009 by and among the Seller and 99¢ Only Stores (the

"Purchaser") or a Successful Bidder (as defined in the

Bidding Procedures"); and the Court having entered its

Order (I) Approving Bidding Procedures And (II) Setting

Auction And Sale Hearing Dates In Connection With The

Sale Of Certain Real Property Located In Moreno Valley,

California on _____, 2009 (the "Bidding Procedures Order")

(Docket No.___); and the Sale Hearing having been held on

_____, 2009, at which time all interested parties were

offered an opportunity to be heard with respect to the

Motion; and the Court having reviewed the Motion; and the

Court having determined that the relief requested in the

Motion is in the best interests of the Seller, its

estate, its creditors and other parties in interest; and

30

it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice

is necessary; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.    The Court has jurisdiction over the Motion

pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.    Venue of these cases and the Motion in

this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    As evidenced by the affidavits of service

previously filed with the Court, and based on the

representations of counsel at the Sale Hearing, (i)

proper, timely, adequate, and sufficient notice of the

Motion, the Sale Hearing, the Sale, the Bid Deadline, and

the Auction as approved herein has been provided in

accordance with Bankruptcy Code sections 102(1) and 363

and Bankruptcy Rules 2002 and 6004, (ii) such notice was

---

2 Findings of fact shall be construed as conclusions of law and
  conclusions of law shall be construed as findings of fact when
  appropriate. See Fed. R. Bankr. P. 7052.

31

MSW - Draft May 6, 2009 - 11:32 AM

good, sufficient, and appropriate under the circumstances
and (iii) no other or further notice of the Motion, the
Sale Hearing, the Sale, the Bid Deadline and the Auction
is necessary or shall be required.

      D.   As demonstrated by (i) the testimony and
other evidence proffered or adduced at the Sale Hearing
and (ii) the representations of counsel made on the
record at the Sale Hearing, the Seller has marketed the
Property and conducted the sale process in compliance
with the Bidding Procedures Order.

      E.   The Seller has full power and authority to
execute the Agreement and all other applicable documents
contemplated thereby.  The transfer and conveyance of the
Property by the Seller have been duly and validly
authorized by all necessary action of the Seller. The
Seller has all of the power and authority necessary to
consummate the transactions contemplated by the Agreement
and has taken all action necessary to authorize and
approve the Agreement and to consummate the transactions
contemplated thereby.  No consents or approvals, other
than those expressly provided for in the Agreement, are
required for the Seller to consummate such transactions.

32

F.    The Seller has demonstrated good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Seller and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Property and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Property pursuant thereto and (c) the Purchase Price agreed to as reflected in the Agreement are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Property.

G.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (a) those parties entitled to notice under the Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130; the "Case Management Order"), (b) all entities known to have expressed an

33

interest in a transaction regarding the Property during
the past three (3) months; (c) all entities known to have
an interest in any of the Property; and (d) all federal,
state, and local regulatory or taxing authorities or
recording offices that have a reasonably known interest
in the relief requested through the Motion.

H.   The Purchaser is not an "insider" of any
of the Debtors as that term is defined in 11 U.S.C. §
101(31).

I.   This Sale Approval Order and the
consummation of the contemplated transactions are
supported by good business reasons, and will serve the
best interests of the Seller, its estate and creditors by
maximizing the value to be obtained from the Property.

J.   The Agreement was negotiated, proposed,
and entered into by the Seller and the Purchaser without
collusion, in good faith, and from arm's-length
bargaining positions.   Neither the Seller nor the
Purchaser has engaged in any conduct that would cause or
permit the Sale to be avoidable under Bankruptcy Code
section 363(n).

34

K.    The Purchaser is a good faith purchaser
under Bankruptcy Code section 363(m) and, as such, is
entitled to all of the protections afforded thereby.    The
Purchaser will be acting in good faith within the meaning
of Bankruptcy Code section 363(m) in closing the
transactions contemplated by the Agreement at all times
after the entry of this Sale Approval Order.

L.    The consideration provided by the
Purchaser for the Property pursuant to the Agreement (i)
is fair and reasonable, (ii) is the highest or otherwise
best offer for the Property, (iii) will provide a greater
recovery for the Seller's stakeholders than would be
provided by any other practical available alternative and
(iv) constitutes reasonably equivalent value and fair
consideration under the Bankruptcy Code and under the
laws of the United States, any state, territory, or
possession thereof, or the District of Columbia.

M.    The Sale must be approved and consummated
promptly to obtain the value provided under the terms of
the Agreement.

N.    The transfer of the Property to the
Purchaser is a legal, valid, and effective transfer of

35

the Property, and shall vest the Purchaser with all

right, title, and interest of the Seller to the Property

The Property would be sold free and clear of free and

clear of any lien (including tax liens and any statutory

or common law liens, possessory or otherwise), charge,

pledge, security interest, conditional sale agreement or

other title retention agreement, lease, mortgage,

security interest, option or other encumbrance (including

the filing of, or agreement to give, any financing

statement under the Uniform Commercial Code of any

jurisdiction) and any monetary amounts which are secured

by any lien (collectively, the "Liens"), except for (i)

liens for real property taxes that are not yet due and

payable, (ii) zoning ordinances, building codes and other

land use laws and applicable governmental regulations,

(iii) all covenants, agreements, conditions, easements,

restrictions and rights, whether of record or otherwise

(excluding, however, mortgages, deeds of trust, mechanics

liens, tax liens, judgment liens, any other liens

securing monetary amounts, leases, licenses, any other

similar agreements conveying possessory rights (other

than easements and similar rights), purchase option

36

rights, rights of first refusal and any other similar
rights of purchase), and (iv) any and all matters that
would be shown by a physical inspection of the Property
(collectively, the "Permitted Encumbrances").

O.    If the Sale of the Property by the Seller
were not free and clear of any Liens, except for the
Permitted Encumbrances, as set forth in the Agreement and
this Sale Approval Order, or if the Purchaser would, or
in the future could, be liable for any of the Liens, the
Purchaser would not have entered into the Agreement and
would not consummate the Sale contemplated by the
Agreement, thus adversely affecting the Seller, its
estate, and its stakeholders.

P.    The Seller may sell its interest in the
Property free and clear of all Liens (except the
Permitted Encumbrances) because, in each case, one or
more of the standards set forth in Bankruptcy Code
sections 363(f)(1)-(5) has been satisfied.  All holders
of Liens who did not object or withdrew their objections
to the Sale are deemed to have consented to the Sale
pursuant to 11 U.S.C. § 363(f)(2) and all holders of
Liens are adequately protected by having their Liens, if

37

any, attach to the cash proceeds of the Sale ultimately
attributable to the property against or in which they
claim an interest with the same priority, validity,
force, and effect as they attached to such property
immediately before the closing of the Sale.

Q.   Approval of the Agreement and consummation
of the Sale of the Property at this time are in the best
interests of the Seller, its estate, its stakeholders and
other parties in interest; and it is therefore

### ORDERED, ADJUDGED AND DECREED THAT:

1.   The Motion is GRANTED.  Any and all
objections to the Motion not waived, withdrawn, settled,
adjourned or otherwise resolved herein are hereby
overruled and denied with prejudice.

A.   **Approval Of The Agreement.**

2.   Pursuant to Bankruptcy Code section
363(b), the Agreement and all of the terms and conditions
thereof are hereby approved.

3.   Pursuant to Bankruptcy Code section
363(b), the Seller is authorized to perform its
obligations under the Agreement and comply with the terms

38

thereof and consummate the Sale in accordance with and
subject to the terms and conditions of the Agreement.

4.    The Seller is authorized, but not
directed, to execute and deliver, and empowered to
perform under, consummate, and implement, the Agreement,
together with all additional instruments and documents as
may be reasonably necessary or desirable to implement the
Agreement, and to take all further actions as may be
requested by the Purchaser for the purpose of assigning,
transferring, granting, conveying, and conferring to the
Purchaser or reducing to possession the Property as
contemplated by the Agreement.

5.    This Sale Approval Order and the Agreement
shall be binding in all respects upon Seller and all
stakeholders (whether known or unknown) of the Seller,
all affiliates and subsidiaries of the Seller, and any
subsequent trustees appointed in the Seller's chapter 11
case or upon a conversion to chapter 7 under the
Bankruptcy Code.  To the extent that any provision of
this Sale Approval Order is inconsistent with the terms
of the Agreement, this Sale Approval Order shall govern.

39

MSW - Draft May 6, 2009 - 11:32 AM

6.   The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; _provided_ that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

**B.   Sale And Transfer Of The Property.**

7.   Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in the Property shall be transferred to the Purchaser free and clear of all Liens except the Permitted Encumbrances, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Property immediately before such transfer, subject to any claims and defenses the Seller may possess with respect thereto.

40

8.   If any person or entity which has filed
financing statements, mortgages, mechanic's liens, lis
pendens, or other documents or agreements evidencing
Liens on or against the Property shall not have delivered
to the Seller prior to the Closing of the Sale, in proper
form for filing and executed by the appropriate parties,
termination statements, instruments of satisfaction,
releases of all Liens that the person or entity has with
respect to the Property, or otherwise, then (a) the
Seller is hereby authorized to execute and file such
statements, instruments, releases, and other documents on
behalf of the person or entity with respect to the
Property and (b) the Purchaser is hereby authorized to
file, register, or otherwise record a certified copy of
this Sale Approval Order, which, once filed, registered,
or otherwise recorded, shall constitute conclusive
evidence of the release of all Liens on or against the
Property of any kind or nature whatsoever except for the
Permitted Encumbrances.

9.   This Sale Approval Order (a) shall be
effective as a determination that, upon the Closing of
the Sale, all Liens of any kind or nature whatsoever

41

existing as to the Seller or the Property prior to the
Closing of the Sale, except for the Permitted
Encumbrances, have been unconditionally released,
discharged, and terminated (other than any surviving
obligations), and that the conveyances described herein
have been effected and (b) shall be binding upon and
shall govern the acts of all entities including, without
limitation, all filing agents, filing officers, title
agents, title companies, recorders of mortgages,
recorders of deeds, registrars of deeds, administrative
agencies, governmental departments, secretaries of state,
federal, state, and local officials, and all other
persons and entities who may be required by operation of
law, the duties of their office, or contract, to accept,
file, register, or otherwise record or release any
documents or instruments, or who may be required to
report or insure any title or state of title in or to any
of the Property.

    10.  All persons and entities, including, but
not limited to, all debt security holders, equity
security holders, governmental, tax, and regulatory
authorities, lenders, trade stakeholders, and other

42

stakeholders, holding Liens of any kind or nature
whatsoever against or in the Seller or the Property,
except the Permitted Encumbrances (whether legal or
equitable, secured or unsecured, matured or unmatured,
contingent or non-contingent, senior or subordinated)
arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Approval Order or the Agreement releases or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of any Property after
the date of entry of this Sale Approval Order.  Nothing
in this Sale Approval Order or the Agreement bars,
estops, or enjoins any governmental agency from asserting
or enforcing, outside the Court, any liability described
in the preceding sentence.  Notwithstanding the above,
nothing herein shall be construed to permit a

43

governmental agency to obtain penalties from the

Purchaser for days of violation of environmental laws and

regulations prior to Closing.

**C.    Additional Provisions**

11.    The consideration provided by the

Purchaser for the Property under the Agreement is hereby

deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform

Fraudulent Conveyance Act, the Uniform Fraudulent

Transfer Act, and under the laws of the United States,

and any state, territory, or possession thereof, or the

District of Columbia.

12.    Upon the Closing of the Sale, this Sale

Approval Order shall be construed as and shall constitute

for any and all purposes a full and complete general

assignment, conveyance, and transfer of all the Property

or a bill of sale transferring good and marketable title

in the Property to the Purchaser pursuant to the terms of

the Agreement.

13.    The transactions contemplated by the

Agreement are undertaken by the Seller and the Purchaser

at arm's-length, without collusion and in good faith, as

44

that term is used in section 363(m) of the Bankruptcy
Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to consummate
the sale of the Property shall not affect the validity of
the Sale to the Purchaser, unless such authorization is
duly stayed pending such appeal.  The Purchaser is a
purchaser in good faith, within the meaning of section
363(m) of the Bankruptcy Code, of the Property, and is,
and shall be, entitled to all of the protections afforded
by such section and in accordance therewith.

14.   The consideration provided by the
Purchaser for the Property under the Agreement is fair
and reasonable and the Sale may not be avoided under
section 363(n) of the Bankruptcy Code.

15.   The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Approval Order shall not diminish or impair the
effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

45

16.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

17.   This Court retains exclusive jurisdiction
to interpret, construe, enforce, and implement the terms
and provisions of this Sale Approval Order, the
Agreement, all amendments thereto, any waivers and
consents thereunder, and of each of the agreements
executed in connection therewith in all respects,
including, but not limited to, retaining jurisdiction to
(a) compel delivery of the Property to the Purchaser, (b)
compel delivery of the purchase price or performance of
other obligations owed to the Seller pursuant to the
Agreement, (c) resolve any disputes arising under or
related to the Agreement, (d) interpret, implement, and
enforce the provisions of this Sale Approval Order, and
(e) protect the Purchaser against any Lien against the
Seller or the Property of any kind or nature whatsoever,
except for Permitted Encumbrances, which Liens, valid and
timely perfected, shall attach to the proceeds of the
Sale.

46

Dated:   Richmond, Virginia

_____, 2009

_____

UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.

Ian S. Fredericks, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

One Rodney Square

PO Box 636

Wilmington, Delaware 19899-0636

(302) 651-3000

    - and -

Chris L. Dickerson, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

333 West Wacker Drive

47

Chicago, Illinois 60606

(312) 407-0700


        - and -


/s/ Douglas M. Foley

Dion W. Hayes (VSB No. 34304)

Douglas M. Foley (VSB No. 34364)

MCGUIREWOODS LLP

One James Center

901 E. Cary Street

Richmond, Virginia 23219

(804) 775-1000


Counsel to the Debtors and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**


48

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

49

**Exhibit 1**

**(Agreement)**