(b) <u>Communications Equipment</u>. Tenant may, from time to time, subject to all applicable laws, rules, regulations, and ordinances promulgated by governmental authorities having jurisdiction over the same, install, maintain and/or replace any satellite dishes, antennas cellular and PCS towers and poles on the roof of the Building as Tenant deems necessary or desirable in a mutually acceptable location, provided same shall not adversely and materially affect the roof or the structural elements thereof or void Landlord's roof warranty, provided, further that the same shall not be visible from the front of the Building at street level. Upon removal by Tenant of any satellite dishes or antennas, Tenant shall repair any damage done in connection with such removal. Any penetration of the roof in connection with the installation or removal of such dish or antenna shall be performed under the supervision of Landlord or the roofing contractor warranting the roof and shall otherwise be performed so as not to void any warranty or warranty applicable to the roof.

9. <u>Taxes</u>.

(a) <u>Taxes Contemplated Hereunder</u>. The term "Real Estate Taxes" shall mean all general real estate taxes and assessments and other ad valorem taxes, rates and levies paid upon or with respect to the Shopping Center, including the Premises, for a calendar year or a portion thereof to any governmental agency or authority and all charges specifically imposed in lieu of any such taxes. Nothing contained in this Lease shall require Tenant to pay any local, county, municipal, state or federal income, franchise, corporate, estate, inheritance, succession, capital levy, business or transfer tax of Landlord, or any local, county, municipal, state or federal income, profits, gross receipts, sales or renewal tax or other charges payable by Tenant under this Lease, provided, however, if at any time hereafter the methods of taxation prevailing at the Commencement Date shall be altered so that in addition to or in lieu of or as a substitute for any part of the Real Estate Taxes now assessed, there shall be assessed or imposed a tax or license fee on the rents received from the Premises, then such tax or fee shall be included in the computation of Real Estate Taxes.

(b) <u>Payment of Real Estate Taxes</u>. At such intervals as Landlord is required to pay the Real Estate Taxes, Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes (calculated in the same manner as Tenant's Pro Rata Share of CAM Charges in paragraph 7(c)) levied against the tax parcel or parcels comprising the Shopping Center (the "Tax Parcel"). Tenant's Pro Rata Share of Real Estate Taxes shall be net of any early-payment discounts available at the time Tenant's

payment is due. Tenant shall pay Tenant's Pro Rata Share of Real Estate Taxes within thirty (30) days after Tenant's receipt of Landlord's statement therefor, accompanied by the tax bill on the basis of which such statement is rendered. Landlord shall pay, or cause the payment of, all Real Estate Taxes before any fine, penalty, interest or cost may be added thereto, become due or be imposed by operation of law for the nonpayment or late payment thereof. In no event shall Tenant be liable for any penalty incurred as a result of late payment by another tenant or by Landlord. Real Estate Taxes shall be prorated as of the Commencement Date and the expiration or earlier termination of this Lease, and Landlord shall promptly return to Tenant any overpayment made by Tenant not attributable to the period of Tenant's possession of the Premises. Landlord shall remain primarily responsible to the taxing authority for such payment notwithstanding the fact that such payment may be made by a tenant of Landlord's Premises or other third party pursuant to an agreement to which Tenant is not a party. In addition, should Landlord fail to pay such Real Estate Taxes before same become delinquent, provided Landlord is not then contesting such Real Estate Taxes by appropriate proceedings, Tenant shall have the right, at its election, to cure such failure by payment of delinquent Real Estate Taxes and any interest and penalties due thereon and in such event Tenant may deduct the cost thereof, plus interest at the lesser of fifteen percent (15%) per annum or the highest rate permitted by State law (the "Default Rate"), from the next installment(s) of Base Rent and other charges due hereunder.

(c)  <u>Contest of Real Estate Taxes and/or Assessed Valuation of Property</u>. Tenant shall have the right, at Tenant's sole expense, to contest the amount or validity, or otherwise seek an exemption or abatement, of any Real Estate Taxes or to seek a reduction in the valuation of the Premises assessed for Real Estate Tax purposes, by appropriate proceedings diligently conducted in good faith, provided that Tenant shall first have notified Landlord of its intent to do so and Landlord shall have failed to notify Tenant in writing, within five (5) business days of receipt of Tenant's notice, that Landlord intends to contest such Real Estate Taxes or seek such a reduction, or Landlord shall have failed to commence and diligently prosecute such contest of Real Estate Taxes after providing Tenant with notice of Landlord's intention to do so. In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall reasonably cooperate with Tenant, execute any and all documents reasonably acceptable to Landlord and required in connection

15

therewith and, if required by any law, rule or regulation of the taxing authority, shall join with Tenant in the prosecution thereof at no cost or expense to Landlord. Any action undertaken by Tenant under this subparagraph (c) shall be undertaken strictly in accordance with governmentally established procedures therefor and shall not release Tenant of its obligations hereunder to pay to Landlord Tenant's Pro Rata Share of Real Estate Taxes when due, unless such procedures permit deferral of payment during its pendency of such contest or other action and Tenant fully complies with such procedures.

(d) <u>Payment Following Appeal</u>. Upon the termination of the proceedings set forth in subparagraph (c) above (unless the taxing authority requires that Real Estate Taxes be paid under protest prior to commencement of such proceedings), Tenant shall pay Tenant's Pro Rata Share of such Real Estate Taxes as finally determined in such proceedings, the payment or partial payment of which may have been deferred during the prosecution of such proceedings. Tenant shall be entitled to a refund of any overpayment of Real Estate Taxes relating or allocable to the Premises, as well as a reimbursement from the appropriate taxing authority of all costs, fees and expenses it incurs in such protest or reassessment.

(e) <u>Personal Property Taxes</u>. Tenant shall pay, prior to delinquency, all personal property taxes due, if any, with respect to the Personalty (defined in paragraph 23 below).

10. <u>Maintenance, Repairs and Replacements</u>. Except (i) for costs covered by Landlord's insurance required to be maintained hereunder, (ii) for condemnation proceeds to be received by Tenant, (iii) for obligations arising from the negligent acts or omissions or willful misconduct of Landlord (or its agents, employees or other tenants), or (iv) as otherwise set forth in this Lease, Tenant shall be solely responsible for maintenance of the exterior and interior non-structural elements of the Building. Notwithstanding the foregoing, Tenant shall have no obligation to install or construct alterations or incur capital expenditures pursuant to this paragraph during the last five (5) years of the Lease Term; provided however that if Tenant is required to expend any sum in satisfaction of its obligations hereunder during the last five (5) years of the Lease Term, and if the resulting improvement to the Improvements cannot be fully amortized in accordance with generally accepted accounting principles, or the Internal Revenue Code and Regulations, over the remainder of the Term, then Tenant shall so notify Landlord and Landlord shall either (A) direct Tenant that

Landlord elects not to cause Tenant to make such capital replacements, and Tenant shall thereby be relieved of any liability for such replacement obligation unless such capital replacement is required to sustain a Building system critical to Tenant's operations, in which event Landlord shall be deemed to have elected (B) immediately following, or (B) direct Tenant to make such capital expenditure in which event Tenant shall be reimbursed by Landlord by that amount of the cost associated with such repairs, construction or alteration for the period beyond the remainder of the Term (as the same may be extended), such reimbursement to be made at expiration of the Term. Landlord shall maintain all structural elements of the Premises (whether or not same serve only the Premises), including, without limitation, the roof, roof structure, flooring system, floor slab, foundation, load bearing walls and exterior structural walls. Tenant shall be responsible for construction design defects caused by Tenant. In addition, Landlord agrees to maintain the Other Improvements immediately surrounding the Building, as well as sidewalks and landscaping. Should either party fail to perform its obligations under this paragraph 10, the other party may, at its option, effect such maintenance, replacements or repairs, provided that such curing party shall have given the nonperforming party thirty (30) days' prior written notice, except in the case of emergencies (in which event only such notice as may be reasonable under the circumstances shall be required); but further provided that such thirty (30) day period (or reasonable period in event of emergencies) shall be extended in respect of any cure that cannot with reasonable diligence be accomplished within such period so long as the party required to effect such cure has commenced such cure within such thirty (30) day period (or reasonable period in event of emergencies) and thereafter diligently prosecutes such cure to completion. The nonperforming party shall reimburse the other party within ten (10) days after written demand for the reasonable, necessary and actual amount so expended (as evidenced by detailed invoice), plus interest at the Default Rate. However, in the event of emergency repairs, no interest shall accrue if reimbursed within thirty (30) days of request (including detailed invoice) for reimbursement. All maintenance, repairs or replacements shall be done by Tenant or Landlord lien-free and in a good and workmanlike manner consistent with the quality of labor and materials used in originally constructing the Improvements and in accordance with all applicable law. Tenant shall obtain a one (1) year general contractor warranty in connection with the Improvements. In order for Landlord and Tenant to effectively perform their maintenance, repair and replacement obligations

17

hereunder, Tenant and Landlord, as applicable, shall assign to the other party, on a non-exclusive basis, any and all manufacturers' and contractors' warranties relating to such work performed on behalf of the other party to the party who is required to maintain same under this Lease; provided, however, that if the party to whom any such warranty benefits defaults in its obligation to perform any maintenance, repair or replacement obligations which are within the scope of such warranty, and the other party desires to perform the same pursuant to its rights under this Lease, the defaulting party shall upon request reassign such warranty to the non-defaulting party.

11.    Utility Service Provider: Payment of Utility Bills. Tenant shall be entitled, subject to State law, to select the utility service provider which shall provide water, electric, gas, cable, and telecommunication services to the Premises. Tenant will pay directly to the appropriate utility company or governmental agency, when due, all bills for gas, water, sanitary sewer, electricity, telephone and other public or private utilities used by Tenant with regard to the Improvements. Landlord shall pay when due all utility charges incurred in the operation of the Common Areas and the Shopping Center. Landlord has no liability for interruption of utilities unless caused by Landlord's gross negligence or willful misconduct.

12.    Alterations. During the Term, Tenant shall have the right, at its discretion and its sole cost, without Landlord's consent, to make (i) any alterations or modifications necessary or desirable in order to bring the Premises into conformity with Tenant's then-current prototype for similarly sized stores provided such alterations or modifications do not impair the structural integrity of the Building and are not materially inconsistent with the then-existing architecture of the Shopping Center and (ii) any interior nonstructural alterations or modifications it may desire. With Landlord's consent, which shall not be unreasonably withheld, conditioned or delayed, Tenant shall have the right, at its sole cost, to alter, modify or reconstruct the exterior and/or structure of the Building or Other Improvements. Landlord's withholding of consent as to any exterior or structural alteration or modification shall be deemed reasonable only if the same would impair the structural integrity of the Building or is materially inconsistent with the then-existing architecture of the Shopping Center. Tenant shall cause all such alterations to be lien-free (in accordance with paragraph 13) and made and completed at Tenant's sole cost in a good and workmanlike manner and in compliance with all applicable law. Should Landlord's consent be required, conceptual plans and specifications for such

work shall be provided to Landlord prior to commencement of any such work. If Landlord's consent is not required, upon written request, Tenant shall provide to Landlord plans and specifications and/or construction drawings as applicable for such work. Landlord shall be deemed to have consented to such work if written notice of disapproval, with reasons specified, is not received by Tenant within fifteen (15) days following Tenant's delivery of such plans and specifications to Landlord. Without cost, expense or additional obligation to Landlord, Landlord shall cooperate with Tenant in the obtaining of any and all licenses, building permits, certificates of occupancy or other governmental approvals which may be required in connection with any such modifications or alterations, and Landlord shall execute, acknowledge and deliver any documents reasonably required and in a form and substance reasonably acceptable to Landlord in furtherance of such purposes.

13. <u>Mechanics' Liens</u>. Landlord and Tenant covenant to each other that they will not permit any lien to be filed against the Premises, the Land or the Shopping Center as a result of nonpayment for, or disputes with respect to, labor or materials furnished to the Premises, the Land or the Shopping Center for or on behalf of Tenant, Landlord or any party claiming by, through, or under Tenant or Landlord, nor shall either party permit any judgment, lien or attachment to lie, as applicable, against the Premises, the Land or the Shopping Center. Should any lien of any nature, including, but not limited to, the foregoing, be filed against the Premises, the Land or Shopping Center, the party on account of whose actions (or alleged actions) such lien has been filed shall, within thirty (30) days after receipt of written notice of such lien, cause said lien to be removed, or otherwise protected against execution during good faith contest, by substitution of collateral, posting a bond therefor, escrowing of adequate funds to cover the claim and related transaction costs or such other method as may be permissible under applicable title insurance regulations and reasonably acceptable to the other party hereto.

14. <u>Insurance</u>.

(a) <u>Property Damage</u>. During the Construction Term, Tenant shall keep or require its general contractor to keep, in full force and effect, a policy of builder's risk insurance covering loss or damage to the Improvements for the full replacement value of all such construction. During the Main Term and all Option Periods, Tenant shall keep the Premises insured against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage in the

253080_9[ (00051/38(11975)]

amount of full replacement value of the Building, exclusive of excavation, footings and foundations (which initial amount shall be not less than the Tenant Improvement Allowance), with a commercially reasonable deductible, for which Tenant shall be fully responsible. Landlord and Landlord's "Mortgagee" (as defined in paragraph 21 below), shall be named in such policy or policies as additional insureds as their respective interests may appear. Landlord shall not construct, or permit to be constructed, any improvement in the Shopping Center, nor conduct any activity, or permit the conduct of any activity, in the Shopping Center which will prevent Tenant from being able to obtain insurance coverage at commercially reasonable rates, including, without limitation, a fully-sprinklered fire insurance rate. Should Landlord cause or permit any insurance rate increase to occur, Landlord will reimburse Tenant for the additional premium required, subject to Tenant's right to self-insure (in which event Landlord will contribute to Tenant's self insurance fund to cover increased actuarial risks based upon sound actuarial practices). In the event that Tenant uses the Building for any use, or conducts or permits the conduct of any activity at the Shopping Center, which causes the rate of any insurance carried by Landlord to increase, Tenant shall reimburse Landlord for the additional premium cost caused by Tenant; provided, however, that Landlord hereby acknowledges that Tenant's intended use of the Building as a retail consumer electronics and appliance store as permitted under this Lease and currently operated by Tenant in the majority of its stores in the greater Dallas/Ft. Worth metropolitan area shall be deemed to not cause any such insurance rate increase.

(b)  <u>Liability Insurance</u>. During the Term, Tenant shall keep in full force a policy of commercial general liability insurance with bodily injury and property damage coverage with respect to the Premises and business operated by Tenant, which shall name Landlord and any Mortgagee as additional insureds as their respective interests may appear. The limits of such commercial general liability policy shall be not less than Three Million and No/100 Dollars ($3,000,000.00) combined single limit for bodily injury and property damage, with a commercially reasonable deductible for which Tenant is fully responsible.

(c)  <u>Workers' Compensation Insurance</u>. To the extent required by law, Landlord and Tenant shall maintain workers' compensation insurance covering their respective employees in statutory limits, or maintain such alternate coverages or arrangements as legally permissible.

253080_9[ (00051/38(11975)]

(d) <u>Self-Insurance</u>. Notwithstanding anything to the contrary contained herein, Tenant shall have the right to self-insure against any of the risks or portions thereof set forth in subparagraphs (a) and (b) (and to the extent then permitted by law, (c)) above, provided Tenant has a reported tangible net worth, as of the end of Tenant's most recent quarterly reporting period, of not less than One Hundred Fifty Million Dollars ($150,000,000), as computed in accordance with generally accepted accounting principles, consistently applied, as determinable from Tenant's public disclosures and/or regularly maintained corporate balance sheets which are generally available to shareholders (no right of Landlord to audit or conduct independent investigations being implied by this provision). If Tenant shall not be a publicly held company, then Tenant shall provide financial statements certified by an officer of Tenant evidencing Tenant's right to self-insure hereunder.

(e) <u>Common Area, Additional Area and Third Party Tenant Insurance and Insurance During Landlord's Construction</u>. During the Term, Landlord shall keep in full force and effect policies of (1) commercial general liability insurance, and (2) property insurance insuring against loss or damage by fire and the perils covered under standard "all risk" or "special form" coverage, with respect to the Common Areas and with respect to all other areas of the Shopping Center over which Landlord from time to time has present possessory rights (or has the right under any lease to provide insurance coverage because of a tenant's failure to maintain such required coverage) but which do not constitute a portion of the Common Areas (such areas here sometimes collectively referred to as the "Additional Areas"). The Additional Areas shall include, without limitation: (i) as yet unconstructed portions of the Shopping Center intended for tenant occupancy, (ii) constructed but unoccupied portions of the Shopping Center, (iii) vacated or otherwise uninsured tenant space, whether by reason of lease expiration, default or otherwise, and (iv) constructed and occupied portions of the Shopping Center. Said policies shall name Tenant, and any of Tenant's lenders with respect to Tenant's business operations at the Shopping Center, as an additional insured to the fullest extent Tenant and such lender have insurable interests. The limits of such policies shall be the same as those set forth in subparagraphs (a) and (b) above, as applicable. The cost of the premiums for coverages relating to Common Areas shall be an element of CAM Charges, provided that Tenant shall not be liable for its pro rata share of any premium for coverage in excess of that coverage which is customary among owners of like shopping centers in the greater Dallas-Ft. Worth

metropolitan area. Any deductible amount for Common Area insurance coverage shall be commercially reasonable in amount given the nature of the risk insured and probable frequency of claims made under such coverage, but in no event shall such deductible amount exceed $5,000 for Common Area liability coverage. Landlord shall assure (through parallel lease provisions or otherwise) that all areas of the Shopping Center, including the Additional Areas and areas leased to third party tenants or sold to third party occupants, are insured with substantially similar coverages to those required for the Premises and the Common Areas, such that in the event of any destruction or damage to any portion of the Shopping Center whatsoever Tenant may be assured that sufficient insurance proceeds will be available to permit the Shopping Center to be reconstructed in equal or superior condition within the time frame set forth in paragraph 15. During any period in which Landlord is conducting construction activities at the Shopping Center, Landlord shall keep, or cause its general contractor to keep, in full force and effect, with regard to the Shopping Center, in form reasonably acceptable to Tenant, at least the minimum insurance coverages set forth below:

1) Workers' Compensation - Statutory Limits;
Employer's Liability - $500,000;

2) Automobile Liability for all vehicles with limits of $2,000,000; and

3) Commercial General Liability to include premises operations and products/completed operations coverage with limits of $3,000,000.

Additionally, Landlord shall keep or require its general contractor to keep in full force and effect a policy of builder's risk insurance covering loss or damage to the Shopping Center for the full replacement value of all such construction. To the fullest extent Tenant has an insurable interest, such liability policy shall name Tenant an additional insured.

(f) <u>Policy Provisions</u>. All policies of insurance (other than self-insurance) enumerated above shall be provided by insurance carriers with a Best rating of not less than A-VIII. Any insurance coverage enumerated above may be effected by a blanket policy or policies of insurance or under so-called "all risk" or "multi-peril" insurance policies, provided that the total amount of insurance available with respect to the Premises and Tenant's or Landlord's liability hereunder shall be at least the equivalent of separate policies in the amounts herein required, and

22

provided further that in other respects any such policy or policies shall comply with the provisions of this paragraph 14. Landlord shall not be entitled to self-insure against any of the risks recited herein, except the amount of any commercially reasonable deductible shall not be deemed to be self-insurance. All policies shall provide that no cancellation of insurance shall be effective until at least thirty (30) days written notice has been given to both Landlord and Tenant. An increased coverage or "umbrella" policy may be provided and utilized by either party to increase the coverage provided by individual or blanket policies in lower amounts, and the aggregate coverage provided by all such policies with respect to the limits required herein shall be satisfactory provided that such policies otherwise comply with the provisions of this paragraph 14. It shall not be necessary for either party to deliver the original of any such blanket or other policy to the other, but the other party shall be furnished with a certificate of such policy upon (i) commencement of the Main Term (as to casualty insurance), (ii) upon delivery of the Land (as to liability insurance), (iii) no less than annually thereafter, or (iv) immediately upon the renewal of the policies thereafter or the inception of a new policy.

    (g)    <u>Waiver of Right of Recovery and Subrogation</u>. To the extent that insurance proceeds are actually received in satisfaction of a loss which is required to be covered by insurance or is self-insured hereunder (with the deductible under any policy being deemed to be self-insured), Landlord and Tenant hereby waive any and all rights of recovery against each other for any loss or damage to the Premises or the contents contained therein, for loss of income on account of fire or other casualty, or for injury sustained on the Premises or the Common Areas; and each party's aforesaid policies of insurance shall contain appropriate provisions recognizing this mutual release and waiving all rights of subrogation by the respective insurance carriers.

    (h)    <u>Evidence of Insurance</u>. Subject to Tenant's right to self-insure hereunder, upon (i) commencement of the Main Term (as to property insurance), (ii) upon Delivery of the Land (as to liability insurance) and (iii) prior to expiration thereof, Tenant and Landlord shall cause to be issued to each other in lieu of the original policy, a duplicate of such policy or appropriate certificates of insurance reasonably acceptable to the other party and evidencing compliance with the applicable covenants of this paragraph 14. Each such certificate shall provide that no expiration, cancellation or material change in the insurance evidenced thereby shall be effective unless thirty (30) days'

unconditional notice of such expiration, cancellation or material change shall have been given to the certificate-holder (and any Mortgagee, if applicable).

(i) <u>Indemnities</u>. Except if arising from the negligent or willful acts of Landlord or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Tenant hereby agrees to indemnify, defend and hold Landlord harmless from all claims, costs, liability, damage or expense, including reasonable attorneys' fees, for any death, damage or injury to persons or property occurring on the Premises or resulting from Tenant's use thereof.

Except if arising from the negligent or willful acts of Tenant or its agents or employees (to the extent that paragraph 14(g) is inapplicable thereto), Landlord agrees to indemnify, defend and hold Tenant harmless from any and all claims, costs, liability, damage or expense, including reasonable attorneys' fees, for any death, damage or injury to persons or property occurring in, on or around the Shopping Center, exclusive of the Premises, or other buildings within Landlord's Premises or resulting from the use thereof by Landlord, its agents or employees.

15. <u>Damages by Fire or Other Casualty</u>.

(a) <u>Less Than Two Hundred Forty (240) Days to Repair</u>. In the event a fire, earthquake or other casualty required to be insured against under this Lease causing destruction or damage to the Improvements, Common Areas and/or Additional Areas, which, in the opinion of the Architect (as hereinafter defined), shall take less than two hundred forty (240) days to repair in the case of the Improvements and Common Areas after receipt of all insurance proceeds and required governmental permits, this Lease shall not terminate except as expressly set forth in subparagraph (c) below, there shall be no abatement of Base Rent or other Rent and Base Rent and other charges shall continue to be paid by Tenant pursuant to the terms of paragraph 4 hereof. Within a reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds (unless self-insured) to the extent of the damage to the Premises, or the Common Areas or Additional Areas, as applicable, Tenant shall complete reconstruction of the Building and Other Improvements, and Landlord shall complete reconstruction of the Common Areas and Additional Areas to that condition generally existing immediately prior to such casualty, in the reconstructing party's reasonable discretion, with, in event of any Tenant reconstruction, such alterations as may be permitted under paragraph 12 hereof. In

24

253080_9[ (00051/38(11975)]

the event, subject to force majeure, the Premises, Common Areas and/or Additional Areas, as applicable, are not substantially repaired and reconstructed, restored or replaced by the party with repair and restoration obligations within two hundred forty (240) days after receipt of any required governmental permits, for which permits the party with repair obligations shall make prompt application following the Architect's determination of the repair time in connection with such destruction or damage, and insurance proceeds (if not self-insured), then the other party, at its option, by giving written notice to the party with repair obligations, within thirty (30) days after the expiration of said 240-day period, may undertake completion of such reconstruction, in which event the party with repair obligations shall make available to the notifying party all insurance proceeds received by the non-performing party for such reconstruction (including any applicable deductible) or, if self-insured, the amount necessary for such reconstruction, provided, however, in no event shall Tenant be permitted to reconstruct any other tenant space within the Shopping Center.

All insurance proceeds received (or self-insurance payable) on account of such damage or destruction, less the cost, if any, of recovery of such insurance proceeds, shall be applied pursuant to the terms of this Lease to the payment of the cost of such restoration, repair, replacement, rebuilding, or alteration (the "Work"), including expenditures made for temporary repairs or for the protection of property pending the completion of permanent restoration, repair, replacement, rebuilding, or alteration, and, if required by any Mortgagee, shall be held by a mutually agreeable third-party escrow agent (which is, for these purposes, the "Escrow Agent"), in an interest bearing account in a federally insured financial institution or institutions such that all funds are deposit insured (or otherwise assured in a manner acceptable to the parties), to be paid out as provided below, from time-to-time (but no more often than once monthly), as the Work progresses, upon Tenant's written request in event of work by Tenant, or Landlord's written request in event of work by Landlord, accompanied by a certificate of the architect or engineer in charge of the Work (the "Certificate"), dated not more than seven (7) days prior to such request, stating that the sum then requested either has been paid by Tenant or Landlord, as applicable, or is justly due to the named contractors, subcontractors, materialmen, engineers, architects, or other persons (whose addresses shall also be stated) who have rendered services or furnished materials for certain portions of the Work. The Certificate shall give a brief description of such services and materials, shall list the

several amounts so paid or owing to each of such persons, shall state the cost of the Work at the date of the requisition, and shall state that no part of such expenditures has been or is being made the basis for any other request for payment. The Certificate shall state also that, except for the amounts listed therein, there is no outstanding indebtedness known to such architect or engineer, after due inquiry, which has accrued and become payable for labor, wages, materials, supplies, or services in connection with the Work which, if unpaid, might become the basis of a vendor's, mechanic's, laborer's, materialman's, or similar lien upon the Work, the Improvements, the Land, or any part thereof.

(b) <u>More Than Two Hundred Ten (240) Days to Repair</u>. In the event of a fire, earthquake or other casualty required to be insured hereunder causing destruction or damage to the Improvements, Common Areas and/or Additional Areas, which, in the opinion of the Architect shall take longer than two hundred forty (240) days to repair in the case of the Improvements and the Common Areas after the receipt of all insurance proceeds and required governmental permits, Tenant shall have the option of terminating this Lease. Tenant shall notify Landlord of its exercise of such option within sixty (60) days following the occurrence of such casualty and shall thereupon make available to Landlord all insurance proceeds or reconstruction costs as set forth in subparagraph (a) above. In the event Tenant does not elect to terminate this Lease as set forth above, then, promptly after receipt by Tenant of the required governmental permits for restoration, for which permits Tenant shall make prompt application following such destruction or damage, and insurance proceeds (if not self-insured) with regard to such damage or destruction, Tenant shall complete reconstruction of the Improvements to their condition generally existing immediately prior to such damage, in Tenant's reasonable discretion, with such alterations as may be permitted under paragraph 12, and shall restore the Premises (including equipment, furniture and fixtures). Should Tenant elect to maintain this Lease in full force and effect, Landlord shall reconstruct all Common Areas and Additional Areas, and Tenant shall reconstruct the Building and Other Improvements in the manner specified by subparagraph (a) above regardless of the amount of damage to same.

(c) <u>Restoration of Common Areas and/or Additional Areas</u>. Notwithstanding anything contained herein to the contrary, should the Lease remain in full force and effect or should Tenant elect to maintain this Lease in full force and effect, as the case may be, Landlord, within a

26

253080_9[ (00051/38(11975)]

reasonable time after such casualty, subject to force majeure, applicable building codes, the procurement of building permits and the receipt of insurance proceeds, shall reconstruct the Common Areas and the Additional Areas so that all Common Areas and not less than ninety percent (90%) of the gross leasable area of the Shopping Center shall be reconstructed.

(d) <u>Last Two (2) Years of Main Term or Option Period</u>. Notwithstanding the foregoing, if any such damage or destruction occurs within the last two (2) years of the Main Term or of any Option Period and has a material impact on Tenant's ability to conduct business, as reasonably and in good faith determined by Tenant, Tenant shall be under no obligation to restore the Improvements, in which case this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, which notice must be given within sixty (60) days after Tenant has actual knowledge of such damage or destruction, and Landlord shall receive the proceeds of any insurance (together with any applicable deductible) which are paid with regard to such destruction or damage or, in the event Tenant self-insures, the amount necessary for reconstruction of the Improvements, to the extent such amount would have been payable under insurance as outlined herein.

(d) <u>Determination of Architect</u>. For purposes of determining the period required for any casualty repair hereunder, Landlord and Tenant shall reasonably agree and select an A.I.A. designated architect licensed in the State of Texas (the "Architect") for the sole purpose of determining the time required to repair damage caused by a casualty. The cost of such Architect shall be shared equally by Landlord and Tenant. In the event that Landlord and Tenant cannot agree upon the identity of the Architect, then the local A.I.A. representative board shall appoint the Architect who shall be experienced in retail commercial construction for purposes of determining the period required for such repair, which appointment shall be binding upon Landlord and Tenant.

16. <u>Condemnation</u>.

(a) <u>Definition of Taking and Substantial Taking</u>. For the purpose of this Lease, a "Taking" shall mean any condemnation or exercise of the power of eminent domain by any authority vested with such power or any other taking for public use, including a private purchase in lieu of condemnation by an authority vested with the power of eminent domain; the "Date of Taking" shall mean the earlier of the date upon which title to the Premises, the Shopping Center or any

portion thereof so taken is vested in the condemning authority or the date upon which possession of the Premises, the Shopping Center, or any portion thereof is taken by the condemning authority; and "Substantially All of the Premises" shall mean (i) so much of the Improvements and/or Shopping Center and Common Areas as, when taken, leaves the untaken portion unsuitable, in Tenant's reasonable and good faith opinion, for the continued feasible and economic operation of the Premises by Tenant for the same purposes as immediately prior to such Taking or as contemplated herein, (ii) so many of the parking spaces within the Shopping Center as reduces the parking ratio below the greater of five (5) spaces (for full-sized automobiles) per 1000 square feet of ground-floor gross leasable area or that ratio which is required by the zoning ordinance applicable to the Shopping Center, and Landlord's failure to provide substantially equivalent alternative parking reasonably acceptable to Tenant within ninety (90) days after such Taking, or (iii) so much of the Common Area Easement described in paragraph 6 above that access to the Premises within Tenant's Preferred Area is materially and adversely impeded.

(b) <u>Tenant's Rights Upon Taking or Substantial Taking</u>. In the event of a Taking of Substantially All of the Premises, Tenant, at its option upon thirty (30) days' written notice to Landlord, which shall be given no later than sixty (60) days following the Taking, shall have the right to terminate this Lease. All Base Rent and other sums payable by Tenant hereunder shall be apportioned and paid through and including the Date of Taking. Following the Date of Taking through and including the date on which Tenant notifies Landlord of its election to terminate this Lease, Tenant shall pay Base Rent and other sums payable by Tenant hereunder in proportion to the extent to which Tenant remains open for business and is able to operate its business from the Premises as compared to Tenant's ability to do the same prior to such Taking. Neither Landlord nor Tenant shall have any rights in any compensation or damages payable to the other in connection with such Taking, and Tenant shall only be entitled to such condemnation proceeds that are specifically awarded to Tenant.

(c) <u>Tenant's Rights Upon Less Than Substantial Taking</u>. In the event of a Taking of less than Substantially All of the Premises, Base Rent and other charges shall be reduced fairly and equitably in accordance with the portion condemned or taken, effective as of the Date of Taking, and Tenant shall make all necessary restorations to the Improvements so that the portions of the

Improvements not taken constitute a complete architectural unit, provided that the cost thereof to Tenant shall not exceed the proceeds of Tenant's condemnation award (to the extent that such relates to the Improvements and not to Tenant's personal property, intangibles or out-of-pocket expenses unrelated thereto) and the portion of Landlord's award allocable to the Premises (other than values allocated to the Land), which Landlord shall make available to Tenant for such restoration after Tenant has first expended all sums awarded Tenant for the restoration of the Improvements. If the Taking occurs within the last two (2) years of the Main Term or of any Option Period and has a material, adverse impact on Tenant's ability to conduct business as reasonably determined by Tenant, this Lease shall terminate at Tenant's option, such option to be exercised by Tenant giving not less than thirty (30) days' prior written notice to Landlord, which notice shall be given no later than sixty (60) days after the Date of the Taking.

(d)  <u>Landlord's Obligations Upon Any Taking</u>.  In the event of any Taking following which the Lease continues in effect, within a reasonable time after such Taking, subject to force majeure, applicable building codes, the procurement of building permits and receipt of condemnation proceeds, Landlord shall make all necessary restorations to all portions of the Common Areas and Additional Areas so that all Common Areas and not less than ninety percent (90%) of the gross leasable area of the unaffected portions of Shopping Center shall be reconstructed and such that they each constitute a complete architectural unit and serve the function originally intended.

(e)  <u>Rights Upon Temporary Taking</u>. In the event of a Taking of the Premises, the Common Areas and/or any other area within the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding sixty (60) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect, and the Taking shall not relieve Tenant from its duty and obligation fully and completely to keep, observe, perform, satisfy and comply with each and every agreement, term, covenant, condition, requirement, provision and restriction of this Lease. All awards, damages, compensation and proceeds payable by the condemnor by reason of such a temporary Taking relating to the Premises, or relating to the Common Areas but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant. All awards, damages, compensation and proceeds relating to a

temporary Taking of the Shopping Center and all such awards, damages, compensation and proceeds payable by the condemnor by reason of such a temporary Taking relating to the Premises for periods after the expiration of the Lease (and any such awards, damages, compensation and proceeds applicable to Landlord's Promises) shall be payable to Landlord. Anything contained herein to the contrary notwithstanding, a temporary Taking for any period in excess of ninety (90) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by subparagraph (b) or (c) above, as applicable.

(f) <u>Taking of the Monument Sign(s)</u>. In the event of a taking, whether permanent or temporary, of any monument sign (as contemplated by paragraph 8) on which Tenant has installed identification panels, Landlord shall provide within ninety (90) days a substitute site (reasonably acceptable to Tenant) therefor, with adequate electrical power, located so as to be visible to vehicular traffic or roadways adjacent to the Shopping Center and/or at entrances to the Shopping Center, and Landlord shall replace and/or rebuild any of such signage so taken at its sole cost. Landlord's obligation under this paragraph 16(f) shall be subject to the terms of any applicable governmental laws, codes, ordinance, and approvals.

(g) <u>Tenant's Right Upon Condemnation</u>. In the event of a Taking described in subparagraph (b) or (c) above, Tenant shall be entitled to claim compensation from the condemning authority for the value of its leasehold interest in the Premises, its unamortized leasehold improvements paid for by Tenant (and not paid or reimbursed by Landlord), relocation expenses and any other items to which Tenant is entitled under applicable law.

17. <u>Assignment and Subletting</u>. Tenant shall have the right to sublet, assign, transfer reassign and grant concessions or licenses (a "Transfer") in all or any part of the Premises and any of Tenant's rights and obligations under this Lease during the Term, without Landlord's prior consent. In the event of such a Transfer, Tenant shall remain liable for all of Tenant's obligations to Landlord arising hereunder. If this Lease is changed, modified or amended in any respect by Landlord and any transferee without Tenant's prior written consent, Tenant shall not be liable for any increased obligations or liabilities of Tenant arising from such change, modification or amendment.

Notwithstanding anything contained herein to the contrary, in the event of such a Transfer, prior to the effectiveness of such Transfer, Tenant shall deliver to Landlord written notice (a

"Transfer Notice") from Tenant identifying a proposed assignee or sublessee, which Transfer Notice shall include the material business terms of the transaction if Tenant is subletting the Premises, current financial information regarding such assignee or sublessee, such assignee or sublessee's proposed use and such other information as Tenant may have in its possession, and Landlord shall have the right following receipt of the Transfer Notice, to recapture the Premises and terminate this Lease upon payment to Tenant of a sum equal to the amount of Tenant's then-unamortized costs of improvements made to the Premises (which amount shall include the unamortized amount of the Tenant Improvement Allowance if Landlord has not yet paid such amount pursuant to the Construction Provisions (the "Unamortized Costs")). If Landlord elects to terminate the Lease (which election Landlord shall be deemed not to have made if Landlord fails to respond to any Transfer Notice within thirty (30) days of its receipt), the Lease shall terminate on the earlier of (i) the date Tenant vacates the Premises, or (ii) the date of the proposed transfer as set forth in the Transfer Notice, and the Unamortized Costs shall be paid to Tenant by Landlord on the date of termination.

18. Use.

(a) Tenant may initially maintain, use and operate the Premises as a retail store for (i) the sale of consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers and video recorders and players), computer hardware and software, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes and compact discs), cellular and wireless telephones and telecommunication devices, household appliances and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems and technological evolutions of the foregoing (all of such items being herein collectively referred to as the "Products"), and (ii) renting, servicing, repairing and warehousing of the Products.

(b) Tenant shall also have the right to use the Premises for any lawful retail use; provided, however, that the Premises shall not be used (i) for any illegal purpose, (ii) for any use prohibited under paragraph 19(a)(viii) below, (iii) in violation of any exclusive use restriction granted a tenant or other occupant of the Shopping Center pursuant to a lease or restrictive covenants