reletting and collection, including, without limitation, necessary renovation and alterations of the Premises, reasonable and actual attorneys' fees and any reasonable and actual real estate commissions paid, and (ii) thereafter toward payment of all sums due or to become due Landlord hereunder. If a sufficient amount to pay such expenses and sums shall not be realized or secured, in Landlord's exercise of reasonable efforts to mitigate its damages (which Landlord hereby agrees to make), then Tenant shall pay Landlord any such deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise. Landlord shall not, in any event, be required to pay Tenant any sums received by Landlord on a reletting of the Premises in excess of the Rent provided in this Lease, but such excess shall reduce any accrued present or future obligations of Tenant hereunder. Landlord's re-entry and reletting of the Premises without termination of this Lease shall not preclude Landlord from subsequently terminating this Lease as set forth below. Landlord shall be deemed to have made reasonable efforts to mitigate its damages if, upon such re-entry, it promptly (i) either lists the Premises with a real estate broker licensed in the State of Texas and experienced in retail leasing or directs its own brokerage affiliates, if any, to market the Premises; (ii) instructs such broker to employ all usual and customary methods of obtaining retail tenants, including advertisements, "For Lease" signs and showing the Premises to prospective tenants; (iii) establishes a listed rental which represents fair rental value for the Premises and establishes other usual and customary lease terms, taking into account prevailing market conditions and the location, age, condition, size and adaptability of the Premises, all as determined by Landlord in the exercise of its good faith business judgment; (iv) takes reasonable action to ensure that the broker performs in accordance with customary standards for the marketing of retail leasehold property, the reasonableness of such action by Landlord to be judged in light of the actions usually taken by Landlord with regard to the listing and marketing of other retail leasehold properties, which properties are not being marketed as a result of Landlord's re-entry following the prior tenant's default; and (v) accepts an offer to lease the Premises at fair rental value based on the criteria described in subparagraph (iii) above, provided that the prospective tenant is of a credit standing and business reputation reasonably acceptable to Landlord and proposes to use the Premises in a manner that is compatible and consistent with the type of uses being made in the Shopping Center and not in conflict with any existing exclusive uses.

(b) <u>Terminate Lease</u>. Landlord may terminate this Lease by written notice to Tenant specifying a date therefor, which shall be no sooner than thirty (30) days following receipt of such notice by Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term. In the event of such termination, Landlord shall be entitled to recover from Tenant all of the following:

(i) The amount of all delinquent Base Rent and other charges (including accrued interest thereon from the date of delinquency until paid at the Default Rate) which has accrued prior to the date of termination; and

(ii) The "worth at the time of the award" of the amount by which the unpaid Base Rent and all other charges which would have accrued after termination until the time of award exceeds the amount of any sums which Landlord has (or Tenant proves that Landlord could have) received in mitigation.

As used in this paragraph 29(b), the term, "worth at the time of the award", shall be computed by allowing simple interest at an accrual rate of equal to the Default Rate for past due obligations, and a discount rate to net present value of ten percent (10%) on anticipated future obligations, on the amount of the obligations payable on the date of such calculation. In the event this Lease shall be terminated as provided above, by summary proceedings or otherwise, Landlord, its agents, servants or representatives may immediately or at any time thereafter peaceably re-enter and resume possession of the Premises and remove all persons and property therefrom, by summary dispossession proceedings. Landlord shall never be entitled to dispossess Tenant of the Premises pursuant to any "lock-out" or other nonjudicial remedy.

(c) <u>Reimbursement of Landlord's Costs in Exercising Remedies</u>. Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand, such reasonable and actual expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition and repairing and renovating the same for reletting, and all other reasonable and actual expenses, commissions and charges incurred by Landlord in exercising any remedy provided herein or as a result of any Event of Default by Tenant hereunder (including, without limitation, attorneys' fees), provided that in no event shall Tenant be obligated to compensate Landlord for any

speculative, consequential or punitive damages caused by Tenant's failure to perform its obligations under this Lease.

(d) <u>Equitable Remedies</u>. Subject to Tenant's rights set forth herein, Landlord shall at all times have the right to seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease or restrain or enjoin a violation of any provision hereof.

(e) <u>Remedies Are Cumulative</u>. The various rights and remedies reserved to Landlord herein are cumulative, and Landlord may pursue any and all such rights and remedies (but no others), whether at the same time or otherwise (to the extent not inconsistent with specific provisions of this Lease). Notwithstanding anything herein to the contrary, Landlord expressly waives its right to forcibly dispossess Tenant from the Premises, whether peaceably or otherwise, without judicial process, such that Landlord shall not be entitled to any "commercial lockout" or any other provisions of applicable law which permit landlords to dispossess tenants from commercial properties without the benefit of judicial review.

(f) <u>Additional Landlord Remedies Due to Construction Delays by Tenant</u>. If, subject to force majeure, Tenant shall fail to commence its construction by that date which is ninety (90) days following Delivery of the Land, Landlord at its option, upon prior written notice to Tenant, may require Tenant to proceed with its construction and commence payment of Ground Rent (as hereinafter defined) on the date which is two hundred ten (210) days following Delivery of the Land.

If, subject to force majeure, Tenant shall fail to achieve Substantial Completion by that date which is two hundred forty (240) days following Delivery of the Land, Landlord, at its option, upon prior written notice to Tenant, may require Tenant to proceed with its construction, commence payment of Ground Rent on the date which is two hundred forty (240) days following Delivery of the Land, and reimburse Landlord for its fixed and ascertainable costs incurred as a result thereof. Such costs shall be limited to Landlord's out-of-pocket expenses of construction overtime and acceleration charges paid to Landlord's contractors or subcontractors, charges for the scheduling of construction crews on days on which work cannot be performed on account of the aforesaid delays by Tenant, the cost of erecting barricades around Tenant's unfinished work and construction period interest charges to the extent that such charges exceed those which would have accrued without such delay.

In the event, for any reason whatsoever and regardless of force majeure, Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following Delivery of the Land, Landlord shall be entitled to terminate this Lease upon sixty (60) days prior written notice to Tenant, during which sixty (60) day period Tenant may cure any such default hereunder provided, Landlord shall not be required to give any additional notices or time periods for cure.

For purposes hereof, annual Ground Rent shall equal Two Hundred Six Thousand and No/100 Dollars ($206,000.00), payable monthly in equal installments of 1/12 each of the amount of the annual Ground Rent, in lieu of Base Rent, for so long as Tenant's failure continues.

30. <u>Events of Landlord's Default; Tenant's Remedies</u>.

(a) <u>Default by Landlord</u>. Any of the following occurrences, conditions or acts by Landlord shall constitute an "Event of Default": (i) Landlord's failure to make any payments of money due Tenant or for the payment of the brokerage commissions pursuant to paragraph 34 hereof, within ten (10) days after the receipt of written notice from Tenant that same is overdue in which event, the delinquent amount shall accrue interest from the due date at the Default Rate; or (ii) Landlord's failure to perform any nonmonetary obligation of Landlord hereunder within thirty (30) days after receipt of written notice from Tenant to Landlord specifying such default and demanding that the same be cured; provided that, if such default cannot with due diligence be wholly cured within such thirty (30) day period, Landlord shall have such longer period as may be reasonably necessary to cure the default, so long as Landlord proceeds promptly to commence the cure of same within such thirty (30) day period and diligently prosecutes the cure to completion and provided further that in the case of an emergency, Tenant shall be required to give only such notice as is reasonable under the circumstances. Notwithstanding the foregoing, with respect to any event of default described in subparagraph (c) below, Tenant shall not be obligated to deliver any notice of default nor any opportunity to cure such default, it being agreed that with respect to the dates set forth therein time is of the essence.

(b) <u>Remedies Upon Landlord's Default</u>. Upon the occurrence of an Event of Default by Landlord, at Tenant's option, in addition to any and all other remedies which it may have at law and/or in equity, and without its actions being deemed an election of remedies or a cure of Landlord's default, Tenant may do all or any of the following: (i) pay or perform such obligations

52

253080_9[ (00051/38(11975)]

and offset Tenant's reasonable and actual cost of performance, including any and all transaction costs and attorneys' fees, plus interest at the Default Rate, against the Base Rent, CAM Charges and any and all other amounts and charges due Landlord hereunder or (ii) in the event of an actual or constructive eviction, terminate this Lease and sue for (actual, but not consequential or punitive) damages, including interest, transaction costs and reasonable attorneys' fees as specified in subsection (i) above. Notwithstanding the foregoing, (a) Tenant shall not be allowed to offset more than fifty percent (50%) of the Base Rent, Rent and other amounts due during any one-month period for the first three (3) months of any offsetting and to the extent any arrearage remains thereafter Tenant may offset up to one hundred percent (100%) of the Base Rent, Rent and other amounts due thereafter, and all such arrearage shall accumulate interest at the Default Rate and may continue to be offset as herein provided until paid in full. If Landlord fails to pay Tenant the Tenant Improvement Allowance in a timely manner, Tenant shall be entitled to the rights and remedies set forth in this paragraph and the Construction Provisions; and, as to a breach of the warranties and representations contained in paragraph 19, Tenant shall be entitled to the remedies provided therein, in addition to those remedies provided herein. All amounts, including interest, transaction costs and attorneys' fees, arising out of uncured defaults of Landlord shall constitute liens against Landlord's interest in the Shopping Center, which may be enforced by judicial means available under State law, or any other applicable proceedings, provided such lien shall be subordinate to the lien of any Mortgage which was recorded prior to such judgment. The various rights and remedies reserved to Tenant herein are cumulative, and Tenant may pursue any and all of such rights and remedies, whether at the same time or otherwise. Notwithstanding anything to the contrary in this Lease, or otherwise at law or in equity, except as otherwise specifically set forth in paragraphs 15 and 16, in no event shall Tenant at any time have the right to seek a writ of specific performance with respect to Landlord's covenant in paragraph 5 of this Lease to construct and develop the gross leasable areas of the Shopping Center.

(c)    <u>Additional Tenant Remedies Due to Construction Delays by Landlord</u>. In the event, subject to force majeure, Landlord shall fail to complete the Site Work and accomplish Delivery of the Land in the condition specified herein by February 1, 2001 (the "Delivery Date"), Landlord agrees that it shall reimburse Tenant for its fixed and ascertainable out-of-pocket costs

53

253080_9[ (00051/38(11975)]

incurred as a result thereof in the exercise of all reasonable efforts to open for business by May 1, 2001. Such costs shall be limited to Tenant's out-of-pocket expenses of construction overtime, acceleration charges and bonuses paid to Tenant's contractors or subcontractors, charges for the scheduling of construction crews on days on which work cannot be performed due to the delays by Landlord and construction period interest charges actually incurred to the extent that such charges exceed those which would have accrued without such delay.

In the event, subject to force majeure, Landlord shall fail to accomplish Delivery of the Land by the date which is fifteen (15) days following the Delivery Date, or to complete any subsequent element of the Landlord Work by the completion date established therefor in <u>Attachment "1"</u> of <u>Exhibit "C"</u> attached hereto (the Construction Schedule), Tenant, at its option and upon five (5) days' prior written notice to Landlord, which notice may be given prior to or at any time after the applicable date for performance, may in addition to any other rights and remedies set forth herein, enter the Shopping Center and perform any task required for Delivery of the Land or, as applicable, any element of the Landlord Work which has not been timely completed, and Landlord shall reimburse Tenant for its actual costs thereof, including interest on such costs at the Default Rate. Landlord hereby grants Tenant the right, as its agent, to directly contact and contract with Landlord's contractors, on behalf of Landlord, to complete such work, all at Landlord's cost and expense, provided, in no event shall Tenant incur any obligations on Landlord's behalf beyond those necessary to complete Landlord's Work. Landlord covenants, upon Tenant's request, to provide Tenant with duplicate sets of all plans, specifications and contracts prepared in connection with the construction of the Shopping Center, as well as schedules of all contractors, subcontractors and suppliers necessary to meet Landlord's obligations to complete the Landlord Work. If such costs are not reimbursed to Tenant prior to the Commencement Date, Tenant may offset such amounts against Base Rent and CAM Charges otherwise due until such costs and accrued interest are reimbursed in full.

In the event, for any reason whatsoever (other than delays caused by Tenant) and regardless of force majeure, Landlord shall fail to complete Delivery of the Land to Tenant by the date which is thirty (30) days from the Delivery Date, Tenant shall be entitled to terminate this Lease at any time prior to such delivery and receive from Landlord promptly thereafter a sum equal to the actual out-

of-pocket expenses and substantiated third-party legal, architectural and engineering costs incurred by Tenant to the date of termination, not to exceed One Hundred Thousand and No/100 Dollars ($100,000.00) or Tenant may elect to delay opening of its store facility for a period not to exceed nine (9) months, during which time Tenant shall pay no Ground Rent, Base Rent, Real Estate Taxes or CAM Charges. In such event, Landlord shall deliver the Land and complete the Site Work on the date subsequently required by Tenant, and Landlord shall pay to Tenant on demand an amount equal to all costs incurred by Tenant in the development of its store facility, including, but not limited to, costs of materials and all engineering, architectural, legal fees, and costs of delay resulting from Landlord's failure to timely deliver, not to exceed One Hundred Thousand and No/100 Dollars ($100,000.00).

(d)    Exercise of Remedies. Notwithstanding the foregoing, a delay by Tenant in exercising its cure rights or other remedies hereunder shall not be deemed an event of force majeure for purposes of extending the date(s) established for performance by Landlord. All sums owing to Tenant under paragraph 30 hereof shall, to the extent applicable, be added to the Tenant Improvement Allowance and paid simultaneously therewith; and, if not so paid, Tenant shall be entitled to offset all such costs, plus interest at the Default Rate, against Base Rent and Rent otherwise due hereunder subject to the limitations set forth in paragraph 30(b) above. Nothing contained herein shall be deemed a waiver of any default by Landlord nor an assumption by Tenant of any liability of Landlord, its partners, principals or joint venturers. Tenant may recover from Landlord, and Landlord shall pay to Tenant upon demand, such reasonable and actual expenses, including, without limitation, attorneys' fees incurred by Tenant as a result of Landlord's failure to perform its obligations under this Lease.

(e)    Time is of the Essence. Notwithstanding anything contained herein to the contrary, Landlord covenants that it shall complete its construction and delivery obligations in accordance with the "Completion Dates" set forth in the Construction Schedule. In the event that Landlord fails to complete its construction and delivery obligations in accordance with such Completion Dates, Tenant may, at its sole election, exercise such remedies as are set forth herein.

31.    Waiver. If either Landlord or Tenant fails to insist on the strict observance by the other of any provisions of this Lease, neither shall thereby be precluded from enforcing nor be held

to have waived any of the obligations, past, present or future, of this Lease. Either party may accept late payment or performance by the other without waiving any Event of Default which may then have accrued.

32.  Compliance with Applicable Laws. During the Term, (a) Tenant shall comply with all lawful requirements (including all future laws and regulations) of the local, county and state health boards, police and fire departments, municipal and state authorities and any other governmental authorities with jurisdiction over the Improvements, and of the board of fire underwriters (collectively, the "Lawful Requirements"), respecting Tenant's construction, use and occupancy of the Improvements relating to those portions of the Premises Tenant is required to maintain pursuant to paragraph 10, and (b) Landlord shall comply with all such Lawful Requirements, relating to those portions of the Premises which are Landlord's responsibility to maintain pursuant to paragraph 10 and all portions of the Landlord's Premises (other than the Premises). In the event that Tenant, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Landlord or any such authority ordering performance of any such work which Tenant is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Landlord may perform said work and collect the reasonable cost thereof plus interest at the Default Rate from Tenant with the next installment or installments of Base Rent. In the event that Landlord, within thirty (30) prior days' written notice (except in the case of an emergency, in which event only such notice as is reasonable under the circumstances shall be required) from Tenant or any such authority ordering performance of any such work which Landlord is required to perform in order to remain in, or come into, compliance with any such requirement, fails to perform or diligently commence performance of same with reasonable promptness, Tenant may perform said work and deduct the reasonable cost thereof plus interest at the Default Rate from Landlord with the next installment or installments of Base Rent.

33.  Notices. Any notice permitted or required to be given pursuant to this Lease shall be deemed to have been given three (3) business days after mailing a written notice by certified mail, postage prepaid, return receipt requested, or one (1) business day after sending by Federal Express

or other comparable overnight express courier service (with proof of receipt available), or upon receipt if given by hand-delivery, addressed to the parties as follows:

    If to Tenant:        CIRCUIT CITY STORES, INC.
                              Deep Run I
                              9950 Mayland Drive
                              Richmond, Virginia 23233
                              Attention: Corporate Secretary
                              Facsimile: (804) 527-4186

    with a copy to:       CIRCUIT CITY STORES, INC.
                              Deep Run I
                              9950 Mayland Drive
                              Richmond, Virginia 23233
                              Attention: Vice President of Real Estate
                              Facsimile: (804) 527-4186

    If to Landlord:       SPC NEC121, LTD.
                              15950 Berkshire Lane, Suite 1275
                              Dallas, Texas 75225
                              Attention: Mr. James E. Strode
                              Facsimile: (214) 361-0049

or to such other addressees as any party hereto shall from time to time give notice to the other party in accordance with this paragraph.

    34.    <u>Brokers</u>. Landlord and Tenant each covenant that they have not dealt with any real estate broker or finder with respect to this Lease, except for The Equity Group and Moody-Rambin, which shall be paid a commission by Landlord subject to their separate written agreement. Except for the foregoing, each party shall hold the other party harmless from all damages, claims, liabilities or expenses, including reasonable and actual attorneys' fees (through all levels of proceedings), resulting from any claims that may be asserted against the other party by any real estate broker or finder with whom the indemnifying party either has or is purported to have dealt.

    35.    <u>Miscellaneous</u>.

        (a)    <u>Headings and Gender</u>. All paragraph headings, titles or captions contained in this Lease are for convenience only and shall not be deemed a part of this Lease and shall not in any way limit or amplify the terms and provisions of this Lease. The masculine, feminine or neuter

253080_9[ (00051/38(11975)]

gender and the singular or plural number shall be deemed to include the others whenever the context so requires or indicates.

(b) <u>Construction</u>. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.

(c) <u>Waiver of Jury Trial</u>. In the event of any court action arising out of this Lease, each party hereby expressly waives its right to trial by jury.

(d) <u>Relationship of Landlord-Tenant</u>. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership, joint venture, or any other association between Landlord and Tenant other than the landlord-tenant relationship described herein.

(e) <u>Entire Agreement; Merger</u>. This Lease, including all exhibits hereto (which are hereby incorporated herein by reference for all purposes), contains the full and final agreement of every kind and nature whatsoever between the parties hereto concerning the subject matter of this Lease, and all preliminary negotiations and agreements of whatsoever kind or nature between Landlord and Tenant are merged herein. This Lease cannot be changed or modified in any manner other than by a written amendment or modification executed by Landlord and Tenant.

(f) <u>Attorneys' Fees</u>. In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the party prevailing in such action or proceeding shall be entitled to recover from or to be reimbursed by the other party for the prevailing party's reasonable and actual attorneys' fees and costs through all levels of proceedings.

(g) <u>Partial Invalidity</u>. If any provision of this Lease or the application thereof to any person or circumstance shall be deemed invalid or unenforceable, the remainder of this Lease and its application to other persons or circumstances shall not be affected by such partial invalidity but shall be enforced to the fullest extent permitted by law as though such invalid or unenforceable provision was never a part hereof.

253080_9[(00051/38(11975)]

(h)     Consents.  Any consent or approval granted by either party hereunder shall be deemed a consent only as to the matter on which such consent was requested and shall not waive the consenting party's right to give or withhold consent to any subsequent matter.

(i)     Holidays.  If the day on which rent or any other payment due hereunder is payable falls on a Saturday, Sunday or on a legal holiday, it shall be payable on the following business day.

(j)     Applicable Law.  This Lease shall be construed in accordance with the laws of the State, and the parties agree that jurisdiction for all actions hereunder shall lie therein.

(k)     Successors and Assigns.  All rights, obligations and liabilities herein given to or imposed upon any party hereto shall extend to the permitted successors and assigns of such party.

(l)     Counterparts.  This Lease may be executed in one or more identical counterparts, and as so executed by all parties hereto shall constitute a single instrument for purposes of the effectiveness of this Lease.

(m)     Trademarks and Trade Names.  All trademarks, trade names, service marks, signs and all other marks of identification used by Tenant in its business shall at all times remain the exclusive property of Tenant, and Landlord shall have no right, interest in, or title to any of Tenant's trademarks, trade names, service marks, signs or other marks of identification.

(n)     Exhibits.  All of the exhibits to this Lease are hereby incorporated herein by reference for all purposes and are part of this Lease.

(o)     No Construction Against Either Party.  This Agreement shall be interpreted to give it fair meaning and shall not be construed against either party.

36.     Tenant's Right to Terminate.  The parties agree that the following conditions must be met to Tenant's complete satisfaction (or waived) as set forth herein:

(a)     Landlord's delivery of subordination, non-disturbance and attornment agreements and estoppel letters executed by any and all existing Mortgagees in a form reasonably satisfactory to Tenant simultaneously with the execution hereof or at the time Landlord obtains its Mortgage, if later in time;

(b) Landlord's Delivery of the Land by the date and in the condition specified in the Construction Provisions;

(c) Tenant's obtaining: (i) written confirmation from appropriate local authorities that current zoning and use regulations allow construction of the Improvements on the Premises to be used by Tenant for the sale of the Products; and (ii) the required City, County, State and other necessary governmental agency permits and approvals to construct said Improvements on the Premises no later than May 1, 2001. Tenant agrees to apply for such permits promptly as provided herein, to use due diligence and to expend any necessary application or other fees to secure such permits and approvals; provided, however, that the foregoing shall not be deemed to require Tenant to initiate litigation or to agree to any conditions imposed upon issuance of any such permit or approval;

(d) Landlord's representations, warranties and covenants, including, but not limited to, those set forth in paragraph 19(a)(i)-(vii) herein, being true and accurate as of the date of Delivery of the Land (as defined in the Construction Provisions);

(e) Tenant's obtaining satisfactory assurances, prior to execution hereof, that adequate utility services (including gas, electricity, telephone, domestic water, fire protection water, storm sewer and sanitary sewer) are available for connection at the Premises or in close proximity thereto in amounts sufficient to support Tenant's operations;

(j) Tenant's obtaining satisfactory written assurances (the "Corner REA") that Landlord has burdened the adjacent parcel of land as shown on the Site Plan (the "Corner Tract") with height restrictions prohibiting (A)(x) any buildings along Preston Road from exceeding one story and twenty-eight (28') feet in height (inclusive of architectural features), (y) any buildings along State Highway 121 from exceeding one story and thirty (30') feet in height (inclusive of architectural features), or (z) any buildings at the "hard corner" of Preston Road and State Highway 121 from exceeding forty feet (40') in height (inclusive of architectural features), and (B) the operation of any business in excess of 13,000 square feet whose primary use is the sale or rental of consumer, office and automotive electronics products or household appliances.

The existence of the foregoing conditions is solely for the benefit of Tenant, and Tenant may waive any such condition at its sole discretion by delivering to Landlord a written notice signed by

Tenant which specifically states the condition(s) being waived by Tenant. Notwithstanding the foregoing, upon the sooner of (A) ninety (90) days following Delivery of the Land, or (B) Tenant's commencement of its construction of the Improvements, then the remaining conditions set forth in this paragraph 36 shall cease to be conditions precedent to the effectiveness of this Lease for Tenant's benefit, but shall thereafter, to the extent applicable, be covenants and obligations by Landlord hereunder for which Tenant may exercise all remedies available to Tenant as set forth in this Lease.

Notwithstanding any other provision in this Lease to the contrary, in the event any of the foregoing conditions shall not be met, satisfied or waived, the parties hereto expressly agree that Tenant shall have the right to terminate this Lease in its sole and absolute discretion at anytime prior to the satisfaction or waiver of any such condition by delivering to Landlord a written notice signed by Tenant which states that Tenant is terminating this Lease on account of the failure of one or more of the foregoing conditions. In the event of any such termination, the rights and obligations of the parties shall be of no further force and effect and the parties shall have no further liability one to the other (except that the indemnifications set forth in paragraphs 14(i), 19(a)(v) and 19(b)(ii) hereof shall survive such termination) upon Tenant's delivery of said notice to Landlord. All conditions contained in this paragraph except subparagraphs (a) and (g) unless previously waived or satisfied shall expire as of the date of Tenant's store opening.

The delivery of this executed Lease by Tenant to Landlord constitutes the offer of Tenant to Landlord to bind Landlord and Tenant to the provisions of this Lease, subject to the conditions set forth in this paragraph 36. It is a further condition to the effectiveness of this Lease that upon receipt of the executed Lease from Tenant, Landlord execute and return same to Tenant within ten (10) days following receipt thereof by Landlord. In the event Landlord fails to execute and return the Lease within such ten (10) day period, Tenant may at any time after delivery of the Lease provide written notice to Landlord that Tenant revokes its delivery of the executed Lease and thereupon Landlord shall be immediately obligated to return to Tenant all executed original counterparts, as well as any copies of this Lease in the possession of Landlord, and this Lease shall thereafter be null and void.

37. <u>Confidentiality</u>. The parties hereto, including, but not limited to, their heirs, successors, assigns and legal representatives, agree that this Lease may not be recorded and that all such parties hereby agree to use their best reasonable efforts to preserve the confidentiality of the

253080_9[ (00051/38(11975)]

terms, conditions, particulars of this transaction. This confidentiality agreement extends to any developers, lenders, lawyers, accountants, employees, brokers, prospective purchasers, agents or any other persons acting on behalf of the parties hereto; provided, however that Landlord and Tenant may disclose the content of, or deliver a copy of this Lease to any of their respective partners, investors, affiliates, lenders, accountants, agents, lawyers, prospective purchasers or other persons acting on behalf of either Landlord or Tenant (a "Receiving Party") as long as the disclosing or delivering party notifies the Receiving Party that the terms, conditions and particulars of this Lease are confidential and may not be disclosed to any third party without the express written consent of Landlord and Tenant. The parties hereto agree to use their best reasonable efforts to avoid discussing with, or disclosing to, any third parties (except any Receiving Party, as provided above) any of the terms, conditions or particulars of this Lease. It is specifically agreed by way of illustration, but not by limitation, that the covenant of confidentiality set forth herein shall not be breached if such information is disclosed in connection with or due to any governmental law or ordinance, or in a general reference to the fact that Tenant signed a lease with respect to the Shopping Center, but this covenant of confidentiality shall be breached if either party fails to notify any Receiving Party, when it discloses the content of, or delivers a copy of this Lease to any such party, that this Lease is confidential and may not be disclosed to any third party without the express written consent of both parties to this Lease. Notwithstanding the foregoing, and without limiting the other disclosure rights specifically described in this paragraph 37, Landlord shall have the right to disclose to existing, future and prospective tenants of the Shopping Center the terms of this Lease which are intended to regulate or restrict the activities of such tenants in the Shopping Center, such as the terms of Tenant's exclusive use rights and any use restrictions applicable to such tenants. Further, Landlord shall have the right to disclose to such tenants the size, dimensions and appearance of Tenant's building, the proposed use to be made of the Premises by Tenant and Tenant's right to change uses in the Premises.

38. "For Rent" Signs. Tenant hereby permits Landlord during the last ninety (90) days of the Main Term or of any Option Period, as the case may be (provided that no applicable Renewal Option has been exercised or deemed exercised), to place one (1) "For Rent" or "For Sale" sign, not exceeding four (4) feet by four (4) feet in size, in the parking lot of the Shopping Center. During

said ninety (90) day period, Tenant will also allow Landlord or its agents, upon prior written notice and accompanied by a representative of Tenant designated by Tenant, to show the Premises, exterior and interior, to prospective tenants, provided same does not interfere with the conduct of Tenant's business. Landlord shall be permitted to show the Premises to prospective purchasers, or mortgagees during reasonable business hours by prior appointment, provided same does not interfere with the conduct of Tenant's business.

39.     <u>Limitation of Liability</u>.  Following the payment of the Tenant Improvement Allowance as provided in and to the extent required under this Lease and except for Landlord's fraudulent acts or wilful misconduct, Tenant shall look solely to Landlord's interest in the Shopping Center, including any rents, profits or revenue derived therefrom for the satisfaction of any judgment or decree requiring the payment of money by Landlord, which rents, profits or revenues are derived after the date of such judgement or decree, based upon any default by Landlord, and no other property or asset of Landlord, or any partner, officer, director, shareholder, mortgagee or agent of Landlord, shall be subject to levy, execution or other enforcement procedure for the satisfaction of such judgment or decree. This clause shall not be deemed to limit or deny any remedies which Tenant may have in the event of default by Landlord under this Lease, which does not involve the payment of money by Landlord.

[THE REMAINDER OF THIS PAGE LEFT BLANK]

WITNESS the following signatures and seals:

WITNESS:

LANDLORD

SPC NEC121, LTD.,
a Texas limited partnership

By:    STRODE PROPERTY COMPANY,
a Texas corporation,
general partner

By:    _____
James E. Strode,
President

Landlord's Tax I.D. No: 75-2867741

|  |  |
|---|---|
| WITNESS: | TENANT |
| _/s/_ | CIRCUIT CITY STORES, INC., a Virginia corporation |
| _/s/ Lori Morrow_ | By: _/s/ Benjamin B. Cummings, Jr._ |
|  | Benjamin B. Cummings, Jr., Vice President |

[LEASE/FRISCO, TX]

## SITE DATA

| SHOPPING CENTER | LOT 14 |
|---|---|
| TOTAL AREA | 25.09 A.C |
| | 1,092,683 SF |
| MAXIMUM BUILDING HEIGHT | 37 FEET FROM FINISH FLOOR TO PARAPET, EXCLUSIVE OF ARCHITECTURAL ENTRY FEATURES. |
| PROPOSED BUILDING AREA | 230,678 SF |
| MAXIMUM BUILDING AREA | 261,000 SF |
| MINIMUM BUILDING AREA | 220,000 SF |
| PARKING REQ'D (5.0/1000) | 1154 SPACES |
| PARKING PROV'D | 1298 SPACES |
| OUTPARCELS | LOTS 2,3,4,5,6,9,10,11,12 AND 13 |
| MAXIMUM BUILDING HEIGHT | ONE (1) STORY, 25 FEET FROM FLOOR TO PARAPET, INCLUSIVE OF ARCHITECTURAL FEATURES. |
| OUTPARCEL | LOT 7 |
| MAXIMUM BUILDING HEIGHT | ONE (1) STORY, 28 FEET FROM FLOOR TO PARAPET, INCLUSIVE OF ARCHITECTURAL FEATURES. |

- Premises (outlined in red)
- Tenant's Preferred Area
- Permissible Building Areas
- Customer Pick-Up
- Pylon/Monument Signage
- Truck Well(s)/Trash Compactor
- Car Stereo Parking
- Shopping Center
- Corner Tract

