EXHIBIT "A-1"

LEGAL DESCRIPTION

Tract I (Lot 14):

     Lot 14, Block A, of George Mixon Addition, an Addition to the City of Frisco, Collin County, Texas, according to the conveyance plat recorded _____, 2000, in Volume _____, beginning at Page _____ of the Real Property Records of Collin County, Texas, and more particularly as follows:

     BEING a 25.085 acre tract of land situated in the Mary Brown Survey, Abstract No. 42 and William Brown Survey, Abstract No. 66, City of Frisco, Collin County, Texas and being a portion of that called 52.320 acre tract of land and a portion of that called 79.456 acre tract of land both being described in deed to Mixon Enterprises, Ltd. recorded in Volume 4080, Page 1128, Deed Records of Collin County, Texas (DRCCT), and being all of Lot 14, Block A of the GEORGE MIXON ADDITION, a proposed subdivision not yet of record, said 25.085 acre tract of land being more particularly described as follows:

     COMMENCING at a 5/8-inch iron rod found for the point of intersection of the north line of said 79.456 acre tract of land same being the south line of that certain tract of land described in deed to Lowe's Home Centers, Inc., recorded in Volume 4493, Page 3782 and Volume 4493, Page 3787, DRCCT, with the easterly right-of-way line of Preston Road (a.k.a. State Highway 289, a variable width right-of-way);

     THENCE along said westerly right-of-way line the following:

          South 03°47'23" West, a distance of 81.14 feet to a ½-inch iron rod found for point of curvature of a non-tangent curve to the left having a radius point which bears North 87°50'26" East, a distance of 11,374.16 feet;

          Southeasterly with said curve to the left through a central angle of 01°00'09" for an arc distance of 199.03 feet, a chord bearing South 02°39'39" East and a chord distance of 199.03 feet to the point of intersection of said easterly right-of-way line with the proposed southerly right-of-way line Gaylord Parkway, (a variable width right-of-way);

     THENCE along said proposed southerly right-of-way line the following:

          North 89°35'47" East, a distance of 202.74 feet to a point set for corner;

          North 84°12'11" East, a distance of 97.43 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for the POINT OF BEGINNING;

253080_9[ (00051/38(11975)]

North 84°12'11" East, a distance of 60.36 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for point of curvature of a non-tangent curve to the left having a radius point of 1,260.00 feet;

Northeasterly with said curve to the left through a central angle of 12°55'00" for an arc distance of 284.05 feet, a chord bearing North 75°58'34" East and a chord distance of 283.45 feet to a 5/8-inch iron rod set for the point of tangency;

North 69°31'04" East, a distance of 175.91 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for point of curvature of a curve to the right having a radius of 1,140.00 feet;

Northeasterly with said curve to the right through a central angle of 02°18'31" for an arc distance of 45.93 feet, a chord bearing North 70°40'19" East and a chord distance of 45.93 feet to a 5/8-inch iron rod with cap stamped "Bury+ Partners" set for corner;

THENCE South 18°10'20" East, a distance of 182.73 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE South 15°04'34" East, a distance of 595.89 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE South 18°45'53" East, a distance of 417.19 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE South 23°56'12" East, a distance of 180.93 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE South 18°07'23" East, a distance of 204.58 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner in the proposed northerly right-of-way line of a Collector Street (a 60-foot right-of-way at this point);

THENCE along said proposed northerly right-of-way line the following:

South 62°56'20" West, a distance of 297.84 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for point of curvature of a curve to the right having a radius of 395.00 feet;

Northwesterly with said curve to the right through a central angle of 63°30'01" for an arc distance of 437.77 feet, a chord bearing North 85°18'39" West and a chord distance of 415.71 feet to a 5/8-inch iron rod with cap stamped "Bury+Partners" set for the point of tangency;

2 - Ex. "A-1"

North 53°33'39" West, a distance of 53.27 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for point of curvature of a curve to the left having a radius of 455.00 feet;

Northwesterly with said curve to the left through a central angle of 16°07'09" for an arc distance of 128.01 feet, a chord bearing North 61°37'13" West and a chord distance of 127.58 feet to a 5/8-inch iron rod with cap stamped "Bury+Partners" set for corner;

THENCE North 24°55'09" East, a distance of 97.87 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 10°39'03" West, a distance of 126.07 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 37°54'42" West, a distance of 70.65 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 10 50'57" West, a distance of 88.81 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 11°12'45" West, a distance of 272.39 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 49°11'54" West, a distance of 94.80 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE South 88°27'28" West, a distance of 35.27 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE South 80°27'28" West, a distance of 123.00 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE South 86°27'28" West, a distance of 125.00 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner in the aforementioned easterly right-of-way line of Preston Road;

THENCE North 03°32'32" West along said easterly right-of-way line, a distance of 80.00 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 86°27'28" East, a distance of 125.00 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 87°32'32" East, a distance of 178.61 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 40°48'32" East, a distance of 48.98 feet to a 5/8-inch iron rod with cap stamped "Bury + Partners" set for corner;

THENCE North 07°08'37" West, a distance of 593.44 feet to the POINT OF BEGINNING;

CONTAINING a computed area of 1,092,700 square feet or 25.085 acres of land.

Tract II (Private Drive):

BEING a 0.264 of an acre tract of land situated in the William Brown Survey, Abstract No. 66, City of Frisco, Collin County, Texas and being a portion of that called 52.320 acre tract of land described by deed to Mixon Enterprises, Ltd. recorded in Volume 4080, Page 1128, Deed Records of Collin County, Texas, and being a portion of the proposed Lot 11, Block A of the GEORGE MIXON ADDITION, a proposed subdivision not yet of record, said 0.264 acre tract of land being more particularly described as follows:

COMMENCING at a broken concrete right-of-way marker found for the point of intersection of the northwesterly right-of-way line of State Highway 121 (a variable width right-of-way) with the easterly right-of-way line of Preston Road (a.k.a. State Highway 289, a variable width right-of-way);

THENCE North 63° 22' 00" East along said northwesterly right-of-way line, a distance of 1,277.76 feet to a point for corner;

THENCE North 26° 38' 00" West, a distance of 211.56 feet to a 5/8-inch iron rod with cap stamped "Bury+Partners" set for the POINT OF BEGINNING in the proposed northwesterly right-of-way line of said State Highway 121;

THENCE North 27° 03' 40" West, a distance of 325.94 feet to a 5/8-inch iron with cap stamped "Bury+Partners" set for corner in the proposed southeasterly right-of-way line of Stone Crest Road, (a 60-foot right-of-way at this point);

THENCE North 62° 56' 20" East along said southeasterly right-of-way, a distance of 35.00 feet to a 5/8-inch iron with cap stamped "Bury+Partners" set for corner;

THENCE South 27° 03' 40" East, a distance of 340.42 feet to a 5/8-inch iron rod with cap stamped "Bury+Partners" set for the point of curvature of a non-tangent curve to the right having a radius point which bears North 20° 08' 15" West, a distance of 2,816.79 feet and being in the said proposed northwesterly right-of-way line of State Highway 121;

253080_9[ (00051/38(11975)]

THENCE southwesterly along said northwesterly right-of-way line with said curve to the right through a central angle of 00° 43' 04" for an arc distance of 35.28 feet, a chord bearing of South 70° 13' 17" West and a chord distance of 35.28 feet to the POINT OF BEGINNING;

CONTAINING a computed area of 11,488 square feet or 0.264 of an acre of land.

253080_9[ (00051/38(11975)]

EXHIBIT "B"

INDEX OF DEFINITIONS

| Term | Paragraph where defined |
|---|---|
| Additional Areas | 14(e) |
| Base Rent | 4 |
| Building | 2 |
| CAM Charges | 7(b) |
| CAM Year(s) | 7(c) |
| City | 1 |
| Civil Plans | Ex. "C", para. 1(b) |
| Commencement Date | 4 |
| Common Area Easement | 6(a) |
| Common Area Maintenance | 7(a) |
| Common Areas | 7(a) |
| Construction Term | 3 |
| CPI-U | 4(iii) |
| Date of Taking | 16(a) |
| Default Rate | 9(b) |
| Delivery Date | 29(c) |
| Delivery of the Land | Ex. "C", para. 1(b) |
| Escrow Agent | 15(a)(i) |
| Event of Default (Landlord) | 29 |
| Event of Default (Tenant) | 27 |
| Foreclosure | 21(a) |
| Hazardous Substances | Ex. "C", para. 1(a) |
| Improvements | 2 |
| Incidental Sale | 19(a)(vi) |

1 - Ex. "B"

253080_9[ (00051/38(11975)]

| Term | Paragraph where defined |
|------|------------------------|
| Land | 1 |
| Landlord | Introduction |
| Landlord Work | Ex. "C", para. 1(d) |
| Landlord's Premises | 1 |
| Lawful Requirements | 31 |
| Lease Year | 3 |
| Main Term | 3 |
| Mortgage | 21(a) |
| Mortgagee | 21(a) |
| Offer | 37 |
| Option Period(s) | 3 |
| Other Improvements | 2 |
| Permissible Building Areas | Ex. "A" |
| Permitted Encumbrances | Ex. "F" |
| Person | 20 |
| Personalty | 22 |
| Phase I Work | Ex. "C", para. 1(d) |
| Phase II Work | Ex. "C", para. 1(d) |
| Plans and Specifications | Ex. "C", para. 2(b) |
| Premises | 2 |
| Products | 18(a) |
| REA | 1 |
| Real Estate Taxes | 9(a) |
| Renewal Option | 3 |
| Schematic Floor Plan and Elevation | Ex. "C", para. 2(b) |
| Shopping Center | 1 |
| Site Covenants | 19(a)(ix) |

2 - Ex. "B"

253080_9[ (00051/38(11975)]

| Term | Paragraph where defined |
|------|------------------------|
| Site Plan | 1 |
| Site Work | Ex. "C", para. 1(b) |
| Staging Area | 6(a) |
| Standard Specifications | Ex. "C", para. 1(b) |
| State | 1 |
| Substantial Completion | Ex. "C", para. 2(d) |
| Substantial Completion Anniversary | Ex. "C", para. 3 |
| Substantially All of the Premises | 16(a) |
| Taking | 16(a) |
| Tax Parcel | 9(b) |
| Tenant | Introduction |
| Tenant Improvement Allowance | Ex. "C", para. 3 |
| Tenant's Preferred Area | Ex. "A" |
| Tenant's Pro Rata Share | 7(c) |
| Tenant's Soils Report | Ex. "C", para. 1(b) |
| Term | 3 |
| Transfer | 17 |
| worth at the time of the award | 28(b) |

253080_9[ (00051/38(11975)]

FRISCO, TX

EXHIBIT "C"

CONSTRUCTION PROVISIONS

These CONSTRUCTION PROVISIONS are made a part of the Lease between Landlord and Tenant and are attached as Exhibit "C".

1.      Landlord's Delivery of the Land; Other Landlord Work. All of the work set forth in subparagraphs (a), (b) and (c) below is, collectively, the "Landlord Work":

(a)      Hazardous Substances. Landlord shall deliver the Land to Tenant free of any pollution or contamination from toxic or hazardous substances, asbestos or any other chemicals or substances in amounts which exceed standards for public health or welfare as established and regulated by any local governmental authority, the State or the United States Government (herein collectively referred to as "Hazardous Substances"). Landlord hereby grants Tenant and its agent access to the Premises and Shopping Center to enable Tenant to conduct such soil and environmental tests as its deems necessary.

(b)      Site Work. Landlord acknowledges receipt of, and covenants to comply with, Circuit City Stores, Inc. Standard Design and Construction Specifications (the "Standard Specifications") attached hereto as Exhibit "C-1" in the completion of the Landlord Work. Landlord, at its sole cost and expense, shall: (i) verify that its proposed development of the Shopping Center and its civil engineering plans comply with Tenant's geotechnical evaluation of the Land dated July 26, 2000, and prepared by Law Engineering (the "Tenant's Soils Report") and with the Standard Specifications; (ii) cause the Land to be free and clear of any known or unknown (which, but for Landlord's failure to discover same, should be removed prior to Delivery of the Land to Tenant) obstructions, foundations, footings, utilities, easements, improvements and tenancies; (iii) complete grading of the Land and the Common Areas in accordance with Tenant's Soils Report and the "Standard Specifications", and with the final plans prepared by Landlord's civil engineer, which are subject to Tenant's written approval which approval shall not be unreasonably withheld or delayed (the "Civil Plans"); (iv) complete Tenant's building pad strictly in accordance with Tenant's Soils Report and the Standard Specifications; (v) obtain approvals for all curbcuts indicated on the Civil Plans and all on and off-site permits required for any work to be performed by Landlord necessary

1 - Ex. "C"                                    253080_9[ (00051/38(11975)]

to develop the Shopping Center which permits may be a prerequisite for issuance of Tenant's building permit; (vi) complete (A) all curbcuts for Tenant's Preferred Area, (B) 20,000 square feet of Staging Area outside of but adjacent to Tenant's building pad to either be paved or stone to provide for all weather use, and (C) an all-weather construction access road to the Land and around Tenant's building pad no less than twenty-four (24) feet in width, connecting the existing dedicated roadway adjacent to the Shopping Center with the Land, all in accordance with the Civil Plans; and (vii) obtain site plan approval and conditional use approval, if any, from governmental authorities having jurisdiction over the Shopping Center, permitting Tenant's construction of the Premises (subject to issuance of Tenant's building permit). All of the work described in (i) through (vii) above is, collectively, the "Site Work". No changes shall be made to any of the Site Work, including, but not limited to, any plans and specifications therefor, without Tenant's prior written consent. The Site Work shall be performed in accordance with the Construction Schedule attached hereto as Attachment "1". Landlord specifically covenants and agrees that any problems or delays it encounters in grading the Premises in satisfaction of the Site Work requirements set forth above in connection with the condition of the soils, including environmental or hazardous waste issues, subsidence sinking, surface waters, subsurface waters, unforeseen site conditions or the like shall be its sole responsibility, shall not cause a force majeure delay, and in no event shall the cost associated with such problems or conditions be passed on to Tenant in any manner.

Tenant shall have the right to temporarily locate a trailer in the Shopping Center during the eight (8) weeks prior to the store opening in a mutually agreeable location designated on the Site Plan, to be used as a Human Resource Hiring Center for Tenant's store employees.

Landlord will maintain the construction access road in good condition throughout the construction of the Common Areas. If the items of Phase I Work (hereinafter defined) to be performed on the Land are completed earlier than forty-five (45) days prior to Tenant's scheduled commencement of construction of the Improvements (as provided below), the Land shall be overbuilt and sloped to drain and, within such forty-five (45) day period, shall be regraded and recompacted and new pad certifications provided as described in Exhibit "C-1", paragraph 1(B)(4).

Subject to force majeure, Landlord covenants and agrees to complete, at its sole cost and expense, each item of the Phase I Work and to provide temporary utilities to within five (5) feet of

253080_9[ (00051/38(11975)]

the building pad at Tenant's designated points of entry as set forth in the Plans and Specifications, as contemplated in paragraph 1(c) below, and temporary telephone service to the Premises and the Staging Area, in accordance with the dates established therefor in the Construction Schedule, to the end that promptly upon completion of such requirements (collectively "Delivery of the Land"), Tenant shall be able, subject to issuance of its building permit and matters within Tenant's control, to commence construction of the Improvements.

Landlord acknowledges that Tenant's ability to obtain a building permit for its construction may be delayed due to the failure by Landlord to obtain necessary approvals or permits or to pay necessary fees for its construction and development of the Shopping Center. Landlord agrees that Delivery of the Land shall not be deemed to have occurred until all such aforesaid approvals and permits shall have been obtained and all such fees, including, but not limited to, impact fees and assessments, shall have been paid, if and to the extent that such approvals, permits and fees for Landlord's construction shall be prerequisites to the issuance of Tenant's building permit. In addition, Landlord shall pay all impact fees assessed with respect to Tenant's construction of the Premises. Landlord agrees to keep Tenant advised in writing on a monthly basis as to Landlord's progress in completing the Site Work. Upon the Delivery of the Land, Landlord shall certify to Tenant that all elements of the Phase I Work have been completed in the form of the Site Work Certificate attached to Exhibit "C" as Attachment "2".

Should the Phase I Work require minor adjustments in order to be in accordance with the Standard Specifications or the Civil Plans, Tenant may direct its contractor to make such adjustments, the total cost of which shall be reimbursed by Landlord to Tenant upon demand in a sum not to exceed Five Thousand Dollars ($5,000.00).

(c)    Paving, Lighting, Utilities, Landscaping and Drainage. Landlord shall deliver to Tenant full and complete civil engineering plans on or before the date set forth in Attachment "1". Landlord, at its sole cost and expense, and in accordance with Attachment "1", shall cause a contractor licensed in the State to complete (i) installation of temporary utilities, as described in the Standard Specifications; (ii) the construction and installation within five (5) feet of the Building, of permanent telephone service and permanent utilities, including, but not limited to, gas, electric, domestic water and fire protection water (in size sufficient to satisfy local fire codes) and sanitary

253080_9[ (00051/38(11975)]

sewer as described in the Standard Specifications, each at Tenant's required entry points shown in the Civil Plans, at depths adequate for Tenant's tie-in without additional cost above that contemplated by the "Plans and Specifications" (as defined in paragraph 2(b) below); (iii) the construction and installation of the storm water drainage system at Tenant's required location shown in the Civil Plans; (iv) the construction and installation of paving (including heavy-duty paving), and curbing for parking areas (including sidewalk curb in front of the Building), vehicular access and service roads, and driveways, in accordance with the Standard Specifications; (v) the completion of landscaping at the Shopping Center in accordance with Landlord's governmentally approved landscaping plan which shall be subject to Tenant's approval, not to be unreasonably withheld or delayed; (vi) the construction and installation of lighting in the Shopping Center to standards no less than those set forth in the "Shopping Center Lighting Specifications" as described in the Standard Specifications; and (vii) Landlord's installation of the pylon sign(s) identifying the Shopping Center as described in paragraph 8 of the Lease, all no later than the dates established therefor in the Construction Schedule.

(d)    Landlord Work.  All of the work described to be performed by Landlord in this paragraph 1 is collectively referred to as the "Landlord Work".  That portion of the Landlord Work required for Delivery of the Land is collectively referred to as the "Phase I Work" and the Landlord Work is collectively referred to as the "Phase II Work".  All Landlord Work shall be performed in accordance with all applicable laws and this Lease, in a good and workmanlike manner, as appropriate by engineers, surveyors, architects and consultants, who carry sufficient errors and omissions coverage, and contractors, who are bondable, all licensed in the State and of good reputation.  Landlord's general contractor shall be experienced in shopping center development and in phasing and coordinating construction schedules with major anchors and national retailers.  All Landlord Work shall be completed in accordance with these Construction Provisions and all attachments hereto and the Civil Plans.  In the event that Landlord defaults at any time in completion of any component of the Landlord Work, Tenant shall have the right, but not the obligation, to perform at Landlord's sole cost and expense, all or any part of Landlord Work.  Tenant shall exercise this right by providing Landlord with written notice thereof, which notice shall reasonably detail those portions of the Landlord Work which Tenant elects to complete.  Tenant may exercise the

253080_9[ (00051/38(11975)]

rights set forth in this paragraph 1(d) from time to time so long as Tenant provides Landlord notice specified herein (i) within a reasonable amount of time prior to the date upon which Landlord would otherwise commence that portion of the Landlord Work, or (ii) at such other time where it is feasible for Tenant to take over that portion of the Landlord Work from Landlord.  In the event and to the extent that Tenant exercises its right hereunder, Landlord agrees to cooperate in good faith and provide Tenant with reasonable assistance so that Tenant can complete said portions of the Landlord Work.  Landlord agrees to reimburse Tenant for any and all costs incurred by Tenant in connection with any portion of the Landlord Work which Tenant is in the process of completing within five (5) days after receipt of written request from Tenant, which request shall be reasonably supported by invoices and/or written description of the Landlord Work performed.  In the event that Landlord does not timely reimburse Tenant as hereinabove contemplated, Tenant shall be entitled to deduct the costs of such Landlord Work from rentals and other payments due under the Lease, together with interest at the Default Rate from the date of expenditure by Tenant until paid in full.

      2.    <u>Tenant Improvements</u>.

      (a)    <u>Building Construction</u>.  Upon completion of the Phase I Work, Landlord shall give Tenant written notice (which shall include any required certifications, including, but not limited to, those required by the Standard Specifications) of Delivery of the Land in the form of <u>Attachment "2"</u>.  Tenant shall promptly notify Landlord if any such requirement has not been met in accordance with the terms of the Lease, including this <u>Exhibit "C"</u> to Tenant's reasonable satisfaction, provided Tenant does not elect its self-help remedies set forth in this Lease.  Upon completion of any such previously unmet requirements, Tenant shall within a reasonable time commence and pursue to completion with due diligence the construction of the Improvements and storefront sidewalk. The construction work on the Improvements and storefront sidewalk shall be performed by a duly licensed contractor chosen by Tenant, shall be done in a good and workmanlike manner, in compliance with all applicable laws and in substantial accordance with the "Plans and Specifications" (defined below).  Provided that the Land is delivered on or before the date set forth on <u>Attachment "5"</u>, Tenant covenants and agrees to use reasonable efforts and due diligence to achieve "Substantial Completion" (as defined below) on or before the date which is seven (7) months thereafter.

5 - Ex. "C"

(b)    <u>Plans and Specifications</u>.  Tenant shall prepare and furnish to Landlord for its approval, not to be unreasonably withheld, conditioned or delayed, complete architectural drawings and specifications including building elevations (the "Plans and Specifications") for the construction of the Building and Other Improvements, incorporating therein the items specified and shown in the "Schematic Floor Plan and Elevation" (which are hereby approved by Landlord) attached to <u>Exhibit "C"</u> as <u>Attachment "3"</u>; provided, however, that it shall be deemed unreasonable for Landlord to withhold or delay approval of Tenant's Plans and Specifications based upon Tenant's building elevations, standard entrance tower, customer pick-up area, or Alucobond and red trim on the exterior of the Building.  Landlord agrees that it will approve the Plans and Specifications, so long as they are materially consistent with the Schematic Floor Plan and Elevation, within ten (10) business days after receipt thereof.  If the Plans and Specifications are not disapproved by Landlord within fifteen (15) days of delivery thereof to Landlord, they will be deemed approved.  The Plans and Specifications shall not be substantially changed by Tenant without the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.  Any changes which Landlord desires to make to the Plans and Specifications (which are different than a Building based on the Schematic Floor Plan and Elevation utilizing Tenant's prototypical elevations and building materials) shall be at Landlord's sole cost and expense, and Tenant shall not be required to increase the Base Rent payable hereunder, or accept a reduction in the Tenant Improvement Allowance, as a result of such changes

(c)    <u>Permits</u>.  Tenant, at its sole cost and expense, shall obtain or cause to be obtained those certain building permits, licenses, other governmental approvals and temporary and permanent certificates of occupancy which may be required for the lawful construction, use and occupancy of the Premises as a retail shopping facility in accordance with the Plans and Specifications.  Landlord agrees to assist and cooperate fully with Tenant, at no additional cost to Landlord in obtaining such permits, licenses, approvals and certificates.  Landlord shall be responsible for any other permits necessary for the development of the Shopping Center.

(d)    <u>Landlord Inspections</u>.  During the course of construction of the Improvements, Landlord may, at its own risk and in cooperation with Tenant's contractor, enter upon the Land for

253080_9[ (00051/38(11975)]

purposes of inspecting the work, provided that such inspections shall not interfere with Tenant's construction.

(e)    <u>Substantial Completion</u>.  Substantial completion of the Improvements ("Substantial Completion") shall be deemed to occur when a certificate of occupancy, whether temporary and subject only to minor "punchlist" items to be completed, or permanent, as the case may be, has been issued by the applicable governmental authority.

3.    <u>Costs</u>.  Upon Substantial Completion and Tenant's furnishing to Landlord (i) the certificates of insurance required under paragraph 14 of the Lease, (ii) an indemnity in the form of <u>Exhibit "J"</u> attached hereto against any exception in Landlord's or its Mortgagee's policy of title insurance with respect to mechanics' liens arising out of Tenant's construction, and (iii) a bill of sale conveying title to the Improvements, Landlord shall pay to Tenant a "Tenant Improvement Allowance" in an amount equal to $65.00 per square foot of gross leasable area of the Building (which shall be conclusively determined by the amount of gross leasable area shown in Tenant's as-built survey, payable by wire transfer of funds by Landlord to Tenant's account no later than thirty (30) days after Substantial Completion and receipt of items (i), (ii) and (iii) above. If the Base Rent is increased or decreased pursuant to paragraph 4(ii) of the Lease, the Tenant Improvement Allowance shall likewise be proportionately increased or decreased. If Landlord fails to pay the Tenant Improvement Allowance in full within thirty (30) days after Substantial Completion and receipt of items (i), (ii) and (iii) above, Landlord shall be in default hereunder, no Ground Rent, Base Rent or CAM Charges shall be due or owing to Landlord until the same is paid to Tenant, together with interest which shall accrue on the unpaid Tenant Improvement Allowance at the Default Rate commencing on the thirty-first (31st) day following Substantial Completion until the date of payment of the Tenant Improvement Allowance; provided, however, that if Landlord has not tendered payment of the Tenant Improvement Allowance and interest by that date which is one (1) year from Substantial Completion (the "Substantial Completion Anniversary"), then (i) such date shall become the Commencement Date; (ii) Base Rent shall be reduced to ground rent equal to Seventy-Five Thousand and No/100 Dollars ($75,000.00) per annum during the first year following the Substantial Completion Anniversary, Fifty Thousand and No/100 Dollars ($50,000.00) per annum during the second year following the Substantial Completion Anniversary, and Twenty-Five Thousand and

253080_9[ (00051/38(11975)]

No/100 Dollars ($25,000.00) per annum thereafter during the Term of the Lease; and (iii) this Lease shall be converted to a ground lease, with ownership of the Improvements remaining with Tenant, and Landlord's and any Mortgagees' names being removed as additional insureds or mortgagees on any casualty insurance described in paragraph 14(a) of the Lease. Landlord and Tenant covenant and agree that upon the reasonable written request of either Tenant or Landlord, Landlord and Tenant shall execute such documentation as necessary to formalize the conversion of this Lease to a ground lease upon the Substantial Completion Anniversary.

Notwithstanding the foregoing, at any time following the Substantial Completion Anniversary and upon thirty (30) days prior written notice, Tenant shall have the right at Tenant's sole election, but not the obligation, in lieu of the requirement that Landlord pay to Tenant the Tenant Improvement Allowance, to mortgage, sell, convey, assign, lease or otherwise encumber (collectively, a "Transfer") Tenant's interest in the Building, the Improvements and the Lease. Such right shall be in addition to the rights of Tenant set forth in paragraph 21 of the Lease.

Landlord covenants to (i) execute all documents reasonably acceptable to Landlord necessary to permit Tenant to effect the Transfer described herein, and (ii) use good faith efforts to cause any Mortgagee to specifically acknowledge the rights of Tenant's lender and third parties arising as a result of such Transfer. Notwithstanding such Transfer, Tenant shall continue to pay the ground rentals described herein during the remainder of the Term.

Attachments:

"1"  Construction Schedule

"2"  Site Work Certification

"3"  Schematic Floor Plan and Elevation

253080_9[ (00051/38(11975)]

Attachment "1"

Construction Schedule

| **Landlord's Task** | | **Completion Date** |
|---|---|---|
| 1. | Landlord's delivery of full and complete civil engineering plans for the Shopping Center and architectural scale building elevations for the remainder of the Shopping Center. | October 1, 2000 |
| 2. | Landlord's dates for off-site improvements/ obtaining permits, etc. | October 1, 2001 |
| 3. | Construction of all-weather construction access road to the Premises, staging area and curbcuts in Tenant's Preferred Area. | February 1, 2001 |
| 4. | Completion of Site Work including approval for all curbcuts. | February 1, 2001 |
| 5. | Installation of temporary utilities. | February 1, 2001 |
| 6. | Landlord's Delivery of the Land to Tenant. | February 1, 2001 |
| 7. | Landlord's delivery of pad certification from soils engineer. | February 1, 2001 |
| 8. | Construction and installation of permanent utilities including permanent telephone service. | April 1, 2001 |
| 9. | Construction and installation of storm water drainage. | April 1, 2001 |
| 10. | Construction and installation of paving (including heavy-duty paving) and curbing. | April 1, 2001 |
| 11. | Completion of landscaping at Shopping Center. | April 1, 2001 |
| 12. | Construction and installation of exterior lighting in the Shopping Center. | April 1, 2001 |
| 13. | Construction and installation of pylon sign(s) identifying the Shopping Center. | April 1, 2001 |

9 - Ex. "C"
Attachment "1"

253080_9[ (00051/38(11975)]

Attachment "2"

Site Work Certification

To:    Circuit City Stores, Inc.
       Deep Run I
       9950 Mayland Drive
       Richmond, Virginia  23233
       Attention:  Vice President-Real Estate

       Re:    Circuit City Store/Frisco, Texas-Lease Agreement dated July 31, 2000

Ladies and Gentlemen:

       The undersigned, as Landlord under the Lease has caused "Delivery of the Land" to occur
on _____, 2000, and accordingly, completion of the Site Work, all in accordance
with the terms of the Lease. Specifically the undersigned hereby certifies that: (i) the grading of the
Land and Common Areas has occurred in accordance with the Standard Specifications, attached to
the Lease, and Tenant's building pad has been prepared strictly in accordance with Tenant's Soils
Report; (ii) the Staging Area has been completed and (iii) an all-weather construction access road
to the Land no less than 24 feet width has been prepared and is ready for your use.

       All conditions precedent to issuance of your building permit requiring performance by
Landlord have been satisfied by Landlord, and we certify that all elements of the Site Work and
Delivery of the Land have been satisfied in accordance with the Lease.

                          SPC NEC121, LTD.,
                          a Texas limited partnership

                          By:    STRODE PROPERTY COMPANY,
                                 a Texas corporation,
                                 general partner

                          By:    _____
                                 James E. Strode,
                                 President

DELIVERY OF LAND ACCEPTED BY CIRCUIT CITY STORES, INC.

By:    _____
Date:  _____

                          10 - Ex. "C"
                          Attachment "2"

                                                    253080_9[ (00051/38(11975)]

<u>Attachment "2"</u>

Site Work Certification

To:    Circuit City Stores, Inc.
       Deep Run I
       9950 Mayland Drive
       Richmond, Virginia  23233
       Attention:  Vice President-Real Estate

       Re:    Circuit City Store/Frisco, Texas-Lease Agreement dated July 31, 2000

Ladies and Gentlemen:

       The undersigned, as Landlord under the Lease has caused "Delivery of the Land" to occur
on _____, 2000, and accordingly, completion of the Site Work, all in accordance
with the terms of the Lease.  Specifically the undersigned hereby certifies that:  (i) the grading of the
Land and Common Areas has occurred in accordance with the Standard Specifications, attached to
the Lease, and Tenant's building pad has been prepared strictly in accordance with Tenant's Soils
Report; (ii) the Staging Area has been completed and (iii) an all-weather construction access road
to the Land no less than 24 feet width has been prepared and is ready for your use.

       All conditions precedent to issuance of your building permit requiring performance by
Landlord have been satisfied by Landlord, and we certify that all elements of the Site Work and
Delivery of the Land have been satisfied in accordance with the Lease.

                          SPC NEC121, LTD.,
                          a Texas limited partnership

                   By:    STRODE PROPERTY COMPANY,
                          a Texas corporation,
                          general partner

                   By:    _____
                          James E. Strode,
                          President

DELIVERY OF LAND ACCEPTED BY CIRCUIT CITY STORES, INC.

By:    _____
Date:  _____

                          10 - Ex. "C"
                          Attachment "2"

                                                        253080_9[ (00051/38(11975)]

EXHIBIT "C-1"

STANDARD DESIGN AND CONSTRUCTION SPECIFICATIONS

for a proposed

Circuit City Superstore

Circuit City Shopping Center

Frisco, Texas

to be developed by

SPC NEC121, LTD.

Dated July 31, 2000

1 - Ex. "C-1"

253080_9[ (00051/38(11975)]

I.   STANDARDS FOR GRADING WORK

A.   <u>Grading Requirements</u>.  The Land and the Shopping Center shall be graded in accordance with the following:

1.   The Civil Plans shall show contours in accordance with standard engineering practice and these contours shall be shown with the existing (shown as a dashed line) and final (shown as a solid line) elevations.  Whether existing or proposed, all buildings, improvements, roads and highways, including those adjacent to the Shopping Center, shall be shown in their true locations.

2.   The Building will be accessible by grade level parking only.  Steps and stairs are not permitted.

3.   Sidewalk at the Building will slope away from the Building with grade of no less than 1.5% and no more than 3.0%.  All water shall be sheet drained away from Tenant's doors.

4.   Asphalt paving areas will be graded to avoid ponding water with slopes no less than 1.5% and no more than 4.0%.  Entrances and access drives shall have a maximum slope of 6.0%.

5.   Surface drainage swales will not be allowed without prior approval of Tenant.  Such swales must have a grade of not less than 0.5% and no more than 3.5% and shall be constructed of concrete.

6.   The cut and fill on the Shopping Center site should be balanced, if practical.  All fill material must be of a select grade and sources for acquisition of fill material, as well as locations for cut material, must be identified.

7.   No retaining walls or embankments causing breaks in grade shall be permitted unless specifically approved by Tenant.

B.   <u>Tenant's Pad Area</u>:  "Tenant's Pad Area" shall be defined as the area extending five (5) feet beyond the Building walls, truck dock and ramp area and the Customer Pick Up and Car Stereo Installation areas, or to the back of curbing around the Building, whichever is further.  The Site Work shall comply with the following additional requirements:

1.   Landlord shall be responsible for preparing Tenant's Pad Area subgrades to within plus or minus one-tenth of a foot as set by Tenant's architect.  Tenant's subgrades are 8" below finished floor elevation. Landlord will complete compaction in accordance with the appropriate engineering standards and building code requirements, but in no event less than ninety-five percent

2 - Ex. "C-1"                    253080_9[ (00051/38(11975)]