2003- 0090157



DEED OF TRUST, SECURITY AGREEMENT AND

FIXTURE FILING

BY

HENDRY PROPERTIES, LTD.,

a Texas limited partnership,

as Grantor

TO

DENIS CLIVE BRAHAM,

as Trustee

for the benefit of

METROPOLITAN LIFE INSURANCE COMPANY,

a New York corporation,

as Beneficiary

May 14 , 2003

# TABLE OF CONTENTS

**ARTICLE I**     **GRANT OF SECURITY** ........................................................... 3
    Section 1.01 REAL PROPERTY GRANT ........................................... 3
    Section 1.02 PERSONAL PROPERTY GRANT ................................... 4
    Section 1.03 CONDITIONS TO GRANT ............................................ 4

**ARTICLE II**     **GRANTOR COVENANTS** ...................................................... 4
    Section 2.01 DUE AUTHORIZATION, EXECUTION, AND DELIVERY ......... 4
    Section 2.02 PERFORMANCE BY GRANTOR ................................... 5
    Section 2.03 WARRANTY OF TITLE ............................................. 5
    Section 2.04 TAXES, LIENS AND OTHER CHARGES ......................... 5
    Section 2.05 ESCROW DEPOSITS ............................................... 5
    Section 2.06 CARE AND USE OF THE PROPERTY ............................. 6
    Section 2.07 COLLATERAL SECURITY INSTRUMENTS ...................... 7
    Section 2.08 SUITS AND OTHER ACTS TO PROTECT THE PROPERTY ..... 7
    Section 2.09 LIENS AND ENCUMBRANCES ................................... 8

**ARTICLE III**     **INSURANCE** ...................................................................... 8
    Section 3.01 REQUIRED INSURANCE AND TERMS OF INSURANCE POLICIES ..... 8
    Section 3.02 ADJUSTMENT OF CLAIMS ....................................... 10
    Section 3.03 ASSIGNMENT TO BENEFICIARY ............................... 10

**ARTICLE IV**     **BOOKS, RECORDS AND ACCOUNTS** .................................... 10
    Section 4.01 BOOKS AND RECORDS ........................................... 10
    Section 4.02 PROPERTY REPORTS ............................................ 11
    Section 4.03 ADDITIONAL MATTERS ......................................... 11

**ARTICLE V**     **LEASES AND OTHER AGREEMENTS AFFECTING THE PROPERTY** ..... 11
    Section 5.01 GRANTOR'S REPRESENTATIONS AND WARRANTIES ..... 11
    Section 5.02 ASSIGNMENT OF LEASES ....................................... 12
    Section 5.03 PERFORMANCE OF OBLIGATIONS ............................ 12
    Section 5.04 SUBORDINATE LEASES ......................................... 12
    Section 5.05 LEASING COMMISSIONS ....................................... 12
    Section 5.06 TENANCY ........................................................... 13

**ARTICLE VI**     **ENVIRONMENTAL HAZARDS** ............................................ 13
    Section 6.01 REPRESENTATIONS AND WARRANTIES ..................... 13
    Section 6.02 REMEDIAL WORK ................................................ 13
    Section 6.03 ENVIRONMENTAL SITE ASSESSMENT ...................... 13
    Section 6.04 UNSECURED OBLIGATIONS ................................... 14
    Section 6.05 HAZARDOUS MATERIALS ..................................... 14
    Section 6.06 REQUIREMENTS OF ENVIRONMENTAL LAWS ............. 14

**ARTICLE VII**     **CASUALTY, CONDEMNATION AND RESTORATION** ................. 15
    Section 7.01 GRANTOR'S REPRESENTATIONS ............................. 15
    Section 7.02 RESTORATION .................................................... 15
    Section 7.03 CONDEMNATION ................................................. 16
    Section 7.04 REQUIREMENTS FOR RESTORATION ....................... 16

**ARTICLE VIII**     **REPRESENTATIONS OF GRANTOR** .................................... 17
    Section 8.01 ERISA   17
    Section 8.02 NON-RELATIONSHIP ............................................ 18
    Section 8.03 NO ADVERSE CHANGE ......................................... 18

i

Section 8.04 FOREIGN INVESTOR ................................................................................ 18
Section 8.05 SECURITIES LAWS ................................................................................. 18
Section 8.06 SINGLE PURPOSE ENTITY ...................................................................... 18

**ARTICLE IX**      **EXCULPATION AND LIABILITY** ........................................ 19
Section 9.01 LIABILITY OF GRANTOR ......................................................................... 19

**ARTICLE X**      **CHANGE IN OWNERSHIP, CONVEYANCE OF PROPERTY** ........ 20
Section 10.01      CONVEYANCE OF PROPERTY, CHANGE IN OWNERSHIP AND
                  COMPOSITION .......................................................................... 20
Section 10.02      PROHIBITION ON SUBORDINATE FINANCING ........................ 20
Section 10.03      RESTRICTIONS ON ADDITIONAL OBLIGATIONS ................... 20
Section 10.04      STATEMENTS REGARDING OWNERSHIP .............................. 20
Section 10.05      ONE-TIME TRANSFER RIGHT ................................................ 21

**ARTICLE XI**      **DEFAULTS AND REMEDIES** ................................................ 22
Section 11.01      EVENTS OF DEFAULT ............................................................ 22
Section 11.02      REMEDIES UPON DEFAULT .................................................. 23
Section 11.03      APPLICATION OF PROCEEDS OF SALE ............................... 24
Section 11.04      WAIVER OF JURY TRIAL ....................................................... 24
Section 11.05      BENEFICIARY'S RIGHT TO PERFORM GRANTOR'S OBLIGATIONS ........... 25
Section 11.06      BENEFICIARY REIMBURSEMENT ........................................ 25
Section 11.07      FEES AND EXPENSES ............................................................ 25
Section 11.08      WAIVER OF CONSEQUENTIAL DAMAGES ........................... 25
Section 11.09      INDEMNIFICATION OF TRUSTEE .......................................... 25
Section 11.10      ACTIONS BY TRUSTEE .......................................................... 25
Section 11.11      RESIGNATION AND APPOINTMENT OF TRUSTEE ................ 25

**ARTICLE XII**      **GRANTOR AGREEMENTS AND FURTHER ASSURANCES** ........ 26
Section 12.01      PARTICIPATION AND SALE OF LOAN .................................. 26
Section 12.02      REPLACEMENT OF NOTE ..................................................... 26
Section 12.03      GRANTOR'S ESTOPPEL ........................................................ 26
Section 12.04      FURTHER ASSURANCES ....................................................... 26
Section 12.05      SUBROGATION ...................................................................... 27
Section 12.06      INTEREST PROVISIONS ........................................................ 27

**ARTICLE XIII**      **SECURITY AGREEMENT** ..................................................... 28
Section 13.01      SECURITY AGREEMENT ....................................................... 28
Section 13.02      REPRESENTATIONS AND WARRANTIES .............................. 28
Section 13.03      CHARACTERIZATION OF PROPERTY ................................... 28
Section 13.04      PROTECTION AGAINST PURCHASE MONEY SECURITY INTERESTS ...... 28

**ARTICLE XIV**      **MISCELLANEOUS COVENANTS** ......................................... 29
Section 14.01      NO WAIVER ........................................................................... 29
Section 14.02      NOTICES ................................................................................ 29
Section 14.03      HEIRS AND ASSIGNS; TERMINOLOGY ................................ 29
Section 14.04      SEVERABILITY ...................................................................... 30
Section 14.05      APPLICABLE LAW ................................................................ 30
Section 14.06      CAPTIONS ............................................................................. 30
Section 14.07      TIME OF THE ESSENCE ......................................................... 30
Section 14.08      NO MERGER .......................................................................... 30
Section 14.09      NO MODIFICATIONS ............................................................. 30
Section 14.10      REMEDIES CUMULATIVE ..................................................... 30

## DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

### DEFINED TERMS

| | |
|---|---|
| **Execution Date:** May 14, 2003 | |
| **Note:** The promissory note dated as of the Execution Date made by Grantor to the order of Beneficiary in the principal amount of Twenty-Seven Million Five Hundred Thousand and No/100 Dollars ($27,500,000.00). | |
| **Beneficiary & Address:** | Metropolitan Life Insurance Company, a New York corporation<br>10 Park Avenue<br>Morristown, New Jersey 07960<br>Attention:   Senior Vice-President<br>                  Real Estate Investments |
| And: | Metropolitan Life Insurance Company<br>5420 LBJ Freeway, Suite 1310<br>Dallas, Texas  75240<br>Attention:  Director and OIC |
| **Grantor & Address:** | Hendry Properties, Ltd., a Texas limited partnership<br>402 East Ramsey Road<br>San Antonio, Texas  78216 |
| **Trustee & Address:** | Denis Clive Braham<br>Winstead Sechrest & Minick P.C.<br>910 Travis, Suite 2400<br>Houston, Texas  77002 |
| **Liable Parties & Address:** | John L. Hendry, III, an individual<br>402 East Ramsey Road<br>San Antonio, Texas  78216 |
| **County and State:** Collin County, State of Texas, being the County and State in which the Property is located. | |
| **Use:** | Retail Center, including compatible office (including medical office) and restaurant uses consistent with the operation of a retail center |
| **Insurance:**<br><br>Commercial General Liability      $25 Million (Required Minimum Liability Coverage)<br><br>**Address for Insurance Notification:**<br><br>          Metropolitan Life Insurance Company<br>          One MetLife Plaza<br>          27-01 Queens Plaza North<br>          Long Island City, New York, New York 11101<br>          Attn:  Risk Management Unit, Area:  7C | |

Loan Documents: The Note, this Deed of Trust and any other documents related to the Note and/or Deed of Trust and all renewals, amendments, modifications, restatements and extensions of these documents. Indemnity Agreement: Unsecured Indemnity Agreement dated as of the Execution Date and executed by Grantor and Liable Parties in favor of Beneficiary. Guaranty: Guaranty Agreement dated as of the Execution Date and executed by Liable Parties in favor of Beneficiary. The Indemnity Agreement and the Guaranty are not Loan Documents and shall survive repayment of the Loan or other termination of the Loan Documents (except to the extent otherwise expressly set forth therein).

[Remainder of this page intentionally left blank]

This DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING (this "Deed of Trust") is entered into as of the Execution Date by Grantor to Trustee for the benefit of Beneficiary with reference to the following Recitals:

## RECITALS

A.    This Deed of Trust secures: (1) the payment of the indebtedness evidenced by the Note with interest at the rates set forth in the Note, together with all renewals, modifications, consolidations and extensions of the Note, all additional advances or fundings made by Beneficiary, and any other amounts required to be paid by Grantor under any of the Loan Documents, (collectively, the "Secured Indebtedness", and sometimes referred to as the "Loan") and (2) the full performance by Grantor of all of the terms, covenants and obligations set forth in any of the Loan Documents.

B.    Grantor makes the following covenants and agreements for the benefit of Beneficiary or any party designated by Beneficiary, including any prospective purchaser of the Loan Documents or participant in the Loan, and their respective officers, employees, agents, attorneys, representatives and contractors (all of which are collectively referred to as, "Beneficiary") and Trustee.

NOW, THEREFORE, IN CONSIDERATION of the Recitals and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Grantor agrees as follows:

## ARTICLE I
## GRANT OF SECURITY

Section 1.01    REAL PROPERTY GRANT.  Grantor irrevocably sells, transfers, grants, conveys, assigns and warrants to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession, all of Grantor's present and future estate, right, title and interest in and to the following which are collectively referred to as the "Real Property":

(1)    that certain real property located in the County and State which is more particularly described in Exhibit "A" attached to this Deed of Trust or any portion of the real property; all easements, rights-of-way, gaps, strips and gores of land; streets and alleys; sewers and water rights; privileges, licenses, tenements, and appurtenances appertaining to the real property, and the reversion(s), remainder(s), and claims of Grantor with respect to these items, and the benefits of any existing or future conditions, covenants and restrictions affecting the real property (collectively, the "Land");

(2)    all things now or hereafter affixed to or placed on the Land, including all buildings, structures and improvements, all fixtures and all machinery, elevators, boilers, building service equipment (including, without limitation, all equipment for the generation or distribution of air, water, heat, electricity, light, fuel or for ventilating or air conditioning purposes or for sanitary or drainage purposes or for the removal of dust, refuse or garbage), partitions, appliances, furniture, furnishings, building materials, supplies, computers and software, window coverings and floor coverings, lobby furnishings, and other property now or in the future attached, or installed in the improvements and all replacements, repairs, additions, or substitutions to these items (collectively, the "Improvements");

(3)    all present and future income, rents, revenue, profits, proceeds, accounts receivables and other benefits from the Land and/or Improvements and all deposits made with respect to the Land and/or Improvements, including, but not limited to, any security given to utility companies by Grantor, any advance payment of real estate taxes or assessments, or insurance premiums made by Grantor and all claims or demands relating to such deposits and other security, including claims for refunds of tax payments or assessments, and all insurance proceeds payable to Grantor in connection with the Land and/or Improvements whether or not such insurance coverage is specifically required under the terms of this Deed of Trust ("Insurance Proceeds") (all of the items set forth in this paragraph are referred to collectively as "Rents and Profits");

(4)    all damages, payments and revenue of every kind that Grantor may be entitled to receive, from any person owning or acquiring a right to the oil, gas or mineral rights and reservations of the Land;

3

(5)      all proceeds and claims arising on account of any damage to, or Condemnation (as hereinafter defined) of any part of the Land and/or Improvements, and all causes of action and recoveries for any diminution in the value of the Land and/or Improvements;

(6)      all licenses, contracts, management agreements, guaranties, warranties, franchise agreements, permits, or certificates relating to the ownership, use, operation or maintenance of the Land and/or Improvements; and

(7)      all names by which the Land and/or Improvements may be operated or known, and all rights to carry on business under those names, and all trademarks, trade names, and goodwill relating to the Land and/or Improvements.

TO HAVE AND TO HOLD the Real Property, unto Trustee, its successors and assigns, in trust, for the benefit of Beneficiary, its successors and assigns, forever subject to the terms, covenants and conditions of this Deed of Trust.

Section 1.02     PERSONAL PROPERTY GRANT.  Grantor irrevocably sells, transfers, grants, conveys, assigns and warrants to Beneficiary, its successors and assigns, a security interest in Grantor's interest in the following personal property which is collectively referred to as "Personal Property":

(1)      any portion of the Real Property which may be personal property, and all other personal property, whether now existing or acquired in the future which is attached to, appurtenant to, or used in the construction or operation of, or in connection with, the Real Property;

(2)      all rights to the use of water, including water rights appurtenant to the Real Property, pumping plants, ditches for irrigation, all water stock or other evidence of ownership of any part of the Real Property that is owned by Grantor in common with others and all documents of membership in any owner's association or similar group;

(3)      all plans and specifications prepared for construction of the Improvements; and all contracts and agreements of Grantor relating to the plans and specifications or to the construction of the Improvements;

(4)      all equipment, machinery, fixtures, furnishings, furniture, goods, accounts, general intangibles, letters of credit rights, commercial tort claims, deposit accounts, documents, instruments and chattel paper and all substitutions, replacements of, and additions to, any of the these items;

(5)      all sales agreements, deposits, escrow agreements, other documents and agreements entered into with respect to the sale of any part of the Real Property, and all proceeds of the sale; and

(6)      all proceeds from the voluntary or involuntary disposition or claim respecting any of the foregoing items (including judgments, condemnation awards or otherwise).

All of the Real Property and the Personal Property are collectively referred to as the "Property."

Section 1.03     CONDITIONS TO GRANT.  If Grantor shall pay to Beneficiary the Secured Indebtedness, at the times and in the manner stipulated in the Loan Documents, and if Grantor shall perform and observe each of the terms, covenants and agreements set forth in the Loan Documents, then this Deed of Trust and all the rights granted by this Deed of Trust shall be released by Trustee and/or Beneficiary in accordance with the laws of the State.

## ARTICLE II
## GRANTOR COVENANTS

Section 2.01     DUE AUTHORIZATION, EXECUTION, AND DELIVERY.

(a)      Grantor represents and warrants that the execution of the Loan Documents and the Indemnity Agreement have been duly authorized and there is no provision in the organizational documents of Grantor requiring further consent for such action by any other entity or person.

4

(b)    Grantor represents and warrants that it is duly organized, validly existing and is in good standing under the laws of the state of its formation and in the State, that it has all necessary licenses, authorizations, registrations, permits and/or approvals to own its properties and to carry on its business as presently conducted.

(c)    Grantor represents and warrants that the execution, delivery and performance of the Loan Documents will not result in Grantor's being in default under any provision of its organizational documents or of any deed of trust, mortgage, lease, credit or other agreement to which it is a party or which affects it or the Property.

(d)    Grantor represents and warrants that the Loan Documents and the Indemnity Agreement have been duly authorized, executed and delivered by Grantor and constitute valid and binding obligations of Grantor which are enforceable in accordance with their terms.

Section 2.02    PERFORMANCE BY GRANTOR.    Grantor shall pay the Secured Indebtedness to Beneficiary and shall keep and perform each and every other obligation, covenant and agreement of the Loan Documents.

Section 2.03    WARRANTY OF TITLE.

(a)    Grantor warrants that it holds good and indefeasible fee simple absolute title to the Real Property, and that it has the right and is lawfully authorized to sell, convey or encumber the Property subject only to those property specific exceptions to title recorded in the real estate records of the County and described on Exhibit "B" attached to this Deed of Trust (the "Permitted Exceptions"). The Property is free from all due and unpaid taxes, assessments and mechanics' and materialmen's liens.

(b)    Grantor further covenants to warrant and forever defend Beneficiary and Trustee from and against all persons claiming any interest in the Property.

Section 2.04    TAXES, LIENS AND OTHER CHARGES.

(a)    Unless otherwise paid to Beneficiary as provided in Section 2.05, Grantor shall pay all real estate and other taxes and assessments which may be payable, assessed, levied, imposed upon or become a lien on or against any portion of the Property (all of the foregoing items are collectively referred to as the "Imposition(s)"). The Impositions shall be paid not later than ten (10) days before the dates on which the particular Imposition would become delinquent and Grantor shall produce to Beneficiary receipts of the imposing authority, or other evidence reasonably satisfactory to Beneficiary, evidencing the payment of the Imposition in full. If Grantor elects by appropriate legal action to contest any Imposition, Grantor shall first deposit cash with Beneficiary as a reserve in an amount which Beneficiary reasonably determines is sufficient to pay the Imposition plus all fines, interest, penalties and costs which may become due pending the determination of the contest. If Grantor deposits this sum with Beneficiary, Grantor shall not be required to pay the Imposition provided that the contest operates to prevent enforcement or collection of the Imposition, or the sale or forfeiture of, the Property, and is prosecuted with due diligence and continuity. Upon termination of any proceeding or contest, Grantor shall pay the amount of the Imposition as finally determined in the proceeding or contest. Provided that there is not then an Event of Default (as defined in Section 11.01), the monies which have been deposited with Beneficiary pursuant to this Section shall be applied toward such payment and the excess, if any, shall be returned to Grantor.

(b)    In the event of the passage, after the Execution Date, of any law which deducts from the value of the Property, for the purposes of taxation, any lien or security interest encumbering the Property, or changing in any way the existing laws regarding the taxation of mortgages, deeds of trust and/or security agreements or debts secured by these instruments, or changing the manner for the collection of any such taxes, and the law has the effect of imposing payment of any Impositions upon Beneficiary, at Beneficiary's option, the Secured Indebtedness shall become due and payable in full ninety (90) days after written notice from Beneficiary to Grantor. Notwithstanding the preceding sentence, the Beneficiary's election to accelerate the Loan shall not be effective if (1) Grantor is permitted by law (including, without limitation, applicable interest rate laws) to, and actually does, pay the Imposition or the increased portion of the Imposition and (2) Grantor agrees in writing to pay or reimburse Beneficiary in accordance with Section 11.06 for the payment of any such Imposition which becomes payable at any time when the Loan is outstanding.

Section 2.05    ESCROW DEPOSITS.    Without limiting the effect of Section 2.04 and Section 3.01, Grantor shall pay to Beneficiary monthly on the same date the monthly installment of principal and interest is payable under the Note, an amount

5

equal to 1/12th of the amounts Beneficiary reasonably estimates are necessary to pay, on an annualized basis, (1) all Impositions and (2) the premiums for the insurance policies required under this Deed of Trust (collectively the "Premiums") until such time as Grantor has deposited an amount equal to the annual charges for these items and on demand, from time to time, shall pay to Beneficiary any additional amounts necessary to pay the Premiums and Impositions. Grantor will furnish to Beneficiary bills for Impositions and Premiums thirty (30) days before Impositions become delinquent and such Premiums become due for payment. No amounts paid as Impositions or Premiums shall be deemed to be trust funds and these funds may be commingled with the general funds of Beneficiary. Such deposits held by Beneficiary shall be held in interest-bearing accounts as selected by Beneficiary (and may be commingled with other funds of Beneficiary), and all interest accruing on such deposits shall be added to and become a part of such deposits held by Beneficiary. Except as otherwise provided herein, and so long as an Event of Default has not occurred, Beneficiary shall apply such amounts then on deposit with Beneficiary towards the payment of the Impositions and Premiums for which the amounts were deposited before such Impositions become delinquent and on or before the date such Premiums become due for payment but only upon Beneficiary's receipt from Grantor of all bills for such Impositions and Premiums as provided above, and provided that Grantor has deposited with Beneficiary all amounts necessary to make full payment the amounts of the Premiums and/or Impositions due and Grantor shall pay all additional amounts necessary to pay the Premiums and Impositions. If an Event of Default occurs, Beneficiary shall have the right, at its election, to apply any amounts held under this Section 2.05 in reduction of the Secured Indebtedness, or in payment of the Premiums or Impositions for which the amounts were deposited.

The foregoing obligation of Grantor to make monthly escrow deposits for payment of Premiums is subject to the condition that Grantor shall not be required to make such insurance premiums deposits with Beneficiary unless and until (i) there is a default under the Loan Documents, the Indemnity Agreement or the Guaranty; or (ii) Grantor no longer owns the Property; or (iii) there has been a change in the Grantor or in the general partners, stockholders or members of Grantor or in the constituent general partners or controlling shareholders or controlling members of any of the entities comprising Grantor (except for transfers expressly permitted under Sections 10.01(b) and 10.01(c) below); or (iv) insurance premiums deposits are required in connection with a securitization or participation of the Loan; or (v) at any time Grantor fails to furnish to Beneficiary, not later than thirty (30) days before the dates on which any insurance premiums would become delinquent, receipts for the payment of such insurance premiums or appropriate proof of issuance of a new policy which continues in force the insurance coverage of the expiring policy. In the event any of these events occur, Beneficiary reserves the right to require insurance premiums deposits at any time in its absolute discretion notwithstanding the fact that the default may be cured, or that the transfer or change be approved by the Beneficiary.

Furthermore, the foregoing obligation of Grantor to make monthly escrow deposits for payment of Impositions is subject to the condition that Grantor shall not be required to make such Impositions deposits with Beneficiary unless and until (i) there is a default under the Loan Documents, the Indemnity Agreement or the Guaranty; or (ii) Grantor no longer owns the Property; or (iii) there has been a change in the Grantor or in the general partners, stockholders or members of Grantor or in the constituent general partners or controlling shareholders or controlling members of any of the entities comprising Grantor (except for transfers expressly permitted under Sections 10.01(b) and 10.01(c) below); or (iv) such deposits are required in connection with a securitization or participation of the Loan; or (v) at any time Grantor fails to furnish to Beneficiary, not later than ten (10) days before the dates on which any Imposition would become delinquent, receipts of the imposing authority, or other evidence reasonably satisfactory to Beneficiary, evidencing the payment of the Impositions in full. In the event any of these events occur, Beneficiary reserves the right to require Impositions deposits at any time in its absolute discretion notwithstanding the fact that the default may be cured, or that the transfer or change be approved by the Beneficiary.

Section 2.06      CARE AND USE OF THE PROPERTY.

    (a)      Grantor represents and warrants to Beneficiary as follows:

        (i)      All permits, licenses and approvals required to allow the Improvements to be occupied and operated for the Use have been obtained, paid for and are in full force and effect.

        (ii)      The Improvements and their Use comply with (and no notices of violation have been received in connection with) all Requirements (as defined in this Section) and Grantor shall at all times comply with all present or future Requirements affecting or relating to the Property and/or the Use. Grantor shall furnish Beneficiary, on request, proof of compliance with the Requirements to the extent in Grantor's possession or otherwise available to Grantor, and Grantor shall use its best efforts to obtain such proof as necessary from any governmental authority or other third party. Grantor shall not

use or permit the use of the Property, or any part thereof, for any illegal purpose. "Requirements" shall mean all laws, ordinances, orders, covenants, conditions and restrictions and other requirements relating to land and building design and construction, use and maintenance, that may now or hereafter pertain to or affect the Property or any part of the Property or the Use, including, without limitation, planning, zoning, subdivision, environmental, air quality, flood hazard, fire safety, handicapped facilities, building, health, fire, traffic, safety, wetlands, coastal and other governmental or regulatory rules, laws, ordinances, statutes, codes and requirements applicable to the Property, including permits, licenses and/or certificates that may be necessary from time to time to comply with any of the these requirements.

(iii)    Grantor has complied with all requirements of all instruments and agreements affecting the Property with which Grantor (or the owner of the Property) is required to comply, whether or not of record, including without limitation all covenants and agreements by and between Grantor and any governmental or regulatory agency pertaining to the development, use or operation of the Property. Grantor, at its sole cost and expense, shall keep the Property in good order, condition, and repair, and make all necessary structural and non-structural, ordinary and extraordinary repairs to the Property and the Improvements.

(iv)    Grantor shall abstain from, and not permit, the commission of waste to the Property and shall not remove or alter in any substantial manner, the structure or character of any Improvements without the prior written consent of Beneficiary.

(v)    The zoning approval for the Property is not dependent upon the ownership or use of any property which is not encumbered by this Deed of Trust.

(vi)    Construction of the Improvements on the Property is complete except for any tenant finish-out to be completed by tenants pursuant to written lease agreements.

(vii)    The Property is in good repair and condition, free of any material damage.

(b)    Beneficiary shall have the right, subject to the rights of tenants of the Property pursuant to written lease agreements, at any time and from time to time during normal business hours and upon reasonable advance notice (written or oral) to Grantor, to enter the Property in order to ascertain Grantor's compliance with the Loan Documents, to examine the condition of the Property, to perform an appraisal, to undertake surveying or engineering work, and to inspect premises occupied by tenants. Grantor shall cooperate with Beneficiary performing these inspections.

(c)    Grantor shall use, or cause to be used, the Property continuously for the Use. Grantor shall not use, or permit the use of, the Property for any other use without the prior written consent of Beneficiary.

(d)    Without the prior written consent of Beneficiary, Grantor shall not (i) initiate or acquiesce in a change in the zoning classification of and/or restrictive covenants affecting the Property or seek any variance under existing zoning ordinances, (ii) use or permit the use of the Property in a manner which may result in the Use becoming a non-conforming use under applicable zoning ordinances, or (iii) subject the Property to restrictive covenants.

Section 2.07    COLLATERAL SECURITY INSTRUMENTS. Grantor covenants and agrees that if Beneficiary at any time holds additional security for any obligations secured by this Deed of Trust, it may enforce its rights and remedies with respect to the security, at its option, either before, concurrently or after a sale of the Property is made pursuant to the terms of this Deed of Trust. Beneficiary may apply the proceeds of the additional security to the Secured Indebtedness without affecting or waiving any right to any other security, including the security under this Deed of Trust, and without waiving any breach or default of Grantor under this Deed of Trust or any other Loan Document.

Section 2.08    SUITS AND OTHER ACTS TO PROTECT THE PROPERTY.

(a)    Grantor shall immediately notify Beneficiary of the commencement, or receipt of notice, of any and all actions or proceedings or other material matter or claim affecting the Property and/or the interest of Beneficiary under the Loan Documents (collectively, "Actions"). Grantor shall appear in and defend any Actions.

(b)    Beneficiary shall have the right, at the cost and expense of Grantor, to institute, maintain and participate in Actions and take such other action, as it may deem appropriate in the good faith exercise of its discretion to preserve or

Case 08-35653-KRH   Doc 3930-7   Filed 07/02/09   Entered 07/02/09 16:01:38   Desc
Exhibit(s) B   Page 11 of 21

protect the Property and/or the interest of Beneficiary under the Loan Documents. Any money paid by Beneficiary under this Section shall be reimbursed to Beneficiary in accordance with Section 11.06 hereof.

Section 2.09   LIENS AND ENCUMBRANCES. Without the prior written consent of Beneficiary, to be exercised in Beneficiary's sole and absolute discretion, other than the Permitted Exceptions, Grantor shall not create, place or allow to remain any lien or encumbrance on the Property, including deeds of trust, mortgages, security interests, conditional sales, mechanic liens, tax liens or assessment liens regardless of whether or not they are subordinate to the lien created by this Deed of Trust (collectively, "Liens and Encumbrances"). If any Liens and Encumbrances are recorded against the Property or any part of the Property, Grantor shall obtain a discharge and release of any Liens and Encumbrances within fifteen (15) days after receipt of notice of their existence, unless (A) Grantor elects by appropriate legal action to contest such Lien or Encumbrance and contests the same with due diligence and continuity and in good faith, and such contest operates to prevent enforcement or collection of the Lien or Encumbrance and (B) Grantor first either, at Beneficiary's option, (1) bonds against and over such Lien or Encumbrance in an amount, with a bonding company, and in a form acceptable to Beneficiary in its sole discretion or (2) deposits cash with Beneficiary in an amount which Beneficiary reasonably determines is sufficient to pay the Lien or Encumbrance plus all fines, interest, penalties and costs which may become due pending the determination of the contest. Immediately upon termination of any proceeding or contest, Grantor shall have the Lien or Encumbrance discharged and released and, as applicable, shall pay the amount of the Lien or Encumbrance as finally determined in the proceeding or contest. Provided that there is not then an Event of Default, the monies which have been deposited with Beneficiary pursuant to this Section shall be applied toward such payment and the excess, if any, shall be returned to Grantor.

**ARTICLE III**
**INSURANCE**

Section 3.01   REQUIRED INSURANCE AND TERMS OF INSURANCE POLICIES.

(a)      During the term of this Deed of Trust, Grantor at its sole cost and expense must provide insurance policies and certificates of insurance satisfactory to Beneficiary as to amounts, types of coverage and the companies underwriting these coverages. In no event shall such policies be terminated or otherwise allowed to lapse. Grantor shall be responsible for its own deductibles. Grantor shall also pay for any insurance, or any increase of policy limits, not described in this Deed of Trust which Grantor requires for its own protection or for compliance with government statutes. Grantor's insurance shall be primary and without contribution from any insurance procured by Beneficiary.

Policies of insurance shall be delivered to Beneficiary in accordance with the following requirements:

(1)      All Risk Property insurance on the Improvements and the Personal Property, including contingent liability from Operation of Building Laws, Demolition Costs and Increased Cost of Construction endorsements, in each case (i) in an amount equal to 100% of the "Full Replacement Cost" of the Improvements and Personal Property, which for purposes of this Article III shall mean actual replacement value (exclusive of costs of excavations, foundations, underground utilities and footings) with a waiver of depreciation and with a Replacement Cost Endorsement; (ii) containing an agreed amount endorsement with respect to the Improvements and Personal Property waiving all co-insurance provisions; (iii) providing for no deductible in excess of $10,000; and (iv) containing an "Ordinance or Law Coverage" or "Enforcement" endorsement if any of the Improvements or the use of the Property shall constitute non-conforming structures or uses. The Full Replacement Cost shall be determined from time to time by an appraiser or contractor designated and paid by Grantor and approved by Beneficiary or by an engineer or appraiser in the regular employ of the insurer.

(2)      Commercial General Liability insurance against claims for personal injury, bodily injury, death or property damage occurring upon, in or about the Property, such insurance (i) to be on the so-called "occurrence" form with a combined single limit of not less than the amount set forth in the Defined Terms; (ii) to continue at not less than this limit until required to be changed by Beneficiary in writing by reason of changed economic conditions making such protection inadequate; and (iii) to cover at least the following hazards: (a) premises and operations; (b) products and completed operations on an "if any" basis; (c) independent contractors; (d) blanket contractual liability for all written and oral contracts; and (e) contractual liability covering the indemnities contained in this Deed of Trust to the extent available.

(3)      Business Income insurance in an amount sufficient to prevent Grantor from becoming a co-insurer within the terms of the applicable policies, and sufficient to recover one (1) year's "Business Income" (as hereinafter defined). The amount of such insurance shall be increased from time to time during the term of this Deed of Trust as and when new

8

leases and renewal leases are entered into and rents payable increase or the annual estimate of gross income from occupancy of the Property increases to reflect such rental increases. "Business Income" shall mean the sum of (i) the total anticipated gross income from occupancy of the Property, (ii) the amount of all charges (such as, but not limited to, operating expenses, insurance premiums and taxes) which are the obligation of tenants or occupants to Grantor, (iii) the fair market rental value of any portion of the Property which is occupied by Grantor, and (iv) any other amounts payable to Grantor or to any affiliate of Grantor pursuant to leases.

(4)    If Beneficiary determines at any time that any part of the Property is located in an area identified on a Flood Hazard Boundary Map or Flood Insurance Rate Map issued by the Federal Emergency Management Agency as having special flood hazards and flood insurance has been made available, Grantor will maintain a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration with a generally acceptable insurance carrier, in an amount not less than the lesser of (i) the outstanding principal balance of the Loan or (ii) the maximum amount of insurance which is available under the National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973 or the National Flood Insurance Reform Act of 1994, as amended.

(5)    During the period of any construction or renovation or alteration of the Improvements, a so-called "Builder's All Risk" insurance policy in non-reporting form for any Improvements under construction, renovation or alteration including, without limitation, for demolition and increased cost of construction or renovation, in an amount approved by Beneficiary, including an Occupancy endorsement and Worker's Compensation Insurance covering all persons engaged in the construction, renovation or alteration in an amount at least equal to the minimum required by statutory limits of the State.

(6)    Workers' Compensation insurance, subject to the statutory limits of the State, and employer's liability insurance with a limit of at least $1,000,000 per accident and per disease per employee, and $1,000,000 for disease in the aggregate in respect of any work or operations on or about the Property, or in connection with the Property or its operations (if applicable).

(7)    Boiler & Machinery insurance covering the major components of the central heating, air conditioning and ventilating systems, boilers, other pressure vessels, high pressure piping and machinery, elevators and escalators, if any, and other similar equipment installed in the Improvements, in an amount equal to one hundred percent (100%) of the full replacement cost of all equipment installed in, on or at the Improvements. These policies shall insure against physical damage to and loss of occupancy and use of the Improvements arising out of an accident or breakdown.

(8)    Insurance from and against all losses, damages, costs, expenses, claims and liabilities related to or arising from acts of terrorism, of such types, in such amounts, with such deductibles, issued by such companies, and on such forms of insurance policies, as required by Beneficiary.

(9)    Such other insurance as may from time to time be reasonably required by Beneficiary against other insurable hazards, including, but not limited to, vandalism, earthquake, sinkhole and mine subsidence.

(b)    Beneficiary's interest must be clearly stated by endorsement in the insurance policies described in this Section 3.01 as follows:

(1)    The policies of insurance referenced in Subsections (a)(1), (a)(3), (a)(4), (a)(5) and (a)(7) of this Section 3.01 shall identify Beneficiary under the New York Standard Mortgagee Clause (non-contributory) endorsement.

(2)    The insurance policy referenced in Section 3.01 (a)(2) shall name Beneficiary as an additional insured.

(3)    All of the policies referred to in Section 3.01 shall provide for at least thirty (30) days' written notice to Beneficiary in the event of policy cancellation and/or material change.

(c)    All the insurance companies must be authorized to do business in the State of New York and the State and be approved by Beneficiary. The insurance companies must have a general policy rating of A or better and a financial class of X or better by A.M. Best Company, Inc. and a claims paying ability of BBB or better according to

9

Standard & Poors. If there are any Securities (as defined in Section 12.01) issued with respect to this Loan which have been assigned a rating by a credit rating agency approved by Beneficiary (a "Rating Agency"), the insurance company shall have a claims paying ability rating by such Rating Agency equal to or greater than the rating of the highest class of the Securities. Grantor shall deliver evidence satisfactory to Beneficiary of payment of premiums due under the insurance policies.

(d)    Certified copies of the policies, and any endorsements, shall be made available for inspection by Beneficiary upon request. If any policy is canceled before the Loan is satisfied, and Grantor fails to immediately procure replacement insurance, Beneficiary reserves the right but shall not have the obligation immediately to procure replacement insurance at Grantor's cost.

(e)    Grantor shall be required during the term of the Loan to continue to provide Beneficiary with original renewal policies or replacements of the insurance policies referenced in Section 3.01 (a). Beneficiary may accept Certificates of Insurance evidencing insurance policies referenced in Subsections (a)(2), (a)(4), and (a)(6) of this Section 3.01 instead of requiring the actual policies. Beneficiary shall be provided with renewal Certificates of Insurance, or Binders, not less than fifteen (15) days prior to each expiration. The failure of Grantor to maintain the insurance required under this Article III shall not constitute a waiver of Grantor's obligation to fulfill these requirements.

(f)    All binders, policies, endorsements, certificates, and cancellation notices are to be sent to the Beneficiary's Address for Insurance Notification as set forth in the Defined Terms until changed by notice from Beneficiary.

Section 3.02    ADJUSTMENT OF CLAIMS. Grantor hereby authorizes and empowers Beneficiary to settle, adjust or compromise any claims for damage to, or loss or destruction of, all or a portion of the Property, regardless of whether there are Insurance Proceeds or other proceeds available or whether any such Insurance Proceeds or other proceeds are sufficient in amount to fully compensate for such damage, loss or destruction, subject, however, to the provisions in Sections 7.02(f) hereof.

Section 3.03    ASSIGNMENT TO BENEFICIARY. In the event of the foreclosure of this Deed of Trust or other transfer of the title to the Property in extinguishment of the Secured Indebtedness, all right, title and interest of Grantor in and to any insurance policy, or premiums or payments in satisfaction of claims or any other rights under these insurance policies and any other insurance policies covering the Property shall pass to the transferee of the Property.

## ARTICLE IV
## BOOKS, RECORDS AND ACCOUNTS

Section 4.01    BOOKS AND RECORDS. Grantor shall keep adequate books and records of account in accordance with generally accepted accounting principles ("GAAP") consistently applied and furnish to Beneficiary:

(a)    quarterly certified rent rolls signed and dated by Grantor, detailing the names of all tenants of the Improvements, the portion of Improvements occupied by each tenant, the base rent and any other charges payable under each Lease (as defined in Section 5.02) and the term of each Lease, including the expiration date, and any other information as is reasonably required by Beneficiary, within thirty (30) days after the end of each fiscal quarter;

(b)    a quarterly operating statement of the Property and year to date operating statements detailing the total revenues received, total expenses incurred, total cost of all capital improvements, total debt service and total cash flow, to be prepared and certified by Grantor in the form required by Beneficiary, and if available, any quarterly operating statement prepared by an independent certified public accountant, within thirty to sixty (30-60) days after the close of each fiscal quarter of Grantor;

(c)    an annual balance sheet and profit and loss statement of Grantor in the form required by Beneficiary, prepared and certified by Grantor, as the case may be, or if required by Beneficiary, financial statements for Grantor and any Liable Parties prepared by a certified public accountant acceptable to Beneficiary within ninety (90) days after the close of each calendar year;

(d)      an annual operating budget presented on a monthly basis consistent with the annual operating statement described above for the Property including cash flow projections for the upcoming year and all proposed capital replacements and improvements at least fifteen (15) days prior to the start of each calendar year; and

(e)      an annual ARGUS © valuation file in electronic form which includes, without limitation, a then current roll, all income of the Property and all Property expenses.

Section 4.02      PROPERTY REPORTS.  Upon request from Beneficiary or its representatives and designees, Grantor shall furnish in a timely manner to Beneficiary:

(a)      a property management report for the Property, showing the number of inquiries made and/or rental applications received from tenants or prospective tenants and deposits received from tenants and any other information reasonably requested by Beneficiary, in reasonable detail and certified by Grantor (or an officer, general partner, member or principal of Grantor if Grantor is not an individual) under penalty of perjury to be true and complete, but no more frequently than quarterly; and

(b)      an accounting of all security deposits held in connection with any Lease of any part of the Property, including the name and identification number of the accounts in which such security deposits are held, the name and address of the financial institutions in which such security deposits are held and the name of the person to contact at such financial institution.

Section 4.03      ADDITIONAL MATTERS.

(a)      Grantor shall furnish Beneficiary with such other additional financial or management information (including State and Federal tax returns) as may, from time to time, be reasonably required by Beneficiary or the rating agencies in form and substance satisfactory to Beneficiary or the rating agencies.

(b)      Grantor shall furnish Beneficiary and its agents convenient facilities for the examination and audit of any such books and records, with any such audit to be at Beneficiary's expense unless an Event of Default exists.

(c)      Beneficiary and its representatives shall have the right upon prior written notice to examine and audit the records, books, management and other papers of Grantor and its affiliates or of any guarantor or indemnitor which reflect upon their financial condition and/or the income, expenses and operations of the Property, at the Property or at any office regularly maintained by Grantor, its affiliates or any guarantor or indemnitor where the books and records are located. Beneficiary shall have the right upon notice to make copies and extracts from the foregoing records and other papers.

## ARTICLE V
## LEASES AND OTHER AGREEMENTS AFFECTING THE PROPERTY

Section 5.01      GRANTOR'S REPRESENTATIONS AND WARRANTIES.

Grantor represents and warrants to Trustee and Beneficiary as follows:

(a)      There are no leases or occupancy agreements affecting the Property except those leases and amendments listed on Exhibit "B" to the Assignment of Leases of even date herewith, executed by Grantor to Beneficiary, and Grantor has delivered to Beneficiary true, correct and complete copies of all such leases, including amendments (collectively, "Existing Leases") and all guaranties and amendments of guaranties given in connection with the Existing Leases (the "Guaranties").

(b)      To the best of Grantor's knowledge, after due inquiry and investigation, there are no defaults by Grantor under the Existing Leases and Guaranties or by any tenants under the Existing Leases or by any guarantors under the Guaranties. The Existing Leases and the Guaranties are in full force and effect.

(c)      To the best knowledge of Grantor, none of the tenants now occupying 10% or more of the Property or having a current lease affecting 10% or more of the Property is the subject of any bankruptcy, reorganization or insolvency proceeding or any other debtor-creditor proceeding.

11

(d)    No Existing Leases may be amended, terminated or canceled unilaterally by a tenant and no tenant may be released from its obligations, except in the event of (i) material damage to, or destruction of, the Property, (ii) condemnation, or (iii) the occurrence of a co-tenancy violation under an Existing Lease to the extent provided therein.

Section 5.02    ASSIGNMENT OF LEASES.  In order to further secure payment of the Secured Indebtedness and the performance of Grantor's obligations under the Loan Documents, Grantor absolutely, presently and unconditionally grants, assigns and transfers to Beneficiary all of Grantor's right, title, interest and estate in, to and under (i) all of the Existing Leases and Guaranties affecting the Property and (ii) all of the future leases, lease amendments, guaranties and amendments of guaranties and (iii) the Rents and Profits.  Grantor shall be permitted to collect the Rents and Profits pursuant to a revocable license unless and until an Event of Default occurs.  The Existing Leases and Guaranties and all future leases, lease amendments, guaranties and amendments of guaranties are collectively referred to as the "Leases."  The assignment of the Leases in this Deed of Trust shall not effect a pro tanto payment of the Secured Indebtedness or the obligations of Grantor pursuant to the Indemnity Agreement.  Further, receipt by Beneficiary of Rents and Profits shall not be deemed to constitute a pro tanto payment of the Secured Indebtedness or the obligations of Grantor pursuant to the Indemnity Agreement, but shall be applied as set forth in that certain Assignment of Leases of even date herewith, executed by Grantor to Beneficiary.

Section 5.03    PERFORMANCE OF OBLIGATIONS.

(a)    Grantor shall perform all obligations of the landlord under any and all Leases.  If any of the acts described in this Section are done without the written consent of Beneficiary (except to the extent the consent of Beneficiary is not required as expressly provided below), at the option of Beneficiary, they shall be of no force or effect and shall constitute an Event of Default under this Deed of Trust.

(b)    Grantor agrees to furnish Beneficiary executed copies of all future Leases.  Grantor shall not, without the express written consent of Beneficiary, (i) enter into or extend any Lease unless the Lease complies with the Leasing Guidelines which are attached to this Deed of Trust as Exhibit "C", or (ii) cancel or terminate any Leases except in the case of a default by the tenant thereunder unless Grantor has entered into new Leases covering all of the premises of the Leases being terminated or surrendered, or (iii) modify or amend any Leases in any material way or reduce the rent, or (iv) unless the tenants remain liable under the Leases, consent to an assignment of the tenant's interest or to a subletting of the demised premises under any Lease, or (v) accept payment of advance rents or security deposits in an amount in excess of one month's rent or (vi) grant to a tenant or any other party any options to purchase the Property.  Grantor shall provide to Beneficiary a copy of any proposed new Lease, Lease amendment, termination, assignment, sublease or other item requiring Beneficiary's consent as provided above, together with all materials reasonably necessary or requested by Beneficiary to evaluate the request for Beneficiary's approval, at least twenty (20) days prior to the proposed effective date thereof.  If no written notice of approval from Beneficiary has been received by Grantor with respect to such matter within ten (10) business days after Grantor has submitted such items to Beneficiary, then such Lease or matter shall be deemed to have been disapproved.

Section 5.04    SUBORDINATE LEASES.  Each Lease affecting the Property shall be absolutely subordinate to the lien of this Deed of Trust and shall also contain a provision, satisfactory to Beneficiary, to the effect that in the event of the judicial or non-judicial foreclosure of the Property, at the election of the acquiring foreclosure purchaser, the particular Lease shall not be terminated and the tenant shall attorn to the purchaser.  If requested to do so, the tenant shall agree to enter into a new Lease for the balance of the term upon the same terms and conditions.  If Beneficiary requests, Grantor shall use all commercially reasonable efforts to cause a tenant or tenants to enter into subordination and attornment agreements or nondisturbance agreement with Beneficiary on forms which have been approved by Beneficiary, and each new Lease entered into after the date hereof  shall contain a provision requiring each tenant to enter into a subordination and attornment agreement or nondisturbance agreement with Beneficiary on forms which have been approved by Beneficiary, to the extent required and requested by Beneficiary.

Section 5.05    LEASING COMMISSIONS.  Grantor covenants and agrees that all contracts and agreements entered into by Grantor (or its property manager) relating to the Property requiring the payment of leasing commissions, management fees or other similar compensation shall (i) provide that the obligation will not be enforceable against Beneficiary and (ii) be subordinate to the lien of this Deed of Trust.  Beneficiary will be provided evidence of Grantor's compliance with this Section upon request.

12

Section 5.06    TENANCY.  In the event there is a foreclosure sale hereunder and at the time of such sale Grantor or Grantor's representatives, successors or assigns or any other persons claiming any interest in the Property by, through or under Grantor are occupying or using the Property, or any part thereof, each and all shall, at the option of Beneficiary or the purchaser at such sale, as the case may be, immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day-to-day, terminable at the will of either landlord or tenant, at a reasonable rental per day based upon the value of the Property occupied.

**ARTICLE VI**
**ENVIRONMENTAL HAZARDS**

Section 6.01    REPRESENTATIONS AND WARRANTIES.  Grantor hereby represents, warrants, covenants and agrees to and with Beneficiary that (i) neither Grantor nor, to the best of Grantor's knowledge, after due inquiry, any tenant, subtenant or occupant of the Property, has at any time placed, suffered or permitted the presence of any Hazardous Materials (as defined in Section 6.05) at, on, under, within or about the Property except for paint and related products (including flammable liquids) sold by the tenant The Glidden Company d/b/a ICI Paints in the ordinary course of its retail business and in compliance with all Requirements of Environmental Laws, ordinary maintenance and cleaning supplies customarily used by retail, office and restaurant tenants in projects similar to the Property and in compliance with all Requirements of Environmental Laws, and as expressly approved by Beneficiary in writing, and (ii) all operations or activities upon the Property, and any use or occupancy of the Property by Grantor are presently and shall in the future be in compliance with all Requirements of Environmental Laws (as defined in Section 6.06), (iii) Grantor will use best efforts to assure that any tenant, subtenant or occupant of the Property shall in the future be in compliance with all Requirements of Environmental Laws, (iv) Grantor does not know of, and has not received, any written or oral notice or other communication from any person or entity (including, without limitation, a governmental entity) relating to Hazardous Materials or Remedial Work pertaining thereto, of possible liability of any person or entity pursuant to any Requirements of Environmental Laws, other environmental conditions in connection with the Property, or any actual administrative or judicial proceedings in connection with any of the foregoing, (v) Grantor shall not do or allow any tenant or other user of the Property to do any act that materially increases the dangers to human health or the environment, poses an unreasonable risk of harm to any person or entity (whether on or off the Property), impairs or may impair the value of the Property, is contrary to any requirement of any insurer, constitutes a public or private nuisance, constitutes waste, or violates any covenant, condition, agreement or easement applicable to the Property, and (vi) Grantor has truthfully and fully provided to Beneficiary, in writing, any and all information relating to environmental conditions in, on, under or from the Property that is known to Grantor and that is contained in Grantor's files and records, including, without limitation, any reports relating to Hazardous Materials in, on, under or from the Property and/or to the environmental condition of the Property.

Section 6.02    REMEDIAL WORK.  In the event any investigation or monitoring of site conditions or any clean-up, containment, restoration, removal or other remedial work (collectively, the "Remedial Work") is required under any Requirements of Environmental Laws, Grantor shall perform or cause to be performed the Remedial Work in compliance with the applicable law, regulation, order or agreement.  All Remedial Work shall be performed by one or more contractors, selected by Grantor and approved in advance in writing by Beneficiary, and under the supervision of a consulting engineer, selected by Grantor and approved in advance in writing by Beneficiary.  All costs and expenses of Remedial Work shall be paid by Grantor including, without limitation, the charges of the contractor(s) and/or the consulting engineer, and Beneficiary's reasonable attorneys', architects' and/or consultants' fees and costs incurred in connection with monitoring or review of the Remedial Work.  In the event Grantor shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, the Remedial Work, Beneficiary may, but shall not be required to, cause such Remedial Work to be performed, subject to the provisions of Sections 11.05 and 11.06.

Section 6.03    ENVIRONMENTAL SITE ASSESSMENT.  Beneficiary shall have the right, at any time and from time to time, to undertake, at the expense of Beneficiary, an environmental site assessment on the Property, including any testing that Beneficiary may determine, in its sole discretion, is necessary or desirable to ascertain the environmental condition of the Property and the compliance of the Property with Requirements of Environmental Laws; provided, however, that such costs shall be Grantor's expense where (i) Beneficiary has reason to believe (in Beneficiary's sole good faith discretion) that Grantor, any tenant or any portion of the Property is in violation of or not in compliance with any Requirements of Environmental Laws, or (ii) an Event of Default exists, or (iii) Grantor submits a Transfer Request pursuant to Section 10.05 below.  Grantor shall cooperate fully with Beneficiary and its consultants performing such assessments and tests.

13

Section 6.04    UNSECURED OBLIGATIONS. No amounts which may become owing by Grantor to Beneficiary under this Article VI or under any other provision of this Deed of Trust as a result of a breach of or violation of this Article VI shall be secured by this Deed of Trust. The obligations shall continue in full force and effect and any breach of this Article VI shall constitute an Event of Default. The lien of this Deed of Trust shall not secure (i) any obligations evidenced by or arising under the Indemnity Agreement ("Unsecured Obligations"), or (ii) any other obligations to the extent that they are the same or have the same effect as any of the Unsecured Obligations. The Unsecured Obligations shall continue in full force, and any breach or default of any such obligations shall constitute a breach or default under this Deed of Trust but the proceeds of any foreclosure sale shall not be applied against Unsecured Obligations. Nothing in this Section shall in any way limit or otherwise affect the right of Beneficiary to obtain a judgment in accordance with applicable law for any deficiency in recovery of all obligations that are secured by this Deed of Trust following foreclosure, notwithstanding that the deficiency judgment may result from diminution in the value of the Property by reason of any event or occurrence pertaining to Hazardous Materials or any Requirements of Environmental Laws.

Section 6.05    HAZARDOUS MATERIALS.

"Hazardous Materials" shall include without limitation:

(a)    Those substances included within the definitions of "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 as amended, 42 U.S.C. Sections 9601 et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Sections 6901 et seq., and the Hazardous Materials Transportation Act, 49 U.S.C. Sections 1801 et seq., and in the regulations promulgated pursuant to said laws;

(b)    Those substances defined as "hazardous wastes" in the Texas Solid Waste Disposal Act (Texas Health & Safety Code, Title 5, Subtitle B), the Texas Clean Air Act (Texas Health & Safety Code, Title 5, Subtitle C), the Texas Pesticide Control Act (Tex. Agric. Code Ann. Section 76.001 et seq.) and Subchapter I of the Texas Water Code (V.T.C.A., Water Code Section 26.341 et seq.) and in the regulations promulgated pursuant to such laws;

(c)    Those chemicals known to cause cancer or reproductive toxicity, as published pursuant to the Texas Solid Waste Disposal Act (Texas Health & Safety Code, Title 5, Subtitle B), the Texas Clean Air Act (Texas Health & Safety Code, Title 5, Subtitle C), the Texas Pesticide Control Act (Tex. Agric. Code Ann. Section 76.001 et seq.) and Subchapter I of the Texas Water Code (V.T.C.A., Water Code Section 26.341 et seq.);

(d)    Those substances listed in the United States Department of Transportation Table (49 CFR 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and amendments thereto);

(e)    Any material, waste or substance which is (A) petroleum, (B) asbestos, (C) polychlorinated biphenyls, (D) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. Section 1251 et seq. (33 U.S.C. Section 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. Section 1317); (E) a chemical substance or mixture regulated under the Toxic Substances Control Act of 1976, 15 U.S.C. Section 2601 et seq.; (F) flammable explosives; or (G) radioactive materials; and

(f)    Such other substances, materials and wastes which are or become regulated as hazardous or toxic under applicable local, state or federal law, or the United States government, or which are classified as hazardous or toxic under federal, state, or local laws or regulations.

Section 6.06    REQUIREMENTS OF ENVIRONMENTAL LAWS. "Requirements of Environmental Laws" means all requirements of environmental, ecological, health, or industrial hygiene laws or regulations or rules of common law related to the Property, including, without limitation, all requirements imposed by any environmental permit, law, rule, order, or regulation of any federal, state, or local executive, legislative, judicial, regulatory, or administrative agency, which relate to (i) exposure to Hazardous Materials; (ii) pollution or protection of the air, surface water, ground water, land; (iii) solid, gaseous, or liquid waste generation, treatment, storage, disposal, or transportation; or (iv) regulation of the manufacture, processing, distribution and commerce, use, or storage of Hazardous Materials.

**ARTICLE VII**
**CASUALTY, CONDEMNATION AND RESTORATION**

Section 7.01    GRANTOR'S REPRESENTATIONS.

To the best knowledge and belief of Grantor after due and diligent inquiry, Grantor represents and warrants as follows:

(a)    Except as expressly approved by Beneficiary in writing, no casualty or damage to any part of the Property which would cost more than $50,000 to restore or replace has occurred which has not been fully restored or replaced.

(b)    No part of the Property has been taken in condemnation or other similar proceeding or transferred in lieu of condemnation, nor has Grantor received notice of any proposed condemnation or other similar proceeding affecting the Property.

(c)    There is no pending proceeding for the total or partial condemnation of the Property.

Section 7.02    RESTORATION.

(a)    Grantor shall give prompt written notice of any casualty to the Property to Beneficiary whether or not required to be insured against. The notice shall describe the nature and cause of the casualty and the extent of the damage to the Property. Grantor covenants and agrees to commence and diligently pursue to completion the Restoration (as defined below).

(b)    Grantor assigns to Beneficiary all Insurance Proceeds which Grantor is entitled to receive in connection with a casualty whether or not such insurance is required under this Deed of Trust. In the event of any damage to or destruction of the Property, and provided (1) an Event of Default does not currently exist, and (2) Beneficiary has determined that (i) there has not been an Impairment of the Security (as defined in Section 7.02 (c)), and (ii) the repair, restoration and rebuilding of any portion of the Property that has been partially damaged or destroyed (the "Restoration") can be accomplished in full compliance with all Requirements to the same condition, character and general utility as nearly as possible to that existing prior to the casualty and at least equal in value as that existing prior to the casualty, the Net Insurance Proceeds shall be applied to the Cost of Restoration in accordance with the terms of this Article. Beneficiary shall hold and disburse the Insurance Proceeds less the cost, if any, to Beneficiary of recovering the Insurance Proceeds including, without limitation, reasonable attorneys' fees and expenses, and adjusters' fees (the "Net Insurance Proceeds") to the Restoration.

(c)    For the purpose of this Article, "Impairment of the Security" shall mean any or all of the following: (i) any of the Leases for more than 15,000 square feet existing immediately prior to the damage, destruction, condemnation or casualty shall have been canceled, or shall contain any exercisable right to cancel as a result of the damage, destruction or casualty, (ii) the casualty or damage occurs during the last year of the term of the Loan; or (iii) restoration of the Property is estimated to require more than one year to complete from the date of the occurrence.

(d)    If the Net Insurance Proceeds are to be used for the Restoration in accordance with this Article, Grantor shall comply with Beneficiary's Requirements For Restoration as set forth in Section 7.04 below. Upon Grantor's satisfaction and completion of the Requirements For Restoration and upon confirmation that there is no Event of Default then existing, Beneficiary shall pay any remaining Restoration Funds (as defined in Section 7.04 below) then held by Beneficiary to Grantor.

(e)    In the event that the conditions for Restoration set forth in this Section have not been met, Beneficiary may, at its option, apply the Net Insurance Proceeds to the reduction of the Secured Indebtedness in such order as Beneficiary may determine and Beneficiary may declare the entire Secured Indebtedness immediately due and payable. After payment in full of the Secured Indebtedness, any remaining Restoration Funds shall be paid to Grantor.

(f)    Notwithstanding the foregoing, if the costs of Restoration resulting from damage, loss or destruction do not exceed the sum of $500,000 in the aggregate, Grantor shall be entitled to collect such Insurance Proceeds and settle, adjust or compromise any claims for damage to, or loss or destruction of, all or a portion of the Property, provided that (i) no Event of Default exists, (ii) Beneficiary has determined that (A) there has not been an Impairment of the Security, and (B) the

15

Restoration can be accomplished in full compliance with all Requirements to the same condition, character and general utility as nearly as possible to that existing prior to the casualty and at least equal in value as that existing prior to the casualty, (iii) all Insurance Proceeds are used and applied by Grantor first to completely repair and restore the Property to its original condition, and (iv) Grantor shall comply with Beneficiary's Requirements For Restoration as set forth in Section 7.04 below (to the extent applicable as determined by Beneficiary).

Section 7.03      CONDEMNATION.

(a)      If the Property or any part of the Property is taken by reason of any condemnation or similar eminent domain proceeding, or by a grant or conveyance in lieu of condemnation or eminent domain ("Condemnation"), Beneficiary shall be entitled to all compensation, awards, damages, proceeds and payments or relief for the Condemnation ("Condemnation Proceeds"). At its option, Beneficiary shall be entitled to commence, appear in and prosecute in its own name any action or proceeding or to make any compromise or settlement in connection with such Condemnation. Grantor hereby irrevocably constitutes and appoints Beneficiary as its attorney-in-fact, which appointment is coupled with an interest, to commence, appear in and prosecute any action or proceeding or to make any compromise or settlement in connection with any such Condemnation.

(b)      Grantor assigns to Beneficiary all Condemnation Proceeds which Grantor is entitled to receive. In the event of any Condemnation, Grantor shall commence and diligently pursue to completion the Restoration; provided, however, if (1) an Event of Default does not currently exist, and (2) Beneficiary has determined that (i) there has not been an Impairment of the Security, and (ii) the Restoration of any portion of the Property that has not been taken can be accomplished in full compliance with all Requirements to the same condition, character and general utility as nearly as possible to that existing prior to the taking and at least equal in value as that existing prior to the taking, then the Net Condemnation Proceeds shall be applied to the Cost of Restoration in accordance with the terms of this Article. Beneficiary shall hold and disburse the Condemnation Proceeds less the cost, if any, to Beneficiary of recovering the Condemnation Proceeds including, without limitation, reasonable attorneys' fees and expenses, and adjusters' fees (the "Net Condemnation Proceeds") to the Restoration.

(c)      In the event the Net Condemnation Proceeds are to be used for the Restoration, Grantor shall comply with Beneficiary's Requirements For Restoration as set forth in Section 7.04 below. Upon Grantor's satisfaction and completion of the Requirements For Restoration and upon confirmation that there is no Event of Default then existing, Beneficiary shall pay any remaining Restoration Funds (as defined in Section 7.04 below) then held by Beneficiary to Grantor.

(d)      In the event that the conditions for Restoration set forth in this Section have not been met, Beneficiary may, at its option, apply the Net Condemnation Proceeds to the reduction of the Secured Indebtedness in such order as Beneficiary may determine and Beneficiary may declare the entire Secured Indebtedness immediately due and payable. After payment in full of the Secured Indebtedness, any remaining Restoration Funds shall be paid to Grantor.

(e)      Notwithstanding the foregoing, if the costs of Restoration resulting from a Condemnation do not exceed the sum of $500,000 in the aggregate, Grantor shall be entitled to collect such Condemnation Proceeds and settle, adjust or compromise any claims for damage to, or loss or destruction of, all or a portion of the Property as a result of such Condemnation, provided that (i) no Event of Default exists, (ii) Beneficiary has determined that (A) there has not been an Impairment of the Security, and (B) the Restoration of any portion of the Property that has not been taken can be accomplished in full compliance with all Requirements to the same condition, character and general utility as nearly as possible to that existing prior to the casualty and at least equal in value as that existing prior to the taking, (iii) all Condemnation Proceeds are used and applied by Grantor first to completely repair and restore the Property as nearly as possible to its original condition, and (iv) Grantor shall comply with Beneficiary's Requirements For Restoration as set forth in Section 7.04 below (to the extent applicable as determined by Beneficiary).

Section 7.04      REQUIREMENTS FOR RESTORATION.  Unless otherwise expressly agreed in a writing signed by Beneficiary, the following are the Requirements For Restoration:

(a)      If the Net Insurance Proceeds or Net Condemnation Proceeds are to be used for the Restoration, prior to the commencement of any Restoration work (the "Work"), Grantor shall provide Beneficiary for its review and written approval (i) complete plans and specifications for the Work which (A) have been approved by all required governmental authorities, (B) have been approved by an architect satisfactory to Beneficiary (the "Architect") and (C) are accompanied by Architect's signed statement of the total estimated cost of the Work (the "Approved Plans and Specifications"); (ii) the amount

of money which Beneficiary reasonably determines will be sufficient when added to the Net Insurance Proceeds or Condemnation Proceeds to pay the entire cost of the Restoration (collectively referred to as the "Restoration Funds"); (iii) evidence that the Approved Plans and Specifications and the Work are in compliance with all Requirements; (iv) an executed contract for construction with a contractor reasonably satisfactory to Beneficiary (the "Contractor") in a form approved by Beneficiary in writing; and (v) a surety bond and/or guarantee of payment with respect to the completion of the Work. The bond or guarantee shall be reasonably satisfactory to Beneficiary in form and amount and shall be signed by a surety or other entities who are reasonably acceptable to Beneficiary.

(b)    Grantor shall not commence the Work, other than temporary work to protect the Property or prevent interference with business, until Grantor shall have complied with the requirements of subsection (a) of this Section 7.04. So long as there does not currently exist an Event of Default and the following conditions have been complied with or, in Beneficiary's discretion, waived, Beneficiary shall disburse the Restoration Funds in increments to Grantor, from time to time as the Work progresses:

(i)    Architect shall be in charge of the Work.

(ii)    Beneficiary shall disburse the Restoration Funds directly or through escrow with a title company selected by Grantor and approved by Beneficiary, upon not less than ten (10) days' prior written notice from Grantor to Beneficiary and Grantor's delivery to Beneficiary of (A) Grantor's written request for payment (a "Request for Payment") accompanied by a certificate by Architect in a form reasonably satisfactory to Beneficiary which states that (a) all of the Work completed to that date has been completed substantially and in all material respects in compliance with the Approved Plans and Specifications and in accordance with all Requirements, (b) the amount requested has been paid or is then due and payable and is properly a part of the cost of the Work, and (c) when added to all sums previously paid by Beneficiary, the requested amount does not exceed the cost of the Work completed to the date of such certificate; and (B) evidence satisfactory to Beneficiary that the balance of the Restoration Funds remaining after making the payments shall be sufficient to pay the balance of the cost of the Work. Each Request for Payment shall be accompanied by (x) waivers of liens covering that part of the Work previously paid for, if any, (y) a title search or by other evidence satisfactory to Beneficiary that no mechanic's or materialmen's liens or other similar liens for labor or materials supplied in connection with the Work have been filed against the Property and not discharged of record, and (z) an endorsement to Beneficiary's title policy insuring that no encumbrance exists on or affects the Property other than the Permitted Exceptions.

(iii)    The final Request for Payment shall be accompanied by (i) a final certificate of occupancy or other evidence of approval of appropriate governmental authorities for the use and occupancy of the Improvements, (ii) evidence that the Restoration has been completed in accordance with the Approved Plans and Specifications and all Requirements, (iii) evidence that the costs of the Restoration have been paid in full, and (iv) evidence that no mechanic's or similar liens for labor or material supplied in connection with the Restoration are outstanding against the Property, including final waivers of liens covering all of the Work and an endorsement to Beneficiary's title policy insuring that no encumbrance exists on or affects the Property other than the Permitted Exceptions.

(c)    If (i) within sixty (60) days after the occurrence of any damage, destruction or condemnation requiring Restoration, Grantor fails to submit to Beneficiary and receive Beneficiary's approval of plans and specifications or fails to deposit with Beneficiary the additional amount necessary to accomplish the Restoration as provided in subparagraph (a) above, or (ii) after such plans and specifications are approved by all such governmental authorities and Beneficiary, Grantor fails to commence promptly or diligently continue to completion the Restoration, or (iii) Grantor becomes delinquent in payment to mechanics, materialmen or others for the costs incurred in connection with the Restoration, or (iv) there exists an Event of Default, then, in addition to all of the rights herein set forth and after ten (10) days' written notice of the non-fulfillment of one or more of these conditions, Beneficiary may apply the Restoration Funds to reduce the Secured Indebtedness in such order as Beneficiary may determine, and at Beneficiary's option and in its sole discretion, Beneficiary may declare the Secured Indebtedness immediately due and payable together with the Prepayment Fee (as defined in, and subject to the terms of, the Note).

## ARTICLE VIII
## REPRESENTATIONS OF GRANTOR

Section 8.01    ERISA.  Grantor hereby represents, warrants and agrees that: (i) it is acting on its own behalf and that it is not an employee benefit plan as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as

17

amended ("ERISA"), which is subject to Title 1 of ERISA, nor a plan as defined in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (each of the foregoing hereinafter referred to collectively as a "Plan"); (ii) Grantor's assets do not constitute "plan assets" of one or more such Plans within the meaning of Department of Labor Regulation Section 2510.3-101; and (iii) it will not be reconstituted as a Plan or as an entity whose assets constitute "plan assets".

Section 8.02    NON-RELATIONSHIP.  Grantor represents and warrants that, and agrees to furnish Beneficiary on request evidence confirming that, neither Grantor nor any general partner, director, member or officer of Grantor nor, to Grantor's knowledge, any person who is a Grantor's Constituent (as defined in Section 8.03) is (i) a director or officer of Metropolitan Life Insurance Company ("MetLife"), (ii) a parent, son or daughter of a director or officer of MetLife, or a descendent of any of them, (iii) a stepparent, adopted child, stepson or stepdaughter of a director or officer of MetLife, or (iv) a spouse of a director or officer of MetLife.

Section 8.03    NO ADVERSE CHANGE.

Grantor represents and warrants that:

(a)    there has been no material adverse change from the conditions shown in the application submitted for the Loan by Grantor ("Application") or in the materials submitted by Grantor or any of Grantor's Constituents (as defined below) or any Liable Party in connection with the Application in the credit rating or financial condition of Grantor, the general partners, shareholders or members of Grantor or any entity which is a general partner, shareholder or member of Grantor, respectively as the case may be (collectively, "Grantor's Constituents").

(b)    Grantor has delivered to Beneficiary true and correct copies of all Grantor's organizational documents and, except as expressly approved by Beneficiary in writing, there have been no changes in Grantor's Constituents since the date that the Application was executed by Grantor.

(c)    Neither Grantor, nor any of the Grantor's Constituents, is involved in any bankruptcy, reorganization, insolvency, dissolution or liquidation proceeding, and to the best knowledge of Grantor, no such proceeding is contemplated or threatened.

(d)    Grantor has received reasonably equivalent value for the granting of this Deed of Trust.

Section 8.04    FOREIGN INVESTOR.  Grantor represents and warrants, and agrees to furnish Beneficiary on request evidence confirming that, neither Grantor nor any partner, member or stockholder of Grantor is, and no legal or beneficial interest in a partner, member or stockholder of Grantor is or will be held, directly or indirectly by, a "foreign person" within the meaning of Sections 1445 and 7701 of the Internal Revenue Code of 1986, as amended, or regulations as promulgated pursuant to such Code.

Section 8.05    SECURITIES LAWS.  Grantor represents and warrants that the limited partnership interests evidenced by the Grantor's Organizational Documents have been issued in accordance with all applicable federal and state securities laws, or authorized exemptions from such securities laws, including, but not limited to, the Securities Act of 1933, as amended, the Securities and Exchange Act of 1934, and the Texas Securities Act, as amended.  The limited partnership interests of Grantor have not been issued in violation of any federal, state or local securities law, and to the extent that these securities have been issued in reliance on exemptions from such federal or state securities law, all necessary steps have been taken to qualify for such exemptions.  The limited partners of Grantor have been properly notified of all applicable securities laws and related restrictions on their ability to transfer, sell or otherwise dispose of their partnership interests in Grantor.  The name of Beneficiary is not and will not be in any of the offering materials provided or to be provided to any person, including, but not limited to, any of the limited partners of Grantor, nor has there been any representation, whether written, oral or otherwise, that Beneficiary in any way has participated or endorsed the offering of the partnership interests in Grantor.

Section 8.06    SINGLE PURPOSE ENTITY.  Grantor represents, warrants, and covenants with Beneficiary that it has not and shall not: (i) engage in business other than owning and operating the Property; (ii) acquire or own a material asset other than the Property and incidental personal property; (iii) maintain assets in a way difficult to segregate and identify, or commingle its assets with the assets of any of its partners or affiliates or of any other person or entity or transfer any assets to any such person or entity, other than payments or reimbursements to the general partner of Grantor to provide funds necessary for the payment of expenses of owning, managing and operating the Property or distributions on account of equity

18