interests in the Grantor permitted and properly accounted for pursuant to Grantor's partnership agreement; (iv) fail to hold itself out to the public as a legal entity separate from any other or fail to maintain capital sufficient thereof; (v) fail to conduct business solely in its name or fail to maintain records, accounts or bank accounts separate from any other person or entity; (vi) file or consent to a petition pursuant to applicable bankruptcy, insolvency, liquidation or reorganization statutes, or make an assignment for the benefit of creditors without the unanimous consent of its partners or members, as applicable; (vii) incur additional indebtedness except for trade payables in the ordinary course of business of owning and operating the Property, provided that such indebtedness is paid within sixty (60) days of when incurred; (viii) dissolve, liquidate, consolidate, merge or sell all or substantially all of its assets; or (ix) modify, amend or revise its organizational documents without the prior written consent of Beneficiary.

**ARTICLE IX**
**EXCULPATION AND LIABILITY**

Section 9.01    LIABILITY OF GRANTOR.

(a)    Upon the occurrence of an Event of Default, except as provided in this Section 9.01, Beneficiary will look solely to the Property and the security under the Loan Documents for the repayment of the Loan and will not enforce a deficiency judgment against Grantor. However, nothing contained in this section shall limit the rights of Beneficiary to proceed against Grantor and the general partners of Grantor and/or the Liable Parties, if any, (i) to enforce any Leases entered into by Grantor or its affiliates as tenant, guarantees, or other agreements entered into by Grantor in a capacity other than as borrower or any policies of insurance; (ii) to recover damages for fraud, material misrepresentation, material breach of warranty or waste by Grantor or any Liable Party, or any partner, officer, agent, employee or representative of Grantor or any Liable Party, or any property manager engaged by Grantor; (iii) to recover any Condemnation Proceeds or Insurance Proceeds or other similar funds which have been misapplied by Grantor or which, under the terms of the Loan Documents, should have been paid to Beneficiary; (iv) to recover any tenant security deposits, tenant letters of credit or other deposits or fees paid to Grantor that are part of the collateral for the Loan or prepaid rents paid to Grantor for a period of more than thirty (30) days which have not been delivered to Beneficiary and which have not been applied to the Loan or in accordance with the Loan Documents to operating and maintenance expenses of the Property; (v) to recover Rents and Profits received by Grantor after the first day of the month in which an Event of Default occurs and prior to the date Beneficiary acquires title to the Property which have not been applied to the Loan or in accordance with the Loan Documents to operating and maintenance expenses of the Property, provided, however, Grantor shall not be liable under this subpart (v) for Rents and Profits actually received by Beneficiary or its agent after an Event of Default occurs pursuant to Beneficiary's rights to collect and receive Rents and Profits after an Event of Default pursuant to this Deed of Trust and the Assignment of Leases of even date herewith executed by Grantor in favor of Beneficiary; (vi) to recover damages, costs and expenses arising from, or in connection, with Article VI of this Deed of Trust pertaining to hazardous materials or the Indemnity Agreement, for which Grantor is liable or obligated thereunder; (vii) to recover all amounts due and payable pursuant to Sections 11.06 and 11.07 of this Deed of Trust and any amount expended by Beneficiary in connection with the foreclosure of this Deed of Trust; (viii) to recover damages arising from Grantor's failure to comply with Section 8.01 of this Deed of Trust pertaining to ERISA; (ix) to recover damages, costs and expenses arising from Grantor's failure to obtain and pay for the insurance policies required under this Deed of Trust; (x) to recover damages, costs and expenses arising from Grantor's failure to pay any property taxes or other Impositions pertaining to the Property as and when required by the applicable taxing authority to the extent attributable to (A) the 2003 tax year and (B) to all periods of Grantor's ownership of the Property, but excluding the amount of such property taxes and other Impositions actually collected and received by Beneficiary directly from tenants of the Property after Beneficiary acquires title to the Property by foreclosure, deed in lieu of foreclosure or otherwise; (xi) to recover all costs and expenses (including reasonable attorneys' fees) incurred by Beneficiary in curing any default by Grantor (as landlord) under a Lease, including the curing of defaults by Grantor (as landlord) under the Leases which exist on the date Beneficiary takes title to the Property by foreclosure, deed in lieu of foreclosure or otherwise (provided that Beneficiary acts in a commercially reasonable and prudent manner and with reasonable diligence to cure such default), and to recover any amounts paid by Beneficiary to a tenant which were the obligation of Grantor (as landlord) to pay to a tenant prior to Beneficiary's taking title to the Property; and/or (xii) in the event of a casualty occurring after Beneficiary takes title to the Property by foreclosure, deed in lieu of foreclosure or otherwise (and only so long as Beneficiary or any of its affilates is the owner of the Property), to recover from Grantor all costs and expenses (if any) incurred by Beneficiary to repair and restore the Property as required under the Leases in excess of the insurance proceeds available for such repair and restoration, but only so long as Beneficiary maintains casualty insurance on a Full Replacement Cost (as defined in Section 3.01(a) of this Deed of Trust) basis.

(b)    The limitation of liability set forth in this Section 9.01 shall not apply and the Loan shall be fully recourse in the event that Grantor commences a voluntary bankruptcy or insolvency proceeding is commenced against Grantor (by any party other than Benefici (90) days of filing. In addition, this agreement shall not waive any rights which Benefi of the U.S. Bankruptcy Code to file a claim for the full amount of the Secured Indeb shall continue to secure all of the Secured Indebtedness.

(c)    Furthermore, notwithstanding anything in this Section 9.01 or in any the limitation of liability set forth in this Section 9.01 shall not apply and the Loan sh prior to the repayment of the Secured Indebtedness, there is any Transfer or Subor permitted in the Loan Documents or as otherwise approved in writing by Beneficiary

## ARTICLE X
## CHANGE IN OWNERSHIP, CONVEYANCE OF PROPERTY

Section 10.01    CONVEYANCE OF PROPERTY, CHANGE IN OWNERSHIP AND COMPOSITION.

(a)    Grantor shall not cause or permit: (i) any part of the Property or any interest in the Property, to be conveyed, transferred, assigned, encumbered, sold or otherwise disposed of; or (ii) any transfer, assignment or conveyance of any interest in Grantor or in the partners, or stockholders, or members or beneficiaries of, Grantor or of any of Grantor's Constituents or (iii) any merger, reorganization, dissolution or other change in the ownership structure of Grantor or any of the general partners of Grantor, including, without limitation, any conversion of Grantor or any general partner of Grantor from a general partnership to a limited partnership, a limited liability partnership or a limited liability company (collectively, "Transfers"). Except for permitted transfers described in (b) and (c) below, any such Transfer shall be an Event of Default hereunder.

(b)    The prohibitions on transfer shall not apply to transfers of ownership interests in Grantor or in the partners, or stockholders, or members or beneficiaries of, Grantor or in any of Grantor's Constituents, to a spouse, son or daughter or descendant of either, or to a stepson or stepdaughter or descendant of either, (i) as a result of the death of a natural person or (ii) in connection with estate planning by a natural person.

(c)    The prohibitions on transfer shall also not apply to transfers of ownership interests in Grantor or in the partners of Grantor, to other current partners of Grantor existing on the date hereof, provided that (i) John L. Hendry, III, or a family member of John L. Hendry, III involved in the daily operations of the Property, has and at all times maintains not less than a 51% controlling interest in Grantor and (ii) Grantor shall pay all out of pocket costs and expenses incurred by Beneficiary in connection with any such transfer, including, without limitation, title insurance premiums, documentation costs, and reasonable attorney fees (which may include the fees of in-house counsel).

Section 10.02    PROHIBITION ON SUBORDINATE FINANCING. Grantor shall not incur or permit the incurring of (i) any financing in addition to the Loan that is secured by a lien, security interest or other encumbrance of any part of the Property or (ii) any pledge or encumbrance of a partnership, member or shareholder or beneficial interest in Grantor (individually or collectively, "Subordinate Financing"). Any such Subordinate Financing shall be an "Event of Default" hereunder.

Section 10.03    RESTRICTIONS ON ADDITIONAL OBLIGATIONS. During the term of the Loan, Grantor shall not, without the prior written consent of Beneficiary, become liable with respect to any indebtedness or other obligation except for (i) the Loan, (ii) Leases entered into in the ordinary course of owning and operating the Property for the Use, (iii) other liabilities incurred in the ordinary course of owning and operating the Property for the Use but excluding any loans or borrowings, (iv) liabilities or indebtedness disclosed in writing to and approved by Beneficiary on or before the Execution Date, and (v) any other single item of indebtedness or liability which does not exceed $25,000 or, when aggregated with other items or indebtedness or liability, does not exceed $100,000.

Section 10.04    STATEMENTS REGARDING OWNERSHIP. Grantor agrees to submit or cause to be submitted to Beneficiary within thirty (30) days after December 31st of each calendar year during the term of this Deed of Trust and ten (10) days after any written request by Beneficiary, a sworn, notarized certificate, signed by an authorized (i) individual who is Grantor or one of the individuals comprising Grantor, (ii) member of Grantor, (iii) partner of Grantor or (iv) officer of

Grantor or officer of the general partner of Grantor, as the case may be, stating whether (x) any part of the Property, or any interest in the Property, has been conveyed, transferred, assigned, encumbered, or sold, and if so, to whom; (y) any conveyance, transfer, pledge or encumbrance of any interest in Grantor has been made by Grantor and if so, to whom; or (z) there has been any change in the individual(s) comprising Grantor or in the partners, members, stockholders or beneficiaries of Grantor from those on the Execution Date, and if so, a description of such change or changes.

Section 10.05    ONE-TIME TRANSFER RIGHT. Beneficiary, in consideration of Grantor's payment of one percent (1%) of the outstanding principal balance of the Note (the "Transfer Fee") together with a non-refundable processing fee in the amount of $10,000.00 (the "Processing Fee"), shall consider a request from Grantor that Beneficiary consent to a one-time sale, conveyance, or transfer of the Property to an entity or party (the "Transferee") not otherwise expressly permitted under this Deed of Trust (the "Transfer Request"). Grantor's one-time transfer right is subject to the following conditions:

(i)     there being no existing Event of Default (or any existing event or condition that, with the passage of time and/or notice would constitute an Event of Default) or any default under the Indemnity Agreement or the Guaranty,

(ii)    the Beneficiary's approval (in its sole and absolute discretion) of the Transferee,

(iii)   the Transferee being able to make the ERISA representations set forth in the Loan Documents,

(iv)    the net income, in Beneficiary's opinion, derived from the Property being no less than 1.50 times the annual payments required under the Loan (such debt coverage ratio is hereinafter defined as "DCR") at the time of the Transfer Request and on the effective date of the Transfer,

(v)     the outstanding loan to value ratio (using the principal balance of the Note as of the date of the Transfer Request) based on a current appraisal of the Property acceptable to Beneficiary or prepared by Beneficiary not exceeding seventy-five percent (75%),

(vi)    evidence of the payment of the Transfer Fee and the Processing Fee,

(vii)   the Transferee expressly assuming the Loan Documents and the Indemnity Agreement in a manner satisfactory to the Beneficiary, in its sole discretion, and additional Liable Parties acceptable to Beneficiary (in its sole discretion) executing a guaranty (in form and substance as required by Beneficiary) with respect to events arising or occurring from and after the date of the Transfer, which additional Liable Parties must have (in the aggregate if more than one) a net worth of not less than $45,000,000,

(viii)  the Transferee having a net worth acceptable to Beneficiary in its sole discretion,

(ix)    the Transferee having specific experience in the ownership, management and leasing of properties similar to the Property in the area where the Property is located,

(x)     Grantor or the Transferee paying all costs and expenses incurred by the Beneficiary in connection with the Transfer, including, without limitation, title insurance premiums, endorsements, documentation costs and reasonable attorneys' fees,  and

(xi)    if the Loan has been securitized, Beneficiary receiving confirmation that the Transfer and the assumption of the Loan by the Transferee will not result in an adverse change in the rating of the Securities by the Rating Agency.

Grantor agrees to include in the Transfer Request the Processing Fee and in addition evidence relating to items (i) through (xi) in the preceding sentence in sufficient detail, including, without limitation, the name, net worth, background, and address of the Transferee and its principals, so as to enable Beneficiary to determine the acceptability of the Transferee. The Transfer Fee shall be paid to Beneficiary on the date of transfer as a condition precedent to Beneficiary's consent thereto. No Transfer shall release Grantor or any Liable Party from their obligations under the Loan Documents, the Indemnity Agreement or the Guaranty with respect to events occurring prior to the date of the Transfer, but Grantor and the Liable Parties shall not be liable for events occurring from and after the date of the Transfer provided that, with respect to environmental claims, Grantor

and the Liable Parties shall remain liable for all damages, claims and liabilities which are attributable to (i) the introduction or release of a Hazardous Material at the Property by Grantor or any Liable Party either before or after the date of the Transfer, (ii) Hazardous Materials which are discovered at the Property after the date of the Transfer but which were actually introduced to the Property prior to the date of the Transfer, and (iii) any continuing migration or release of any Hazardous Materials which commenced prior to the date of the Transfer.

Grantor shall be notified, within sixty (60) days following Beneficiary's receipt of all the data Beneficiary deems necessary to make its determination as to the acceptability of the Transferee, of whether Beneficiary approves or disapproves of the Transferee. The failure of Beneficiary to so notify Grantor within this time period shall be deemed a disapproval by the Beneficiary of the Transfer to the Transferee.

## ARTICLE XI
## DEFAULTS AND REMEDIES

Section 11.01    UNDERLINE EVENTS OF DEFAULT. Any of the following shall be deemed to be a material breach of Grantor's covenants in this Deed of Trust and shall constitute a default ("Event of Default"):

(a)    The failure of Grantor to pay any installment of principal, interest or principal and interest, any required escrow deposit or any other sum required to be paid under any Loan Document, whether to Beneficiary or otherwise, within seven (7) days of the due date of such payment;

(b)    The failure of Grantor to perform or observe any other term, provision, covenant, condition or agreement under any Loan Document for a period of more than thirty (30) days after receipt of notice of such failure; provided, however, if such failure of performance is capable of being cured, but is not reasonably capable of being cured within such thirty (30) day period, then Grantor shall have a reasonable period of time thereafter, not exceeding an additional ninety (90) days, as shall be reasonably required in which to cure such matter before the same shall constitute an Event of Default under this subparagraph (b), but only provided that Grantor shall have commenced to cure such matter within the initial thirty (30) day period and shall have continued to pursue the curing of such matter diligently and in good faith to conclusion within such additional ninety (90) day period;

(c)    The filing by Grantor or one of the Liable Parties (an "Insolvent Entity") of a voluntary petition or application for relief under bankruptcy, the filing (by any party other than Beneficiary) against an Insolvent Entity of an involuntary petition or application for relief in bankruptcy which is not dismissed within sixty (60) days, or an Insolvent Entity's adjudication as a bankrupt or insolvent, or the filing by an Insolvent Entity of any petition, application for relief or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law, code or regulation relating to bankruptcy, insolvency or other relief for debtors, or an Insolvent Entity's seeking or consenting to or acquiescing in the appointment of any trustee, custodian, conservator, receiver or liquidator of an Insolvent Entity or of all or any substantial part of the Property or of any or all of the Rents and Profits, or the making by an Insolvent Entity of any general assignment for the benefit of creditors, or the admission in writing by an Insolvent Entity of its inability to pay its debts generally as they become due;

(d)    If any warranty, representation, certification, financial statement or other information made or furnished at any time pursuant to the terms of the Loan Documents by Grantor, or by any person or entity otherwise liable under any Loan Document shall be materially false or misleading when made or furnished;

(e)    If Grantor shall suffer or permit the Property, or any part of the Property, to be used in a manner that (1) impairs Grantor's title to the Property, (2) creates rights of adverse use or possession, or (3) constitutes an implied dedication of any part of the Property, and such matter is not cured within thirty (30) days after Grantor's knowledge or receipt of notice thereof or within such shorter period if Beneficiary believes that the security is impaired;

(f)    If Liable Parties shall default under the Guaranty executed by Liable Parties in favor of Beneficiary dated as of the Execution Date;

(g)    The dissolution or, in the case of a natural person, the death or disability, of Grantor or any Liable Party; provided, however, the death or disability of a Liable Party who is a natural person shall not be an Event of Default if such

Liable Party is replaced with a substitute Liable Party acceptable to Beneficiary in its sole discretion within ninety (90) days of the date of such death or disability; or

     (b)    The occurrence of any other event referred to as an "Event of Default" under this Deed of Trust or any of the other Loan Documents.

Section 11.02    REMEDIES UPON DEFAULT. Upon the happening of an Event of Default the Secured Indebtedness shall, at the option of Beneficiary, become immediately due and payable, without further notice or demand, and Beneficiary may undertake any one or more of the following remedies:

     (a)    Foreclosure. Institute a foreclosure action in accordance with the law of the State, or take any other action as may be allowed, at law or in equity, for the enforcement of the Loan Documents and realization on the Property or any other security afforded by the Loan Documents. In the case of a judicial proceeding, Beneficiary may proceed to final judgment and execution for the amount of the Secured Indebtedness owed as of the date of the judgment, together with all costs of suit, reasonable attorneys' fees and interest on the judgment at the maximum rate permitted by law from the date of the judgment until paid. If Beneficiary is the purchaser at the foreclosure sale of the Property, the foreclosure sale price shall be applied against the total amount due Beneficiary; and/or

     (b)    Power of Sale. Authorize and empower Trustee, his successor or substitute (i) to sell the Property or any part thereof situated in the State at the courthouse door of any county in the State in which any part of the Property is situated, at public vendue to the highest bidder for cash between the hours of 10 o'clock a.m. and 4 o'clock p.m. on the first Tuesday in any month, after (A) advertising the time, place and terms of said sale, and the Property to be sold, by posting for at least twenty-one (21) days preceding the date of said sale written or printed notice (hereinafter referred to as the "Notice of Sale") of the time, place and terms of such sale at the courthouse door of each county in which the Property to be sold or any part thereof is situated, and (B) filing, at least twenty-one (21) days prior to the date of said sale, a copy of the Notice of Sale in the office of the County Clerk of each county in which the Property to be sold or any part thereof is situated, and paying all necessary costs and expenses incident to each such filing, and (C) in addition, after serving written notice of the proposed sale by certified mail at least twenty-one (21) days preceding the date of sale on each debtor obligated to pay the Secured Indebtedness, at the most recent address of such debtor as shown by the records of Beneficiary; or (ii) to sell the same at such other time, place and in accordance with such procedures and requirements as may hereafter be provided by the laws of the State, all in accordance with the following requirements:

     (1)    The sale by Trustee of any of the Property in accordance with the provisions of clause (i) of the immediately preceding sentence shall take place in the area at the courthouse in the county designated for such purpose by the commissioner's court of said county, and in the event that no area has been designated by such commissioner's court, then the Notice of Sale shall designate an area at the county courthouse where the sale shall take place and, in such event, the sale shall be conducted by the Trustee at the area designated in the Notice of Sale. The Notice of Sale shall contain a statement of the earliest time at which such sale will occur and the sale shall begin at the time stated in the Notice of Sale or not later than three (3) hours after such time.

     (2)    Any sale made by Trustee hereunder may be of the entire Property or such portions thereof as Beneficiary may request, and any sale may be adjourned by announcement at the time and place appointed for such sale without further notice except as may be required by law. The sale by Trustee of only a portion of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sales under such power until the entire Property shall be sold; and, if the proceeds of such sale or sales, as the case may be, of a portion of the Property shall be less than the Secured Indebtedness and the cost and expenses incurred in connection with pursuing Beneficiary's rights and remedies hereunder, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made; provided, however, that Grantor shall never have any right to require the sale of less than the whole of the Property, but the Beneficiary shall have the right, at its sole election, to request the Trustee to sell less than the whole of the Property.

     (3)    After each sale, Trustee shall make to the purchaser or purchasers at such sale good and sufficient conveyances in the name of Grantor, conveying the property so sold to the purchaser or purchasers in fee simple with general warranty of title, and shall receive the proceeds of said sale or sales and apply the same as herein provided.

(4)    The power of sale granted herein shall not be exhausted by any sale held hereunder by Trustee or his substitute or successor, and such power of sale may be exercised from time to time and as many times as the Beneficiary may deem necessary until all of Property has been duly sold and all Secured Indebtedness has been fully paid. In the event any sale hereunder is not completed or is defective in the opinion of Beneficiary, such sale shall not exhaust the power of sale hereunder and Beneficiary shall have the right to cause a subsequent sale or sales to be held hereunder. Any and all statements of fact or other recitals made in any deed or deeds given by the Trustee or any successor or substitute appointed hereunder as to nonpayment of the Secured Indebtedness secured hereby or as to the occurrence of any default, or as to Beneficiary having declared all of such indebtedness to be due and payable, or as to the request to sell, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to the refusal, failure or inability to act of the Trustee or any substitute or successor trustee, or as to any other act or thing having been duly done by the Beneficiary or by such Trustee, his substitute or successor, shall be taken as prima facie evidence of the truth of the facts so stated and recited. Trustee, his successor or substitute, may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Trustee, including the posting of notices and the conduct of sale, but in the name and on behalf of Trustee, his successor or substitute.

(5)    Beneficiary shall have the right to become the purchaser at any sale held by any Trustee, his substitute or successor or by any receiver or public officer, and any Beneficiary purchasing at any such sale shall have the right to credit upon the amount of the bid made therefor, to the extent necessary to satisfy such bid, the Secured Indebtedness; and/or

(c)    Entry. Enter into possession of the Property, lease the Improvements, collect all Rents and Profits and, after deducting all costs of collection and administration expenses, apply the remaining Rents and Profits in such order and amounts as Beneficiary, in Beneficiary's sole discretion, may elect to the payment of Impositions, operating costs, costs of maintenance, restoration and repairs, Premiums and other charges, including, but not limited to, costs of leasing the Property and fees and costs of counsel and receivers, and in reduction of the Secured Indebtedness; and/or

(d)    Receivership. Have a receiver appointed to enter into possession of the Property, lease the Property, collect the Rents and Profits and apply them as the appropriate court may direct. Beneficiary shall be entitled to the appointment of a receiver without the necessity of proving either the inadequacy of the security or the insolvency of Grantor or any of the Liable Parties. Grantor and Liable Parties shall be deemed to have consented to the appointment of the receiver. The collection or receipt of any of the Rents and Profits by Beneficiary or any receiver shall not affect or cure any Event of Default.

(e)  ·    Remedies Cumulative. Subject to Section 9.01 hereof, all remedies herein expressly provided for are cumulative of any and all other remedies existing at law or in equity and any and all other remedies provided for in any other Loan Document and Trustee and the Beneficiary shall, in addition to the remedies herein provided, be entitled to avail themselves of all such other remedies as may now or hereafter exist at law or in equity for the collection of the Secured Indebtedness, the enforcement of the covenants herein and the foreclosure of the liens and security interests evidenced hereby, and the resort to any remedy provided for hereunder or under any such other Loan Document provided for by law shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

Section 11.03    APPLICATION OF PROCEEDS OF SALE.  In the event of a sale of the Property pursuant to Section 11.02 of this Deed of Trust, to the extent permitted by law, the Beneficiary shall determine in its sole discretion the order in which the proceeds from the sale shall be applied to the payment of the Secured Indebtedness, including without limitation, the expenses of the sale and of all proceedings in connection with the sale, including reasonable attorneys' fees and expenses; Impositions, Premiums, liens, and other charges and expenses; the outstanding principal balance of the Secured Indebtedness; any accrued interest; any Prepayment Fee; and any other amounts owed under any of the Loan Documents.

Section 11.04    WAIVER OF JURY TRIAL. To the fullest extent permitted by law, Grantor and Beneficiary HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY in any action, proceeding and/or hearing on any matter whatsoever arising out of, or in any way connected with, the Note, this Deed of Trust or any of the Loan Documents, or the enforcement of any remedy under any law, statute, or regulation. Neither party will seek to consolidate any such action in which a jury has been waived, with any other action in which a jury trial cannot or has not been waived. Each party has received the advice of counsel with respect to this waiver.

Section 11.05    BENEFICIARY'S RIGHT TO PERFORM GRANTOR'S OBLIGATIONS.    Grantor agrees that, if Grantor fails to perform any act or to pay any money which Grantor is required to perform or pay under the Loan Documents, Beneficiary may make the payment or perform the act at the cost and expense of Grantor and in Grantor's name or in its own name.    Any money paid by Beneficiary under this Section 11.05 shall be reimbursed to Beneficiary in accordance with Section 11.06.

Section 11.06    BENEFICIARY REIMBURSEMENT.    All payments made, or funds expended or advanced by Beneficiary pursuant to the provisions of any Loan Document, shall (1) become a part of the Secured Indebtedness, (2) bear interest at the Interest Rate (as defined in the Note) from the date of demand by Beneficiary for reimbursement of such payments made or funds expended or advanced, and (3) become due and payable by Grantor upon demand by Beneficiary.    Grantor shall reimburse Beneficiary within ten (10) days after receipt of written demand for such amounts.    Notwithstanding (2) above, any amounts not reimbursed by Grantor to Beneficiary within ten (10) days after receipt of such written demand shall bear interest at the Default Rate (as defined in the Note) until paid in full.

Section 11.07    FEES AND EXPENSES.    If Beneficiary becomes a party (by intervention or otherwise) to any action or proceeding affecting, directly or indirectly, Grantor, the Property or the title thereto or Beneficiary's interest under this Deed of Trust, or employs an attorney to collect any of the Secured Indebtedness or to enforce performance of the obligations, covenants and agreements of the Loan Documents, Grantor shall reimburse Beneficiary in accordance with Section 11.06 for all expenses, costs, charges and reasonable legal fees incurred by Beneficiary (including, without limitation, the fees and expenses of experts and consultants), whether or not suit is commenced.

Section 11.08    WAIVER OF CONSEQUENTIAL DAMAGES.    Grantor covenants and agrees that in no event shall Beneficiary be liable for consequential damages, and to the fullest extent permitted by law, Grantor expressly waives all existing and future claims that it may have against Beneficiary for consequential damages.

Section 11.09    INDEMNIFICATION OF TRUSTEE.    Except for gross negligence and willful misconduct, Trustee shall not be liable for any act or omission or error of judgment.    Trustee may rely on any document believed by it in good faith to be genuine.    All money received by Trustee shall be held in trust, but need not be segregated (except to the extent required by law), until used or applied as provided in this Deed of Trust.    Trustee shall not be liable for interest on the money.    Grantor shall protect, indemnify and hold harmless Trustee against all liability and expenses which Trustee may incur in the lawful performance of its duties.

Section 11.10    ACTIONS BY TRUSTEE.    At any time, upon written request of Beneficiary and presentation of this Deed of Trust and the Note for endorsement, and without affecting the personal liability of any entity or the Liable Parties for payment of the Secured Indebtedness or the effect of this Deed of Trust upon the remainder of the Property, Trustee may take such actions as Beneficiary may request which are permitted by this Deed of Trust or by applicable law.

Section 11.11    RESIGNATION AND APPOINTMENT OF TRUSTEE.    Trustee may resign by an instrument in writing addressed to the Noteholder, or Trustee may be removed at any time with or without cause by Beneficiary.    In case of the death, resignation, removal or disqualification of Trustee or if for any reason the Beneficiary shall deem it desirable to appoint a substitute or successor trustee to act instead of the herein named trustee or any substitute or successor trustee, then Beneficiary shall have the right and is hereby authorized and empowered to appoint a successor trustee, or a substitute trustee, without other formality than appointment and designation in writing executed by Beneficiary, and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Secured Indebtedness secured hereby has been paid in full or until the Property is sold hereunder.    In the event the Secured Indebtedness is owned by more than one person or entity, the holder or holders of not less than a majority of the amount of the Secured Indebtedness shall have the right and authority to make the appointment of a successor or substitute trustee provided for in the preceding sentence.    Such appointment and designation by Beneficiary or by the holder or holders of not less than a majority of the Secured Indebtedness shall be full evidence of the right and authority to make the same and of all facts therein recited.    If Beneficiary is a corporation and such appointment is executed in its behalf by an officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.    Upon the making of any such appointment and designation, all of the estate and title of Trustee in the Property shall vest in the named successor or substitute trustee and he shall thereupon succeed to and shall hold, possess and execute all the rights, powers, privileges, immunities and duties herein conferred upon Trustee; but nevertheless, upon the written request of Beneficiary or of the successor or substitute Trustee, the Trustee ceasing to act shall execute and deliver an instrument transferring to such

25

successor or substitute Trustee all of the estate and title in the Property of the Trustee so ceasing to act, together with all rights, powers, privileges, immunities and duties herein conferred upon the Trustee, and shall duly assign, transfer and deliver any of the properties and moneys held by said Trustee hereunder to said successor or substitute Trustee. All references herein to Trustee shall be deemed to refer to the Trustee (including any successor or substitute appointed and designated as herein provided) from time to time acting hereunder. Grantor hereby ratifies and confirms any and all acts which the herein named Trustee or his successor or successors, substitute or substitutes, in this trust, shall do lawfully by virtue hereof.

### ARTICLE XII
### GRANTOR AGREEMENTS AND FURTHER ASSURANCES

Section 12.01    PARTICIPATION AND SALE OF LOAN.

(a)    Beneficiary may sell, transfer or assign its entire interest or one or more participation interests in the Loan and the Loan Documents at any time and from time to time, including, without limitation, its rights and obligations as servicer of the Loan. Beneficiary may issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement, including depositing the Loan Documents with a trust that may issue securities (the "Securities"). Beneficiary may forward to each purchaser, transferee, assignee, servicer, participant, investor in such Securities (collectively, the "Investor") or any Rating Agency rating such Securities and each prospective Investor, all documents and information which Beneficiary now has or may hereafter acquire relating to the Secured Indebtedness and to Grantor or any Liable Parties and the Property, whether furnished by Grantor, any Liable Parties or otherwise, as Beneficiary determines necessary or desirable. In no event shall Grantor have any liability to any Investor, prospective Investor or Rating Agency for any information furnished to such third party which was not prepared or furnished by Grantor or any of Grantor's Constituents or any partner, affiliate, officer, agent, employee or representative of Grantor.

(b)    Grantor will cooperate with Beneficiary and the Rating Agencies in furnishing such information and providing such other assistance, reports and legal opinions as Beneficiary may reasonably request in connection with any such transaction. In addition, Grantor acknowledges that Beneficiary may release or disclose to potential purchasers or transferees of the Loan, or potential participants in the Loan, originals or copies of the Loan Documents, title information, engineering reports, financial statements, operating statements, appraisals, Leases, rent rolls, and all other materials, documents and information in Beneficiary's possession or which Beneficiary is entitled to receive under the Loan Documents, with respect to the Loan, Grantor, Liable Parties or the Property. Grantor shall also furnish to such Investors or such prospective Investors or such Rating Agency any and all information concerning the Property, the Leases, the financial condition of Grantor or any Liable Parties as may be reasonably requested by Beneficiary, any Investor or any prospective Investor or any Rating Agency in connection with any sale, transfer or participation interest.

Section 12.02    REPLACEMENT OF NOTE. Upon notice to Grantor of the loss, theft, destruction or mutilation of the Note, Grantor will execute and deliver, in lieu of the original Note, a replacement note, identical in form and substance to the Note and dated as of the Execution Date. Upon the execution and delivery of the replacement note, all references in any of the Loan Documents to the Note shall refer to the replacement note.

Section 12.03    GRANTOR'S ESTOPPEL. Within ten (10) days after a request by Beneficiary, Grantor shall furnish an acknowledged written statement in form satisfactory to Beneficiary (i) setting forth the amount of the Secured Indebtedness, (ii) stating either that no offsets or defenses exist against the Secured Indebtedness, or if any offsets or defenses are alleged to exist, their nature and extent, (iii) whether any default then exists under the Loan Documents or any event has occurred and is continuing, which, with the lapse of time, the giving of notice, or both, would constitute such a default, and (iv) any other matters as Beneficiary may reasonably request. If Grantor does not furnish an estoppel certificate within the 10-day period, Grantor appoints Beneficiary as its attorney-in-fact to execute and deliver the certificate on its behalf, which power of attorney shall be coupled with an interest and shall be irrevocable.

Section 12.04    FURTHER ASSURANCES. Grantor shall, without expense to Beneficiary and/or Trustee, execute, acknowledge and deliver all further acts, deeds, conveyances, mortgages, deeds of trust, assignments, security agreements, and financing statements as Beneficiary and/or Trustee shall from time to time reasonably require, to assure, convey, assign, transfer and confirm unto Beneficiary and/or Trustee the Property and rights conveyed or assigned by this Deed of Trust or which Grantor may become bound to convey or assign to Beneficiary and/or Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or any of the other Loan Documents, or for filing, refiling, registering, reregistering, recording or rerecording this Deed of Trust. If Grantor fails to comply with the terms of this

26

Section, Beneficiary may, at Grantor's expense, perform Grantor's obligations for and in the name of Grantor, and Grantor hereby irrevocably appoints Beneficiary as its attorney-in-fact to do so. The appointment of Beneficiary as attorney-in-fact is coupled with an interest.

Section 12.05    SUBROGATION. Beneficiary shall be subrogated to the lien of any and all encumbrances against the Property paid out of the proceeds of the Loan and to all of the rights of the recipient of such payment.

Section 12.06    INTEREST PROVISIONS.

(a)    Savings Clause. It is expressly stipulated and agreed to be the intent of Grantor and Beneficiary at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the Note or the Related Indebtedness (as herein defined) (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to the Note, any of the other Loan Documents or any other communication or writing by or between Grantor and Beneficiary related to the transaction or transactions that are the subject matter of the Loan Documents, (ii) contracted for, charged or received by reason of Beneficiary's exercise of the option to accelerate the maturity of the Note and/or the Related Indebtedness, or (iii) Grantor will have paid or Beneficiary will have received by reason of any voluntary prepayment by Borrower of the Note and/or the Related Indebtedness, then it is Grantor's and Beneficiary's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Beneficiary shall be credited on the principal balance of the Note and/or the Related Indebtedness without payment of the Prepayment Fee (or, if the Note and all Related Indebtedness have been or would thereby be paid in full, refunded to Grantor), and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if the Note has been paid in full before the end of the stated term of the Note, then Grantor and Beneficiary agree that Beneficiary shall, with reasonable promptness after Beneficiary discovers or is advised by Grantor that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Grantor and/or credit such excess interest against the Note and/or any Related Indebtedness then owing by Grantor to Beneficiary without payment of the Prepayment Fee. Grantor hereby agrees that as a condition precedent to any claim seeking usury penalties against Beneficiary, Grantor will provide written notice to Beneficiary, advising Beneficiary in reasonable detail of the nature and amount of the violation, and Beneficiary shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Grantor or crediting such excess interest against the Note and/or the Related Indebtedness then owing by Grantor to Beneficiary without payment of the Prepayment Fee. All sums contracted for, charged or received by Beneficiary for the use, forbearance or detention of any debt evidenced by the Note and/or the Related Indebtedness shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of the Note and/or the Related Indebtedness (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Note and/or the Related Indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Note and/or the Related Indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to the Note and/or the Related Indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

(b)    Definitions. As used herein, the term "Maximum Lawful Rate" shall mean the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Beneficiary in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges (as herein defined) made in connection with the transaction evidenced by the Note and the other Loan Documents. As used herein, the term "Charges" shall mean all fees, charges and/or any other things of value, if any, contracted for, charged, received, taken or reserved by Beneficiary in connection with the transactions relating to the Note and the other Loan Documents, which are treated as interest under applicable law. As used herein, the term "Related Indebtedness" shall mean any and all debt paid or payable by Grantor to Beneficiary pursuant to the Loan Documents or any other communication or writing by or between Grantor and Beneficiary related to the transaction or transactions that are the subject matter of the Loan Documents, except such debt which has been paid or is payable by Grantor to Beneficiary under the Note.

27

(c)    Ceiling Election.  To the extent that Beneficiary is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or the Related Indebtedness, Beneficiary will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended.  To the extent United States federal law permits Beneficiary to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Beneficiary will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate.  Additionally, to the extent permitted by applicable law now or hereafter in effect, Beneficiary may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Grantor as provided by applicable law now or hereafter in effect.

## ARTICLE XIII
## SECURITY AGREEMENT

Section 13.01    SECURITY AGREEMENT.

THIS DEED OF TRUST CREATES A LIEN ON THE PROPERTY.  IN ADDITION, TO THE EXTENT THE PROPERTY IS PERSONAL PROPERTY OR FIXTURES UNDER APPLICABLE LAW, THIS DEED OF TRUST CONSTITUTES A SECURITY AGREEMENT UNDER THE UNIFORM COMMERCIAL CODE OF THE STATE IN WHICH THE PROPERTY IS LOCATED (THE "U.C.C.") AND ANY OTHER APPLICABLE LAW AND IS FILED AS A FIXTURE FILING.  UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, BENEFICIARY MAY, AT ITS OPTION, BUT SUBJECT TO SECTION 9.01 HEREOF, PURSUE ANY AND ALL RIGHTS AND REMEDIES AVAILABLE TO A SECURED PARTY WITH RESPECT TO ANY PORTION OF THE PROPERTY, AND/OR BENEFICIARY MAY, AT ITS OPTION, PROCEED AS TO ALL OR ANY PART OF THE PROPERTY IN ACCORDANCE WITH BENEFICIARY'S RIGHTS AND REMEDIES WITH RESPECT TO THE LIEN CREATED BY THIS DEED OF TRUST.  THIS FINANCING STATEMENT SHALL REMAIN IN EFFECT AS A FIXTURE FILING UNTIL THIS DEED OF TRUST IS RELEASED OR SATISFIED OF RECORD.

Section 13.02    REPRESENTATIONS AND WARRANTIES.

Grantor warrants, represents and covenants as follows:

(a)    Grantor owns the Personal Property free from any lien, security interest, encumbrance or adverse claim, except for the Permitted Exceptions (to the extent applicable) and as otherwise expressly approved by Beneficiary in writing.  Grantor will notify Beneficiary of, and will protect, defend and indemnify Beneficiary against, all claims and demands of all persons at any time claiming any rights or interest in the Personal Property.

(b)    The Personal Property has not been used and shall not be used or bought for personal, family, or household purposes, but shall be bought and used solely for the purpose of carrying on Grantor's business.

(c)    Grantor will not remove the Personal Property without the prior written consent of Beneficiary, except the items of Personal Property which are consumed or worn out in ordinary usage shall be promptly replaced by Grantor with other Personal Property of value equal to or greater than the value of the replaced Personal Property.

Section 13.03    CHARACTERIZATION OF PROPERTY.  The grant of a security interest to Beneficiary in this Deed of Trust shall not be construed to limit or impair the lien of this Deed of Trust or the rights of Beneficiary with respect to any property which is real property or which the parties have agreed to treat as real property.  To the fullest extent permitted by law, everything used in connection with the production of Rents and Profits is, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property, irrespective of whether or not the same is physically attached to the Land and/or Improvements.

Section 13.04    PROTECTION AGAINST PURCHASE MONEY SECURITY INTERESTS.  It is understood and agreed that in order to protect Beneficiary from the effect of U.C.C. Section 9-334, as amended from time to time and as enacted in the State, in the event that Grantor intends to purchase any goods which may become fixtures attached to the Property, or any part of the Property, and such goods will be subject to a purchase money security interest held by a seller or any other party:

(a)    Before executing any security agreement or other document evidencing or perfecting the security interest, Grantor shall obtain the prior written approval of Beneficiary. All requests for such written approval shall be in writing and contain the following information: (i) a description of the fixtures; (ii) the address at which the fixtures will be located; and (iii) the name and address of the proposed holder and proposed amount of the security interest.

(b)    Grantor shall pay all sums and perform all obligations secured by the security agreement. A default by Grantor under the security agreement shall constitute a default under this Deed of Trust. If Grantor fails to make any payment on an obligation secured by a purchase money security interest in the Personal Property or any fixtures, Beneficiary, at its option, may pay the secured amount and Beneficiary shall be subrogated to the rights of the holder of the purchase money security interest.

(c)    Beneficiary shall have the right to acquire by assignment from the holder of the security interest for the Personal Property or fixtures, all contract rights, accounts receivable, negotiable or non-negotiable instruments, or other evidence of indebtedness and to enforce the security interest as assignee.

(d)    The provisions of subparagraphs (b) and (c) of this Section 13.04 shall not apply if the goods which may become fixtures are of at least equivalent value and quality as the Personal Property being replaced and if the rights of the party holding the security interest are expressly subordinated to the lien and security interest of this Deed of Trust in a manner satisfactory to Beneficiary.

## ARTICLE XIV
## MISCELLANEOUS COVENANTS

Section 14.01    NO WAIVER. No single or partial exercise by Beneficiary and/or Trustee, or delay or omission in the exercise by Beneficiary and/or Trustee, of any right or remedy under the Loan Documents shall preclude, waive or limit the exercise of any other right or remedy. Beneficiary shall at all times have the right to proceed against any portion of, or interest in, the Property without waiving any other rights or remedies with respect to any other portion of the Property. No right or remedy under any of the Loan Documents is intended to be exclusive of any other right or remedy  but shall be cumulative and may be exercised concurrently with or independently from any other right and remedy under any of the Loan Documents or under applicable law.

Section 14.02    NOTICES. All notices, demands and requests given or required to be given by, pursuant to, or relating to, this Deed of Trust shall be in writing. All notices  shall be deemed to have been properly given if mailed by United States registered or certified mail, with return receipt requested, postage prepaid, or by United States Express Mail or other comparable overnight courier service to the parties at the addresses set forth in the Defined Terms (or at such other addresses as shall be given in writing by any party to the others) and shall be deemed complete upon receipt or refusal to accept delivery as indicated in the return receipt or in the receipt of such United States Express Mail or courier service.

Section 14.03    HEIRS AND ASSIGNS; TERMINOLOGY.

(a)    This Deed of Trust applies to Beneficiary, Trustee, Liable Parties and Grantor, and their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Grantor" shall include both the original Grantor (except with respect to acts or omissions pertaining to the Loan which occur after a permitted transfer under Section 10.05 hereof other than those matters for which the original Grantor remains liable following any such permitted transfer as provided in this Deed of Trust, the other Loan Documents and the Indemnity Agreement) and any subsequent owner or owners of any of the Property. The term "Trustee" shall include both the original Trustee and any subsequent successor or additional trustee(s) acting under this Deed of Trust. The term "Liable Parties" shall include both the original Liable Parties (except with respect to acts or omissions pertaining to the Loan which occur after a permitted transfer under Section 10.05 hereof other than those matters for which the original Liable Parties remain liable following any such permitted transfer as provided in this Deed of Trust, the other Loan Documents, the Indemnity Agreement and the Guaranty) and any subsequent or substituted Liable Parties.

(b)    In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

29

Section 14.04    SEVERABILITY.  If any provision of this Deed of Trust should be held unenforceable or void, then that provision shall be separated from the remaining provisions and shall not affect the validity of this Deed of Trust except that if the unenforceable or void provision relates to the payment of any monetary sum, then, Beneficiary may, at its option, declare the Secured Indebtedness immediately due and payable.

Section 14.05    APPLICABLE LAW.  This Deed of Trust shall be construed and enforced in accordance with the laws of the State.

Section 14.06    CAPTIONS.  The captions are inserted only as a matter of convenience and for reference, and in no way define, limit, or describe the scope or intent of any provisions of this Deed of Trust.

Section 14.07    TIME OF THE ESSENCE.  Time shall be of the essence with respect to all of Grantor's obligations under this Deed of Trust and the other Loan Documents.

Section 14.08    NO MERGER.  In the event that Beneficiary should become the owner of the Property, there shall be no merger of the estate created by this Deed of Trust with the fee estate in the Property.

Section 14.09    NO MODIFICATIONS.  This Deed of Trust may not be changed, amended or modified, except in a writing expressly intended for such purpose and executed by Grantor and Beneficiary.

Section 14.10    REMEDIES CUMULATIVE.  No right, power or remedy conferred upon or reserved to Beneficiary and/or Trustee by any of the Loan Documents is intended to be exclusive of any other right, power or remedy, but shall be cumulative and concurrent and in addition to any other right, power and remedy given hereunder or under any of the other Loan Documents or now or hereafter existing under applicable law.

[SIGNATURE AND NOTARY ACKNOWLEDGMENT PAGE FOLLOWS]

30

IN WITNESS WHEREOF, Grantor has executed this Deed of Trust, or has caused this Deed of Trust to be executed by its duly authorized representative(s) as of the Execution Date.

HENDRY PROPERTIES, LTD.,
a Texas limited partnership

By:    Hendry Investments, Inc.,
a Texas corporation,
its general partner

By: _Stuart C. Hendry_

Stuart C. Hendry
President

STATE OF TEXAS      §

COUNTY OF Dallas    §
             §

This instrument was ACKNOWLEDGED before me on May 13, 2003, by Stuart C. Hendry, President of Hendry Investments, Inc., a Texas corporation, as the sole general partner of HENDRY PROPERTIES, LTD., a Texas limited partnership, on behalf of said limited partnership.

[S E A L]

My Commission Expires:

_____

_Connie Holland_

Notary Public in and for the State of Texas

_____

Typed or Printed Name of Notary Public

CONNIE HOLLAND
MY COMMISSION EXPIRES
August 17, 2003

:ODMA\PCDOCS\DALLAS_1\979330\07

EXHIBIT "A"

TO DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

PROPERTY DESCRIPTION

TRACT 1:

BEING all that certain lot, tract or parcel of land described as a 25.085 acre tract situated in the Mary Brown Survey, Abstract No. 41 and William Brown Survey, Abstract No. 66, City of Frisco, Collin County, Texas and being a portion of that called 52.320 acre tract of land and a portion of that called 79.456 acre tract of land both being described in deed to Mixon Properties, Ltd. recorded in Volume 4080, Page 1128, Deed Records of Collin County, Texas, and being known as all of Lot 14 in Block A of the GEORGE MIXON ADDITION, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet "N" at Slide 445 of the Plat Records of Collin County, Texas, being more particularly described as follows:

COMMENCING at a 5/8 inch iron rod found for the point of intersection of the north line of said 79.456 acre tract of land being same being the south line of that certain tract of land described in deed to Lowe's Home Centers, Inc., recorded in Volume 4493, Page 3782 and Volume 4493, Page 3787, Deed Records of Collin County, Texas, with the easterly right-of-way line of Preston Road (State Highway 289, a variable width right-of-way);

THENCE along said westerly right-of-way line the following:

(1) South 03° 47' 23" West for a distance of 81.14 feet to a 1/2" iron rod found for the point of curvature on a non-tangent curve to the left having a radius point which bears North 87° 50' 26" East for a distance of 11,374.16 feet;

(2) Southeasterly with said curve to the left through a central angle of 00° 57' 48" for an arc distance of 191.24 feet, a chord bearing South 02° 38' 28" East and a chord distance of 191.24 feet to the point of intersection of said easterly right-of-way line with the southerly right-of-way line Gaylord Parkway, (a variable width right-of-way);

THENCE along said southerly right-of-way line as follows:

(1) North 89° 35' 47" East for a distance of 202.74 feet to a point for corner;

(2) North 84° 12' 11" East for a distance of 97.43 feet to a 5/8 inch iron rod set for the POINT OF BEGINNING, said point of beginning being the Northwest corner of the aforesaid Lot 14 in Block A of the GEORGE MIXON ADDITION;

THENCE North 84° 12' 11" East and continuing along the southerly line of Gaylord Parkway for a distance of 60.36 feet to a 5/8 inch iron rod set for point curvature of a non-tangent curve to the left having a radius point of 1,260.00 feet;

THENCE Northeasterly and continuing along the southerly line of Gaylord Parkway with said curve to the left through a central angle of 12° 55' 00" for an arc distance of 284.05 feet, a chord bearing North 75° 58' 34" East and a chord distance of 283.45 feet to a 5/8 inch iron rod set for the point of tangency;

THENCE North 69° 31' 04" East and continuing along the southerly line of Gaylord Parkway for a distance of 175.91 feet to a 5/8 inch iron rod set for point of curvature of a curve to the right having a radius of 1,140.00 feet;

THENCE Northeasterly and continuing along the southerly line of Gaylord Parkway with said curve to the right through a central angle of 02° 18' 31" for an arc distance of 45.93 feet, a chord bearing North 70° 40' 19" East and a chord distance of 45.93 feet to a 5/8 inch iron rod set for the Northeast corner of said Lot 14 and the Northwest corner of Lot 15 in Block A of the GEORGE MIXON ADDITION, an addition to the City of Frisco, Texas,

according to the plat thereof recorded in Cabinet "M" at Page 100 of the Plat Records of Collin County, Texas;

THENCE South 18° 10' 20" East along the East line of said Lot 14 for a distance of 182.73 feet to a 5/8 inch iron rod set for corner;

THENCE South 15° 04' 34" East and continuing along the East line of said Lot 14 for a distance of 595.89 feet to a 5/8 iron rod set for corner;

THENCE South 18° 45' 53" East and continuing along the East line of said Lot 14 for a distance of 417.19 feet to a 5/8 inch iron rod set for corner;

THENCE South 23° 56' 12" East and continuing along the East line of said Lot 14 for a distance of 180.93 feet to a 5/8 inch iron rod set for corner;

THENCE South 18° 07' 23" East and continuing along the East line of said Lot 14 for a distance of 204.58 feet to a 5/8 inch iron rod set for the Southeast corner of said Lot 14 and the Southwest corner of the aforesaid Lot 15 in Block A of the GEORGE MIXON ADDITION, and being in the northerly right-of-way line of a Stone Crest Road (60 foot right-of-way at this point);

THENCE South 62° 56' 20" West and following along the common line of said Lot 14 and Stone Crest Road for a distance of 297.84 feet to a 5/8 inch iron rod set for a point of curvature of a curve to the right having a radius of 395.00 feet;

THENCE Northwesterly with said curve to the right and continuing along the common line of said Lot 14 and Stone Crest Road through a central angle of 63° 30' 01" for an arc distance of 437.77 feet, a chord bearing North 85° 18' 39" West and a chord distance of 415.71 feet to a 5/8 inch iron rod set for corner;

THENCE North 53° 33' 39" West and continuing along the common line of said Lot 14 and Stone Crest Road for a distance of 53.27 feet to a 5/8" iron rod set for corner, said point being a point of curvature of a curve to the left having a radius of 455.00 feet;

THENCE Northwesterly with said curve to the left and continuing along the common line of said Lot 14 and Stone Crest Road through a central angle of 16° 07' 09" for an arc distance of 128.01 feet, a chord bearing North 61° 37' 13" West and a chord distance of 127.58 feet to a 5/8 inch iron rod set for the Southwest corner of said Lot 14, said point also being the Southeast corner of Lot 7 in Block A of the GEORGE MIXON ADDITION, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet "N" at Page 70 of the Plat Records of Collin County, Texas;

THENCE North 24° 55' 09" East along the Westerly line of said Lot 14 for a distance of 97.87 feet to a 5/8 inch iron rod set for corner;

THENCE North 10° 39' 03" West and continuing along the westerly line of said Lot 14 for a distance of 126.07 feet to a 5/8 inch iron rod set for corner;

THENCE North 37° 54' 42" West and continuing along the westerly line of said Lot 14 for a distance of 70.65 feet to a 5/8 inch iron rod set for corner;

THENCE North 10° 50' 57" West and continuing along the westerly line of said Lot 14 for a distance of 88.81 feet to a 5/8 inch iron rod set for corner;

THENCE North 11° 12' 45" West and continuing along the westerly line of said Lot 14 for a distance 272.39 feet to a 5/8 inch iron rod set for corner;

THENCE North 49° 11' 54" West and continuing along the westerly line of said Lot 14 same being common to the line of Lot 5 in Block A of the GEORGE MIXON ADDITION, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet "N" at Page 16 of the Plat Records of Collin County, Texas for a distance of

94.80 feet to a 5/8 inch iron rod set for corner;

THENCE South 88° 27' 28" West and continuing along the common line of said Lot 5 and Lot 14 for a distance of 35.27 feet to a 5/8 inch iron rod set for corner;

THENCE South 80° 27' 28" West and continuing along the common line of said Lot 5 and Lot 14 for a distance of 123.00 feet to a 5/8 inch iron rod set for corner;

THENCE South 86° 27' 28" West and continuing along the common line of said Lot 5 and Lot 14 for a distance of 125.00 feet to a 5/8 inch iron rod set for corner aforementioned easterly right-of-way line of Preston Road;

THENCE North 03° 32' 32" West along said easterly right-of-way line for a distance of 80.00 feet to a 5/8 inch iron rod set for corner, said point being the Southwest corner of Lot 4 in Block A of the GEORGE MIXON ADDITION, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet "N" at Page 17 of the Plat Records of Collin County, Texas;

THENCE North 86° 27' 28" East along the common line of Lot said Lot 4 and Lot 14 for a distance of 125.00 feet to a 5/8 inch iron rod set for corner;

THENCE South 87° 32' 32" East and continuing along the common line of Lots 4 and Lots 14 for a distance of 178.61 feet to a 5/8 inch iron rod set for corner;

THENCE North 40° 48' 32" East and continuing along the common line of Lots 4 and Lots 14 for a distance of 48.98 feet to a 5/8 inch iron rod set for corner;

THENCE North 07° 08' 37" West along the westerly line of Lot 14 for a distance of 593.44 feet to the POINT OF BEGINNING and CONTAINING 25.085 ACRES OF LAND, more or less.

## TRACT 2 - EASEMENT ESTATE PARCEL:

Easement rights as created in Declaration of Easements, Covenants and Restrictions recorded in Volume 4721, Page 3319, Land Records, Collin County, Texas over the following described tract of land:

BEING a 0.264 of an acre tract of land situated in the William Brown Survey, Abstract No. 66, City of Frisco, Collin County, Texas and being a portion of that called 52.330 acre tract of land described by deed to Mixon Enterprises, Ltd., recorded in Volume 4080, Page 1128, Deed Records of Collin County, Texas, and being a portion of Lot 11, Block A of the George Mixon Addition, an addition to the City of Frisco, Collin County, Texas, according to the plat thereof recorded in Volume M, Page 100, Map Records, Collin County, Texas, said 0.264 acre tract of land being more particularly described as follows:

COMMENCING at a broken concrete right-of-way marker found for the point of intersection of the Northwesterly right-of-way line of State Highway, 121 (a variable width right-of-way) with the Easterly right-of-way line of Preston Road (a.k.a. State Highway 289, a variable width right-of-way);

THENCE North 63° 22' 00" East along said Northwesterly right-of-way line, a distance of 1,277.78 feet to a point for corner;

THENCE North 26° 38' 00" West for a distance of 211.56 feet to a 5/8 inch iron rod set for the POINT OF BEGINNING in the Northwesterly right-of-way line of said State Highway 121;

THENCE North 27° 03' 40" West for a distance of 325.94 feet to a 5/8 inch iron rod set for corner in the Southeasterly right-of-way of Stone Crest Road, (a 60 foot right-of-way at this point);

THENCE North 62° 56' 20" East along said Southeasterly right-of-way of said Stone Crest Road for a distance of 35.00 feet to a 5/8 inch iron rod set for the Northeast corner of said Lot 11, same being the Northwest corner of Lot

12 in Block A of the GEORGE MIXON ADDITION, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet "M" at Page 100 of the Plat Records of Collin County, Texas;

THENCE South 27° 03' 40" East along the common line of Lot 11 and Lot 12 for a distance of 330.41 feet to a 5/8 inch iron rod set for the Southeast corner of said Lot 11 and the point of curvature of a non-tangent curve to the right having a radius point which bears North 20° 08' 15" West, a distance of 2,816.79 feet and being in the said Northwesterly right-of-way line of State Highway 121;

THENCE Southwesterly along said Northwesterly right-of-way line of State Highway No. 121 with said curve to the right through a central angle of 00°43' 04" for an arc distance of 35.28 feet to the POINT OF BEGINNING and CONTAINING 0.264 ACRES OF LAND, more or less.

Together with the beneficial interests in and to RECIPROCAL EASEMENTS: COMMON AREAS as granted in Declaration of Easements, Covenants and Restrictions, recorded in Volume 4721, Page 3319, Land Records, Collin County, Texas.

EXHIBIT "B"

TO DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

PERMITTED EXCEPTIONS

1.  The following matters affecting the Property as shown on the Final Plat of Lot 14, Block A, George Mixon Addition, recorded in Volume N, Page 445, of the Plat Records of Collin County, Texas (Tract 1):

    (a)  Firelane, access and utility easement, 30 feet in width.

    (b)  Firelane, access and utility easement, 28 feet in width.

    (c)  Firelane, access and utility easement, 24 feet in width.

    (d)  Access easement, 30 feet in width.

    (e)  Southwestern Bell easement, 5 feet in width.

    (f)  Drainage easement, 15 feet in width.

    (g)  Drainage and detention easement, of variable width.

    (h)  TXU Electric and Gas easement, 10 feet in width.

    (i)  Sidewalk easement, 10 feet in width.

    (j)  Sidewalk easement, 15 feet in width.

    (k)  Sater easement, 10 feet in width by 10 feet in length.

    (l)  Water meters easement.

2.  Sidewalk easement, 15 feet in width, along the North property line, as shown on the Final Plat of Lot 11, Block A, George Mixon Addition, recorded in Volume N, Page 36, of the Plat Records of Collin County, Texas. (Tract 2)

3.  Firelane and access easement, 35 feet in width, as shown on the Conveyance Plat of Lots 1-16, Block A, George Mixon Addition, recorded in Volume M, Page 100, of the Plat Records of Collin County, Texas. (Tract 2)

4.  Electric Transmission and Distribution Line Easement executed by E.G. Bryan to Texas Power & Light Company, dated September 18,1936, filed January 4,1937, recorded in Volume 311, Page 138, of the Deed Records of Collin County, Texas, as shown on plat recorded in Volume N, Page 445, Map Records, Collin County, Texas. (Tract 1)

5.  20' Water & Sanitary Sewer Line and 50' Temporary Construction Easement executed by Mixon Enterprises, Ltd., a Texas limited partnership to City of Frisco, dated April 3,2000, filed April 5,2000, recorded in Volume 04640, Page 03112, of the Land Records of Collin County, Texas, as shown on plat recorded in Volume M, Page 100, Map Records, Collin County, Texas. (Tract 2)

6.  Terms, Provisions, Easements and Conditions contained in Agreement by and between Mixon Enterprises, Ltd. and Frisco Economic Development Corporation, dated January 18,2000, filed April 5,2000, recorded in Volume 04640, Page 01442, Land Records, Collin County, Texas, as amended by instrument recorded in Volume 4674, Page 1155, of the Land Records of Collin County, Texas. (Tracts 1 & 2)

7.  Terms, Provisions, Easements and Conditions contained in Declaration of Easements, Covenants and Restrictions executed by SPC NEC121, Ltd., dated July 21,2000, filed August 1,2000, recorded in Volume 4721, Page 3319, Land Records, Collin County, Texas,. (Tracts 1 & 2)

8.    Terms, Conditions and Provisions contained in Lease Agreement by and between SPC NEC121, Ltd., as Lessor and Circuit City Stores, Inc., as Lessee, as evidenced by Memorandum of Lease dated July 31,2000, filed August 15,2000, recorded in Volume 4731, Page 6, Land Records of Collin County, Texas and by a Memorandum of Lease filed for record on August 30, 2000, and recorded in Volume 4742, Page 2112, Land Records, Collin County, Texas. (Tract 1)

9.    Permanent, non-exclusive right-of-way access and parking easement for pedestrian and vehicular ingress, egress and parking, as set forth in Memorandum of Lease dated September 1, 2000, by and between SPC NEC121, Ltd., as Lessor and Big Bowl, Inc., as Lessee, filed September 29,2000, recorded in Volume 4763, Page 3117, Land Records of Collin County, Texas, and subject to the terms and conditions of that certain Master Declaration of Easements, Covenants and Restrictions recorded in Volume 4721, Page 3319, of the Land Records of Collin County, Texas. (Tract 1)

10.    Terms, Conditions and Provisions contained in Lease Agreement by and between SPC NEC121, Ltd., as Lessor and Office Depot, Inc., as Lessee, as evidenced by Memorandum of Lease dated July 31,2000, filed September 15,2000, recorded in Volume 4753, Page 520, Land Records of Collin County, Texas and as affected by Subordination, Attornment and Non-Disturbance Agreement dated May ___, 2003 and recorded or to be recorded in the Land Records of Collin County, Texas. (Tract 1)

11.    Terms, Conditions and Provisions contained in Lease Agreement by and between SPC NEC121, Ltd., as Lessor and Bed Bath & Beyond, Inc., as Lessee, as evidenced by Memorandum of Lease dated July 31,2000, filed September 5,2000, recorded in Volume 4745, Page 3721, Land Records of Collin County, Texas. (Tract 1)

12.    5' Underground Telecommunication Systems and Lines Easement executed by SPC NEC121, Ltd. to Southwestern Bell Telephone Co., dated June 7,2001, filed June 12,2001, recorded in Volume 4937, Page 1650, of the Land Records of Collin County, Texas. (Tract 1)

13.    20' X 40' Communications Equipment Station Easement executed by SPC NEC121, Ltd. to Southwestern Bell Telephone Company, dated May 11,2001, filed June 12,2001, recorded in Volume 4937, Page 1653, of the Land Records of Collin County, Texas. (Tract 1)

EXHIBIT "C"

TO DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

LEASING GUIDELINES

"Leasing Guidelines" shall mean the guidelines approved in writing by Beneficiary, from time to time, with respect to any future leasing of the Property.  The following are the initial Leasing Guidelines:

(a)     All Leases shall be on the standard form of lease approved by Beneficiary in writing;

(b)     All Leases shall have an initial term of at least three (3) years but not more than ten (10) years;

(c)     None of the Leases shall be for more than 5,000 square feet of net leasable area;

(d)     All Leases shall have an annual minimum rent payable of at least $21.00 per square foot of net leasable area;

(e)     No Leases shall be entered into if there is an Event of Default under any of the Loan Documents; and

(f)     All payments of rent, additional rent or any other amounts due from a tenant to a landlord under any Lease shall be made in money of the United States of America that at the time of payment shall be legal tender for the payment of all obligations.

DALLAS_1\3793300\7
9212-191

RETURN TO:
SAFECO TEXAS
1201 ELM STREET, SUITE 5220
DALLAS, TEXAS 75270

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE
DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND
UNENFORCEABLE UNDER FEDERAL LAW
(THE STATE OF TEXAS)                                                              (COUNTY OF COLLIN)
I hereby certify that this instrument was FILED in the File Number Sequence on the date
and the time stamped hereon by me; and was duly RECORDED, in the Official Public
Records of Real Property of Collin County, Texas on

MAY 1 5 2003



Brenda Taylor

Filed for Record in:
Collin County, McKinney TX
Honorable Brenda Taylor
Collin County Clerk

   On  May 15 2003
       At 10:42am

Doc/Num  : 2003- 0090157

Recording/Type:DT     91.00
Receipt #:       18843