‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

20061002001407810     10/02/2006 08:26:38 AM AG  1/31

## LOAN ASSUMPTION AGREEMENT AND MODIFICATION OF NOTE, DEED OF TRUST AND OTHER LOAN DOCUMENTS

   THIS LOAN ASSUMPTION AGREEMENT AND MODIFICATION OF NOTE, DEED OF TRUST AND OTHER LOAN DOCUMENTS (this **"Agreement"**) is executed as of September 29, 2006, by and among (i) METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation (**"Lender"**), having an address at 10 Park Avenue, Morristown, New Jersey 07962, Attn: Senior Vice-President, Real Estate Investments, and at Two Lincoln Centre, 5420 LBJ Freeway, Suite 1310, Dallas, Texas 75240, Attn: Director and OIC, Real Estate Investments, (ii) HENDRY PROPERTIES, LTD., a Texas limited partnership (**"Original Borrower"**), having an address at 402 East Ramsey Road, San Antonio, Texas 78216, (iii) TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, a New York corporation, for the benefit of its separate Real Estate Account (**"New Borrower"**), having an address at 730 Third Avenue, 4th Floor, New York, New York 10017, Attention: Director of Asset Management, and (iv) JOHN L. HENDRY, III, an individual (**"Liable Party"**), with reference to the following facts:

   A. Original Borrower executed that certain Promissory Note dated May 14, 2003 (the **"Note"**) in the original principal amount of $27,500,000.00 payable to Lender. The Note was secured by, among other documents, instruments and collateral, (i) a Deed of Trust, Security Agreement and Fixture Filing of even date therewith (the **"Deed of Trust"**), executed by Original Borrower, as Grantor, to Denis Clive Braham, as Trustee, for the benefit of Lender, as Beneficiary, recorded under Clerk's File No. 2003-0090157, of the Official Public Records of Collin County, Texas (the **"Official Records"**), and (ii) an Assignment of Leases of even date therewith (the **"Assignment of Leases"**) executed by Original Borrower, as assignor, for the benefit of Lender, as assignee, recorded under Clerk's File No. 2003-0090158 of the Official Records. The Deed of Trust encumbers a fee simple estate in certain real property and other interests in property located in Collin County, Texas, more particularly described on **Exhibit A** to the Deed of Trust, together with certain other personal property and other property as set forth therein (collectively, the **"Property"**).

   B. Concurrently herewith, Original Borrower is transferring and conveying the Property (including, without limitation, fee simple title in and to the Land and Improvements [as such terms are described in the Deed of Trust]) to New Borrower. Lender has agreed to consent to such transfer and conveyance, conditioned upon, among other things (including, without limitation, payment of the Transfer Fee as described in Section 10.06 of the Deed of Trust as it existed prior to the execution of this Agreement), the execution by Original Borrower, New Borrower, and the Liable Party of this Agreement and such other agreements, documents, instruments and certificates as Lender shall reasonably require.

   C. The Note, the Deed of Trust, the Assignment of Leases, and the other Loan Documents (as such term is defined in the Deed of Trust) (including, without limitation, the Primary Documents as defined below), as each of same may be modified and amended hereby, are referred to herein as the **"Loan Documents"**; provided however, following the execution of this Agreement, the term "Loan Documents" shall no longer include the Notice of No Oral Agreements. The documents described on **Exhibit "A"** attached hereto are hereinafter referred

to as the **"Primary Documents."** Original Borrower also executed an Unsecured Indemnity Agreement (the **"Original Indemnity Agreement"**) of even date with the Note, but the Original Indemnity Agreement is not a Loan Document. New Borrower is also executing an Unsecured Indemnity Agreement of even date herewith (the **"New Indemnity Agreement"**), but the New Indemnity Agreement also is not a Loan Document. The Liable Party also executed a Guaranty Agreement dated of even date with the Note (the **"Guaranty"**) related to certain obligations of Original Borrower.

D. The parties hereto now wish to amend and modify the Loan Documents to reflect the foregoing.

NOW, THEREFORE, in consideration of the benefits accruing to the parties hereto, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. <u>Representations and Agreements of New Borrower</u>. New Borrower hereby represents and warrants to and agrees with Lender as follows:

A. <u>Title to the Property</u>. (i) Based on the Commitment for Title Insurance issued by Alamo Title Company on behalf of Chicago Title Insurance Company on September 25, 2006, New Borrower owns and holds good and indefeasible fee simple absolute title to the Real Property (as defined in the Deed of Trust) (other than the easement estate, as such estate is described in Exhibit A of the Deed of Trust which benefit the fee simple estate), and that it has the right and is lawfully authorized to sell, convey or encumber the Property subject only to the Permitted Exceptions (as defined in the Deed of Trust), taxes not yet payable, the Existing Leases, and any other exceptions to title pertaining to the Property recorded in the real property records of Collin County, Texas; (ii) the Property is free from all due and unpaid taxes, assessments and mechanics' and materialmen's liens affecting New Borrower's interest in the Property, (iii) the Deed of Trust is a first and prior lien on all of the Property which is real property, subject only to the Permitted Exceptions (as defined in the Deed of Trust), (iv) all of the Personal Property (as defined in the Deed of Trust), including, without limitation, all furniture, fixtures, equipment and personal property necessary to operate the Land and the Improvements for the Use (as defined in the Deed of Trust), is owned by New Borrower free and clear of any liens, security agreements, reservations of title and conditional sales contracts, except for (A) the liens and security interests held by Lender, and (B) such equipment leased by New Borrower, as previously disclosed to Lender in writing, which leased equipment does not represent a substantial or material part of the furniture, fixtures, equipment and personal property used to operate the Land and the Improvements, and (v) there is no financing statement affecting any such Personal Property on file in any public office other than financing statements in favor of Lender and those financing statements which evidence the leased equipment referred to in (iv) above.

B. <u>Absence of Defaults</u>. To the best of New Borrower's knowledge, information and belief, there are no defaults, and no events which with notice or the lapse of time, or both, would constitute a default, under the Note, the Deed of Trust or any of the other Loan Documents or under the New Indemnity Agreement.

2

C.   Bankruptcy.   New Borrower (i) is not insolvent (without regard to contingent liabilities), (ii) is not a debtor in any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation proceeding, and to New Borrower's actual knowledge, no such proceeding is contemplated or threatened, and (iii) has not made any assignment for the benefit of creditors, and there has been no appointment of a receiver of any of them or for any of their respective properties.

D.   Condemnation.   To the best of New Borrower's knowledge, after due and diligent inquiry and investigation, no part of the Property has been taken in condemnation or other like proceeding (or transferred in lieu thereof) nor is any condemnation or other like proceeding (or transfer in lieu thereof) proposed or threatened with respect to any portion of the Property. (For purposes hereof, a taking for a limited or indefinite term shall be deemed equivalent to a transfer of fee title.)

E.   Damage.   To the best of New Borrower's knowledge, after due and diligent inquiry and investigation, no casualty damage to any part of the Property has occurred which has not been fully restored or replaced (or as to which, in the case of any insubstantial loss or damage, provision satisfactory to Lender for full restoration or replacement has not been made) as of the date hereof.

F.   Compliance with Laws and Regulations.   To New Borrower's actual knowledge (with commercially reasonable inquiry), the Improvements (as defined in the Deed of Trust) and their use and operation by New Borrower (and, to New Borrower's actual knowledge, by tenants thereof) comply with (and no written notices of violation have been received by New Borrower in connection with) environmental, air quality, zoning, planning, building, health, labor, discrimination, fire, traffic, safety, wetlands, coastal and other governmental or regulatory rules, laws, ordinances, statutes, codes and requirements applicable to the Property, including without limitation all applicable requirements of the Americans With Disabilities Act of 1990.

G.   Litigation.   There is no action, suit, case, notice, proceeding, inquiry or investigation by, from or before any court, governmental agency, public board or body pending or threatened against New Borrower nor, to the actual knowledge of New Borrower, is there any basis therefor, which questions the power of New Borrower to carry out the transactions contemplated by the Loan Documents or the power of New Borrower to own, acquire, construct, equip or operate the Property.

H.   Environmental Matters.   Based on the environmental site assessments obtained or reviewed by New Borrower prior to the date of this Agreement, New Borrower hereby represents, warrants and certifies to Lender that neither New Borrower, nor to New Borrower's actual knowledge, any agent, affiliate, trustee, beneficiary or employee of New Borrower, has actual knowledge of the presence, alleged presence, threatened presence, release, alleged release or threatened release of any Hazardous Substances on, under, in, from or about the Property. For purposes hereof, the term "release" shall be deemed to refer to Hazardous Substances as defined herein. The term "Hazardous Substances" shall include all substances, in any form, designated as "Hazardous Materials" in the New Indemnity Agreement or in the Deed of Trust.

3

I.    <u>Leases</u>.  To New Borrower's knowledge, there are no leases or occupancy agreements affecting the Property as of the date of this Agreement except those leases and agreements listed on the rent rolls dated September 2006, and certified by New Borrower ("**Existing Leases**"), and, to New Borrower's knowledge, Original Borrower has delivered to Lender true, correct and complete copies of all such leases and occupancy agreements, including all amendments thereto.  To New Borrower's actual knowledge, except as disclosed to Lender in writing or referred to in tenant certificates furnished to Lender prior to the date hereof (a) there are no defaults by New Borrower, or Original Borrower under the Existing Leases as of the date of this Agreement, (b) there are no defaults by any tenants under Existing Leases, (c) the Existing Leases are in full force and effect, and (d) no Existing Leases may be amended, terminated or canceled unilaterally by a tenant and no tenant may be released from its obligations thereunder.

J.    <u>Due Authorization, Execution and Delivery</u>.  The execution, delivery and performance of this Agreement and the New Indemnity Agreement and the other documents and instruments executed by New Borrower in connection herewith, and the payment by New Borrower and performance by New Borrower of its obligations under the Loan Documents as hereby assumed, will not result in New Borrower being in default under any provision of its organizational documents or of any deed of trust, mortgage, lease, credit agreement or other agreement to which it is a party or which affects it or the Property.  New Borrower represents and warrants that (i) this Agreement, the New Indemnity Agreement and the other documents and instruments executed by New Borrower, in connection herewith, have been duly authorized, executed and delivered by New Borrower, and (ii) this Agreement, the New Indemnity Agreement, the other documents and instruments executed by New Borrower in connection herewith, and the Loan Documents, constitute valid and binding obligations of New Borrower which are enforceable in accordance with their terms, subject to applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditor's rights generally.

K.    <u>Other Matters</u>.  In addition to the specific warranties and representations set forth above, and without in any way limiting any of the covenants, agreements, obligations or liabilities contained herein or in any of the Loan Documents (all of which are assumed by New Borrower) or in the New Indemnity Agreement, New Borrower hereby makes the representations and warranties set forth in the Loan Documents, as modified by the terms of this Agreement; provided that the word "knowledge" when it appears in such representations, shall mean New Borrower's knowledge as of the date of this Agreement, not Original Borrower's knowledge.

2.    <u>Consent to Transfer</u>.  Lender hereby consents to the transfer of the Property to New Borrower and the assumption by New Borrower of all obligations evidenced by the Loan Documents which arise or accrue on or after the date hereof and which are expressly applicable to said party as further provided therein, and Lender confirms that all the conditions precedent to the transfer set forth in Section 10.05 of the Deed of Trust (as it existed prior to the execution of this Agreement) have been satisfied or waived in connection with the transfer of the Property to New Borrower (but without any such conditions or requirements being deemed satisfied or waived with respect to any subsequent transfer of the Property).  Lender's consent to this transfer and assumption shall not constitute a waiver of Lender's right to accelerate the obligations under the Note in the event of a subsequent sale, transfer or encumbrance of the Property or any interest therein, as set forth in Article X of the Deed of Trust as modified hereby, unless permitted by Article X of the Deed of Trust as modified hereby, nor shall Lender's consent to

4

this transfer and assumption constitute Lender's waiver of any other term, covenant or condition of any of the Loan Documents.

3.    Assignment and Assumption of Loan.  Original Borrower hereby assigns and transfers to New Borrower all of the rights of Original Borrower under and pursuant to the Loan Documents. New Borrower hereby assumes and agrees to observe and perform each and every term, covenant, agreement, obligation and condition required to be observed or performed by Original Borrower under the Note, the Deed of Trust, the Assignment of Leases and the other Loan Documents, as the same are modified hereby, arising or accruing on and after the date of this Agreement, and promises to pay to Lender all amounts and sums which on and after the date hereof become due and owing pursuant to the Note, the Deed of Trust and the other Loan Documents, as modified hereby. New Borrower, on behalf of New Borrower and its successors and assigns, does hereby indemnify, defend and hold harmless Original Borrower and all of its partners and its partners' shareholders, directors, officers, employees, agents, representatives and affiliates from and against any and all claims, liabilities, damages, costs, expenses or losses arising in connection with the Loan Documents from and after the date of this Agreement.

4.    Modification of Note.  The Note is hereby modified as follows:

A.    Definitions.  The Defined Terms section of the Note is hereby amended as follows:

(i)    Interest Rate is hereby amended to read "5.85%."

(ii)    Borrower is hereby amended to read as follows:

Teachers Insurance and Annuity Association of America, a New York corporation, for the benefit of its separate real estate account

(iii)    Borrower's Address is hereby amended to read:

730 Third Avenue, 4th Floor
New York, NY 10017
Attention: Director of Asset Management
Authorization Number: AAA5771
Real Estate Number: 0006335

and

730 Third Avenue, 9th Floor
New York, New York 10017
Attention: Managing Counsel – Asset Management Law – New York
Authorization Number: AAA5771
Real Estate Number: 0006335

5

(iv)    Interest Only Period is hereby amended to add at the end thereof: "; and the period from the Assumption Date and ending on the date on which Borrower transfers the Property or any portion thereof if the loan to value ratio at such time is equal to or greater than sixty percent (60%) as more particularly provided in Section 10.05 of the Deed of Trust."

(v)    Monthly Installment is hereby amended to read as follows: "In the event that Borrower transfers the Property or any portion thereof and the loan to value ratio at such time is equal to or greater than sixty percent (60%) as more particularly provided in Section 10.05 of the Deed of Trust, equal monthly installments of principal and interest at the Interest Rate each in the amount of $154,862.79, based on an amortization period of 30 years."

(vi)    Permitted Prepayment Period is hereby amended by deleting the second sentence and replacing it with the following: "In addition, commencing on June 1, 2008, Borrower may prepay the Loan with a Prepayment Fee on 30 days prior written notice to Holder."

(vii)    A new definition is inserted as follows: "Monthly Installment of Interest Only: $127,971.48."

(viii)    A new definition is inserted as follows: "Assumption Date: September 29, 2006; from and after the Assumption Date, all references in Section 1 to Advance Date shall be deemed to be references to the Assumption Date."

(ix)    The definition of "Indemnity Agreement" is hereby amended to read "Unsecured Indemnity Agreement dated as of the Assumption Date and executed by Teachers Insurance and Annuity Association of America in favor of Holder."

(x)    Liable Parties and Address is hereby amended to read: "None as of the Assumption Date."

B.    Section 1(a) of the Note is amended by inserting the following at the end thereof: "The Monthly Installment of Interest Only shall be due and payable commencing on November 1, 2006, and shall continue on the first day of each calendar month thereafter until the Maturity Date."

C.    Section 1(b) of the Note is hereby deleted in its entirety.

D.    Section 4, Late Charge, is hereby deleted and replaced with the following:

If any payment of interest, any payment of a Monthly Installment of Interest Only or any payment of a required escrow deposit is not paid within seven (7) days of the due date (other than with regard to payment

due at the Maturity Date), Holder shall have the option to charge Borrower the Late Charge.  The Late Charge is for the purpose of defraying the expenses incurred in connection with handling and processing delinquent payments and is payable in addition to any other remedy Holder may have.  Unpaid Late Charges shall become part of the Secured Indebtedness and shall be added to any subsequent payments due under the Loan Documents.  Notwithstanding the foregoing, Holder will waive the Late Charge no more than one (1) time per calendar year provided payment is received by Holder within two (2) business days after notice that payment was not received within seven (7) days of the due date of such payment.

E.    Section 5, Acceleration Upon Default, is hereby deleted and replaced with the following:

At the option of Holder, if Borrower fails to pay any sum specified in this Note within two (2) business days following receipt of notice from Holder that payment was not made within seven (7) days of the due date thereof (provided, however, that in no event shall Holder be required to provide such notice more than one time per calendar year), or if an Event of Default occurs and is not cured within any applicable grace or cure period, the Secured Indebtedness, and all other sums evidenced and/or secured by the Loan Documents, including without limitation any applicable prepayment fees (collectively, the **"Accelerated Loan Amount"**) shall become immediately due and payable.

F.    Section 8, Prepayment, is hereby amended by deleting the third (3rd) sentence thereof.

G.    Subsection 9(a), of Prepayment Fee, is hereby deleted and replaced with the following:

(a) Any tender of payment by Borrower or any other person or entity of the Secured Indebtedness, other than as expressly provided in the Loan Documents, shall constitute a prohibited prepayment.  If a prepayment of all or any part of the Secured Indebtedness is made following (i) an Event of Default and an acceleration of the Maturity Date, (ii) the application of money to the principal of the Loan after a casualty or condemnation, or (iii) in connection with a purchase of the Property or a repayment of the Secured Indebtedness at any time before, during or after, a judicial or non-judicial foreclosure or sale of the Property, then to compensate Holder for the loss of the investment, Borrower shall pay an amount equal to the Prepayment Fee (as hereinafter defined).  Notwithstanding the foregoing, Holder agrees that no Prepayment Fee shall be due and payable in connection with the prepayment of the Loan as a result of a condemnation of Property as long as Borrower has made a good faith effort to obtain an amount equal to the Prepayment Fee due as a result of the condemnation as part of its damages from the condemning authority and no Prepayment Fee

7

shall be payable in connection with the prepayment of the Loan if Holder elects to reduce the principal balance of the Loan following a casualty and does not release the insurance proceeds to the Borrower to rebuild the Property.

H.  Section 11, Liability of Borrower, is hereby amended by (i) deleting from line 4 the phrase "and the general partners of Borrower;" (ii) inserting in line 5 after "Liable Party" the phrase "if any;" (iii) revising clause (ii) of the second sentence to read in its entirety as follows: "to recover damages for fraud, material misrepresentation, material breach of warranty or intentional waste by Borrower or any Liable Party, if any;" and (iv) revising clause (vi) of the second sentence to read in its entirety as follows: "to recover damages, costs and expenses arising from, or in connection with Article VI of the Deed of Trust pertaining to Hazardous Materials or the Unsecured Indemnity Agreement (provided, however, that as long as a TIAA Entity is the Borrower, Borrower's liability with respect to such matters shall in any event not exceed $10,000,000 in the aggregate)."

I.  Section 20, Severability, is hereby deleted and replaced with the following:

> If any provision of this Note should be held unenforceable or void, then that provision shall be separated from the remaining provisions and shall not affect the validity of this Note except that if the unenforceable or void provision relates to the payment of any monetary sum, then, Holder and Borrower shall use good faith efforts to amend or modify any unenforceable or void provision to make such provision valid and enforceable and to reflect the intent of the parties as of the date hereof. In the event said provision cannot be made valid and enforceable (in keeping with the intent of the parties as of the date hereof), then Holder may, at its option, declare the Secured Indebtedness (without the Prepayment Fee) due and payable upon ninety (90) days written notice to Borrower.

5.  Modification of Deed of Trust.  The Deed of Trust is hereby modified as follows:

A.  Definitions.  The Defined Terms section of the Deed of Trust is hereby amended as follows:

(i)  Grantor and Address is hereby amended to read as follows:

Teachers Insurance and Annuity Association of America, a New York corporation, for the benefit of its separate real estate account

730 Third Avenue, 4th Floor
New York, NY 10017
Attention:  Director of Asset Management
Authorization Number:  AAA5771
Real Estate Number:  0006335

8

and

730 Third Avenue, 9th Floor
New York, New York 10017
Attention: Managing Counsel – Asset Management Law – New York
Authorization Number:  AAA5771
Real Estate Number:  0006335

(ii)    Liable Parties and Address is hereby amended to read:  "None as of the Assumption Date."

(iii)    Loan Documents is amended by deleting the definition of Guaranty and replacing it with the following:  "Any Guaranty Agreement executed by Liable Parties, if any, in the future."

B.    Section 2.04(a) is hereby deleted in its entirety and replaced with the following:

Unless otherwise paid to Beneficiary as provided in Section 2.05, Grantor shall pay all real estate and other taxes and assessments which may be payable, assessed, levied, imposed upon or become a lien on or against any portion of the Property (all of the foregoing items are collectively referred to as the "Imposition(s)").  The Impositions shall be paid not later than five (5) days before the dates on which the particular Imposition would become delinquent with penalty or interest and Grantor shall produce to Beneficiary receipts of the imposing authority, or other evidence reasonably satisfactory to Beneficiary, evidencing the payment of the Imposition in full.  Grantor shall not be required to pay the Imposition provided that the contest operates to prevent enforcement or collection of the Imposition, or the sale or forfeiture of, the Property, and is prosecuted with due diligence and continuity.  Upon termination of any proceeding or contest, Grantor shall pay the amount of the Imposition as finally determined in the proceeding or contest.  Provided that there is not then an Event of Default (as defined in Section 11.01), the monies which have been deposited with Beneficiary pursuant to this Section shall be applied toward such payment and the excess, if any shall be returned to Grantor.

C.    Section 2.04(b) is hereby amended by inserting at the end of the first (1st) sentence the phrase "without Prepayment Fee."

D.    Section 2.05 is hereby deleted in its entirety and replaced with the following:

ESCROW DEPOSITS.  Without limiting the effect of Section 2.04 and Section 3.01, Grantor shall pay to Beneficiary monthly on the same date

9

the monthly installment is payable under the Note, an amount equal to 1/12th of the amounts Beneficiary reasonably estimates are necessary to pay, on an annualized basis, (1) all Impositions and (2) the premiums for the insurance policies required under this Deed of Trust (collectively the "Premiums") until such time as Grantor has deposited an amount equal to the annual charges for these items and on demand, from time to time, shall pay to Beneficiary any additional amounts necessary to pay the Premiums and Impositions. Grantor will furnish to Beneficiary bills for Impositions and Premiums thirty (30) days before Impositions become delinquent and such Premiums become due for payment. No amounts paid as Impositions or Premiums shall be deemed to be trust funds and these funds may be commingled with the general funds of Beneficiary without any requirement to pay interest to Grantor on account of these funds. If an Event of Default occurs, Beneficiary shall have the right, at its election, to apply any amounts held under this Section 2.05 in reduction of the Secured Indebtedness, or in payment of the Premiums or Impositions for which the amounts were deposited. The foregoing obligation of Grantor to make monthly escrow payments for the Impositions and Premiums is subject to the condition that Grantor shall not be required to pay such item unless and until (i) there is an Event of Default under the Loan Documents, the Unsecured Indemnity Agreement or the Guaranty; or (ii) Grantor no longer owns the Property; or (iii) there has been a change in the Grantor or in the general partners, stockholders or members of Grantor or in the constituent general partners or controlling shareholders or controlling members of any of the entities comprising Grantor not in compliance with Article X of this Deed of Trust; or (iv) debt service coverage falls below 1.10 and Impositions deposits and/or Premiums deposits are required in connection with a securitization or participation of the Loan; or (v) at any time Grantor fails to furnish to Beneficiary, not later than thirty (30) days before the dates on which any Premiums would become delinquent, receipts for the payment of such insurance premiums or appropriate proof of issuance of a new policy which continues in force the insurance coverage of the expiring policy. In the event any of these events occur, Beneficiary reserves the right to require Impositions deposits and/or Premiums deposits at any time in its absolute discretion notwithstanding the fact that the default may be cured, or that the transfer or change be approved by the Beneficiary.

E.    Section 2.06(a) is amended as follows:

   (i)    By deleting the first two (2) sentences of clause (ii) and replacing them with the following: "The Improvements and their Use comply in all material respects with (and no notices of violation have been received by Grantor in connection with) all Requirements (as defined in this Section) and Grantor shall at all times comply in all material respects with all present or future Requirements affecting or relating to the Property and/or the Use.

10

Grantor shall furnish Beneficiary, on reasonable request, proof of compliance with the Requirements to the extent in Grantor's possession or otherwise available to Grantor, and Grantor shall use its best efforts to obtain such proof as necessary from any governmental authority or other third party."

(ii)    By inserting in clause (iii), in line two (2) between "Property" and "which" the phrase "in all material respects."

F.    Section 2.08(a) is amended by adding at the end thereof the following: "As used in this Section 2.08(a), "material" means involving $2,000,000 or more."

G.    Section 2.09 is hereby deleted in its entirety and replaced with the following:

"Without the prior written consent of Beneficiary, to be exercised in Beneficiary's sole and absolute discretion, other than the Permitted Exceptions, Grantor shall not create, place or allow to remain any lien or encumbrance on the Property, including deeds of trust, mortgages, security interests, conditional sales, mechanic liens, tax liens or assessment liens regardless of whether or not they are subordinate to the lien created by this Deed of Trust (collectively, "Liens and Encumbrances"). If any Liens and Encumbrances are recorded against the Property or any part of the Property, Grantor shall obtain a discharge and release of any Liens and Encumbrances within fifteen (15) days after receipt of notice of their existence, provided that Grantor may bond any mechanics' and/or materialmen's liens in accordance with the provisions of the Texas Property Code."

H.    Section 3.01(a)(i) is hereby amended by deleting from line 7 "$10,000" and replacing it with "$250,000."

I.    Section 3.01(c) of Deed of Trust is hereby amended by inserting at the end of the second sentence the following:   "; provided, however, that as long as a TIAA Entity is the Borrower, the general policy rating must be A- or better and the financial class VIII or better."

J.    Section 3.02 is hereby amended by adding at the end the following:

Notwithstanding the foregoing, (a) Beneficiary agrees that Beneficiary and Grantor shall jointly have the right to settle, adjust or compromise any claims for damage to, or loss or destruction of, any portion of the Property prior to the occurrence and continuance of any Event of Default under this Deed of Trust, and (b) Beneficiary agrees that Grantor shall have the sole right to settle, adjust or compromise any claims for damage to, or loss or destruction of, any portion of the Property which are in the amount of less than $2,500,000 (provided, however, that in the event the Property is owned by any party other than a TIAA Entity [hereinafter defined] the foregoing right shall be limited to claims of less than $1,000,000.).

11

K.      Section 4.01(b) is hereby amended by adding at the end thereof the following: "; provided however, the financial statements required by this paragraph do not have to be prepared by an independent certified public accountant as long as Grantor or any permitted transferee or assignee of Grantor pursuant to Section 10.01 hereof are the owners of the Property."

L.      Section 4.01(d) is hereby amended by deleting "fifteen (15)" from line 3 and replacing it with "thirty (30)."

M.      Section 5.02 is hereby amended by inserting in line 5 after "guaranties" the phrase "(collectively, "**Future Leases**")."

N.      Section 5.03(b) is hereby amended by inserting in line 2 after "Beneficiary" the phrase "which consent shall not be unreasonably withheld, conditioned or delayed."

O.      During such time as the Property is owned by a TIAA Entity, and only during such time, Section 7.02(a) is hereby deleted in its entirety and replaced with the following:

> Grantor shall give prompt written notice of any material casualty to the Property to Beneficiary whether or not required to be insured against. The notice shall describe the nature and cause of the casualty and the extent of the damage to the Property. Grantor covenants and agrees to commence and diligently pursue to completion the Restoration; provided, however, that Grantor's obligation to complete the Restoration is subject to Beneficiary releasing the insurance proceeds that are payable with respect to the Casualty. Grantor further covenants and agrees that if any casualty occurs to the Property and insurance proceeds are not paid to Beneficiary or Grantor with respect to any such casualty, that Grantor shall, in any event, commence and diligently pursue the completion of the Restoration. As used in this Section 7.02(a), "material" means $2,500,000 or more in damage.

At such time as a TIAA Entity does not own the Property, the original Section 7.02(a) shall be in force and effect.

P.      Section 7.02(c) is hereby amended by replacing "15,000 square feet" in line two (2) with "35,000 square feet (provided, however, that in the event the Property is owned by any party other than a TIAA Entity the foregoing shall be limited to Leases of more than 15,000 square feet)."

Q.      Section 7.02(d) is hereby amended to read as follows during such time as the Property is owned by a TIAA Entity and at all other times, the provisions of the original Section 7.02(d) shall be in force and effect:

> In the event that the conditions for Restoration set forth in this Section have not been met, Beneficiary may, at its option, apply the Net Insurance Proceeds to the reduction of the Secured Indebtedness in such order as Beneficiary may determine and Beneficiary may declare the entire Secured

12

Indebtedness due and payable upon 120 days notice to Grantor. After payment in full of the Secured Indebtedness, any remaining Restoration Funds shall be paid to Grantor. Beneficiary agrees that if Beneficiary applies the Net Insurance Proceeds to the reduction of the Secured Indebtedness in the manner set forth in this paragraph, Beneficiary shall not assess any Prepayment Fee (as defined in the Note) against Grantor under the Note with respect to any prepayments of the Note related thereto, provided Grantor uses good faith efforts to obtain an amount equal to the Prepayment Fee as a result of any casualty as set forth in Paragraph 9 of the Note.

R.    Section 7.02(f) is hereby amended by deleting from line 2 "$500,000 in the aggregate" and replacing it with "$2,500,000 in the aggregate (provided, however, that in the event the Property is owned by any party other than a TIAA Entity, the foregoing right shall be limited to costs not to exceed $500,000)."

S.    Section 7.03(e) is hereby amended by deleting from line 2 "$500,000 in the aggregate" and replacing it with "$2,500,000 in the aggregate (provided, however, that in the event the Property is owned by any party other than a TIAA Entity, the foregoing right shall be limited to costs not to exceed $500,000)."

T.    Section 7.04(c) is hereby amended by inserting a period after "payable" in the penultimate line and deleting the remainder of that sentence.

U.    A new Section 7.04(d) is added as follows: "Grantor and Beneficiary agree that Grantor does not have to comply with the requirements of this Section 7.04 for any Restoration to the Property in an amount of $2,500,000 or less. Grantor agrees that it shall use any Net Insurance Proceeds or Net Condemnation Proceeds paid to Grantor for any such Restoration to restore the Property in accordance with the other requirements of this Deed of Trust (provided, however, that in the event the Property is owned by any party other than a TIAA Entity the foregoing right shall be limited to Restorations of less than $1,000,000.).

V.    Section 8.01 is hereby deleted in its entirety and replaced with the following:

ERISA. The TIAA Real Estate Account is an "insurance company pooled separate account" (within the meaning of PTE 90-1) and there is no "employee benefit plan" (as defined in Section 3(3) of ERISA) which is subject to Title I of ERISA, or "plan" as defined in Section 4975(e)(1) of the Code which is subject to 4975 of the Code, treating as a single plan all plans maintained by the same employer or employee organization, which has assets in such pooled separate account that exceed ten percent (10%) of the total assets of that account.

W.    Section 8.02 is hereby deleted in its entirety and replaced with the following:

NON-RELATIONSHIP. To the actual knowledge of Kimberly Owens,

13

Ileana Mendez, Ruby K. Chambliss and Richard Cadmus, without investigation or inquiry, neither Grantor nor any general partner, director, member, or officer of Grantor is (i) a director or officer of Metropolitan Life Insurance Company ("MetLife"), or (ii) a parent, son or daughter of a director or officer of MetLife, or a descendent of any of them.

X.    Section 8.03(a) is hereby amended by inserting at the end thereof the following: "For purposes of this Section 8.03(a), "Application" shall mean the information submitted in connection with the assignment and assumption of the Loan by Grantor."

Y.    Section 8.05 is hereby deleted in its entirety and replaced with the following:

US PATRIOT ACT. Neither Grantor nor any partner, member or stockholder of Grantor is, or will be held, directly or indirectly by a person or entity that appears on a list of individuals and/or entities for which transactions are prohibited by the US Treasury Office of Foreign Assets Control or any similar list maintained by any other governmental authority, with respect to which entering into transactions with such person or entity would violate the US Patriot Act or regulations or any Presidential Executive Order or any other similar applicable law, ordinance, order, rule or regulation

Z.    Section 8.06 is hereby deleted in its entirety.

AA.    Section 9.01 is hereby amended by (i) deleting from line 4 the phrase "and the general partners of Grantor;" (ii) revising clause (ii) to read in its entirety as follows: "to recover damages for fraud, material misrepresentation, material breach of warranty or intentional waste by Grantor or any Liable Party, if any;" and (iii) revising clause (vi) of the second sentence to read in its entirety as follows: "to recover damages, costs and expenses arising from, or in connection with Article VI of this Deed of Trust pertaining to Hazardous Materials or the Unsecured Indemnity Agreement (provided, however, that as long as a TIAA Entity is the Grantor, Grantor's liability with respect to such matters shall in any event not exceed $10,000,000 in the aggregate)."

BB.    Section 10.01 is hereby deleted in its entirety and replaced with the following:

CONVEYANCE OF PROPERTY, CHANGE IN OWNERSHIP AND COMPOSITION. The provisions for default set forth in Section 11.01(g) hereof shall not be applicable to (i) Transfers (as defined in Section 11.01(g) hereof) as a result of the death of a natural person who is Grantor; or (ii) Transfers in connection with estate planning by a natural person to a spouse, son or daughter or descendant of either, a stepson or stepdaughter or descendant of either; or (iii) any Transfer of an interest in Borrower or any change in the individual(s) comprising, or in the partners, or stockholders, or members or beneficiaries of, Borrower or the

14

constituent entities owning, directly or indirectly, interests in Borrower (subject to compliance with applicable laws and regulations, including but not limited to the U.S. Patriot Act and the requirements of the US Department of Treasury Office of Foreign Assets Control) so long as following the Transfer, Teachers Insurance and Annuity Association of America ("TIAA") or companies or entities controlled, directly or indirectly, by TIAA (a "TIAA Entity") maintain, at all times, effective legal and management control of Borrower and of the Property. Furthermore, so long as Grantor is otherwise in compliance with the Loan Documents, Transfers arising by requirements of law or by condemnation shall not constitute an Event of Default.

CC.    Section 10.03 is hereby deleted in its entirety and replaced with "Intentionally omitted."

DD.    Section 10.04 is hereby deleted in its entirety and replaced with the following:

STATEMENTS REGARDING OWNERSHIP. Grantor agrees to submit or cause to be submitted to Beneficiary within thirty (30) days after December 31st of each calendar year during the term of this Deed of Trust and ten (10) days after any written request by Beneficiary, but not more than twice in any twelve (12) month period, a sworn, notarized certificate, signed by an authorized (i) individual who is Grantor or one of the individuals comprising Grantor, (ii) member of Grantor, (iii) partner of Grantor or (iv) officer of Grantor, as the case may be, stating whether (x) any part of the Property, or any interest in the Property, has been conveyed, transferred, assigned, encumbered, or sold, and if so, to whom; (y) any conveyance, transfer, pledge or encumbrance of any interest in Grantor has been made by Grantor and if so, to whom; or (z) there has been any change in the individual(s) comprising Grantor or in the partners, members, stockholders or beneficiaries of Grantor from those on the Execution Date, and if so, a description of such change or changes, provided, however, that this subclause (z) shall not be applicable so long as the grantor hereunder remains a TIAA Entity.

EE.    Grantor and Beneficiary agree that although the one-time transfer right has been exercised in connection with the assumption of the Loan by Teachers Insurance and Annuity Association of America, Beneficiary hereby reinstates the one-time transfer right in Section 10.05 with the following changes: (i) deletion of "one percent (1%)" from line 1 and replacing it with "two percent (2%);" and (iii) by insertion of the following as clause (xii): "if the outstanding loan to value ratio (using the principal balance of the Note as of the date of the Transfer Request) is less than sixty percent (60%), payments under the Note shall continue to be equal to the Monthly Installment of Interest Only (as defined in the Note) and if the outstanding loan to value ratio is equal to or greater than sixty percent (60%), payments of principal and interest under the Note shall be required based on an amortization period of thirty (30) years. Furthermore, if the

15

outstanding loan to value ratio is less than sixty percent (60%), no Liable Parties shall be required."

FF.    Section 11.01(a) is hereby deleted and replaced with the following: "The failure of Grantor, following two (2) business days written notice from Beneficiary of such failure, to pay any installment of principal, interest or principal and interest, any required escrow deposit or any other sum required to be paid under any Loan Document, whether to Beneficiary or otherwise, within seven (7) days of the due date of such payment; provided, however, in no event shall Beneficiary be required to provide such notice more than one (1) time per calendar year."

GG.    Section 11.01(d) is amended by deleting the phrase "when made or furnished" from the end thereof and inserting "; provided, however, that Grantor shall have thirty (30) days after receipt of written notice from Beneficiary to cure any representations or warranties in any Loan Document that are materially false or misleading and which period can be extended by an additional period of time not to exceed sixty (60) days as long as Grantor has commenced the cure prior to the expiration of the initial thirty (30) day period and Grantor is diligently pursuing the cure of such representation or warranty."

HH.    Section 11.06 is hereby deleted in its entirety and replaced with the following:

BENEFICIARY REIMBURSEMENT.    All payments made, or funds expended or advanced by Beneficiary pursuant to the provisions of any Loan Document, shall (1) become a part of the Secured Indebtedness, (2) bear interest at the Interest Rate (as defined in the Note) from the date such payments are made or funds expended or advanced, (3) become due and payable by Grantor upon demand by Beneficiary, and (4) bear interest at the Default Rate (as defined in the Note) from the date of such demand. Grantor shall reimburse Beneficiary within ten (10) days after receipt of written demand for such amounts.

II.    Section 11.07 is hereby deleted in its entirety and replaced with the following:

FEES AND EXPENSES.    If (i) Beneficiary becomes a party (by intervention or otherwise) to any action or proceeding affecting, directly or indirectly, Grantor, the Property or the title thereto or Beneficiary's interest under this Deed of Trust, or (ii) employs an attorney to collect any of the Secured Indebtedness or to enforce performance of the obligations, covenants and agreements of the Loan Documents, Grantor shall reimburse Beneficiary in accordance with Section 11.06 for all expenses, costs, charges and legal fees incurred by Beneficiary (including, without limitation, the fees and expenses of experts and consultants), whether or not suit is commenced; provided, however, that so long as the foregoing matters do not constitute an Event of Default hereunder, such expenses, costs, charges and legal fees must be reasonable.

16

JJ.        Section 12.01(a) and (b) are hereby deleted in their entirety and replaced with the following:

(a)        Beneficiary may sell, transfer or assign its entire interest or one or more participation interests in the Loan and the Loan Documents at any time and from time to time, including, without limitation, its rights and obligations as servicer of the Loan. Beneficiary may issue mortgage pass-through certificates or other securities evidencing a beneficial interest in the Loan in a rated or unrated public offering or private placement, including depositing the Loan Documents with a trust that may issue securities (the "Securities"). Beneficiary may forward to each purchaser, transferee, assignee, servicer, participant, investor or prospective investor in such Securities (collectively, the "Investor") or any agency rating or assigning value to such Securities ("Rating Agency") and each prospective Investor, all documents and information which Beneficiary now has or may hereafter acquire relating to the Secured Indebtedness and to Grantor or any Liable Parties and the Property, whether furnished by Grantor, any Liable Parties or otherwise, as Beneficiary determines necessary or desirable, the costs of which shall be borne solely by Beneficiary.

(b)        Grantor will cooperate with Beneficiary and the rating agencies in furnishing such information and providing such other assistance, reports and legal opinions (at no third party expense to Grantor) as Beneficiary, Investor, or Rating Agency may reasonably request in connection with any such transaction. In addition, Grantor acknowledges that Beneficiary may release or disclose to potential purchasers or transferees of the Loan, or potential participants in the Loan, originals or copies of the Loan Documents, title information, engineering reports, financial statements, operating statements, appraisals, Leases, rent rolls, and all other materials, documents and information in Beneficiary's possession or which Beneficiary is entitled to receive under the Loan Documents, with respect to the Loan, Grantor, Liable Parties or the Property. Grantor shall also furnish to such Investors or such prospective Investors or such Rating Agency (at no third party expense to Grantor) any and all information concerning the Property, the Leases, the financial condition of Grantor or any Liable Parties as may be requested by Beneficiary, any Investor or any prospective Investor or any Rating Agency in connection with any sale, transfer or participation interest. Grantor and Liable Parties shall provide an estoppel certificate or any other documents to the Investor or the Rating Agency as may be reasonably required by Beneficiary. The costs of any information provided to third parties by Beneficiary hereunder shall be paid by Beneficiary

The_Woodlands_1\132290\5
9212-246 9/27/2006

KK.     Section 14.01 is hereby amended by inserting at the end thereof the following: "Any waiver of any breach or default must be in writing to be effective."

LL.     Section 14.04 is hereby deleted in its entirety and replaced with the following:

> SEVERABILITY. If any provision of this Deed of Trust should be held unenforceable or void, then that provision shall be separated from the remaining provisions and shall not affect the validity of this Deed of Trust except that if the unenforceable or void provision relates to the payment of any monetary sum, then, Beneficiary and Grantor shall use good faith efforts to amend or modify any unenforceable or void provision to make such provision valid and enforceable and to reflect the intent of the parties as of the date hereof. In the event said provision cannot be made valid and enforceable (in keeping with the intent of the parties as of the date hereof), then Beneficiary may, at its option, declare the Secured Indebtedness (without the Prepayment Fee) due and payable upon ninety (90) days written notice to Grantor.

MM.     During such time as a TIAA Entity is the Grantor under the Deed of Trust, the Leasing Guidelines set forth in **Exhibit B** attached hereto and made a part hereof shall be in force and effect. At such time as a TIAA Entity is no longer the Grantor under the Deed of Trust, the Leasing Guidelines set forth in **Exhibit B** attached to the Deed of Trust shall be in force and effect and those attached to this Agreement as **Exhibit B** shall no longer be in force and effect.

6.     Modification of Assignment of Leases.

A.     Definitions. The Defined Terms section of the Assignment of Leases is hereby amended as follows:

(i)     Assignor and Address is deleted and replaced with

Teachers Insurance and Annuity Association of America, a New York corporation, for the benefit of its separate real estate account

730 Third Avenue, 4th Floor
New York, NY 10017
Attention: Director of Asset Management
Authorization Number: AAA5771
Real Estate Number: 0006335

18

and

730 Third Avenue, 9th Floor
New York, New York 10017
Attention: Managing Counsel – Asset Management Law – New
York
Authorization Number: AAA5771
Real Estate Number: 0006335

(ii)    Note is deleted and replaced with the following:  "A Promissory
Note executed by Hendry Properties, Ltd. in favor of Assignee in
the amount of the Loan dated as of May 14, 2003, as assigned and
assumed by Assignee as of September 29, 2006."

(iii)    Deed of Trust is deleted and replaced with the following;  "A Deed
of Trust, Security Agreement and Fixture Filing dated as of
May 14, 2003, executed by Hendry Properties, Ltd., to Denis Clive
Braham, as Trustee, for the benefit of Assignee securing payment
of the Note, as assigned to and assumed by Assignor and modified
by Assignor and Assignee as of September 29, 2006.  The Deed of
Trust has been recorded in the records of the County in which the
Property is located."

B.    Section 4(c) is hereby amended by inserting at the end of line 1 after
"Agreement" the phrase "beyond any applicable notice and cure or grace period."

7.    Reaffirmation of Loan Documents.  All of the terms and conditions contained in
the Note, the Deed of Trust and other Loan Documents, as the same may have been modified,
amended or supplemented, and as modified hereby, shall remain in full force and effect, and the
Note, the Deed of Trust and each of the other Loan Documents, as the same may have been
modified, amended or supplemented and as modified hereby, are hereby ratified and reaffirmed
in their entirety.

8.    Term.  This Agreement shall remain in full force and effect as long as any
amounts or obligations are owing under the Loan Documents, the Original Indemnity
Agreement, the New Indemnity Agreement, the Guaranty or this Agreement.  Nothing herein
shall discharge or satisfy the obligations of New Borrower hereunder except for the full payment
and performance of the obligations assumed by New Borrower pursuant to this Agreement.

9.    Independent Obligations.  The parties agree and acknowledge that the liability and
obligations under and pursuant to the Note, the Deed of Trust and the other Loan Documents (as
modified hereby) which New Borrower assumes as provided therein pursuant to this Agreement
(collectively, the "New Borrower Obligations") are entirely separate, distinct, additional and
independent from Original Borrower's past and continuing liability and obligations under and
pursuant to the Note, the Deed of Trust and the other Loan Documents (without the effect of the
modifications thereto as provided herein).  Lender shall not be required to, and New Borrower
hereby waives any and all rights to require Lender to, prosecute or seek to enforce any remedies

19

against Original Borrower and/or to require Lender to seek or enforce or resort to any remedies with respect to any security interest, lien or encumbrances granted to Lender by Original Borrower, New Borrower, or any other party on account of the New Borrower Obligations.

10.    <u>Limited Release of Original Borrower or Liable Party</u>.  Except as expressly provided in this Section 10, Lender does hereby release in their entirety Liable Party and Original Borrower, its partners and its partners' shareholders, directors, officers, employees, agents, representatives and affiliates, from and against any and all obligations and liabilities arising in any manner under the Loan Documents, the Original Indemnity Agreement or the Guaranty with respect to events occurring on or after the date of this Agreement.  Nothing herein shall be construed as releasing Original Borrower or Liable Party from their obligations under the Loan Documents, the Original Indemnity Agreement or the Guaranty with respect to events occurring prior to the date of this Agreement; provided that, with respect to environmental claims, Original Borrower and Liable Party shall remain liable for all damages, claims and liabilities which are attributable to (i) the introduction or release of a Hazardous Material at the Property by Grantor or Liable Party either before or after the date of this Agreement, (ii) Hazardous Materials which are discovered at the Property after the date of this Agreement but which were actually introduced to the Property prior to the date of this Agreement, and (iii) any continuing migration or release of any Hazardous Materials which commenced prior to the date of this Agreement.

11.    <u>Costs and Expenses</u>.  Any and all costs and expenses arising out of, associated with or as a result of this Agreement (and any of the other documents executed in connection herewith), including, without limitation all costs and expenses of Lender, fees and costs of Lender's outside legal counsel in connection herewith, costs of recordation, costs of title insurance endorsements (the **"Title Endorsements"**) to the title insurance policies currently held by Lender, or of new title insurance policies insuring the first lien priority of the Deed of Trust and escrow fees, shall be paid by New Borrower upon recordation hereof, and in no event shall any such costs be borne by Lender.  New Borrower shall also pay to Lender, upon the execution of this Agreement, the Transfer Fee as required in Section 10.05 of the Deed of Trust.

12.    <u>No Counterclaims; Authorizations; Waivers</u>.

A.    New Borrower hereby waives any right to assert against Lender as a defense, counterclaim, set-off or cross-claim, any defense (legal or equitable), set-off, counterclaim and/or claim which New Borrower now or at any time hereafter may have against Original Borrower or any other party liable to Lender in any way or manner.  New Borrower further waives any right to assert against Lender as a defense, counterclaim, set-off or cross-claim, any defense (legal or equitable), set-off, cross-claim, counterclaim and/or claim which Original Borrower may now or at any time hereafter have against Lender and/or any other party liable to Lender in any way or manner.

B.    Original Borrower and New Borrower each hereby agree and acknowledge that there are no claims, defenses (legal or equitable), counterclaims, set-offs and/or any other rights or remedies whatsoever (or any basis therefor) which any of them now may have, claim or assert against Lender which would, in the absence of this Agreement, in any way alter, reduce or extinguish its liabilities to Lender under and pursuant to the Loan Documents, the

The_Woodlands_1\13229\5
9212-246 9/27/2006

Original Indemnity Agreement or the New Indemnity Agreement (subject to the limitation of liability provisions therein).

        C.      New Borrower and Original Borrower hereby authorize Lender, without notice or demand and without affecting their respective liability and obligations hereunder, from time to time to exchange, enforce, waive and release any security held by Lender for the payment of the obligations under the Loan Documents; and apply such security and direct the order or manner of sale thereof as Lender in its discretion may determine. This Agreement is not assignable by New Borrower, except as otherwise permitted by the Loan Documents, as modified hereby. New Borrower hereby agrees that Lender may do any or all of the foregoing in such manner, upon such terms, and at such times as Lender, in its discretion, deems advisable, without, in any way or respect, impairing, affecting, reducing or releasing the parties from their respective obligations under the Loan Documents, the Original Indemnity Agreement, the Guaranty, the New Indemnity Agreement or this Agreement.

        13.    <u>Conforming Modifications</u>. The Note, the Deed of Trust and the other Loan Documents are each hereby modified to provide that all references therein to the **"Note,"** the **"Deed of Trust"** or any other Loan Document shall be deemed to refer to the Note, the Deed of Trust and any such other Loan Document all as amended hereby. The Deed of Trust is hereby modified to provide that the Deed of Trust secures the Note, as amended hereby, in addition to and not in limitation of all other indebtedness and obligations stated in the Deed of Trust to be secured thereby. It is the intention of the parties hereto that this Agreement shall be deemed to form a part of the Loan Documents that it amends, and shall constitute a **"Loan Document"** as referred to herein and therein. Except as specifically supplemented and amended hereby, the Loan Documents shall each remain in full force and effect. The Deed of Trust as amended shall remain one deed of trust with power of sale.

        14.    <u>Release of Claims</u>.

        A.      <u>Release of All Claims</u>. Original Borrower, New Borrower, and the Liable Party, on behalf of themselves and their respective partners, managers, members, shareholders and constituent owners, and their successors and assigns (collectively, the **"Releasing Parties"**), hereby release and forever discharge Lender and all of their respective subsidiaries, affiliates, divisions, officers, directors, employees, agents, attorneys, advisors, successors and assigns (collectively, the **"Released Parties"**) from any and all claims, demands, debts, liabilities, damages, contracts, obligations, accounts, torts, causes of action or claims for relief of whatever kind or nature, whether known or unknown, whether suspected or unsuspected, which the Releasing Parties or any of them may have (whether or not asserted) against the Released Parties or any of them, resulting from or in any way relating to any act or omission done or committed by the Released Parties, or any of them, prior to the date hereof with respect to the Loan Documents, the Original Indemnity Agreement or the Loan.

        B.      <u>Release Includes Unknown Claims</u>. The releases contained in paragraph A above and in this paragraph B apply to all claims which the Releasing Parties or any of them have or which may hereafter arise against the Released Parties or any of them, as a result of acts or omissions occurring before the date hereof, whether or not known or suspected by the parties hereto. Original Borrower and New Borrower expressly acknowledge that although

21

ordinarily a general release does not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by him must have materially affected his settlement with the party released, they have carefully considered and taken into account in determining to enter into this Agreement the possible existence of such unknown losses or claims.

Without limiting the generality of the foregoing, Original Borrower and New Borrower on behalf of themselves and all of the Releasing Parties expressly waive any and all rights conferred upon them by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the released party, including, without limitation, any rule of law or law to the effect that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

C.    Complete Defense.  This release by Releasing Parties shall constitute a complete defense to any claim, cause of action, defense, contract, liability, indebtedness or obligation released pursuant to this release.  Nothing in this release shall be construed as (or shall be admissible in any legal action or proceeding as) an admission by Lender or any other Released Party that any defense, indebtedness, obligation, liability, claim or cause of action exists which is within the scope of those hereby released.

D.    Survival.  This Section shall survive the repayment and performance of all obligations secured by the Deed of Trust, and the reconveyance, foreclosure or other extinguishment of the Deed of Trust.

15.    Effect of Waivers.  Original Borrower, New Borrower, and the Liable Party represent and warrant that they have consulted with their respective legal counsel regarding all waivers under this Agreement, that they fully understand all rights that they are waiving and the effect of such waivers, that they assume the risk of any misunderstanding that they may have regarding any of the foregoing, and that they intend that such waivers shall be a material inducement to Lender to enter into this Agreement.

16.    Confirmation of Obligations.  New Borrower hereby confirms each of the covenants, agreements and obligations of New Borrower set forth in the Loan Documents, as modified and amended hereby.  New Borrower acknowledges and agrees that, if and to the extent that Lender has not heretofore required strict compliance with the performance of the covenants, agreements, obligations and conditions in the Loan Documents, such action or inaction shall not constitute a waiver of, or otherwise affect in any manner, Lender's rights and remedies under the Loan Documents, as amended hereby, including the right to hereafter require performance of such covenants, agreements, obligations and conditions strictly in accordance with the terms and provisions thereof.

17.    No Rights Conferred on Others.  Nothing contained in the Loan Documents, including this Agreement, shall be construed as giving any person, other than the parties hereto, any right, remedy or claim under or in respect of the Loan Documents, including this Agreement, except for the rights granted to the Released Parties above.

22

18.    <u>Non-Impairment</u>. Except as expressly provided herein, nothing contained in this Agreement shall (i) alter or affect any provision, condition or covenant contained in the Note, the Deed of Trust, the other Loan Documents, the Original Indemnity Agreement, the Guaranty, or the New Indemnity Agreement or affect or impair any rights, powers or remedies thereunder, it being the intent hereof that the provisions of the Note, the Deed of Trust, the other Loan Documents, the Original Indemnity Agreement, the Guaranty, and the New Indemnity Agreement shall each continue in full force and effect except as expressly modified hereby, or (ii) be deemed or construed to be an impairment of the lien of the Deed of Trust, and the lien of the Deed of Trust shall remain a first lien encumbering the property covered by the Deed of Trust.

19.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when executed and delivered to Lender will be deemed to be an original, and all of which, taken together, will be deemed to be one and the same instrument.

20.    <u>Successors and Assigns</u>. Lender may assign, without notice, this Agreement in whole or in part and/or Lender's rights hereunder to anyone at any time. This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective heirs, executors, administrators, trustees (including bankruptcy trustees), receivers, successors and permitted assigns. As used herein, the singular number includes the plural and the masculine gender includes the feminine and neuter.

21.    <u>Further Assurances</u>. From time to time, as requested, New Borrower agrees to promptly execute and deliver to Lender such other and further documents, instruments, and title insurance evidencing and pertaining to or insuring the Loan, as modified and amended hereby, reasonably requested by Lender so as to evidence or effect the terms and conditions of this Agreement.

**22.    <u>Prior Agreements</u>. The Loan Documents, including this Agreement (and all other documents and instruments executed by New Borrower in connection with this Agreement and the assumption of the Loan), together with the Original Indemnity Agreement and the New Indemnity Agreement, (i) integrate all the terms and conditions mentioned in or incidental to the Loan Documents, (ii) supersede all oral negotiations and prior and other writings with respect to the subject matter thereof, and (iii) are intended by the parties as the final expression of the agreement with respect to the terms and conditions set forth in the Loan Documents, the Original Indemnity Agreement and the New Indemnity Agreement and as the complete and exclusive statement of the terms agreed to by the parties. If there is any conflict between the terms, conditions and provisions of this Agreement and those of any of the original Loan Documents, the terms, conditions and provisions of this Agreement shall prevail. In addition to, and without limitation of, the foregoing, the parties hereby acknowledge and agree that any proposal, commitment or term letter (including any drafts thereof) presented by Lender to any party (including Original Borrower and/or New Borrower) with respect to the assumption by New Borrower of the Loan, are of no force or effect and are superseded in their entirety by this Agreement, the New Indemnity Agreement and the other documents and instruments executed in connection herewith evidencing, governing, securing or otherwise pertaining to the assumption of the Loan by New Borrower.**

23

23. <u>Legend</u>. Lender may place an appropriate legend on the Note indicating the existence of this Agreement.

24. <u>Governing Law; Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. If any court of competent jurisdiction determines any provision of this Agreement or any of the Loan Documents to be invalid, illegal or unenforceable, that portion shall be deemed severed from the rest, which shall remain in full force and effect as though the invalid, illegal or unenforceable portion had never been a part hereof or of the Loan Documents. On behalf of themselves and all of their respective constituents, Original Borrower and New Borrower hereby agree and consent to the exclusive jurisdiction and venue of the state courts of Texas and the federal courts of the United States having territorial jurisdiction where the Property is located.

25. <u>Several Liability</u>. All representations and warranties of New Borrower contained in this Agreement or any other Loan Document are expressly understood and agreed to be several, not joint and several.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

[SIGNATURE AND NOTARY PAGES FOLLOW]

24

**LENDER:**

METROPOLITAN LIFE INSURANCE COMPANY,
a New York corporation

By: _____
Name: _____Kurt Day_____
Title: _____Director_____

STATE OF _Texas_ §
                 §
COUNTY OF _Dallas_ §

    This instrument was ACKNOWLEDGED before me on _Sept. 28_, 2006, by
_Kurt Day_____, _Director_____ of
METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation, on behalf of
said corporation.

[S E A L]

_____
Notary Public in and for the State of Texas

_____Saunde O'Kelley_____
Typed or Printed Name of Notary

My commission expires: _April 5, 2009_

SAUNDE O'KELLEY
Notary Public, State of Texas
My Commission Expires
April 05, 2009

The_Woodlands_1\13229\5
9212-246 9/27/2006

**ORIGINAL BORROWER:**

HENDRY PROPERTIES, LTD.,
a Texas limited partnership

By:     Hendry Investments, Inc.,
        a Texas corporation,
        Its general partner

        By: *Stuart C. Hendry, Pres.*
            Stuart C. Hendry
            President

STATE OF TEXAS          §
                        §
COUNTY OF *Bexar*       §

    This instrument was ACKNOWLEDGED before me on *September 28*, 2006, by
Stuart C. Hendry, President of Hendry Investments, Inc., a Texas corporation, as the sole general
partner of HENDRY PROPERTIES, LTD., a Texas limited partnership, on behalf of said limited
partnership.

[S E A L]

                        *J. Christopher Varley*
                        Notary Public in and for the State of Texas

                        **J. CHRISTOPHER VARLEY**

                        Typed or Printed Name of Notary

J. CHRISTOPHER VARLEY
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 06-09-2009

                        My commission expires: *6-9-09*

The_Woodlands_1\13229\5
9212-246 9/27/2006

**NEW BORROWER:**

TEACHERS INSURANCE AND ANNUITY
ASSOCIATION OF AMERICA, a New York corporation,
for the benefit of its separate Real Estate Account

By: _Ruby Chambliss_____ KSO

Name: _Ruby Chambliss_____

Title: _Director_____

STATE OF _North Carolina_ §

                    §

COUNTY OF _Mecklenburg_ §

    This instrument was ACKNOWLEDGED before me on _September 29th_, 2006, by
_Ruby Chambliss_, _Director_____ of TEACHERS INSURANCE AND
ANNUITY ASSOCIATION OF AMERICA, a New York corporation, for the benefit of its
separate Real Estate Account, on behalf of said corporation.

[S E A L]

                  Notary Public in and for the State of _North Carolina_

                  _Kimberly S. Owens_

                  Typed or Printed Name of Notary

                  My commission expires:_____

                     My Commission Expires June 15, 2008

The_Woodlands_1\13229\5
9212-246 9/27/2006

LIABLE PARTY:

_John L. Hendry III_
JOHN L. HENDRY, III

STATE OF TEXAS      §
                           §
COUNTY OF _Bexar_      §

This instrument was ACKNOWLEDGED before me on _September 28_, 2006, by JOHN L. HENDRY, III, an individual.

[S E A L]

_J. Christopher Varley_
Notary Public in and for the State of Texas

**J. CHRISTOPHER VARLEY**

Typed or Printed Name of Notary

My commission expires: _6-9-09_

> J. CHRISTOPHER VARLEY
> NOTARY PUBLIC
> STATE OF TEXAS
> My Comm. Exp. 06-09-2009

Attachment:

Exhibit "A" – Primary Documents

28

## EXHIBIT "A"

### PRIMARY DOCUMENTS

1.     Promissory Note dated May 14, 2003, executed by Original Borrower payable to Lender in the original principal amount of $27,500,000.00, and presently in the principal amount of $26,250,559.07.

2.     Deed of Trust, Security Agreement and Fixture Filing dated May 14, 1003, executed by Original Borrower to Denis Clive Braham, as trustee, originally for the benefit of Lender, recorded in the real property records of Collin County, Texas under Clerk's File No. 2003-0090157.

3.     Assignment of Leases dated May 14, 2006, executed by Original Borrower in favor of Lender and recorded in the real property records of Collin County, Texas under Clerk's File No. 2003-0090158.

4.     UCC-1 Financing Statement executed by Original Borrower, as debtor, in favor of Lender, as secured party, recorded in the real property records of Collin County, Texas under Clerk's File No. 2003-0090159 as modified by that certain UCC-3 Amendment to Financing Statement.

5.     UCC-1 Financing Statement executed by Original Borrower, as debtor, in favor of Lender, as secured party, filed in the office of the Secretary of State of Texas under file number 04-0045147631.

6.     UCC-1 Financing Statement by Borrower, as debtor, in favor of Lender, as secured party, to be filed in the office of the Secretary of State of New York.

EXHIBIT "B"

TO DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

LEASING GUIDELINES

"Leasing Guidelines" shall mean the guidelines proposed by Grantor and approved in writing by Beneficiary, from time to time, with respect to the leasing of the Property which approval will not be unreasonably withheld, delayed or conditioned.  The following are the initial Leasing Guidelines:

    (a)    All Future Leases shall be on the standard form of lease approved by Beneficiary in writing, which approval will not be unreasonably withheld, delayed or conditioned and without material deviation from such standard form;

    (b)    All Leases shall be at no less than market rents, giving consideration to the size and nature of the tenant.

    (c)    No Leases shall be entered into if there is an Event of Default under any of the Loan Documents;

    (d)    All payments of rent, additional rent or any other amounts due from a tenant to a landlord under any Lease shall be made in money of the United States of America that at the time of payment shall be legal tender for the payment of all obligations; and

    (e)    Any Future Lease that is a net lease shall contain provisions requiring the tenant to pay its proportionate share of operating expenses and taxes, and all other Leases shall contain provisions requiring the tenant to pay, after the first year, its proportionate share of increases in taxes and operating expenses.

    (f)    Any Future Lease covering 35,000 square feet or more shall require prior written approval of Beneficiary, which shall not be unreasonably withheld, conditioned or delayed.

Any Lease for which Beneficiary's approval is required or change in the Leasing Guidelines submitted to Beneficiary for approval shall be deemed approved if Beneficiary shall have not notified Grantor in writing of its approval or disapproval   within fifteen (15) days after Beneficiary has received such submission on the condition that such submission includes the following statement or heading:  LENDER'S RESPONSE IS REQUIRED WITHIN FIFTEEN (15) DAYS OF RECEIPT OF THIS NOTICE OR THE [LEASE/LEASING GUIDELINES] IS DEEMED AUTOMATICALLY APPROVED.  Furthermore, if Beneficiary has not responded within ten (10) days of such submission, said submission shall not be deemed approved unless and until Grantor shall have delivered to Beneficiary a second notice that includes the following statement or heading:   SECOND AND FINAL NOTICE:   LENDER'S RESPONSE IS REQUIRED NO LATER THAN _____ OR THE [LEASE/LEASING GUIDELINES] SUBMITTED UNDER COVER OF LETTER DATED _____ IS DEEMED AUTOMATICALLY APPROVED.

Filed and Recorded
Official Public Records
Brenda Taylor, County Clerk
Collin County, TEXAS
10/02/2006 08:26:38 AM
$136.00 DLAIRD
2006100200140781G

