IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

---------------------------------------------------------x
In re:                                              :     CHAPTER 11
                                                    :
CIRCUIT CITY STORES, INC., *et al.*,                :     Case No. 08-35653 (KRH)
                                                    :
                    Debtors.                        :     Jointly Administered
---------------------------------------------------------x

**MOTION OF MARKET HEIGHTS, LTD FOR ALLOWANCE AND
IMMEDIATE PAYMENT OF ADMINISTRATIVE RENT CLAIMS**

COMES NOW Market Heights, Ltd ("Market Heights"), a landlord and administrative creditor in the above styled and numbered jointly administered bankruptcy case (the "Bankruptcy Case"), and files this its *Motion of Market Heights, Ltd for Allowance and Immediate Payment of Administrative Rent Claims* (the "Motion"), respectfully stating as follows:

### I.   PROCEDURAL BACKGROUND

1.   On November 10, 2008 (the "Petition Date"), Circuit City Stores, Inc. (the "Debtor") and its affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby initiating this Bankruptcy Case and creating the bankruptcy estate (the "Estate"). The Court authorized joint administration of the Debtors' cases, and the Debtors continue to operate as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

Michael D. Mueller, Esquire (VSB 38216)
Augustus C. Epps, Jr., Esquire (VSB 13254)
Jennifer M. McLemore, Esquire (VSB 47164)
Noelle M. James, Esquire (VSB 76001)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112

Local Counsel for Market Heights, Ltd

Davor Rukavina, Esquire (Texas Bar No. 24030781)
Jonathan L. Howell, Esquire (Texas Bar No. 24053668)
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7501
Facsimile: (214) 855-7584

Counsel for Market Heights, Ltd

2.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for relief requested herein are Sections 365(d)(3) and 503(b)(1) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

## II.    FACTUAL BACKGROUND

3.  On or about April 23, 2007, the Debtor entered into that certain *Lease Agreement* with Market Heights to lease nonresidential real property (the "Premises") in a shopping center (the "Shopping Center") to be constructed at the northeast corner of U.S. Highway 190 and FM 2410 in Harker Heights, Texas.  On or about September 10, 2007, Market Heights entered into that certain *First Amendment to Lease Agreement*, effectively modifying the location of the Premises from Phase I of the Shopping Center to Phase II.  A true and correct copy the Lease Agreement and the First Amendment to Lease Agreement (collectively, the "Lease") is attached hereto as Exhibit "A".

4.  Under the terms of the Lease, the Debtor was obligated to, among other things, make monthly rental payments ("Base Rent") to Market Heights in the amount of $24,419.50 in exchange for its use and occupancy of the Premises.  In accordance with the terms of the Lease, Base Rent was due on the first day of each month.

5.  In addition to Base Rent, the Lease also obligated the Debtor to pay its proportional share of the Shopping Center's property taxes on an annual basis to Market Heights.  Specifically, the Lease provides that the Debtor is responsible for reimbursing Market Heights for payment of its proportional share of property taxes, calculated by multiplying the Shopping

2

Center's annual property taxes by the percentage of square footage that the Premises comprises of the entire Shopping Center (i.e., 5.2468%).

6. On November 1, 2008, the Debtor failed to pay Base Rent for its use or occupancy of the Premises during the month of November, resulting in a default under the Lease. The Debtor's failure to pay Base Rent in November 2008 is evidenced by Market Height's invoice dated December 15, 2008, a true and correct copy of which is attached hereto as Exhibit "B".

7. Following the Petition Date, Market Heights paid its 2008 *ad valorem* taxes totaling $37,622.20. True and correct copies of Market Heights' *2008 Tax Statements* are attached hereto as Exhibit "C". As contemplated by the Lease, the Debtor was obligated to reimburse Market Heights for its proportional share of the 2008 *ad valorem* taxes based on the percentage of the square footage that Premises comprises of the entire Shopping Center (i.e., 5.2468%). Applying this formula, and based on the 2008 appraisal value of the Shopping Center and Market Heights' 2008 tax rate, the Debtor's proportional share of the Shopping Center's 2008 property taxes equals $1,973.96 (the "2008 Taxes"). The Debtor's pro rata share of the 2008 Taxes for the period between November 11, 2008 and December 31, 2008 equals $275.81. Despite being obligated to pay the 2008 Taxes in accordance with the terms of the Lease, the Debtor failed to meet this obligation.

8. On or about March 4, 2009, Market Heights received the *Notice of Rejection of Unexpired Leases and Abandonment of Personal Property* [Docket No. 2414] (the "Lease Rejection Notice"), thereby notifying Market Heights that the Debtor was rejecting the Lease pursuant to its right under Section 365(a) of the Bankruptcy Code. According to the Lease Rejection Notice, the effective date of the Debtor's lease rejection was March 11, 2009.

3

9. Prior to the Debtor's rejection of the Lease, the Debtor and its Estate derived material and substantial benefits from its use of the Premises. Among other things, the Debtor used the Premises during the important Thanksgiving and Christmas shopping seasons, during which time, upon information and belief, the Debtor made substantial sales at the Premises. Thereafter, the Debtor's use of the Premises into 2009 enabled the Debtor to conduct its going-out-of-business sale at the Premises, from which the Debtor obtained substantial income. The benefits obtained by the Debtor from its postpetition use of the Premises greatly outweigh the amounts that the Debtor is obligated to pay for that period under the Lease. These benefits would not have occurred but for the Debtor's use of the Premises.

10. On May 1, 2009, the Tax Appraisal District of Bell County, Texas issued its *2009 Notice of Appraised Value*, which documents the significant increase in the property value of the Shopping Center from approximately $1.6 million in 2008 to approximately $23.7 million caused almost entirely by the conclusion of the Shopping Center's construction. A true and correct copy of the 2009 Notice of Appraised Value is attached hereto as Exhibit "D". While the Tax Appraisal District of Bell County significantly increased the appraisal value of the Shopping Center for the 2009 tax year, it has not altered Market Heights' tax rate to date. As contemplated by the Lease, the Debtor was obligated to reimburse Market Heights for its proportional share of the 2009 *ad valorem* taxes based on the percentage of the square footage that the Premises comprises of the entire Shopping Center (i.e., 5.2468%).

11. Applying this formula, and based on the Shopping Center's 2009 appraisal value and Market Height's 2008 tax rate, the Debtor's proportional share of the Shopping Center's 2009 taxes equals $29,503.43 (the "2009 Taxes" and, together with the 2008 Taxes, the "Taxes") for the period from January 1, 2009 to March 11, 2009 – the date of rejection. The Debtor's pro

4

rata share of the 2009 Taxes for the period between January 1, 2009 and March 11, 2009 equals $5,658.19.

### III.   AUTHORITY AND ARGUMENTS

12.   Market Heights is entitled to an administrative expense priority claim for all of the Debtor's outstanding postpetition obligations under the Lease related to Base Rent and Taxes. Section 365(d)(3) of the Bankruptcy Code requires a debtor-lessee to pay all rent and related lease charges postpetition until the debtor rejects or assumes the lease. 11 U.S.C. § 365(d)(3) (2009). Additionally, a debtor-lessee should not force a landlord to contribute its real property for the benefit of the bankruptcy estate without adequate compensation in return. *See, e.g., In re Tak Auto Corp.*, 277 B.R. 655, 662 (Bankr. E.D. Va. 2002) (noting that landlords cannot be forced to become involuntary creditors of a debtor), *aff'd* 288 B.R. 114 (E.D. Va. 2003), *rev'd on other grounds*, 367 F.3d 237 (4th Cir. 2004). To ensure the landlord receives adequate compensation, the Bankruptcy Code provides that, in the event a debtor-lessee fails to pay postpetition rent and related lease charges postpetition, a landlord is entitled to an administrative expense priority claim for the full deficiency. *See In re Midway Airlines Corp.*, 406 F.3d 229, 235-37 (4th Cir. 2005); *In re Pudgie's Dev. of NY, Inc.*, 202 B.R. 832, 836 (Bankr. S.D.N.Y. 1996) ("the provisions of §§ 365(b)(1) and 365(d)(3) unambiguously grant priority status to [landlords as a] . . . class of involuntary claimant[s]"); *see also* 11 U.S.C. § 502(b)(1)(B) (stating that property taxes are "actual, necessary costs and expenses of preserving the estate, and therefore qualify as administrative expense claims."). Section 365(d)(3) not only fixes the amount to be paid by the debtor-tenants pending assumption or rejection of the lease at the amount provided in the lease, but it also requires that "these payments [must] be paid at the time

5

required in the lease." *In re Child World, Inc.*, 161 B.R. 571, 575 (S.D.N.Y. 1993); *see also In re Fin. New Network, Inc.*, 149 B.R. 348, 352 n. 4 (Bankr. S.D.N.Y. 1993).

**A.    Base Rent**

13.    Applying these principles, Market Heights is entitled to an administrative expense priority claim for the Debtor's failure to pay Base Rent in November 2008. The Debtor's use and occupancy of the Premises from November 11, 2008 through November 30, 2008 occurred postpetition and prior to the lease rejection date of March 11, 2009. Nonetheless, the Debtor failed to satisfy its lease obligation of paying the Debtor for its postpetition use of the Premises. Consequently, to ensure Market Heights receives adequate compensation for its contribution to the Estate, it is entitled to an administrative expense claim for the unpaid Base Rent. *See In re Midway Airlines Corp.*, 406 F.3d at 235-37; *In re Pudgie's Dev. of NY, Inc.*, 202 B.R. at 836.

14.    In terms of the amount of the claim, Market Heights is entitled to an administrative priority claim equal to $16,056.66, which is the pro rata amount of the Base Rent for November 11, 2008 through November 30, 2008. *See In re Goody's Family Clothing*, 401 B.R. 656, 671 (D. Del. 2009) (ruling that lessor was entitled to stub rent where debtor occupied and used the property the remaining duration of the month in which it filed for bankruptcy relief); *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 365 (Bankr. S.D.N.Y. 2008) (finding that the proper construction of 11 U.S.C. § 365(d)(3) is to treat unpaid stub rent as giving rise to an administrative claim). Although Base Rent for November 2008 was due on the first day of the month, such a requirement does not affect Section 365(d)(3)'s mandate that the Debtor timely perform its postpetition obligations under the Lease. *See In re Goody's Family Clothing*, 401 B.R. at 670-71 (reasoning that so long as the debtor uses the property in those days following the petition date in the same month the case was commenced, the date which payment

is required to be made is immaterial); *In re Barn Manhattan LLC*, 398 B.R. at 366-67 (opining that not allowing an administrative claim on account of a prepayment lease requirement would leave the landlord without remedy for those stub rent days following the petition date, while giving the landlord an unsecured claim for those days preceding the petition date). Because the Debtor used and occupied the Premises postpetition and prior to the lease rejection date, and because the Debtor failed to adequately compensate Market Heights for such use, Market Heights is entitled to an administrative expense claim in the amount of $16,056.66.

**B.     Property Taxes**

15.     Furthermore, the Debtor is obligated to pay $5,853.17 for unpaid postpetition property taxes payable by the Debtor to Market Heights under the Lease. This amount is calculated on the basis of the Debtor's proportionate annual property tax obligation, reduced for the actual number of postpetition days that the Debtor used the Premises. The Debtor's failure to make these payments prejudices Market Heights by failing to ensure it receives the benefit of its bargain with the Debtor, which enabled the Debtor to obtain substantial benefits from its use of the Premises, in contravention to the provisions of the Bankruptcy Code.

16.     Given that the Debtor's lease obligation of paying 2008 Taxes and 2009 Taxes arose postpetition, prior to the Lease rejection date, and while the Debtor was using the Premises for the substantial benefit of its estate, Market Heights is entitled to an administrative expense priority claim in the amount of $5,853.17 for postpetition Taxes. *See In re Midway Airlines Corp.*, 406 F.3d at 235-37; *In re Pudgie's Dev. of NY, Inc.*, 202 B.R. at 836.

C.  **Immediate Payment**

17. In addition to requesting allowance of an administrative claim based on the Debtor's unpaid Base Rent and Taxes, Market Heights requests that the Court order the Debtor to pay the administrative priority claim immediately. As noted above, the Bankruptcy Code requires the Debtor to *timely* pay its postpetition obligations under the Lease. That the Debtor has failed to do so should be corrected by an order from this Court requiring immediate payment.

IV.  **WAIVER OF MEMORANDUM OF LAW**

18. Market Heights requests that the requirement that all motions be accompanied by a separate memorandum of law be waived pursuant to Local Bankruptcy Rule 9013-1(G) because there are no novel issues of law presented in this Motion and all applicable authority is set forth herein.

V.  **NOTICE AND NO PRIOR REQUEST**

19. The relief requested in this Motion has not been previously requested in this or any other Court by Market Heights.

WHEREFORE, Market Heights respectfully requests that this Court enter the Order attached hereto: (i) approving the payment of $16,056.66 in administrative expenses to Market Heights for unpaid Base Rent; (ii) approving the payment of administrative expenses to Market Heights for the Debtor's unpaid pro rata share of Taxes from November 11, 2008 to March 10, 2009 in the amount of $5,853.17; (iii) ordering the Debtor to immediately pay all administrative expenses to Market Heights; and (iv) granting such other relief as this Court deems fair and just.

Dated: July 2, 2009

CHRISTIAN & BARTON, LLP

By: /s/ Michael D. Mueller
Michael D. Mueller, Esquire (VSB 38216)
Augustus C. Epps, Jr., Esquire (VSB 13254)
Jennifer M. McLemore, Esquire (VSB 47164)
Noelle M. James, Esquire (VSB 76001)
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112

and

Davor Rukavina, Esquire (Texas Bar No. 24030781)
Jonathan L. Howell, Esquire (Texas Bar No. 24053668)
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7501
Facsimile: (214) 855-7584

*Counsel for Market Heights, Ltd*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2009, I caused a copy of the foregoing to be served by electronic means on the "2002" and "Core" lists and through the ECF system.

/s/ Michael D. Mueller
Michael D. Mueller

963878