option, extend the Term if necessary for Tenant to fully recoup all amounts owed by Landlord to Tenant; and/or

(z)    terminate this Lease, without waiving its rights to damages for Landlord's Default, provided that: (1) Landlord's default materially interferes with the normal conduct of any business operations in the Premises, (2) Landlord's default is not reasonably capable of being cured by Tenant, and (3) subject to Section 18.02(b), Tenant gives notice of Landlord's default to any Mortgagee of whom Landlord shall have previously given Tenant notice (including its address), and such Mortgagee shall not have cured Landlord's default within the time period provided in Section 18.02(b).

Notwithstanding the foregoing, Tenant's right of offset under clause (y) above shall be limited to fifty percent (50%) of each installment of Annual Minimum Rent next becoming due unless insufficient Term remains to fully recoup the amounts owed by Landlord to Tenant on the amounts expended by Tenant, together with interest as provided above, in which event the amount of Tenant's offset shall be increased so that Tenant is able to fully recoup all such amounts expended by Tenant, together with interest as aforesaid, prior to the expiration of the Term.

(b)    If a Mortgagee shall have notified Tenant in writing that it is the holder of such lien on the Shopping Center and shall so request, then Tenant shall give a similar notice to such Mortgagee and such Mortgagee shall have the same time period allowed to Landlord under this Lease to correct or remedy such default.

(c)    Tenant shall also be entitled to all other rights and remedies available to Tenant at law, in equity or otherwise, except as otherwise expressly set forth in this Lease. Tenant expressly waives any right to recover consequential, punitive or exemplary damages as a result of a Landlord default or any other act or omission of Landlord.

(d)    Notwithstanding the foregoing, if, in Tenant's reasonable judgment, a condition posing imminent risk of liability or material harm to persons or property or material disruption to the normal conduct of any business operations in the Premises shall exist, then Tenant may exercise, at its election and without prior notice to Landlord, any or all of the remedies set forth in clauses (w) and (y) above.

SECTION 18.04  Additional Tenant Self-help, Equitable and Legal Remedies Due to Construction Delays by Landlord.  If Landlord defaults at any time in the timely completion of any component of Landlord's Work (including, without limitation, Delivery of the Land), except for minor immaterial matters not affecting Tenant, and Landlord does not cure such default within five (5) days after notice thereof by Tenant, then Tenant shall have the right, but not the obligation, to:

(a)    perform, at Landlord's sole cost and expense, all or any part of Landlord's Work. If and to the extent that Tenant exercises its right under this Section 18.04(a), Landlord agrees to reasonably cooperate in good faith and provide Tenant with reasonable assistance so that Tenant can complete such portions of Landlord's Work. Landlord hereby grants Tenant the right, as its agent, to directly contact and contract with Landlord's contractors, on behalf of Landlord, to complete such work, all at Landlord's cost and expense. Landlord covenants, upon

Tenant's request, to provide Tenant with duplicate sets of all plans, specifications and contracts prepared in connection with the construction of the Shopping Center, as well as schedules of all contractors, subcontractors and suppliers.  Landlord agrees to reimburse Tenant for any and all reasonable, documented out-of-pocket costs incurred by Tenant in connection with any portion of Landlord's Work which Tenant completes within ten (10) business days after receipt of request therefor from Tenant, which request shall be reasonably supported by invoices and written description of Landlord's Work performed.  If Landlord does not timely reimburse Tenant as contemplated above, then Tenant shall be entitled to deduct the costs of such work from Rent, together with interest at the Default Rate from the date of expenditure by Tenant, until paid in full; or

        (b)     seek injunctive relief, specific performance or other equitable remedies against Landlord to require Landlord to perform its obligations under this Lease (including, without limitation, the Site Design Requirements), the costs of which litigation shall be borne by Landlord including, without limitation, attorneys' fees and court's costs

        (c)     seek legal remedies available to Tenant, the costs of which shall be borne by Landlord, including, without limitation, attorneys' fees and court costs.

     SECTION 18.05  <u>Additional Tenant Remedies Due to Landlord's Failure to Pay the Landlord Reimbursement</u>.

        (a)     If Landlord fails to pay the Landlord Reimbursement in full on or before its due date, then Landlord shall be in default under this Lease, and no Rent shall be due or owing to Landlord until the Landlord Reimbursement is paid to Tenant, together with interest which shall accrue on the unpaid Landlord Reimbursement at the Default Rate commencing on the thirty-first (31st) day following the date Tenant submits all items required as a condition precedent to the Landlord Contribution until the date of payment of the Landlord Reimbursement.  However, if Landlord has not tendered payment of the Landlord Reimbursement and interest by that date which is one (1) year from Substantial Completion (the "Substantial Completion Anniversary"), then (i) such date shall become the Commencement Date; (ii) Annual Minimum Rent shall be reduced to ground rent equal to Fifty Thousand and No/100 Dollars ($50,000.00) per annum during the Term; and (iii) this Lease shall be converted to a ground lease, with ownership of the Building remaining with Tenant, and Landlord's and any Mortgagees' names being removed as additional insureds or mortgagees on any casualty insurance described in Section 11.02.  Landlord and Tenant covenant and agree that upon the reasonable written request of either Tenant or Landlord, Landlord and Tenant shall execute such documentation as necessary to formalize the conversion of this Lease to a ground lease upon the Substantial Completion Anniversary.

        (b)     At any time following the Substantial Completion Anniversary and upon thirty (30) days prior notice, Tenant shall have the right at Tenant's sole election, but not the obligation, in lieu of the requirement that Landlord pay to Tenant the Landlord Reimbursement, to mortgage, sell, convey, assign, lease or otherwise encumber (collectively, a "Financing Transfer") Tenant's interest in the Building and this Lease.  Landlord covenants to (i) execute all documents necessary to permit Tenant to effect the Financing Transfer described herein, and (ii) cause any Mortgagee to specifically acknowledge the rights of Tenant's lender and third

parties arising as a result of such Financing Transfer. Notwithstanding such Financing Transfer, Tenant shall continue to pay the ground rentals described in Section 18.05(a) during the remainder of the Term.

SECTION 18.06 Waiver; Non-Exclusive Remedies. The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on any matters arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, and/or any claim of injury or damage. Tenant hereby expressly waives any and all rights of redemption granted by or under any present of future law if this Lease is terminated or Tenant is evicted or dispossessed by reason of violation by Tenant of any of the provisions of this Lease. Except as otherwise expressly set forth in this Lease, no right or remedy herein conferred upon or reserved to Landlord or Tenant is intended to be exclusive of any other right or remedy in this Lease or by law or in equity provided, but each shall be cumulative and in addition to every other right or remedy given in this Lease or now or hereafter existing at law or in equity or otherwise.

## ARTICLE XIX

## SUBORDINATION, TRANSFER OF INTEREST

SECTION 19.01 Subordination. Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any first mortgage or deed of trust for the benefit of any Mortgagee hereafter encumbering or affecting all or any portion of the Shopping Center, as well as to any future ground or underlying leases encumbering or affecting all or any part of the Shopping Center; provided, however, that (a) each Mortgagee shall first execute and deliver to Tenant a subordination, non-disturbance and attornment agreement in substantially the form attached as Exhibit J hereto or another form customarily used by Mortgagee provided such form is reasonably acceptable to Tenant, in recordable form, and (b) any Ground Lessor shall execute (and shall obtain the written consent of any Mortgagee) and deliver to Tenant a fee owner recognition agreement in a form reasonably satisfactory to Tenant, which shall include the following provisions: (i) the Ground Lessor will not, in the exercise of any of the rights arising or which may arise out of such lease, disturb or deprive Tenant in or of its possession or its rights to possession of the Premises or of any right or privilege granted to or inuring to the benefit of Tenant under this Lease; (ii) in the event of the termination of the Ground Lease (as defined below), Tenant shall not be made a party in any removal or eviction action or proceeding, nor shall Tenant be evicted or removed of its possession or its right of possession of the Premises, and this Lease shall continue in full force and effect as a direct lease between the Ground Lessor and Tenant for the remainder of the Term and on the same terms and conditions as contained herein, without the necessity of executing a new lease; and (iii) Landlord and Tenant shall have the right to execute any amendment to this Lease which is specifically required hereunder and the Ground Lessor shall recognize and be bound thereto. "Ground Lessor" shall mean the landlord under any existing or future ground or underlying lease(s) affecting all or any part of the Shopping Center (such ground or underlying lease(s) is referred to as the "Ground Lease(s)"). "Mortgagee" shall mean any state or federally regulated bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender, which is not an Affiliate of Landlord, and which holds a mortgage on the Shopping

Center or is the beneficiary under a deed of trust encumbering the Shopping Center (such mortgage or deed of trust is referred to as the "Mortgage").

SECTION 19.02  Existing Mortgages and Ground Leases.  If a Mortgage or any Ground Lease encumbers the Shopping Center or any part thereof on the Effective Date, then, no later than ten (10) days following execution of this Lease, Landlord shall deliver to Tenant, in recordable form: (a) a subordination, non-disturbance and attornment agreement substantially in the form attached as Exhibit J, in recordable form or another form customarily used by Mortgagee provided such form is reasonably acceptable to Tenant, executed by each and every Mortgagee, and (b) a fee owner recognition agreement in the form and content described in Section 19.01(b), in recordable form, executed by any Ground Lessor (and, as may be required, consented to by the Mortgagee).  Should Landlord fail to so deliver such instrument(s) as provided above, Tenant shall have the right, by notice given to Landlord at any time prior to the date on which such instrument(s) are delivered, to terminate this Lease without further liability on the part of Landlord or Tenant, except: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) Landlord shall (which obligation shall survive the termination of this Lease), within three (3) business days following Tenant's termination notice, reimburse Tenant for all its reasonable, third-party costs and expenses incurred in connection with this Lease (including, without limitation, costs associated with the preparation and review of plans and specifications, the performance of Tenant's Work, and attorneys' fees), not to exceed Seventy-Five Thousand Dollars ($75,000).

SECTION 19.03  Transfer of Interest.  Landlord shall provide Tenant with notice upon or immediately after any sale or transfer of Landlord's interest in the Shopping Center.  Landlord shall require the buyer or transferee to assume in writing all of the obligations of Landlord under this Lease.  Notwithstanding Section 23.13, Landlord shall continue to remain liable for all accrued liability, if any, up to the date of such sale or transfer.  Notwithstanding anything contained herein to the contrary, Landlord shall continue to remain liable hereunder after such sale or transfer unless the buyer or transferee has expressly assumed in writing all of the obligations of Landlord under this Lease arising from and after the date of such assignment.

SECTION 19.04  Tenant Estoppel Certificates.  Tenant agrees, within twenty (20) days of Landlord's request, to execute and deliver to Landlord or any Mortgagee, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Tenant's actual knowledge and belief that the Landlord is not in default under this Lease, and that there are no offsets or defenses to enforcement of this Lease, except as may be stated in the certificate, and (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid.

SECTION 19.05  Landlord Estoppel Certificates.  Landlord agrees, within twenty (20) days of Tenant's request, to execute and deliver to Tenant or any assignee, transferee, subtenant or Lender, on a form prepared by or on behalf of the party so requesting, an estoppel certificate (a) ratifying this Lease and confirming that there are no modifications or amendments to this Lease, except as may be stated in the certificate, (b) confirming the commencement and expiration dates of this Lease, (c) certifying to Landlord's actual knowledge and belief that

Tenant is not in default under this Lease, and that there are no offsets or defenses to enforcement of this Lease, except as may be stated in the certificate, and (d) stating the date through which Annual Minimum Rent and other charges payable by Tenant have been paid.

SECTION 19.06  Payments.  If Landlord shall request Tenant to execute more than one (1) subordination, attornment and recognition agreement or more than one (1) estoppel certificate in any twelve (12) month period (except during the first Lease Year, in which time period two (2) estoppel certificates shall be permitted free of charge), then, as a condition to Tenant's obligations under Sections 19.01 or 19.04, as the case may be, Landlord shall pay to Tenant One Thousand Dollars ($1,000) for each subsequent request for a subordination, attornment and recognition agreement or an estoppel certificate within such twelve (12) month period.  If Tenant shall request Landlord to execute more than one (1) estoppel certificate in any twelve (12) month period, then, as a condition to Landlord's obligations under Section 19.05, Tenant shall pay to Landlord One Thousand Dollars ($1,000) for each subsequent request for an estoppel certificate within such twelve (12) month period.

## ARTICLE XX

## LANDLORD'S REPRESENTATIONS, WARRANTIES AND COVENANTS

SECTION 20.01  Quiet Enjoyment.  So long as Tenant is not in default hereunder beyond any applicable notice or cure period, Landlord covenants and agrees that Tenant, during the Term, shall freely, peacefully, and quietly occupy and enjoy the use and possession of the Premises without disturbance, molestation, hindrance or ejectment of any kind whatsoever from anyone claiming by, through or under Landlord, but not otherwise, subject to the Permitted Exceptions.

SECTION 20.02  Representations. Warranties and Covenants.  In order to induce Tenant to execute this Lease and in consideration thereof, Landlord covenants, warrants and represents to Tenant as follows:

(a)      As of the Effective Date and as of the Possession Date, Landlord, Bank of America, N.A. and/or one or more of the Key Tenants collectively own or will own the fee simple title to the Shopping Center free and clear of all easements, restrictions, liens, encumbrances, leases and the like, except as described on Exhibit K (the "Permitted Exceptions"); that the Shopping Center, as of the Possession Date, will not be subject to the lien of any Mortgage (except such instruments where the lienor has entered into an agreement in favor of Tenant, as described in Sections 19.01 and 19.02); that Landlord has the full power, right and authority to make this Lease for the Term without the consent, joinder, or approval of any other party; and that Landlord will put Tenant into complete and exclusive possession of the Premises free from all orders, restrictions, covenants, agreements, leases, easements, laws, codes, ordinances, regulations or decrees (including, without limitation, the Permitted Exceptions) which would, in any way, prevent or inhibit the use of the Premises for the initial use as a Circuit City electronics store as contemplated by this Lease, or prevent or restrict the use of the Common Areas or limit ingress and egress to and from US Hwy 190 and FM 2410, the public thoroughfares shown on the Site Plan, by Tenant, its agents, employees or invitees.

(b)　　The Shopping Center shall, at the time of commencement of construction by Landlord, be properly zoned for the operation and maintenance of a store similar to other stores operated by Tenant as a Circuit City electronics store and for its contemplated use.

(c)　　As of the Effective Date there is no Affiliated Land in existence and as of the Possession Date there will not be any Affiliated Land in existence (or, if there shall be Affiliated Land in existence, Landlord shall promptly notify Tenant thereof and promptly execute any recordable instrument reasonably requested by Tenant which memorializes the provisions of this Lease pertaining to or otherwise affecting Affiliated Land).

SECTION 20.03  Site Covenants.  In order to induce Tenant to enter into this Lease, Landlord covenants to Tenant as follows (the "Site Covenants"):

(a)　　Landlord shall not construct (or permit to be constructed) any buildings or other vertical improvements in the area identified on the Site Plan as the "No-Build Area" (the "No-Build Area").

(b)　　Except as shown on the Site Plan, Landlord shall not construct (or permit to be constructed) within Phase I any projections either vertical or horizontal (other than Tenant's signs or identifications) which will project along the front or rear of the building in which the Premises are situated in such a manner as to obstruct the view of Tenant's signs or its store front from the Common Area or public roads abutting the Shopping Center in any manner other than as shown on the Site Plan

(c)　　The number of paved, full-size parking spaces in Phase I shall be the greater of (i) the ratio listed in Section 1.01(M) or (ii) the amount of spaces required by Laws (without variance), and, without limiting the generality of the foregoing, the number of spaces contained in Tenant's Preferred Area shall be the same number of spaces as shown on the Site Plan.

(d)　　Landlord shall not erect (or permit to be erected) ) any building or other structures (including, without limitation, kiosks) in any outparcels shown on the Site Plan except as and where shown on the Site Plan, and all outparcel buildings constructed shall (i) not be exceed a height of thirty (30) feet above the finished floor of the Premises (inclusive of all of such outparcel buildings' roof top mechanicals, all projections and all architectural treatments and embellishments), (ii) not exceed the Floor Area shown on the Site Plan, (iii) satisfy all parking requirements (without variance) using the parking spaces located within each such outparcel, and (iv) be used solely for retail purposes.

(e)　　Except as permitted in the OEA, Landlord shall not use (or permit the use of) all or any portion of the Common Areas for retail sales or for promotional purposes, subject to Tenant's rights under Section 2.01(c).

(f)　　Landlord shall not make (and shall not permit there to be made) any changes to those Common Areas identified as "Tenant's Preferred Area" on the Site Plan, including, without limitation, changes in the location of curbcuts, drive aisles, entrances, access points, roadways, sidewalks or parking spaces or reduction of the parking ratio specified in Section 20.03(c), without Tenant's consent, which may be withheld in Tenant's sole discretion.

Landlord shall not make (and shall not permit to be made) any other changes to the Common Areas of Phase I which adversely affects Tenant's access to the Premises or Phase I or the visibility of the Premises or of any of Tenant's signage, without Tenant's consent, which may be withheld in Tenant's sole discretion. Any other changes to the Common Areas may be made without Tenant's consent. Changes required by governmental authorities shall be an exception to the foregoing, so long as same is not the result of changes within the Shopping Center requested or permitted by Landlord.

(g)     Subject to the rights of Cinemark under its existing lease, following Tenant's opening for business at the Premises, (a) Landlord shall control any noise and dust at the Shopping Center (including, without limitation, during any periods of permitted construction within the Shopping Center) such that neither unreasonably interferes with the normal operation of Tenant's business, and (b) Landlord shall not perform (and shall not permit there to be performed) construction of buildings within Phase I during the months of October, November, December and January, except to the extent permitted under Section 5.01.

(h)     Subject to the rights of Cinemark under its existing lease, Landlord shall not permit any solicitation, distribution of handbills, picketing, or other public demonstration in the Common Areas, except as otherwise may be mandated by Laws.

(i)     Subject to the rights of Cinemark under its existing lease, no transmission and/or reception towers for wireless telephone or internet communications shall be permitted within the Shopping Center.

(j)     Subject to the rights of Cinemark under its existing lease, Landlord shall not knowingly install or permit to be installed by any other tenant or other person anywhere in the Shopping Center any structure or equipment which would cause any material interference with satellite, radio, telecommunications or television reception or transmission in or from the Building.

SECTION 20.04  OEA.

(a)     The term "OEA" shall mean that certain Operation and Easement Agreement by and between Target Corporation and Market Heights, Ltd., dated as of December 5, 2005 recorded in the Office of Bell County, Texas, a copy of which has been delivered to Tenant.

(b)     Landlord covenants, represents and warrants to Tenant that: (i) the OEA has not been modified, amended or terminated; (ii) the OEA is currently in full force and effect; (iii) to its actual knowledge as of the Effective Date, no default under the OEA exists beyond any applicable notice and cure period; and (iv) the OEA is, and shall remain, superior in lien to all mortgages and related liens affecting the Shopping Center and all other land which is encumbered by the OEA. Landlord and Tenant each acknowledge that this Lease is made and shall continue to be subject and subordinate to the OEA, subject to the provisions of this Section 20.04. Tenant shall comply with the terms and conditions of the OEA to the extent same affects the Premises (it being agreed that Tenant shall not be obligated to expend any sums in connection with such compliance).

(c)    Landlord shall, during the Term: (i) perform and observe all of the terms, covenants, provisions and conditions of the OEA on Landlord's part to be performed and observed; (ii) defend, indemnify and hold harmless Tenant from and against any and all claims, demands, causes of action, suits, damages, liabilities, and expenses of any nature arising out of or in connection with the enforcement of, or a claimed breach by, Landlord of any covenant, term, condition, or provision of the OEA; and (iii) diligently enforce, at its sole expense, the covenants, agreements, and obligations of the OEA.

(d)    Whenever, pursuant to the OEA, the consent or approval of Landlord shall be required or requested, and such consent or approval could diminish the rights or increase the obligations of Tenant under the OEA or under this Lease, or could adversely affect Tenant's use or occupancy of the Premises, or the conduct of Tenant's business therein, such consent or approval shall not be granted without the prior consent of Tenant, which consent may be withheld in its sole and absolute discretion.

(e)    Landlord shall, immediately upon receipt, forward to Tenant and Tenant's leasehold mortgagee, if any, a copy of any and all notices and/or demands received by Landlord under or pursuant to the OEA, which relate to, or could adversely affect, Tenant's use or occupancy of the Premises, the conduct of Tenant's business therein, or Tenant's rights pursuant to this Lease.

(f)    Landlord shall not amend or modify (or permit an amendment to or modification of) the OEA if such amendment or modification could materially diminish the rights or increase the obligations of Tenant under the OEA or under this Lease (except as specifically permitted under the Lease), or could adversely affect Tenant's use or occupancy of the Premises or Tenant's Preferred Area or the conduct of Tenant's business therein, nor shall Landlord terminate the OEA.

(g)    In the event Landlord defaults in the performance of any of its obligations under the OEA or fails to enforce the obligations of any other obligee under the OEA, and such default or failure to enforce could adversely affect Tenant's rights under the OEA or under this Lease, Tenant's Work, Tenant's use or occupancy of the Premises or the conduct of Tenant's business therein, Tenant may, but shall not be obligated to, after thirty (30) days notice (except in the event of emergency posing an immediate threat to persons or property, in which case no notice shall be required) cure any default by Landlord under the OEA and/or enforce, in its own name, at Landlord's expense, the obligations of any other obligee under the OEA. Landlord shall, upon demand, reimburse Tenant for the reasonable documented out-of-pocket costs incurred by Tenant in performing any of Landlord's obligations under the OEA or enforcing the obligations of any obligee under the OEA, together with interest thereon at the Default Rate if not repaid within thirty (30) days following written demand.

(h)    As between Landlord and Tenant, in the event of any conflict between the OEA and this Lease, this Lease shall in all respects control.

(i)    Landlord represents and warrants that no third-party approvals are required under the OEA to enter into this Lease or perform Landlord's obligations hereunder, which will prevent Landlord from performing its obligations hereunder or diminish the rights of Tenant granted hereunder.

(j)    Landlord hereby warrants, covenants and represents to Tenant that Landlord shall not assign its rights as an "Approving Party" under the OEA separate and apart from its interest as Landlord under this Lease. Landlord further warrants, covenants and represents to Tenant that any assignment of its rights as an Approving Party under the OEA shall be set forth in a written instrument.

(k)    Landlord shall obtain the Target letter described in Section 2.01(c) on or before execution of this Lease.

## ARTICLE XXI

## HOLDING OVER

SECTION 21.01  Holding Over.  If Tenant remains in possession of the Premises after the expiration of the Term without having duly exercised its right, if any, to extend or further extend the Term, such continuing possession shall create a month-to-month tenancy on the terms herein specified and such tenancy may be terminated at the end of any month thereafter by either party by giving at least thirty (30) days notice thereof to the other party. During such holdover and provided that Landlord has not otherwise agreed in writing, Tenant shall be liable for Annual Minimum Rent on a monthly basis (or, if applicable, on a prorated daily basis) in an amount equal to one hundred twenty-five percent (125%) of the amount thereof payable by Tenant for the month immediately preceding the last day of the Term, as well as for all Additional Rent payable by Tenant under this Lease.

## ARTICLE XXII

## NOTICE

SECTION 22.01  Where and How Given.  All notices or demands which either party hereto either is required to or may desire to serve upon the other shall be in writing and shall be sufficiently served upon such other party, by (a) mailing a copy thereof by certified or registered mail, postage prepaid, return receipt requested, addressed to the party to whom the notice is directed at the "Notice Address" of such party, or (b) by a reliable overnight courier (such as Federal Express), all charges prepaid, furnishing a receipt upon delivery, and addressed to the party to whom the notice is addressed at the Notice Address of the party. The Notice Address of each party is:

a) Landlord:              Market Heights, Ltd
                          301 S. Congress
                          Austin, Texas  78701
                          Attention:  Jon Andrus

b) Tenant:                Circuit City Stores, Inc.
                          9950 Mayland Drive
                          Richmond, Virginia 23233
                          Attention: Vice President of Real Estate

with a copy to:                    Circuit City Stores, Inc.
                                   9950 Mayland Drive
                                   Richmond, Virginia 23233
                                   Attention:  General Counsel

with a copy to:                    Kostas & Birne, LLP
                                   530 One Turtle Creek Village
                                   3878 Oak Lawn Avenue
                                   Dallas, Texas 75219
                                   Attention:  Pamela G. Kostas

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

SECTION 22.02  When Given.  Unless otherwise provided for herein, notice shall be deemed to have been served at the earlier of the date received, refused or returned as undeliverable.  However, if such notice pertains to the change of address of either of the parties hereto, then such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given.

## ARTICLE XXIII

## MISCELLANEOUS

SECTION 23.01  Rent Proration.  If this Lease is terminated prior to its natural expiration date for any reason other than a Tenant default, then Landlord shall promptly reimburse Tenant for any Rent prepaid by Tenant for periods subsequent to such termination date.  This Section 23.01 shall survive the termination of this Lease.

SECTION 23.02  Construction.  In construing this Lease, feminine or neuter pronouns shall be substituted for those masculine in form and vice versa, and plural terms shall be substituted for singular and singular for plural in any place in which the context so requires.  This Lease shall be construed without regard to: (a) the identity of the party who drafted the various provisions hereof, and (b) the addition or deletion of text made during the negotiation of this Lease.  Moreover, each and every provision of this Lease shall be construed as though all parties hereto participated equally in the drafting thereof.  As a result of the foregoing, any rule or construction that a document is to be construed against the drafting party shall not be applicable hereto.

SECTION 23.03  Section Headings.  The section headings in this Lease are for convenience only and do not in any way limit or simplify the terms and provisions of this Lease, nor should they be used to determine the intent of the parties.

SECTION 23.04  Partial Invalidity.  If any term, covenant, condition or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, then the remainder of this Lease or the application of such term or provision to

persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term, covenant, condition and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 23.05  Waiver.  The failure of either party to seek redress for violation of, or to insist upon strict performance of, any term, covenant or condition contained in this Lease shall not prevent a similar subsequent act from constituting a default under this Lease.

SECTION 23.06  Governing Law.  This Lease shall be governed and construed in accordance with the laws of the State.

SECTION 23.07  Successors and Assigns.  This Lease shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of Landlord and the successors and permitted assigns of Tenant.

SECTION 23.08  No Broker.  Landlord and Tenant represent to each other that no broker or person is entitled to any commission by reason of the negotiation and execution of this Lease, other than the Broker identified in Section 1.01(D), and Landlord agrees that Landlord shall be solely responsible for the fees and commissions of the Broker pursuant to the terms of a separate written agreement with such Broker.  Landlord and Tenant agree to indemnify, defend and hold each other harmless against any and all claims by any other person for brokerage commissions or fees arising out of any conversation, negotiations or other dealings held by the other party with any other broker regarding this Lease.

SECTION 23.09  Memorandum of Lease.  Landlord and Tenant agree to execute a Memorandum of Lease in recordable form, substantially similar to that attached as Exhibit L, setting forth such provisions for recordation as may be required by State law.  If so requested by Tenant, Landlord shall execute such Memorandum of Lease simultaneously with the execution of this Lease. Recording costs shall be borne by the party requesting recordation of same; however, any transfer taxes or other fees charged by any local or state governmental authorities in connection with such recordation shall be paid by Landlord.  The provisions of this Lease shall control with regard to any omissions from, or provisions which may be in conflict with, the Memorandum of Lease.

SECTION 23.10  Entire Agreement.  This instrument contains the entire and only agreement between the parties and no oral statements or representations or written matter not contained in this instrument shall have any force or effect.  This Lease shall not be amended or modified in any way except by a writing executed by both parties.  All of the exhibits attached to this Lease are incorporated into this Lease by reference and for all purposes are a part of this Lease.

SECTION 23.11  Relationship of Parties.  The relationship between the parties hereto is solely that of landlord and tenant and nothing in this Lease shall be construed as creating a partnership or joint venture between the parties hereto, it being the express intent of Landlord and Tenant that the business of Tenant on the Premises and elsewhere, and the good will thereof, shall be and remain the sole property of Tenant.

SECTION 23.12 Force Majeure. If either party hereto shall be delayed or hindered in, or prevented from, the performance of any act required under this Lease by reason of strikes, lockouts, labor troubles, failure of power, riots, insurrection, war or other reasons of a like nature beyond the reasonable control of the party delayed in performing works or doing acts required under the terms of this Lease (any such delay, hindrance or prevention is referred to as "Force Majeure"), then performance of such act shall be excused for the period of the delay, and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay, except as otherwise specifically provided herein to the contrary. The provisions of this Section 23.12 shall not be applicable to delays resulting from the inability of a party to obtain financing or to proceed with its obligations under this Lease because of a lack of funds.

SECTION 23.13 Limitation of Landlord's Liability. Except with respect to (a) insurance proceeds or condemnation awards received by Landlord which are required by the terms of this Lease to be applied to the repair or restoration of the Premises or the Shopping Center, (b) Landlord's failure to pay the Landlord Reimbursement in accordance with this Lease, and (c) any monies owed by Landlord to Tenant in connection with Landlord's default in performing Landlord's Work, Tenant shall, on and after the Commencement Date, look only to Landlord's estate and property in the Shopping Center (or the proceeds from the sale, financing or refinancing of all or any portion thereof) and net income derived from the Shopping Center following the date Landlord receives notice of a default from Tenant for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord hereunder, and no other property or assets of Landlord, its officers, directors, stockholders, members or partners shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease. Except with respect to the limitation on personal liability hereinabove set forth, the provisions of this Section 23.13 shall not be deemed or construed to limit Tenant's rights and remedies pursuant to this Lease or which may be available at law, in equity or otherwise. In no event shall Tenant be entitled to recover any consequential, punitive or exemplary damages, except with respect to violations relating to Hazardous Materials and Tenant's Exclusive Use Protection.

SECTION 23.14 Limitation of Tenant's Liability. Landlord, its successors and assigns, shall look solely to the assets, if any, of Tenant and its successors and assigns, for the satisfaction of any claim arising from or under this Lease and shall not seek to impose personal liability on any shareholder, officer, director, member or employee of Tenant or any of its Affiliates.

SECTION 23.15 Consents. Except as may be otherwise expressly set forth in this Lease, whenever under this Lease provision is made for either party's securing the consent or approval of the other party, (a) such consent or approval shall be in writing and shall not be unreasonably withheld, delayed or conditioned, and (b) in all matters contained herein, both parties shall have an implied obligation of reasonableness.

SECTION 23.16 Intentionally Omitted.

SECTION 23.17 Attorneys' Fees. In any action or proceeding hereunder (whether to enforce the terms and provisions of an indemnity or otherwise), the prevailing party shall be entitled to recover from the other party the prevailing party's reasonable out-of-pocket costs and

expenses in such action or proceeding, including reasonable attorneys' fees, costs and expenses. Except as otherwise set forth herein, if either party is sued by a third party as a result of a violation of a covenant, representation or warranty herein contained by the other party hereto, then the party who has violated the covenant, representation or warranty shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees, costs and expenses.

SECTION 23.18  Survival of Obligations.  The obligation to pay any sums due to either party from the other that by the terms herein would not be payable, or are incapable of calculation, until after the expiration or sooner termination of this Lease shall survive and remain a continuing obligation until paid.  All indemnity obligations under this Lease shall survive the expiration or earlier termination of this Lease.

SECTION 23.19  Joint and Several Liability.  If either party consists of more than one person, then the persons constituting such party shall be jointly and severally liable hereunder.

SECTION 23.20  Definition of Hereunder, Herein, etc..  Unless the context clearly indicates to the contrary, the words "herein," "hereof," "hereunder," "hereafter," and words of similar import refer to this Lease and all of the Exhibits attached hereto as a whole and not to any particular section, subsection, or paragraph hereof.

SECTION 23.21  Tenant's Trade Name.  Landlord shall not make use of Tenant's trade name (i.e., "Circuit City"®) in any advertising or marketing material including, without limitation, on any internet website, without obtaining Tenant's prior written approval, which may be withheld in Tenant's sole and absolute discretion.  Notwithstanding the foregoing, Landlord may use Tenant's trade name on Landlord's website and in informational brochures, but only for the purposes of identifying Tenant as a tenant of the Shopping Center.

SECTION 23.22  Counterparts.  This instrument may be executed in several counterparts, each of which shall be deemed an original.  The signatures to this instrument may be executed and notarized on separate pages, and when attached to this instrument, shall constitute one complete document.

SECTION 23.23  Entry by Landlord. Landlord, its agents, employees and contractors may enter the Premises at any time in response to an emergency and at reasonable hours with no less than forty eight (48) hours notice to Tenant  to:  (a) inspect the Premises; (b) exhibit the Premises to prospective purchasers, lenders, or during the last twelve (12) months of the term, to prospective tenants; (c) determine whether Tenant is complying with all its obligations in the Lease; or (d) make repairs required of Landlord under the terms of this Lease; however, all such work shall be done during hours when Tenant is not open for business and only with a representative of Tenant present at the Premises, and so as to cause as little interference to Tenant as reasonably possible.

[Signature page follows]

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be duly executed and delivered in their respective names as of the date first above written.

LANDLORD:

**MARKET HEIGHTS, LTD.,** a Texas limited partnership

By: Market Heights Developers, Ltd., a Texas limited partnership, its general partner

By: DEVCO GP, Inc., a Texas corporation, its general partner

Date: 4/23/07

By:

Name:

Title: VP

TENANT:

**CIRCUIT CITY STORES, INC.**, a Virginia
corporation

Date: _____

By: _____

John B. Mulleady
Vice President, Real Estate and Construction

Approved for Signature:

Tenant's counsel:

Pamela G. Kostas
Kostas & Birne, LLP
530 One Turtle Creek Village
3878 Oak Lawn Avenue
Dallas, Texas 75219

_____ Responsible Atty.

_____ RE Manager

## EXHIBIT A

### Site Plan

Premises – crosshatched, with Floor Area and frontage thereof (Section 1.01P)
All buildings within the Shopping Center and Floor Area thereof (Section 1.01S)
Customer Pick-Up Areas (Section 2.01(c))
Car Stereo Parking Areas (Section 2.01(c))
Trash Compactor Area (Section 2.01(c))
Web Order Pick-Up Parking Spaces (Section 2.01(c))
Transformer Pad Area (Section 2.01(c))
Tenant's Preferred Area (Section 2.01(c)) - parking field and drive aisles
Staging Area (Section 3.01)
Construction Drive (Section 5.02(b))
Primary Restoration Area (Section 12.01(a))
Pylon Sign(s) (Section 15.02)
Public Thoroughfares (Section 20.02(a))
No Build Area (Section 20.03(a))
Parking Spaces In Tenant's Preferred Area (Section 20.03(c))
Landlord's permitted outparcel build-out area (Section 22.03(d))
Tenant's Trailer (Section E of Exhibit C)
Phase I (Section 12.01) - Circuit City area
Phase II (Section 12.01)







Loading Area

Transformer Area and Trash Compactor

LEGEND

Public Road

Land Lord Permitted Out Parcel Building
Limit with Height Limitation of 30'

Web Order (4 spaces)

Staging Area (20,000 SF)

Tenant Promotion Area

Cart Corrals (4)

Premises Hatched

40' Pylon Signs

6 Car Stereo Parking Spaces

Customer Pick Up Lane

Tenant's Construction Access

Construction Drive

Phase One

Phase Two

BUILDING  AREA

## EXHIBIT B

### Legal Description of the Shopping Center

TRACT 1

BEING all that certain lot, tract or parcel of land situated in the Martha Smith Survey, Abstract No. 750, Bell County, Texas, and being a part of that certain 38.8782 acre tract conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas, and also being part of the 31.7219 acre property conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas, same being a part of Lot 1 of Block 1 of Norris Crossing, an addition to the City of Harker Heights, Bell County, Texas, according to the plat thereof recorded in Cabinet "C" at Slide 127-B of the Plat Records of Bell County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a 3/8" iron rod found at the intersection of South right-of-way line of Indian Oaks Drive (120 foot right-of-way) and the East right-of-way line of Forest Hills Drive, same being the Northwest corner of said 38.8782 acre Market Heights, Ltd., property;

THENCE South 79° 06' 57" East (Basis of Bearing per deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas) along the South right-of-way line of said Indian Oaks Drive and common to the North line of said 38.8782 acre Market Heights property for a distance of 193.03 feet to a 3/8" iron rod found for corner and being the beginning of a curve to the right having a radius of 1195.01 feet with a central angle of 24° 32' 57", and a chord bearing South 66° 42' 41" East at a distance of 508.11 feet;

THENCE Southeasterly along the South right-of-way line of said Indian Oaks Drive and along said curve to the right for an arc distance of 512.02 feet to a 3/8" iron rod found for corner and being the beginning of a curve to the left having radius of 2096.37 feet with a central angle of 13° 14' 08" and a chord bearing South 61° 11' 06" East at a distance of 483.19 feet;

THENCE Southeasterly along the arc of said curve to the left and continuing along the South right of way line of Indian Oaks Drive for an arc distance of 484.27 feet to a 5/8" iron rod set for the Northwest corner of a 9.9357 acre tract of land conveyed to Target Corporation by deed recorded in County Clerks File Number 2006-00056422 of the Deed Records of Bell County, Texas;

THENCE South 17° 24' 32" West and departing the South right of way line of Indian Oaks Drive and following along the West line of said Target Corporation 9.9357 acre tract for a distance of 153.81 feet to a 5/8" iron rod set for corner;

THENCE South 72° 35' 28" East and continuing along the West line of said Target Corporation 9.9357 acre tract for a distance of 12.50 feet to a 5/8" iron rod set for corner;

THENCE South 17° 24' 32" West and continuing along the West line of said Target Corporation 9.9357 acre tract for a distance of 292.98 feet to a 5/8" iron rod set for corner;
THENCE South 72° 35' 28" East and continuing along the West line of said Target Corporation 9.9357 acre tract for a distance of 2.25 feet to a 5/8" iron rod set for corner;

THENCE South 17° 24' 32" West and continuing along the West line of said Target Corporation 9.9357 acre tract for a distance of 380.85 feet to a 5/8" iron rod set for corner, said point being the beginning of a curve to the right having a central angle of 51° 46' 56" with a radius 45.00 feet and a chord bearing South 43° 18' 00" West at a distance of 39.30 feet;

THENCE Southwesterly along said curve to the right and following along the West line of said Target Corporation 9.9357 acre tract for an arc distance of 40.67 feet to a 5/8" iron rod set for corner;

THENCE South 69° 11' 28" West and following along the West line of said Target Corporation 9.9357 acre tract for a distance of 196.48 feet to a 5/8" iron rod set for corner;

H:\44050056-Killeen (Harker Heights, TX)\Lease Ver 9.DOC