THENCE South 20° 48' 32" East and continuing along the West line of said Target Corporation 9.9357 acre tract for a distance of 373.17 feet to a 5/8" iron rod set for corner in the North right of way line of U.S. Highway 190;

THENCE South 75° 57' 02" West along the North right-of-way line of said U.S. Highway 190 for a distance of 300.92 feet to a concrete highway monument found for corner;

THENCE South 82° 56' 28" West, continuing along the south line of said Lot 1 and the common north right-of-way line of said U.S. Highway 190, for a distance of 837.52 feet to a concrete highway monument found for corner;

THENCE North 88° 19' 11" West, continuing along the south line of said Lot 1 and the common north right-of-way line of said U.S. Highway 190 for a distance of 152.93 feet to a 5/8" iron rod set for the Southeast corner of a 1.1666 acre tract of land conveyed to Bank of America, N.A., and recorded in County Clerks File Number 2006-00056425;

THENCE North 01° 41' 32" East and departing the North right of way line of said U.S. Highway 190 for a distance of 265.00 feet to the Northeast corner of said 1.1666 acre tract;

THENCE North 88° 19' 11" West along the North line of said 1.1666 acre tract for a distance of 164.26 feet to a 5/8" iron rod set for corner;

THENCE North 84° 56' 09" West and continuing along the North line of said 1.1666 acre tract for a distance of 27.54 feet to the Northwest corner of said 1.1666 acre tract;

THENCE South 01° 40' 49" West for a distance of 265.46 feet to a 5/8" iron rod set for the Southwest corner of said 1.1666 acre tract and being in the North right of way line of said U.S. Highway 190;

THENCE North 84° 56' 09" West and continuing along the South line of said Lot 1 and the common North right-of-way line of said U.S. Highway 190 for a distance of 180.02 feet to a 3/8" iron rod found for corner, said point being the Southeast corner of Lot 2 of Block 1 of aforementioned Norris Crossing addition;

THENCE North 08° 03' 49" West and departing the North right-of-way line of said U.S. Highway 190 and along the common line of said Lot 1 and Lot 2 of Block 1 of aforementioned Norris Crossing Addition for a distance of 171.52 feet to a 3/8" iron rod found for corner;

THENCE North 60° 05' 09" West along the North line of said Lot 2 of Block 1 of aforementioned Norris Crossing Addition for a distance of 249.98 feet to a 3/8" iron rod found for the Northwest corner of said Lot 2 of Block 1 of Norris Crossing addition;

THENCE South 54° 41' 33" West along the West line of said Lot 2 of Block 1 of aforementioned Norris Crossing Addition for a distance of 164.81 feet to a 3/8" iron rod found for the Southwest corner of said Lot 2 of Block 1, same being in the Northeast right-of-way line of F. M. Highway No. 2410, said point being the beginning of a curve to the left having a radius of 1192.92 feet with a central angle of 05° 09' 28" and a chord bearingNorth 39° 30' 33" West at a distance of 107.35 feet;

THENCE Northwesterly along the Northeast line of said F. M. Highway No. 2410 and common to the lot line of aforementioned Lot 1 of Block 1, and said curve to the left, for an arc distance of 107.39 feet to a 3/4" iron rod found for the Southwest corner of aforementioned Lot 1 of Block 1 of Norris Crossing addition;

THENCE North 14° 14' 28" East and departing the Northeast line of said F. M. Highway No. 2410 and along the Westerly line of aforementioned Lot 1 of Block 1 of Norris Crossing Addition for a distance of 143.37 feet to a 3/8" iron rod found for corner in the South line of a 1.128 acre tract of land described in a deed to Louis W. and Sherry L. Rafford, recorded in Volume 4658, Page 258, Deed Records of Bell County, Texas;

THENCE South 73° 41' 52" East along the South line of said 1.128 acre tract for a distance of 142.84 feet to a 3/8" iron rod found for the Southeast corner of said 1.128 acre tract and the common corner of aforementioned Lot 1 of Block 1 of Norris Crossing addition;

THENCE North 16° 30' 40" East along the East line of said 1.128 acre tract and common to the Westerly line of aforementioned Lot 1 of Block 1 of Norris Crossing addition for a distance of 234.40 feet to a 3/8" iron rod found for the Southwest corner of a1.523 acre tract of land conveyed to Frank Roberts and Judy Roberts by Deed recorded in Volume 3610 at Page 794 of the Deed Records of Bell County, Texas;

THENCE South 72° 37' 24" East along the common line of said 1.523 acre tract and Lot 1 of Block 1 of Norris Crossing Addition for a distance of 150.11 feet to a 3/8" iron rod found for the Southeast corner of said 1.523 acre tract;

THENCE North 16° 32' 18" East along the East line of said 1.523 acre tract for a distance of 444.03 feet to a 3/8" iron rod found for the Northwest corner of aforementioned Lot 1 of Block 1 of Norris Crossing addition, said point being in the South line of a tract of land conveyed to Robert Thompson & Alma Thompson Revocable Trust by Deed recorded in Volume 3131 at Page 767 of the Deed Records of Bell County, Texas;

THENCE South 72° 14' 59" East along the North line of said Lot 1 of Block 1 of Norris Crossing Addition and common to the South line of said Robert Thompson & Alma Thompson Revocable Trust tract and passing the Southeast corner of said Robert Thompson & Alma Thompson Revocable Trust tract recorded in Volume 3131 at Page 767 and common to the Southwest corner of a2.247 acre tract land described in a Quitclaim Deed to Robert Thompson & Alma Thompson Revocable Trust, recorded in Volume 3131 and Page 765 of the Deed Records of Bell County, and continuing along said 2.247 acre Robert Thompson & Alma Thompson Revocable Trust tract, for a distance of 471.19 feet to a ½" iron rod found for the Southeast corner of said 2.247 acre Robert Thompson and Alma Thompson Revocable Trust tract and the common Southwest corner of a38.8782 acre tract of land conveyed to Market Heights, Ltd., by County Clerks File Number 2006-00056421

THENCE North 04° 07' 33" East along the East line of said 2.247 acre Robert Thompson and Alma Thompson Revocable Trust tract and common to the West line of said 38.8782 acre Market Heights, Ltd. tract, for a distance of 438.19 feet to a 60d nail found for the Northeast corner of said 2.247 acre Robert Thompson & Alma Thompson Revocable Trust tract and common to the corner of said 38.8782 acre Market Heights, Ltd.,tract, said point being in the South line of Lot 3 of Block 12 of Forest Hills Addition, an addition to the City of Harker Heights, Bell County Texas as recorded in Cabinet A at Slide 203-B of thePlat Records of Bell County, Texas;

THENCE South 73° 23' 46" East along the South line of said Lot 3 of Block 12 of the Forest Hills Addition, for a distance of 32.69 feet to a 3/8" iron rod found for the Southeast corner of said Lot 3 of Block 12 of the Forest Hills Addition;

THENCE North 27° 07' 05" East along the common line of said 38.8782 acre Market Heights, Ltd., tract and said Lot 3 of Block 12, Forest Hills Addition, passing the northeast corner of said Lot 3 of Block 12, Forest Hills Addition, and along the east right-of-way line of Forest Hills Drive, for a distance of 662.72 feet to the POINT OF BEGINNING AND CONTAINING 58.271 ACRES OF LAND, more or less.

TRACT 2

BEING all that certain lot, tract or parcel of land situated in the Martha Smith Survey, Abstract No. 750, Bell County, Texas, and being a part of that certain 38.8782 acre tract conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas, and also being part of the 12.1229 acre tract of land conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056420 of the Deed Records of Bell County, Texas, and also being a part of Lot 1 of Block 1 of Norris Crossing, an addition to the City of Harker Heights, Bell County, Texas, according to the plat thereof recorded in Cabinet "C" at Slide 127-B of the Plat Records of Bell County, Texas, and being more particularly described by metes and bounds as follows;

BEGINNING at a 5/8" iron rod set in the South right of way line of Indian Oaks Drive (120 foot right of way) for the Northeast corner of a 9.9357 acre tract of land conveyed to Target Corporation by deed recorded in County Clerks File Number 2006-00056422 of the Deed Records of Bell County, Texas;

THENCE North 16° 30' 40" East along the East line of said 1.128 acre tract and common to the Westerly line of aforementioned Lot 1 of Block 1 of Norris Crossing addition for a distance of 234.40 feet to a 3/8" iron rod found for the Southwest corner of a1.523 acre tract of land conveyed to Frank Roberts and Judy Roberts by Deed recorded in Volume 3610 at Page 794 of the Deed Records of Bell County, Texas;

THENCE South 72° 37' 24" East along the common line of said 1.523 acre tract and Lot 1 of Block 1 of Norris Crossing Addition for a distance of 150.11 feet to a 3/8" iron rod found for the Southeast corner of said 1.523 acre tract;

THENCE North 16° 32' 18" East along the East line of said 1.523 acre tract for a distance of 444.03 feet to a 3/8" iron rod found for the Northwest corner of aforementioned Lot 1 of Block 1 of Norris Crossing addition, said point being in the South line of a tract of land conveyed to Robert Thompson & Alma Thompson Revocable Trust by Deed recorded in Volume 3131 at Page 767 of the Deed Records of Bell County, Texas;

THENCE South 72° 14' 59" East along the North line of said Lot 1 of Block 1 of Norris Crossing Addition and common to the South line of said Robert Thompson & Alma Thompson Revocable Trust tract and passing the Southeast corner of said Robert Thompson & Alma Thompson Revocable Trust tract recorded in Volume 3131 at Page 767 and common to the Southwest corner of a2.247 acre tract land described in a Quitclaim Deed to Robert Thompson & Alma Thompson Revocable Trust, recorded in Volume 3131 and Page 765 of the Deed Records of Bell County, and continuing along said 2.247 acre Robert Thompson & Alma Thompson Revocable Trust tract, for a distance of 471.19 feet to a ½" iron rod found for the Southeast corner of said 2.247 acre Robert Thompson and Alma Thompson Revocable Trust tract and the common Southwest corner of a38.8782 acre tract of land conveyed to Market Heights, Ltd., by County Clerks File Number 2006-00056421

THENCE North 04° 07' 33" East along the East line of said 2.247 acre Robert Thompson and Alma Thompson Revocable Trust tract and common to the West line of said 38.8782 acre Market Heights, Ltd. tract, for a distance of 438.19 feet to a 60d nail found for the Northeast corner of said 2.247 acre Robert Thompson & Alma Thompson Revocable Trust tract and common to the corner of said 38.8782 acre Market Heights, Ltd.,tract, said point being in the South line of Lot 3 of Block 12 of Forest Hills Addition, an addition to the City of Harker Heights, Bell County Texas as recorded in Cabinet A at Slide 203-B of thePlat Records of Bell County, Texas;

THENCE South 73° 23' 46" East along the South line of said Lot 3 of Block 12 of the Forest Hills Addition, for a distance of 32.69 feet to a 3/8" iron rod found for the Southeast corner of said Lot 3 of Block 12 of the Forest Hills Addition;

THENCE North 27° 07' 05" East along the common line of said 38.8782 acre Market Heights, Ltd., tract and said Lot 3 of Block 12, Forest Hills Addition, passing the northeast corner of said Lot 3 of Block 12, Forest Hills Addition, and along the east right-of-way line of Forest Hills Drive, for a distance of 662.72 feet to the POINT OF BEGINNING AND CONTAINING 58.271 ACRES OF LAND, more or less.

TRACT 2

BEING all that certain lot, tract or parcel of land situated in the Martha Smith Survey, Abstract No. 750, Bell County, Texas, and being a part of that certain 38.8782 acre tract conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas, and also being part of the 12.1229 acre tract of land conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056420 of the Deed Records of Bell County, Texas, and also being a part of Lot 1 of Block 1 of Norris Crossing, an addition to the City of Harker Heights, Bell County, Texas, according to the plat thereof recorded in Cabinet "C" at Slide 127-B of the Plat Records of Bell County, Texas, and being more particularly described by metes and bounds as follows;

BEGINNING at a 5/8" iron rod set in the South right of way line of Indian Oaks Drive (120 foot right of way) for the Northeast corner of a 9.9357 acre tract of land conveyed to Target Corporation by deed recorded in County Clerks File Number 2006-00056422 of the Deed Records of Bell County, Texas;

THENCE South 72° 35' 28" East (Basis of Bearing per deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas) and following along the South right of way of said Indian Oaks Drive for a distance of 728.44 feet to a 3/8" iron rod found for the Northeast corner of said Market Heights, Ltd., 12.1229 acre tract and being in the West right of way line of the aforementioned U. S. Highway 190 (Central Texas Expressway);

THENCE South 15° 24' 13" West along the West line of said U. S. Highway 190 (Central Texas Expressway) for a distance of 168.43 feet to a concrete highway monument found for corner, in the Northwest right of way of U. S. Highway 190 (Central Texas Expressway);

THENCE South 55° 38' 43" West and following along the Northwest right of way line of said U. S. Highway 190 (Central Texas Expressway) for a distance of 571.66 feet to a concrete highway monument found for corner;

THENCE South 64° 20' 24" West and continuing along the Northwest right of way line of said U. S. Highway 190 (Central Texas Expressway) for a distance of 249.41 feet to a 5/8" iron rod found for the Southeast corner of the aforementioned Target Corporation 9.9357 acre tract;

THENCE North 25° 39' 36" West and departing the Northwest right of way line of said U.S. Highway No. 190 and following along the East line of the Target Corporation 9.9357 acre tract for a distance of 51.94 feet to a 5/8" iron rod set for corner;

THENCE North 17° 24' 32" East and continuing along the East line of said Target Corporation 9.9357 acre tract for a distance of 172.20 feet to a 5/8" iron rod set for corner;

THENCE North 72° 35' 28" West and continuing along the East line of said Target Corporation 9.9357 acre tract for a distance of 187.50 feet to a 5/8" iron rod set for corner;

THENCE North 17° 24' 32" East and continuing along the East line of said Target Corporation 9.9357 acre tract for a distance of 127.50 feet to a 5/8" iron rod set for corner;

THENCE North 72° 35' 28" West and continuing along the East line of said Target Corporation 9.9357 acre tract for a distance of 46.25 feet to a 5/8" iron rod set for corner;

THENCE North 17° 24' 32" East and continuing along the East line of said Target Corporation 9.9357 acre tract for a distance of 225.00 feet to a 5/8" iron rod set for corner;

THENCE South 72° 35' 28" East and continuing along the East line of said Target Corporation 9.9357 acre tract for a distance of 70.89 feet to a 5/8" iron rod set for corner;

THENCE North 17° 24' 32" East and continuing along the East line of said Target Corporation 9.9357 acre tract for a distance of 225.00 feet to the POINT OF BEGINNING AND CONTAINING 9.3412 ACRES OF LAND, more or less.

TRACT 3

BEING all that certain lot, tract or parcel of land situated in the Martha Smith Survey, Abstract No. 750, Bell County, Texas, and being a part of that certain 38.8782 acre tract conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas, and also being part of the 31.7219 acre property conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas, and a part of the 12.1229 acre tract of land conveyed to Market Heights, Ltd., by deed recorded in County Clerks File Number 2006-00056420 of the Deed Records of Bell County, Texas, and also being a part of Lot 1 of Block 1 of Norris Crossing, an addition to the City of Harker Heights, Bell County, Texas, according to the plat thereof recorded in Cabinet "C" at Slide 127-B of the Plat Records of Bell County, Texas, and being more particularly described by metes and bounds as follows;

BEGINNING at a concrete highway monument found in the Northwest right of way of U. S. Highway 190 (Central Texas Expressway) with the East corner of said Market Heights, Ltd., 31.7219 acre tract, same being the Northeast corner of Lot 1 in Block 1 of Norris Crossing, an addition to the City of Harker Heights, Texas, and addition to the City of Harker Heights, Texas, according to the plat thereof of record in Cabinet C at Slide 127--B of the Plat Records of Bell County, Texas;

THENCE South 68° 47' 24" West (Basis of Bearing per deed recorded in County Clerks File Number 2006-00056421 of the Deed Records of Bell County, Texas) along the South line of said Lot 1 and common to the North right-of-way line of said U.S. Highway 190 for a distance of 350.87 feet to a 3/8" iron rod found for corner;

THENCE South 75° 57' 02" West and continuing along the South line of said Lot 1 and common to the North right-of-way line of said U.S. Highway 190 for a distance of 135.34 feet to a 5/8" iron rod set for the Southeast corner of a tract of land conveyed to Target Corporation by deed recorded in County Clerks File Number 2006-00056422 of the Deed Records of Bell County, Texas;

THENCE North 20° 48' 32" West and departing the North right of way of said U.S. Highway 190 and following along the line of said Target Corporation 9.9357 acre tract for a distance of 60.00 feet to a 5/8" iron rod set for corner;

THENCE South 69° 11' 28" West and continuing along the line of said Target Corporation 9.9357 acre tract for a distance of 21.00 feet to a 5/8" iron rod set for corner;

THENCE North 20° 48' 32" West and continuing along the line of said Target Corporation 9.9357 acre tract for a distance of 298.27 feet to a 5/8" iron rod set for corner;

THENCE North 69° 11' 28" East and continuing along the line of said Target Corporation 9.9357 acre tract for a distance of 248.67 feet to a 5/8" iron rod set for corner;

THENCE South 72° 35' 28" East and continuing along the line of said Target Corporation 9.9357 acre tract for a distance of 481.74 feet to a 5/8" iron rod set for corner;

THENCE South 25° 39' 36" East and continuing along the line of said Target Corporation 9.9357 acre tract for a distance of 63.22 feet to a 5/8" iron rod set for corner in the North right of way line of the aforesaid U.S. Highway 190;

THENCE South 64° 20' 24" West along the North right of way line of said U.S. Highway No. 190 for a distance of 126.71 feet to the POINT OF BEGINNING AND CONTAINING 4.0045 ACRES OF LAND, more or less.

## EXHIBIT C

<u>Site Design Requirements</u>

(attached)

.

| **Site Design Requirements** | | **Reverse Build to Suit Deals** | |
|---|---|---|---|
| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |

These Site Design Requirements (SDR's) are attached to and made part of the Lease Agreement. These SDR's are intended to allocate responsibility between Landlord and Circuit City for the work needed to prepare the Premises for Circuit City's occupancy. Terms with capital letters, which are defined in the Lease Agreement and used in the SDR's, shall have the same meaning.

# 1. Landlord's Work

Landlord shall be responsible for all work as described in Section 1, "Landlord's Work". Landlord's Work shall be preformed in a good and workmanlike manner. Landlord's engineers, surveyors, architects, consultants and contractors shall be bondable, all licensed in the state where the shopping center is located, and of good reputation. Landlord's Work shall be performed at Landlord's sole cost and expense, and in accordance with all applicable laws and regulations, these SDR's, the Construction Schedule (Attachment 2), and the Civil Plans (Attachment 7).

In the event that any portion of the Landlord's Work requires minor adjustments in order to satisfy the requirements of these SDR's, Circuit City may upon ten (10) days prior notice to Landlord direct its contractor to make such minor adjustments, the total cost of which shall be reimbursed by Landlord to Circuit City upon demand in a sum not to exceed Five Thousand and no/100 Dollars ($5,000.00).

**A. Site Delivery Work**    - All of the Landlord Work described in one (1) though twelve (12) below is referred to collectively as the "Site Delivery Work". Upon completion of the Site Delivery Work, Landlord shall deliver to Circuit City the "Site Work Certificate" (Attachment "3"), at which time "Delivery of Land" as described in the Lease shall be deemed to have occurred. If any portion of the Site Delivery Work has not been completed to Circuit City's reasonable satisfaction, Circuit City shall promptly notify Landlord, and Landlord shall be obligated to correct any incomplete or unacceptable work as a condition precedent to Delivery of the Land.

1. Provide the Geotechnical Reports and Geotechnical Reliance Letter (Attachment "8").
2. Provide the Environmental Reports and Environmental Reliance Letter (Attachment "9").
3. Cause the proposed development of the Shopping Center and its Civil Plans to comply with the Geotechnical Report and with the Circuit City Specifications (Attachment "1").
4. Cause the land upon which the Circuit City building will be constructed (which includes the areas occupied by the Building, loading dock well, trash compactor, and sidewalks) to be free and clear of all obstructions, foundations, rock, footings, utilities, easements, improvements, and tenancies. Any rock removal performed by the Landlord must be completed as described in the Circuit City Specifications. The Circuit City Specifications shall take precedent over the Geotechnical Report with regards to rock removal.
5. Cause the land on which the Shopping Center is situated, including the Building Pad, to be delivered free of all Hazardous Materials in violation of applicable laws.
6. Cause the land on which the Shopping Center is situated, including the Building Pad, to be graded in accordance with the Geotechnical Report, the Civil Plans, and the Circuit City Specifications.
7. Complete the Building Pad in accordance with the Geotechnical Report (Landlord's soils report) prepared by REED Engineering Group dated October 31, 2006, the Civil Plans, and the Circuit City Specifications. If there are discrepancies between the Circuit City Specifications and the Geotechnical Report or Civil Plans, the Circuit City Specifications, geotechnical report and civil plans shall take precedent. The term "Building Pad" shall mean the footprint of the Circuit City Building plus a minimum of fifteen (15) feet beyond such footprint, and the areas occupied by the loading dock well, trash compactor, and sidewalks.
8. Obtain governmental approvals necessary to complete all on-site and off-site work shown on the Civil Plans, including all approvals, which must be obtained as a condition to issuance of Circuit City's building permit.
9. Obtain all planning and zoning approvals, if any, from governmental authorities having jurisdiction over the Shopping Center which are necessary to allow the issuance of Circuit City's building permit and the completion of the Circuit City building.

**Site Design Requirements**                 **Reverse Build to Suit Deals**

Circuit City Stores, Inc.                    Killeen, TX                    #1612              3/1/2007

10. Complete: (a) all curb cuts for the Tenant's Preferred Area, (b) 20,000 square feet of staging area outside of but adjacent to the Building Pad, to either be paved or stone to provide for all weather use, and (c) a twenty four (24) foot wide all-weather construction access road connecting the existing adjacent roadway to the Building Pad, to be maintained by the Landlord in good condition throughout the construction of the Common Areas. Staging area may be moved from original location to a mutually agreed upon location and reduced by 50% 90 days after start of construction.

11. Provide temporary utilities as described in the Circuit City Specifications to within five (5) feet of the Staging Area, at locations to be mutual agreed upon between Landlord and Tenant and in accordance with the dates on the Construction Schedule.

12. Satisfy the additional requirements set forth in "Approvals and Payment of Fees" below.

**B. Additional Landlord's Work.**   - In addition to the Site Delivery Work, Landlord shall complete the following as part of Landlord's Work:

1. The construction and installation of Circuit City's permanent utilities in accordance with the Circuit City Specifications.

2. The construction and installation of paving, (light duty and heavy duty), sidewalks, curbing, landscaping, and exterior lighting in accordance with the Geotechnical Report, the Civil Plans, and Circuit City Specifications.

3. The construction and installation of the pylon signs in accordance with the Civil Plans, and Circuit City Specifications.

**C. Approvals and Payment of Fees**   - As a condition of completing the Site Delivery Work, Landlord shall be obligated (a) to obtain all governmental and third party approvals, permits, and authorizations which must be obtained prior to the issuance of a building permit for the construction of the Circuit City building, and (b) to pay all fees and assessments, including impact fees and building permit fees (regardless of how such fees may be defined or described) which must be paid as a condition to issuance of a building permit for the construction of the Circuit City building.

**D. Survey**   - Landlord shall provide Circuit City with a current ALTA survey, and provide the ALTA survey Certificate (Attachment "6") in accordance with the Construction Schedule.

**E. Civil Plans**   - Landlord shall deliver to Circuit City full and complete Civil Plans in accordance with the Construction Schedule. The Civil Plans will be attached to these SDR's as Attachment "7". The Civil Plans shall be subject to Circuit City's approval. Circuit City's approval of the Civil Plans shall be for compliance with the Circuit City Specifications only, and for no other purpose. To the extent that there is a conflict between the Civil Plans and the Circuit City Specifications, the Circuit City Specifications shall control.

**F. Sign Plans**   - Landlord shall submit to Circuit City all plans and specifications for the pylon signs contained or to be constructed within the Shopping Center, for Circuit City's written approval, which shall not be unreasonably withheld and shall not be withheld to the extent the signs are consistent with the OEA and depiction attached to the lease. Landlord shall submit to Circuit City any signage plans and design criteria that may impact Circuit City's building signs, and the monument and pylon signs. Attached as Attachment "5" are the Sign Plans and Specifications plans for Circuit City's building and pylon signage, which Landlord hereby approves.

**G. Landlord Deliverables**   - The Landlord shall provide the deliverables as described in the Circuit City Development Process (Attachment "10").

| **Site Design Requirements** | | **Reverse Build to Suit Deals** | |
|---|---|---|---|
| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |

## 2. Circuit City's Work

**A. Building Construction** - Following Delivery of the Land, Circuit City shall commence and pursue to completion the construction of the Circuit City building described in the Lease as the "Premises". Except as otherwise expressly provided in the SDR's or the Lease, and subject to the terms of the Lease regarding payment of the Landlord Reimbursement, all costs and expenses incurred by Circuit City in connection with constructing the Premises shall be borne by Circuit City. Tenant shall, in a good and workmanlike manner, at Tenant's sole risk and expense subject to Landlord's payment of the Landlord Reimbursement and in compliance with all applicable codes, laws, regulations and ordinances, construct the Premises in accordance with the mutually approved plans and specifications as provided below.

**B. Plans and Specifications** - Circuit City shall prepare plans and specifications for the construction of the Premises which shall be submitted to the Landlord for its approval in accordance with these SDR's. Landlord shall respond to Circuit City's request for approval within ten (10) business days, and shall be obligated to approve Tenant's plans and specifications so long as they are consistent with Circuit City's current prototype and the Floor Plans and Elevations (Attachment "4"). In the event that the Landlord does not notify Circuit City that it disapproves the plans and specifications within ten (10) business days, the plans and specifications shall be deemed approved. Circuit City's plans and specifications shall not be changed by Circuit City without the prior written consent of Landlord such consent not to be unreasonably withheld provided that such changes comply with the OEA and the elevation of the premises approved by Target, provided that any changes made by Circuit City to its prototypical interior store design shall not be subject to Landlord's prior approval and shall be deemed approved by the Landlord. Following Landlord's approval of the Circuit City's plans and specifications, any changes requested by Landlord shall be subject to Circuit City's approval, which approval may be withheld in Circuit City's sole discretion for any reason or no reason, and if approved by Circuit City, any incremental costs associated with such changes shall be made at Landlord's sole cost and expense.

**C. Permits** - At Circuit City's sole cost and expense, Circuit City shall obtain those certain building permits, licenses, other governmental approvals, and temporary and permanent certificates of occupancy which may be required for the lawful construction of the Premises (excluding Landlord's Work) in accordance with these SDR's. Landlord shall be obligated to assist and cooperate fully with Circuit City in obtaining such permits, licenses, approvals and certificates. Landlord shall be responsible for all other permits necessary for the development of the Shopping Center.

## 3. Attachments

**A. Attachments** - The following are attached to these SDR's and made a part hereof for all purposes.

1. Circuit City Specifications
2. Construction Schedule
3. Site Work Certificate
4. Floor Plan and Elevations
5. Sign Plans and Specifications
6. ALTA Survey Certificate
7. Civil Plans (intentionally deleted)
8. Geotechnical Reliance Letter
9. Environmental Reliance Letter
10. Circuit City Development Process

**Site Design Requirements**                    **Reverse Build to Suit Deals**

Circuit City Stores, Inc.                Killeen, TX                    #1612          3/1/2007

## Attachment "1" – Circuit City Specifications

1. **Grading Specifications**

2. **Utility Specifications**

3. **Paving and Lighting Specifications**

(to be attached)

Site Design Requirements
Circuit City Stores, Inc.                Killeen, TX

Reverse Build to Suit Deals
#1612        3/1/2007

# GRADING SPECIFICATIONS – REVERSE BUILD TO SUIT DEALS

## GRADING SPECIFICATIONS:   Grading Requirements:

- The Civil Plans shall show contours in accordance with standard engineering practice and these contours shall be shown with the existing and final elevations.

- The Building will be accessible by grade level parking only. Steps and stairs are not permitted.

- Sidewalk at the Building will slope away from the Building with grade of no less than 1.5% and no more than 3.0%. All Water shall be sheet drained away from the Circuit City doors.

- Asphalt paving areas will be graded to avoid ponding water, with slopes of no less than 1.5% and no more than 4.0%. Entrances and access drives shall have a maximum slope of 6.0%.

- Surface drainage swales will not be allowed without prior approval of Circuit City. Such swales must have a grade of no more than 3.5% and shall be constructed of concrete.

- No retaining walls or embankments causing breaks in grade shall be permitted unless specifically approved by Circuit City.

## GRADING SPECIFICATIONS:   Building Pad

- Landlord shall be responsible for preparing the Building Pad subgrades to within plus or minus one-tenth of a foot as set by Circuit City's architect. Circuit City's subgrades are 6" below finished floor elevation.

- Compaction of the building pad shall be no less than ninety-five percent (95%) of the modified proctor soil test for water content and compaction levels (Modified Proctor) on the Land, so as to enable Circuit City to perform construction work necessary to provide improvements in accordance with the Plans and Specifications with drilled piers (per the Geotechnical report prepared REED Engineering Group dated October 31, 2006) , and without the necessity of pilings or other extraordinary foundation work.

- All compacted areas of the Land shall be verified by an independent professional soils engineering test laboratory and a certificate from such independent laboratory indicating compliance with Landlord's Soils Report shall be furnished to Circuit city upon completion of the Site Delivery Work.

- The Building Pad soil shall have a minimum bearing capacity of 2,500 pounds per square foot, with a maximum differential settlement of ¼" and a maximum total settlement of 1". Earth stabilization and/or replacement shall be preformed by the Landlord as necessary to meet this minimum requirement.

- During the preparation of the Building pad, Landlord shall if its expense have an independent professional soils engineering laboratory monitor and certify the preparation of the Building Pad in accordance with Landlord's soils Report. Landlord shall perform one in-place compaction test per 5,000 square feet of pad area per lift.

- All material, including native and fill, within five feet of the any surface of the Building including foundation concrete, shall be non-expansive with a plasticity index of 12 or less. The material shall also have a sufficient cohesion to stand vertical for three feet. No oversize material or lumps greater than 6" in diameter will be allowed and not more than 15% of the material shall be greater than 2 ½" diameter. Landlord must remove any existing rock within five feet of Circuit City's proposed foundation prior to pad delivery, so that construction of the Building can be completed without any rock excavation by Circuit City.

- The Civil Plans shall not be materially changed by Landlord without the prior consent of Circuit City, which consent shall not be unreasonably withheld or delayed.

- All outlots or future building areas shall be rough graded and planted with grass seed.

**Site Design Requirements**
Circuit City Stores, Inc.     Killeen, TX

**Reverse Build to Suit Deals**
#1612     3/1/2007

# UTILITIES SPECIFICATIONS – REVERSE BUILD TO SUIT DEALS

**Temporary Utilities:**

Landlord will provide the following temporary utilities to the Staging Area, in a location selected by Circuit City, no later than the date for completion of such temporary utilities set forth in the Construction Schedule (Attachment "Z"):

- 2" water line with sufficient pressure that pumping is not necessary

- 200 amps, 1 phase, 4 wire, 120 volt electric power, with weatherproof and rainproof disconnect switch.

- Telephone service

**Permanent Utilities:**

Landlord will provide the following permanent utilities to within five (5) feet of the Building (unless notes otherwise below), at Circuit City's designated entry points as shown on this drawing. Paving shall not cover the stub points for these utilities. All utilities will be provided no later than the date set forth on the Construction Schedule (Attachment "Z"):

- 2" Gas Service and Meter

- 4" Telephone Conduit

- Cable TV

- Secondary electric service to Circuit City's designated point of termination within the Building, adequate for a 800 amp, 3-phase, 277/480 volt service.

- Storm Sewer System to locations as shown on the Civil Plans

- 6" Sanitary Sewer line

- 2" Domestic Water line

- 8" fire protection water line with a minimum of 50 pounds per square inch residual pressure at 2000 gallons per minute flow, with sufficient capacity to service Circuit City's sprinkler system without the need for a fire pump, as approved by Circuit City's fire protection consultant. The line should be provided to Circuit City's designated point of termination within the Building. The line shall have a flanged and capped outlet located 12" above the finished floor and 18" from the pipe's centerline to the inside face of the exterior wall. The location shall be coordinated with Circuit City's sprinkler contractor and shall conform to the requirements of all authorities having jurisdiction.



SDR - FINAL, 3-1-07

page 6

**Site Design Requirements**
Circuit City Stores, Inc.                    Killeen, TX

Reverse Build to Suit Deals
#1612        3/1/2007

# PAVING AND LIGHTING SPECIFICATIONS – REVERSE BUILD TO SUIT DEALS

## PAVING SPECIFICATIONS:    Parking Area and Roadway Surfacing

- Paving design shall be based on a design period of twenty (20) years for the traffic indices specified by an independent civil engineer approved by Circuit City and compensated by Landlord.

- All pavement design shall be subject to review and approval by Circuit City, and shall conform to the recommendations of Landlord's Soils Report.

- Heavy duty paving must be used in the main drives and service areas as required by Landlord's Soils Report.

## PAVING SPECIFICATIONS:    Sidewalks and Curbs

- Landlord shall provide and install all curbs and sidewalks including perimeter curbs and sidewalks, except for the sidewalk directly in front of the Building.

- All sidewalks and curbs shall be constructed of concrete and shall have a minimum slope of 1.5% and a maximum slope of 3.0% away from the Building. All sidewalks and curbs shall be a minimum of four (4) inches thick, with a rough non-skid texture, over a suitable granular base. Salt finish is not acceptable.

- Entrance and access roads shall have six (6) inch curbs with eighteen (18) inch gutters. However, next to sidewalks and buildings when drainage is not a factor a straight six (6) inch curb without gutters shall be permitted. Parking lot islands and landscape enclosures shall have vertical type curbs. All curbs, and curb and gutters shall be concrete. Extruded asphalt curbing shall not be used.

## SHOPPING CENTER LIGHTING SPECIFICATIONS:    Design Standards

- Landlord shall prepare and submit plans to Circuit City that show the photometrics, location and height of all light poles, type of fixtures, fixture shielding (if any), circuiting, and details of the complete lighting arrangement and equipment.

- Illuminations as measured at the pavement shall be:
  5.0 foot candles minimum maintained within 50 feet of the Building entry
  5.0 foot candles minimum maintained throughout the parking lot and drives.

- Landlord shall allow Circuit City to illuminate the entry soffit up to a minimum of 40 foot candles. Landlord to illuminate and install the entry tower with four (4) 1000 watt metal halide light fixtures mounted on a 25' high on the two (2) light poles closest to Circuit City's front entry.

- Twenty-five percent (25%) of the overall lighting shall be designated as security lighting, and shall remains on from dusk until dawn. The security lighting layout and pattern shall be subject to Circuit City's approval.

- Selection of fixture types for both the parking lot lights and the building facades shall be subject to Circuit City's review and approval prior to design and circuiting.

- Landlord shall install a seven-day time switch to control all parking lot lighting wired to a common house panel. All security lighting shall be placed on photo-cell switching.

- The control of parking area lights shall be accessible to Circuit City's local store management due to late-night and holiday sales.

**Site Design Requirements**                        **Reverse Build to Suit Deals**

**Circuit City Stores, Inc.**              **Killeen, TX**                    **#1612**        **3/1/2007**

# Attachment "2" – Construction Schedule

| Landlord's Tasks | Completion Date |
|---|---|
| **I SITE DELIVERY WORK** | |
| Landlord's delivery of the Geotechnical Report. | 12/12/2006 |
| Landlord's delivery of the Environmental Report. | 12/12/2006 |
| Landlord's delivery of the Geotechnical Reliance Letter (Attachment "8"). | 2/1/2007 |
| Landlord's delivery of the Environmental Reliance Letter (Attachment "9"). | 2/1/2007 |
| Landlord's delivery of Civil Plans. | 3/1/2007 |
| Landlord's completion of the Site Work including delivery of the Site Work Certificate (Attachment "3"); construction of staging area, all-weather construction access road, and installation of temporary utilities. | 1/15/2008 |
| **II  ADDITIONAL LANDLORD'S WORK** | |
| Construction and installation of permanent utilities. | 3/15/2008 |
| Construction and installation of: paving, curbing, sidewalks, landscaping, and exterior lighting. | 4/15/2008 |
| Construction and installation of pylon and monument signs identifying the Shopping Center. | 4/15/2008 |

**Site Design Requirements**                                    **Reverse Build to Suit Deals**

| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |
|---|---|---|---|

## Attachment "3" – Site Work Certificate

To:   Circuit City Stores, Inc.
      Deep Run I
      9950 Mayland Drive
      Richmond, Virginia 23233
      Attention: Vice President-Construction

      Re:   Circuit City Store/[Location]

Ladies and Gentlemen:

        The undersigned, as Landlord has completed all Site Work and has caused "Delivery of the Land" to occur on _____, _____, all in accordance with the terms of the Site Design Requirements dated _____, _____. Specifically, the undersigned hereby certifies that:

- Grading of the Land and the Common Areas has occurred in accordance with the Site Design Requirements.

- Landlord has provided an independent soils engineer's written certification that all pad work was completed in accordance with the Soil Report, the Civil Plans, and Circuit City's Plans and Specifications. This report shall include the results of all compaction and other tests performed during the pad preparation phase, and any tests performed prior to the date of such certification. A copy of such certification shall be delivered to Circuit City's Vice President – Construction at Circuit City's address.

- Landlord has provided a surveyor's written certification stating that the Building Pad is at the prescribed elevation within the stated tolerance of plus or minus one-tenth of a foot. This certification shall be based upon an "as-prepared" survey that shall accompany such certification and shall show thereon elevation shots taken on a 50 foot grid minimum, including pad perimeter and building corners. Promptly upon completion of the Site Delivery Work, Landlord shall cause its surveyor to designate the corners of the Building Pad by means of standard surveying markers.

- The finished floor elevation is _____. The pad elevation is _____.

- The Staging Area has been completed.

- An all-weather construction access road to the Land no less than 24' in width has been prepared and is ready for use.

        All conditions precedent to issuance of your building permit have been satisfied by Landlord, and we certify that all elements of the Site Delivery Work and Delivery of the Land have been satisfied in accordance with the Site Design Requirements.

                        LANDLORD: _____,

                                          a _____

By: _____
Name: _____
Title: _____

**Site Design Requirements**      **Reverse Build to Suit Deals**

| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |
|---|---|---|---|

## Attachment "4" – Floor Plan and Elevations

(to be attached)





| **Site Design Requirements** | | **Reverse Build to Suit Deals** | |
|---|---|---|---|
| **Circuit City Stores, Inc.** | **Killeen, TX** | **#1612** | **3/1/2007** |

## Attachment "5" – Sign Plans and Specifications

(to be attached)

Site Design Requirements
Circuit City Stores, Inc.          Killeen, TX          #1612          3/1/2007

**Reverse Build to Suit Deals**



SOUTH ELEVATION

NORTH ELEVATION

WEST ELEVATION

/60349-R3-C City#1612 Killeen TX

Created exclusively for:
**CIRCUIT CITY**
**#1612**

Address:

City: **KILLEEN**

State: **TX**

Sign Location:

Account Rep.: **STEVE BERRYMAN**

Client's Approval: Date

Landlord's Approval: Date

| | |
|---|---|
| Design No.: **US 69349-R3** | Sheet No. **1 of 5** |
| Date **01/23/07** | Rev. Date **02/19/07** |
| Designer: **EIT** | Scale **AS NOTED** |

PRIMARY WIRING OF ADEQUATE VOLTAGE
AND CIRCUITS TO SIGN FURNISHED AND
CONNECTED BY CLIENT.

**SIGNS**

**Corporate Office**
1800 Bering, Ste. 700
Houston, TX 77057
713-977-7900
FAX: 713-977-7903

**Dallas Regional Office**
2220 San Jacinto Blvd.
Denton, TX 76205
940-380-9153
FAX: 940-380-9385

**Austin Regional Office**
326 Canyon Circle Dr.
Canyon Lake, TX 78133
830-935-4168
FAX: 830-935-4175

**Buffalo Regional Office**
1408 Sweet Home Rd.- Ste 8
Amherst, NY 14228
716-689-7000
FAX 716-689-0779

The purchaser agrees to hold the seller harmless
against any cause for action for damages which
may occur as a result of drilling for sign and
foundations, including but not limited to: sewer,
gas lines or any underground obstacles which
the purchaser or others may deem valuable.