**Site Design Requirements**  **Reverse Build to Suit Deals**
Circuit City Stores, Inc.    Killeen, TX    #1612    3/1/2007



page 15

SDR - FINAL 3-1-07





## Site Design Requirements
**Circuit City Stores, Inc.**    Killeen, TX    #1612    3/1/2007

**Reverse Build to Suit Deals**



**NON-ILLUMINATED SINGLE-FACE WALL SIGN :**    **SIDE VIEW**

**SIGN 2 - REAR - SOUTH ELEVATION**    3/4" = 1'-0"

### GENERAL SPECIFICATIONS

.090" Aluminum panel with 2" returns.
Paint background & edges Matthews STN-202 matte white.
Logo is digitally printed Scotchprint on white vinyl.
Copy is 3M # 220-13 Tomato red vinyl.
Mount sign against wall with concealed fasteners as shown.



- 3/8" aluminum bolt w/washer
- .090" aluminum
- 1/4" lags and shields
- Concealed aluminum clip drilled & tapped

**DETAIL**    n.t.s.

Created exclusively for:
**CIRCUIT CITY**
**#1612**
Address:
City: **KILLEEN**
State: **TX**
Sign Location:
Account Rep.: **STEVE BERRYMAN**
Client's Approval:    Date
Landlord's Approval:    Date

Design No.: **US 69349-R3**    Sheet No.: **3 of 5**
Date: **01/23/07**    Rev. Date: **02/19/07**
Designer: **EIT**    Scale: **AS NOTED**

PRIMARY WIRING OF ADEQUATE VOLTAGE AND CIRCUITS TO SIGN FURNISHED AND CONNECTED BY CLIENT.



**Corporate Office**
1800 Bering, Ste. 700
Houston, TX 77957
713-977-7900
FAX: 713-977-7903

**Dallas Regional Office**
2220 San Jacinto Blvd.
Denton, TX 76205
940-380-9153
FAX: 940-380-9395

**Austin Regional Office**
326 Canyon Circle Dr.
Canyon Lake, TX 78133
830-935-4168
FAX: 830-935-4175

**Buffalo Regional Office**
1408 Sweet Home Rd.- Ste 8
Amherst, NY 14228
716-689-7000
FAX 716-689-0779

The purchaser agrees to hold the seller harmless against any cause for action for damages which may occur as a result of drilling for piers and foundations, including but not limited to sewer, gas lines or any underground obstacles which the purchaser or others may deem valuable.

Case 08-35653-KRH    Doc 3936-5    Filed 07/02/09    Entered 07/02/09 16:32:00    Desc
Exhibit(s) A-1d    Page 5 of 20

| Site Design Requirements | Reverse Build to Suit Deals |
|---|---|
| Circuit City Stores, Inc.    Killeen, TX | #1612    3/1/2007 |

## Attachment "6" – ALTA Survey Certificate

Certified to Circuit City Stores, Inc., a Virginia corporation ("Landlord"), _____, a _____ ("Title Company"), and _____, a _____ corporation ("Title Agent"). The undersigned _____ (the "Surveyor") hereby certifies that (a) the Survey Plat dated _____, 20\_\_\_\_, prepared by the undersigned, of that certain tract of land consisting of _____ sq. ft., or _____ acres, in the _____, in the City of _____, County of _____, State of _____, and the metes and bounds description set forth thereon are true and correct and prepared from an actual on-the-ground survey of the real property (the "Property") shown thereon and has been made in accordance with "Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys", jointly established and adopted by ALTA and ACSM in 2005, and includes items 1 through 14 and 16 through 18 of Table A thereof, and pursuant to the Accuracy Standards (as adopted by ALTA and ACSM and in effect on the date of this certification) of an Urban Survey; (b) such survey was conducted by the Surveyor or under his supervision; (c) all monuments shown thereon actually exist, and the location and type of material thereof are correctly shown; (d) the location of all streets, roads, highways and easements are as shown thereon; (e) except as shown thereon, there are no encroachments onto the Property or protrusions there from, there are no improvements on the Property, there are no visible easements or rights-of-way on the Property, there are no visible discrepancies, conflicts, shortages in area or boundary line conflicts; (f) the distance from the nearest intersection street or road is as shown; (g) all recorded easements have been correctly platted thereon; (h) the boundaries, dimensions and other details shown thereon are true and correct; and (i) the Property is not located in a 100-year flood plain as presently designated by the U.S. Corps of Engineers, or in an identified "flood prone area" as defined by the U.S. Department of Housing and Urban Development, pursuant to the Flood Disaster Protection Act of 1973, as amended, except as shown. **[Note: If no portion of the Property is in a flood plain, delete "except as shown" and put a period after "amended".]**

EXECUTED this _____ day of _____, 20\_\_\_\_\_

Signature _____

Printed Name:_____

R.P.L.S. No._____

Case 08-35653-KRH    Doc 3936-5    Filed 07/02/09    Entered 07/02/09 16:32:00    Desc Exhibit(s) A-1d    Page 6 of 20

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |

## Attachment "7" Civil Plans

(intentionally deleted)

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |

## Attachment "8" Geotechnical Reliance Letter

REED ENGINEERING GROUP
GEOTECHNICAL AND ENVIRONMENTAL CONSULTANTS

February 13, 2007
Project No. 13606

Circuit City Stores, Inc.
Deep Run I
9950 Mayland Drive
Richmond, Virginia 23233
ATTN: Vice President – Real Estate

Re: Geotechnical Investigation
    Proposed Target and Retail Center
    U.S. Highway 190 and F.M. 2410
    Harker Heights, Texas
    Job Number: 13606

Gentlemen:

This will serve to confirm that Reed Engineering Group, Ltd. ("Consultant") will allow Circuit City Stores, Inc. ("Circuit City") to rely on the Report in connection with the assessment and evaluation of the subject property as fully and completely as if the Report had been prepared for and was addressed to Circuit City. Consultant acknowledges that Consultant shall not look to Circuit City for any liability of Consultant's primary client under Reed Proposal Number PR5-11 (Revised), the underlying agreement between Consultant and its primary client.

This reliance letter is given in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, receipt of which is herby acknowledged. Please indicate your acceptance of these terms by signing in the space provided below and returning a copy to me.

Sincerely,

REED ENGINEERING GROUP, LTD.

By: Ronald F. Reed, P.E.
Its: President

Agreed this 13th day of Feb., 2007.

Circuit City Stores, Inc.

By: _____

Its: _____

2424 STUTZ DRIVE, SUITE 400   DALLAS, TX 75235
tel 214.350.5600   fax 214.350.0019
www.reed-engineering.com

GEOTECHNICAL ENGINEERING
ENVIRONMENTAL CONSULTING
CONSTRUCTION MATERIALS TESTING

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |

## Attachment "9"  -  Environmental Reliance Letter

### Terracon

**RELIANCE AGREEMENT**

Date: February 19, 2007

**DEFINITION SECTION**

Party(ies) to be granted reliance (must sign below): Circuit City Stores, Inc. ("Relying Party")

Description of Reports for which reliance is requested: Phase I Environmental Site Assessment, Project No. 96067186 dated September 7, 2006 ("Reports")

Agreement for Services dates and agreement reference numbers: January 6, 2006/August 30, 2006 - 9606E1019 ("Agreements")

Client under the Agreement for Services: Direct Development ("Client")

**AGREEMENTS**

By its signature below, Client represents it has the authority to, and does, authorize Terracon Consultants, Inc. to provide Relying Party with the above referenced Reports and to grant reliance upon the Reports.

Terracon Consultants, Inc. agrees:

- Upon receipt (within three months of the above date) of a signed copy of this Reliance Agreement, and receipt of payment of a reliance fee of $250.00 each (mailed to the address shown below and referencing this agreement), to provide Relying Party with a copy of the Reports, and
- Further agrees that Relying Party may then rely upon the Reports as though they were addressed to Relying Party at the time of original issuance.

   Mailing address:  **5307 Industrial Oaks Blvd., Suite 160**
   **Austin, Texas 78735**

By its signature below, Relying Party represents it has the authority to, and does, bind all parties listed as Relying Parties to this Reliance Agreement. In consideration for Terracon Consultants, Inc. allowing such reliance, Relying Party, agrees:

- That Relying Party's reliance upon the Reports is subject to all of the terms, limitations, restrictions, and caveats expressed in the Reports and their respective Agreement for Services.

- THAT THE LIMITATION OF LIABILITY PROVISION OF THE AGREEMENT FOR SERVICES, WHICH LIMITS THE TOTAL AGGREGATE LIABILITY OF TERRACON CONSULTANTS, INC. (AND ITS RELATED CORPORATIONS AND EMPLOYEES), INCLUDING FOR NEGLIGENCE, IS THE MAXIMUM AGGREGATE LIABILITY OF TERRACON CONSULTANTS, INC. (AND ITS RELATED CORPORATIONS AND EMPLOYEES) TO RELYING PARTY, CLIENT, AND ANY OTHER PERSON OR ENTITY THAT IS PERMITTED TO RELY ON THE REPORTS. Terracon Consultants, Inc. is not responsible for allocating any amount among Relying Party, Client, or any other persons or entities to whom we may be liable. TERRACON CONSULTANTS, INC. IS NOT LIABLE FOR ANY CONSEQUENTIAL OR LIQUIDATED DAMAGES.

- That the Reports reflect the opinions of Terracon Consultants, Inc. as of the date of the Reports and that conditions may have changed materially from that date. Terracon Consultants, Inc. has no obligation to provide any information obtained or discovered by Terracon Consultants, Inc. subsequent to the date of the Reports, or to perform any additional services, regardless of whether the information would affect any conclusions, recommendations, or opinions in the Reports.

- That Terracon Consultants, Inc. only performed those tasks as set out in the Agreements and the Reports. Any opinions or recommendations contained in the Reports are based solely on the Tasks agreed upon in the Agreements and/or presented in the Reports.

- That Relying Party will not provide the Reports to any other person or entity. Unless Terracon Consultants, Inc. agrees in writing, no person or entity other than Relying Party and the Client may rely upon the Reports.

This Reliance Agreement represents the full and final agreement between Terracon Consultants, Inc. and Relying Party and supersedes any and all other agreements and representations, and may not be modified except by written agreement of both parties. This Reliance Agreement may be executed in counterparts, each of which is deemed an original but all constitute one Reliance Agreement.

**SIGNATURES**

| Relying Party: Circuit City Stores, Inc. | Client: **Direct Development** |
|---|---|
| By: _____ Date: _____ | By: _____ Date: _____ |
| Name/Title: | Name/Title: |
| Address: **Deep Run I, 9950 Mayland Drive** | Address: **301 Congress Avenue, Suite 220** |
| **Richmond, Virginia 23233** | **Austin, Texas 78701** |
| Phone: _____ Fax: _____ | Phone: 512.320.4103  Fax: 512.320.4101 |

Terracon Consultants, Inc.:
By: _[signature]_  Date: 02.19.2007
Name/Title: **Rhonda L. Alford/Manager of ESA Services**

Rev. 12-05

| Site Design Requirements | | Reverse Build to Suit Deals | |
|---|---|---|---|
| Circuit City Stores, Inc. | Killeen, TX | #1612 | 3/1/2007 |

## Attachment "10" – Circuit City Development / Design Process

(to be attached)



| CIRCUIT CITY DEVELOPMENT PROCESS | LANDLORD DELIVERABLES |
|---|---|
| SCHEMATIC SITE PLAN | • Information as required to complete Circuit City's Project Information Sheet.<br>• Work with Circuit City's design staff to develop the schematic site plan. |
| DUE DILIGENCE INVESTIGATION | • Meet on site with Circuit City's Development Manager and architect to provide information as required to complete Circuit City's Feasibility Report |
| DESIGN DEVELOPMENT | • ALTA Survey and Surveyor's Certificate<br>• Geotechnical Report and Geotechnical Reliance Letter.<br>• Environmental Report and Environmental Reliance Letter.<br>• Civil Plans<br>• All approvals that may be a pre-requisite for Circuit City's permits.<br>• Shopping Center building elevations, material boards and design requirements.<br>• Signage drawings and signage design guidelines.<br>• Schedules and updates for all Landlord Work.<br>• Schedules and updates for all planning and zoning approvals and permits.<br>• Information about governmental conditions or restrictions that impact permits.<br>• Help with coordination between utility companies and Circuit City.<br>• Help in pursuing local incentive programs. |
| SITE DELIVERY WORK | • Site Work Certificate<br>• Circuit City's staging area<br>• All weather construction access road to Circuit City's building pad<br>• Circuit City's temporary utilities |
| REMAINDER OF LANDLORD WORK | • Circuit City's permanent utilities<br>• Paving, curbing and sidewalks<br>• Exterior lighting<br>• Landscaping<br>• Pylon and monument signs |

# EXHIBIT C-1

Possession Date Notice

[Letterhead of Landlord]

_____, 200\_\_

[via overnight courier
service per Article XXII of the Lease]

Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233
Attention: Vice President of Real Estate

    Re:    Lease Agreement dated as of _____, 200\_\_ (the "**Lease**"), between **MARKET HEIGHTS, LTD.**, as landlord ("**Landlord**"), and **CIRCUIT CITY STORES, INC.**, as tenant ("**Tenant**"), with respect to certain retail premises (the "**Premises**") located in the Market Heights Shopping Center, Harker Heights, TX

Gentlemen:

    In accordance with the provisions of Section 2.05(a) of the Lease, Landlord hereby informs the Tenant that the Possession Date (including, without limitation, the Delivery of the Land) shall take place at 8:00 A.M. on _____, 200\_\_. This notice shall constitute the Possession Date Notice referred to in Section 2.05 of the Lease. All capitalized terms as used in this Possession Date Notice shall have the same meaning as set forth in the Lease, unless otherwise defined in this Possession Date Notice.

                            MARKET HEIGHTS, LTD.

                            By:  Market Heights Developers, Ltd., a Texas
                                   limited partnership, its general partner

                                By:  DEVCO GP, Inc., a Texas corporation, its
                                     general partner

                          By:_____
                                _____, (Vice) President

cc:    Circuit City Stores, Inc.
        9950 Mayland Drive
        Richmond, Virginia 23233
        Attention: General Counsel
        [_____, Esq.]

## EXHIBIT D

### W-9 Form

**Circuit City Stores, Inc.**     **Substitute W-9 Form**

According to federal tax law, we are required to obtain taxpayer identification numbers for all individuals & businesses to whom reportable payments are made. If you do not provide us with this information, your payments may be subject to federal income tax backup withholding. You may also be subject to a $50 penalty imposed by the Internal Revenue Service under section 6723. Federal law on backup withholding preempts any state or local law remedies such as any right to a mechanic's lien. If you do not furnish a valid TIN or if you are subject to backup withholding, the payor is required to withhold taxes from its payment to you. Backup withholding is not a failure to pay you. It is an advance tax payment. You should report all backup withholding as a credit for taxes paid on your federal income tax return.

Use this form only if you are a U.S. person (including U.S. resident alien).
If you are a foreign person, use the appropriate form W-8.
If you were a nonresident alien and have now become a resident alien, read the note below and attach a statement if necessary.

**Note to U.S. Resident Aliens who formerly were Nonresident Aliens:**
If there is a tax treaty between the U.S. and your country and it contains a "saving clause" to exempt certain types of income from U.S. tax even after you have become a resident Alien, and you want to claim that exemption, fill out all of this form AND attach a page showing:
1. The treaty country
2. The treaty article about the income
3. The article number fro the "saving clause"
4. The type and amount of the income that qualifies for the saving clause
5. Facts that provide a sufficient explanation of why the saving clause applies

**Instructions:**
1. Complete Part 1 by printing your tax information in the boxes that correspond to your tax status.
2. Complete Part 2 if you are exempt from Form 1099 Reporting
3. Complete Part 3 by filling in all lines
4. Fax this form to [ENTER YOUR FAX NUMBER HERE] or mail to Circuit City Stores, Inc.
9954 Mayland Drive, Richmond, VA 23233.
Attn: [ENTER YOUR NAME HERE]

**Part 1 - Tax Status:** (complete only one row of boxes)

**Individuals:** (Fill out this row)
- Individual Name (first name, middle initial, last name)
- Individual's Social Security Number

**Sole Proprietor (or an LLC with one owner):** (Fill out this row)
A sole proprietorship may have a "doing business as" trade name, but the legal name is the name of the business owner.
- Business Owners Name (REQUIRED)
- Business Owner's Social Security Number
- Business or Trade Name (Required if checks should be issued to this name)
- OR Employer Identification Number

**Partnership (or an LLC with multiple owners):** (Fill out this row)
- Partnership's Name on IRS records (see IRS Mailing Label)
- Partnership's Employer Identification Number
- Business or Trade Name (Required if checks should be issued to this name)

**Corporation or Tax-Exempt Entity:** (Fill out this row)
A Corporation may use an abbreviated name or its initials, but its legal name is the name on the articles of incorporation.
- Name of Corporation or Entity
- Employer Identification Number
- Business or Trade Name (Required if payment should be made to this name)

**Part 2 - Exemption:** If exempt from Form 1099 reporting, check your qualifying exemption reason below:

☐ Corporation - Note that there is no corporate exemption for medical & healthcare payments or payments for legal services
☐ Tax Exempt Entity under 501(a) (includes 501(c)(3) or IRA
☐ The United States or any of its agencies or instrumentality's
☐ A State, the District of Columbia, a possession of the United States, or any of their political subdivisions or agencies

## EXHIBIT E

### Commencement Date and Expiration Date Agreement

THIS COMMENCEMENT DATE AND EXPIRATION DATE AGREEMENT, made as of the ____ day of _____, 2008, by and between **MARKET HEIGHTS, LTD.**, a Texas limited partnership ("**Landlord**") and **CIRCUIT CITY STORES, INC.**, a Virginia corporation ("**Tenant**").

### WITNESSETH:

WHEREAS, Landlord is the owner of a certain shopping center known as Market Heights Shopping Center (the "**Shopping Center**"), situated in Harker Heights, TX;

WHEREAS, by that certain Lease Agreement dated as of _____ __, 200__ (the "**Lease**"), Landlord leased a portion (the "**Premises**") of the Shopping Center to Tenant;

WHEREAS, Tenant is in possession of the Premises and the Term of the Lease has commenced; and

WHEREAS, under Section 2.10 of the Lease, Landlord and Tenant agreed to enter into an agreement setting forth certain information in respect of the Premises and the Lease.

NOW, THEREFORE, Landlord and Tenant agree as follows:

1. The Commencement Date occurred on _____, 200___.

2. The **Initial Lease Term** shall expire on January 31, 20___, unless Tenant exercises any option to extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

3. The date of commencement of the **first Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless Tenant exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

4. The date of commencement of the **second Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless Tenant exercises any option to further extend the Term of the Lease or unless the Lease terminates earlier as provided in the Lease.

5. The date of commencement of the **third Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless the Lease terminates earlier as provided in the Lease.

6. The date of commencement of the **fourth Extension Period** shall be February 1, 20___, if Tenant effectively exercises its option in respect thereof, and if Tenant does so, the Term of the Lease shall expire on January 31, 20___, unless the Lease terminates earlier as provided in the Lease.

7. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Lease.

IN WITNESS WHEREOF, the parties hereto have caused this Commencement Date and Expiration Date Agreement to be executed the date and year first above written.

**LANDLORD:**

MARKET HEIGHTS, LTD., a Texas limited partnership

By: Market Heights Developers, Ltd., a Texas limited partnership, its general partner

    By: DEVCO GP, Inc., a Texas corporation, its general partner

    By:_____
    Name:_____
    Title:_____

**TENANT:**

**CIRCUIT CITY STORES, INC.**, a Virginia corporation

By:_____
   John B. Mulleady
   Vice President, Real Estate and Construction

E-2

EXHIBIT F

Prohibited Uses

"Prohibited Uses" shall mean any one or more of the following uses:

No use shall be permitted in the Shopping Center which is inconsistent with the operation of a first-class retail shopping center. Without limiting the generality of the foregoing, the following uses shall not be permitted:

(a) Any use which emits an obnoxious odor, noise or sound which can be heard or smelled outside of any Building in the Shopping Center.

(b) An operation primarily used as a storage warehouse operation and any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation.

(c) Any "second hand" store, "surplus" store, or pawn shop.

(d) Any mobile home park, trailer court, labor camp, junkyard, or stockyard; provided, however, this prohibition shall not be applicable to the temporary use of construction trailers during periods of construction, reconstruction or maintenance.

(e) Any dumping, disposing, incineration or reduction of garbage; provided, however, this prohibition shall not be applicable to garbage compactors located near the rear of any Building.

(f) Any fire sale, bankruptcy sale (unless pursuant to a court order) or auction house operation.

(g) Any central laundry, dry cleaning plant or laundromat; provided, however, this prohibition shall not be applicable to nominal supportive facilities for on-site service oriented to pickup and delivery by the ultimate consumer as the same may be found in retail shopping centers in the metropolitan area where the Shopping Center is located.

(h) Any automobile, truck, trailer or recreational vehicle sales, leasing, display or body shop repair operation; provided that one national tire, auto and battery store such as that operated by Firestone, Goodyear, or Discount Tire shall be permitted within Shopping Center West.

(i) Any bowling alley or skating rink.

(j) Any movie theater or live performance theater, other than a movie theater within the Building Area designated as "Cinemark" on the Site Plan.

(k) Any hotel, motel, short or long term residential use, including but not limited to: single family dwellings, townhouses, condominiums, other multi-family units, and other forms of living quarters, sleeping apartments or lodging rooms.

F-1

(l) Any veterinary hospital or animal raising or boarding facility; provided, however, this prohibition shall not be applicable to pet shops. Notwithstanding the forgoing exception, any veterinary or boarding services provided in connection with the operation of a pet shop shall only be incidental to such operation; the boarding of pets as a separate customer service shall be prohibited; all kennels, runs and pens shall be located inside the Building; and the combined incidental veterinary and boarding facilities shall occupy no more than fifteen percent (15%) of the Floor Area of the pet shop.

(m) Any mortuary or funeral home.

(n) Any establishment selling or exhibiting "obscene" material.

(o) Any establishment selling or exhibiting drug-related paraphernalia or which exhibits either live or by other means to any degree, nude or partially clothed dancers or wait staff; provided that the foregoing shall not prohibit a movie theatre from exhibiting films that are no adult, x-rated or similarly designated due to their sexually explicit content.

(p) Any massage parlors or similar establishments (other than massage facilities incidental to health spas or fitness centers which are covered in subparagraph (R) below).

(q) Any bar, tavern, Restaurant or other establishment whose reasonably projected annual gross revenues from the sale of alcoholic beverages for on-premises consumption exceeds forty percent (40%) of the gross revenues of such business.

(r) Any health spa, fitness center or workout facility; provided that the same shall be permitted if located no closer than 300 feet to the Building Area on the Target Tract.

(s) Any flea market, amusement or video arcade, pool or billiard hall, car wash (unless incidental to a retail fuel center situated on Pad 12 or in the portion of the Shopping Center situated to the west of the main access drive off U.S. Highway 190 as depicted on the Site Plan) or dance hall; no other gas station shall be allowed except as described herein.

(t) Any training or educational facility, including but not limited to: beauty schools, barber colleges, reading rooms, places or instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this prohibition shall not be applicable to (i) on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center, or (ii) one children's educational center and/or one consumer training facility which, as to operations under clauses (i) and (ii) of this subsection, collectively do not exceed 5,000 square feet of rentable Floor Area in the aggregate and that are located no closer than 300 feet to the Building Area on the Target Tract or the Circuit City tract.

(u) Any gambling facility or operation, including but not limited to: off-track or sports betting parlor; table games such as blackjack or poker; slot machines, video

        poker/blackjack/keno machines or similar devices; or bingo hall. Notwithstanding the foregoing, this prohibition shall not be applicable to government sponsored gambling activities or charitable gambling activities, so long as such activities are incidental to the business operation being conducted by the Occupant.

    (v)    A carnival, amusement park or circus.

    (w)    A facility for any use which is illegal or dangerous, constitutes a nuisance or is inconsistent with an integrated, community-oriented retail and commercial shopping center.

From OEA:

No Restaurant shall be located thereon within three hundred (300) feet of the Building Area located on the Target Tract other than the Building Area containing approximately 19,882 square feet of floor area situated to the west of the Target Tract and facing the theater parking area as depicted on the Site Plan.

No drug store exceeding ten thousand (10,000) square feet of Floor Area shall be permitted, and no store of any size selling or offering for sale any pharmaceutical products requiring the services of a licensed pharmacist shall be permitted.

No pet shop shall be located thereon within three hundred (300) feet of the Building Area located on the Target Tract.

No gas/service station and/or other facility that dispenses gasoline, diesel or other petroleum products as fuel shall be permitted other than within Pad 12 or the portion of the Shopping Center situated to the west of the main access drive off of U.S. Highway 190 as depicted on the Site Plan.

No liquor store offering off-premises sale of alcoholic beverages within three hundred (300) feet of the Building Area on the Target Tract shall be permitted, nor shall any liquor store offering off-premises sale of alcoholic beverages exceeding 10,000 square feet of Floor Area be permitted.

No general merchandise discount retail store occupying in excess of 50,000 square feet of floor area shall be permitted in the Shopping Center, provided that this clause shall not be applicable to department stores such as JCPenney, Belk and Kohls; home improvement stores such as Home Depot and Lowe's; and sports related stores such as Sportsman's Warehouse and Academy.

No toy store exceeding 5,000 square feet of Floor Area shall be permitted.

## EXHIBIT G

Existing Leases

1. Cinemark's lease with Landlord at the Shopping Center.

# EXHIBIT H

## Existing Exclusives

1. **Cinemark** - Landlord further agrees not to lease or sell any space in the Shopping Center, including out-parcels, pads or future phases or additions to the Shopping Center to any entity for the purpose of operating a bowling alley, bingo parlor, bar or lounge (except in conjunction with a restaurant which derives at least 50% of its gross revenues from the sale of food), liquor store (within 900 feet of the Theatre), flea market, "bulk" candy store, popcorn vendor, pool hall, massage parlor (other than a day spa), skating rink, arcade (other than an arcade of less than 1,000 square feet which is located within a restaurant, and except for a Chuck E. Cheese or Pied Piper type restaurant which is at least 300 feet from the Theatre), or adult (i.e. pornographic) book store; and Landlord shall not lease or sell any space in the Shopping Center within 500 feet of the Demised Premises for any post office or video rental or tape sales. [NOTE: Landlord hereby represents and warrants to Circuit City Stores, Inc. that the Cinemark premises is located more than 500 feet from the Circuit City Premises.]

Landlord covenants and agrees that Landlord shall not make or permit such use of any adjacent store space, building, or land owned, leased, or controlled by Landlord as to disturb the operation of the Theatre by obnoxious odors or noises or otherwise; and that any document granting occupancy rights, including but not limited to any lease or leases of such adjoining store space, building, or land so owned, leased, or controlled shall contain appropriate provisions against such uses by the occupants thereof. It is agreed that smell of smoke from a restaurant grille shall not be deemed an offensive odor.

2. **Barnes & Noble** - SUBJECT TO THE TERMS OF THAT CERTAIN LETTER AGREEMENT DATED 1-20-06 BETWEEN BARNES &NOBLE AND CIRCUIT CITY STORES, INC.

So long as Tenant is not in monetary default hereunder (after the expiration of any applicable cure period), Landlord, and its successors and assigns, shall not (a) operate or permit under any circumstances to be operated within the Shopping Center any other store or "Kiosk" (as hereinafter defined) selling or displaying for sale or rental any of those items described in clauses (i), (ii) and/or (iii) of the first (1st) sentence of Paragraph 7.1 [set forth below] (collectively, the "Exclusive Items"), (b) operate or permit under any circumstances to be operated within the Shopping Center (including within a Kiosk) any separately demised newsstand or magazine rack, regardless of size, or (c) operate or permit under any circumstances to be operated within the Shopping Center any other Coffee Shop; provided, that Landlord shall be permitted to operate one (1) other Coffee Shop so long as it is located in the "Permissible Coffee Area" (as shown on the Site Plan). The Incidental Sale (as hereinafter defined) of one, all or any combination of the Exclusive Items in connection with the overall business of another operator or tenant, or the sale of coffee, tea or other beverages by a non-Coffee Shop restaurant operator or tenant as an incidental part of its general restaurant operation, shall not be deemed a violation of this Paragraph 7.5. As used herein, "Incidental Sale" shall mean the lesser of (x) seven percent (7%) in the aggregate of such operator's or tenant's display area and (y) seven hundred fifty (750) square feet in the aggregate of such operator's or tenant's display area (inclusive of allocable aisle space). Landlord hereby covenants and

H-1

agrees with Tenant that neither Landlord nor any affiliate of Landlord shall operate or lease, or permit to be operated or leased, any other store located in the Adjacent Parcels (defined below) which (1) is a bookstore such as that operated by Barnes & Noble Booksellers, Borders Books or Books 'A' Million, as the same may evolve over time or (2) devotes more than forty percent (40%) of the display area in their leased premises to the display for sale and/or rental of the Exclusive Items. As used herein, the term "Adjacent Parcels" shall mean and refer to any land that is now or hereafter owned or controlled by Landlord (or, as the case may be, Landlord's affiliate) that is contiguous or adjacent to the Shopping Center, but for any intervening road, street, alley or highway.

Tenant may use the Premises for the purpose of the display and retail sale and/or rental of (i) books, magazines, periodicals and newspapers in print, (ii) books, magazines, periodicals and newspapers on tape, disk, CD-ROM, DVD and/or any other media, computer software and computer games, as well as any items which are technological evolution of any of the foregoing items, together with various media and merchandise incidental thereto, (iii) audio compact discs and other forms of recorded music, (iv) video tapes and disks, video games, (v) other merchandise typically sold in Tenant's other stores and (vi) any other lawful retail use. Tenant may, at its sole option, also operate, or grant a concession or sublease for the operation of, a "coffee or espresso bar" or "coffee shop" or similar operation within the Premises providing its customers with beverages, food and other related items including, without limitation, coffee, tea and other beverages, pastries, sandwiches, snacks and other pre-prepared or packaged food or beverage items, as well as related merchandise, either for sale or complimentary and for either on-site or take-out consumption (for convenience, a "Coffee Shop").

Landlord shall not lease or permit the use of space in the Shopping Center for (i) any prohibited use set forth on Exhibit N attached hereto; (ii) any restaurant within three hundred feet (300') of the Premises; or (iii) any nail salon within one hundred feet (100') of the storefront of the Premises. Additionally, no exterior identification signs attached to any building of the Shopping Center shall be: (1) flashing, moving or audible signs; (2) signs employing exposed raceways (provided that Tenant and other tenants of the Shopping Center shall have the right to employ the foregoing only for the installation of internally illuminated self-contained channel letters), exposed neon tubes, exposed ballast boxes, or exposed transformers; or (3) paper or cardboard signs (other than professionally-prepared interior window signs advertising special sales within the subject premises), temporary signs (other than contractor's signs), stickers or decals; provided, however, that the foregoing shall not prohibit the placement at the entrance of each such premises of (A) a small sticker or decal which indicates hours of business, emergency telephone numbers, credit cards accepted and other similar information and/or (B) a small sticker or decal which contains the words "No Solicitation" or words of like import.

No use shall be permitted in the Shopping Center which is inconsistent with the operation of a first-class retail shopping center. Without limiting the generality of the foregoing, the following uses shall not be permitted:

a. Any use which emits an obnoxious odor, noise or sound which can be heard or smelled outside of any Building in the Shopping Center.

b. An operation primarily used as a storage warehouse operation and any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation.

c. Any "second hand" store, "surplus" store, or pawn shop.