agrees with Tenant that neither Landlord nor any affiliate of Landlord shall operate or lease, or permit to be operated or leased, any other store located in the Adjacent Parcels (defined below) which (1) is a bookstore such as that operated by Barnes & Noble Booksellers, Borders Books or Books 'A' Million, as the same may evolve over time or (2) devotes more than forty percent (40%) of the display area in their leased premises to the display for sale and/or rental of the Exclusive Items. As used herein, the term "Adjacent Parcels" shall mean and refer to any land that is now or hereafter owned or controlled by Landlord (or, as the case may be, Landlord's affiliate) that is contiguous or adjacent to the Shopping Center, but for any intervening road, street, alley or highway.

Tenant may use the Premises for the purpose of the display and retail sale and/or rental of (i) books, magazines, periodicals and newspapers in print, (ii) books, magazines, periodicals and newspapers on tape, disk, CD-ROM, DVD and/or any other media, computer software and computer games, as well as any items which are technological evolution of any of the foregoing items, together with various media and merchandise incidental thereto, (iii) audio compact discs and other forms of recorded music, (iv) video tapes and disks, video games, (v) other merchandise typically sold in Tenant's other stores and (vi) any other lawful retail use. Tenant may, at its sole option, also operate, or grant a concession or sublease for the operation of, a "coffee or espresso bar" or "coffee shop" or similar operation within the Premises providing its customers with beverages, food and other related items including, without limitation, coffee, tea and other beverages, pastries, sandwiches, snacks and other pre-prepared or packaged food or beverage items, as well as related merchandise, either for sale or complimentary and for either on-site or take-out consumption (for convenience, a "Coffee Shop").

Landlord shall not lease or permit the use of space in the Shopping Center for (i) any prohibited use set forth on Exhibit N attached hereto; (ii) any restaurant within three hundred feet (300') of the Premises; or (iii) any nail salon within one hundred feet (100') of the storefront of the Premises. Additionally, no exterior identification signs attached to any building of the Shopping Center shall be: (1) flashing, moving or audible signs; (2) signs employing exposed raceways (provided that Tenant and other tenants of the Shopping Center shall have the right to employ the foregoing only for the installation of internally illuminated self-contained channel letters), exposed neon tubes, exposed ballast boxes, or exposed transformers; or (3) paper or cardboard signs (other than professionally-prepared interior window signs advertising special sales within the subject premises), temporary signs (other than contractor's signs), stickers or decals; provided, however, that the foregoing shall not prohibit the placement at the entrance of each such premises of (A) a small sticker or decal which indicates hours of business, emergency telephone numbers, credit cards accepted and other similar information and/or (B) a small sticker or decal which contains the words "No Solicitation" or words of like import.

No use shall be permitted in the Shopping Center which is inconsistent with the operation of a first-class retail shopping center. Without limiting the generality of the foregoing, the following uses shall not be permitted:

a.  Any use which emits an obnoxious odor, noise or sound which can be heard or smelled outside of any Building in the Shopping Center.

b.  An operation primarily used as a storage warehouse operation and any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation.

c.  Any "second hand" store, "surplus" store, or pawn shop.

d. Any mobile home park, trailer court, labor camp, junkyard, or stockyard; provided, however, this prohibition shall not be applicable to the temporary use of construction trailers during periods of construction, reconstruction or maintenance.

e. Any dumping, disposing, incineration or reduction of garbage; provided, however, this prohibition shall not be applicable to garbage compactors located near the rear of any Building.

f. Any fire sale, bankruptcy sale (unless pursuant to a court order) or auction house operation.

g. Any central laundry, dry cleaning plant or laundromat; provided, however, this prohibition shall not be applicable to nominal supportive facilities for on-site service oriented to pickup and delivery by the ultimate consumer as the same may be found in retail shopping centers in the metropolitan area where the Shopping Center is located.

h. Any automobile, truck, trailer or recreational vehicle sales, leasing, display or body shop repair operation; provided that one national tire, auto and battery store such as that operated by Firestone, Goodyear, or Discount Tire shall be permitted within Shopping Center West.

i. Any bowling alley or skating rink.

j. Any movie theater or live performance theater, other than a movie theater within the Building Area designated as "Cinemark" on the Site Plan.

k. Any hotel, motel, short or long term residential use, including but not limited to: single family dwellings, townhouses, condominiums, other multi-family units, and other forms of living quarters, sleeping apartments or lodging rooms.

l. Any veterinary hospital or animal raising or boarding facility; provided, however, this prohibition shall not be applicable to pet shops. Notwithstanding the forgoing exception, any veterinary or boarding services provided in connection with the operation of a pet shop shall only be incidental to such operation; the boarding of pets as a separate customer service shall be prohibited; all kennels, runs and pens shall be located inside the Building; and the combined incidental veterinary and boarding facilities shall occupy no more than fifteen percent (15%) of the Floor Area of the pet shop.

m. Any mortuary or funeral home.

n. Any establishment selling or exhibiting "obscene" material.

o. Any establishment selling or exhibiting drug-related paraphernalia or which exhibits either live or by other means to any degree, nude or partially clothed dancers or wait staff; provided that the foregoing shall not prohibit a movie theatre from exhibiting films that are not adult, x-rated or similarly designated due to their sexually explicit content..

p. Any massage parlors or similar establishments (other than massage facilities incidental to health spas or fitness centers which are covered in subparagraph (R) below).

q. Any bar, tavern, Restaurant or other establishment whose reasonably projected annual gross revenues from the sale of alcoholic beverages for on-premises consumption exceeds forty percent (40%) of the gross revenues of such business.

r. Any health spa, fitness center or workout facility; provided that the same shall be permitted if located no closer than 300 feet to the Building Area on the Target Tract.

s. Any flea market, amusement or video arcade, pool or billiard hall, car wash (unless incidental to a retail fuel center situated on Pad 12 or in the portion of the Shopping Center situated to the west of the main access drive off U.S. Highway 190 as depicted on the Site Plan) or dance hall.

t. Any training or educational facility, including but not limited to: beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this prohibition shall not be applicable to (i) on-site employee training by an Occupant incidental to the conduct of its business at the Shopping Center, or (ii) one children's educational center and/or one consumer training facility which, as to operations under clauses (i) and (ii) of this subsection, collectively do not exceed 5,000 square feet of rentable Floor Area in the aggregate and that are located no closer than 300 feet to the Building Area on the Target Tract.

u. Any gambling facility or operation, including but not limited to: off-track or sports betting parlor; table games such as blackjack or poker; slot machines, video poker/blackjack/keno machines or similar devices; or bingo hall. Notwithstanding the foregoing, this prohibition shall not be applicable to government sponsored gambling activities or charitable gambling activities, so long as such activities are incidental to the business operation being conducted by the Occupant.

## EXHIBIT I

### Recognition Agreement

THIS RECOGNITION AGREEMENT, made as of the _____ day of _____, 200__, by and between **MARKET HEIGHTS, LTD.**, a Texas limited partnership, having an address at 301 S. Congress, Austin, Texas 78701 ("Landlord"); **CIRCUIT CITY STORES, INC.**, a Virginia corporation, having an office at, 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant"); and _____, a [_____] **[corporation] [limited] [general] [partnership]**, having an address at _____ ("Subtenant").

## R E C I T A L S:

A.      Landlord and Tenant have entered into a certain Lease Agreement (the "Lease") dated as of _____ __, 200__, a short form of which has been recorded in _____, which demises certain premises (the "Premises") located in the Market Heights Shopping Center, Harker Heights, Texas, which Shopping Center is more particularly described on Exhibit A annexed hereto and made a part hereof.

B.      Section 17.04 of the Lease provides that in the event Tenant subleases all or a portion of the Premises for a term of at least five (5) years, Landlord shall, upon Tenant's request, execute and deliver a Recognition Agreement among Landlord, Tenant and each such subtenant in the form attached to the Lease, in recordable form.

C.      Pursuant to a Sublease dated as of _____ (the "Sublease"), Tenant has subleased **[a portion of]** the Premises to Subtenant (the "Subleased Premises").

D.      The parties hereto desire to effectuate the provisions of Section 17.04 of the Lease with respect to the Sublease and the Subleased Premises.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1.      Landlord warrants and represents as follows:

(a)      that it is the fee owner of the Premises,

(b)      that the Lease is unmodified (except as may be otherwise set forth in Exhibit B annexed hereto, if any) and is in full force and effect,

(c)      that the term of the Lease expires on _____, but is subject to _____ [__] renewal periods of **[five (5)]** years each, and

(d)      that Tenant is not in default under the Lease nor has any event occurred which would after notice to Tenant and the passage of time become a default of Tenant under the Lease.

I-1

2.      Landlord hereby acknowledges receipt of a copy of, and consents to and approves, the Sublease and all of the terms, covenants and provisions thereof, and agrees that the exercise by Subtenant of any of its rights, remedies and options contained therein shall not constitute a default under the Lease.

3.      Landlord agrees that whenever it has an obligation with respect to the Premises, or its consent or approval is required for any action of Tenant under the Lease, then, to the extent such obligation, consent or approval relates to the Subleased Premises or Subtenant's use and occupation thereof, it will perform such obligation in accordance with the terms and conditions of the Lease, and, subject to the applicable terms of the Lease, will not unreasonably withhold or unduly delay such consent or approval.

4.      Landlord shall not, in the exercise of any of the rights arising or which may arise out of the Lease or of any instrument modifying or amending the same or entered into in substitution or replacement thereof (whether as a result of Tenant's default or otherwise), disturb or deprive Subtenant in or of its possession or its rights to possession of the Subleased Premises or of any right or privilege granted to or inuring to the benefit of Subtenant under the Sublease, provided that Subtenant is not in default under the Sublease beyond the expiration of any applicable notice and cure period.

5.      In the event of the termination of the Lease by reentry, notice, conditional limitation, surrender, summary proceeding or other action or proceeding, or otherwise, or, if the Lease shall terminate or expire for any reason before any of the dates provided in the Sublease for the termination of the initial or renewal terms of the Sublease and if immediately prior to such surrender, termination or expiration the Sublease shall be in full force and effect, Subtenant shall not be made a party in any removal or eviction action or proceeding nor shall Subtenant be evicted or removed of its possession or its right of possession of the Subleased Premises be disturbed or in any way interfered with, and the Sublease shall continue in full force and effect as a direct lease between Landlord and Subtenant (provided, that in such event, Subtenant shall, for the then remainder of the term of the Sublease, pay fixed rent and additional rent in an amount equal to the greater of (x) the Annual Minimum Rent and Additional Rent then payable under the Lease, prorated on the basis of the ratio which the Floor Area of the Subleased Premises bears to the Floor Area of the Premises, or (y) the annual minimum rent and additional rent then payable under the Sublease).

6.      Landlord hereby waives and relinquishes any and all rights or remedies against Subtenant, pursuant to any lien, statutory or otherwise, that it may have against the property, goods or chattels of Subtenant in or on the Subleased Premises.

7.      Any notices, consents, approvals, submissions, demands or other communications (hereinafter collectively referred to as "Notice") given under this Agreement shall be in writing. Unless otherwise required by law or governmental regulation, Notices shall be deemed given if sent by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid (a) to Landlord, at the address of Landlord as hereinabove set forth or such other address or persons as Landlord may designate by Notice to the other parties hereto, (b) to Tenant, to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to

I-2

Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General
Counsel, and _____, or such other address
or persons as Tenant may designate by Notice to the other parties hereto, and (c) to Subtenant, at
the address of Subtenant as hereinabove set forth or such other address or persons as Subtenant
may designate by Notice to the other parties hereto.  During the period of any postal strike or
other interference with the mails, personal delivery shall be substituted for registered or certified
mail.  All Notices shall become effective only on the receipt or rejection of same by the proper
parties.

        8.      No modification, amendment, waiver or release of any provision of this
Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or
binding for any purpose whatsoever unless in writing and duly executed by the party against
whom the same is sought to be asserted.

        9.      This Agreement shall be binding on and shall inure to the benefit of the parties
hereto and their respective heirs, legal representatives, successors, assigns and sublessees.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have caused this Recognition Agreement to be executed under seal the date first above written.

## **LANDLORD:**

MARKET HEIGHTS, LTD., a Texas limited partnership

By: Market Heights Developers, Ltd., a
     Texas limited partnership, its general partner

   By: DEVCO GP, Inc., a Texas corporation,
        its general partner

By:_____ _____

Name:_____

Title:_____

## **TENANT:**

**CIRCUIT CITY STORES, INC.**, a Virginia corporation

By:_____ _____

   John B. Mulleady
   Vice President, Real Estate and Construction

## **SUBTENANT:**

_____

By:_____

Name:_____

Title:_____

I-4

STATE OF _____ )
                                    ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came John B. Mulleady to me known, who being by me duly sworn, did depose and say that he is the Vice President, Real Estate and Construction of **CIRCUIT CITY STORES, INC.**, a Virginia corporation, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____


STATE OF _____ )
                                    ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

STATE OF _____)
                                                        ) : ss.
COUNTY OF _____)

      On this ____ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____

Notary Public

My Commission Expires:

_____

I-6

## EXHIBIT J

After recording, return to:
Pamela G. Kostas
Kostas & Birne, LLP
530 One Turtle Creek Village
3878 Oak Lawn Avenue
Dallas, Texas 75219

### Subordination, Non-Disturbance and Attornment Agreement

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT
AGREEMENT, made as of the _____ day of _____, 200__, by and between
_____, a _____ [corporation] [limited] [general]
[partnership] [national banking association], having an office at _____
_____ (the "Mortgagee") and CIRCUIT CITY STORES, INC., a Virginia
corporation, having an office at, 9950 Mayland Drive, Richmond, Virginia 23233 (the "Tenant").

## W I T N E S S E T H:

WHEREAS, Mortgagee is the holder of a mortgage (the "Mortgage") covering a parcel
of land owned by _____, a _____ [corporation], [limited]
[general] [partnership] (the "Landlord") together with the improvements [to be] erected
thereon (said parcel of land and improvements thereon being hereinafter referred to as the
"Shopping Center" and being more particularly described on Exhibit A attached hereto and made
a part hereof); and

WHEREAS, by a certain Lease Agreement heretofore entered into between Landlord and
Tenant dated as of _____ (the "Lease"), Landlord leased to Tenant a portion of the
Shopping Center, as more particularly described in the Lease (the "Premises"); and

WHEREAS, a copy of the Lease has been delivered to Mortgagee, the receipt of which is
hereby acknowledged; and

[For mortgages existing as of the date Lease is executed: WHEREAS, as an
inducement to Tenant to enter into the Lease, [Section 2.04(f)/Section 19.02] thereof provides
that the Lease is conditioned upon Landlord obtaining this Agreement from Mortgagee; and

WHEREAS, the parties desire to satisfy the foregoing condition and to provide for the
non-disturbance of Tenant by the holder of the Mortgage; and]

[For mortgages occurring after the Lease is executed: WHEREAS, Section 19.01 of
the Lease provides that the Lease shall become subject and subordinate to a mortgage
encumbering the fee interest of Landlord in and to the Shopping Center if and when a non-
disturbance agreement is entered into with respect to such mortgage; and

WHEREAS, the parties hereto desire to effect the subordination of the Lease to the
Mortgage and to provide for the non-disturbance of Tenant by Mortgagee.]

J-1

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1.      Mortgagee hereby consents to and approves the Lease and the term thereof, including the options to extend the term as set forth in the Lease, and covenants and agrees that the exercise by Tenant of any of the rights, remedies and options therein contained shall not constitute a default under the Mortgage.

2.      Tenant covenants and agrees with Mortgagee that the Lease is made and shall continue hereafter to be subject and subordinate to the lien of the Mortgage, and to all modifications and extensions thereof (and such subordination shall not lessen or diminish Tenant's rights under the Lease), subject, however, to the provisions of this Agreement.

3.      Mortgagee agrees that so long as the Lease shall be in full force and effect, and so long as Tenant shall not be in default under the Lease beyond any applicable notice and grace period:

(a)     Tenant shall not be named or joined as a party or otherwise in any suit, action or proceeding for the foreclosure of the Mortgage or to enforce any rights under the Mortgage or the bond or note or other obligation secured thereby;

(b)     The possession by Tenant of the Premises and Tenant's rights thereto shall not be disturbed, affected or impaired by, nor will the Lease or the term thereof be terminated or otherwise affected by (i) any suit, action or proceeding brought upon the Mortgage or the bond or note or other obligation secured thereby, or for the foreclosure of the Mortgage or the enforcement of any rights under the Mortgage, or by any judicial sale or execution or other sale of the Premises or the Shopping Center, or any deed given in lieu of foreclosure, or by the exercise of any other rights given to any holder of the Mortgage or other documents as a matter of law, or (ii) any default under the Mortgage or the bond or note or other obligation secured thereby; and

(c)     All condemnation awards and insurance proceeds paid or payable with respect to the Premises or any other part of the Shopping Center shall be applied and paid in the manner set forth in the Lease.

4.      If Mortgagee or any future holder of the Mortgage shall become the owner of the Shopping Center by reason of foreclosure of the Mortgage or otherwise, or if the Shopping Center shall be sold as a result of any action or proceeding to foreclose the Mortgage, or transfer of ownership by deed given in lieu of foreclosure, the Lease shall continue in full force and effect, without necessity for executing any new lease, as a direct lease between Tenant and the then owner of the Shopping Center, as "landlord", upon all of the same terms, covenants and provisions contained in the Lease, and in such event:

(a)     Tenant shall be bound to such new owner under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) and Tenant

J-2

hereby agrees to attorn to such new owner and to recognize such new owner as "Landlord" under the Lease; and

(b)      Such new owner shall be bound to Tenant under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) which such new owner hereby agrees to assume and perform and Tenant shall, from and after the date such new owner succeeds to the interest of "landlord" under the Lease, have the same remedies against such new owner for the breach of any covenant contained in the Lease that Tenant might have had under the Lease against Landlord if such new owner had not succeeded to the interest of "landlord"; provided, however, that such new owner shall not be:

(i)      liable for any act or omission of any prior landlord (including Landlord) unless such act or omission continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(ii)      subject to any defenses which Tenant may have against any prior landlord (including Landlord) unless resulting from any default or breach by such prior landlord which continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(iii)      subject to any offsets which Tenant may have against any prior landlord, except to the extent such offsets are expressly provided under the Lease and Mortgagee has received notice thereof and the opportunity to cure within the applicable time periods set forth in the Lease (it being further agreed that offsets under the Lease that were deducted by Tenant prior to the date upon which the new owner succeeds to the interest of such prior landlord shall not be subject to challenge);

(iv)      bound by any annual minimum rent or additional rent which Tenant might have paid for more than one month in advance of its due date under the Lease to any prior landlord (including Landlord), unless such additional rent is paid in accordance with the applicable provisions of the Lease; or

(v)      bound by any amendment or modification of the Lease made without its consent; notwithstanding the foregoing, Mortgagee acknowledges that the Lease specifically provides for amendments thereof upon the occurrence of certain events described in the Lease (such as, for example, an amendment to the Lease confirming the measurement of the Premises), and, by its execution below, Mortgagee agrees to recognize such amendments as part of the Lease, and Mortgagee further agrees that such new owner shall also be bound by such amendment(s) to the Lease, without any consent on the part of Mortgagee or such new owner.

(c)      Tenant's obligations hereunder shall be effective only so long as Mortgagee is bound to Mortgagee's obligations hereunder.

5.      Tenant will notify Mortgagee of any default by Landlord under the Lease which would entitle Tenant to terminate the Lease or abate the rent payable thereunder and agrees that notwithstanding any provision of the Lease, no notice of termination thereof nor any abatement

J-3

shall be effective unless Mortgagee has received the aforesaid notice and has failed to cure the subject default within the same time period allowed Landlord under the Lease. It is understood that the abatement provisions of this Section relate to abatements by reason of Landlord's default and do not apply to provisions of the Lease whereby Tenant has the automatic right to abate rentals such as, for example, abatement upon casualty or condemnation.

6.      Neither the Mortgage nor any other security instrument executed in connection therewith shall encumber or be construed as subjecting in any manner to the lien thereof, any trade fixtures, signs or other personal property at any time furnished or installed by or for Tenant or its subtenants or licensees on the aforementioned property regardless of the manner or mode of attachment thereof.

7.      Any notices of communications given under this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid, (a) if to Mortgagee, at the address of Mortgagee as hereinabove set forth or at such other address or persons as Mortgagee may designate by notice in the manner herein set forth, or (b) if to Tenant, to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to Circuit City Stores, Inc., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, or such other address or persons as Tenant may designate by notice in the manner herein set forth. All notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) at the address of the addressee.

8.      This Agreement shall bind and inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors, assigns, and sublessees.

9.      This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

10.     This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

**[to add if Tenant's memorandum of lease has been recorded prior to the subject mortgage]** NOTE: THIS AGREEMENT BY TENANT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL ANY PRIOR MORTGAGES ON THIS PROPERTY HAVE BEEN SATISFIED SO THAT TENANT'S PRIOR AGREEMENTS TO ATTORN TO SAID MORTGAGES AND/OR TO SUBORDINATE ITS LEASE TO SAID MORTGAGES SHALL HAVE BEEN EXTINGUISHED.

IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

-Signature Page Follows-

**MORTGAGEE:**

_____

Date:_____

By:_____
Name:_____
Title:_____

**TENANT:**

**CIRCUIT CITY STORES, INC.**, a Virginia
corporation

Date:_____

By:_____

John B. Mulleady
Vice President, Real Estate and Construction

STATE OF _____ )

                               ) : ss.

COUNTY OF _____ )

       On this ___ day of _____, 200__, before me personally came John B. Mulleady to me known, who being by me duly sworn, did depose and say that he is the Vice President, Real Estate and Construction of **CIRCUIT CITY STORES, INC.,** a Virginia corporation, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                  _____

                                    Notary Public

My Commission Expires:

_____


STATE OF _____ )

                               ) : ss.

COUNTY OF _____ )

       On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                    _____

                                    Notary Public

My Commission Expires:

_____

H:\44050056-Killeen (Harker Heights, TX)\Lease Ver 9.DOC

## EXHIBIT K

Permitted Exceptions

1.    Operation and Easement Agreement recorded in Volume 6279 at Page 807 of the Real Property Records of Bell County, Texas.

2.    Declaration of Restrictive Covenants recorded in Volume 6280 at Page 1 of the Real Property Records of Bell County, Texas.

3.    Electric power line easement granted to Texas Power & Light Company recorded in Volume 828 at Page 377 of the Real Property Records of Bell County, Texas.

4.    Electric power line easement granted to Texas Power & Light Company recorded in Volume 840 at Page 115 of the Real Property Records of Bell County, Texas.

5.    Electric distribution line easement granted to Texas Power & Light Company recorded in Volume 1444 at Page 519 of the Real Property Records of Bell County, Texas.

6.    Electric distribution line easement granted to Mid-Texas Telephone Company recorded in Volume 1103 at Page 134 of the Real Property Records of Bell County, Texas. **[Landlord has agreed to terminate or relocate this easement prior to the Possession Date. Landlord hereby agrees to defend, protect, indemnify and hold harmless Tenant from and against all claims or demands, including any actions or proceedings brought thereon, and all costs, expenses and liabilities of any kind relating thereto, including reasonable attorneys' fees and cost of suit arising out of or resulting from the existence of this easement]**

7.    Electric power line easement granted to Texas Power & Light Company recorded in Volume 1103 at Page 124 of the Real Property Records of Bell County, Texas.

8.    Drainage, sewer and utility easement granted to the City of Harker Heights recorded in Volume 3849 at Page 616 of the Real Property Records of Bell County, Texas.

9.    The following matters as shown on the ALTA/ACSM Land Title Survey dated September 15, 2006, as last revised December 1, 2006, prepared by David Petree, R.P.L.S. No. 1890:

    A.    Utility easement 15 ft. in width along the south property line;

    B.    Utility easement 10 ft. in width along the southeast property line;

    C.    Utility easement 20 ft. in width along the east property line; and

    D.    Wire fence inset/outset along the north, east and southeast property line.

## EXHIBIT L

### Memorandum of Lease

After recording, return to:
Pamela G. Kostas
Kostas & Birne, LLP
530 One Turtle Creek Village
3878 Oak Lawn Avenue
Dallas, Texas 75219

_____

(The Above Space for Recorder's Use Only)

THIS MEMORANDUM OF LEASE, made as of _____, 2007 by and between **MARKET HEIGHTS, LTD.**, a Texas limited partnership, having an office at 301 S. Congress, Austin, Texas 78701 (**"Landlord"**), and **CIRCUIT CITY STORES, INC.**, a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233 (**"Tenant"**).

Preliminary Statement

Landlord is the fee owner of certain real property located in the County of Bell, State of Texas, as more particularly described on Exhibit A hereto annexed, together with improvements constructed or to be constructed thereon (the **"Shopping Center"**). Landlord and Tenant, as of the date hereof, have entered into a lease (the **"Lease"**) demising a portion of the Shopping Center as more particularly described therein (the **"Premises"**) to Tenant. In connection therewith, Landlord and Tenant have entered into this Memorandum to confirm the demise of the Premises and to provide notice to any interested party of such demise and of the terms and provisions of the Lease.

NOW, THEREFORE, the parties state as follows:

1.      All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Lease.

2.      The terms and conditions of the Lease are incorporated herein as though set forth in full, whereby Tenant may have and hold the Premises together with any and all rights, benefits, privileges and easements, now or hereafter appurtenant thereto, at the rental and upon the terms and conditions therein stated, for an initial term of approximately ten (10) years commencing on the Commencement Date (the **"Initial Lease Term"**). Under the terms of the Lease, Tenant has the right to extend the Initial Lease Term for four (4) separate and additional periods of five (5) years each after the expiration of the Initial Lease Term.

3.      This Memorandum of Lease is executed for the purpose of recordation in order to give notice of all of the terms, provisions and conditions of the Lease, including, without limitation:

(i)      that, subject to certain exceptions more particularly set forth in the Lease, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any "**Affiliated Land**" (defined in the Lease) to be occupied, for the sale, rental, installation, servicing and/or repairing, either singly or in any combination, of consumer, office and/or automotive electronics products, including, without limitation, televisions, stereos, speakers, video and audio recorders and players and cameras; computer hardware and software and related software services (which include internet access services, entertainment software and entertainment media [such as, by way of example only, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment]); cellular and wireless telephones and telecommunication devices and related accessories; motor vehicle audio, stereo and telephone systems; and technological evolutions of the foregoing;

(ii)     the restrictions set forth therein on Landlord's ability to lease certain portions of the Shopping Center for certain uses which are otherwise prohibited by the terms of the Lease;

(iii)    provisions set forth therein regarding Tenant's right to install and maintain signage upon the exterior of the Premises and upon a pylon and/or monument sign located at the Shopping Center;

(iv)     provisions set forth therein regarding Tenant's right to use (and to permit Tenant's customers, employees, agents and contractors to use) certain common areas of the Shopping Center (such as, without limitation, the parking facilities of the Shopping Center); and

(v)      provisions set forth therein regarding certain areas in the Shopping Center in which no improvements are to be constructed, or changes made without the consent of the Tenant.

4.      In addition to those terms hereinabove set forth, the Lease contains numerous other terms, covenants and conditions which likewise affect not only the Premises but also the Shopping Center, and notice is hereby given that reference should be had to the Lease directly with respect to the details of such terms, covenants and conditions.  The Lease and exhibits thereto are hereby incorporated by reference in this Memorandum of Lease and the parties hereby ratify and confirm the Lease as if said Lease were being re-executed by them and recorded.  In the event of any conflict between the provisions of this instrument and the Lease, the provisions of the Lease shall control.

**IN WITNESS WHEREOF**, the parties hereto have executed this Memorandum of Lease as of the day and year first above written.

**LANDLORD:**

**MARKET HEIGHTS, LTD.,** a Texas limited partnership

By: Market Heights Developers, Ltd., a Texas limited partnership, its general partner

    By: DEVCO GP, Inc., a Texas corporation, its general partner

Date:_____

By:_____
Name:_____
Title:_____

**TENANT:**

**CIRCUIT CITY STORES, INC.,** a Virginia corporation

Date:_____

By:   _____

    John B. Mulleady
    Vice President, Real Estate and Construction

STATE OF _____ )
                                                              ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 2007, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

STATE OF _____ )
                                                              ) : ss.
COUNTY OF _____ )

On this ___ day of _____, 2007, before me personally came John B. Mulleady to me known, who being by me duly sworn, did depose and say that he is the Vice President, Real Estate and Construction of **CIRCUIT CITY STORES, INC.**, a Virginia corporation, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

## EXHIBIT A

## Legal Description of the Shopping Center

## EXHIBIT M

### Indemnification Agreement

  This INDEMNIFICATION AGREEMENT is made this _____ day of _____, _____, between _____, a _____ (hereinafter referred to as "Landlord") and **CIRCUIT CITY STORES, INC.**, a Virginia corporation (hereinafter referred to as "Tenant").

### WITNESSETH:

  Landlord and Tenant have entered into a Lease (the "Lease"), dated _____ whereby Landlord has leased to Tenant a portion of the real property located in _____, Bell County, Texas (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Premises").

  NOW, THEREFORE, in consideration of the payment of the Landlord Reimbursement as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

  1. Tenant hereby indemnifies and agrees to hold Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises and the Shopping Center as a result of Tenant's construction activities at the Shopping Center. In the event that any mechanic, materialman or other claimant makes claim against the Premises or Shopping Center based upon materials or services provided under contract with Tenant, Tenant shall hold harmless and protect Landlord from any loss, payment, claim or expense related thereto.

  2. Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises or the Shopping Center by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure or by any other means, Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises and the Shopping Center. This indemnity and hold harmless shall not apply to any liens or claims caused by Landlord or Landlord's agents.

  EXECUTED this _____ day of _____ _____, _____.

        LANDLORD:

        **MARKET HEIGHTS, LTD.,** a Texas limited partnership

        By: Market Heights Developers, Ltd., a Texas limited partnership, its general partner

          By: DEVCO GP, Inc., a Texas corporation, its general partner

Date: _____

By: _____
Name: _____
Title: _____

TENANT:

**CIRCUIT CITY STORES, INC.**, a Virginia
corporation

Date: _____

By: _____

John B. Mulleady
Vice President, Real Estate and Construction

## EXHIBIT N

### Pylon Sign Rendering

See Attachment 5 of the Site Design Requirements