## ARTICLE VIII

## USE OF PREMISES

SECTION 8.01 <u>Permitted Use</u>.   The Premises may be used and occupied for any Permitted Use.  However, Tenant shall not use the Premises for any of the Prohibited Uses (as defined in <u>Exhibit F</u>).

SECTION 8.02 <u>Conduct of Operations</u>.  Subject to the other provisions of this Lease (including, without limitation, Article II), Tenant shall initially open its store for business to the public in the Premises for at least one (1) day, not later than the two hundred seventieth (270th) day after the Commencement Date.  Other than as expressly set forth in the preceding sentence, Tenant shall have no obligation to open or operate any business in the Premises, and shall have the right, at any time, to cease to conduct any business operations in the Premises, and Tenant shall incur no liability to Landlord by reason thereof.  If Tenant does not operate or cause to be operated any retail business in the Premises (other than prior to the Commencement Date or during Excused Periods, as defined below) for more than two hundred seventy (270) consecutive days, or three hundred (300) days out any three hundred sixty-five (365) day period, then Landlord shall have the option to terminate this Lease, which option shall be exercisable by giving notice thereof to Tenant by not later than the thirtieth (30th) day after the date on which such 270-day period, or 300th day out of any 365 day period, expires (the "Recapture Notice"), and paying to Tenant, within thirty (30) days after such notice is given, the Unamortized Costs (as defined in Section 8.04(f)).  If Landlord gives the Recapture Notice, then this Lease shall terminate upon the sixtieth (60th) day (the "Recapture Date") after the date on which Tenant receives Landlord's termination notice.  Upon termination of this Lease under this Section 8.02, there shall be no further liability on the part of Landlord or Tenant, except for obligations that expressly survive the expiration or sooner termination of this Lease.  If Landlord fails to pay to Tenant the Unamortized Costs within the thirty (30) day period provided for above and such failure to pay continues through the Recapture Date, then Tenant shall have the option of (a) treating this Lease as being terminated, in which case Landlord's obligation to pay to Tenant the Unamortized Costs shall expressly survive the termination of this Lease, or (b) treating Landlord's Recapture Notice as being null and void, in which event Landlord shall be deemed to have waived Landlord's right to terminate under this Section 8.02.  "Excused Period(s)" shall mean such periods during which the Premises were not open for business (i) because of alterations or renovations, damage or destruction, eminent domain proceedings or actions, Force Majeure, or any act or omission of Landlord, or its employees, agents, or contractors, or (ii) following the execution of a letter of intent for an assignment of this Lease or sublease of all or any portion of the Premises provided that the parties thereto are proceeding in good faith to enter into an assignment of this Lease or sublease and, thereafter, the assignee or sublessee proceeds with due diligence to open the Premises, or portion thereof, for business and such assignee or sublessee actually opens the Premises for business within one hundred twenty (120) days after the execution of such letter of intent.

SECTION 8.03 <u>Leasing Restrictions</u>.  Landlord shall construct, lease, operate, maintain and manage the Shopping Center as a first-class shopping center comparable to other first-class shopping centers in the State.  In that regard, Landlord shall not lease, rent or occupy, or permit to be leased, rented or occupied, any portion of the Shopping Center for any of the Prohibited

15

Uses. In addition, Landlord shall not lease, rent or occupy, or permit to be leased, rented or occupied, any building within three hundred (300) feet of the front entrance (i.e. doorway) of the Premises for use as a restaurant. Upon any breach of the foregoing Section 8.03(a), Tenant may elect to pay Alternative Rent in lieu of Annual Minimum Rent for so long as such violation shall continue.

SECTION 8.04  Tenant's Exclusive.

(a)     Landlord shall not lease, rent or occupy, or permit to be leased, rented, occupied, any other premises in the Shopping Center, or on any land owned or controlled by Landlord or any of its Affiliates within a one (1) mile radius of the Shopping Center during the Term ("Affiliated Land") for the sale, rental, installation, servicing and/or repairing, either singly or in any combination, of the Products (except for furniture and appliances, which shall be permitted without restriction in the Shopping Center). The Incidental Sale (as defined below) of the Products in connection with the overall business of another tenant shall not be deemed a violation this Section 8.04(a). "Incidental Sale" shall mean sales of the Products (except for furniture and appliances, which shall be permitted without restriction in the Shopping Center) in the lesser of (i) two hundred (200) square feet, or (ii) ten percent (10%) of such tenant's or occupant's, or Landlord's or any of its Affiliate's display area. The exclusive use rights granted to Tenant in this Section 8.04(a) (the "Exclusive Use Protection") shall inure to the benefit of any assignee of Tenant's interest in this Lease and to any sublessee of all or part of the Premises. The foregoing Exclusive Use Protection shall not prohibit the operation of Bed Bath & Beyond in the Shopping Center, and Tenant agrees to execute its typical mutual consent letter with such retailer prior to the Effective Date. A copy of said consent letter is attached hereto as Exhibit O.

(b)     The Exclusive Use Protection shall also not apply to a full-line: supermarket (for example, Safeway, Winn-Dixie, or Stop & Shop), department store or discount department store (for example, Wal-Mart, K-Mart, J.C. Penney, Macy's, Kohl's or Target), or discount club (for example, Costco, BJ's Wholesale Club, or Sam's Club); provided, however, that, as to each of the foregoing, such stores (i) are National Tenants or Regional Tenants (as such terms are defined in Section 8.06), (ii) are operated in substantially the same manner as same are operated as of the Effective Date, and (iii) contain at least 80,000 square feet of Floor Area. Additionally, the Exclusive Use Protection shall not apply to EZPawn in connection with Landlord's satisfaction of Section 2.04 (i) of this Lease, but shall apply to any subsequent tenant who attempts to operate a pawn shop within the Shopping Center after the expiration of Landlord's lease with EZPawn.

(c)     Upon any violation of the Exclusive Use Protection, Tenant may elect to pay Alternative Rent in lieu of Annual Minimum Rent for so long as such violation shall continue. If such breach shall continue for more than one hundred eighty (180) consecutive days, then Tenant shall have the right to terminate this Lease at any time thereafter, in which event the applicable provisions of Section 8.04(e) shall control.

(d)     However, if any tenant or other occupant of the Shopping Center violates the Exclusive Use Protection and such violation also constitutes a default under its lease with Landlord, then Tenant's right to pay Alternative Rent pursuant to Section 8.04 (c) shall be tolled provided that Landlord shall have promptly commenced appropriate legal proceedings against

16

such tenant or occupant, and shall thereafter diligently prosecute such proceedings to completion so as to enjoin and prohibit any such violation. If Landlord shall have failed to promptly commence such proceedings, or shall fail thereafter to diligently prosecute the same, or if the violation does not cease within one hundred eighty (180) days after Landlord shall have been made aware of such violation, then Tenant's right to pay Alternative Rent shall apply for as long as such violation exists. In addition, Tenant shall have the right (i) to conduct and prosecute such legal proceedings (including an action for injunctive relief) in its own name, at Landlord's expense, or (ii) in the event the right set forth in clause (i) above is not permitted to be exercised under Laws, to conduct and prosecute such legal proceedings in the name of Landlord, at Landlord's expense, and Landlord shall cooperate with Tenant with respect to such prosecution (including executing any documentation or authorization reasonably required by Tenant in connection with such prosecution and by appearing at any hearing or trial with respect to such prosecution). If Tenant shall have paid Alternative Rent pursuant to this Section 8.04(d) for eighteen (18) consecutive months, then Tenant shall have the rights to terminate this Lease subject to and in accordance with the provisions of Section 8.04(e).

(e)    If Tenant shall have paid Alternative Rent pursuant to Sections 8.04(c) or (d) for eighteen (18) full consecutive months, then Tenant must elect either to (i) terminate this Lease, or (ii) resume paying Annual Minimum Rent from and after the expiration of the thirty (30) day period following the end of such eighteen (18) month period. Tenant shall make such election by notice to Landlord within thirty (30) days after the expiration of such eighteen (18) month period. If Tenant fails to make such an election, then Tenant shall be deemed to have elected to proceed under clause (ii) above. If Tenant elects to terminate this Lease pursuant to Sections 8.04(c) or (d), then this Lease shall terminate on the date set forth in Tenant's notice of termination without further liability on the part of Landlord or Tenant, except: (x) for those obligations which expressly survive the expiration or other termination of this Lease, (y) Landlord shall (which obligation shall survive the termination of this Lease), within three (3) business days after receiving a statement from Tenant showing the Unamortized Costs, reimburse Tenant for the then unamortized costs (amortized on a straight-line basis over the Term) of any alterations or improvements made by Tenant to the Premises (the "Unamortized Costs"), and (z) Tenant reserves all claims against Landlord for damages resulting from the violation of the Exclusive Use Protection, but shall credit against any such damages the amount of the rent reduction applied to Tenant's Rent under this Section 8.04.

SECTION 8.05    No Exclusives Applicable To Tenant.    Landlord represents and warrants that there are (and will be) no exclusives or use restrictions in effect which would apply to Tenant or any other occupant of the Premises (except for the Bed Bath & Beyond exclusive waived in the consent letter attached as Exhibit O), and Landlord covenants to indemnify, defend and hold Tenant harmless from and against all loss, cost, liability or expense (including, without limitation, reasonable legal fees) incurred by Tenant by reason of the enforcement by any person or entity of such exclusive or other use restriction.

SECTION 8.06    Key Tenant.    Landlord represents and warrants that it has entered into leases and/or operating agreements with the Key Tenant for initial terms expiring no sooner than the expiration of the Initial Lease Term. If, from and after the satisfaction of the Opening Requirement, if the Key Tenant is not open for regular business or the Minimum Ongoing Cotenancy Percentage is not met, then Tenant shall have the option to pay Alternative Rent in

17

lieu of Annual Minimum Rent until such time as the Key Tenant is open for regular business and the Minimum Ongoing Cotenancy Percentage is met. If such Key Tenant ceases operations for a period of twelve (12) consecutive months or more, or if the Minimum Ongoing Cotenancy Percentage is not met for a period of twelve (12) consecutive months or more, then Tenant shall have the right to terminate this Lease upon thirty (30) days notice to Landlord, such notice to be given at any time prior to the date the condition giving rise to such termination right has been satisfied. If Tenant shall elect to terminate this Lease, then this Lease shall terminate on the date set forth in Tenant's notice of termination without further liability on the part of Landlord or Tenant, except: (a) for those obligations which expressly survive the expiration or other termination of this Lease, and (b) Landlord shall (which obligation shall survive the termination of this Lease), within thirty (30) business days after receiving a statement from Tenant showing the Unamortized Costs, reimburse Tenant for the Unamortized Costs. If Tenant does not terminate this Lease within thirty (30) days after the expiration of such twelve (12) month period, then commencing on the day following the end of such thirty (30) day period, Tenant shall resume paying full Annual Minimum Rent. However, Tenant shall again be entitled to exercise its rights under this Section 8.06 each time another Key Tenant ceases operations or the number of retail tenants occupying less than the Minimum Ongoing Cotenancy Percentage worsens by more than five percent (5%). It is hereby understood and acknowledged by Landlord that the Key Tenant may only be replaced, for the purposes of this Section 8.06 only, by a National Tenant or Regional Tenant of comparable use, size and quality of merchandise. "National Tenant(s)" shall mean a tenant(s) operating, as of the applicable date, at least seventy-five (75) retail stores in the continental United States under a single trade name in first-class shopping centers, and "Regional Tenant(s)" shall mean a tenant(s) operating, as of the applicable date, at least thirty-five (35) retail stores in first-class shopping centers in any of the following states under a single trade name: Oklahoma, Mississippi, Texas, Alabama, Louisiana, Colorado, New Mexico, Florida and Arkansas.

## ARTICLE IX

## REPAIRS

SECTION 9.01 Landlord Obligations. Landlord shall, at Landlord's sole expense (and not included in CAM Costs), keep and maintain in good order, condition and repair (including replacements, if necessary) and in a safe condition (a) the roof of the Premises (to be maintained in a watertight condition at all times), all utility systems and lines (including, without limitation, electrical, plumbing and mechanical) serving the Premises (from the point of connection at the Premises to the public utility mains), the exterior of the Premises (including, without limitation, the walls and Other Improvements, but excluding window glass, doors and frames) and the structural portions of the Premises including, without limitation, footings and foundation, floor slab, and structural walls, columns and beams, and (b) any damage to the Premises or the Shopping Center which is caused by (i) defects in Landlord's Work, or (ii) the act or omission of Landlord, its employees, agents or contractors. Landlord's obligations under this Section 9.01 shall be subject to the provisions of Articles XII and XIII. Landlord shall perform any and all repairs and replacements to be performed under this Lease without material interference with or disruption to the normal conduct of any business operations in the Premises. Landlord shall give Tenant at least five (5) days prior notice of any repairs or replacements to the Premises (except in the case of an emergency posing imminent risk of material harm to persons or property, in which

18

event Landlord shall only be required to give such notice as is reasonable under the circumstances). If, in Tenant's reasonable judgment, Landlord's repairs would materially interfere with or disrupt the normal conduct of any business operations in the Premises, then Landlord shall perform such repairs only after the regular hours of operation of the Premises.

SECTION 9.02  Tenant's Obligations.

(a)  Subject to Landlord's obligations under Section 9.01, Tenant shall at all times during the Term, at Tenant's sole expense, keep and maintain in good order, condition and repair and in a safe condition (i) the non-structural, interior elements of the Premises (including painting, window glass, doors and frames, and the heating, ventilation and air conditioning ["HVAC"] units, and the electrical, plumbing, mechanical, and/or alarm systems located in and serving exclusively the Premises), and (ii) any damage to the Premises or the Shopping Center which is caused by the act or omission of Tenant, its employees, agents or contractors. Tenant's obligations under this Section 9.02 shall also be subject to the provisions of Articles XII and XIII and to Landlord's obligation to clear the Premises of all dirt and debris following completion of Landlord's Work pursuant to Section 5.02.

(b)  If any HVAC units must be repaired or replaced during the last three (3) years of the Term (except due to Tenant's negligent acts or omissions), then in light of the fact that the same will require a substantial expenditure by Tenant and will result in a benefit to Landlord following the expiration of the Term, upon the expiration or earlier termination of this Lease (unless such termination results from Tenant's default of its obligations under this Lease), Landlord shall reimburse Tenant for the unamortized portion of the reasonable expenses incurred by Tenant in connection with the replacement of such equipment during the last three (3) years of the Term, based on (i) the date of the installation of such new equipment, and (ii) the useful life of said equipment. The provisions of this Section 9.02(b) shall survive the expiration or earlier termination of this Lease.

SECTION 9.03  Hazardous Materials.

(a)  Landlord represents and warrants to its current actual knowledge that, as of the Effective Date (and as of the Possession Date), there are (and will be) no Hazardous Materials present in the Shopping Center, and Landlord agrees that the removal or neutralization of any Hazardous Materials that become present or become known to be present at the Shopping Center during the Term shall be at the sole cost and expense of Landlord (and not included in CAM Costs), other than Hazardous Materials introduced by Tenant. "Hazardous Materials" shall mean (i) any waste, material or substance (whether in the form of a liquid, a solid, or a gas and whether or not air-borne) which is deemed to be a pollutant or a contaminant, or to be hazardous, toxic, ignitable, reactive, infectious, explosive, corrosive, dangerous, harmful or injurious to public health or to the environment, and which is now or becomes regulated in the future by or under the authority of any applicable local, state or federal laws, judgments, ordinances, orders, rules, regulations, codes or other governmental restrictions or requirements, any amendments or successor(s) thereto, replacements thereof or publications promulgated pursuant thereto (collectively, "Environmental Regulations", and individually, "Environmental Regulation"); (ii) petroleum; (iii) asbestos and asbestos containing materials; (iv) any polychlorinated biphenyl; and (v) any radioactive material, in quantities or used in a manner

19

violating applicable laws. In addition to the foregoing, the term "Environmental Regulations" shall be deemed to include, without limitation, local, state and federal laws, judgments, ordinances, orders, rules, regulations, codes and other governmental restrictions and requirements, any amendments and successors thereto, replacements thereof and publications promulgated pursuant thereto, which deal with or otherwise in any manner relate to, environmental matters of any kind.

(b)     Landlord and Tenant each agree that neither Landlord nor Tenant shall cause or permit any Hazardous Materials to exist on, or to escape, seep, leak, spill or be discharged, emitted or released from the Shopping Center during the Term in violation of any applicable Environmental Regulation.

(c)     Landlord hereby indemnifies Tenant and its successors and assigns, and agrees to hold Tenant and its successors and assigns harmless from and against any and all losses, liabilities, damages, injuries, penalties, fines, costs, expenses and claims of any and every kind whatsoever, including attorneys' fees and costs (collectively, "Environmental Liabilities") paid, incurred or suffered by, or asserted against, Tenant or its successors and assigns with respect to, or as a direct or indirect result of (i) the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the Shopping Center of any Hazardous Materials which were brought into the Shopping Center by Landlord, its agents, or employees, or (ii) a breach by Landlord, its agents, or employees of any Environmental Regulation to which Landlord is subject.

(d)     Tenant hereby indemnifies Landlord and its successors and assigns, and agrees to hold Landlord and its successors and assigns harmless from and against any and all Environmental Liabilities paid, incurred or suffered by, or asserted against, Landlord or its successors and assigns with respect to, or as a direct or indirect result of (i) the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the Premises of any Hazardous Materials which was brought into the Premises by Tenant, its agents or employees, or (ii) a breach by Tenant, its agents or employees of any Environmental Regulation to which Tenant is subject.

(e)     With respect to Hazardous Materials which are or become present at the Shopping Center as the result of any cause whatsoever (other than Hazardous Materials which were brought into the Premises by Tenant, its agents or employees), Landlord shall, at Landlord's sole cost (and not included in CAM Costs), in a good, workmanlike and expeditious manner, and in compliance with Environmental Regulations, perform all work necessary to clean-up, remove and otherwise remediate such Hazardous Materials in compliance with Environmental Regulations. Should the presence of such Hazardous Materials render the Premises Unusable (as defined below) or should Tenant be required to close during the removal or neutralization of such Hazardous Materials by Landlord, Tenant shall notify Landlord and all Rent shall be immediately abated until such time as Tenant can safely resume normal business operations. If such work is not commenced within thirty (30) days after the date (the "Notification Date") that Tenant notifies Landlord of Hazardous Materials rendering the Premises Unusable (or such additional period as may be reasonably required to engage environmental consultants and/or engineers and obtain permits and licenses) or if such work is

20

not completed within ninety (90) days after the Notification Date (or such additional period as may reasonably be required given the nature of the work, provided that Landlord diligently pursues same to completion), then Tenant shall have the right, at any time thereafter, to terminate this Lease. However, Tenant's option to terminate this Lease pursuant to this Section 9.03(e) shall cease (if not exercised prior thereto) at any time the Premises are no longer Unusable. If Tenant shall elect to terminate this Lease, then the Lease shall terminate on the date set forth in Tenant's notice of termination without further liability on the part of Landlord or Tenant, except: (i) for those obligations which survive the expiration or other termination of this Lease pursuant to the express terms of this Lease, (ii) Landlord shall (which obligation shall survive the termination of this Lease), within three (3) business days after receiving a statement from Tenant showing the Unamortized Costs, reimburse Tenant for the Unamortized Cost, and (iii) Tenant reserves all claims against Landlord for damages resulting from a default by Landlord under this Section 9.03. For the purpose of this Section 9.03(e), "Unusable" means that the Tenant does not have access to at least eighty-five percent (85%) of the Premises because of the enforcement of any Environmental Regulation or the remediation of any Hazardous Materials, or because use of the Premises would represent a risk to the health or safety of Tenant, Tenant's employees, agents or invitees.

SECTION 9.04  Surrender of the Premises.  At the expiration or earlier termination of this Lease, Tenant shall surrender the Premises to Landlord in the same condition as it is required to be maintained by Tenant pursuant to Section 9.02 above; excepting, however, reasonable wear and tear, damage by fire or other casualty, and the effects of a Taking (as defined in Section 13.01).

## ARTICLE X

## REQUIREMENTS OF LAW

SECTION 10.01  Landlord's Obligations.  As part of Landlord's Work and throughout the Term, Landlord shall be responsible, at Landlord's sole cost and expense (and not included in CAM Costs), for complying with all applicable laws, statutes, ordinances and regulations of federal, state, county and municipal authorities (collectively, "Laws") affecting the Shopping Center including, without limitation, the Premises, except as specifically provided in Section 5.03 as to CAM Costs.

SECTION 10.02  Tenant's Obligations.  Throughout the Term, Tenant shall be responsible, at Tenant's sole cost and expense, for complying with all Laws affecting the Premises if such compliance is required solely as a result of Tenant's specific manner of use of the Premises (as opposed to retailers in general) and relates to the interior elements of the Premises which are neither structural nor comprise the major building systems serving the Premises.

SECTION 10.03  Right to Contest.  The party responsible for compliance pursuant to Section 10.01 or 10.02 shall have the right to contest the validity of any Law at the expense of the party responsible for compliance, unless such contest would result in any criminal liability imposed upon the other party or subject such other party to any fine or penalty.

21

## ARTICLE XI

## INSURANCE

SECTION 11.01 Landlord's Insurance.

    (a)    Landlord shall maintain in full force and effect from and after the Effective Date and throughout the Term:

        (i)    Commercial general liability insurance with regard to the Common Areas protecting and insuring Landlord, naming Tenant as "additional insured-lessee" for claims arising out of the use or occupancy of the Common Areas and the obligations assumed by Landlord under this Lease, and having a combined single limit of liability of not less than Three Million Dollars ($3,000,000) for bodily injury, death and property damage liability; and

        (ii)    Special Form (formerly known as "All-Risk") property insurance, on a replacement cost basis, in an amount adequate to cover the full insurable replacement value of all of the buildings (other than the Premises) and other insurable improvements in the Shopping Center (exclusive of excavation, footings and foundations), including, without limitation, the Common Areas.

    (b)    Landlord may carry any of its insurance under "blanket policies" covering the Shopping Center and other properties it or any Affiliate of Landlord owns, provided that: (i) the total amount of the insurance available shall be at least the protection equivalent to separate policies in the amounts herein required, and (ii) in all other respects, any such policy or policies shall comply with the applicable provisions of this Article XI. All policies required to be maintained by Landlord pursuant to this Section 11.01 shall provide that any proceeds thereof shall be deposited with the Mortgagee, or if none, to Landlord, in either event to be held in trust by such party and disbursed only in accordance with the provisions of, and for the purposes set forth in, Article XII.

    (c)    Landlord shall be permitted to maintain a deductible as a part of any insurance policy carried by it in compliance with this Section 11.01. However, in no event shall any deductible with regard to the insurance described in Sections 11.01(a)(i) or 11.01(a)(ii) exceed Twenty-Five Thousand Dollars ($25,000), without Tenant's consent.

SECTION 11.02 Tenant's Insurance.

    (a)    Tenant shall maintain in full force and effect from and after the Possession Date and throughout the Term:

        (i)    Commercial general liability insurance protecting and insuring Tenant, naming Landlord as "additional insured-lessor" for claims arising out of the use or occupancy of the Premises by Tenant and having a combined single limit of liability of not less than Three Million Dollars ($3,000,000) for bodily injury, death and property damage liability; and

(ii)    Special Form (formerly known as "All-Risk") property insurance, on a replacement cost basis, in an amount adequate to cover the full insurable replacement value of the Premises, exclusive of excavation, footings and foundations, naming Landlord as "additional insured-lessor".

Upon Landlord's request, Tenant shall also name the Mortgagee as an additional insured, as its interest may appear, on the insurance policies described in Section 11.02(a).

(b)    Tenant may carry any of its insurance under "umbrella policies" and/or "blanket policies" covering the Premises and other locations it or any Affiliate of Tenant owns or leases, provided that: (i) the total amount of the insurance available shall be at least the protection equivalent to separate policies in the amounts herein required, and (ii) in all other respects, any such policy or policies shall comply with the applicable provisions of this Article XI.

(c)    All insurance required to be maintained under this Section 11.02 may be provided under a professionally managed plan of self-insurance provided that Tenant maintains, during the period of such self-insurance, a tangible net worth of at least One Hundred Million Dollars ($100,000,000). To the extent any deductible is maintained as a part of any insurance policy carried by Tenant in compliance with this Section 11.02, Tenant shall be deemed to be covering the amount of that deductible under an informal plan of self-insurance.

SECTION 11.03  Insurance Requirements Generally.

(a)    All insurance required to be maintained by Landlord and Tenant under this Lease shall be maintained with insurance companies qualified to do business in the State, and rated at least A-/VIII by the most current Best's Key Rating Guide (or its equivalent, if such Guide ceases to be published). Each party shall use its diligent efforts to have its insurers provide thirty (30) days (ten (10) days in the event of non-payment of premium) prior notice to the other party of cancellation or non-renewal of any policy required hereunder. Each party shall provide to the other duly executed certificates evidencing the insurance coverage described in Sections 11.01 and 11.02 above, respectively.

(b)    The liability insurance requirements under Sections 11.01(a)(i) and 11.02(a)(i) shall be reviewed by Landlord and Tenant every five (5) years for the purpose of mutually increasing (in consultation with their respective insurance advisors) the minimum limits of such insurance to limits which shall be reasonable and customary for similar facilities of like size and operation in accordance with generally accepted insurance industry standards. The replacement value of the buildings and other insurable improvements constituting the Shopping Center shall be re-evaluated from time to time at the request of either Landlord or Tenant.

SECTION 11.04  Landlord's Insurance Cost.

(a)    The reasonable insurance premiums attributable to the policies required to be maintained by Landlord pursuant to Section 11.01(a)(i) shall be included as part of CAM Costs. If Landlord carries blanket insurance covering the Shopping Center together with other property owned by Landlord, then Landlord shall obtain evidence reasonably satisfactory to Tenant of the cost of such insurance allocable to the Shopping Center and the amount so

23

allocable shall be included in CAM Costs for the purposes of determining Tenant's Share of any insurance premium included in CAM Costs.

(b)     If the rates for any insurance Landlord is required to carry are increased as a result of the use or other activity of any other occupant of the Shopping Center, then the amount of such increase shall be excluded from CAM Costs.  To the extent that Landlord receives a dividend, credit, rebate or other return of a premium which had previously been included in CAM Costs, Landlord shall promptly refund to Tenant Tenant's Share of such dividend, credit, rebate, or return.

(c)     The provisions of this Section 11.04 shall survive the expiration or earlier termination of this Lease.

SECTION 11.05  Indemnity.

(a)     Except as otherwise provided in Section 11.06, Tenant covenants to defend and indemnify Landlord and hold Landlord harmless from and against any and all claims, actions, damages, liabilities and expenses, including reasonable attorneys' fees, (i) in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon the Premises, or any part thereof, or (ii) occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, servants, or licensees, except to the extent such claims, actions, damages, liability and expense are caused by the acts or omissions of Landlord, its agents, contractors, licensees, employees, or other tenants and occupants, or for which any of said parties may be statutorily liable.

(b)     Except as otherwise provided in Section 11.06, Landlord covenants to defend and indemnify Tenant and hold Tenant harmless from and against any and all claims, actions, damages, liabilities and expenses, including reasonable attorneys' fees, (i) in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon any portion(s) of the Shopping Center (excluding the Premises), or (ii) occasioned wholly or in part by any act or omission of Landlord, its agents, contractors, employees, servants, tenants (other than Tenant), occupants or licensees, except to the extent such claims, actions, damages, liability and expense are caused by the acts or omissions of Tenant, its agents, contractors, licensees or employees, or for which any of said parties may be statutorily liable.

SECTION 11.06  Mutual Waiver of Subrogation.

(a)     Landlord and Tenant, on their own behalf and on behalf of anyone claiming under or through either one by way of subrogation, hereby release and waive all rights of recovery and causes of action against each other and their respective Affiliates arising from any and all liability for any loss or damage to property or resulting from damage to such property (and, in either case, any resulting loss of business or rental income), whether caused by the negligence or fault of the other party, which is normally insured under Special Form property insurance (formerly known as "All-Risk") and time element insurance required to be maintained hereunder or under any other property or time element insurance maintained by either party.  If either Landlord or Tenant is a self-insurer or maintains a deductible (as either may be permitted under this Lease), then the self-insuring party or the party maintaining the deductible hereby

releases the other party from any liability arising from any event which would have been covered had the required insurance been obtained and/or the deductible not been maintained.

(b)     Landlord and Tenant shall cause each property insurance policy carried by either of them insuring the Premises, the contents thereof, or the Shopping Center, to provide that the insurer waives all rights of recovery by way of subrogation or otherwise against the other party hereto (and all of such other party's Affiliates) in connection with any loss or damage which is covered by such policy or that such policy shall otherwise permit, and shall not be voided by the releases provided above.

SECTION 11.07  Affiliate.  "Affiliate" shall mean a corporation, partnership, person or other entity which is controlling, controlled by, or under common control with, Landlord or Tenant, as the case may be.  As used in the definition of Affiliate, "control" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities or rights, by contract, or otherwise.

## ARTICLE XII

## DAMAGE OR DESTRUCTION

SECTION 12.01  Landlord's Obligation to Rebuild.  If all or any part of the Shopping Center (including, without limitation, the Premises) is damaged or destroyed by fire, the elements or other casualty, then Landlord shall promptly repair all damage and restore the Shopping Center, other than the Premises, to its condition immediately prior to such damage or destruction. Without limiting Landlord's obligations under this Article XII, the proceeds of the policies required to be obtained and maintained by Landlord pursuant to Section 11.01 shall, to the extent necessary, be used for the performance of such rebuilding and restoration work.   The provisions of this Section 12.01 shall not apply if Landlord or Tenant terminates this Lease pursuant to provision this Article XII.

SECTION 12.02  Tenant's Obligation to Rebuild.  If all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty, then Tenant shall promptly repair all damage and restore the Premises to its condition immediately prior to such damage or destruction (subject to any changes to the Premises that Tenant shall desire to make to the extent same shall otherwise be permitted under Section 14.01). Without limiting Tenant's obligations under this Article XII, the proceeds of the policies required to be obtained and maintained by Tenant pursuant to Section 11.02 shall, to the extent necessary, be used for the performance of such rebuilding and restoration work. The provisions of this Section 12.02 shall not apply if Landlord or Tenant terminates this Lease pursuant to provision this Article XII.

SECTION 12.03  Termination.

(a)     Tenant shall have the right to terminate this Lease:

(i)      if all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty during the last three (3) years of the Term, and the

restoration period is reasonably estimated by Tenant to be in excess of one hundred eighty (180) days,

(ii)    if all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty during the last year of the Term, or

(iii)    if all or any part of the Premises is damaged or destroyed by fire, the elements or other casualty at any time during the Term and such damage or destructions is not covered under the insurance policy(ies) required to be maintained under this Lease by Tenant pursuant to Sections 11.02(a)(ii) or 11.02(b).

Tenant shall notify Landlord of its exercise of such option within forty-five (45) days following the occurrence of such casualty.

(b)    If (i) Landlord fails to commence in good faith Landlord's repair and restoration obligations within ninety (90) days after any damage or destruction, or (ii) Landlord fails to timely complete such repair and restoration within two hundred forty (240) days after such damage or destruction, then Tenant shall have the option, upon notice to Landlord, to elect (y) to complete the repair and restoration to the Common Area and (1) to receive reimbursement therefor in full from Landlord on demand and/or (2) to offset the cost and expense thereof against the payment of Rent and, at Tenant's option, to extend the Term until such time as Tenant, through such offsets, has recouped the entire cost and expense to Tenant of such repair and restoration, or (z) to terminate this Lease effective as of the date of such damage or destruction. The time periods referenced in this Section 12.03(b) shall be subject to Force Majeure, but in no event shall the aggregate of any and all extensions as a result of a Force Majeure delay(s) exceed a period of ninety (90) days.

(c)    If (i) Tenant fails to commence in good faith Tenant's repair and restoration obligations within ninety (90) days after any damage or destruction, or (ii) Tenant fails to timely complete such repair and restoration within two hundred forty (240) days after such damage or destruction, then Landlord shall have the option, upon notice to Tenant, to elect to complete the repair and restoration to the Premises and to receive reimbursement therefor in full from Tenant on demand. The time periods referenced in this Section 12.03(c) shall be subject to Force Majeure, but in no event shall the aggregate of any and all extensions as a result of a Force Majeure delay(s) exceed a period of ninety (90) days.

(d)    If this Lease is terminated, then this Lease shall terminate on the date set forth in Tenant's notice of termination without further liability on the part of either Landlord or Tenant, except: (i) for those obligations which expressly survive the expiration or other termination of this Lease, and (ii) in the case where Tenant terminates this Lease not due to a failure of Landlord to timely restore as required above, Tenant shall thereupon make available to Landlord (1) all insurance proceeds paid by Tenant's insurance carrier, or (2) if self-insured, an amount equal to the reconstruction costs of the Premises or, if the Premises are not being reconstructed, an amount equal to the actual value of the Premises (not to exceed, however, an amount equal to the reconstruction costs of the Premises), to the extent such amounts would have been payable under the insurance outlined in Section 11.02(a)(ii), and (iii) in the case where Tenant terminates the Lease due to a failure of Landlord to perform Landlord's restoration

26

obligations set forth above, Landlord shall (which obligation shall survive the termination of this Lease), within three (3) business days after receiving a statement from Tenant showing the Unamortized Costs, reimburse Tenant for the Unamortized Costs.

## ARTICLE XIII

## CONDEMNATION

SECTION 13.01  Taking.

(a)    In the event of condemnation by eminent domain or similar law, including a sale in lieu thereof to an authority or other entity having the power of eminent domain (a "Taking"), of all or any portion of the Shopping Center, which (i) results in a Taking of (x) any part of the Premises, (y) so much of the Common Areas so as to cause the parking ratio to fall below the Minimum Parking Ratio described in Section 1.01(M) above, or (z) so many of the parking spaces in Tenant's Preferred Area so as to reduce the parking ratio within Tenant's Preferred Area below 5.5 spaces for every 1,000 square feet of Floor Area of the Premises, or (ii) materially and adversely affects ingress or egress to the Premises or the Shopping Center, or (iii) materially prohibits or inhibits Tenant's use of the Premises for a period in excess of sixty (60) consecutive days, then Tenant may terminate this Lease by giving notice to Landlord not more than ninety (90) days after the later of the date on which title vests in the condemning authority or the date Tenant receives notice of said vesting.

(b)    In the event of a Taking of all of the Premises, this Lease shall terminate as of the date of vesting of title or transfer of the Premises, whichever is earlier, without further liability on the part of either Landlord or Tenant, except for those obligations which expressly survive the expiration or other termination of this Lease.

(c)    In the event of a Taking of the Premises, the Common Areas and/or any other area within the Shopping Center, or any portion thereof, for temporary use (specifically one not exceeding ninety (90) days in duration), without the taking of the fee simple title thereto, this Lease shall remain in full force and effect.  All awards, damages, compensation and proceeds payable by the condemnor by reason of such Taking relating to the Premises, or relating to the Common Areas but reasonably attributable to the Premises, for periods prior to the expiration of the Lease shall be payable to Tenant.  All such awards, damages, compensation and proceeds for periods after the expiration of the Lease shall be payable to Landlord.  Anything contained to the contrary notwithstanding, a temporary Taking for any period in excess of ninety (90) days may, at Tenant's option, be deemed a permanent Taking and shall be governed by Section 13.01 (a) or (b), as applicable.

SECTION 13.02  Restoration and Rent Adjustment.  In the event of a Taking, if this Lease is not terminated by Tenant pursuant to Section 13.01, then (a) Landlord shall promptly restore the Shopping Center as nearly as practicable to a complete unit of like quality and character as existed prior to the Taking, which restoration shall, as applicable, include all of Tenant's Work and all other leasehold improvements performed by Tenant, but shall not include Tenant's Property, and (b) if a portion of the Premises is Taken, then from and after the date on

27

C:\Documents and Settings\kgamer\Local Settings\Temporary Internet Files\OLK114\CC Lease Version 11 response V3.DOC
Dallas 1251043_3 7680.4

which title vests in the condemning authority, the Rent shall be equitably reduced in proportion to the area of the Premises subject to the Taking.

SECTION 13.03 <u>Award</u>. In the event of any Taking, Tenant shall be entitled to an amount of the award or compensation paid for such Taking equal to the Unamortized Costs, if any, and the balance shall belong to Landlord. Tenant shall also have the right to claim and recover from the condemning authority such compensation as may be separately awarded or recoverable by Tenant on account of any and all damage to Tenant's business by reason of the condemnation and for or on account of any cost or loss to which Tenant might be put in moving Tenant's Property, or for any other damages compensable separately to Tenant; <u>provided, however</u>, that no such award shall reduce the award payable to Landlord for its fee interest in the Premises. The provisions of this Section 13.03 shall be subject to the provisions of Section 13.01(c) with respect to a temporary Taking.

**ARTICLE XIV**

**ALTERATIONS AND MECHANICS' LIENS**

SECTION 14.01 <u>Tenant's Alteration Rights</u>.

(a)   Tenant shall not perform any structural or exterior alterations or improvements to the Premises (except to the extent same pertain to Tenant's Work) without the prior approval of Landlord; <u>provided, however</u>, that Tenant's alteration of the exterior of the Premises to conform to Tenant's (or any subtenant's) then-current prototypical elevation shall not require Landlord's consent. The provisions of this Section 14.01(a) shall not apply to Tenant's building signage, which shall be governed by the applicable provisions of Article XV.

(b)   Tenant may, from time to time, without the prior approval of Landlord, make non-structural interior alterations and improvements to the Premises as Tenant deems necessary or desirable including, but not limited to, the electrical systems, the HVAC and other mechanical systems, installation of fixtures and equipment, painting, and wall and floor coverings.

(c)   Tenant shall have the right to erect and maintain an antenna, a satellite dish and/or related equipment on the roof of the Premises, provided that Tenant: (i) uses a contractor approved by Landlord for all roof penetrations so as not to violate or invalidate any roof warranties maintained by Landlord, (ii) repairs any damage to the roof caused by the making of the roof penetrations, and (iii) erects and maintains such equipment in accordance with Laws.

(d)   Landlord shall execute and return to Tenant all appropriately completed building department or equivalent applications within ten (10) days after Tenant's request therefor, and will reasonably cooperate with Tenant in the permitting process. If any violation of Laws which is noted against the Shopping Center or the Premises (other than a violation caused by Tenant) prevents Tenant from obtaining a building permit for any alterations or a certificate of occupancy, then, upon request by Tenant, Landlord shall promptly and diligently cause such violation to be removed of record to the extent required to permit Tenant to obtain its building

28

permit or certificate of occupancy, as the case may be. However, if the violation was not caused by Landlord (or any of Landlord's agents, contractors, employees or invitees), then Landlord's obligations under this Section 14.01(d) shall be satisfied by Landlord using diligent, good faith and commercially reasonable efforts to have the responsible party remove such violation of record.

(e)    Landlord shall not make any alterations to the Premises (including, without limitation, changing the design, color or materials of the exterior of the Premises) nor shall Landlord construct an additional floor or floors above or below the Premises. Landlord shall neither make nor permit to be made any alterations to the exterior architectural theme of the remainder of the Shopping Center which would be inconsistent with a first-class shopping center in the State (exclusive of other National Tenants' or Regional Tenants' entrance features), without the prior consent of Tenant.

SECTION 14.02 Mechanics' Liens.    Tenant covenants that Tenant shall promptly discharge of record (by payment, bond, order of a court of competent jurisdiction or otherwise) any mechanic's lien filed against the Premises or all or any part of the Shopping Center for any work, labor, services or materials claimed to have been performed at, or furnished to, the Premises or the Shopping Center, for or on behalf of Tenant, or at the insistence of Tenant, or anyone acting for, through or under Tenant. Similarly, Landlord covenants that Landlord shall promptly discharge of record (by payment, bond, order of a court of competent jurisdiction or otherwise) any mechanic's lien filed any lien against the Premises or all or any part of the Shopping Center for any work, labor, services, materials claimed to have been performed at, or furnished to, the Premises or the Shopping Center, for or on behalf of Landlord, or at the insistence of Landlord, or anyone acting for, through or under Landlord. If either party shall fail to cause any such lien to be discharged within sixty (60) days after the other party shall demand that the former party remove same, then, the demanding party may discharge the same by paying the amount claimed to be due, by bonding or by any other proceeding deemed appropriate by such demanding party, and the amount so paid by such demanding party and/or all costs and expenses including reasonable attorneys' fees incurred by such demanding party in procuring the discharge of such lien shall be reimbursed by the other party upon demand. Nothing contained in this Lease shall be construed as a consent on the part of the Landlord to subject Landlord's estate in the Premises to any lien or liability under any law relating to liens.

## ARTICLE XV

## SIGNS

SECTION 15.01 Tenant's Signs.    Tenant shall have the exclusive right during the Term to erect, maintain, and replace on the storefront and exterior walls of the Premises, and on the side walls of any entrance design element, if any, signs (including, without limitation, under-canopy or blade signs), banners (including temporary banners placed on the storefront of the Premises and such other walls of the Premises as selected by Tenant), awnings, and flags of such size, design and color as Tenant, from time to time, may desire, subject to compliance with Laws. Tenant may erect and maintain in the interior of the Premises any signs it may desire. Tenant agrees to repair any damage to the Premises caused by installation or removal of Tenant's banners.

SECTION 15.02 <u>Pylon Signs</u>.  Landlord shall provide pylons and monuments at the locations shown on the Site Plan.  Landlord, as part of Landlord's Work, shall obtain all governmental approvals and permits for such pylons and monuments (including Tenant's sign panels on all sides of such pylons and monuments).  Tenant's sign panels shall be procured and installed at Tenant's cost.  A rendering of such pylon(s)/monument(s) showing the dimensions of the pylon/monument(s) and the size and position of all panels to be installed thereon, including Tenant's panel, is attached to this Lease as Exhibit N.  Landlord will permit Tenant to use the second (2nd) panel position from the top on the pylon sign along Manhattan Boulevard.  Landlord is in the process of negotiating to acquire some signage rights from the adjacent landowner to provide Landlord with rights to place signage on the refurbished or newly constructed pylon sign along Westbank Expressway.  There is no assurance that Landlord will be able to procure such signage rights and Landlord has no liability for being unable to procure the same.  In the event Landlord procures such signage rights along the Westbank Expressway pylon sign, Landlord will permit Tenant (subject to any priority rights of Key Tenant as to location and size) to have one-half of the signage area that is granted to the Landlord on such Westbank Expressway pylon sign.  In addition, if Landlord makes available to any other tenant in the Shopping Center any other signage located in the Common Areas, then such signage shall also include Tenant's identification sign which shall be higher than (except for Key Tenant) and at least as large as the largest sign made available to such other tenant or tenants whose premises are equal to or smaller than the Premises.  Landlord shall not change or alter the pylons or monuments bearing Tenant's sign panel(s) without obtaining Tenant's prior consent.  The cost of maintaining all pylons and monuments bearing Tenant's sign panel(s) (but not the cost of individual tenants' signs thereon or the cost of the construction of the pylons and monuments) and the cost of any electricity used to illuminate them, shall be includable in CAM Costs.  If at any time during the Term there becomes available a face panel on any of the Shopping Center pylon or monument signs which would permit Tenant's presence in the Shopping Center to be designated in a higher pylon or monument panel position, then Tenant shall have the right to relocate its pylon or monument sign panel to such higher sign position.

SECTION 15.03 <u>Replacement</u>.  Tenant and its subtenants, at their sole cost, shall be entitled, without Landlord's consent but subject to complying with Laws, to replace all of its signs with signage consistent with Tenant's and/or its subtenant's then-current prototypical sign plans.  Any signage which is not consistent with such prototypical sign plans shall be subject to Landlord's approval, not to unreasonably withheld.

**ARTICLE XVI**

**TENANT'S PROPERTY**

SECTION 16.01 <u>Tenant's Property</u>.  All of Tenant's movable trade fixtures, ornate light fixtures, equipment, furniture, inventory and other property owned by Tenant and located at, on or in the Premises including, without limitation, computer display and storage area showcases, partitions, mezzanine, shelving, wall cases and signs (collectively, "<u>Tenant's Property</u>") shall remain the property of Tenant, exempt from the claims of Landlord or any Mortgagee or Ground Lessor, without regard to the means by which or the persons by whom Tenant's Property is installed or attached.  Tenant shall have the right at any time and from time to time to remove

30

Tenant's Property, provided that if removal of any of Tenant's Property permanently damages any part of the Premises, Tenant shall repair such damage.

## ARTICLE XVII

### ASSIGNMENT AND SUBLETTING

SECTION 17.01 <u>Assignment and Subletting Rights</u>. Tenant shall have the right from time to time, without the consent of Landlord, to assign Tenant's interest in this Lease and/or to sublet, concession or license all or any portion of the Premises, subject to all of the terms and conditions of this Lease. Unless otherwise agreed to in writing by Landlord, no assignment, subletting, licensing or concessioning by Tenant shall reduce the liability of Tenant under this Lease to the extent that such liability is not increased as a result of any amendment or modification to this Lease between Landlord and any assignee. However, in the event of an assignment by Tenant to an assignee having an Adequate Net Worth (as defined below), or to an assignee whose obligations under this Lease are guaranteed by a guarantor having an Adequate Net Worth, all liability of the assigning Tenant under this Lease accruing from and after the effective date of such assignment shall terminate. "<u>Adequate Net Worth</u>" shall mean a tangible net worth, as of the effective date of such assignment, of at least Two Hundred Fifty Million Dollars ($250,000,000).

SECTION 17.02 <u>Collateral Assignment</u>. In addition to Tenant's other rights set forth in this Article XVII, a collateral assignment of Tenant's interest in this Lease by Tenant to one (1) or more Lenders (hereinafter defined), as collateral security for an indebtedness or other obligation of Tenant or its Affiliates shall be permitted and Landlord shall execute all documentation reasonably requested by Tenant or any such Lender in connection therewith. In addition, Tenant shall have the right, without Landlord's consent, to grant to an Affiliate of Tenant a license to operate all of Tenant's business operations at the Premises, without such Affiliate having assumed any liability for the performance of Tenant's obligations under this Lease. "<u>Lender</u>" shall mean a state or federally regulated: bank, savings and loan association, insurance company, pension fund, credit union, real estate investment trust, or other institutional lender.

SECTION 17.03 <u>Cure Rights of Original Tenant</u>. If Tenant assigns Tenant's interest in this Lease and the assignor remains liable under this Lease following such assignment, then Landlord, when giving notice to said assignee or any future assignee in respect of any default, shall also give a copy of such notice to the Tenant originally named in this Lease or its Affiliate (collectively, the "<u>Original Tenant</u>"), and no notice of default shall be effective until a copy thereof is so given to Original Tenant. Original Tenant shall have the right (but not the obligation) to cure such default, which cure period shall be thirty (30) days longer than the cure period applicable to Tenant.

SECTION 17.04 <u>Recognition Agreement</u>. If Tenant subleases all or any portion of the Premises for a term of at least five (5) years, then, notwithstanding any other provisions of this Lease, Landlord shall, upon Tenant's request, execute and deliver an agreement among Landlord, Tenant and each such subtenant in the form of <u>Exhibit I</u>, in recordable form (the "<u>Recognition Agreement</u>").

## ARTICLE XVIII

## DEFAULT

SECTION 18.01 Tenant's Default.

(a)    If Tenant defaults in the payment of any installment of Rent and such default is not cured within ten (10) days after receipt of notice from Landlord thereof or if Tenant defaults in the observance of any other material covenant or agreement herein contained and Tenant shall not, within thirty (30) days after receipt of notice thereof from Landlord, cure or commence to cure such default (it being intended in connection with a default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Tenant within which to cure same shall be extended for such period as may be necessary to complete same with all due diligence), then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default:

(i)    terminate this Lease, without any right by Tenant to reinstate its rights by payment of Rent or other performance of the terms and conditions hereof and upon such termination Tenant shall immediately surrender possession of the Premises to Landlord, and Landlord shall immediately become entitled to receive from Tenant, as liquidated, agreed final damages, an amount equal to the difference between the aggregate of all rentals reserved under this Lease for the balance of the Term, and the fair rental value of the Premises for that period (both discounted to present value at an annual interest rate equal to eight  and twenty-five hundredths percent (8.25%)), determined as of the date of such termination; or

(ii)    with or without terminating this Lease, as Landlord may elect, re-enter and repossess the Premises, or any part thereof, and lease them to any third-party upon commercially reasonable terms and conditions, for a term within or beyond the Term; provided, however, that any such reletting prior to termination shall be for the account of Tenant, and Tenant shall remain liable for (y) Annual Minimum Rent, Tenant's Share of CAM Costs, Tenant's Share of Taxes, and other sums which would be payable hereunder by Tenant in the absence of such expiration, termination or repossession, less (z) the net proceeds, if any, of any reletting effected for the account of Tenant after deducting from such proceeds all of Landlord's reasonable expenses (which expenses shall be amortized over the term of the new tenant's lease and only the portion thereof allocable to the balance of the Term shall be so deducted by Landlord hereunder) in connection with such reletting (including, without limitation, all repossession costs, reasonable brokerage commissions, reasonable attorneys' fees and expenses, reasonable alteration costs and expenses of preparation for such reletting).

(b)    If the Premises is at the time of default sublet or leased by Tenant to others, Landlord may, as Tenant's agent, collect rents due from any subtenant or other tenant and apply such rents to Rent due hereunder.  Any monthly deficiencies payable by Tenant shall be paid monthly on the date herein provided for the payment of Annual Minimum Rent. If, after the lapse of all applicable grace periods, Landlord reasonably expends any money to cure a default by Tenant, then Tenant shall, on demand, pay Landlord the amount so paid by Landlord together

32

with interest thereon at the rate of two percent (2%) per annum in excess of the rate charged to Tenant for short-term borrowings by any bank with which Tenant regularly transacts business (the "Default Rate").

(c)    Landlord shall also be entitled to all other rights and remedies available to Landlord at law, in equity or otherwise, except as otherwise expressly set forth in this Lease. Landlord expressly waives (i) any right to accelerate any element of Rent except as expressly set forth in Section 18.01(a)(i) above, (ii) any right to recover consequential or punitive damages as a result of a Tenant default or any other act or omission of Tenant, and (iii) all rights to any so-called "landlord's lien" or any similar statutory lien, granting Landlord a lien on any of Tenant's Property for the performance of any obligations of Tenant. At the request of Tenant, Landlord shall promptly confirm such waiver(s) by a writing in form satisfactory to Tenant. Anything contained in this Lease to the contrary notwithstanding, Landlord shall use all reasonable efforts to relet the Premises or any portion thereof to mitigate Landlord's damages to which Landlord would otherwise be entitled to as a result of a Tenant default.

SECTION 18.02 Additional Landlord Remedies Due to Construction Delays by Tenant.

(a)    If Tenant shall fail to achieve Substantial Completion by that date which is two hundred forty (240) days following Delivery of the Land, then Landlord, at its option, upon prior notice to Tenant, may require Tenant to commence payment of Ground Rent (as defined below) on the date which is three hundred thirty (330) days following Delivery of the Land. "Ground Rent" shall mean $8.50 per square foot of Floor Area of the Building annually, shall be payable in lieu of Annual Minimum Rent, and shall be payable in equal monthly installments of 1/12 each and in the same manner as Annual Minimum Rent. Ground Rent shall increase to $14.00 per square foot of Floor Area of the Building on the three hundred thirty-first (331st) day after Ground Rent becomes payable.

(b)    If Tenant shall fail to achieve Substantial Completion by that date which is one (1) year following Delivery of the Land, then Landlord shall be entitled, as its sole remedy, to terminate this Lease upon sixty (60) days prior notice to Tenant unless Tenant, within such sixty (60) day period, achieves Substantial Completion. If Landlord terminates this Lease, then there shall be no further liability on the part of Landlord or Tenant, except for those obligations that expressly survive the expiration or other termination of this Lease.

SECTION 18.03 Landlord's Default.

(a)    If Landlord shall (i) default in the observance of any material covenant or agreement herein contained, breach any material representation or warranty under this Lease, or shall fail to pay any charges or other amounts required to be paid by Landlord under this Lease (including, without limitation, any insurance premiums or any reimbursements due to Tenant) and Landlord does not cure such default within ten (10) days (as to a monetary default) or thirty (30) days (as to a non-monetary default), as applicable, after notice thereof by Tenant (it being intended in connection with a non-monetary default not susceptible of being cured with due diligence within said thirty (30) day period that the time allowed Landlord within which to cure same shall be extended for such period as may be necessary to complete same with all due diligence), or (ii) fail to pay when due any Taxes, ground rent or any other charge or assessment,

33

the lien of which is prior to the lien of this Lease, then Tenant shall have the right (but shall not be obligated) to:

(w)     perform such obligation(s) of Landlord in accordance with the applicable provisions of this Lease on behalf of, and at the expense of Landlord, if such failure by Landlord continues for three (3) business days past a second notice by Tenant to Landlord regarding same;

(x)     bring suit for the collection of any amounts for which Landlord is in default, seek injunctive relief, or seek specific performance for any other covenant or agreement of Landlord;

(y)     offset against the Rent all amounts owed by Landlord to Tenant and/or the amounts reasonably expended by Tenant performing Landlord's obligations under this Lease, including costs and reasonable attorneys' fees, together with interest thereon at the Default Rate from the date of the outlay until paid, and, at Tenant's option, extend the Term if necessary for Tenant to fully recoup all amounts owed by Landlord to Tenant; and/or

(z)     terminate this Lease, without waiving its rights to damages for Landlord's Default, provided that: (1) Landlord's default materially interferes with the normal conduct of any business operations in the Premises, (2) Landlord's default is not reasonably capable of being cured by Tenant, and (3) subject to Section 18.02(b), Tenant gives notice of Landlord's default to any Mortgagee of whom Landlord shall have previously given Tenant notice (including its address), and such Mortgagee shall not have cured Landlord's default; provided that Tenant shall have delivered to Landlord a second notice of default and Landlord has failed to cure such default by the fifteenth (15th) business day thereafter.

Notwithstanding the foregoing, Tenant's right of offset under clause (y) above shall be limited to fifty percent (50%) of each installment of Rent next becoming due unless insufficient Term remains to fully recoup the amounts owed by Landlord to Tenant on the amounts expended by Tenant, together with interest as provided above, in which event the amount of Tenant's offset shall be increased so that Tenant is able to fully recoup all such amounts expended by Tenant, together with interest as aforesaid, prior to the expiration of the Term.

(b)     If a Mortgagee shall have notified Tenant in writing that it is the holder of such lien on the Shopping Center and shall so request, then Tenant shall give a similar notice to such Mortgagee and such Mortgagee shall have the same time period allowed to Landlord under this Lease to correct or remedy such default.

(c)     Tenant shall also be entitled to all other rights and remedies available to Tenant at law, in equity or otherwise, except as otherwise expressly set forth in this Lease. Tenant expressly waives any right to recover consequential or punitive damages as a result of a Landlord default or any other act or omission of Landlord, except with respect to a Landlord default relating to Tenant's Exclusive Use Protection or Hazardous Materials.

(d)     Notwithstanding the foregoing, if, in Tenant's reasonable judgment, a condition posing imminent risk of liability or material harm to persons or property or material

34