## EXHIBIT G

### Existing Leases

1.    Lease Agreement dated December 13, 2006, between Team Retail Westbank, Ltd., as landlord, and Bed Bath & Beyond, Inc., as tenant, regarding approximately 28,000 square feet of floor area, located in "West Village Shopping Center" f/k/a "Manhattan West Shopping Center" in the City of Harvey, Louisiana. [SUBJECT TO THE CONSENT LETTER ATTACHED HERETO AS EXHIBIT O]

2.    Commercial Lease Agreement dated on or about May 10, 2007, between Team Retail Westbank, Ld., as landlord, and EZPawn Louisiana, Inc., as tenant, regarding approximately 6,000 square feet located in "Westbank Village Shopping Center", in the City of Harvey, Louisiana.

G-1

## EXHIBIT H

<u>Existing Exclusives</u>

1.   In favor of Key Tenant, but subject to the Bed Bath & Beyond Consent Letter attached as <u>Exhibit O</u>:

"The sale at retail of a variety of linens and domestics (including, but not limited to, sheets, bedspreads, comforters, duvets, pillows, pillow covers, chair pads, placemats, tablecloths, dish towels, oven mittens and aprons); bathroom items (including, but not limited to, towels, shower curtains, bathroom rugs, toilet seats, health and beauty care items, cosmetics, drug remedies, personal care devices and other bathroom appliances and accessories); housewares (including, but not limited to, kitchen utensils, kitchen appliances and kitchen "gadgets," cleaning appliances and supplies, cookware, bakeware, dishes and china, glassware, garbage pails, ironing boards and other laundry items, mops and brooms, candles and candle holders, ready-to-assemble furniture and artificial flowers); frames and wall art; window treatments; closet, shelving and storage items; home furnishings; area rugs; wall and floor coverings; furniture (including, without limitation, mattresses, box springs, bed frames, and bedroom furniture); decorative accessories; photo albums; photo storage boxes; luggage; books; party supplies; cards and stationery; seasonal items; juvenile merchandise (including, but not limited to, toys, car seats and safety-proofing items); specialty food items; and food and non-alcoholic beverage services."

2.   In favor of EZPawn:

"Any use as a pawnshop, payday loan, consumer loan, check cashing, firearms dealer, consumer financial services and credit products (i.e. brokering, marketing, servicing and making), and financial services center."

H-1

## EXHIBIT I

### Recognition Agreement

THIS RECOGNITION AGREEMENT, made as of the _____ day of _____, 200__, by and between **TEAM RETAIL WESTBANK, LTD.**, a Texas limited partnership ("Landlord") having an address at 9362 Hollow Way Road, Dallas, Texas 75220 ("Landlord"); **CIRCUIT CITY STORES, INC.**, a Virginia corporation, having an office at, 9950 Mayland Drive, Richmond, Virginia 23233 ("Tenant"); and _____, a [_____] [corporation] [limited] [general] [partnership], having an address at _____ ("Subtenant").

### R E C I T A L S:

A.    Landlord and Tenant have entered into a certain Lease Agreement (the "Lease") dated as of _____ __, 200__, a short form of which has been recorded in _____, which demises certain premises (the "Premises") located in the Westbank Village Shopping Center, Harvey, LA which Shopping Center is more particularly described on Exhibit A annexed hereto and made a part hereof.

B.    Section 17.04 of the Lease provides that in the event Tenant subleases all or a portion of the Premises for a term of at least five (5) years, Landlord shall, upon Tenant's request, execute and deliver a Recognition Agreement among Landlord, Tenant and each such subtenant in the form attached to the Lease, in recordable form.

C.    Pursuant to a Sublease dated as of _____ (the "Sublease"), Tenant has subleased [a portion of] the Premises to Subtenant (the "Subleased Premises").

D.    The parties hereto desire to effectuate the provisions of Section 17.04 of the Lease with respect to the Sublease and the Subleased Premises.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    Landlord warrants and represents as follows:

(a)    that it is the fee owner of the Premises,

(b)    that the Lease is unmodified (except as may be otherwise set forth in Exhibit B annexed hereto, if any) and is in full force and effect,

(c)    that the term of the Lease expires on _____, but is subject to _____ [ ] renewal periods of [five (5)] years each, and

(d)    that Tenant is not in default under the Lease nor has any event occurred which would after notice to Tenant and the passage of time become a default of Tenant under the Lease.

I-1

2.      Landlord hereby acknowledges receipt of a copy of, and consents to and approves, the Sublease and all of the terms, covenants and provisions thereof, and agrees that the exercise by Subtenant of any of its rights, remedies and options contained therein shall not constitute a default under the Lease.

3.      Landlord agrees that whenever it has an obligation with respect to the Premises, or its consent or approval is required for any action of Tenant under the Lease, then, to the extent such obligation, consent or approval relates to the Subleased Premises or Subtenant's use and occupation thereof, it will perform such obligation in accordance with the terms and conditions of the Lease, and, subject to the applicable terms of the Lease, will not unreasonably withhold or unduly delay such consent or approval.

4.      Landlord shall not, in the exercise of any of the rights arising or which may arise out of the Lease or of any instrument modifying or amending the same or entered into in substitution or replacement thereof (whether as a result of Tenant's default or otherwise), disturb or deprive Subtenant in or of its possession or its rights to possession of the Subleased Premises or of any right or privilege granted to or inuring to the benefit of Subtenant under the Sublease, provided that Subtenant is not in default under the Sublease beyond the expiration of any applicable notice and cure period and such subtenant is making Annual Minimum Rent and Additional Rent Payments directly to Landlord.

5.      In the event of the termination of the Lease by reentry, notice, conditional limitation, surrender, summary proceeding or other action or proceeding, or otherwise, or, if the Lease shall terminate or expire for any reason before any of the dates provided in the Sublease for the termination of the initial or renewal terms of the Sublease and if immediately prior to such surrender, termination or expiration the Sublease shall be in full force and effect, Subtenant shall not be made a party in any removal or eviction action or proceeding nor shall Subtenant be evicted or removed of its possession or its right of possession of the Subleased Premises be disturbed or in any way interfered with, and the Sublease shall continue in full force and effect as a direct lease between Landlord and Subtenant (provided, that in such event, Subtenant shall, for the then remainder of the term of the Sublease, pay fixed rent and additional rent in an amount equal to the greater of (x) the Annual Minimum Rent and Additional Rent then payable under the Lease, prorated on the basis of the ratio which the Floor Area of the Subleased Premises bears to the Floor Area of the Premises, or (y) the annual minimum rent and additional rent then payable under the Sublease).

6.      Landlord hereby waives and relinquishes any and all rights or remedies against Subtenant, pursuant to any lien, statutory or otherwise, that it may have against the property, goods or chattels of Subtenant in or on the Subleased Premises.

7.      Any notices, consents, approvals, submissions, demands or other communications (hereinafter collectively referred to as "Notice") given under this Agreement shall be in writing. Unless otherwise required by law or governmental regulation, Notices shall be deemed given if sent by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid (a) to Landlord, at the address of Landlord as hereinabove set forth or such other address or persons as Landlord may designate by Notice to the other parties hereto, (b) to Tenant, to CIRCUIT CITY STORES, INC., 9950 Mayland Drive,

H:\44050062-West Bank, LA\Lease Ver 9.DOC
Dallas 1249389_2 7680.4
Dallas 1251043_3 7680.4

Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to CIRCUIT CITY STORES, INC., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and _____, or such other address or persons as Tenant may designate by Notice to the other parties hereto, and (c) to Subtenant, at the address of Subtenant as hereinabove set forth or such other address or persons as Subtenant may designate by Notice to the other parties hereto. During the period of any postal strike or other interference with the mails, personal delivery shall be substituted for registered or certified mail. All Notices shall become effective only on the receipt or rejection of same by the proper parties.

8.      No modification, amendment, waiver or release of any provision of this Agreement or of any right, obligation, claim or cause of action arising hereunder shall be valid or binding for any purpose whatsoever unless in writing and duly executed by the party against whom the same is sought to be asserted.

9.      This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, assigns and sublessees.

[Signature Page Follows]

I-3

IN WITNESS WHEREOF, the parties have caused this Recognition Agreement to be executed under seal the date first above written.

LANDLORD:

TEAM RETAIL WESTBANK, LTD., a Texas limited partnership

By:  GP Team Retail Westbank, LLC, a Texas limited liability, its general partner

By:_____
Name: Worth R. Williams
Title:  Manager

TENANT:

CIRCUIT CITY STORES, INC., a Virginia corporation

By:_____
    John B. Mulleady
    Vice President, Real Estate and Construction

SUBTENANT:

_____

By:_____
Name:_____
Title:_____

I-4

STATE OF _____ )
                             ) : ss.
COUNTY OF _____ )

    On this ___ day of _____, 200__, before me personally came John B. Mulleady to me known, who being by me duly sworn, did depose and say that he is the Vice President, Real Estate and Construction of **CIRCUIT CITY STORES, INC.**, a Virginia corporation, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                             _____
                                           Notary Public

My Commission Expires:

_____

STATE OF _____ )
                             ) : ss.
COUNTY OF _____ )

    On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of GP Team Retail Westbank, LLC, a Texas limited liability company, general partner of TEAM RETAIL WESTBANK, LTD., a Texas limited partnership, the limited partnership described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said limited partnership.

                                             _____
                                           Notary Public

My Commission Expires:

_____

I-5

STATE OF _____)
                                                      ) : ss.
COUNTY OF _____)

On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

My Commission Expires:

_____

I-6

# EXHIBIT J

After recording, return to:
Pamela G. Kostas
Kostas & Birne, LLP
530 One Turtle Creek Village
3878 Oak Lawn Avenue
Dallas, Texas  75219

## Subordination, Non-Disturbance and Attornment Agreement

THIS    SUBORDINATION,    NON-DISTURBANCE    AND    ATTORNMENT AGREEMENT, made as of the _____ day of _____, 200__, by and between _____, a _____ [corporation] [limited] [general] [partnership] [national banking association], having an office at _____ _____ (the "Mortgagee") and CIRCUIT CITY STORES, INC., a Virginia corporation, having an office at, 9950 Mayland Drive, Richmond, Virginia 23233 (the "Tenant").

## W I T N E S S E T H:

WHEREAS, Mortgagee is the holder of a mortgage (the "Mortgage") covering a parcel of land owned by Team Retail Westbank, Ltd., a Texas limited partnership (the "Landlord") together with the improvements [to be] erected thereon (said parcel of land and improvements thereon being hereinafter referred to as the "Shopping Center" and being more particularly described on Exhibit A attached hereto and made a part hereof); and

WHEREAS, by a certain Lease Agreement heretofore entered into between Landlord and Tenant dated as of May___, 2007 (the "Lease"), Landlord leased to Tenant a portion of the Shopping Center, as more particularly described in the Lease (the "Premises"); and

WHEREAS, a copy of the Lease has been delivered to Mortgagee, the receipt of which is hereby acknowledged; and

[For mortgages existing as of the date Lease is executed:  WHEREAS, as an inducement to Tenant to enter into the Lease, [Section 2.04(f)/Section 19.02] thereof provides that the Lease is conditioned upon Landlord obtaining this Agreement from Mortgagee; and

WHEREAS, the parties desire to satisfy the foregoing condition and to provide for the non-disturbance of Tenant by the holder of the Mortgage; and]

[For mortgages occurring after the Lease is executed:  WHEREAS, Section 19.01 of the Lease provides that the Lease shall become subject and subordinate to a mortgage encumbering the fee interest of Landlord in and to the Shopping Center if and when a non-disturbance agreement is entered into with respect to such mortgage; and

WHEREAS, the parties hereto desire to effect the subordination of the Lease to the Mortgage and to provide for the non-disturbance of Tenant by Mortgagee.]

J-1

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

1.    Mortgagee hereby consents to and approves the Lease and the term thereof, including the options to extend the term as set forth in the Lease, and covenants and agrees that the exercise by Tenant of any of the rights, remedies and options therein contained shall not constitute a default under the Mortgage.

2.    Tenant covenants and agrees with Mortgagee that the Lease is made and shall continue hereafter to be subject and subordinate to the lien of the Mortgage, and to all modifications and extensions thereof (and such subordination shall not lessen or diminish Tenant's rights under the Lease), subject, however, to the provisions of this Agreement.

3.    Mortgagee agrees that so long as the Lease shall be in full force and effect, and so long as Tenant shall not be in default under the Lease beyond any applicable notice and grace period:

(a)    Tenant shall not be named or joined as a party or otherwise in any suit, action or proceeding for the foreclosure of the Mortgage or to enforce any rights under the Mortgage or the bond or note or other obligation secured thereby;

(b)    The possession by Tenant of the Premises and Tenant's rights thereto shall not be disturbed, affected or impaired by, nor will the Lease or the term thereof be terminated or otherwise affected by (i) any suit, action or proceeding brought upon the Mortgage or the bond or note or other obligation secured thereby, or for the foreclosure of the Mortgage or the enforcement of any rights under the Mortgage, or by any judicial sale or execution or other sale of the Premises or the Shopping Center, or any deed given in lieu of foreclosure, or by the exercise of any other rights given to any holder of the Mortgage or other documents as a matter of law, or (ii) any default under the Mortgage or the bond or note or other obligation secured thereby; and

(c)    All condemnation awards and insurance proceeds paid or payable with respect to the Premises or any other part of the Shopping Center shall be applied and paid in the manner set forth in the Lease.

4.    If Mortgagee or any future holder of the Mortgage shall become the owner of the Shopping Center by reason of foreclosure of the Mortgage or otherwise, or if the Shopping Center shall be sold as a result of any action or proceeding to foreclose the Mortgage, or transfer of ownership by deed given in lieu of foreclosure, the Lease shall continue in full force and effect, without necessity for executing any new lease, as a direct lease between Tenant and the then owner of the Shopping Center, as "landlord", upon all of the same terms, covenants and provisions contained in the Lease, and in such event:

(a)    Tenant shall be bound to such new owner under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) and Tenant

J-2

hereby agrees to attorn to such new owner and to recognize such new owner as "Landlord" under the Lease; and

(b)    Such new owner shall be bound to Tenant under all of the terms, covenants and provisions of the Lease for the remainder of the term thereof (including the Extension Periods, if Tenant elects or has elected to exercise its options to extend the term) which such new owner hereby agrees to assume and perform and Tenant shall, from and after the date such new owner succeeds to the interest of "landlord" under the Lease, have the same remedies against such new owner for the breach of any covenant contained in the Lease that Tenant might have had under the Lease against Landlord if such new owner had not succeeded to the interest of "landlord"; provided, however, that such new owner shall not be:

(i)    liable for any act or omission of any prior landlord (including Landlord) unless such act or omission continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(ii)    subject to any defenses which Tenant may have against any prior landlord (including Landlord) unless resulting from any default or breach by such prior landlord which continues from and after the date upon which the new owner succeeds to the interest of such prior landlord;

(iii)    subject to any offsets which Tenant may have against any prior landlord, except to the extent such offsets are expressly provided under the Lease and Mortgagee has received notice thereof and the opportunity to cure within the applicable time periods set forth in the Lease (it being further agreed that offsets under the Lease that were deducted by Tenant prior to the date upon which the new owner succeeds to the interest of such prior landlord shall not be subject to challenge);

(iv)    bound by any annual minimum rent or additional rent which Tenant might have paid for more than one month in advance of its due date under the Lease to any prior landlord (including Landlord), unless such additional rent is paid in accordance with the applicable provisions of the Lease; or

(v)    bound by any amendment or modification of the Lease made without its consent; notwithstanding the foregoing, Mortgagee acknowledges that the Lease specifically provides for amendments thereof upon the occurrence of certain events described in the Lease (such as, for example, an amendment to the Lease confirming the measurement of the Premises), and, by its execution below, Mortgagee agrees to recognize such amendments as part of the Lease, and Mortgagee further agrees that such new owner shall also be bound by such amendment(s) to the Lease, without any consent on the part of Mortgagee or such new owner.

(c)    Tenant's obligations hereunder shall be effective only so long as Mortgagee is bound to Mortgagee's obligations hereunder.

5.    Tenant will notify Mortgagee of any default by Landlord under the Lease which would entitle Tenant to terminate the Lease or abate the rent payable thereunder and agrees that notwithstanding any provision of the Lease, no notice of termination thereof nor any abatement

H:\44050062-West Bank, LA\Lease Ver 9.DOC
Dallas 1249389_2 7680.4
Dallas 1251043_3 7680.4

shall be effective unless Mortgagee has received the aforesaid notice and has failed to cure the subject default within the same time period allowed Landlord under the Lease. It is understood that the abatement provisions of this Section relate to abatements by reason of Landlord's default and do not apply to provisions of the Lease whereby Tenant has the automatic right to abate rentals such as, for example, abatement upon casualty or condemnation.

6.    Neither the Mortgage nor any other security instrument executed in connection therewith shall encumber or be construed as subjecting in any manner to the lien thereof, any trade fixtures, signs or other personal property at any time furnished or installed by or for Tenant or its subtenants or licensees on the aforementioned property regardless of the manner or mode of attachment thereof.

7.    Any notices of communications given under this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested, or by any recognized overnight mail carrier, with proof of delivery slip, postage prepaid, (a) if to Mortgagee, at the address of Mortgagee as hereinabove set forth or at such other address or persons as Mortgagee may designate by notice in the manner herein set forth, or (b) if to Tenant, to CIRCUIT CITY STORES, INC., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: Vice President of Real Estate, with duplicate copies to CIRCUIT CITY STORES, INC., 9950 Mayland Drive, Richmond, Virginia 23233, Attention: General Counsel, and _____, or such other address or persons as Tenant may designate by notice in the manner herein set forth. All notices given in accordance with the provisions of this Section shall be effective upon receipt (or refusal of receipt) at the address of the addressee.

8.    This Agreement shall bind and inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors, assigns, and sublessees.

9.    This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived or canceled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver or cancellation is sought.

10.    This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

[to add if Tenant's memorandum of lease has been recorded prior to the subject mortgage] NOTE: THIS AGREEMENT BY TENANT SHALL NOT BE EFFECTIVE UNLESS AND UNTIL ANY PRIOR MORTGAGES ON THIS PROPERTY HAVE BEEN SATISFIED SO THAT TENANT'S PRIOR AGREEMENTS TO ATTORN TO SAID MORTGAGES AND/OR TO SUBORDINATE ITS LEASE TO SAID MORTGAGES SHALL HAVE BEEN EXTINGUISHED.

IN WITNESS WHEREOF, the parties hereto have duly executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year first above written.

-Signature Page Follows-

J-4

**MORTGAGEE:**

ATTEST:

By:_____

By:_____

Name:_____

Name:_____

Title:_____

Title:_____

[SEAL]

**TENANT:**

ATTEST:

**CIRCUIT CITY STORES, INC.**, a Virginia
corporation

By:_____

Name:_____

By:_____

Title:_____

    John B. Mulleady

[SEAL]

    Vice President, Real Estate and Construction

J-5

H:\44050062-West Bank, LA\Lease Ver 9.DOC
Dallas 1249389_2 7680.4
Dallas 1251043_3 7680.4

STATE OF _____ )
                               ) : ss.
COUNTY OF _____ )

      On this ___ day of _____, 200__, before me personally came John B. Mulleady to me known, who being by me duly sworn, did depose and say that he is the Vice President, Real Estate and Construction of **CIRCUIT CITY STORES, INC.,** a Virginia corporation, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                               _____
                                               Notary Public

My Commission Expires:

_____

STATE OF _____ )
                               ) : ss.
COUNTY OF _____ )

      On this ___ day of _____, 200__, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of _____, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                               _____
                                               Notary Public

My Commission Expires:

_____

J-6

## EXHIBIT K

### Permitted Exceptions

1.  Reservation of minerals contained in Sale by Hunt Foods Industries, Inc., et al to W. Richard White, et al, dated July 7, 1966, recorded under Entry No. 366382 in COB 639, folio 988 on July 7, 1966.

2.  Reservation of minerals contained in Sale of Property by Ashy-Brown-Pettit-Wilson to Manhattan Square Shopping Center dated July 27, 1981, recorded under Entry No. 979461 in COB 1008, folio 820 on July 28, 1981.

3.  Servitude Dedication by Ashy-Brown-Pettit and Ashy-Brown-Pettit-Wilson to Sunshine Realty & Mortgage Co., Inc. dated January 10, 1974, recorded under Entry No. 631212 in COB 808 , folio 740 on February 13, 1974, (sewer line servitude over Tracts W and Z [now T-A and W-2] in favor of Lot M).

4.  Dedication of Servitude by Ashy-Brown-Pettit-Wilson to Sunshine Realty & Mortgage Co., Inc., dated February 19, 1974, recorded under Entry No. 631213 in COB 808 , folio 741 on February 19, 1974, (cross servitudes between Tracts M and Z [now Tracts T-A and A]).

5.  Servitude contained in Transfer by Sunshine Realty and Mortgage Co., Inc. to McDonald's Corporation dated February 19, 1974, recorded under Entry No. 631214 in COB 808, folio 742 on February 19, 1974 (sewer line servitude over Tracts W and Z [now T-A and W-2] in favor of Lot M).

6.  Servitude Agreement by Ashy-Brown-Pettit and Ashy-Brown-Pettit-Wilson to Parish of Jefferson dated January 21, 1974, recorded under Entry No. 633787 in COB 810, folio 122 on March 14, 1974.

7.  Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit and Ashy-Brown-Pettit-Wilson dated April 24, 1974, recorded under Entry No. Entry No. 638290 in COB 812, folio 582 on April 24, 1974 (cross servitude); as amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All Star Lanes-New Orleans and H.J. Wilson Co, Inc. dated April 24, 1979, recorded under Entry No. 881209 in COB 960, folio 563 on July 5, 1979; as further amended and re-stated by Act of Amendment to Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy - Brown–Pettit-Wilson and Don Carter's All Star Lanes - New Orleans dated June 13, 1980, recorded under Entry No. 926270 in COB 983, folio 487 on June 13, 1980; and as further amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All-Star Lanes - New Orleans and H. J. Wilson Co., Inc. dated January 16, 1981,

K-1

recorded under Entry No. 957426 in COB 999, folio 1 on February 23, 1981.  (Affects Fee Parcels, only).

8.   Terms and conditions of the Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit and Ashy-Brown-Pettit-Wilson dated April 24, 1974, recorded under Entry No. Entry No. 638290 in COB 812, folio 582 on April 24, 1974 (cross servitude); as amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All Star Lanes-New Orleans and H.J. Wilson Co, Inc. dated April 24, 1979, recorded under Entry No. 881209 in COB 960, folio 563 on July 5, 1979; as further amended and re-stated by Act of Amendment to Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy -Brown–Pettit-Wilson and Don Carter's All Star Lanes - New Orleans dated June 13, 1980, recorded under Entry No. 926270 in COB 983, folio 487 on June 13, 1980; and as further amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All-Star Lanes - New Orleans and H. J. Wilson Co., Inc. dated January 16, 1981, recorded under Entry No. 957426 in COB 999, folio 1 on February 23, 1981.  (Affects Reciprocal Rights Parcels, only).

9.   Servitude Dedication by H.J. Wilson Co. Inc. to Ashy-Brown-Pettit-Wilson dated August 4, 1975, recorded under Entry No. 687087 in COB 841, folio 503 on August 5, 1975 (storm drainage servitude in favor of Tract Z over Lot W-2).

10.  Reservation of minerals contained in Sale with Mortgage by Ashy-Brown-Pettit-Wilson to Don Carter's All-Star Lanes - New Orleans dated April 24, 1979, recorded under Entry No. 871943 in COB 955, folio 239 on April 27, 1979.

11.  Right of Way by Carter's All-Star Lanes - New Orleans to Louisiana Power & Light Company dated August 15, 1979, recorded under Entry No. 887678 in COB 964, folio 188 on August 21, 1979, (right of way along southern boundary of Tract A).

12.  Right of Way by Don Carter's All-Star Lanes - New Orleans to South Central Bell Telephone Company dated March 21, 1985, recorded under Entry No. 8512868 in COB 1212, folio 310 on March 27, 1985, (telephone servitude at Manhattan Blvd. entrance to Tract E).

13.  Measurement variances between a survey prepared by John E. Walker, C.E., dated May 31, 1973, which shows the southerly line of Tracts "C" and "A" bearing South 53°55'49" West, a distance of 858.47 feet, and a survey prepared by Meurer, Sarafini and Meurer, Thomas L. Bernard, Registered Land Surveyor, dated March 12, 1979, which shows the southerly line of Tracts "C" and "A" bearing South 53°52'11" West a distance of 859.41 feet.

J-2

14.     Right of Way by Fazzio Rainbow Lanes Westbank, Inc. to Entergy Louisiana, Inc. dated December 10, 1998, recorded under Entry No. 9871813 in COB 2997, folio 947 on December 15, 1998, (right of way along southern boundary of Tract A).

15.     Lease by Fazzio Rainbow Lanes Westbank, Inc. to Sprint Spectrum LP, dated June 14, 1999, recorded under Entry No. 9941598 in COB 3011, folio 605 on July 12, 1999, (50' x 70' site at southwest corner of Tract A).

16.     Memorandum of Lease by Team Retail Westbank, Ltd. to Bed Bath & Beyond, Inc. dated a of December 13, 2006, recorded under Entry No. 10671730 in COB 3179, folio 414 on December 20, 2006. [SUBJECT TO THE CONSENT LETTER ATTACHED HERETO AS <u>EXHIBIT O</u>]

    Subordination, Non-disturbance and Attornment Agreement by and among Team Retail Westbank, Ltd., Bed Bath & Beyond, Inc. and Inland Mortgage Capital Corporation dated _____, 2007, recorded under Entry No. _____ in COB ___, folio ____ and MOB ___, folio _____ on _____, 2007.

17.     Twenty-five (25') foot access servitude affecting Tract T-B-2.  (Affects Tract T-B-2, only)

18.     Ten (10') foot water servitude affecting Tract T-B-1 and Tract T-B-2.  (Affects Tracts T-B-1 and T-B-2, only)

19.     Agreement Establishing Predial Servitude by and between Hong Thi Le, wife of/and Cac Thanh Le and Manhattan Square Shopping Center Associates, L.L.C. dated June 8, 2001, recorded under Entry No. 10130278 in COB 3054, folio 4 on June 8, 2001.  (Affects Tracts T-B-1 and T-B-2, only)

H:\44050062-West Bank, LA\Lease Ver 9.DOC
Dallas 1249389_2 7680.4
Dallas 1251043_3 7680.4

**EXHIBIT L**

Memorandum of Lease

After recording, return to:
Pamela G. Kostas
Kostas & Birne, LLP
530 One Turtle Creek Village
3878 Oak Lawn Avenue
Dallas, Texas 75219

---

(The Above Space for Recorder's Use Only)

THIS MEMORANDUM OF LEASE, made as of _____, 2007 by and between **TEAM RETAIL WESTBANK, LTD.**, a Texas limited partnership ("**Landlord**") having an office at 9362 Hollow Way Road, Dallas, Texas 75220 ("**Landlord**"), and **CIRCUIT CITY STORES, INC.**, a Virginia corporation, having an office at 9950 Mayland Drive, Richmond, Virginia 23233 ("**Tenant**").

Preliminary Statement

Landlord is the fee owner of certain real property located in the Parish of Jefferson, State of Louisiana, as more particularly described on <u>Exhibit A</u> hereto annexed, together with improvements constructed or to be constructed thereon (the "**Shopping Center**"). Landlord and Tenant, as of the date hereof, have entered into a lease (the "**Lease**") demising a portion of the Shopping Center as more particularly described therein (the "**Premises**") to Tenant. In connection therewith, Landlord and Tenant have entered into this Memorandum to confirm the demise of the Premises and to provide notice to any interested party of such demise and of the terms and provisions of the Lease.

NOW, THEREFORE, the parties state as follows:

1.    All capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Lease.

2.    The terms and conditions of the Lease are incorporated herein as though set forth in full, whereby Tenant may have and hold the Premises together with any and all rights, benefits, privileges and easements, now or hereafter appurtenant thereto, at the rental and upon the terms and conditions therein stated, for an initial term of approximately ten (10) years commencing on the Commencement Date (the "**Initial Lease Term**"). Under the terms of the Lease, Tenant has the right to extend the Initial Lease Term for five (5) separate and additional periods of five (5) years each after the expiration of the Initial Lease Term.

3.    This Memorandum of Lease is executed for the purpose of recordation in order to give notice of all of the terms, provisions and conditions of the Lease, including, without limitation:

L-1

(i)    that, **subject to certain exceptions more particularly set forth in the Lease**, Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any "**Affiliated Land**" (defined in the Lease) to be occupied, for the sale, rental, installation, servicing and/or repairing, either singly or in any combination, of consumer, office and/or automotive electronics products, including, without limitation, televisions, stereos, speakers, video and audio recorders and players and cameras; computer hardware and software and related software services (which include internet access services, entertainment software and entertainment media [such as, by way of example only, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment]); cellular and wireless telephones and telecommunication devices and related accessories; motor vehicle audio, stereo and telephone systems; and technological evolutions of the foregoing;

(ii)    the restrictions set forth therein on Landlord's ability to lease certain portions of the Shopping Center for certain uses which are otherwise prohibited by the terms of the Lease;

(iii)    provisions set forth therein regarding Tenant's right to install and maintain signage upon the exterior of the Premises and upon a pylon and/or monument sign located at the Shopping Center;

(iv)    provisions set forth therein regarding Tenant's right to use (and to permit Tenant's customers, employees, agents and contractors to use) certain common areas of the Shopping Center (such as, without limitation, the parking facilities of the Shopping Center); and

(v)    provisions set forth therein regarding certain areas in the Shopping Center in which no improvements are to be constructed, or changes made without the consent of the Tenant.

4.    In addition to those terms hereinabove set forth, the Lease contains numerous other terms, covenants and conditions which likewise affect not only the Premises but also the Shopping Center, and notice is hereby given that reference should be had to the Lease directly with respect to the details of such terms, covenants and conditions. The Lease and exhibits thereto are hereby incorporated by reference in this Memorandum of Lease and the parties hereby ratify and confirm the Lease as if said Lease were being re-executed by them and recorded. In the event of any conflict between the provisions of this instrument and the Lease, the provisions of the Lease shall control.

L-2

IN WITNESS WHEREOF, the parties hereto have executed this Memorandum of Lease as of the day and year first above written.

LANDLORD:

TEAM RETAIL WESTBANK, LTD., a Texas limited partnership

By:    GP Team Retail Westbank, LLC, a Texas limited liability company, its general partner

Date: _____

By: _____
Name: Worth R. Williams
Title:  Manger

TENANT:

CIRCUIT CITY STORES, INC., a Virginia corporation

Date: _____

By: _____
John B. Mulleady
Vice President, Real Estate and Construction

L-3