STATE OF _____ )
                                                ) : ss.
COUNTY OF _____ )

      On this ___ day of _____, 2007, before me personally came _____ to me known, who being by me duly sworn, did depose and say that he is the _____ of GP Team Retail Westbank, LLC, a Texas limited liability company, general partner of TEAM RETAIL WESTBANK, LTD., a Texas limited partnership, the limited partnership described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said limited partnership.

                                                      _____
                                                       Notary Public

My Commission Expires:

_____


STATE OF _____ )
                                                ) : ss.
COUNTY OF _____ )

      On this ___ day of _____, 2007, before me personally came John B. Mulleady to me known, who being by me duly sworn, did depose and say that he is the Vice President, Real Estate and Construction of CIRCUIT CITY STORES, INC., a Virginia corporation, the corporation described in and which executed the above instrument and that he signed his name thereto by order of the Board of Directors of said corporation.

                                                      _____
                                                      Notary Public

My Commission Expires:

_____

EXHIBIT A

Legal Description of the Shopping Center

FEE PARCELS

TRACT A

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and being designated as Tract "A" according to boundary survey by Meurer, Sarafini & Meurer, Thomas L. Bernard, Registered Land Surveyor, dated March 12, 1979, a copy of which is attached to Ordinance No. 13828, recorded as Entry No. 870022 of the records of Jefferson Parish, Louisiana, and also according to a plat of survey by Gilbert, Kelly & Couturie, Inc., James H. Couturie, Registered Land Surveyor, dated August 5, 1993, a print of which is attached to an Act of Sale by Don Carter's All-Star Lanes-New Orleans, A Louisiana Partnership in Commendam to Fazzio Rainbow Lanes Westbank, Inc., bearing various dates in August, 1993, and registered at COB 2878, folio 669, Entry No. 93-46340 on the records of Jefferson Parish, Louisiana, as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes, 49 seconds East, a distance of 720.00 feet to a point, thence North 60° 36 minutes 11 seconds East, a distance of 320.00 feet (title), 319.66 feet (actual) to the point of beginning. Thence North 36° 07 minutes 49 seconds West (title), North 36° 13 minutes 40 seconds West (actual) a distance of 245.94 feet (title), 245.27 (actual) to a point; thence North 60° 36 minutes 11 seconds East, a distance of 235.89 feet to a point; thence South 29° 23 minutes 49 seconds East, a distance of 8.00 feet to a point; thence North 60° 36 minutes 11 seconds East, a distance of 211.50 feet to a point; thence South 29° 23 minutes 49 seconds East, a distance of 12.00 feet to a point; thence North 60° 36 minutes 11 seconds East, a distance of 42 feet to a point; thence South 29° 23 minutes 49 seconds East, a distance of 60.00 feet to a point; thence North 60° 36 minutes, 11 seconds East, a distance of 61.11 feet to a point; thence South 30° 55 minutes 31 seconds East, a distance of 443.87 feet to a point; thence South 53° 52 minutes 11 seconds West (title), South 53° 55 minutes 49 seconds West (actual), a distance of 497.00 feet (title), 496.06 feet (actual), to a point; thence North 36° 07 minutes 49 seconds West (title), North 36° 13 minutes 40 seconds West (actual), a distance of 264.68 feet to a point; thence North 36° 7 minutes 49 seconds West (title), 36° 13 minutes 40 seconds West (actual) a further distance of 75.52 feet (title), 75.53 (actual) to the point of beginning, hereinafter called "Tract A."

TRACT E

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of

L-5

the Mississippi River, above the City of Gretna, and being designated as Tract "E" according to boundary survey by Meurer, Sarafini & Meurer, Thomas L. Bernard, Registered Land Surveyor, dated March 12, 1979, a copy of which is attached to ordinance No. 13828, recorded as Entry No. 870022 of the records of Jefferson Parish, Louisiana, and also according to a plat of survey by Gilbert, Kelly & Couturie, Inc., James H. Couturie, Registered Land Surveyor, dated August 5, 1993, a print of which is attached to an Act of Sale by Don Carter's All-Star Lanes - New Orleans, A Louisiana Partnership in Commendam to Fazzio Rainbow Lanes Westbank, Inc., bearing various dates in August, 1993, and registered at COB 2878, folio 669, Entry No. 93-46340 on the records of Jefferson Parish, Louisiana, as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East, a distance of 720.00 feet to the point of beginning. Run thence North 60° 36 minutes 11 seconds East, a distance of 320.00 feet (title), 319.66 feet (actual) to a point; thence South 36° 07 minutes 49 seconds East (title), 36° 13 minutes 40 seconds East (actual), a distance of 75.52 feet (title), 75.53 feet (actual) to a point; thence South 60° 36 minutes 11 seconds West (actual and title), a distance of 328.75 feet (title), 328.60 (actual) to a point; thence North 29° 23 minutes 49 seconds West, a distance of 75.00 feet to the point of beginning; hereinafter called "Tract E."

                            TRACTS T-B-1 AND T-B-2

TWO CERTAIN LOTS OF GROUND together with all the buildings and improvements thereon, situated in the PARISH OF JEFFERSON, STATE OF LOUISIANA, in that part thereof known as HUNT FOODS AND WESSON SNOWDRIFT COMPANY PROPERTY on the Westbank of the Mississippi River above the City of Gretna, in that area bounded by the West Bank Expressway, Manhattan Boulevard, Tract "E" and Mary Poppins Drive, being a resubdivision of original Tract T-B, and according to a Resubdivision Survey made by R. P. Fontcuberta, Jr., Land Surveyor, dated May 21, 1981 and approved by Ordinance No. 14825 of the Jefferson Parish Council on July 22, 1981, registered in COB 1009, folio 301, a print of which is annexed to and made part of an act before Michael M. Dorsey, Notary Public, dated July 27, 1981, said lots are designated as "T-B-1" and "T-B-2" and measure as follows:

LOT "T-B-1" commences at the intersection of the Southerly Right of Way Line of the West Bank Expressway and the Easterly Right of Way Line of Manhattan Boulevard; thence, S 29°23'49" E, a distance of 510.00 feet to the point of beginning; thence, N 60° 36' 11" E, a distance of 173.38 feet to a point; thence, N 29° 23' 49" W, a distance of 64.84 feet to a point; thence, N 60° 36' 11" E, E, a distance of 114.00 feet to a point thence, S 36° 07' 49" E, a distance of 277.33 feet to a point; thence, S 60° 36' 11" W, a distance of 157.00 feet to a point; thence, N 29° 23' 49" W, a distance of 85.00 feet to a point thence, S 60°36' 11" W, a distance of 163.00 feet to a point; thence, N 29° 23' 49" W, a distance of 125.00 feet to the Point of Beginning.

LOT "T-B-2" commences at the intersection of the Southerly Right of Way Line of the West Bank Expressway and the Easterly Right of Way Line of Manhattan Boulevard; thence, S 29° 23' 49" E, a distance of 635.00 feet to the point of beginning; thence, N 60° 36' 11" E, a distance of 163.00 feet to a point; thence, S 29° 23'49" E, a distance of 85.00 feet to a point; thence, S 60°

36' 11" W, a distance of 163.00 feet to a point: thence, N 29° 23' 49" W, a distance of 85.00 feet to the Point of Beginning.

Improvements thereon bear Municipal Nos. 903 and 921 Manhattan Boulevard.

All in accordance with the survey by Dading, Marques & Associates, Inc., Land Surveyor, dated July 25, 1995, which shows said lots to have the same designations, locations and measurements as hereinabove set forth, a print of which is annexed to act passed before Marilyn C. Maloney, Notary Public, dated July 31, 1995.

## RECIPROCAL RIGHTS PARCELS

Those certain mutual reciprocal servitudes of passage and parking created under that certain Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit and Ashly-Brown-Pettit-Wilson dated April 24, 1974, recorded under Entry No. Entry No. 638290 in COB 812, folio 582 on April 24, 1974 (cross servitude); as amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All Star Lanes-New Orleans and H.J. Wilson Co, Inc. dated April 24, 1979, recorded under Entry No. 881209 in COB 960, folio 563 on July 5, 1979; as further amended and re-stated by Act of Amendment to Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson and Don Carter's All Star Lanes - New Orleans dated June 13, 1980, recorded under Entry No. 926270 in COB 983, folio 487 on June 13, 1980; and as further amended and re-stated by Amended and Re-Stated Mutual Reciprocal Servitude of Passage and Parking and Restrictive Covenants by Ashy-Brown-Pettit-Wilson, Don Carter's All-Star Lanes - New Orleans and H. J. Wilson Co., Inc. dated January 16, 1981, recorded under Entry No. 957426 in COB 999, folio 1 on February 23, 1981, affecting Tract A, Tract E, T-B-1 and Tract T-B-2, and the property more fully described as follows:

## TRACT W-2

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and being designated as Tract "W-2" according to a survey and resubdivision prepared by John E. Walker, Civil Engineer dated at New Orleans, January 18, 1974, a copy of which is attached to an ordinance of Jefferson Parish, recorded as Entry No. 631721, of the records of the Parish of Jefferson, State of Louisiana, as follows:

> Commencing at the intersection of the South right-of-way line of Mary Poppins Drive and the east right-of-way line of the Westbank Expressway, as shown on the above described plat, thence South 30° 53 minutes 18 seconds East a distance of 153.58 feet to the point of beginning; thence continue South 30° 53 minutes 18 seconds East a distance of 502.55 feet along the South right-of-way line of Mary Poppins Drive to a

L-7

point and corner; thence South 60° 36 minutes 11 seconds West a distance of 61.11 feet to a point and corner, thence North 29° 23 minutes 49 seconds West a distance of 60 feet to a point and corner; thence South 60° 36 minutes 11 seconds West a distance of 42.00 feet to a point and corner, thence North 29° 23 minutes 49 seconds West a distance of 20.00 feet to a point and corner; thence South 60° 36 minutes 36 seconds West a distance of 207.50 feet to a point and corner, thence North 29° 23 minutes 49 seconds West a distance of 220.93 feet to a point and corner; thence South 60° 36 minutes 11 seconds West a distance of 208.54 feet to a point and corner; thence North 29° 23 minutes 49 seconds West a distance of 125.00 feet to a point and corner; thence South 52° 48 minutes 42 seconds West a distance of 150.00 feet to a point and corner; thence North 29° 23 minutes 49 seconds West a distance of 175.00 feet to the east right-of-way line of Westbank Expressway; thence along the east right-of-way line of Westbank Expressway North 52° 48 minutes 42 seconds East a distance of 203.83 feet to the beginning of a curve; thence along the arc of a curve to the right having a radius of 7,489.44 feet, a distance of 267.10 feet to a point and corner; thence South 29° 23 minutes 49 seconds East a distance of 127.33 feet to a point; thence along the arc of a curve to the left having a radius of ten feet, a distance of 15.71 feet to a point; thence North 60° 36 minutes 11 seconds East a distance of 177.52 feet to the point of beginning; hereinafter called "Tract W-2."

## TRACT T-A

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and being designated as Tract "T-A" according to a map on file and of record in the office of the Clerk of Court and Recorder for Jefferson Parish, Louisiana, being more particularly described as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East, a distance of 175.00 feet to the point of beginning; thence South 29° 23 minutes 49 seconds East, a distance of 50.00 feet to a point and corner; thence North 60°36 minutes 11 seconds East, a distance of 173.38 feet to a point and corner; thence South 29° 23 minutes 49 seconds East, a distance of 175.00 feet to a point and corner; thence South 29° 23 minutes 49 seconds East, a distance of 45.16 feet to a point; thence North 60° 36 minutes 11 seconds East, a distance of 114.00 feet to a point and corner; thence South 36° 07 minutes 49 seconds East, a distance of 31.39 feet to a point and corner; thence North 60° 36 minutes 11 seconds East a distance of 235.89 feet to a point and corner; thence North 29° 23 minutes 49 seconds West, a distance of 220.93 feet to a point and corner; thence South 60° 36 minutes 11 seconds West, a distance of 208.54 feet to a point and corner; thence North 29° 23 minutes 49 seconds West, a distance of 125.00 feet to a point and corner; thence South 52° 48 minutes 42 seconds West, a distance of 325.00 feet to the point of beginning.

L-8

TRACT C-1

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and formerly being designated as Tract "C" according to boundary survey by Meurer, Sarafini & Meurer, Thomas L. Bernard, Registered Land Surveyor, dated March 12, 1979, a copy of which is attached to Ordinance No. 13828, recorded as Entry No. 870022 of the records of Jefferson Parish, Louisiana, as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East, a distance of 945.00 feet to a point of beginning. Run thence North 60° 36 minutes 11 seconds East, a distance of 250.00 feet to a point; thence North 29° 23 minutes 49 seconds West a distance of 150.00 feet to a point; thence North 60° 36 minutes, 11 seconds East a distance of 78.75 feet to a point; thence South 36° 7 minutes 49 seconds East a distance of 264.68 feet to a point; thence South 53° 32 minutes 11 seconds West a distance of 362.41 feet to a point; thence North 29° 23 minutes 49 seconds West a distance of 155.31 feet to a point of beginning, all according to survey by Richard T. Dading, Registered Land Surveyor, dated December 14, 1984, and annexed to Jefferson Parish Ordinance of Resubdivision No. 16339, registered in Jefferson Parish, Louisiana, COB 1202, folio 52, Entry No. 8509986.

TRACT C-2

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the west bank of the Mississippi River, above the City of Gretna, and formerly being designated as Tract "C" according to boundary survey by Meurer, Sarafini & Meurer, Thomas L. Bernard, Registered Land Surveyor, dated March 12, 1979, a copy of which is attached to Ordinance No. 13828, recorded as Entry No. 870022 of the records of Jefferson Parish, Louisiana, as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East, a distance of 795.00 feet to the point of beginning. Run thence North 60° 36 minutes 11 seconds East a distance of 250.00 feet to a point; thence South 29° 23 minutes 49 seconds East a distance of 150.00 feet to a point; thence South 60° 36 minutes 11 seconds East a distance of 250.00 feet to a point; thence North 29° 23 minutes 49 seconds West a distance of 150.00 feet to a point of beginning, all according to survey by Richard T. Dading, Registered Land Surveyor, dated December 14, 1984, and annexed to Jefferson Parish Ordinance of

L-9

Resubdivision No. 16339, registered in Jefferson Parish, Louisiana, COB 1202, folio 52, Entry No. 8509986.

### TRACT T-B-3

A CERTAIN TRACT OR PARCEL OF LAND, together with all the buildings and improvements thereon, situated in Jefferson Parish, Louisiana, in that part thereof sometimes referred to as the Hunt Foods and Wesson Oil Snowdrift Company Property, on the westbank of the Mississippi River, above the City of Gretna, and formerly being designated as Tract "T-B" according to a map on file in the office of the Clerk of Court and Recorder for Jefferson Parish, Louisiana, being more particularly described as follows:

Commencing at the Southwest corner of Parcel J-IA, which is the northeast corner of the intersection of Manhattan Boulevard and Westbank Expressway, thence South 29° 23 minutes 49 seconds East a distance of 400.00 feet to a point of beginning. Run thence North 60° 36 minutes 11 seconds East a distance of 173.38 feet to a point; thence South 29° 23 minutes 49 seconds East a distance of 110.00 feet to a point; thence South 60° 36 minutes 11 seconds West a distance of 173.38 feet to a point; thence South 29° 23 minutes 49 seconds East a distance of 110.00 feet to a point; thence South 60° 36 minutes 11 seconds West a distance of 173.38 feet to a point; thence North 29° 23 minutes 49 seconds West a distance of 110.00 feet to a point of beginning; all in accordance with a plat of survey by Ralph P. Fontcuberta, Registered Land Surveyor, dated May 27, 1981 and attached to Jefferson Parish, Ordinance of Resubdivision No. 14825, registered in Jefferson, Louisiana, COB 1009, folio 301, Entry No. 980510.

# EXHIBIT M

## Indemnity Agreement

This INDEMNIFICATION AGREEMENT is made this _____ day of _____, _____, between _____, a _____ (hereinafter referred to as "Landlord") and CIRCUIT CITY STORES, INC., a Virginia corporation (hereinafter referred to as "Tenant").

### WITNESSETH:

Landlord and Tenant have entered into a Lease (the "Lease"), dated _____ whereby Landlord has leased to Tenant a portion of the real property located in _____, _____ County, _____ (the "Shopping Center") and Tenant has constructed on such real property a store premises (the "Premises").

NOW, THEREFORE, in consideration of the payment of the Landlord Reimbursement as defined in the Lease and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. Tenant hereby indemnifies and agrees to hold Landlord harmless from any loss, payment, claim or expense as the result of mechanics and materialmen filing liens or otherwise making claims against Landlord's interest in the Premises and the Shopping Center as a result of Tenant's construction activities at the Shopping Center. In the event that any mechanic, materialman or other claimant makes claim against the Premises or Shopping Center based upon materials or services provided under contract with Tenant, Tenant shall hold harmless and protect Landlord from any loss, payment, claim or expense related thereto.

2. Tenant reserves the right to contest in good faith the amount of any claim or lien assessed against the Premises or the Shopping Center by any of such claimants; provided, however, should the holder or holders of such claim or lien attempt to enforce their lien by foreclosure or by any other means, Tenant shall bond around, pay or remove such lien by any manner reasonably necessary to protect Landlord's interest in the Premises and the Shopping Center. This indemnity and hold harmless shall not apply to any liens or claims caused by Landlord or Landlord's agents.

EXECUTED this _____ day of _____, _____.

[SIGNATURE PAGE TO FOLLOW]

M-1

LANDLORD:

**TEAM RETAIL WESTBANK, LTD.,**
a Texas limited partnership

By:   GP Team Retail Westbank, LLC,
       A Texas limited liability company,
       Its General Partner

Date: _____

By: _____
Name: _____
Title: _____

TENANT:

**CIRCUIT CITY STORES, INC.,**
a Virginia corporation

Date: _____

By: _____
John B. Mulleady
Vice President, Real Estate and Construction

M-2

# EXHIBIT N

Pylon Sign Rendering

See Exhibit C

# EXHIBIT O

Bed Bath & Beyond Consent Letter

*Circuit City Stores, Inc.*
*Deep Run I*
*9950 Mayland Drive*
*Richmond, Virginia 23233*

April 30, 2007

Katherine Sloss, Esq.
Bed Bath & Beyond Inc.
650 Liberty Avenue
Union, New Jersey 07083

Re:  Agreement Regarding Exclusive Uses between Circuit City Stores, Inc. ("CC") and Bed Bath & Beyond Inc., a New York corporation ("BBB") - 901 Manhattan Shopping Center, Westbank (Harvey), LA. ("Shopping Center")

Dear Ms. Sloss:

Reference is made to the Shopping Center, for which Bed, Bath & Beyond Inc., a New York corporation ("BBB") is negotiating or has executed a lease and Circuit City Stores, Inc., a Virginia corporation and/or Circuit City Stores West Coast, Inc. (a California corporation) (together "CC"), is negotiating or has executed a lease in the Shopping Center. In order to facilitate the operation of retail stores by each of CC and BBB in the Shopping Center, this letter sets forth the agreement of CC and BBB with respect to the exclusive uses to be established in the leases.

## DEFINITIONS

A.  **BBB Store:** The store demised to BBB under the BBB Lease, containing a retail sales area of at least 10,000 square feet, which is operated primarily for the sale of home products and furnishings by (i) BBB, or (ii) any Successor.

B.  **BBB Exclusive Use:** The retail sale of any of the following goods (such items are collectively referred to as the "BBB Exclusive Products"): (i) linens and domestics (including but not limited to sheets, bedspreads, comforters, duvets, pillows, pillow covers, placements, tablecloths, dish towels, oven mittens and aprons); (ii) bathroom items (including but not limited to towels, shower curtains, bathroom rugs, toilet seats and other bathroom accessories); (iii) housewares (including but not limited to utensils, kitchen utensils, countertop kitchen and bathroom appliances, kitchen and bathroom "gadgets," small cleaning appliances [including but not limited to irons and hand held cleaning machines] and supplies, cookware, bakeware, dishes and china); (iv) frames and wall art; (v) window treatments; and/or (vi) closet, shelving and storage items.

C.  **CC Store:** The store demised to CC under the CC Lease, containing a retail sales area of at least 10,000 square feet, which is operated primarily for the sale of consumer, office and/or automotive electronics by (i) CC, or (ii) any Successor.

O-1

Bed Bath & Beyond Inc.
West Bank (Harvey), Louisiana
April 30, 2007
Page 2

  D. <u>CC Exclusive Use</u>: The retail sale of any of the following goods and services (i) consumer, office and automotive electronics products (which include, but shall not be limited to, televisions, stereos, speakers, video and audio recorders and players and cameras), computer hardware and software and related software services, including internet access services, entertainment software and entertainment media (which include, but shall not be limited to, records, game cartridges, video tapes, cassettes, compact discs, DVD's and DVD equipment), cellular and wireless telephones and telecommunication devices, and related goods and the sale and installation of motor vehicle audio, stereo and telephone systems and technological evolutions of the foregoing (all of such items are collectively referred to as the "CC Exclusive Products"), and (ii) renting, servicing, repairing and warehousing of the CC Exclusive Products.

  E. <u>Successor(s)</u>: Any entity which is controlling, controlled by or under common control with CC or BBB, as applicable, or any assignees, sublessees, licensees, concessionaires, tenants, purchasers or other successor(s) in interest.

  F. <u>Excused Periods</u>: Periods during which: (a) material alterations or renovations are being performed in and to a party's Store for a period not in excess of 365 days, (b) a party's Store is being restored with reasonable efforts following damage, destruction, or taking in eminent domain, or (c) an event of *force majeure* prevents the operation of business within a Party's Store.

## AGREEMENT

For and in consideration of the mutual covenants set forth herein, CC and BBB agree as follows:

  1. Notwithstanding any provision(s) to the contrary in the BBB Lease or the CC Lease, BBB agrees to recognize and not violate the CC Exclusive Use in the Shopping Center, provided, however, that (i) the following categories of goods shall not be deemed to be CC Exclusive Products: (a) consumer electronic products involving personal care (such as hair dryers); (b) small electronic kitchen appliances and devices (such as microwave ovens, toasters, coffee makers); (c) electronic bedroom appliances and devices (such as alarm or clock radios); (d) electronic home maintenance devices (such as vacuum cleaners); and (e) electronic entertainment software and media that is specifically related to cooking, home decorating, home repairs, and/or home building; and (ii) BBB and its Successors shall be permitted to use up to (but not more than) 400 square feet of floor area in the BBB Store for the sale of any of the CC Exclusive Products except cellular telephones, provided, however, that in the event that BBB subsequently sells cellular telephones in at least seventy-five percent (75%) of its stores in the United States, then BBB shall be permitted to use up to (but not more than) fifty (50) square feet of the square footage that it occupies within the BBB Store for the sale of cellular telephones. The exclusive rights with respect to any particular category listed in the CC Exclusive Use shall terminate as to such category in the event that the CC Store ceases to be used for the sale, rental or distribution of items contained in such category for in excess of twelve (12) consecutive months (except for Excused Periods). Notwithstanding the foregoing, the CC Exclusive Use shall lapse in its entirety with respect to a non-affiliated assignee of the CC Lease or a non-

O-2

Bed Bath & Beyond Inc.
West Bank (Harvey), Louisiana
April 30, 2007
Page 3

affiliated sublessee of all or a portion of the CC Store, if that assignee or sublessee fails to use at least fifty percent (50%) of the square footage that it occupies within the CC Store for the sale, rental or distribution of the CC Exclusive Products, singly or in any combination, for in excess of twelve (12) consecutive months, except for Excused Periods.

    2.    Notwithstanding any provision(s) to the contrary in the BBB Lease or the CC Lease, CC agrees to recognize and not violate the BBB Exclusive Use in the Shopping Center, provided, however, that (i) CC and its Successors shall be permitted to use up to (but not more than) 450 square feet of floor area in the CC Store for the sale of the BBB Exclusive Products. The exclusive rights with respect to any particular category listed in the BBB Exclusive Use shall terminate as to such category in the event that the BBB Store ceases to be used for the sale, rental or distribution of items contained in such category for in excess of twelve (12) consecutive months (except for Excused Periods). Notwithstanding the foregoing, the BBB Exclusive Use shall lapse in its entirety with respect to a non-affiliated assignee of the BBB Lease or a non-affiliated sublessee of all or a portion of the BBB Store, if that assignee or sublessee fails to use at least fifty percent (50%) of the square footage that it occupies within the BBB Store for the sale, rental or distribution of the BBB Exclusive Products, singly or in any combination, for in excess of twelve (12) consecutive months, except for Excused Periods.

    3.    Subject to each party's compliance with the terms of this letter agreement, CC and BBB each agree not to object to the development, proposed development, operation or proposed operation of a BBB Store, or a CC Store, as applicable, in the Shopping Center.

    4.    Although not required as a condition to the enforceability of the terms and provisions of this letter agreement, CC and BBB shall, upon the request of the other, execute any document reasonably required by the other to evidence the existence or applicability of the terms and provisions of this letter agreement.

    5.    The foregoing constitutes the final agreement between CC and BBB with respect to the Shopping Center, and supersedes all prior understandings, writings and agreements between the parties with respect to the BBB Exclusive Use and the CC Exclusive Use in the Shopping Center. The provisions of this letter agreement shall be binding on any and all Successors of CC and BBB. The Landlord in the CC Lease and the BBB Lease shall be entitled to rely on the terms and conditions set forth in this agreement only as between CC and BBB (and their respective Successors), and not with respect to other tenants or occupants of the Shopping Center (as to which the "exclusive use" provisions contained in the CC Lease and the BBB Lease shall apply in accordance with the terms of said Leases).



O-3

WO 445485.2Dallas 1233552_2 7680.4
H:\44050062-West Bank, LA\Lease Ver 9.DOC
Dallas 1249389_2 7680.4
Dallas 1251043_3 7680.4

Bed Bath & Beyond Inc.
West Bank (Harvey), Louisiana
April 30, 2007
Page 4

If the foregoing accurately reflects your understanding, please sign below indicating your agreement, and return the executed counterpart to my attention at the above address. It shall be a condition precedent to the agreements herein set forth that BBB and CC shall each have entered into a lease or occupancy agreement for its premises in the Shopping Center within one year after the date hereof.

Very truly yours,

By: _____
John B. Mulleady
Vice President Real Estate and
Construction

ACCEPTED AND AGREED TO
THIS 1st DAY OF MAY, 2007

BED BATH & BEYOND, INC.

_____
Name: Seth Geldzahler
Title: Vice President – Real Estate

O-4