Gregg M. Galardi, Esq.　　　　　　　Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.　　　　　　Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &　　MCGUIREWOODS LLP
FLOM, LLP　　　　　　　　　　　　　　One James Center
One Rodney Square　　　　　　　　　　901 E. Cary Street
PO Box 636　　　　　　　　　　　　　　Richmond, Virginia 23219
Wilmington, Delaware 19899-0636　　(804) 775-1000
(302) 651-3000

　　　　- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
<u>et</u> <u>al</u>.,         :
                              :
　　　　　　　Debtors.          :    Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY CODE
SECTION 1121(d) FURTHER EXTENDING EXCLUSIVE PERIODS
DURING WHICH DEBTORS AND/OR CREDITORS' COMMITTEE MAY
FILE AND SOLICIT ACCEPTANCES OF A PLAN OF LIQUIDATION**

　　　　　　　The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion"), for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") extending the exclusive periods during which the Debtors and/or the Creditors' Committee (as defined herein) may file and solicit acceptances of a plan of liquidation.  In support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

2

2. The statutory predicate for the relief requested herein is Bankruptcy Code section 1121(d).

**BACKGROUND**

**A. The Chapter 11 Filing**

3. On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). To date, no trustee or examiner has been appointed in these chapter 11 cases.

6. On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent"). On January 17, 2009, the Agent

3

commenced going out of business sales pursuant to the Agency Agreement at the Debtors' remaining stores. The going out of business sales concluded on or about March 8, 2009.

**B.   Prior Extension Of The Exclusive Periods.**

7.   On March 3, 2009, the Court entered the Order Under Bankruptcy Code Section 1121(d) Extending Exclusive Periods During Which Debtors may File and Solicit Acceptances of a Plan of Liquidation (Docket No. 2398, the "First Exclusivity Order"). The First Exclusivity Order extended the Plan Period (as defined herein) until July 8, 2009 and the Solicitation Period (as defined below) until September 6, 2009.

**RELIEF REQUESTED**

8.   By this Motion, the Debtors request entry of an order further extending (i) the Plan Period until July 31, 2009, and (ii) the Solicitation Period until September 29, 2009 with respect to all parties, except the Creditors' Committee. If granted, the extension of the Exclusive Periods (as defined below) will be without prejudice to (i) the right of the Debtors to seek further extensions of the Exclusive Periods or (ii) the

4

right of any party in interest to seek to reduce the Exclusive Periods for cause.

9. Additionally, the Debtors are requesting entry of a bridge order extending the Exclusive Periods through entry of an order disposing of the Motion on its merits.[2]

## BASIS FOR RELIEF

10. Bankruptcy Code section 1121(b) provides for an initial 120-day period after the Petition Date within which the Debtors have the exclusive right to file a plan or plans of liquidation (a "Plan") in their cases (the "Plan Period"). Bankruptcy Code section 1121(c) further provides for an initial 180-day period after the Petition Date within which the Debtors have the exclusive right to solicit and obtain acceptances of a Plan filed by the Debtors during the Plan Period (the "Solicitation Period" and, together with the Plan Period, the "Exclusive Periods"). Thus, the Plan Period was originally set to expire on March 10, 2009, and the Solicitation Period was originally set to expire on May

---

[2] The Motion is scheduled for hearing on July 23, 2009.

5

9, 2009. As noted above, pursuant to the First Exclusivity Order, the Plan Period was extended until July 8, 2009 and the Solicitation Period was extended until September 6, 2009.

11. Since the entry of the First Exclusivity Order, the Debtors have made substantial progress towards winding down their operations and estates. Indeed, the Debtors are entering the final stages of the chapter 11 cases, having resolved many of the issues facing their estates. The Debtors have sold substantially all of the assets of their operating facilities and have fully paid the claims of the lenders under their debtor-in-possession financing facility. The Debtors have also reduced the administrative burdens upon their estates by rejecting many contracts and personal property leases and substantially all of their real property leases.

12. The Debtors are now working to resolve the remaining issues in these chapter 11 cases, including liquidating any remaining assets, continuing the claims reconciliation process, and developing and filing a Plan. The Debtors anticipate that they should

be in position to file a Plan by the end of July 2009 and thereafter seek confirmation and consummation of the same.

        13.  As part of this process, the Debtors have been in communication with the Creditors' Committee regarding the possibility of filing a joint Plan. These discussions are ongoing and thus, the Debtors seek the requested extensions in order to reach a conclusion as to whether they will proceed with a joint Plan.

        14.  The brief extensions requested in this Motion will not prejudice the legitimate interests of any party in interest in these chapter 11 cases. Indeed, the Debtors do not seek to extend the Exclusive Periods with respect to the Creditors' Committee -- the party most likely to seek to file a competing a Plan. In the event that the Debtors and the Creditors' Committee cannot come to an agreement on a joint Plan, the Debtors and the Creditors' Committee have agreed to file and solicit acceptances for competing Plans simultaneously. Thus, the extensions will further the Debtors' efforts to preserve, maximize and create value for the Debtors' creditors and increase the likelihood of an orderly

conclusion to these chapter 11 cases pursuant to a Plan. Moreover, the Debtors believe that the requested extensions are warranted and, indeed, appropriate under the circumstances.

15. Accordingly, the Debtors request that the Court (a) extend the Exclusive Periods as set forth above and (b) prohibit any party, other than the Debtors and the Creditors' Committee, from filing a competing plan and/or soliciting acceptances of any such competing plan during the extended Exclusive Periods.

### APPLICABLE AUTHORITY

16. Under Bankruptcy Code section 1121(d), the Court may extend the Exclusive Periods for cause. Specifically, section 1121(d) provides:

> [O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause . . . increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

17. Courts have identified several key factors relevant to a determination of whether cause

8

exists under Bankruptcy Code section 1121(d), including the following:

    (i) The size and complexity of a debtor's case;

    (ii) The amount of time that has elapsed since the debtor filed its bankruptcy case;

    (iii) Whether unresolved contingencies exist that affect the debtor's ability to reorganize;

    (iv) The debtor's progress in resolving issues facing its estate; and

    (v) Whether an extension of time will harm the debtor's creditors or other interested parties.

See In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); see also In re Adelphia Comm. Corp., 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006).

    18. In determining whether to grant a requested extension of exclusivity, courts also consider whether a debtor has had a reasonable opportunity to negotiate an acceptable plan with various interested

9

parties and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors.  See McLean, 87 B.R. at 833-34; In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

19.    In evaluating whether an extension under Bankruptcy Code section 1121(d) is warranted, courts are given maximum flexibility to review the particular facts and circumstances of each case.  See In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) ("[A]pplying the 'flexibility' in dealing with the question of extension of exclusivity which the cases suggest . . . , we hold that debtor has shown cause for the extension."); In re Pub. Serv. Co., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent [is] to promote maximum flexibility."); H.R. Rep. No. 95-595, at 232 (1978) ("[T]he bill allows the flexibility for individual cases that is unavailable today."), reprinted in 1978 U.S.C.C.A.N. 5963, 6191.

20.    As set forth herein, the brief twenty-three (23) day extension of the Exclusive Periods is warranted here because, among other things:

    (i)    The Debtors' cases are large and complex, and certain issues remain unresolved, including but not limited to the validity, amount, and priority of claims and the measure of the Debtors' assets;

    (ii)    The Debtors have made significant, good-faith progress in resolving many of the issues facing the Debtors' estates, including the ultimate disposition of the Debtors' assets through a liquidation of substantially all of the Debtors' inventory and the reconciliation of claims; and

    (iii)    An extension of the Exclusive Periods will give the Debtors a reasonable opportunity to possibly develop, negotiate, and ultimately confirm a consensual plan, without prejudicing any party in interest.

**I.    THE DEBTORS' CASES ARE LARGE AND COMPLEX**

21.    The size and complexity of the Debtors' chapter 11 cases alone can constitute sufficient cause to extend the Exclusive Periods. See Express One, 194 B.R. at 100 ("The traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization."); see also Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (affirming extension of exclusivity period to over eighteen months because of "the complexity of the

11

debtor's case"); In re Highland Park Assocs. L.P. I, 130 B.R. 55, 60 (Bankr. N.D. Ill. 1991) (finding that "the complexities of this case warrant an extension"); H.R. Rep. No. 95-595, at 232 (1978) ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."), reprinted in 1978 U.S.C.C.A.N. 5963, 6191.

22.  The Debtors' cases are among the largest retail bankruptcy cases to date.  The Debtors operated over 700 of retail stores nationwide, employing close to 40,000 employees.  Accordingly, the Debtors' chapter 11 cases involve thousands of parties in interest with billions of dollars of claims at stake.  At the latest count, parties had filed roughly 13,700 proofs of claim for claims amounting to over $12 billion.[3]  The Debtors and their advisors have begun the time-consuming process of reconciling these claims and, to date, have filed 23

---

[3]  This figure references aggregate liquidated amounts for all proofs of claim, as filed, and does not take into account claims objections, stipulations or claim withdrawals.

12

omnibus objections. The claims reconciliation process is ongoing.

23. Although the Debtors have accomplished a great deal in a relatively brief span of time, the Debtors and their professionals require additional time to assess the validity and amount of the vast number of claims against the estate, including administrative claims asserted or to be asserted against the Debtors, and to reconcile assets and liabilities.

## II. THE DEBTORS HAVE MADE SUBSTANTIAL PROGRESS IN THEIR CASES IN A RELATIVELY SHORT AMOUNT OF TIME.

24. As this Court is well aware, in the first few months of these cases, the Debtors, their management, and their professionals devoted significant time and resources towards a possible reorganization. Notwithstanding these efforts, the Debtors were forced to commence a liquidation, which began with approval of the Agency Agreement on January 16, 2009.

25. In the period since the Agency Agreement was approved, the Debtors have taken significant steps to liquidate the Debtors' remaining assets and wind down their businesses. In particular, the Debtors liquidated

all of their remaining inventory in their stores and distribution centers.  Additionally, the Debtors have sold or rejected substantially all of their real property leases.  The Debtors have also sold a number of parcels of owned real property, as well as certain other significant assets including certain Canadian assets, the majority of the Debtors' intellectual property assets, the Debtors' corporate aircraft, and certain remaining defective inventory.  Thus, the Debtors have successfully liquidated the majority of their assets in a manner that maximized recovery for the estates.  The Debtors' efforts to liquidate their remaining assets are ongoing.

26.    On a parallel path, the Debtors have commenced efforts to evaluate and reconcile claims filed by the general and 503(b)(9) bar dates.  Additionally, since the governmental bar date passed on May 11, 2009, the Debtors also began evaluating and reconciling priority and other claims filed by governmental units.  Lastly, in connection with the administrative bar date of June 30, 2009, the Debtors entered the preliminary

stages of evaluating and reconciling non-503(b)(9) administrative expense claims.

27. Based on the Debtors' claim reconciliation efforts to date, the Debtors have objected to thousands of claims by filing 23 omnibus objections. Additionally, the Debtors have consensually resolved various administrative expenses requests filed by, among other parties in interest, landlords.

28. The Debtors believe that their employees and their advisors have acted diligently and undertaken substantial efforts to bring these bankruptcy cases to a conclusion as quickly as possible in order to minimize administrative expenses and maximize the recovery available to the Debtors' creditors. The Debtors submit that their demonstrated progress in their chapter 11 cases to date is ample cause to extend the Exclusive Periods.

### III. THE EXTENSION SOUGHT WILL NOT HARM ANY PARTY AND INDEED WILL BENEFIT THE DEBTORS' STAKEHOLDERS.

29. This Motion is the Debtors' second request for an extension of their Exclusive Periods and seeks only a brief twenty-three day extension of the

Exclusive Periods applicable to all entities, other than the Creditors' Committee -- the only party of which the Debtors are aware with an interest in filing a competing Plan.  Thus, the Debtors are not seeking an extension of the Exclusive Periods to unfairly prejudice or pressure the Debtors' creditors.  Instead, the extension requested herein by the Debtors is an exercise of prudent business judgment and an attempt to have adequate time to negotiate terms of a Plan, possibly on a consensual basis, that provides for an equitable distribution of the assets of the Debtors' estates to the holders of valid claims against the Debtors' estates.

30.  The request for an extension of the Exclusive Periods set forth herein is reasonable, particularly in light of the complexity of the Debtors' cases and the substantial progress demonstrated by the Debtors in the prosecution of these bankruptcy cases. Moreover, the extension will further the Debtors' efforts to preserve value.

31.  In particular, the Debtors require additional time to continue their discussions with the Creditors' Committee and to finalize the terms of a Plan,

as well as to evaluate claims against their estates, to liquidate their assets pursuant to a value-maximizing process, and to determine the optimal distribution of those assets.  Allowing the Debtors sufficient time to accomplish these tasks is in the best interest of all parties in interest.

32.  In sum, the requested extension of the Exclusive Periods will facilitate the Debtors' efforts to maximize the value of their estates by providing the Debtors with a full and fair opportunity to formulate, propose, and seek acceptances of a plan of liquidation. The Debtors submit that the extension requested herein will increase the likelihood of a greater distribution to creditors than would be possible if the Debtors were required to file a Plan prior to having such an opportunity.

33.  Similar relief to that requested herein has been granted in other large, liquidating chapter 11 cases.  See, e.g., In re SemCrude, L.P., et al., Case No. 08-11525 (BLS) (Bankr. D. Del. Dec. 8, 2008); In LV Liquidation Corp., et al., Case No. 08-10323 (BLS) (Bankr. D. Del. June 25, 2008); In re SN Liquidation,

17

Inc., Case No. 07-11666 (KG)(Bankr. D. Del. Mar. 28, 2008); In re Tweeter Home Entm't Group, Inc., Case No. 07-10787 (PJW)(Bankr. D. Del. Oct. 9, 2007).

34.  Accordingly, for these reasons, the Debtors should be allowed additional time to draft, negotiate, file, and solicit acceptances of a feasible plan or plans of liquidation in these bankruptcy cases, subject only to the Creditors' Committee's right to also file a competing plan in accordance with the agreement reached with the Debtors.

**NOTICE**

35.  Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (D.I. 130).  The Debtors submit that, under the circumstances, no other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

36.  Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law

presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

37. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: July 6, 2009
      Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

MCGUIREWOODS LLP

__/s/ Douglas M. Foley____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors in Possession