Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                        RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :    Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :    Case No. 08-35653 (KRH)
et al.,                     :
                            :
              Debtors.      :    Jointly Administered
- - - - - - - - - - - - - - x

**MOTION FOR ORDERS PURSUANT TO BANKRUPTCY CODE SECTIONS 105
AND 363 AND BANKRUPTCY RULES 2002 AND 6004 (I)(A) APPROVING
PROCEDURES IN CONNECTION WITH SALES OF MISCELLANEOUS
INTELLECTUAL PROPERTY ASSETS, (B) AUTHORIZING SELLERS TO
ENTER INTO STALKING HORSE AGREEMENTS IN CONNECTION
THEREWITH, (C) APPROVING THE PAYMENT OF TERMINATION FEES IN
CONNECTION THEREWITH, (D) APPROVING FORM AND MANNER OF SALE
NOTICE AND (E) SETTING AUCTION AND HEARING DATES;
(II) APPROVING SALES OF MISCELLANEOUS INTELLECTUAL PROPERTY
ASSETS FREE AND CLEAR OF ALL INTERESTS; AND (III) GRANTING
RELATED RELIEF**

        The debtors and debtors in possession in the

above-captioned jointly administered cases (the

"Sellers" or "Debtors")[1] hereby move (the "Motion"),

pursuant to sections 105 and 363 of title 11 of the

United States Code (the "Bankruptcy Code") and 2002 and

6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of orders

(I)(A) approving procedures in connection with

soliciting bids for the sales (the "Sales") of certain

of Sellers' miscellaneous intellectual property assets

(the "Intellectual Property Assets"), (B) authorizing

the Sellers to enter into stalking horse agreements in

connection with the Sales of the Intellectual Property

Assets, (C) approving Debtors' payment of a Termination

Fee (as defined below) in connection therewith,

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), PRAHS, INC. (n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for Circuit City Stores West Coast, Inc. is 9250 Sheridan
      Boulevard, Westminster, Colorado 80031.  For all other Debtors,
      the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
      currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

(D) approving the form and manner of sale notice (the

"Notice Procedures"), and (E) scheduling Auction and

Hearing dates (each as defined below); (II) approving

the Sales of the Intellectual Property Assets free and

clear of all Interests (as defined below); and

(III) granting related relief.  In support of the Motion,

the Sellers respectfully represent as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this District is proper

under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105 and

363 and Bankruptcy Rules 2002 and 6004.

**BACKGROUND**

3.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.    On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going-out-of-business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going-out-of-business sales pursuant to the Agency Agreement at the Debtors' remaining stores.

**RELIEF REQUESTED**

7.    By this Motion, the Sellers seek entry of two forms of relief.  First, at the hearing to be held on July 16, 2009, the Sellers will seek entry of an order, substantially in the form attached hereto as

<u>Exhibit A</u> (the "Bidding Procedures Order"),

(A) approving the bidding procedures set forth herein and attached to the Bidding Procedures Order as <u>Exhibit 1</u> (the "Bidding Procedures"), (B) authorizing, but not requiring, the Debtors to (i) enter into one or more "stalking horse" agreements (each a "Stalking Horse Agreement") with a bidder (the "Stalking Horse Bidder") for the purpose of establishing a minimum acceptable bid at which to begin the Auctions and (ii) provide a Stalking Horse Bidder with a fee (the "Termination Fee") up to, but not greater than 3.0%, of the cash purchase price set forth in the Stalking Horse Agreement, (C) approving the Notice Procedures (as defined herein) and (D) scheduling the Auctions for August 18, 2009 or such later dates as the Debtors advise Qualified Bidders (as defined herein) and the Creditors' Committee and the hearing with respect to any winning proposal received by the Sellers (the "Sale Hearing") for August 27, 2009. Second, subject to the terms of the Bidding Procedures Order, at the Sale Hearing, the Sellers will seek entry of one or more orders, substantially in the form attached hereto as <u>Exhibit B</u> (each, a "Sale Approval

Order"), approving the Sale of the all or certain of the Sellers' Intellectual Property Assets free and clear of all Interests and granting related relief.

8.   As more fully set forth below, after a comprehensive strategic review, the Sellers believe that the Sales represents their best opportunity under the circumstances to maximize the value of the Intellectual Property Assets.  Therefore, the Sales are in the best interests of the Sellers' estate and its stakeholders.

**BASIS FOR RELIEF**

9.   In the course of their continued liquidation, the Sellers have identified various assets -- including the Intellectual Property Assets -- that are valuable but for which the Sellers have no use going forward.  The Sellers have thus determined that the sales of the Intellectual Property Assets would bring significant recovery for the Sellers' estates and creditors.

10.   Even prior to the Court's authorization of the liquidation, the Sellers' financial advisor, Rothschild, Inc., actively contacted potential purchasers and received several indications of interest

6

in certain of the Sellers' intellectual property and
internet-related assets.  Since then, the Sellers have
retained Streambank LLC ("Streambank") as their
intellectual property disposition consultant.  The
Sellers, Rothschild and Streambank orchestrated the sale
of a large portion of the Sellers' intellectual property
and internet assets, including the Circuit City
trademark and associated goodwill, domain names, toll-
free numbers, patents and registrations and applications
therefor, website content and customer information to
Systemax Inc.  However, many intellectual property
assets remain.

11.   To help ensure that the Sellers receive
the highest or otherwise best proposal for these
remaining intellectual property assets, i.e., the
Intellectual Property Assets, the Sellers seek
authorization to solicit bids in accordance with the
Bidding Procedures and to enter into stalking horse
agreements for the sale of any or all of the
Intellectual Property Assets to a Stalking Horse Bidder.

12.   Moreover, the Sellers believe that
conducting the Auctions with respect to the Intellectual

Property Assets will enable them to maximize value and
minimize expenses incurred.

### BIDDING PROCEDURES[2]

**A.    The Auction.**

13.    **The Bid Deadline.**  The Debtors propose
that all proposals for any or all of the Intellectual
Property Assets (the "Bids") must be submitted on or
before August 11, 2009 at 5:00 p.m. (Eastern) (the "Bid
Deadline").  Up until the Bid Deadline, the Sellers will
accept competing Bids to purchase the Intellectual
Property Assets from those bidders who submit qualified
proposals in accordance with the Bidding Procedures
(collectively, the "Qualified Bidders" and such Bids by
Qualified Bidders, the "Qualified Bids").

14.    **The Auction.** The Sellers propose that,
if they receive any Qualified Bids that, on August 18,
2009, they will hold one or more auctions (the
"Auctions") among such Qualified Bidders.  The Auction
will take place at the offices of Skadden, Arps, Slate,

---

[2]    This section of the Motion constitutes a summary of the Bidding
       Procedures.  In the event there is a conflict between the Motion
       and the Bidding Procedures, the Bidding Procedures shall control.

Meagher & Flom, LLP at Four Time Square, New York, New

York, tentatively beginning at 10:00 a.m. (Eastern) or

such other time or place as the Sellers notify all

Qualified Bidders who have submitted Qualified Bids.

The Qualified Bidders who wish to participate in the

Auctions, or their authorized representative, must be

present, in person or, if permitted by the Debtors, by

phone, for the Auctions.

15.   During the Auctions, the Sellers will

accept competing proposals to purchase any or all of the

Intellectual Property Assets, including, for example,

customer lists and various trademarks, servicemarks and

the associated domain names and URLs.  The Auction will

be conducted with respect to each asset on which the

Sellers receive a proposal.  Bidding in the Auctions

will remain open until all Qualified Bidders who opt to

bid have submitted their highest or otherwise best

proposal for any or all of the Intellectual Property

Assets.

16.   At the conclusion of the Auctions, the

Sellers, after consultation with counsel to the

Creditors' Committee, will announce the bidder or

bidders submitting the proposal(s) that they have
determined constitute the highest or otherwise best
proposals (each such proposal, a "Successful Bid" and
each party submitting each Successful Bid, a "Successful
Bidder") and close the Auctions.  If more than one
Qualified Bidder submits a Bid on the same Intellectual
Property Assets as the Successful Bidder, the Sellers,
after consultation with the Creditors' Committee, will
announce the bidder submitting the next highest or
otherwise best proposal (the "Alternate Bidder") who,
pursuant to the Bidding Procedures, would proceed with
the purchase of the Intellectual Property pursuant to
the terms the Bid submitted at the Auctions (the
"Alternate Bid"), if the Successful Bidder fails to
consummate the Sale because of: (i) the failure of a
condition precedent beyond the control of either the
Seller or the Successful Bidder or (ii) a breach or
failure to perform on the part of such Successful Bidder.

**B.    The Bidding Procedures.**

17.   The Sellers intend to implement
procedures substantially similar to the procedures (the
"Bidding Procedures") attached as Exhibit 1 to the

Bidding Procedures Order with respect to the Qualified

Bidders and conducting the Auction.  The Sellers reserve

their right to modify such procedures as necessary or as

they deem appropriate, in consultation with counsel to

the Creditors' Committee, to maximize value for their

estates and creditors.  In addition, the Sellers, in

consultation with counsel to the Creditors' Committee,

reserve their right to withdraw certain of the

Intellectual Property Assets from the Auction at any

time prior to Court approval of any proposal concerning

such assets.  The Sellers believe that such procedures

are appropriate and will maximize the recovery for the

Sellers and their estates in connection with the Auction.

**C.    Termination Fees.**

18.    The Debtors believe that in order to

entice potential bidders to establish a floor price for

any asset and the terms of such offer, they should be

authorized (after consultation with counsel to the

Creditors' Committee) to offer bidders a Termination Fee

in the event that a bidder is chosen as a Stalking Horse

Bidder but is ultimately outbid at an Auction.

Accordingly, the Debtors request that the Bankruptcy

Court approve a Termination Fee of no more than 3% of the cash purchase price payable on such terms and conditions as set forth in any Stalking Horse Agreement that the Debtors enter into on or prior to August 11, 2009.  In addition, any Termination Fee will only be paid if (1) the Stalking Horse Bidder is not the Successful Bidder at the Auction with regard to the particular assets subject to the Stalking Horse Agreement (the "Stalking Horse Assets"), (2) the Stalking Horse Bidder agrees to serve as a back-up bidder and close the transaction contemplated by the Stalking Horse Agreement (as may be modified, including, without limitation, modifications as to price, as of the Stalking Horse Bidder's last proposal at any Auction) in the event the transaction with the Successful Bidder does not close, and (3) the transaction proposed by the Successful Bidder actually closes.  In the event the Successful Bidder does not close, the Stalking Horse Bidder will be deemed to be the Successful Bidder.

19.   In no event shall any Termination Fee be payable if the Stalking Horse Agreement contains a "due diligence" or financing contingency, and the Debtors

12

shall not be permitted to offer two Termination Fees
with respect to any proposal covering the same assets.

### SALE OF PII ASSETS

20.   As this Court is well aware, a consumer
privacy ombudsman ("CPO") has been appointed in these
cases to provide input with respect to the sale of
personally identifiable information ("PII Assets").
Certain of the Intellectual Property Assets may include
PII.  Over the course of next several weeks, the Debtors
and their advisors will work the CPO to address address
matters relating to the conveyance of any PII.

21.   However, the PII Assets are not subject
to any privacy policy or other such restrictions related
to the transfer or protection of such customer lists and
transaction data.  Thus, the Debtors submit that they
are not required to comply with the specific
requirements outline in Bankruptcy Code sections
363(b)(1)(A) or (B).

### NOTICE PROCEDURES

22.   Within five (5) days after entry of the
Bidding Procedures Order (the "Mailing Date"), the
Sellers (through their agent) propose to serve notice of

13

the Motion and entry of the Bidding Procedures Order by

email, if possible, or first-class mail, postage prepaid,

upon (i) all entities known to have expressed an

interest in a transaction with respect to the

Intellectual Property Assets or similar assets during

the past three (3) months, (ii) all entities known to

have asserted any Lien upon the Intellectual Property

Assets, (iii) all federal, state, and local regulatory

or taxing authorities or recording offices, which have a

reasonably known interest in the relief requested by the

Motion, (iv) the Attorney Generals for all fifty (50)

States, (v) the CPO, and (vi) all parties entitled to

notice under the Order Pursuant to Bankruptcy Code

Sections 102 and 105, Bankruptcy Rules 2002 and 9007,

and Local Bankruptcy Rules 2002-1 and 9013-1

Establishing Certain Notice, Case Management, and

Administrative Procedures (D.I. 130; the "Case

Management Order").

        23.   The Sellers also propose, pursuant to

Bankruptcy Rule 2002(l) and 2002(d), to publish a notice

of the Sale, substantially in the form attached hereto

as Exhibit C, in the Wall Street Journal (International

14

Edition), the <u>New York Times</u> and the <u>Richmond Times</u>
<u>Dispatch</u> within five business (5) days of entry of the
Bidding Procedures Order or as soon as practicable
thereafter.  The Sellers request that such publication
notice be deemed proper notice to any other interested
parties whose identities are unknown to the Sellers.

**APPLICABLE AUTHORITY**

**I.    THE BIDDING PROCEDURES ARE REASONABLE AND
       APPROPRIATE.**

        24.   Bankruptcy Code section 363(b)(1)
provides that "[t]he trustee, after notice and a hearing,
may use, sell, or lease, other than in the ordinary
course of business, property of the estate."  11 U.S.C.
§ 363(b)(1).  Moreover, Bankruptcy Code section 105(a)
provides that "[t]he Court may issue any order, process,
or judgment that is necessary or appropriate to carry
out the provisions of this title."  11 U.S.C. § 105(a).

        25.   The Sellers believe that the Bidding
Procedures are appropriate under Bankruptcy Code
sections 105 and 363 to ensure that the bidding and
process is fair and reasonable and will yield the
maximum value for their estates and creditors.

15

26.  The Bidding Procedures enable the Sellers to solicit bids for any or all of the Intellectual Property Assets, maximizing flexibility for both the Sellers and interested parties to select with specificity certain Intellectual Property Assets without requiring the parties to commit to bidding on all of the Intellectual Property Assets.

27.  Moreover, the Bidding Procedures allow the Sellers to enter into Stalking Horse Agreements and offer Termination Fees to encourage interested parties to serve as a Stalking Horse Bidder, which will, in turn, set a floor for bidding at the Auction to maximize recovery to the Sellers' estates and creditors.

28.  Finally, by providing for the Auction, the Bidding Procedures result in competitive bidding and a "market check" to ensure the Sellers and their estates and creditors are obtaining the highest possible value for the Intellectual Property Assets.

29.  Accordingly, the Sellers believe the Court should approve the Bidding Procedures, including the dates established thereby for, _inter_ _alia_, the Auctions and the Sale Hearing.  Similar procedures have

16

been previously approved by this Court in this and other

cases.  See, e.g., In re Circuit City Stores, Inc., Case

No. 08-35653 (KRH) (Bankr. E.D. Va 2009) (D.I 1460); In

re Ceyoniq, Inc., Case No. 02-85887 (RGM) (Bankr. E.D.

Va. Jan. 30, 2003); In re The Rowe Companies, Case No.

06-11142 (SSM) (Bankr. E.D. Va. Dec. 20, 2006).

## II.    APPROVAL OF THE SALES ARE WARRANTED UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 363(B)(1).

30.  As set forth above, Bankruptcy Code

section 363(b)(1) authorizes a trustee to "use, sell, or

lease" property of the estate with the Court's approval.

11 U.S.C. § 363(b)(1).  Assets of debtors may be sold

outside of the ordinary course of business, pursuant to

Bankruptcy Code section 363(b)(1), if a sound business

purpose exists for doing so.  In re WBQ P'ship, 189 B.R.

97, 102 (Bankr. E.D. Va. 1995)(citing Stephens Indus.,

Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see

also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836

(Bankr. E.D. Va. 1997).

31.  To satisfy the "sound business purpose

test," the debtor must demonstrate that (1) a sound

business reason or emergency justifies a pre-

17

confirmation sale; (2) the sale was proposed in good
faith; (3)the purchase price is fair and reasonable; and
(4) adequate and reasonable notice of the sale has been
provided.  In re WBQ P'ship, 189 B.R. at 102.

32.   Based upon the results of their
exhaustive analysis of the Sellers' ongoing and future
prospects, the Debtors' management and advisors have
concluded that the sales of the Intellectual Property
Assets in accordance with the procedures set forth in
the Bidding Procedures will maximize recoveries to the
estates.  Maximizing asset value is a sound business
purposes that warrant authorizing the proposed Sales.

33.   First, as noted above, by permitting
proposals for all of the remaining intellectual property
assets or for certain specific intellectual property
assets, the Sellers believe that they will be afforded
the necessary flexibility and thereby will have the
greatest potential of maximizing the value of the
Intellectual Property Assets.

34.   Second, the sale of any of the
Intellectual Property Assets will be subject to
competing bids, thereby enhancing the Debtors' ability

to receive the highest or otherwise best value for their businesses.  Consequently, the fairness and reasonableness of the consideration to be received by the Sellers will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

35.  Third, and finally, all creditors and parties in interest will receive adequate notice under the circumstances of the Bidding Procedures and the Hearing as set forth herein.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Sellers' major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the Intellectual Property Assets others whose interests are potentially implicated by the proposed Sales.

**III.  THE SALE OF ANY PII ASSENTS IS APPROPRIATE UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

36.  As stated above, Section 363(b)(1) provides that a debtor may sell property outside of the

19

ordinary course of business with court approval.  11

U.S.C. § 363(b)(1).  Where such a sale contemplates the

transfer of "personally identifiable information" (PII)

and the debtor has a privacy policy pertaining to such

information as of the commencement of the case, the

debtor must satisfy subsections (b)(1)(A) or (b)(1)(B).

37.  However, Bankruptcy Code section 363(b)(1)

authorizes a debtor to sell or transfer PII that is not

subject to a privacy policy without satisfying either

standard under Bankruptcy Code section 363(b)(1)(A) or

(B).  Here, the PII Assets are not (and were not as of

the commencement of the Sellers' cases) subject to any

privacy policy.  Thus, the PII Assets are subject to the

traditional test under Bankruptcy Code section 363(b)(1).

See, generally, 11 U.S.C. § 363(b)(1); In re WBQ P'ship,

189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

38.  As set forth above in section II hereof,

the Sellers submit that sound business purposes exist

for the Sale of the PII Assets.

## IV.   THE TERMINATION FEE REQUESTED HEREIN IS REASONABLE AND SHOULD BE APPROVED.

39.   In connection with Sales, the Court should authorize the Sellers to pay the Termination Fees identified herein.

40.   Agreements to provide break-up fees are designed to compensate a potential acquirer who serves as a catalyst that may attract higher and better offers, and have been approved in bankruptcy to encourage bidding. See In re Ryan, 261 B.R. 867, 870 (Bankr. E.D. Va. 2001).  Break-up fees can be advantageous to both buyers and sellers because they encourage bidding to ensure that sellers receive the highest or otherwise best offer for sellers while compensating the buyer for the risk of being outbid.  See id.

41.   Break-up fees are allowed as an administrative expense claim against the estate if they satisfy the standard of section 503(b)(1).  In re Tropea, 352 B.R. 766, 768 (Bankr. N.D.W.Va. 2006).  Thus, the fee must reflect the actual and necessary cost of preserving the estate.  See 11 U.S.C. § 503(b)(1).  See also In re Tropea, 352 B.R. at 768.  In Calpine Corp. v.

21

O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit expanded on the application of the section 503(b)(1) standard to break-up fees.  The Third Circuit Court of Appeals held that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of Bankruptcy Code section 503(b) govern in the bankruptcy context.  Accordingly, to be approved, bidding incentives must provide some postpetition benefit to the debtor's estate.  See id. at 533; see also In re Lamb, 2002 WL 31508913 (Bankr. D. Md. 2002) (implicitly adopting the administrative expense standard set forth in O'Brien).

        42.  The O'Brien Court identified at least two instances in which bidding incentives may provide benefit to the estate.  First, benefit may be found if "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  Id. at 537.  Second, when the

22

availability of bidding incentives induce a bidder to
research the value of the debtor and submit a bid that
serves as a minimum or floor bid on which other bidders
can rely, "the bidder may have provided a benefit to the
estate by increasing the likelihood that the price at
which the debtor is sold will reflect its true worth."
Id.

43.  The proposed Termination Fees are
appropriate under Bankruptcy Code section 503.  The
Termination Fees are fair and reasonable in amount,
particularly in view of the efforts that will have to be
expended by a stalking horse bidder.  Moreover, the
Termination Fees will enable the Sellers to secure an
adequate floor for the Auctions and, thus, insist that
competing bids be materially higher or otherwise better
than that set forth in any Stalking Horse Agreement, a
clear benefit to the Sellers' estates.

44.  In sum, the Debtors' ability to offer the
Termination Fees enables them to ensure the sale of the
Sellers' assets to a contractually-committed bidder at a
price that they believe to be fair while, at the same
time, providing them with the potential of even greater

23

benefit to the estates.  Thus, the Termination Fees

should be approved.

**V.    ANY STALKING HORSE BIDDER OR SUCCESSFUL BIDDER
SHOULD BE GRANTED THE PROTECTION OF BANKRUPTCY CODE
SECTION 363(m) AND THE TRANSACTION CONTEMPLATED BY
THE AGREEMENT SHOULD CARRY THE PROTECTIONS OF
BANKRUPTCY CODE SECTION 363(n).**

45.  The disposition of the Sellers'

Intellectual Property Assets pursuant to the terms

reflected in any agreement with a Successful Bidder that

results from the bids submitted for or at the Auctions,

pursuant to the Bidding Procedures, represents an

accepted method for the sale of retail merchandise that

has been approved in numerous chapter 11 cases of

retailers.  See, e.g., In re The Rowe Companies, Case No.

06-11142 (SSM)(Bankr. E.D. Va. Dec. 20, 2006); In re

Tweeter Home Entertainment Group, Inc., Case No. 07-

10787 (PJW) (Bankr. D. Del. Jun. 27, 2007); In re

Ultimate Electronics, Case No. 05-10104 (PJW)(Bankr. D.

Del. Mar. 8, 2005).  Under the Bidding Procedures, any

agreement with a Successful Bidder would be negotiated

at arm's-length.  These negotiations will likely involve

substantial time and energy by the parties and their

professionals, and any agreement with a Successful

24

Bidder will undoubtedly reflect give-and-take and

compromises by both sides.

46.   Accordingly, the Sellers should be

permitted to enter into any agreement with a Successful

Bidder.

47.   Specifically, Bankruptcy Code section

363(m) provides that:

> [t]he reversal or modification on appeal
> of an authorization under subsection (b)
> or (c) of this section of a sale or lease
> of property does not affect the validity
> of a sale or lease under such author-
> ization to an entity that purchased or
> leased such property in good faith,
> whether or not such entity knew of the
> pendency of the appeal, unless such
> authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

48.   While the Bankruptcy Code does not define

"good faith", the Fourth Circuit Court of Appeals has

"adopt[ed] the traditional equitable definition that has

been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and

without notice of adverse claims.'"  Willemain v. Kivitz,

764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

25

49.   Additionally, the Bidding Procedures
ensure that a prospective purchaser or store closing
agent will not be able to exert any undue influence over
the Sellers.  Under the circumstances, and after
considering the record to be presented by the Debtors at
the Hearing, this Court should find that (i) the sale of
the Sellers' Intellectual Property Assets, whether
pursuant to a agreement with a Successful Bidder, is the
result of good faith arm's-length negotiations, and
(ii) the ultimate purchaser is entitled to all of the
protections of Bankruptcy Code section 363(m).

50.   Bankruptcy Code section 363(n) further
provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

11 U.S.C. § 363(n).

51.   The Sellers present evidence at the Sale
Hearing that any agreement with a Successful Bidder

26

reflects a negotiated, arm's length and good faith transaction.  Moreover, to the extent that the assets are sold to a Successful Bidder, it will be because of a well-planned competitive process and arm's length negotiations.  Additionally, the Bidding Procedures ensure that a prospective purchaser will not be able to exert any undue influence over the Sellers.  Moreover, any agreement with any Successful Bidder bid will not be the product of fraud or collusion between the Successful Bidder and other bidders or the Debtors, or an attempt to take grossly unfair advantage of other bidders.

52. As a result of the foregoing, the Sellers request that the Court make a finding that the purchase price to be paid by the Successful Bidder constitutes reasonably equivalent value and fair consideration under any applicable law.  The Sellers further request that this Court make a finding that any the Successful Bidder has purchased the Intellectual Property Assets in good faith within the meaning of Bankruptcy Code section 363(m).  Additionally, the Sellers request that this Court make a finding that a purchase agreement reached as a result of the Bidding Procedures necessarily will

comprise an arm's length, intensely-negotiated

transaction entitled to the protections of Bankruptcy

Code section 363(m) and that the transactions

contemplated by the Agreement are not avoidable under

Bankruptcy Code section 363(n).

**VI.  THE SALE OF THE INTELLECTUAL PROPERTY AND ASSETS
      SHOULD BE FREE AND CLEAR OF LIENS, CLAIMS AND
      ENCUMBRANCES UNDER BANKRUPTCY CODE SECTION 363(f).**

53.  To facilitate a sale of the Intellectual

Property Assets, the Sellers request authorization to

sell the Intellectual Property Assets free and clear of

any and all Interests.

54.  Under Bankruptcy Code section 363(f), a

debtor in possession may sell property free and clear of

any interest in such property if, among other things:

(1)  applicable nonbankruptcy law permits sale
     of such property free and clear of such
     interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at
     which such property is sold is greater
     than the aggregate value of all liens on
     such property;

(4)  such interest is in bona fide   dispute;
     or

28

> (5)   such entity could be compelled, in a
>       legal or equitable proceeding, to accept
>       a money satisfaction of such interest.

11 U.S.C. § 363(f).

55.   Section 363(f) permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

56.   Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. W. Va. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens.").  Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the

29

marketplace.  See In re TWA, Inc., 2001 Bankr. LEXIS 723,

at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

57.  Accordingly, this Court should authorize

the Sellers to sell the Intellectual Property free and

clear of all Interests, with any such Interests

attaching to the net proceeds of the sale of the

Intellectual Assets in the same order and priority as

they exist against the Intellectual Property Assets and

subject to the same defenses.

**VII.   THE TEN-DAY STAY PROVIDED BY BANKRUPTCY RULE 6004
         SHOULD BE WAIVED FOR ANY ORDER APPROVING THE SALE
         OF THE INTELLECTUAL PROPERTY AND INTERNET ASSETS.**

58.  Bankruptcy Rule 6004(h) provides that:

"[a]n order authorizing the use, sale, or lease of

property is stayed until the expiration of 10 days after

entry of the order, unless the court orders otherwise."

Fed. R. Bankr. P. 6004(h).

59.  The Sellers request that the Court waive

the ten-day stays of Bankruptcy Rule 6004 with respect

to the Sale of the Intellectual Property Assets

following entry of any and all orders approving such

transactions.  By waiving such requirement, the Sellers

30

and any purchaser will be able to immediately close the
transactions approved by such orders.

## NOTICE

60.   Notice of this Motion with respect to
approval of the Bidding Procedures has been provided to
those parties entitled to notice under this Court's
Order Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (Docket
No. 130).  Following entry of the Bidding Procedures
Order, the Debtors will provide notice as directed
therein.

## WAIVER OF MEMORANDUM OF LAW

61.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is
set forth in the Motion, the Sellers request that the
requirement that all motions be accompanied by a
separate memorandum of law be waived.

**NO PRIOR REQUEST**

62.   No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request

that the Court (i) enter an order, substantially in the

form of the Bidding Procedures Order attached hereto as

Exhibit A, granting the relief requested herein,

(ii) enter one or more orders, substantially in the form
of the Sale Approval Order attached hereto as Exhibit B,
approving any and all sales following completion of the
Auctions, and (iii) such other and further relief as may
be just and proper.

Dated: July 6, 2009
        Richmond, Virginia   SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM, LLP
                             Gregg M. Galardi, Esq.
                             Ian S. Fredericks, Esq.
                             P.O. Box 636
                             Wilmington, Delaware 19899-0636
                             (302) 651-3000

                                  – and –

                             SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM, LLP
                             Chris L. Dickerson, Esq.
                             155 North Wacker Drive
                             Chicago, Illinois 60606
                             (312) 407-0700

                                  – and –

                             MCGUIREWOODS LLP

                             _/s/ Douglas M. Foley_____
                             Dion W. Hayes (VSB No. 34304)
                             Douglas M. Foley (VSB No. 34364)
                             One James Center
                             901 E. Cary Street
                             Richmond, Virginia 23219
                             (804) 775-1000

                             Counsel for Debtors and Debtors
                             in Possession

34

**<u>EXHIBIT A</u>**

**(Bidding Procedures Order)**

Gregg M. Galardi, Esq.            Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.           Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &   MCGUIREWOODS LLP
FLOM, LLP                         One James Center
One Rodney Square                 901 E. Cary Street
PO Box 636                        Richmond, Virginia 23219
Wilmington, Delaware 19899-0636   (804) 775-1000
(302) 651-3000

             - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND
BANKRUPTCY RULES 2002 AND 6004 (I) APPROVING PROCEDURES
IN CONNECTION WITH SALES OF MISCELLANEOUS INTELLECTUAL
PROPERTY ASSETS, (II) AUTHORIZING SELLERS TO ENTER INTO
STALKING HORSE AGREEMENTS IN CONNECTION THEREWITH,
(III) APPROVING THE PAYMENT OF TERMINATION FEES IN
CONNECTION THEREWITH, (IV) SETTING AUCTION AND HEARING
DATES AND (V) GRATING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Sellers,

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

1

for entry of an orders under Bankruptcy Code

sections 105 and 363 and Bankruptcy Rules 2002 and 6004

(I)(A) approving the Bidding Procedures in connection

with soliciting bids for the Sales of the Intellectual

Property Assets, (B) authorizing the Sellers to enter

into stalking horse agreements in connection therewith,

(C) approving the payment of Termination Fees in

connection therewith, (D) approving the Notice

Procedures and (E) scheduling Auction and Hearing dates;

(II) approving the Sales of the Intellectual Property

Assets free and clear of all Interests; and

(III) granting related relief; and the Court having

reviewed the Motion; and the Court having determined

that the relief requested in the Motion is in the best

interests of the Sellers, their estates, their creditors,

and other parties in interest; and it appearing that

proper and adequate notice of the Motion has been given

and that no other or further notice is necessary; and

upon the record herein; and after due deliberation

thereon; and good and sufficient cause appearing

therefor, it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.   The court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.   Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.   Good and sufficient notice of the relief sought in the Motion has been given and no further notice is required.  A reasonable opportunity to object has been afforded to those parties that requested notice pursuant to Bankruptcy Rule 2002 and the Core Group (as defined in the Case Management Order).

D.   The Sellers' proposed notice of the Bidding Procedures, the Auctions (if any) and the Hearing, as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

---

2 Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

E.    The Bidding Procedures substantially in the form attached hereto as <u>Exhibit 1</u> are fair, reasonable, and appropriate and are designed to maximize the recovery with respect to the Sales of the Intellectual Property Assets.

F.    The Sellers have demonstrated a compelling and sound business justification for authorizing the Sales of the Intellectual Property Assets and the payment of one or more Termination Fee under the circumstances, timing, and procedures set forth herein and in the Motion.

G.    Each Termination Fee is fair and reasonable and provides a benefit to the Sellers' estates and creditors.

H.    The Sellers' payment of the Termination Fees, under the conditions set forth in the Motion is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) necessary to ensure that any Stalking Horse Bidder

will continue to pursue the proposed agreements to undertake the Sale of certain of the Intellectual Property Assets.

I.   The entry of this Order is in the best interests of the Sellers and their estates, creditors, and interest holders and all other parties-in-interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Motion is GRANTED to the extent set forth herein.

2.   The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED.

3.   The Bid Deadline shall be August 11, 2009 at 5:00 p.m. (ET).

4.   The Auctions shall be held on August 18, 2009 at 10:00 a.m. (ET) or at such later date and time as the Debtors, in their sole discretion (after consultation with counsel to the Creditors' Committee), may advise Qualified Bidders.

5.   The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the Sales of the Intellectual Property Assets and the Auctions.

5

6.    The Sellers (after consultation with counsel to the Creditors' Committee) are authorized to terminate the bidding process or the Auction at any time if they determine, in their business judgment, that the bidding process will not maximize the value of the Sellers' Intellectual Property Assets to be realized by the Sellers' estates.

7.    With respect to any Stalking Horse Agreement that the Sellers enter into on or prior to August 11, 2009, the Sellers (after consultation with counsel to the Creditors' Committee) are authorized to offer a Termination Fee of 3% of the cash purchase price payable on such terms and conditions as set forth in such Stalking Horse Agreement to a Stalking Horse Bidder in the Auction with respect to the certain Intellectual Property Assets subject to the Stalking Horse Agreement (the "Stalking Horse Assets"); provided, further, that any Termination Fee will only be paid if (1) the Stalking Horse Bidder is not the Successful Bidder at the Auction with respect to the Stalking Horse Assets, (2) the Stalking Horse Bidder agrees to serve as a back-up bidder and close the transaction contemplated by the

6

Stalking Horse Agreement (as may be modified, including, without limitation, modifications as to price, as of the Stalking Horse Bidder's last proposal at any Auction) in the event the transaction with the Successful Bidder does not close, and (3) the transaction proposed by the Successful Bidder actually closes.

8.    The Debtors shall file any Stalking Horse Agreement with the Court prior to the Bid Deadline and provide notice of such Stalking Horse Agreement to the Bankruptcy Rule 2002 and the Core Group and those parties who expressed an interest in the Intellectual Property Assets during the three (3) months prior to the filing of the Motion and after the Motion was filed.

9.    In no event shall any Termination Fee be payable if the Stalking Horse Agreement contains a "due diligence" or financing contingency, and the Debtors shall not be permitted to offer two Termination Fees with respect to any proposal covering the same assets.

10.    Any party that seeks to object to the relief requested in the Motion pertaining to approval of any Sale shall file a formal objection that complies with this Order on or before August 11, 2009 at 5:00 p.m.

(ET).  Each objection shall state the legal and factual

basis of such objection and may be orally supplemented

at the Hearing.

11.  Any and all written objections as

contemplated by this Order must (a) be in writing,

(b) conform to the Federal Rules of Bankruptcy Procedure,

the Local Bankruptcy Rules for the Eastern District of

Virginia, and the Case Management Order, (c) be filed

with Bankruptcy Court and (d) served in accordance with

the Case Management Order so as to be **received** on or

before the appropriate deadline as set forth above or in

this Order.

12.  The Hearing, at which the Sellers shall

seek approval of Successful Bids shall be held in this

Court on August 27, 2009, at 11:00 a.m. (Eastern).  The

Hearing may be adjourned or rescheduled without further

notice by an announcement of the adjourned date at the

Hearing.

13.  Notice of the transactions contemplated

by the Motion shall be deemed adequate if (i) within

five (5) business days of entry of this Bidding

Procedures Order (or as soon as reasonably practicable

thereafter), the Sellers (or their agent) serve the Sale
Notice, in substantially the form attached hereto as
Exhibit 2, by electronic mail, if possible, or first-
class mail, postage prepaid, upon (A) all entities
reasonably known to have expressed an interest in a
transaction with respect to the Intellectual Property
Assets or similar assets during the past three (3)
months, (B) all entities reasonably known to have
asserted any Lien upon the Intellectual Property Assets,
(C) all federal, state, and local regulatory or taxing
authorities or recording offices, which have a
reasonably known interest in the relief requested by the
Motion, (D) the Attorney Generals for all fifty (50)
States, (E) the CPO; and (F) all parties entitled to
notice under the Order Pursuant to Bankruptcy Code
Sections 102 and 105, Bankruptcy Rules 2002 and 9007,
and Local Bankruptcy Rules 2002-1 and 9013-1
Establishing Certain Notice, Case Management, and
Administrative Procedures (D.I. 130; the "Case
Management Order") and (ii) the Sellers publish a form
substantially similar to Sale Notice in the Wall Street
Journal (International Edition), USA Today (National

9

Edition) and the <u>Richmond Times Dispatch</u> within five (5)

business days of entry of this Bidding Procedures Order

or as soon as practicable thereafter.

14.    To the extent the Bidding Procedures are

inconsistent with this Order, this Order shall control.

15.    The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

16.   This Court shall retain jurisdiction with

respect to all matters arising or related to the

implementation of this Order.

Dated:  Richmond, Virginia
        July 16, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

      - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

      - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Sellers and Sellers in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley

## EXHIBIT 1

**(Bidding Procedures)**

## EXHIBIT A

### BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures")[1] to be employed with respect to the selection of the highest or otherwise best bid(s) for all or any part of the Sellers' Intellectual Property Assets.

### QUALIFIED BIDS

The Sellers will consider bids for any or all of the Intellectual Property Assets, including, for example, customer lists and various trademarks, servicemarks and the associated domain names and URLs.

The Sellers are permitted to enter into "stalking horse" agreement(s) (each a "Stalking Horse Agreement") with a bidder (the "Stalking Horse Bidder") for the purpose of establishing a minimum acceptable bid at which to begin the Auction and (ii) provide a Stalking Horse Bidder with a fee (the "Termination Fee") up to, but not greater than 3.0%, of the cash purchase price set forth in the Stalking Horse Agreement. However, in no event shall any Termination Fee be payable if the Stalking Horse Agreement contains a "due diligence" or financing contingency, and the Debtors shall not be permitted to offer two Termination Fees with respect to any proposal covering the same assets.

Under the Bidding Procedures only "Qualified Bidders," i.e. persons or entities submitting "Qualified Bids", may participate in the Auction.  To be considered a "Qualified Bid," the person or entity submitting the bid must submit an offer in the form of a purchase agreement (redlined against the Stalking Horse Agreement, if applicable) by the Bid Deadline (as defined hereinafter) that specifically identifies (a) the asset(s) to be purchased, (b) the purchase price, (c) identify the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such bidder, (d) provide evidence, satisfactory to the Debtors in their reasonable discretion (after consultation with representatives of the Creditors' Committee), of the bidder's financial wherewithal, (e) provide that the bid shall not be conditioned on the outcome of unperformed due diligence

---

[1]    Unless otherwise defined herein, each capitalized term shall have the meaning assigned to it in the Motion or the Order.

1

by the bidder or any financing contingency, (f) provide a good
faith deposit equal to 10% of the cash component of the purchase
price; (g) provide that the bidder's offer is irrevocable until
the later of 2 business days after the assets subject to the
Sale have been disposed of pursuant to the Bidding Procedures,
and 30 days after the Hearing; (h) an acknowledgement that, in
the event the bidder is the Alternate Bidder (as defined below),
the bidder will proceed with the purchase of the Intellectual
Property Assets pursuant to the terms the Bid submitted at the
Auction (the "Alternate Bid"); and (i) a redline of the form of
order that the bidder would request the Sellers to seek Court
approval at the Hearing.  **Whether or not expressly set forth in
the Bid and notwithstanding anything to the contrary in such Bid,
any bid submitted pursuant to the Bidding Procedures Order and
these Bidding Procedures shall be deemed to be irrevocable until
the later of 2 business days after the assets subject to the
Sale have been disposed of pursuant to the Bidding Procedures,
and 30 days after the Hearing; and such bidder shall be deemed
to have acknowledged that, in the event the bidder is the
Alternate Bidder (as defined below), the bidder will proceed
with the purchase of the Intellectual Property Assets pursuant
to the terms the Bid submitted prior to and modified at the
Auction (the "Alternate Bid").**

## BID DEADLINE

        Any person or entity wanting to participate in the
Auctions must submit a Qualified Bid on or before **August 11,
2009 at 5:00 p.m. (Eastern)** (the "Bid Deadline") in writing, to:
(1) Circuit City Stores, Inc., P.O. Box 5695, Glen Allen,
Virginia 23058-5695, Attn: Jim Marcum
(jim_marcum@ccswinddown.com); (2) Counsel to the Debtors, Gregg
M. Galardi and Ian S. Fredericks, Skadden, Arps, Slate, Meagher
& Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, DE
19801 (gregg.galardi@skadden.com and ian.fredericks@skadden.com);
(3) Counsel to the Creditors' Committee, Jeff Pomerantz,
Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd.,
11th Floor, Los Angeles, California 90067-4100,
(jpomerantz@pszjlaw.com); and (4) Streambank, LLC, Gabe Fried
and Jack Hazan, 400 Hillside Ave., Suite 19, Needham Heights, MA
02494 (gfried@streambankllc.com and jhazan@streambankllc.com).
The Debtors shall announce the terms of the highest or otherwise
best Qualified Bid, after consultation with representatives of
the Creditors' Committee, on or before the commencement of the
Auctions.

## THE AUCTION

The Auctions will be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square, New York, New York, 10036 at 10:00 a.m. (Eastern) on August 18, 2009 or such later dates and times as the Debtors, in their sole discretion after consultation with the Creditors' Committee, may advise Qualified Bidders.  Any Qualified Bidder wishing to participate in the Auction must appear and submit its highest or otherwise best bid at the Auctions.  Bidding at the Auctions will continue until each Qualified Bidder has submitted its highest or otherwise best bid for the any or all of the Intellectual Property Assets.  At the conclusion of the bidding, the Sellers (after consultation the Creditors' Committee) shall announce the bid(s) the Sellers have determined to be the highest or otherwise best bid(s) (the "Successful Bidder(s)").

## AUCTION PROCEDURES

Prior to the commencement of the Auctions, the Sellers will advise all Qualified Bidders of what they believe to be the highest or otherwise best Qualified Bid received.  Only a Qualified Bidder who has submitted a Qualified Bid shall be eligible to participate at the Auctions.  During the Auctions, bidding shall begin initially with the highest or otherwise best proposal and subsequently continue in such minimum increments as the Sellers (after consultation with representatives of the Creditors' Committee) shall determine at the Auction (such bids submitted at the Auctions, the "Auction Bids").

Upon conclusion of the Auctions, the Sellers, in consultation with representatives of the Creditors' Committee, shall (i) review each Auction Bid on the basis of financial and contractual terms and the factors relevant to the Intellectual Property Assets and (ii) identify the highest or otherwise best offer for an asset (the "Successful Bid").  For the Auction, the Sellers may designate multiple Successful Bids for various assets.  If more than one Qualified Bidder submits a Bid on the same Intellectual Property Assets as the Successful Bidder, the Sellers, after consultation with the Creditors' Committee, will announce the bidder submitting the next highest or otherwise best proposal (the "Alternate Bidder") who, pursuant to the Bidding Procedures, would proceed with the purchase of the Intellectual Property pursuant to the terms the Alternate Bid submitted at the Auction, if the Successful Bidder fails to consummate the Sale because of: (i) the failure of a condition precedent beyond the control of either the Seller or the

Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder.

At or prior to the start of the Auctions, the Debtors, after consultation with the Creditors' Committee will announce other procedural rules at the Auctions, including (without limitation) initial minimum overbids and bid increments.

## RETURN OF GOOD FAITH DEPOSIT

As noted above, any Stalking Horse Bidder and all Bidders will be required to submit good faith deposits (the "Good Faith Deposits") with the Sellers on or before the Bid Deadline.  Such Good Faith Deposits shall be equal to 10% of the cash component of the purchase price.  Good Faith Deposits of any Stalking Horse Bidder and all Qualified Bidders shall be held in an segregated account until a proposal is no longer irrevocable as provided herein, at which time they will be returned to the Qualified Bidder; _provided_, _however_, that if any Stalking Horse Bidder or a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Stalking Horse Bidder or Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit deposited by such Stalking Horse Bidder or Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Sellers.

## RESERVATION OF RIGHTS

The Sellers reserve the right to (i) determine at their reasonable discretion (after consultation with representatives of the Creditors' Committee) which offer is the highest or otherwise best offer, (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any offer that the Sellers in their reasonable discretion (after consultation with representatives of the Creditors' Committee) deem to be (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Sellers and their estates, (iii) waive the requirements of any of the Bidding Procedures with respect to a potential or Qualified Bidder if the Sellers (after consultation with representatives of the Creditors' Committee) determine is in their business judgment and in the best interests of their creditors and estates; (iv) extend the Bid Deadline; (vi) change the date of any Auction (after consultation with representatives of the

Creditors' Committee); (vii) reopen the Auction at anytime prior
to entry of an order approving the Successful Bid; and (viii)
alter bid increments or other procedural rules during the
Auction as would be in the best interests of their estates.

          The selection of a any Successful Bidder shall be
within the reasonable business judgment of the Sellers (after
consultation with representatives of the Creditors' Committee)
and subject to the approval of the Bankruptcy Court, and
economic considerations shall not be the sole criteria upon
which the Sellers may base their decision.  In assessing whether
a proposal constitutes a higher or otherwise better offer, the
Sellers shall consider, among other things, the net economic
effect upon the Sellers' estates.  The presentation of a
particular proposal to the Bankruptcy Court for approval does
not constitute the Sellers' acceptance of the proposal.  The
Sellers will be deemed to have accepted a proposal only when the
proposal has been approved by the Bankruptcy Court at the
Hearing.  At or before the Hearing, the Debtors, after
consultation with representatives of the Creditors' Committee,
may impose such other terms and conditions on Qualified Bidders
as the Sellers may determine to be in the best interests of the
Sellers, their estates, their creditors, and other parties in
interest.

## EXHIBIT 2

**(Sale Notice)**

**EXHIBIT B**

**(Sale Approval Order)**

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :    Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :    Case No. 08-35653 (KRH)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER (I) APPROVING SALE OF MISCELLANEOUS INTELLECTUAL PROPERTY ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the Motion for Orders

Pursuant to Bankruptcy Code Sections 105 and 363 and

Bankruptcy Rule 2002 and 6004 (I)(A) approving Bidding

Procedures for the Sales of the Intellectual Property

Assets, (B) authorizing the Sellers to enter into Stalk-

ing Horse Agreements in connection therewith,

(C) approving the payment of Termination Fees in connec-

tion therewith, (D) approving the Notice Procedures and

(E) scheduling Auction and Hearing dates; (II) approving

the Sales of the Intellectual Property Assets free and

clear of all Interests; and (III) granting related re-

lief (the "Motion"); and the Court having entered the

Order (I) Approving Procedures In Connection With Sales

Of Miscellaneous Intellectual Property Assets,

(II) Authorizing Sellers To Enter Into Stalking Horse

Agreements In Connection Therewith, (III) Approving The

Payment Of Termination Fees In Connection Therewith,

(IV) Setting Auction And Hearing Dates And (V) Grating

Related Relief (the "Bidding Procedures Order"),[1] which

authorized the Debtors to conduct the Sales of the In-

tellectual Property Assets; and the Sellers having held

Auctions on August 18, 2009; and the Court having held a

hearing on the Motion on July 16, 2009 and August 27,

2009; and all parties in interest having been heard, or

having had the opportunity to be heard, regarding the

---

[1]   Capitalized terms not otherwise defined herein shall have the
      meanings ascribed to such terms in the Bidding Procedures Order.

2

Agreement (as defined below), by and among the Sellers

and the Purchaser (as defined below) and the transac-

tions contemplated thereby (the "Transactions"); and af-

ter due deliberation thereon, and good cause appearing

therefore it is hereby

> **FOUND AND DETERMINED THAT:**[2]

A.    The Court has jurisdiction to hear and

determine the Motion and to grant the relief requested

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and

1334(b).

B.    Venue of these cases and the Motion in

this district is proper under 28 U.S.C. §§ 1408 and

1409.  This is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief

requested in the Motion are Bankruptcy Code sections 105

and 363 and Bankruptcy Rules 2002 and 6004.

---

[2]    The findings and conclusions set forth herein constitute the
Court's findings of fact and conclusions of law pursuant to Bank-
ruptcy Rule 7052.  To the extent any of the following findings of
fact are determined to be conclusions of law, they are adopted,
and shall be construed and deemed, conclusions of law.  To the
extent any of the following conclusions of law are determined to
be findings of fact, they are adopted, and shall be construed and
deemed, as findings of fact.

D.   Notice of the Motion and entry of the
Sale Approval Order has been provided to (A)(i) all en-
tities known to have expressed an interest in a transac-
tion with respect to the Intellectual Property Assets or
similar assets during the past three (3) months,
(ii) all entities known to have asserted any Lien upon
the Intellectual Property Assets, (iii) all federal,
state, and local regulatory or taxing authorities or re-
cording offices, which have a reasonably known interest
in the relief requested by the Motion, (iv) the Attorney
Generals for all fifty (50) States; (v) the CPO, and
(vi) all parties entitled to notice under the Order Pur-
suant to Bankruptcy Code Sections 102 and 105, Bank-
ruptcy Rules 2002 and 9007, and Local Bankruptcy Rules
2002-1 and 9013-1 Establishing Certain Notice, Case Man-
agement, and Administrative Procedures (D.I. 130; the
"Case Management Order") and (B) other parties through
publication of the Sale Notice, all in accordance with
and as provided by the Bidding Procedures Order.

E.   Based upon the affidavits of service
filed with the Court: (a) notice of the Motion and the
Sale Hearing was adequate and sufficient under the cir-

4

cumstances of these chapter 11 cases and these proceed-
ings and complied with the various applicable require-
ments of the Bankruptcy Code and the Bankruptcy Rules;
and (b) a reasonable opportunity to object and be heard
with respect to the Motion and the relief requested
therein was afforded to all interested persons and enti-
ties.

F.   The Purchased Assets (as defined herein)
are property of the Sellers' estates and title thereto
is vested in the Sellers' estates.

G.   The Sellers and their professionals mar-
keted the Intellectual Property Assets and conducted the
sale process as set forth in and in accordance with the
Motion and the Bidding Procedures Order.  Based upon the
record of these proceedings, all creditors and other
parties in interest and all prospective purchasers have
been afforded a reasonable and fair opportunity to bid
for the Intellectual Property Assets.

H.   The Bidding Procedures approved by this
Court and by which the sale process was conducted were
substantively and procedurally fair to all parties.

5

I.    After the Auction held on August 18, 2009, the Debtors determined that the highest and best bid was that of [PURCHASER] (the "Purchaser"), a copy of which is attached hereto as Exhibit A, (the "Agree-ment").  The Agreement is to purchase certain of the In-tellectual Property Assets, as listed on Exhibit 1 to the Agreement (the "Purchased Assets").

J.    Subject to the entry of this Order, each Seller (i) has full power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets by the Sellers has been duly and validly authorized by all necessary com-pany action of each of the Sellers, (ii) has all of the power and authority necessary to consummate the Transac-tions, (iii) has taken all company action necessary to authorize and approve the Agreement and the consummation by the Sellers of the Transactions.  No consents or ap-provals, other than those expressly provided for in the Agreement or this Order, are required for the Sellers to close the Sale and consummate the Transactions.

K.    The Agreement and the Transactions were negotiated and have been and are undertaken by the Sell-

ers and the Purchaser at arms' length without collusion
or fraud, and in good faith within the meaning of Sec-
tions 363(m) of the Bankruptcy Code.  As a result of the
foregoing, the Sellers and the Purchaser are entitled to
the protections of Section 363(m) of the Bankruptcy
Code.

L.   The total consideration provided by the
Purchaser for the Purchased Assets is the highest and
best offer received by the Sellers, and the Purchase
Price constitutes (a) reasonably equivalent value under
the Bankruptcy Code and Uniform Fraudulent Transfer
Act, (b) fair consideration under the Uniform Fraudulent
Conveyance Act, and (c) reasonably equivalent value,
fair consideration and fair value under any other appli-
cable laws of the United States, any state, territory or
possession, or the District of Columbia.

M.   The Purchaser would not have entered into
the Agreement and would not consummate the Transactions,
thus adversely affecting the Sellers, their estates and
creditors, if the sale of the Purchased Assets to the
Purchaser was not free and clear of all Interests (as
defined herein), or if the Purchaser would, or in the

7

future could, be liable for any of such Interest.  A
sale of the Purchased Assets other than one free and
clear of all Interests would adversely impact the Sell-
ers' estates, and would yield substantially less value
for the Sellers' estates, with less certainty than the
Sale.  Therefore, the Sale contemplated by the Agreement
is in the best interests of the Sellers, their estates
and creditors, and all other parties in interest.

N.   The Sellers may sell the Purchased Assets
free and clear of all Interests, because, with respect
to each creditor asserting a Interest, one or more of
the standards set forth in Bankruptcy Code § 363(f)(1)-
(5) has been satisfied.  Those holders of Interest who
did not object or who withdrew their objections to the
Sale or the Motion are deemed to have consented to the
Motion and Sale pursuant to Bankruptcy Code § 363(f)(2).
Those holders of Interests who did object fall within
one or more of the other subsections of Bankruptcy Code
Section 363(f).

O.   Neither the Sellers nor Purchaser engaged
in any conduct that would cause or permit the Agreement
or the consummation of the Transactions to be avoided,

8

or costs or damages to be imposed, under Section 363(n)

of the Bankruptcy Code.

P.    The Purchaser is not holding itself out

to the public as a continuation of the Sellers and is

not an "insider" or "affiliate" of any of the Debtors.

Q.    Entry into the Agreement and consummation

of the Transactions constitute the exercise by the Sell-

ers of sound business judgment and such acts are in the

best interests of the Sellers, their estates and credi-

tors, and all parties in interest.  The Court finds that

the Sellers have articulated good and sufficient busi-

ness reasons justifying the Sale of the Purchased Assets

to Purchaser.  Such business reasons include, but are

not limited to, the following: (i) the Agreement consti-

tutes the highest and best offer for the Purchased As-

sets; (ii) the Agreement and the closing thereon (the

"Closing") will present the best opportunity to realize

the value of the Purchased Assets and avoid decline and

devaluation of the Purchased Assets; (iii) there is sub-

stantial risk of deterioration of the value of the Pur-

chased Assets if the Sale is not consummated promptly;

and (iv) the Agreement and the Closing thereon will pro-

vide a greater recovery for the Sellers' creditors than
would be provided by any other presently available al-
ternative.

R.    Time is of the essence in consummating
the Sale.  In order to maximize the value of the Sell-
ers' assets, it is essential that the sale of the Intel-
lectual Property and Internet Assets occur within the
time constraints set forth in the Agreement.  Accord-
ingly, there is cause to lift the stay contemplated by
Bankruptcy Rules 6004.

S.    The Sale contemplated by the Agreement is
in the best interests of the Sellers and their estates,
creditors, interest holders and all other parties in in-
terest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is
GRANTED to the extent set forth herein.

2.    Pursuant to Bankruptcy Code sections 105
and 363, the Agreement and the Sale of the Purchased As-
sets to Purchaser are hereby approved and authorized in
all respects.

10

3.   Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Sellers' right, title, and interest in the Purchased Assets shall be transferred to the Purchaser free and clear of all interests, including liens, claims, and encumbrances ("Interests"), with all such Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Purchased Assets immediately before such transfer, subject to any claims and defenses the Sellers may possess with respect thereto.

4.   Except as may be expressly provided in the Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Sellers in any way whatsoever relating to or arising from the Sellers' ownership or use of the Purchased Assets prior to the consummation of the Transaction contemplated by the Agreement, or any liabilities calculable by reference to the Sellers or the Purchased Assets, or relating to continu-

ing or other conditions existing on or prior to the
Closing..

5.    The Transactions were undertaken by the
Purchaser in good faith and the Purchaser is a good
faith purchaser of the Purchased Assets as that term is
used in Bankruptcy Code section 363(m).  The Purchaser
is entitled to all of the protections afforded by Sec-
tion 363(m) of the Bankruptcy Code.

6.    Pursuant to sections 105 and 363 of the
Bankruptcy Code, the Sellers and the Purchaser are each
hereby authorized to take any and all actions necessary
or appropriate to: (i) consummate the Sale of the Pur-
chased Assets to Purchaser and the Closing of the Sale
in accordance with the Motion, the Agreement and this
Order; and (ii) perform, consummate, implement and close
fully the Agreement together with all additional instru-
ments and documents that may be reasonably necessary or
desirable to implement the Agreement.

7.    This Order is and shall be binding upon
and govern the acts of all entities, including, all fil-
ing agents, filing officers, title agents, title compa-
nies, recorders of mortgages, recorders of deeds, regis-

trars of deeds, administrative agencies or units, gov-
ernmental departments or units, secretaries of state,
federal, state and local officials and all other persons
and entities who may be required by operation of law,
the duties of their office, or contract, to accept,
file, register or otherwise record or release any docu-
ments or instruments, or who may be required to report
or insure any title or state of title in or to the Pur-
chased Assets conveyed to Purchaser.  All such entities
described above in this paragraph are authorized and
specifically directed to strike all recorded Interests
against the Purchased Assets from their records, offi-
cial and otherwise.

8.    Each and every federal, state and govern-
mental agency or department, and any other person or en-
tity, is hereby directed to accept any and all documents
and instruments necessary and appropriate to consummate
the transactions contemplated by the Agreement.

9.    If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of
the Agreement due to no fault of and Seller is not in
default of its obligations under such Agreement, then

13

Seller's counsel shall file with the Court and serve

upon the Purchaser,  the Alternate Bidder and their

counsel, a notice of such default, which shall include a

copy of the Alternate Bidder's agreement upon which the

Seller will then close, in which case (i) Seller shall

be deemed authorized to close on the sale of the Prop-

erty and assignment of the Leases with the Alternate

Bidder on five (5) days' advance written notice to the

Alternate Bidder, and (ii) the Alternate Bidder shall be

afforded all of the protections originally afforded to

the Purchaser under this Sale Order and the findings

herein as to adequacy and fairness of consideration paid

and good faith shall be deemed to apply to the Alternate

Bidder, its Alternate Bid, and its purchase and sale

agreement with the Seller, without the necessity of fur-

ther order of this Court.

10.   This Order shall be effective immediately

upon entry, and any stay of orders provided for in Bank-

ruptcy Rule 6004(h) and any other provision of the Bank-

ruptcy Code or Bankruptcy Rules is expressly lifted.

11.   To the extent permitted by section 525 of

the Bankruptcy Code, no governmental unit may revoke or

suspend any right, license, trademark or other permis-

sion relating to the use of the Purchased Assets sold,

transferred or conveyed to Purchaser on account of the

filing or pendency of these Chapter 11 cases or the con-

summation of the Sale.

12.   This Court retains jurisdiction to hear

and determine all matters arising from or related to im-

plementation or interpretation of this Order or the

Agreement.

Dated:  Richmond, Virginia
        August 27, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

SEEN AND CONSENTED TO BY:

_____
Counsel for PURCHASER


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

     Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                               /s/ Douglas M. Foley
                               Douglas M. Foley

## EXHIBIT A

**(Agreement)**

**<u>EXHIBIT C</u>**

**(Sale Notice)**

```
Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square                901 E. Cary Street
PO Box 636                       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
In re:                        :  Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :  Case No. 08-35653 (KRH)
et al.,                       :
                              :  Jointly Administered
         Debtors.            :
                              :  Auction: _____, 2009 at 10:00
                              :  a.m. (ET)
                              :  Obj. Deadline: _____, 2009 at
                              :  5:00 p.m. (ET)
                              :  Sale Hearing: August 27, 2009 at
                              :  11:00 a.m. (ET)
- - - - - - - - - - - - - - x
```

**NOTICE OF ENTRY OF ORDER UNDER BANKRUPTCY CODE SECTIONS
105 AND 363 (I) APPROVING PROCEDURES IN CONNECTION WITH
SALE OF MISCELLANEOUS INTELLECTUAL PROPERTY ASSETS,
(II) AUTHORIZING SELLERS TO ENTER INTO STALKING HORSE
AGREEMENTS IN CONNECTION THEREWITH, (III) APPROVING THE
PAYMENT OF TERMINATION FEES IN CONNECTION THEREWITH,
(IV) APPROVING FORM AND MANNER OF SALE NOTICE AND
(V) SETTING AUCTION AND HEARING DATES**

1

PLEASE TAKE NOTICE that on July [_], 2009, the above-captioned debtors and debtors in possession (collectively, the "Sellers" or the "Debtors")[1] filed their Motion for Orders pursuant to Bankruptcy Code Sections 105 and 363 (I)(A) Approving Procedures In Connection With Sale of Miscellaneous Intellectual Property Assets, (B) Authorizing Sellers To Enter Into Stalking Horse Agreements In Connection Therewith, (C) Approving Payment Of Termination Fees In Connection Therewith, (D) Approving Form And Manner Of Sale Notice, And (E) Setting Auction And Sale Hearing Dates; (II) Approving Sales Of Miscellaneous Intellectual Property Assets Free And Clear Of All Interests; And (III) Granting Related Relief (Docket No. _____, the "Motion"). A copy of the Motion is available at www.kccllc.net/circuitcity.

PLEASE TAKE FURTHER NOTICE that, on July 16, 2009, the Court entered the Order Pursuant To Bankruptcy Code Sections 105 and 363 (I) Approving Procedures In Connection With Sale of Miscellaneous Intellectual Property Assets, (II) Authorizing Sellers To Enter Into Stalking Horse Agreements In Connection Therewith, (III) Approving Payment Of Termination Fees In Connection Therewith, (IV) Approving Form And Manner Of Sale Notice And (V) Setting Auction And Sale Hearing Dates

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796), Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031.  For all other Debtors, the address was 9950 Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

(Docket No. _____, the "Bidding Procedures Order")[2], at-
tached hereto as <u>Exhibit 1</u>.

PLEASE TAKE FURTHER NOTICE that, pursuant to
the Bidding Procedures Order and procedures approved
thereby (the "Bidding Procedures"), the Sellers will ac-
cept bids on the Intellectual Property Assets until **Au-
gust 11, 2009 at 5:00 p.m. (ET)** (the "Bid Deadline").
All bids must comply with the Bidding Procedures.  The
Bidding Procedures are attached to the Bidding Proce-
dures Order.

PLEASE TAKE FURTHER NOTICE that, pursuant to
the Bidding Procedures Order and the Bidding Procedures,
in the event that the Sellers receive more than one
Qualified Bid, an auction with respect to the Sale (the
"Auction") will be conducted at the offices of Skadden,
Arps, Slate, Meagher & Flom, LLP, Four Times Square, New
York, New York 10036, tentatively commencing at **10:00
a.m. (Eastern) on August 18, 2009** or such later time or
other place as the Sellers notify all Qualified Bidders
who have submitted Qualified Bids.

PLEASE TAKE FURTHER NOTICE that the Debtors
have made the Motion, the Bidding Procedures Order, the
Bidding Procedures and any related documents available
at <u>www.kccllc.net/circuitcity</u>.

---

[2]  Capitalized terms not otherwise defined herein shall have the
    meanings ascribed to such terms in the Motion or the Bidding Pro-
    cedures Order.

Dated: _____, 2009          SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia       FLOM, LLP
                                Gregg M. Galardi, Esq.
                                Ian S. Fredericks, Esq.
                                P.O. Box 636
                                Wilmington, Delaware 19899-0636
                                (302) 651-3000

                                        - and -

                                SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM, LLP
                                Chris L. Dickerson, Esq.
                                155 North Wacker Drive
                                Chicago, Illinois 60606
                                (312) 407-0700

                                        - and -

                                MCGUIREWOODS LLP

                                /s/ Douglas M. Foley
                                Dion W. Hayes (VSB No. 34304)
                                Douglas Foley (VSB No. 34364)
                                One James Center
                                901 E. Cary Street
                                Richmond, Virginia 23219
                                (804) 775-1000

                                Counsel for Debtors and Debtors
                                in Possession

**EXHIBIT 1**

**(Bidding Procedures Order)**