UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                      .        Case No.08-35653(KRH)
                            .
                            .
                            .
CIRCUIT CITY STORES,        .        701 East Broad Street
INC.,                       .        Richmond, VA 23219
                            .
                            .
          Debtor.           .        June 23, 2009
. . . . . . . . . . . . ..           2:29 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:             McGuireWoods, LLP
                            By:  DOUGLAS M. FOLEY, ESQ.
                                 DANIEL F. BLANKS, ESQ.
                            9000 World Trade Center
                            101 W. Main Street
                            Norfolk, VA 23510

                            Skadden, Arps, Slate, Meagher &
                              Flom, LLP
                            By:  GREGG M. GALARDI, ESQ.
                                 IAN S. FREDERICKS, ESQ.
                            Wilmington, DE 19899

For Mr. Mondragon and       Mason Law Firm
Punitive Class:             By:  GARY MASON, ESQ.
                            1225 19th Street Northwest
                            Washington, D.C. 20036


Proceedings recorded by electronic sound recording, transcript
produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES: (Contd')

For Creative Realty          LeClairRyan
Management:                  By:  CHRISTOPHER L. PERKINS, ESQ.
                             951 East Byrd Street
                             Richmond, VA 23219

For West Marine              DLA Piper LLP
Products, Inc.:              By:  SUSAN MAHER, ESQ.
                             6225 Sixth Avenue
                             Baltimore, MD  21209

For Dollar Tree Stores:      Williams Mullen
                             By:  WILLIAM H. SCHWARZSCHILD, III,
                                    ESQ.
                             1021 East Cary Street
                             Richmond, VA 23218

**TELEPHONIC APPEARANCE**:

For Dollar Tree Stores:      Hofheimer, Gartlir & Gross, LLP
                             By:  SCOTT KIPNIS, ESQ.
                             530 Fifth Avenue
                             New York, NY 10036

3

1          COURT CLERK:  This is the matter of Circuit City

2 Stores, Incorporated.

3          MR. FOLEY:  Good afternoon, Your Honor, Doug Foley

4 with McGuire Woods, along with Dan Blanks from McGuire Woods.

5 With me at counsel table is Gregg Galardi from Skadden Arps and

6 Ian Fredericks.  Also today in the courtroom is Jim Markum, CEO

7 of Circuit City, as well as Michelle Moser who is the CFO of

8 Circuit City.

9          Your Honor, although we have 57 items on the agenda

10 today, I'm pleased to report to the Court that since the last

11 hearing that we were before Your Honor we were able to resolve

12 30 of the landlord requests for administrative claims under

13 365(d)(3) and 503(b), and one of which has been withdrawn,

14 several others have been resolved as a result of lease

15 dispositions and assignments that Your Honor's already

16 approved.  But, just to go through those quickly, Your Honor,

17 these are Items Number 1 through 31 on the agenda.  They're

18 all, again, motions relating to requests for administrative

19 rent under 503(b) and 365(d)(3).

20          Item Number 1 is Goodmill, LLC.  Item Number 2 is

21 Goldberg Management for Red Rose Commons Associate.  Item

22 Number 3 is PREET Services for PR Christiana, LLC.  Number 4 is

23 PREET Services for PRGL Paxton, LP.  Item Number 5 is Goldberg

24 Management for Boulevard North Associates, LP.  Item Number 6

25 is Park Side Realty, LP.  Item Number 7 is Marple XYZ

**J&J COURT TRANSCRIBERS, INC.**

1  Associates.  Number 8 is Parker Central Plaza, LTD.  Item

2  Number 9 is CC Kingsport 98, LLC.  Item Number 10 is Cardinal

3  Capital Partners, 680 South Lemon Avenue Company.  Item Number

4  11 is Circuit Investor #2, LTD.  Item Number 12 is Brandywine

5  Grande CLP.  Item Number 13 is RLV Village Plaza, LP.  Item

6  Number 14 is Geenen DeKock Properties, LLC.  Item Number 15 is

7  Lea Company.  Item Number 16 is Crossways Financial Associates,

8  LLC.  Item Number 17 is St. Cloud Associates which is a matter

9  that's been withdrawn as a result of the assignments approved

10  about a week ago, Your Honor.

11         Item Number 18 is Washington Green TIC.  Item Number

12  19 is Schottenstein Property Group, Inc.  Item Number 20 is

13  Cardinal Court, LLC.  Item Number 21 is Congressional North

14  Associates.  Item Number 22 is Ronus Meyerland Plaza, LP,

15  Johnson City Crossings, LP.  Item Number 23 is Sir Barton, LLC.

16  Item Number 24 is ADD Holdings, LLC.  Item Number 25 is CC

17  Grand Junction Investors 1998, LLC.  Item Number 26 is THF

18  Chesterfield, Clarksburg, Harrisonburg, ONC and Clairsville.

19  Item Number 27 is Howland Commons Partnership.  Item Number 28

20  is Huntington Mall Company.  Item Number 29 is the Cafaro

21  Northwest Partnership, doing business as South Hill Mall.  Item

22  Number 30 is Kentucky Oaks Mall Company.  Item Number 31 is CC

23  Springs, LLC.

24         And, Your Honor, all those were requests for payment

25  of administrative rent.  And due to the incredible Herculean

5

1  efforts of the company, as well as many of the lawyers, quite

2  frankly at Skadden Arps, that are working with Ian Fredericks,

3  all of those matters have been resolved and can be removed from

4  the docket.

5          THE COURT:  All right.  Very good.

6          MR. FOLEY:  Your Honor, Item Number 32 is Motorola's

7  request for allowance and payment of a 503(b)(9) claim they've

8  requested, and we've agreed to adjourn their motion to the July

9  23rd hearing date at 11.

10          THE COURT:  That'll be adjourned.

11          MR. FOLEY:  Your Honor, Item Number 33 is General

12  Instrument's motion doing business as Home Networks Mobility

13  Business of Motorola.  Again, this is also a 503(b)(9) motion

14  for allowance and payment of administrative claims they have

15  requested, and we have agreed to adjourn their motion to the

16  July 23rd hearing date.

17          THE COURT:  All right.  That'll be adjourned.

18          MR. FOLEY:  Your Honor, Item Number 34 is the motions

19  to compel filed by Federal Warranty and Assurant.  We are again

20  in negotiations with them about a global resolution and, in

21  fact, are exchanging documentation.  As we speak, we hope to be

22  able to file something to get it on the docket for approval on

23  the July 6th hearing date.  So, we'd ask the Court to continue

24  that matter until July 6th.  I believe that hearing is at

25  eleven o'clock.  I'm not certain though.

1 THE COURT:  All right.  That'll be adjourned to the

2 6th.  You have in the agenda 2 p.m.

3 MR. FOLEY:  Okay.  It's 2 p.m. hearing.  That's

4 correct, Judge.

5 THE COURT:  I was asking.

6 MR. FOLEY:  No, if it's in the agenda.  I just don't

7 -- I didn't have that written down in my notes, Your Honor.

8 THE COURT:  All right.

9 MR. FOLEY:  That sounds right.  Item Number 35, Your

10 Honor, is the balance of the lease disposition procedures

11 motion in which we carried over several cure disputes.  There

12 were five left, Your Honor.  We resolved one as a result of the

13 lease disposition that Your Honor approved about a week ago, C

14 Properties which is Item Number B on the agenda.  That can be

15 resolved and removed from the Court's docket.  Items Number

16 35A, C, D, and E which are for Connecticut Avenue, LLC, Gateway

17 Center Properties, White Stone Development Partners, and Union

18 Square Retail Trust, all of those -- those parties have all

19 agreed to adjourn their issues until the July 23rd hearing date

20 at 11.

21 THE COURT:  All right.

22 MR. FOLEY:  Your Honor, Item Number 36 is the Direct

23 TV motion for setoff and recoupment.  We again are working them

24 on actual reclamation which we hope will result in monies

25 coming back to the estate.  Your Honor, we'll continue to work

7

1 through that and do the reconciliation they've requested.  And

2 we've agreed to adjourn their motion to the July 23rd hearing

3 date at 11.

4          THE COURT:  All right.

5          MR. FOLEY:  Your Honor, Item Number 37 is the motion

6 by Sony for allowance of an administrative claim under 503(b).

7 And, Your Honor, we have been in negotiations with Sony.  We

8 have exchanged offers back and forth, and we're waiting for a

9 response to our latest proposal.  They have agreed -- and they

10 have asked and we've agreed to adjourn their motion until the

11 July 23rd hearing date at 11.

12          THE COURT:  It will be adjourned.

13          MR. FOLEY:  Your Honor, Items Number 38 and 39, the

14 motion by Veridust for allowance of a late filed proof of

15 claim.  And Number 39 the motion by Mr. Chalifoux for

16 permission to file late proof of claim.  Both of those parties

17 have agreed and requested that their matters be adjourned until

18 they know whether or not they really need to have to deal with

19 this issue until the July 23rd hearing date.

20          THE COURT:  Very good.  They'll be both adjourned.

21          MR. FOLEY:  Your Honor, Item Number 40, this is

22 Sennheiser Electric Corp.'s motion for permission to file a

23 late 503(b)(9) claim.  Similarly, Your Honor, they have

24 requested that their motion be adjourned until the July 23rd

25 hearing date to see if it will become necessary at that point

8

1  to litigate the matter.

2          THE COURT:  It'll be adjourned.

3          MR. FOLEY:  Your Honor, Item Number 41 is South Park

4  Interactive.  This is a vendor motion for administrative claim.

5  They have requested, and we have agreed to adjourn their motion

6  to try to reconcile the numbers until the July 23rd hearing

7  date at 11.

8          THE COURT:  All right.  That'll be adjourned, as

9  well.

10          MR. FOLEY:  Your Honor, Item Number 42 and 43, these

11  are our second omnibus objection to late filed 503(b)(9)

12  claims, and our third omnibus objection to late 503(b)(9)

13  claims.  There were certain responses that were filed.  We're

14  continuing to work through those with the various responding

15  parties.  And we're asking that this status conference be

16  adjourned until the July 23rd hearing date, at which point

17  we'll evaluate which ones we've resolved with these responses

18  and which ones need to be ultimately set for some kind of

19  discovery schedule or trial.

20          THE COURT:  Okay.  They'll be adjourned.

21          MR. FOLEY:  Your Honor, Item Number 44, 45, 46 are

22  more recently filed landlord claims to compel payment of

23  administrative rent.  Bond Circuit #4 Delaware Business Trust,

24  which is Item Number 44, CC Hamburg, New York Partners, which

25  is Item Number 45, Myrtle Beach Farms Company, Inc. which is

9

1    Item Number 46, all of those movants have requested, and we've

2    agreed to try to work through their issues as well as we did

3    with the others until the July 23rd hearing date at 11.

4            THE COURT:  That'll be fine.

5            MR. FOLEY:  Your Honor, Items Number 47, this is a

6    motion by Info-Game Corporation for allowance and payment of

7    administrative claims.  This is a service provider.  We're

8    working through reconciling the numbers with them.  They have

9    requested, and we have agreed to adjourn their motion until the

10   July 23rd hearing date.

11           THE COURT:  It'll be adjourned.

12           MR. FOLEY:  Your Honor, Item Number 48, this is

13   additionally a revised implemented motion by Site ALC for

14   payment of administrative claim.  This is a landlord.  And

15   since they have recently amended their motion we've asked for

16   more time to try to reconcile their numbers.  So, they've

17   agreed to adjourn their matter to the July 23rd hearing date.

18           THE COURT:  It'll be adjourned.

19           MR. FOLEY:  Your Honor, Items Number 49, 50 and 51

20   will be addressed by Mr. Galardi.  Those are the Mondragon

21   matter, the Polaris matter and the Advance matter.

22           THE COURT:  All right.  Very good.

23           MR. GALARDI:  Good afternoon, Your Honor.

24           THE COURT:  Good afternoon.

25           MR. GALARDI:  For the record, Gregg Galardi on behalf

1 of Circuit City.  Your Honor, the first matter that I'm

2 handling is Number 49, Your Honor, which is the defendant's

3 motion to dismiss.  I think it's styled as an amended

4 complaint, or in the alternative for a more definite statement.

5 Your Honor, I guess I'll be very brief given that I think our

6 papers set forth our argument and can respond.

7        Your Honor, just very simply I think the facts are

8 uncontested with respect to the complaint that on or about

9 November 2nd or November 5th, depending upon which part of the

10 complaint you read, Circuit City, as Your Honor is too familiar

11 and knows, and was subsequently approved store closings, we

12 announced that we would be closing 150 stores.  One of the

13 stores was the Nyack, New York store and the plaintiff appears

14 to have worked at that Nyack, New York store.

15        Plaintiff concedes that they, in fact, got notice

16 that there would be a mass layoff and I think at Paragraph 37

17 of the complaint specifically alleges that Circuit City

18 actually ordered a mass layoff or plant closing.  Assuming as

19 Your Honor must on the purpose on a motion to dismiss that that

20 claim is true our position is really rather straightforward,

21 bankruptcy application and current case law.  Your Honor, our

22 view is that this complaint really asserts a pre-petition

23 contingent claim.  We get that from a number of sources.

24        First of all, Your Honor may be familiar, I mean, the

25 WARN Act claims are now the lawsuit de jure in many of the

11

1  bankruptcy cases.  There are two decisions which we rely on.

2  One is Powermate and one is First Magnus.  Now, clearly

3  factually distinguishable which makes this a little bit of a

4  gray area.  In Powermate and First Magnus, Your Honor, they

5  both did not give notice and in fact simply terminated, no

6  further employment as of that date.

7        What Circuit City did is slightly different, because

8  we did that with some of -- as Your Honor is familiar with, we

9  did that with some of our corporate employees, there was no

10  further work to be done.  With respect to our store employees,

11  however, we gave the notice, we told them that they would be

12  terminated on or before December 31st.  Nonetheless, because of

13  the way the store closings they continued to work and continued

14  to get wages.  Our position, Your Honor, is therefore unlike

15  the case of Powermate or First Magnus, they didn't have an

16  actual claim that accrued as of that date, they had a

17  contingent claim, they could have come in and sought an

18  injunction to say keep me working for 60 days, they didn't do

19  so.  But, our view is that it was a contingent claim and what

20  it was contingent on?

21        If they had actually worked for 60 days there would

22  be no WARN claim, is our view.  Had they not worked for 60 days

23  there is a WARN claim, but it's only for the amount less than

24  60 days, because WARN, as we set forth in our brief, is a

25  notice statute.  It is a severance in lieu of notice.  So, we

12

1  gave the notice.  We gave them a WARN notice and it turns out

2  that they didn't, as a matter of fact, work for 60 days.  Our

3  view under the Fourth Circuit precedent is that with Robbins

4  and you take the Powermate that it was a pre-petition event but

5  we didn't terminate, and you take Robbins and you say it's a

6  contingent claim because it was contingent on whether or not

7  they subsequently worked 60 days.  It is a pre-petition

8  contingent claim, and therefore, Your Honor, we think that it

9  should be treated as a pre-petition contingent claim.

10        The second part of our argument, Your Honor, is if

11  Your Honor agrees that it is a pre-petition claim they have

12  filed a proof of claim.  This particular plaintiff did.  We

13  don't know whether other class members filed a proof of claim.

14  But, nonetheless, we think it should therefore be subject to a

15  claims process.

16        We rest on another case that I was involved with,

17  Plastech, and there are other cases whereby if it is a pre-

18  petition claim and the claims process will resolve this in

19  time, then it is appropriate to delegate this to the claims

20  process as opposed to an adversary proceeding.

21        I would simply note in this case unlike some of the

22  cases they've cited, and I acknowledge that some cases have

23  said go ahead with an adversary proceeding, but I think there

24  is an important distinction here.  First, there is a January

25  30th bar date.  So, anyone who wanted to join the class must

13

1  have filed a proof of claim, there is no extension.  So, if you

2  do it in adversary, and you a class certification, we don't

3  even know yet whether there are class members because they

4  would have had to have filed a proof of claim under our theory.

5          Second, Your Honor, and I think this is always a

6  troublesome fact with respect to class proofs of claim or

7  certifying a class is, we are not sure whether these particular

8  persons want to be subject to the jurisdiction and this Circuit

9  or at least this District has invoked a procedure whereby prior

10 to the running of the bar date you should seek certification

11 for a class proof of claim.  We think you can't do the end run

12 around here.  So, Your Honor, we would say that this matter can

13 be resolved in the claims process.  Your Honor, throughout --

14 so far what we have assumed is that that they could even assert

15 a claim under the WARN Act.

16         The final part of our argument is that they have

17 failed to assert a claim, or at least have to file another

18 complaint.  And really this comes down in my mind to really one

19 single fact that they have been unable to allege with any.  And

20 it's not specificity.  I don't use that word, but they haven't

21 alleged facts that can build a claim.  Under the WARN Act you

22 have to say that there was a plant closing or a mass layoff at

23 a single site.  There is no allegation that anything is a

24 single site within that complaint.  They do use the phrase,

25 "stores and related facilities," but as Your Honor knows and

14

1   can take judicial notice of, that was 150 sites that are

2   geographically disbursed.  And the facts show that those are

3   geographically disbursed, numerous locations, different states.

4   So, we think that either they would -- and with respect to the

5   number of employees the only numbers they give is with respect

6   to all 150.  So, they would have to allege, and we don't think

7   they can allege any facts to say that all 50 sites throughout

8   28 states being miles and miles apart can satisfy that

9   standard.  But, if they wanted to allege that, they should

10  expressly allege that, but we don't think they can.

11          The other thing they do in the response, they say

12  that the Nyack store can be a single site.  Let's assume that

13  that's true, it's one location.  There are no numbers which

14  they would have to allege as to the number of employees to

15  satisfy and to state a claim, the requirements of the WARN Act.

16  So therefore, at the very least it should be dismissed on that

17  ground or a more definite statement.

18          And, finally, Your Honor, although it's not clear,

19  they may have a third alternative method for saying, well, it's

20  bigger than the Nyack store, but smaller than the stores and

21  the related facilities.  Again, we can't even determine how to

22  respond to that claim.  So either, Your Honor, we believe this

23  complaint should be dismissed for failing to state a claim even

24  if Your Honor wasn't going to go to the legal argument it's a

25  pre-petition claim and not an adversary proceeding.  We don't

1 think it states a claim under the WARN Act.  And at the very

2 least it should be dismissed, or they should be required to

3 file a more definite statement.

4         I don't know if Your Honor has questions about our

5 brief or our case law, but that's my opening remarks with

6 respect to this matter.

7         THE COURT:  Thank you, Mr. Galardi.  And I've read

8 your materials.

9         MR. GALARDI:  Thank you.

10         MR. MASON:  Good morning, Your Honor.

11         THE COURT:  Good morning.

12         MR. MASON:  My name is Gary Mason with the Mason Law

13 Firm in Washington, D.C.  I'm here for Mr. Mondragon and the

14 Puntative Class.  This is a WARN Act class action case that we

15 filed as adversary proceeding.  Quite frankly, I don't think

16 that the notion of the -- of a pre-petition claim versus a

17 post-petition claim is a distinction without an analytical

18 difference in this case.  There isn't a single WARN Act case

19 that's been cited in any of this extensive briefing that talks

20 about the distinction or says that -- or uses that method of

21 analysis to determine whether a WARN Act case is risen on an

22 adversary proceeding.  This notion of a pre-petition contingent

23 claim is strung together from a couple of cases in the Fourth

24 Circuit, most notably the AH Robbins case, that are simply not

25 WARN Act cases.

16

1          The cases that have looked at -- specifically at WARN

2  Act cases have almost universally determined that these are

3  adversary proceedings.  And why?  Because 7017 by definition

4  says equitable actions are adversary proceedings, and we cited

5  those cases in our briefs.  But, generally, that is the core

6  reason why WARN Act cases have been treated as adversary

7  proceedings.  There's additional reasons that the cases

8  discuss, because analytically what the cases look at is that is

9  this a -- should this be treated as an adversary proceeding or

10 as a claim?  It has nothing to do with the timing of the claim

11 and when the claim accrues.  We have a disagreement as to when

12 the claim accrues.

13         We believe that our clients claim and the claims of

14 the class accrued post-petition because they accrued at the

15 time of termination.  But, that issue only goes to priority.

16 If you look carefully at the Pyramid case and the Mangus case

17 the issue in those cases really isn't whether it's an adversary

18 proceeding or not, the issue is they're talking about the

19 dismissal of a claim for administrative priority.  And the

20 Courts come down by saying that to the extent the termination

21 was before the petition you don't get the administrative

22 priority because you aren't in bankruptcy yet.  And if it

23 happens afterwards that section of your claim, that portion of

24 your claim would get administrative priority.

25         That's not even the issue that's before the Court

1  today.  That may very well be an issue in this case, because

2  we've alleged that Mondragon continued to work, and I think

3  there's not even a dispute about this, that the Circuit City

4  employees continued to work at the stores post-petition.  But,

5  that's not determinative of whether this is an adversary

6  proceeding.  We've cited, for example, <u>First NLC</u>, a 2008

7  bankruptcy, Lexus 2166, completely a pre-petition case.  The

8  counsel's even acknowledged that that's an example of a case

9  where the Court found that it was an adversary proceeding even

10  though it's a pre-petition claim.  Perhaps it's a pre-petition

11  contingent claim, to use that lexicon.  But, that's the

12  analysis.  The analysis was, is it appropriate to handle this

13  as an adversary proceeding?  And the cases universally say yes,

14  and there's a variety of reasons.  They come out at different

15  ways.

16        One is as I mentioned 7017.  The other reason is

17  because as I'm sure the Court knows that the class action

18  device Rule 23 isn't automatic for a claim.  And when we have

19  come forward affirmatively and said we want application here of

20  Rule 23, that's the nature of -- it's a class action complaint,

21  Courts have said, well, that's the most efficient way to go.

22  The complaint itself is asking for Rule 23.  It's automatic if

23  it's an adversary proceeding, and it only slows things down to

24  go back to the procedures, which exist in the Fourth Circuit,

25  to ask the Court under 7023 for permission for the Court to use

18

1  its discretion to apply Rule 23 and to go through those

2  mechanics.  You can end up in the same place, analytically.  I

3  mean, the Court's going to ultimately have to decide whether

4  this is a class or not either way.

5         But, the streamlined way to do it, according to all

6  the cases, in the context of a WARN Act action is to treat it

7  as an adversary proceeding and move forward to class

8  certification where the Court will determine whether or not it

9  should be certified as a class or not.  If it's not a class,

10 then the motion to dismiss is going to end up getting granted.

11 That's -- we're certainly not here arguing today saying that

12 this is going necessarily -- the Court should grant

13 certification in this case.  That would be premature, and the

14 evidence needs to be developed.  But, you can see from the

15 cases that just because a decision to make it an adversary

16 proceeding isn't determinative of class certification.  There

17 are numerous cases, including of the main case that Circuit

18 City relies on, the <u>Manqus</u> case, where class certification was

19 ultimately denied and a motion to dismiss the adversary

20 proceeding was ultimately granted in large part because there

21 was no need for it.  Once there was no class the Court said,

22 well, we don't need to have these procedures anymore, we don't

23 have to bring in the federal rules, we don't have to keep a

24 separate docket, and we can proceed on a conventional claims

25 basis is what's happened in those cases.

19

1          Other cases like the <u>First NLC</u> case that we rely on,

2    the courts almost at the time, kind of just went the other way.

3    At the time that they were considering whether or not it should

4    be an adversary proceeding, went ahead and certified a class.

5    I don't think the facts in this case are developed enough to

6    support that approach either.  And what we're saying to the

7    Court is that it doesn't matter whether it's a post-petition

8    claim or a pre-petition claim, it's appropriate and it should

9    be an adversary proceeding.

10          The defendants rely or I should say Circuit City

11   relies heavily on the <u>Computer Learning</u> case which sets forth

12   procedures in the Fourth Circuit to ask the Court's permission

13   to exercise its discretion for application of Rule 23 on a

14   claim.  And we have filed a claim in this case, not a class

15   claim, but a claim, but they know that we're proceeding as a

16   claim because a month later we filed this adversary proceeding.

17   And it was our election to go this route because the cases show

18   that it's -- says that it's appropriate for a WARN Act claim to

19   go ahead as an adversary proceeding.  We could have gone the

20   other route.  Again, I think we end up in the same place on

21   certification, and the Court ultimately is going to have to

22   consider the same issues about whether this -- whether it's a

23   class claim or an adversary proceeding we will get to that

24   point where the Court has to determine whether this should be

25   certified and proceed as a class.

20

1          But, the most efficient -- the cases say that the

2    most efficient way to get there and the appropriate way to get

3    there is through the mechanism of the adversary proceeding

4    which keeps a separate docket, separates us out from the 3600

5    docket entries that are already here, and is a more efficient

6    and appropriate way to proceed.  That's what all the cases say.

7          Since the case was raised in this case, Your Honor,

8    it was raised again this morning I want to just briefly comment

9    about this notion of the WARN Act being purely a notice

10   statute.  We disagree with that.  We've cited cases, you know,

11   including -- well, this is a case I don't think we cite,

12   Bledsoe v. Emery, Your Honor, 258 F.Supp 2d. 780 which is the

13   Southern District of Ohio, Western Division, which more fully

14   cites the WARN Act than the Messan case, which Circuit City has

15   been relying on.  And that case says that the wrong in this

16   case is not just the act of laying off the plaintiffs, it is a

17   failure to give them adequate notice of its plan to do so or

18   adequate remuneration.  An employer is given an adequate notice

19   of discharge and may compensate its employees as they walk out

20   the door upon their being laid off.

21          The claim doesn't accrue, Your Honor, until

22   termination.  And all the cases that they've cited were

23   pre-termination cases.  The termination actually happened

24   pre-petition.  But, at least one of their cases, however, was

25   post-petition, the Powermate case, where at 394 Bankruptcy at

21

1  Page 10, in that case the Court says that the WARN Act claims

2  rest entirely upon termination.  Well, in this case the

3  termination was actually post-petition.  So, to the extent that

4  that even matters, and it's our position that the pre-petition,

5  post-petition distinction doesn't matter for the analysis.

6  But, to the extent that it does matter our view, consistent

7  with the case law, is that the WARN Act claim is not a

8  contingent claim, it accrues upon termination.

9       How it gets treated by the bankruptcy court as a

10  priority is a different issue.  And I think the cases are

11  pretty much unanimous.  I'm thinking something we'd dispute.

12  That the pre-petition part of it is an unsecured claim, the

13  post-petition part of it, as they continue to work at the

14  stores, would be an administrative priority claim.  Lastly,

15  Your Honor --

16       THE COURT:  Just jumping to the logical conclusion of

17  that, I mean, you know, we're going to have many different

18  people that have different than post-petition and pre-petition

19  claims and such, why isn't that better addressed through the

20  claims resolution process as opposed to some class process,

21  because everybody is not going to be similarly situated, are

22  they?

23       MR. MASON:  Because now we're getting to the

24  underpinnings of the adversary proceeding.

25       THE COURT:  I realize that.

1          MR. MASON:  And the reason is because, as Circuit

2    City knows, those people didn't file claims and there's a bar

3    date.  What these cases say is, just like any class action,

4    even outside of a bankruptcy court, it's the same analysis.

5    The advantage of the class action is it allows persons, the

6    claimants, who are entitled to the WARN Act compensation, small

7    claims who aren't going to come to Richmond to file these

8    claims.  And we heard a jurisdictional argument earlier, that's

9    a reason for the adversary proceeding class certification not

10   against it.

11          Because people who are entitled to these payments,

12   and the Congress has said they're entitled to these payments

13   particularly in the difficult times that we're facing now,

14   they're not going to get them because they didn't notify all

15   these claims.  They didn't get notice to the bankruptcy court

16   and now the bar date has gone.  The only mechanism they have is

17   the class action device which is what as a class action lawyer

18   I argue this emphatically because I'd be making this argument

19   if I wasn't in bankruptcy court and I was in front of a

20   district judge outside the circuit if we hadn't been -- if we

21   weren't in bankruptcy, or we were emerging from bankruptcy.

22   The same type of logic that you get in any kind of consumer

23   class action case applies here.

24          And this -- and there is some exceptions.  There are

25   some courts -- and I'd like to get to that point at some

23

1  subsequent proceeding -- there are some courts that have said

2  that the class should be limited to the hundreds of people,

3  perhaps, who have filed claims.  And, indeed, in the <u>Powermate</u>

4  case -- no, I think it was -- well, not <u>Powermate</u>, but the

5  <u>Mangus</u> case was ultimately not certified because there wasn't

6  -- I think there was at least one case where there wasn't

7  enough claimants.  And the Court said, you know, we're not --

8  there's no point in certifying it, it's easier to deal with

9  that as -- on a claims basis.

10       THE COURT:  That was basically what my question was

11 geared to.

12       MR. MASON:  Right.  But I think that the better

13 reasoning of this cases, and the majority of the cases have not

14 limited the class to the claims -- the WARN Act claims that

15 have been filed.  And that's the essence of a class action is

16 to reach out beyond just the people that are in front of a

17 Court and have filed claims.  I mean, a class action, in

18 essence, is an unrepresented -- is a litigation that covers

19 unrepresented individuals and who have not come forward.  And

20 those are, to my reading of it, not only the greater weight of

21 the cases, the better reasoned cases have looked at it in the

22 bankruptcy context and the WARN Act context as allowing class

23 actions to extend beyond to all eligible claimants, not just

24 those that have filed claims.

25       THE COURT:  So, this would be an exception to the

24

1  claim allowance procedure under Section 502?

2          MR. MASON:  I think that's correct.  And, lastly,

3  Your Honor, is the sufficiency of the allegations.  There is

4  Paragraph 40 in our complaint.  It is broad.  It talks about

5  stores and related facilities.  It's a broad, arguably

6  ambiguous paragraph.  We think that it can be reasonably

7  inferred from that, that the West Nyack store which is where --

8  the only store that our client works at, that's clear in the

9  complaint, the allegation as it applies to his store is that

10 his store has 50 or more employees that were part of this mass

11 layoff which is the requirement for the WARN Act.  And if we

12 have to re-plead, we're going to say exactly that.

13         Then the next step, of course, is going to be

14 discovery.  Now, what we haven't seen is Circuit City file with

15 respect to that store any documentation or try to convert this

16 to a summary judgment motion and say that there aren't 50

17 people at that store.  What we understand from our client who

18 worked there is that there are 50 eligible employees for

19 purposes of the WARN Act.  And the WARN Act has certain

20 definitions of what, you know, include some part-time

21 employees, doesn't include others.  But, we think there are 50

22 at this location.

23         Discovery is necessary not only, you know, to prove

24 or disprove that point, but for class purposes.  If there's not

25 50, not only do we not have a claim, you know, as the numbers

1  get lower we're not going to have a class, either.  So, Your

2  Honor, we don't see why it would be necessary to go through the

3  mechanics of re-pleading this complaint.  We would like to go

4  forward.  We think a reasonable inference can be drawn from

5  Paragraph 40 if there's 50 in the West Nyack store.  And we

6  should proceed ahead towards class certification and keep

7  moving forward with this action in the context of an adversary

8  proceeding.  Thank you, Your Honor.

9          THE COURT:  Thank you.

10         MR. GALARDI:  If I may take a minute, sir, to reply,

11  Your Honor?

12         THE COURT:  Yes.

13         MR. GALARDI:  First, Your Honor, it does make all the

14  difference.  And I guess counsel uses the words from <u>Powermate</u>

15  that the claim did not accrue, I guess, until termination.  The

16  important point about and the distinguishing fact in that was

17  that was a no notice, you're terminated pre-petition.  What

18  bankruptcy says is you have to look at when your claim arises,

19  as a legal matter.  The issue then in our mind is under the

20  WARN Act your claim for notice arises on the date that you're

21  ordered to have a mass layoff which is 60 days advance notice.

22  Our view is then under <u>Grady</u> and <u>Robbins</u> you had a contingent

23  claim as of that date.  So, it makes all the difference here.

24  And really what we did is, we paid.  We paid these people their

25  wages and salaries for whether 20, or 30 or 40 more days

26

because when it was post-petition we paid their wages.  So,

Your Honor, we think that the claim is the 60 days and it arose

as a contingent claim pre-petition so it's unequivocally a pre-

petition claim.

Your Honor, that's critical to the adversary

proceeding issue because, one, the adversary proceeding they

filed a proof of claim.  I don't know who did and who didn't,

Your Honor, but you can't after the bar date use a class action

-- this is why I think this Court has had the procedure, that

you asked for class certification before the bar date because

essentially it is an end around this Court's order and the

bankruptcy court statutory deadlines for filing proofs of

claim.  What I've heard, which is most troubling, what I've

heard here today is that even if somebody didn't file a proof

of claim somehow they're now going to be bootstrapped into a

class action when (1) --

THE COURT:  I heard that, too.

MR. GALARDI:  -- when, (1) there's no class proof of

claim on file prejudicing ours and the creditors' rights, (2)

essentially it's a motion to file a claim out of time with no

basis, no excusable neglect, no reason, but only because it's

easier to do a class action.  That's not what class proofs of

claims or class certifications in bankruptcy are supposed to

preserve.  Had they made the motion earlier, then Your Honor

could say, I could certify the class and that will be deemed a

27

1  filing of a proof of claim and people will get the right to opt

2  out and not have to submit to jurisdiction, not submit to

3  jurisdiction.  To do so after the effect, is essentially to

4  challenge Your Honor's order and the bar date procedure that is

5  so critical to this case.

6        So, Your Honor, we think you can't use an adversary

7  proceeding to go around the bar date, and since it's a

8  pre-petition claim we really only have to deal with people who

9  have filed proofs of claim.  If they didn't assert a class

10 proof of claim that doesn't mean they get a different treatment

11 or not.  It means that they either decided they didn't want to

12 pursue the claim or not.  If they have a problem with the

13 notice, we believe we've served every employee, he made an

14 allegation that we didn't, we think we did so we'll stand on

15 that.

16       Your Honor, and with respect to the timing and the

17 rush, this is a liquidating case so the argument that sometimes

18 an adversary proceeding may make a difference is not really

19 applicable here because there's no rush to get to the

20 resolution although we're moving forward with the committee on

21 claims and claims resolution.  Your Honor has now gotten

22 probably 20 so objections.  We're moving forward on all of

23 those.  These claims can be resolved within that period of

24 time.

25       THE COURT:  So, you don't think the adversary

1  proceeding would be, as I heard, a more efficient way to

2  proceed to resolve these claims?

3        MR. GALARDI:  In fact, Your Honor, we think it's

4  going to probably be less efficient because, one, again, though

5  he says Paragraph 40 is clear and can be inferred, we don't

6  think so, and we will have to certify a class, go through every

7  claim or proof of claim, unless Your Honor is going to extend

8  the bar date for a class action to certify a class even though

9  people had a bar date, and then we'll have a duplicative

10  process with those people that file claims and not and figure

11  out who in the universe, in the Nyack store, for example, or

12  whether these other people are at stores and related

13  facilities.  So, I think it doesn't expedite this process one

14  bit.  We can deal with the claims.  We can deal with them on a

15  pre-petition claim process and their distributions are going to

16  be under a plan.  So, it's not going to get people paid any

17  sooner than a reorganization plan will get them paid in any

18  event.  And litigation with discovery can often take a lot

19  longer than claims adjudication can, and we can go through

20  that.  So, we don't think that.

21        THE COURT:  I realize you said, and I certainly am

22  not suggesting anything to the contrary, that you gave proper

23  notice to all the employees and such.  But, assuming that there

24  was a defect in the notice somewhere along the line, would it

25  be possible to certify a class, after the fact, of claimants

1  who claim that they didn't receive proper notice and therefore

2  should be able to go forward?

3        MR. GALARDI:  Your Honor, I don't see why -- let us

4  assume that we failed to give everybody in the Nyack store

5  notice, which we didn't.  And let's assume that this gentleman

6  could show that and then say they didn't get notice and now we

7  want to certify a class proof of claim for the Nyack stores.  I

8  think Your Honor has the judicial discretion to do that because

9  if you didn't get notice your claim hasn't been waived, so you

10 can certify it and he could file a proof of claim if that were

11 what the facts are.  That can all happen in a claims process.

12 And even though this district has the standard to ask for a bar

13 date if the bar date's not effective with respect to a class of

14 persons then I assume that Your Honor could then certify a

15 class before the bar date is set for those persons and let them

16 go out and see if they want to have or participate in this sort

17 of class action.  We don't think those are the facts.  But, I

18 don't see anything in your judicial repertoire of tools that

19 could preclude you from doing that.

20        What I do have a problem is, if they do have a notice

21 to bootstrap through a class action people who decided not to

22 file proofs of claim who had notice either made a conscious

23 decision or didn't, but are now barred.  That let's the process

24 go on for quite some time.  And I'm assuming that if you took

25 the parade of horribles, well, that means that a year from now

1  if the statute of limitations hadn't run somebody could do it

2  again, not with the Nyack store, but with another store.

3  That's not the process.  The whole purpose of the bar date is

4  to block and give proper notice, and we have to rest on the

5  notice.

6          Finally, Your Honor, I'll just read Paragraph 40,

7  because I know I can't make the general inference.  "The mass

8  layoff at these stores and related facilities resulted in

9  employment losses as that term is defined in 29 U.S.C. Section

10  2101(a)(3) for at least 50 of the defendants' employees, as

11  well as 33 of defendants' workforce at the stores and related

12  facilities excluding part-time employees as that term defined

13  by 29 U.S.C. 2101(a)(8)."

14          Your Honor, that to me is a statement about all of

15  the stores, and all of the facilities.  I don't believe the

16  gentleman can actually sign a complaint that says that there

17  were 50 and 33 at the Nyack store.  Either that stores and

18  related facilities had to be pled as a single site or this

19  entire complaint upon which it rests on a press release where

20  we said these numbers with respect to 150 stores he will need

21  to do an adequate investigation to plead facts with respect to

22  the Nyack store which he mistakenly called New Jersey in his

23  response, it's New York, and make those allegations.  We don't

24  think he can sign a complaint to that effect.  But,

25  nonetheless, Your Honor, at the very least it should be

31

1  dismissed for a more definite statement.  But, as I said, we do

2  rest on the fact that we think a contingent cause of action

3  arose on the date we gave notice which was pre-petition, that

4  in fact if it's a pre-petition claim the bar date sets who

5  could possibly get a recovery.  The bar date and claims process

6  is more than adequate and probably can go expeditiously even if

7  -- especially if some people didn't file proofs of claim, then

8  the certification bootstraps.

9          So, Your Honor, we would argue that this case is

10  distinguishable from many of them, but it's because, (1) this

11  is sought after the bar date, (2) it's a contingent

12  pre-petition claim because the notice was given, certain events

13  transpired which actually allowed the debtors -- I do want to

14  point this out.  The irony here is the corporate people were

15  laid off, Your Honor.  We had to come to Your Honor and ask to

16  pay them because of business reasons not because it was a

17  503(b).  Those people are only going to get a pre-petition

18  claim.  The irony here is if this were to prevail, not only

19  would these people have gotten 20, 30, 40 days of

20  administrative wages, I think the gentleman is saying and then

21  the date starts from the last date of termination.  So, they

22  get another 60 days which is an administrative claim.  That's

23  how I understand his argument to play.  It's not that --

24          THE COURT:  He doesn't get 60 days from the notice.

25          MR. GALARDI:  Well, Your Honor, that's our

1  interpretation.  But, his view has been, and you can clarify

2  it, but his view is the claim did not accrue until the

3  termination, reading strictly that word in <u>Powermate</u> which I

4  distinguish.  If that were the case, then if somebody was

5  terminated on December 20th, 60 days from then, December 31st,

6  60 days from then.  Otherwise what we'd really be arguing, and

7  if Your Honor takes the view, which is what our view is, is if

8  you look at the notice on November 5th, January 5th, if you

9  worked anytime which is what the debtors think, you mitigated

10  your claim, and so all you've got left is a pre-petition

11  potentially priority claim for the balance, maybe not, because

12  we probably paid you your 10,600, but that's what our view was.

13  But, it's still a pre-petition claim.  I'm not sure that he's

14  arguing 60 days doesn't go from the date of termination which

15  if you read <u>Powermate</u> literally to say it's essentially a two

16  trigger you get the notice and the termination -- in that case

17  they were both the same date -- but if you got the notice, got

18  the termination 40 days later you add 60 days because the claim

19  didn't accrue -- that's the word he used -- until termination.

20  We don't think that can possibly be right.  It's the notice

21  that gives rise to the claim.  And the only thing about that 60

22  day period is, it's contingent when you get your last day of

23  termination.  If it's 59, well, you got a day, but it's pre-

24  petition.  If it's 40, it's 20 days.  And the only contingency,

25  if you go 61, there's no claim whatsoever.  These people, we

33

1  think, probably didn't go the full 60.  But, we still say it's

2  a pre-petition claim because the cause of action arises under

3  the notice.  Thank you.

4           THE COURT:  Thank you, Mr. Galardi.  Anything

5  further, Mr. Mason?

6           MR. MASON:  Yes, thank you, Your Honor.  I appreciate

7  it.  Maybe I'll start with the last point first.  I mean, we

8  actually are in agreement.  We understand the importance in

9  bankruptcy court to not waste the estate.  And the cases that

10  talk about the WARN Act claims and the administrative priority,

11  you know, come out the way they do because they want to be

12  careful that you're not throwing all of it into an

13  administrative priority and that would upset the bankruptcy

14  code, that's what the cases say.  So, they're very careful to

15  make this distinction between, you know -- even if the ultimate

16  termination was post-petition, that doesn't make a unified

17  claim or it's all administrative claim.  It gets broken down

18  into an unsecured claim for the pre-petition, and then an

19  administrative claim up to the cap, I think about $10,000 or

20  something post-petition.  So, we are not saying that the 60-day

21  period starts at the time of termination.  What we're saying is

22  that the claim doesn't exist, because we just heard here until

23  you know whether the 60 days are going to go by or not.

24  Because if it goes to 61 and they've worked, there is no claim

25  at all.  So that's where we disagree, just a point of when the

34

1  claim accrues.  But, as I said earlier --

2          THE COURT:  So, if a person is laid off five days

3  before a bankruptcy petition is filed, without the WARN Act

4  notice, you're saying that the entire claim accrues at that

5  time and would be pre-petition.  But, if the person is given

6  that notice the five days before filing and then works another

7  40 days, that because of that he's entitled to an

8  administrative claim for the last 20 days?

9          MR. MASON:  Yes.  That's what the cases say, that the

10  --

11          THE COURT:  I understand your argument.

12          MR. MASON:  -- if the petition's in the middle.  But

13  again, Your Honor, I don't think that has anything to say about

14  whether this should be treated as an adversary proceeding or

15  not.  I think that the most interesting point I'm hearing which

16  is coming out of this is a fair debate about what is the nature

17  of a class action in a bankruptcy proceeding, and is it

18  something that just covers those folks that came forward,

19  assuming proper notice?  I mean, that's fine, we could assume

20  that the notice was proper and the employees had a chance to

21  bring the WARN Act claims and decided not to, and so they're

22  out.  That seems to be Circuit City argument, you know, we need

23  to move forward.  They had their chance, they didn't make the

24  claim, there's bar dates, we move forward.  But, that's not

25  what the cases say, with some exception, that the majority of

1   the cases don't say that.  And we rely on the <u>First NLC</u> case.

2   That's our primary case that we're relying on in our papers.

3   This is from the Southern District of Florida, August 11th,

4   2008 which is a pre-petition termination.  And the cases say

5   that -- and they're citing earlier cases in the 11th Circuit,

6   that bankruptcy also seeks to achieve equitable distribution of

7   the estate.  Persons holding small claims who, absent class

8   procedures, might not prosecute them are no less creditors

9   under the code than someone from a large easily filed claim.

10  Applying Rule 23 to filing procedures will bring all claims

11  forward as contemplated by the bankruptcy code.  And this --

12  Rule 23, of course, is not an opt-in statute.  I mean, what

13  Circuit City and the cases that go their way, the minority

14  view, would make -- basically make this an opt-in procedure.

15  Hey, we gave out notice, and unless these small claimants who

16  are, you know, hourly workers for the most part, you know, have

17  very small stake in this, unless they file a claim and are

18  sophisticated enough to come into the bankruptcy court and do

19  this and get a lawyer, that's opt-in.  That's an opt-in

20  procedure.  Well, that's not Rule 23.  Rule 23 is an opt-out

21  procedure.  And that's what we're trying to bring in here, is

22  the opportunity to represent all the people who may have very

23  well gotten perfectly fine notice, but said, I don't want to do

24  this.  This is a pain.  I don't want to do this.  I don't want

25  to get involved in something like this.  I don't know what it

36

1  is.  I don't want to call a lawyer.  I don't even want to think

2  about this.  That happens, too.  But, the better reasoned

3  cases, and the majority of the cases that have brought in Rule

4  23 have reached beyond just those who have filed claims by the

5  bar date.  With respect to the bar date --

6          THE COURT:  Well, when do you stop?  I mean, Mr.

7  Galardi makes a good point.

8          MR. MASON:  Fair enough.  That's my next point, Your

9  Honor.

10         THE COURT:  What -- the bar date that the Court

11 establishes then becomes --

12         MR. MASON:  I think that we have to look to the

13 Computer Learning case.  The Computer Learning case is the

14 Fourth Circuit's best guidance and which deals with the issue

15 of timeliness in the context of a class claim where a motion

16 was made under 7023 for a claim to be treated at the Court's

17 discretion as a class.  And the Court says, you know, that kind

18 of motion can actually be filed at any time.  There's nothing

19 in the rules that say when that can be filed.  And the analysis

20 there wasn't dependent upon the bar date, it was really hinged

21 upon prejudice.  And in that case, I mean, very extreme facts,

22 nothing like this, but they said that, no, they were going to

23 deny the 7023 petition as untimely.  Why?  Well, because years

24 had gone by, evidence had been destroyed.  The Court had

25 already ordered the destruction of documents.  And, you know, a

37

1  host of other reasons in that case why they said, no, it's way

2  too late, we're not going to entertain a motion to convert your

3  claim to a class claim at this point.  I mean, we can come back

4  in here and have the same discussion a few months from now on

5  the claim that we filed on time, and ask the Court to use its

6  discretion and treat it as a class claim.  But, the cases say

7  there's no reason to do that.  We should proceed with the

8  adversary proceeding which is here in front of us and we can

9  use the federal rules and we can move forward arguably much

10  faster.  And I take Circuit City's points, and the cases

11  reflect that and the commentaries reflect that.  That's not

12  always the case that the adversary proceeding is more efficient

13  than the claim process.

14          But, I'll tell you one thing it would do it's going

15  to put us on a separate track, it's going to put us outside the

16  claims process and the 3600 entries and these proceedings that

17  are going on here.  And that's what the cases say, too.  The

18  cases say that, that is a legitimate reason for an adversary

19  proceeding, because it gives -- you know, the drawing upon the

20  federal rules, the separate docketing that makes that

21  proceeding arguably more efficient.  Again, who knows?  In

22  hindsight we may look back and say it didn't work out that way,

23  I can't promise that.  But, that's what the cases say from the

24  front-end when you're making this judgment.

25          Your Honor, unless the Court has any further

38

1 questions for me, I'll rest.

2          THE COURT:  No.  Thank you very much, Mr. Mason.  The

3 Court is not going to rule on the issue of whether the

4 pre-petition claim is properly addressed or whatever.  What the

5 Court is going to -- I'm reserving all of those arguments.  The

6 Court is going to grant the motion to require the plaintiff to

7 file a more definite statement.  I can't read Paragraph 40 the

8 way that Mr. Mason says that it should be read about the Nyack

9 store.  So, I will require that.  And then once a more definite

10 statement has been filed, the Court will take up the other

11 issues if it needs to take up the other issues at that point in

12 time.  Any questions on the Court's ruling?

13          MR. MASON:  How many days do we have to do that, Your

14 Honor?

15          THE COURT:  How much time do you need?  Is two weeks

16 sufficient?

17          MR. MASON:  Yes, Your Honor.

18          THE COURT:  Two weeks then.  Mr. Galardi.

19          MR. GALARDI:  Your Honor, obviously that's without

20 prejudice to renew the motion to dismiss on the first two

21 graphs.

22          THE COURT:  Completely without prejudice.  We'll see

23 if it comes back here, then we'll take those matters up.  If it

24 doesn't come back then we've resolved the issue.

25          MR. MASON:  Thank you, Your Honor.

1          MR. GALARDI:  Your Honor, I think that brings us to

2   Matters 50 and 51, Your Honor, which are both landlord motions

3   for allowance of administrative claims.  Your Honor, we took

4   the time today before the hearing to resolve those matters.

5          THE COURT:  Good for you.

6          MR. GALARDI:  They are resolved.  We will submit a

7   separate order, but essentially there is not going to be

8   allowed an administrative claim for attorneys' fees.  Stub rent

9   will, in fact, be paid, and we will fix, as an allowed claim,

10  the tax claim based upon the 2008 which we understand may

11  actually be beneficial to the estate because taxes are not

12  known to go down usually as opposed to up.  With that, I think,

13  we will resolve both 50 and 51.  I don't know if I've

14  misspoken.

15         THE COURT:  Does anybody wish to be heard in

16  connection with Matters 50 and 51?  All right.  The Court will

17  mark those as resolved.

18         MR. GALARDI:  Thank you, Your Honor.  And at some

19  point I may get up and move to a plane again, one less lawyer

20  to charge the estate.

21         THE COURT:  All right.

22         MR. GALARDI:  Thank you, Your Honor.

23         MR. FREDERICKS:  Good morning, Your Honor, Ian

24  Fredericks of Skadden, Arps, Slate, Meagher & Flom on behalf of

25  --

40

1          THE COURT:  Actually, I think we've moved to the

2  afternoon, but that's okay.

3          MR. FREDERICKS:  Afternoon.  I apologize.  You're

4  correct.  On behalf of the debtors.  The next two matters are

5  matters Number 52 and 53 which are somewhat related there.  The

6  debtor's fifth and sixth omnibus objections.  They both seek to

7  reclassify certain 503(b)(9) claims on the basis that they are

8  not goods, and thus don't satisfy the statutory requirements of

9  Section 503(b)(9).

10         For the fifth omnibus objection we objected to 357

11  claims.  We received eight responses for the sixth omnibus

12  objection.  We objected to 347 claims and received 11

13  responses.  For those collective 19 responses we've agreed to

14  adjourn these matters pursuant to the omnibus objection

15  procedures until the July 23rd hearing, I believe.  And like

16  Mr. Foley mentioned with respect to the other claim objections,

17  we'll ultimately determine whether or not we actually need to

18  go forward or whether or not there is some way to resolve them.

19         For the remaining claims we would seek an order today

20  reclassifying such claims to general unsecured claims as set

21  forth more fully in the objection.  We argue that the Uniform

22  Commercial Code, the definition of "goods" should apply.  And

23  based on the claims that were filed, those claims have not

24  satisfied the definition of "goods" in the UCC.

25         THE COURT:  All right.  Does any party wish to be

41

1  heard in connection with either of these two matters?

2                    (No audible response)

3          THE COURT:  All right.  The Court will grant that

4  request, and we'll look for an order to that effect.

5          MR. FREDERICKS:  Thank you, Your Honor.  And we will

6  -- what we will do for the order, like we've done in past

7  cases, is remove those claims for which an objection has been

8  filed.

9          THE COURT:  All right.  Thank you.

10         MR. FREDERICKS:  Thank you very much, Your Honor.

11         THE COURT:  And, Mr. Fredericks, before you leave.

12 You'll identify which claims those are so that we can docket

13 them accordingly?

14         MR. FREDERICKS:  Yes, Your Honor.

15         THE COURT:  All right.  Thank you.

16         MR. FREDERICKS:  Thank you.

17         MR. FOLEY:  Your Honor, I think we'll have a separate

18 order adjourning the ones that responded to a future date.

19         THE COURT:  That would be the Court's preference.

20 Thank you.

21         MR. FOLEY:  Your Honor, that leaves Items Number 54

22 through 57 on the docket.  I would like to take one out of

23 order because we've been able to resolve that one, Number 55.

24 This is, Your Honor, our motion to sell certain real property

25 subject to a couple of leases that are also being transferred

42

1  as part of the transaction located at 8823 Pulaski Highway,

2  Baltimore.  This is a fee property owned by the estate.  It's

3  7.3 acres, approximately.  It is subject to two leases, one

4  dated March 23rd, 1995 to NTW, Inc., and one dated July 13th,

5  1999 to Boat America Corporation which has a successor in

6  interest, West Marine who filed an objection, which we have

7  been able to resolve.

8        Your Honor, the purchaser under the transaction set

9  forth in the motion is VEI Circuit, LLC.  We entered --

10  originally entered into an agreement with them in February of

11  this year which was terminated prior to the due diligence

12  period.  We then reinstated the agreement with a longer due

13  diligence period, updated certain parts of the contract to take

14  into account certain environmental assessments and adjustments

15  to the purchase price and agreed to an amended agreement.  Your

16  Honor, the purchase price is $4.65 million.  Obviously, the

17  personal property, including inventory of the tenants, is not

18  being transferred as part of the transaction.  There is a

19  $500,000 letter of credit escrow that is on deposit with

20  respect to the transaction.

21        Your Honor, the motion set up bid procedures so that

22  we could seek out any higher or otherwise better offers.  The

23  bid deadline was June 16th.  We did not receive any competing

24  bids.  Your Honor, we believe that the standards set forth

25  under the Code, under 363 and 355, have been met.  This is in

43

1   the best interest of the estate.  It's the highest and

2   otherwise best price for this real estate, as well as

3   transferring these leases, and we would ask the Court to

4   approve the transaction.  We've agreed with one change to a

5   form of the order, Your Honor.  The objection filed by West

6   Marine raised a concern about the debtors providing certain

7   bills and reconciliations with respect to true-ups of CAM

8   obligations and taxes, and we've agreed to add Paragraph 15 to

9   the order which reads as follows.  "Notwithstanding any term or

10  provision of this order to the contrary, (a) the seller shall

11  fulfill its obligations under the lease with respect to

12  calculating the amount of the amount of the refund as that term

13  is defined in West Marine's limited objection to the motion,

14  or, the amount West Marine owes to seller as the case may be

15  for the 2008 period.  And the indebted party shall pay the

16  other party the amount determined to be owed in each case

17  within 30 days of the date of entry of this order or in

18  accordance with the terms of the lease.  And, (b) the purchaser

19  shall similarly fulfill its obligations under the lease with

20  respect to calculating the amounts due by and between the

21  parties for the 2009 period and subsequent periods of

22  applicable, and West Marine shall pay purchaser or purchasers

23  shall credit West Marine's account, as the case may be, in

24  accordance with the terms of the lease."

25          And, Your Honor, with that addition to the order that

44

1  resolves the objection of West Marine and counsel for West

2  Marine is here, and they can confirm that.

3       THE COURT:  All right.  Does any party wish to be

4  heard in connection with the debtor's motion?

5       MS. MAHER:  Your Honor, this is Susan Maher on behalf

6  of West Marine Products, Inc.  And I just, you know, we reached

7  this agreement on the order and so we're satisfied, and our

8  objection is taken care of.

9       THE COURT:  Thank you.

10      MS. MAHER:  Thank you.

11      THE COURT:  Any other party wish to be heard?

12            (No audible response)

13      THE COURT:  Okay.  That motion, with the additional

14  language in the order, will be approved.

15      MR. FOLEY:  Thank you, Your Honor.  Item Number 54,

16  Your Honor, is the leftover aspect of the motion.

17      Your Honor, if we could adjourn for 15 minutes to

18  talk to counsel for Creative Realty with respect to the balance

19  of these matters.  I understand we may be able to reach a

20  resolution of it.

21      THE COURT:  If you can reach a resolution in 15

22  minutes, it'll be 15 minutes well spent.

23      MR. FOLEY:  Thank you, Your Honor.

24      COURT CLERK:  All rise.  The court is now in recess.

25            (Recess)

45

1            COURT CLERK:  All rise.  The court is now in session.

2  Please be seated and come to order.

3            MR. FOLEY:  Good afternoon, Your Honor, Doug Foley

4  for the debtors.  Thank you for the break.  We were, we

5  believe, able to narrow some of the issues.  We weren't able to

6  resolve everything.  One --

7            THE COURT:  The old bait and switch, huh?

8            MR. FOLEY:  Yes.  We're making a lot of effort, but

9  not quite there yet.  Your Honor, one item that I can address,

10  I think, and dispose of pretty quickly is Item 54 which is the

11  carryover issue over whether or not there's any disputed cure

12  obligations left that aren't provided for in the order that

13  Your Honor has already entered.  The balance of the difference

14  that we were able to reconcile with Simon Properties was their

15  request for attorneys' fees, which they are dropping, and June

16  rent which is required to be paid in the order depending on how

17  the rest of this hearing goes.  But, other than that there is

18  no disputed cure obligation that's not already provided for to

19  be covered in the order.

20            THE COURT:  All right.

21            MR. FOLEY:  With that I'll let Mr. Galardi address

22  Items 56 and 57.

23            THE COURT:  All right.

24            MR. GALARDI:  Your Honor, with respect to the motion

25  to compel what we've done is agreed -- contempt and compel --

1 we've agreed to put that over, I guess to the next omnibus

2 hearing which I believe is July 6th as to Your Honor's

3 calendar.  What we were concerned about is that one, obviously

4 to pay the rent during the period of time and to make sure that

5 the subtenant has protection because the subtenant wants to

6 know who should I pay the rent to.

7         So what we've agreed to is the following.  The

8 prospective purchaser will cover the rent for the period, I

9 guess, it's June 9th to the end of June and then pay all of

10 July rent.  But, all of that rent means minus the subtenant's

11 rent.  So, Dollar Tree who is the subtenant will pay its June

12 rent which it has not yet done so being unaware of who to pay

13 it to and didn't want to pay twice.  What we expect is, we will

14 put in an order that it will be paid over to the debtors, but

15 the debtors will then immediately pay it over to the landlords,

16 and that the potential assignee will not have any right to seek

17 a second payment.  So, Dollar Tree is all protected.  And the

18 same will be true with respect to the July rent so that Dollar

19 Tree can remain in possession at least through July until this

20 matter is resolved.

21         What we've agreed with the potential assignee

22 purchaser is the following.  That notwithstanding whatever else

23 may be in both our motion for contempt and their motion in

24 response and the allegations, this period is for the following

25 purpose.  Your Honor, the debtor's position is that, (1) they

47

should be required to close on the order, and (2) as set forth
in that other that all we had was commercially reasonable
efforts to get them an estoppel certificate.  We have gotten
those certificates.  Their position is that it was a condition
to closing to get estoppel certificates, and indeed that those
estoppel certificates had to be satisfactory to them.

What we are really doing with the next period of time
is to let them look at whether they are acceptable, the ones
that we actually got, or two, if there are other provisions in
them that they would like to add to them, let them negotiate
with the landlord.  If the landlord is willing to accept them
then the landlord can accept them.  We agree not to interfere
with any of those negotiations.  As I said we will say nothing
on that.

If at the end of the day come July 6th the purchaser
does not want to go through with the purchase because of not
acceptable estoppel certificates, our rights are to go forward
and seek to compel them to go forward with it as we would have
done today.  Their right is to raise any argument with respect
to those certificates and say it was a condition, it was not
reasonably satisfactory, whatever they want to raise, but they
raise that issue and only that issue.  That would be the issue
for the hearing on July 6th, and we hope everybody consensually
resolves that issue, and hopefully moot, ever having to go
forward on the motion and close on the sale.

48

1          THE COURT:  All right, Mr. Galardi, thank you.

2          MR. GALARDI:  Now, the subtenant may have a different

3  view of what I said.

4          MR. PERKINS:  Good afternoon, Your Honor, Chris

5  Perkins on behalf of Creative Realty Management.  I know you've

6  had a long day.  I won't take much time.  And I apologize to

7  the Court.  We're getting into the game a little late here.  We

8  were just contacted on Thursday about this matter.  We did file

9  an objection today.  I doubt the Court's had a chance to read

10 it because it was filed around noon today.

11         THE COURT:  Oh, I read it within like the last 15

12 minutes and worried that perhaps I might have to come back out

13 here and you wouldn't resolve it.

14         MR. PERKINS:  Well, it was our intention when we

15 first got the call -- as you know this motion was filed eleven

16 o'clock Wednesday night and we were first contacted Thursday --

17 it was our intention to get the debtors, if they were

18 agreeable, to continue the matter so that we could try and

19 consensually work it out.  And it's not our intention to try

20 and get out of this deal.  We did want to go forward with it,

21 and we still do on terms acceptable to us.

22         So we've had the opportunity to talk during the

23 break, and what Mr. Galardi has stated is correct that if we

24 can continue the matter over to the 6th to give us an

25 opportunity to address the estoppel issue as I call it, I know

49

1  he said estoppel certificates, I don't want to be limited to

2  strictly the certificates, but the issue is the estoppel.  And

3  if you read the brief you saw it, as he said --

4          THE COURT:  I understand what the issue is.

5          MR. PERKINS:  -- that's the issue.  So, if we can

6  continue it to the 6th to give us that opportunity then we

7  think that would be time well worth spent.  And as Mr. Galardi

8  stated we're willing to cover the difference between the

9  subtenant rent and the regular rent for the second part of

10 June, the remaining rent there, and all of July.

11         THE COURT:  All right.  Very good.  Mr.

12 Schwarzschild, I understand that Dollar Tree's full protected,

13 you don't have anything to worry about.

14         MR. SCHWARZSCHILD:  Well, Your Honor, if I may,

15 William H. Schwarzschild, here on behalf of Dollar Tree.  The

16 one party that I think had adequate notice of these

17 proceedings, but I don't believe is here in the courtroom, is

18 the landlord Simon.  And as long as Simon is bound by the

19 agreement set forth by Mr. Galardi earlier I think it's

20 certainly satisfactory to Dollar Tree.  Obviously, we don't

21 want to find Dollar Tree in a situation where it pays rent to

22 the debtor and Simon is somehow dissatisfied with whatever

23 arrangements are worked out and invites Dollar Tree to take a

24 hike, obviously.

25         THE COURT:  Well, there's nothing that I understand

1  has transpired with regard to the agreement that vacates, or

2  amends or modifies the order that I've entered.

3          MR. SCHWARZSCHILD:  And we believe that's correct,

4  Your Honor.  I think that's correct.

5          THE COURT:  All right.  Mr. Galardi.

6          MR. GALARDI:  And, Your Honor, the only issue there

7  is we still need a stay of that order because of the fact that

8  if it turns out we can't reconcile, and for example Your Honor

9  doesn't, then we have sought reconsideration to vacate that

10 order because of changed circumstances.  So, we need the stay

11 because of the 365(d)(4) deadline that generated this whole

12 thing.  But, you're right, right now we're not amending the

13 provisions of that order, we're just simply staying its

14 application for the time being to July 6th.  I believe that Mr.

15 Fredericks has talked to the Simon attorney and they are

16 agreeable to that stay.  And so we don't think it affects this

17 gentleman's rights or Dollar Tree's rights to remain in

18 possession of those premises right now.

19         THE COURT:  All right.

20         MR. FREDERICKS:  Well, Your Honor, --

21         MR. GALARDI:  To be clear, Your Honor, the discussion

22 with Simon's counsel was that Simon did want this agreement to

23 ultimately close, and they did want the assignment to be

24 effective, and that they did agree to having the stay order

25 entered.  We -- at the time we were not aware of the Court's

51

1 calendar and had not discussed specific hearing dates, but that

2 was the substance of the conversation with Simon.

3          THE COURT:  All right.  So, what you contemplate at

4 this point is that there will be an order commemorating what

5 you've just put on the record today that would stay these

6 proceedings to the 6th and provide for these provisions and the

7 protections that Mr. Schwarzschild's asking for here today as

8 far as Dollar Store is concerned.

9          MR. GALARDI:  Yes.  The current order that's before

10 the Court on the stay motion contemplates that it's stayed

11 until the Court rules on the, what we'll call the Rule 60(b)

12 motion, the motion to compel.  If you would like us to revise

13 that order to include this, we can do that or we can submit a

14 separate order.

15          THE COURT:  I'm satisfied with what you've got.  If

16 you need to include these other provisions, because, you know,

17 a party here in court thinks it's necessary, then that's fine

18 as far as the Court is concerned, as well.

19          MR. GALARDI:  Okay.  I think we can discuss that with

20 the parties if that makes sense and then submit a --

21          THE COURT:  And then submit the order that you think

22 is appropriate.

23          MR. GALARDI:  Correct, Your Honor.

24          THE COURT:  All right.  Very good.

25          MR. SCHWARZSCHILD:  Your Honor, one last thing.  I

52

1 believe that Scott Kipnis of the firm Hofheimer, Gartlir and

2 Gross in New York has been authorized to appear telephonically

3 today.  I don't know if Mr. Kipnis who is counsel for Dollar

4 Tree, as well, Mr. Kipnis has any issues he'd like to raise,

5 but he is on the phone.

6        THE COURT:  Mr. Kipnis, are you on the phone with us

7 today?

8        MR. KIPNIS:  Yes, Your Honor.  My issues have been

9 clarified satisfactorily.

10        THE COURT:  All right.  Thank you, sir.

11        MR. KIPNIS:  Thank you.

12        MR. SCHWARZSCHILD:  Thank you, Your Honor.

13        THE COURT:  All right.  Mr. Galardi, is there any

14 other business we need to take up with regard to Circuit City

15 today?

16        MR. GALARDI:  No.

17        MR. FREDERICKS:  My apologies, Your Honor.  Ian

18 Fredericks for the record, again.  The one additional matter

19 is, and what we've spoken with your courtroom deputy, I

20 believe, we have another real estate transaction that we have

21 reached final documentation on and we'd like to seek approval

22 of that.  The -- it's too close to get it on for the July 6th,

23 and the purchaser is concerned about waiting until July 23rd.

24 We've talked with your courtroom deputy about July 16th, I

25 believe, and wanted to get the Court's preference of ten or 11.

53

1  We don't anticipate this hearing is going to take longer than

2  an hour.  In fact, it should be significantly shorter than

3  that.  But, we wanted to ask the Court its preference on ten or

4  eleven o'clock.

5          THE COURT:  Does counsel have a preference as far as

6  travel arrangements?

7          MR. FREDERICKS:  Eleven o'clock would certainly make

8  it possible to come in that morning, if that's acceptable to

9  the Court, we would prefer 11.

10          THE COURT:  That's acceptable to the Court.

11          MR. FREDERICKS:  Great.

12          THE COURT:  We'll set that down at eleven o'clock.

13          MR. FREDERICKS:  All right.  And I believe we'll be

14  filing the motion on or before Friday to be heard on July 16th.

15          THE COURT:  All right, very good.  Any other business

16  we need to take up here today?

17          MR. FREDERICKS:  None I'm aware of, Your Honor.

18          THE COURT:  All right.  Thank you all.

19                    *  *  *  *  *

20

21

22

23

24

25

54

# **C E R T I F I C A T I O N**

_____I, KIMBERLY UPSHUR, court approved transcriber,
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter, and to the best of my ability.


/s/ Kimberly Upshur_____DATE:  July 8, 2009

KIMBERLY UPSHUR

J&J COURT TRANSCRIBERS, INC.

(CR)