# EXHIBIT A

## ADDENDUM TO LEASE REJECTION CLAIM OF
## ARBORETUM OF SOUTH BARRINGTON, LLC

This Addendum is a part of, and incorporated by reference into, the proof of claim set forth on Official Form 10 of Arboretum of South Barrington, LLC (the "Arboretum") in connection with Debtors' Store No. 4195 at 100 West Higgins Road, South Barrington, Illinois (the "Premises"). In support thereof, the Arboretum states as follows:

### Background

1.  On or about September 7, 2007, Debtor Circuit City Stores, Inc., as tenant (the "Tenant"), and the Arboretum, as Landlord, entered into a Lease Agreement (the "Lease") for the Premises. A copy of the Lease is attached hereto as "Exhibit A" and incorporated herein by reference.

2.  On September 26, 2008, the Tenant opened for business at the Premises. Accordingly, pursuant to section 2.03 of the Lease, the "Commencement Date" for payment by Tenant to Landlord of rent is September 26, 2008 (the "Commencement Date").

3.  From and after the Commencement Date, the Tenant has failed and refused to pay rent and other charges, including Tenant's share of real estate taxes, insurance, and common area maintenance charges, each due on the first day of each month, as well as interest charges thereon, all as provided for in the Lease. Thus, for failure to pay rent when due and other reasons, the Tenant was and remains in default of the Lease.

4.  On October 27, 2008, and at other times, the Arboretum provided written notice to the Tenant of amounts due under the Lease. In particular, the Arboretum's October 27 correspondence to the Tenant sets forth monthly amounts due under the Lease as follows:

|  |  |
|---|---|
| Rent | $32,472.58 |
| CAM | $5,981.79 |
| Insurance | $427.27 |
| Taxes | $14,527.21 |

Based on the foregoing, the total amount of $53,408.85 is due from Tenant to the Arboretum on the first day of each month after the Commencement Date (including pro rata charges for the period from the Commencement Date until the rent payment due on October 1, 2008). A copy of the Arboretum's October 27 correspondence to the Tenant is attached hereto as "Exhibit B" and incorporated herein by reference.

5.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

6.   On November 25, 2008, the Debtors filed *Debtors' Motion for Orders Under 11 U.S.C. §§ 105, 363, and 365 (I) Approving Bidding and Auction Procedures for Sale of Unexpired Nonresidential Real Property Leases for Closing Stores, (II) Setting Sale Hearing Date, and (III) Authorizing and Approving (A) Sale of Certain Nonresidential Real Property Leases Free and Clear of Liens, Claims, and Encumbrances, (B) Assumption and Assignment of Certain Unexpired Nonresidential Real Property Lease, and (C) Lease Rejection Procedures* [Docket No. 413] (the "Motion").

7.   On December 5, 2008, this Court held a hearing to consider bid procedures for locations including the Premises. At the December 5 hearing, the Court set December 17, 2008, as the deadline for any landlord to file an objection to the cure amounts alleged by the Debtors in the Motion.

8.   On December 11, 2008, the Court entered its *Order Under 11 U.S.C. §§ 105, 363, and 365 (I) Approving Bidding and Auction Procedures for Sale of Unexpired Nonresidential Real Property Leases for Closing Stores, (II) Setting Sale Hearing Date, and (III) Authorizing*

2

*and Approving (A) Sale of Certain Nonresidential Real Property Leases Free and Clear of Liens, Claims, and Encumbrances, (B) Assumption and Assignment of Certain Unexpired Nonresidential Real Property Leases, and (C) Lease Rejection Procedures* [Docket No. 896] (the "Bid Procedures Order") granting the Motion, in part, regarding leases including the Premises.

9.  On December 17, 2008, the Arboretum timely filed its *Objection of the Arboretum of South Barrington to Debtors' Proposed Cure Amount* [Docket No. 1036] (the "Cure Objection") in response to the Motion. As described in the Cure Objection, the correct cure amount due pursuant to section 365(b)(1)(A) of the Bankruptcy Code for the proposed assumption and assignment of the Premises was not less than $524,098.48.

10. No timely bids for the Premises were received, however. Thus, in accordance with the Bid Procedures Order, the Lease of the Premises was deemed rejected as of December 31, 2008 (the "Rejection Date").

### Rejection Claims for Future Rent

11. As described in paragraph 4, *supra*, monthly amounts due of $53,408.85 from the Tenant to the Arboretum under the Lease began to accrue as of the Commencement Date. Pursuant to section 1.01(H) of the Lease, the "Initial Lease Term" was set to expire on January 31, 2019, with monthly rent set to increase beginning September 1, 2013 to $55,117.94. Thus, the nominal amount of rent due under the Lease for the Initial Lease Term is no less than $6,573,561.70, and the nominal amount of annual rent due under the Lease as of the Petition Date is $640,906.20. A copy of a spreadsheet setting forth rent due under the Lease during the portion of the Initial Lease Term after the Rejection Date is attached hereto as "Exhibit C" and incorporated herein by reference.

12. In accordance with section 502(b)(6)(A) of the Bankruptcy Code, however, "the claim of a lessor for damages resulting from the termination of a lease of real property" is limited to "the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease . . . ." 11 U.S.C. § 502(b)(6)(A).

13. Therefore, the Arboretum is entitled to payment of damages from the Debtors' bankruptcy estate for rent under the Lease of no less than $986,034.26 (the "Section 502(b) Rent Claims"). *See* Exhibit C.

14. The Arboretum hereby demands prompt payment in full of its Section 502(b) Rent Claims, in addition to all other amounts due and owing to the Arboretum.

### Pre-Petition Date Rent Claims

15. Unpaid rent and other charges for the period prior to the Petition Date, including Tenant's share of real estate taxes, insurance, and common area maintenance charges, as well as interest charges thereon, were no less than $107,932.34 through the Petition Date, plus additional interest charges and late fees accruing thereon (the "Pre-Petition Date Rent Claims"). A copy of a spreadsheet provided by the Arboretum to the Tenant setting forth the Arboretum's calculation of daily amounts of rent due under the Lease from and after the Commencement Date is attached hereto as "Exhibit D" and incorporated herein by reference.

16. The Arboretum hereby demands prompt payment in full of its Pre-Petition Date Rent Claims, in addition to all other amounts due and owing to the Arboretum.

### Post-Petition Date Administrative Claims

17. The Tenant continued to occupy the Premises from and after the Petition Date through the Rejection Date. Unpaid rent and other charges for the period from and after the

Petition Date through the Rejection Date, including Tenant's share of real estate taxes, insurance, and common area maintenance charges, as well as interest charges thereon, were no less than $90,795.05, plus additional interest charges and late fees accruing thereon (the "Post-Petition Date Administrative Rent Claims").

18.  On or about December 22, 2008, the Tenant untimely paid a portion of "stub rent" for the period from the Petition Date through November 30, 2008, which reduces the balance of Post-Petition Date Administrative Rent Claims to no less than $63,577.90, plus additional interest charges and late fees accruing thereon.

19.  The Arboretum also incurred or expects to incur additional charges of approximately $15,000.00 to return the Premises to "broom clean" condition in the wake of the Tenant's "going-out-of-business sale" at the Premises, $1,491.00 in charges related to securing the Premises after the Tenant's departure on the Rejection Date, as well as other recapture costs (collectively, the "Recapture Claims," and together with the Post-Petition Date Administrative Rent Claims, the "Post-Petition Date Administrative Claims")

20.  Because the Tenant conducted going-out-of-business sales at the Premises during its post-Petition Date occupancy, the Post-Petition Date Administrative Claims constitute "actual, necessary costs and expenses of preserving the estate" entitled to administrative expense priority status. 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2).

21.  The Arboretum hereby demands prompt payment in full of its Post-Petition Date Administrative Claims, in addition to all other amounts due and owing to the Arboretum.

### Lien Claims

22.  Additionally, the Tenant has permitted various liens to be placed upon the Premises.

23. On December 10, 2008, the Arboretum provided the Tenant with written notice of liens in an amount not less than $352,588.24. A copy of the Arboretum's December 10 notice to the Tenant is attached hereto as "Exhibit E" and incorporated herein by reference.

24. Thereafter, on January 14, 2009, the Arboretum provided the Tenant with written notice of another lien in the amount of $11,143.79. A copy of the Arboretum's January 14 notice to the Tenant is attached hereto as "Exhibit F" and incorporated herein by reference.

25. As recent history suggests, there may be other lien claims that the Tenant has permitted to be placed upon the Premises or asserted against the Arboretum, but which are unknown to the Arboretum at this time. The Arboretum reserves its rights with respect to such lien claims.

26. Based on the foregoing, the Tenant has permitted lien claims in the aggregate amount of not less than $363,732.03 to be placed upon the premises (the "Lien Claims").

27. The Arboretum hereby demands prompt payment in full of the Lien Claims, in addition to all other amounts due and owing to the Arboretum.

### Construction Cost, Broker, and Leasing Claims

28. The Arboretum undertook construction of new facilities at the Premises, including construction of the Debtors' Store No. 4195. Construction costs at the Arboretum total $66,482,130.73. The Tenant contracted for and obtained construction of space at the Arboretum totaling 4.46% of the total square footage available. Thus, on a per square foot basis, the Tenant's share of construction costs is $2,967,575.02 (the "Construction Cost Claims"). A schedule itemizing the construction costs is attached hereto as "Exhibit G" and incorporated herein by reference.

29. Additionally, the Arboretum paid commissions of $88,350.00 and $61,458.00 to the Tenant's brokers, Great Street Realty Partners, LLC and WSB Development Partners, respectively (the "Broker Claims").

30. The Arboretum also incurred other fees in connection with establishment of the Premises and the Tenant's occupancy therein (the "Leasing Claims").

31. The Arboretum hereby demands prompt payment in full of the Construction Cost Claims, the Broker Claims, and the Leasing Claims, in addition to all other amounts due and owing to the Arboretum.

## Demand for Payment of Claims

32. Some or all of the foregoing claims may constitute general unsecured claims against the Tenant and the Debtors' bankruptcy estates, claims entitled to administrative expense priority status under the Bankruptcy Code, secured claims subject to a right of setoff against any obligations owing by the Arboretum, or amounts subject to the doctrine of recoupment.

33. Therefore, and without prejudice to its other rights and remedies, the Arboretum hereby demands allowance and payment of all of its claims, in an amount not less than $4,655,150.55, as well as other amounts to which it may be or may become entitled, from the Tenant and the Debtors' bankruptcy estates.

## Reservation of Rights

34.  The foregoing is without prejudice to all of the Arboretum's other rights and claims in these proceedings or in connection with the Premises.

35.  In addition to the foregoing, the Arboretum expressly reserves all other rights, remedies, interests, priorities, protections, claims, counterclaims, defenses, setoffs, and recoupments, including, without limitation, claims against the Tenant and the Debtors' bankruptcy estates under sections 503, 507, 510, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code.

36.  The Arboretum specifically reserves the right to amend, modify, or withdraw this proof of claim at any time, and the right to assert any other legal theory in support of its recovery from the Tenant, the Debtors' bankruptcy estates, or their successors.

37.  By preparing, signing, and/or filing this proof of claim, or taking any action in connection therewith, the Arboretum is not (a) in any manner whatsoever waiving or relinquishing any rights they may have against any other entity liable for all or any parts of the matters set forth herein, (b) waiving their contractual right to arbitrate or consenting to the jurisdiction of the Bankruptcy Court with respect to any proceedings commenced in this case, (c) waiving the right to withdraw the reference with respect to objections, cases, or proceedings, (d) electing any remedy which waives or otherwise affects any other remedy, (e) acknowledging or admitting any liability to any entity, (f) limiting its claims to the amounts or theories set forth herein, or (g) estopped or prevented from taking any other action or position.

38.  The Arboretum reserves the right to amend and supplement this proof of claim and to file additional claims against the Tenant of the Debtors' bankruptcy estates for any reason.