Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

                - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                          :   Chapter 11
                                :
CIRCUIT CITY STORES, INC.,      :   Case No. 08-35653 (KRH)
<u>et</u> <u>al</u>.,                       :
                                :
                Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - - x

### ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363, 365 AND 503 AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING THE SALE BY SELLER OF CERTAIN REAL PROPERTY LOCATED IN VIRGINIA BEACH, VIRGINIA FREE AND CLEAR OF LIENS AND INTERESTS

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

---

[1] Capitalized terms not otherwise defined herein shall have the
meanings ascribed to such terms in the Motion.

debtors and debtors in possession in the above-captioned
jointly administered cases, the "Debtors") for entry of
an order pursuant to sections 105, 363 and 503 of title
11 of the United States Code (the "Bankruptcy Code") and
Rules 2002 and 6004 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), (A) authorizing the
Seller to enter into the Agreement with the Cardinal
Capital Partners, Inc. (the "Purchaser") for the sale
(the "Sale") of certain of the Seller's real property
located in the Virginia Beach Shopping Center, at 110
South Independence Boulevard, Virginia Beach, Virginia
(the "Property"), subject to higher or otherwise better
proposals, (B) approving the Termination Fee in
connection therewith, (C) approving the Sale free and
clear of all Liens and (D) granting related relief; and
upon the record of the auction conducted on July 14,
2009 (the "Auction") and the hearing held on July 16,
2009 (the "Sale Hearing"); and after due deliberation
thereon, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 503 and Bankruptcy Rules 2002 and 6004.

D.    The notice of the Motion, the Auction, and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

F.    A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities.

G.    The Seller and its professionals marketed the Property and conducted a sale process as set forth in and in accordance with the Motion and the Bidding Procedures.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid on the Property.

H.    The Seller has demonstrated good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Seller and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Property and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Property pursuant thereto and (c) the Total Consideration agreed to by the Purchaser are fair and reasonable and constitute the highest or otherwise best value obtainable for the Property.

I.    The Seller has full power and authority
to execute the agreement submitted by the Purchaser, a
copy of which is annexed hereto as <u>Exhibit A</u> (the
"Agreement") and all other applicable documents
contemplated thereby.  The transfer and conveyance of
the Property by the Seller have been duly and validly
authorized by all necessary action of the Seller.  The
Seller has all of the power and authority necessary to
consummate the transactions contemplated by the
Agreement and has taken all action necessary to
authorize and approve the Agreement and to consummate
the transactions contemplated thereby.  No consents or
approvals, other than those expressly provided for in
the Agreement, are required for the Seller to consummate
such transactions.

J.    The Agreement and the Sale of the
Property were negotiated and have been and are
undertaken by the Seller and the Purchaser at arms'
length without collusion or fraud, and in good faith
within the meaning of Sections 363(m) of the Bankruptcy
Code.  As a result of the foregoing, the Seller and the

Purchaser are entitled to the protections of Section
363(m) of the Bankruptcy Code.

K.    Neither the Seller nor the Purchaser
engaged in any conduct that would cause or permit the
Agreement or the consummation of the Sale to be avoided,
or costs or damages to be imposed, under Section 363(n)
of the Bankruptcy Code.

L.    The Total Consideration provided by the
Purchaser for the Property is the highest and best offer
received by the Seller, and the Total Consideration
constitutes (a) reasonably equivalent value under the
Bankruptcy Code and Uniform Fraudulent Transfer Act,
(b) fair consideration under the Uniform Fraudulent
Conveyance Act, and (c) reasonably equivalent value,
fair consideration and fair value under any other
applicable laws of the United States, any state,
territory or possession, or the District of Columbia,
for the Property.

M.    The Sale must be approved and consummated
promptly to obtain the value provided under the terms of
the Agreement.

N.   The transfer of the Property to the
Purchaser is a legal, valid, and effective transfer of
the Property, and shall vest the Purchaser with all
right, title, and interest of the Seller to the Property
free and clear of all liens (including the liens of the
Seller's post-petition lenders and liens for past-due
real property taxes), claims and encumbrances
(collectively, the "Liens"), except for those items
defined in the Agreement(and which are referred to
hereinafter) as the "Permitted Encumbrances".

O.   If the Sale of the Property by the Seller
were not free and clear of any Liens, except for the
Permitted Encumbrances, as set forth in the Agreement
and this Sale Order, or if the Purchaser would, or in
the future could, be liable for any of the Liens, the
Purchaser would not have entered into the Agreement and
would not consummate the Sale contemplated by the
Agreement, thus adversely affecting the Seller, its
estate, and its stakeholders.

P.   The Seller may sell its interest in the
Property free and clear of all Liens (except the
Permitted Encumbrances) because, in each case, one or

7

more of the standards set forth in Bankruptcy Code
sections 363(f)(1)-(5) has been satisfied.  All holders
of Liens, if any, who did not object or withdrew their
objections to the Sale are deemed to have consented to
the Sale pursuant to 11 U.S.C. § 363(f)(2) and all
holders of Liens are adequately protected by having
their Liens, if any, attach to the cash proceeds of the
Sale ultimately attributable to the property against or
in which they claim an interest with the same priority,
validity, force, and effect as they attached to such
property immediately before the Closing of the Sale.

Q.   Based on the foregoing findings of fact
and conclusions of law,[3]

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Motion is GRANTED.

2.   Any and all objections to the Motion not
waived, withdrawn, settled, adjourned or otherwise
resolved herein are hereby overruled on the merits and
denied with prejudice.

---

[3]   Statements made by the Court from the bench at the hearing on the
      Motion shall constitute additional conclusions of law and
      findings of fact as appropriate.

**A.    Approval Of The Agreement.**

3.    Pursuant to Bankruptcy Code section 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

4.    Pursuant to Bankruptcy Code section 363(b), the Seller is authorized and approved to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

5.    The Seller is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Property as contemplated by the Agreement.

6.    This Sale Order and the Agreement shall be binding in all respects upon the Seller, all stakeholders (whether known or unknown) of the Seller,

all affiliates and subsidiaries of the Seller, and any
subsequent trustees appointed in the Seller's chapter 11
case or upon a conversion to chapter 7 under the
Bankruptcy Code.  To the extent that any provision of
this Sale Order is inconsistent with the terms of the
Agreement, this Sale Order shall govern.

     7.   The Agreement and any related agreements,
documents, or other instruments may be modified, amended,
or supplemented by the parties thereto, in a writing
signed by such parties, and in accordance with the terms
thereof, without further order of the Court; provided
that any such modification, amendment, or supplement is
disclosed to the Creditors' Committee and does not have
a material adverse effect on the Seller's estate, in the
good faith business judgment of the Seller.

**B.   Sale And Transfer Of The Property.**

     8.   Pursuant to Bankruptcy Code sections
363(b) and 363(f), upon the consummation of the
Agreement, the Seller's right, title, and interest in
the Property shall be transferred to the Purchaser free
and clear of all Liens except the Permitted Encumbrances,
with all such Liens to attach to the cash proceeds of

the Sale in the order of their priority, with the same

validity, force, and effect which they had as against

the Property immediately before such transfer, subject

to any claims and defenses the Seller may possess with

respect thereto.

     9.   If any person or entity which has filed

financing statements, mortgages, mechanic's liens, <u>lis</u>

<u>pendens</u>, or other documents or agreements evidencing

Liens on or against the Property shall not have

delivered to the Seller prior to the Closing of the Sale,

in proper form for filing and executed by the

appropriate parties, termination statements, instruments

of satisfaction, releases of all Liens that the person

or entity has with respect to the Property, or otherwise,

then (a) the Seller is hereby authorized to execute and

file such statements, instruments, releases, and other

documents on behalf of the person or entity with respect

to the Property and (b) the Purchaser is hereby

authorized to file, register, or otherwise record a

certified copy of this Sale Order, which, once filed,

registered, or otherwise recorded, shall constitute

conclusive evidence of the release of all Liens on or

against the Property of any kind or nature whatsoever
except for the Permitted Encumbrances.

10.   This Sale Order (a) shall be effective as
a determination that, upon the Closing of the Sale, all
Liens of any kind or nature whatsoever existing as to
the Seller or the Property prior to the Closing of the
Sale, except for the Permitted Encumbrances, have been
unconditionally released, discharged, and terminated
(other than any surviving obligations), and that the
conveyances described herein have been effected and (b)
shall be binding upon and shall govern the acts of all
entities including, without limitation, all filing
agents, filing officers, title agents, title companies,
recorders of mortgages, recorders of deeds, registrars
of deeds, administrative agencies, governmental
departments, secretaries of state, federal, state, and
local officials, and all other persons and entities who
may be required by operation of law, the duties of their
office, or contract, to accept, file, register, or
otherwise record or release any documents or instruments,
or who may be required to report or insure any title or
state of title in or to any of the Property.

11.  All persons and entities, including, but
not limited to, all debt security holders, equity
security holders, governmental, tax, and regulatory
authorities, lenders, trade stakeholders, and other
stakeholders, holding Liens of any kind or nature
whatsoever against or in the Seller or the Property,
except the Permitted Encumbrances (whether legal or
equitable, secured or unsecured, matured or unmatured,
contingent or non-contingent, senior or subordinated)
arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Order or the Agreement releases or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of the Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any

governmental agency from asserting or enforcing, outside

the Court, any liability described in the preceding

sentence.  Notwithstanding the above, nothing herein

shall be construed to permit a governmental agency to

obtain penalties from the Purchaser for days of

violation of environmental laws and regulations prior to

Closing.

**D.   Additional Provisions**

12.   The Total Consideration provided by the

Purchaser for the Property under the Agreement is hereby

deemed to constitute reasonably equivalent value and

fair consideration under the Bankruptcy Code, the

Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the

United States, and any state, territory, or possession

thereof, or the District of Columbia.

13.   The Total Consideration provided by the

Purchaser for the Property under the Agreement is fair

and reasonable and the Sale may not be avoided under

section 363(n) of the Bankruptcy Code.

14.   Upon the Closing, this Sale Order shall

be construed as and shall constitute for any and all

purposes a full and complete general assignment,
conveyance, and transfer of the Property or a bill of
sale transferring good and marketable title in the
Property to the Purchaser pursuant to the terms of the
Agreement.

15.  The transactions contemplated by the
Agreement are undertaken by the Seller and the Purchaser
at arm's length, without collusion and in good faith, as
that term is used in section 363(m) of the Bankruptcy
Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to
consummate the Sale of the Property shall not affect the
validity of the Sale to the Purchaser, unless such
authorization is duly stayed pending such appeal.  The
Purchaser is a purchaser in good faith, within the
meaning of section 363(m) of the Bankruptcy Code, of the
Property and is, and shall be, entitled to all of the
protections afforded by such section and in accordance
therewith.

16.  The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Order shall not diminish or impair the

effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

17.   All deposits submitted to the Seller for
the Property, if any, shall be returned to the bidders
that submitted such deposits no later than two business
days after the Closing of the Sale with the Purchaser,
except in the case of a bidder who closed on the Sale of
the Property or who was required to close in accordance
with the terms of this Sale Order but failed to do so in
breach of its contractual obligations through no fault
of the Seller.

18.   This Order shall be effective and
enforceable immediately upon entry and shall not be
stayed pursuant to Rule 6004(h).

19.   The requirement under Local Bankruptcy
Rule 9013-1(G) to file a memorandum of law in connection
with the Motion is hereby waived.

20.   This Court retains exclusive jurisdiction
to interpret, construe, enforce, and implement the terms
and provisions of this Sale Order, the Agreement, all
amendments thereto, any waivers and consents thereunder,

and of each of the agreements executed in connection
therewith in all respects, including, but not limited to,
retaining jurisdiction to (a) compel delivery of the
Property to the Purchaser, (b) compel delivery of the
purchase price or performance of other obligations owed
to the Seller pursuant to the Agreement, (c) resolve any
disputes arising under or related to the Agreement, the
Alternate Bid, and any deposit delivered to Seller by a
bidder for the Property, (d) interpret, implement, and
enforce the provisions of this Sale Order, and
(e) protect the Purchaser against any Lien against the
Seller or the Property of any kind or nature whatsoever,
except for Permitted Encumbrances, which Liens, valid
and timely perfected, shall attach to the proceeds of
the Sale.

Dated:  Richmond, Virginia
        _____, 2009


        _____
        UNITED STATES BANKRUPTCY JUDGE

17

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession


   **CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                              /s/ Douglas M. Foley

**Exhibit A**

**(Agreement)**

<u>PURCHASE AND SALE AGREEMENT</u>

THIS PURCHASE AND SALE AGREEMENT (this "<u>Agreement</u>"), dated as of May ⏟11⏟ , 2009, is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation, its permitted assignees or designees ("Purchaser").

<u>RECITALS</u>

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "<u>Bankruptcy Court</u>"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion (as defined below) seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.      PURCHASE AND SALE

1.1      <u>Purchase and Sale</u>.      Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to that certain outparcel located in the Virginia Beach Shopping Center, 110 South Independence Boulevard, Virginia Beach, Virginia, containing approximately .683 of an acre, and being more particularly shown on <u>Exhibit A</u> attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land (herein collectively called the "<u>Property</u>").

2.      PURCHASE PRICE; ADDITIONAL CONSIDERATION

2.1      <u>Purchase Price</u>.      The purchase price (the "<u>Purchase Price</u>") for the Property shall be FIVE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($525,000.00). At Closing (as defined below), the Purchase Price, less the Deposit (as defined below), shall be paid into the Escrow Agent's escrow account in cash by Purchaser by wire transfer in accordance with wire transfer instructions to be provided by Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

1

2.2   Additional Consideration.   In the event the Bankruptcy Court enters the Sale Order and Closing thereafter occurs as set forth in this Agreement, Purchaser, as additional consideration for Seller agreeing to sell and convey the Property to Purchaser pursuant to this Agreement, shall cause CC-Virginia Beach, LLC, an affiliate of Purchaser ("Purchaser's Affiliate"), solely with respect to its prepetition claims relating to its lease with Seller for Seller's store located at 110 South Independence Boulevard, Virginia Beach, Virginia, to agree at Closing (a) to the disallowance of its presently filed proof of claim dated January 27, 2009 in the total amount of $26,655.59 and (b) to waive its right to file a proof of claim for lease rejection damages pursuant to section 502(b)(6) of the Bankruptcy Code or to the disallowance of any such filed proof of claim, which proof of claim would be in the total amount of approximately $593,864.77 (collectively, the "Purchaser's Affiliate's Bankruptcy Claims").   Notwithstanding the foregoing, nothing contained in this Section 2.2 shall affect the right of Purchaser's Affiliate with respect to any administrative claims it may have against Seller pursuant to sections 365(d)(3) or 502(b) and the right of Purchaser's Affiliate to assert and recover on such administrative claims is expressly reserved unto Purchaser's Affiliate.

3.   DEPOSIT

3.1   Deposit.   Concurrently with execution of this Agreement, Purchaser shall deliver to Republic Title of Texas, Inc. ("Escrow Agent"), 2626 Howell Street, 10th Floor, Dallas, Texas 75204, Attention: Cathy Moeller,  Phone: (214) 855-8871, Fax: (214) 855-8889, Email: cmoeller@republictitle.com, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to FIFTY-TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($52,500.00) (which amount, together with all interest accrued thereon, is herein called the "Deposit") to be held by Escrow Agent in an interest-bearing account in a federally insured financial institution in the Dallas, Texas metropolitan area, or in such other interest-bearing account or investment as the parties hereto shall direct.

3.2   Application of Deposit.   If the sale of the Property is consummated under this Agreement, at Closing, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 4.2, Section 4.3, Section 7.1, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, the Deposit shall be returned promptly by Escrow Agent to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations").  If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, Escrow Agent shall pay the Deposit to Seller, and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to

2

deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) promptly after the notice to terminate this Agreement is given. The obligation to deliver the Reports shall survive the termination of this Agreement. All interest earned on the Deposit shall be reported to the Internal Revenue Service as income of Purchaser, and Purchaser shall promptly execute all forms reasonably requested by Escrow Agent regarding such interest.

4.    ITEMS DELIVERED TO PURCHASER

4.1    Items Delivered.    Seller has delivered or will deliver to Purchaser, within five (5) days following Seller's execution of this Agreement, all title policies and commitments (including copies of all underlying title documents referenced therein), surveys, environmental reports, zoning reports and tax bills regarding the Property that are in Seller's possession or control.

4.2    Title Examination.    Purchaser shall have the right to have Seller's title to the Property examined and shall give written notice to Seller within twenty-one (21) days from and after the date of this Agreement (the "Due Diligence Period") of any objection thereto; provided, however, Seller shall have no obligation to satisfy any such objections. Purchaser must elect, on or before the expiration of the Due Diligence Period, one of the following: (i) to waive any such objections that Seller has not agreed to satisfy at or prior to the Closing and to close the transaction in accordance with the terms of this Agreement; or (ii) to terminate this Agreement, in which event Escrow Agent shall promptly return the Deposit to Purchaser as Purchaser's sole and exclusive remedy; provided, however, if Seller has agreed to cure or satisfy each such objection specified in the written notice, then no such election shall be required and Purchaser shall be obligated to close the transaction in accordance with the terms of this Agreement; provided, further, if Purchaser does not send a written notice of title objections prior to the expiration of the Due Diligence Period or does not make such an election on or before the expiration of the Due Diligence Period, then Purchaser shall be deemed to have waived irrevocably any and all title objections and shall be obligated to close the transaction in accordance with the terms of this Agreement.

4.3    Property Inspection.    Purchaser shall have through the last day of the Due Diligence Period to determine whether, in Purchaser's sole and absolute discretion, the Property is acceptable to Purchaser. Notwithstanding anything to the contrary in this Agreement, Purchaser may terminate this Agreement by giving notice of termination to Seller on or before the last day of the Due Diligence Period if Purchaser determines that the Property is not acceptable for any reason, in which event Escrow Agent shall promptly return the Deposit to Purchaser and the parties shall have no further rights or obligations hereunder, except for the Survival Obligations. If Purchaser does not give a

3

notice of termination pursuant to Section 4.2 or this Section 4.3 at or prior to 5 p.m. (local time in Virginia Beach, Virginia) on the last day of the Due Diligence Period, this Agreement shall continue in full force and effect and Purchaser's right to terminate this Agreement pursuant to Section 4.2 and this Section 4.3 shall expire and be of no further force or effect.

Subject to the conditions set out in this Section 4.3, Purchaser shall have reasonable access to the Property during the Due Diligence Period for the purpose of conducting surveys, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense. I f any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test. Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which Seller may give or withhold in its absolute discretion; provided, however, all other inspections of or entry upon the Property by Purchaser shall occur only with the consent of Seller, which consent shall not be withheld unreasonably. Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors. Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained. Purchaser's restoration and indemnification obligations set forth in this Section 4.3 shall survive the Closing or termination of this Agreement, as applicable.

4.4    Reports.    All information provided by Seller to Purchaser relating to the Property whether before or after the date of this Agreement and any title commitments, surveys and environmental reports relating to the Property obtained by Purchaser pursuant to Section 4.2 and Section 4.3 above are hereinafter collectively referred to as the "Reports". All environmental reports relating to the Property, whether previously obtained by Seller and provided to Purchaser pursuant to Section 4.1 above or obtained by Purchaser pursuant to Section 4.3 above (collectively, the "Environmental Reports"), shall be treated as confidential information and shall not be disclosed to any

4

third parties except for Purchaser's attorneys, engineers, lenders, prospective tenants and other business associates who need to know the information contained in the Environmental Reports in furtherance of this transaction, and then only if they agree to maintain such information in strict confidence as provided herein.   Purchaser shall be liable to Seller for any loss, damage or liability incurred by Seller as a result of the unauthorized disclosure of the confidential information by or through Purchaser.   In the event this Agreement is terminated for any reason prior to Closing, the provisions of this Section 4.4 shall survive such termination.

4.5    Purchaser's Representations and Warranties.        Purchaser represents and warrants to Seller that (a) Purchaser is a corporation, duly organized and in good standing under the laws of the State of Texas, and has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement, and Purchaser or its permitted assignee or designee at Closing will be authorized to do business in the Commonwealth of Virginia; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any permitted assignee or designee of Purchaser, is a party or by which Purchaser, any permitted assignee or designee of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms.   Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any material inaccuracies which prevent the Closing shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6    Seller's Representations and Warranties.    Seller    represents    and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties and obligations under this Agreement; (c) upon entry of the Sale Order in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the

5

liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances. The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

    4.7    Further Assurances.    Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.    DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

    5.1    Disclaimer.    PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY

6

ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY, PROTECT, DEFEND, SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S CONDUCT. THE PROVISIONS OF THIS SECTION 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

7

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.    "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

5.4    Purchaser's Independent Investigations.    For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the date of this Agreement, and Purchaser is entitled to access the Property during the Due Diligence Period, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.    Purchaser is also entitled to

8

access the Property following the expiration of the Due Diligence Period and prior to
Closing, subject to Seller's reasonable consent and subject to Purchaser's restoration and
indemnification obligations set forth in Section 4.3 above.

6.   CLOSING

    6.1   Closing.      Unless otherwise agreed by the parties in writing, the
closing of the purchase and sale of the Property (the "Closing") shall be conducted in
escrow through the offices of the Escrow Agent or, if necessary, held at a location to be
mutually agreed upon by the parties, on the date which is five (5) days after the later of
(i) the expiration of the Due Diligence Period, or (ii) the date of entry by the Bankruptcy
Court of the Sale Order (the date on which the Closing occurs is referred to as the
"Closing Date").

    6.2   Possession.    Possession of the Property shall be delivered to Purchaser
at the Closing, subject to (i) liens for real property taxes and assessments that are not yet
due and payable, (ii) zoning ordinances, building codes and other land use laws and
applicable governmental regulations, (iii) all covenants, agreements, conditions,
easements, restrictions and rights, of record, and (iv) any and all matters that would be
shown by a current survey of the Property (collectively, the "Permitted Encumbrances").

    6.3   Prorations.    All real estate taxes and assessments, both general and
special, for the year in which the Closing occurs, whether or not then due or payable, and
all other normally proratable items shall be prorated as of the Closing Date, based upon
the latest assessments or actual invoices available.    Should any such proration be
inaccurate based upon the actual tax bill or assessment when received, either party hereto
may demand and shall be entitled to receive on demand, a payment from the other
correcting such malapportionment.    Seller shall pay all costs associated with any fees,
taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges
attributable to a period prior to Closing.

    The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive
the Closing.

    6.4   Closing Costs.      Purchaser shall pay all title examination costs, title
insurance premiums, survey costs, environmental and engineering costs, and any and all
other due diligence costs. Purchaser shall also pay the grantee's tax imposed on the Deed
(as defined below) pursuant to the Virginia Code and any other recording fees associated
with the recordation of the Deed. Seller shall pay the grantor's tax imposed on the Deed
pursuant to the Virginia Code. Except as otherwise provided herein, each party shall pay
its own attorneys' fees. The parties shall each pay one-half (1/2) of all transfer and

9

recordation costs and any escrow fee charged by Escrow Agent; and, with regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in the Commonwealth of Virginia.

      6.5    <u>Seller's Obligations at the Closing</u>.  At the Closing, Seller shall deliver to Escrow Agent the following:

      (a)    <u>Deed</u>. A special warranty deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject only to the Permitted Encumbrances.

      (b)    <u>Foreign Person</u>.   An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended.

      (c)    <u>Transfer Tax Returns</u>. All state, county or local declarations, affidavits, or transfer tax statements that are required to be executed by a grantor in connection with the recording of the Deed in the county and state where the Property is located, if any.

      (d)    <u>Closing Statement</u>.  A closing statement executed by Seller.

      (e)    <u>Additional Documents</u>.  Such other documents as may be required by this Contract or reasonably required by the Title Company, provided that any documents required by the Title Company must be in a form acceptable to Seller.

      6.6    <u>Purchaser's Obligations at the Closing</u>.   At the Closing, Purchaser shall deliver to Escrow Agent the following:

      (a)    <u>Purchase Price</u>.   The Purchase Price (less the amount of the Deposit, which shall be released separately by Escrow Agent to Seller), by wire transfer of immediately available funds.

      (b)    <u>Purchaser's Affiliate's Bankruptcy Claims</u>. A document duly executed by Purchaser's Affiliate, in a form reasonably acceptable to Seller, addressing the disallowance and waiver, respectively, of the Purchaser's Affiliate's Bankruptcy Claims in accordance with the terms of Section 2.2 above.

      (c)    <u>Evidence of Authority</u>.   Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

10

(d)    Taxpayer I.D. Certificate.    A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

(e)    Transfer Tax Returns. All state, county or local declarations, affidavits, or transfer tax statements that are required to be executed by a grantee in connection with the recording of the Deed in the county and state where the Property is located, if any.

(f)    Additional Documents.    Such other documents as may be required by this Contract or reasonably required by the Title Company, provided that any documents required by the Title Company must be in a form acceptable to Purchaser.

6.7    Commission. Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty (the "Broker"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement.    Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever.    Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction.    The provisions of the preceding sentence shall survive the Closing.

7.    RISK OF LOSS

7.1    Condemnation.        If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement, in which case the Deposit shall be returned to Purchaser by Escrow Agent and neither party shall have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which case the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

8.    DEFAULT

8.1    Breach by Seller.        In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy, except as otherwise provided below, may terminate this Agreement and demand the return of the Deposit from Escrow Agent.    In no event, except as otherwise provided below, shall

11

Purchaser be entitled to any remedy other than the return of the Deposit from Escrow Agent, and Escrow Agent and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages.   In the event that the Sale Order has been obtained and Seller shall fail to consummate the transactions contemplated by this Agreement for any reason other than pursuant to a provision of this Agreement permitting Seller to do so, then (and only in such event) Purchaser shall be entitled to the remedy of specific performance.

8.2    Breach by Purchaser. In the event that Purchaser shall fail to consummate the transactions contemplated by this Agreement for any reason, except Seller's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Seller, as its sole and exclusive remedy, may terminate this Agreement and thereupon shall be entitled to payment of the Deposit from Escrow Agent as liquidated damages.  Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and because the parties believe that the Deposit represents a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.     BANKRUPTCY ISSUES

9.1    Generally.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2    Filing a Sale Motion. The  obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement.   Promptly following the expiration of the Due Diligence Period, Seller will file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "Sale Motion"). The Sale Motion shall be in form and substance consistent with this Agreement and shall be in a form and substance reasonably satisfactory to Purchaser.   Seller shall be responsible for serving and providing notice of the Sale Motion.

12

9.3    Entry of Sale Order.   The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above.  Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

9.4    Termination.  Purchaser acknowledges that the Seller intends to solicit "higher or better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least $550,000.00 shall be required; (b) each initial overbid must be accompanied by a deposit in an amount equal to at least ten percent (10%) of the amount of such overbid); (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing  offer is received by Seller, Seller shall conduct an auction to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the auction.  The last day for submission of higher or better offers will be fixed by Seller or established by order of the Bankruptcy Court. Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order within thirty (30) days following the expiration of the Due Diligence Period.  Subject to the approval of the Bankruptcy Court, if this Agreement is terminated by Seller in order to permit Seller to accept a "higher or better" offer for the Property, Seller shall pay Purchaser a fee of $15,000.00 as a "break-up" fee and reimbursement for all costs and expenses incurred by Purchaser in connection with this Agreement, which fee shall be Purchaser's sole recourse and remedy in the event of such termination.

10.    MISCELLANEOUS

10.1    Notices.      All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at

13

the address specified below.  For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

|  |  |
|---|---|
| If to Purchaser: | CARDINAL CAPITAL PARTNERS, INC.<br>8214 Westchester Dr., Ninth Floor<br>Dallas, Texas 75225<br>Attention:  Scott S.  Riley |
| with a copy to: | Goldfarb & Fleece<br>345 Park Avenue<br>New York, New York 10154<br>Attention: Kamran Moattar |
| and a copy to: | LeClairRyan<br>555 Long Wharf Drive, Eighth Floor<br>New Haven, Connecticut 06511<br>Attention: Niclas A. Ferland |
| If to Seller: | CIRCUIT CITY STORES, INC.<br>P.O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>P. O. Box 5695<br>Glen Allen, Virginia 23058-5695<br>Attention:  General Counsel |
| and a copy to: | MCGUIREWOODS LLP<br>One James Center<br>901 East Cary Street<br>Richmond, Virginia 23219<br>Attention: Edmund S. Pittman, Esq. |

The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

14

10.2    Entire Agreement.    This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3    Amendment. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4    Heading.    The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5    Time of Essence.    Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6    Governing Law.    This Agreement shall be governed by the laws of the Commonwealth of Virginia.

10.7    Successors and Assigns: Assignment.    This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller, such consent not to be unreasonably withheld.  No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement.  Purchaser may designate one or more entities to take title to the Property.  This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8    Invalid Provision.    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

15

10.9   Attorneys' Fees.     In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10  Multiple Counterparts.     This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11  No Recordation.     Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12  Merger Provision.     Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13  Brokers.     Except as contemplated by Section 6.7, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14  Consent to Jurisdiction of Bankruptcy Court.     THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HEREO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Buyer and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or

16

proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Buyer and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

[SIGNATURE PAGE ATTACHED]

17

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Michelle Mosier_
Name: _Michelle Mosier_
Title: _VP & Controller_

PURCHASER

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _____
Title: _____

18

IN WITNESS WHEREOF, each of the parties hereto have caused this Agreement to be executed by its duly authorized representatives as of the date set forth above.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

PURCHASER

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _____Mitzi Patin_____
Title: _____Secretary_____

18

The escrow terms and conditions of this Agreement are agreed to and accepted this _11th_
day of ___May___ , 2009.

ESCROW AGENT:

REPUBLIC TITLE OF TEXAS, INC.

By: _Cathy Moeller_
Name: _Cathy Moeller_
Title: _Senior Vice President_


Mailing Address:

2626 Howell Street, 10th Floor
Dallas, Texas _75204_
Attention: Cathy Moeller

19

EXHIBIT A

PLAT DEPICTING PROPERTY

(See attached)

FIRST AMENDMENT TO
PURCHASE AND SALE AGREEMENT

THIS FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT (this
"Amendment") is made effective as of the 1st day of June, 2009 (the "Amendment Effective
Date"), by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and
CARDINAL CAPITAL PARTNERS, INC., a Texas corporation ("Purchaser").

RECITALS

A.      Seller and Purchaser entered into that certain Purchase and Sale Agreement dated
as of May 11, 2009 (the "Purchase Contract"), pursuant to which Seller agreed to sell to
Purchaser and Purchaser agreed to purchase from Seller, subject to the terms and conditions set
forth in the Purchase Contract, certain real property located in the Virginia Beach Shopping
Center, 110 South Independence Boulevard, Virginia Beach, Virginia and more particularly
described in the Purchase Contract (the "Property").

B.      Through the course of its due diligence, Purchaser has determined that the
Property contains 0.5711 acres rather than the approximately 0.683 acres set forth in the
Purchase Contract, and Purchaser has requested that Seller agree, prior to the expiration of the
Due Diligence Period, to an adjusted purchase price for the Property of $439,000.00 (the
"Adjusted Purchase Price").

C.      The Due Diligence Period expires on the Amendment Effective Date.

D.      Seller and Purchaser have agreed to an extension of the Due Diligence Period for
the sole purpose of permitting Seller sufficient time to evaluate Purchaser's request for the
Adjusted Purchase Price.

AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual provisions
contained herein and other good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, the parties hereto agree as follows:

1.      Defined Terms.   Capitalized terms used herein but not otherwise defined herein
shall have the meanings assigned thereto in the Purchase Contract.

2.      Extension of Due Diligence Period.   Notwithstanding anything contained in
Section 4.2 of the Purchase Contract to the contrary, for the sole purpose of permitting Seller
sufficient time to evaluate Purchaser's request for the Adjusted Purchase Price, the Due
Diligence Period shall be extended so that the expiration of the Due Diligence Period shall be the
date which is seven (7) days following the Amendment Effective Date (the "Due Diligence
Period Extension"). If Seller fails to agree to Purchaser's request for the Adjusted Purchase
Price prior to the expiration of the Due Diligence Period Extension, Purchaser shall have the
right to terminate the Purchase Contract in accordance with Section 4.3 thereof.

3.    Title Examination and Property Inspections.  Purchaser has completed its examination of title to the Property and all other inspections Purchaser desires regarding the Property, and Purchaser hereby waives any right Purchaser may have to terminate the Purchase Contract pursuant to Section 4.2 and Section 4.3 thereof based upon the results of such title examination and inspections.

4.    Ratification of Purchase Contract.    Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

5.    Governing Law.  This Amendment shall be governed by the laws of the Commonwealth of Virginia.

6.    Multiple Counterparts.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

SELLER:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:    _Michell Mosier_
Name:  _Michelle Mosier_
Title:  _VP & Controller_

PURCHASER:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By:    _____
Name:  _MITZI PATTIN_
Title:  _Secretary_

2

SECOND AMENDMENT TO
PURCHASE AND SALE AGREEMENT

THIS SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "Amendment") is made effective as of the *12th* day of June, 2009 (the "Amendment Effective Date"), by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation ("Purchaser").

RECITALS

A.    Seller and Purchaser entered into that certain Purchase and Sale Agreement dated as of May 11, 2009, as amended by that certain First Amendment to Purchase and Sale Agreement dated effective as of June 1, 2009 (collectively, the "Purchase Contract"), pursuant to which Seller agreed to sell to Purchaser and Purchaser agreed to purchase from Seller, subject to the terms and conditions set forth in the Purchase Contract, certain real property located in the Virginia Beach Shopping Center, 110 South Independence Boulevard, Virginia Beach, Virginia and more particularly described in the Purchase Contract (the "Property").

B.    Seller and Purchaser have agreed to (i) a reduction in the purchase price for the Property, (ii) a reduction in the amount of the initial minimum overbid required to be made by a competing bidder for the Property and (iii) an extension of the date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract.

AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual provisions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Defined Terms.   Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned thereto in the Purchase Contract.

2.    Reduction in Purchase Price.   Notwithstanding anything contained in Section 2.1 of the Purchase Contract to the contrary, the Purchase Price for the Property shall be reduced from Five Hundred Twenty-Five Thousand and No/100 Dollars ($525,000.00) to Four Hundred Thirty-Nine Thousand and No/100 Dollars ($439,000.00).

3.    Reduction in Initial Minimum Overbid.   Notwithstanding anything contained in item (a) of the second sentence of Section 9.4 of the Purchase Contract to the contrary, the amount of the initial minimum overbid required to be made by a competing bidder for the Property shall be at least $464,000.00.

4.    Extension of Date for Entry of Sale Order.   Notwithstanding anything contained in item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract to the contrary, the

date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract shall be extended from the date which is thirty (30) days following the expiration of the Due Diligence Period to the date which is thirty (30) days following the Amendment Effective Date.

5.    Ratification of Purchase Contract.    Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

6.    Governing Law.  This Amendment shall be governed by the laws of the Commonwealth of Virginia.

7.    Multiple Counterparts.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

SELLER:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:    _Michelle Mosier_
Name:  _Michelle Mosier_
Title: _VP & Controller_

PURCHASER:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By:    _____
Name:  _____
Title: _____

2

date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract shall be extended from the date which is thirty (30) days following the expiration of the Due Diligence Period to the date which is thirty (30) days following the Amendment Effective Date.

     5.    <u>Ratification of Purchase Contract</u>.    Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

     6.    <u>Governing Law</u>.    This Amendment shall be governed by the laws of the Commonwealth of Virginia.

     7.    <u>Multiple Counterparts</u>.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

    IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

SELLER:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

PURCHASER:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _Mitzi Patin_____
Title: _Secretary_____

2

## THIRD AMENDMENT TO
## PURCHASE AND SALE AGREEMENT

THIS THIRD AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "Amendment") is made effective as of the 26th day of June, 2009 (the "Amendment Effective Date"), by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and CARDINAL CAPITAL PARTNERS, INC., a Texas corporation ("Purchaser").

## RECITALS

A.    Seller and Purchaser entered into that certain Purchase and Sale Agreement dated as of May 11, 2009, as amended by that certain First Amendment to Purchase and Sale Agreement dated effective as of June 1, 2009 and that certain Second Amendment to Purchase and Sale Agreement dated effective as of June 12, 2009(collectively, the "Purchase Contract"), pursuant to which Seller agreed to sell to Purchaser and Purchaser agreed to purchase from Seller, subject to the terms and conditions set forth in the Purchase Contract, certain real property located in the Virginia Beach Shopping Center, 110 South Independence Boulevard, Virginia Beach, Virginia and more particularly described in the Purchase Contract (the "Property").

B.    Seller and Purchaser have agreed to an extension of the date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual provisions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Defined Terms.  Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned thereto in the Purchase Contract.

2.    Extension of Date for Entry of Sale Order.  Notwithstanding anything contained in item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract to the contrary, the date by which the Bankruptcy Court must enter the Sale Order in order to prevent Seller and Purchaser from having the right to terminate the Purchase Contract pursuant to item (ii) of the fourth sentence of Section 9.4 of the Purchase Contract shall be extended to July 17, 2009.

3.    Ratification of Purchase Contract.    Except as expressly amended hereby, the provisions of the Purchase Contract shall remain in full force and effect in all respects.

4.    Governing Law.  This Amendment shall be governed by the laws of the Commonwealth of Virginia.

5.     <u>Multiple Counterparts</u>.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

SELLER:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By:     _____
Name:   _____
Title:  _____

PURCHASER:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By:     _____
Name:   Gil C. Besing
Title:  President

5.    Multiple Counterparts.    This Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement.

IN WITNESS WHEREOF, each of the parties hereto have caused this Amendment to be executed by its duly authorized representative as of the Amendment Effective Date.

SELLER:

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Michelle Mosier_
Name: _Michelle Mosier_
Title: _VP, Controller_

PURCHASER:

CARDINAL CAPITAL PARTNERS, INC.,
a Texas corporation

By: _____
Name: _____
Title: _____