Gregg M. Galardi, Esq.    Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.    Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP    One James Center
One Rodney Square    901 E. Cary Street
PO Box 636    Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

       - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:            :   Chapter 11
                 :
CIRCUIT CITY STORES, INC.,  :  Case No. 08-35653 (KRH)
et al.,            :
                 :
          Debtors.   :  Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' PRELIMINARY OBJECTION TO APPLICATION OF
INFOGAIN CORPORATION FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE PRIORITY CLAIM**

    The debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors")[1],

---

1  The Debtors and the last four digits of their respective taxpayer
   identification numbers are as follows: Circuit City Stores, Inc.
   (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,

*(cont'd)*

hereby file the Debtors' Preliminary Objection to Application of Infogain Corporation ("Infogain") for Allowance and Payment of Administrative Expense Priority Claim (the "Infogain Application" or the "Application") (D.I. 3286).  In support of the Objection, the Debtors respectfully represent as follows:

**BACKGROUND**

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    On January 12, 2009, the Court entered an order authorizing the Debtors to conduct auctions for a

---

*(cont'd from previous page)*
   Inc. (0875), Ventoux International, Inc. (1838), Circuit City
   Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
   Distribution Company of Virginia, Inc. (2821), Circuit City
   Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
   Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
   Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
   Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
   LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
   for Circuit City Stores West Coast, Inc. is 9250 Sheridan
   Boulevard, Westminster, Colorado 80031.  For all other Debtors,
   the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
   currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

sale or sales of the Debtors' businesses as a going concern or for liquidation (D.I. 1460).

3.   At the conclusion of the auction, the Debtors' determined that the highest and otherwise best bid was that of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC, and Tiger Capital Group, LLC (collectively, the "Agent").  On January 16, 2009, the Court approved the Agent's bid and authorized the Debtors to conduct going out of business sales at the Debtors' remaining stores (D.I. 1634).  The Agent commenced going out of business sales at the Debtors' remaining stores on January 17, 2009.

**B.    The Debtors and Infogain.**

4.   On August 27, 2007, Circuit City Stores, Inc. ("Circuit City") and Infogain (together with Circuit City, the "Parties") executed that certain master services agreement ("MSA"), pursuant to which Circuit City engaged Infogain to provide technology and business software consulting, implementation and application management services.  The MSA became effective on the date of execution, and in accordance with its terms, would remain in effect until such time

3

as it was terminated by either Circuit City or Infogain.
Infogain Application, Ex. A, MSA section 8.1.

5.    The MSA contemplated that the details and
scope of services to be provided to Circuit City by
Infogain on each project for which Infogain was engaged
would be defined and agreed to in writing by its own
statement of work (each a "SOW").  Each SOW together
with the MSA formed a separate agreement between Circuit
City and Infogain.

6.    Consequently, the agreement between
Infogain and Circuit City was structured such that the
MSA defined the basic terms and conditions of the
Parties' contractual relationship, and each SOW
described and defined the parameters of a specific
project.  Every SOW was required to reference the MSA,
but any individual SOW could also include additional
terms and conditions for that particular project.

C.    **The MSA.**

7.    Pursuant to Section 8.1 of the MSA, the
MSA could be terminated by either party upon 30 days
written notice.  The effective date of termination of
the MSA (the "Termination Date") is defined as 30 days

4

after written notice of termination is given.  Infogain
Application, Ex. A, MSA section 8.1.

8.   Additionally, Circuit City had the right
to terminate any SOW without penalty, which termination
would be effective upon written notice to Infogain.
Infogain Application, Ex. A, MSA section 8.6.

**D.   The SOW(S).**

9.   Throughout the course of their
relationship, and pursuant to the MSA, a total of seven
(7) different SOW(s) were executed by the Debtor and
Infogain at various times between August 27, 2007 and
November 1, 2008.  In its Application, Infogain seeks
administrative expenses based on work allegedly
performed under SOW numbers 4, 5, 6, and 7.

10.   SOW number 4 was made effective as of
July 28, 2008.  Pursuant thereto, Infogain reviewed and
refined the Retailer Point of Sale system architecture
so that it better aligned with the functions and
supplemental requirements of Circuit City.  The
approximate term of the project was three weeks, with an
end date of August 22, 2008.  The value of the project
was not to exceed $83,000.

11.  SOW number 5 was made effective as of
September 8, 2008.  Under the terms of SOW number 5,
Infogain was to perform architectural reviews on certain
of Circuit City's current retail software systems and
applications and propose solutions and designs for
enhancing strategic and technical efficiency.  The term
of the project described in SOW number 5 was
approximately 34 weeks, and the total amount of the
project was not to exceed $360,000.

12.  Sow number 6 was made effective as of
November 1, 2008.  Pursuant to SOW number 6, Infogain
was to create and maintain project plans to communicate
activities, time lines, and resource utilizations, which
project also included designing documents, software and
unit tests, systems integration testing, and status
updates.  The approximate term of the project was 26
weeks.  The total value of the project was not to exceed
$624,000.

13.  SOW number 7 was effective as of
September 22, 2008.  Pursuant to that SOW, Infogain was
to develop solutions for Retailer Point of Sale change
requests, defects, hot fixes, and enhancements.  The

6

approximate term of the project was 31 weeks.  The value

of the work performed by Infogain was not to exceed

$1,224,320.

14.  As of the Petition Date, three of the

SOW(s) executed by the Parties were still in effect, SOW

numbers 5, 6 and 7, each with an approximate termination

date of April 30, 2009.  Infogain continued its work in

connection with those SOW(s) after the Petition Date.

**E.    Debtors' Rejection of Infogain Agreements.**

15.  On or about January 16, 2009, Pat

O'Reilly of Circuit City sent an e-mail communication to

Ray Allen of Infogain providing that, "[a]s you have

heard by now, Circuit City will conduct a going out of

business sale. Effective immediately we will not need to

continue our development efforts with your team. While

this is sad news for our company, I want to take the

time to thank you for all your efforts."  Infogain

Application, Ex. J.

16.  The Debtors formally rejected the MSA and

any accompanying SOW(s) effective March 20, 2009,

pursuant to an order of the Bankruptcy Court dated March

31, 2009 (D.I. 2878).

      **F.   Infogain's Application for Allowance and
Payment of Administrative Expense Priority
Claim.**

      17.  On May 5, 2009, Infogain filed the
Application of Infogain Corporation for Allowance and
Payment of Administrative Expense Priority Claim.  The
Application included claimed expenses totaling
$683,013.02.  Infogain Application ¶¶ 5-6.

      18.  The Debtors have, to the best of their
ability based on the documentation submitted with the
Infogain Application, reconciled the asserted
administrative expense claims and the Debtors' records.
Based on that reconciliation, the Debtors categorize the
asserted claims as follows.

      19.  <u>Previously Paid Claims</u>:  The Debtors
records show that the Debtors have previously paid
claims relating to Invoice numbers 019615, 019700,
019713, 019714, 019715, and 019747 (the "Previously Paid
Claims").  <u>See</u> Infogain Application ¶ 6.  In total,
these previously made payments amount to $308,820.05.

      20.  <u>Potentially Valid Claims</u>:  The Debtors
records indicate that the claims associated with the
following invoice numbers are likely valid claims which

should be paid upon confirmation and the effective date
of a plan of liquidation:  Invoice numbers 019753,
019754, 019755, 019763, 019764, 019766, 019767, 019771,
019779, 019780, 019781, 019784 (the "Potentially Valid
Claims").[2]

21.  Disputed Claims:  The Debtors dispute the
validity of the asserted administrative expense claims
associated with the following invoice numbers:  Invoice
numbers 019773, 019774, 019775, 019776, 019777, 019778
(the "Disputed Claims").  The Disputed Claims relate to
administrative expenses asserted by Infogain based not
on goods or services provided to the Debtors during the
post-petition period, but rather on alleged contract
termination charges incurred by the Debtors in
connection with the alleged termination of the MSA on or
about January 16, 2009.[3]  Specifically, the Disputed
Claims consist of "amounts that would have been invoiced
by Infogain to the Debtor during the 30 day period

---

[2]  Certain of the Potentially Valid Claims are also Inadequate
Documentation Claims (as defined below) and should not be
considered valid claims unless and until proper supporting
documentation is provided by Infogain.

[3]  As further discussed below, the Debtors dispute that any such
termination occurred.

9

following the notice of termination," as well as travel
and relocation expenses incurred by the Infogain
consultants assigned to various Circuit City projects,
and costs incurred in reassigning those consultants to
different projects with other Infogain clients.  The
total amount of the Disputed Claims is $304,209.

22.  Inadequate Documentation Claims:  Infogain
has failed to submit adequate documentation in connection
with the following invoice numbers representing
administrative expense claims asserted pursuant to SOW
number 7:  Invoice numbers 019755, 019766, 019767, 019775,
019778, 019779, 019780 (the "Inadequate Documentation
Claims").  Specifically, SOW number 7 requires that
Infogain submit to the Debtors Individual Consultant
Certifications from each of the Infogain consultants
working on the project acknowledging certain
confidentiality and "work made for hire" obligations.
Infogain has failed to submit these Individual Consultant
Certifications for SOW number 7 in connection with its
Application.

**PRELIMINARY OBJECTION**

23.  By the Application, Infogain seeks allowance and payment of substantial administrative expense claims.  The Debtors respectfully submit that the Application should be denied or adjourned because it is premature and because certain of the asserted claims do not qualify for administrative expense treatment. Additionally, as further discussed below, the Debtors dispute certain of Infogain's factual allegations and legal conclusions, and certain necessary supporting documentation has not been submitted with the Application.  As such, additional factual development and/or discovery on these issues is necessary.

**<u>APPLICABLE AUTHORITY</u>**

I.    INFOGAIN HAS FAILED TO ESTABLISH THAT THE
      "TERMINATION DAMAGES" ASSERTED PURSUANT TO THE
      DISPUTED CLAIMS ARE WARRANTED UNDER THE TERMS OF
      THE MASTER SERVICES AGREEMENT.

      A.    Any "Termination Damages" Are Pre-Petition
            Unsecured Claims.

      24.    Under Bankruptcy Code section 365(d)(2),
a debtor in possession has until confirmation of a plan
to assume or reject any executory contract.  11 U.S.C. §
365(d)(2).  Until the debtor assumes an executory
contract, the non-debtor party is prevented from
enforcing the terms of that contract.  NLRB v. Bildisco
& Bildisco, 465 U.S. 513, 532 (1984) ("The filing of the
petition in bankruptcy means that the . . . agreement is
no longer immediately enforceable, and may never be
enforceable again."); see also In re FBI Distrib. Corp.,
330 F.3d 36, 43 (1st Cir. 2003) (noting that,
"[a]lthough during the Chapter 11 proceeding a
prepetition executory contract remains in effect and
enforceable against the nondebtor party to the contract,
the contract is unenforceable against the debtor in
possession unless and until the contract is assumed"
(emphasis in original)); In re El Paso Refinery, L.P.,
220 B.R. 37, 43 (Bankr. W.D. Tex. 1998) ("From the

moment of filing to the moment of assumption or
rejection, the non-debtor party is held to be barred
from enforcing the contract and its terms."); In re
Metro Transp. Co., 87 B.R. 338, 339 (Bankr. E.D. Pa.
1988) ("We hold that a formal assumption of an executory
contract by a debtor is required to render an executory
contract enforceable against a debtor.").

25.   Here, Infogain seeks to enforce the terms
of the MSA against the Debtors, prior to its assumption
or rejection, by asserting administrative expense
priority for the Disputed Claims on account of the
alleged "termination" of the MSA on or about January 16,
2009.[4]  Specifically, Infogain relies on Section 8 of the
MSA, relating to "Term and Termination" of the MSA and
SOWs, to argue that the alleged termination by Circuit
City triggered a contractual provision pursuant to which
Infogain should be awarded administrative expense claims
for work it did not perform, but "would have been
invoiced by Infogain to the Debtor during the 30 day

---

[4]   As further discussed below, the Debtors dispute that any such
      termination occurred.

13

period following the notice of termination."  Infogain
Application ¶8.

26.   However, as discussed above, the MSA was
not formally rejected by the Debtors until March 20,
2009.  Accordingly, for the period after the Petition
Date, through and until at least March 20, 2009,
Infogain was precluded from enforcing the MSA and its
terms against the Debtors.

27.   Moreover, the rejection of an executory
contract constitutes a pre-petition breach of the
contract, and the non-debtor party's damages resulting
from rejection are treated as a pre-petition claim and
receive the priority provided to general unsecured
creditors.  See 11 U.S.C. §§ 365(g)(1), 502(g); see also
In re Stewart Foods, Inc., 64 F.3d 141, 144 (4th Cir.
1995).  Thus, any damages incurred by Infogain due to
the Debtors' rejection of the MSA constitute pre-
petition unsecured claims.

28.   Accordingly, the Disputed Claims, if
allowed in any amount, should be treated as general
unsecured claims in the Debtors' bankruptcy cases.

**B.    Infogain Has Failed To Show It Is Entitled To
"Termination Damages."**

29.   As demonstrated above, the termination
penalty provisions of the MSA are not enforceable
against the Debtors.  However, even if those provisions
were enforceable against the Debtors, Infogain has
failed to show it is entitled to any claim on account of
the alleged "termination" of the MSA on or about January
16, 2009.

30.   Subject to further factual development,
the Debtors dispute that the January 16, 2009 email from
Circuit City to Infogain served to terminate the MSA.
The email at issue provides, in pertinent part, "[a]s
you have heard by now, Circuit City will conduct a going
out of business sale.  Effective immediately we will not
need to continue our development efforts with your
team."  Infogain Application, Ex. J.

31.   The email does not purport to terminate
either the MSA or any related SOW.  Instead, the email
appears to provide notice to Infogain that its services
would no longer be needed by Circuit City, allowing
Infogain to proceed so as to mitigate any damages that

might be incurred as a result of the eventual rejection of the MSA and SOWs.  Indeed, the MSA and SOWs were subsequently rejected by the Debtors effective March 20, 2009.

32.   Moreover, even if the email served as a notice of termination of the SOWs – which the Debtors dispute – the MSA authorizes the Debtors to terminate existing SOWs upon written notice to Infogain without incurring a penalty.  See Infogain Application, Ex. A, MSA section 8.6 ("Circuit City may terminate a SOW hereunder effective upon written notice to [Infogain].").

33.   Accordingly, Infogain is not entitled to any claim on account of the alleged "termination" of the MSA and SOWs.

C.   **The Inadequate Documentation Claims Should Be Disallowed.**

34.   Certain of the Disputed Claims and Potentially Valid Claims are asserted on account of SOW number 7.

35.   Pursuant to section 5 of SOW number 7, Infogain agreed to provide Circuit City with Individual

16

Consultant Certifications from each Infogain employee

and consultant working on the projects identified in SOW

number 7, wherein the employee or consultant would agree

to be bound by the confidentiality and "work made for

hire" provisions of the MSA among Infogain and Circuit

City.  Infogain Application, Ex. H, SOW No. 7.

36.   Pursuant to section 5 of SOW number 7,

Infogain and Circuit City agreed that "confidentiality

and Work Made for Hire concepts . . . are of the utmost

importance and are an integral part of this engagement."

Infogain Application, Ex. H, SOW No. 7.

37.   Infogain failed to submit with its

Application the Individual Consultant Certifications

required by SOW number 7.  Unless and until such

certifications are provided in support of the

Application, the Disputed Claims relating to SOW number

7 should be disallowed.

38.   Whether or not the Debtors may have

waived any such defense with respect to the Potentially

Valid Claims (i.e., those claims based on post-petition

work actually performed by Infogain) – and the Debtors

contend they have not waived any such defense – the

17

Debtors clearly have not waived any defense with respect

to the Disputed Claims.  The Disputed Claims are not

asserted based on work that was performed by Infogain,

but rather on work that might have been performed by

Infogain in the 30 days after the alleged January 16,

2009 email "termination" of the MSA and SOWs.

      39.  Accordingly, all Disputed Claims asserted

on account of SOW number 7 should be disallowed.

**II.  INFOGAIN HAS FAILED TO ESTABLISH THAT THE DISPUTED
CLAIMS ARE ADMINISTRATIVE EXPENSES UNDER BANKRUPTCY
CODE SECTION 503.**

      40.  Administrative expense claims under

Bankruptcy Code section 503(b)(1)(A) are limited to "the

actual, necessary costs and expenses of preserving the

estate."  11 U.S.C. § 503(b)(1)(A).  To grant an expense

administrative priority under Bankruptcy Code section

503(b), the Court must find that the expense was an

actual expense of the estate and that payment of the

expense is necessary to preserve the Debtors' estate.

See Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 866

(4th Cir. 1994) ("The modifiers 'actual' and 'necessary'

must be observed with scrupulous care[.]" (citation

omitted)).

41. As the party filing an administrative
claim, Infogain bears the burden of proving that the
Disputed Claims are entitled to administrative priority
under Bankruptcy Code section 503. See, e.g., In re
Merry-Go-Round Enterprises v. Simon Debartolo Group, 180
F.3d 149, 157 (4th Cir. 1999) (holding that the creditor
"has the burden of proving that its administrative
claim . . . is an actual and necessary expense"); Ford
Motor Credit Co. v. Dobbins, 35 F.3d at 866 (same).

42. Here, where the Disputed Claims are based
not on post-petition goods or services provided to the
Debtors, but rather on the termination provisions of a
pre-petition contract in the context of an alleged
termination of the MSA, Infogain has not, and indeed
cannot, show that the Disputed Claims are actual and
necessary expenses of the Debtors' estates.

43. Moreover, in addition to proving that the
Disputed Claims are "actual" and "necessary", to carry
its burden, Infogain must show that (1) the expense and
right to payment arise from a post-petition transaction
with the Debtors, and (2) the consideration supporting
the right to payment provides some benefit to the estate.

In re Merry-Go-Round Enterprises v. Simon Debartolo Group,
180 F.3d at 156; Stewart Foods v. Broecker (In re Stewart
Foods), 64 F.3d 141, 145 n.2 (4th Cir. Va. 1995); see
also CIT Commun. Fin. Corp. v. Midway Airlines Corp. (In
re Midway Airlines Corp.), 406 F.3d 229, 236 (4th Cir.
2005) (compiling cases that articulated substantially
similar standards).

44.   As demonstrated below, Infogain has failed
to satisfy both elements of the administrative expense
analysis with regard to the Disputed Claims.

### A.   Infogain Has Failed To Prove The Existence Of A Post-Petition Transaction With The Debtors.

45.   Courts have consistently held that post-
petition contractual damage claims arising from pre-
petition contracts are not entitled to administrative
priority. See, e.g., Einstein/Noah Bagel Corp. v. Smith
(In re BCE West, L.P.), 319 F.3d 1166, 1173 (9th Cir.
2003) (holding that a breach of contract claim resulting
from post-petition conduct, but arising from a pre-
petition contract, did not arise from a post-petition
transaction with the debtor); In re Sheehan Mem. Hosp.,
377 B.R. 63, 67 (Bankr. W.D.N.Y. 2007) (concluding that

an employment termination claim arose not from post-petition conduct, but from the execution of a pre-petition contract); In re Chateaugay Corp., 87 B.R. 779, 796 (Bankr. S.D.N.Y. 1988) ("Where the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as giving rise to a prepetition liability where the contract was executed prepetition.")

46.   Indeed, this Court previously recognized that this legal principle was consistent with Fourth Circuit law.   See In re US Airways Group, Inc., 296 B.R. 673, 681 (E.D. Va. 2003) (noting that the 9th Circuit Court of Appeals' decision in Einstein was consistent with Fourth Circuit law). See also, Stewart Foods v. Broecker (In re Stewart Foods), 64 F.3d at 146 ("A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition.")(quoting Matter of Oxford Management, Inc., 4 F.3d 1329, 1335 (5th Cir. 1993)); accord In re Dornier Aviation (North America), Inc., 2002 WL 31999222, *7 (Bankr. E.D. Va. 2002) ("The claim of a creditor arising under a

prepetition contract is simply a general unsecured claim

in the bankruptcy case even if the time for performance--

and hence, the breach--occurs post-petition.").

47.  Guided by this principle, it is evident

that the Disputed Claims are not entitled to

administrative priority under Bankruptcy Code section 503.

The MSA was executed August 27, 2007 (more than 1 year

before the Petition Date), and each of the SOWs were made

effective prior to the Petition Date.  The Disputed

Claims allegedly arise from the termination provisions of

these pre-petition agreements among the Debtors and

Infogain and, accordingly, are not entitled to

administrative expense treatment.  Infogain has failed to

satisfy the first element of the administrative claim

analysis.

**B.   Infogain Has Failed To Establish That The Debtors And Their Estates Received A Post-petition Benefit.**

48.  In addition to the foregoing, before an

administrative claim will be allowed, the movant must

establish that the Debtors and their estates received a

benefit.  In re Merry-Go-Round Enterprises v. Simon

Debartolo Group, 180 F.3d at 156; Stewart Foods v.

22

<u>Broecker (In re Stewart Foods)</u>, 64 F.3d at 145 n.2.  In
this regard, Infogain appears to allege that the Disputed
Claims represent post-petition services rendered at the
request of the Debtors, and as such, provided a benefit
to the Debtors' estates.  Infogain Application ¶ 8-10.

     49.  However, this argument is inadequate as to
the Disputed Claims.  First, Infogain cannot rely on mere
legal conclusions as a substitute for factual evidence to
satisfy its burden under Bankruptcy Code section 503(b).
<u>See</u>, <u>generally</u>, <u>Austin v. Big Ten Capital Management, LLC
(In re Austin)</u>, 2006 Bankr. LEXIS 2471 (Bankr. E.D. Va.
Sept. 21, 2006) ("Mere conclusions without factual
support are insufficient to state a claim upon which
relief can be granted.").

     50.  Second, the Disputed Claims consist of
"amounts that would have been invoiced by Infogain to the
Debtor during the 30 day period following the notice of
termination," as well as travel and relocation expenses
incurred by the Infogain consultants assigned to various
Circuit City projects, and costs incurred in reassigning
those consultants to different projects with other
Infogain clients.  The Debtors and their estates simply

cannot be said to have benefited from work that was billed to the Debtors but never performed, nor from Infogain's internal expenses relating to staffing matters. See, e.g., Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 866 (4th Cir. 1994) (holding that the debtor must receive a "concrete" benefit).

51.   Accordingly, there is no valid basis for treating the Disputed Claims as administrative expenses and the Infogain Application should be denied with respect to these claims.

## RESERVATION OF RIGHTS

52.   The Debtors do not waive and expressly reserve their rights to further object to the Infogain Application on any other grounds that applicable law permits and to amend and modify this preliminary objection to assert such other grounds as a further review of the applicable law and the facts obtained in discovery may support.  Moreover, the Debtors are currently engaged in an analysis of the potential preference liability of Infogain, which received numerous payments from the Debtors within the 90-day period preceding the Petition Date.  The Debtors

expressly reserve their rights to further object to the

Infogain Application in connection with Infogain's

potential preference liability.

WHEREFORE, the Debtors request the Court enter

an Order sustaining this Objection and granting such

other and further relief as the Court deems appropriate.

Dated: Richmond, Virginia
      July 16, 2009

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

– and –

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
Chris L. Dickerson, Esq.
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

– and –

MCGUIREWOODS LLP

/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel for Debtors and Debtors
in Possession

26