Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :    Chapter 11
                                :
Circuit City Stores, Inc.,      :    Case No. 08-35653(KRH)
et al.,                         :
                                :
            Debtors.            :    Jointly Administered
- - - - - - - - - - - - - - x

**DEBTORS' REPLY TO OBJECTION OF 444 CONNECTICUT, LLC TO
DEBTORS' PROPOSED CURE AMOUNT**

The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors"),[1] hereby submit this reply (this "Reply")

---

[1]  The Debtors and the last four digits of their respective taxpayer
     identification numbers are as follows: Circuit City Stores, Inc.
     (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
     Inc. (0875), Ventoux International, Inc. (1838), Circuit City
                                                              *(cont'd)*

to the Objection of 444 Connecticut Avenue, LLC

("Landlord"), to Debtors' Proposed Cure Amount (the "Cure

Objection").  In support of this Reply, the Debtors

respectfully represent:

## BACKGROUND

**A.    The Bankruptcy Cases.**

1.    On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue as debtors in

possession pursuant to Bankruptcy Code sections 1107 and

1108.

3.    On November 12, 2008, the Office of the

United States Trustee for the Eastern District of

Virginia appointed a statutory committee of unsecured

_____

*(cont'd from previous page)*
   Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
   Distribution Company of Virginia, Inc. (2821), Circuit City
   Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
   Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
   Sky Venture Corp. (0311), Prahs, Inc.(n/a), XSStuff, LLC (9263),
   Mayland MN, LLC (6116), Courcheval, LLC (n/a), Orbyx Electronics,
   LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
   for Circuit City Stores West Coast, Inc. is 9250 Sheridan
   Boulevard, Westminster, Colorado 80031.  For all other Debtors,
   the address is For all other Debtors, the address was 9950
   Mayland Drive, Richmond, Virginia 23233 and currently is 4951
   Lake Brook Drive, Glen Allen, VA 23060.

creditors (the "Creditors' Committee").  To date, no

trustee or examiner has been appointed in these chapter

11 cases.

        4.   On January 16, 2009, the Court authorized

the Debtors, among other things, to conduct going out of

business sales at the Debtors' remaining 567 stores

pursuant to an agency agreement (the "Agency Agreement")

between the Debtors and a joint venture, as agent (the

"Agent").  On January 17, 2009, the Agent commenced going

out of business sales pursuant to the Agency Agreement at

the Debtors remaining stores.  As of on or about March 8,

2009, the going out of business sales concluded.

**B.     The Lease and the Cure Dispute.**

        5.   The Landlord and Circuit City Stores, Inc.

are parties to a lease agreement dated January 12, 1998,

for premises located in Norwalk, Connecticut (the

"Lease," a copy of which is attached hereto as Exhibit A).

        6.   On February 19, 2009, this Court entered

an order under Bankruptcy Code sections 105(a), 363 and

365 and Bankruptcy Rules 2002, 6004, 6006 and 9014

(i) approving the bidding and auction procedures for sale

of certain nonresidential real property leases (the

753864.05-Chicago Server 2A                                    MSW - Draft July 16, 2009 - 5:27 PM

"Bidding Procedures"), (ii) setting sale hearings dates and (iii) authorizing and approving (a) sale of certain nonresidential real property leases free and clear of all interests, (b) assumption and assignment of certain unexpired nonresidential real property lease and (c) lease rejection procedures (D.I. 2242, the "Bidding Procedures Order") governing the disposition of the Debtors' real property leases, including the Lease.

7.    The Debtors were successful in marketing the Lease and received one bid.  Consequently, and in accordance with the Bidding Procedures Order, the Debtors listed the Lease on the cure schedule (the "Cure Schedule") of proposed cure amounts (the "Proposed Cure Amounts") filed on March 4, 2009 and posted the Cure Schedule on the website of the Debtors' claims and noticing agent.  The Proposed Cure Amount for the Lease was $78,299.00.

8.    On March 10, 2009, the Debtors held an auction (the "Auction") for the sale of the Lease.  At the conclusion of the Auction, the Debtors, in consultation with their advisors (and after consultation with representatives of the Creditors' Committee),

4

determined that the highest or otherwise best bid was
that of P.C. Richard & Son, Inc. (the "Assignee").  The
Landlord was so notified.

9.    On March 12, 2009, the Landlord filed the
Cure Objection asserting that the cure amount was other
than the Proposed Cure Amount (the "Cure Amount").  In
the Cure Objection, the Landlord asserted that the Cure
Amount for the Lease was $233,018.87.

10.   The Cure Objection was not resolved prior
to or at the sale hearing for the Lease, which took place
on March 13, 2009 (the "Sale Hearing").  Under these
circumstances, the Bidding Procedures Order dictated that
the Court conduct a scheduling conference at the Sale
Hearing to resolve the Cure Objection at a later date.
In the interim, the Debtors were required to pay the
undisputed portion of the Cure Amount (the "Undisputed
Cure Amount") for the Lease.  The disputed cure amount
(the "Disputed Cure Amount") was to be escrowed pending
an agreement of the Debtors and the Landlord or a final
nonappealable order.

11.   On March 17, 2009, the Court entered an
order approving the assumption and assignment of the

Lease to Assignee effective March 13, 2009 and adjourned the Cure Objection to March 20, 2009 (D.I. 2585, the "Sale Order").[2]

12.  Pursuant to the Sale Order, the Undisputed Cure Amount for the Lease was $174,747.13 and the Disputed Cure Amount was not more than $58,217.74.  After the Sale Order was entered, the Debtors and the Landlord agreed that the Undisputed Cure Amount was actually $131,378.90 and the Disputed Cure Amount was $17,253.00. The Debtors escrowed the Disputed Cure Amount by March 20, 2009 in accordance with the Sale Order.

**C.    The Disputed Cure Claim.**

13.  The Debtors and the Landlord agree that the Disputed Cure Amount is limited to the Landlord's alleged attorneys' fees and costs (the "Fees"), in the amount of $17,253.00, accounting for 34.2 hours of attorney time.  After review of the invoices provided by counsel to the Landlord ("Counsel") and attached hereto as <u>Exhibit B</u> (the "Bills"), the fees were charged on account several categories of services: (i) general

---

[2]   Ultimately, by agreement of the Debtors and the Landlord, the Cure Objection was adjourned until July 23, 2009.

conferences between Counsel and the Landlord and various
unidentified attorneys regarding unidentified issues,
accounting for approximately ten (10) hours (the "Generic
Conferences"); (ii) docket review and case status,
accounting for approximately three (3) hours (the "Docket
Review"); (iii) proof of claim preparation, accounting
for approximately five (5) hours (the "Proof of Claim
Services"); (iv) addressing issues related to the
assignment and cure of the Lease, accounting for
approximately fourteen (14) hours (the "Assignment
Services"); and (v) reviewing issues regarding payment of
stub rent and taxes ("Research" and collectively, the
"Services").

14.   The Bills do identify any time spent
preparing motions, objections, or pleadings -- other than
the Cure Objection.

## REPLY

15.   By this Reply, because the Disputed Cure
Amount is limited to the Fees, for the reasons stated
herein, the Debtors request that the Court overrule the
objection and deny the Landlord's claim for the Disputed
Cure Amount.

753864.05-Chicago Server 2A                                    MSW - Draft July 16, 2009 - 5:27 PM

**I.   THE LANDLORD IS NOT ENTITLED TO FEES UNDER SECTION 365(b)(1)(B) OR THE LEASE.**

16.   Bankruptcy Code Section 365(b)(1) provides, in pertinent part, as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> > (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default;  [and]
> >
> > (B)   compensates, or provides adequate assurance that the trustee will promptly compensates, a party other that the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default.

11 U.S.C. § 365(b)(1).  Thus, Bankruptcy Code section 365(b)(1)(B) requires that a debtor compensate the landlord for any actual pecuniary loss resulting from a default under an unexpired lease before assuming the lease.  See 11 U.S.C. § 365(b)(1)(B).

17.   In the Fourth Circuit, attorneys fees may <u>only</u> be recovered under section 365(b)(1)(B) if such fees are recoverable under the lease and applicable state law. See <u>In re Shangra-La, Inc.</u>, 167 F.3d 843, 849 (4th Cir.

1999) ("Entitlement to attorneys' fees . . . is dependent
on the terms of the lease and on state law; section
365(b)(1)(B) does not create an independent right to an
award of attorneys' fees."); see also In re M. Fine
Lumber Co. Inc., 383 B.R. 565, 569 (Bankr. E.D.N.Y. 2008)
("A landlord is entitled to recover attorneys' fees in
connection with lease assumption pursuant to section
365(b) only to the extent provided for in the lease.");
In re Crown Books Corp., 269 B.R. 12, 15 (Bankr. D. Del.
2001) (acknowledging that attorneys' fees are recoverable
as part of a cure claim only if the lease specifically
requires their payment).

### A.   Because There Has Been No Default Under the Lease, The Landlord Is Not Entitled To The Fees.

18.   Bankruptcy Code section 365(b)(1) makes
clear that a landlord may not be compensated upon
assumption of a lease unless there has been a default
under the lease.  See 11 U.S.C. § 365(b)(1)(B) ("If there
has been a default in an unexpired lease" the debtor must
compensate "for any actual pecuniary loss resulting from
such default.") (emphasis added); see also 3 COLLIER ON
BANKRUPTCY ¶ 365.05[1] (15th ed. rev. 2003) ("By its

terms, section 365(b) applies only when there has been a default."); In re Convenience USA, Inc., 2003 WL 23211573 at *3 (Bankr. M.D.N.C Dec. 9, 2003) (denying attorneys' fees and costs where no default under lease); In re Bon Ton Restaurant and Pastry Shop, Inc., 53 B.R. 789, 793 (N.D. Ill. 1985) ("If no default exists, section 365(b)(1) is inapplicable.").

19.   Presumably, the Landlord is relying on the Debtors' failure to pay November rent because "ipso facto" defaults clearly need not be cured.  11 U.S.C. § 365(b)(2)(A), (B) (the Debtors do not have to cure defaults in a lease that relates to "the insolvency or financial condition of the debtor at any time before the closing of the [chapter 11] case" or "the commencement of a case under [the bankruptcy] title.").  According to the Lease, however, the Debtors were not in default. Specifically, although the Debtors did not pay rent that came due on November 1, 2008, the Lease expressly provided for a grace period of ten (10) days after the Landlord notifies the Debtors that the rent was overdue, which expired, at the earliest, on November 11, 2009.

Lease, § 29(a).[3]  Because the grace period had not

started or expired as of the Petition Date and the

Debtors were prohibited from making payments on account

pre-petition rent as a result of their bankruptcy filings,

by failing to pay stub rent, the Debtors were not in

breach of the Lease as of the Petition Date or at anytime

thereafter.

20.   Moreover, the Debtors have made payment

for all obligations under the Lease, including real

estate taxes, that accrued and became due under the Lease

between the Petition Date and the Rejection Date; the

Landlord does not contend otherwise.   Consequently, there

has been no default under the Lease.   Therefore, under

section 365(b)(1) the Landlord is not entitled to the

Fees.   See, e.g., In re J.W. Fortune, Inc., 1999 WL 95529

at *6 (4th Cir. Feb. 17, 1999) (holding that a landlord

can recover attorneys' fees only when the fees were

incurred "because of a proven default by [the debtor]."

(emphasis added)); Rickets v. Kontras, 1985 WL 9935 at *5

---

[3]   The Debtors are not aware of and the Landlord has not provided a
copy of a notice under Lease section 29(a).   Accordingly, the
notice period arguably did not start running prior to the
Petition Date.

(Ohio App. Ct. Mar. 28, 1985) (refusing to invoke the attorneys' fees provision of lease because there was no breach of or default under the lease).

**B.**    **The Landlord Is Not Entitled To Fees Under The Lease.**

21.   Assuming, <u>arguendo</u>, the Debtors were in default under the Lease, the Landlord has failed to establish that it is entitled to Fees under the Lease, which is required under Bankruptcy Code Section 365(b)(1). <u>See</u>, <u>e.g.</u>, <u>Shangra-La, Inc.</u>, 167 F.3d at 849 ("Entitlement to attorneys' fees . . . is dependent on the terms of the lease and on state law; section 365(b)(1)(B) does not create an independent right to an award of attorneys' fees.").

22.   The Lease includes a fairly typical "prevailing party" attorneys' fee provision. Specifically, section 36(f) of the Lease provides as follows:

> In the event either party shall be required to commence or defend any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Lease, to commence or defend any action or proceeding in any way connected with this Lease or to seek a judicial declaration of rights under this Lease, the prevailing party in such

> action or proceeding shall be entitled to
> recover from or to be reimbursed by the other
> party for the prevailing party's reasonable and
> actual attorneys' fees and costs through all
> levels of proceedings.

Lease at § 36(f).  Based on this provision, the Lease

provides for reimbursement of attorneys' fees in two

discrete instances:  (i) if a party is "required to

commence or defend any action or proceeding . . . or seek

a judicial declaration of rights under the lease" or (ii)

if party is required "to seek a judicial declaration of

rights under the Lease."  Lease at ¶ 36(f).  As evident

from the description of Services, the Landlord has

neither commenced an action or proceeding nor sought a

judicial declaration.  Consequently, the Debtors are not

obligated to reimburse the Landlord for the Fees under

the Lease.

23.  Assuming, _arguendo_, the Landlord had

commenced an action or proceeding or sought a judicial

declaration, the Landlord is still not entitled to

reimbursement of the Fees because it has not prevailed in

any action or proceeding in the Debtors' cases.  Under

Connecticut law,[4] courts have held that a "prevailing party" is one in whose favor a judgment has been ordered. See Truegreen Landcare, LLC v. Elm City Development & Construction Services, LLC, 919 A.22 1077, 1079 (Conn. App. Ct. 2007); Wallerstein v. Stew Leonard's Dairy, 780 A.2d 916, 919 (Conn. 2001) (collecting interpretations of the terms "prevailing party" as "one who has been awarded some relief by the court," or a party "who has secured actual relief on the merits of his claim that materially alters the legal relationship between the parties").[5] Moreover, courts do not award attorney's fees or costs when a party prevails on only some issues.  See Ensign-Bickford Realty Corp. v. Hop Brook Corp., 1996 WL 6941000 at *4 (Conn. Super. Ct. Nov. 26, 1996)(denying attorneys'

---

[4]  Pursuant to section 30(j) of the Lease, the Lease is governed by Connecticut law.

[5]  Interpreting similar lease provisions, courts in this Circuit (and other circuits) have held that a landlord can recover attorneys fees' under 365(b)(1) only when the fees where incurred "because of a proven default by [the debtor]." In re J.W. Fortune, Inc., 1999 WL 95529 at *6 (4th Cir. Feb. 17, 1999) (emphasis added); see also In re Crown Books Corporation, 269 B.R. 12, 16 (Bankr. D. Del. 2001) (finding attorneys' fees were not allowable under lease providing fees for the "successful party" where none of the relief sought by landlord was granted); In re Parker, 269 B.R. 522, 531 (D. Vt. 2001) (denying recovery of attorneys' fees under lease where landlord did not prevail on the merits).

fees under lease because "although the [party] prevailed on some issues, it did not prevail as to many issues"). Similarly, courts do not award attorneys' fees and costs where parties stipulate to resolve claims or when both parties prevail on certain claims. See Berman v. Dominion Management Co., 859 N.Y.S.2d 407, 408 (N.Y. App. Div. 2008) (denying attorneys' fees because claimants were not prevailing party given mixed results of litigation, stipulations to resolve certain claims and abandonment of certain claims); V & J Inc. v. 2320 Route 112, LLC, 822 N.Y.S.2d 367, 368 (N.Y. Sup. Ct. 2006) (holding neither party was the prevailing party entitled to attorneys' fees where both sides prevailed on some of their claims). Therefore, even if this Court determined that the Cure Objection satisfied the requirement for commencing an action or proceeding or seeking a judicial declaration, the Debtors prevailed by obtaining entry of the Sale Order, which approved the assignment of the Lease -- the core relief sought by the Debtors.

24.   Moreover, the parties reached a consensual resolution relating to nearly all of the Undisputed and Disputed Cure Amounts; the sole remaining issue involves

approximately $17,000 of Fees stemming from a purported

cure amount totaling over $200,000.  Consequently, under

Connecticut law, the Landlord has failed to establish

that it was the prevailing party.

25.  Accordingly, under the Lease, the Landlord

is not entitled to the Fees and its request for payment

thereof should be denied.

**II.  THE LANDLORD HAS FAILED TO ESTABLISH THAT THE FEES
WERE REASONABLE.**

26.  Even if the Landlord were entitled to the

Fees, in order to recover attorneys' fees under the Lease

and applicable law, the Landlord must overcome its burden

to establish that it is seeking reasonable attorneys'

fees.  See Boleman Law Firm, P.C. v. U.S. Trustee, 355

B.R. 548, 553 (E.D. Va. 2006) ("The burden of proof as to

the reasonableness of the requested [attorneys' fees]

rests with the applicant.").

27.  In determining what is reasonable, courts

have traditionally be guided by several factors,

including "the time and labor required, the novelty and

difficulty of the questions involved, and the fee

customarily charged in the locality for similar

16

services." <u>Ullman, Perlmutter & Sklaver v. Byers</u>, 900

A.2d 602, 606 (Conn. App. Ct. 2006); <u>see also</u>, <u>Sorrentino</u>

<u>v. All Seasons Services, Inc.</u>, 717 A.2d 150 (Conn. 1998).

Courts may also consider the skill requisite to perform

the legal services properly, the amount involved and the

results obtained and the reputation and ability of the

attorney.  <u>See</u>, <u>e.g.</u>, <u>Malone v. Krieder</u>, 2006 WL 3491622

at *4 (Conn. Sup. Ct. Nov. 14, 2006).

28.   Among other things, courts have held that

"attorney fees may not be recovered for unnecessary

work." <u>Nestor v. Britt</u>, 834 N.Y.S.2d 458, 465-66 (N.Y.

Civ. Ct. 2007).  Moreover, time spent litigating over the

amount of attorneys' fees is not compensable. <u>See</u> <u>In re</u>

<u>2495 Broadway Supermarket, Inc.</u>, 97 B.R. 765, 767 (Bankr.

S.D.N.Y. 1989).

29.   First, it is difficult to evaluate the

reasonableness of the Fees due to the lack of detail in

the Bills; as mentioned above, a substantial portion of

the Fees were attributable to the Generic Conferences,

for which the Bills failed include even the general

subject matter.  Other items mentioned in the Bills

provide inadequate detail.

30.   Second, nearly half of the Fees are attributable to Assignment Services, which has ultimately boiled down to the Disputed Cure Amount -- just over $17,000, constituted entirely of the Fees.  As noted above, the Fees incurred in litigating over attorneys' fees are not recoverable.  And, since the Disputed Cure Amount relates entirely to the Fees, there was no dispute between the Landlord and the Debtors that necessitated the services resulting in the Fees.

31.   Third, the Landlord did not obtain any more favorable results because of Counsel's efforts in providing services associated with the General Conferences, Docket Review and Payment Demands.  Though Counsel spent significant time on these matters, the Landlord never disputed any actions taken (or not taken) by the Debtors, as evidenced by the fact that no motions or objections (other than the Cure Objection) were filed. Accordingly, the Fees attributable to these matters are unreasonable.

32.   Fifth, and finally, although the Proof of Claim Services may have been necessary for the Landlord to recover any amounts owed by the Debtors, assuming the

Lease was rejected, Counsel began preparing a proof of claim in early January, without having any sense of when, or if, the Lease would be rejected.[6]  Proceeding in this manner was not only inefficient, but also, as in clear now, constituted entirely unnecessary work.

33.   Accordingly, the Fees were unreasonable and payment thereof should be denied.

---

[6]   Pursuant to the Order Setting General Bar Date And Procedures For Filing Proofs Of Claims (D.I. 890), landlords had until the latest of (i) thirty (30) days after the date of the order, pursuant to Bankruptcy Code section 365, authorizing the rejection of such lease, (ii) any date set by another order of the Court or (iii) the General Bar Date (as defined in the Order Setting General Bar Date), January 30, 2009.

753864.05-Chicago Server 2A                    MSW - Draft July 16, 2009 - 5:27 PM

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) deny the Objection and (ii) grant the Debtors such other and further relief as is just and proper.

Dated: July 16, 2009
       Richmond, Virginia

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                     – and –

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Chris L. Dickerson, Esq.
                              155 North Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                     – and –

                              MCGUIREWOODS LLP


                              /s/ Douglas M. Foley_____
                              Dion W. Hayes (VSB No. 34304)
                              Douglas M. Foley (VSB No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and Debtors
                              in Possession

# EXHIBIT A

**(Lease)**

MSW - Draft July 16, 2009 - 5:27 PM

## **EXHIBIT B**

**(Bills)**