UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                      . Case No. 08-35653 (KRH)
                            .
                            .
                            .
CIRCUIT CITY STORES         . 701 East Broad Street
INC.,                       . Richmond, VA 23219
                            .
                            .
          Debtor.           . July 6, 2009
. . . . . . . . . . . . . . 2:04 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:             McGuireWoods LLP
                            By:  DOUGLAS FOLEY, ESQ.
                            9000 World Trade Center
                            101 W. Main St.
                            Norfolk, VA  23510

                            Skadden Arps Slate Meagher
                            & Flom LLP
                            By:  IAN FREDERICKS, ESQ.
                            One Rodney Sq.
                            Wilmington, DE 19899

For the Creditors
Committee:                  Tavenner & Beran PLC
                            By: PAULA S. BERAN, ESQ.
                            20 North Eighth Street
                            Second Floor
                            Richmond, VA  23219

Proceedings recorded by electronic sound recording, transcript
               produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

**APPEARANCES (Cont'd):**


For U.S. Trustee:          Office of the U.S. Trustee
                           By:  ROBERT B. VAN ARSDALE
                           701 East Broad Street, Suite 4304
                           Richmond, VA  23119


For Dollar Tree Stores:    Williams Mullen
                           By: WILLIAM SCHWARZSCHILD, III, ESQ.
                           1021 East Cary Street
                           Richmond, VA  23218

                           Hofheimer Gartlir & Gross, LLP
                           By:  SCOTT KIPNIS, ESQ.
                           530 Fifth Avenue
                           New York, NY  10036


For Creative Realty
Management LLC:            LeClairRyan
                           By:  CHRISTOPHER PERKINS, ESQ.
                           951 E. Byrd Street
                           Richmond, VA  23219

**J&J COURT TRANSCRIBERS, INC.**

1          COURTROOM DEPUTY:  All rise.  The United States

2   Bankruptcy Court for the Eastern District of Virginia is now in

3   session. The Honorable Kevin R. Huennekens presiding.  Please

4   be seated and come to order.

5          COURT CLERK:  The matter of Circuit City Stores,

6   Incorporated, hearing on Items 1 through 9, as set out on

7   debtors' agenda.

8          THE COURT:  Mr. Foley.

9          MR. FOLEY:  Good afternoon, Your Honor, Doug Foley

10  with McGuireWoods on behalf of the debtors.  Your Honor, with

11  me at counsel table is Ian Fredericks from Skadden Arps.  Also

12  with us in the courtroom today is Jim Marcum, CEO of Circuit

13  City, as well as Michelle Moser, who is the Principal Financial

14  Officer of Circuit City.

15         THE COURT:  All right.

16         MR. FOLEY:  Your Honor, we have a relatively short

17  agenda today.  There were a couple matters that I wanted to

18  bring to the Court's attention that are not on the agenda, if

19  we could address as preliminary procedural matter.

20         One is, Your Honor is aware, I spoke to your chambers

21  this morning about a motion to extend exclusivity with respect

22  to both the debtors and the committee being able to file and

23  solicit a plan of liquidation which we are in the process of

24  negotiating with the committee right now.  Exclusivity expires

25  Wednesday, July 8th, Your Honor.  We submitted with that motion

4

1  that we've set for the hearing on the 23rd, a bridge order that

2  would simply extend the exclusive periods for the committee and

3  for the debtors until the 23rd, at which point Your Honor can

4  rule on the motion in full.  But we, again, are hopeful that we

5  will be submitting a consensual joint plan of liquidation by

6  the end of the month.  We're trying to do that.  So, we would

7  ask the Court to enter that bridge order before Wednesday.

8       THE COURT:  All right.  Does any party wish to be

9  heard on the debtors' motion to enter the bridge order

10  extending exclusivity?

11       MS. BERAN:  Your Honor, for the record, Paula Beran

12  on behalf of the Official Committee of Unsecured Creditors.

13  Mr. Foley is correct in his representation that the debtor and

14  the committee are currently trying to negotiate the structuring

15  and concepts of a plan and the committee supports the entry of

16  the bridge order to get us through to the end of July, such

17  that we can continue discussions and negotiations.

18       THE COURT:  All right.  Thank you, Ms. Beran.

19       MS. BERAN:  Thank you, Your Honor.

20       THE COURT:  Does any other party wish to be heard in

21  connection with the debtors' motion?

22            (No audible response)

23       THE COURT:  All right, Mr. Foley.  The Court had

24  reviewed your filing and I will grant that motion and enter the

25  bridge order.  So, has that been submitted to me at this point?

**J&J COURT TRANSCRIBERS, INC.**

5

1          MR. FOLEY:  It has been submitted electronically

2  through the BOP system, Your Honor.

3          THE COURT:  All right, thank you.

4          MR. FOLEY:  Your Honor, another item that's, again,

5  not on the agenda today, but Your Honor gave us a hearing at

6  the last hearing in order to be able to sell a certain piece of

7  real estate located in Virginia Beach and we currently have a

8  hearing date of July 16th, at eleven o'clock for that one

9  matter. I know Your Honor's docket is busy that day.  One thing

10 that we would like to file today, to set for that hearing date,

11 which is a procedural matter only, is to set bidding procedures

12 for the sale processes for the remaining intellectual property

13 that the debtors have and we do not anticipate that there would

14 be any objections.  This would be procedural relief only.   To

15 the extent there was any objection of any nature that would

16 take up time on the Court's docket, we would move the matter to

17 the 23rd, but in order to get the process going, Stream Bank,

18 who is the professional advisors that are assisting the debtors

19 with the marketing and the sale of the remaining IP, it would

20 be helpful for them to have those procedures in place to help

21 solicit bids from interested parties.

22         THE COURT:  All right.  You may have that date.

23         MR. FOLEY:  Thank you, Your Honor.  Your Honor, with

24 respect to the items that are on the agenda, Item Number 1,

25 this is the motion by M&M Berman Enterprises for payment of the

**J&J COURT TRANSCRIBERS, INC.**

6

1  administrative claim.  We have resolved that matter and it can

2  be removed from the docket, Your Honor.

3         THE COURT:  It will be removed.

4         MR. FOLEY:  Your Honor, Item Number 2, again, this is

5  the motions by Federal Warranty and Assurant.  As Your Honor is

6  aware, we've been negotiating a global resolution with Federal

7  Warranty and Assurant regarding more matters that actually --

8  that are encompassed within their motion that we still are

9  hopeful will result in substantial sums coming back to the

10 estate.  There's been some complications relating to additional

11 parties that need to be brought into the discussions that were

12 either predecessors on the underwriting side, or on the

13 servicing side, with respect to these warranty contracts and

14 so, we're still trying to work through that.  In concept, we

15 still have the outlines of a global arrangement, but we just

16 need more time to get everybody on board.

17        So, they have requested and we have consented to

18 adjourn their motions until the July 23rd hearing date.

19        THE COURT:  And that will be adjourned then, to July

20 23rd.

21        MR. FOLEY:  Your Honor, Item Number 3, this is the

22 motion by the United States for recoupment with respect to the

23 analog TV devices.  Your Honor, we believe we'll be able to

24 resolve that, given some time to reconcile the amounts that the

25 government says may be owed to them and they've requested and

**J&J COURT TRANSCRIBERS, INC.**

7

1  we've consented to moving their hearing to the August 27th

2  omnibus hearing date, Your Honor.

3          THE COURT:  And, that'll be fine.  It'll be moved to

4  August 27.

5          MR. FOLEY:  Your Honor, Item Number 4, this is the

6  Town Square Plaza motion to amend their claim and to file a

7  late proof of claim.  As with the other motions of this nature,

8  Your Honor, they wanted to get it on file, but don't

9  necessarily want to have it heard immediately, so they have

10  requested, and we've agreed to adjourn to the July 23rd hearing

11  date.

12          THE COURT:  It'll be adjourned to July 23rd.

13          MR. FOLEY:  Your Honor, Items Number 5, 6, 7, 8 are

14  initial preliminary status hearings on several omnibus

15  objections to claims.  Item Number 5 is our seventh omnibus

16  objection that covers certain late claims.  Similarly, the

17  eighth objection, which is Item Number 6, also covers late

18  claims.  Item Number 7 is omnibus objection number nine, which

19  covers late and late 503(b)(9) claims.  And, finally, Your

20  Honor, Item Number 8 is omnibus objection number ten, which

21  covers several duplicative claims.

22          As Your Honor may be aware, the Clerk's Office has

23  been trying to keep up with docketing the responses.  We don't

24  believe all of them have been docketed yet, but what we would

25  ask the Court to do is, allow us to work with the Clerk's

**J&J COURT TRANSCRIBERS, INC.**

8

1  Office to make sure we pick up everybody who filed a response

2  so we could prepare appropriate orders and not inadvertently

3  disallow claims to which somebody filed a timely response.

4  And, we will also, again, work with those people who did

5  respond to see if we can't consensually resolve their response,

6  one way or the other, rather than bother the Court's time with

7  trying to deal with one off claim objections.  But we will work

8  with them and try to see if we can't resolve those.

9          So, we would suggest, Your Honor, that probably by

10 the end of the week we'll be able to submit orders that would

11 cover not only the claims for which parties did not file

12 responses that can be disallowed, but also an exhibit that

13 covers all of the responses that will be adjourned for further

14 status hearing, until the July 23rd hearing date, Your Honor.

15         THE COURT:  All right, very good.

16         MR. FOLEY:  Finally, Your Honor, before we get to

17 Item Number 9, which Mr. Fredericks will address the Court,

18 several omnibus objections that we filed, that Your Honor is

19 aware, raise the issue of whether or not something is a good,

20 under Section 503(b)(9) of the code.  Certain of the claimants

21 that filed claims, we believe, were asserting, essentially,

22 services or provided services and they were not goods and we

23 briefed that issue pretty thoroughly in that omnibus objection.

24 We have several responses that were filed that raised the issue

25 of what the appropriate standard is for the Court to apply in

**J&J COURT TRANSCRIBERS, INC.**

9

1  that context and whether or not the Court should adopt the UCC

2  definition of goods and/or whether the Court should follow the

3  Goody's line of precedent, which is Judge Sontchi's decision in

4  Delaware that applied what's referred to as the predominant

5  purpose test, or follow the <u>Plastak</u> line of cases in Michigan

6  which talked about whether or not you can splice a claim for

7  part services and part goods and still allow certain portions

8  of a claim to be qualified under 503(b)(9).

9        What we would suggest, Your Honor, as a procedure in

10  order to bring that issue to the Court for a ruling, is that

11  anybody who filed a response that raised that legal issue, we

12  would send a notice to and provide that anybody who wants to

13  further brief the issue, either through a reply or whatnot, do

14  so five business days before the August 27th omnibus hearing

15  date and that way everybody will have proper notice that the

16  Court will be asked by the debtors to make a ruling on those

17  legal issues which will help us, one way or the other,

18  reconcile and resolve the balance of those claims.

19        So, as procedural matter, that's how we would propose

20  to proceed if that pleases the Court.

21        THE COURT:  That's acceptable to the Court.

22        MR. FOLEY:  Thank you, Your Honor.  That leaves Item

23  Number Nine on the agenda, and Mr. Fredericks will be

24  addressing that to the Court.

25        THE COURT:  All right, thank you.

**J&J COURT TRANSCRIBERS, INC.**

1        MR. FREDERICKS:  Good afternoon, Your Honor, Ian

2   Fredericks of Skadden, Arps, Slate, Meagher & Flom on behalf of

3   the debtors.

4        Just by way of a little bit of background, as you may

5   recall, we were here in the beginning of June on an expedited

6   basis to get the sale assumption and assignment of a lease in

7   Bloomingdale, Illinois, assigned to Creative Realty Management

8   LLC.

9        Following entry of that order, there were some

10  disagreements among the parties and, ultimately, resulted in

11  the filing of this -- what I'll call the Rule 60(b) motion,

12  which was a motion to compel and/or a motion to vacate the

13  order.

14       I am pleased to report that at least with respect to

15  the landlord, Creative, the assignee and the debtors, we have

16  reached an agreement.  I was advised just before -- minutes

17  before the hearing that there may or not be an agreement with

18  the subtenant, Dollar Tree.

19       THE COURT:  I think Dollar Tree was the one that was

20  agreeing the last time we were here and it was everybody else

21  that was disagreeing.

22       MR. FREDERICKS:  Correct.  And it's amazing how the

23  world has changed so dramatically.  I have here a consensual

24  form of order that is still subject to review, in some minor

25  respects, concerning effective dates and things like that, or

11

1  actually when payment, you know, when funds will flow.  I guess

2  I'd like to present the Court with the parties' agreement in

3  principle.  I'll let Creative's counsel speak to the extent

4  they have any issues and then I guess to the extent the

5  subtenant is objecting, I guess they can be heard as well,

6  obviously.  I believe their Virginia counsel is in the

7  courtroom and either co-counsel, I believe, is on the phone.

8          The material terms of the agreement are that, first

9  it confirms a letter agreement between -- I'm sorry, a letter

10  from Dollar Tree that extended the sublease term through

11  February of 2015, conditioned on the debtors extending their

12  term under the over lease with Simon through the same date.

13          The second provision actually provides that the

14  debtors are deemed to have exercised that extension, thereby

15  extending the over lease with Simon, through February of 2015.

16          The next part of the agreement essentially revises

17  the Court's prior order.  It provides for an effective date

18  which was the date that the assignment would be effective, of

19  July 31st, 2009.  It provides that the form of estoppel that

20  was attached to the prior order is, for all intent and

21  purposes, being stricken and provided with a revised landlord

22  estoppel.

23          The revised landlord estoppel, in form, looks very

24  similar to the old estoppel.  The material changes are, it

25  confirms a new lease term of 2015; it provides that there are

**J&J COURT TRANSCRIBERS, INC.**

12

only nine extensions remaining.  Previously it provided ten,
having exercised one, we're down to nine.  It strikes certain
statements relating to the cure amount and I'll explain later
how we're dealing with the cure amount but it strikes those
statements; it confirms that rent has been paid through July
31st, 2009, and it confirms that there's no prohibition on
subleasing.

           We have agreed to the cure amount and the disputed
cure amount -- or the cure amount is $144,719.30, there is no
disputed cure amount.  It provides that the assignee is going
to pay the disputed cure amount to the landlord and -- or, I'm
sorry, is going to pay the cure amount to the landlord and is
going to pay us the difference between the cure amount and the
total consideration.  They're both being paid by wire.  The
date upon which those wires will be made is still something
we're just trying to work out.  Whether it'll happen before the
31st, on the 31st, most likely it'll happen on the 31st, given
that we're using wires.

           It provides that within two business days of receipt
of the cure amount, the landlord will provide the estoppel.
Having deleted the language from the estoppel basically saying
what estoppel used to provide was that upon payment of the cure
amount there would be no existing defaults.  Because the
landlord doesn't actually have to deliver the estoppel until
after the cure amount is paid, we are able to delete those

13

1   provisions.  That was basically just a timing issue.

2          And then finally it provides that the landlord, the

3   assignee, and the sub-lessee, currently Dollar Tree, will agree

4   to negotiate or engage in non-binding, good faith negotiations

5   concerning a non-disturbance subordination agreement.  This was

6   something that was requested by the assignee, and requested by

7   the subtenant.  The debtors and the landlord felt that this was

8   beyond something that would be appropriated in an assignment

9   order or in an estoppel, and as a middle ground, what the

10  parties had agreed to, what I guess the assignee, the debtors

11  and the landlord had agreed to was this type of concept.

12         In addition, the assignee requested that any

13  additional subtenants that may come about over the course of

14  the lease, the landlord would agree to similar non-binding,

15  good faith negotiations concerning such an agreement.

16         I believe that's all the material terms.  I would, I

17  guess, ask Creative's counsel, who I believe is in the

18  courtroom, to confirm that.

19         THE COURT:  All right, thank you, Mr. Fredericks.

20         MR. FREDERICKS:  Or tell me I'm wrong about

21  something.

22         MR. PERKINS:  Good afternoon, Your Honor, Chris

23  Perkins on behalf of Creative Realty Management, LLC, the

24  assignee under this transaction.

25         Mr. Fredericks is correct in his recitation of the

**J&J COURT TRANSCRIBERS, INC.**

14

1  revised terms of the deal.  Creative is, of course, the party

2  that's the target of the Rule 60 motion.  We were here last

3  time and agreed to continue it to give the parties a week or so

4  to continue to negotiate.  I think that time was well spent,

5  from Creative's perspective.  We were able to get revised

6  estoppel language that we're comfortable with, I appreciate the

7  debtors efforts in that regard over the last week in

8  accommodating us and trying to get us that point.  And, the

9  Court's indulgence as well in allowing us to get there and we

10 do support the current terms of the transaction.  We've

11 reviewed the revised order and we're prepared to sign off on

12 that.

13         THE COURT:  All right, so you're prepared to close

14 then?

15         MR. PERKINS:  We are and, in fact, I have the escrow

16 -- I have the funds to close in my escrow account and can wire

17 them immediately, depending on the terms of the order.  But I

18 do have the closing funds.

19         THE COURT:  It said that the date of payment with a

20 wire was going to be 7/31.

21         MR. PERKINS:  Well, I think we're still negotiating

22 that, but if that turns out to be that, I can certainly

23 accommodate it.

24         THE COURT:  Okay.  That's the outside date, I guess.

25         MR. PERKINS:  The outside date.

**J&J COURT TRANSCRIBERS, INC.**

1              THE COURT:  Okay, I understand.  Okay, very good.

2   Thank you, Mr. Perkins.

3              MR. PERKINS:  Thank you.

4              THE COURT:  Does any other party wish to be heard?

5   Mr. Schwarzschild, what happened?

6              MR. KIPNIS:  Your Honor, this is Scott Kipnis for

7   Dollar Tree Stores.

8              MR. SCHWARZSCHILD:  Your Honor, Mr. Kipnis, who is

9   with Hofheimer Gartlir & Gross, can advise the Court of

10  developments from the subtenant's perspective.  He has been

11  directly involved in the discussions with the landlord and the

12  assignee and Circuit City, so I would -- I understand Mr.

13  Kipnis is on the phone, so with the Court's indulgence, I'd

14  like to introduce Mr. Kipnis.

15             THE COURT:  All right, thank you.  Mr. Kipnis, are

16  you on the phone?

17             MR. KIPNIS:  Yes, sir.

18             THE COURT:  All right.  If you'd please identify

19  yourself for the record, and then you may proceed.

20             MR. KIPNIS:  Sure.  Scott Kipnis, Hofheimer, Gartlir

21  & Gross, Your Honor, counsel for Dollar Tree Stores.

22             THE COURT:  All right.

23             MR. KIPNIS:  Your Honor, this has moved very slowly

24  at first and then very quickly over the last couple days.  As

25  I've said to debtors' counsel, I've never seen a motion where a

1  debtor has sought to hold an assignee in contempt for failing

2  to close on a acquisition of the lease and in that time it's

3  given Dollar Tree some trepidation that Dollar Tree is not back

4  in the same position it's in now, three weeks from now, or four

5  weeks from now, if the assignee and the landlord can't reach

6  material agreement on what to do with the vacant space, and all

7  I've asked debtors' counsel for is a day or two to work out

8  with Simon some sort of agreement whereby we're not back before

9  Your Honor again if this things all blows up.

10       I understand Simon is supposed to be sending us an

11  e-mail response to an offer we made to try and resolve this

12  today.  We all had a status conference call this afternoon at

13  twelve o'clock and then Simon and Dollar Tree reconvened at one

14  o'clock, we've been on the phone right up until now, Your

15  Honor, trying to get this resolved.  But Dollar Tree at this

16  point can't say whether it accepts the form of this order

17  without waiting for a response from Simon, which I have yet to

18  get.

19       And given the fast circumstances that this has taken

20  on, Your Honor, and given the fact that this is not supposed to

21  close to the end of the month, I would ask Your Honor's

22  indulgence to give us an extra day or two to try to work out

23  what we perceive is a significant issue.  And that is, Your

24  Honor, we are carrying somewhere around 70 percent of the

25  freight of the over rent that the assignee is going to be

1  paying.  I believe the adequate assurance the assignee

2  demonstrated was Dollar Tree's sublease.  To this date, the

3  subtenant, Dollar Tree, never received a countersignature on

4  its estoppel letter which was a condition for the estoppel

5  letter to be effective.  So, I've yet to get that back from the

6  debtor.

7            I have also yet to, as I said, get a confirmatory

8  e-mail from Simon, the landlord, whether or not it accepts our

9  terms and our tenancy will not disturbed in the event of a

10  default between Creative and Simon.  And given the

11  circumstances, Your Honor, and these filings, excuse me for

12  having this trepidation, it's just a unique situation.

13            So, I guess in sum, Your Honor, I'm asking for a

14  couple days to try and work this out with Simon.  It may be

15  very well that we approve this form of order and this can go

16  forward as everyone contemplates, but it's not a simple cookie

17  cutter issue any longer.

18            THE COURT:  Help me understand what the issue is,

19  because I understand that Simon is in agreement with Creative

20  and with the debtor with regard to the adequate assurance

21  issues, so what is the issue that I'm missing here?

22            MR. KIPNIS:  Well, Your Honor, Simon has conveyed to

23  us they're not, albeit they're consenting to the order, they're

24  not thrilled with having a vacant empty space and not knowing

25  who the adjoining subtenant will be.  They've changed the form

1  of estoppel that was presented to Your Honor last week, or

2  whenever that last hearing was, Your Honor, that said -- it had

3  a paragraph number nine that said that Simon will execute a

4  non-disturbance agreement in favor of the subtenant or

5  sub-lessee which I took to mean Dollar Tree, Your Honor.  That

6  provision was struck in favor of a provision that the debtor

7  proposed which is that the parties would negotiate in good

8  faith and non-binding terms.

9        THE COURT:  Right, I understand that.

10       MR. KIPNIS:  And, that's a significant departure,

11 Your Honor, for me to consent to for my client on one hour's

12 notice, without having been able to discuss this adequately

13 with my client to determine if this is something that we can

14 live with and whether or not we deserve to be able to present

15 evidence to Your Honor that our rights are being negatively

16 affected, notwithstanding the debtors' valid intentions.

17       So, since this change did occur, I am trying to work

18 it out with Simon and I'm hopeful that I'll get a resolution

19 with Simon but I don't want to be bound by the terms of this

20 order without having an opportunity to ask Your Honor for some

21 additional relief, whatever that additional relief may be.

22       THE COURT:  All right, thank you.

23       MR. KIPNIS:  Thank you, Your Honor.

24       MR. SCHWARZSCHILD:  Your Honor, I think that to sum

25 it up, the concerns as I understand it, relate primarily to the

 1  non-disturbance issue and that is, as I understand it, a key

 2  issue for Dollar Tree.

 3            THE COURT:  All right.

 4            MR. SCHWARZSCHILD:  Thank you.

 5            THE COURT:  Thank you.

 6            MR. FREDERICKS:  Good afternoon, again, Your Honor,

 7  Ian Fredericks on behalf of the debtors.  I think what we have

 8  here, Your Honor, is a situation where basically somebody is

 9  trying to get more than what they're entitled to and

10  piggybacking along fairly straightforward relief the debtors

11  requested in their motion.

12            Let's be clear.  Let's take first a step back and

13  look at the three orders because what you just heard was

14  something about an order that was proposed as part of the

15  settlement discussion which I don't think is appropriate for

16  the Court to hear anyway, but setting that aside, you have the

17  Court's assignment order that was entered back at the beginning

18  of June which -- the estoppels that were attached to that, both

19  the estoppel from Simon, the landlord, and the estoppel from

20  Dollar Tree, made no mention whatsoever of any non-disturbance

21  agreement.  And if Your Honor would like to hear -- and I also

22  do have a witness in the courtroom to talk to these

23  non-disturbance issues, but setting that aside, that order made

24  no reference to this.

25            Then you have a proposed resolution that Creative

**J&J COURT TRANSCRIBERS, INC.**

1 sent around to the group of parties that are negotiating that

2 included a provision that provided for a non-disturbance

3 agreement, that the landlord would execute them.

4         Prior to a call that occurred last Wednesday, I

5 advised, I believe, Creative's counsel who, in turn may or may

6 not have advised Dollar Tree's counsel, that Simon had already

7 taken significant issue with that provision on a phone call,

8 during a phone call with me.

9         We then go to our call, on the phone, again, Simon

10 raises the issue and says that they are not executing the

11 estoppel in this form, but will agree to talk to Dollar Tree.

12 In a revised order circulated that night, the provision was

13 stricken. So, that he just received it this morning, or an hour

14 ago, he's been on notice of it now for probably about five

15 days, granted the holiday weekend, this was not something that

16 was new that came about this morning.

17         So, what you have here is him essentially -- what you

18 have is Dollar Tree essentially saying that now they're going

19 to hold up the transaction because they're not getting

20 something they're not entitled to under the lease, that's not

21 customary in an estoppel and was not provided for in any of the

22 Court's prior orders or in their request for relief -- I'm

23 sorry, their opposition to our request for relief.

24         So, I think that frames the non-disturbance, this

25 non-disturbance agreement issue appropriately.

**J&J COURT TRANSCRIBERS, INC.**

21

1          I guess my next point is basically that you have all

2   of the other parties here who are, essentially, on agreement on

3   terms, there was additional adequate assurance information over

4   just the lease, we provided tax returns for Creative Realty

5   Management to Simon, Simon did not object on the basis of

6   adequate assurance, Dollar Tree did not object on the basis of

7   adequate assurance, Dollar Tree has executed a form of

8   estoppel, the debtors have countersigned it.  If the estoppel

9   hasn't been provided to Dollar Tree at this point, it's just an

10  oversight.  I will make a representation to the Court that it

11  has been executed, they've been provided to Creative.  And so,

12  I don't see any reason to hold this up for a day or two at this

13  point.

14          THE COURT:  Was that the form of the estoppel

15  agreement that was part of the original Simon order?

16          MR. FREDERICKS:  Correct, it's the order that was

17  executed -- it's the one that was attached, had Dollar Tree's

18  signature on it as well.

19          THE COURT:  Okay.

20          MR. FREDERICKS:  So, unless Your Honor has any

21  questions, that would be it from the debtors.  I believe

22  Creative's counsel may want to speak to this issue as well.

23          THE COURT:  All right, thank you.

24          MR. FREDERICKS:  Thank you, Your Honor.

25          MR. PERKINS:  Chris Perkins, again, for Creative.

**J&J COURT TRANSCRIBERS, INC.**

22

1  Judge, I'll just add that this non-disturbance issue was one

2  that Creative brought up over the last week in the negotiation

3  process, something that we would have liked to have had as well

4  and we understand Dollar Tree's concern and why they want it

5  and Creative wanted as well.

6          It was clear that the landlord, Simon, in our

7  discussions was not prepared to give it to us.  We did receive

8  other changes to the estoppel and we agreed that we would

9  continue to talk about it later, after the order was entered

10 and negotiate in good faith, but it's a demand we initially

11 made and ultimately dropped to get the order entered.  And so,

12 we support having the transaction entered today.

13         THE COURT:  All right, thank you.  Mr. Kipnis, do you

14 have anything further?

15         MR. KIPNIS:  Yes, Your Honor.  I would like to add

16 that if the estoppel was countersigned, Dollar Tree was not

17 presented a copy of it.  I still don't see the prejudice, Your

18 Honor, with what's been transpiring, with waiting a day or two

19 to allow Dollar Tree and Simon to have a meaningful discussion.

20         Your Honor, if this goes forward and doesn't close

21 again, Dollar Tree is the one that's prejudiced.  We didn't

22 tell the debtor to make a contempt or sanctions motion against

23 Creative.  We didn't, excuse the pun, Your Honor, create this

24 present motion before you.  The opposition we filed, Your

25 Honor, was to -- was so much of the motion that sought to

**J&J COURT TRANSCRIBERS, INC.**

23

vacate the assignment order because Dollar Tree felt that the
assumption took place, that the assignment didn't necessarily
close.   That was the extent of our opposition.

I understand that the parties would like to get this
resolved, so would we.  All, again, Your Honor, I'm asking for
the day or two to try and see if we can agree unto the terms of
the language of the order which by counsel's own admission,
just got circulated prior to the hearing, and at this point I'm
not ready to say on the hour's notice, that we're able to
accept that language.

If Your Honor can indulge us with a conference call,
perhaps, if your schedule permits, or some other check date,
I'm sure and confident that Dollar Tree and Simon can resolve
the issues.

THE COURT:  You're in agreement, though, that the
original assignment order, the estoppels had no reference to
the non-disturbance agreement?

MR. KIPNIS:  Yes, Your Honor, but I was also under
the understanding that the original estoppel that was signed by
Dollar Tree was not countersigned by the debtor and if it was
signed without change, that may change my client's opinion, but
this is the first time during this hearing I've learned of this
and, again, would be unfair for me, without having an
opportunity to consult with my client and discuss the issues
now with them as to where we stand.

**J&J COURT TRANSCRIBERS, INC.**

24

1          THE COURT:  Well, it has been represented, though,

2     that it's been countersigned by --

3          MR. KIPNIS:  I understand that, Your Honor, but once

4     again, Your Honor, we've had I think seven or eight other

5     subleases that involve Circuit City where we've had to outlay

6     money or deal with issues of rejection and whether or not

7     365(h) applies and the like and I'm trying to avoid another

8     situation which we didn't create, and as I said, we didn't make

9     the motion with regard to compelling the assignee to be in

10    contempt or for sanctions for failing to close.  If, but for

11    that motion we wouldn't have had the trepidations we have.  But

12    now that motion has been made and the allegation has been made

13    that the assignee has not cooperated or wasn't prepared to

14    close or there's been some secret negotiations going on, all

15    we're trying to do, Your Honor, is to get understanding as to

16    where the parties sit and determine Simon's position with

17    regard to our status.

18         Had we known that this issue would have come up, Your

19    Honor, we wouldn't have necessarily have exercised our option

20    to renew the lease that we did on, I believe, the day of the

21    original hearing or the day before the original hearing, Your

22    Honor.  Otherwise, this lease would expire or sublease would

23    expire this year and it wouldn't -- our adequate assurance

24    which was, I guess, the credit of Dollar Tree for the next five

25    years, wouldn't have been able to be presented and I'm not

**J&J COURT TRANSCRIBERS, INC.**

1 saying at this point, Your Honor, whether we're seeking to

2 rescind that exercise, but I would like the opportunity, again,

3 to discuss the issue with Simon.

4          THE COURT:  All right, thank you Mr. Kipnis.

5          MR. KIPNIS:  Thank you.

6          THE COURT:  Mr. Fredericks, anything further?

7          MR. FREDERICKS:  Just very briefly, just to be clear,

8 the order with all of the language in it, as pertaining to

9 Dollar Tree, was not sent an hour before this hearing, that

10 order was sent last week and the terms of it were discussed

11 during the call.  So, counsel has had the order, it has been

12 over a holiday weekend and this morning, but this was not an

13 issue that was pushed upon counsel an hour ago.

14          THE COURT:  The question the Court has is, I just

15 want to be clear that the estoppel that has been -- with regard

16 to Dollar Store, that has now been countersigned by the debtor?

17          MR. FREDERICKS:  It has been countersigned, it was

18 countersigned shortly after the last hearing.

19          THE COURT:  Okay.

20          MR. FREDERICKS:  I'm sorry, the hearing on the

21 original assignment and it's just an oversight that it hasn't

22 gone to Dollar Tree but I've just advised another associate in

23 the firm to send it to Mr. Kipnis.

24          THE COURT:  Okay.  And today, what is it specifically

25 you're asking me to do?

**J&J COURT TRANSCRIBERS, INC.**

26

1          MR. FREDERICKS:  I guess today, Your Honor, what

2     we're asking you to do is, once we confirm the date provision,

3     the date on which funds will flow in the order, that we would

4     ask Your Honor to enter that order, basically resolving the

5     Rule 60 motion, according to the terms that I laid out.

6          THE COURT:  That you recited on the record.

7          MR. FREDERICKS:  Correct.

8          THE COURT:  All right, very good.  All right, the

9     Court is going to overrule the objection of Dollar Store and

10    the Court is going to grant the motion of the debtor and

11    approve the assignment, or resolution of the 60(b) issue.

12         And, I'd ask Mr. Foley, if you'd please submit an

13    order to that effect.

14         MR. FOLEY:  We will, Your Honor.

15         THE COURT:  All right.  Is there any other matter

16    that we need to bring up this afternoon?

17         MR. FOLEY:  I don't believe so, Your Honor, I think

18    that covers everything that was on the agenda or that we

19    intended to bring up that was not on the agenda.  Thank you,

20    Your Honor.

21         THE COURT:  All right, very good.  Thank you all.

22         COURT CLERK:  All rise.  Court is now adjourned.

23                         *  *  *  *  *

24

25

**J&J COURT TRANSCRIBERS, INC.**

27

# **C E R T I F I C A T I O N**

    I, ELAINE HOWELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Elaine Howell_____      Date: July 16, 2009

ELAINE HOWELL

J&J COURT TRANSCRIBERS, INC.


**J&J COURT TRANSCRIBERS, INC.**