# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| In re: | Chapter 11 |
| Circuit City Stores, Inc | Case No 08-35653 (KRH) |
| Et al, | |
| Debtors | Jointly Administered |



Reply to Order Establishing Omnibus Objection Procedures and
Approving the form and manner of Notice of Omnibus Objections

This letter is in reply to the Order Establishing Omnibus Objection filed 4/01/2009.

I worked for Circuit City Stores, Inc in Tampa, Florida from July 1993 through May 2001 and during that time I participated in the Circuit City retirement benefits and am requesting my claim be approved for payment.

Sharon Joyce Savary
2612 Kirkland Rd
Dover, FL 33527
(813) 727-3833
Social Security 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

Sincerely,

Sharon J. Savary

Case 08-35653-KRH    Doc 4190    Filed 07/21/09    Entered 07/22/09 10:20:26    Desc Main
                                    Document      Page 1 of 6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| In re: | | Chapter 11 |
| Circuit City Stores, Inc | | Case No 08-35653 (KRH) |
| Et al, | | |
| | Debtors | Jointly Administered |

Reply to Order Establishing Omnibus Objection Procedures and
Approving the form and manner of Notice of Omnibus Objections

This letter is in reply to the Order Establishing Omnibus Objection filed 4/01/2009.

I worked for Circuit City Stores, Inc in Tampa, Florida from 1988 through May 2001 and during that time I participated in the Circuit City retirement benefits and am requesting my claim be approved for payment. You have me listed as Sharon Savary (Joseph D. Cain). There are 2 separate claims that should be reviewed.

1.

Sharon Joyce Savary
2612 Kirkland Rd
Dover, FL 33527
(813) 727-3833
Social Security 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

2.
Joseph D. Cain
2612 Kirkland Rd
Dover, FL 33527
(813) 486-0481
Social Security 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

Sincerely,

Joseph D. Cain

**PBGC/Insurance Operations Department**
**P.O. Box 151750**
**Alexandria VA 22315-1750**

100-103I
July 01, 2009

PBGC Case Number:    21340500
Plan Name:    RETIREMENT PLAN OF CIRCUIT CITY STORES INC.

SHARON SAVARY
2612 KIRKLAND RD
DOVER FL 33527


Dear SHARON SAVARY:

The Pension Benefit Guaranty Corporation (PBGC), a US Government Agency, is now responsible for your pension plan. Within the next few months, you will receive more information about PBGC and a form to complete and return to us.

PBGC insures private pension plans like yours and protects benefits of workers and retirees covered by those plans. If a plan ends after a sponsoring employer has failed to put in enough money to pay all promised benefits, PBGC steps in to pay benefits, up to the limits set by Congress. These limits may require PBGC to pay less than your plan would have paid, had your employer continued to sponsor and fund the plan.

PBGC receives no funds from general tax revenues. To finance the pension insurance program, we take in premiums from plan sponsors, assets from terminated pension plans, and earnings from investments. These monies help us to pay your plan's benefits. Our website www.pbgc.gov provides more information about us. For answers to frequently asked questions regarding your plan, please visit www.pbgc.gov/circuitcity/.

PBGC reviews your plan's records to determine what benefits each person will receive. If you are receiving pension payments, these payments will continue without interruption during our review. Payments exceeding legal limits set by Congress will be reduced. If you are not receiving pension payments, we will pay you a benefit when you are eligible and apply to PBGC to begin payments. Until we complete our review of the plan records and calculate the benefits we can pay you under the law, the pension payments you receive are estimated payments.

To assist PBGC in completing its review and benefit calculation, PBGC on occasion requires information from the Social Security Administration (SSA). If this is necessary, PBGC will send you a form requesting your consent for PBGC to access SSA records on your behalf.

There is an IRS tax credit for health care insurance premiums called the Health Coverage Tax Credit (HCTC), which may apply to certain individuals who are 55 - 65 years of age and are receiving benefits from PBGC. This credit does not apply if you are entitled to coverage under Medicare Part A, enrolled in Medicare Part B or a state's Medicaid program. In cases where individuals are 65 or older and not eligible for Medicare, they may still be eligible for the credit. The HCTC is equal to 80 percent effective April 01, 2009 (previously 65 percent) of the premiums paid by you for qualified health insurance. **HCTC information is available from**

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**


003001020200

ANNUAL FUNDING NOTICE
For
Retirement Plan of Circuit City Stores, Inc.

Introduction

This notice includes important funding information about your pension plan ("the Plan"). This notice also provides a summary of federal rules governing the termination of single-employer defined benefit pension plans and of benefit payments guaranteed by the Pension Benefit Guaranty Corporation (PBGC), a federal agency. This notice is for the plan year beginning March 1, 2008 and ending February 28, 2009 ("Plan Year").

Funding Target Attainment Percentage

The funding target attainment percentage of a plan is a measure of how well the plan is funded on a particular date. This percentage for a plan year is obtained by dividing the Plan's Net Plan Assets by Plan Liabilities on the Valuation Date. In general, the higher the percentage, the better funded the plan. The Plan's funding target attainment percentage for the Plan Year, along with a statement of the value of the Plan's assets and liabilities for the same period.

|  | 2008 | 2007 | 2006 |
| --- | --- | --- | --- |
| 1. Valuation Date | 3/1/2008 | 3/1/2007 | 3/1/2006 |
| 2. Plan Assets |  |  |  |
| a. Total Plan Assets | 319,980,320 | Not applicable | Not applicable |
| b. Funding Standard Carryover Balance | 61,463,871 | Not applicable | Not applicable |
| c. Prefunding Balance | 0 | Not applicable | Not applicable |
| d. Net Plan Assets (a) − (b) − (c) = (d) | 258,516,449 | Not applicable | Not applicable |
| 3. Plan Liabilities | 262,740,089 | Not applicable | Not applicable |
| 4. At-Risk Liabilities | Not applicable | Not applicable | Not applicable |
| 5. Funding Target Attainment Percentage (2d)/(3) | 98.39% | Not applicable | Not applicable |

As explained below, credit balances may be applied in future years toward the contributions required by law. Because credit balances can be used in this way, the funding standard carryover balance and prefunding balance are subtracted from plan assets in determining the funding target attainment percentage. However, these credit balances do not affect the amount of assets available to pay plan benefits at the valuation date.

## Fair Market Value of Assets

Asset values in the chart above are actuarial values. Market values tend to show a clearer picture of a plan's funded status as of a given point in time. However, because market values can fluctuate daily based on factors in the marketplace, such as changes in the stock market, pension law allows plans to use actuarial values for funding purposes. While actuarial values fluctuate less than market values, they are estimates. As of February 28, 2009, the fair market value of the Plan's assets was $290,894,845. On this same date, the Plan's liabilities were $239,457,307.

## Participant Information

The total number of participants in the plan as of the Plan's valuation date was 21,891. Of this number, 6,407 were active participants, 1,589 were retired or separated from service and receiving benefits, and 13,895 were retired or separated from service and entitled to future benefits.

## Funding & Investment Policies

The law requires that every pension plan have a procedure for establishing a funding policy to carry out the plan objectives. A funding policy relates to the level of contributions needed to pay for promised benefits. As of March 1, 2009, the funding policy of the Plan was to make any contributions necessary to meet ERISA minimum funding standards.

Once money is contributed to the Plan, the money is invested by plan officials called fiduciaries. Specific investments are made in accordance with the Plan's investment policy. Generally speaking, an investment policy is a written statement that provides the fiduciaries who are responsible for plan investments with guidelines or general instructions concerning various types or categories of investment management decisions. The investment policy of the Plan is to provide exposure to long duration fixed income assets in a manner consistent with the long duration liabilities of the Plan.

In accordance with the Plan's investment policy, the Plan's assets were allocated among the following categories of investments, as of the end of the Plan Year. These allocations are percentages of total assets:

| Asset Allocations | Percentage |
|---|---|
| 1. Interest-bearing cash | 16% |
| 2. U.S. Government securities | 14% |
| 3. Corporate debt instruments (other than employer securities): | |
| Preferred | |
| All other | 19% |
| 4. Corporate stocks (other than employer securities): | |
| Preferred | |
| Common | 20% |
| 5. Partnership/joint venture interests | 6% |
| 6. Real estate (other than employer real property) | |
| 7. Loans (other than to participants) | |
| 8. Participant loans | |

participants. The plan must either purchase an annuity from an insurance company (which will provide you with lifetime benefits when you retire) or, if your plan allows, issue one lump-sum payment that covers your entire benefit. Before purchasing your annuity, your plan administrator must give you advance notice that identifies the insurance company (or companies) that your employer may select to provide the annuity. The PBGC's guarantee ends when your employer purchases your annuity or gives you the lump-sum payment.

If the plan is not fully-funded, the employer may apply for a distress termination if the employer is in financial distress. To do so, however, the employer must prove to a bankruptcy court or to the PBGC that the employer cannot remain in business unless the plan is terminated. If the application is granted, the PBGC will take over the plan as trustee and pay plan benefits, up to the legal limits, using plan assets and PBGC guarantee funds.

Under certain circumstances, the PBGC may take action on its own to end a pension plan, as it did for this Plan. Most terminations initiated by the PBGC occur when the PBGC determines that plan termination is needed to protect the interests of plan participants or of the PBGC insurance program. The PBGC can do so if, for example, a plan does not have enough money to pay benefits currently due.

## Benefit Payments Guaranteed by the PBGC

If a single-employer pension plan terminates without enough money to pay all benefits, the PBGC will take over the plan and pay pension benefits through its insurance program. Most participants and beneficiaries receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits that are not guaranteed.

The PBGC pays pension benefits up to certain maximum limits. The maximum guaranteed benefit is $4,500 per month, or $54,000 per year, payable in the form of a straight life annuity, for a 65-year-old person in a plan that terminates in 2009. The maximum benefit may be reduced for an individual who is younger than age 65. The maximum benefit will also be reduced when a benefit is provided to a survivor of a plan participant.

The PBGC guarantees "basic benefits" earned before a plan is terminated, which includes:

- Pension benefits at normal retirement age;
- Most early retirement benefits;
- Annuity benefits for survivors of plan participants; and
- Disability benefits for a disability that occurred before the date the plan terminated.

The PBGC does not guarantee certain types of benefits:

- The PBGC does not guarantee benefits for which you do not have a vested right when a plan terminates, usually because you have not worked enough years for the company.
- The PBGC does not guarantee benefits for which you have not met all age, service, or other requirements at the time the plan terminates.
- Benefit increases and new benefits that have been in place for less than one year are not guaranteed. Those that have been in place for less than five years are only partly guaranteed.