**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Circuit City Stores, Inc., et al.[1],** | ) | **Case No. 08-35653 (KRH)** |
| | ) | |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | |

**SECOND SUPPLEMENTAL DECLARATION OF CHRISTOS M. XYSTROS IN SUPPORT OF THE DEBTORS' APPLICATION TO RETAIN AND EMPLOY KPMG LLP AS AUDITORS AND TAX CONSULTANTS**
<u>**EFFECTIVE AS OF THE PETITION DATE**</u>

I, Christos M. Xystros, being duly sworn, deposes and says:

      1.      I am a Certified Public Accountant and a partner of KPMG LLP, a professional services firm ("<u>KPMG</u>"). KPMG is the United States member firm of KPMG International, a Swiss cooperative. I submit this declaration on behalf of KPMG in support of the application (the "<u>Application</u>")[2] in order to supplement KPMG's disclosures in connection with its engagement as auditors and tax consultants for the above captioned debtors and debtors-in-possession (the "<u>Debtors</u>"). This declaration hereby incorporates by reference the declaration of Christos M. Xystros dated December 12, 2008.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Circuit City Stores, Inc. (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875), Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia, Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs, Inc. (6796), Sky Venture Corp. (0311), Prahs, Inc. (n/a), XSStuff, LLC (9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics, LLC (3360), and Circuit City Stores PR, LLC (5512). The address for Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard, Westminster, Colorado 80031. For all other Debtors, the address is 9950 Mayland Drive, Richmond, Virginia 23233.

[2] Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Application.

1

2. On December 12, 2008, the Debtors filed an application with this Court for entry of an order authorizing the retention of KPMG as their auditors and tax consultants pursuant to sections 327(a) and 328(a) of the Bankruptcy Code *nunc pro tunc* to the Petition Date (the "Original Retention"). Pursuant to an Order dated December 23, 2008 (the "Retention Order"), the Application was approved.

3. Pursuant to the Retention Order, KPMG and the Debtors have entered into an additional engagement letter for the provision of the annual audits of the company's 401K plans and its pension plan, a copy of which is annexed hereto. As noted in the engagement letter, KPMG has agreed to provide the Debtors a fixed fee for these services.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of July, 2009.

*/s/ Christos M. Xystros*
_____
Christos M. Xystros
Partner
KPMG LLP
Dominion Tower
999 Waterside Dr
Norfolk, VA 23510-3310



KPMG LLP  
Suite 2000  
1021 East Cary Street  
Richmond, VA 23219-4023

Telephone   804 782 4200  
Fax              804 782 4300  
Internet       www.us.kpmg.com

April 20, 2009

Ms. Michelle Mosier  
Vice President and Controller  
Circuit City Stores, Inc.  
P.O. Box 5695  
Glen Allen, VA 23058-5695

Dear Ms. Mosier:

**PRIVATE**

This letter (the Engagement Letter) confirms our understanding of our engagement to provide professional services to the Circuit City Stores, Inc. 401(k) Plan, the Retirement Plan of Circuit City Stores, Inc., and the Circuit City Stores Puerto Rico Savings Plan (collectively, the Plans).

**Objectives and Limitations of Services**

*Audit Services*

We will issue a written report upon our audit of the Plans' financial statements and supplemental schedules as set forth in Appendix I.

We have the responsibility to conduct and will conduct the audits in accordance with auditing standards generally accepted in the United States of America with the objective of expressing an opinion as to whether the presentation of the financial statements, taken as a whole, conforms with U.S. generally accepted accounting principles and whether the supplemental schedules are fairly stated in all material respects in relation to the basic financial statements taken as a whole and in conformity with the Department of Labor's (DOL's) Rules and Regulations for Reporting and Disclosure under the Employee Retirement Income Security Act of 1974 (ERISA).

We will conduct the audits in accordance with auditing standards generally accepted in the United States of America except that, as permitted by Regulation 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA and as instructed by you, we will not perform any auditing procedures with respect to investment information prepared and certified to by Wachovia Bank, N.A., the trustee, other than comparing that information with the related information included in the financial statements and supplemental schedules. Because of the significance of the information that we will not audit, we will not express an opinion on the financial statements and supplemental schedules taken as a whole. The form and content of the information included in the financial statements and supplemental schedules, other than that derived from the information certified to by the trustee, will be audited by us in accordance with auditing standards generally accepted in the United States of America, and will be subjected to tests of your accounting records and such other procedures as we consider necessary in the circumstances to enable us to express an opinion as to whether they are presented in compliance with the DOL's Rules and Regulations for Reporting and Disclosure under ERISA.

KPMG LLP, a U.S. limited liability partnership, is the U.S. member firm of KPMG International, a Swiss cooperative.

KPMG

Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 2

Our audits of the financial statements and supplemental schedules are planned and performed to obtain reasonable, but not absolute, assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is a risk that material errors, defalcations or fraud (including fraud that may be an illegal act), prohibited transactions with parties in interest, other violations of ERISA rules and regulations, and other illegal acts may exist and not be detected by an audit performed in accordance with auditing standards generally accepted in the United States of America. Also, an audit is not designed to detect matters that are immaterial to the financial statements. The Plan Administration is responsible for establishing and maintaining a sound system of internal control, which is the best means of preventing such matters. Our report will be addressed to the Plan Administrator and will be in a form that is in accordance with the published rules and regulations of the DOL.

While our report may be sent to Circuit City Stores, electronically for your convenience, only the hard copy report is to be relied upon as our work product.

We cannot provide assurance that a limited scope opinion will be rendered. Circumstances may arise in which it is necessary for us to modify our report or withdraw from the engagement. In such circumstances, our finding or reasons for withdrawal will be communicated to those charged with governance.

You have not engaged us to prepare or review the Plans' Form 5500 filings with the DOL; however, the audited financial statements of the Plans are required to be filed with the Forms 5500. Professional standards require that we read the Plans' Forms 5500 prior to their filing. The purpose of this procedure is to consider whether such information, or the manner of its presentation, is materially inconsistent with the information, or the manner of its presentation, appearing in the financial statements. These procedures are not sufficient to nor intended to ensure that the form is completely and accurately prepared. In the event that our auditors' reports are issued prior to our having read the respective Plan's Form 5500, you agree not to attach such auditors' report to the financial statements included with the Form 5500 filing until we have read the completed Form 5500.

*Internal Control over Financial Reporting*

In planning and performing our audit, we will consider the Plans' internal control in order to determine the nature, timing, and extent of our audit procedures for the purpose of expressing an opinion on the financial statements and not to provide assurance on internal control.

The objective of our audit of the financial statements is not to report on the Plans' internal control and we are not obligated to search for significant deficiencies or material weaknesses as part of our audit of the financial statements. A material weakness is a significant deficiency, or combination of significant deficiencies, that results in more than a remote likelihood that a material misstatement of the financial statements will not be prevented or detected. A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely affects the entity's ability to initiate, authorize, record, process, or report financial data reliably in accordance with U.S. generally

Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 3

accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's financial statements that is more than inconsequential will not be prevented or detected.

**Our Responsibility to Communicate with Those Charged with the Plans' Governance**

While the objective of our audit of the financial statements is not to report on the Plans' internal control and we are not obligated to search for significant deficiencies or material weaknesses as part of our audit of the financial statements, we will communicate, in writing, significant deficiencies or material weaknesses to those charged with governance to the extent they come to our attention.

We will report to those charged with governance, in writing, the following matters:

- Corrected misstatements arising from the audit that could, in our judgment, either individually or in aggregate, have a significant effect on the Plans' financial reporting process. In this context, corrected misstatements are proposed corrections of the financial statements that were recorded by management and, in our judgment, may not have been detected except through the auditing procedures performed.

- Uncorrected misstatements aggregated during the current engagement and pertaining to the latest period presented that were determined by management to be immaterial, both individually and in aggregate.

- Any disagreements with management or other significant difficulties encountered in performance of our audits.

- Other matters required to be communicated by auditing standards generally accepted in the United States of America.

We will also read minutes, if any, of committee meetings for consistency with our understanding of the communications made to those charged with governance and determine that it has received copies of all material written communications between ourselves and management. We will also determine that the committee has been informed of 1) the initial selection of, or the reasons for any change in, significant accounting policies or their application during the period under audit, 2) the methods used by management to account for significant unusual transactions, and 3) the effect of significant accounting policies in controversial or emerging areas for which there is a lack of authoritative guidance or consensus.

To the extent that they come to our attention, we will inform the appropriate level of management about any illegal acts, unless they are clearly inconsequential, material errors in the financial statements and any instances of fraud, and we will also assess whether all identified prohibited party-in-interest transactions are included in the supplemental schedule of nonexempt transactions. Further, to the extent that they come to our attention, we will also communicate directly to the Plan Sponsor's audit committee about illegal acts that come to our attention, unless they are clearly

KPMG

Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 4

inconsequential, material errors in the financial statements and any instances that involve senior management or that, in our judgment cause a material misstatement of the financial statements.

As a part of our audits, we will perform certain procedures, as required by auditing standards generally accepted in the United States of America, directed at considering the Plans' compliance with applicable Internal Revenue Code (IRC) requirements for tax-exempt status, including the Plans' latest tax determination letter from the IRS. As we conduct our audits, we will be aware of the possibility that events affecting the Plans' tax status may have occurred. Similarly, we will be aware of the possibility that events affecting the Plans' compliance with the requirements of ERISA may have occurred. We will inform those charged with governance of any instances of tax or ERISA noncompliance that come to our attention during the course of our audits. However, our audits are not designed to nor are they intended to determine the Plans' overall compliance with applicable provisions of the IRC or ERISA.

If, during the performance of our audit procedures, circumstances arise which make it necessary to modify our reports or withdraw from the engagement, we will communicate to members of the Plan Sponsor's audit committee our reasons for withdrawal.

**Management Responsibilities**

The Plan Administrator is responsible for the fair presentation, in accordance with U.S. generally accepted accounting principles of the financial statements and all representations contained therein. This includes, among others, the responsibility (1) for making the fair value measurements and disclosures included in the financial statements as of the end of the Plan year, including determining the fair value of investments for which a readily determinable fair value does not exist and (2) for establishing appropriate user controls when plan operations include processes performed by service organizations. The audit of the financial statements does not relieve the Plan Administrator or those charged with governance of their responsibilities.

The Plan Administrator also is responsible for identifying and ensuring that the Plan complies with laws and regulations applicable to its activities, and for informing us of any known material violations of such laws and regulations. The Plan Administrator is also responsible for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal controls and procedures for financial reporting to maintain the reliability of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements. The Plan Administrator is also responsible for informing us, of which it has knowledge, of all significant deficiencies or material weaknesses in the design or operation of such controls and maintaining effective internal control over financial reporting to maintain the reliability of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements.

The Plans and Circuit City Stores, Inc. (the Plans' Sponsor) also agree that all records, documentation, and information we request in connection with our audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of

KPMG

Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 5

the Plans' and Plan Sponsor's personnel. As required by auditing standards generally accepted in the United States of America, we will make specific inquiries of management about the representations embodied in the financial statements and the effectiveness of internal control and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in forming an opinion on the financial statements. We may request written confirmations from the Plans' attorneys as part of this engagement, which may result in the Plan incurring costs for the attorney's response.

The Plan Administrator is responsible for adjusting the financial statements to correct material misstatements and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements being reported upon taken as a whole.

**Dispute Resolution**

Any dispute or claim arising out of or relating to this Engagement Letter or the services provided hereunder, or any other audit or attest services provided by or on behalf of KPMG LLP (KPMG) or any of its subcontractors or agents to the Plans or at its request, shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect ("CPR Arbitration Rules"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

Mediation, if selected, may take place at a location to be designated by the parties using Mediation Procedures of the International Institute for Conflict Prevention and Resolution, with the exception of paragraph 2 (Selecting the Mediator). Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.



Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 6

Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**Other Matters**

This letter shall serve as the Plans' authorization for the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between KPMG and the Plans and between KPMG and outside specialists or other entities engaged by either KPMG or the Plans. The Plans acknowledge that e-mail travels over the public Internet, which is not a secure means of communication and, thus, confidentiality of the transmitted information could be compromised through no fault of KPMG. KPMG will employ commercially reasonable efforts and take appropriate precautions to protect the privacy and confidentiality of transmitted information.

Further, for purposes of the services described in this letter only, the Plan Sponsor hereby grants to KPMG a limited, revocable, non-exclusive, non-transferable, paid up and royalty-free license, without right of sublicense, to use all names, logos, trademarks and service marks of the Plan Sponsor solely for presentations or reports to the Plan or for internal KPMG presentations and intranet sites.

KPMG is a limited liability partnership comprising both certified public accountants and certain principals who are not licensed as certified public accountants. Such principals may participate in the engagements to provide the services described in this letter.

While the audit reports may be sent to the Plan Sponsor electronically by the KPMG engagement partner for the Plan Sponsor's convenience, only the signed (electronically or manually) report constitutes the Plan Sponsor's record copy.

KPMG member firms located outside the United States and other third-party service providers operating under our supervision may also participate in providing the services described in this letter.

*Work Paper Access by Regulators and Others*

The work papers for this engagement are the property of KPMG. In the event KPMG is requested pursuant to subpoena or other legal process to produce its documents relating to this engagement for the Plan in judicial or administrative proceedings to which KPMG is not a party, the Plan shall reimburse KPMG at standard billing rates for its professional time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

We may also be requested to make certain work papers available to the DOL pursuant to authority given to it by law or regulation. If requested, access to such work papers will be provided under the supervision of KPMG personnel. Furthermore, upon request, we may provide photocopies of selected work papers to the DOL. The DOL may intend, or decide, to distribute the photocopies or information contained therein to others, including other government agencies. We agree to communicate to you on a timely basis any requests by the DOL for access to the work papers as part of its inspection process and when it desires direct contact with members of the audit committee or those charged with governance.

Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 7

\* \* \* \* \* \* \*

Our engagement herein is for the provision of annual audit services for the financial statements and for the periods described in Appendix I, and it is understood that such services are provided as a single engagement. Pursuant to our arrangement as reflected in this letter, we will provide the services set forth in Appendix I as a single engagement for each of the Plans' subsequent fiscal years until either the Plan Sponsor or we terminate this agreement, or mutually agree to the modification of its terms. The fees for each subsequent year will be annually subject to negotiation and approval by the Plan Administrator.

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us.

Very truly yours,

KPMG LLP

*Brian S. Davis*

Brian S. Davis
*Partner*

KPMG

Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 8

**ACCEPTED:**

Circuit City Stores, Inc.

Name        Ms. Michelle Mosier

Signature   *Michell Mosier*

Date        5/5/09

Appendix I

## Fees for Services

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

| | |
|---|---|
| Audit of the financial statements and supplemental schedule of Circuit City Stores, Inc. 401(k) Plan as of December 31, 2008, and for the year then ended, all of which are to be included in the Plan's Form 5500 filing with the DOL. | $26,000 |
| Audit of the financial statements and supplemental schedule of Circuit City Stores Puerto Rico Savings Plan as of December 31, 2008, and for the year then ended, all of which are to be included in the Plan's Form 5500 filing with the DOL. | $26,000 |
| Audit of the financial statements and supplemental schedules of the Retirement Plan of Circuit City Stores, Inc. as of February 28, 2009, and for the year then ended, all of which are to be included in the Plan's Form 5500 filing with the DOL. | $13,000 |

We will bill you in accordance with the following schedule:

| | |
|---|---|
| May 4, 2009 | $26,000 |
| June 1, 2009 | $26,000 |
| July 1, 2009 | $5,000 |
| August 1, 2009 | $5,000 |
| September 1, 2009 | remainder |

These fees are based on conducting the audits in the May 2009 timeframe (except for actuarial related matters pertaining to the Retirement Plan which are planned for the July/August 2009 timeframe) and also having requested supporting schedules available at the commencement of fieldwork.

The above estimates are based on the level of experience of the individuals who will perform the services. In addition, expenses are billed for reimbursement as incurred. Expenses for items such as travel, telephone, postage, and typing, printing, and reproduction of financial statements are in the above estimate. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to the client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken



Ms. Michelle Mosier
Circuit City Stores, Inc.
April 20, 2009
Page 10

into account in determining KPMG's standard billing rates and certain transaction charges which may be charged to clients.