Closing shall occur before the actual amount of utilities and all other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the apportionment of such utilities and other operating expenses shall be upon the basis of an estimate by Seller of such utilities and other operating expenses for such month. Subsequent to the Closing, when the actual amount of such utilities and other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the parties agree to adjust the proration of such utilities and other operating expenses and, if necessary, to refund or repay such sums as shall be necessary to effect such adjustment.

(c)    Seller and Purchaser shall use reasonable efforts to cause all sums due under that certain Declaration of Covenants, Conditions and Restrictions and Reciprocal Rights dated January 30, 2002 and recorded on January 30, 2002 as Document No. 2002-059049 (the "Declaration") in the Official Records of Riverside County, California (the "Official Records") to be prorated as of the Closing based upon information in the possession of Seller and Purchaser at Closing. Where Seller has paid any portion of the amounts due under the Declaration on an estimated basis subject to annual reconciliation, Seller and Purchaser shall agree upon a proration of the amounts due under the Declaration prior to the Closing such that Seller shall have paid those amounts due under the Declaration accruing before the Closing and Purchaser shall have paid those amounts due under the Declaration accruing on and after the Closing.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4    Closing Costs.    Seller and Purchaser shall each pay one-half of the escrow fee; provided, however, that neither Seller's nor Buyer's portion of the escrow fee and any other fees or costs of Escrow Agent shall exceed $2,000.00 in the aggregate. Seller shall pay all documentary transfer taxes payable in connection with the sale of the Property as are imposed by the state and county in which the Property is located, and Purchaser shall pay all documentary transfer taxes payable in connection with the sale of the Property as are imposed by the city in which the Property is located. Purchaser shall pay the title insurance premiums for its Title Policy for the Property (including any endorsements thereto), as well as the costs for any survey which Purchaser may wish to obtain. Except as otherwise provided herein, each party shall pay its own attorneys' fees. With regard to other costs of Closing, the parties shall bear the costs of recording and settlement as is the custom in Moreno Valley, California.

6.5    Seller's Obligations at the Closing.    The obligation of Seller to consummate the transaction contemplated hereunder is conditioned upon Purchaser's having performed its obligations under this Agreement. At least one (1) business day prior to the Closing, Seller shall deliver to Escrow Agent the following:

(a)    Sale Order.    A court certified copy of the Sale Order in a form acceptable for recordation in the Official Records and substantially similar to the form attached hereto as Exhibit E.

(b)    <u>Deed</u>. A grant deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances (the "<u>Deed</u>"), in the form attached hereto as <u>Exhibit B</u>.

(c)    <u>Foreign Person</u>.    An affidavit or certificates duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended, and is not subject to *withholding under Sections 18805 and 26131 of the California Revenue and Taxation Code.*

(d)    <u>Owner's Affidavit</u>.    An affidavit in the form attached hereto as <u>Exhibit C</u>.

(e)    <u>Bill of Sale</u>.    A bill of sale, duly executed by Seller, conveying any abandoned personal property and Excluded FF&E pursuant to Section 1.1 ("<u>Bill of Sale</u>"), in the form attached hereto as <u>Exhibit D</u>.

6.6    <u>Purchaser's Obligations at the Closing</u>.    The obligation of Purchaser to consummate the transaction contemplated hereunder is conditioned upon Seller's having performed its obligations under this Agreement. At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)    <u>Purchase Price</u>.    The balance of the Purchase Price and any Closing costs which are Purchaser's responsibility hereunder, plus or minus prorations as provided herein, by wire transfer of immediately available funds.

(b)    <u>Evidence of Authority</u>.    Such    organizational    and    authorizing documents of Purchaser as shall be reasonably required by the Title Company authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this *Agreement and any documents to be executed by Purchaser at the Closing.*

(c)    <u>Taxpayer I.D. Certificate</u>.    A *certificate duly executed by Purchaser* certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

6.7    <u>Escrow Agent's Duties Upon Closing</u>. When the Escrow Agent has received all documents and funds required for the Closing and has received written notification from Purchaser and Seller that all conditions to the Closing have been satisfied or waived, and when the Title Company is irrevocably committed to issue the Title Policy, then the Escrow Agent shall:

(a)    Record the Sale Order, the Grant Deed and any other documents which the parties may mutually direct to be recorded in the Official Records and shall obtain conformed copies thereof for prompt distribution to Purchaser and Seller;

(b)    Cause the Title Company to issue to Purchaser the Title Policy; 

12

(c)    Deliver to Purchaser (i) a conformed copy of each of the Grant Deed and Sale Order, (ii) the signed original Bill of Sale, and (iii) the appropriate escrow closing statement; and

(d)    Deliver to Seller (i) the Purchase Price, less Seller's share of the Closing costs (including applicable proration adjustments, if any), and (ii) the appropriate escrow closing statement.

6.8    Commission. Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty ("Broker"), and upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement. Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever. Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction. The provisions of the preceding sentence shall survive the Closing.

7.    RISK OF LOSS; EXISTING INSURANCE PROCEEDS

7.1    Condemnation.    If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a return of Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

7.2    Casualty.    Seller assumes all risks and liability for damage to or injury occurring to the Property by fire, storm, accident, or any other casualty or cause until the Closing has been consummated. If the Property, or any part thereof, suffers any damage in excess of Two Hundred Thousand and No/100 Dollars ($200,000.00) after the Effective Date and prior to the Closing from fire or other casualty, which Seller, at its sole option, does not repair prior to the Closing, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a refund of the Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event (i) all of Seller's right title and interest in and to the proceeds of any insurance covering such damage (less an amount equal to any out-of-pocket expenses and costs incurred by Seller to repair or restore the Property, to the extent the amount of such insurance does not exceed the Purchase Price, shall be assigned to Purchaser at the Closing, and (ii) the Purchase Price shall be reduced by the amount of Seller's deductible under its insurance policy, except to the extent Seller has paid any amounts on account of such deductible. If the Property, or any part thereof, suffers any damage less than Two Hundred Thousand and No/100 Dollars ($200,000.00) after the Effective Date and prior to the Closing, Purchaser agrees that it will consummate the Closing and accept the assignment of the proceeds of any insurance covering such damage and the Purchase Price shall be reduced by the amount of Seller's deductible under its insurance policy, except to the

13

*extent Seller has paid any amounts on account of such deductible. Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.*

7.3   California Civil Code Section 1662 Waiver. Seller and Purchaser each expressly waive the provisions of California Civil Code Section 1662 and hereby agree that the provisions of Sections 7.1 and 7.2 above shall govern the parties' obligations in the event of any damage or destruction to the Property or the taking of all or any part of the Property, as applicable.

8.   DEFAULT

8.1   Breach by Seller.   In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may elect to either (a) seek specific performance of Seller's obligations to sell the Property pursuant to the terms of this Agreement (*provided that Purchaser is ready, willing and able to deposit the entire Purchase Price (less the amount of the Deposit) into Escrow*), or (b) terminate this Agreement and receive a refund of the Deposit. In no event shall Purchaser be entitled to any remedy other than as set forth in the immediately preceding sentence, and in no event shall Seller be liable to Purchaser for any actual, punitive, speculative or consequential damages.

8.2   Breach by Purchaser. If Purchaser fails to comply with this Agreement for any reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole and exclusive remedy and relief hereunder and shall not be entitled to the remedy of specific performance and Purchaser shall not be liable to Seller for any actual, punitive, speculative or consequential damages. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. SAID AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY PURCHASER.  THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

Purchaser's initials                    Seller's initials

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

14

extent Seller has paid any amounts on account of such deductible. Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.

7.3    California Civil Code Section 1662 Waiver. Seller and Purchaser each expressly waive the provisions of California Civil Code Section 1662 and hereby agree that the provisions of Sections 7.1 and 7.2 above shall govern the parties' obligations in the event of any damage or destruction to the Property or the taking of all or any part of the Property, as applicable.


8.    DEFAULT

8.1    Breach by Seller.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may elect to either (a) seek specific performance of Seller's obligations to sell the Property pursuant to the terms of this Agreement (provided that Purchaser is ready, willing and able to deposit the entire Purchase Price (less the amount of the Deposit) into Escrow), or (b) terminate this Agreement and receive a refund of the Deposit. In no event shall Purchaser be entitled to any remedy other than as set forth in the immediately preceding sentence, and in no event shall Seller be liable to Purchaser for any actual, punitive, speculative or consequential damages.

8.2    Breach by Purchaser. If Purchaser fails to comply with this Agreement for any reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole and exclusive remedy and relief hereunder and shall not be entitled to the remedy of specific performance and Purchaser shall not be liable to Seller for any actual, punitive, speculative or consequential damages. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. SAID AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY PURCHASER. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

Purchaser's initials                    Seller's initials

14

9.    BANKRUPTCY ISSUES

9.1    Generally.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2    Filing a Sale Motion.    The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement.  Provided *Purchaser has not terminated or be deemed to have terminated this Agreement pursuant to Section 4.2 or Section 4.3 hereof,* then within two (2) business days after the earlier of the expiration of the Due Diligence Period or the written waiver by Purchaser of its termination rights under Sections 4.2 and 4.3, and the transfer of the additional deposit to the Escrow Agent, Seller at its sole cost and expense will file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "Sale Motion"). The *Sale Motion shall be in form and substance consistent with this Agreement, and Seller shall be* responsible for serving and providing notice of the Sale Motion and for all costs and expenses in association therewith.

9.3    Entry of Sale Order.    The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above. Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable. *Seller shall promptly inform Purchaser of the entry by the Bankruptcy Court of the Sale Order.*

9.4    Termination.    Purchaser acknowledges that the Seller intends to solicit "higher or better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least TWO MILLION THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($2,350,000.00); (b) *Purchaser and other qualified bidders will have a right to bid against the* initial and successive other overbids in minimum increments not to exceed FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00); (c) each initial overbid must be accompanied by a deposit in an amount equal to the total aggregate Deposit; (d) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (e) if an acceptable competing offer is received by Seller, Seller shall conduct an auction to *determine the highest or best offer for the Property and Purchaser shall be entitled to participate* in the auction. During the Due Diligence Period, Seller shall have the right to hold a one-day "open house" event for any prospective purchasers to physically examine the Property and

15

*improvements and Seller will use commercially reasonable efforts to give Purchaser not less than two (2) business days prior verbal and/or electronic mail notice of such "open house" event.* Seller shall not otherwise knowingly permit any prospective purchasers to physically examine the Property. *The last day for submission of higher or better offers will be fixed by the Seller or established by order of the Bankruptcy Court.* Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to September 30, 2009 (the "Outside Date"). If this Agreement is terminated by Seller as provided in this Section 9.4, or because the Bankruptcy Court will not enter the Sale Order prior to the Outside Date, Escrow Agent shall disburse the Deposit to Purchaser and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. In addition, if Purchaser is not permitted to purchase the Property through the Bankruptcy Court proceedings, then, in addition to the Deposit being disbursed to Purchaser, Seller shall reimburse Purchaser for its reasonable out-of-pocket third-party due diligence expenses and reasonable attorneys' fees and costs incurred in connection with this Purchase Agreement, in an amount not to exceed [Thirty-Five Thousand and No/100 Dollars ($35,000.00)] in the aggregate.

10.    MISCELLANEOUS

10.1    Notices.    All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below. For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

<div style="margin-left:2em">

If to Purchaser:    99¢ Only Stores
4000 Union Pacific Avenue
City of Commerce, CA 90023
Attention: Real Estate Department

with a copy to:    Greenwald Pauly Foster & Miller, APC
1299 Ocean Avenue, Suite 400
Santa Monica, CA 90401
Attention: Christy M. Morcomb, Esq.

If to Seller:    If sent by nationally recognized overnight delivery service or
delivered personally:

</div>



16

CIRCUIT CITY STORES WEST COAST, INC.
4951 Lake Brook Drive
Glen Allen, Virginia 23060-9279
Attention: Vice President of Real Estate

If sent by certified or registered mail, return receipt requested:
CIRCUIT CITY STORES WEST COAST, INC.
P.O. Box 5695
Glen Allen, Virginia 23058-5695
Attention: Vice President of Real Estate

with a copy to:    If sent by nationally recognized overnight delivery service or
delivered personally:
CIRCUIT CITY STORES WEST COAST, INC.
4951 Lake Brook Drive
Glen Allen, Virginia 23060-9279
Attention: General Counsel

If sent by certified or registered mail, return receipt requested:
CIRCUIT CITY STORES WEST COAST, INC.
P.O. Box 5695
Glen Allen, Virginia 23058-5695
Attention: General Counsel

and a copy to:    KENNERLY, LAMISHAW & ROSSI, LLP
707 Wilshire Blvd., Suite 1400
Los Angeles, CA 90017
Attention: Matthew I. Lamishaw, Esq. and Anne S. Moyer, Esq.
Fax No.: (213) 312-1266 (for purposes of Section 4.1 and Section
4.2 hereof)

The addresses to which notices and demands shall be delivered or sent may be changed
from time to time by notice served, as hereinbefore provided, by either party upon the other
party.

10.2    Entire Agreement.    This Agreement embodies the entire agreement between
the parties relative to the subject matter hereof, and there are no oral or written agreements
between the parties, nor any representations, promises or inducements made by either party
relative to the subject matter hereof, which are not expressly set forth herein.

10.3    Amendment.    This Agreement may be amended only by a written instrument
executed by the party or parties to be bound thereby.

17

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

10.4    Heading.    The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5    Time of Essence.    Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6    Governing Law.    This Agreement shall be governed by the laws of the State of California and the laws of the United States pertaining to transactions in such State.

10.7    Successors and Assigns: Assignment.    This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns.   Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller.  No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement.  This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8    Invalid Provision.    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

10.9    Attorneys' Fees.    In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10    Multiple Counterparts.    This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11    No Recordation.    Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall

18

CCSWCI: Moreno Valley, CA Sale [5/15/2009]

constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12 <u>Merger Provision</u>.   Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13 <u>Brokers</u>.   Except as contemplated by Section 6.8, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14 <u>Consent to Jurisdiction of Bankruptcy Court</u>.   THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

| SELLER | PURCHASER |
|---|---|
| CIRCUIT CITY STORES WEST COAST, INC., a California corporation | 99¢ ONLY STORES, a California corporation |
| | By: _____ |
| By: _____ | Name:   Richard J. Frick |
| Name: _____ | Title:   Vice President, Real Estate |
| Title: _____ | |
| | Date:   May 27, 2009 |
| Date:   May ____, 2009 | |

*CCSWCI: Moreno Valley, CA Sale [5/15/2009]*

constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12 <u>Merger Provision</u>.   Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13 <u>Brokers</u>.   Except as contemplated by Section 6.8, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14 <u>Consent to Jurisdiction of Bankruptcy Court</u>.   THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HERETO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above. Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

| SELLER | PURCHASER |
|---|---|
| CIRCUIT CITY STORES WEST COAST, INC., a California corporation | 99¢ ONLY STORES, a California corporation |
| By: _Michelle Mosier_ Name: _Michelle Mosier_ Title: _VP & Controller_ | By: _[signature]_ Name: Richard J. Frick Title: Vice President, Real Estate |
| Date: May 27, 2009 | Date: May 27, 2009 |

The escrow terms and conditions of this Agreement are agreed to and accepted this _____ day of May, 2009.

ESCROW AGENT:

STEWART TITLE OF CALIFORNIA

By: _____
Name: _____
Title: _____

Mailing Address:

16830 Ventura Boulevard, Suite M
Encino, California 91436
Attention: Andrea Mendoza