Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &       MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - - x
In re:                            :    Chapter 11
                                  :
CIRCUIT CITY STORES, INC.,        :    Case No. 08-35653 (KRH)
et al.,                           :
                                  :
                 Debtors.         :    Jointly Administered
- - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS
105 AND 363 AND BANKRUPTCY RULES 2002 AND 6004
(A) AUTHORIZING SELLER TO ENTER INTO AGREEMENT FOR SALE
OF CERTAIN REAL PROPERTY IN LOS ANGELES, CALIFORNIA
SUBJECT TO HIGHER OR OTHERWISE BETTER BIDS,
(B) APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF
ALL INTERESTS AND (C) GRANTING RELATED RELIEF**

         Circuit City Stores, Inc. (the "Seller," and

collectively with the debtors and debtors in possession

in the above-captioned jointly administered cases, the

"Debtors")[1] hereby move (the "Motion"), pursuant to

sections 105 and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rules 2002 and 6004 of

the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of an order

(A) authorizing the Seller to enter into an agreement

with the Purchaser (as defined herein) for the sale (the

"Sale") of certain of the Seller's real property located

at 1332-1406 Virgil Place in Los Angeles, California

(the "Property"), a copy of which is attached as Exhibit

A to the Sale Order (the "Agreement"),[2] subject to higher

or otherwise better proposals, (B) approving the Sale

free and clear of all Liens (as defined below),

---

[1]   The Debtors and the last four digits of their respective taxpayer
      identification numbers are as follows: Circuit City Stores, Inc.
      (3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
      Inc. (0875), Ventoux International, Inc. (1838), Circuit City
      Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
      Distribution Company of Virginia, Inc. (2821), Circuit City
      Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
      Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
      Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
      Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
      LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
      for Circuit City Stores West Coast, Inc. is 9250 Sheridan
      Boulevard, Westminster, Colorado 80031.  For all other Debtors,
      the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
      currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

[2]   Capitalized terms used but not otherwise defined herein have the
      meanings ascribed to them in the Agreement.

2

(C) granting related relief.  In support of the Motion,

the Seller respectfully represents as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

these cases and this Motion in this District is proper

under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief

requested herein are Bankruptcy Code sections 105 and

363 Bankruptcy Rules 2002 and 6004.

### BACKGROUND

A.    The Bankruptcy Cases.

3.     On November 10, 2008 (the "Petition

Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to manage and

operate their businesses as debtors in possession

pursuant to Bankruptcy Code sections 1107 and 1108.

5.     On November 12, 2008, the Office of the

United States Trustee for the Eastern District of

Virginia appointed a statutory committee of unsecured

creditors (the "Creditors' Committee").  To date, no trustee or examiner has been appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the Debtors, among other things, to conduct going out of business sales at the Debtors' remaining 567 stores pursuant to an agency agreement (the "Agency Agreement") between the Debtors and a joint venture, as agent (the "Agent").  On January 17, 2009, the Agent commenced going out of business sales pursuant to the Agency Agreement at the Debtors remaining stores.  As of on or about March 8, 2009, the going out of business sales concluded.

**RELIEF REQUESTED**

7.    By this Motion, the Seller seeks an order (A) authorizing the Seller to enter into the Agreement in connection the Sale of the Property, subject to higher or otherwise better proposals, (B) approving the of the Sale of the Property free and clear of all Liens, and (C) granting related relief (the "Sale Order").

4

**BASIS FOR RELIEF**

**A.    Events Leading To The Sale.**

8.    In light of the failure to obtain any feasible going concern bids and the decision to liquidate the Debtors' inventory through going-out-of-business sales, as described above, the Seller has been left with various assets -- including the Property -- for which it has no remaining use.  In contrast, the sale of such assets, including the Sale of the Property, would result in significant proceeds for the Seller's estate and creditors.

9.    Since at or about the time the going-out-of-business sales were commenced, the Seller, along with its real estate advisor, DJM Realty, LLC ("DJM"), has been marketing the Property.  As a result of these marketing efforts, the Seller received various proposals to purchase the Property.  Upon reviewing these proposals, the Seller determined that the proposal submitted by the Purchaser was considerably higher or otherwise better than the alternate proposals received. Thus, the Seller elected to proceed with the Sale of the Property to the Purchaser.

**B.     The Agreement.**

10.   On June 23, 2009, the Seller entered into the Agreement[3] by and between the Seller and James Moushoul (the "Purchaser").

11.   Pursuant to the Agreement, the Seller would sell the Property to the Purchaser for $325,000 (the "Purchase Price").

12.   The significant terms of the Agreement are as follows:[4]

(a)   General Terms.   The Purchaser would acquire the Property, consisting solely of the Seller's right, title and interest in and to the unimproved property located at 1332-1406, Virgil Place, Los Angeles, California, together with all rights and appurtenances pertaining to such land.

(b)   Sale.   The Property would be sold free and clear of all liens, charges, pledges, security interests, conditional sale agreements or other title retention agreements, leases, mortgages, security interests, options, or other encumbrances (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) and any monetary amounts which are secured by any lien (collectively, the "Liens"), except for (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land

---

[3]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

[4]   In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of the Agreement are controlling.

use laws and applicable governmental regulations,
(iii) all covenants, agreements, conditions, easements,
restrictions and rights, whether of record or otherwise
and (iv) any and all matters that would be shown by a
physical inspection of the Property (collectively, the
"Permitted Encumbrances").

(c) <u>Bankruptcy Court Approval</u>.  The Sale of
the Property would be subject to approval by this Court
and competitive bidding pursuant to the Bidding
Procedures (as defined below).

(d) <u>Documentation</u>.  The Sale would be
effected pursuant to the Agreement and related
documentation.

(e) <u>Purchase Price</u>.  The Purchase Price to be
paid by the Purchaser for the Property would be $325,000.

(f) <u>Deposit Escrow</u>.  In accordance with the
Agreement, the Purchaser has placed $32,500 into an
escrow account with Chicago Title Insurance Company.
Upon closing of the Sale (the "Closing"), or if the
Agreement is terminated prior to Closing because of the
Purchaser's breach of the Agreement (on the terms as
provided in the Agreement), the Seller would be entitled
to the funds in the escrow account (the "Deposit").
Retention of the Deposit would constitute the Seller's
sole recourse in such event.

(g) <u>Representations And Warranties</u>.  Pursuant
to the Agreement, the Seller would provide certain
standard representations and warranties relating to the
Sale of the Property and the Purchaser would provide
representations and warranties generally standard in a
transaction of this type.  The representations and
warranties of the Purchaser survive indefinitely
following the Closing or the termination of the
Agreement.  The representations and warranties of the
Seller shall expire and be extinguished at the Closing.

(h) <u>Termination</u>.  The Agreement could be
terminated prior to Closing in the following
circumstances:  (i) by Purchaser, if an action is

7

initiated to take any material portion of the Property
by eminent domain proceedings, (ii) by Purchaser, in the
event of damage to the Property exceeding $100,000
occurring during the period after the date of the
Agreement and prior to Closing, if Seller does not
repair such damage, (iii) by Purchaser, in the event
that Seller shall fail to consummate the transactions
contemplated by the Agreement, (iv) by Seller, in the
event that Purchaser shall fail to comply with the
Agreement and (v) by Seller, in order to permit Seller
to accept a higher or better offer for the Property
pursuant to the Bidding Procedures.

**C.     The Bidding Procedures.**

13.    To ensure the Seller receives the

highest or otherwise best proposal for the Property, the

Seller will entertain alternate proposals for the Sale

of the Property.  The Seller accordingly requests that

this Court order that any parties, including those

parties that previously submitted proposals, who wish to

submit an alternate proposal for consideration by the

Debtors be required to do so by August 13, 2009 at 5:00

p.m. (ET) (the "Bid Deadline").

14.    If the Seller receives any Qualified

Bids (as defined herein), the Seller would hold an

auction (the "Auction") on August 20, 2009 at

10:00 a.m. (PT) by telephone or at the offices of

Skadden, Arps, Slate, Meagher & Flom LLP, 300 South

Grand Avenue, Suite 3400 in Los Angeles, California.
The Seller will advise the Purchaser and all other
parties that submitted a Qualified Bid (as defined below)
of the Auction.

15.   At the conclusion of any Auction, the
Seller, in consultation with its advisors (and
representatives of the Creditors' Committee), would
determine the highest or otherwise best bid (the
"Successful Bid").

16.   Following the Auction, if any, the
Seller intends to proceed with a hearing to approve the
Sale of the Property on August 27, 2009 at 11:00 a.m.
(ET) (the "Sale Hearing").

17.   If no Qualified Bids other than the bid
of the Purchaser are received, the Seller would proceed
with the Sale to the Purchaser following entry of the
Sale Order.  If the Seller receives additional Qualified
Bids, then at the Sale Hearing, the Seller would seek
approval of the Successful Bid, as well as the second
highest or best Qualified Bid (the "Alternate Bid," and
such bidder, the "Alternate Bidder").  A bid would not

be deemed accepted by the Seller unless and until
approved by the Court.

18.    Following approval of the Sale to the
Successful Bidder, if the Successful Bidder fails to
consummate the sale for specified reasons, then the
Alternate Bid would be deemed to be the Successful Bid
and the Seller would be permitted to effectuate a sale
to the Alternate Bidder without further order of the
Court.

19.    To ensure that only bidders with a
serious interest in the purchase of the Property
participate in the bidding process, the Seller would
only consider the "Qualified Bids" of "Qualified
Bidders."  To be considered a "Qualified Bid" and a
"Qualified Bidder" for purposes of the Auction, the
person or entity submitting the bid would be required to
submit an offer by the Bid Deadline that includes:

> (a)    an executed copy of the Agreement marked
> to show those amendments and
> modifications to the Agreement that the
> Qualified Bidder proposes (such modified
> Agreement, a "Marked Agreement"),
> including modifications to the Purchase
> Price, which price must be at least
> $360,000.00 (the "Initial Minimum
> Overbid");

(b)   the potential bidder and the officer(s)
      or authorized agent(s) who will appear on
      behalf of such bidder;

(c)   a statement that the bid shall not be
      conditioned on the outcome of unperformed
      due diligence by the bidder or any
      financing contingency;

(d)   a good faith deposit (the "Good Faith
      Deposit") equal to at least $36,000.00 in
      cash;

(e)   an acknowledgement that the bidder's
      offer is irrevocable until two (2)
      business days after the closing of the
      Sale of the Property; and

(f)   an acknowledgement that, in the event the
      bidder is the Alternate Bidder, the
      bidder will proceed with the purchase of
      the Property pursuant to the terms the
      Marked Agreement.

20.   The Seller reserves the right to

(i) determine in its reasonable discretion (after

consultation with representatives of the Creditors'

Committee) which offer is the highest or otherwise best

offer; (ii) reject at any time prior to the closing of a

Sale and Assignment, without liability, any offer that

the Seller in its reasonable discretion (after

consultation with representatives of the Creditors'

Committee) deems to be (x) inadequate or insufficient,

(y) not in conformity with the requirements of the

bidding procedures or applicable law or (z) contrary to

the best interests of the Seller and its estate; (iii)

re-open the Auction, (iv) withdraw the Property from the

Auction, (v) waive the requirements of any of the

bidding procedures with respect to a potential or

Qualified Bidder if the Seller determines in its

business judgment (after consultation with

representatives of the Creditors' Committee) it is in

the best interests of its estate and creditors, and (vi)

re-open any Auction at any time prior to entry of the

Sale Order..

21.  Objections to the Sale, if any, shall be

filed and served no later than 4:00 p.m. (ET) on August

20, 2009.

**APPLICABLE AUTHORITY**

**I.   APPROVAL OF THE SALE OF THE PROPERTY IS WARRANTED
       UNDER BANKRUPTCY CODE SECTION 363(b)(1).**

22.  Bankruptcy Code section 363(b)(1)

authorizes a  trustee to "use, sell, or lease" property

of the estate with the Court's approval.  11 U.S.C. §

363(b)(1).  Assets of the Debtors may be sold outside of

the ordinary course of business, pursuant to Bankruptcy

Code section 363(b)(1), if a sound business purpose

exists for doing so.  In re WBQ P'ship, 189 B.R. 97, 102

(Bankr. E.D. Va. 1995)(citing Stephens Indus., Inc. v.

McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In

re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D.

Va. 1997).

     23.  To satisfy the "sound business purpose

test," the debtor must demonstrate that (1) a sound

business reason or emergency justifies a pre-

confirmation sale; (2) the sale was proposed in good

faith; (3) the purchase price is fair and reasonable;

and (4) adequate and reasonable notice of the sale has

been provided.  In re WBQ P'ship, 189 B.R. at 102.

     24.  Based upon the results of their analysis,

the Seller's management and advisors have concluded that

the Sale of the Property pursuant to the Agreement or a

higher or otherwise better offer would maximize the

value of the Property for the Seller's estate.

Maximizing asset value is a sound business purpose that

warrants authorizing the proposed Sale.

     25.  The Sale of the Property will be subject

to competing bids, thereby enhancing the Seller's

ability to receive the highest or otherwise best value
for the Property.  Consequently, the fairness and
reasonableness of the consideration to be received by
the Seller will ultimately be demonstrated by a "market
check" through the auction process, which is the best
means for establishing whether a fair and reasonable
price is being paid.

26.  Moreover, the Seller proposes to provide
adequate notice of the Auction and the Sale Hearing as
set forth below.  In light of the circumstances, such
notice is reasonably calculated to provide timely and
adequate notice to the Seller's major creditor
constituencies, those parties most interested in these
cases, those parties potentially interested in bidding
on the Property and others whose interests are
potentially implicated by the proposed Sale.

## II.   THE SALE PROCESS IS REASONABLE AND APPROPRIATE.

27.  As set forth above, Bankruptcy Code
section 363(b)(1) provides that "[t]he trustee, after
notice and a hearing, may use, sell, or lease, other
than in the ordinary course of business, property of the
estate."  11 U.S.C. § 363(b)(1).  Moreover, Bankruptcy

14

Code section 105(a) provides that "[t]he Court may issue
any order, process, or judgment that is necessary or
appropriate to carry out the provisions of this title."
11 U.S.C. § 105(a).

28.   The disposition of the Property pursuant
to the terms reflected in the Agreement resulted from
the bids submitted for the Property, pursuant to a
marketing process led by DJM.   Conducting a marketing
process through a third party broker represents an
accepted method of selling property.   Similar marketing
processes have been approved in other chapter 11 cases.
See, e.g., Ready v. Rice, 2006 WL 4550188 at *3 (D. Md.
2006); see also In re Reading Broadcasting, Inc., 386
B.R. 562, 571-72 (Bankr. E.D. Pa. 2008); In re King-
Wilson, 1998 WK 737887 at *4-5 (N.D. Cal. 1998).

29.   In addition, bid procedures similar those
Bid Procedures outlined above have been approved by this
Court in this case.   See Order Approving (I) Approving
Bidding Procedures and (II) Setting Auction and Sale
Hearing Dates in Connection With the Sale of Certain
Real Property Located in Phoenix, Arizona, (D.I. 2401).

30.   Finally, the other interested parties are provided with an opportunity to submit a higher or otherwise better proposal and, if necessary, the Seller will conduct an auction.

31.   In light of the foregoing, the Seller submits that the Sale process is reasonable and appropriate.

## III. THE PURCHASER OR SUCCESSFUL BIDDER SHOULD BE AFFORDED THE PROTECTIONS OF SECTION 363(m) OF THE BANKRUPTCY CODE AND THE TRANSACTIONS CONTEMPLATED BY THE AGREEMENT SHOULD CARRY THE PROTECTIONS OF SECTION 363(m) OF THE BANKRUPTCY CODE.

32.   Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of Leases does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Fourth Circuit Court of Appeals has "adopt[ed] the traditional equitable definition that has been adopted by various courts of appeal: 'one who

purchases the assets for value, in good faith, and

without notice of adverse claims.'" <u>Willemain v. Kivitz</u>,

764 F.2d 1019, 1023 (4th Cir. 1985)(citations omitted).

33.   Section 363(n) of the Bankruptcy Code

further provides, in relevant part, that:

> The trustee may avoid a sale under this
> section if the sale price was controlled
> by an agreement among potential bidders
> at such sale, or may recover from a party
> to such agreement any amount by which the
> value of the property sold exceeds the
> price at which such sale was consummated,
> and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding
> such sale or recovering such amount.

34.   The Seller submits, and will present

evidence at the Sale Hearing, that the Agreement

reflects negotiated, arm's length transaction.

Throughout the negotiations, the Purchaser has at all

times acted in good faith.   Moreover, to the extent that

the assets are sold to a Successful Bidder, it will be

because of a well-planned competitive process and

negotiations at arm's length to be conducted at an

auction.   As a result of the foregoing, the Seller

requests that the Court make a finding that the Purchase

Price to be paid by the Purchaser or the Successful

Bidder constitutes reasonably equivalent value and fair consideration under any applicable law.

35.   The Seller, therefore, requests that this Court make a finding that the Purchaser or the Successful Bidder, as the case may be, has purchased the Property in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Further, the Seller requests that this Court make a finding that the Agreement or any purchase agreement reached as a result of the bidding procedures necessarily will comprise an arm's length, negotiated transaction entitled to the protections of section 363(m) of the Bankruptcy Code. Because the Seller has shown that the Purchaser's or Successful Bidder's bid is not the product of fraud or collusion between the Purchaser or Successful Bidder and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders, the Seller furthers request that this Court make a finding that the transactions contemplated by the Agreement are not avoidable under section 363(n) of the Bankruptcy Code.

IV.   **THE SALE OF THE PROPERTY FREE AND CLEAR OF CLAIMS,
LIENS, AND ENCUMBRANCES SHOULD BE AUTHORIZED UNDER
BANKRUPTCY CODE SECTION 363(f).**

36.   To facilitate a Sale of the Property, the
Seller requests authorization to sell the Property free
and clear of any and all Liens except the Permitted
Encumbrances.

37.   Under section 363(f) of the Bankruptcy
Code, a debtor in possession may sell property free and
clear of any interest in such property if, among other
things:

> (1) applicable nonbankruptcy law permits
> sale of such property free and clear of
> such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price
> at which such property is sold is greater
> than the aggregate value of all liens on
> such property;
>
> (4) such interest is in bona fide
> dispute; or
>
> (5) such entity could be compelled, in a
> legal or equitable proceeding, to accept
> a money satisfaction of such interest.

11 U.S.C. § 363(f).

38.   Section 363(f) permits the sale of estate
property free and clear of interests if any one of the

five conditions above is met.  See, e.g., In re Laines,

352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

     39.   Courts have held that the authority of a

debtor to sell assets free and clear of interests is

broad and should be read expansively.  See In re TWA,

Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United

Mine Workers of Am. 1992 Benefit Plan v. Leckie

Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99

F.3d 573, 582 (4th Cir. W. Va. 1996) (holding that the

phrase "any interest in property" includes more than

just in rem interests); In re P.K.R. Convalescent

Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995)

("As the plain meaning of the statute demonstrates,

§ 363 covers more situations than just sales involving

liens.").  Moreover, courts have noted that the purpose

of the "free and clear" language is to allow the debtor

to obtain a maximum recovery on its assets in the

marketplace.  See In re TWA, Inc., 2001 Bankr. LEXIS 723,

at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

     40.   Accordingly, this Court should authorize

the Seller to sell the Property free and clear of Liens,

except the Permitted Encumbrances, with any such Liens

attaching to the net proceeds of the Sale of the
Property in the same order and priority as they exist
against the Property and in accordance with the terms
and provisions of the Debtors' post-petition financing
facility.

**V.   WAIVER OF THE TEN-DAY STAY PROVIDED BY BANKRUPTCY
RULE 6004 SHOULD BE WAIVED FOR ANY ORDER APPROVING
THE SALE OF THE PROPERTY.**

41.   Bankruptcy Rule 6004(h) provides that:
"[a]n order authorizing the use, sale, or lease of
property is stayed until the expiration of 10 days after
entry of the order, unless the court orders otherwise."
Fed. R. Bankr. P. 6004(h).

42.   The Seller requests that the Court waive
the ten-day stay of Bankruptcy Rule 6004 with respect to
the Sale of the Property following the entry of the Sale
Order.  By waiving such requirements, the Seller and the
Purchaser or the Successful Bidder, as applicable, will
be able to immediately close the Sale, which will result
in immediate proceeds to the Seller's estate as well as
immediate cessation of accrual of further administrative
expenses related to the Property.

**NOTICE**

43.   Notice of this Motion has been provided
to those parties entitled to notice under the Order
Pursuant to Bankruptcy Code Sections 102 and 105,
Bankruptcy Rules 2002 and 9007, and Local Bankruptcy
Rules 2002-1 and 9013-1 Establishing Certain Notice,
Case Management, and Administrative Procedures (D.I. 130;
the "Case Management Order"), as well as (a) all
entities known to have expressed an interest in a
transaction regarding the Property during the past three
(3) months; (b) all entities known to have an interest
in any of the Property; and (c) all federal, state, and
local regulatory or taxing authorities or recording
offices that have a reasonably known interest in the
relief requested through the Motion.   Notice of the
entry of the Order will be provided to the same parties.
The Debtors submit that, under the circumstances, no
other or further notice need be given.

**WAIVER OF MEMORANDUM OF LAW**

44.   Pursuant to Local Bankruptcy Rule 9013-
1(G), and because there are no novel issues of law
presented in the Motion and all applicable authority is

set forth in the Motion, the Seller requests that the

requirement that all motions be accompanied by a

separate memorandum of law be waived.

### NO PRIOR REQUEST

45.   No previous request for the relief sought

herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Seller respectfully request

that the Court (i) enter an Order, substantially in the

form annexed hereto, granting the relief requested

herein, and (ii) such other and further relief as may be

just and proper.

Dated: July 28 2009
      Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM, LLP
                            Gregg M. Galardi, Esq.
                            Ian S. Fredericks, Esq.
                            P.O. Box 636
                            Wilmington, Delaware 19899-
                            0636 (302) 651-3000

                                  - and -

                            SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM, LLP
                            Chris L. Dickerson, Esq.
                            155 North Wacker Drive
                            Chicago, Illinois 60606
                            (312) 407-0700

                                  - and -

                            MCGUIREWOODS LLP

                            ___/S/ Douglas M .Foley___
                            Dion W. Hayes (VSB No. 34304)
                            Douglas Foley (VSB No. 34364)
                            One James Center
                            901 E. Cary Street
                            Richmond, Virginia 23219
                            (804) 775-1000

                            Counsel for Debtors and
                            Debtors in Possession

Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                        One James Center
One Rodney Square                901 E. Cary Street
PO Box 636                       Richmond, Virginia 23219
Wilmington, Delaware 19899-0636  (804) 775-1000
(302) 651-3000

           - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                         :   Chapter 11
                               :
CIRCUIT CITY STORES, INC.,     :   Case No. 08-35653 (KRH)
et al.,                        :
                               :
           Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER UNDER BANKRUPTCY CODE SECTIONS 105 AND 363 AND
BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING
THE SALE BY SELLER OF CERTAIN REAL PROPERTY LOCATED IN
LOS ANGELES, CALIFORNIA FREE AND CLEAR OF LIENS AND
INTERESTS**

Upon the motion (the "Motion")[1] of Circuit City

Stores, Inc. (the "Seller," and collectively with the

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

debtors and debtors in possession in the above-captioned

jointly administered cases, the "Debtors") for orders

pursuant to Bankruptcy Code sections 105 and 363 and

Bankruptcy Rules 2002 and 6004 (A) authorizing the

Seller to enter into an agreement with the Purchaser for

Sale of the Property, subject to higher or otherwise

better proposals, (B) approving the Sale and of the

Property free and clear of all Liens; (C) granting

related relief; and upon the record of the auction held

on August 20, 2009 (the "Auction") and the hearing held

on August 27, 2009 (the "Sale Hearing"); and after due

deliberation thereon, and sufficient cause appearing

therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.     The Court has jurisdiction to hear and

determine the Motion and to grant the relief requested

in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and

1334(b).

---

[2]  Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact when
appropriate.  See Fed. R. Bankr. P. 7052.

B.      Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.      The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, and 363 and Bankruptcy Rules 2002 and 6004.

D.      The notice of the Motion and the Sale Hearing given by the Seller constitutes due and sufficient notice thereof.

E.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property.

F.      A reasonable opportunity to object or be heard regarding the relief in this Order has been afforded to all interested persons and entities.

G.      The Seller and its professionals marketed the Property and conducted a sale process as set forth in and in accordance with the Motion.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers

have been afforded a reasonable and fair opportunity to
bid for the Property.

H.      The Seller has demonstrated good,
sufficient, and sound business purpose and justification
for the Sale because, among other things, the Seller and
its advisors diligently and in good faith analyzed all
other available options in connection with the
disposition of the Property and determined that (a) the
terms and conditions set forth in the Agreement, (b) the
transfer to the Purchaser of the Property pursuant
thereto and (c) the purchase price agreed to by the
Purchaser, $325,000 is fair and reasonable and
constitutes the highest or otherwise best value
obtainable for the Property.

I.      The Seller has full power and authority
to execute the agreement submitted by the James Moushoul
(the "Purchaser"), a copy of which is annexed hereto as
Exhibit A (the "Agreement") and all other applicable
documents contemplated thereby.  The transfer and
conveyance of the Property by the Seller have been duly
and validly authorized by all necessary action of the
Seller.  The Seller has all of the power and authority

necessary to consummate the transactions contemplated by

the Agreement and has taken all action necessary to

authorize and approve the Agreement and to consummate

the transactions contemplated thereby.  No consents or

approvals, other than those expressly provided for in

the Agreement, are required for the Seller to consummate

such transactions.

J.   The Agreement and the sale of the

Property and was negotiated and has been and is

undertaken by the Seller and the Purchaser at arms'

length without collusion or fraud, and in good faith

within the meaning of Sections 363(m) of the Bankruptcy

Code.  As a result of the foregoing, the Seller and the

Purchaser are entitled to the protections of Section

363(m) of the Bankruptcy Code.

K.   Neither the Seller nor the Purchaser

engaged in any conduct that would cause or permit the

Agreement or the consummation of the Sale to be avoided,

or costs or damages to be imposed, under Section 363(n)

of the Bankruptcy Code.

L.   The consideration provided by the

Purchaser for the Property is the highest and best offer

received by the Seller, and the consideration
constitutes (a) reasonably equivalent value under the
Bankruptcy Code and Uniform Fraudulent Transfer Act,
(b) fair consideration under the Uniform Fraudulent
Conveyance Act, and (c) reasonably equivalent value,
fair consideration and fair value under any other
applicable laws of the United States, any state,
territory or possession, or the District of Columbia,
for the Property.

M.    The Sale must be approved and consummated
promptly to obtain the value provided under the terms of
the Agreement.

N.    The transfer of the Property to the
Purchaser is a legal, valid, and effective transfer of
the Property, and shall vest the Purchaser with all
right, title, and interest of the Seller to the Property
free and clear of all liens, charges, pledges, security
interests, options, or other encumbrances (including the
filing of, or agreement to give, any financing statement
under the Uniform Commercial Code of any jurisdiction)
and any monetary amounts which are secured by any lien
(collectively, the "Liens"), except for those items

defined in the Agreement(and which are referred to
hereinafter) as the "Permitted Encumbrances".

O.   If the Sale of the Property by the Seller
were not free and clear of any Liens, except for the
Permitted Encumbrances, as set forth in the Agreement
and this Sale Order, or if the Purchaser would, or in
the future could, be liable for any of the Liens, the
Purchaser would not have entered into the Agreement and
would not consummate the Sale and Assignment
contemplated by the Agreement, thus adversely affecting
the Seller, its estate, and its stakeholders.

P.   The Seller may sell its interest in the
Property and clear of all Liens, except the Permitted
Encumbrances, because, in each case, one or more of the
standards set forth in Bankruptcy Code sections
363(f)(1)-(5) has been satisfied.  All holders of Liens
who did not object or withdrew their objections to the
Sale are deemed to have consented to the Sale and
Assignment pursuant to 11 U.S.C. § 363(f)(2) and all
holders of Liens are adequately protected by having
their Liens, if any, attach to the cash proceeds of the
Sale ultimately attributable to the property against or

in which they claim an interest with the same priority,
validity, force, and effect as they attached to such
property immediately before the closing of the Sale and
Assignment.

Q.   Based on the foregoing findings of fact
and conclusions of law,[3]

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Motion is GRANTED as set forth herein.

2.   Any and all objections to the Motion not
waived, withdrawn, settled, adjourned or otherwise
resolved herein are hereby overruled on the merits and
denied with prejudice.

**A.    Approval Of The Agreement.**

3.   Pursuant to Bankruptcy Code section
363(b), the Agreement and all of the terms and
conditions thereof are hereby approved.

4.   Pursuant to Bankruptcy Code section
363(b), the Seller is authorized to perform its
obligations under the Agreement and comply with the

---

[3]   Statements made by the Court from the bench at the hearing on the
Motion shall constitute additional conclusions of law and
findings of fact as appropriate.

terms thereof and consummate the Sale in accordance with
and subject to the terms and conditions of the Agreement.

5.    The Seller is authorized, but not
directed, to execute and deliver, and empowered to
perform under, consummate, and implement, the Agreement,
together with all additional instruments and documents
as may be reasonably necessary or desirable to implement
the Agreement, and to take all further actions as may be
requested by the Purchaser for the purpose of assigning,
transferring, granting, conveying, and conferring to the
Purchaser or reducing to possession the Property as
contemplated by the Agreement.

6.    This Sale Order and the Agreement shall
be binding in all respects upon the Seller, all
stakeholders (whether known or unknown) of the Seller,
all affiliates and subsidiaries of the Seller, and any
subsequent trustees appointed in the Seller's chapter 11
case or upon a conversion to chapter 7 under the
Bankruptcy Code.  To the extent that any provision of
this Sale Order is inconsistent with the terms of the
Agreement, this Sale Order shall govern.

7.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

**B.    Sale And Transfer Of The Property.**

8.    Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in the Property shall be transferred to the Successful Bidder free and clear of all Liens except the Permitted Encumbrances, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Property immediately before such transfer, subject to any claims and defenses the Seller may possess with respect thereto.

9.   If any person or entity which has filed
financing statements, mortgages, mechanic's liens, <u>lis</u>
<u>pendens</u>, or other documents or agreements evidencing
Liens on or against the Property shall not have
delivered to the Seller prior to the Closing of the Sale,
in proper form for filing and executed by the
appropriate parties, termination statements, instruments
of satisfaction, releases of all Liens that the person
or entity has with respect to the Property, or otherwise,
then (a) the Seller is hereby authorized to execute and
file such statements, instruments, releases, and other
documents on behalf of the person or entity with respect
to the Property and (b) the Purchaser is hereby
authorized to file, register, or otherwise record a
certified copy of this Sale Order, which, once filed,
registered, or otherwise recorded, shall constitute
conclusive evidence of the release of all Liens on or
against the Property of any kind or nature whatsoever
except for the Permitted Encumbrances.

10.   This Sale Order (a) shall be effective as
a determination that, upon the Closing of the Sale, all
Liens of any kind or nature whatsoever existing as to

the Seller or the Property prior to the Closing of the

Sale, except for the Permitted Encumbrances, have been

unconditionally released, discharged, and terminated

(other than any surviving obligations), and that the

conveyances described herein have been effected and (b)

shall be binding upon and shall govern the acts of all

entities including, without limitation, all filing

agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars

of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, and

local officials, and all other persons and entities who

may be required by operation of law, the duties of their

office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments,

or who may be required to report or insure any title or

state of title in or to any of the Property.

11.  All persons and entities, including, but

not limited to, all debt security holders, equity

security holders, governmental, tax, and regulatory

authorities, lenders, trade stakeholders, and other

stakeholders, holding Liens of any kind or nature

whatsoever against or in the Seller or the Property,
except the Permitted Encumbrances (whether legal or
equitable, secured or unsecured, matured or unmatured,
contingent or non-contingent, senior or subordinated)
arising under or out of, in connection with, or in any
way relating to the Property prior to the Closing of the
Sale, or the transfer of the Property to the Purchaser,
hereby are forever barred, estopped, and permanently
enjoined from asserting against the Purchaser, its
successors or assigns, its property, or the Property,
such persons' or entities' Liens.  Nothing in this Sale
Order or the Agreement releases or nullifies any
liability to a governmental agency under any
environmental laws and regulations that any entity would
be subject to as owner or operator of any Property after
the date of entry of this Sale Order.  Nothing in this
Sale Order or the Agreement bars, estops, or enjoins any
governmental agency from asserting or enforcing, outside
the Court, any liability described in the preceding
sentence.  Notwithstanding the above, nothing herein
shall be construed to permit a governmental agency to
obtain penalties from the Purchaser for days of

violation of environmental laws and regulations prior to

Closing.

**C.    Additional Provisions**

12.   The consideration provided by the

Purchaser for the Property under the Agreement is hereby

deemed to constitute reasonably equivalent value and

fair consideration under the Bankruptcy Code, the

Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the

United States, and any state, territory, or possession

thereof, or the District of Columbia.

13.   The consideration provided by the

Purchaser for the Property under the Agreement is fair

and reasonable and the Sale may not be avoided under

section 363(n) of the Bankruptcy Code.

14.   Upon the Closing, this Sale Order shall

be construed as and shall constitute for any and all

purposes a full and complete general assignment,

conveyance, and transfer of all the Property or a bill

of sale transferring good and marketable title in to the

Purchaser pursuant to the terms of the Agreement.

15.   The transactions contemplated by the
Agreement are undertaken by the Seller and the Purchaser
at arm's-length, without collusion and in good faith, as
that term is used in section 363(m) of the Bankruptcy
Code, and accordingly, the reversal or modification on
appeal of the authorization provided herein to
consummate the sale of the Property shall not affect the
validity of the Sale and Assignment to the Purchaser,
unless such authorization is duly stayed pending such
appeal.  The Purchaser is a purchaser in good faith,
within the meaning of section 363(m) of the Bankruptcy
Code, of the Property, and is, and shall be, entitled to
all of the protections afforded by such section and in
accordance therewith.

16.   The failure specifically to include or to
reference any particular provision of the Agreement in
this Sale Order shall not diminish or impair the
effectiveness of such provision, it being the intent of
the Court that the Agreement be authorized and approved
in its entirety.

17.   If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of

the Agreement due to no fault of and Seller is not in
default of its obligations under such Agreement, then
Seller's counsel shall file with the Court and serve
upon the Purchaser, the Alternate Bidder and their
counsel, a notice of such default, which shall include a
copy of the Alternate Bidder's agreement upon which the
Seller will then close, in which case (i) Seller shall
be deemed authorized to close on the sale of the
Property with the Alternate Bidder on ten (10) days'
advance written notice to the Alternate Bidder, and
(ii) the Alternate Bidder shall be afforded all of the
protections originally afforded to the Purchaser under
this Sale Order and the findings herein as to adequacy
and fairness of consideration paid and good faith shall
be deemed to apply to the Alternate Bidder, its
Alternate Bid, and its purchase and sale agreement with
the Seller, without the necessity of further order of
this Court.

18.   All deposits submitted to the Seller for
the Property shall be returned to the bidder that
submitted it no later than (i) two business days after
the closing of the sale with the Purchaser (or the

Alternate Bidder, as the case may be) except in the case

of a bidder who closed on the sale of the Property or

who was required to close in accordance with the terms

of this Sale Order but failed to do so in breach of its

contractual obligations through no fault of the Seller.

19.   The requirement under Local Bankruptcy

Rule 9013-1(G) to file a memorandum of law in connection

with the Motion is hereby waived.

20.   This Court retains exclusive jurisdiction

to interpret, construe, enforce, and implement the terms

and provisions of this Sale Order, the Agreement, all

amendments thereto, any waivers and consents thereunder,

and of each of the agreements executed in connection

therewith in all respects, including, but not limited to,

retaining jurisdiction to (a) compel delivery of the

Property to the Purchaser, (b) compel delivery of the

purchase price or performance of other obligations owed

to the Seller pursuant to the Agreement, (c) resolve any

disputes arising under or related to the Agreement, the

Alternate Bid, and any deposit delivered to Seller by a

bidder for the Property, (d) interpret, implement, and

enforce the provisions of this Sale Order, and

(e) protect the Purchaser against any Lien against the

Seller or the Property of any kind or nature whatsoever,

except for Permitted Encumbrances, which Liens, valid

and timely perfected, shall attach to the proceeds of

the Sale.

       21.  This Order shall be effective and

enforceable immediately upon entry and shall not be

stayed pursuant to Rule 6004(h).

Dated:  Richmond, Virginia
       August 27, 2009

                     _____
                     UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                            /s/ Douglas M. Foley

**Exhibit A**

**(Agreement)**

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of ___JUNE 23___, 2009 (the "Effective Date"), is made by and between CIRCUIT CITY STORES, INC., a Virginia corporation ("Seller"), and JAMES MOUSHOUL, an individual ("Purchaser").

### RECITALS

Seller is a debtor in possession in a Chapter 11 bankruptcy case (the "Bankruptcy Case") that is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"). Upon the terms and conditions of this Agreement, Seller desires to sell and convey, and Purchaser desires to purchase and acquire, the Property (as defined below). This Agreement and the purchase and sale of the Property are subject to the approval of the Bankruptcy Court. As contemplated by Section 9.2 of this Agreement, Seller will prepare and file the Sale Motion seeking approval of this Agreement.

In consideration of the mutual covenants and representations herein contained, intending to be legally bound, Seller and Purchaser agree as follows:

1.    PURCHASE AND SALE

1.1    Purchase and Sale.    Subject to the terms and conditions of this Agreement, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the Seller's right, title and interest in and to the unimproved property located at 1332-1406 Virgil Place, Los Angeles, California, more particularly described on Exhibit A attached hereto and made a part hereof, together with all the rights and appurtenances pertaining to such land (herein collectively called the "Property").

2.    PURCHASE PRICE

2.1    Purchase Price.    The purchase price (the "Purchase Price") for the Property shall be THREE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($325,000.00). The Purchase Price, less the Deposit, shall be paid into the Escrow Agent's escrow account in cash by Purchaser by wire transfer in accordance with

CCS: Los Angeles (Virgil Place), CA Sale [6/17/2009]

1

wire transfer instructions to be provided by the Escrow Agent, as adjusted by prorations and payment of expenses as herein provided.

3.     DEPOSIT

        3.1    Deposit.       Within three (3) business days following the Effective Date, Purchaser shall deliver to Chicago Title Insurance Company (the "Escrow Agent"), 24300 Town Center Drive, Suite #320, Valencia, CA  91355, Attention: Maggie Watson, Phone: (866) 612-8165, Fax: (661) 753-5730, Email: Maggie.Watson@ctt.com, by wire transfer or cashier's check payable to Escrow Agent, an amount equal to THIRTY-TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($32,500.00) (which amount, together with all interest accrued thereon, is herein called the "Deposit") to be held by the Escrow Agent (the "Escrow Account").  The Deposit shall be held in an interest-bearing savings account in a federally insured financial institution in the Los Angeles, California metropolitan area, or in such other interest-bearing account or investment as the parties hereto shall direct.

        3.2    Application of Deposit.       If the sale of the Property is consummated under this Agreement, the Deposit shall be paid to Seller and applied to the payment of the Purchase Price.  If Purchaser terminates this Agreement in accordance with Section 7.1, Section 7.2, or Section 8.1 hereof, or if Purchaser or Seller terminates this Agreement in accordance with Section 9.4, the Deposit shall be returned promptly to Purchaser, and no party hereto shall have any further obligations under this Agreement except for such obligations that survive termination of this Agreement as expressly set forth in this Agreement (the "Survival Obligations").   If Seller terminates this Agreement in accordance with Section 8.2 or Section 10.11, the Deposit shall be retained by Seller and no party hereto shall have any further obligations under this Agreement except for the Survival Obligations. Purchaser agrees to deliver to Seller copies of all Reports (as defined in Section 4.4 hereof) at the time the notice to terminate this Agreement is given. The obligations to deliver the Reports shall survive the termination of this Agreement.  In no event shall any Deposit be returned to Purchaser hereunder until all Reports have been delivered to Seller.  All interest earned on the Deposit shall be reported to the Internal Revenue Service as income of Purchaser and Purchaser shall promptly execute all forms reasonably requested by the Escrow Agent regarding such interest.

4.    ITEMS DELIVERED TO PURCHASER

4.1    Items Delivered.    Seller has delivered or will deliver to Purchaser, within three (3) business days following the Effective Date, certain information with respect to the Property, which may include, without limitation, a copy of any financial information and/or operating statements pertaining to the Property, title reports, environmental reports and real property surveys, but only to the extent Seller has possession of such information.

4.2    Title Examination.    Seller has delivered or will deliver to Purchaser, within ten (10) days following opening of escrow with the Escrow Agent, a Preliminary Title Report ("PTR") issued by Chicago Title Insurance Company ("Title Company") covering the Property together with copies of all documents of record referenced therein.

4.3    Property Inspection.    On and subject to the conditions set out in this Section 4.3, Purchaser shall have reasonable access to the Property for the purpose of conducting surveys, architectural, engineering, geotechnical, and environmental inspections and tests and any other inspections, studies, or tests reasonably required by Purchaser, all at Purchaser's sole expense.    If any inspection or test disturbs the Property, Purchaser will (at its sole expense) restore the Property as soon as reasonably possible to the same condition as existed prior to any such inspection or test.    Notwithstanding anything to the contrary in this Agreement, Purchaser will not do, or cause or direct to be done, any subsurface testing or boring, or any testing of subsurface water, or any coring, boring or other intrusive testing, without first obtaining Seller's prior written consent which consent shall not be withheld unreasonably.    All other inspections of or entry upon the Property by Purchaser shall also occur only with the consent of Seller, which consent shall not be withheld unreasonably.    Purchaser hereby indemnifies Seller, and agrees to defend, protect and hold Seller harmless, from and against any and all claims, losses, damages and liabilities that may be asserted against or incurred by Seller for or in connection with any injuries or damage to any persons or property, which directly or indirectly are caused by or result from any entry, inspection, testing or other action done or caused or directed to be done by Purchaser or its representatives or contractors. Purchaser agrees to cause all parties entering the Property at Purchaser's instance to maintain adequate and appropriate insurance to cover risks of the type described herein and, upon Seller's request, to deliver to Seller evidence establishing to Seller's reasonable satisfaction that adequate and appropriate insurance to cover risks of the types described herein is being maintained.

CCS: Los Angeles (Virgil Place), CA Sale [6/17/2009]

3

4.4    Reports.        All information provided by Seller to Purchaser or obtained by Purchaser relating to the Property, whether before or after the Effective Date (collectively, the "Reports"), shall be treated as confidential information and shall not be disclosed to any third parties except for Purchaser's attorneys, engineers, lenders, real estate broker, prospective tenants and other business associates who need to know the information in furtherance of this transaction, and then only if they agree to maintain the information in strict confidence as provided herein.  Purchaser shall be liable to Seller for any unauthorized disclosure of the confidential information by or through Purchaser and for all damage or injury to any person or property resulting from, relating to or arising out of this Agreement, whether occasioned by the acts of Purchaser or any of its employees, agents, representatives or contractors, and Purchaser shall indemnify and agrees to defend, protect and hold harmless Seller and its agents, employees, officers, directors, representatives and affiliates from any liability resulting therefrom. This Section 4.4 shall survive the Closing or the termination of this Agreement, as applicable.

4.5    Purchaser's Representations and Warranties.        Purchaser represents and warrants to Seller that (a) Purchaser has the power to enter into this Agreement and to execute and deliver this Agreement and to perform all of its duties and obligations hereunder, and Purchaser has obtained all necessary authorizations required in connection with the execution, delivery and performance contemplated by this Agreement and has obtained the consent of all entities and parties necessary to bind Purchaser to this Agreement; (b) neither the execution nor the delivery of this Agreement, nor the consummation of the purchase and sale contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement conflict with or will result in the breach of any of the terms, conditions, or provisions of any agreement or instrument to which Purchaser, or any partner or related entity or affiliate of Purchaser, is a party or by which Purchaser, any partner or related entity or affiliate of Purchaser, or any of Purchaser's assets is bound; and (c) this Agreement is the legal, valid and binding obligation of Purchaser and is enforceable against Purchaser in accordance with its terms. Purchaser's representations and warranties contained herein must be true and correct through the Closing Date, and Purchaser's failure to notify Seller prior to the Closing Date of any inaccuracies shall be a default by Purchaser under this Agreement. The Purchaser's representations and warranties set forth in this Section 4.5 shall survive the Closing or termination of this Agreement.

4.6    Seller's Representations and Warranties.    Seller    represents    and warrants to Purchaser that (a) Seller is a corporation duly organized and validly existing under the laws of the Commonwealth of Virginia; (b) Seller has the corporate power and authority to enter into, execute and deliver this Agreement and to perform all of its duties

CCS: Los Angeles (Virgil Place), CA Sale [6/17/2009]

4

and obligations under this Agreement; (c) upon entry of the Sale Order (as defined hereinafter) in the Bankruptcy Case, this Agreement will be the legal, valid and binding obligation of Seller and will be enforceable against Seller in accordance with its terms; and (d) at the Closing, Seller shall convey to Purchaser fee simple title to the Property, free and clear of liens (including the liens of Seller's postpetition lenders and liens for past-due real property taxes), claims and encumbrances other than Permitted Encumbrances. The representations and warranties contained in this Section 4.6 shall expire and be extinguished at the Closing.

    4.7    <u>Further Assurances</u>.  Seller and Purchaser agree to execute and deliver at or prior to Closing any documents or instruments reasonably necessary to carry out the terms of this Agreement.

5.    DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER; ACCEPTANCE OF PROPERTY

    5.1    <u>Disclaimer</u>.  PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES (OTHER THAN THE SPECIAL OR LIMITED WARRANTY OF TITLE AS SET OUT IN THE DEED, AS DEFINED BELOW), PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER OR ANY TENANT MAY CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) COMPLIANCE WITH ANY ENVIRONMENTAL REQUIREMENTS (AS HEREINAFTER DEFINED), INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS (AS DEFINED BELOW) OR (I) ANY

OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF PURCHASER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER UNLESS EXPRESSLY SET FORTH HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER AND AGREES TO ACCEPT THE PROPERTY AT THE CLOSING AND WAIVE ALL OBJECTIONS OR CLAIMS AGAINST SELLER (INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM OF CONTRIBUTION) ARISING FROM OR RELATED TO THE PROPERTY OR TO ANY HAZARDOUS MATERIALS ON THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER, CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" "WHERE IS" CONDITION AND BASIS WITH ALL FAULTS. IT IS UNDERSTOOD AND AGREED THAT THE PURCHASE PRICE REFLECTS THAT THE PROPERTY IS BEING SOLD BY SELLER AND PURCHASED BY PURCHASER SUBJECT TO THE FOREGOING. PURCHASER HEREBY AGREES TO INDEMNIFY, PROTECT, DEFEND, SAVE AND HOLD HARMLESS SELLER FROM AND AGAINST ANY AND ALL DEBTS, DUTIES, OBLIGATIONS, LIABILITIES, SUITS, CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, LOSSES, FEES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES AND COURT

CCS: Los Angeles (Virgil Place), CA Sale [6/17/2009]                                                6

COSTS) IN ANY WAY RELATING TO, OR IN CONNECTION WITH OR ARISING OUT OF PURCHASER'S ACQUISITION, OWNERSHIP, LEASING, USE, OPERATION, MAINTENANCE AND MANAGEMENT OF THE PROPERTY; PROVIDED, HOWEVER, PURCHASER SHALL NOT BE REQUIRED TO INDEMNIFY SELLER WITH RESPECT TO MATTERS ARISING PRIOR TO THE CLOSING AND ATTRIBUTABLE SOLELY TO SELLER'S CONDUCT. THE PROVISIONS OF THIS SECTION 5 SHALL SURVIVE THE CLOSING OR ANY TERMINATION HEREOF.

5.2    Hazardous Materials. "Hazardous Materials" shall mean any substance which is or contains (i) any "hazardous substance" as now or hereafter defined in §101 (14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §9601 et seq.) ("CERCLA"), or any regulations promulgated under CERCLA; (ii) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. §6901 et seq.) ("RCRA"), or regulations promulgated under RCRA; (iii) any substance regulated by the Toxic Substances Control Act (15 U.S.C. §2601 et seq.); (iv) gasoline, diesel fuel, or other petroleum hydrocarbons; (v) asbestos and asbestos containing materials, in any form, whether friable or non-friable; (vi) polychlorinated biphenyls; (vii) radon gas; and (viii) any additional substances or materials which are now or hereafter classified or considered to be hazardous or toxic under Environmental Requirements (as hereinafter defined) or the common law, or any other applicable laws relating to the Property. Hazardous Materials shall include, without limitation, any substance, the presence of which on the Property, (A) requires reporting, investigation or remediation under Environmental Requirements; (B) causes or threatens to cause a nuisance on the Property or adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Property or adjacent property; or (C) which, if it emanated or migrated from the Property, could constitute a trespass.

5.3    Environmental Requirements.      "Environmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, agreements, judgments, orders, and decrees, now or hereafter enacted, promulgated, or amended, of the United States, the states, the counties, the cities, or any other political subdivisions in which the Property is located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the owner of the Property, the Property, or the use of the Property, relating to pollution, the protection or regulation of human health, natural resources, or the environment, or the emission, discharge, release or threatened release of pollutants, contaminants, chemicals, or industrial, toxic or hazardous substances or waste

or Hazardous Materials into the environment (including, without limitation, ambient air, surface water, ground water or land or soil).

     5.4   Purchaser's Independent Investigations.   For all purposes of this Article 5, Purchaser acknowledges and agrees that Purchaser has been provided with adequate and sufficient access to the Property prior to the Effective Date, and Purchaser is entitled to access the Property, to conduct its own inspections, tests, investigations, environmental audits and other reviews of the Property as Purchaser deems necessary or appropriate, and Purchaser is relying on its own such inspections, tests, investigations, environmental audits and other reviews in determining the advisability of acquiring the Property.

6.    CLOSING

     6.1   Closing.   Unless otherwise agreed by the parties in writing, the closing of the purchase and sale of the Property (the "Closing") shall be conducted by mail or, if necessary, held at the offices of Escrow Agent not later than (i) forty-five (45) days after the Effective Date, or (ii) ten (10) days following entry by the Bankruptcy Court of the Sale Order, whichever is last to occur (the date on which the Closing occurs is referred to as the "Closing Date").

     6.2   Possession.   Possession of the Property shall be delivered to Purchaser at the Closing, subject to (i) liens for real property taxes that are not yet due and payable, (ii) zoning ordinances, building codes and other land use laws and applicable governmental regulations, (iii) all covenants, agreements, conditions, easements, restrictions and rights, whether of record or otherwise, and (iv) any and all matters that would be shown by a physical inspection of the Property (collectively, the "Permitted Encumbrances").

     6.3   Proration.   All utilities with respect to the Property for the month in which the Closing occurs, and real estate taxes and other assessments with respect to the Property for the year in which the Closing occurs, shall be prorated as of the Closing Date.

     (a)   All real estate taxes and assessments, both general and special, water charges and sewer rents, whether or not then due or payable, and all other normally proratable items shall be prorated to the Closing Date, based upon the latest assessments or actual invoices available.  Should any such proration be inaccurate based upon the actual tax bill or assessment when received, either party hereto may demand and shall be

entitled to receive on demand, a payment from the other correcting such malapportionment. Seller shall pay all costs associated with any fees, taxes, impact fees, assessments, delinquent or otherwise, and any other land use charges attributable to a period prior to Closing.

(b)     Purchaser shall cause all utility meters to be read as of the Closing Date, shall cause the transfer of all utility services for the Property to Purchaser's name as of the Closing Date, and where necessary, shall post deposits with the utility companies; provided, however, Seller shall cooperate reasonably with Purchaser in connection with switching utility services over to Purchaser's name. Seller shall be entitled to a credit of whatever deposits Seller may have with any utility companies if Purchaser receives the benefit of such deposits. If the Closing shall occur before the actual amount of utilities and all other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the apportionment of such utilities and other operating expenses shall be upon the basis of an estimate by Seller of such utilities and other operating expenses for such month. Subsequent to the Closing, when the actual amount of such utilities and other operating expenses with respect to the Property for the month in which the Closing occurs are determined, the parties agree to adjust the proration of such utilities and other operating expenses and, if necessary, to refund or repay such sums as shall be necessary to effect such adjustment.

The agreements of Seller and Purchaser set forth in this Section 6.3 shall survive the Closing.

6.4     <u>Closing Costs</u>.     Purchaser shall pay, on the Closing Date, any and all closing expenses and costs, including, without limitation, title insurance premiums, survey costs, environmental and engineering costs, recordation fees, documentary transfer tax and mortgage taxes and any and all other due diligence costs. Except as otherwise provided herein, each party shall pay its own attorneys' fees. The parties shall share equally in any escrow fee; and, with regard to other costs of Closing, the parties shall bear the costs of settlement as is the custom in Los Angeles County.

6.5     <u>Seller's Obligations at the Closing</u>.     At the Closing, Seller shall deliver to Escrow Agent the following:

(a)     <u>Grant Deed</u>.     A standard form California grant deed, duly executed by Seller, conveying the Property in fee simple as contemplated by the Sale Order, subject to the Permitted Encumbrances.

(b)   Foreign Person.   An affidavit or certificate duly executed by Seller certifying that Seller is not a "foreign person," as defined in the federal Foreign Investment in Real Property Tax Act of 1980, and the 1984 Tax Reform Act, as amended, and is not subject to withholding under Sections 18805 and 26131 of the California Revenue and Taxation Code.

6.6   Purchaser's Obligations at the Closing.   At the Closing, Purchaser shall deliver to Escrow Agent the following:

(a)   Purchase Price.   The Purchase Price (less the amount of the Deposit, which shall be released separately by the Escrow Agent to Seller) and any Closing costs which are Purchaser's responsibility hereunder, plus or minus prorations as provided herein, by wire transfer of immediately available funds.

(b)   Evidence of Authority.   Such organizational and authorizing documents of Purchaser as shall be reasonably required by Seller authorizing Purchaser's acquisition of the Property pursuant to this Agreement and the execution of this Agreement and any documents to be executed by Purchaser at the Closing.

(c)   Taxpayer I.D. Certificate.   A certificate duly executed by Purchaser certifying Purchaser's address and Taxpayer I.D. Number and consenting to Seller's release of this information to any governmental authority.

6.7   Escrow Agent's Duties upon Closing.   When the Escrow Agent has received all documents and funds required for the Closing and has received written notification from Purchaser and Seller that all conditions to the Closing have been satisfied or waived, and when the Title Company is irrevocably committed to issue the Title Policy, then the Escrow Agent shall:

(a)   Record the Grant Deed and any other documents which the parties may mutually direct to be recorded in the Official Records of the County of Los Angeles, California, and shall obtain conformed copies thereof for prompt distribution to Purchaser and Seller;

(b)   Cause the Title Company to issue to Purchaser the Title Policy;

(c)   File Seller's certification of non-foreign status with the appropriate federal agency as well as comply with any other federal or state reporting requirements;

(d)     Deliver to Purchaser (i) a conformed copy of the Deed, and (ii) the appropriate escrow closing statement; and

(e)     Deliver to Seller (i) the Purchase Price, less Seller's share of the Closing costs, if any, and (ii) the appropriate escrow closing statement.

6.8     Commission.  Seller and Purchaser represent that there are no real estate brokers or agents of record in this transaction, other than DJM Realty ("Broker").  Upon Closing, Seller shall pay Broker a commission pursuant to a separate written agreement. Neither Seller nor Purchaser shall be responsible for any other real estate commissions or fees of any kind or nature whatsoever.  Seller and Purchaser each agrees to hold the other harmless against any claim made for brokerage commissions or finders' fees resulting from such parties' actions in this transaction.  The provisions of the preceding sentence shall survive the Closing.

7.     RISK OF LOSS; EXISTING INSURANCE PROCEEDS

7.1     Condemnation.     If, prior to the Closing, action is initiated to take any material portion of the Property by eminent domain proceedings or by deed in lieu thereof, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a return of Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event the award of the condemning authority shall be assigned to Purchaser at the Closing, and there shall be no reduction in the Purchase Price.

7.2     Casualty.     Seller assumes all risks and liability for damage to or injury occurring to the Property by fire, storm, accident, or any other casualty or cause until the Closing has been consummated.  If the Property, or any part thereof, suffers any damage in excess of One Hundred Thousand and No/100 Dollars ($100,000.00) after the Effective Date and prior to the Closing from fire or other casualty, which Seller, at its sole option, does not repair, Purchaser may either at or prior to Closing (a) terminate this Agreement and receive a refund of the Deposit and neither party will have any further right or obligation hereunder except for the Survival Obligations, or (b) consummate the Closing, in which latter event all of Seller's right title and interest in and to the proceeds of any insurance covering such damage (less an amount equal to any expenses and costs incurred by Seller to repair or restore the Property or to be paid on account of the loss of rents or other income from the Property for the period prior to and including the Closing Date, all of which shall be payable to Seller), to the extent the amount of such insurance does not exceed the Purchase Price, plus Seller's deductible under its insurance policy,

shall be assigned to Purchaser at the Closing. If the Property, or any part thereof, suffers any damage less than One Hundred Thousand and No/100 Dollars ($100,000.00) after the Effective Date and prior to the Closing, Purchaser agrees that it will consummate the Closing and accept the assignment of the proceeds of any insurance covering such damage, plus Seller's deductible under its insurance policy, and there shall be no reduction in the Purchase Price. Seller shall maintain casualty insurance for the Property through the Closing Date and, if Purchaser is entitled to insurance proceeds pursuant to this Section 7.2, Seller shall cooperate with Purchaser in good faith in connection with the prosecution of any such insurance claim.

8.    DEFAULT

    8.1    <u>Breach by Seller</u>.    In the event that Seller shall fail to consummate the transactions contemplated by this Agreement for any reason, except Purchaser's default or a termination of this Agreement by Purchaser or Seller pursuant to a right to do so under the provisions hereof, Purchaser, as its sole and exclusive remedy may terminate this Agreement and receive a refund of the Deposit. In no event shall Purchaser be entitled to any remedy other than the return of its Deposit and Seller shall not be liable to Purchaser for any actual, punitive, speculative or consequential damages. In no event shall Purchaser be entitled to the remedy of specific performance.

    8.2    <u>Breach by Purchaser</u>. If Purchaser fails to comply with this Agreement for any reason, except Seller's default, Seller may terminate this Agreement and thereupon shall be entitled to the Deposit as Seller's full liquidated damages pursuant to applicable state statute (and not as a penalty) as Seller's sole remedy and relief hereunder and shall not be entitled to the remedy of specific performance. Seller and Purchaser have made this provision for liquidated damages because it would be impossible to estimate more precisely, on the date hereof, the amount of actual damages for such breach, and that these sums represent a reasonable pre-estimate of Seller's probable loss in the event of Purchaser's breach. Notwithstanding the foregoing, the provisions of this Section 8.2 shall not limit or affect any of Purchaser's indemnities as provided in any other Section of this Agreement.

9.    BANKRUPTCY ISSUES

    9.1    <u>Generally</u>.    Notwithstanding any other provision of this Agreement, the provisions of this Article 9 shall apply to the sale of the Property.

9.2    Filing a Sale Motion. The obligation of Seller to sell and convey the Property to Purchaser, and the obligation of Purchaser to purchase the Property from Seller, are subject to the condition precedent that the Bankruptcy Court shall have entered an order in the Bankruptcy Case (the "Sale Order") (i) approving this Agreement and the sale of the Property to Purchaser, free and clear of liens, claims and encumbrances other than Permitted Encumbrances, and (ii) authorizing Seller to consummate the transactions contemplated by this Agreement. Within thirty (30) days following the Effective Date, Seller will file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval of this Agreement and the consummation of the transactions contemplated hereby and entry of the Sale Order (the "Sale Motion"). The Sale Motion shall be in form and substance consistent with this Agreement, and Seller shall be responsible for serving and providing notice of the Sale Motion.

9.3    Entry of Sale Order.   The closing of the sale of the Property to Purchaser shall take place as provided in Section 6.1 above. Purchaser shall cooperate with the Seller in good faith to obtain entry by the Bankruptcy Court of the Sale Order as soon as reasonably practicable.

9.4    Termination. Purchaser acknowledges that the Seller intends to solicit "higher or better" offers for the Property, including entertaining other offers from competing bidders. To facilitate this process, Seller agrees to the following procedures for responding to other offers that the Seller may receive for the Property: (a) an initial minimum overbid for the Property of at least THREE HUNDRED SIXTY THOUSAND AND NO/100 DOLLARS ($360,000.00); (b) each initial overbid must be accompanied by a deposit in an amount equal to the total aggregate Deposit; (c) each competing offer must have terms and conditions that are substantially identical to those set forth in this Agreement (except that no competing offer shall provide for any due diligence period or property inspection period); and (d) if an acceptable competing  offer is received by Seller, Seller shall conduct an auction to determine the highest or best offer for the Property and Purchaser shall be entitled to participate in the auction. The last day for submission of higher or better offers will be fixed by the Seller or established by order of the Bankruptcy Court. Notwithstanding any other provision of this Agreement, (i) Seller shall have the right to terminate this Agreement in order to permit Seller to accept a "higher or better" offer for the Property, and (ii) each of Seller and Purchaser shall have the right to terminate this Agreement if the Bankruptcy Court has not entered the Sale Order on or prior to October 15, 2009 (the "Outside Date"). If this Agreement is terminated by Seller as provided in this Section 9.4, or because the Bankruptcy Court will not enter the Sale Order prior to the Outside Date, Escrow Agent shall disburse the Deposit to Purchaser.

CCS: Los Angeles (Virgil Place), CA Sale [6/17/2009]

13

10.    MISCELLANEOUS

 10.1 <u>Notices</u>. All notices, demands and requests which may be given or which are required to be given by either party to the other, and any exercise of a right of termination provided by this Agreement, shall be in writing and shall be deemed effective either: (a) on the date personally delivered to the address below, as evidenced by written receipt therefore, whether or not actually received by the person to whom addressed; (b) on the third (3rd) business day after being sent, by certified or registered mail, return receipt requested, addressed to the intended recipient at the address specified below; or (c) on the first (1st) business day after being deposited into the custody of a nationally recognized overnight delivery service such as Federal Express, addressed to such party at the address specified below. For purposes of this Section 10.1, the addresses of the parties for all notices are as follows:

| | |
|---|---|
| If to Purchaser: | 5639 Sunset Blvd.<br>Hollywood, CA 90028<br>Attention: Mr. Jim Moushoul |
| If to Seller: | CIRCUIT CITY STORES, INC.<br>4951 Lake Brook Drive<br>Glen Allen, Virginia 23060-9279<br>Attention: Vice President of Real Estate |
| with a copy to: | CIRCUIT CITY STORES, INC.<br>4951 Lake Brook Drive<br>Glen Allen, Virginia 23060-9279<br>Attention: General Counsel |
| and a copy to: | KENNERLY, LAMISHAW & ROSSI, LLP<br>707 Wilshire Blvd., Suite 1400<br>Los Angeles, CA 90017<br>Attention: Matthew I. Lamishaw, Esq. |

 The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served, as hereinbefore provided, by either party upon the other party.

 10.2 <u>Entire Agreement</u>. This Agreement embodies the entire agreement between the parties relative to the subject matter hereof, and there are no oral or written

agreements between the parties, nor any representations, promises or inducements made by either party relative to the subject matter hereof, which are not expressly set forth herein.

10.3   Amendment. This Agreement may be amended only by a written instrument executed by the party or parties to be bound thereby.

10.4   Heading.     The captions and headings used in this Agreement are for convenience of reference only and do not in any way limit, amplify, or otherwise modify the provisions of this Agreement.

10.5   Time of Essence.     Time is of the essence of this Agreement; however, if the final date of any period which is set out in any provision of this Agreement falls on a Saturday, Sunday or legal holiday under the laws of the United States, or the State where the Property is located, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

10.6   Governing Law.     This Agreement shall be governed by the laws of the State of California and the laws of the United States pertaining to transactions in such State.

10.7   Successors and Assigns: Assignment.     This Agreement shall bind and inure to the benefit of Seller and Purchaser and their respective heirs, executors, administrators, personal and legal representatives, successors and permitted assigns. Purchaser shall be permitted to assign Purchaser's rights under this Agreement to an affiliate of Purchaser without obtaining any consent of Seller; provided, however, any subsequent assignment may be made only with the prior written consent of Seller. No assignment of Purchaser's rights hereunder shall relieve Purchaser of its liabilities under this Agreement. This Agreement is solely for the benefit of Seller and Purchaser; there are no third party beneficiaries hereof. Any assignment of this Agreement in violation of the foregoing provisions shall be null and void.

10.8   Invalid Provision.     If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement; and, the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement.

CCS: Los Angeles (Virgil Place), CA Sale [6/17/2009]                                          15

10.9   <u>Attorneys' Fees</u>.     In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages, as provided herein, reasonable attorneys' fees incurred in such suit.

10.10   <u>Multiple Counterparts</u>.     This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart with each party's signature.

10.11   <u>No Recordation</u>.     Seller and Purchaser hereby acknowledge that neither this Agreement nor any memorandum or affidavit thereof shall be recorded of public record in any real property or other public records. Should Purchaser ever record or attempt to record this Agreement, or a memorandum or affidavit thereof, or any other similar document, then, notwithstanding anything herein to the contrary, said recordation or attempt at recordation shall constitute a default by Purchaser hereunder, and, in addition to the other remedies provided for herein, Seller shall have the express right to terminate this Agreement by filing a notice of said termination in the county in which the Property is located or otherwise as may be necessary to give public notice of such termination.

10.12   <u>Merger Provision</u>.     Except as otherwise expressly provided herein, any and all rights of action of Purchaser for any breach by Seller of any representation, warranty or covenant contained in this Agreement shall merge with the Deed and other instruments executed at Closing, shall terminate at Closing and shall not survive Closing.

10.13   <u>Brokers</u>.     Except as contemplated by Section 6.8, no commissions, brokerage fees, finders' fees, or other similar fees shall be due in connection with this Agreement.

10.14   <u>Consent to Jurisdiction of Bankruptcy Court</u>.     THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS AND THE INTERPRETATION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND THE PARTIES HEREO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICTION.

Seller and Purchaser further agree that service of any process, summons, notice or document by U.S. registered mail to any such party's respective address set forth in Section 10.1 of this Agreement will be effective service of process for any action, suit or proceeding with respect to any matters to which it has submitted to jurisdiction as set forth above.  Each of Seller and Purchaser irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court.

SELLER

CIRCUIT CITY STORES, INC.,
a Virginia corporation

By: _Michelle Mosier_____
Name: _Michelle Mosier_____
Title: _VP & Controller_____

PURCHASER

_____
JAMES MOUSHOUL

The escrow terms and conditions of this Agreement are agreed to and accepted this *24th*
day of _____*June*_____, 2009.

ESCROW AGENT:

CHICAGO TITLE INSURANCE COMPANY

By: _____

Name: _____*MAURICE NERI*_____

Title: _____*AVP*_____

Mailing Address:

24300 Town Center Drive, Suite #320
Valencia, CA  91355
Attention: Maggie Watson, National Projects Group

CCS: Los Angeles (Virgil Place), CA Sale [6/17/2009]

18

## EXHIBIT A

### LEGAL DESCRIPTION OF PROPERTY

Parcel 1:

Lot 38 of Grider and Hamilton's Olive Place, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 6 Page 20 of Maps, in the Office of the County Recorder of said County.

Parcel 2:

Lot 39 of East Hollywood Heights, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 5 Page 120 of Maps, in the Office of the County Recorder of said County.