UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA


IN RE:                          . Case No. 08-35653(KRH)
                                .
 CIRCUIT CITY STORES, INC.,     .
                                .
                    Debtor.     . 701 East Broad Street
                                . Richmond, VA 23219
                                .
                                . July 16, 2009
. . . . . . . . . . . . . . . . . 11:06 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Debtor:                 McGuire Woods LLP
                            By:  DOUGLAS FOLEY, ESQ.
                            9000 World Trade Center
                            101 W. Main Street
                            Norfolk, VA 23510

                            Skadden Arps Slate Meagher & Flom
                            By:  IAN FREDERICKS, ESQ.
                            One Rodney Square
                            Wilmington, DE 19899

For Creative Realty
Management LLC:             LeClair Ryan
                            By:  CHRISTOPHER PERKINS, ESQ.
                            951 E. Byrd Street
                            Richmond, VA 23219




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**
**(609) 586-2311  Fax No.  (609) 587-3599**

2

1           THE CLERK:  In the matter of Circuit City Stores

2   Inc.,  hearing on items one and two as set out on debtor's

3   agenda.

4           MR. FOLEY:  Good morning, Your Honor.  Doug Foley of

5   McGuire Woods on behalf of the debtors.  With me at counsel

6   table is Ian Fredericks from Skadden Arps.  Also with us today

7   in Court is Debra Miller who is a director and assistant

8   general counsel of Circuit City, and is overseeing the real

9   estate issues at the company at this point.

10          Your Honor, there is only two items obviously on the

11  agenda this morning and we appreciate the Court scheduling this

12  one off hearing to allow these two matters to be heard.  We

13  understand the Court's schedule this summer is obviously very

14  busy.

15          The initial matter that we set this for, which is

16  matter number one, which I will be addressing shortly, is

17  somewhat time sensitive in the sense that the buyer wants to

18  close and to the extent the Court approves the motion today we

19  would ask that the order be entered today if at all possible.

20  We have actually already submitted it through the electronic

21  system with the clerk's office so it should be available after

22  the hearing for the Court to look at.

23          THE COURT:  You are optimistic about your success on

24  this motion.

25          MR. FOLEY:  Yes, just a little bit, Your Honor.  The

**J&J COURT TRANSCRIBERS, INC.**

3

1 essence of the motion, Your Honor, is to sell an out parcel

2 located in Virginia Beach next to the retail store that we

3 operated there on Independence Boulevard.  This is an out

4 parcel that we owned.  It is a little larger than a half an

5 acre.  The purchase price, there's been several iterations of

6 the purchase agreement with the buyer.  The buyer is Cardinal

7 Capital Partners and Mr. Perkins is here and represents the

8 buyer.

9        We originally entered the agreement May 11th which

10 was amended a couple of times to extend the due diligence

11 period, to make some purchase price adjustments, and to reduce

12 the overbid -- minimum overbid requirements.  The final

13 version, Your Honor, is attached to the papers is June 26 of

14 this year, which was the third amendment.  And the purchase

15 price, Your Honor, is $439,000, but it also includes the waiver

16 of certain claims by an affiliate of Cardinal Capital Partners.

17        The landlord of the Virginia Beach location where we

18 operated was called Circuit City Virginia Beach LLC which is an

19 affiliate entity of Cardinal Capital Partners who is buying the

20 out parcel.  Now they are going to own basically the whole

21 package.

22        They are going to waive two proofs of claim.  One in

23 the amount of $26,655.59 and they are also going to waive their

24 lease rejection damage claim of $593,864.77.  Your Honor, a

25 $52,000 deposit was paid as part of the transaction.  The

4

1  motion seeks relief with respect to obviously a breakup fee and

2  bidding procedures that were going to have bids by July 10th.

3  We did not get any.  We were going to have an auction July 14th

4  if we had gotten any bids.  We obviously did not have the

5  auction.  So the relief with respect to the auction is somewhat

6  moot.

7        But, Your Honor, what we would do is we would offer

8  Ms. Miller's testimony and we would proffer that this

9  transaction was negotiated through the debtor's professionals,

10  DJM Realty LLC and the debtor's in-house real estate staff.  It

11  was negotiated arms length in good faith.  It was marketed for

12  some time.  It's in the best interest of the estate.  We

13  believe it satisfies the best interest test and Section

14  363(b)(1) and that the transaction and the purchaser is

15  entitled to the protections provided for under Section 363(m)

16  of the code.

17        And unless there are any -- anybody that wants to

18  address the Court, we would ask the Court to approve the

19  transaction.

20        THE COURT:  All right.  Thank you, Mr. Foley.  Does

21  any party wish to be heard in connection with the debtor's

22  motion?

23        MR. PERKINS:  Good morning, Your Honor.  Chris

24  Perkins for Cardinal Capital Partners.  Judge, I don't have

25  anything to add to what Mr. Foley said other than to thank the

5

1 debtor and the Court for hearing us today, and if possible to

2 get the order entered this afternoon.

3          THE COURT:  Okay, and you represent Cardinal.

4          MR. PERKINS:  Cardinal Capital, yes, sir.

5          THE COURT:  Very good.  Thank you, Mr. Perkins.

6          MR. PERKINS:  Thank you.

7          THE COURT:  Any other party wish to be heard?  All

8 right.  Mr. Foley, there being no objection to the debtor's

9 motion and the Court finding it to be in order, the Court will

10 grant the motion and I will enter that order today.

11          MR. FOLEY:  Thank you, Your Honor.

12          MR. FREDERICKS:  Thank you, Your Honor.  For the

13 record, Ian Fredericks of Skadden, Arps, Slate, Meagher & Flom

14 on behalf of the debtors.  I will be addressing the second

15 matter on the agenda, and again I appreciate that Your Honor

16 gave us this time this morning, given Your Honor's schedule

17 this summer.

18          The second motion is a motion to -- it's a two-part

19 motion.  One, to establish bid procedures for the sale of the

20 remaining intellectual property assets, as well as an ultimate

21 sale hearing to the extent we receive bids for these assets.

22 Today we are seeking approval of the bid procedures.

23          Briefly, the remaining IP assets.  There are a few

24 carve outs of certain litigation rights and other things that

25 aren't the subject to this motion and may be subject to future

6

1  motions.  But for the most part this is selling the remaining

2  intellectual property in the form of website URLs, trademarks,

3  trade names, things that weren't sold as part of the larger IP

4  sale to Systemax.

5          Among the assets also include the alpine data.  As

6  Your Honor may recall, there were two types of data in the

7  Systemax transaction.  Data being customer information and

8  certain other, you know, purchase history information.  There

9  were two types of data at issue in Systemax.  There was what we

10 called the Circuit City data which was primarily data that had

11 been collected via the internet.  Then there was the separate

12 larger category of alpine data.

13         The alpine data was sold to Systemax on a non-

14 exclusive basis.  The debtors reserved the right to try to sell

15 it to other parties as well.  There may be parties that have an

16 interest and we may seek to sell that pursuant to this motion.

17         We have previously the attorney generals and the CPO

18 had previously expressed some concerns and preliminarily had

19 wondered whether or not the debtors were actually capable of

20 selling this data again.  Obviously the debtor's position is

21 that we are.  But that matter is something that if it needs to

22 be addressed would be addressed at the sale hearing.  We did

23 provide the CPO with notice of this motion.  We also did

24 provide the National Association of Attorney Generals and the

25 attorney generals for, I believe, all 50 states with notice of

7

1  this hearing and this motion.  So, they have been served.  They

2  will obviously be served with the sale notice to the extent the

3  Court grants the relief.

4         What we have laid out for bid procedures, they are

5  very similar to bid procedures this Court has approved

6  previously in the case.  They are modeled after one subset of

7  the procedures that was originally approved when we were

8  seeking going concern and other types of transactions in early

9  January.

10         It sets an objection deadline of August 11th, a bid

11  deadline of August 11th, an auction date of August 18th and a

12  sale date of August 27th.  Briefly, just to provide you with

13  the basis for why we put the objection deadline and the bid

14  deadline together, before we go to an auction especially where

15  the CPO may have concerns or the attorney generals may have

16  concerns about data being sold, we wanted to make sure that ll

17  bidders before they went to the auction had notice of what

18  those objections are.  To the extent we can resolve them like

19  we were ultimately able to do with Systemax, you know, we will.

20  But we didn't want to get to an auction, have people bid, and

21  then have objections later where, you know, parties are

22  asserting things that may have affected how people were going

23  to bid.

24         We propose to serve the sale notice and I believe the

25  bid procedures within five business days.  Also publish it in

8

1    the Wall Street Journal, the New York Times, and I believe the

2    -- either the Financial Times or the USA Today.   I apologize.

3    But it is set forth in the order of the three papers we would

4    publish notice in.

5          The one other atypical form of relief they are asking

6    for here is because we are going in with no stalking horse, we

7    are asking for the Court to approve or to authorize the debtors

8    to be able to give bidders up to a three percent termination

9    fee, combined termination expense reimbursement fee after

10   consultation with the creditor's committee.   We would only

11   award or authorize a termination three percent -- up to a three

12   percent termination fee for one bidder per group of assets.

13         So, for example, if we got one bid on the firedog

14   assets as a group, we would only be able to give one proposed

15   termination fee there.   If we had another person bidding on

16   some other group of assets or we had two people bidding on, you

17   know, another group of assets, out of those two we would only

18   be able to give one termination fee there.   So there wouldn't

19   be overlap in the termination fees.

20         I believe that's everything that I had prepared to

21   address the Court with.   To the extent Your Honor has any

22   questions on the bid procedures, I'm happy to address them.

23         THE COURT:   The one thing that I wanted some

24   clarification on, I was a bit confused.   The data that was sold

25   to Systemax on a non-exclusive basis which is also included in

9

1   this auction, is it being sold again on a non-exclusive basis

2   or is the person who is purchasing it, if somebody does bid for

3   it getting it on an exclusive basis or are you going to be

4   reselling this over and over again?

5           MR. FREDERICKS:  The people who would be buying it

6   would be buying on a non-exclusive basis obviously because it's

7   already been sold to Systemax.  The way that -- partially the

8   way that we are marketing it is in pockets where geographically

9   there are people who have expressed an interest in buying

10  certain geographic regions because those retailers are focused

11  in that region.  That's one way that we are marketing it.  I

12  believe as part of the firedog intellectual property, it may

13  also be marketed as a whole given that firedog was a national

14  -- was a market that was used nationally.  But in any instance

15  it would only be on an non-exclusive basis.

16          THE COURT:  Okay.  Very good.  Does any party wish to

17  be heard in connection with the debtor's motion?  All right,

18  there being no objection and the Court having reviewed the

19  motion and being satisfied with the explanation of counsel

20  provided here today, the Court will grant the motion and I will

21  enter the order.  Has this order been tendered to me for --

22          MR. FREDERICKS:  I do not believe it's been tendered

23  yet.  We wanted to wait to determine whether or not Your Honor

24  had any comments to the bid procedures.  The one change that is

25  being made to the order, when we originally filed the motion,

1  we did not attach a schedule of intellectual property.  A

2  number of parties have asked for it.  To make it easier for

3  parties to see what is available, we have added that as an

4  exhibit to the order.

5        But other than that change in the body of the order

6  referencing that the IP schedule is attached and attaching the

7  schedule, there are no other changes to the order, Your Honor.

8        THE COURT:  All right.  Very good.  And is the entry

9  of this order time sensitive like the preceding one?

10        MR. FREDERICKS:  No, it's not something that needs to

11  be entered today.

12        THE COURT:  So tomorrow would be fine?

13        MR. FREDERICKS:  Tomorrow would be fine, Your Honor.

14        THE COURT:  Okay.  Well if I get it today I can

15  certainly look at it, but it'll certainly be entered by

16  tomorrow.

17        MR. FREDERICKS:  Thank you very much for that, Your

18  Honor.

19        THE COURT:  Okay, is there any other business we need

20  to take up today in connection with Circuit City?

21        MR. FOLEY:  I do not believe so, Your Honor.

22        THE COURT:  The Court has one question.  How are we

23  coming with the plan?

24        MR. FOLEY:  Your Honor, we have changed drafts and

25  versions of the plan with the committee and we are still

11

1  hopeful that by the end of the month we will be filing a joint

2  plan with the debtor and the committee.  There's a few issues

3  that we are still negotiating and working through, but we are

4  hopeful that we will get there.

5          THE COURT:  The other question the Court had was with

6  regard to the appeal that was taken on the sub rent issue.  I

7  had gotten some indication that that issue was being resolved.

8  Has it been resolved or is it going to be resolved or do you

9  know?

10         MR. FOLEY:  I believe it is going to be resolved.  We

11  certainly have paid all the sub rent for all of the

12  participants in the appeal.  We got confirmation from two of

13  the three that their people have received payment and sign-off

14  of two of the three landlord groups as to a dismissal of the

15  appeal as moot.

16         There is one issue with one of the landlord groups

17  that we are trying to work through and we are going to try and

18  follow up today and tomorrow and see if we can't get that put

19  to bed.

20         THE COURT:  All right.  Very good.  All right, well

21  thank you for that.

22         MR. FOLEY:  Thank you, Your Honor.

23         THE CLERK:  The Court is now adjourned.

24                        *  *  *  *  *

25

12

# **C E R T I F I C A T I O N**

1

2 _____I, LYNN SCHMITZ, court approved transcriber,

3 certify that the foregoing is a correct transcript from

4 the official electronic sound recording of the proceedings

5 in the above-entitled matter.

6 /s/ Lynn Schmitz _____Date:  August 3, 2009

7 LYNN SCHMITZ

8 J&J COURT TRANSCRIBERS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25