UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA


IN RE:                    .      Case No. 08-35653(KRH)
                          .
                          .
CIRCUIT CITY STORES,      .
INC.,                     .      701 East Broad Street
                          .      Richmond, VA 23219
                          .
         Debtor.          .      July 23, 2009
. . . . . . . . . . . . ..       11:05 a.m.


TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE

APPEARANCES:

For the Debtor:           McGuireWoods LLP
                          By:  DOUGLAS FOLEY, ESQ.
                               DANIEL F. BLANKS, ESQ.
                          9000 World Trade Center
                          101 W. Main Street
                          Norfolk, VA 23510

                          McGuireWoods LLP
                          By:  DION W. HAYES, ESQ.
                               JOSEPH S. SHEERIN, ESQ.
                               SARAH BECKETT BOEHM, ESQ.
                          One James Center
                          901 East Cary Street
                          Richmond, VA 23219

                          Skadden Arps Slate Meagher
                            & Flom LLP
                          By:  IAN FREDERICKS, ESQ.
                               GREGG M. GALARDI, ESQ.
                          One Rodney Square
                          Wilmington, DE 19899


Proceedings recorded by electronic sound recording, transcript
produced by transcription service
_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311    Fax No. (609) 587-3599

APPEARANCES (Contd'):

For the Official              Pachulski Stang Ziehl & Jones, LLP
Committee of Unsecured        By:  BRAD R. GODSHALL, ESQ.
Creditors:                         JEFFREY N. POMERANTZ, ESQ.
                              10100 Santa Monica Blvd., 11th Floor
                              Los Angeles, CA 90067

                              Pachulski Stang Ziehl & Jones, LLP
                              By:  ROBERT J. FEINSTEIN, ESQ.
                              780 Third Ave., 36th Floor
                              New York, NY 10017

                              Pachulski Stang Ziehl & Jones, LLP
                              By:  JOHN D. FIERO, ESQ.
                              150 California Street, 15th Floor
                              San Francisco, CA 94111

                              Tavenner & Beran, PLC
                              By:  LYNN L. TAVENNER, ESQ.
                                   PAULA S. BERAN, ESQ.
                              20 North Eighth Street, Second Floor
                              Richmond, VA 23219

                              By:  ALAN J. KORNFELD

                              By:  GILLIAN N. BROWN

For U.S. Trustee:             Office of the U.S. Trustee
                              By:  ROBERT V. VAN ARSDALE
                              701 East Broad Street, Suite 4302
                              Richmond, VA 23119

For AAC Cross County          Kelley Drye & Warren LLP
Mall LLC:                     By:  ROBERT L. LeHANE, ESQ.
                              101 Park Avenue
                              New York, NY 10178

                              ---

**J&J COURT TRANSCRIBERS, INC.**

3

1          THE CLERK:  All rise.  United States Bankruptcy Court

2 for the Eastern District of Virginia is now in session.  The

3 Honorable Kevin R. Huennekens presiding.  Please be seated and

4 come to order.

5          UNIDENTIFIED SPEAKER:  In the matter of Circuit City

6 Stores, Incorporated, hearings on Items 1 through 71 as set out

7 on debtor's agenda.

8          MR. FOLEY:  Good morning, Your Honor.  Doug Foley

9 with McGuireWoods on behalf of the debtors.

10          THE COURT:  Good morning.

11          MR. FOLEY:  With me at counsel table is Chris

12 Dickerson from Skadden Arps and Ian Fredericks from Skadden

13 Arps, as well.  Also with me from my firm is Dan Blanks from

14 McGuireWoods.  Your Honor, from the company we have here today

15 Jim Markham, CEO, and Deborah Miller who's assistant general

16 counsel.  Your Honor, the agenda, although it's long, we hope

17 it won't occupy most of the Court's calendar today what we've

18 been able to resolve.

19          THE COURT:  I was counting on that.

20          MR. FOLEY:  Yes, I know.  The first several items,

21 Your Honor, there's been a couple adjustments.  Rather than

22 file another agenda we just figured we'd address those in open

23 court.

24          THE COURT:  That would be fine.

25          MR. FOLEY:  Your Honor, Items 1 through 7, these are

**J&J COURT TRANSCRIBERS, INC.**

4

1  the motion of CC Hamburg New York Partners for entry of an

2  order granting allowance and compelling payment of

3  Administrative Expense Claim Item Number 1.  That's been

4  resolved and can be removed from the docket.

5          Item Number 2 is a motion for relief from automatic

6  stay by Nina Winston.  That has been resolved and can be

7  removed from the docket.  Item Number 3 is the Wells Fargo

8  motion for relief from stay.  That's been resolved and can be

9  removed from the docket.  Item Number 4, Your Honor, this is

10 one where we have -- need to make an adjustment.  This is

11 resolved in principle, but we're not quite there yet.  I spoke

12 to Mr. Savanko (phonetic) this morning, counsel for the movant,

13 and we're still working through that.  So, rather than show

14 that one as resolved and removed from the docket we would ask

15 that the Court carry that over to the August 27th hearing date.

16          THE COURT:  It'll be carried over.

17          MR. FOLEY:  Your Honor, Item Number 5, this is the

18 Dale City Motion for allowance and payment of administrative

19 priority claim.  That has been resolved and can be removed from

20 the docket.  Item Number 6 is motion of Teachers Insurance

21 Annuity Association for immediate payment of administrative

22 rent claims.  That has been resolved and can be removed from

23 the docket.

24          Number 7 is motion of Market Heights, LTD for

25 allowance and payment of administrative rent claims.  Again,

**J&J COURT TRANSCRIBERS, INC.**

5

1   that's been resolved and can be removed from the docket.  Your

2   Honor, Item Number 28 we show on the docket as being adjourned

3   to the August 27th hearing date, however, yesterday we were

4   able to also completely resolve that motion.  That's the motion

5   of Team Retail Westbank, LTD for allowance and immediate

6   payment of administrative rent claims.  That can be shown as

7   resolved and withdrawn from the docket, Your Honor.

8            THE COURT:  It's Item Number 28?

9            MR. FOLEY:  28.

10           THE COURT:  All right.  That's been resolved.  Very

11   good.

12           MR. FOLEY:  Your Honor, that brings us to the matters

13   that we are seeking further adjournment.  Again, Item Number 8

14   is a matter we've been carrying for a long time.  This relates

15   to our motion to approve sell-down procedures and trading

16   equity securities and claims against the debtor's estates.

17   This may have some impact when it comes to plan confirmation

18   time, so, Your Honor, we're asking that that matter be

19   adjourned until the September 22nd hearing date, Your Honor.

20           THE COURT:  All right.  Very good.

21           MR. FOLEY:  Your Honor, Item Number 9, this is -- and

22   10, this is the Motorola motion for allowance and payment of a

23   503(b)(9) claim and the General Instruments Home and Networks

24   Mobility doing business as Motorola.  Those two motions, the

25   movant has requested that they be adjourned once again to the

6

1  August 27th hearing date.  So, we would ask that be noted on

2  the docket.

3          THE COURT:  Okay.  Both 9 and 10 will be moved to

4  August 27.

5          MR. FOLEY:  Your Honor, Item Number 11, this is the

6  motion by Federal Warranty and Assurant with respect to

7  compelling assumption or rejection and in the -- for relief

8  from the automatic stay.  As Your Honor is aware from the

9  previous hearings, we are -- we've been in negotiations with

10  these parties and it got delayed as a result of having to bring

11  in a third party to complete the negotiations, a party that

12  was -- GE -- that was involved in the chain of the underwriting

13  with respect to these warranty contracts.

14          We now have that party at the table and we're very

15  close to a global resolution that we think will result in a

16  substantial recovery for the estate.  Because those

17  negotiations are still ongoing and we hope to finish them this

18  week, we're asking, with Federal Warranty's consent, to adjourn

19  this matter again to the August 27th hearing date.

20          THE COURT:  All right.  That'll be adjourned.

21          MR. FOLEY:  Your Honor, we actually hope to have this

22  motion -- this global settlement approved pursuant to what we

23  hope Your Honor will approve our -- the settlement procedures

24  that are on later in the docket.

25          Your Honor, Item Number 12, this is our lease

**J&J COURT TRANSCRIBERS, INC.**

disposition procedures motion.  As Your Honor is aware, there were several unresolved objections.  At this point Items Number 12(b), Gateway Centers, 12(c), Whitestone Development, and 12(d), Union Square Retail Trust, those are all resolved.  The only one that remains unresolved is 444 Connecticut Avenue, and they have consented to further adjourn that to the August 27th hearing date.  It involves the matter of attorneys fees and cure obligations, Your Honor.

THE COURT:  Very good.

MR. FOLEY:  Your Honor, Item Number 13, this is DIRECTV's motion for setoff and for relief from the automatic stay.  They have requested and we have agreed to further adjourn their motion to the August 27th hearing date.  We are in -- continue to be in global settlement discussions with them.  We've exchanged a preference exposure analysis that we want them to take a look at.  We've agreed that to the extent we cannot reach a global resolution by August 27th hearing date we will focus solely on the relief that's requested in the motion and just try to get this one resolved so we can take it off the docket.

THE COURT:  All right.  Very good.

MR. FOLEY:  Your Honor, Item Number 14, this is Sony Pictures Home Entertainment motion for 503(b)(9) claim.  They are reconciling certain accounts receivable that the estate believes it has against Sony, and they need time to digest

1  that.  We hope, again, to reach a global settlement with them,

2  but they've requested, and we've agreed, to adjourn the matter

3  to the August 27th hearing date.

4         THE COURT:  That'll be adjourned.

5         MR. FOLEY:  Your Honor, Items Number 15, 16, 17 and

6  18, these are all motions for allowance of late filed claim.

7  15 is export development, Canada's motion to allow a late

8  filing of an administrative claim.  16 is the Vertis motion

9  for -- to allow a late claim.  17 is Mr. Chalifoux's motion to

10 file a late claim, and Number 18 is Sennheisser Electric

11 Corporation's motion to file late claim and a 503(b)(9) claim.

12        Your Honor, all of these parties have agreed that

13 it's not right to hear these yet, and so with respect to 15,

14 16, they've agreed to adjourn their motions till the August

15 27th hearing date.  With respect to Item Number 17, this is Mr.

16 Chalifoux's motion.  He's agreed to adjourn that matter till

17 the September 22nd hearing date.  And with respect to Number

18 18, Sennheisser Electric Corp., that -- they've agreed to

19 adjourn their matter to August 27th, Your Honor.

20        THE COURT:  All right.  Very good.

21        MR. FOLEY:  Item Number 19, Your Honor, this is the

22 SouthPeak motion.  There is a pending claim objection with

23 respect to that that corresponds with this motion.  We're

24 trying to reconcile their claims.  They've agreed to adjourn

25 this motion until the August 27th hearing date.

9

1          THE COURT:  All right.

2          MR. FOLEY:  Your Honor, Item Number 20, this is the

3  Newport News -- City of Newport News' motion for payment of

4  certain tax claims.  We filed a response to that, Your Honor.

5  Some of these claims are actually pre-petition claims.  They're

6  not administrative.  They've agreed with some of that analysis.

7  They're still -- we're still working through that with them,

8  but they've agreed and asked us to represent to the Court that

9  they would like their motion adjourned for further settlement

10 discussions until the August 27th hearing date.

11         THE COURT:  All right.

12         MR. FOLEY:  Your Honor, Item Number 21 and 22 are

13 landlord related motions.  Number 21 is Bond Circuit TV

14 Delaware Business Trust to compel payment of administrative

15 claim, and 22 is Myrtle Beach Farms Company, Inc. also seeking

16 payment of administrative claims.  Both of those movants have

17 requested so that we can try to reconcile what they believe is

18 owed until the August 27th hearing date with the debtor

19 response if needed on August 20th, Your Honor.

20         THE COURT:  Very good.

21         MR. FOLEY:  Item Number 23, this is Infogain's motion

22 for an administrative claim.  We filed a preliminary response

23 to that, Your Honor.  We're working through some of the legal

24 issues and factual issues with them.  Their counsel was not

25 available on the August 27th hearing date.  They've requested

**J&J COURT TRANSCRIBERS, INC.**

1  that their motion be adjourned till the September 22nd hearing

2  date, Your Honor.

3           THE COURT:  It'll be adjourned to 22nd September.

4           MR. FOLEY:  Your Honor, Item Number 24, this is the

5  amended motion of Site A, LLC for payment of an administrative

6  claim.  We're continuing to work through the issues them, and

7  they've requested that their motion be adjourned till the

8  August 27th hearing date.

9           THE COURT:  All right.

10          MR. FOLEY:  Item Number 25, Your Honor, this is Towne

11 Square Plaza's motion for -- to amend their proof of claim and

12 to file a late proof of claim.  Similar to the previous

13 motions, Your Honor, they've agreed to adjourn their motion

14 till the August 27th hearing date.

15          THE COURT:  All right.

16          MR. FOLEY:  Your Honor, Item Number 27 -- 26 and 27

17 are, again, both, I believe, landlord motions; Slam Brands'

18 motion for administrative claim and Columbus Dispatch --

19 actually these are not landlords, Your Honor.  Columbus

20 Dispatch is a newspaper and Slam Brands, I believe, is a

21 vendor.  They both agreed to give us some time to reconcile the

22 amounts that are alleged owed under these motions, and so

23 they've requested, and we've agreed, to adjourn their motions

24 till the August 27th hearing date.

25          THE COURT:  All right.  That'll be adjourned.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. FOLEY:  Your Honor, Item Number 28 has been

2   resolved and removed from the docket.  Your Honor, that brings

3   us to the uncontested matters that are on the agenda.  Item

4   Number 29, this is, again, our motion to extend the exclusive

5   period under 1121(b) and (c), Your Honor.  We appreciate Your

6   Honor entering a bridge order carrying us to this hearing.  The

7   relief that we're requesting at this point is to extend the

8   exclusivity period for the debtors and the Committee until July

9   31st, next Friday, and the solicitation period till September

10  29th.  And we have not received any objections to the relief

11  requested and we would ask the Court to go ahead and enter the

12  order granting the full relief that we sought in the motion.

13         THE COURT:  Does any party wish to be heard in

14  connection with the debtor's motion to extend exclusivity?  All

15  right.  That motion will be granted.

16         MR. FOLEY:  Thank you, Your Honor.  Item Number 30 is

17  a request to seek approval of a stipulation relating to a piece

18  of property in Salem -- Rockingham, Salem, New Hampshire --

19  Salem, Rockingham in New Hampshire.  This involves a piece of

20  real estate, Your Honor, that we originally owned and then sold

21  and then leased back.  There was some ministerial obligations

22  that we had to convey title under a 1992 lease that is no

23  longer in place.

24         We were a tenant under this -- at this location under

25  a 1993 lease which has been rejected, and so we're obviously no

1  longer operating there.  But, there is, as the stipulation

2  points out, some remaining obligations to reconveyance

3  obligations.  And so, the way we've agreed to resolve this

4  landlord's concern is to go ahead and give them a quit claim

5  deed for whatever rights we allegedly may have had.

6       We don't believe we have any rights in the property

7  because they were the economic benefit of what we sold, was

8  received back in the '90s, but in order to clean up title there

9  was some subdivision issues and the parcel next to the parcel

10 where we operated that they haven't been able to resolve until

11 recently, and now it's apparently legally right to be able to

12 execute certain conveyance documents.

13      But, the benefit to the estate here, Your Honor, is

14 that they're waiving a $2 million lease rejection damage claim,

15 and they're also waiving other obligations related to attorney

16 fee sharing arrangement agreement.  And so, we believe that the

17 stipulation is in the best interest of the estate and should be

18 approved.  We have not received any objections, Your Honor.

19      THE COURT:  Does any party wish to be heard in

20 connection with the debtor's motion?  All right.  That will be

21 granted.

22      MR. FOLEY:  Thank you, Your Honor.  Item Number 31 is

23 our seventh motion to reject certain executory contracts.  The

24 contracts are listed, Your Honor, in the exhibit to the motion.

25 They're essentially service agreements, one with Amatore, Inc.

**J&J COURT TRANSCRIBERS, INC.**

1  (phonetic), and then, two, with Direct Energy Business

2  Services.  Your Honor, these are obviously agreements we no

3  longer have any use for, and we'd ask the Court to approve the

4  relief sought in the motion.  We have not received any

5  responses.

6          THE COURT:  All right.  Does any part wish to be

7  heard in connection with the debtor's motion authorizing

8  rejection of the executory contracts?  All right.  That motion

9  will be granted.

10          MR. FOLEY:  Thank you, Your Honor.  With respect to

11  Items Number 32, 33, Your Honor, Mr. Fredericks will address

12  the Court with respect to Item Number 33, and counsel for the

13  landlord is also here, Mr. LeHane, who may want to address the

14  Court.  But, as a preliminary matter, we did file this on short

15  notice, and Item Number 32 is our request to approve shortening

16  notice with respect to this motion.  It is consensual and we

17  don't -- there have been no objections.  We would ask the Court

18  to grant the relief with respect to shortening the notice

19  period in Item Number 32.

20          THE COURT:  Does any party have an objection to

21  shortening the notice period?  All right.  That motion will be

22  granted.

23          MR. FOLEY:  And, Your Honor, while I'm up here, since

24  Mr. Fredericks is also going to be addressing the Court with

25  respect to Item Number 35 which is our motion to approve

**J&J COURT TRANSCRIBERS, INC.**

14

1  certain claim settlement procedures, I would ask the Court to

2  approve the procedural relief that we've sought in Items Number

3  34 which, again, is a motion to shorten time and notice with

4  respect to these procedures, as well as the Court granting an

5  expedited hearing to have it heard today.

6          Your Honor, the procedures set forth in Item Number

7  35 have been negotiated with the Committee, so they are an

8  approval with the procedures that are set forth in Item Number

9  35, so we think it's appropriate to grant the motion to shorten

10 time, and obviously the expedited hearing for today.

11         THE COURT:  Does any party wish to be heard in

12 connection with the debtor's motion for an order shortening the

13 notice period and shortening -- and conducting the expedited

14 hearing?  All right.  That motion will be granted, as well.

15         MR. FOLEY:  Thank you, Your Honor.

16         THE COURT:  That's Item Number 34, right?

17         MR. FOLEY:  Yes.

18         THE COURT:  Okay.

19         MR. FOLEY:  And actually, if you look at 35(a), I

20 think our motion for an expedited hearing is set forth as a

21 sub-motion under 35.

22         THE COURT:  That's why I was asking.

23         MR. FOLEY:  Thank you, Your Honor.

24         THE COURT:  All right.

25         MR. FREDERICKS:  Good morning, Your Honor.  Ian

**J&J COURT TRANSCRIBERS, INC.**

1 Fredericks of Skadden Arps Slate Meagher & Flom on behalf of

2 the debtors.  With respect to matter 33 which is the debtor's

3 motion to enter into two agreements modifying a certain lease

4 with AAC Cross County Mall, LLC, by way of background, Your

5 Honor, this -- the lease was the lease associated with the

6 debtors Yonker Super Store.  It was Lease Number 3699.

7         Back in connection with the February lease procedures

8 motion, the debtor solicited bids for this particular location.

9 In connection with that motion and by the bid deadline, the

10 landlord submitted the only bid.  The bid was for a waiver of

11 pre-petition claims, including rejection damage claims,

12 following the auction, and no other submission of bids.

13        The debtors ultimately sought approval of a lease

14 termination agreement with the landlord, and on March 23rd the

15 Court entered an order to that effect.  Recently, the end of

16 June or early July, counsel to debtors was approached by

17 counsel to the landlord to determine whether or not the debtors

18 would be amendable to seeking, basically to amend that lease

19 termination agreement and reinstate the lease, and thereafter

20 enter into an assumption and assignment agreement with a

21 proposed assignee.

22        Essentially, the landlord was approached by a party

23 that was interested in leasing that space.  That party was

24 interested in taking the old Circuit City lease as opposed to

25 entering into a new lease.  The landlord was amenable to that,

1  approached the debtors, and after negotiations the landlord

2  ultimately agreed to basically waive the remaining claims which

3  were essentially the landlord Subrand (phonetic) and other

4  administrative claims for taxes that had accrued and not yet

5  been paid and various other asserted claims.  The landlord has

6  asserted that those claims are in excess of $140,000.

7       Ultimately, after discussions with the Committee

8  providing the relevant pleadings to the Committee, for their

9  input the debtors determined that it was in the best interests

10 for their estates to proceed with the instant motion which

11 seeks to -- seeks approval of the two agreements, 1) to modify

12 and reinstate the lease, and 2) to assume, assign and sell the

13 lease to the assignee.

14       As Mr. Foley mentioned, the landlord's counsel is in

15 the courtroom.  The landlord does support the relief requested.

16 There have been no objections.  The Committee has no objection

17 to this, as well, and ultimately the benefit to the estate is

18 a, what amounts to between the two agreements a collective

19 waiver of all claims against the estate associated with the

20 lease.

21       THE COURT:  In the amount of $140,000, approximately.

22       MR. FREDERICKS:  That would be the most recent.  As a

23 result of the lease termination agreement, the rejection -- any

24 rejection damage claims or any pre-petition unsecured claims

25 had already been waive.  So, it amounts to a complete claims

**J&J COURT TRANSCRIBERS, INC.**

1 waiver.

2          THE COURT:  All right.  I understand the benefit to

3 the estate.  What I didn't understand was why it made any

4 difference why they couldn't enter into their own new lease as

5 opposed to having the assumption and assignment of the old

6 lease.  Why couldn't they just enter into a lease that was the

7 same as the Circuit City lease?  I just had trouble connecting

8 those dots.

9          MR. FREDERICKS:  As I understand it, Your Honor, and

10 I'll let landlord's counsel speak to it more specifically or

11 clarify it, as I understand it, the Circuit City lease had

12 certain use provisions that are beneficial to the assignee that

13 may or may not be available now if a new lease were entered

14 into.

15          THE COURT:  Oh, okay.  That makes good sense.  I

16 understand.

17          MR. FREDERICKS:  That's the reason that we've been

18 given, and I don't know if you'd like to hear from landlord's

19 counsel to see if there's any further explanation.

20          THE COURT:  All right.  Does any party wish to be

21 heard in connection with this matter?

22          MR. LeHANE:  Good morning, Your Honor.  Robert

23 LeHane, Kelley Drye and Warren on behalf of the landlord, AAC

24 Cross County, LLC.  I absolutely agree with all the way the

25 transaction has been described and the way Mr. Fredericks

1  described the benefit.  The assignee to require taking the

2  existing lease, and there were other benefits.  Frankly, the

3  landlord was comfortable with that lease, and all the parties

4  wanted the transaction to go smoothly.  And there would be

5  significant delay whenever you're renegotiating a new lease and

6  drafting a new lease.  So, this allowed all the parties to have

7  a new transaction and get the assignee into the space as soon

8  as possible.

9       THE COURT:  Excellent.  Okay.  Well, I'm glad we've

10  got a tenant in that space.  All right.  Does any other party

11  wish to be heard in connection with this matter?  All right.

12  The Court will grant the motion.

13       MR. LeHANE:  Thank you, Your Honor.

14       MR. FREDERICKS:  Skipping over matter 34, which was

15  the motion to shorten, and turning to the settlement

16  procedures, by way of background, Your Honor, what we -- what

17  the debtors did here was reviewed various settlement procedures

18  that have been approved by this Court and other Courts, and

19  tried to establish something that would streamline the process.

20       We ultimately provided a draft to the Committee in

21  advance of the deadline to file the motion to get it on for

22  the -- for this hearing on regular notice.  The Committee asked

23  us to hold off on filing so they could provide comments prior

24  to it being filed, and ultimately consented to having it heard

25  on shortened notice.

1           After negotiations with the Committee we arrived at a

2    consensual form procedures which are set forth in the motion,

3    and I'll provide you with a brief summary and then ask if you

4    have any additional questions.  It basically sets up a notice

5    procedures concept that, depending on the tier that the

6    settlement agreement falls under, notice would either be five

7    days or ten days.  We have -- rather than provide business days

8    as opposed to other days, we've said that the notice procedures

9    in any time frames are governed by the Bankruptcy Rule 9006.

10   That was the easiest way to just -- to make sure that

11   everything was consistent.

12           THE COURT:  Which, of course, changes later this

13   year.

14           MR. FREDERICKS:  I'll need to look at that to see how

15   it impacts it, but --

16           THE COURT:  Okay.  Just commenting is all.  I assume,

17   then, that the new time table will adjust whenever the new rule

18   goes into affect?

19           MR. FREDERICKS:  I believe that would be the case,

20   but I'd have to confirm.  Either way we'll certain confer with

21   the Committee, and to the extent that changes need to be made

22   to make sure they're consistent and clear we'll do so.

23           THE COURT:  All right.

24           MR. FREDERICKS:  The -- it also -- in addition to

25   those five and ten-day time frames, there's a concept in here

1 where a party, before the expiration of the applicable time

2 frame, can make a request for additional time.  Any debtors --

3 and by making that request the party would automatically be

4 granted an additional five days.  One of the concerns the

5 Committee had was, if they had requested additional

6 information, they didn't want to have to object within that

7 five-day period if that additional information had not been

8 provided.

9         So, we've made it the later of the five days, or

10 three days following when that information was provided.

11 The -- it provides for notice to counsel to the Committee, the

12 Office of the United States Trustee, and then the core 2002

13 list in this case.  Otherwise, no other party except an

14 affected party would receive notice of the settlement.

15         The two-tier -- there are two tiers with respect to

16 disputed claims, and then two tiers with respect to what I'll

17 call cause of action and receivable claims which are the

18 debtor's causes of action and other type receivable claims.

19 With respect to the disputed claims, Tier 1 is the resolution

20 of any claim that would result an allowed claim of $500,000 or

21 less.  That's irrespective of whether it's an unsecured or an

22 administrative claim.  And then anything over 500,000 would

23 fall into Tier 2.

24         The -- with respect to the causes of action and

25 receivable claims, Tier 1 is any claim or -- I'm sorry -- is

1  any cause of action or receivable that where the compromise is

2  greater than -- results in a recovery greater than 75 percent

3  of the debtor's estimate of what they could recover through

4  litigation, or results in a payment of less than a million

5  dollars.

6       Tier 2 is anything over a million dollars, or

7  anything that results in a compromise, and it results in a

8  compromise where the debtor's compromising more than 25 percent

9  of the claim.  So, it's less than 75 percent of the debtor's

10  value.

11       The procedures are designed to basically streamline

12  the process so that the debtors do not need to go through the

13  additional burden and cost associated with filing a separate

14  9019 motion for each settlement.  They're designed to be broad

15  enough to encompass pretty much any kind of settlement.  The

16  debtors reserve the right to seek 9019 -- specific 9019 relief

17  if they deem it appropriate, but otherwise I imagine that

18  nearly every settlement would fall under these procedures.

19       One additional -- the procedures to not require a

20  separate order for after the notice period has run.  There's a

21  concept built in of a certificate of no objection or a

22  certificate that the objection has been resolved that we would

23  file on the docket to indicate that the period is run, there's

24  no further time, and essentially the settlement has become

25  final.  At that point in time, or after the period runs, the

1 settlement would deem to be a final order for purposes of an

2 appeal -- for purposes of the appeal period running.

3          One thing that isn't mentioned in the motion, but the

4 debtors would request that the Court allow is to the extent

5 that a party really did want an individual order, the debtors

6 would like to have the ability to present a consensual form of

7 order approving the stipulation to the Court through the BOPS

8 system as opposed to going by separate motion.

9          Unless the Court has any questions I believe that

10 concludes my presentation on this motion and the debtors would

11 request that the Court enter an order approving the relief

12 requested.

13          THE COURT:  All right.  I'd like to hear from the

14 Committee on this motion.

15          MS. TAVENNER:  Good morning, Your Honor.  Lynn

16 Tavenner with the firm of Tavenner & Beran appearing on behalf

17 of the Committee.  Mr. Fredericks is accurate.  This has been

18 something that the Committee has spent considerable amount of

19 time looking at with respect to the underlying procedures.  At

20 this point we believe that the motion that's presented today

21 effectively balances the interest of the estate in obtaining

22 some streamline procedures with the individual rights of the

23 claimants that would be affected, and we have no objection to

24 the relief that is requested.

25          THE COURT:  All right.  Thank you, Ms. Tavenner.

**J&J COURT TRANSCRIBERS, INC.**

1  Does any other party wish to be heard in connection with the

2  debtor's motion?  All right.  The Court has reviewed the

3  procedures and such and I think that it makes good sense, and

4  so the Court will grant your motion.

5          MR. FREDERICKS:  Thank you, Your Honor.  I believe

6  Mr. Foley will be handling the remainder of the agenda.  Thank

7  you.

8          MR. FOLEY:  Your Honor, Item Number 36 on the docket,

9  this is the motion by Schimenti Construction Company.  I spoke

10  to Mr. Perkins last night and this morning about at least a

11  partial resolution of this motion.

12          As Your Honor has probably gleaned from the papers,

13  our concern is that this is an improper use of Rule 2004 with

14  respect to just trying to accelerate claims reconciliation and

15  resolution which would, we think, would set a pretty bad

16  precedent in the case.  But, in any event, in order to avoid

17  having to have this heard today, Mr. Perkins and I have agreed.

18  We produced some documents to him this morning, in fact, some

19  hard files that we had.

20          They're looking for some construction files relating

21  to two locations, one in North Plainfield, New Jersey which was

22  a location that was under construction at the time that we

23  filed.  We never opened it.  And one was in New York City that

24  we operated for a brief period of time.  And there are unpaid

25  claims that are owed to Schimenti.  We've been reconciling

**J&J COURT TRANSCRIBERS, INC.**

24

1  those claims.

2          One claim is under objection which is an alleged

3  503(b)(9) claim.  The question with that claim, it's about

4  $45,000, is whether it's goods or services, which is one of the

5  matters that we will be addressing on August 27th.  The other

6  claim is just a general unsecured claim, and we've reconciled

7  all except for about $17,000 of that claim.

8          But, again, in order to avoid having Your Honor hear

9  this motion, and we hope to make it moot by August 27th, we

10 have regained access to a database where all of our

11 construction files were called Exposite.com, and we're working

12 to get access to that site to see if we can't download whatever

13 files they want to look at and see if that obviates the need

14 for a 2004 examination.  But, if it doesn't, then we'll be back

15 here on August 27th.

16         So, basically, Your Honor, we would ask the Court to

17 adjourn Item Number 36 until the August 27th hearing date.  Mr.

18 Perkins left before court.  He said he didn't need to stick

19 around and just asked me to represent that that's what they

20 would like to do.

21         THE COURT:  Okay.  That request be granted.  This

22 matter be adjourned to August 27th.

23         MR. FOLEY:  Thank you, Your Honor.  Item Number 37,

24 Your Honor, is our motion to establish bidding procedures and a

25 sale process for certain real estate that the debtors own in

*J&J COURT TRANSCRIBERS, INC.*

1  Marino Valley.  Your Honor, this is -- the proposed stalking

2  horse bidder here is 99 Cents Only stores.  The parcel is 3.5

3  acres.  The proposed purchase price is 2.25 million.  There has

4  been a deposit paid of 225,000.

5          We're asking the Court today only to approve

6  procedures by which we can sell this property.  Part of the

7  procedures is a request for an expense reimbursement to the

8  extent that 99 Cent Only stores is not the successful purchaser

9  of $35,000.  We believe that is reasonable, Your Honor.

10         he other procedures that we have requested the Court

11  to approve is that qualified bids be of a minimum amount of

12  $2.35 million and require a $235,000 deposit, an irrevocable

13  offer on the similar form, this is stalking horse, and that

14  those bids be received by August 13th at 5 p.m.  And to the

15  extent there are any qualified bids an auction will be held on

16  August 20th with a sale hearing to confirm the sale to the

17  winning bidder on August 27th.

18         Your Honor, there was an objection filed by Lowe's

19  stores as Your Honor saw.  This was filed by Mr. Ackerlee

20  (phonetic) and an abundance of caution about the timing and the

21  date and what we were seeking today, but he and I also spoke

22  this morning and he -- we've agreed that to the extent we

23  cannot resolve their underlying objection, Your Honor, which

24  involves a second sign easement agreement with Lowe's stores,

25  there is a sign easement agreement with the developer that's

1 being transferred as part of this proposed sale, but there's a

2 second sign easement agreement with Lowe's.

3         And there have been discussions already between the

4 prospective purchaser and Lowe's about how we can best convey

5 that agreement either through 365 or through a sign agreement

6 or -- it really may depend on who the winning bidder is,

7 obviously here, because we're still trying to maximize the

8 value of the underlying real estate.

9         So, we have agreed to adjourn their objection until

10 the August 27th hearing date to the extent it's not resolved by

11 then, but we anticipate that it will be resolved.  But,

12 otherwise, Your Honor, we would ask the Court today to simply

13 approve the procedural relief, setting up the bid process, and

14 we have not received any objections, Your Honor.

15         THE COURT:  And the objection of Lowe's did not

16 appear to go to the procedural aspects.

17         MR. FOLEY:  Correct.  Mr. Ackerlee just filed it

18 because he wasn't sure whether substantive objections to the

19 underlying motion were due for this hearing or for the August

20 27th hearing date.

21         THE COURT:  Very good.  Does any party wish to be

22 heard on the debtor's motion for an order approving bidding

23 procedures for the sale?  All right.  Those bid procedures will

24 be approved and the motion will be granted.

25         MR. FOLEY:  Thank you, Your Honor.  Mr. Blanks from

1  my office will be addressing the Court with respect to Items

2  Number 38 through 59 which is the status of our omnibus claim

3  objections.  But, when we were here last time, Your Honor, we

4  advised the Court that we wanted to have the Court rule on a

5  particular issue relating to the 503(b)(9) objections under

6  omnibus objection Number 5 and 6, and this was the issue of

7  what constitutes a good, what the right definition of good is,

8  whether you adopt the ECC definition, whether or not you adopt

9  the predominant purpose test, or whether or not you can

10 segregate a claim that's part services and part goods and have

11 part of it allowed.

12        Anyway, Your Honor, we just wanted to advise the

13 Court that we did file a notice of hearing yesterday in which

14 we gave specific notice to every party that filed a response to

15 omnibus objection Number 5 and 6 on that issue that to the

16 extent anybody wanted to file supplemental papers to what's

17 already been filed they can file them before the August 27th

18 hearing date.  And we will be seeking the Court to make a

19 ruling on the August 27th hearing date as to that so that we'll

20 have the proper guidance going forward with respect to these

21 claims.

22        THE COURT:  Very good.

23        MR. BLANKS:  Good morning, Your Honor.  Dan Blanks on

24 behalf of the debtors.  The next item below on the agenda are

25 Items Number 38 through 59 which are the debtor's omnibus

1 objections to claims.

2        To date, Your Honor, there have been 15,148 proofs of

3 claim filed in the debtor's bankruptcy cases.  This includes

4 all of the 503(b)(9) claims, as well as the general unsecured

5 claims, as well as administrative claims secured in priority.

6 The debtors are continuing to review their -- all of these

7 claims and reconcile the asserted liabilities with their books

8 and records.

9        To date we have filed 26 omnibus objections to

10 claims.  In those 26 omnibus objections to claims, Your Honor,

11 we have sought the disallowance of approximately 2,400 claims.

12 In addition, Your Honor, pursuant to those 26 omnibus

13 objections, we've sought the reclassification of approximately

14 2400 claims.

15       Currently, Your Honor, there are omnis 2 through 23

16 up for status at this morning's hearing.  Omnis 2 through 10

17 are -- have been adjourned from previous omni hearings and are

18 up for additional status today.  We would ask the Court to

19 adjourn the status hearing on those particular omnis over to

20 the August 27th omnibus hearing date.

21       With respect to omnis 11 and 23 which are listed at

22 Agenda Items Number 47 through 59, they are up for status at --

23 for the initial time at this morning's hearing.  Your Honor,

24 with respect to omni Number 11 -- in omni 11 and on the 12, we

25 sought the disallowance of certain claims with respect to

1  pension claims and 401(k) plans claims.  In omni 11 we sought

2  the disallowance of 276 claims, and there were nine responses.

3  With respect to omni Number 12, we sought the disallowance of

4  275 claims, and there were 13 responses.

5        With respect to omni Number 13, we sought the

6  disallowance of certain amended claims.  Included in that omni

7  objection there were 47 claims and there were two responses.

8  With respect to omni Number 14 which we sought the

9  reclassification of certain non-good 503(b)(9) claims, we

10 included 17 claims in that omni objection.  There were zero

11 responses.

12       With respect to omnis 15, 16, 17 and 18, we sought

13 the reclassification of certain equity holder interest claims,

14 reclassification to interests.  In omni 15 there were 500

15 claims and we received 11 responses.  With respect to omni 16,

16 there were 500 claims included in that objection and we

17 received 13 responses.  With respect to omni 17, we included

18 500 claims in that particular objection and we received 11

19 responses, as well.

20       With respect to 18, we included 27 claims in that

21 objection and we received three responses.  With respect to

22 omni 19, we sought the reclassification of certain

23 mis-classified claims to general unsecured claims.  Included in

24 that objection were 196 claims and we received 29 responses.

25       With respect to omni Number 20, we sought the

1 reclassification of certain 503(b)(9) claims for goods not

2 received within the 20 days to meet the definition of

3 503(b)(9). Included in that objection there were 94 claims.

4 We received 13 responses. With respect to omni 21, we sought

5 the disallowance of certain duplicative claims. Included in

6 that objection were 53 claims and we received three responses.

7 With respect to omni 22, these are omni -- these are

8 claims for which we thought the liability was asserted against

9 the improper debtor, and included in that objection there were

10 36 claims and we received six responses. And lastly, Your

11 Honor, in omni Number 23 we sought the disallowance of certain

12 duplicative 503(b)(9) claims. Included in that objection were

13 36 claims and we received eight responses.

14 With respect to all of the claims for which a

15 response was filed with respect to omnis Number 11 through 23

16 we would ask the Court to adjourn that hearing over to the

17 August 27th hearing. With respect to the claims for which no

18 response has been filed, we'd ask the Court to order the relief

19 requested in the omni objection. And what we would propose is

20 to submit a single order for each individual omni with

21 different exhibits, one for the adjournment and the other one

22 for the ordered language.

23 THE COURT: All right. Very good. Now -- and just

24 so our courtroom deputy would be able to docket all of this

25 correctly, I'd like to go through just by docket numbers so

**J&J COURT TRANSCRIBERS, INC.**

1  that we can make sure that I understand the relief you're

2  requesting.  And as I understand it we pick that up with Docket

3  Number 47 --

4         MR. BLANKS:  Yes, Your Honor.

5         THE COURT:  -- which begins with your 11th omnibus,

6  and that's the one where you're asking for relief to be granted

7  in connection with that objection for all of the parties that

8  did not file any response.

9         MR. BLANKS:  Yes, Your Honor.

10        THE COURT:  And then carry over to August 27 --

11        MR. BLANKS:  Yes, Your Honor.

12        THE COURT:  -- any matters where a response was

13  filed.

14        MR. BLANKS:  Yes, Your Honor.

15        THE COURT:  Okay.  And now, Number 48, we're going to

16  do exactly the same thing there?

17        MR. BLANKS:  Yes, Your Honor.

18        THE COURT:  49, we're going to do exactly the same

19  thing there?

20        MR. BLANKS:  Yes, Your Honor.

21        THE COURT:  That's Number 13 omnibus.  Number 50,

22  we're going to do the same thing there?

23        MR. BLANKS:  Number 50 is the only caveated one.

24  There were no responses filed to that particular omnibus

25  objection, so there will be no adjournment to that particular

1  omni.

2           THE COURT:  Right.  I made that note as we went

3  through, but obviously, yes, the same thing had there been a

4  response.

5           MR. BLANKS:  Yes, Your Honor.

6           THE COURT:  Number 51 would be the same thing?

7           MR. BLANKS:  Yes, Your Honor.

8           THE COURT:  Okay.  And 52, relief be granted.  For

9  those that did not file a response carried over to August 27th

10  for those who did?

11          MR. BLANKS:  Yes, Your Honor.

12          THE COURT:  And 53 would be the same?

13          MR. BLANKS:  Yes, Your Honor.

14          THE COURT:  54 will be the same.  55 will be the

15  same.  56 will be the same.  57 is the same.  58 is the same,

16  and 59 is the same.

17          MR. BLANKS:  Yes, Your Honor.

18          THE COURT:  All right.  Now, let's -- what are we

19  doing with the omnibus Number 38 through 46?

20          MR. BLANKS:  38 through 46.  What's currently up for

21  status are the claims for which a response was previously filed

22  and was up for a previous status hearing at a previous omni

23  hearing.  We'd ask the Court to adjourn those matters over to

24  August 27th, as well.

25          THE COURT:  So, all of those matters are being

**J&J COURT TRANSCRIBERS, INC.**

1   adjourned over to -- Items 38 through 46 are being adjourned to

2   the 27th?

3         MR. BLANKS:  Yes, Your Honor.

4         THE COURT:  Very good.  I understand.  Thank you.

5         MR. BLANKS:  Thank you.

6         MR. FOLEY:  Your Honor, Items Number 60 through 71

7   are fee applications for professionals, Your Honor.  With

8   respect to the debtor's professionals, they are Items Number --

9   Docket Items Number 60 through 67, and these are all second

10  interim fee applications, and -- except with respect to

11  Rothschild which I'll describe in a minute, Your Honor, all of

12  the debtor's professionals, and as well as the Committee's

13  professionals except for Jefferies which the Committee counsel

14  can address, covered the period of February 1st through April

15  30th, 2009.  And with respect to Rothschild, Your Honor, the --

16  this is their second and final fee application.  There is an

17  adjustment.  Your Honor, I have --

18        THE COURT:  And that's Number 67 if I --

19        MR. FOLEY:  67, Your Honor.

20        THE COURT:  All right.

21        MR. FOLEY:  Your Honor, I do have a -- if I could

22  hand up to the Court a demonstrative exhibit that has --

23  provides a summary of all the different fee applications.  Your

24  Honor, there is an adjustment to the numbers that are on the

25  chart that I showed Your Honor with respect to Rothschild.

1  There was an issue with respect to the calculation of value

2  attributable to the earn-out portion of the sale price of the

3  IP assets that Rothschild was involved in.  And when the

4  company received their fee statements they questioned how they

5  calculated some of the valuations.  And the end of those

6  negotiations resulted in a downward adjustment in the value

7  which had a similar affect on reducing the fee because it was a

8  percentage off of the value.

9         So, essentially the -- if you look at the Rothschild

10  number, Your Honor, which is Docket Item Number 67, that number

11  will be reduced by $23,000 because there was a million dollar

12  adjustment off of the value and the fee is 2.3 percent off of

13  the value.  So, that -- when we submit orders, Your Honor, with

14  respect to -- if Your Honor approves these, the Rothschild

15  order will be $23,000 less than the number in that far right

16  column.

17         Your Honor, the -- we've also included for

18  convenience the -- a summary of -- which I have provided to

19  counsel of the Committee -- of all of the professional fee

20  applications for the Committee professionals, as well.  Your

21  Honor, we have not received any objections from any parties or

22  the United States Trustee, and we would ask the Court to grant

23  the applications as set forth on the agenda.  Unless the Court

24  has any questions.

25         THE COURT:  All right.  Very good.  Does any party

1 wish to be heard in connection with the fee applications

2 concerning the debtor's professionals?  This is Items Number 60

3 through 67 on the agenda.  All right.  Mr. Foley, the Court has

4 reviewed these fee applications and I find them to be in order,

5 and with the adjustment that you represented with regard to the

6 Rothschild application, the Court will approve the applications

7 as they have been submitted.

8          MR. FOLEY:  Thank you, Your Honor.

9          MS. TAVENNER:  For the record again, Lynn Tavenner,

10 Your Honor, appearing on behalf of the remaining Agenda Items

11 68, 69, 70 and 71.  And, Your Honor, Mr. Foley was so kind to

12 include in his demonstrative exhibit the amount of the fees

13 that are requested by the various professionals on behalf of

14 the Committee, as well.

15          My firm did file a notice with respect to the four

16 fee applications.  Those notices do include the exact same

17 numbers that are on the demonstrative exhibit before you.  Your

18 Honor also would note that with respect to the applications

19 there are two for -- there's an application for Pachulski

20 Stang, as well as my firm as counsel -- co-counsel to the

21 Committee.

22          There is Item 69, the application for Protiviti,

23 Inc., financial advisor for the Committee who is continuing in

24 an ongoing position, as well as Item 71 which is the final

25 application for Jefferies & Company.  Given where we are in

**J&J COURT TRANSCRIBERS, INC.**

1  this -- the case at this point, the services of Jefferies &

2  Company are no longer needed going forward.

3          I would also note, Your Honor, that Mr. Rob Smith

4  from Protiviti is in the courtroom, and in addition, Jefferies

5  & Company does have representatives on the phone in the event

6  that you have any specific questions.  I would note that we

7  received no objections.  The matter was properly noticed, and

8  we would respectfully request that Your Honor enter an order

9  approving all four of the applications as presented.

10          THE COURT:  All right.  Very good.  Does any party

11  wish to be heard in connection with the applications for

12  compensation on behalf of the Committee's professionals?

13                    (No audible response)

14          THE COURT:  All right, Ms. Tavenner, the Court has

15  reviewed the applications, and I must say, I find them to be,

16  you know, very reasonable in light of the applications of the

17  debtor's professionals in the case.  It's certainly

18  well-proportioned and I commend the good work that the

19  Committee has provided to the Court in this case and I will

20  approve the applications as they have been submitted.

21          MS. TAVENNER:  Thank you, Your Honor.  We'll tender

22  orders.

23          THE COURT:  All right.  Mr. Foley, is there any other

24  matter that we need to take up this morning?

25          MR. FOLEY:  No, Your Honor.  That concludes the items

37

1  on the agenda and we don't have any non-agenda items today to

2  bring up to the Court.

3           THE COURT:  All right.  And you're welcome to

4  continue expanding the size of the agenda so long as we keep it

5  proportional to the amount of time we have to spend dealing

6  with these matters.

7           MR. FOLEY:  That sounds good to us, Your Honor.

8           THE COURT:  It's always good when you work out these

9  matters, and so I commend you for the fact that you are

10 seemingly to do that.

11          MR. FOLEY:  Thank you, Your Honor.

12          THE CLERK:  All rise.  Court is now adjourned.

13                          * * * * *

14              **C E R T I F I C A T I O N**

15          I, KATHLEEN BETZ, court approved transcriber,

16 certify that the foregoing is a correct transcript from the

17 official electronic sound recording of the proceedings in the

18 above-entitled matter, and to the best of my ability.

19

20 /s/ Kathleen Betz      DATE:  July 30, 2009

21 KATHLEEN BETZ

22 J&J COURT TRANSCRIBERS, INC.

23

24

25 (CR)


                    **J&J COURT TRANSCRIBERS, INC.**