Wendy T. Housden
10100 Ridge Run Road
Chesterfield, VA 23832



August 5, 2009

CLERK OF THE BANKRUPTCY COURT
United States Bankruptcy Court
701 East Broad Street, Room 4000
Richmond, Virginia 23219

    RE: Circuit City Stores, Inc., et al., Case NO. 08-35653, Claim 7913

Dear Sir:

    Enclosed please find the Response of Claimant Wendy T. Housden (Claim 7193 for payment of unpaid, accrued paid time off) to the Twenty-fifth Omnibus Objection to Claims of Debtors in the above referenced matter. Please file this Response in the records of the foregoing bankruptcy proceeding.

    If you have any questions, please do not hesitate to contact me.

                      Very Truly Yours,

                      Wendy T. Housden

cc:    Counsel for Debtors as Shown in 25th Omnibus Objection

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| CIRCUIT CITY STORES, INC., ) | Case No. 08-35653 (KRH) |
| et al., ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

**RESPONSE OF CREDITOR WENDY T. HOUSDEN IN OPPOSITION
TO DEBTORS' TWENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS
(CLAIM NO. 7193 FOR PAID TIME OFF)**

The undersigned claimant, Wendy T. Housden, appearing pro se, hereby files the following response in opposition to Debtors' Twenty-Fifth Omnibus Objection to Claims.

1. Claimant timely filed a claim in the amount of $1,879.29 due and owing as compensation for unused paid time off accrued at the time of Claimant's termination of employment (claim number 7193).

2. Debtor has filed its Twenty-Fifth Omnibus Objection (hereinafter "25th Objection") in this proceeding objecting to claim number 7193 and other claims, contending that, contemporaneous with the filing if its Petition in Bankruptcy with this court, it changed its employment policies to eliminate compensation for paid time off. 25th Objection at par. 13.

3. Unlike some of the other claimants who may be subject to the 25th Objection, Claimant Housden was terminated on November 7, 2008, *before* the filing of the petition in bankruptcy and before the amendment of Debtor's employment policies.

–2–

See Exhibit A hereto (Memorandum from Steve Saunders Dated Nov. 7, 2008 and entitled "Reduction in Force.") ("RIF Memorandum)

4.  Although the RIF Memorandum which is Exhibit A suggests that Housden's employment would continue until January 9, 2009, in fact Housden was escorted from the premises along with other employees subject to the November 7, 2008 reduction in force, performed no other work after that date and had no access to Circuit City facilities. In fact and substance, Housden was terminated on November 7, 2008.

5.  In connection with her termination, Housden was presented with an official Circuit City document entitled "What Happens to My Benefits When My Employment Ends and Frequently Asked Questions," dated October 2008 (hereinafter "FAQ") and thus presumably current a few weeks later when the termination occurred. (A copy is Exhibit B hereto.)

6.  Debtor's FAQ document said, in relevant part:

> **"6.   "As a part-time or full time hourly Associate, will I be paid for unused, accrued PTO?"**
>
> "Yes. You will be paid for unused, accrued PTO upon your termination of employment in your final paycheck."

7.  Although Claimant Housden continued to receive compensation for several weeks after her termination, such payments can only be deemed severance pay in as much as she had no responsibilities or duties as an employee, no place of work and no obligation to report to any of her former supervisors at Debtor. She was, for all intents and purposes, no longer an employee of Circuit City after November 7, 2008.

8.  Claimant's rights and benefits were fixed upon the date of her termination by the policies of her employer then in force. Those polices, insofar as relevant here, are

the policies embodied in the FAQ (Exhibit B). Her rights included the right to be paid for unused paid time off.

9.   Debtor's attempt to change its policies of employment *after* terminating Claimant and hundreds of other employees on November 7, 2008 should be deemed ineffective. Her rights to compensation for unused, accrued PTO were vested at the time of her termination based upon the employment policies then in effect and communicated to her by Debtor in writing delivered at the time of termination.

10.   Claimant's right to receive payment for unused, accrued PTO constituted an essential element of her compensation and thus is a contractual obligation which Debtor could not unilaterally abrogate, as it attempts to do here.

11.   For the reasons set forth above, Debtor's Objection 25th should be denied insofar as directed at Claim Number 7193 and Claimant should be entitled to receive as a priority claim the amount due her for accrued, unpaid time off.

12.   Claimant states that the foregoing statements and true and correct to the best of her personal knowledge and are made under penalty of perjury.

*Wendy J Housden*

Wendy T. Housden
10100 Ridge Run Road
Chesterfield, VA 23832

Telephone: (804)744-5973
E-Mail: whousden@comcast.net

-3-

-4-

## CERTIFICATE OF SERVICE

The undersigned certifies that the original of the foregoing Response to Omnibus Objection was delivered by United States Mail, postage prepaid, to:

CLERK OF THE BANKRUPTCY COURT
United States Bankruptcy Court
701 East Broad Street, Room 4000
Richmond, Virginia 23219

and that copies of the foregoing were served by United States Mail, postage prepaid to counsel for Debtors as follows:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 18988-0636

and

Chris L. Dickerson, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
155 North Wacker Drive
Chicago, IL 60606

and

Dion W. Hayes, Esq.
Douglas M. Foley, Esq.
MCGUIREWOODS, LLP
901 E. Cary Street
Richmond, VA 23219

_____
Wendy T. Housden

Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, VA 23233-1464
T 804.486-4000

TO:     Affected Employees of the Circuit City Stores, Inc. Support Center

FROM:   Steve Saunders
        Director of Associate Relations

DATE:   November 7, 2008

RE:     Reduction in Force

We are providing this notice to inform you that Circuit City Stores, Inc. ("Circuit City") has made the difficult decision to reduce the workforce at its Store Support Center located at 9954 Mayland Drive, Richmond, VA 23233-1464. It is anticipated that your employment with Circuit City will terminate on January 9, 2009 or a date within 14 days thereafter which may be provided to you by Circuit City (your "Termination Date"). This employment loss is expected to be permanent and you will not have bumping rights for other positions with Circuit City (i.e., you will not have the right to displace employees with less seniority).

Your manager will discuss your work schedule with you for the period commencing on the date of this notice through your Termination Date. During this time, your services during regular working hours will be required as business dictates. To the extent possible, Circuit City will relieve you of your duties so that you may search for future employment. We expect you to notify your manager if you commence employment with a new employer prior to your Termination Date.

Your health coverage under Circuit City's group health plan will terminate on the last day of the month in which your employment ends. However, you can elect to receive COBRA continuation coverage for yourself and qualifying dependents under Circuit City's group health plan in accordance with the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Such continuation coverage shall be at your own expense, and shall in all respects be subject to the requirements, conditions and limitations of COBRA and of the health plan of Circuit City, which may be amended from time to time. COBRA election information will also be provided to you under separate cover.

As of the date of this notice, Circuit City has determined that it will not provide severance pay in connection with this layoff. If the company determines otherwise, you will be contacted. You will continue to be bound by the terms and provisions of the Circuit City Code of Business Conduct.

We are providing this letter to you to satisfy any legal obligation to provide notice pursuant to the Worker Adjustment and Retraining Notification Act ("WARN") (29 U.S.C. Sections 2101 et seq.).

If you have any questions or concerns, please feel free to contact me at 1-800-765-5298. On behalf of Circuit City, we regret that this action is necessary.

*[signature: Steve Saunders]*

EXHIBIT A

*Exhibit B*



# WHAT HAPPENS TO MY BENEFITS WHEN MY EMPLOYMENT ENDS
# AND
# FREQUENTLY ASKED QUESTIONS

The following information explains what will happen to your benefits when your employment with Circuit City ends. If you need additional information, please contact the Associate Service Center at 1-800-288-6353. You will get the personalized information you need.

Additionally, so that we can contact you with important benefits information, *it is vital that we have your current home address.* If the address printed on your paycheck is *incorrect,* please email the *correct* address to *circuitcity.hrservices@hewitt.com* or fax it to 1-281-298-0845.

Please carefully review the information provided for all of the Plans in which you are currently enrolled.

## BENEFITS

1. **When will my medical, dental, and vision benefits stop?**

   Your medical, dental, and/or vision coverage ends the last day of the month in which your employment with Circuit City ends. Deductions will be taken from your final paycheck for your last month of coverage.

2. **If I have medical, dental and/or vision coverage on my Separation Date, can I continue this coverage?**

   Yes. You will be eligible to continue your medical, dental and/or vision coverage under a federal act known as *COBRA (Consolidated Omnibus Reconciliation Act of 1986).* Please see the enclosed handout in this packet marked "COBRA". Shortly after your termination, detailed information (including cost and length of coverage) regarding the continuation of your medical, dental and/or vision benefits will be mailed to your home address.

   **In the event you have already scheduled a doctor's appointment prior to the COBRA packet reaching you: (1) you may keep the appointment and pay "out of pocket" for any expenses and then be reimbursed upon receipt of your COBRA election confirmation and payment; or (2) you may reschedule your appointment, until after your COBRA election confirmation and payment is received. For details contact the Associate Service Center at 1-800-288-6353.**

3. **What if I don't want to continue coverage after my Separation Date?**

   If you do not wish to continue coverage under COBRA, then you do not have to do anything. However, please keep in mind the following: If you become covered later by another plan and you have experienced more than a 63-day period with no health or dental coverage, a pre-existing condition exclusion period may be applied in accordance with the federal Health Insurance Portability and Accountability Act (HIPAA).

4. **Will I be able to keep my Life Insurance/Supplemental Life after my Separation Date?**

   Your life insurance may be continued after separation with our life insurance carrier, Aetna. The appropriate paperwork must be received by Aetna within 31 days of the date your coverage ends. If you wish to continue your life insurance, please contact the Associate Service Center immediately at 1-800-288-6353. Further information is available on Aetna's website at *http://www.aetna.com/group/circuitcity/.*

*October 2008*

5. **Will I be able to continue my Long Term Disability coverage?**

Long Term Disability coverage ends on your Separation Date. Conversion to an individual policy is not available.

6. **As a part-time or full-time hourly Associate, will I be paid for unused, accrued PTO?**

Yes. You will be paid for unused, accrued PTO upon your termination of employment in your final paycheck.

7. **How will my eligibility to receive benefits under the Retirement Plan be affected?**

All service through your Separation Date will count toward vesting for benefits. To be eligible to receive benefits from the Retirement Plan, you must have 5 years of vesting service. You receive a year of vesting service for each Plan Year (March 1 through the end of February) during which you worked 1,000 or more hours. If you are eligible for Early Retirement (age 55 and 10 years of vesting service or 62 and 7 years of vesting service), you can elect to start your benefits right away. If you are eligible for Normal Retirement (age 65 and 5 years of vesting service), your benefits will begin as of the first day of the month after your Separation Date.

If you are not eligible to retire but are vested, the Associate Service Center will mail specific information about your benefits to your home address. This letter will be sent about one year after your employment ends. If you are eligible to start your benefits and want additional information, call the Associate Service Center at 800-288-6353 or email circuitcity.hrservices@hewitt.com

8. **When can I expect to get my pension payment?**

Retirement Plan (Pension) benefits are generally payable on a monthly basis, beginning on your Early or Normal retirement Date. If you are eligible for *Early Retirement* (age 55 or older with at least 10 years of vesting service) or *Normal Retirement* (age 65 or older with at least 5 years of vesting service), please notify the Associate Service Center at 1-800-288-6353 at least 90 days before the date you wish to retire.

If the present value of your retirement benefit payable at age 65 is less than $1,000, you will be paid in a lump sum payment. You may elect to rollover a lump sum payment to an IRA or another Qualified Retirement Plan if that plan allows rollovers. You will receive a letter notifying you of your options within nine months of the close of the plan year.

9. **What happens to my Stock Purchase Plan account?**

Participation in the Stock Purchase Plan ends on your Separation Date. You own the stock you have accumulated in this plan. You may contact Computershare at 1-877-377-7456 for more information about selling your stock, requesting a certificate, or leaving your account open.

10. **How will my participation in the 401(k) Plan be affected?**

If you are participating in the 401(k) Plan, your active participation in the Plan will cease as of your Separation Date. If the current value of your account is under $1,000, it will be distributed approximately 90 days after your Separation Date; if it is over $1,000, you may request to receive a distribution. Please call Wachovia Bank, recordkeeper for the Plan, at 1-800-377-9188 or the Associate Service Center at 800-288-6353 for additional information about distributions from the 401(k) plan. In either event you will receive a letter describing your options, along with some important rollover and tax information from Wachovia Bank, NA (the Plan Administrator) within forty-five days of your Separation Date.

11. **Will my pension and the 401(k) automatically vest?**

These plans do not automatically vest when you cease employment with the Company. Vesting will be determined according to the rules of each Plan and you will be notified if you have a vested benefit due.

12. **What happens to my Health Care Spending Account and/or Dependent Care Spending Account (FSA plans)?**

Participation in the FSA plans ends on your Separation Date. You will have 90 days from the date of separation to submit any expenses for reimbursement that were incurred while you were employed. After this 90-day period, any remaining balance in your account will be forfeited according to IRS regulations.

*October 2008*

### 13. Can I continue my membership with Truliant Federal Credit Union?

Yes. You may remain a member of the Credit Union as long as you maintain a minimum $5.00 savings balance.

### 14. What about my other Benefit programs?

Participation in all other benefit programs ends on your Separation Date. Such programs include, but are not limited to, the Associate Discount and Short Term Disability.

Services through the Work-Life Balance Program are available to separated Associates for a limited time. If you are currently receiving services through the Work-Life Balance Program or wish to use the program to assist during your time of transition, please call the Associate Service Center at 800-288-6353 for the correct phone number and access code.

### 15. Who should I contact if my supervisor/manager is unable to answer questions I may have regarding my separation package?

You should contact Human Resources Administration at 1-800-765-5298.

### 16. Who should I contact to answer questions I may have regarding my benefits?

You should contact the Associate Service Center at 1-800-288-6353.

### 17. Will I be able to continue participating in the Associate discount program?

No, you must be an active Circuit City associate to participate so this benefit ends when you are separated.

*The preceding information summarizes how benefits are handled upon an Associate's separation of employment. If this information conflicts with a Plan's documents and/or contracts, the Plan documents and/or contracts will prevail. If you have any questions, please call the Associate Service Center at 1-800-288-6353.*

## COMPENSATION

### 18. How will my final paycheck be handled?

Depending on your state, your final paycheck will be either hand delivered, direct deposited or deposited to your Circuit City Visa Paycard on your last day of employment or mailed to the company's most current record of home address. If you move, please notify us of your change of address as your W2 cannot be forwarded. If you have any questions about your final check, please call the Associate Service Center at 1-800-288-6353.

### 19. Will my final paycheck be taxed differently?

No. Your final paycheck will be taxed according to your W-4 currently on file. All mandatory federal and/or state withholdings will be deducted accordingly.

### 20. When will I be eligible to apply for Unemployment Compensation?

Please contact your State Employment Commission with questions regarding general eligibility/filing requirements and information related to your specific situation.

*October 2008*