Gregg M. Galardi, Esq.               Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.              Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &      MCGUIREWOODS LLP
FLOM, LLP                            One James Center
One Rodney Square                    901 E. Cary Street
PO Box 636                           Richmond, Virginia 23219
Wilmington, Delaware 19899-0636      (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                        RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :    Jointly Administered
- - - - - - - - - - - - - - x

          **DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
          SECTIONS 105(a), 363 AND 365 AND BANKRUPTCY RULE 6006
          AUTHORIZING REJECTION OF CONSULTING SERVICE AND DOMAIN
          NAME LICENSE AGREEMENT EFFECTIVE AS OF AUGUST 12, 2009
                    AND SETTING ASIDE RIGHT OF REFUSAL**

          The debtors and debtors in possession in the

above-captioned jointly administered cases (collectively,

the "Debtors")[1] hereby move (the "Motion") for entry of

an order (the "Order"), pursuant to sections 105(a), 363

365(a) and 365(f) of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 6006 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the Debtors to reject the Contract (as

defined below), to the extent it is executory, as of

August 12, 2009 and setting aside the Right of Refusal

(as defined below) set forth therein.  In support of the

Motion, the Debtors respectfully represent:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider

this Motion under 28 U.S.C. §§ 157 and 1334.  This is a

core proceeding under 28 U.S.C. § 157(b).  Venue of

---

[1]    The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc.
(3875), Circuit City Stores West Coast, Inc. (0785), InterTAN,
Inc. (0875), Ventoux International, Inc. (1838), Circuit City
Purchasing Company, LLC (5170), CC Aviation, LLC (0841), CC
Distribution Company of Virginia, Inc. (2821), Circuit City
Properties, LLC (3353), Kinzer Technology, LLC (2157), Abbott
Advertising Agency, Inc. (4659), Patapsco Designs, Inc.(6796),
Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC (9263),
Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address
for Circuit City Stores West Coast, Inc. is 9250 Sheridan
Boulevard, Westminster, Colorado 80031.  For all other Debtors,
the address was 9950 Mayland Drive, Richmond, Virginia 23233 and
currently is 4951 Lake Brook Drive, Glen Allen, VA 23060.

these cases and this Motion in this district is proper
under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory predicates for the relief
requested herein are Bankruptcy Code sections 105(a),
365(a) and 365(f) and Bankruptcy Rule 6006.

**BACKGROUND**

3.   On November 10, 2008 (the "Petition Date"),
the Debtors filed voluntary petitions in this Court for
relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue as debtors in
possession pursuant to Bankruptcy Code sections 1107 and
1108.

5.   On November 12, 2008, the Office of the
United States Trustee for the Eastern District of
Virginia appointed a statutory committee of unsecured
creditors (the "Creditors' Committee").  To date, no
trustee or examiner has been appointed in these
chapter 11 cases.

6.   On January 16, 2009, the Court authorized
the Debtors, among other things, to conduct going out of
business sales (the "GOB Sales") at the Debtors'
remaining 567 stores pursuant to an agency agreement

3

(the "Agency Agreement") between the Debtors and a joint
venture, as agent (the "Agent").  On January 17, 2009,
the Agent commenced the GOB Sales pursuant to the Agency
Agreement at the Debtors' remaining stores.  The GOB
Sales were concluded on or about March 8, 2009.

       7.   As part of their continuing liquidation
efforts, on July 6, 2009, the Debtors filed the Motion
for Orders Pursuant to Bankruptcy Code Sections 105 and
363 and Bankruptcy Rules 2002 and 6004 (I)(A) Approving
Procedures In Connection With Sales Of Miscellaneous
Intellectual Property Assets, (B) Authorizing Sellers To
Enter Into Stalking Horse Agreements In Connection
Therewith, (C) Approving The Payment Of Termination Fees
In Connection Therewith, (D) Approving Form And Manner
Of Sale Notice and (E) Setting Auction And Hearing Dates;
(II) Approving Sales Of Miscellaneous Intellectual
Property Assets Free And Clear Of All Interests; And
(III) Granting Related Relief (D.I. 3690; the "IP Sale
Motion").  Pursuant to the IP Sale Motion, the Debtors
seek to sell, among other miscellaneous intellectual
property, the domain name 800.com and associated
trademarks (the "Domain Name").

8.    On July 17, 2009, the Court approved the
bidding procedures in connection with the miscellaneous
intellectual property, including the Domain Name
(D.I. 4157, the "IP Sale Procedures Order").

### RELIEF REQUESTED

9.    By this Motion, the Debtors request the
entry of an order under Bankruptcy Code sections 105(a),
365(a) and 365(f) and Bankruptcy Rule 6006 authorizing
the Debtors to reject the Contract as of August 12, 2009,
and to set aside the Right of Refusal.

### BASIS FOR RELIEF

10.   Circuit City Stores, Inc. ("Circuit City")
is party to the Consulting Services And Domain Name
License Agreement with Loren Stocker d/b/a Vanity
International ("Vanity") dated June 9, 2006 (as may have
been amended or modified, the "Contract,"[2] a copy of
which is attached as Exhibit A to the Order).  Pursuant
to the Contract, Vanity (i) provided consulting services
regarding the use of toll-free telephone numbers through
which customers could contact Circuit City and

---

[2]   Capitalized terms not otherwise defined herein shall have the
meanings ascribed to them in the Contract.

(ii) obtained for Circuit City all rights in and to a certain toll-free telephone number.  In turn, Circuit City licensed the Domain Name to Vanity for an initial term of three (3) years, automatically renewing for successive one-year terms without additional consideration, unless otherwise terminated as provided in the Contract.

11.  The Contract provides for the Right of Refusal, as follows:

> Circuit City may terminate this Agreement and the Domain Name License at any time after the Initial License Term, in its sole discretion, in the event Circuit City receives an offer to purchase the Domain Name from a third party; provided however, that Circuit City shall first give notice to Vanity and offer to sell the Domain Name to Vanity at a discount of fifteen percent (15%) off the third party's offer. Vanity shall have ten (10) days to respond in writing to Circuit City that it agrees to purchase the Domain Name for the discounted price.

Contract, ¶ 19.  In sum, the Right of Refusal allows Vanity to purchase the Domain Name for fifteen percent (15%) less that the Debtors could receive from any third-party.

6

12.   On August 12, 2009, Vanity filed a
Limited Objection To The Bidding Procedures In
Connection With Sales Of Miscellaneous Intellectual
Property Assets And The Anticipated Sale Motion Relating
To The Domain Name "800.com" And Associated Trademarks
(the "Limited Objection").   In the Limited Objection,
Vanity requested that any sale of the Domain Name take
into account the Right of Refusal and afford Vanity the
opportunity to exercise such right.

13.   Since the Debtors have determined to
liquidate, the Contract provides no tangible benefit or
value to the Debtors' estates.   In contrast, the
Contract and, in particular, the Right of Refusal could
prevent the Debtors from realizing the full value of the
Domain Name.   Accordingly, in the exercise of the
Debtors' sound business judgment and as they believe is
in the best interests of their estates, creditors and
other parties in interest, the Debtors hereby move to
reject the Contract, to the extent it is executory, and
otherwise set aside the Right of Refusal.

7

## APPLICABLE AUTHORITY

**I.   SECTION 365 AUTHORIZES REJECTION OF THE CONTRACT AS AN EXERCISE OF THE DEBTORS' SOUND BUSINESS JUDGMENT.**

14.   Bankruptcy Code section 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease."  11 U.S.C. § 365(a).  A debtor's determination to reject an executory contract is governed by the "business judgment" standard.  See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1046-47 (4th Cir. 1985), cert. denied sub nom., Lubrizol Enters., Inc. v. Canfield, 475 U.S. 1057 (1986); In re Extraction Technologies of VA, L.L.C., 296 B.R. 393, 399 (Bankr. E.D. Va. 2001); see also In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice).

15.   Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

16.   The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing.  See Comm. Of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp., 60 B.R. 612, 615 16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

17.   As set forth above, the Debtors have satisfied the "business judgment" standard for rejecting the Contract.   The Contract provides no benefit and is unnecessary to the Debtors' estates.   Moreover, in light of the Right of Refusal whereby Vanity can purchase the Domain Name at a discount, the Contract may decrease the value the Debtors could realize in a sale of the Domain Name to a third-party.   Accordingly, rejection of the

Contract reflects the sound exercise of the Debtors'
business judgment.

18.   This Court has authorized similar relief
throughout these chapter 11 cases, as well as in other
large chapter 11 cases.  See, e.g., In re Circuit City
Stores, Inc., Case No. 08-35653 (Bankr. E.D. Va.)
(Docket Nos. 1260, 1280, 1706, 2907, 2935, 3078, 3219);
see also In re Movie Gallery, Inc., et al., Case No. 07-
33849 (Bankr. E.D. Va. Oct. 17, 2007); In re Storehouse,
Inc., Case No. 06-11144 (Bankr. E.D. Va. Nov. 21, 2006);
In re Rowe Furniture, Inc., Case No. 06-11143 (Bankr.
E.D. Va. Nov. 21, 2006); In re The Rowe Cos., Case No.
06-11142 (Bankr. E.D. Va. Nov. 21, 2006); In re US
Airways Group, Inc., Case No. 02-83984 (Bankr. E.D. Va.
Aug. 12, 2002).

19.   Accordingly, the Court should allow the
Debtors to reject the Contract as an exercise of the
Debtors' sound business judgment and in the best
interests of the Debtors' estates and creditors.

10

II.    **THE RIGHT OF REFUSAL SHOULD BE SET ASIDE TO ALLOW
THE DEBTORS TO REALIZE THE FULL VALUE OF THE DOMAIN
NAME.**

20.   Bankruptcy Code section 105(a) provides,
in pertinent part, that this Court may may issue any
order, process, or judgment that is necessary or
appropriate to carry out the provisions of this title.
11 U.S.C. § 105.  In turn, Bankruptcy Code section 363(b)
authorizes a debtor to use, sell or lease property of
the estate.  11 U.S.C. § 363(b).  Bankruptcy Code
section 363(f) provides that such sale may be free and
clear of "any interest."  11 U.S.C. § 363(f).

21.   As set forth in IP Sale Motion, the
phrase "any interest" has been interpreted broadly and
should include the Right of Refusal because one of the
subsections under 363(f) can be satisfied.  <u>See</u> IP Sale
Motion at ¶¶ 54-56.  Moreover, this Court has discretion
under Bankruptcy Code section 363(b) to set aside
agreements that "chill bidding".  <u>C.f.</u> <u>United States</u>
<u>Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel</u>
<u>Corp.)</u>, 2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. July 23,
2003) (holding that, pursuant to section 363(b) the
court set aside an agreement to pay bid incentives if

such incentives have the affect of chilling bidding);

Wine Group v. Diamante (In re Hat), 310 B.R. 752 (Bankr.

E.D. Cal. 2004) (holding that a spouse may not exercise

her statutory right of first refusal rights under

section 363(i) because, under the circumstances, doing

so would chill bidding).

22.   In analogous circumstances, courts have

held that rights of first refusal should be set aside.

Specifically, under Bankruptcy Code section 365(f), this

Court has the discretion to set aside a right of refusal.

See, e.g. (In re The IT Group, Inc., Co., 302 B.R. 483,

488 (D. Del. 2003) (recognizing bankruptcy court retains

discretion in determining whether provisions not

explicitly prohibiting assignment are unenforceable as

de facto anti-assignment clauses); In re Adelphia

Communications Corp., 359 B.R. 65, 85 (Bankr. S.D.N.Y.

2007) (same); In re E-Z Serve Convenience Stores, Inc.,

289 B.R. 45, 50 (Bankr. M.D.N.C 2003) (same); In re Mr.

Grocer, Inc., 77 B.R. 349, 352-353 (Bankr. D.N.H. 1987)

(holding right of first refusal per se unenforceable as

a de facto anti-assignment provision).

23.   In determining whether to set aside a

right of refusal:

> [a] court must examine the particular
> facts and circumstances to determine
> whether a [contract] clause restricts or
> conditions assignment including the extent
> to which the provisions hampers a debtor's
> ability to assign, whether the provision
> would prevent the bankruptcy estate from
> realizing the full value of its assets,
> and the economic detriment to the non-
> debtor party.

E-Z Serve, 289 B.R. at 50 (citing In re Crow Winthrop

Operating Partnership, 241 F.3d 1121, 1124 (9th Cir.

2001).  In this case, the Right of Refusal creates all

three of these impermissible circumstances.

24.   First, though the Right of Refusal does

not preclude the Debtors from soliciting bids and

conducting an auction to sell the Domain Name to a

third-party, it chills the bidding process.  See

Adelphia, 359 B.R. at 86 (explaining that right of first

refusal "thwart[s] the fundamental policy of maximizing

estate assets for the benefit of all creditors and are

thus unenforceable" (internal quotations and citations

omitted)).  Because the Right of Refusal purportedly

provides that Vanity will have the opportunity to

13

purchase the Domain Name at a fifteen percent discount to the highest and best third-party offer received by the Debtors -- presumably, the fair market value of the asset -- potential bidders have been and likely will be reluctant to invest the time, money and energy associated with bidding on and purchasing the Domain Name. Moreover, if a third-party does bid for the Domain Name and succeed as the highest and best bidder at an auction, it is likely the Domain Name will still be sold to Vanity because Vanity has the opportunity to purchase the Domain Name at a discount.

25. Second, the Right of Refusal threatens to prevent the Debtors from realizing the full value of the Domain Name. Cf. IT Group, 302 B.R. at 488 (enforcing right of first refusal where such would not hamper the ability of debtors to assign property or realize full value of their interests). This is not an instance in which the Right of Refusal merely ensures that Vanity is afforded the opportunity to purchase the Domain Name. Nor is it an instance in which Vanity is ensured the opportunity to purchase the Domain Name by matching the offer of the highest and best third-party bidder. Cf.

14

E-Z Serve, 289 B.R. at 51 (enforcing right of first refusal where it "does not compel the owner of the property to sell below that which may be offered in the open market" because holder "must equal or better the terms of a competing offer").  Rather, the Right of Refusal allows Vanity to purchase the Domain Name at a discount, inherently preventing the Debtors from realizing the full value of their assets.

26.  Finally, if, as discussed above, a third-party is deemed the highest and best bidder at an auction, that third-party may be denied the benefit of the bargain it struck if Vanity chooses to exercise the Right of Refusal.  Such a result is inequitable and should be not permitted.

27.  Accordingly, the Court should exercise its discretion to set aside the Right of Refusal.

**NOTICE**

28.  Notice of this Motion has been provided to those parties entitled to notice under this Court's Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice,

15

Case Management, and Administrative Procedures (Docket No. 130) and to Vanity.  The Debtors submit that, under the circumstances, no other or further notice need be given.

### WAIVER OF MEMORANDUM OF LAW

29.  Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

### NO PRIOR REQUEST

30.  No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request

that the Court enter an Order, substantially in the form

attached hereto, granting the relief requested in the

Motion and such other and further relief as may be just

and proper.

Dated: August 12, 2009
        Richmond, Virginia    SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Gregg M. Galardi, Esq.
                              Ian S. Fredericks, Esq.
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              (302) 651-3000

                                    - and -

                              SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM, LLP
                              Chris L. Dickerson, Esq.
                              155 North Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                    - and -

                              MCGUIREWOODS LLP


                              _/s/ Douglas M. Foley_____
                              Dion W. Hayes (VSB No. 34304)
                              Douglas M. Foley (VSB No. 34364)
                              One James Center
                              901 E. Cary Street
                              Richmond, Virginia 23219
                              (804) 775-1000

                              Counsel for Debtors and
                              Debtors in Possession


17

Gregg M. Galardi, Esq.                Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.               Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &        MCGUIREWOODS LLP
FLOM, LLP                             One James Center
One Rodney Square                     901 E. Cary Street
PO Box 636                            Richmond, Virginia 23219
Wilmington, Delaware 19899-0636       (804) 775-1000
(302) 651-3000

          - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                              :
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
          Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363
AND 365 AND BANKRUPTCY RULE 6006 AUTHORIZING REJECTION
OF CONSULTING SERVICES AND DOMAIN NAME LICENSE AGREEMENT
EFFECTIVE AS OF AUGUST 12, 2009 AND SETTING ASIDE RIGHT
OF REFUSAL**

Upon the motion (the "Motion")[1] of the Debtors

for entry of an order, under Bankruptcy Code sections

---

[1]  Capitalized terms not otherwise defined herein shall have the
     meanings ascribed to such terms in the Motion.

105(a), 363 and 365 and Bankruptcy Rule 6006,

authorizing the Debtors to reject the Contract (as

defined below), to the extent it is executory, as of

August 12, 2009 and setting aside the Right of Refusal;

and the Court having reviewed the Motion; and the Court

having determined that the relief requested in the

Motion is in the best interests of the Debtors, their

estates, their creditors, and other parties in interest;

and it appearing that proper and adequate notice of the

Motion has been given and that no other or further

notice is necessary; and upon the record herein; and

after due deliberation thereon; and good and sufficient

cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Motion is GRANTED.

2.    The Consulting Services and Domain Name

License Agreement dated June 9, 2006 between Circuit

City Stores, Inc. and Loren Stocker b/b/a Vanity

International, attached hereto as <u>Exhibit A</u> (the

"Contract"), to the extent it is executory, is hereby

rejected as of August 12, 2009.

3.    The Right of Refusal as set forth in paragraph 19 of the Contract is unenforceable in all respects.

4.    The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

5.    The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

Dated:  Richmond, Virginia
        _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

_/s/ Douglas M. Foley_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I
hereby certify that the foregoing proposed order has
been endorsed by or served upon all necessary parties.

                              _/s/ Douglas M. Foley_____
                              Douglas M. Foley


4

**EXHIBIT A**

**(Contract)**

## CONSULTING SERVICES AND DOMAIN NAME LICENSE AGREEMENT

THIS CONSULTING SERVICES AND DOMAIN NAME LICENSE AGREEMENT ("Agreement") is made this 9th day of June, 2006 by and between Circuit City Stores, Inc., a Virginia corporation, having its principal place of business at 9950 Mayland Drive, Richmond, Virginia 23233 (hereinafter "Circuit City") and Loren Stocker d/b/a Vanity International, an individual, having his principal place of business at 1431 Camino Del Mar, Suite D, Del Mar, California 92014 (hereinafter "Vanity").

WHEREAS, Vanity provides business and other consulting services, including, but not limited to the research, development, selection, and acquisition of toll-free telephone numbers and domain names (the "Vanity Services") through its web site located at URL: www.800.net (the "Web Site"); and

WHEREAS, Circuit City owns and operates retail stores featuring consumer electronics and related services in the United States and is the owner of the domain name 800.com and associated trademarks (the "Domain Name"); and

WHEREAS, Circuit City desires to utilize and Vanity desires to perform the Vanity Services as more specifically described herein to enhance Circuit City's business; and

WHEREAS, Circuit City desires to license and Vanity desires to use the Domain Name under the terms and limitations contained herein to enhance its business.

NOW, THEREFORE, in consideration of the mutual undertakings of the parties as hereinafter set forth, the parties agree as follows:

### ARTICLE I
### CONSULTING SERVICES

1.    Services.  Vanity agrees to provide the following services:

(a)  Upon execution of this Agreement, Vanity hereby agrees to provide consulting services regarding the use of toll-free numbers to permit current and prospective customers to contact Circuit City.  As part of those services, Vanity shall use its best efforts to obtain for Circuit City all rights in and to the following United States toll-free telephone number 1-800-347-3364 (the "Telephone Number").

(b)  Within five (5) days of the Effective Date, Vanity shall file or cause to be filed such documents, or take or cause to be taken such actions as necessary with the appropriate toll-free service provider(s) ("Resp Org") and the 800 Service Management System ("SMS/800") administrator to effectuate the necessary change and update in the SMS/800 database to obtain use of the Telephone Number for Circuit City.

2.    Consideration.  The parties acknowledge that the Domain Name License represents compensation to Vanity for consulting services related to the use of the Telephone Number, and the Vanity Services, and for costs incurred associated with the Vanity Services.

### ARTICLE II
### GRANT OF LICENSE

3.    License.  Subject to the terms and conditions of this Agreement, Circuit City grants to Vanity an exclusive, non-transferable, royalty-free license to use the Domain Name for the Initial License Term and any Renewal Term to host the Web Site.

4.    License Term.  The "Initial License Term" shall mean a period of three (3) years beginning five (5) days following confirmation from the appropriate Resp Org that the SMS/800 database has been updated to permit Circuit City to use the Telephone Number, and the Telephone Number is actually

available for Circuit City's use, and the Telephone Number has been registered with the Resp Org designated by Circuit City (subject to early termination pursuant to Article VII).

5.     Renewal. The Domain License will automatically renew for successive one-year terms (each a "Renewal Term"), for no additional consideration, unless otherwise terminated as provided herein.

6.     Field of Use. The Domain Name and the Website are only used in connection with the Vanity Services, and are not used in connection with the Excluded Field of Use. The "Excluded Field of Use" means goods or services in the field of consumer electronics, audio and video equipment, computers, software, automotive electronics, security systems, telecommunications, home appliances, home automation, including, without limitation, the promotion, sale, distribution, installation, maintenance, support, or repair of any of the foregoing.

7.     Web Site Content. Circuit City and Vanity acknowledge and agree that:

      (a) the Vanity Services and the content of the Website shall not include or comprise anything of a pornographic, obscene, defamatory, disparaging or illegal nature, or otherwise be contrary to public policy and/or public morals;

      (b) this Agreement shall not be construed to constitute endorsement or acceptance by Circuit City of the content and information on the Web Site; and

      (c) each party shall retain sole ownership of the content and materials on its respective web sited, including, but not limited to, its trademarks, service marks, trade names, symbols, logos, and copyrights. No licenses are granted to any of the foregoing except as expressly set forth in this Agreement. Any licenses will automatically terminate upon the termination of this Agreement.

      (d) During the Initial License Term and any Renewal Term, Vanity shall ensure that the content of the Website shall at all times be in compliance with the restrictions contained in this Agreement and will maintain a link to Circuit City's web site (as may be designated by Circuit City from time to time).

8.     Right to Audit. Circuit City shall have the right to review the Website at any time to confirm that the content of the Website is in compliance with this Agreement. Without prejudice to any other right Circuit City may have, Circuit City may request by written notice to Vanity, that Vanity take remedial action to resolve any issues that Circuit City may discover when conducting an audit or a review of the Website or at any other time.

9.     Ownership. Vanity acknowledges and agrees that Circuit City is the owner of all right, title and interest in and to the Domain Name and the associated trademarks. Circuit City agrees to maintain a minimum of three years pre-payment of the Domain Name renewal fees. Except as expressly provided herein, no right or license is granted to Vanity in respect of the Domain Name. Vanity shall not directly or indirectly:

      (a) do any act or omit to do any act which might impair or affect the validity of, or in any way diminish the rights of Circuit City in and to the Domain Name, or in any way debase the Domain Name, or reduce its commercial value to Circuit City or impair or affect any of Circuit City's unregistered, common law or other rights in the Domain Name and any related trademark rights; and

      (b) register or use or attempt to register or to use, other than as granted to Vanity hereunder or as otherwise mutually agreed by the parties, any trademark, service mark, design, company name, trade name, URL or domain name, which may be identical to, similar to or comprise or include the Domain Name (in part or in whole),

except that this provision shall not affect Vanity's rights to any domain names or trademarks owned or used by Vanity as of the Effective Date. It is acknowledged and agreed that Vanity has used "800.net" prior to the Effective Date of this Agreement and reserves all associated rights within the scope of its business.

## ARTICLE III
## CONFIDENTIALITY

10.    Confidentiality. Vanity hereby agrees not to disclose any Confidential Information of Circuit City for a period of five (5) years from the Effective Date. "Confidential Information" means any trade secret, know-how, invention, contract, information, knowledge, data, process, technique, design, program, work in progress, marketing, financial, sales, supplier, customer, employee, investor, or business information, whether in oral, written, graphic or electronic form that is either conspicuously marked "confidential" or known or reasonably should have been known by the other party to be confidential, or is of a proprietary nature, and is learned or disclosed in the course of discussions, performance of services, or other work undertaken between the parties. Without limiting the generality of the foregoing, the parties agree that the terms of this Agreement and any other information disclosed by Circuit City prior to the execution of this Agreement shall be deemed Confidential Information.

## ARTICLE IV
## NON-COMPETE

11.    Non-Compete. Vanity agrees that for during the Term of this Agreement and for a period of one (1) year after termination or expiration of this Agreement, it shall not, directly or indirectly, (i) divert or attempt to divert from Circuit City (or any affiliate) any business of any kind in which it is engaged; or (ii) engage in any business activity that is or may be competitive with Circuit City (or any affiliate).

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES

12.    Each party represents and warrants to the other party that:

      (a) it has the power and authority to enter into this Agreement and to fully perform its obligations under this Agreement; and

      (b) so far as each party is aware, the performance by such party of its obligations under this Agreement will not conflict with any other agreement or obligation of such party to which such party is bound or with any law, rule, regulation of ordinance.

13.    Vanity expressly agrees, represents and warrants to Circuit City that:

      (a) No pending or threatened court or regulatory action regarding this Agreement and the services to be provided hereunder currently exists or is known to be pending;

      (b) Vanity currently has sufficient expertise to provide the Vanity Services, including without limitation, the process necessary to obtain use of the Telephone Number;

      (c) Vanity has the ability and expertise to assist Circuit City to obtain use of the Telephone Number, and that such use shall be obtained for Circuit City by Vanity "free and clear" and without any common carrier term plan, payment obligation or other lien or encumbrance; and

      (d) Vanity has full legal authority to effectuate and consummate its obligations in this Agreement.

## ARTICLE VI
## INDEMNITY AND LIMIATION OF LIABILITY

14.  <u>Indemnification</u>.  Vanity shall defend, indemnify and hold harmless Circuit City, its subsidiaries, affiliates, or successors, or their respective officers, directors, employees, and agents, harmless against any and all claims, actions, suits, liabilities, demands, expenses (including reasonable attorneys' fees and disbursements), arising from or in connection with (i) Vanity's use of the Domain Name, (ii) the Web Site, and (iii) the Vanity Services.

15.  <u>Limitation of Liability</u>.  IN NO EVENT SHALL CIRCUIT CITY BE LIABLE FOR ANY LOSS OF PROFIT AND/OR SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOST SAVINGS, LOST BUSINESS, BUSINESS INTERRUPTION, LOSS OF BUSINESS OPPORTUNITY AND/OR ANY SIMILAR COSTS) AND/OR ANY OTHER INDIRECT LOSS ARISING OUT OF THIS AGREEMENT WHETHER IN CONTRACT OR IN TORT EVEN IF THE LOSS WAS REASONABLY FORESEEABLE OR CIRCUIT CITY HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## ARTICLE VII
## TERM AND TERMINATION

16.  <u>Term</u>. The term of this Agreement shall begin on the Effective Date and shall end upon expiration or termination of the Domain Name License as provided herein.

17.  <u>Termination for Breach</u>.

    (a)  Circuit City may terminate this Agreement and the Domain Name License immediately if Vanity breaches any term or obligation under Sections 6, 7(a), 10 or 11 of this Agreement.

    (b)  Circuit City may terminate this Agreement and the Domain Name License if Vanity breaches any term or obligation, except as set forth in Section 17(a), by giving Vanity written notice identifying the breach and its intent to terminate.  Vanity shall have fifteen (15) days after receipt of notice from Circuit City to cure such breach.

18.  <u>Termination for Convenience</u>.  After expiration of the Initial License Term, Circuit City may terminate this Agreement and the Domain Name License at any time, for its own business needs, or in order to sell the Domain Name (subject to Section 19 below), by giving Vanity ninety (90) days prior written notice.  If the Agreement is terminated under this Section 18 in order for Circuit City to use the Domain Name for its own business needs, Circuit City shall grant to Vanity the right to post a link for one (1) year on the home page of Circuit City's (or its affiliates or licensee's) web site accessed by the Domain Name, which link shall lead to the Web Site (or other web site mutually agreed upon by the parties).  If Circuit City sells the Domain Name to a third party, Circuit City will use reasonable efforts to reserve the right of Vanity to post a link on the web site accessed by the Domain Name for a reasonable period after the sale.

19.  <u>Right of Last Refusal</u>.  Circuit City may terminate this Agreement and the Domain Name License at any time after the Initial License Term, in its sole discretion, in the event Circuit City receives an offer to purchase the Domain Name from a third party; provided however, that Circuit City shall first give notice to Vanity and offer to sell the Domain Name to Vanity at a discount of fifteen percent (15%) off the third party's offer.  Vanity shall have ten (10) days to respond in writing to Circuit City that it agrees to purchase the Domain Name for the discounted price.

20.  <u>Effect of Termination</u>.  On termination of this Agreement (however arising), Vanity shall immediately (or if this is not possible, as soon as reasonably practical) cease using the Domain Name in any form and delete the Domain Name from business names, internal and external signage,

Promotional Materials and any other materials. Any costs associated with the change of company name, business name, signage, Promotional Materials and any other materials shall be borne by Vanity.

21.    Survival. The provisions of Articles III, IV, V, VI, VII and VIII shall survive any termination or expiration of this Agreement.

# ARTICLE VIII
# MISCELLANEOUS

22.    Actions. The parties agree to use their commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under applicable laws and regulations to consummate or implement expeditiously the transactions contemplated by this Agreement.

23.    Relationship of the Parties. Nothing in this Agreement shall be deemed to create an agency, partnership, employment or joint venture relationship between the parties.

24.    Assignment. Vanity may not assign this Agreement or the Domain Name License without the prior written consent of Circuit City. The rights and obligations contained herein are freely assignable by Circuit City.

25.    Successors. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors or permitted assigns. Nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties hereto, and their successors and permitted assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

26.    Severability. If any provision of this Agreement is found by competent authority to be invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of the remainder of this Agreement shall continue in effect to the maximum extent possible.

27.    Amendment. Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed, in the case of an amendment, by each party to this Agreement, or in the case of a waiver, by the party against whom the waiver is to be effective.

28.    Waiver. No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

29.    Costs and Expenses. Except as otherwise provided herein, all costs and expenses incurred in connection with this Agreement shall be paid by the party incurring such cost or expense.

30.    Injunctive Relief. Each party agrees that if certain material obligations under this Agreement are not performed in accordance with their specific terms or are otherwise breached, (a) severe and irreparable damage would occur, (b) no adequate remedy at law would exist and (c) damages would be difficult to determine. Each of the parties agrees that, in such case, the injured party or parties shall be authorized and entitled to obtain from any court of competent jurisdiction injunctive relief, whether preliminary or permanent, as well as any other relief permitted by applicable law, and the breaching party shall waive any requirement that such party or parties post bond as a condition for obtaining any such relief.

31.    Notices. Every notice, demand, consent, request, approval, report, offer, acceptance, certificate, or other communication which may be, or is required to be, given or delivered under or with respect to this Agreement or by applicable law shall be in writing and shall be deemed to have been sufficiently given for all purposes hereof upon receipt, if sent by overnight delivery (receipt verified) to the address below, or given personally to the address below, or at such other address

within the continental United States as any party may hereafter designate by similar notice to the other:

if to Circuit City, to:

Circuit City Stores, Inc.
9954 Mayland Drive
Richmond, Virginia  23233
Attn: David Strauss
Fax: 804-967-8815
David_strauss@circuitcity.com

if to Vanity, to:

Vanity International
1431 Camino Del Mar, Suite D
Del Mar, California  92014
Attn: Loren Stocker
858-792-5000
Loren @800.net

32.   <u>Governing Law and Jury Waiver</u>. This Agreement shall be enforced, governed by, and construed in accordance with the laws of the Commonwealth of Virginia, regardless of the choice of law or conflict of law provisions of Virginia or any other jurisdiction.   The parties agree that any suit brought in connection with this Agreement shall be brought in the state or federal courts in the Eastern District of Virginia. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION TO VENUE, INCLUDING AN OBJECTION BASED ON THE GROUNDS OF FORUM NON CONVENIENS, THAT SUCH PARTY NOW HAS OR HEREAFTER MAY HAVE TO THE BRINGING OF ANY ACTION OR PROCEEDING IN SUCH JURISDICTION.  EACH PARTY FURTHER WAIVES ANY RIGHT TO A JURY TRIAL.

33.   <u>Counterparts</u>. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

34.   <u>Entire Agreement</u>.  This Agreement, constitutes the entire understanding of the parties and supersedes all prior agreements and understandings of the parties of any kind whatsoever and pertaining to any subject matter, whether written, oral, or otherwise, and may be altered or amended only in a writing signed by both parties.

          IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives and effective on the date first written above.

**Circuit City Stores, Inc.**

By: _____

Name: __DAVID Strauss__

Title: __V.P. Circuit City__

**Loren Stocker, d/b/a Vanity International**

By: _____

Name: __Loren Stocker__

Title: __dba Vanity International__