**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re:<br><br>**CIRCUIT CITY STORES, INC., et al.**<br><br>                     **Debtors.** | Chapter 11<br><br>Case No. 08-35654<br><br>**CALIFORNIA SELF-INSURERS' SECURITY FUND'S OPPOSITION TO DEBTORS' TWENTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS**<br><br>**[Appendix of Non-Virginia Authorities Filed Concurrently Herewith]**<br><br>**Jointly Administered** |

The California Self-Insurers' Security Fund (the "Fund") hereby opposes the debtors' ("Debtors") Twenty-Seventh Omnibus Objection to Claims (Disallowance of Certain Tax Claims for No Tax Liability) (the "Objection")[1] and respectfully requests this Court deny Debtors' Objection.

**I.    INTRODUCTION AND PROCEDURAL SUMMARY**

On November 10, 2008, each of the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Thereafter, in accordance with the claims bar date set by this Court, the Fund filed a priority proof of claim in Circuit City Stores West Coast, Inc. which was file stamped on March 6, 2009 and assigned claim number 11811[2]. On July 29, 2009, the Fund received Debtors' Objection contending that the Fund's claim was not entitled to priority. Accordingly, the Fund submits this brief opposing the Debtors' Objection and establishing the Fund's right to an excise tax claim under 11 U.S.C. § 507(a)(8).

---

[1] The Objection focuses on the fact that the Fund is asserting a "tax claim." The Fund's claim is a reimbursement claim, based on the amount of workers' compensation claims paid and to be paid in the future. Payments are ongoing. The claim amount must be determined, in part, by an actuarial analysis. The Fund initially filed its claim in an undetermined amount, for various reasons. The Fund intends to amend its claim in the near term to assert an amount certain.

[2] It appears the claims agent subsequently entered the same claim on March 10 and March 18, 2009 and assigned it claims numbers 11819 and 11896, respectively, which are also the subject of Debtor's Objection.

## II.  CALIFORNIA'S STATUTORY WORKER'S COMPENSATION SCHEME

California's Constitution requires the state legislature to provide for a comprehensive system of workers' compensation: "The Legislature is hereby expressly vested with plenary power ... to create and enforce a complete system of workers' compensation [including] full provision for ... securing the payment of compensation ...."  Cal.  Const., Art.  XIV, § 4.

Pursuant to that constitutional directive, the state legislature created a complete statutory scheme regulating workers' compensation – California Labor Code ("Labor Code"), Division 4. (Labor Code §§ 3200-6002).  This statutory scheme ensures that California workers receive their workers' compensation benefits even if their employer becomes insolvent.  The entire statutory workers' compensation scheme (including the sections creating and governing the Fund) was declared by the California legislature to be an expression of the state's police power:  "This division and Division 5 ...  are an expression of the police power and are intended to make effective and apply to a complete system of workers' compensation the provisions of Section 4 of Article XIV of the California Constitution."  Labor Code § 3201.[3]

Employers are required to pay the workers' compensation claims of their injured workers. Labor Code § 3600.  To ensure that this payment actually occurs, private California employers must either purchase insurance policies from private insurance companies or, with consent of the California Director of Industrial Relations (the "Director"), they may self-insure.  Labor Code § 3700(a) and (b).  Private employers that the Director has permitted to self-insure are required to provide a security deposit.  Within statutory limits, the amount of the security deposit is set by the Director.  8 Cal.  Code of Regs., § 15210(c).  Private self-insurers are also required by statute to participate as members in the Fund.  Labor Code § 3742(a).

---

[3]  Copies of the pertinent Labor Code provisions are attached collectively to an Appendix for the Court's ready reference and convenience.  The Appendix is filed and served herewith.

The Fund was created by the California Legislature by statute for the benefit of employees and the public in general. Labor Code § 3742. In creating the Fund, California Legislature declared:

> It is the intent of the Legislature in enacting this article . . . to provide for the continuation of workers' compensation benefits delayed due to the failure of a private self-insured employer to meet its compensation obligations. . . The Legislature finds and declares that the establishment of the Self-Insurers' Security Fund is a necessary component, of a complete system of workers' compensation, required by Section 4 of Article XIV of the California Constitution, to have adequate provisions for the comfort, health and safety, and general welfare of any and all workers and their dependants to the extent of relieving the consequences of any industrial injury or death, and full provision for securing the payment of compensation.

Labor Code § 3740.

Prior to creation of the Fund, its functions were performed by the Director. The Director sits on the Fund's Board, with full powers equal to those of a trustee, except that he has no vote. Labor Code § 3742(b). If the Director finds that a self-insured employer is not paying its workers' compensation obligations, the Director may order the Fund to begin paying the claims instead. Labor Code § 3701.5(b). Upon receiving such an order, the Fund is required by statute to assume the defaulting employer's obligations, other than certain penalties. Labor Code § 3743(a) and (b).

The Fund never pays or assumes the workers' compensation obligations of a member unless ordered to do so by the Director, nor is the Fund authorized to do so without an order from the Director. Moreover, California statutes grant to the Fund both the right and the obligation to obtain reimbursement from an insolvent self-insurer: "The fund shall have the right and obligation to obtain reimbursement from an insolvent self-insurer up to the amount of the self-insurer's workers' compensation obligations paid and assumed by the fund, including reasonable administrative and legal costs. This right includes, but is not limited to, a right to claim for wages and other necessities of life advanced to claimants…." Cal. Labor Code § 3744(a). This language is broad: both obligations "paid" and "assumed" (that is, to be paid in the future) are covered, the Fund's

"reasonable administrative and legal costs" are included as well as the benefits themselves, and payments in lieu of wages as well as medical payments are covered.

### III. THE FUND'S REIMBURSEMENT CLAIM QUALIFIES FOR PRIORITY UNDER 11 U.S.C § 507(A)(8)(E)(II).

The Bankruptcy Code grants priority to certain types of unsecured claims, one of which is an excise tax on a transaction occurring during the three years immediately preceding the date of the filing of the petition. 11 U.S.C. § 507(a)(8)(E)(ii). The Fund's reimbursement claim is an excise tax.

As discussed below, a line of cases beginning with the United States Supreme Court decision City of New York v. Feiring, 313 U.S. 283 to the more recent Fourth Circuit decision New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund, 886 F.2d 714 (4th Cir. 1989), support a finding that the Fund's reimbursement claim is an excise tax.

#### A. The Fund's Claim Is a Tax Under the Supreme Court's Definition

The U.S. Supreme Court defined the term "tax" for purposes of priority in a bankruptcy case in City of New York v. Feiring, 313 U.S. 283, 285 (1941):

> "the priority commanded by section 64[4] extends to those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." Id.

The Supreme Court in Feiring was quoting a definition previously articulated in New Jersey v. Anderson, 203 U.S. 483, 491 (1906) and subsequently reaffirmed in United States v. New York, 315 U.S. 510, 515 (1942). The Supreme Court reaffirmed the validity of the Feiring-Anderson-New York definition in United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 224 (1996).

---

[4] Section 64 of the Bankruptcy Act of 1898 (repealed), in effect at the time of Feiring decision, was the predecessor to the 1978 Bankruptcy Code's section 507.

12677984.1                          - 4 -

        1.      <u>The Fund's Claim is an involuntary pecuniary burden, so it meets the first prong of the Feiring test.</u>

The Fourth Circuit has effectively adopted the <u>Feiring</u> test. <u>See</u> <u>New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund</u>, 886 F.2d. 714, 718 (4th Cir. 1989) ("Thus, a payment may be classified as a tax if the state has compelled the payment and if the payment serves a public purpose").  The Fund's reimbursement right, arising from paying workers' compensation claims of a defaulting self-insured employer, is an involuntary burden imposed on the defaulting self-inured employer.  The burden is imposed by state statute and applies to any and all self-insured employers that default on their worker compensation obligations.  As such, the first prong in the <u>Feiring</u> test is met.

        2.      <u>The Fund's claim was imposed for the purpose of defraying the expenses of government or of undertakings authorized by it, so it meets the second prong of the Feiring test.</u>

The second prong of the Supreme Court's <u>Feiring</u> test is that the involuntary pecuniary burden must be imposed "for the purpose of defraying the expenses of government or of undertakings authorized by it." <u>Feiring</u>, 313 U.S. at 285.  The Fund's reimbursement claim is asserted for the purpose of defraying the expenses of the Fund.  The statute enabling the Fund to assert its reimbursement claim, Labor Code § 3744(a), permits the Fund to recover amounts necessary to pay (1) workers' compensation obligations to injured workers that have been paid or assumed by the Fund, and (2) the Fund's associated administrative and legal costs.  The Fund's claim also falls within the second prong of the <u>Feiring</u> test, because the Fund's "undertakings," in assuming, paying and administering an insolvent self-insurer's workers' compensation obligations, were authorized, indeed commanded, by the state legislature.

In the present case, since the Fund's claim is for reimbursement of obligations paid or assumed by the Fund as required by statute (Labor Code § 3743(a)) and as ordered by a state official

(the Director), the reimbursement claim is plainly imposed for the purpose of "defraying expenses" of "undertakings authorized by [government]." The Fund's "undertakings" to pay a defaulting employer's workers' compensation obligations are authorized, indeed commanded, by the state legislature, which means that, by definition, the reimbursement claim is imposed for "public purposes." The reimbursement obligation for which the Fund asserts its claim is imposed on Debtor by statute (Labor Code § 3744(a)). The purpose of that statutory imposition is to reimburse the Fund for its direct expenses in carrying out those public functions.

### B. The Fund's Reimbursement Claim is a Tax under New Neighborhoods

In New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund, 886 F.2d. 714, 718 (4th Cir. 1989), the Fourth Circuit Court of Appeals held that premiums to be paid to the Workers' Compensation Fund of the State of West Virginia are excise taxes and entitled to priority status under the Bankruptcy Code. As is true with the Fund's reimbursement claim, the premiums due to the West Virginia fund were to be used to pay the costs and administrative expenses of injured workers. The premiums in New Neighborhoods are the functional equivalent of the Fund's reimbursement claim in this case.

The fact that a state agency may be given priority over a private insurer[5] was addressed and acknowledged by the Fourth Circuit. "Nor does the fact that, under the holding we state in this case, a state agency is given, as an insurer, priority in bankruptcy when a private insurer is not tip the scales against construing the workers' compensation premiums as "excise taxes"; such a difference is really only 'distinction between the sovereign power of the state and the rights of private citizenry.'" New Neighborhoods, 886 F.2d at 720 (quoting State Industrial Accident Commission v. Aebi, 162 P.2d 513, 517 (1945)).

---

[5] The Ninth Circuit Court of Appeals reached the opposite conclusion with regard to a "hypothetical" similarly situated creditor such as a private insurer in a recent case involving the Fund. See In re Lorber Industries, 564 F. 3d 1098 (9th Cir. 2009).

Accordingly, under the law in the Fourth Circuit, the Fund's reimbursement claim is entitled to an eighth priority claim as an excise tax under 11 U.S.C. section 507(a)(8). The Debtors' Objection should be denied as to the Fund. Of course, the Fund reserves the right to supplement this brief as necessary and appropriate in response to further briefing by the Debtors.

## IV.    CONCLUSION

Based on the foregoing, the Fund requests this Court deny Debtors' motion and enter an order finding the Fund's claim is entitled to priority status under 11 U.S.C. section 507(a)(8).

NIXON PEABODY LLP

By /s/ Louis E. Dolan, Jr.
  Louis E. Dolan, Jr. (VSB# 34437)
  Diana V. Vilmenay (VSB# 75536)
  401 9th Street NW
  Suite 900
  Washington, DC 20004-2128
  Telephone: (202) 585-8818
  Facsimile: (866) 947-3670
  Email:   ldolan@nixonpeabody.com
  Email:   dvilmenay@nixonpeabody.com

  - and -

  Louis J. Cisz, III (pro hac vice admission pending)
  Gina M. Fornario (pro hac vice admission pending)
  One Embarcadero Center
  18th Floor
  San Francisco, CA  94111-3600
  Telephone:  (415) 984-8200
  Facsimile:  (415) 984-8300
  Email:   lcisz@nixonpeabody.com
  Email:   gfornario@nixonpeabody.com

  Attorneys for Creditor
  CALIFORNIA SELF-INSURERS' SECURITY FUND

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2009, a true and complete of the foregoing was filed and served electronically using the Court's ECF system and was sent by first class mail, postage prepaid, to the entities at the addresses indicated below:

| | |
|---|---|
| Gregg M. Galardi, Esq.<br>Ian S. Fredericks, Esq.<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>P.O. Box 636<br>Wilmington, DE 19899-0636<br>T: (302) 651-3000<br>F: (302) 651-3001 | Dion W. Hayes<br>Douglas M. Foley<br>McGUIREWOODS LLP<br>One James Center<br>901 E. Cary Street<br>Richmond, VA 23219<br>T: (804) 775-1089<br>F: (804) 775-1061 |
| Chris L. Dickerson, Esq.<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>333 West Wacker Drive<br>Chicago, IL 60606<br>T: 312-407-0700<br>F: 312-407-0411 | Robert B. Van Arsdale<br>Office of the United States Trustee<br>Richmond, Virginia Office<br>701 East Broad Street, Suite 4304<br>Richmond, VA 23219-1888<br>T: (804) 771-2310<br>F: (804) 771-2330 |
| Jeffrey N. Pomerantz, Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard, 11th Fl<br>Los Angeles, CA 90067 | Lynn L. Tavenner, Esq.<br>Tavenner & Beran, PLC<br>20th North Eighth Street, Second Fl<br>Richmond, VA 23219 |

I also hereby certify that a caused a copy of the foregoing document to be delivered in PDF format, by e-mail to: circuitcyservice@mcquirewoods.com and project.circuitcity@skadden.com

/s/ Kim Love_____

## LOCAL RULE 9022-1 CERTIFICATION

I hereby certify that the foregoing has been either endorsed or served upon all necessary

parties.

/s/Kim Love_____