```
                    UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF VIRGINIA


IN RE:                          .  Case No. 08-35653(KRH)
                                .
                                .
CIRCUIT CITY STORES,            .
INC.,                           .  701 East Broad Street
                                .  Richmond, VA  23219
                                .
           Debtor.              .  August 18, 2009
. . . . . . . . . . . . . . .      2:05 p.m.



                       TRANSCRIPT OF HEARING
                BEFORE HONORABLE KEVIN R. HUENNEKENS
                UNITED STATES BANKRUPTCY COURT JUDGE



APPEARANCES:

For the Debtor:        McGuireWoods, LLP
                       By:  DOUGLAS FOLEY, ESQ.
                       9000 World Trade Center
                       101 W. Main Street
                       Norfolk, VA  23510

For the U.S. Trustee:  Office of the U.S. Trustee
                       By:  ROBERT V. VAN ARSDALE, ESQ.
                       701 East Broad Street, Suite 4302
                       Richmond, VA  23119
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

1      THE CLERK: All rise. The court is now in session.
2 Be seated and come to order. In the matter of Circuit City
3 Stores, Incorporated, hearing on Items 1 through 3 as set out
4 on debtor's agenda.
5      MR. FOLEY: Good afternoon, Your Honor. Doug Foley
6 with McGuireWoods in behalf of the debtor. With me today in
7 court is the principal financial officer of Circuit City
8 Michelle Mosier. Your Honor, we, first of all, want to thank
9 the Court for scheduling the hearing today, which is an off
10 omnibus date for us to address some claim matters. We should
11 be brief.
12      You know, there's three omnibus objections that we
13 filed and scheduled for a return date for today. Item Number 1
14 on the agenda is the 24th omnibus objection that deals with
15 certain real estate tax claims. I'll address some of the
16 responses in a minute, Your Honor.
17      The -- Items Number 2 and 3, Your Honor, deal with a
18 specific type of claim filed by certain former employees
19 relating to a company policy called PTO, Paid Time Off, which
20 was changed prior to the petition date.
21      Your Honor, we had 59 claims included in the 24th
22 omnibus objection dealing with real estate claims. We reviewed
23 these claims and believe that most of them related to or we
24 could not tell whether they were asserting a claim for real
25 estate taxes pertaining to locations that we leased and did not

1  own.  That was the basis for the objection.  Now, there's been
2  17 responses filed, Your Honor, and many of those have
3  clarified or pointed out that their proof of claim as filed was
4  not actually asserting tax or real estate taxes but was
5  actually asserting a personal property or ad valorem tax.
6         And so what we will do with those responses, in all
7  likelihood, Your Honor, if that is what the response is, we
8  will withdraw the objection as to those responses from this
9  objection, since it's clear that they are not asserting a tax
10 or real estate taxes.  And then with respect to the parties
11 that did not respond to this objection, Your Honor, we would
12 ask the Court to enter an order that would disallow those
13 claims, and until we confirm the respondents' claims related to
14 personal property taxes, we would ask that those be adjourned
15 until the September 22nd omnibus hearing date.
16         THE COURT:  All right.  Does any party wish to be
17 heard in connection with the debtor's motion?
18                  (No verbal response)
19         THE COURT:  All right, Mr. Foley, the claims that
20 we're adjourning to 9/22 are those that are set forth on
21 Exhibit A to the motion.  Is that what I understand?
22         MR. FOLEY:  That's correct, Your Honor, and there was
23 one more that we received by e-mail response yesterday that
24 we'll add to that --
25         THE COURT:  All right.

1          MR. FOLEY:  -- and make sure that that one's not
2    disallowed.
3          THE COURT:  And all the rest are -- will be
4    disallowed per your motion.
5          MR. FOLEY:  Thank you, Your Honor.  Again, Items
6    Number 2 and 3 on the agenda, this is the 25th omnibus
7    objection and the 26th omnibus objection.  Item Number 2 covers
8    500 claims to which there was 26 responses filed.  Item Number
9    3 picks up 19 claims to which one response was filed.
10          Your Honor, again, this relates to a company policy
11   that was delineated in the company's handbook about certain
12   benefits, and the way these benefits worked, Your Honor, is
13   that certain time -- paid time off would accrue for associates
14   over time, and it was a use-it or lose-it policy given.  You
15   had a certain amount of time to either take the paid vacation,
16   which would be normal paid vacation, or if you were terminated
17   -- if your employment terminated in the ordinary course and you
18   had accrued but unused and unexpired paid time off, you would
19   receive a cash check for the amount equivalent to what you had
20   accrued and had not used and had not expired.
21          Obviously, prior to the filing of the case, the
22   company, as it is authorized to do pursuant to the handbook and
23   the policy that was initiated, changed that and changed it to
24   only a use-it policy, meaning that if you were terminated post-
25   bankruptcy, you would not receive a cash check for accrued but

1  unused but unexpired paid time off.  That was communicated to
2  all the employee in December and --
3          THE COURT:  How was it communicated?
4          MR. FOLEY:  There was an e-mail.  There was an e-mail
5  memorandum that was sent in December to effective employees
6  that answered questions about the bankruptcy.  The -- there was
7  two communications actually, Your Honor.  The first one was --
8          THE COURT:  A couple of the objections that I'd seen,
9  the objecting parties were saying that they were told by their
10 supervisor that no, that, you know, they could work all the way
11 through, and then they would still get their payments, and
12 they're saying that, wait a second, now it's unfair.  So it
13 seems to me the question is how this change in policy was
14 communicated to these individuals.
15         MR. FOLEY:  Well, to start with, Your Honor, just to
16 give the Court some background as to what the policy says and
17 then what the handbook says about how it can be changed, the
18 paid time off description, Your Honor, in the employee benefits
19 handbook says that paid time off, PTO, of hourly associates,
20 "The purpose of PTO is to afford hourly associates the
21 opportunity to take paid time off from work during regular
22 scheduled work hours for personal time, for rest, relaxation,
23 personal business, sick time, and holidays.  The associate is
24 paid at his or her regular rate of pay while on PTO.  When time
25 off due to sickness or other medical reasons exceeds five

1  consecutive scheduled work days, please refer to the short-term
2  disability section of the associate leave policy."  And then it
3  describes who's eligible and how it accrues and the other
4  implementation of the policy.  But you -- it also provides
5  that, "Any benefits that are described in the employee handbook
6  do not constitute or imply employment contracts or any other
7  contractual obligation between the company, its associates, or
8  any other individuals eligible to participate in the benefit
9  programs.  In the event of any contradiction between the
10 information appearing in the handbook or the summary plan
11 descriptions," which is a defined term, "the plan documents, or
12 any company policies, the plan documents and the company
13 policies prevail.  The company reserves the right to amend or
14 terminate any of these benefit programs without consent or
15 notice to associates and/or other individuals eligible to
16 participate in these programs.  The company maintains these
17 programs by choice not obligations."
18          Now, the first communication, Your Honor, that went
19 out was in a memorandum -- two-page memorandum that talked
20 about what happens to my benefits when my employment ends,
21 frequently asked questions, and there were several Q and As
22 about the various different benefits.  But this particular one
23 was addressed in Paragraph 6 that says, "As a part-time or
24 full-time hourly associate, will I be paid for unused, accrued
25 PTO?"  And the answer was, "As a result of the bankruptcy

1  filing, Circuit City will not pay associates unused PTO hours
2  upon termination of employment.  We are authorized and will
3  continue to accrue and pay PTO that associates use while
4  employed, regardless of when the PTO accrued."
5          And then -- that was the December memorandum, Your
6  Honor.  And then when the liquidation was --
7          THE COURT:  Which means that put them on notice to
8  the effect that they needed to use that PTO before they were
9  terminated.
10         MR. FOLEY:  Correct, and there wasn't going to be any
11 cash -- there wasn't going to be any cash value any longer
12 associated with PTO.  And then there was another communication,
13 Your Honor, that was made --
14         THE COURT:  And then the total amount that they could
15 accumulate for PTO was five days?
16         MR. FOLEY:  No.  No.  That's if it was -- if they
17 were to take longer than five days, they have to consult with
18 supervisors regarding potential disability policy, things like
19 that.
20         THE COURT:  How much PTO could accrue?
21         MR. FOLEY:  In a year?
22         THE COURT:  Yes.
23         MR. FOLEY:  It may depend on the length of service,
24 but let me check with Ms. Mosier, Your Honor.
25         THE COURT:  Yes.

1                          (Pause)

2          MR. FOLEY:  Your Honor, the most someone could accrue
3  is three to four weeks, but it depends on your length of
4  service and how long you've been employed with the company.

5          THE COURT:  Okay.

6          MR. FOLEY:  The second communication, Your Honor,
7  that went out was in January when we obviously realized there
8  was going to be a liquidation, and there was -- this was a
9  little bit longer that dealt with answers to common questions
10 about Circuit City's liquidation announcement, and this was
11 also sent to all employees.

12         Paragraph 6, "Are there any changes to Circuit City's
13 paid time off policy?"  And again, Your Honor, it says, "As a
14 result of the bankruptcy filing, Circuit City will not pay
15 associates unused PTO hours upon termination of employment.  To
16 the extent an employee is terminated and at the time of
17 termination has accrued but has not used PTO, such employee
18 will not receive payment of amounts on account of such PTO at
19 the time of termination."

20         And this is -- the next sentence, Your Honor, is
21 probably where some of the response -- the confusion with some
22 of the responses comes from.  "Instead, during the bankruptcy
23 proceeding each employee, current and former, will receive a
24 proof of claim form.  The proof of claim form may be completed
25 by each employee for any claims, including, without limitation,

1  unpaid PTO at the time the employee receives the proof of claim
2  form."
3         The reason that sentence was put in there, Your Honor
4  -- and I would proffer Ms. Mosier's testimony to this point --
5  is that at the time when the policy was changed and announced,
6  it wasn't clear to us whether or not associates would be able
7  to assert a claim for this or not.  We've since concluded that
8  unless it's -- there's a -- unless the associate was in a --
9  what's called a compliant state -- and I need to give the Court
10 some background on that -- that there was no cash value to
11 these claims, and that they should be disallowed in their
12 entirety, and they shouldn't be even allowed as a general
13 unsecured claim.
14        A compliant state, Your Honor, is there are five or
15 six states in the United States that if you have policies like
16 this, they cannot be changed, and we did not object to any
17 associate's claims that were filed that emanated from a state
18 that was referred to as a compliant state.  California is one
19 of them.  I don't remember the other five, but those are not
20 subject to these objections.  Any state -- any employee that
21 has a claim from a state in which these types of claims would
22 -- are not allowed to be altered, we have not objected to those
23 claims at this time.
24        So, Your Honor, we did not know, and that's why that
25 sentence was put in there.  I can understand why people say,

1  well, you led me to believe that if I file a proof of claim, I
2  would have some kind of a claim for this.  Unfortunately, Your
3  Honor, we just don't see -- this is a pre-petition policy.  It
4  was changed pre-petition.  It was announced post-petition.
5           In the aggregate dollar value, what we're talking
6  about here is probably $650,000 in total for all these
7  employees.  That's an expenditure obviously that we would've
8  had difficulty, you know, getting approved either through the
9  negotiated process with the Creditors' Committee or any other
10 means.
11          And so, Your Honor, we thought that that was the
12 responsible thing to do is to change the policy and to
13 communicate it as effectively as we could.  To the extent, you
14 know, it wasn't perfectly clear from that last sentence in the
15 second communique, we don't think it changes the ultimate
16 result.
17          So with respect to those, again, Your Honor, we'll
18 try to deal with these 26 responses.  We'll obviously confirm
19 -- make sure that none of them are from compliant states.  We
20 don't think they are.  And we will probably end up having to
21 file some kind of a summary proceeding with respect to those,
22 since they're a common -- there's a common issue as to all of
23 them as to whether or not Your Honor would agree that, Your
24 Honor, these -- there's no claim here for these.  But with
25 respect to those who didn't respond, Your Honor, we would ask

1  that the Court enter an order disallowing those claims.
2              THE COURT: What would've happened to -- well, strike
3  that. How many employees actually used PTO post-petition?
4              MR. FOLEY: If I could have one minute, Your Honor?
5                        (Pause)
6              MR. FOLEY: Your Honor, a lot of the employees that
7  were subsequently employed by the liquidator once they took
8  over the wind down and liquidation of the inventory in the
9  stores, those employees did use their vacation, PTO, as part of
10 the liquidation process, and the estate reimbursed the
11 liquidator for that -- those costs. So we don't have an exact
12 figure as to how many people actually used it post-petition,
13 but to the extent people worked through the process, they
14 certainly used it, because once this was communicated, people
15 realized I've got to use it or I'll lose it. I don't get a
16 cash check.
17             THE COURT: And that was really where my question was
18 going. So there were -- people were actually given an
19 opportunity to use it --
20             MR. FOLEY: Oh, absolutely.
21             THE COURT: -- and it wasn't just a matter of, you
22 know, setting them up, so that they were going to be terminated
23 and then not ever get a chance to use it.
24             MR. FOLEY: Absolutely, Your Honor. My guess is that
25 a lot of these relate to employees that were terminated early

1  in the process, early in the case, and certainly probably not
2  past -- probably not past the December liquidation -- the first
3  round of liquidations, because the -- the policy was pretty
4  widely known at that point, that you had to use it or lose it,
5  so we managed it as best we could.  We didn't want to -- we
6  certainly weren't trying to obviously trick anybody or, like
7  you said, you know, lead somebody to not take it and then end
8  up losing any benefits associated with it.  So the liquidators,
9  to the extent they employed people, they certainly used it, and
10 we paid for it, because we had to reimburse the liquidator for
11 it.
12         THE COURT:  All right.  And so what you're asking
13 today is you've only gotten 26 responses to the objections that
14 you filed.
15         MR. FOLEY:  27 between the two omnis.  I mean,
16 obviously, we're limited to 500 claims per omni, and that's the
17 only reason we had to break it out into two.  But we have 27
18 total responses.
19         THE COURT:  Okay, and so you're asking today to
20 disallow all of the claims to which there was no response
21 filed --
22         MR. FOLEY:  Yes, Your Honor.
23         THE COURT:  -- and then you're going to deal with
24 those that did respond, those 27 in a summary proceeding later
25 on.

1       MR. FOLEY: In all likelihood, that's what we'll do,
2  unless there's some distinguishing feature with any other
3  responses.
4       THE COURT: All right. Does any party wish to be
5  heard in connection with the debtor's motion?
6       MR. VAN ARSDALE: Robert Van Arsdale for the U.S.
7  Trustee. And Mr. Foley and I have talked about this a little
8  bit, because at first blush this really does look like hardball
9  when you change the policy I think the day before pre-petition
10 -- I mean the day before you file, because what you're doing
11 then is you're taking what would've been a priority expense,
12 because PTO counts as priority under 507. That's one of the
13 wage things that you get claim for should you be in that
14 situation when somebody files, and now by changing that policy,
15 but you've converted what would be a priority into what becomes
16 a nothing, and that -- I think that's the thing that troubles
17 me about this whole situation.
18      I'm not sure they did anything wrong. I'm not sure
19 that they're not entitled to have these claims disallowed, but
20 it really is on the edge, as far as I'm concerned, about what
21 would be a responsible thing to do for your employees. But if
22 you look at 507 -- I think it's (6).
23      THE COURT: It's 507(a)(4). Is it (6)?
24      MR. VAN ARSDALE: No, that's Green. Never mind.
25      THE COURT: I thought it was (a)(4).

1        MR. VAN ARSDALE:  (a) -- okay.  Yes, "wage and
2   salaries, commissions, including vacation, severance and sick
3   leave pay earned by an individual."  It seems pretty clear that
4   that would be something that would give you a priority --
5        THE COURT:  But the policy --
6        MR. VAN ARSDALE:  -- had it accrued at the time.
7   Now --
8        THE COURT:  But hadn't it already accrued up until
9   they changed the policy?
10       MR. VAN ARSDALE:  Yes.
11       THE COURT:  Okay, and when did they change the
12  policy?
13       MR. VAN ARSDALE:  The day before they filed.
14       THE COURT:  Okay, but doesn't this give them an
15  administrative claim or a priority claim, rather, for the 180
16  days prior to that or the 179 days before they change the
17  policy?
18       MR. VAN ARSDALE:  I think if they continued in their
19  employment and they weren't terminated yet, then it wasn't
20  triggered.  So if they're not terminated pre-petition -- if
21  they're terminated pre-petition, this rules even under our
22  circumstances.  If you worked the next day and they filed the
23  next day, this is gone, and unless you are in a situation where
24  you can actually take a vacation at the height of when they're
25  filing bankruptcy, then what you had the day before no longer

1  exists and what you had the day before had you been terminated
2  or I guess quit --
3                         (Pause)
4         MR. VAN ARSDALE:  Or you could quit.  You could've
5  quit, but you didn't know that.  You could've quit that day,
6  and you would've had a priority claim.  You worked the next
7  day.  Now you got zip-a-dee-doo-dah for what you may have
8  skipped taking time off for in order to accrue that, because
9  you could see the end was coming.  That's my only point.
10        THE COURT:  All right.  The concern that I had was
11 that if the employees had in effect really known what the
12 policy was, wouldn't they have all taken their vacation before
13 they were terminated?  Why would anybody choose not to take
14 their vacation before they were terminated if they didn't think
15 they were going to get paid for it?
16        MR. FOLEY:  Well, Your Honor, as to the priority
17 issue, anybody who was employed as of the petition date,
18 anything that was owed to them pre-petition, due and owing,
19 wages, was paid.  As Your Honor knows, on a -- we had a first
20 day wage motion where all the wages were paid.
21        THE COURT:  And that included PTO?
22        MR. FOLEY:  To the extent that anybody before the
23 policy was changed that was entitled to PTO that was paid.  It
24 was only post-petition when someone terminated their employment
25 without using whatever accrued and unexpired PTO there was,

1  they did not get a cash check for it.
2             THE COURT:  Okay.  Help me with this.  If somebody
3  had four weeks of PTO accrued on the petition date, all right,
4  then my order that I entered paid them those four weeks?
5             MR. FOLEY:  It authorized but not directed us to pay
6  it, but they have to -- they have to -- their employment has to
7  terminate in order to trigger the cash -- the cash benefit.
8             THE COURT:  Okay, but they had a -- at that point --
9             MR. FOLEY:  They could use it.
10            THE COURT:  -- a pre-petition claim --
11            MR. FOLEY:  Sure.
12            THE COURT:  -- that I authorized.  Okay?  Now let's
13 assume that they were terminated in December, okay, post-
14 petition.  And what happened -- what's happening now to that
15 pre-petition claim that I authorized to be paid?
16            MR. FOLEY:  No, the -- the claim, you know, is -- the
17 -- it's the -- you're saying that they didn't use -- they
18 didn't use their vacation pay.
19            THE COURT:  They haven't used their vacation.
20 They're --
21            MR. FOLEY:  Okay, or their P -- their PTO.
22            THE COURT:  -- dedicated Circuit City employees.
23 They're working, you know, all the way through.
24            MR. FOLEY:  They did not receive a -- they did not
25 receive a check, Your Honor, and to the extent these claims

1  cover that, again, these were culled out as PTO claims.  If I
2  could have one minute to ask Ms. Mosier one question.
3              THE COURT:  Well, if I approved it, the payment of it
4  earlier, why are we going to disallow their claims now?
5              MR. FOLEY:  You authorized but did not direct the
6  debtors to be able to honor their wage employee programs, and
7  so that's what we did.  The -- as of the petition date, we
8  would -- we did not pay PTO cash payouts upon termination.  If
9  you had accrued but unused and unexpired PTO, you didn't get
10 cash.  You were able to use it post-petition.  The -- that's
11 the whole point.  I mean this goes to whether or not Your Honor
12 would ever grant us summary judgment on this issue on the rest
13 of the respondents, but that's -- you know, that's not --
14 that's not before the Court today.
15             THE COURT:  I understand that.  I just -- I'm just
16 having a great deal of difficulty understanding why any
17 employee would say, you know, I'm going to work up to my
18 termination date.  You know, if I've got two weeks of vacation
19 coming, why wouldn't I just take the two weeks of vacation?
20             MR. FOLEY:  Well, that all has to be scheduled
21 obviously with --
22             THE COURT:  Right.
23             MR. FOLEY:  -- the approval of management.
24             THE COURT:  And if it doesn't get approved, because
25 you're in liquidation mode and all that kind of stuff, then,

1  you know, the employee is just getting victimized here.  Isn't?
2           MR. FOLEY:  Well, Your Honor, again the question is
3  if we changed the policy pre-petition and what you approve is a
4  continuation of the pre-petition policies, and that policy
5  excluded cash payments upon termination if you had unused PTO,
6  these claims are for that, and that's really the request for
7  relief.  I mean, Your Honor, we'll -- we can certainly revisit
8  this with the responders and see if there's an issue there to
9  try to deal with this in a fashion that's more palatable to the
10 U.S. Trustee and to the Court, but, Your Honor, we think the
11 claims in this regard ought to be disallowed, because they're
12 not -- they're not consistent with the company's policy.
13          THE COURT:  Which was changed the day before the
14 filing.  All right.  Does any other party wish to be heard?
15                    (No verbal response)
16          THE COURT:  All right, Mr. Foley, I want to look at
17 this motion some more, so I'm not going to make a ruling today.
18 With regard to the 26 responses or 27 responses, I assume you
19 want to carry that out to 9/22, just so we can have it on the
20 docket.
21          MR. FOLEY:  Yes, Your Honor.
22          THE COURT:  So we'll carry both of these matters over
23 to 9/22 --
24          MR. FOLEY:  That's fine, Your Honor.
25          THE COURT:  -- just so that we've got it.  In the

 1  meantime, I will look at it and, hopefully, if -- you know,
 2  reach a decision prior to the 22nd on that.  I just want to
 3  take another look at it.
 4          MR. FOLEY:  Thank you, Your Honor.  And we'll also --
 5  we'll also look at it closer, and to the extent we have
 6  anything further to advise the Court of, we will do so.
 7          THE COURT:  All right.  Thank you very much.
 8          MR. FOLEY:  Thank you, Your Honor.
 9          THE COURT:  Do we have any further business we need
10  to take up in Circuit City today?
11          MR. FOLEY:  No, Your Honor.
12          THE COURT:  All right.  Thank you.
13          MR. FOLEY:  Thank you.
14          THE CLERK:  All rise.  Court is now in recess.
15                          * * * * *
16                      **C E R T I F I C A T I O N**
17  _____I, PATRICIA C. REPKO, court approved transcriber,
18  certify that the foregoing is a correct transcript from the
19  official electronic sound recording of the proceedings in the
20  above-entitled matter, and to the best of my ability.
21
22  /s/ Patricia C. Repko                 DATE:  August 25, 2009
23  PATRICIA C. REPKO
24  J&J COURT TRANSCRIBERS, INC.
25