Gregg M. Galardi, Esq.          Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.         Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &  MCGUIREWOODS LLP
FLOM, LLP                       One James Center
One Rodney Square               901 E. Cary Street
PO Box 636                      Richmond, Virginia 23219
Wilmington, Delaware 19899-0636 (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                         RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :    Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :    Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER (I) APPROVING SALE OF MISCELLANEOUS INTELLECTUAL PROPERTY ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the Motion for Orders

Pursuant to Bankruptcy Code Sections 105 and 363 and

Bankruptcy Rule 2002 and 6004 (I)(A) approving Bidding

Procedures for the Sales of the Intellectual Property

Assets, (B) authorizing the Sellers to enter into Stalk-

ing Horse Agreements in connection therewith,
(C) approving the payment of Termination Fees in connec-
tion therewith, (D) approving the Notice Procedures and
(E) scheduling Auction and Hearing dates; (II) approving
the Sales of the Intellectual Property Assets free and
clear of all Interests; and (III) granting related re-
lief (the "Motion"); and the Court having entered the
Order (I) Approving Procedures In Connection With Sales
Of Miscellaneous Intellectual Property Assets,
(II) Authorizing Sellers To Enter Into Stalking Horse
Agreements In Connection Therewith, (III) Approving The
Payment Of Termination Fees In Connection Therewith,
(IV) Setting Auction And Hearing Dates And (V) Granting
Related Relief (the "Bidding Procedures Order"),[1] which
authorized the Debtors to conduct the Sales of the In-
tellectual Property Assets; and the Sellers having held
Auctions on August 18, 2009; and the Court having held a
hearing on the Motion on July 16, 2009 and August 27,
2009; and all parties in interest having been heard, or
having had the opportunity to be heard, regarding the

---

[1]   Capitalized terms not otherwise defined herein shall have the
      meanings ascribed to such terms in the Bidding Procedures Order.

Agreement (as defined below), by and among the Sellers and the Purchaser (as defined below) and the transactions contemplated thereby (the "Transactions"); and after due deliberation thereon, and good cause appearing therefore it is hereby

**FOUND AND DETERMINED THAT:**[2]

A.   The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.   Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.   The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002 and 6004.

---

[2]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.  All statements by the Court at the hearing shall constitute additional findings of fact and conclusions law, as applicable.

D.   Notice of the Motion and entry of this
Order has been provided to (A)(i) all entities known to
have expressed an interest in a transaction with respect
to the Intellectual Property Assets or similar assets
during the past three (3) months, (ii) all entities
known to have asserted any Lien upon the Intellectual
Property Assets, (iii) all federal, state, and local
regulatory or taxing authorities or recording offices,
which have a reasonably known interest in the relief re-
quested by the Motion, (iv) the Attorney Generals for
all fifty (50) States; (v) the CPO, and (vi) all parties
entitled to notice under the Order Pursuant to Bank-
ruptcy Code Sections 102 and 105, Bankruptcy Rules 2002
and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1
Establishing Certain Notice, Case Management, and Admin-
istrative Procedures (D.I. 130; the "Case Management Or-
der") and (B) other parties through publication of the
Sale Notice, all in accordance with and as provided by
the Bidding Procedures Order.

E.   Based upon the affidavits of service
filed with the Court: (a) notice of the Motion and the
Sale Hearing was adequate and sufficient under the cir-

4

cumstances of these chapter 11 cases and these proceed-
ings and complied with the various applicable require-
ments of the Bankruptcy Code and the Bankruptcy Rules;
and (b) a reasonable opportunity to object and be heard
with respect to the Motion and the relief requested
therein was afforded to all interested persons and enti-
ties.

F.   The Purchased Assets (as defined herein)
are property of the Sellers' estates and title thereto
is vested in the Sellers' estates.

G.   The Sellers and their professionals mar-
keted the Intellectual Property Assets and conducted the
sale process as set forth in and in accordance with the
Motion and the Bidding Procedures Order.  Based upon the
record of these proceedings, all creditors and other
parties in interest and all prospective purchasers have
been afforded a reasonable and fair opportunity to bid
for the Intellectual Property Assets.

H.   The Bidding Procedures approved by this
Court and by which the sale process was conducted were
substantively and procedurally fair to all parties.

I.    After the Auction held on August 18, 2009, the Debtors determined that the highest and best bid was that of Steven Ivestor (the "Purchaser"), a copy of which is attached hereto as Exhibit A, (the "Agreement").  The Agreement is to purchase certain of the Intellectual Property Assets, as listed on Schedule 1.02(a)(i) to the Agreement (the "Purchased Assets").

J.    Subject to the entry of this Order, each Seller (i) has full power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets by the Sellers has been duly and validly authorized by all necessary company action of each of the Sellers, (ii) has all of the power and authority necessary to consummate the Transactions, (iii) has taken all company action necessary to authorize and approve the Agreement and the consummation by the Sellers of the Transactions.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Sellers to close the Sale and consummate the Transactions.

K.    The Agreement and the Transactions were negotiated and have been and are undertaken by the Sell-

ers and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Sections 363(m) of the Bankruptcy Code.  As a result of the foregoing, the Sellers and the Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code.

L.   The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Sellers, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.

M.   The Purchaser would not have entered into the Agreement and would not consummate the Transactions, thus adversely affecting the Sellers, their estates and creditors, if the sale of the Purchased Assets to the Purchaser was not free and clear of all Interests (as defined herein), or if the Purchaser would, or in the

future could, be liable for any of such Interest.  A
sale of the Purchased Assets other than one free and
clear of all Interests would adversely impact the Sell-
ers' estates, and would yield substantially less value
for the Sellers' estates, with less certainty than the
Sale.  Therefore, the Sale contemplated by the Agreement
is in the best interests of the Sellers, their estates
and creditors, and all other parties in interest.

N.   The Sellers may sell the Purchased Assets
free and clear of all Interests, because, with respect
to each creditor asserting a Interest, one or more of
the standards set forth in Bankruptcy Code § 363(f)(1)-
(5) has been satisfied.  Those holders of Interest who
did not object or who withdrew their objections to the
Sale or the Motion are deemed to have consented to the
Motion and Sale pursuant to Bankruptcy Code § 363(f)(2).
Those holders of Interests who did object fall within
one or more of the other subsections of Bankruptcy Code
Section 363(f).

O.   Neither the Sellers nor Purchaser engaged
in any conduct that would cause or permit the Agreement
or the consummation of the Transactions to be avoided,

or costs or damages to be imposed, under Section 363(n)
of the Bankruptcy Code.

P.    The Purchaser is not holding itself out
to the public as a continuation of the Sellers and is
not an "insider" or "affiliate" of any of the Debtors.

Q.    Entry into the Agreement and consummation
of the Transactions constitute the exercise by the Sell-
ers of sound business judgment and such acts are in the
best interests of the Sellers, their estates and credi-
tors, and all parties in interest.  The Court finds that
the Sellers have articulated good and sufficient busi-
ness reasons justifying the Sale of the Purchased Assets
to Purchaser.  Such business reasons include, but are
not limited to, the following: (i) the Agreement consti-
tutes the highest and best offer for the Purchased As-
sets; (ii) the Agreement and the closing thereon (the
"Closing") will present the best opportunity to realize
the value of the Purchased Assets and avoid decline and
devaluation of the Purchased Assets; (iii) there is sub-
stantial risk of deterioration of the value of the Pur-
chased Assets if the Sale is not consummated promptly;
and (iv) the Agreement and the Closing thereon will pro-

vide a greater recovery for the Sellers' creditors than
would be provided by any other presently available al-
ternative.

R.   Time is of the essence in consummating
the Sale.  In order to maximize the value of the Sell-
ers' assets, it is essential that the sale of the Intel-
lectual Property and Internet Assets occur within the
time constraints set forth in the Agreement.  Accord-
ingly, there is cause to lift the stay contemplated by
Bankruptcy Rules 6004.

S.   The Sale contemplated by the Agreement is
in the best interests of the Sellers and their estates,
creditors, interest holders and all other parties in in-
terest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.   The relief requested in the Motion is
GRANTED to the extent set forth herein.

2.   Pursuant to Bankruptcy Code sections 105
and 363, the Agreement and the Sale of the Purchased As-
sets to Purchaser are hereby approved and authorized in
all respects.

10

3.    Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the consummation of the Agreement, the Sellers' right, title, and interest in the Purchased Assets shall be transferred to the Purchaser free and clear of all interests, including liens, claims, and encumbrances ("Interests"), with all such Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Purchased Assets immediately before such transfer, subject to any claims and defenses the Sellers may possess with respect thereto.

4.    Except as may be expressly provided in the Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Sellers in any way whatsoever relating to or arising from the Sellers' ownership or use of the Purchased Assets prior to the consummation of the Transaction contemplated by the Agreement, or any liabilities calculable by reference to the Sellers or the Purchased Assets, or relating to continu-

ing or other conditions existing on or prior to the
Closing..

5.   The Transactions were undertaken by the
Purchaser in good faith and the Purchaser is a good
faith purchaser of the Purchased Assets as that term is
used in Bankruptcy Code section 363(m).  The Purchaser
is entitled to all of the protections afforded by Sec-
tion 363(m) of the Bankruptcy Code.

6.   Pursuant to sections 105 and 363 of the
Bankruptcy Code, the Sellers and the Purchaser are each
hereby authorized to take any and all actions necessary
or appropriate to: (i) consummate the Sale of the Pur-
chased Assets to Purchaser and the Closing of the Sale
in accordance with the Motion, the Agreement and this
Order; and (ii) perform, consummate, implement and close
fully the Agreement together with all additional instru-
ments and documents that may be reasonably necessary or
desirable to implement the Agreement.

7.   This Order is and shall be binding upon
and govern the acts of all entities, including, all fil-
ing agents, filing officers, title agents, title compa-
nies, recorders of mortgages, recorders of deeds, regis-

12

trars of deeds, administrative agencies or units, gov-
ernmental departments or units, secretaries of state,
federal, state and local officials and all other persons
and entities who may be required by operation of law,
the duties of their office, or contract, to accept,
file, register or otherwise record or release any docu-
ments or instruments, or who may be required to report
or insure any title or state of title in or to the Pur-
chased Assets conveyed to Purchaser.  All such entities
described above in this paragraph are authorized and
specifically directed to strike all recorded Interests
against the Purchased Assets from their records, offi-
cial and otherwise.

8.   Each and every federal, state and govern-
mental agency or department, and any other person or en-
tity, is hereby directed to accept any and all documents
and instruments necessary and appropriate to consummate
the transactions contemplated by the Agreement.

9.   If the Purchaser fails to close on the
purchase of the Property in accordance with the terms of
the Agreement due to no fault of and Seller is not in
default of its obligations under such Agreement, then

13

Seller's counsel shall file with the Court and serve
upon the Purchaser,  the Alternate Bidder and their
counsel, a notice of such default, which shall include a
copy of the Alternate Bidder's agreement upon which the
Seller will then close, in which case (i) Seller shall
be deemed authorized to close on the sale of the Prop-
erty and assignment of the Leases with the Alternate
Bidder on five (5) days' advance written notice to the
Alternate Bidder, and (ii) the Alternate Bidder shall be
afforded all of the protections originally afforded to
the Purchaser under this Sale Order and the findings
herein as to adequacy and fairness of consideration paid
and good faith shall be deemed to apply to the Alternate
Bidder, its Alternate Bid, and its purchase and sale
agreement with the Seller, without the necessity of fur-
ther order of this Court.

    10.   This Order shall be effective immediately
upon entry, and any stay of orders provided for in Bank-
ruptcy Rule 6004(h) and any other provision of the Bank-
ruptcy Code or Bankruptcy Rules is expressly lifted.

    11.   To the extent permitted by section 525 of
the Bankruptcy Code, no governmental unit may revoke or

14

suspend any right, license, trademark or other permis-
sion relating to the use of the Purchased Assets sold,
transferred or conveyed to Purchaser on account of the
filing or pendency of these Chapter 11 cases or the con-
summation of the Sale.

12.    The Purchaser or its assigns are hereby
prohibited from (1) communicating with persons (the
"Warranty Customer") to whom a warranty contract was is-
sued under any warranty issuance agreement entered into
prior to the September 30, 2009 (the "Warranty Con-
tract") with respect to, relating to, or arising out of,
any issue related to such Warranty Contract, except if
the inquiry or contact is initiated by such Warranty
Customer in which case the Purchaser or its assign shall
direct them to the present obligor or administrator for
such Warranty Contract, (2) soliciting any Warranty Cus-
tomer to cancel an existing Warranty Contract, or (3)
soliciting any Warranty Customer to renew or replace an
existing Warranty Contract.

13.    This Court retains jurisdiction to hear
and determine all matters arising from or related to im-

plementation or interpretation of this Order or the

Agreement.

Dated:  Richmond, Virginia
        _____, 2009

        _____
        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

        - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

        - and -

/s/ Douglas M. Foley
_____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

SEEN AND CONSENTED TO BY:

/s/ Jonathan I. Levine
Jonathan I. Levine
ANDREWS KURTH  LLP
450 Lexington Avenue - 15th Floor
New York, NY 10017
(212) 850-2816


**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley
Douglas M. Foley

## **EXHIBIT A**

**(Agreement)**

**ASSET PURCHASE AGREEMENT**

**Dated as of August __, 2009**

**among**

**STEVEN IVESTER,**

**as Buyer,**

**and**

**CIRCUIT CITY STORES WEST COAST, INC.**

**and**

**CIRCUIT CITY STORES, INC.,**

**and**

**COURCHEVEL, LLC]**

**as Sellers**

# TABLE OF CONTENTS

Page

ARTICLE I PURCHASE AND SALE OF ACQUIRED ASSETS; PURCHASE PRICE 1

**SECTION 1.01.** Purchase and Sale of Acquired Assets.........................................................1
**SECTION 1.02.** Assets and Liabilities ...................................................................................2
**SECTION 1.03.** Purchase Price...............................................................................................2
**SECTION 1.04.** Transfer Taxes. .............................................................................................2

ARTICLE II CLOSING; CERTAIN DELIVERIES 2

**SECTION 2.01.** Closing. .........................................................................................................2
**SECTION 2.02.** Certain Deliveries of the Sellers. .................................................................3
**SECTION 2.03.** Certain Deliveries of Buyer. .........................................................................3

ARTICLE III REPRESENTATIONS AND WARRANTIES RELATING TO THE COMPANY
AND THE SELLERS 3

**SECTION 3.01.** Organization; Authority; Execution and Delivery; Enforceability..............4
**SECTION 3.02.** No Conflicts; Consents. .................................................................................4
**SECTION 3.03.** Title to Assets. ...............................................................................................5
**SECTION 3.04.** Financial Advisors. ........................................................................................5
**SECTION 3.05.** AS IS. .............................................................................................................5
**SECTION 3.06.** The Marks. .....................................................................................................5

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF BUYER 6

**SECTION 4.01.** Organization, Standing and Power. ...........**Error! Bookmark not defined.**
**SECTION 4.02.** Authority; Execution and Delivery; Enforceability .....................................6
**SECTION 4.03.** No Conflicts; Consents ..................................................................................6
**SECTION 4.04.** Financing........................................................................................................6
**SECTION 4.05.** No Brokers. ....................................................................................................7
**SECTION 4.06.** Litigation........................................................................................................7

ARTICLE V COVENANTS 7

**SECTION 5.01.** Covenants Relating to Acquired Assets.......................................................7
**SECTION 5.02.** Reasonable Best Efforts.................................................................................7
**SECTION 5.03.** Supplemental Disclosure. .............................................................................8
**SECTION 5.04.** Further Assurances.........................................................................................9
**SECTION 5.05.** Sale Order and Sale Hearing.........................................................................9
**SECTION 5.06.** Employees.................................................**Error! Bookmark not defined.**
**SECTION 5.07.** Access to Information. ...................................................................................9

ARTICLE VI CONDITIONS PRECEDENT                                                        9

**SECTION 6.01.**      Conditions to Each Party's Obligation. ......................................................9
**SECTION 6.02.**      Conditions to Obligations of Buyer. ...........................................................10
**SECTION 6.03.**      Conditions to Obligation of the Sellers.......................................................11

ARTICLE VII TERMINATION, AMENDMENT AND WAIVER                                          11

**SECTION 7.01.**      Termination..................................................................................................11
**SECTION 7.02.**      Effect of Termination..................................................................................12
**SECTION 7.03.**      Amendments and Waivers. ..........................................................................13

ARTICLE VIII GENERAL PROVISIONS                                                        13

**SECTION 8.01.**      Expenses. .....................................................................................................13
**SECTION 8.02.**      No Survival of Representations and Warranties.........................................13
**SECTION 8.03.**      Assignment. .................................................................................................13
**SECTION 8.04.**      No Third Party Beneficiaries. .....................................................................13
**SECTION 8.05.**      Remedies.......................................................................................................13
**SECTION 8.06.**      Notices. ........................................................................................................14
**SECTION 8.07.**      Interpretation; Exhibits and Schedules; Certain Definitions .....................15
**SECTION 8.08.**      Counterparts. ...............................................................................................16
**SECTION 8.09.**      Entire Agreement. ........................................................................................16
**SECTION 8.10.**      Severability. .................................................................................................16
**SECTION 8.11.**      Exclusive Jurisdiction. ................................................................................18
**SECTION 8.12.**      Governing Law. ...........................................................................................18
**SECTION 8.13.**      Waiver of Jury Trial.....................................................................................18
**SECTION 8.14.**      Bankruptcy Court Approval.........................................................................18

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT**, dated as of August 9, 2009 (this "Agreement"), is by and among Steven Ivester, an individual ("Buyer"), Circuit City Stores West Coast, Inc. ("CCWC"), Circuit City Stores, Inc. (the "Company"), and [Courchevel, LLC ("Courchevel"], and together with CCWC and the Company, the "Sellers").

**WHEREAS**, each of CCWC and the Company are debtors which have commenced cases under chapter 11 of the Bankruptcy Code by filing voluntary petitions with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") (collectively, the "Cases");

**WHEREAS**, each of the Sellers wishes to sell, or cause to be sold, to Buyer, and Buyer wishes to purchase from the Sellers, all of the Acquired Assets pursuant to, inter alia, Section 363 of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, and all other Applicable Laws;

**WHEREAS**, on July 6, 2009, the Sellers filed a motion seeking, among other things, approval of bid procedures by which the Sellers would market and solicit bids for the Acquired Assets and the sale of the Acquired Assets pursuant to Bankruptcy Code section 363;

**WHEREAS**, on July 16, 2009, the Bankruptcy Court entered an order approving the Bid Procedures;

**WHEREAS,** on August 18, 2009, the Sellers held an auction (the "Auction") for the Acquired Assets and Buyer was the successful bidder at such Auction; and

**WHEREAS**, the sale of the Acquired Assets is subject to the approval of the Bankruptcy Court.

**NOW, THEREFORE**, in consideration of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions hereof, the parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I

## PURCHASE AND SALE OF ACQUIRED ASSETS; PURCHASE PRICE

**SECTION 1.01.**    Purchase and Sale of Acquired Assets.    Subject to the terms and conditions of this Agreement, at and as of the Closing, (a) the Sellers shall (and the Company shall cause the Sellers and the Sellers' Affiliates to) sell, assign, convey, transfer and deliver to Buyer all of seller's rights, title, and interests in and to the Acquired Assets, free and clear of all Liens, and free and clear of all Liabilities; and (b) in exchange therefor, Buyer shall pay an amount equal to the Purchase Price in accordance with Section 1.03.

1

**SECTION 1.02.**    Assets and Liabilities Acquired Assets.    For purposes of this Agreement, "Acquired Assets" means all rights and interests of the Sellers described in clause (i) below.  For the avoidance of doubt, if any Acquired Asset is not sold, assigned, conveyed, transferred or delivered to Buyer or its designees on the Closing Date, such Acquired Asset shall be sold, assigned, conveyed, transferred or delivered as promptly as possible in accordance with the procedures for assumption and assignment set forth in the Sale Order.

(i)    The domain name set forth on Schedule 1.02(a)(i) and all goodwill associated with such domain name (the "Mark").

(b)    Excluded Assets.    Notwithstanding anything to the contrary in this Agreement and for the avoidance of doubt, Seller is not selling, conveying, assigning, transferring or delivering to Buyer any assets or rights other than those conveyed to Buyer pursuant to the terms of Section 1.02(a) (all other assets and rights, the "Excluded Assets").

(c)    Excluded Liabilities.    Notwithstanding anything contained in this Agreement to the contrary, Buyer is not assuming any Liabilities related to the Acquired Assets. All Liabilities related to the Acquired Assets shall be Excluded Liabilities and shall be retained by and remain the Liabilities of the Sellers.

**SECTION 1.03.**    Purchase Price.  The purchase price for the Acquired Assets shall be an amount in cash equal to Two Hundred Fifty Thousand dollars ($250,000) (the "Purchase Price").

**SECTION 1.04.**    Transfer Taxes.  Notwithstanding any other provision herein, all Transfer Taxes attributable to the Sellers' sale of the Acquired Assets, as well as the cost of the filing of all necessary tax returns and other documentation with respect to all such Transfer Taxes, shall be borne and paid equally by the Sellers, on the one hand, and Buyer, on the other, when due, and the Sellers and Buyer shall file all necessary tax returns and other documentation required to be filed by them with respect to all such Transfer Taxes, and, if required by applicable law, Buyer and the Sellers will, and will cause their Affiliates to, file or join in the execution of any such tax returns and other documentation; provided that the parties shall reasonably cooperate in availing themselves of any available exemptions from any collection of (or otherwise reduce) any such Transfer Taxes.

## ARTICLE II

## CLOSING; CERTAIN DELIVERIES

**SECTION 2.01.**    Closing.  Unless this Agreement shall have been terminated and the Transactions shall have been abandoned pursuant to Article VII hereof, the closing of the Transactions (the "Closing") shall take place at the Delaware offices of Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, Wilmington, Delaware, at 10:00 a.m. on the second Business Day following the satisfaction (or, to the extent permitted, the waiver) of each of the conditions set forth in Article VI (other than those conditions which, by their nature, can be fulfilled only at the Closing, but subject to the fulfillment or waiver of such conditions) or at

such other place or at such other time as shall be agreed upon by Buyer and the Company.  The date on which the Closing occurs is referred to in this Agreement as the "Closing Date."

**SECTION 2.02.**     Certain Deliveries of the Sellers.  At the Closing, the Sellers shall, at Sellers' expense, deliver the following to Buyer:

(a)     An executed Bill of Sale, Assignment and Assumption Agreement in form and substance set forth in Exhibit A hereto;

(b)     A certified copy of the Sale Order;

(c)     The officer's certificates required to be delivered pursuant to Section 6.02(c) hereof;

(d)     A certified copy of all required directors' resolutions; and

(e)     Such other documents of assumption and adequate assurances as may be required by the Sale Order that the Buyer shall have identified not later than five (5) Business Days prior to the Closing Date.

**SECTION 2.03.**     Certain Deliveries of Buyer.  At the Closing, Buyer shall, at Buyer's expense, deliver to the Sellers:

(a)     By wire transfer of immediately available funds to the account(s) designated by the Company, the Purchase Price;

(b)     An executed Bill of Sale, Assignment and Assumption Agreement in form and substance set forth in Exhibit A hereto;

(c)     Such other documents of assumption and adequate assurance as may be required by the Sale Order; and

(d)     Such other documents as Sellers may reasonably require.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES
## RELATING TO THE COMPANY AND THE SELLERS

Sellers have delivered to Buyer and attached hereto certain Disclosure Schedules prepared by Sellers with numbered sections corresponding to the relevant sections in this Article III (the "Seller Disclosure Schedules"), and any exception or qualification set forth in the Seller Disclosure Schedules with respect to a particular representation or warranty contained in this Article III shall be deemed to be an exception or qualification with respect to such section of this Article III and all other representations or warranties contained in this Article III only to the extent any description of fact regarding the event, item or matter is disclosed in such a way as to make it reasonably apparent from the face of such disclosure without further inquiry that such exception or qualification is applicable to such other Section of this Article III.

3

The Sellers hereby represent and warrant to Buyer, jointly and severally, as of the date of this Agreement and (unless the representation and warranty specifies that it is made as of the date of this Agreement) as of the Closing Date as follows:

**SECTION 3.01.**    Organization; Authority; Execution and Delivery; Enforceability Each Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction of formation.

(b)    The Sellers have full power and authority to execute and deliver (or cause to execute and deliver) this Agreement and each other document, instrument and certificate contemplated by this Agreement (the "Seller Documents") and, subject to the entry of the Sale Order, to consummate (or cause to consummate) the Transactions and transactions contemplated by the Seller Documents.  The execution and delivery by the Sellers of this Agreement and Seller Documents and the consummation by the Sellers of the Transactions and transactions contemplated by the Seller Documents have been duly authorized by all necessary corporate action.  The Sellers have duly executed and delivered this Agreement and, assuming this Agreement constitutes a valid and binding obligation of the other parties hereto, this Agreement and the Seller Documents will, subject to the entry of the Sale Order, constitute a valid and binding obligation of each of the Sellers enforceable against it in accordance with its terms.

(c)    Any consent, authorization or approval required for the commencement of the Cases, the execution and delivery of this Agreement and the Seller Documents and the consummation of the Transactions and the transactions contemplated by the Seller Documents has been obtained.

**SECTION 3.02.**    No Conflicts; Consents.  Subject to obtaining Bankruptcy Court approval pursuant to the Sale Order, and assuming that Buyer acquires the Acquired Assets upon the consummation of the Transactions, the execution and delivery by the Sellers of this Agreement does not, and the consummation of the Transactions and compliance by the Sellers with the terms hereof will not, conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a benefit under, or to increased, additional, accelerated or guaranteed rights or entitlements of any Person under, or result in the creation of any Lien upon any of the properties or assets of the Sellers or any of their Affiliates under, any provision of (i) the certificate of incorporation or by-laws of the Company or the comparable governing instruments of any of the Sellers, (ii) subject to obtaining the third party consents set forth on Section 3.02 of the Seller Disclosure Schedules to the extent required, any Contract to which the Company or any of the Sellers is a party or by which any of their respective properties or assets is bound or (iii) any judgment, order or decree ("Judgment") or statute, law, ordinance, rule or regulation ("Applicable Law") applicable to the Sellers or their respective properties or assets, other than, in the case of clause (iii) above, any such items that, individually or in the aggregate, would not reasonably be expected to have a Seller Material Adverse Effect.  No consent of, or registration, declaration or filing with, any Federal, state, local or foreign government or any court of competent jurisdiction, administrative agency or commission or other governmental authority or instrumentality, domestic or foreign (a "Governmental Entity") is required to be obtained or made by or with respect to Sellers or any of their Affiliates in connection with the execution, delivery and performance of this Agreement or the consummation

4

of the Transactions, other than (i) the Sale Order, (ii) such filings as may be required by the Bankruptcy Court in connection with the Cases, and (iii) such other items as are required solely by reason of the participation of Buyer (as opposed to any third party) in the Transactions.

SECTION 3.03.    Title to Assets.  The Company or one of the Sellers has good and valid title to or leasehold interest in the Acquired Assets in each case free and clear of Liens, except Liens listed in Section 3.03 of the Seller Disclosure Schedules ("Assumed Liens"). Assuming receipt of the Sale Order and obtaining the consents listed in Section 3.02 of the Seller Disclosure Schedules, upon Closing, Buyer will be vested with good and valid title to or leasehold interest in the Acquired Assets free and clear of all Liens, to the fullest extent permissible under Sections 363 and 365 of the Bankruptcy Code.

SECTION 3.04.    Financial Advisors.  Except as set forth on in Section 3.04 of the Seller Disclosure Schedules, no Person has acted, directly or indirectly, as a broker, finder or financial advisor for Sellers in connection with the Transactions and no Person is entitled to any fee or commission or like payment in respect thereof.

SECTION 3.05.    AS  IS.    EXCEPT  AS  OTHERWISE  SPECIFICALLY PROVIDED HEREIN, ALL OF THE ACQUIRED ASSETS ARE BEING SOLD AND TRANSFERRED TO BUYER ON AN "AS IS" AND "WHERE IS" BASIS AND ALL WARRANTIES,  EXPRESS  OR  IMPLIED,  INCLUDING  WARRANTIES  OF MERCHANTABILITY AND FITNESS FOR USE, ARE EXCLUDED FROM THE SALE AND  TRANSFER  OF  THE  ACQUIRED  ASSETS.    SELLERS  MAKE  NO REPRESENTATIONS OR WARRANTIES OF ANY NATURE WITH RESPECT TO THE ACQUIRED ASSETS OTHER THAN AS EXPRESSLY PROVIDED FOR HEREIN.

SECTION 3.06.    The Mark.  Except as set forth on Section 3.06 of the Seller Disclosure Schedules:

(a)    To the Sellers' knowledge, as of December 31, 2008 no third party was infringing upon, misappropriating, or otherwise violating the Mark.

(b)    To the Seller's knowledge, as of December 31, 2008 Seller's use of the Mark did not conflict with, infringe upon or violate any trademark or service mark right of any Person.

(c)    The execution, delivery and performance of this Agreement and the Seller Documents, and the consummation of the transaction contemplated hereby and thereby, will not, to the Sellers' knowledge, constitute a material breach of any Contract involving any Acquired Assets, nor cause the forfeiture or termination of any Acquired Assets, except as would not reasonably be expected to result in a Seller Material Adverse Effect.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to the Sellers that, except as set forth in the Buyer Disclosure Schedules, as of the date of this Agreement and as of the Closing Date as follows:

**SECTION 4.01.**    Authority; Execution and Delivery; EnforceabilityBuyer has full power and authority to execute this Agreement and, subject to the entry of the Sale Order, to consummate the Transactions.  Buyer has duly executed and delivered this Agreement, and assuming this Agreement constitutes valid and binding obligations of the other parties hereto this Agreement will, subject to the entry of the Sale Order, constitute a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms, except as limited by (i) applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally and (ii) general equitable principles.

(b)    To Buyer's knowledge, no state takeover statute or similar statute or regulation applies or purports to apply to Buyer with respect to this Agreement or any the Transactions.

**SECTION 4.02.**    No Conflicts; ConsentsThe execution and delivery by Buyer of this Agreement do not, and the consummation of the Transactions and compliance by Buyer with the terms hereof will not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a material benefit under, or to increased, additional, accelerated or guaranteed rights or entitlements of any Person under, or result in the creation of any Lien upon any of the properties or assets of Buyer or any of its Affiliates under, any provision of (i) any Contract to which Buyer or any of its Affiliates is a party or by which any of their respective properties or assets is bound or (ii) subject to the filings and other matters referred to in Section 4.03(b), any Judgment or Applicable Law applicable to Buyer or any of its Affiliates or their respective properties or assets, other than, in the case of clauses (i) and (ii) above, any such items that, individually or in the aggregate, have not had and would not reasonably be expected to have a Buyer Material Adverse Effect.

(b)    No consent of, or registration, declaration or filing with any Governmental Entity is required to be obtained or made by or with respect to Buyer or any of its Affiliates in connection with the execution, delivery and performance of this Agreement or the consummation of the Transactions, other than (i) such filings as may be required by the Bankruptcy Court in connection with the Cases, and (ii) such other items those that may be required solely by reason of the participation of the Company (as opposed to any other third party) in the Transactions.

**SECTION 4.03.**    Financing.  Buyer will have funds on hand as of the Closing Date which will be sufficient to pay the Purchase Price.

**SECTION 4.04.**    No Brokers.   No broker, investment banker or other Person is entitled to any broker's, finder's or other similar fee or commission in connection with the Transactions based upon arrangements made by or on behalf of Buyer.

**SECTION 4.05.**    Litigation.   There are not any (a) outstanding Judgments against or affecting Buyer, (b) Proceedings pending or threatened against or affecting Buyer, or (c) investigations by any Governmental Entity that are pending or threatened against or affecting Buyer that, in each case, individually or in the aggregate, would reasonably be expected to have a Buyer Material Adverse Effect.

## ARTICLE V

## COVENANTS

**SECTION 5.01.**    Covenants Relating to Acquired Assets Except for matters set forth in Section 5.01 of the Seller Disclosure Schedules or otherwise expressly permitted by the terms of this Agreement, from the date of this Agreement to the Closing, taking into account that the Sellers are involved in a bankruptcy proceeding, the Sellers shall not, and shall cause their Affiliates not to, without the prior written consent of Buyer, which consent shall not be unreasonably withheld, delayed or conditioned:

(i)    directly or indirectly (through any merger, consolidation, reorganization, issuance of securities or rights, license, lease, encumbrance or otherwise), sell, assign, convey, transfer, license, lease or otherwise dispose of any Acquired Assets; or

(ii)    authorize any of, or commit or agree to take, whether in writing or otherwise, to do any of, the foregoing actions, or request the Bankruptcy Court to approve or authorize the Sellers to take or omit to take any action which would breach the Sellers' covenants under or any other provisions of this Agreement, or consent to any such approval or authorization.

(b)    Advise of Changes.   The Sellers shall use all reasonable efforts to promptly advise the Buyer orally (to be followed promptly by written confirmation) of the occurrence of any matter or event that is material to the Acquired Assets.

**SECTION 5.02.**    Reasonable Best Efforts.   Upon the terms and subject to the conditions herein provided, Buyer, on the one hand, and each of the Sellers, on the other hand, shall (and each Seller shall cause its Affiliates to) use its respective reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other parties hereto in doing, all things necessary, proper or advisable under Applicable Laws and regulations to ensure that the conditions set forth in this Agreement are satisfied and to consummate and make effective, in the most expeditious manner practicable, the Transactions, including, without limitation, the following:

(a)    Buyer, on the one hand, and each of the Sellers, on the other hand, shall (and each Seller shall cause its Affiliates to) use its reasonable best efforts (including, in the case of the Sellers, moving the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code) to

7

obtain, at its own expense, any and all approvals, authorizations, consents and other actions by Governmental Entities, administrative agencies, courts and other Persons necessary or appropriate (above and beyond the entry of the Sale Order) for such party to consummate the Transactions.  Without limiting the generality of the foregoing, each Seller shall (and shall cause its Affiliates to) use its reasonable best efforts, considering the operation, force and effect of the Sale Order in authorizing such transfers, to obtain, at its own expense, any approvals, authorizations, consents and other actions by all parties necessary for the Sellers to transfer to Buyer, as applicable, and Buyer to receive, all assets which are Acquired Assets.

(b)    Each of the Sellers shall take all actions, including appropriate service and notice of pleadings, in form and substance reasonably satisfactory to Buyer, needed to obtain a Sale Order that authorizes, orders and effects a sale of all of the Acquired Assets free and clear of all Excluded Liabilities and Liens other than Assumed Liens and the other orders contemplated herein.

(c)    Each Seller shall cooperate fully, following entry of the Sale Order approving the sale of the Acquired Assets to Buyer or its designee, in the arrangements for the transfer of the Acquired Assets from the Sellers to Buyer in an orderly fashion, free and clear of and from any and all Excluded Liabilities and Liens other than Assumed Liens and otherwise in accordance with the terms, provisions and conditions of this Agreement and all other agreements, documents and instruments executed and/or delivered in connection herewith, including to the extent reasonably practical, entering into any ancillary insolvency, restructuring or similar proceedings in any relevant non-U.S. jurisdiction.

(d)    Without limiting the generality of the foregoing, the parties hereto shall furnish to each other such necessary information and reasonable assistance, as each may request in connection with each Seller's preparation and filing of applications, motion papers and filings needed to obtain Bankruptcy Court approval of the Transactions, and shall execute any additional instruments necessary to consummate the Transactions, whether before or after the Closing.

(e)    Subject to Applicable Law and the instructions of any Governmental Entity, the Sellers and Buyer each shall keep the other apprised of the status of matters relating to completion of the Transactions, including promptly furnishing the other with copies of notices or other communications received by Buyer or the Sellers, from any third party and/or any Governmental Entity with respect to such Transactions.

(f)    Not fewer than five (5) days prior to Closing or such earlier date as prescribed by Applicable Law, Sellers shall obtain all approvals and certificates (including tax clearance certificates and all applicable bulk sale filings) required by any Governmental Entity and shall deliver all notices required by any Governmental Entity in connection with the sale of the Acquired Assets except to the extent that any such approval certificate is not required by entry of the Sale Order.

SECTION 5.03.    <u>Supplemental Disclosure</u>.  Each party shall promptly notify the other parties of, and furnish such other parties with any information such other parties may reasonably request with respect to, the occurrence to such party's actual knowledge of any event

or condition or the existence to such party's actual knowledge of any fact that would reasonably be expected to cause any of the conditions set forth in Article VI to not be satisfied.

**SECTION 5.04.**      Further Assurances.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transactions, including, without limitation, providing the assistance necessary or desirable to transfer the domain names conveyed to Buyer pursuant to this Agreement.

**SECTION 5.05.**      Sale Order and Sale Hearing The Sellers shall use their reasonable best efforts to schedule a hearing to consider the Sale Order (the "Sale Hearing") as soon as possible so as to obtain the entry by the Bankruptcy Court of the Sale Order no later than August 31, 2009.

(b)      Buyer and the Sellers shall cooperate with obtaining entry of an order, in the form attached hereto as Exhibit B authorizing and approving the Agreement and the sale of the Acquired Assets (the "Sale Order"), and the Sellers shall deliver to Buyer prior to filing, and as early in advance as is practicable to permit adequate and reasonable time for Buyer and its counsel to review and comment, copies of all proposed pleadings, motions, notices, statements schedules, applications, reports and other papers to be filed by the Sellers in connection with such motions and relief requested therein.

**SECTION 5.06.**      Access to Information.  From the date hereof until the Closing Date, Sellers shall afford to Buyer and its authorized personnel and representatives reasonable access during normal business hours to make such reasonable examination of Sellers' books and records to the extent they relate to the Acquired Assets.   Any such examination shall be conducted at times reasonably acceptable to Sellers and upon reasonable prior notice to Sellers. Notwithstanding anything herein to the contrary, no examination shall be permitted to the extent that it would require Sellers or any Affiliate to disclose information subject to attorney-client privilege or conflict with any confidentiality obligations to which Sellers or any Affiliates are bound, from which Sellers will use commercially reasonable efforts to be released.

## ARTICLE VI

## CONDITIONS PRECEDENT

**SECTION 6.01.**      Conditions to Each Party's Obligation.  The respective obligations of each party to effect the Transactions is subject to the satisfaction or waiver on or prior to the Closing of the following conditions:

(a)      Governmental Approvals.    All authorizations, consents, orders or approvals of, or declarations or filings with, or expirations of waiting periods imposed by, any Governmental Entity necessary for the consummation of the Transactions shall have been obtained or filed or shall have occurred, as applicable.

9

(b)    <u>No Injunctions or Restraints</u>.  No Applicable Law or injunction enacted, entered, promulgated, enforced or issued by any Governmental Entity or other legal restraint or prohibition preventing the consummation of the Transactions shall be in effect.

(c)    <u>Bankruptcy Court Orders</u>.  The Bankruptcy Court shall have entered the Sale Order and any other orders necessary to permit and consummate the Transactions, each such other order to be in form and substance reasonably satisfactory to Buyer and all such orders shall be Final Orders; provided, that it shall be a condition only to the obligations of Buyer, and shall not be a condition to the obligations of Sellers, that any order, including the Sale Order, be a Final Order.

**SECTION 6.02.**    <u>Conditions to Obligations of Buyer</u>.  The obligation of Buyer to effect the Transactions is further subject to the satisfaction (or waiver by Buyer) on or prior to the Closing Date of the following conditions:

(a)    <u>Representations and Warranties of the Sellers</u>.  The representations and warranties of the Sellers in this Agreement shall be true and correct as of the date hereof and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct on and as of such earlier date), without regard to any materiality or "Seller Material Adverse Effect" qualifiers contained in such representations and warranties, in each case except for failures of such representations and warranties to be true and correct that, (i) individually or in the aggregate, have not had and would not reasonably be expected to have a Seller Material Adverse Effect; or (ii) relate solely to liabilities which are Excluded Liabilities or assets which are Excluded Assets.

(b)    <u>Performance of Obligations</u>.  The Sellers shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Sellers at or prior to the Closing.

(c)    <u>Officer's Certificate</u>.  Buyer shall have received a certificate, dated the Closing Date, of an officer of the Company to the effect that the conditions specified in Section 6.02(a) and (b) above have been fulfilled.

(d)    <u>Consents</u>.  All consents listed in Section 3.02 of the Seller Disclosure Schedules shall have been obtained and in full force and effect as of the Closing and without imposing any obligations, financial or otherwise, on Buyer.

(e)    <u>No Seller Material Adverse Effect</u>.  Between the date hereof and the Closing Date, there shall not have been a Seller Material Adverse Effect.

(f)    <u>Documents; Actions</u>.  At the Closing, and contemporaneously with all other actions provided for herein, the appropriate Sellers shall have executed and delivered the documents referenced in Section 2.02.

(g)    <u>Sale Order</u>.  The Sale Order shall be a Final Order or Final Orders entered by the Bankruptcy Court in form attached hereto.

**SECTION 6.03.**     <u>Conditions to Obligation of the Sellers</u>.  The obligations of the Company and the Sellers to effect the Transactions are subject to the satisfaction (or waiver by the Company) on or prior to the Closing Date of the following conditions:

(a)     <u>Representations and Warranties</u>.  The representations and warranties of Buyer in this Agreement shall be true and correct as of the date hereof and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct on and as of such earlier date), without regard to any materiality or "Buyer Material Adverse Effect" qualifiers contained in such representations and warranties, in each case except for failures of such representations and warranties to be true and correct that, individually or in the aggregate, have not had and would not reasonably be expected to have a Buyer Material Adverse Effect.

(b)     <u>Performance of Obligations of Buyer</u>.  Buyer shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by Buyer by the time of the Closing.

(c)     <u>Documents; Actions</u>.  At the Closing, and contemporaneously with all other actions provided for herein, the Buyer shall have executed, or caused to have been executed, and delivered the documents referenced in Section 2.02.

## ARTICLE VII

## TERMINATION, AMENDMENT AND WAIVER

**SECTION 7.01.**     <u>Termination</u>Notwithstanding anything to the contrary in this Agreement, this Agreement may be terminated and the Transactions abandoned at any time prior to the Closing:

(i)     by mutual written consent of the Sellers and Buyer;

(ii)     upon written notice, by either Buyer or the Sellers, if the Closing shall not have occurred on or before the earlier of (i) consummation of an alternate transaction or (ii) thirty (30) days after the Sale Hearing (the "<u>Drop Dead Date</u>"); <u>provided</u>, <u>however</u>, that, if the Closing shall not have occurred on or before the Drop Dead Date due to a material breach of this Agreement by Buyer or the Sellers, the breaching party may not terminate this Agreement pursuant to this Section 7.01(a);

(iii)     by Sellers, if any condition to the obligations of Seller set forth in <u>Section 6.01</u> or <u>6.03</u> shall have become incapable of fulfillment other than as a result of a breach by Sellers of any covenant or agreement contained in this Agreement, and such condition is not waived by Sellers in writing;

(iv)     by Buyer, if any of the conditions to the obligations of Buyer set forth in <u>Section 6.01</u> or <u>6.02</u> shall have become incapable of fulfillment other than as a result of a breach of any representation, warranty, covenant or agreement contained in this Agreement by Buyer, and such condition is not waived by Buyer in writing;

11

(v)      by the Sellers, if Buyer shall have breached or failed to perform in any material respect any of its respective representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform (i) would give rise to the failure of a condition set forth in <u>Section 6.01</u> or <u>6.03</u>, as applicable, and (ii) cannot be or has not been cured prior to the date that is five (5) days from the date that Buyer is notified by the Company of such breach or failure to perform; <u>provided</u>, <u>however</u>, that the Sellers shall not have a right to terminate this Agreement under this Section 7.01(a)(v) if any Seller is then in material breach of this Agreement;

(vi)      by Buyer, if the Sellers shall have breached or failed to perform in any material respect any of its respective representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform (i) would give rise to the failure of a condition set forth in <u>Section 6.01</u> or <u>6.02</u>, as applicable, and (ii) cannot be or has not been cured prior to the date that is five (5) days from the date that the Seller is notified by Buyer of such breach or failure to perform; <u>provided</u>, <u>however</u>, that Buyer shall not have a right to terminate this Agreement under this Section 7.01(a)(vi) if Buyer is then in material breach of this Agreement;

(vii)      by Buyer, upon written notice to the Sellers, if the Sale Order has not been entered within sixty (60) days after the date of this Agreement, or if after such entry, such Sale Order has not, within eleven (11) days after its entry, become final, non appealable and no longer subject to appeal, reconsideration or stay; <u>provided</u>, <u>however</u>, that Buyer shall not have a right to terminate this Agreement under this Section 7.01(a)(vii) if Buyer is then in material breach of this Agreement; and

(ii)      by either the Sellers or Buyer, if an Applicable Law or injunction which shall have become final and nonappealable is in effect preventing the consummation of the Transactions.

(b)      In the event of termination by the Company or Buyer pursuant to this Section 7.01, written notice thereof shall forthwith be given to the other parties and the Transactions shall be terminated, without further action by any party.  If the Transactions are terminated as provided herein:

(i)      Buyer shall, upon request, return to the Company or destroy all documents and other material received from the Sellers relating to the Transactions, whether so obtained before or after the date hereof; and

(ii)      all confidential information received by Buyer with respect to the Acquired Assets shall be treated in accordance with the Non-Disclosure Agreement, which shall remain in full force and effect notwithstanding the termination of this Agreement.

**SECTION 7.02.**      <u>Effect of Termination</u>.  If this Agreement is terminated and the Transactions are abandoned as described in Section 7.01(a), (a) this Agreement shall become null and void and of no further force and effect, except for the provisions of this Article VII; and (b) except as set forth in clause (a) of this Section 7.02, there shall be no liability hereunder on

12

the part of Buyer, the Sellers, or their respective officers, directors, shareholders, managers, members or partners, provided that no termination shall relieve any party of liability for any material breach of any provision of this Agreement occurring prior to such termination.

SECTION 7.03.    Amendments and Waivers.  This Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.  By an instrument in writing, Buyer may waive compliance by the Sellers with any term or provision of this Agreement that the Sellers were or are obligated to comply with or perform.  By an instrument in writing, the Sellers may waive compliance by Buyer with any term or provision of this Agreement that Buyer was or is required to comply with or perform.

**ARTICLE VIII**

**GENERAL PROVISIONS**

SECTION 8.01.    Expenses.  Except as set forth in this Agreement and whether or not the Transactions are consummated, each party shall bear all costs and expenses incurred or to be incurred by such party in connection with this Agreement and the consummation of the Transactions.

SECTION 8.02.    No Survival of Representations and Warranties.  The parties agree that the representations and warranties contained in this Agreement shall not survive the Closing hereunder, and none of the parties shall have any liability to each other after the Closing for any breach thereof.

SECTION 8.03.    Assignment.    This Agreement and the rights and obligations hereunder shall not be assignable or transferable by any party without the prior written consent of the other parties hereto; provided, however, that, Buyer may assign its rights and obligations hereunder, in whole or in part, to one or more designees of Buyer, provided that no such assignment shall relieve Buyer of its liabilities and obligations hereunder if such assignee does not perform such obligations and, provided, further, that this Agreement may be assigned to one or more trustees appointed by the Bankruptcy Court to succeed to the rights of the Sellers; provided, however, that any such assignment shall not affect Buyer's rights hereunder.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and except as otherwise expressly provided herein, no other Person shall have any right, benefit or obligation hereunder.

SECTION 8.04.    No Third Party Beneficiaries.    This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any Person, other than the parties hereto and such assigns, any legal or equitable rights hereunder.

SECTION 8.05.    Remedies.    Except as otherwise expressly provided in this Agreement, any and all remedies expressly conferred upon a party to this Agreement shall be cumulative with, and not exclusive of, any other remedy contained in this Agreement, at law or in equity and the exercise by a party to this Agreement of any one remedy shall not preclude the exercise by it of any other remedy.  In addition, the parties agree that irreparable damage would

13

occur in the event that the parties fail to perform their obligations in accordance with the terms of this Agreement and each party shall be entitled to specific performance in such event, in addition to any other remedy at law or in equity.

SECTION 8.06. Notices. All notices or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by hand or sent by facsimile or sent by overnight courier service and shall be deemed given when so delivered by hand, or after one Business Day in the case of overnight courier service or, if faxed, on the day confirmation of successful facsimile transmission is obtained by the sender thereof, as follows:

(a)    if to Buyer,

Steven Ivester
1058 Waterside Circlwe
Weston, FL 33327
Attn: Steven Ivester
Tel: (954) 465-1658
Fax: (954) 206-5414

with a copy to:

Andrews Kurth  LLP
450 Lexington Avenue - 15th Floor
New York, NY 10017
Attn:  Jonathan I. Levine
Tel:  (212) 850-2816
Fax:  (212) 850-2929


(b)    if to the Sellers,

Circuit City Stores, Inc.
9950 Maryland Avenue
Richmond, VA  23233
Attn:  Danny W. Ramsey, Esq.
Tel:  (804) 486-2937
Fax:  (804) 486-8248

with a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square P.O. Box 636
Wilmington DE 19801
Attn:  Gregg M. Galardi, Esq. and Ian S. Fredericks
Tel:  (302) 651-3000
Fax:  (302) 651-3001

14

**SECTION 8.07.**      Interpretation; Exhibits and Schedules; Certain Definitions  The headings contained in this Agreement, in any Exhibit or Schedule hereto and in the table of contents to this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein, shall have the meaning as defined in this Agreement.  When a reference is made in this Agreement to a Section, Exhibit or Schedule, such reference shall be to a Section of, or an Exhibit or Schedule to, this Agreement unless otherwise indicated.

(b)      For all purposes hereof:

"Affiliate" of any Person means another Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person.

"Bankruptcy Code" means title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Virginia.

"Business Day" shall mean any day other than a Saturday, Sunday or any other day on which banks in New York, NY are authorized or required by law or executive order to remain closed.

"Buyer Material Adverse Effect" means the occurrence of a material adverse effect on the ability of Buyer to perform its obligations under this Agreement.

"Contract" means all contracts, agreements, leases, licenses, indentures, notes, bonds, mortgages, deeds of trust, loan agreements, credit agreements, pledges, encumbrances, guarantees, reciprocal easement agreements, financing agreements, commitments, conditional sales contracts, collective bargaining agreements, permits, instruments, bids, orders, proposals and other legally binding arrangements, whether written or oral.

"Consumer Privacy Ombudsman" means a "consumer privacy ombudsman" as defined in the Bankruptcy Code.

"Excluded Liabilities" means Liabilities of the Sellers or any of their Affiliates.

"Final Order" means an order of the Bankruptcy Court or other court of competent jurisdiction: (a) as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion or alter or amend judgment, motion for rehearing or motion for new trial has been timely filed or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject order in all material respects without the possibility for further appeal or rehearing thereon; (b) as to which the time for instituting or filing an appeal, motion for rehearing or motion for new trial shall have expired; and (c) as to which no stay is in effect; provided, however, that the filing or pendency of a motion under Federal Rule of

15

Bankruptcy Procedure 9024 shall not cause an order not to be deemed a "Final Order" unless such motion shall be filed within ten (10) days of the entry of the order at issue.

"including" means including, without limiting the generality of the foregoing.

"Liabilities" means, as to any Person, all debts, adverse claims, liabilities, commitments, responsibilities and obligations of any kind or nature whatsoever, direct, indirect, absolute or contingent, matured or unmatured of such Person, whether accrued, vested or otherwise, whether known or unknown, foreseen or unforeseen, and whether or not actually reflected, or required to be reflected, in such Person's balance sheets or other books and records.

"Liens" means mortgages, liens, security interests, charges, easements, leases, subleases, covenants, rights of way, options, claims, restrictions or encumbrances of any kind.

"Person" means any individual, firm, corporation, partnership, limited liability company, trust, joint venture, Governmental Entity or other entity.

"Proceeding" means any claim, action, suit, proceeding or investigation in or before any Governmental Entity, whether brought, initiated, asserted or maintained by a Governmental Entity or any other Person or entity.

"Sale Notice" means the notice given pursuant to the Bid Procedures Order.

"Seller Material Adverse Effect" means the occurrence of a material adverse effect on the ability of any Seller to perform its obligations under this Agreement.

"Transactions" means the transactions contemplated by this Agreement.

"Transfer Taxes" means any transfer, documentary, sales, use, stamp, privilege, registration and other such taxes, any conveyance fees, any recording charges and any other similar fees and charges (including penalties, interest and additions in respect thereof).

**SECTION 8.08.**     Counterparts.  This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

**SECTION 8.09.**     Entire Agreement.   This Agreement and the Non-Disclosure Agreement, along with the Schedules and Exhibits thereto, contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter.  None of the parties shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein or in the Non-Disclosure Agreement.  In the event of a conflict between the terms of this Agreement and the Sale Order, the terms of the Sale Order shall prevail.

**SECTION 8.10.**     Severability.  If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any Person or

circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining portion thereof) or the application of such provision to any other Persons or circumstances.

**SECTION 8.11.**    <u>Exclusive Jurisdiction</u>.    The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions.    Any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.06 hereof.

**SECTION 8.12.**    <u>Governing Law</u>.    This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and the internal laws of the Commonwealth of Virginia applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

**SECTION 8.13.**    <u>Waiver of Jury Trial</u>.    Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or the Transactions.    Each party (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section 8.13.

**SECTION 8.14.**    <u>Bankruptcy Court Approval</u>.  This Agreement shall not be binding on the Sellers until the Sale Order is entered, other than Article V (other than covenants to be performed after the Closing).

[SIGNATURE PAGE FOLLOWS]

18

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**STEVEN IVESTER, an individual**

By: _____

**CIRCUIT CITY STORES, INC.**

By: _____
    Name:
    Title:

**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____
    Name:
    Title:

**COURCHEVEL, LLC**

By: _____
    Name:
    Title:]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**STEVEN IVESTER, an individual**

By: _____

**CIRCUIT CITY STORES, INC.**

By: _____
Name: Michelle Mosier
Title: VP & Controller

**CIRCUIT CITY STORES WEST COAST, INC.**

By: _____
Name: Michelle Mosier
Title: Authorized Signer

**COURCHEVEL, LLC**

By: _____
Name: Michelle Mosier
Title: Authorized Signer

## EXHIBIT A

**BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT**

This BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of August __, 2009 (this "Agreement"), is by and among Steven Ivester, an individual ("Buyer"), Circuit City Stores West Coast, Inc. ("CCWC"), Circuit City Stores, Inc. (the "Company"), [and Courchevel, LLC ("Courchevel")], and together with CCWC, the "Sellers"). Except as expressly defined herein, capitalized terms used in this Agreement shall have the meaning ascribed to them in the Asset Purchase Agreement, dated as of August __, 2009 (the "Purchase Agreement"), by and between Buyer and the Sellers.

WHEREAS, Buyer and the Sellers entered into the Purchase Agreement providing for the sale of the Acquired Assets (as defined in the Purchase Agreement) from the Sellers to Buyer;

WHEREAS, the Sellers desire to assign to Buyer, and Buyer desires to obtain and assume from the Sellers, the Acquired Assets; and

WHEREAS, the sale of the Acquired Assets has been approved by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants contained herein and in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1.    Transfer of Assets and Assumption of Liabilities.

(a)    Subject to Section 1(c) below, the Sellers hereby assign, transfer, convey and deliver to Buyer, its successors and assigns, all of the Sellers' respective right, title and interest, as the same exists on the date hereof, in and to the assets set forth below:

(i)    The domain name set forth on Schedule A and all goodwill associated with such domain names.

(b)    Buyer hereby accepts the foregoing assignment, transfer, conveyance and delivery.

(c)    Notwithstanding anything to the contrary in this Agreement and for the avoidance of doubt, the Sellers are not selling, conveying, assigning, transferring or delivering to Buyer any assets or rights other than those specifically identified in Section 1(a).

2.      Miscellaneous.

(a)      Counterparts.  This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

(b)      Entire Agreement.  This Agreement, along with the Schedules and Exhibits thereto, contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter.  None of the parties shall be liable or bound to any other party in any manner by any representations, warranties or covenants relating to such subject matter except as specifically set forth herein.

(c)      Severability.  If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining portion thereof) or the application of such provision to any other persons or circumstances.

(d)      Exclusive Jurisdiction.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder.  Any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.06 of the Purchase Agreement.

(e)      Governing Law.  This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and the internal laws of the Commonwealth of Virginia applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

(f)      Waiver of Jury Trial.  Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement.  Each party (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section 2(f).

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**STEVEN IVESTER, an individual**


By: _____


**CIRCUIT CITY STORES, INC.**


By: _____
   Name:
   Title:


**CIRCUIT CITY STORES WEST COAST, INC.**


By: _____
   Name:
   Title:


**COURCHEVEL, LLC**


By: _____
   Name:
   Title:

## **EXHIBIT B**

**[SALE ORDER]**

<u>Schedule 1.02(a)(i)</u>

<u>Domain Name</u> - 800.com