Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            - and –

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
                            :
In re:                      :    Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :    Case No. 08-35653 (KRH)
et al.,                     :
                            :
           Debtors.         :    Jointly Administered
- - - - - - - - - - - - - - x

**ORDER APPROVING DEBTORS' MOTION, PURSUANT TO BANKRUPTCY
CODE SECTIONS 105 AND 365 AND BANKRUPTCY RULE 9019, FOR
ORDER APPROVING STIPULATIONS BY AND AMONG THE DEBTORS
AND (I) FEDERAL WARRANTY SERVICE CORPORATION AND CERTAIN
AFFILIATES; (II) GENERAL ELECTRIC COMPANY; AND
(III) SERVICE PLAN, INC., AND CERTAIN AFFILIATES**

Upon the motion (the "Motion")[1], pursuant to

Bankruptcy Code sections 105 and 365 and Bankruptcy Rule

---

[1]    Each capitalized term not otherwise defined herein shall have the
meaning ascribed to it in the Motion.

9019, for entry of an order an order approving

Stipulations by and among the Debtors and (I) Assurant,

(II) GE, and (III) SPI; and the Court having reviewed

the Motion; and after due deliberation thereon; and good

and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.   The Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334;

B.   This is a core proceeding pursuant to 28

U.S.C. § 157(b)(2) and venue in this district is proper

under 28 U.S.C. §§ 1408 and 1409;

C.   Proper and adequate notice the Motion has

been given under the circumstances, and no other or

further notice is necessary;

F.   Resolution of the disputes between and

among the Debtors and SPI on the terms set forth in the

Stipulation attached hereto as Exhibit A (the "SPI

Stipulation") is (i) fair and reasonable and (ii) a

reasonable exercise of the Debtors' sound business

judgment and (iii) is in the best interests of the

Parties and all parties in interest;

F.   Resolution of the disputes between and

among the Debtors and Assurant on the terms set forth in

the Stipulation attached hereto as Exhibit B (the

"Assurant Stipulation") is (i) fair and reasonable and
(ii) a reasonable exercise of the Debtors' sound business
judgment and (iii) is in the best interests of the
Parties and all parties in interest;

G.   Resolution of the disputes between and
among the Debtors and GE on the terms set forth in the
Stipulation attached hereto as <u>Exhibit C</u> (the "GE
Stipulation") is (i) fair and reasonable and (ii) a
reasonable exercise of the Debtors' sound business
judgment and (iii) is in the best interests of the
Parties and all parties in interest;

H.   The Debtors have articulated sound
business justifications for assumption of the Brown Goods
Program Agreement and rejection of the the Brown Goods
Services Agreement, PC Program Agreement and GE Letter
Agreement; and it is therefore

**ORDERED, ADJUDGED, AND DECREED that:**

1.   The Motion is GRANTED.

2.   Pursuant to Bankruptcy Code sections 105
and Bankruptcy Rule 9019, the SPI Stipulation is
APPROVED in all respects.

3.    Pursuant to Bankruptcy Code sections 105 and Bankruptcy Rule 9019, the Assurant Stipulation is APPROVED in all respects.

4.    Pursuant to Bankruptcy Code sections 105 and Bankruptcy Rule 9019, the GE Stipulation is APPROVED in all respects.

5.    Pursuant to Bankruptcy Code section 365, assumption of the Brown Goods Program Agreement according to the terms of the Assurant Stipulation is hereby approved.

6.    Pursuant to Bankruptcy Code section 365, rejection of the Brown Goods Services Agreement, PC Program Agreement and GE Letter Agreement

7.    The Debtors may take such actions and execute any documents necessary or appropriate to consummate the Stipulations and the transactions contemplated thereby.

8.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4

9.    The requirement under Local Rule 9013-1(G) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Virginia to file a memorandum of law in connection with the Motion is hereby waived.

10.   This Court retains jurisdiction to hear

and determine all matters arising from or related to the

Stipulation and this Order.

Dated:  Richmond, Virginia
        September _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

     - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

     - and -

/s/ Douglas M. Foley____
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors
and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Douglas M. Foley___
Douglas M. Foley

**<u>EXHIBIT A</u>**

**(SPI Stipulation)**

**EXECUTION VERSION**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "*Settlement Agreement*") is made this 25ᵗʰ day of August, 2009 by and among, on the one hand, Circuit City Stores, Inc. ("*Circuit City*") and its affiliated debtors and debtors-in-possession (collectively with Circuit City, the "*Debtors*") and all their Affiliates, and, on the other hand, ServicePlan, Inc. and all of its Affiliates, including but not limited to Virginia Surety Company, Inc., National Product Care Company, Service Saver, Incorporated, ServicePlan of Florida, Inc. and TWG Innovative Solutions, Inc.  (collectively, "*SPI*").  The Debtors and SPI collectively are referred to as the "Parties," and individually may be referred to as a "Party."

## RECITALS

**WHEREAS**, Circuit City and SPI are parties to that certain Agreement Regarding Repair Service Agreements dated as of December 1, 1992, including all exhibits thereunder, each as amended, supplemented or modified from time to time in writing by the Parties (collectively, the "*Repair Service Agreement*").

**WHEREAS**, Circuit City and SPI are parties to that certain Authorized Repair Center Agreement dated as of December 1, 1992, including all exhibits thereunder, each as amended, supplemented or modified from time to time in writing by the Parties (collectively, the "*Repair Center Agreement*").

**WHEREAS**, Circuit City and SPI are parties to that certain Contingent Commission Agreement dated as of December 1, 1992, including all exhibits thereunder, each as amended, supplemented or modified from time to time in writing by the Parties (collectively, the "*Contingent Commission Agreement*" and, collectively with the Repair Service Agreement and the Repair Center Agreement, the "*Agreements*").

**WHEREAS**, on November 10, 2008 (the "*Petition Date*"), the Debtors commenced bankruptcy cases (collectively, the "*Chapter 11 Cases*") under Chapter 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "*Bankruptcy Code*"), in the United States Bankruptcy Court for the Eastern District of Virginia (the "*Bankruptcy Court*") (Jointly Administered as Case No. 08-35653).

**WHEREAS**, Debtors have asserted certain claims against SPI arising from the Agreements and otherwise (the "*Debtors' Claims*").

**WHEREAS**, SPI has disputed the Debtors' Claims and raised various defenses, claims, offsets and reductions thereto (the "*SPI Claims*").

**WHEREAS**, the Parties hereto desire to enter into this Settlement Agreement to, among other things, provide for the final resolution of any and all disputes, claims and issues arising from or in any way relating to the Agreements or the Chapter 11 Cases (including, without limitation, the SPI Claims and the Debtors' Claims), subject to the terms and conditions set forth in this Settlement Agreement.

**WHEREAS**, the Parties hereby acknowledge and agree that the intent and purpose of this Settlement Agreement is to resolve and settle all outstanding issues existing now or in the future among the Parties and that each transaction contemplated by this Settlement Agreement is integral to this Settlement Agreement.

**NOW, THEREFORE**, in consideration of the above recitals and mutual promises and agreements set forth below, the sufficiency of which is expressly acknowledged, it is agreed as follows:

## ARTICLE 1.  DEFINITIONS AND CONSTRUCTION OF TERMS

1.1    <u>Definitions; Interpretation; Application of Definitions and Rules of Construction</u>.  For purposes of this Settlement Agreement, the following terms shall have the meaning specified in this Article 1.  A term used but not defined herein that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code, and the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction hereof.  Any capitalized terms used herein but not defined herein shall have the meaning ascribed to such term in the Agreements.  Wherever from the context it appears appropriate, each term stated in either the singular or plural shall include both the singular and the plural; pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine and neutral.  Unless otherwise specified, all section, article or exhibit references in the Settlement Agreement are to the respective Section in, Article of or Exhibit to, this Settlement Agreement.  Headings in this Settlement Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Settlement Agreement as a whole and not to any particular Section, Sub-Section or clause contained in this Settlement Agreement.

"**Affiliate**" shall mean a domestic corporation or other domestic entity directly or indirectly controlling, controlled by, or under common control with, any other domestic corporation or domestic entity, including domestic parent, subsidiary and "brother/sister" corporations.

"**Approval Order**" shall mean an order of the Bankruptcy Court in form reasonably satisfactory to both Parties approving and authorizing the performance of this Settlement Agreement by the Parties and the transactions contemplated hereunder.

"**Bankruptcy Code**" shall mean Title 11 of the United States Code as amended from time to time, as applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Eastern District of Virginia, having jurisdiction over the Chapter 11 Cases.

"**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as promulgated under 28 U.S.C. § 2075, as amended from time to time, as applicable to the Chapter 11 Cases.

"**Business Day**" means a day of the year on which banks are open for business in New York City.

**"Cash"** shall mean cash or cash equivalents, i.e., bank checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, ACH transfers or wire transfers).

**"Effective Date"** shall mean the date on which the Approval Order becomes a Final Order.

**"Estates"** shall mean the estates of those Debtors entities subject to the Chapter 11 Cases in accordance with section 541 of the Bankruptcy Code.

**"Final Order"** shall mean an order, ruling or judgment of a court of competent jurisdiction (a) that is in full force and effect, (b) that is not stayed, (c) as to which the time to appeal or petition for certiorari has expired, and no appeal or petition for certiorari shall then be pending, and (d) is no longer subject to review, reversal, modification or amendment by appeal or writ of certiorari; provided, however, that an order will be deemed a Final Order notwithstanding the filing of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other applicable rules.

## ARTICLE 2. MUTUAL RELEASE

2.1    Release by Debtors. As of the Effective Date, the Debtors on behalf of themselves and their Estates and Affiliates, and their respective successors, predecessors, assignees, transferees, executors, administrators, trustees (including without limitation any liquidation trustee or Chapter 7 trustee), shareholders, agents, officers, directors, employees, servants, attorneys and other professionals, and all persons or entities that might be able to assert claims on behalf of or through the Debtors or their Estates against SPI, either directly or indirectly, hereby release and forever discharge SPI and SPI's Affiliates and their respective successors, predecessors, assignees, transferees, executors, administrators, trustees, members, directors, officers, shareholders, partners, principals, agents, employees, servants and attorneys from any and all past, present, and future claims, demands, damages, obligations, liabilities, losses, costs, expenses, fees, and causes of action of every nature, character, and description, whether contingent or fixed, whether matured or unmatured, whether known or unknown, for anything and everything from the beginning of time based on, related to, in connection with, or resulting from any facts, events, circumstances, acts, or failures to act related to the Agreements, the Debtors, or these Chapter 11 Cases.

2.2    Release by SPI. As of the Effective Date, SPI on behalf of itself, its Affiliates, and their successors, predecessors, assignees, transferees, executors, administrators, trustees, members, directors, officers, shareholders, partners, principals, agents, employees, servants, attorneys and other professionals, hereby release and forever discharge the Debtors, their Estates, and their respective, successors, predecessors, assignees, transferees, executors, administrators, trustees, (including without limitation any liquidation trustee or Chapter 7 trustee), members, directors, officers, shareholders, partners, principals, agents, employees, servants and attorneys from all past, present, and future claims, demands, damages, obligations, liabilities, losses, costs, expenses, fees, and causes of action of every nature, character, and description, whether contingent or fixed, whether matured or unmatured, whether known or unknown, for anything and everything from the beginning of time based on, arising out of, in connection with, or

resulting from any facts, events, circumstances, acts, or failures to act related to the Agreements, SPI, or the Chapter 11 Cases.

## ARTICLE 3.  PAYMENT AND CONSIDERATION

3.1     As consideration for the releases, agreements and covenants made herein, SPI shall make a one-time Cash payment to Circuit City in the amount of Twenty Three Million Two Hundred Fifty Thousand dollars ($23,250,000.00) (the "*Payment*"). The Payment shall be made by SPI to Circuit City by wire transfer pursuant to the instructions set forth on Exhibit 1 of this Settlement Agreement, on or before five (5) Business Days immediately following the Effective Date, as defined in Article 1 hereof.

## ARTICLE 4.   CONDITIONS TO EFFECTIVENESS AND TERMINATION

4.1     Bankruptcy Court Approval.  Promptly after the execution of this Settlement Agreement, the Debtors will file a motion with the Bankruptcy Court upon proper notice pursuant to the Bankruptcy Court's case management order (1) seeking entry of the Approval Order (the "*Approval Motion*"), and (2) requesting that the Bankruptcy Court consider the Approval Motion at a hearing to occur no later than the currently-scheduled September 15, 2009 hearing before the Bankruptcy Court. This Settlement Agreement shall be attached as an exhibit to the Approval Motion.

4.2     Conditions to Effective Date.    The Settlement Agreement and the transactions contemplated hereunder shall not become effective until (a) the Bankruptcy Court enters the Approval Order in form satisfactory to the Parties in each of their sole discretion, and (b) the occurrence of the Effective Date, as defined in Article 1 hereof.

4.3     Termination.  Failure of the conditions set forth under Section 4.2 to occur or be waived in writing by the Parties will cause this Settlement Agreement to be null and void, and the Parties shall retain all rights, remedies, defenses, obligations and liabilities existing as of the date immediately prior to the execution of this Settlement Agreement.

## ARTICLE 5.   REPRESENTATIONS AND WARRANTIES

5.1     Legal Capacity to Contract.  SPI represents that it has the requisite power, authority and legal capacity to make, execute, enter into and deliver this Settlement Agreement and to fully perform its duties and obligations under this Settlement Agreement, and that neither this Settlement Agreement nor the performance by SPI of any duty or obligation under this Settlement Agreement will violate any other contract, agreement, covenant or restriction by which SPI is bound other than any such violation by SPI that would not have a material adverse effect on Debtors.  Subject to the Bankruptcy Court entering the Approval Order, the Debtors represent that they have the requisite power, authority and legal capacity to make, execute, enter and deliver this Settlement Agreement and to fully perform the duties and obligations under this Settlement Agreement, and that neither this Settlement Agreement nor the performance by the Debtors of any duty or obligation under this Settlement Agreement will violate any other contract, agreement, covenant or restriction by which the Debtors are bound other than any such violation by the Debtors that would not have a material adverse effect on the Debtors' ability to perform under the terms of this Settlement Agreement.

5.2    No Prior Interests.  Each Party represents that it has not transferred or assigned to any party not controlled by the Debtors or SPI any right, interest, claim, obligation, or cause of action being transferred, conveyed, released or compromised pursuant to this Settlement Agreement.

5.3    No Undisclosed Inducements.  Each Party represents that it has executed and entered into this Settlement Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and that no representations, warranties, or promises other than those set forth in this Settlement Agreement were made by any Party or any employee, agent or legal counsel of any Party to induce said Party to execute this Settlement Agreement.

5.4    No Admission of Liability.  The execution of this Settlement Agreement by any Party does not constitute, imply or evidence the truth of any claim, the admission of any liability, the validity of any defense or the existence of any circumstances or fact, which could constitute a basis for any claim, liability or defense, other than for the purpose of enforcing the terms and provisions of this Settlement Agreement.

## ARTICLE 6.  MISCELLANEOUS

6.1    Amendments.   No amendment or modification of any provision of this Settlement Agreement shall be effective without the written agreement of the Parties, and no termination or waiver of any provision of this Settlement Agreement, or consent to any departures by the Parties, shall in any event be effective without the written consent of the other Party.   Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.   No notice to or demand upon the Debtors in any case shall entitle the Debtors to notice or demand in similar or other circumstances.  No prior drafts of this Settlement Agreement, or any negotiations regarding the terms contained in these drafts, shall be admissible in any court to vary or contradict the terms of this Settlement Agreement, the Parties hereto agreeing that this Settlement Agreement constitutes the final expression of the Parties' agreement and supersedes all prior written and oral understandings regarding the terms of this Settlement Agreement.  The Parties hereto have had the opportunity to be represented by counsel in their negotiations of the terms of this Settlement Agreement, and therefore no provision of this Settlement Agreement shall be construed against any Party hereto on the theory that such Party drafted such provision.

6.2    Validity.  Subject to approval of the Bankruptcy Court, this Settlement Agreement is for the benefit of and shall be binding upon the respective past and present parents, subsidiaries, and divisions, and predecessors and successors of the Parties, and each of their respective directors, officers, shareholders, employees, agents, professionals and representatives.   Nothing in this Settlement Agreement shall be construed to create any rights in, or grant any cause of action to, any other person or party.

6.3    Survivability and Binding Effect.  Upon the occurrence of the Effective Date, this Settlement Agreement (a) shall inure to the benefit of the Debtors and SPI, and their respective successors and assigns, including but not limited to any Chapter 11 or Chapter 7 trustee that may be appointed in any of the Chapter 11 Cases; and (b) shall be binding upon the Estates and any trustee, party, entity or other fiduciary that may be appointed in connection with such Chapter 11 Cases whether under Chapter 7 or Chapter 11 of the Bankruptcy Code.

6.4    <u>Choice of Law</u>.  Except as expressly provided herein, this Settlement Agreement shall be governed by and construed in accordance with the domestic laws of New York without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than New York.

6.5    <u>Retention of Jurisdiction</u>.  The Parties to this Settlement Agreement consent to the exclusive jurisdiction of the Bankruptcy Court in connection with the interpretation and enforcement of this Settlement Agreement.

6.6    <u>Counterparts</u>.  This Settlement Agreement may be executed simultaneously in any number of counterparts, each of which when so executed and delivered shall be taken to be an original, but such counterparts shall together constitute but one and the same document.

6.7    <u>Electronic or Facsimile Delivery</u>.  This Settlement Agreement may be delivered by electronic or facsimile transmission of an executed counterpart signature page hereof, and after attachment of such transmitted signature page to a copy of this Settlement Agreement, such copy shall have the same effect and evidentiary value as copies delivered with original signatures. Any Party delivering this Settlement Agreement by electronic or facsimile transmission shall deliver to the other Parties, as soon as practicable after such delivery, an original executed counterpart signature page of this Settlement Agreement.

6.8    <u>Conflicts</u>.  In the event of any conflict between this Settlement Agreement (or any portion thereof) and the Agreements or any other agreement, the terms of this Settlement Agreement shall prevail.

6.9    <u>Notices, Etc.</u>  All notices required under the Settlement Agreement shall be required to be given to:

If to Debtors:

Circuit City Stores, Inc.
4951 Lakebrook Drive
Glen Allen, VA 23058-5695
Attention: Michelle Mosier

Circuit City Stores, Inc.
PO Box 5695
Glen Allen, VA 23058-5695
Attention: Michelle Mosier

with a copy to:

Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Attention:  Gregg M. Galardi, Esq.
            Ian S. Fredericks, Esq.

and

Skadden, Arps, Slate, Meagher & Flom, LLP
333 W. Wacker Dr.
Chicago, IL 60606
Attention:  Chris L. Dickerson, Esq.

and

McGuireWoods LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
Attention: Doug Foley, Esq.

If to SPI:

ServicePlan, Inc.
175 West Jackson
Chicago, IL 60604
Attention:  President
With a copy to General Counsel at the same address

with copy to:

Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Attention:  William N. Howard, Esq.
            Aaron L. Hammer, Esq.

[END OF TEXT.  SIGNATURE PAGE TO FOLLOW]

Circuit City Stores, Inc.

On behalf of itself and its Affiliates

By: _____

Title: _____

ServicePlan, Inc.

On behalf of itself and its Affiliates

By: _____

Title: _____

Circuit City Stores, Inc.

On behalf of itself and its Affiliates

By: _____

Title: _____

ServicePlan, Inc.

On behalf of itself and its Affiliates

By: _____

Title:  President

**EXHIBIT 1**

**Wire Instructions**

**EXHIBIT B**

**(Assurant Stipulation)**

## AMENDMENT AND TERMINATION
## OF CONSUMER ELECTRONICS PROGRAM AGREEMENT
## AND AON CLAIM REIMBURSEMENT ARRANGEMENTS

**THIS AMENDMENT AND TERMINATION OF CONSUMER ELECTRONICS PROGRAM AGREEMENT AND AON CLAIM REIMBURSEMENT ARRANGEMENTS** (the "Brown Goods Termination Agreement") is made by and among **CIRCUIT CITY STORES, INC.**, a Virginia corporation, with its principal offices at 9950 Mayland Drive, Richmond, Virginia 23233 (collectively with its domestic affiliate and subsidiary companies, "Circuit City"), and **FEDERAL WARRANTY SERVICE CORPORATION**, an Illinois corporation, located at 260 Interstate North Circle, SE, Atlanta, GA 30339 ("Federal"), **SUREWAY, INC.**, a Delaware corporation located at 11222 Quail Roost Drive, Miami, Florida 33157 ("Sureway"), **AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA**, a Florida corporation, located at 11222 Quail Roost Drive, Miami, Florida 33157 ("ABIC"), **UNITED SERVICE PROTECTION, INC.**, a Florida Corporation, located at 400 Carillon Parkway, Suite 200, Petersburg, Florida 33716 ("USPI") (Federal, Sureway, ABIC. USPI and their affiliate and subsidiary companies collectively herein referred to as "Assurant").

### Recitals:

A.    Circuit City was formerly in the business of selling consumer electronics products and service contracts relating to such products to consumers through multiple retail sales channels; and

B.    Circuit City, Assurant and General Electric Company, a New York corporation ("GE") were parties to various agreements in connection with the sale and administration of such service contracts, including but not limited to, that certain Consumer Electronics Program Agreement dated December 1, 2006, as amended (the "Brown Goods Program Agreement"), a Consumer Electronics Program Services Agreement, dated December 1, 2006, as amended (the "Brown Goods Services Agreement"), an Agreement among Circuit City, GE and GE-Zurich Warranty Management, Inc. dated September 15, 2000, as amended and restated on March 15, 2004, and as further amended on December 1, 2006 relating to service contracts on personal computers and certain other electronic products (the "PC Program Agreement"); a Letter Agreement dated November 22, 2006 among GE, Circuit City and Assurant relating to claims administration under a previous Circuit City service contract program among Circuit City and certain subsidiaries of the Aon Warranty Group (the "Aon Letter Agreement"); and

C.    Circuit City and certain affiliates filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on November 10, 2008 (the "Petition Date") in a proceeding styled *In re: Circuit City Stores, Inc. et al.*, Case No. 08-35653-KRH (the "Circuit City Bankruptcy Cases")in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court" or the "Court"). Since the Petition Date, Circuit City has continued to manage its properties and operate its businesses

as debtor in possession in the Circuit City Bankruptcy Cases pursuant to 11 U.S.C. §§ 1107 and 1108, and no trustee or examiner has been appointed in the Circuit City Bankruptcy Cases; and

     D.    Circuit City desires to reject the PC Program Agreement and the Brown Goods Services Agreement; and

     E.    Circuit City desires to assume, and following such assumption, Circuit City and Assurant desire to amend, perform and then terminate the Brown Goods Program Agreement, under the terms and conditions set forth in this Brown Goods Termination Agreement; and

     F.    Circuit City agrees to pay Assurant an agreed amount for all amounts advanced by Assurant in the adjustment of claims on behalf of Circuit City pursuant to the Aon Letter Agreement;

**NOW THEREFORE**, in consideration of the premises, mutual covenants, and terms and conditions contained herein, the parties agree as follows:

ARTICLE I
DEFINITIONS

The following terms used in this Brown Goods Termination Agreement shall have the meanings ascribed to them below:

     1.1.    "Confidential Information" shall mean that information held by a Party necessary to perform the claim administration and claim run-off processes under the PC Program Agreement and Brown Goods Program Agreement including, but not limited to, information pertaining to products, business practices, schedules, services, methods, data, processes, advertising plans, sales, financial information and operating procedures ("Confidential Information"), whether or not specifically identified as such. For purposes of this Section 1.1, the service contract data and related Consumer Information, and the Assurant Service Network and supplier information (as defined in the PC Program Agreement and Brown Goods Program Agreement) is deemed to be "Confidential Information."

     1.2.    "Consumer(s)" shall mean a customer of Circuit City who has purchased service contract coverage on a product sold by Circuit City prior to the Effective Date.

     1.3.    "Consumer Information" shall mean service contract data, Consumer personally-identifiable information provided to GE and/or Assurant prior to March 15, 2009 under the PC Program Agreement or the Brown Goods Program Agreement for the purpose Assurant rendering services under either such agreements ("Consumer Information").

1.4.   "Effective Date" shall mean that date when all appeal periods shall have expired following entry of an Order of the United States Bankruptcy Court for the Eastern District of Virginia approving this Brown Goods Termination Agreement.

1.5.   Escrow Term shall mean the period of (i) twelve (12) months following the Effective Date, or (ii) during the pendency of any action filed by Assurant within that 12-month period in the Circuit City Bankruptcy Cases that seeks to enforce the Prohibition described in Section 3.3.2 below, whichever is longer.

1.6.   "Party" shall mean each of Circuit City or Assurant, and "Parties" shall mean Circuit City and Assurant collectively.

1.7.   "Service Contract" shall mean extended service contract as defined in the PC Program Agreement or Brown Goods Program Agreement.

ARTICLE II
REPLACEMENT OF PRIOR BROWN GOODS AGREEMENT;
REJECTION OF CERTAIN AGREEMENTS

2.1   Replacement of Prior Agreement.   This Brown Goods Termination Agreement replaces and supersedes all other agreements, whether written or oral, among the Parties dealing with amounts that may be due and payable from Circuit City to Assurant or from Assurant to Circuit City under the "Brown Goods" Service Contract program, including but not limited to, the Brown Goods Program Agreement, the Brown Goods Service Agreement, and the AON Letter Agreement.

2.2   Rejection of Certain Agreements; Allowed Claim and Final Resolution. Effective as of the Effective Date, pursuant to Bankruptcy Code section 365, the Brown Goods Services Agreement, AON Letter Agreement and the PC Program Agreement shall be deemed rejected.

2.3   The Settlement Claim.   Assurant shall be granted an allowed general unsecured claim in the City Circuit Bankruptcy Cases of $6,000,000.00 (the "Settlement Claim"), which shall be deemed to be full and final resolution of all amounts owed by Circuit City to Assurant in the Circuit City Bankruptcy Cases or otherwise in any way related to the Brown Goods Services Agreement and the PC Program Agreement.

ARTICLE III
ASSUMPTION OF BROWN GOODS AGREEMENT;
PAYMENT OF PROFIT SHARE AMOUNTS;
TERMINATION OF BROWN GOODS AGREEMENT

3.1   Assumption of Brown Goods Program Agreement.   Effective as of the Effective Date, pursuant to Bankruptcy Code section 365, Circuit City shall be deemed to assume the Brown Goods Program Agreement without objection from Assurant.

3

3.2    <u>Initial Lump-Sum Payment of Profit Sharing</u>.  No later than five (5) days following the Effective Date (the "Funding Date"), Assurant shall pay to Circuit City $46,000,000.00 (the "Profit Sharing Amount") less (a) the settlement amount of $4,109,104.00 for amounts due and payable from Circuit City to Assurant under the Brown Goods Program Agreement and arising after the Petition Date, (b) $4,250,000.00 in full and final resolution of all amounts advanced or incurred by Assurant under the Aon Letter Agreement in adjusting and paying claims formerly administered by Circuit City as described in Section 5.1 below, and (c) the $3,500,000.00 deposit to the Custodial Account described in Section 3.3 below, for a net initial lump-sum profit share payment of $34,140,896.00.

3.3    <u>Escrow of a Portion of the Profit Sharing Amount; Prohibition</u>.  On the Funding Date, Assurant shall deposit $3,500,000.00 in cash (the "Custodial Amount") with a custodian mutually acceptable to the Parties (the "Custodian") in a custodial trust account (the "Custodial Account") for use in accordance with this Agreement. Notwithstanding anything to the contrary herein, Circuit City shall have the full and unqualified right to and shall receive all interest accrued on deposits held in the Custodial Account upon the distribution thereof at the end of the Escrow Term.

3.3.1    Assurant agrees that the amounts deposited pursuant to Section 3.3 shall be utilized by Assurant or its successors in interest only to pay Assurant's damages proximately caused by any violation of the Prohibition described in Section 3.3.2 below and for no other purpose; <u>provided, further,</u> that such amounts shall only be utilized in the event that Assurant has exhausted its remedies and been unable to satisfy any judgment entered by a Court against any violator of such Prohibition, including but not limited to, a purchaser or assignee from such a purchaser from Circuit City, or any person acting under the authority of a purchaser or assignee from such purchaser, who shall violate the Prohibition of the Court in the Circuit City Bankruptcy Cases described in Section 3.3.2 below.

3.3.2    As a part of Circuit City's performance under this Brown Goods Termination Agreement, Circuit City shall seek entry of an Order in the Circuit City Bankruptcy Cases approving any sale or transfer of the right to use Confidential Information and Consumer Information that includes substantially the following language: "The Purchaser or its assigns are hereby prohibited from (1) communicating with persons (the "Warranty Customer") to whom a warranty contract was issued under any warranty issuance agreement entered into prior to the Effective Date (the "Warranty Contract") with respect to, relating to, or arising out of, any issue related to such Warranty Contract, except if the inquiry or contact is initiated by such Warranty Customer in which case the Purchaser or its assign shall direct them to the present obligor or administrator for such Warranty Contract, (2) soliciting any Warranty Customer to cancel an existing Warranty Contract, or (3) soliciting any Warranty Customer to renew or replace an existing Warranty Contract" (the "Prohibition").  Should the Court in the Circuit City Bankruptcy Cases fail to enter the Prohibition in a form reasonably satisfactory to

Assurant, then Assurant may upon written notice to Circuit City terminate this Brown Goods Termination Agreement whereupon the Parties will be relieved of all further obligations hereunder, and all prior and superseded agreements between the Parties shall be deemed reinstated and in full force and effect. For the avoidance of doubt, the Prohibition set forth herein shall be deemed reasonably satisfactory.

3.4    Retention of Custodial Account.    If during the Escrow Term Assurant believes a violation of the Prohibition shall have occurred and Assurant files an action seeking damages caused by violation of the Prohibition, the Custodian shall retain the amounts held in the Custodial Account pending a decision of the Court in the Circuit City Bankruptcy Cases as to entry of a judgment for violation of the Prohibition and distribution of the assets in the Custodial Account.

3.5    Procedure for Draws and Objections.    If Assurant shall intend to draw on the Custodial Account for the purpose of satisfying a judgment described in Sections 3.3.1 and 3.4 above, Assurant shall notify Circuit City, or its designee, and the Custodian, in writing (the "Draw Notice") via certified mail, of its intention to draw on the Custodial Account at least twenty (20) days prior to acting thereon to permit Circuit City an opportunity to (a) tender payment acceptable to Assurant in full for any such sums required above or (b) object to such proposed draw by written notice to Assurant and the Custodian, as provided below.   The Draw Notice shall specify: (i) that Assurant has obtained a judgment for its damages proximately caused by violation of the Prohibition and has exhausted its remedies and been unable to satisfy such judgment; and (ii) the gross amount (including specific calculations and computations thereof) upon which Assurant intends to draw. The foregoing disbursements from the Custodial Account shall be applied without diminution because of any insolvency on the part of Circuit City or Assurant. In the event Circuit City objects to Assurant's draw request, Circuit City shall, within twenty (20) days after receipt of the Draw Notice, notify Assurant and the Custodian, in writing via certified mail, of its objection and the specific reasons therefore. If the parties are unable to resolve their dispute within 30 days after Assurant's receipt of Circuit City's objection notice, such dispute shall be referred to the Circuit City Bankruptcy Court for resolution, which shall be final and binding upon the Parties. In the event of such dispute, transfer of any amounts from the Custodial Account to Assurant or Circuit City by the Custodian shall be held in abeyance pending any decision of such Court.

3.6    Termination of Brown Goods Program Agreement.    Upon assumption of the Brown Goods Program Agreement by Circuit City as provided for herein, except for the terms and conditions set forth in this Brown Goods Termination Agreement, the Brown Goods Program Agreement shall be deemed to be terminated, and no Party shall owe any further performance or have any further liability under the Brown Goods Program Agreement to any other Party, including but not limited to GE.

ARTICLE IV
TRANSFER OF NUMBERS; TRANSFER AND RIGHTS TO USE CONFIDENTIAL
AND CONSUMER INFORMATION; NO PUBLIC STATEMENTS

4.1    <u>Transfer of Telephone Numbers</u>.  Circuit City shall transfer or facilitate transfer to Assurant the following toll-free numbers relating to the Circuit City Service Contract business, to allow Assurant to immediately commence answering calls relating to current in-force Circuit City Service Contracts: 888-333-2333 and 800-871-2761. These numbers are transferred to Assurant for no additional consideration.

4.2    <u>Right to Exclusive Use of Confidential Information and Consumer Information Relating to Circuit City Service Contracts</u>.  Circuit City herby grants to Assurant the perpetual, royalty-free worldwide exclusive right to use the Confidential Information and Consumer Information of all persons to whom a Circuit City Service Contract (a "Warranty Contract") shall have been issued under the PC Program Agreement and/or Brown Goods Program Agreement prior to the Effective Date (a "Warranty Customer") for purposes of the (i) solicitation of existing Warranty Customers in any way relating to existing Warranty Contracts, (ii) cancellation of existing Warranty Contracts, or (iii) any notification regarding claims payment or claims administration in any way relating to existing Warranty Contracts. Circuit City further covenants and agrees that following the Effective Date, neither Circuit City nor any entity to whom Circuit City shall grant access to the Confidential Information and Consumer Information of any Warranty Customers, nor any assignee of or other person contracting with such an entity for use of such Confidential Information or Consumer Information (and Circuit City shall cause any such assignee or other person contracting with such an entity to so covenant) shall use such Confidential Information or Consumer Information for purposes of (1) communicating with a Warranty Customer to whom a Warranty Contract was issued under any warranty issuance agreement entered into prior to the Effective Date with respect to, relating to, or arising out of, any issue related to such Warranty Contract, except if the inquiry or contact is initiated by such Warranty Customer in which case the Purchaser or its assign shall direct them to the present obligor or administrator for such Warranty Contract, (2) soliciting any Warranty Customer to cancel an existing Warranty Contract, or (3) soliciting any Warranty Customer to renew or replace an existing Warranty Contract.

4.3    <u>No Public Statements.</u>Circuit City shall neither publish nor otherwise disseminate any press release, public statement, internet posting, advertisement or other disclosure to any Warranty Customer issued a Warranty Contract that references Assurant directly in any manner, without Assurant's prior review and written approval, which may be withheld in Assurant's reasonable discretion.  Circuit City shall include a covenant incorporating the foregoing prohibition in any agreement granting the right to use the Confidential Information and Consumer Information of Warranty Customers.

## ARTICLE V
## AON PROGRAM

Final Resolution of Aon Claims.  Circuit City shall pay to Assurant $4,250,000.00 in full and final resolution for all amounts advanced or incurred by Assurant in adjusting and paying claims formerly administered by Circuit City under or arising from, in connection with, or related to the Aon Letter Agreement.

## ARTICLE VI
## RELEASE OF CLAIMS

Except for the Settlement Claim, any and all claims filed by Assurant in the Circuit City Bankruptcy Cases shall be deemed withdrawn without further action by the Debtors, Assurant, or any other party or order of the Bankruptcy Court.  Except with respect to claims or causes of action arising from or related to this Brown Goods Termination Agreement, Assurant and Circuit City, on behalf itself and its bankruptcy estate, hereby irrevocably and fully release and discharge one another from and against any and all claims or causes of action arising from, in connection with, relating to, or based in any way on the AON Letter Agreement, the Brown Goods Program Agreement, the Brown Goods Services Agreement, the PC Program Agreement, and any other related agreements (the "Release").  For the avoidance of doubt and notwithstanding anything to the contrary herein, the Settlement Claim shall constitute a valid and allowed general unsecured claim in the Circuit City Bankruptcy Cases, and Assurant shall be obligated to pay the Profit Sharing Amount pursuant to and in accordance with Article III hereof.

## ARTICLE VII
## ASSIGNMENT

Neither Circuit City nor Assurant may assign, transfer or sell all or any of its rights under this Brown Goods Termination Agreement (or delegate any of its obligations hereunder) to a third party, without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed; provided, however, that the Parties hereby agree that Circuit City may assign, transfer or sell any and all of its rights under this Brown Goods Termination Agreement (and delegate any or all of its obligations hereunder) to its successor pursuant to one or more plans of liquidation.

## ARTICLE VIII
## CONDITION PRECEDENT

This Brown Goods Termination Agreement shall be conditioned upon entry into an agreement between Circuit City and GE resolving all claims related to the AON Letter Agreement, the Brown Goods Program Agreement, the Brown Goods Services Agreement, the PC Program Agreement, and any other related agreements.

7

ARTICLE IX
MISCELLANEOUS

9.1    <u>Notices</u>.  Any notice required or permitted to be given under this Services Agreement shall be given in writing and may be delivered by (i) personal service, (ii) registered mail, postage prepaid, addressed to the other Party, or (iii) overnight delivery services such as Federal Express, or (iv) facsimile with a follow-up copy by regular mail address to the other Party as follows:

If to Circuit City:

Circuit City Stores, Inc.
4951 Lakebrook Drive
Glen Allen, VA 23058-5695
Phone: 804-290-4301
Facsimile: 804-290-4305
Attention: Michelle Mosier

Circuit City Stores, Inc.
PO Box 5695
Glen Allen, VA 23058-5695
Attention: Michelle Mosier

With a copy to:

Gregg M. Galardi
Ian S. Fredericks
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Phone: 302-651-3000
Facsimile: 302-651-3001

If to Assurant:

Federal Warranty Services Corporation
Attn:  CEO
260 Interstate Circle SE
Atlanta, Georgia 30339
Phone: 770-763-1428
Fax: 770-859-4501

Sureway, Inc.
Attn:  CEO
11222 Quail Roost Drive

Miami, FL 33157
Phone: 770-763-1428
Fax: 770-859-4501

American Bankers Insurance Company of Florida
Attn: Senior Vice President
11222 Quail Roost Drive
Miami, FL 33157
Phone: 770-763-1428
Fax: 770-859-4501

United Service Protection, Inc.
Attn: CEO
400 Carillon Parkway, Suite 300
St. Petersburg, FL 33716
Phone: 727-556-2900
Fax: 727-561-9351

With a copy to:

General Counsel
American Bankers Insurance Company of Florida
11222 Quail Roost Drive
Miami, Florida 33157
Phone: 305-253-2244
Fax: 305-252-7069

and

Frank Burt
Jorden Burt LLP
Suite 400 East
1025 Thomas Jefferson Street, NW
Washington, DC 20007-0805
Phone: 202-965-8140
Fax: 202-965-8104

or to such other address or to the attention of such other persons as either Party may from time to time specify by notice to the other and shall be deemed given upon delivery, in the case of personal service or overnight mail, or in the case of deposit in the United States mail, five (5) days after mailing.

9.2    Amendments.  No modification, alteration or amendment of this Brown Goods Termination Agreement including, without limitation, any changes in the Exhibits shall be binding on any other Party unless in writing and signed by a duly authorized representative of each Party.

9.3    Entire Agreement.  This Brown Goods Termination Agreement shall be the entire agreement between Circuit City and Assurant with regard to the subject matter hereof, and shall supersede all prior understandings, agreements, contracts or arrangements between the Parties on the subject matter hereof.

9.4    Waiver.  No failure or delay by either Party in exercising any right, power or privilege under this Brown Goods Termination Agreement shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  With respect to a breach of this Brown Goods Termination Agreement, Assurant and Circuit City shall have all rights and remedies available to them under applicable law including, but not limited to, equitable relief.

9.5    Dependent Covenants.  All provisions of this Brown Goods Termination Agreement, and the performance of each of the Parties hereunder, are expressly dependent upon the other provisions of this Agreement and the performance of the other party.

9.6    Applicable Law.  This Brown Goods Termination Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York.

9.7    Counterparts; Headings.  This Brown Goods Termination Agreement may be executed in several counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.  The Article and Section headings in this Services Agreement are inserted for convenience of reference only and shall not constitute a part hereof.

IN WITNESS WHEREOF, the parties to this Brown Goods Termination Agreement have caused this Agreement to be duly executed by their respective authorized representatives effective as of the day and year first above written.

**CIRCUIT CITY STORES, INC.**

By: _____
Name and Title: _____

**FEDERAL WARRANTY SERVICE CORPORATION**

By: _____
Name and Title: _____ Joe Enderson, CEO

**AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA**

By: _____
Name and Title: _____ Joe Enderson, SVP

**SUREWAY, INC.**

By: _____
Name and Title: _____ Joe Enderson, CEO

**UNITED SERVICE PROTECTION, INC.**

By: _____
Name and Title: _____ Joe Enderson, CEO

214117v7DC

IN WITNESS WHEREOF, the parties to this Brown Goods Termination Agreement have caused this Agreement to be duly executed by their respective authorized representatives effective as of the day and year first above written.

**CIRCUIT CITY STORES, INC.**

By: _____
Name and Title: _____

**FEDERAL WARRANTY SERVICE CORPORATION**

By: _____
Name and Title: _____

**AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA**

By: _____
Name and Title: _____

**SUREWAY, INC.**

By: _____
Name and Title: _____

**UNITED SERVICE PROTECTION, INC.**

By: _____
Name and Title: _____

214117v7DC

**<u>EXHIBIT C</u>**

**(GE Stipulation)**

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-
0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB
No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
          Debtors.          :   Jointly Administered
- - - - - - - - - - - - - - x
```

**STIPULATION AND SETTLEMENT AGREEMENT BY AND AMONG THE
DEBTORS, GENERAL ELECTRIC COMPANY, A NEW YORK CORPORATION,
BY AND THROUGH ITS GE CONSUMER & INDUSTRIAL BUSINESS
COMPONENT**

This stipulation and settlement agreement (this

"Agreement") is entered into by and among the above-

captioned debtors and debtors in possession (the

"Debtors"), on the one hand, and General Electric Company,

a New York corporation, by and through its GE Consumer &

Industrial business component (hereinafter, "GE" or the

"Claimant" and together with the Debtors, the "Parties" and

each of which is a "Party"), on the other hand.

### GENERAL BACKGROUND

WHEREAS, on November 10, 2008 (the "Petition

Date"), the Debtors each filed a voluntary petition in the

United States Bankruptcy Court for the Eastern District of

Virginia (the "Court") under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code"); and

WHEREAS, the Debtors have continued as debtors in

possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code; and

WHEREAS, on November 12, 2008, the Office of the

United States Trustee for the Eastern District of Virginia

appointed a statutory committee of unsecured creditors (the

"Creditors' Committee"); and

WHEREAS, to date, no trustee or examiner has been

appointed in these chapter 11 cases; and

WHEREAS, on January 16, 2009, the Court

authorized the Debtors, among other things, to conduct

going out of business sales at the Debtors' remaining 567

2

S090242

stores pursuant to an agency agreement (the "Agency
Agreement") between the Debtors and a joint venture, as
agent (the "Agent").  On January 17, 2009, the Agent
commenced going out of business sales pursuant to the
Agency Agreement at the Debtors remaining stores.  As of on
or about March 8, 2009, the going out of business sales
concluded; and

### SETTLEMENT BACKGROUND

WHEREAS, the Debtors and ServicePlan, Inc.,
Virginia Surety Company, Inc., National Product Care
Company, Service Saver, Incorporated, ServicePlan of
Florida, Inc. and TWG Innovative Solutions, Inc.
(collectively, "SPI") are parties to that certain Agreement
Regarding Repair Service Agreements dated as of December 1,
1992, including all exhibits thereunder, each as amended,
supplemented or modified from time to time in writing by
the Parties (collectively, the "Repair Service Agreement").

WHEREAS, Circuit City and SPI are parties to that
certain Authorized Repair Center Agreement dated as of
December 1, 1992, including all exhibits thereunder, each
as amended, supplemented or modified from time to time in
writing by the Parties (collectively, the "Repair Center
Agreement").

3

S090242

WHEREAS, Circuit City and SPI are parties to that certain Contingent Commission Agreement dated as of December 1, 1992, including all exhibits thereunder, each as amended, supplemented or modified from time to time in writing by the Parties (collectively, the "Contingent Commission Agreement" and, collectively with the Repair Service Agreement and the Repair Center Agreement, the "AON Agreements").

WHEREAS, Circuit City, General Electric Company, and Federal Warranty Service Corporation, ("Federal"), Sureway, Inc. ("Sureway"), American Bankers Insurance Company of Florida ("ABIC"), United Service Protection, Inc. ("USPI and collectively with Federal, Sureway, and ABIC, "Assurant") were parties to various agreements in connection with the sale and administration of such service contracts, including but not limited to, that certain Consumer Electronics Program Agreement dated December 1, 2006, as amended (the "Brown Goods Program Agreement"), a Consumer Electronics Program Services Agreement, dated December 1, 2006, as amended (the "Brown Goods Services Agreement"), an Agreement among Circuit City, General Electric Company and GE-Zurich Warranty Management, Inc. dated September 15, 2000, as amended and restated on March

4

15, 2004, and as further amended on December 1, 2006

relating to service contracts on personal computers and

certain other electronic products (the "PC Program

Agreement"); a Letter Agreement dated November 22, 2006

among General Electric Company, Circuit City and Assurant

relating to claims administration under the AON Agreements

(the "Aon Letter Agreement") the Services Agreement between

Circuit City and GE dated January 19, 2004, the Letter

Agreement among Circuit City, GE and Assurant dated

November 16, 2006, the Letter Agreement among Circuit City,

GE and Assurant dated July 11, 2005, the Letter Agreement

between Circuit City and GE dated September 6, 2005, the

Letter Agreement among Circuit City, GE and Assurant dated

September 27, 2006; with all of the agreements referenced

in this "WHEREAS" paragraph, together with any other

related agreements, collectively referred to herein as the

"Assurant Agreements"; and

   WHEREAS, on or about September 26, 2008, GE

assigned, sold or otherwise transferred all of its rights,

title and interest in and under the Assurant Agreements to

Assurant; and

   WHEREAS, GE filed claims or claims were filed in

the Debtors' bankruptcy cases, which have been docketed as

5

S090242

claim numbers 7935 and 9027, and a third claim, was

mistakenly docketed by the Debtor's claim agent as Claim

Number 10894 (collectively, the 'Filed Claims"); and

WHEREAS, by their thirteenth and nineteenth

omnibus claim objections, the Debtors objected to certain

of the Filed Claims; and

WHEREAS, the parties wish to finally resolve all

issues related to the AON Agreements, the Assurant

Agreements, and the Filed Claims.

NOW, THEREFORE, subject to entry of an order by

the Bankruptcy Court approving this Stipulation, for good

and valuable consideration the receipt and sufficiency of

which is hereby acknowledged, the Parties hereby **STIPULATE**

**AND AGREE** that:

1.    The Filed Claims shall be deemed withdrawn

with prejudice.

2.    GE, solely with respect to its GE Consumer &

Industrial business component, and the Debtors, on behalf

themselves and on behalf of their estates, hereby

irrevocably and fully release and discharge one another

from and against any and all claims, including (without

limitation) the Filed Claims, or causes of action,

including, but not limited to, causes of action under

6

S090242

Chapter 5 of the Bankruptcy Code, including, but not limited to 11 U.S.C. §§547, 548 and 549, arising from, in connection with, relating to, or based in any way on the AON Agreements or the Assurant Agreements (the "Release"). The Release is not intended as general releases or waivers and nothing herein shall be construed as such.

3.   Except for the Release, the Parties reserve any and all legal and equitable claims, causes of action, rights, remedies, defenses, and arguments they have against one anther.

4.   Nothing contained herein shall be deemed an admission of liability on the part of the Debtors or GE.

5.   Neither this Agreement, nor any statement made or action taken in connection with the negotiation of this Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (a) to obtain approval of and to enforce this Release and Waiver Agreement or (b) to seek damages or injunctive relief in connection therewith.

6.   Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other

7

S090242

assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of their respective obligations hereunder.

7. No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

8. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Virginia without regard to any choice of law provisions.

9. This Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

10. This Agreement constitutes the entire agreement and understanding of the Parties regarding the Agreement and the subject matter thereof.

11. The Court shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Agreement.

12. Each person or entity who executes this Agreement on behalf of another person or entity represents

8

and warrants that he, she, or it is duly authorized to execute this Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Agreement.

13.  This Agreement shall not be modified, altered, amended or vacated without the written consent of all Parties hereto or order of the Court.

[SIGNATURES APPEAR ON FOLLOWING PAGES]

9

IN WITNESS WHEREOF, this Agreement is hereby executed as of the later of the dates set forth below.

ACCEPTED AND AGREED TO BY:

Dated: August ___, 2009
      Richmond, Virginia

      MCGUIREWOODS LLP

      Dion W. Hayes (VSB No. 34304)
      Douglas M. Foley (VSB No. 34364)
      One James Center
      901 E. Cary Street
      Richmond, Virginia 23219
      (804) 775-1000

           and

      SKADDEN, ARPS, SLATE, MEAGHER &
          FLOM, LLP
      Gregg M. Galardi, Esq.
      Ian S. Fredericks, Esq.
      P.O. Box 636
      Wilmington, Delaware 19899-0636
      (302) 651-3000

           and

      SKADDEN, ARPS, SLATE, MEAGHER &
          FLOM, LLP
      Chris L. Dickerson, Esq.
      155 North Wacker Drive
      Chicago, Illinois 60606
      (312) 407-0700

      *Counsel for Debtors*

10

S090242

Dated:  August 28, 2009
        Staunton, Virginia

                    WHARTON ALDHIZER & WEAVER PLC


                    Stephan W. Milo, Esq. (VSB #42156)
                    125 South Augusta Street
                    Suite 2000
                    Staunton, Virginia 24401
                    Phone: (540) 885-0199

                    *Counsel for GE*

11