Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

            - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                      :   Chapter 11
                            :
CIRCUIT CITY STORES, INC.,  :   Case No. 08-35653 (KRH)
et al.,                     :
                            :
            Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - x

**THIRD INTERIM APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM MAY 1, 2009 THROUGH JULY 31, 2009**

McGuireWoods LLP ("MW"), in its capacity as co-counsel

to the debtors and debtors in possession in the above-

captioned jointly administered cases (collectively, the

"Debtors"),[1] submits the following as its Third Interim

Application for Compensation and Reimbursement of Expenses

for Services Rendered from May 1, 2009 through July 31, 2009

(the "Application") pursuant to 11 U.S.C. §§ 330, 331 and

503(b) and Federal Rule of Bankruptcy Procedure 2016.  MW

certifies that the Debtors have received a copy of this

Application, but have not completed their review.  In

addition, MW certifies that a copy of this Application has

been served on the Office of the United States Trustee and

counsel for the Official Committee of Unsecured Creditors.

For its Application, MW seeks the entry of an order,

substantially in the form attached hereto as Exhibit A,

granting interim approval of compensation in the amount of

$757,717.00 and reimbursement of expenses in the amount of

$25,549.27 for services rendered by MW from May 1, 2009

through July 31, 2009 (the "Application Period").  In

---

[1] The Debtors and the last four digits of their respective taxpayer
identification numbers are as follows: Circuit City Stores, Inc. (3875),
Circuit City Stores West Coast, Inc. (0785), InterTAN, Inc. (0875),
Ventoux International, Inc. (1838), Circuit City Purchasing Company, LLC
(5170), CC Aviation, LLC (0841), CC Distribution Company of Virginia,
Inc. (2821), Circuit City Properties, LLC (3353), Kinzer Technology, LLC
(2157), Abbott Advertising Agency, Inc. (4659), Patapsco Designs,
Inc.(6796), Sky Venture Corp. (0311), PRAHS, Inc.(n/a), XSStuff, LLC
(9263), Mayland MN, LLC (6116), Courchevel, LLC (n/a), Orbyx Electronics,
LLC (3360), and Circuit City Stores PR, LLC (5512).  The address for
Circuit City Stores West Coast, Inc. is 9250 Sheridan Boulevard,
Westminster, Colorado 80031.  For all other Debtors, the address was 9950
Mayland Drive, Richmond, Virginia 23233 and currently is 4951 Lake Brook
Drive, Glen Allen, Virginia 23060.

support of the Application, MW respectfully represents as follows:

## JURISDICTION

1.   This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The bases for the relief requested herein are sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2016.

## BACKGROUND

3.   On November 10, 2008 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.   On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Committee").   To date, no trustee or examiner has been
appointed in these chapter 11 cases.

6.    On January 16, 2009, the Court authorized the
Debtors, among other things, to conduct going out of
business sales at the Debtors' remaining 567 stores pursuant
to an agency agreement (the "Agency Agreement") between the
Debtors and a joint venture, as agent.   On January 17, 2009,
the agent commenced going out of business sales pursuant to
the Agency Agreement at the Debtors' remaining stores.   As
of March 8, 2009, the going out of business sales at the
Debtors' remaining stores had been completed.

<u>MCGUIREWOODS LLP'S EMPLOYMENT</u>

7.    On November 18, 2008, MW filed an Application to
Employ and Retain McGuireWoods LLP as Counsel for the
Debtors Pursuant to 11 U.S.C. §§ 327(a) and 329 (Docket No.
191) (the "Employment Application").

8.    On December 8, 2008, the Court entered an order
authorizing the employment of MW as counsel to the Debtors
(Docket No. 791) (the "Employment Order").

9.    By this Application, MW is seeking, <u>inter</u> <u>alia</u>,
interim approval of its compensation and reimbursement of
expenses pursuant to the Employment Order and pursuant to

4

sections 330, 331 and 503(b) of the Bankruptcy Code for the period of May 1, 200 through July 31, 2009.

10.  MW charges legal fees on an hourly basis at its attorneys' and paraprofessionals' hourly rates, which rates are set in accordance with the attorney's or paraprofessional's seniority and experience and are adjusted from time to time.  MW also charges the Debtors for its actual out-of-pocket expenses incurred including, but not limited to, photocopying, long distance telephone calls, messenger services, computer research, travel expenses, overnight mail and court fees.  MW's fee structure and expense reimbursement policies were disclosed in MW's Employment Application, to which no party objected and this Court approved.  See Docket Nos. 191, 791.

11.  The names of all MW attorneys and paraprofessionals who have worked on this matter and their respective hourly rates are set forth on Exhibit B hereto.

12.  MW currently holds a retainer from the Debtors in the amount of $348,568.07.

13.  To the best of MW's knowledge, and upon information and belief, the Debtors have paid or will pay undisputed postpetition operating expenses in the ordinary course.

14.   To the best of MW's knowledge, and upon information and belief, the Debtors have sufficient funds on hand to pay the compensation and reimbursement of expenses requested herein.

15.   To the best of MW's knowledge, and upon information and belief, the Debtors have filed with the United States Trustee all monthly operating reports presently due, and have paid all quarterly fees to the United States Trustee that are presently due.

**FEE PROCEDURES AND MONTHLY FEE STATEMENTS**

16.   On December 9, 2008, this Court entered an Order Under Bankruptcy Code Sections 105(a) and 331 Establishing Procedures for Interim Compensation (Docket No. 830) (the "Interim Compensation Order"), which approved the interim compensation procedures attached thereto (the "Interim Compensation Procedures").   Pursuant to paragraph (d) of the Interim Compensation Procedures, interim applications for compensation and reimbursement of expenses must be filed on or before September 14, 2009.   Moreover, in accordance with paragraphs (a) and (d) of the Interim Compensation Procedures, MW will serve a copy of this Application upon the Notice Parties (as defined therein).   Moreover, notice

of the Application will be served on the parties as required by the Case Management Order (Docket No. 130).

17.  Pursuant to the Interim Compensation Procedures, approximately on or after the tenth (10th) day of each month following the month for which compensation was sought, MW submitted a monthly statement to the Notice Parties (as defined in the Interim Compensation Procedures).  The parties had twenty (20) days to review any such statement. If there were no objections, at the expiration of the twenty (20) day period, the Debtors were ordered to promptly pay eighty-five percent (85%) of the fees and one hundred percent (100%) of the expenses identified in each monthly statement.  MW submitted monthly statements for each month during the Application Period and no objections were received.  Accordingly, MW has been paid approximately 85% of its total requested fees and approximately 100% of its expenses during the Application Period.  A chart summarizing these payments and the monthly statements is attached hereto as Exhibit C.

## REQUESTED FEES AND REIMBURSEMENT OF EXPENSES

18.  MW has played an important role in advising the Debtors and handling the day to day administration of the Debtors' chapter 11 cases.  As a result of its efforts

during the Application Period, MW now seeks interim

allowance of $757,717.00 in fees calculated at the

applicable guideline hourly billing rates of the firm's

personnel who have worked on the cases, and $25,549.27 in

expenses actually and necessarily incurred by MW while

providing services to the Debtors during the Application

Period.

19.   In staffing this case, in budgeting and incurring

charges and disbursements, and in preparing and submitting

this Application, MW has been mindful of the need to be

efficient while providing full and vigorous representation

to the Debtors.  MW also has been especially cognizant of

the standards established by this Court for compensation of

professionals and reimbursement of charges and

disbursements.  As described in detail herein, MW believes

that the requests made in this Application comply with this

Court's standards in the context of the unique circumstances

surrounding these large and complex chapter 11 cases.

**SUMMARY OF SERVICES PROVIDED DURING THE APPLICATION PERIOD**

**A.    General Case Administration.**

20.   <u>Description</u>.  MW assisted with, <u>inter alia</u>, the

review, analysis and preparation of correspondence,

documents, pleadings and notices; handled the day to day

administration of the Debtors' chapter 11 cases; prepared
and maintained a case calendar, hearing planners and omnibus
hearing agendas used by the Debtors and their professionals
in these chapter 11 cases; prepared for and participated in
all court hearings in these chapter 11 cases; regularly
participated in meetings and telephone conferences with
officers and employees of the Debtors and the Debtors'
financial and other advisors regarding the foregoing as well
as other operational, organizational and strategic issues
arising in the cases; regularly participated in meetings and
telephone conferences with professionals for the Committee,
creditors and other parties in interest regarding the
foregoing and various other issues arising in these cases;
assisted the Debtors with the service of relevant documents
on appropriate parties, and the organization of information
and document requests from various parties; handled issues
relating to electronic case filing; regularly communicated
with the Clerk's office, Chambers and the U.S. Trustee's
office regarding various case administration issues; handled
the internal coordination of motions, responses, objections
and other related matters; coordinated the establishment and
maintenance of a MW's telephone hotline to assist in
responding to the numerous inquiries from creditors and

other parties in interest that these cases have generated;

and researched responses to each message and otherwise

responded to all inquiries tendered through the hotline.

21.   <u>Necessity and Benefit to the Estates</u>.   These

services were necessary to assist the Debtors in the

administration and prosecution of these complex chapter 11

cases.

22.   <u>Status</u>.   These and other general case

administration matters will continue until the chapter 11

cases are closed.

23.   <u>Hours Spent and Compensation Requested</u>.   In

connection with the foregoing matters, MW's professionals

expended 578.9 hours during the Application Period for a

total of $155,643.00.   The complete narrative, time detail

of the hours incurred and the value of the matter by

professional is attached hereto as <u>Exhibit E</u>.

**B.    Restructuring and General Strategy.**

24.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, the

resolution of various issues and the development of various

strategies regarding the Debtors' chapter 11 cases; analyzed

issues and strategies regarding claim objections,

litigation, substantive consolidation and plan of

liquidation; and participated in meetings and telephone

conferences with the Debtors and their professionals regarding the foregoing.

25. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in the administration and prosecution of these complex chapter 11 cases.

26. <u>Status</u>.  These matters will continue as the need arises.

27. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 18.1 hours during the Application Period for a total of $9,605.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**C.    Schedules and SOFAS.**

28. <u>Description</u>.  MW assisted the Debtors and their professionals with, <u>inter alia</u>, the preparation of and filing of certain amendments to and notices regarding the Debtors' Schedules of Assets and Liabilities and the Debtors' Statements of Financial Affairs.

29. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with

compliance with the Bankruptcy Code, local bankruptcy rules
and the United States Trustee's guidelines.

30. Status. These matters are substantially
concluded, however, they will continue as the need arises.

31. Hours Spent and Compensation Requested. In
connection with the foregoing matters, MW's professionals
expended 1.2 hours during the Application Period for a total
of $450.00. The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as Exhibit E.

**D.   Monthly Operating Reports.**

32. Description. MW assisted the Debtors and their
professionals with, inter alia, the preparation of and
filing of the Debtors' Monthly Operating Reports.

33. Necessity and Benefit to the Estates. These
services were necessary to assist the Debtors with
compliance with the Bankruptcy Code, local bankruptcy rules
and the United States Trustee's guidelines.

34. Status. These matters will continue as the need
arises.

35. Hours Spent and Compensation Requested. In
connection with the foregoing matters, MW's professionals
expended 1.4 hours during the Application Period for a total

of $509.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**E.   Professional Retention/Fee Applications.**

36.  Description.  Pursuant to the requirements of the Interim Compensation Order, MW has prepared detailed monthly fee statements for distribution to the Notice Parties and handled inquires from all of the professionals regarding monthly fee statements.  Moreover, MW assisted with, inter alia, various issues pertaining to the retention and payment of various professionals employed by the Debtors and the Committee in connection with the Debtors' bankruptcy cases, including bankruptcy counsel, special counsel, accountants, financial advisors and ordinary course professionals; reviewed, analyzed, drafted and filed various employment applications on behalf of the Debtors; coordinated the employment of ordinary course professionals and filed affidavits on behalf of ordinary course professionals according to the procedures established by this Court; and communicated with the Office of the United States Trustee regarding the foregoing.

37.  Necessity and Benefit to the Estates.  These services were necessary to comply with the Bankruptcy Code,

the Interim Compensation Order and the United States

Trustee's guidelines.  Additionally, access to qualified

professionals is critical to the Debtors' chapter 11 cases.

38.  <u>Status</u>.  These matters will continue as the need

arises.

39.  <u>Hours Spent and Compensation Requested</u>.  In

connection with the foregoing matters, MW's professionals

expended 29.4 hours during the Application Period for a

total of $11,222.00.  The complete narrative, time detail of

the hours incurred and the value of the matter by

professional is attached hereto as <u>Exhibit E</u>.

**F.   Creditors Committee.**

40.  <u>Description</u>.  MW participated in meetings and

telephone conferences with the Committee regarding the

Debtors' chapter 11 cases.  MW also assisted with, <u>inter</u>

<u>alia</u>, the strategy, negotiations and production of documents

in response to a subpoena from the Committee.

41.  <u>Necessity and Benefit to the Estates</u>.  These

services were necessary to assist the Debtors with various

issues related to the Committee.

42.  <u>Status</u>.  These and other related matters will

continue until a chapter 11 plan is confirmed.

43.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 108.8 hours during the Application Period for a
total of $28,382.50.  The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**G.   Automatic Stay.**

44.  <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the
review, analysis and preparation of correspondence,
documents, pleadings and notices relating to motions for
relief from the automatic stay; negotiated settlements with
various parties seeking to lift the automatic stay;
reviewed, analyzed and drafted pleadings for various
ordinary course professionals regarding the filing of
suggestions in bankruptcy in litigation in which the Debtors
and/or their current and/or former employees are parties;
drafted correspondence and participated in meetings and
telephone conferences regarding violations of the automatic
stay; and conducted research regarding various issues
related to automatic stay matters.

45.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in enforcing
the automatic stay, reducing the administrative burden on

the Debtors' management and reducing expenses incurred by
the Debtors' bankruptcy estates by resolving potential
automatic stay related matters.

46.  <u>Status</u>.  These and other automatic stay related
matters will continue until a chapter 11 plan is confirmed.

47.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 37.5 hours during the Application Period for a
total of $13,714.00.  The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**H.    Employment and Compensation.**

48.  <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the
review and analysis of issues regarding communications with
the Department of Labor regarding former employees'
paychecks.

49.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors with issues
pertaining to various employee related matters.

50.  <u>Status</u>.  These and other employee related matters
will continue as the need arises.

51.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals

expended 0.3 hours during the Application Period for a total
of $165.00.  The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as Exhibit E.

**I.    Labor/Retiree Matters.**

52.   Description.  MW assisted with, inter alia, the
review and analysis of issues regarding communications with
the Department of Labor regarding paychecks; participated in
telephone conferences regarding pension and EEOC matters.

53.   Necessity and Benefit to the Estates.   These
services were necessary to assist the Debtors with various
labor and retiree matters.

54.   Status.   These and other labor and retiree matters
will continue as the need arises

55.   Hours Spent and Compensation Requested.   In
connection with the foregoing matters, MW's professionals
expended 2.1 hours during the Application Period for a total
of $910.00.  The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as Exhibit E.

**J.    Executory Contracts.**

56.   Description.  MW assisted with, inter alia, the
review and analysis of various executory contracts and the

development of various strategies regarding rejection of
certain executory contracts; researched, drafted, reviewed
and analyzed pleadings regarding the rejection or
modification of certain executory contracts; negotiated
matters related to the rejection or modification of certain
executory contracts; and regularly participated in meetings
and telephone conferences with the Debtors, their
professionals and opposing counsel regarding the foregoing.

57.  <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in developing
and implementing a strategy regarding various executory
contracts.

58.  <u>Status</u>.  These matters will continue as the need
arises.

59.  <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 22.8 hours during the Application Period for a
total of $8,403.00.  The complete narrative, time detail of
the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E.</u>

**K.   Litigation.**

60.  <u>Description</u>.  MW historically represented the
Debtors in various litigation matters and in connection

18

therewith, prepared suggestions in bankruptcy and handled inquires regarding the bankruptcy filing.  MW also assisted with, _inter alia_, the strategy and negotiations regarding responding to third party subpoenas; continued prosecution of litigation matters in which the Debtors are plaintiffs, and other litigation that could affect the Debtors and/or their current and/or former employees; researched issues regarding vendor lawsuits; analyzed strategies regarding adversary proceedings; and prepared and filed pleadings and researched issues regarding the foregoing.

61.  <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various litigation matters.

62.  <u>Status</u>.  These matters will continue as the need arises.

63.  <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 51.0 hours during the Application Period for a total of $20,127.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**L.   Avoidance Actions.**

64.   Description.  MW assisted with, inter alia, the review and analysis of possible avoidance and preference actions and the development of various strategies regarding the foregoing.

65.   Necessity and Benefit to the Estates. These services were necessary to assist the Debtors in developing and implementing strategies for avoidance and preference actions.

66.   Status.  These matters will continue as the need arises.

67.   Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 1.0 hours during the Application Period for a total of $510.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**M.   Vendor Matters.**

68.   Description.  MW assisted with, inter alia, developing and implementing strategies for handling vendor related issues; drafted demand letters to multiple vendors; reviewed, analyzed and responded to correspondence received from various vendors and their counsel; researched,

reviewed, analyzed and drafted pleadings regarding vendors; reviewed and analyzed various vendor related contracts and negotiated with vendors and their counsel to resolve various vendor related issues; and participated in meetings and telephone conferences with the Debtors, the Debtors' professionals and counsel for various vendors regarding the foregoing.

69.   Necessity and Benefit to the Estates.   These services were necessary to assist the Debtors in developing and implementing a strategy for recovering money from vendors and resolving various vendor related issues.

70.   Status.   These matters will continue as the need arises.

71.   Hours Spent and Compensation Requested.   In connection with the foregoing matters, MW's professionals expended 16.8 hours during the Application Period for a total of $7,397.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**N.   Real Estate.**

72.   Description.   MW historically represented the Debtors on various real estate matters and continues to handle matters related thereto.   MW also assisted with,

inter alia, the review, analysis and drafting of
correspondence, documents and pleadings regarding
disposition of real property leases and stub rent issues;
reviewed, analyzed and researched issues regarding real
property leases and the sale thereof; drafted and filed
multiple pleadings and notices regarding the sale of real
property, leases and stub rent appeals; and participated in
meetings and telephone conferences with the Debtors and
their professionals, landlords and their counsel, and other
parties in interest regarding the foregoing.

73. Necessity and Benefit to the Estates. These
services were necessary to assist the Debtors in various
real estate and related matters.

74. Status. These matters will continue as the need
arises.

75. Hours Spent and Compensation Requested. In
connection with the foregoing matters, MW's professionals
expended 322.3 hours during the Application Period for a
total of $129,678.50. The complete narrative, time detail
of the hours incurred and the value of the matter by
professional is attached hereto as Exhibit E.

**O.   Reclamation Matters.**

76.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>,
reviewing, analyzing and responding to numerous claimants'
communications; researched and analyzed issues regarding
reclamation and alleged secured claims; and participated in
telephone conferences with the Debtors, their professionals
and reclamation claimants and their counsel regarding the
foregoing.

77.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to assist the Debtors with the
reconciliation and objection to various reclamation claims.

78.   <u>Status</u>.   These matters are substantially
concluded, however, they will continue as the need arises.

79.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 3.4 hours during the Application Period for a total
of $1,120.00.   The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as <u>Exhibit E</u>.

**P.   Utilities Matters.**

80.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>,
implementing the procedures for receiving, reviewing,
analyzing, responding to, and resolving utility requests for

adequate assurances and coordinating demands on blocked account; reviewed, analyzed and responded to numerous utilities' communications; and communicated with the Debtors, their professionals and counsel for various utilities regarding the foregoing.

81.   <u>Necessity and Benefit to the Estates</u>.   These services assisted the Debtors in implementing the strategies for resolving various utility demands.

82.   <u>Status</u>.   These matters are substantially concluded, however, they will continue as the need arises.

83.   <u>Hours Spent and Compensation Requested</u>.   In connection with the foregoing matters, MW's professionals expended 2.9 hours during the Application Period for a total of $1,047.50.   The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**Q.   Insurance Matters.**

84.   <u>Description</u>.   MW assisted with, <u>inter</u> <u>alia</u>, the review and analysis of various workers compensation, general liability, and other insurance policy related issues; and researched issues regarding the foregoing.

85.   <u>Necessity and Benefit to the Estates</u>.   These
services were necessary to ensure that the Debtors were in
compliance with their insurance obligations.

86.   <u>Status</u>.   These matters will continue as the need
arises.

87.   <u>Hours Spent and Compensation Requested</u>.   In
connection with the foregoing matters, MW's professionals
expended 5.6 hours during the Application Period for a total
of $2,088.50.   The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as <u>Exhibit E</u>.

**R.   Tax Matters.**

88.   <u>Description</u>.   MW historically represented the
Debtors in connection with various tax matters, including an
IRS audit, tax audit appeals and related tax matters, which
are ongoing.   MW also assisted with, <u>inter alia</u>, research
and analysis regarding strategies and authority to pay
certain taxes under first day orders; reviewed, analyzed and
prepared correspondence, documents and pleadings regarding
various tax matters; participated in the analysis and
researched issues regarding the Debtors' strategies
regarding overall tax procedures and protocols for tax
issues that impact the Debtors' estates; analyzed tax claims

and objections thereto; and participated in meetings and telephone conferences with the Debtors and various taxing authorities regarding the foregoing.

89.  Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors in connection with resolving tax related issues.

90.  Status.  These matters will continue as the need arises.

91.  Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 207.5 hours during the Application Period for a total of $103,094.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

S.   Claims Administration.

92.  Description.  MW assisted with, inter alia, the review and analysis of and responses to numerous claimants' communications; researched, analyzed, drafted and filed multiple omnibus objections to claims and reviewed and analyzed claims regarding the foregoing; analyzed responses to omnibus claim objections, negotiated resolutions to omnibus claim objections and drafted and filed pleadings in connection therewith; and participated in multiple telephone

conferences and meetings with Debtors and their
professionals regarding the foregoing.

93. <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in developing
and implementing a claims resolution strategy and responding
to claimants regarding claims related issues.

94. <u>Status</u>.  These matters will continue as the need
arises.

95. <u>Hours Spent and Compensation Requested</u>.  In
connection with the foregoing matters, MW's professionals
expended 537.5 hours during the Application Period for a
total of $202,980.50.  The complete narrative, time detail
of the hours incurred and the value of the matter by
professional is attached hereto as <u>Exhibit E</u>.

**T.    Disclosure Statement and Plan.**

96. <u>Description</u>.  MW assisted with the, <u>inter alia</u>,
analyses and strategies regarding the drafting of the plan
of liquidation and disclosure statement and communications
with Debtors and other professionals regarding the
foregoing.

97. <u>Necessity and Benefit to the Estates</u>.  These
services were necessary to assist the Debtors in developing
a plan of liquidation and disclosure statement.

98.  <u>Status</u>.  These matters will continue as the need arises.

99.  <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 28.0 hours during the Application Period for a total of $14,432.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**U.    Employee Benefits/Pensions.**

100. <u>Description</u>.  MW historically represented the Debtors in connection with various employee benefit and pension matters, which are ongoing.  MW also assisted with, <u>inter alia</u>, the review and analysis of compensation and benefit compliance; and participated in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

101. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various employee benefit and pension matters.

102. <u>Status</u>.  These matters will continue as the need arises.

103. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals

expended 4.8 hours during the Application Period for a total
of $1,332.00.  The complete narrative, time detail of the
hours incurred and the value of the matter by professional
is attached hereto as Exhibit E.

**V.    Intellectual Property Matters.**

104. Description.  MW has historically represented the
Debtors in connection with various trademark and
intellectual property matters, including, inter alia, filing
applications for various marks; defending oppositions to
various marks; and participating in meetings and telephone
conferences with the Debtors and their professionals
regarding the foregoing.  In addition, MW assisted the
Debtors and their professionals in drafting and filing
pleadings regarding the sale of certain intellectual
property assets, analyzed and developed strategies regarding
the sale and marketing of certain intellectual property
assets, and participating in meetings and telephone
conferences with the Debtors and their professionals
regarding the foregoing.

105. Necessity and Benefit to the Estates.  These
services were necessary to assist the Debtors with various
intellectual property matters.

106. <u>Status</u>.  These matters will continue as the need arises.

107. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 53.1 hours during the Application Period for a total of $13,081.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**W.    Vendor Claim Litigation.**

108. <u>Description</u>.  MW assisted with, <u>inter alia</u>, the analysis and reconciliation of vendor claims.

109. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in developing and implementing a strategy for resolving various vendor related issues.

110. <u>Status</u>.  These matters will continue as the need arises.

111. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 1.0 hours during the Application Period for a total of $550.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**X.   Asset Sales.**

112. <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, drafting and filing multiple pleadings regarding the sale and auction of assets, analyzed and developed strategies regarding the marketing, auction, and sale of assets, and participated in multiple meetings and telephone conferences with the Debtors, their professionals, bidders, and other parties regarding the foregoing.

113. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in the sale and disposition of their assets.

114. <u>Status</u>.  These matters are substantially concluded, however, they will continue as the need arises.

115. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 65.8 hours during the Application Period for a total of $31,275.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

<b><u>APPLICABLE LEGAL STANDARD</u></b>

116. The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals employed by the debtor.  The format for fee applications is set forth in the

U.S. Trustee's Guidelines for Reviewing Applications for
Compensation and Reimbursement of Expenses Filed under
section 330 of the Bankruptcy Code (the "Guidelines").

117. Under section 330 of the Bankruptcy Code, the
Court may award counsel to the Debtors reasonable
compensation for actual, necessary services rendered by such
attorneys and paraprofessionals employed by such attorneys
based on the nature, extent and value of the services
rendered, time spent on such services and the cost of
comparable services other than in a bankruptcy case.
Furthermore, the Court may award reimbursement for actual,
necessary expenses.

118. The expenses incurred by MW, as set forth herein,
are reasonable and necessary charges for items including,
but not limited to, photocopying, long distance telephone
calls, messenger services, computer research, travel
expenses, overnight mail and court fees.  Photocopy charges
are assessed at ten cents ($.10) per page, which MW believes
to be competitive for professional firms in this geographic
area.  Some larger copy and mailing projects may have been
performed at an outside copy center at a lower per page
rate.  In all cases, MW has passed through the costs of the
outsourced copy or mailing projects to the estate without

markup.  MW incurred messenger service charges when such

delivery was more economical or when prompt delivery was

necessary in a given circumstance.

119. Under the "lodestar" approach, the Court should

consider the number of hours of service reasonably devoted

to the case multiplied by the attorney's reasonable rates.

Courts frequently consider the specific "lodestar" factors

enumerated in Johnson v. Georgia Highway Express, Inc., 488

F.2d 714 (5th Cir. 1974).  These lodestar factors were

adopted by the Fourth Circuit in Barber v. Kimbrells, Inc.,

577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934

(1978), and in Anderson v. Morris, 658 F.2d 246, 249 (4th

Cir. 1981), where the Fourth Circuit held that the district

court should employ the lodestar approach, and then adjust

the fee on the basis of the remaining Johnson factors in the

case.  The following are the Johnson factors:

> (a)  the time and labor required;

> (b)  the novelty and difficulty of the questions;

> (c)  the skill requisite to perform the legal
> service properly;

> (d)  the preclusion of other employment by the
> attorney due to acceptance of the case;

> (e)  the customary fee;

> (f)  whether the fee is fixed or contingent;

(g)  time limitations imposed by the client or the circumstances;

(h)  the amount involved and the results obtained;

(i)  the experience, reputation and ability of the attorneys;

(j)  the "undesirability" of the case;

(k)  the nature and length of the professional relationship with the client; and

(l)  awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

120. MW believes that the services rendered to the Debtors and the out-of-pocket expenses incurred therewith were both necessary and reasonable in view of the Debtors' obligations in these cases, and the size and complexity of these cases.

121. Moreover, MW has worked closely with the Debtors' other professionals to be very efficient and avoid the duplication of services in these chapter 11 cases.

122. MW is the largest law firm in the Commonwealth of Virginia and among the largest law firms in the country, and has substantial expertise in bankruptcy, business law, commercial litigation and other substantive areas, which has allowed MW to effectively and efficiently address issues

arising in a national bankruptcy case.  Further, the rates

charged by MW are significantly less than rates charged by

other law firms in comparable national chapter 11 cases and

MW's rates are consistent with rates charged to other

clients in non bankruptcy matters.[2]  MW has efficiently

assisted the Debtors by employing a streamlined case

management structure that generally consists of a core team

with various other attorneys and paraprofessionals assigned

to other discrete tasks to avoid the performance of

duplicative or unnecessary work.  MW believes the fees

requested herein satisfy the <u>Johnson</u> factors as set forth

above.

**<u>SUMMARY OF EXHIBITS</u>**

123. A proposed order approving the Application is

attached hereto as <u>Exhibit A</u>.

124. Attached hereto as <u>Exhibit B</u> is a list of all

attorneys and paraprofessionals who have worked on these

cases, by name, year of admission (where applicable), hourly

rate, hours expended on these cases, and total fees

incurred.

---

[2] Dion W. Hayes and Douglas M. Foley are both board certified by the
American Board of Certification as specialists in the field of Business
Bankruptcy Law.  <u>See</u> 11 U.S.C. § 330(a)(3)(E).

125. Pursuant to the Interim Compensation Order, MW has received eighty-five percent (85%) of its monthly fees and one hundred percent (100%) of its monthly disbursements for services rendered in May, June and July 2009.  In total, MW has received $644,059.46 in fees and $25,549.27 in disbursements during the Application Period.  See Exhibit C attached hereto for a statement of those payments.

126. A summary of all actual and necessary expense disbursements is attached hereto as Exhibit D.

127. A chronological itemization of time categorized by task performed is attached hereto as Exhibit E.  MW has made every effort to place all time entries in the proper service category; however, it should be noted that in some circumstances an entry could have been properly placed in more than one of the service categories.  In such circumstances, MW has used its best efforts to place the time entry in the service category that represents the primary purpose of the services rendered.  Time entries do not appear in more than one service category.

## NOTICE

128. Pursuant to the Interim Compensation Order, MW has served copies of the Application on the Notice Parties (as defined therein).  In addition, MW has served notice of the

hearing on the Application on the parties required by the Case Management Order.  MW submits that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

129. Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in this Application, the Debtors request that this Court waive the requirement that all motions be accompanied by a written memorandum of law.

## NO PRIOR REQUEST

130. No prior request for the relief sought herein has been made to this Court in these bankruptcy cases.  This is MW's third interim application for compensation and reimbursement of expenses.

WHEREFORE, MW respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, (i) approving the compensation and reimbursement of expenses requested herein on an interim basis, (ii) authorizing and directing the Debtors to pay such amounts, and (iii) granting MW such other and further relief as is just and proper.

Dated: September 14, 2009        SKADDEN, ARPS, SLATE, MEAGHER &
       Richmond, Virginia        FLOM, LLP
                                 Gregg M. Galardi, Esq.
                                 Ian S. Fredericks, Esq.
                                 P.O. Box 636
                                 Wilmington, Delaware 19899-0636
                                 (302) 651-3000

                                         - and -

                                 SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM, LLP
                                 Chris L. Dickerson, Esq.
                                 155 North Wacker Drive
                                 Chicago, Illinois 60606
                                 (312) 407-0700

                                         - and -

                                 MCGUIREWOODS LLP

                                 /s/ Douglas M. Foley            .
                                 Dion W. Hayes (VSB No. 34304)
                                 Douglas M. Foley (VSB No. 34364)
                                 One James Center
                                 901 E. Cary Street
                                 Richmond, Virginia 23219
                                 (804) 775-1000

                                 Counsel for Debtors and Debtors
                                 in Possession

## EXHIBIT A

Gregg M. Galardi, Esq.              Dion W. Hayes (VSB No. 34304)
Ian S. Fredericks, Esq.             Douglas M. Foley (VSB No. 34364)
SKADDEN, ARPS, SLATE, MEAGHER &     MCGUIREWOODS LLP
FLOM, LLP                           One James Center
One Rodney Square                   901 E. Cary Street
PO Box 636                          Richmond, Virginia 23219
Wilmington, Delaware 19899-0636     (804) 775-1000
(302) 651-3000

              - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Counsel to the Debtors and
Debtors in Possession

                IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                          RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                        :   Chapter 11
                              :
CIRCUIT CITY STORES, INC.,    :   Case No. 08-35653 (KRH)
et al.,                       :
                              :
              Debtors.        :   Jointly Administered
- - - - - - - - - - - - - - X

**ORDER GRANTING THIRD INTERIM APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM MAY 1, 2009 THROUGH JULY 31, 2009**

Upon consideration of the Third Interim Application for

Compensation and Reimbursement of Expenses of McGuireWoods

LLP, Co-counsel to the Debtors, for Services Rendered from

May 1, 2009 through July 31, 2009 (the "Application"); and

39

the Court having reviewed the Application and the Court
having determined that the relief requested in the
Application is necessary and appropriate; and it appearing
that proper and adequate notice of the Application has been
given and that no other or further notice is necessary; and
upon the record herein; and after due deliberation thereon;
and good and sufficient cause appearing therefor, it is
hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.     The Application meets the requirements of the
Bankruptcy Code and the compensation and reimbursement of
expenses sought in the Application is both fair and
reasonable.

2.     The Application is hereby approved in its
entirety, and compensation for the Application Period in the
total amount of $757,717.00 is hereby approved, and the
Debtors are hereby authorized and directed to pay
McGuireWoods LLP the unpaid portion of such compensation.

3.     The reimbursement of expenses for the Application
Period in the total amount of $25,549.27 is hereby approved,
and the Debtors are hereby authorized and directed to pay
McGuireWoods LLP any unpaid portion of such reimbursements.

    4.    This Court will retain jurisdiction with respect
to any dispute concerning the relief granted hereunder.

Dated:  Richmond, Virginia
            _____, 2009


             _____
             UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

    - and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

    - and -

/s/ Douglas M. Foley
Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

Counsel to the Debtors and Debtors in Possession

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)**

        Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby
certify that the foregoing proposed order has been endorsed
by or served upon all necessary parties.

                                        /s/ Douglas M. Foley

\9858676

**Exhibit B**


In re Circuit City Stores, Inc., <u>et al</u>.
Case No. 08-35653 (Jointly Adminstered)


Name of Applicant:  McGuireWoods LLP
Role: Co-counsel to the Debtors


First Interim Application:              Third Interim Application:
    Fees Approved: $896,193.25             Fees Requested: $757,717.00
    Expenses Approved: $37,355.52          Expenses Requested: $25,549.27


Second Interim Application:
    Fees Approved: $706,661.50
    Expenses Approved: $9,794.66


**Summary of Timekeepers**

| **Attorneys** | **Admitted** | **Rate** | **Hours** | **Amount** |
|---|---|---|---|---|
| Ashcroft, Erin Q. | 2007 | $300.00 | 34.8 | $10,440.00 |
| Bell, Craig D. | 1983 | $530.00 | 126.3 | $66,939.00 |
| Bernhardt, Brian C. | 1997 | $475.00 | 47.8 | $22,705.00 |
| Blanks, Daniel F. | 2002 | $375.00 | 540.3 | $202,612.50 |
| Diller, Elizabeth A. | 2008 | $275.00 | 3.6 | $990.00 |
| Foley, Douglas M. | 1992 | $550.00 | 421.2 | $231,660.00 |
| Fratkin, Bryan A. | 1995 | $490.00 | 2.5 | $1,225.00 |
| Grotins, Jodie | 2008 | $300.00 | 2.4 | $720.00 |
| Gunlock, Matthew T. | 2006 | $290.00 | 16.0 | $4,640.00 |
| Hanzlik, Blair B. | 2003 | $375.00 | 0.5 | $187.50 |
| Harmon, T. Craig | 1986 | $525.00 | 7.4 | $3,885.00 |
| Hellmuth, Kelly L. | 2003 | $285.00 | 1.2 | $342.00 |
| Hildner, Jacob P. | 2003 | $395.00 | 6.3 | $2,488.50 |
| McCray, Anne Bentley | 1994 | $500.00 | 5.5 | $2,750.00 |
| Miller, Zach | 2006 | $365.00 | 6.8 | $2,482.00 |
| Peyton, Janet P. | 1996 | $460.00 | 6.4 | $2,944.00 |
| Pittman, Edmund S. | 1992 | $450.00 | 18.6 | $8,370.00 |
| Rash, Matthew P. | 2004 | $315.00 | 69.5 | $21,892.50 |
| Roberson, Eric C. | 2005 | $340.00 | 8.9 | $3,026.00 |
| Sheerin, Joseph S. | 2001 | $450.00 | 5.8 | $2,610.00 |
| Smith, Douglas B. | 2006 | $295.00 | 13.2 | $3,894.00 |
| Stark, Bryan A. | 2007 | $295.00 | 173.6 | $51,212.00 |
| Traylor, Cristin K. | 2000 | $395.00 | 1.4 | $553.00 |
| Tyler, Robert M. | 1994 | $500.00 | 1.8 | $900.00 |
| Vonckers, Johan | 2002 | $275.00 | 1.0 | $275.00 |
| **ATTORNEY TOTALS:** | | | **1522.8** | **$649,743.00** |

### Exhibit B

**Paraprofessionals**

| | | | |
|---|---|---|---|
| Anderson, Patricia C. | $125.00 | 2.7 | $337.50 |
| Bailey, Wanda C. | $175.00 | 11.8 | $2,065.00 |
| Broughton, Robin M. | $310.00 | 2.3 | $713.00 |
| Cain, Karen B. | $195.00 | 180.6 | $35,217.00 |
| Dagrosa, Gloria K. | $225.00 | 5.5 | $1,237.50 |
| Enderle, Heather M. | $150.00 | 0.7 | $105.00 |
| Fallen, Cynthia D. | $90.00 | 1.5 | $135.00 |
| Ferrell, Connie | $215.00 | 1.1 | $236.50 |
| Field, John | $75.00 | 2.2 | $165.00 |
| Gokey, Kymberleigh B. | $160.00 | 30.3 | $4,848.00 |
| Hines, Terry | $140.00 | 1.1 | $154.00 |
| Luong, Cuong | $75.00 | 8.4 | $630.00 |
| Morrison, Diane E. | $195.00 | 3.2 | $624.00 |
| Morrison, Kathryn C. | $75.00 | 5.4 | $405.00 |
| Neilson, Linda J. | $185.00 | 275.1 | $50,893.50 |
| Paiva, Janis A. | $255.00 | 0.9 | $229.50 |
| Sisk, Lois E. | $310.00 | 0.5 | $155.00 |
| Smith, Frances C. | $215.00 | 24.2 | $5,203.00 |
| Walker, Kathleen A. | $225.00 | 4.5 | $1,012.50 |
| von Bargen, Nancy S. | $220.00 | 16.4 | $3,608.00 |
| **PARAPROFESSIONAL TOTALS:** | | **578.4** | **$107,974.00** |
| | | | |
| **TOTALS:** | | **2101.2** | **$757,717.00** |

**BLENDED HOURLY RATE:**          **$360.61**

**Exhibit C**

Summary of Monthly Fee Statements

| Period Covered | Total Fees Incurred | Total Fees Requested Pursuant to Interim Compensation Order | Fees Paid | Holdback | Total Expenses Incurred | Total Expenses Requested Pursuant to Interim Compensation Order | Expenses Paid |
|---|---|---|---|---|---|---|---|
| May 1, 2009 to May 31, 2009 | $ 228,283.50 | $194,040.98 | $194,040.98 | $34,242.52 | $6,295.33 | $6,295.33 | $6,295.33 |
| June 1, 2009 to June 30, 2009 | $ 280,523.50 | $238,444.98 | $238,444.98 | $42,078.52 | $8,583.72 | $8,583.72 | $8,583.72 |
| July 1, 2009 to July 31, 2009 | $ 248,910.00 | $211,573.50 | $211,573.50 | $37,336.50 | $10,670.22 | $10,670.22 | $10,670.22 |
| **Totals:** | **$ 757,717.00** | **$644,059.46** | **$644,059.46** | **$113,657.54** | **$25,549.27** | **$25,549.27** | **$25,549.27** |

<u>**Exhibit D**</u>

**Summary of Expenses**

| <u>Disbursement</u> | <u>Amount</u> |
|---|---|
| Copy Charges | $2,316.90 |
| Overnight Delivery | $546.87 |
| Messenger Services | $145.15 |
| Telephone and Teleconference Charges | $1,085.87 |
| Computer Research | $26.16 |
| Working Meals | $2,054.50 |
| Travel | $11,717.97 |
| Court Costs | $7,105.93 |
| Professional Services | $549.92 |
| **TOTAL:** | **$25,549.27** |